**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-04417 (SMB) |
| Plaintiff, | |
| v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |
| Defendants. | |

**TRUSTEE IRVING H. PICARD'S RESPONSES AND OBJECTIONS TO**
**DEFENDANTS' FIRST SET OF INTERROGATORIES**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa-78*lll* ("SIPA"), and the estate of Bernard L. Madoff, by and through the Trustee's

counsel, Baker & Hostetler LLP, hereby provides the following Responses and Objections to

Defendants The Lustig Family 1990 Trust's and David I. Lustig's First Set of Interrogatories,

1

**EXHIBIT C**

dated October 16, 2016 ("Interrogatories").

**OBJECTIONS TO INSTRUCTIONS**

1.    The Trustee will respond to these Interrogatories consistent with Rules 26 and 33 of the Federal Rules of Civil Procedure (as amended on December 1, 2015) (the "Federal Rules"), Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), applicable Local Civil Rules of the United States District Court for the Southern District of New York and this Court (the "Local Rules"), and any applicable orders of the Court, including the Court's November 10, 2010 Litigation Procedures Order [ECF No. 3141] ("Litigation Procedures Order") and the Court's June 6, 2011 Litigation Protective Order [ECF No. 4137] ("LPO").

**SOURCES OF INFORMATION RELEVANT TO THE CLAIMS AND
DEFENSES IN THE TRUSTEE'S POSSESSION, CUSTODY OR CONTROL**

1.    Hard-copy documents from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("Hard-Copy BLMIS Documents").

2.    Electronic documents obtained from among approximately 20,000 pieces of media from the offices of BLMIS, offsite storage used by BLMIS, and other locations ("BLMIS Electronic Documents" or "BLMIS ESI").

**I.    BLMIS DOCUMENTS**

From the Hard-Copy BLMIS Documents and BLMIS ESI (collectively, "BLMIS Documents"), the Trustee created a searchable electronic database containing approximately 4.7 million Hard-Copy BLMIS Documents and 25 million BLMIS Electronic Documents ("the **BLMIS Searchable Database**").    Defendants do not have direct access to the BLMIS Searchable Database because it contains documents relating to thousands of customers, many of

**EXHIBIT C**

which are not relevant to this proceeding. Instead, the Trustee provides all defendants in these proceedings with documents as described below:

**A.**    **Proof of BLMIS's Fraud and Insolvency:** The Trustee created E-Data Room 1 from documents in the BLMIS Searchable Database as well as some Third-Party Documents. E-Data Room 1 contains documents relevant to the issues of the fraud conducted at BLMIS and its insolvency, and includes documents relating to BLMIS operations, regulatory disclosures, and financial records. *See* **Appendix A** for a description of documents available to defendants in E-Data Room 1.

**B.**    **BLMIS Core Account Documents:** The Trustee identified and segregated BLMIS core account documents for all customers ("Core Account Documents"). These Core Account Documents include account opening agreements, correspondence to and from BLMIS, transfer and/or redemption requests, customer statements, Portfolio Management and/or Portfolio Management Transaction Reports, which contain transaction history, and other documents that were specific to each account, and/or the Trustee's calculation of net equity of a particular BLMIS account. Collectively, the Core Account Documents and the Bank Transfer Documents represent the documents produced to the Defendants by the Trustee with his initial disclosures (the "Initial Disclosure Documents"), on October 25, 2016.

**C.**    **Proof of Transfers:** In addition to the Core Account Documents relevant to transfers described above, the Trustee identified and segregated BLMIS bank account records that reflect transfers to customers ("Bank Transfer Documents"). Collectively, the Core Account Documents and the Bank Transfer Documents represent the documents produced to the Defendants by the Trustee with his initial disclosures (the "Initial Disclosure Documents"), on October 25, 2016.

**EXHIBIT C**

D.    **Other Documents:** The Trustee preserved the nearly 20,000 pieces of BLMIS ESI and

millions of pages of BLMIS Hard-Copy Documents in his possession, but did not include all

such documents in the BLMIS Searchable Database.  The Trustee did not process or scan, for

example, backup tapes believed to contain redundant data, some floppy disks or CDs, and broken

media.  In responding to Interrogatories, the Trustee does not search for BLMIS documents

outside of the BLMIS Searchable Database.  The Trustee will identify additional BLMIS

Documents (meaning other than those described in Paragraphs A and B) from the BLMIS

Searchable Database provided that the parties agree to narrowly tailored search terms and

parameters that target documents relevant to the claims or defenses and proportional to the needs

of the case in accordance with Federal Rule 26(b)(1).  *See* **Appendix B** for a description of

sources of documents in the BLMIS Searchable Database.

## II.    THE SQL DATABASES

Information contained in certain BLMIS Hard-Copy Documents, BLMIS ESI, and certain

Third-Party Documents was processed and input into multiple Microsoft Structured Query

Language ("SQL") Server tables and databases (the "SQL Databases").  To the extent feasible,

the underlying documents used to build the SQL Databases are contained in E-Data Room 1.

Some or all of the data in the SQL Databases is responsive to certain of the Interrogatories.  SQL

Databases are used by the Trustee's experts and are available for production to any defendant

upon request.  Use of the SQL Databases requires some technical expertise.  *See* **Appendix C** for

the sources of data loaded into the SQL Databases.

### THE TRUSTEE'S OBJECTIONS

1.    **Materials Prepared Post-December 11, 2008:** The Trustee will not identify Documents

prepared by and/or received by him, his counsel, his professionals and/or other agents, nor

**EXHIBIT C**

disclose any information derived therefrom, from on or after December 11, 2008 that are not

relevant and/or are protected by the attorney work product doctrine, the attorney-client privilege,

and/or any other applicable privileges or protections ("Materials Prepared Post-December 11,

2008").

2. **Individuals Without Personal Knowledge:** The Trustee will not identify and/or disclose

any individual whose knowledge concerning the claims and defenses in this action was obtained

on or after December 11, 2008 ("Individuals Without Personal Knowledge").

3. **Redundant, Cumulative, and Marginally Relevant Information:** The BLMIS

Searchable Database may contain information that is responsive to the Interrogatories but which

is redundant, cumulative, or marginally relevant (for example, the defendants' names or account

numbers appear on a list of customer names or account numbers and there is no other unique

information). The Trustee objects to the identification of this information or Documents to the

extent that such identification is not proportionate to the needs of the case under Federal Rule

26(b)(1) ("Redundant, Cumulative, and Marginally Relevant Information").

4. **Information Outside the Scope of Relevance:** The Trustee objects to the disclosure of

any information or identification of any Documents outside the scope of relevance articulated in

Federal Rule 26 and Section 4(G) of the Litigation Procedures Order ("Information Outside the

Scope of Relevance").

5. **Expert Analysis:** The Trustee objects to the premature disclosure of expert witnesses

and expert analysis. Such disclosures will be made pursuant to the Case Management Order and

applicable rules ("Expert Analysis").

**EXHIBIT C**

## DOCUMENTS PRODUCED TO THE DEFENDANTS

A.      On October 25, 2016 the Trustee produced to Defendants the Core Account Documents for BLMIS Account 1ZB268 (the "Account") with an appendix summarizing the production. *See* **Appendix D** for the index.

B.      On October 25, 2016 the Trustee produced to Defendants the Bank Transfer Documents for the Account with an index summarizing the production. *See* **Appendix E** for the index. The Core Account Documents and Bank Transfer Documents together constitute the Trustee's initial disclosure production ("Initial Disclosure Documents").

C.      On October 25, 2016, the Trustee provided Defendants with credentials to access E-Data Room 1.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all persons who have knowledge of information relevant to or that could lead to the discovery of information relevant to any of the allegations, claims, and/or affirmative defenses asserted in the FAC and the Answer.

### RESPONSE TO INTERROGATORY NO. 1:

The Trustee objects to this Interrogatory to the extent it calls for the identification of Individuals Without Personal Knowledge (Objection No. 2). The Trustee will not identify such individuals.

In addition, the Trustee objects to this Interrogatory to the extent it calls for Redundant, Cumulative, and Marginally Relevant Information (Objection No. 3).

The Trustee further objects to this Interrogatory to the extent it seeks Information Outside the Scope of Relevance (Objection No. 4).

**EXHIBIT C**

In addition, the Trustee objects to this Interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert analysis. Such disclosures will be made pursuant to the Case Management Order and applicable rules. (Objection No. 5).

Information responsive to this Interrogatory is contained in the Trustee's written Initial Disclosures, which the Trustee served on July 19, 2016.

**INTERROGATORY NO. 2:**

Identify all documents prepared by the Trustee containing any information relevant to or that could lead to the discovery of information relevant to any of the allegations, claims, and/or affirmative defenses asserted in the FAC and the Answer.

**RESPONSE TO INTERROGATORY NO. 2:**

This Interrogatory was withdrawn by counsel, by email dated October 25, 2016.

**INTERROGATORY NO. 3:**

Identify all documents other than those identified in response to Interrogatory No. 2 above containing any information relevant to or that could lead to the discovery of information relevant to any of the allegations, claims, and/or affirmative defenses asserted in the FAC and the Answer.

**RESPONSE TO INTERROGATORY NO. 3:**

This Interrogatory was withdrawn by counsel, by email dated October 25, 2016.

**INTERROGATORY NO. 4:**

Identify the physical location and the person(s) with possession, custody, or control of each and every computer or electronic or digital storage device that contains or may contain documents or information relevant to or that could lead to the discovery of documents or information relevant to any of the allegations, claims, and/or affirmative defenses asserted in the FAC and the Answer.

**EXHIBIT C**

**RESPONSE TO INTERROGATORY NO. 4:**

The Trustee objects to this Interrogatory to the extent it calls for the identification of Materials Prepared Post-December 11, 2008 (Objection No. 1).

The Trustee objects to this Interrogatory to the extent it calls for the identification of Individuals Without Personal Knowledge (Objection No. 2). The Trustee will not identify such individuals.

In addition, the Trustee objects to this Interrogatory to the extent it calls for Redundant, Cumulative, and Marginally Relevant Information (Objection No. 3).

The Trustee further objects to this Interrogatory to the extent it seeks Information Outside the Scope of Relevance (Objection No. 4).

The Trustee further objects to this Interrogatory as incorporating an incorrect discovery standard. Federal Rule 26 no longer permits discovery of information that is relevant or could "lead to the discovery of" admissible evidence. Rule 26 now permits discovery of matters that are relevant "and proportional to the needs of the case." Fed. R. Civ. Pro. 26(b)(1).

The Trustee directs Defendants to the section above titled "Sources of Information to the Claims and Defenses in the Trustee's Possession, Custody or Control" for information responsive to this request.

**INTERROGATORY NO. 5:**

Identify all persons who have knowledge of information concerning the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and/or the Rye XL-AA Bank Swap Transaction. For each person identified, state the sum and substance of his or her knowledge.

**RESPONSE TO INTERROGATORY NO. 5:**

The Trustee objects to this Interrogatory to the extent it calls for the identification of

8

**EXHIBIT C**

Individuals Without Personal Knowledge (Objection No. 2).  The Trustee will not identify such individuals.

In addition, the Trustee objects to this Interrogatory to the extent it calls for Redundant, Cumulative, and Marginally Relevant Information (Objection No. 3).

The Trustee further objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 6:**

Identify all transfers of money made to Rye XL (or any entity related to or affiliated with Rye XL) by its investors/partners (including Lakeview) in 2007 and in 2008.

**RESPONSE TO INTERROGATORY NO. 6:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 7:**

Identify all swap transactions that Rye XL was a party to that used the Broad Market Fund as the reference fund.

**RESPONSE TO INTERROGATORY NO. 7:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 8:**

Identify all swap transactions that HSBC Bank, ABN/RBS Bank, or AA Bank was a party to that used the Broad Market Fund as the reference fund.

**RESPONSE TO INTERROGATORY NO. 8:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of

**EXHIBIT C**

Relevance (Objection No. 4).

**INTERROGATORY NO. 9:**

Identify all swap transactions that Rye XL was a party to that used any BLMIS feeder fund other than the Broad Market Fund as the reference fund.

**RESPONSE TO INTERROGATORY NO. 9:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 10:**

With regard to the allegations in Paragraph 246 of the HSBC Complaint that "the HSBC Defendants invested in the Feeder Fund Defendants to hedge their exposure under the Madoff Structured Products", explain in detail how, by investing in BLMIS feeder funds, the "HSBC Defendants" were able to hedge their exposure in connection with the total return swaps referred to in Paragraph 254 of the HSBC Complaint.

**RESPONSE TO INTERROGATORY NO. 10:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 11:**

With regard to the allegations in Paragraph 70 of the AA Complaint that "Rye XL LP subsequently and independently made the decision to use the subscription payments and subsequent transfers it received from its investors . . . to fund the Swap with AA Bank", identify the following: (a) the "subscription payments" that were so used to fund the swap; (b) the "subsequent transfers" that were so used to fund the swap; and (c) the "investors" from whom Rye XL received such "subscription payments and subsequent transfers".

**EXHIBIT C**

**RESPONSE TO INTERROGATORY NO. 11:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 12:**

State whether HSBC Bank, ABN/RBS Bank, and/or AA Bank made investments in Broad Market Fund to hedge their exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction, respectively.

**RESPONSE TO INTERROGATORY NO. 12:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 13:**

Explain in detail how, by making investments in the Broad Market Fund, HSBC Bank, ABN/RBS Bank, and AA Bank were able to hedge their exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction, respectively.

**RESPONSE TO INTERROGATORY NO. 13:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 14:**

Identify all investments in Broad Market Fund made by HSBC Bank, ABN/RBS Bank, and AA Bank to hedge their exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction, respectively.

11

**EXHIBIT C**

**RESPONSE TO INTERROGATORY NO. 14:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 15:**

Identify all investments in Broad Market Fund made by HSBC Bank, ABN/RBS Bank, and AA Bank to hedge their exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction, respectively, that were made using money or collateral received from Rye XL.

**RESPONSE TO INTERROGATORY NO. 15:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 16:**

Identify all payments of collateral or other payments made by Rye XL to HSBC Bank, ABN/RBS Bank, and AA Bank in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction.

**RESPONSE TO INTERROGATORY NO. 16:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 17:**

If funds other than collateral or other payments made by Rye XL to HSBC Bank, ABN/RBS Bank, and AA Bank were used to make investments in Broad Market Fund to hedge these banks' exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap

**EXHIBIT C**

Transaction, and the Rye XL-AA Bank Swap Transaction, state the amounts of the funds used to make such investments and the source(s) of such funds.

**RESPONSE TO INTERROGATORY NO. 17:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 18:**

Identify all payments of interest and fees made by Rye XL to HSBC Bank, ABN/RBS Bank, and AA Bank in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction.

**RESPONSE TO INTERROGATORY NO. 18:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 19:**

Identify all withdrawals or redemptions made by HSBC Bank, ABN/RBS Bank, and AA Bank of any of the investments in Broad Market Fund that any of them made to hedge their respective exposure in connection with the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, and the Rye XL-AA Bank Swap Transaction. For each such withdrawal or redemption: (a) state the reason why the Trustee believes the withdrawal or redemption was made; (b) identify each and every person and/or entity who received any of the funds that were withdrawn or redeemed; and (c) identify the amount of funds that each such person or entity received and the date he/she/it received it.

**RESPONSE TO INTERROGATORY NO. 19:**

The Trustee objects to this Interrogatory as seeking Information Outside the Scope of

**EXHIBIT C**

Relevance (Objection No. 4).

**INTERROGATORY NO. 20:**

Identify all claims, demands, or other attempts that the Trustee has made, filed, or participated in to recover any money that was withdrawn or redeemed from Broad Market Fund by HSBC Bank, ABN/RBS Bank, and AA Bank.

**RESPONSE TO INTERROGATORY NO. 20:**

The Trustee objects to this Interrogatory to the extent it calls for the identification of Materials Prepared Post-December 11, 2008 (Objection No. 1).

In addition, the Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 21:**

Identify all money that the Trustee has recovered or received from any person or entity in connection with any of the claims, demands, or other attempts that the Trustee has made, filed, or participated in to recover any money that was withdrawn or redeemed from Broad Market Fund by HSBC Bank, ABN/RBS Bank, and AA Bank. In so doing please state, among other things, the date(s) and amount(s) of any money recovered or received by the Trustee and the person or entity from whom the Trustee recovered or received the money.

**RESPONSE TO INTERROGATORY NO. 21:**

The Trustee objects to this Interrogatory to the extent it calls for the identification of Materials Prepared Post-December 11, 2008 (Objection No. 1).

In addition, the Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**EXHIBIT C**

**INTERROGATORY NO. 22:**

Identify all communications, including but not limited to telephone conversations, e-mails, and/or text messages, between HSBC Bank, ABN/RBS Bank, or AA Bank, on the one hand, and Tremont Capital Group (or any of its affiliates or other related entities), on the other, concerning: (a) the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, or the Rye XL-AA Bank Swap Transaction; or (b) any investment in Broad Market Fund made by HSBC Bank, ABN/RBS Bank, or AA Bank.

**RESPONSE TO INTERROGATORY NO. 22:**

This Interrogatory was withdrawn by counsel, by email dated October 25, 2016.

**INTERROGATORY NO. 23:**

Identify all communications, including but not limited to telephone conversations, e-mails, and/or text messages, between HSBC Bank, ABN/RBS Bank, or AA Bank, on the one hand, and any person or entity, on the other, concerning: (a) the Rye XL-HSBC Swap Transaction, the Rye XL-ABN/RBS Swap Transaction, or the Rye XL-AA Bank Swap Transaction; or (b) any investment in Broad Market Fund made by HSBC Bank, ABN/RBS Bank, or AA Bank.

**RESPONSE TO INTERROGATORY NO. 23:**

The Trustee objects to this Interrogatory to the extent it calls for the identification of Materials Prepared Post-December 11, 2008 (Objection No. 1).

In addition, the Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**INTERROGATORY NO. 24:**

Identify all deposits or transfers made into Account No. 1ZA31430 over the life of the account.

**EXHIBIT C**

**RESPONSE TO INTERROGATORY NO. 24:**

The Trustee objects to this Interrogatory to the extent it calls for information derived from Materials Prepared Post-December 11, 2008 (Objection No. 1). The Trustee will not search for or disclose such information.

In addition, the Trustee objects to this Interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert analysis. Such disclosures will be made pursuant to the Case Management Order and applicable rules. (Objection No. 5).

Further, the Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4). Specifically, only inter-account transfers into Account No. 1ZA314 from the Account are relevant to this proceeding.

Subject to and without waiving the foregoing objections, the Trustee refers Defendants to (i) Initial Disclosure Documents produced on October 25, 2016, which contain monthly BLMIS account statements for the Account, and (ii) Documents produced herewith as the Trustee's Supplemental Document Production, which contain Core Account Documents for BLMIS Account No. 1ZA314, including monthly account statements.

In addition, the Trustee identifies the following deposits or transfers made into Account No. 1ZA31430 over the life of the account:

1.    A deposit on or about 12/9/1992 in the amount of $200,000;

2.    A deposit on or about 4/28/1993 in the amount of $90,000;

3.    A deposit on or about 11/1/1993 in the amount of $27,000;

4.    A deposit on or about 6/24/1994 in the amount of $50,000;

5.    A deposit on or about 7/15/1994 in the amount of $135,000;

6.    A deposit on or about 2/13/1995 in the amount of $118,000;

16

**EXHIBIT C**

7.   A deposit on or about 2/21/1995 in the amount of $90,000;

8.   A deposit on or about 12/8/1995 in the amount of $29,000;

9.   A deposit on or about 7/31/1996 in the amount of $70,000;

10.  A deposit on or about 11/25/1996 in the amount of $20,000;

11.  A deposit on or about 9/22/1997 in the amount of $45,000;

12.  A deposit on or about 1/20/1998 in the amount of $127,000;

13.  A deposit on or about 10/13/1998 in the amount of $60,000;

14.  A deposit on or about 8/12/1999 in the amount of $129,000;

15.  An inter-account transfer on or about 11/10/1999 from 1ZB26830 A/O 11/4/99 (Account No. 1ZB268), which transferred $818,182 in principal; and

16.  An inter-account transfer on or about 11/10/1999 from 1ZB26830 A/O 11/4/99 (Account No. 1ZB268), which transferred $81,818 in principal.

**INTERROGATORY NO. 25:**

Identify all withdrawals made from Account No. 1ZA31430 over the life of the account.

**RESPONSE TO INTERROGATORY NO. 25:**

The Trustee objects to this Interrogatory to the extent it calls for information derived from Materials Prepared Post-December 11, 2008 (Objection No. 1). The Trustee will not search for or disclose such information.

In addition, the Trustee objects to this Interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert analysis. Such disclosures will be made pursuant to the Case Management Order and applicable rules. (Objection No. 5).

Further, the Trustee objects to this Interrogatory as seeking Information Outside the Scope of Relevance (Objection No. 4).

**EXHIBIT C**

Subject to and without waiving the foregoing objections, the Trustee refers Defendants to Documents produced herewith as the Trustee's Supplemental Document Production, which contain Core Account Documents for BLMIS Account No. 1ZA314, including monthly account statements.

In addition, the Trustee identifies the following withdrawals made from Account No. 1ZA314 over the life of the account:

1.    A withdrawal on or about 1/19/1999 in the amount of $300,000; and

2.    A withdrawal on or about 10/29/1999 in the amount of $2,255,477.

**INTERROGATORY NO. 26:**

With respect to the transfer from Account No. 1ZB268 to Account No. 1ZA31430 in the amount of $100,000 made on or about November 10, 1999, state what portion of that amount the Trustee claims consisted of fictitious profits and what portion consisted of principal.

**RESPONSE TO INTERROGATORY NO. 26:**

The Trustee objects to this Interrogatory to the extent it calls for information derived from Materials Prepared Post-December 11, 2008 (Objection No. 1). The Trustee will not search for or disclose such information.

In addition, the Trustee objects to this Interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert analysis. Such disclosures will be made pursuant to the Case Management Order and applicable rules. (Objection No. 5).

The Trustee refers Defendants to the Complaint and attached exhibits.

The BLMIS Customer Statements for Account No. 1ZB268 and Account No. 1ZA314 reflect two "inter-account transfers" from Account No. 1ZB268 to Account No. 1ZA314 on or about November 10, 1999, of $100,000 and $1,000,000. These "inter-account transfers" were

**EXHIBIT C**

only book entries at BLMIS as they did not reflect any actual transfer or movement of cash. No new funds entered or left BLMIS. Only the portion of the combined $1,100,000 that constituted principal could be transferred from Account No. 1ZB268 to Account No. 1ZA314. Because Account No. 1ZB268 had only $900,000 of principal available at the time of these "inter-account transfers," Account No. 1ZA314 was credited with that amount of principal for the two transfers combined. The remaining balance of these reported "inter-account transfers" constituted fictitious profits and therefore could not be transferred.

**INTERROGATORY NO. 27:**

With respect to the transfer from Account No. 1ZB268 to Account No. 1ZA31430 in the amount of $1,000,000 made on or about November 10, 1999, state what portion of that amount the Trustee claims consisted of fictitious profits and what portion consisted of principal.

**RESPONSE TO INTERROGATORY NO. 27:**

The Trustee objects to this Interrogatory to the extent it calls for information derived from Materials Prepared Post-December 11, 2008 (Objection No. 1). The Trustee will not search for or disclose such information.

In addition, the Trustee objects to this Interrogatory to the extent it seeks the premature disclosure of expert witnesses and expert analysis. Such disclosures will be made pursuant to the Case Management Order and applicable rules. (Objection No. 5).

The Trustee refers Defendants to the Complaint and attached exhibits.

The BLMIS Customer Statements for Account No. 1ZB268 and Account No. 1ZA314 reflect two "inter-account transfers" from Account No. 1ZB268 to Account No. 1ZA314 on or about November 10, 1999, of $100,000 and $1,000,000. These "inter-account transfers" were only book entries at BLMIS as they did not reflect any actual transfer or movement of cash. No

**EXHIBIT C**

new funds entered or left BLMIS.  Only the portion of the combined $1,100,000 that constituted

principal could be transferred from Account No. 1ZB268 to Account No. 1ZA314.  Because

Account No. 1ZB268 had only $900,000 of principal available at the time of these "inter-account

transfers," Account No. 1ZA314 was credited with that amount of principal for the two transfers

combined.  The remaining balance of these reported "inter-account transfers" constituted

fictitious profits and therefore could not be transferred.

**INTERROGATORY NO. 28:**

Describe in detail the methodology used by the Trustee to determine what  portion of the

transfers referred to in Interrogatory No. 26 and Interrogatory No. 27 above consisted of principal

and what portion consisted of fictitious profits.

**RESPONSE TO INTERROGATORY NO. 28:**

The Trustee objects to this Interrogatory to the extent it calls for information derived from

Materials Prepared Post-December 11, 2008 (Objection No. 1).  The Trustee will not search for or

disclose such information.

In addition, the Trustee objects to this Interrogatory to the extent that it prematurely seeks

to have the Trustee disclose Expert Analysis and testimony well in advance of the deadline for the

disclosure of this information as provided in the  Court-approved Case Management Order

(Objection No. 5). The Trustee will make the appropriate disclosures during the expert disclosure

process in accordance with the Federal Rules, the Bankruptcy Rules, and Court-approved Case

Management Order.

Subject to and without waiving the foregoing objections, the principal balance for all

BLMIS accounts is calculated by crediting the cash and principal transactions that flowed into

each account, and deducting the cash and principal transactions that flowed out of that account,

**EXHIBIT C**

as reflected in BLMIS's books and records between April 1, 1981 and December 11, 2008. To the extent that there are transfers of funds from one BLMIS account to another BLMIS account (an inter-account transfer), the amount transferred is limited to the amount of principal available in the transferor's account at the time of the transfer. Only the portion of the inter-account transfers between BLMIS accounts for which the transferor had actual principal could be transferred.

The BLMIS Customer Statements for Account No. 1ZB268 and Account No. 1ZA314 reflect two "inter-account transfers" from Account No. 1ZB268 to Account No. 1ZA314 on or about November 10, 1999, of $100,000 and $1,000,000. These "inter-account transfers" were only book entries at BLMIS as they did not reflect any actual transfer or movement of cash. No new funds entered or left BLMIS. Only the portion of the combined $1,100,000 that constituted principal could be transferred from Account No. 1ZB268 to Account No. 1ZA314. Because Account No. 1ZB268 had only $900,000 of principal available at the time of these "inter-account transfers," Account No. 1ZA314 was credited with that amount of principal for the two transfers combined. The remaining balance of these reported "inter-account transfers" constituted fictitious profits and therefore could not be transferred.

**INTERROGATORY NO. 29:**

Identify any evidence, documentary or otherwise, that the Trustee contends supports or contradicts any of the allegations, claims, and/or affirmative defenses in the FAC and the Answer.

**RESPONSE TO INTERROGATORY NO. 29:**

This Interrogatory was withdrawn by counsel, by email dated October 25, 2016.

**EXHIBIT C**

**INTERROGATORY NO. 30:**

Identify the person or persons answering these interrogatories and state, with respect to each such person, the particular interrogatory or interrogatories for which that person provided information.

**RESPONSE TO INTERROGATORY NO. 30:**

This Interrogatory was withdrawn by counsel, by email dated October 25, 2016.

Dated: New York, New York
December 9, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-5018
Telephone: 713.751.1600
Facsimile: 713.751.1717
Dean D. Hunt
Email: dhunt@bakerlaw.com

David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Estate of Bernard L. Madoff*

**EXHIBIT C**

## VERIFICATION

STATE OF NEW YORK      )
                       )
COUNTY OF NEW YORK  )

I, Irving H. Picard, as the Court-appointed Trustee of the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, hereby state that the foregoing Responses and Objections ("Responses") have been assembled and prepared by my counsel. I sign for purposes of being bound by the foregoing Responses, but further state that as the Trustee, I have no personal knowledge of the facts and information herein. The Responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and/or thus far discovered in the course of the preparation of these Responses. Consequently, I reserve the right to make changes to the Responses if at any time it appears that an error or omission has been made therein or if additional or more accurate information becomes available.

Dated: ___December 9___, 2016

_Irving H. Picard_
Irving H. Picard

23

**EXHIBIT C**

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 9th day of December, 2016 by electronic mail and First class mail upon the following:

Richard E. Signorelli
Bryan Ha
Law Office of Richard E. Signorelli
799 Broadway, Suite 539
New York, New York 10003
Email: richardsignorelli@gmail.com
Email: rsignorelli@nyclitigator.com
Email: bhanyc@gmail.com

_____

*An Attorney for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L.*
*Madoff*

**EXHIBIT C**