# EXHIBIT A

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------)
In re:                        ) SIPA LIQUIDATION
                              )
BERNARD MADOFF INVESTMENT      ) No. 08-01789 (SMB)
SECURITIES LLC,                )
                              )
              Debtor.         )(Substantively
                              ) Consolidated)
------------------------------)
In re:                        )
                              )
BERNARD L. MADOFF,            )
                              )
              Debtor.         )
------------------------------)
IRVING H. PICARD, Trustee for )
the Liquidation of Bernard L. )
Madoff Investment Securities  )
LLC,                          )
                              )
                              ) Adv. Pro. No.
              Plaintiff,      ) 10-04995 (SMB)
                              )
         v.                   )
                              )
TRUST U/ART FOURTH O/W/O      )
ISRAEL WILENITZ,              )
                              )
EVELYN BEREZIN WILENITZ,      )
individually, and as Trustee  )
and Beneficiary of the Trust  )
U/ART Fourth O/W/O Israel      )
Wilenitz,                     )
                              )
SARA SEIMS, as Trustee of the )
Trust U/ART Fourth O/W/O      )
Israel Wilenitz,              )
                              )
              Defendants.     )
------------------------------)


      (CAPTION CONTINUED ON THE NEXT PAGE)
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

## Page 2

```
1    ----------------------------------)
     IRVING H. PICARD, Trustee for   )
2    the Liquidation of Bernard L.   )
     Madoff Investment Securities    )
3    LLC,                            )
                                     ) Adv. Pro. No.
4            Plaintiff,    ) 10-04818 (SMB)
                                     )
5    v.                              )
                                     )
6    TOBY HARWOOD,                   )
                                     )
7            Defendant.    )
     ----------------------------------)
8    IRVING H. PICARD, Trustee for   )
     the Liquidation of Bernard L.   )
9    Madoff Investment Securities    )
     LLC,                            )
10                                   ) Adv. Pro. No.
             Plaintiff,    ) 10-04914 (SMB)
11                                   )
     v.                              )
12                                   )
     EDYNE GORDON, in her capacity   )
13   as the executrix and primary    )
     beneficiary of the estate of    )
14   Allen Gordon,                   )
                                     )
15           Defendant.    )
     ----------------------------------)
16   IRVING H. PICARD, Trustee for   )
     the Liquidation of Bernard L.   )
17   Madoff Investment Securities    )
     LLC,                            )
18                                   ) Adv. Pro. No.
             Plaintiff,    ) 10-04826 (SMB)
19                                   )
     v.                              )
20                                   )
     ESTATE OF BOYER PALMER, DIANE   )
21   HOLMERS, in her capacity as     )
     Personal Representative of the  )
22   Estate of Palmer, and BRUCE     )
     PALMER, in his capacity as      )
23   Personal Representative of the  )
     Estate of Boyer Palmer,         )
24                                   )
             Defendant.    )
25   ----------------------------------)
```

## Page 3

```
1    ----------------------------------)
     IRVING H. PICARD, Trustee for   )
2    the Liquidation of Bernard L.   )
     Madoff Investment Securities    )
3    LLC,                            )
                                     ) Adv. Pro. No.
4            Plaintiff,    ) 10-04644 (SMB)
                                     )
5    v.                              )
                                     )
6    RUSSELL L. DUSEK,               )
                                     )
7            Defendant.    )
     ----------------------------------)
8    IRVING H. PICARD, Trustee for   )
     the Liquidation of Bernard L.   )
9    Madoff Investment Securities    )
     LLC,                            )
10                                   ) Adv. Pro. No.
             Plaintiff,    ) 10-04541 (SMB)
11                                   )
     v.                              )
12                                   )
     KENNETH W. PERLMAN; FELICE J.   )
13   PERLMAN; and SANFORD S.         )
     PERLMAN,                        )
14                                   )
             Defendant.    )
15   ----------------------------------)
     IRVING H. PICARD, Trustee for   )
16   the Liquidation of Bernard L.   )
     Madoff Investment Securities    )
17   LLC,                            )
                                     ) Adv. Pro. No.
18           Plaintiff,    ) 10-04728 (SMB)
                                     )
19   v.                              )
                                     )
20   BRUNO DIGIULIAN,                )
                                     )
21           Defendant.    )
     ----------------------------------)
22
23
24
25
```

## Page 4

```
1    ----------------------------------)
     IRVING H. PICARD, Trustee for   )
2    the Substantively Consolidated  )
     SIPA Liquidation of Bernard L.  )
3    Madoff Investment Securities    )
     LLC and Bernard L. Madoff,      )
4                                    ) Adv. Pro. No.
             Plaintiff,    ) 10-04905 (SMB)
5                                    )
     v.                              )
6                                    )
     TRAIN KLAN, a Partnership;      )
7    FELICE T. LONDA, in her         )
     capacity as a Partner in Train  )
8    Klan; CLAUDIA HELMIG, in her    )
     capacity as a Partner in Train  )
9    Klan; TIMOTHY LANDRES, in his   )
     capacity as a Partner in Train  )
10   Klan; PETER LONDA, in his       )
     capacity as a Partner in Train  )
11   Klan; TIMOTHY HELMIG, in his    )
     capacity as a Partner in Train  )
12   Klan; and WENDY LANDRES, in her )
     capacity as a Partner in Train  )
13   Klan,                           )
                                     )
14           Defendants.   )
     ----------------------------------)
15   IRVING H. PICARD, Trustee for   )
     the Substantively Consolidated  )
16   SIPA Liquidation of Bernard L.  )
     Madoff Investment Securities    )
17   LLC and Bernard L. Madoff,      )
                                     ) Adv. Pro. No.
18           Plaintiff,    ) 10-004621 (SMB)
                                     )
19   v.                              )
                                     )
20   DONALD A. BENJAMIN,             )
                                     )
21           Defendant.   )
     ----------------------------------)
22
23
24
25
```

## Page 5

```
1    TRUSTEE'S MOTION TO COMPEL DISCOVERY IN THE
2        THREE ADVERSARY PROCEEDINGS:
3
       i) Picard v. Benjamin, Adv. Pro. No. 10-04621
4      ii) Picard v. DiGiulian, Adv. Pro. No. 10-04728
      iii) Picard v. Train Klan, Adv. Pro. No. 10-04905
5
6                -and-
7    CHAITMAN LLP'S MOTION TO COMPEL DISCOVERY AND THE
     TRUSTEE'S CROSS-MOTION FOR A PROTECTIVE ORDER IN ONE
8    ADVERSARY PROCEEDING, PICARD V. WILENITZ, ADV. PRO.
     NO. 10-04995
9
10               -and-
11   CHAITMAN LLP'S MOTION FOR PROTECTIVE ORDER AND QUASH
     TRUSTEE'S DEPOSITIONS IN THE FOLLOWING ADVERSARY SIX
12   PROCEEDINGS:
13     i) Picard v. Perlman, Adv. Pro. No. 10-0454
      ii) Picard v. Gordon, Adv. Pro. No. 10-04914
14   iii) Picard v. Harwood, Adv. Pro. No. 10-04818
      iv) Picard v. Estate of Palmer, Adv. Pro. No.
15   10-04826
       v) Picard v. DiGiulian, Adv. Pro. No. 10-04728
16    vi) Picard v. Dusek, Adv. Pro. No. 10-04644
17       TRANSCRIPT OF PROCEEDINGS
18   in the above-titled action, held on Tuesday,
19   December 13, 2016, at JAMS, 680 Eighth Avenue, New
20   York, New York, commencing at approximately 10:00
21   a.m., before Eileen Mulvenna, CSR/RMR/CRR, Certified
22   Shorthand Reporter, Registered Merit Reporter,
23   Certified Realtime Reporter, and Notary Public of
24   the State of New York.
25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

3 (Pages 6 to 9)

## Page 6

B E F O R E :

    HON. FRANK MAAS (RET.), Arbitrator
    620 Eighth Avenue
    34th Floor
    New York, New York 10018
    fmaas@jamsadr.com

A P P E A R A N C E S :

    BAKER HOSTETLER LLP
    Attorneys for the Trustee
    811 Main Street
    Suite 1100
    Houston, Texas 77002-6111
    BY:  DEAN HUNT, ESQ.
    dhunt@bakerlaw.com
    MARIE L. CARLISLE, ESQ.
    marie.carlisle@bakerlaw.com

        -and-

    BAKER HOSTETLER LLP
    45 Rockefeller Plaza
    14th Floor
    New York, New York  10111
    BY:  EDWARD J. JACOBS, ESQ.
    edward.jacobs@bakerlaw.com


    CHAITMAN LLP
    Attorneys for Defendants
    465 Park Avenue
    New York, New York  10022
    BY:  HELEN DAVID CHAITMAN, ESQ.
    hchaitman@chaitmanllp.com
    GREGORY M. DEXTER, ESQ.
    gdexter@chaitmanllp.com

## Page 7

THE ARBITRATOR:  I thought we'd start with a couple of housekeeping matters.

When we spoke in the telephone conference call and implicit in Judge Bernstein's rulings, or I guess really explicit, is that the rulings I make will apply to the other adversary proceedings to which it's applicable.

But I assume that's something the two sides will try to work out amongst themselves?

MR. HUNT:  Yes.  I mean, I don't think we're willing to beat our head against a wall on things, but I think each of these cases have some nuances that are different.  So there may be something that's easily translatable, but sort of depends on the issue, I think.

MS. CHAITMAN:  But I actually -- this is something that I've tried to work out previously.  I'm defending 92 of these actions.

THE ARBITRATOR:  You just answered another question I had on the list.  Go on.

MS. CHAITMAN:  The thing is, it just

## Page 8

seems to me it's logical that if you rule that the trustee has to produce X document, I shouldn't have to make 92 applications for that.

My sense is that if the judge makes a ruling -- all of these cases are virtually identical in the -- the complaints are virtually identical.  So why would one client be entitled to a certain kind of discovery and another wouldn't?  I just think we could simplify this so much if we could apply your rulings to all of the outstanding cases that I have.

THE ARBITRATOR:  Why don't we leave it at that would be a good thing to do.  As we get deeper into this, assuming there is a deeper into this, we can try and work that out.

It struck me that there were areas like that.  And I'm sure the trustee has a reason, but by way of example, there was a discussion before Judge Bernstein about the Dubinsky report having been served in Action A, but not Action B, although Ms. Chaitman is counsel in both A and B.  And

## Page 9

I assume that is a function of scheduling issues.  Is that --

MR. JACOBS:  That's correct.

THE ARBITRATOR:  Spell that out for me, if you could.

MR. JACOBS:  Sure.  Most of Ms. Chaitman's cases are either -- all of them have their own independent case management order.  While there might be groups of them that are roughly proceeding together, they're all different.

So the expert disclosure dates differ for each of those matters.  In the Wilenitz case, which is before you today, your Honor, we served the Dubinsky report early to try to avert some of the discovery disputes that we're having here.

And also Ms. Chaitman has received that report in the normal course of the offer and case management order in a number of other cases that aren't before you today.

The Dubinsky report at the moment hasn't changed and that -- there has been a revision, but not in any of Ms. Chaitman's cases.  And for a number of years now, it's

## Page 10

1    been the same report.

2        And there are additional reports that

3    are defendant-specific, as Ms. Chaitman

4    knows, that we served in each of the

5    adversary proceedings.  And those haven't

6    been served yet because the offer and case

7    management orders don't call for the

8    disclosure of those experts yet.

9        THE ARBITRATOR:  Those are Collura --

10    MR. JACOBS:  And Greenblatt, correct.

11    Both of those reports have aspects of sort of

12    case law analysis, but they also apply that

13    to the specific transfers at issue with

14    respect to the specific defendants in each

15    case.

16        So Ms. Chaitman has seen those reports

17    in a number of her cases, just not the

18    Wilenitz case or the others that are still in

19    fact discovery today.

20        THE ARBITRATOR:  And I gather that

21    some, but not all of the issues that relate

22    to the individual Collura and Greenblatt

23    reports will also be the subject of the

24    omnibus profit withdrawal hearing that Judge

25    Bernstein contemplates?

## Page 11

1        MR. JACOBS:  Potentially if the issue

2    with the proper withdrawal transactions is

3    that there are certain transactions reflected

4    on customers' statements that are being --

5    the nature of which are being litigated right

6    now in the claims proceeding you just

7    referenced, some of the defendants in some of

8    the cases have those type of transactions in

9    their account.  So that would be relevant in

10    each of those adversary proceedings as well,

11    but not all.  So --

12        THE ARBITRATOR:  Are you talking about

13    inter-account transfers?

14        MR. JACOBS:  No, I'm talking about --

15    so the profit withdrawal -- the profit

16    withdrawal in the trustee's contention was a

17    purported dividend on a stock reflected in

18    the customer statement, which was fraudulent,

19    that resulted in an actual check going to the

20    customer in cash.

21        So -- and Ms. Chaitman represents

22    Mr. Blecker, who I believe is the customer

23    whose claim was denied in our claims side of

24    the case.  And she --

25        You can correct me if I'm

## Page 12

1    misconstruing your argument.

2        But some of the customers represented

3    by Ms. Chaitman are arguing that, in fact,

4    those profit withdrawal transactions did not

5    result in checks or cash that went to the

6    customer.  So to that extent, that would be a

7    challenge to our net equity calculation.

8        So that's what's being litigated

9    before Judge Bernstein in the profit

10    withdrawal proceeding.

11        MS. CHAITMAN:  But not with respect to

12    the claw-back defendants.

13        MR. JACOBS:  Well, it's an issue that

14    may be relevant in discovery with the

15    claw-back defendants to the extent you're

16    challenging our calculation of net equity,

17    and the PW transactions specifically are part

18    of your challenge.

19        THE ARBITRATOR:  I had thought there

20    was overlap, but you're telling me that

21    there's less overlap than I thought there

22    was, which is helpful to understand.

23        MS. CHAITMAN:  My understanding was

24    that Judge Bernstein explicitly said we're

25    not litigating the profit withdrawal

## Page 13

1    contentions of the claw-back defendants in

2    the profit withdrawal litigation.

3        MR. JACOBS:  That's correct.  So right

4    now, I agree, to avoid any confusion, the

5    profit withdrawal issue is only being

6    litigated in the claims proceeding.  It's not

7    part -- the adversary proceedings are -- the

8    defendants in the adversary proceedings where

9    that's an issue are not part of that

10    proceeding.

11        So presumably those issues may --

12    well, it will be -- we'll have to see how

13    Judge Bernstein wants to deal with any ruling

14    he'll issue on the claim side and its

15    applicability to the adversary proceedings.

16        In my mind, obviously, any ruling that

17    Judge Bernstein issues in any one of our

18    cases, including a discovery issue or any

19    ruling you may issue, if it's applicable to

20    the same set of facts or circumstances in any

21    other case, the trustee is going to follow

22    it.

23        Where it's not applicable, because

24    there are different circumstances or facts

25    that would render it -- would render the

## Page 14

outcome of the application of that decision for that case inconsistent with the judge's analysis or theory and ruling in the prior proceeding, then we would argue it shouldn't apply.

So just backing up to your question, your Honor, about whether your rulings today should apply universally in all cases, we agree with Ms. Chaitman that where the facts and circumstances of other cases are identical, it absolutely should. Where they aren't, it shouldn't.

If either side can make a good-faith argument as to why it shouldn't apply -- and as I stated to Ms. Chaitman in many prior hearings before Judge Bernstein, after we have the benefit of your ruling, we're happy to meet and confer and enter into a stipulation as appropriate where we can agree as to the applicability of those rulings in her other cases to avoid unnecessary litigation of those same issues.

I think that should solve all of our concerns.

THE ARBITRATOR: Hopefully.

## Page 15

MR. JACOBS: Hopefully.

THE ARBITRATOR: I note, with regard to the profit withdrawal proceeding, that at least tangentially it relates to some of the good-faith claw-back cases because there's a letter Ms. Chaitman sent on December 8th that said that one of your arguments supports her discovery argument.

MR. JACOBS: Right. Well, we can discuss that later if that's ours.

MR. HUNT: Sure.

THE ARBITRATOR: We'll get to that. I'm not trying to put the cart before the horse.

MS. CHAITMAN: Judge, I just want to say one other thing.

THE ARBITRATOR: Sure.

MS. CHAITMAN: I sympathize with you coming into this case because it's so incredibly complicated. And we've been living with it since 2009.

When you asked whether the profit withdrawal was part of the inter-account transfer issue, I just wanted to explain something to you.

## Page 16

THE ARBITRATOR: Right.

MS. CHAITMAN: If you look at Exhibit B to the complaint which sets out the deposits and withdrawals, in some cases, there's an indication that there's a deposit into the account from another Madoff account.

THE ARBITRATOR: Right.

MS. CHAITMAN: Now, when we are litigating the net equity of a defendant, we want to look at the transferor account and see whether there were profit withdrawals that the client claims were never received. So --

THE ARBITRATOR: And I gather that the CAD -- I forget what the acronym stands for -- that you get includes the paperwork, to the extent the trustee has it, that underlies those transferor accounts.

MR. JACOBS: That's correct, your Honor.

MS. CHAITMAN: Some of them date back beyond -- they don't have the records.

THE ARBITRATOR: Sure. And I gather the Madoff deposition, which I read, really went to the issue of whether some of those

## Page 17

purported dividends were real or not. Is that part of what you were exploring?

MS. CHAITMAN: Yes, because the trustee has taken the position from inception that Madoff never purchased any securities for his investment advisory customers. And Frank DiPascali, who was Madoff's right-hand man, who was the government's chief witness in the criminal trial --

THE ARBITRATOR: He's now dead?

MS. CHAITMAN: He died, yes.

But he pled in federal court. And in his plea, he started out by saying, early in the 1990s, we started a fraud with respect to the investment advisory --

MR. JACOBS: That's not actually what Mr. DePascali said in the proceedings. I would like the record to reflect his actual testimony, not Ms. Chaitman's characterization --

THE ARBITRATOR: I'm confident that one of you is right. Why doesn't somebody -- and since the trustee seems to have more funding than Ms. Chaitman, why don't you just send me a copy of the guilty plea allocution.

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 7 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

6 (Pages 18 to 21)

Page 18

1    MR. JACOBS: I will be happy to.
2    MS. CHAITMAN: And then Mr. Madoff has
3 testified that the fraud began in 1992. So
4 if that's true, if Judge Bernstein finds
5 that, in fact, the fraud began in 1992, then
6 all of the net equity calculations for
7 accounts which predate 1992 would have to be
8 recalculated.
9    THE ARBITRATOR: And the trustee's
10 position, I gather, is that, from inception,
11 Madoff was a Ponzi scheme.
12    MR. JACOBS: To the best of our
13 knowledge, yes, and that the early periods of
14 the fraud are the subject of litigation right
15 now by Ms. Chaitman. The court has
16 authorized a second deposition of Bernard
17 Madoff on that issue.
18    But as it stands now, our position is
19 that the only evidence that that is true is
20 Mr. Madoff's own self-serving statements to
21 that effect, which are not consistent with
22 any of the debtors' books and records.
23    THE ARBITRATOR: Okay. Obviously
24 that's not an issue we're going to resolve.
25    I saw on ECF that one of the Collura

Page 19

1 reports, and maybe there is only one, is 705
2 pages. I was wondering in relation to all of
3 this whether it makes sense for me to look at
4 the Dubinsky report, some specimen of Collura
5 reports and the Greenblatt report or whether
6 that would be a waste of my time and your
7 money.
8    MR. JACOBS: In terms of your
9 knowledge as context and background --
10    THE ARBITRATOR: Exactly.
11    MR. JACOBS: -- for these and other
12 discovery disputes?
13    THE ARBITRATOR: Yes.
14    MR. JACOBS: We'd be happy to provide
15 a copy of that -- of those reports for you.
16 And perhaps we can choose a representative --
17    MR. HUNT: I think none of the cases
18 that we're talking about today have the
19 Greenblatt and Collura reports yet. So you'd
20 be looking at a report out of context of
21 these cases. It would just be an exemplar of
22 what they do for us.
23    MR. JACOBS: Right.
24    Which in and of itself you may find
25 helpful.

Page 20

1    THE ARBITRATOR: I assume it basically
2 walks somebody through the Exhibit B; is
3 that --
4    MR. JACOBS: Exhibit B?
5    THE ARBITRATOR: To the complaint.
6    MS. CHAITMAN: Not exactly.
7    THE ARBITRATOR: A typical Collura
8 report?
9    MR. JACOBS: Yes, it does.
10    MS. CHAITMAN: The case-specific ones.
11    MR. JACOBS: The case-specific reports
12 do, yes.
13    THE ARBITRATOR: Is there also an
14 overarching Collura report?
15    MR. JACOBS: There's a component --
16 and this is going to be my crude, potentially
17 not entirely accurate, sort of shorthand of
18 what her report does. But essentially
19 Ms. Collura's report, together with
20 Mr. Greenblatt's report, provide a
21 reconciliation of all of the cash
22 account trans-- transaction activity at
23 BLMIS from the period for which we have bank
24 statements forward.
25    So essentially what the trustee is

Page 21

1 doing, your Honor, is -- we have a complete
2 set of third-party bank records from BLMIS's
3 accounts, I believe it's from 1981 or 1982.
4 And we credit all of the customers' account
5 statements for the full amount of their
6 account balance as of that date, and then we
7 start our net equity calculation by comparing
8 what the customer account statements say with
9 independent third-party, usually JPMorgan,
10 financial records.
11    THE ARBITRATOR: So if the account
12 says there's a hundred thousand dollars in it
13 in 1980, you're not challenging that?
14    MR. JACOBS: We give credit to the
15 customer for the full amount of that
16 account -- that statement balance, whether
17 it's fictitious profits or not.
18    What we're saying is that if we can't
19 independently verify it through what our
20 experts do in these reports, then we're not
21 going to challenge it for those early, early,
22 early periods.
23    MS. CHAITMAN: Ted, I think you may
24 have misspoken. Because it's my
25 understanding that you have JPMorgan Chase

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 8 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

7 (Pages 22 to 25)

## Page 22

1 bank records from December 1988 on and you
2 have Madoff records from 1981.
3         MR. JACOBS: That is correct. Thank
4 you. That is correct. Sorry. I flipped the
5 account statements with the bank statements
6 and that early date.
7         So back to your question, where I
8 was -- where I was going was, together
9 Ms. Collura and Mr. Greenblatt -- what their
10 analysis does is show that the account
11 activity in the customer statements is
12 reliable across the universe of account
13 statements that we have going back, thank
14 you, to the early 1980s because the periods
15 for which we have bank records, when compared
16 to those customer statements, match to a near
17 certainty of close to 100 percent of the
18 time.
19         So their expert analysis is that the
20 cash activity 100 percent or near 100 percent
21 of the time is reliable on the face of
22 Madoff's statements. That's sort of the
23 case-wide function in a nutshell of those
24 reports. And, again, I would like to just
25 reserve the right to let the reports speak

## Page 23

1 for themselves. And I'm not an expert. I'm
2 not as smart as they are. So if I misspoke
3 or made any misstatement or
4 mischaracterization, I apologize in advance.
5         THE ARBITRATOR: Why don't you send me
6 the reports understanding that the Collura
7 reports have not been served in any of the
8 cases that we're talking about currently.
9 And if I begin to look at them and realize
10 I'm going off into an area that I shouldn't
11 worry about, at least now, I'll be glad to
12 abandon reading it.
13         MS. CHAITMAN: Judge, I just want to
14 warn you, the complete set of Collura
15 reports, not case-specific, but the ones that
16 have been produced in the profit withdrawal
17 litigation, are probably six times this
18 binder.
19         THE ARBITRATOR: Just to be clear, I
20 don't want a complete set. I would like a
21 specimen report, understanding that each one
22 may be unique and that --
23         MR. JACOBS: The profit withdrawal
24 reports were geared towards the issues that
25 were in contention. I think the adversary

## Page 24

1 proceeding reports are much smaller,
2 certainly without the exhibits.
3         MS. CHAITMAN: Okay.
4         MR. JACOBS: So I'll take a look. And
5 if it makes sense to exclude exhibits, I can
6 give you a list of what they are.
7         THE ARBITRATOR: Sure.
8         MR. JACOBS: And if you want to have
9 them, we're happy to make whatever you would
10 like.
11         THE ARBITRATOR: Then just in terms of
12 procedure, to the extent I rule today, a
13 number of things could happen.
14         One, I could reduce that to an order.
15 Two, I could say look at the transcript,
16 that's my order. I suppose in some areas, I
17 could issue a more detailed decision. I'm
18 here to try and be user-friendly, so tell me
19 what you think makes sense and maybe for
20 different areas, different results should
21 obtain.
22         MS. CHAITMAN: If I can step in first,
23 your Honor.
24         THE ARBITRATOR: Sure.
25         MS. CHAITMAN: I think, as I

## Page 25

1 understand it, the procedure would be that
2 your decisions, if someone wants to appeal
3 them, would be appealed to Judge Bernstein
4 and then to the District Court.
5         THE ARBITRATOR: Sure. Yep.
6         MS. CHAITMAN: So I think, in that
7 respect, it would be helpful to have an
8 order.
9         Do you disagree with that?
10         MR. JACOBS: We agree that an order
11 would be helpful. And as Ms. Chaitman notes,
12 she has many cases. We'll be, I'm sure,
13 talking about the applicability of those
14 orders in those cases and hopefully working
15 that out.
16         And also we have many hundreds of
17 cases in addition to that with other
18 defendants. So an order gives us an ability
19 to start a good-faith discussion with those
20 defendants to the extent similar issues arise
21 and hopefully resolve them so that they are
22 coming before your Honor.
23         THE ARBITRATOR: And, similarly, I'm
24 in the odd circumstance now where I'm a
25 retired attorney, although I intend to remedy

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 9 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

8 (Pages 26 to 29)

Page 26

that. But I issued the decision in Crupi and
I think my case manager asked that the
trustee file it.
    MR. JACOBS: Yes.
    THE ARBITRATOR: I looked yesterday
and didn't see that it was filed, so I --
    MR. JACOBS: We are working on that.
We will get that filed. We just needed to
put together a motion. And I know that's
been done, and I'll check with my team and
get it filed.
    THE ARBITRATOR: Okay. So I guess for
the time being, to the extent I issue orders,
I'll ask the parties to file them. At some
point, I'll probably ask Judge Bernstein to
have me declared an interested party, which I
guess would then permit me to file directly
on the NCF.
    MR. JACOBS: That answers our question
as to why you didn't go ahead and file that.
We're happy to do it.
    MS. CHAITMAN: Is that something we
can arrange for the judge?
    MR. JACOBS: I thought we'd just have
a simple motion saying, at the request of the

Page 27

arbitrator, we'd like to file this decision
in this case, but it's not a case in which
you're involved.
    MS. CHAITMAN: No, but wouldn't the
judge -- if he files a notice of appearance,
wouldn't he have the right to file a
decision?
    THE ARBITRATOR: But I can't file a
notice of appearance for two reasons. One,
at the moment, I'm not an attorney. I'm a
retired attorney. And I looked at the form,
and I have to represent that I'm an attorney
in good standing. And I'm not sure whether
that representation would be accurate.
    If neither side objects, maybe what
I'll just do is call Judge Bernstein's
chambers and see how they suggest I handle
that.
    MR. HUNT: That sounds fine.
    THE ARBITRATOR: Okay. Then it really
falls into the category of minutia, but I see
references often to House 5 and House 17. I
know it doesn't relate to anything I'm doing
currently, but I couldn't resist asking.
    MR. JACOBS: Okay. House -- it's an

Page 28

easy explanation. These are informal
nicknames that BLMIS had for its different
operations. House 17 is the investment
advisory business that, as you know, the
trustee understands was operating a Ponzi
scheme. Ms. Chaitman's clients were House 17
customers, and that's the investment advisory
business.
    House 5 was the part of BLMIS's
business, for lack of a better word, where
there was proprietary trading happening and
there was a market-making business function.
And that the trustee contends is the only
portion of the business through which any
actual securities trades were conducted at
any given point in time.
    THE ARBITRATOR: And are those the two
houses? Is there anything else?
    MR. JACOBS: That's it. That's
essentially it. So if and when you review
Mr. Dubinsky's report, you'll see a lengthy
discussion about how BLMIS operated as a
whole and how those different portions were
interrelated, both from a financial
perspective and from a fraud and Ponzi scheme

Page 29

perspective.
    THE ARBITRATOR: Why don't we then
turn to the trustee's motion to compel.
    MR. JACOBS: Sure.
    THE ARBITRATOR: Unless there were any
other housekeeping matters that any of you
wanted to bring up.
    MR. JACOBS: I don't think so, your
Honor.
    THE ARBITRATOR: Ms. Chaitman?
    MS. CHAITMAN: No.
    THE ARBITRATOR: Okay. Why don't we
deal with the third-party subpoenas to the
banks first.
    MR. JACOBS: I'm not sure that we
have --
    MR. HUNT: None of those are before
you right now.
    THE ARBITRATOR: Oh. I thought that
issue was before me, but --
    MS. CHAITMAN: It is in connection
with the responses to some of our
interrogatories where we --
    MR. HUNT: There's no subpoena that's
being contested here today.

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 10 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

9 (Pages 30 to 33)

## Page 30

1     THE ARBITRATOR: Okay. But it does --

2     MS. CHAITMAN: It comes up. It does

3 come up.

4     THE ARBITRATOR: -- deal with the

5 completeness of the responses regarding the

6 accuracy of Exhibit --

7     MR. HUNT: I think it comes up

8 tangentially in that regard.

9     THE ARBITRATOR: Well, rather than me

10 then guiding the discussion, why don't you

11 tell me in relation to that motion what the

12 trustee wants to talk about first.

13     MR. HUNT: So there are actually three

14 cases where we filed a motion to compel --

15     THE ARBITRATOR: Right.

16     MR. HUNT: -- the Train Klan case, the

17 DiGiulian case and the Benjamin case.

18     As I'm sure you're aware, having

19 reviewed our pleadings, there are a lot of

20 very similar issues here. Specifically the

21 defendants assert a number of affirmative

22 defenses, which they bear -- bear the burden

23 of proving, of course, in which they have

24 chosen to just deny us discovery about in its

25 entirety.

## Page 31

1     Second of all, while the defendants on

2 the one hand say they don't dispute

3 Exhibit B, they spend a large amount of time

4 in their answers explaining why Exhibit B is

5 not accurate and why the records that we have

6 are not admissible and why we can't prove our

7 case. So we clearly have the right to take

8 discovery on those issues.

9     So what I thought might make some

10 sense is to just talk through the discovery

11 responses themselves, starting with Train

12 Klan, which is the most complicated one. And

13 I think by the time we get to Benjamin, we

14 will be starting to repeat ourselves a bit.

15     THE ARBITRATOR: Well, I'm sure it's

16 right that there's overlap and that we'll all

17 be repeating ourselves. One of the things I

18 guess I began to have a feel for what you've

19 all been struggling with is, obviously there

20 were boilerplate responses to your requests.

21 And that worked both ways. And clearly some

22 word processing errors also --

23     MR. HUNT: I agree with that.

24     THE ARBITRATOR: -- on both sides.

25 But, sure. Train Klan, you've asked

## Page 32

1 for a lot of partnership material. Judge

2 Bernstein dismissed the claims against

3 subsequent transferors in a number of these

4 claw-back cases --

5     MS. CHAITMAN: Transferees.

6     THE ARBITRATOR: Transferees. Excuse

7 me.

8     -- saying that there was insufficient

9 information pled. General partners of a

10 limited partnership are treated as alter egos

11 of the partner, but limited partners, as I

12 understand the law, are not. You seem to be

13 asking for information as to both.

14     MR. HUNT: We're asking for

15 information about the partners. With respect

16 to Train Klan, all they say is there are

17 partners. Of course, the partnership

18 documents and percent ownership interest and

19 type of partner is all relevant exactly for

20 the reason you said.

21     Moreover --

22     THE ARBITRATOR: Why is anything --

23 and it may be that you end up with the same

24 documents, but if my order in that area were

25 to be that Ms. Chaitman's client, Train

## Page 33

1 Klan -- I guess it's really two defendants

2 with the Train Klan partnership -- must

3 produce documents to show -- sufficient to

4 show you over time who the general partners

5 were.

6     Why doesn't that satisfy your need,

7 yet respond to Ms. Chaitman's concern?

8     MR. HUNT: We don't know even what

9 type of entity Train Klan is. It says it's a

10 partnership. We don't know if it's a general

11 partnership, a limited partnership or what

12 kind of entity it is.

13     So what we're seeking is the legal

14 name of the partnership, the type of entity

15 it is, the basic information about that

16 entity, when it was established, whether it

17 was formed out of a predecessor entity, which

18 state or country it's incorporated in or

19 where it's --

20     THE ARBITRATOR: By definition,

21 probably it's not incorporated.

22     MR. HUNT: Well, yes.

23     Which state or country was it formed.

24 What law applies they think. And the names

25 and addresses of the current and former

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 11 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

10 (Pages 34 to 37)

Page 34

1  partners, members, whatever that may be, and
2  their ownership interest in that partnership.
3       That establishes the liability of the
4  partners, I think. We don't have any of that
5  information. And I'm not sure that a --
6       THE ARBITRATOR: Let's say, for
7  argument's sake, you're a 10 percent limited
8  partner and I'm a 5 percent limited partner
9  and the court reporter is the general
10  partner. Once you establish that the court
11  reporter, Ms. Mulvenna, is the general
12  partner, putting aside the other materials
13  around that that you're interested in, why
14  does it matter whether I have 5 percent and
15  you have 10 percent or vice versa or who the
16  other limited partners may be?
17       MR. HUNT: We don't know, first of
18  all, if there are any limited partners. But
19  second of all, depending upon how this entity
20  is set up, each of those individuals may be
21  liable for their percentage share as a direct
22  transferee depending on how the proceeds are
23  distributed. We don't know because they
24  won't tell us.
25       THE ARBITRATOR: Ms. Chaitman.

Page 35

1       MS. CHAITMAN: Well, you know, we have
2  a tension here because, as you've recognized,
3  Judge Bernstein held that the complaints
4  against the subsequent transferees failed to
5  state a claim. And we have cases from United
6  States Supreme Court on down saying you can't
7  take discovery in order to obtain the facts
8  you need to file a complaint.
9       And, indeed, the trustee has used
10  those cases against me when I've sought to
11  take discovery in order to get the facts
12  which would allow me to state a claim.
13       So I don't think that the trustee can
14  argue that that line of cases does not apply
15  here. And what I've tried to do is protect
16  my clients, as I believe I'm entitled to, by
17  not disclosing anything which would give the
18  trustee the precise information he's seeking
19  because he wants to be able to name the
20  individuals.
21       And if I have to disclose how much
22  each person has, he's going to sue them
23  for that percentage of the withdrawals. And
24  I think that I'm entitled to -- he's entitled
25  to get a judgment against the account holder.

Page 36

1  And if the account -- if the judgment isn't
2  paid, then he can sue the individual
3  partners. But that's the order that the
4  United States Supreme Court has established.
5  And I don't think that he should be entitled
6  to circumvent that.
7       THE ARBITRATOR: One of my problems is
8  I think I agree with both of you. And I also
9  think, as a general operating principle, that
10  if either side is entitled to discovery for
11  Reason A, the fact that it may also be
12  helpful as to undisclosed Reason B is not a
13  basis to turn down a request for discovery.
14       But specifically with respect to Train
15  Klan, I think what I'm going to require be
16  produced are any partnership agreements. And
17  in doing that, I note that -- I think it was
18  Cravath Swain & Moore operated for many years
19  with no written partnership agreement. So
20  I'm mindful that perhaps there are no
21  partnership agreements or not ones of the
22  formality that we're used to.
23       But any partnership agreements for the
24  relevant time period. And I guess that will
25  then lead to a discussion of what the

Page 37

1  relevant time period is. It may be from
2  formation. And as I said, documents
3  sufficient to show who the general partner,
4  or partners, over time of the partnership
5  are.
6       MR. HUNT: The relevant time period is
7  1993 forward.
8       THE ARBITRATOR: Okay. Just so I
9  understand, explain to me why --
10       MR. HUNT: That's when the account was
11  opened, in May of 1993.
12       THE ARBITRATOR: Okay. So whatever
13  partnership agreement existed then. If the
14  partnership was formed in 1970, which is
15  unlikely, you wouldn't have to produce that
16  partnership agreement unless it was the
17  operative agreement in 1993.
18       MS. CHAITMAN: But the trustee's only
19  permitted to sue to recover withdrawals taken
20  within the last two years prior to Madoff's
21  confession. So why would partnership
22  agreements that predate December 11, 2006,
23  have any relevance?
24       THE ARBITRATOR: Well, I think that
25  the trustee is entitled to know how the

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 12 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

11 (Pages 38 to 41)

Page 38

partnership was organized. And as I
understand Judge Bernstein's rulings,
although maybe here I'm going beyond my role,
and the case law, it doesn't appear that the
trustee has a basis at the moment pursuing a
limited partner. But the trustee may have a
different view of that.

MR. HUNT: So just to be clear, in
this particular case, we've sued the partners
who we know of.

THE ARBITRATOR: You've sued the whole
group of people; correct?

MR. HUNT: Which we assume are general
partners based on what information we have.

THE ARBITRATOR: But assuming there's
a formal partnership agreement and that one
of those defendants is the general partner
and others are limited partners, I'm not sure
that under the case law and Judge Bernstein's
rulings, that there's a basis for suing the
limited partners.

MR. HUNT: Right. But she has to give
us the information showing they're limited
partners before we can talk about that.

THE ARBITRATOR: She has to give you

Page 39

the information showing you, under my ruling,
who the -- or the documents showing you who
the general partner is. That document may
also show you who the limited partners are.
But documents can't be redacted, as far as
I'm concerned, on the basis of relevance.

So it may, through the back door, give
you information about percentages of who the
limited partners are. But my understanding
of the case law is that the general partner
is not considered a subsequent transferee
because the general partner is, in effect,
the alter ego of the partnership.

MR. HUNT: I agree with that. In this
particular case, we have sued each of the
partners in their capacity as a partner.

THE ARBITRATOR: Right.

MR. HUNT: So if Ms. Chaitman wants to
get them dismissed from the action, she has to
prove to us that they're limited partners.
We can't take it at -- her at her word. If
she wants them out, she has to tell us why
she wants them out, I would say.

THE ARBITRATOR: I'm going to adhere
to my ruling. Why don't you wait and see

Page 40

what documents you get in response to that
ruling. Maybe it will become a non-issue.
If it still is a concern, we can deal with it
on a more granular level.

MR. HUNT: Okay. The other thing too,
just to be clear, your ruling has to do with
documents, but I would like them also to
answer the interrogatories relating to those
points. So we don't have to go through the
documents and figure out what the answer
might be.

THE ARBITRATOR: Let's deal with
specific interrogatories so that we have a
somewhat definitive answer.

MR. HUNT: That sounds great. Thank
you.

So we received two responses to
interrogatories in Train Klan.

THE ARBITRATOR: One on behalf of the
partnership, one on behalf of the
individuals.

MR. HUNT: Right. And with respect to
the individuals, I have an issue with that.
Because Ms. Londa signed with power of
attorney as a partner for each of the

Page 41

individuals. We never did get a response
from the individuals.

So I would like -- if the court -- if
your Honor would help us with that. I'd like
to get actual answers from each of the
defendants rather than someone signing with
power of attorney for all of them.

THE ARBITRATOR: Well, what I'm
inclined to do -- and if schedule were not an
issue, let me tell you what I'd be inclined
to do. And although I understand all of
these cases have their own schedules, there
must be some sort of overarching view of how
these cases will ultimately get resolved.
And that big picture view I express complete
ignorance to.

But if scheduling were not an issue,
what I would be inclined to do is say the
partnership should respond. And then,
depending upon that, it may be unnecessary
for the individuals to respond depending on
the documents and interrogatory responses you
receive.

Maybe there's some belt and suspenders
approach you'd want down the road. I could

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 13 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

12 (Pages 42 to 45)

Page 42

see certifications from each of the
individuals that they've never -- who are not
general partners, that they've never been a
general partner.
But I'm not unsympathetic to what
Ms. Chaitman says about the extent of their
limited partnership interest being none of
the trustee's business assuming that they
were only limited partners --
MR. HUNT: Assuming that it's even a
partnership.
THE ARBITRATOR: -- and that it's a
partnership that observed formalities rather
than the equivalent of an investment club of
people who get together once a week and
say --
MR. HUNT: Right. I mean, that's what
we're finding some of these things are. And
so it may not even be a partnership as far as
we know.
THE ARBITRATOR: So let me get back to
what I was asking, which is, to the extent I
make rulings like the one I just described,
what impact does it have on that broad
schedule of how these cases march their way

Page 43

toward resolution?
MR. HUNT: For Train Klan
specifically? Because that is --
THE ARBITRATOR: Why don't we stick
with that, yes.
MR. HUNT: So I think what that does
is it sort of makes it a two-step process.
Because based upon what we learned from this
sort of intermediate response, we still may
have questions that we need to address and
we'll have to come back to you.
THE ARBITRATOR: But I guess what I'm
inarticulately trying to ask is, am I
screwing up Judge Bernstein's schedule by
doing that?
MR. HUNT: No. One of the things --
I'll tell you this, we can't agree on much,
but we can agree on scheduling issues. And
the parties have the flexibility to move the
schedule around to meet their needs. So to
the extent there's a scheduling issue, I'm
certain that Ms. Chaitman will accommodate
additional scheduling time to resolve it.
She has in the past.
MS. CHAITMAN: And I'm sure you've

Page 44

seen there are so many issues, we haven't
gotten discovery on two. And obviously we're
going to need to extend the discovery.
THE ARBITRATOR: Okay. And Judge
Bernstein is, to use the vernacular, cool
with that?
MR. HUNT: Yes, sir.
MR. JACOBS: If by agreement of the
parties, it's never been an issue.
THE ARBITRATOR: Okay. Great.
So as to the partnership, I ruled with
respect to --
MR. HUNT: I'm sorry I interrupted
you.
THE ARBITRATOR: I was going to say
what you just volunteered. Let me find --
MR. HUNT: You're smart enough to copy
yours double-sided.
THE ARBITRATOR: No, you sent this to
me so --
MR. HUNT: We're smart enough to do it
for you.
THE ARBITRATOR: Except I'm looking at
the wrong --
MR. HUNT: It's Interrogatory No. 1 to

Page 45

the -- the answers to the interrogatories
sent by Train Klan are identical to the ones
that we received from the individuals signed
by Ms. Londa on behalf of the individuals.
THE ARBITRATOR: So it's
Interrogatory 1 --
MR. HUNT: The response we got was
that this information is not relevant. And I
think you've already ruled that, to the
extent that these -- first of all, we need to
know if it's a partnership, what kind of
partnership it is, and who the partners are.
Looks like the only thing you were
withholding or that we could think you'd
potentially withhold is the percent
beneficial interest to the account.
THE ARBITRATOR: Well, I would modify
it -- after the words "the names and
addresses of its current and former," I would
insert the word "general partners" and cross
out everything up to "its current and former
business addresses and current and former
principal places of business."
And since I was ruling with respect to
documents, conceivably Ms. Chaitman could

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

13 (Pages 46 to 49)

Page 46

1  answer that by saying, see documents Bates
2  Nos. 1 through whatever.
3        MR. HUNT:  I would agree with that.
4        THE ARBITRATOR:  Okay.
5        MR. HUNT:  And then Interrogatory
6  No. 2 also relates to that.  We asked them
7  for the dates and amounts of any transfers
8  received by the partnership, whether the
9  person was a partner, and state whether that
10  person received any portion of the transfers.
11  They respond by telling us who the partners
12  are.
13        MS. CHAITMAN:  Again, I think that
14  that's precisely -- that runs afoul of the
15  mandate from the Supreme Court on down that
16  they're seeking discovery to frame a
17  complaint against a subsequent transferee.
18        MR. HUNT:  I can tell you one thing is
19  certain -- and we've been accused about this
20  repeatedly, and it's not true, and that is
21  that we're using this discovery to form a
22  complaint against someone else.  That is not
23  true.
24        What we're trying to do is find out
25  where the money went so we can trace it, and

Page 47

1  that's all we're trying to do.
2        THE ARBITRATOR:  But as I understand
3  case law regarding pleading and the case law
4  that relates to who in a partnership is
5  liable for the debts, and I'm using that in
6  the generic way of the partnership, it's the
7  general partner only.  So I'm inclined to
8  reserve decision on Interrogatory No. 2.
9  Let's wait and see what happens with respect
10  to Interrogatory No. 1.
11        It may be that, at a later date, I
12  grant that request or other requests relating
13  to transfers, but I think we need to see is
14  there a real partnership.
15        MR. HUNT:  I agree with you.
16        THE ARBITRATOR:  If it's got a binder
17  of documents reflecting meetings of the
18  partnership and the like, it's a very
19  different animal than if it's an investment
20  club.
21        MR. HUNT:  I agree with you.  I think
22  that's a great resolution of that
23  Interrogatory No. 2.
24        THE ARBITRATOR:  Okay.
25        MR. HUNT:  Interrogatory No. 3 we

Page 48

1  asked for reasons for each transfer.  And
2  they simply say they're not able to do so.
3  Someone, the general partner or someone,
4  requested this transfer and we want to know
5  why and what was the intent of the use of the
6  money.
7        THE ARBITRATOR:  Well, again, let's
8  see who the general partner is because I
9  probably -- assuming there is a general
10  partner, that it has some formality, I
11  probably would require the general partner to
12  answer that question, but not the other
13  partners.  So --
14        MS. CHAITMAN:  Why would that be
15  anything other than discovery to frame a
16  complaint?
17        THE ARBITRATOR:  Well --
18        MS. CHAITMAN:  Because, again, if the
19  account -- we're not disputing that the
20  account holder took the money.  So now you're
21  going to the next generation of transfers.
22        THE ARBITRATOR:  Well, I don't know
23  which defenses you asserted with respect to
24  partnership, but potentially it could impact
25  some of your affirmative defenses.  But to be

Page 49

1  clear, I'm not ruling that that is the way I
2  would rule.
3        MR. HUNT:  I'm comfortable with you
4  deferring a ruling on that pending obtaining
5  some additional documents and information
6  about this entity, whatever it is.
7        THE ARBITRATOR:  Train Klan also
8  raises the question -- and I'm jumping ahead
9  and perhaps out of the order -- the trustee
10  wanted to raise issues, but there's -- in
11  response to "Identify each deposit into the
12  account" is the answer "Responding parties do
13  not dispute the deposits and withdrawals
14  shown on Exhibit B," but then there's the
15  caveat about "The records are permeated with
16  fraud, no records exists before 1998, so
17  trustee has no competent evidence of any
18  activity in the account prior to
19  December 1998," although this speaks to what
20  I was talking about about boilerplate used by
21  both sides.
22        As I understand what I was told, this
23  account didn't exist before 2003, so it
24  doesn't much matter what happened in 1998.
25  But let me not jump ahead and --

## Page 50

1  MR. HUNT: I think that's exactly the
2  next place I was going as well, was
3  Interrogatory No. 5.
4  THE ARBITRATOR: Okay.
5  MR. HUNT: You know -- and this is
6  sort of something we see across all of these
7  responses, which is, they say they don't
8  dispute, whatever that means, the deposits
9  and withdrawals shown on Exhibit B. It seems
10 like what they're not disputing is that the
11 numbers appear on the page.
12 Because then they go on to say there
13 are all these problems with the numbers and
14 they have affirmative defenses that say we
15 can't prove the deposits and withdrawals. So
16 anytime you see an answer that's supposed to
17 be some kind of an admission followed by the
18 word "however" and then followed by the word
19 "moreover," it's not.
20 And so we have the right to ask them
21 to identify each deposit into the account so
22 that we can figure out if they do actually
23 dispute any of them.
24 THE ARBITRATOR: Well, what I find
25 particularly confusing, Ms. Chaitman, is, as

## Page 51

1  to bank records -- third-party bank records,
2  in some of these answers, although that may
3  be moot now, you've said, you're not entitled
4  to it because we don't dispute the deposits
5  and withdrawals on Exhibit B, but then the
6  20th affirmative defense says, "The trustee
7  has fraudulently calculated defendants'
8  liability." It's hard to square those two
9  responses.
10 MS. CHAITMAN: Well, I have offered
11 to -- when we concede the accuracy of the
12 deposits and withdrawals, we're agreeing that
13 Exhibit B is accurate. And that obviously we --
14 I'm volunteering that, and obviously that can
15 be enforced against my clients, there's no
16 question about that.
17 However, when we go to trial, the
18 trustee may try to rely upon records of
19 Madoff beyond Exhibit B. All I'm conceding
20 is that Exhibit B is accurate. I'm not
21 conceding that Madoff's records are accurate.
22 In fact, Picard's own expert has said that
23 Madoff's records are permeated with fraud.
24 So I'm simply reserving the right to
25 object to other records. I'm not contesting

## Page 52

1  the accuracy of Exhibit B.
2  MR. HUNT: That's not accurate.
3  THE ARBITRATOR: Pull up Exhibit B. I
4  don't have the Train Klan --
5  MR. HUNT: I've got it right here.
6  THE ARBITRATOR: But I've -- really
7  for these purposes, it's only the columns.
8  There were a number of ways in which one
9  could interpret your response, one of which
10 is, for the two-year period at issue, we
11 don't dispute the deposits and withdrawals.
12 Another is that we don't dispute
13 Columns 1 through 10, which takes you through
14 the two-year fraudulent transfer calculation.
15 As I understand it, the six-year fraudulent
16 conveyance calculation is basically
17 irrelevant --
18 MR. HUNT: That's correct.
19 THE ARBITRATOR: -- as to everybody
20 we're going to be talking about today.
21 MR. HUNT: That's correct.
22 THE ARBITRATOR: So is it that you're
23 agreeing with Columns 1 through 10?
24 MS. CHAITMAN: We're agreeing with the
25 deposits and withdrawals, which are Column 4

## Page 53

1  and 5.
2  THE ARBITRATOR: Right. Another way
3  of saying that is that you're agreeing with the
4  net equity calculation; is that --
5  MS. CHAITMAN: Well, we're agreeing --
6  we contest the --
7  THE ARBITRATOR: Column 5 gives you at
8  the bottom a net equity number.
9  MS. CHAITMAN: Right. We're agreeing
10 with -- we're agreeing that the cash deposits
11 are accurately reflected in Column 4 and the
12 cash withdrawals are accurately reflected in
13 Column 5.
14 We're not agreeing -- we're not
15 agreeing as to the trustee's calculation of
16 principal because we don't agree that in
17 the -- in these cases, the trustee is allowed
18 to recover.
19 THE ARBITRATOR: Okay.
20 MS. CHAITMAN: So -- you know, that's
21 why I tried to be very specific. We're
22 agreeing to the deposits and withdrawals.
23 THE ARBITRATOR: Just to be clear,
24 using Train Klan, it shows a negative number
25 of $1,442,181 because more money was taken

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 16 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

15 (Pages 54 to 57)

Page 54

out than was put in.

MS. CHAITMAN: Correct.

THE ARBITRATOR: And you're not disputing that.

MS. CHAITMAN: The math, correct. Or the deposits and withdrawals.

But, again, I have the reservation because there are a lot of other books and records that may become relevant. And I don't want to come to trial and find out that I've conceded the accuracy of all of Madoff's records, because I haven't.

THE ARBITRATOR: Well -- and by agreeing with 4 and 5, you're also agreeing with 1 through 3, the dates and --

MS. CHAITMAN: Well, yes. But in this particular instance, we are, but in some, there are inter-account transfers. And it becomes much more complicated at that point.

THE ARBITRATOR: Sure. Let's deal with the purist case first, like Train Klan, where there are no inter-account transfers.

My thought was that rather than getting mired in the interrogatory responses, that this is better handled under the other

Page 55

alternative that Judge Bernstein suggested at one of his conferences, which is a stipulation.

MS. CHAITMAN: I recall that. I think that's a good idea. We had no problem with that.

THE ARBITRATOR: So -- so the stipulation would be that the defendant in question does not dispute the accuracy or completeness of the information in Columns 1 through 5 of Exhibit B of the relevant complaint.

MS. CHAITMAN: Well, the easier way to do it I think is 4 and 5. Because I have to -- in this case, we can do that, but where there are inter-account transfers, we can't.

THE ARBITRATOR: And I'm just trying to deal with the pure case.

MS. CHAITMAN: In this case, we can do that.

THE ARBITRATOR: The reason I said 1 through 5 is because it's also relevant what the two-year look-back period is. So the dates are important; correct?

MS. CHAITMAN: Right.

Page 56

THE ARBITRATOR: So you don't have a problem with what I just said --

MS. CHAITMAN: That's what --

THE ARBITRATOR: -- in actions where there are no complicating factors, whether it's inter-account transfers or -- I know one of the defendants said, I was not being credited or I was being charged with two $25,000 -- I can't remember if it was deposit or withdrawal, it was probably withdrawal -- that was double counted. Obviously there may be glitches like that. But for somebody who doesn't have inter-account transfers, that stipulation works?

MS. CHAITMAN: Yes.

THE ARBITRATOR: Okay. It seems to me that that eliminates a lot of the concerns about the interrogatory responses.

MR. HUNT: Yes. So I think what that means then is that, you know --

THE ARBITRATOR: And let me modify what I just said on the fly and say it should have the words in there "at trial." So at trial, the defendant will not challenge what I had said earlier.

Page 57

MR. HUNT: I would agree with that. And what that effectively means then is that she would be withdrawing, for example, the 20th affirmative defense.

MS. CHAITMAN: What's the 20th affirmative defense?

MR. HUNT: "Trustee has fraudulently calculated defendants' liability by charging defendants with withdrawals that the trustee has no proof were taken."

MS. CHAITMAN: In this case, I would, yes.

THE ARBITRATOR: Well, in any case where --

MS. CHAITMAN: Where I stipulate.

THE ARBITRATOR: -- you enter into that stipulation, the 20th defense takes a nose dive.

MS. CHAITMAN: Right.

MR. HUNT: Okay.

THE ARBITRATOR: And I think that obviates problems. It also -- even if there were inconsistent interrogatory responses or affirmative defenses, they go out the window because the stipulation controls.

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 17 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

16 (Pages 58 to 61)

Page 58

1    MR. HUNT:  Right.
2        So just to be clear then, that
3    stipulation is now on the record here.  So
4    we're not going to spend time drafting
5    something with her.  Because we've tried this
6    for a long time in the past.
7        THE ARBITRATOR:  Well, once we get the
8    transcript of this, and I'd ask that the
9    trustee have it expedited, my order will say
10   what I just said, with the modification that
11   I just described.  If either side thinks it
12   needs more or fewer words, you can let me
13   know that in a few days.
14       And I may or may not modify my order,
15   but ultimately there will be an order saying,
16   if Ms. Chaitman's clients stipulate to X,
17   they need not modify particular interrogatory
18   responses.
19       MR. HUNT:  Okay.
20       THE ARBITRATOR:  And -- and while
21   we're talking about that, to the extent that
22   her interrogatory responses or the
23   stipulation withdraw particular affirmative
24   defenses, I'm not sure much is accomplished
25   by requiring Ms. Chaitman to file an amended

Page 59

1    answer.
2        MR. HUNT:  I agree.  I think what I'd
3    like to do is get it on the record that
4    they're withdrawn.  Because you can withdraw
5    them and you can always reinstate them, but
6    if there's an order and agreement they're not
7    going to --
8        THE ARBITRATOR:  If there's a
9    stipulation --
10       MR. HUNT:  I agree.
11       MS. CHAITMAN:  If it's a stipulation
12   as to certain facts.  I think we have to be
13   careful because we do -- again, this is -- if
14   we're specifically talking about Train Klan,
15   it's fine, but there are issues about
16   fraudulent calculations that are earlier in
17   time.
18       So we're not going to -- I may
19   stipulate in a case, but I'm not going to
20   withdraw some of the affirmative defenses.
21   In other words, obviously if we stipulate
22   that the deposits and withdrawals were made,
23   that's binding.  But that doesn't mean
24   that --
25       THE ARBITRATOR:  Let's take two cases,

Page 60

1    one in which there are pre -- what was it,
2    1998?
3        MS. CHAITMAN:  December 1998 is when
4    we have third-party bank records.
5        THE ARBITRATOR:  So one in which there
6    are records going back to the early '80s or
7    Exhibit B reflects information going back to
8    the early '80s.  The second scenario, an
9    account with inter-account transfers.  Let's
10   deal with the second of those first.
11       I suppose -- well -- and they may be
12   the same issue because it may be that the
13   transferor account predates the time period
14   where you have -- where there are records and
15   that gives rise to the concerns.  But I think
16   we're all in agreement that in cases where
17   the stipulation is entered into, that solves
18   the problem.
19       So let me turn to you, Ms. Chaitman,
20   and say, where have you said, if anywhere,
21   you don't dispute Exhibit B, but you still
22   want to rely on the "however" and "moreover"
23   language?
24       MS. CHAITMAN:  Well, as you can
25   appreciate, Judge, some of these accounts

Page 61

1    date back to 1980.
2        THE ARBITRATOR:  Right.
3        MS. CHAITMAN:  And nobody has the
4    records, nobody has a recollection, the
5    people who owned the accounts may not be
6    alive.  So -- and the trustee's position is
7    that the fraud existed from inception and
8    that the records are permeated with fraud.
9        And in fact, we've made a motion now
10   before Judge Bernstein in the profit
11   withdrawal litigation barring the admission
12   of Madoff's books and records because they
13   don't come with any of the business record
14   exceptions.
15       THE ARBITRATOR:  I guess the trustee's
16   position is that the records accurately
17   reflect a fraud.  So to the extent that
18   there's language about permeated with or -- I
19   know there was parallel language, perhaps,
20   but they're arguing that all the trading from
21   the beginning of time was fictitious.
22       You're contending that, based on
23   Madoff and his colleague, some of the trading
24   may have been real and that, therefore, the
25   Ponzi presumption doesn't apply to the later

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

17 (Pages 62 to 65)

Page 62

1    date.
2         Are there cases in which, because of
3    the age of the relationship with Madoff's
4    business or because of inter-account
5    transfers, you have the language that you
6    don't dispute the deposits and withdrawals on
7    Exhibit B, but are still contesting the
8    admissibility of the records?
9         MS. CHAITMAN: Yes. We -- we contest
10   the admissibility of Madoff's records for any
11   period when there aren't third-party bank
12   records. And --
13        THE ARBITRATOR: So that's 1998
14   backward?
15        MS. CHAITMAN: December 1998, yes.
16        And there may be instances where we
17   would concede the accuracy of Exhibit B from
18   a certain point on, but not before. So I
19   think it would be -- it would be difficult
20   for me to agree that, in every instance in
21   which I can stipulate as to certain deposits
22   and withdrawals, I can also stipulate that
23   the affirmative defense that the records are
24   fraudulent is taken out. I can't do that
25   because I -- I think that Madoff's records

Page 63

1    will not be admitted. I think they are not
2    admissible.
3         THE ARBITRATOR: Once you stipulate to
4    it --
5         MS. CHAITMAN: But only for a certain
6    period. I'm not stipulating for the whole
7    period. In other words, we can take it case
8    by case, but --
9         THE ARBITRATOR: If we look at the two
10   other defendants that are part of the
11   trustee's motion, does that shed light on
12   this?
13        MS. CHAITMAN: No, because in these
14   three cases, we have conceded the accuracy of
15   Exhibit B from inception.
16        THE ARBITRATOR: Okay. I'm open to
17   suggestions as to how to proceed.
18        MR. HUNT: Yeah, I hear exactly what
19   you're saying.
20        So just to be clear then, on Train
21   Klan, taking it one at a time, the defendants
22   are going to stipulate that all of the
23   transactions that are listed in Exhibit B,
24   Columns 1 through 5, accurately reflect the
25   transactions that took place in this account.

Page 64

1         THE ARBITRATOR: And will not be
2    contested at trial.
3         MR. HUNT: And so with respect to
4    Interrogatory No. 5 then, we asked them to
5    identify each deposit. And by that we also
6    need to know who received the deposit. So
7    Exhibit B by itself does not answer that
8    question.
9         So I'd like at least an answer as to
10   whether or not the deposit was given to Train
11   Klan or not; right?
12        THE ARBITRATOR: Well, deposits --
13        MR. HUNT: Or the withdrawals. Sorry.
14   The deposit's been made by Train Klan. So
15   for each deposit, did Train Klan make the
16   deposit? And then, similarly, with respect
17   to each withdrawal, who got the withdrawal,
18   if Train Klan got the withdrawal.
19        MS. CHAITMAN: Well, you see, that's
20   exactly the subsequent transferee discovery
21   that the trustee is not permitted to take.
22        MR. HUNT: We need to know --
23        MS. CHAITMAN: You can't --
24        MR. HUNT: We have a right to know
25   who -- if the -- who the initial transferee

Page 65

1    is. We have a right to know that.
2         MS. CHAITMAN: The initial transferee
3    is the account holder.
4         THE ARBITRATOR: I was about to say
5    maybe the stipulation needs some
6    supplementation to say, and does not dispute
7    that the account holder received the
8    withdrawal reflected in Column 5. That may,
9    in a particular circumstance, be inaccurate.
10   It may be that, rather than somebody getting
11   a check payable to themselves, it was to
12   their Bar Mitzvah caterer, but it solves your
13   problem and eliminates the need to respond to
14   that interrogatory.
15        MR. HUNT: I agree with that.
16        THE ARBITRATOR: Does that work for
17   you?
18        MS. CHAITMAN: You're asking us to
19   stipulate that the money was deposited into
20   the account holder's account?
21        THE ARBITRATOR: Or that you're not
22   disputing -- at trial, you will not dispute
23   that that's the fact.
24        MS. CHAITMAN: So the money was
25   deposited into the account holder's account.

Page 66

Yes, I have no problem with that.

I don't think that that's what Dean was driving at. I think he's asking --

Dean, correct me if I'm misunderstanding you. I thought you wanted to know, once it went into the account holder's account, where did it go from there?

MR. HUNT: I need to know who got the initial transfer. That's all we need to know. So if it is true that each withdrawal was deposited into Train Klan's bank account, then that's what the stipulation should say. If the -- if it was deposited into some other account, we need to know that.

MS. CHAITMAN: And why would that -- why would you be -- see, again, let's assume -- and I don't know the fact. Let's assume that it was deposited into one of the partners' accounts. That partner then would be a subsequent transferee. Why would --

THE ARBITRATOR: No, not if it's a general partner.

MS. CHAITMAN: Okay.

THE ARBITRATOR: But it really doesn't matter to my mind, dealing with Train Klan

Page 67

specifically, whether the check was cut to the partnership, to the general partner or even to a limited partner, who the trustee might view as a subsequent transferor.

In any of those circumstances, the partnership and the general partner are on the hook for whatever the legal consequences of the transaction are.

MR. HUNT: Assuming it's a partnership.

THE ARBITRATOR: Assuming it's a partnership, yes.

So maybe -- maybe we have to see how many of the cases this resolution solves the problem for.

Do you have any sense, Ms. Chaitman, as to how many of your cases involve transferor accounts where money's transferred from Account A to Account B as part of the Exhibit B calculation?

MS. CHAITMAN: Well, I'm not following you. Because each account holder had a bank account and --

THE ARBITRATOR: I'm not talking about bank accounts. I'm talking about the

Page 68

Madoff -- well, let me phrase it a different way.

Do you know how many of the Exhibit Bs in terms of deposits implicate earlier accounts which are transferor accounts and, therefore, to your mind, complicate the accounting and what you can stipulate to?

MR. JACOBS: I think, your Honor, you're referring to inter-account transfers.

THE ARBITRATOR: Yes.

MR. JACOBS: So how many cases implicated inter-account transfers?

THE ARBITRATOR: Yes.

MS. CHAITMAN: I haven't counted them, but a lot.

MR. JACOBS: I haven't counted either, but there's a good portion. I would say at least roughly half.

THE ARBITRATOR: Okay.

MS. CHAITMAN: But not -- I don't believe any of the three that we're talking about; Benjamin, DiGiulian or Train Klan.

THE ARBITRATOR: Right. Well, I guess then the question is, even though it's not before me today, should we deal with what, if

Page 69

anything, can be stipulated to with regard to those other accounts? I'm content to leave that for another day. You tell me.

MS. CHAITMAN: You know, Judge, we have so many things before us. And I just think we'd be doing it in the abstract.

THE ARBITRATOR: Okay.

MR. JACOBS: Our position, your Honor, is we provided voluminous documentation as to all of our claims, whether there are bank records or not. And many of the factual issues are in, uniquely, the possession of the defendants.

And no matter what period of time they're from, the defendants have an obligation to have preserved those records when they were on notice of the litigation. And they have an obligation to do their own investigation as to the factual circumstances of our Exhibit B, regardless of the period of time.

And they should be required to answer our discovery as to their position as to each deposit and withdrawal and our net equity calculation whether there was an

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 20 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

19 (Pages 70 to 73)

**Page 70**

1    inter-account transfer or not.
2         THE ARBITRATOR: But it's not before
3    me today, so let's move on to whatever it is
4    Mr. Hunt next wants to talk about.
5         MR. JACOBS: Okay.
6         MR. HUNT: I think we have
7    Interrogatory No. 5 pretty well nailed down.
8         THE ARBITRATOR: Thank you.
9         MR. HUNT: For Interrogatory No. 6, we
10   asked them to identify people with knowledge.
11   Other than the BLMIS people, we didn't get a
12   single person. And we didn't get that in the
13   initial disclosures either. So there must be
14   someone we can talk to about this account.
15        THE ARBITRATOR: Yes, I agree. That
16   has to be -- you don't even say the account
17   holder, assuming that person is alive and not
18   an entity, has knowledge. And those answers
19   clearly are deficient to my mind.
20        MS. CHAITMAN: Okay.
21        MR. HUNT: Interrogatory No. 7, I
22   think I would like to withhold that one
23   because it falls into this whole category
24   of --
25        THE ARBITRATOR: Indirect.

**Page 71**

1         MR. HUNT: Yes. But I would just
2    point out that, with respect to Interrogatory
3    No. 7, when we asked them what entity
4    received the funds withdrawn from the
5    account, they say they're unable to do so.
6    That, of course, can't be true. Someone --
7         THE ARBITRATOR: It's going to get
8    solved by the stipulation.
9         MR. HUNT: I think that's right, for
10   the most part.
11        Just going back down my list based on
12   the stipulation to see.
13        Interrogatory No. 10 --
14        MS. CHAITMAN: If I can just
15   interject, you know, for the period from
16   December 1998 on, the trustee has the front
17   and back of every check. So the trustee has
18   that information. The clients in general
19   don't have records going back that far. The
20   trustee has those records. So he doesn't
21   need me to --
22        THE ARBITRATOR: Well, again, it's
23   solved by the stipulation, which may be in
24   some instances wrong, using my Bar Mitzvah
25   example. But if you stipulated that the

**Page 72**

1    account holder got the initial check, that
2    solves the problem.
3         MS. CHAITMAN: Right, but the trustee
4    has those records.
5         THE ARBITRATOR: I understand that.
6         You were talking, Mr. Hunt, about
7    number 10.
8         MR. HUNT: I think I'll go ahead and
9    pass on 10 at this point in time.
10        THE ARBITRATOR: I was about to say
11   10 -- just so you understand what we're
12   talking about, Ms. Chaitman -- deals with
13   where have you banked.
14        But it seems to me your entitlement to
15   that information goes out the window with the
16   stipulation.
17        MR. HUNT: It's a narrow window, but I
18   would agree with you on that.
19        With respect to Interrogatory No. 13,
20   they say they're withdrawing that defense.
21   I'd just like the order to reflect that is,
22   in fact, the case so it doesn't come up again
23   at trial. This has to do with the setoff --
24        THE ARBITRATOR: Why don't I simply
25   say that any affirmative defenses that are

**Page 73**

1    withdrawn may not be reasserted at trial.
2         MR. HUNT: Okay. That's fine.
3         MS. CHAITMAN: Yes.
4         MR. HUNT: That are withdrawn in this
5    set of interrogatories.
6         THE ARBITRATOR: I can make it more
7    generic. Any affirmative defenses that are
8    withdrawn, whether it's in these three cases
9    or --
10        MR. HUNT: Or in a letter that they
11   sent us or whatever?
12        THE ARBITRATOR: Sure.
13        MR. HUNT: Okay. So in this
14   particular one then, Interrogatory No. 14, I
15   think they have withdrawn that affirmative
16   defense.
17        THE ARBITRATOR: Right.
18        MR. HUNT: Correct?
19        MS. CHAITMAN: Yes.
20        MR. HUNT: Interrogatory No. 15, I
21   think they've withdrawn that affirmative
22   defense; correct?
23        MS. CHAITMAN: Which one is that?
24        MR. HUNT: "Trustee's claims are
25   barred, in whole or in part, for failure to

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 21 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

20 (Pages 74 to 77)

Page 74

1 properly credit inter-account transfers,
2 profit withdrawals and other adjustments."
3      MS. CHAITMAN: This was --
4      THE ARBITRATOR: I don't think they
5 have, if I'm looking at the right paperwork.
6 It says, "The trustee has admitted that
7 Madoff's records are permeated with fraud,
8 therefore, they cannot possibly be reliable
9 and/or admissible."
10      You're saying, based on the stip --
11      MR. HUNT: Yes, I think based on the
12 stipulation, they've withdrawn that
13 affirmative defense.
14      MS. CHAITMAN: No, because it's only
15 as to the specific deposits and withdrawals.
16 You know, I'm not waiving the right to object
17 to the admission of other records that the
18 trustee may seek to put into evidence at
19 trial.
20      THE ARBITRATOR: And this is an
21 example of the boilerplate because it talks
22 about inter-account transfers, but there are
23 no inter-account transfers in Train Klan.
24      MR. HUNT: There are no profit
25 withdrawals and no adjustments. So it seems

Page 75

1 either they need to withdraw the defense or
2 answer the interrogatory.
3      THE ARBITRATOR: Unless you can tell
4 me why that's wrong, Ms. Chaitman, I'm
5 inclined to agree with that.
6      MS. CHAITMAN: Well, I'd like to think
7 about that. Because I don't want to waive
8 the right to object to the admission of
9 evidence at trial that is unreliable and -- I
10 don't want to have a blanket waiver. I can
11 reword that affirmative defense, but I don't
12 want to waive that.
13      THE ARBITRATOR: Well, unless you
14 convince me otherwise, I do think that the
15 stipulation, as a practical matter, means
16 that Judge Bernstein won't hear argument as
17 to anything that relates to Columns 1 through
18 5 of Exhibit B.
19      And, conceivably, since there would be
20 a lot of these trials, he may not hear
21 evidence from the trustee about it either. I
22 suppose there are experts whom the trustee
23 contemplates offering as to the accuracy of
24 the records, but I can envision a scenario
25 where Judge Bernstein says, I don't need to

Page 76

1 hear that because I have the stipulation, and
2 you move on from there.
3      MR. HUNT: As long as the affirmative
4 defense is in place, the stipulation's not
5 fully effectuated. Because she claims that
6 there are some -- something to do with the
7 account that she disagrees with because
8 they're not properly credited to the account.
9      So -- I mean, I know you don't have it
10 in front of you, Ms. Chaitman, but it's clear
11 that this particular affirmative defense
12 is -- directly relates to the stipulation
13 that we just made.
14      THE ARBITRATOR: It's the 27th;
15 correct?
16      MR. HUNT: Yes, sir.
17      THE ARBITRATOR: Here. Let me show it
18 to you.
19      MS. CHAITMAN: Thanks. I didn't bring
20 my binder.
21      THE ARBITRATOR: It continues on the
22 other side.
23      (Pause from the record.)
24      MS. CHAITMAN: Okay. I would agree
25 that that is out.

Page 77

1      MR. HUNT: Okay. So Interrogatory
2 No. 16, they've withdrawn that affirmative
3 defense, so that's good.
4      Interrogatory No. 17, again, I think
5 based on the stipulation that we've just
6 received, that that is an example of one of
7 the defenses that would be withdrawn.
8 Because she says that we failed to properly
9 credit defendants with all of defendants'
10 deposits.
11      MS. CHAITMAN: I agree about that.
12      MR. HUNT: Okay. Just to be clear,
13 the 46th affirmative defense is withdrawn;
14 correct?
15      MS. CHAITMAN: Yes.
16      MR. HUNT: Okay. Interrogatory
17 No. 18, we ask for parties who have knowledge
18 of the deposits and possess documents.
19      THE ARBITRATOR: Wouldn't that become
20 irrelevant by virtue of the stipulation?
21      MR. HUNT: Maybe. How about we
22 withhold on that, see what we get back from
23 them with respect to the answer to the
24 interrogatory, whether they identify a person
25 with knowledge.

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 22 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

21 (Pages 78 to 81)

Page 78

MS. CHAITMAN: The point is, if we're conceding it, why would you need to take discovery? What's the benefit of conceding if we're going to then have discovery on it?

MR. HUNT: There's still affirmative defenses pled.

MS. CHAITMAN: We just waived the specific affirmative defense.

THE ARBITRATOR: That's a different issue. It may be that there are narrower areas where a deposition or other discovery could be taken, but let's not deal with that in the abstract.

MR. HUNT: So I mean, I think identifying persons with knowledge is -- and who have documents is perfectly acceptable discovery. We have the right to know who we might be faced with at trial.

THE ARBITRATOR: Except you asked for information concerning any transfers, deposits or subsequent transfers.

MR. HUNT: And I agree that's not part of the deal. I withdraw that.

THE ARBITRATOR: But I think that's answered adequately by Interrogatory No. 6,

Page 79

which is "Identify any person with knowledge of any transfer" --

MR. HUNT: You and I are on the same page with that. That's exactly what I was saying. I would withhold asking for any more information about this depending on the quality of the information we get with respect to Interrogatory No. 6.

THE ARBITRATOR: Okay.

MR. HUNT: That concludes the reading for today with respect to these interrogatories.

THE ARBITRATOR: Okay. With respect to Train Klan. Don't make it sound better than it is.

MR. HUNT: That's why I put the caveat in there at the end. So we also have document requests for Train Klan. Maybe we could take a short break and let me look at this based on the stipulation --

THE ARBITRATOR: Sure.

MR. HUNT: -- see if there's some -- we can streamline this a little bit.

THE ARBITRATOR: Absolutely. I'm sure we'd all be in favor of that.

Page 80

(Recess from the record.)

THE ARBITRATOR: What's next, Mr. Hunt?

MR. HUNT: The document request in the Train Klan matter, we took a short break and I think we've eliminated the need for a number of these, but I do want to go through a few of them.

THE ARBITRATOR: Sure.

MR. HUNT: Some of them I think you sort of already ruled on, but just to be clear.

Document Request No. 1 asks for organizational documents relating to the partnership agreements or document with equivalent function of partnership agreement and any amendments to those agreements.

I think you've already ruled that we'll get those; correct?

THE ARBITRATOR: Well, let me phrase it this way: I made a ruling with respect to it, and my order will correspond to my ruling.

MR. HUNT: Okay.

THE ARBITRATOR: So I think I dealt

Page 81

with it.

MS. CHAITMAN: Yeah, let's not repeat the --

THE ARBITRATOR: Right.

MS. CHAITMAN: Because we're going to rely on the transcript.

MR. HUNT: I just want to make it clear.

Document Request No. 3 talks about minutes of partnership meetings, resolutions, agreements and policies concerning the account, which I think falls into that similar category. I would withdraw that.

THE ARBITRATOR: In effect, I'm disallowing that one for the time being except to the extent that it falls within what I described earlier.

MR. HUNT: Falls within what? Just to make clear.

THE ARBITRATOR: My ruling with respect to the documents you get with respect to the partnership, assuming there are such documents. But if they were, for example, investment policies, I'm denying that request and the other elements of this without

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

Page 82

1  prejudice to a later application.
2      MR. HUNT: I agree with that. That's
3  fine.
4      And then Document Request No. 4,
5  taking out the word "and limited," we are
6  looking for all general partners, current and
7  former.
8      THE ARBITRATOR: I think 4 is
9  virtually what my ruling was because it says,
10  Ms. Chaitman -- well, it says, "all
11  documents." I would take out "all" and say
12  "documents sufficient to show all general
13  partners of the partnership."
14      MR. HUNT: It actually says that, "all
15  documents sufficient to show."
16      THE ARBITRATOR: I'm taking out the
17  word "all."
18      MS. CHAITMAN: So if there's one
19  document --
20      THE ARBITRATOR: Let's assume this
21  was -- and it's not, but let's assume this
22  was Baker & Hostetler, assuming it's a
23  partnership. I would not be allowing all
24  documents sufficient to show who the partners
25  are, but just some documents sufficient to

Page 83

1  show --
2      MR. HUNT: I absolutely agree with
3  that and acknowledge it.
4      The next one is Document Request
5  No. 9, documents sufficient to identify any
6  money, property or anything else of value
7  provided by you to BLMIS in exchange for any
8  initial transfer.
9      They say we have no legitimate
10  interest in any such documents. First of
11  all, we're asking about initial transfers.
12      And, second, with respect to the
13  affirmative defenses, they have Affirmative
14  Defense No. 3, which says that the defendants
15  gave reasonably equivalent value in exchange
16  for the transfers, and Affirmative Defense
17  No. 4, which relates to the antecedent debt
18  defense.
19      So as long as those defenses are still
20  pled and the issue of value given with
21  respect to the initial transfers is still an
22  issue, then we have a right to receive those
23  documents.
24      MS. CHAITMAN: Well, if I'm
25  stipulating to the deposits, I don't

Page 84

1  understand why we have to produce them.
2  What's the point of stipulating to them?
3      THE ARBITRATOR: Is there a difference
4  between initial transfer and initial
5  deposits?
6      MR. HUNT: The initial transfer is the
7  withdrawal. It can be the withdrawal. So
8  they're saying that they gave value for the
9  withdrawals. That's how I read their
10  affirmative defense, unless it says something
11  different. I mean, either they withdraw
12  those affirmative defenses or produce the
13  documents related to them.
14      MS. CHAITMAN: The document related to
15  the withdrawal is the check from Madoff,
16  which the trustee has. We're stipulating
17  that we got those withdrawals.
18      MR. HUNT: I know that you don't have
19  the document in front of you, but the defense
20  that you assert is that the defendants gave
21  value to BLMIS in exchange for the
22  withdrawal. So --
23      MS. CHAITMAN: Yeah, and I'm not
24  waiving that. That's 548(c).
25      MR. HUNT: We want to know what value

Page 85

1  they gave.
2      MS. CHAITMAN: That's -- the value is
3  they gave the money. I'm not waiving an
4  affirmative defense which exists under the
5  statute.
6      THE ARBITRATOR: And I think I agree
7  with Ms. Chaitman. I just want to see where
8  the definition of initial transfer is.
9      MR. JACOBS: That defense has also
10  been dismissed by Judge Bernstein. So it's
11  not applicable any longer to the case.
12      MS. CHAITMAN: It is on appeal and I'm
13  not waiving it.
14      MR. JACOBS: But it's not currently
15  applicable in the case.
16      THE ARBITRATOR: Well, then let me
17  interrupt you for a second and say, why are
18  we talking about it?
19      MR. JACOBS: We're talking about it
20  because I think we have a right to know if
21  there's another basis of value that's being
22  asserted other than just having made deposits
23  into the account. So was there -- were there
24  other monies provided that aren't reflected
25  in Exhibit B? Was a car given as a gift to

---

Page 86

1   Mr. Madoff's grandchildren?  Anything of that
2   sort I think is the point.
3          MR. HUNT:  So if the answer said that
4   the only value that the parties allege is the
5   deposit, then I'm fine with not asking for
6   documents about that.
7          THE ARBITRATOR:  I didn't have the
8   presence of mind to write down what the
9   stipulation as modified was, but it certainly
10  talked about will not challenge the
11  correctness.  If we add the word
12  "completeness" in there, so that Ms. Chaitman
13  will not, on behalf of her clients, where
14  applicable, challenge the completeness of
15  Columns 1 through 5 of Exhibit B, seems to me
16  that would obviate your concern and I think
17  is already implicit in what --
18         MS. CHAITMAN:  I agree.
19         THE ARBITRATOR:  -- you said.
20         MS. CHAITMAN:  I agree.
21         MR. HUNT:  I agree.
22         THE ARBITRATOR:  Okay.  So --
23         MR. HUNT:  Thank you.
24         THE ARBITRATOR:  Okay.
25         MR. HUNT:  So the next one that comes

---

Page 87

1   up is Request No. 13 as it relates to
2   affirmative defenses asserted in defendants'
3   answer to the complaint.  They say that such
4   documents will be produced.  Modifying this
5   request to say any of the affirmative
6   defenses that have not been withdrawn, we
7   would like them to go ahead and produce the
8   documents.
9          THE ARBITRATOR:  I'm lost.  You were
10  talking about 13.
11         MR. HUNT:  Yes.
12         THE ARBITRATOR:  I'm looking at the
13  partnership responses.  And it's -- 13 says,
14  "The articles of incorporation, memoranda of
15  association" --
16         MR. HUNT:  Okay.  I'm looking at the
17  individual.  So they're slightly different,
18  maybe.
19         THE ARBITRATOR:  Okay.
20         MR. HUNT:  Yeah, there's only two
21  different ones.  One is 12, so that's why the
22  numbering is off a little bit.  So on the
23  partnership, I want --
24         THE ARBITRATOR:  Forgetting the
25  numbering for the moment, is the text the

---

Page 88

1   same?
2          MR. HUNT:  Yes, sir.
3          THE ARBITRATOR:  So tell me what it
4   says and I'll find it in the one I'm looking
5   at.
6          MR. HUNT:  "Documents you contend
7   support any denials of fact or affirmative
8   defenses asserted in defendants' answer to
9   the complaint."
10         And their response was, "Any such
11  documents shall be produced."
12         So no documents have been produced.
13  Then modifying this request to say, "any
14  remaining denials of fact or any remaining
15  affirmative defenses," we'd like them to
16  produce the documents.
17         MS. CHAITMAN:  I'm not following you.
18  You're changing the -- the document demand?
19         MR. HUNT:  Yes, I'm clarifying it
20  based upon the stipulation.
21         THE ARBITRATOR:  He's narrowing the
22  demand to say except -- let me rephrase it --
23  except to the extent that you've withdrawn
24  affirmative defenses, produce the documents
25  that support those affirmative defenses.

---

Page 89

1          MS. CHAITMAN:  But we've --
2          THE ARBITRATOR:  And you've said you
3   will --
4          MS. CHAITMAN:  To the extent that we
5   have them.  And if we haven't produced them,
6   we don't have them, so --
7          THE ARBITRATOR:  Okay.  Then
8   anticipating what Mr. Hunt's going to say, I
9   think that he wants some representation that
10  there are none.
11         MR. HUNT:  Agreed.
12         THE ARBITRATOR:  So maybe I can deal
13  with that with respect to Train Klan.  And
14  recognizing that there are 91 other cases
15  that you have hanging out there, but in Train
16  Klan, and maybe in the two other cases, if I
17  say, shall produce any documents relating to
18  the remaining affirmative defenses in the
19  case within ten days or be barred from using
20  such documents for any purpose --
21         MS. CHAITMAN:  But aren't these
22  documents in our possession?  If we're going
23  to be relying on documents that the trustee
24  has in his possession or that we're obtaining
25  from some third party --

---

Trustees Motion to Compel Discovery                           Arbitration 12/13/2016

24 (Pages 90 to 93)

Page 90

1       THE ARBITRATOR: Sure. He's not
2  interested in what he already has.
3       MS. CHAITMAN: Right.
4       THE ARBITRATOR: It's whatever you
5  have. So it's essentially a drop-dead date.
6       MS. CHAITMAN: I have no problem with
7  that.
8       THE ARBITRATOR: Okay.
9       MS. CARLISLE: With the caveat on
10  that, within ten days or clearly indicate
11  there are no such documents.
12       MR. HUNT: What he's saying is she
13  produces them by whatever or she's barred
14  from ever using them.
15       THE ARBITRATOR: Correct.
16       MS. CHAITMAN: Unless they're
17  documents that I obtain from a third party or
18  the trustee.
19       MR. HUNT: Any third-party documents
20  that you obtain you're supposed to produce to
21  us.
22       MS. CHAITMAN: If I haven't received
23  them yet, when I produce them -- I can't
24  produce them in 10 days if I serve a subpoena
25  in 20 days.

Page 91

1       THE ARBITRATOR: I --
2       MR. HUNT: I agree with that.
3       THE ARBITRATOR: Again, I'll try and
4  incorporate those two caveats into my
5  directive, and I'll make it applicable to all
6  three of the cases that are the subject of
7  the motion.
8       MR. HUNT: Okay. Thank you.
9       So the next one is -- I'm looking at
10  the individuals. I may be off by one. May
11  be 18 in the one you're looking at. But it's
12  documents you contend support the 29th
13  affirmative defense in which you contend the
14  complaint fails to state a claim on which
15  relief can be granted because it fails to
16  sufficiently trace the funds at issue from
17  BLMIS to defendants.
18       I think that --
19       THE ARBITRATOR: We don't need to, it
20  seems to me, go affirmative defense by
21  affirmative defense because the ruling
22  applies to whatever affirmative defenses
23  haven't been withdrawn.
24       MR. HUNT: That's true. And I just
25  was going to say, with respect to this one, I

Page 92

1  think it's probably one that should be
2  withdrawn based upon the stipulation.
3  Because it deals with tracing to the
4  defendants. I guess if they haven't
5  withdrawn it, then we'll get the documents.
6       THE ARBITRATOR: Right. Okay. And
7  implicit in what Ms. Chaitman is saying, at
8  least as to this one, it sounds like you're
9  not going to be getting documents because
10  there are none.
11       MS. CHAITMAN: We don't have them, but
12  we'll be relying on trustee's documents.
13       MR. HUNT: Okay.
14       THE ARBITRATOR: Okay.
15       MR. HUNT: Document Request No. --
16       THE ARBITRATOR: Let me interrupt.
17       When you say you don't have them, I
18  assume you've made a good-faith effort to get
19  from your clients whatever documents they
20  have.
21       MS. CHAITMAN: Yes, the clients don't
22  have these records, Judge.
23       THE ARBITRATOR: Sure.
24       MR. HUNT: I think they do have some
25  of them, but they just haven't produced them.

Page 93

1  Because you say in this that you would
2  produce them, and you haven't produced a
3  single document. But what I've done --
4       THE ARBITRATOR: Well, no, it says,
5  "any such documents will be produced," which
6  doesn't say that there aren't documents. It
7  says if there are documents, they'll be
8  produced.
9       MR. HUNT: It's sort of slickly
10  drafted, but either you have them and you
11  produce them or you don't.
12       So Document Request No. 23, any
13  documents you've received from any third
14  party --
15       THE ARBITRATOR: We discussed that.
16       MR. HUNT: -- she says she will
17  produce them if she has them.
18       I assume you don't have them at this
19  point in time; is that correct?
20       MS. CHAITMAN: Right.
21       THE ARBITRATOR: Maybe here I can make
22  a generic ruling again and say, unless
23  otherwise directed, any documents received
24  from third parties will be produced within
25  ten days.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

---

Page 94

1   MS. CHAITMAN:  Yeah.  And if you could
2   make that apply to the trustee as well,
3   Judge, because we've had a real problem with
4   the trustee subpoenaing third-party bank
5   records and waiting six to eight weeks before
6   they're delivered to me.
7   MR. HUNT:  With respect to this case,
8   I don't have any problem with that.  I don't
9   know about the other cases.  But I do know we
10  routinely produce documents back to the
11  parties as soon as we get them.
12  THE ARBITRATOR:  My initial reaction
13  was to make it apply to both sides.  I think
14  the wording needs some tweaking unless I make
15  it specific to these three cases, because, to
16  use one of the other cases I have, if they
17  got documents relevant to Ms. Crupi, which is
18  not your case, they wouldn't have to produce
19  them to you probably unless they relate to
20  your case.  But certainly with regard to
21  these three cases, yes, I will make it apply
22  to both sides.
23  MR. HUNT:  Okay.  And then the last
24  one was the catch-all documents consulted in
25  preparing responses to discovery.  They say

---

Page 95

1   any such documents will be produced, but we
2   have not received any documents.
3   THE ARBITRATOR:  But that falls within
4   my generic ruling, which is put up or shut up
5   within ten days.
6   MR. HUNT:  Okay.  The only issue
7   there, though, is that gives them the option
8   of deciding whether or not to give us a
9   document that might be useful in our case.
10  So I can see how that applies to affirmative
11  defenses where they are going to be precluded
12  from using the documents, but I still think
13  that we have a right to see what evidence or
14  what information they identified in
15  responding to discovery, as a general matter.
16  THE ARBITRATOR:  Except we've carved
17  out certain areas.  If, for example,
18  Ms. Chaitman has file cabinets full of
19  subsequent transfers to third- and
20  fourth-generation transferees, that's not --
21  that may be something she studied at length,
22  which would be responsive to 28, but would
23  not be something you're entitled to based on
24  our discussion thus far this morning.
25  MR. HUNT:  Right.  So her answer said

---

Page 96

1   that they're going to produce the documents.
2   I'll modify this to say we don't want any
3   subsequent transferee documents or any
4   documents directly related to the
5   transferees.
6   THE ARBITRATOR:  She just said that
7   she will produce them.  And my ruling has
8   been that any documents she's agreed to be
9   produced must be produced within ten days.
10  So if she has documents to produce, she will
11  produce them within ten days.
12  MR. HUNT:  Okay.  I'm fine with that.
13  Great.  That's all I had on that, on
14  Train Klan.
15  THE ARBITRATOR:  Okay.  Who's next?
16  MR. HUNT:  Next is DiGiulian.
17  THE ARBITRATOR:  Okay.
18  MR. HUNT:  So turning to the
19  interrogatories in DiGiulian, Interrogatory
20  No. 1 says, "Identify the reasons for the
21  transfers."
22  She says that "Withdrawals were taken
23  to pay applicable taxes, unreported
24  short-term capital gains in the account and
25  for the living expenses of Bruno DiGiulian."

---

Page 97

1   They provide no detail about the
2   applicable taxes that were paid, nor for the
3   living expenses.
4   THE ARBITRATOR:  I guess the answer --
5   putting aside the interrogatory, but the
6   answer relates to the defense, which I think
7   Judge Bernstein has stricken, which is, we're
8   entitled to a credit for taxes paid.
9   Do I have that right, Ms. Chaitman?
10  MS. CHAITMAN:  I don't believe that he
11  struck it.  I think that, in one case, he's
12  ruled that defendant is not entitled to a
13  credit, but, of course, we've asserted that
14  as an affirmative defense and we're going to
15  take it up.
16  THE ARBITRATOR:  Right.  But at the
17  moment -- I wasn't sure whether it was him or
18  a district judge, but at the moment, his view
19  is, in part, because each defendant has his
20  own unique tax situation or other expenses,
21  that they could claim that that's not a
22  credit that one of your clients can take.
23  Are we on the same page with regard to
24  that?
25  MS. CHAITMAN:  Yes.  He's ruled that

Page 98

1   way in one case, yes.
2       THE ARBITRATOR:  So given that, I'm
3   not sure why -- unless Ms. Chaitman prevails
4   on appeal, why the reason for each transfer
5   is relevant.
6       MR. HUNT:  But is she withdrawing the
7   offset defense in this case?
8       MS. CHAITMAN:  No, because -- here's
9   the thing:  I am going to go up on appeal on
10  any issue on which I lose.  I can't withdraw
11  it; right?  I'm not withdrawing it.  I'm
12  just -- I want to preserve it for appeal.
13      MR. HUNT:  So if the defense is still
14  in the case --
15      THE ARBITRATOR:  But it's not in the
16  case.  It's -- if it comes back into the case
17  before trial because a district judge says
18  that Judge Bernstein erred, then we'll deal
19  with that.  But at the moment, you're asking
20  for -- let me give you an analogy.
21      If this were a commercial case and
22  there were three claims in the complaint and,
23  at the motion to dismiss stage, a district
24  judge dismissed Claims 2 and 3, your argument
25  by analogy would be I still get discovery on

Page 99

1   Claims 2 and 3 because Ms. Chaitman has said
2   she intends to appeal that at the end of
3   case.  So that doesn't make any sense.
4       MR. HUNT:  Your analogy may be a
5   little off, though, because she's saying that
6   happened in another case, but it doesn't
7   apply to this case, I think is what she's
8   saying.  That's what I heard her say.
9       THE ARBITRATOR:  Is that what you're
10  saying?
11      MS. CHAITMAN:  There's no -- well,
12  Judge Bernstein did not rule for all the
13  cases.  He ruled in one case.
14      THE ARBITRATOR:  Right.
15      MS. CHAITMAN:  And I'm confident he'll
16  rule exactly the same way in every other
17  case.
18      THE ARBITRATOR:  Right.
19      MS. CHAITMAN:  But I should add one
20  other thing --
21      THE ARBITRATOR:  You're not trying to
22  be the Artful Dodger by saying, well, it only
23  applies to that case --
24      MS. CHAITMAN:  No, I mean, I can't
25  imagine Judge Bernstein -- maybe he would

Page 100

1   change his mind, but I don't think he would.
2       But the thing is that -- I want to
3   point out that in each of my cases, what I am
4   doing is submitting an accountant's affidavit
5   as to exactly what the taxes paid were.  So
6   they're getting that information, but they're
7   getting it through an accountant's affidavit.
8   We've been supplying those in a timely
9   manner.
10      THE ARBITRATOR:  But -- and that deals
11  with a document request rather than an
12  interrogatory.  But I think one of the things
13  that the trustee said in his papers is that
14  they're entitled to those underlying
15  documents in the earlier stage.
16      I'm not sure how it really helps you,
17  getting it at the earlier stage, but I don't
18  disagree with you that you're entitled to it.
19  It's, in effect, that which the accountant
20  would rely on.
21      MS. CHAITMAN:  Well, we're viewing it
22  pretty much as an expert's report.  We're
23  redacting -- the trustee's only entitled to
24  the information on the tax return which
25  relates to the Madoff income.  So it's a

Page 101

1   laborious process of redacting the tax
2   returns.
3       And that's what we're doing.  And
4   we're doing it in the form -- producing these
5   declarations.  So we're producing it.  We're
6   just not producing it in the first stage.
7       MR. HUNT:  Are you going to produce
8   one in this case?
9       MS. CHAITMAN:  We're producing
10  declarations in each of the cases.  You've
11  gotten a lot of them already.
12      MR. HUNT:  As long as the order says
13  that when a declaration comes, the underlying
14  documents supporting it are produced --
15      MS. CHAITMAN:  In a redacted form,
16  which is -- it just shows the --
17      MR. HUNT:  I don't --
18      MR. JACOBS:  There's no redaction for
19  relevance permitted under the case law rules,
20  to my knowledge.
21      THE ARBITRATOR:  Well, typically there
22  would not be.  There are confidentiality
23  orders obviously in all of these cases.  By
24  the same token, if Mr. DiGiulian has
25  $10 million in earned income, I'm not sure

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

---

Page 102

1  that's relevant to anything that the trustee
2  is concerned with.
3        MR. JACOBS:  It may or may not be,
4  your Honor, but we went through this exercise
5  with Ms. Chaitman concerning the Rule 35 bank
6  records where she attempted to unilaterally
7  redact out transactions that weren't related
8  to the BLMIS account.
9        And the judge explicitly overruled
10  that because, until we see the information,
11  we can't make a fair determination as to
12  whether it's relevant or not, given the
13  nature of the defenses that have been
14  asserted.  And there is a confidentiality
15  protective order in place that will protect
16  from the disclosure any of that confidential
17  information outside of use in the litigation.
18  So it -- it's not a valid concern.
19        THE ARBITRATOR:  Did I hear
20  Ms. Chaitman say you've already gotten --
21        MR. HUNT:  We haven't gotten any of
22  the underlying documents.
23        MS. CHAITMAN:  They haven't gotten the
24  documents yet, but the thing is --
25        THE ARBITRATOR:  Give me sort of a

---

Page 103

1  timeline.  When did you get the first of the
2  accountants' reports?
3        MS. CARLISLE:  I believe I've received
4  three of them, only one of the cases.  And
5  I'm not a hundred percent sure it's the
6  Gordon case.  There are two cases against
7  Ms. Gordon.  The first ones I received were
8  probably in August --
9        MS. CHAITMAN:  I don't remember.
10        MS. CARLISLE:  -- or September.  The
11  other two cases, fact and expert discovery is
12  currently closed.  These cases are much --
13  are further along.  And they were
14  one-to-two-page declarations from the
15  accountants just setting forth the amount of
16  taxes purportedly paid by these individuals.
17        MR. JACOBS:  That's the problem with
18  the reports, your Honor; they're hearsay.
19  Because none of the other underlying
20  documents or source information is provided.
21  One of the affidavits, it's not in any of the
22  cases before your Honor today, actually says
23  that the information provided in the
24  affidavit was based on discussions with
25  defendant from recollection.  It's really --

---

Page 104

1  it's rather egregious.
2        And the first one we ever received was
3  served on us after expert discovery had
4  closed.  So whether it's even fairly
5  considered in the case is a full separate
6  argument that we don't need to delve into
7  today.
8        But the fact of the matter is that all
9  of these underlying documentation, including
10  the taxes, must be produced in fact discovery
11  in each of these cases, regardless of whether
12  an affidavit is supplied by a fact witness or
13  a purported expert witness of any sort.  And
14  that's a pretty standard discovery --
15        THE ARBITRATOR:  As a general rule, I
16  agree with you, but I'm not unsympathetic to
17  what Ms. Chaitman is saying, which is -- she
18  hasn't said this, but I think what she's
19  trying to say is that, until my expert issues
20  his -- assuming it's a he -- his report, I
21  don't know what documents I'm supposed to be
22  producing; and, conversely, I'm not sure that
23  you're really prejudiced by getting the
24  documents with the report, although you
25  haven't been getting it with the report thus

---

Page 105

1  far.
2        MR. JACOBS:  Right.
3        MS. CHAITMAN:  And the other thing --
4        THE ARBITRATOR:  And I suppose the way
5  in which you might be prejudiced is if that
6  occasions a need to depose that particular --
7        MR. JACOBS:  Right.
8        THE ARBITRATOR:  -- defendant.  But if
9  there are documents produced in expert
10  discovery that conceptually should have been
11  produced in fact discovery, obviously, I
12  would look favorably on a request to depose
13  that defendant out of time.
14        MR. JACOBS:  Right.  Just a point of
15  confusion.  These aren't expert reports.
16  They're entirely factual in nature.  There's
17  no expert analysis.  There's no purported
18  expert qualification.  There's no disclosures
19  made under Rule 45 as that would be required
20  in connection with the designation of any
21  expert.  They're not being submitted in a
22  timely fashion on -- prior to the expert
23  disclosure dates, as required under the case
24  management orders.
25        So it's essentially the defendant has

Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

28 (Pages 106 to 109)

Page 106

1  said, I'm just going to force upon the
2  trustee a hearsay affidavit on factual issues
3  without any underlying documentation whenever
4  I want without regard to the rules or the
5  judge's orders.  And --
6        THE ARBITRATOR:  It also relates to an
7  affirmative defense, which at the moment is
8  not in the case.
9        MR. JACOBS:  Well, your Honor, it's in
10  the case until -- in my view, it's in the
11  case until we have either Ms. Chaitman
12  withdraws it affirmatively or we have a court
13  order dismissing it from the case.
14        THE ARBITRATOR:  Ms. Chaitman concedes
15  that -- unless she comes up with another
16  argument that sways Judge Bernstein, that
17  he's going to make the same ruling throwing
18  out the tax credit affirmative defense --
19        MR. JACOBS:  Right.
20        THE ARBITRATOR:  -- in all of her
21  cases.
22        MR. JACOBS:  If it's not in the case,
23  your Honor, why should the defendant be
24  allowed to enter into evidence supporting it
25  into the factual record if it's not in the

Page 107

1  case?  It's the same argument that
2  Ms. Chaitman makes that we're not allowed to
3  take discovery to frame a complaint.  Right?
4  I mean --
5        THE ARBITRATOR:  Let me --
6        MR. JACOBS:  It's in the case or it's
7  not I guess is the contention we're grappling
8  with here.
9        THE ARBITRATOR:  Let me tell you the
10  way in which I contemplate ruling on this,
11  and then both sides can take pot shots at it,
12  which is that any report by an accountant or
13  expert relating to the tax credit affirmative
14  defense must be accompanied by the unredacted
15  underlying documents upon which the report
16  relies.
17        MS. CHAITMAN:  Well, I would quarrel
18  with the unredacted portion of that because
19  the only credit we're seeking is for the
20  Madoff income.
21        THE ARBITRATOR:  But --
22        MS. CHAITMAN:  And the trustee's not
23  entitled to information about the defendants'
24  income other than that.
25        THE ARBITRATOR:  Well, one of the

Page 108

1  problems is the trustee may get a lot more
2  stuff than he wants.  Some of these people
3  may have Trump-like returns.
4        MR. HUNT:  Then they'll get nothing.
5        THE ARBITRATOR:  Hmm?
6        MR. HUNT:  Then they'll get nothing.
7        THE ARBITRATOR:  Good point.
8  Hang on a second.
9  Off the record.
10        (Discussion off the record.)
11        THE ARBITRATOR:  Back on the record.
12  I agree with what's been said about
13  redactions for relevance typically not being
14  allowed, but there are numerous potential
15  schedules to tax returns which are wholly
16  irrelevant and, both from a burdensomeness
17  perspective and from a privacy perspective,
18  I'm sympathetic to the defendants' desire to
19  shield that from disclosure.
20        What I will require be produced in
21  unredacted form, at the same time as an
22  accountant's or expert's report relating to
23  this affirmative defense, will be the first
24  two pages of the tax return and any schedules
25  or other attachments that relate specifically

Page 109

1  to the Madoff capital gains in unredacted
2  form.
3        Now, that doesn't deal with the
4  reports you've gotten thus far, but my ruling
5  with respect to that will be that, for
6  reports you've gotten thus far, that that
7  material be produced within ten days.
8        MR. HUNT:  So I agree with all that.
9  I just wanted to add some clarification.
10        In addition, any documents that the
11  expert relied on, if he's being offered as an
12  expert, right, just like you would in the
13  normal rules.
14        MR. JACOBS:  I think even more
15  generally I would add, any documents that
16  were -- that the -- any source material for
17  any information that's included in the report
18  should be disclosed in its entirety
19  regardless of whether it's construed as an
20  expert or an accountant's report; otherwise
21  it's hearsay.
22        THE ARBITRATOR:  Well, to take the
23  example you gave, you said there's one report
24  that seemed to rely on a conversation with
25  the defendant, but --

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 30 of 110
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

29 (Pages 110 to 113)

## Page 110

1    MR. JACOBS: Right.
2    THE ARBITRATOR: -- if that
3  conversation were a letter instead, you would
4  want the letter.
5    MR. JACOBS: Right. Because a
6  defendant can offer sworn testimony, and we
7  can challenge the veracity or discredit on
8  cross-examination just like we would at
9  trial.
10    MR. HUNT: I would just say, you know,
11  produce the documents that he's relying on
12  and we can question --
13    THE ARBITRATOR: But he's relying
14  potentially on tax returns, and I made a
15  limited ruling with respect to the tax
16  returns.
17    MR. HUNT: And I think the point then
18  is --
19    THE ARBITRATOR: So I'm tacking on to
20  the ruling as well as any additional
21  documents upon which the expert has relied.
22    MR. HUNT: Okay. That's good.
23    THE ARBITRATOR: Any objection to
24  that, Ms. Chaitman?
25    MS. CHAITMAN: No.

## Page 111

1    MR. JACOBS: Agreed, except for with
2  the fact that it's construed as an expert,
3  which I believe we will challenge.
4    THE ARBITRATOR: I will clean that up.
5  It will say accountant or expert.
6    MR. JACOBS: And, your Honor, on the
7  tax returns, can we clarify. I believe in
8  addition to the taxes paid, any schedules
9  specifically regarding the Madoff investment
10  and any taxes paid on those capital gains, we
11  would also be entitled to information
12  concerning the defendants' both -- full scope
13  of refunds in that same given year regardless
14  of whether or not --
15    THE ARBITRATOR: You're getting the
16  first two pages of the return.
17    MR. JACOBS: So I'm just --
18  respectfully, without those in front of me, I
19  can't verify all the information that that
20  includes. I don't think I'm as familiar with
21  them as you are. I'm just looking to confirm
22  that that information would be reflected in
23  the scope of the materials you've ordered are
24  allowed.
25    I just want to confirm. Because the

## Page 112

1  refund is relevant. Whether the defendant
2  got a refund on the taxes paid or used the
3  tax liability to offset -- or a refund to
4  offset liabilities in subsequent years is
5  equally, from our perspective, relevant.
6    THE ARBITRATOR: I think you're
7  getting what you want. Why don't you consult
8  with somebody at your firm. And if there
9  are -- if there's something additional that
10  relates to that, send me a letter. And after
11  Ms. Chaitman has had an opportunity to
12  respond, I'll modify it.
13    MR. JACOBS: Perfect.
14    MR. HUNT: Once we get the first set
15  of documents that will help; right?
16    THE ARBITRATOR: Right.
17    Off the record.
18    (Discussion off the record.)
19    THE ARBITRATOR: Back on the record.
20    MR. HUNT: I'd like to move to
21  Interrogatory No. 3, "Identify each deposit
22  into the account." They say, "Responding
23  party is unable to do so. To the extent we
24  have reliable third-party records, they will
25  acknowledge the deposit."

## Page 113

1    We've provided them with a large
2  number of third-party records. So I would
3  just ask that they amend this answer to
4  reflect that and then withdraw all the stuff
5  about riddled with fraud and all that other
6  stuff, if it's appropriate.
7    THE ARBITRATOR: I'm looking at the
8  Answer to Interrogatory 8, which doesn't have
9  the "however" and "moreover" paragraphs, but
10  says, "Responding party does not dispute the
11  deposits and withdrawals reflected on
12  Exhibit B to the complaint," and then it has
13  the word "on," which is stuck in there for
14  some reason, but I assume it's just a typo.
15    So I think what Ms. Chaitman was
16  trying to do was say, we're not disputing
17  Columns 1 through 5 of Exhibit B relating to
18  this defendant, but, independent of that, we
19  can't identify each deposit.
20    You were saying there's an
21  inconsistency there.
22    MR. HUNT: Exactly.
23    THE ARBITRATOR: I think I understand
24  what she's trying to do, but I think the
25  stipulation which will apply to this case

## Page 114

1  obviates the need for an answer to that
2  interrogatory.
3       MR. HUNT: Do we have that same
4  stipulation with respect to this case?
5       THE ARBITRATOR: I thought we have it
6  an all three of these.
7       MS. CHAITMAN: We agreed that we have
8  it on all three of them. In each of these
9  cases, we have agreed to the accuracy of
10 Exhibit B.
11      THE ARBITRATOR: Right.
12      MR. HUNT: At Columns 1 through 5;
13 right?
14      THE ARBITRATOR: Yes, but one of those
15 is each deposit into the account.
16      MR. HUNT: Yes. Okay.
17      Interrogatory No. 4 asks for names of
18 persons with knowledge. They did not give us
19 any other than Madoff employees.
20      THE ARBITRATOR: We're going back over
21 the same ground.
22      MR. HUNT: Right.
23      THE ARBITRATOR: Ms. Chaitman is going
24 to provide you with the names of the people
25 on her side of the beam.

## Page 115

1       MS. CHAITMAN: But in this case, Bruno
2  DiGiulian is deceased. His wife had nothing
3  to do with the account, so she has no
4  knowledge. You know, I don't have any
5  information to provide.
6       THE ARBITRATOR: That's fair.
7       MR. HUNT: Well, she does have
8  knowledge. She signed the interrogatory
9  responses and --
10      MS. CHAITMAN: She signed them because
11 they had to be verified, and she was the only
12 person who could verify it, but she couldn't
13 verify any more information than we put in
14 here. That's why we didn't put anything else
15 in because this is all she could verify.
16      THE ARBITRATOR: And, also, it becomes
17 irrelevant because transfer means withdrawals
18 or does it also mean deposits?
19      MR. HUNT: It means both.
20      THE ARBITRATOR: But they've been
21 stipulated to. So even if the entire Mormon
22 Tabernacle Choir is familiar with them, it's
23 irrelevant.
24      MR. HUNT: Well, I do think we have
25 the right to know who the -- who their

## Page 116

1  accountants were and tax preparers and so
2  forth. They have not given us a single name
3  of people with knowledge, whether --
4       THE ARBITRATOR: I -- I disagree.
5  Insofar as deposits and withdrawals have been
6  stipulated to and cannot be challenged at
7  trial, it really doesn't matter, as I've
8  said, how many people or who has knowledge of
9  those.
10      MR. HUNT: One of the things that they
11 say in these interrogatory responses is that
12 Bruno DiGiulian was the subsequent
13 transferee, in Interrogatory No. 5. He was
14 not. That's a legal argument. So I want to
15 make it clear that they're not withholding
16 information relating to Mr. DiGiulian on the
17 basis that he's thought to be a subsequent
18 transferee in the defendants' mind.
19      THE ARBITRATOR: Well, they're telling
20 you Bruno got the money except --
21      MS. CHAITMAN: He got it as a
22 subsequent -- because this was an IRA
23 account. So there was a custodian and this
24 is a legal argument.
25      THE ARBITRATOR: Right.

## Page 117

1       MS. CHAITMAN: It's --
2       MR. HUNT: So they need to, I think,
3  identify who, in their mind, received the
4  initial transfer.
5       MS. CHAITMAN: It says from Fiserv.
6       MR. HUNT: Where does it say that?
7       MS. CHAITMAN: "The account holder,
8  Bruno L. DiGiulian, was the subsequent
9  transferee from Fiserv of each transfer,
10 except for withdrawals needed to pay
11 applicable taxes."
12      MR. HUNT: So I think any information
13 about communications between Fiserv and
14 DiGiulian are irrelevant because DiGiulian is
15 sued as the initial transferee here.
16      THE ARBITRATOR: Well, except this is
17 only asking -- this is an interrogatory, not
18 a document request. And I suppose she hasn't
19 complied with the local rule. I'm not even
20 sure if it's applicable in bankruptcy court,
21 which makes "identify" a term of art, but
22 unless you don't know who Fiserv is, it seems
23 to me she's adequately answered this.
24      MR. HUNT: Okay.
25      THE ARBITRATOR: She may be wrong as a

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

31 (Pages 118 to 121)

Page 118

1 matter of law or she may be right as a matter
2 of law, but I think she's made it clear what
3 the flow of the money was.
4      MR. HUNT:  So just go to Interrogatory
5 No. 9 where we ask them to identify
6 communications about disagreements.  And this
7 is 9 and 10.  She says she has no personal
8 knowledge, but she believes such instances
9 occurred.
10      THE ARBITRATOR:  Again, it's not a
11 document request.
12      MR. HUNT:  It's just -- if she
13 believes such instances occurred, then what's
14 the basis of that belief?
15      THE ARBITRATOR:  Well, if you want to
16 pursue this, I suppose you could -- maybe
17 she's one of the people -- I think she is --
18      MS. CHAITMAN:  Yes.
19      THE ARBITRATOR:  -- for the motion for
20 a protective order, but absent that, you
21 could depose her about whether she has any --
22      MR. HUNT:  As long as we have the
23 right to depose her, that's fine.  We can
24 leave it that way.
25      MS. CHAITMAN:  Well, we've asked

Page 119

1 for --
2      THE ARBITRATOR:  We'll deal with that
3 down the road.  For the moment, I'm not going
4 to worry about that.
5      MR. HUNT:  Not going to worry about
6 what?
7      THE ARBITRATOR:  The however she
8 believes such instances occurred.  She hasn't
9 identified any such instances, so the fact
10 that her Ouija board told her that there were
11 such instances does not mean that there's
12 more detail for her to give you.
13      MR. HUNT:  I think the Interrogatory
14 No. 11 -- I think you've ruled that we get
15 those forms and everything, so I think we're
16 fine.
17      THE ARBITRATOR:  Yes.
18      MR. HUNT:  Interrogatory No. 12 I
19 think is obviated by the fact that they've
20 stipulated to everything in --
21      THE ARBITRATOR:  In any case --
22      MR. HUNT:  -- Exhibit B.
23      THE ARBITRATOR:  We've gone through
24 this already.
25      In any case where Ms. Chaitman enters

Page 120

1 into the stipulation we've been discussing,
2 the defense that defendants' liability was
3 fraudulently calculated, which is the 20th
4 affirmative defense, goes out the window.
5      MR. HUNT:  And also the 27th
6 affirmative defense; right?  The next one
7 down.
8      THE ARBITRATOR:  Yes.
9      MR. HUNT:  Okay.  They have an
10 affirmative defense in Interrogatory No. 14
11 about the withdrawals were legally compelled
12 by state and federal securities laws.  And
13 they say, see Interrogatory No. 11.  Which
14 will be based upon the responding party's
15 testimony.  So I guess as long as we get to
16 depose her, we can wait and see what her
17 testimony was.
18      THE ARBITRATOR:  Whether you do or
19 don't, and I'm not sure where I read it, but
20 in IRA accounts, for people who are beyond 70
21 1/2, whatever that magic time period is,
22 Ms. Chaitman is saying they had to take the
23 money out.
24      That's all you're saying.
25      MS. CHAITMAN:  That's all I'm saying.

Page 121

1      MR. HUNT:  Then she can answer the
2 interrogatory to explain to us what the
3 reason is rather than just saying --
4      MS. CHAITMAN:  Well, I'm saying it's
5 legally compelled under the --
6      THE ARBITRATOR:  Yeah, but maybe -- I
7 think it's a fair point.
8      MR. HUNT:  We're guessing at what
9 she's saying at this point.
10      THE ARBITRATOR:  Hang on a minute.
11 You're not saying what I just said.
12 And to the extent that what I just said is
13 the accurate answer, I think you should
14 modify each of these answers, where
15 applicable, to say, whatever the right
16 verbiage is, that sometime beyond 70 1/2,
17 because it was an IRA account, the money has
18 to be taken out in installments.
19      That's the factual basis; right?
20      MS. CHAITMAN:  Right.
21      Can I do this in one document instead
22 of in 92 documents?
23      THE ARBITRATOR:  I'm inclined to say
24 yes.
25      MS. CHAITMAN:  Okay.

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 33 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

32 (Pages 122 to 125)

Page 122

1       MR. HUNT:  Okay.  So that's all I had
2  on the interrogatories.
3       THE ARBITRATOR:  Okay.
4       MR. HUNT:  You told us we'd start
5  getting repetitive.  You were right.
6       THE ARBITRATOR:  Benjamin, is there
7  anything --
8       MR. HUNT:  We have document requests
9  on DiGiulian, and I was going to suggest that
10  maybe we take another break and let us go
11  through that and see if we can streamline
12  that.  And also take a look at Benjamin to
13  see if we can streamline it as well.
14       THE ARBITRATOR:  Sure.
15       (Recess from the record.)
16       THE ARBITRATOR:  What's next?
17       MR. HUNT:  We left off with I think --
18  correct me if I'm wrong, I think we left off
19  with the DiGiulian request for production; is
20  that right?  The document request, yes,
21  that's where we left off.
22       So just two points on that, and then I
23  think we can move on.
24       I want to make sure that no documents
25  are being withheld based on the presumption

Page 123

1  that Bruno would be a subsequent transferee.
2  Because he sued as an initial transferee.  So
3  can the defendants make that representation?
4       MS. CHAITMAN:  That no -- no
5  documents -- what --
6       MR. HUNT:  Are being withheld based on
7  the presumption that Bruno DiGiulian was a
8  subsequent transferee.
9       MS. CHAITMAN:  Yes.  We haven't
10  withheld documents based on that.
11       MR. HUNT:  So as long as your Honor's
12  order applies to this case, I didn't see
13  anything different in there that led me to
14  believe we needed to go over the document
15  requests with any specificity.
16       Looking at the next case, which was
17  the Benjamin case --
18       THE ARBITRATOR:  Right.
19       MR. HUNT:  -- just to confirm, the
20  defendants have stipulated to the accuracy of
21  Columns 1 through 5 on Exhibit B in Benjamin;
22  correct?
23       THE ARBITRATOR:  Correct?
24       MS. CHAITMAN:  Yeah, we've said that
25  several times.

Page 124

1       MR. HUNT:  So based on that, I didn't
2  see -- and the rest of the order would apply
3  to this one, I didn't see anything different
4  here that we needed to talk about.
5       THE ARBITRATOR:  Great.  So we're done
6  with the trustee's motion; correct?
7       MR. HUNT:  Yes, sir.
8       THE ARBITRATOR:  Good.
9       MS. CHAITMAN:  So would you like me to
10  start on our motion to compel?
11       THE ARBITRATOR:  Sure.
12       MR. HUNT:  Is that on the Wilenitz
13  case?
14       MS. CHAITMAN:  I think it's easier to
15  deal with the document demand that we served
16  on all the other cases.
17       MS. CARLISLE:  I request we give Ted a
18  minute because he's handling Wilenitz so that
19  he can be here -- physically here to hear
20  what you have to say.
21       THE ARBITRATOR:  We can do the motion
22  for a protective order.
23       MS. CHAITMAN:  Okay.  Let's do that.
24       MR. HUNT:  That's fine.
25       MS. CHAITMAN:  Long as you don't need

Page 125

1  Ted for that.
2       MR. HUNT:  What's the other one you're
3  thinking about?
4       MS. CHAITMAN:  We served
5  interrogatories -- excuse me -- yes --
6       MR. HUNT:  That must be in the
7  Wilenitz case.
8       MS. CHAITMAN:  No, this is not.  We
9  served in Wilenitz.  Then we --
10       MS. CARLISLE:  Well, you served in --
11  no, you said --
12       MR. HUNT:  Just -- that's Ted's deal;
13  right?
14       MS. CARLISLE:  Sorry.  Wilenitz is
15  Ted's deal, yes.
16       MR. HUNT:  I don't know what this is
17  that she's got in front of us.
18       MS. CHAITMAN:  We served document
19  demands and interrogatories in one document,
20  and we served it in about 60 cases.  And then
21  we moved to compel -- you responded and we
22  moved to compel.  And then that was assigned
23  to Judge Maas.
24       MS. CARLISLE:  The dispute was
25  assigned to Judge Maas.  As I understood it,

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 34 of 110
Trustees Motion to Compel Discovery                      Arbitration 12/13/2016

33 (Pages 126 to 129)

Page 126

1   it was only the Wilenitz -- it was only
2   assigned to Judge Maas in the Wilenitz case,
3   not in the other -- I apologize. I don't
4   know how many cases these were brought in.
5       MS. CHAITMAN: No, we agreed to have
6   everything that was before Judge Bernstein
7   assigned to Judge Maas.
8       MR. HUNT: Do you know what she's
9   talking about?
10      THE ARBITRATOR: No.
11      MS. CARLISLE: Wilenitz.
12      MR. HUNT: Let's do the motion to
13  quash and then figure out what's next.
14      THE ARBITRATOR: Off the record.
15      (Discussion off the record.)
16      MS. CHAITMAN: So if I could start --
17  we made a motion to compel responses to our
18  interrogatories and to compel the trustee to
19  produce documents.
20      THE ARBITRATOR: In --
21      MS. CHAITMAN: It's defendants listed
22  on Exhibit A to first set of requests. It's
23  this one (indicating).
24      MR. JACOBS: Your Honor, we had a
25  hearing with Judge Bernstein on this issue

Page 127

1   where Judge Bernstein explicitly said that
2   Ms. Chaitman's motion could go forward on
3   Wilenitz only, even though she attempted to
4   bring it across all --
5       THE ARBITRATOR: That's true, but he
6   also said that the rulings would be of
7   general application. Then he made tentative
8   rulings.
9       MR. JACOBS: Right. And that's
10  consistent with, I believe, the position we
11  articulated earlier, which is that, in cases
12  with identical factual or legal
13  circumstances, we will apply those rulings.
14  And we are cross-moving for a protective
15  order prohibiting this discovery in this
16  case. So if we obtain one, we would like
17  that to apply in other cases as well.
18      But I think as you'll see when we get
19  into the argument, there are some
20  case-specific issues that might dictate
21  results that might not happen the same way in
22  other cases on certain requests.
23      THE ARBITRATOR: Does it make sense to
24  just ignore those for the moment, deal with
25  Wilenitz and then discuss how it applies

Page 128

1   potentially --
2       MR. JACOBS: That's exactly how we
3   would like to move forward, is to deal with
4   Wilenitz. Because that's the motion in the
5   case currently before us today, and we can
6   talk afterwards about how those rulings may
7   apply in other contexts.
8       THE ARBITRATOR: Does that work with
9   you, Ms. Chaitman?
10      MS. CHAITMAN: Do we have the Wilenitz
11  responses to discovery? Do you have those?
12      MR. JACOBS: Let me look.
13      MS. CHAITMAN: Because I have the ones
14  you responded to with the defendants --
15      MR. JACOBS: Right.
16      MS. CHAITMAN: -- and this is what I
17  had submitted to Judge Maas.
18      MR. JACOBS: Right. So that's what's
19  complicated, is that there was an original
20  set in Wilenitz. Right. And we had a
21  hearing before the court. The judge
22  authorized the motion and then you served a
23  nearly identical, but slightly revised set
24  across all of your cases --
25      MS. CHAITMAN: Right, because I took

Page 129

1   out the Picard compensation. That's the only
2   change which I recall.
3       MR. JACOBS: There are two requests
4   that are new --
5       THE ARBITRATOR: Yes, you substituted
6   two requests for the --
7       MS. CHAITMAN: Do you have a problem
8   in raising those?
9       MR. JACOBS: No, we'll -- we're
10  prepared to proceed on your second set of 18
11  requests, which is the revised version, if
12  that's amenable to you.
13      MS. CHAITMAN: So do you have --
14      THE ARBITRATOR: Yes, I think we're
15  all on the same page.
16      MS. CHAITMAN: All right. Great.
17      So this is what the caption looks
18  like. Are you --
19      THE ARBITRATOR: You're just trying to
20  get me to the request. I have -- let's see.
21  I actually have it in slightly different
22  form. And I know that there's a substitution
23  for two of the requests, but I think it --
24  I'll be able to follow.
25      MS. CHAITMAN: Okay. So I'm turning

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 130

to page 6, which is our first document
request. Wilenitz discovery demand.
       THE ARBITRATOR: List every employee?
       MS. CHAITMAN: Yes.
       "List the name and address of every
former BLMIS employee with whom you spoke
about the meaning of entries on the customer
statements and state the substance of what
you questioned each person about and what
that person told you."
       Then "Produce all documents you
reviewed with such employee and all documents
indicating what each person said."
       So the --
       THE ARBITRATOR: And they gave you --
I'm not sure they gave it to you specifically
in Wilenitz, but -- I think they did, but
they gave you an exhibit which relates
apparently to 2008 only and had been filed in
the Dusek case that basically gave the
identifying information for -- it looks like
everybody that was on the payroll --
       MR. JACOBS: Right.
       THE ARBITRATOR: -- in 2008, but
didn't respond to anything else --

Page 131

       MS. CHAITMAN: Right.
       THE ARBITRATOR: -- as to your
request.
       MS. CHAITMAN: Right.
       MR. JACOBS: The Dusek response in the
list you're referring to I believe we
produced in connection with a later request,
not number 1.
       THE ARBITRATOR: Oh, okay.
       MR. JACOBS: That was a different
request asking for the identification of
employees by function at BLMIS.
       THE ARBITRATOR: But wouldn't it, at
least for 2008, respond to the first part of
Request No. 1, list -- oh, no.
       MS. CHAITMAN: With whom you spoke.
       THE ARBITRATOR: Okay.
       MR. JACOBS: The objection -- your
Honor, if I may, our objection to Request
No. 1 is that it is on its face asking for
the trustee's work product. It's asking for
us to identify the list of employees that we
may have spoken to in connection with our
investigation as to any facet of the
trustee's responses and, I'll just add,

Page 132

duties and responsibilities with respect to
his role in liquidating the estate and in
recovering funds for the customer fund.
       That information -- that list, in and
of itself, not to mention what is requested
after the identification, which is the actual
notes of those interviews, is protected work
product under Taylor v. Hickman. It falls
squarely within the work-product doctrine.
It's the trustee's mental impression in
preparation for litigation as to his strategy
in discerning information and his mental
impressions about how he may use that.
       So we object to this request in its
entirety. It's prima facia, outside the
scope of what's discoverable in this
instance.
       MS. CHAITMAN: My answer to that,
Judge, is that, under the Securities Investor
Protection Act, the trustee has an
affirmative obligation to investigate the
debtor and report to the creditor body and to
the bankruptcy court what his findings are.
       And we do not have access to this
information. And it's essential for us in

Page 133

terms of formulating some of our defenses.
And that's why I think we're entitled to this
information.
       THE ARBITRATOR: Let me ask a
question, which is, are there any documents
that have been shown to former Madoff
employees that have not been produced in the
litigation?
       MR. JACOBS: I don't know that,
sitting here today, I can answer that
question, your Honor, but I think that --
       THE ARBITRATOR: I suppose you could
have shown a particular employee --
       MR. JACOBS: How to --
       THE ARBITRATOR: -- Mr. Benjamin's
account records, but not to have produced
them in Mr. Wilenitz's case.
       MR. JACOBS: Right.
       THE ARBITRATOR: So excluding that.
       MR. JACOBS: Right. So I think the
starting point of this discussion has to be
Rule 26 and the fact that what is
discoverable in this case, in Wilenitz, must
be both relevant to the claims in this case
and proportionate, most importantly, to the

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 36 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

35 (Pages 134 to 137)

## Page 134

1  needs of the parties in discovery. And there
2  are several factors enumerated in the rule as
3  to how to determine proportionality.
4      So it is possible we showed a document
5  to an employee that has nothing to do with
6  any of the claims or defenses in this case,
7  in which case we have no obligation to
8  produce it or make it available in any form.
9  I don't think that's the case.
10     But that being said, as I'm sure you
11  read in our papers and we'll be discussing in
12  connection with other requests, we have made
13  an unprecedented amount of the trustee's
14  books and records available to all
15  defendants, including the defendants here,
16  specifically all of the over 4 million
17  records that we've made available through
18  Electronic Data Room 1 in a very carefully
19  curated, organized fashion. And those
20  documents touch upon all aspects of the
21  operations and financials of the BLMIS.
22     So I don't think it's likely that we
23  can't -- to answer your question explicitly,
24  I can't, sitting here today, represent that
25  there was no document that we've shown any

## Page 135

1  employee on any topic that hasn't been put in
2  that data room or otherwise produced, but
3  it's highly, highly unlikely.
4      The trustee has not engaged in any
5  hide-the-ball efforts here. We have spent
6  years working to find solutions to very
7  complex discovery issues given the volume of
8  data we have that we're responsible for. And
9  our goal is to make it as available and to be
10  as transparent to all litigants to the
11  fullest extent possible. So that's what
12  we've done with e-Data Room 1.
13     And we also have undertaken
14  painstaking efforts to provide the defendants
15  with the full universe of all documents we
16  believe that are relevant to the claims and
17  defenses in this case from that data set.
18     So all of that said, I still don't
19  think that there's any proportionate
20  articulated defensible reason why the
21  defendant should be entitled to our
22  investigatory mental impressions and work
23  product in connection with any interviews of
24  BMLIS employees we did.
25     Now, certainly we would give them

## Page 136

1  transfers if we had taken a deposition. They
2  are taking their own depositions of
3  Mr. Madoff and potentially others. And that
4  is all fair game for the record, but this
5  request is specifically calling for work
6  product. This is not calling for -- even our
7  selection -- I would posit that potentially
8  even our selection of documents that we chose
9  to show a particular employee is a
10  compilation that's protected work product.
11  That doesn't mean we wouldn't produce them if
12  they were responsive and nonobjectionable to
13  other valid requests within the scope of
14  relevance, but the defendants shouldn't be
15  entitled to the disclosure of that work
16  product in connection with this request.
17     MS. CHAITMAN: Let me just say, Ted
18  has raised the issue of -- two issues that I
19  think are important for you to rule on.
20     One is that the trustee has
21  consistently taken the position that the
22  discovery should be limited to what is
23  appropriate for a particular case. And, in
24  fact, the argument has been made that in
25  so-and-so's case, the trustee's only suing

## Page 137

1  for $200,000, therefore, the trustee should
2  not have to produce a lot of documents, it's
3  only a $200,000 case.
4      We view these cases as one in the
5  sense that I represent 92 defendants in 92
6  cases, several hundred people all together,
7  and that all of this discovery is relevant
8  for all of the cases.
9      THE ARBITRATOR: I'm not sure I read
10  the trustee's proportionality argument that
11  way, but I think the fundamental problem here
12  is that the request calls for classic work
13  product. Work product is not absolute except
14  as to so-called core work product.
15     But just on the face of it, and in
16  response to many of these requests, I think I
17  agree with what I read Judge Bernstein's
18  off-the-cuff rulings were or opinions were,
19  but I'm not sure how you get around the rule
20  protecting work product here.
21     MS. CHAITMAN: Well, I think that
22  there is.
23     THE ARBITRATOR: Other than your SIPA
24  argument.
25     MS. CHAITMAN: Right. So, number 1,

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 37 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

36 (Pages 138 to 141)

## Page 138

the trustee has an affirmative duty to do this, and we contend that he has failed in his duty.

The second thing is that there's a substantial need here because we don't have the ability to get this information from any other source.

And going to the e-data room, since Ted mentioned that, honestly, Judge, the e-data room is a farce. I made the point in my papers that it's at least six weeks ago that I asked Ted and Marie to tell me whether, in the e-data room, there are any trading records dating back from the 1980s. I've repeated that request in writing. I've never gotten a response.

Now, you know, the trustee wants to take a position he's just an average litigant. He's not an average litigant. He's got an infinite funding source. He's up against people who have been financially devastated and emotionally devastated.

And we have a right to at least a level playing field. We've searched the e-data room. I'm going to ask Greg, who

## Page 139

spent a lot of time on the e-data room, to tell you how it's organized, because it's a joke.

But the fact of the matter is that we have not been able to find a single trading record from the 1980s. And this goes to the issue of the trustee's contention that there were no trades.

Now, if there are trading records or any documents reflecting trading records -- they could be FINRA reports. They could be audits that were done by FINRA. They could be the Depository Trust Company communications. There are all different categories of documents.

We've had people spend time in the e-data room. They can't find any of these documents, and I can't even get a response from the trustee's counsel on it.

THE ARBITRATOR: I guess one potential issue is -- I read all the materials that relate to e-Data Room 1. And one thing I carried away from that is that not all of the materials that were at Madoff either are in e-Data Room 1 or fall within the category of

## Page 140

core account documents that were turned over to whoever the account related to.

So that there might be trading records that relate to, for example, the market-making side of the business that are not in e-Data Room 1.

Do I understand that correctly?

MR. JACOBS: Not with that particular example. But the first part of your question, are all BLMIS's books and records in e-Data Room 1, and the answer is absolutely not. The e-Data Room 1 could potentially have as many as -- I don't even want to guess, your Honor.

It's not practical, reasonable, feasible or desirable from any perspective of any litigant or any of the Federal Rules of Civil Procedure that govern discovery in these actions to undertake an effort to achieve that.

What we have done under the -- under the relevant rules that we are subject to, which is the Federal Rules of Civil Procedure -- and I respectfully disagree with Ms. Chaitman. There's nothing in the SIPA

## Page 141

statute that enlarges or expands the trustee's discovery obligations under the rules, nor is there anything in the statute that overrides our claim to work product protection.

So that argument is completely a red herring, non sequitur. The over 4 million records in e-Data Room 1, as I mentioned, have been very carefully curated to contain, at a minimum, everything that's feasible.

And there are some things that aren't amenable to be put in the data room. And those have been disclosed and are made available by other means, but it contains the bulk of what was considered by our experts who, under relevant court orders, are providing summary reports of the fraud.

And the data room was originally conceived as a mechanism to permit rapid disclosure or make available for potential production and transparency all of the evidence that our experts relied upon in determining their conclusions.

So that particular order is the November -- I might be getting the date

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 38 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

37 (Pages 142 to 145)

## Page 142

1  slightly off.  I think it's the November 10,
2  2011, litigation procedures order.
3       It says -- Judge Lifland entered an
4  order stating that, given the enormous volume
5  of data at issue potentially in this
6  liquidation, the trustee could provide, in
7  the form of a summary expert report, his
8  conclusions as to the salient relevant
9  issues, one of those being the fraud, and
10  make -- otherwise make available the
11  underlying evidence to all litigants in the
12  data room.
13       That's exactly what we've done.
14       THE ARBITRATOR:  Let me cut you short.
15  As to Request No. 1, I understand
16  Ms. Chaitman's SIPA argument, but Judge
17  Bernstein concluded that, in this
18  circumstance, the trustee is no different
19  than the ordinary bankruptcy trustee who does
20  not have enhanced obligations.  And even if
21  he does, it seems to me, as I said at the
22  outset, this is classic work product.
23       There's a distinction between making
24  available all of the documents in reasonably
25  accessible form and saying who you

## Page 143

1  interviewed and essentially what you
2  considered important.
3       So to the extent there's a motion to
4  compel with respect to Request No. 1, I'm
5  going to deny it.
6       Let me also -- because it's going to
7  come up in a number of these areas.  There's
8  the overarching claim of privilege waiver,
9  Ms. Chaitman.
10       And it seems to me that, generally
11  speaking, judges do not require, and
12  typically parties agree not to require that
13  each side, from the date that a litigation
14  commences or people understand that the suit
15  is about to be filed, that everything be
16  logged on a privilege log.
17       I would imagine that you have not
18  logged and would not want to log all of your
19  communications, to the extent they were
20  written, with your clients from December 2008
21  forward.
22       So I'm not going to find that there
23  was a privilege waiver by not logging post
24  December 11, 2008, documents.
25       Why don't we go on from Request No. 1,

## Page 144

1  then.
2       MS. CHAITMAN:  Can we -- since Ted
3  mentioned the trading records, can we resolve
4  the trading records?  Because, again, what
5  Ted is saying is that the trustee selected
6  what would be put in the e-data room, and
7  we've never gotten an answer.
8       THE ARBITRATOR:  I saw you sent at
9  least two e-mails.
10       MR. JACOBS:  Yes.
11       THE ARBITRATOR:  And I think there
12  should be -- notwithstanding the fact that,
13  from the trustee's perspective, there's this
14  extensive guide to what is in the data room,
15  I think it has to be responsiveness to
16  reasonable requests.  And this is sort of
17  binary.  It's yes or no.
18       MR. JACOBS:  I can answer this
19  question I think rather easily.
20       So first and foremost, all of the
21  trading records we have currently identified
22  are in the data room.  They're in the data
23  section under DTC.
24       Now, Ms. Chaitman served her own
25  subpoena on DTC for those exact records.  We

## Page 145

1  obtained them in part from a Rule 2004
2  subpoena and part from what we restored on
3  the BLMIS DTC terminal, in part from
4  documents we got from the government.
5       We compiled all of that.  It is all
6  available in a specifically labeled folder
7  called DTC.  There are also folders in that
8  exact same section that are labeled "FINRA."
9  All of the categories of documents you're
10  looking for, as we've written you in letters
11  and attempted to explain to you many times in
12  the past, are actually in their own folders
13  in the data room so they can be -- they are
14  accessible that way.
15       Now, with respect to earlier periods
16  of the fraud, that is an allegation and an
17  issue that you recently raised in the PW
18  context pursuant to Mr. Madoff's testimony.
19  Even though it was outside the scope of the
20  order allowing that testimony, the judge has
21  now allowed a second deposition on that
22  subject.
23       We will look for and have been looking
24  for stuff -- any additional stock trading
25  records as to earlier periods of time in

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 39 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

38 (Pages 146 to 149)

Page 146

1   addition to what is currently in the data
2   room.  To the extent we find them or restore
3   them or can obtain them from DTC or any other
4   source, we will produce them to you and we
5   will put them in the data room.  Absolutely.
6       MS. CHAITMAN:  But see --
7       THE ARBITRATOR:  Let me rephrase that
8   for a second and see whether it's correct.
9       That to date, except to the extent
10  that they may be in DTC records or FINRA
11  records in that data room, you haven't found
12  any other records?
13      MR. JACOBS:  We're currently looking.
14  Because it's an active issue that
15  Ms. Chaitman has raised in the PW context in
16  discovery.  There's a deposition scheduled
17  for December 20th where Mr. Madoff will give
18  additional testimony as to those issues.
19      And clearly we are going to want to
20  respond, if we can to meet with the debtor's
21  books and records that are available.  So we
22  are actively looking for that material.
23      THE ARBITRATOR:  December 20th is --
24      MS. CHAITMAN:  Next Tuesday.
25      THE ARBITRATOR:  When are you going to

Page 147

1   get back to --
2       Off the record.
3       (Discussion off the record.)
4       THE ARBITRATOR:  Back on the record.
5   So when are you going to respond to
6   Ms. Chaitman's request in that regard since
7   the deposition's next Tuesday?
8       MR. JACOBS:  Well, anything that we
9   would use in the deposition we will produce
10  prior to the deposition, if there are items.
11      THE ARBITRATOR:  But it's --
12      MS. CHAITMAN:  You see what they're
13  doing, Judge.  First of all, I've asked for
14  this for two months.
15      And the second is, they're going to
16  give me what they want to use and not what
17  they have, and this is just not discovery.
18      MR. JACOBS:  We've given Ms. Chaitman
19  everything we have, and that's in the data
20  room.  So there's no dispute about -- there's
21  nothing to compel.
22      THE ARBITRATOR:  I thought I heard you
23  say earlier that you're continuing to look
24  for other documents.
25      MR. JACOBS:  That's right.  And my

Page 148

1   ability to answer as to a date certain for
2   production will depend upon our success in
3   identifying that, if any.  And I don't know
4   the answer to that.
5       There's -- as we disclosed in
6   discovery responses, BLMIS maintained a
7   warehouse.  There are multiple pieces of
8   media in that warehouse.  There are hard copy
9   documents.  Much of it has been scanned,
10  restored and made available in the data room,
11  but there might be -- there might be material
12  that's on a tape or a piece of media
13  somewhere that we haven't looked at yet, and
14  that process takes a long time.
15      But before -- we shouldn't be required
16  to have to look at every piece.  There has to
17  be an articulated -- there should at a
18  minimum be an articulated basis to the need
19  for it under Rule 26's proportionality
20  standards.
21      THE ARBITRATOR:  Well, Mr. Madoff says
22  that he was running, even on the investment
23  advisory side, a legitimate business with
24  these convertible securities up until
25  sometime in the '90s; correct?

Page 149

1       MR. JACOBS:  When you have an
2   opportunity to read Mr. Dubinski's report,
3   you'll see that our expert disagrees --
4       THE ARBITRATOR:  Okay.
5       MR. JACOBS:  -- with that self-serving
6   testimony.  And, furthermore, that it's not
7   supported by any of the voluminous effort
8   over long periods of time that he did
9   consider and that has been made available.
10      THE ARBITRATOR:  Okay.  But you're
11  saying that you are attempting to find --
12  haven't phrase it this way, but you're saying
13  you're attempting to find records which, if
14  reviewed, potentially could support
15  Mr. Madoff's view of the world; is that
16  correct?
17      MR. JACOBS:  Yes.  We are -- well,
18  not -- it's not specifically how I would
19  phrase it, but we are looking for --
20  Ms. Chaitman has requested actual stock
21  trading activity and records demonstrating
22  actual trading stock activity, whether it be
23  in House 5 or elsewhere, for those earlier
24  periods of time, which Mr. Madoff's testimony
25  has now opened the door to.  So whether it

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 40 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

39 (Pages 150 to 153)

Page 150

1    refutes or supports that testimony, we will
2    produce it if we can identify it.
3        THE ARBITRATOR:  And I think as a
4    practical matter, unless there's some reason
5    why this can't occur, should that be made
6    available, and it doesn't sound like under
7    any conceivable scenario it could occur
8    before next Tuesday, the possibility exists
9    that Mr. Madoff may be deposed a third time.
10       MR. JACOBS:  That --
11       MS. CHAITMAN:  Judge, can I point
12   something out?
13       THE ARBITRATOR:  Yeah.
14       MS. CHAITMAN:  DiPascali pled in 2010,
15   I believe.  Madoff pled in 2009.  They
16   both -- and you'll see the plea because they
17   both said the same thing.  The first words
18   out of DiPascali's mouth were "In the early
19   1990s, we started a fraud."  So this is not a
20   new issue.
21       And what Ted has really said to you,
22   in substance, is that they put in the e-data
23   room what supports their expert's report,
24   which is --
25       MR. JACOBS:  That's not true.

Page 151

1        MS. CHAITMAN:  I didn't interrupt you
2    and I'd appreciate it if you don't interrupt
3    me.  I'd like to be able to finish.
4        MR. JACOBS:  Please finish.
5        MS. CHAITMAN:  So they have a world
6    view of the case, which they're entitled to,
7    possibly.  And they won't produce documents
8    that are inconsistent with that world view.
9        And this document request is dated
10   August 5, 2016.  So they've had more than
11   enough time to look for the documents; they
12   just don't want to produce them.
13       And what's going on here is that
14   they've sold a certain view of what happened
15   here.  And I don't believe it's accurate.
16   And they're doing everything they possibly
17   can to prevent the truth from coming out.
18       MR. JACOBS:  May I respond to that,
19   your Honor?
20       THE ARBITRATOR:  Before you --
21       MR. JACOBS:  It's so outrageous, I
22   can't leave it unresponded to.
23       THE ARBITRATOR:  Okay.  But in
24   addition to the documents that are in e-Data
25   Room 1, and I'm focusing on trading records,

Page 152

1    there's an inventory, I assume, that the
2    trustee prepared of the rest of the universe.
3        MR. JACOBS:  In a sense.  We have --
4    we've endeavored to painstakingly track all
5    of the items that are in the warehouse that
6    we inherited from BLMIS.  But documents, your
7    Honor, may exist on microfiche, they may
8    exist on a piece of hard media, they may
9    exist on a floppy disk --
10       MR. HUNT:  They may be in a box in a
11   warehouse --
12       MR. JACOBS:  We don't have -- we don't
13   have documents that are readily accessible
14   and restored, that anyone to date that has
15   looked at, that haven't been made available
16   to our experts or to Ms. Chaitman.
17       It is simply an outrageous statement
18   to assert that the trustee is cherry-picking
19   the evidence available to him and keeping
20   from the defendants items that may hurt, a
21   narrative that he constructed out of thin air
22   to suit some purpose.
23       Our goal here is to recover funds for
24   the customer fund under the laws afforded to
25   the trustee for which he's tasked to do so.

Page 153

1    Our objective is first and foremost to get it
2    correct.  We don't want to sue anyone who
3    doesn't owe us money.  We don't want to
4    recover a single dollar that isn't
5    appropriately recovered under the relevant
6    statutory framework.
7        Ms. Chaitman has all of the documents
8    that are readily available, have been
9    restored and have been considered, good or
10   bad, to the trustee's case currently.
11       Now, we may undertake additional
12   restorations.  I don't know.  I can't speak
13   definitively about that.  Ms. Chaitman is
14   actively litigating and challenging our
15   expert conclusion as to the earlier periods
16   of time.
17       We never intended to credit or rely
18   upon the testimony of Bernard Madoff,
19   frankly.  He committed the world's greatest
20   Ponzi scheme.  I don't think his testimony is
21   reliable or should be credited in any sense
22   or fashion.  However, the judge has allowed
23   it.
24       Now that we're going down that road,
25   we will endeavor to see if, on some floppy

Page 154

1  disk somewhere in a box in a warehouse, there
2  might be early stock trading records from
3  periods predating what we currently have.
4      So you know, all of the stock trading
5  records that we do have and we have made
6  available were obtained because we went out
7  in the world and subpoenaed them and
8  diligently and aggressively tried to find
9  them wherever they may exist.
10     Ms. Chaitman did too. The DTC is
11 under a regulatory framework where it was, by
12 law, required to keep records for a certain
13 number of years. That's why they had
14 documents back through 2002 which they
15 produced to us and we in turn produced to
16 Ms. Chaitman.
17     We also scoured, like I said, all of
18 the DTC terminal that was active and live by
19 BLMIS as of the time we took custody of it.
20 We restored all of that data. We put it in
21 the data room.
22     We also subpoenaed the SEC. We
23 cooperated -- they cooperated with us. They
24 shared which us the fruits of their similar
25 investigation.

Page 155

1      All of that material, wherever we
2  could find it, good or bad, we've made
3  available and we provided to our experts for
4  consideration.
5      THE ARBITRATOR: Well --
6      MR. JACOBS: So that's the lay of the
7  land today.
8      As discovery unfolds in the PW matter
9  and now that it is switched over to the
10 adversary proceeding and we gear up for
11 potential trial on the fraud, as Judge
12 Bernstein has invited the parties to
13 consider, if we can find and identify
14 additional materials that are responsive to
15 this issue, we will make it available
16 regardless of whether it hurts or helps us
17 and, as necessary, our experts -- we'll
18 provide it to our experts as well for them to
19 appropriately supplement any relevant report
20 that's impacted.
21     THE ARBITRATOR: Having dealt with DTC
22 records in the past and because of their
23 continuous net settlement rules, my take on
24 this is that the DTC records, in terms of
25 what Ms. Chaitman's trying to prove and

Page 156

1  you're trying to disprove, will probably end
2  up being gibberish, but --
3      MS. CHAITMAN: They only go back to
4  2002.
5      THE ARBITRATOR: Okay. But even if
6  you had them back further, there are a lot of
7  complicating factors. I had that in another
8  case. But --
9      MR. JACOBS: That issue was precedent
10 of later requests where Ms. Chaitman has
11 asked us to match individual trades for
12 customers with House 5 trading activity. And
13 the information doesn't work that way.
14     THE ARBITRATOR: But let me -- I
15 recognize that we're dealing with volume
16 that's far beyond anything certainly I've
17 dealt with and probably anybody in the room
18 has dealt with previously.
19     Is there an inventory of files that
20 can be produced? I suppose that's work
21 product, but there's nothing particularly
22 secret about that. It may be annotated in
23 which event I would suggest the unannotated
24 version of it be produced.
25     But I do not want -- since it is going

Page 157

1  to take you some time, as you said, to look
2  for what may not even be there, but --
3      MR. JACOBS: Well, my objection to
4  producing anything that may exist is exactly
5  what you've identified, is that it's work
6  product, but even before that, there has to
7  be an articulated need for it that no other
8  discovery from a different source can fill.
9      I mean, it has to -- the cost and
10 burden of us having to make -- prepare that
11 in a way that it could be produced without
12 waiving work product in a producible form --
13 what purpose will it serve, I guess is the
14 question? I mean, I just -- what is the
15 need? What's the proportionality
16 consideration that would demand its
17 disclosure in the context of this or any
18 given request?
19     I can't in my head conceptualize --
20 after considering the effort that our team
21 and that I personally have been involved in
22 over the course of years and spending
23 millions of dollars to make all of this
24 information transparent and available in
25 every single case, on all of the case-wide

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 42 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

41 (Pages 158 to 161)

Page 158

issues, whether it be fraud or insolvency, which, arguably, isn't even -- the latter isn't even an element in these claims, but fraud certainly is.

This is my answer to all of these requests, is, how can any incremental step further in light of everything that we've already done -- how can that possibly be proportionate to the needs of this case or even all of Ms. Chaitman's cases taken as a whole or even all the good-faith adversary proceedings taken as a whole? I mean, there's nothing more for us that we can disclose.

THE ARBITRATOR: Is it correct that except for third-party records that may have been subpoenaed, you and your team have not encountered any pre 1990 records of actual trading that relate to the investment advisory customers?

MR. JACOBS: We have never -- I have never personally and I don't know of any record ever seen by anyone on our team that shows actual stock trading for a House 17 or an IA, investment advisory, customer, no.

Page 159

MS. CHAITMAN: But, Judge, that ignores the issue. Because Madoff testified that there was no House 17 before 1992. This is a fiction of Mr. Picard and his expert. It was all one unit.

It was one company and he said all the trading in the investment advisory customer accounts was trading with Madoff. In other words, he had -- he was doing trades equal to 10 percent of the daily volume on the New York Stock Exchange. So he had a huge inventory of trades -- of securities.

He would transact trades with the IA customers. So it's not -- it's not that you're looking for House 17 trades. We want -- we want the records in the 1980s, before 1992, of all of the Madoff trades. And the trustee inherited those records, to the extent they exist. And there's no other place we can get them.

And they disprove -- just to understand the significance of this, if, in fact, both DiPascali and Madoff are telling the truth, then the trustee has to recalculate every single claim. Because he

Page 160

discredited claims, he disallowed claims on the basis that there was no net equity because he didn't recognize any trades going back to the 1980s. So --

THE ARBITRATOR: Also, you would argue then that the Ponzi presumption --

MS. CHAITMAN: Of course. You have to --

THE ARBITRATOR: -- applies.

MS. CHAITMAN: -- yes. So --

THE ARBITRATOR: Let me modify my question to Mr. Jacobs.

And if we take out House 5, House 17, apart from the DTC and FINRA and other third-party records that I gather are in the e-data room, have you or, to your knowledge, has your team found pre 1982 trading records?

MS. CHAITMAN: 1992.

THE ARBITRATOR: 1992.

MR. JACOBS: Not that I can confirm or know of. We are looking. And I'm not directly involved with that effort, so it's certainly information I can find out. And we're trying very hard to get it.

THE ARBITRATOR: And understanding

Page 161

that it's perhaps looking for a needle in a haystack, it seems to me there's a need to come up with an end date by which you'll respond saying either you found something or you haven't and, adding into that, the understanding that even given the size of the Madoff fraud as a whole, it would not be sensible to restore every microfiche and look through it, but there has to be a good-faith effort to look.

MR. JACOBS: Right. And we are conducting that investigation right now. We're absolutely conducting that investigation in direct response to Ms. Chaitman's request.

THE ARBITRATOR: But there has to be some end date.

MR. JACOBS: My only -- my only hesitation in providing one is that -- I'm pretty confident that if there is anything that we can find that contains these type of records from an earlier period, it's going to be on media that we're going to have a challenge restoring.

So it might be microfiche, microfilm,

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 43 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

42 (Pages 162 to 165)

Page 162

1  some type of backup tape that is for a
2  computer program or software or hardware that
3  doesn't exist any longer.
4       So we have to -- when we were dealing
5  with items like that, we have to send it out
6  to a vendor to see if they can restore it or
7  give us a quick peek to kind of try to give
8  us a sense if it would be fruitful for a
9  fuller restoration. All of this costs a lot
10  of money, so we weigh the balance of -- all
11  of those factors have to be considered and I
12  think are fairly considered under
13  proportionality analysis.
14       But the bottom line, for the purposes
15  of your question, is it takes time.
16       THE ARBITRATOR: Okay. But let me
17  rephrase it and perhaps in terms of this
18  question: How long will it take you to make
19  a good-faith effort to determine whether
20  there are such pre 1992 trading records not
21  previously produced?
22       Putting aside how long it will take to
23  produce them, but to determine whether there
24  are such records.
25       MR. JACOBS: My answer is the same,

Page 163

1  your Honor, because I can't -- I mean, if I
2  send out a microfilm tomorrow, I don't know
3  how long that's going to take or what
4  information I might even -- it's really --
5  we're dealing with unchartered territory here
6  in terms of both discovery and e-discovery.
7  It's not as simple as me doing a search in a
8  database and being able to say, oh, I found
9  three things I can produce tomorrow, but --
10       THE ARBITRATOR: There has to be, at
11  least for that second inquiry, some deadline,
12  even if it's adjusted, even if -- even if it
13  then requires a substantial effort down the
14  road having determined, by looking at one
15  microfiche, that there are potentially
16  records and then dealing with the fact that
17  there are a hundred thousand microfiches to
18  deal with.
19       There's got to be some end date so
20  Ms. Chaitman knows that the effort will not
21  end 12 years after the last Madoff case.
22       MR. JACOBS: Right. Well, I will have
23  to talk to almost literally an army of people
24  to get that information for you, including
25  with the core professionals, outside vendors

Page 164

1  and the team that's --
2       THE ARBITRATOR: So suppose I say that
3  you give me a response to that second
4  question within a week?
5       MR. JACOBS: I can endeavor to do
6  that, your Honor. And at least within a
7  week's time, I can give you an update as to
8  why I can't -- to where the status is and why
9  I can't be more specific.
10       THE ARBITRATOR: But understand that
11  I'm going to set some date, recognizing it
12  may have to be adjusted, but -- so that
13  there's some date, and also recognizing that
14  potentially there may be a third deposition
15  of Mr. Madoff that Ms. Chaitman takes if
16  there is such information.
17       MR. JACOBS: Okay. I understand.
18       THE ARBITRATOR: I think that's the
19  best I can do for you, Ms. Chaitman.
20       MS. CHAITMAN: I appreciate that. And
21  I also think that we're entitled to a
22  description of all of the documents that the
23  trustee chose not to put in the e-data room.
24  Because I'm concerned that he put into the
25  e-data room the documents that support his

Page 165

1  view of this case and did not put into the
2  e-data room documents that he did review
3  which are inconsistent with the positions
4  he's taken.
5       So I think that we're entitled to a
6  list. There's a warehouse on Long Island in
7  such-and-such a town and it contains X and we
8  didn't put -- they must have all this.
9       THE ARBITRATOR: Except I gather they
10  have it annotated in such a way that it's
11  work product --
12       MS. CHAITMAN: Let them show it to
13  you.
14       THE ARBITRATOR: And your assumption
15  is one that I'm not willing to buy into. The
16  trustee and both sides and every litigant has
17  an ethical obligation. And I assume that
18  even if you don't like the way in which the
19  trustee is going about -- is functioning,
20  including claw-back actions against people
21  who you view as victims, I have no basis to
22  assume that they're proceeding dishonestly.
23       In terms of me looking at the
24  inventory, it probably is almost as useless
25  as you looking at the inventory. And I'm not

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

43 (Pages 166 to 169)

Page 166

saying that disparagingly. Because it's
going to be extraordinarily lengthy and
probably not terribly informative. Because
if it were informative, Mr. Jacobs and his
colleagues could have said, oh, we found, you
know, this treasure trove of documents and
now the issue is how long it's going to take
to restore it.
        MR. JACOBS: And, your Honor --
        THE ARBITRATOR: I take it that you
can represent to me that there's nothing on
the face of the inventory that reflects
pre 1992 trading records that are not yet in
the e-data room.
        MR. JACOBS: Absolutely not.
        THE ARBITRATOR: You're agreeing with
me.
        MR. JACOBS: Yes, there's nothing
there -- no, there's nothing of that nature.
        And, your Honor, the request that
Ms. Chaitman is making is absolutely -- for
you to order that would be absolutely
unprecedented. And without a particularized
articulation of the need or what is missing
from the over 4 million, 4 million,

Page 167

records --
        THE ARBITRATOR: The short answer is
I'm not going to require that. And I think
we've exhausted Request No. -- the discussion
of Request No. 1.
        Is Request No. 2 next?
        MS. CHAITMAN: Yes. Thank you.
        We've asked for -- obviously one of
the major issues in the case is the
reliability of the records. And we've asked
for the trustee to disclose every single
factual error he's found in the books and
records. Because, again, that goes to the
reliability of the records.
        We've been able to nail down some of
this information in the profit withdrawal
litigation where, in fact, the trustee's own
experts have conceded that there are all
kinds of inconsistencies in the records, but
outside the profit withdrawal litigation,
which we think we're entitled to the same
disclosures.
        MR. JACOBS: May I respond, your
Honor?
        THE ARBITRATOR: Please.

Page 168

        MR. JACOBS: In the Wilenitz case
that's before us today, the defendants have
conceded that the cash activity for the
accounts that they opened in 2003 are
correct. So from both a relevance and a
proportionality perspective, this request and
the one that follows, which is -- which is
similar, are completely outside the universe
of what could even remotely be, under
conjecture or speculation, possibly
considered relevant proportionate to the
needs of this case.
        Judge Bernstein has characterized the
adversary proceedings as strict liability
actions; you got the money or you didn't.
You got the money, you have to pay it back
because it belongs to somebody else, if the
trustee can prove that with the books and
records related to the specific account.
        The books and records of other
customers, beyond the accounts that we sued
upon in any given case, are not relevant on
that issue to these claims.
        THE ARBITRATOR: Well, Wilenitz, which
we are pronouncing several different ways, is

Page 169

a unique case because I guess it's --
Mrs. Wilenitz has that statement saying, I've
compared it to my records and they agree.
        MR. JACOBS: Right.
        THE ARBITRATOR: So I agree with you
as to Wilenitz, it's irrelevant, as Judge
Bernstein said. But there are lots of
clients that Ms. Chaitman has. And even
though formally the motion only deals with
Wilenitz, conceptually if the books and
records regarding deposits and withdrawals
are woefully inaccurate, that it seems to me
is relevant.
        MR. JACOBS: And this --
        THE ARBITRATOR: In part --
        MR. JACOBS: In this particular case?
        THE ARBITRATOR: Not in Wilenitz. In
some other case.
        MR. JACOBS: Right.
        THE ARBITRATOR: In Case No. 3.
        But the profit withdrawal report and
hearing will, in part, deal with that; is
that correct?
        MS. CHAITMAN: Only with respect to
the profit withdrawal issue, not with respect

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 45 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

44 (Pages 170 to 173)

Page 170

to other issues.
MR. JACOBS: Right.
MS. CHAITMAN: So the thing is that
the issue of -- I'm sure you've had
experience with this on business records
exception, can you admit records of a
fraudster? Only if they have indicia of
reliability.
So this is what this interrogatory is
going to. If there is evidence that the
records -- the whole set of records do not
carry those indicia of reliability, then
that's a reason that they shouldn't be
admitted.
MR. JACOBS: Your Honor, you've just
seen in three cases just today Ms. Chaitman
has conceded the reliability as to the cash
activity of the account. She's made no
showing that the books and records of the
debtor are not 100 percent reliable with
respect to cash activity in this case or any
other case.
On that basis, an order compelling the
trustee to conduct an investigation that is
essentially a wild goose chase looking for a

Page 171

needle in a haystack across every single
customer account that existed at any point in
time --
THE ARBITRATOR: Well, but --
MR. JACOBS: -- has no rational
bearing to the relevance of the claims and
defenses in this case. The request is asking
for us to investigate every single customer
statement for all periods of time in every
single case.
THE ARBITRATOR: I read it slightly
differently. It's not in the present or
future tense; it's in the past tense.
It's "every error you found." And
there's one person who said the records were
inaccurate as to reflecting two $25,000
withdrawals where the customer said it was
only one, and maybe that's right, maybe
that's wrong, and maybe you have or have not
investigated that to date.
MR. JACOBS: Right.
THE ARBITRATOR: And I recognize that
we're dealing with tens of thousands of
records. But it's not requiring that you go
out and do that now; it's asking that you

Page 172

identify those instances you found in the
past.
I'm not saying that that's not a
considerable task and potentially an unduly
burdensome task, but it's narrower than the
way you're reading it, to my mind.
MS. CHAITMAN: And --
THE ARBITRATOR: Let me --
MR. JACOBS: What's the
articulation --
THE ARBITRATOR: Let me put it in a
criminal context. And if I'm using case law
that you're not familiar with, tell me and I
won't go down that road.
But if this were the Madoff criminal
case and you were the prosecutor saying,
everything Madoff did was a fraud and I can
prove it by introducing these records of his
business under the business records
exception, and the witness we're getting on
the stand, your expert or somebody else to
say these records are pristine, they
accurately reflect everything, under Brady,
you'd have an obligation as a prosecutor to
disclose, well, no, there were these ten

Page 173

instances where the records were inaccurate.
MR. JACOBS: Right.
THE ARBITRATOR: So Ms. Chaitman, in
effect, is looking for Brady material.
MR. JACOBS: Right, but that's not the
standard that governs discovery in this civil
action. The standard is Rule 26, which
cabins relevance by -- with proportionality.
The discovery sought must be relevant and --
it's not "or" -- and proportionate. And
proportionate is adjudged by the needs of the
case.
In this case, we have represented --
in this case with these defendants and these
accounts, we have not found any inaccuracy in
the records. In our -- in Greenblatt and
Lisa Collura's global reports, which we will
issue in this case and which we issue in
every case, they do a global reconciliation
of the customers' statements and find with a
near 100 percent certainly that, with respect
to wherever independent verification is
available, those records are reliable and
accurate with nearly 100 percent of the time,
which is I guess sort of the flip of what

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

## Page 174

1  you're asking us to do -- or the request is
2  asking us to do.
3        My question would be, how can I
4  possibly, with a team of a hundred attorneys
5  and numerous -- dozens of consultants, over
6  an eight-year period go back and reconstruct
7  every instance of every time we found a typo
8  on a page that may, quote, qualify as an
9  error, which is undefined and vague here?
10  That would take us weeks, months, years to do
11  for what utility or benefit?
12        THE ARBITRATOR:  I agree with you that
13  somebody told me, probably off the record,
14  that there were 64,000 customers.
15        MS. CHAITMAN:  I just told you that.
16        THE ARBITRATOR:  That there's no need
17  to either prospectively or retrospectively
18  identify every error in the records that
19  relate to 64,000 customers.
20        But at trial, to the extent there is a
21  trial, Ms. Chaitman, the trustee is only
22  going to offer the business records that
23  relate to these 92 customers of yours.  Judge
24  Bernstein firmly took the view that even if
25  there are gross inaccuracies as to other

## Page 175

1  customers, that that's irrelevant.
2        I understand you say that that would
3  call into question the accuracy of the
4  records as a whole.  This is not the
5  traditional case where somebody's going to
6  get up and say, I'm the treasurer of Bernard
7  Madoff Securities and the records are
8  accurate.  Although I suppose maybe there's
9  somebody who was prosecuted criminally, but
10  could so testify, saying that the records of
11  the fraud are accurate.
12        But why should I require that Request
13  No. 2 be answered except as to your 92
14  clients?  And then the same way you're having
15  trouble getting information out from your
16  expert or accountant or whoever it is who's
17  doing the summary information about taxes, I
18  think it was taxes, here there's going to be
19  an expert report which will, to the extent
20  there are errors or inconsistencies, disclose
21  items; is that accurate?
22        MR. JACOBS:  I'm sorry.  I'm not sure
23  I understand the proposition.  There will be
24  an expert report --
25        THE ARBITRATOR:  There's going to be

## Page 176

1  one or more experts who, for Mr. DiGiulian,
2  to pick somebody who doesn't concede that the
3  records correspond to his records -- for the
4  DiGiulian client of Ms. Chaitman, there's
5  going to be one or more experts who are going
6  to say, we looked at the books and records
7  that relate to this defendant.
8        MR. JACOBS:  Right.
9        THE ARBITRATOR:  They show the
10  following.
11        MR. JACOBS:  Right.
12        THE ARBITRATOR:  And we have not found
13  any inconsistent records.
14        MR. JACOBS:  That's correct.  And I
15  think the way I would put that is that we
16  will put forth proof on our affirmative
17  obligation and -- which is our burden
18  supporting all of our claims.  And I can tell
19  you that -- I can represent for the record
20  right now that with respect to all of
21  Ms. Chaitman's clients, we have found no
22  errors or we wouldn't have sued them.  Or we
23  wouldn't have -- we would have disclosed that
24  Bernard Exhibit B would reflect a correction
25  of that error.

## Page 177

1        There are no errors in any of
2  Ms. Chaitman's cases that we are aware of.
3  Now, discovery might yield a different
4  outcome, which is why we affirmatively asked
5  for all the discovery we've been discussing
6  earlier in the day.
7        If there are transactions or deposits
8  or withdrawals or other factual issues that
9  are disputed and Ms. Chaitman has proof of
10  that, on behalf of her clients, she has an
11  obligation to produce it.  And we will
12  consider it and either amend the claim
13  appropriately or we will litigate it in
14  court, and the judge will decide whose proof
15  carries the day.
16        But we shouldn't have to -- but
17  Ms. Chaitman must, under Rule 26 and under
18  the relevant law, articulate a basis to
19  challenge our proof that's specific and
20  not -- and not a fishing expedition across
21  unrelated, irrelevant other customers whose
22  deposits and withdrawals aren't at issue in
23  this case.
24        THE ARBITRATOR:  What I'm going to do
25  is limit Request No. 2 to Ms. Chaitman's 92

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 47 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

46 (Pages 178 to 181)

Page 178

1  clients. I gather that, thus limited, your
2  response is likely to be, we haven't found
3  such errors.
4      MR. JACOBS: Right.
5      THE ARBITRATOR: It also follows that
6  at the expert discovery stage in each of their
7  cases, you may find some errors. You may
8  not, but it's conceivable that you may find
9  some. And granted that will occur at the
10 expert discovery stage rather than the fact
11 discovery stage, but I will reserve decision
12 as to whether that permits her to then seek
13 further discovery.
14     MR. JACOBS: Okay.
15     MS. CHAITMAN: I would like just to
16 point out --
17     MR. HUNT: Can I make one -- sorry to
18 interrupt.
19     Are you done, moving on to the next
20 one?
21     MS. CHAITMAN: No, I was going to say
22 something about this.
23     MR. HUNT: I was going to make -- for
24 the record, DiGiulian actually has stipulated
25 to the accuracy and --

Page 179

1      THE ARBITRATOR: I was just using a
2  name.
3      MR. HUNT: Good.
4      THE ARBITRATOR: The Maas account. I
5  wasn't trying to be specific.
6      MR. HUNT: I didn't think so, but I
7  didn't want an inconsistent record.
8      MS. CHAITMAN: The -- in fact, one of
9  my clients extraordinarily had records going
10 back and had an original check that Madoff
11 had sent her that she hadn't cashed. So her
12 account was charged with that amount, but she
13 hadn't actually withdrawn it. So that was an
14 error. And --
15     MR. JACOBS: That's not an error in
16 our books and records. That's back --
17     MS. CHAITMAN: It showed up as a
18 withdrawal on her statement.
19     THE ARBITRATOR: Depends on the
20 accounting system you use, I suppose, and
21 that's --
22     MS. CHAITMAN: But that's the kind of
23 thing. If they don't count that as an error
24 when a check is not cashed --
25     MR. JACOBS: How would we know if the

Page 180

1  check was cashed or not unless Ms. Chaitman
2  produces the discovery which we asked for,
3  which are those bank statements and
4  confirmation --
5      THE ARBITRATOR: Really the request is
6  list every single factual error of which you
7  are aware. Your point is you were unaware of
8  that --
9      MR. JACOBS: Right.
10     THE ARBITRATOR: -- despite a
11 good-faith effort.
12     MR. JACOBS: It's also --
13     THE ARBITRATOR: And I think -- you've
14 been harping on proportionality. I think
15 I've dealt with that by limiting the universe
16 to the 92 accounts.
17     MR. JACOBS: Okay.
18     THE ARBITRATOR: And if at the expert
19 discovery stage, it turns out that there are
20 a number of errors, then, as I said, I'll
21 deal with that at that stage.
22     MR. JACOBS: Okay.
23     THE ARBITRATOR: Okay. What's next?
24     MR. JACOBS: I think that same ruling
25 would apply to --

Page 181

1      THE ARBITRATOR: 2, 3 and 5?
2      MR. JACOBS: Let me --
3      THE ARBITRATOR: Ms. Chaitman had 2, 3
4  and 5 as a page, basically.
5      MR. JACOBS: Right. I'm not sure that
6  I even can understand Request 3 as drafted.
7  I don't know what this means, to list every
8  single factual error asserted by any Madoff
9  or BLMIS customer in their statements. How
10 does a customer assert an error in their -- I
11 just think -- I don't understand what this
12 request is seeking.
13     MS. CHAITMAN: Let me explain.
14     What I meant to request is that if
15 Mrs. Jones asserts that on her December 31,
16 2001, statement there's an error and she
17 brings that to your attention and she's
18 correct, I'm asking you to produce the
19 documents that indicate that.
20     THE ARBITRATOR: Well, I -- there's
21 two ways in which this could be read. One
22 is -- well, building on what Ms. Chaitman
23 said, the bringing it to the attention of
24 somebody could be in realtime such that
25 somebody in 2007 wrote a letter to Madoff and

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

---

Page 182

1  said, I never cashed that check so your
2  accounting is wrong.
3         Or it could be in connection with the
4  bankruptcy proceeding. In connection with
5  the bankruptcy proceeding, obviously you know
6  if somebody has asserted such a contention,
7  Ms. Chaitman. So really it's the sort of
8  realtime complaints.
9         And, again, I'm going to limit that to
10  the 92 accounts at issue.
11         MR. JACOBS: Thank you, your Honor,
12  but at this juncture, I really do feel
13  compelled to assert for the record that we
14  object to the fact that we appear to be
15  having a mini hearing here as to the
16  admissibility of the trustee's records.
17         All of these records are proof of
18  claims that are going to be litigated, and a
19  court of law is going to determine if they
20  have errors or not. This isn't something --
21  an error is -- what does that mean? Does
22  that mean do I have to disclose an error if I
23  lose in court? Do I have to disclose -- is
24  it an error if a defendant denies it in her
25  answer? Is it an error if competing, but

---

Page 183

1  unresolved factual evidence is produced?
2         These requests are simply nonsensical.
3  And I have to say, notwithstanding your
4  order, respectfully, on number 2, with
5  respect to number 2 and 3, it's not my burden
6  to prove that these records are correct
7  before I have to prove them.
8         And it's not my burden to make
9  determinations as to whether a court of law
10  is going to determine that my proofs are
11  legally sufficient or not before those
12  determinations have been made.
13         THE ARBITRATOR: Nor am I requiring
14  that. And it's not a prospective
15  undertaking; it's your knowledge -- when I
16  say "you," I mean the trustee -- as of today.
17  So if, for example, in the 92 accounts,
18  you're aware today that there was some
19  accounting miscalculation, you would have to
20  produce that information to Ms. Chaitman.
21         As I said, as a practical matter,
22  you're likely only to get to that stage when
23  I guess it's -- Collura opines about a
24  particular account.
25         MR. JACOBS: Right.

---

Page 184

1         THE ARBITRATOR: And what the sequelae
2  of that would be is something I reserve
3  decision on. So I think you're worrying
4  about something that hasn't happened and may
5  not happen.
6         MR. JACOBS: I guess I'm still stuck
7  on this concept of error. I mean, our -- we
8  construct our Exhibit Bs based on what we
9  believe to be true and correct based on our
10  investigation.
11         THE ARBITRATOR: So your --
12         MR. JACOBS: It's a combination of
13  account statements, bank transfer records,
14  third-party records and other materials. So
15  we are not going --
16         THE ARBITRATOR: And if --
17         MR. JACOBS: -- pursue, for example,
18  on a withdrawal that we don't have a
19  good-faith basis to believe occurred, whether
20  the check was cashed or not, whether we're
21  right or not, whether -- it didn't happen.
22         Because we painstakingly constructed
23  each of our complaints with respect to each
24  account and our net equity analysis, with the
25  help of our experts and consultants, in

---

Page 185

1  making determinations on which claims to
2  pursue and which ones not to pursue.
3         THE ARBITRATOR: Which is my point,
4  that your answer may well be, now that I've
5  narrowed it to the 92 accounts, we are aware
6  of no such errors at this time.
7         MR. JACOBS: Okay.
8         THE ARBITRATOR: Maybe there are some
9  that you're aware of, but it's equally
10  plausible that you're not aware of any such
11  errors.
12         So that was 3. And 5 is the one --
13         MR. JACOBS: The number 5 we discussed
14  at length with Judge Bernstein, and he agreed
15  that we find this nonsensical. I don't know
16  what "riddled with fraud" means, if this is a
17  challenge to the admissibility of our records
18  that's not currently before your Honor and
19  not properly ruled upon at this juncture.
20         What we have maintained is that -- and
21  what our experts will maintain, as we've
22  discussed at length today, is that the cash
23  activity reflected in the customer statements
24  is accurate and reliable, but the stock
25  trading activity included in those documents

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 49 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

48 (Pages 186 to 189)

Page 186

and others that were provided to customers
reflect fraudulent trading -- purported
trading activity that never occurred.

So that may be where this "riddled
with fraud" expression is coming from, but
put together in the context of this request,
it's nonsensical, and we shouldn't be
required under any theory to respond.

THE ARBITRATOR: Well, as to Request
No. 5, there's two different versions of it.

MR. DEXTER: I think it was changed to
"permeated."

THE ARBITRATOR: Yes, that's the point
I was about to make.

And I assume that that's a quote from
the complaint.

MS. CHAITMAN: It's a quote from the
trustee's expert, who said that.

MR. JACOBS: If it's a quote from --

THE ARBITRATOR: But obviously it's,
from the trustee's perspective, lifting the
words out of context.

MR. JACOBS: At a minimum, it's
lifting the words out of context. It's
completely divorcing the words of any context

Page 187

and putting it in a request that, when read,
is not coherent.

THE ARBITRATOR: Well, let's not
characterize it pejoratively. The reports
presumably are going to be reports of
Collura and -- I'm not quite sure what
Greenblatt talks about, but maybe Greenblatt.

And as to certain of her customers, to
the extent she stipulates to the accuracy of
the deposits and withdrawals, there's no
reason why you should have to answer Request
No. 5.

But to the extent she does not so
stipulate, it seems to me those reports will
be the expert reports. And the expert
reports will reference, I would imagine, the
documents upon which the expert bases his or
her conclusion.

So you may be getting that later than
you wished, Ms. Chaitman, but you will be
getting it.

MR. JACOBS: And I can also add that
the case -- the case-wide documentation
underlying those reports is already in Data
Room 1, which has been made available. That

Page 188

would include all of the bank transfer
records that we have, which are labeled by
producing bank and the appropriate subfolder
so it's easy to find.

There's also -- as we told
Ms. Chaitman, there's a full universe of
every customer's statement. There's a full
set of all the customer statements that we
have in the data room. And while we've made
that available in connection with our expert
report -- while we may disagree it's relevant
to the issue of whether this defendant
received transfers, as we've said, it was
considered by our expert in connection with
his conclusions. And it's in the data room,
so you can do with it what you see fit. It's
made available to you.

THE ARBITRATOR: Let's move on.

MS. CHAITMAN: Okay.

THE ARBITRATOR: What's next?

MS. CHAITMAN: We need to go to 4,
your Honor, "List every profit withdrawal
entry on a customer statement where there's
no documentary evidence that the customer
requested to receive profit" --

Page 189

THE ARBITRATOR: I'm sorry. Which
number?

MS. CHAITMAN: Number 4. We skipped
4. We went from 3 to 5.

THE ARBITRATOR: Right.

MR. JACOBS: Your Honor, this is again
the problem with doing these requests
theoretically across cases with -- divorced
from a factual context. There are no PW
transactions in this case. But even if there
were, Ms. Chaitman has all of this discovery
already in connection with the PW proceeding.

I'll stipulate that it can be
deemed -- it's deemed produced in this or in
any other case where PW is an issue. That
discovery was exhaustive. There were expert
reports exchanged. There were documents
underlying those reports exchanged. She has
all of it already.

So it's not relevant to this case, but
even if it were, I would agree to deem it
produced in this case so we don't have to go
through the charade of producing it again.

THE ARBITRATOR: Let me just say that
my marginal note to myself was "Going to be

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 50 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

49 (Pages 190 to 193)

## Page 190

addressed in PW litigation," and I didn't have a question mark after it so --

MS. CHAITMAN: No, but the answer is -- the answer is no because Judge Bernstein's order specifically provided that the profit withdrawal litigation was only for people who asserted SIPA claims, but were not defendants in claw-back actions. So he segregated it. So no one who was a defendant in a claw-back action had the right to participate in the profit withdrawal litigation.

THE ARBITRATOR: Let me ask a different question, which is, suppose Customer Jones never requested a profit -- let me go back a step.

Are we using "profit withdrawal" as a term of art to mean something that's a subset of withdrawals generally?

MS. CHAITMAN: Yes. These were withdrawals that occurred before 1992 in general. There were some afterwards up to 1997, but the -- they were reflected on statements from 1980 or '81 and some up to 1997. Most ended in 1992. It was a specific

## Page 191

entry.

THE ARBITRATOR: And were these customers who were getting all of the monthly profits shown or quarterly were getting profit withdrawals or what?

MS. CHAITMAN: Under this trading strategy, they would get the profit on a specific arbitrage transaction when the money hit the account. And the evidence in the profit withdrawal litigation has been that people were not sent profit withdrawals unless they asked for them in writing.

So what Collura did with respect to the profit withdrawal participants, which was a subset that excluded all the claw-back defendants, is, she produced a report which said, as to the following 3,000 people, whatever it was, there is no documentary evidence within Madoff's records that these people requested or received a profit withdrawal.

So what I'm asking for -- I don't believe I have to wait for expert reports on this. I'm asking whether there is any documentary evidence to support the profit

## Page 192

withdrawals on the claw-back defendants' statements.

Now, obviously it doesn't reflect -- it didn't affect the three that we're specifically talking about, but these interrogatories were intended to be served on everyone.

THE ARBITRATOR: I'm still not getting why, as to the claw-back defendants, this is relevant or why they're carved out.

MS. CHAITMAN: Because Judge Bernstein did that. Honestly I think he shouldn't have, but he did. And so the factual --

MR. JACOBS: That is actually defense counsel's request, to carve out, so the PW proceeding is separate from the adversary proceeding.

THE ARBITRATOR: I understand -- maybe I misunderstand, but my understanding was that Judge Bernstein is looking for issues that can be dealt with universally and that one of those is the profit withdrawal issue and that, therefore, he's having an omnibus hearing or litigation, whatever you want to call it, with respect to that.

## Page 193

Is that correct?

MR. JACOBS: That is correct, but it's only -- I agree with Ms. Chaitman. By court order, it's only applicable to the claimants.

MS. CHAITMAN: Not the claw-back defendants.

MR. JACOBS: And those are customers who we didn't necessarily sue, but who filed claims with the trustee. We denied the claim, for whatever reason, and they objected. And we're now litigating the objections. And part of that objection is that the trustee didn't properly credit these PW transactions. So it gets unfolded --

THE ARBITRATOR: Let me just be -- before you say whatever it is you were about to say, Ms. Chaitman, if the trustee stipulates that all of the discovery in the PW litigation will be made available to you here, doesn't that go a long way to resolving this?

MS. CHAITMAN: No, because there was no discovery in the PW proceeding relating to the claw-back defendants. That was the whole -- I don't -- I don't recall why it was

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 194

done that way, but my impression was that
Judge Bernstein ordered that, that if you
were a claw-back defendant and you challenged
a profit withdrawal, you had to do it in the
claw-back discovery. So that's why we're
asking this specific information.

MR. JACOBS: I think I can address
this. There's two separate types of
discovery that, in my mind, related to PW
that would be relevant in an adversary
proceeding that has PW in a relevant account.

One is, in the fact discovery stage,
all of the materials we already produced,
which are the account statements, the bank
transfer records and the account opening and
closing documents and all of the
correspondence, which would contain all of
the evidence we have with respect to those
sued-upon accounts of how those PW
transactions should or would be or were
characterized. Right.

Secondarily, there will be -- PW will
likely be addressed by our experts later on
down the road as part of their analysis that
might fill any factual gaps for which there's

Page 195

no record one way or another.

So discovery -- we are already
affirmatively producing any PW-related
materials that would be relevant in any given
adversary proceeding specific to those
defendants in the case. Then I anticipate
we'll also be --

THE ARBITRATOR: If somebody
affirmatively requested, by way of a letter,
for example, profit withdrawal, that also --

MR. JACOBS: That's a produced --

THE ARBITRATOR: -- to the extent you
had it, that would be part of this CAD?

MR. JACOBS: Correct. So our initial
disclosure production, we do this without
even a request. It just goes out the door.
We repackage it. It's the core account
documents, which are customer statements and
other similar types of reports that BLMIS
generated over time, reflecting all of the
customer account activity for all of the
relevant accounts.

So that would be the sued-upon
accounts and any accounts from which the
sued-upon accounts got inter-account

Page 196

transfers.

We also produced the bank transfer
records, which would be JPMorgan, in most
instances, records of cash activity coming to
and leaving BLMIS's account to or from the
defendants.

We also produced a customer file for
those accounts that BLMIS maintained, which
includes all the correspondence. So if
Defendant X wrote a letter to Bernard Madoff
instructing that dividends on certain stocks
held in my account should be -- result in a
check paid to me, that would be produced.
All of that's produced in fact discovery
right out of the gate.

THE ARBITRATOR: And the only
carve-out is the adversary proceedings.

MR. JACOBS: The carve-out from the PW
claims proceeding?

THE ARBITRATOR: Yes.

MR. JACOBS: Yes, the adversary
proceedings are carved out from that.

THE ARBITRATOR: Ms. Chaitman has 92
of those -- just give me a sense of scale,
how many adversary proceedings are still

Page 197

kicking around?

MR. JACOBS: We have around 350 or so
still active, I believe.

MS. CHAITMAN: You told me 300 a
couple of months ago.

MR. JACOBS: It's around 300. I might
be off.

THE ARBITRATOR: Well, so as to
Ms. Chaitman's clients, she's going to get
that at the expert discovery stage, and the
underlying documents from which you could
infer the answer have been produced.

What she's not getting by way of that
is, for the other 208 or so accounts, that
information, but I think the relevance of it
as to the other 208 is dubious, at best.

So I'm not going to require an answer
to Request No. 4 at this time.

MR. JACOBS: Thank you, your Honor.

MS. CHAITMAN: Okay. Request No. 6
where I have some requests that go to the
nature of the outstanding claims, I think
you can rule on them as a body. And I just
want to explain to you why we think it's
important.

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 52 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

51 (Pages 198 to 201)

Page 198

THE ARBITRATOR: 6 through 9 deal with the net equity issue, as I understand it; right? Where you say the court didn't have a full --

MS. CHAITMAN: It didn't have a full picture --

THE ARBITRATOR: Factual record.

MS. CHAITMAN: It didn't have a full factual record when it made the determination. And I would like -- obviously these cases are going to go back to the Second Circuit and possibly even to the Supreme Court. And I would like to have a full factual record.

So, for example, if the only claims that are left are claims of the huge feeder funds or something like that, then I think that that's part of the factual record that the courts that look at this should be aware of. And it's readily available to the trustee because he has a distribution list. So all he has to do is give us the distribution list.

And at some point in time, the subcommittee of the Commercial Financial

Page 199

Services committee and the house had requested this information of SIPA. And it had been delivered to Congressman Scott Garrett as of a certain point in time. I'm simply asking that that be updated.

THE ARBITRATOR: The only part of this that I'm inclined to grant, but you may have the information already, is in Request No. 9 or maybe Request No. 6 or both; but basically, I think you're entitled to aggregate claim information, but I assume the trustee reports that periodically.

MR. JACOBS: That's reported in every single interim report that we file. It's also regularly updated on the trustee's website at www.madofftrustee.com. So with the click of a mouse, all of that information is in realtime, updated and available to Ms. Chaitman.

And beyond that, we rigorously object to having to produce any additional materials. Judge Bernstein has explicitly rejected this legal defense. It's really an attack on the trustee's standing under SIPA 78fff-2(c)(3). The defendants are planning

Page 200

to argue that he has enough money to fulfill all the outstanding claims in the customer fund.

And that's simply not true at the time this defense was raised. It was not true at the time Judge Bernstein rejected explicitly this legal argument and his omnibus decision on the motion to dismiss. And it's not true today.

So there's no legal basis that would allow for an order determining that any of this discovery is relevant.

THE ARBITRATOR: Well, as I said, I'm not going to allow it except to the extent that it's aggregate information. And that is publicly available. So the short answer is I'm not going to allow it. When the Second Circuit reverses based on that ruling by Judge Bernstein and me, then I guess we'll be back at it again.

What's next?

MR. HUNT: One of the drabs that comes in for...

MR. JACOBS: I believe that was 6 through 9.

Page 201

THE ARBITRATOR: Right.

Ms. Chaitman?

MS. CHAITMAN: So 10 --

THE ARBITRATOR: 10 is where I have to go to the other set because you substituted. It's not asking about the fee arrangement anymore. It's --

MS. CHAITMAN: No, it's here. Here it is.

THE ARBITRATOR: I've got it here. List of every allowed claim, is that it?

MS. CHAITMAN: Yes.

THE ARBITRATOR: I think -- how is that different than 6 through 9?

MS. CHAITMAN: It's not. I agree.

THE ARBITRATOR: So the ruling is the same.

MR. JACOBS: I'm sorry. Which number were we just looking at?

THE ARBITRATOR: Number 10.

MS. CHAITMAN: So number 11, we're asking for, "For each year of Madoff's operation, state all facts on which you base your position that Madoff did not purchase securities for his investment advisory

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 53 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

52 (Pages 202 to 205)

Page 202

1  customers and produce the documents on which
2  you base your position."
3      This goes to one of the most important
4  issues in the case for anyone who was a
5  long-standing Madoff customer.
6      THE ARBITRATOR: This is the dispute
7  between the trustee's position and
8  Mr. Madoff's testimony and Mr. DiPascali's
9  plea.
10     MS. CHAITMAN: Right, but the point
11 is, we have a right to the production of
12 these documents. This goes to a core issue
13 in the case.
14     THE ARBITRATOR: Let's take the first
15 part of it first. I think that it's not
16 unduly burdensome and is relevant to have you
17 set forth the trustee's position, which I
18 assume can be done in a paragraph.
19     MR. JACOBS: Your Honor, this is
20 exactly the subject of Bruce Dubinsky's
21 report. We intend to meet our burden of
22 proof through an expert that we proffered in
23 this case. We provided Ms. Chaitman with an
24 early production of that report, which is our
25 answer to this request. It's not -- it is

Page 203

1  absolutely, given the complexity of the fraud
2  that occurred, not something we can reduce to
3  a paragraph.
4      THE ARBITRATOR: So the answer may be,
5  see Dubinsky report at pages whatever through
6  whatever.
7      MR. JACOBS: Right. I believe that's
8  what we did answer. We said the request was
9  premature because it was the subject of
10 expert analysis and it will be disclosed
11 pursuant to the case management order.
12     THE ARBITRATOR: I looked at the
13 request, but not the --
14     MR. JACOBS: I'm not looking at it
15 right now either, but I can't imagine we said
16 anything different.
17     MS. CHAITMAN: I have the response.
18 Do you need the response, Judge?
19     THE ARBITRATOR: No, I've got it here.
20     MR. JACOBS: "The trustee objects to
21 this request on the grounds that it
22 prematurely seeks to have the trustee
23 disclose expert material well in advance of
24 the deadline in the case," but that's the
25 objection I'm making.

Page 204

1      THE ARBITRATOR: Let me interject.
2  Off the record before you do that.
3      (Discussion off the record.)
4      MR. JACOBS: I'm happy to repeat that.
5  It was 78fff-2(c)(3).
6      THE ARBITRATOR: Start over.
7      MR. JACOBS: Please feel free to
8  interrupt me any time.
9      THE ARBITRATOR: Let's -- back on the
10 record.
11     There were a number of bases on which
12 the trustee initially objected to Request
13 No. 11, one of which is work product, the
14 second of which is that Ms. Chaitman was
15 asking for expert discovery materials
16 prematurely, although that's now been waived
17 by production of the Dubinsky report;
18 correct?
19     MR. JACOBS: That's correct. So our
20 initial objection referenced the upcoming
21 report, which -- the disclosure of which was
22 not yet due. Subsequently, in an effort to
23 try to avert as many disputes as possible
24 from coming to your attention or to the
25 court's attention, we made -- we went ahead

Page 205

1  and made an early production of that report
2  in this case.
3      THE ARBITRATOR: But as to Request
4  No. 11, as a matter of form, I think
5  Ms. Chaitman is entitled to an answer
6  certainly to the first part of this, which is
7  "state all facts." And if it's done by
8  referencing the Dubinsky report, so be it.
9      And in terms of producing the
10 documents on which you base your position,
11 are there any documents related to
12 Ms. Chaitman's clients upon which Dubinsky
13 bases his position that have not been
14 produced?
15     MR. JACOBS: No. Absolutely not.
16     THE ARBITRATOR: In any of her 92
17 cases?
18     MR. JACOBS: Correct.
19     THE ARBITRATOR: So I think that deals
20 with Request No. 11.
21     MS. CHAITMAN: Well, I don't think it
22 does because this is precisely the issue we
23 were talking about before. The Madoff
24 trading records -- to the extent that some of
25 my clients' accounts go back to the 1980s,

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 54 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

53 (Pages 206 to 209)

Page 206

the Madoff trading records have not been
produced. And if the trading records were in
stocks that appeared on my clients'
statements, then my argument would be that
this is evidence that Madoff was trading with
respect to those accounts.
      THE ARBITRATOR: But you're not asking
for, in effect, civil Brady material. You're
asking for the documents which support the
trustee's position, not those which refute
the trustee's --
      MS. CHAITMAN: Right --
      THE ARBITRATOR: -- position.
      MS. CHAITMAN: -- I am, but the point
is it's the converse.
      THE ARBITRATOR: But the request is
produce the documents that support your
position.
      MS. CHAITMAN: Right. But the point
is, I don't think he has any documents. And
that's why I think I'm entitled to a written
answer to that effect. If there are no
documents, let him say that.
      THE ARBITRATOR: Well, so as to the --
I'm going to limit this second part of this

Page 207

to the 92 clients of Ms. Chaitman. And you
can answer it by referencing the documents
that you believe support your position, the
underlying documents. It may be simply a
reference to the CADs, but --
      MR. JACOBS: Right. Well, I guess my
problem with this, your Honor, is that
Mr. Dubinsky provides about a hundred-page
report that goes in-depth, in detail
responding to this exact issue and talks
about the analysis he conducted with respect
to securities trading for the IA business and
his conclusion there was no evidence of any
securities trading on behalf of any IA
customer at any given point in time.
      He also talks at length about the
relationship between the different functions
of BLMIS, like -- enormous detail on the
actual stock trading activities that did
occur, all of those things, so --
      THE ARBITRATOR: Is there an executive
summary?
      MR. JACOBS: What you're asking me to
do is provide an executive summary of expert
analysis, which I don't think is appropriate.

Page 208

      THE ARBITRATOR: I'm saying in his
report, is there -- I understand it goes on
for a hundred pages, but is there a
two-paragraph version of it?
      MR. JACOBS: I believe that there is
at the beginning, yes. And there are
certainly conclusions that are condensed as
to the big picture, but I don't think it's
appropriate for me, as an attorney, in
responding to an interrogatory that goes
to -- directly to our expert's analysis -- I
don't think it's appropriate for me to have
to find a way to paraphrase and package that
analysis in a way -- you know, all of the
facts he considered, all of the documents he
considered, all of the work that he did to
reach that executive summary conclusion is
detailed at great length in the report. And
I believe I should be entitled to defer to
that report in lieu of an additional response
to this question, which is what I would like
to do.
      THE ARBITRATOR: I'm not disagreeing
with that.
      MR. JACOBS: Okay. I was

Page 209

understanding you were asking for a paragraph
where I would just disclose specific
documents --
      THE ARBITRATOR: I was, but --
      MR. JACOBS: -- and the like when I've
hired an expert who does exactly that. I
would like that expert to stand or fall on
his analysis on his own, independent of my --
you know, my characterization of that expert.
      THE ARBITRATOR: I assume his report
reveals the documents on which he relies.
      MR. JACOBS: That's absolutely
correct. And consistent with the litigation
procedures order that I referenced earlier in
the day, the e-Data Room 1, which we
discussed at length today, was formed for the
specific purpose of making available --
      THE ARBITRATOR: Well --
      MR. JACOBS: -- all of that material.
      THE ARBITRATOR: -- so you may be able
to answer this. I am going to require an
answer. You may be able to answer it by
reference to the report.
      MR. JACOBS: Okay.
      THE ARBITRATOR: And obviously I

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 55 of 110
Trustees Motion to Compel Discovery

Arbitration 12/13/2016

54 (Pages 210 to 213)

## Page 210

1  haven't read the report.  If there's some
2  fine-tuning that's warranted, we'll deal with
3  that down the road.
4       MR. JACOBS:  Okay.  Thank you, your
5  Honor.
6       THE ARBITRATOR:  Next.
7       MS. CHAITMAN:  Okay.
8       MR. JACOBS:  Number 12 is asking --
9  again it's the same issue as Request No. 1.
10  It's asking for -- it can be construed as
11  asking for our work product of employees or
12  other individual -- interviews of individuals
13  in connection with those conclusions.
14       Now, I will say Mr. Dubinsky, in his
15  report, does reference all of the materials,
16  the depositions and examinations, he did in
17  his investigation in arriving at his
18  executive summary conclusions.  That's all
19  disclosed to the extent it's available.
20       Beyond that, I'm objecting to any
21  additional disclosure on the basis that it's
22  work product.
23       MS. CHAITMAN:  So let me ask you
24  something, Judge.  Do you think it's
25  appropriate -- let's just assume that, in

## Page 211

1  fact, the trustee's personnel have spoken
2  with some of the Madoff traders, who insist
3  that they actually did legitimate trades and
4  that they did trades for the investment
5  advisory customers.
6       Is it your position then that they
7  don't have an obligation to disclose that to
8  me?
9       THE ARBITRATOR:  You're
10  hypothesizing -- let me make sure I
11  understand this -- that, by way of example,
12  counsel or some other investigator that
13  counsel retained spoke to employee X, who
14  said, Madoff is right, it was trading.  And
15  then, without disclosing that, they hired
16  Mr. Dubinsky and said, go off and do your own
17  investigation.
18       MS. CHAITMAN:  Right.
19       THE ARBITRATOR:  And Dubinsky issued
20  his report, and the trustee did not disclose
21  to Mr. Dubinsky that there's evidence to the
22  contrary.
23       MS. CHAITMAN:  Right.
24       THE ARBITRATOR:  Well, I think that if
25  that were the case, Baker Hostetler and its

## Page 212

1  lawyers would have much more fundamental
2  problems dealing with their ability to
3  practice law in the future.
4       MS. CHAITMAN:  But then why wouldn't I
5  be entitled to this information?
6       THE ARBITRATOR:  Because it's classic
7  work product.  They --
8       MS. CHAITMAN:  But we have a need for
9  it and we have no access to it.  The trustee
10  is in a unique position to be able to
11  question the former Madoff employees.
12       MR. JACOBS:  This request is coming as
13  pure speculation as if things she presumes --
14  things exist that are purely conjecture.
15  There has to be an articulable need for
16  specific information.
17       THE ARBITRATOR:  Well, within these
18  adversary --
19       MR. JACOBS:  I can't make up things
20  that didn't happen or that don't exist.
21       THE ARBITRATOR:  Within these
22  adversary proceedings, when does deposition
23  discovery occur?
24       MR. JACOBS:  In fact discovery for
25  fact witnesses --

## Page 213

1       THE ARBITRATOR:  Right.
2       MR. JACOBS:  -- and then expert
3  discovery for expert witness.  Expert
4  discovery has come and gone.  In a number of
5  Ms. Chaitman's cases, she hasn't deposed
6  Mr. Dubinsky.  She hasn't deposed
7  Ms. Collura.  She hasn't deposed
8  Mr. Greenblatt.
9       Ms. Chaitman, other than Mr. Madoff,
10  hasn't served any Rule 45 subpoenas for
11  deposition testimony of any BLMIS employees
12  or anybody else.
13       It's incumbent upon Ms. Chaitman to
14  conduct her own investigation, further her
15  speculative theories of the case.  We don't
16  have any obligation to do that for her.  And
17  to the extent we've done it, it's our work
18  product, which is shielded from discovery.
19       THE ARBITRATOR:  Well, I'm not
20  unsympathetic -- and this is probably a
21  speech I should have given at the beginning.
22  I'm not unsympathetic to the fact that even
23  with 92 clients, Ms. Chaitman's resources are
24  considerably less than the trustee's.
25       And in appropriate circumstances, that

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 56 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

55 (Pages 214 to 217)

Page 214

1 might warrant some shortcuts, but you have
2 been given a list of all of the employees.
3 And, again, Request No. 12, like at least one
4 of the other requests, asks for attorney work
5 product to the extent that it's going beyond
6 what Mr. Dubinsky did. So I'm going to deny
7 Request No. 12.
8 MS. CHAITMAN: Okay. Request No. 13,
9 they actually ultimately produced the
10 document.
11 THE ARBITRATOR: Right.
12 MS. CHAITMAN: "Explain the basis on
13 which you determined that the defendants have
14 no net equity and produce the front and back
15 of each check."
16 Well, they've actually -- they
17 produced those now.
18 Number 15, "Explain how you intend to
19 establish that Madoff was insolvent in each
20 year from 1960 to 2000 and produce all
21 documents on which you will rely to establish
22 insolvency."
23 What they've done is simply relied
24 upon their expert.
25 THE ARBITRATOR: Right.

Page 215

1 Who's the expert on this?
2 MR. JACOBS: It's Mr. Dubinsky. So
3 his report is broad in insolvency
4 collectively. And so all that discovery and
5 that analysis has been made available in this
6 case.
7 However, Judge Bernstein has raised a
8 good question as to whether insolvency is any
9 longer actually an element in our case -- in
10 this case. I believe the answer is, no, it's
11 not a burden of proof that we have with
12 respect to the avoidance actions.
13 However, I expect at some point that
14 will be addressed on motion or briefing after
15 further briefing with Judge Bernstein.
16 But even if it is relevant, it's our
17 same response as to the prior request,
18 number 11, asking for the basis of the facts
19 on which we state our conclusion that BLMIS
20 was a fraud. It's the same answer as -- this
21 is exactly the subject matter of
22 Mr. Dubinsky's expert's analysis. We rely on
23 his report in answering this interrogatory
24 and all of the specific documentation he
25 references, which we've made available in

Page 216

1 e-Data Room 1.
2 MS. CHAITMAN: If they're relying on
3 the Dubinsky report, then they're limited to
4 the Dubinsky report, I assume, and they're
5 not going to be able to introduce evidence
6 beyond that. And if I get such an order,
7 then I'm satisfied with it.
8 But I don't want a situation where
9 they all of a sudden decide that, for
10 whatever reason, Dubinsky's report is not
11 reliable and now they're going to put in a
12 whole bunch of evidence that I haven't had
13 the opportunity to obtain in discovery.
14 MR. JACOBS: On insolvency?
15 MS. CHAITMAN: Yes.
16 MR. JACOBS: We have endeavored to
17 make available everything we could possibly
18 find that might be relevant to that subject
19 matter. You have all --
20 THE ARBITRATOR: Is there anything
21 beyond Dubinsky and the documents he relies
22 on that you would proffer at trial?
23 MR. JACOBS: Absolutely not. And
24 certainly if -- just as Ms. Chaitman stated
25 earlier, if we obtain something from a third

Page 217

1 party, we'll provide it and we'll add to the
2 data room and we'll supplement a report, if
3 needed. We'll make it available. But
4 sitting here today, there's nothing to my
5 knowledge that has not been made available on
6 that subject.
7 THE ARBITRATOR: I think you can
8 answer it by saying, "See Dubinsky report."
9 MR. JACOBS: Okay.
10 THE ARBITRATOR: What I know about
11 bankruptcy could be written on the head of a
12 pin, but I did look at 11 U.S.C. Section 548
13 (a)(1)(A) versus (B). And it does appear
14 that Judge Bernstein was right when he said
15 that insolvency is not an issue when you have
16 an intent to defraud.
17 MR. JACOBS: Right. And to explain
18 why we address it affirmatively is, as I'm
19 sure you know from the background materials
20 we provided, the legal landscape of this case
21 has changed for many defendants over time,
22 including what we call the feeder fund in the
23 bank cases, where we have a claim above and
24 beyond just the avoidance actions we have
25 here.

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 57 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

56 (Pages 218 to 221)

Page 218

1    But also -- you know, insolvency also
2 could be construed as being indirectly
3 relevant to the fraud.  Insolvency is an
4 indicia of fraud.  So that interrelates with
5 these earlier periods of time.  Whether it
6 be -- so I'm making this point because the
7 issue of whether stocks were traded or not is
8 in and of itself not conclusive of whether
9 there was a Ponzi scheme or a fraud.
10    So that is an important fact that I
11 don't think gets conflated in the discovery
12 disputes we're having.  I just wanted to make
13 it clear.
14    THE ARBITRATOR:  Okay.  Anything else
15 on Wilenitz?
16    MS. CHAITMAN:  Yes, number 16.
17    THE ARBITRATOR:  Oh, I'm sorry.
18    MS. CHAITMAN:  "Provide the gross
19 trading volume by both number of shares
20 traded and total dollar value for each of
21 Madoff's operations broken down by the
22 investment advisory business, the proprietary
23 trading business, and the market-making
24 business and produce the documents on which
25 you base your responses."

Page 219

1    MR. JACOBS:  Now, our objection here,
2 your Honor, is something you alluded to this
3 morning with respect to the nature of the DTC
4 records.  Our answer -- our objection to this
5 particular request is -- we have a number of
6 objections, but first and foremost, this is
7 an investigation that Ms. Chaitman is asking
8 us to do to further her speculative theory
9 that she wishes to advance to challenge the
10 fraud.
11    We've made the underlying
12 documentation that is available, all of it,
13 to her.  She can do that investigation
14 herself.  And under Rule 33(d) that is
15 entirely appropriate and called for here.
16    And to be clear, we're not just saying
17 go look in the data room.  We have told her
18 specifically where all of the documents she
19 would need to attempt this manipulation of
20 the data for her purposes can be found.  And
21 it's all in a single, segregated folder
22 called DTC under the main subfolder data in
23 the data room.
24    MS. CHAITMAN:  But it doesn't because
25 that's not -- that's 2002 on.  And, again,

Page 220

1 we're --
2    MR. JACOBS:  Again, I'll reiterate,
3 your Honor, Ms. Chaitman has everything we
4 have and we've -- at the moment, that we know
5 of.  So we don't have any other documentation
6 that we know of that would allow us to do
7 this.
8    And the DTC records specifically --
9 they don't track -- they show day-over-day
10 difference, like in volume.  So they'll show
11 that X amount of a certain type of stock
12 was -- existed and BLMIS held this day and
13 then the next day it changed by this amount.
14    It's not exact -- the DTC records
15 don't break out the data into these easily
16 discernible buckets that Ms. Chaitman would
17 like it to.  And unfortunately we can't help
18 that.  So we can't do the impossible.
19    I don't know of any records that would
20 allow us to assign this volume data that
21 she's looking for by the proprietary trading
22 versus investment advisory business.  All I
23 can say is that we have the DTC data that
24 reflects trading done through BLMIS's only,
25 and they only have one, DTC terminal for the

Page 221

1 relevant period that we have.
2    And it's all been made available, and
3 she can do whatever investigation she wishes,
4 including, she can hire her own consultants
5 to analyze that, she can hire her own expert
6 to opine as to what that means.  We shouldn't
7 have to do that for her.
8    THE ARBITRATOR:  I gather this goes to
9 the notion that if two of the three
10 activities of BLMIS were legitimate, the
11 Ponzi scheme presumption should not apply.
12    MS. CHAITMAN:  In part.
13    THE ARBITRATOR:  Okay.
14    MS. CHAITMAN:  And, in part, that the
15 fraud did not start until 1992.  So, you
16 know, the DTC records, which unfortunately
17 only exist from 2002 on, are not relevant.
18 Once Mr. Madoff says the fraud started in
19 1992, I'm not going to argue that it started
20 later.  Right.  So I'm only focusing on the
21 period prior to 1992.
22    But, again, that's very significant
23 because a lot of my clients would be entitled
24 to dismissal of the complaint if the court
25 found that the fraud did not start until

Page 222

1    1992.
2         THE ARBITRATOR:  Is it correct,
3    Mr. Jacobs, that you don't have the records
4    for the period from 1980 to 1992, to your
5    knowledge, that --
6         MR. JACOBS:  It's the same records we
7    were discussing earlier in the day that we
8    will look for.  I will update you in a week's
9    time as to those efforts.  I don't know of
10   any that I confirm that exist beyond what is
11   in the data room currently.  And if we find
12   them, we will produce them.
13        THE ARBITRATOR:  But even if there are
14   records, it seems to me that this is really
15   an exercise -- I recognize that we're dealing
16   with far more limited resources, but one that
17   you, or an expert that you retain, would have
18   to engage in; that it's not appropriate to
19   have the trustee endeavor to do this,
20   assuming that he could, in terms of breaking
21   it down by business.
22        And I thought I heard Mr. Jacobs say
23   that they couldn't do it even if they had the
24   records.  So I'm going to deny that request.
25        17?  Is that --

Page 223

1         MS. CHAITMAN:  17 I think we covered
2    because that was the employees.
3         THE ARBITRATOR:  Right.  Well --
4         MS. CHAITMAN:  I've got the list that
5    specifies the area so --
6         THE ARBITRATOR:  What else?
7         MS. CHAITMAN:  -- I'm okay with that.
8         18.  And this is "For each security
9    listed on the defendants' account statements
10   for each year from 1982 on, set forth the
11   number of shares that BLMIS held."
12        And that again goes to the trading
13   records.  And just to be absolutely clear
14   about this, the evidence of the trading could
15   have existed in a number of different forms.
16   It could have been actual computer-generated
17   records where they kept track of the
18   securities.
19        And considering the volume that Madoff
20   was doing and the fact that it was
21   market-making, it wasn't done on an exchange.
22   So it was done privately, from firm to firm.
23   And there were internal records -- there
24   would be like a -- at the end of a day, there
25   would be a netting out sheet, which would

Page 224

1    have -- could go on for thousands of
2    transactions.  And then at the bottom, it
3    would say Madoff owes the clearinghouse
4    3 cents or the clearinghouse owes Madoff
5    3 cents.  So it could be that.
6         There are all different kinds of
7    records that would have reflected the
8    trading.  And I just want it to be clear that
9    I'm asking for that very broad scope, and
10   we're talking about the period prior to 1992.
11        MR. JACOBS:  Again, your Honor, the
12   issue is the same as the issue I had with
13   Request 16.  All of the documents that
14   evidence actual trading at BLMIS have been
15   made available to Ms. Chaitman, in addition
16   to the DTC records, as I mentioned.
17        We also subpoenaed the Chicago Board
18   of Options Exchange.  We also subpoenaed the
19   Chicago Mercantile Exchange.  We also scoured
20   all the books and records of the debtor to
21   see if there were any indicia of these
22   out-of-the-market or weekend or black pools
23   of liquidity -- trading that Mr. Madoff says
24   he was doing.  There's no evidence of that.
25   And what there is we've made available.

Page 225

1         So what Ms. Chaitman would like to do
2    is -- if I understand her theory correctly,
3    is she would like to now argue that the --
4    there were stocks traded through the
5    proprietary trading arm of BLMIS on behalf of
6    specific IA customers.
7         And I can tell you with all of the
8    documents that I currently know exist, which,
9    again, I reiterate she has, there is
10   absolutely no evidence that that ever
11   happened.
12        And, furthermore, even if I wanted
13   to --
14        THE ARBITRATOR:  But she also has an
15   interim step, which is, if IBM was shown on
16   Customer Jones' statement and --
17        MR. JACOBS:  Right.
18        THE ARBITRATOR:  -- and BLMIS was long
19   IBM on that same date --
20        MR. JACOBS:  Right.
21        THE ARBITRATOR:  Tell me that.
22        MR. JACOBS:  Right.  Well, it's my
23   understanding -- and, again, I don't want to
24   speak for our expert, but this is an issue
25   that, again, Mr. Dubinsky squarely addresses

Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 226

1  in his report.  It's not possible to match an
2  inventory with a customer statement and say
3  there's a match.
4       Because in, I believe, every instance
5  that Mr. Dubinsky -- wherever he attempted to
6  do that, where he tried, he failed.  The
7  records simply don't match.  Because the
8  customer statements were generated -- BLMIS
9  had a shadow DTC terminal that wasn't
10 connected to DTC, where we have offered
11 proofs that they actually faked templates of
12 what that trading activity would look like.
13      They populated it after the fact.
14 They put that into their computer system and
15 used that information to spit out the
16 customer statements that reflects that
17 purported, but fraudulent, trading activity.
18      And Mr. Dubinsky does painstaking
19 analysis.  Again, he's much smarter than me,
20 so I'm not going to be able to articulate all
21 the ways in which he does it, but he attempts
22 to reconcile those customer statements with
23 the DTC materials that we know do reflect
24 actual trading that occurred, and he can't.
25      And the grand finality of his

Page 227

1  conclusion is that there's no evidence of any
2  instance where BLMIS was actually trading on
3  behalf of a specific IA customer.
4       So, again, to answer that question, I
5  would refer -- I would answer with
6  Mr. Dubinsky's report and rely on that for
7  the information contained therein.
8       THE ARBITRATOR:  Well, and it's
9  further complicated potentially by CUSIP
10 numbers.
11      I'm going to deny Request 18 for the
12 same reasons as Request 16.
13      Are we done with that motion?  Is
14 there a cross-motion on that?
15      MR. JACOBS:  The cross-motion was for
16 a protective order that we would like entered
17 in any case where there's universal
18 applicability to these requests.  And I think
19 that since your Honor considered these
20 requests holistically across all types of
21 cases, that an order entering that protective
22 order across all of Ms. Chaitman's cases
23 would be appropriate.
24      Because we didn't look at this through
25 the lens of specifically the Wilenitz

Page 228

1  defendants.  We looked at it as if -- from
2  the perspective of a defendant that hadn't
3  conceded things on behalf of the account or
4  any of those other issues.
5       So I think that in any instance where
6  you have denied the discovery, your Honor, a
7  protective order is appropriate across all of
8  Ms. Chaitman's cases so we don't have to
9  relitigate all of this again.
10      THE ARBITRATOR:  Well, I think what I
11 will instead do is have the general principle
12 I outlined earlier, which is that it should
13 apply to all cases that are the same, but it
14 may be that -- without sitting and going
15 through all 92 cases, it would be hard to say
16 it applies to all of these requests and
17 interrogatories as to all of her cases.  So
18 I'm not going to do that.  It will be more of
19 an --
20      MR. HUNT:  Aspirational.
21      THE ARBITRATOR:  That was the word I
22 was trying to find.
23      -- aspirational statement than a
24 ruling.
25      MR. JACOBS:  Okay.  Fair enough.

Page 229

1  Thank you.
2       (Recess from the record.)
3       MS. CHAITMAN:  Are we done except for
4  depositions?
5       MR. HUNT:  I think so.
6       MS. CHAITMAN:  Okay.  So, Judge, if I
7  can just explain about the depositions.  The
8  trustee has noticed depositions in all of the
9  cases.  And in most of them, I haven't sought
10 a protective order.  In these I have, and I'd
11 like to go through them and explain why.
12      THE ARBITRATOR:  Sure.
13      MS. CHAITMAN:  Some of them you may --
14 Edyne Gordon, if I can take her, is the widow
15 of the account holder.  She had nothing to do
16 with the account.  She knew nothing about it.
17 She lives in New Mexico.  She produced
18 whatever documents she had.
19      And with some of my elderly clients, I
20 feel very protective of them.  Because
21 they've never been involved in litigation.
22 It causes them unbelievable anxiety.  And I
23 just worry about them physically.  And that's
24 the category of people we're talking about.
25      And if there were a compelling factual

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 60 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

59 (Pages 230 to 233)

Page 230

1   issue, I would feel differently about it, but
2   the records are what they are.  You've
3   immersed yourself enough in the case that you
4   see what the issues are.  And there's no
5   issue here of intent or -- I mean, there's
6   nothing really that these people can add.
7   That's why I moved for a protective order in
8   these cases.  I can go through them --
9       THE ARBITRATOR:  Well --
10      MS. CHAITMAN:  -- individually.  His
11  wife, she's had a stroke, she's in her 80s,
12  she talks in a very broken way.
13      THE ARBITRATOR:  I've read the papers.
14  Customarily if people were deposed, since
15  they're defendants, not plaintiffs, they
16  typically would be deposed where they live,
17  although that might be inconvenient for you.
18      But it struck me that some of these,
19  there probably would be very few questions to
20  ask.  Palmer, who's the son, doesn't admit
21  the accuracy of Exhibit B, but also
22  apparently has no firsthand knowledge.  I'm
23  not gainsaying that there may be issues he
24  could be asked about if only to preclude him
25  from showing up at trial and saying, suddenly

Page 231

1   I've remembered something.  But maybe with
2   one or two exceptions, if that, these stuck
3   me as depositions that would be
4   extraordinarily short.
5       MR. HUNT:  Our experience has been
6   depositions that we've taken of
7   Ms. Chaitman's clients -- that they've been
8   efficient.  We've gone to where they live.
9   We've allowed her to appear remotely via
10  video link to try to make it more efficient
11  for them.  So, yes, I think you're right.
12      MS. CHAITMAN:  But, you know, the bulk
13  of the depositions -- they follow a certain
14  format.  And I'm not being critical, but the
15  bulk of the time is, do you recognize this
16  check, you know, look at the back of the
17  check, do you recognize the signature.
18  Because they're proving the deposits and
19  withdrawals.
20      If they give me that package, I can
21  sit down with these people and I can review
22  it.  In most instances, we haven't disputed
23  Exhibit B with these clients.  So we can
24  avoid that.  And it's just the trauma to the
25  clients that I'm trying to avoid.

Page 232

1       And if there's a way to do it through
2   written questions or just giving me the
3   documents and I'll get back to them, that
4   would just be so much better than subjecting
5   these people to the trauma of this.
6       THE ARBITRATOR:  Well, I agree with
7   the trustee that you haven't made the
8   hardship showing in the formal way that --
9   when I was on the bench, I would require it.
10  Mainly a doctor's note saying they're at
11  death's door or non compos mentis.
12      But it does strike me that this is an
13  area where something should be worked out
14  just because there's probably not much there
15  or there for the trustee, although it may
16  vary from defendant to defendant.
17      Gordon and Harwood I guess have no
18  personal knowledge of what went on.
19      MS. CHAITMAN:  Palmer, DiGiulian,
20  Gordon, Harwood and Pearlman.  Because they
21  were not involved in the accounts.  I mean,
22  in Pearlman what happened was there were
23  three siblings.  And together they've agreed
24  to Exhibit B.  It's just that they didn't all
25  have control in the same period.

Page 233

1       MR. HUNT:  Harwood was directly
2   involved.
3       THE ARBITRATOR:  I'm sorry?
4       MR. HUNT:  Harwood was directly
5   involved, for example.
6       THE ARBITRATOR:  Did you give a copy
7   of this to Ms. Chaitman?
8       MR. HUNT:  These are documents that
9   have already been produced to her.
10      THE ARBITRATOR:  I assumed that.
11      MS. CHAITMAN:  You will -- if you
12  depose her, you'll find out that this was
13  typed up by her husband's secretary, and he
14  brought it home and she signed it, if she
15  signed it or if they signed it for her.  She
16  does not have personal knowledge about the
17  account.
18      THE ARBITRATOR:  But --
19      MS. CHAITMAN:  We don't dispute these.
20      MR. HUNT:  That's what we'll find out
21  in the deposition; right?
22      MS. CHAITMAN:  Yes, but we don't
23  dispute the deposits --
24      THE ARBITRATOR:  Is this something
25  that can be done through a deposition on

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 61 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

60 (Pages 234 to 237)

## Page 234

written questions or a set of interrogatories without prejudice to your right to depose the individual if --

MR. HUNT: No, because we've worked for years with Ms. Chaitman on stipulations, on requests for admissions and have repeatedly been stonewalled. And we found that taking depositions of these people is the most efficient way to get the information we need.

THE ARBITRATOR: Is there any of these depositions -- assuming that the people are compos mentis and not really slow in their functions, is there any of these depositions that would take more than two hours?

MR. HUNT: Depends on their answers, of course. I know that the last deposition that Marie took took longer because Ms. Chaitman appeared remotely. And so every time we introduced a document, we had to identify it to her and read out the Bates number. And so that took longer. But none of these depositions have been full seven-hour depositions.

THE ARBITRATOR: Is there any -- any

## Page 235

reason why you can't give her the exhibits in advance?

MR. HUNT: We've done that too.

MS. CHAITMAN: No, you haven't, actually. And the thing is, if you'd give me the exhibits in advance on the deposits and withdrawals, that takes the bulk of the time and we could at least save these people that time.

THE ARBITRATOR: Well, I gather you have it -- not with exhibit numbers, but you have it.

MR. HUNT: We produced -- the last time we did this where she appeared remotely, we sent her copies of everything we were going to use in the deposition.

THE ARBITRATOR: With exhibit numbers?

MS. CHAITMAN: Dean, it's not correct.

THE ARBITRATOR: Let's not go back to whether it's correct or not. On a going-forward basis --

MR. HUNT: We'd be happy -- in the deposition I took last week, we provided a binder with everything numbered with exhibit numbers ahead of time. Sure.

## Page 236

THE ARBITRATOR: That should help, A, truncate the mechanics of it. Also give you an opportunity to prep your witnesses.

MR. HUNT: The one thing I will say is we will go to where they are and we'll accommodate them in any way we can to make it as --

THE ARBITRATOR: Where have you typically done these? In people's houses or nearby law offices --

MR. HUNT: No, we've done it in nearby law offices. One guy we did at his house; another we did at a hotel room.

MS. CARLISLE: I did an accountant at his house, but that -- he was an accountant, not a defendant. I've had them in hotel rooms. There was like a local -- I discovered like a court reporting service had a suite similar to these where there were different conference rooms. We did one there.

Have we done more than one?

MR. HUNT: I guess this is where they picked, I guess --

MS. CARLISLE: We did do one in

## Page 237

Mr. Cohen's office for Placon II. I'm certainly willing to do it in somebody's home if that's been offered, but to date we've only done the one accountant in his residence, I think. And then one in our offices in New York. And we have one this Friday in our offices in Houston for a gentleman who lives in a separate --

THE ARBITRATOR: Who's one of Ms. Chaitman's clients?

MS. CARLISLE: Yes.

MR. HUNT: Yes.

THE ARBITRATOR: We've had the discussion today about Exhibit B. For example, as I read Palmer, it's -- well, no, Palmer is a bad example. Palmer does not admit the accuracy of Exhibit B.

MS. CHAITMAN: Right.

THE ARBITRATOR: But DiGiulian, as we discussed this morning --

MS. CHAITMAN: And Dusek.

THE ARBITRATOR: -- does.

MS. CHAITMAN: And Dusek does and Pearlman does.

THE ARBITRATOR: Right. And there

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 62 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

61 (Pages 238 to 241)

Page 238

1    were lots of affirmative defenses, but some
2    of those will fall by the wayside by virtue
3    of the stipulation now.
4        MS. CHAITMAN:  Right.  And Gordon
5    concedes Exhibit B.
6        THE ARBITRATOR:  So hopefully it will
7    go more smoothly.  So one thing I will direct
8    is that the exhibit binders be produced with
9    exhibit numbers, or letters, at least three
10   days before the deposition -- three business
11   days before the deposition.
12       MR. HUNT:  That's fine.
13       MS. CARLISLE:  With respect to this
14   Friday's deposition --
15       THE ARBITRATOR:  Absolutely.
16       MS. CARLISLE:  -- with all due
17   respect.  I don't know if I can do that.
18       THE ARBITRATOR:  Of course.
19       Is that one of these?
20       MS. CARLISLE:  No, sir, it is not,
21   but --
22       THE ARBITRATOR:  Okay.  And there will
23   be no questioning about issues which have
24   been conceded, which is the Exhibit B
25   discussion and the affirmative defenses.

Page 239

1        MS. CHAITMAN:  So then --
2        MR. HUNT:  None of these have been
3    conceded in that way except DiGiulian at this
4    point.
5        MS. CHAITMAN:  No, they all have --
6    look, if you just -- I mean, Gordon conceded
7    Exhibit B.  Harwood conceded Exhibit B.
8        THE ARBITRATOR:  Well --
9        MS. CHAITMAN:  Dusek conceded
10   Exhibit B.  So then there shouldn't be any
11   questioning.
12       THE ARBITRATOR:  Dusek is -- I took
13   random notes, but Dusek -- my note to myself
14   was "truly unqualified, but lots of
15   affirmative defenses."  So he didn't have the
16   waffle language on Exhibit B.  And some of
17   those affirmative defenses I presume, by
18   virtue of the discussion we had today, will
19   go by the boards.
20       When are these folks currently
21   scheduled for?
22       MR. HUNT:  They are not scheduled.
23   The date has passed.
24       MS. CHAITMAN:  They're not scheduled.
25       THE ARBITRATOR:  So why don't you work

Page 240

1    out amongst yourselves the extent to which
2    Ms. Chaitman can stipulate, as we indicated
3    today, with respect to these defendants and
4    dropping affirmative defenses.  Then see
5    whether there are other issues as to which
6    you need to depose the individual.
7        Harwood is one of the ones --
8        MS. CHAITMAN:  Harwood is in her 80s
9    and she's conceded Exhibit B.
10       THE ARBITRATOR:  So if the purpose is
11   to -- or a principal purpose is to establish
12   all of this, it seems to me it becomes
13   irrelevant if there's that stipulation.
14       MR. HUNT:  If Ms. Chaitman is willing
15   to enter into the exact same stipulation with
16   respect to everything in Exhibit B for every
17   one of her clients, I agree.  They haven't
18   done that.  They still have all --
19       THE ARBITRATOR:  She needs to review
20   one by one.
21       MS. CHAITMAN:  I can't concede all of
22   my affirmative defenses.  I've conceded the
23   accuracy of Exhibit B with respect to these
24   clients.
25       THE ARBITRATOR:  And that certain

Page 241

1    affirmative defenses, therefore, are --
2        MS. CHAITMAN:  Which go to this issue.
3        THE ARBITRATOR:  Right.
4        So then you have to make a
5    determination on the trustee's side whether,
6    as to remaining affirmative defenses or any
7    other issue, there's a reason to depose the
8    person.
9        MR. HUNT:  So just to be clear then,
10   defendants are entering into the stipulation
11   that everything in Columns 1 through 5 of
12   Exhibit B is accurate for Pearlman, Harwood,
13   Gordon, Palmer and Dusek?  They will never
14   contest anything with respect to a transfer
15   in this case.
16       THE ARBITRATOR:  Well --
17       MS. CHAITMAN:  I did -- I don't -- I
18   don't know what you mean by "never contest"
19   something with respect to a transfer.  I'd
20   have to look at the language.  I'm not going
21   to concede anything more than of the accuracy
22   of Exhibit B.  And that's the issue.  I've
23   agreed to waive affirmative defenses that go
24   to the accuracy of Exhibit B.
25       THE ARBITRATOR:  Such as Affirmative

Page 242

1  Defense 20.
2      Well, why don't I say that within one
3  week, you indicate to counsel, with a copy to
4  me, which of these defendants you're willing
5  to make -- enter into that stipulation and
6  make those concessions regarding the
7  affirmative defenses.
8      MS. CHAITMAN: Okay.
9      THE ARBITRATOR: And then you can try
10 to work out the extent to which you wish to
11 depose the others. We can have a phone
12 conference call, if need be --
13     MR. HUNT: Okay.
14     THE ARBITRATOR: -- and work it out.
15     MR. HUNT: Can she also provide us,
16 within that one week, dates for the
17 depositions if we need them?
18     THE ARBITRATOR: Well, logically it
19 seems to me first you ought to find out
20 whether you need the depositions. There's no
21 point in her getting dates if there's not
22 going to be a deposition.
23     MR. HUNT: I'd just like to get some
24 provisional dates because we have got a lot
25 of moving parts with all these cases to try

Page 243

1  to fit it in. So if you can provide us dates
2  within a week, I'd like to get it --
3      MS. CHAITMAN: The problem is that I'm
4  booked virtually solid with deposition dates
5  in January and through the first half of
6  February. So if you want me to block out
7  dates for witnesses that we may not depose,
8  it's going to make me unavailable for
9  witnesses that we are producing. So I
10 don't --
11     MR. HUNT: I'm not asking you to
12 provide dates for depositions that have
13 already been scheduled. I'm asking for
14 dates --
15     THE ARBITRATOR: She's saying because
16 of those depositions, the dates you get might
17 be in March --
18     MS. CHAITMAN: Yes.
19     THE ARBITRATOR: -- for example.
20     MS. CHAITMAN: That's --
21     MR. HUNT: That's why -- so if I wait,
22 then it's going to be April. So that's --
23     MS. CHAITMAN: I know, but you're only
24 competing with your own firm. It's not --
25     MR. HUNT: If you can give us dates --

Page 244

1      MS. CHAITMAN: You're talking about 92
2  days of deposition.
3      THE ARBITRATOR: You're going to
4  respond within one week. Why don't we, while
5  we're here today, set up a phone conference
6  and then we can discuss this.
7      MR. HUNT: She's going to respond by
8  the 20th; is that right?
9      THE ARBITRATOR: Right.
10     I can do the 21st or the 22nd. That's
11 Thursday and Friday.
12     MS. CHAITMAN: The 22nd would be good
13 for me.
14     MR. HUNT: 22nd is a Thursday. Could
15 we do like a 3 o'clock call?
16     THE ARBITRATOR: (Nods head in the
17 affirmative.)
18     MR. HUNT: That will give us a day to
19 look at what was sent before we have to talk.
20     THE ARBITRATOR: So it's Thursday, the
21 22nd, at 3 p.m.?
22     MR. HUNT: Yes, sir.
23     THE ARBITRATOR: Works for me.
24     MS. CHAITMAN: That's fine. Thank you
25 very much.

Page 245

1      THE ARBITRATOR: Sure. Bear with me
2  one second. I saw that there was an order, I
3  don't know whether it's one of your cases, in
4  Greif, Greif.
5      MR. JACOBS: Greif.
6      THE ARBITRATOR: Is that --
7      MR. JACOBS: An order from --
8      THE ARBITRATOR: Yes, there was one
9  where you sent it and said, I sent it
10 prematurely, the order hadn't been entered --
11     MR. HUNT: Oh, yeah, yeah. The order
12 has been entered now.
13     THE ARBITRATOR: -- and now --
14     MR. HUNT: Yes.
15     THE ARBITRATOR: But I have no
16 paperwork, so I have no idea what that's
17 about.
18     MR. HUNT: Okay. Yeah, we need to get
19 that to you.
20     THE ARBITRATOR: Okay.
21     MR. HUNT: We're off the record now.
22     THE ARBITRATOR: Yes.
23     (The time is 4:50 p.m. The
24 hearing concluded.)
25

Page 246

1        C E R T I F I C A T E
2
3    STATE OF NEW YORK    )
4                        ) ss:
5    COUNTY OF WESTCHESTER )
6
7        I, Eileen Mulvenna, CSR/RMR/CRR and a
8    notary public within and for the State of New York,
9    do hereby certify:
10       That I reported the proceedings in the
11   within-entitled matter, and that the within
12   transcript is a true record of such proceedings.
13       I further certify that I am not related by
14   blood or marriage to any of the parties in this
15   matter and that I am in no way interested in the
16   outcome of the matter.
17       IN WITNESS WHEREOF, I have hereunto set my
18   hand this 15th day of December, 2016.
19
20       ----------------------------
         Eileen Mulvenna, CSR/RMR/CRR
21
22
23
24
25

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 65 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 247

| A |
|---|

**a.m**
5:21
**abandon**
23:12
**ability**
25:18 138:6 148:1
212:2
**able**
35:19 48:2 129:24
139:5 151:3 163:8
167:15 209:20,22
212:10 216:5 226:20
**above-titled**
5:18
**absent**
118:20
**absolute**
137:13
**absolutely**
14:11 79:24 83:2
140:12 146:5 161:13
166:15,21,22 203:1
205:15 209:12 216:23
223:13 225:10 238:15
**abstract**
69:6 78:13
**acceptable**
78:16
**access**
132:24 212:9
**accessible**
142:25 145:14 152:13
**accommodate**
43:22 236:6
**accompanied**
107:14
**accomplished**
58:24
**account**
11:9 16:6,6,10 20:22
21:4,6,8,11,16 22:5
22:10,12 35:25 36:1
37:10 45:16 48:19,20
49:12,18,23 50:21
60:9,13 63:25 65:3,7

65:20,20,25,25 66:6,7
66:11,14 67:19,19,22
67:23 70:14,16 71:5
72:1 76:7,8 81:12
85:23 96:24 102:8
112:22 114:15 115:3
116:23 117:7 121:17
133:16 140:1,2
168:19 170:18 171:2
179:4,12 183:24
184:13,24 191:9
194:11,14,15 195:17
195:21 196:5,12
223:9 228:3 229:15
229:16 233:17
**accountant**
100:19 107:12 111:5
175:16 236:14,15
237:4
**accountant's**
100:4,7 108:22 109:20
**accountants**
103:15 116:1
**accountants'**
103:2
**accounting**
68:7 179:20 182:2
183:19
**accounts**
16:18 18:7 21:3 60:25
61:5 66:19 67:18,25
68:5,5 69:2 120:20
159:8 168:4,21
173:15 180:16 182:10
183:17 185:5 194:19
195:22,24,24,25
196:8 197:14 205:25
206:6 232:21
**accuracy**
30:6 51:11 52:1 54:11
55:9 62:17 63:14
75:23 114:9 123:20
175:3 178:25 187:9
230:21 237:17 240:23
241:21,24
**accurate**

20:17 27:14 31:5 51:13
51:20,21 52:2 121:13
151:15 173:24 175:8
175:11,21 185:24
241:12
**accurately**
53:11,12 61:16 63:24
172:23
**accused**
46:19
**achieve**
140:20
**acknowledge**
83:3 112:25
**acronym**
16:15
**Act**
132:20
**action**
5:18 8:24,24 173:7
190:10
**actions**
7:22 56:4 140:19
165:20 168:15 190:8
215:12 217:24
**active**
146:14 154:18 197:3
**actively**
146:22 153:14
**activities**
207:19 221:10
**activity**
20:22 22:11,20 49:18
149:21,22 156:12
168:3 170:18,21
185:23,25 186:3
195:21 196:4 226:12
226:17
**actual**
11:19 17:18 28:15 41:5
132:6 149:20,22
158:18,24 207:19
223:16 224:14 226:24
**add**
86:11 99:19 109:9,15
131:25 187:22 217:1

230:6
**adding**
161:5
**addition**
25:17 109:10 111:8
146:1 151:24 224:15
**additional**
10:2 43:23 49:5 110:20
112:9 145:24 146:18
153:11 155:14 199:21
208:20 210:21
**address**
43:10 130:5 194:7
217:18
**addressed**
190:1 194:23 215:14
**addresses**
33:25 45:19,22 225:25
**adequately**
78:25 117:23
**adhere**
39:24
**adjudged**
173:11
**adjusted**
163:12 164:12
**adjustments**
74:2,25
**admissibility**
62:8,10 182:16 185:17
**admissible**
31:6 63:2 74:9
**admission**
50:17 61:11 74:17 75:8
**admissions**
234:6
**admit**
170:6 230:20 237:17
**admitted**
63:1 74:6 170:14
**Adv**
1:11 2:3,10,18 3:3,10
3:17 4:4,17 5:3,4,4,8
5:12,13,13,14,15,15
**advance**
23:4 203:23 219:9

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 66 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 248

235:2,6
**adversary**
5:2,8,11 7:7 10:5 11:10
13:7,8,15 23:25
155:10 158:11 168:14
192:16 194:10 195:5
196:17,21,25 212:18
212:22
**advisory**
17:6,15 28:4,7 148:23
158:20,25 159:7
201:25 211:5 218:22
220:22
**affect**
192:4
**affidavit**
100:4,7 103:24 104:12
106:2
**affidavits**
103:21
**affirmative**
30:21 48:25 50:14 51:6
57:4,6,24 58:23 59:20
62:23 72:25 73:7,15
73:21 74:13 75:11
76:3,11 77:2,13 78:5
78:8 83:13,13,16
84:10,12 85:4 87:2,5
88:7,15,24,25 89:18
91:13,20,21,22 95:10
97:14 106:7,18
107:13 108:23 120:4
120:6,10 132:21
138:1 176:16 238:1
238:25 239:15,17
240:4,22 241:1,6,23
241:25 242:7 244:17
**affirmatively**
106:12 177:4 195:3,9
217:18
**afforded**
152:24
**afoul**
46:14
**age**
62:3

**aggregate**
199:11 200:15
**aggressively**
154:8
**ago**
138:11 197:5
**agree**
13:4 14:9,19 25:10
31:23 36:8 39:14
43:17,18 46:3 47:15
47:21 53:16 57:1 59:2
59:10 62:20 65:15
70:15 72:18 75:5
76:24 77:11 78:22
82:2 83:2 85:6 86:18
86:20,21 91:2 104:16
108:12 109:8 137:17
143:12 169:3,5
174:12 189:21 193:3
201:15 232:6 240:17
**agreed**
89:11 96:8 111:1 114:7
114:9 126:5 185:14
232:23 241:23
**agreeing**
51:12 52:23,24 53:3,5
53:9,10,14,15,22
54:14,14 166:16
**agreement**
36:19 37:13,16,17
38:16 44:8 59:6 60:16
80:16
**agreements**
36:16,21,23 37:22
80:15,17 81:11
**ahead**
26:20 49:8,25 72:8
87:7 204:25 235:25
**air**
152:21
**alive**
61:6 70:17
**allegation**
145:16
**allege**
86:4

**Allen**
2:14
**allocution**
17:25
**allow**
35:12 200:11,14,17
220:6,20
**allowed**
53:17 106:24 107:2
108:14 111:24 145:21
153:22 201:11 231:9
**allowing**
82:23 145:20
**alluded**
219:2
**alter**
32:10 39:13
**alternative**
55:1
**amenable**
129:12 141:12
**amend**
113:3 177:12
**amended**
58:25
**amendments**
80:17
**amount**
21:5,15 31:3 103:15
134:13 179:12 220:11
220:13
**amounts**
46:7
**analogy**
98:20,25 99:4
**analysis**
10:12 14:3 22:10,19
105:17 162:13 184:24
194:24 203:10 207:11
207:25 208:11,14
209:8 215:5,22
226:19
**analyze**
221:5
**and-**
5:6,9 6:13

**and/or**
74:9
**animal**
47:19
**annotated**
156:22 165:10
**answer**
40:8,10,14 46:1 48:12
49:12 50:16 59:1 64:7
64:9 69:22 75:2 77:23
86:3 87:3 88:8 95:25
97:4,6 113:3,8 114:1
121:1,13 132:18
133:10 134:23 140:11
144:7,18 148:1,4
158:5 162:25 167:2
182:25 185:4 187:11
190:3,4 197:12,17
200:16 202:25 203:4
203:8 205:5 206:22
207:2 209:21,22,22
215:10,20 217:8
219:4 227:4,5
**answered**
7:23 78:25 117:23
175:13
**answering**
215:23
**answers**
26:19 31:4 41:5 45:1
51:2 70:18 121:14
234:16
**antecedent**
83:17
**anticipate**
195:6
**anticipating**
89:8
**anxiety**
229:22
**anybody**
156:17 213:12
**anymore**
201:7
**anytime**
50:16

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 67 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 249

**apart**
160:14
**apologize**
23:4 126:3
**apparently**
130:19 230:22
**appeal**
25:2 85:12 98:4,9,12
99:2
**appealed**
25:3
**appear**
38:4 50:11 182:14
217:13 231:9
**appearance**
27:5,9
**appeared**
206:3 234:19 235:14
**applicability**
13:15 14:20 25:13
227:18
**applicable**
7:8 13:19,23 85:11,15
86:14 91:5 96:23 97:2
117:11,20 121:15
193:4
**application**
14:1 82:1 127:7
**applications**
8:3
**applies**
33:24 91:22 95:10
99:23 123:12 127:25
160:9 228:16
**apply**
7:7 8:11 10:12 14:5,8
14:14 35:14 61:25
94:2,13,21 99:7
113:25 124:2 127:13
127:17 128:7 180:25
221:11 228:13
**appreciate**
60:25 151:2 164:20
**approach**
41:25
**appropriate**

14:19 113:6 136:23
188:3 207:25 208:9
208:12 210:25 213:25
219:15 222:18 227:23
228:7
**appropriately**
153:5 155:19 177:13
**approximately**
5:20
**April**
243:22
**arbitrage**
191:8
**arbitrator**
6:2 7:1,23 8:14 9:4
10:9,20 11:12 12:19
14:25 15:2,12,17 16:1
16:7,14,23 17:10,21
18:9,23 19:10,13 20:1
20:5,7,13 21:11 23:5
23:19 24:7,11,24 25:5
25:23 26:5,12 27:1,8
27:20 28:17 29:2,5,10
29:12,19 30:1,4,9,15
31:15,24 32:6,22
33:20 34:6,25 36:7
37:8,12,24 38:11,15
38:25 39:17,24 40:12
40:19 41:8 42:12,21
43:4,12 44:4,10,15,19
44:23 45:5,17 46:4
47:2,16,24 48:7,17,22
49:7 50:4,24 52:3,6
52:19,22 53:2,7,19,23
54:3,13,20 55:7,17,21
56:1,4,16,21 57:13,16
57:21 58:7,20 59:8,25
60:5 61:2,15 62:13
63:3,9,16 64:1,12
65:4,16,21 66:21,24
67:11,24 68:10,13,19
68:23 69:7 70:2,8,15
70:25 71:7,22 72:5,10
72:24 73:6,12,17 74:4
74:20 75:3,13 76:14
76:17,21 77:19 78:9

78:19,24 79:9,13,21
79:24 80:2,9,20,25
81:4,14,20 82:8,16,20
84:3 85:6,16 86:7,19
86:22,24 87:9,12,19
87:24 88:3,21 89:2,7
89:12 90:1,4,8,15
91:1,3,19 92:6,14,16
92:23 93:4,15,21
94:12 95:3,16 96:6,15
96:17 97:4,16 98:2,15
99:9,14,18,21 100:10
101:21 102:19,25
104:15 105:4,8 106:6
106:14,20 107:5,9,21
107:25 108:5,7,11
109:22 110:2,13,19
110:23 111:4,15
112:6,16,19 113:7,23
114:5,11,14,20,23
115:6,16,20 116:4,19
116:25 117:16,25
118:10,15,19 119:2,7
119:17,21,23 120:8
120:18 121:6,10,23
122:3,6,14,16 123:18
123:23 124:5,8,11,21
126:10,14,20 127:5
127:23 128:8 129:5
129:14,19 130:3,15
130:24 131:2,9,13,17
133:4,12,15,19 137:9
137:23 139:20 142:14
144:8,11 146:7,23,25
147:4,11,22 148:21
149:4,10 150:3,13
151:20,23 155:5,21
156:5,14 158:15
160:5,9,11,19,25
161:16 162:16 163:10
164:2,10,18 165:9,14
166:10,16 167:2,25
168:24 169:5,15,17
169:20 171:4,11,22
172:8,11 173:3
174:12,16 175:25

176:9,12 177:24
178:5 179:1,4,19
180:5,10,13,18,23
181:1,3,20 183:13
184:1,11,16 185:3,8
186:9,13,20 187:3
188:18,20 189:1,5,24
190:13 191:2 192:8
192:18 193:15 195:8
195:12 196:16,20,23
197:8 198:1,7 199:6
200:13 201:1,4,10,13
201:16,20 202:6,14
203:4,12,19 204:1,6,9
205:3,16,19 206:7,13
206:16,24 207:21
208:1,23 209:4,10,18
209:20,25 210:6
211:9,19,24 212:6,17
212:21 213:1,19
214:11,25 216:20
217:7,10 218:14,17
221:8,13 222:2,13
223:3,6 225:14,18,21
227:8 228:10,21
229:12 230:9,13
232:6 233:3,6,10,18
233:24 234:11,25
235:10,17,19 236:1,8
237:9,13,19,22,25
238:6,15,18,22 239:8
239:12,25 240:10,19
240:25 241:3,16,25
242:9,14,18 243:15
243:19 244:3,9,16,20
244:23 245:1,6,8,13
245:15,20,22
**area**
23:10 32:24 223:5
232:13
**areas**
8:19 24:16,20 78:11
95:17 143:7
**arguably**
158:2
**argue**

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 68 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 250

14:4 35:14 160:5
200:1 221:19 225:3
**arguing**
12:3 61:20
**argument**
12:1 14:14 15:8 75:16
98:24 104:6 106:16
107:1 116:14,24
127:19 136:24 137:10
137:24 141:6 142:16
200:7 206:4
**argument's**
34:7
**arguments**
15:7
**arm**
225:5
**army**
163:23
**arrange**
26:23
**arrangement**
201:6
**arriving**
210:17
**art**
117:21 190:18
**Artful**
99:22
**articles**
87:14
**articulable**
212:15
**articulate**
177:18 226:20
**articulated**
127:11 135:20 148:17
148:18 157:7
**articulation**
166:24 172:10
**aside**
34:12 97:5 162:22
**asked**
15:22 26:2 31:25 46:6
48:1 64:4 70:10 71:3
78:19 118:25 138:12

147:13 156:11 167:8
167:10 177:4 180:2
191:12 230:24
**asking**
27:24 32:13,14 42:22
65:18 66:3 79:5 83:11
86:5 98:19 117:17
131:11,20,21 171:7
171:25 174:1,2
181:18 191:22,24
194:6 199:5 201:6,22
204:15 206:7,9
207:23 209:1 210:8
210:10,11 215:18
219:7 224:9 243:11
243:13
**asks**
80:13 114:17 214:4
**aspects**
10:11 134:20
**aspirational**
228:20,23
**assert**
30:21 84:20 152:18
181:10 182:13
**asserted**
48:23 85:22 87:2 88:8
97:13 102:14 181:8
182:6 190:7
**asserts**
181:15
**assign**
220:20
**assigned**
125:22,25 126:2,7
**association**
87:15
**assume**
7:9 9:1 20:1 38:13
66:17,18 82:20,21
92:18 93:18 113:14
152:1 165:17,22
186:15 199:11 202:18
209:10 210:25 216:4
**assumed**
233:10

**assuming**
8:16 38:15 42:8,10
48:9 67:9,11 70:17
81:22 82:22 104:20
222:20 234:12
**assumption**
165:14
**attachments**
108:25
**attack**
199:24
**attempt**
219:19
**attempted**
102:6 127:3 145:11
226:5
**attempting**
149:11,13
**attempts**
226:21
**attention**
181:17,23 204:24,25
**attorney**
25:25 27:10,11,12
40:25 41:7 208:9
214:4
**attorneys**
6:9,20 174:4
**audits**
139:12
**August**
103:8 151:10
**authorized**
18:16 128:22
**available**
134:8,14,17 135:9
141:14,20 142:10,24
145:6 146:21 148:10
149:9 150:6 152:15
152:19 153:8 154:6
155:3,15 157:24
173:23 187:25 188:10
188:17 193:19 198:20
199:18 200:16 209:17
210:19 215:5,25
216:17 217:3,5

219:12 221:2 224:15
224:25
**Avenue**
5:19 6:3,20
**average**
138:18,19
**avert**
9:16 204:23
**avoid**
13:4 14:21 231:24,25
**avoidance**
215:12 217:24
**aware**
30:18 177:2 180:7
183:18 185:5,9,10
198:19

**B**

**B**
6:1 8:24,25 16:3 20:2,4
31:3,4 36:12 49:14
50:9 51:5,13,19,20
52:1,3 55:11 60:7,21
62:7,17 63:15,23 64:7
67:19,20 69:20 75:18
85:25 86:15 113:12
113:17 114:10 119:22
123:21 176:24 217:13
230:21 231:23 232:24
237:14,17 238:5,24
239:7,7,10,16 240:9
240:16,23 241:12,22
241:24
**back**
16:21 22:7,13 39:7
42:21 43:11 60:6,7
61:1 71:11,17,19
77:22 94:10 98:16
108:11 112:19 114:20
138:14 147:1,4
154:14 156:3,6 160:4
168:16 174:6 179:10
179:16 190:16 198:11
200:20 204:9 205:25
214:14 231:16 232:3
235:19

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 69 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 251

background
19:9 217:19
backing
14:6
backup
162:1
backward
62:14
bad
153:10 155:2 237:16
Baker
6:8,14 82:22 211:25
balance
21:6,16 162:10
bank
20:23 21:2 22:1,5,15
51:1,1 60:4 62:11
66:11 67:22,25 69:10
94:4 102:5 180:3
184:13 188:1,3
194:14 196:2 217:23
banked
72:13
bankruptcy
1:1 117:20 132:23
142:19 182:4,5
217:11
banks
29:14
Bar
65:12 71:24
barred
73:25 89:19 90:13
barring
61:11
base
201:23 202:2 205:10
218:25
based
38:14 43:8 61:22 71:11
74:10,11 77:5 79:20
88:20 92:2 95:23
103:24 120:14 122:25
123:6,10 124:1 184:8
184:9 200:18
bases

187:17 204:11 205:13
basic
33:15
basically
20:1 52:16 130:20
181:4 199:10
basis
36:13 38:5,20 39:6
85:21 116:17 118:14
121:19 148:18 160:2
165:21 170:23 177:18
184:19 200:10 210:21
214:12 215:18 235:21
Bates
46:1 234:21
beam
114:25
bear
30:22,22 245:1
bearing
171:6
beat
7:13
began
18:3,5 31:18
beginning
61:21 208:6 213:21
behalf
40:19,20 45:4 86:13
177:10 207:14 225:5
227:3 228:3
belief
118:14
believe
11:22 21:3 35:16 68:21
97:10 103:3 111:3,7
123:14 127:10 131:6
135:16 150:15 151:15
184:9,19 191:23
197:3 200:24 203:7
207:3 208:5,19
215:10 226:4
believes
118:8,13 119:8
belongs
168:17

belt
41:24
bench
232:9
beneficial
45:16
beneficiary
1:16 2:13
benefit
14:17 78:3 174:11
Benjamin
4:20 5:3 30:17 31:13
68:22 122:6,12
123:17,21
Benjamin's
133:15
BEREZIN
1:15
Bernard
1:3,7,10 2:2,8,16 3:2,8
3:16 4:2,3,16,17
18:16 153:18 175:6
176:24 196:10
Bernstein
8:22 10:25 12:9,24
13:13,17 14:16 18:4
25:3 26:15 32:2 35:3
44:5 55:1 61:10 75:16
75:25 85:10 97:7
98:18 99:12,25
106:16 126:6,25
127:1 142:17 155:12
168:13 169:7 174:24
185:14 192:11,20
194:2 199:22 200:6
200:19 215:7,15
217:14
Bernstein's
7:5 27:16 38:2,19
43:14 137:17 190:5
best
18:12 164:19 197:16
better
28:10 54:25 79:14
232:4
beyond

16:22 38:3 51:19
120:20 121:16 156:16
168:21 199:20 210:20
214:5 216:6,21
217:24 222:10
big
41:15 208:8
binary
144:17
binder
23:18 47:16 76:20
235:24
binders
238:8
binding
59:23
bit
31:14 79:23 87:22
black
224:22
blanket
75:10
Blecker
11:22
BLMIS
20:23 28:2,22 70:11
83:7 84:21 91:17
102:8 130:6 131:12
134:21 145:3 148:6
152:6 154:19 181:9
195:19 196:8 207:18
213:11 215:19 220:12
221:10 223:11 224:14
225:5,18 226:8 227:2
BLMIS's
21:2 28:9 140:10 196:5
220:24
block
243:6
blood
246:14
BMLIS
135:24
board
119:10 224:17
boards

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 70 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 252

239:19
**body**
132:22 197:23
**boilerplate**
31:20 49:20 74:21
**booked**
243:4
**books**
18:22 54:8 61:12
134:14 140:10 146:21
167:12 168:18,20
169:10 170:19 176:6
179:16 224:20
**bottom**
53:8 162:14 224:2
**box**
152:10 154:1
**Boyer**
2:20,23
**Brady**
172:23 173:4 206:8
**break**
79:19 80:5 122:10
220:15
**breaking**
222:20
**briefing**
215:14,15
**bring**
29:7 76:19 127:4
**bringing**
181:23
**brings**
181:17
**broad**
42:24 215:3 224:9
**broken**
218:21 230:12
**brought**
126:4 233:14
**Bruce**
2:22 202:20
**Bruno**
3:20 96:25 115:1
116:12,20 117:8
123:1,7

**Bs**
68:3 184:8
**buckets**
220:16
**building**
181:22
**bulk**
141:15 231:12,15
235:7
**bunch**
216:12
**burden**
30:22 157:10 176:17
183:5,8 202:21
215:11
**burdensome**
172:5 202:16
**burdensomeness**
108:16
**business**
28:4,8,10,12,14 42:8
45:22,23 61:13 62:4
140:5 148:23 170:5
172:19,19 174:22
207:12 218:22,23,24
220:22 222:21 238:10
**buy**
165:15

**C**

**C**
6:6 246:1,1
**cabinets**
95:18
**cabins**
173:8
**CAD**
16:15 195:13
**CADs**
207:5
**calculated**
51:7 57:8 120:3
**calculation**
12:7,16 21:7 52:14,16
53:4,15 67:20 69:25
**calculations**

18:6 59:16
**call**
7:4 10:7 27:16 175:3
192:25 217:22 242:12
244:15
**called**
145:7 219:15,22
**calling**
136:5,6
**calls**
137:12
**capacity**
2:12,21,22 4:7,8,9,10
4:11,12 39:16
**capital**
96:24 109:1 111:10
**caption**
1:23 129:17
**car**
85:25
**careful**
59:13
**carefully**
134:18 141:9
**CARLISLE**
6:12 90:9 103:3,10
124:17 125:10,14,24
126:11 236:14,25
237:11 238:13,16,20
**carried**
139:23
**carries**
177:15
**carry**
170:12
**cart**
15:13
**carve**
192:15
**carve-out**
196:17,18
**carved**
95:16 192:10 196:22
**case**
9:8,14,20 10:6,12,15
10:18 11:24 13:21

14:2 15:19 26:2 27:2
27:2 30:16,17,17 31:7
38:4,9,19 39:10,15,19
47:3,3 54:21 55:15,18
55:19 57:11,13 59:19
63:7,8 72:22 85:11,15
89:19 94:7,18,20 95:9
97:11 98:1,7,14,16,16
98:21 99:3,6,7,13,17
99:23 101:8,19 103:6
104:5 105:23 106:8
106:10,11,13,22
107:1,6 113:25 114:4
115:1 119:21,25
123:12,16,17 124:13
125:7 126:2 127:16
128:5 130:20 133:17
133:23,24 134:6,7,9
135:17 136:23,25
137:3 151:6 153:10
156:8 157:25 158:9
163:21 165:1 167:9
168:1,12,22 169:1,16
169:18,20 170:21,22
171:7,10 172:12,16
173:12,13,14,18,19
175:5 177:23 187:23
189:10,15,20,22
195:6 202:4,13,23
203:11,24 205:2
211:25 213:15 215:6
215:9,10 217:20
227:17 230:3 241:15
**case-specific**
20:10,11 23:15 127:20
**case-wide**
22:23 157:25 187:23
**cases**
7:14 8:6,12 9:7,21,25
10:17 11:8 13:18 14:8
14:10,21 15:5 16:4
19:17,21 23:8 25:12
25:14,17 30:14 32:4
35:5,10,14 41:12,14
42:25 53:17 59:25
60:16 62:2 63:14

67:14,17 68:11 73:8
89:14,16 91:6 94:9,15
94:16,21 99:13 100:3
101:10,23 103:4,6,11
103:12,22 104:11
106:21 114:9 124:16
125:20 126:4 127:11
127:17,22 128:24
137:4,6,8 158:10
170:16 177:2 178:7
189:8 198:11 205:17
213:5 217:23 227:21
227:22 228:8,13,15
228:17 229:9 230:8
242:25 245:3

**cash**
11:20 12:5 20:21 22:20
53:10,12 168:3
170:17,21 185:22
196:4

**cashed**
179:11,24 180:1 182:1
184:20

**catch-all**
94:24

**categories**
139:15 145:9

**category**
27:21 70:23 81:13
139:25 229:24

**caterer**
65:12

**causes**
229:22

**caveat**
49:15 79:16 90:9

**caveats**
91:4

**cents**
224:4,5

**certain**
8:9 11:3 43:22 46:19
59:12 62:18,21 63:5
95:17 127:22 148:1
151:14 154:12 187:8
196:11 199:4 220:11

231:13 240:25

**certainly**
24:2 86:9 94:20 135:25
156:16 158:4 160:23
173:21 205:6 208:7
216:24 237:2

**certainty**
22:17

**certifications**
42:1

**Certified**
5:21,23

**certify**
246:9,13

**Chaitman**
5:7,10 6:19,21 7:19,25
8:25 9:18 10:3,16
11:21 12:3,11,23 14:9
14:15 15:6,15,18 16:2
16:8,21 17:3,11,24
18:2,15 20:6,10 21:23
23:13 24:3,22,25 25:6
25:11 26:22 27:4
29:10,11,21 30:2 32:5
34:25 35:1 37:18
39:18 42:6 43:22,25
45:25 46:13 48:14,18
50:25 51:10 52:24
53:5,9,20 54:2,5,16
55:4,13,19,25 56:3,15
57:5,11,15,19 58:25
59:11 60:3,19,24 61:3
62:9,15 63:5,13 64:19
64:23 65:2,18,24
66:15,23 67:16,21
68:14,20 69:4 70:20
71:14 72:3,12 73:3,19
73:23 74:3,14 75:4,6
76:10,19,24 77:11,15
78:1,7 81:2,5 82:10
82:18 83:24 84:14,23
85:2,7,12 86:12,18,20
88:17 89:1,4,21 90:3
90:6,16,22 92:7,11,21
93:20 94:1 95:18 97:9
97:10,25 98:3,8 99:1

99:11,15,19,24
100:21 101:9,15
102:5,20,23 103:9
104:17 105:3 106:11
106:14 107:2,17,22
110:24,25 112:11
113:15 114:7,23
115:1,10 116:21
117:1,5,7 118:18,25
119:25 120:22,25
121:4,20,25 123:4,9
123:24 124:9,14,23
124:25 125:4,8,18
126:5,16,21 128:9,10
128:13,16,25 129:7
129:13,16,25 130:4
131:1,4,16 132:18
136:17 137:21,25
140:25 143:9 144:2
144:24 146:6,15,24
147:12,18 149:20
150:11,14 151:1,5
152:16 153:7,13
154:10,16 156:3,10
159:1 160:7,10,18
163:20 164:15,19,20
165:12 166:21 167:7
169:8,24 170:3,16
172:7 173:3 174:15
174:21 176:4 177:9
177:17 178:15,21
179:8,17,22 180:1
181:3,13,22 182:7
183:20 186:17 187:20
188:6,19,21 189:3,11
190:3,20 191:6
192:11 193:3,5,17,22
196:23 197:4,20
198:5,8 199:19 201:2
201:3,8,12,15,21
202:10,23 203:17
204:14 205:5,21
206:12,14,19 207:1
210:7,23 211:18,23
212:4,8 213:9,13
214:8,12 216:2,15,24

218:16,18 219:7,24
220:3,16 221:12,14
223:1,4,7 224:15
225:1 229:3,6,13
230:10 231:12 232:19
233:7,11,19,22 234:5
234:19 235:4,18
237:18,21,23 238:4
239:1,5,9,24 240:2,8
240:14,21 241:2,17
242:8 243:3,18,20,23
244:1,12,14

**Chaitman's**
9:7,24 17:19 28:6
32:25 33:7 58:16
127:2 142:16 147:6
155:25 158:10 161:15
176:21 177:2,25
197:9 205:12 213:5
213:23 227:22 228:8
231:7 237:10

**challenge**
12:7,18 21:21 56:24
86:10,14 110:7 111:3
161:24 177:19 185:17
219:9

**challenged**
116:6 194:3

**challenging**
12:16 21:13 153:14

**chambers**
27:17

**change**
100:1 129:2

**changed**
9:23 186:11 217:21
220:13

**changing**
88:18

**characterization**
17:20 209:9

**characterize**
187:4

**characterized**
168:13 194:21

**charade**

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 72 of 110
Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 254

189:23
**charged**
56:8 179:12
**charging**
57:8
**chase**
21:25 170:25
**check**
11:19 26:10 65:11 67:1
71:17 72:1 84:15
179:10,24 180:1
182:1 184:20 196:13
214:15 231:16,17
**checks**
12:5
**cherry-picking**
152:18
**Chicago**
224:17,19
**chief**
17:8
**Choir**
115:22
**choose**
19:16
**chose**
136:8 164:23
**chosen**
30:24
**Circuit**
198:12 200:18
**circumstance**
25:24 65:9 142:18
**circumstances**
13:20,24 14:10 67:5
69:19 127:13 213:25
**circumvent**
36:6
**civil**
140:18,23 173:6 206:8
**claim**
11:23 13:14 35:5,12
91:14 97:21 141:4
143:8 159:25 177:12
193:10 199:11 201:11
217:23

**claimants**
193:4
**claims**
11:6,23 13:6 16:12
32:2 69:10 73:24 76:5
98:22,24 99:1 133:24
134:6 135:16 158:3
160:1,1 168:23 171:6
176:18 182:18 185:1
190:7 193:9 196:19
197:22 198:15,16
200:2
**clarification**
109:9
**clarify**
111:7
**clarifying**
88:19
**classic**
137:12 142:22 212:6
**CLAUDIA**
4:8
**claw-back**
12:12,15 13:1 15:5
32:4 165:20 190:8,10
191:15 192:1,9 193:5
193:24 194:3,5
**clean**
111:4
**clear**
23:19 38:8 40:6 49:1
53:23 58:2 63:20
76:10 77:12 80:12
81:8,19 116:15 118:2
218:13 219:16 223:13
224:8 241:9
**clearinghouse**
224:3,4
**clearly**
31:7,21 70:19 90:10
146:19
**click**
199:17
**client**
8:8 16:12 32:25 176:4
**clients**

28:6 35:16 51:15 58:16
71:18 86:13 92:19,21
97:22 143:20 169:8
175:14 176:21 177:10
178:1 179:9 197:9
205:12 207:1 213:23
221:23 229:19 231:7
231:23,25 237:10
240:17,24
**clients'**
205:25 206:3
**close**
22:17
**closed**
103:12 104:4
**closing**
194:16
**club**
42:14 47:20
**Cohen's**
237:1
**coherent**
187:2
**colleague**
61:23
**colleagues**
166:5
**collectively**
215:4
**Collura**
10:9,22 18:25 19:4,19
20:7,14 22:9 23:6,14
183:23 187:6 191:13
213:7
**Collura's**
20:19 173:17
**Column**
52:25 53:7,11,13 65:8
**columns**
52:7,13,23 55:10 63:24
75:17 86:15 113:17
114:12 123:21 241:11
**combination**
184:12
**come**
30:3 43:11 54:10 61:13

72:22 143:7 161:3
213:4
**comes**
30:2,7 86:25 98:16
101:13 106:15 200:22
**comfortable**
49:3
**coming**
15:19 25:22 151:17
186:5 196:4 204:24
212:12
**commences**
143:14
**commencing**
5:20
**commercial**
98:21 198:25
**committed**
153:19
**committee**
199:1
**communications**
117:13 118:6 139:14
143:19
**company**
139:13 159:6
**compared**
22:15 169:3
**comparing**
21:7
**compel**
5:1,7 29:3 30:14
124:10 125:21,22
126:17,18 143:4
147:21
**compelled**
120:11 121:5 182:13
**compelling**
170:23 229:25
**compensation**
129:1
**competent**
49:17
**competing**
182:25 243:24
**compilation**

136:10
**compiled**
145:5
**complaint**
16:3 20:5 35:8 46:17
46:22 48:16 55:12
87:3 88:9 91:14 98:22
107:3 113:12 186:16
221:24
**complaints**
8:7 35:3 182:8 184:23
**complete**
21:1 23:14,20 41:15
**completely**
141:6 168:8 186:25
**completeness**
30:5 55:10 86:12,14
**complex**
135:7
**complexity**
203:1
**complicate**
68:6
**complicated**
15:20 31:12 54:19
128:19 227:9
**complicating**
56:5 156:7
**complied**
117:19
**component**
20:15
**compos**
232:11 234:13
**computer**
162:2 226:14
**computer-generated**
223:16
**concede**
51:11 62:17 176:2
240:21 241:21
**conceded**
54:11 63:14 167:18
168:3 170:17 228:3
238:24 239:3,6,7,9
240:9,22

**concedes**
106:14 238:5
**conceding**
51:19,21 78:2,3
**conceivable**
150:7 178:8
**conceivably**
45:25 75:19
**conceived**
141:19
**concept**
184:7
**conceptualize**
157:19
**conceptually**
105:10 169:10
**concern**
33:7 40:3 86:16 102:18
**concerned**
39:6 102:2 164:24
**concerning**
78:20 81:11 102:5
111:12
**concerns**
14:24 56:17 60:15
**concessions**
242:6
**concluded**
142:17 245:24
**concludes**
79:10
**conclusion**
153:15 187:18 207:13
208:17 215:19 227:1
**conclusions**
141:23 142:8 188:15
208:7 210:13,18
**conclusive**
218:8
**condensed**
208:7
**conduct**
170:24 213:14
**conducted**
28:15 207:11
**conducting**

161:12,13
**confer**
14:18
**conference**
7:4 236:20 242:12
244:5
**conferences**
55:2
**confession**
37:21
**confident**
17:21 99:15 161:20
**confidential**
102:16
**confidentiality**
101:22 102:14
**confirm**
111:21,25 123:19
160:20 222:10
**confirmation**
180:4
**conflated**
218:11
**confusing**
50:25
**confusion**
13:4 105:15
**Congressman**
199:3
**conjecture**
168:10 212:14
**connected**
226:10
**connection**
29:21 105:20 131:7,23
134:12 135:23 136:16
182:3,4 188:10,14
189:12 210:13
**consequences**
67:7
**consider**
149:9 155:13 177:12
**considerable**
172:4
**considerably**
213:24

**consideration**
155:4 157:16
**considered**
39:11 104:5 141:15
143:2 153:9 162:11
162:12 168:11 188:14
208:15,16 227:19
**considering**
157:20 223:19
**consistent**
18:21 127:10 209:13
**consistently**
136:21
**Consolidated**
1:5 4:2,15
**construct**
184:8
**constructed**
152:21 184:22
**construed**
109:19 111:2 210:10
218:2
**consult**
112:7
**consultants**
174:5 184:25 221:4
**consulted**
94:24
**contain**
141:9 194:17
**contained**
227:7
**contains**
141:14 161:21 165:7
**contemplate**
107:10
**contemplates**
10:25 75:23
**contend**
88:6 91:12,13 138:2
**contending**
61:22
**contends**
28:13
**content**
69:2

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 74 of 110
Trustees Motion to Compel Discovery                        Arbitration 12/13/2016

Page 256

contention
11:16 23:25 107:7
  139:7 182:6
contentions
13:1
contest
53:6 62:9 241:14,18
contested
29:25 64:2
contesting
51:25 62:7
context
19:9,20 145:18 146:15
  157:17 172:12 186:6
  186:22,24,25 189:9
contexts
128:7
CONTINUED
1:23
continues
76:21
continuing
147:23
continuous
155:23
contrary
211:22
control
232:25
controls
57:25
conversation
109:24 110:3
converse
206:15
conversely
104:22
convertible
148:24
conveyance
52:16
convince
75:14
cool
44:5
cooperated

154:23,23
copies
235:15
copy
17:25 19:15 44:17
  148:8 233:6 242:3
core
137:14 140:1 163:25
  195:17 202:12
correct
9:3 10:10 11:25 13:3
  16:19 22:3,4 38:12
  52:18,21 54:2,5 55:24
  66:4 73:18,22 76:15
  77:14 80:19 90:15
  93:19 122:18 123:22
  123:23 124:6 146:8
  148:25 149:16 153:2
  158:15 168:5 169:23
  176:14 181:18 183:6
  184:9 193:1,2 195:14
  204:18,19 205:18
  209:13 222:2 235:18
  235:20
correction
176:24
correctly
140:7 225:2
correctness
86:11
correspond
80:22 176:3
correspondence
194:17 196:9
cost
157:9
costs
162:9
counsel
8:25 139:19 211:12,13
  242:3
counsel's
192:15
count
179:23
counted

56:11 68:14,16
country
33:18,23
COUNTY
246:5
couple
7:2 197:5
course
9:19 30:23 32:17 71:6
  97:13 157:22 160:7
  234:17 238:18
court
1:1 17:12 18:15 25:4
  34:9,10 35:6 36:4
  41:3 46:15 106:12
  117:20 128:21 132:23
  141:16 177:14 182:19
  182:23 183:9 193:3
  198:3,13 221:24
  236:18
court's
204:25
courts
198:19
covered
223:1
Cravath
36:18
credit
21:4,14 74:1 77:9 97:8
  97:13,22 106:18
  107:13,19 153:17
  193:13
credited
56:8 76:8 153:21
creditor
132:22
criminal
17:9 172:12,15
criminally
175:9
critical
231:14
cross
45:20
cross-examination

110:8
cross-motion
5:7 227:14,15
cross-moving
127:14
crude
20:16
Crupi
26:1 94:17
CSR/RMR/CRR
5:21 246:7,20
curated
134:19 141:9
current
33:25 45:19,21,22 82:6
currently
23:8 27:24 85:14
  103:12 128:5 144:21
  146:1,13 153:10
  154:3 185:18 222:11
  225:8 239:20
CUSIP
227:9
custodian
116:23
custody
154:19
Customarily
230:14
customer
11:18,20,22 12:6 21:8
  21:15 22:11,16 130:7
  132:3 152:24 158:25
  159:7 171:2,8,17
  181:9,10 185:23
  188:8,23,24 190:15
  195:18,21 196:7
  200:2 202:5 207:15
  225:16 226:2,8,16,22
  227:3
customer's
188:7
customers
12:2 17:6 28:7 156:12
  158:20 159:14 168:21
  174:14,19,23 175:1

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 75 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 257

177:21 186:1 187:8
191:3 193:7 202:1
211:5 225:6
**customers'**
11:4 21:4 173:20
**cut**
67:1 142:14

**D**

**daily**
159:10
**data**
134:18 135:2,8,17
141:12,18 142:5,12
144:14,22,22 145:13
146:1,5,11 147:19
148:10 154:20,21
187:24 188:9,15
217:2 219:17,20,22
219:23 220:15,20,23
222:11
**database**
163:8
**date**
16:21 21:6 22:6 47:11
61:1 62:1 90:5 141:25
143:13 146:9 148:1
152:14 161:3,17
163:19 164:11,13
171:20 225:19 237:3
239:23
**dated**
151:9
**dates**
9:12 46:7 54:15 55:24
105:23 242:16,21,24
243:1,4,7,12,14,16,25
**dating**
138:14
**DAVID**
6:21
**day**
69:3 177:6,15 209:15
220:12,13 222:7
223:24 244:18 246:18
**day-over-day**

220:9
**days**
58:13 89:19 90:10,24
90:25 93:25 95:5 96:9
96:11 109:7 238:10
238:11 244:2
**dead**
17:10
**deadline**
163:11 203:24
**deal**
13:13 29:13 30:4 40:3
40:12 54:20 55:18
60:10 68:25 78:12,23
89:12 98:18 109:3
119:2 124:15 125:12
125:15 127:24 128:3
163:18 169:22 180:21
198:1 210:2
**dealing**
66:25 156:15 162:4
163:5,16 171:23
212:2 222:15
**deals**
72:12 92:3 100:10
169:9 205:19
**dealt**
80:25 155:21 156:17
156:18 180:15 192:21
**Dean**
6:11 66:2,4 235:18
**death's**
232:11
**debt**
83:17
**debtor**
1:5,8 132:22 170:20
224:20
**debtor's**
146:20
**debtors'**
18:22
**debts**
47:5
**deceased**
115:2

**December**
5:19 15:6 22:1 37:22
49:19 60:3 62:15
71:16 143:20,24
146:17,23 181:15
246:18
**decide**
177:14 216:9
**deciding**
95:8
**decision**
14:1 24:17 26:1 27:1,7
47:8 178:11 184:3
200:7
**decisions**
25:2
**declaration**
101:13
**declarations**
101:5,10 103:14
**declared**
26:16
**deem**
189:21
**deemed**
189:14,14
**deeper**
8:16,17
**defendant**
2:7,15,24 3:7,14,21
4:21 16:9 55:8 56:24
97:12,19 103:25
105:8,13,25 106:23
109:25 110:6 112:1
113:18 135:21 176:7
182:24 188:12 190:9
194:3 196:10 228:2
232:16,16 236:16
**defendant-specific**
10:3
**defendants**
1:20 4:14 6:20 10:14
11:7 12:12,15 13:1,8
25:18,20 30:21 31:1
33:1 38:17 41:6 56:7
57:9 63:10,21 69:13

69:15 77:9 83:14
84:20 91:17 92:4
123:3,20 126:21
128:14 134:15,15
135:14 136:14 137:5
152:20 168:2 173:14
190:8 191:16 192:9
193:6,24 195:6 196:6
199:25 214:13 217:21
228:1 230:15 240:3
241:10 242:4
**defendants'**
51:7 57:8 77:9 87:2
88:8 107:23 108:18
111:12 116:18 120:2
192:1 223:9
**defending**
7:21
**defense**
51:6 57:4,6,17 62:23
72:20 73:16,22 74:13
75:1,11 76:4,11 77:3
77:13 78:8 83:14,16
83:18 84:10,19 85:4,9
91:13,20,21 97:6,14
98:7,13 106:7,18
107:14 108:23 120:2
120:4,6,10 192:14
199:23 200:5 242:1
**defenses**
30:22 48:23,25 50:14
57:24 58:24 59:20
72:25 73:7 77:7 78:6
83:13,19 84:12 87:2,6
88:8,15,24,25 89:18
91:22 95:11 102:13
133:1 134:6 135:17
171:7 238:1,25
239:15,17 240:4,22
241:1,6,23 242:7
**defensible**
135:20
**defer**
208:19
**deferring**
49:4

08-01789-cgm  Doc 14947-1  Filed 01/25/17  Entered 01/25/17 09:57:29  Exhibit A
Pg 76 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 258

**deficient**
70:19
**definition**
33:20 85:8
**definitive**
40:14
**definitively**
153:13
**defraud**
217:16
**delivered**
94:6 199:3
**delve**
104:6
**demand**
88:18,22 124:15 130:2
 157:16
**demands**
125:19
**demonstrating**
149:21
**denials**
88:7,14
**denied**
11:23 193:9 228:6
**denies**
182:24
**deny**
30:24 143:5 214:6
 222:24 227:11
**denying**
81:24
**DePascali**
17:17
**depend**
148:2
**depending**
34:19,22 41:20,21 79:6
**depends**
7:17 179:19 234:16
**depose**
105:6,12 118:21,23
 120:16 233:12 234:2
 240:6 241:7 242:11
 243:7
**deposed**

150:9 213:5,6,7 230:14
 230:16
**deposit**
16:5 49:11 50:21 56:9
 64:5,6,10,15,16 69:24
 86:5 112:21,25
 113:19 114:15
**deposit's**
64:14
**deposited**
65:19,25 66:11,13,18
**deposition**
16:24 18:16 78:11
 136:1 145:21 146:16
 147:9,10 164:14
 212:22 213:11 233:21
 233:25 234:17 235:16
 235:23 238:10,11,14
 242:22 243:4 244:2
**deposition's**
147:7
**depositions**
5:11 136:2 210:16
 229:4,7,8 231:3,6,13
 234:8,12,14,23,24
 242:17,20 243:12,16
**Depository**
139:13
**deposits**
16:4 49:13 50:8,15
 51:4,12 52:11,25
 53:10,22 54:6 59:22
 62:6,21 64:12 68:4
 74:15 77:10,18 78:21
 83:25 84:5 85:22
 113:11 115:18 116:5
 169:11 177:7,22
 187:10 231:18 233:23
 235:6
**described**
42:23 58:11 81:17
**description**
164:22
**designation**
105:20
**desirable**

140:16
**desire**
108:18
**despite**
180:10
**detail**
97:1 119:12 207:9,18
**detailed**
24:17 208:18
**determination**
102:11 198:10 241:5
**determinations**
183:9,12 185:1
**determine**
134:3 162:19,23
 182:19 183:10
**determined**
163:14 214:13
**determining**
141:23 200:11
**devastated**
138:22,22
**DEXTER**
6:22 186:11
**dhunt@bakerlaw.com**
6:11
**DIANE**
2:20
**dictate**
127:20
**died**
17:11
**differ**
9:12
**difference**
84:3 220:10
**different**
7:15 9:11 13:24 24:20
 24:20 28:2,23 38:7
 47:19 68:1 78:9 84:11
 87:17,21 123:13
 124:3 129:21 131:10
 139:14 142:18 157:8
 168:25 177:3 186:10
 190:14 201:14 203:16
 207:17 223:15 224:6

 236:20
**differently**
171:12 230:1
**difficult**
62:19
**DiGiulian**
3:20 5:4,15 30:17
 68:22 96:16,19,25
 101:24 115:2 116:12
 116:16 117:8,14,14
 122:9,19 123:7 176:1
 176:4 178:24 232:19
 237:19 239:3
**diligently**
154:8
**DiPascali**
17:7 150:14 159:23
**DiPascali's**
150:18 202:8
**direct**
34:21 161:14 238:7
**directed**
93:23
**directive**
91:5
**directly**
26:17 76:12 96:4
 160:22 208:11 233:1
 233:4
**disagree**
25:9 100:18 116:4
 140:24 188:11
**disagreeing**
208:23
**disagreements**
118:6
**disagrees**
76:7 149:3
**disallowed**
160:1
**disallowing**
81:15
**discernible**
220:16
**discerning**
132:12

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 77 of 110
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

Page 259

disclose
35:21 158:14 167:11
   172:25 175:20 182:22
   182:23 203:23 209:2
   211:7,20
disclosed
109:18 141:13 148:5
   176:23 203:10 210:19
disclosing
35:17 211:15
disclosure
9:12 10:8 102:16
   105:23 108:19 136:15
   141:20 157:17 195:15
   204:21 210:21
disclosures
70:13 105:18 167:22
discoverable
132:16 133:23
discovered
236:18
discovery
5:1,7 8:9 9:16 10:19
   12:14 13:18 15:8
   19:12 30:24 31:8,10
   35:7,11 36:10,13 44:2
   44:3 46:16,21 48:15
   64:20 69:23 78:3,4,11
   78:17 94:25 95:15
   98:25 103:11 104:3
   104:10,14 105:10,11
   107:3 127:15 128:11
   130:2 134:1 135:7
   136:22 137:7 140:18
   141:2 146:16 147:17
   148:6 155:8 157:8
   163:6 173:6,9 177:3,5
   178:6,10,11,13 180:2
   180:19 189:11,16
   193:18,23 194:5,9,12
   195:2 196:14 197:10
   200:12 204:15 212:23
   212:24 213:3,4,18
   215:4 216:13 218:11
   228:6
discredit

110:7
discredited
160:1
discuss
15:10 127:25 244:6
discussed
93:15 185:13,22
   209:16 237:20
discussing
120:1 134:11 177:5
   222:7
discussion
8:22 25:19 28:22 30:10
   36:25 95:24 108:10
   112:18 126:15 133:21
   147:3 167:4 204:3
   237:14 238:25 239:18
discussions
103:24
dishonestly
165:22
disk
152:9 154:1
dismiss
98:23 200:8
dismissal
221:24
dismissed
32:2 39:19 85:10 98:24
dismissing
106:13
disparagingly
166:1
disprove
156:1 159:21
dispute
31:2 49:13 50:8,23
   51:4 52:11,12 55:9
   60:21 62:6 65:6,22
   113:10 125:24 147:20
   202:6 233:19,23
disputed
177:9 231:22
disputes
9:16 19:12 204:23
   218:12

disputing
48:19 50:10 54:4 65:22
   113:16
distinction
142:23
distributed
34:23
distribution
198:21,23
district
1:1 25:4 97:18 98:17
   98:23
dive
57:18
dividend
11:17
dividends
17:1 196:11
divorced
189:8
divorcing
186:25
doctor's
232:10
doctrine
132:9
document
8:2 39:3 79:18 80:4,13
   80:15 81:9 82:4,19
   83:4 84:14,19 88:18
   92:15 93:3,12 95:9
   100:11 117:18 118:11
   121:21 122:8,20
   123:14 124:15 125:18
   125:19 130:1 134:4
   134:25 151:9 214:10
   234:20
documentary
188:24 191:18,25
documentation
69:9 104:9 106:3
   187:23 215:24 219:12
   220:5
documents
32:18,24 33:3 37:2
   39:2,5 40:1,7,10

41:22 45:25 46:1
47:17 49:5 77:18
78:16 80:14 81:21,23
82:11,12,15,24,25
83:5,10,23 84:13 86:6
87:4,8 88:6,11,12,16
88:24 89:17,20,22,23
90:11,17,19 91:12
92:5,9,12,19 93:5,6,7
93:13,23 94:10,17,24
95:1,2,12 96:1,3,4,8
96:10 100:15 101:14
102:22,24 103:20
104:21,24 105:9
107:15 109:10,15
110:11,21 112:15
121:22 122:24 123:5
123:10 126:19 130:11
130:12 133:5 134:20
135:15 136:8 137:2
139:10,15,18 140:1
142:24 143:24 145:4
145:9 147:24 148:9
151:7,11,24 152:6,13
153:7 154:14 162:22
164:25 165:2 166:6
181:19 185:25 187:17
189:17 194:16 195:18
197:11 202:1,12
205:10,11 206:9,17
206:20,23 207:2,4
208:15 209:3,11
214:21 216:21 218:24
219:18 224:13 225:8
229:18 232:3 233:8
Dodger
99:22
doing
21:1 27:23 36:17 43:15
69:6 100:4 101:3,4
147:13 151:16 159:9
163:7 175:17 189:7
223:20 224:24
dollar
153:4 218:20
dollars

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 78 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 260

21:12 157:23
**DONALD**
4:20
**door**
39:7 149:25 195:16
232:11
**double**
56:11
**double-sided**
44:18
**dozens**
174:5
**drabs**
200:22
**drafted**
93:10 181:6
**drafting**
58:4
**driving**
66:3
**drop-dead**
90:5
**dropping**
240:4
**DTC**
144:23,25 145:3,7
146:3,10 154:10,18
155:21,24 160:14
219:3,22 220:8,14,23
220:25 221:16 224:16
226:9,10,23
**Dubinski's**
149:2
**Dubinsky**
8:23 9:15,22 19:4
203:5 204:17 205:8
205:12 207:8 210:14
211:16,19,21 213:6
214:6 215:2 216:3,4
216:21 217:8 225:25
226:5,18
**Dubinsky's**
28:21 202:20 215:22
216:10 227:6
**dubious**
197:16

**due**
204:22 238:16
**Dusek**
3:6 5:15 130:20 131:5
237:21,23 239:9,12
239:13 241:13
**duties**
132:1
**duty**
138:1,3

————————————
E
**E**
6:1,1,6,6 246:1,1
**e-data**
135:12 138:8,10,13,25
139:1,17,22,25 140:6
140:11,12 141:8
144:6 150:22 151:24
160:16 164:23,25
165:2 166:14 209:15
216:1
**e-discovery**
163:6
**e-mails**
144:9
**earlier**
56:25 59:16 68:4 81:17
100:15,17 127:11
145:15,25 147:23
149:23 153:15 161:22
177:6 209:14 216:25
218:5 222:7 228:12
**early**
9:15 17:13 18:13 21:21
21:21,22 22:6,14 60:6
60:8 150:18 154:2
202:24 205:1
**earned**
101:25
**easier**
55:13 124:14
**easily**
7:16 144:19 220:15
**easy**
28:1 188:4

**ECF**
18:25
**EDWARD**
6:16
**edward.jacobs@bak...**
6:17
**Edyne**
2:12 229:14
**effect**
18:21 39:12 81:14
100:19 173:4 206:8
206:22
**effectively**
57:2
**effectuated**
76:5
**efficient**
231:8,10 234:9
**effort**
92:18 140:19 149:7
157:20 160:22 161:10
162:19 163:13,20
180:11 204:22
**efforts**
135:5,14 222:9
**ego**
39:13
**egos**
32:10
**egregious**
104:1
**eight**
94:5
**eight-year**
174:6
**Eighth**
5:19 6:3
**Eileen**
5:21 246:7,20
**either**
9:7 14:13 36:10 58:11
68:16 70:13 75:1,21
84:11 93:10 106:11
139:24 161:4 174:17
177:12 203:15
**elderly**

229:19
**Electronic**
134:18
**element**
158:3 215:9
**elements**
81:25
**eliminated**
80:6
**eliminates**
56:17 65:13
**emotionally**
138:22
**employee**
130:3,6,12 133:13
134:5 135:1 136:9
211:13
**employees**
114:19 131:12,22
133:7 135:24 210:11
212:11 213:11 214:2
223:2
**encountered**
158:18
**endeavor**
153:25 164:5 222:19
**endeavored**
152:4 216:16
**ended**
190:25
**enforced**
51:15
**engage**
222:18
**engaged**
135:4
**enhanced**
142:20
**enlarges**
141:1
**enormous**
142:4 207:18
**enter**
14:18 57:16 106:24
240:15 242:5
**entered**

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 79 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 261

60:17 142:3 227:16
245:10,12
**entering**
227:21 241:10
**enters**
119:25
**entire**
115:21
**entirely**
20:17 105:16 219:15
**entirety**
30:25 109:18 132:15
**entitled**
8:9 35:16,24,24 36:5
36:10 37:25 51:3
95:23 97:8,12 100:14
100:18,23 107:23
111:11 133:2 135:21
136:15 151:6 164:21
165:5 167:21 199:10
205:5 206:21 208:19
212:5 221:23
**entitlement**
72:14
**entity**
33:9,12,14,16,17 34:19
49:6 70:18 71:3
**entries**
130:7
**entry**
188:23 191:1
**enumerated**
134:2
**envision**
75:24
**equal**
159:9
**equally**
112:5 185:9
**equity**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 160:2
184:24 198:2 214:14
**equivalent**
42:14 80:16 83:15
**erred**

98:18
**error**
167:12 171:14 174:9
174:18 176:25 179:14
179:15,23 180:6
181:8,10,16 182:21
182:22,24,25 184:7
**errors**
31:22 175:20 176:22
177:1 178:3,7 180:20
182:20 185:6,11
**ESQ**
6:11,12,16,21,22
**essential**
132:25
**essentially**
20:18,25 28:20 90:5
105:25 143:1 170:25
**establish**
34:10 214:19,21
240:11
**established**
33:16 36:4
**establishes**
34:3
**estate**
2:13,20,22,23 5:14
132:2
**ethical**
165:17
**EVELYN**
1:15
**event**
156:23
**everybody**
52:19 130:22
**evidence**
18:19 49:17 74:18 75:9
75:21 95:13 106:24
141:22 142:11 152:19
170:10 183:1 188:24
191:9,19,25 194:18
206:5 207:13 211:21
216:5,12 223:14
224:14,24 225:10
227:1

**exact**
144:25 145:8 207:10
220:14 240:15
**exactly**
19:10 20:6 32:19 50:1
63:18 64:20 79:4
99:16 100:5 113:22
128:2 142:13 157:4
202:20 209:6 215:21
**examinations**
210:16
**example**
8:21 57:4 71:25 74:21
77:6 81:23 95:17
109:23 140:4,9
183:17 184:17 195:10
198:15 211:11 233:5
237:15,16 243:19
**exception**
170:6 172:20
**exceptions**
61:14 231:2
**exchange**
83:7,15 84:21 159:11
223:21 224:18,19
**exchanged**
189:17,18
**exclude**
24:5
**excluded**
191:15
**excluding**
133:19
**excuse**
32:6 125:5
**executive**
207:21,24 208:17
210:18
**executrix**
2:13
**exemplar**
19:21
**exercise**
102:4 222:15
**exhausted**
167:4

**exhaustive**
189:16
**exhibit**
16:3 20:2,4 30:6 31:3,4
49:14 50:9 51:5,13,19
51:20 52:1,3 55:11
60:7,21 62:7,17 63:15
63:23 64:7 67:20 68:3
69:20 75:18 85:25
86:15 113:12,17
114:10 119:22 123:21
126:22 130:18 176:24
184:8 230:21 231:23
232:24 235:11,17,24
237:14,17 238:5,8,9
238:24 239:7,7,10,16
240:9,16,23 241:12
241:22,24
**exhibits**
24:2,5 235:1,6
**exist**
49:23 152:7,8,9 154:9
157:4 159:19 162:3
212:14,20 221:17
222:10 225:8
**existed**
37:13 61:7 171:2
220:12 223:15
**exists**
49:16 85:4 150:8
**expands**
141:1
**expect**
215:13
**expedited**
58:9
**expedition**
177:20
**expenses**
96:25 97:3,20
**experience**
170:5 231:5
**expert**
9:12 22:19 23:1 51:22
103:11 104:3,13,19
105:9,15,17,18,21,22

107:13 109:11,12,20
110:21 111:2,5 142:7
149:3 153:15 159:4
172:21 175:16,19,24
178:6,10 180:18
186:18 187:15,15,17
188:10,14 189:16
191:23 197:10 202:22
203:10,23 204:15
207:24 209:6,7,9
213:2,3,3 214:24
215:1 221:5 222:17
225:24
**expert's**
100:22 108:22 150:23
208:11 215:22
**experts**
10:8 21:20 75:22
141:15,22 152:16
155:3,17,18 167:18
176:1,5 184:25
185:21 194:23
**explain**
15:24 37:9 121:2
145:11 181:13 197:24
214:12,18 217:17
229:7,11
**explaining**
31:4
**explanation**
28:1
**explicit**
7:6
**explicitly**
12:24 102:9 127:1
134:23 199:22 200:6
**exploring**
17:2
**express**
41:15
**expression**
186:5
**extend**
44:3
**extensive**
144:14

**extent**
12:6,15 16:17 24:12
25:20 26:13 42:6,22
43:21 45:10 58:21
61:17 81:16 88:23
89:4 112:23 121:12
135:11 143:3,19
146:2,9 159:19
174:20 175:19 187:9
187:13 195:12 200:14
205:24 210:19 213:17
214:5 240:1 242:10
**extraordinarily**
166:2 179:9 231:4

───────────────

**F**

**F**
6:1 246:1
**face**
22:21 131:20 137:15
166:12
**faced**
78:18
**facet**
131:24
**facia**
132:15
**fact**
10:19 12:3 18:5 36:11
51:22 61:9 65:23
66:17 72:22 88:7,14
103:11 104:8,10,12
105:11 111:2 119:9
119:19 133:22 136:24
139:4 144:12 159:23
163:16 167:17 178:10
179:8 182:14 194:12
196:14 211:1 212:24
212:25 213:22 218:10
223:20 226:13
**factors**
56:5 134:2 156:7
162:11
**facts**
13:20,24 14:9 35:7,11
59:12 201:23 205:7

208:15 215:18
**factual**
69:11,19 105:16 106:2
106:25 121:19 127:12
167:12 177:8 180:6
181:8 183:1 189:9
192:13 194:25 198:7
198:9,14,18 229:25
**failed**
35:4 77:8 138:2 226:6
**fails**
91:14,15
**failure**
73:25
**fair**
102:11 115:6 121:7
136:4 228:25
**fairly**
104:4 162:12
**faked**
226:11
**fall**
139:25 209:7 238:2
**falls**
27:21 70:23 81:12,16
81:18 95:3 132:8
**familiar**
111:20 115:22 172:13
**far**
39:5 42:19 71:19 95:24
105:1 109:4,6 156:16
222:16
**farce**
138:10
**fashion**
105:22 134:19 153:22
**favor**
79:25
**favorably**
105:12
**feasible**
140:16 141:10
**February**
243:6
**federal**
17:12 120:12 140:17

140:23
**fee**
201:6
**feeder**
198:16 217:22
**feel**
31:18 182:12 204:7
229:20 230:1
**FELICE**
3:12 4:7
**fewer**
58:12
**fiction**
159:4
**fictitious**
21:17 61:21
**field**
138:24
**figure**
40:10 50:22 126:13
**file**
26:3,14,17,20 27:1,6,8
35:8 58:25 95:18
196:7 199:14
**filed**
26:6,8,11 30:14 130:19
143:15 193:8
**files**
27:5 156:19
**fill**
157:8 194:25
**finality**
226:25
**financial**
21:10 28:24 198:25
**financially**
138:21
**financials**
134:21
**find**
19:24 44:16 46:24
50:24 54:10 88:4
135:6 139:5,17
143:22 146:2 149:11
149:13 154:8 155:2
155:13 160:23 161:21

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 81 of 110
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

Page 263

173:20 178:7,8
185:15 188:4 208:13
216:18 222:11 228:22
233:12,20 242:19
**finding**
42:18
**findings**
132:23
**finds**
18:4
**fine**
27:19 59:15 73:2 82:3
86:5 96:12 118:23
119:16 124:24 238:12
244:24
**fine-tuning**
210:2
**finish**
151:3,4
**FINRA**
139:11,12 145:8
146:10 160:14
**firm**
112:8 223:22,22
243:24
**firmly**
174:24
**first**
24:22 29:14 30:12
34:17 45:10 54:21
60:10 83:10 101:6
103:1,7 104:2 108:23
111:16 112:14 126:22
130:1 131:14 140:9
144:20 147:13 150:17
153:1 202:14,15
205:6 219:6 242:19
243:5
**firsthand**
230:22
**Fiserv**
117:5,9,13,22
**fishing**
177:20
**fit**
188:16 243:1

**flexibility**
43:19
**flip**
173:25
**flipped**
22:4
**Floor**
6:3,15
**floppy**
152:9 153:25
**flow**
118:3
**fly**
56:22
**fmaas@jamsadr.com**
6:4
**focusing**
151:25 221:20
**folder**
145:6 219:21
**folders**
145:7,12
**folks**
239:20
**follow**
13:21 129:24 231:13
**followed**
50:17,18
**following**
5:11 67:21 88:17
176:10 191:17
**follows**
168:7 178:5
**force**
106:1
**foremost**
144:20 153:1 219:6
**forget**
16:15
**Forgetting**
87:24
**form**
27:11 46:21 101:4,15
108:21 109:2 129:22
134:8 142:7,25
157:12 205:4

**formal**
38:16 232:8
**formalities**
42:13
**formality**
36:22 48:10
**formally**
169:9
**format**
231:14
**formation**
37:2
**formed**
33:17,23 37:14 209:16
**former**
33:25 45:19,21,22 82:7
130:6 133:6 212:11
**forms**
119:15 223:15
**formulating**
133:1
**forth**
103:15 116:2 176:16
202:17 223:10
**forward**
20:24 37:7 127:2 128:3
143:21
**found**
146:11 160:17 161:4
163:8 166:5 167:12
171:14 172:1 173:15
174:7 176:12,21
178:2 219:20 221:25
234:7
**Fourth**
1:14,17,19
**fourth-generation**
95:20
**frame**
46:16 48:15 107:3
**framework**
153:6 154:11
**Frank**
6:2 17:7
**frankly**
153:19

**fraud**
17:14 18:3,5,14 28:25
49:16 51:23 61:7,8,17
74:7 113:5 141:17
142:9 145:16 150:19
155:11 158:1,4 161:7
172:17 175:11 185:16
186:5 203:1 215:20
218:3,4,9 219:10
221:15,18,25
**fraudster**
170:7
**fraudulent**
11:18 52:14,15 59:16
62:24 186:2 226:17
**fraudulently**
51:7 57:7 120:3
**free**
204:7
**Friday**
237:7 244:11
**Friday's**
238:14
**front**
71:16 76:10 84:19
111:18 125:17 214:14
**fruitful**
162:8
**fruits**
154:24
**fulfill**
200:1
**full**
21:5,15 95:18 104:5
111:12 135:15 188:6
188:7 198:4,5,8,14
234:23
**fuller**
162:9
**fullest**
135:11
**fully**
76:5
**function**
9:1 22:23 28:12 80:16
131:12

**functioning**
165:19
**functions**
207:17 234:14
**fund**
132:3 152:24 200:3
217:22
**fundamental**
137:11 212:1
**funding**
17:24 138:20
**funds**
71:4 91:16 132:3
152:23 198:17
**further**
103:13 156:6 158:7
178:13 213:14 215:15
219:8 227:9 246:13
**furthermore**
149:6 225:12
**future**
171:13 212:3

**G**

**gains**
96:24 109:1 111:10
**gainsaying**
230:23
**game**
136:4
**gaps**
194:25
**Garrett**
199:4
**gate**
196:15
**gather**
10:20 16:14,23 18:10
160:15 165:9 178:1
221:8 235:10
**gdexter@chaitmanll...**
6:23
**gear**
155:10
**geared**
23:24

**general**
32:9 33:4,10 34:9,11
36:9 37:3 38:13,17
39:3,10,12 42:3,4
45:20 47:7 48:3,8,9
48:11 66:22 67:2,6
71:18 82:6,12 95:15
104:15 127:7 190:22
228:11
**generally**
109:15 143:10 190:19
**generated**
195:20 226:8
**generation**
48:21
**generic**
47:6 73:7 93:22 95:4
**gentleman**
237:8
**getting**
54:24 65:10 92:9 100:6
100:7,17 104:23,25
111:15 112:7 122:5
141:25 172:20 175:15
187:19,21 191:3,4
192:8 197:13 242:21
**gibberish**
156:2
**gift**
85:25
**give**
21:14 24:6 35:17 38:22
38:25 39:7 95:8 98:20
102:25 114:18 119:12
124:17 135:25 146:17
147:16 162:7,7 164:3
164:7 196:24 198:22
231:20 233:6 235:1,5
236:2 243:25 244:18
**given**
28:16 64:10 83:20
85:25 98:2 102:12
111:13 116:2 135:7
142:4 147:18 157:18
161:6 168:22 195:4
203:1 207:15 213:21

214:2
**gives**
25:18 53:7 60:15 95:7
**giving**
232:2
**glad**
23:11
**glitches**
56:12
**global**
173:17,19
**go**
7:24 26:20 40:9 50:12
51:17 57:24 66:7 72:8
80:7 87:7 91:20 98:9
118:4 122:10 123:14
127:2 143:25 156:3
171:24 172:14 174:6
188:21 189:22 190:16
193:20 197:21 198:11
201:5 205:25 211:16
219:17 224:1 229:11
230:8 235:19 236:5
238:7 239:19 241:2
241:23
**goal**
135:9 152:23
**goes**
72:15 120:4 139:6
167:13 195:16 202:3
202:12 207:9 208:2
208:10 221:8 223:12
**going**
11:19 13:21 18:24
20:16 21:21 22:8,13
23:10 35:22 36:15
38:3 39:24 44:3,15
48:21 50:2 52:20 58:4
59:7,18,19 60:6,7
63:22 71:7,11,19 78:4
81:5 89:8,22 91:25
92:9 95:11 96:1 97:14
98:9 101:7 106:1,17
114:20,23 119:3,5
122:9 138:8,25 143:5
143:6,22 146:19,25

147:5,15 151:13
153:24 156:25 160:3
161:22,23 163:3
164:11 165:19 166:2
166:7 167:3 170:10
174:22 175:5,18,25
176:5,5 177:24
178:21,23 179:9
182:9,18,19 183:10
184:15 187:5 189:25
197:9,17 198:11
200:14,17 206:25
209:21 214:5,6 216:5
216:11 221:19 222:24
226:20 227:11 228:14
228:18 235:16 241:20
242:22 243:8,22
244:3,7
**going-forward**
235:21
**good**
8:15 27:13 55:5 68:17
77:3 108:7 110:22
124:8 153:9 155:2
179:3 215:8 244:12
**good-faith**
14:13 15:5 25:19 92:18
158:11 161:9 162:19
180:11 184:19
**goose**
170:25
**Gordon**
2:12,14 5:13 103:6,7
229:14 232:17,20
238:4 239:6 241:13
**gotten**
44:2 101:11 102:20,21
102:23 109:4,6
138:16 144:7
**govern**
140:18
**government**
145:4
**government's**
17:8
**governs**

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 83 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 265

173:6
**grand**
226:25
**grandchildren**
86:1
**grant**
47:12 199:7
**granted**
91:15 178:9
**granular**
40:4
**grappling**
107:7
**great**
40:15 44:10 47:22
  96:13 124:5 129:16
  208:18
**greatest**
153:19
**Greenblatt**
10:10,22 19:5,19 22:9
  173:16 187:7,7 213:8
**Greenblatt's**
20:20
**Greg**
138:25
**GREGORY**
6:22
**Greif**
245:4,4,5
**gross**
174:25 218:18
**ground**
114:21
**grounds**
203:21
**group**
38:12
**groups**
9:10
**guess**
7:5 26:12,17 31:18
  33:1 36:24 43:12
  61:15 68:23 92:4 97:4
  107:7 120:15 139:20
  140:14 157:13 169:1

173:25 183:23 184:6
  200:19 207:6 232:17
  236:23,24
**guessing**
121:8
**guide**
144:14
**guiding**
30:10
**guilty**
17:25
**guy**
236:12

---
**H**
---

**H**
1:9 2:1,8,16 3:1,8,15
  4:1,15
**half**
68:18 243:5
**hand**
31:2 246:18
**handle**
27:17
**handled**
54:25
**handling**
124:18
**Hang**
108:8 121:10
**hanging**
89:15
**happen**
24:13 127:21 184:5,21
  212:20
**happened**
49:24 99:6 151:14
  184:4 225:11 232:22
**happening**
28:11
**happens**
47:9
**happy**
14:17 18:1 19:14 24:9
  26:21 204:4 235:22
**hard**

51:8 148:8 152:8
  160:24 228:15
**hardship**
232:8
**hardware**
162:2
**harping**
180:14
**Harwood**
2:6 5:13 232:17,20
  233:1,4 239:7 240:7,8
  241:12
**haystack**
161:2 171:1
**hchaitman@chaitm...**
6:22
**he'll**
13:14 99:15
**head**
7:13 157:19 217:11
  244:16
**hear**
63:18 75:16,20 76:1
  102:19 124:19
**heard**
99:8 147:22 222:22
**hearing**
10:24 126:25 128:21
  169:22 182:15 192:24
  245:24
**hearings**
14:16
**hearsay**
103:18 106:2 109:21
**held**
5:18 35:3 196:12
  220:12 223:11
**HELEN**
6:21
**HELMIG**
4:8,11
**help**
41:4 112:15 184:25
  220:17 236:1
**helpful**
12:22 19:25 25:7,11

36:12
**helps**
100:16 155:16
**hereunto**
246:17
**herring**
141:7
**hesitation**
161:19
**Hickman**
132:8
**hide-the-ball**
135:5
**highly**
135:3,3
**hire**
221:4,5
**hired**
209:6 211:15
**hit**
191:9
**Hmm**
108:5
**holder**
35:25 48:20 65:3,7
  67:22 70:17 72:1
  117:7 229:15
**holder's**
65:20,25 66:7
**holistically**
227:20
**HOLMERS**
2:21
**home**
233:14 237:2
**HON**
6:2
**honestly**
138:9 192:12
**Honor**
9:14 14:7 16:20 21:1
  24:23 25:22 29:9 41:4
  68:8 69:8 102:4
  103:18,22 106:9,23
  111:6 126:24 131:19
  133:11 140:14 151:19

152:7 163:1 164:6
166:9,20 167:24
170:15 182:11 185:18
188:22 189:6 197:19
202:19 207:7 210:5
219:2 220:3 224:11
227:19 228:6
**Honor's**
123:11
**hook**
67:7
**hopefully**
14:25 15:1 25:14,21
238:6
**horse**
15:14
**Hostetler**
6:8,14 82:22 211:25
**hotel**
236:13,16
**hours**
234:15
**house**
27:22,22,25 28:3,6,9
149:23 156:12 158:24
159:3,15 160:13,13
199:1 236:12,15
**housekeeping**
7:2 29:6
**houses**
28:18 236:9
**Houston**
6:10 237:7
**huge**
159:11 198:16
**hundred**
21:12 103:5 137:6
163:17 174:4 208:3
**hundred-page**
207:8
**hundreds**
25:16
**Hunt**
6:11 7:12 15:11 19:17
27:19 29:17,24 30:7
30:13,16 31:23 32:14

33:8,22 34:17 37:6,10
38:8,13,22 39:14,18
40:5,15,22 42:10,17
43:2,6,16 44:7,13,17
44:21,25 45:7 46:3,5
46:18 47:15,21,25
49:3 50:1,5 52:2,5,18
52:21 56:19 57:1,7,20
58:1,19 59:2,10 63:18
64:3,13,22,24 65:15
66:8 67:9 70:4,6,9,21
71:1,9 72:6,8,17 73:2
73:4,10,13,18,20,24
74:11,24 76:3,16 77:1
77:12,16,21 78:5,14
78:22 79:3,10,16,22
80:3,4,10,24 81:7,18
82:2,14 83:2 84:6,18
84:25 86:3,21,23,25
87:11,16,20 88:2,6,19
89:11 90:12,19 91:2,8
91:24 92:13,15,24
93:9,16 94:7,23 95:6
95:25 96:12,16,18
98:6,13 99:4 101:7,12
101:17 102:21 108:4
108:6 109:8 110:10
110:17,22 112:14,20
113:22 114:3,12,16
114:22 115:7,19,24
116:10 117:2,6,12,24
118:4,12,22 119:5,13
119:18,22 120:5,9
121:1,8 122:1,4,8,17
123:6,11,19 124:1,7
124:12,24 125:2,6,12
125:16 126:8,12
152:10 178:17,23
179:3,6 200:22
228:20 229:5 231:5
233:1,4,8,20 234:4,16
235:3,13,22 236:4,11
236:23 237:12 238:12
239:2,22 240:14
241:9 242:13,15,23
243:11,21,25 244:7

244:14,18,22 245:11
245:14,18,21
**Hunt's**
89:8
**hurt**
152:20
**hurts**
155:16
**husband's**
233:13
**hypothesizing**
211:10

---
**I**
---
**IA**
158:25 159:13 207:12
207:14 225:6 227:3
**IBM**
225:15,19
**idea**
55:5 245:16
**identical**
8:7,8 14:11 45:2
127:12 128:23
**identification**
131:11 132:6
**identified**
95:14 119:9 144:21
157:5
**identify**
49:11 50:21 64:5 70:10
77:24 79:1 83:5 96:20
112:21 113:19 117:3
117:21 118:5 131:22
150:2 155:13 172:1
174:18 234:21
**identifying**
78:15 130:21 148:3
**ignorance**
41:16
**ignore**
127:24
**ignores**
159:2
**ii**
5:4,13 237:1

**iii**
5:4,13
**imagine**
99:25 143:17 187:16
203:15
**immersed**
230:3
**impact**
42:24 48:24
**impacted**
155:20
**implicate**
68:4
**implicated**
68:12
**implicit**
7:4 86:17 92:7
**important**
55:24 136:19 143:2
197:25 202:3 218:10
**importantly**
133:25
**impossible**
220:18
**impression**
132:10 194:1
**impressions**
132:13 135:22
**in-depth**
207:9
**inaccuracies**
174:25
**inaccuracy**
173:15
**inaccurate**
65:9 169:12 171:16
173:1
**inarticulately**
43:13
**inception**
17:4 18:10 61:7 63:15
**inclined**
41:9,10,18 47:7 75:5
121:23 199:7
**include**
188:1

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 85 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 267

included
109:17 185:25
includes
16:16 111:20 196:9
including
13:18 104:9 134:15
  163:24 165:20 217:22
  221:4
income
100:25 101:25 107:20
  107:24
inconsistencies
167:19 175:20
inconsistency
113:21
inconsistent
14:2 57:23 151:8 165:3
  176:13 179:7
inconvenient
230:17
incorporate
91:4
incorporated
33:18,21
incorporation
87:14
incredibly
15:20
incremental
158:6
incumbent
213:13
independent
9:8 21:9 113:18 173:22
  209:8
independently
21:19
indicate
90:10 181:19 242:3
indicated
240:2
indicating
126:23 130:13
indication
16:5
indicia

170:7,12 218:4 224:21
Indirect
70:25
indirectly
218:2
individual
10:22 36:2 87:17
  156:11 210:12 234:3
  240:6
individually
1:16 230:10
individuals
34:20 35:20 40:21,23
  41:1,2,21 42:2 45:3,4
  91:10 103:16 210:12
infer
197:12
infinite
138:20
informal
28:1
information
32:9,13,15 33:15 34:5
  35:18 38:14,23 39:1,8
  45:8 49:5 55:10 60:7
  71:18 72:15 78:20
  79:6,7 95:14 100:6,24
  102:10,17 103:20,23
  107:23 109:17 111:11
  111:19,22 115:5,13
  116:16 117:12 130:21
  132:4,12,25 133:3
  138:6 156:13 157:24
  160:23 163:4,24
  164:16 167:16 175:15
  175:17 183:20 194:6
  197:15 199:2,8,11,17
  200:15 212:5,16
  226:15 227:7 234:9
informative
166:3,4
inherited
152:6 159:18
initial
64:25 65:2 66:9 70:13
  72:1 83:8,11,21 84:4

84:4,6 85:8 94:12
  117:4,15 123:2
  195:14 204:20
initially
204:12
inquiry
163:11
insert
45:20
insist
211:2
Insofar
116:5
insolvency
158:1 214:22 215:3,8
  216:14 217:15 218:1
  218:3
insolvent
214:19
installments
121:18
instance
54:17 62:20 132:17
  174:7 226:4 227:2
  228:5
instances
62:16 71:24 118:8,13
  119:8,9,11 172:1
  173:1 196:4 231:22
instructing
196:11
insufficient
32:8
intend
25:25 202:21 214:18
intended
153:17 192:6
intends
99:2
intent
48:5 217:16 230:5
inter-account
11:13 15:23 54:18,22
  55:16 56:6,13 60:9
  62:4 68:9,12 70:1
  74:1,22,23 195:25

interest
32:18 34:2 42:7 45:16
  83:10
interested
26:16 34:13 90:2
  246:15
interim
199:14 225:15
interject
71:15 204:1
intermediate
43:9
internal
223:23
interpret
52:9
interrelated
28:24
interrelates
218:4
interrogatories
29:23 40:8,13,18 45:1
  73:5 79:12 96:19
  122:2 125:5,19
  126:18 192:6 228:17
  234:1
interrogatory
41:22 44:25 45:6 46:5
  47:8,10,23,25 50:3
  54:24 56:18 57:23
  58:17,22 64:4 65:14
  70:7,9,21 71:2,13
  72:19 73:14,20 75:2
  77:1,4,16,24 78:25
  79:8 96:19 97:5
  100:12 112:21 113:8
  114:2,17 115:8
  116:11,13 117:17
  118:4 119:13,18
  120:10,13 121:2
  170:9 208:10 215:23
interrupt
85:17 92:16 151:1,2
  178:18 204:8
interrupted
44:13

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 86 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 268

interviewed
143:1
interviews
132:7 135:23 210:12
introduce
216:5
introduced
234:20
introducing
172:18
inventory
152:1 156:19 159:12
165:24,25 166:12
226:2
investigate
132:21 171:8
investigated
171:20
investigation
69:19 131:24 154:25
161:12,14 170:24
184:10 210:17 211:17
213:14 219:7,13
221:3
investigator
211:12
investigatory
135:22
investment
1:3,10 2:2,9,17 3:2,9
3:16 4:3,16 17:6,15
28:3,7 42:14 47:19
81:24 111:9 148:22
158:19,25 159:7
201:25 211:4 218:22
220:22
Investor
132:19
invited
155:12
involve
67:17
involved
27:3 157:21 160:22
229:21 232:21 233:2
233:5

IRA
116:22 120:20 121:17
irrelevant
52:17 77:20 108:16
115:17,23 117:14
169:6 175:1 177:21
240:13
IRVING
1:9 2:1,8,16 3:1,8,15
4:1,15
Island
165:6
Israel
1:14,17,19
issue
7:18 10:13 11:1 12:13
13:5,9,14,18,19 15:24
16:25 18:17,24 24:17
26:13 29:20 40:23
41:10,17 43:21 44:9
52:10 60:12 78:10
83:20,22 91:16 95:6
98:10 126:25 136:18
139:7,21 142:5
145:17 146:14 150:20
155:15 156:9 159:2
166:7 168:23 169:25
170:4 173:18,18
177:22 182:10 188:12
189:15 192:22 198:2
202:12 205:22 207:10
210:9 217:15 218:7
224:12,12 225:24
230:1,5 241:2,7,22
issued
26:1 211:19
issues
9:2 10:21 13:11,17
14:22 23:24 25:20
30:20 31:8 43:18 44:1
49:10 59:15 69:12
104:19 106:2 127:20
135:7 136:18 142:9
146:18 158:1 167:9
170:1 177:8 192:20
202:4 228:4 230:4,23

238:23 240:5
items
147:10 152:5,20 162:5
175:21
iv
5:14

---

**J**

J
3:12 6:16
Jacobs
6:16 9:3,6 10:10 11:1
11:14 12:13 13:3 15:1
15:9 16:19 17:16 18:1
18:12 19:8,11,14,23
20:4,9,11,15 21:14
22:3 23:23 24:4,8
25:10 26:4,7,19,24
27:25 28:19 29:4,8,15
44:8 68:8,11,16 69:8
70:5 85:9,14,19
101:18 102:3 103:17
105:2,7,14 106:9,19
106:22 107:6 109:14
110:1,5 111:1,6,17
112:13 126:24 127:9
128:2,12,15,18 129:3
129:9 130:23 131:5
131:10,18 133:9,14
133:18,20 140:8
144:10,18 146:13
147:8,18,25 149:1,5
149:17 150:10,25
151:4,18,21 152:3,12
155:6 156:9 157:3
158:21 160:12,20
161:11,18 162:25
163:22 164:5,17
166:4,9,15,18 167:23
168:1 169:4,14,16,19
170:2,15 171:5,21
172:9 173:2,5 175:22
176:8,11,14 178:4,14
179:15,25 180:9,12
180:17,22,24 181:2,5
182:11 183:25 184:6

184:12,17 185:7,13
186:19,23 187:22
189:6 192:14 193:2,7
194:7 195:11,14
196:18,21 197:2,6,19
199:13 200:24 201:18
202:19 203:7,14,20
204:4,7,19 205:15,18
207:6,23 208:5,25
209:5,12,19,24 210:4
210:8 212:12,19,24
213:2 215:2 216:14
216:16,23 217:9,17
219:1 220:2 222:3,6
222:22 224:11 225:17
225:20,22 227:15
228:25 245:5,7
JAMS
5:19
January
243:5
joke
139:3
Jones
181:15 190:15
Jones'
225:16
JPMorgan
21:9,25 196:3
judge
7:4 8:5,22 10:24 12:9
12:24 13:13,17 14:16
15:15 18:4 23:13 25:3
26:15,23 27:5,16 32:1
35:3 38:2,19 43:14
44:4 55:1 60:25 61:10
69:4 75:16,25 85:10
92:22 94:3 97:7,18
98:17,18,24 99:12,25
102:9 106:16 125:23
125:25 126:2,6,7,25
127:1 128:17,21
132:19 137:17 138:9
142:3,16 145:20
147:13 150:11 153:22
155:11 159:1 168:13

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 87 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 269

169:6 174:23 177:14
185:14 190:4 192:11
192:20 194:2 199:22
200:6,19 203:18
210:24 215:7,15
217:14 229:6
**judge's**
14:2 106:5
**judges**
143:11
**judgment**
35:25 36:1
**jump**
49:25
**jumping**
49:8
**juncture**
182:12 185:19

### K

**keep**
154:12
**keeping**
152:19
**KENNETH**
3:12
**kept**
223:17
**kicking**
197:1
**kind**
8:9 33:12 45:11 50:17
162:7 179:22
**kinds**
167:19 224:6
**Klan**
4:6,8,9,10,11,12,13 5:4
30:16 31:12,25 32:16
33:1,2,9 36:15 40:18
43:2 45:2 49:7 52:4
53:24 54:21 59:14
63:21 64:11,14,15,18
66:25 68:22 74:23
79:14,18 80:5 89:13
89:16 96:14
**Klan's**

66:11
**knew**
229:16
**know**
26:9 27:23 28:4 33:8
33:10 34:17,23 35:1
37:25 38:10 42:20
45:11 48:4,22 50:5
53:20 56:6,20 58:13
61:19 64:6,22,24 65:1
66:6,8,10,14,17 68:3
69:4 71:15 74:16 76:9
78:17 84:18,25 85:20
94:9,9 104:21 110:10
115:4,25 117:22
125:16 126:4,8
129:22 133:9 138:17
148:3 153:12 154:4
158:22 160:21 163:2
166:6 179:25 181:7
182:5 185:15 208:14
209:9 217:10,19
218:1 220:4,6,19
221:16 222:9 225:8
226:23 231:12,16
234:17 238:17 241:18
243:23 245:3
**knowledge**
18:13 19:9 70:10,18
77:17,25 78:15 79:1
101:20 114:18 115:4
115:8 116:3,8 118:8
160:16 183:15 217:5
222:5 230:22 232:18
233:16
**knows**
10:4 163:20

### L

**L**
1:7,10 2:2,8,16 3:2,6,8
3:16 4:2,3,16,17 6:12
117:8
**labeled**
145:6,8 188:2
**laborious**

101:1
**lack**
28:10
**land**
155:7
**LANDRES**
4:9,12
**landscape**
217:20
**language**
60:23 61:18,19 62:5
239:16 241:20
**large**
31:3 113:1
**law**
10:12 32:12 33:24 38:4
38:19 39:10 47:3,3
101:19 118:1,2
154:12 172:12 177:18
182:19 183:9 212:3
236:10,12
**laws**
120:12 152:24
**lawyers**
212:1
**lay**
155:6
**lead**
36:25
**learned**
43:8
**leave**
8:14 69:2 118:24
151:22
**leaving**
196:5
**led**
123:13
**left**
122:17,18,21 198:16
**legal**
33:13 67:7 116:14,24
127:12 199:23 200:7
200:10 217:20
**legally**
120:11 121:5 183:11

**legitimate**
83:9 148:23 211:3
221:10
**length**
95:21 185:14,22
207:16 208:18 209:16
**lengthy**
28:21 166:2
**lens**
227:25
**let's**
34:6 40:12 47:9 48:7
54:20 59:25 60:9
66:16,17 70:3 78:12
81:2 82:20,21 124:23
126:12 129:20 187:3
188:18 202:14 204:9
210:25 235:19
**letter**
15:6 73:10 110:3,4
112:10 181:25 195:9
196:10
**letters**
145:10 238:9
**level**
40:4 138:24
**liabilities**
112:4
**liability**
34:3 51:8 57:8 112:3
120:2 168:14
**liable**
34:21 47:5
**lieu**
208:20
**Lifland**
142:3
**lifting**
186:21,24
**light**
63:11 158:7
**limit**
177:25 182:9 206:25
**limited**
32:10,11 33:11 34:7,8
34:16,18 38:6,18,21

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 88 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 270

38:23 39:4,9,20 42:7
42:9 67:3 82:5 110:15
136:22 178:1 216:3
222:16
**limiting**
180:15
**line**
35:14 162:14
**link**
231:10
**liquidating**
132:2
**liquidation**
1:2,10 2:2,8,16 3:2,8
3:16 4:2,16 142:6
**liquidity**
224:23
**Lisa**
173:17
**list**
7:24 24:6 71:11 130:3
130:5 131:6,15,22
132:4 165:6 180:6
181:7 188:22 198:21
198:23 201:11 214:2
223:4
**listed**
63:23 126:21 223:9
**literally**
163:23
**litigant**
138:19,19 140:17
165:16
**litigants**
135:10 142:11
**litigate**
177:13
**litigated**
11:5 12:8 13:6 182:18
**litigating**
12:25 16:9 153:14
193:11
**litigation**
13:2 14:22 18:14 23:17
61:11 69:17 102:17
132:11 133:8 142:2

143:13 167:17,20
190:1,6,12 191:10
192:24 193:19 209:13
229:21
**little**
79:23 87:22 99:5
**live**
154:18 230:16 231:8
**lives**
229:17 237:8
**living**
15:21 96:25 97:3
**LLC**
1:4,11 2:3,9,17 3:3,9
3:17 4:3,17
**LLP**
6:8,14,19
**LLP'S**
5:7,10
**local**
117:19 236:17
**log**
143:16,18
**logged**
143:16,18
**logging**
143:23
**logical**
8:1
**logically**
242:18
**Londa**
4:7,10 40:24 45:4
**long**
58:6 76:3 83:19 101:12
118:22 120:15 123:11
124:25 148:14 149:8
162:18,22 163:3
165:6 166:7 193:20
225:18
**long-standing**
202:5
**longer**
85:11 162:3 215:9
234:18,22
**look**

16:2,10 19:3 23:9 24:4
24:15 63:9 79:19
105:12 122:12 128:12
145:23 147:23 148:16
151:11 157:1 161:8
161:10 198:19 217:12
219:17 222:8 226:12
227:24 231:16 239:6
241:20 244:19
**look-back**
55:23
**looked**
26:5 27:11 148:13
152:15 176:6 203:12
228:1
**looking**
19:20 44:23 74:5 82:6
87:12,16 88:4 91:9,11
111:21 113:7 123:16
145:10,23 146:13,22
149:19 159:15 160:21
161:1 163:14 165:23
165:25 170:25 173:4
192:20 201:19 203:14
220:21
**looks**
45:13 129:17 130:21
**lose**
98:10 182:23
**lost**
87:9
**lot**
30:19 32:1 54:8 56:17
68:15 75:20 101:11
108:1 137:2 139:1
156:6 162:9 221:23
242:24
**lots**
169:7 238:1 239:14

_____

**M**

**M**
6:22
**Maas**
6:2 125:23,25 126:2,7
128:17 179:4

**Madoff**
1:3,7,10 2:2,9,17 3:2,9
3:16 4:3,3,16,17 16:6
16:24 17:5 18:2,11,17
22:2 51:19 61:23 68:1
84:15 100:25 107:20
109:1 111:9 114:19
133:6 136:3 139:24
146:17 148:21 150:9
150:15 153:18 159:2
159:8,17,23 161:7
163:21 164:15 172:15
172:17 175:7 179:10
181:8,25 196:10
201:24 202:5 205:23
206:1,5 211:2,14
212:11 213:9 214:19
221:18 223:19 224:3
224:4,23
**Madoff's**
17:7 18:20 22:22 37:20
51:21,23 54:11 61:12
62:3,10,25 74:7 86:1
145:18 149:15,24
191:19 201:22 202:8
218:21
**magic**
120:21
**main**
6:9 219:22
**maintain**
185:21
**maintained**
148:6 185:20 196:8
**major**
167:9
**making**
142:23 166:21 185:1
203:25 209:17 218:6
**man**
17:8
**management**
9:9,20 10:7 105:24
203:11
**manager**
26:2

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 89 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 271

**mandate**
46:15
**manipulation**
219:19
**manner**
100:9
**march**
42:25 243:17
**marginal**
189:25
**Marie**
6:12 138:12 234:18
**marie.carlisle@bake...**
6:12
**mark**
190:2
**market-making**
28:12 140:5 218:23
  223:21
**marriage**
246:14
**match**
22:16 156:11 226:1,3,7
**material**
32:1 109:7,16 146:22
  148:11 155:1 173:4
  203:23 206:8 209:19
**materials**
34:12 111:23 139:21
  139:24 155:14 184:14
  194:13 195:4 199:22
  204:15 210:15 217:19
  226:23
**math**
54:5
**matter**
34:14 49:24 66:25
  69:14 75:15 80:5
  95:15 104:8 116:7
  118:1,1 139:4 150:4
  155:8 183:21 205:4
  215:21 216:19 246:11
  246:15,16
**matters**
7:2 9:13 29:6
**mean**

7:12 42:17 59:23 76:9
  78:14 84:11 99:24
  107:4 115:18 119:11
  136:11 157:9,14
  158:12 163:1 182:21
  182:22 183:16 184:7
  190:18 230:5 232:21
  239:6 241:18
**meaning**
130:7
**means**
50:8 56:20 57:2 75:15
  115:17,19 141:14
  181:7 185:16 221:6
**meant**
181:14
**mechanics**
236:2
**mechanism**
141:19
**media**
148:8,12 152:8 161:23
**meet**
14:18 43:20 146:20
  202:21
**meetings**
47:17 81:10
**members**
34:1
**memoranda**
87:14
**mental**
132:10,12 135:22
**mention**
132:5
**mentioned**
138:9 141:8 144:3
  224:16
**mentis**
232:11 234:13
**Mercantile**
224:19
**Merit**
5:22
**Mexico**
229:17

**microfiche**
152:7 161:8,25 163:15
**microfiches**
163:17
**microfilm**
161:25 163:2
**million**
101:25 134:16 141:7
  166:25,25
**millions**
157:23
**mind**
13:16 66:25 68:6 70:19
  86:8 100:1 116:18
  117:3 172:6 194:9
**mindful**
36:20
**mini**
182:15
**minimum**
141:10 148:18 186:23
**minute**
121:10 124:18
**minutes**
81:10
**minutia**
27:21
**mired**
54:24
**miscalculation**
183:19
**mischaracterization**
23:4
**misconstruing**
12:1
**missing**
166:24
**misspoke**
23:2
**misspoken**
21:24
**misstatement**
23:3
**misunderstand**
192:19
**misunderstanding**

66:5
**Mitzvah**
65:12 71:24
**modification**
58:10
**modified**
86:9
**modify**
45:17 56:21 58:14,17
  96:2 112:12 121:14
  160:11
**modifying**
87:4 88:13
**moment**
9:22 27:10 38:5 87:25
  97:17,18 98:19 106:7
  119:3 127:24 220:4
**money**
19:7 46:25 48:6,20
  53:25 65:19,24 83:6
  85:3 116:20 118:3
  120:23 121:17 153:3
  162:10 168:15,16
  191:8 200:1
**money's**
67:18
**monies**
85:24
**monthly**
191:3
**months**
147:14 174:10 197:5
**Moore**
36:18
**moot**
51:3
**Mormon**
115:21
**morning**
95:24 219:3 237:20
**motion**
5:1,7,10 26:9,25 29:3
  30:11,14 61:9 63:11
  91:7 98:23 118:19
  124:6,10,21 126:12
  126:17 127:2 128:4

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 90 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 272

128:22 143:3 169:9
200:8 215:14 227:13
**mouse**
199:17
**mouth**
150:18
**move**
43:19 70:3 76:2 112:20
122:23 128:3 188:18
**moved**
125:21,22 230:7
**moving**
178:19 242:25
**multiple**
148:7
**Mulvenna**
5:21 34:11 246:7,20

---

**N**

**N**
6:6
**nail**
167:15
**nailed**
70:7
**name**
33:14 35:19 116:2
130:5 179:2
**names**
33:24 45:18 114:17,24
**narrative**
152:21
**narrow**
72:17
**narrowed**
185:5
**narrower**
78:10 172:5
**narrowing**
88:21
**nature**
11:5 102:13 105:16
166:19 197:22 219:3
**NCF**
26:18
**near**

22:16,20 173:21
**nearby**
236:10,11
**nearly**
128:23 173:24
**necessarily**
193:8
**necessary**
155:17
**need**
33:6 35:8 43:10 44:3
45:10 47:13 58:17
64:6,22 65:13 66:8,9
66:14 71:21 75:1,25
78:2 80:6 91:19 104:6
105:6 114:1 117:2
124:25 138:5 148:18
157:7,15 161:2
166:24 174:16 188:21
203:18 212:8,15
219:19 234:10 240:6
242:12,17,20 245:18
**needed**
26:8 117:10 123:14
124:4 217:3
**needle**
161:1 171:1
**needs**
43:20 58:12 65:5 94:14
134:1 158:9 168:12
173:11 240:19
**negative**
53:24
**neither**
27:15
**net**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 155:23
160:2 184:24 198:2
214:14
**netting**
223:25
**never**
16:12 17:5 41:1 42:2,3
44:9 138:16 144:7
153:17 158:21,22

182:1 186:3 190:15
229:21 241:13,18
**new**
1:1 5:19,20,24 6:4,4,16
6:16,21,21 129:4
150:20 159:10 229:17
237:6 246:3,8
**nicknames**
28:2
**Nods**
244:16
**non**
141:7 232:11
**non-issue**
40:2
**nonobjectionable**
136:12
**nonsensical**
183:2 185:15 186:7
**normal**
9:19 109:13
**Nos**
46:2
**nose**
57:18
**notary**
5:23 246:8
**note**
15:2 36:17 189:25
232:10 239:13
**notes**
25:11 132:7 239:13
**notice**
27:5,9 69:17
**noticed**
229:8
**notion**
221:9
**notwithstanding**
144:12 183:3
**November**
141:25 142:1
**nuances**
7:15
**number**
9:20,25 10:17 24:13

30:21 32:3 52:8 53:8
53:24 72:7 80:7 113:2
131:8 137:25 143:7
154:13 180:20 183:4
183:5 185:13 189:2,3
201:18,20,21 204:11
210:8 213:4 214:18
215:18 218:16,19
219:5 223:11,15
234:22
**numbered**
235:24
**numbering**
87:22,25
**numbers**
50:11,13 227:10
235:11,17,25 238:9
**numerous**
108:14 174:5
**nutshell**
22:23

---

**O**

**O**
6:1
**o'clock**
244:15
**O/W/O**
1:14,17,19
**object**
51:25 74:16 75:8
132:14 182:14 199:20
**objected**
193:11 204:12
**objecting**
210:20
**objection**
110:23 131:18,19
157:3 193:12 203:25
204:20 219:1,4
**objections**
193:12 219:6
**objective**
153:1
**objects**
27:15 203:20

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 91 of 110
Trustees Motion to Compel Discovery                        Arbitration 12/13/2016

Page 273

**obligation**
69:16,18 132:21 134:7
165:17 172:24 176:17
177:11 211:7 213:16
**obligations**
141:2 142:20
**observed**
42:13
**obtain**
24:21 35:7 90:17,20
127:16 146:3 216:13
216:25
**obtained**
145:1 154:6
**obtaining**
49:4 89:24
**obviate**
86:16
**obviated**
119:19
**obviates**
57:22 114:1
**obviously**
13:16 18:23 31:19 44:2
51:13,14 56:11 59:21
101:23 105:11 167:8
182:5 186:20 192:3
198:10 209:25
**occasions**
105:6
**occur**
150:5,7 178:9 207:20
212:23
**occurred**
118:9,13 119:8 184:19
186:3 190:21 203:2
226:24
**odd**
25:24
**off-the-cuff**
137:18
**offer**
9:19 10:6 110:6 174:22
**offered**
51:10 109:11 226:10
237:3

**offering**
75:23
**office**
237:1
**offices**
236:10,12 237:6,7
**offset**
98:7 112:3,4
**oh**
29:19 131:9,15 163:8
166:5 218:17 245:11
**okay**
18:23 24:3 26:12 27:20
27:25 29:12 30:1 37:8
37:12 40:5 44:4,10
46:4 47:24 50:4 53:19
56:16 57:20 58:19
63:16 66:23 68:19
69:7 70:5,20 73:2,13
76:24 77:1,12,16 79:9
79:13 80:24 86:22,24
87:16,19 89:7 90:8
91:8 92:6,13,14 94:23
95:6 96:12,15,17
110:22 114:16 117:24
120:9 121:25 122:1,3
124:23 129:25 131:9
131:17 149:4,10
151:23 156:5 162:16
164:17 178:14 180:17
180:22,23 185:7
188:19 197:20 208:25
209:24 210:4,7 214:8
217:9 218:14 221:13
223:7 228:25 229:6
238:22 242:8,13
245:18,20
**omnibus**
10:24 192:23 200:7
**once**
34:10 42:15 58:7 63:3
66:6 112:14 221:18
**one-to-two-page**
103:14
**ones**
20:10 23:15 36:21 45:2

87:21 103:7 128:13
185:2 240:7
**open**
63:16
**opened**
37:11 149:25 168:4
**opening**
194:15
**operated**
28:22 36:18
**operating**
28:5 36:9
**operation**
201:23
**operations**
28:3 134:21 218:21
**operative**
37:17
**opine**
221:6
**opines**
183:23
**opinions**
137:18
**opportunity**
112:11 149:2 216:13
236:3
**option**
95:7
**Options**
224:18
**order**
5:7,10 9:9,20 24:14,16
25:8,10,18 32:24 35:7
35:11 36:3 49:9 58:9
58:14,15 59:6 72:21
80:22 101:12 102:15
106:13 118:20 123:12
124:2,22 127:15
141:24 142:2,4
145:20 166:22 170:23
183:4 190:5 193:4
200:11 203:11 209:14
216:6 227:16,21,22
228:7 229:10 230:7
245:2,7,10,11

**ordered**
111:23 194:2
**orders**
10:7 25:14 26:13
101:23 105:24 106:5
141:16
**ordinary**
142:19
**organizational**
80:14
**organized**
38:1 134:19 139:2
**original**
128:19 179:10
**originally**
141:18
**ought**
242:19
**Ouija**
119:10
**out-of-the-market**
224:22
**outcome**
14:1 177:4 246:16
**outlined**
228:12
**outrageous**
151:21 152:17
**outset**
142:22
**outside**
102:17 132:15 145:19
163:25 167:20 168:8
**outstanding**
8:12 197:22 200:2
**overarching**
20:14 41:13 143:8
**overlap**
12:20,21 31:16
**overrides**
141:4
**overruled**
102:9
**owe**
153:3
**owes**

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 92 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 274

224:3,4
**owned**
61:5
**ownership**
32:18 34:2

**P**

**P**
6:6,6
**p.m**
244:21 245:23
**package**
208:13 231:20
**page**
1:23 50:11 79:4 97:23
129:15 130:1 174:8
181:4
**pages**
19:2 108:24 111:16
203:5 208:3
**paid**
36:2 97:2,8 100:5
103:16 111:8,10
112:2 196:13
**painstaking**
135:14 226:18
**painstakingly**
152:4 184:22
**Palmer**
2:20,22,22,23 5:14
230:20 232:19 237:15
237:16,16 241:13
**papers**
100:13 134:11 138:11
230:13
**paperwork**
16:16 74:5 245:16
**paragraph**
202:18 203:3 209:1
**paragraphs**
113:9
**parallel**
61:19
**paraphrase**
208:13
**Park**

6:20
**part**
12:17 13:7,9 15:23
17:2 28:9 63:10 67:19
71:10 73:25 78:22
97:19 131:14 140:9
145:1,2,3 169:15,22
193:12 194:24 195:13
198:18 199:6 202:15
205:6 206:25 221:12
221:14
**participants**
191:14
**participate**
190:11
**particular**
38:9 39:15 54:17 58:17
58:23 65:9 73:14
76:11 105:6 133:13
136:9,23 140:8
141:24 169:16 183:24
219:5
**particularized**
166:23
**particularly**
50:25 156:21
**parties**
26:14 43:19 44:9 49:12
77:17 86:4 93:24
94:11 134:1 143:12
155:12 246:14
**partner**
4:7,8,9,10,11,12 32:11
32:19 34:8,8,10,12
37:3 38:6,17 39:3,10
39:12,16 40:25 42:4
46:9 47:7 48:3,8,10
48:11 66:19,22 67:2,3
67:6
**partners**
32:9,11,15,17 33:4
34:1,4,16,18 36:3
37:4 38:9,14,18,21,24
39:4,9,16,20 42:3,9
45:12,20 46:11 48:13
82:6,13,24

**partners'**
66:19
**partnership**
4:6 32:1,10,17 33:2,10
33:11,11,14 34:2
36:16,19,21,23 37:4
37:13,14,16,21 38:1
38:16 39:13 40:20
41:19 42:7,11,13,19
44:11 45:11,12 46:8
47:4,6,14,18 48:24
67:2,6,10,12 80:15,16
81:10,22 82:13,23
87:13,23
**parts**
242:25
**party**
26:16 89:25 90:17
93:14 112:23 113:10
217:1
**party's**
120:14
**pass**
72:9
**passed**
239:23
**Pause**
76:23
**pay**
96:23 117:10 168:16
**payable**
65:11
**payroll**
130:22
**Pearlman**
232:20,22 237:24
241:12
**peek**
162:7
**pejoratively**
187:4
**pending**
49:4
**people**
38:12 42:15 61:5 70:10
70:11 108:2 114:24

116:3,8 118:17
120:20 137:6 138:21
139:16 143:14 163:23
165:20 190:7 191:11
191:17,20 229:24
230:6,14 231:21
232:5 234:8,12 235:8
**people's**
236:9
**percent**
22:17,20,20 32:18 34:7
34:8,14,15 45:15
103:5 159:10 170:20
173:21,24
**percentage**
34:21 35:23
**percentages**
39:8
**Perfect**
112:13
**perfectly**
78:16
**period**
20:23 36:24 37:1,6
52:10 55:23 60:13
62:11 63:6,7 69:14,20
71:15 120:21 161:22
174:6 221:1,21 222:4
224:10 232:25
**periodically**
199:12
**periods**
18:13 21:22 22:14
145:15,25 149:8,24
153:15 154:3 171:9
218:5
**Perlman**
3:12,13,13 5:12
**permeated**
49:15 51:23 61:8,18
74:7 186:12
**permit**
26:17 141:19
**permits**
178:12
**permitted**

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 93 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 275

37:19 64:21 101:19
**person**
35:22 46:9,10 70:12,17
77:24 79:1 115:12
130:9,10,13 171:15
241:8
**personal**
2:21,23 118:7 232:18
233:16
**personally**
157:21 158:22
**personnel**
211:1
**persons**
78:15 114:18
**perspective**
28:25 29:1 108:17,17
112:5 140:16 144:13
168:6 186:21 228:2
**PETER**
4:10
**phone**
242:11 244:5
**phrase**
68:1 80:20 149:12,19
**physically**
124:19 229:23
**Picard**
1:9 2:1,8,16 3:1,8,15
4:1,15 5:3,4,4,8,12,13
5:13,14,15,15 129:1
159:4
**Picard's**
51:22
**pick**
176:2
**picked**
236:24
**picture**
41:15 198:6 208:8
**piece**
148:12,16 152:8
**pieces**
148:7
**pin**
217:12

**place**
50:2 63:25 76:4 102:15
159:20
**places**
45:23
**Placon**
237:1
**Plaintiff**
1:12 2:4,10,18 3:4,10
3:18 4:4,18
**plaintiffs**
230:15
**planning**
199:25
**plausible**
185:10
**playing**
138:24
**Plaza**
6:15
**plea**
17:13,25 150:16 202:9
**pleading**
47:3
**pleadings**
30:19
**Please**
151:4 167:25 204:7
**pled**
17:12 32:9 78:6 83:20
150:14,15
**point**
26:15 28:16 54:19
62:18 71:2 72:9 78:1
84:2 86:2 93:19 100:3
105:14 108:7 110:17
121:7,9 133:21
138:10 150:11 171:2
178:16 180:7 185:3
186:13 198:24 199:4
202:10 206:14,19
207:15 215:13 218:6
239:4 242:21
**points**
40:9 122:22
**policies**

81:11,24
**Ponzi**
18:11 28:5,25 61:25
153:20 160:6 218:9
221:11
**pools**
224:22
**populated**
226:13
**portion**
28:14 46:10 68:17
107:18
**portions**
28:23
**posit**
136:7
**position**
17:4 18:10,18 61:6,16
69:8,23 127:10
136:21 138:18 201:24
202:2,7,17 205:10,13
206:10,13,18 207:3
211:6 212:10
**positions**
165:3
**possess**
77:18
**possession**
69:12 89:22,24
**possibility**
150:8
**possible**
134:4 135:11 204:23
226:1
**possibly**
74:8 151:7,16 158:8
168:10 174:4 198:12
216:17
**post**
143:23
**pot**
107:11
**potential**
108:14 139:20 141:20
155:11
**potentially**

11:1 20:16 45:15 48:24
110:14 128:1 136:3,7
140:13 142:5 149:14
163:15 164:14 172:4
227:9
**power**
40:24 41:7
**practical**
75:15 140:15 150:4
183:21
**practice**
212:3
**pre**
60:1 158:18 160:17
162:20 166:13
**precedent**
156:9
**precise**
35:18
**precisely**
46:14 205:22
**preclude**
230:24
**precluded**
95:11
**predate**
18:7 37:22
**predates**
60:13
**predating**
154:3
**predecessor**
33:17
**prejudice**
82:1 234:2
**prejudiced**
104:23 105:5
**premature**
203:9
**prematurely**
203:22 204:16 245:10
**prep**
236:3
**preparation**
132:11
**prepare**

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 94 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 276

157:10
**prepared**
129:10 152:2
**preparers**
116:1
**preparing**
94:25
**presence**
86:8
**present**
171:12
**preserve**
98:12
**preserved**
69:16
**presumably**
13:11 187:5
**presume**
239:17
**presumes**
212:13
**presumption**
61:25 122:25 123:7
  160:6 221:11
**pretty**
70:7 100:22 104:14
  161:20
**prevails**
98:3
**prevent**
151:17
**previously**
7:21 156:18 162:21
**prima**
132:15
**primary**
2:13
**principal**
45:23 53:16 240:11
**principle**
36:9 228:11
**prior**
14:3,15 37:20 49:18
  105:22 147:10 215:17
  221:21 224:10
**pristine**

172:22
**privacy**
108:17
**privately**
223:22
**privilege**
143:8,16,23
**Pro**
1:11 2:3,10,18 3:3,10
  3:17 4:4,17 5:3,4,4,8
  5:12,13,13,14,15,15
**probably**
23:17 26:15 33:21 48:9
  48:11 56:10 92:1
  94:19 103:8 156:1,17
  165:24 166:3 174:13
  213:20 230:19 232:14
**problem**
55:5 56:2 60:18 65:13
  66:1 67:15 72:2 90:6
  94:3,8 103:17 129:7
  137:11 189:7 207:7
  243:3
**problems**
36:7 50:13 57:22 108:1
  212:2
**procedure**
24:12 25:1 140:18,24
**procedures**
142:2 209:14
**proceed**
63:17 129:10
**proceeding**
5:8 9:10 11:6 12:10
  13:6,10 14:4 15:3
  24:1 155:10 165:22
  182:4,5 189:12
  192:16,17 193:23
  194:11 195:5 196:19
**proceedings**
5:2,11,17 7:7 10:5
  11:10 13:7,8,15 17:17
  158:12 168:14 196:17
  196:22,25 212:22
  246:10,12
**proceeds**

34:22
**process**
43:7 101:1 148:14
**processing**
31:22
**produce**
8:2 33:3 37:15 84:1,12
  87:7 88:16,24 89:17
  90:20,23,24 93:2,11
  93:17 94:10,18 96:1,7
  96:10,11 101:7
  110:11 126:19 130:11
  134:8 136:11 137:2
  146:4 147:9 150:2
  151:7,12 162:23
  163:9 177:11 181:18
  183:20 199:21 202:1
  206:17 214:14,20
  218:24 222:12
**produced**
23:16 36:16 87:4 88:11
  88:12 89:5 92:25 93:2
  93:5,8,24 95:1 96:9,9
  101:14 104:10 105:9
  105:11 108:20 109:7
  131:7 133:7,16 135:2
  154:15,15 156:20,24
  157:11 162:21 183:1
  189:14,22 191:16
  194:13 195:11 196:2
  196:7,13,14 197:12
  205:14 206:2 214:9
  214:17 229:17 233:9
  235:13 238:8
**produces**
90:13 180:2
**producible**
157:12
**producing**
101:4,5,6,9 104:22
  157:4 188:3 189:23
  195:3 205:9 243:9
**product**
131:21 132:8 135:23
  136:6,10,16 137:13
  137:13,14,20 141:4

142:22 156:21 157:6
  157:12 165:11 204:13
  210:11,22 212:7
  213:18 214:5
**production**
122:19 141:21 148:2
  195:15 202:11,24
  204:17 205:1
**professionals**
163:25
**proffer**
216:22
**proffered**
202:22
**profit**
10:24 11:15,15 12:4,9
  12:25 13:2,5 15:3,22
  16:11 23:16,23 61:10
  74:2,24 167:16,20
  169:21,25 188:22,25
  190:6,11,15,17 191:5
  191:7,10,11,14,20,25
  192:22 194:4 195:10
**profits**
21:17 191:4
**program**
162:2
**prohibiting**
127:15
**pronouncing**
168:25
**proof**
57:10 176:16 177:9,14
  177:19 182:17 202:22
  215:11
**proofs**
183:10 226:11
**proper**
11:2
**properly**
74:1 76:8 77:8 185:19
  193:13
**property**
83:6
**proportionality**
134:3 137:10 148:19

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 95 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 277

157:15 162:13 168:6
173:8 180:14
**proportionate**
133:25 135:19 158:9
168:11 173:10,11
**proposition**
175:23
**proprietary**
28:11 218:22 220:21
225:5
**prosecuted**
175:9
**prosecutor**
172:16,24
**prospective**
183:14
**prospectively**
174:17
**protect**
35:15 102:15
**protected**
132:7 136:10
**protecting**
137:20
**protection**
132:20 141:5
**protective**
5:7,10 102:15 118:20
124:22 127:14 227:16
227:21 228:7 229:10
229:20 230:7
**prove**
31:6 39:20 50:15
155:25 168:18 172:18
183:6,7
**provide**
19:14 20:20 97:1
114:24 115:5 135:14
142:6 155:18 207:24
217:1 218:18 242:15
243:1,12
**provided**
69:9 83:7 85:24 103:20
103:23 113:1 155:3
186:1 190:5 202:23
217:20 235:23

**provides**
207:8
**providing**
141:17 161:19
**proving**
30:23 231:18
**provisional**
242:24
**public**
5:23 246:8
**publicly**
200:16
**Pull**
52:3
**purchase**
201:24
**purchased**
17:5
**pure**
55:18 212:13
**purely**
212:14
**purist**
54:21
**purported**
11:17 17:1 104:13
105:17 186:2 226:17
**purportedly**
103:16
**purpose**
89:20 152:22 157:13
209:17 240:10,11
**purposes**
52:7 162:14 219:20
**pursuant**
145:18 203:11
**pursue**
118:16 184:17 185:2,2
**pursuing**
38:5
**put**
15:13 26:9 54:1 74:18
79:16 95:4 115:13,14
135:1 141:12 144:6
146:5 150:22 154:20
164:23,24 165:1,8

172:11 176:15,16
186:6 216:11 226:14
**putting**
34:12 97:5 162:22
187:1
**PW**
12:17 145:17 146:15
155:8 189:9,12,15
190:1 192:15 193:14
193:19,23 194:9,11
194:19,22 196:18
**PW-related**
195:3

───────────────

**Q**

**qualification**
105:18
**qualify**
174:8
**quality**
79:7
**quarrel**
107:17
**quarterly**
191:4
**quash**
5:10 126:13
**question**
7:24 14:6 22:7 26:19
48:12 49:8 51:16 55:9
64:8 68:24 110:12
133:5,11 134:23
140:10 144:19 157:14
160:12 162:15,18
164:4 174:3 175:3
190:2,14 208:21
212:11 215:8 227:4
**questioned**
130:9
**questioning**
238:23 239:11
**questions**
43:10 230:19 232:2
234:1
**quick**
162:7

**quite**
187:6
**quote**
174:8 186:15,17,19

───────────────

**R**

**R**
6:1,6 246:1
**raise**
49:10
**raised**
136:18 145:17 146:15
200:5 215:7
**raises**
49:8
**raising**
129:8
**random**
239:13
**rapid**
141:19
**rational**
171:5
**reach**
208:17
**reaction**
94:12
**read**
16:24 84:9 120:19
134:11 137:9,17
139:21 149:2 171:11
181:21 187:1 210:1
230:13 234:21 237:15
**readily**
152:13 153:8 198:20
**reading**
23:12 79:10 172:6
**real**
17:1 47:14 61:24 94:3
**realize**
23:9
**really**
7:5 16:24 27:20 33:1
52:6 66:24 100:16
103:25 104:23 116:7
150:21 163:4 180:5

182:7,12 199:23
222:14 230:6 234:13
**realtime**
5:23 181:24 182:8
199:18
**reason**
8:21 32:20 36:11,12
55:21 98:4 113:14
121:3 135:20 150:4
170:13 187:11 193:10
216:10 235:1 241:7
**reasonable**
140:15 144:16
**reasonably**
83:15 142:24
**reasons**
27:9 48:1 96:20 227:12
**reasserted**
73:1
**recalculate**
159:25
**recalculated**
18:8
**recall**
55:4 129:2 193:25
**receive**
41:23 83:22 188:25
**received**
9:18 16:12 40:17 45:3
46:8,10 64:6 65:7
71:4 77:6 90:22 93:13
93:23 95:2 103:3,7
104:2 117:3 188:13
191:20
**Recess**
80:1 122:15 229:2
**recognize**
156:15 160:3 171:22
222:15 231:15,17
**recognized**
35:2
**recognizing**
89:14 164:11,13
**recollection**
61:4 103:25
**reconcile**

226:22
**reconciliation**
20:21 173:19
**reconstruct**
174:6
**record**
17:18 58:3 59:3 61:13
76:23 80:1 106:25
108:9,10,11 112:17
112:18,19 122:15
126:14,15 136:4
139:6 147:2,3,4
158:23 174:13 176:19
178:24 179:7 182:13
195:1 198:7,9,14,18
204:2,3,10 229:2
245:21 246:12
**records**
16:22 18:22 21:2,10
22:1,2,15 31:5 49:15
49:16 51:1,1,18,21,23
51:25 54:9,12 60:4,6
60:14 61:4,8,12,16
62:8,10,12,23,25
69:11,16 71:19,20
72:4 74:7,17 75:24
92:22 94:5 102:6
112:24 113:2 133:16
134:14,17 138:14
139:9,10 140:3,10
141:8 144:3,4,21,25
145:25 146:10,11,12
146:21 149:13,21
151:25 154:2,5,12
155:22,24 158:16,18
159:16,18 160:15,17
161:22 162:20,24
163:16 166:13 167:1
167:10,13,14,19
168:19,20 169:3,11
170:5,6,11,11,19
171:15,24 172:18,19
172:22 173:1,16,23
174:18,22 175:4,7,10
176:3,3,6,13 179:9,16
182:16,17 183:6

184:13,14 185:17
188:2 191:19 194:15
196:3,4 205:24 206:1
206:2 219:4 220:8,14
220:19 221:16 222:3
222:6,14,24 223:13
223:17,23 224:7,16
224:20 226:7 230:2
**recover**
37:19 53:18 152:23
153:4
**recovered**
153:5
**recovering**
132:3
**red**
141:6
**redact**
102:7
**redacted**
39:5 101:15
**redacting**
100:23 101:1
**redaction**
101:18
**redactions**
108:13
**reduce**
24:14 203:2
**refer**
227:5
**reference**
187:16 207:5 209:23
210:15
**referenced**
11:7 204:20 209:14
**references**
27:22 215:25
**referencing**
205:8 207:2
**referring**
68:9 131:6
**reflect**
17:18 61:17 63:24
72:21 113:4 172:23
176:24 186:2 192:3

226:23
**reflected**
11:3,17 53:11,12 65:8
85:24 111:22 113:11
185:23 190:23 224:7
**reflecting**
47:17 139:10 171:16
195:20
**reflects**
60:7 166:12 220:24
226:16
**refund**
112:1,2,3
**refunds**
111:13
**refute**
206:10
**refutes**
150:1
**regard**
15:2 30:8 69:1 94:20
97:23 106:4 147:6
**regarding**
30:5 47:3 111:9 169:11
242:6
**regardless**
69:20 104:11 109:19
111:13 155:16
**Registered**
5:22
**regularly**
199:15
**regulatory**
154:11
**reinstate**
59:5
**reiterate**
220:2 225:9
**rejected**
199:23 200:6
**relate**
10:21 27:23 94:19
108:25 139:22 140:4
158:19 174:19,23
176:7
**related**

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 97 of 110
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

Page 279

84:13,14 96:4 102:7
140:2 168:19 194:9
205:11 246:13
**relates**
15:4 46:6 47:4 75:17
76:12 83:17 87:1 97:6
100:25 106:6 112:10
130:18
**relating**
40:8 47:12 80:14 89:17
107:13 108:22 113:17
116:16 193:23
**relation**
19:2 30:11
**relationship**
62:3 207:17
**relevance**
37:23 39:6 101:19
108:13 136:14 168:5
171:6 173:8 197:15
**relevant**
11:9 12:14 32:19 36:24
37:1,6 45:8 54:9
55:11,22 94:17 98:5
102:1,12 112:1,5
133:24 135:16 137:7
140:22 141:16 142:8
153:5 155:19 168:11
168:22 169:13 173:9
177:18 188:11 189:20
192:10 194:10,11
195:4,22 200:12
202:16 215:16 216:18
218:3 221:1,17
**reliability**
167:10,14 170:8,12,17
**reliable**
22:12,21 74:8 112:24
153:21 170:20 173:23
185:24 216:11
**relied**
109:11 110:21 141:22
214:23
**relief**
91:15
**relies**

107:16 209:11 216:21
**relitigate**
228:9
**rely**
51:18 60:22 81:6
100:20 109:24 153:17
214:21 215:22 227:6
**relying**
89:23 92:12 110:11,13
216:2
**remaining**
88:14,14 89:18 241:6
**remedy**
25:25
**remember**
56:9 103:9
**remembered**
231:1
**remotely**
168:9 231:9 234:19
235:14
**render**
13:25,25
**repackage**
195:17
**repeat**
31:14 81:2 204:4
**repeated**
138:15
**repeatedly**
46:20 234:7
**repeating**
31:17
**repetitive**
122:5
**rephrase**
88:22 146:7 162:17
**report**
8:23 9:15,19,22 10:1
19:4,5,20 20:8,14,18
20:19,20 23:21 28:21
100:22 104:20,24,25
107:12,15 108:22
109:17,20,23 132:22
142:7 149:2 150:23
155:19 169:21 175:19

175:24 188:11 191:16
199:14 202:21,24
203:5 204:17,21
205:1,8 207:9 208:2
208:18,20 209:10,23
210:1,15 211:20
215:3,23 216:3,4,10
217:2,8 226:1 227:6
**reported**
199:13 246:10
**reporter**
5:22,22,23 34:9,11
**reporting**
236:18
**reports**
10:2,11,16,23 19:1,5
19:15,19 20:11 21:20
22:24,25 23:6,7,15,24
24:1 103:2,18 105:15
109:4,6 139:11
141:17 173:17 187:4
187:5,14,15,16,24
189:17,18 191:23
195:19 199:12
**represent**
27:12 134:24 137:5
166:11 176:19
**representation**
27:14 89:9 123:3
**representative**
2:21,23 19:16
**represented**
12:2 173:13
**represents**
11:21
**request**
26:25 36:13 47:12 80:4
80:13 81:9,24 82:4
83:4 87:1,5 88:13
92:15 93:12 100:11
105:12 117:18 118:11
122:19,20 124:17
129:20 130:2 131:3,7
131:11,15,19 132:14
136:5,16 137:12
138:15 142:15 143:4

143:25 147:6 151:9
157:18 161:15 166:20
167:4,5,6 168:6 171:7
174:1 175:12 177:25
180:5 181:6,12,14
186:6,9 187:1,11
192:15 195:16 197:18
197:20 199:8,9
202:25 203:8,13,21
204:12 205:3,20
206:16 210:9 212:12
214:3,7,8 215:17
219:5 222:24 224:13
227:11,12
**requested**
48:4 132:5 149:20
188:25 190:15 191:20
195:9 199:2
**requests**
31:20 47:12 79:18
122:8 123:15 126:22
127:22 129:3,6,11,23
134:12 136:13 137:16
144:16 156:10 158:6
183:2 189:7 197:21
214:4 227:18,20
228:16 234:6
**require**
36:15 48:11 108:20
143:11,12 167:3
175:12 197:17 209:21
232:9
**required**
69:22 105:19,23
148:15 154:12 186:8
**requires**
163:13
**requiring**
58:25 171:24 183:13
**reservation**
54:7
**reserve**
22:25 47:8 178:11
184:2
**reserving**
51:24

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 98 of 110
Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

Page 280

residence
237:5
resist
27:24
resolution
43:1 47:22 67:14
resolutions
81:10
resolve
18:24 25:21 43:23
  144:3
resolved
41:14
resolving
193:20
resources
213:23 222:16
respect
10:14 12:11 17:14 25:7
  32:15 36:14 40:22
  44:12 45:24 47:9
  48:23 64:3,16 71:2
  72:19 77:23 79:8,11
  79:13 80:21 81:21,21
  83:12,21 89:13 91:25
  94:7 109:5 110:15
  114:4 132:1 143:4
  145:15 169:24,25
  170:21 173:21 176:20
  183:5 184:23 191:13
  192:25 194:18 206:6
  207:11 215:12 219:3
  238:13,17 240:3,16
  240:23 241:14,19
respectfully
111:18 140:24 183:4
respond
33:7 41:19,21 46:11
  65:13 112:12 130:25
  131:14 146:20 147:5
  151:18 161:4 167:23
  186:8 244:4,7
responded
125:21 128:14
responding
49:12 95:15 112:22

113:10 120:14 207:10
  208:10
response
40:1 41:1 43:9 45:7
  49:11 52:9 88:10
  131:5 137:16 138:16
  139:18 161:14 164:3
  178:2 203:17,18
  208:20 215:17
responses
29:22 30:5 31:11,20
  40:17 41:22 50:7 51:9
  54:24 56:18 57:23
  58:18,22 87:13 94:25
  115:9 116:11 126:17
  128:11 131:25 148:6
  218:25
responsibilities
132:1
responsible
135:8
responsive
95:22 136:12 155:14
responsiveness
144:15
rest
124:2 152:2
restoration
162:9
restorations
153:12
restore
146:2 161:8 162:6
  166:8
restored
145:2 148:10 152:14
  153:9 154:20
restoring
161:24
result
12:5 196:12
resulted
11:19
results
24:20 127:21
RET

6:2
retain
222:17
retained
211:13
retired
25:25 27:11
retrospectively
174:17
return
100:24 108:24 111:16
returns
101:2 108:3,15 110:4
  110:16 111:7
reveals
209:11
reverses
200:18
review
28:20 165:2 231:21
  240:19
reviewed
30:19 130:12 149:14
revised
128:23 129:11
revision
9:24
reword
75:11
riddled
113:5 185:16 186:4
right
11:5 13:3 15:9 16:1,7
  17:22 18:14 19:23
  22:25 27:6 29:18
  30:15 31:7,16 38:22
  39:17 40:22 42:17
  50:20 51:24 52:5 53:2
  53:9 55:25 57:19 58:1
  61:2 64:11,24 65:1
  68:23 71:9 72:3 73:17
  74:5,16 75:8 78:17
  81:4 83:22 85:20 90:3
  92:6 93:20 95:13,25
  97:9,16 98:11 99:14
  99:18 105:2,7,14

106:19 107:3 109:12
  110:1,5 112:15,16
  114:11,13,22 115:25
  116:25 118:1,23
  120:6 121:15,19,20
  122:5,20 123:18
  125:13 127:9 128:15
  128:18,20,23 129:16
  130:23 131:1,4
  133:18,20 137:25
  138:23 147:25 161:11
  161:12 163:22 169:4
  169:19 170:2 171:18
  171:21 173:2,5 176:8
  176:11,20 178:4
  180:9 181:5 183:25
  184:21 189:5 190:10
  194:21 196:15 198:3
  201:1 202:10,11
  203:7,15 206:12,19
  207:6 211:14,18,23
  213:1 214:11,25
  217:14,17 221:20
  223:3 225:17,20,22
  231:11 233:21 234:2
  237:18,25 238:4
  241:3 244:8,9
right-hand
17:7
rigorously
199:20
rise
60:15
road
41:25 119:3 153:24
  163:14 172:14 194:24
  210:3
Rockefeller
6:15
role
38:3 132:2
room
134:18 135:2,12 138:8
  138:10,13,25 139:1
  139:17,22,25 140:6
  140:11,12 141:8,12

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 99 of 110
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 281

141:18 142:12 144:6
144:14,22 145:13
146:2,5,11 147:20
148:10 150:23 151:25
154:21 156:17 160:16
164:23,25 165:2
166:14 187:25 188:9
188:15 209:15 216:1
217:2 219:17,23
222:11 236:13
**rooms**
236:17,20
**roughly**
9:10 68:18
**routinely**
94:10
**rule**
8:1 24:12 49:2 99:12
99:16 102:5 104:15
105:19 117:19 133:22
134:2 136:19 137:19
145:1 148:19 173:7
177:17 197:23 213:10
219:14
**ruled**
44:11 45:9 80:11,18
97:12,25 99:13
119:14 185:19
**rules**
101:19 106:4 109:13
140:17,22,23 141:3
155:23
**ruling**
8:6 13:13,16,19 14:3
14:17 39:1,25 40:2,6
45:24 49:1,4 80:21,23
81:20 82:9 91:21
93:22 95:4 96:7
106:17 107:10 109:4
110:15,20 180:24
200:18 201:16 228:24
**rulings**
7:5,6 8:12 14:7,20 38:2
38:20 42:23 127:6,8
127:13 128:6 137:18
**running**

148:22
**runs**
46:14
**RUSSELL**
3:6

**S**

**S**
3:13 6:6
**sake**
34:7
**salient**
142:8
**SANFORD**
3:13
**SARA**
1:18
**satisfied**
216:7
**satisfy**
33:6
**save**
235:8
**saw**
18:25 144:8 245:2
**saying**
17:13 21:18 26:25 32:8
35:6 46:1 53:3 58:15
63:19 74:10 79:5 84:8
90:12 92:7 99:5,8,10
99:22 104:17 113:20
120:22,24,25 121:3,4
121:9,11 142:25
144:5 149:11,12
161:4 166:1 169:2
172:3,16 175:10
208:1 217:8 219:16
230:25 232:10 243:15
**says**
21:12 33:9 42:6 51:6
74:6 75:25 77:8 82:9
82:10,14 83:14 84:10
87:13 88:4 93:4,7,16
96:20,22 98:17
101:12 103:22 113:10
117:5 118:7 142:3

148:21 221:18 224:23
**scale**
196:24
**scanned**
148:9
**scenario**
60:8 75:24 150:7
**schedule**
41:9 42:25 43:14,20
**scheduled**
146:16 239:21,22,24
243:13
**schedules**
41:12 108:15,24 111:8
**scheduling**
9:1 41:17 43:18,21,23
**scheme**
18:11 28:6,25 153:20
218:9 221:11
**scope**
111:12,23 132:16
136:13 145:19 224:9
**Scott**
199:3
**scoured**
154:17 224:19
**screwing**
43:14
**search**
163:7
**searched**
138:24
**SEC**
154:22
**second**
18:16 31:1 34:19 60:8
60:10 83:12 85:17
108:8 129:10 138:4
145:21 146:8 147:15
163:11 164:3 198:12
200:17 204:14 206:25
245:2
**Secondarily**
194:22
**secret**
156:22

**secretary**
233:13
**section**
144:23 145:8 217:12
**securities**
1:4,10 2:2,9,17 3:2,9
3:16 4:3,16 17:5
28:15 120:12 132:19
148:24 159:12 175:7
201:25 207:12,14
223:18
**security**
223:8
**see**
13:12 16:11 26:6 27:17
27:21 28:21 39:25
42:1 46:1 47:9,13
48:8 50:6,16 64:19
66:16 67:13 71:12
77:22 79:22 85:7
95:10,13 102:10
120:13,16 122:11,13
123:12 124:2,3
127:18 129:20 146:6
146:8 147:12 149:3
150:16 153:25 162:6
188:16 203:5 217:8
224:21 230:4 240:4
**seek**
74:18 178:12
**seeking**
33:13 35:18 46:16
107:19 181:12
**seeks**
203:22
**seen**
10:16 44:1 158:23
170:16
**segregated**
190:9 219:21
**SEIMS**
1:18
**selected**
144:5
**selection**
136:7,8

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 100 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 282

self-serving
18:20 149:5
send
17:25 23:5 112:10
    162:5 163:2
sense
8:5 19:3 24:5,19 31:10
    67:16 99:3 127:23
    137:5 152:3 153:21
    162:8 196:24
sensible
161:8
sent
15:6 44:19 45:2 73:11
    144:8 179:11 191:11
    235:15 244:19 245:9
    245:9
separate
104:5 192:16 194:8
    237:8
September
103:10
sequelae
184:1
sequitur
141:7
serve
90:24 157:13
served
8:23 9:15 10:4,6 23:7
    104:3 124:15 125:4,9
    125:10,18,20 128:22
    144:24 192:6 213:10
service
236:18
Services
199:1
set
13:20 21:2 23:14,20
    34:20 73:5 112:14
    126:22 128:20,23
    129:10 135:17 164:11
    170:11 188:8 201:5
    202:17 223:10 234:1
    244:5 246:17
setoff

72:23
sets
16:3
setting
103:15
settlement
155:23
seven-hour
234:24
shadow
226:9
share
34:21
shared
154:24
shares
218:19 223:11
shed
63:11
sheet
223:25
shield
108:19
shielded
213:18
short
79:19 80:5 142:14
    167:2 200:16 231:4
short-term
96:24
shortcuts
214:1
shorthand
5:22 20:17
shots
107:11
show
22:10 33:3,4 37:3 39:4
    76:17 82:12,15,24
    83:1 136:9 165:12
    176:9 220:9,10
showed
134:4 179:17
showing
38:23 39:1,2 170:19
    230:25 232:8

shown
49:14 50:9 133:6,13
    134:25 191:4 225:15
shows
53:24 101:16 158:24
shut
95:4
siblings
232:23
side
11:23 13:14 14:13
    27:15 36:10 58:11
    76:22 114:25 140:5
    143:13 148:23 241:5
sides
7:10 31:24 49:21 94:13
    94:22 107:11 165:16
signature
231:17
signed
40:24 45:3 115:8,10
    233:14,15,15
significance
159:22
significant
221:22
signing
41:6
similar
25:20 30:20 81:13
    154:24 168:8 195:19
    236:19
similarly
25:23 64:16
simple
26:25 163:7
simplify
8:11
simply
48:2 51:24 72:24
    152:17 183:2 199:5
    200:4 207:4 214:23
    226:7
single
70:12 93:3 116:2 139:5
    153:4 157:25 159:25

167:11 171:1,8,10
    180:6 181:8 199:14
    219:21
SIPA
1:2 4:2,16 137:23
    140:25 142:16 190:7
    199:2,24
sir
44:7 76:16 88:2 124:7
    238:20 244:22
sit
231:21
sitting
133:10 134:24 217:4
    228:14
situation
97:20 216:8
six
5:11 23:17 94:5 138:11
six-year
52:15
size
161:6
skipped
189:3
slickly
93:9
slightly
87:17 128:23 129:21
    142:1 171:11
slow
234:13
smaller
24:1
smart
23:2 44:17,21
smarter
226:19
SMB
1:3,12 2:4,10,18 3:4,10
    3:18 4:4,18
smoothly
238:7
so-and-so's
136:25
so-called

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 101 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 283

137:14
**software**
162:2
**sold**
151:14
**solid**
243:4
**solutions**
135:6
**solve**
14:23
**solved**
71:8,23
**solves**
60:17 65:12 67:14 72:2
**somebody**
17:22 20:2 56:12 65:10
112:8 168:17 172:21
174:13 175:9 176:2
181:24,25 182:6
195:8
**somebody's**
175:5 237:2
**somewhat**
40:14
**son**
230:20
**soon**
94:11
**sorry**
22:4 44:13 64:13
125:14 175:22 178:17
189:1 201:18 218:17
233:3
**sort**
7:17 10:11 20:17 22:22
41:13 43:7,9 50:6
80:11 86:2 93:9
102:25 104:13 144:16
173:25 182:7
**sought**
35:10 173:9 229:9
**sound**
79:14 150:6
**sounds**
27:19 40:15 92:8

**source**
103:20 109:16 138:7
138:20 146:4 157:8
**SOUTHERN**
1:1
**speak**
22:25 153:12 225:24
**speaking**
143:11
**speaks**
49:19
**specific**
10:13,14 40:13 53:21
74:15 78:8 94:15
164:9 168:19 177:19
179:5 190:25 191:8
194:6 195:5 209:2,17
212:16 215:24 225:6
227:3
**specifically**
12:17 30:20 36:14 43:3
59:14 67:1 108:25
111:9 130:16 134:16
136:5 145:6 149:18
190:5 192:5 219:18
220:8 227:25
**specificity**
123:15
**specifies**
223:5
**specimen**
19:4 23:21
**speculation**
168:10 212:13
**speculative**
213:15 219:8
**speech**
213:21
**Spell**
9:4
**spend**
31:3 58:4 139:16
**spending**
157:22
**spent**
135:5 139:1

**spit**
226:15
**spoke**
7:3 130:6 131:16
211:13
**spoken**
131:23 211:1
**square**
51:8
**squarely**
132:9 225:25
**ss**
246:4
**stage**
98:23 100:15,17 101:6
178:6,10,11 180:19
180:21 183:22 194:12
197:10
**stand**
172:21 209:7
**standard**
104:14 173:6,7
**standards**
148:20
**standing**
27:13 199:24
**stands**
16:15 18:18
**start**
7:1 21:7 25:19 122:4
124:10 126:16 204:6
221:15,25
**started**
17:13,14 150:19
221:18,19
**starting**
31:11,14 133:21
**state**
5:24 33:18,23 35:5,12
46:9 91:14 120:12
130:8 201:23 205:7
215:19 246:3,8
**stated**
14:15 216:24
**statement**
11:18 21:16 152:17

169:2 171:9 179:18
181:16 188:7,23
225:16 226:2 228:23
**statements**
11:4 18:20 20:24 21:5
21:8 22:5,5,11,13,16
22:22 130:8 173:20
180:3 181:9 184:13
185:23 188:8 190:24
192:2 194:14 195:18
206:4 223:9 226:8,16
226:22
**States**
1:1 35:6 36:4
**stating**
142:4
**status**
164:8
**statute**
85:5 141:1,3
**statutory**
153:6
**step**
24:22 158:6 190:16
225:15
**stick**
43:4
**stip**
74:10
**stipulate**
57:15 58:16 59:19,21
62:21,22 63:3,22
65:19 68:7 187:14
189:13 240:2
**stipulated**
69:1 71:25 115:21
116:6 119:20 123:20
178:24
**stipulates**
187:9 193:18
**stipulating**
63:6 83:25 84:2,16
**stipulation**
14:19 55:3,8 56:14
57:17,25 58:3,23 59:9
59:11 60:17 65:5

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 102 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 284

66:12 71:8,12,23
72:16 74:12 75:15
76:1,12 77:5,20 79:20
86:9 88:20 92:2
113:25 114:4 120:1
238:3 240:13,15
241:10 242:5
**stipulation's**
76:4
**stipulations**
234:5
**stock**
11:17 145:24 149:20
149:22 154:2,4
158:24 159:11 185:24
207:19 220:11
**stocks**
196:11 206:3 218:7
225:4
**stonewalled**
234:7
**strategy**
132:11 191:7
**streamline**
79:23 122:11,13
**Street**
6:9
**stricken**
97:7
**strict**
168:14
**strike**
232:12
**stroke**
230:11
**struck**
8:19 97:11 230:18
**struggling**
31:19
**stuck**
113:13 184:6 231:2
**studied**
95:21
**stuff**
108:2 113:4,6 145:24
**subcommittee**

198:25
**subfolder**
188:3 219:22
**subject**
10:23 18:14 91:6
140:22 145:22 202:20
203:9 215:21 216:18
217:6
**subjecting**
232:4
**submitted**
105:21 128:17
**submitting**
100:4
**subpoena**
29:24 90:24 144:25
145:2
**subpoenaed**
154:7,22 158:17
224:17,18
**subpoenaing**
94:4
**subpoenas**
29:13 213:10
**subsequent**
32:3 35:4 39:11 46:17
64:20 66:20 67:4
78:21 95:19 96:3
112:4 116:12,17,22
117:8 123:1,8
**Subsequently**
204:22
**subset**
190:18 191:15
**substance**
130:8 150:22
**substantial**
138:5 163:13
**Substantively**
1:5 4:2,15
**substituted**
129:5 201:5
**substitution**
129:22
**success**
148:2

**such-and-such**
165:7
**sudden**
216:9
**suddenly**
230:25
**sue**
35:22 36:2 37:19 153:2
193:8
**sued**
38:9,11 39:15 117:15
123:2 168:21 176:22
**sued-upon**
194:19 195:23,25
**sufficient**
33:3 37:3 82:12,15,24
82:25 83:5 183:11
**sufficiently**
91:16
**suggest**
27:17 122:9 156:23
**suggested**
55:1
**suggestions**
63:17
**suing**
38:20 136:25
**suit**
143:14 152:22
**suite**
6:10 236:19
**summary**
141:17 142:7 175:17
207:22,24 208:17
210:18
**supplement**
155:19 217:2
**supplementation**
65:6
**supplied**
104:12
**supplying**
100:8
**support**
88:7,25 91:12 149:14
164:25 191:25 206:9

206:17 207:3
**supported**
149:7
**supporting**
101:14 106:24 176:18
**supports**
15:7 150:1,23
**suppose**
24:16 60:11 75:22
105:4 117:18 118:16
133:12 156:20 164:2
175:8 179:20 190:14
**supposed**
50:16 90:20 104:21
**Supreme**
35:6 36:4 46:15 198:13
**sure**
8:20 9:6 15:11,17
16:23 24:7,24 25:5,12
27:13 29:4,15 30:18
31:15,25 34:5 38:18
43:25 54:20 58:24
73:12 79:21,24 80:9
90:1 92:23 97:17 98:3
100:16 101:25 103:5
104:22 117:20 120:19
122:14,24 124:11
130:16 134:10 137:9
137:19 170:4 175:22
181:5 187:6 211:10
217:19 229:12 235:25
245:1
**suspenders**
41:24
**Swain**
36:18
**sways**
106:16
**switched**
155:9
**sworn**
110:6
**sympathetic**
108:18
**sympathize**
15:18

**system**
179:20 226:14

---

**T**

**T**
4:7 246:1,1
**Tabernacle**
115:22
**tacking**
110:19
**take**
24:4 31:7 35:7,11
39:21 59:25 63:7
64:21 78:2 79:19
82:11 97:15,22 107:3
107:11 109:22 120:22
122:10,12 138:18
155:23 157:1 160:13
162:18,22 163:3
166:7,10 174:10
202:14 229:14 234:15
**taken**
17:4 37:19 53:25 57:10
62:24 78:12 96:22
121:18 136:1,21
158:10,12 165:4
231:6
**takes**
52:13 57:17 148:14
162:15 164:15 235:7
**talk**
30:12 31:10 38:24 70:4
70:14 124:4 128:6
163:23 244:19
**talked**
86:10
**talking**
11:12,14 19:18 23:8
25:13 49:20 52:20
58:21 59:14 67:24,25
68:21 72:6,12 85:18
85:19 87:10 126:9
192:5 205:23 224:10
229:24 244:1
**talks**
74:21 81:9 187:7

---

207:10,16 230:12
**tangentially**
15:4 30:8
**tape**
148:12 162:1
**task**
172:4,5
**tasked**
152:25
**tax**
97:20 100:24 101:1
106:18 107:13 108:15
108:24 110:14,15
111:7 112:3 116:1
**taxes**
96:23 97:2,8 100:5
103:16 104:10 111:8
111:10 112:2 117:11
175:17,18
**Taylor**
132:8
**team**
26:10 157:20 158:17
158:23 160:17 164:1
174:4
**Ted**
21:23 124:17 125:1
136:17 138:9,12
144:2,5 150:21
**Ted's**
125:12,15
**telephone**
7:3
**tell**
24:18 30:11 34:24
39:22 41:10 43:17
46:18 69:3 75:3 88:3
107:9 138:12 139:2
172:13 176:18 225:7
225:21
**telling**
12:20 46:11 116:19
159:23
**templates**
226:11
**ten**

---

89:19 90:10 93:25 95:5
96:9,11 109:7 172:25
**tens**
171:23
**tense**
171:13,13
**tension**
35:2
**tentative**
127:7
**term**
117:21 190:18
**terminal**
145:3 154:18 220:25
226:9
**terms**
19:8 24:11 68:4 133:1
155:24 162:17 163:6
165:23 205:9 222:20
**terribly**
166:3
**territory**
163:5
**testified**
18:3 159:2
**testify**
175:10
**testimony**
17:19 110:6 120:15,17
145:18,20 146:18
149:6,24 150:1
153:18,20 202:8
213:11
**Texas**
6:10
**text**
87:25
**thank**
22:3,13 40:15 70:8
86:23 91:8 167:7
182:11 197:19 210:4
229:1 244:24
**Thanks**
76:19
**theoretically**
189:8

---

**theories**
213:15
**theory**
14:3 186:8 219:8 225:2
**thin**
152:21
**thing**
7:25 8:15 15:16 40:5
45:13 46:18 98:9
99:20 100:2 102:24
105:3 138:4 139:22
150:17 170:3 179:23
235:5 236:4 238:7
**things**
7:14 24:13 31:17 42:18
43:16 69:5 100:12
116:10 141:11 163:9
207:20 212:13,14,19
228:3
**think**
7:12,14,18 8:10 14:23
19:17 21:23 23:25
24:19,25 25:6 26:2
29:8 30:7 31:13 33:24
34:4 35:13,24 36:5,8
36:9,15,17 37:24 43:6
45:9,14 46:13 47:13
47:21 50:1 55:4,14
56:19 57:21 59:2,12
60:15 62:19,25 63:1
66:2,3 68:8 69:6 70:6
70:22 71:9 72:8 73:15
73:21 74:4,11 75:6,14
77:4 78:14,24 80:6,10
80:18,25 81:12 82:8
85:6,20 86:2,16 89:9
91:18 92:1,24 94:13
95:12 97:6,11 99:7
100:1,12 104:18
109:14 110:17 111:20
112:6 113:15,23,24
115:24 117:2,12
118:2,17 119:13,14
119:15,19 121:7,13
122:17,18,23 124:14
127:18 129:14,23

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 104 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 286

130:17 133:2,11,20
134:9,22 135:19
136:19 137:11,16,21
142:1 144:11,15,19
150:3 153:20 162:12
164:18,21 165:5
167:3,21 175:18
176:15 179:6 180:13
180:14,24 181:11
184:3 186:11 192:12
194:7 197:15,22,24
198:17 199:10 201:13
202:15 205:4,19,21
206:20,21 207:25
208:8,12 210:24
211:24 217:7 218:11
223:1 227:18 228:5
228:10 229:5 231:11
237:5
**thinking**
125:3
**thinks**
58:11
**third**
89:25 90:17 93:13,24
150:9 164:14 216:25
**third-**
95:19
**third-party**
21:2,9 29:13 51:1 60:4
62:11 90:19 94:4
112:24 113:2 158:16
160:15 184:14
**thought**
7:1 12:19,21 26:24
29:19 31:9 54:23 66:5
114:5 116:17 147:22
222:22
**thousand**
21:12 163:17
**thousands**
171:23 224:1
**three**
5:2 30:13 63:14 68:21
73:8 91:6 94:15,21
98:22 103:4 114:6,8

163:9 170:16 192:4
221:9 232:23 238:9
238:10
**throwing**
106:17
**Thursday**
244:11,14,20
**time**
19:6 22:18,21 26:13
28:16 31:3,13 33:4
36:24 37:1,4,6 43:23
58:4,6 59:17 60:13
61:21 63:21 69:14,21
72:9 81:15 93:19
105:13 108:21 120:21
139:1,16 145:25
148:14 149:8,24
150:9 151:11 153:16
154:19 157:1 162:15
164:7 171:3,9 173:24
174:7 185:6 195:20
197:18 198:24 199:4
200:4,6 204:8 207:15
217:21 218:5 222:9
231:15 234:20 235:7
235:9,14,25 245:23
**timeline**
103:1
**timely**
100:8 105:22
**times**
23:17 123:25 145:11
**TIMOTHY**
4:9,11
**TOBY**
2:6
**today**
9:14,21 10:19 14:7
19:18 24:12 29:25
52:20 68:25 70:3
79:11 103:22 104:7
128:5 133:10 134:24
155:7 168:2 170:16
183:16,18 185:22
200:9 209:16 217:4
237:14 239:18 240:3

244:5
**token**
101:24
**told**
49:22 119:10 122:4
130:10 174:13,15
188:5 197:4 219:17
**tomorrow**
163:2,9
**topic**
135:1
**total**
218:20
**touch**
134:20
**town**
165:7
**trace**
46:25 91:16
**tracing**
92:3
**track**
152:4 220:9 223:17
**traded**
218:7,20 225:4
**traders**
211:2
**trades**
28:15 139:8 156:11
159:9,12,13,15,17
160:3 211:3,4
**trading**
28:11 61:20,23 138:14
139:5,9,10 140:3
144:3,4,21 145:24
149:21,22 151:25
154:2,4 156:12
158:19,24 159:7,8
160:17 162:20 166:13
185:25 186:2,3 191:6
205:24 206:1,2,5
207:12,14,19 211:14
218:19,23 220:21,24
223:12,14 224:8,14
224:23 225:5 226:12
226:17,24 227:2

**traditional**
175:5
**Train**
4:6,7,8,9,10,11,12 5:4
30:16 31:11,25 32:16
32:25 33:2,9 36:14
40:18 43:2 45:2 49:7
52:4 53:24 54:21
59:14 63:20 64:10,14
64:15,18 66:11,25
68:22 74:23 79:14,18
80:5 89:13,15 96:14
**trans-**
20:22
**transact**
159:13
**transaction**
20:22 67:8 191:8
**transactions**
11:2,3,8 12:4,17 63:23
63:25 102:7 177:7
189:10 193:14 194:20
224:2
**transcript**
5:17 24:15 58:8 81:6
246:12
**transfer**
15:24 48:1,4 52:14
66:9 70:1 79:2 83:8
84:4,6 85:8 98:4
115:17 117:4,9
184:13 188:1 194:15
196:2 241:14,19
**transferee**
34:22 39:11 46:17
64:20,25 65:2 66:20
96:3 116:13,18 117:9
117:15 123:1,2,8
**transferees**
32:5,6 35:4 95:20 96:5
**transferor**
16:10,18 60:13 67:4,18
68:5
**transferors**
32:3
**transferred**

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 105 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 287

67:18
**transfers**
10:13 11:13 46:7,10
47:13 48:21 54:18,22
55:16 56:6,13 60:9
62:5 68:9,12 74:1,22
74:23 78:20,21 83:11
83:16,21 95:19 96:21
136:1 188:13 196:1
**translatable**
7:17
**transparency**
141:21
**transparent**
135:10 157:24
**trauma**
231:24 232:5
**treasure**
166:6
**treasurer**
175:6
**treated**
32:10
**trial**
17:9 51:17 54:10 56:23
56:24 64:2 65:22
72:23 73:1 74:19 75:9
78:18 98:17 110:9
116:7 155:11 174:20
174:21 216:22 230:25
**trials**
75:20
**tried**
7:20 35:15 53:21 58:5
154:8 226:6
**trouble**
175:15
**trove**
166:6
**true**
18:4,19 46:20,23 66:10
71:6 91:24 127:5
150:25 184:9 200:4,5
200:8 246:12
**truly**
239:14

**Trump-like**
108:3
**truncate**
236:2
**Trust**
1:14,16,19 139:13
**trustee**
1:9,16,18 2:1,8,16 3:1
3:8,15 4:1,15 6:9 8:2
8:20 13:21 16:17 17:4
17:23 20:25 26:3 28:5
28:13 30:12 35:9,13
35:18 37:25 38:5,6
49:9,17 51:6,18 53:17
57:7,9 58:9 64:21
67:3 71:16,17,20 72:3
74:6,18 75:21,22
84:16 89:23 90:18
94:2,4 100:13 102:1
106:2 108:1 126:18
132:20 135:4 136:20
137:1 138:1,17 142:6
142:18,19 144:5
152:2,18,25 159:18
159:24 164:23 165:16
165:19 167:11 168:18
170:24 174:21 183:16
193:9,13,17 198:21
199:12 203:20,22
204:12 211:20 212:9
222:19 229:8 232:7
232:15
**trustee's**
5:1,7,11 11:16 18:9
29:3 37:18 42:8 53:15
61:6,15 63:11 73:24
92:12 100:23 107:22
124:6 131:21,25
132:10 134:13 136:25
137:10 139:7,19
141:2 144:13 153:10
167:17 182:16 186:18
186:21 199:15,24
202:7,17 206:10,11
211:1 213:24 241:5
**truth**

151:17 159:24
**try**
7:10 8:17 9:15 24:18
51:18 91:3 162:7
204:23 231:10 242:9
242:25
**trying**
15:13 43:13 46:24 47:1
55:17 99:21 104:19
113:16,24 129:19
155:25 156:1 160:24
179:5 228:22 231:25
**Tuesday**
5:18 146:24 147:7
150:8
**turn**
29:3 36:13 60:19
154:15
**turned**
140:1
**turning**
96:18 129:25
**turns**
180:19
**tweaking**
94:14
**two**
7:9 24:15 27:9 28:17
33:1 37:20 40:17 44:2
51:8 56:8 59:25 63:9
87:20 89:16 91:4
103:6,11 108:24
111:16 122:22 129:3
129:6,23 136:18
144:9 147:14 171:16
181:21 186:10 194:8
221:9 231:2 234:15
**two-paragraph**
208:4
**two-step**
43:7
**two-year**
52:10,14 55:23
**type**
11:8 32:19 33:9,14
161:21 162:1 220:11

**typed**
233:13
**types**
194:8 195:19 227:20
**typical**
20:7
**typically**
101:21 108:13 143:12
230:16 236:9
**typo**
113:14 174:7

_____
U

**U.S.C**
217:12
**U/ART**
1:14,17,19
**ultimately**
41:14 58:15 214:9
**unable**
71:5 112:23
**unannotated**
156:23
**unavailable**
243:8
**unaware**
180:7
**unbelievable**
229:22
**unchartered**
163:5
**undefined**
174:9
**underlies**
16:18
**underlying**
100:14 101:13 102:22
103:19 104:9 106:3
107:15 142:11 187:24
189:18 197:11 207:4
219:11
**understand**
12:22 25:1 32:12 37:9
38:2 41:11 47:2 49:22
52:15 72:5,11 84:1
113:23 140:7 142:15

08-01789-cgm    Doc 14947-1    Filed 01/25/17    Entered 01/25/17 09:57:29    Exhibit A
Pg 106 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 288

143:14 159:22 164:10
164:17 175:2,23
181:6,11 192:18
198:2 208:2 211:11
225:2
**understanding**
12:23 21:25 23:6,21
39:9 160:25 161:6
192:19 209:1 225:23
**understands**
28:5
**understood**
125:25
**undertake**
140:19 153:11
**undertaken**
135:13
**undertaking**
183:15
**undisclosed**
36:12
**unduly**
172:4 202:16
**unfolded**
193:14
**unfolds**
155:8
**unfortunately**
220:17 221:16
**unilaterally**
102:6
**unique**
23:22 97:20 169:1
212:10
**uniquely**
69:12
**unit**
159:5
**United**
1:1 35:5 36:4
**universal**
227:17
**universally**
14:8 192:21
**universe**
22:12 135:15 152:2

168:8 180:15 188:6
**unnecessary**
14:21 41:20
**unprecedented**
134:13 166:23
**unqualified**
239:14
**unredacted**
107:14,18 108:21
109:1
**unrelated**
177:21
**unreliable**
75:9
**unreported**
96:23
**unresolved**
183:1
**unresponded**
151:22
**unsympathetic**
42:5 104:16 213:20,22
**upcoming**
204:20
**update**
164:7 222:8
**updated**
199:5,15,18
**use**
44:5 48:5 94:16 102:17
132:13 147:9,16
179:20 235:16
**useful**
95:9
**useless**
165:24
**user-friendly**
24:18
**usually**
21:9
**utility**
174:11

---
**V**
---
**v**
1:13 2:5,11,19 3:5,11

3:19 4:5,19 5:3,4,4,8
5:12,13,13,14,15,15
5:15 132:8
**vague**
174:9
**valid**
102:18 136:13
**value**
83:6,15,20 84:8,21,25
85:2,21 86:4 218:20
**vary**
232:16
**vendor**
162:6
**vendors**
163:25
**veracity**
110:7
**verbiage**
121:16
**verification**
173:22
**verified**
115:11
**verify**
21:19 111:19 115:12
115:13,15
**vernacular**
44:5
**versa**
34:15
**version**
129:11 156:24 208:4
**versions**
186:10
**versus**
217:13 220:22
**vi**
5:15
**vice**
34:15
**victims**
165:21
**video**
231:10
**view**

38:7 41:13,15 67:4
97:18 106:10 137:4
149:15 151:6,8,14
165:1,21 174:24
**viewing**
100:21
**virtually**
8:6,8 82:9 243:4
**virtue**
77:20 238:2 239:18
**volume**
135:7 142:4 156:15
159:10 218:19 220:10
220:20 223:19
**voluminous**
69:9 149:7
**volunteered**
44:16
**volunteering**
51:14

---
**W**
---
**W**
3:12
**waffle**
239:16
**wait**
39:25 47:9 120:16
191:23 243:21
**waiting**
94:5
**waive**
75:7,12 241:23
**waived**
78:7 204:16
**waiver**
75:10 143:8,23
**waiving**
74:16 84:24 85:3,13
157:12
**walks**
20:2
**wall**
7:13
**want**
15:15 16:10 23:13,20

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 107 of 110
Trustees Motion to Compel Discovery                              Arbitration 12/13/2016

Page 289

| | | | |
|---|---|---|---|
| 24:8 41:25 48:4 54:10 | **ways** | 138:24 139:16 142:13 | 127:3,25 128:4,10,20 |
| 60:22 75:7,10,12 80:7 | 31:21 52:8 168:25 | 144:7 145:10 147:18 | 130:2,17 133:23 |
| 81:7 84:25 85:7 87:23 | 181:21 226:21 | 152:4 155:2 158:7 | 168:1,24 169:2,6,10 |
| 96:2 98:12 100:2 | **wayside** | 167:4,8,10,15 177:5 | 169:17 218:15 227:25 |
| 106:4 110:4 111:25 | 238:2 | 185:21 188:9,13 | **Wilenitz's** |
| 112:7 116:14 118:15 | **we'll** | 213:17 215:25 219:11 | 133:17 |
| 122:24 140:14 143:18 | 13:12 15:12 25:12 | 220:4 224:25 231:6,8 | **willing** |
| 146:19 147:16 151:12 | 31:16 43:11 80:19 | 231:9 234:4 235:3 | 7:13 165:15 237:2 |
| 153:2,3 156:25 | 92:5,12 98:18 119:2 | 236:11 237:3,13 | 240:14 242:4 |
| 159:16,16 179:7 | 129:9 134:11 155:17 | **website** | **window** |
| 192:24 197:24 216:8 | 195:7 200:19 210:2 | 199:16 | 57:24 72:15,17 120:4 |
| 224:8 225:23 243:6 | 217:1,1,2,3 233:20 | **week** | **wish** |
| **wanted** | 236:5 | 42:15 164:4 235:23 | 242:10 |
| 15:24 29:7 49:10 66:5 | **we're** | 242:3,16 243:2 244:4 | **wished** |
| 109:9 218:12 225:12 | 7:13 9:17 12:24 14:17 | **week's** | 187:20 |
| **wants** | 18:24 19:18 21:18,20 | 164:7 222:8 | **wishes** |
| 13:13 25:2 30:12 35:19 | 23:8 24:9 26:21 32:14 | **weekend** | 219:9 221:3 |
| 39:18,22,23 70:4 89:9 | 33:13 36:22 42:18 | 224:22 | **withdraw** |
| 108:2 138:17 | 44:2,21 46:21,24 47:1 | **weeks** | 58:23 59:4,20 75:1 |
| **warehouse** | 48:19 51:12 52:20,24 | 94:5 138:11 174:10 | 78:23 81:13 84:11 |
| 148:7,8 152:5,11 154:1 | 53:5,9,10,14,14,21 | **weigh** | 98:10 113:4 |
| 165:6 | 58:4,21 59:14,18 | 162:10 | **withdrawal** |
| **warn** | 60:16 68:21 72:11 | **WENDY** | 10:24 11:2,15,16 12:4 |
| 23:14 | 78:1,4 81:5 83:11 | 4:12 | 12:10,25 13:2,5 15:3 |
| **warrant** | 84:16 85:19 89:22,24 | **went** | 15:23 23:16,23 56:10 |
| 214:1 | 97:7,14 100:21,22 | 12:5 16:25 46:25 66:6 | 56:10 61:11 64:17,17 |
| **warranted** | 101:3,4,5,5,9 107:2,7 | 102:4 154:6 189:4 | 64:18 65:8 66:10 |
| 210:2 | 107:19 113:16 114:20 | 204:25 232:18 | 69:24 84:7,7,15,22 |
| **wasn't** | 119:15 121:8 124:5 | **weren't** | 167:16,20 169:21,25 |
| 97:17 179:5 223:21 | 129:9,14 133:2 135:8 | 102:7 | 179:18 184:18 188:22 |
| 226:9 | 146:13 153:24 156:15 | **WESTCHESTER** | 190:6,11,17 191:10 |
| **waste** | 160:24 161:13,23 | 246:5 | 191:14,21 192:22 |
| 19:6 | 163:5 164:21 165:5 | **WHEREOF** | 194:4 195:10 |
| **way** | 167:21 171:23 172:20 | 246:17 | **withdrawals** |
| 8:21 42:25 47:6 49:1 | 184:20 192:4 193:11 | **wholly** | 16:4,11 35:23 37:19 |
| 53:2 55:13 68:2 80:21 | 194:5 201:21 218:12 | 108:15 | 49:13 50:9,15 51:5,12 |
| 98:1 99:16 105:4 | 219:16 220:1 222:15 | **widow** | 52:11,25 53:12,22 |
| 107:10 118:24 127:21 | 224:10 229:24 244:5 | 229:14 | 54:6 57:9 59:22 62:6 |
| 137:11 145:14 149:12 | 245:21 | **wife** | 62:22 64:13 74:2,15 |
| 156:13 157:11 165:10 | **we've** | 115:2 230:11 | 74:25 84:9,17 96:22 |
| 165:18 172:6 175:14 | 15:20 38:9 46:19 58:5 | **wild** | 113:11 115:17 116:5 |
| 176:15 193:20 194:1 | 61:9 77:5 80:6 89:1 | 170:25 | 117:10 120:11 169:11 |
| 195:1,9 197:13 | 94:3 95:16 97:13 | **Wilenitz** | 171:17 177:8,22 |
| 208:13,14 211:11 | 100:8 113:1 118:25 | 1:14,15,17,19 5:8 9:13 | 187:10 190:19,21 |
| 230:12 232:1,8 234:9 | 119:23 120:1 123:24 | 10:18 124:12,18 | 191:5,11 192:1 |
| 236:6 239:3 246:15 | 134:17,25 135:12 | 125:7,9,14 126:1,2,11 | 231:19 235:7 |

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 108 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 290

withdrawing
57:3 72:20 98:6,11
withdrawn
59:4 71:4 73:1,4,8,15
 73:21 74:12 77:2,7,13
 87:6 88:23 91:23 92:2
 92:5 179:13
withdraws
106:12
withheld
122:25 123:6,10
withhold
45:15 70:22 77:22 79:5
withholding
45:14 116:15
within-entitled
246:11
witness
17:8 104:12,13 172:20
 213:3 246:17
witnesses
212:25 236:3 243:7,9
woefully
169:12
wondering
19:2
word
28:10 31:22 39:21
 45:20 50:18,18 82:5
 82:17 86:11 113:13
 228:21
wording
94:14
words
45:18 56:23 58:12
 59:21 63:7 150:17
 159:9 186:22,24,25
work
7:10,20 8:17 65:16
 128:8 131:21 132:7
 135:22 136:5,10,15
 137:12,13,14,20
 141:4 142:22 156:13
 156:20 157:5,12
 165:11 204:13 208:16
 210:11,22 212:7

213:17 214:4 239:25
 242:10,14
work-product
132:9
worked
31:21 232:13 234:4
working
25:14 26:7 135:6
works
56:14 244:23
world
149:15 151:5,8 154:7
world's
153:19
worry
23:11 119:4,5 229:23
worrying
184:3
wouldn't
8:10 27:4,6 37:15
 77:19 94:18 131:13
 136:11 176:22,23
 212:4
write
86:8
writing
138:15 191:12
written
36:19 143:20 145:10
 206:21 217:11 232:2
 234:1
wrong
44:24 71:24 75:4
 117:25 122:18 171:19
 182:2
wrote
181:25 196:10
www.madofftrustee....
199:16

_____

            X
_____
X
8:2 58:16 165:7 196:10
 211:13 220:11
_____

            Y
_____

yeah
63:18 81:2 84:23 87:20
 94:1 121:6 123:24
 150:13 245:11,11,18
year
111:13 201:22 214:20
 223:10
years
9:25 36:18 37:20 112:4
 135:6 154:13 157:22
 163:21 174:10 234:5
Yep
25:5
yesterday
26:5
yield
177:3
York
1:1 5:20,20,24 6:4,4,16
 6:16,21,21 159:11
 237:6 246:3,8

_____

            Z
_____

            0
_____
08-01789
1:3

_____

            1
_____
1
44:25 45:6 46:2 47:10
 52:13,23 54:15 55:10
 55:21 63:24 75:17
 80:13 86:15 96:20
 113:17 114:12 123:21
 131:8,15,20 134:18
 135:12 137:25 139:22
 139:25 140:6,11,12
 141:8 142:15 143:4
 143:25 151:25 167:5
 187:25 209:15 210:9
 216:1 217:13 241:11
1,442,181
53:25
1/2
120:21 121:16

10
34:7,15 52:13,23 71:13
 72:7,9,11 90:24
 101:25 118:7 142:1
 159:10 201:3,4,20
10-004621
4:18
10-0454
5:12
10-04541
3:10
10-04621
5:3
10-04644
3:4 5:15
10-04728
3:18 5:4,15
10-04818
2:4 5:13
10-04826
2:18 5:14
10-04905
4:4 5:4
10-04914
2:10 5:13
10-04995
1:12 5:8
10:00
5:20
100
22:17,20,20 170:20
 173:21,24
10018
6:4
10022
6:21
10111
6:16
11
37:22 119:14 120:13
 143:24 201:21 204:13
 205:4,20 215:18
 217:12
1100
6:10
12

08-01789-cgm   Doc 14947-1   Filed 01/25/17   Entered 01/25/17 09:57:29   Exhibit A
Pg 109 of 110
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 291

87:21 119:18 163:21
  210:8 214:3,7
**13**
5:19 72:19 87:1,10,13
  214:8
**14**
73:14 120:10
**14th**
6:15
**15**
73:20 214:18
**15th**
246:18
**16**
77:2 218:16 224:13
  227:12
**17**
27:22 28:3,6 77:4
  158:24 159:3,15
  160:13 222:25 223:1
**18**
77:17 91:11 129:10
  223:8 227:11
**1960**
214:20
**1970**
37:14
**1980**
21:13 61:1 190:24
  222:4
**1980s**
22:14 138:14 139:6
  159:16 160:4 205:25
**1981**
21:3 22:2
**1982**
21:3 160:17 223:10
**1988**
22:1
**1990**
158:18
**1990s**
17:14 150:19
**1992**
18:3,5,7 159:3,17
  160:18,19 162:20

166:13 190:21,25
  221:15,19,21 222:1,4
  224:10
**1993**
37:7,11,17
**1997**
190:23,25
**1998**
49:16,19,24 60:2,3
  62:13,15 71:16

---
**2**

**2**
46:6 47:8,23 98:24
  99:1 167:6 175:13
  177:25 181:1,3 183:4
  183:5
**20**
90:25 242:1
**200,000**
137:1,3
**2000**
214:20
**2001**
181:16
**2002**
154:14 156:4 219:25
  221:17
**2003**
49:23 168:4
**2004**
145:1
**2006**
37:22
**2007**
181:25
**2008**
130:19,24 131:14
  143:20,24
**2009**
15:21 150:15
**2010**
150:14
**2011**
142:2
**2016**

5:19 151:10 246:18
**208**
197:14,16
**20th**
51:6 57:4,5,17 120:3
  146:17,23 244:8
**21st**
244:10
**22nd**
244:10,12,14,21
**23**
93:12
**25,000**
56:9 171:16
**26**
133:22 173:7 177:17
**26's**
148:19
**27th**
76:14 120:5
**28**
95:22
**29th**
91:12

---
**3**

**3**
47:25 54:15 81:9 83:14
  98:24 99:1 112:21
  169:20 181:1,3,6
  183:5 185:12 189:4
  224:4,5 244:15,21
**3,000**
191:17
**300**
197:4,6
**31**
181:15
**33(d)**
219:14
**34th**
6:3
**35**
102:5
**350**
197:2

---
**4**

**4**
52:25 53:11 54:14
  55:14 82:4,8 83:17
  114:17 134:16 141:7
  166:25,25 188:21
  189:3,4 197:18
**4:50**
245:23
**45**
6:15 105:19 213:10
**465**
6:20
**46th**
77:13

---
**5**

**5**
27:22 28:9 34:8,14
  50:3 53:1,7,13 54:14
  55:11,14,22 63:24
  64:4 65:8 70:7 75:18
  86:15 113:17 114:12
  116:13 123:21 149:23
  151:10 156:12 160:13
  181:1,4 185:12,13
  186:10 187:12 189:4
  241:11
**548**
217:12
**548(c)**
84:24

---
**6**

**6**
70:9 78:25 79:8 130:1
  197:20 198:1 199:9
  200:24 201:14
**60**
125:20
**620**
6:3
**64,000**
174:14,19
**680**
5:19

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

| **7** |
| --- |
| **7** |
| 70:21 71:3 |
| **70** |
| 120:20 121:16 |
| **705** |
| 19:1 |
| **77002-6111** |
| 6:10 |
| **78fff-2(c)(3)** |
| 199:25 204:5 |

| **8** |
| --- |
| **8** |
| 113:8 |
| **80s** |
| 60:6,8 230:11 240:8 |
| **81** |
| 190:24 |
| **811** |
| 6:9 |
| **8th** |
| 15:6 |

| **9** |
| --- |
| **9** |
| 83:5 118:5,7 198:1 |
| 199:8 200:25 201:14 |
| **90s** |
| 148:25 |
| **91** |
| 89:14 |
| **92** |
| 7:21 8:3 121:22 137:5 |
| 137:5 174:23 175:13 |
| 177:25 180:16 182:10 |
| 183:17 185:5 196:23 |
| 205:16 207:1 213:23 |
| 228:15 244:1 |