# EXHIBIT A

1  incompetent to do the job, deliberately motivated to
2  misrepresent what was going on in the transactions, that's
3  relevant.
4           THE COURT:  So you can ask him at a deposition.
5  That sounds like expert discovery.
6           MS. CHAITMAN:  No, because I'm...  If the Trustee
7  -- if it's been brought to his attention that the internal
8  records are full of factual errors, I think he has an
9  obligation to disclose that.
10          THE COURT:  I think I disagree.  Let's go through
11 the request...  As I said, you can make a motion to compel.
12 I can't tell you that you can't --
13          MS. CHAITMAN:  Yeah, I'd like to at the end of
14 this, just so we have a clear record of what the rulings
15 are.
16          THE COURT:  All right.  With respect to one, list
17 the name and address...  Well, I don't have to read it.
18 It's in there.
19          MS. CHAITMAN:  Yeah.
20          THE COURT:  I'm looking at Document 63-1.
21          MR. JACOBS:  Right.
22          THE COURT:  Is there an objection to that?
23          MR. JACOBS:  Yes, Your Honor.  This request is
24 like the other...  As the Court pointed out with respect to
25 other requests, this request is essentially seeking our work

Page 30

1    product.

2            THE COURT:  That was my reaction when I saw it.

3            MR. JACOBS:  And I explained to Ms. Chaitman on

4    the phone yesterday that, as she knows, there are

5    potentially upcoming depositions of BLMIS employees

6    happening in the PW context.  She has a right to transcripts

7    of those depositions or to participate.

8            THE COURT:  Does she have the right to ask you who

9    you spoke to?  Forgetting about what they said.

10           MR. JACOBS:  She absolutely doesn't.  That's our

11   investigatory work product.  And any mental impressions, or

12   memos, or notes that we took during our investigation are

13   work product that are shielded from discovery.

14           THE COURT:  Certainly, when you asked for witness

15   statements, that sounded like Hickman v. Taylor, which was

16   the issue in that case.

17           MS. CHAITMAN:  You know what, Judge?  The reason I

18   want to brief that issue is that a SIPA trustee has specific

19   obligations to investigate the debtor and report to the

20   creditor body on what he finds.  And I think that there's a

21   very strong issue there.  This is not a typical adversary.

22   This is an adversary who's appointed pursuant to a federal

23   statute, which was intended to protect the customers.

24           THE COURT:  Well, the same is true of a trustee,

25   as a representative of the estate.

1          MS. CHAITMAN:  I know, but there are SIPA overlays

2  here.  Let's just hypothesize that the Trustee has come to

3  realize that Madoff's internal records are completely

4  unreliable.  Is he then allowed to conceal that information

5  from the Defendants and pursue discovery, asking the Court

6  to rely upon documents that the Trustee has already

7  determined are completely unreliable?

8          THE COURT:  Isn't it really for me to determine

9  whether or not the records...  I assume the Trustee is going

10 to try and prove the cases through the records, whether or

11 not the records are credible.

12         MS. CHAITMAN:  Yes, but wouldn't you be -- you

13 wouldn't be influenced by the fact that the Trustee comes in

14 and says, I've determined -- I found 1,000 errors in this

15 body of documents?

16         THE COURT:  Is it your position that the Trustee

17 can make no mistake in this case?

18         MS. CHAITMAN:  It's not the Trustee's mistake;

19 it's the Madoff records...

20         THE COURT:  No.  No.  Yes, the Trustee has

21 statutory duties under SIPA, but the Trustee is also a

22 litigant.  And I don't think that either as a claim

23 determining person, who's certainly following an objection,

24 or as a plaintiff in an adversary proceeding, that the

25 Trustee has additional duties beyond the ordinary litigation

1  duties to bear his soul and to file a complaint and say, you
2  know, I really don't think that I have a claim here but I'm
3  going to file it.
4           But in any event, I agree that Number 1 sounds
5  like it's work product, assuming it's material prepared in
6  anticipation of litigation, and I realize the Trustee has
7  certain SIPA duties to do this without regard to litigation,
8  but also has litigation duties and it's...
9           MS. CHAITMAN:  All right, so I'd like to brief
10 that issue, Your Honor.  And Number 2 goes to the same
11 issue.
12          THE COURT:  Let me just read this.  I think Number
13 2 is irrelevant and goes beyond the proportionality
14 standards -- the new rules.  If the records in your case are
15 right, it doesn't matter if the other records are wrong.
16 And if the records in your case are wrong, it doesn't matter
17 that all the other records are right.  It's about your case
18 that we're trying.
19          MS. CHAITMAN:  But, Your Honor --
20          THE COURT:  And I don't think that under the
21 federal rules of evidence I can draw -- infer a pattern and
22 practice of negligence or improper record-keeping, which is
23 really what you're asking me to do.
24          MS. CHAITMAN:  Well, I think what I'd like to do
25 is put this in a motion and lay out the rules of evidence.