UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>       Debtor. | |

### THE PICOWER PARTIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO REDACT LIMITED PORTIONS OF THE TRANSCRIPT OF THE DEPOSITION OF BERNARD L. MADOFF TAKEN ON DECEMBER 20, 2016

                              SCHULTE ROTH & ZABEL LLP
                              William D. Zabel
                              Marcy Ressler Harris
                              Michael Kwon
                              Jennifer M. Opheim
                              919 Third Avenue
                              New York, New York 10022
                              (212) 756-2000

                              *Attorneys for the Picower Parties*

                              FILED UNDER SEAL

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................4

    A.    The Orders Authorizing Depositions in the Profit Withdrawal Actions ..........4

    B.    The Second Madoff Deposition Order .................................................................5

    C.    The Day 1 Transcript Contains Testimony Related to the Picower Parties ..................................................................................................................8

ARGUMENT ....................................................................................................................................9

I.    The Irrelevant Portions of the Day 1 Transcript Related to the Picower Parties Should Be Redacted ..................................................................................................9

    A.    The Day 1 Transcript Is Not Subject to a Presumption of Accessibility Because It Is Not a Judicial Document ...............................................................10

    B.    The Balance of Competing Considerations Weighs in Favor of Redacting ...13

CONCLUSION ...............................................................................................................................16

FILED UNDER SEAL

## TABLE OF AUTHORITIES

**Cases**                                       **Page(s)**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
   No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ........................13

*Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*,
   413 B.R. 115 (Bankr. S.D.N.Y. 2008),
   *aff'd*, No. 09 Civ. 1636 (PKC), 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009) ..........................9

*Marshall v. Madoff*,
   No. 15 mc 56 (JGK), 2015 WL 2183939 (S.D.N.Y. May 11, 2015)............................................2

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978)..................................................................................................................14

*Picard v. Marshall*,
   No. 14-01840 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014)..............................2

*Picard v. Picower*,
   No. 09-1197 (BRL), 2011 WL 10549389 (Bankr. S.D.N.Y. Jan. 13, 2011)..............................2

*Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*,
   No. 13 Civ. 1654 (RA) (HBP), 2015 WL 4298572 (S.D.N.Y. July 15, 2015)........................12

*S.E.C. v. TheStreet.com*,
   273 F.3d 222 (2d Cir. 2001)............................................................................................*passim*

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   No. 07 Cv. 2014 (SWK), 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008) ....................................11

*Sterbens v. Sound Shore Med. Ctr. of Westchester*,
   No. 01 CIV. 5980 (SAS) (KNF), 2001 WL 1549228 (S.D.N.Y. Dec. 5, 2001)......................14

*Stern v. Cosby*,
   529 F. Supp. 2d 417 (S.D.N.Y. 2007).......................................................................................11

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.*,
   No. 3:11-CV-1209 (CSH), 2013 WL 4012772 (D. Conn. Aug. 5, 2013)................................11

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir.1995).........................................................................................10, 11, 14

*United States v. Sattar*,
   471 F. Supp. 2d 380 (S.D.N.Y. 2006).......................................................................................14

FILED UNDER SEAL

*United States v. Silver*,
    No. 15-CR-93 (VEC), 2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016) ............................... 13-14

*United States v. Smith*,
    985 F. Supp. 2d 506 (S.D.N.Y. 2013) ............................................................................ 11

FILED UNDER SEAL

Pursuant to the Order Authorizing the Deposition of Bernard L. Madoff (ECF No. 14213), as modified by the Order Authorizing the Continued Deposition of Bernard L. Madoff (ECF No. 14905) (collectively, the "Orders"), the Picower Parties[1] respectfully submit this Memorandum of Law in support of their Motion to Redact Limited Portions of the Transcript of the Deposition of Bernard L. Madoff Taken on December 20, 2016 (the "Day 1 Transcript"). A copy of the Day 1 Transcript as provided to the Picower Parties' counsel is attached as Exhibit 1 to the Declaration of Marcy R. Harris, dated February 3, 2017, submitted concurrently herewith. The limited portions of the Day 1 Transcript that the Picower Parties seek to redact are listed in Exhibit 2 to the Harris Declaration and are reflected in a proposed redacted version of the Day 1 Transcript, which is attached to the Harris Declaration as Exhibit 3.[2] (Subject to Court authorization, this Memorandum and the Exhibits to the Harris Declaration will be filed under seal to comply with the confidentiality provisions under the Orders.)

## PRELIMINARY STATEMENT

The Picower Parties bring this motion to prevent Madoff's December 20, 2016 deposition testimony from being used improperly to frame a seventh complaint against them, to protect their privacy interests, and to prevent reputational harm to them and to Jeffry M. Picower ("Picower"), who is deceased. As this Court is aware, for more than seven years, Helen Davis Chaitman, Esq., on behalf of the Fox Plaintiffs,[3] and other counsel on behalf of the Goldman

---

[1] The "Picower Parties" refers to Capital Growth Company, Decisions Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower.

[2] To avoid litigation over the proposed redactions, the Picower Parties provided Exhibits 2 and 3 to Ms. Chaitman and the Trustee's counsel to determine if they would consent to the limited redactions sought herein. The Trustee's counsel responded that the Trustee does not object to the redactions. Ms. Chaitman, however, objects to them.

[3] The "Fox Plaintiffs" refers to Adele Fox, Susanne Stone Marshall, Marsha Peskin and Russell Oasis.

1

FILED UNDER SEAL

Plaintiffs,[4] have tried to assert class action claims against the Picower Parties not barred by this Court's Permanent Injunction,[5] which enjoins claims against the Picower Parties that are "duplicative or derivative" of claims that the Picower Parties settled with Irving H. Picard (the "Trustee"), as Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Estate of Bernard L. Madoff ("Madoff"). To date, no fewer than six complaints have been asserted against the Picower Parties. All of those complaints (other than the Fox III complaint pending before this Court) have been enjoined as being duplicative or derivative of the Trustee's claims.[6] The numerous unsuccessful efforts to sue the Picower Parties "have resulted in largely duplicative pleadings, caused enormous expense to the Trustee and the Picower Parties . . . , and [have been] time-consuming to all including the Court." (*Picard v. A & G Goldman P'ship*, Adv. Pro. No. 14-02407 (SMB) (Bankr. S.D.N.Y.), ECF No. 42 at 35.)

In addition to trying to sue the Picower Parties, Ms. Chaitman repeatedly has tried to depose Madoff to uncover facts to be used to state a non-derivative claim against the Picower Parties. All of those efforts, too, have been rejected,[7] as there is no basis to permit pre-complaint discovery against the Picower Parties.

Mindful of the many attempts to sue the Picower Parties and to take pre-complaint discovery from Madoff about Picower and the Picower Parties, and in response to

---

[4] The "Goldman Plaintiffs" refers to Pamela Goldman and A &G Goldman Partnership.

[5] The "Permanent Injunction" refers to the Order entered by this Court on January 13, 2011 in *Picard v. Picower*, Adv. Pro. No. 09-01197, ECF No. 43 (Bankr. S.D.N.Y. Jan. 13, 2011).

[6] Most recently, on January 24, 2017, the District Court affirmed this Court's decision enjoining the Goldman III Complaint. *A & G Goldman P'ship v. Capital Growth Co.*, No. 1:16-cv-2058-GHW, ECF No. 45 (S.D.N.Y. Jan. 24, 2017.

[7] *See Picard v. Picower*, No. 09-1197 (BRL), 2011 WL 10549389, at *3 (Bankr. S.D.N.Y. Jan. 13, 2011); *Marshall v. Capital Growth Co.*, No. 10-80252 (S.D. Fla.), ECF Nos. 38, 58; *Picard v. Marshall*, Adv. Pro. No. 14-01840 (Bankr. S.D.N.Y.), ECF No. 55; *Picard v. Marshall*, No. 14-01840 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014); *Marshall v. Madoff*, No. 15 mc 56 (JGK), 2015 WL 2183939, at *3 (S.D.N.Y. May 11, 2015).

FILED UNDER SEAL

concerns by the Picower Parties that Ms. Chaitman might try to elicit testimony from Madoff concerning the Picower Parties in cases unrelated to the Picower Parties, this Court has entered orders imposing specific scope and use restrictions on deposition testimony of Madoff and former BLMIS employees, conducted by Ms. Chaitman and the Trustee, related to profit withdrawals from BLMIS (the "PW testimony"). More recently, the Court issued orders containing substantially the same scope and use restrictions on deposition testimony of Madoff, also conducted by Ms. Chaitman and the Trustee, related to the Trustee's claims against certain BLMIS customers (the "Good Faith Defendants"), many of whom are represented by Ms. Chaitman.

In particular, to prevent Ms. Chaitman or any other counsel from using Madoff's testimony taken on behalf of the Good Faith Defendants for the improper purpose of framing a new complaint against the Picower Parties, in the Orders, this Court directed that at Madoff's deposition, (i) counsel may not ask questions about Picower and/or the Picower Parties, except for the limited circumstances in which the questions directly relate to the specific topics authorized by the Court, and (ii) the transcripts of the depositions cannot be used by anyone in any proceeding against the Picower Parties. The Court also provided a procedure to keep the transcripts confidential pending a final decision on any motions to strike, seal and/or redact any portions of the transcripts that improperly concern Picower and/or the Picower Parties.

The Picower Parties now bring this motion to redact very limited portions of Madoff's testimony in the Day 1 Transcript. The narrowly-tailored requests would prevent public disclosure of certain questions and answers that violate the Court's Orders authorizing Madoff's deposition, as well as gratuitous questions by Ms. Chaitman and conclusory statements by Madoff concerning Picower and/or the Picower Parties that are irrelevant to the Trustee's and

3

the Good Faith Defendants' disputes. If the Day 1 Transcript were released without the requested redactions, we anticipate that the gratuitous statements and conclusory testimony would find their way into yet another complaint against the Picower Parties, would embarrass the Picower Parties, who are non-parties to the Trustee's disputes with the Good Faith Defendants, and would cause the Picower Parties reputational harm. For those reasons, as discussed herein, and because the proposed redactions would not interfere either with the Trustee's claims or with the Good Faith Defendants' defenses, the Picower Parties seek an order granting the requested relief.

## BACKGROUND

### A. The Orders Authorizing Depositions in the Profit Withdrawal Actions

In connection with her representation of one of the Good Faith Defendants, Ms. Chaitman filed a motion to depose Madoff. (ECF No. 12799.) The Court allowed that deposition but imposed scope and use restrictions on it to exclude questions and answers about Picower, the Picower Parties and their BLMIS accounts, and to prevent Madoff's testimony about Picower from being used in any proceedings against the Picower Parties. (ECF No. 13060 (the "PW Deposition Order").) The PW Deposition Order also outlined a procedure to file "requests to strike and/or redact any questions or answers in the transcript concerning . . . Jeffry M. Picower, any of the Picower Parties or their agents, or any accounts held by or on behalf of any of the Picower Parties." (*Id.*)

On June 15, 2016, Madoff's deposition was taken pursuant to the PW Deposition Order. No requests were made to strike or redact any portions of Madoff's PW deposition transcript. Thereafter, the Court issued substantively similar orders authorizing the PW depositions of certain other BLMIS employees and imposing the same scope and use limitations

4

FILED UNDER SEAL

on the transcripts of those depositions. (*See* ECF Nos. 13240, 13241, 13358.) No requests were made to strike or redact any portions of the PW deposition transcripts of the BLMIS employees.

### B. The Second Madoff Deposition Order

On July 7, 2016, Ms. Chaitman filed a motion seeking a second deposition of Madoff (the "Second Madoff Deposition Motion"), arguing that a second deposition of Madoff was needed to resolve the factual dispute over "when the fraud began" and "to know the portion of legitimate trading activities at Madoff as compared to the illegitimate activities." (ECF No. 13605 at 4.) Other Good Faith Defendants joined in the request to depose Madoff in connection with those issues, among others. (ECF Nos. 13814, 13825, 13839, 13840, 13841, 13844.)

During oral argument on the Second Madoff Deposition Motion, Ms. Chaitman acknowledged that "we're not entitled to take discovery in order to supplement a complaint against the [Picower Parties]." (ECF No. 13967 at 6.) Ms. Chaitman assured the Court that "I won't ask questions, nobody I think is going to ask questions about Mr. [Picower]." (*Id.* at 7.) Ms. Chaitman stated if Madoff testified about Picower, "[t]he simple way to deal with that is to simply enter an order saying anything that he testified to in his deposition cannot be used to frame a complaint against the [Picower Parties]." (*Id.*)

During oral argument, the Court stated that Madoff can testify about the Picower Parties "if that's relevant to when the Ponzi scheme began," but "[w]hat you can't do is ask questions about . . . what did [Picower] do in 1993 and what did he do in 1994 and things like that, because that's well beyond the scope of it and I think the [Picower Parties] have a legitimate objection on that basis." (*Id.* at 31.) The Court further stated that Madoff may testify as to how the fraud was started "[a]s long as he's not asked questions about what did [Picower] do" or "how did [Picower] aid and abet it." (*Id.* at 34.)

5

FILED UNDER SEAL

After oral argument, the parties stipulated to the Order Authorizing the Deposition of Bernard L. Madoff, which the Court entered on September 29, 2016 (the "Second Madoff Deposition Order"). (ECF No. 14213.) The Second Madoff Deposition Order provided for a two-day deposition of Madoff. The first day was to be limited to the following topics (the "Day 1 Deposition Topics"):

1. The trading activities of Madoff's market making and proprietary trading units during the period prior to January 1, 1992 and thereafter.

2. The trading activities for Madoff's investment advisory customers prior to January 1, 1992 and thereafter.

3. The number of employees, profitability, and revenue-generating activities of each Madoff unit in the period prior to January 1, 1992 and thereafter.

4. The nature, extent and scope of Madoff's legitimate and illegitimate activities at various time periods, including, inter alia, when Madoff began operating a "Ponzi" scheme and how it came about that he began operating a "Ponzi" scheme.

5. The extent to which different trading strategies were involved with legitimate or illegitimate activities.

6. The record-keeping procedures of each unit of Madoff's operations, including but not limited to records indicating the purported purchase and sale of securities and the purported allocation of securities to investment advisory customers.

7. The interpretation of Madoff's or BLMIS' account records, including but not limited to monthly account statements.

Under the Second Madoff Deposition Order, the second day of the deposition is to be limited to specific topics that the parties are to propose within 21 days after all counsel receive the transcript and that the Court must authorize. (*Id.*)

The Second Madoff Deposition Order, like the prior orders, limited attendees at the Day 1 deposition to Madoff, Madoff's counsel, two attorneys for the Trustee, and two attorneys for the Good Faith Defendants (collectively, the "Authorized Counsel"). It also limited

the scope of Madoff's deposition by prohibiting "any questions beyond the scope of the Court-approved Day 1 and Day 2 Deposition Topics, including any questions about . . . Jeffry M. Picower, the Picower Parties or their agents, or the Picower Parties BLMIS accounts." (*Id.*) The Second Madoff Deposition Order further provided:

> To the extent Madoff testifies regarding Jeffry Picower, the Picower Parties, or their BLMIS accounts in responding to questions on any of the Day 1 or Day 2 Deposition Topics, Authorized Counsel may follow up with questions concerning Picower and/or the Picower Parties only to the extent that such follow up questions directly relate to the Day 1 or Day 2 Deposition Topics. However, Authorized Counsel may not use any testimony by Madoff regarding Picower to deviate from the Day 1 or Day 2 Deposition Topics, including but not limited to by inquiring about Picower's conduct that is not directly related to the Day 1 or Day 2 Deposition Topics.

(*Id.*) The Second Madoff Deposition Order also limited the use of the transcripts by providing that the transcripts "shall not be used by any person or entity for any reason as it relates to the Picower Parties, including but not limited to in any pending or future litigation that may be brought against the estate of Jeffry M. Picower, the Picower Parties or their agents, or any related person or entity." (*Id.*)

Of particular relevance here, the Second Madoff Deposition Order provided a procedure whereby counsel to the Trustee, the Good Faith Defendants, the Picower Parties, and SIPC may seek to seal, strike or redact any portion of the Day 1 Transcript, including "any questions or answers in the Transcripts concerning . . . Jeffry M. Picower, the Picower Parties or their agents or related parties, or any BLMIS accounts held by or on behalf of any of the Picower Parties." (*Id.*)

7

FILED UNDER SEAL

Ms. Chaitman, the Trustee and the Picower Parties stipulated to the Second Madoff Deposition Order, and none of the Good Faith Defendants objected to it.[8]

### C. The Day 1 Transcript Contains Testimony Related to the Picower Parties

Despite the prohibition in the Second Madoff Deposition Order on questions and testimony about Picower and the Picower Parties not directly related to the Day 1 Topics, Ms. Chaitman and Madoff, in the Day 1 Transcript, occasionally veered into prohibited areas about Picower and/or the Picower Parties.



---

[8] Because Ms. Chaitman did not complete her questioning of Madoff on the Day 1 Topics and the Trustee did not have an opportunity to cross-examine Madoff, Ms. Chaitman, the Trustee and the Picower Parties stipulated to the Order Authorizing the Continued Deposition of Bernard L. Madoff, which authorizes the continuance of Madoff's deposition on the Day 1 Topics for two additional days of testimony. That Order gave the Picower Parties until February 3, 2017 to move to strike, seal or redact any portion of the December 20, 2016 installment of the Day 1 Transcript. (ECF No. 14905.)

FILED UNDER SEAL

By this Motion, the Picower Parties seek an order approving very limited redactions from the Day 1 Transcript to prevent disclosure of the improper, conclusory and gratuitous questions and testimony about Picower and/or the Picower Parties that is listed in Exhibit 3 of the Harris Declaration. Such testimony, which is not related to the dispute between the Trustee and the Good Faith Defendants and, in part, was prompted by improper questions by counsel, would be highly prejudicial to the Picower Parties if disclosed.

## ARGUMENT

### I. THE IRRELEVANT PORTIONS OF THE DAY 1 TRANSCRIPT RELATED TO THE PICOWER PARTIES SHOULD BE REDACTED

The portions of the Day 1 Transcript concerning Picower and/or the Picower Parties that are not directly related to the Trustee's claims or to the Good Faith Defendants' defenses should be redacted pursuant to the Second Madoff Deposition Order. The redactions are needed to prevent Ms. Chaitman and others from trying to use Madoff's testimony to frame another complaint against the Picower Parties, to protect the Picower Parties' privacy interests, and to prevent reputational harm to the Picower Parties. The narrowly-tailored redactions sought herein will not interfere with the Trustees' pending actions against the Good Faith Defendants because the testimony to be redacted is not directly related to the factual disputes between the Trustee and the Good Faith Defendants over when Madoff began his fraud. Conversely, without these redactions, the Picower Parties would be prejudiced.

The Second Circuit uses a multi-step analysis to determine whether redacting is appropriate. *See S.E.C. v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001); *accord Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*, 413 B.R. 115, 118 n.1 (Bankr. S.D.N.Y. 2008) (using same multi-step analysis in Bankruptcy Court), *aff'd*, No. 09 Civ. 1636 (PKC), 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009). First, the Court must determine whether the document is a

"judicial document" which "deserve[s] a presumption in favor of access." *S.E.C.*, 273 F.3d at 231. As the Second Circuit noted, there is a "long established, but not absolute common law right of public access to 'judicial documents.'" *Id.* (citations omitted). Nevertheless, "[w]ith respect to all judicial documents, . . . it is proper for a district court, after weighing competing interests, *to edit and redact* a judicial document in order to allow access to *appropriate* portions of the document." *Id.* (first emphasis added).

Second, the Court must "determine the weight of the presumption of public access by evaluating 'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* at 232 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995)). "Documents that play no role in the performance of Article III functions, *such as those passed between the parties in discovery*, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (emphasis added; alterations and citations omitted).

Third, the Court must balance "competing considerations," which include "the danger of impairing . . . judicial efficiency" and "the privacy interests of those who resist disclosure." *S.E.C.*, 273 F.3d at 232. According to the Second Circuit, "the privacy interest of those who resist disclosure . . . should weigh heavily in a court's balancing equation." *Id.* (quoting *Amodeo*, 71 F.3d at 1051).

### A.   The Day 1 Transcript Is Not Subject to a Presumption of Accessibility Because It Is Not a Judicial Document

The Day 1 Transcript is not a "judicial document." The Second Circuit has defined "judicial documents" as "items filed with the court that are relevant to the performance

10

FILED UNDER SEAL

of the judicial function and useful in the judicial process." *S.E.C.*, 273 F.3d at 231 (alterations omitted). According to the Second Circuit, deposition transcripts – such as the Day 1 Transcript – are not judicial documents because "deposition discovery material" are "[d]ocuments that play no role in the performance of Article III functions." *Id.* at 233; *accord Stern v. Cosby*, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (Chin, J.) (deposition transcript and videotape are not "judicial documents" because they are "merely materials generated in discovery"); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012772, at *10 (D. Conn. Aug. 5, 2013) ("[T]ranscripts of deposition testimony . . . are not judicial documents to which the public has a presumptive right of access.").

The Second Circuit has held that documents generated in discovery are not subject to any presumption of accessibility. *Amodeo*, 71 F.3d at 1050 ("Documents that play no role in the performance of Article III functions, *such as those passed between the parties in discovery*, lie entirely beyond the presumption's reach . . . .") (emphasis added). "Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges), courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible." *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) (internal quotation marks omitted). Thus, "there is no right of access to discovery materials" because discovery "is usually conducted in private." *Id.*; *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Cv. 2014 (SWK), 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008) ("Because the non-judicial documents . . . were exchanged in discovery but never filed with the Court, they carry no presumption of public access under either the common law or the First Amendment . . . ."). "Put simply, the public has

no constitutional, statutory, or common-law right of access to unfiled discovery." *Travelers*, 2013 WL 401277, at *11.

Here, as the Second Circuit has held, the Day 1 Transcript should not be subject to a presumption of access because it is "deposition discovery material" that "play[s] no role in the performance of Article III functions." *See S.E.C.*, 273 F.3d at 233. Moreover, even if the Trustee or any of the Good Faith Defendants seek to use the Day 1 Transcript as evidence in support of a dispositive motion or at trial, the very limited and narrowly-tailored redactions the Picower Parties seek herein will not interfere with the parties' use of the Day 1 Transcript. In fact, the statements to be redacted concerning Picower and the Picower Parties are the very type of statements that this Court barred in the Second Madoff Deposition Order.

As discussed below in Part I.B, the testimony that the Picower Parties seek to redact is not related to the Trustee's disputes with the Good Faith Defendants concerning when Madoff's fraud began. *See Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA) (HBP), 2015 WL 4298572, at *5 (S.D.N.Y. July 15, 2015) ("the presumption of access to these documents is low, because the redacted information is minimally relevant to the parties' claims and does not appear necessary to or helpful in resolving the motion"). Accordingly, even if the Day 1 Transcript eventually becomes a "judicial document," the limited redactions sought herein will not interfere with the performance of any Article III functions. Rather, if the redactions requested herein are granted, the Trustee and the Good Faith Defendants still will have full access to all of Madoff's relevant testimony concerning when and how he began his Ponzi scheme, without publicly disclosing the irrelevant and improper portions relating to Picower and/or the Picower Parties. As such, even if the Trustee or the Good Faith Defendants later seek

FILED UNDER SEAL

to use the Day 1 Transcript – in its redacted form – as a judicial document, the redacted version will not interfere with the adjudicatory function of this or any Court.

### B. The Balance of Competing Considerations Weighs in Favor of Redacting

The balance of competing considerations weighs in favor of redacting the limited irrelevant information relating to Picower and/or the Picower Parties in the Day 1 Transcript.

On the one hand, as a First Amendment concern, courts generally favor open public access to information. Moreover, the Trustee and the Good Faith Defendants admittedly have an interest in access to Madoff's testimony in their pending actions.

On the other hand, the very limited portions of the Day 1 Transcript that the Picower Parties seek to redact violate the Court's order relating to scope and do not relate to the Trustee's dispute with the Good Faith Defendants over when Madoff's fraud began. However, if those few portions of the transcript that concern Picower and the Picower Parties are not redacted, the Fox and Goldman Plaintiffs may attempt to use those portions to try to frame a new complaint against the Picower Parties, who are non-parties to the pending actions. *See Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (finding that "the presumption in favor of public access is weak" where movant Samsung "is a non-party to this litigation," pending motion "will not be directed at [non-party] Samsung," disclosure "could adversely [a]ffect Samsung," and "there is no indication that the information in these documents is relevant to the claims asserted").

In addition, disclosure of this limited testimony could cause serious reputational harm to the Picower Parties and could invade their privacy. *See, e.g., S.E.C.*, 273 F.3d at 232 (identifying privacy interests of those who resist disclosure is "countervailing factor" in balancing competing considerations between disclosure and non-disclosure); *United States v.*

13

FILED UNDER SEAL

*Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *6 (S.D.N.Y. Apr. 14, 2016 ) (granting "narrowly tailored" redactions where "[d]isclosure risks greater prejudice to the [non-party movants]" and the "degree of injury to the [movants], specifically to their . . . professional reputations, is not insignificant" and where, as non-parties, movants "did not have an opportunity to respond officially to the assertions"); *United States v. Sattar*, 471 F. Supp. 2d 380, 388 (S.D.N.Y. 2006) (permitting redactions of portions of document in interest of privacy); *Sterbens v. Sound Shore Med. Ctr. of Westchester*, No. 01 CIV. 5980 (SAS)(KNF), 2001 WL 1549228, at *3 (S.D.N.Y. Dec. 5, 2001) (ordering redactions of portions of memorandum on privacy and prejudice grounds).

In particular,  is not relevant to *when* Madoff began his Ponzi scheme or any of the other Day 1 Deposition Topics. Yet such conclusory and speculative testimony, if it became public, would cause serious reputational harm to the Picower Parties, who are non-parties to the pending disputes, and to Picower, who is unable to defend himself against such claims. It is well established that courts have the power "to insure that its records are not used to gratify private spite or promote public scandal," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and that "[c]ourts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure," *Amodeo*, 71 F.3d at 1051.

This Court should exercise its power here and enter an order directing that Ms. Chaitman's questions and Madoff's testimony are to be redacted. Under such an order, the parties still would have full access to Madoff's testimony as to the purported reasons why he

began his Ponzi scheme, and when, yet the Picower Parties would be protected from the prejudice that would result from Ms. Chaitman's questions and Madoff's speculative assertions that █████████████████████████████████████████

Similarly, Ms. Chaitman's questions about and Madoff's testimony as to ██████ ████████████████████████████████████████████████████████████████ ████████████ also is not relevant to any of the Day 1 Deposition Topics, but Ms. Chaitman and others may attempt to use this testimony to conjure a claim that ████████████████ ████████████████. The Trustee and the Good Faith Defendants have no need for that testimony because ████████████████████████████████████████████ ████████ is not related to the factual dispute over when or why Madoff began his fraud. By contrast, if that testimony is not redacted, the Picower Parties could be prejudiced because potential plaintiffs may attempt to use that testimony against them.

Madoff's conclusory and gratuitous statement about ████████████████ ████████████████████████████ also is wholly irrelevant to any of the Day 1 Deposition Topics. ████████████████████████████ does not address when the fraud began, particularly in the context in which such testimony appears in the Day 1 Transcript. However, the Picower Parties would be prejudiced if that testimony is not redacted because █ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████. Public disclosure of Madoff's testimony also would result in reputational harm to Picower, who is unable to defend himself.

In addition, Madoff's testimony that ████████████████████████████ ████████████████████████████████████████████████████████████████

15

██████████████████████████████████████████████████████████ is completely irrelevant to the pending dispute concerning when the fraud began. It is also speculative on Madoff's part and plainly would result in reputational harm to the Picowers. Besides, ████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

## CONCLUSION

For the foregoing reasons, the Picower Parties respectfully request that the Court grant their motion to redact the portions of Madoff's Day 1 Transcript listed in Exhibits 2 and 3 to the Harris Declaration and discussed herein.

Dated: New York, New York  
February 3, 2017

**SCHULTE ROTH & ZABEL LLP**

By: /s/ Marcy Ressler Harris
    William D. Zabel
    Marcy Ressler Harris
    Michael Kwon
    Jennifer M. Opheim
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for the Picower Parties*

16

FILED UNDER SEAL