大成 DENTONS

**Carole Neville**
Partner

carole.neville@dentons.com
D    +1 212 768 6889

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

大成  Salans FMC SNR Denton McKenna Long
dentons.com

March 1, 2017

**Via E-Mail**

Honorable Judge Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:   *In re Bernard L. Madoff - Case No. 08-01789 (SMB)*
      Irving H. Picard v. David Markin - Adv. Pro. No. 10-05224 (SMB)

Dear Judge Bernstein:

This is a request for a conference in advance of the filing of a motion for summary judgment with respect to the defense of a subsequent transferee pursuant to section 550(b)(1) of the Bankruptcy Code.  As shown below, there is no dispute about the material facts and the Defendant, David R. Markin ("Mr. Markin"), now the estate of David R. Markin[1], is entitled to judgment as a matter of law.

**THE COMPLAINT**

This adversary proceeding originally involved several accounts held in Bernard L. Madoff Investment Securities LLC ("BLMIS") by different trusts and Mr. Markin.  In his amended complaint dated January 25, 2012 (the "Complaint"), the Trustee asserted claims to avoid transfers under New York State and bankruptcy law against Mr. Markin, as trustee of the David Markin Charitable Remainder Unitrust #1 ("CRUT #1") and the David Markin Charitable Remainder Unitrust #2 ("CRUT #2"), SouthPac International Trust Ltd., as trustee of the David R. Markin 2003 Trust (the "2003 Trust"), CRUT #1, CRUT #2 , and the 2003 Trust as initial transferees and Mr. Markin as a subsequent transferee.  As a result of the decisions, *Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2014), dismissing all but the section 548(a)(1)(A) claims and this Court's Order dated July 16, 2015, dismissing claims to avoid obligations and claims against the subsequent transferees, the sole surviving claim in the Complaint is a claim under section 548(a)(1)(A) of the Bankruptcy Code against CRUT #1 in the amount of $12,107,533.

---

[1] David R. Markin died on May 30, 2013.

大成 DENTONS

March 1, 2017
Page 2

大成 Salans FMC SNR Denton McKenna Long
dentons.com

Notwithstanding the current posture of the case, including the dismissal of Mr. Markin as a subsequent transferee, we have conceded and the Trustee concurs that Mr. Markin received a distribution from CRUT #1 within two years of the filing for the bankruptcy case consisting in part of funds distributed from the CRUT's BLMIS account.

In addition to the avoidance claims in the Complaint, the Trustee indicated in a separate count that he would seek to disallow the customer claim of an unidentified "Related Account" pursuant to section 502(d) of the Bankruptcy Code and the Claims Procedures Order. This account is the account held individually in the name of Mr. Markin (Account No. 1-M0211) (the "Markin Account"). Although the Markin Account has an undisputed positive net equity claim, no distributions have been made.

Notwithstanding the fact that there has been no formal discovery in this case, in an effort to resolve the litigation so that Mr. Markin's wife and six children would receive the benefit of the distributions on his allowed claim, the parties have exchanged documents, analysis and memoranda with respect to the facts and decisions set forth below. The parties have been unable to reach a settlement.

**THE CRUT #1 ACCOUNT**

There is no dispute with respect to following facts:

BLMIS Account No. 1M0091 was held in the name of the David Markin Charitable Remainder Unitrust #1. CRUT #1 was established as a charitable remainder unitrust under Section 664(d)(2) of the Internal Revenue Code of 1986, as amended ("IRC"). The highly regulated structure of CRUT #1 for federal tax purposes establishes legal rights of various beneficiaries to the assets of the trust.

A charitable remainder unitrust is an irrevocable trust that typically must pay a fixed percentage of the annual fair market value of its assets to one or more non-charitable beneficiaries during the unitrust period and at the expiration of such period, the remaining assets of the trust are distributed to one or more qualified charitable organizations. In connection with the formation of the trust, the grantor (in this case, Mr. Markin) transferred property to an irrevocable trust. The trust document provided that Mr. Markin was entitled to receive during his lifetime, an annual payment equal to the lesser of (a) the trust income for the taxable year, and (b) a percentage of 10% of the net fair market value of the trust assets as of the first day of the taxable year of the trust. Upon termination of the trust, under the trust document, the remaining assets of the trust were to be distributed to qualified charitable organizations. CRUT #1 designated fourteen not-for-profit organizations as the charitable remainder beneficiaries.

Schematically, the charitable remainder unitrust appears as follows:

March 1, 2017
Page 3

大成 Salans FMC SNR Denton McKenna Long
dentons.com



In accordance with the IRC and pursuant to the trust document, Mr. Markin irrevocably contributed $4,000,000 to a BLMIS account (Account No. 1M0091) in the name of CRUT #1 in January 1997. Thereafter, at various times he contributed cash and other property (i.e., stock and other assets) directly to CRUT #1. In March 2007, CRUT #1 withdrew $16,059,086 from its BLMIS account and deposited the funds in its U.S. Trust bank account with other cash reserves from sources unrelated to BLMIS. At that point in 2007, the trustee also terminated CRUT #1, pursuant to the terms and considerations of a letter ruling issued by the Internal Revenue Service (the "Letter Ruling") to Mr. Markin through the transfer of Mr. Markin's income interest in CRUT #1, for an amount equal to the present value of his life income interest in CRUT #1 and the distribution of $14,038,714 in cash and other assets of CRUT #1 to the charitable remainder beneficiaries.

At the time of the termination of CRUT #1, it held more than $22,000,000 in cash and other assets. The Trustee contends and we have acknowledged that in 2007, in connection with the terms of CRUT #1 and the Letter Ruling, Mr. Markin received approximately $10,000,000 from CRUT #1 from the BLMIS distribution and other cash.

More than six years later, on May 30, 2013, Mr. Markin died.

**SUBSEQUENT TRANSFEREE LIABILITY**

There is no dispute about the law that applies to the issues in the case.

The law in this jurisdiction and elsewhere is clear that in order to establish liability on the part of an alleged subsequent transferee, the Trustee must first show that that alleged transferee was in receipt of the fraudulently transferred funds. *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC),* 2014 Bankr. LEXIS 4348.*31-2 (Bankr. S.D.N.Y., Oct. 10, 2014) ("The Trustee would first have to demonstrate that the initial transfers to the three feeder funds were avoidable. He would then have to trace the avoidable BLMIS transfers from the feeder funds to

大成 DENTONS

March 1, 2017
Page 4

大成  Salans FMC SNR Denton McKenna Long
dentons.com

JPMorgan to show that JPMorgan was a subsequent transferee."). This Court in *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016) most recently confirmed the Trustee's obligation to show that the funds he seeks to recover actually came from the debtor:

> To satisfy his burden to recover the subsequent transfer, the Trustee must support the inference "that the funds at issue originated with the debtor," *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007); *accord Picard v. Estate of Chais (In re BLMIS)*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011), and contain the "necessary vital statistics—the who, when, and how much" of the purported transfers to establish an entity as a subsequent transferee of the funds. *Allou Distribs.*, 379 B.R. at 32; *accord Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011).

In this case, it is agreed that the tracing of BLMIS assets from CRUT #1 must take into account assets that (a) represent the $4 million principal investment, and (b) cash that was not in any way derived from BLMIS. In a situation where the alleged transferred tainted assets are comingled with untainted assets and distributed among various parties, the Trustee cannot simply assume that one party received all the allegedly tainted funds. In this jurisdiction, the approach is to allocate the tainted and untainted funds pro rata. *See In McHale v. Boulder Capital, LLC (In re 1031 Tax Group, LLC)*, 439 B.R. 78, 84 (Bankr. S.D.N.Y. 2010). *See also S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) ("Courts have favored pro rata distribution of assets where, as here, the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders.").[2]

In this case, whatever funds went to Mr. Markin in March of 2007 would be difficult, if not impossible, to trace to his estate. More than a year and half passed after CRUT #1 was terminated before the fraud was uncovered and more than three years passed before the original complaint against Mr. Markin and the CRUT #1 were filed. During that time, Mr. Markin was free to withdraw and add to his personal accounts with various financial institutions.

**Value to the Transferor**

Even if the Trustee could trace the distribution to the estate of Mr. Markin from CRUT #1, Mr. Markin, a subsequent transferee of funds from the trust account, has an additional protection against recovery of the Trustee's claim. The Trustee's right to recover transfers under section 550(a)(2) is limited by Section 550(b), which prohibits recovery from a subsequent transferee who takes (1) for value, (2) in good faith, and (3) without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988), the seminal case on subsequent transferee liability and followed in this jurisdiction, established, among other principles, the requirement that the court must look to the relationship

---

[2] The Trustee concurs with the approach. We do not have complete agreement on the resulting calculation using substantially the same method.

大成 Salans FMC SNR Denton McKenna Long
dentons.com

between the transferor and recipient of property, not the debtor and the subsequent transferee to determine whether value within the meaning of that section has been given.

In this case, section 550(b) provides a complete defense to the Trustee's claim. There is no question that Mr. Markin had no knowledge of the fraud or voidability of the transfer. Based on the facts stated above and the applicable law, Mr. Markin gave value to the transferor--CRUT #1.

In this jurisdiction, "value" within the meaning of section 550(b)(1) is consideration sufficient to support a simple contract between the transferee and its transferor.  5 Collier on Bankruptcy (16th Ed.), ¶ 550.03[1], p. 550-20; *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr. S.D. N.Y. 2005) (In addition, under section 550(b) of the Bankruptcy Code, "the value' required to be paid by the transferee is merely consideration sufficient to support a simple contract. . . . There is no requirement that the value given by the transferee be a reasonable or fair equivalent.") (citations omitted); *Picard v. Legacy Capital Ltd (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016) ('"The "value" that a subsequent transferee must provide under section 550(b)(1) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value."') (citations omitted);  *Genova v. Gottlieb (In re Orange County Sanitation)*, 221 B.R. 323, 326  (Bankr. S.D.N.Y. 1997)(section looks to what the transferee gave up rather than what the debtor received).

In this case, the distributions to the various parties was governed by both the trust document and the requirements of the Internal Revenue Service as set forth in the Letter Ruling, which were strictly followed.  The termination of CRUT #1, as described above, provided additional value to the charities on an accelerated time frame.  Mr. Markin's relinquishment of his lifetime income interest in CRUT #1 was a valuable property right given to him by contract.  Mr. Markin relinquished such valuable property right in exchange for fair and adequate consideration (the actuarial value of the unitrust interest) as required by the Letter Ruling.  As a result, "value" within the meaning of Section 550(b) was provided.

**THE SUMMARY JUDGMENT MOTION**

We believe that the adversary proceeding can be resolved on this defense.  The facts set forth above are evidenced by the trust document, the Letter Ruling, the checks from the CRUT #1 account and tax documents evidencing the distributions from the CRUT account and its holdings and the Complaint.  Finally, the Trustee has not advanced any theory, legal principle or factual dispute to defeat the defense.

大成 DENTONS

March 1, 2017
Page 6

大成  Salans FMC SNR Denton McKenna Long
dentons.com

Accordingly, we request a conference in order to file a motion for summary judgment based upon the above.

Respectfully submitted,

Carole Neville

cc:   Keith R. Murphy *(via email)*
      Tatiana Markel *(via email)*
      Mitchell Schepps *(via email)*