Peter S. Partee, Sr.
Robert A. Rich
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1100

*Attorneys for Defendants*

Hearing Date and Time: **March 29, 2017 at 10:00 a.m.**
Objection Deadline: **March 22, 2017**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br>  v.<br><br>Edward A. Zraick, Jr., individually and as joint tenant; Nancy Zraick, individually and as joint tenant; Patricia Zraick DeLuca, individually and as joint tenant; Karen M. Rich, individually and as joint tenant; Estate of Lorraine Zraick; Edward A. Zraick, Jr., as personal representative of the Estate of Lorraine Zraick; and Patricia Zraick DeLuca, as personal representative of the Estate of Lorraine Zraick,<br><br>    Defendants. | Adv. Pro. No. 10-05257 (SMB) |

**ZRAICK DEFENDANTS' MOTION FOR ENTRY OF AN ORDER
(I)(A) EXTENDING TIME FOR REBUTTAL EXPERT DISCLOSURES
BY TWELVE DAYS OR (B) IN THE ALTERNATIVE, DECLARING
DEFENDANTS' REBUTTAL EXPERT REPORT TIMELY SERVED; AND
(II) COMPELLING THE PRODUCTION OF DOCUMENTS CONCERNING
<u>SECURITIES LISTED ON DEFENDANTS' CUSTOMER STATEMENTS</u>**

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. RELEVANT BACKGROUND .....................................................................................3

III. JURISDICTION, VENUE AND PREDICATES FOR RELIEF REQUESTED ................6

IV. RELIEF REQUESTED...................................................................................................6

V. BASIS FOR RELIEF REQUESTED..............................................................................7

    A. Good Cause Exists to Consider the Testimony of Defendants' Rebuttal Expert. ...................................................................................................................7

    B. Defendants Timely Served the Rebuttal Report. .....................................................9

        1. The Case Management Order Permits Rebuttal Expert Disclosures Until After the Completion of the Ongoing Fact Discovery........................9

        2. The Trustee Acknowledges that the Deadlines Identified in the Case Management Order Control Over Those Identified on the Notice. ...........10

    C. The Trustee Should be Compelled to Produce Documents Concerning the Securities Listed on Defendants' Account Statements. .........................................10

VI. NOTICE .......................................................................................................................13

VII. NO PRIOR REQUEST.................................................................................................13

VIII. CONCLUSION.............................................................................................................13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Fairfield Sentry Ltd.*,
   458 B.R. 665 (S.D.N.Y. 2011) ............................................................................................... 7

*Jackson v. Edwards*,
   2000 U.S. Dist. LEXIS 8549 (S.D.N.Y. June 13, 2000) ........................................................ 11

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
   *(In re Motors Liquidation Co.)*,
   552 B.R. 253 (Bankr. S.D.N.Y. 2016) ..................................................................................... 7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) .............................................................................................................. 11

*In re Weatherford Int'l Secs. Litig.*,
   2013 U.S. Dist. LEXIS 154527 (S.D.N.Y. Oct. 28, 2013) .................................................... 11

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................................... 6

15 U.S.C. §§ 78fff-1(d)(3) ........................................................................................................... 11

28 U.S.C. § 1334 ............................................................................................................................ 6

28 U.S.C. § 1408 ............................................................................................................................ 6

28 U.S.C. § 1409 ............................................................................................................................ 6

**Other Authorities**

Fed. R. Bankr. P. 7026 ................................................................................................................. 10

Fed. R. Bankr. P. 7037 ................................................................................................................. 11

Fed. R. Bankr. P. 9006(b)(1) ...................................................................................................... 6, 7

Fed. R. Civ. P. 26(a)(2) .................................................................................................................. 4

Fed. R. Civ. P. 26(b)(1) ......................................................................................................... 10, 11

Fed. R. Civ. P. 37(a) .................................................................................................................... 11

Defendants Edward A. Zraick, Jr, Nancy Zraick, Patricia DeLuca and Karen Rich (collectively, the "Defendants"), by and through their undersigned counsel, hereby move (the "Motion") for the entry of an order, pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i)(a) extending Defendants' February 2, 2017 deadline for rebuttal expert disclosures by twelve days, to February 14, 2017, so as to render as timely served the Expert Report of Bill Feingold, a true and correct copy of which is attached hereto as **Exhibit A** (the "Feingold Report") or (b) in the alternative, declaring that the Feingold Report has been timely served under the case management order; and (ii) compelling the Trustee to produce documents concerning the securities listed on Defendants' customer statements.

## I.    PRELIMINARY STATEMENT[1]

1. Defendants respectfully submit that cause exists for what amounts to a 12-day extension of their deadline to disclose expert testimony so as to allow consideration of the Feingold Report. The Trustee's causes of against Defendants, individuals who already have lost their inheritance and life savings, and against whom there are no allegations of bad faith, relies substantially on the allegation that no securities ever were traded for Defendants' BLMIS accounts or for any BLMIS accounts from which funds ultimately were transferred into the Defendants' accounts. To prove this allegation, counsel for the Trustee retained Mr. Bruce G. Dubinsky in June 2011. Mr. Dubinsky's analyses culminated in an August 20, 2013 expert report (the "Dubinsky Report"),[2] a massive 1135-page document, inclusive of exhibits, that sets forth the methodology by which Mr. Dubinsky determines, among other things, that BLMIS

---

[1] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to such terms below.

[2] A true and correct copy of the Dubinsky Report (without exhibits due to volume) is attached hereto as **Exhibit B**.

never engaged in the convertible bond transactions that comprise most if not all of the transactions listed on customer statements from at least the early 1980s through around 1992, including customer statements relevant to this action.

2.  The Dubinsky Report was not served on Defendants when it was authored in or around August 20, 2013. It was strategically withheld by the Trustee, who let it sit on his desk for over three years, and ultimately served upon Defendants on the very last day of expert discovery along with three additional expert reports, leaving Defendants with a mere thirty days to review and serve any rebuttal. Consistent with this strategy, the Trustee denied all requests for any extension of the rebuttal disclosure deadline.

3.  Defendants raced to review the Trustee's four expert reports and retain the necessary rebuttal witnesses, but ultimately could not accomplish this in thirty days. After an initial extension was granted to February 2, the Court allowed Defendants to make a motion for further extension, but expressed concern that, if the Court were to grant a 30-day extension beyond February 2, Defendants might return to the Court with additional requests for extension at the conclusion of that 30-day period.[3]

4.  Defendants are pleased to report that no such further extensions, or even the full 30-day request, is necessary. On February 14, Defendants served the Feingold Report upon the Trustee. Consistent with fact testimony revealing that BLMIS conducted all the bond trades identified on Defendants' customer statements, the Feingold Report explains in great detail the fatal flaws in Mr. Dubinsky's methodology for concluding that no convertible bond trades ever took place, an issue crucial to this adversary proceeding and now supported by overwhelming evidence, although one which the Trustee stubbornly refuses to concede. Accordingly,

---

[3] *See* Feb. 7, 2017 Hrg. Tr. at 39:7-9. A true and correct copy of the February 7, 2017 hearing transcript is attached hereto as **Exhibit C**.

2

Defendants respectfully request an extension of the deadline for rebuttal expert disclosures, from February 2 to February 14, for purposes of deeming the Feingold Report timely served.

5.  Alternatively, Defendants request an order declaring the Feingold Report timely served under the case management order. The case management order provides that "disclosures of the parties' rebuttal experts, if any, shall be made within 90 days after the deadline for completion of fact discovery."[4] Fact discovery in this case has been extended for the limited purpose of completing the deposition of Mr. Madoff,[5] which has yet to be completed.

6.  Finally, Defendants request entry of an order compelling the Trustee to produce all documents regarding BLMIS trading activity for the securities listed on the Defendants' accounts, which should have been produced earlier. In particular, Defendants seek all documents in the Trustee's possession regarding BLMIS' holding and trading of United States Treasury Bills ("Treasury Bills"), which Defendants understand have been withheld despite the fact that at various times, including since 1992, the entire value of Defendants' accounts as listed on their account statements is comprised of such Treasury Bills. *See, e.g.* Statement of Edward A. Zraick Jr. and Nancy Zraick TIC dated December 31, 2003, Bates Number MDPTPP05732311, a true and correct copy of which is attached hereto as **Exhibit D**.

## II.    RELEVANT BACKGROUND

7.  Defendants are individuals who have lost substantially all of their inheritance and life savings as a result of having invested in Bernard L. Madoff Investment Securities LLC ("BLMIS").

---

[4] *Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order*, dated Nov. 10, 2010 [Adv. Pro. No. 08-01789, ECF 3141] at p. 10.

[5] *See Order Authorizing the Deposition of Bernard L. Madoff*, dated Sept. 29, 2016 [Adv. Pro. No. 08-01789, ECF 14213], at p. 7.

8.      On December 6, 2010, Irving H. Picard, as Trustee for the Liquidation of BLMIS (the "Trustee"), commenced the above-captioned action against Defendants seeking the avoidance and recovery of over $1 million of allegedly fraudulent transfers.  Certain of the Trustee's claims have been dismissed with prejudice leaving net combined alleged fraudulent transfer liability of $285,000.  *See Stipulation and Order* [ECF 43].  The Trustee has made no allegations of bad faith or prior knowledge of the misconduct perpetrated by BLMIS on the part of Defendants.

9.      On November 10, 2010, the Court entered the Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order [Adv. Pro. No. 08-01789, ECF 3141] (the "Case Management Order" or "CMO").  The Case Management Order is applicable to this proceeding.  See Notice of Applicability [ECF 2].

10.     The Case Management Order provides, among other things, that "Federal Rule 26(a)(2) disclosures of the parties' rebuttal experts, if any shall be made with 90 days after the deadline for completion of fact discovery or 30 days after receipt of the other party's corresponding expert report, whichever is later."  CMO at p. 6.

11.     On December 2, 2015, the parties filed *Case Management Notice* [ECF 46] (the "Case Management Notice") intended to memorialize the deadlines established by the Case Management Order.

12.     On September 29, 2016, the Court entered an Order [Adv. Pro. No. 08-01789, ECF 14213] (the "Sept 29 Order") extending the fact discovery period for the Defendants and certain other "Participating Customers" for limited purpose of conducting the deposition of Bernard L. Madoff (the "Madoff Deposition").  *See* Sept 29 Order at p. 7.

4

13. The Sept 29 Order expressly reserves Defendants' (and other Participating Customers') right to move for further discovery based on Madoff's testimony. *See* Sept 29 Order at p. 7 ("Notwithstanding the dates set forth in the case management orders, counsel for the Trustee, the Participating Customers, the Picower Parties and SIPC have the right to move the Court for further discovery based on Madoff's testimony").

14. The Madoff Deposition was commenced on December 20, 2016, and continued in accordance with an order [Adv. Pro. No. 08-01789, ECF 14905] entered on January 19, 2017. On February 1, 2017, Defendants served on the Trustee certain requests for documents directly related to the testimony elicited at the Madoff Deposition. *See Defendants' Second Requests for Production of Documents from the Trustee*, a true and correct copy of which is attached hereto as **Exhibit E** (the "Second Requests for Production").

15. On November 16, 2016, the Trustee served Defendants with four (4) expert reports including the 1135-page Dubinsky Report. The Dubinsky Report primarily sets forth an opinion as to the extent of the fraud at BLMIS, including an opinion that no actual trading occurred since as far back as the 1970s. The opinions of the other expert reports served by the Trustee rely substantially on the opinion set forth in the Dubinsky Report regarding BLMIS trading activity.

16. Because the Case Management Notice identifies December 16, 2016 as the deadline for rebuttal witnesses, Defendants on December 14, 2016 requested the Trustee's consent to service of a rebuttal witness report after such date. After the Trustee refused, the Court allowed Defendants until February 2, 2017 to serve such report.

17. Defendants diligently worked to examine the 1135-page Dubinsky Report and produce a rebuttal expert report during the period since November 16, 2016. Aided by the

5

transcript of the Madoff Deposition, which was received late in the evening of January 3, 2017, Defendants first attempted to work with counsel for similarly-situated defendants in working with a joint expert and, once it became clear that such an arrangement was impractical given the inconsistent discovery deadlines in each case, by retaining Mr. Bill Feingold.

18. By letter of February 2, 2017 [ECF 64] and at a conference held on February 7, 2017, Defendants requested a further short extension of the date set forth on the Case Management Notice for purposes of finalizing and serving the Rebuttal Report. The Court declined to grant the extension at the conference citing a concern that, if a 30-day extension was granted, Defendants might return at the end of that period to request even more time. *See,* Ex. C, Feb. 7, 2017 Hrg. Tr. at 39:7-9. However, the Court permitted Defendants to file the instant Motion.

19. On February 14, 2017, just twelve (12) days after the Court conference, Defendants served upon the Trustee the Rebuttal Report which is attached hereto. *See Affidavit of Service*, a true and correct copy of which is attached hereto as **Exhibit F**.

### III. JURISDICTION, VENUE AND PREDICATES FOR RELIEF REQUESTED

20. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

21. The predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006(b)(1).

### IV. RELIEF REQUESTED

22. By this Motion, Defendants request entry of an order, substantially in the form attached hereto, (i)(a) extending Defendants' deadline for rebuttal expert disclosures by twelve days so as to render the Feingold Report timely served, or (b) in the alternative, declaring that the

6

Feingold Report has been timely served under the Case Management Order; and (ii) compelling the Trustee to produce documents concerning the securities listed on Defendants' customer statements.

## V. BASIS FOR RELIEF REQUESTED

### A. Good Cause Exists to Consider the Testimony of Defendants' Rebuttal Expert.

23. The Case Management Order provides that the discovery schedule may be extended "upon a showing of good cause."

24. Bankruptcy Rule 9006(b)(1) provides that the Court may extend a deadline established by the rules or by an order of the Court. Fed. R. Bankr. P. 9006(b)(1). If the request for an extension is made after the expiration of the applicable deadline, the request must be made by motion and the failure to act must be shown to be the result of excusable neglect. However, if the request is made prior to the expiration of the applicable deadline, the Court may grant the extension with or without a motion "for cause." *See* id; *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 552 B.R. 253, 274 (Bankr. S.D.N.Y. 2016); *In re Fairfield Sentry Ltd.,* 458 B.R. 665, 691 (S.D.N.Y. 2011). Because Defendants requested the extension on February 2, 2017, prior to the expiration of the rebuttal expert deadline, the more lenient "cause" standard is applicable.

25. Good cause exists to grant a short extension, from February 2, 2017 to February 14, 2017, so as to render the Feingold Report timely served. The Feingold Report addresses a critical issue in this adversary proceeding – the extent to which the convertible bond trades shown on Defendants' account statements, and the statements for accounts from which funds ultimately were transferred to Defendants, are fictitious. The Trustee relies heavily on his allegations that no securities ever were traded for the Defendants' BLMIS accounts, or for any BLMIS accounts from which funds ultimately were transferred to Defendants. For example, in

7

calculating the alleged amount of cash included in a transfer to Defendants' accounts (or to relevant transferor accounts), the Trustee's experts presume that all gains shown on the BLMIS account statements are completely fictitious. *See*, *e.g. Expert Report of Matthew B. Greenblatt, COA/CFF, CFE Senior Managing Director FTI Consulting Inc., Principal Balance Calculation as Applied to the Zraick Defendants*, dated November 16, 2016 (the "Greenblatt Report") at ¶ 58 ("On May 15, 1996, BLMIS Account 1Z0013 was opened with an inter-account transfer…in the amount of $557,707…However [the account] was only credited with $101,000 of principal…The remaining balance of this reported inter-account transfer constituted fictitious profits."). A true and correct copy of the Greenblatt Report (without exhibits) is attached hereto as **Exhibit G**.

26. The Feingold Report debunks the testimony put forth by Mr. Bruce Dubinsky, the Trustee's primary witness against the Defendants who's expert report which was withheld by the Trustee until the very last day of the discovery period. The Trustee retained Mr. Dubinsky in June 2011 primarily to testify on the issue of whether BLMIS ever traded securities for its customer accounts. *See* Ex. C, Dubinsky Report, ¶ 1. The Dubinsky Report, dated August 20, 2013, explains in great detail the methodology by which Mr. Dubinsky determines, among other things, that BLMIS never engaged in the convertible bond transactions that comprise most if not all of the transactions listed on customer statements (including those at issue in this action) from at least the early 1980s through around 1992. The Feingold Report explains in great detail the fatal flaws in Mr. Dubinsky's methodology for concluding that no convertible bond trades ever took place. It is consistent with fact discovery to date demonstrating that BLMIS had executed the bond transactions identified on Defendants' and other customer accounts.

8

27. Defendants have been diligent in pursuing rebuttal experts. After being served with four expert reports on the very last day of the expert discovery period, Defendants raced to review the reports, retain any necessary rebuttal expert witnesses, and provide the necessary disclosures required under the Bankruptcy Rules. After an extension of the initial 30-day window for such rebuttal discovery to February 2, 2017, Defendants had engaged Mr. Bill Feingold, but requested an additional short extension in order to prepare a rebuttal report.

28. At a conference held on February 7, the Court permitted Defendants to file the instant Motion seeking such an extension, but expressed a concern that, if a 30-day extension beyond February 2 was granted, Defendants might come back to the Court with a request for additional extensions. *See*, Ex. C, Feb. 7, 2017 Hrg. Tr. at 39:7-9.

29. No additional extensions are necessary. Defendants served the Feingold Report on February 14, just seven days after the court conference and twelve days after the existing deadline to submit rebuttal expert disclosures. No prejudice would result to the Trustee as no other case management deadlines will be affected. Accordingly, Defendants respectfully submit that cause exists to extend the deadline for rebuttal expert disclosures, from February 2 to February 14, for purposes of deeming the Feingold Report timely served.

B. **Defendants Timely Served the Rebuttal Report.**

   1. **The Case Management Order Permits Rebuttal Expert Disclosures Until After the Completion of the Ongoing Fact Discovery.**

30. Alternatively, Defendants submit that the Rebuttal Report has been timely served under the Case Management Order and the Trustee's own interpretation of that order. The Case Management Order provides that "disclosures of the parties' rebuttal experts, if any, shall be made within 90 days after the deadline for completion of fact discovery." CMO [Adv. Pro. No. 08-01789, ECF 3141] at 10. Fact discovery in this case has been extended for the limited

9

purpose of completing the deposition of Mr. Madoff,[6] which has yet to be completed. *See* Sept. 29 Order [Adv. Pro. No. 08-01789, ECF 14213] at 7. Accordingly, the deadline for disclosure of rebuttal experts has not passed.

### 2. The Trustee Acknowledges that the Deadlines Identified in the Case Management Order Control Over Those Identified on the Notice.

31.   The Case Management Notice [ECF 46] filed December 2, 2015, which was intended to memorialize the deadlines established by the Case Management Order, provides that the deadline for disclosure of rebuttal experts shall be due December 16, 2016. However, that deadline was calculated based on the initial end of fact discovery, August 26, 2016, and does not reflect the extension of fact discovery for purposes of the Madoff deposition referenced above.

32.   In connection with other deadlines, Trustee's counsel has argued that the deadlines in the Case Management Order control over any deadlines set forth in the Case Management Notice. For example, the Case Management Notice provides that service of a notice of mediation referral shall be filed on or before January 23, 2017 (*see* ECF 46), and the CMO requires that the Trustee shall file such notice. *See* CMO at 11. However, the Trustee has taken the position that he is not required to file the mediation notice by such date, because the CMO provides for mediation after discovery is completed. *See* Email form Max Shifrin (Baker Hostetler) dated Feb. 2, 2017, a true and correct copy of which is attached hereto as **Exhibit H**.

### C. The Trustee Should be Compelled to Produce Documents Concerning the Securities Listed on Defendants' Account Statements.

33.   Rule 26(b)(1) of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this proceeding by Bankruptcy Rule 7026, outlines the scope of discovery as follows:

---

[6] *See Order Authorizing the Deposition of Bernard L. Madoff*, dated Sept. 29, 2016 [Adv. Pro. No. 08-01789, ECF 14213], at p. 7.

10

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance . . . has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

34. Rule 37, made applicable to this proceeding by Bankruptcy Rule 7037, provides that "on notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). "Parties objecting to discovery must offer evidence showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, [an] interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive.'" *In re Weatherford Int'l Secs. Litig.*, 2013 U.S. Dist. LEXIS 154527 *6-7 (S.D.N.Y. Oct. 28, 2013) (alteration in original) (citing cases). "Supporting evidence can be provided in the form of affidavits, privilege logs, and other documents 'revealing the nature of the burden.'" Id. (citation omitted). But conclusory objections are insufficient to resist discovery. *See Jackson v. Edwards*, 2000 U.S. Dist. LEXIS 8549 *8 (S.D.N.Y. June 13, 2000).

35. In addition to his obligations under the Federal Rules of Civil Procedure, the Trustee bears a greater obligation of full disclosure to the Defendants because they are defrauded customers of BLMIS and are entitled to be fully informed of how the debtor operated. *See* 15 U.S.C. §§ 78fff-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with respect to fraud, misconduct, mismanagement, and irregularities" of the debtor).

11

36. In response to the Defendants' initial requests for discovery, the Trustee represented that the documents he obtained from BLMIS that are relevant to the issues of the fraud conducted at BLMIS and its insolvency have been disclosed to Defendants via the "E-Data Room 1." *See Trustee Irving H. Picard's Responses and Objections to Defendants' First Set of Requests for Production to the Trustee* dated May 19, 2016 at p.4, a true and correct copy of which is attached hereto as **Exhibit I**. Defendants subsequently learned that the Trustee holds evidence of trading at BLMIS that has not been disclosed in the dataroom, *see* Transcript of Jan. 5, 2017 Telephone Conference Before Judge Maas [Adv Pro. No. 08-01789, ECF No.15112] at 25:22-26:2) (MR. JACOBS: ". . . . So nobody has seen this material until we see it and produce it – until we get it and produce it." ARBITRATOR MAAS: "Including, in particular, Mr. Dubinsky." MR. JACOBS: "That's correct."); (id. at 27:7-9) (MR JACOBS: "But any – all of the documents that Mr. Dubinsky considered with his report as it exists today are in the data room."); (id. at 29:2-6) (MR. JACOBS: "The additional 93 that we produced were in the database of microfilm that we previously restored, but they, to my knowledge, have not been considered by Mr. Dubinsky in connection with his report."); (see generally id. at 25:9-29:6) (summarizing the issue), and hereby seek an order compelling the Trustee to produce these documents.

37. Even assuming the Trustee had not been obligated to produce these documents earlier, he should be compelled to do so now. The Court's Sept 29 Order expressly reserves Defendants' (and other Participating Customers') right to move for further discovery based on testimony given from Mr. Madoff. *See* Sept 29 Order at p. 7 ("Notwithstanding the dates set forth in the case management orders, counsel for the Trustee, the Participating Customers, the Picower Parties and SIPC have the right to move the Court for further discovery based on

12

Madoff's testimony"). Madoff's testimony has revealed that BLMIS held millions of dollars in Treasury Bills, which are the very same securities listed on many of Defendants' account statements. In fact, at various times, including since 1992, the entire value of Defendants' accounts as listed on their account statements is comprised of such Treasury Bills. *See, e.g.* **Exhibit D**, Statement of Edward A. Zraick Jr. and Nancy Zraick TIC dated December 31, 2003. Defendants therefore, via their Second Requests for Production, specifically demanded that the Trustee produce all documents in his possession concerning securities trading at BLMIS, including the Treasury Bills. The Trustee has refused to respond to these requests, and now should be compelled to do so.

## VI.  NOTICE

38.  A copy of this Motion has been served on counsel for the Trustee.

## VII.  NO PRIOR REQUEST

39.  No prior motion for the relief requested herein has been made to this or any other court.

## VIII.  CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an order, (i)(a) extending Defendants' deadline for rebuttal expert disclosures by twelve days so as to render the Feingold Report timely served or (b) in the alternative, declaring that the Feingold Report has been timely served; (ii) compelling the Trustee to produce all documents concerning Treasury Bills and other securities listed on account statements relevant to the Defendants within thirty (30) days of entry of this Order; and (iii) granting such other and further relief as the Court may deem just or proper.

13

Dated: New York, New York  
       March 6, 2017

Respectfully submitted,

*/s/ Robert A. Rich*  
Peter S. Partee, Sr.  
Robert A. Rich  
**HUNTON & WILLIAMS LLP**  
200 Park Avenue  
New York, New York 10166  
(212) 309-1000  
Email: rrich2@hunton.com

*Counsel for Defendants Edward A. Zraick, Jr., Nancy Zraick, Patricia DeLuca and Karen M. Rich*

14