# EXHIBIT A

08-01789-smb  Doc 15176-1  Filed 03/06/17  Entered 08/06/17 14:35:09  Exhibit
Case 1:11-cv-07602-JSR  Document 8  Filed 01/29/12  Page 3 of 37  Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 2 of 38

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-5224 (BRL) |
| v. | 11 Civ 7602 (JSR) |
| DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2, SOUTHPAC INTERNATIONAL TRUST LTD., as trustee of the David R. Markin 2003 Trust, DAVID R. MARKIN 2003 TRUST, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1, DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #2 | Consolidated Case No. 11 Civ. 4936 (JSR) |
| Defendants. | |

## AMENDED COMPLAINT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*Bernard L. Madoff*

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L.

Madoff individually ("Madoff"), by and through his undersigned counsel, for his amended

complaint (the "Amended Complaint"), states as follows:

## NATURE OF PROCEEDING

1.        This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts.  When added together, these statements purport that clients of BLMIS had

approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a

small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme

and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.        Defendants David R. Markin, in his capacity as trustee of the David Markin

Charitable Remainder Unitrust #1 and David R. Markin Charitable Remainder Unitrust #2,

SouthPac International Trust, Ltd., in its capacity as trustee of the David R. Markin 2003 Trust,

David R. Markin 2003 Trust, David Markin Charitable Remainder Unitrust #1, and David R.

Markin Charitable Remainder Unitrust #2 ("Defendants") were beneficiaries of Madoff's Ponzi

scheme.  The Trustee's investigation has revealed that between December 11, 2002 and

December 11, 2008, Defendants received $14,801,414 in fictitious profits from the Ponzi

scheme, meaning that Defendants withdrew more than they had invested in their BLMIS

accounts.  Accordingly, Defendants received $14,801,414 of other people's money.  The

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Case 1:11-cv-07802-JSR Document 3 Filed 04/29/16 Page 35 of 37
Exhibit A to Letter to Judge Bernstein Pg 4 of 38

transfers of fictitious profits to or for the benefit of Defendants constitute avoidable transfers and are recoverable by the Trustee. Upon information and belief, Defendant David R. Markin ("Subsequent Transferee Defendant") received subsequent transfers of the avoidable transfers referenced above. To the extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendant, Subsequent Transferee Defendant is the initial transferee of such transfers and is included in the definition of Defendants for purposes of the allegations herein. This action is brought to recover the transfers of fictitious profits so that this customer property can be equitably distributed among the holders of allowed claims in this SIPA proceeding.

3.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")), and other applicable law, for avoidance of fraudulent obligations and conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such obligations and transfers and preserve and recover the property for the benefit of the BLMIS estate.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding commenced before the same Court before which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to the Bankruptcy Court. The reference was thereafter partially withdrawn by this

08-01789-smg Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Exhibit A to Letter to Judge Bernstein Pg 5 of 38
Case 1:11-cv-07802-JSR Document 3 Filed 01/23/12 Page 5 of 37

Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and

15 U.S.C. §§ 78eee(b)(2)(A), (b)(4) and N.Y. C.P.L.R. 302(a) (McKinney 2010).

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

6. Venue in this district is proper under 28 U.S.C. § 1409.

## DEFENDANTS

7. Upon information and belief, Defendant and Subsequent Transferee Defendant

David R. Markin maintains his residence in Palm Beach, Florida. Upon information and belief,

Defendant acts as trustee for the David R. Markin Charitable Remainder Unitrust #1 and David

Markin Charitable Remainder Unitrust #2 with both account addresses reported in Palm Beach,

Florida. Upon information and belief, Defendant and Subesquent Transferee Defendant David

Markin is a beneficiary of David R. Markin 2003 Trust, David R. Markin Charitable Remainder

Unitrust #1 and David Markin Charitable Remainder Unitrust #2.

8. Defendant SouthPac Trust International, Inc. is a corporation formed under the

laws of the Cook Islands. Its principal place of business is located at ANZ House, Main Road,

Avarua, Rarotonga, Cook Islands. Defendant, in its capacity as trustee for David R. Markin

2003 Trust, holds a BLMIS account in the name "David R. Markin 2003 Trust," with the account

address reported as ANZ House, Main Road, Avarua, Rarotonga, Cook Islands.

9. Defendant David R. Markin 2003 Trust is the beneficial owner of a BLMIS

account in the name "David R. Markin 2003 Trust," with the account address reported as ANZ

House, Main Road, Avarua, Rarotonga, Cook Islands. Upon information and belief, Defendant

David R. Markin 2003 Trust is a trust that was formed under the laws of the state of Florida.

Upon information and belief, it maintains an address in Palm Beach, Florida.

10. Defendant David R. Markin Charitable Remainder Unitrust #1 is the beneficial

owner of a BLMIS account in the name "David R. Markin Charitable Remainder Unitrust #1,"

08-01789-smb   Doc 15176-1   Filed 03/06/17   Entered 03/06/17 14:35:09   Exhibit
Case 1:11-cv-07802-JSR   Document 8   Filed 01/28/12   Page 5 of 37
Exhibit A to Letter to Judge Bernstein    Pg 6 of 38

with the account address reported in Palm Beach, Florida.  Upon information and belief,

Defendant David R. Markin Charitable Remainder Unitrust #1 is a trust that was formed under

the laws of the state of Florida.  Upon information and belief, it maintains an address in Palm

Beach, Florida.

11.      Defendant David R. Markin Charitable Remainder Unitrust #2 is the beneficial

owner of a BLMIS account in the name "David R. Markin Charitable Remainder Unitrust #2,"

with the account address reported as in Palm Beach, Florida.  Upon information and belief,

Defendant David R. Markin Charitable Remainder Unitrust #2 is a trust that was formed under

the laws of the state of Florida.  Upon information and belief, it maintains an address at in Palm

Beach, Florida.

## BACKGROUND, THE TRUSTEE AND STANDING

12.      On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal

agents for violation of the criminal securities laws, including, *inter alia*, securities fraud,

investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and

Exchange Commission ("SEC") filed a complaint in the District Court which commenced the

District Court Proceeding against Madoff and BLMIS.  The District Court Proceeding remains

pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in

fraud through the investment advisor activities of BLMIS.

13.      On December 12, 2008, The Honorable Louis L. Stanton of the District Court

entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of

BLMIS.

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is
filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court
"in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced
before the date on which such application was filed, the term 'filing date' means the date on which such proceeding

14.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC

filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its

obligations to securities customers as they came due and, accordingly, its customers needed the

protections afforded by SIPA.

15.     Also on December 15, 2008, Judge Stanton granted the SIPC application and

entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

          a.     appointed the Trustee for the liquidation of the business of BLMIS

pursuant to section 78eee(b)(3) of SIPA;

          b.     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to

section 78eee(b)(3) of SIPA; and

          c.     removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

16.     By orders dated December 23, 2008 and February 4, 2009, respectively, the

Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested

person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of

BLMIS.

17.     At a Plea Hearing on March 12, 2009, in the case captioned *United States v.*

*Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information

filed against him by the United States Attorneys' Office for the Southern District of New York.

At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment

---

was commenced." 15 U.S.C. § 78*lll*(7)(B).  Thus, even though the application for a protective decree was filed on
December 15, 2008, the Filing Date in this action is December 11, 2008.

08-01789-cgm  Doc 15176-1  Filed 03/06/17  Entered 08/06/17 14:35:09  Exhibit
Case 1:11-cv-07002-JSR  Document 3  Filed 01/25/02  Page 5 of 37  Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 8 of 38

advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

18.     On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

19.     As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS's customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS's assets, and the liquidation of BLMIS's assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences, payouts of fictitious profits and/or other avoidable obligations and transfers, to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

20.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy

trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant

to SIPA section 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the

Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

21.    Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to

be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code

and the date of the commencement of the case within the meaning of section 544 of the

Bankruptcy Code.

22.    The Trustee has standing to bring these claims pursuant to applicable provisions of

SIPA, including sections 78fff-1(a), 78fff(b) and 78fff-2(c)(3), and the Bankruptcy Code,

including sections 323(b) and 704(a)(1), because, among other reasons:

(a)    BLMIS incurred losses as a result of the claims set forth herein;

(b)    the Trustee is a bailee of customer funds entrusted to BLMIS for investment

purposes;

(c)    the Defendants received "Customer Property" as defined in SIPA § 78*lll*(4);

(d)    SIPC has not reimbursed, and will not fully reimburse, the customers for their

losses;

(e)    the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS

who have filed claims in the liquidation proceeding (such claim filing customers, collectively,

"Accountholders").  To the extent the Trustee has received express assignments of certain

BLMIS customer claims, which they could have asserted, the Trustee stands in the shoes of

persons who have suffered injury-in-fact, and a distinct and palpable loss for which the Trustee is

entitled to seek monetary damages;

08-01789-cgm    Doc 15476-1    Filed 03/06/17    Entered 03/06/17 14:35:09    Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 10 of 38
Case 1:11-cv-07802-JSR    Document 3    Filed 01/28/12    Page 9 of 37

(f)    SIPC has expressly conferred upon the Trustee enforcement of its rights of
subrogation with respect to payments it has made and is making to customers of BLMIS from
SIPC funds; and

(g)    the Trustee has the power and authority to avoid obligations, and avoid and
recover transfers, pursuant to sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code,
applicable state law including the DCL, and applicable provisions of SIPA, including §§ 78fff(b)
and 78fff-2(c)(3).

### THE FRAUDULENT PONZI SCHEME

23.    Founded in or around 1959, BLMIS began operations as a sole proprietorship of
Madoff and later, effective January 2001, formed as a New York limited liability company
wholly owned by Madoff.  Since in or about 1986, BLMIS operated from its principal place of
business at 885 Third Avenue, New York, New York.  Madoff, as founder, proprietor, chairman,
and chief executive officer, ran BLMIS together with several family members and a number of
additional employees.  BLMIS was registered with the SEC as a securities broker-dealer under
section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).  By that registration,
BLMIS is a member of SIPC.  BLMIS had three business units: investment advisory (the "IA
Business"), market making and proprietary trading.

24.    For certain accounts in the IA Business, BLMIS purported to participate in a
capital appreciation/depreciation strategy, depending on whether the customer sought to generate
gains or losses.  For example, the strategy was executed by either purporting to purchase small
groups of securities near lows and then purporting to sell those same securities at highs, or by
purporting to short-sell securities near highs and then purporting to repurchase those securities
near lows.

25.     For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy.  Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies.  The basket of stocks would be intended to mimic the movement of the S&P 100 Index.  Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds.  The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts.  Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

26.     Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication.  The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious.  At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts.  *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).  Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain clients other than Defendants, there is no record of BLMIS having cleared any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

27.     Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours.  To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS's affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family.  There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

28.     Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

29.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS.  The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors.  The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

30.     The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud.  The payments were necessary to validate the false account statements, and were made to avoid detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Case 1:11-cv-01026-JSR Document 8 Filed 04/26/12 Page 32 of 37 Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 13 of 38

31.    During the scheme, certain investors requested and received distributions of the
so-called "profits" listed for their accounts that were nothing more than fictitious profits.  Other
investors, from time to time, redeemed or closed their accounts, or removed portions of
purportedly available funds, and were paid consistently with the statements they had been
receiving.  Some of those investors later re-invested part or all of those withdrawn payments with
BLMIS.

32.    When payments were made to or on behalf of these investors, including
Defendants, the falsified monthly statements of accounts reported that the accounts of such
investors included substantial gains.  In reality, BLMIS had not invested the investors' principal
as reflected in customer statements.  In an attempt to conceal the ongoing fraud and thereby
hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of
certain investors the inflated amounts reflected in the falsified financial statements, including
principal and/or fictitious profits.

33.    BLMIS used the funds deposited from new investments to continue operations
and pay redemption proceeds to or on behalf of other investors and to make other transfers.  Due
to the siphoning and diversion of new investments to fund redemptions requested by other
investors, BLMIS did not have the funds to pay investors on account of their new investments.
BLMIS was able to stay afloat only by using the principal invested by some clients to pay other
investors or their designees.

34.    In an effort to hinder, delay, or defraud authorities from detecting the fraud,
BLMIS did not register as an investment adviser until September 2006.

35.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for
Investment Adviser Registration.  The application represented, *inter alia*, that BLMIS had 23

08-01789-smg Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Case 1:11-cv-01802-JSR Document 8 Filed 04/26/12 Page 33 of 37 Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 14 of 38

customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

36.    Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

37.    At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

## THE ACCOUNT AGREEMENTS

38.    According to BLMIS's records, multiple accounts (Nos. 1C1324, 1M0091 and 1M0094) (collectively the "Accounts") were maintained with BLMIS as set forth on Exhibit A. Upon information and belief, for the Accounts, a "Customer Agreement," an "Option Agreement," and/or a "Trading Authorization Limited to Purchases and Sales of Securities and Options" (collectively, the "Account Agreements") were executed and delivered to BLMIS at its headquarters at 885 Third Avenue, New York, New York. Additionally, there were periodic customer statements, confirmations, and other communications made by BLMIS or Madoff and sent to some or all Defendants (together with the Account Agreements, the "Account Documents").

39.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Accounts were

held in New York, New York, and Defendants sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the purported conducting of trading activities. Between the date the Accounts were opened and the Filing Date, Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

## THE OBLIGATIONS

40.    To the extent BLMIS or Madoff incurred obligations to the Defendants in connection with the Account Documents or any statements or representations made by BLMIS or Madoff, such obligations (collectively, the "Obligations") are avoidable under sections 105(a), 544(b) and 548(a) of the Bankruptcy Code, applicable provisions of DCL sections 273-279, and applicable provisions of SIPA, including §§ 78fff(b) and 78fff-1(b). BLMIS or Madoff incurred the Obligations as an integral part of and in furtherance of BLMIS's Ponzi scheme.

41.    To the extent BLMIS or Madoff incurred the Obligations to the Defendants, such Obligations were incurred with actual intent to hinder, delay, or defraud then existing and/or future creditors.

42.    To the extent BLMIS or Madoff incurred the Obligations, such Obligations were incurred when BLMIS was insolvent, had unreasonably small capital, and/or was unable to pay its debts as they matured. BLMIS was a massive Ponzi scheme, which, as a matter of law, was insolvent from its inception and, therefore, never capable of fulfilling its obligations to its creditors.

## THE TRANSFERS

43.    During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendants of $14,801,414. The Transfers were made to or for the benefit of

08-01789-cgm  Doc 15176-1  Filed 03/06/17  Entered 03/06/17 14:35:09  Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 16 of 38
Case 11-cv-01082-JSR  Document 3  Filed 04/26/12  Page 35 of 37

Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

44.    The Transfers constitute fictitious profits supposedly earned in the Accounts, but, in reality, were other people's money.

45.    The Transfers that occurred between December 11, 2002 and December 11, 2008 are referred to hereafter as the "Six Year Transfers."  The Six Year Transfers are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and DCL sections 273-279, and total $14,801,414.  *See* Exhibit B, Column 11.  The Six Year Transfers are also avoidable to the extent they were made on account of the avoidable Obligations.

46.    The Transfers that occurred between December 11, 2006 and December 11, 2008 are referred to hereafter as the "Two Year Transfers."  The Two Year Transfers are avoidable and recoverable under sections 548(a), 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and total $12,112,969.  *See* Exhibit B, Column 10.  The Two Year Transfers are also avoidable to the extent they were made on account of the avoidable Obligations.

47.    On information and belief, some or all of the Transfers were subsequently transferred by Defendants to Subsequent Transferee Defendant David R. Markin (collectively, the "Subsequent Transfers").

48.    The Subsequent Transfers, or the value thereof, are recoverable from Subsequent Transferee Defendant David R. Markin pursuant to §550(a) of the Bankruptcy Code

49.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Obligations and the Transfers and any additional or subsequent transfers and (ii) seek recovery of such additional transfers.

50.     To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## CUSTOMER CLAIMS

51.     On or about February 19, 2009, Defendant SouthPac International Trust, Ltd. on behalf of the David R. Markin 2003 Trust filed a customer claim with the Trustee which the Trustee has designated as Claim # 002656 (the "Customer Claim").

52.     On or about October 19, 2009 the Trustee issued a Notice of Trustee's Determination of Claim to Defendant (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit C.

53.     On or about November 16, 2009, Defendant David R. Markin 2003 Trust filed an objection to the Determination with the Court (the "Claims Objection").

54.     Defendant David R. Markin holds another BLMIS account in the name "David R. Markin," designated as BLMIS account number 1M0211 (the "Related Account").  Upon information and belief, the Defendant is the absolute owner of the Related Account and/or has a beneficial or equitable interest in the Related Account.

55.     On or about February 17, 2009 a customer claim was filed with the Trustee which the Trustee has designated as Claim # 002690, and on or about June 1, 2009 a duplicate customer claim was filed with the Trustee which the Trustee has designated as Claim # 009175 (the "Related Account Customer Claims").  The Trustee has yet to issue a determination with respect to the Related Customer Claim and/or make distributions on the Related Account Customer Claims.

56.     On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief

("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. The Trustee intends to resolve the Customer Claim, the Related Account Customer Claims and Claims Objection to the Trustee's determination of such claims through a separate hearing as contemplated by the Claims Procedures Order.

**COUNT ONE**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – 11 U.S.C. §§ 548(a)(1)(A), 550(a)**
**AND 551**

57.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

58.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

59.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

60.     Each of the Two Year Transfers and the Obligations was made or incurred by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

61.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

62.     The Obligations are avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and applicable provisions of SIPA including sections 78fff(b) and 78fff-1(b).

63.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a) and 551 of

the Bankruptcy Code and sections 78fff(b), 78fff-1(b), and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**COUNT TWO**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – 11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**AND 551**

64.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

65.     Each of the Two Year Transfers was made on or within two years before the Filing Date.

66.     Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

67.     BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers and the Obligations.

68.     At the time of each of the Two Year Transfers and at all times relevant to the Obligations, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

69.     At the time of each of the Two Year Transfers and at all times relevant to the Obligations, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

70.     At the time BLMIS made each of the Two Year Transfers, and at all times relevant to the Obligations, BLMIS had incurred, was intending to incur, or believed that it

would incur debts beyond its ability to pay them as the debts matured.

71.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

72.     The Obligations are avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and applicable provisions of SIPA including sections 78fff(b) and 78fff-1(b).

73.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT THREE
## FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279 AND 11 U.S.C. §§ 544(b), 550(a) AND 551

74.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

75.     At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

76.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

77.     Each of the Six Year Transfers and Obligations was made by BLMIS with the

-19-

actual intent to hinder, delay, or defraud then existing and/or future creditors of BLMIS. BLMIS made each of the Six Year Transfers and incurred the Obligations to or for the benefit of Defendants in furtherance of a fraudulent investment scheme.

78. As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**COUNT FOUR**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279 AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

79. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

80. At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

81. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

82. BLMIS did not receive fair consideration for any of the Six Year Transfers or the Obligations.

83. BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers or the Obligations.

84.    As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT FIVE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279 AND 11 U.S.C. §§ 544(b), 550(a) AND 551

85.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

86.    At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

87.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

88.    BLMIS did not receive fair consideration for any of the Six Year Transfers.

89.    At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

90.    As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year

Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**COUNT SIX**
**FRAUDULENT TRANSFERS AND OBLIGATIONS – NEW YORK DEBTOR AND
CREDITOR LAW §§ 275, 278 AND/OR 279 AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

91.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

92.    At all times relevant to the Six Year Transfers and Obligations, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

93.    Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

94.    BLMIS did not receive fair consideration for any of the Six Year Transfers or Obligations.

95.    At the time BLMIS made each of the Six Year Transfers or incurred the Obligations, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

96.    As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b), and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and (d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT SEVEN
## RECOVERY OF SUBSEQUENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 278 AND/OR 279 AND 11 U.S.C. §§ 544, 548, 550(a) AND 551

97.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

98.     Each of the Transfers is avoidable under sections 544 and 548 of the Bankruptcy Code, DCL sections 273, 274, 275 and/or 276 and section 78fff-2(c)(3) of SIPA.

99.     On information and belief, the Subsequent Transfers were transferred by Defendants David R. Markin 2003 Trust, David Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2 to Subsequent Transferee Defendant.

100.    Each of the Subsequent Transfers was made directly or indirectly to Subsequent Transferee Defendant.

101.    Subsequent Transferee Defendant is an immediate or mediate transferee of the Subsequent Transfers from Defendants David R. Markin Trust 2003, Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2.

102.    As a result of the foregoing and the avoidance of the within Transfers, pursuant to DCL sections 278 and/or 279, sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Subsequent Transferee Defendant (a) avoiding and preserving the Subsequent Transfers, (b) directing that the Subsequent Transfers be set aside, and (c) recovering the Subsequent Transfers, or the value thereof, from Subsequent Transferee Defendant for the benefit of the estate of BLMIS.

## COUNT EIGHT
## DISALLOWANCE OF RELATED ACCOUNT CUSTOMER CLAIM

103.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

08-01789-cgm   Doc 15176-1   Filed 03/06/17   Entered 03/06/17 14:35:09   Exhibit
Case 1:11-cv-07802-JSR   Document 8   Filed 04/25/12   Page 34 of 37
Exhibit A to Letter to Judge Bernstein    Pg 25 of 38

104.    Defendant David R. Markin is a beneficiary of the Related Account.  Upon information and belief, Defendant David R. Markin is the absolute owner of the Related Account or has a beneficial or equitable interest in the Related Account.

105.    The Related Account Customer Claims should not be allowed pursuant to section 502(d) of the Bankruptcy Code.  Defendant David R. Markin is the recipient of Transfers of BLMIS's property which are avoidable and recoverable under section 78fff-2 (c) (3) of SIPA and sections 544, 547, 548 and/or 550 of the Bankruptcy Code, DCL sections 273, 274, 275, and 276 and section 78fff-2 (c) (3) of SIPA, and Defendant David R. Markin has not returned the Transfers to the Trustee.

106.    The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.  As a result of the foregoing, the Trustee intends to resolve the Related Account Customer Claims and any related objections through the mechanisms contemplated by the Claims Procedures Order.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i.    On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

ii.    On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) avoiding the Obligations, (c) directing

that the Two Year Transfers and Obligations be set aside, and (d) recovering the Two Year

Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

      iii.      On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and

78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the

Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and

(d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the

estate of BLMIS;

      iv.      On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and

78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the

Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and

(d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the

estate of BLMIS;

      v.      On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA:

(a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set

aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the

benefit of the estate of BLMIS;

      vi.      On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(b) and

78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) avoiding the

Obligations, (c) directing that the Six Year Transfers and Obligations be set aside, and

(d) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the

estate of BLMIS;

vii.    On the Seventh Claim for Relief as a result of the avoidance of the within

Transfers, pursuant to DCL section 278 and/or 279, sections 544(b), 548, 550(a) and 551 of the

Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Subsequent

Transfers; (b) directing that the Subsequent Transfers be set aside; and (c) recovering the

Subsequent Transfers, or the value thereof, from Subsequent Transferee Defendant for the

benefit of the estate of BLMIS.

viii.    On the Eighth Claim for Relief, the Related Account Customer Claims should not

be allowed pursuant to section 502(d) of the Bankruptcy Code unless and until the Transfers are

paid or turned over;

ix.    On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001

and 5004, awarding the Trustee prejudgment interest from the date on which the Transfers were

received;

x.    On all Claims for Relief, establishing a constructive trust over the proceeds of the

Transfers in favor of the Trustee for the benefit of BLMIS's estate;

xi.    On all Claims for Relief, assigning of income tax refunds of Defendants from the

United States, state and local governments paid on fictitious profits during the course of the

scheme;

xii.    On all Claims for Relief, awarding the Trustee all applicable interest, costs, and

disbursements of this action; and

xiii.    On all Claims for Relief, granting the Trustee such other, further, and different

relief as the Court deems just, proper and equitable.

Date:    January 25, 2012                          By:    _____
         New York, New York

                                                   **BAKER & HOSTETLER LLP**
                                                   45 Rockefeller Plaza
                                                   New York, New York 10111
Of Counsel:                                        Telephone: (212) 589-4200
                                                   Facsimile: (212) 589-4201
**BAKER & HOSTETLER LLP**                          David J. Sheehan
12100 Wilshire Boulevard, 15th Floor               Email: dsheehan@bakerlaw.com
Los Angeles, California 90025                      Oren J. Warshavsky
Telephone: (310) 820-8800                          Email: owarshavsky@bakerlaw.com
Facsimile: (310) 820-8859                          Tatiana Markel
Matthew I. Bobb                                    Email: tmarkel@bakerlaw.com
Email: mbobb@bakerlaw.com

                                                   *Attorneys for Irving H. Picard, Trustee for the*
                                                   *Substantively Consolidated SIPA Liquidation*
                                                   *of Bernard L. Madoff Investment Securities*
                                                   *LLC and Bernard L. Madoff*

08-01789-cgm    Doc 15176-1    Filed 03/06/17    Entered 03/06/17 14:35:09    Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 29 of 38

Case 1:11-cv-07802-JSR    Document 9    Filed 04/25/12    Page 23 of 37

**Exhibit A**

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| SOUTHPAC TST INTERNATIONAL INC TRUSTEE OF THE DAVID R MARKIN 2003 TRUST | 1C1324 |
| DAVID R MARKIN CHARITABLE REMAINDER UNITST #1 CHAIRMENS CLUB | 1M0091 |
| DAVID MARKIN CHARITABLE REMAINDER TRUST #2 CHAIRMENS CLUB | 1M0094 |

MADC1025_00000001

08-01789-cgm    Doc 15176-1    Filed 03/06/17    Entered 03/06/17 14:35:09    Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 30 of 38
Case 1:11-cv-07802-JSR    Document 3    Filed 04/25/12    Page 29 of 37

Exhibit B

MADC1025_00000002

## BLMIS ACCOUNT NO. 1C1324 - SOUTHPAC TSI INTERNATIONAL INC TRUSTEE OF THE DAVID R MARKIN 2003 TRUST

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/8/2003 | TRANS FROM 1M014830 (1A0148) | 7,237,016 [1] | | | 3,025,000 | | 3,025,000 | - | - | - |
| | CHECK WIRE | | 4,000,000 | | | | 7,025,000 | | | |
| 10/14/2003 | TRANS FROM 1M014830 (1A0148) | 3,287 [2] | | | | | 7,025,000 | | | |
| | CHECK WIRE | | | | | | 7,025,000 | | | |
| 12/24/2003 | CHECK WIRE | (500,000) | | (500,000) | | | 3,025,000 | | | |
| | CHECK WIRE | | | | | (3,025,000) | | | | |
| 11/18/2005 | CHECK WIRE | (3,265,343) | | (3,265,343) | | | (3,265,343) | | | (265,343) |
| | CHECK WIRE | | | | | | (265,343) | | | |
| | **Total:** | | $ 7,000,000 | $ (7,265,343) | $ 3,025,000 | $ (3,025,000) | $ (265,343) | $ - | $ - | $ (265,343) |

[1] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

[2] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

[3] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the account was transferred out of the account on this date.

Page 1 of 1 - 1C1324

08-01789-cgm   Doc 15176-1   Filed 03/06/17   Entered 03/06/17 14:35:09   Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 31 of 38

Case 1:11-cv-07802-JSR   Document 3   Filed 01/25/12   Page 35 of 37

Exhibit B

BLMIS ACCOUNT NO. 1M0091 - DAVID R MARKIN CHARITABLE REMAINDER UNITST #1 CHAIRMEN'S CLUB

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/21/1997 | CHECK WIRE | 4,000,000 | 4,000,000 | - | - | - | 4,000,000 | - | | |
| 5/31/2007 | CHECK | (48,447) | | (48,447) | | | (12,107,533) | | (48,447) | (48,447) |
| | **Total:** | | $ 4,000,000 | $ (16,107,533) | $ - | $ - | $ (12,107,533) | $ - | $ (12,107,533) | $ (12,107,533) |

Page 1 of 1 - 1M0091

MADC1025_00000003

Exhibit B

BLMIS ACCOUNT NO. 1M0094 – DAVID MARKIN CHARITABLE REMAINDER TRUST #2 CHAIRMENS CLUB

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/29/1997 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 1,000,000 | - | - | - |
| | | (3,423,538) | | (3,423,538) | | | (2,423,538) | | (2,423,538) | (2,423,538) |
| 4/11/2007 | CHECK | (5,436) | | (5,436) | | | (2,428,538) | | (5,436) | (5,436) |
| | Total: | $ (5,436) | $ 1,000,000 | $ (3,428,538) | $ - | $ - | $ (2,428,538) | $ - | $ (5,436) | $ (2,428,538) |

MADC1025_00000004

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 33 of 38

Case 1:11-cv-07602-JSR Document 8 Filed 01/25/12 Page 32 of 37

Exhibit B

MADC1025_00000004

BLMIS ACCOUNT NO. 1M0094 – DAVID MARKIN CHARITABLE REMAINDER TRUST #2 CHAIRMENS CLUB

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/29/1997 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 1,000,000 | - | - | - |
| | | (2,423,101) | | (2,423,101) | | | (1,423,101) | | (2,423,101) | (2,423,101) |
| 4/11/2007 | CHECK | (5,436) | | (5,436) | | | (2,428,538) | | (5,436) | (5,436) |
| | Total: | $ (5,436) | $ 1,000,000 | $ (3,428,538) | $ - | $ - | $ (2,428,538) | $ - | $ (5,436) | $ (2,428,538) |

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 34 of 38
Case 1:11-cv-01002-JSR Document 8 Filed 04/26/12 Page 33 of 37 Exhibit

Exhibit B

MADC1025_00000003

BLMIS ACCOUNT NO. 1M091 - DAVID R MARKIN CHARITABLE REMAINDER UNITEST #1 CHAIRMENS CLUB

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/21/1997 | CHECK WIRE | 4,000,000 | 4,000,000 | - | - | - | 4,000,000 | - | | |
| | CHECK WIRE | | | | | | | | | |
| 5/31/2007 | CHECK | (48,447) | | (48,447) | | | (12,107,533) | | (48,447) | (48,447) |
| | Total: | $ (48,447) | $ 4,000,000 | $ (16,107,533) | $ - | $ - | $ (12,107,533) | $ - | $ (12,107,533) | $ (12,107,533) |

08-01789-cgm   Doc 15176-1   Filed 03/06/17   Entered 03/06/17 14:35:09   Exhibit
Exhibit A to Letter to Judge Bernstein    Pg 35 of 38
Case 1:11-cv-01012-JSR   Document 3   Filed 04/25/12   Page 34 of 37

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

October 19, 2009

David R. Markin 2003 Trust
Capital Security Bank Ltd., Trustee
P.O. Box 11
Rarotonga, Cook Islands

Dear David R. Markin 2003 Trust:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claims on BLMIS Account No. 1C1324 designated as Claim Number 002656 and Claim Number 009174 (the latter of which is duplicative of Claim Number 002656) and are combined ("Combined Claim") for purposes of this determination. This letter shall serve as the Trustee's determination with respect to the Combined Claim:

Your Combined Claim for securities is **DENIED**. No securities were ever purchased for your account.

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

MADC1025_00000005

08-01789-cgm  Doc 15176-1  Filed 03/06/17  Entered 03/06/17 14:35:09  Exhibit
Case 1:12-cv-01002-JSR  Document 8  Filed 04/26/12  Page 36 of 37
Exhibit A to Letter to Judge Bernstein    Pg 36 of 38

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $10,290,343.40), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $10,025,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($265,343.40) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your Combined Claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Exhibit A to Letter to Judge Bernstein Pg 37 of 38
Case 1:11-cv-08026-JSR Document 5 Filed 01/25/12 Page 38 of 37 Exhibit

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

_____

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:     Carole Neville
        Sonnenschein Nath & Rosenthal LLP
        1221 Avenue of the Americas, 25th Floor
        New York, NY 10020

08-01789-cgm Doc 15176-1 Filed 03/06/17 Entered 03/06/17 14:35:09 Exhibit
Exhibit A to Letter to Judge Bernstein Pg 38 of 38

Case 1:12-cv-01002-JSR Document 8 Filed 04/25/12 Page 37 of 37

| Table 1 | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 8/8/2003 | TRANS FROM 1M014830 | $7,237,016.31 | $3,025,000.00 |
| 8/21/2003 | CHECK WIRE | $4,000,000.00 | $4,000,000.00 |
| 10/14/2003 | TRANS FROM 1M014830 | $3,287.40 | $0.00 |
| 5/24/2006 | CHECK WIRE | $3,000,000.00 | $3,000,000.00 |
| **Total Deposits:** | | $14,240,303.71 | $10,025,000.00 |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 12/15/2003 | CHECK WIRE | ($3,500,000.00) | ($3,500,000.00) |
| 12/24/2003 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 1/10/2005 | TRANS TO 1M021130 | ($5,556,417.08) | ($3,025,000.00) |
| 11/18/2005 | CHECK WIRE | ($3,265,343.40) | ($3,265,343.40) |
| **Total Withdrawals:** | | ($12,821,760.48) | ($10,290,343.40) |
| **Total deposits less withdrawals:** | | $1,418,543.23 | ($265,343.40) |

MADC1025_00000008