**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date: April 26, 2017
Hearing Time: 10:00 AM (EST)
Objection Deadline: April 3, 2017

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br><br>　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　Debtor. | |

**TRUSTEE'S SUPPLEMENTAL MOTION AND MEMORANDUM OF LAW TO
AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS
HOLDING INTERESTS IN RICHARD B. FELDER AND
<u>DEBORAH FELDER TENANCY IN COMMON</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 2

BACKGROUND .......................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE STRUCTURE OF THE FELDER TENANCY IN COMMON, BLMIS RECORDS, CLAIMS, AND OBJECTIONS ........................................... 4

        1.    Felder Objecting Claimants' Claims ............................................................ 4

        2.    Felder Tenancy In Common Structure and BLMIS Records ...................... 5

    C.    THE CUSTOMER DECISIONS ........................................................................ 7

    D.    THE SIPC SERIES 100 RULES AND RELATED DECISIONS ...................... 8

ARGUMENT ............................................................................................................................... 10

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
204 B.R. 99 (Bankr. S.D.N.Y. 1997) ........................................................................... 9, 10, 11

*Aozora v. Sec. Inv'r Prot. Corp.*,
480 B.R. 117 (S.D.N.Y. 2012) ............................................................................................ 13

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) .................................................................................. 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ................................................................................ 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
515 B.R. 161 (Bankr. S.D.N.Y. 2014) ................................................................................ 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011) ............................................................................................. 2, 7

*In re Inv'rs Center, Inc.*,
129 B.R. 339 (Bankr. E.D.N.Y. 1991) ................................................................................. 8

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) ................................................................................ 14

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013) ............................................................................... 2, 7, 11, 13

*Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*,
218 B.R. 689 (Bankr. S.D.N.Y. 1998) .................................................................................. 8

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
277 B.R. 520 (Bankr. S.D.N.Y. 2002) ............................................................................ 3, 14

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
533 F.2d 1314 (2d Cir. 1976) ..................................................................................... passim

*SEC v. Madoff*,
No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ..................... 2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
463 F.3d 125 (2d Cir. 2006) ............................................................................................... 13

**Statutes**

15 U.S.C. § 78aaa *et seq.* ........................................................................................................ 1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

15 U.S.C. § 78eee(a)(4) .................................................................................................................3

15 U.S.C. § 78eee(b)(3) .................................................................................................................3

15 U.S.C. § 78eee(b)(4) .................................................................................................................3

15 U.S.C. § 78fff-1(a) ....................................................................................................................3

15 U.S.C. § 78fff-3(a) ....................................................................................................................3

15 U.S.C. § 78*lll*(2)............................................................................................................2, 3, 10

15 U.S.C. § 78*lll*(4) .......................................................................................................................3

15 U.S.C. § 78*lll*(11).....................................................................................................................3

**Other Authorities**

17 C.F.R § 105 ..............................................................................................................................8

17 C.F.R § 105(a) ........................................................................................................................10

17 C.F.R. § 300.100(b) ..................................................................................................................8

17 C.F.R. § 300.105(a).................................................................................................8, 9, 10, 11

17 C.F.R. § 300.105(b) ............................................................................................................8, 11

17 C.F.R. § 300.105(d) ...............................................................................................8, 9, 10, 11

20 Am. Jur. 2d Cotenancy and Joint Ownership § 31 .................................................................10

20 Am. Jur. 2d Cotenancy and Joint Ownership § 35 .................................................................10

20 Am. Jur. 2d Cotenancy and Joint Ownership § 36 .................................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined supplemental motion and memorandum of law (the "Supplemental Motion") to affirm the denial of three claims filed by claimants Jeffrey D. Felder, Jonathan Felder, and The Richard and Deborah Felder Foundation (the "Felder Foundation," collectively, the "Felder Objecting Claimants") who objected to the Trustee's determinations and who claim to be cotenants of the Richard B. Felder and Deborah Felder Tenancy in Common (the "Felder Tenancy In Common"). Following the filing of the Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in Judy L. Kaufman et al. Tenancy In Common, Richard B. Felder and Deborah Felder Tenancy In Common, and Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy In Common (ECF No. 14846) (the "Motion"), Jeffrey D. Felder contacted the Trustee regarding discovery he had previously provided to a former representative of the Trustee in response to those discovery requests. Counsel for the Trustee has now reviewed those responses and the Trustee submits this Supplemental Motion and Memorandum in response thereto.[2]

The Felder Objecting Claimants are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal in support of the Motion ("Sehgal Declaration"). ECF No. 14845 (Jan. 13, 2017). This Supplemental Motion is based upon the law set forth below as well as the facts set

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] Pursuant to the Trustee's Notice of Adjournment filed on February 21, 2017, the Trustee and the Felder Objecting Claimants have stipulated to an extended briefing schedule of the Felder Objecting Claimants' objection with a hearing scheduled for April 26, 2017. ECF No. 15058.

forth in the Sehgal Declaration and the accompanying Supplemental Declaration of Stephanie Ackerman ("Ackerman Supplemental Declaration").

## PRELIMINARY STATEMENT

The Felder Objecting Claimants seek separate customer status in this SIPA proceeding apart from the customer status of the Felder Tenancy In Common based on their asserted interest in the Felder Tenancy In Common. The Felder Objecting Claimants were cotenants in the Felder Tenancy In Common but did not have individual accounts in their own names, and therefore, are not entitled to separate customer status under SIPA. The current Motion seeks to apply the Second Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976) ("*Morgan Kennedy*"), and their progeny, as well as the SIPC Series 100 Rules addressing the question of who is a "customer" under SIPA, to the Felder Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Sehgal Declaration, disallowing their claims, and overruling the related claims objections on the grounds that Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[3]

## BACKGROUND

### A.   THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-4 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

---

[3] The Trustee reserves all other bases to affirm his denial of such claims.

2

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to the fullest extent possible to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors, including claimants to the customer fund. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

3

On December 23, 2008, this Court entered a Claims Procedures Order. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection with this Court within a certain time period, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

**B.    THE STRUCTURE OF THE FELDER TENANCY IN COMMON, BLMIS RECORDS, CLAIMS, AND OBJECTIONS**

**1.    Felder Objecting Claimants' Claims**

BLMIS account 1ZA249 was held in the name of the Felder Tenancy In Common (the "Felder Tenancy In Common Account"). Sehgal Decl., ¶ 6, Ex. 1. The books and records of BLMIS reflect money deposited or withdrawn on behalf of the Felder Tenancy In Common, and not attributed to any of the Felder Objecting Claimants individually. *See* Sehgal Decl., ¶¶ 19, Ex. 7. Therefore, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for the Felder Tenancy In Common and not any amounts owing or owed by the individual Felder Objecting Claimants. *See id.*

The claims at issue in this Supplemental Motion involve only the purported interests held by the Felder Objecting Claimants who are claiming interests in the Felder Tenancy In Common and not the interests of the Felder Tenancy In Common itself.[4] The Felder Objecting Claimants, the three (3) claims filed by them, and the one (1) joint objection to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. Sehgal Decl. ¶¶ 9-13, Exs. 1-3. The Trustee denied the three (3) claims submitted by the cotenants because the

---

[4] The Felder Tenancy In Common's direct claim, Claim number 001513, the Trustee's determination thereof, and the portion of the Felder Objecting Claimants' objection as to the determination of that claim is not at issue in the Motion or the Supplemental Motion.

4

Felder Objecting Claimants lacked individual BLMIS accounts in their names and thus were not customers of BLMIS.  Sehgal Decl. ¶11.

The Trustee allowed the Felder Tenancy In Common direct claim and has made all required distributions in connection with this claim, as described further below.  This Supplemental Motion addresses the objection to the determination of the specified claims by the Felder Objecting Claimants identified on Exhibit 2 of the Sehgal Declaration.  Since receiving the docketed objection to the claims determinations, the Trustee served discovery requests on the Felder Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder.  The Felder Objecting Claimants have provided discovery as detailed herein.

## 2.    Felder Tenancy In Common Structure and BLMIS Records

The Felder Tenancy In Common Account was opened on December 12, 1992 in the name of Richard B. Felder and Deborah Felder Tenants In Common.  Sehgal Decl. Ex. 7, AMF00006687, 9.  Richard Felder signed the BLMIS account opening documents including the Customer Agreement, Trading Authorization, and Option Agreement.  Sehgal Decl. Ex. 7, AMF00006689-98.  The cover letter signed by Richard Felder at the time Felder Tenancy In Common Account was opened directs BLMIS to establish it as a tenancy in common and states that the funds therein are owned by him, Deborah Felder, Jeffrey D. Felder, and Jonathan Felder as tenants in common.  Sehgal Decl. Ex. 7, AMF00006684-5.  This is the only reference to two of the three Felder Objecting Claimants—Jeffrey D. and Jonathan Felder—in the BLMIS books and records. The third Felder Objecting Claimant—The Richard and Deborah Felder Foundation (the "Felder Foundation")—is not referenced in the customer file for the Felder Tenancy In Common Account at all.

5

Felder Tenancy In Common Account was managed by Richard Felder at all times; all deposits were sent to BLMIS by letter from Richard Felder and withdrawal requests were signed by both Deborah and Richard Felder or Richard Felder alone. *See, e.g.*, Sehgal Decl. Ex. 7, AMF00006667-70. Each deposit or withdrawal request was accompanied by a handwritten note from Richard Felder directing BLMIS to deposit into or withdraw from the Felder Tenancy In Common Account. *Id.*. Virtually all of these handwritten notes refer to the Felder Tenancy In Common Account as "our account" or "our investment account," and none reference any of the Felder Objecting Claimants. *Id.*

The Trustee served discovery requests on Jeffrey D. Felder as the attorney for the three Felder Objecting Claimants and he replied on behalf of each. *See* Ackerman Supp. Decl. ¶¶ 8-10. The Felder Objecting Claimants admitted that they did not have an account in their names at BLMIS, never deposited or withdrew securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, never entered into any contracts in their names with BLMIS, and that any funds they received were transmitted from Richard Felder and not from BLMIS directly. *See* Ackerman Supp. Decl. ¶ 9, Ex. 1. Felder Objecting Claimants Jeffrey D. Felder and Jonathan Felder further admitted that they never made a payment of cash directly to BLMIS for credit to the account. *Id.* The Felder Foundation denied this request for admission citing three withdrawals from its bank account that were checks sent directly to BLMIS by Richard Felder. *Id.*

Richard and Deborah Felder filed a customer claim on behalf of the Felder Tenancy In Common. The Trustee issued a determination letter which allowed the claim in the amount of $3,768,727.94. To allow for the conclusion of discussions between the Trustee and the account

6

holder, the Trustee extended the objection period and an objection to the Trustee's determination was filed on February 19, 2011.[5]

**C.    THE CUSTOMER DECISIONS**

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who bought interests in a limited partnership that in turn invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted). Because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, the claimants in *Kruse* failed to meet this fundamental requirement of entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426–7.

The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS. *Id.* Indicia of customer status include: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Morgan Kennedy*, 533 F.2d at 1318). Thus, without entrustment of assets to BLMIS and evidence of any of the indicia of customer status, the Second

---

[5] The Supplemental Motion does not seek to disallow the claim of the account holder, Richard B. Felder and Deborah Felder Tenants In Common, or seek to overrule the related objection to the determination of that claim (the "Felder TIC Objection"). ECF No. 3865. However, the Felder TIC Objection was also filed on behalf of the three Felder Objecting Claimants. The Motion seeks to overrule only that portion of the Felder TIC Objection that seeks customer status for the Felder Objecting Claimants. The remainder of the Felder TIC Objection will be resolved through a future motion.

7

Circuit held that the objecting claimants failed to sustain their burden of proving that they are customers of BLMIS. Since *Kruse*, this Court has granted fifteen motions by the Trustee to affirm his determinations that claimants who invested in a BLMIS accountholder are not customers under SIPA.[6]

### D. THE SIPC SERIES 100 RULES AND RELATED DECISIONS

SIPC's Series 100 Rules set forth the circumstances under which "accounts held by a customer in different capacities" will be treated as separate customers of the debtor. 17 C.F.R. § 300.100(b) (2014). SIPC's Rules are controlling because the SEC promulgated the Rules and as result, they "have the force and effect of law." *Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998); *In re Inv'rs Center, Inc.*, 129 B.R. 339, 348 (Bankr. E.D.N.Y. 1991) ("SIPC's rules will have the force and effect of law.").

An account held by a tenancy in common will be treated as held by a single customer under SIPC Rule 105 for purposes of SIPA if it is a "qualifying joint account." 17 C.F.R. §§

---

[6] *See* Order Approving Trustee's Motion To Affirm His Determinations Denying Claims of Claimants Holding Interests In: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., And Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016). The Motion, other than the portion relating to the Felder Objecting Claimants, is presently scheduled for hearing on March 29, 2017. *See* Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in Judy L. Kaufman et al. Tenancy In Common, Richard B. Felder and Deborah Felder Tenancy In Common, and Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy In Common, ECF No. 14846 (Jan. 13, 2017).

8

300.105(a),(b). SIPC Rule 105 provides for two types of qualifying joint accounts. 17 C.F.R. §§ 300.105(a),(d). SIPC Rule 105(a) provides for a qualifying joint account if all joint account holders "possess[] authority to act" on behalf of the entire account. 17 C.F.R. §§ 300.105(a). SIPC Rule 105(d) provides for a qualifying joint account where *less* than all joint account holders are authorized to act on behalf of the account. 17 C.F.R. §§ 300.105(d). If any cotenant of the tenancy in common lacks the authority to act on behalf of the entire account, the result is that the tenancy in common will be considered either an individual account or a "qualifying joint account of the co-owner or co-owners" who do "have[] the exclusive power to act." 17 C.F.R. § 300.105(d). Whether an account is a qualifying joint account under SIPC Rule 105(a) or 105(d), SIPA will treat the tenancy in common as the customer, and not the individual cotenants.

In *Morgan Kennedy*, the Second Circuit relied on SIPC Rule 105 when considering the customer status of a joint account in the context of profit-sharing trustees. "Rule 105 . . . provides that where co-owners of a qualifying joint account also hold other accounts in different capacities, the joint account will be treated as belonging to a 'separate customer'; . . . and the co-owners will be required to divide the single award in proportion to their ownership interests in the account." *Morgan Kennedy*, 533 F.2d at 1320. The court further clarified that "under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account." *Id*. Relying on *Morgan Kennedy* and the SIPC Rules, the court subsequently held that "[j]oint account holders constitute a single 'customer' under SIPA" and the "joint account holders *share any payments on the account of a valid customer claim in proportion to their ownership interests in the account*." *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997) (emphasis added).

9

# ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer," an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities.

The Felder Objecting Claimants claim customer status because each contributed to the Felder Tenancy In Common as a cotenant. Unlike a partnership or other investment vehicle, a "tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 31 (2016).[7] But the Felder Objecting Claimants' ownership interests in the tenancy's underlying assets do not translate to each Objecting Claimant having individual customer status under SIPA. Rather, the tenancies in common "are separate 'customers' under [SIPA] § 78*lll*(2)" and collectively the "[j]oint account holders constitute a single 'customer' under SIPA." *Adler*, 204 B.R. at 105-6. The joint account holders then share any payments on account of a valid customer claim in proportion to their individual ownership interests in the account. *Id.* (citing *Morgan Kennedy*, 533 F.2d at 1320).

As a tenancy in common, the Felder Tenancy In Common Account is a qualifying joint account under SIPC Rule 105. Under SIPC Rule 105(a), all cotenants must have the authority to act on behalf of the entire account in order for the account to be a qualifying joint account of all

---

[7] There are no local governmental registration requirements for the formation of a tenancy in common, and it is enough that the account was expressly designated with BLMIS as a tenancy in common. *See* 20 Am. Jur. 2d Cotenancy and Joint Ownership at §§ 35, 36 ("An owner's conveyance to himself and another expressly as tenants in common results in [a tenancy in common].").

10

cotenants. 17 C.F.R. § 300.105(a). If any cotenants lack that authority, the account is a qualifying joint account *only* as to the co-tenants who do possess such authority. 17 C.F.R. § 300.105(d). Based on the information available to the Trustee, the Felder Tenancy In Common is a qualifying joint account under SIPC Rule 105(d). Under SIPC Rule 105(d), unless all cotenants possess authority to act on behalf of the entire account, the account is a qualifying joint account *only* as to the co-tenants who do possess such authority. As discussed in detail above, and based on the BLMIS books and records, Richard and Deborah Felder were the only individuals authorized to act on behalf of the Felder Tenancy In Common with BLMIS. Sehgal Decl. Ex. 7, AMF00006689-98. Therefore, the Felder Tenancy In Common is a qualifying joint account as to Richard and Deborah Felder, but not the Felder Objecting Claimants—Jeffrey D. Felder, Jonathan Felder, and the Felder Foundation.[8] And, as a qualifying joint account, the Felder Tenancy In Common is a "separate customer" of BLMIS pursuant to SIPC Rule 105(b) and SIPA. *Adler*, 204 B.R. at 105. Thus the "the joint account holders [for each account] constitute a single 'customer' under SIPA [78*lll*(2)]." *Id.* at 105-6. As a result, the Felder Objecting Claimants are not individual customers under SIPA and may only share ratably in any valid customer claim attributable to the Tenancy In Common. *See id.*; *Morgan Kennedy*, 533 F.2d at 1320.

Furthermore, the Felder Objecting Claimants do not meet the requirements for customer status as outlined in *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the

---

[8] *See supra* Section B(2).

11

debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318. In particular, the Felder Objecting Claimants' responses to the requests for admissions show that they lack individual relationships with BLMIS that fit the *Morgan Kennedy* criteria and that their claims of "customer" status are unsupported. In fact, all admitted that: (i) the relevant account was not titled in their name;[9] (ii) that they never received investment statements or tax statements in their names from BLMIS;[10] (iii) never deposited securities directly with BLMIS;[11] and (iv) that they never entered into any contracts in their names with BLMIS;[12] (v) that they never withdrew funds directly from BLMIS[13] and that any funds received by the Felder Objecting Claimants were transmitted to them by Richard B. Felder.[14] Additionally, Jeffrey D. Felder and Jonathan Felder admitted that they never paid cash directly to BLMIS for credit to the Felder Tenancy In Common Account[15] and all admit that they never made a payment of cash directly to BLMIS for credit to an account in their name.[16]

---

[9] Ackerman Supp. Decl., Ex. 1, ¶ 1.

[10] Ackerman Supp. Decl., Ex. 1, ¶¶ 9, 10.

[11] Ackerman Supp. Decl., Ex. 1, ¶ 6.

[12] Ackerman Supp. Decl., Ex. 1, ¶ 11.

[13] Ackerman Supp. Decl., Ex. 1, ¶ 7.

[14] Ackerman Supp. Decl., Exs. 1, ¶ 8. The Felder Objecting Claimants deny that the funds were transmitted to them by the "Accountholder" but explain further that the funds were "transmitted by Richard Felder." *Id.*

[15] Ackerman Supp. Decl., Ex. 1, ¶ 5.

[16] Ackerman Supp. Decl., Ex. 1, ¶ 4.

Despite denying that their only relationship to BLMIS existed by way of their relationship to the Felder Tenancy In Common,[17] and denying that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS,[18] the Felder Objecting Claimants provided no evidence of direct and independent relationships with BLMIS. Instead, the BLMIS check notations and quarterly account reports produced by the Felder Objecting Claimants further support the conclusion that they were unknown to BLMIS and that Richard B. Felder and Deborah Felder were the sole representatives of the Felder Tenancy In Common. *See, e.g.*, Ackerman Supp. Decl. Ex. 2, MCMDP_00012135-40. Specifically, BLMIS sent all account statements and documentation for the Felder Tenancy In Common to Richard and Deborah Felder at their home address and those documents make no reference to the Felder Objecting Claimants. *Id.* Instead, it was Richard or Deborah Felder who noted the distributions among the cotenants in handwritten notations on the disbursement records *after* they were received from BLMIS, and not BLMIS. *Id.* Thus, the Felder Objecting Claimants' responses and document production fail to meet the standard for customer status under *Kruse* or the SIPC Rules.

Similarly, the Felder Foundation's argument that its deposits of checks with BLMIS gives rise to customer status also fails. *Morgan Kennedy* did not identify any single factor as determinative of customer status, but rather identified a number of factors, none of which are met by the Felder Foundation. *Aozora v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117, 127 (S.D.N.Y. 2012) (citing *Morgan Kennedy*, 533 F.2d at 1314-9) ("*Morgan, Kennedy* did not rest its holding solely on the issue of control. Rather . . . the opinion detailed a number of factors . . . ."). Thus,

---

[17] Ackerman Supp. Decl., Ex. 1, ¶ 12.

[18] Ackerman Supp. Decl., Ex. 1, ¶ 13.

13

because the Felder Foundation is unable to meet any of the remaining *Morgan Kennedy* factors—it did not maintain an account in its name, the checks at issue were deposited into the Felder Tenancy In Common account, and the BLMIS records for which are devoid of any reference to the Felder Foundation—its deposit of funds with BLMIS for the Felder Tenancy In Common alone is insufficient for a finding of customer status.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). Thus, customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 166 (Bankr. S.D.N.Y. 2014); *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Adler*, 277 B.R. at 557 ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Felder Objecting Claimants have not met this burden. Thus, under Second Circuit precedent and the SIPC Series 100 Rules, the Felder Objecting Claimants are not SIPA customers.

14

**CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determinations denying the Felder Objecting Claimants' three claims, overrule the Felder Objecting Claimants' objection, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 15, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*