# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

March 21, 2017

Edward J. Jacobs
direct dial: 212.589.4674
ejacobs@bakerlaw.com

**VIA ECF AND ELECTRONIC MAIL**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York 10004-1408
Bernstein.chambers@nysb.uscourts.gov

Re:   *In re: Bernard L. Madoff—Adversary Proceedings Listed on Exhibit 1*

Dear Judge Bernstein:

We are counsel to Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* and the estate of Bernard L. Madoff. We write to request a conference pursuant to Local Bankruptcy Rule 7007-1 in advance of the Trustee's proposed motion to quash subpoenas served in the above-referenced adversary proceedings.

Ms. Chaitman has served subpoenas on 10 former BLMIS employees in 87 separate adversary proceedings without any regard to relevant fact discovery deadlines, the needs of the individual cases, or relevant orders by this Court.[1] In addition to the deposition testimony of these individuals, the subpoenas seek "documents that would indicate that BLMIS engaged in legitimate trading for its Investment Advisory customers prior to 1992," as well as the same records for its Proprietary Trading business without any time limitation at all. *See* Exhibits 3 through 12, Copies of Subpoenas noticed by Ms. Chaitman. As a preliminary matter, none of these individuals were employed by BLMIS prior to 2000, and thus they do not have the requisite personal knowledge to testify as to such subjects. *See, e.g., Eisemann v. Greene*, Case No. 97 Civ. 6094, 1998 WL 164821, *2 (S.D.N.Y. April 8, 1998) (quashing subpoena where deponent had no personal knowledge of relevant facts).

---

[1] Despite the Trustee's stated objections to the subpoenas, Ms. Chaitman has refused to withhold service, or even modify any of the subpoenas consistent with the Trustee's objections. *See* Exhibit 2, Email thread between Ms. Chaitman and Edward J. Jacobs.

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver
Houston   Los Angeles   New York   Orlando   Philadelphia   Seattle   Washington, DC

Moreover, the procedural posture of each case makes service of these subpoenas in any of the cases improper. First, fact discovery is closed in 14 of the 87 cases in which the subpoenas have been served, and thus the subpoenas should be quashed with respect to such cases. *See, e.g., McKay v. Triborough Bridge and Tunnel Authority*, Case No. 05 Civ. 8936, 2007 WL 3275918, *2 (S.D.N.Y. Nov. 7, 2007) (collecting cases and noting that "parties may not issue subpoenas as a means to engage in discovery after the discovery deadline has passed") (quotations omitted); *see* Exhibit 13, List of Cases Where Fact Discovery is Closed. When the Trustee raised this objection, Ms. Chaitman responded that she was nevertheless entitled to serve the subpoenas in these 14 cases because she would never have known "the nature and extent of the fraud" without Madoff's deposition testimony. *See*, Exhibit 2, Email thread between Ms. Chaitman and Edward J. Jacobs.

This position is simply at odds with reality. In his 2009 criminal plea allocution, Madoff stated that "[his] fraud began in the early 1990s." *See* Exhibit 14, March 12, 2009 Hearing Transcript at 25, *United States of America v. Bernard L. Madoff*, Case No. 09-213. As such, from the very inception of these cases, Ms. Chaitman had the exact same evidentiary basis to support her position as she does now—which is to say, not much at all.[2] In any event, these adversary proceedings involve an underlying Ponzi scheme predicated upon falsified <u>trades</u>, and thus the notion that Ms. Chaitman could not conceive of noticing the depositions of BLMIS <u>traders</u> and requesting purported BLMIS <u>trading</u> records without Madoff's testimony is simply not credible. Ms. Chaitman has also been aware of these individuals for years, and therefore her delays are inexcusable.

Second, these subpoenas are improper in connection with any case <u>not</u> participating in the ongoing deposition of Bernard L. Madoff. The subpoenas seek information that is clearly related to the specific areas of inquiry this Court has authorized in connection with that deposition—which generally relate to Ms. Chaitman's position that the Ponzi scheme did not begin until 1992. *See* Order Authorizing the Deposition of Bernard L. Madoff, Exhibit 15 (the "Deposition Order"). Pursuant to the Deposition Order, and the accompanying "opt-in" process ratified by the Court, only certain cases were authorized to participate—and those that have not opted-in have conceded the issues the Madoff deposition was authorized to address. Because the instant subpoenas on their face directly relate to the areas of inquiry specifically contemplated by the Deposition Order, the subpoenas are improper in any case not previously authorized to participate in that deposition.

Finally, the subpoenas are, at best, premature with respect to those cases permitted to participate in the Madoff deposition. The Deposition Order is clear that fact discovery was extended "for the limited and sole purpose of taking Madoff's deposition," and otherwise, "the deadlines in the applicable case management orders remain unchanged." *Id.* at 7. The Deposition Order further states that the parties may "move the Court for further discovery based upon Madoff's testimony." *Id.* Because the BLMIS trading records sought by the subpoenas are clearly related to the topics authorized in the Deposition Order, Ms. Chaitman has failed to obtain the required authorization from the Court before proceeding with this discovery. As

---

[2] As has been widely discussed by commentators since his plea allocution, Madoff's statements concerning the start date of the fraud appear to have been motivated by a desire to protect his family and BLMIS insiders. There is nothing new in his more recent testimony, which only continues to further these unfounded and confused assertions.

contemplated by the Deposition Order, any applications for further discovery based on Mr. Madoff's testimony should be made after the deposition is completed.

Indeed, obtaining prior authorization from the Court pursuant to the Deposition Order is a vital mechanism that ensures discovery in these cases proceeds in a controlled and efficient manner—particularly given that the subpoenas seek, at best, marginally relevant information. Specifically, Ms. Chaitman has conceded that BLMIS was a fraud beginning, at the latest, in 1992, and thus any post-1992 trading records are irrelevant to the issues in dispute. *See* Exhibit 16, December 13, 2016 Arbitration Transcript at 221 ("Once Mr. Madoff says the fraud started in 1992, I'm not going to argue that it started later. Right. So I'm only focusing on the period prior to 1992.").

Moreover, even if Ms. Chaitman can prove that the fraud began in 1992, the liability for the two-year fictitious profits would be impacted in only two out of the 59 Chaitman LLP cases that are participating in the ongoing Madoff deposition. *See* Exhibit 17, Declaration of Matthew B. Greenblatt, dated August 19, 2016 (the "Greenblatt Declaration"). Given Ms. Chaitman's concession that the Ponzi scheme began, at the latest, in 1992, as well as the marginal impact of any recalculation of her clients' net-equity based on a 1992 start date, Ms. Chaitman's service of subpoenas in virtually all of her cases seeking pre-1992 trading records is completely overbroad.[3]

In addition, and as briefly noted above, Ms. Chaitman's assertion that this discovery is even based on Madoff's deposition is specious. At their core, the subpoenas seek BLMIS trading records and testimony from former BLMIS traders concerning their purported trading activities. Ms. Chaitman could have, and should have, pursued this discovery years ago, particularly given Madoff's above-referenced statement in his plea allocution. The Trustee submits that the Deposition Order's provision permitting potential follow-up discovery "based upon Madoff's testimony" should be construed as only permitting discovery that could not have been pursued without his testimony. The basic trading information Ms. Chaitman seeks here clearly does not meet that standard.

While the Trustee has filed amended case management orders with extended deadlines in many of the cases reflected on Schedule A to the subpoenas, this was due to Ms. Chaitman's refusal to produce requested discovery and to provide dates for depositions within the relevant fact discovery periods. Moreover, after months of arbitrations with Judge Maas resulting in numerous orders unfavorable to her clients, Ms. Chaitman is now taking the position that those

---

[3] On several occasions, the Court has inquired whether the Trustee would be willing to concede, in certain cases, that the Ponzi scheme began in 1992 in order to render irrelevant any further discovery into BLMIS's purported pre-1992 trading activities. While the Trustee understands why this may seem like an effective solution to the various discovery disputes that continue to arise, neither Ms. Chaitman nor any of the other participating defense counsel have suggested that such a concession would meaningfully resolve any of these disputes. Indeed, Ms. Chaitman and others have stated that they disagree with Mr. Greenblat's conclusions that the vast majority of the adversary proceedings participating in the Madoff deposition would be unaffected by a finding that the Ponzi scheme began in 1992. Moreover, the Trustee is fundamentally opposed to conceding anything that he does not believe to be true, particularly given the hundreds of outstanding adversary proceedings and claims the Trustee continues to prosecute and administer, and the resultant—and perhaps unforeseeable—case-wide implications any such concession might involve.

orders only apply in select cases—which may force the Trustee to file case-by-case motions to compel addressing identical discovery disputes.[4] *See* Exhibit 18, February 9, 2017 Arbitration Transcript, at 9-10. Ms. Chaitman has also filed a letter requesting that all of her cases be placed on a common expert rebuttal track, which the Trustee has opposed. *See* ECF Nos. 78 and 79, *Picard v. Wilenitz et al.*, Adv. Pro. No. 10-04995. Notwithstanding Ms. Chaitman's constant delays and discovery deficiencies, the Trustee has endeavored to avoid burdening the Court and Judge Maas with additional discovery disputes. Yet Ms. Chaitman has clearly taken advantage of the Trustee's cooperativeness by serving these subpoenas without prior authorization, as required by the Deposition Order.

Given all of the above, the Trustee submits that these subpoenas are, at best, premature and that Ms. Chaitman should be required to make a separate application to the Court—after the completion of Madoff's deposition—justifying any additional discovery that is related to the deposition and otherwise discoverable. At the very least, the subpoenas should be authorized one at a time based upon individual demonstrations of relevance, proportionality, and need. This is consistent with a recent order by Judge Maas denying Ms. Chaitman's motion to compel similar records in the Trustee's possession. *See* Exhibit 19, Discovery Arbitrator's Order, dated March 15, 2017. Pursuant to that Order, Ms. Chaitman was directed to specifically articulate what records she seeks and demonstrate how those records satisfy the relevance and proportionality requirements of Fed. R. Civ. P. 26(b)(1). *Id.* at 7. Ms. Chaitman should be required to make a similar showing with respect to the subpoenas at issue here—and the blunderbuss service of ten subpoenas without articulating how each of these individuals might have uniquely relevant and proportional information clearly does not do the job.

Accordingly, the Trustee respectfully requests that the subpoenas be quashed without qualification with respect to (i) those cases where fact discovery is closed and (ii) those cases <u>not</u> permitted to participate in the Madoff deposition. For those cases permitted to participate in the Madoff Deposition, the subpoenas should be adjourned until further consideration by the Court upon completion of the Madoff Deposition, as contemplated by the Deposition Order.

Respectfully submitted,

/s/ *Edward J. Jacobs*

Edward J. Jacobs
Partner

cc:  Helen Davis Chaitman (via email)

---

[4] The Trustee will be submitting a separate letter addressing Ms. Chaitman's refusal to apply Judge Maas's orders to all of her cases involving identical disputes and circumstances.