# EXHIBIT 16

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------)
In re:                        ) SIPA LIQUIDATION
                              )
BERNARD MADOFF INVESTMENT     ) No. 08-01789 (SMB)
SECURITIES LLC,               )
                              )
             Debtor.          )(Substantively
                              ) Consolidated)
------------------------------)
In re:                        )
                              )
BERNARD L. MADOFF,            )
                              )
             Debtor.          )
------------------------------)
IRVING H. PICARD, Trustee for )
the Liquidation of Bernard L. )
Madoff Investment Securities  )
LLC,                          )
                              ) Adv. Pro. No.
             Plaintiff,       ) 10-04995 (SMB)
                              )
             v.               )
                              )
TRUST U/ART FOURTH O/W/O      )
ISRAEL WILENITZ,              )
                              )
EVELYN BEREZIN WILENITZ,      )
individually, and as Trustee  )
and Beneficiary of the Trust  )
U/ART Fourth O/W/O Israel     )
Wilenitz,                     )
                              )
SARA SEIMS, as Trustee of the )
Trust U/ART Fourth O/W/O      )
Israel Wilenitz,              )
                              )
             Defendants.      )
------------------------------)

        (CAPTION CONTINUED ON THE NEXT PAGE)

Page 2

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for )
 2   the Liquidation of Bernard L. )
     Madoff Investment Securities  )
 3   LLC,                          )
                                   ) Adv. Pro. No.
 4              Plaintiff,         ) 10-04818 (SMB)
                                   )
 5   v.                            )
                                   )
 6   TOBY HARWOOD,                 )
                                   )
 7              Defendant.         )
     ------------------------------)
 8   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L. )
 9   Madoff Investment Securities  )
     LLC,                          )
10                                 ) Adv. Pro. No.
                Plaintiff,         ) 10-04914 (SMB)
11                                 )
     v.                            )
12                                 )
     EDYNE GORDON, in her capacity )
13   as the executrix and primary  )
     beneficiary of the estate of  )
14   Allen Gordon,                 )
                                   )
15              Defendant.         )
     ------------------------------)
16   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L. )
17   Madoff Investment Securities  )
     LLC,                          )
18                                 ) Adv. Pro. No.
                Plaintiff,         ) 10-04826 (SMB)
19                                 )
     v.                            )
20                                 )
     ESTATE OF BOYER PALMER, DIANE )
21   HOLMERS, in her capacity as   )
     Personal Representative of the)
22   Estate of Palmer, and BRUCE   )
     PALMER, in his capacity as    )
23   Personal Representative of the)
     Estate of Boyer Palmer,       )
24                                 )
                Defendant.         )
25   ------------------------------)
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                                    Page 3

```
 1   ------------------------------)
     IRVING H. PICARD, Trustee for )
 2   the Liquidation of Bernard L. )
     Madoff Investment Securities  )
 3   LLC,                          )
                                    ) Adv. Pro. No.
 4               Plaintiff,         ) 10-04644 (SMB)
                                    )
 5   v.                            )
                                    )
 6   RUSSELL L. DUSEK,             )
                                    )
 7               Defendant.        )
     ------------------------------)
 8   IRVING H. PICARD, Trustee for )
     the Liquidation of Bernard L. )
 9   Madoff Investment Securities  )
     LLC,                          )
10                                  ) Adv. Pro. No.
                 Plaintiff,         ) 10-04541 (SMB)
11                                  )
     v.                            )
12                                  )
     KENNETH W. PERLMAN; FELICE J. )
13   PERLMAN; and SANFORD S.       )
     PERLMAN,                      )
14                                  )
                 Defendant.        )
15   ------------------------------)
     IRVING H. PICARD, Trustee for )
16   the Liquidation of Bernard L. )
     Madoff Investment Securities  )
17   LLC,                          )
                                    ) Adv. Pro. No.
18               Plaintiff,         ) 10-04728 (SMB)
                                    )
19   v.                            )
                                    )
20   BRUNO DIGIULIAN,              )
                                    )
21               Defendant.        )
     ------------------------------)
22
23
24
25
```

                                                                    Page 4

```
 1   -------------------------------)
     IRVING H. PICARD, Trustee for  )
 2   the Substantively Consolidated )
     SIPA Liquidation of Bernard L. )
 3   Madoff Investment Securities   )
     LLC and Bernard L. Madoff,     )
 4                                  ) Adv. Pro. No.
                      Plaintiff,    ) 10-04905 (SMB)
 5                                  )
     v.                             )
 6                                  )
     TRAIN KLAN, a Partnership;     )
 7   FELICE T. LONDA, in her        )
     capacity as a Partner in Train )
 8   Klan; CLAUDIA HELMIG, in her   )
     capacity as a Partner in Train )
 9   Klan; TIMOTHY LANDRES, in his  )
     capacity as a Partner in Train )
10   Klan; PETER LONDA, in his      )
     capacity as a Partner in Train )
11   Klan; TIMOTHY HELMIG, in his   )
     capacity as a Partner in Train )
12   Klan; and WENDY LANDRES, in her)
     capacity as a Partner in Train )
13   Klan,                          )
                                    )
14                    Defendants.   )
     -------------------------------)
15   IRVING H. PICARD, Trustee for  )
     the Substantively Consolidated )
16   SIPA Liquidation of Bernard L. )
     Madoff Investment Securities   )
17   LLC and Bernard L. Madoff,     )
                                    ) Adv. Pro. No.
18                    Plaintiff,    ) 10-004621 (SMB)
                                    )
19   v.                             )
                                    )
20   DONALD A. BENJAMIN,            )
                                    )
21                    Defendant.    )
     -------------------------------)
22
23
24
25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                       Page 5

 1      TRUSTEE'S MOTION TO COMPEL DISCOVERY IN THE

 2               THREE ADVERSARY PROCEEDINGS:

 3

        i)  Picard v. Benjamin, Adv. Pro. No. 10-04621
 4     ii)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
       iii) Picard v. Train Klan, Adv. Pro. No. 10-04905
 5

 6                        -and-

 7   CHAITMAN LLP'S MOTION TO COMPEL DISCOVERY AND THE
     TRUSTEE'S CROSS-MOTION FOR A PROTECTIVE ORDER IN ONE
 8   ADVERSARY PROCEEDING, PICARD V. WILENITZ, ADV. PRO.
     NO. 10-04995
 9

10                        -and-

     CHAITMAN LLP'S MOTION FOR PROTECTIVE ORDER AND QUASH
11   TRUSTEE'S DEPOSITIONS IN THE FOLLOWING ADVERSARY SIX
     PROCEEDINGS:
12

        i)  Picard v. Perlman, Adv. Pro. No. 10-0454
13     ii)  Picard v. Gordon, Adv. Pro. No. 10-04914
       iii) Picard v. Harwood, Adv. Pro. No. 10-04818
14     iv)  Picard v. Estate of Palmer, Adv. Pro. No.
       10-04826
15      v)  Picard v. DiGiulian, Adv. Pro. No. 10-04728
       vi)  Picard v. Dusek, Adv. Pro. No. 10-04644
16

17              TRANSCRIPT OF PROCEEDINGS

18   in the above-titled action, held on Tuesday,

19   December 13, 2016, at JAMS, 680 Eighth Avenue, New

20   York, New York, commencing at approximately 10:00

21   a.m., before Eileen Mulvenna, CSR/RMR/CRR, Certified

22   Shorthand Reporter, Registered Merit Reporter,

23   Certified Realtime Reporter, and Notary Public of

24   the State of New York.

25
```

Page 6

```
 1   B E F O R E :

 2

             HON.  FRANK MAAS (RET.), Arbitrator
 3                 620 Eighth Avenue
                   34th Floor
 4                 New York, New York 10018
                   fmaas@jamsadr.com
 5

 6

     A P P E A R A N C E S :
 7

 8

         BAKER HOSTETLER LLP
 9       Attorneys for the Trustee
             811 Main Street
10           Suite 1100
             Houston, Texas 77002-6111
11       BY:  DEAN HUNT, ESQ.
              dhunt@bakerlaw.com
12            MARIE L. CARLISLE, ESQ.
              marie.carlisle@bakerlaw.com
13
                    -and-
14

         BAKER HOSTETLER LLP
15           45 Rockefeller Plaza
             14th Floor
16           New York, New York  10111
         BY:  EDWARD J. JACOBS, ESQ.
17            edward.jacobs@bakerlaw.com

18

19

         CHAITMAN LLP
20       Attorneys for Defendants
             465 Park Avenue
21           New York, New York  10022
         BY:  HELEN DAVID CHAITMAN, ESQ.
22            hchaitman@chaitmanllp.com
              GREGORY M. DEXTER, ESQ.
23            gdexter@chaitmanllp.com

24

25
```

Page 7

1            THE ARBITRATOR:  I thought we'd start

2       with a couple of housekeeping matters.

3            When we spoke in the telephone

4       conference call and implicit in Judge

5       Bernstein's rulings, or I guess really

6       explicit, is that the rulings I make will

7       apply to the other adversary proceedings to

8       which it's applicable.

9            But I assume that's something the two

10      sides will try to work out amongst

11      themselves?

12           MR. HUNT:  Yes.  I mean, I don't think

13      we're willing to beat our head against a wall

14      on things, but I think each of these cases

15      have some nuances that are different.  So

16      there may be something that's easily

17      translatable, but sort of depends on the

18      issue, I think.

19           MS. CHAITMAN:  But I actually -- this

20      is something that I've tried to work out

21      previously.  I'm defending 92 of these

22      actions.

23           THE ARBITRATOR:  You just answered

24      another question I had on the list.  Go on.

25           MS. CHAITMAN:  The thing is, it just

Page 8

1          seems to me it's logical that if you rule

2          that the trustee has to produce X document, I

3          shouldn't have to make 92 applications for

4          that.

5                My sense is that if the judge makes a

6          ruling -- all of these cases are virtually

7          identical in the -- the complaints are

8          virtually identical.  So why would one client

9          be entitled to a certain kind of discovery

10         and another wouldn't?  I just think we could

11         simplify this so much if we could apply your

12         rulings to all of the outstanding cases that

13         I have.

14                THE ARBITRATOR:  Why don't we leave it

15         as that would be a good thing to do.  As we

16         get deeper into this, assuming there is a

17         deeper into this, we can try and work that

18         out.

19                It struck me that there were areas

20         like that.  And I'm sure the trustee has a

21         reason, but by way of example, there was a

22         discussion before Judge Bernstein about the

23         Dubinsky report having been served in

24         Action A, but not Action B, although

25         Ms. Chaitman is counsel in both A and B.  And

 1        I assume that is a function of scheduling

 2        issues.  Is that --

 3             MR. JACOBS:  That's correct.

 4             THE ARBITRATOR:  Spell that out for

 5        me, if you could.

 6             MR. JACOBS:  Sure.  Most of

 7        Ms. Chaitman's cases are either -- all of

 8        them have their own independent case

 9        management order.  While there might be

10        groups of them that are roughly proceeding

11        together, they're all different.

12             So the expert disclosure dates differ

13        for each of those matters.  In the Wilenitz

14        case, which is before you today, your Honor,

15        we served the Dubinsky report early to try to

16        avert some of the discovery disputes that

17        we're having here.

18             And also Ms. Chaitman has received

19        that report in the normal course of the offer

20        and case management order in a number of

21        other cases that aren't before you today.

22             The Dubinsky report at the moment

23        hasn't changed and that -- there has been a

24        revision, but not in any of Ms. Chaitman's

25        cases.  And for a number of years now, it's

Page 10

1       been the same report.

2              And there are additional reports that

3       are defendant-specific, as Ms. Chaitman

4       knows, that we served in each of the

5       adversary proceedings.  And those haven't

6       been served yet because the offer and case

7       management orders don't call for the

8       disclosure of those experts yet.

9              THE ARBITRATOR:  Those are Collura --

10             MR. JACOBS:  And Greenblatt, correct.

11      Both of those reports have aspects of sort of

12      case law analysis, but they also apply that

13      to the specific transfers at issue with

14      respect to the specific defendants in each

15      case.

16             So Ms. Chaitman has seen those reports

17      in a number of her cases, just not the

18      Wilenitz case or the others that are still in

19      fact discovery today.

20             THE ARBITRATOR:  And I gather that

21      some, but not all of the issues that relate

22      to the individual Collura and Greenblatt

23      reports will also be the subject of the

24      omnibus profit withdrawal hearing that Judge

25      Bernstein contemplates?

                                                    Page 11

 1              MR. JACOBS:  Potentially if the issue

 2         with the proper withdrawal transactions is

 3         that there are certain transactions reflected

 4         on customers' statements that are being --

 5         the nature of which are being litigated right

 6         now in the claims proceeding you just

 7         referenced, some of the defendants in some of

 8         the cases have those type of transactions in

 9         their account.  So that would be relevant in

10         each of those adversary proceedings as well,

11         but not all.  So --

12              THE ARBITRATOR:  Are you talking about

13         inter-account transfers?

14              MR. JACOBS:  No, I'm talking about --

15         so the profit withdrawal -- the profit

16         withdrawal in the trustee's contention was a

17         purported dividend on a stock reflected in

18         the customer statement, which was fraudulent,

19         that resulted in an actual check going to the

20         customer in cash.

21              So -- and Ms. Chaitman represents

22         Mr. Blecker, who I believe is the customer

23         whose claim was denied in our claims side of

24         the case.  And she --

25              You can correct me if I'm

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 12

 1          misconstruing your argument.

 2               But some of the customers represented

 3          by Ms. Chaitman are arguing that, in fact,

 4          those profit withdrawal transactions did not

 5          result in checks or cash that went to the

 6          customer.  So to that extent, that would be a

 7          challenge to our net equity calculation.

 8               So that's what's being litigated

 9          before Judge Bernstein in the profit

10          withdrawal proceeding.

11               MS. CHAITMAN:  But not with respect to

12          the claw-back defendants.

13               MR. JACOBS:  Well, it's an issue that

14          may be relevant in discovery with the

15          claw-back defendants to the extent you're

16          challenging our calculation of net equity,

17          and the PW transactions specifically are part

18          of your challenge.

19               THE ARBITRATOR:  I had thought there

20          was overlap, but you're telling me that

21          there's less overlap than I thought there

22          was, which is helpful to understand.

23               MS. CHAITMAN:  My understanding was

24          that Judge Bernstein explicitly said we're

25          not litigating the profit withdrawal

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 13

```
 1            contentions of the claw-back defendants in

 2            the profit withdrawal litigation.

 3                   MR. JACOBS:  That's correct.  So right

 4            now, I agree, to avoid any confusion, the

 5            profit withdrawal issue is only being

 6            litigated in the claims proceeding.  It's not

 7            part -- the adversary proceedings are -- the

 8            defendants in the adversary proceedings where

 9            that's an issue are not part of that

10            proceeding.

11                   So presumably those issues may --

12            well, it will be -- we'll have to see how

13            Judge Bernstein wants to deal with any ruling

14            he'll issue on the claim side and its

15            applicability to the adversary proceedings.

16                   In my mind, obviously, any ruling that

17            Judge Bernstein issues in any one of our

18            cases, including a discovery issue or any

19            ruling you may issue, if it's applicable to

20            the same set of facts or circumstances in any

21            other case, the trustee is going to follow

22            it.

23                   Where it's not applicable, because

24            there are different circumstances or facts

25            that would render it -- would render the
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 14

```
 1            outcome of the application of that decision

 2            for that case inconsistent with the judge's

 3            analysis or theory and ruling in the prior

 4            proceeding, then we would argue it shouldn't

 5            apply.

 6                 So just backing up to your question,

 7            your Honor, about whether your rulings today

 8            should apply universally in all cases, we

 9            agree with Ms. Chaitman that where the facts

10            and circumstances of other cases are

11            identical, it absolutely should.  Where they

12            aren't, it shouldn't.

13                 If either side can make a good-faith

14            argument as to why it shouldn't apply -- and

15            as I stated to Ms. Chaitman in many prior

16            hearings before Judge Bernstein, after we

17            have the benefit of your ruling, we're happy

18            to meet and confer and enter into a

19            stipulation as appropriate where we can agree

20            as to the applicability of those rulings in

21            her other cases to avoid unnecessary

22            litigation of those same issues.

23                 I think that should solve all of our

24            concerns.

25                 THE ARBITRATOR:  Hopefully.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 15

 1          MR. JACOBS:  Hopefully.

 2          THE ARBITRATOR:  I note, with regard

 3     to the profit withdrawal proceeding, that at

 4     least tangentially it relates to some of the

 5     good-faith claw-back cases because there's a

 6     letter Ms. Chaitman sent on December 8th that

 7     said that one of your arguments supports her

 8     discovery argument.

 9          MR. JACOBS:  Right.  Well, we can

10     discuss that later if that's ours.

11          MR. HUNT:  Sure.

12          THE ARBITRATOR:  We'll get to that.

13     I'm not trying to put the cart before the

14     horse.

15          MS. CHAITMAN:  Judge, I just want to

16     say one other thing.

17          THE ARBITRATOR:  Sure.

18          MS. CHAITMAN:  I sympathize with you

19     coming into this case because it's so

20     incredibly complicated.  And we've been

21     living with it since 2009.

22          When you asked whether the profit

23     withdrawal was part of the inter-account

24     transfer issue, I just wanted to explain

25     something to you.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 16

1              THE ARBITRATOR:  Right.

2              MS. CHAITMAN:  If you look at

3    Exhibit B to the complaint which sets out the

4    deposits and withdrawals, in some cases,

5    there's an indication that there's a deposit

6    into the account from another Madoff account.

7              THE ARBITRATOR:  Right.

8              MS. CHAITMAN:  Now, when we are

9    litigating the net equity of a defendant, we

10   want to look at the transferor account and

11   see whether there were profit withdrawals

12   that the client claims were never received.

13   So --

14             THE ARBITRATOR:  And I gather that the

15   CAD -- I forget what the acronym stands

16   for -- that you get includes the paperwork,

17   to the extent the trustee has it, that

18   underlies those transferor accounts.

19             MR. JACOBS:  That's correct, your

20   Honor.

21             MS. CHAITMAN:  Some of them date back

22   beyond -- they don't have the records.

23             THE ARBITRATOR:  Sure.  And I gather

24   the Madoff deposition, which I read, really

25   went to the issue of whether some of those

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 17

1          purported dividends were real or not.  Is

2          that part of what you were exploring?

3               MS. CHAITMAN:  Yes, because the

4          trustee has taken the position from inception

5          that Madoff never purchased any securities

6          for his investment advisory customers.  And

7          Frank DiPascali, who was Madoff's right-hand

8          man, who was the government's chief witness

9          in the criminal trial --

10               THE ARBITRATOR:  He's now dead?

11               MS. CHAITMAN:  He died, yes.

12               But he pled in federal court.  And in

13          his plea, he started out by saying, early in

14          the 1990s, we started a fraud with respect to

15          the investment advisory --

16               MR. JACOBS:  That's not actually what

17          Mr. DePascali said in the proceedings.  I

18          would like the record to reflect his actual

19          testimony, not Ms. Chaitman's

20          characterization --

21               THE ARBITRATOR:  I'm confident that

22          one of you is right.  Why doesn't somebody --

23          and since the trustee seems to have more

24          funding than Ms. Chaitman, why don't you just

25          send me a copy of the guilty plea allocution.

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

Page 18

```
 1                    MR. JACOBS:  I will be happy to.

 2                    MS. CHAITMAN:  And then Mr. Madoff has

 3           testified that the fraud began in 1992.  So

 4           if that's true, if Judge Bernstein finds

 5           that, in fact, the fraud began in 1992, then

 6           all of the net equity calculations for

 7           accounts which predate 1992 would have to be

 8           recalculated.

 9                    THE ARBITRATOR:  And the trustee's

10           position, I gather, is that, from inception,

11           Madoff was a Ponzi scheme.

12                    MR. JACOBS:  To the best of our

13           knowledge, yes, and that the early periods of

14           the fraud are the subject of litigation right

15           now by Ms. Chaitman.  The court has

16           authorized a second deposition of Bernard

17           Madoff on that issue.

18                    But as it stands now, our position is

19           that the only evidence that that is true is

20           Mr. Madoff's own self-serving statements to

21           that effect, which are not consistent with

22           any of the debtors' books and records.

23                    THE ARBITRATOR:  Okay.  Obviously

24           that's not an issue we're going to resolve.

25                    I saw on ECF that one of the Collura
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 19

1          reports, and maybe there is only one, is 705

2          pages.  I was wondering in relation to all of

3          this whether it makes sense for me to look at

4          the Dubinsky report, some specimen of Collura

5          reports and the Greenblatt report or whether

6          that would be a waste of my time and your

7          money.

8                  MR. JACOBS:  In terms of your

9          knowledge as context and background --

10                 THE ARBITRATOR:  Exactly.

11                 MR. JACOBS:  -- for these and other

12         discovery disputes?

13                 THE ARBITRATOR:  Yes.

14                 MR. JACOBS:  We'd be happy to provide

15         a copy of that -- of those reports for you.

16         And perhaps we can choose a representative --

17                 MR. HUNT:  I think none of the cases

18         that we're talking about today have the

19         Greenblatt and Collura reports yet.  So you'd

20         be looking at a report out of context of

21         these cases.  It would just be an exemplar of

22         what they do for us.

23                 MR. JACOBS:  Right.

24                 Which in and of itself you may find

25         helpful.

Page 20

1          THE ARBITRATOR:  I assume it basically

2     walks somebody through the Exhibit B; is

3     that --

4          MR. JACOBS:  Exhibit B?

5          THE ARBITRATOR:  To the complaint.

6          MS. CHAITMAN:  Not exactly.

7          THE ARBITRATOR:  A typical Collura

8     report?

9          MR. JACOBS:  Yes, it does.

10          MS. CHAITMAN:  The case-specific ones.

11          MR. JACOBS:  The case-specific reports

12     do, yes.

13          THE ARBITRATOR:  Is there also an

14     overarching Collura report?

15          MR. JACOBS:  There's a component --

16     and this is going to be my crude, potentially

17     not entirely accurate, sort of shorthand of

18     what her report does.  But essentially

19     Ms. Collura's report, together with

20     Mr. Greenblatt's report, provide a

21     reconciliation of all of the cash

22     account trans- -- transaction activity at

23     BLMIS from the period for which we have bank

24     statements forward.

25          So essentially what the trustee is

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 21

1           doing, your Honor, is -- we have a complete

2           set of third-party bank records from BLMIS's

3           accounts, I believe it's from 1981 or 1982.

4           And we credit all of the customers' account

5           statements for the full amount of their

6           account balance as of that date, and then we

7           start our net equity calculation by comparing

8           what the customer account statements say with

9           independent third-party, usually JPMorgan,

10          financial records.

11               THE ARBITRATOR:  So if the account

12          says there's a hundred thousand dollars in it

13          in 1980, you're not challenging that?

14               MR. JACOBS:  We give credit to the

15          customer for the full amount of that

16          account -- that statement balance, whether

17          it's fictitious profits or not.

18               What we're saying is that if we can't

19          independently verify it through what our

20          experts do in these reports, then we're not

21          going to challenge it for those early, early,

22          early periods.

23               MS. CHAITMAN:  Ted, I think you may

24          have misspoken.  Because it's my

25          understanding that you have JPMorgan Chase

Page 22

1          bank records from December 1988 on and you

2          have Madoff records from 1981.

3                    MR. JACOBS:  That is correct.  Thank

4          you.  That is correct.  Sorry.  I flipped the

5          account statements with the bank statements

6          and that early date.

7                    So back to your question, where I

8          was -- where I was going was, together

9          Ms. Collura and Mr. Greenblatt -- what their

10         analysis does is show that the account

11         activity in the customer statements is

12         reliable across the universe of account

13         statements that we have going back, thank

14         you, to the early 1980s because the periods

15         for which we have bank records, when compared

16         to those customer statements, match to a near

17         certainty of close to 100 percent of the

18         time.

19                    So their expert analysis is that the

20         cash activity 100 percent or near 100 percent

21         of the time is reliable on the face of

22         Madoff's statements.  That's sort of the

23         case-wide function in a nutshell of those

24         reports.  And, again, I would like to just

25         reserve the right to let the reports speak

Page 23

1        for themselves.  And I'm not an expert.  I'm

2        not as smart as they are.  So if I misspoke

3        or made any misstatement or

4        mischaracterization, I apologize in advance.

5             THE ARBITRATOR:  Why don't you send me

6        the reports understanding that the Collura

7        reports have not been served in any of the

8        cases that we're talking about currently.

9        And if I begin to look at them and realize

10       I'm going off into an area that I shouldn't

11       worry about, at least now, I'll be glad to

12       abandon reading it.

13            MS. CHAITMAN:  Judge, I just want to

14       warn you, the complete set of Collura

15       reports, not case-specific, but the ones that

16       have been produced in the profit withdrawal

17       litigation, are probably six times this

18       binder.

19            THE ARBITRATOR:  Just to be clear, I

20       don't want a complete set.  I would like a

21       specimen report, understanding that each one

22       may be unique and that --

23            MR. JACOBS:  The profit withdrawal

24       reports were geared towards the issues that

25       were in contention.  I think the adversary

Page 24

    1            proceeding reports are much smaller,

    2            certainly without the exhibits.

    3                   MS. CHAITMAN:  Okay.

    4                   MR. JACOBS:  So I'll take a look.  And

    5            if it makes sense to exclude exhibits, I can

    6            give you a list of what they are.

    7                   THE ARBITRATOR:  Sure.

    8                   MR. JACOBS:  And if you want to have

    9            them, we're happy to make whatever you would

   10            like.

   11                   THE ARBITRATOR:  Then just in terms of

   12            procedure, to the extent I rule today, a

   13            number of things could happen.

   14                   One, I could reduce that to an order.

   15            Two, I could say look at the transcript,

   16            that's my order.  I suppose in some areas, I

   17            could issue a more detailed decision.  I'm

   18            here to try and be user-friendly, so tell me

   19            what you think makes sense and maybe for

   20            different areas, different results should

   21            obtain.

   22                   MS. CHAITMAN:  If I can step in first,

   23            your Honor.

   24                   THE ARBITRATOR:  Sure.

   25                   MS. CHAITMAN:  I think, as I

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 25

```
 1            understand it, the procedure would be that

 2            your decisions, if someone wants to appeal

 3            them, would be appealed to Judge Bernstein

 4            and then to the District Court.

 5                    THE ARBITRATOR:  Sure.  Yep.

 6                    MS. CHAITMAN:  So I think, in that

 7            respect, it would be helpful to have an

 8            order.

 9                    Do you disagree with that?

10                    MR. JACOBS:  We agree that an order

11            would be helpful.  And as Ms. Chaitman notes,

12            she has many cases.  We'll be, I'm sure,

13            talking about the applicability of those

14            orders in those cases and hopefully working

15            that out.

16                    And also we have many hundreds of

17            cases in addition to that with other

18            defendants.  So an order gives us an ability

19            to start a good-faith discussion with those

20            defendants to the extent similar issues arise

21            and hopefully resolve them so that they are

22            coming before your Honor.

23                    THE ARBITRATOR:  And, similarly, I'm

24            in the odd circumstance now where I'm a

25            retired attorney, although I intend to remedy
```

Page 26

```
 1        that.  But I issued the decision in Crupi and

 2        I think my case manager asked that the

 3        trustee file it.

 4              MR. JACOBS:  Yes.

 5              THE ARBITRATOR:  I looked yesterday

 6        and didn't see that it was filed, so I --

 7              MR. JACOBS:  We are working on that.

 8        We will get that filed.  We just needed to

 9        put together a motion.  And I know that's

10        been done, and I'll check with my team and

11        get it filed.

12              THE ARBITRATOR:  Okay.  So I guess for

13        the time being, to the extent I issue orders,

14        I'll ask the parties to file them.  At some

15        point, I'll probably ask Judge Bernstein to

16        have me declared an interested party, which I

17        guess would then permit me to file directly

18        on the NCF.

19              MR. JACOBS:  That answers our question

20        as to why you didn't go ahead and file that.

21        We're happy to do it.

22              MS. CHAITMAN:  Is that something we

23        can arrange for the judge?

24              MR. JACOBS:  I thought we'd just have

25        a simple motion saying, at the request of the
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 27

1          arbitrator, we'd like to file this decision

2          in this case, but it's not a case in which

3          you're involved.

4                MS. CHAITMAN:  No, but wouldn't the

5          judge -- if he files a notice of appearance,

6          wouldn't he have the right to file a

7          decision?

8                THE ARBITRATOR:  But I can't file a

9          notice of appearance for two reasons.  One,

10         at the moment, I'm not an attorney.  I'm a

11         retired attorney.  And I looked at the form,

12         and I have to represent that I'm an attorney

13         in good standing.  And I'm not sure whether

14         that representation would be accurate.

15               If neither side objects, maybe what

16         I'll just do is call Judge Bernstein's

17         chambers and see how they suggest I handle

18         that.

19               MR. HUNT:  That sounds fine.

20               THE ARBITRATOR:  Okay.  Then it really

21         falls into the category of minutia, but I see

22         references often to House 5 and House 17.  I

23         know it doesn't relate to anything I'm doing

24         currently, but I couldn't resist asking.

25               MR. JACOBS:  Okay.  House -- it's an

Page 28

    1            easy explanation.  These are informal

    2            nicknames that BLMIS had for its different

    3            operations.  House 17 is the investment

    4            advisory business that, as you know, the

    5            trustee understands was operating a Ponzi

    6            scheme.  Ms. Chaitman's clients were House 17

    7            customers, and that's the investment advisory

    8            business.

    9                 House 5 was the part of BLMIS's

   10            business, for lack of a better word, where

   11            there was proprietary trading happening and

   12            there was a market-making business function.

   13            And that the trustee contends is the only

   14            portion of the business through which any

   15            actual securities trades were conducted at

   16            any given point in time.

   17                 THE ARBITRATOR:  And are those the two

   18            houses?  Is there anything else?

   19                 MR. JACOBS:  That's it.  That's

   20            essentially it.  So if and when you review

   21            Mr. Dubinsky's report, you'll see a lengthy

   22            discussion about how BLMIS operated as a

   23            whole and how those different portions were

   24            interrelated, both from a financial

   25            perspective and from a fraud and Ponzi scheme

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 29

```
 1        perspective.

 2              THE ARBITRATOR:  Why don't we then

 3        turn to the trustee's motion to compel.

 4              MR. JACOBS:  Sure.

 5              THE ARBITRATOR:  Unless there were any

 6        other housekeeping matters that any of you

 7        wanted to bring up.

 8              MR. JACOBS:  I don't think so, your

 9        Honor.

10              THE ARBITRATOR:  Ms. Chaitman?

11              MS. CHAITMAN:  No.

12              THE ARBITRATOR:  Okay.  Why don't we

13        deal with the third-party subpoenas to the

14        banks first.

15              MR. JACOBS:  I'm not sure that we

16        have --

17              MR. HUNT:  None of those are before

18        you right now.

19              THE ARBITRATOR:  Oh.  I thought that

20        issue was before me, but --

21              MS. CHAITMAN:  It is in connection

22        with the responses to some of our

23        interrogatories where we --

24              MR. HUNT:  There's no subpoena that's

25        being contested here today.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                          Page 30
 1              THE ARBITRATOR:  Okay.  But it does --

 2              MS. CHAITMAN:  It comes up.  It does

 3         come up.

 4              THE ARBITRATOR:  -- deal with the

 5         completeness of the responses regarding the

 6         accuracy of Exhibit --

 7              MR. HUNT:  I think it comes up

 8         tangentially in that regard.

 9              THE ARBITRATOR:  Well, rather than me

10         then guiding the discussion, why don't you

11         tell me in relation to that motion what the

12         trustee wants to talk about first.

13              MR. HUNT:  So there are actually three

14         cases where we filed a motion to compel --

15              THE ARBITRATOR:  Right.

16              MR. HUNT:  -- the Train Klan case, the

17         DiGiulian case and the Benjamin case.

18              As I'm sure you're aware, having

19         reviewed our pleadings, there are a lot of

20         very similar issues here.  Specifically the

21         defendants assert a number of affirmative

22         defenses, which they bear -- bear the burden

23         of proving, of course, in which they have

24         chosen to just deny us discovery about in its

25         entirety.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 31

 1              Second of all, while the defendants on

 2         the one hand say they don't dispute

 3         Exhibit B, they spend a large amount of time

 4         in their answers explaining why Exhibit B is

 5         not accurate and why the records that we have

 6         are not admissible and why we can't prove our

 7         case.  So we clearly have the right to take

 8         discovery on those issues.

 9              So what I thought might make some

10         sense is to just talk through the discovery

11         responses themselves, starting with Train

12         Klan, which is the most complicated one.  And

13         I think by the time we get to Benjamin, we

14         will be starting to repeat ourselves a bit.

15              THE ARBITRATOR:  Well, I'm sure it's

16         right that there's overlap and that we'll all

17         be repeating ourselves.  One of the things I

18         guess I began to have a feel for what you've

19         all been struggling with is, obviously there

20         were boilerplate responses to your requests.

21         And that worked both ways.  And clearly some

22         word processing errors also --

23              MR. HUNT:  I agree with that.

24              THE ARBITRATOR:  -- on both sides.

25              But, sure.  Train Klan, you've asked

Page 32

1           for a lot of partnership material.  Judge

2           Bernstein dismissed the claims against

3           subsequent transferors in a number of these

4           claw-back cases --

5                   MS. CHAITMAN:  Transferees.

6                   THE ARBITRATOR:  Transferees.  Excuse

7           me.

8                   -- saying that there was insufficient

9           information pled.  General partners of a

10          limited partnership are treated as alter egos

11          of the partner, but limited partners, as I

12          understand the law, are not.  You seem to be

13          asking for information as to both.

14                  MR. HUNT:  We're asking for

15          information about the partners.  With respect

16          to Train Klan, all they say is there are

17          partners.  Of course, the partnership

18          documents and percent ownership interest and

19          type of partner is all relevant exactly for

20          the reason you said.

21                  Moreover --

22                  THE ARBITRATOR:  Why is anything --

23          and it may be that you end up with the same

24          documents, but if my order in that area were

25          to be that Ms. Chaitman's client, Train

Page 33

 1          Klan -- I guess it's really two defendants

 2          with the Train Klan partnership -- must

 3          produce documents to show -- sufficient to

 4          show you over time who the general partners

 5          were.

 6               Why doesn't that satisfy your need,

 7          yet respond to Ms. Chaitman's concern?

 8               MR. HUNT:  We don't know even what

 9          type of entity Train Klan is.  It says it's a

10          partnership.  We don't know if it's a general

11          partnership, a limited partnership or what

12          kind of entity it is.

13               So what we're seeking is the legal

14          name of the partnership, the type of entity

15          it is, the basic information about that

16          entity, when it was established, whether it

17          was formed out of a predecessor entity, which

18          state or country it's incorporated in or

19          where it's --

20               THE ARBITRATOR:  By definition,

21          probably it's not incorporated.

22               MR. HUNT:  Well, yes.

23               Which state or country was it formed.

24          What law applies they think.  And the names

25          and addresses of the current and former

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 34

1              partners, members, whatever that may be, and

2              their ownership interest in that partnership.

3                    That establishes the liability of the

4              partners, I think.  We don't have any of that

5              information.  And I'm not sure that a --

6                    THE ARBITRATOR:  Let's say, for

7              argument's sake, you're a 10 percent limited

8              partner and I'm a 5 percent limited partner

9              and the court reporter is the general

10             partner.  Once you establish that the court

11             reporter, Ms. Mulvenna, is the general

12             partner, putting aside the other materials

13             around that that you're interested in, why

14             does it matter whether I have 5 percent and

15             you have 10 percent or vice versa or who the

16             other limited partners may be?

17                    MR. HUNT:  We don't know, first of

18             all, if there are any limited partners.  But

19             second of all, depending upon how this entity

20             is set up, each of those individuals may be

21             liable for their percentage share as a direct

22             transferee depending on how the proceeds are

23             distributed.  We don't know because they

24             won't tell us.

25                    THE ARBITRATOR:  Ms. Chaitman.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 35

 1              MS. CHAITMAN:  Well, you know, we have

 2         a tension here because, as you've recognized,

 3         Judge Bernstein held that the complaints

 4         against the subsequent transferees failed to

 5         state a claim.  And we have cases from United

 6         States Supreme Court on down saying you can't

 7         take discovery in order to obtain the facts

 8         you need to file a complaint.

 9              And, indeed, the trustee has used

10         those cases against me when I've sought to

11         take discovery in order to get the facts

12         which would allow me to state a claim.

13              So I don't think that the trustee can

14         argue that that line of cases does not apply

15         here.  And what I've tried to do is protect

16         my clients, as I believe I'm entitled to, by

17         not disclosing anything which would give the

18         trustee the precise information he's seeking

19         because he wants to be able to name the

20         individuals.

21              And if I have to disclose how much

22         each person has, he's going to then sue them

23         for that percentage of the withdrawals.  And

24         I think that I'm entitled to -- he's entitled

25         to get a judgment against the account holder.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 36

1          And if the account -- if the judgment isn't

2          paid, then he can sue the individual

3          partners.  But that's the order that the

4          United States Supreme Court has established.

5          And I don't think that he should be entitled

6          to circumvent that.

7               THE ARBITRATOR:  One of my problems is

8          I think I agree with both of you.  And I also

9          think, as a general operating principle, that

10         if either side is entitled to discovery for

11         Reason A, the fact that it may also be

12         helpful as to undisclosed Reason B is not a

13         basis to turn down a request for discovery.

14              But specifically with respect to Train

15         Klan, I think what I'm going to require be

16         produced are any partnership agreements.  And

17         in doing that, I note that -- I think it was

18         Cravath Swain & Moore operated for many years

19         with no written partnership agreement.  So

20         I'm mindful that perhaps there are no

21         partnership agreements or not ones of the

22         formality that we're used to.

23              But any partnership agreements for the

24         relevant time period.  And I guess that will

25         then lead to a discussion of what the

Page 37

1          relevant time period is.  It may be from

2          formation.  And as I said, documents

3          sufficient to show who the general partner,

4          or partners, over time of the partnership

5          are.

6               MR. HUNT:  The relevant time period is

7          1993 forward.

8               THE ARBITRATOR:  Okay.  Just so I

9          understand, explain to me why --

10               MR. HUNT:  That's when the account was

11          opened, in May of 1993.

12               THE ARBITRATOR:  Okay.  So whatever

13          partnership agreement existed then.  If the

14          partnership was formed in 1970, which is

15          unlikely, you wouldn't have to produce that

16          partnership agreement unless it was the

17          operative agreement in 1993.

18               MS. CHAITMAN:  But the trustee's only

19          permitted to sue to recover withdrawals taken

20          within the last two years prior to Madoff's

21          confession.  So why would partnership

22          agreements that predate December 11, 2006,

23          have any relevance?

24               THE ARBITRATOR:  Well, I think that

25          the trustee is entitled to know how the

Page 38

1         partnership was organized.  And as I

2         understand Judge Bernstein's rulings,

3         although maybe here I'm going beyond my role,

4         and the case law, it doesn't appear that the

5         trustee has a basis at the moment pursuing a

6         limited partner.  But the trustee may have a

7         different view of that.

8              MR. HUNT:  So just to be clear, in

9         this particular case, we've sued the partners

10        who we know of.

11             THE ARBITRATOR:  You've sued the whole

12        group of people; correct?

13             MR. HUNT:  Which we assume are general

14        partners based on what information we have.

15             THE ARBITRATOR:  But assuming there's

16        a formal partnership agreement and that one

17        of those defendants is the general partner

18        and others are limited partners, I'm not sure

19        that under the case law and Judge Bernstein's

20        rulings, that there's a basis for suing the

21        limited partners.

22             MR. HUNT:  Right.  But she has to give

23        us the information showing they're limited

24        partners before we can talk about that.

25             THE ARBITRATOR:  She has to give you

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 39

1             the information showing you, under my ruling,

2             who the -- or the documents showing you who

3             the general partner is.  That document may

4             also show you who the limited partners are.

5             But documents can't be redacted, as far as

6             I'm concerned, on the basis of relevance.

7                  So it may, through the back door, give

8             you information about percentages of who the

9             limited partners are.  But my understanding

10            of the case law is that the general partner

11            is not considered a subsequent transferee

12            because the general partner is, in effect,

13            the alter ego of the partnership.

14                  MR. HUNT:  I agree with that.  In this

15            particular case, we have sued each of the

16            partners in their capacity as a partner.

17                  THE ARBITRATOR:  Right.

18                  MR. HUNT:  So if Ms. Chaitman wants to

19            get them dismissed from the case, she has to

20            prove to us that they're limited partners.

21            We can't take it at -- her at her word.  If

22            she wants them out, she has to tell us why

23            she wants them out, I would say.

24                  THE ARBITRATOR:  I'm going to adhere

25            to my ruling.  Why don't you wait and see

Page 40

1          what documents you get in response to that

2          ruling.  Maybe it will become a non-issue.

3          If it still is a concern, we can deal with it

4          on a more granular level.

5               MR. HUNT:  Okay.  The other thing too,

6          just to be clear, your ruling has to do with

7          documents, but I would like them also to

8          answer the interrogatories relating to those

9          points.  So we don't have to go through the

10          documents and figure out what the answer

11          might be.

12               THE ARBITRATOR:  Let's deal with

13          specific interrogatories so that we have a

14          somewhat definitive answer.

15               MR. HUNT:  That sounds great.  Thank

16          you.

17               So we received two responses to

18          interrogatories in Train Klan.

19               THE ARBITRATOR:  One on behalf of the

20          partnership, one on behalf of the

21          individuals.

22               MR. HUNT:  Right.  And with respect to

23          the individuals, I have an issue with that.

24          Because Ms. Londa signed with power of

25          attorney as a partner for each of the

Page 41

1        individuals.  We never did get a response

2        from the individuals.

3             So I would like -- if the court -- if

4        your Honor would help us with that.  I'd like

5        to get actual answers from each of the

6        defendants rather than someone signing with

7        power of attorney for all of them.

8             THE ARBITRATOR:  Well, what I'm

9        inclined to do -- and if schedule were not an

10       issue, let me tell you what I'd be inclined

11       to do.  And although I understand all of

12       these cases have their own schedules, there

13       must be some sort of overarching view of how

14       these cases will ultimately get resolved.

15       And that big picture view I express complete

16       ignorance as to.

17            But if scheduling were not an issue,

18       what I would be inclined to do is say the

19       partnership should respond.  And then,

20       depending upon that, it may be unnecessary

21       for the individuals to respond depending on

22       the documents and interrogatory responses you

23       receive.

24            Maybe there's some belt and suspenders

25       approach you'd want down the road.  I could

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 42

```
 1          see certifications from each of the

 2          individuals that they've never -- who are not

 3          general partners, that they've never been a

 4          general partner.

 5               But I'm not unsympathetic to what

 6          Ms. Chaitman says about the extent of their

 7          limited partnership interest being none of

 8          the trustee's business assuming that they

 9          were only limited partners --

10               MR. HUNT:  Assuming that it's even a

11          partnership.

12               THE ARBITRATOR:  -- and that it's a

13          partnership that observed formalities rather

14          than the equivalent of an investment club of

15          people who get together once a week and

16          say --

17               MR. HUNT:  Right.  I mean, that's what

18          we're finding some of these things are.  And

19          so it may not even be a partnership as far as

20          we know.

21               THE ARBITRATOR:  So let me get back to

22          what I was asking, which is, to the extent I

23          make rulings like the one I just described,

24          what impact does it have on that broad

25          schedule of how these cases march their way
```

Page 43

 1        toward resolution?

 2              MR. HUNT:  For Train Klan

 3        specifically?  Because that is --

 4              THE ARBITRATOR:  Why don't we stick

 5        with that, yes.

 6              MR. HUNT:  So I think what that does

 7        is it sort of makes it a two-step process.

 8        Because based upon what we learned from this

 9        sort of intermediate response, we still may

10        have questions that we need to address and

11        we'll have to come back to you.

12              THE ARBITRATOR:  But I guess what I'm

13        inarticulately trying to ask is, am I

14        screwing up Judge Bernstein's schedule by

15        doing that?

16              MR. HUNT:  No.  One of the things --

17        I'll tell you this, we can't agree on much,

18        but we can agree on scheduling issues.  And

19        the parties have the flexibility to move the

20        schedule around to meet their needs.  So to

21        the extent there's a scheduling issue, I'm

22        certain that Ms. Chaitman will accommodate

23        additional scheduling time to resolve it.

24        She has in the past.

25              MS. CHAITMAN:  And I'm sure you've

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 44

 1          seen there are so many issues, we haven't

 2          gotten discovery on two.  And obviously we're

 3          going to need to extend the discovery.

 4                  THE ARBITRATOR:  Okay.  And Judge

 5          Bernstein is, to use the vernacular, cool

 6          with that?

 7                  MR. HUNT:  Yes, sir.

 8                  MR. JACOBS:  If by agreement of the

 9          parties, it's never been an issue.

10                  THE ARBITRATOR:  Okay.  Great.

11                  So as to the partnership, I ruled with

12          respect to --

13                  MR. HUNT:  I'm sorry I interrupted

14          you.

15                  THE ARBITRATOR:  I was going to say

16          what you just volunteered.  Let me find --

17                  MR. HUNT:  You're smart enough to copy

18          yours double-sided.

19                  THE ARBITRATOR:  No, you sent this to

20          me so --

21                  MR. HUNT:  We're smart enough to do it

22          for you.

23                  THE ARBITRATOR:  Except I'm looking at

24          the wrong --

25                  MR. HUNT:  It's Interrogatory No. 1 to

Page 45

1        the -- the answers to the interrogatories

2        sent by Train Klan are identical to the ones

3        that we received from the individuals signed

4        by Ms. Londa on behalf of the individuals.

5             THE ARBITRATOR:  So it's

6        Interrogatory 1 --

7             MR. HUNT:  The response we got was

8        that this information is not relevant.  And I

9        think you've already ruled that, to the

10       extent that these -- first of all, we need to

11       know if it's a partnership, what kind of

12       partnership it is, and who the partners are.

13       Looks like the only thing you were

14       withholding or that we could think you'd

15       potentially withhold is the percent

16       beneficial interest to the account.

17            THE ARBITRATOR:  Well, I would modify

18       it -- after the words "the names and

19       addresses of its current and former," I would

20       insert the word "general partners" and cross

21       out everything up to "its current and former

22       business addresses and current and former

23       principal places of business."

24            And since I was ruling with respect to

25        documents, conceivably Ms. Chaitman could

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 46

1          answer that by saying, see documents Bates

2          Nos. 1 through whatever.

3                    MR. HUNT:  I would agree with that.

4                    THE ARBITRATOR:  Okay.

5                    MR. HUNT:  And then Interrogatory

6          No. 2 also relates to that.  We asked them

7          for the dates and amounts of any transfers

8          received by the partnership, whether the

9          person was a partner, and state whether that

10         person received any portion of the transfers.

11         They respond by telling us who the partners

12         are.

13                   MS. CHAITMAN:  Again, I think that

14         that's precisely -- that runs afoul of the

15         mandate from the Supreme Court on down that

16         they're seeking discovery to frame a

17         complaint against a subsequent transferee.

18                   MR. HUNT:  I can tell you one thing is

19         certain -- and we've been accused about this

20         repeatedly, and it's not true, and that is

21         that we're using this discovery to form a

22         complaint against someone else.  That is not

23         true.

24                   What we're trying to do is find out

25         where the money went so we can trace it, and

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 47

1          that's all we're trying to do.

2              THE ARBITRATOR:  But as I understand

3      case law regarding pleading and the case law

4      that relates to who in a partnership is

5      liable for the debts, and I'm using that in

6      the generic way of the partnership, it's the

7      general partner only.  So I'm inclined to

8      reserve decision on Interrogatory No. 2.

9      Let's wait and see what happens with respect

10     to Interrogatory No. 1.

11             It may be that, at a later date, I

12     grant that request or other requests relating

13     to transfers, but I think we need to see is

14     there a real partnership.

15             MR. HUNT:  I agree with you.

16             THE ARBITRATOR:  If it's got a binder

17     of documents reflecting meetings of the

18     partnership and the like, it's a very

19     different animal than if it's an investment

20     club.

21             MR. HUNT:  I agree with you.  I think

22     that's a great resolution of that

23     Interrogatory No. 2.

24             THE ARBITRATOR:  Okay.

25             MR. HUNT:  Interrogatory No. 3 we

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 48

1          asked for reasons for each transfer.  And

2          they simply say they're not able to do so.

3          Someone, the general partner or someone,

4          requested this transfer and we want to know

5          why and what was the intent of the use of the

6          money.

7               THE ARBITRATOR:  Well, again, let's

8          see who the general partner is because I

9          probably -- assuming there is a general

10         partner, that it has some formality, I

11         probably would require the general partner to

12         answer that question, but not the other

13         partners.  So --

14              MS. CHAITMAN:  Why would that be

15         anything other than discovery to frame a

16         complaint?

17              THE ARBITRATOR:  Well --

18              MS. CHAITMAN:  Because, again, if the

19         account -- we're not disputing that the

20         account holder took the money.  So now you're

21         going to the next generation of transfers.

22              THE ARBITRATOR:  Well, I don't know

23         which defenses you asserted with respect to

24         partnership, but potentially it could impact

25         some of your affirmative defenses.  But to be

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 49

1          clear, I'm not ruling that that is the way I

2          would rule.

3                    MR. HUNT:  I'm comfortable with you

4          deferring a ruling on that pending obtaining

5          some additional documents and information

6          about this entity, whatever it is.

7                    THE ARBITRATOR:  Train Klan also

8          raises the question -- and I'm jumping ahead

9          and perhaps out of the order -- the trustee

10         wanted to raise issues, but there's -- in

11         response to "Identify each deposit into the

12         account" is the answer "Responding parties do

13         not dispute the deposits and withdrawals

14         shown on Exhibit B," but then there's the

15         caveat about "The records are permeated with

16         fraud, no records exists before 1998, so

17         trustee has no competent evidence of any

18         activity in the account prior to

19         December 1998," although this speaks to what

20         I was talking about about boilerplate used by

21         both sides.

22                   As I understand what I was told, this

23         account didn't exist before 2003, so it

24         doesn't much matter what happened in 1998.

25         But let me not jump ahead and --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 50

1              MR. HUNT:  I think that's exactly the
2       next place I was going as well, was
3       Interrogatory No. 5.
4              THE ARBITRATOR:  Okay.
5              MR. HUNT:  You know -- and this is
6       sort of something we see across all of these
7       responses, which is, they say they don't
8       dispute, whatever that means, the deposits
9       and withdrawals shown on Exhibit B.  It seems
10      like what they're not disputing is that the
11      numbers appear on the page.
12             Because then they go on to say there
13      are all these problems with the numbers and
14      they have affirmative defenses that say we
15      can't prove the deposits and withdrawals.  So
16      anytime you see an answer that's supposed to
17      be some kind of an admission followed by the
18      word "however" and then followed by the word
19      "moreover," it's not.
20             And so we have the right to ask them
21      to identify each deposit into the account so
22      that we can figure out if they do actually
23      dispute any of them.
24             THE ARBITRATOR:  Well, what I find
25      particularly confusing, Ms. Chaitman, is, as

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 51

 1          to bank records -- third-party bank records,

 2          in some of these answers, although that may

 3          be moot now, you've said, you're not entitled

 4          to it because we don't dispute the deposits

 5          and withdrawals on Exhibit B, but then the

 6          20th affirmative defense says, "The trustee

 7          has fraudulently calculated defendants'

 8          liability."  It's hard to square those two

 9          responses.

10               MS. CHAITMAN:  Well, I have offered

11          to -- when we concede the accuracy of the

12          deposits and withdrawals, we're agreeing that

13          Exhibit B is accurate.  And that obviously --

14          I'm volunteering that, and obviously that can

15          be enforced against my clients, there's no

16          question about that.

17               However, when we go to trial, the

18          trustee may try to rely upon records of

19          Madoff beyond Exhibit B.  All I'm conceding

20          is that Exhibit B is accurate.  I'm not

21          conceding that Madoff's records are accurate.

22          In fact, Picard's own expert has said that

23          Madoff's records are permeated with fraud.

24               So I'm simply reserving the right to

25          object to other records.  I'm not contesting

Page 52

1          the accuracy of Exhibit B.

2                    MR. HUNT:  That's not accurate.

3                    THE ARBITRATOR:  Pull up Exhibit B.  I

4          don't have the Train Klan --

5                    MR. HUNT:  I've got it right here.

6                    THE ARBITRATOR:  But I've -- really

7          for these purposes, it's only the columns.

8          There were a number of ways in which one

9          could interpret your response, one of which

10         is, for the two-year period at issue, we

11         don't dispute the deposits and withdrawals.

12                   Another is that we don't dispute

13         Columns 1 through 10, which takes you through

14         the two-year fraudulent transfer calculation.

15         As I understand it, the six-year fraudulent

16         conveyance calculation is basically

17         irrelevant --

18                   MR. HUNT:  That's correct.

19                   THE ARBITRATOR:  -- as to everybody

20         we're going to be talking about today.

21                   MR. HUNT:  That's correct.

22                   THE ARBITRATOR:  So is it that you're

23         agreeing with Columns 1 through 10?

24                   MS. CHAITMAN:  We're agreeing with the

25         deposits and withdrawals, which are Column 4

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 53

1    and 5.

2             THE ARBITRATOR:  Right.  Another way

3    of saying that is you're agreeing with the

4    net equity calculation; is that --

5             MS. CHAITMAN:  Well, we're agreeing --

6    we contest the --

7             THE ARBITRATOR:  Column 5 gives you at

8    the bottom a net equity number.

9             MS. CHAITMAN:  Right.  We're agreeing

10   with -- we're agreeing that the cash deposits

11   are accurately reflected in Column 4 and the

12   cash withdrawals are accurately reflected in

13   Column 5.

14            We're not agreeing -- we're not

15   agreeing as to the trustee's calculation of

16   principal because we don't agree that in

17   the -- in these cases, the trustee is allowed

18   to recover.

19            THE ARBITRATOR:  Okay.

20            MS. CHAITMAN:  So -- you know, that's

21   why I tried to be very specific.  We're

22   agreeing to the deposits and withdrawals.

23            THE ARBITRATOR:  Just to be clear,

24   using Train Klan, it shows a negative number

25   of $1,442,181 because more money was taken

Page 54

1        out than was put in.

2              MS. CHAITMAN:  Correct.

3              THE ARBITRATOR:  And you're not

4        disputing that.

5              MS. CHAITMAN:  The math, correct.  Or

6        the deposits and withdrawals.

7              But, again, I have the reservation

8        because there are a lot of other books and

9        records that may become relevant.  And I

10       don't want to come to trial and find out that

11       I've conceded the accuracy of all of Madoff's

12       records, because I haven't.

13             THE ARBITRATOR:  Well -- and by

14       agreeing with 4 and 5, you're also agreeing

15       with 1 through 3, the dates and --

16             MS. CHAITMAN:  Well, yes.  But in this

17       particular instance, we are, but in some,

18       there are inter-account transfers.  And it

19       becomes much more complicated at that point.

20             THE ARBITRATOR:  Sure.  Let's deal

21       with the purist case first, like Train Klan,

22       where there are no inter-account transfers.

23             My thought was that rather than

24       getting mired in the interrogatory responses,

25       that this is better handled under the other

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                                    Page 55

1          alternative that Judge Bernstein suggested at

2          one of his conferences, which is a

3          stipulation.

4              MS. CHAITMAN:  I recall that.  I think

5          that's a good idea.  We had no problem with

6          that.

7              THE ARBITRATOR:  So -- so the

8          stipulation would be that the defendant in

9          question does not dispute the accuracy or

10         completeness of the information in Columns 1

11         through 5 of Exhibit B of the relevant

12         complaint.

13             MS. CHAITMAN:  Well, the easier way to

14         do it I think is 4 and 5.  Because I have

15         to -- in this case, we can do that, but where

16         there are inter-account transfers, we can't.

17             THE ARBITRATOR:  And I'm just trying

18         to deal with the pure case.

19             MS. CHAITMAN:  In this case, we can do

20         that.

21             THE ARBITRATOR:  The reason I said 1

22         through 5 is because it's also relevant what

23         the two-year look-back period is.  So the

24         dates are important; correct?

25             MS. CHAITMAN:  Right.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                        Page 56
   1              THE ARBITRATOR:  So you don't have a
   2         problem with what I just said --
   3              MS. CHAITMAN:  That's what --
   4              THE ARBITRATOR:  -- in actions where
   5         there are no complicating factors, whether
   6         it's inter-account transfers or -- I know one
   7         of the defendants said, I was not being
   8         credited or I was being charged with two
   9         $25,000 -- I can't remember if it was deposit
  10         or withdrawal, it was probably withdrawal --
  11         that was double counted.  Obviously there may
  12         be glitches like that.  But for somebody who
  13         doesn't have inter-account transfers, that
  14         stipulation works?
  15              MS. CHAITMAN:  Yes.
  16              THE ARBITRATOR:  Okay.  It seems to me
  17         that that eliminates a lot of the concerns
  18         about the interrogatory responses.
  19              MR. HUNT:  Yes.  So I think what that
  20         means then is that, you know --
  21              THE ARBITRATOR:  And let me modify
  22         what I just said on the fly and say it should
  23         have the words in there "at trial."  So at
  24         trial, the defendant will not challenge what
  25         I had said earlier.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

1           MR. HUNT:  I would agree with that.

2           And what that effectively means then

3    is that she would be withdrawing, for

4    example, the 20th affirmative defense.

5           MS. CHAITMAN:  What's the 20th

6    affirmative defense?

7           MR. HUNT:  "Trustee has fraudulently

8    calculated defendants' liability by charging

9    defendants with withdrawals that the trustee

10   has no proof were taken."

11          MS. CHAITMAN:  In this case, I would,

12   yes.

13          THE ARBITRATOR:  Well, in any case

14   where --

15          MS. CHAITMAN:  Where I stipulate.

16          THE ARBITRATOR:  -- you enter into

17   that stipulation, the 20th defense takes a

18   nose dive.

19          MS. CHAITMAN:  Right.

20          MR. HUNT:  Okay.

21          THE ARBITRATOR:  And I think that

22   obviates problems.  It also -- even if there

23   were inconsistent interrogatory responses or

24   affirmative defenses, they go out the window

25   because the stipulation controls.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 58

```
 1              MR. HUNT:  Right.

 2              So just to be clear then, that

 3         stipulation is now on the record here.  So

 4         we're not going to spend time drafting

 5         something with her.  Because we've tried this

 6         for a long time in the past.

 7              THE ARBITRATOR:  Well, once we get the

 8         transcript of this, and I'd ask that the

 9         trustee have it expedited, my order will say

10         what I just said, with the modification that

11         I just described.  If either side thinks it

12         needs more or fewer words, you can let me

13         know that in a few days.

14              And I may or may not modify my order,

15         but ultimately there will be an order saying,

16         if Ms. Chaitman's clients stipulate to X,

17         they need not modify particular interrogatory

18         responses.

19              MR. HUNT:  Okay.

20              THE ARBITRATOR:  And -- and while

21         we're talking about that, to the extent that

22         her interrogatory responses or the

23         stipulation withdraw particular affirmative

24         defenses, I'm not sure much is accomplished

25         by requiring Ms. Chaitman to file an amended
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 59

1       answer.

2              MR. HUNT:  I agree.  I think what I'd

3       like to do is get it on the record that

4       they're withdrawn.  Because you can withdraw

5       them and you can always reinstate them, but

6       if there's an order and agreement they're not

7       going to --

8              THE ARBITRATOR:  If there's a

9       stipulation --

10             MR. HUNT:  I agree.

11             MS. CHAITMAN:  If it's a stipulation

12      as to certain facts.  I think we have to be

13      careful because we do -- again, this is -- if

14      we're specifically talking about Train Klan,

15      it's fine, but there are issues about

16      fraudulent calculations that are earlier in

17      time.

18             So we're not going to -- I may

19      stipulate in a case, but I'm not going to

20      withdraw some of the affirmative defenses.

21      In other words, obviously if we stipulate

22      that the deposits and withdrawals were made,

23      that's binding.  But that doesn't mean

24      that --

25             THE ARBITRATOR:  Let's take two cases,

Page 60

1          one in which there are pre -- what was it,

2          1998?

3                    MS. CHAITMAN:   December 1998 is when

4          we have third-party bank records.

5                    THE ARBITRATOR:   So one in which there

6          are records going back to the early '80s or

7          Exhibit B reflects information going back to

8          the early '80s.  The second scenario, an

9          account with inter-account transfers.  Let's

10         deal with the second of those first.

11                   I suppose -- well -- and they may be

12         the same issue because it may be that the

13         transferor account predates the time period

14         where you have -- where there are records and

15         that gives rise to the concerns.  But I think

16         we're all in agreement that in cases where

17         the stipulation is entered into, that solves

18         the problem.

19                   So let me turn to you, Ms. Chaitman,

20         and say, where have you said, if anywhere,

21         you don't dispute Exhibit B, but you still

22         want to rely on the "however" and "moreover"

23         language?

24                   MS. CHAITMAN:   Well, as you can

25         appreciate, Judge, some of these accounts

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 61

 1        date back to 1980.

 2              THE ARBITRATOR:  Right.

 3              MS. CHAITMAN:  And nobody has the

 4        records, nobody has a recollection, the

 5        people who owned the accounts may not be

 6        alive.  So -- and the trustee's position is

 7        that the fraud existed from inception and

 8        that the records are permeated with fraud.

 9              And in fact, we've made a motion now

10        before Judge Bernstein in the profit

11        withdrawal litigation barring the admission

12        of Madoff's books and records because they

13        don't come with any of the business record

14        exceptions.

15              THE ARBITRATOR:  I guess the trustee's

16        position is that the records accurately

17        reflect a fraud.  So to the extent that

18        there's language about permeated with or -- I

19        know there was parallel language, perhaps,

20        but they're arguing that all the trading from

21        the beginning of time was fictitious.

22              You're contending that, based on

23        Madoff and his colleague, some of the trading

24        may have been real and that, therefore, the

25        Ponzi presumption doesn't apply to the later

Page 62

 1        date.

 2               Are there cases in which, because of

 3        the age of the relationship with Madoff's

 4        business or because of inter-account

 5        transfers, you have the language that you

 6        don't dispute the deposits and withdrawals on

 7        Exhibit B, but are still contesting the

 8        admissibility of the records?

 9               MS. CHAITMAN:  Yes.  We -- we contest

10        the admissibility of Madoff's records for any

11        period when there aren't third-party bank

12        records.  And --

13               THE ARBITRATOR:  So that's 1998

14        backward?

15               MS. CHAITMAN:  December 1998, yes.

16               And there may be instances where we

17        would concede the accuracy of Exhibit B from

18        a certain point on, but not before.  So I

19        think it would be -- it would be difficult

20        for me to agree that, in every instance in

21        which I can stipulate as to certain deposits

22        and withdrawals, I can also stipulate that

23        the affirmative defense that the records are

24        fraudulent is taken out.  I can't do that

25        because I -- I think that Madoff's records

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 63

1          will not be admitted.  I think they are not

2          admissible.

3                  THE ARBITRATOR:  Once you stipulate to

4          it --

5                  MS. CHAITMAN:  But only for a certain

6          period.  I'm not stipulating for the whole

7          period.  In other words, we can take it case

8          by case, but --

9                  THE ARBITRATOR:  If we look at the two

10         other defendants that are part of the

11         trustee's motion, does that shed light on

12         this?

13                 MS. CHAITMAN:  No, because in these

14         three cases, we have conceded the accuracy of

15         Exhibit B from inception.

16                 THE ARBITRATOR:  Okay.  I'm open to

17         suggestions as to how to proceed.

18                 MR. HUNT:  Yeah, I hear exactly what

19         you're saying.

20                 So just to be clear then, on Train

21         Klan, taking it one at a time, the defendants

22         are going to stipulate that all of the

23         transactions that are listed in Exhibit B,

24         Columns 1 through 5, accurately reflect the

25         transactions that took place in this account.

Page 64

 1            THE ARBITRATOR:  And will not be

 2      contested at trial.

 3            MR. HUNT:  And so with respect to

 4      Interrogatory No. 5 then, we asked them to

 5      identify each deposit.  And by that we also

 6      need to know who received the deposit.  So

 7      Exhibit B by itself does not answer that

 8      question.

 9            So I'd like at least an answer as to

10      whether or not the deposit was given to Train

11      Klan or not; right?

12            THE ARBITRATOR:  Well, deposits --

13            MR. HUNT:  Or the withdrawals.  Sorry.

14      The deposit's been made by Train Klan.  So

15      for each deposit, did Train Klan make the

16      deposit?  And then, similarly, with respect

17      to each withdrawal, who got the withdrawal,

18      if Train Klan got the withdrawal.

19            MS. CHAITMAN:  Well, you see, that's

20      exactly the subsequent transferee discovery

21      that the trustee is not permitted to take.

22            MR. HUNT:  We need to know --

23            MS. CHAITMAN:  You can't --

24            MR. HUNT:  We have a right to know

25      who -- if the -- who the initial transferee

Page 65

1         is.  We have a right to know that.

2                MS. CHAITMAN:  The initial transferee

3         is the account holder.

4                THE ARBITRATOR:  I was about to say

5         maybe the stipulation needs some

6         supplementation to say, and does not dispute

7         that the account holder received the

8         withdrawal reflected in Column 5.  That may,

9         in a particular circumstance, be inaccurate.

10        It may be that, rather than somebody getting

11        a check payable to themselves, it was to

12        their Bar Mitzvah caterer, but it solves your

13        problem and eliminates the need to respond to

14        that interrogatory.

15               MR. HUNT:  I agree with that.

16               THE ARBITRATOR:  Does that work for

17        you?

18               MS. CHAITMAN:  You're asking us to

19        stipulate that the money was deposited into

20        the account holder's account?

21               THE ARBITRATOR:  Or that you're not

22        disputing -- at trial, you will not dispute

23        that that's the fact.

24               MS. CHAITMAN:  So the money was

25        deposited into the account holder's account.

Page 66

```
 1          Yes, I have no problem with that.
 2              I don't think that that's what Dean
 3       was driving at.  I think he's asking --
 4              Dean, correct me if I'm
 5       misunderstanding you.  I thought you wanted
 6       to know, once it went into the account
 7       holder's account, where did it go from there?
 8              MR. HUNT:  I need to know who got the
 9       initial transfer.  That's all we need to
10       know.  So if it is true that each withdrawal
11       was deposited into Train Klan's bank account,
12       then that's what the stipulation should say.
13       If the -- if it was deposited into some other
14       account, we need to know that.
15              MS. CHAITMAN:  And why would that --
16       why would you be -- see, again, let's
17       assume -- and I don't know the fact.  Let's
18       assume that it was deposited into one of the
19       partners' accounts.  That partner then would
20       be a subsequent transferee.  Why would --
21              THE ARBITRATOR:  No, not if it's a
22       general partner.
23              MS. CHAITMAN:  Okay.
24              THE ARBITRATOR:  But it really doesn't
25       matter to my mind, dealing with Train Klan
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 67

1          specifically, whether the check was cut to

2          the partnership, to the general partner or

3          even to a limited partner, who the trustee

4          might view as a subsequent transferor.

5                In any of those circumstances, the

6          partnership and the general partner are on

7          the hook for whatever the legal consequences

8          of the transaction are.

9                MR. HUNT:  Assuming it's a

10         partnership.

11               THE ARBITRATOR:  Assuming it's a

12         partnership, yes.

13               So maybe -- maybe we have to see how

14         many of the cases this resolution solves the

15         problem for.

16               Do you have any sense, Ms. Chaitman,

17         as to how many of your cases involve

18         transferor accounts where money's transferred

19         from Account A to Account B as part of the

20         Exhibit B calculation?

21               MS. CHAITMAN:  Well, I'm not following

22         you.  Because each account holder had a bank

23         account and --

24               THE ARBITRATOR:  I'm not talking about

25         bank accounts.  I'm talking about the

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                          Page 68

1          Madoff -- well, let me phrase it a different

2      way.

3              Do you know how many of the Exhibit Bs

4      in terms of deposits implicate earlier

5      accounts which are transferor accounts and,

6      therefore, to your mind, complicate the

7      accounting and what you can stipulate to?

8              MR. JACOBS:  I think, your Honor,

9      you're referring to inter-account transfers.

10             THE ARBITRATOR:  Yes.

11             MR. JACOBS:  So how many cases

12     implicated inter-account transfers?

13             THE ARBITRATOR:  Yes.

14             MS. CHAITMAN:  I haven't counted them,

15     but a lot.

16             MR. JACOBS:  I haven't counted either,

17     but there's a good portion.  I would say at

18     least roughly half.

19             THE ARBITRATOR:  Okay.

20             MS. CHAITMAN:  But not -- I don't

21     believe any of the three that we're talking

22     about; Benjamin, DiGiulian or Train Klan.

23             THE ARBITRATOR:  Right.  Well, I guess

24     then the question is, even though it's not

25     before me today, should we deal with what, if

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 69

 1        anything, can be stipulated to with regard to

 2        those other accounts?  I'm content to leave

 3        that for another day.  You tell me.

 4             MS. CHAITMAN:  You know, Judge, we

 5        have so many things before us.  And I just

 6        think we'd be doing it in the abstract.

 7             THE ARBITRATOR:  Okay.

 8             MR. JACOBS:  Our position, your Honor,

 9        is we provided voluminous documentation as to

10        all of our claims, whether there are bank

11        records or not.  And many of the factual

12        issues are in, uniquely, the possession of

13        the defendants.

14             And no matter what period of time

15        they're from, the defendants have an

16        obligation to have preserved those records

17        when they were on notice of the litigation.

18        And they have an obligation to do their own

19        investigation as to the factual circumstances

20        of our Exhibit B, regardless of the period of

21        time.

22             And they should be required to answer

23        our discovery as to their position as to each

24        deposit and withdrawal and our net equity

25        calculation whether there was an

Page 70

1          inter-account transfer or not.

2                 THE ARBITRATOR:  But it's not before

3          me today, so let's move on to whatever it is

4          Mr. Hunt next wants to talk about.

5                 MR. JACOBS:  Okay.

6                 MR. HUNT:  I think we have

7          Interrogatory No. 5 pretty well nailed down.

8                 THE ARBITRATOR:  Thank you.

9                 MR. HUNT:  For Interrogatory No. 6, we

10         asked them to identify people with knowledge.

11         Other than the BLMIS people, we didn't get a

12         single person.  And we didn't get that in the

13         initial disclosures either.  So there must be

14         someone we can talk to about this account.

15                THE ARBITRATOR:  Yes, I agree.  That

16         has to be -- you don't even say the account

17         holder, assuming that person is alive and not

18         an entity, has knowledge.  And those answers

19         clearly are deficient to my mind.

20                MS. CHAITMAN:  Okay.

21                MR. HUNT:  Interrogatory No. 7, I

22         think I would like to withhold that one

23         because it falls into this whole category

24         of --

25                THE ARBITRATOR:  Indirect.

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 71

1              MR. HUNT:  Yes.  But I would just

2        point out that, with respect to Interrogatory

3        No. 7, when we asked them what entity

4        received the funds withdrawn from the

5        account, they say they're unable to do so.

6        That, of course, can't be true.  Someone --

7              THE ARBITRATOR:  It's going to get

8        solved by the stipulation.

9              MR. HUNT:  I think that's right, for

10       the most part.

11             Just going back down my list based on

12       the stipulation to see.

13             Interrogatory No. 10 --

14             MS. CHAITMAN:  If I can just

15       interject, you know, for the period from

16       December 1998 on, the trustee has the front

17       and back of every check.  So the trustee has

18       that information.  The clients in general

19       don't have records going back that far.  The

20       trustee has those records.  So he doesn't

21       need me to --

22             THE ARBITRATOR:  Well, again, it's

23       solved by the stipulation, which may be in

24       some instances wrong, using my Bar Mitzvah

25       example.  But if you stipulated that the

Page 72

1          account holder got the initial check, that

2          solves the problem.

3                  MS. CHAITMAN:  Right, but the trustee

4          has those records.

5                  THE ARBITRATOR:  I understand that.

6                  You were talking, Mr. Hunt, about

7          number 10.

8                  MR. HUNT:  I think I'll go ahead and

9          pass on 10 at this point in time.

10                 THE ARBITRATOR:  I was about to say

11         10 -- just so you understand what we're

12         talking about, Ms. Chaitman -- deals with

13         where have you banked.

14                 But it seems to me your entitlement to

15         that information goes out the window with the

16         stipulation.

17                 MR. HUNT:  It's a narrow window, but I

18         would agree with you on that.

19                 With respect to Interrogatory No. 13,

20         they say they're withdrawing that defense.

21         I'd just like the order to reflect that is,

22         in fact, the case so it doesn't come up again

23         at trial.  This has to do with the setoff --

24                 THE ARBITRATOR:  Why don't I simply

25         say that any affirmative defenses that are

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 73

1          withdrawn may not be reasserted at trial.

2                    MR. HUNT:  Okay.  That's fine.

3                    MS. CHAITMAN:  Yes.

4                    MR. HUNT:  That are withdrawn in this

5          set of interrogatories.

6                    THE ARBITRATOR:  I can make it more

7          generic.  Any affirmative defenses that are

8          withdrawn, whether it's in these three cases

9          or --

10                    MR. HUNT:  Or in a letter that they

11          sent us or whatever?

12                    THE ARBITRATOR:  Sure.

13                    MR. HUNT:  Okay.  So in this

14          particular one then, Interrogatory No. 14, I

15          think they have withdrawn that affirmative

16          defense.

17                    THE ARBITRATOR:  Right.

18                    MR. HUNT:  Correct?

19                    MS. CHAITMAN:  Yes.

20                    MR. HUNT:  Interrogatory No. 15, I

21          think they've withdrawn that affirmative

22          defense; correct?

23                    MS. CHAITMAN:  Which one is that?

24                    MR. HUNT:  "Trustee's claims are

25          barred, in whole or in part, for failure to

Page 74

1              properly credit inter-account transfers,

2              profit withdrawals and other adjustments."

3                    MS. CHAITMAN:  This was --

4                    THE ARBITRATOR:  I don't think they

5              have, if I'm looking at the right paperwork.

6              It says, "The trustee has admitted that

7              Madoff's records are permeated with fraud,

8              therefore, they cannot possibly be reliable

9              and/or admissible."

10                   You're saying, based on the stip --

11                   MR. HUNT:  Yes, I think based on the

12             stipulation, they've withdrawn that

13             affirmative defense.

14                   MS. CHAITMAN:  No, because it's only

15             as to the specific deposits and withdrawals.

16             You know, I'm not waiving the right to object

17             to the admission of other records that the

18             trustee may seek to put into evidence at

19             trial.

20                   THE ARBITRATOR:  And this is an

21             example of the boilerplate because it talks

22             about inter-account transfers, but there are

23             no inter-account transfers in Train Klan.

24                   MR. HUNT:  There are no profit

25             withdrawals and no adjustments.  So it seems

Page 75

```
1              either they need to withdraw the defense or

2              answer the interrogatory.

3                   THE ARBITRATOR:  Unless you can tell

4              me why that's wrong, Ms. Chaitman, I'm

5              inclined to agree with that.

6                   MS. CHAITMAN:  Well, I'd like to think

7              about that.  Because I don't want to waive

8              the right to object to the admission of

9              evidence at trial that is unreliable and -- I

10             don't want to have a blanket waiver.  I can

11             reword that affirmative defense, but I don't

12             want to waive that.

13                  THE ARBITRATOR:  Well, unless you

14             convince me otherwise, I do think that the

15             stipulation, as a practical matter, means

16             that Judge Bernstein won't hear argument as

17             to anything that relates to Columns 1 through

18             5 of Exhibit B.

19                  And, conceivably, since there would be

20             a lot of these trials, he may not hear

21             evidence from the trustee about it either.  I

22             suppose there are experts whom the trustee

23             contemplates offering as to the accuracy of

24             the records, but I can envision a scenario

25             where Judge Bernstein says, I don't need to
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 76

1           hear that because I have the stipulation, and

2           you move on from there.

3                   MR. HUNT:  As long as the affirmative

4           defense is in place, the stipulation's not

5           fully effectuated.  Because she claims that

6           there are some -- something to do with the

7           account that she disagrees with because

8           they're not properly credited to the account.

9                   So -- I mean, I know you don't have it

10          in front of you, Ms. Chaitman, but it's clear

11          that this particular affirmative defense

12          is -- directly relates to the stipulation

13          that we just made.

14                  THE ARBITRATOR:  It's the 27th;

15          correct?

16                  MR. HUNT:  Yes, sir.

17                  THE ARBITRATOR:  Here.  Let me show it

18          to you.

19                  MS. CHAITMAN:  Thanks.  I didn't bring

20          my binder.

21                  THE ARBITRATOR:  It continues on the

22          other side.

23                  (Pause from the record.)

24                  MS. CHAITMAN:  Okay.  I would agree

25          that that is out.

Page 77

1           MR. HUNT:  Okay.  So Interrogatory
2     No. 16, they've withdrawn that affirmative
3     defense, so that's good.
4           Interrogatory No. 17, again, I think
5     based on the stipulation that we've just
6     received, that that is an example of one of
7     the defenses that would be withdrawn.
8     Because she says that we failed to properly
9     credit defendants with all of defendants'
10    deposits.
11          MS. CHAITMAN:  I agree about that.
12          MR. HUNT:  Okay.  Just to be clear,
13    the 46th affirmative defense is withdrawn;
14    correct?
15          MS. CHAITMAN:  Yes.
16          MR. HUNT:  Okay.  Interrogatory
17    No. 18, we ask for parties who have knowledge
18    of the deposits and possess documents.
19          THE ARBITRATOR:  Wouldn't that become
20    irrelevant by virtue of the stipulation?
21          MR. HUNT:  Maybe.  How about we
22    withhold on that, see what we get back from
23    them with respect to the answer to the
24    interrogatory, whether they identify a person
25    with knowledge.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 78

 1            MS. CHAITMAN:  The point is, if we're

 2       conceding it, why would you need to take

 3       discovery?  What's the benefit of conceding

 4       if we're going to then have discovery on it?

 5            MR. HUNT:  There's still affirmative

 6       defenses pled.

 7            MS. CHAITMAN:  We just waived the

 8       specific affirmative defense.

 9            THE ARBITRATOR:  That's a different

10       issue.  It may be that there are narrower

11       areas where a deposition or other discovery

12       could be taken, but let's not deal with that

13       in the abstract.

14            MR. HUNT:  So I mean, I think

15       identifying persons with knowledge is -- and

16       who have documents is perfectly acceptable

17       discovery.  We have the right to know who we

18       might be faced with at trial.

19            THE ARBITRATOR:  Except you asked for

20       information concerning any transfers,

21       deposits or subsequent transfers.

22            MR. HUNT:  And I agree that's not part

23       of the deal.  I withdraw that.

24            THE ARBITRATOR:  But I think that's

25       answered adequately by Interrogatory No. 6,

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

```
                                                    Page 79

  1            which is "Identify any person with knowledge

  2            of any transfer" --

  3                    MR. HUNT:  You and I are on the same

  4            page with that.  That's exactly what I was

  5            saying.  I would withhold asking for any more

  6            information about this depending on the

  7            quality of the information we get with

  8            respect to Interrogatory No. 6.

  9                    THE ARBITRATOR:  Okay.

 10                    MR. HUNT:  That concludes the reading

 11            for today with respect to these

 12            interrogatories.

 13                    THE ARBITRATOR:  Okay.  With respect

 14            to Train Klan.  Don't make it sound better

 15            than it is.

 16                    MR. HUNT:  That's why I put the caveat

 17            in there at the end.  So we also have

 18            document requests for Train Klan.  Maybe we

 19            could take a short break and let me look at

 20            this based on the stipulation --

 21                    THE ARBITRATOR:  Sure.

 22                    MR. HUNT:  -- see if there's some --

 23            we can streamline this a little bit.

 24                    THE ARBITRATOR:  Absolutely.  I'm sure

 25            we'd all be in favor of that.
```

Page 80

1              (Recess from the record.)

2              THE ARBITRATOR:  What's next,

3         Mr. Hunt?

4              MR. HUNT:  The document request in the

5         Train Klan matter, we took a short break and

6         I think we've eliminated the need for a

7         number of these, but I do want to go through

8         a few of them.

9              THE ARBITRATOR:  Sure.

10             MR. HUNT:  Some of them I think you

11        sort of already ruled on, but just to be

12        clear.

13             Document Request No. 1 asks for

14        organizational documents relating to the

15        partnership agreements or document with

16        equivalent function of partnership agreement

17        and any amendments to those agreements.

18             I think you've already ruled that

19        we'll get those; correct?

20             THE ARBITRATOR:  Well, let me phrase

21        it this way:  I made a ruling with respect to

22        it, and my order will correspond to my

23        ruling.

24             MR. HUNT:  Okay.

25             THE ARBITRATOR:  So I think I dealt

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 81

1      with it.

2              MS. CHAITMAN:  Yeah, let's not repeat

3      the --

4              THE ARBITRATOR:  Right.

5              MS. CHAITMAN:  Because we're going to

6      rely on the transcript.

7              MR. HUNT:  I just want to make it

8      clear.

9              Document Request No. 3 talks about

10     minutes of partnership meetings, resolutions,

11     agreements and policies concerning the

12     account, which I think falls into that

13     similar category.  I would withdraw that.

14             THE ARBITRATOR:  In effect, I'm

15     disallowing that one for the time being

16     except to the extent that it falls within

17     what I described earlier.

18             MR. HUNT:  Falls within what?  Just to

19     make clear.

20             THE ARBITRATOR:  My ruling with

21     respect to the documents you get with respect

22     to the partnership, assuming there are such

23     documents.  But if they were, for example,

24     investment policies, I'm denying that request

25     and the other elements of this without

Page 82

1          prejudice to a later application.

2                    MR. HUNT:  I agree with that.  That's

3          fine.

4                    And then Document Request No. 4,

5          taking out the word "and limited," we are

6          looking for all general partners, current and

7          former.

8                    THE ARBITRATOR:  I think 4 is

9          virtually what my ruling was because it says,

10         Ms. Chaitman -- well, it says, "all

11         documents."  I would take out "all" and say

12         "documents sufficient to show all general

13         partners of the partnership."

14                   MR. HUNT:  It actually says that, "all

15         documents sufficient to show."

16                   THE ARBITRATOR:  I'm taking out the

17         word "all."

18                   MS. CHAITMAN:  So if there's one

19         document --

20                   THE ARBITRATOR:  Let's assume this

21         was -- and it's not, but let's assume this

22         was Baker & Hostetler, assuming it's a

23         partnership.  I would not be allowing all

24         documents sufficient to show who the partners

25         are, but just some documents sufficient to

Page 83

1       show --

2               MR. HUNT:  I absolutely agree with

3       that and acknowledge it.

4               The next one is Document Request

5       No. 9, documents sufficient to identify any

6       money, property or anything else of value

7       provided by you to BLMIS in exchange for any

8       initial transfer.

9               They say we have no legitimate

10      interest in any such documents.  First of

11      all, we're asking about initial transfers.

12              And, second, with respect to the

13      affirmative defenses, they have Affirmative

14      Defense No. 3, which says that the defendants

15      gave reasonably equivalent value in exchange

16      for the transfers, and Affirmative Defense

17      No. 4, which relates to the antecedent debt

18      defense.

19              So as long as those defenses are still

20      pled and the issue of value given with

21      respect to the initial transfers is still an

22      issue, then we have a right to receive those

23      documents.

24              MS. CHAITMAN:  Well, if I'm

25      stipulating to the deposits, I don't

Page 84

1          understand why we have to produce them.

2          What's the point of stipulating to them?

3                    THE ARBITRATOR:  Is there a difference

4          between initial transfer and initial

5          deposits?

6                    MR. HUNT:  The initial transfer is the

7          withdrawal.  It can be the withdrawal.  So

8          they're saying that they gave value for the

9          withdrawals.  That's how I read their

10         affirmative defense, unless it says something

11         different.  I mean, either they withdraw

12         those affirmative defenses or produce the

13         documents related to them.

14                   MS. CHAITMAN:  The document related to

15         the withdrawal is the check from Madoff,

16         which the trustee has.  We're stipulating

17         that we got those withdrawals.

18                   MR. HUNT:  I know that you don't have

19         the document in front of you, but the defense

20         that you assert is that the defendants gave

21         value to BLMIS in exchange for the

22         withdrawal.  So --

23                   MS. CHAITMAN:  Yeah, and I'm not

24         waiving that.  That's 548(c).

25                   MR. HUNT:  We want to know what value

Page 85

1        they gave.

2             MS. CHAITMAN:  That's -- the value is

3        they gave the money.  I'm not waiving an

4        affirmative defense which exists under the

5        statute.

6             THE ARBITRATOR:  And I think I agree

7        with Ms. Chaitman.  I just want to see where

8        the definition of initial transfer is.

9             MR. JACOBS:  That defense has also

10       been dismissed by Judge Bernstein.  So it's

11       not applicable any longer to the case.

12            MS. CHAITMAN:  It is on appeal and I'm

13       not waiving it.

14            MR. JACOBS:  But it's not currently

15       applicable in the case.

16            THE ARBITRATOR:  Well, then let me

17       interrupt you for a second and say, why are

18       we talking about it?

19            MR. JACOBS:  We're talking about it

20       because I think we have a right to know if

21       there's another basis of value that's being

22       asserted other than just having made deposits

23       into the account.  So was there -- were there

24       other monies provided that aren't reflected

25       in Exhibit B?  Was a car given as a gift to

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 86

1          Mr. Madoff's grandchildren?  Anything of that
2          sort I think is the point.
3               MR. HUNT:  So if the answer said that
4          the only value that the parties allege is the
5          deposit, then I'm fine with not asking for
6          documents about that.
7               THE ARBITRATOR:  I didn't have the
8          presence of mind to write down what the
9          stipulation as modified was, but it certainly
10         talked about will not challenge the
11         correctness.  If we add the word
12         "completeness" in there, so that Ms. Chaitman
13         will not, on behalf of her clients, where
14         applicable, challenge the completeness of
15         Columns 1 through 5 of Exhibit B, seems to me
16         that would obviate your concern and I think
17         is already implicit in what --
18               MS. CHAITMAN:  I agree.
19               THE ARBITRATOR:  -- you said.
20               MS. CHAITMAN:  I agree.
21               MR. HUNT:  I agree.
22               THE ARBITRATOR:  Okay.  So --
23               MR. HUNT:  Thank you.
24               THE ARBITRATOR:  Okay.
25               MR. HUNT:  So the next one that comes

Page 87

 1        up is Request No. 13 as it relates to

 2        affirmative defenses asserted in defendants'

 3        answer to the complaint.  They say that such

 4        documents will be produced.  Modifying this

 5        request to say any of the affirmative

 6        defenses that have not been withdrawn, we

 7        would like them to go ahead and produce the

 8        documents.

 9              THE ARBITRATOR:  I'm lost.  You were

10        talking about 13.

11              MR. HUNT:  Yes.

12              THE ARBITRATOR:  I'm looking at the

13        partnership responses.  And it's -- 13 says,

14        "The articles of incorporation, memoranda of

15        association" --

16              MR. HUNT:  Okay.  I'm looking at the

17        individual.  So they're slightly different,

18        maybe.

19              THE ARBITRATOR:  Okay.

20              MR. HUNT:  Yeah, there's only two

21        different ones.  One is 12, so that's why the

22        numbering is off a little bit.  So on the

23        partnership, I want --

24              THE ARBITRATOR:  Forgetting the

25        numbering for the moment, is the text the

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                           Page 88

  1        same?

  2             MR. HUNT:  Yes, sir.

  3             THE ARBITRATOR:  So tell me what it

  4        says and I'll find it in the one I'm looking

  5        at.

  6             MR. HUNT:  "Documents you contend

  7        support any denials of fact or affirmative

  8        defenses asserted in defendants' answer to

  9        the complaint."

 10             And their response was, "Any such

 11        documents shall be produced."

 12             So no documents have been produced.

 13        Then modifying this request to say, "any

 14        remaining denials of fact or any remaining

 15        affirmative defenses," we'd like them to

 16        produce the documents.

 17             MS. CHAITMAN:  I'm not following you.

 18        You're changing the -- the document demand?

 19             MR. HUNT:  Yes, I'm clarifying it

 20        based upon the stipulation.

 21             THE ARBITRATOR:  He's narrowing the

 22        demand to say except -- let me rephrase it --

 23        except to the extent that you've withdrawn

 24        affirmative defenses, produce the documents

 25        that support those affirmative defenses.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 89

```
 1              MS. CHAITMAN:  But we've --
 2              THE ARBITRATOR:  And you've said you
 3         will --
 4              MS. CHAITMAN:  To the extent that we
 5         have them.  And if we haven't produced them,
 6         we don't have them, so --
 7              THE ARBITRATOR:  Okay.  Then
 8         anticipating what Mr. Hunt's going to say, I
 9         think that he wants some representation that
10         there are none.
11              MR. HUNT:  Agreed.
12              THE ARBITRATOR:  So maybe I can deal
13         with that with respect to Train Klan.  And
14         recognizing that there are 91 other cases
15         that you have hanging out there, but in Train
16         Klan, and maybe in the two other cases, if I
17         say, shall produce any documents relating to
18         the remaining affirmative defenses in the
19         case within ten days or be barred from using
20         such documents for any purpose --
21              MS. CHAITMAN:  But aren't these
22         documents in our possession?  If we're going
23         to be relying on documents that the trustee
24         has in his possession or that we're obtaining
25         from some third party --
```

Page 90

1               THE ARBITRATOR:  Sure.  He's not

2       interested in what he already has.

3               MS. CHAITMAN:  Right.

4               THE ARBITRATOR:  It's whatever you

5       have.  So it's essentially a drop-dead date.

6               MS. CHAITMAN:  I have no problem with

7       that.

8               THE ARBITRATOR:  Okay.

9               MS. CARLISLE:  With the caveat on

10      that, within ten days or clearly indicate

11      there are no such documents.

12              MR. HUNT:  What he's saying is she

13      produces them by whatever or she's barred

14      from ever using them.

15              THE ARBITRATOR:  Correct.

16              MS. CHAITMAN:  Unless they're

17      documents that I obtain from a third party or

18      the trustee.

19              MR. HUNT:  Any third-party documents

20      that you obtain you're supposed to produce to

21      us.

22              MS. CHAITMAN:  If I haven't received

23      them yet, when I produce them -- I can't

24      produce them in 10 days if I serve a subpoena

25      in 20 days.

Page 91

```
 1              THE ARBITRATOR:  I --

 2              MR. HUNT:  I agree with that.

 3              THE ARBITRATOR:  Again, I'll try and

 4    incorporate those two caveats into my

 5    directive, and I'll make it applicable to all

 6    three of the cases that are the subject of

 7    the motion.

 8              MR. HUNT:  Okay.  Thank you.

 9          So the next one is -- I'm looking at

10    the individuals.  I may be off by one.  May

11    be 18 in the one you're looking at.  But it's

12    documents you contend support the 29th

13    affirmative defense in which you contend the

14    complaint fails to state a claim on which

15    relief can be granted because it fails to

16    sufficiently trace the funds at issue from

17    BLMIS to defendants.

18          I think that --

19              THE ARBITRATOR:  We don't need to, it

20    seems to me, go affirmative defense by

21    affirmative defense because the ruling

22    applies to whatever affirmative defenses

23    haven't been withdrawn.

24              MR. HUNT:  That's true.  And I just

25    was going to say, with respect to this one, I
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 92

```
 1              think it's probably one that should be

 2              withdrawn based upon the stipulation.

 3              Because it deals with tracing to the

 4              defendants.  I guess if they haven't

 5              withdrawn it, then we'll get the documents.

 6                   THE ARBITRATOR:  Right.  Okay.  And

 7              implicit in what Ms. Chaitman is saying, at

 8              least as to this one, it sounds like you're

 9              not going to be getting documents because

10              there are none.

11                   MS. CHAITMAN:  We don't have them, but

12              we'll be relying on trustee's documents.

13                   MR. HUNT:  Okay.

14                   THE ARBITRATOR:  Okay.

15                   MR. HUNT:  Document Request No. --

16                   THE ARBITRATOR:  Let me interrupt.

17              When you say you don't have them, I

18              assume you've made a good-faith effort to get

19              from your clients whatever documents they

20              have.

21                   MS. CHAITMAN:  Yes, the clients don't

22              have these records, Judge.

23                   THE ARBITRATOR:  Sure.

24                   MR. HUNT:  I think they do have some

25              of them, but they just haven't produced them.
```

Page 93

 1        Because you say in this that you would

 2        produce them, and you haven't produced a

 3        single document.  But what I've done --

 4             THE ARBITRATOR:  Well, no, it says,

 5        "any such documents will be produced," which

 6        doesn't say that there aren't documents.  It

 7        says if there are documents, they'll be

 8        produced.

 9             MR. HUNT:  It's sort of slickly

10        drafted, but either you have them and you

11        produce them or you don't.

12             So Document Request No. 23, any

13        documents you've received from any third

14        party --

15             THE ARBITRATOR:  We discussed that.

16             MR. HUNT:  -- she says she will

17        produce them if she has them.

18             I assume you don't have them at this

19        point in time; is that correct?

20             MS. CHAITMAN:  Right.

21             THE ARBITRATOR:  Maybe here I can make

22        a generic ruling again and say, unless

23        otherwise directed, any documents received

24        from third parties will be produced within

25        ten days.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 94

1              MS. CHAITMAN:  Yeah.  And if you could

2       make that apply to the trustee as well,

3       Judge, because we've had a real problem with

4       the trustee subpoenaing third-party bank

5       records and waiting six to eight weeks before

6       they're delivered to me.

7              MR. HUNT:  With respect to this case,

8       I don't have any problem with that.  I don't

9       know about the other cases.  But I do know we

10      routinely produce documents back to the

11      parties as soon as we get them.

12             THE ARBITRATOR:  My initial reaction

13      was to make it apply to both sides.  I think

14      the wording needs some tweaking unless I make

15      it specific to these three cases, because, to

16      use one of the other cases I have, if they

17      got documents relevant to Ms. Crupi, which is

18      not your case, they wouldn't have to produce

19      them to you probably unless they relate to

20      your case.  But certainly with regard to

21      these three cases, yes, I will make it apply

22      to both sides.

23             MR. HUNT:  Okay.  And then the last

24      one was the catch-all documents consulted in

25      preparing responses to discovery.  They say

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 95

1           any such documents will be produced, but we

2           have not received any documents.

3                    THE ARBITRATOR:  But that falls within

4           my generic ruling, which is put up or shut up

5           within ten days.

6                    MR. HUNT:  Okay.  The only issue

7           there, though, is that gives them the option

8           of deciding whether or not to give us a

9           document that might be useful in our case.

10          So I can see how that applies to affirmative

11          defenses where they are going to be precluded

12          from using the documents, but I still think

13          that we have a right to see what evidence or

14          what information they identified in

15          responding to discovery, as a general matter.

16                   THE ARBITRATOR:  Except we've carved

17          out certain areas.  If, for example,

18          Ms. Chaitman has file cabinets full of

19          subsequent transfers to third- and

20          fourth-generation transferees, that's not --

21          that may be something she studied at length,

22          which would be responsive to 28, but would

23          not be something you're entitled to based on

24          our discussion thus far this morning.

25                   MR. HUNT:  Right.  So her answer said

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 96

 1              that they're going to produce the documents.

 2              I'll modify this to say we don't want any

 3              subsequent transferee documents or any

 4              documents directly related to the

 5              transferees.

 6                   THE ARBITRATOR:  She just said that

 7              she will produce them.  And my ruling has

 8              been that any documents she's agreed to be

 9              produced must be produced within ten days.

10              So if she has documents to produce, she will

11              produce them within ten days.

12                   MR. HUNT:  Okay.  I'm fine with that.

13                   Great.  That's all I had on that, on

14              Train Klan.

15                   THE ARBITRATOR:  Okay.  Who's next?

16                   MR. HUNT:  Next is DiGiulian.

17                   THE ARBITRATOR:  Okay.

18                   MR. HUNT:  So turning to the

19              interrogatories in DiGiulian, Interrogatory

20              No. 1 says, "Identify the reasons for the

21              transfers."

22                   She says that "Withdrawals were taken

23              to pay applicable taxes, unreported

24              short-term capital gains in the account and

25              for the living expenses of Bruno DiGiulian."

Page 97

 1                    They provide no detail about the

 2           applicable taxes that were paid, nor for the

 3           living expenses.

 4                    THE ARBITRATOR:  I guess the answer --

 5           putting aside the interrogatory, but the

 6           answer relates to the defense, which I think

 7           Judge Bernstein has stricken, which is, we're

 8           entitled to a credit for taxes paid.

 9                    Do I have that right, Ms. Chaitman?

10                    MS. CHAITMAN:  I don't believe that he

11           struck it.  I think that, in one case, he's

12           ruled that defendant is not entitled to a

13           credit, but, of course, we've asserted that

14           as an affirmative defense and we're going to

15           take it up.

16                    THE ARBITRATOR:  Right.  But at the

17           moment -- I wasn't sure whether it was him or

18           a district judge, but at the moment, his view

19           is, in part, because each defendant has his

20           own unique tax situation or other expenses,

21           that they could claim that that's not a

22           credit that one of your clients can take.

23                    Are we on the same page with regard to

24           that?

25                    MS. CHAITMAN:  Yes.  He's ruled that

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 98

1          way in one case, yes.

2              THE ARBITRATOR:  So given that, I'm

3          not sure why -- unless Ms. Chaitman prevails

4          on appeal, why the reason for each transfer

5          is relevant.

6              MR. HUNT:  But is she withdrawing the

7          offset defense in this case?

8              MS. CHAITMAN:  No, because -- here's

9          the thing:  I am going to go up on appeal on

10         any issue on which I lose.  I can't withdraw

11         it; right?  I'm not withdrawing it.  I'm

12         just -- I want to preserve it for appeal.

13             MR. HUNT:  So if the defense is still

14         in the case --

15             THE ARBITRATOR:  But it's not in the

16         case.  It's -- if it comes back into the case

17         before trial because a district judge says

18         that Judge Bernstein erred, then we'll deal

19         with that.  But at the moment, you're asking

20         for -- let me give you an analogy.

21             If this were a commercial case and

22         there were three claims in the complaint and,

23         at the motion to dismiss stage, a district

24         judge dismissed Claims 2 and 3, your argument

25         by analogy would be I still get discovery on

Page 99

1        Claims 2 and 3 because Ms. Chaitman has said

2        she intends to appeal that at the end of

3        case.  So that doesn't make any sense.

4             MR. HUNT:  Your analogy may be a

5        little off, though, because she's saying that

6        happened in another case, but it doesn't

7        apply to this case, I think is what she's

8        saying.  That's what I heard her say.

9             THE ARBITRATOR:  Is that what you're

10       saying?

11            MS. CHAITMAN:  There's no -- well,

12       Judge Bernstein did not rule for all the

13       cases.  He ruled in one case.

14            THE ARBITRATOR:  Right.

15            MS. CHAITMAN:  And I'm confident he'll

16       rule exactly the same way in every other

17       case.

18            THE ARBITRATOR:  Right.

19            MS. CHAITMAN:  But I should add one

20       other thing --

21            THE ARBITRATOR:  You're not trying to

22       be the Artful Dodger by saying, well, it only

23       applies to that case --

24            MS. CHAITMAN:  No, I mean, I can't

25       imagine Judge Bernstein -- maybe he would

Page 100

1         change his mind, but I don't think he would.

2               But the thing is that -- I want to

3         point out that in each of my cases, what I am

4         doing is submitting an accountant's affidavit

5         as to exactly what the taxes paid were.  So

6         they're getting that information, but they're

7         getting it through an accountant's affidavit.

8         We've been supplying those in a timely

9         manner.

10              THE ARBITRATOR:  But -- and that deals

11        with a document request rather than an

12        interrogatory.  But I think one of the things

13        that the trustee said in his papers is that

14        they're entitled to those underlying

15        documents in the earlier stage.

16              I'm not sure how it really helps you,

17        getting it at the earlier stage, but I don't

18        disagree with you that you're entitled to it.

19        It's, in effect, that which the accountant

20        would rely on.

21              MS. CHAITMAN:  Well, we're viewing it

22        pretty much as an expert's report.  We're

23        redacting -- the trustee's only entitled to

24        the information on the tax return which

25        relates to the Madoff income.  So it's a

Page 101

1          laborious process of redacting the tax

2          returns.

3                  And that's what we're doing.  And

4          we're doing it in the form -- producing these

5          declarations.  So we're producing it.  We're

6          just not producing it in the first stage.

7                  MR. HUNT:  Are you going to produce

8          one in this case?

9                  MS. CHAITMAN:  We're producing

10         declarations in each of the cases.  You've

11         gotten a lot of them already.

12                 MR. HUNT:  As long as the order says

13         that when a declaration comes, the underlying

14         documents supporting it are produced --

15                 MS. CHAITMAN:  In a redacted form,

16         which is -- it just shows the --

17                 MR. HUNT:  I don't --

18                 MR. JACOBS:  There's no redaction for

19         relevance permitted under the case law rules,

20         to my knowledge.

21                 THE ARBITRATOR:  Well, typically there

22         would not be.  There are confidentiality

23         orders obviously in all of these cases.  By

24         the same token, if Mr. DiGiulian has

25         $10 million in earned income, I'm not sure

Page 102

```
 1          that's relevant to anything that the trustee
 2          is concerned with.
 3                MR. JACOBS:  It may or may not be,
 4          your Honor, but we went through this exercise
 5          with Ms. Chaitman concerning the Rule 35 bank
 6          records where she attempted to unilaterally
 7          redact out transactions that weren't related
 8          to the BLMIS account.
 9                And the judge explicitly overruled
10          that because, until we see the information,
11          we can't make a fair determination as to
12          whether it's relevant or not, given the
13          nature of the defenses that have been
14          asserted.  And there is a confidentiality
15          protective order in place that will protect
16          from the disclosure any of that confidential
17          information outside of use in the litigation.
18          So it -- it's not a valid concern.
19                THE ARBITRATOR:  Did I hear
20          Ms. Chaitman say you've already gotten --
21                MR. HUNT:  We haven't gotten any of
22          the underlying documents.
23                MS. CHAITMAN:  They haven't gotten the
24          documents yet, but the thing is --
25                THE ARBITRATOR:  Give me sort of a
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 103

1          timeline.  When did you get the first of the

2          accountants' reports?

3                  MS. CARLISLE:  I believe I've received

4          three of them, only one of the cases.  And

5          I'm not a hundred percent sure it's the

6          Gordon case.  There are two cases against

7          Ms. Gordon.  The first ones I received were

8          probably in August --

9                  MS. CHAITMAN:  I don't remember.

10                 MS. CARLISLE:  -- or September.  The

11         other two cases, fact and expert discovery is

12         currently closed.  These cases are much --

13         are further along.  And they were

14         one-to-two-page declarations from the

15         accountants just setting forth the amount of

16         taxes purportedly paid by these individuals.

17                 MR. JACOBS:  That's the problem with

18         the reports, your Honor; they're hearsay.

19         Because none of the other underlying

20         documents or source information is provided.

21         One of the affidavits, it's not in any of the

22         cases before your Honor today, actually says

23         that the information provided in the

24         affidavit was based on discussions with

25         defendant from recollection.  It's really --

Page 104

```
 1        it's rather egregious.

 2             And the first one we ever received was

 3        served on us after expert discovery had

 4        closed.  So whether it's even fairly

 5        considered in the case is a full separate

 6        argument that we don't need to delve into

 7        today.

 8             But the fact of the matter is that all

 9        of these underlying documentation, including

10        the taxes, must be produced in fact discovery

11        in each of these cases, regardless of whether

12        an affidavit is supplied by a fact witness or

13        a purported expert witness of any sort.  And

14        that's a pretty standard discovery --

15             THE ARBITRATOR:  As a general rule, I

16        agree with you, but I'm not unsympathetic to

17        what Ms. Chaitman is saying, which is -- she

18        hasn't said this, but I think what she's

19        trying to say is that, until my expert issues

20        his -- assuming it's a he -- his report, I

21        don't know what documents I'm supposed to be

22        producing; and, conversely, I'm not sure that

23        you're really prejudiced by getting the

24        documents with the report, although you

25        haven't been getting it with the report thus
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 105

1          far.

2                    MR. JACOBS:  Right.

3                    MS. CHAITMAN:  And the other thing --

4                    THE ARBITRATOR:  And I suppose the way

5          in which you might be prejudiced is if that

6          occasions a need to depose that particular --

7                    MR. JACOBS:  Right.

8                    THE ARBITRATOR:  -- defendant.  But if

9          there are documents produced in expert

10         discovery that conceptually should have been

11         produced in fact discovery, obviously, I

12         would look favorably on a request to depose

13         that defendant out of time.

14                   MR. JACOBS:  Right.  Just a point of

15         confusion.  These aren't expert reports.

16         They're entirely factual in nature.  There's

17         no expert analysis.  There's no purported

18         expert qualification.  There's no disclosures

19         made under Rule 45 as that would be required

20         in connection with the designation of any

21         expert.  They're not being submitted in a

22         timely fashion on -- prior to the expert

23         disclosure dates, as required under the case

24         management orders.

25                   So it's essentially the defendant has

Page 106

1        said, I'm just going to force upon the

2        trustee a hearsay affidavit on factual issues

3        without any underlying documentation whenever

4        I want without regard to the rules or the

5        judge's orders.  And --

6                THE ARBITRATOR:  It also relates to an

7        affirmative defense, which at the moment is

8        not in the case.

9                MR. JACOBS:  Well, your Honor, it's in

10       the case until -- in my view, it's in the

11       case until we have either Ms. Chaitman

12       withdraws it affirmatively or we have a court

13       order dismissing it from the case.

14               THE ARBITRATOR:  Ms. Chaitman concedes

15       that -- unless she comes up with another

16       argument that sways Judge Bernstein, that

17       he's going to make the same ruling throwing

18       out the tax credit affirmative defense --

19               MR. JACOBS:  Right.

20               THE ARBITRATOR:  -- in all of her

21       cases.

22               MR. JACOBS:  If it's not in the case,

23       your Honor, why should the defendant be

24       allowed to enter into evidence supporting it

25       into the factual record if it's not in the

                                                         Page 107

 1        case?  It's the same argument that

 2        Ms. Chaitman makes that we're not allowed to

 3        take discovery to frame a complaint.  Right?

 4        I mean --

 5             THE ARBITRATOR:  Let me --

 6             MR. JACOBS:  It's in the case or it's

 7        not I guess is the contention we're grappling

 8        with here.

 9             THE ARBITRATOR:  Let me tell you the

10        way in which I contemplate ruling on this,

11        and then both sides can take pot shots at it,

12        which is that any report by an accountant or

13        expert relating to the tax credit affirmative

14        defense must be accompanied by the unredacted

15        underlying documents upon which the report

16        relies.

17             MS. CHAITMAN:  Well, I would quarrel

18        with the unredacted portion of that because

19        the only credit we're seeking is for the

20        Madoff income.

21             THE ARBITRATOR:  But --

22             MS. CHAITMAN:  And the trustee's not

23        entitled to information about the defendants'

24        income other than that.

25             THE ARBITRATOR:  Well, one of the

Page 108

1          problems is the trustee may get a lot more

2          stuff than he wants.  Some of these people

3          may have Trump-like returns.

4              MR. HUNT:  Then they'll get nothing.

5              THE ARBITRATOR:  Hmm?

6              MR. HUNT:  Then they'll get nothing.

7              THE ARBITRATOR:  Good point.

8              Hang on a second.

9              Off the record.

10             (Discussion off the record.)

11             THE ARBITRATOR:  Back on the record.

12             I agree with what's been said about

13         redactions for relevance typically not being

14         allowed, but there are numerous potential

15         schedules to tax returns which are wholly

16         irrelevant and, both from a burdensomeness

17         perspective and from a privacy perspective,

18         I'm sympathetic to the defendants' desire to

19         shield that from disclosure.

20             What I will require be produced in

21         unredacted form, at the same time as an

22         accountant's or expert's report relating to

23         this affirmative defense, will be the first

24         two pages of the tax return and any schedules

25         or other attachments that relate specifically

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 109

```
 1          to the Madoff capital gains in unredacted

 2          form.

 3                  Now, that doesn't deal with the

 4          reports you've gotten thus far, but my ruling

 5          with respect to that will be that, for

 6          reports you've gotten thus far, that that

 7          material be produced within ten days.

 8                  MR. HUNT:  So I agree with all that.

 9          I just wanted to add some clarification.

10                  In addition, any documents that the

11          expert relied on, if he's being offered as an

12          expert, right, just like you would in the

13          normal rules.

14                  MR. JACOBS:  I think even more

15          generally I would add, any documents that

16          were -- that the -- any source material for

17          any information that's included in the report

18          should be disclosed in its entirety

19          regardless of whether it's construed as an

20          expert or an accountant's report; otherwise

21          it's hearsay.

22                  THE ARBITRATOR:  Well, to take the

23          example you gave, you said there's one report

24          that seemed to rely on a conversation with

25          the defendant, but --
```

Page 110

```
 1                MR. JACOBS:  Right.

 2                THE ARBITRATOR:  -- if that

 3        conversation were a letter instead, you would

 4        want the letter.

 5                MR. JACOBS:  Right.  Because a

 6        defendant can offer sworn testimony, and we

 7        can challenge the veracity or discredit on

 8        cross-examination just like we would at

 9        trial.

10                MR. HUNT:  I would just say, you know,

11        produce the documents that he's relying on

12        and we can question --

13                THE ARBITRATOR:  But he's relying

14        potentially on tax returns, and I made a

15        limited ruling with respect to the tax

16        returns.

17                MR. HUNT:  And I think the point then

18        is --

19                THE ARBITRATOR:  So I'm tacking on to

20        the ruling as well as any additional

21        documents upon which the expert has relied.

22                MR. HUNT:  Okay.  That's good.

23                THE ARBITRATOR:  Any objection to

24        that, Ms. Chaitman?

25                MS. CHAITMAN:  No.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                        Page 111

 1           MR. JACOBS:  Agreed, except for with

 2      the fact that it's construed as an expert,

 3      which I believe we will challenge.

 4           THE ARBITRATOR:  I will clean that up.

 5      It will say accountant or expert.

 6           MR. JACOBS:  And, your Honor, on the

 7      tax returns, can we clarify.  I believe in

 8      addition to the taxes paid, any schedules

 9      specifically regarding the Madoff investment

10      and any taxes paid on those capital gains, we

11      would also be entitled to information

12      concerning the defendants' both -- full scope

13      of refunds in that same given year regardless

14      of whether or not --

15           THE ARBITRATOR:  You're getting the

16      first two pages of the return.

17           MR. JACOBS:  So I'm just --

18      respectfully, without those in front of me, I

19      can't verify all the information that that

20      includes.  I don't think I'm as familiar with

21      them as you are.  I'm just looking to confirm

22      that that information would be reflected in

23      the scope of the materials you've ordered are

24      allowed.

25           I just want to confirm.  Because the

Page 112

1          refund is relevant.  Whether the defendant

2          got a refund on the taxes paid or used the

3          tax liability to offset -- or a refund to

4          offset liabilities in subsequent years is

5          equally, from our perspective, relevant.

6                  THE ARBITRATOR:  I think you're

7          getting what you want.  Why don't you consult

8          with somebody at your firm.  And if there

9          are -- if there's something additional that

10         relates to that, send me a letter.  And after

11         Ms. Chaitman has had an opportunity to

12         respond, I'll modify it.

13                 MR. JACOBS:  Perfect.

14                 MR. HUNT:  Once we get the first set

15         of documents that will help; right?

16                 THE ARBITRATOR:  Right.

17                 Off the record.

18                 (Discussion off the record.)

19                 THE ARBITRATOR:  Back on the record.

20                 MR. HUNT:  I'd like to move to

21         Interrogatory No. 3, "Identify each deposit

22         into the account."  They say, "Responding

23         party is unable to do so.  To the extent we

24         have reliable third-party records, they will

25         acknowledge the deposit."

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

                                                        Page 113

 1              We've provided them with a large

 2         number of third-party records.  So I would

 3         just ask that they amend this answer to

 4         reflect that and then withdraw all the stuff

 5         about riddled with fraud and all that other

 6         stuff, if it's appropriate.

 7              THE ARBITRATOR:  I'm looking at the

 8         Answer to Interrogatory 8, which doesn't have

 9         the "however" and "moreover" paragraphs, but

10         says, "Responding party does not dispute the

11         deposits and withdrawals reflected on

12         Exhibit B to the complaint," and then it has

13         the word "on," which is stuck in there for

14         some reason, but I assume it's just a typo.

15              So I think what Ms. Chaitman was

16         trying to do was say, we're not disputing

17         Columns 1 through 5 of Exhibit B relating to

18         this defendant, but, independent of that, we

19         can't identify each deposit.

20              You were saying there's an

21         inconsistency there.

22              MR. HUNT:  Exactly.

23              THE ARBITRATOR:  I think I understand

24         what she's trying to do, but I think the

25         stipulation which will apply to this case

Page 114

```
 1        obviates the need for an answer to that
 2        interrogatory.
 3              MR. HUNT:  Do we have that same
 4        stipulation with respect to this case?
 5              THE ARBITRATOR:  I thought we have it
 6        an all three of these.
 7              MS. CHAITMAN:  We agreed that we have
 8        it on all three of them.  In each of these
 9        cases, we have agreed to the accuracy of
10        Exhibit B.
11              THE ARBITRATOR:  Right.
12              MR. HUNT:  At Columns 1 through 5;
13        right?
14              THE ARBITRATOR:  Yes, but one of those
15        is each deposit into the account.
16              MR. HUNT:  Yes.  Okay.
17              Interrogatory No. 4 asks for names of
18        persons with knowledge.  They did not give us
19        any other than Madoff employees.
20              THE ARBITRATOR:  We're going back over
21        the same ground.
22              MR. HUNT:  Right.
23              THE ARBITRATOR:  Ms. Chaitman is going
24        to provide you with the names of the people
25        on her side of the beam.
```

Page 115

1          MS. CHAITMAN:  But in this case, Bruno

2     DiGiulian is deceased.  His wife had nothing

3     to do with the account, so she has no

4     knowledge.  You know, I don't have any

5     information to provide.

6          THE ARBITRATOR:  That's fair.

7          MR. HUNT:  Well, she does have

8     knowledge.  She signed the interrogatory

9     responses and --

10          MS. CHAITMAN:  She signed them because

11     they had to be verified, and she was the only

12     person who could verify it, but she couldn't

13     verify any more information than we put in

14     here.  That's why we didn't put anything else

15     in because this is all she could verify.

16          THE ARBITRATOR:  And, also, it becomes

17     irrelevant because transfer means withdrawals

18     or does it also mean deposits?

19          MR. HUNT:  It means both.

20          THE ARBITRATOR:  But they've been

21     stipulated to.  So even if the entire Mormon

22     Tabernacle Choir is familiar with them, it's

23     irrelevant.

24          MR. HUNT:  Well, I do think we have

25     the right to know who the -- who their

Page 116

```
 1          accountants were and tax preparers and so

 2          forth.  They have not given us a single name

 3          of people with knowledge, whether --

 4               THE ARBITRATOR:  I -- I disagree.

 5          Insofar as deposits and withdrawals have been

 6          stipulated to and cannot be challenged at

 7          trial, it really doesn't matter, as I've

 8          said, how many people or who has knowledge of

 9          those.

10               MR. HUNT:  One of the things that they

11          say in these interrogatory responses is that

12          Bruno DiGiulian was the subsequent

13          transferee, in Interrogatory No. 5.  He was

14          not.  That's a legal argument.  So I want to

15          make it clear that they're not withholding

16          information relating to Mr. DiGiulian on the

17          basis that he's thought to be a subsequent

18          transferee in the defendants' mind.

19               THE ARBITRATOR:  Well, they're telling

20          you Bruno got the money except --

21               MS. CHAITMAN:  He got it as a

22          subsequent -- because this was an IRA

23          account.  So there was a custodian and this

24          is a legal argument.

25               THE ARBITRATOR:  Right.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 117

     1              MS. CHAITMAN:  It's --

     2              MR. HUNT:  So they need to, I think,

     3         identify who, in their mind, received the

     4         initial transfer.

     5              MS. CHAITMAN:  It says from Fiserv.

     6              MR. HUNT:  Where does it say that?

     7              MS. CHAITMAN:  "The account holder,

     8         Bruno L. DiGiulian, was the subsequent

     9         transferee from Fiserv of each transfer,

    10         except for withdrawals needed to pay

    11         applicable taxes."

    12              MR. HUNT:  So I think any information

    13         about communications between Fiserv and

    14         DiGiulian are irrelevant because DiGiulian is

    15         sued as the initial transferee here.

    16              THE ARBITRATOR:  Well, except this is

    17         only asking -- this is an interrogatory, not

    18         a document request.  And I suppose she hasn't

    19         complied with the local rule.  I'm not even

    20         sure if it's applicable in bankruptcy court,

    21         which makes "identify" a term of art, but

    22         unless you don't know who Fiserv is, it seems

    23         to me she's adequately answered this.

    24              MR. HUNT:  Okay.

    25              THE ARBITRATOR:  She may be wrong as a

Page 118

```
 1          matter of law or she may be right as a matter

 2          of law, but I think she's made it clear what

 3          the flow of the money was.

 4               MR. HUNT:  So just go to Interrogatory

 5          No. 9 where we ask them to identify

 6          communications about disagreements.  And this

 7          is 9 and 10.  She says she has no personal

 8          knowledge, but she believes such instances

 9          occurred.

10               THE ARBITRATOR:  Again, it's not a

11          document request.

12               MR. HUNT:  It's just -- if she

13          believes such instances occurred, then what's

14          the basis of that belief?

15               THE ARBITRATOR:  Well, if you want to

16          pursue this, I suppose you could -- maybe

17          she's one of the people -- I think she is --

18               MS. CHAITMAN:  Yes.

19               THE ARBITRATOR:  -- for the motion for

20          a protective order, but absent that, you

21          could depose her about whether she has any --

22               MR. HUNT:  As long as we have the

23          right to depose her, that's fine.  We can

24          leave it that way.

25               MS. CHAITMAN:  Well, we've asked
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

                                                        Page 119

1       for --

2               THE ARBITRATOR:  We'll deal with that

3       down the road.  For the moment, I'm not going

4       to worry about that.

5               MR. HUNT:  Not going to worry about

6       what?

7               THE ARBITRATOR:  The however she

8       believes such instances occurred.  She hasn't

9       identified any such instances, so the fact

10      that her Ouija board told her that there were

11      such instances does not mean that there's

12      more detail for her to give you.

13              MR. HUNT:  I think the Interrogatory

14      No. 11 -- I think you've ruled that we get

15      those forms and everything, so I think we're

16      fine.

17              THE ARBITRATOR:  Yes.

18              MR. HUNT:  Interrogatory No. 12 I

19      think is obviated by the fact that they've

20      stipulated to everything in --

21              THE ARBITRATOR:  In any case --

22              MR. HUNT:  -- Exhibit B.

23              THE ARBITRATOR:  We've gone through

24      this already.

25              In any case where Ms. Chaitman enters

Trustees Motion to Compel Discovery                     Arbitration 12/13/2016

Page 120

 1          into the stipulation we've been discussing,

 2          the defense that defendants' liability was

 3          fraudulently calculated, which is the 20th

 4          affirmative defense, goes out the window.

 5                 MR. HUNT:  And also the 27th

 6          affirmative defense; right?  The next one

 7          down.

 8                 THE ARBITRATOR:  Yes.

 9                 MR. HUNT:  Okay.  They have an

10          affirmative defense in Interrogatory No. 14

11          about the withdrawals were legally compelled

12          by state and federal securities laws.  And

13          they say, see Interrogatory No. 11.  Which

14          will be based upon the responding party's

15          testimony.  So I guess as long as we get to

16          depose her, we can wait and see what her

17          testimony was.

18                 THE ARBITRATOR:  Whether you do or

19          don't, and I'm not sure where I read it, but

20          in IRA accounts, for people who are beyond 70

21          1/2, whatever that magic time period is,

22          Ms. Chaitman is saying they had to take the

23          money out.

24                 That's all you're saying.

25                 MS. CHAITMAN:  That's all I'm saying.

                                                          Page 121

 1                    MR. HUNT:  Then she can answer the
 2           interrogatory to explain to us what the
 3           reason is rather than just saying --
 4                    MS. CHAITMAN:  Well, I'm saying it's
 5           legally compelled under the --
 6                    THE ARBITRATOR:  Yeah, but maybe -- I
 7           think it's a fair point.
 8                    MR. HUNT:  We're guessing at what
 9           she's saying at this point.
10                    THE ARBITRATOR:  Hang on a minute.
11                    You're not saying what I just said.
12           And to the extent that what I just said is
13           the accurate answer, I think you should
14           modify each of these answers, where
15           applicable, to say, whatever the right
16           verbiage is, that sometime beyond 70 1/2,
17           because it was an IRA account, the money has
18           to be taken out in installments.
19                    That's the factual basis; right?
20                    MS. CHAITMAN:  Right.
21                    Can I do this in one document instead
22           of in 92 documents?
23                    THE ARBITRATOR:  I'm inclined to say
24           yes.
25                    MS. CHAITMAN:  Okay.

Page 122

 1                 MR. HUNT:  Okay.  So that's all I had

 2        on the interrogatories.

 3                 THE ARBITRATOR:  Okay.

 4                 MR. HUNT:  You told us we'd start

 5        getting repetitive.  You were right.

 6                 THE ARBITRATOR:  Benjamin, is there

 7        anything --

 8                 MR. HUNT:  We have document requests

 9        on DiGiulian, and I was going to suggest that

10        maybe we take another break and let us go

11        through that and see if we can streamline

12        that.  And also take a look at Benjamin to

13        see if we can streamline it as well.

14                 THE ARBITRATOR:  Sure.

15                 (Recess from the record.)

16                 THE ARBITRATOR:  What's next?

17                 MR. HUNT:  We left off with I think --

18        correct me if I'm wrong, I think we left off

19        with the DiGiulian request for production; is

20        that right?  The document request, yes,

21        that's where we left off.

22                 So just two points on that, and then I

23        think we can move on.

24                 I want to make sure that no documents

25        are being withheld based on the presumption

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

```
 1            that Bruno would be a subsequent transferee.

 2            Because he sued as an initial transferee.  So

 3            can the defendants make that representation?

 4                 MS. CHAITMAN:  That no -- no

 5            documents -- what --

 6                 MR. HUNT:  Are being withheld based on

 7            the presumption that Bruno DiGiulian was a

 8            subsequent transferee.

 9                 MS. CHAITMAN:  Yes.  We haven't

10            withheld documents based on that.

11                 MR. HUNT:  So as long as your Honor's

12            order applies to this case, I didn't see

13            anything different in there that led me to

14            believe we needed to go over the document

15            requests with any specificity.

16                 Looking at the next case, which was

17            the Benjamin case --

18                 THE ARBITRATOR:  Right.

19                 MR. HUNT:  -- just to confirm, the

20            defendants have stipulated to the accuracy of

21            Columns 1 through 5 on Exhibit B in Benjamin;

22            correct?

23                 THE ARBITRATOR:  Correct?

24                 MS. CHAITMAN:  Yeah, we've said that

25            several times.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 124

1              MR. HUNT:  So based on that, I didn't

2         see -- and the rest of the order would apply

3         to this one, I didn't see anything different

4         here that we needed to talk about.

5              THE ARBITRATOR:  Great.  So we're done

6         with the trustee's motion; correct?

7              MR. HUNT:  Yes, sir.

8              THE ARBITRATOR:  Good.

9              MS. CHAITMAN:  So would you like me to

10        start on our motion to compel?

11             THE ARBITRATOR:  Sure.

12             MR. HUNT:  Is that on the Wilenitz

13        case?

14             MS. CHAITMAN:  I think it's easier to

15        deal with the document demand that we served

16        on all the other cases.

17             MS. CARLISLE:  I request we give Ted a

18        minute because he's handling Wilenitz so that

19        he can be here -- physically here to hear

20        what you have to say.

21             THE ARBITRATOR:  We can do the motion

22        for a protective order.

23             MS. CHAITMAN:  Okay.  Let's do that.

24             MR. HUNT:  That's fine.

25             MS. CHAITMAN:  Long as you don't need

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                              Page 125

1        Ted for that.

2              MR. HUNT:  What's the other one you're

3        thinking about?

4              MS. CHAITMAN:  We served

5        interrogatories -- excuse me -- yes --

6              MR. HUNT:  That must be in the

7        Wilenitz case.

8              MS. CHAITMAN:  No, this is not.  We

9        served in Wilenitz.  Then we --

10             MS. CARLISLE:  Well, you served in --

11       no, you said --

12             MR. HUNT:  Just -- that's Ted's deal;

13       right?

14             MS. CARLISLE:  Sorry.  Wilenitz is

15       Ted's deal, yes.

16             MR. HUNT:  I don't know what this is

17       that she's got in front of us.

18             MS. CHAITMAN:  We served document

19       demands and interrogatories in one document,

20       and we served it in about 60 cases.  And then

21       we moved to compel -- you responded and we

22       moved to compel.  And then that was assigned

23       to Judge Maas.

24             MS. CARLISLE:  The dispute was

25       assigned to Judge Maas.  As I understood it,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                          Page 126

1           it was only the Wilenitz -- it was only

2           assigned to Judge Maas in the Wilenitz case,

3           not in the other -- I apologize.  I don't

4           know how many cases those were brought in.

5                   MS. CHAITMAN:  No, we agreed to have

6           everything that was before Judge Bernstein

7           assigned to Judge Maas.

8                   MR. HUNT:  Do you know what she's

9           talking about?

10                  THE ARBITRATOR:  No.

11                  MS. CARLISLE:  Wilenitz.

12                  MR. HUNT:  Let's do the motion to

13          quash and then figure out what's next.

14                  THE ARBITRATOR:  Off the record.

15                  (Discussion off the record.)

16                  MS. CHAITMAN:  So if I could start --

17          we made a motion to compel responses to our

18          interrogatories and to compel the trustee to

19          produce documents.

20                  THE ARBITRATOR:  In --

21                  MS. CHAITMAN:  It's defendants listed

22          on Exhibit A to first set of requests.  It's

23          this one (indicating).

24                  MR. JACOBS:  Your Honor, we had a

25          hearing with Judge Bernstein on this issue

Page 127

1          where Judge Bernstein explicitly said that

2          Ms. Chaitman's motion could go forward on

3          Wilenitz only, even though she attempted to

4          bring it across all --

5               THE ARBITRATOR:  That's true, but he

6          also said that the rulings would be of

7          general application.  Then he made tentative

8          rulings.

9               MR. JACOBS:  Right.  And that's

10         consistent with, I believe, the position we

11         articulated earlier, which is that, in cases

12         with identical factual or legal

13         circumstances, we will apply those rulings.

14         And we are cross-moving for a protective

15         order prohibiting this discovery in this

16         case.  So if we obtain one, we would like

17         that to apply in other cases as well.

18              But I think as you'll see when we get

19         into the argument, there are some

20         case-specific issues that might dictate

21         results that might not happen the same way in

22         other cases on certain requests.

23              THE ARBITRATOR:  Does it make sense to

24         just ignore those for the moment, deal with

25         Wilenitz and then discuss how it applies

Page 128

```
1        potentially --

2                MR. JACOBS:  That's exactly how we

3        would like to move forward, is to deal with

4        Wilenitz.  Because that's the motion in the

5        case currently before us today, and we can

6        talk afterwards about how those rulings may

7        apply in other contexts.

8                THE ARBITRATOR:  Does that work with

9        you, Ms. Chaitman?

10               MS. CHAITMAN:  Do we have the Wilenitz

11       responses to discovery?  Do you have those?

12               MR. JACOBS:  Let me look.

13               MS. CHAITMAN:  Because I have the ones

14       you responded to with the defendants --

15               MR. JACOBS:  Right.

16               MS. CHAITMAN:  -- and this is what I

17       had submitted to Judge Maas.

18               MR. JACOBS:  Right.  So that's what's

19       complicated, is that there was an original

20       set in Wilenitz.  Right.  And we had a

21       hearing before the court.  The judge

22       authorized the motion and then you served a

23       nearly identical, but slightly revised set

24       across all of your cases --

25               MS. CHAITMAN:  Right, because I took
```

Page 129

1          out the Picard compensation.  That's the only

2          change which I recall.

3               MR. JACOBS:  There are two requests

4          that are new --

5               THE ARBITRATOR:  Yes, you substituted

6          two requests for the --

7               MS. CHAITMAN:  Do you have a problem

8          in raising those?

9               MR. JACOBS:  No, we'll -- we're

10          prepared to proceed on your second set of 18

11          requests, which is the revised version, if

12          that's amenable to you.

13               MS. CHAITMAN:  So do you have --

14               THE ARBITRATOR:  Yes, I think we're

15          all on the same page.

16               MS. CHAITMAN:  All right.  Great.

17               So this is what the caption looks

18          like.  Are you --

19               THE ARBITRATOR:  You're just trying to

20          get me to the request.  I have -- let's see.

21          I actually have it in slightly different

22          form.  And I know that there's a substitution

23          for two of the requests, but I think it --

24          I'll be able to follow.

25               MS. CHAITMAN:  Okay.  So I'm turning

                                                        Page 130

 1        to page 6, which is our first document

 2        request.  Wilenitz discovery demand.

 3              THE ARBITRATOR:  List every employee?

 4              MS. CHAITMAN:  Yes.

 5              "List the name and address of every

 6        former BLMIS employee with whom you spoke

 7        about the meaning of entries on the customer

 8        statements and state the substance of what

 9        you questioned each person about and what

10        that person told you."

11              Then "Produce all documents you

12        reviewed with such employee and all documents

13        indicating what each person said."

14              So the --

15              THE ARBITRATOR:  And they gave you --

16        I'm not sure they gave it to you specifically

17        in Wilenitz, but -- I think they did, but

18        they gave you an exhibit which relates

19        apparently to 2008 only and had been filed in

20        the Dusek case that basically gave the

21        identifying information for -- it looks like

22        everybody that was on the payroll --

23              MR. JACOBS:  Right.

24              THE ARBITRATOR:  -- in 2008, but

25        didn't respond to anything else --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 131

1            MS. CHAITMAN:  Right.

2            THE ARBITRATOR:  -- as to your

3       request.

4            MS. CHAITMAN:  Right.

5            MR. JACOBS:  The Dusek response in the

6       list you're referring to I believe we

7       produced in connection with a later request,

8       not number 1.

9            THE ARBITRATOR:  Oh, okay.

10           MR. JACOBS:  That was a different

11      request asking for the identification of

12      employees by function at BLMIS.

13           THE ARBITRATOR:  But wouldn't it, at

14      least for 2008, respond to the first part of

15      Request No. 1, list -- oh, no.

16           MS. CHAITMAN:  With whom you spoke.

17           THE ARBITRATOR:  Okay.

18           MR. JACOBS:  The objection -- your

19      Honor, if I may, our objection to Request

20      No. 1 is that it is on its face asking for

21      the trustee's work product.  It's asking for

22      us to identify the list of employees that we

23      may have spoken to in connection with our

24      investigation as to any facet of the

25      trustee's responses and, I'll just add,

Page 132

1            duties and responsibilities with respect to

2            his role in liquidating the estate and in

3            recovering funds for the customer fund.

4                 That information -- that list, in and

5            of itself, not to mention what is requested

6            after the identification, which is the actual

7            notes of those interviews, is protected work

8            product under Taylor v. Hickman.  It falls

9            squarely within the work-product doctrine.

10           It's the trustee's mental impression in

11           preparation for litigation as to his strategy

12           in discerning information and his mental

13           impressions about how he may use that.

14                So we object to this request in its

15           entirety.  It's prima facia, outside the

16           scope of what's discoverable in this

17           instance.

18                MS. CHAITMAN:  My answer to that,

19           Judge, is that, under the Securities Investor

20           Protection Act, the trustee has an

21           affirmative obligation to investigate the

22           debtor and report to the creditor body and to

23           the bankruptcy court what his findings are.

24                And we do not have access to this

25           information.  And it's essential for us in

Page 133

1          terms of formulating some of our defenses.

2          And that's why I think we're entitled to this

3          information.

4               THE ARBITRATOR:  Let me ask a

5          question, which is, are there any documents

6          that have been shown to former Madoff

7          employees that have not been produced in the

8          litigation?

9               MR. JACOBS:  I don't know that,

10         sitting here today, I can answer that

11         question, your Honor, but I think that --

12              THE ARBITRATOR:  I suppose you could

13         have shown a particular employee --

14              MR. JACOBS:  How to --

15              THE ARBITRATOR:  -- Mr. Benjamin's

16         account records, but not to have produced

17         them in Mr. Wilenitz's case.

18              MR. JACOBS:  Right.

19              THE ARBITRATOR:  So excluding that.

20              MR. JACOBS:  Right.  So I think the

21         starting point of this discussion has to be

22         Rule 26 and the fact that what is

23         discoverable in this case, in Wilenitz, must

24         be both relevant to the claims in this case

25         and proportionate, most importantly, to the

Page 134

1          needs of the parties in discovery.  And there

2          are several factors enumerated in the rule as

3          to how to determine proportionality.

4               So it is possible we showed a document

5          to an employee that has nothing to do with

6          any of the claims or defenses in this case,

7          in which case we have no obligation to

8          produce it or make it available in any form.

9          I don't think that's the case.

10              But that being said, as I'm sure you

11         read in our papers and we'll be discussing in

12         connection with other requests, we have made

13         an unprecedented amount of the trustee's

14         books and records available to all

15         defendants, including the defendants here,

16         specifically all of the over 4 million

17         records that we've made available through

18         Electronic Data Room 1 in a very carefully

19         curated, organized fashion.  And those

20         documents touch upon all aspects of the

21         operations and financials of the BLMIS.

22              So I don't think it's likely that we

23         can't -- to answer your question explicitly,

24         I can't, sitting here today, represent that

25         there was no document that we've shown any

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 135

1           employee on any topic that hasn't been put in

2           that data room or otherwise produced, but

3           it's highly, highly unlikely.

4                The trustee has not engaged in any

5           hide-the-ball efforts here.  We have spent

6           years working to find solutions to very

7           complex discovery issues given the volume of

8           data we have that we're responsible for.  And

9           our goal is to make it as available and to be

10          as transparent to all litigants to the

11          fullest extent possible.  So that's what

12          we've done with e-Data Room 1.

13               And we also have undertaken

14          painstaking efforts to provide the defendants

15          with the full universe of all documents we

16          believe that are relevant to the claims and

17          defenses in this case from that data set.

18               So all of that said, I still don't

19          think that there's any proportionate

20          articulated defensible reason why the

21          defendant should be entitled to our

22          investigatory mental impressions and work

23          product in connection with any interviews of

24          BMLIS employees we did.

25               Now, certainly we would give them

Page 136

1           transfers if we had taken a deposition.  They

2           are taking their own depositions of

3           Mr. Madoff and potentially others.  And that

4           is all fair game for the record, but this

5           request is specifically calling for work

6           product.  This is not calling for -- even our

7           selection -- I would posit that potentially

8           even our selection of documents that we chose

9           to show a particular employee is a

10          compilation that's protected work product.

11          That doesn't mean we wouldn't produce them if

12          they were responsive and nonobjectionable to

13          other valid requests within the scope of

14          relevance, but the defendants shouldn't be

15          entitled to the disclosure of that work

16          product in connection with this request.

17               MS. CHAITMAN:  Let me just say, Ted

18          has raised the issue of -- two issues that I

19          think are important for you to rule on.

20               One is that the trustee has

21          consistently taken the position that the

22          discovery should be limited to what is

23          appropriate for a particular case.  And, in

24          fact, the argument has been made that in

25          so-and-so's case, the trustee's only suing

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

1          for $200,000, therefore, the trustee should

2          not have to produce a lot of documents, it's

3          only a $200,000 case.

4               We view these cases as one in the

5          sense that I represent 92 defendants in 92

6          cases, several hundred people all together,

7          and that all of this discovery is relevant

8          for all of the cases.

9               THE ARBITRATOR:  I'm not sure I read

10         the trustee's proportionality argument that

11         way, but I think the fundamental problem here

12         is that the request calls for classic work

13         product.  Work product is not absolute except

14         as to so-called core work product.

15               But just on the face of it, and in

16         response to many of these requests, I think I

17         agree with what I read Judge Bernstein's

18         off-the-cuff rulings were or opinions were,

19         but I'm not sure how you get around the rule

20         protecting work product here.

21               MS. CHAITMAN:  Well, I think that

22         there is.

23               THE ARBITRATOR:  Other than your SIPA

24         argument.

25               MS. CHAITMAN:  Right.  So, number 1,

Page 138

1      the trustee has an affirmative duty to do
2      this, and we contend that he has failed in
3      his duty.
4          The second thing is that there's a
5      substantial need here because we don't have
6      the ability to get this information from any
7      other source.
8          And going to the e-data room, since
9      Ted mentioned that, honestly, Judge, the
10     e-data room is a farce.  I made the point in
11     my papers that it's at least six weeks ago
12     that I asked Ted and Marie to tell me
13     whether, in the e-data room, there are any
14     trading records dating back from the 1980s.
15     I've repeated that request in writing.  I've
16     never gotten a response.
17         Now, you know, the trustee wants to
18     take a position he's just an average
19     litigant.  He's not an average litigant.
20     He's got an infinite funding source.  He's up
21     against people who have been financially
22     devastated and emotionally devastated.
23         And we have a right to at least a
24     level playing field.  We've searched the
25     e-data room.  I'm going to ask Greg, who

Page 139

 1          spent a lot of time on the e-data room, to

 2          tell you how it's organized, because it's a

 3          joke.

 4               But the fact of the matter is that we

 5          have not been able to find a single trading

 6          record from the 1980s.  And this goes to the

 7          issue of the trustee's contention that there

 8          were no trades.

 9               Now, if there are trading records or

10          any documents reflecting trading records --

11          they could be FINRA reports.  They could be

12          audits that were done by FINRA.  They could

13          be the Depository Trust Company

14          communications.  There are all different

15          categories of documents.

16               We've had people spend time in the

17          e-data room.  They can't find any of these

18          documents, and I can't even get a response

19          from the trustee's counsel on it.

20               THE ARBITRATOR:  I guess one potential

21          issue is -- I read all the materials that

22          relate to e-Data Room 1.  And one thing I

23          carried away from that is that not all of the

24          materials that were at Madoff either are in

25          e-Data Room 1 or fall within the category of

Page 140

1        core account documents that were turned over

2        to whoever the account related to.

3                So that there might be trading records

4        that relate to, for example, the

5        market-making side of the business that are

6        not in e-Data Room 1.

7                Do I understand that correctly?

8                MR. JACOBS:  Not with that particular

9        example.  But the first part of your

10       question, are all BLMIS's books and records

11       in e-Data Room 1, and the answer is

12       absolutely not.  The e-Data Room 1 could

13       potentially have as many as -- I don't even

14       want to guess, your Honor.

15               It's not practical, reasonable,

16       feasible or desirable from any perspective of

17       any litigant or any of the Federal Rules of

18       Civil Procedure that govern discovery in

19       these actions to undertake an effort to

20       achieve that.

21               What we have done under the -- under

22       the relevant rules that we are subject to,

23       which is the Federal Rules of Civil

24       Procedure -- and I respectfully disagree with

25       Ms. Chaitman.  There's nothing in the SIPA

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 141

 1          statute that enlarges or expands the

 2          trustee's discovery obligations under the

 3          rules, nor is there anything in the statute

 4          that overrides our claim to work product

 5          protection.

 6               So that argument is completely a red

 7          herring, non sequitur.  The over 4 million

 8          records in e-Data Room 1, as I mentioned,

 9          have been very carefully curated to contain,

10          at a minimum, everything that's feasible.

11               And there are some things that aren't

12          amenable to be put in the data room.  And

13          those have been disclosed and are made

14          available by other means, but it contains the

15          bulk of what was considered by our experts

16          who, under relevant court orders, are

17          providing summary reports of the fraud.

18               And the data room was originally

19          conceived as a mechanism to permit rapid

20          disclosure or make available for potential

21          production and transparency all of the

22          evidence that our experts relied upon in

23          determining their conclusions.

24               So that particular order is the

25          November -- I might be getting the date

Page 142

 1          slightly off.  I think it's the November 10,

 2          2011, litigation procedures order.

 3               It says -- Judge Lifland entered an

 4          order stating that, given the enormous volume

 5          of data at issue potentially in this

 6          liquidation, the trustee could provide, in

 7          the form of a summary expert report, his

 8          conclusions as to the salient relevant

 9          issues, one of those being the fraud, and

10          make -- otherwise make available the

11          underlying evidence to all litigants in the

12          data room.

13               That's exactly what we've done.

14               THE ARBITRATOR:  Let me cut you short.

15               As to Request No. 1, I understand

16          Ms. Chaitman's SIPA argument, but Judge

17          Bernstein concluded that, in this

18          circumstance, the trustee is no different

19          than the ordinary bankruptcy trustee who does

20          not have enhanced obligations.  And even if

21          he does, it seems to me, as I said at the

22          outset, this is classic work product.

23               There's a distinction between making

24          available all of the documents in reasonably

25          accessible form and saying who you

Page 143

1          interviewed and essentially what you

2          considered important.

3               So to the extent there's a motion to

4          compel with respect to Request No. 1, I'm

5          going to deny it.

6               Let me also -- because it's going to

7          come up in a number of these areas.  There's

8          the overarching claim of privilege waiver,

9          Ms. Chaitman.

10               And it seems to me that, generally

11          speaking, judges do not require, and

12          typically parties agree not to require that

13          each side, from the date that a litigation

14          commences or people understand that the suit

15          is about to be filed, that everything be

16          logged on a privilege log.

17               I would imagine that you have not

18          logged and would not want to log all of your

19          communications, to the extent they were

20          written, with your clients from December 2008

21          forward.

22               So I'm not going to find that there

23          was a privilege waiver by not logging post

24          December 11, 2008, documents.

25               Why don't we go on from Request No. 1,

Page 144

 1        then.

 2              MS. CHAITMAN:  Can we -- since Ted

 3        mentioned the trading records, can we resolve

 4        the trading records?  Because, again, what

 5        Ted is saying is that the trustee selected

 6        what would be put in the e-data room, and

 7        we've never gotten an answer.

 8              THE ARBITRATOR:  I saw you sent at

 9        least two e-mails.

10              MR. JACOBS:  Yes.

11              THE ARBITRATOR:  And I think there

12        should be -- notwithstanding the fact that,

13        from the trustee's perspective, there's this

14        extensive guide to what is in the data room,

15        I think it has to be responsiveness to

16        reasonable requests.  And this is sort of

17        binary.  It's yes or no.

18              MR. JACOBS:  I can answer this

19        question I think rather easily.

20              So first and foremost, all of the

21        trading records we have currently identified

22        are in the data room.  They're in the data

23        section under DTC.

24              Now, Ms. Chaitman served her own

25        subpoena on DTC for those exact records.  We

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 145

1          obtained them in part from a Rule 2004

2          subpoena and part from what we restored on

3          the BLMIS DTC terminal, in part from

4          documents we got from the government.

5               We compiled all of that.  It is all

6          available in a specifically labeled folder

7          called DTC.  There are also folders in that

8          exact same section that are labeled "FINRA."

9          All of the categories of documents you're

10         looking for, as we've written you in letters

11         and attempted to explain to you many times in

12         the past, are actually in their own folders

13         in the data room so they can be -- they are

14         accessible that way.

15              Now, with respect to earlier periods

16         of the fraud, that is an allegation and an

17         issue that you recently raised in the PW

18         context pursuant to Mr. Madoff's testimony.

19         Even though it was outside the scope of the

20         order allowing that testimony, the judge has

21         now allowed a second deposition on that

22         subject.

23              We will look for and have been looking

24         for stuff -- any additional stock trading

25         records as to earlier periods of time in

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

Page 146

1          addition to what is currently in the data

2          room.  To the extent we find them or restore

3          them or can obtain them from DTC or any other

4          source, we will produce them to you and we

5          will put them in the data room.  Absolutely.

6               MS. CHAITMAN:  But see --

7               THE ARBITRATOR:  Let me rephrase that

8          for a second and see whether it's correct.

9               That to date, except to the extent

10         that they may be in DTC records or FINRA

11         records in that data room, you haven't found

12         any other records?

13              MR. JACOBS:  We're currently looking.

14         Because it's an active issue that

15         Ms. Chaitman has raised in the PW context in

16         discovery.  There's a deposition scheduled

17         for December 20th where Mr. Madoff will give

18         additional testimony as to those issues.

19              And clearly we are going to want to

20         respond, if we can to meet with the debtor's

21         books and records that are available.  So we

22         are actively looking for that material.

23              THE ARBITRATOR:  December 20th is --

24              MS. CHAITMAN:  Next Tuesday.

25              THE ARBITRATOR:  When are you going to

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 147

1        get back to --

2                Off the record.

3                (Discussion off the record.)

4                THE ARBITRATOR:  Back on the record.

5                So when are you going to respond to

6        Ms. Chaitman's request in that regard since

7        the deposition's next Tuesday?

8                MR. JACOBS:  Well, anything that we

9        would use in the deposition we will produce

10       prior to the deposition, if there are items.

11               THE ARBITRATOR:  But it's --

12               MS. CHAITMAN:  You see what they're

13       doing, Judge.  First of all, I've asked for

14       this for two months.

15               And the second is, they're going to

16       give me what they want to use and not what

17       they have, and this is just not discovery.

18               MR. JACOBS:  We've given Ms. Chaitman

19       everything we have, and that's in the data

20       room.  So there's no dispute about -- there's

21       nothing to compel.

22               THE ARBITRATOR:  I thought I heard you

23       say earlier that you're continuing to look

24       for other documents.

25               MR. JACOBS:  That's right.  And my

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 148

```
 1          ability to answer as to a date certain for

 2          production will depend upon our success in

 3          identifying that, if any.  And I don't know

 4          the answer to that.

 5               There's -- as we disclosed in

 6          discovery responses, BLMIS maintained a

 7          warehouse.  There are multiple pieces of

 8          media in that warehouse.  There are hard copy

 9          documents.  Much of it has been scanned,

10          restored and made available in the data room,

11          but there might be -- there might be material

12          that's on a tape or a piece of media

13          somewhere that we haven't looked at yet, and

14          that process takes a long time.

15               But before -- we shouldn't be required

16          to have to look at every piece.  There has to

17          be an articulated -- there should at a

18          minimum be an articulated basis to the need

19          for it under Rule 26's proportionality

20          standards.

21               THE ARBITRATOR:  Well, Mr. Madoff says

22          that he was running, even on the investment

23          advisory side, a legitimate business with

24          these convertible securities up until

25          sometime in the '90s; correct?
```

Page 149

1           MR. JACOBS:  When you have an

2      opportunity to read Mr. Dubinski's report,

3      you'll see that our expert disagrees --

4           THE ARBITRATOR:  Okay.

5           MR. JACOBS:  -- with that self-serving

6      testimony.  And, furthermore, that it's not

7      supported by any of the voluminous effort

8      over long periods of time that he did

9      consider and that has been made available.

10          THE ARBITRATOR:  Okay.  But you're

11     saying that you are attempting to find --

12     haven't phrase it this way, but you're saying

13     you're attempting to find records which, if

14     reviewed, potentially could support

15     Mr. Madoff's view of the world; is that

16     correct?

17          MR. JACOBS:  Yes.  We are -- well,

18     not -- it's not specifically how I would

19     phrase it, but we are looking for --

20     Ms. Chaitman has requested actual stock

21     trading activity and records demonstrating

22     actual trading stock activity, whether it be

23     in House 5 or elsewhere, for those earlier

24     periods of time, which Mr. Madoff's testimony

25     has now opened the door to.  So whether it

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

                                                        Page 150

 1           refutes or supports that testimony, we will

 2           produce it if we can identify it.

 3                   THE ARBITRATOR:  And I think as a

 4           practical matter, unless there's some reason

 5           why this can't occur, should that be made

 6           available, and it doesn't sound like under

 7           any conceivable scenario it could occur

 8           before next Tuesday, the possibility exists

 9           that Mr. Madoff may be deposed a third time.

10                   MR. JACOBS:  That --

11                   MS. CHAITMAN:  Judge, can I point

12           something out?

13                   THE ARBITRATOR:  Yeah.

14                   MS. CHAITMAN:  DiPascali pled in 2010,

15           I believe.  Madoff pled in 2009.  They

16           both -- and you'll see the plea because they

17           both said the same thing.  The first words

18           out of DiPascali's mouth were "In the early

19           1990s, we started a fraud."  So this is not a

20           new issue.

21                   And what Ted has really said to you,

22           in substance, is that they put in the e-data

23           room what supports their expert's report,

24           which is --

25                   MR. JACOBS:  That's not true.

1          MS. CHAITMAN:  I didn't interrupt you

2     and I'd appreciate it if you don't interrupt

3     me.  I'd like to be able to finish.

4          MR. JACOBS:  Please finish.

5          MS. CHAITMAN:  So they have a world

6     view of the case, which they're entitled to,

7     possibly.  And they won't produce documents

8     that are inconsistent with that world view.

9          And this document request is dated

10    August 5, 2016.  So they've had more than

11    enough time to look for the documents; they

12    just don't want to produce them.

13         And what's going on here is that

14    they've sold a certain view of what happened

15    here.  And I don't believe it's accurate.

16    And they're doing everything they possibly

17    can to prevent the truth from coming out.

18         MR. JACOBS:  May I respond to that,

19    your Honor?

20         THE ARBITRATOR:  Before you --

21         MR. JACOBS:  It's so outrageous, I

22    can't leave it unresponded to.

23         THE ARBITRATOR:  Okay.  But in

24    addition to the documents that are in e-Data

25    Room 1, and I'm focusing on trading records,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 152

1           there's an inventory, I assume, that the

2           trustee prepared of the rest of the universe.

3                    MR. JACOBS:  In a sense.  We have --

4           we've endeavored to painstakingly track all

5           of the items that are in the warehouse that

6           we inherited from BLMIS.  But documents, your

7           Honor, may exist on microfiche, they may

8           exist on a piece of hard media, they may

9           exist on a floppy disk --

10                   MR. HUNT:  They may be in a box in a

11          warehouse --

12                   MR. JACOBS:  We don't have -- we don't

13          have documents that are readily accessible

14          and restored, that anyone to date that has

15          looked at, that haven't been made available

16          to our experts or to Ms. Chaitman.

17                   It is simply an outrageous statement

18          to assert that the trustee is cherry-picking

19          the evidence available to him and keeping

20          from the defendants items that may hurt, a

21          narrative that he constructed out of thin air

22          to suit some purpose.

23                   Our goal here is to recover funds for

24          the customer fund under the laws afforded to

25          the trustee for which he's tasked to do so.

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 153

1          Our objective is first and foremost to get it

2          correct.  We don't want to sue anyone who

3          doesn't owe us money.  We don't want to

4          recover a single dollar that isn't

5          appropriately recovered under the relevant

6          statutory framework.

7               Ms. Chaitman has all of the documents

8          that are readily available, have been

9          restored and have been considered, good or

10         bad, to the trustee's case currently.

11              Now, we may undertake additional

12         restorations.  I don't know.  I can't speak

13         definitively about that.  Ms. Chaitman is

14         actively litigating and challenging our

15         expert conclusion as to the earlier periods

16         of time.

17              We never intended to credit or rely

18         upon the testimony of Bernard Madoff,

19         frankly.  He committed the world's greatest

20         Ponzi scheme.  I don't think his testimony is

21         reliable or should be credited in any sense

22         or fashion.  However, the judge has allowed

23         it.

24              Now that we're going down that road,

25         we will endeavor to see if, on some floppy

Page 154

1         disk somewhere in a box in a warehouse, there

2         might be early stock trading records from

3         periods predating what we currently have.

4              So you know, all of the stock trading

5         records that we do have and we have made

6         available were obtained because we went out

7         in the world and subpoenaed them and

8         diligently and aggressively tried to find

9         them wherever they may exist.

10             Ms. Chaitman did too.  The DTC is

11        under a regulatory framework where it was, by

12        law, required to keep records for a certain

13        number of years.  That's why they had

14        documents back through 2002 which they

15        produced to us and we in turn produced to

16        Ms. Chaitman.

17             We also scoured, like I said, all of

18        the DTC terminal that was active and live by

19        BLMIS as of the time we took custody of it.

20        We restored all of that data.  We put it in

21        the data room.

22             We also subpoenaed the SEC.  We

23        cooperated -- they cooperated with us.  They

24        shared which us the fruits of their similar

25        investigation.

Trustees Motion to Compel Discovery                  Arbitration 12/13/2016

```
                                                    Page 155
   1            All of that material, wherever we
   2        could find it, good or bad, we've made
   3        available and we provided to our experts for
   4        consideration.
   5            THE ARBITRATOR:  Well --
   6            MR. JACOBS:  So that's the lay of the
   7        land today.
   8            As discovery unfolds in the PW matter
   9        and now that it is switched over to the
  10        adversary proceeding and we gear up for
  11        potential trial on the fraud, as Judge
  12        Bernstein has invited the parties to
  13        consider, if we can find and identify
  14        additional materials that are responsive to
  15        this issue, we will make it available
  16        regardless of whether it hurts or helps us
  17        and, as necessary, our experts -- we'll
  18        provide it to our experts as well for them to
  19        appropriately supplement any relevant report
  20        that's impacted.
  21            THE ARBITRATOR:  Having dealt with DTC
  22        records in the past and because of their
  23        continuous net settlement rules, my take on
  24        this is that the DTC records, in terms of
  25        what Ms. Chaitman's trying to prove and
```

Page 156

1          you're trying to disprove, will probably end

2          up being gibberish, but --

3                    MS. CHAITMAN:  They only go back to

4          2002.

5                    THE ARBITRATOR:  Okay.  But even if

6          you had them back further, there are a lot of

7          complicating factors.  I had that in another

8          case.  But --

9                    MR. JACOBS:  That issue was precedent

10         of later requests where Ms. Chaitman has

11         asked us to match individual trades for

12         customers with House 5 trading activity.  And

13         the information doesn't work that way.

14                   THE ARBITRATOR:  But let me -- I

15         recognize that we're dealing with volume

16         that's far beyond anything certainly I've

17         dealt with and probably anybody in the room

18         has dealt with previously.

19                   Is there an inventory of files that

20         can be produced?  I suppose that's work

21         product, but there's nothing particularly

22         secret about that.  It may be annotated in

23         which event I would suggest the unannotated

24         version of it be produced.

25                   But I do not want -- since it is going

Page 157

 1          to take you some time, as you said, to look

 2          for what may not even be there, but --

 3              MR. JACOBS:  Well, my objection to

 4          producing anything that may exist is exactly

 5          what you've identified, is that it's work

 6          product, but even before that, there has to

 7          be an articulated need for it that no other

 8          discovery from a different source can fill.

 9              I mean, it has to -- the cost and

10          burden of us having to make -- prepare that

11          in a way that it could be produced without

12          waiving work product in a producible form --

13          what purpose will it serve, I guess is the

14          question?  I mean, I just -- what is the

15          need?  What's the proportionality

16          consideration that would demand its

17          disclosure in the context of this or any

18          given request?

19              I can't in my head conceptualize --

20          after considering the effort that our team

21          and that I personally have been involved in

22          over the course of years and spending

23          millions of dollars to make all of this

24          information transparent and available in

25          every single case, on all of the case-wide

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 158

1            issues, whether it be fraud or insolvency,

2            which, arguably, isn't even -- the latter

3            isn't even an element in these claims, but

4            fraud certainly is.

5                 This is my answer to all of these

6            requests, is, how can any incremental step

7            further in light of everything that we've

8            already done -- how can that possibly be

9            proportionate to the needs of this case or

10           even all of Ms. Chaitman's cases taken as a

11           whole or even all the good-faith adversary

12           proceedings taken as a whole?  I mean,

13           there's nothing more for us that we can

14           disclose.

15                 THE ARBITRATOR:  Is it correct that

16           except for third-party records that may have

17           been subpoenaed, you and your team have not

18           encountered any pre 1990 records of actual

19           trading that relate to the investment

20           advisory customers?

21                 MR. JACOBS:  We have never -- I have

22           never personally and I don't know of any

23           record ever seen by anyone on our team that

24           shows actual stock trading for a House 17 or

25           an IA, investment advisory, customer, no.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 159

     1            MS. CHAITMAN:  But, Judge, that
     2       ignores the issue.  Because Madoff testified
     3       that there was no House 17 before 1992.  This
     4       is a fiction of Mr. Picard and his expert.
     5       It was all one unit.
     6            It was one company and he said all the
     7       trading in the investment advisory customer
     8       accounts was trading with Madoff.  In other
     9       words, he had -- he was doing trades equal to
    10       10 percent of the daily volume on the New
    11       York Stock Exchange.  So he had a huge
    12       inventory of trades -- of securities.
    13            He would transact trades with the IA
    14       customers.  So it's not -- it's not that
    15       you're looking for House 17 trades.  We
    16       want -- we want the records in the 1980s,
    17       before 1992, of all of the Madoff trades.
    18       And the trustee inherited those records, to
    19       the extent they exist.  And there's no other
    20       place we can get them.
    21            And they disprove -- just to
    22       understand the significance of this, if, in
    23       fact, both DiPascali and Madoff are telling
    24       the truth, then the trustee has to
    25       recalculate every single claim.  Because he

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 160

1           discredited claims, he disallowed claims on

2           the basis that there was no net equity

3           because he didn't recognize any trades going

4           back to the 1980s.  So --

5                THE ARBITRATOR:  Also, you would argue

6           then that the Ponzi presumption --

7                MS. CHAITMAN:  Of course.  You have

8           to --

9                THE ARBITRATOR:  -- applies.

10               MS. CHAITMAN:  -- yes.  So --

11               THE ARBITRATOR:  Let me modify my

12          question to Mr. Jacobs.

13               And if we take out House 5, House 17,

14          apart from the DTC and FINRA and other

15          third-party records that I gather are in the

16          e-data room, have you or, to your knowledge,

17          has your team found pre 1982 trading records?

18               MS. CHAITMAN:  1992.

19               THE ARBITRATOR:  1992.

20               MR. JACOBS:  Not that I can confirm or

21          know of.  We are looking.  And I'm not

22          directly involved with that effort, so it's

23          certainly information I can find out.  And

24          we're trying very hard to get it.

25               THE ARBITRATOR:  And understanding

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 161

1           that it's perhaps looking for a needle in a

2           haystack, it seems to me there's a need to

3           come up with an end date by which you'll

4           respond saying either you found something or

5           you haven't and, adding into that, the

6           understanding that even given the size of the

7           Madoff fraud as a whole, it would not be

8           sensible to restore every microfiche and look

9           through it, but there has to be a good-faith

10          effort to look.

11                  MR. JACOBS:  Right.  And we are

12          conducting that investigation right now.

13          We're absolutely conducting that

14          investigation in direct response to

15          Ms. Chaitman's request.

16                  THE ARBITRATOR:  But there has to be

17          some end date.

18                  MR. JACOBS:  My only -- my only

19          hesitation in providing one is that -- I'm

20          pretty confident that if there is anything

21          that we can find that contains these type of

22          records from an earlier period, it's going to

23          be on media that we're going to have a

24          challenge restoring.

25                  So it might be microfiche, microfilm,

Page 162

1           some type of backup tape that is for a

2           computer program or software or hardware that

3           doesn't exist any longer.

4               So we have to -- when we were dealing

5           with items like that, we have to send it out

6           to a vendor to see if they can restore it or

7           give us a quick peek to kind of try to give

8           us a sense if it would be fruitful for a

9           fuller restoration.  All of this costs a lot

10          of money, so we weigh the balance of -- all

11          of those factors have to be considered and I

12          think are fairly considered under

13          proportionality analysis.

14              But the bottom line, for the purposes

15          of your question, is it takes time.

16              THE ARBITRATOR:  Okay.  But let me

17          rephrase it and perhaps in terms of this

18          question:  How long will it take you to make

19          a good-faith effort to determine whether

20          there are such pre 1992 trading records not

21          previously produced?

22              Putting aside how long it will take to

23          produce them, but to determine whether there

24          are such records.

25              MR. JACOBS:  My answer is the same,

Page 163

1        your Honor, because I can't -- I mean, if I

2        send out a microfilm tomorrow, I don't know

3        how long that's going to take or what

4        information I might even -- it's really --

5        we're dealing with unchartered territory here

6        in terms of both discovery and e-discovery.

7        It's not as simple as me doing a search in a

8        database and being able to say, oh, I found

9        three things I can produce tomorrow, but --

10            THE ARBITRATOR:  There has to be, at

11       least for that second inquiry, some deadline,

12       even if it's adjusted, even if -- even if it

13       then requires a substantial effort down the

14       road having determined, by looking at one

15       microfiche, that there are potentially

16       records and then dealing with the fact that

17       there are a hundred thousand microfiches to

18       deal with.

19            There's got to be some end date so

20       Ms. Chaitman knows that the effort will not

21       end 12 years after the last Madoff case.

22            MR. JACOBS:  Right.  Well, I will have

23       to talk to almost literally an army of people

24       to get that information for you, including

25       with the core professionals, outside vendors

Page 164

1          and the team that's --

2                THE ARBITRATOR:  So suppose I say that

3          you give me a response to that second

4          question within a week?

5                MR. JACOBS:  I can endeavor to do

6          that, your Honor.  And at least within a

7          week's time, I can give you an update as to

8          why I can't -- to where the status is and why

9          I can't be more specific.

10               THE ARBITRATOR:  But understand that

11         I'm going to set some date, recognizing it

12         may have to be adjusted, but -- so that

13         there's some date, and also recognizing that

14         potentially there may be a third deposition

15         of Mr. Madoff that Ms. Chaitman takes if

16         there is such information.

17               MR. JACOBS:  Okay.  I understand.

18               THE ARBITRATOR:  I think that's the

19         best I can do for you, Ms. Chaitman.

20               MS. CHAITMAN:  I appreciate that.  And

21         I also think that we're entitled to a

22         description of all of the documents that the

23         trustee chose not to put in the e-data room.

24         Because I'm concerned that he put into the

25         e-data room the documents that support his

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 165

1        view of this case and did not put into the

2        e-data room documents that he did review

3        which are inconsistent with the positions

4        he's taken.

5             So I think that we're entitled to a

6        list.  There's a warehouse on Long Island in

7        such-and-such a town and it contains X and we

8        didn't put -- they must have all this.

9             THE ARBITRATOR:  Except I gather they

10       have it annotated in such a way that it's

11       work product --

12            MS. CHAITMAN:  Let them show it to

13       you.

14            THE ARBITRATOR:  And your assumption

15       is one that I'm not willing to buy into.  The

16       trustee and both sides and every litigant has

17       an ethical obligation.  And I assume that

18       even if you don't like the way in which the

19       trustee is going about -- is functioning,

20       including claw-back actions against people

21       who you view as victims, I have no basis to

22       assume that they're proceeding dishonestly.

23            In terms of me looking at the

24       inventory, it probably is almost as useless

25       as you looking at the inventory.  And I'm not

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 166

1          saying that disparagingly.  Because it's

2          going to be extraordinarily lengthy and

3          probably not terribly informative.  Because

4          if it were informative, Mr. Jacobs and his

5          colleagues could have said, oh, we found, you

6          know, this treasure trove of documents and

7          now the issue is how long it's going to take

8          to restore it.

9                    MR. JACOBS:  And, your Honor --

10                   THE ARBITRATOR:  I take it that you

11         can represent to me that there's nothing on

12         the face of the inventory that reflects

13         pre 1992 trading records that are not yet in

14         the e-data room.

15                   MR. JACOBS:  Absolutely not.

16                   THE ARBITRATOR:  You're agreeing with

17         me.

18                   MR. JACOBS:  Yes, there's nothing

19         there -- no, there's nothing of that nature.

20                   And, your Honor, the request that

21         Ms. Chaitman is making is absolutely -- for

22         you to order that would be absolutely

23         unprecedented.  And without a particularized

24         articulation of the need or what is missing

25         from the over 4 million, 4 million,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                          Page 167

1        records --

2               THE ARBITRATOR:  The short answer is

3        I'm not going to require that.  And I think

4        we've exhausted Request No. -- the discussion

5        of Request No. 1.

6               Is Request No. 2 next?

7               MS. CHAITMAN:  Yes.  Thank you.

8               We've asked for -- obviously one of

9        the major issues in the case is the

10       reliability of the records.  And we've asked

11       for the trustee to disclose every single

12       factual error he's found in the books and

13       records.  Because, again, that goes to the

14       reliability of the records.

15              We've been able to nail down some of

16       this information in the profit withdrawal

17       litigation where, in fact, the trustee's own

18       experts have conceded that there are all

19       kinds of inconsistencies in the records, but

20       outside the profit withdrawal litigation,

21       which we think we're entitled to the same

22       disclosures.

23              MR. JACOBS:  May I respond, your

24       Honor?

25              THE ARBITRATOR:  Please.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 168

1                  MR. JACOBS:  In the Wilenitz case

2          that's before us today, the defendants have

3          conceded that the cash activity for the

4          accounts that they opened in 2003 are

5          correct.  So from both a relevance and a

6          proportionality perspective, this request and

7          the one that follows, which is -- which is

8          similar, are completely outside the universe

9          of what could even remotely be, under

10         conjecture or speculation, possibly

11         considered relevant proportionate to the

12         needs of this case.

13                 Judge Bernstein has characterized the

14         adversary proceedings as strict liability

15         actions; you got the money or you didn't.

16         You got the money, you have to pay it back

17         because it belongs to somebody else, if the

18         trustee can prove that with the books and

19         records related to the specific account.

20                 The books and records of other

21         customers, beyond the accounts that we sued

22         upon in any given case, are not relevant on

23         that issue to these claims.

24                 THE ARBITRATOR:  Well, Wilenitz, which

25         we are pronouncing several different ways, is

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 169

1          a unique case because I guess it's --

2          Mrs. Wilenitz has that statement saying, I've

3          compared it to my records and they agree.

4                    MR. JACOBS:  Right.

5                    THE ARBITRATOR:  So I agree with you

6          as to Wilenitz, it's irrelevant, as Judge

7          Bernstein said.  But there are lots of

8          clients that Ms. Chaitman has.  And even

9          though formally the motion only deals with

10         Wilenitz, conceptually if the books and

11         records regarding deposits and withdrawals

12         are woefully inaccurate, that it seems to me

13         is relevant.

14                    MR. JACOBS:  And this --

15                    THE ARBITRATOR:  In part --

16                    MR. JACOBS:  In this particular case?

17                    THE ARBITRATOR:  Not in Wilenitz.  In

18         some other case.

19                    MR. JACOBS:  Right.

20                    THE ARBITRATOR:  In Case No. 3.

21                    But the profit withdrawal report and

22         hearing will, in part, deal with that; is

23         that correct?

24                    MS. CHAITMAN:  Only with respect to

25         the profit withdrawal issue, not with respect

Page 170

1         to other issues.

2               MR. JACOBS:  Right.

3               MS. CHAITMAN:  So the thing is that

4         the issue of -- I'm sure you've had

5         experience with this on business records

6         exception, can you admit records of a

7         fraudster?  Only if they have indicia of

8         reliability.

9               So this is what this interrogatory is

10        going to.  If there is evidence that the

11        records -- the whole set of records do not

12        carry those indicia of reliability, then

13        that's a reason that they shouldn't be

14        admitted.

15              MR. JACOBS:  Your Honor, you've just

16        seen in three cases just today Ms. Chaitman

17        has conceded the reliability as to the cash

18        activity of the account.  She's made no

19        showing that the books and records of the

20        debtor are not 100 percent reliable with

21        respect to cash activity in this case or any

22        other case.

23              On that basis, an order compelling the

24        trustee to conduct an investigation that is

25        essentially a wild goose chase looking for a

Page 171

1          needle in a haystack across every single

2          customer account that existed at any point in

3          time --

4                THE ARBITRATOR:  Well, but --

5                MR. JACOBS:  -- has no rational

6          bearing to the relevance of the claims and

7          defenses in this case.  The request is asking

8          for us to investigate every single customer

9          statement for all periods of time in every

10         single case.

11               THE ARBITRATOR:  I read it slightly

12         differently.  It's not in the present or

13         future tense; it's in the past tense.

14               It's "every error you found."  And

15         there's one person who said the records were

16         inaccurate as to reflecting two $25,000

17         withdrawals where the customer said it was

18         only one, and maybe that's right, maybe

19         that's wrong, and maybe you have or have not

20         investigated that to date.

21               MR. JACOBS:  Right.

22               THE ARBITRATOR:  And I recognize that

23         we're dealing with tens of thousands of

24         records.  But it's not requiring that you go

25         out and do that now; it's asking that you

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 172

1          identify those instances you found in the

2          past.

3               I'm not saying that that's not a

4          considerable task and potentially an unduly

5          burdensome task, but it's narrower than the

6          way you're reading it, to my mind.

7               MS. CHAITMAN:  And --

8               THE ARBITRATOR:  Let me --

9               MR. JACOBS:  What's the

10         articulation --

11              THE ARBITRATOR:  Let me put it in a

12         criminal context.  And if I'm using case law

13         that you're not familiar with, tell me and I

14         won't go down that road.

15              But if this were the Madoff criminal

16         case and you were the prosecutor saying,

17         everything Madoff did was a fraud and I can

18         prove it by introducing these records of his

19         business under the business records

20         exception, and the witness we're getting on

21         the stand, your expert or somebody else to

22         say these records are pristine, they

23         accurately reflect everything, under Brady,

24         you'd have an obligation as a prosecutor to

25         disclose, well, no, there were these ten

Page 173

1           instances where the records were inaccurate.

2                   MR. JACOBS:  Right.

3                   THE ARBITRATOR:  So Ms. Chaitman, in

4           effect, is looking for Brady material.

5                   MR. JACOBS:  Right, but that's not the

6           standard that governs discovery in this civil

7           action.  The standard is Rule 26, which

8           cabins relevance by -- with proportionality.

9           The discovery sought must be relevant and --

10          it's not "or" -- and proportionate.  And

11          proportionate is adjudged by the needs of the

12          case.

13                  In this case, we have represented --

14          in this case with these defendants and these

15          accounts, we have not found any inaccuracy in

16          the records.  In our -- in Greenblatt and

17          Lisa Collura's global reports, which we will

18          issue in this case and which we issue in

19          every case, they do a global reconciliation

20          of the customers' statements and find with a

21          near 100 percent certainly that, with respect

22          to wherever independent verification is

23          available, those records are reliable and

24          accurate with nearly 100 percent of the time,

25          which is I guess sort of the flip of what

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 174

```
 1        you're asking us to do -- or the request is
 2        asking us to do.
 3            My question would be, how can I
 4        possibly, with a team of a hundred attorneys
 5        and numerous -- dozens of consultants, over
 6        an eight-year period go back and reconstruct
 7        every instance of every time we found a typo
 8        on a page that may, quote, qualify as an
 9        error, which is undefined and vague here?
10        That would take us weeks, months, years to do
11        for what utility or benefit?
12            THE ARBITRATOR:  I agree with you that
13        somebody told me, probably off the record,
14        that there were 64,000 customers.
15            MS. CHAITMAN:  I just told you that.
16            THE ARBITRATOR:  That there's no need
17        to either prospectively or retrospectively
18        identify every error in the records that
19        relate to 64,000 customers.
20            But at trial, to the extent there is a
21        trial, Ms. Chaitman, the trustee is only
22        going to offer the business records that
23        relate to these 92 customers of yours.  Judge
24        Bernstein firmly took the view that even if
25        there are gross inaccuracies as to other
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 175

1           customers, that that's irrelevant.

2                  I understand you say that that would

3           call into question the accuracy of the

4           records as a whole.  This is not the

5           traditional case where somebody's going to

6           get up and say, I'm the treasurer of Bernard

7           Madoff Securities and the records are

8           accurate.  Although I suppose maybe there's

9           somebody who was prosecuted criminally, but

10          could so testify, saying that the records of

11          the fraud are accurate.

12                 But why should I require that Request

13          No. 2 be answered except as to your 92

14          clients?  And then the same way you're having

15          trouble getting information out from your

16          expert or accountant or whoever it is who's

17          doing the summary information about taxes, I

18          think it was taxes, here there's going to be

19          an expert report which will, to the extent

20          there are errors or inconsistencies, disclose

21          items; is that accurate?

22                 MR. JACOBS:  I'm sorry.  I'm not sure

23          I understand the proposition.  There will be

24          an expert report --

25                 THE ARBITRATOR:  There's going to be

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 176

```
 1          one or more experts who, for Mr. DiGiulian,

 2          to pick somebody who doesn't concede that the

 3          records correspond to his records -- for the

 4          DiGiulian client of Ms. Chaitman, there's

 5          going to be one or more experts who are going

 6          to say, we looked at the books and records

 7          that relate to this defendant.

 8               MR. JACOBS:  Right.

 9               THE ARBITRATOR:  They show the

10          following.

11               MR. JACOBS:  Right.

12               THE ARBITRATOR:  And we have not found

13          any inconsistent records.

14               MR. JACOBS:  That's correct.  And I

15          think the way I would put that is that we

16          will put forth proof on our affirmative

17          obligation and -- which is our burden

18          supporting all of our claims.  And I can tell

19          you that -- I can represent for the record

20          right now that with respect to all of

21          Ms. Chaitman's clients, we have found no

22          errors or we wouldn't have sued them.  Or we

23          wouldn't have -- we would have disclosed that

24          Bernard Exhibit B would reflect a correction

25          of that error.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 177

1           There are no errors in any of

2      Ms. Chaitman's cases that we are aware of.

3      Now, discovery might yield a different

4      outcome, which is why we affirmatively asked

5      for all the discovery we've been discussing

6      earlier in the day.

7           If there are transactions or deposits

8      or withdrawals or other factual issues that

9      are disputed and Ms. Chaitman has proof of

10     that, on behalf of her clients, she has an

11     obligation to produce it.  And we will

12     consider it and either amend the claim

13     appropriately or we will litigate it in

14     court, and the judge will decide whose proof

15     carries the day.

16          But we shouldn't have to -- but

17     Ms. Chaitman must, under Rule 26 and under

18     the relevant law, articulate a basis to

19     challenge our proof that's specific and

20     not -- and not a fishing expedition across

21     unrelated, irrelevant other customers whose

22     deposits and withdrawals aren't at issue in

23     this case.

24          THE ARBITRATOR:  What I'm going to do

25     is limit Request No. 2 to Ms. Chaitman's 92

Page 178

```
 1          clients.  I gather that, thus limited, your
 2          response is likely to be, we haven't found
 3          such errors.
 4              MR. JACOBS:  Right.
 5              THE ARBITRATOR:  It also follows that
 6          at the expert discovery stage in each of her
 7          cases, you may find some errors.  You may
 8          not, but it's conceivable that you may find
 9          some.  And granted that will occur at the
10          expert discovery stage rather than the fact
11          discovery stage, but I will reserve decision
12          as to whether that permits her to then seek
13          further discovery.
14              MR. JACOBS:  Okay.
15              MS. CHAITMAN:  I would like just to
16          point out --
17              MR. HUNT:  Can I make one -- sorry to
18          interrupt.
19              Are you done, moving on to the next
20          one?
21              MS. CHAITMAN:  No, I was going to say
22          something about this.
23              MR. HUNT:  I was going to make -- for
24          the record, DiGiulian actually has stipulated
25          to the accuracy and --
```

Page 179

 1                THE ARBITRATOR:  I was just using a

 2       name.

 3                MR. HUNT:  Good.

 4                THE ARBITRATOR:  The Maas account.  I

 5       wasn't trying to be specific.

 6                MR. HUNT:  I didn't think so, but I

 7       didn't want an inconsistent record.

 8                MS. CHAITMAN:  The -- in fact, one of

 9       my clients extraordinarily had records going

10       back and had an original check that Madoff

11       had sent her that she hadn't cashed.  So her

12       account was charged with that amount, but she

13       hadn't actually withdrawn it.  So that was an

14       error.  And --

15                MR. JACOBS:  That's not an error in

16       our books and records.  That's back --

17                MS. CHAITMAN:  It showed up as a

18       withdrawal on her statement.

19                THE ARBITRATOR:  Depends on the

20       accounting system you use, I suppose, and

21       that's --

22                MS. CHAITMAN:  But that's the kind of

23       thing.  If they don't count that as an error

24       when a check is not cashed --

25                MR. JACOBS:  How would we know if the

Page 180

1        check was cashed or not unless Ms. Chaitman

2        produces the discovery which we asked for,

3        which are those bank statements and

4        confirmation --

5              THE ARBITRATOR:  Really the request is

6        list every single factual error of which you

7        are aware.  Your point is you were unaware of

8        that --

9              MR. JACOBS:  Right.

10             THE ARBITRATOR:  -- despite a

11       good-faith effort.

12             MR. JACOBS:  It's also --

13             THE ARBITRATOR:  And I think -- you've

14       been harping on proportionality.  I think

15       I've dealt with that by limiting the universe

16       to the 92 accounts.

17             MR. JACOBS:  Okay.

18             THE ARBITRATOR:  And if at the expert

19       discovery stage, it turns out that there are

20       a number of errors, then, as I said, I'll

21       deal with that at that stage.

22             MR. JACOBS:  Okay.

23             THE ARBITRATOR:  Okay.  What's next?

24             MR. JACOBS:  I think that same ruling

25       would apply to --

Page 181

1            THE ARBITRATOR:  2, 3 and 5?

2            MR. JACOBS:  Let me --

3            THE ARBITRATOR:  Ms. Chaitman had 2, 3

4       and 5 as a page, basically.

5            MR. JACOBS:  Right.  I'm not sure that

6       I even can understand Request 3 as drafted.

7       I don't know what this means, to list every

8       single factual error asserted by any Madoff

9       or BLMIS customer in their statements.  How

10      does a customer assert an error in their -- I

11      just think -- I don't understand what this

12      request is seeking.

13           MS. CHAITMAN:  Let me explain.

14           What I meant to request is that if

15      Mrs. Jones asserts that on her December 31,

16      2001, statement there's an error and she

17      brings that to your attention and she's

18      correct, I'm asking you to produce the

19      documents that indicate that.

20           THE ARBITRATOR:  Well, I -- there's

21      two ways in which this could be read.  One

22      is -- well, building on what Ms. Chaitman

23      said, the bringing it to the attention of

24      somebody could be in realtime such that

25      somebody in 2007 wrote a letter to Madoff and

Page 182

```
 1         said, I never cashed that check so your

 2         accounting is wrong.

 3              Or it could be in connection with the

 4         bankruptcy proceeding.  In connection with

 5         the bankruptcy proceeding, obviously you know

 6         if somebody has asserted such a contention,

 7         Ms. Chaitman.  So really it's the sort of

 8         realtime complaints.

 9              And, again, I'm going to limit that to

10         the 92 accounts at issue.

11              MR. JACOBS:  Thank you, your Honor,

12         but at this juncture, I really do feel

13         compelled to assert for the record that we

14         object to the fact that we appear to be

15         having a mini hearing here as to the

16         admissibility of the trustee's records.

17              All of these records are proof of

18         claims that are going to be litigated, and a

19         court of law is going to determine if they

20         have errors or not.  This isn't something --

21         an error is -- what does that mean?  Does

22         that mean do I have to disclose an error if I

23         lose in court?  Do I have to disclose -- is

24         it an error if a defendant denies it in her

25         answer?  Is it an error if competing, but
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 183

1              unresolved factual evidence is produced?

2                     These requests are simply nonsensical.

3              And I have to say, notwithstanding your

4              order, respectfully, on number 2, with

5              respect to number 2 and 3, it's not my burden

6              to prove that these records are correct

7              before I have to prove them.

8                     And it's not my burden to make

9              determinations as to whether a court of law

10             is going to determine that my proofs are

11             legally sufficient or not before those

12             determinations have been made.

13                    THE ARBITRATOR:  Nor am I requiring

14             that.  And it's not a prospective

15             undertaking; it's your knowledge -- when I

16             say "you," I mean the trustee -- as of today.

17             So if, for example, in the 92 accounts,

18             you're aware today that there was some

19             accounting miscalculation, you would have to

20             produce that information to Ms. Chaitman.

21                    As I said, as a practical matter,

22             you're likely only to get to that stage when

23             I guess it's -- Collura opines about a

24             particular account.

25                    MR. JACOBS:  Right.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 184

1           THE ARBITRATOR:  And what the sequelae

2      of that would be is something I reserve

3      decision on.  So I think you're worrying

4      about something that hasn't happened and may

5      not happen.

6           MR. JACOBS:  I guess I'm still stuck

7      on this concept of error.  I mean, our -- we

8      construct our Exhibit Bs based on what we

9      believe to be true and correct based on our

10     investigation.

11          THE ARBITRATOR:  So your --

12          MR. JACOBS:  It's a combination of

13     account statements, bank transfer records,

14     third-party records and other materials.  So

15     we are not going --

16          THE ARBITRATOR:  And if --

17          MR. JACOBS:  -- pursue, for example,

18     on a withdrawal that we don't have a

19     good-faith basis to believe occurred, whether

20     the check was cashed or not, whether we're

21     right or not, whether -- it didn't happen.

22          Because we painstakingly constructed

23     each of our complaints with respect to each

24     account and our net equity analysis, with the

25     help of our experts and consultants, in

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

                                                          Page 185

    1        making determinations on which claims to

    2        pursue and which ones not to pursue.

    3              THE ARBITRATOR:  Which is my point,

    4        that your answer may well be, now that I've

    5        narrowed it to the 92 accounts, we are aware

    6        of no such errors at this time.

    7              MR. JACOBS:  Okay.

    8              THE ARBITRATOR:  Maybe there are some

    9        that you're aware of, but it's equally

   10        plausible that you're not aware of any such

   11        errors.

   12              So that was 3.  And 5 is the one --

   13              MR. JACOBS:  The number 5 we discussed

   14        at length with Judge Bernstein, and he agreed

   15        that we find this nonsensical.  I don't know

   16        what "riddled with fraud" means, if this is a

   17        challenge to the admissibility of our records

   18        that's not currently before your Honor and

   19        not properly ruled upon at this juncture.

   20              What we have maintained is that -- and

   21        what our experts will maintain, as we've

   22        discussed at length today, is that the cash

   23        activity reflected in the customer statements

   24        is accurate and reliable, but the stock

   25        trading activity included in those documents

Page 186

1          and others that were provided to customers

2          reflect fraudulent trading -- purported

3          trading activity that never occurred.

4               So that may be where this "riddled

5          with fraud" expression is coming from, but

6          put together in the context of this request,

7          it's nonsensical, and we shouldn't be

8          required under any theory to respond.

9               THE ARBITRATOR:  Well, as to Request

10         No. 5, there's two different versions of it.

11              MR. DEXTER:  I think it was changed to

12         "permeated."

13              THE ARBITRATOR:  Yes, that's the point

14         I was about to make.

15              And I assume that that's a quote from

16         the complaint.

17              MS. CHAITMAN:  It's a quote from the

18         trustee's expert, who said that.

19              MR. JACOBS:  If it's a quote from --

20              THE ARBITRATOR:  But obviously it's,

21         from the trustee's perspective, lifting the

22         words out of context.

23              MR. JACOBS:  At a minimum, it's

24         lifting the words out of context.  It's

25         completely divorcing the words of any context

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 187

1          and putting it in a request that, when read,

2          is not coherent.

3                THE ARBITRATOR:  Well, let's not

4          characterize it pejoratively.  The reports

5          presumably are going to be the reports of

6          Collura and -- I'm not quite sure what

7          Greenblatt talks about, but maybe Greenblatt.

8                And as to certain of her customers, to

9          the extent she stipulates to the accuracy of

10         the deposits and withdrawals, there's no

11         reason why you should have to answer Request

12         No. 5.

13               But to the extent she does not so

14         stipulate, it seems to me those reports will

15         be the expert reports.  And the expert

16         reports will reference, I would imagine, the

17         documents upon which the expert bases his or

18         her conclusion.

19               So you may be getting that later than

20         you wished, Ms. Chaitman, but you will be

21         getting it.

22               MR. JACOBS:  And I can also add that

23         the case -- the case-wide documentation

24         underlying those reports is already in Data

25         Room 1, which has been made available.  That

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 188

```
 1          would include all of the bank transfer

 2          records that we have, which are labeled by

 3          producing bank and the appropriate subfolder

 4          so it's easy to find.

 5               There's also -- as we told

 6          Ms. Chaitman, there's a full universe of

 7          every customer's statement.  There's a full

 8          set of all the customer statements that we

 9          have in the data room.  And while we've made

10          that available in connection with our expert

11          report -- while we may disagree it's relevant

12          to the issue of whether this defendant

13          received transfers, as we've said, it was

14          considered by our expert in connection with

15          his conclusions.  And it's in the data room,

16          so you can do with it what you see fit.  It's

17          made available to you.

18               THE ARBITRATOR:  Let's move on.

19               MS. CHAITMAN:  Okay.

20               THE ARBITRATOR:  What's next?

21               MS. CHAITMAN:  We need to go to 4,

22          your Honor, "List every profit withdrawal

23          entry on a customer statement where there's

24          no documentary evidence that the customer

25          requested to receive profit" --
```

Page 189

1            THE ARBITRATOR:  I'm sorry.  Which

2       number?

3            MS. CHAITMAN:  Number 4.  We skipped

4       4.  We went from 3 to 5.

5            THE ARBITRATOR:  Right.

6            MR. JACOBS:  Your Honor, this is again

7       the problem with doing these requests

8       theoretically across cases with -- divorced

9       from a factual context.  There are no PW

10      transactions in this case.  But even if there

11      were, Ms. Chaitman has all of this discovery

12      already in connection with the PW proceeding.

13           I'll stipulate that it can be

14      deemed -- it's deemed produced in this or in

15      any other case where PW is an issue.  That

16      discovery was exhaustive.  There were expert

17      reports exchanged.  There were documents

18      underlying those reports exchanged.  She has

19      all of it already.

20           So it's not relevant to this case, but

21      even if it were, I would agree to deem it

22      produced in this case so we don't have to go

23      through the charade of producing it again.

24           THE ARBITRATOR:  Let me just say that

25      my marginal note to myself was "Going to be

Page 190

1          addressed in PW litigation," and I didn't

2          have a question mark after it so --

3                    MS. CHAITMAN:  No, but the answer

4          is -- the answer is no because Judge

5          Bernstein's order specifically provided that

6          the profit withdrawal litigation was only for

7          people who asserted SIPA claims, but were not

8          defendants in claw-back actions.  So he

9          segregated it.  So no one who was a defendant

10         in a claw-back action had the right to

11         participate in the profit withdrawal

12         litigation.

13                   THE ARBITRATOR:  Let me ask a

14         different question, which is, suppose

15         Customer Jones never requested a profit --

16         let me go back a step.

17                   Are we using "profit withdrawal" as a

18         term of art to mean something that's a subset

19         of withdrawals generally?

20                   MS. CHAITMAN:  Yes.  These were

21         withdrawals that occurred before 1992 in

22         general.  There were some afterwards up to

23         1997, but the -- they were reflected on

24         statements from 1980 or '81 and some up to

25         1997.  Most ended in 1992.  It was a specific

Page 191

1        entry.

2               THE ARBITRATOR:  And were these

3        customers who were getting all of the monthly

4        profits shown or quarterly were getting

5        profit withdrawals or what?

6               MS. CHAITMAN:  Under this trading

7        strategy, they would get the profit on a

8        specific arbitrage transaction when the money

9        hit the account.  And the evidence in the

10       profit withdrawal litigation has been that

11       people were not sent profit withdrawals

12       unless they asked for them in writing.

13              So what Collura did with respect to

14       the profit withdrawal participants, which was

15       a subset that excluded all the claw-back

16       defendants, is, she produced a report which

17       said, as to the following 3,000 people,

18       whatever it was, there is no documentary

19       evidence within Madoff's records that these

20       people requested or received a profit

21       withdrawal.

22              So what I'm asking for -- I don't

23       believe I have to wait for expert reports on

24       this.  I'm asking whether there is any

25       documentary evidence to support the profit

Page 192

1          withdrawals on the claw-back defendants'

2          statements.

3                  Now, obviously it doesn't reflect --

4          it didn't affect the three that we're

5          specifically talking about, but these

6          interrogatories were intended to be served on

7          everyone.

8                  THE ARBITRATOR:  I'm still not getting

9          why, as to the claw-back defendants, this is

10         relevant or why they're carved out.

11                 MS. CHAITMAN:  Because Judge Bernstein

12         did that.  Honestly I think he shouldn't

13         have, but he did.  And so the factual --

14                 MR. JACOBS:  That is actually defense

15         counsel's request, to carve out, so the PW

16         proceeding is separate from the adversary

17         proceeding.

18                 THE ARBITRATOR:  I understand -- maybe

19         I misunderstand, but my understanding was

20         that Judge Bernstein is looking for issues

21         that can be dealt with universally and that

22         one of those is the profit withdrawal issue

23         and that, therefore, he's having an omnibus

24         hearing or litigation, whatever you want to

25         call it, with respect to that.

Page 193

```
 1                  Is that correct?

 2                  MR. JACOBS:  That is correct, but it's

 3         only -- I agree with Ms. Chaitman.  By court

 4         order, it's only applicable to the claimants.

 5                  MS. CHAITMAN:  Not the claw-back

 6         defendants.

 7                  MR. JACOBS:  And those are customers

 8         who we didn't necessarily sue, but who filed

 9         claims with the trustee.  We denied the

10         claim, for whatever reason, and they

11         objected.  And we're now litigating the

12         objections.  And part of that objection is

13         that the trustee didn't properly credit these

14         PW transactions.  So it gets unfolded --

15                  THE ARBITRATOR:  Let me just be --

16         before you say whatever it is you were about

17         to say, Ms. Chaitman, if the trustee

18         stipulates that all of the discovery in the

19         PW litigation will be made available to you

20         here, doesn't that go a long way to resolving

21         this?

22                  MS. CHAITMAN:  No, because there was

23         no discovery in the PW proceeding relating to

24         the claw-back defendants.  That was the

25         whole -- I don't -- I don't recall why it was
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 194

1           done that way, but my impression was that

2           Judge Bernstein ordered that, that if you

3           were a claw-back defendant and you challenged

4           a profit withdrawal, you had to do it in the

5           claw-back discovery.  So that's why we're

6           asking this specific information.

7                MR. JACOBS:  I think I can address

8           this.  There's two separate types of

9           discovery that, in my mind, related to PW

10          that would be relevant in an adversary

11          proceeding that has PW in a relevant account.

12               One is, in the fact discovery stage,

13          all of the materials we already produced,

14          which are the account statements, the bank

15          transfer records and the account opening and

16          closing documents and all of the

17          correspondence, which would contain all of

18          the evidence we have with respect to those

19          sued-upon accounts of how those PW

20          transactions should or would be or were

21          characterized.  Right.

22               Secondarily, there will be -- PW will

23          likely be addressed by our experts later on

24          down the road as part of their analysis that

25          might fill any factual gaps for which there's

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 195

1          no record one way or another.

2                  So discovery -- we are already

3          affirmatively producing any PW-related

4          materials that would be relevant in any given

5          adversary proceeding specific to those

6          defendants in the case.  Then I anticipate

7          we'll also be --

8                  THE ARBITRATOR:  If somebody

9          affirmatively requested, by way of a letter,

10         for example, profit withdrawal, that also --

11                 MR. JACOBS:  That's a produced --

12                 THE ARBITRATOR:  -- to the extent you

13         had it, that would be part of this CAD?

14                 MR. JACOBS:  Correct.  So our initial

15         disclosure production, we do this without

16         even a request.  It just goes out the door.

17         We repackage it.  It's the core account

18         documents, which are customer statements and

19         other similar types of reports that BLMIS

20         generated over time, reflecting all of the

21         customer account activity for all of the

22         relevant accounts.

23                 So that would be the sued-upon

24         accounts and any accounts from which the

25         sued-upon accounts got inter-account

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                    Page 196
 1        transfers.

 2               We also produced the bank transfer

 3        records, which would be JPMorgan, in most

 4        instances, records of cash activity coming to

 5        and leaving BLMIS's account to or from the

 6        defendants.

 7               We also produced a customer file for

 8        those accounts that BLMIS maintained, which

 9        includes all the correspondence.  So if

10        Defendant X wrote a letter to Bernard Madoff

11        instructing that dividends on certain stocks

12        held in my account should be -- result in a

13        check paid to me, that would be produced.

14        All of that's produced in fact discovery

15        right out of the gate.

16               THE ARBITRATOR:  And the only

17        carve-out is the adversary proceedings.

18               MR. JACOBS:  The carve-out from the PW

19        claims proceeding?

20               THE ARBITRATOR:  Yes.

21               MR. JACOBS:  Yes, the adversary

22        proceedings are carved out from that.

23               THE ARBITRATOR:  Ms. Chaitman has 92

24        of those -- just give me a sense of scale,

25        how many adversary proceedings are still
```

Page 197

1        kicking around?

2              MR. JACOBS:  We have around 350 or so

3        still active, I believe.

4              MS. CHAITMAN:  You told me 300 a

5        couple of months ago.

6              MR. JACOBS:  It's around 300.  I might

7        be off.

8              THE ARBITRATOR:  Well, so as to

9        Ms. Chaitman's clients, she's going to get

10       that at the expert discovery stage, and the

11       underlying documents from which you could

12       infer the answer have been produced.

13             What she's not getting by way of that

14       is, for the other 208 or so accounts, that

15       information, but I think the relevance of it

16       as to the other 208 is dubious, at best.

17             So I'm not going to require an answer

18       to Request No. 4 at this time.

19             MR. JACOBS:  Thank you, your Honor.

20             MS. CHAITMAN:  Okay.  Request No. 6

21       where I have some requests that go to the

22       nature of the outstanding claims, so I think

23       you can rule on them as a body.  And I just

24       want to explain to you why we think it's

25       important.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 198

1              THE ARBITRATOR:  6 through 9 deal with
2        the net equity issue, as I understand it;
3        right?  Where you say the court didn't have a
4        full --
5              MS. CHAITMAN:  It didn't have a full
6        picture --
7              THE ARBITRATOR:  Factual record.
8              MS. CHAITMAN:  It didn't have a full
9        factual record when it made the
10       determination.  And I would like -- obviously
11       these cases are going to go back to the
12       Second Circuit and possibly even to the
13       Supreme Court.  And I would like to have a
14       full factual record.
15             So, for example, if the only claims
16       that are left are claims of the huge feeder
17       funds or something like that, then I think
18       that that's part of the factual record that
19       the courts that look at this should be aware
20       of.  And it's readily available to the
21       trustee because he has a distribution list.
22       So all he has to do is give us the
23       distribution list.
24             And at some point in time, the
25       subcommittee of the Commercial Financial

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 199

1          Services committee and the house had

2          requested this information of SIPA.  And it

3          had been delivered to Congressman Scott

4          Garrett as of a certain point in time.  I'm

5          simply asking that that be updated.

6                  THE ARBITRATOR:  The only part of this

7          that I'm inclined to grant, but you may have

8          the information already, is in Request No. 9

9          or maybe Request No. 6 or both; but

10         basically, I think you're entitled to

11         aggregate claim information, but I assume the

12         trustee reports that periodically.

13                 MR. JACOBS:  That's reported in every

14         single interim report that we file.  It's

15         also regularly updated on the trustee's

16         website at www.madofftrustee.com.  So with

17         the click of a mouse, all of that information

18         is in realtime, updated and available to

19         Ms. Chaitman.

20                 And beyond that, we rigorously object

21         to having to produce any additional

22         materials.  Judge Bernstein has explicitly

23         rejected this legal defense.  It's really an

24         attack on the trustee's standing under SIPA

25         78fff-2(c)(3).  The defendants are planning

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

```
                                                        Page 200

 1           to argue that he has enough money to fulfill

 2           all the outstanding claims in the customer

 3           fund.

 4                  And that's simply not true at the time

 5           this defense was raised.  It was not true at

 6           the time Judge Bernstein rejected explicitly

 7           this legal argument and his omnibus decision

 8           on the motion to dismiss.  And it's not true

 9           today.

10                  So there's no legal basis that would

11           allow for an order determining that any of

12           this discovery is relevant.

13                  THE ARBITRATOR:  Well, as I said, I'm

14           not going to allow it except to the extent

15           that it's aggregate information.  And that is

16           publicly available.  So the short answer is

17           I'm not going to allow it.  When the Second

18           Circuit reverses based on that ruling by

19           Judge Bernstein and me, then I guess we'll be

20           back at it again.

21                  What's next?

22                  MR. HUNT:  One of the drabs that comes

23           in for...

24                  MR. JACOBS:  I believe that was 6

25           through 9.
```

Page 201

1                    THE ARBITRATOR:  Right.

2                    Ms. Chaitman?

3                    MS. CHAITMAN:  So 10 --

4                    THE ARBITRATOR:  10 is where I have to

5          go to the other set because you substituted.

6          It's not asking about the fee arrangement

7          anymore.  It's --

8                    MS. CHAITMAN:  No, it's here.  Here it

9          is.

10                    THE ARBITRATOR:  I've got it here.

11          List of every allowed claim, is that it?

12                    MS. CHAITMAN:  Yes.

13                    THE ARBITRATOR:  I think -- how is

14          that different than 6 through 9?

15                    MS. CHAITMAN:  It's not.  I agree.

16                    THE ARBITRATOR:  So the ruling is the

17          same.

18                    MR. JACOBS:  I'm sorry.  Which number

19          were we just looking at?

20                    THE ARBITRATOR:  Number 10.

21                    MS. CHAITMAN:  So number 11, we're

22          asking for, "For each year of Madoff's

23          operation, state all facts on which you base

24          your position that Madoff did not purchase

25          securities for his investment advisory

Page 202

```
 1          customers and produce the documents on which

 2          you base your position."

 3               This goes to one of the most important

 4          issues in the case for anyone who was a

 5          long-standing Madoff customer.

 6               THE ARBITRATOR:  This is the dispute

 7          between the trustee's position and

 8          Mr. Madoff's testimony and Mr. DiPascali's

 9          plea.

10               MS. CHAITMAN:  Right, but the point

11          is, we have a right to the production of

12          these documents.  This goes to a core issue

13          in the case.

14               THE ARBITRATOR:  Let's take the first

15          part of it first.  I think that it's not

16          unduly burdensome and is relevant to have you

17          set forth the trustee's position, which I

18          assume can be done in a paragraph.

19               MR. JACOBS:  Your Honor, this is

20          exactly the subject of Bruce Dubinsky's

21          report.  We intend to meet our burden of

22          proof through an expert that we proffered in

23          this case.  We provided Ms. Chaitman with an

24          early production of that report, which is our

25          answer to this request.  It's not -- it is
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 203

1        absolutely, given the complexity of the fraud

2        that occurred, not something we can reduce to

3        a paragraph.

4               THE ARBITRATOR:  So the answer may be,

5        see Dubinsky report at pages whatever through

6        whatever.

7               MR. JACOBS:  Right.  I believe that's

8        what we did answer.  We said the request was

9        premature because it was the subject of

10       expert analysis and it will be disclosed

11       pursuant to the case management order.

12              THE ARBITRATOR:  I looked at the

13       request, but not the --

14              MR. JACOBS:  I'm not looking at it

15       right now either, but I can't imagine we said

16       anything different.

17              MS. CHAITMAN:  I have the response.

18              Do you need the response, Judge?

19              THE ARBITRATOR:  No, I've got it here.

20              MR. JACOBS:  "The trustee objects to

21       this request on the grounds that it

22       prematurely seeks to have the trustee

23       disclose expert material well in advance of

24       the deadline in the case," but that's the

25       objection I'm making.

Page 204

 1              THE ARBITRATOR:  Let me interject.

 2         Off the record before you do that.

 3              (Discussion off the record.)

 4              MR. JACOBS:  I'm happy to repeat that.

 5         It was 78fff-2(c)(3).

 6              THE ARBITRATOR:  Start over.

 7              MR. JACOBS:  Please feel free to

 8         interrupt me any time.

 9              THE ARBITRATOR:  Let's -- back on the

10         record.

11              There were a number of bases on which

12         the trustee initially objected to Request

13         No. 11, one of which is work product, the

14         second of which is that Ms. Chaitman was

15         asking for expert discovery materials

16         prematurely, although that's now been waived

17         by production of the Dubinsky report;

18         correct?

19              MR. JACOBS:  That's correct.  So our

20         initial objection referenced the upcoming

21         report, which -- the disclosure of which was

22         not yet due.  Subsequently, in an effort to

23         try to avert as many disputes as possible

24         from coming to your attention or to the

25         court's attention, we made -- we went ahead

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 205

```
 1        and made an early production of that report

 2        in this case.

 3                THE ARBITRATOR:  But as to Request

 4        No. 11, as a matter of form, I think

 5        Ms. Chaitman is entitled to an answer

 6        certainly to the first part of this, which is

 7        "state all facts."  And if it's done by

 8        referencing the Dubinsky report, so be it.

 9                And in terms of producing the

10        documents on which you base your position,

11        are there any documents related to

12        Ms. Chaitman's clients upon which Dubinsky

13        bases his position that have not been

14        produced?

15                MR. JACOBS:  No.  Absolutely not.

16                THE ARBITRATOR:  In any of her 92

17        cases?

18                MR. JACOBS:  Correct.

19                THE ARBITRATOR:  So I think that deals

20        with Request No. 11.

21                MS. CHAITMAN:  Well, I don't think it

22        does because this is precisely the issue we

23        were talking about before.  The Madoff

24        trading records -- to the extent that some of

25        my clients' accounts go back to the 1980s,
```

Page 206

 1          the Madoff trading records have not been

 2          produced.  And if the trading records were in

 3          stocks that appeared on my clients'

 4          statements, then my argument would be that

 5          this is evidence that Madoff was trading with

 6          respect to those accounts.

 7               THE ARBITRATOR:  But you're not asking

 8          for, in effect, civil Brady material.  You're

 9          asking for the documents which support the

10          trustee's position, not those which refute

11          the trustee's --

12               MS. CHAITMAN:  Right --

13               THE ARBITRATOR:  -- position.

14               MS. CHAITMAN:  -- I am, but the point

15          is it's the converse.

16               THE ARBITRATOR:  But the request is

17          produce the documents that support your

18          position.

19               MS. CHAITMAN:  Right.  But the point

20          is, I don't think he has any documents.  And

21          that's why I think I'm entitled to a written

22          answer to that effect.  If there are no

23          documents, let him say that.

24               THE ARBITRATOR:  Well, so as to the --

25          I'm going to limit this second part of this

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 207

```
 1          to the 92 clients of Ms. Chaitman.  And you

 2          can answer it by referencing the documents

 3          that you believe support your position, the

 4          underlying documents.  It may be simply a

 5          reference to the CADs, but --

 6                  MR. JACOBS:  Right.  Well, I guess my

 7          problem with this, your Honor, is that

 8          Mr. Dubinsky provides about a hundred-page

 9          report that goes in-depth, in detail

10          responding to this exact issue and talks

11          about the analysis he conducted with respect

12          to securities trading for the IA business and

13          his conclusion there was no evidence of any

14          securities trading on behalf of any IA

15          customer at any given point in time.

16                  He also talks at length about the

17          relationship between the different functions

18          of BLMIS, like -- enormous detail on the

19          actual stock trading activities that did

20          occur, all of those things, so --

21                  THE ARBITRATOR:  Is there an executive

22          summary?

23                  MR. JACOBS:  What you're asking me to

24          do is provide an executive summary of expert

25          analysis, which I don't think is appropriate.
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 208

1              THE ARBITRATOR:  I'm saying in his

2       report, is there -- I understand it goes on

3       for a hundred pages, but is there a

4       two-paragraph version of it?

5              MR. JACOBS:  I believe that there is

6       at the beginning, yes.  And there are

7       certainly conclusions that are condensed as

8       to the big picture, but I don't think it's

9       appropriate for me, as an attorney, in

10      responding to an interrogatory that goes

11      to -- directly to our expert's analysis -- I

12      don't think it's appropriate for me to have

13      to find a way to paraphrase and package that

14      analysis in a way -- you know, all of the

15      facts he considered, all of the documents he

16      considered, all of the work that he did to

17      reach that executive summary conclusion is

18      detailed at great length in the report.  And

19      I believe I should be entitled to defer to

20      that report in lieu of an additional response

21      to this question, which is what I would like

22      to do.

23             THE ARBITRATOR:  I'm not disagreeing

24      with that.

25             MR. JACOBS:  Okay.  I was

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 209

1           understanding you were asking for a paragraph

2           where I would just disclose specific

3           documents --

4                THE ARBITRATOR:  I was, but --

5                MR. JACOBS:  -- and the like when I've

6           hired an expert who does exactly that.  I

7           would like that expert to stand or fall on

8           his analysis on his own, independent of my --

9           you know, my characterization of that expert.

10               THE ARBITRATOR:  I assume his report

11          reveals the documents on which he relies.

12               MR. JACOBS:  That's absolutely

13          correct.  And consistent with the litigation

14          procedures order that I referenced earlier in

15          the day, the e-Data Room 1, which we

16          discussed at length today, was formed for the

17          specific purpose of making available --

18               THE ARBITRATOR:  Well --

19               MR. JACOBS:  -- all of that material.

20               THE ARBITRATOR:  -- so you may be able

21          to answer this.  I am going to require an

22          answer.  You may be able to answer it by

23          reference to the report.

24               MR. JACOBS:  Okay.

25               THE ARBITRATOR:  And obviously I

Page 210

1              haven't read the report.  If there's some

2              fine-tuning that's warranted, we'll deal with

3              that down the road.

4                   MR. JACOBS:  Okay.  Thank you, your

5              Honor.

6                   THE ARBITRATOR:  Next.

7                   MS. CHAITMAN:  Okay.

8                   MR. JACOBS:  Number 12 is asking --

9              again it's the same issue as Request No. 1.

10             It's asking for -- it can be construed as

11             asking for our work product of employees or

12             other individual -- interviews of individuals

13             in connection with those conclusions.

14                  Now, I will say Mr. Dubinsky, in his

15             report, does reference all of the materials,

16             the depositions and examinations, he did in

17             his investigation in arriving at his

18             executive summary conclusions.  That's all

19             disclosed to the extent it's available.

20                  Beyond that, I'm objecting to any

21             additional disclosure on the basis that it's

22             work product.

23                  MS. CHAITMAN:  So let me ask you

24             something, Judge.  Do you think it's

25             appropriate -- let's just assume that, in

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 211

1            fact, the trustee's personnel have spoken

2            with some of the Madoff traders, who insist

3            that they actually did legitimate trades and

4            that they did trades for the investment

5            advisory customers.

6                    Is it your position then that they

7            don't have an obligation to disclose that to

8            me?

9                    THE ARBITRATOR:  You're

10           hypothesizing -- let me make sure I

11           understand this -- that, by way of example,

12           counsel or some other investigator that

13           counsel retained spoke to employee X, who

14           said, Madoff is right, it was trading.  And

15           then, without disclosing that, they hired

16           Mr. Dubinsky and said, go off and do your own

17           investigation.

18                   MS. CHAITMAN:  Right.

19                   THE ARBITRATOR:  And Dubinsky issued

20           his report, and the trustee did not disclose

21           to Mr. Dubinsky that there's evidence to the

22           contrary.

23                   MS. CHAITMAN:  Right.

24                   THE ARBITRATOR:  Well, I think that if

25           that were the case, Baker Hostetler and its

Page 212

1        lawyers would have much more fundamental

2        problems dealing with their ability to

3        practice law in the future.

4                MS. CHAITMAN:  But then why wouldn't I

5        be entitled to this information?

6                THE ARBITRATOR:  Because it's classic

7        work product.  They --

8                MS. CHAITMAN:  But we have a need for

9        it and we have no access to it.  The trustee

10       is in a unique position to be able to

11       question the former Madoff employees.

12               MR. JACOBS:  This request is coming as

13       pure speculation as if things she presumes --

14       things exist that are purely conjecture.

15       There has to be an articulable need for

16       specific information.

17               THE ARBITRATOR:  Well, within these

18       adversary --

19               MR. JACOBS:  I can't make up things

20       that didn't happen or that don't exist.

21               THE ARBITRATOR:  Within these

22       adversary proceedings, when does deposition

23       discovery occur?

24               MR. JACOBS:  In fact discovery for

25       fact witnesses --

Page 213

```
 1              THE ARBITRATOR:  Right.
 2              MR. JACOBS:  -- and then expert
 3       discovery for expert witness.  Expert
 4       discovery has come and gone.  In a number of
 5       Ms. Chaitman's cases, she hasn't deposed
 6       Mr. Dubinsky.  She hasn't deposed
 7       Ms. Collura.  She hasn't deposed
 8       Mr. Greenblatt.
 9              Ms. Chaitman, other than Mr. Madoff,
10       hasn't served any Rule 45 subpoenas for
11       deposition testimony of any BLMIS employees
12       or anybody else.
13              It's incumbent upon Ms. Chaitman to
14       conduct her own investigation, further her
15       speculative theories of the case.  We don't
16       have any obligation to do that for her.  And
17       to the extent we've done it, it's our work
18       product, which is shielded from discovery.
19              THE ARBITRATOR:  Well, I'm not
20       unsympathetic -- and this is probably a
21       speech I should have given at the beginning.
22       I'm not unsympathetic to the fact that even
23       with 92 clients, Ms. Chaitman's resources are
24       considerably less than the trustee's.
25              And in appropriate circumstances, that
```

Page 214

1      might warrant some shortcuts, but you have

2      been given a list of all of the employees.

3      And, again, Request No. 12, like at least one

4      of the other requests, asks for attorney work

5      product to the extent that it's going beyond

6      what Mr. Dubinsky did.  So I'm going to deny

7      Request No. 12.

8           MS. CHAITMAN:  Okay.  Request No. 13,

9      they actually ultimately produced the

10     document.

11          THE ARBITRATOR:  Right.

12          MS. CHAITMAN:  "Explain the basis on

13     which you determined that the defendants have

14     no net equity and produce the front and back

15     of each check."

16          Well, they've actually -- they

17     produced those now.

18          Number 15, "Explain how you intend to

19     establish that Madoff was insolvent in each

20     year from 1960 to 2000 and produce all

21     documents on which you will rely to establish

22     insolvency."

23          What they've done is simply relied

24     upon their expert.

25          THE ARBITRATOR:  Right.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 215

1              Who's the expert on this?

2              MR. JACOBS:  It's Mr. Dubinsky.  So

3         his report is broad in insolvency

4         collectively.  And so all that discovery and

5         that analysis has been made available in this

6         case.

7              However, Judge Bernstein has raised a

8         good question as to whether insolvency is any

9         longer actually an element in our case -- in

10        this case.  I believe the answer is, no, it's

11        not a burden of proof that we have with

12        respect to the avoidance actions.

13             However, I expect at some point that

14        will be addressed on motion or briefing after

15        further briefing with Judge Bernstein.

16             But even if it is relevant, it's our

17        same response as to the prior request,

18        number 11, asking for the basis of the facts

19        on which we state our conclusion that BLMIS

20        was a fraud.  It's the same answer as -- this

21        is exactly the subject matter of

22        Mr. Dubinsky's expert's analysis.  We rely on

23        his report in answering this interrogatory

24        and all of the specific documentation he

25        references, which we've made available in

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 216

1          e-Data Room 1.

2                  MS. CHAITMAN:  If they're relying on

3          the Dubinsky report, then they're limited to

4          the Dubinsky report, I assume, and they're

5          not going to be able to introduce evidence

6          beyond that.  And if I get such an order,

7          then I'm satisfied with it.

8                  But I don't want a situation where

9          they all of a sudden decide that, for

10         whatever reason, Dubinsky's report is not

11         reliable and now they're going to put in a

12         whole bunch of evidence that I haven't had

13         the opportunity to obtain in discovery.

14                 MR. JACOBS:  On insolvency?

15                 MS. CHAITMAN:  Yes.

16                 MR. JACOBS:  We have endeavored to

17         make available everything we could possibly

18         find that might be relevant to that subject

19         matter.  You have all --

20                 THE ARBITRATOR:  Is there anything

21         beyond Dubinsky and the documents he relies

22         on that you would proffer at trial?

23                 MR. JACOBS:  Absolutely not.  And

24         certainly if -- just as Ms. Chaitman stated

25         earlier, if we obtain something from a third

Page 217

1        party, we'll provide it and we'll add to the

2        data room and we'll supplement a report, if

3        needed.  We'll make it available.  But

4        sitting here today, there's nothing to my

5        knowledge that has not been made available on

6        that subject.

7              THE ARBITRATOR:  I think you can

8        answer it by saying, "See Dubinsky report."

9              MR. JACOBS:  Okay.

10             THE ARBITRATOR:  What I know about

11       bankruptcy could be written on the head of a

12       pin, but I did look at 11 U.S.C. Section 548

13       (a)(1)(A) versus (B).  And it does appear

14       that Judge Bernstein was right when he said

15       that insolvency is not an issue when you have

16       an intent to defraud.

17             MR. JACOBS:  Right.  And to explain

18       why we address it affirmatively is, as I'm

19       sure you know from the background materials

20       we provided, the legal landscape of this case

21       has changed for many defendants over time,

22       including what we call the feeder fund in the

23       bank cases, where we have a claim above and

24       beyond just the avoidance actions we have

25       here.

Page 218

1           But also -- you know, insolvency also

2      could be construed as being indirectly

3      relevant to the fraud.  Insolvency is an

4      indicia of fraud.  So that interrelates with

5      these earlier periods of time.  Whether it

6      be -- so I'm making this point because the

7      issue of whether stocks were traded or not is

8      in and of itself not conclusive of whether

9      there was a Ponzi scheme or a fraud.

10          So that is an important fact that I

11     don't think gets conflated in the discovery

12     disputes we're having.  I just wanted to make

13     it clear.

14          THE ARBITRATOR:  Okay.  Anything else

15     on Wilenitz?

16          MS. CHAITMAN:  Yes, number 16.

17          THE ARBITRATOR:  Oh, I'm sorry.

18          MS. CHAITMAN:  "Provide the gross

19     trading volume by both number of shares

20     traded and total dollar value for each of

21     Madoff's operations broken down by the

22     investment advisory business, the proprietary

23     trading business, and the market-making

24     business and produce the documents on which

25     you base your responses."

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 219

 1                  MR. JACOBS:  Now, our objection here,

 2          your Honor, is something you alluded to this

 3          morning with respect to the nature of the DTC

 4          records.  Our answer -- our objection to this

 5          particular request is -- we have a number of

 6          objections, but first and foremost, this is

 7          an investigation that Ms. Chaitman is asking

 8          us to do to further her speculative theory

 9          that she wishes to advance to challenge the

10          fraud.

11                  We've made the underlying

12          documentation that is available, all of it,

13          to her.  She can do that investigation

14          herself.  And under Rule 33(d) that is

15          entirely appropriate and called for here.

16                  And to be clear, we're not just saying

17          go look in the data room.  We have told her

18          specifically where all of the documents she

19          would need to attempt this manipulation of

20          the data for her purposes can be found.  And

21          it's all in a single, segregated folder

22          called DTC under the main subfolder data in

23          the data room.

24                  MS. CHAITMAN:  But it doesn't because

25          that's not -- that's 2002 on.  And, again,

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 220

1      we're --

2            MR. JACOBS:  Again, I'll reiterate,

3      your Honor, Ms. Chaitman has everything we

4      have and we've -- at the moment, that we know

5      of.  So we don't have any other documentation

6      that we know of that would allow us to do

7      this.

8            And the DTC records specifically --

9      they don't track -- they show day-over-day

10     difference, like in volume.  So they'll show

11     that X amount of a certain type of stock

12     was -- existed and BLMIS held this day and

13     then the next day it changed by this amount.

14           It's not exact -- the DTC records

15     don't break out the data into these easily

16     discernible buckets that Ms. Chaitman would

17     like it to.  And unfortunately we can't help

18     that.  So we can't do the impossible.

19           I don't know of any records that would

20     allow us to assign this volume data that

21     she's looking for by the proprietary trading

22     versus investment advisory business.  All I

23     can say is that we have the DTC data that

24     reflects trading done through BLMIS's only,

25     and they only have one, DTC terminal for the

Page 221

```
 1        relevant period that we have.

 2               And it's all been made available, and

 3        she can do whatever investigation she wishes,

 4        including, she can hire her own consultants

 5        to analyze that, she can hire her own expert

 6        to opine as to what that means.  We shouldn't

 7        have to do that for her.

 8               THE ARBITRATOR:  I gather this goes to

 9        the notion that if two of the three

10        activities of BLMIS were legitimate, the

11        Ponzi scheme presumption should not apply.

12               MS. CHAITMAN:  In part.

13               THE ARBITRATOR:  Okay.

14               MS. CHAITMAN:  And, in part, that the

15        fraud did not start until 1992.  So, you

16        know, the DTC records, which unfortunately

17        only exist from 2002 on, are not relevant.

18        Once Mr. Madoff says the fraud started in

19        1992, I'm not going to argue that it started

20        later.  Right.  So I'm only focusing on the

21        period prior to 1992.

22               But, again, that's very significant

23        because a lot of my clients would be entitled

24        to dismissal of the complaint if the court

25        found that the fraud did not start until
```

Page 222

1    1992.

2         THE ARBITRATOR:  Is it correct,

3    Mr. Jacobs, that you don't have the records

4    for the period from 1980 to 1992, to your

5    knowledge, that --

6         MR. JACOBS:  It's the same records we

7    were discussing earlier in the day that we

8    will look for.  I will update you in a week's

9    time as to those efforts.  I don't know of

10   any that I confirm that exist beyond what is

11   in the data room currently.  And if we find

12   them, we will produce them.

13        THE ARBITRATOR:  But even if there are

14   records, it seems to me that this is really

15   an exercise -- I recognize that we're dealing

16   with far more limited resources, but one that

17   you, or an expert that you retain, would have

18   to engage in; that it's not appropriate to

19   have the trustee endeavor to do this,

20   assuming that he could, in terms of breaking

21   it down by business.

22        And I thought I heard Mr. Jacobs say

23   that they couldn't do it even if they had the

24   records.  So I'm going to deny that request.

25        17?  Is that --

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 223

1          MS. CHAITMAN:  17 I think we covered

2      because that was the employees.

3          THE ARBITRATOR:  Right.  Well --

4          MS. CHAITMAN:  I've got the list that

5      specifies the area so --

6          THE ARBITRATOR:  What else?

7          MS. CHAITMAN:  -- I'm okay with that.

8          18.  And this is "For each security

9      listed on the defendants' account statements

10      for each year from 1982 on, set forth the

11      number of shares that BLMIS held."

12          And that again goes to the trading

13      records.  And just to be absolutely clear

14      about this, the evidence of the trading could

15      have existed in a number of different forms.

16      It could have been actual computer-generated

17      records where they kept track of the

18      securities.

19          And considering the volume that Madoff

20      was doing and the fact that it was

21      market-making, it wasn't done on an exchange.

22      So it was done privately, from firm to firm.

23      And there were internal records -- there

24      would be like a -- at the end of a day, there

25      would be a netting out sheet, which would

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 224

```
 1          have -- could go on for thousands of

 2          transactions.  And then at the bottom, it

 3          would say Madoff owes the clearinghouse

 4          3 cents or the clearinghouse owes Madoff

 5          3 cents.  So it could be that.

 6               There are all different kinds of

 7          records that would have reflected the

 8          trading.  And I just want it to be clear that

 9          I'm asking for that very broad scope, and

10          we're talking about the period prior to 1992.

11               MR. JACOBS:  Again, your Honor, the

12          issue is the same as the issue I had with

13          Request 16.  All of the documents that

14          evidence actual trading at BLMIS have been

15          made available to Ms. Chaitman, in addition

16          to the DTC records, as I mentioned.

17               We also subpoenaed the Chicago Board

18          of Options Exchange.  We also subpoenaed the

19          Chicago Mercantile Exchange.  We also scoured

20          all the books and records of the debtor to

21          see if there were any indicia of these

22          out-of-the-market or weekend or black pools

23          of liquidity -- trading that Mr. Madoff says

24          he was doing.  There's no evidence of that.

25          And what there is we've made available.
```

Page 225

1              So what Ms. Chaitman would like to do

2       is -- if I understand her theory correctly,

3       is she would like to now argue that the --

4       there were stocks traded through the

5       proprietary trading arm of BLMIS on behalf of

6       specific IA customers.

7              And I can tell you with all of the

8       documents that I currently know exist, which,

9       again, I reiterate she has, there is

10      absolutely no evidence that that ever

11      happened.

12             And, furthermore, even if I wanted

13      to --

14             THE ARBITRATOR:  But she also has an

15      interim step, which is, if IBM was shown on

16      Customer Jones' statement and --

17             MR. JACOBS:  Right.

18             THE ARBITRATOR:  -- and BLMIS was long

19      IBM on that same date --

20             MR. JACOBS:  Right.

21             THE ARBITRATOR:  Tell me that.

22             MR. JACOBS:  Right.  Well, it's my

23      understanding -- and, again, I don't want to

24      speak for our expert, but this is an issue

25      that, again, Mr. Dubinsky squarely addresses

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 226

1            in his report.  It's not possible to match an

2            inventory with a customer statement and say

3            there's a match.

4                 Because in, I believe, every instance

5            that Mr. Dubinsky -- wherever he attempted to

6            do that, where he tried, he failed.  The

7            records simply don't match.  Because the

8            customer statements were generated -- BLMIS

9            had a shadow DTC terminal that wasn't

10           connected to DTC, where we have offered

11           proofs that they actually faked templates of

12           what that trading activity would look like.

13                They populated it after the fact.

14           They put that into their computer system and

15           used that information to spit out the

16           customer statements that reflects that

17           purported, but fraudulent, trading activity.

18                And Mr. Dubinsky does painstaking

19           analysis.  Again, he's much smarter than me,

20           so I'm not going to be able to articulate all

21           the ways in which he does it, but he attempts

22           to reconcile those customer statements with

23           the DTC materials that we know do reflect

24           actual trading that occurred, and he can't.

25                And the grand finality of his

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 227

1          conclusion is that there's no evidence of any

2          instance where BLMIS was actually trading on

3          behalf of a specific IA customer.

4                 So, again, to answer that question, I

5          would refer -- I would answer with

6          Mr. Dubinsky's report and rely on that for

7          the information contained therein.

8                 THE ARBITRATOR:  Well, and it's

9          further complicated potentially by CUSIP

10         numbers.

11                I'm going to deny Request 18 for the

12         same reasons as Request 16.

13                Are we done with that motion?  Is

14         there a cross-motion on that?

15                MR. JACOBS:  The cross-motion was for

16         a protective order that we would like entered

17         in any case where there's universal

18         applicability to these requests.  And I think

19         that since your Honor considered these

20         requests holistically across all types of

21         cases, that an order entering that protective

22         order across all of Ms. Chaitman's cases

23         would be appropriate.

24                Because we didn't look at this through

25         the lens of specifically the Wilenitz

Page 228

1         defendants.  We looked at it as if -- from

2         the perspective of a defendant that hadn't

3         conceded things on behalf of the account or

4         any of those other issues.

5              So I think that in any instance where

6         you have denied the discovery, your Honor, a

7         protective order is appropriate across all of

8         Ms. Chaitman's cases so we don't have to

9         relitigate all of this again.

10             THE ARBITRATOR:  Well, I think what I

11        will instead do is have the general principle

12        I outlined earlier, which is that it should

13        apply to all cases that are the same, but it

14        may be that -- without sitting and going

15        through all 92 cases, it would be hard to say

16        it applies to all of these requests and

17        interrogatories as to all of her cases.  So

18        I'm not going to do that.  It will be more of

19        an --

20             MR. HUNT:  Aspirational.

21             THE ARBITRATOR:  That was the word I

22        was trying to find.

23             -- aspirational statement than a

24        ruling.

25             MR. JACOBS:  Okay.  Fair enough.

Page 229

1        Thank you.

2             (Recess from the record.)

3             MS. CHAITMAN:  Are we done except for

4        depositions?

5             MR. HUNT:  I think so.

6             MS. CHAITMAN:  Okay.  So, Judge, if I

7        can just explain about the depositions.  The

8        trustee has noticed depositions in all of the

9        cases.  And in most of them, I haven't sought

10       a protective order.  In these I have, and I'd

11       like to go through them and explain why.

12            THE ARBITRATOR:  Sure.

13            MS. CHAITMAN:  Some of them you may --

14       Edyne Gordon, if I can take her, is the widow

15       of the account holder.  She had nothing to do

16       with the account.  She knew nothing about it.

17       She lives in New Mexico.  She produced

18       whatever documents she had.

19            And with some of my elderly clients, I

20       feel very protective of them.  Because

21       they've never been involved in litigation.

22       It causes them unbelievable anxiety.  And I

23       just worry about them physically.  And that's

24       the category of people we're talking about.

25            And if there were a compelling factual

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 230

1          issue, I would feel differently about it, but

2          the records are what they are.  You've

3          immersed yourself enough in the case that you

4          see what the issues are.  And there's no

5          issue here of intent or -- I mean, there's

6          nothing really that these people can add.

7          That's why I moved for a protective order in

8          these cases.  I can go through them --

9               THE ARBITRATOR:  Well --

10              MS. CHAITMAN:  -- individually.  His

11         wife, she's had a stroke, she's in her 80s,

12         she talks in a very broken way.

13              THE ARBITRATOR:  I've read the papers.

14         Customarily if people were deposed, since

15         they're defendants, not plaintiffs, they

16         typically would be deposed where they live,

17         although that might be inconvenient for you.

18              But it struck me that some of these,

19         there probably would be very few questions to

20         ask.  Palmer, who's the son, doesn't admit

21         the accuracy of Exhibit B, but also

22         apparently has no firsthand knowledge.  I'm

23         not gainsaying that there may be issues he

24         could be asked about if only to preclude him

25         from showing up at trial and saying, suddenly

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 231

 1        I've remembered something.  But maybe with

 2        one or two exceptions, if that, these stuck

 3        me as depositions that would be

 4        extraordinarily short.

 5              MR. HUNT:  Our experience has been

 6        depositions that we've taken of

 7        Ms. Chaitman's clients -- that they've been

 8        efficient.  We've gone to where they live.

 9        We've allowed her to appear remotely via

10        video link to try to make it more efficient

11        for them.  So, yes, I think you're right.

12              MS. CHAITMAN:  But, you know, the bulk

13        of the depositions -- they follow a certain

14        format.  And I'm not being critical, but the

15        bulk of the time is, do you recognize this

16        check, you know, look at the back of the

17        check, do you recognize the signature.

18        Because they're proving the deposits and

19        withdrawals.

20              If they give me that package, I can

21        sit down with these people and I can review

22        it.  In most instances, we haven't disputed

23        Exhibit B with these clients.  So we can

24        avoid that.  And it's just the trauma to the

25        clients that I'm trying to avoid.

Trustees Motion to Compel Discovery                 Arbitration 12/13/2016

Page 232

```
 1              And if there's a way to do it through
 2        written questions or just giving me the
 3        documents and I'll get back to them, that
 4        would just be so much better than subjecting
 5        these people to the trauma of this.
 6              THE ARBITRATOR:  Well, I agree with
 7        the trustee that you haven't made the
 8        hardship showing in the formal way that --
 9        when I was on the bench, I would require it.
10        Mainly a doctor's note saying they're at
11        death's door or non compos mentis.
12              But it does strike me that this is an
13        area where something should be worked out
14        just because there's probably not much there
15        or there for the trustee, although it may
16        vary from defendant to defendant.
17              Gordon and Harwood I guess have no
18        personal knowledge of what went on.
19              MS. CHAITMAN:  Palmer, DiGiulian,
20        Gordon, Harwood and Pearlman.  Because they
21        were not involved in the accounts.  I mean,
22        in Pearlman what happened was there were
23        three siblings.  And together they've agreed
24        to Exhibit B.  It's just that they didn't all
25        have control in the same period.
```

Page 233

```
1            MR. HUNT:  Harwood was directly

2       involved.

3            THE ARBITRATOR:  I'm sorry?

4            MR. HUNT:  Harwood was directly

5       involved, for example.

6            THE ARBITRATOR:  Did you give a copy

7       of this to Ms. Chaitman?

8            MR. HUNT:  These are documents that

9       have already been produced to her.

10           THE ARBITRATOR:  I assumed that.

11           MS. CHAITMAN:  You will -- if you

12      depose her, you'll find out that this was

13      typed up by her husband's secretary, and he

14      brought it home and she signed it, if she

15      signed it or if they signed it for her.  She

16      does not have personal knowledge about the

17      account.

18           THE ARBITRATOR:  But --

19           MS. CHAITMAN:  We don't dispute these.

20           MR. HUNT:  That's what we'll find out

21      in the deposition; right?

22           MS. CHAITMAN:  Yes, but we don't

23      dispute the deposits --

24           THE ARBITRATOR:  Is this something

25      that can be done through a deposition on
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 234

```
 1          written questions or a set of interrogatories

 2          without prejudice to your right to depose the

 3          individual if --

 4                  MR. HUNT:  No, because we've worked

 5          for years with Ms. Chaitman on stipulations,

 6          on requests for admissions and have

 7          repeatedly been stonewalled.  And we found

 8          that taking depositions of these people is

 9          the most efficient way to get the information

10          we need.

11                  THE ARBITRATOR:  Is there any of these

12          depositions -- assuming that the people are

13          compos mentis and not really slow in their

14          functions, is there any of these depositions

15          that would take more than two hours?

16                  MR. HUNT:  Depends on their answers,

17          of course.  I know that the last deposition

18          that Marie took took longer because

19          Ms. Chaitman appeared remotely.  And so every

20          time we introduced a document, we had to

21          identify it to her and read out the Bates

22          number.  And so that took longer.  But none

23          of these depositions have been full

24          seven-hour depositions.

25                  THE ARBITRATOR:  Is there any -- any
```

Trustees Motion to Compel Discovery                      Arbitration 12/13/2016

Page 235

```
1         reason why you can't give her the exhibits in

2         advance?

3               MR. HUNT:  We've done that too.

4               MS. CHAITMAN:  No, you haven't,

5         actually.  And the thing is, if you'd give me

6         the exhibits in advance on the deposits and

7         withdrawals, that takes the bulk of the time

8         and we could at least save these people that

9         time.

10              THE ARBITRATOR:  Well, I gather you

11        have it -- not with exhibit numbers, but you

12        have it.

13              MR. HUNT:  We produced -- the last

14        time we did this where she appeared remotely,

15        we sent her copies of everything we were

16        going to use in the deposition.

17              THE ARBITRATOR:  With exhibit numbers?

18              MS. CHAITMAN:  Dean, it's not correct.

19              THE ARBITRATOR:  Let's not go back to

20        whether it's correct or not.  On a

21        going-forward basis --

22              MR. HUNT:  We'd be happy -- in the

23        deposition I took last week, we provided a

24        binder with everything numbered with exhibit

25        numbers ahead of time.  Sure.
```

Page 236

```
 1              THE ARBITRATOR:  That should help, A,

 2         truncate the mechanics of it.  Also give you

 3         an opportunity to prep your witnesses.

 4              MR. HUNT:  The one thing I will say is

 5         we will go to where they are and we'll

 6         accommodate them in any way we can to make it

 7         as --

 8              THE ARBITRATOR:  Where have you

 9         typically done these?  In people's houses or

10         nearby law offices --

11              MR. HUNT:  No, we've done it in nearby

12         law offices.  One guy we did at his house;

13         another we did at a hotel room.

14              MS. CARLISLE:  I did an accountant at

15         his house, but that -- he was an accountant,

16         not a defendant.  I've had them in hotel

17         rooms.  There was like a local -- I

18         discovered like a court reporting service had

19         a suite similar to these where there were

20         different conference rooms.  We did one

21         there.

22              Have we done more than one?

23              MR. HUNT:  I guess this is where they

24         picked, I guess --

25              MS. CARLISLE:  We did do one in
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 237

```
 1          Mr. Cohen's office for Placon II.  I'm

 2     certainly willing to do it in somebody's home

 3     if that's been offered, but to date we've

 4     only done the one accountant in his

 5     residence, I think.  And then one in our

 6     offices in New York.  And we have one this

 7     Friday in our offices in Houston for a

 8     gentleman who lives in a separate --

 9          THE ARBITRATOR:  Who's one of

10     Ms. Chaitman's clients?

11          MS. CARLISLE:  Yes.

12          MR. HUNT:  Yes.

13          THE ARBITRATOR:  We've had the

14     discussion today about Exhibit B.  For

15     example, as I read Palmer, it's -- well, no,

16     Palmer is a bad example.  Palmer does not

17     admit the accuracy of Exhibit B.

18          MS. CHAITMAN:  Right.

19          THE ARBITRATOR:  But DiGiulian, as we

20     discussed this morning --

21          MS. CHAITMAN:  And Dusek.

22          THE ARBITRATOR:  -- does.

23          MS. CHAITMAN:  And Dusek does and

24     Pearlman does.

25          THE ARBITRATOR:  Right.  And there
```

Trustees Motion to Compel Discovery                Arbitration 12/13/2016

Page 238

```
 1        were lots of affirmative defenses, but some

 2        of those will fall by the wayside by virtue

 3        of the stipulation now.

 4             MS. CHAITMAN:  Right.  And Gordon

 5        concedes Exhibit B.

 6             THE ARBITRATOR:  So hopefully it will

 7        go more smoothly.  So one thing I will direct

 8        is that the exhibit binders be produced with

 9        exhibit numbers, or letters, at least three

10        days before the deposition -- three business

11        days before the deposition.

12             MR. HUNT:  That's fine.

13             MS. CARLISLE:  With respect to this

14        Friday's deposition --

15             THE ARBITRATOR:  Absolutely.

16             MS. CARLISLE:  -- with all due

17        respect.  I don't know if I can do that.

18             THE ARBITRATOR:  Of course.

19             Is that one of these?

20             MS. CARLISLE:  No, sir, it is not,

21        but --

22             THE ARBITRATOR:  Okay.  And there will

23        be no questioning about issues which have

24        been conceded, which is the Exhibit B

25        discussion and the affirmative defenses.
```

Page 239

1            MS. CHAITMAN:  So then --

2            MR. HUNT:  None of these have been

3      conceded in that way except DiGiulian at this

4      point.

5            MS. CHAITMAN:  No, they all have --

6      look, if you just -- I mean, Gordon conceded

7      Exhibit B.  Harwood conceded Exhibit B.

8            THE ARBITRATOR:  Well --

9            MS. CHAITMAN:  Dusek conceded

10     Exhibit B.  So then there shouldn't be any

11     questioning.

12           THE ARBITRATOR:  Dusek is -- I took

13     random notes, but Dusek -- my note to myself

14     was "truly unqualified, but lots of

15     affirmative defenses."  So he didn't have the

16     waffle language on Exhibit B.  And some of

17     those affirmative defenses I presume, by

18     virtue of the discussion we had today, will

19     go by the boards.

20           When are these folks currently

21     scheduled for?

22           MR. HUNT:  They are not scheduled.

23     The date has passed.

24           MS. CHAITMAN:  They're not scheduled.

25           THE ARBITRATOR:  So why don't you work

Page 240

 1          out amongst yourselves the extent to which

 2          Ms. Chaitman can stipulate, as we indicated

 3          today, with respect to these defendants and

 4          dropping affirmative defenses.  Then see

 5          whether there are other issues as to which

 6          you need to depose the individual.

 7                  Harwood is one of the ones --

 8                  MS. CHAITMAN:  Harwood is in her 80s

 9          and she's conceded Exhibit B.

10                  THE ARBITRATOR:  So if the purpose is

11          to -- or a principal purpose is to establish

12          all of this, it seems to me it becomes

13          irrelevant if there's that stipulation.

14                  MR. HUNT:  If Ms. Chaitman is willing

15          to enter into the exact same stipulation with

16          respect to everything in Exhibit B for every

17          one of her clients, I agree.  They haven't

18          done that.  They still have all --

19                  THE ARBITRATOR:  She needs to review

20          one by one.

21                  MS. CHAITMAN:  I can't concede all of

22          my affirmative defenses.  I've conceded the

23          accuracy of Exhibit B with respect to these

24          clients.

25                  THE ARBITRATOR:  And that certain

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 241

1        affirmative defenses, therefore, are --

2              MS. CHAITMAN:  Which go to this issue.

3              THE ARBITRATOR:  Right.

4              So then you have to make a

5        determination on the trustee's side whether,

6        as to remaining affirmative defenses or any

7        other issue, there's a reason to depose the

8        person.

9              MR. HUNT:  So just to be clear then,

10       defendants are entering into the stipulation

11       that everything in Columns 1 through 5 of

12       Exhibit B is accurate for Pearlman, Harwood,

13       Gordon, Palmer and Dusek?  They will never

14       contest anything with respect to a transfer

15       in this case.

16             THE ARBITRATOR:  Well --

17             MS. CHAITMAN:  I did -- I don't -- I

18       don't know what you mean by "never contest"

19       something with respect to a transfer.  I'd

20       have to look at the language.  I'm not going

21       to concede anything more than of the accuracy

22       of Exhibit B.  And that's the issue.  I've

23       agreed to waive affirmative defenses that go

24       to the accuracy of Exhibit B.

25             THE ARBITRATOR:  Such as Affirmative

Page 242

1        Defense 20.

2             Well, why don't I say that within one

3        week, you indicate to counsel, with a copy to

4        me, which of these defendants you're willing

5        to make -- enter into that stipulation and

6        make those concessions regarding the

7        affirmative defenses.

8             MS. CHAITMAN:  Okay.

9             THE ARBITRATOR:  And then you can try

10       and work out the extent to which you wish to

11       depose the others.  We can have a phone

12       conference call, if need be --

13            MR. HUNT:  Okay.

14            THE ARBITRATOR:  -- and work it out.

15            MR. HUNT:  Can she also provide us,

16       within that one week, dates for the

17       depositions if we need them?

18            THE ARBITRATOR:  Well, logically it

19       seems to me first you ought to find out

20       whether you need the depositions.  There's no

21       point in her getting dates if there's not

22       going to be a deposition.

23            MR. HUNT:  I'd just like to get some

24       provisional dates because we have got a lot

25       of moving parts with all these cases to try

Page 243

```
 1          to fit it in.  So if you can provide us dates

 2          within a week, I'd like to get it --

 3               MS. CHAITMAN:  The problem is that I'm

 4          booked virtually solid with deposition dates

 5          in January and through the first half of

 6          February.  So if you want me to block out

 7          dates for witnesses that we may not depose,

 8          it's going to make me unavailable for

 9          witnesses that we are producing.  So I

10          don't --

11               MR. HUNT:  I'm not asking you to

12          provide dates for depositions that have

13          already been scheduled.  I'm asking for

14          dates --

15               THE ARBITRATOR:  She's saying because

16          of those depositions, the dates you get might

17          be in March --

18               MS. CHAITMAN:  Yes.

19               THE ARBITRATOR:  -- for example.

20               MS. CHAITMAN:  That's --

21               MR. HUNT:  That's why -- so if I wait,

22          then it's going to be April.  So that's --

23               MS. CHAITMAN:  I know, but you're only

24          competing with your own firm.  It's not --

25               MR. HUNT:  If you can give us dates --
```

Page 244

    1            MS. CHAITMAN:  You're talking about 92

    2       days of deposition.

    3            THE ARBITRATOR:  You're going to

    4       respond within one week.  Why don't we, while

    5       we're here today, set up a phone conference

    6       and then we can discuss this.

    7            MR. HUNT:  She's going to respond by

    8       the 20th; is that right?

    9            THE ARBITRATOR:  Right.

   10            I can do the 21st or the 22nd.  That's

   11       Thursday and Friday.

   12            MS. CHAITMAN:  The 22nd would be good

   13       for me.

   14            MR. HUNT:  22nd is a Thursday.  Could

   15       we do like a 3 o'clock call?

   16            THE ARBITRATOR:  (Nods head in the

   17       affirmative.)

   18            MR. HUNT:  That will give us a day to

   19       look at what was sent before we have to talk.

   20            THE ARBITRATOR:  So it's Thursday, the

   21       22nd, at 3 p.m.?

   22            MR. HUNT:  Yes, sir.

   23            THE ARBITRATOR:  Works for me.

   24            MS. CHAITMAN:  That's fine.  Thank you

   25       very much.

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 245

```
 1                THE ARBITRATOR:  Sure.  Bear with me

 2         one second.  I saw that there was an order, I

 3         don't know whether it's one of your cases, in

 4         Greif, Greif.

 5                MR. JACOBS:  Greif.

 6                THE ARBITRATOR:  Is that --

 7                MR. JACOBS:  An order from --

 8                THE ARBITRATOR:  Yes, there was one

 9         where you sent it and said, I sent it

10         prematurely, the order hadn't been entered --

11                MR. HUNT:  Oh, yeah, yeah.  The order

12         has been entered now.

13                THE ARBITRATOR:  -- and now --

14                MR. HUNT:  Yes.

15                THE ARBITRATOR:  But I have no

16         paperwork, so I have no idea what that's

17         about.

18                MR. HUNT:  Okay.  Yeah, we need to get

19         that to you.

20                THE ARBITRATOR:  Okay.

21                MR. HUNT:  We're off the record now.

22                THE ARBITRATOR:  Yes.

23                (The time is 4:50 p.m.  The

24          hearing concluded.)

25
```

Page 246

```
 1              C E R T I F I C A T E

 2

 3    STATE OF NEW YORK      )

 4                           ) ss:

 5    COUNTY OF WESTCHESTER )

 6

 7          I, Eileen Mulvenna, CSR/RMR/CRR and a

 8    notary public within and for the State of New York,

 9    do hereby certify:

10          That I reported the proceedings in the

11    within-entitled matter, and that the within

12    transcript is a true record of such proceedings.

13          I further certify that I am not related by

14    blood or marriage to any of the parties in this

15    matter and that I am in no way interested in the

16    outcome of the matter.

17          IN WITNESS WHEREOF, I have hereunto set my

18    hand this 15th day of December, 2016.

19

20          ------------------------------
            Eileen Mulvenna, CSR/RMR/CRR
21

22

23

24

25
```

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 247

**A**

**a.m**
5:21
**abandon**
23:12
**ability**
25:18 138:6 148:1
212:2
**able**
35:19 48:2 129:24
139:5 151:3 163:8
167:15 209:20,22
212:10 216:5 226:20
**above-titled**
5:18
**absent**
118:20
**absolute**
137:13
**absolutely**
14:11 79:24 83:2
140:12 146:5 161:13
166:15,21,22 203:1
205:15 209:12 216:23
223:13 225:10 238:15
**abstract**
69:6 78:13
**acceptable**
78:16
**access**
132:24 212:9
**accessible**
142:25 145:14 152:13
**accommodate**
43:22 236:6
**accompanied**
107:14
**accomplished**
58:24
**account**
11:9 16:6,6,10 20:22
21:4,6,8,11,16 22:5
22:10,12 35:25 36:1
37:10 45:16 48:19,20
49:12,18,23 50:21
60:9,13 63:25 65:3,7

65:20,20,25,25 66:6,7
66:11,14 67:19,19,22
67:23 70:14,16 71:5
72:1 76:7,8 81:12
85:23 96:24 102:8
112:22 114:15 115:3
116:23 117:7 121:17
133:16 140:1,2
168:19 170:18 171:2
179:4,12 183:24
184:13,24 191:9
194:11,14,15 195:17
195:21 196:5,12
223:9 228:3 229:15
229:16 233:17
**accountant**
100:19 107:12 111:5
175:16 236:14,15
237:4
**accountant's**
100:4,7 108:22 109:20
**accountants**
103:15 116:1
**accountants'**
103:2
**accounting**
68:7 179:20 182:2
183:19
**accounts**
16:18 18:7 21:3 60:25
61:5 66:19 67:18,25
68:5,5 69:2 120:20
159:8 168:4,21
173:15 180:16 182:10
183:17 185:5 194:19
195:22,24,24,25
196:8 197:14 205:25
206:6 232:21
**accuracy**
30:6 51:11 52:1 54:11
55:9 62:17 63:14
75:23 114:9 123:20
175:3 178:25 187:9
230:21 237:17 240:23
241:21,24
**accurate**

20:17 27:14 31:5 51:13
51:20,21 52:2 121:13
151:15 173:24 175:8
175:11,21 185:24
241:12
**accurately**
53:11,12 61:16 63:24
172:23
**accused**
46:19
**achieve**
140:20
**acknowledge**
83:3 112:25
**acronym**
16:15
**Act**
132:20
**action**
5:18 8:24,24 173:7
190:10
**actions**
7:22 56:4 140:19
165:20 168:15 190:8
215:12 217:24
**active**
146:14 154:18 197:3
**actively**
146:22 153:14
**activities**
207:19 221:10
**activity**
20:22 22:11,20 49:18
149:21,22 156:12
168:3 170:18,21
185:23,25 186:3
195:21 196:4 226:12
226:17
**actual**
11:19 17:18 28:15 41:5
132:6 149:20,22
158:18,24 207:19
223:16 224:14 226:24
**add**
86:11 99:19 109:9,15
131:25 187:22 217:1

230:6
**adding**
161:5
**addition**
25:17 109:10 111:8
146:1 151:24 224:15
**additional**
10:2 43:23 49:5 110:20
112:9 145:24 146:18
153:11 155:14 199:21
208:20 210:21
**address**
43:10 130:5 194:7
217:18
**addressed**
190:1 194:23 215:14
**addresses**
33:25 45:19,22 225:25
**adequately**
78:25 117:23
**adhere**
39:24
**adjudged**
173:11
**adjusted**
163:12 164:12
**adjustments**
74:2,25
**admissibility**
62:8,10 182:16 185:17
**admissible**
31:6 63:2 74:9
**admission**
50:17 61:11 74:17 75:8
**admissions**
234:6
**admit**
170:6 230:20 237:17
**admitted**
63:1 74:6 170:14
**Adv**
1:11 2:3,10,18 3:3,10
3:17 4:4,17 5:3,4,4,8
5:12,13,13,14,15,15
**advance**
23:4 203:23 219:9

235:2,6
**adversary**
5:2,8,11 7:7 10:5 11:10
13:7,8,15 23:25
155:10 158:11 168:14
192:16 194:10 195:5
196:17,21,25 212:18
212:22
**advisory**
17:6,15 28:4,7 148:23
158:20,25 159:7
201:25 211:5 218:22
220:22
**affect**
192:4
**affidavit**
100:4,7 103:24 104:12
106:2
**affidavits**
103:21
**affirmative**
30:21 48:25 50:14 51:6
57:4,6,24 58:23 59:20
62:23 72:25 73:7,15
73:21 74:13 75:11
76:3,11 77:2,13 78:5
78:8 83:13,13,16
84:10,12 85:4 87:2,5
88:7,15,24,25 89:15
91:13,20,21,22 95:10
97:14 106:7,18
107:13 108:23 120:4
120:6,10 132:21
138:1 176:16 238:1
238:25 239:15,17
240:4,22 241:1,6,23
241:25 242:7 244:17
**affirmatively**
106:12 177:4 195:3,9
217:18
**afforded**
152:24
**afoul**
46:14
**age**
62:3

**aggregate**
199:11 200:15
**aggressively**
154:8
**ago**
138:11 197:5
**agree**
13:4 14:9,19 25:10
31:23 36:8 39:14
43:17,18 46:3 47:15
47:21 53:16 57:1 59:2
59:10 62:20 65:15
70:15 72:18 75:5
76:24 77:11 78:22
82:2 83:2 85:6 86:18
86:20,21 91:2 104:16
108:12 109:8 137:17
143:12 169:3,5
174:12 189:21 193:3
201:15 232:6 240:17
**agreed**
89:11 96:8 111:1 114:7
114:9 126:5 185:14
232:23 241:23
**agreeing**
51:12 52:23,24 53:3,5
53:9,10,14,15,22
54:14,14 166:16
**agreement**
36:19 37:13,16,17
38:16 44:8 59:6 60:16
80:16
**agreements**
36:16,21,23 37:22
80:15,17 81:11
**ahead**
26:20 49:8,25 72:8
87:7 204:25 235:25
**air**
152:21
**alive**
61:6 70:17
**allegation**
145:16
**allege**
86:4

**Allen**
2:14
**allocution**
17:25
**allow**
35:12 200:11,14,17
220:6,20
**allowed**
53:17 106:24 107:2
108:14 111:24 145:21
153:22 201:11 231:9
**allowing**
82:23 145:20
**alluded**
219:2
**alter**
32:10 39:13
**alternative**
55:1
**amenable**
129:12 141:12
**amend**
113:3 177:12
**amended**
58:25
**amendments**
80:17
**amount**
21:5,15 31:3 103:15
134:13 179:12 220:11
220:13
**amounts**
46:7
**analogy**
98:20,25 99:4
**analysis**
10:12 14:3 22:10,19
105:17 162:13 184:24
194:24 203:10 207:11
207:25 208:11,14
209:8 215:5,22
226:19
**analyze**
221:5
**and-**
5:6,9 6:13

**and/or**
74:9
**animal**
47:19
**annotated**
156:22 165:10
**answer**
40:8,10,14 46:1 48:12
49:12 50:16 59:1 64:7
64:9 69:22 75:2 77:23
86:3 87:3 88:8 95:25
97:4,6 113:3,8 114:1
121:1,13 132:18
133:10 134:23 140:11
144:7,18 148:1,4
158:5 162:25 167:2
182:25 185:4 187:11
190:3,4 197:12,17
200:16 202:25 203:4
203:8 205:5 206:22
207:2 209:21,22,22
215:10,20 217:8
219:4 227:4,5
**answered**
7:23 78:25 117:23
175:13
**answering**
215:23
**answers**
26:19 31:4 41:5 45:1
51:2 70:18 121:14
234:16
**antecedent**
83:17
**anticipate**
195:6
**anticipating**
89:8
**anxiety**
229:22
**anybody**
156:17 213:12
**anymore**
201:7
**anytime**
50:16

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 250 of 293
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 249

**apart**
160:14
**apologize**
23:4 126:3
**apparently**
130:19 230:22
**appeal**
25:2 85:12 98:4,9,12
99:2
**appealed**
25:3
**appear**
38:4 50:11 182:14
217:13 231:9
**appearance**
27:5,9
**appeared**
206:3 234:19 235:14
**applicability**
13:15 14:20 25:13
227:18
**applicable**
7:8 13:19,23 85:11,15
86:14 91:5 96:23 97:2
117:11,20 121:15
193:4
**application**
14:1 82:1 127:7
**applications**
8:3
**applies**
33:24 91:22 95:10
99:23 123:12 127:25
160:9 228:16
**apply**
7:7 8:11 10:12 14:5,8
14:14 35:14 61:25
94:2,13,21 99:7
113:25 124:2 127:13
127:17 128:7 180:25
221:11 228:13
**appreciate**
60:25 151:2 164:20
**approach**
41:25
**appropriate**

14:19 113:6 136:23
188:3 207:25 208:9
208:12 210:25 213:25
219:15 222:18 227:23
228:7
**appropriately**
153:5 155:19 177:13
**approximately**
5:20
**April**
243:22
**arbitrage**
191:8
**arbitrator**
6:2 7:1,23 8:14 9:4
10:9,20 11:12 12:19
14:25 15:2,12,17 16:1
16:7,14,23 17:10,21
18:9,23 19:10,13 20:1
20:5,7,13 21:11 23:5
23:19 24:7,11,24 25:5
25:23 26:5,12 27:1,8
27:20 28:17 29:2,5,10
29:12,19 30:1,4,9,15
31:15,24 32:6,22
33:20 34:6,25 36:7
37:8,12,24 38:11,15
38:25 39:17,24 40:12
40:19 41:8 42:12,21
43:4,12 44:4,10,15,19
44:23 45:5,17 46:4
47:2,16,24 48:7,17,22
49:7 50:4,24 52:3,6
52:19,22 53:2,7,19,23
54:3,13,20 55:7,17,21
56:1,4,16,21 57:13,16
57:21 58:7,20 59:8,25
60:5 61:2,15 62:13
63:3,9,16 64:1,12
65:4,16,21 66:21,24
67:11,24 68:10,13,19
68:23 69:7 70:2,8,15
70:25 71:7,22 72:5,10
72:24 73:6,12,17 74:4
74:20 75:3,13 76:14
76:17,21 77:19 78:9

78:19,24 79:9,13,21
79:24 80:2,9,20,25
81:4,14,20 82:8,16,20
84:3 85:6,16 86:7,19
86:22,24 87:9,12,19
87:24 88:3,21 89:2,7
89:12 90:1,4,8,15
91:1,3,19 92:6,14,16
92:23 93:4,15,21
94:12 95:3,16 96:6,15
96:17 97:4,16 98:2,15
99:9,14,18,21 100:10
101:21 102:19,25
104:15 105:4,8 106:6
106:14,20 107:5,9,21
107:25 108:5,7,11
109:22 110:2,13,19
110:23 111:4,15
112:6,16,19 113:7,23
114:5,11,14,20,23
115:6,16,20 116:4,19
116:25 117:16,25
118:10,15,19 119:2,7
119:17,21,23 120:8
120:18 121:6,10,23
122:3,6,14,16 123:18
123:23 124:5,8,11,21
126:10,14,20 127:5
127:23 128:8 129:5
129:14,19 130:3,15
130:24 131:2,9,13,17
133:4,12,15,19 137:9
137:23 139:20 142:14
144:8,11 146:7,23,25
147:4,11,22 148:21
149:4,10 150:3,13
151:20,23 155:5,21
156:5,14 158:15
160:5,9,11,19,25
161:16 162:16 163:10
164:2,10,18 165:9,14
166:10,16 167:2,25
168:24 169:5,15,17
169:20 171:4,11,22
172:8,11 173:3
174:12,16 175:25

176:9,12 177:24
178:5 179:1,4,19
180:5,10,13,18,23
181:1,3,20 183:13
184:1,11,16 185:3,8
186:9,13,20 187:3
188:18,20 189:1,5,24
190:13 191:2 192:8
192:18 193:15 195:8
195:12 196:16,20,23
197:8 198:1,7 199:6
200:13 201:1,4,10,13
201:16,20 202:6,14
203:4,12,19 204:1,6,9
205:3,16,19 206:7,13
206:16,24 207:21
208:1,23 209:4,10,18
209:20,25 210:6
211:9,19,24 212:6,17
212:21 213:1,19
214:11,25 216:20
217:7,10 218:14,17
221:8,13 222:2,13
223:3,6 225:14,18,21
227:8 228:10,21
229:12 230:9,13
232:6 233:3,6,10,18
233:24 234:11,25
235:10,17,19 236:1,8
237:9,13,19,22,25
238:6,15,18,22 239:8
239:12,25 240:10,19
240:25 241:3,16,25
242:9,14,18 243:15
243:19 244:3,9,16,20
244:23 245:1,6,8,13
245:15,20,22
**area**
23:10 32:24 223:5
232:13
**areas**
8:19 24:16,20 78:11
95:17 143:7
**arguably**
158:2
**argue**

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 251 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 250

14:4 35:14 160:5
200:1 221:19 225:3

**arguing**
12:3 61:20

**argument**
12:1 14:14 15:8 75:16
98:24 104:6 106:16
107:1 116:14,24
127:19 136:24 137:10
137:24 141:6 142:16
200:7 206:4

**argument's**
34:7

**arguments**
15:7

**arm**
225:5

**army**
163:23

**arrange**
26:23

**arrangement**
201:6

**arriving**
210:17

**art**
117:21 190:18

**Artful**
99:22

**articles**
87:14

**articulable**
212:15

**articulate**
177:18 226:20

**articulated**
127:11 135:20 148:17
148:18 157:7

**articulation**
166:24 172:10

**aside**
34:12 97:5 162:22

**asked**
15:22 26:2 31:25 46:6
48:1 64:4 70:10 71:3
78:19 118:25 138:12

147:13 156:11 167:8
167:10 177:4 180:2
191:12 230:24

**asking**
27:24 32:13,14 42:22
65:18 66:3 79:5 83:11
86:5 98:19 117:17
131:11,20,21 171:7
171:25 174:1,2
181:18 191:22,24
194:6 199:5 201:6,22
204:15 206:7,9
207:23 209:1 210:8
210:10,11 215:18
219:7 224:9 243:11
243:13

**asks**
80:13 114:17 214:4

**aspects**
10:11 134:20

**aspirational**
228:20,23

**assert**
30:21 84:20 152:18
181:10 182:13

**asserted**
48:23 85:22 87:2 88:8
97:13 102:14 181:8
182:6 190:7

**asserts**
181:15

**assign**
220:20

**assigned**
125:22,25 126:2,7

**association**
87:15

**assume**
7:9 9:1 20:1 38:13
66:17,18 82:20,21
92:18 93:18 113:14
152:1 165:17,22
186:15 199:11 202:18
209:10 210:25 216:4

**assumed**
233:10

**assuming**
8:16 38:15 42:8,10
48:9 67:9,11 70:17
81:22 82:22 104:20
222:20 234:12

**assumption**
165:14

**attachments**
108:25

**attack**
199:24

**attempt**
219:19

**attempted**
102:6 127:3 145:11
226:5

**attempting**
149:11,13

**attempts**
226:21

**attention**
181:17,23 204:24,25

**attorney**
25:25 27:10,11,12
40:25 41:7 208:9
214:4

**attorneys**
6:9,20 174:4

**audits**
139:12

**August**
103:8 151:10

**authorized**
18:16 128:22

**available**
134:8,14,17 135:9
141:14,20 142:10,24
145:6 146:21 148:10
149:9 150:6 152:15
152:19 153:8 154:6
155:3,15 157:24
173:23 187:25 188:10
188:17 193:19 198:20
199:18 200:16 209:17
210:19 215:5,25
216:17 217:3,5

219:12 221:2 224:15
224:25

**Avenue**
5:19 6:3,20

**average**
138:18,19

**avert**
9:16 204:23

**avoid**
13:4 14:21 231:24,25

**avoidance**
215:12 217:24

**aware**
30:18 177:2 180:7
183:18 185:5,9,10
198:19

---

**B**

**B**
6:1 8:24,25 16:3 20:2,4
31:3,4 36:12 49:14
50:9 51:5,13,19,20
52:1,3 55:11 60:7,21
62:7,17 63:15,23 64:7
67:19,20 69:20 75:18
85:25 86:15 113:12
113:17 114:10 119:22
123:21 176:24 217:13
230:21 231:23 232:24
237:14,17 238:5,24
239:7,7,10,16 240:9
240:16,23 241:12,22
241:24

**back**
16:21 22:7,13 39:7
42:21 43:11 60:6,7
61:1 71:11,17,19
77:22 94:10 98:16
108:11 112:19 114:20
138:14 147:1,4
154:14 156:3,6 160:4
168:16 174:6 179:10
179:16 190:16 198:11
200:20 204:9 205:25
214:14 231:16 232:3
235:19

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 252 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 251

background
19:9 217:19
backing
14:6
backup
162:1
backward
62:14
bad
153:10 155:2 237:16
Baker
6:8,14 82:22 211:25
balance
21:6,16 162:10
bank
20:23 21:2 22:1,5,15
   51:1,1 60:4 62:11
   66:11 67:22,25 69:10
   94:4 102:5 180:3
   184:13 188:1,3
   194:14 196:2 217:23
banked
72:13
bankruptcy
1:1 117:20 132:23
   142:19 182:4,5
   217:11
banks
29:14
Bar
65:12 71:24
barred
73:25 89:19 90:13
barring
61:11
base
201:23 202:2 205:10
   218:25
based
38:14 43:8 61:22 71:11
   74:10,11 77:5 79:20
   88:20 92:2 95:23
   103:24 120:14 122:25
   123:6,10 124:1 184:8
   184:9 200:18
bases

187:17 204:11 205:13
basic
33:15
basically
20:1 52:16 130:20
   181:4 199:10
basis
36:13 38:5,20 39:6
   85:21 116:17 118:14
   121:19 148:18 160:2
   165:21 170:23 177:18
   184:19 200:10 210:21
   214:12 215:18 235:21
Bates
46:1 234:21
beam
114:25
bear
30:22,22 245:1
bearing
171:6
beat
7:13
began
18:3,5 31:18
beginning
61:21 208:6 213:21
behalf
40:19,20 45:4 86:13
   177:10 207:14 225:5
   227:3 228:3
belief
118:14
believe
11:22 21:3 35:16 68:21
   97:10 103:3 111:3,7
   123:14 127:10 131:6
   135:16 150:15 151:15
   184:9,19 191:23
   197:3 200:24 203:7
   207:3 208:5,19
   215:10 226:4
believes
118:8,13 119:8
belongs
168:17

belt
41:24
bench
232:9
beneficial
45:16
beneficiary
1:16 2:13
benefit
14:17 78:3 174:11
Benjamin
4:20 5:3 30:17 31:13
   68:22 122:6,12
   123:17,21
Benjamin's
133:15
BEREZIN
1:15
Bernard
1:3,7,10 2:2,8,16 3:2,8
   3:16 4:2,3,16,17
   18:16 153:18 175:6
   176:24 196:10
Bernstein
8:22 10:25 12:9,24
   13:13,17 14:16 18:4
   25:3 26:15 32:2 35:3
   44:5 55:1 61:10 75:16
   75:25 85:10 97:7
   98:18 99:12,25
   106:16 126:6,25
   127:1 142:17 155:12
   168:13 169:7 174:24
   185:14 192:11,20
   194:2 199:22 200:6
   200:19 215:7,15
   217:14
Bernstein's
7:5 27:16 38:2,19
   43:14 137:17 190:5
best
18:12 164:19 197:16
better
28:10 54:25 79:14
   232:4
beyond

16:22 38:3 51:19
   120:20 121:16 156:16
   168:21 199:20 210:20
   214:5 216:6,21
   217:24 222:10
big
41:15 208:8
binary
144:17
binder
23:18 47:16 76:20
   235:24
binders
238:8
binding
59:23
bit
31:14 79:23 87:22
black
224:22
blanket
75:10
Blecker
11:22
BLMIS
20:23 28:2,22 70:11
   83:7 84:21 91:17
   102:8 130:6 131:12
   134:21 145:3 148:6
   152:6 154:19 181:9
   195:19 196:8 207:18
   213:11 215:19 220:12
   221:10 223:11 224:14
   225:5,18 226:8 227:2
BLMIS's
21:2 28:9 140:10 196:5
   220:24
block
243:6
blood
246:14
BMLIS
135:24
board
119:10 224:17
boards

239:19
**body**
132:22 197:23
**boilerplate**
31:20 49:20 74:21
**booked**
243:4
**books**
18:22 54:8 61:12
134:14 140:10 146:21
167:12 168:18,20
169:10 170:19 176:6
179:16 224:20
**bottom**
53:8 162:14 224:2
**box**
152:10 154:1
**Boyer**
2:20,23
**Brady**
172:23 173:4 206:8
**break**
79:19 80:5 122:10
220:15
**breaking**
222:20
**briefing**
215:14,15
**bring**
29:7 76:19 127:4
**bringing**
181:23
**brings**
181:17
**broad**
42:24 215:3 224:9
**broken**
218:21 230:12
**brought**
126:4 233:14
**Bruce**
2:22 202:20
**Bruno**
3:20 96:25 115:1
116:12,20 117:8
123:1,7

**Bs**
68:3 184:8
**buckets**
220:16
**building**
181:22
**bulk**
141:15 231:12,15
235:7
**bunch**
216:12
**burden**
30:22 157:10 176:17
183:5,8 202:21
215:11
**burdensome**
172:5 202:16
**burdensomeness**
108:16
**business**
28:4,8,10,12,14 42:8
45:22,23 61:13 62:4
140:5 148:23 170:5
172:19,19 174:22
207:12 218:22,23,24
220:22 222:21 238:10
**buy**
165:15

———————————
**C**
———————————
**C**
6:6 246:1,1
**cabinets**
95:18
**cabins**
173:8
**CAD**
16:15 195:13
**CADs**
207:5
**calculated**
51:7 57:8 120:3
**calculation**
12:7,16 21:7 52:14,16
53:4,15 67:20 69:25
**calculations**

18:6 59:16
**call**
7:4 10:7 27:16 175:3
192:25 217:22 242:12
244:15
**called**
145:7 219:15,22
**calling**
136:5,6
**calls**
137:12
**capacity**
2:12,21,22 4:7,8,9,10
4:11,12 39:16
**capital**
96:24 109:1 111:10
**caption**
1:23 129:17
**car**
85:25
**careful**
59:13
**carefully**
134:18 141:9
**CARLISLE**
6:12 90:9 103:3,10
124:17 125:10,14,24
126:11 236:14,25
237:11 238:13,16,20
**carried**
139:23
**carries**
177:15
**carry**
170:12
**cart**
15:13
**carve**
192:15
**carve-out**
196:17,18
**carved**
95:16 192:10 196:22
**case**
9:8,14,20 10:6,12,15
10:18 11:24 13:21

14:2 15:19 26:2 27:2
27:2 30:16,17,17 31:7
38:4,9,19 39:10,15,19
47:3,3 54:21 55:15,18
55:19 57:11,13 59:19
63:7,8 72:22 85:11,15
89:19 94:7,18,20 95:9
97:11 98:1,7,14,16,16
98:21 99:3,6,7,13,17
99:23 101:8,19 103:6
104:5 105:23 106:8
106:10,11,13,22
107:1,6 113:25 114:4
115:1 119:21,25
123:12,16,17 124:13
125:7 126:2 127:16
128:5 130:20 133:17
133:23,24 134:6,7,9
135:17 136:23,25
137:3 151:6 153:10
156:8 157:25 158:9
163:21 165:1 167:9
168:1,12,22 169:1,16
169:18,20 170:21,22
171:7,10 172:12,16
173:12,13,14,18,19
175:5 177:23 187:23
189:10,15,20,22
195:6 202:4,13,23
203:11,24 205:2
211:25 213:15 215:6
215:9,10 217:20
227:17 230:3 241:15
**case-specific**
20:10,11 23:15 127:20
**case-wide**
22:23 157:25 187:23
**cases**
7:14 8:6,12 9:7,21,25
10:17 11:8 13:18 14:8
14:10,21 15:5 16:4
19:17,21 23:8 25:12
25:14,17 30:14 32:4
35:5,10,14 41:12,14
42:25 53:17 59:25
60:16 62:2 63:14

67:14,17 68:11 73:8
89:14,16 91:6 94:9,15
94:16,21 99:13 100:3
101:10,23 103:4,6,11
103:12,22 104:11
106:21 114:9 124:16
125:20 126:4 127:11
127:17,22 128:24
137:4,6,8 158:10
170:16 177:2 178:7
189:8 198:11 205:17
213:5 217:23 227:21
227:22 228:8,13,15
228:17 229:9 230:8
242:25 245:3
**cash**
11:20 12:5 20:21 22:20
53:10,12 168:3
170:17,21 185:22
196:4
**cashed**
179:11,24 180:1 182:1
184:20
**catch-all**
94:24
**categories**
139:15 145:9
**category**
27:21 70:23 81:13
139:25 229:24
**caterer**
65:12
**causes**
229:22
**caveat**
49:15 79:16 90:9
**caveats**
91:4
**cents**
224:4,5
**certain**
8:9 11:3 43:22 46:19
59:12 62:18,21 63:5
95:17 127:22 148:1
151:14 154:12 187:8
196:11 199:4 220:11

231:13 240:25
**certainly**
24:2 86:9 94:20 135:25
156:16 158:4 160:23
173:21 205:6 208:7
216:24 237:2
**certainty**
22:17
**certifications**
42:1
**Certified**
5:21,23
**certify**
246:9,13
**Chaitman**
5:7,10 6:19,21 7:19,25
8:25 9:18 10:3,16
11:21 12:3,11,23 14:9
14:15 15:6,15,18 16:2
16:8,21 17:3,11,24
18:2,15 20:6,10 21:23
23:13 24:3,22,25 25:6
25:11 26:22 27:4
29:10,11,21 30:2 32:5
34:25 35:1 37:18
39:18 42:6 43:22,25
45:25 46:13 48:14,18
50:25 51:10 52:24
53:5,9,20 54:2,5,16
55:4,13,19,25 56:3,15
57:5,11,15,19 58:25
59:11 60:3,19,24 61:3
62:9,15 63:5,13 64:19
64:23 65:2,18,24
66:15,23 67:16,21
68:14,20 69:4 70:20
71:14 72:3,12 73:3,19
73:23 74:3,14 75:4,6
76:10,19,24 77:11,15
78:1,7 81:2,5 82:10
82:18 83:24 84:14,23
85:2,7,12 86:12,18,20
88:17 89:1,4,21 90:3
90:6,16,22 92:7,11,21
93:20 94:1 95:18 97:9
97:10,25 98:3,8 99:1

99:11,15,19,24
100:21 101:9,15
102:5,20,23 103:9
104:17 105:3 106:11
106:14 107:2,17,22
110:24,25 112:11
113:15 114:7,23
115:1,10 116:21
117:1,5,7 118:18,25
119:25 120:22,25
121:4,20,25 123:4,9
123:24 124:9,14,23
124:25 125:4,8,18
126:5,16,21 128:9,10
128:13,16,25 129:7
129:13,16,25 130:4
131:1,4,16 132:18
136:17 137:21,25
140:25 143:9 144:2
144:24 146:6,15,24
147:12,18 149:20
150:11,14 151:1,5
152:16 153:7,13
154:10,16 156:3,10
159:1 160:7,10,18
163:20 164:15,19,20
165:12 166:21 167:7
169:8,24 170:3,16
172:7 173:3 174:15
174:21 176:4 177:9
177:17 178:15,21
179:8,17,22 180:1
181:3,13,22 182:7
183:20 186:17 187:20
188:6,19,21 189:3,11
190:3,20 191:6
192:11 193:3,5,17,22
196:23 197:4,20
198:5,8 199:19 201:2
201:3,8,12,15,21
202:10,23 203:17
204:14 205:5,21
206:12,14,19 207:1
210:7,23 211:18,23
212:4,8 213:9,13
214:8,12 216:2,15,24

218:16,18 219:7,24
220:3,16 221:12,14
223:1,4,7 224:15
225:1 229:3,6,13
230:10 231:12 232:19
233:7,11,19,22 234:5
234:19 235:4,18
237:18,21,23 238:4
239:1,5,9,24 240:2,8
240:14,21 241:2,17
242:8 243:3,18,20,23
244:1,12,24
**Chaitman's**
9:7,24 17:19 28:6
32:25 33:7 58:16
127:2 142:16 147:6
155:25 158:10 161:15
176:21 177:2,25
197:9 205:12 213:5
213:23 227:22 228:8
231:7 237:10
**challenge**
12:7,18 21:21 56:24
86:10,14 110:7 111:3
161:24 177:19 185:17
219:9
**challenged**
116:6 194:3
**challenging**
12:16 21:13 153:14
**chambers**
27:17
**change**
100:1 129:2
**changed**
9:23 186:11 217:21
220:13
**changing**
88:18
**characterization**
17:20 209:9
**characterize**
187:4
**characterized**
168:13 194:21
**charade**

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 255 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 254

189:23
**charged**
56:8 179:12
**charging**
57:8
**chase**
21:25 170:25
**check**
11:19 26:10 65:11 67:1
71:17 72:1 84:15
179:10,24 180:1
182:1 184:20 196:13
214:15 231:16,17
**checks**
12:5
**cherry-picking**
152:18
**Chicago**
224:17,19
**chief**
17:8
**Choir**
115:22
**choose**
19:16
**chose**
136:8 164:23
**chosen**
30:24
**Circuit**
198:12 200:18
**circumstance**
25:24 65:9 142:18
**circumstances**
13:20,24 14:10 67:5
69:19 127:13 213:25
**circumvent**
36:6
**civil**
140:18,23 173:6 206:8
**claim**
11:23 13:14 35:5,12
91:14 97:21 141:4
143:8 159:25 177:12
193:10 199:11 201:11
217:23

**claimants**
193:4
**claims**
11:6,23 13:6 16:12
32:2 69:10 73:24 76:5
98:22,24 99:1 133:24
134:6 135:16 158:3
160:1,1 168:23 171:6
176:18 182:18 185:1
190:7 193:9 196:19
197:22 198:15,16
200:2
**clarification**
109:9
**clarify**
111:7
**clarifying**
88:19
**classic**
137:12 142:22 212:6
**CLAUDIA**
4:8
**claw-back**
12:12,15 13:1 15:5
32:4 165:20 190:8,10
191:15 192:1,9 193:5
193:24 194:3,5
**clean**
111:4
**clear**
23:19 38:8 40:6 49:1
53:23 58:2 63:20
76:10 77:12 80:12
81:8,19 116:15 118:2
218:13 219:16 223:13
224:8 241:9
**clearinghouse**
224:3,4
**clearly**
31:7,21 70:19 90:10
146:19
**click**
199:17
**client**
8:8 16:12 32:25 176:4
**clients**

28:6 35:16 51:15 58:16
71:18 86:13 92:19,21
97:22 143:20 169:8
175:14 176:21 177:10
178:1 179:9 197:9
205:12 207:1 213:23
221:23 229:19 231:7
231:23,25 237:10
240:17,24
**clients'**
205:25 206:3
**close**
22:17
**closed**
103:12 104:4
**closing**
194:16
**club**
42:14 47:20
**Cohen's**
237:1
**coherent**
187:2
**colleague**
61:23
**colleagues**
166:5
**collectively**
215:4
**Collura**
10:9,22 18:25 19:4,19
20:7,14 22:9 23:6,14
183:23 187:6 191:13
213:7
**Collura's**
20:19 173:17
**Column**
52:25 53:7,11,13 65:8
**columns**
52:7,13,23 55:10 63:24
75:17 86:15 113:17
114:12 123:21 241:11
**combination**
184:12
**come**
30:3 43:11 54:10 61:13

72:22 143:7 161:3
213:4
**comes**
30:2,7 86:25 98:16
101:13 106:15 200:22
**comfortable**
49:3
**coming**
15:19 25:22 151:17
186:5 196:4 204:24
212:12
**commences**
143:14
**commencing**
5:20
**commercial**
98:21 198:25
**committed**
153:19
**committee**
199:1
**communications**
117:13 118:6 139:14
143:19
**company**
139:13 159:6
**compared**
22:15 169:3
**comparing**
21:7
**compel**
5:1,7 29:3 30:14
124:10 125:21,22
126:17,18 143:4
147:21
**compelled**
120:11 121:5 182:13
**compelling**
170:23 229:25
**compensation**
129:1
**competent**
49:17
**competing**
182:25 243:24
**compilation**

136:10
**compiled**
145:5
**complaint**
16:3 20:5 35:8 46:17
    46:22 48:16 55:12
    87:3 88:9 91:14 98:22
    107:3 113:12 186:16
    221:24
**complaints**
8:7 35:3 182:8 184:23
**complete**
21:1 23:14,20 41:15
**completely**
141:6 168:8 186:25
**completeness**
30:5 55:10 86:12,14
**complex**
135:7
**complexity**
203:1
**complicate**
68:6
**complicated**
15:20 31:12 54:19
    128:19 227:9
**complicating**
56:5 156:7
**complied**
117:19
**component**
20:15
**compos**
232:11 234:13
**computer**
162:2 226:14
**computer-generated**
223:16
**concede**
51:11 62:17 176:2
    240:21 241:21
**conceded**
54:11 63:14 167:18
    168:3 170:17 228:3
    238:24 239:3,6,7,9
    240:9,22

**concedes**
106:14 238:5
**conceding**
51:19,21 78:2,3
**conceivable**
150:7 178:8
**conceivably**
45:25 75:19
**conceived**
141:19
**concept**
184:7
**conceptualize**
157:19
**conceptually**
105:10 169:10
**concern**
33:7 40:3 86:16 102:18
**concerned**
39:6 102:2 164:24
**concerning**
78:20 81:11 102:5
    111:12
**concerns**
14:24 56:17 60:15
**concessions**
242:6
**concluded**
142:17 245:24
**concludes**
79:10
**conclusion**
153:15 187:18 207:13
    208:17 215:19 227:1
**conclusions**
141:23 142:8 188:15
    208:7 210:13,18
**conclusive**
218:8
**condensed**
208:7
**conduct**
170:24 213:14
**conducted**
28:15 207:11
**conducting**

161:12,13
**confer**
14:18
**conference**
7:4 236:20 242:12
    244:5
**conferences**
55:2
**confession**
37:21
**confident**
17:21 99:15 161:20
**confidential**
102:16
**confidentiality**
101:22 102:14
**confirm**
111:21,25 123:19
    160:20 222:10
**confirmation**
180:4
**conflated**
218:11
**confusing**
50:25
**confusion**
13:4 105:15
**Congressman**
199:3
**conjecture**
168:10 212:14
**connected**
226:10
**connection**
29:21 105:20 131:7,23
    134:12 135:23 136:16
    182:3,4 188:10,14
    189:12 210:13
**consequences**
67:7
**consider**
149:9 155:13 177:12
**considerable**
172:4
**considerably**
213:24

**consideration**
155:4 157:16
**considered**
39:11 104:5 141:15
    143:2 153:9 162:11
    162:12 168:11 188:14
    208:15,16 227:19
**considering**
157:20 223:19
**consistent**
18:21 127:10 209:13
**consistently**
136:21
**Consolidated**
1:5 4:2,15
**construct**
184:8
**constructed**
152:21 184:22
**construed**
109:19 111:2 210:10
    218:2
**consult**
112:7
**consultants**
174:5 184:25 221:4
**consulted**
94:24
**contain**
141:9 194:17
**contained**
227:7
**contains**
141:14 161:21 165:7
**contemplate**
107:10
**contemplates**
10:25 75:23
**contend**
88:6 91:12,13 138:2
**contending**
61:22
**contends**
28:13
**content**
69:2

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 257 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 256

contention
11:16 23:25 107:7
   139:7 182:6
contentions
13:1
contest
53:6 62:9 241:14,18
contested
29:25 64:2
contesting
51:25 62:7
context
19:9,20 145:18 146:15
   157:17 172:12 186:6
   186:22,24,25 189:9
contexts
128:7
CONTINUED
1:23
continues
76:21
continuing
147:23
continuous
155:23
contrary
211:22
control
232:25
controls
57:25
conversation
109:24 110:3
converse
206:15
conversely
104:22
convertible
148:24
conveyance
52:16
convince
75:14
cool
44:5
cooperated

154:23,23
copies
235:15
copy
17:25 19:15 44:17
   148:8 233:6 242:3
core
137:14 140:1 163:25
   195:17 202:12
correct
9:3 10:10 11:25 13:3
   16:19 22:3,4 38:12
   52:18,21 54:2,5 55:24
   66:4 73:18,22 76:15
   77:14 80:19 90:15
   93:19 122:18 123:22
   123:23 124:6 146:8
   148:25 149:16 153:2
   158:15 168:5 169:23
   176:14 181:18 183:6
   184:9 193:1,2 195:14
   204:18,19 205:18
   209:13 222:2 235:18
   235:20
correction
176:24
correctly
140:7 225:2
correctness
86:11
correspond
80:22 176:3
correspondence
194:17 196:9
cost
157:9
costs
162:9
counsel
8:25 139:19 211:12,13
   242:3
counsel's
192:15
count
179:23
counted

56:11 68:14,16
country
33:18,23
COUNTY
246:5
couple
7:2 197:5
course
9:19 30:23 32:17 71:6
   97:13 157:22 160:7
   234:17 238:18
court
1:1 17:12 18:15 25:4
   34:9,10 35:6 36:4
   41:3 46:15 106:12
   117:20 128:21 132:23
   141:16 177:14 182:19
   182:23 183:9 193:3
   198:3,13 221:24
   236:18
court's
204:25
courts
198:19
covered
223:1
Cravath
36:18
credit
21:4,14 74:1 77:9 97:8
   97:13,22 106:18
   107:13,19 153:17
   193:13
credited
56:8 76:8 153:21
creditor
132:22
criminal
17:9 172:12,15
criminally
175:9
critical
231:14
cross
45:20
cross-examination

110:8
cross-motion
5:7 227:14,15
cross-moving
127:14
crude
20:16
Crupi
26:1 94:17
CSR/RMR/CRR
5:21 246:7,20
curated
134:19 141:9
current
33:25 45:19,21,22 82:6
currently
23:8 27:24 85:14
   103:12 128:5 144:21
   146:1,13 153:10
   154:3 185:18 222:11
   225:8 239:20
CUSIP
227:9
custodian
116:23
custody
154:19
Customarily
230:14
customer
11:18,20,22 12:6 21:8
   21:15 22:11,16 130:7
   132:3 152:24 158:25
   159:7 171:2,8,17
   181:9,10 185:23
   188:8,23,24 190:15
   195:18,21 196:7
   200:2 202:5 207:15
   225:16 226:2,8,16,22
   227:3
customer's
188:7
customers
12:2 17:6 28:7 156:12
   158:20 159:14 168:21
   174:14,19,23 175:1

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 258 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 257

177:21 186:1 187:8
191:3 193:7 202:1
211:5 225:6
**customers'**
11:4 21:4 173:20
**cut**
67:1 142:14

_____

**D**

**daily**
159:10
**data**
134:18 135:2,8,17
141:12,18 142:5,12
144:14,22,22 145:13
146:1,5,11 147:19
148:10 154:20,21
187:24 188:9,15
217:2 219:17,20,22
219:23 220:15,20,23
222:11
**database**
163:8
**date**
16:21 21:6 22:6 47:11
61:1 62:1 90:5 141:25
143:13 146:9 148:1
152:14 161:3,17
163:19 164:11,13
171:20 225:19 237:3
239:23
**dated**
151:9
**dates**
9:12 46:7 54:15 55:24
105:23 242:16,21,24
243:1,4,7,12,14,16,25
**dating**
138:14
**DAVID**
6:21
**day**
69:3 177:6,15 209:15
220:12,13 222:7
223:24 244:18 246:18
**day-over-day**

220:9
**days**
58:13 89:19 90:10,24
90:25 93:25 95:5 96:9
96:11 109:7 238:10
238:11 244:2
**dead**
17:10
**deadline**
163:11 203:24
**deal**
13:13 29:13 30:4 40:3
40:12 54:20 55:18
60:10 68:25 78:12,23
89:12 98:18 109:3
119:2 124:15 125:12
125:15 127:24 128:3
163:18 169:22 180:21
198:1 210:2
**dealing**
66:25 156:15 162:4
163:5,16 171:23
212:2 222:15
**deals**
72:12 92:3 100:10
169:9 205:19
**dealt**
80:25 155:21 156:17
156:18 180:15 192:21
**Dean**
6:11 66:2,4 235:18
**death's**
232:11
**debt**
83:17
**debtor**
1:5,8 132:22 170:20
224:20
**debtor's**
146:20
**debtors'**
18:22
**debts**
47:5
**deceased**
115:2

**December**
5:19 15:6 22:1 37:22
49:19 60:3 62:15
71:16 143:20,24
146:17,23 181:15
246:18
**decide**
177:14 216:9
**deciding**
95:8
**decision**
14:1 24:17 26:1 27:1,7
47:8 178:11 184:3
200:7
**decisions**
25:2
**declaration**
101:13
**declarations**
101:5,10 103:14
**declared**
26:16
**deem**
189:21
**deemed**
189:14,14
**deeper**
8:16,17
**defendant**
2:7,15,24 3:7,14,21
4:21 16:9 55:8 56:24
97:12,19 103:25
105:8,13,25 106:23
109:25 110:6 112:1
113:18 135:21 176:7
182:24 188:12 190:9
194:3 196:10 228:2
232:16,16 236:16
**defendant-specific**
10:3
**defendants**
1:20 4:14 6:20 10:14
11:7 12:12,15 13:1,8
25:18,20 30:21 31:1
33:1 38:17 41:6 56:7
57:9 63:10,21 69:13

69:15 77:9 83:14
84:20 91:17 92:4
123:3,20 126:21
128:14 134:15,15
135:14 136:14 137:5
152:20 168:2 173:14
190:8 191:16 192:9
193:6,24 195:6 196:6
199:25 214:13 217:21
228:1 230:15 240:3
241:10 242:4
**defendants'**
51:7 57:8 77:9 87:2
88:8 107:23 108:18
111:12 116:18 120:2
192:1 223:9
**defending**
7:21
**defense**
51:6 57:4,6,17 62:23
72:20 73:16,22 74:13
75:1,11 76:4,11 77:3
77:13 78:8 83:14,16
83:18 84:10,19 85:4,9
91:13,20,21 97:6,14
98:7,13 106:7,18
107:14 108:23 120:2
120:4,6,10 192:14
199:23 200:5 242:1
**defenses**
30:22 48:23,25 50:14
57:24 58:24 59:20
72:25 73:7 77:7 78:6
83:13,19 84:12 87:2,6
88:8,15,24,25 89:18
91:22 95:11 102:13
133:1 134:6 135:17
171:7 238:1,25
239:15,17 240:4,22
241:1,6,23 242:7
**defensible**
135:20
**defer**
208:19
**deferring**
49:4

deficient
70:19
definition
33:20 85:8
definitive
40:14
definitively
153:13
defraud
217:16
delivered
94:6 199:3
delve
104:6
demand
88:18,22 124:15 130:2
  157:16
demands
125:19
demonstrating
149:21
denials
88:7,14
denied
11:23 193:9 228:6
denies
182:24
deny
30:24 143:5 214:6
  222:24 227:11
denying
81:24
DePascali
17:17
depend
148:2
depending
34:19,22 41:20,21 79:6
depends
7:17 179:19 234:16
depose
105:6,12 118:21,23
  120:16 233:12 234:2
  240:6 241:7 242:11
  243:7
deposed

150:9 213:5,6,7 230:14
  230:16
deposit
16:5 49:11 50:21 56:9
  64:5,6,10,15,16 69:24
  86:5 112:21,25
  113:19 114:15
deposit's
64:14
deposited
65:19,25 66:11,13,18
deposition
16:24 18:16 78:11
  136:1 145:21 146:16
  147:9,10 164:14
  212:22 213:11 233:21
  233:25 234:17 235:16
  235:23 238:10,11,14
  242:22 243:4 244:2
deposition's
147:7
depositions
5:11 136:2 210:16
  229:4,7,8 231:3,6,13
  234:8,12,14,23,24
  242:17,20 243:12,16
Depository
139:13
deposits
16:4 49:13 50:8,15
  51:4,12 52:11,25
  53:10,22 54:6 59:22
  62:6,21 64:12 68:4
  74:15 77:10,18 78:21
  83:25 84:5 85:22
  113:11 115:18 116:5
  169:11 177:7,22
  187:10 231:18 233:23
  235:6
described
42:23 58:11 81:17
description
164:22
designation
105:20
desirable

140:16
desire
108:18
despite
180:10
detail
97:1 119:12 207:9,18
detailed
24:17 208:18
determination
102:11 198:10 241:5
determinations
183:9,12 185:1
determine
134:3 162:19,23
  182:19 183:10
determined
163:14 214:13
determining
141:23 200:11
devastated
138:22,22
DEXTER
6:22 186:11
dhunt@bakerlaw.com
6:11
DIANE
2:20
dictate
127:20
died
17:11
differ
9:12
difference
84:3 220:10
different
7:15 9:11 13:24 24:20
  24:20 28:2,23 38:7
  47:19 68:1 78:9 84:11
  87:17,21 123:13
  124:3 129:21 131:10
  139:14 142:18 157:8
  168:25 177:3 186:10
  190:14 201:14 203:16
  207:17 223:15 224:6

236:20
differently
171:12 230:1
difficult
62:19
DiGiulian
3:20 5:4,15 30:17
  68:22 96:16,19,25
  101:24 115:2 116:12
  116:16 117:8,14,14
  122:9,19 123:7 176:1
  176:4 178:24 232:19
  237:19 239:3
diligently
154:8
DiPascali
17:7 150:14 159:23
DiPascali's
150:18 202:8
direct
34:21 161:14 238:7
directed
93:23
directive
91:5
directly
26:17 76:12 96:4
  160:22 208:11 233:1
  233:4
disagree
25:9 100:18 116:4
  140:24 188:11
disagreeing
208:23
disagreements
118:6
disagrees
76:7 149:3
disallowed
160:1
disallowing
81:15
discernible
220:16
discerning
132:12

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 260 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 259

disclose
35:21 158:14 167:11
  172:25 175:20 182:22
  182:23 203:23 209:2
  211:7,20
disclosed
109:18 141:13 148:5
  176:23 203:10 210:19
disclosing
35:17 211:15
disclosure
9:12 10:8 102:16
  105:23 108:19 136:15
  141:20 157:17 195:15
  204:21 210:21
disclosures
70:13 105:18 167:22
discoverable
132:16 133:23
discovered
236:18
discovery
5:1,7 8:9 9:16 10:19
  12:14 13:18 15:8
  19:12 30:24 31:8,10
  35:7,11 36:10,13 44:2
  44:3 46:16,21 48:15
  64:20 69:23 78:3,4,11
  78:17 94:25 95:15
  98:25 103:11 104:3
  104:10,14 105:10,11
  107:3 127:15 128:11
  130:2 134:1 135:7
  136:22 137:7 140:18
  141:2 146:16 147:17
  148:6 155:8 157:8
  163:6 173:6,9 177:3,5
  178:6,10,11,13 180:2
  180:19 189:11,16
  193:18,23 194:5,9,12
  195:2 196:14 197:10
  200:12 204:15 212:23
  212:24 213:3,4,18
  215:4 216:13 218:11
  228:6
discredit

110:7
discredited
160:1
discuss
15:10 127:25 244:6
discussed
93:15 185:13,22
  209:16 237:20
discussing
120:1 134:11 177:5
  222:7
discussion
8:22 25:19 28:22 30:10
  36:25 95:24 108:10
  112:18 126:15 133:21
  147:3 167:4 204:3
  237:14 238:25 239:18
discussions
103:24
dishonestly
165:22
disk
152:9 154:1
dismiss
98:23 200:8
dismissal
221:24
dismissed
32:2 39:19 85:10 98:24
dismissing
106:13
disparagingly
166:1
disprove
156:1 159:21
dispute
31:2 49:13 50:8,23
  51:4 52:11,12 55:9
  60:21 62:6 65:6,22
  113:10 125:24 147:20
  202:6 233:19,23
disputed
177:9 231:22
disputes
9:16 19:12 204:23
  218:12

disputing
48:19 50:10 54:4 65:22
  113:16
distinction
142:23
distributed
34:23
distribution
198:21,23
district
1:1 25:4 97:18 98:17
  98:23
dive
57:18
dividend
11:17
dividends
17:1 196:11
divorced
189:8
divorcing
186:25
doctor's
232:10
doctrine
132:9
document
8:2 39:3 79:18 80:4,13
  80:15 81:9 82:4,19
  83:4 84:14,19 88:18
  92:15 93:3,12 95:9
  100:11 117:18 118:11
  121:21 122:8,20
  123:14 124:15 125:18
  125:19 130:1 134:4
  134:25 151:9 214:10
  234:20
documentary
188:24 191:18,25
documentation
69:9 104:9 106:3
  187:23 215:24 219:12
  220:5
documents
32:18,24 33:3 37:2
  39:2,5 40:1,7,10

41:22 45:25 46:1
47:17 49:5 77:18
78:16 80:14 81:21,23
82:11,12,15,24,25
83:5,10,23 84:13 86:6
87:4,8 88:6,11,12,16
88:24 89:17,20,22,23
90:11,17,19 91:12
92:5,9,12,19 93:5,6,7
93:13,23 94:10,17,24
95:1,2,12 96:1,3,4,8
96:10 100:15 101:14
102:22,24 103:20
104:21,24 105:9
107:15 109:10,15
110:11,21 112:15
121:22 122:24 123:5
123:10 126:19 130:11
130:12 133:5 134:20
135:15 136:8 137:2
139:10,15,18 140:1
142:24 143:24 145:4
145:9 147:24 148:9
151:7,11,24 152:6,13
153:7 154:14 164:22
164:25 165:2 166:6
181:19 185:25 187:17
189:17 194:16 195:18
197:11 202:1,12
205:10,11 206:9,17
206:20,23 207:2,4
208:15 209:3,11
214:21 216:21 218:24
219:18 224:13 225:8
229:18 232:3 233:8
Dodger
99:22
doing
21:1 27:23 36:17 43:15
  69:6 100:4 101:3,4
  147:13 151:16 159:9
  163:7 175:17 189:7
  223:20 224:24
dollar
153:4 218:20
dollars

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 261 of 293
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 260

21:12 157:23
**DONALD**
4:20
**door**
39:7 149:25 195:16
232:11
**double**
56:11
**double-sided**
44:18
**dozens**
174:5
**drabs**
200:22
**drafted**
93:10 181:6
**drafting**
58:4
**driving**
66:3
**drop-dead**
90:5
**dropping**
240:4
**DTC**
144:23,25 145:3,7
146:3,10 154:10,18
155:21,24 160:14
219:3,22 220:8,14,23
220:25 221:16 224:16
226:9,10,23
**Dubinski's**
149:2
**Dubinsky**
8:23 9:15,22 19:4
203:5 204:17 205:8
205:12 207:8 210:14
211:16,19,21 213:6
214:6 215:2 216:3,4
216:21 217:8 225:25
226:5,18
**Dubinsky's**
28:21 202:20 215:22
216:10 227:6
**dubious**
197:16

**due**
204:22 238:16
**Dusek**
3:6 5:15 130:20 131:5
237:21,23 239:9,12
239:13 241:13
**duties**
132:1
**duty**
138:1,3

_____
E
**E**
6:1,1,6,6 246:1,1
**e-data**
135:12 138:8,10,13,25
139:1,17,22,25 140:6
140:11,12 141:8
144:6 150:22 151:24
160:16 164:23,25
165:2 166:14 209:15
216:1
**e-discovery**
163:6
**e-mails**
144:9
**earlier**
56:25 59:16 68:4 81:17
100:15,17 127:11
145:15,25 147:23
149:23 153:15 161:22
177:6 209:14 216:25
218:5 222:7 228:12
**early**
9:15 17:13 18:13 21:21
21:21,22 22:6,14 60:6
60:8 150:18 154:2
202:24 205:1
**earned**
101:25
**easier**
55:13 124:14
**easily**
7:16 144:19 220:15
**easy**
28:1 188:4

**ECF**
18:25
**EDWARD**
6:16
**edward.jacobs@bak...**
6:17
**Edyne**
2:12 229:14
**effect**
18:21 39:12 81:14
100:19 173:4 206:8
206:22
**effectively**
57:2
**effectuated**
76:5
**efficient**
231:8,10 234:9
**effort**
92:18 140:19 149:7
157:20 160:22 161:10
162:19 163:13,20
180:11 204:22
**efforts**
135:5,14 222:9
**ego**
39:13
**egos**
32:10
**egregious**
104:1
**eight**
94:5
**eight-year**
174:6
**Eighth**
5:19 6:3
**Eileen**
5:21 246:7,20
**either**
9:7 14:13 36:10 58:11
68:16 70:13 75:1,21
84:11 93:10 106:11
139:24 161:4 174:17
177:12 203:15
**elderly**

229:19
**Electronic**
134:18
**element**
158:3 215:9
**elements**
81:25
**eliminated**
80:6
**eliminates**
56:17 65:13
**emotionally**
138:22
**employee**
130:3,6,12 133:13
134:5 135:1 136:9
211:13
**employees**
114:19 131:12,22
133:7 135:24 210:11
212:11 213:11 214:2
223:2
**encountered**
158:18
**endeavor**
153:25 164:5 222:19
**endeavored**
152:4 216:16
**ended**
190:25
**enforced**
51:15
**engage**
222:18
**engaged**
135:4
**enhanced**
142:20
**enlarges**
141:1
**enormous**
142:4 207:18
**enter**
14:18 57:16 106:24
240:15 242:5
**entered**

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 262 of 293
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 261

60:17 142:3 227:16
245:10,12
**entering**
227:21 241:10
**enters**
119:25
**entire**
115:21
**entirely**
20:17 105:16 219:15
**entirety**
30:25 109:18 132:15
**entitled**
8:9 35:16,24,24 36:5
36:10 37:25 51:3
95:23 97:8,12 100:14
100:18,23 107:23
111:11 133:2 135:21
136:15 151:6 164:21
165:5 167:21 199:10
205:5 206:21 208:19
212:5 221:23
**entitlement**
72:14
**entity**
33:9,12,14,16,17 34:19
49:6 70:18 71:3
**entries**
130:7
**entry**
188:23 191:1
**enumerated**
134:2
**envision**
75:24
**equal**
159:9
**equally**
112:5 185:9
**equity**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 160:2
184:24 198:2 214:14
**equivalent**
42:14 80:16 83:15
**erred**

98:18
**error**
167:12 171:14 174:9
174:18 176:25 179:14
179:15,23 180:6
181:8,10,16 182:21
182:22,24,25 184:7
**errors**
31:22 175:20 176:22
177:1 178:3,7 180:20
182:20 185:6,11
**ESQ**
6:11,12,16,21,22
**essential**
132:25
**essentially**
20:18,25 28:20 90:5
105:25 143:1 170:25
**establish**
34:10 214:19,21
240:11
**established**
33:16 36:4
**establishes**
34:3
**estate**
2:13,20,22,23 5:14
132:2
**ethical**
165:17
**EVELYN**
1:15
**event**
156:23
**everybody**
52:19 130:22
**evidence**
18:19 49:17 74:18 75:9
75:21 95:13 106:24
141:22 142:11 152:19
170:10 183:1 188:24
191:9,19,25 194:18
206:5 207:13 211:21
216:5,12 223:14
224:14,24 225:10
227:1

**exact**
144:25 145:8 207:10
220:14 240:15
**exactly**
19:10 20:6 32:19 50:1
63:18 64:20 79:4
99:16 100:5 113:22
128:2 142:13 157:4
202:20 209:6 215:21
**examinations**
210:16
**example**
8:21 57:4 71:25 74:21
77:6 81:23 95:17
109:23 140:4,9
183:17 184:17 195:10
198:15 211:11 233:5
237:15,16 243:19
**exception**
170:6 172:20
**exceptions**
61:14 231:2
**exchange**
83:7,15 84:21 159:11
223:21 224:18,19
**exchanged**
189:17,18
**exclude**
24:5
**excluded**
191:15
**excluding**
133:19
**excuse**
32:6 125:5
**executive**
207:21,24 208:17
210:18
**executrix**
2:13
**exemplar**
19:21
**exercise**
102:4 222:15
**exhausted**
167:4

**exhaustive**
189:16
**exhibit**
16:3 20:2,4 30:6 31:3,4
49:14 50:9 51:5,13,19
51:20 52:1,3 55:11
60:7,21 62:7,17 63:15
63:23 64:7 67:20 68:3
69:20 75:18 85:25
86:15 113:12,17
114:10 119:22 123:21
126:22 130:18 176:24
184:8 230:21 231:23
232:24 235:11,17,24
237:14,17 238:5,8,9
238:24 239:7,7,10,16
240:9,16,23 241:12
241:22,24
**exhibits**
24:2,5 235:1,6
**exist**
49:23 152:7,8,9 154:9
157:4 159:19 162:3
212:14,20 221:17
222:10 225:8
**existed**
37:13 61:7 171:2
220:12 223:15
**exists**
49:16 85:4 150:8
**expands**
141:1
**expect**
215:13
**expedited**
58:9
**expedition**
177:20
**expenses**
96:25 97:3,20
**experience**
170:5 231:5
**expert**
9:12 22:19 23:1 51:22
103:11 104:3,13,19
105:9,15,17,18,21,22

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 263 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 262

107:13 109:11,12,20
110:21 111:2,5 142:7
149:3 153:15 159:4
172:21 175:16,19,24
178:6,10 180:18
186:18 187:15,15,17
188:10,14 189:16
191:23 197:10 202:22
203:10,23 204:15
207:24 209:6,7,9
213:2,3,3 214:24
215:1 221:5 222:17
225:24
**expert's**
100:22 108:22 150:23
208:11 215:22
**experts**
10:8 21:20 75:22
141:15,22 152:16
155:3,17,18 167:18
176:1,5 184:25
185:21 194:23
**explain**
15:24 37:9 121:2
145:11 181:13 197:24
214:12,18 217:17
229:7,11
**explaining**
31:4
**explanation**
28:1
**explicit**
7:6
**explicitly**
12:24 102:9 127:1
134:23 199:22 200:6
**exploring**
17:2
**express**
41:15
**expression**
186:5
**extend**
44:3
**extensive**
144:14

**extent**
12:6,15 16:17 24:12
25:20 26:13 42:6,22
43:21 45:10 58:21
61:17 81:16 88:23
89:4 112:23 121:12
135:11 143:3,19
146:2,9 159:19
174:20 175:19 187:9
187:13 195:12 200:14
205:24 210:19 213:17
214:5 240:1 242:10
**extraordinarily**
166:2 179:9 231:4

_____
**F**

**F**
6:1 246:1
**face**
22:21 131:20 137:15
166:12
**faced**
78:18
**facet**
131:24
**facia**
132:15
**fact**
10:19 12:3 18:5 36:11
51:22 61:9 65:23
66:17 72:22 88:7,14
103:11 104:8,10,12
105:11 111:2 119:9
119:19 133:22 136:24
139:4 144:12 159:23
163:16 167:17 178:10
179:8 182:14 194:12
196:14 211:1 212:24
212:25 213:22 218:10
223:20 226:13
**factors**
56:5 134:2 156:7
162:11
**facts**
13:20,24 14:9 35:7,11
59:12 201:23 205:7

208:15 215:18
**factual**
69:11,19 105:16 106:2
106:25 121:19 127:12
167:12 177:8 180:6
181:8 183:1 189:9
192:13 194:25 198:7
198:9,14,18 229:25
**failed**
35:4 77:8 138:2 226:6
**fails**
91:14,15
**failure**
73:25
**fair**
102:11 115:6 121:7
136:4 228:25
**fairly**
104:4 162:12
**faked**
226:11
**fall**
139:25 209:7 238:2
**falls**
27:21 70:23 81:12,16
81:18 95:3 132:8
**familiar**
111:20 115:22 172:13
**far**
39:5 42:19 71:19 95:24
105:1 109:4,6 156:16
222:16
**farce**
138:10
**fashion**
105:22 134:19 153:22
**favor**
79:25
**favorably**
105:12
**feasible**
140:16 141:10
**February**
243:6
**federal**
17:12 120:12 140:17

140:23
**fee**
201:6
**feeder**
198:16 217:22
**feel**
31:18 182:12 204:7
229:20 230:1
**FELICE**
3:12 4:7
**fewer**
58:12
**fiction**
159:4
**fictitious**
21:17 61:21
**field**
138:24
**figure**
40:10 50:22 126:13
**file**
26:3,14,17,20 27:1,6,8
35:8 58:25 95:18
196:7 199:14
**filed**
26:6,8,11 30:14 130:19
143:15 193:8
**files**
27:5 156:19
**fill**
157:8 194:25
**finality**
226:25
**financial**
21:10 28:24 198:25
**financially**
138:21
**financials**
134:21
**find**
19:24 44:16 46:24
50:24 54:10 88:4
135:6 139:5,17
143:22 146:2 149:11
149:13 154:8 155:2
155:13 160:23 161:21

173:20 178:7,8
185:15 188:4 208:13
216:18 222:11 228:22
233:12,20 242:19
**finding**
42:18
**findings**
132:23
**finds**
18:4
**fine**
27:19 59:15 73:2 82:3
86:5 96:12 118:23
119:16 124:24 238:12
244:24
**fine-tuning**
210:2
**finish**
151:3,4
**FINRA**
139:11,12 145:8
146:10 160:14
**firm**
112:8 223:22,22
243:24
**firmly**
174:24
**first**
24:22 29:14 30:12
34:17 45:10 54:21
60:10 83:10 101:6
103:1,7 104:2 108:23
111:16 112:14 126:22
130:1 131:14 140:9
144:20 147:13 150:17
153:1 202:14,15
205:6 219:6 242:19
243:5
**firsthand**
230:22
**Fiserv**
117:5,9,13,22
**fishing**
177:20
**fit**
188:16 243:1

**flexibility**
43:19
**flip**
173:25
**flipped**
22:4
**Floor**
6:3,15
**floppy**
152:9 153:25
**flow**
118:3
**fly**
56:22
**fmaas@jamsadr.com**
6:4
**focusing**
151:25 221:20
**folder**
145:6 219:21
**folders**
145:7,12
**folks**
239:20
**follow**
13:21 129:24 231:13
**followed**
50:17,18
**following**
5:11 67:21 88:17
176:10 191:17
**follows**
168:7 178:5
**force**
106:1
**foremost**
144:20 153:1 219:6
**forget**
16:15
**Forgetting**
87:24
**form**
27:11 46:21 101:4,15
108:21 109:2 129:22
134:8 142:7,25
157:12 205:4

**formal**
38:16 232:8
**formalities**
42:13
**formality**
36:22 48:10
**formally**
169:9
**format**
231:14
**formation**
37:2
**formed**
33:17,23 37:14 209:16
**former**
33:25 45:19,21,22 82:7
130:6 133:6 212:11
**forms**
119:15 223:15
**formulating**
133:1
**forth**
103:15 116:2 176:16
202:17 223:10
**forward**
20:24 37:7 127:2 128:3
143:21
**found**
146:11 160:17 161:4
163:8 166:5 167:12
171:14 172:1 173:15
174:7 176:12,21
178:2 219:20 221:25
234:7
**Fourth**
1:14,17,19
**fourth-generation**
95:20
**frame**
46:16 48:15 107:3
**framework**
153:6 154:11
**Frank**
6:2 17:7
**frankly**
153:19

**fraud**
17:14 18:3,5,14 28:25
49:16 51:23 61:7,8,17
74:7 113:5 141:17
142:9 145:16 150:19
155:11 158:1,4 161:7
172:17 175:11 185:16
186:5 203:1 215:20
218:3,4,9 219:10
221:15,18,25
**fraudster**
170:7
**fraudulent**
11:18 52:14,15 59:16
62:24 186:2 226:17
**fraudulently**
51:7 57:7 120:3
**free**
204:7
**Friday**
237:7 244:11
**Friday's**
238:14
**front**
71:16 76:10 84:19
111:18 125:17 214:14
**fruitful**
162:8
**fruits**
154:24
**fulfill**
200:1
**full**
21:5,15 95:18 104:5
111:12 135:15 188:6
188:7 198:4,5,8,14
234:23
**fuller**
162:9
**fullest**
135:11
**fully**
76:5
**function**
9:1 22:23 28:12 80:16
131:12

**functioning**
165:19
**functions**
207:17 234:14
**fund**
132:3 152:24 200:3
217:22
**fundamental**
137:11 212:1
**funding**
17:24 138:20
**funds**
71:4 91:16 132:3
152:23 198:17
**further**
103:13 156:6 158:7
178:13 213:14 215:15
219:8 227:9 246:13
**furthermore**
149:6 225:12
**future**
171:13 212:3

**G**

**gains**
96:24 109:1 111:10
**gainsaying**
230:23
**game**
136:4
**gaps**
194:25
**Garrett**
199:4
**gate**
196:15
**gather**
10:20 16:14,23 18:10
160:15 165:9 178:1
221:8 235:10
**gdexter@chaitmanll...**
6:23
**gear**
155:10
**geared**
23:24

**general**
32:9 33:4,10 34:9,11
36:9 37:3 38:13,17
39:3,10,12 42:3,4
45:20 47:7 48:3,8,9
48:11 66:22 67:2,6
71:18 82:6,12 95:15
104:15 127:7 190:22
228:11
**generally**
109:15 143:10 190:19
**generated**
195:20 226:8
**generation**
48:21
**generic**
47:6 73:7 93:22 95:4
**gentleman**
237:8
**getting**
54:24 65:10 92:9 100:6
100:7,17 104:23,25
111:15 112:7 122:5
141:25 172:20 175:15
187:19,21 191:3,4
192:8 197:13 242:21
**gibberish**
156:2
**gift**
85:25
**give**
21:14 24:6 35:17 38:22
38:25 39:7 95:8 98:20
102:25 114:18 119:12
124:17 135:25 146:17
147:16 162:7,7 164:3
164:7 196:24 198:22
231:20 233:6 235:1,5
236:2 243:25 244:18
**given**
28:16 64:10 83:20
85:25 98:2 102:12
111:13 116:2 135:7
142:4 147:18 157:18
161:6 168:22 195:4
203:1 207:15 213:21

214:2
**gives**
25:18 53:7 60:15 95:7
**giving**
232:2
**glad**
23:11
**glitches**
56:12
**global**
173:17,19
**go**
7:24 26:20 40:9 50:12
51:17 57:24 66:7 72:8
80:7 87:7 91:20 98:9
118:4 122:10 123:14
127:2 143:25 156:3
171:24 172:14 174:6
188:21 189:22 190:16
193:20 197:21 198:11
201:5 205:25 211:16
219:17 224:1 229:11
230:8 235:19 236:5
238:7 239:19 241:2
241:23
**goal**
135:9 152:23
**goes**
72:15 120:4 139:6
167:13 195:16 202:3
202:12 207:9 208:2
208:10 221:8 223:12
**going**
11:19 13:21 18:24
20:16 21:21 22:8,13
23:10 35:22 36:15
38:3 39:24 44:3,15
48:21 50:2 52:20 58:4
59:7,18,19 60:6,7
63:22 71:7,11,19 78:4
81:5 89:8,22 91:25
92:9 95:11 96:1 97:14
98:9 101:7 106:1,17
114:20,23 119:3,5
122:9 138:8,25 143:5
143:6,22 146:19,25

147:5,15 151:13
153:24 156:25 160:3
161:22,23 163:3
164:11 165:19 166:2
166:7 167:3 170:10
174:22 175:5,18,25
176:5,5 177:24
178:21,23 179:9
182:9,18,19 183:10
184:15 187:5 189:25
197:9,17 198:11
200:14,17 206:25
209:21 214:5,6 216:5
216:11 221:19 222:24
226:20 227:11 228:14
228:18 235:16 241:20
242:22 243:8,22
244:3,7
**going-forward**
235:21
**good**
8:15 27:13 55:5 68:17
77:3 108:7 110:22
124:8 153:9 155:2
179:3 215:8 244:12
**good-faith**
14:13 15:5 25:19 92:18
158:11 161:9 162:19
180:11 184:19
**goose**
170:25
**Gordon**
2:12,14 5:13 103:6,7
229:14 232:17,20
238:4 239:6 241:13
**gotten**
44:2 101:11 102:20,21
102:23 109:4,6
138:16 144:7
**govern**
140:18
**government**
145:4
**government's**
17:8
**governs**

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 266 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 265

173:6
**grand**
226:25
**grandchildren**
86:1
**grant**
47:12 199:7
**granted**
91:15 178:9
**granular**
40:4
**grappling**
107:7
**great**
40:15 44:10 47:22
96:13 124:5 129:16
208:18
**greatest**
153:19
**Greenblatt**
10:10,22 19:5,19 22:9
173:16 187:7,7 213:8
**Greenblatt's**
20:20
**Greg**
138:25
**GREGORY**
6:22
**Greif**
245:4,4,5
**gross**
174:25 218:18
**ground**
114:21
**grounds**
203:21
**group**
38:12
**groups**
9:10
**guess**
7:5 26:12,17 31:18
33:1 36:24 43:12
61:15 68:23 92:4 97:4
107:7 120:15 139:20
140:14 157:13 169:1

173:25 183:23 184:6
200:19 207:6 232:17
236:23,24
**guessing**
121:8
**guide**
144:14
**guiding**
30:10
**guilty**
17:25
**guy**
236:12

―――――――――
**H**
―――――――――

**H**
1:9 2:1,8,16 3:1,8,15
4:1,15
**half**
68:18 243:5
**hand**
31:2 246:18
**handle**
27:17
**handled**
54:25
**handling**
124:18
**Hang**
108:8 121:10
**hanging**
89:15
**happen**
24:13 127:21 184:5,21
212:20
**happened**
49:24 99:6 151:14
184:4 225:11 232:22
**happening**
28:11
**happens**
47:9
**happy**
14:17 18:1 19:14 24:9
26:21 204:4 235:22
**hard**

51:8 148:8 152:8
160:24 228:15
**hardship**
232:8
**hardware**
162:2
**harping**
180:14
**Harwood**
2:6 5:13 232:17,20
233:1,4 239:7 240:7,8
241:12
**haystack**
161:2 171:1
**hchaitman@chaitm...**
6:22
**he'll**
13:14 99:15
**head**
7:13 157:19 217:11
244:16
**hear**
63:18 75:16,20 76:1
102:19 124:19
**heard**
99:8 147:22 222:22
**hearing**
10:24 126:25 128:21
169:22 182:15 192:24
245:24
**hearings**
14:16
**hearsay**
103:18 106:2 109:21
**held**
5:18 35:3 196:12
220:12 223:11
**HELEN**
6:21
**HELMIG**
4:8,11
**help**
41:4 112:15 184:25
220:17 236:1
**helpful**
12:22 19:25 25:7,11

36:12
**helps**
100:16 155:16
**hereunto**
246:17
**herring**
141:7
**hesitation**
161:19
**Hickman**
132:8
**hide-the-ball**
135:5
**highly**
135:3,3
**hire**
221:4,5
**hired**
209:6 211:15
**hit**
191:9
**Hmm**
108:5
**holder**
35:25 48:20 65:3,7
67:22 70:17 72:1
117:7 229:15
**holder's**
65:20,25 66:7
**holistically**
227:20
**HOLMERS**
2:21
**home**
233:14 237:2
**HON**
6:2
**honestly**
138:9 192:12
**Honor**
9:14 14:7 16:20 21:1
24:23 25:22 29:9 41:4
68:8 69:8 102:4
103:18,22 106:9,23
111:6 126:24 131:19
133:11 140:14 151:19

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 267 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 266

152:7 163:1 164:6
166:9,20 167:24
170:15 182:11 185:18
188:22 189:6 197:19
202:19 207:7 210:5
219:2 220:3 224:11
227:19 228:6
**Honor's**
123:11
**hook**
67:7
**hopefully**
14:25 15:1 25:14,21
238:6
**horse**
15:14
**Hostetler**
6:8,14 82:22 211:25
**hotel**
236:13,16
**hours**
234:15
**house**
27:22,22,25 28:3,6,9
149:23 156:12 158:24
159:3,15 160:13,13
199:1 236:12,15
**housekeeping**
7:2 29:6
**houses**
28:18 236:9
**Houston**
6:10 237:7
**huge**
159:11 198:16
**hundred**
21:12 103:5 137:6
163:17 174:4 208:3
**hundred-page**
207:8
**hundreds**
25:16
**Hunt**
6:11 7:12 15:11 19:17
27:19 29:17,24 30:7
30:13,16 31:23 32:14

33:8,22 34:17 37:6,10
38:8,13,22 39:14,18
40:5,15,22 42:10,17
43:2,6,16 44:7,13,17
44:21,25 45:7 46:3,5
46:18 47:15,21,25
49:3 50:1,5 52:2,5,18
52:21 56:19 57:1,7,20
58:1,19 59:2,10 63:18
64:3,13,22,24 65:15
66:8 67:9 70:4,6,9,21
71:1,9 72:6,8,17 73:2
73:4,10,13,18,20,24
74:11,24 76:3,16 77:1
77:12,16,21 78:5,14
78:22 79:3,10,16,22
80:3,4,10,24 81:7,18
82:2,14 83:2 84:6,18
84:25 86:3,21,23,25
87:11,16,20 88:2,6,19
89:11 90:12,19 91:2,8
91:24 92:13,15,24
93:9,16 94:7,23 95:6
95:25 96:12,16,18
98:6,13 99:4 101:7,12
101:17 102:21 108:4
108:6 109:8 110:10
110:17,22 112:14,20
113:22 114:3,12,16
114:22 115:7,19,24
116:10 117:2,6,12,24
118:4,12,22 119:5,13
119:18,22 120:5,9
121:1,8 122:1,4,8,17
123:6,11,19 124:1,7
124:12,24 125:2,6,12
125:16 126:8,12
152:10 178:17,23
179:3,6 200:22
228:20 229:5 231:5
233:1,4,8,20 234:4,16
235:3,13,22 236:4,11
236:23 237:12 238:12
239:2,22 240:14
241:9 242:13,15,23
243:11,21,25 244:7

244:14,18,22 245:11
245:14,18,21
**Hunt's**
89:8
**hurt**
152:20
**hurts**
155:16
**husband's**
233:13
**hypothesizing**
211:10

**I**

**IA**
158:25 159:13 207:12
207:14 225:6 227:3
**IBM**
225:15,19
**idea**
55:5 245:16
**identical**
8:7,8 14:11 45:2
127:12 128:23
**identification**
131:11 132:6
**identified**
95:14 119:9 144:21
157:5
**identify**
49:11 50:21 64:5 70:10
77:24 79:1 83:5 96:20
112:21 113:19 117:3
117:21 118:5 131:22
150:2 155:13 172:1
174:18 234:21
**identifying**
78:15 130:21 148:3
**ignorance**
41:16
**ignore**
127:24
**ignores**
159:2
**ii**
5:4,13 237:1

**iii**
5:4,13
**imagine**
99:25 143:17 187:16
203:15
**immersed**
230:3
**impact**
42:24 48:24
**impacted**
155:20
**implicate**
68:4
**implicated**
68:12
**implicit**
7:4 86:17 92:7
**important**
55:24 136:19 143:2
197:25 202:3 218:10
**importantly**
133:25
**impossible**
220:18
**impression**
132:10 194:1
**impressions**
132:13 135:22
**in-depth**
207:9
**inaccuracies**
174:25
**inaccuracy**
173:15
**inaccurate**
65:9 169:12 171:16
173:1
**inarticulately**
43:13
**inception**
17:4 18:10 61:7 63:15
**inclined**
41:9,10,18 47:7 75:5
121:23 199:7
**include**
188:1

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 268 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 267

included
109:17 185:25
includes
16:16 111:20 196:9
including
13:18 104:9 134:15
  163:24 165:20 217:22
  221:4
income
100:25 101:25 107:20
  107:24
inconsistencies
167:19 175:20
inconsistency
113:21
inconsistent
14:2 57:23 151:8 165:3
  176:13 179:7
inconvenient
230:17
incorporate
91:4
incorporated
33:18,21
incorporation
87:14
incredibly
15:20
incremental
158:6
incumbent
213:13
independent
9:8 21:9 113:18 173:22
  209:8
independently
21:19
indicate
90:10 181:19 242:3
indicated
240:2
indicating
126:23 130:13
indication
16:5
indicia

170:7,12 218:4 224:21
Indirect
70:25
indirectly
218:2
individual
10:22 36:2 87:17
  156:11 210:12 234:3
  240:6
individually
1:16 230:10
individuals
34:20 35:20 40:21,23
  41:1,2,21 42:2 45:3,4
  91:10 103:16 210:12
infer
197:12
infinite
138:20
informal
28:1
information
32:9,13,15 33:15 34:5
  35:18 38:14,23 39:1,8
  45:8 49:5 55:10 60:7
  71:18 72:15 78:20
  79:6,7 95:14 100:6,24
  102:10,17 103:20,23
  107:23 109:17 111:11
  111:19,22 115:5,13
  116:16 117:12 130:21
  132:4,12,25 133:3
  138:6 156:13 157:24
  160:23 163:4,24
  164:16 167:16 175:15
  175:17 183:20 194:6
  197:15 199:2,8,11,17
  200:15 212:5,16
  226:15 227:7 234:9
informative
166:3,4
inherited
152:6 159:18
initial
64:25 65:2 66:9 70:13
  72:1 83:8,11,21 84:4

84:4,6 85:8 94:12
  117:4,15 123:2
  195:14 204:20
initially
204:12
inquiry
163:11
insert
45:20
insist
211:2
Insofar
116:5
insolvency
158:1 214:22 215:3,8
  216:14 217:15 218:1
  218:3
insolvent
214:19
installments
121:18
instance
54:17 62:20 132:17
  174:7 226:4 227:2
  228:5
instances
62:16 71:24 118:8,13
  119:8,9,11 172:1
  173:1 196:4 231:22
instructing
196:11
insufficient
32:8
intend
25:25 202:21 214:18
intended
153:17 192:6
intends
99:2
intent
48:5 217:16 230:5
inter-account
11:13 15:23 54:18,22
  55:16 56:6,13 60:9
  62:4 68:9,12 70:1
  74:1,22,23 195:25

interest
32:18 34:2 42:7 45:16
  83:10
interested
26:16 34:13 90:2
  246:15
interim
199:14 225:15
interject
71:15 204:1
intermediate
43:9
internal
223:23
interpret
52:9
interrelated
28:24
interrelates
218:4
interrogatories
29:23 40:8,13,18 45:1
  73:5 79:12 96:19
  122:2 125:5,19
  126:18 192:6 228:17
  234:1
interrogatory
41:22 44:25 45:6 46:5
  47:8,10,23,25 50:3
  54:24 56:18 57:23
  58:17,22 64:4 65:14
  70:7,9,21 71:2,13
  72:19 73:14,20 75:2
  77:1,4,16,24 78:25
  79:8 96:19 97:5
  100:12 112:21 113:8
  114:2,17 115:8
  116:11,13 117:17
  118:4 119:13,18
  120:10,13 121:2
  170:9 208:10 215:23
interrupt
85:17 92:16 151:1,2
  178:18 204:8
interrupted
44:13

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 269 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 268

interviewed
143:1
interviews
132:7 135:23 210:12
introduce
216:5
introduced
234:20
introducing
172:18
inventory
152:1 156:19 159:12
  165:24,25 166:12
  226:2
investigate
132:21 171:8
investigated
171:20
investigation
69:19 131:24 154:25
  161:12,14 170:24
  184:10 210:17 211:17
  213:14 219:7,13
  221:3
investigator
211:12
investigatory
135:22
investment
1:3,10 2:2,9,17 3:2,9
  3:16 4:3,16 17:6,15
  28:3,7 42:14 47:19
  81:24 111:9 148:22
  158:19,25 159:7
  201:25 211:4 218:22
  220:22
Investor
132:19
invited
155:12
involve
67:17
involved
27:3 157:21 160:22
  229:21 232:21 233:2
  233:5

IRA
116:22 120:20 121:17
irrelevant
52:17 77:20 108:16
  115:17,23 117:14
  169:6 175:1 177:21
  240:13
IRVING
1:9 2:1,8,16 3:1,8,15
  4:1,15
Island
165:6
Israel
1:14,17,19
issue
7:18 10:13 11:1 12:13
  13:5,9,14,18,19 15:24
  16:25 18:17,24 24:17
  26:13 29:20 40:23
  41:10,17 43:21 44:9
  52:10 60:12 78:10
  83:20,22 91:16 95:6
  98:10 126:25 136:18
  139:7,21 142:5
  145:17 146:14 150:20
  155:15 156:9 159:2
  166:7 168:23 169:25
  170:4 173:18,18
  177:22 182:10 188:12
  189:15 192:22 198:2
  202:12 205:22 207:10
  210:9 217:15 218:7
  224:12,12 225:24
  230:1,5 241:2,7,22
issued
26:1 211:19
issues
9:2 10:21 13:11,17
  14:22 23:24 25:20
  30:20 31:8 43:18 44:1
  49:10 59:15 69:12
  104:19 106:2 127:20
  135:7 136:18 142:9
  146:18 158:1 167:9
  170:1 177:8 192:20
  202:4 228:4 230:4,23

238:23 240:5
items
147:10 152:5,20 162:5
  175:21
iv
5:14

_____

**J**

J
3:12 6:16
Jacobs
6:16 9:3,6 10:10 11:1
  11:14 12:13 13:3 15:1
  15:9 16:19 17:16 18:1
  18:12 19:8,11,14,23
  20:4,9,11,15 21:14
  22:3 23:23 24:4,8
  25:10 26:4,7,19,24
  27:25 28:19 29:4,8,15
  44:8 68:8,11,16 69:8
  70:5 85:9,14,19
  101:18 102:3 103:17
  105:2,7,14 106:9,19
  106:22 107:6 109:14
  110:1,5 111:1,6,17
  112:13 126:24 127:9
  128:2,12,15,18 129:3
  129:9 130:23 131:5
  131:10,18 133:9,14
  133:18,20 140:8
  144:10,18 146:13
  147:8,18,25 149:1,5
  149:17 150:10,25
  151:4,18,21 152:3,12
  155:6 156:9 157:3
  158:21 160:12,20
  161:11,18 162:25
  163:22 164:5,17
  166:4,9,15,18 167:23
  168:1 169:4,14,16,19
  170:2,15 171:5,21
  172:9 173:2,5 175:22
  176:8,11,14 178:4,14
  179:15,25 180:9,12
  180:17,22,24 181:2,5
  182:11 183:25 184:6

184:12,17 185:7,13
  186:19,23 187:22
  189:6 192:14 193:2,7
  194:7 195:11,14
  196:18,21 197:2,6,19
  199:13 200:24 201:18
  202:19 203:7,14,20
  204:4,7,19 205:15,18
  207:6,23 208:5,25
  209:5,12,19,24 210:4
  210:8 212:12,19,24
  213:2 215:2 216:14
  216:16,23 217:9,17
  219:1 220:2 222:3,6
  222:22 224:11 225:17
  225:20,22 227:15
  228:25 245:5,7
JAMS
5:19
January
243:5
joke
139:3
Jones
181:15 190:15
Jones'
225:16
JPMorgan
21:9,25 196:3
judge
7:4 8:5,22 10:24 12:9
  12:24 13:13,17 14:16
  15:15 18:4 23:13 25:3
  26:15,23 27:5,16 32:1
  35:3 38:2,19 43:14
  44:4 55:1 60:25 61:10
  69:4 75:16,25 85:10
  92:22 94:3 97:7,18
  98:17,18,24 99:12,25
  102:9 106:16 125:23
  125:25 126:2,6,7,25
  127:1 128:17,21
  132:19 137:17 138:9
  142:3,16 145:20
  147:13 150:11 153:22
  155:11 159:1 168:13

169:6 174:23 177:14
185:14 190:4 192:11
192:20 194:2 199:22
200:6,19 203:18
210:24 215:7,15
217:14 229:6
**judge's**
14:2 106:5
**judges**
143:11
**judgment**
35:25 36:1
**jump**
49:25
**jumping**
49:8
**juncture**
182:12 185:19

**K**

**keep**
154:12
**keeping**
152:19
**KENNETH**
3:12
**kept**
223:17
**kicking**
197:1
**kind**
8:9 33:12 45:11 50:17
162:7 179:22
**kinds**
167:19 224:6
**Klan**
4:6,8,9,10,11,12,13 5:4
30:16 31:12,25 32:16
33:1,2,9 36:15 40:18
43:2 45:2 49:7 52:4
53:24 54:21 59:14
63:21 64:11,14,15,18
66:25 68:22 74:23
79:14,18 80:5 89:13
89:16 96:14
**Klan's**

66:11
**knew**
229:16
**know**
26:9 27:23 28:4 33:8
33:10 34:17,23 35:1
37:25 38:10 42:20
45:11 48:4,22 50:5
53:20 56:6,20 58:13
61:19 64:6,22,24 65:1
66:6,8,10,14,17 68:3
69:4 71:15 74:16 76:9
78:17 84:18,25 85:20
94:9,9 104:21 110:10
115:4,25 117:22
125:16 126:4,8
129:22 133:9 138:17
148:3 153:12 154:4
158:22 160:21 163:2
166:6 179:25 181:7
182:5 185:15 208:14
209:9 217:10,19
218:1 220:4,6,19
221:16 222:9 225:8
226:23 231:12,16
234:17 238:17 241:18
243:23 245:3
**knowledge**
18:13 19:9 70:10,18
77:17,25 78:15 79:1
101:20 114:18 115:4
115:8 116:3,8 118:8
160:16 183:15 217:5
222:5 230:22 232:18
233:16
**knows**
10:4 163:20

**L**

**L**
1:7,10 2:2,8,16 3:2,6,8
3:16 4:2,3,16,17 6:12
117:8
**labeled**
145:6,8 188:2
**laborious**

101:1
**lack**
28:10
**land**
155:7
**LANDRES**
4:9,12
**landscape**
217:20
**language**
60:23 61:18,19 62:5
239:16 241:20
**large**
31:3 113:1
**law**
10:12 32:12 33:24 38:4
38:19 39:10 47:3,3
101:19 118:1,2
154:12 172:12 177:18
182:19 183:9 212:3
236:10,12
**laws**
120:12 152:24
**lawyers**
212:1
**lay**
155:6
**lead**
36:25
**learned**
43:8
**leave**
8:14 69:2 118:24
151:22
**leaving**
196:5
**led**
123:13
**left**
122:17,18,21 198:16
**legal**
33:13 67:7 116:14,24
127:12 199:23 200:7
200:10 217:20
**legally**
120:11 121:5 183:11

**legitimate**
83:9 148:23 211:3
221:10
**length**
95:21 185:14,22
207:16 208:18 209:16
**lengthy**
28:21 166:2
**lens**
227:25
**let's**
34:6 40:12 47:9 48:7
54:20 59:25 60:9
66:16,17 70:3 78:12
81:2 82:20,21 124:23
126:12 129:20 187:3
188:18 202:14 204:9
210:25 235:19
**letter**
15:6 73:10 110:3,4
112:10 181:25 195:9
196:10
**letters**
145:10 238:9
**level**
40:4 138:24
**liabilities**
112:4
**liability**
34:3 51:8 57:8 112:3
120:2 168:14
**liable**
34:21 47:5
**lieu**
208:20
**Lifland**
142:3
**lifting**
186:21,24
**light**
63:11 158:7
**limit**
177:25 182:9 206:25
**limited**
32:10,11 33:11 34:7,8
34:16,18 38:6,18,21

38:23 39:4,9,20 42:7
   42:9 67:3 82:5 110:15
   136:22 178:1 216:3
   222:16
**limiting**
180:15
**line**
35:14 162:14
**link**
231:10
**liquidating**
132:2
**liquidation**
1:2,10 2:2,8,16 3:2,8
   3:16 4:2,16 142:6
**liquidity**
224:23
**Lisa**
173:17
**list**
7:24 24:6 71:11 130:3
   130:5 131:6,15,22
   132:4 165:6 180:6
   181:7 188:22 198:21
   198:23 201:11 214:2
   223:4
**listed**
63:23 126:21 223:9
**literally**
163:23
**litigant**
138:19,19 140:17
   165:16
**litigants**
135:10 142:11
**litigate**
177:13
**litigated**
11:5 12:8 13:6 182:18
**litigating**
12:25 16:9 153:14
   193:11
**litigation**
13:2 14:22 18:14 23:17
   61:11 69:17 102:17
   132:11 133:8 142:2

143:13 167:17,20
   190:1,6,12 191:10
   192:24 193:19 209:13
   229:21
**little**
79:23 87:22 99:5
**live**
154:18 230:16 231:8
**lives**
229:17 237:8
**living**
15:21 96:25 97:3
**LLC**
1:4,11 2:3,9,17 3:3,9
   3:17 4:3,17
**LLP**
6:8,14,19
**LLP'S**
5:7,10
**local**
117:19 236:17
**log**
143:16,18
**logged**
143:16,18
**logging**
143:23
**logical**
8:1
**logically**
242:18
**Londa**
4:7,10 40:24 45:4
**long**
58:6 76:3 83:19 101:12
   118:22 120:15 123:11
   124:25 148:14 149:8
   162:18,22 163:3
   165:6 166:7 193:20
   225:18
**long-standing**
202:5
**longer**
85:11 162:3 215:9
   234:18,22
**look**

16:2,10 19:3 23:9 24:4
   24:15 63:9 79:19
   105:12 122:12 128:12
   145:23 147:23 148:16
   151:11 157:1 161:8
   161:10 198:19 217:12
   219:17 222:8 226:12
   227:24 231:16 239:6
   241:20 244:19
**look-back**
55:23
**looked**
26:5 27:11 148:13
   152:15 176:6 203:12
   228:1
**looking**
19:20 44:23 74:5 82:6
   87:12,16 88:4 91:9,11
   111:21 113:7 123:16
   145:10,23 146:13,22
   149:19 159:15 160:21
   161:1 163:14 165:23
   165:25 170:25 173:4
   192:20 201:19 203:14
   220:21
**looks**
45:13 129:17 130:21
**lose**
98:10 182:23
**lost**
87:9
**lot**
30:19 32:1 54:8 56:17
   68:15 75:20 101:11
   108:1 137:2 139:1
   156:6 162:9 221:23
   242:24
**lots**
169:7 238:1 239:14

─────────────

           **M**

**M**
6:22
**Maas**
6:2 125:23,25 126:2,7
   128:17 179:4

**Madoff**
1:3,7,10 2:2,9,17 3:2,9
   3:16 4:3,3,16,17 16:6
   16:24 17:5 18:2,11,17
   22:2 51:19 61:23 68:1
   84:15 100:25 107:20
   109:1 111:9 114:19
   133:6 136:3 139:24
   146:17 148:21 150:9
   150:15 153:18 159:2
   159:8,17,23 161:7
   163:21 164:15 172:15
   172:17 175:7 179:10
   181:8,25 196:10
   201:24 202:5 205:23
   206:1,5 211:2,14
   212:11 213:9 214:19
   221:18 223:19 224:3
   224:4,23
**Madoff's**
17:7 18:20 22:22 37:20
   51:21,23 54:11 61:12
   62:3,10,25 74:7 86:1
   145:18 149:15,24
   191:19 201:22 202:8
   218:21
**magic**
120:21
**main**
6:9 219:22
**maintain**
185:21
**maintained**
148:6 185:20 196:8
**major**
167:9
**making**
142:23 166:21 185:1
   203:25 209:17 218:6
**man**
17:8
**management**
9:9,20 10:7 105:24
   203:11
**manager**
26:2

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 272 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 271

mandate
46:15
manipulation
219:19
manner
100:9
march
42:25 243:17
marginal
189:25
Marie
6:12 138:12 234:18
marie.carlisle@bake...
6:12
mark
190:2
market-making
28:12 140:5 218:23
  223:21
marriage
246:14
match
22:16 156:11 226:1,3,7
material
32:1 109:7,16 146:22
  148:11 155:1 173:4
  203:23 206:8 209:19
materials
34:12 111:23 139:21
  139:24 155:14 184:14
  194:13 195:4 199:22
  204:15 210:15 217:19
  226:23
math
54:5
matter
34:14 49:24 66:25
  69:14 75:15 80:5
  95:15 104:8 116:7
  118:1,1 139:4 150:4
  155:8 183:21 205:4
  215:21 216:19 246:11
  246:15,16
matters
7:2 9:13 29:6
mean

7:12 42:17 59:23 76:9
  78:14 84:11 99:24
  107:4 115:18 119:11
  136:11 157:9,14
  158:12 163:1 182:21
  182:22 183:16 184:7
  190:18 230:5 232:21
  239:6 241:18
meaning
130:7
means
50:8 56:20 57:2 75:15
  115:17,19 141:14
  181:7 185:16 221:6
meant
181:14
mechanics
236:2
mechanism
141:19
media
148:8,12 152:8 161:23
meet
14:18 43:20 146:20
  202:21
meetings
47:17 81:10
members
34:1
memoranda
87:14
mental
132:10,12 135:22
mention
132:5
mentioned
138:9 141:8 144:3
  224:16
mentis
232:11 234:13
Mercantile
224:19
Merit
5:22
Mexico
229:17

microfiche
152:7 161:8,25 163:15
microfiches
163:17
microfilm
161:25 163:2
million
101:25 134:16 141:7
  166:25,25
millions
157:23
mind
13:16 66:25 68:6 70:19
  86:8 100:1 116:18
  117:3 172:6 194:9
mindful
36:20
mini
182:15
minimum
141:10 148:18 186:23
minute
121:10 124:18
minutes
81:10
minutia
27:21
mired
54:24
miscalculation
183:19
mischaracterization
23:4
misconstruing
12:1
missing
166:24
misspoke
23:2
misspoken
21:24
misstatement
23:3
misunderstand
192:19
misunderstanding

66:5
Mitzvah
65:12 71:24
modification
58:10
modified
86:9
modify
45:17 56:21 58:14,17
  96:2 112:12 121:14
  160:11
modifying
87:4 88:13
moment
9:22 27:10 38:5 87:25
  97:17,18 98:19 106:7
  119:3 127:24 220:4
money
19:7 46:25 48:6,20
  53:25 65:19,24 83:6
  85:3 116:20 118:3
  120:23 121:17 153:3
  162:10 168:15,16
  191:8 200:1
money's
67:18
monies
85:24
monthly
191:3
months
147:14 174:10 197:5
Moore
36:18
moot
51:3
Mormon
115:21
morning
95:24 219:3 237:20
motion
5:1,7,10 26:9,25 29:3
  30:11,14 61:9 63:11
  91:7 98:23 118:19
  124:6,10,21 126:12
  126:17 127:2 128:4

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 273 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 272

128:22 143:3 169:9
200:8 215:14 227:13
**mouse**
199:17
**mouth**
150:18
**move**
43:19 70:3 76:2 112:20
122:23 128:3 188:18
**moved**
125:21,22 230:7
**moving**
178:19 242:25
**multiple**
148:7
**Mulvenna**
5:21 34:11 246:7,20

---

**N**

**N**
6:6
**nail**
167:15
**nailed**
70:7
**name**
33:14 35:19 116:2
130:5 179:2
**names**
33:24 45:18 114:17,24
**narrative**
152:21
**narrow**
72:17
**narrowed**
185:5
**narrower**
78:10 172:5
**narrowing**
88:21
**nature**
11:5 102:13 105:16
166:19 197:22 219:3
**NCF**
26:18
**near**

22:16,20 173:21
**nearby**
236:10,11
**nearly**
128:23 173:24
**necessarily**
193:8
**necessary**
155:17
**need**
33:6 35:8 43:10 44:3
45:10 47:13 58:17
64:6,22 65:13 66:8,9
66:14 71:21 75:1,25
78:2 80:6 91:19 104:6
105:6 114:1 117:2
124:25 138:5 148:18
157:7,15 161:2
166:24 174:16 188:21
203:18 212:8,15
219:19 234:10 240:6
242:12,17,20 245:18
**needed**
26:8 117:10 123:14
124:4 217:3
**needle**
161:1 171:1
**needs**
43:20 58:12 65:5 94:14
134:1 158:9 168:12
173:11 240:19
**negative**
53:24
**neither**
27:15
**net**
12:7,16 16:9 18:6 21:7
53:4,8 69:24 155:23
160:2 184:24 198:2
214:14
**netting**
223:25
**never**
16:12 17:5 41:1 42:2,3
44:9 138:16 144:7
153:17 158:21,22

182:1 186:3 190:15
229:21 241:13,18
**new**
1:1 5:19,20,24 6:4,4,16
6:16,21,21 129:4
150:20 159:10 229:17
237:6 246:3,8
**nicknames**
28:2
**Nods**
244:16
**non**
141:7 232:11
**non-issue**
40:2
**nonobjectionable**
136:12
**nonsensical**
183:2 185:15 186:7
**normal**
9:19 109:13
**Nos**
46:2
**nose**
57:18
**notary**
5:23 246:8
**note**
15:2 36:17 189:25
232:10 239:13
**notes**
25:11 132:7 239:13
**notice**
27:5,9 69:17
**noticed**
229:8
**notion**
221:9
**notwithstanding**
144:12 183:3
**November**
141:25 142:1
**nuances**
7:15
**number**
9:20,25 10:17 24:13

30:21 32:3 52:8 53:8
53:24 72:7 80:7 113:2
131:8 137:25 143:7
154:13 180:20 183:4
183:5 185:13 189:2,3
201:18,20,21 204:11
210:8 213:4 214:18
215:18 218:16,19
219:5 223:11,15
234:22
**numbered**
235:24
**numbering**
87:22,25
**numbers**
50:11,13 227:10
235:11,17,25 238:9
**numerous**
108:14 174:5
**nutshell**
22:23

---

**O**

**O**
6:1
**o'clock**
244:15
**O/W/O**
1:14,17,19
**object**
51:25 74:16 75:8
132:14 182:14 199:20
**objected**
193:11 204:12
**objecting**
210:20
**objection**
110:23 131:18,19
157:3 193:12 203:25
204:20 219:1,4
**objections**
193:12 219:6
**objective**
153:1
**objects**
27:15 203:20

obligation
69:16,18 132:21 134:7
165:17 172:24 176:17
177:11 211:7 213:16
obligations
141:2 142:20
observed
42:13
obtain
24:21 35:7 90:17,20
127:16 146:3 216:13
216:25
obtained
145:1 154:6
obtaining
49:4 89:24
obviate
86:16
obviated
119:19
obviates
57:22 114:1
obviously
13:16 18:23 31:19 44:2
51:13,14 56:11 59:21
101:23 105:11 167:8
182:5 186:20 192:3
198:10 209:25
occasions
105:6
occur
150:5,7 178:9 207:20
212:23
occurred
118:9,13 119:8 184:19
186:3 190:21 203:2
226:24
odd
25:24
off-the-cuff
137:18
offer
9:19 10:6 110:6 174:22
offered
51:10 109:11 226:10
237:3

offering
75:23
office
237:1
offices
236:10,12 237:6,7
offset
98:7 112:3,4
oh
29:19 131:9,15 163:8
166:5 218:17 245:11
okay
18:23 24:3 26:12 27:20
27:25 29:12 30:1 37:8
37:12 40:5 44:4,10
46:4 47:24 50:4 53:19
56:16 57:20 58:19
63:16 66:23 68:19
69:7 70:5,20 73:2,13
76:24 77:1,12,16 79:9
79:13 80:24 86:22,24
87:16,19 89:7 90:8
91:8 92:6,13,14 94:23
95:6 96:12,15,17
110:22 114:16 117:24
120:9 121:25 122:1,3
124:23 129:25 131:9
131:17 149:4,10
151:23 156:5 162:16
164:17 178:14 180:17
180:22,23 185:7
188:19 197:20 208:25
209:24 210:4,7 214:8
217:9 218:14 221:13
223:7 228:25 229:6
238:22 242:8,13
245:18,20
omnibus
10:24 192:23 200:7
once
34:10 42:15 58:7 63:3
66:6 112:14 221:18
one-to-two-page
103:14
ones
20:10 23:15 36:21 45:2

87:21 103:7 128:13
185:2 240:7
open
63:16
opened
37:11 149:25 168:4
opening
194:15
operated
28:22 36:18
operating
28:5 36:9
operation
201:23
operations
28:3 134:21 218:21
operative
37:17
opine
221:6
opines
183:23
opinions
137:18
opportunity
112:11 149:2 216:13
236:3
option
95:7
Options
224:18
order
5:7,10 9:9,20 24:14,16
25:8,10,18 32:24 35:7
35:11 36:3 49:9 58:9
58:14,15 59:6 72:21
80:22 101:12 102:15
106:13 118:20 123:12
124:2,22 127:15
141:24 142:2,4
145:20 166:22 170:23
183:4 190:5 193:4
200:11 203:11 209:14
216:6 227:16,21,22
228:7 229:10 230:7
245:2,7,10,11

ordered
111:23 194:2
orders
10:7 25:14 26:13
101:23 105:24 106:5
141:16
ordinary
142:19
organizational
80:14
organized
38:1 134:19 139:2
original
128:19 179:10
originally
141:18
ought
242:19
Ouija
119:10
out-of-the-market
224:22
outcome
14:1 177:4 246:16
outlined
228:12
outrageous
151:21 152:17
outset
142:22
outside
102:17 132:15 145:19
163:25 167:20 168:8
outstanding
8:12 197:22 200:2
overarching
20:14 41:13 143:8
overlap
12:20,21 31:16
overrides
141:4
overruled
102:9
owe
153:3
owes
153:1

224:3,4
**owned**
61:5
**ownership**
32:18 34:2

**P**

**P**
6:6,6
**p.m**
244:21 245:23
**package**
208:13 231:20
**page**
1:23 50:11 79:4 97:23
129:15 130:1 174:8
181:4
**pages**
19:2 108:24 111:16
203:5 208:3
**paid**
36:2 97:2,8 100:5
103:16 111:8,10
112:2 196:13
**painstaking**
135:14 226:18
**painstakingly**
152:4 184:22
**Palmer**
2:20,22,22,23 5:14
230:20 232:19 237:15
237:16,16 241:13
**papers**
100:13 134:11 138:11
230:13
**paperwork**
16:16 74:5 245:16
**paragraph**
202:18 203:3 209:1
**paragraphs**
113:9
**parallel**
61:19
**paraphrase**
208:13
**Park**

6:20
**part**
12:17 13:7,9 15:23
17:2 28:9 63:10 67:19
71:10 73:25 78:22
97:19 131:14 140:9
145:1,2,3 169:15,22
193:12 194:24 195:13
198:18 199:6 202:15
205:6 206:25 221:12
221:14
**participants**
191:14
**participate**
190:11
**particular**
38:9 39:15 54:17 58:17
58:23 65:9 73:14
76:11 105:6 133:13
136:9,23 140:8
141:24 169:16 183:24
219:5
**particularized**
166:23
**particularly**
50:25 156:21
**parties**
26:14 43:19 44:9 49:12
77:17 86:4 93:24
94:11 134:1 143:12
155:12 246:14
**partner**
4:7,8,9,10,11,12 32:11
32:19 34:8,8,10,12
37:3 38:6,17 39:3,10
39:12,16 40:25 42:4
46:9 47:7 48:3,8,10
48:11 66:19,22 67:2,3
67:6
**partners**
32:9,11,15,17 33:4
34:1,4,16,18 36:3
37:4 38:9,14,18,21,24
39:4,9,16,20 42:3,9
45:12,20 46:11 48:13
82:6,13,24

**partners'**
66:19
**partnership**
4:6 32:1,10,17 33:2,10
33:11,11,14 34:2
36:16,19,21,23 37:4
37:13,14,16,21 38:1
38:16 39:13 40:20
41:19 42:7,11,13,19
44:11 45:11,12 46:8
47:4,6,14,18 48:24
67:2,6,10,12 80:15,16
81:10,22 82:13,23
87:13,23
**parts**
242:25
**party**
26:16 89:25 90:17
93:14 112:23 113:10
217:1
**party's**
120:14
**pass**
72:9
**passed**
239:23
**Pause**
76:23
**pay**
96:23 117:10 168:16
**payable**
65:11
**payroll**
130:22
**Pearlman**
232:20,22 237:24
241:12
**peek**
162:7
**pejoratively**
187:4
**pending**
49:4
**people**
38:12 42:15 61:5 70:10
70:11 108:2 114:24

116:3,8 118:17
120:20 137:6 138:21
139:16 143:14 163:23
165:20 190:7 191:11
191:17,20 229:24
230:6,14 231:21
232:5 234:8,12 235:8
**people's**
236:9
**percent**
22:17,20,20 32:18 34:7
34:8,14,15 45:15
103:5 159:10 170:20
173:21,24
**percentage**
34:21 35:23
**percentages**
39:8
**Perfect**
112:13
**perfectly**
78:16
**period**
20:23 36:24 37:1,6
52:10 55:23 60:13
62:11 63:6,7 69:14,20
71:15 120:21 161:22
174:6 221:1,21 222:4
224:10 232:25
**periodically**
199:12
**periods**
18:13 21:22 22:14
145:15,25 149:8,24
153:15 154:3 171:9
218:5
**Perlman**
3:12,13,13 5:12
**permeated**
49:15 51:23 61:8,18
74:7 186:12
**permit**
26:17 141:19
**permits**
178:12
**permitted**

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 276 of 293
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 275

37:19 64:21 101:19
**person**
35:22 46:9,10 70:12,17
77:24 79:1 115:12
130:9,10,13 171:15
241:8
**personal**
2:21,23 118:7 232:18
233:16
**personally**
157:21 158:22
**personnel**
211:1
**persons**
78:15 114:18
**perspective**
28:25 29:1 108:17,17
112:5 140:16 144:13
168:6 186:21 228:2
**PETER**
4:10
**phone**
242:11 244:5
**phrase**
68:1 80:20 149:12,19
**physically**
124:19 229:23
**Picard**
1:9 2:1,8,16 3:1,8,15
4:1,15 5:3,4,4,8,12,13
5:13,14,15,15 129:1
159:4
**Picard's**
51:22
**pick**
176:2
**picked**
236:24
**picture**
41:15 198:6 208:8
**piece**
148:12,16 152:8
**pieces**
148:7
**pin**
217:12

**place**
50:2 63:25 76:4 102:15
159:20
**places**
45:23
**Placon**
237:1
**Plaintiff**
1:12 2:4,10,18 3:4,10
3:18 4:4,18
**plaintiffs**
230:15
**planning**
199:25
**plausible**
185:10
**playing**
138:24
**Plaza**
6:15
**plea**
17:13,25 150:16 202:9
**pleading**
47:3
**pleadings**
30:19
**Please**
151:4 167:25 204:7
**pled**
17:12 32:9 78:6 83:20
150:14,15
**point**
26:15 28:16 54:19
62:18 71:2 72:9 78:1
84:2 86:2 93:19 100:3
105:14 108:7 110:17
121:7,9 133:21
138:10 150:11 171:2
178:16 180:7 185:3
186:13 198:24 199:4
202:10 206:14,19
207:15 215:13 218:6
239:4 242:21
**points**
40:9 122:22
**policies**

81:11,24
**Ponzi**
18:11 28:5,25 61:25
153:20 160:6 218:9
221:11
**pools**
224:22
**populated**
226:13
**portion**
28:14 46:10 68:17
107:18
**portions**
28:23
**posit**
136:7
**position**
17:4 18:10,18 61:6,16
69:8,23 127:10
136:21 138:18 201:24
202:2,7,17 205:10,13
206:10,13,18 207:3
211:6 212:10
**positions**
165:3
**possess**
77:18
**possession**
69:12 89:22,24
**possibility**
150:8
**possible**
134:4 135:11 204:23
226:1
**possibly**
74:8 151:7,16 158:8
168:10 174:4 198:12
216:17
**post**
143:23
**pot**
107:11
**potential**
108:14 139:20 141:20
155:11
**potentially**

11:1 20:16 45:15 48:24
110:14 128:1 136:3,7
140:13 142:5 149:14
163:15 164:14 172:4
227:9
**power**
40:24 41:7
**practical**
75:15 140:15 150:4
183:21
**practice**
212:3
**pre**
60:1 158:18 160:17
162:20 166:13
**precedent**
156:9
**precise**
35:18
**precisely**
46:14 205:22
**preclude**
230:24
**precluded**
95:11
**predate**
18:7 37:22
**predates**
60:13
**predating**
154:3
**predecessor**
33:17
**prejudice**
82:1 234:2
**prejudiced**
104:23 105:5
**premature**
203:9
**prematurely**
203:22 204:16 245:10
**prep**
236:3
**preparation**
132:11
**prepare**

157:10
**prepared**
129:10 152:2
**preparers**
116:1
**preparing**
94:25
**presence**
86:8
**present**
171:12
**preserve**
98:12
**preserved**
69:16
**presumably**
13:11 187:5
**presume**
239:17
**presumes**
212:13
**presumption**
61:25 122:25 123:7
 160:6 221:11
**pretty**
70:7 100:22 104:14
 161:20
**prevails**
98:3
**prevent**
151:17
**previously**
7:21 156:18 162:21
**prima**
132:15
**primary**
2:13
**principal**
45:23 53:16 240:11
**principle**
36:9 228:11
**prior**
14:3,15 37:20 49:18
 105:22 147:10 215:17
 221:21 224:10
**pristine**

172:22
**privacy**
108:17
**privately**
223:22
**privilege**
143:8,16,23
**Pro**
1:11 2:3,10,18 3:3,10
 3:17 4:4,17 5:3,4,4,8
 5:12,13,13,14,15,15
**probably**
23:17 26:15 33:21 48:9
 48:11 56:10 92:1
 94:19 103:8 156:1,17
 165:24 166:3 174:13
 213:20 230:19 232:14
**problem**
55:5 56:2 60:18 65:13
 66:1 67:15 72:2 90:6
 94:3,8 103:17 129:7
 137:11 189:7 207:7
 243:3
**problems**
36:7 50:13 57:22 108:1
 212:2
**procedure**
24:12 25:1 140:18,24
**procedures**
142:2 209:14
**proceed**
63:17 129:10
**proceeding**
5:8 9:10 11:6 12:10
 13:6,10 14:4 15:3
 24:1 155:10 165:22
 182:4,5 189:12
 192:16,17 193:23
 194:11 195:5 196:19
**proceedings**
5:2,11,17 7:7 10:5
 11:10 13:7,8,15 17:17
 158:12 168:14 196:17
 196:22,25 212:22
 246:10,12
**proceeds**

34:22
**process**
43:7 101:1 148:14
**processing**
31:22
**produce**
8:2 33:3 37:15 84:1,12
 87:7 88:16,24 89:17
 90:20,23,24 93:2,11
 93:17 94:10,18 96:1,7
 96:10,11 101:7
 110:11 126:19 130:11
 134:8 136:11 137:2
 146:4 147:9 150:2
 151:7,12 162:23
 163:9 177:11 181:18
 183:20 199:21 202:1
 206:17 214:14,20
 218:24 222:12
**produced**
23:16 36:16 87:4 88:11
 88:12 89:5 92:25 93:2
 93:5,8,24 95:1 96:9,9
 101:14 104:10 105:9
 105:11 108:20 109:7
 131:7 133:7,16 135:2
 154:15,15 156:20,24
 157:11 162:21 183:1
 189:14,22 191:16
 194:13 195:11 196:2
 196:7,13,14 197:12
 205:14 206:2 214:9
 214:17 229:17 233:9
 235:13 238:8
**produces**
90:13 180:2
**producible**
157:12
**producing**
101:4,5,6,9 104:22
 157:4 188:3 189:23
 195:3 205:9 243:9
**product**
131:21 132:8 135:23
 136:6,10,16 137:13
 137:13,14,20 141:4

142:22 156:21 157:6
 157:12 165:11 204:13
 210:11,22 212:7
 213:18 214:5
**production**
122:19 141:21 148:2
 195:15 202:11,24
 204:17 205:1
**professionals**
163:25
**proffer**
216:22
**proffered**
202:22
**profit**
10:24 11:15,15 12:4,9
 12:25 13:2,5 15:3,22
 16:11 23:16,23 61:10
 74:2,24 167:16,20
 169:21,25 188:22,25
 190:6,11,15,17 191:5
 191:7,10,11,14,20,25
 192:22 194:4 195:10
**profits**
21:17 191:4
**program**
162:2
**prohibiting**
127:15
**pronouncing**
168:25
**proof**
57:10 176:16 177:9,14
 177:19 182:17 202:22
 215:11
**proofs**
183:10 226:11
**proper**
11:2
**properly**
74:1 76:8 77:8 185:19
 193:13
**property**
83:6
**proportionality**
134:3 137:10 148:19

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 278 of 293
Trustees Motion to Compel Discovery                              Arbitration 12/13/2016

Page 277

157:15 162:13 168:6
  173:8 180:14
**proportionate**
133:25 135:19 158:9
  168:11 173:10,11
**proposition**
175:23
**proprietary**
28:11 218:22 220:21
  225:5
**prosecuted**
175:9
**prosecutor**
172:16,24
**prospective**
183:14
**prospectively**
174:17
**protect**
35:15 102:15
**protected**
132:7 136:10
**protecting**
137:20
**protection**
132:20 141:5
**protective**
5:7,10 102:15 118:20
  124:22 127:14 227:16
  227:21 228:7 229:10
  229:20 230:7
**prove**
31:6 39:20 50:15
  155:25 168:18 172:18
  183:6,7
**provide**
19:14 20:20 97:1
  114:24 115:5 135:14
  142:6 155:18 207:24
  217:1 218:18 242:15
  243:1,12
**provided**
69:9 83:7 85:24 103:20
  103:23 113:1 155:3
  186:1 190:5 202:23
  217:20 235:23

**provides**
207:8
**providing**
141:17 161:19
**proving**
30:23 231:18
**provisional**
242:24
**public**
5:23 246:8
**publicly**
200:16
**Pull**
52:3
**purchase**
201:24
**purchased**
17:5
**pure**
55:18 212:13
**purely**
212:14
**purist**
54:21
**purported**
11:17 17:1 104:13
  105:17 186:2 226:17
**purportedly**
103:16
**purpose**
89:20 152:22 157:13
  209:17 240:10,11
**purposes**
52:7 162:14 219:20
**pursuant**
145:18 203:11
**pursue**
118:16 184:17 185:2,2
**pursuing**
38:5
**put**
15:13 26:9 54:1 74:18
  79:16 95:4 115:13,14
  135:1 141:12 144:6
  146:5 150:22 154:20
  164:23,24 165:1,8

172:11 176:15,16
  186:6 216:11 226:14
**putting**
34:12 97:5 162:22
  187:1
**PW**
12:17 145:17 146:15
  155:8 189:9,12,15
  190:1 192:15 193:14
  193:19,23 194:9,11
  194:19,22 196:18
**PW-related**
195:3

_____

## Q

**qualification**
105:18
**qualify**
174:8
**quality**
79:7
**quarrel**
107:17
**quarterly**
191:4
**quash**
5:10 126:13
**question**
7:24 14:6 22:7 26:19
  48:12 49:8 51:16 55:9
  64:8 68:24 110:12
  133:5,11 134:23
  140:10 144:19 157:14
  160:12 162:15,18
  164:4 174:3 175:3
  190:2,14 208:21
  212:11 215:8 227:4
**questioned**
130:9
**questioning**
238:23 239:11
**questions**
43:10 230:19 232:2
  234:1
**quick**
162:7

**quite**
187:6
**quote**
174:8 186:15,17,19

_____

## R

**R**
6:1,6 246:1
**raise**
49:10
**raised**
136:18 145:17 146:15
  200:5 215:7
**raises**
49:8
**raising**
129:8
**random**
239:13
**rapid**
141:19
**rational**
171:5
**reach**
208:17
**reaction**
94:12
**read**
16:24 84:9 120:19
  134:11 137:9,17
  139:21 149:2 171:11
  181:21 187:1 210:1
  230:13 234:21 237:15
**readily**
152:13 153:8 198:20
**reading**
23:12 79:10 172:6
**real**
17:1 47:14 61:24 94:3
**realize**
23:9
**really**
7:5 16:24 27:20 33:1
  52:6 66:24 100:16
  103:25 104:23 116:7
  150:21 163:4 180:5

182:7,12 199:23
222:14 230:6 234:13
**realtime**
5:23 181:24 182:8
199:18
**reason**
8:21 32:20 36:11,12
55:21 98:4 113:14
121:3 135:20 150:4
170:13 187:11 193:10
216:10 235:1 241:7
**reasonable**
140:15 144:16
**reasonably**
83:15 142:24
**reasons**
27:9 48:1 96:20 227:12
**reasserted**
73:1
**recalculate**
159:25
**recalculated**
18:8
**recall**
55:4 129:2 193:25
**receive**
41:23 83:22 188:25
**received**
9:18 16:12 40:17 45:3
46:8,10 64:6 65:7
71:4 77:6 90:22 93:13
93:23 95:2 103:3,7
104:2 117:3 188:13
191:20
**Recess**
80:1 122:15 229:2
**recognize**
156:15 160:3 171:22
222:15 231:15,17
**recognized**
35:2
**recognizing**
89:14 164:11,13
**recollection**
61:4 103:25
**reconcile**

226:22
**reconciliation**
20:21 173:19
**reconstruct**
174:6
**record**
17:18 58:3 59:3 61:13
76:23 80:1 106:25
108:9,10,11 112:17
112:18,19 122:15
126:14,15 136:4
139:6 147:2,3,4
158:23 174:13 176:19
178:24 179:7 182:13
195:1 198:7,9,14,18
204:2,3,10 229:2
245:21 246:12
**records**
16:22 18:22 21:2,10
22:1,2,15 31:5 49:15
49:16 51:1,1,18,21,23
51:25 54:9,12 60:4,6
60:14 61:4,8,12,16
62:8,10,12,23,25
69:11,16 71:19,20
72:4 74:7,17 75:24
92:22 94:5 102:6
112:24 113:2 133:16
134:14,17 138:14
139:9,10 140:3,10
141:8 144:3,4,21,25
145:25 146:10,11,12
146:21 149:13,21
151:25 154:2,5,12
155:22,24 158:16,18
159:16,18 160:15,17
161:22 162:20,24
163:16 166:13 167:1
167:10,13,14,19
168:19,20 169:3,11
170:5,6,11,11,19
171:15,24 172:18,19
172:22 173:1,16,23
174:18,22 175:4,7,10
176:3,3,6,13 179:9,16
182:16,17 183:6

184:13,14 185:17
188:2 191:19 194:15
196:3,4 205:24 206:1
206:2 219:4 220:8,14
220:19 221:16 222:3
222:6,14,24 223:13
223:17,23 224:7,16
224:20 226:7 230:2
**recover**
37:19 53:18 152:23
153:4
**recovered**
153:5
**recovering**
132:3
**red**
141:6
**redact**
102:7
**redacted**
39:5 101:15
**redacting**
100:23 101:1
**redaction**
101:18
**redactions**
108:13
**reduce**
24:14 203:2
**refer**
227:5
**reference**
187:16 207:5 209:23
210:15
**referenced**
11:7 204:20 209:14
**references**
27:22 215:25
**referencing**
205:8 207:2
**referring**
68:9 131:6
**reflect**
17:18 61:17 63:24
72:21 113:4 172:23
176:24 186:2 192:3

226:23
**reflected**
11:3,17 53:11,12 65:8
85:24 111:22 113:11
185:23 190:23 224:7
**reflecting**
47:17 139:10 171:16
195:20
**reflects**
60:7 166:12 220:24
226:16
**refund**
112:1,2,3
**refunds**
111:13
**refute**
206:10
**refutes**
150:1
**regard**
15:2 30:8 69:1 94:20
97:23 106:4 147:6
**regarding**
30:5 47:3 111:9 169:11
242:6
**regardless**
69:20 104:11 109:19
111:13 155:16
**Registered**
5:22
**regularly**
199:15
**regulatory**
154:11
**reinstate**
59:5
**reiterate**
220:2 225:9
**rejected**
199:23 200:6
**relate**
10:21 27:23 94:19
108:25 139:22 140:4
158:19 174:19,23
176:7
**related**

84:13,14 96:4 102:7
140:2 168:19 194:9
205:11 246:13
**relates**
15:4 46:6 47:4 75:17
76:12 83:17 87:1 97:6
100:25 106:6 112:10
130:18
**relating**
40:8 47:12 80:14 89:17
107:13 108:22 113:17
116:16 193:23
**relation**
19:2 30:11
**relationship**
62:3 207:17
**relevance**
37:23 39:6 101:19
108:13 136:14 168:5
171:6 173:8 197:15
**relevant**
11:9 12:14 32:19 36:24
37:1,6 45:8 54:9
55:11,22 94:17 98:5
102:1,12 112:1,5
133:24 135:16 137:7
140:22 141:16 142:8
153:5 155:19 168:11
168:22 169:13 173:9
177:18 188:11 189:20
192:10 194:10,11
195:4,22 200:12
202:16 215:16 216:18
218:3 221:1,17
**reliability**
167:10,14 170:8,12,17
**reliable**
22:12,21 74:8 112:24
153:21 170:20 173:23
185:24 216:11
**relied**
109:11 110:21 141:22
214:23
**relief**
91:15
**relies**

107:16 209:11 216:21
**relitigate**
228:9
**rely**
51:18 60:22 81:6
100:20 109:24 153:17
214:21 215:22 227:6
**relying**
89:23 92:12 110:11,13
216:2
**remaining**
88:14,14 89:18 241:6
**remedy**
25:25
**remember**
56:9 103:9
**remembered**
231:1
**remotely**
168:9 231:9 234:19
235:14
**render**
13:25,25
**repackage**
195:17
**repeat**
31:14 81:2 204:4
**repeated**
138:15
**repeatedly**
46:20 234:7
**repeating**
31:17
**repetitive**
122:5
**rephrase**
88:22 146:7 162:17
**report**
8:23 9:15,19,22 10:1
19:4,5,20 20:8,14,18
20:19,20 23:21 28:21
100:22 104:20,24,25
107:12,15 108:22
109:17,20,23 132:22
142:7 149:2 150:23
155:19 169:21 175:19

175:24 188:11 191:16
199:14 202:21,24
203:5 204:17,21
205:1,8 207:9 208:2
208:18,20 209:10,23
210:1,15 211:20
215:3,23 216:3,4,10
217:2,8 226:1 227:6
**reported**
199:13 246:10
**reporter**
5:22,22,23 34:9,11
**reporting**
236:18
**reports**
10:2,11,16,23 19:1,5
19:15,19 20:11 21:20
22:24,25 23:6,7,15,24
24:1 103:2,18 105:15
109:4,6 139:11
141:17 173:17 187:4
187:5,14,15,16,24
189:17,18 191:23
195:19 199:12
**represent**
27:12 134:24 137:5
166:11 176:19
**representation**
27:14 89:9 123:3
**representative**
2:21,23 19:16
**represented**
12:2 173:13
**represents**
11:21
**request**
26:25 36:13 47:12 80:4
80:13 81:9,24 82:4
83:4 87:1,5 88:13
92:15 93:12 100:11
105:12 117:18 118:11
122:19,20 124:17
129:20 130:2 131:3,7
131:11,15,19 132:14
136:5,16 137:12
138:15 142:15 143:4

143:25 147:6 151:9
157:18 161:15 166:20
167:4,5,6 168:6 171:7
174:1 175:12 177:25
180:5 181:6,12,14
186:6,9 187:1,11
192:15 195:16 197:18
197:20 199:8,9
202:25 203:8,13,21
204:12 205:3,20
206:16 210:9 212:12
214:3,7,8 215:17
219:5 222:24 224:13
227:11,12
**requested**
48:4 132:5 149:20
188:25 190:15 191:20
195:9 199:2
**requests**
31:20 47:12 79:18
122:8 123:15 126:22
127:22 129:3,6,11,23
134:12 136:13 137:16
144:16 156:10 158:6
183:2 189:7 197:21
214:4 227:18,20
228:16 234:6
**require**
36:15 48:11 108:20
143:11,12 167:3
175:12 197:17 209:21
232:9
**required**
69:22 105:19,23
148:15 154:12 186:8
**requires**
163:13
**requiring**
58:25 171:24 183:13
**reservation**
54:7
**reserve**
22:25 47:8 178:11
184:2
**reserving**
51:24

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 281 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 280

residence
237:5
resist
27:24
resolution
43:1 47:22 67:14
resolutions
81:10
resolve
18:24 25:21 43:23
  144:3
resolved
41:14
resolving
193:20
resources
213:23 222:16
respect
10:14 12:11 17:14 25:7
  32:15 36:14 40:22
  44:12 45:24 47:9
  48:23 64:3,16 71:2
  72:19 77:23 79:8,11
  79:13 80:21 81:21,21
  83:12,21 89:13 91:25
  94:7 109:5 110:15
  114:4 132:1 143:4
  145:15 169:24,25
  170:21 173:21 176:20
  183:5 184:23 191:13
  192:25 194:18 206:6
  207:11 215:12 219:3
  238:13,17 240:3,16
  240:23 241:14,19
respectfully
111:18 140:24 183:4
respond
33:7 41:19,21 46:11
  65:13 112:12 130:25
  131:14 146:20 147:5
  151:18 161:4 167:23
  186:8 244:4,7
responded
125:21 128:14
responding
49:12 95:15 112:22

113:10 120:14 207:10
  208:10
response
40:1 41:1 43:9 45:7
  49:11 52:9 88:10
  131:5 137:16 138:16
  139:18 161:14 164:3
  178:2 203:17,18
  208:20 215:17
responses
29:22 30:5 31:11,20
  40:17 41:22 50:7 51:9
  54:24 56:18 57:23
  58:18,22 87:13 94:25
  115:9 116:11 126:17
  128:11 131:25 148:6
  218:25
responsibilities
132:1
responsible
135:8
responsive
95:22 136:12 155:14
responsiveness
144:15
rest
124:2 152:2
restoration
162:9
restorations
153:12
restore
146:2 161:8 162:6
  166:8
restored
145:2 148:10 152:14
  153:9 154:20
restoring
161:24
result
12:5 196:12
resulted
11:19
results
24:20 127:21
RET

6:2
retain
222:17
retained
211:13
retired
25:25 27:11
retrospectively
174:17
return
100:24 108:24 111:16
returns
101:2 108:3,15 110:2
  110:16 111:7
reveals
209:11
reverses
200:18
review
28:20 165:2 231:21
  240:19
reviewed
30:19 130:12 149:14
revised
128:23 129:11
revision
9:24
reword
75:11
riddled
113:5 185:16 186:4
right
11:5 13:3 15:9 16:1,7
  17:22 18:14 19:23
  22:25 27:6 29:18
  30:15 31:7,16 38:22
  39:17 40:22 42:17
  50:20 51:24 52:5 53:2
  53:9 55:25 57:19 58:1
  61:2 64:11,24 65:1
  68:23 71:9 72:3 73:17
  74:5,16 75:8 78:17
  81:4 83:22 85:20 90:3
  92:6 93:20 95:13,25
  97:9,16 98:11 99:14
  99:18 105:2,7,14

106:19 107:3 109:12
  110:1,5 112:15,16
  114:11,13,22 115:25
  116:25 118:1,23
  120:6 121:15,19,20
  122:5,20 123:18
  125:13 127:9 128:15
  128:18,20,25 129:16
  130:23 131:1,4
  133:18,20 137:25
  138:23 147:25 161:11
  161:12 163:22 169:4
  169:19 170:2 171:18
  171:21 173:2,5 176:8
  176:11,20 178:4
  180:9 181:5 183:25
  184:21 189:5 190:10
  194:21 196:15 198:3
  201:1 202:10,11
  203:7,15 206:12,19
  207:6 211:14,18,23
  213:1 214:11,25
  217:14,17 221:20
  223:3 225:17,20,22
  231:11 233:21 234:2
  237:18,25 238:4
  241:3 244:8,9
right-hand
17:7
rigorously
199:20
rise
60:15
road
41:25 119:3 153:24
  163:14 172:14 194:24
  210:3
Rockefeller
6:15
role
38:3 132:2
room
134:18 135:2,12 138:8
  138:10,13,25 139:1
  139:17,22,25 140:6
  140:11,12 141:8,12

141:18 142:12 144:6
144:14,22 145:13
146:2,5,11 147:20
148:10 150:23 151:25
154:21 156:17 160:16
164:23,25 165:2
166:14 187:25 188:9
188:15 209:15 216:1
217:2 219:17,23
222:11 236:13
**rooms**
236:17,20
**roughly**
9:10 68:18
**routinely**
94:10
**rule**
8:1 24:12 49:2 99:12
99:16 102:5 104:15
105:19 117:19 133:22
134:2 136:19 137:19
145:1 148:19 173:7
177:17 197:23 213:10
219:14
**ruled**
44:11 45:9 80:11,18
97:12,25 99:13
119:14 185:19
**rules**
101:19 106:4 109:13
140:17,22,23 141:3
155:23
**ruling**
8:6 13:13,16,19 14:3
14:17 39:1,25 40:2,6
45:24 49:1,4 80:21,23
81:20 82:9 91:21
93:22 95:4 96:7
106:17 107:10 109:4
110:15,20 180:24
200:18 201:16 228:24
**rulings**
7:5,6 8:12 14:7,20 38:2
38:20 42:23 127:6,8
127:13 128:6 137:18
**running**

148:22
**runs**
46:14
**RUSSELL**
3:6

## S

**S**
3:13 6:6
**sake**
34:7
**salient**
142:8
**SANFORD**
3:13
**SARA**
1:18
**satisfied**
216:7
**satisfy**
33:6
**save**
235:8
**saw**
18:25 144:8 245:2
**saying**
17:13 21:18 26:25 32:8
35:6 46:1 53:3 58:15
63:19 74:10 79:5 84:8
90:12 92:7 99:5,8,10
99:22 104:17 113:20
120:22,24,25 121:3,4
121:9,11 142:25
144:5 149:11,12
161:4 166:1 169:2
172:3,16 175:10
208:1 217:8 219:16
230:25 232:10 243:15
**says**
21:12 33:9 42:6 51:6
74:6 75:25 77:8 82:9
82:10,14 83:14 84:10
87:13 88:4 93:4,7,16
96:20,22 98:17
101:12 103:22 113:10
117:5 118:7 142:3

148:21 221:18 224:23
**scale**
196:24
**scanned**
148:9
**scenario**
60:8 75:24 150:7
**schedule**
41:9 42:25 43:14,20
**scheduled**
146:16 239:21,22,24
243:13
**schedules**
41:12 108:15,24 111:8
**scheduling**
9:1 41:17 43:18,21,23
**scheme**
18:11 28:6,25 153:20
218:9 221:11
**scope**
111:12,23 132:16
136:13 145:19 224:9
**Scott**
199:3
**scoured**
154:17 224:19
**screwing**
43:14
**search**
163:7
**searched**
138:24
**SEC**
154:22
**second**
18:16 31:1 34:19 60:8
60:10 83:12 85:17
108:8 129:10 138:4
145:21 146:8 147:15
163:11 164:3 198:12
200:17 204:14 206:25
245:2
**Secondarily**
194:22
**secret**
156:22

**secretary**
233:13
**section**
144:23 145:8 217:12
**securities**
1:4,10 2:2,9,17 3:2,9
3:16 4:3,16 17:5
28:15 120:12 132:19
148:24 159:12 175:7
201:25 207:12,14
223:18
**security**
223:8
**see**
13:12 16:11 26:6 27:17
27:21 28:21 39:25
42:1 46:1 47:9,13
48:8 50:6,16 64:19
66:16 67:13 71:12
77:22 79:22 85:7
95:10,13 102:10
120:13,16 122:11,13
123:12 124:2,3
127:18 129:20 146:6
146:8 147:12 149:3
150:16 153:25 162:6
188:16 203:5 217:8
224:21 230:4 240:4
**seek**
74:18 178:12
**seeking**
33:13 35:18 46:16
107:19 181:12
**seeks**
203:22
**seen**
10:16 44:1 158:23
170:16
**segregated**
190:9 219:21
**SEIMS**
1:18
**selected**
144:5
**selection**
136:7,8

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 283 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 282

self-serving
18:20 149:5
send
17:25 23:5 112:10
162:5 163:2
sense
8:5 19:3 24:5,19 31:10
67:16 99:3 127:23
137:5 152:3 153:21
162:8 196:24
sensible
161:8
sent
15:6 44:19 45:2 73:11
144:8 179:11 191:11
235:15 244:19 245:9
245:9
separate
104:5 192:16 194:8
237:8
September
103:10
sequelae
184:1
sequitur
141:7
serve
90:24 157:13
served
8:23 9:15 10:4,6 23:7
104:3 124:15 125:4,9
125:10,18,20 128:22
144:24 192:6 213:10
service
236:18
Services
199:1
set
13:20 21:2 23:14,20
34:20 73:5 112:14
126:22 128:20,23
129:10 135:17 164:11
170:11 188:8 201:5
202:17 223:10 234:1
244:5 246:17
setoff

72:23
sets
16:3
setting
103:15
settlement
155:23
seven-hour
234:24
shadow
226:9
share
34:21
shared
154:24
shares
218:19 223:11
shed
63:11
sheet
223:25
shield
108:19
shielded
213:18
short
79:19 80:5 142:14
167:2 200:16 231:4
short-term
96:24
shortcuts
214:1
shorthand
5:22 20:17
shots
107:11
show
22:10 33:3,4 37:3 39:4
76:17 82:12,15,24
83:1 136:9 165:12
176:9 220:9,10
showed
134:4 179:17
showing
38:23 39:1,2 170:19
230:25 232:8

shown
49:14 50:9 133:6,13
134:25 191:4 225:15
shows
53:24 101:16 158:24
shut
95:4
siblings
232:23
side
11:23 13:14 14:13
27:15 36:10 58:11
76:22 114:25 140:5
143:13 148:23 241:5
sides
7:10 31:24 49:21 94:13
94:22 107:11 165:16
signature
231:17
signed
40:24 45:3 115:8,10
233:14,15,15
significance
159:22
significant
221:22
signing
41:6
similar
25:20 30:20 81:13
154:24 168:8 195:19
236:19
similarly
25:23 64:16
simple
26:25 163:7
simplify
8:11
simply
48:2 51:24 72:24
152:17 183:2 199:5
200:4 207:4 214:23
226:7
single
70:12 93:3 116:2 139:5
153:4 157:25 159:25

167:11 171:1,8,10
180:6 181:8 199:14
219:21
SIPA
1:2 4:2,16 137:23
140:25 142:16 190:7
199:2,24
sir
44:7 76:16 88:2 124:7
238:20 244:22
sit
231:21
sitting
133:10 134:24 217:4
228:14
situation
97:20 216:8
six
5:11 23:17 94:5 138:11
six-year
52:15
size
161:6
skipped
189:3
slickly
93:9
slightly
87:17 128:23 129:21
142:1 171:11
slow
234:13
smaller
24:1
smart
23:2 44:17,21
smarter
226:19
SMB
1:3,12 2:4,10,18 3:4,10
3:18 4:4,18
smoothly
238:7
so-and-so's
136:25
so-called

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 284 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 283

137:14
**software**
162:2
**sold**
151:14
**solid**
243:4
**solutions**
135:6
**solve**
14:23
**solved**
71:8,23
**solves**
60:17 65:12 67:14 72:2
**somebody**
17:22 20:2 56:12 65:10
112:8 168:17 172:21
174:13 175:9 176:2
181:24,25 182:6
195:8
**somebody's**
175:5 237:2
**somewhat**
40:14
**son**
230:20
**soon**
94:11
**sorry**
22:4 44:13 64:13
125:14 175:22 178:17
189:1 201:18 218:17
233:3
**sort**
7:17 10:11 20:17 22:22
41:13 43:7,9 50:6
80:11 86:2 93:9
102:25 104:13 144:16
173:25 182:7
**sought**
35:10 173:9 229:9
**sound**
79:14 150:6
**sounds**
27:19 40:15 92:8

**source**
103:20 109:16 138:7
138:20 146:4 157:8
**SOUTHERN**
1:1
**speak**
22:25 153:12 225:24
**speaking**
143:11
**speaks**
49:19
**specific**
10:13,14 40:13 53:21
74:15 78:8 94:15
164:9 168:19 177:19
179:5 190:25 191:8
194:6 195:5 209:2,17
212:16 215:24 225:6
227:3
**specifically**
12:17 30:20 36:14 43:3
59:14 67:1 108:25
111:9 130:16 134:16
136:5 145:6 149:18
190:5 192:5 219:18
220:8 227:25
**specificity**
123:15
**specifies**
223:5
**specimen**
19:4 23:21
**speculation**
168:10 212:13
**speculative**
213:15 219:8
**speech**
213:21
**Spell**
9:4
**spend**
31:3 58:4 139:16
**spending**
157:22
**spent**
135:5 139:1

**spit**
226:15
**spoke**
7:3 130:6 131:16
211:13
**spoken**
131:23 211:1
**square**
51:8
**squarely**
132:9 225:25
**ss**
246:4
**stage**
98:23 100:15,17 101:6
178:6,10,11 180:19
180:21 183:22 194:12
197:10
**stand**
172:21 209:7
**standard**
104:14 173:6,7
**standards**
148:20
**standing**
27:13 199:24
**stands**
16:15 18:18
**start**
7:1 21:7 25:19 122:4
124:10 126:16 204:6
221:15,25
**started**
17:13,14 150:19
221:18,19
**starting**
31:11,14 133:21
**state**
5:24 33:18,23 35:5,12
46:9 91:14 120:12
130:8 201:23 205:7
215:19 246:3,8
**stated**
14:15 216:24
**statement**
11:18 21:16 152:17

169:2 171:9 179:18
181:16 188:7,23
225:16 226:2 228:23
**statements**
11:4 18:20 20:24 21:5
21:8 22:5,5,11,13,16
22:22 130:8 173:20
180:3 181:9 184:13
185:23 188:8 190:24
192:2 194:14 195:18
206:4 223:9 226:8,16
226:22
**States**
1:1 35:6 36:4
**stating**
142:4
**status**
164:8
**statute**
85:5 141:1,3
**statutory**
153:6
**step**
24:22 158:6 190:16
225:15
**stick**
43:4
**stip**
74:10
**stipulate**
57:15 58:16 59:19,21
62:21,22 63:3,22
65:19 68:7 187:14
189:13 240:2
**stipulated**
69:1 71:25 115:21
116:6 119:20 123:20
178:24
**stipulates**
187:9 193:18
**stipulating**
63:6 83:25 84:2,16
**stipulation**
14:19 55:3,8 56:14
57:17,25 58:3,23 59:9
59:11 60:17 65:5

Trustees Motion to Compel Discovery                                    Arbitration 12/13/2016

66:12 71:8,12,23
72:16 74:12 75:15
76:1,12 77:5,20 79:20
86:9 88:20 92:2
113:25 114:4 120:1
238:3 240:13,15
241:10 242:5
**stipulation's**
76:4
**stipulations**
234:5
**stock**
11:17 145:24 149:20
149:22 154:2,4
158:24 159:11 185:24
207:19 220:11
**stocks**
196:11 206:3 218:7
225:4
**stonewalled**
234:7
**strategy**
132:11 191:7
**streamline**
79:23 122:11,13
**Street**
6:9
**stricken**
97:7
**strict**
168:14
**strike**
232:12
**stroke**
230:11
**struck**
8:19 97:11 230:18
**struggling**
31:19
**stuck**
113:13 184:6 231:2
**studied**
95:21
**stuff**
108:2 113:4,6 145:24
**subcommittee**

198:25
**subfolder**
188:3 219:22
**subject**
10:23 18:14 91:6
140:22 145:22 202:20
203:9 215:21 216:18
217:6
**subjecting**
232:4
**submitted**
105:21 128:17
**submitting**
100:4
**subpoena**
29:24 90:24 144:25
145:2
**subpoenaed**
154:7,22 158:17
224:17,18
**subpoenaing**
94:4
**subpoenas**
29:13 213:10
**subsequent**
32:3 35:4 39:11 46:17
64:20 66:20 67:4
78:21 95:19 96:3
112:4 116:12,17,22
117:8 123:1,8
**Subsequently**
204:22
**subset**
190:18 191:15
**substance**
130:8 150:22
**substantial**
138:5 163:13
**Substantively**
1:5 4:2,15
**substituted**
129:5 201:5
**substitution**
129:22
**success**
148:2

**such-and-such**
165:7
**sudden**
216:9
**suddenly**
230:25
**sue**
35:22 36:2 37:19 153:2
193:8
**sued**
38:9,11 39:15 117:15
123:2 168:21 176:22
**sued-upon**
194:19 195:23,25
**sufficient**
33:3 37:3 82:12,15,24
82:25 83:5 183:11
**sufficiently**
91:16
**suggest**
27:17 122:9 156:23
**suggested**
55:1
**suggestions**
63:17
**suing**
38:20 136:25
**suit**
143:14 152:22
**suite**
6:10 236:19
**summary**
141:17 142:7 175:17
207:22,24 208:17
210:18
**supplement**
155:19 217:2
**supplementation**
65:6
**supplied**
104:12
**supplying**
100:8
**support**
88:7,25 91:12 149:14
164:25 191:25 206:9

206:17 207:3
**supported**
149:7
**supporting**
101:14 106:24 176:18
**supports**
15:7 150:1,23
**suppose**
24:16 60:11 75:22
105:4 117:18 118:16
133:12 156:20 164:2
175:8 179:20 190:14
**supposed**
50:16 90:20 104:21
**Supreme**
35:6 36:4 46:15 198:13
**sure**
8:20 9:6 15:11,17
16:23 24:7,24 25:5,12
27:13 29:4,15 30:18
31:15,25 34:5 38:18
43:25 54:20 58:24
73:12 79:21,24 80:9
90:1 92:23 97:17 98:3
100:16 101:25 103:5
104:22 117:20 120:19
122:14,24 124:11
130:16 134:10 137:9
137:19 170:4 175:22
181:5 187:6 211:10
217:19 229:12 235:25
245:1
**suspenders**
41:24
**Swain**
36:18
**sways**
106:16
**switched**
155:9
**sworn**
110:6
**sympathetic**
108:18
**sympathize**
15:18

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 286 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 285

system
179:20 226:14

**T**

T
4:7 246:1,1
**Tabernacle**
115:22
**tacking**
110:19
**take**
24:4 31:7 35:7,11
39:21 59:25 63:7
64:21 78:2 79:19
82:11 97:15,22 107:3
107:11 109:22 120:22
122:10,12 138:18
155:23 157:1 160:13
162:18,22 163:3
166:7,10 174:10
202:14 229:14 234:15
**taken**
17:4 37:19 53:25 57:10
62:24 78:12 96:22
121:18 136:1,21
158:10,12 165:4
231:6
**takes**
52:13 57:17 148:14
162:15 164:15 235:7
**talk**
30:12 31:10 38:24 70:4
70:14 124:4 128:6
163:23 244:19
**talked**
86:10
**talking**
11:12,14 19:18 23:8
25:13 49:20 52:20
58:21 59:14 67:24,25
68:21 72:6,12 85:18
85:19 87:10 126:9
192:5 205:23 224:10
229:24 244:1
**talks**
74:21 81:9 187:7

207:10,16 230:12
**tangentially**
15:4 30:8
**tape**
148:12 162:1
**task**
172:4,5
**tasked**
152:25
**tax**
97:20 100:24 101:1
106:18 107:13 108:15
108:24 110:14,15
111:7 112:3 116:1
**taxes**
96:23 97:2,8 100:5
103:16 104:10 111:8
111:10 112:2 117:11
175:17,18
**Taylor**
132:8
**team**
26:10 157:20 158:17
158:23 160:17 164:1
174:4
**Ted**
21:23 124:17 125:1
136:17 138:9,12
144:2,5 150:21
**Ted's**
125:12,15
**telephone**
7:3
**tell**
24:18 30:11 34:24
39:22 41:10 43:17
46:18 69:3 75:3 88:3
107:9 138:12 139:2
172:13 176:18 225:7
225:21
**telling**
12:20 46:11 116:19
159:23
**templates**
226:11
**ten**

89:19 90:10 93:25 95:5
96:9,11 109:7 172:25
**tens**
171:23
**tense**
171:13,13
**tension**
35:2
**tentative**
127:7
**term**
117:21 190:18
**terminal**
145:3 154:18 220:25
226:9
**terms**
19:8 24:11 68:4 133:1
155:24 162:17 163:6
165:23 205:9 222:20
**terribly**
166:3
**territory**
163:5
**testified**
18:3 159:2
**testify**
175:10
**testimony**
17:19 110:6 120:15,17
145:18,20 146:18
149:6,24 150:1
153:18,20 202:8
213:11
**Texas**
6:10
**text**
87:25
**thank**
22:3,13 40:15 70:8
86:23 91:8 167:7
182:11 197:19 210:4
229:1 244:24
**Thanks**
76:19
**theoretically**
189:8

**theories**
213:15
**theory**
14:3 186:8 219:8 225:2
**thin**
152:21
**thing**
7:25 8:15 15:16 40:5
45:13 46:18 98:9
99:20 100:2 102:24
105:3 138:4 139:22
150:17 170:3 179:23
235:5 236:4 238:7
**things**
7:14 24:13 31:17 42:18
43:16 69:5 100:12
116:10 141:11 163:9
207:20 212:13,14,19
228:3
**think**
7:12,14,18 8:10 14:23
19:17 21:23 23:25
24:19,25 25:6 26:2
29:8 30:7 31:13 33:24
34:4 35:13,24 36:5,8
36:9,15,17 37:24 43:6
45:9,14 46:13 47:13
47:21 50:1 55:4,14
56:19 57:21 59:2,12
60:15 62:19,25 63:1
66:2,3 68:8 69:6 70:6
70:22 71:9 72:8 73:15
73:21 74:4,11 75:6,14
77:4 78:14,24 80:6,10
80:18,25 81:12 82:8
85:6,20 86:2,16 89:9
91:18 92:1,24 94:13
95:12 97:6,11 99:7
100:1,12 104:18
109:14 110:17 111:20
112:6 113:15,23,24
115:24 117:2,12
118:2,17 119:13,14
119:15,19 121:7,13
122:17,18,23 124:14
127:18 129:14,23

Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

130:17 133:2,11,20
134:9,22 135:19
136:19 137:11,16,21
142:1 144:11,15,19
150:3 153:20 162:12
164:18,21 165:5
167:3,21 175:18
176:15 179:6 180:13
180:14,24 181:11
184:3 186:11 192:12
194:7 197:15,22,24
198:17 199:10 201:13
202:15 205:4,19,21
206:20,21 207:25
208:8,12 210:24
211:24 217:7 218:11
223:1 227:18 228:5
228:10 229:5 231:11
237:5
**thinking**
125:3
**thinks**
58:11
**third**
89:25 90:17 93:13,24
150:9 164:14 216:25
**third-**
95:19
**third-party**
21:2,9 29:13 51:1 60:4
62:11 90:19 94:4
112:24 113:2 158:16
160:15 184:14
**thought**
7:1 12:19,21 26:24
29:19 31:9 54:23 66:5
114:5 116:17 147:22
222:22
**thousand**
21:12 163:17
**thousands**
171:23 224:1
**three**
5:2 30:13 63:14 68:21
73:8 91:6 94:15,21
98:22 103:4 114:6,8

163:9 170:16 192:4
221:9 232:23 238:9
238:10
**throwing**
106:17
**Thursday**
244:11,14,20
**time**
19:6 22:18,21 26:13
28:16 31:3,13 33:4
36:24 37:1,4,6 43:23
58:4,6 59:17 60:13
61:21 63:21 69:14,21
72:9 81:15 93:19
105:13 108:21 120:21
139:1,16 145:25
148:14 149:8,24
150:9 151:11 153:16
154:19 157:1 162:15
164:7 171:3,9 173:24
174:7 185:6 195:20
197:18 198:24 199:4
200:4,6 204:8 207:15
217:21 218:5 222:9
231:15 234:20 235:7
235:9,14,25 245:23
**timeline**
103:1
**timely**
100:8 105:22
**times**
23:17 123:25 145:11
**TIMOTHY**
4:9,11
**TOBY**
2:6
**today**
9:14,21 10:19 14:7
19:18 24:12 29:25
52:20 68:25 70:3
79:11 103:22 104:7
128:5 133:10 134:24
155:7 168:2 170:16
183:16,18 185:22
200:9 209:16 217:4
237:14 239:18 240:3

244:5
**token**
101:24
**told**
49:22 119:10 122:4
130:10 174:13,15
188:5 197:4 219:17
**tomorrow**
163:2,9
**topic**
135:1
**total**
218:20
**touch**
134:20
**town**
165:7
**trace**
46:25 91:16
**tracing**
92:3
**track**
152:4 220:9 223:17
**traded**
218:7,20 225:4
**traders**
211:2
**trades**
28:15 139:8 156:11
159:9,12,13,15,17
160:3 211:3,4
**trading**
28:11 61:20,23 138:14
139:5,9,10 140:3
144:3,4,21 145:24
149:21,22 151:25
154:2,4 156:12
158:19,24 159:7,8
160:17 162:20 166:13
185:25 186:2,3 191:6
205:24 206:1,2,5
207:12,14,19 211:14
218:19,23 220:21,24
223:12,14 224:8,14
224:23 225:5 226:12
226:17,24 227:2

**traditional**
175:5
**Train**
4:6,7,8,9,10,11,12 5:4
30:16 31:11,25 32:16
32:25 33:2,9 36:14
40:18 43:2 45:2 49:7
52:4 53:24 54:21
59:14 63:20 64:10,14
64:15,18 66:11,25
68:22 74:23 79:14,18
80:5 89:13,15 96:14
**trans-**
20:22
**transact**
159:13
**transaction**
20:22 67:8 191:8
**transactions**
11:2,3,8 12:4,17 63:23
63:25 102:7 177:7
189:10 193:14 194:20
224:2
**transcript**
5:17 24:15 58:8 81:6
246:12
**transfer**
15:24 48:1,4 52:14
66:9 70:1 79:2 83:8
84:4,6 85:8 98:4
115:17 117:4,9
184:13 188:1 194:15
196:2 241:14,19
**transferee**
34:22 39:11 46:17
64:20,25 65:2 66:20
96:3 116:13,18 117:9
117:15 123:1,2,8
**transferees**
32:5,6 35:4 95:20 96:5
**transferor**
16:10,18 60:13 67:4,18
68:5
**transferors**
32:3
**transferred**

67:18
**transfers**
10:13 11:13 46:7,10
47:13 48:21 54:18,22
55:16 56:6,13 60:9
62:5 68:9,12 74:1,22
74:23 78:20,21 83:11
83:16,21 95:19 96:21
136:1 188:13 196:1
**translatable**
7:17
**transparency**
141:21
**transparent**
135:10 157:24
**trauma**
231:24 232:5
**treasure**
166:6
**treasurer**
175:6
**treated**
32:10
**trial**
17:9 51:17 54:10 56:23
56:24 64:2 65:22
72:23 73:1 74:19 75:9
78:18 98:17 110:9
116:7 155:11 174:20
174:21 216:22 230:25
**trials**
75:20
**tried**
7:20 35:15 53:21 58:5
154:8 226:6
**trouble**
175:15
**trove**
166:6
**true**
18:4,19 46:20,23 66:10
71:6 91:24 127:5
150:25 184:9 200:4,5
200:8 246:12
**truly**
239:14

**Trump-like**
108:3
**truncate**
236:2
**Trust**
1:14,16,19 139:13
**trustee**
1:9,16,18 2:1,8,16 3:1
3:8,15 4:1,15 6:9 8:2
8:20 13:21 16:17 17:4
17:23 20:25 26:3 28:5
28:13 30:12 35:9,13
35:18 37:25 38:5,6
49:9,17 51:6,18 53:17
57:7,9 58:9 64:21
67:3 71:16,17,20 72:3
74:6,18 75:21,22
84:16 89:23 90:18
94:2,4 100:13 102:1
106:2 108:1 126:18
132:20 135:4 136:20
137:1 138:1,17 142:6
142:18,19 144:5
152:2,18,25 159:18
159:24 164:23 165:16
165:19 167:11 168:18
170:24 174:21 183:16
193:9,13,17 198:21
199:12 203:20,22
204:12 211:20 212:9
222:19 229:8 232:7
232:15
**trustee's**
5:1,7,11 11:16 18:9
29:3 37:18 42:8 53:15
61:6,15 63:11 73:24
92:12 100:23 107:22
124:6 131:21,25
132:10 134:13 136:25
137:10 139:7,19
141:2 144:13 153:10
167:17 182:16 186:18
186:21 199:15,24
202:7,17 206:10,11
211:1 213:24 241:5
**truth**

151:17 159:24
**try**
7:10 8:17 9:15 24:18
51:18 91:3 162:7
204:23 231:10 242:9
242:25
**trying**
15:13 43:13 46:24 47:1
55:17 99:21 104:19
113:16,24 129:19
155:25 156:1 160:24
179:5 228:22 231:25
**Tuesday**
5:18 146:24 147:7
150:8
**turn**
29:3 36:13 60:19
154:15
**turned**
140:1
**turning**
96:18 129:25
**turns**
180:19
**tweaking**
94:14
**two**
7:9 24:15 27:9 28:17
33:1 37:20 40:17 44:2
51:8 56:8 59:25 63:9
87:20 89:16 91:4
103:6,11 108:24
111:16 122:22 129:3
129:6,23 136:18
144:9 147:14 171:16
181:21 186:10 194:8
221:9 231:2 234:15
**two-paragraph**
208:4
**two-step**
43:7
**two-year**
52:10,14 55:23
**type**
11:8 32:19 33:9,14
161:21 162:1 220:11

**typed**
233:13
**types**
194:8 195:19 227:20
**typical**
20:7
**typically**
101:21 108:13 143:12
230:16 236:9
**typo**
113:14 174:7

_____
**U**

**U.S.C**
217:12
**U/ART**
1:14,17,19
**ultimately**
41:14 58:15 214:9
**unable**
71:5 112:23
**unannotated**
156:23
**unavailable**
243:8
**unaware**
180:7
**unbelievable**
229:22
**unchartered**
163:5
**undefined**
174:9
**underlies**
16:18
**underlying**
100:14 101:13 102:22
103:19 104:9 106:3
107:15 142:11 187:24
189:18 197:11 207:4
219:11
**understand**
12:22 25:1 32:12 37:9
38:2 41:11 47:2 49:22
52:15 72:5,11 84:1
113:23 140:7 142:15

143:14 159:22 164:10
164:17 175:2,23
181:6,11 192:18
198:2 208:2 211:11
225:2
**understanding**
12:23 21:25 23:6,21
39:9 160:25 161:6
192:19 209:1 225:23
**understands**
28:5
**understood**
125:25
**undertake**
140:19 153:11
**undertaken**
135:13
**undertaking**
183:15
**undisclosed**
36:12
**unduly**
172:4 202:16
**unfolded**
193:14
**unfolds**
155:8
**unfortunately**
220:17 221:16
**unilaterally**
102:6
**unique**
23:22 97:20 169:1
212:10
**uniquely**
69:12
**unit**
159:5
**United**
1:1 35:5 36:4
**universal**
227:17
**universally**
14:8 192:21
**universe**
22:12 135:15 152:2

**unnecessary**
14:21 41:20
**unprecedented**
134:13 166:23
**unqualified**
239:14
**unredacted**
107:14,18 108:21
109:1
**unrelated**
177:21
**unreliable**
75:9
**unreported**
96:23
**unresolved**
183:1
**unresponded**
151:22
**unsympathetic**
42:5 104:16 213:20,22
**upcoming**
204:20
**update**
164:7 222:8
**updated**
199:5,15,18
**use**
44:5 48:5 94:16 102:17
132:13 147:9,16
179:20 235:16
**useful**
95:9
**useless**
165:24
**user-friendly**
24:18
**usually**
21:9
**utility**
174:11

**V**

**v**
1:13 2:5,11,19 3:5,11

3:19 4:5,19 5:3,4,4,8
5:12,13,13,14,15,15
5:15 132:8
**vague**
174:9
**valid**
102:18 136:13
**value**
83:6,15,20 84:8,21,25
85:2,21 86:4 218:20
**vary**
232:16
**vendor**
162:6
**vendors**
163:25
**veracity**
110:7
**verbiage**
121:16
**verification**
173:22
**verified**
115:11
**verify**
21:19 111:19 115:12
115:13,15
**vernacular**
44:5
**versa**
34:15
**version**
129:11 156:24 208:4
**versions**
186:10
**versus**
217:13 220:22
**vi**
5:15
**vice**
34:15
**victims**
165:21
**video**
231:10
**view**

38:7 41:13,15 67:4
97:18 106:10 137:4
149:15 151:6,8,14
165:1,21 174:24
**viewing**
100:21
**virtually**
8:6,8 82:9 243:4
**virtue**
77:20 238:2 239:18
**volume**
135:7 142:4 156:15
159:10 218:19 220:10
220:20 223:19
**voluminous**
69:9 149:7
**volunteered**
44:16
**volunteering**
51:14

**W**

**W**
3:12
**waffle**
239:16
**wait**
39:25 47:9 120:16
191:23 243:21
**waiting**
94:5
**waive**
75:7,12 241:23
**waived**
78:7 204:16
**waiver**
75:10 143:8,23
**waiving**
74:16 84:24 85:3,13
157:12
**walks**
20:2
**wall**
7:13
**want**
15:15 16:10 23:13,20

24:8 41:25 48:4 54:10
60:22 75:7,10,12 80:7
81:7 84:25 85:7 87:23
96:2 98:12 100:2
106:4 110:4 111:25
112:7 116:14 118:15
122:24 140:14 143:18
146:19 147:16 151:12
153:2,3 156:25
159:16,16 179:7
192:24 197:24 216:8
224:8 225:23 243:6
**wanted**
15:24 29:7 49:10 66:5
109:9 218:12 225:12
**wants**
13:13 25:2 30:12 35:19
39:18,22,23 70:4 89:9
108:2 138:17
**warehouse**
148:7,8 152:5,11 154:1
165:6
**warn**
23:14
**warrant**
214:1
**warranted**
210:2
**wasn't**
97:17 179:5 223:21
226:9
**waste**
19:6
**way**
8:21 42:25 47:6 49:1
53:2 55:13 68:2 80:21
98:1 99:16 105:4
107:10 118:24 127:21
137:11 145:14 149:12
156:13 157:11 165:10
165:18 172:6 175:14
176:15 193:20 194:1
195:1,9 197:13
208:13,14 211:11
230:12 232:1,8 234:9
236:6 239:3 246:15

**ways**
31:21 52:8 168:25
181:21 226:21
**wayside**
238:2
**we'll**
13:12 15:12 25:12
31:16 43:11 80:19
92:5,12 98:18 119:2
129:9 134:11 155:17
195:7 200:19 210:2
217:1,1,2,3 233:20
236:5
**we're**
7:13 9:17 12:24 14:17
18:24 19:18 21:18,20
23:8 24:9 26:21 32:14
33:13 36:22 42:18
44:2,21 46:21,24 47:1
48:19 51:12 52:20,24
53:5,9,10,14,14,21
58:4,21 59:14,18
60:16 68:21 72:11
78:1,4 81:5 83:11
84:16 85:19 89:22,24
97:7,14 100:21,22
101:3,4,5,5,9 107:2,7
107:19 113:16 114:20
119:15 121:8 124:5
129:9,14 133:2 135:8
146:13 153:24 156:15
160:24 161:13,23
163:5 164:21 165:5
167:21 171:23 172:20
184:20 192:4 193:11
194:5 201:21 218:12
219:16 220:1 222:15
224:10 229:24 244:5
245:21
**we've**
15:20 38:9 46:19 58:5
61:9 77:5 80:6 89:1
94:3 95:16 97:13
100:8 113:1 118:25
119:23 120:1 123:24
134:17,25 135:12

138:24 139:16 142:13
144:7 145:10 147:18
152:4 155:2 158:7
167:4,8,10,15 177:5
185:21 188:9,13
213:17 215:25 219:11
220:4 224:25 231:6,8
231:9 234:4 235:3
236:11 237:3,13
**website**
199:16
**week**
42:15 164:4 235:23
242:3,16 243:2 244:4
**week's**
164:7 222:8
**weekend**
224:22
**weeks**
94:5 138:11 174:10
**weigh**
162:10
**WENDY**
4:12
**went**
12:5 16:25 46:25 66:6
102:4 154:6 189:4
204:25 232:18
**weren't**
102:7
**WESTCHESTER**
246:5
**WHEREOF**
246:17
**wholly**
108:15
**widow**
229:14
**wife**
115:2 230:11
**wild**
170:25
**Wilenitz**
1:14,15,17,19 5:8 9:13
10:18 124:12,18
125:7,9,14 126:1,2,11

127:3,25 128:4,10,20
130:2,17 133:23
168:1,24 169:2,6,10
169:17 218:15 227:25
**Wilenitz's**
133:17
**willing**
7:13 165:15 237:2
240:14 242:4
**window**
57:24 72:15,17 120:4
**wish**
242:10
**wished**
187:20
**wishes**
219:9 221:3
**withdraw**
58:23 59:4,20 75:1
78:23 81:13 84:11
98:10 113:4
**withdrawal**
10:24 11:2,15,16 12:4
12:10,25 13:2,5 15:3
15:23 23:16,23 56:10
56:10 61:11 64:17,17
64:18 65:8 66:10
69:24 84:7,7,15,22
167:16,20 169:21,25
179:18 184:18 188:22
190:6,11,17 191:10
191:14,21 192:22
194:4 195:10
**withdrawals**
16:4,11 35:23 37:19
49:13 50:9,15 51:5,12
52:11,25 53:12,22
54:6 57:9 59:22 62:6
62:22 64:13 74:2,15
74:25 84:9,17 96:22
113:11 115:17 116:5
117:10 120:11 169:11
171:17 177:8,22
187:10 190:19,21
191:5,11 192:1
231:19 235:7

08-01789-cgm    Doc 15393-16    Filed 03/21/17    Entered 03/21/17 16:58:13    Exhibit 16
Pg 291 of 293
Trustees Motion to Compel Discovery                          Arbitration 12/13/2016

Page 290

withdrawing
57:3 72:20 98:6,11
withdrawn
59:4 71:4 73:1,4,8,15
  73:21 74:12 77:2,7,13
  87:6 88:23 91:23 92:2
  92:5 179:13
withdraws
106:12
withheld
122:25 123:6,10
withhold
45:15 70:22 77:22 79:5
withholding
45:14 116:15
within-entitled
246:11
witness
17:8 104:12,13 172:20
  213:3 246:17
witnesses
212:25 236:3 243:7,9
woefully
169:12
wondering
19:2
word
28:10 31:22 39:21
  45:20 50:18,18 82:5
  82:17 86:11 113:13
  228:21
wording
94:14
words
45:18 56:23 58:12
  59:21 63:7 150:17
  159:9 186:22,24,25
work
7:10,20 8:17 65:16
  128:8 131:21 132:7
  135:22 136:5,10,15
  137:12,13,14,20
  141:4 142:22 156:13
  156:20 157:5,12
  165:11 204:13 208:16
  210:11,22 212:7

213:17 214:4 239:25
  242:10,14
work-product
132:9
worked
31:21 232:13 234:4
working
25:14 26:7 135:6
works
56:14 244:23
world
149:15 151:5,8 154:7
world's
153:19
worry
23:11 119:4,5 229:23
worrying
184:3
wouldn't
8:10 27:4,6 37:15
  77:19 94:18 131:13
  136:11 176:22,23
  212:4
write
86:8
writing
138:15 191:12
written
36:19 143:20 145:10
  206:21 217:11 232:2
  234:1
wrong
44:24 71:24 75:4
  117:25 122:18 171:19
  182:2
wrote
181:25 196:10
www.madofftrustee....
199:16

_____

                X

X
8:2 58:16 165:7 196:10
  211:13 220:11

_____

                Y

yeah
63:18 81:2 84:23 87:20
  94:1 121:6 123:24
  150:13 245:11,11,18
year
111:13 201:22 214:20
  223:10
years
9:25 36:18 37:20 112:4
  135:6 154:13 157:22
  163:21 174:10 234:5
Yep
25:5
yesterday
26:5
yield
177:3
York
1:1 5:20,20,24 6:4,4,16
  6:16,21,21 159:11
  237:6 246:3,8

_____

                Z

_____

                0

08-01789
1:3

_____

                1

1
44:25 45:6 46:2 47:10
  52:13,23 54:15 55:10
  55:21 63:24 75:17
  80:13 86:15 96:20
  113:17 114:12 123:21
  131:8,15,20 134:18
  135:12 137:25 139:22
  139:25 140:6,11,12
  141:8 142:15 143:4
  143:25 151:25 167:5
  187:25 209:15 210:9
  216:1 217:13 241:11
1,442,181
53:25
1/2
120:21 121:16

10
34:7,15 52:13,23 71:13
  72:7,9,11 90:24
  101:25 118:7 142:1
  159:10 201:3,4,20
10-004621
4:18
10-0454
5:12
10-04541
3:10
10-04621
5:3
10-04644
3:4 5:15
10-04728
3:18 5:4,15
10-04818
2:4 5:13
10-04826
2:18 5:14
10-04905
4:4 5:4
10-04914
2:10 5:13
10-04995
1:12 5:8
10:00
5:20
100
22:17,20,20 170:20
  173:21,24
10018
6:4
10022
6:21
10111
6:16
11
37:22 119:14 120:13
  143:24 201:21 204:13
  205:4,20 215:18
  217:12
1100
6:10
12

87:21 119:18 163:21
  210:8 214:3,7
**13**
5:19 72:19 87:1,10,13
  214:8
**14**
73:14 120:10
**14th**
6:15
**15**
73:20 214:18
**15th**
246:18
**16**
77:2 218:16 224:13
  227:12
**17**
27:22 28:3,6 77:4
  158:24 159:3,15
  160:13 222:25 223:1
**18**
77:17 91:11 129:10
  223:8 227:11
**1960**
214:20
**1970**
37:14
**1980**
21:13 61:1 190:24
  222:4
**1980s**
22:14 138:14 139:6
  159:16 160:4 205:25
**1981**
21:3 22:2
**1982**
21:3 160:17 223:10
**1988**
22:1
**1990**
158:18
**1990s**
17:14 150:19
**1992**
18:3,5,7 159:3,17
  160:18,19 162:20

166:13 190:21,25
  221:15,19,21 222:1,4
  224:10
**1993**
37:7,11,17
**1997**
190:23,25
**1998**
49:16,19,24 60:2,3
  62:13,15 71:16

---
**2**

**2**
46:6 47:8,23 98:24
  99:1 167:6 175:13
  177:25 181:1,3 183:4
  183:5
**20**
90:25 242:1
**200,000**
137:1,3
**2000**
214:20
**2001**
181:16
**2002**
154:14 156:4 219:25
  221:17
**2003**
49:23 168:4
**2004**
145:1
**2006**
37:22
**2007**
181:25
**2008**
130:19,24 131:14
  143:20,24
**2009**
15:21 150:15
**2010**
150:14
**2011**
142:2
**2016**

5:19 151:10 246:18
**208**
197:14,16
**20th**
51:6 57:4,5,17 120:3
  146:17,23 244:8
**21st**
244:10
**22nd**
244:10,12,14,21
**23**
93:12
**25,000**
56:9 171:16
**26**
133:22 173:7 177:17
**26's**
148:19
**27th**
76:14 120:5
**28**
95:22
**29th**
91:12

---
**3**

**3**
47:25 54:15 81:9 83:14
  98:24 99:1 112:21
  169:20 181:1,3,6
  183:5 185:12 189:4
  224:4,5 244:15,21
**3,000**
191:17
**300**
197:4,6
**31**
181:15
**33(d)**
219:14
**34th**
6:3
**35**
102:5
**350**
197:2

---
**4**

**4**
52:25 53:11 54:14
  55:14 82:4,8 83:17
  114:17 134:16 141:7
  166:25,25 188:21
  189:3,4 197:18
**4:50**
245:23
**45**
6:15 105:19 213:10
**465**
6:20
**46th**
77:13

---
**5**

**5**
27:22 28:9 34:8,14
  50:3 53:1,7,13 54:14
  55:11,14,22 63:24
  64:4 65:8 70:7 75:18
  86:15 113:17 114:12
  116:13 123:21 149:23
  151:10 156:12 160:13
  181:1,4 185:12,13
  186:10 187:12 189:4
  241:11
**548**
217:12
**548(c)**
84:24

---
**6**

**6**
70:9 78:25 79:8 130:1
  197:20 198:1 199:9
  200:24 201:14
**60**
125:20
**620**
6:3
**64,000**
174:14,19
**680**
5:19

08-01789-cgm   Doc 15393-16   Filed 03/21/17   Entered 03/21/17 16:58:13   Exhibit 16
Pg 293 of 293
Trustees Motion to Compel Discovery                    Arbitration 12/13/2016

Page 292

| 7 |
|---|

**7**
70:21 71:3
**70**
120:20 121:16
**705**
19:1
**77002-6111**
6:10
**78fff-2(c)(3)**
199:25 204:5

| 8 |
|---|

**8**
113:8
**80s**
60:6,8 230:11 240:8
**81**
190:24
**811**
6:9
**8th**
15:6

| 9 |
|---|

**9**
83:5 118:5,7 198:1
199:8 200:25 201:14
**90s**
148:25
**91**
89:14
**92**
7:21 8:3 121:22 137:5
137:5 174:23 175:13
177:25 180:16 182:10
183:17 185:5 196:23
205:16 207:1 213:23
228:15 244:1