# EXHIBIT 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant<br><br>-against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>-against-<br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, et al.,<br><br>Defendants. | Adv. Pro. No. 10-04995 (SMB) |

## DISCOVERY ARBITRATOR'S ORDER

One of the continuing areas of disagreement in this and other adversary

proceedings in which Helen Davis Chaitman of Chaitman LLP ("Ms. Chaitman") serves

as defense counsel relates to the date that Bernard L. Madoff ("Madoff") began his Ponzi scheme. The Trustee maintains that the trades recorded on behalf of investment advisory customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") were entirely fictitious as far back as the early 1970s, when Madoff allegedly was pursuing a convertible arbitrage trading strategy. The Wilenitz Defendants and other defendants represented by Ms. Chaitman (collectively, the "Defendants"), along with other defendants, contend that the investment advisory fraud first began in or around 1992, when Madoff allegedly began to pursue a split-strike trading strategy. This dispute is significant because its resolution might affect the calculation of at least some of the Defendants' net equity positions and, hence, the two-year fictitious profits that the Trustee potentially may recover. See, e.g., In re Bernard L. Madoff Inv. Secs. LLC, 773 F.3d 411, 415, 423 (2d Cir. 2016) (limiting the Trustee's avoidance powers in constructive fraud cases to transfers made within two years of the filing of the bankruptcy petition); id., 654 F.3d 229, 241 (2d Cir. 2011) (rejecting reliance on BLMIS customers' brokerage statements because that "would require the Trustee to establish each claimant's 'net equity' based on a fiction created by the perpetrator of the fraud").

       To date, the principal evidentiary support for the Defendants' position is the deposition testimony of Madoff himself – a witness whose credibility the Trustee questions. In particular, the Trustee points to the report of one of his experts, Bruce G. Dubinsky, who concludes, in substance, that Madoff's testimony regarding the fraud onset date is false. The Defendants, however, are not required to accept Mr. Dubinsky's findings. Indeed, even if Mr. Dubinsky is correct, BLMIS also engaged in extensive

2

trading of securities as part of its "House 5" proprietary trading and market-making businesses. In the Defendants' view, if BLMIS actually purchased and held certain securities in connection with those aspects of its business, and those same securities are reflected on their contemporaneous trade confirmations or periodic statements, they are entitled to a credit for those actual trades when the Trustee calculates their net equity positions.[1]

For these reasons, the Defendants have moved to compel the production of any records in the Trustee's possession that reflect actual securities trading by BLMIS during the period prior to 1992, when Madoff contends that he was engaging in actual trading for his investment advisory customers. (See letter to the Discovery Arbitrator from Ms. Chaitman, dated Feb. 21, 2017) ("February 21 Letter"). Certain such records were made available to the Defendants through E-Data Room 1, an electronic database that contains documents concerning "all aspects of the operations and financials of . . . BLMIS." (See Tr. of Discovery Arbitration on Dec. 13, 2016, at 134). In addition, on December 13, 2016, after this issue first came before me, I directed that, "[t]o the extent that there are any additional relevant records of securities trading that have not been made available to [the Wilenitz Defendants] through [E-]Data Room 1, they must promptly be produced." (See Picard v. Trust U/Art. Fourth o/w/o Israel Wilenitz, Adv. Pro. No. 10-

---

[1] The Trustee contends that a finding that the fraud first began in 1992 would affect the Trustee's demand amounts with respect to only two of the Defendants who were permitted to participate in the Madoff deposition. (See letter to the Discovery Arbitrator from Edward J. Jacobs, Esq., dated Mar. 6, 2017) ("March 6 Letter"), at 4-5. The Defendants disagree with this calculation. (See letter to the Discovery Arbitrator from Ms. Chaitman, dated Mar. 7, 2017 ("March 7 Letter"), at 1).

3

4995, ECF No. 76, ¶ 13) (Discovery Arbitrator's Order dated Jan. 4, 2017) (memorializing Dec. 13th ruling). I further directed that the Trustee indicate, by December 20, 2016, how long it would take to make "a good faith determination as to whether there are any BLMIS trading records for the years prior to 1992." (Id. ¶ 4).

On December 15, 2016, the Trustee stated that he had located certain additional trading records, and had retained a vendor to process "167 reels of microfilm that may contain additional BLMIS trading records from 2002 and earlier." (See letter to the Discovery Arbitrator from Mr. Jacobs, dated Dec. 15, 2017 ("December 15 Letter"), at 2). The Trustee also agreed to produce several indices of BLMIS records, including (i) a searchable index of hard copy BLMIS documents contained in more than 13,000 boxes of documents, and (ii) an index of the electronic media obtained from BLMIS. (Id.). The Trustee nevertheless cautioned that the extraordinary volume of hard copy documents meant that it had not been possible to scan all the papers obtained from BLMIS, nor was it possible to restore all the data from electronic media "given the associated expense and the redundancies in the data that had already been processed." (Id. at 3).

More recently, rather than attempting to cull relevant trading records from the reels of microfilm that were the subject of the December 15 Letter, the Trustee agreed to produce every document that the vendor had restored. (March 6 Letter at 3). The data on the first 167 reels was produced to the Defendants on March 6, 2017. (See letter to Sarah Holwell from Mr. Jacobs dated Mar. 6, 2016). Additionally, the Trustee promised to produce, on a rolling basis over the coming weeks, all of the documents on an additional 34 reels of microfilm that the Trustee had identified as potentially containing

4

pre-1992 trading records.  The cost of restoring and processing the 167 reels was $390,920, and the estimated cost of restoring and processing the remaining reels is estimated to be $125,000.  (See Aff. of Nicole L. Tineo, sworn to on Mar. 6, 2017, ¶¶ 5-6).  Thus, the Trustee will likely have spent more than $500,000 by the time that the second set of microfilm documents is produced.

In the March 7 Letter, the Defendants complain that, despite these efforts, the Trustee has not complied with my directive to produce all relevant records of BLMIS securities trading.  (See March 7 Letter).  Indeed, there is language in the Trustee's March 6 Letter which suggests that the Trustee may have cabined his response to the Defendants' request.  Specifically, the Trustee's counsel states that the Trustee is continuing to search for "additional records, including records reflecting Treasury purchases, and will supplement [his] production to the extent any such records are readily accessible and can be identified."  (March 6 Letter at 4) (emphasis added).  Counsel similarly notes in his letter that the Trustee is committed to producing or making available "relevant, proportional, and non-objectionable records to the extent they are readily accessible and identifiable."  (Id.) (emphasis added).  The Trustee complains that "Ms. Chaitman nonetheless appears to be demanding  the production of all records of purported trading activity, wherever they exist, without regard to their relevance to any particular case," suggesting further that she "has failed to meet her burden to demonstrate relevance and proportionality."  (Id.) (emphasis in original).

It is unclear from counsel's March 6 Letter whether the Trustee's observations concerning securities trading records constitute substantive objections based

5

upon which documents have been withheld or are merely an indication that every box and microfilm reel has not been exhaustively searched.  The continuing existence of this ambiguity is no doubt attributable (at least in part) to counsels' failure to have any face-to-face discussions regarding the Defendants' claim that the Trustee's response to their requests for trading records is inadequate.  Ms. Chaitman, however, now has indices of the documents and electronic files in the Trustee's possession.  These indices should enable Ms. Chaitman to formulate more focused requests for trading records.

In these circumstances, I will direct that Ms. Chaitman and counsel for the Trustee confer in person regarding the Defendants' request for BLMIS trading records.  I further will direct that, at least three days before that meeting occurs, Ms. Chaitman shall send the Trustee's counsel a letter specifically identifying the additional documents she seeks to have produced, and where she believes they may be found.  I note that, pursuant to Bankruptcy Rule 7026, Rule 26 of the Federal Rules of Civil Procedure applies to adversary proceedings.  Rule 26, in turn, requires that discovery requests be limited to items that are relevant to a party's claims or defenses <u>and</u> proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Accordingly, when they meet, counsel for both sides should keep these requirements in mind.

After the parties have conferred in good faith, if there are continuing disputes regarding the appropriate scope of discovery concerning trading records, or the completeness of the Trustee's search for such documents, counsel should promptly send me a joint letter, no more than five single-spaced pages in length, detailing their

6

remaining areas of disagreement. I will then either resolve those disputes based upon their submission or schedule a further conference.

## Conclusion

For the foregoing reasons, the Defendants' February 21 Letter application seeking to compel the Trustee to produce further trading records is denied without prejudice to its renewal after counsel have conferred in good faith in an effort to resolve – or at least narrow – the issues concerning trading records. .

SO ORDERED.

Dated:   New York, New York
         March 15, 2017

_____
FRANK MAAS
Discovery Arbitrator

Copies to Counsel via ECF

7