Exhibit 6

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
*Attorneys for ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>        Plaintiff,<br><br>        v.<br><br>ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND, N.V.); and ABN AMRO BANK (SWITZERLAND) AG (f/k/a ABN AMRO BANK (SCHWEIZ)),<br><br>        Defendants. | Adv. Pro. No. 11-02760 (BRL)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW OF ABN AMRO BANK N.V. (PRESENTLY KNOWN AS THE ROYAL BANK OF SCOTLAND, N.V.) IN SUPPORT OF ITS MOTION TO <u>WITHDRAW THE BANKRUPTCY COURT REFERENCE</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

LEGAL STANDARD.................................................................................................................4

ARGUMENT..............................................................................................................................6

I.  THE APPLICATION OF SECTION 546(e) IN THE CONTEXT OF A SIPC LIQUIDATION REQUIRES SUBSTANTIAL AND MATERIAL INTERPRETATION OF FEDERAL SECURITIES LAWS. ............................................6

II.  WITHDRAWAL OF THE REFERENCE IS MANDATORY TO CONSIDER THE IMPACT OF *MORRISON*.................................................................................8

III.  WITHDRAWAL IS WARRANTED AS THE BANKRUPTCY COURT LACKS CONSTITUTIONAL AUTHORITY PURSUANT TO *STERN V. MARSHALL* TO RENDER A FINAL DECISION ...............................................10

IV.  THE TRUSTEE SEEKS TO IMPOSE DILIGENCE OBLIGATIONS THAT CONFLICT WITH NON-BANKRUPTCY FEDERAL LAW ..........................................11

V.  SUBSTANTIAL AND MATERIAL INTERPRETATION OF THE SCURITIES LAWS IS REQUIRED TO DETERMINE WHETHER TRANSFERS FROM BLMIS SATISFIED ANTECEDENT DEBTS. ..........................13

CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.),
    347 B.R. 708 (Bankr. C.D. Cal. 2006)............................................................................8

Bear, Stearns Sec. Corp. v. Gredd,
    No. 01 Civ. 4379 (NRB), 2001 WL 840187 (S.D.N.Y. July 25, 2001)................................5, 9

Chemtura Corp. v. United States,
    No. 10 Civ. 503(RMB), 2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010)...................................5

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991)..........................................................................................5

Dye v. Sachs (In re Flashcom, Inc.),
    361 B.R. 519 (Bankr. C.D. Cal. 2007).............................................................................7

Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.),
    388 B.R. 131 (S.D.N.Y. 2008)........................................................................................5

Granfinanciera, S.A. v. Nordberg,
    492 U.S. 33 (1989).......................................................................................................10

In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,
    No. 03 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)..............................5

In re Dana Corp.,
    379 B.R. 449 (S.D.N.Y. 2007)........................................................................................5

In re Enron Creditors Recovery Corp.,
    651 F.3d 329 (2d Cir. 2011)........................................................................................6, 8

In re New Times Sec. Servs., Inc.,
    371 F.3d 68 (2d Cir. 2004)...........................................................................................12

Kaiser Steel Corp. v. Charles Schwab & Co., Inc.,
    913 F.2d 846 (10th Cir. 1990) .......................................................................................6

Maxwell Commc'n Corp. plc v. Barclays Bank plc (In re Maxwell Commc'n Corp. plc),
    170 B.R. 800 (Bankr. S.D.N.Y. 1994).............................................................................9

Merrill v. Abbott (In re Independent Clearing House Co.),
    77 B.R. 843 (D. Utah 1987).........................................................................................14

Morrison v. Nat'l Austl. Bank Ltd.,
 130 S. Ct. 2869 (2010) .......................................................................................................... 2, 8, 9

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
 4 F.3d 1095 (2d Cir. 1993) ............................................................................................................. 6

Picard v. Avellino,
 No. 11 Civ. 3882 (JSR) (S.D.N.Y. Feb. 29, 2012) ............................................................. 11, 14

Picard v. Flinn Invs., LLC,
 463 B.R. 280 (S.D.N.Y. 2011) ............................................................................................... passim

Picard v. Katz,
 462 B.R. 447 (S.D.N.Y. 2011) ................................................................................... 7, 8, 12, 14

Picard v. Kohn,
 No. 11 Civ. 1181 (S.D.N.Y. Sept. 6, 2011) ................................................................................. 10

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
 922 F.2d 984 (2d Cir. 1990) ........................................................................................................... 5

Stern v. Marshall,
 131 S. Ct. 2594 (2011) ........................................................................................................ passim

**STATUTES**

11 U.S.C. § 546(e) ................................................................................................................ 2, 6, 7, 8

11 U.S.C. § 547 ................................................................................................................................ 9

11 U.S.C. § 548 ........................................................................................................................... 6, 14

11 U.S.C. § 550 ..................................................................................................................... 7, 8, 13

15 U.S.C. § 78aaa ............................................................................................................................ 1

15 U.S.C. § 78fff .............................................................................................................................. 9

28 U.S.C. § 157(b) ......................................................................................................................... 10

28 U.S.C. § 157(d) .................................................................................................................. passim

17 C.F.R. § 240.10b ....................................................................................................................... 14

Defendant ABN AMRO Bank N.V., presently known as The Royal Bank of Scotland, N.V. ("RBS/ABN"),[1] submits this memorandum of law in support of its motion for an order pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure withdrawing the reference of this action to the United States Bankruptcy Court for the Southern District of New York.

## PRELIMINARY STATEMENT

This adversary proceeding arises out of the Ponzi scheme carried out by Bernard L. Madoff through Bernard L. Madoff Investment Securities LLC ("BLMIS"). RBS/ABN was not a customer of BLMIS and had no relationship with Bernard Madoff or BLMIS, but was a Dutch bank that is alleged to have received transfers from Harley International (Cayman) Limited ("Harley"), a Cayman Islands company.

The Complaint's claims are fundamentally flawed and the Trustee is not entitled to recover from RBS/ABN any of the alleged transfers, which are entirely extraterritorial in nature. Resolution of the Trustee's claims, however, will require substantial and material interpretation of non-bankruptcy federal law, including the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, et seq., pursuant to which the Trustee initiated this action, other federal securities laws, and constitutional questions, all of which must be determined by an Article III court. Withdrawal of the reference is mandatory under these circumstances, and RBS/ABN respectfully requests that the reference to the Bankruptcy Court be withdrawn for the following reasons.

---

[1] ABN AMRO Bank (Switzerland) AG (f/k/a ABN AMRO Bank (Schweiz)) ("ABN Switzerland") is also a defendant in this action. Defendant RBS/ABN is not an affiliate of ABN Switzerland, and ABN Switzerland, which is represented by different counsel in this matter, is not a party to this motion.

First, resolution of the Trustee's purported claims will require substantial and material interpretation of SIPA in order properly to determine the interaction between SIPA and Section 546(e) of the Bankruptcy Code, which protects transfers like those from BLMIS to Harley that are made "in connection with a securities contract." The United States District Court for the Southern District of New York has already determined that consideration of these statutes presents a removable issue, and the same result should be reached in this case.

Second, the transfers allegedly made from Harley, a Cayman Islands entity, to RBS/ABN, a Dutch bank, are entirely foreign, and RBS/ABN intends to demonstrate that SIPA and the Bankruptcy Code provisions on which the Trustee relies cannot be applied extraterritorially, in keeping with the Supreme Court's decision in Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010). Interpretation of the presumption against extraterritoriality, as articulated in Morrison and applied to SIPA, presents a novel and important issue of non-bankruptcy federal law, and accordingly, withdrawal is warranted on mandatory and permissive grounds.

Third, as the United States District Court for the Southern District of New York has already ruled, the reference should be withdrawn to determine whether the Bankruptcy Court lacks the constitutional authority to render a final judgment on the Trustee's fraudulent conveyance claims. As RBS/ABN will demonstrate, the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), mandates that only an Article III court may finally resolve fraudulent conveyance actions like those at issue here, the adjudication of which represents an exercise of "judicial power." Resolution of this important constitutional issue of first impression warrants withdrawal.

2

Fourth, the Trustee's avoidance claims against Harley, a customer of BLMIS, are premised on the theory that brokerage customers like Harley were obligated to conduct due diligence on their broker and the broker's auditor to determine whether any "red flags" existed indicating wrongdoing. As RBS/ABN will demonstrate, no such due diligence obligation exists under the securities laws governing brokerage relationships. Resolution of the Trustee's theory that SIPA imposes that obligation retroactively will require substantial and material interpretation of SIPA, and accordingly, RBS/ABN is entitled to an Article III court determination of the Trustee's claims.

Fifth, RBS/ABN will demonstrate that the Trustee cannot avoid those transfers from BLMIS to Harley that satisfied an antecedent debt under applicable securities laws. Because the Trustee is expected to continue to argue that statements received by BLMIS's customers in accordance with securities laws do not reflect obligations of BLMIS to those customers, "significant interpretation" of the securities laws is necessary to resolve the Trustee's claims, as the District Court has already held.

For all of these reasons, the reference to the Bankruptcy Court should be withdrawn.

## FACTUAL BACKGROUND[2]

At all relevant times, defendant RBS/ABN was a Dutch-incorporated bank headquartered in Amsterdam, the Netherlands. (Complaint ("Compl.") ¶ 22.)[3] Harley is an

---

[2] The facts are taken from the allegations contained in the Complaint. They are not accepted as true by RBS/ABN, and will be contested at the appropriate time.

[3] The Complaint in this action is attached as "Exhibit A" to the Declaration of Michael S. Feldberg dated March 14, 2012 ("Feldberg Decl."), along with the other documents referenced in this memorandum of law.

3

international business company organized under the laws of the Cayman Islands, with a principal place of business at P.O. Box 156, North Quay, Douglas, Isle of Man, 1M99 I NR.  (Complaint, Picard v. Harley Int'l (Cayman) Ltd., Adv. Pro. No. 09-01187 (BRL) (Bankr. S.D.N.Y. May 12, 2009) (Docket No. 1) (the "Harley Complaint"), Feldberg Decl. Ex. B, ¶ 31.)

The Trustee commenced an action against Harley in the Bankruptcy Court pursuant to SIPA, the Bankruptcy Code and other applicable law, seeking to avoid and recover initial transfers of "Customer Property" from BLMIS to Harley.  (Compl. ¶ 49.)  Harley did not appear in the action, and the Trustee ultimately obtained a default judgment against Harley in the amount of $1,072,820,000.  (See Compl. ¶ 50.)  The Complaint alleges that a portion of these initial transfers, in the amount of $21,799,920, was subsequently transferred to RBS/ABN and is recoverable pursuant to the Trustee's statutory authority under SIPA, the Bankruptcy Code and the New York Debtor and Creditor Law.  (Compl. ¶¶ 55, 66.)

## LEGAL STANDARD

While a Standing Order of this Court automatically refers to the Bankruptcy Court all cases and proceedings commenced under title 11,[4] 28 U.S.C. § 157(d) provides that a party is entitled to mandatory withdrawal of that reference if resolution of the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  Accordingly, if the Bankruptcy Court would be

---

[4] On January 31, 2012, an Amended Standing Order of Reference was issued, stating that "[i]f a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court." (Amended Standing Order of Reference M-431 (S.D.N.Y. Jan. 31, 2012), Feldberg Decl. Ex. C.)

4

required to engage in "substantial and material consideration of non-Bankruptcy Code federal [law]" to resolve the proceeding, withdrawal is necessary. Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990); Picard v. Flinn Invs., LLC, 463 B.R. 280, 286-88 (S.D.N.Y. 2011) (withdrawing the reference to consider federal constitutional issues).

Consideration is "substantial and material" when a Bankruptcy Court would be required to "engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F. 2d. 1020, 1026 (2d Cir. 1991). Consideration is also substantial and material "even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code." In re Dana Corp., 379 B.R. 449, 459 (S.D.N.Y. 2007) (internal quotations omitted). When the Bankruptcy Court would be required to engage in the "intricacies" of non-bankruptcy law, as opposed to "routine application" of that law, withdrawal is mandatory. Chemtura Corp. v. United States, No. 10 Civ. 503 (RMB), 2010 WL 1379752, at *2 (S.D.N.Y. Mar. 26, 2010) (citing In re Dana Corp., 379 B.R. at 453).

The District Court need not find that "novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference," Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.), 388 B.R. 131, 139 (S.D.N.Y. 2008), nor must there be questions of first impression present. In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03 MDL 1529 (LMM), 2006 WL 337667, at *3 (S.D.N.Y. Feb. 10, 2006). A right to mandatory withdrawal, however, is even more stark where matters of first impression are concerned. See Bear, Stearns Sec. Corp. v. Gredd, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001).

5

In addition to mandatory withdrawal, Section 157(d) provides for withdrawal on permissive grounds where cause is shown, including where judicial efficiency would be served by such a withdrawal. See 28 U.S.C. § 157(d); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).

For the reasons stated below, withdrawal of the reference is warranted on both mandatory and permissive grounds, because resolution of the Trustee's claims requires substantial and material consideration of non-bankruptcy federal law issues, several of which involve important matters of first impression.

## ARGUMENT

**I.     THE APPLICATION OF SECTION 546(e) IN THE CONTEXT OF A SIPC LIQUIDATION REQUIRES SUBSTANTIAL AND MATERIAL INTERPRETATION OF FEDERAL SECURITIES LAWS.**

RBS/ABN intends to demonstrate that the Complaint's claims are barred by the safe harbor provisions of Section 546 of the Bankruptcy Code and should therefore be dismissed. Section 546(e) is one of several safe harbor provisions applicable here that preclude the avoidance of certain transfers, providing in part that the Trustee "may not avoid a transfer that is a … settlement payment … made by or to (or for the benefit of) a . . . stockbroker, financial institution, financial participant, or securities clearing agency, . . . in connection with a securities contract … that is made before the commencement of the case, except under section 548(a)(1)(A) of this title." 11 U.S.C. §546(e). The safe harbor is interpreted broadly, with the goal of "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." In re Enron Creditors Recovery Corp., 651 F.3d 329, 334 (2d Cir. 2011) (quoting Kaiser Steel Corp. v. Charles Schwab & Co., Inc., 913 F.2d 846, 849 (10th Cir. 1990) (citation omitted)).

6

Here, the Trustee alleges that Harley had a "direct customer account[] with BLMIS's investment advisory business," and that RBS/ABN allegedly received subsequent transfers of "Customer Property" that originated from that BLMIS customer account. (Compl. ¶ 2.) But, as the District Court held in Picard v. Katz, the relationships between BLMIS and its customers were governed by "securities contracts," and Section 546(e)'s protection of "settlement payments" made in connection with such securities contracts includes all payments made by BLMIS to its customers, including Harley. See 462 B.R. 447, 451-52 (S.D.N.Y. 2011). Accordingly, the Trustee cannot avoid the alleged transfers from BLMIS to Harley as preferences or constructively fraudulent transfers pursuant to Section 546(e). See Katz, 462 B.R. at 453. Because the Trustee may <u>recover</u> from a subsequent transferee only those transfers that are <u>avoided</u>, the Trustee cannot recover from RBS/ABN the alleged subsequent transfers as preferences or constructively fraudulent. See 11 U.S.C. § 550(a) ("to the extent that a transfer is avoided . . . the trustee may recover . . . the value of such property").[5]

Withdrawal of the reference is mandatory to resolve the Trustee's claims because interpretation of § 546(e) in this context necessarily requires the interpretation of SIPA, part of the federal securities laws. As the District Court recognized, "[w]hether § 546(e) applies" in this SIPA proceeding "depends on how a Court resolves numerous questions of securities laws" and requires the court to undertake "significant interpretation" of those securities laws in order to resolve the Trustee's claims. Flinn, 463 B.R. at 285 (withdrawing the reference in Madoff-

---

[5]    As an alleged subsequent transferee, RBS/ABN is fully entitled to raise defenses to the alleged avoidability of the initial transfers from BLMIS to Harley. See Dye v. Sachs (In re Flashcom, Inc.), 361 B.R. 519, 525 (Bankr. C.D. Cal. 2007) ("every court to address this issue" of whether a defendant has "a constitutional right to defend" against a recovery action has held that "a stipulated or default judgment entered in an avoidance action does not preclude the defendants in a recovery action from disputing the avoidability of the transfer and raising appropriate defenses.").

7

related fraudulent conveyance actions to interpret § 546(e) in the context of SIPA and in light of Katz). Indeed, as the District Court observed in Katz, "the safe harbor stands 'at the intersection of two important national legislative policies on a collision course—the policies of bankruptcy and securities law.'" 462 B.R. at 451 (quoting In re Enron, 651 F.3d at 334).

For the same reasons, withdrawal is mandatory here.

## II. WITHDRAWAL OF THE REFERENCE IS MANDATORY TO CONSIDER THE IMPACT OF *MORRISON*.

Withdrawal of the reference is further mandated because determining whether SIPA applies extraterritorially requires substantial and material interpretation of non-bankruptcy federal law. In Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), the Supreme Court reinforced the longstanding presumption against the extraterritorial application of federal statutes and held that unless a contrary intent is expressed, Congressional legislation is "meant to apply only within the territorial jurisdiction of the United States." Id. at 2877. Accordingly, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." Id. at 2878.

Here, RBS/ABN will assert that the Trustee seeks to recover wholly foreign transfers to the London branch of RBS/ABN, a Dutch bank, from Harley, a Cayman entity. (Compl. ¶ 2.) But the provisions on which the Trustee relies, SIPA and Section 550 of the Bankruptcy Code, are silent as to their extraterritorial application. Nothing in the language or legislative history of these provisions indicates that they were intended to apply to transactions that occurred outside the U.S., and several pre-Morrison cases have concluded that bankruptcy laws in the context of preferences and fraudulent conveyances in fact do not apply extraterritorially. See Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.), 347 B.R. 708 (Bankr. C.D. Cal. 2006) (rejecting extraterritorial application of Section 548 of the

8

Bankruptcy Code and dismissing plaintiff's action to avoid wholly foreign transaction); Maxwell Commc'n Corp. plc v. Barclays Bank plc (In re Maxwell Commc'n Corp. plc), 170 B.R. 800, 809-14 (Bankr. S.D.N.Y. 1994) (dismissing plaintiff's action to avoid preferential transfer under Section 547 of the Bankruptcy Code on similar grounds).

Nor does SIPA apply extraterritorially. Nothing in the plain language of SIPA, including 15 U.S.C. § 78fff-2(c)(3), the transfer recovery provision on which the Trustee relies, provides a clear indication of its application to overseas transfers or transactions. Accordingly, because the "statute gives no clear indication of an extraterritorial application, it has none," Morrison, 130 S. Ct. at 2878, and, as RBS/ABN will demonstrate, the Trustee cannot recover the wholly foreign alleged transfers from Harley to RBS/ABN.

The Trustee is expected to argue, as he has in related adversary proceedings, that SIPA and the Bankruptcy Code's avoidance and recovery provisions do have extraterritorial reach. Accordingly, resolution of these questions will require substantial and material interpretation of both bankruptcy and non-bankruptcy federal law, and withdrawal of the reference is mandatory. Moreover, the question is one of first impression with implications for not just interstate, but international commerce, and accordingly warrants withdrawal on both mandatory and permissive grounds. See 28 U.S.C. § 157(d); Bear Stearns, 2001 WL 840187, at *2 ("[W]here matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met.") (internal citations and quotations omitted); Order, Picard v. Kohn, No. 11 Civ. 1181 (JSR) (S.D.N.Y. Sept. 6, 2011) (Docket No. 55), Feldberg Decl. Ex. D (withdrawing reference in Madoff-related adversary proceeding in light of Morrison to consider whether RICO claims at issue were extraterritorial in nature).

9

**III. WITHDRAWAL IS WARRANTED AS THE BANKRUPTCY COURT LACKS CONSTITUTIONAL AUTHORITY PURSUANT TO *STERN V. MARSHALL* TO RENDER A FINAL DECISION**

In Stern v. Marshall, 131 S. Ct. 2594 (2011), the Supreme Court held that the Bankruptcy Courts may not enter final judgment with respect to common law actions where, as here, the action brings private law claims seeking only to augment the bankruptcy estate and does not stem from the bankruptcy case itself. Id. at 2618. Application of Stern in this case will require substantial interpretation of non-bankruptcy federal law, in particular the constitutional authority of the Bankruptcy Court to render a final decision in this fraudulent conveyance action.

The Supreme Court held in Stern v. Marshall that although the Bankruptcy Court had the statutory authority under 28 U.S.C. § 157(b)(2)(C) to decide a "core" state law tort counterclaim, it lacked the constitutional authority to reach a final judgment because the claimant was entitled to have the claim heard by an Article III court. Id. at 2608. The Court's decision in Stern was rooted in its earlier cases limiting the authority of the bankruptcy courts, including Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), where the Court held that a trustee's right to recover a fraudulent transfer is "more accurately characterized as a private rather than a public right," quintessentially a common law claim similar to a state law contract action brought by a bankrupt corporation seeking to augment the estate, rather than "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Id. at 55-56.

Relying on Granfinanciera, the Stern court saw "no reason to treat [the state law] counterclaim any differently from the fraudulent conveyance action in Granfinanciera," reaffirming that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Stern, 131 S. Ct. at 2618 (emphasis in original).

10

The same rationale applies here, where RBS/ABN has not filed a proof of claim in the BLMIS SIPA liquidation and, accordingly, the Trustee's allegations will not be resolved in the claim allowance process.

As the District Court has already recognized, resolution of the Bankruptcy Court's authority to enter a final judgment in fraudulent conveyance actions, and the question of whether doing so would usurp the "judicial Power" reserved for Article III courts, "requires 'significant interpretation' of both Article III and the Supreme Court precedent analyzing it," and accordingly, withdrawal is appropriate. Flinn, 463 B.R. at 287; Picard v. Avellino, No. 11 Civ. 3882 (JSR) (S.D.N.Y. Feb. 29, 2012), Feldberg Decl. Ex. E, at 6. Moreover, the District Court recognized that under Section 157(d), "the Court has full discretion to withdraw the reference, on its own initiative, for 'cause shown,'" and found that "the litigants' interest in having an Article III court resolve a difficult constitutional issue constitutes adequate cause." Flinn, 463 B.R. at 288 n.3.[6] Withdrawal on mandatory and permissive grounds is accordingly warranted here.

## IV. THE TRUSTEE SEEKS TO IMPOSE DILIGENCE OBLIGATIONS THAT CONFLICT WITH NON-BANKRUPTCY FEDERAL LAW

RBS intends to demonstrate that the Trustee cannot avoid the transfers at issue from BLMIS to Harley, and accordingly cannot recover from ABN, because the claims represent an improper attempt retroactively to impose a due diligence obligation on brokerage customers, including Harley, to investigate their broker for potential wrongdoing prior to investing. Resolution of the Trustee's claims will necessarily require interpretation of SIPA, which governs

---

[6] The Amended Standing Order does not alter this result. It provides that the Bankruptcy Court may hear all core proceedings and, in the event that it lacks constitutional authority to render a final decision, its order will be treated as proposed findings of fact and conclusions of law, unless otherwise ordered by the District Court. (Feldberg Decl. Ex. C.) It does not limit a defendant's right to seek withdrawal, particularly where the District Court has already held that withdrawal is appropriate on mandatory and permissive grounds to decide the important constitutional questions at issue. See Flinn, 463 B.R. at 288 n.3; Avellino, No. 11 Civ. 3882 (JSR), Feldberg Decl. Ex. E, at 6.

11

the relationship between a registered broker and its customers, and whether such diligence obligations may then be imposed on alleged subsequent transferees like RBS/ABN that are even further removed from Madoff's fraud.

The Harley Complaint alleges that Harley "failed to exercise reasonable due diligence of BLMIS and its auditors in connection with the Ponzi scheme," and that Harley was "on notice" of wrongdoing. (Harley Complaint, Feldberg Decl. Ex. B ¶ 36.) But neither SIPA nor any other governing law at the time imposed on customers like Harley the obligation to investigate a broker and the broker's auditors, as alleged. SIPA is designed to protect customers from their brokers, not to impose new diligence obligations prior to investing. See In re New Times Sec. Servs. Inc., 371 F.3d 68, 86-87 (2d Cir. 2004) (holding that a "goal of greater investor vigilance, however, is not emphasized in the legislative history of SIPA."). Indeed, in withdrawing the Bankruptcy Court reference on these precise grounds, the District Court noted in a related proceeding that it is not "self-evident" that the "bankruptcy law sets the parameters of the duty of inquiry that a customer in a securities brokerage investment situation has." (Tr. of Oral Arg., Picard v. Katz, 11 Civ. 03605 (JSR) (S.D.N.Y. July 1, 2011), Feldberg Decl. Ex. F, at 32:21-23).) The District Court further concluded that the defendants in that action had made "a more than plausible argument that the duty of inquiry . . . in a securities context is governed by securities law and cannot be overridden after the fact by the bankruptcy law or by the interpretation of a non-bankruptcy law, SIPA, being asserted by the trustee."[7] (Feldberg Decl. Ex. F, Tr. at 33:9-14.)

---

[7] In ultimately ruling on this issue, the District Court held that where bankruptcy law is informed by federal securities law, "good faith" is to be measured by the "willful blindness" standard, rather than "inquiry notice." Katz, 462 B.R. at 455.

12

These observations take on added weight in light of the Supreme Court's decision in Stern v. Marshall, where the Court reiterated that the Bankruptcy Courts' powers are limited by the Constitution, and that the presence of a statute prescribing authority to the Bankruptcy Court does not necessarily render that authority constitutional under Article III. See infra, at Section III. Where, as here, a complaint alleges that SIPA and bankruptcy law impose ex post facto duties on Harley, and by extension, RBS/ABN, the District Court is the proper forum to resolve the questions of non-bankruptcy federal law.

**V. SUBSTANTIAL AND MATERIAL INTERPRETATION OF THE SCURITIES LAWS IS REQUIRED TO DETERMINE WHETHER TRANSFERS FROM BLMIS SATISFIED ANTECEDENT DEBTS.**

ABN/RBS intends to demonstrate that the Bankruptcy Code and the New York Debtor and Creditor Law preclude the Trustee from avoiding transfers that, under applicable securities laws, satisfied antecedent debts owed by BLMIS to its customers, including Harley. Because the Trustee may recover from alleged subsequent transferees only those transfers that may be avoided, see 11 U.S.C. § 550(a), the alleged transfers are not recoverable from RBS/ABN.

Under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may not recover as constructively fraudulent any transfer for which the debtor was provided with reasonably equivalent value. 11 U.S.C. § 548(a)(1)(B). Moreover, Section 548(c) of the Bankruptcy Code provides that a transfer may not be avoided where the transferee took "for value and in good faith." 11 U.S.C. § 548(c). The Bankruptcy Code further expressly provides that repayment of an antecedent debt constitutes "value." 11 U.S.C. § 548(d)(2)(A) ("'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ."). Consistent with these provisions, it is well settled that an "antecedent debt" is satisfied by transfers from the

13

debtor that reduce a customer's principal investment. See, e.g., Merrill v. Abbott (In re Independent Clearing House Co.), 77 B.R. 843, 857 (D. Utah 1987) ("From the time a defendant entrusted his money to the debtors, he had a claim against the debtors for the return of his money."); Katz, 462 B.R. at 453 ("It is clear that the principal invested by any of Madoff's customers 'gave value to the debtor,' and therefore may not be recovered by the Trustee absent bad faith.").

In accordance with its obligations under the securities laws, BLMIS "regularly sent reports to [customers] updating them on their investments' performances." Flinn, 463 B.R. at 285 (citing 17 C.F.R § 240.10b-10, which requires brokers like BLMIS to disclose information regarding trades to investors). The Trustee is expected to argue, as he has in related proceedings, that these brokerage statements received by customers from BLMIS do not reflect valid obligations of BLMIS and do not amount to "antecedent debts," because Madoff was operating a Ponzi scheme. (See Compl. ¶ 29 ("BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts. The securities purchases and sales shown in the account statements never occurred.")

Resolution of the Trustee's claim will require substantial and material application of the securities laws, and, as the District Court has already determined, withdrawal is accordingly appropriate. See Flinn, 463 B.R. at 288 (withdrawing the reference to consider "whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that [BLMIS] purportedly made in order to satisfy antecedent debts"); Avellino, 11 Civ. 3882 (JSR), Feldberg Decl. Ex. E, at 6. The same result is warranted here.

14

## CONCLUSION

For the foregoing reasons, the reference to the Bankruptcy Court should be withdrawn.

Dated: March 14, 2012
      New York, New York

                                  ALLEN & OVERY LLP

                                  By:  /s/ Michael S. Feldberg
                                        Michael S. Feldberg
                                        michael.feldberg@allenovery.com
                                        Bethany Kriss
                                        bethany.kriss@allenovery.com
                                        1221 Avenue of the Americas
                                        New York, NY 10020
                                        Telephone: (212) 610-6300
                                        Facsimile: (212) 610-6399

                                        *Attorneys for Defendant ABN AMRO Bank*
                                        *N.V. (presently known as The Royal Bank of*
                                        *Scotland, N.V.)*