**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212)-610-6300
Facsimile:    (212) 610-6399
Michael S. Feldberg

*Attorneys for Defendant ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02760 (SMB) |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S REQUEST FOR CERTIFICATION OF JUDGMENT FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 8006(f)** |
| ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND N.V.), | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
BACKGROUND ................................................................................................................................ 2
ARGUMENT ...................................................................................................................................... 6
   1. The 28 U.S.C. § 158(d)(2)(A) factors are not met. ............................................................ 6
      a. There is no question of law here which implicates a matter of public importance ........................................................................................................................ 7
      b. There are no conflicting decisions on the same question of law ................................. 9
      c. An immediate appeal to the Court of Appeals will not materially advance the progress of the case .................................................................................................... 11
   2. The District Court has appellate jurisdiction over the Judgment. ..................................... 12
   3. The Court of Appeals will benefit from the District Court's insight ................................. 14
   4. There is efficiency in the District Court reviewing both the Harley Action and the Rye Action ........................................................................................................................ 14
CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ...................................................................................................12

*In re Chateaugay Corp.*,
  109 B.R. 613 (S.D.N.Y. 1990), *appeal dismissed and remanded*, 924 F.2d 480
  (2d Cir. 1991) .........................................................................................................................12

*In re Conex Holdings, LLC*,
  534 B.R. 606 (Bankr. D. Del. 2015) .........................................................................................8

*In re Johns-Manville Corp.*,
  449 B.R. 31 (S.D.N.Y. 2011) .................................................................................................11

*In re Kingate Mgmt. Ltd. Litig.*,
  No. 09-CV-5386 (DAB), 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) ..........................9, 10

*In re Leslie Fay Companies, Inc.*,
  222 B.R. 718 (S.D.N.Y. 1998), *aff'd sub nom. Falbaum v. Leslie Fay
  Companies, Inc.,* 182 F.3d 899 (2d Cir. 1999) .................................................................12, 13

*In re Sabine Oil & Gas Corp.*,
  551 B.R. 132 (Bankr. S.D.N.Y. 2016) .....................................................................................7

*Mark IV Indus. Inc. v. New Mexico Env't Dep't*,
  452 B.R. 385 (S.D.N.Y. 2011) ...........................................................................................8, 14

*Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp.)*,
  93 F.3d 1036 (2d Cir. 1996) .................................................................................................4, 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-mc-0115 (JSR) (S.D.N.Y. June 7, 2012) .....................................................................3

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  486 B.R. 579 (S.D.N.Y. 2013) ...............................................................................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  513 B.R. 222 (S.D.N.Y. 2014) .......................................................................................4, 5, 10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  Adv. Pro. No. 08-01789 (SMB), Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689
  (Bankr. S.D.N.Y. Nov. 22, 2016) ..................................................................................... *passim*

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-American Israel Corp.)*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017) ............................................................................... 10

*Weber v. U.S. Trustee*,
    484 F.3d 154 (2d Cir. 2007) ............................................................................... 2, 9, 11, 14

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016) ............................................................................... 10

**Statutes**

28 U.S.C. § 158(a)(1) .............................................................................................................. 12

28 U.S.C. § 158(d)(2)(A) .................................................................................................. *passim*

28 U.S.C. § 1292(b) .......................................................................................................... 6, 7, 9

ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("RBS/ABN"), by and through its undersigned counsel, hereby responds in opposition (the "Opposition") to the request of Plaintiff Irving H. Picard (the "Trustee") for an order certifying this Court's March 3, 2017 Stipulated Final Order Granting Motion to Dismiss Complaint (the "Judgment") for direct appeal to the United States Court of Appeals for the Second Circuit (the "Request") pursuant to 28 U.S.C. § 158(d)(2) and Rule 8006(f) of the Federal Rules of Bankruptcy Procedure.[1]  For its Opposition to the Request, the RBS/ABN respectfully represents as follows:

## PRELIMINARY STATEMENT

RBS/ABN respectfully submits that none of the three prongs under 28 U.S.C. § 158(d)(2)(A) which would warrant circumvention of the standard progression of appeals and certification of a direct appeal to the Second Circuit are satisfied for purposes of the Trustee's present appeal.  The question of law at issue—international comity—is subject to controlling decisions of the United States Court of Appeals for the Second Circuit, and does not qualify as a "matter of public importance" merely due to the existence of related litigation.  Moreover, the question of international comity at issue does not require a resolution of conflicting decisions within this jurisdiction (nor, for that matter, does the extraterritoriality issue, which this Court declined to reach).  And though a majority of the defendants in related litigations wish to skip the percolation of this appeal through the District Court, RBS/ABN believes that, to the contrary, review by the District Court will materially advance the progress of this proceeding.

---

[1] The Trustee's *Memorandum of Law in Support of the Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006(f)* is referred to herein as the "T. Mem."

1

As recognized by the Second Circuit in *Weber*, there is benefit inherent in having a district court review a bankruptcy court's decision prior to subsequent consideration by the court of appeals. *Weber v. U.S. Trustee*, 484 F.3d 154, 161 (2d Cir. 2007). Contrary to the arguments made by the Trustee, this is precisely the type of case that would benefit from an appeal to the District Court in the first instance—to shed light on whether this Court properly implemented the District Court's opinion and order.[2] RBS/ABN disagrees that direct certification is the proper course of action in this case, and as such, should not be compelled to forgo its right to a normal course of appeal in the District Court.

## BACKGROUND

On October 6, 2011, the Trustee commenced the above-captioned adversary proceeding by filing a complaint against RBS/ABN (and then-defendant ABN AMRO Bank (Switzerland) AG, which was subsequently voluntarily dismissed) (the "Harley Action").[3] Ten months earlier, on December 8, 2010, the Trustee initiated a parallel adversary proceeding by filing a complaint against RBS/ABN (and Rye Select Broad Market XL Fund, LP, which was subsequently voluntarily dismissed) (the "Rye Action").[4] RBS/ABN is a commercial bank incorporated under the laws of the Netherlands, with a registered office in Amsterdam.[5]

---

[2]  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) ("Consolidated Proceedings"), ECF No. 12798, Transcript of December 16, 2015 Hearing in Consolidated Proceedings before this Court ("Hearing Tr.") at 35:4-100:13 (oral argument before this Court, with both parties attempting to parse meaning and intent of District Court's opinion and order).

[3]  *See Picard v. ABN AMRO Bank N.V. (Presently Known as The Royal Bank of Scotland N.V.)*, Adv. Pro. No. 11-02760 (SMB) (Bankr. S.D.N.Y.) ("Harley Action"), ECF No. 1.

[4]  *See Picard v. ABN AMRO Bank N.V. (Presently Known as The Royal Bank of Scotland N.V.)*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) ("Rye Action"), ECF No. 1.

[5]  Harley Action, ECF No. 58 ("Harley Proffered Allegations") ¶ 5.

2

The Harley Action sought recovery of approximately $21,799,920 in subsequent transfers received by RBS/ABN on December 2 and 10, 2008, from Harley International (Cayman) Limited, a company organized under the laws of the Cayman Islands ("Harley").[6] Harley entered liquidation proceedings in the Cayman Islands.[7] The Rye Action seeks recovery of approximately $149 million in subsequent transfers received by RBS/ABN from two companies organized under the laws of the Cayman Islands, Rye Select Broad Market Portfolio Limited and Rye Select Broad Market XL Portfolio (the "Rye Cayman funds").[8]

In May and June 2012, the District Court withdrew the reference pursuant to 28 U.S.C. § 157 to determine whether "SIPA and/or the Bankruptcy Code as incorporated by SIPA apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees," in connection with motions to dismiss filed in the Harley Action and Rye Action, among others.[9] In July 2012, RBS/ABN moved, along with other defendants in related litigations on similar grounds, to dismiss the Trustee's claims seeking recovery of subsequent transfers from Harley and the Rye

---

[6]   *Id.* ¶¶ 1, 24.

[7]   *Id.* ¶ 8.

[8]   $74.4 million in "redemption" transfers are alleged to have been made by Rye Select Broad Market Portfolio Limited (Cayman) to RBS/ABN, while $74.6 million in "collateral" transfers are alleged to have been made from Rye Select Broad Market XL Portfolio, a Cayman entity, to RBS/ABN; these "collateral" transfer funds were previously transferred from BLMIS to, among others, Rye Select Broad Market Insurance Portfolio LDC (also a Cayman entity), and then on to Rye Select Broad Market XL Portfolio. *See* Rye Action, ECF No. 101 ("Rye Proffered Allegations") ¶¶ 14-16, 21-22. Other claims in the Rye Action, for which RBS/ABN did not seek dismissal include transfers from two Delaware-registered limited partnerships, Rye Select Broad Market XL Fund, L.P. and Rye Select Broad Market Prime Fund, L.P. ("Rye Delaware") (*id.* ¶¶ 17-19, 43), leading to a total $237.9 million in subsequent transfers received by RBS/ABN between September 2006 and December 1, 2008 from the Rye Cayman and Rye Delaware funds (*id.* ¶ 1).

[9]   *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR) (S.D.N.Y.), ECF. No. 167 at 3.

3

Cayman funds, arguing that the presumption against extraterritoriality barred those claims.[10] The parties briefed and argued the motions before the District Court.[11]

On July 7, 2014, the District Court issued its decision. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 222 (S.D.N.Y. 2014) (the "Opinion and Order"). In the Opinion and Order, the District Court ruled in favor of foreign subsequent transferees like RBS/ABN, finding that (i) "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and (ii) principles of international comity counsel against the application of U.S. law to avoid transfers made from foreign funds to foreign transferees. *Id.* at 232.

In reasoning that international comity precluded avoidance of the transfers at issue, the District Court focused on which jurisdiction had a greater interest in applying its own laws (also known as the doctrine of "comity of nations"). *Id*. The District Court concluded that "[g]iven the indirect relationship between Madoff Securities and the transfers at issue here, these foreign jurisdictions have a greater interest in applying their own laws than does the United States." *Id.* (citing *Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1053 (2d Cir. 1996) (*Maxwell II*)). As illustrative of the foreign jurisdictions' greater interests in applying their own laws, the District Court noted that many of the foreign funds at issue (including Harley) had entered liquidation proceedings in their respective jurisdictions of incorporation. *Id.*

---

[10]    *Id.* at ECF Nos. 234-36. *See also id.* at ECF Nos. 238-40 (RBS/ABN independent motions to dismiss).

[11]    *Id*. at ECF Nos. 234-36; 309-12; 322; 357.

4

The District Court returned the adversary proceedings to this Court for further proceedings consistent with the Opinion and Order. *See id.* RBS/ABN (along with other defendants in related litigations) then renewed its motion to dismiss before this Court, seeking dismissal on extraterritoriality and comity grounds pursuant to the Opinion and Order, on December 31, 2014.[12] In response, the Trustee opposed these motions and also proffered new allegations in support of his opposition that were not previously before the District Court.[13] Omnibus and case-specific reply briefs were filed on September 30, 2015.[14]

On November 22, 2016, upon consideration of the newly proffered allegations,[15] this Court entered the Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (SMB), Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) (the "Memorandum Decision" or "Mem. Decision"). In the Memorandum Decision, this Court did not reach the question of whether the claims in the Harley Action are barred by the presumption against extraterritoriality (*see id.* at *10; *see also id.* at *17), but dismissed the claims in this adversary proceeding—for avoidance of transfers from Harley (a Cayman corporation) to RBS/ABN, a foreign transferee—on international comity grounds. *Id.* at *16. At the same time, the Memorandum Decision denied the motion to dismiss claims in the Rye Action for avoidance of transfers from the Rye Cayman funds (both Cayman corporations) to RBS/ABN, a foreign transferee. *Id.* at *30. The Memorandum Decision also

---

[12]    Consolidated Proceedings, ECF No. 8903.

[13]    *See* Harley Action, ECF No. 57 & Harley Proffered Allegations; Rye Action, ECF No. 100 & Rye Proffered Allegations.

[14]    *See* Consolidated Proceedings, ECF No. 11542; Harley Action, ECF No. 62; Rye Action, ECF No. 105.

[15]    *See, e.g.*, Mem. Decision at *7 (discussing Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue).

5

dismissed claims in related adversary proceedings on international comity grounds or extraterritoriality grounds and denied dismissal of other claims.

A final Judgment was entered on March 3, 2017 in this adversary proceeding dismissing all claims in the Harley Action for avoidance of subsequent transfers to RBN/ABS, based on the Memorandum Decision's ruling on grounds of international comity.[16] The Trustee timely filed a notice of appeal on March 14, 2017 appealing the dismissal of the Harley Action and is now requesting that this Court certify a direct appeal to the United States Court of Appeals for the Second Circuit. RBS/ABN intends to seek leave from the District Court to appeal the denial of its motion to dismiss the Rye Action on extraterritoriality and comity grounds.

## ARGUMENT

**1.    The 28 U.S.C. § 158(d)(2)(A) factors are not met.**

28 U.S.C. § 158(d)(2)(A) sets out three criteria to be used by the bankruptcy court in determining whether to grant a direct appeal to the Court of Appeals. Recognizing the benefit that accrues from having bankruptcy decisions first reviewed by a district court, the Section 158(d)(2)(A) criteria focus on whether there is any reason to circumvent the natural course of appeals, wherein bankruptcy court decisions are reviewed first by the district court and then by the court of appeals[17]—namely: (i) whether the judgment appealed from involves "a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court" or "a matter of public importance"; (ii) whether there is "a question of law requiring resolution of conflicting decisions . . ."; or (iii) whether an immediate appeal "may materially advance the progress of the case or proceeding in which the appeal is taken." 28

---

[16]    Harley Action, ECF No. 74.

[17]    These criteria, which focus on the propriety of ***direct*** review by the court of appeals, are in contrast to the 1292(b) standards for determining whether ***any*** second-look or appeal is warranted in the first instance.

6

U.S.C. § 158(d)(2)(A)(i)–(iii). Though the Trustee asserts that all three circumstances exist here, that is not the case.

### a. There is no question of law here which implicates a matter of public importance.

Under the first prong of the 28 U.S.C. § 158(d)(2)(A) analysis, the judgment being appealed must involve "a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States" or "a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). This standard contrasts with the different standard in 28 U.S.C. § 1292(b)—permitting appeals from interlocutory orders—which requires that the order involve a controlling question of law.[18]

The standard for direct appeal to the Second Circuit cannot be met in the Harley Action, as there *is* a "controlling decision of the court of appeals"—*Maxwell II,* 93 F.3d 1036 (2d Cir. 1996)—which governs the application of the international comity doctrine to the proceeding.

Moreover, counter to the Trustee's contention, this appeal does not involve a "matter of public importance" within the meaning of the statute. As Judge Chapman recently stated:

> Simply because a matter is important to certain members of the public does not render it a matter of "public importance" that meets the standard for direct certification. Rather, as the District Court has stated, the matter on appeal must "transcend" the litigants and involve "a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."

*In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 141–42 (Bankr. S.D.N.Y. 2016) (citations omitted). The Trustee argues that an appeal in the Harley Action meets this standard— and should therefore be taken directly to the Second Circuit instead of the District

---

[18] *Cf.* 28 U.S.C. § 1292(b) (a court should accept an interlocutory appeal where the "order involves a controlling question of law" regardless of whether there is a controlling circuit or Supreme Court decision or a matter of public importance).

7

Court—because the decision will be relevant to "all of the parties in the adversary proceedings subject to extraterritoriality or comity defenses, as well as the BLMIS customers who will benefit from any recoveries the Trustee is able to obtain." T. Mem. at 7. But in this particular case these circumstances provide no reason to bypass the District Court—because an appellate decision by the District Court would be just as controlling over those other cases as an appellate decision by the Second Circuit. Moreover, even where similar litigation is ensuing, and a district court's decision in an appeal would not bind parallel litigants, the fact that parallel litigation is occurring regarding similar legal issues does not suffice to meet the standard of "public importance" such that the bankruptcy court should certify the case for direct appeal to the Second Circuit.[19]

Finally, to the extent that the Trustee is arguing that extraterritoriality is the controlling question of law involving "matters of public importance" (T. Mem. at 6-7), the argument is inapposite because this Court's decision declined to reach the issue of extraterritoriality in the Harley Action. Mem. Decision at *1 & *16. The Trustee himself acknowledges that the Harley claims at issue were dismissed solely "on the basis of international comity" (T. Mem. at 1 & 6, n.16), which is entirely separate from the extraterritoriality inquiry. *See* Mem. Decision at *11 ("[I]nternational comity is separate from the presumption against extraterritoriality . . . .") (internal citations omitted).[20] Thus, even if extraterritoriality may be

---

[19]    *See Mark IV Indus. Inc. v. New Mexico Env't Dep't*, 452 B.R. 385, 390 (S.D.N.Y. 2011) (existence of two other proceedings involving the same issues being appealed was not sufficient to establish an issue of public importance). *See also In re Conex Holdings, LLC*, 534 B.R. 606 at 611 (Bankr. D. Del. 2015) (fact that the result of an appeal could affect other parties to the Debtor's bankruptcy did not establish an issue of public importance).

[20]    The Trustee even refers to his intent to appeal a final judgment in a parallel action made on comity grounds as the "Comity Appeal." Consolidated Proceedings, ECF No. 15382 at 3.

8

raised by RBS/ABN as an alternative basis to affirm the decision of this Court, it is not a question at issue in the Trustee's appeal of the Harley Action in the first instance. Likewise, it is irrelevant to the appeal in the Harley Action whether the Trustee will be appealing the extraterritoriality issue in parallel proceedings.

### b. There are no conflicting decisions on the same question of law.

Under the second prong of the 28 U.S.C. § 158(d)(2)(A) analysis, "the judgment, order, or decree [must] involve[] a question of law requiring resolution of conflicting decisions." 28 U.S.C. § 158(d)(2)(A)(ii).[21] Here this prong is not met, as there are no conflicting decisions on the international comity question of law at issue.[22]

The Trustee argues that *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 WL 5339538, (S.D.N.Y. Sept. 21, 2016) conflicts with the Opinion and Order's international comity ruling. As acknowledged by the Trustee, however, the comity holding in *Kingate* explicitly applied "under th[o]se circumstances"— circumstances that are entirely distinguishable from this case.

*Kingate* dealt with common law tort claims brought by investors against fund managers, consultants, administrators, and auditors alleged to have breached certain duties of care. *Id.* at *1. The funds in *Kingate* were undergoing liquidation proceedings abroad and brought similar claims against the funds' managers and professionals in those foreign liquidation

---

[21] *Cf.* 28 U.S.C. § 1292(b) (a court should accept an interlocutory appeal where "there is substantial ground for difference of opinion" regardless of whether or not there are conflicting decisions). *See also Weber*, 484 F.3d at 158-59 & n.4 (contrasting the § 1292(b) standard).

[22] While there are no conflicting decisions that require resolution by the Court of Appeals, there is substantial ground for difference of opinion as to how to apply the comity doctrine. Indeed, RBS/ABN intends to seek leave to take an interlocutory appeal in the Rye Action, which this Court declined to dismiss on comity grounds, arguing that there is a substantial ground for difference of opinion as to whether the international comity ruling of the District Court should have been applied more broadly by this Court.

9

proceedings. The *Kingate* court determined that principles of comity did not make the defendants immune to the tort claims brought by investors simply because they were being sued for similar claims by the funds themselves in the foreign bankruptcy proceedings. *Id.* at *35.

The clawback claims at issue here are nothing like the common law tort claims in *Kingate*. In this proceeding, the Trustee seeks avoidance of transfers from a foreign entity, Harley, to its investor, RBS/ABN. Transfers from a foreign debtor to a transferee may be subject to disgorgement in foreign bankruptcy proceedings. *See* Opinion and Order, 513 B.R. at 232 (stating "these foreign jurisdictions have their own rules concerning on what bases the recipient of a transfer from a debtor should be required to disgorge it."). While multiple parties may be injured by a single tortfeasor and such parties may be entitled to seek independent relief, by definition, a single transfer may only be disgorged once. Thus, there is no conflict between the *Kingate* court's decision not to dismiss tort claims on comity grounds and this Court's Judgment dismissing the Trustee's avoidance claims on the basis of international comity.

As to extraterritoriality, even if that were at issue in the Trustee's appeal,[23] the cases that the Trustee cites do not present conflicting decisions. Two of the cases address extraterritoriality in the context of provisions of the bankruptcy code other than Section 550, which is at issue here.[24] And this Court's *BLI* decision has effectively been superseded by this Court's present decision (s*ee* Mem. Decision at *9-10), so the Trustee's reliance on the apparent

---

[23] As noted above, it is not.

[24] For example, *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127 (Bankr. S.D.N.Y. 2016), addressed whether section 548 of the Bankruptcy Code applies extraterritorially, not section 550. This Court's decision in *Spizz v. Goldfarb Seligman & Co. (In re Ampal-American Israel Corp.)*, 562 B.R. 601 (Bankr. S.D.N.Y. 2017) addressed section 547, not section 550 (while stating generally that the avoidance provisions of the Bankruptcy Code do not apply extraterritorially). 562 B.R. at 612.

10

conflict between the *BLI* decision and the *ET Decision* as a basis for direct certification to the Court of Appeals is misplaced.

### c. An immediate appeal to the Court of Appeals will not materially advance the progress of the case.

To satisfy the third prong of the 28 U.S.C. § 158(d)(2)(A) analysis, a direct appeal to the court of appeals must "materially advance the progress of the case or proceeding in which the appeal is taken." As the Second Circuit explained in *Weber*, this prong recognizes that immediate review by the Second Circuit can make sense where it is "patently obvious" that the bankruptcy court's decision is "manifestly incorrect" because in such cases the Second Circuit is "more likely to render a decision expeditiously, thereby advancing the progress of the case." *Weber*, 484 F.3d at 161.

Here, the Trustee does not contend that the dismissal of the Harley Action on international comity grounds was "manifestly incorrect" such that the Second Circuit will be able to reverse it "expeditiously" and thereby advance the progress of the proceeding. To the contrary, the Trustee's arguments suggest—correctly—that there is substantial ground for difference of opinion. In such circumstances, "percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." *Id.*

RBS/ABN does not contest that a direct appeal to the Court of Appeals could potentially accelerate the case. However, according to *Weber*, this is not sufficient to prove material advancement of the progress of the case.[25] The Court of Appeals has stated explicitly that speed is not the ultimate goal—and that a court must not lose sight of the ultimate objective

---

[25] *See also In re Johns-Manville Corp.*, 449 B.R. 31 at 34-35 (S.D.N.Y. 2011) (noting that the acceleration argument "can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court," and, if valid, "would eliminate appeals to the District Court").

11

to answer questions wisely and well. *Weber*, 484 F.3d at 160. As highlighted in *Weber*, there is inherent benefit in allowing the case to percolate through the district court in order to cast light on issues to be considered in any further appeal. Whatever speed could be achieved in presenting these issues directly to the Court of Appeals is outweighed by the benefit to the Court of Appeals of having the District Court weigh in on the application of its own opinion to the proposed allegations that post-dated its opinion. The Trustee's claim that "efficiencies" will be gained by a coordinated appeal is inapposite. Simply because a majority of the defendants in related litigations want to skip over the normal course of appeals and deny the District Court the ability to shed light over whether this Court properly implemented its Opinion and Order does not mean that RBS/ABN should be forced to do the same.

**2.    The District Court has appellate jurisdiction over the Judgment.**

The Trustee suggests that the District Court will somehow lack jurisdiction to review the judgment in the Harley Action because of the so-called "merger rule." This argument is incorrect.

The "merger rule" dictates that where a final judgment is on appeal, interlocutory orders merge into it and will be subject to appellate review. *See*, *e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 141 n.25 (2d Cir. 2011). In the context of bankruptcy proceedings, where a final order has been entered by this Court, the district court is conferred with appellate jurisdiction by 28 U.S.C. § 158(a)(1). Some courts have held that under the merger rule, the district court gains appellate jurisdiction over its own intermediate decisions issued in the midst of a bankruptcy case through the issuance of a final bankruptcy order,[26] while

---

[26]   According to these cases, the merger rule provides the district court with appellate review over its own prior decisions because they merge into a final bankruptcy order. *See, e.g.*, *In re Chateaugay Corp.*, 109 B.R. 613, 615 n.1 (S.D.N.Y. 1990), (holding that the "District Court order . . . merged into the Judgment and Order of the Bankruptcy Court" and so was subject to

12

others have rejected this proposition. Regardless, a district court retains appellate jurisdiction over final orders of a bankruptcy court.[27] To hold otherwise would lead to the absurd result of denying district courts appellate jurisdiction over final orders in bankruptcy cases in any case where the district court issued an interim order. In the present case, while the District Court may not have appellate jurisdiction over its own Opinion and Order, it most certainly has appellate jurisdiction to determine whether this Court properly implemented the Opinion and Order. *See* Hearing Tr. at 35:4-100:13.

Furthermore, the Trustee's argument ignores the fact that this Court's Memorandum Decision was issued based upon amended pleadings proffered by the Trustee that were not before the District Court.[28] The District Court may properly review this Court's Memorandum Decision applying the directives of the Opinion and Order to the Trustee's newly proffered allegations. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R.

---

the appellate jurisdiction of the District Court under Section 158) (citation omitted) *appeal dismissed and remanded*, 924 F.2d 480 (2d Cir. 1991); *cf. In re Leslie Fay Companies, Inc.*, 222 B.R. 718 (S.D.N.Y. 1998) (Rakoff J., rejecting *In re Chateaugay*), *aff'd sub nom. Falbaum v. Leslie Fay Companies, Inc.,* 182 F.3d 899 (2d Cir. 1999).

[27] In *In re Leslie Fay Companies, Inc*., cited by Trustee, the parties made the same objections before the district court and bankruptcy court, and both courts reached the same conclusion. Judge Rakoff determined that the district court could not re-litigate the conclusion reached by the district court by appealing the bankruptcy court's identical determination, but went on to review other aspects of bankruptcy court's final order over which the district court retained jurisdiction. *Id. In re Leslie Fay Companies, Inc.* is distinct from this case where RBS/ABN is requesting an appeal to the district court not to re-litigate the conclusion reached by the District Court, but to determine whether this Court properly implemented the District Court's Opinion and Order.

[28] Harley Proffered Allegations; *see also* Mem. Decision at *7 ("The Trustee and the Participating and Non–Participating Subsequent Transferees were also permitted to file pleadings relevant to each individual adversary proceeding, including short supplemental briefs and, in the case of the Trustee, either a proposed amended complaint or proffered allegations supporting an amended complaint.").

13

579, 585 n.4 (S.D.N.Y. 2013) (noting that to extent bankruptcy issue was not being reviewed *de novo* by district court, it would be reviewed by district court under appellate jurisdiction).

3.  **The Court of Appeals will benefit from the District Court's insight.**

The Second Circuit has noted that there is benefit inherent in having a district court review a bankruptcy court's decision prior to subsequent consideration by the Court of Appeals. *Weber*, 484 F.3d at 161. This process allows the issue to "percolat[e] through the district court," allowing the district court to "cast more light on the issue and facilitate a wise and well-informed decision [by the Court of Appeals]." *Id.* If this Court certifies a direct appeal to the Court of Appeals, bypassing the District Court's review, the Court of Appeals will be deprived of the District Court's input regarding the application of the law to the Trustee's newly proffered allegations. Here, the District Court should be given the opportunity to review this Court's Judgment "through the normal channels," as described by the Court of Appeals in *Weber*, and the Trustee may then seek review-as-of-right by the Court of Appeals. *Mark IV Indus. Inc*, 452 B.R. at 388-89 (bankruptcy court citing *Weber* as support for denial of direct certification).

4.  **There is efficiency in the District Court reviewing both the Harley Action and the Rye Action.**

As noted above, RBS/ABN intends to seek leave in the District Court to appeal the order denying dismissal of claims in the Rye Action. The appeal of the Rye Action will raise a number of the same issues as the Trustee's appeal of the Harley Action. We respectfully submit that the benefits of having the District Court review the Rye and Harley Actions at the same time weigh in favor of this Court both denying the Trustee's motion for certification for direct appeal, and granting an interlocutory appeal in the Rye Action.

14

## **CONCLUSION**

WHEREFORE RBS/ABN respectfully requests that this Court deny the Trustee's request to certify the Judgment for a direct appeal to the United States Court of Appeals for the Second Circuit.

Dated: March 28, 2017
       New York, New York

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ Michael S. Feldberg
Michael S. Feldberg
*michael.feldberg@allenovery.com*
1221 Avenue of the Americas
New York, New York 10020
Telephone:   (212)-610-6300
Facsimile:   (212) 610-6399

*Attorneys for Defendant ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.)*