**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Fernando A. Bohorquez, Jr.
Elyssa S. Kates

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>RADCLIFF INVESTMENTS LIMITED, ROTHSCHILD TRUST GUERNSEY LIMITED, and ROBERT D. SALEM,<br><br>Defendants. | Adv. Pro. No. 10-04517 (SMB) |

**FIRST AMENDED COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the consolidated estate of Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, for his first amended complaint (the "Complaint"), states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the Ponzi scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The defendants Radcliff Investments Limited, Rothschild Trust Guernsey Limited and Robert D. Salem (collectively, "Defendants") received avoidable transfers from BLMIS or were the entities for whose benefit the transfers were made.

2. Defendants were beneficiaries of this Ponzi scheme. From December 11, 2006 to December 11, 2008, Defendants received $7,216,994 in avoidable and recoverable transfers. The Trustee's investigation has revealed that $2,216,994 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, Defendants received $2,216,994 of other people's money, all within two years of BLMIS's collapse.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

3.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law.  The Trustee seeks to avoid and recover fraudulent transfers of fictitious profits that BLMIS made to or for the benefit of Defendants so that customer property may be equitably distributed to the allowed claims of BLMIS's defrauded customers.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and section 78eee(b)(2)(A) and (b)(4).

5.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O).  The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1409.

## DEFENDANTS

7.      Radcliff Investments Limited ("Radcliff") is a limited liability company formed under the laws of the Cayman Islands.  Its registered address is Five Continents Financial Ltd., Anchorage Centre, Harbour Drive, 2nd Floor, Georgetown, Cayman Islands.  A BLMIS account, number 1FR100, in the name, "Radcliff Investments Ltd.," ("Account") with an address reported

3

300353381.15

as Five Continents Financial Ltd., Anchorage Centre, Harbour Drive, 2nd Floor, Georgetown, Cayman Islands was nominally held by Radcliff. Upon information and belief, Radcliff is directly or indirectly owned by a Guernsey-based trust, Rothschild Trust Guernsey Limited (the "Trust"). Upon information and belief, Radcliff is an initial transferee of the avoidable transfers referenced above.

8.   The Trust is a limited liability company incorporated under the laws of Guernsey in 1970. It is a subsidiary of N. M. Rothschild & Sons. The Trust's principal place of business is located at St. Peter's House, Le Bordage Street, Peter Port, Guernsey GY1 6AX. Upon information and belief based upon the Trustee's investigation to date, at all relevant times, the Trust managed and controlled the Account and represented to BLMIS that the Trust owned the funds in the Account. The Trust and/or its employees or authorized agents signed documents relating to the Account, instructed BLMIS to provide the Trust with all Account information and documents, corresponded with BLMIS concerning the Account, directed BLMIS to liquidate the Account, and directed BLMIS to send all transfers to an account at JPMorgan Chase Bank in New York held in the subaccount name of "Rotrust re Radcliff Investments Limited" (the "Trust's NY Bank Account"). The Trust is an initial transferee of the avoidable transfers referenced above.

9.   Upon information and belief, defendant Robert D. Salem ("Mr. Salem") maintains a business address in London, England.[2] Upon further information and belief, Mr. Salem was a principal for the investment with BLMIS and an ultimate beneficiary of the fictitious profits transferred by BLMIS to the Trust's NY Bank Account. Upon further information and belief, Mr. Salem communicated with BLMIS employees regarding the Account and received copies of

---

[2] On September 18, 2014, the Clerk of the Court entered default against Mr. Salem. The Trustee is in the process of seeking entry of a final judgment against Mr. Salem.

4

300353381.15

purported trade confirmations, cash account movement reports, and month-end valuations. Upon further information and belief, Mr. Salem engaged Stephen Chaplin ("Mr. Chaplin"), Executive Vice President of Radix Organization Inc., an investment advisor registered with the Securities and Exchange Commission ("SEC"), with offices in New York, New York, to assist Mr. Salem in connection with the Account and BLMIS generally.

10.     The Defendants knowingly, purposefully and intentionally invested, or caused investments to be made, with BLMIS in the United States. The Defendants received or obtained the benefit of the transfers of fictitious profits from the Account.

## BACKGROUND, THE TRUSTEE AND STANDING

11.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the SEC commenced the District Court Proceeding.

12.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

13.     Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    a.     appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    b.     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

5

300353381.15

      c.      removed the case to this Court pursuant to SIPA § 78eee(b)(4).

14. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

15. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

16. At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

17. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

18. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

6

19. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi ("Ms. Crupi"), George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

20. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

21. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

22. The Trustee has standing to bring the avoidance and recovery claims in this matter under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

23. In compliance with SIPA section 78*o*(b)(1) and SEC Rule 15B1-3, and regardless of its business form, BLMIS operated as a single broker-dealer from 1960 through 2008. Public

7

records obtained from the Central Registration Depository of the Financial Industry Regulatory Authority Inc. reflect BLMIS's continual registration as a securities broker-dealer from January 1, 1960 through December 31, 2008. At all relevant times, BLMIS was assigned CRD No. 2625, SIPC's Membership Management System Database ("MMS") also reflects BLMIS's registration with the SEC as a securities broker-dealer from January 19, 1960 through December 31, 2008. On December 30, 1970, BLMIS became a member of SIPC and continued its membership without any change in status until the Filing Date. SIPC membership is contingent on registration of the broker-dealer with the SEC.

24. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, both of whom pleaded guilty to helping Madoff carry out the fraudulent scheme.

25. Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the

8

downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

26. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

27. Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

28. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

29. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

9

30. Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

31. BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

32. Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

33. BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

10

34. At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

35. According to BLMIS's records, the Account was maintained with BLMIS, as set forth on Exhibit A. For the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

36. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and Defendants sent or caused to be sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York. Between the date the Account was opened and the Filing Date, Defendants made deposits or caused deposits to be made into the Account at BLMIS through checks and/or wire transfers to the BLMIS Bank Account for the purpose of BLMIS investing the funds.

37. During the two years prior to the Filing Date, BLMIS made transfers totaling approximately $2,216,994 in fictitious profits from the Ponzi scheme (collectively, the "Two Year Transfers") to Defendants or for their benefit. The Two Year Transfers constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money. The Two Year Transfers were made to or for the benefit of Defendants at the direction of the Trust, to the Trust's NY Bank Account and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

11

38. The Two Year Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3). See Exhibit B, Column 10.

39. Based upon representations made by Defendants or on their behalf, the Trust and Mr. Salem are beneficiaries or initial transferees of the Two Year Transfers from the Account.

40. The Two Year Transfers, or the value thereof, are recoverable from the Defendants pursuant to section 550(a) of the Bankruptcy Code.

41. The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the Initial Transfers, and any additional transfers; and (ii) seek avoidance and recovery of such transfers.

**THE TRANSACTIONS BETWEEN BLMIS AND THE DEFENDANTS WERE DOMESTIC**

42. Trustees of defendant Trust expressly informed Jodi Crupi of BLMIS in 2003 that although the Account was in Radcliff's name the accountholder, the "ultimate beneficial owner" of the Account was the Trust, and the assets of the Account were "owned and directly controlled by ourselves as Trustees."

43. Trustees of the Trust communicated directly with BLMIS over the life of the Account, including providing BLMIS with information in connection with the opening of the Account. The Trust directed BLMIS to provide the Trust with documents relating to the Account. Consistent with the Trust's instructions, the Trust received statements and other documents directly from BLMIS.

44. On May 31, 2007, the Trust directed the closing of the Account at BLMIS. In a letter on the Trust's letterhead on that date, the Trust directed BLMIS to liquidate the holdings in the Account and transfer the proceeds to the Trust's NY Bank Account at JP Morgan Chase Bank. The letter stated in part that "[u]pon completion of this transfer I would be grateful if you

12

would kindly close our account with you in the name of Radcliff Investments Limited…" In another letter on the Trust's letterhead dated October 31, 2007, the Trust again directed BLMIS to close the Account and transfer the full balance to the Trust's NY Bank Account at JP Morgan Chase Bank.

45. Upon information and belief, the routing number for the Trust's NY Bank Account is only used for accounts opened in New York with U.S. banking institutions. Therefore, the Trust directed BLMIS to close the Account and transfer the funds from the Account to a United States receiving bank, a further indication of the domestic nature of the transactions at issue.

46. The Defendants' activities were knowingly directed at investing with BLMIS in the United States and in deriving profit from BLMIS's purported SSC strategy. Moreover, the component events surrounding the deposits of funds into BLMIS and the subsequent redemptions of those same investments were centered in the United States.

47. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## COUNT ONE
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

48. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

49. Each of the Two Year Transfers was made on or within two years before the Filing Date.

50. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

13

51. Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

52. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

53. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

i. Pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

ii. Impressing the Defendants' property or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

14

300353381.15

iii.     Establishing a constructive trust over all Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

iv.     Pursuant to federal common law, awarding the Trustee prejudgment interest from the date on which the Initial Transfers were received;

v.     Awarding the Trustee all applicable interest, costs and disbursements incurred in this proceeding; and

vi.     Granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.


Date:  March 31, 2017
       New York, New York

By: */s/ Fernando A. Bohorquez, Jr.*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Fernando A. Bohorquez, Jr.
Email: fbohorquez@bakerlaw.com
Elyssa Kates
Email: ekates@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*