**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br>   v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                Plaintiff,<br>   v.<br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>                Defendants. | Adv. Pro. No. 09-01182 (SMB) |

**TRUSTEE'S MOTION *IN LIMINE* NUMBER 1 AND MEMORANDUM OF LAW TO
EXCLUDE ALL EVIDENCE AND TESTIMONY ON THE ACTIONS OR INACTIONS
<u>OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..........................................................................................................................2

        A.        The SEC's Investigation of Avellino & Bienes ..........................................3

        B.        The SEC's Inspections and Examinations of BLMIS ................................4

        C.        Post-December 11, 2008 SEC Office of Inspector General Report .............5

ARGUMENT .................................................................................................................................5

        I.        EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR
                INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED WHERE
                DEFENDANTS HAVE NO PERSONAL, PARTICULARIZED,
                CONTEMPORANEOUS KNOWLEDGE AND THUS CANNOT LAY THE
                PROPER EVIDENTIARY FOUNDATION ..........................................................6

        II.       EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR
                INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED AS
                INADMISSIBLE HEARSAY ......................................................................8

        III.      EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR
                INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED
                BECAUSE SUCH EVIDENCE AND TESTIMONY IS IRRELEVANT
                AND LACKS PROBATIVE VALUE ..................................................11

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beechwood Restorative Care Ctr. v. Leeds*,
    856 F. Supp.2d 580 (W.D.N.Y. 2012) ...................................................................................10

*Bernstein v. Vill. of Wesley Hills*,
    95 F. Supp. 3d 547 (S.D.N.Y. 2015)........................................................................................9

*Brown v. Keane*,
    355 F.3d 82 (2d Cir. 2004).......................................................................................................9

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
    No. 10 CV 2333 (KMW), 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013)....................................9

*Chamilia, LLC v. Pandora Jewelry, LLC*,
    No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) ...............................9

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
    No. 01 Civ. 3796 (PKL), 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004)...................................6

*Contreras v. Artus*,
    778 F.3d 97 (2d Cir. 2015).....................................................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...............................................................................................................13

*In re Hilton*,
    544 B.R. 1 (Bankr. N.D.N.Y. 2016) ........................................................................................6

*Levy v. Bessemer Trust Co., N.A.*,
    No. 97 CIV. 1785 (JFK), 2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000) ................................6

*Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*,
    444 B.R. 767 (Bankr. W.D. Mich. 2011)...............................................................................13

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996)......................................................................................................5

*Parsons v. Honeywell, Inc.*,
    929 F.2d 901 (2d Cir.1991)....................................................................................................10

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011)...............................................................................................12

*Picard v. Merkin*,
    563 B.R. 737 (Bankr. S.D.N.Y. 2017).........................................................................1, 12, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Serv. LLC (In re Madoff Sec.)*,
    516 B.R. 18 (S.D.N.Y. 2014) ............................................................................... 11, 13

*In re Sept. 11 Litig.*,
    621 F. Supp. 2d 131 (S.D.N.Y. 2009) .......................................................................... 13

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ...................................................................................................... 11

*United States v. Cuti*,
    720 F.3d 453 (2d Cir. 2013) ........................................................................................... 6

*United States v. Dupree*,
    706 F.3d 131 (2d Cir. 2013) ........................................................................................... 9

*United States v. Garcia*,
    291 F.3d 127 (2d Cir. 2002) ........................................................................................... 6

*United States v. Gupta*,
    747 F.3d 111 (2d Cir. 2014) ......................................................................................... 11

*United States v. Mackey*,
    117 F.3d 24 (1st Cir. 1997) .......................................................................................... 10

*United States v. Moore*,
    27 F.3d 969 (4th Cir. 1994) .......................................................................................... 10

*United States v. Tocco*,
    135 F.3d 116 (2d Cir. 1998) ........................................................................................... 6

*Wechsler v. Hunt Health Sys., Ltd.*,
    381 F. Supp. 2d 135 (S.D.N.Y. 2003) ............................................................................ 6

*Woodman v. WWOR–TV, Inc.*,
    411 F.3d 69 (2d Cir. 2005) ........................................................................................... 13

*Yeager v. United States*,
    557 U.S. 110 (2009) ...................................................................................................... 12

**Statutes**

11 U.S.C. § 548 .................................................................................................................... 12

15 U.S.C. § 78aaa *et seq.* ...................................................................................................... 1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Rules**

Fed. R. Bankr. P. 9017 ................................................................................................................1

Fed. R. Evid. 104 ........................................................................................................................6

Fed. R. Evid. 401 ............................................................................................................6, 11, 12

Fed. R. Evid. 402 ......................................................................................................................11

Fed. R. Evid. 403 ......................................................................................................................11

Fed. R. Evid. 602 ........................................................................................................................6

Fed. R. Evid. 801 ........................................................................................................................9

Fed. R. Evid. 802 ......................................................................................................................10

Fed. R. Evid. 803 ......................................................................................................................10

Fed. R. Evid. 803(8) ............................................................................................................10, 11

**Other Authorities**

4 Michael H. Graham, *Handbook of Federal Evidence* § 602:1 (7th ed. 2016) ..............................9

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
    § 402.02 (Joseph M. McLaughlin ed., 2d ed. 2008) ...............................................................11

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
    § 401.04[2][b] (Joseph M. McLaughlin ed., 2d ed. 2008) .....................................................12

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
    § 401.04[3][b] (Joseph M. McLaughlin ed., 2d ed. 2008) .....................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq*., and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang in support of the Trustee's Motions *In Limine* Numbers 1 through 4 ("Hoang Decl.") for entry of an order pursuant to the Federal Rules of Evidence, made applicable here by Federal Rule of Bankruptcy Procedure 9017, excluding all evidence and testimony of the actions or inactions of the United States Securities and Exchange Commission ("SEC") related to BLMIS.

## PRELIMINARY STATEMENT

On May 7, 2009, the Trustee filed a complaint against Merkin, Gabriel Capital Corporation ("GCC"), Ascot Partners, Ariel Fund Limited ("Ariel") and Gabriel Capital, L.P. ("Gabriel") for avoidance and recovery of preferential and fraudulent transfers received from their BLMIS customer accounts.[1] Throughout discovery and motion practice in this action, Defendants[2] have made it abundantly clear that they intend to introduce evidence and testimony that the SEC's actions or inactions related to BLMIS support their affirmative defense of good faith to the Trustee's avoidance action. Specifically, Defendants assert that the SEC's purported "clearance" of Madoff provided them with assurances about the BLMIS investments and that the SEC's post-December 11, 2008 findings concerning the SEC's failures in uncovering the fraud at BLMIS is evidence that Defendants were not willfully blind and thus acted in good faith. However, such evidence should be excluded by the Court for several reasons. First, Defendants have not and cannot establish that they possessed personal and particularized knowledge of the

---

[1] *See* Complaint, *Picard v. Merkin*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y May 7, 2009), ECF No. 1. All subsequent "ECF" references in this memorandum refer to the case captioned, *Picard v. Merkin*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.), unless otherwise stated herein.

[2] "Defendants" as referenced herein includes Defendants J. Ezra Merkin, Gabriel Capital Corporation, Ascot Partners L.P., and Ascot Fund Ltd.

SEC's actions or inactions contemporaneous with their BLMIS investments.  Second, evidence of the SEC's actions and inactions and post-December 11, 2008 findings concerning BLMIS is inadmissible hearsay.  And last, the SEC's actions or inactions on facts and issues unknown to the Defendants are entirely irrelevant and lack any probative value where the issue is the subjective, contemporaneous knowledge and actions of the Defendants.  For these reasons, the Trustee respectfully requests that the Court enter an order precluding Defendants from introducing any evidence or testimony concerning the SEC's actions and/or inactions related to BLMIS and Madoff.

## BACKGROUND

The seminal issue in this avoidance action is whether Defendants were willfully blind to facts suggesting a high probability of fraud at BLMIS.  Defendants touted in discovery and in their motion papers before this Court their intention to rely on the SEC's inspections and examinations of Madoff and the SEC's post-December 11, 2008 report on BLMIS and Madoff.  Specifically, in discovery, Defendants aver:

> Mr. Merkin also knew that BLMIS was a registered broker-dealer and later registered as an investment advisor, and therefore was subject to periodic and surprise inspections by its primary regulator, the SEC.  The fact that Mr. Madoff and his firm were regularly inspected by the SEC and the SEC had never raised any significant issue about the firm's operations – in one of their many conversations, Mr. Madoff reported that the SEC had visited BLMIS's offices to conduct reviews eight times in sixteen years – gave Mr. Merkin additional comfort about Mr. Madoff's bona fides.[3]

Defendants reiterated this mantra in their summary judgment motions before this Court, asserting that the SEC's investigations concerning or related to BLMIS and Madoff "became known and

---

[3] Hoang Decl., Ex. 1 (Defendants J. Ezra Merkin and Gabriel Capital Corporation's Supplemental Responses to Plaintiff's Second Set of Interrogatories and Requests for Admissions in Accordance with Decision #3 ("Defendants' Suppl. Responses")) at 5.

2

provided reassurance to investors," including Merkin, as evidence that Defendants were not willfully blind.[4] Defendants also claim that the SEC investigated BLMIS and Madoff, but failed to uncover the fraud, and therefore Defendants' failure to do the same cannot be willful blindness.[5]

### A. The SEC's Investigation of Avellino & Bienes

In 1992, the SEC investigated Avellino & Bienes, Florida accountants who pooled $440 million in investments with BLMIS.[6] Merkin confirmed that he had no personal, particularized, contemporaneous knowledge of Avellino & Bienes, its pooling of investment funds, its investment with BLMIS, or the nature and scope of the SEC's investigation into Avellino & Bienes.[7] Merkin admitted that he "didn't know anything about Avellino & Bienes until [he] read [a] . . . Wall Street Journal article," published on December 16, 1992, which discussed the SEC's investigation.[8] When asked what other information he had on Avellino & Bienes, other than the newspaper articles, Merkin stated: "Other than a discussion with Mr. Madoff about them, no . . . that was it."[9] Of the discussion with Madoff, Merkin had essentially no recollection of the facts of the investigation:

> There's a reference to the SEC investigation in that article. And Richard Walker, who was the regional administrator in New York at the SEC at that time, is quoted. I don't remember exactly what he says in that quote, because I don't remember the article that

---

[4] Memorandum of Law in Support of the Motion for Summary Judgment of Defendants Ascot Partners, L.P., and Ascot Fund Ltd. ("Ascot's Mot. Summ. J."), at 1, ECF No. 284.

[5] *Id.*; *see also* Defendants J. Ezra Merkin and Gabriel Capital Corporation's Memorandum of Law in Support of Their Motion for Summary Judgment ("Merkin's Mot. Summ. J.") at 10, ECF No. 285.

[6] Hoang Decl., Ex. 7 (Randall Smith, *Wall Street Mystery Features a Big Board Rival*, WALL ST. J., Dec. 16, 1992– ECF No. 286-5 at GCC-P 0393125-126); *see also* Merkin's Mot. Summ. J. at 9–10; Hoang Decl., Ex. 1 (Defendants' Suppl. Responses) at 3–4.

[7] *See* Hoang Decl., Ex. 3 (Deposition of J. Ezra Merkin dated Feb. 25, 2015 ("Merkin Feb. 25 Dep.") at 576:17–578:18.

[8] *Id.* at 576:17–577:15.

[9] *Id.* at 576:25–577:8.

3

well, but I believe he is named or maybe he's just referred to and there's not a quote in quotations. I just don't remember it that clearly. But we discussed the article and we may have discussed Richard Walker, in which case the answer to your question did we discuss anything about the SEC would have been yes. *If we didn't bring up Richard Walker, I don't remember otherwise a discussion about the SEC.*[10]

B.  **The SEC's Inspections and Examinations of BLMIS**

Defendants claim that Merkin knew that BLMIS and Madoff were subject to inspections and examinations by the SEC and were the focus of SEC examinations in 2006 and 2007.[11]  As per SEC protocol, the investigations, facts, and evidence related to the examination were not contemporaneously made public.[12]  When asked what information he had about the SEC's examinations of BLMIS and Madoff, Merkin testified that he relied upon what Madoff generally told him:

> [Madoff] had either scheduled or surprise visits from the SEC with some regularity and some frequency, perhaps more on the regular than on the surprises.  He was very proud of his overall compliance record and just sort of a clean bill of health with occasional references to one or two smaller things, and it certainly meant a great deal to me that the SEC, with the power of subpoena, with the ability to spend days at the firm, *which is how he presented it, came away and said, you know, thank God for Bernie*.  And that was very significant to me.[13]

When testifying regarding the details of the SEC's investigations, Merkin was unable to recall if Madoff specifically provided him with certain information:

---

[10] *Id*. at 577:24–578:18 (emphasis added).

[11] Merkin's Mot. Summ. J. at 10; *see also* Ascot's Mot. Summ. J. at 16-17.  The Defendants point to a December 19, 2008 article from the Washington Post in support of this statement.  Putting aside the impossibility of this article providing Merkin knowledge of facts prior to Madoff's confession, the article only details the 2006-2007 investigation.  Declaration of Neil A. Steiner in Support of Defendants' Motions for Summary Judgment dated October 8, 2015, ECF No. 286, Ex. 24, Binyamin Applebaum, *Madoff Case 'Failures' Put SEC in Spotlight*, WASH. POST, Dec. 19, 2008, at A1.

[12] *See Investigations by the Securities and Exchange Commission*, U.S. Sec. and Exch. Comm'n, https://www.sec.gov/fast-answers/answersinvestghtm.html (last visited Apr. 4, 2017); *see also What We Do*, U.S. Sec. and Exch. Comm'n, https://www.sec.gov/Article/whatwedo.html (last visited Apr. 4, 2017).

[13] Hoang Decl., Ex. 2 (Deposition of J. Ezra Merkin dated Feb. 24, 2015 ("Merkin Feb. 24 Dep.")) at 188:15–189:7.

4

> Q. My question, though, was, maybe I wasn't clear so I'll restate it. Did he tell you what exactly the SEC did during these visits?
>
> A. Yeah, He – his operation was reviewed by the SEC. It is my memory on the – on what I thought of as the two sort of aspects of the business.
>
> Q. What I'm asking you for is specifically, for example, did he tell you that they asked for access to DTCC to verify the fact that he had the stock he said he had?
>
> A. I don't remember that conversation.
>
> Q. Did he ever represent to you that that happened?
>
> A. I truly don't remember.[14]

### C. Post-December 11, 2008 SEC Office of Inspector General Report

After Madoff confessed to the Ponzi scheme at BLMIS, the SEC Office of Investigations ("OIG") published for the first time the results of the SEC's prior inspections and examinations of BLMIS. The report, entitled "Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme" (the "OIG Report"),[15] consists of the SEC's findings and conclusions, and is replete with statements and testimony from investors, financial industry participants, and SEC personnel. The 457-page report was published on August 31, 2009, over eight months after Madoff's confession on December 11, 2008.[16]

## ARGUMENT

The purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation

---

[14] *Id.* at 189:8–24.

[15] U.S. Sec. and Exch. Comm'n Office of Investigations, Report No. OIG-509, *Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme*, Public Version ("OIG Report") (Aug. 31, 2009), *available at* https://www.sec.gov/files/oig-509.pdf.

[16] *Id.*; Hoang Decl., Ex. 8 (Memo Endorsed Plea Allocution, *United States v. Madoff*, No. 09 CR 213 (DC) (Mar. 12, 2009), ECF No. 50).

5

omitted). Under Fed. R. Evid. 104, the Court has full discretion to determine preliminary questions concerning the admissibility of evidence. *See* Fed R. Evid. 104. Moreover, *in limine* rulings are particularly appropriate in bench trials. *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796 (PKL), 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) (finding proposed exhibits "irrelevant, such that admitting them even at a bench trial would contravene Rule 401 and serve no purpose"); *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (noting that motions *in limine* apply with equal force to non-jury portions of trial).

**I.    EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED WHERE DEFENDANTS HAVE NO PERSONAL, PARTICULARIZED, CONTEMPORANEOUS KNOWLEDGE AND THUS CANNOT LAY THE PROPER EVIDENTIARY FOUNDATION**

It is well-settled that "the proponent of any evidence . . . must establish a proper foundation for the evidence before a court may admit it." *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (citation omitted). A witness may not testify to a matter unless there is evidence sufficient to support a finding that he or she has personal knowledge of the matter. *See* Fed. R. Evid. 602; *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013). Restated, Fed. R. Evid. 602 excludes testimony concerning matters the witness did not observe, nor had opportunity to observe. *In re Hilton*, 544 B.R. 1, 7–8 (Bankr. N.D.N.Y. 2016). The test for personal knowledge is "whether a reasonable trier of fact could believe the witness had personal knowledge." *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (citations omitted). Where deposition testimony establishes that a witness lacks the personal knowledge required by Fed. R. Evid. 602, and would simply be testifying about what he or she heard from others, the witness should be excluded from testifying at trial. *Levy v. Bessemer Trust Co., N.A.*, No. 97 CIV. 1785 (JFK), 2000 WL 1300402, at *1 (S.D.N.Y. Sept. 14, 2000).

6

Defendants have oft-repeated the argument that they could not be willfully blind to fraud at BLMIS and, in fact, were assured because the "SEC repeatedly investigated and inspected Madoff, including in 1992, 2006, and 2007, but did not uncover the fraud."[17] However, Defendants have provided no foundation to support these claims or any evidence to suggest that Defendants were personally and contemporaneously aware of the particularized facts of each of the inspections, examinations, and investigations. Of the 1992 investigation of Avellino & Bienes, Merkin admitted that his source of information was limited to a newspaper article and an unsubstantiated conversation with Madoff that Merkin could not specifically recall.[18] Of the other inspections, Merkin's knowledge was from Madoff's generalized opinion of the SEC actions and a newspaper article published after Madoff's confession on December 11, 2008.[19] Defendants have not presented any evidence to suggest—contemporaneous with its investments with BLMIS—that: (1) Merkin had conversations with the SEC about its inspections, examinations, or investigations of Avellino & Bienes or BLMIS and Madoff; (2) Defendants were provided with the evidence that the SEC obtained during those inspections, examinations, or investigations; or (3) Defendants were aware of the specific findings of the SEC. Merkin's reliance on newspaper articles and Madoff's vague statements regarding the SEC's inspections, examinations, or investigations do not establish the requisite personal knowledge or sufficient foundation required by the Federal Rules of Evidence.

Defendants' reliance on the OIG report and its findings likewise suffer the same evidentiary deficiency. Defendants seize upon the findings in the report as evidence that they could not have seen facts suggesting a high probability of fraud at BLMIS. But, nothing in the

---

[17] Ascot's Mot. Summ. J. at 16-17; *see also* Merkin's Mot. Summ. J. at 10.

[18] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 576:25–578-18.

[19] Hoang Decl., Ex. 2 (Merkin Feb 24 Dep.) at 187:23–189:24.

7

report's findings of the SEC actions and inactions absolves the Defendants from their failures to take appropriate action when confronted with facts suggesting a high probability of fraud at BLMIS. In fact, the report states that:

> The OIG also found that numerous private entities conducted basic due diligence of Madoff's operations, and without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise. Specifically, Madoff's description of both his equity and options trading practices immediately led to suspicions about Madoff's operations. With respect to his purported trading strategy, many simply did not believe that it was possible for Madoff to achieve his returns using a strategy described by some industry leaders as common and unsophisticated. In addition, there was a great deal of suspicion about Madoff's purported options trading, with several entities not believing that Madoff could be trading options in such high volumes where there was no evidence that any counterparties had been trading options with Madoff. The private entities' conclusions were drawn from the same 'red flags' in Madoff's operations that the SEC considered in its examinations and investigations, but ultimately dismissed.[20]

While the OIG found that numerous entities did determine that investing in BLMIS was "unwise," it sheds no light on Merkin's personalized knowledge. And, there is no evidence that Defendants had contemporaneous, personal knowledge of the contents of the report, the investigation conducted by the SEC, or the findings in the report. As such, any reference to the report and contents therein should be excluded.

## II. EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED AS INADMISSIBLE HEARSAY

Testimony or evidence of the SEC's actions or inactions based on statements contained in a newspaper article, Merkin's recitation of what Madoff told him, and statements contained in the OIG report is inadmissible hearsay and should be excluded.

---

[20] OIG Report at 25.

Hearsay is a declarant's out of court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Classic hearsay statements that are offered for their truth should be excluded. *See, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10 CV 2333 (KMW), 2013 WL 822173, at *8 (S.D.N.Y. Mar. 6, 2013) (striking a paragraph from a declaration that discussed conversations the declarant had with a third party); *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 559–60 (S.D.N.Y. 2015) (striking part of a declaration referencing a third party who stated that he heard yet another individual say something, because it was offered for the truth that the statements were made); *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *17 n.14 (S.D.N.Y. Sept. 24, 2007) (witness could not present evidence about why someone else did not make purchase because "[s]uch evidence is hearsay and inadmissible").

The inadmissibility of hearsay is closely linked to the requirement of personal knowledge. When a statement is hearsay, the declarant must be shown to have personal knowledge as to the matter related before a hearsay exception will yield its admissibility. 4 Michael H. Graham, *Handbook of Federal Evidence* § 602:1 (7th ed. 2016). A factual assertion "based on conjecture and surmise, to which the declarant would not be allowed to testify if called to the witness box, does not become admissible under an exception to the hearsay rule . . . ." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).

Here, Defendants' arguments regarding the SEC's actions and inactions are the very definition of inadmissible hearsay. In connection with the 1992 Avellino & Bienes investigation, Merkin testified that the SEC "found the fund to be managed by Madoff and we were very, very

9

happy to tell you that everything is there."[21] Merkin likewise testified as to what Madoff told him about the SEC's inspections and examinations—"a clean bill of health with occasional references to one or two smaller things" and that the "SEC, with the power of subpoena, with the ability to spend days at the firm, which is how he presented it, came away and said, you know, thank God for Bernie."[22] These statements are hearsay upon hearsay, none of which are admissible through Defendants.

Nor is the extensive hearsay contained in the OIG report saved by the public records exception to hearsay under Fed. R. Evid. 803(8). While the findings and conclusions of the report may fall within the hearsay exception, the statements of third parties, however, are not admissible as evidence simply because they are contained within an official report. *Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp.2d 580, 888–89 (W.D.N.Y. 2012) (statements of third parties in official's memo did not fall within any hearsay exception and is not admissible); *United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) ("decisions in this and other circuits squarely hold that hearsay statements by third persons . . . are not admissible under this exception merely because they appear within public records"); *United States v. Moore*, 27 F.3d 969, 975 (4th Cir. 1994) ("Even assuming that the report itself fell within the public records exception to the hearsay rule, Fed. R. Evid. 803(8), Bonet's statement to the examiner, which was contained in that report, is hearsay and inadmissible unless some exception to the hearsay rule applies") (citing Fed. R. Evid. 802); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir.1991) (factual findings based on a public official's "own observations and knowledge may be admitted but . . . statements made by third persons under no business duty to report may not").

---

[21] Hoang Decl., Ex. 2 (Merkin Feb. 24 Dep.) at 213:24–214:18.

[22] *Id*. at 188:20–189:7.

Even here, notwithstanding Fed. R. Evid. 803(8), the findings and conclusions in the OIG report should be excluded in this action as either irrelevant under Fed. R. Evid 402 or under Fed. R. Evid. 403 since its probative value is substantially outweighed by the risk of unfair prejudice. As discussed *infra* at Section III, the findings and conclusions of the OIG report are not relevant to and lack any probative value as the issue of Defendants' affirmative defense is a subjective one—whether the Defendants themselves were willfully blind to facts suggesting a high probability of fraud at BLMIS. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Serv. LLC (In re Madoff Sec.)*, 516 B.R. 18, 23 (S.D.N.Y. 2014) ("Good Faith Decision").

## III. EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS OR INACTIONS CONCERNING BLMIS SHOULD BE EXCLUDED BECAUSE SUCH EVIDENCE AND TESTIMONY IS IRRELEVANT AND LACKS PROBATIVE VALUE

A trial court has broad discretion to determine the relevancy of evidence and to exclude irrelevant information. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008); *United States v. Gupta*, 747 F.3d 111, 137 (2d Cir. 2014). Fed. R. Evid. 402 prohibits the admission of irrelevant evidence in order to "ensure that nothing is received into evidence that is not logically probative of some matter to be proved." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 402.02 (Joseph M. McLaughlin ed., 2d ed. 2008).

Fed. R. Evid. 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is relevant under Fed. R. Evid. 401 if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

11

This two factor test aids a court's determination whether the evidence "possesses sufficient probative value to justify receiving it in evidence." Fed. R. Evid. 401, advisory committee note (1972); *see, e.g.*, *Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015).

Pursuant to Fed. R. Evid. 401(a), relevant evidence must have a purpose in a trial and help prove or disprove a material fact at issue in the litigation. *See*, *e.g.*, *Yeager v. United States*, 557 U.S. 110, 121–22 (2009) (explaining that evidence is not relevant pursuant to Federal Rule of Evidence standards when it fails to make a fact more or less probable); *see also Weinstein's Federal Evidence* § 401.04[2][b] (relevant evidence "advance[s] the inquiry"). Similarly, under Fed. R. Evid. 401(b), a fact must be "of consequence" to be admitted. A court must determine whether evidence is relevant within the context of the legal requirements of the case. Relevancy "exists only as a relation between an item of evidence and a matter properly provable in the case." *See* Fed. R. Evid. 401, advisory committee's note (1972); see also *Weinstein's Federal Evidence* § 401.04[3][b] (explaining that substantive law informs whether a fact is "of consequence").

Here, the Trustee seeks, *inter alia*, to avoid and recover withdrawals made within two-years of the Filing Date from BLMIS to Ascot Partners' BLMIS account in the amount of $280,000,000 as intentional fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1).[23] Such claims are subject to a defense to the extent that the transferee took "for value and in good faith." 11 U.S.C. § 548(c). Here, as Ascot Partners gave "value," the sole factual issue is whether Ascot Partners took the transfers in "good faith." *Picard v. Merkin*, 563 B.R. 737, 748–49 (Bankr. S.D.N.Y. 2017); *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011). In the context of a SIPA case, the District Court has found that "'good faith' means that the transferee neither had actual

---

[23] Third Am. Compl., Aug. 30, 2013, ECF No. 151.

12

knowledge of the [BLMIS] fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." *Good Faith Decision*, 516 B.R. at 23 (S.D.N.Y. 2014); *see also Merkin*, 563 B.R. at 743.

The willful blindness inquiry asks whether an individual took deliberate action to avoid confirming a fact after learning that there was a high probability that such fact was true. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *accord Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 444 B.R. 767, 814–15 (Bankr. W.D. Mich. 2011) ("Including willful blindness as a substitute for actual knowledge, though, adds a temporal aspect to the analysis."); *cf. Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 84 n.14 (2d Cir. 2005) (The doctrine of conscious avoidance "does not tolerate a person shutting his eyes to a fact . . . *after* realizing its high probability.") (emphasis in original).

Here, the question is what did the Defendants learn about BLMIS over the 18 year history of their investments, and what did they do with that information. *Merkin*, 563 B.R. at 749. The SEC's actions or inactions are neither relevant to nor probative of either inquiry. *See In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 146 (S.D.N.Y. 2009) (when the government or it agencies are non-parties, and the focus of the trial is "what [the defendants] knew and should have known" it follows that "[w]hat the . . . government knew and failed to pass on is irrelevant. What the government failed even to learn or fully apprehend is also irrelevant."). Defendants admittedly did not have personalized or particularized knowledge of the facts, scope, evidence and findings of the SEC's 1992 investigation of Avellino & Bienes, contemporaneous with their investments with BLMIS. Defendants also admittedly did not have personal, particularized knowledge of the facts, scope, evidence, and findings of the SEC's inspections or examinations of BLMIS, contemporaneous with their investments with BLMIS. And, Defendants did not and could not

13

have personal knowledge of the facts, scope, evidence and findings contained in the OIG Report, a report that was issued almost eight months after Madoff's confession. Without such knowledge, the SEC's action or inaction neither persuaded nor dissuaded the Defendants' conduct. Accordingly, this Court should exclude testimony and evidence of the SEC's actions or inactions because it is irrelevant and lacks probative value to whether Defendants were willfully blind.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion and enter an order excluding at trial any evidence or testimony on the SEC's actions or inactions concerning BLMIS and Madoff.

Dated:  April 7, 2017
       New York, New York

**BAKER & HOSTETLER LLP**

*/s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

14