**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br>   v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>              Plaintiff,<br>   v.<br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>              Defendants. | Adv. Pro. No. 09-01182 (SMB) |

**TRUSTEE'S MOTION *IN LIMINE* NUMBER 2 AND
<u>MEMORANDUM OF LAW TO LIMIT TESTIMONY OF J. EZRA MERKIN</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................1

    A.     The Supplemental Response ..................................................................................1

    B.     Merkin's Deposition Testimony .............................................................................3

ARGUMENT ...................................................................................................................................4

    I.     MERKIN'S TESTIMONY LACKS FOUNDATION AND PERSONAL KNOWLEDGE ..................................................................................................................4

    II.     MERKIN CANNOT TESTIFY ABOUT THE STATE OF MIND OF THIRD PARTIES BECAUSE IT IS SPECULATIVE AND IMPROPER LAY OPINION TESTIMONY ..............................................................................................8

    III.     MERKIN'S HEARSAY TESTIMONY MUST BE PRECLUDED ......................10

    IV.     THE PRESENT SENSE IMPRESSION HEARSAY EXCEPTION DOES NOT APPLY ...............................................................................................................12

    V.     ANY PROBATIVE VALUE OF MERKIN'S TESTIMONY IS SUBSTANTIALLY OUTWEIGHED BY A DANGER OF WASTING TIME .......................................................................................................................................13

CONCLUSION ..............................................................................................................................14


# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amerisource Corp. v. RxUSA Int'l Inc.*,
  No. 02-CV-2514 (JMA), 2009 WL 235648 (E.D.N.Y. Jan. 30, 2009) .................................12

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  No. 10 CV 2333 (KMW), 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013)..................................10

*Chamilia, LLC v. Pandora Jewelry, LLC*,
  No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) ........................10, 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MD-2543 (JMF), 2016 WL 954593 (S.D.N.Y. Mar. 11, 2016) ..................................13

*Levy v. Bessemer Trust Co., N.A.*,
  No. 97 Civ. 1785 (JFK), 2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000)...................................4

*Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*,
  No. 14-CV-852, 2015 WL 1963170 (M.D. Pa. Apr. 30, 2015)..................................................8

*In re Reserve Fund Sec. & Derivative Litig.*,
  No. 09 Civ. 4346 (PGG), 2012 WL 12354234 (S.D.N.Y. Oct. 3, 2012).................................10

*Richards v. N. Shore Long Island Jewish Health Sys.*,
  581 F. App'x 99 (2d Cir. 2014) ...............................................................................................13

*TiVo Research & Analytics, Inc. v. TNS Media Research LLC*,
  No. 11-CV-4039 (KBF), 2017 WL 213804 (S.D.N.Y. Jan. 18, 2017).....................................8

*United States v. Cardascia*,
  951 F.2d 474 (2d Cir. 1991).....................................................................................................12

*United States v. Cuti*,
  720 F.3d 453 (2d Cir. 2013).......................................................................................................4

*United States v. Dupree*,
  706 F.3d 131 (2d Cir. 2013).....................................................................................................10

*United States v. Garcia*,
  291 F.3d 127 (2d Cir. 2002)...................................................................................................4, 9

*United States v. Harwood*,
  998 F.2d 91 (2d Cir. 1993).......................................................................................................12

*United States v. Kaplan*,
  490 F.3d 110 (2d Cir. 2007)...................................................................................................8, 9

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

15 U.S.C. § 78aaa *et seq*. ...................................................................................................1

**Rules**

Fed. R. Bankr. P. 9017 ..........................................................................................................1

Fed. R. Evid. 403 ................................................................................................................13

Fed. R. Evid. 602 .................................................................................................................4

Fed. R. Evid. 701 .................................................................................................................8

Fed. R. Evid. 801 ...............................................................................................................12

Fed. R. Evid. 801(c) ...........................................................................................................10

Fed. R. Evid. 803(3) ...........................................................................................................12

Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang in Support of the Trustee's Motions *In Limine* Numbers 1 through 4 ("Hoang Decl.") for entry of an order pursuant to the Federal Rules of Evidence, made applicable here by Federal Rule of Bankruptcy Procedure 9017, to limit the testimony of J. Ezra Merkin ("Merkin") on due diligence conducted by or opinions of third parties concerning Madoff or BLMIS.

## PRELIMINARY STATEMENT

The trial on the Trustee's claims against Ascot Partners L.P. ("Ascot Partners"), Ascot Fund Ltd. ("Ascot Fund"), Gabriel Capital Corporation ("GCC"), and J. Ezra Merkin ("Merkin") (collectively, the "Defendants") will focus on whether Defendants were willfully blind to facts suggesting a high probability of fraud at BLMIS. The "Supplemental Response" (as defined below) and Merkin's deposition testimony make plain Defendants' intentions to rely upon Merkin's testimony concerning the due diligence conducted by and opinions of others about Madoff and BLMIS as evidence that they were not willfully blind. Yet, Merkin's testimony described herein must be excluded from trial because it lacks foundation, speculates about state of mind of third parties, is impermissible hearsay, and is otherwise not helpful to the trier of fact. For these reasons, the Trustee respectfully requests that the Court enter an order limiting the testimony of Merkin accordingly.

## BACKGROUND

### A. The Supplemental Response

On August 30, 2013, Merkin and GCC served the Trustee with Defendants J. Ezra Merkin and Gabriel Capital Corporation's Supplemental Responses to Plaintiff's Second Set of

Interrogatories and Requests for Admissions in Accordance with Decision #3 (the "Supplemental Response").[1] In connection with Merkin's purported initial due diligence, the Supplemental Response provides:

> Prior to investing with Mr. Madoff, Mr. Merkin had conversations with a number of sophisticated investors who were clients of Mr. Madoff and had accounts with his firm, [BLMIS], concerning Mr. Madoff's reputation, trading strategy and risks. Those investors included Leon Meyers . . . , Sandra Manske . . . , David Gottesman . . ., Gedale Horowitz . . . , and Daniel Hoffert . . . , all of whom spoke very highly of Mr. Madoff and his investment strategies. Mr. Merkin also had conversations with customers of BLMIS's market-making operations. And Mr. Merkin discussed Mr. Madoff with his father, Hermann Merkin (a successful businessman and investor), who told his son that "I know Bernie, and he's okay," which Ezra Merkin understood to be high praise coming from his father.[2]

In addition, Defendants aver that prior to investing with BLMIS, Merkin met with Madoff in BLMIS's offices, and discussed Madoff's trading strategies as well as Madoff's market-making activities. Madoff also explained that BLMIS operated a significant wholesale business, in which its customers included Charles Schwab and Fidelity. They also discussed Madoff's and his brother's involvement in industry affairs. As Merkin understood, Madoff at that time had a sterling reputation; was heavily involved in industry affairs; and his firm was a very dominant market maker with an extraordinary share of the trading in certain NYSE stocks, particularly heavily traded, large cap stock. Indeed, Madoff subsequently became the chairman of NASDAQ.[3]

The Supplemental Response also discussed Merkin's purported ongoing due diligence activities:

---

[1] Hoang Decl., Ex. 1 ("Defendants' Suppl. Responses").

[2] *Id.* at 2–3.

[3] *Id.*

2

> As an additional part of his due diligence and monitoring of the Funds' investments, Mr. Merkin met with Mr. Madoff ten to fifteen times a year by phone or in person to discuss trading strategies. These conversations ranged from general discussions of Mr. Madoff's trading strategies, to potential changes in or refinements of the trading strategies, to discussions about the market, then-current market trends, and other market participants. From time to time, Mr. Merkin arranged and participated in meetings between Mr. Madoff and certain investors in the Funds, including Gedale Horowitz, Ludwig Bravmann, Alec Hackel, Christof Reichmuth, Patrick Erne, Michael Matlin, and Roman Igilnikov [sic] and others from Union Bancaire Privee. Mr. Merkin also discussed Mr. Madoff and his investment strategy with many other customers of Mr. Madoff and BLMIS, including Ludwig Jesselson, David Gottesman, and Leon Meyers, as well as with other sophisticated investors including people who served on the Yeshiva University Investment Committee. Mr. Merkin also discussed Mr. Madoff, his trading strategy and BLMIS with representatives of BNP Paribas as part of their due diligence in connection with a proposal to create a levered version of Ascot.[4]

### B. Merkin's Deposition Testimony

Merkin was deposed on February 24 and 25, 2015, and was asked to support the statements contained in the Supplemental Response. Three primary themes emerged: Merkin could not recall basic details related to statements made in the Supplemental Response and other matters; Merkin based his beliefs on hearsay or lacked personal knowledge to make certain assertions; and Merkin's testimony was so lacking in specificity that it would provide no obvious value to the trier of fact. For all of the reasons that follow, Merkin's testimony as to the due diligence conducted by or opinions of third parties concerning Madoff or BLMIS should be excluded from trial.

---

[4] *Id.* at 5.

3

**ARGUMENT**

**I.    MERKIN'S TESTIMONY LACKS FOUNDATION AND PERSONAL KNOWLEDGE**

"[T]he proponent of *any* evidence, not just lay opinion testimony, must establish a proper foundation for the evidence before a court may admit it." *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (emphasis in original) (citations omitted). Indeed, a witness may not testify to a matter absent sufficient evidence to support a finding that he or she has personal knowledge of the matter. *See* Fed. R. Evid. 602; *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013). Deposition testimony establishing lack of personal knowledge is sufficient to exclude such testimony from admission at trial. *See Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ. 1785 (JFK), 2000 WL 1300402, at *1 (S.D.N.Y. Sept. 14, 2000).

As part of Merkin's purported initial due diligence, he claims he met with other BLMIS investors who "spoke very highly of Madoff."[5] But Merkin could not expound upon the ostensible high praise, recall the timing or nature of the discussions, nor confirm whether certain individuals held a BLMIS investment at the relevant time. As the excerpted testimony below demonstrates, Merkin's testimony is inadmissible for want of foundation and personal knowledge:

- Mr. Leon Meyers: Merkin did not "remember the nature of those conversations."[6]
- Ms. Sandra Manzke: Merkin could not estimate the number of times he spoke with Ms. Manzke prior to investing in BLMIS,[7] the timing of their conversations,[8] or "remember the specifics of the conversation" related to her due diligence on BLMIS.[9]

---

[5] *Id.* at 2.

[6] Hoang Decl., Ex. 3 (Deposition of J. Ezra Merkin dated February 25, 2015 ("Merkin Feb. 25 Dep.")) at 374:13–16 ("Q: Did Mr. Meyers tell you that he conducted due diligence on BLIMS? A: I don't remember the nature of those conversations."); *see also id.* at 376:25–377:6 ("A: You're asking me specifically whether Mr. Meyers and I in a conversation concluded that this is how he did it? Q: Yes. A: I don't remember any specifics of that kind of a - - I just don't remember any specific conversation on that.").

4

- Mr. David Gottesman: Merkin could not verify whether, prior to 1990, he understood the nature of Mr. Gottesman's investment in BLMIS,[10] or whether Mr. Gottesman said that he conducted due diligence on BLMIS.[11]

- Mr. Gedale Horowitz: Merkin did not know whether Mr. Horowitz's opinion of Madoff derived from personal experience,[12] whether Mr. Horowitz had a personal account with BLMIS,[13] or whether Mr. Horowitz conducted any due diligence on BLMIS.[14]

- Mr. Daniel Hoffert: Merkin confirmed one conversation at an unidentified point in time when he discussed Madoff with Mr. Hoffert.[15] But the testimony suggests he and Mr. Hoffert discussed arbitrage, not Mr. Hoffert's opinions of Madoff.[16] Merkin could not remember whether Mr. Hoffert confirmed that he conducted due diligence on BLMIS.[17]

- BLMIS Market Making Customers:[18] When asked to clarify who the BLMIS customers were, Merkin responded "Well, Fidelity for sure. And I don't remember at

---

[7] *Id.* at 381:23–382:2 ("Q: Do you have an estimate as to how many times you spoke to her prior to investing with BLMIS? A: Nothing terribly reliable, the estimate.").

[8] *Id.* at 381:10–15 ("Q: When do you recall having discussions with Ms. Manzke about BLMIS? A: The specific dates? I don't remember. Early that period of time, perhaps very late '80s, perhaps not quite so late '80s, perhaps '90, around that period of time.").

[9] *Id.* at 382:3–9 ("Q: Did Ms. Manzke tell you that she had conducted due diligence on BLMIS? A: I don't remember the specifics of the conversation, but I remember forming an impression that she had been to the office, that she knew Bernie, that she'd had conversations about the strategies.").

[10] *Id.* at 385:7–11 ("Q: Were you aware at that time, prior to 1990, whether Mr. Gottesman had a personal investment with BLMIS or whether it was in a pooled vehicle or investor money? A: I don't remember.").

[11] *Id.* at 385:12–15 ("Q: And did Mr. Gottesman tell you that he conducted due diligence on BLMIS? A: I don't remember his saying that in those words.").

[12] *Id.* at 390:2–9 ("Q: [T]he conversation that you had with Mr. Horowitz regarding Mr. Madoff's reputation, do you know whether that was based on Mr. Horowitz's personal knowledge or whether he also learned that through - - or he was relaying to you Mr. Madoff's reputation from other people? A: The short answer is I don't know.").

[13] *Id.* at 390:10–17 ("Q: Do you know whether or not Mr. Horowitz had a personal account with BLMIS? A: I don't know whether he had a personal account at that time. Q: Do you know if he ever had a personal account? A: . . . I don't know for sure.").

[14] *Id.* at 391:9–11 ("Q: Did Mr. Horowitz ever tell you that he conducted due diligence on BLMIS? A: I don't remember.").

[15] *Id.* at 396:20–397:5 ("Q: [D]o you recall when you first met Mr. Hoffert to discuss BLMIS? A: I don't remember that, when we met to discuss it.").

[16] *Id.* at 397:5–20.

[17] *Id.* at 401:8–10 ("Q: Did Mr. Hoffert tell you that he conducted due diligence on BLMIS? A: I don't remember the conversation.").

[18] Hoang Decl., Ex. 1 (Defendants' Suppl. Responses) at 3 ("Mr. Merkin also had conversations with customers of BLMIS' market making operations.").

5

the moment who else it might have been. There might have been somebody at Charles Schwab. I just don't remember."[19] Nor could he recall the person with whom he purportedly spoke at Fidelity.[20]

- Mr. Henry Kaufman:[21] Mr. Kaufman is another individual with whom Merkin purportedly discussed Madoff and BLMIS.[22] Merkin was unable to recall the timing of those conversations, nor whether their conversations about Madoff were about due diligence on BLMIS or Madoff.[23]

Relatedly, Merkin has asserted that he "arranged and participated in meetings between Mr. Madoff and [various investors]," and "discussed Mr. Madoff and his investment strategy with many other customers of Mr. Madoff and BLMIS."[24] But Merkin was not able to recall crucial facts to establish that he did arrange or participate in such meetings, or discuss Madoff with those BLMIS customers. This testimony, too, should be excluded from trial for lack of foundation and personal knowledge:

- Mr. Gedale Horowitz: Merkin could not remember any detail about those meetings.[25]

- Mr. Ludwig Bravmann: Merkin could not recall the circumstances related to a meeting he set up for Mr. Bravmann and Madoff, nor whether he participated in that meeting.[26]

---

[19] *See* Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 402:3–13.

[20] *Id.* at 402:14–16.

[21] Mr. Kaufman was not referenced in the Defendants' Supplemental Responses.

[22] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 403:13–15 ("Q: Did you ever speak to Mr. Kaufman regarding BLMIS? A: Yes.").

[23] *Id.* at 404:22–405:2 ("Q: And did you have any conversations with Mr. Kaufman regarding due diligence on BLMIS? A: I had conversations with him about Mr. Madoff. I can't pinpoint them and say, this is what the due diligence component of it was.").

[24] Hoang Decl., Ex. 1 (Defendants' Suppl. Responses) at 5.

[25] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 394:4–6 ("Q: Did you arrange the meeting between Mr. Horowitz and Mr. Madoff? A: I think so."); *id.* at 394:14–19 ("Q: [D]id you take any notes from this meeting? A: Again, I'm not sure I was at the meeting or this is my memory of what they told me about the meeting. They meaning mostly Gedale.").

[26] *Id*. at 512:5–16 ("Q: [W]hat were the circumstances related to the meeting that you set up between Mr. Bravmann and Mr. Madoff? A: Don't remember. Q: Do you recall what time frame this was in? A: No. Q: Did you attend that meeting? A: I don't remember. Q: Did you have - - did you take any notes of that meeting? A: I don't remember.").

6

- Mr. Alec Hackel: Merkin confirmed only that he "set up meetings for Mr. Hackel."[27]

- Mr. Christof Reichmuth: Merkin could not recall the time period within which he arranged a meeting,[28] whether he attended the meeting in question,[29] or the approximate number of meetings he "set up" for Mr. Reichmuth and Madoff.[30]

- Mr. Roman Igolnikov: When asked whether Merkin recalled "arranging a meeting between Mr. Igolnikov and Mr. Madoff in early 2004," Merkin could not recall whether he, in fact, did so,[31] nor whether he attended that meeting.[32]

- Mr. Ludwig Jesselson: When asked whether he discussed Mr. Jesselson's investments with BLMIS, Merkin offered little beyond the fact of the conversation when asked at deposition.[33] And Merkin could not confirm whether Mr. Jesselson conducted any due diligence on Madoff.[34]

- Mr. Patrick Erne and Mr. Michael Matlin: Merkin testified that Mr. Erne attended a meeting with Merkin, Madoff, and Michael Matlin in October 2007.[35] When asked to describe the substance of that meeting, Merkin responded that they discussed the strategy[36] and "[l]ots of questions were asked, questions were answered."[37]

Merkin also offered testimony to explain the statement in the Supplemental Response regarding his purported meetings with Madoff. But, as with the testimony outlined above,

---

[27] *Id.* at 514:6–12 ("A: I set up meetings for Mr. Hackel….").

[28] *Id.* at 514:14–515:3 ("Q: Do you recall when you set up the meeting for Mr. Reichmuth? . . . A: So early in the period we're talking about, but I don't remember when. Q: Does the late 1990s sound correct to you? A: That's early in the period we're talking about, so I can't remember exactly when. I would have conjectured 2000. . ..").

[29] *Id.* at 515:4–9 ("Q: Do you recall attending the meeting with Mr. Reichmuth and Mr. Madoff? A: I recall attending meetings at Mr. Madoff's office with various members of the Reichmuth staff. I'm not sure I remember this one specifically.").

[30] *Id.* at 516:3–8 ("Q: Do you recall how many meetings you set up between Mr. Reichmuth and Mr. Madoff? Mr. Christof Reichmuth. A: No.").

[31] *Id.* at 526:24–527:2 ("Q: Do you recall setting - - arranging a meeting between Mr. Igolnikov and Mr. Madoff in early 2004? A: Not specifically, no.").

[32] *Id.* at 530:8–11 ("Q: [D]id you attend that meeting between Mr. Igolnikov and Mr. Madoff? A: I don't remember.").

[33] *Id.* at 411:18–25 ("A: I think I said [Mr. Jesselson] talked, when we discussed Mr. Madoff, he talked as an investor of Mr. Madoff would talk. So it was clear to me that he was an investor.").

[34] *Id.* at 412:1–4 ("Q: And did Mr. Jesselson tell you that he conducted due diligence on BLIMS? A: In those words, in those many words, I don't remember.").

[35] *Id.* at 516:16–517:15.

[36] *Id.* at 520:3–21.

[37] *Id.* at 517:23–518:4.

7

Merkin could not "remember the circumstances of the first meeting" nor "remember when the first meeting was."[38]

As is evidenced by his deposition testimony, Merkin cannot establish the proper foundation as to the existence or substance of conversations he had with the individuals that he identified. *Cf. TiVo Research & Analytics, Inc. v. TNS Media Research LLC*, No. 11-CV-4039 (KBF), 2017 WL 213804, at *7–8 (S.D.N.Y. Jan. 18, 2017) (failure to recall details of conversations constitutes lack of personal knowledge). Merkin admittedly could not verify the underlying facts to support the Supplemental Response. Thus, he should not be permitted to testify on purported meetings he arranged or participated in given his inability to establish proper foundation for such testimony.

## II. MERKIN CANNOT TESTIFY ABOUT THE STATE OF MIND OF THIRD PARTIES BECAUSE IT IS SPECULATIVE AND IMPROPER LAY OPINION TESTIMONY

It is well-settled that a witness may not testify to the personal knowledge of third parties without corroborating evidence. *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). "Witness testimony is not admissible if it is based on speculation of what a third party believed or knew." *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, No. 14-CV-852, 2015 WL 1963170, at *5 (M.D. Pa. Apr. 30, 2015) (citation omitted).

Similar principles apply even if Merkin's testimony were construed as lay opinion. *See* Fed. R. Evid. 701 (requiring lay opinion testimony to, *inter alia*, be rationally based on the witness's perception, helpful to determining a fact in issue); *see also Kaplan*, 490 F.3d at 118 ("[T]he rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'" (citation omitted)). Where the foundational basis for lay opinion testimony is

---

[38] Hoang Decl., Ex 2 (Deposition of J. Ezra Merkin dated February 24, 2015 ("Merkin Feb. 24 Dep.")) at 151:4–10.

8

"extremely vague," a court may exclude that testimony. *Id.* at 119. Although "[t]here is no theoretical prohibition against allowing lay witnesses to give their opinion as to the mental states of others," this is only true "provided that the proponent of the testimony first establishes a proper foundation." *Garcia*, 291 F.3d at 141 (internal citation omitted).

Merkin should not be able to testify as to the state of mind of the following individuals, because such testimony is vague, speculative, and improper lay opinion testimony:

- <u>Mr. David Gottesman</u>: "[Mr. Gottesman] [t]hought [Madoff] was an innovative person, that some of the things [Madoff] had done . . . were all things that Mr. Gottesman knew about, was aware of."[39] Merkin also remarked that "In his case, one of the impressions I do remember, he had a very high opinion of Bernie Madoff, the person."[40]

- <u>Mr. Hermann Merkin</u>: Merkin asserted that Hermann Merkin, his father, thought highly of Madoff. However, Merkin admitted "that is certainly the extent that I remember,"[41] and was unable to recall whether Hermann Merkin had even been invested with Madoff at the time the statement was made,[42] stating "I don't remember specifics about what was bought or sold or owned for that investment process."[43]

- <u>Mr. Gedale Horowitz</u>: Merkin asserts that Mr. Horowitz believed that Madoff was "a legend on Wall Street…but possibly even more so, even more than a legend in Congress."[44] Merkin did not know whether Mr. Horowitz's opinion of Madoff was based on his own personal knowledge, nor whether Mr. Horowitz maintained a personal account with BLMIS.[45]

Much like the testimony discussed in Section A above, Merkin's testimony on what these individuals believed is improper speculation and lay opinion. He has not and cannot lay a proper

---

[39] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 385:12–25.

[40] *Id.* at 385:17–19.

[41] Hoang Decl., Ex. 2 (Merkin Feb. 24 Dep.) at 150:8–12.

[42] *Id.* at 149:1–14.

[43] *Id.* at 149:22-150:16.

[44] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 388:20–389:14.

[45] *Id.* at 389:15–390:17 ("Q: Did you know whether or not Mr. Horowitz had a—any kind of a personal relationship with Mr. Madoff at that point in time? A: I don't really remember today whether that was the case or not. I have very specific memories of their knowing each other subsequent to that time. . . . Q: Do you know whether or not Mr. Horowitz had a personal account with BLMIS? A: I don't know whether he had a personal account at that time. Q: Do you know if he ever had a personal account? A: Oh, I thought you asked me that. I don't know for sure.").

9

foundation for this testimony and thus, it—and any similar testimony Merkin offers at trial beyond these individuals—should be excluded from trial.

### III.   MERKIN'S HEARSAY TESTIMONY MUST BE PRECLUDED

In addition to the foundational deficiencies, Merkin cannot testify about what others said about Madoff or their purported reasons for investing or staying invested in BLMIS.  *See Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10 CV 2333 (KMW), 2013 WL 822173, at *8–9 (S.D.N.Y. Mar. 6, 2013) (striking paragraphs from affiants' declarations that referenced statements made by others).  Merkin's testimony constitutes inadmissible hearsay.  Hearsay is an out of court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c); *see United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013).  "A witness is generally not competent to testify about the unspoken motives of another person; to the extent that someone has expressed the reasons for his or her actions, offering those reasons through another person often presents hearsay issues."  *In re Reserve Fund Sec. & Derivative Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354234, at *3 (S.D.N.Y. Oct. 3, 2012) citing *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *17 n.14 (S.D.N.Y. Sept. 24, 2007) (testimony about another's motivation for not making a purchase is hearsay)).

Merkin offered testimony regarding conversations he had with various BLMIS investors and their opinions of Madoff in order to demonstrate the declarants' motives for investing in Madoff:

- Mr. Leon Meyers:  Merkin confirmed that he had conversations post-1990 with Mr. Meyers "regarding the performance of [Merkin's] respective BLMIS accounts,"[46] and that they discussed "the investment world going back, let's just say, to '85, '86, '87 . . . [a]nd Madoff was a theme of our conversations, surely not every one, but was

---

[46] *Id.* at 375:15–19.

10

a constant theme of our conversations. Performance would certainly have been part of it."[47]

- Ms. Sandra Manzke: Merkin testified that he didn't "remember the specifics of the conversation, but I remember forming an impression that she had been to the office, that she knew Bernie, that she'd had conversations about the strategies."[48]

- Mr. David Gottesman: Merkin testified that "I know Mr. Gottesman and he doesn't - - he's a very careful and methodical investor. In his case, one of the impressions I do remember, he had a very high opinion of Bernie Madoff, the person. Thought he was an innovative person, that some of the things he had done in terms of his challenge of on-board versus off-board trading, his willingness to take on the … New York Stock Exchange were all things that Mr. Gottesman knew about, was aware of. It was not quite at this time, but Mr. Gottesman's decision to have Mr. Madoff join the [Yeshiva] university board and become the chairman of their business school board, become at some point the treasurer of the university, a member of the executive committee, were later events, some of them not that much later because that takes place over a series of years, that I think reflected those views."[49]

- Mr. Gedale Horowitz: Similarly, Merkin recalled a conversation with Mr. Horowitz, "What I remember from a conversation with him, very specifically at that time, was the extent to which the regulatory world and the congressional world held Mr. Madoff in such high esteem. That would have been something that would have been important to me and he would have been a very critical figure in knowing . . . . And he kept saying to me - - he was the person who said to me at that time, Bernie Madoff, a legend on Wall Street. He said, but you - - but possibly even more so, even more than a legend in Congress. Given Bernie's testifying down there and given the extent to which they had looked to him for certain issues in the securities industry."[50] Merkin also testified that Mr. Horowitz's "views of Mr. Madoff mattered much" to Yeshiva University's investment in Ascot Partners.[51]

- Mr. Hermann Merkin: Merkin testified that his father "was not a person of many words and my father was very sparing in praise and had a very constructive opinion of Mr. Madoff and his investing abilities."[52] Merkin went on to explain that Hermann "would say I knew Bernie, I know Bernie and Bernie's okay, or I know Bernie and

---

[47] *Id.* at 375:22–376:10.

[48] *Id.* at 382:3–9.

[49] *Id.* at 385:15–386:9.

[50] *Id.* at 388:20–389:14.

[51] *Id.* at 392:5–13.

[52] Hoang Decl., Ex. 2 (Merkin Feb. 24 Dep.) at 149:18–21.

11

he's okay.  That's what I mean.  You consider that is a conclusion, perhaps, but that's what he said."[53]

- Mr. Morris Smith:[54]  Merkin testified that "Madoff came up and Morris was a fan. Morris was a fan of Ascot generally."[55]

The foregoing testimony constitutes inadmissible hearsay about another's motivations that should be excluded under Fed. R. Evid. 801.  *See Chamilia, LLC*, 2007 WL 2781246, at *17 n.14 (testimony about another's motivation for not making a purchase is hearsay).

## IV. THE PRESENT SENSE IMPRESSION TO HEARSAY EXCEPTION DOES NOT APPLY

Merkin's hearsay testimony is not saved by the present sense impression exception to the hearsay rule.  "First, to be admissible under [Fed. R. Evid. 803(3)'s] exception, the hearsay declarant's state of mind must be relevant to the case." *See Amerisource Corp. v. RxUSA Int'l Inc.*, No. 02-CV-2514 (JMA), 2009 WL 235648, at *2 (E.D.N.Y. Jan. 30, 2009) (citation omitted)).   The state of mind of the hearsay declarants—other investors or others who knew Madoff—are not relevant to whether Defendants were willfully blind.  That is, what the hearsay declarants said or did or knew does not tend to prove or disprove Defendants' willful blindness.

Moreover, under Fed. R. Evid. 803(3), hearsay is only admissible if it is "a specialized application of the present sense impression and excited utterance exceptions." *See United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991).  To fall within this exception, the statements must be contemporaneous, such that the declarant does not have time to reflect and fabricate the statement at issue.  *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993).  There is no suggestion here that any of the hearsay statements concerning other BLMIS investors' opinions

---

[53] *Id.* at 150:1–7.

[54] Mr. Smith was identified as a "sophisticated investor" not specifically listed in the Supplemental Response, but who was covered by that phrase contained therein.  *See* Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 425:3–11.

[55] Hoang Decl., Ex. 3 (Merkin Feb. 25 Dep.) at 426:14–15.

12

of Madoff were contemporaneous. In fact, it is clear that the hearsay statements are Merkin's present recollection—what he can and cannot recall *now* of his purported meetings and discussions with third parties. Thus, such hearsay statements lack the required contemporaneous element and thus, should be excluded at trial.

## V. ANY PROBATIVE VALUE OF MERKIN'S TESTIMONY IS SUBSTANTIALLY OUTWEIGHED BY A DANGER OF WASTING TIME

This Court further should exclude the testimony addressed herein on grounds that its probative value would be substantially outweighed by the danger of wasting time. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time"). Merkin's willful blindness will be a key focus of the trial. In support of their position, Defendants assert that Merkin's purported due diligence activities—namely his discussions and meetings with third parties—demonstrate that Merkin was not willfully blind. The Trustee submits that none of the testimony described above is admissible. Merkin's recollection of the conversations and meetings were so brief, general, and vague that his opaque testimony does not tend to prove his lack of willful blindness, even by the most relaxed standard for establishing relevance. *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 954593, at *2 (S.D.N.Y. Mar. 11, 2016) (excluding e-mails under Fed. R. Evid. 403 for waste of time because the "brief communication sheds little or no light on the knowledge, conduct, or state of mind of [defendant] or its agents" and other emails were "vague and general"); *see also Richards v. N. Shore Long Island Jewish Health Sys.*, 581 F. App'x 99, 100 (2d Cir. 2014) (affirming exclusion of testimony where trial court found it was "marginally relevant"). Thus, it would be a waste of time for this Court to hear testimony that is not relevant to the claims and defenses herein, but also testimony that is speculation and conjecture, at best.

13

**CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests the Court limit the testimony of J. Ezra Merkin and exclude testimony on the due diligence conducted by or opinions of third parties concerning Madoff or BLMIS.[56]

Dated: April 7, 2017
New York, New York

**BAKER & HOSTETLER LLP**

*/s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

---

[56] The Trustee notes that Mr. Patrick Erne, Mr. Leon Meyers, Mr. Gedale Horowitz, and Mr. Roman Igolnikov are identified on Defendants' witness list, all of whom might offer testimony on the topics discussed in this Motion. Although those witnesses may testify as to matters within their own personal knowledge, including the topics addressed in this Motion, the Trustee reserves his right to object to the admissibility of their testimony on evidentiary grounds.