**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01182 (SMB) |
| Plaintiff, | |
| v. | |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**TRUSTEE'S MOTION *IN LIMINE* NUMBER 3 AND MEMORANDUM OF LAW TO**
**EXCLUDE THE OPINIONS AND TESTIMONY OF JEFFREY M. WEINGARTEN**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................3

LEGAL STANDARD.................................................................................................................4

ARGUMENT .............................................................................................................................6

      I.     WEINGARTEN'S OPINIONS AND TESTIMONY SHOULD BE
            EXCLUDED BECAUSE THEY ARE UNRELIABLE ........................................6

            A.     Weingarten Has Applied No Methodology ..................................................6

            B.     Weingarten Used Insufficient Data and Performed No Analysis ...............9

                 1.     Insufficient Data and Facts ............................................................10

                 2.     Lack of Analysis ............................................................................13

      II.    WEINGARTEN'S "OPINIONS" REGARDING A PARTY OR
            WITNESS'S STATE OF MIND, INTENT OR MOTIVATION ARE
            INADMISSIBLE ....................................................................................17

      III.   WEINGARTEN'S FACTUAL NARRATIVES ARE OUTSIDE THE
            BOUNDS OF EXPERT TESTIMONY AND ARE NOT HELPFUL
            TO THE TRIER OF FACT........................................................................20

CONCLUSION.........................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)...........................................................................10

*Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc.*,
No. 11 Civ. 4948, 2012 WL 5425033 (S.D.N.Y. Nov. 7, 2012) ..............................4

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
No. 09 Civ. 686 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011)....................17

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ................5

*Boykin v. W. Exp., Inc.*,
No. 12-cv-7428 (NSR)(JCM), 2015 WL 539423 (S.D.N.Y. Feb. 6, 2015) ............13

*Cerbelli v. City of N.Y.*,
No. 99-CV-6846 (ARR)(RML), 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006) ....................8

*CFTC v. Wilson*,
No. 13 Civ. 7884 (AT), 2016 WL 7229056 (S.D.N.Y. Sept. 30, 2016)....................8

*Chin v. Port Auth. of N.Y. & N.J.*,
685 F.3d 135 (2d Cir. 2012)...........................................................................21

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ...................................................................................... *passim*

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005)...........................................................................20

*EEOC v. Bloomberg L.P.*,
No. 07 Civ. 8383 (LAP), 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) ...............13

*Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*,
314 F.3d 48 (2d Cir. 2002)............................................................................20

*Fate v. Vill. of Spring Valley*,
No. 11 Civ. 6838 (JPO), 2013 WL 2649548 (S.D.N.Y. June 13, 2013) ...........9, 16

*Feinberg v. Katz*,
No. 01 Civ. 2739 (CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ............6, 7

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009)...............................................................17

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..........................................................................................................5, 10

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)...........................................................................20, 21

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    103 F. Supp. 2d 268 (S.D.N.Y. 2000).....................................................................................18

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...................................................................................................................4

*LinkCo, Inc. v. Fujitsu Ltd.*,
    No. 00 Civ. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ................................21

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)........................5, 9, 16

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    No. 11-cv-681 (KBF), 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)...............................8, 16

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    No. 14 Civ. 4869 (PAE), 2016 WL 4784004 (S.D.N.Y. Sept. 13, 2016).................................9

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)....................................................................................................20

*Maurizio v. Goldsmith*,
    No. 96 CIV. 4332 (RPP), 2002 WL 535146 (S.D.N.Y. Apr. 9, 2002) .....................................9

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    No. M21-88, 2008 WL 2324112 (S.D.N.Y. June 5, 2008)......................................................8

*Nimely v. City of N.Y.*,
    414 F.3d 381 (2d Cir.2005)....................................................................................................10

*Pasternak v. Dow Kim*,
    961 F. Supp. 2d 593 (S.D.N.Y. 2013)......................................................................................8

*Price v. Fox Entm't Grp., Inc.*,
    499 F. Supp. 2d 382 (S.D.N.Y. 2007).....................................................................................21

*R.F.M.A.S., Inc. v. Mimi SO*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010).....................................................................................18

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................................. *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Ruggiero v. Warner-Lambert Co.,
    424 F.3d 249 (2d Cir. 2005) ..................................................................................5

SEC v. Tourre,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................4

Sharkey v. JPMorgan Chase & Co.,
    978 F. Supp. 2d 250 (S.D.N.Y. 2013) .................................................................21

Thomas v. City of Chattanooga,
    398 F.3d 426 (6th Cir. 2005) .................................................................................8

United States v. Bilzerian,
    926 F.2d 1285 (2d Cir. 1991) ................................................................................5

United States v. Duncan,
    42 F.3d 97 (2d Cir. 1994) ......................................................................................6

United States v. Tucker,
    345 F.3d 320 (5th Cir. 2003) ...............................................................................17

United States v. Williams,
    506 F.3d 151 (2d Cir. 2007) ..................................................................................4

Weisfelner v. Blavatnick (In re Lyondell Chem. Co.),
    558 B.R. 661 (Bankr. S.D.N.Y. 2016) ................................................................17

Zenith Elecs. Corp. v. WH-TV Broad. Corp.,
    395 F.3d 416 (7th Cir. 2005) .................................................................................9

**Statutes**

15 U.S.C. § 78aaa et seq. ...........................................................................................1

**Rules**

Fed. R. Bankr. P. 9017 ................................................................................................1

Fed. R. Evid. 401 ................................................................................................20, 22

Fed. R. Evid. 402 ................................................................................................20, 22

Fed. R. Evid. 702 .............................................................................................. passim

DRAFT 4/7/2017
ATTY WORK PRODUCT

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang in

Support of Trustee's Motions *In Limine* Numbers 1 through 4 ("Hoang Decl.") for entry of an

order pursuant to the Federal Rules of Evidence, made applicable here by Federal Rule of

Bankruptcy Procedure 9017, to exclude the expert opinions and testimony of Jeffrey M.

Weingarten ("Weingarten").

## PRELIMINARY STATEMENT

Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC," together

with Merkin, Ascot Partners, L.P., and Ascot Fund Ltd., the "Defendants") offer Weingarten as a

financial industry expert to opine on the adequacy of due diligence purportedly conducted by

Defendants on BLMIS and Madoff during the course of the investments of the Merkin Funds[1]

with BLMIS.  Weingarten opines that Defendants—through Merkin—performed due diligence

that "met or exceeded industry standards."  Weingarten's opinions, however, do not meet the

requirements for admissibility of expert testimony.

Federal Rule of Evidence 702, as explicated by the *Daubert* line of cases, requires that

admissible expert testimony be based upon sufficient facts or data using reliable principles and

methods applied to the facts of the case.  Weingarten's conclusions are not based on any

methodology or analysis, nor does he rely upon sufficient facts or data to reach those

conclusions.  Of the almost 60,000 transactions purportedly executed over the 18-year history of

the Merkin Funds' investments with BLMIS, Weingarten admits that he "looked at" a total of

---

[1] Gabriel Capital, L.P., Ariel Fund Ltd., Ascot Partners, L.P., and Ascot Fund Limited (collectively, the "Merkin Funds").

three transactions that he could not identify.  He then applied his indeterminate and generalized observations of the market to these trades, and concluded that Madoff's strategy, execution, and consistent returns were expected or known and, therefore, Merkin's due diligence met or exceeded the industry customs and practices.  Weingarten candidly admitted that he conducted no analysis on those transactions or *any* purported transactions in the Merkin Funds' BLMIS accounts, conducted no analysis of Madoff's purported strategy and the execution of that strategy, and conducted no analysis of how the consistent returns in the Merkin Funds' BLMIS accounts were achieved.  Weingarten's unsupported conclusions are exactly the type of unreliable and *ipse dixit* testimony that is excluded under the Federal Rules of Evidence and *Daubert*.

Similarly, Weingarten's opinions and testimony are further inadmissible because they improperly offer speculation as to Merkin's state of mind, are a factual narrative of the record evidence, and are irrelevant supposition of what unrelated third parties knew or believed about BLMIS and Madoff.  Beyond the conjecture and conclusory nature of Weingarten's improper narrative, what Merkin believed and what conclusions he drew from those beliefs are issues committed exclusively to this Court as the finder of fact, not an expert.  Moreover, what third parties knew or believed is irrelevant to the subjective inquiry here: what information the Defendants had and what the Defendants did with that information.  Where the expert's opinion and testimony either usurps the role of the factfinder or would not be helpful to the trier of fact, as it is here, such opinions and testimony should be excluded at trial.

For these reasons, the Trustee respectfully requests that the Court enter an order excluding Weingarten's opinions and testimony at trial.

## BACKGROUND

Defendants claim that they conducted extensive due diligence on BLMIS that comported with industry standards at the time.[2] Put forth by Defendants to support this notion, Weingarten submitted an Initial Report on March 19, 2015.[3] Weingarten submitted a Rebuttal Report to respond to the opinions offered by the Trustee's due diligence expert, Dr. Steve Pomerantz, on May 14, 2015.[4] Weingarten was deposed on July 15, 2015.[5]

Weingarten opines that conducting due diligence on an investment manager involves a review of five "characteristics" of due diligence (hereinafter, the "5 Ps"). Specifically, he describes the 5 Ps as follows:

> **Philosophy**, what is the manager trying to achieve in his strategy; **Process**, how does the manager go about the strategy; **Procedures**, how is the process executed; **People**, who is the principal for executing the investment strategy and what is his background and reputation; and finally **Performance**, what have been the investment returns and are those returns consistent with the strategy.[6]

Without citation to either the facts of the case or industry materials, Weingarten concludes that "[t]aken on the whole, the Merkin Defendants, in my opinion, pursued what would certainly be described as adequate due diligence on Madoff, his investment strategy and his operations."[7]

---

[2] *See, e.g.*, *Picard v. Merkin*, Adv. No. 09-01182 (SMB) No. 09-01182 (SMB) (Bankr. S.D.N.Y. Oct. 8, 2015) Memorandum of Law in Support of the Motion for Summary Judgment of Defendants Ascot Partners, L.P., and Ascot Fund Ltd. ("Ascot's Mot. Summ. J.") at 14, ECF No. 284; Defendants J. Ezra Merkin and Gabriel Capital Corporation's Memorandum Of Law in Support of their Motion for Summary Judgment ("Merkin's Mot. Summ. J.") at 3, ECF No. 285.

[3] Hoang Decl., Ex. 5 (Expert Report of Jeffrey M. Weingarten dated March 19, 2015, § VII at 6 ("Initial Rpt.")).

[4] Hoang Decl., Ex. 6 (Rebuttal Expert Report of Jeffrey M. Weingarten dated May 14, 2015 ("Rebuttal Rpt." and, together with the Initial Report, the "Reports")).

[5] *See* Hoang Decl., Ex. 4 (Transcript of Jeffrey Weingarten Deposition, July 15, 2015 ("Weingarten Dep.")).

[6] Initial Rpt. § V, at 3. Weingarten and the Trustee's expert, Dr. Pomerantz, agree on the due diligence standard applicable to the Merkin Defendants, generally referred to as the "5 Ps." Rebuttal Rpt. at 3.

[7] Initial Rpt. § VII at 6.

**<u>LEGAL STANDARD</u>**

The trial judge serves as a "gatekeeper" with broad discretion to determine whether to admit or exclude expert opinion testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc.*, No. 11 Civ. 4948, 2012 WL 5425033, at *1 (S.D.N.Y. Nov. 7, 2012). Under Fed. R. Evid. 702, expert testimony is admissible when:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2017).

"To determine whether a proposed expert's testimony passes muster under Rule 702, this Court must inquire into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based on reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact." *SEC v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (citations omitted). When determining whether an expert's analysis is reliable, a court will undertake a rigorous examination of the "factual basis, data, principles, [and] methods" underlying an expert's opinion, as well as "their application" by the expert. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). An expert's proponent bears the burden of satisfying these requirements. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Specifically, the proponent of the expert testimony must prove by a preponderance of the evidence that it is reliable. *Daubert*, 509 U.S. at 592 n.10.

To satisfy the reliability requirement, an expert's "testimony must be based on sufficient facts or data and it must be the product of reliable principles and methods properly applied." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004). A court typically focuses on the "principles and methodology" rather than on the conclusions generated by the expert. *Daubert*, 509 U.S. at 595. Thus, reliability need not be certain, but must be demonstrated by evidence that the opinion and testimony is "more than a subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (quotations omitted).

Moreover, "conclusions and methodology are not entirely distinct from one another" and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, a district court may exclude expert testimony if it determines that "there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Finally, while expert testimony is permissible in financial industry cases, such testimony must be carefully circumscribed in order to ensure that the expert does not usurp the role of the court on issues of law and the trier of fact on the ultimate issues of fact and law. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775, at *22 (S.D.N.Y. Mar. 26, 2003); *see also Feinberg v. Katz*, No. 01

5

Civ. 2739 (CSH), 2007 WL 4562930, at *7 (S.D.N.Y. Dec. 21, 2007) (citing *United States v.*

*Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

## ARGUMENT

I.    **WEINGARTEN'S OPINIONS AND TESTIMONY SHOULD BE EXCLUDED BECAUSE THEY ARE UNRELIABLE**

A.    **Weingarten Has Applied No Methodology**

In his Initial Report, Weingarten describes in a single paragraph and in the most general

terms, the 5 Ps standard for due diligence review.[8]  In his only discussion, a section entitled

"Summary of Conclusions," Weingarten opines that the due diligence performed by Defendants

"met or exceeded industry standards."[9]

Yet, while he offers many sweeping statements, at no point does Weingarten set forth any

method for evaluating the different components of the 5 Ps standard—the methodology to

evaluate "what is [Madoff] trying to achieve in his strategy";[10] the methodology to determine

that "Madoff was investing to achieve good returns (better than T-bill returns) with substantially

below average risk";[11] the methodology to determine that Madoff's strategy would "achieve

capital appreciation within a defined risk parameter";[12] the methodology to determine that

Madoff's strategy "would forgo potential higher profit opportunities in order to avoid risk of

loss";[13] the methodology to determine that "being out of the market around highly volatile

periods during which options expire" was part of Madoff's strategy;[14] the methodology to

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 3.

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.*

[14] *Id.*

determine if Madoff was executing the split strike conversion strategy;[15] the methodology to determine if Madoff's returns were consistent with the split strike conversion strategy;[16] the methodology to determine if Madoff's returns were the result of factors—"benefits"—other than the split strike conversion strategy;[17] the methodology to determine that "Madoff had the ability to predict short-term trends in the market as a result of a proprietary model and access to order flow";[18] the methodology to determine that Madoff "[took] advantage of both market timing and stock selection to improve returns over that which would have been generated by a formulaic putting on of the trades";[19] the methodology to determine that the returns in the Merkin Funds' BLMIS accounts "were not volatile," "outperformed the overall market" when the market was down, and "underperformed" when the market was up sharply;[20] and the methodology to determine that "the knowledge and ability of Mr. Madoff could permit returns to be generated above what an ordinary 'dumb' Split Strike Conversion strategy would generate."[21]

Indeed, not only does Weingarten fail to explain how he came to any of these conclusions, but he fails to include even a single citation to any of the documents identified on his list of documents considered or any industry publication or authority to support his conclusions. Instead, Weingarten repeatedly cites only to his experience to reach his conclusions, *e.g.*, "*in my experience*, these returns were not implausible";[22] "[s]o, again, *I can*

---

[15] *Id.*

[16] *Id.* at 3.

[17] *Id.*

[18] *Id.* at 3–4.

[19] *Id.* at 4.

[20] *Id.* at 4–5.

[21] *Id.* at 4.

[22] *Id.* at 5 (emphasis added).

*speak from my own experience.*[23]  There were a lot of people with whom I discussed my investment philosophy and process and procedures";[24] "what Madoff was doing was entirely consistent with *my experience* of broker-dealer based relationships with their clients."[25]  Such experience, however, cannot supplant the requirement for a reliable, verifiable methodology to bridge the gap between the facts here and Weingarten's conclusion.

While experts may testify based on their experience, there must be a verifiable way of demonstrating the validity of each step of their method or process.  *CFTC v. Wilson*, No. 13 Civ. 7884 (AT), 2016 WL 7229056, at *9–11 (S.D.N.Y. Sept. 30, 2016) (citing *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-cv-681 (KBF), 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015)).  The expert "must explain how that experience leads to the conclusions reached . . . and how that experience is reliably applied to the facts" or be excluded. *Cerbelli v. City of N.Y.*, No. 99-CV-6846 (ARR)(RML), 2006 WL 2792755, at *2 (E.D.N.Y. Sept. 27, 2006) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)).

Courts will exclude an expert who fails to set forth a sustainable method and procedure. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. M21-88, 2008 WL 2324112, at *3 (S.D.N.Y. June 5, 2008) (excluding expert's testimony because the court was unable to "discern any method—much less a reliable method—that [the expert] used to reach his conclusion"); *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 595 (S.D.N.Y. 2013) (excluding plaintiff's damages expert for failing to provide any support for the expert's methodology). Similarly, if an expert's methodology cannot be "tested or challenged in any objective sense," it should be excluded.  *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, No. 14 Civ. 4869

---

[23] Weingarten Dep. 221:20–23 (emphasis added).

[24] *Id.*

[25] *Id.* at 236:17–20 (emphasis added).

(PAE), 2016 WL 4784004, at *16–17 (S.D.N.Y. Sept. 13, 2016). Further, an expert's opinion is also subject to exclusion if he "cites no authorities or publications to show that the methods and principles upon which he relies are in fact reliable." *Maurizio v. Goldsmith*, No. 96 CIV. 4332 (RPP), 2002 WL 535146, at *5 (S.D.N.Y. Apr. 9, 2002).

Weingarten's opinions and testimony should be excluded as they do not rest on a reliable foundation. *Daubert*, 509 U.S. at 597. Rather, in all instances, absent any methodology, Weingarten's conclusions are speculative or conjectural, and based solely on his say-so. *Lippe*, 288 B.R. at 686, 689. To the extent Weingarten relies solely on his experience, his opinions do not explain how his experience reliably applies to the facts in order to reach his conclusions. Simply put, there is no "methodology" for which the "reliability" can be tested, and therefore, Weingarten's opinions and testimony should be excluded *in toto*. *See id.* at 689 (precluding valuation expert from testifying where he made "no effort to explain how his conclusions were reached, why the conclusions have a factual basis, or how his experience reliably applied"); *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (affirming preclusion of expert who "repeatedly answered 'my expertise' or some variant" to questions of his methodology; finding "he either had no method or could not describe one. He was relying on intuition, which won't do.").

### B.     Weingarten Used Insufficient Data and Performed No Analysis

Courts must be able to test an expert's opinion for veracity and reliability. *See LVL XIII Brands, Inc.*, 2016 WL 4784004, at *16–17. Expert testimony that lacks sufficient data and analysis is precisely the type of expert testimony that the court's gatekeeping function is intended to keep out of the courtroom. *See Fate v. Vill. of Spring Valley*, No. 11 Civ. 6838 (JPO), 2013 WL 2649548, at *2, 4 (S.D.N.Y. June 13, 2013). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert*

and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Nimely v. City of N.Y.*, 414 F.3d 381, 396–97 (2d Cir.2005).  Such unsupported expert opinion is *ipse dixit*—based on nothing more than the expert's say-so—and precisely the type of testimony that is inadmissible.  *See Gen. Elec. Co.*, 522 U.S. at 146.

### 1.    Insufficient Data and Facts

Weingarten did not rely on data or facts, and should not be permitted to supplant that requirement by offering conclusions based on supposition and conjecture.  For example, he states that when conducting due diligence related to Process, one must ascertain "how does the manager go about the strategy."[26]  Weingarten concludes that Merkin understood that Madoff generated better returns than a simple split strike conversion strategy by relying on his experience, knowledge, and ability to capitalize on market timing and stock selection.[27]  But, when questioned about how Merkin "understood" Madoff achieved consistently positive results, Weingarten pointed to no data or facts to support his conclusion other than his own imagination or best guess:

> *I could certainly imagine*, for example, that in looking [at] how the fund performed in, for example, down markets, how he could have timed things such that he could make money, he would have certainly seen that there were times when the market was down and Madoff did make money, *but exactly how [Merkin] confirmed in his own mind I'm not entirely sure.*[28]

Weingarten also posits "[t]he returns were not volatile and better than would be expected from a typical Split Strike Conversion strategy" and that "in my experience, these returns were

---

[26] Initial Rpt. § V, at 3.

[27] *Id.* at 3–4.

[28] Weingarten Dep. 163:2–9 (emphasis added).

not implausible."[29]  But, again, Weingarten provides no data or facts to support this conclusion

other than his supposition of what "most investors" knew:

> *Most investors*, including Merkin, were aware that there often
> were some time lapses in effecting the split strike conversion
> strategy and these time lapses would have permitted returns to
> exceed, even modestly, the results that would have resulted from a
> simultaneous implementation of the trades.[30]

Weingarten's conclusion that Madoff's performance was consistent with the split strike

conversion strategy likewise is not grounded in reliable data or verifiable fact.  Weingarten states

that for "Performance," an investment manager should understand "what have been the

investment returns and are those returns consistent with the strategy."[31]  Weingarten refers to

"reports comparing fund managers" in which he "observed many fund managers' results where

the returns were high and volatility was proportionately low."[32]  Yet, Weingarten did not identify

any "reports comparing fund managers" on the documents that he considered and never

identified who any of the fund managers were during his deposition, instead referring generically

and generally to "fund managers."[33]

Finally, Weingarten's documents considered list exemplifies his failure to rely on

sufficient data and facts:

- Third Amended Complaint in this action

- Complaints filed by Picard in other actions including, *Picard v. ABN Amro
  Bank N.V.*, Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.), *Picard v. Citibank
  N.A.*, Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.), *Picard v. Defender
  Limited*, Adv. Pro. No. 10-05229 (Bankr. S.D.N.Y.), *Picard v. Natixis*,

---

[29] Rebuttal Rpt. § V, at 4-5.

[30] Rebuttal Rpt. § III, at 2.

[31] Initial Rpt. § V, at 3.

[32] *Id.* at 5.

[33] Weingarten Dep. 86:16-25, 106:2-18, 133:16-134:14, 144:17-145:4.

Adv. Pro. No. 10-05353 (Bankr. S.D.N.Y.), and *Picard v. Nomura Bank International PLC*, Adv. Pro. No. 10-05348 (Bankr. S.D.N.Y.).

- Merkin's file on Madoff

- Audio files produced by Defendants

- Emails produced by Defendants

- Trade confirmations and monthly statements from Madoff

- PMS data

- Excel file on Madoff Investment History

- Transcript of Autera Testimony in this action (individual and as 30(b)(6) designee)

- Transcript of Merkin Testimony in this action

- Transcript of Merkin Testimony in NYAG litigation

- Transcript of Merkin Testimony in NYU litigation

- November 7, 2005 Submission to the SEC by Harry Markopoulos

- August 31, 2009 Report by the SEC Office of the Inspector General[34]

Of the millions of pages of documents produced in this action, Weingarten relied upon only

fourteen separate documents and document types, many of which are complaints in matters

unrelated to Defendants.  Notably, of the 32 fact witness depositions taken in this action,[35]

---

[34] Initial Rpt., Ex. B.

[35] The following depositions were taken in this action:  Michael Achillare (August 9, 2011); Steven Askling (August 8, 2011); Michael Autera (September 26, 2011 and October 19, 2011); Michael Autera as 30(b)(6) Witness (October 22-23, 2014); Jerome Balsam (October 25, 2011); Robert Castro (October 10, 2012); Eric Dillon (May 21, 2012); Joel Ehrenkranz (March 20, 2014); Patrick Erne (June 26, 2014); Stephen Feinberg (October 4, 2011); Aldo Ghisletta (January 14, 2015); Andrew Gordon (August 16, 2011); Daniel Gottlieb (October 22, 2012); Noreen Harrington (October 1, 2013); Daniel Hess (October 11, 2012); Wilbur Kim (November 19, 2013); Michael Mahagan (November 22, 2013); Michael Matlin (November 21, 2013); Jack Mayer (October 11, 2013); J. Ezra Merkin (February 24-25, 2015); James Mnookin (November 19, 2013); Joshua Nash (October 18, 2012); Jason Orchard (October 8, 2013); Christof Reichmuth (June 24, 2014); Robert Rosenkranz (October 4, 2012); Don Seymour (January 13, 2015); David Sherman (August 30, 2011); Fred Sloan (October 16, 2012); Morris Smith (March 4, 2014); John Steffens (September 18, 2013); Tina Surh (October 29, 2013); Victor Teicher (February 9, 2009 and October 29, 2013); and Ed Thorp (May 22, 2012).  These deposition transcripts are voluminous and will be provided upon request.

Weingarten confirms that he was unaware of the number of depositions and that he only reviewed the deposition transcripts of Michael Autera (CFO of GCC) and Merkin.[36]  While an expert's factual basis is often a matter of credibility, *Boykin v. W. Exp., Inc.*, No. 12-cv-7428 (NSR)(JCM), 2015 WL 539423, at *6 (S.D.N.Y. Feb. 6, 2015), the reliability of an expert's analysis is undermined where it is based on  insufficient or narrowly selected facts and data. *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010) (excluding expert who made "no effort to ensure that the materials he reviewed were representative").  Weingarten's opinions suffer from this fatal deficiency.

### 2.    Lack of Analysis

Weingarten's opinions are not grounded in reliable analysis.  For example, over the 18 years the Merkin Funds were invested with BLMIS, there were 59,996 transactions purportedly executed in their BLMIS accounts.[37]  Yet, Weingarten admits that he came to his opinions after having reviewed only two, at most three, isolated transactions from 2004 and 2007:[38]

> Q.    So other than those two and possibly a third, you didn't look at any other transactions in the Merkin fund BLMIS accounts?
>
> A.    I don't remember looking at any others but, again, I looked at those two and I got a pretty good idea of how the timing of the investments would generate significant benefits over a buy/hold split-strike conversion strategy.  Because what I was trying to determine was how Madoff was able to generate the returns that other people who looked at it were not able to replicate.[39]

*****

---

[36] Weingarten Dep. 123:3–10.

[37] *See* Appendices XIII, XIV, XV, Expert Rpt. of Dr. Steve Pomerantz dated April 13, 2015.  Appendices XIII – XV are voluminous electronic files and will be made available upon request.

[38] Weingarten Dep. 153:22–154:17, 168:19–171:5.

[39] *Id.* at 154:18–155:4.

Q.    And that's based on looking at those two or three transactions that you referred to before in 2004, 2007; is that correct?

A.    Looking at those transactions, understanding why the underlying pricing of some of the instruments in which he invested could generate the kinds of returns he did, and understanding that, as I said, under similar conditions he would almost always, if not always, generate positive returns in down markets, yes.[40]

Weingarten could not even recall when exactly the two or three transactions occurred, the types of transactions, or any other facts regarding those transactions. Foundationally, Weingarten does not recall the source of market data he looked at,[41] provided no documents or written support for his analysis, and remarkably, does not believe that he even wrote down which transactions he looked at.[42] Consideration of—at best—three transactions out of almost 60,000 transactions, and then failure to recall those transactions, leaves no doubt as to the speculation and unreliability of Weingarten's opinions.

In another assumption lacking any analysis, Weingarten opines that split strike conversion strategy was "a relatively simple process, but one that could and would be executed [by Madoff] in an uncommon way."[43] At his deposition, Weingarten testified that "enough people" analyzed Madoff's execution "or believed [Madoff's] execution was superior." [44] When pressed on who conducted this analysis, Weingarten could only name the Trustee's expert, Dr. Pomerantz.[45] Weingarten did not conduct such an analysis and he certainly did not know if

---

[40] *Id.* at 228:5–18.

[41] *See id.* at 170:6–171:5.

[42] *Id.*; *see also id.* at 169:13–170:5.

[43] Initial Rpt. § V at 4; *see also* Weingarten Dep. 160:1–25.

[44] Weingarten Dep. 160:8–14.

[45] Weingarten Dep. 160:15–18.

Merkin performed any analysis on Madoff's purported strategy: "exactly how [Merkin] confirmed in his own mind *I'm not entirely sure*."[46]

Weingarten also fails to provide any analysis to sustain his conclusion that Merkin had an understanding of Madoff's philosophy and process. To satisfy the Philosophy prong of due diligence, Weingarten posits: "what is the manager trying to achieve in his strategy."[47] He identifies Madoff's strategy as the "Split Strike Conversion strategy but with added 'benefits'" and concludes that Madoff "would forgo potential higher profit opportunities in order to avoid risk of loss"[48] by "being out of the market around highly volatile periods during which options expire[d]."[49] But, Weingarten did not conduct any analysis to come to this conclusion, namely to determine if Madoff's philosophy was consistent with the split strike conversion strategy, including whether Madoff was actually out of the market at highly volatile periods of time, or if the options were, in fact, expiring during those purportedly highly volatile periods of time:

> Q.    *And were those—did you do any analysis to determine if those were highly volatile periods of time when he was out of the market?*
>
> A.    *I didn't do an analysis specifically,* but having been a fund manager myself for many years, I know that there are certain times during the year, and very definitely at the end of the year, when, for a combination of reasons markets and individual securities are unusually volatile.
>
> Q.    *But you didn't do an analysis on the transactions that were occurring in Madoff—in the Madoff fund BLMIS accounts, did you?*
>
> A.    *No.* It was sufficient for me to understand that there were times when the markets were volatile. And that I would understand

---

[46] *Id.* at 163:2–9 (emphasis added).

[47] Initial Rpt. § V, at 3.

[48] *Id.*

[49] *Id.*

why someone would choose not to be in markets at those particular
times to avoid that particular volatility.

*** 

Q.    *But you didn't verify if, in fact, in the Merkin fund BLMIS
accounts that the market was volatile at the end of each quarter,
did you?*

A.    *I did not determine on a quarter by quarter the volatility of
the market.* As I said, I'm aware of having been in the markets at
those times over an almost 20-year period that the markets
typically were unusually, or had the potential to be unusually
volatile at the end of any quarter, and certainly at the end of the
year.

*** 

Q.    *Did you make a determination in the Merkin fund BLMIS
accounts if the options expired at the end of each quarter?*

        STEINER: Objection to form.

A.    *I did not go through each option expiration -- each option
to find out when it expired, no.*[50]

Against the foregoing, Weingarten's opinions and testimony should be summarily

excluded based on the insufficiency of the data and facts and, moreover, the lack of a reliable

and verifiable analysis. *See Lippe*, 288 B.R. at 686 (finding an expert "must do more than aver

conclusorily that his experience led to his opinion"); *Luitpold Pharm., Inc.*, 2015 WL 5459662,

at *8 (holding an expert's opinion must be "drawn from . . . verifiable data."); *Fate*, 2013 WL

2649548, at *5 (finding the deficiencies in methodology and analysis "rise above mere fodder for

cross-examination and collide with the bar imposed by *Daubert*.").

---

[50] Weingarten Dep. 143:21–146:16.

## II.    WEINGARTEN'S "OPINIONS" REGARDING A PARTY OR WITNESS'S STATE OF MIND, INTENT OR MOTIVATION ARE INADMISSIBLE

Weingarten's opinions on Merkin's state of mind are inadmissible because experts cannot opine regarding a party's state of mind, intentions, or motivations.  "Any testimony about a party's motivation, reason for acting, or intent without supporting evidence is speculation and therefore an inappropriate subject for expert testimony."  *Weisfelner v. Blavatnick* (*In re Lyondell Chem. Co.*), 558 B.R. 661, 670 (Bankr. S.D.N.Y. 2016) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("[T]he opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.")); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (granting motion to exclude expert testimony "as to the knowledge, motivations, intent, state of mind, or purposes of the [defendant and] its employees," and noting that the expert conceded that her regulatory expertise "does not give her the ability to read minds"); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686 (SAS), 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) ("There is no dispute that opinions concerning state of mind are an inappropriate topic for expert opinion.").

Courts further routinely exclude expert testimony purporting to draw inferences regarding state of mind based on another witness's testimony or documents.  *See AFTRA Ret. Fund*, 2011 WL 6288415, at *8–9 (finding inferences regarding a party's "knowledge and understanding," are impermissible subject matter for expert testimony).  Similarly, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony."  *In re Rezulin*, 309 F. Supp. 2d at 545–47, n.40.  And inferences based on subjective beliefs and unsupported speculation are unreliable and inappropriate, and likewise should be excluded.  *See United States v. Tucker*, 345 F.3d 320, 331 (5th Cir. 2003) (upholding district court's exclusion of testimony of

17

expert who was "improperly attempting to evaluate the evidence and render his opinion as to what the brokers should have drawn from it"); *see also Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 278–79 (S.D.N.Y. 2000); *R.F.M.A.S., Inc. v. Mimi SO*, 748 F. Supp. 2d 244, 248–49 (S.D.N.Y. 2010).

The crux of Weingarten's testimony is Merkin's state of mind—what Merkin understood to be Madoff's strategy, what Merkin understood to be Madoff's investment philosophy, and what Merkin understood of BLMIS's operations.

- "In my opinion it is very clear that Merkin had a clear understanding of the investment Philosophy of Madoff and his investment advisory operations."[51]

- "Merkin knew that Madoff's experience and reputation was entirely consistent with what he was being asked to do from a fund manager's perspective."[52]

- "They [Defendants] adequately understood the investment Philosophy."[53]

- "Merkin [was] aware that there often were time lapses in effecting the split strike conversion strategy and these time lapses would have permitted returns to exceed, even modestly, the results that would have resulted from a simultaneous implementation of the trades."[54]

- "Merkin understood that he was investing with Madoff to achieve better than t-bill returns with substantially below average risk. . . . [And] [i]t was clear to Merkin that foregoing potential higher returns was, or could be, the cost of avoiding volatility."[55]

- "Merkin was aware that various regulators, auditors, administrators, and sophisticated institutional and individual investors were also looking at many of [the investment] factors."[56]

---

[51] Initial Rpt. § V, at 3.

[52] *Id.* at 4.

[53] *Id.* at 5.

[54] Rebuttal Rpt. § III, at 2.

[55] *Id.* at 3.

[56] Initial Rpt. § V, at 2–3.

- "Merkin understood that Madoff has . . . the knowledge and ability to take advantage of both market timing and stock selection . . . ."[57]

- "Merkin had reason to believe" that the "Procedures were also clearly and transparently . . . adhered to."[58]

- "Madoff's plausibility would also be reinforced because Merkin knew that many other highly sophisticated and experienced investors were clients of Madoff."[59]

Weingarten's recitation of what Merkin knew is outside the bounds of expert testimony and is inadmissible.

Weingarten further conceded that he drew several inferences about Merkin's state of mind in connection with the findings in his Reports. When asked if Merkin did an analysis to determine if the returns in his BLMIS accounts were the result of order flow, Weingarten responded "I inferred from what Merkin said that he knew that some combination of market experience and knowledge and access to order flow could, and indeed would be used to help [Madoff] time the markets and producing [sic] superior returns."[60] Weingarten also inferred Merkin's understanding of Madoff's use of market timing in his strategy:

> I don't know what Merkin's understanding was, other than what I said before, that *I inferred that he believed* that amongst Madoff's abilities and amongst the tools that Madoff could use to generate superior returns, were his ability, by virtue of his experience and perhaps access to order flow, to time the markets and accurately predict price movements in the instruments to generate those returns.[61]
>
> \*\*\*\*\*
>
> I'm not sure what analysis Merkin did. I infer from everything that Merkin—not everything. I infer from the things that Merkin has

---

[57] *Id.* at 4.

[58] *Id.*

[59] *Id.* at 5.

[60] Weingarten Dep. 212:20–214:1.

[61] *Id.* at 216:3–12.

> said, that he understood through some combination of experience,
> access to order flow, that [Madoff] was able to use a variety of
> tools to time markets and price instruments in a way that would
> permit him to do substantially better than the market over a period
> of time. . . . I would infer that since [Merkin] was looking at the
> performance on a fairly regular basis, he would have been aware
> that there were occasions in which Madoff allegedly made money
> in down markets.[62]

Weingarten's recitation of what he inferred or assumed Merkin knew or believed is improper

state of mind opinion and testimony, and therefore should be excluded.

## III.    WEINGARTEN'S FACTUAL NARRATIVES ARE OUTSIDE THE BOUNDS OF EXPERT TESTIMONY AND ARE NOT HELPFUL TO THE TRIER OF FACT

Expert opinion must be drawn from a special expertise and "must be helpful to the trier of

fact in comprehending and deciding issues beyond the understanding of a layperson." *Marvel*

*Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) (quoting *DiBella v. Hopkins*, 403 F.3d

102, 121 (2d Cir. 2005)).  Even if the expert's opinions and testimony are determined to be

reliable, this Court must still evaluate the relevancy of the testimony by determining whether the

information provided "will assist the trier of fact to understand the evidence or determine a fact

in issue."  Fed. R. Evid. 702.  Expert testimony that is not probative of a key issue is irrelevant

and inadmissible pursuant to Fed. R. Evid. 401 and 402.  *See* Fed. R. Evid. 401, 402; *Daubert*,

509 U.S. at 587, 591, 599; *Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*, 314 F.3d 48,

60 (2d Cir. 2002).

An expert cannot be presented solely for the purpose of constructing a factual narrative

based upon record evidence.  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461,

469–70 (S.D.N.Y. 2005) (citing *In re Rezulin*, 309 F. Supp. 2d at 551 (rejecting portions of

plaintiffs' expert's testimony as "a narrative reciting selected regulatory events" that should be

---

[62] *Id.* at 228:21–229:12.

"properly presented through a percipient witness and documentary evidence").  *See, e.g.*, *Price v. Fox Entm't Grp., Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007) ("[T]o the extent [the expert's] report and testimony addresses the chronology and evolution of defendants' script, I find that testimony should also be precluded under Rule 702."); *LinkCo, Inc. v. Fujitsu Ltd*., No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (alteration in original) (citation omitted) (quotations omitted) (excluding expert testimony where "expert [only] propound[ed] a particular interpretation of defendant's conduct").

Nor should expert testimony be permitted where it mimics legal arguments made by counsel.  *See Sharkey v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 250, 253–54 (S.D.N.Y. 2013) (limiting testimony so that expert could not opine on lay matters within the purview of the factfinder nor provide an assessment of the documentary and factual evidence related to the case); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 161 (2d Cir. 2012) (finding expert properly excluded because "expert analysis was not required to help the jury [where] the plaintiffs' attorneys made the same points in argument that were made in [expert]'s report"); *Highland Capital Mgmt., L.P.*, 379 F. Supp. 2d at 469 ("[N]o expert may supplant the role of counsel in making argument at trial," or the court's "interpret[ation] of the evidence."); *In re Rezulin*, 309 F. Supp. 2d at 546 (holding exclusion is proper where an expert attempts to "assume the role of advocates for [a party's] case.").

Here, Weingarten simply collects and summarizes the information given to him to reach his conclusions about Defendants' conduct.  Weingarten states that Merkin "knew the **People** who were doing the investing."[63]  Weingarten also refers to an unannotated statement by the

---

[63] Initial Rpt. § V, at 4.

former Securities and Exchange Commission chairman offering a personal opinion on BLMIS.[64]

These statements do not relate in any way to his expertise or his retention as an expert to opine

on the Defendants' due diligence of BLMIS.  And, neither statement is anything more than a

factual narrative outside the scope of permissible expert testimony.[65]

      Likewise, Weingarten points to regulatory failures generally to support the argument that

Merkin's due diligence was adequate.  Specifically, he notes "[w]ith the benefit of hindsight,

much has been made about a lack of due diligence, when, in reality, this was a very elaborate

fraud spanning decades that was never uncovered by a myriad of agencies, auditors, regulators

and sophisticated investors;"[66] and "[i]t is worth pointing out again and frequently that all of the

regulators charged with oversight of Madoff's business failed to uncover this fraud and they all

had much greater access to information than any outsider conducting Due Diligence would ever

have had."[67]  Again, these statements provide little more than a factual narrative, no expert

analysis, and essentially mirrors the advocacy repeatedly advanced by Defendants' counsel.

      The foregoing statements, and any similar statements, are not within the scope of

admissible expert testimony and therefore, should be excluded pursuant to Fed. R. Evid. 401,

402, and 702.

---

[64] *Id.* at 5.

[65] The SEC's actions or inactions as to BLMIS are irrelevant to the Merkin Defendants' due diligence and thus, this proceeding.  *See* Trustee's Motion *in Limine* Number 1 and Memorandum of Law to Exclude all Evidence and Testimony on the Actions or Inactions of the United States Securities and Exchange Commission.

[66] Initial Rpt. §V, at 3.

[67] Rebuttal Rpt. § III, at 2.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court exclude the

expert opinions and testimony of Jeffrey M. Weingarten at trial.


Dated:  April 7, 2017              **BAKER & HOSTETLER LLP**
      New York, New York

                                      */s/ David J. Sheehan*
                                      45 Rockefeller Plaza
                                      New York, New York 10111
                                      Telephone: (212) 589-4200
                                      Facsimile:  (212) 589-4201
                                      David J. Sheehan
                                      Email: dsheehan@bakerlaw.com
                                      Lan Hoang
                                      Email: lhoang@bakerlaw.com
                                      Brian W. Song
                                      Email: bsong@bakerlaw.com

                                      *Attorneys for Irving H. Picard, Trustee for the*
                                      *Substantively Consolidated SIPA Liquidation of*
                                      *Bernard L. Madoff Investment Securities LLC and*
                                      *the Chapter 7 Estate of Bernard L. Madoff*