# EXHIBIT 6

**CONFIDENTIAL**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
In re:                                            :
                                                  :
BERNARD L. MADOFF INVESTMENT                      :   SIPA LIQUIDATION
SECURITIES LLC,                                   :
                                                  :   No. 08-01789 (SMB)
        Debtor.                                   :
                                                  X
------------------------------------------------- 
IRVING H. PICARD, Trustee for the Liquidation     :
of Bernard L. Madoff Investment Securities LLC,   :
                                                  :
        Plaintiff,                                :
                                                  :
                                                  :
            v.                                    :   Adv. Proc. No. 09-01182 (SMB)
                                                  :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,            :
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,            :
ASCOT FUND LTD., GABRIEL CAPITAL                  :
CORPORATION,                                      :
                                                  :
        Defendants.                               :
------------------------------------------------- X

## Rebuttal Expert Report of Jeffrey M. Weingarten



I.     **Scope of Assignment**

I have considered the Initial Expert Witness Report of Dr. Steve Pomerantz. If called as an expert to testify in this matter, in addition to the opinions expressed in my initial Expert Report, and as noted in that report, I anticipate that my testimony would include a rebuttal to the opinions offered by Dr. Pomerantz.

II.     **Materials Considered**

In forming my opinions, in addition to the experience and materials relied on in my initial Expert Report, I considered and relied on Dr. Pomerantz's Initial Expert Report and certain of the exhibits on which he relied, specifically the 1997 and 2001 due diligence questionnaires published by the Alternative Investment Management Association ("AIMA") as well as the book *Investment Manager Analysis* by Frank J. Travers.

III.     **Summary of Conclusions**

I disagree with the fundamental premise on which the report by Dr. Pomerantz was founded. What is portrayed by Dr. Pomerantz was not even close to the customary standard of Due Diligence at the time in question. What is not considered in the report is the important fact that the mere fact of the Madoff fraud caused the entire industry to focus on issues that previously were not standard concerns. The mere fact of the Madoff fraud exposed issues that were not written into some of the Due Diligence templates referred to in the report. Almost none of the after-the-fact forensics conducted by Dr. Pomerantz was routine before Madoff himself went public with his fraud.

Moreover, most of what was written in the report as "concerns" were well covered by the many articles written after the fact and indeed were even raised contemporaneously. These concerns include, for example, the issue of BLMIS's accounting firm, the fact that confirms were manual, the issue of self clearing. These issues were publically known and discussed at the time and did not prevent some of the most sophisticated investors from investing with Madoff. It is worth pointing out again and frequently that all of the regulators charged with oversight of Madoff's business failed to uncover this fraud and they all had much greater access to information than any outsider conducting Due Diligence would ever have had.

Another fundamental flaw in the logic suggested in Dr. Pomerantz's report is that the only possible explanation for the results allegedly achieved by Madoff was fraud. This is clearly NOT the only possibility. Most investors, including Mr. Merkin, were aware that there often were some time lapses in effecting the split strike conversion strategy and these time lapses would have permitted returns to exceed, even modestly, the results that would have resulted from a simultaneous implementation of the trades. So much time and effort has been wasted by after the fact forensic accountants and experts trying to replicate what Madoff allegedly was doing on the assumption that all the trades were done at the same time. Even small gaps in executing the

2

sale of calls would be sufficient to achieve the results. Madoff was thought by many to have not only an ability to time the markets but had access to flow of funds information, which would have been beneficial to achieving these results. This access would not necessarily have been the result of nor caused by front running since the knowledge would have been general flows and did not necessarily result from running in front of client trades.

As is almost always true in the investment world, there will be more views on the appropriateness and the desirability of an investment strategy than there are investors making that determination. Many looked at Madoff's record and rejected it for any number of reasons. Many billions were invested by very sophisticated investors knowing the same facts as those who chose not to invest. The level of Due Diligence conducted by these investors varied considerably, as will always be the case. The level of Due Diligence suggested by Dr. Pomerantz, although with the perfect hindsight we now all possess would have been preferable, was not at that time the industry standard in numerous respects. For example, the AIMA guidelines issued in 1997 and reiterated in 2001 referenced by Dr. Pomerantz do not mention contacting counterparties. Nor does Mr. Travers' book. Similarly, extensive review of reported prices and volumes, undertaken after the fact by Dr. Pomerantz, was not indicated in either the AIMA guidelines or by Mr. Travers.

## Industry Standard Due Diligence

As I indicated in my initial Expert Report, industry standard due diligence is something of a misnomer in that there was very wide variation in practice. Most industry "standards" revolved around determining the investment philosophy, process, people, performance and ultimately price. Although we used slightly different wording, there does not appear to be fundamental disagreement between Dr. Pomerantz and me on this approach.

## Philosophy

It does not appear to be disputed that Mr. Merkin understood that he was investing with Madoff to achieve better than t-bill returns with substantially below average risk. It was clear to Mr. Merkin that foregoing potential higher returns was, or could be, the cost of avoiding volatility. This would certainly explain why he would accept that Madoff might be out of the market at certain periods of expected high volatility such as often occurred around the end of the quarter and certainly the end of the year. This understanding was critical to both the initial and ongoing Due Diligence conducted by Mr Merkin.

## Process and Procedures

Several issues have been raised by Dr. Pomerantz regarding the Process and Procedures, again all with the benefit of perfect hindsight and again most of which were known concerns at the time when Mr. Merkin and many other investors were already investing with Madoff.

3

Among the issues raised was the use of written confirmations. But written confirmations were not unusual at the time the Funds first began investing with Mr. Madoff. Even at the time I was running a hedge fund in 2007, I was still receiving written and faxed confirmation from brokers.

People
─────

The reputation and qualification of the person or people doing the investing is critical to the Due Diligence process. To suggest otherwise is not only erroneous, it flies in the face of standard industry practice both before and after Madoff's fraud was uncovered. Indeed, in his book on hedge funds, Mr. Travers attaches 30% of the Due Diligence weight to the Investment Professionals, the highest weight of any other factor!

There are numerous examples of investors placing money with people who just by nature of the reputation of the firms for whom they once worked, have raised billions of dollars with no visible track record of managing money on their own. To suggest otherwise is at best naïve and certainly at variance with industry practice.

In the case of Madoff, Mr. Merkin had a long history of both familial and business relationships before investing. That ongoing relationship continued throughout the investing period.

Madoff's reputation as an industry leader and prominent figure in the investing community would certainly have been enough Due Diligence for many at the time and indeed would be a critical if not determinative factor in any Due Diligence conducted even today.

Performance
───────────

Dr. Pomerantz makes a big deal about Sharpe ratios. A number of funds identified in Bloomberg had Sharpe ratios greater than 2.5, including SMN Diversified Futures Fund (4.68), the Eclectica Fund (3.80), and Episode Inc. (2.61), as of April 20, 2015. Similarly, several funds had more than 75% up months.

## IV.   Conclusion

As indicated above, several of the sources used by Dr. Pomerantz provide guides for what standard Due Diligence looked like at the time Mr. Merkin was conducting both initial and ongoing Due Diligence. None of these even suggest the kind of backward looking forensics that Dr. Pomerantz suggested was standard. While these forensics may have been possible, they were certainly not standard. What has been done by Dr. Pomeratz rather represents fairly standard after the fact examination of information that, when you know the outcome, would lead you to conclude that the outcome was possibly a fraud. It is proving what we know to be true.

It always needs to be pointed out that despite numerous regulators having investigated and numerous sophisticated investors performing Due Diligence, including sophisticated investors who discuss Madoff with Mr. Merkin, this very elaborate fraud eluded public detection for many years. Going back now and determining how it was done is relatively easy. Madoff in the end was determined to be a fraud only after he turned himself in.

_Jeffrey M. Weingarten_
May 14, 2015