# EXHIBIT 17

**Baker & Hostetler LLP**
45 Rockefeller Plaza New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Marc D. Powers
Email: mpowers@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>BERNARD L. MADOFF INVESTMENT<br>SECURITIES LLC,<br><br>       Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation<br>of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,<br>ARIEL FUND LTD., ASCOT PARTNERS, L.P.,<br>GABRIEL CAPITAL CORPORATION,<br><br>       Defendants. | Adv. Pro. No. 09-1182 (BRL) |

**TRUSTEE IRVING H. PICARD'S FIRST SET OF REQUESTS FOR PRODUCTION OF**
**DOCUMENTS, INTERROGATORIES, AND REQUESTS FOR ADMISSION**
**TO DEFENDANTS J. EZRA MERKIN AND GABRIEL CAPITAL CORPORATION**

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure and Rules 7033,

7034, and 7036 of the Federal Rules of Bankruptcy Procedure, Irving H. Picard, Esq. (the

"Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), hereby submits the following requests for production of documents,

interrogatories, and requests for admission to Defendants J. Ezra Merkin and Gabriel Capital

Corporation ("Merkin" and "GCC" or "Defendants"). The Trustee requests that Defendants

provide written responses and documents, as well as a privilege log, no later than thirty days

from the date on which it receives service of these requests.

## DEFINITIONS

1.    The definitions contained in Civil Rule 26.3 of the Local Rules of the United

States District Court for the Southern and Eastern Districts of New York, as adopted in Rule

7026-1 of the Local Bankruptcy Rules for the Southern District of New York, are hereby

incorporated by reference, as supplemented herein.

2.    "Applicable Period" means the period between and including the date on which

the Defendant first opened an account with, or managed by, BLMIS, through the present.

3.    "Ariel" means Ariel Fund, Ltd.

4.    "Ascot" means Ascot Partners, L.P. and/or Ascot Fund, Ltd.

5.    "BLMIS" means Bernard L. Madoff Investment Securities, LLC.

6.    "BLMIS Affiliates" means all persons or entities affiliated with BLMIS,

including its officers, directors, employees, partners, and its corporate parents, affiliates and

subsidiaries, and their employees, and any and all related entities including without limitation

Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy

Holdings LLC; Madoff Brokerage and Trading Technologies LLC; Northern Waters LLC;

BCC II LLC; 4th & Forty LLC; Angler Capital Partners; Urban Angler LLC; Davin Capital LP;

Rogge Capital Management; P&C Restaurants; Underpar LLC; Abtech Industries Inc.;

Stemline Therapeutics; Blow Styling Salon LLC; Massage NYC; Conglomerate Gas Resources

LLC; AHM Ventures LLC; 916 SE 12 Street LLC; Nehst Media LLC; Primex Holdings LLC;

ExchangeLab; PetRx; BLM Air Charter LLC; Madoff Family LLC; The Madoff Family

Foundation; Abel Automatics Inc.; Abel Holdings LLC; Essex Realty Development LLC; The

Schlichter Foundation and its representatives and employees; and Bernard L. Madoff and any

and all relatives, related entities and individuals including without limitation, Ruth Madoff;

Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana

Madoff/Swanson/Skoller; Andrew Madoff; Deborah Madoff/West; Mark Madoff; Jennifer

Madoff/Stevens; Stephanie Madoff; Alec Madoff; Henry A. Madoff; Jeff M. Madoff; Sonya

Madoff; Madoff Family Foundation; Gertrude E. Alpern; Lewis Alpern; The Paul Alpern

Residuary Trust; Gertrude Alpern; Leonard Alpern; Minette Alpern Trust; Eileen Alpern;

Jonathan Alpern Trust; Jonathan Alpern; Amanda Alpern Trust; Robert Roman; Joan Roman;

Amy Luria Partners LLC; John (Joan) J. Fisher Partners; Trust of Gladys C. Luria and Robert

Luria Partners.

      7.      The term "Clients" refers to general partners of Defendants and other entities or

individuals, including investors, who invested any funds in Defendants, which funds were

subsequently invested through BLMIS.

      8.      "Complaint" means the second amended complaint filed by the Trustee in this

adversary proceeding.

      9.      The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise). "Communication" includes any transmittal or receipt of

information, whether by chance or prearranged, formal or informal, oral or portrayed in any

"document," and specifically includes:  (a) conversations, meetings and discussions in person;

(b) conversations, meetings and discussions by telephone or through telephonic messages; and

(c) written and electronic correspondence, including communications by email.

10.    The term "concerning" means relating to, referring to, describing, evidencing or constituting. "Concerning" includes directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

11.    "Debt" means liability on a claim, as defined in 11 U.S.C. § 101(12).

12.    "Defendant" means each of the defendants named in this action, as well as any group of two of more defendants, including any parent, subsidiary, affiliate, division, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof and all owners, members and managers thereof.

13.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

14.    "Gabriel" means Gabriel Capital, L.P.

15.    "GCC" means Gabriel Capital Corporation.

16.    "Filing Date" means December 11, 2008.

17.    "Identify" when used with reference to a person, means to give, to the extent known, the person's full name, present or last known address, telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

18.    "Identify," "identity," and "identification," when used with reference to an occasion or instance on which an event, act, or omission occurred, mean to state the date and

place of such occasion or instance, to describe the nature of the event, act, or omission, and to

provide the identification of such person involved in any way in such event, act, or omission.

19.    "Identify," "identity," and "identification," when used in reference to a payment

or to a transfer of property, means to set forth:

(a)    If the payment or transfer was completed in the course of a single day,

state the date of that day;

(b)    If the payment or other transfer was not completed in the course of a

single day, state:

(i)    The date the transferor sent the property to the transferee/recipient;

and

(ii)    The date the transferee received the property;

(c)    The method of payment or other transfer (*i.e.*, check, cash, cashier's

check, wire transfer, etc.);

(d)    If the payment or other transfer was by check, state:

(i)    The date of the check;

(ii)    The amount of the check;

(iii)    The payor of the check;

(iv)    The payee of the check;

(v)    The endorser of the check; and

(vi)    The date the check was cashed or deposited.

20.    The term "Management Entity" means any person or entity that provides

management, administrative or advisory services to a Fund or which organizes or sponsors a

Fund.

21. "Merkin" means J. Ezra Merkin.

22. "Madoff" means Bernard L. Madoff.

23. "Person" means any natural person or any business, not-for-profit, legal, governmental or other incorporated or unincorporated entity, association, fund, organization or group.

24. "Preference Period" means the period between and including September 12, 2008 and December 11, 2008.

25. "Preference Period Transfer" and "Preference Period Transfers" mean any Transfer or Transfers to Defendants listed on Exhibit B of the Complaint that occurred during the Preference Period.

26. "Six Year Transfer" and "Six Year Transfers" mean any Transfer or Transfers to Defendants listed on Exhibit B of the Complaint that occurred during the period between and including December 11, 2002 and December 11, 2008.

27. "Subsequent Transfers" means any Transfers made by BLMIS to the Defendants Ascot, Ariel or Gabriel during the Applicable Period that were subsequently transferred to or credited to Gabriel Capital Corporation or J. Ezra Merkin in connection with their providing services to Defendant. "Subsequent Transfers" includes any payment or payments made by or through Ascot, Ariel or Gabriel to GCC or Merkin, including, but not limited to any funds, property or thing of value, during the Applicable Period.

28. "Transfer" and "Transfers" mean any payment or payments made by BLMIS to any Defendant during the Applicable Period, including, but not limited to, any funds, property, or other value conveyed to any Defendant by check, wire transfer, debit, credit to its account, the return of property, or by any other means during the Applicable Period, by BLMIS.

29.     "Two Year Transfer" and "Two Year Transfers" mean any Transfer or Transfers to Defendants listed on Exhibit B of the Complaint that occurred during the period between and including December 11, 2006 and December 11, 2008.

30.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to its context.

31.     The following rules of construction apply to these Requests:

(a)     "Any" and "all" shall be deemed to include the other;

(b)     "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of its scope;

(c)     "All" and "Each" shall be construed as all and each;

(d)     The singular form of any word includes the plural and *vice versa*; and

(e)     Reference to any person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such person.

## INSTRUCTIONS FOR DOCUMENT REQUESTS

1.    All documents shall be identified by the request(s) to which they are primarily responsive.

2.    Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control, including in possession, custody or control of current and former employee, wherever those documents and materials are held, including on personal computers, PDAs, wireless devices or electronic mail systems such as Gmail, Yahoo or the equivalent.

3.    Produce all documents maintained on paper, electronically stored information, electronic mail and instant messaging platforms regardless of whether the electronic mail or instant messaging platform operates on your own server or Bloomberg or Reuters or similar servers and platforms.  Produce all documents, computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted.  Produce all voicemail messages, audio files, all e-mail messages including without limitation web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations.

4.    Produce all "metadata" which includes but is not limited to all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business.

5.    Produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same

manner as the original. Identical copies of documents stored in distinct locations should be produced. Multiple versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document are separate documents within the meaning of this instruction.

6.    Documents not otherwise responsive to these Requests should be produced if such documents mention, discuss, refer to, explain or concern one or more documents that are called for by these Requests, if such documents are attached to, enclosed with or accompany documents called for by these Requests or if such documents constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

7.    Documents attached to each other should not be separated; separate documents should not be attached to each other.

8.    Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents. Include all related content including but not limited to attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc.

9.    If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

10.     You should produce the original of each document requested. If the original of a document cannot be located or it is unreasonable to produce the original, a fair and accurate copy should be produced in lieu thereof.

11.     With respect to each document to which an objection as to production is made, state the following:

     (a)    Nature of the document;

     (b)    Date of the document;

     (c)    Name and title of the person(s) to whom the document was addressed and copied;

     (d)    Name and title of the person(s) who prepared and/or sent the document;

     (e)    General subject matter of the document;

     (f)    All documents referred to or accompanying such documents;

     (g)    Number of pages in the document; and

     (h)    Specific ground on which the objection is made.

12.     No part of any request shall be left unanswered merely because an objection has been interposed to another part of the request.

13.     If an objection is made to any request or part thereof under the Federal Rules of Bankruptcy Procedure 7034, the objection shall state with specificity all grounds for that objection.

14.     If a request is objected to as unduly burdensome, you shall (i) indicate the nature of the burden involved in providing the response requested; and (ii) set forth a proposal as to a less burden-incurring response that would provide responsive information.

15.     All requests herein incorporate Fed. R. Bankr. P. 7026-7037, Fed. R. Civ. P. 26-37, and Local Civil Rules for the United States Bankruptcy Court Southern District of New York 7026-7037.

16.     To the extent a document sought herein was at one time, but is no longer, in your actual or constructive possession or custody, or subject to your control, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others, and/or (iv) has been otherwise disposed of.  In each instance, identify the document; state the time period during which it was maintained; state the circumstance surrounding authorization for such disposition thereof and the date thereof; identify each person having knowledge of the circumstances of the disposition thereof; and identify each person who had possession, custody, or control of the document, to whom it was available, or who had knowledge of the document and/or the contents thereof.  Documents prepared prior to, but which relate or refer to, the time period covered by these documents are to be identified and produced.

17.     If the response to a Document Request is based upon information and belief, set forth the sources of the information and the grounds of the belief.

18.     All requests herein implicitly seek responses concerning the subject matter of the requests, and each request shall be interpreted so as to encompass the liberal scope of discovery set forth in the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, and you are expected to provide any supplementary answers, immediately, in compliance with Fed. R. Bankr. P. 7026.

19.    If a document requested has already been produced in paper format for the Securities Exchange Commission under the series GCC-SEC 0000001 – 260255, or has already been produced for the New York Attorney General in paper format under the series GCC-NYAG 0000960 – 276295, it does not need to be produced again unless it exists in an electronic version, in which case you are to produce the electronic version.

20.    To the extent that any Defendant may have documents concerning the other Defendants that are responsive to any discovery below, Defendant is to produce those documents.

## MANNER OF PRODUCTION

1.    All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the requesting party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2.    All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3.    Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including without limitation Microsoft

Exchange™, Outlook™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, or in the alternative, in readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.      Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Examples of acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.      Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall be produced as those files were stored in the ordinary course of business.

6.      Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to how the images relate to one another (as to document and attachment boundaries, folder

boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that is reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents concerning Defendants' bank accounts or brokerage accounts regardless of which institution the account is maintained in, including operating accounts, accounts holding Defendants' money, and accounts maintained by Defendants for any other purpose and including monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, account closing documents and account background.

**RESPONSE:**

2.    All organizational documents of (i) Defendants, (ii) of any other fund that is affiliated with, or otherwise related to Defendants through common or affiliated management or otherwise, and (iii) any Management Entity of Defendants or of any other fund described in

clause (ii) of this item, including but not limited to articles of incorporation, limited or general

partnership agreements, subscription agreements, limited liability company or trust

agreements, memoranda of association and articles of association or any document with an

equivalent function, in each as originally constituted and as amended or otherwise modified

through the date of your response.

**RESPONSE:**

3.      All prospectuses, offering memoranda, private placement memoranda or other

similar offering or presentation material, including but not limited to term sheets, brochures,

power point presentations and marketing or executive summaries, provided to Defendants'

Clients or prospective Clients.

**RESPONSE:**

4.      All pitch books, advertisements, website information on services or

investments, one-on-one presentations, pamphlets, brochures, performance records, and any

other promotional and/or marketing materials furnished to existing and/or prospective Clients

for each investment strategy or mandate using or permitting an investment through BLMIS.

**RESPONSE:**

5.      All investment advisory or management contracts or similar agreements provided to Defendants' Clients or prospective Clients or which govern the provision of services by a Management Entity to Defendants or any affiliated or related fund.

**RESPONSE:**

6.      All account opening documents provided to Defendants' Clients or prospective Clients.

**RESPONSE:**

7.      All disclosures provided to prospective or existing Defendants' Clients concerning Defendants' investment strategies or performance or that of Defendants' Management Entities not encompassed within Request No. 4 above.

**RESPONSE:**

8.      All documents concerning the due diligence process used by Defendants to oversee investments of sub-advisers or unaffiliated managers used by Defendants.

**RESPONSE:**

9.    Documents sufficient to identify all of Defendants' Clients and individuals associated with the Defendants' Clients during the Relevant Period, including their names and addresses, and information sufficient to identify which of Defendants' related entities each Client maintained a relationship with or was an investor in, and when.

**RESPONSE:**

10.    A copy of Defendants' financial statements, including but not limited to audited annual statements, unaudited quarterly and other interim statements, including all related footnotes, schedules and exhibits.

**RESPONSE:**

11.    All documents concerning Defendants' selection of BLMIS as an asset manager for Defendants.

**RESPONSE:**

12.    All agreements, account opening documentation, offering documents or other legal documents executed between Defendants and BLMIS, including but not limited to sub-

advisory and/or solicitation agreements, investment contracts, subscription agreements and limited partnership agreements.

**RESPONSE:**

13.     Records of all services provided to Defendants, directly or indirectly, by BLMIS, and records of all services provided to BLMIS, directly or indirectly, by Defendants.

**RESPONSE:**

14.     All documents concerning any and all investments made by Defendants and/or Defendants' Clients and/or on behalf of Defendants' Clients through BLMIS, by account and name of Defendants or Defendants' Clients.

**RESPONSE:**

15.     All tax returns prepared for Defendants whether filed, unfiled or in draft form, and all supporting schedules and workpapers, journal entries and trial balances.

**RESPONSE:**

16.    All documents concerning communications between Defendants and BLMIS or
BLMIS Affiliates.

**RESPONSE:**

17.    All documents concerning meetings between Defendants and Madoff or any
employee of BLMIS, including, but not limited to, meetings during which other persons were
also present.

**RESPONSE:**

18.    All documents concerning any refusal by Madoff to personally meet with
Defendants or any of Defendants' Clients regarding their BLMIS account(s) or investments
made through BLMIS.

**RESPONSE:**

19.    All documents concerning any instructions given to Defendants or Defendants'
Clients not to contact Madoff or BLMIS.

**RESPONSE:**

20.    All documents that reflect Defendants' official names, the types of entities they are, the dates on which they were established as that type of entity, the state or country under whose laws the entity was formed, their business addresses, their principal places of business, and the names and addresses of their registered agents in the State of New York.

**RESPONSE:**

21.    All documents that identify each account any Defendant ever held with BLMIS, including, but not limited to, the date the account was opened, the person or persons who opened the account, the persons affiliated with BLMIS involved in opening the account, and the size of the initial deposit.

**RESPONSE:**

22.    All documents concerning Merkin's position as a general partner of Ascot and/or Gabriel.

**RESPONSE:**

23.    All documents concerning Merkin's ability to control and direct the affairs of the Defendant Funds.

**RESPONSE:**

24.    All documents concerning Merkin's social or personal relationship with Madoff.

**RESPONSE:**

25.    All documents concerning any Preference Period Transfer.

**RESPONSE:**

26.    All documents concerning BLMIS's or BLMIS Affiliates' financial condition, solvency, or ability to timely pay its debts during the Applicable Period.

**RESPONSE:**

27.    All documents concerning any actual or proposed requests for redemption or withdrawal by Defendants from any account held by, or managed by, BLMIS or BLMIS Affiliates during the Applicable Period, and/or all documents evidencing the terms of payment of each request and the date BLMIS or BLMIS Affiliates made payment(s) on each request.

**RESPONSE:**

28.    All documents concerning the means and terms of payment of any redemption or withdrawal by Defendants from any account held by, or managed by, BLMIS or BLMIS Affiliates.

**RESPONSE:**

29.    All documents concerning transfers by Defendants to BLMIS or BLMIS Affiliates, or transfers by BLMIS or BLMIS Affiliates to Defendants during the Applicable Period.

**RESPONSE:**

30.    All documents concerning how Defendants used, disbursed, or further transferred any Preference Period Transfer.

**RESPONSE:**

31.    All documents concerning how Defendants used, disbursed, or further transferred any Two Year Transfer.

**RESPONSE:**

32.    All documents concerning how Defendants used, disbursed, or further transferred any Six Year Transfer.

**RESPONSE:**

33.    All documents concerning any actual or proposed withdrawal of funds, or redemptions of shares or partnerships interests, by one of Defendants' investors, partners, customers, or clients during the Applicable Period.

**RESPONSE:**

34.    All documents concerning Defendants' bank accounts or brokerage accounts in which any funds or other consideration was received and/or transferred from and/or provided by BLMIS, regardless of in which institution the account is maintained, including, without limitation, operating accounts, accounts holding Defendants' Clients' money or securities, and accounts maintained by Defendants for any other purpose. This request shall include any and all monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, account closing documents and account background.

**RESPONSE:**

35.    All documents concerning any assertion by Defendants that any Preference Period Transfer was made in payment of a debt incurred by BLMIS in the ordinary course of business or financial affairs of BLMIS and Defendants, within the meaning of 11 U.S.C. § 547(c).

**RESPONSE:**

36.    All documents concerning any assertion by Defendants that any Preference Period Transfer was made in the ordinary course of business or financial affairs of BLMIS and Defendants, within the meaning of 11 U.S.C. § 547(c).

**RESPONSE:**

37.    All documents concerning any assertion by Defendants that any Preference
Period Transfer was made according to ordinary business terms, within the meaning of 11
U.S.C. § 547(c).

**RESPONSE:**


38.    All documents concerning any assertion by Defendants that Defendants gave
"new value" to BLMIS, within the meaning of 11 U.S.C. § 547(c).

**RESPONSE:**


39.    All documents that reflect each Transfer, including, but not limited to, the date
of the Transfer, the amount of the Transfer, the account name and account number for the
account the funds were transferred from, the account name and account number for the
account the funds were transferred to, the method of transfer (wire, check, etc.), and the reason
for the Transfer.

**RESPONSE:**


40.    All documents that reflect each Subsequent Transfer, including, but not limited
to, the date of the Subsequent Transfer, the amount of the Subsequent Transfer, the account
name and account number for the account the funds were transferred from, the account name

25

and account number for the account the funds were transferred to, the method of transfer

(wire, check, etc.), and the reason for the Subsequent Transfer.

**RESPONSE:**


41.     All documents that reflect each instance in which any Defendant transferred

money to BLMIS, including, but not limited to, the date of the Transfer, the amount of the

Transfer, the account name and account number for the account the funds were transferred

from, the account name and account number for the account the funds were transferred to, the

method of transfer (wire, check, etc.), and the reason for the Transfer.

**RESPONSE:**


42.     All documents relating to Defendants' due diligence (whether by itself or

through third parties) of BLMIS or BLMIS Affiliates, including the dates and results of on-site

visits, the names/titles of individuals who made the on-site visits; verification of compliance

procedures; review of custody arrangements, prime brokerage agreements between BLMIS or

BLMIS Affiliates and any entity, DVP/RVP agreements, side letters; determinations of the

identity of auditor(s), reasons for any change in auditor, confirmation letters received from

auditors; review of audited and/or unaudited financial statements; determination of the identity

of BLMIS or BLMIS Affiliates legal counsel, identity of any third party service provider; and

documents describing BLMIS's or BLMIS Affiliates' management structure including any

description of how much time  Madoff devotes or devoted to the investment advisory

business.

**RESPONSE:**


43.    All documents concerning any communication between Defendants and any

other person concerning BLMIS or BLMIS Affiliates.

**RESPONSE:**


44.    All documents concerning any potential illegality in the operations of BLMIS

or BLMIS's Affiliates.

**RESPONSE:**


45.    All documents concerning the feasibility of BLMIS's or BLMIS Affiliates'

returns on investments, including the consistency of returns or volatility of returns.

**RESPONSE:**


46.    All documents concerning any account ever maintained by any Defendant with

BLMIS or BLMIS Affiliates.

**RESPONSE:**

47.    All documents concerning any communication between Defendants and any other person concerning any of BLMIS's or BLMIS Affiliates' accountants, auditors, accounting firms, or auditing firms, including, but not limited, to David G. Friehling or Friehling & Horowitz, CPAs, P.C.

**RESPONSE:**

48.    All documents concerning any of BLMIS's or BLMIS Affiliates' accountants, auditors, accounting firms, or auditing firms, including, but not limited to, David G. Friehling or Friehling & Horowitz, CPAs, P.C.

**RESPONSE:**

49.    All documents concerning any comparison between the performance of accounts  with, or managed by, BLMIS or BLMIS Affiliates, on behalf of Defendants and the performance of accounts with, or managed by, BLMIS or BLMIS Affiliates for any other person.

**RESPONSE:**

50.    All documents concerning any comparison between the performance of accounts with, or managed by, BLMIS or BLMIS Affiliates, on behalf of Defendants and the

performance Defendants obtained from other investments not managed by BLMIS or BLMIS Affiliates.

**RESPONSE:**

51.    All documents concerning the investment decisions of the Defendants during the Applicable Period.

**RESPONSE:**

52.    All documents concerning the delegation of investment decisions of Defendants to BLMIS, BLMIS's Affiliates, or any other entity during the Applicable Period.

**RESPONSE:**

53.    All documents concerning any decision not to inform Defendants' Clients that BLMIS managed any funds or accounts on behalf of Defendants, including any instructions concerning the issue from BLMIS or BLMIS Affiliates.

**RESPONSE:**

54.    All documents concerning the investment strategies of Defendants, including but not limited to options arbitrage, during the Applicable Period.

**RESPONSE:**


55.     All documents and communications concerning BLMIS's investment strategy
and performance.

**RESPONSE:**


56.     All documents concerning the consistency of returns purportedly achieved by
BLMIS or BLMIS's Affiliates during the Applicable Period.

**RESPONSE:**


57.     All documents concerning any knowledge by Defendants that BLMIS self-
cleared trades.

**RESPONSE:**


58.     All documents concerning the liquidity of assets under the control of BLMIS or
BLMIS Affiliates during the Applicable Period.

**RESPONSE:**

59.    All documents concerning the volume of assets managed by BLMIS or BLMIS
Affiliates during the Applicable Period.

**RESPONSE:**

60.    All documents concerning any and all management fees, administrative fees, or
performance fees paid to any person or entity, including Merkin and GCC, on account of any
monies invested by or through Defendants in an account with, or managed through, BLMIS or
BLMIS Affiliates.

**RESPONSE:**

61.    All documents concerning the delegation of authority by the Defendants
concerning investing their assets.

**RESPONSE:**

62.    All documents concerning the authority of the board of directors of any of the
Defendants to determine where assets should be invested.

**RESPONSE:**

63.    All documents concerning any direction ever given by the board of directors of any Defendant concerning where assets should be invested.

**RESPONSE:**

64.    All documents concerning BDO Seidman, LLP, BDO Binder, BDO Tortuga, or any of their affiliates.

**RESPONSE:**

65.    All communications between Defendants and BDO Seidman, LLP, BDO Binder, BDO Tortuga, or any of their affiliates.

**RESPONSE:**

66.    All documents concerning the deferment of any and all management fees, administrative fees, or performance fees paid to any person, or entity, including Merkin and GCC, as a result of any monies invested by or through Defendants in an account with, or managed through, BLMIS or BLMIS Affiliates.

**RESPONSE:**

67.    All documents concerning any investigation of BLMIS or BLMIS Affiliates by any government agency or official, including, but not limited to, the Securities and Exchange Commission, the Financial Industry Regulatory Authority, and the National Association of Securities Dealers.

**RESPONSE:**


68.    All documents concerning any communication between Defendants and any government agency or official, including, but not limited to, the Securities and Exchange Commission, the Financial Industry Regulatory Authority, or the National Association of Securities Dealers, concerning BLMIS or BLMIS Affiliates.

**RESPONSE:**


69.    All documents concerning BLMIS's Form 13F filings with the Securities and Exchange Commission.

**RESPONSE:**


70.    All documents concerning the article in the May 7, 2001 issue of *Barron's*, entitled "Don't Ask, Don't Tell:  Bernie Madoff is so secretive, he even asks investors to keep mum."

**RESPONSE:**

71.    All documents concerning the article in the December 16, 1992 issue of the

*Wall Street Journal*, entitled, "Wall Street Mystery Features a Big Board Rival."

**RESPONSE:**


72.    All documents concerning the May 2001 MAR/Hedge newsletter entitled,

"Madoff Tops Charts; Skeptics Ask How."

**RESPONSE:**


73.    All documents concerning any inquiry received by Defendants from any other

person or entity concerning BLMIS or BLMIS's Affiliates.

**RESPONSE:**


74.    All documents concerning any due diligence on BLMIS or BLMIS Affiliates

performed by Société Génerale, Goldman Sachs, Citigroup, Morgan Stanley, Merrill Lynch,

Credit Suisse or any other person or entity not affiliated with Defendants.

**RESPONSE:**

75.    All documents concerning Defendants' standard policies and procedures for conducting due diligence on potential investments.

**RESPONSE:**

76.    All documents concerning any inquiry, investigation or due diligence conducted by Defendants on any investment or potential investment in an entity other than BLMIS or BLMIS's Affiliates.

**RESPONSE:**

77.    All documents concerning any opinions, research, advice, or warnings concerning investments with BLMIS or BLMIS Affiliates, or any fund with accounts with, or managed by, BLMIS or BLMIS Affiliates, from any person, including, but not limited to, Credit Suisse, Aksia, LLC, Albourne Partners, Acorn Partners, Simon Fludgate, Simon Ruddick, or Robert Rosenkranz, James Hedges, Laura Goldman, Howard Wohl, Lawrence Simon, or Ivy Asset Management.

**RESPONSE:**

78.    All documents concerning any communication with Victor Teicher about BLMIS or BLMIS's Affiliates.

**RESPONSE:**

35

79.    All documents concerning any communication with Andrew Gordon about BLMIS or BLMIS's Affiliates.

**RESPONSE:**


80.    All documents concerning any communication between Defendants and UBP about BLMIS or BLMIS's Affiliates.

**RESPONSE:**


81.    All documents concerning any arbitration proceedings or litigation involving the Defendants and concerning investments made by or through Defendants with BLMIS or BLMIS Affiliates, including any deposition transcripts (including exhibits), hearing transcripts, witness statements taken or given by Defendants or produced in discovery, and final rulings or judgments and including the arbitration proceedings involving Noel M. Wiederhorn, MD and the Defendants or involving the Sandalwood Debt Funds and the Defendants.

**RESPONSE:**


82.    All documents concerning the commission or fee structure under which BLMIS was compensated for managing monies entrusted to it by the Defendants.

**RESPONSE:**

83.    All documents concerning the Defendants' knowledge of the total volume of options in existence for the options that BLMIS purported to have purchased on Defendants' behalf.

**RESPONSE:**

84.    All documents concerning any counterparties involved in the options that BLMIS purported to have purchased on Defendants' behalf.

**RESPONSE:**

85.    All documents concerning BLMIS's purported practice of placing from time to time all of the assets entrusted to him by the Defendants into United States Treasuries.

**RESPONSE:**

86.    All documents concerning any attempt made by Defendants or any third party to duplicate, simulate, or replicate the purported investment strategy employed by BLMIS.

**RESPONSE:**

87.    All documents concerning Defendants' knowledge of BLMIS's purported ability to market time or of BLMIS's purported use of market timing strategies in carrying out his investment strategy on behalf of Defendants.

**RESPONSE:**

88.    All documents concerning Defendants' knowledge of the person(s) who purportedly aided BLMIS in carrying out its investment strategy on behalf of Defendants.

**RESPONSE:**

89.    All documents concerning the conversation between Madoff and Merkin, as transcribed within documents produced to the New York Attorney General and bearing the bates numbers GCC-NYAG 0052308 through 0052317.

**RESPONSE:**

90.    All documents concerning the investment of funds for Yeshiva University.

**RESPONSE:**

91.    All documents concerning the Gift of Life Foundation.

**RESPONSE:**

92.    All documents concerning the Picower Foundation, Jeffry Picower, or Barbara Picower.

**RESPONSE:**

93.    All documents concerning Ruth Madoff or the Alpern family.

**RESPONSE:**

94.    All documents concerning investments by Hermann Merkin with Madoff, BLMIS or BLMIS Affiliates.

**RESPONSE:**

95.    All documents concerning any interactions or relationships between Hermann Merkin and Madoff.

**RESPONSE:**

96.    All documents concerning the investment firm Avellino and Bienes, or the

principals of said firm, Michael Bienes and Frank Avellino.

**RESPONSE:**


97.    All documents concerning Eric Dillon or Silver Creek Investments.

**RESPONSE:**


98.    All documents concerning Ben Heller.

**RESPONSE:**


99.    All documents concerning Leon Levy.

**RESPONSE:**


100.    All documents concerning Jack Nash.

**RESPONSE:**


101.    All documents concerning Joshua Nash.

**RESPONSE:**

102.    All documents concerning Roman Igolnikov.

**RESPONSE:**

103.    All documents concerning Mark Kenyon.

**RESPONSE:**

104.    All documents concerning Noel Levine.

**RESPONSE:**

105.    All documents concerning Leon Meyers.

**RESPONSE:**

106.    All documents concerning Ralph Sinsheimer.

**RESPONSE:**

107.    All documents concerning Victor Teicher.

**RESPONSE:**

41

108.    All documents concerning Burton Weinstein.

**RESPONSE:**


109.    All documents concerning Mortimer Zuckerman.

**RESPONSE:**


110.    All documents concerning Richard Hirsch.

**RESPONSE:**


111.    All documents concerning Noel Weiderhorn.

**RESPONSE:**


112.    All documents concerning Peter Stamos.

**RESPONSE:**


113.    All documents concerning Sonja Kohn or Bank Medici.

**RESPONSE:**

114.    All documents concerning Fairfield Greenwich Group or any of its principals or employees.

**RESPONSE:**

115.    All documents concerning Tremont Group Holdings or any of its principals or employees.

**RESPONSE:**

116.    All documents concerning Patrick Littaye or Access International Advisors.

**RESPONSE:**

117.    All documents concerning Stephan Feinberg and BLMIS or Madoff.

**RESPONSE:**

118.    All documents concerning Joel or Sanford Ehrenkranz.

**RESPONSE:**

43

119.    All documents concerning Laura Goldman or LSG Capital.

**RESPONSE:**


120.    All documents concerning Daniel Gottlieb or the Howard Gottlieb Family Foundation.

**RESPONSE:**


121.    All documents concerning Harry Markopoulos.

**RESPONSE:**


122.    All documents concerning Howard Wohl, Lawrence Simon, or Ivy Asset Management.

**RESPONSE:**


123.    All documents concerning John (Launny) Steffens, Jason Lee Orchard, Greg Ho or Spring Mountain Capital.

**RESPONSE:**

124.    All documents concerning the affirmative defenses asserted in the Answers to the Complaint.

**RESPONSE:**

125.    All reports, summaries, or other documents prepared, reviewed, or relied upon by Defendants in connection with the defense of the claims asserted in the Complaint.

**RESPONSE:**

126.    All documents Defendants reviewed or consulted in preparing responses to the Requests for Admission set forth below.

**RESPONSE:**

127.    All documents Defendants reviewed or consulted in preparing answers to the Interrogatories set forth below.

**RESPONSE:**

128.    All documents concerning any facts set forth in Defendants' responses to the Interrogatories set forth below.

**RESPONSE:**


129.    To the extent not called for in other document requests, all documents concerning communications concerning Madoff or BLMIS or BLMIS Affiliates.

**RESPONSE:**


130.    To the extent not called for in other document requests, all documents concerning Madoff or BLMIS or BLMIS Affiliates.

**RESPONSE:**


131.    To the extent not called for in other document requests, all documents concerning the Defendants' accounts and/or the nominee or beneficial owners of those accounts.

**RESPONSE:**


132.    To the extent not previously requested, all documents identified in the Defendants' Initial Disclosures.

**RESPONSE:**

133.    To the extent not previously requested, all documents in the Defendants'
possession that are in a category identified in the Defendants' Initial Disclosures.

**RESPONSE:**


134.    All documents concerning the Microsoft Quickbooks database utilized by
Defendants, including the database itself as presently constituted and as constituted in
Defendants' previous production to the plaintiff in the action *New York University v. Ariel, et
al.,* 08-dv-603803.

**RESPONSE:**


135.    All documents concerning any Beth Din proceedings involving Defendants.

**RESPONSE:**


136.    All documents concerning any allegations of fraud against any investment
advisor including but not limited to Bayou Group and Lancelot Investment Management.

**RESPONSE:**

137.    All documents received by Defendants in connection with any legal proceedings relating to BLMIS or BLMIS's Affiliates.

**RESPONSE:**

138.    All documents concerning Defendants' affirmative defenses of laches, waiver, estoppel, judicial estoppel, or unclean hands.

**RESPONSE:**

139.    All documents concerning any activities of governmental and regulatory bodies with respect to Madoff, BLMIS or BLMIS Affiliates that were known by Defendants prior to the Filing Date.

**RESPONSE:**

140.    All documents concerning Defendants' affirmative defenses of good faith.

**RESPONSE:**

141.    All documents concerning Defendants' affirmative defenses of *in pari delicto*.

**RESPONSE:**

142.    All documents concerning Defendants' affirmative defenses that the Transfers to Defendants by BLMIS were made for the benefit of a redemption request by one or more investor(s) in the Defendant Funds.

**RESPONSE:**

143.    All documents concerning Defendants' affirmative defenses that the Transfers to Defendants by BLMIS were made for the benefit of a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency.

**RESPONSE:**

## INSTRUCTIONS FOR INTERROGATORIES

1.    If a response to an Interrogatory is based upon information and belief, set forth the source of the information and the grounds for the belief.

2.    If you claim any ambiguity in an Interrogatory, or in the related definition or instruction, you must respond to the Interrogatory and set forth your interpretation of the claimed ambiguous language.

3.    If you refuse to provide a response to an Interrogatory due to an assertion of attorney-client privilege, the work product doctrine or any other privilege, you response

should include a statement of the basis for the claim sufficient for the Trustee to evaluate the claimed privilege or protection.

4.  If you cannot provide a complete answer to a particular Interrogatory, the Interrogatory should be answered to the extent possible and an explanation should be provided as to why only a partial answer is given.

5.  If you discover that a response is incomplete or incorrect, you must, in a timely manner, supplement or correct such response in accordance with Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 26(e) of the Federal Rules of Civil Procedure.

6.  "Identify" and "identity" shall have the same meanings as in Definitions Nos. 17, 18 and 19 above.


## INTERROGATORIES

1.  Identify each person who was involved in answering these discovery requests and explain each person's role in answering these discovery requests.

**ANSWER:**



2.  Provide the name, last known address, position(s), duties, and dates of employment for any and all employees of Defendants during the Applicable Period.

**ANSWER:**

3.    Identify all person(s) with knowledge of the Transfers or the Subsequent
Transfers and the transactions relating thereto.

**ANSWER:**

4.    Identify each person ever employed by or associated with Defendants who has
given a statement or a deposition in any litigation or arbitration concerning Defendants'
investments with BLMIS, specifying the matter in which the statement or deposition was
given.

**ANSWER:**

5.    Identify each person who conducted or assisted in conducting any investigation
or due diligence on BLMIS or BLMIS's Affiliates or any other entity on behalf of Defendants.

**ANSWER:**

6.    Identify all persons present at any meeting attended by Defendants where either
Madoff or Frank DiPascali was also present.

**ANSWER:**

7.    Identify each person involved in the preservation or retention of Defendants'
records, including electronic records, since December 2008, specifying the role he played.

**ANSWER:**

8.    Identify the location and custodian of each computer (or other device upon
which electronic information has been stored) utilized by Defendants to communicate
concerning BLMIS or BLMIS's Affiliates, or to store information concerning Defendants'
investments with BLMIS or BLMIS's Affiliates.

**ANSWER:**

9.    If your response to any of the Requests for Admission below is anything other
than an unqualified admission, specify those persons who have knowledge of the facts upon
which you base your refusal to admit and identify all documents upon which you base your
refusal to admit.

**ANSWER:**

## REQUESTS FOR ADMISSION

1.    Admit that, with regard to BLMIS, the filing date under SIPA § 78*lll*(7)(B) is
December 11, 2008.

**RESPONSE:**

2.      Admit that each Preference Period Transfer listed on Exhibit B to the

Complaint constitutes a transfer of interest of BLMIS in property within the meaning of

section 101(54) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

**RESPONSE:**

3.      Admit that each Preference Period Transfer was to or for the benefit of

Defendant Ascot.

**RESPONSE:**

4.      Admit that each Preference Period Transfer was made while BLMIS was

insolvent.

**RESPONSE:**

5.      Admit that Defendants did not, prior to the Filing Date, routinely review

account statements and/or trade confirmations from BLMIS to ensure the trades listed on the

statements and/or confirmations were exercised at prices that were within the daily price range

for such securities traded in the market on the date listed on the account statements and/or

trade confirmations.

**RESPONSE:**


6.      Admit that Defendants did not, prior to the Filing Date, routinely review account statements and/or trade confirmations from BLMIS to ensure the trades listed on the statements and/or confirmations were exercised on dates when the market was operating.

**RESPONSE:**


7.      Admit that Defendants did not, prior to the Filing Date, routinely review account statements and/or trade confirmations from BLMIS to ensure the volume of trades listed on the account statements and/or trade confirmations for any particular security was reasonable based on the volume of trades in that security made by the entire market on a particular date.

**RESPONSE:**


8.      Admit that Defendants did not, prior to the Filing Date, routinely review account statements and/or trade confirmations from BLMIS to ensure the volume of options traded for any particular security listed on the account statements and/or trade confirmations was not greater than the volume of options traded for that particular security by the entire options market on the same date.

**RESPONSE:**

9.      Admit that neither Defendants, nor any other person retained by Defendants, conducted an audit of BLMIS prior to the Filing Date.

**RESPONSE:**


10.     Admit that Defendants did not, prior to the Filing Date, match any trade confirmations provided by BLMIS with actual trades executed through any domestic or foreign public exchange.

**RESPONSE:**


11.     Admit that Defendants did not, prior to the Filing Date, take any action to determine whether the accounting firm of Friehling & Horowitz had been subject to peer review by the American Institute of Certified Public Accountants at any time after 1993.

**RESPONSE:**


12.     Admit that Defendants did not, prior to the Filing Date, take any action to determine whether the actual volume of options trades on any specific day during the Applicable Period was sufficient to allow BLMIS to execute its strategy.

**RESPONSE:**

13.    Admit that BLMIS never permitted Defendants to have real-time electronic access to BLMIS's trades of securities on behalf of the Defendants.

**RESPONSE:**

14.    Admit that BLMIS routinely sent Defendants paper trade confirmations via United States mail.

**RESPONSE:**

15.    Admit that BLMIS told Defendants that BLMIS utilized an automated order and execution process for the split-strike strategy.

**RESPONSE:**

16.    Admit that Defendants typically did not receive trade confirmations from BLMIS until three to five days after a trade had been entered.

**RESPONSE:**

17.     Admit that the trade confirmations Defendants received from BLMIS did not contain the prices at which a security was bought or sold, but rather contained weighted average prices of a group of securities supposedly bought and sold during the day.

**RESPONSE:**

18.     Admit that, prior to the Filing Date, Defendants never reviewed BLMIS's Form 13F filings.

**RESPONSE:**

19.     Admit that at all times between December 11, 2002 and the date receivers for the Defendants Ariel, Gabriel and Ascot were appointed, Merkin had ultimate responsibility for the investment decisions made by Ariel, Gabriel and Ascot.

**RESPONSE:**

20.     Admit that at all times during the Applicable Period, Merkin had ultimate responsibility for the investment decisions made by Ariel, Gabriel and Ascot.

**RESPONSE:**

Date: January 14, 2011                          Respectfully submitted,


                                                ___/s/ Marc E. Hirshfield_____
Of Counsel:                                     Baker & Hostetler LLP
                                                45 Rockefeller Plaza
Louis A. Colombo                                New York, New York 10111
Joseph F. Hutchinson, Jr.                       Telephone: (212) 589-4200
Kelly S. Burgan                                 Facsimile: (212) 589-4201
David E. Kitchen                                David J. Sheehan
Baker & Hostetler LLP                           Email: dsheehan@bakerlaw.com
1900 East Ninth Street, Suite 3200              Marc E. Hirschfield
Cleveland, Ohio  44114-3485                     Email: mhirschfield@bakerlaw.com
Telephone: (216) 632-0200
Facsimile: (216) 696-0740                        *Attorneys for Irving H. Picard, Esq.,*
Louis A. Colombo                                 *Trustee for the SIPA Liquidation of Bernard L.*
Email: lcolombo@bakerlaw.com                     *Madoff Investment Securities LLC*
Joseph F. Hutchinson, Jr.
Email: jhutchinson@bakerlaw.com
Kelly S. Burgan
Email: kburgan@bakerlaw.com
David E. Kitchen
Email: dkitchen@bakerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 14th day of

January, 2011 by electronic mail upon the following:

<u>Counsel to Defendants J. Ezra Merkin and Gabriel Capital Corporation</u>
Neil A. Steiner, Esq.
Andrew J. Levander, Esq.
Jonathan D. Perry, Esq.
Gary J. Mennit, Esq.
Steven A. Engel, Esq.
Dechert LLP
Email: <u>neil.steiner@dechert.com</u>
Email: <u>Andrew.levander@dechert.com</u>
Email: <u>jonathan.perry@dechert.com</u>
Email: <u>gary.mennitt@dechert.com</u>
Email: <u>steven.engel@dechert.com</u>

<u>Counsel to Gabriel Capital, L.P. and Ariel Fund Limited</u>
Howard Schiffman, Esq.
Eric Bensky, Esq.
Schulte Roth & Zabel LLP
Email: <u>howard.schiffman@srz.com</u>
Email: <u>eric.bensky@srz.com</u>

<u>Counsel to Bart M. Schwartz, Receiver of Gabriel Capital, L.P. and Ariel Fund Limited</u>
Lance Gotthoffer, Esq.
James C. McCarrroll, Esq.
Reed Smith LLP
Email: <u>lgotthoffer@reedsmith.com</u>
Email: <u>mccarroll@reedsmith.com</u>

<u>Counsel to Ascot Partners, L.P. and David B. Pitofsky, Receiver for Ascot Partners, L.P.</u>
Matthew T. Tulchin, Esq.
David Pitofsky, Esq.
Goodwin Procter
Email: <u>mtulchin@goodwinprocter.com</u>
Email: <u>dpitofsky@goodwinprocter.com</u>

_/s/ David E. Kitchen_
*An Attorney for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Bernard L. Madoff*