# EXHIBIT 19

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 09-01182 (BRL) |
| Plaintiff, | |
| v. | |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**TRUSTEE'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS J. EZRA MERKIN AND GABRIEL CAPITAL CORPORATION**

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 34 of the Federal Rules of

Civil Procedure (the "Federal Rules"), made applicable to this adversary proceeding pursuant to

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Civil Rules of

1

the United States District Court for the Southern District of New York and this Court (the "Local Rules"), Irving H. Picard, Trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") pursuant to the Securities Investment Protection Act ("SIPA"), and the estate of Bernard L. Madoff, hereby requests that Defendants J. Ezra Merkin and Gabriel Capital Corporation ("Merkin" and "GCC" or "Defendants") produce Documents responsive to the document requests set forth herein, and deliver the same to the office of Baker Hostetler LLP, c/o Edward J. Jacobs, Esq., 45 Rockefeller Plaza, New York, New York 10111 within 30 days hereof.

## DEFINITIONS

1. The rules of construction and definitions in Local Rule 26.3, as adopted in Rule 7026-1 of the Bankruptcy Rules, are hereby incorporated by reference. All defined terms, including those defined in Local Rule 26.3, are capitalized herein.

2. "Account" means the BLMIS Account(s) set forth on Exhibit A to the Complaint and/or any other BLMIS account in which any Defendant has or had any interest in any capacity, whether individually or as a fiduciary and whether directly or indirectly.

3. "Applicable Period" means the period between and including the date on which the Defendant first opened an account with, or managed by, the Debtor, through the present.

4. "Ariel" means Ariel Fund, Ltd.

5. "Ascot" means Ascot Partners, L.P. and/or Ascot Fund, Ltd.

6. "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd. ("MSIL"), Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries,

2

predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

7. "Complaint" means the complaint filed by the Trustee in this adversary proceeding.

8. "Defendant(s)" means and includes each or all defendants in this action, as well as any group of two or more defendants, including Merkin, Gabriel, Ariel, Ascot, and GCC, and any of their officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

9. "Defendant Funds" means Gabriel, Ariel, and Ascot.

10. "Gabriel" means Gabriel Capital, L.P.

11. "GCC" means Gabriel Capital Corporation.

12. "Merkin" means J. Ezra Merkin.

13. "Net Asset Value" means gross assets less gross liabilities attributable to a class or series of shares of any of the Defendants Funds as of a particular date of determination.

14. "NYAG" means the New York State Attorney General.

15. "NYAG Action" means them matter of *The People of the State of New York v. J. Ezra Merkin, et al.*, Index No. 450879/2009.

16. "NYAG Settlement" means the settlement, which was announced on June 25, 2012 by the NYAG, in the NYAG Action.

17. "Subsequent Transfer" means any Transfer of Customer Property (as defined by SIPA §78*lll*(4)) conveyed, transmitted, paid and/or remitted by any Defendant to another person, or any Transfer of Customer Property conveyed to another person or entity prior to being transferred to any Defendant.

3

18.     "Transfer(s)" means any conveyance, transmittal, disposition, remittance, payment or payments made by BLMIS during the Applicable Period to, or on behalf of, any Defendant, including, but not limited to, any cash, funds, property, or other value conveyed by check, wire transfer, debit, credit to an account, the return of property, withdrawal from the Account, or by any other manner as set forth under section 101(54) of the Bankruptcy Code or section 270 of the New York Debtor & Creditor Law. *See* 11 U.S.C. § 101(54); N.Y. DEBT. & CRED. Law § 270.  "Transfer" also includes, but is not limited to, payments or conveyances of value by BLMIS to any third parties, including intermediaries, for the benefit of Defendants.

19.     "You" or "Your" means and includes Merkin or GCC in any capacity or anyone acting on Merkin or GCC's behalf, including any predecessor-in-interest.

20.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the request for Documents.

21.     Reference to any Person that is not a natural Person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

## **INSTRUCTIONS**

Federal Rules 26-37, made applicable to this proceeding pursuant to the Bankruptcy Rules, are hereby incorporated by reference and apply to each of the following instructions:

1.      All Documents shall be identified by the request(s) to which they are primarily responsive or be produced as they are maintained in the usual course of business.

2.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of a

4

current or former employee, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

3. You must produce all Documents in Your custody or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third Party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, and instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing documents, images, databases, digital photocopier memory and any other information stored in memory storage devices.

4. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips,

5

transmittal memoranda or letters, comments, evaluations, or similar materials.

6. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8. If a request calls for information Concerning a Transfer, Subsequent Transfer, redemption, or withdrawal from a BLMIS account, include Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (i.e., wire, check, etc.), date of, amount and the reason for the Transfer, Subsequent Transfer, redemption, or withdrawal.

9. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such request or part thereof, for each such Document:

    a. Identify the type, title and subject matter of the Document;

    b. state the place, date, and manner of preparation of the Document;

    c. Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

    d. Identify the legal privilege(s) and the factual basis for the claim.

10. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 9 above must be provided.

11. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance surrounding authorization for such disposition thereof and the date thereof, Identify each Person having knowledge of the circumstances of the disposition thereof, and Identify each Person who had possession, custody, or control of the Document, to whom it was available or who had knowledge of the Document and/or the contents thereof. Documents prepared prior to, but that relate or refer to, the time period covered by these Document Requests are to be identified and produced.

## MANNER OF PRODUCTION

All documents produced to the Trustee shall be provided in accordance with and pursuant to the Protocol Governing the Production of Records, attached hereto as Schedule A.

## REQUESTS FOR PRODUCTION

1. All documents concerning Raanan Agus and Yeshiva University and/or the Ramaz School.

2. All documents concerning Randy Yanker and Lehman Brothers and/or BLMIS.

3. All documents concerning Maurice Maertens and/or New York University, including, but not limited to, New York University's actual or potential investment with BLMIS and/or the Defendant Funds.

4. All documents concerning New York University Law School, including, but not limited to, New York University Law School's actual or potential investment with BLMIS and/or the Defendant Funds.

7

5.  All documents concerning the Max Planck Endowment Foundation, including, but not limited to, the Max Planck Endowment Foundation's actual or potential investment with BLMIS and/or the Defendant Funds.

6.  All documents concerning Joseph Sprung and/or JBS Financial Services, including, but not limited to, Joseph Sprung and/or JBS Financial Services's actual or potential investment with BLMIS and/or the Defendant Funds.

7.  All documents concerning William Scalzulli and/or Kraft Group, including, but not limited to, Kraft Group's actual or potential investment with BLMIS and/or the Defendant Funds.

8.  All documents concerning Arthur Fried and any actual or potential investment by Avi Chai in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

9.  All documents concerning Arthur Fried and any actual or potential investment by Keren Keshert in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

10. All documents concerning Avi Chai and its actual or potential investment in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

11. All documents concerning Keren Keshert and its actual or potential investment in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

12. All documents concerning Shelby White and any actual or potential investment by the Leon Levy Foundation in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

13. All documents concerning John Bernstein and any actual or potential investment by the Leon Levy Foundation in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

14. All documents concerning the Leon Levy Foundation and its actual or potential investment in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

15. All documents concerning Patrick Erne.

16. All documents concerning Christof Reichmuth.

17. All documents concerning Reichmuth & Co., including, but not limited to, any actual or potential investment by Reichmuth & Co. in a fund owned, managed and/or controlled by Merkin, GCC and/or BLMIS.

18. All documents concerning Union Bancaire Privée.

19. All documents concerning Albourne Partners.

20. All documents concerning Cambridge Associates.

21. All documents concerning Charles Sherman.

22. All documents concerning Brendan McCarthy.

23. All documents concerning Suzanne Kleeblatt.

24. All documents concerning James Mnookin.

25. All documents concerning Concord Management.

26. All documents concerning Michael Matlin.

27. All documents concerning Michael Mahagan.

28. All documents concerning Ryan Gold.

29. All documents concerning Geraldine Fabrikant.

30. All documents concerning Donald Sussman.

31. To the extent not already produced, all documents concerning any arbitration proceeding or litigation involving the Defendants and concerning investments made by or through Defendants with BLMIS, including any pleadings, court filings, deposition transcripts

9

(including exhibits), transcripts, expert reports (including exhibits), witness statements taken or given by Defendants or produced in discovery, and final rulings or judgments.

32. All documents received by Defendants in connection with any legal proceeding or arbitration related to BLMIS.

33. All documents evidencing or reflecting any investor's knowledge of Gabriel, Ariel or Ascot's exposure to BLMIS.

34. All documents evidencing or reflecting any Defendant Fund investor or potential investors who questioned the investment in BLMIS or sought information regarding the investment in BLMIS.

35. All documents concerning any alleged deferred compensation owed to Mr. Merkin by the Defendant Funds.

36. All documents concerning the winding down, after December 11, 2008, of any of the Defendant Funds' assets.

37. All documents concerning any audit or investigation conducted by any Person of any of the Defendants' assets including, but not limited to, any of the underlying documents considered in connection with the NYAG Settlement.

38. All documents detailing and/or verifying Mr. Merkin's assets that were provided by Mr. Merkin to the NYAG.

39. All documents that were considered in preparing any documents provided to the NYAG detailing and/or verifying Mr. Merkin's assets.

40. All investor statements issued by the Defendants to investors of the Defendant Funds.

41. All documents concerning any transfers by and between accounts held by Defendants at BLMIS.

42. All documents concerning any transfers by and between bank accounts held by the Defendant Funds.

43. All documents concerning any loan by and between any Defendant, including, but not limited to, loans reflected in Defendant GCC's Quick Books records.

44. All documents concerning any loan extended to any investors and repayments received by any Defendant, including, but not limited to loans reflected in Defendants' document production to the NYAG.

45. To the extent not already produced, all documents concerning the Net Asset Value of the Defendant Funds.

46. To the extent not produced, all documents supporting and/or negative any claim or defense in the litigation.

Date: New York, New York  
      April 12, 2013

Respectfully submitted,

*/s/ Edward J. Jacobs*  
Baker & Hostetler LLP  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Lan Hoang  
Email: lhoang@bakerlaw.com  
Edward J. Jacobs  
Email: ejacobs@bakerlaw.com  

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 12th day of April, 2013 by electronic mail upon the following:

Counsel to Defendants J. Ezra Merkin and Gabriel Capital Corporation
Neil A. Steiner, Esq.
Kristina Moon, Esq.
Dechert LLP
Email: neil.steiner@dechert.com
Email: kristina.moon@dechert.com

Counsel to Bart M. Schwartz, Receiver of Gabriel Capital, L.P. and Ariel Fund Limited
Casey Laffey, Esq.
Jordan W. Siev, Esq.
Reed Smith LLP
Email: claffey@reedsmith.com
Email: jsiev@reedsmith.com

Counsel to Ascot Partners, L.P. and David B. Pitofsky, Receiver for Ascot Partners, L.P.
Daniel M. Glosband, Esq.
Joseph Schwartz, Esq.
Goodwin Procter LLP
Email: dglosband@goodwinprocter.com
Email: jschwartz@goodwinprocter.com

*/s/ Edward J. Jacobs*_____
*An Attorney for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**Schedule A:  Protocol Governing the Production of Records**

I. <u>Locations of Electronically Stored Information ("ESI")</u>:

A. You shall identify and search the following locations for potentially relevant ESI:

    1. Network Servers

        a. Shared Drives on network servers

        b. Personal Drives on network servers

    2. Computers (including desktops, laptops, home computers)

    3. PDAs (including blackberries, iPhones, other smartphones)

    4. Email (both work and personal) on Email Servers and Computers

        a. Email boxes in their entirety (including, Inboxes, Sent Folders, Subfolders)

        b. Archives

    5. Intranet

    6. Document Management Systems (e.g., iManage, FileSite, Sharepoint)

    7. CDs/DVDs/Flash Drives/External Drives

    8. Voicemail Systems

    9. Copy machines and scanners

    10. Instant Message Programs

II. <u>Location(s) of Hard Copy Records</u>

A. You shall identify and search the following locations for potentially relevant hard copy records.

    1. Employee Offices (including home offices)

    2. On-site Record Storage Facilities

    3. Off-site Record Storage Facilities

III. <u>Backups</u>

A. You shall identify backup programs/software, if any, in use since January 1, 2008. You shall also provide the procedures for backups and whether any backups have been overwritten or restored.  Procedures may include:

i

**Schedule A: Protocol Governing the Production of Records**

1. Who performs the backups?

2. How often is the backup procedure performed?

3. Are full or incremental backups created?

4. How long are backups retained? Is there a backup rotation schedule?

5. What medium is the backup stored on?

6. Where are the backups maintained?

7. Are the backups indexed? Are they searchable?

8. How do You keep track of the existing backups? Are there schedules or a database of existing backups?

9. Have the policy/procedures changed since January 1, 2008?

10. Whether any email server backups have been destroyed or overwritten since January 1, 2008?

11. Whether an employee has ever asked for emails to be restored because they were inadvertently deleted (and if so, whether the emails were restored)?

12. What steps are necessary to restore the email box of a specific employee as of a particular date and time, including costs involved?

IV. Manner of Production Generally

A. All documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("TIFF") as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where documents are produced in TIFF format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("OCR") program in the case of scanned paper documents. Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below. In addition to the fielded data to be provided as set forth below, the ".dat file" shall contain a field identifying if a document has been designated "confidential."

**Schedule A:  Protocol Governing the Production of Records**

V.    Production Formats of Electronic Records

Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or document source information, and searchable text as to allow the Trustee through a reasonable and modest effort, to fairly, accurately and completely access, search and display, comprehend and assess the documents' true and original content.

All responsive electronically stored information ("ESI") shall be produced in the following formats:

A.    TIFFs.

1.    All images shall be delivered as single-page 300 dpi-resolution group IV TIF format.  Image file names should not contain spaces.

B.    Unique IDs.

1.    Each image should have a unique file name and should be named with the Bates number assigned to it.

C.    Text File.

1.    Extracted full text in the form of multipage .txt files shall be provided. Text from redacted pages will be produced in optical character recognition ("OCR") format rather than extracted text.

D.    Parent-Child Relationship.

1.    Parent-child relationships (the association between an attachment and its parent record) should be preserved and produced.

E.    Database Load Files and Production Media Structure.

1.    Database load files shall consist of: (1) a comma-delimited values (".dat") file containing: production document identifier information, data designed to preserve "parent and child" relationships within document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper documents), custodian or document source information, as well as native file loading/linking information (where applicable); and (2) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

**Schedule A:  Protocol Governing the Production of Records**

    F.    <u>Metadata</u>.

        1.    You shall provide all metadata fields including, but not limited to, those set forth in the below metadata fields for emails and records that were originally created using common, off-the-shelf software (e.g., Microsoft Word, Microsoft PowerPoint, Microsoft Excel, Adobe PDF), whether attached to an email or created and produced as a stand-alone document.

        2.    Metadata Fields.

            a.    Custodian

            b.    Beginning Bates Number

            c.    Ending Bates Number

            d.    Beginning Attachment Bates Number

            e.    Ending Attachment Bates Number

            f.    Record Type

            g.    Sent Date

            h.    Sent Time

            i.    Create Date

            j.    Create Time

            k.    Last Modified Date

            l.    Last Modified Time

            m.    Parent Folder

            n.    Author

            o.    To

            p.    From

            q.    CC

            r.    BCC

            s.    Subject/Title

            t.    Original Source

**Schedule A:  Protocol Governing the Production of Records**

      u.    Native Path

      v.    File Extension

      w.    File Name

      x.    File Size

      y.    MD5Hash

G.    Emails and Attachments, and Other Email Account-Related Documents.

    1.    All documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf e-mail systems including but not limited to Microsoft Exchange™, Lotus Notes™ or Novell Groupwise™ shall be produced in TIFF format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each document in such a manner as to make the document(s) reasonably useable, manageable, and comprehendible by the Trustee.

H.    Documents and Data Created or Stored in or by Structured Electronic Databases.

    1.    With the exclusion of email and email account-related documents and data, all documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those documents into a useable, coherent database.  The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s) and field level schemas include:

      a.    XML format file(s);

      b.    Microsoft SQL database(s);

      c.    Access database(s); and/or

      d.    fixed or variable length ASCII delimited files.

I.    Spreadsheets, Multimedia, and Non-Standard File Types.

    1.    All documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be

**Schedule A:  Protocol Governing the Production of Records**

> included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

>    2. To the extent spreadsheets are being redacted, you shall produce the spreadsheets as redacted in TIFF format.  Where necessary, the parties will negotiate in good faith productions in native format of redacted spreadsheets where production in TIFF format is impracticable

> J. "Other" Electronic Documents.

>    1. All other documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding e-mails, structured electronic databases, spreadsheets, or multimedia) such as but not limited to word processing (such as Microsoft Word), image files (such as Adobe .pdf files, and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

VI.  Production Format of Hard Copy Records

Documents originally created or stored on paper shall be produced in TIFF format. Relationships between documents shall be identified within the .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each document shall be provided as a multi-page text file as provided for by these instructions.

All responsive hard copy records shall be produced in the following formats:

> A. TIFFs.

>    1. All images shall be delivered as single-page 300 dpi-resolution group IV TIF format.  Image file names should not contain spaces.

> B. Unique IDs.

>    1. Each image should have a unique file name and should be named with the Bates number assigned to it.

> C. OCR.

>    1. High-quality multipage OCR text shall be provided.

> D. Database Load Files.

**Schedule A: Protocol Governing the Production of Records**

    1.    Database load files shall consist of: (1) a comma-delimited values (".dat") file containing: production document identifier information, data designed to preserve "parent and child" relationships within document "families", reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper documents), custodian or document source information, as well as native file loading/linking information (where applicable); and (2) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

E.    <u>Unitizing of Records</u>.

    1.    In scanning hard copy records, distinct records shall not be merged into a single record, and single records shall not be split into multiple records.

F.    <u>Parent-Child Relationship</u>.

    1.    Parent-child relationships (the association between an attachment and its parent record) should be preserved and produced.

G.    <u>Objective Coding Fields</u>.

    1.    The following objective coding fields should be provided:

        a.    Beginning Bates Number

        b.    Ending Bates Number

        c.    Beginning Attachment Bates Number

        d.    Ending Attachment Bates Number

        e.    Source/Custodian

H.    <u>Objective Coding Format</u>

    1.    Fields should be Pipe (|) delimited.

    2.    String values within the file should be enclosed with Carats (^).

    3.    Multiple entries in a field should have a semi-colon (;) delimiter.

    4.    The first line should contain metadata headers and below the first line there should be exactly only one line for each record.

    5.    Each field row must contain the same amount of fields as the header row.