UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

──────────────────────────────── X
                                 :
In re:                           :
                                 :   SIPA LIQUIDATION
                                 :
BERNARD L. MADOFF INVESTMENT     :
SECURITIES LLC,                  :   No. 08-01789 (SMB)
                                 :
        Debtor.                  :
                                 :
──────────────────────────────── X

IRVING H. PICARD, Trustee for the Liquidation   :
of Bernard L. Madoff Investment Securities LLC, :
                                                :
                                                :
        Plaintiff,                              :
                                                :   Adv. Proc. No. 09-01182 (SMB)
             v.                                 :
                                                :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,          :
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,          :
ASCOT FUND LTD., GABRIEL CAPITAL                :
CORPORATION,                                    :
                                                :
        Defendants.                             :
                                                :
──────────────────────────────── X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY
AND REPORTS OF MATTHEW B. GREENBLATT**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendants J. Ezra Merkin
and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3000
*Attorneys for Ralph C. Dawson, as
Receiver for Defendant Ascot Partners,
L.P., and Ascot Fund Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii
PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND ........................................................................................................................... 2
ARGUMENT ................................................................................................................................. 5
A.   LEGAL STANDARD ....................................................................................................... 5
B.   GREENBLATT'S ANALYSIS IS NOT TRACEABLE TO A RELIABLE
     METHODOLOGY ............................................................................................................ 6
CONCLUSION .............................................................................................................................. 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
   650 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................................................6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ..................................................................................................................6

*Park W. Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y.2009) ........................................................................................6

*R.F.M.A.S., Inc. v So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) .......................................................................................5

*Schwartz v. Fortune Magazine*,
   193 F.R.D. 144 (S.D.N.Y.2000) ................................................................................................5

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................................5, 6

*Trouble v. Wet Seal, Inc.*,
   179 F. Supp. 2d 291 (S.D.N.Y.2001) ........................................................................................6

**Other Authorities**

Federal Rule of Evidence 702 ..........................................................................................................5

**Preliminary Statement**

Pursuant to Federal Rule of Evidence 702, made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, defendants J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund" and collectively with Merkin, GCC, and Ascot Partners, "Defendants") respectfully submit this memorandum of law in support of their motion *in limine* to exclude the proposed expert testimony and reports of Matthew B. Greenblatt.[1]

Irving H. Picard (the "Trustee") has designated Matthew B. Greenblatt as an expert witness to apply his calculation of "every [Bernard L. Madoff Investment Securities LLC ("BLMIS")] accountholder's principal balance on a daily basis for all dates during the period from April 1, 1981 through December 11, 2008 (the "Principal Balance Calculation")" to the Defendants' customer accounts.  Decl. Ex. A at ¶ 5.  Greenblatt's conclusions are unreliable and without a methodological basis.  He does nothing more than mechanically apply a mathematical formula given to him by the Trustee.  He readily admits that he did not devise the formula and that he can offer no opinion as to its appropriateness in this case.  The formula provided by the Trustee and applied by Greenblatt leads to the absurd result that an account closed in October 1992 and devoid of assets since that time has a Net Equity Claim of $9.7 million as of December 2008, while Ascot Partners, to whom the securities reportedly held in that account were transferred, received no net equity credit for the value of the securities Madoff represented had been transferred.  Thus the Court should preclude the Trustee from offering Greenblatt's illogical and baseless testimony at trial.

---

[1] The Expert Report of Matthew B. Greenblatt, dated November 15, 2012 (the "2012 Report"), is attached as Exhibit A to the Declaration of Mariel R. Bronen, dated April 7, 2017 ("Decl."). The Expert Report of Matthew B. Greenblatt, dated March 20, 2015 (the "2015 Report"), is attached as Decl. Ex. B. Excerpts from the transcript of Mr. Greenblatt's deposition testimony is attached as Decl. Ex C.

**Background**

Greenblatt is a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI. Decl. Ex. B at ¶ 1. He has approximately 18 years of experience in forensic accounting. *Id*. Baker & Hostetler LLP, counsel to the Trustee for the liquidation of BLMIS, hired FTI Consulting, Inc. ("FTI") to reconstruct the books and records of BLMIS. Decl. Ex. A at ¶ 4. Greenblatt and other FTI employees working under his supervision compiled chronological lists of cash and principal transactions for every BLMIS customer account based on data maintained in BLMIS' computer systems. *Id.* at ¶ 5. At the instruction of Baker & Hostetler, Greenblatt and his team used this data to perform the Principal Balance Calculation. *Id.* at ¶ 2. Greenblatt sets out the steps involved in performing the Principal Balance Calculation in his November 15, 2012 Report. *Id.* at ¶¶ 13-36.

> Greenblatt did not devise this methodology, nor does he opine on its appropriateness:
>
> Q. What was your basis for deducting certain payments from the principal balance?
>
> A. The determination of everyone's net equity balance is essentially a legal conclusion. I was tasked by the trustee and his counsel to identify and prepare schedules of all of the cash and principal transactions, and so every deposit, every withdrawal, and every payment made on behalf of a customer was identified as additions and deductions to principal.
> . . .
> Q. And you're not offering an opinion as to the appropriateness of deductions of the tax payments from the net equity; that was determined by counsel, right?
> . . .
> A. As I said before, the net equity determinations are essentially a legal conclusion, and from the very beginning, I was asked by counsel to the trustee to identify cash and principal transactions and to apply this methodology of inflows and outflows.
> Q. You're not offering an opinion as to the appropriateness of that methodology, correct?
> A. That's correct.

Decl. Ex. C at 36:6-16; 37:19-37:22; 37:24-38:9; *see also* 50:16-51:8; 59:21-60:22.

2

Similarly, Greenblatt did not consider applying any alternative methodologies; rather, he mechanically applied the methodology provided to him by the Trustee and Baker & Hostetler. *Id.*; Tr. 77:13-19 ("Q. Why didn't you consider any other methodologies?  A. For the same reason I would say before, which is the determination of net equity, which is what these principal balance calculations are used for, is a legal conclusion, and I was taking my direction from the trustee and his counsel.").

In his March 20, 2015 Report, Greenblatt applies the Trustee's Principal Balance Calculation to accounts associated with the Defendants. Greenblatt found that Gabriel and Ariel had principal balances of $163,700,000 and $175,906,797, respectively, as of December 11, 2008. Decl. Ex. B at ¶¶ 134, 116. On June 23, 2015, the Court approved the Settlement Agreement between the Trustee and Bart M. Schwartz, as Receiver for Gabriel and Ariel. As a result of that Settlement Agreement, Gabriel's and Ariel's net equity claims have been allowed in full and those funds have been dismissed from this litigation.

With respect to Ascot Partners, Greenblatt concluded that BLMIS Account 1A0058 had a principal balance of $226,018,404 as of December 11, 2008, thus conceding that Ascot Partners is a substantial "net loser" in Madoff's fraud. Decl. Ex. B at ¶ 95; Tr. 77:24-78:20; 82:24-83:6. The Ascot Receiver, on the other hand, claims net equity of more than $560 million, giving full credit to the intra-account transfer from Ascot Fund to Ascot Partners in connection with the "master-feeder" reorganization in January 2003, and net equity of $235,734,338 utilizing the Trustee's methodology for intra-account transfers. The approximately $9.7 million difference in the Trustee's and the Ascot Receiver's calculation of net equity using the Trustee's methodology is attributable to a purported transfer of $9.7 million worth of securities from Shalvah Fund to

3

Ascot Fund in 1992 when Shalvah Fund closed its account and became an investor in Ascot Fund. Decl. Ex. B at Exhibit 4B.

Shalvah Fund had net equity in its account of $9.7 million at the time of the transfer. Greenblatt, applying the Trustee's methodology, would have credited that amount to Ascot Fund had the purported transfer been of cash. Greenblatt does not give any credit for that transfer, however, because it purported to be a transfer of a specifically identified, but fictitious, security. Tr. at 89:2-19. Greenblatt's only justification for excluding this transfer because it involved fictitious securities rather than fictitious cash was that the Trustee instructed him to do so:

> Q. And did you make the determination to exclude the transfer of securities between BLMIS accounts?
> A. It was not my decision to be made. It was part of the methodology that the trustee and his team had determined was the appropriate method with which to calculate the net equity balances. So I identified all of those instances of inter-account transfers of funds and identified principal available in everybody's account, and I identified all the instances of transfers of reportedly held but fictitious securities; and the decision was made that the fictitious trading activity and the fictitious securities, any fictitious gains generated, all of the fictitious activity couldn't be moved from one account to another, and only funds in the form of principal could be moved in the inter-account transfers.
> Q. And you're not offering any opinion as to the appropriateness of excluding the transfer of securities between BLMIS accounts, correct?
> A. It calls for a legal conclusion, so all I'm offering is the calculation of the methodology that accounts only for principal.

Tr. 59:21-60:22; *see also* Tr. 62:11-62:19. In fact, it appears that this exclusion is contrary to the methodology outlined in Greenblatt's reports:

> Q. Where in your report do you say that you're excluding the transfer of securities between BLMIS accounts from your principal balance calculation?
> A. It's captured in paragraph 18, where it says, "The principal balance calculation does not include trading activity reflected on customer statements. At the direction of Trustee's counsel, no credit is given or removed for gains or losses resulting from trades reflected on customer statements."
> Q. Is the transfer of securities from one BLMIS account to another a trade?
> . . .
> A. No, I wouldn't call it a trade.

4

>Q. So where in your report do you say that you're excluding the transfers of securities between BLMIS accounts from your principal balance calculation?
>A. It's implied in that sentence. It doesn't use the words, but the principal balance calculation doesn't include the trading activity. The direction I was provided was to prepare a calculation based on the inflows and the outflows that are in paragraph 17 and to not give any credit to any of the fictitiously purchased securities or any of the fictitious gains from fictitious sales of securities or any of that related trading activity. So, in situations where securities that don't exist are attempted to be moved from Account A to Account B, the principal that exists in an account is not ignored; it's left in the transfer -- the principal is left in the transferor's account because the securities can't be moved.

Tr. 62:20-64:7.

## Argument

**A.**     Legal Standard

Expert testimony is admissible only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The burden is on the proponent of the expert testimony to "demonstrate that its expert witness satisfies these criteria." *R.F.M.A.S., Inc. v So,* 748 F. Supp. 2d 244, 249 (S.D.N.Y. 2010) (citation omitted).

"It is . . . inappropriate for experts to become a vehicle for factual narrative" because "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (citations omitted); *see also, Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y.2000) (upholding the exclusion of an accountant's testimony because "[it] was not generated based on any specialized knowledge, but rather involved basic calculations.").

5

The Court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). Courts must focus "not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 301 (S.D.N.Y.2001); *see also Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326–28 (S.D.N.Y.2009). "[A]n expert's analysis must be 'reliable at every step,' and although '[a] minor flaw in an expert's reasoning ... will not render an expert's opinion per se inadmissible,' exclusion is nevertheless warranted whenever 'the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.'" *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (quoting *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir.2002)).

### B.    Greenblatt's Analysis Is Not Traceable To A Reliable Methodology

Greenblatt's analysis is not traceable to a reliable methodology.  First, he did nothing more than mechanically apply a formula given to him by the Trustee – a formula that he does not defend as reliable or principled.  Second, because his application of the Trustee's formula leads to an absurd result.

Greenblatt did not devise the methodology applied in his reports, and he repeatedly refused to opine on its appropriateness. Tr. 36:6-16; 37:19-37:22; 37:24-38:9; 50:16-51:8; 59:21-60:22. Greenblatt did not consider applying any alternative methodologies. Tr. 77:13-19. Instead, he mechanically applied the formula provided to him by the Trustee and Baker & Hostetler. Tr. 59:21-60:22. Thus, Greenblatt's reports and testimony should be excluded because they do not "convey opinions based on [his] knowledge and expertise" nor are they "traceable to a reliable methodology." *Tourre*, 950 F. Supp. 2d at 675.

6

Pg 10 of 11

The fact that the Trustee's principal balance formula is not based on reliable principles or methods is also clearly demonstrated by its application to the Madoff account held by Shalvah Fund. The formula provided by the Trustee, as applied by Greenblatt, leads to the absurd result that the Shalvah Fund account, closed in October 1992 and devoid of assets since that time, has a Net Equity Claim of $9.7 million as of December 2008. Greenblatt offered no explanation for this result other than "[i]t was not my decision to be made. It was part of the methodology that the trustee and his team had determined was the appropriate method with which to calculate the net equity balances." Tr. 59:24-60:4. Moreover, there is no way to verify that this was a correct application of the methodology because Greenblatt's report does not ever state that the transfer of fictitious securities between BLMIS accounts should be excluded from the Principal Balance Calculation. Tr. 62:20-64:7. This flaw is certainly "large enough" to demonstrate that Greenblatt lacks "good grounds" for his conclusions and undermines the reliability of his testimony. *See Compania Embotelladora Del Pacifico, S.A.*, 650 F. Supp. 2d at 319.

## Conclusion

For the foregoing reasons Defendants J. Ezra Merkin and Gabriel Capital Corporation respectfully request that the exclude the testimony and reports of Matthew B. Greenblatt.

Dated:   New York, New York
         April 7, 2017

                                          DECHERT LLP

                                          By:   */s/ Neil A. Steiner*
                                                Andrew J. Levander
                                                Neil A. Steiner
                                                Mariel R. Bronen
                                                Daphne T. Ha
                                          1095 Avenue of the Americas
                                          New York, New York 10036
                                          andrew.levander@dechert.com
                                          neil.steiner@dechert.com
                                          (212) 698-3500

7

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP

By: /s/ *Judith A. Archer*
     Judith A. Archer
     Sarah O'Connell
     David B. Schwartz
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

15909116.6