UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>Defendants. | Adv. Proc. No. 09-01182 (SMB) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY, REPORTS, AND DECLARATION OF STEVE POMERANTZ**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3000
*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

POINT I
MR. POMERANTZ'S OPINIONS ARE NOT RELEVANT ..... 3

POINT II
MR. POMERANTZ'S OPINIONS ARE NOT RELIABLE ..... 4

POINT III
THE INITIAL REPORT SHOULD BE STRICKEN BECAUSE IT IS PROCEDURALLY IMPOPER ..... 7

POINT IV
THE DECLARATION SHOULD BE STRICKEN BECAUSE IT IS PROCEDURALLY IMPROPER..... 9

CONCLUSION..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
301 F.R.D. 31 (S.D.N.Y. 2014) ....................11

*Barrett v. Black & Decker (U.S.) Inc.*,
No. 06 CIV. 1970, 2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008)....................7

*In re Bernard L. Madoff Inv. Secs*,
548 B.R. 13 (S.D.N.Y. 2016)....................3

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
279 F. Supp. 2d 325 (S.D.N.Y. 2003)....................7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).................... *passim*

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013)....................2

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................5, 7

*Grdinich v. Bradlees*,
187 F.R.D. 77 (S.D.N.Y. 1999) ....................6

*Koppell v. N.Y. State Bd. of Elections*,
97 F. Supp. 2d 477 (S.D.N.Y. 2000)....................8

*LaMarca v. United States*,
31 F. Supp. 2d 110 (E.D.N.Y. 1998) ....................9, 10

*Middle Mkt. Fin. Corp. v. D'Orazio*,
No. 96-civ-8138, 2002 WL 31108260 (S.D.N.Y. Sept. 23, 2002) ....................8

*Patterson v. Balsamico*,
440 F.3d 104 (2d Cir. 2006)....................9

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
No. 93 Civ. 4001, 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ....................10

*R.F.M.A.S., Inc. v. So*,
748 F. Supp. 2d 244 (S.D.N.Y. 2010)....................3

*Saltz v. First Frontier, LP*,
782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012)..........................3

*Santrayall v. Burrell*,
993 F. Supp. 173 (S.D.N.Y. 1998) ..........................................................................4

*Smith v. Herman Miller, Inc.*,
No. CV-03-5358, 2005 WL 2076570 (E.D.N.Y. Aug. 26, 2005) ............................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26..........................................................................................7, 9

Fed. R. Civ. P. 37............................................................................................8

Fed. R. Evid. 402 ............................................................................................4

Fed. R. Evid. 702 ..........................................................................................2, 4, 5

**Preliminary Statement**

Defendants J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund" and collectively with Merkin, GCC, and Ascot Partners, "Defendants") respectfully submit this memorandum of law in support of their motion to strike the reports, declaration, and proposed testimony of Steve Pomerantz pursuant to Federal Rule of Evidence 702, made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure.

Plaintiff Irving H. Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), retained Steve Pomerantz to provide expert opinions on industry due diligence customs and practices. Mr. Pomerantz submitted an Initial Expert Report on March 20, 2015 ("Initial Report," attached as Exhibit A to the Declaration of Daphne T. Ha, dated April 7, 2017 ("Decl.")), a Rebuttal Expert Report on May 15, 2015 ("Rebuttal Report," attached as Decl. Ex. B, and together with the Initial Report, the "Reports"), and a Declaration on November 24, 2015 ("Declaration," attached as Decl. Ex. C).[1]

As a threshold matter, Mr. Pomerantz's proposed testimony on industry due diligence practices is not relevant where, as here, the Trustee must prove that Defendants were willfully blind to Madoff's Ponzi scheme. *See infra* Point I. Furthermore, Mr. Pomerantz used a novel, subjective, and unreproducible methodology to form an opinion as to the due diligence that would have been conducted on BLMIS between 1992 and 2008. His *ipse dixit* claims that the due diligence practices he used were industry customs in 1997 are without foundation; not a single document cited by Mr. Pomerantz suggests that the quantitative analyses he used are in fact customary. Indeed, Mr. Pomerantz admitted at his deposition that he had never used some

---

[1] Mr. Pomerantz testified at a deposition regarding his expert opinions on July 8, 2015, excerpts from the transcript of which is attached as Decl. Ex. D.

of his after the fact "expert" methodology in his actual business practices in the past. *See infra* Point II. And more remarkably still, prior to the collapse of the Madoff fraud in 2008, Mr. Pomerantz admittedly did due diligence on Madoff and did not tell his clients he thought it was a fraud or even that they should not invest in Madoff!

Mr. Pomerantz's expert disclosures are also procedurally improper and violate the Federal Rules of Civil Procedure. Mr. Pomerantz testified that he did not maintain a list of documents he considered in forming his opinions and instead included in his expert disclosure thousands of pages of information reviewed by other people that were not relevant to his opinions. *See infra* Point III. Lastly, the Declaration contains new testimony and new analyses and is thus an improper attempt to correct flaws identified during Mr. Pomerantz's deposition. *See infra* Point IV. As a consequence, Mr. Pomerantz's proposed testimony should be excluded.

**Argument**

Federal Rule of Evidence 702 provides that a party may not introduce expert testimony unless it "is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This Rule "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

Courts must assume a gatekeeping function to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Davis v. Carroll*, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid," whether it "is appropriately

applied to the case at hand, and whether the expert is applying it in a manner that ensures a reliable linkage between the facts that he is examining and the conclusions that he is announcing." *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 252-53 (S.D.N.Y. 2010) (citations omitted).

The party seeking to introduce the expert testimony bears the burden of establishing the reliability and relevancy requirements have been met. *Daubert*, 509 U.S. at 592 n.10.

**POINT I**

**MR. POMERANTZ'S OPINIONS ARE NOT RELEVANT**

Mr. Pomerantz's Initial Report contains two opinions: (1) "In the investment management industry, there are due diligence customs and practices that are typically performed," and (2) "Due diligence consistent with industry customs and practices would have revealed numerous red flags relating to the Merkin BLMIS accounts." Decl. Ex. A at 11-13; *see also* Decl. Ex. B (opining that Defendants' due diligence did not meet or exceed industry standards). Both opinions are irrelevant where, as here, the only issue is whether Ascot Partners withdrew funds from its BLMIS account at a time that Merkin was willfully blinding himself to Madoff's Ponzi scheme.

Neither willful blindness, Merkin's subjective beliefs, nor any deliberate conduct to avoid learning facts is even mentioned in the Initial Report nor the Rebuttal Report. Instead, the bulk of the Initial Report sets forth generic purported red flags about Madoff's strategy. Decl. Ex. A at 38-150. This Court, however, has held that "[t]he 'red flag' theory of *scienter* has been rejected in the Madoff-related federal securities law litigation because it amounts to pleading fraud by hindsight." *In re Bernard L. Madoff Inv. Secs*, 548 B.R. 13, 33 (S.D.N.Y. 2016) (citing cases); *see also Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors

withdrawing their funds as a result of their suspicions. An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent."), *aff'd*, 485 F. App'x 461 (2d Cir. 2012). Accordingly, the Reports, Declaration, and Mr. Pomerantz's proposed testimony have no probative value and should be excluded. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *Santrayall v. Burrell*, 993 F. Supp. 173, 177 (S.D.N.Y. 1998) ("evidence is not relevant and is inadmissible" where "insufficient as a matter of law" and "not of consequence to the determination of th[e] action").

**POINT II**

**MR. POMERANTZ'S OPINIONS ARE NOT RELIABLE**

Mr. Pomerantz should not be allowed to opine about industry due diligence practices for the independent reason that his opinions are not "the product of reliable principles and methods." Fed. R. Evid. 702(c). Indeed, Judge Rakoff excluded Mr. Pomerantz from testifying as an expert under Rules 402, 403, and 702 in another case brought by the Trustee because Judge Rakoff was "very doubtful about the relevance of [Mr. Pomerantz's] methodology and experience." *See* Hrg. Tr., *Picard v. Mets Ltd. P'ship*, No. 11 Civ. 3605, ECF No. 139 (S.D.N.Y. Feb. 23, 2011), at 35:8-14 (Decl. Ex. F).[2] And in this case, Mr. Pomerantz's purported opinions are fatally undermined by his admission that, prior to Madoff's confession, he was retained by a fund of fund to do due diligence on a Madoff feeder fund and to meet with prospective investors in the fund of funds about his due diligence and *never* contemporaneously advised *any* of those investors or prospective investors that he had concerns about Madoff, much less that he believed Madoff was running a Ponzi scheme.

[2] Mr. Pomerantz's expert report in *Picard v. Mets* similarly focused on red flags and industry customs and practices. *See Picard v. Mets Ltd. P'ship*, No. 11 Civ. 3605, ECF No. 105-2 (Jan. 26, 2012) (Decl. Ex. G).

"Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit expert testimony . . . with no identified methodology or connection to an industry standard." *Smith v. Herman Miller, Inc.*, No. CV-03-5358, 2005 WL 2076570, at *4 (E.D.N.Y. Aug. 26, 2005). Mr. Pomerantz conclusorily claims that his quantitative due diligence analyses "were industry customs and practices as of 1997" and "were customarily performed by Fund Managers as part of initial due diligence and ongoing monitoring of investments by 1997." Decl. Ex. A ¶¶ 34-35. But his statements are impermissible say-sos that are contradicted by contemporaneous due diligence documents and Mr. Pomerantz's own admissions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (rejecting expert's "ipse dixit" as basis for opinion).

There is no dispute that Ascot Fund and Ascot Partners opened accounts with BLMIS in 1992 and 1993, respectively. *See* Trustee's Resp. to Defts.' Joint Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1, ECF No. 292 (Nov. 25, 2015) at ¶¶ 49-50(Decl. Ex. H). The first due diligence questionnaire cited by Mr. Pomerantz was published by the Alternative Investment Management Association ("AIMA") in 1997—five years after the initial investment. *See* Decl. Ex. A ¶ 53 and Decl. Ex. E. Mr. Pomerantz admitted that AIMA's questionnaires "don't identify specific quantitative analyses." Decl. Ex. D at 184:4-13. Nothing in the 1997 AIMA questionnaire—or AIMA's 2002 or 2004 questionnaires, or any other questionnaire discussed in the Reports—mention, for example, comparing transactions to daily highs and lows, conducting an alpha analysis, reviewing counterparty contracts, calculating Sharpe and Sortino ratios, and other analyses that Mr. Pomerantz claims were industry customs and practices. *See* Decl. Ex. E.

Thus, Mr. Pomerantz's methodology is "a subjective, conclusory approach that cannot reasonably be assessed for reliability." Fed. R. Evid. 702 advisory committee's note (2000 Amendments) (citing *Daubert*). Nothing in Mr. Pomerantz's deposition or Reports indicates that the practices he claims are industry customs are in fact industry customs today, much less during the relevant time period. Accordingly, Mr. Pomerantz "seems to base his conclusions on his own authority. Because 'knowledge connotes more than subjective belief or unsupported speculation,' there is no reliable foundation for [Mr. Pomerantz's] expert opinion." *Grdinich v. Bradlees*, 187 F.R.D. 77, 81-82 (S.D.N.Y. 1999) (quoting *Daubert*, 509 U.S. at 590) (finding expert lacked sufficient specialized knowledge and proposed testimony was neither reliable nor relevant).

Moreover, Mr. Pomerantz's deposition testimony revealed that his actual practices contradict the supposed industry practices outlined in his Reports. For example, Mr. Pomerantz testified that Goldman Sachs' acting as its own broker-dealer and issuing statements that do not show underlying holdings is "not a problem" because "Goldman Sachs is a large entity" with which Mr. Pomerantz "feel[s] very comfortable" and "ha[s] no reason to believe that something is happening that is not as being represented." Decl. Ex. D at 59:16-25, 60:18-61:5, 62:10-12. Prior to December 11, 2008, BLMIS was likewise a large entity with which thousands of investors and customers felt comfortable and had no reason to believe there was a fraud. Indeed, the SEC and other regulators apparently found "no reason to believe that something is happening that is not as being represented" when they reviewed BLMIS's business records.

Mr. Pomerantz also testified that he has *never* reviewed trade confirmations when performing due diligence. Decl. Ex. D. at 96:3-6, 100:4-13. Nor did he ever compare transaction prices against the daily high-low range. *Id.* at 101:13-20. He also admitted that he

did not know if he "would have done everything" in his report if he were conducting due diligence on BLMIS. *Id.* at 150:24-151:3. Ultimately, despite Mr. Pomerantz's claim that, "[b]y 2008, [he] had become convinced that Madoff . . . was likely engaged in front-running or some other fraud," Decl. Ex. A at ¶ 30, Mr. Pomerantz backtracked at his deposition and testified that he never set forth his conclusion in a contemporaneous written document, he could not say he thought Madoff was a fraud at the time, and investors for whom he did due diligence continued to invest approximately $20 million with a Madoff feeder fund. Decl. Ex. D at 129:15-17 ("I don't know that it's fair to say I thought it was a fraud."), 119:20-120:12, 126:20-127:20. Thus, Mr. Pomerantz's opinion should be stricken because "indisputable record facts contradict or otherwise render the opinion unreasonable." *Barrett v. Black & Decker (U.S.) Inc.*, No. 06 CIV. 1970, 2008 WL 5170200, at *7 (S.D.N.Y. Dec. 9, 2008); *see Gen. Elec.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y. 2003) (expert opinion "based on . . . assumptions that represent a complete break with the evidence in the record . . . should be excluded" (internal quotation marks omitted)).

**POINT III**

**THE INITIAL REPORT SHOULD BE STRICKEN**
**BECAUSE IT IS PROCEDURALLY IMPOPER**

Federal Rule of Civil Procedure 26 requires an expert witness to disclose "the facts or data considered by the witness in forming" his opinions, Fed. R. Civ. P. 26(a)(2)(B)(ii), so that "opposing parties have a reasonable opportunity to prepare for effective cross examination," Fed. R. Civ. P. 26 advisory committee's note (1993 Amendments). If a party fails to make the

disclosures required by Rule 26(a), then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96-civ-8138, 2002 WL 31108260, at *4 (S.D.N.Y. Sept. 23, 2002) ("The 'automatic sanction' for a violation of Rule 26(a) is preclusion." (quoting Fed. R. Civ. P. 37 advisory committee's note (1993 Amendments)).

Mr. Pomerantz testified that he considered "thousands" of pages of documents in forming his opinions, but acknowledged that his disclosure listed "many, many multiples of that number" "that were reviewed by other people that didn't have information that was relevant to [his] opinions," and he did not maintain a list of the pages that he actually reviewed. Decl. Ex. D at 209:21-210:18; *see* Initial Report Appendix II (spanning more than 130 pages and listing well over 10,000 documents purportedly considered by Mr. Pomerantz). Mr. Pomerantz further admitted that he only reviewed subsets of the analyses discussed in his Initial Report, including subsets of "monthly statements that identified transactions and holdings," "documents that discuss transactions," and trade confirmations. Decl. Ex. D at 211:9-213:1 ("[I]f there are 30,000 confirmations, I could tell you I looked at ten, but I couldn't tell you which ten of those 30,000.").

Mr. Pomerantz's failure to identify the specific documents he reviewed and analyses he conducted is harmful, incurable, and unjustifiable. To prepare fully for cross-examination at trial, Defendants would have to review and analyze more than 10,000 documents listed in Appendix II to the Initial Report even though the majority of those documents "didn't have information that was relevant to [Mr. Pomerantz's] opinions." Decl. Ex. D at 210:10-11. Such gamesmanship by the Trustee is plainly inappropriate. Because Mr. Pomerantz is unable to

identify the actual facts and data he considered in arriving at his opinions, the Initial Report should be excluded under Rules 26 and 37. *See Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp. 2d 477, 481-82 (S.D.N.Y. 2000) (excluding expert report because disclosure of "[a] list of dates, covering nine month periods," rather than specific documents reviewed and relied upon within each nine month period, "renders [the expert's] disclosure meaningless and leaves plaintiffs and the Court without a clear understanding of the data upon which [the expert] relied, as well as the specific bases for his opinions").

**POINT IV**

**THE DECLARATION SHOULD BE STRICKEN**
**BECAUSE IT IS PROCEDURALLY IMPROPER**

Rule 26 requires the Reports to include, *inter alia*, "a complete statement of *all* opinions [Mr. Pomerantz] will express." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added); *see* advisory committee's note (1993 Amendments) (an expert "must prepare a detailed and *complete* written report, stating the testimony the witness is expected to present during direct examination" (emphasis added)). "Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)." *LaMarca v. United States*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998). Courts in this Circuit consider four factors when deciding whether to preclude supplemental expert testimony: (1) proponent's explanation for noncompliance with Rule 26; (2) importance of the testimony; (3) prejudice to the opposing party; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

In the Declaration, Mr. Pomerantz introduced new testimony about:

1. his purported due diligence of and meetings with Goldman Sachs, Decl. Ex. C at ¶ 11, offered to contradict his testimony that he "fe[lt] very comfortable" with Goldman Sachs and "ha[d] no reason to believe that something is happening that is not as being represented," Decl. Ex. D at 62:10-12;

2. his new analyses of reported prices prior to September 2006 where he did not make adjustments of $0.04, Decl. Ex. C at ¶¶ 13-14, offered to contradict his admission that BLMIS trades that were purportedly outside the range would not actually be outside the range, Decl. Ex. D. at 233:15-234:17 (Mr. Pomerantz testifying he would not be surprised "if more than half of the trades that [he] ha[d] identified as being out of range fell" within range);

3. his purported input of information from trade confirmations into computer programs, Decl. Ex. C at ¶ 15, offered to contradict his admission that he never reviewed trade confirmations, Decl. Ex. D at 100:4-9;

4. his conclusory statement that he would have "conducted additional due diligence, which Decl. Ex. C at ¶ 16, offered to contradict his admission that he has "not looked at transactions versus highs and lows," Decl. Ex. D at 101:13-14; and

5. his new analyses of funds including Ridgeline, SMN Diversified Futures Fund, Eclectica Fund, and Episode Inc., which were never mentioned in either Report, Decl. Ex. C at ¶¶ 17-18.

Mr. Pomerantz's new testimony is plainly outside the scope of his Initial Report. The Declaration is a transparent attempt "to endeavor to fill the flaws and gaps in [Mr. Pomerantz's] report" after they were identified during his deposition. *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001, 2004 WL 345551, at **7, 12 (S.D.N.Y. Feb. 23, 2004) (excluding affidavits submitted after expert discovery ended that "rais[ed] new matters relevant to [the expert]'s testimony").

Preclusion of the Declaration and the opinions expressed therein is the appropriate sanction where, as here, there is no valid reason for Mr. Pomerantz not to have disclosed the above opinions in his Initial Report. The Trustee cannot argue that Mr. Pomerantz's new testimony expands on his prior disclosures or his deposition testimony. "To accept the contention that the new affidavits merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant and logical gap in the first report would eviscerate the purpose of the expert disclosure rules." *Id.* at *9; *see also Lamarca*, 31 F. Supp. 2d at 123 (rejecting argument that party could have questioned expert about new

disclosures during a deposition because "deposition testimony does not cure deficiencies in the Rule 26(a)(2)(B) notice" (internal quotation marks omitted)).

Moreover, because Mr. Pomerantz is attempting to "rescue a deficient expert report" rather than respond to a new or previously unknown event, *see Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y. 2014), there would be prejudice to Defendants, and a continuance is inappropriate given the fact that discovery ended in July 2015, all four factors articulated by the Second Circuit favor preclusion of the Declaration and the opinions contained therein. Mr. Pomerantz should not be "free to continually bolster, strengthen, or improve [his] reports by endlessly researching the issues [he] already opined upon, or to continually supplement [his] opinions." *Id.* at 41 (internal quotation marks omitted).

**Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court exclude Mr. Pomerantz's Reports, Declaration, and testimony in their entirety.

Dated: New York, New York
April 7, 2017

DECHERT LLP

By: *__/s/ Neil A. Steiner__*

Andrew J. Levander
Neil A. Steiner
Mariel R. Bronen
Daphne T. Ha

1095 Avenue of the Americas
New York, New York 10036
andrew.levander@dechert.com
neil.steiner@dechert.com
(212) 698-3500

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP

By: /s/ *Judith A. Archer*
Judith A. Archer
Sarah O'Connell
David B. Schwartz
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

15909132.8