UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

– against –

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
----------------------------------------------------------X

In re:

BERNARD L. MADOFF,

                Debtor.
----------------------------------------------------------X

SIPA Liquidation
(Substantively Consolidated)

Adv. P. No. 08-01789 (SMB)

## MEMORANDUM DECISION AFFIRMING THE TRUSTEE'S DENIAL OF CERTAIN CUSTOMER CLAIMS

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Nicholas J. Cremona, Esq.
    Jorian L. Rose, Esq.
    Amy E. Vanderwal, Esq.
    Stephanie A. Ackerman, Esq.
        Of Counsel

*Attorneys for Irving H. Picard, Trustee*
 *for the Liquidation of Bernard L. Madoff*
 *Investment Securities LLC*

Daniel C. Epstein

*Pro se*

Robert & Rebecca Epstein Living Trust

*Pro se*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), seeks to affirm his determinations denying the customer claims filed by Robert & Rebecca Epstein Living Trust (the "Epstein Living Trust") and Daniel C. Epstein (together with the Epstein Living Trust sometimes referred to as the "Epsteins") and Keith Schaffer, Jeffrey Schaffer, and Carla R. Hirschhorn (Keith & Jeffrey Schaffer and Carla Hirschhorn collectively referred to as the "Schaffer/Hirschhorn Cotenants"). (*Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in Judy L. Kaufman et al. Tenancy in Common, Richard B. Felder and Deborah Felder Tenancy in Common, and Keith Schaffer, Jeffery Schaffer, Carla R. Hirschhorn Tenancy in Common*, dated Jan. 13, 2017 (the "*Motion*") (ECF Doc. # 14844).)[1] Only the Epsteins have opposed the *Motion*. For the reasons stated, the Trustee's *Motion* is granted.

---

[1] The *Motion* was adjourned to May 3, 2017 as to the claimants holding an interest in the Richard B. Felder and Deborah Felder Tenancy in Common. (*See* ECF Doc. # 15562.)

## BACKGROUND

### A.     The Madoff Ponzi Scheme and the Claims Procedures Order

Madoff operated a massive Ponzi scheme from the investment advisory side of BLMIS satisfying customer withdrawal requests with earlier deposits made by other customers. *See SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012). On December 11, 2008, Madoff was arrested by federal agents and charged with securities fraud, and on the same day, the Securities and Exchange Commission filed a civil complaint in the District Court alleging that Madoff and BLMIS had operated a Ponzi scheme. On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") applied to the District Court seeking a decree that BLMIS customers were in need of the protections afforded by SIPA. The District Court granted SIPC's application, appointed the Trustee to liquidate BLMIS, and removed the liquidation proceeding to this Court. On March 12, 2009, Madoff pled guilty to an eleven count criminal indictment and admitted to operating his investment advisory business as a Ponzi scheme. *Id.* at 126.

On December 23, 2008, the Court entered an order ("*Claims Procedures Order*")[2] which, among other things, established the procedure for former customers to file claims against the BLMIS estate. If the Trustee disagreed with a customer's claim amount, he would notify the customer in writing as to his determination that the entire claim, or a portion of it, should be disallowed. (*Id.* at 6.) Thereafter, the customer could

---

[2]     *See Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief*, dated Dec. 23, 2008 (ECF Doc. # 12).

object to the Trustee's determination setting forth the basis for the objection, and the Trustee would then schedule a hearing on the matter with the Court. (*Id.* at 6-7.)

### B.    The Kaufman Tenancy in Common

Dr. Judy L. Kaufman ("Dr. Kaufman") opened Account 1CM100 with BLMIS in September 1993 by executing a trading authorization, a customer agreement, and an option agreement. (*See Declaration of Vineet Sehgal*, dated Jan. 12, 2017 ("*Sehgal Decl.*"), Ex. 4 at AMF00243778-88 (ECF Doc. # 14845).) In December 1994, Dr. Kaufman added her children Lisa D. Kaufman and Neal S. Kaufman to Account 1CM100, and renamed the account "Judy L. Kaufman-Family" with each member holding an interest in the account as a tenant in common. (*Id.*, Ex. 4 at AMF00243773-76.)[3] In December 2003, Dr. Kaufman added the Epstein Living Trust as a fourth cotenant, (*id.*, Ex. 4 at AMF00243767), and in July 2008, added Daniel Epstein as a fifth cotenant. (*Id.*, Ex. 4 at AMF00243752.) I will refer to the tenancy in common as the "Kaufman Tenancy in Common."

### C.    The Customer Claims

The Kaufman Tenancy in Common filed a customer claim (the "TIC Customer Claim") for amounts held in Account 1CM100. (*Sehgal Decl.*, ¶ 13.) The Trustee disallowed the TIC Customer Claim in its entirety because Account 1CM100 was a "net winner" account meaning that the amount withdrawn from the account exceeded the

---

[3]    Lisa D. Kaufman wrote to BLMIS in November 1997 to inform it of her name change to Lisa D. Kava. (*Sehgal Decl.*, Ex. 4 at AMF00243772.)

deposits. (*Id.*, ¶ 14.)[4] The Kaufman Tenancy in Common objected to the Trustee's determination on December 21, 2009. (*See* ECF Doc. # 1099.) The Trustee's current *Motion* does not seek a final adjudication of the TIC Customer Claim.

The Epstein Living Trust and Daniel Epstein also filed customer claims (together the "Cotenant Customer Claims") in the amounts of $352,355 and $40,000, respectively.[5] The Trustee disallowed the Cotenant Customer Claims in their entirety because the Epsteins did not have their own BLMIS accounts, and hence, were not "customers" of BLMIS within the meaning of SIPA. The Epsteins each filed objections to the Trustee's determinations in January 2011. (*See* ECF Doc. ## 3760 & 3762.)

D.   **The Trustee's *Motion***

The *Motion* contends that the Cotenant Customer Claims must be denied because an account held by tenants in common is treated as a single customer (and is thus entitled to a single customer claim) under Rule 105 of the SIPC's Series 100 Rules, (*Motion* at 14), and the Epsteins lack the characteristics indicative of customer status as set forth in *SIPC v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir.) ("*Morgan Kennedy*"), *cert. denied*, 426 U.S. 936 (1976) and reaffirmed in *Kruse v. SIPC* (*In re BLMIS*), 708 F.3d 422 (2d Cir. 2013) ("*Kruse*"). (*Motion* at 14-17.)[6]

---

[4]   The Trustee filed an adversary proceeding in November 2010 against the Kaufman Tenancy in Common and the Epsteins, among others, to recover the fictitious profits withdrawn from Account 1CM100. *See Picard v. Kaufman*, Adv. P. No. 10-04527 (SMB).

[5]   The Cotenant Customer Claims are annexed to the *Seghal Decl.* as Exs. 5 & 6.

[6]   SIPC filed a memorandum supporting the *Motion* on January 24, 2017 (ECF Doc. # 14939) reinforcing much of the Trustee's arguments.

- 5 -

The Epsteins objected to the Trustee's *Motion*. (S*ee* ECF Doc. ## 15330 & 15424-1.) They argue that they made a written request to Madoff in 2003 asking for separate account statements in their names (not aggregated with the other cotenants comprising the Kaufman Tenancy in Common), but Madoff ignored it. The Epsteins also assert that the Trustee possesses evidence establishing the amount of their deposits and lack of withdrawals from Account 1CM100.

The Trustee filed his *Reply Memorandum of Law in Support of Trustee's Motion and Memorandum of Law to Affirm His Determinations Denying Claims of Claimants Holding Interests in Judy L. Kaufman et al. Tenancy in Common and Keith Schaffer, Carla R. Hirschhorn Tenancy in Common* on March 24, 2017 ("*Reply*") (ECF Doc. # 15424). He represents that while he possesses four checks from the Epstein Living Trust and one check from Daniel Epstein, each made payable to BLMIS, the checks were intended to be deposited into Account 1CM100, the Kaufman Tenancy in Common's account, (*Reply* at 5)[7], and were, in fact, deposited into that account.[8] In addition, the Epsteins admitted in discovery that they sent their checks to Dr. Kaufman (or her husband), and Dr. Kaufman or her husband sent the checks to BLMIS. (*Id.*) Finally, while the Epsteins alluded to a 2003 letter requesting BLMIS to send separate customer statements to them, they failed to produce the letter. (*Id.* at 6-7.) The Trustee's attorney

---

[7]    Four of the five checks included "Account 1CM100" in the memo portion of the check. The memo portion of the fifth check was redacted.

[8]    The Trustee's complaint in the adversary proceeding brought against the Epsteins listed the five deposits in the exhibit showing the activity in Account 1CM100. (*See Complaint*, dated Nov. 12, 2010, Ex. B at MADC0261_00000004 (ECF Adv. P. No. 10-04527 Doc. #1).)

represented at oral argument on March 29, 2017 that she has never seen a copy of the 2003 letter containing a direction to send separate statements to them.

## DISCUSSION

**A.     Determining "Customer" Status Under SIPA**

The issue before the Court is whether the Epsteins qualify as "customers" as that term is defined in SIPA so that they may directly participate in the distribution of customer property as described in SIPA § 78fff-2 and receive advances from SIPC on account of their claims pursuant to SIPA § 78fff-3. SIPA defines a "customer" as a person

> who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.

SIPA § 78*lll*(2)(A).

Customers include "any person who has deposited cash with the debtor for the purpose of purchasing securities" and "any person who has a claim against the debtor arising out of sales or conversions of such securities." SIPA § 78*lll*(2)(a)(i) & (iii). "Judicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions," *Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*), 463 F.3d 125, 127 (2d Cir. 2006) (quoting *SIPC v. Wise* (*In re Stalvey & Assocs., Inc.*), 750 F.2d 464, 472 (5th Cir. 1985)), and the burden of proof is on the claimant to demonstrate "customer" status under SIPA. *Mishkin v. Siclari* (*In re Adler, Coleman Clearing Corp.*), 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002). While courts consider several factors in determining the existence of customer status, including whether the claimant had a

direct financial relationship with the debtor, a property interest in the assets invested, accounts with the debtor, control over investment decisions, and/or was identified in the debtor's books and records, *Kruse*, 708 F.3d at 426-27; *accord Morgan Kennedy*, 533 F.2d at 1318, the "critical aspect" of the customer definition is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (quoting *In re BLMIS*, 654 F.3d 229, 236 (2d Cir. 2011)).

Rule 105 of the SIPC Series 100 Rules addresses the classification of "Joint Accounts" including those held by tenants in common.[9] SIPC Rule 105(a) provides that a joint account held by "tenants in common" where each cotenant "possesses authority to act with respect to the entire account" will be deemed a "qualifying joint account." 17 C.F.R. § 300.105(a). If at least some of the cotenants lack authority to act, the joint account will also be deemed a "qualifying joint account" comprised of the cotenants "having the exclusive power to act with respect to it."[10] 17 C.F.R. § 300.105(d). In either case, "each qualifying joint account with a member *shall be deemed held by one separate customer of the member*." 17 C.F.R. § 300.105(b) (emphasis added); *accord Morgan Kennedy*, 533 F.2d at 1320 (A "qualifying joint account" is a separate customer, and the "co-owners will be required to divide the single award in proportion to their ownership interests in the account.") (footnote omitted).

---

[9]     SIPC's rules "have the force and effect of law." *Mishkin v. Ensminger* (*In re Adler, Coleman Clearing Corp.*), 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998).

[10]    If only one cotenant possesses the power to act, then the account will be deemed an individual account. 17 C.F.R. § 300.105(d).

**B.    The Epsteins**

It is undisputed that Account 1CM100 is a qualifying joint account within the meaning of SIPC Rule 105. Consequently, the Kaufman Tenancy in Common is the SIPA customer, and the tenants in common must look to the Kaufman Tenancy in Common for any recovery.

Furthermore, the Epsteins have failed to satisfy the "critical aspect" of the customer definition – "the entrustment of cash or securities to [BLMIS] for the purposes of trading securities." *Kruse*, 708 F.3d at 426 (quotation omitted). Their responses to discovery confirm that:

- they did not have BLMIS accounts in their own names, (*Declaration of Stephanie Ackerman*, dated Jan. 13, 2017 ("*Ackerman Decl.*"), Ex. 5 at MCMDR_00000336 & Ex. 6 at MCMDR_00000413 (ECF Doc. # 14846));

- they never received correspondence directly from BLMIS, (*id.*);

- they had no communications with BLMIS employees, (*id.*, Ex. 5 at MCMDR_00000340 & Ex. 6 at MCMDR_00000417);

- the Cotenant Customer Claims were based on investments in Account 1CM100, (*id.*);

- they never received account statements or tax documents from BLMIS, (*id.*, Ex. 5 at MCMDR_00000337 & Ex. 6 at MCMDR_00000414);

- they never entered into contracts with BLMIS, (*id.*);

- their only relationship with BLMIS existed by way of their relationship to the Kaufman Tenancy in Common, (*id.*); and

- they lacked control, investment discretion or decision-making power regarding their BLMIS investment. (*Id.*)

In short, while the Kaufman Tenancy in Common was a "customer" of BLMIS, the Epsteins were not.

- 9 -

The Epsteins' contrary arguments are unpersuasive. First, they point to checks they made payable to BLMIS for deposit into Account 1CM100, (*see Ackerman Decl.*, Ex. 7 at MCMDP_00006631, 33, 35, 37 & Ex. 8 at MCMDP_00010529), to show a relationship between them and BLMIS. However, they entrusted those checks to Dr. Kaufman or her husband, and did not deal directly with BLMIS. Second, they allude to a 2003 letter they sent to BLMIS requesting separate account statements (apart from the statement sent for the Kaufman Tenancy in Common), but failed to produce it, and the Trustee represented that he has never seen it. Accordingly, the Epsteins have failed to carry their burden of proving that they were "customers" of BLMIS as defined in SIPA.

For the same reasons, the branch of the *Motion* seeking to affirm the Trustee's denial of claims filed by the Schaffer/Hirschhorn Cotenants is also granted. Each of the Schaffer/Hirschhorn Cotenants filed a customer claim against BLMIS in an amount equal to one-third of the amount listed on the final BLMIS account statement of the Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common (the "Schaffer/Hirschhorn TIC"). (*See Sehgal Decl.*, Ex. 12 at MWPTAP00597077; Ex. 13 at MWPTAP00598855; Ex. 14 at MWPTAP00598884.)[11] The Schaeffer/Hirschhorn TIC is the account holder and "customer," the Schaffer/Hirschhorn Cotenants, like the Epsteins, are not. Moreover, the Schaffer/Hirschhorn Cotenants failed to respond to requests for admissions in connection with the claim dispute, (*Ackerman Decl.*, ¶ 21; Exs. 2-4), thereby admitting, *inter alia*, that they did not have BLMIS accounts in their

---

[11] The Schaffer/Hirschhorn TIC also filed customer claims against BLMIS, which the Trustee denied because its BLMIS account was a "net winner" account. (*Sehgal Decl.*, ¶¶ 13, 14; Ex. 1.) The *Motion* does not seek a final adjudication on the claims filed by the Schaffer/Hirschhorn TIC.

own names, did not directly receive BLMIS statements or tax documents, and did not have control, investment discretion or decision-making power over BLMIS investments. *See* FED. R. CIV. P. 36(a)(3).  Finally, they failed to object to the Trustee's *Motion*.

## CONCLUSION

The Trustee's *Motion* is granted as set forth herein.  Submit order.

Dated: New York, New York
       April 7, 2017

>                          /s/ *Stuart M. Bernstein*
>                          STUART M. BERNSTEIN
>                          United States Bankruptcy Judge