**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITES INVESTOR PROTECTION CORPORATION, | : |
| Plaintiff-Applicant, | : SIPA Liquidation |
| v. | : |
| | : No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : |
| | : (Substantively |
| Defendant. | : Consolidated) |

---

| | |
|---|---|
| In re | : |
| | : |
| BERNARD L. MADOFF, | : |
| Debtor. | : |

---

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : |
| Plaintiff, | : |
| v. | : Adv. Pro. No. 10-04285 (BRL) |
| UBS AG, et al., | : |
| Defendants. | : |

---

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : |
| Plaintiff, | : |
| v. | : Adv. Pro. No. 10-05311 (BRL) |
| UBS AG, et al., | : |
| Defendants. | : |

---

**MEMORANDUM IN SUPPORT OF UBS DEFENDANTS'**
**MOTION TO WITHDRAW THE REFERENCE**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000

*Attorneys for Defendants UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA*

Dated:    June 17, 2011

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 5

THESE ACTIONS ARE SUBJECT TO MANDATORY WITHDRAWAL OF
THE REFERENCE .............................................................................................................. 5

    A.    Bankruptcy Court Jurisdiction Over SIPA Proceedings ......................................... 5

    B.    Withdrawal of the Reference .................................................................................. 6

        1.    The Trustee's Claims Raise Substantial Issues Regarding
Whether the Trustee Has Standing Under SIPA ........................................ 8

        2.    The Trustee's Claims Raise Substantial Issues Regarding
Whether They Are Preempted by SLUSA ............................................... 11

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page

### Cases

*AT&T Co. v. Chateaugay Corp.*,
   88 B.R. 581, 583 (S.D.N.Y. 1988) ................................................................................ 7

*Barron v. Igolnikov*,
   No. 09 Civ. 4471 (TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) .................................... 12

*Caplin v. Marine Midland Grace Trust Co.*,
   406 U.S. 416, 434 (1972) ............................................................................................ 8

*Chemtura Corp. v. United States*,
   No. 10 Civ. 503 (RMB), 2010 WL 1379752 (S.D.N.Y. March 26, 2010) .............................. 7

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991) ...................................................................................... 6

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*,
   No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ................................ 7

*Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.)*,
   280 B.R. 794 (Bankr. S.D.N.Y. 2002) ........................................................................ 11

*Holmes v. SIPC*,
   503 U.S. 258 (1992) ................................................................................................. 10

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ........................... 6, 7

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010) ........................................................................ 12

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010) ............................................ 8

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2008) ................................................................................. 12, 13

*Mishkin v. Peat, Marwick, Mitchell & Co.*,
   744 F. Supp. 531 (S.D.N.Y. 1990) ............................................................................. 10

*Newdow v. Rio Linda Union Sch. Dist.*,
   597 F.3d 1007 (9th Cir. 2010) ..................................................................................... 9

# TABLE OF AUTHORITIES
## (Continued)

Page

*Picard v. HSBC Bank PLC*,
  Nos. 11 Civ. 763 (JSR), 11 Civ. 836 (JSR), 2011 WL 1544494
  (S.D.N.Y. Apr. 25, 2011) ............................................................................... 2, 9, 10, 11

*Picard v. JPMorgan Chase & Co.*,
  No. 11 Civ. 0913 (CM), 2011 WL 2119720 (S.D.N.Y. May 23, 2011) ............... 2, 9, 10, 11, 12

*Picard v. Kohn*,
  No. 11 Civ. 1181 (JSR) (S.D.N.Y. June 3, 2011) .................................................................. 2

*Picard v. Taylor (In re Park S. Sec., LLC)*,
  326 B.R. 505 (Bankr. S.D.N.Y. 2005) ................................................................................. 10

*Redington v. Touche Ross & Co.*,
  592 F.2d 617 (2d Cir. 1978) ................................................................................................ 9

*RGH Liquidating Trust v. Deloitte & Touche LLP*,
  71 A.D.3d 198, 891 N.Y.S.2d 324 (1st Dep't 2009) ........................................................... 13

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) ............................................................................................ 8, 10

*Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*,
  922 F.2d 984 (2d Cir. 1990) ................................................................................................. 7

*SIPC v. BDO Seidman, LLP*,
  49 F. Supp. 2d 644 (S.D.N.Y. 1999) .................................................................................. 10

*SIPC v. Cheshier & Fuller LLP (In re Sunpoint Sec., Inc.)*,
  262 B.R. 384 (Bankr. E.D. Tex. 2001) ................................................................................. 5

*Tenet v. Doe*,
  544 U.S. 1 (2005) ................................................................................................................ 9

*Touche Ross & Co. v. Redington*,
  442 U.S. 560 (1979) ............................................................................................................ 9

*Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*,
  4 F.3d 1556 (10th Cir. 1993) ............................................................................................... 5

### Statutes

15 U.S.C. § 78aaa ..................................................................................................................... 3

15 U.S.C. § 78bb(f)(1) ............................................................................................................ 11

# TABLE OF AUTHORITIES
## (Continued)

Page

15 U.S.C. § 78bb(f)(5)(B) .................................................................................................. 12

15 U.S.C. § 78eee(b)(2)(A) ................................................................................................. 5

15 U.S.C. § 78eee(b)(4) ...................................................................................................... 5

28 U.S.C. § 1334 .............................................................................................................. 5, 6

28 U.S.C. § 157 .................................................................................................................... 5

28 U.S.C. § 157(a) ............................................................................................................... 6

28 U.S.C. § 157(d) ........................................................................................................... 1, 6

## Other Authorities

1 *Collier on Bankruptcy* ¶ 3.01 (15th ed. 1986) .................................................................. 8

## Rules

Fed. R. Bankr. P. 5011 ......................................................................................................... 1

Fed. R. Bankr. P. 5011(a) .................................................................................................... 6

Defendants UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA (together, the "**UBS Defendants**") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, for an order withdrawing the reference of these two adversary proceedings to the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").[1]

## PRELIMINARY STATEMENT

The plaintiff in these two adversary proceedings, the trustee (the "**Trustee**") for the liquidation of the now-notorious Bernard L. Madoff Investment Securities LLC ("**BLMIS**"), seeks to recover in excess of $2 billion on common law tort claims that do not belong to him or to the BLMIS estate, and for which, therefore, he lacks standing. As the Trustee readily concedes throughout his complaints, the damages that he seeks to recover were suffered by BLMIS customers – not by the Trustee or by BLMIS – and he purports to bring his claims on behalf of those customers, even though many of them are already separately pursuing their own claims against the UBS Defendants and other third-party service providers funds with investments in BLMIS. To maintain his claims, the Trustee asserts novel and unprecedented theories of standing that are at odds with the Securities Investor Protection Act ("**SIPA**"), the federal securities statute under which he was appointed and derives his authority. The Trustee's common law claims, moreover, are preempted by the Securities Litigation Uniform Standards Act of 1998 ("**SLUSA**"), because they assert misrepresentations in connection with the purchase or sale of securities and seek damages on behalf of more than 50 persons.

---

[1] The UBS Defendants make this motion while expressly preserving any and all defenses to the underlying claims, including lack of personal jurisdiction.

On this motion, the Court need not definitively decide these issues. Rather, the Court need only decide that these important, threshold matters – on which nearly all of the damages asserted against the UBS Defendants depends – will require significant consideration and interpretation of non-Bankruptcy Code federal statutes. If so, Congress has mandated that these actions be heard in an Article III court, and this Court must withdraw the reference of these adversary proceedings to the Bankruptcy Court.

Two judges in this District have already held, in cases presenting identical issues, that withdrawal of the reference is mandatory in these circumstances. In *Picard v. HSBC Bank PLC*, Nos. 11 Civ. 763 (JSR), 11 Civ. 836 (JSR), 2011 WL 1544494, at *5 (S.D.N.Y. Apr. 25, 2011), Judge Rakoff withdrew the reference "for the limited purpose of resolving two difficult federal questions – whether the Trustee has standing to pursue his common law claims and whether the Trustee's Action is preempted by SLUSA."[2] Judge McMahon followed suit in *Picard v. JPMorgan Chase & Co.*, No. 11 Civ. 0913 (CM), 2011 WL 2119720, at *4 (S.D.N.Y. May 23, 2011), withdrawing the reference because "the SLUSA preemption and SIPA standing questions raised by the Trustee's complaint will require the bankruptcy court to engage in significant consideration of federal non-bankruptcy law."[3]

Here, similarly, this Court should – indeed, must – withdraw the reference because of the significant non-bankruptcy issues surrounding the Trustee's standing under SIPA and the preemption of his common law claims under SLUSA.

---

[2] Judge Rakoff also withdrew the reference in *Picard v. Kohn*, No. 11 Civ. 1181 (JSR) (S.D.N.Y. June 3, 2011), to consider the same two issues, as well as a third that is not relevant here. *See* Declaration of Matthew K. Kelsey in Support of UBS Defendants' Motion to Withdraw the Reference, executed on June 17, 2011 ("**Kelsey Decl.**"), Ex. A.

[3] Unlike Judge Rakoff, Judge McMahon withdrew the reference for the entire proceeding, not just the two issues justifying withdrawal.

2

## BACKGROUND

On December 11, 2008, the Securities and Exchange Commission filed a complaint in the District Court against Bernard L. Madoff and BLMIS (No. 08 CV 10791). Four days later, Judge Stanton entered an order pursuant to SIPA, 15 U.S.C. § 78aaa, *et seq.*, which, *inter alia*, appointed Irving H. Picard, Esq. as trustee for the liquidation of the business of BLMIS pursuant to Section 78eee(b)(3) of SIPA, and removed the proceeding to the Bankruptcy Court pursuant to Section 78eee(b)(4) of SIPA.

On November 23, 2010, the Trustee filed a complaint (the "**Luxalpha Complaint**") against the UBS Defendants and several other persons and entities, alleging wrongdoing in connection with two investment funds, Luxalpha SICAV and Groupement Financier Ltd., for which some of the UBS Defendants provided services.[4] The Trustee alleges that the UBS Defendants "enabled" the Madoff Ponzi scheme and "are liable for at least $2 billion" (Luxalpha Compl. ¶ 1), based on common law claims for aiding and abetting fraud (*id.*, Count Twelve, ¶¶ 331-36), aiding and abetting breach of fiduciary duty (*id.*, Count Thirteen, ¶¶ 337-43), conversion (*id.*, Count Fourteen, ¶¶ 344-47), unjust enrichment (*id.*, Count Fifteen, ¶¶ 348-52), and money had and received (*id.*, Count Sixteen, ¶¶ 353-55). In essence, the Trustee contends that the UBS Defendants were aware of supposed "red flags" concerning BLMIS, but nevertheless provided certain services to several funds that invested money with BLMIS, thereby "provid[ing] those funds with the appearance of legitimacy." *Id.* ¶ 129. (Even as alleged by the Trustee, however, nothing even remotely suggests that the UBS Defendants were aware that BLMIS was a Ponzi scheme or was actually engaged in any wrongdoing whatsoever. Indeed, the Trustee repeatedly alleges that the UBS Defendants knew only what was publicly speculated

---

[4] A copy of the Luxalpha Complaint is attached as Exhibit B to the Kelsey Decl.

3

about BLMIS and, in fact, *lacked* information about BLMIS – not that they *knew* of wrongdoing. *See*, *e.g.*, *id.* ¶¶ 101, 103, 107. The merits of the Trustee's claims, of course, are for another day.)

Almost as an afterthought, the Trustee also asserts two traditional bankruptcy claims against the UBS Defendants, as alleged subsequent transferees of avoidable preferential or fraudulent transfers. *See id.*, Counts Two and Nine, ¶¶ 270-75 & 314-19. On these two claims, the Trustee seeks, at most, $80 million from the UBS Defendants, just 4% of what he seeks on his tort claims. *Id.* ¶ 166.

On his five common law tort claims that are the focus of the Luxalpha Complaint, the Trustee does not assert (nor could he) that the UBS Defendants caused damage to the Trustee or to BLMIS. Rather, he contends that damages were "suffered by BLMIS customers," that the UBS Defendants are "liable to customers," and that the UBS Defendants received money that "rightfully belongs to BLMIS's customers." Luxalpha Compl. ¶¶ 339, 347, 351. Recognizing that the claims alleged here originate with or belong to others, the Trustee alleges that he nevertheless has standing (a) "as bailee" of customer property, (b) pursuant to unidentified "express assignments of certain claims of the applicable accountholders," and (c) as "subrogee" of claims paid by the Securities Investor Protection Corporation ("**SIPC**"), which rights were allegedly "conferred" on the Trustee. *Id.* ¶ 14(f), (g), (h).

On December 7, 2010, the Trustee commenced a second adversary proceeding against the UBS Defendants (the "**LIF Complaint**"), alleging (almost verbatim) the same series of e-mails and memos that constituted the evidence of "red flags" in the earlier Luxalpha Complaint.[5] *See* LIF Compl. ¶¶ 72-92. The Trustee asserts common law claims against the UBS Defendants for

---

[5] The LIF Complaint is attached as Exhibit C to the Kelsey Decl.

4

unjust enrichment and money had and received (*id.*, Counts Twenty-One and Twenty-Two, ¶¶ 343-50), seeking damages in an unspecified amount for monies that, allegedly, "belong to BLMIS's customers." *Id.* ¶ 346; *see also id.* ¶ 349. The Trustee asserts the same basis for his standing as in the Luxalpha Complaint. *Id.* ¶ 33. In addition to the common law claims, the Trustee again asserts two claims against the UBS Defendants as alleged subsequent transferees of avoidable transfers (and again provides no details of the alleged transfers). *Id.*, Counts Two and Eleven, ¶¶ 220-24 & 279-85.

After commencing the two adversary proceedings, it took the Trustee several months to serve process on each of the UBS Defendants. The last of the UBS Defendants was served on June 3, 2011.

## ARGUMENT

## THESE ACTIONS ARE SUBJECT TO
## MANDATORY WITHDRAWAL OF THE REFERENCE

**A.    Bankruptcy Court Jurisdiction Over SIPA Proceedings**

SIPA provides that a district court shall have the same jurisdiction over a SIPA proceeding as it would have over a case arising under the Bankruptcy Code. *See* 15 U.S.C. § 78eee(b)(2)(A). SIPA further provides for the removal of any SIPA proceeding to the bankruptcy court in the same district and that, upon such removal, the bankruptcy court will be vested with "all of the jurisdiction, powers and duties conferred by this chapter [as upon the district court]." *Id.* § 78eee(b)(4). Thus, the statutory scheme governing bankruptcy court subject matter jurisdiction over bankruptcy matters, set forth at 28 U.S.C. §§ 157 and 1334, is applicable to matters that originate as SIPA proceedings. *See, e.g., Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1564 (10th Cir. 1993); *SIPC v. Cheshier & Fuller LLP (In re Sunpoint Sec., Inc.)*, 262 B.R. 384, 393-94 (Bankr. E.D. Tex. 2001).

5

Pursuant to 28 U.S.C. § 1334, district courts have jurisdiction over all civil proceedings "arising under" the Bankruptcy Code, or "arising in" or "related to" cases under the Bankruptcy Code. However, 28 U.S.C. § 157(a) permits the district court to refer to the bankruptcy court within the same district "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." A standing order of this Court, dated July 10, 1984 (Ward, Acting C.J.), automatically refers to the Bankruptcy Court all title 11 cases and proceedings commenced in this District.

**B.     Withdrawal of the Reference**

Despite the automatic referral under the standing order, 28 U.S.C. § 157(d) provides for two circumstances in which the district court either *may* or *must* withdraw the reference to the bankruptcy court:

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown. The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).[6]

Courts interpreting the mandatory withdrawal provision of Section 157(d) have found it applicable where the matter requires "significant interpretation" of non-bankruptcy federal law, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 WL 337667, at *2 (S.D.N.Y. Feb. 10, 2006) (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)), or "substantial and material consideration of non-Bankruptcy Code

---

[6] Motions to withdraw the reference are properly heard in the district court. *See* Fed. R. Bankr. P. 5011(a).

6

federal [law] [*sic*]." *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 995 (2d Cir. 1990)). Notably, mandatory withdrawal is not limited to issues of first impression, *Adelphia*, 2006 WL 337667, at *2, although "[w]here matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Chemtura Corp. v. United States*, No. 10 Civ. 503 (RMB), 2010 WL 1379752, at *1 (S.D.N.Y. March 26, 2010) (citation omitted).

Here, the important issues of the Trustee's standing under SIPA and the preemption of his common law claims under SLUSA require exactly the substantial and material consideration of non-Bankruptcy Code federal law that mandates withdrawal of the reference, as Judges Rakoff and McMahon have already held.[7] These issues do not, as the Trustee may contend, involve mere application of settled law. Rather, each requires a careful analysis of the language and purpose of the federal securities laws, with little or no applicable case law precedent, or (with respect to the standing of a SIPA trustee) the resolution of conflicting authorities. These matters are outside the area of expertise of the Bankruptcy Court, and are precisely the types of disputes and issues that this Court is "better equipped to determine." *AT&T Co. v. Chateaugay Corp.*, 88 B.R. 581, 583 (S.D.N.Y. 1988) ("Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise. This provision also assures litigants that under certain circumstances their assertion of a federally

---

[7] Although the UBS Defendants believe that permissive withdrawal of the reference for cause is also appropriate, given the prior holdings of Judges Rakoff and McMahon on precisely the same issues presented here, the UBS Defendants limit their argument to the issue of mandatory withdrawal.

7

created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and are 'better equipped to determine them than are bankruptcy judges.'" (quoting 1 *Collier on Bankruptcy* ¶ 3.01 at 3-53 (15th ed. 1986))).

1. **The Trustee's Claims Raise Substantial Issues Regarding Whether the Trustee Has Standing Under SIPA**

As noted above, the Trustee does not contend that the UBS Defendants caused damage to BLMIS itself, and he does not assert his tort claims standing in the shoes of BLMIS – the primary wrongdoer whose fraud and breach of fiduciary duty the UBS Defendants are alleged to have aided and abetted. Luxalpha Compl. ¶¶ 332 ("Madoff, through BLMIS, committed a massive fraud"), 338 ("BLMIS breached that fiduciary duty"). That is just as well, because under settled law, the Trustee would be barred from bringing suit as successor to the wrongdoer. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991) (a "claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation"). The *Wagoner* rule is related to the *in pari delicto* doctrine, which "mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464, 912 N.Y.S.2d 508, 517, 938 N.E.2d 941, 950 (2010).

As a result, the Trustee attempts to assert claims on behalf of the thousands of customers of BLMIS. In an ordinary bankruptcy case, however, a trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118 (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972)).

8

What is less clear is whether a SIPA trustee has, as the Trustee here alleges, "broader powers granted by SIPA." Luxalpha Compl. ¶ 13; LIF Compl. ¶ 32. Resolution of this issue necessarily requires significant consideration of SIPA – which appears in title 15 of the United States Code, part of the federal securities laws – making withdrawal mandatory under 28 U.S.C. § 157(d). *See HSBC Bank*, 2011 WL 1544494, at *2 (rejecting Trustee's argument that SIPA is part of the Bankruptcy Code, because "SIPA expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934. . . . SIPA is, first and foremost, concerned with the protection of securities investors (as its very title states), whether in or outside the bankruptcy context."); *JPMorgan*, 2011 WL 2119720, at *7 ("[A]n issue that requires significant interpretation of SIPA undoubtedly requires consideration of laws other than Title 11.").

Judges Rakoff and McMahon have each recently provided extensive discussion of the competing considerations for and against the Trustee's standing as bailee, assignee, or subrogee under SIPA. *See HSBC Bank*, 2011 WL 1544494, at *3-4; *JPMorgan*, 2011 WL 2119720, at *6-7. In brief, the Trustee has relied on *Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), decided by a divided panel of the Second Circuit, to support his standing as bailee or subrogee. *Redington*, however, was subsequently **overruled** by the Supreme Court on other grounds. *See Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979).[8] And subsequent decisions

---

[8] The Supreme Court held, contrary to the Second Circuit, that there is no private right of action under Section 17(a) of the Securities Exchange Act of 1934. 442 U.S. at 568-78. As a result, the Second Circuit should never have reached the question of the trustee's standing, meaning that its ruling on that issue is no longer good law. *See Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1041 (9th Cir. 2010) ("[W]hen the Supreme Court reverses a lower court's decision on a threshold question . . . it effectively holds the lower court erred by reaching the merits of the case." (citing *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) ("[T]he prudential standing doctrine [is a] 'threshold question.'"))).

9

by the Supreme Court and the Second Circuit have "cast doubt on *Redington*'s continued viability and on the Trustee's basis for standing, either as a bailee of customer property or as a subrogee of SIPC's subrogation rights." *JPMorgan*, 2011 WL 2119720, at *6; *see also HSBC Bank*, 2011 WL 1544494, at *3-4 (citing *Holmes v. SIPC*, 503 U.S. 258, 270 (1992) ("SIPC's theory of subrogation is fraught with unanswered questions."), and *Wagoner, supra*).

In addition to Judges Rakoff and McMahon, other judges in this District have noted the questionable authority of *Redington*. In *Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 558 (S.D.N.Y. 1990), Judge Pollack departed from the Second Circuit majority's ruling in *Redington*, and held that a SIPA trustee "is not granted the power to bring fraud claims against third parties on behalf of customers." Judge Pollack held that the text of SIPA allowed SIPC to be subrogated only to claims against the debtor, and not to claims alleging fraud against a third party. *See id*. at 556-57.[9]

After the *Mishkin* ruling, Judge Preska issued a decision in which she felt constrained to follow *Redington*, but noted that, on the subject of subrogation, *Mishkin* was "more faithful to the letter and purpose of [SIPA]" than *Redington*. *SIPC v. BDO Seidman, LLP*, 49 F. Supp. 2d 644, 653 (S.D.N.Y. 1999). On the issue of a SIPA trustee's standing as bailee, she also found "the dissent's reasoning in *Redington* more persuasive than the majority's." *Id.* at 654. Judge Preska rejected the theory of assignee standing that is asserted here by the Trustee, finding that SIPA only permits the trustee to receive assignments of customers' net equity claims against the broker, and not claims against third parties. *Id.* at 654 n.7. That final aspect of her decision has repeatedly been followed by other courts in this District. *See, e.g., Picard v. Taylor (In re Park*

---

[9] Judge Pollack's decision in *Mishkin* was later cited favorably by the Supreme Court in *Holmes*, 503 U.S. at 270.

10

*S. Sec., LLC)*, 326 B.R. 505, 515 (Bankr. S.D.N.Y. 2005); *Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.)*, 280 B.R. 794, 803 (Bankr. S.D.N.Y. 2002).

Undoubtedly, the Trustee will make arguments in support of his standing. On this motion, the Court need not resolve these conflicting positions. It is sufficient to recognize that resolution of the issue will require significant consideration and interpretation of SIPA.

### 2. The Trustee's Claims Raise Substantial Issues Regarding Whether They Are Preempted by SLUSA

Congress enacted SLUSA in 1998 to prevent securities plaintiffs from attempting to circumvent the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995. In relevant part, SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

Once again, Judges Rakoff and McMahon have provided thorough analyses of the significant consideration of SLUSA that will be required to determine whether the Trustee's common law claims are preempted. *HSBC Bank*, 2011 WL 1544494, at *5; *JPMorgan*, 2011 WL 2119720, at *4-7. Most of the elements of SLUSA preemption are indisputably present: the Trustee's claims are based on state common law; he alleges misrepresentations of material fact

11

by BLMIS;[10] and those misrepresentations were "in connection with the purchase or sale of a covered security."[11]

In prior cases, the Trustee's argument has focused on whether each of his lawsuits is a "covered class action." SLUSA defines a "covered class action" as "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B). The Trustee has argued that he is only one "person," thus making SLUSA inapplicable. But as explained above, the Trustee is unquestionably seeking damages "on behalf of" thousands of BLMIS customers,[12] thereby implicating SLUSA, and thus, as Judge McMahon has held, "[t]he Trustee misses the point." *JPMorgan*, 2011 WL 2119720, at *5.

As Judge McMahon further noted, there is little guidance in the Second Circuit addressing the definition of a "covered class action" in these circumstances. *Id.* In the Third Circuit, however, there is a case on point, *LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008). In *LaSala*, a liquidating trust attempted to assert claims that were assigned to it *both* by a bankrupt corporation *and* by shareholders of the corporation. The Third Circuit held that the second set of claims (those assigned by the shareholders) "would seem to take the form of a

---

[10] *See, e.g.*, Luxalpha Compl. ¶¶ 47-58 (describing BLMIS's "fraudulent" business, its "fictitious hedging strategy," trades reported that were "a complete fabrication," and Madoff's "lie"); LIF Compl. ¶¶ 22-29.

[11] Because Madoff allegedly made misrepresentations about his purchase and sale of common stocks in the S&P 100 Index, it is irrelevant that he may not actually have traded any such stocks. *See, e.g.*, *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 430 (S.D.N.Y. 2010) (finding SLUSA applicable even though Madoff's "trades never took place"); *Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *4-5 (S.D.N.Y. Mar. 10, 2010) ("[I]t is not necessary that the purchase or sale [of a covered security] actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit.").

[12] According to the Trustee's website, he has allowed 2,414 customer claims as of June 3, 2011. *See* Kelsey Decl., Ex. D.

12

covered class action"; in other words, "the phrase ['on behalf of 50 or more persons'] refers to the assignors of a claim, not to the assignee."  519 F.3d at 138, 134; *see also RGH Liquidating Trust v. Deloitte & Touche LLP*, 71 A.D.3d 198, 215, 891 N.Y.S.2d 324, 337 (1st Dep't 2009) (holding that claims assigned to liquidating trust by bondholders of bankrupt corporation were preempted by SLUSA).

Thus, whatever authority the Trustee may attempt to muster to support his position, it is clear that resolution of the issue will require careful analysis of SLUSA's language, purpose, and history, and consideration of the interpretation given to SLUSA in *LaSala* and *RGH*. Accordingly, withdrawal of the reference is required.

13

## CONCLUSION

For the foregoing reasons, this Court should withdraw the reference to the Bankruptcy Court, and these adversary proceedings should be heard in the District Court.

Dated:   New York, New York
         June 17, 2011

GIBSON, DUNN & CRUTCHER LLP

By:     /s/ Marshall R. King
    Mark A. Kirsch (MK-7806)
    mkirsch@gibsondunn.com
    Marshall R. King (MK-1642)
    mking@gibsondunn.com
    Matthew K. Kelsey (MK-3137)
    mkelsey@gibsondunn.com
    Gabriel Herrmann (GH-2436)
    gherrmann@gibsondunn.com

200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and UBS Third Party Management Company SA*

101091584.5

14