**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05354 (SMB) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND, N.V.), | |
| Defendant. | |

**ABN AMRO BANK N.V.'S (presently known as THE ROYAL BANK OF SCOTLAND N.V.) ("RBS/ABN") MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL FROM THE BANKRUPTCY COURT'S ORDER CONCERNING RBS/ABN'S MOTION TO DISMISS BASED ON EXTRATERRITORIALITY**

## Table of Contents

**Page(s)**

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Background Necessary To Understand The Question Presented .................................... 3

    A.    The Rye Cayman Transfers At Issue In This Action ............................... 3

    B.    The Dismissed Harley Cayman Transfers .............................................. 4

    C.    Relevant Procedural History ................................................................. 5

Standard For Granting Leave To Appeal ...................................................................... 9

Questions Presented On Appeal ................................................................................. 10

Fundamental Legal Errors in the Bankruptcy Court's Decision & Relief Sought ....... 10

    1.    The Bankruptcy Court Erred In Failing To Dismiss The Rye Cayman Claims On Comity Grounds .................................................................. 10

    2.    The Bankruptcy Court Erred In Failing To Dismiss The Rye Cayman Claims As Barred By The Presumption Against Extraterritoriality. ...................................... 13

        a.    The Bankruptcy Court ignored the District Court's view that the transferor and transferee's places of organization are the sine qua non for determining whether a transfer is extraterritorial for purposes of Section 550(a). .................................................................................... 13

        b.    The Bankruptcy Court incorrectly held that use of a correspondent bank account was a determinative factor. ...................................... 15

ARGUMENT ............................................................................................................ 16

    I.    This Court Should Grant Leave To Appeal Under 28 U.S.C. § 158(A)(3). ......... 16

        A.    It is undisputed that there are two controlling questions of law: Extraterritoriality and Comity. ................................................................. 16

        B.    Substantial grounds exist for differences of opinion on the controlling questions of law. ............................................................. 16

        C.    Immediate appeal will materially advance termination of the litigation. . 20

    II.    Exceptional Circumstances Merit Immediate Review ......................................... 21

Conclusion ............................................................................................................... 22

## Table of Authorities

**Page(s)**

**Cases**

*Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.)*,
    No. 01-16034 (SAS), 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ................................10, 19

*In re Madoff Securities*,
    513 B.R. 222 (S.D.N.Y. 2014)................................................................................ *passim*

*Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp.)*
    93 F.3d 1036 (2d Cir. 1996)..............................................................................6, 11, 13, 16

*In re Midland Euro Exch. Inc.*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006)........................................................................13, 15

*Mishkin v. Ageloff*,
    220 B.R. 784 (S.D.N.Y. 1998)............................................................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)......................................................................................................6, 16

*Murray, Hollander, Sullivan & Bass v. Hardwicke Cos. Inc. (In re Hardwicke
    Companies Inc.)*,
    56 B.R. 244 (S.D.N.Y. 1985)................................................................................................9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 12-mc-0115 (JSR) (S.D.N.Y. Jun. 7, 2012), ECF. No. 167................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. Adv. Pro. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov.
    22, 2016) ................................................................................................................ *passim*

*Transportation Workers Union of Am., Local 100, AFL-CIO v. New York City
    Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005)................................................................................20

**Statutes**

11 U.S.C. § 550(a)(2)............................................................................................................6

28 U.S.C. §157......................................................................................................................5

28 U.S.C. §158(a)(3).....................................................................................................1, 3, 9

28 U.S.C. § 1292(b) ..............................................................................................9, 16, 17, 20

**Other Authorities**

16 Charles A. Wright et al., *Fed. Prac. & Proc. Juris.* § 3930 (2d ed. 2012) ...............................16

10 *Collier on Bankruptcy* § 8019.01 (15th ed. 2011) ....................................................................21

Fed. R. Bankr. P. 8004 ...................................................................................................................1

Fed. R. Bankr. P. 8028 ...............................................................................................................3, 21

Fed. R. Civ. P. 54(b) .....................................................................................................................21

ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("RBS/ABN") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. §158(a)(3) and Rule 8004 of the Federal Rules of Bankruptcy Procedure, for leave to appeal the March 3, 2017 Order of the Bankruptcy Court, ECF No. 117, (the "Rye Order") (attached as "Exhibit C" to the accompanying *Declaration of Michael S. Feldberg In Support Of [RBS/ABN]'s Motion For Leave To Appeal From The Bankruptcy Court's Order Concerning RBS/ABN's Motion To Dismiss Based On Extraterritoriality*) denying RBS/ABN's motion to dismiss based on comity and extraterritoriality grounds.

### Preliminary Statement

In this case (the "Rye Action"), one of many clawback actions brought by Irving H. Picard (the "Trustee"), the Trustee seeks to avoid, pursuant to Section 550(a) of the Bankruptcy Code, approximately $149 million in subsequent transfers from two Cayman Islands feeder funds to RBS/ABN, a Dutch company. Under the doctrine of international comity, the District Court previously instructed the Bankruptcy Court to abstain from determining such claims, in deference to the feeder funds' home jurisdictions' greater interest in the disputes. The Bankruptcy Court, however, did not follow the District Court's analysis with respect to these Cayman Islands-related claims against RBS/ABN in the Rye Action, effectively grafting onto the District Court's rule the limitation that deference to the Cayman Islands is somehow not warranted if the particular Cayman Island foreign feeder fund that made the transfer is not in liquidation.

Similarly, the District Court previously instructed the Bankruptcy Court to dismiss claims concerning "subsequent transfers received abroad by a foreign transferee from a foreign transferor" based on precedent holding that claims with respect to transfers between foreign entities are barred by the *Morrison* presumption against extraterritoriality, regardless of

where the transfer of title occurred or the location of the principals' "residences." The

Bankruptcy Court, however, again departed from the District Court's instruction, basing its

decision on the very factors that are irrelevant under the precedent relied upon by the District

Court. Again, the result was that the Bankruptcy Court refused to dismiss these Cayman Islands-

related claims against RBS/ABN.

RBS/ABN, through this motion for leave to appeal, seeks review of the

Bankruptcy Court's refusal to dismiss these Cayman Islands-related claims in the Rye Action on

comity and extraterritoriality grounds. On both issues, the Bankruptcy Court's decision is

incorrect as a matter of law and contrary to the District Court's guiding decision in this case.

The erroneous and arbitrary nature of the Bankruptcy Court's refusal to dismiss

the Cayman Islands-related claims in the Rye Action is highlighted by its dismissal of factually

indistinguishable Cayman-related claims in *Picard v. ABN AMRO Bank N.V. (presently known

as The Royal Bank of Scotland N.V.),* Adv. Pro. No. 11-02760 (SMB) (the "Harley Action"), a

related proceeding against RBS/ABN. The relevant facts underlying both the Rye Action and the

Harley Action are nearly identical—both concern transfers from New York bank accounts of

companies organized under the laws of the Cayman Islands to RBS/ABN's account held at its

New York Branch.[1] The Trustee even alleges that RBS/ABN's decision to invest with the Harley

Cayman Fund was merely a continuation of its strategy of investing with the Rye Cayman Funds.

Despite these similarities and intertwined allegations—and the fact that the District Court

instructed the dismissal of claims relating to subsequent transfers made by the Harley Cayman

---

[1]      In the Rye Action, the Trustee seeks to avoid approximately $149 million of transfers
(the "Rye Cayman Claims") from two Cayman Islands corporations known as Rye Select Broad
Market XL Portfolio ("Rye Cayman Fund I") and Rye Select Broad Market Portfolio Limited
("Rye Cayman Fund II") (collectively, the "Rye Cayman Funds"). In the Harley Action, the
Trustee seeks to avoid transfers from another Cayman Islands corporation, Harley International
(Cayman) Limited (the "Harley Cayman Fund").

Fund to foreign transferees on both comity and extraterritorial grounds—the Bankruptcy Court managed to reach opposite results in the Rye and Harley Actions, by (a) dismissing the Harley Action on grounds of international comity, (b) not reaching the extraterritoriality question in the Harley Action, and (c) refusing to dismiss the Rye Action on comity or extraterritoriality grounds. The only difference between these two cases is that the Harley Cayman Fund is currently in foreign liquidation proceedings in the Cayman Islands. But that fact is irrelevant under the law and the District Court's controlling Opinion and Order. The Bankruptcy Court plainly erred in treating these claims differently simply because the Rye Cayman Funds are not in foreign liquidation.

RBS/ABN respectfully submits that an interlocutory appeal of the Rye Order is warranted pursuant to 28 U.S.C. § 158(a)(3) and Rule 8028 of the Bankruptcy Rules. The Trustee is currently appealing the Bankruptcy Court's decision to dismiss the Harley Action, and RBS/ABN should be permitted to litigate contemporaneously the overlapping questions of law underlying Bankruptcy Court's decisions in the Rye and Harley Actions.

## **Background Necessary To Understand The Question Presented**

## A. **The Rye Cayman Transfers At Issue In This Action**[2]

RBS/ABN is a commercial bank incorporated under the laws of the Netherlands. Rye Proffered Allegations ¶ 8. Rye Cayman Fund I and Rye Cayman Fund II are two investment funds incorporated in the Cayman Islands. *Id.* at ¶¶ 14, 15. The Trustee alleges that in September 2006, RBS/ABN entered into an initial swap agreement with Rye Cayman Fund I. *Id.* at ¶ 21. In connection with that swap agreement, the Trustee alleges that RBS/ABN received $74.6 million

---

[2]    All allegations in this section are derived from the Amended Complaint ("Rye Amended Complaint"), ECF No. 47, and the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("Rye Proffered Allegations"), ECF No. 101.

in subsequent transfers from Rye Cayman Fund I. *Id.* The Trustee also alleges that in September

2006, RBS/ABN entered into a subscription agreement with Rye Cayman Fund II and, over the

course of time, received $74.4 million of transfers from Rye Cayman Fund II.[3] *Id.* at ¶ 22. The

Trustee alleges that the Rye Cayman Fund transfers were sent from accounts at the Bank of New

York to RBS/ABN's New York Branch account. *Id*. at ¶¶ 67, 68.[4]

**B.     The Dismissed Harley Cayman Transfers[5]**

            The Trustee alleges that following RBS/ABN's investments in the Rye Cayman

Funds, and as a continuation of its strategy to invest with the Rye Cayman Funds, in May 2008

RBS/ABN invested in Harley Cayman Fund. Harley Proffered Allegations ¶¶ 3, 9, 15–20. Like

the Rye Cayman Funds, Harley Cayman Fund was organized under the laws of the Cayman

Islands. *Id*. at ¶ 8. The Trustee alleges that RBS/ABN received approximately $21,799,720 in

---

[3]      The Trustee acknowledges that Rye Cayman II had accounts in Bermuda that may have received some of RBS/ABN's initial subscription payments. The Trustee alleges that after November 2006, RBS/ABN's subscription payments to Rye Cayman II ceased to be processed through those Bermudian accounts, and "flowed solely through U.S. bank accounts." Rye Proffered Allegations ¶ 90.

[4]      In November 2007, RBS/ABN entered into a structurally similar, but separate set of transactions with two Delaware-registered limited partnerships, Rye Select Broad Market XL Fund, L.P. and Rye Select Broad Market Fund, L.P (the "Rye Delaware Funds"). Rye Proffered Allegations ¶¶ 42–44. The Trustee's claims in the Rye Action also seek to recover an alleged series of subsequent transfers from those funds to RBS/ABN that eventually totaled $87.5 million and $1.4 million respectively. Rye Amended Complaint ¶¶ 81–82. RBS/ABN's motion to dismiss on extraterritoriality and comity grounds did not seek to dismiss the Trustee's claims with respect to those transfers. While the legal issues central to the merits of RBS/ABN's appeal of the Rye Order do not directly impact those transfers, RBS/ABN notes that if its appeal of the Rye Order is granted, the discovery necessary to determine the surviving claims will be meaningfully curtailed because the Rye Cayman Claims involve issues that predate RBS/ABN's investments in the Rye Delaware Funds.

[5]      All allegations in this section are derived from the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.), *Picard v. ABN AMRO Bank N.V. (Presently Known as The Royal Bank of Scotland N.V.)*, Adv. Pro. No. 11-02760 (SMB) (Bankr. S.D.N.Y. Jun. 27, 2015) ("Harley Proffered Allegations"), ECF No. 58.

subsequent transfers from Harley Cayman Fund from an account in New York to RBS/ABN's

New York Branch account—the same account that received the Rye Cayman Fund transfers. *Id.*

at ¶ 23. Harley Cayman Fund subsequently entered into a liquidation proceeding in the Cayman

Islands. *Id.* at ¶ 8.

**C.      Relevant Procedural History**

On December 8, 2010, the Trustee commenced the Rye Action, seeking to

recover the subsequent transfers from the Rye Cayman Funds to RBS/ABN as well as the Rye

Delaware Fund subsequent transfers to RBS/ABN. Compl., ECF No. 1. Ten months later, on

October 6, 2011, the Trustee initiated the Harley Action in an attempt to recover the subsequent

transfers from Harley Cayman to RBS/ABN. Compl., Harley Action, Adv. Pro. No. 11-02760

(SMB) (Bankr. S.D.N.Y. Oct. 6, 2011), ECF No. 1.

With respect to this and numerous other cases, pursuant to 28 U.S.C. §157 the

District Court withdrew the reference to determine whether "SIPA and/or the Bankruptcy Code

as incorporated by SIPA apply extraterritorially, permitting the Trustee to avoid initial transfers

that were received abroad or to recover from initial, immediate, or mediate foreign transferees."

Order at 3, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No.

12-mc-0115 (JSR) (S.D.N.Y. Jun. 7, 2012), ECF. No. 167. RBS/ABN, along with numerous

other defendants, filed a motion to dismiss on extraterritoriality grounds, seeking to dismiss the

Trustee's claim to avoid the approximately $149 million in transfers from the Rye Cayman

Funds to RBS/ABN.

On July 7, 2014, the District Court issued its decision, *In re Madoff Securities*,

513 B.R. 222 (S.D.N.Y. 2014) (the "Opinion and Order"), ruling in favor of foreign subsequent

transferees such as RBS/ABN, finding that (i) "section 550(a) does not apply extraterritorially to

allow for the recovery of subsequent transfers received abroad by a foreign transferee from a

foreign transferor," *id.* at 232, and—independent of that extraterritoriality analysis—(ii)

principles of international comity counsel against the application of U.S. law to avoid transfers

made from foreign funds (including Cayman Islands funds) to foreign transferees. *Id.*

In reasoning under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010),

that extraterritoriality precluded the Trustee's claims to avoid the transfers at issue, the District

Court found that:

- Section 550(a)(2) of the Bankruptcy Code does not have extraterritorial reach, Opinion and Order, 513 B.R. at 231, nor does SIPA, which has a "predominantly domestic focus." *Id.* at 230.

- The "regulatory focus" of Section 550(a)(2) is the subsequent transfer, not the relationship to the debtor; therefore the origination of funds with BLMIS in New York is irrelevant to the extraterritoriality inquiry. *Id.* at 227.

- The relevant subsequent transfers were "thoroughly foreign" because the "transfers and transferees are predominantly foreign: foreign feeder funds transferring assets abroad to their foreign customers and other foreign transferees." *Id.* at 227–8.

- "[T]o the extent that the Trustee's complaints allege that both the transferor and the transferee reside outside of the United States, there is no plausible inference that the transfer occurred domestically." *Id.* at 232 n.4.

Therefore, recovery of these foreign transfers would require the impermissible extraterritorial

application of Section 550(a).

On separate alternative grounds, the District Court determined that "concerns of

international comity" independently precluded avoidance of the foreign subsequent transfers at

issue, warranting dismissal of such claims. *Id.* at 231. The District Court explained that under the

international comity analysis, a court must determine which jurisdiction has a greater interest in

applying its own laws. *See id.* In this case, the District Court concluded that:

- "Given the indirect relationship between Madoff Securities and the transfers at issue here, these foreign jurisdictions have a greater interest in applying their own laws than does the United States." *Id.* at 232 (citing *Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1053 (2d Cir. 1996)).

6

- "[I]nvestors in these foreign funds had no reason to expect that U.S. law would apply to their relationships with the feeder funds." *Id.*

The District Court also noted that *illustrative* of its conclusion that foreign jurisdictions had a greater interest in applying their own laws with respect to the present claims was the fact that numerous foreign funds (including Harley Cayman Fund) had entered liquidation proceedings in their respective jurisdictions. *Id.* In its analysis, the District Court held out Harley Cayman as an example of a fund whose subsequent transfers could not be avoided by the Trustee using Section 550(a), since such claims would be precluded on both extraterritoriality and comity grounds. *See id.* at 225–26, 232 (discussing Harley Cayman Fund in the context of both analyses).

The District Court returned the adversary proceedings to the Bankruptcy Court for further proceedings consistent with the Opinion and Order. *Id.* at 232–33. RBS/ABN (along with other defendants in related litigations) then renewed its motion to dismiss before the Bankruptcy Court, seeking dismissal on comity and extraterritoriality grounds pursuant to the Opinion and Order, on December 31, 2014. In response, the Trustee opposed these motions and also put forth the Harley Proffered Allegations and Rye Proffered Allegations in support of his opposition, both of which contain allegations that were not before the District Court when the Opinion and Order was rendered. Omnibus and case-specific reply briefs were filed on September 30, 2015.

Following extensive briefing and argument, on November 22, 2016, the Bankruptcy Court issued its Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) (the "Memorandum Decision"). The Memorandum Decision granted motions to dismiss numerous cases—including the Harley Action—on international comity grounds. With respect to comity, the Bankruptcy

7

Court correctly opined that:

- "[t]he United States has no interest in regulating the relationship between [foreign feeder funds] and their [foreign] investors." *Id.* at *14;

- "the Cayman Islands has a greater interest in regulating the activities that gave rise to the Trustee's subsequent transfer claims." *Id.*at *16; and

- "[c]omity among nations does not require parallel proceedings." *Id.* at *12.

But then the Bankruptcy Court declined to dismiss claims relating to subsequent transfers from funds not in foreign liquidation proceedings, including the Rye Cayman Claims. *Id.* at **29–30. Only subsequent transfer claims relating to funds in foreign liquidation proceedings—such as those at issue in the Harley Action—were dismissed on comity grounds. *Id.* at **15–16.

With respect to extraterritoriality, the Bankruptcy Court recognized that the Order and Opinion "highlight[ed] the *place of organization* as the *sine qua non* of foreignness." *Id.* at *17 (citing the Opinion and Order, 513 B.R. at 227–28) (first emphasis added). But then the Bankruptcy Court held that the *passage of title* and not the parties' citizenships or places of incorporation is "[t]he single most important factor in determining whether the presumption against extraterritoriality has been rebutted . . . ." *Id.* at *25. As a result, the Bankruptcy Court refused to dismiss claims to avoid subsequent transfers which took place between two foreign entities, both organized in foreign jurisdictions, where the money was transferred through a non-correspondent U.S. bank account.[6] *Id.* at *30. Based on this analysis, the Bankruptcy Court held that extraterritoriality did not preclude avoidance of transfers from the Rye Cayman Funds (both Cayman Islands corporations) to RBS/ABN, a foreign transferee.

Pursuant to the Memorandum Decision, on March 3, 2017 the Bankruptcy Court

---

[6]    Even with respect to money transferred from one foreign entity to another foreign entity through a U.S. correspondent bank account, the Bankruptcy Court believed that such transfers should be considered domestic, but held otherwise only because it was "bound to apply the District Court's [explicit] ruling." *Id.* at *20 n.19.

issued the Rye Order, denying dismissal of the Rye Cayman Claims in the Rye Action. ECF. No. 117. On the same day, the Bankruptcy Court entered a final order dismissing the Harley Action. Harley Action, Adv. Pro. No. 11-02760 (SMB) (Bankr. S.D.N.Y. Mar. 3, 2017), ECF No. 74. The Trustee is appealing the numerous cases—including the Harley Action—in which the Bankruptcy Court, pursuant to the Memorandum Decision, granted motions to dismiss. In the Harley Action, RBS/ABN has objected to the Trustee's request that the Bankruptcy Court certify a direct appeal to the United States Court of Appeals for the Second Circuit and the Bankruptcy Court is currently considering that motion. *See* Harley Action, Adv. Pro. No. 11-02760 (SMB) ECF Nos. 77–78, 83.

RBS/ABN seeks leave to appeal the denial of its motion to dismiss the Rye Action, so that it has an opportunity to litigate the issues of extraterritoriality and international comity as they apply to the Rye Action at the same time that other parties (and RBS/ABN itself in the Harley Action) are litigating precisely the same issues.

## **Standard For Granting Leave To Appeal**

Interlocutory appeals from the bankruptcy court are discretionary, and are governed by 28 U.S.C. § 158(a)(3), under which courts in this district generally invoke the standard set forth in 28 U.S.C. § 1292(b). *Murray, Hollander, Sullivan & Bass v. Hardwicke Cos. Inc. (In re Hardwicke Companies Inc.)*, 56 B.R. 244, 246 (S.D.N.Y. 1985) (granting leave to appeal an interlocutory order of the bankruptcy court). Under 28 U.S.C. § 1292(b), leave to appeal may be granted if the order being appealed from (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Moreover, "exceptional circumstances" may also warrant granting an appeal. *See Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.*), No. 01-16034 (SAS), 2006 WL

2548592, at *3 (S.D.N.Y. Sept. 5, 2006). And because Bankruptcy Courts lack Article III status,

their decisions are particularly susceptible to interlocutory appeal. *See Mishkin v. Ageloff*, 220

B.R. 784, 791 (S.D.N.Y. 1998) (describing a district court's jurisdiction to review a bankruptcy

court's decision as broader than the appellate jurisdiction available to a circuit court reviewing a

district court's decision). As shown below, an interlocutory appeal in the Rye Action is

warranted.

## Questions Presented On Appeal

1.  Whether the Bankruptcy Court erred by refusing to dismiss claims to avoid subsequent
    transfers, pursuant to Section 550(a) of the Bankruptcy Code, from the Rye Cayman
    Funds, organized under the laws of the Cayman Islands, to RBS/ABN, a commercial
    bank incorporated under the laws of the Netherlands, on principles of international
    comity even though these claims are based on transfers identical in *relevant* facts to those
    dismissed in numerous other actions, including the Harley Action against RBS/ABN.

2.  Whether the Bankruptcy Court erred by refusing to dismiss claims to avoid subsequent
    transfers, pursuant to Section 550(a) of the Bankruptcy Code, from the Rye Cayman
    Funds, organized under the laws of the Cayman Islands, to RBS/ABN, a commercial
    bank incorporated under the laws of the Netherlands, that are barred by the presumption
    against extraterritoriality.

## Fundamental Legal Errors in the Bankruptcy Court's Decision & Relief Sought

The Bankruptcy Court failed to follow the District Court's directives and erred in

two primary respects: (i) the Bankruptcy Court failed to follow the doctrine of international

comity which, as set out by the District Court, mandates dismissal of the Rye Cayman Claims;

and (ii) the Bankruptcy Court failed to follow District Court's directive that claims for avoidance

of transfers from a foreign fund to a foreign transferee, such as the Rye Cayman Claims, are

barred by the presumption against the extraterritorial application of U.S. laws.

## 1.     The Bankruptcy Court Erred In Failing To Dismiss The Rye Cayman Claims On Comity Grounds.

The directive of the District Court was straightforward. Principles of international

comity, or "comity of nations," present a separate and independent basis to dismiss the Trustee's

claims to avoid subsequent transfers from a fund in a foreign jurisdiction to its foreign clients.

This is because those foreign jurisdictions "have a greater interest in applying their own laws

than does the United States." Opinion and Order, 513 B.R. at 232. The District Court held that

the Cayman Islands is such a jurisdiction. *See id.* (noting that Harley Cayman Fund's home

jurisdiction had its own rules that would govern the Trustee's claims). The Bankruptcy Court

recognized both of these aspects of the District Court's international comity analysis. Mem

Decision, 2016 WL 6900689, at *16 ("[T]he Cayman Islands has a greater interest in regulating

the activities that gave rise to the Trustee's subsequent transfer claims . . . ."). Yet the

Bankruptcy Court did not dismiss the Rye Cayman Claims.

Ironically, the Bankruptcy Court's error appears to result from misunderstanding

an example provided by the District Court. That example was meant to clarify the importance of

the international comity doctrine rather than confound the Bankruptcy Court's comity analysis.[7]

The District Court explained that the fact that many funds were in liquidation in their foreign

jurisdictions served to *illustrate* that "foreign jurisdictions have a greater interest in applying

their own laws [to subsequent transfers from foreign funds] than does the United States."

Opinion and Order, 513 B.R. at 232. Instead of recognizing this example as an illustration of a

broader concept—that transfers from foreign funds should be governed by foreign law—the

Bankruptcy Court made this factor a *requirement*, applying the principles of international comity

only when a foreign liquidation proceeding was present. As a result, the Bankruptcy Court erred

in its comity among nations analysis because it dismissed only claims involving subsequent

---

[7]    As the Bankruptcy Court recognized, "international comity" refers to two distinct
doctrines, comity among courts and comity among nations. Mem. Decision, 2016 WL 6900689,
at *12 (citing *Maxwell Commc'n Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp*,
93 F.3d 1036, 1047 (2nd Cir. 1996)). While parallel proceedings are a factor in "comity among
courts" analysis, "comity among nations does not require parallel proceedings." *Id.*

transfers from foreign funds that had actually gone into liquidation proceedings in the Cayman Islands (*e.g.*, Harley Cayman Fund) but not from Cayman Islands funds that had not commenced liquidation proceedings (*i.e.* the Rye Cayman Funds). *See*, *e.g.*, Mem Decision, 2016 WL 6900689, at *17 (refusing to dismiss claims pertaining to funds where "[t]he Court has not been directed to any information regarding those liquidations . . . ."). The District Court did not make that distinction, so the Bankruptcy Court's analysis with regard to the Rye Cayman Claims was faulty.

To hold that an actual liquidation is required to invoke comity of nations cuts against the very principles that the Bankruptcy Court purports to invoke. As acknowledged by the Bankruptcy Court, foreign jurisdictions have "a greater interest [than the U.S.] in regulating the . . . validity or invalidity of payments by [a foreign fund] to its investors and service providers." *Id.* at *16. This is most certainly the case with foreign jurisdictions such as the Cayman Islands, which acknowledge the right of foreign debtors, such as the Trustee, to sue in the Cayman Islands and invoke Cayman Islands avoidance law. *Id.* Where the Bankruptcy Court erred is that these interests exist regardless of whether a foreign fund has initiated foreign liquidation proceedings, or whether it has not entered into liquidation but retains the option to do so in the future. To the contrary, foreign jurisdictions such as the Cayman Islands have an interest in their laws being consistently applied to similarly situated Cayman Islands corporations, where the underlying claims relate to transactions entered into under nearly identical circumstances, regardless of the existence of liquidation proceedings.

2.      **The Bankruptcy Court Erred In Failing To Dismiss The Rye Cayman Claims As Barred By The Presumption Against Extraterritoriality.**

    a.      **The Bankruptcy Court ignored the District Court's view that the transferor and transferee's places of organization are the sine qua non for determining whether a transfer is extraterritorial for purposes of Section 550(a).**

In its controlling opinion, the District Court applied a standard that looks to the place of incorporation of the parties to determine whether or not a transaction is deemed extraterritorial for purposes of Section 550(a), citing to *Maxwell* as well as *In re Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006). In both *Midland* and *Maxwell*, the key factor in deeming transfers extraterritorial was that the transacting parties were non-U.S. citizens, not where the transfer of title occurred. To the contrary, in both cases transfer of title occurred in the United States.[8] Nor was the location of residence of the transferor important. In both *Midland* and *Maxwell*, the residence of the principals was—like the Rye Cayman Funds here—clearly in the United States. *See Midland*, 347 B.R. at 712 (the principals of the Barbados corporate transferor resided and operated their Ponzi scheme out of the United States); *see also Maxwell*, 93 F.3d at 1040 (foreign transferor was an English company, but with the majority of its assets in the United States).

In the Memorandum Decision, the Bankruptcy Court explicitly recognized that the District Court had highlighted the place of organization as the *sine qua non* of foreignness, Memorandum Decision, 2016 WL 6900689, at *6, and that the District Court had cited to both *Maxwell* and *Midland* as authority, *id.*, at *17 (noting that "Judge Rakoff observed that . . . [and

---

[8]      In *Maxwell*, funds were transferred from a New York branch account in the name of the foreign beneficiary transferee, and then immediately transferred to a foreign account. 93 F.3d at 1041. In *Midland*, funds were transferred from a bank account in London to a bank account in New York belonging to the beneficiary and only later were transferred to a foreign bank. 347 B.R. at 713. Additionally, in neither case was the U.S. account receiving the funds a correspondent account, so title was transferred in the U.S. in both cases, but the transfers were still deemed foreign.

u]nder similar factual circumstances, the *Maxwell* and *Midland* courts had found [that] transfers between foreign entities []'implicate extraterritorial application of the Bankruptcy Code's avoidance provisions.'" (quoting Opinion and Order, 512 B.R. at 227–28)). But the Bankruptcy Court went on to conclude that the extraterritoriality analysis should be based on two different factors: (i) primarily, the location of transfer of title and (ii) the parties' residence (principal place of business). Mem. Decision, 2016 WL 6900689, at *25.

The Bankruptcy Court's use of a "transfer of title and residence" standard is error because it directly contravenes the *Maxwell* and *Midland* cases relied upon by the District Court. In those cases, the transfers at issue were deemed foreign despite the fact that the transferors' principal places of business were in the U.S. and the transfer of title occurred in the U.S. The Bankruptcy Court should have applied the "place of organization" standard set forth by the District Court and dismissed the Rye Cayman Claims.

Moreover, the Bankruptcy Court's error is made even more apparent by the fact that the Trustee's Rye Cayman Claims are based on transfers mechanically identical to the dismissed Harley Action claims. Harley Proffered Allegations ¶¶ 23–25. By dismissing the Harley Action claims solely on comity grounds, the Bankruptcy Court acknowledged the District Court's instructions that the Harley Action result in dismissal, but fashioned an extraterritoriality analysis different than that announced by the District Court, which did not take into account the facts underlying the Harley Cayman Fund subsequent transfers. Even though the District Court held the Harley Cayman Fund subsequent transfer claims to be barred by extraterritoriality, the Bankruptcy Court crafted an analysis under which the Harley Action subsequent transfers (which were made to a New York branch account) would not be deemed "foreign." Had the Bankruptcy Court properly set out an extraterritoriality analysis broad enough to encompass the Harley

14

Action, as it was instructed by the District Court, the Rye Cayman claims would have been encompassed as well, mandating dismissal.

    **b.**    **The Bankruptcy Court incorrectly held that use of a correspondent bank account was a determinative factor.**

    The Bankruptcy Court likewise erred in holding that whether or not a correspondent bank account was used is determinative. All transfers in U.S. dollars must pass through the U.S.[9] Whether a foreign financial institution, such as RBS/ABN, uses a U.S. correspondent account or a U.S. branch account simply will depend on whether it happens to have a branch in the United States, and that does not determine the underlying domestic or foreign nature of the transaction.[10] Use of a branch account instead of a correspondent account should not make otherwise foreign claims domestic, and holding such would contravene the precedent cited by the District Court. *See e.g.*, *Midland*, 347 B.R. 708 (U.S. branch account—like RBS/ABN's account—used to receive funds; transfer still deemed foreign).

---

[9]    *See* Opinion and Order, 513 B.R. at 228 n.1 (correspondent banks in the United States are used to "process dollar-denominated transfers").

[10]    For example, the Bankruptcy Court dismissed claims against several foreign defendants, including SafeHand Investments, Dakota Global Investments, and Bloom Asset Holdings Fund, which received transfers from foreign funds through correspondent accounts in the U.S. Mem. Decision, 2016 WL 6900689 at **33–4, 36–7. It appears that these defendants used correspondent U.S. accounts because they do not have New York branches. *See Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Defendants SafeHand Investments, Strongback Holdings Corporation, and PF Trustees limited in its Capacity as Trustee of RD Trust,* Adv. Pro. No. 12-01701 (SMB) (Bankr. S.D.N.Y. Jun. 27, 2015), ECF No. 62 (no proffered allegations that defendant has a New York branch); *Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Dakota Global Investments, Ltd.*, Adv. Pro. No. 10-04287 (SMB) (Bankr. S.D.N.Y. Jun. 27, 2015), ECF No. 69 (same); *Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Natixis S.A., Bloom Asset Holdings Fund, and Tensyr Limited,* Adv. Pro. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Jun. 27, 2015), ECF No. 102 (same). In contrast, otherwise identical transactions entered into by other foreign defendants, such as RBS/ABN and BNP Arbitrage, were not dismissed by the Bankruptcy Court because the money flowed through their New York branch accounts. Mem. Decision, 2016 WL 6900689 at *29 & n.28, *34.

## ARGUMENT

**I.    This Court Should Grant Leave To Appeal Under 28 U.S.C. § 158(A)(3).**

**A.    It is undisputed that there are two controlling questions of law: Extraterritoriality and Comity.**

The first prong of the Section 1292(b) standard requires that the interlocutory order "involve[] a controlling question of law." 28 U.S.C. § 1292(b). In the Rye Action, both extraterritoriality (*i.e.* the interpretation of the extraterritorial reach of SIPA and the Bankruptcy Code) and international comity constitute controlling questions of law, as the Trustee has conceded in a recently-filed memorandum in the parallel Harley Action.[11]

Here, overturning the Bankruptcy Court's holding on either question of law would provide an independent basis for dismissal of the Rye Cayman Claims at issue. *See* Opinion and Order, 513 B.R. at 231 (finding that the principles of international comity constituted an alternative basis for a dismissal based on extraterritoriality). Because a determination on either of the controlling questions of law could lead to a reversal that would save both the Court and the parties' the time and expense of litigating the Rye Cayman Claims, an interlocutory appeal of the Rye Order is warranted in this case. *See* 16 Charles A. Wright et al., *Fed. Prac. & Proc. Juris.* § 3930 (2d ed. 2012) (interlocutory appeal is warranted where "reversal might save time for the district court, and time and expense for the litigants.").

**B.    Substantial grounds exist for differences of opinion on the controlling questions of law.**

Under Section 1292(b), the second prong of the analysis requires that there must

---

[11]    *See* Trustee's Memorandum of Law at 6–7, Harley Action, Adv. Pro. No. 11-02760 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2017), ECF No. 78 (noting two controlling questions of law, citing *Morrison*, 561 U.S. at 255, and *Maxwell*, 93 F.3d at 1047). In contrast to the Trustee's appeal in the Harley Action, in which extraterritoriality is not a controlling question of law because the Bankruptcy Court declined to reach the issue in dismissing the relevant claims, both extraterritoriality and comity may provide grounds for reversal here.

also be "substantial ground for difference of opinion" as to the controlling question of law. 28

U.S.C. § 1292(b). With regard to both extraterritoriality and comity, substantial grounds for

difference of opinion exist, as is evidenced by the contrasting views of the Bankruptcy Court and

the District Court. The extensive debate during the December 16, 2015 oral argument before the

Bankruptcy Court further illustrates the grounds for differences of opinion on the controlling

questions of law.[12] These substantial grounds for difference of opinion require clarification on

interlocutory appeal, and the District Court is best suited to weigh in on the application of its

own Opinion and Order by which the Bankruptcy Court's Memorandum Decision is bound.

 For example, despite a clear statement from the District Court that claims

involving a foreign transferor and foreign transferee should be dismissed, the Bankruptcy Court

declined to dismiss these claims in the Rye Action. Though the District Court held that "section

550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received

abroad by a foreign transferee from a foreign transferor," Opinion and Order, 513 B.R. at 232,

the Bankruptcy Court determined that the Rye Cayman Funds "resided in New York,"

Memorandum Decision, 2016 WL 6900689 at *29, despite the fact that the Rye Cayman Funds

were organized under the laws of the Cayman Islands. In doing so, the Bankruptcy Court, while

acknowledging its view that the District Court's opinion "highlight[ed] the place of organization

as the *sine qua non* of foreignness," *id.* at *17, denied RBS/ABN's motion to dismiss the Rye

Action even though the places of organization of both the transferor and transferee were outside

of the United States, Rye Proffered Allegations ¶¶ 8, 14, 15. Whereas the District Court

recognized that the mere movement of funds through U.S. bank accounts is not sufficient to

---

[12] *See* Hearing Tr. 35:4–100:13, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re BLMIS)*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 16, 2015), ECF No. 12798.

domesticate an otherwise foreign transfer, Opinion and Order, 513 B.R. at 227–28, the

Bankruptcy Court found that the use of an "account located in New York" gave rise to an

inference that these transfers were domestic, Memorandum Decision, 2016 WL 6900689, at *29.

Though the District Court stated that "the fact that some of the defendants here allegedly used

correspondent banks in the United States to process dollar-denominated transfers" is not

"sufficient to make these foreign transfers domestic," Opinion and Order, 513 B.R. at 228 n.1,

the Bankruptcy Court turned that statement on its head, determining that the Opinion and Order

"does not suggest that the Trustee must allege the use of a non-correspondent bank account to

survive the dismissal of his subsequent transfer claims," Memorandum Decision, 2016 WL

6900689, at *30. And, though the District Court rejected the Trustee's argument that "dismissal

at this stage is inappropriate because additional fact-gathering is necessary to determine where

the transfers took place," and squarely set the burden of adequately pleading a domestic transfer

on the shoulders of the Trustee, Opinion and Order, 513 B.R. at 232 n.4, the Bankruptcy Court

conversely lifted that burden and declined to dismiss the Rye claims in order to permit "future

development of the facts" on the issue of where the transfer took place, Memorandum Decision,

2016 WL 6900689, at *30. Finally, although the District Court recognized that principles of

international comity counseled against allowing the Trustee's claims to proceed in cases like this

one, where a foreign jurisdiction—here, in Rye as in Harley, the Cayman Islands—has a "greater

interest in applying [its] own laws than does the United States," Opinion and Order, 513 B.R. at

232, the Bankruptcy Court limited its comity-based dismissals to subsequent transfers from

foreign funds that were undergoing or had undergone foreign liquidation proceedings,

Memorandum Decision, 2016 WL 6900689, at**15–16. The Bankruptcy Court did this despite

recognizing that the District Court's alternative international comity analysis explicitly did not

18

depend on the existence of parallel liquidation proceedings in order to reach its result. *Id*. at \*12.

Courts in this district have held that interlocutory appeals from bankruptcy orders should be heard so long as there is "*genuine doubt* as to whether the Bankruptcy Court applied the correct standard." *In re Enron Corp.*, No. 01-16034 (SAS), 2006 WL 2548592, at \*4 (S.D.N.Y. Sep. 5, 2006) (emphasis added) (granting leave to appeal where appellants argued several grounds on which the bankruptcy court may have misapplied the correct legal standard). In the present case, genuine doubt exists as to whether the Bankruptcy Court correctly applied the directives set forth by the District Court in its Opinion and Order with respect to international comity and extraterritoriality.

For another example, the Bankruptcy Court reached a different conclusion than the District Court when it dismissed the Harley Action on comity grounds alone, and refused to consider extraterritoriality, *see* Memorandum Decision, 2016 WL 6900689, at \*\*2, 16, despite the District Court having instructed dismissal of the Harley Action on both grounds, see Opinion and Order, 513 B.R. at 231–32. This difference is significant because the Rye Cayman claims are identical to the claims in the Harley Action for purposes of the extraterritoriality analysis. Thus, a comprehensive holding by the Bankruptcy Court with respect to dismissal of the Harley Action—like the one reached in the Opinion and Order of the District Court—would have warranted dismissal of the Rye Cayman Claims as well. At a minimum, genuine doubt exists as to whether the Bankruptcy Court was correct in refusing to dismiss the Rye Cayman Claims on extraterritoriality grounds and whether the Bankruptcy Court's conclusion that the use of New York branch accounts render a transfer domestic, but the use of correspondent accounts does not.

Similarly, the Bankruptcy Court contravened the Opinion and Order which held that the Cayman Islands "have a greater interest in applying their own laws than does the United

States," *id.* at 232, when the Bankruptcy Court refused to dismiss the Rye Cayman Claims on

international comity grounds. The District Court wrote that whether or not a specific fund is

subject to foreign liquidation proceedings is merely "illustrat[ive]" but not dispositive, of that

foreign jurisdictional interest. *Id.* at 231–32. The Bankruptcy Court recognized this and noted

that "the Cayman Islands has a greater interest in regulating the activities that gave rise to the

Trustee's subsequent transfer claims." Mem. Decision, 2016 WL 6900689, at *16. Nevertheless,

the Bankruptcy Court refused to apply the same principles of international comity to dismiss the

Rye Cayman Claims, even though they are based on subsequent transfers identical in all material

respects to those that underlie the dismissed Harley Action claims.

## C.    Immediate appeal will materially advance termination of the litigation.

The final criterion under Section 1292(b) is that "an immediate appeal from the

order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Courts have held that this factor exists where an immediate "appeal promises to advance the time

for trial or to shorten the time required for trial." *Transportation Workers Union of Am., Local

100, AFL-CIO v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)

(citation omitted). If the District Court determines on review that the Trustee's Rye Cayman

Claims are extraterritorial in nature or that they are barred by the same principles of international

comity that barred the Harley Action claims, then the Trustee's claims regarding the Rye

Cayman Funds—which entail approximately $149 million of the Trustee's approximately $237.9

million in claims against RBS/ABN in the Rye Action—will be dismissed. This will

substantially shrink discovery and shorten any trial because it will eliminate fact-finding with

respect to the September 2006 transactions entered into by RBS/ABN with the Rye Cayman

Funds, which are distinct from the November 2007 transactions with the Rye Delaware Funds.

Rye Proffered Allegations at ¶¶ 20–22, 43.

20

## II.    Exceptional Circumstances Merit Immediate Review.

Pursuant to Rule 8028 of the Bankruptcy Rules, "[i]n the interest of expediting decision or for other cause in a particular case, the district court . . . may suspend the requirements or provisions of the rules in Part VIII [that govern the procedures for bankruptcy appeals, subject to certain listed exceptions]." Fed. R. Bankr. P. 8028. Considerations under this rule include "unusual time considerations or if unfairness to the litigants would otherwise result." 10 *Collier on Bankruptcy* § 8019.01 (15th ed. 2011). Here, considerations of fairness dictate that RBS/ABN should be granted an interlocutory appeal in the Rye Action.

In applying the District Court's Order and Opinion, the Bankruptcy Court issued one Memorandum Decision on November 22, 2016. The Bankruptcy Court then entered individual orders in each related litigation—dismissing claims in whole or in part, or denying dismissal of claims, all on the same principles of law related to extraterritoriality and international comity articulated in the Memorandum Decision. For example, the two cases in which RBS/ABN is a defendant, the Harley Action and the Rye Action, were decided differently despite having nearly identical facts in all relevant respects. Now, the Trustee intends to appeal every claim that was decided against him—*i.e.* any claim that was dismissed—regardless of whether there are other claims remaining in those cases. To accomplish this, the Trustee has entered into Rule 54(b) stipulations with defendants in numerous cases in which some but not all claims were dismissed, to allow for immediate appeal of those non-final orders.[13] RBS/ABN expects that the Trustee will object to RBS/ABN's interlocutory appeal of the Rye Order despite

---

[13]    *See*, *e.g.*, Stipulated Final Orders, *In re BLMIS,* Adv. Pro. No. 08-01789 (SMB), ECF Nos. 15209, 15210, 15216 (stipulated final orders requesting that the Bankruptcy Court enter a final judgment solely as to the dismissed claims under Rule 54(b) of the Federal Rules of Civil Procedure on the grounds that "an immediate appellate review of the Memorandum Decision will be efficient for the courts and the Parties" and because there is "no just reason for delay").

the fact that this interlocutory order stems from the same Memorandum Decision and raises a number of the same issues as the other judgments and non-final orders which the Trustee is currently appealing.

If RBS/ABN's motion for an interlocutory appeal is denied, and RBS/ABN is forced to wait until the Rye Action is resolved in its entirety, RBS/ABN will not have a meaningful opportunity to make its case because shared questions of law will already have been litigated by the Trustee on appeal in the related proceedings. Given the procedural posture of this and related cases, failure to grant leave would result in unfairness to RBS/ABN.

In contrast, granting leave for an interlocutory appeal would afford RBS/ABN the opportunity to be heard while that opportunity still has meaning, and will also permit RBS/ABN to litigate contemporaneously the controlling questions of law underlying the Memorandum Decision on appeals of both the Rye and Harley Actions.

## **Conclusion**

For the foregoing reasons, RBS/ABN respectfully requests that the Court grant it leave to appeal the Bankruptcy Court's Rye Order, and grant such further relief as is just and equitable.

Dated:    New York, New York
          April 11, 2017

Respectfully submitted,

/s/Michael S. Feldberg_____
Michael S. Feldberg
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
212-610-6300
michael.feldberg@allenovery.com

*Attorneys for Defendant ABN AMRO Bank N.V.
(presently known as The Royal Bank of Scotland
N.V.)*