# EXHIBIT 4

08-01789-smb    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
Case 1:12-cv-01882-JSR   Document 5   Filed 03/14/12   Page 2 of 22
to Appendix 2    Pg 2 of 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

IRVING H. PICARD, Trustee for the Liquidation : 
Of Bernard L. Madoff Investment Securities LLC, :
And Bernard L. Madoff, :
                                          :

                Plaintiff,         :     Case No.: 12-CV-1882
                                            :

                v.                   :

                                            :

BARCLAYS BANK (SUISSE) S.A., :
BARCLAYS BANK S.A.  and BARCLAYS :
PRIVATE BANK & TRUST LIMITED :
                                            :

                Defendants.     :

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF THE BARCLAYS DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT

Marc J. Gottridge
Andrew M. Behrman
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone (212) 918-3000
Facsimile (212) 918-3100
*Attorneys for Defendants Barclays Bank
(Suisse) S.A., Barclays Bank S.A., and
Barclays Private Bank & Trust Limited*

08-01789-smb    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
to Appendix 2    Pg 3 of 23
Case 1:12-cv-01882-JSR   Document 75   Filed 03/04/12   Page 1 of 22

# **Table of Contents**

**Page**

Preliminary Statement...........................................................................................................1

Background ............................................................................................................................4

Argument ...............................................................................................................................6

I.    WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE THE
TRUSTEE'S CLAIMS AND THE BARCLAYS DEFENDANTS' DEFENSES RAISE
SUBSTANTIAL AND MATERIAL ISSUES OF NON-BANKRUPTCY FEDERAL LAW. .......7

   A.    Application of Section 546(e) of the Bankruptcy Code in the Context of this
   SIPA Proceeding Raises Substantial Issues of Non-Bankruptcy Federal Law. ..........................9

   B.    Determination of the "Good Faith" Standard Applicable to Subsequent
   Transferees Requires Material and Substantial Consideration of SIPA. ...................................10

   C.    The Extraterritorial Application of SIPA and Section 550 of the Bankruptcy
   Code to Transfers from Fairfield to the Barclays Defendants Raise Substantial
   Questions of Non-Bankruptcy Federal Law Under *Morrison*. ...................................................11

   D.    Determining Whether the Bankruptcy Court Can Constitutionally Resolve
   this Adversary Proceeding Under *Stern* Requires Significant Interpretation of
   Non-Bankruptcy Federal Law. ...................................................................................................13

   E.    Determining Whether the Barclays Defendants Can be Bound by the Trustee's
   Consent Judgment Against the Fairfield Funds, to Which They Were Not Parties,
   Requires Significant Interpretation of Non-Bankruptcy Federal Law......................................14

II.    CONSIDERATIONS OF JUDICIAL EFFICIENCY AND THE BARCLAYS
DEFENDANTS' RIGHT TO A JURY TRIAL WARRANT WITHDRAWAL OF
THE REFERENCE "FOR CAUSE SHOWN."...........................................................................15

Conclusion ..........................................................................................................................17

08-01789-smg    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
Case 1:12-cv-01882-JSR    Document 75    Filed 03/04/13    Page 3 of 22
to Appendix 2    Pg 4 of 23

## Table of Authorities

**Page(s)**

CASES

*Chemtura Corp. v. United States*,
    No. 10 Civ. 503, 2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ...............................................8

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991).................................................................................................7

*Dye v. Sachs (In re Flashcom, Inc.)*,
    361 B.R. 519 (Bankr. C.D. Cal. 2007)...................................................................................15

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)..................................................................................................10

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.*,
    No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)............................7, 8

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)..................................................................................................13, 14, 16

*In re Allou Distribs., Inc.*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007).......................................................................................14

*In re AVI, Inc.*,
    389 F.3d 721 (9th Cir. 2008) ................................................................................................14

*In re Bernard L. Madoff Inv. Secs.*,
    654 F.3d 229 (2d Cir. 2011).................................................................................................8

*In re Bressman*,
    327 F.3d 229 (3d Cir. 2003).................................................................................................11

*In re Furs by Albert & Marc Kaufman, Inc.*,
    No. 03-41301, 2006 WL 3735621 (Bankr. S.D.N.Y. Dec. 14, 2006) ...................................14

*In re Int'l Admin. Servs., Inc.*,
    408 F.3d 689 (11th Cir. 2005) ..............................................................................................14

*In re M. Fabrikant & Sons, Inc.*,
    394 B.R. 721 (Bankr. S.D.N.Y. 2008)...................................................................................14

*In re Manhattan Inv. Fund Ltd.*,
    343 B.R. 63 (S.D.N.Y. 2006).................................................................................................8

08-01789-smb    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
Case 1:12-cv-01882-JSR    Document 5    Filed 03/04/12    Page 1 of 22
to Appendix 2    Pg 5 of 23

*In re Nordic Village*,
    915 F.2d 1049 (6th Cir. 1990) ........................................................................11

In re *Northwest Airlines, Corp.*
    384 B.R. 51 (S.D.N.Y. 2008) ........................................................................15

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993)............................................................................15

*In re Slack-Horner Foundries Co.*,
    971 F.2d 577 (10th Cir. 1992) ......................................................................14

*Lustig v. Hickey (In re Hickey)*,
    168 B.R. 840 (Bankr. W.D.N.Y. 1994) ......................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
    130 S. Ct. 2869 (2010) ........................................................................2, 11, 12

*Norex Petroleum v. Access Indus., Inc.*,
    621 F.3d 29 (2d Cir. 2010).............................................................................12

*Picard v. Flinn Invs., LLC*,
    463 B.R. 280 (S.D.N.Y 2011)................................................................. passim

*Picard v. HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011).....................................................................7, 8

*Picard v. JPMorgan Chase & Co.*,
    454 B.R. 307 (S.D.N.Y. 2011).....................................................................7, 8

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011)...............................................................9, 10, 11

*Picard v. Kohn*,
    11 Civ. 1181 (JSR) (S.D.N.Y. Sept. 6, 2011) ............................................12

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011)........................................................................3, 13, 14

## STATUTES AND RULES

11 U.S.C. § 546(e) ......................................................................................2, 8, 9, 10

11 U.S.C. § 548(a)(1)(A) ......................................................................................9

11 U.S.C. § 548(c) ......................................................................................2, 10

11 U.S.C. § 550............................................................................................2, 3, 11, 14

11 U.S.C. § 551 ............................................................................................... 1, 6

15 U.S.C. § 78aaa .............................................................................................. 1

15 U.S.C. § 78fff-2(c)(3) ................................................................................. 5, 6

28 U.S.C. § 157 ........................................................................................... passim

28 U.S.C. § 1334(b) ........................................................................................... 6

Fed. R. Bankr. P. 5011 ....................................................................................... 7

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) ...................... 8, 12

08-01789-smb    Doc 15750-5    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
Case 1:12-cv-01882-JSR    Document 75    Filed 03/14/12    Page 6 of 22
to Appendix 2    Pg 7 of 23

Defendants Barclays Bank (Suisse) S.A. ("Barclays Suisse"), Barclays Bank S.A. ("BBSA"), and Barclays Private Bank & Trust Limited ("BPB&T") (collectively, the "Barclays Defendants"), respectfully submit this memorandum of law and the accompanying declaration of Marc J. Gottridge, dated March 13, 2012 (the "Gottridge Decl."), in support of their motion to the United States District Court for the Southern District of New York (the "District Court" or "this Court"), pursuant to 28 U.S.C. § 157(d), for an order withdrawing the reference to the Bankruptcy Court of this action filed by plaintiff Irving Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## Preliminary Statement

In this action, the Trustee of BLMIS, appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, seeks to recover over $67 million from the Barclays Defendants. The Trustee sues to recover the proceeds he alleges the Barclays Defendants received from two British Virgin Islands ("BVI") "feeder funds" as a result of redeeming their shares in those funds. In his Complaint, the Trustee alleges a single claim for relief under SIPA and 11 U.S.C. §§ 550 and 551, on the theory that the Barclays Defendants were subsequent transferees of a portion of approximately $3 billion in initial transfers which the BVI "feeder funds" received from BLMIS.

The Barclays Defendants have a number of substantial defenses to that claim, and intend to move to dismiss the Complaint. However, the merits of the claim and the Barclays Defendants' defenses are not yet before the Court. Rather, the question raised by this motion is: Which court should adjudicate this dispute – the District Court or the Bankruptcy Court? As demonstrated below, the reference to the Bankruptcy Court must be withdrawn because this case raises several important issues requiring interpretation of federal non-bankruptcy law, including:

***First, does the safe harbor provision of the Bankruptcy Code applicable to the***

settlement of securities transactions, 11 U.S.C. § 546(e), govern a SIPA liquidation proceeding in which the Trustee seeks recovery from alleged subsequent transferees?  In two other cases, this Court has withdrawn the reference so that an Article III court will determine whether Section 546(e) restricts the SIPA Trustee's avoidance power.  Although those cases involved the Trustee's attempts to recover from BLMIS customers who were alleged initial transferees, the same issue necessarily also arises here;  the underlying initial transfers to BLMIS's customer must be avoided before the Trustee may recover from non-customers as subsequent transferees.

Second, what is the standard for determining a defendant's "good faith" under 11 U.S.C. § 550(b)(1), which precludes recovery by the Trustee from an alleged "subsequent transferee" that took for value, in good faith and without knowledge of the voidability of the initial transfer avoided?  In another action brought by the Trustee, this Court has withdrawn the reference to consider whether, to defeat a claim of "good faith" by an initial transferee under 11 U.S.C. § 548(c), the Trustee must establish the defendant's "willful blindness", rather than that the defendant was on "inquiry notice" of the voidability of the initial transfer but failed to diligently investigate BLMIS.  Under 11 U.S.C. § 550(b)(1), the Trustee may not recover from an alleged subsequent transferee that took for value, in good faith and without knowledge of the voidability of the initial transfer.  It would be anomalous to define "good faith" more stringently in the subsequent transferee context than this Court has done for initial transferees.  And it would also be anomalous for the Bankruptcy Court, rather than this Court, to decide the appropriate "good faith" standard in the subsequent transferee context.

Third, does Morrison v. Nat'l Australia Bank Ltd., 130 S. Ct. 2869 (2010) preclude the Trustee from using SIPA and 11 U.S.C. § 550 to recover alleged "subsequent transfers", which were made by non-U.S. entities to non-U.S. defendants?  This Court has ruled, in another Madoff-related case, that in light of Morrison, questions concerning the extraterritorial scope (if

2

any) of RICO claims asserted by the Trustee had to be determined by the District Court. This case – involving *only* a claim by the Trustee to recover from Swiss, Spanish and Channel Islands defendants transfers they received from funds in the BVI – squarely raises similar issues involving SIPA as well as 11 U.S.C. § 550.

*Fourth, in light of Stern v. Marshall, 131 S. Ct. 2594 (2011), does the Bankruptcy Court have the authority to enter a final judgment in this action?* As this Court recently held in another Madoff-related case, whether Article III of the Constitution prohibits the Bankruptcy Court from finally adjudicating the Trustee's fraudulent transfer claims is a complex question requiring withdrawal of the reference. That precise question is also presented here.

*Fifth, does the Fifth Amendment's due process clause prohibit the Trustee from establishing a critical element of his "subsequent transferee" claim – that he has "avoided" the initial transfers of funds from BLMIS to the BVI "feeder funds" – on the basis of consent judgments between the Trustee and the funds' liquidators, to which the Barclays Defendants were not parties?* The constitutional concerns raised by the Trustee's litigation tactic must be heard in the District Court.

Finally, even if withdrawal of the reference were not mandatory under 28 U.S.C. § 157(d), interests of judicial efficiency and uniformity support permissive withdrawal of the reference for this entire case "for cause shown." Withdrawal of the reference is necessary to avoid piecemeal litigation and the unnecessary expenditure of time and money that would be required if this action were to proceed in two courts simultaneously. The relief sought in this motion is particularly appropriate because Barclays Suisse and BBSA, at least, have a constitutional right to a jury trial and do not consent to a jury trial in the Bankruptcy Court.

08-01789-smb   Doc 15750-8   Filed 04/11/17   Entered 04/11/17 17:21:55   Exhibit 4
to Appendix 2   Pg 10 of 23
Case 1:12-cv-01782-JSR   Document 75   Filed 03/14/12   Page 9 of 22

## Background

*This action.*   This action is one of many in which the Trustee seeks to recover transfers that defendants received not from BLMIS itself, but instead from "feeder" funds that invested in BLMIS.  In this action, the Trustee states that he "seeks to recover approximately $67,396,667 in subsequent transfers of Customer Property collectively made to the Barclays Defendants" by two BVI "feeder funds" – Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma") (collectively, the "Fairfield Funds").[1] (Gottridge Decl. Ex. 1 [Compl.] ¶ 2.) Both Fairfield Funds are currently in liquidation in the BVI.  (*Id.*)

*The Barclays Defendants*.   The Barclays Defendants are all foreign entities which, the Trustee alleges, invested in one or both of the Fairfield Funds.  Barclays Suisse is a Swiss *société anonyme*, BBSA is a Spanish *sociedad anónima*, and BPB&T is a private company registered in the Channel Island of Jersey.  (Gottridge Decl. Ex. 1 [Compl.]  ¶¶ 22-24.)[2]  The Trustee alleges that Fairfield Sentry in the BVI made "subsequent transfers of [BLMIS] Customer Property" to each of the three Barclays Defendants, and that Barclays Suisse and BBSA also received "subsequent transfers" from Fairfield Sentry through Fairfield Sigma.  (Gottridge Decl. Ex. 1 [Compl.] ¶ 36.)

*The Initial Transfers of BLMIS Customer Property, the Picard v. Fairfield Settlement Agreement and the Consent Judgments.*  The sums at issue in the alleged subsequent transfers here are allegedly part of approximately $3 billion that BLMIS paid to the Fairfield Funds over a

---

[1] It appears that since August 11, 2011, the Trustee has commenced at least 42 separate proceedings (including this action) against defendants which received redemptions through the Fairfield Funds, seeking to recover a total of nearly $ 2.5 billion in subsequent transfers.  (*See* Gottridge Decl.  ¶ 3 and Ex. 2.)  Although the Trustee has elected to file these proceedings individually, as separate actions, the Barclays Defendants respectfully submit that to the extent that defendants in those actions file motions to withdraw the reference to the Bankruptcy Court, judicial economy would be served by consolidating such related motions in the District Court.

[2] By making this motion, the Barclays Defendants do not waive, and indeed expressly preserve, all defenses available to them by answer or motion to dismiss (including without limitation personal jurisdiction).

4

08-01789-cgm    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
to Appendix 2    Pg 11 of 23
Case 1:12-cv-01882-SR    Document 5    Filed 09/11/17    Page 10 of 22

period of six years before BLMIS's Filing Date, representing the proceeds of those funds' redemptions of BLMIS shares. (Gottridge Decl. Ex. 1 [Compl.] ¶ 38.)  In an adversary proceeding filed in the Bankruptcy Court, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y.) ("*Picard v. Fairfield*"), the Trustee claimed that these transfers were "avoidable, and recoverable under sections 544, 550 and 551 of the Bankruptcy Code, §§ 273-279 of [the New York Debtor and Creditor Law (the "NYDCL")], and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)." (Gottridge Decl. Ex. 1 [Compl.] ¶ 38.)

The Trustee settled his claims against the Fairfield Funds in a settlement agreement approved by both the Bankruptcy Court and the BVI High Court of Justice, Commercial Division (the "BVI Court") in June 2011 (Gottridge Decl. ¶ 5 and Ex. 4; *see also* Gottridge Decl. Ex. 1 [Compl.] ¶ 41).  Pursuant to that settlement, the liquidators of the Fairfield Funds and the Trustee agreed to consent judgments (the "Consent Judgments") that were entered in the Bankruptcy Court in *Picard v. Fairfield* on July 13, 2011.  (Gottridge Decl. Exs. 5, 6.)

The Barclays Defendants were not parties to *Picard v. Fairfield*, the settlement agreement terminating that action or the Consent Judgments. (*See* Gottridge Decl. Exs. 3-6.)   The Consent Judgments did not avoid the initial transfers of approximately $3 billion from BLMIS to the Fairfield Funds under the Bankruptcy Code, the NYDCL or SIPA.  Although judgment in the amount of $3,054,000,000 was entered against the Fairfield Funds and in favor of the Trustee, the Fairfield Funds' liquidators were required to pay only $70,000,000 to the Trustee.  (*See* Gottridge Decl. Ex. 4, ¶ 2; Exs. 5, 6,  ¶ 1.)[3]

---

[3] Moreover, as part of the settlement, the Trustee was granted the right to receive a significant portion of recoveries, if any, made by the Fairfield Funds' liquidators in various actions they have been pursuing in the Bankruptcy Court and the BVI Court against redeeming shareholders in the Fairfield Funds, including Barclays Suisse and BBSA.  (*See* Gottridge Decl. Ex. 4 ¶¶ 4, 8, 9.)  The Fairfield Funds' claims against BLMIS in the Bankruptcy Court were reduced by more than 80%.  (*See id.* ¶ 13.)

08-01789-cgm   Doc 15750-8   Filed 04/11/17   Entered 04/11/17 17:21:55   Exhibit 4
to Appendix 2   Pg 12 of 23
Case 1:12-cv-01882-SHS   Document 5   Filed 09/04/12   Page 11 of 22

***The Complaint.***   On September 1, 2011, the Trustee commenced this action against the Barclays Defendants, seeking to recover transfers they allegedly received from the Fairfield Funds during the six year period before December 11, 2008, the BLMIS Filing Date.   The Trustee's complaint contains a single claim for "Recovery of Subsequent Transfers," in amounts "not less than" $45,677,929 from Barclays Suisse, $20,824,750 from BBSA, and $893,988 from BPB&T.   (Gottridge Decl. Ex. 1 [Compl.] ¶ 57.)   The Trustee claims that this relief is authorized by 11 U.S.C. §§ 550(a) and 551 and SIPA, 15 U.S.C. § 78fff-2(c)(3). (*Id.* ¶ 60.)

In his Complaint, the Trustee does *not* allege that the Barclays Defendants knew about or were willfully blind to the Madoff/BLMIS Ponzi scheme, or that the Barclays Defendants received the alleged subsequent transfers from the Fairfield Funds in bad faith.   Nor does the Trustee allege that the initial transfers from BLMIS to the Fairfield Funds have been avoided. Indeed, the Consent Judgments (Gottridge Decl. Exs. 5, 6) make clear that although he originally sought that relief, the Trustee has now elected *not* to avoid the initial transfers from BLMIS to the Fairfield Funds.

Pursuant to stipulations dated November 1, 2011 and February 29, 2012, the Barclays Defendants' time to respond to the Trustee's complaint was extended, ultimately until May 11, 2012.   (Gottridge Decl. Exs. 7, 8.)   The Barclays Defendants intend to move to dismiss the Complaint on a number of grounds, including the issues discussed below.

## <u>Argument</u>

District Courts have original jurisdiction over cases "arising under title 11, or arising in or related to cases under title 11."   28 U.S.C. § 1334(b).   District Courts are, however, permitted to refer cases or proceedings within that jurisdiction to bankruptcy judges. 28 U.S.C. § 157(a).   In this District, a standing order provides for the automatic reference of such matters to the

6

Bankruptcy Court.[4]  Nevertheless, Congress has provided that a District Court may, and in certain circumstances is required to, withdraw that reference:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  The decision to withdraw the reference is made by the District Court, not the Bankruptcy Court.  Fed. R. Bankr. P. 5011(a) (2011) ("A motion for withdrawal of a case of proceeding shall be heard by a district judge."); Fed. R. Bankr. P. 5011, Advisory Committee's Note ("The withdrawal decision is committed exclusively to the district court.").    For the reasons set forth below: (1) withdrawal of the reference in this case is mandatory; and (2) in any event, the Barclays Defendants have demonstrated "cause" for permissive withdrawal of the reference.

## I.    WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE THE TRUSTEE'S CLAIMS AND THE BARCLAYS DEFENDANTS' DEFENSES RAISE SUBSTANTIAL AND MATERIAL ISSUES OF NON-BANKRUPTCY FEDERAL LAW.

Withdrawal under Section 157(d) is required "of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *see also Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283 (S.D.N.Y 2011) (Rakoff, J.) ("*Flinn*"); *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011) (Rakoff, J.) ("*HSBC*").  "Section 157(d) is meant to 'assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'"

---

[4] At the time the Trustee filed this action, the operative standing order was the order dated July 10, 1984 entered by Acting Chief Judge Ward.   An amended standing order was entered on January 31, 2012 by Chief Judge Preska.

*Picard v. JPMorgan Chase & Co.*, 454 B.R. 307, 315 (S.D.N.Y. 2011) (McMahon, J.) ("*JPMorgan Chase*") (quoting *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.*, No. 04 Civ. 8177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (alteration in original)).

Mandatory withdrawal is not limited to issues of first impression. *See Enron Power Mktg.*, 2004 WL 2711101, at *2. Indeed, as Judge McMahon held in withdrawing the reference in another action commenced by the Trustee, "[r]egardless of a bankruptcy court's familiarity with a statute outside of Title 11, the requirements for mandatory withdrawal are satisfied if the proceeding requires consideration of a law outside of Title 11." *JPMorgan Chase & Co.*, 454 B.R. at 316. Of course, "where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Chemtura Corp. v. United States*, No. 10 Civ. 503, 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting *In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 67 (S.D.N.Y. 2006)) (citations omitted).

This action raises several important issues, some of which are matters of first impression, that will require "substantial and material consideration" of non-bankruptcy federal laws – including the U.S. Constitution and SIPA, a statute that is "considered an amendment to, and section of, the Securities Exchange Act of 1934, and for this reason is codified in Title 15", rather than Title 11, of the United States Code. *HSBC*, 450 B.R. at 410. As this Court has recently observed, "[a] substantial issue under SIPA is therefore, almost by definition, an issue 'the resolution of [which] requires consideration of both title 11 and other laws of the United States.'" *Id.* (quoting 28 U.S.C. § 157(d); amendment in original). *See also In re Bernard L. Madoff Inv. Secs.*, 654 F.3d 229, 235 (2d Cir. 2011) ("SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole."); *Flinn*, 463 B.R. at 283 (SIPA "has both bankruptcy and non-bankruptcy aspects and purposes").

08-01789-cgm   Doc 15750-8   Filed 04/11/17   Entered 04/11/17 17:21:55   Exhibit 4
Case 1:12-cv-01882-SR   Document 5   Filed 09/04/12   Page 14 of 22
to Appendix 2   Pg 15 of 23

**A.    Application of Section 546(e) of the Bankruptcy Code in the Context of this
SIPA Proceeding Raises Substantial Issues of Non-Bankruptcy Federal Law.**

The reference must be withdrawn on the question whether, in a SIPA liquidation, the safe
harbor provision of 11 U.S.C. § 546(e) prohibits the Trustee from avoiding certain initial transfers
made by BLMIS to the Fairfield Funds.  If so, the Trustee cannot, as a matter of law, recover from
subsequent transferees such as the Barclays Defendants on the basis of those initial transfers.

Section 546(e) provides that a trustee "may not avoid a transfer that is a . . . settlement
payment . . . made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . or
. . . a transfer made . . .  in connection with a securities contract."  In *Picard v. Katz*, 462 B.R. 447
(S.D.N.Y. 2011), this Court held that Section 546(e) precluded the Trustee from avoiding
transfers made by BLMIS to its customers as settlement payments, except to the extent the
Trustee alleged actual fraud under 11 U.S.C. § 548(a)(1)(A) (which transfers are subject to a two-
year lookback period). *Id.* at 451-52 (granting motion to dismiss preference and constructive
fraudulent transfer claims under the Bankruptcy Code and NYDCL).   It follows logically – as the
Barclays Defendants will argue in their motion to dismiss – that Section 546(e) likewise bars
recovery in this action by the same Trustee from *non-customers* of BLMIS, as alleged *subsequent*
transferees, to the extent his claim is based on initial transfers made by BLMIS to the Fairfield
Funds that are subject to the safe harbor.  That is so because (i) if Section 546(e) applies, it
prevents the avoidance of such initial transfers, and  (ii) Section 550(a) authorizes recovery from a
subsequent transferee only of "avoided" transfers.

In other actions, the Trustee has consistently argued that the Section 546(e) safe harbor
has no application in the SIPA liquidation context.  That argument plainly requires the Court to
consider the substance of both the Bankruptcy Code and non-bankruptcy federal law.
Accordingly, this Court has twice withdrawn the reference to consider this issue.  It first did so in

9

08-01789-cgm   Doc 15750-8   Filed 04/11/17   Entered 04/11/17 17:21:55   Exhibit 4
to Appendix 2   Pg 16 of 23
Case 1:12-cv-01882-SR   Document 5   Filed 09/11/17   Page 15 of 22

*Katz*. *See Katz*, 462 B.R. at 450 n.1. And in *Flinn*, this Court – after describing the issue decided in *Katz* as "fully withdrawable" – again held withdrawal to consider the issue mandatory. *See Flinn*, 463 B.R. at 285. The Court explained that "[b]y restricting a bankruptcy trustee's power to recover payments that are otherwise avoidable under the Bankruptcy Code, the safe harbor [in § 546(e)] stands 'at the intersection of two important national legislative policies on a collision course – the policies of bankruptcy and securities law." *Id.* (quoting *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011)). In *Flinn*, this Court concluded that "[w]hether § 546(e) applies depends on how a Court resolves numerous questions of securities law." *Id.* The same is equally true here.

## B.     Determination of the "Good Faith" Standard Applicable to Subsequent Transferees Requires Material and Substantial Consideration of SIPA.

Under Section 550(b)(1), the Trustee must plead and prove that the Barclays Defendants received the subsequent transfers at issue in bad faith. The statute prohibits the Trustee from recovering from a subsequent transferee that "takes for value, … in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1).[5] "The trustee has the burden of proving that the defendant should not have the benefit of the shelter provided by Section 550(b)(1) …." *Lustig v. Hickey (In re Hickey)*, 168 B.R. 840, 850 (Bankr. W.D.N.Y. 1994). Withdrawal of the reference is required to determine and apply the appropriate standard for "good faith" here, because resolving that issue requires a substantial interpretation of SIPA.

In *Katz*, this Court held, after withdrawing the reference from the Bankruptcy Court, that in a SIPA liquidation commenced by the Trustee, "where bankruptcy law is informed by federal securities law," the defendants' "good faith" (which furnishes a defense to initial transferees under section 548(c) of the Bankruptcy Code) is to be measured by the "willful blindness"

---

[5] There is no question here about the "for value" element; the Barclays Defendants invested in the Fairfield Funds.

10

standard, rather than an "inquiry notice approach." *Katz*, 462 B.R. at 455. Because a "securities investor has no inherent duty to inquire about his stockbroker, and SIPA creates no such duty," this Court held that the Trustee can only avoid a transfer to a BLMIS customer – *i.e.*, an initial transferee, such as the Fairfield Funds – if the Trustee can prove that the customer "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* (citation omitted). It is insufficient that "defendants were on 'inquiry notice' of the fraud but failed to diligently investigate" BLMIS. *Id.*

The Barclays Defendants' motion to dismiss will raise the same issue, albeit in the context of a subsequent transfer claim under Section 550. Determining this issue will require significant interpretation of federal securities law, just as it did in *Katz*. Indeed, it would be anomalous to apply to an action by a SIPA Trustee against alleged *subsequent* transferees a less stringent "good faith" standard than this Court applied to *initial* transferees in *Katz*. Initial transferees, after all, deal directly with the debtor and are in a far better position to monitor the debtor's conduct than are subsequent transferees. *See In re Bressman*, 327 F.3d 229, 236 n.2 (3d Cir. 2003) (subsequent transferees "are much more likely [than initial transferees] to be innocent third parties. They have little ability to protect themselves by making cursory checks on their transferor.") (quoting *In re Nordic Village*, 915 F.2d 1049, 1063 (6th Cir. 1990)). Allowing the Bankruptcy Court, rather than this Court, to decide whether a non-customer subsequent transferee's good faith is measured by "willful blindness", "inquiry notice" or some other standard would also be anomalous, creating a risk of inconsistent and unfair results. Accordingly, as in *Katz*, withdrawal of the reference in this case is required.

C.     **The Extraterritorial Application of SIPA and Section 550 of the Bankruptcy Code to Transfers from Fairfield to the Barclays Defendants Raise Substantial Questions of Non-Bankruptcy Federal Law Under *Morrison*.**

Withdrawal of the reference is also mandated so that an Article III court will determine

08-01789-smg    Doc 15750-8    Filed 04/11/17    Entered 04/11/17 17:21:55    Exhibit 4
to Appendix 2    Pg 18 of 23
Case 1:12-cv-01582-SR    Document 5    Filed 09/04/12    Page 17 of 22

whether SIPA and Section 550(a) of the Bankruptcy Code have extraterritorial reach, permitting a SIPA trustee to recover transfers that went from one point outside the U.S. (the BVI) to other points outside the U.S. (defendants in Switzerland, Spain and the Channel Island of Jersey). This is an issue of first impression, which requires a significant interpretation of the Supreme Court's ruling in *Morrison*, in the context of both SIPA and Section 550.

In *Morrison*, the Court reaffirmed the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States" and held that Section 10(b) of the Securities Exchange Act of 1934 had only domestic application. *Morrison,* 130 S. Ct. at 2877 (citation omitted) (internal quotation marks omitted).

This case, like *Morrison*, involves an attempt to apply U.S. securities laws to overseas financial transactions. The Barclays Defendants will move to dismiss the Complaint because (among other things) just as Section 10(b) of the Securities Exchange Act of 1934 does not apply extraterritorially, neither does SIPA – which, as noted at p. 8 above, is a provision of that same statute, as amended – or Section 550(a)(2) of the Bankruptcy Code. Neither of those statutes authorizes recovery of a foreign transfer in light of *Morrison's* teaching that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.* 130 S. Ct. at 2878.

The question whether, in light of *Morrison*, a SIPA Trustee may recover from alleged foreign subsequent transferees that received funds from the foreign customer of a U.S. registered stockbroker is one of first impression. In *Picard v. Kohn*, 11 Civ. 1181 (JSR) (S.D.N.Y. Sept. 6, 2011) ("*Kohn*"), another adversary proceeding brought by the Trustee, this Court held that even though the Second Circuit Court of Appeals had recently held that RICO "cannot be applied extraterritorially" (citing *Norex Petroleum v. Access Indus., Inc.*, 621 F.3d 29, 31 (2d Cir. 2010)), nevertheless "determining the precise contours of this relatively new doctrine will require

12

08-01789-cgm Doc 15750-8 Filed 04/11/17 Entered 04/11/17 17:21:55 Exhibit 4
to Appendix 2 Pg 19 of 23
Case 1:12-cv-01882-SR Document 5 Filed 09/04/12 Page 18 of 22

significant interpretation of RICO", mandatory withdrawal of the reference as to the extraterritoriality issue. *Kohn*, slip op. at 6. The application of *Morrison* in this context likewise requires substantial consideration of federal non-bankruptcy law and therefore mandates withdrawal of the reference.

### D.  Determining Whether the Bankruptcy Court Can Constitutionally Resolve this Adversary Proceeding Under *Stern* Requires Significant Interpretation of Non-Bankruptcy Federal Law.

Another issue mandating withdrawal of the reference arises from *Stern.* In that case, the Supreme Court held that Congress had improperly granted to non-Article III bankruptcy judges the power to enter final judgment on state law counterclaims asserted by debtors, where such claims (although categorized as "core" bankruptcy proceedings) would not be resolved in ruling on creditors' proofs of claim and did not fall within the limited "public rights" doctrine – *i.e.*, the claims did not assert rights closely integrated into a public regulatory scheme but instead asserted purely private rights. *Stern*, 131 S. Ct. at 2620. *Stern* built upon *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55-56 (1989), where the Court held that a trustee's claim to recover an alleged fraudulent transfer is "more accurately characterized as a private rather than a public right" because such actions are "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."

Because this action to recover alleged fraudulent transfers does not fall within the "public rights" doctrine, under which Congress may assign the adjudication of certain claims to administrative or legislative courts rather than Article III courts, it is doubtful after *Stern* that the Bankruptcy Court has constitutional authority to finally resolve this action. In *Flinn*, this Court granted defendants' motion to withdraw the reference on that very issue, pointing out that "[r]esolution of this argument requires 'significant interpretation' of both Article III and the

13

08-01789-cgm   Doc 15750-8   Filed 04/11/17   Entered 04/11/17 17:21:55   Exhibit 4
Case 1:12-cv-01882-SR   Document 5   Filed 09/04/12   Page 19 of 22
to Appendix 2    Pg 20 of 23

Supreme Court precedent analyzing it." *Flinn*, 463 B.R. at 287. The answer to this question, this Court observed, was "by no means obvious"; "[g]iven the difficulty of this question", the Court withdrew the reference "on this issue for the purpose of determining whether final resolution of claims to avoid transfers as fraudulent requires an exercise of 'judicial Power' that the bankruptcy court lacks" under the Constitution. *Id*. at 287-88. This Court also noted in *Flinn* that assuming *arguendo* that the Bankruptcy Court lacked the authority to finally resolve fraudulent transfer claims, it was an open question whether that court "has the authority to render findings of fact and conclusions of law before final resolution occurs." *Id*.

The Barclays Defendants intend to raise the same constitutional questions, requiring interpretation of Article III, *Stern* and *Granfinanciera*, that were raised in *Flinn*. As it did in *Flinn*, therefore, this Court should grant mandatory withdrawal of the reference to ensure that an Article III court will decide these significant constitutional issues.

### E.    Determining Whether the Barclays Defendants Can be Bound by the Trustee's Consent Judgment Against the Fairfield Funds, to Which They Were Not Parties, Requires Significant Interpretation of Non-Bankruptcy Federal Law.

Section 550 of the Bankruptcy Code permits the Trustee to recover property or its value from a subsequent transferee only "to the extent that [the] transfer [to the initial transferee] is *avoided*." 11 U.S.C. § 550(a) (emphasis added). But the Trustee has not avoided the initial transfers from BLMIS to the Fairfield Funds, and his own Complaint in this action discloses that rather than pursue the avoidance action (*Picard v. Fairfield*) to judgment, he elected to settle with the Fairfield Funds liquidators. The resulting Consent Judgment entered in the Bankruptcy Court, moreover, did not provide for the avoidance of the initial transfers that form the predicate for this action against the Barclays Defendants as alleged subsequent transferees. (*See* p. 5, above).

Although this failure should doom the Complaint,[6] it appears that the Trustee nevertheless may intend to rely on the Consent Judgments as proxies for the statutory requirement of having "avoided" the initial transfers.  (*See* Gottridge Decl. Ex. 1 [Compl.] ¶ 42).  The merits of that tactic aside, establishing a critical element of the Trustee's claim against the Barclays Defendants on the basis of Consent Judgments to which they were not even parties would violate the constitutional guarantee that no person shall be deprived of property without due process of law, U.S. Const. amend. V.  *See, e.g., Dye v. Sachs (In re Flashcom, Inc.),* 361 B.R. 519, 524 (Bankr. C.D. Cal. 2007).  At a minimum, the Trustee's reliance on the Consent Judgments raises a serious due process concern that will require substantial consideration of non-bankruptcy law – and, therefore, mandates withdrawal of the reference.

## II.    CONSIDERATIONS OF JUDICIAL EFFICIENCY AND THE BARCLAYS DEFENDANTS' RIGHT TO A JURY TRIAL WARRANT WITHDRAWAL OF THE REFERENCE "FOR CAUSE SHOWN."

In addition to mandatory withdrawal, this Court may withdraw the reference "for cause shown."  28 U.S.C. § 157(d).  The factors to be considered include the efficient use of judicial resources and delay and costs to the parties.  *See, e.g., In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); In re *Northwest Airlines, Corp.* 384 B.R. 51, 59 (S.D.N.Y. 2008) ("[T]he critical question is efficiency and uniformity") (alteration in original).

To the extent this Court determines that the issues discussed in Point I of this memorandum do not warrant mandatory withdrawal of this action, permissive withdrawal is still

---

[6] The plain language of Section 550 establishes that recovery is dependent on an initial transfer that was actually "avoided", not merely one that is theoretically "avoidable."  Although some courts have relaxed the standard, the statute's plain meaning has been faithfully applied in a line of cases holding that "in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548."  *In re Slack-Horner Foundries Co.*, 971 F.2d 577, 580 (10th Cir. 1992); *accord In re Allou Distribs., Inc.*, 379 B.R. 5, 19 (Bankr. E.D.N.Y. 2007); *In re Furs by Albert & Marc Kaufman, Inc.*, No. 03-41301, 2006 WL 3735621, at *8 (Bankr. S.D.N.Y. Dec. 14, 2006); *but see, e.g., In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 706 (11th Cir. 2005); *In re AVI, Inc.*, 389 B.R. 721, 735 (9th Cir. 2008); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008).

appropriate to avoid piecemeal litigation and promote its efficient resolution. It would be inefficient to conduct parallel proceedings in two courts.  Although this Court's Amended Standing Order (*see* p. 7 n.4 above) provides that the Bankruptcy Court may submit to the District Court proposed findings of fact and conclusions of law if it determines that the entry of a final judgment is inconsistent with Article III of the United States Constitution, that does not eliminate duplication.  In fact, it guarantees that two courts will have to adjudicate the issues.  The more efficient approach is for this Court to decide all of the issues set forth above in the first instance.

Moreover, neither Barclays Bank (Suisse) S.A., nor Barclays Bank S.A. have filed proofs of claim in the SIPA liquidation of BLMIS.[7]  Accordingly, they are both entitled to a jury trial on the Trustee's claim against them.  *See Granfinanciera,* 492 U.S. at 36, 58.  The Bankruptcy Court may only hold a jury trial if it is "specially designated" to do so by the District Court *and* if it has "the express consent of all the parties."  28 U.S.C. § 157(e).  Because the Barclays Defendants do not consent to a jury trial in the Bankruptcy Court, this action will have to be tried in this Court. To avoid the inefficiencies that will result from one court (the Bankruptcy Court) adjudicating all or part of the case, only to have to turn it over to another court (the District Court) for trial, permissive withdrawal is warranted.

---

[7] The Trustee alleges that BPB&T filed a proof of claim (*see* Gottridge Decl. Ex. 1 [Compl.] ¶ 7), but not that the other Barclays Defendants did so.  As indicated at p. 6 above, the Trustee's claim against BPB&T is for less than $900,000; his claims against the other two Barclays Defendants is for an aggregate amount exceeding  $66 million.

Case 1:12-cv-01692-SR   Document 5   Filed 03/14/12   Page 22 of 22

## **Conclusion**

For the foregoing reasons, the Barclays Defendants respectfully request that the District

Court enter an order withdrawing from the Bankruptcy Court the reference of this action.

Dated:   New York, New York
     March 14, 2012

                                   Respectfully submitted,

                                   **HOGAN LOVELLS US LLP**

                                   By:  _/s/ Marc J. Gottridge_____
                                       Marc J. Gottridge
                                       Andrew M. Behrman
                                 875 Third Avenue
                                 New York, NY 10022
                                 Telephone (212) 918-3000
                                 Facsimile (212) 918-3100
                                 marc.gottridge@hoganlovells.com

                                 *Attorneys for Defendants Barclays Bank*
                                 *(Suisse) S.A., Barclays Bank S.A.,*
                                 *and Barclays Private Bank & Trust Limited*