SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants Standard
Chartered Bank International
(Americas) Ltd. and Standard
Chartered International (USA) Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SECURITIES INVESTOR PROTECTION
CORPORATION,

            Plaintiff-Applicant,

            v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

            Defendant.

: Adv. Pro. No. 08-1789
: (BRL)
:
: SIPA LIQUIDATION
:
: (Substantively
: Consolidated)

------------------------------------------------------------- x

In re

BERNARD L. MADOFF,

            Debtor.

------------------------------------------------------------- x

IRVING H. PICARD, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC,

            Plaintiff,

            v.

STANDARD CHARTERED FINANCIAL SERVICES
(LUXEMBOURG) S.A., as represented by its liquidator
Hanspeter Kramer, *et al.*,

: Adv. Pro. No. 12-1565 (BRL)

------------------------------------------------------------- x

**RESPONSE TO ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE
REQUIRED TO MAKE EXPEDITED LIMITED DISCLOSURES OR TO PROVIDE
<u>IMMEDIATE NOTICE OF CERTAIN ADVERSARY PROCEEDINGS</u>**

1.      Standard Chartered Bank International (Americas) Ltd. and Standard Chartered International (USA) Ltd. (together, "Standard Chartered") respectfully submit this response to the Order to Show Cause Why Defendants Should Not Be Required to Make Expedited Limited Initial Disclosures or to Provide Immediate Notice of Certain Adversary Proceedings, dated May 8, 2012.

2.      By this application, the Trustee seeks to inflict an extraordinary burden on Standard Chartered, including a risk of criminal liability under foreign laws, without even giving it a reasonable opportunity to respond to the application. The proposed order requested by the Trustee would require Standard Chartered to provide the identity and physical and mailing addresses of customers for which it and its predecessors received redemptions totaling $273 million, over a period of four and one-half years commencing in April 2004, within *five days* of service of the proposed Order. The discovery that the Trustee seeks relates to businesses that Standard Chartered Bank acquired early in 2008, after most of the redemptions had occurred, and most of the requested information is not readily available to Standard Chartered. Moreover, the Trustee's requested relief raises serious concerns with respect to privacy and bank secrecy laws in foreign jurisdictions, including Switzerland and Singapore, which Standard Chartered will not be able either to present to the Court properly before the return date of the Order to Show Cause or to assess prior to the proposed deadline for providing the requested discovery. Standard Chartered's difficulty in responding to the application is compounded by the fact that this proceeding was commenced on April 26, 2012, less than three weeks ago, and only one of the three defendants has been served, on May 7, 2012.[1]

---

[1]    This Response is submitted by SCB and SCI. As noted in the Complaint, the first-named defendant, Standard Charted Financial Services (Luxembourg) S.A. ("SCL"), is in liquidation and is represented by its Liquidator. SCL is not listed in Exhibit A to the

2

3.	The Trustee has absolutely no justification either for depriving Standard Chartered of a reasonable opportunity to respond to the application or for requiring it to shoulder the burdens and risks of the expedited discovery he seeks. The supposed need for both an expedited hearing on the application and the expedited discovery that the application seeks is based on an alleged deadline the Trustee has been well aware of for more than 10 months. The Trustee has been aware of Standard Chartered's and its predecessors' role in redeeming shares of Fairfield Sentry Limited ("Fairfield Sentry") since no later than October 1, 2009, when he served a subpoena on defendant Standard Chartered International (USA) Ltd. seeking, *inter alia*, "All documents concerning Fairfield Sentry." The Trustee was undoubtedly aware of complaints filed by the Fairfield Sentry Liquidators seeking to recover redemption payments from Standard Chartered and unnamed "Beneficial Owners . . . 1-1000" in April 2010 and January 2011. Thus, there is no justification for denying Standard Chartered a reasonable time both to respond to the Trustee's application, addressing the difficult issues presented by the Trustee's discovery requests, and to provide any discovery to which he is determined to be entitled.

4.	Standard Chartered adopts the arguments presented in the Opposition of Banque Syz and Unifortune to the Trustee's Application for Expedited Disclosure of Customer Information or, Alternatively, to Require Certain Notices, Adv. Nos. 11-2149 (BRL), 11-2553 (BRL) (May 14, 2012), insofar as they are applicable to the facts presented in this Response. Insofar as the Trustee seeks discovery of information held in Standard Chartered's booking office located in Switzerland, Standard Chartered adopts the arguments presented in the Joinder by Swiss Bank Defendants in Opposition to the Trustee's Motion to Require Defendants to Make Expedited Disclosure of the Identity and Addresses of Customers and Former Customers or,

---

Order to Show Cause, and accordingly the Trustee is not seeking any relief as against SCL.

3

Alternatively, to Provide Certain Notices to Those Customer and Former Customers (May 14, 2012).

## BACKGROUND

5.  American Express Bank Ltd. ("AEBL") operated a private banking business for clients residing outside the United States. AEBL's clients resided in dozens of foreign countries and maintained private bank accounts at "booking centers" around the world, including Miami, London, Geneva, Monaco, Hong Kong, and Singapore. (Declaration of Bharat Vijayan, subscribed to May 14, 2012 ("Vijayan Decl.") ¶ 6.) The Miami booking center was operated by American Express Bank International ("AEBI"), a subsidiary of AEBL. (*Id*.) For the sake of clarity, this Response will refer to these global operations as those of AEBL.

6.  In or around October 2003, AEBL approved the sale of Fairfield Sentry shares to its private banking customers. Over the next five years, AEBL customers purchased and sold hundreds of millions of dollars in Fairfield Sentry shares. The transactions were routed through AEBL's Luxembourg location – which was known at various times as American Express Bank (Luxembourg) S.A. and American Express Financial Services (Luxembourg) S.A. – and an account maintained at Euroclear Bank SA/NV entitled "FS/AEB Lux." By 2008, AEBL's customers held Fairfield Sentry shares valued at more than $500 million in private bank accounts around the world. (Vijayan Decl. ¶ 7.)

7.  In February 2008, Standard Chartered PLC acquired AEBL's private banking business. To integrate the acquired businesses, Standard Chartered PLC and its global affiliates conducted various corporate reorganizations and name-changes. For example, AEBL subsequently changed its name to Standard Chartered International (USA) Ltd. ("SCI") and

4

AEBI changed its name to Standard Chartered Bank International (Americas) Ltd. ("SCBI") (Vijayan Decl. ¶ 5.)

8. On October 5, 2009, the Trustee purported to serve defendant SCI with a Subpoena for Rule 2004 Examination seeking documents from SCI and any subsidiaries, affiliates, divisions or branches, including AEBI, American Express Bank (Luxembourg) S.A., and American Express Bank (Switzerland) S.A. (collectively, the "Bank"). (Declaration of Patrick B. Berarducci, subscribed to May 14, 2012 ("Berarducci Decl.") ¶ 3 & Ex. C.) The Subpoena requested, among other things, documents relating to the Bank's relationship with Fairfield Sentry, including any "due diligence" that the Bank conducted of Fairfield Sentry. (Berarducci Decl. Ex. C, Request 10.) The Subpoena also requested "all documents concerning the redemptions of Fairfield Sentry shares," and "all documents concerning how you used, discharged or further transferred any funds you received as a result of the redemptions of Fairfield Sentry shares." (*Id.*, Requests 28 and 29.)

9. Sullivan & Cromwell LLP ("S&C") was engaged to respond to the Subpoena on behalf of SCI. S&C conferred with counsel for the Trustee, and it was agreed that SCI would focus its search and production on materials related to due diligence on BLMIS and Fairfield Sentry. On November 19, 2009, SCI produced 1,311 pages of documents and served responses and objections to the Subpoena. (Berarducci Decl. ¶ 4 & Exs. D-E.) Among other things, SCI objected to the Trustee's requests for documents concerning redemption payments, but offered to meet and confer on the requests. (*See* Berarducci Decl. Ex. E, at 28-29.) The Trustee never contacted SCI to discuss the issue. (Berarducci Decl. ¶ 5.)

10. On April 20, 2010, the liquidators for Fairfield Sentry (the "Liquidators") commenced an action in the New York Supreme Court against "FS/AEB Lux" and unnamed

5

beneficial owners seeking to recover redemption payments from Fairfield Sentry dating back to April 21, 2004 under common law theories of mistake and restitution. (Berarducci Decl. ¶ 6.) As described above, "FS/AEB Lux" was the name of the account at Euroclear Bank through which AEBL's Luxembourg affiliate subscribed to and redeemed Fairfield Sentry shares on behalf of AEBL's private banking clients. S&C explained the background of the account and transactions to counsel for the Liquidators. On October 7, 2010, the Liquidators voluntarily dismissed the case because the FS/AEB Lux account was a large "net loser," as it had invested over $200 million more with Fairfield Sentry than it withdrew from the fund. (Berarducci Decl. ¶ 6.)

11. On January 14, 2011, the Liquidators commenced an adversary proceeding in this Court against "FS/AEB Lux a/k/a American Express Bank (London) a/k/a Standard Chartered PLC and Beneficial Owners of Accounts Held in the Name of FS/AEB Lux 1-1000." In that proceeding the Liquidators seek to recover redemption payments made by Fairfield Sentry to the FS/AEB Lux account dating back to August 15, 2005 under various common-law theories and sections 245 and 246 of the BVI Insolvency Act. The Liquidators asserted similar common law claims against other defendants in the High Court of Justice in the British Virgin Islands (the "BVI Court"). The BVI Court dismissed the claims, and that decision is now on appeal. The Liquidators' adversary proceeding in this Court is stayed pending resolution of that appeal. (Berarducci Decl. ¶ 7.)

12. On June 7 and 10, 2011, this Court entered orders approving a settlement between the Trustee, Fairfield Sentry, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds"), under which the Trustee's claims against these entities were resolved. (Adv. Pro. No. 09-01239, Docket Nos. 92, 95, at 2.) Pursuant to this settlement

6

agreement, this Court entered consent judgments against the Fairfield Funds on July 13, 2011. (Adv. Pro. No. 09-01239, Docket Nos. 109, 110.)

13. On April 26, 2012, the Trustee commenced this proceeding. The Trustee is seeking to recover $329,742,213 of subsequent transfers that were purportedly made by Fairfield Sentry and Kingate Global. (Compl. ¶ 2.) Specifically, the Trustee alleges that approximately $275 million that Fairfield Sentry received from BLMIS was subsequently transferred to defendant SCL, and that SCL transferred "some or all" of that $275 million to defendants SCBI and SCI. (Compl. ¶ 56.) As shown in Exhibit F to the Complaint, the Trustee is seeking to recover more than 160 transfers that Fairfield Sentry made over a period of four and one-half years beginning in April 2004.

14. On May 7, 2012, SCBI received service of the Complaint via U.S. mail. (Vijayan Decl. ¶ 10.) SCI has not received service.

15. On May 7, 2012, the Trustee filed an application by way of order to show cause seeking entry of an order directing 64 defendants, including SCI and SCBI, to make expedited initial disclosures or provide immediate notice of certain adversary proceedings. (Adv. No. 12-1565 (BRL), Docket Nos. 4-7.) The application is premised on the Trustee's speculation that, if Standard Chartered asserts a "mere conduit" defense, he may be precluded from recovering subsequent transfers from Standard Chartered's customers unless he receives certain expedited relief by June 7, 2012, *i.e.*, one year from this Court's initial approval of the Trustee's settlement with Fairfield Sentry.

16. On May 8, 2012, this Court entered the Order to Show Cause, requiring Standard Chartered to submit papers in response in four working days, on May 14, and to appear for a hearing on May 16.

7

# ARGUMENT

17. The Trustee filed suit against Standard Chartered less than three weeks ago and, at this time, he has served only one of the Standard Chartered defendants. No Rule 26(f) conference has taken place, and neither the Trustee nor his counsel has had any discussions with Standard Chartered about the requested discovery or the mere conduit defense. Standard Chartered should not be threatened with premature discovery and forced to decide whether to assert a conduit defense before knowing, among other things, which of the Trustee's claims (if any) will survive a Rule 12(b)(6) motion. Indeed, "'the court must protect defendants from unfairly expedited discovery,'" particularly when, as here, discovery is sought within 30 days of a lawsuit being commenced. *OMG Fid., Inc.* v. *Sirius Techs., Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006) (quoting *Notaro* v. *Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

18. Expedited discovery is not appropriate when the requested relief would be unreasonable in light of the burdens and time constraints imposed. *E.g., OMG Fid.*, 239 F.R.D. at 305 (denying expedited discovery based on burden of responding); *Irish Lesbian and Gay Organization* v. *Giuliani*, 918 F. Supp. 728, 731 (S.D.N.Y. 1996) (denying expedited discovery that was "not reasonably tailored to the time constraints" sought). The Trustee makes the conclusory assertion that his "requested relief is not unduly burdensome" because the information is "known and readily available to the Defendants." (Trustee Memorandum of Law at 7-8.) That is not true with respect to Standard Chartered.

19. The identity and contact information of each customer who redeemed shares in Fairfield Sentry is not readily available to Standard Chartered because the internal transaction records relating to Fairfield Sentry are not linked to account records containing identifying and contact information for the respective customers. This is particularly true for

8

customers who closed their private bank accounts before Standard Chartered PLC's acquisition of AEBL and thus were never customers of Standard Chartered. At least for those customers, Standard Chartered will not be able to obtain the information sought by the Trustee without conducting a manual review of paper account records that were inherited from AEBL. The location of these records will depend in part on which booking center the customer account was maintained at. Many of these records are in warehouse storage and are not easily accessible, and some of these records may be incomplete. (Vijayan Decl. ¶ 8.)

20. The difficulties that Standard Chartered would face obtaining information concerning customers for which AEBL redeemed Fairfield Sentry shares would also make it prohibitively expensive and burdensome to send notices to all those customers by the proposed deadline of June 1, a mere fifteen days after the hearing on the Trustee's application. (Vijayan Decl. ¶ 8.)

21. Separately, even if Standard Chartered could identify and obtain the relevant contact information for each customer who redeemed shares in Fairfield Sentry, the Trustee's requested relief implicates privacy and bank secrecy laws in multiple foreign jurisdictions. Many of Standard Chartered's and AEBL's customers reside(d) or maintain(ed) accounts in foreign jurisdictions with strict bank secrecy laws, including, for example, Switzerland and Singapore. The Trustee's requested relief could subject Standard Chartered to regulatory action, criminal sanctions, and civil claims for damages in these countries. Even mailing a notice to a last known address may implicate bank secrecy laws, because Standard Chartered could not be certain that the person receiving the mail is the customer to whom the communication relates. At a minimum, Standard Chartered cannot comply with the Trustee's requested relief before conducting a careful analysis of these laws.

9

22. To the extent that the relief sought by the Trustee conflicts with foreign law, this Court will need to conduct a comity analysis. *Minpeco, S.A.* v. *ContiCommodity Services, Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987). The Supreme Court has directed this and every other American court to take care to demonstrate due respect for potential conflicts between its discovery requirements and the requirements of foreign law. *Societe National Industrielle Aerospatiale* v. *United States District Court*, 482 U.S. 522, 546 (1987). The weighing of different considerations that a court must undertake when a party seeks discovery from a resident of the United States that would violate foreign law is described at length in *Cochran Consulting, Inc.* v. *Uwater USA, Inc.*, 103 F.3d 1224, 1226-28 (Fed. Cir. 1996). The Trustee's application is completely inconsistent with the Supreme Court's admonition, and the timing of the application does not even give the Court the opportunity to consider the issues properly.

23. These burdens distinguish this case from *In re Enron Corp.*, No. 03-92677, Docket No. 25 (Bankr. S.D.N.Y. Nov. 18, 2003), which is the only case cited by the Trustee as supporting his otherwise unprecedented request for relief. In that case, the Court ordered limited initial disclosures and notice, similar to what the Trustee requests here, in connection with a limited number of commercial paper transactions. However, none of the defendants in that case made a non-conclusory argument that the requested relief was burdensome or implicated any foreign bank secrecy laws. *See id.*, Docket Nos. 6-8, 10-13, 17-18, 20. These are critical differences that should preclude the Court from ordering the expedited discovery requested by the Trustee here.

24. To justify his extraordinary tactics, the Trustee principally relies on Rule 26 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7026 of

10

the Federal Rules of Bankruptcy Procedure. But these rules do not authorize such premature discovery or allow the Trustee to preempt the normal course of litigation. Rule 26(a)(1)(A) requires initial disclosures only in relation to claims and defenses that the party making the disclosure *intends* to assert, and thus presupposes an opportunity to assess the case and formulate a strategy. *See Committee Notes on Rule 26(a)(1), 2000 Amendment*.

25. Courts reject requests for expedited discovery that are made after unreasonably long delays in seeking the requested discovery. *E.g.*, *Park West Radiology* v. *Carecore Nat. LLC*, 240 F.R.D. 109, 112, 114 (S.D.N.Y. 2007) (total delay of approximately one year "undercuts plaintiffs' assertions of irreparable harm" and bars expedited discovery); *Matrix Essentials* v. *Quality King Distribs.*, 346 F. Supp. 2d 384, 393 (E.D.N.Y. 2004) (rejecting expediting discovery in part because movant knew of the alleged violations for two years "and failed to commence an action or seek any order from this court"); *Gidatex SRL* v. *Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998) (waiting eight months to file a lawsuit was a "substantial, unexcused delay" that precluded expedited discovery).

26. Here, the Trustee attempts to justify expedited discovery by asserting that a one-year limitations period for certain recovery actions may expire on June 7, 2012. But the fact that the Trustee may be barred from asserting untimely claims does not warrant the extraordinary relief requested here because the Trustee was unreasonably dilatory. Indeed, the Trustee offers no explanation for waiting ten months to pursue discovery that he now claims must be provided on an expedited basis in less than a week. A bankruptcy trustee is subject to the same consequences of unreasonable and prejudicial delay as other litigants. *Cf. Miller* v. *Clark Retail Enters. (In re Chenault)*, No. 04-91786, Adv. No. 09-09071, 2010 Bankr. LEXIS 510, at *5-6 (Bankr. C.D. Ill. Feb. 24, 2010) (applying doctrine of laches to dismiss bankruptcy

11

trustee's complaint because delay of 28 months in initiating lawsuit was "clearly unreasonable"); *Feldman* v. *Trans−East Air, Inc.*, 366 F. Supp. 66, 70 (E.D.N.Y. 1973) (applying doctrine of laches to dismiss bankruptcy trustee's complaint because delay of approximately 14 months was unreasonable and prejudicial).

27. The Trustee's delay is particularly unreasonable with respect to Standard Chartered. The Trustee has been aware of Standard Chartered and its customers for years. He served a Rule 2004 Subpoena on Standard Chartered in October 2009 and, over the last few years, he has been working closely with the Fairfield Sentry Liquidators who have commenced two proceedings against Standard Chartered and unnamed beneficial owners dating back to April 2010. Most absurd, however, is the fact that the Trustee ignored *for two-and-one-half years* Standard Chartered's offer to meet and confer regarding the very discovery that the Trustee now claims he needs on an expedited basis. Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7026, provides that "the court *must* limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . (ii) the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action." (emphasis added).

28. Separately, United States District Judge Rakoff has held in a number of proceedings commenced by the Trustee that the Trustee may not avoid transfers made by BLMIS more than two years prior to the commencement of the SIPA Liquidation in December 2008. Standard Chartered expects to make a motion to withdraw the reference and to have the same ruling applied to this proceeding. Approximately 55 of the transfers from Fairfield Sentry to AEBL that the Trustee seeks to recover in this proceeding, and as to which he seeks discovery and notice in this application, occurred more than two years before the commencement of the

12

SIPA Liquidation. Thus, the Trustee is seeking to impose extraordinarily burdensome discovery that is completely irrelevant to any claim he is likely to be permitted to assert.

29. The Trustee has made clear that he is only seeking the relief requested in the Order to Show Cause from defendants that refuse to waive the defense that they received the money that the Trustee seeks to recover solely as conduits for others, and therefore are not transferees from which the money can be recovered pursuant to 11 U.S.C. § 550. Thus, the Trustee's application essentially presents Standard Chartered with an ultimatum: Immediately waive the conduit defense, or provide premature, burdensome, and possibly illegal disclosures concerning its private banking customers. Standard Chartered should not be confronted with this choice.

## CONCLUSION

30. For the reasons set forth above, Standard Chartered respectfully requests that the Court deny the Trustee's application.

Dated: May 14, 2012

Respectfully submitted,

   /s/ Robinson B. Lacy
Robinson B. Lacy
Sharon L. Nelles
Patrick B. Berarducci
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants Standard Chartered Bank International (Americas) Ltd. and Standard Chartered International (USA) Ltd.*

13