**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Dean D. Hunt

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

Hearing Date: May 2, 2017
Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust,<br><br>Defendants. | Adv. Pro. No.: 10-04417 (SMB) |

| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br>Plaintiff,<br>v.<br><br>DAVID IVAN LUSTIG,<br><br>Defendant. | Adv. Pro. No. 10-04554 (SMB) |
| --- | --- |

**REPLY IN SUPPORT OF THE TRUSTEE'S**
**MOTION TO STRIKE AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF THE REPLY ..........1

II. THE AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW ..........2

III. THE TRUSTEE WILL BE PREJUDICED BY INCLUSION OF THE AFFIRMATIVE DEFENSES..........6

IV. CONCLUSION..........7

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.),*
277 B.R. 520 (Bankr. S.D.N.Y. 2002) .......... 3

*In re A.R. Baron Co., Inc.*,
226 B.R. 790 (Bankr. S.D.N.Y. 1998) .......... 3

*Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*)
312 B.R. 262 (Bankr. D.N.J. 2004) .......... 3, 4, 5

*New York State Elec. and Gas Corp v. McMahon* (*In re McMahon*),
129 F.3d 93 (2d Cir. 1997) .......... 5

*Picard v. HSBC Bank PLC, et al.*,
No. 09-01364 (SMB) (Bankr. S.D.N.Y. Dec. 17, 2014) .......... 5

*University Medical Center v. Sullivan (In re University Medical Ctr.),*
973 F.2d 1065 (3d Cir. 1992) .......... 5

*In re Waterscape Resort LLC*,
544 B.R. 507 (Bankr. S.D.N.Y. 2016) .......... 5

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. .......... 1

SIPA § 78*lll*(2) .......... 3

SIPA § 78*lll*(4) .......... 3

**Rules**

Federal Rule of Civil Procedure Rule 45 .......... 6

Federal Rules of Bankruptcy Procedure Rules 2002 and 9019 .......... 5

Federal Rules of Bankruptcy Procedure Rule 7012 .......... 1

Federal Rules of Civil Procedure Rule 12(f) .......... 1

To eliminate the expense and delay of litigating legally insufficient defenses, Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA") files this Reply to Defendants' Memorandum of Law in Opposition (the "Response") (Lustig Trust Dkt. No. 76 and 78; Lustig Dkt. No. 79 and 81) to the Trustee's motion and its accompanying Memorandum of Law (the "Motion") (Lustig Trust Dkt. Nos. 73 and 74; Lustig Dkt. Nos. 76 and 77) to strike certain of Defendants The Lustig Family 1990 Trust and David Ivan Lustig's (collectively, "Defendants") affirmative defenses under Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## I. **<u>SUMMARY OF THE REPLY</u>**

Throughout their Response to the Trustee's Motion, Defendants ignore facts that are inconvenient to their narrative and misconstrue law that is detrimental to their position with the goal of achieving their view of "equity." Defendants' Response is predicated on the false premise that they did not receive money withdrawn from their BLMIS accounts. (Lustig Trust Dkt. No. 76; Lustig Dkt. No. 79). In fact, Defendants made a decision to withdraw money from their BLMIS accounts, requested the withdrawals, received the money, and then invested in Lakeview.[1] Allowing Defendants to avoid liability in these adversary proceedings because they chose to make an investment in Lakeview with the money Defendants withdrew from their BLMIS accounts would give Defendants preference over BLMIS customers by allowing Defendants' alleged losses to be treated as a claim for customer property. Simply put, even if Defendants' money made its way back into BLMIS, it was through an at least thrice-removed

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

(indirect by a factor of three) investment in Lakeview and clearly cannot come close to being a claim for customer property in this SIPA proceeding. Despite touting supposed "equity" in an attempt to garner sympathy, in reality, the end result proposed by Defendants might be fair only to them. It would not be fair or do real equity to almost one thousand BLMIS allowed customers who have not received back all of the money they entrusted to BLMIS. Equity entitles customers with valid claims to recover their net losses, yet Defendants insist that BLMIS customers with allowed claims should bear the burden of Defendants' attempt to increase their investment returns through an indirect investment vehicle (Lakeview) that did not have a BLMIS account, did not entrust any money to BLMIS, was not a BLMIS customer and does not qualify for protection as a "customer" in this SIPA proceeding. Defendants' plea for their version of "equity" is particularly hollow given that they knew their recourse was against Lakeview and they have already taken that path and recovered almost $800,000 following litigation against Lakeview.[2]

As set forth in the Trustee's Motion and below, Defendants' Eighth, Ninth, Tenth and Eleventh Affirmative Defenses (the "Affirmative Defenses") cannot succeed as a matter of law.[3] No further discovery as to the facts or further proceedings on any substantial questions of law are necessary to determine the viability of these Affirmative Defenses, and they should be struck before the Trustee is prejudiced by added discovery and litigation related to meritless defenses.

## II. <u>THE AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW</u>

By claiming credit for their investment in Lakeview, Defendants are seeking treatment as "customers" entitled to share in "customer property" in plain contradiction with the priority scheme of the Code and SIPA, as well as prior explicit rulings of this Court. Most notably,

[2] *See* Response at p. 9 n.2; p.14 n.4 (Lustig Trust Dkt. No. 76; Lustig Dkt. No. 79).

[3] Defendants have withdrawn their Twelfth Affirmative Defense. *See* Response at p. 17 n. 5 (Lustig Trust Dkt. No. 76; Lustig Dkt. No. 79).

Defendants' argument runs afoul of numerous decisions holding that claimants who did not directly invest in a BLMIS account are not customers under SIPA. Defendants' arguments are even more tenuous as they are at least three times removed as a BLMIS customer because the Lakeview investment vehicle in which they invested was not a direct investor or accountholder with BLMIS. Defendants disregard the distinction in a SIPA liquidation proceeding between the customer estate and the general estate. *See In re A.R. Baron Co., Inc.*, 226 B.R. 790, 794 (Bankr. S.D.N.Y. 1998). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property." SIPA § 78*lll*(4). *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002). In contrast to the customer estate, the "general estate is comprised of all non-customer related assets." *In re A.R. Baron*, 226 B.R. at 794. "Customers" share in the fund of "customer property," which is "separate from the general estate." *Mishkin*, 277 B.R. at 557.

Defendants' reliance on *Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*) is misplaced. 312 B.R. 262 (Bankr. D.N.J. 2004). The *Dobin* court set forth the following facts:

> Presidential and the Debtor had entered into a financing agreement in June 2000 ('the Agreement'). The Agreement was what is commonly known as a 'factoring' agreement: Presidential advanced the Debtor loans worth up to eighty percent of the Debtor's accounts receivable, secured by a first priority security interest in, inter alia, the Debtor's accounts receivable. When those accounts receivable came due, the Debtor's customers would pay Presidential directly. Presidential would deposit the funds into a bank account, and the bank would sweep the funds from Presidential's account to apply to the debt. The Debtor did not list Presidential as a creditor on the Debtor's schedules when it filed for Chapter 11 on October 31, 2001. Nor did the Debtor give Presidential notice of the petition. Accordingly, due to the Debtor's obfuscation of its bankruptcy, Presidential continued to advance

> the Debtor money pursuant to the Agreement, and to collect on the Debtor's accounts receivable.

*Id.* at 265 (internal citations omitted). Before receiving notice of the petition, Presidential collected $163,847 in payments from the Debtor's customers and advanced the Debtor $192,200 in new, post-petition loans. *Id.* The Trustee sought to avoid the post-petition transfer of $163,847 in payments that Presidential collected from the Debtor's customers. *Id.* at 266. After determining the post-petition transfer was avoidable, the Court granted Presidential a credit for the $192,000 it advanced in post-petition loans. *Id.* at 269.

The *Dobin* case is completely inapposite here. It involved unauthorized post-petition transactions between the Debtor and Presidential following a voluntary petition filed under Chapter 11.[4] The Debtor in *Dobin* was not subject to a SIPA liquidation proceeding involving two separate estates. Defendants ask this Court to find *Dobin's* premise that "cash is fungible" means the separate estates are also fungible. *Id.* at 271. That is not true. Despite their own admission that they are not customers under SIPA, Defendants would have this Court disregard the priority scheme of the Code and SIPA as well as the Court's sixteen prior rulings on who qualifies as a customer under SIPA to support a misplaced call to equity by Defendants. Moreover, while *Dobin's* holding was based on Presidential's direct contractual privity with the Debtor, no comparable relationship exists here as evidenced by the convoluted fact pattern espoused by Defendants. In *Dobin*, the court noted that it was "cash in, cash out" but this is a case of cash roundabout. *Id.*at 271.

Defendants similarly mischaracterize the Trustee's settlements with Senator Fund SPC ("Senator") and Rye Select Broad Market Fund, LP ("Broad Market Fund"), which were

[4] Here, Defendants seek to expand section 105(a) by offsetting a prepetition claim against a post-petition obligation.

approved by this Court.[5] The Senator and Broad Market Fund settlements resulted in money being paid to the Trustee for benefit of the fund of customer property. The fund of customer property has been and continues to be distributed to those with valid customer claims who directly invested with BLMIS, including the sizable allowed customer claims filed by both Senator and Broad Market Fund. While money received by direct investors or "customers," like Senator and Broad Market Fund, should be, or already has been, distributed to investors in those entities, Defendants are further removed because they were not investors in either Senator or Broad Market. Defendants are not even *indirect* investors in BLMIS.

Because Defendants do not qualify as customers, they cannot receive distributions directly from the customer fund. Defendants' reliance on the Court's equitable powers is misplaced. Defendants fully understand that their recourse is not an "equitable credit" against customer property; it is a direct claim against Lakeview. Through their proper avenue of recourse - litigation against Lakeview, the entity they actually invested in - Defendants have recovered at least $792,654. Again, Defendants' reliance on *Dobin* and Section 105(a) is misplaced here.

Finally, Defendants' argument in support of their recoupment defense strains credulity. Recoupment is a "limited" doctrine, which should be "narrowly construed" and allowed only "within a single contract or transaction or a single set of transactions." *New York State Elec. and Gas Corp v. McMahon* (*In re McMahon*), 129 F.3d 93, 96-7 (2d Cir. 1997). A mere logical relationship is not sufficient; a "single integrated transaction" is required under the recoupment doctrine. *University Medical Center v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992); *In re Waterscape Resort LLC*, 544 B.R. 507, 527 (Bankr. S.D.N.Y. 2016).

---

[5] *See* Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and between the Trustee and Senator Fund SPC, *Picard v. HSBC Bank PLC, et al.*, No. 09-01364 (SMB) (Bankr. S.D.N.Y. Dec. 17, 2014) (Dkt. No. 350); Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement, *Picard v. Tremont Group Holdings, Inc., et al.*; No. 10-05310 (SMB) (Bankr. S.D.N.Y. Sept. 22, 2011) (Dkt. No. 38).

Defendants' assertion that "on the surface" neither of these is the "typical recoupment case" is quite the understatement. The fact that Defendants spent 13 pages of their Response attempting to explain the convoluted background of their investment history belies any argument that it constitutes a single integrated transaction or even a single set of transactions. The recoupment doctrine fails as a matter of law.

## III. THE TRUSTEE WILL BE PREJUDICED BY INCLUSION OF THE AFFIRMATIVE DEFENSES

The Trustee has demonstrated the prejudice of the unquestionably onerous discovery sought by Defendants. Responding to discovery previously served by Defendants would burden the Trustee with the task of reviewing thousands of documents received in response to numerous subpoenas and/or document requests, in multiple unrelated adversary proceedings involving unrelated issues and concerning transactions to which BLMIS was not a party.

Defendants, whose Affirmative Defenses are based on records and testimony from third parties, have demonstrated that they will not seek such documents through third party discovery under Federal Rule of Civil Procedure Rule 45, but instead will ask this Court to burden the Trustee with these requests.[6] While the Trustee may have received documents from certain third parties in unrelated proceedings, the parties from and issues for which they were obtained were different than those present here. The parties in those matters certainly did not contemplate or consider these adversary proceedings during discovery. It is doubtful that the Trustee received all documents that would have been related to these invalid defenses. The Trustee should not be required to cull through voluminous productions in an attempt to determine what a third party may have thought would be responsive to Defendants' discovery requests.

[6] Even the discovery from third parties would be unnecessarily prejudicial to the Trustee because allowing Affirmative Defenses that are contrary to the Code and SIPA and this SIPA proceeding will undoubtedly exacerbate and extend the duration and expense of these adversary proceedings.

Furthermore, any documents or information received by the Trustee from third parties in unrelated litigation is subject to strict confidentiality agreements reached after considerable negotiation. Under the Order Establishing Procedures for Third Party Data Rooms [08- 01789, Doc. No. 5475] ("Order"), documents produced by third parties are maintained in a Third Party Data Room. Because these adversary proceedings are Avoidance Actions for which a Notice of Applicability was filed, as defined in the Order, neither Defendants nor their counsel are permitted to review documents in the Third Party Data Room. Order at Section 5. Instead, if ordered to produce the documents, the Trustee's counsel would be required to review the documents in the Third Party Data Room, identify any potentially relevant documents, and then seek an exemption from the third party that produced the documents to the Trustee to reproduce them to Defendants. This would necessitate an explanation to the producing party as to why the documents are relevant in these unrelated adversary proceedings. Moreover, the producing party retains the discretion whether to allow the Trustee to produce the documents to Defendants. Obviously, shifting this extraordinary burden to the Trustee of reviewing and renegotiating confidentiality provisions would be prejudicial. This prejudice is further demonstrated by the numerous letters filed with this Court related to the discovery served by Defendants and the Trustee's responses and objections to the requests.[7]

Allowing the Affirmative Defenses to remain in the pleadings will undoubtedly exacerbate and extend the duration and expense of litigating these adversary proceedings.

## IV. <u>CONCLUSION</u>

Defendants admit they do not qualify as customers eligible to share in customer property. Rather than address the arguments set forth and cases cited by the Trustee, Defendants

---

[7] *See C*orrespondence to the Court regarding Defendants' First Sets of Interrogatories and Document Requests and the Trustee's Responses and Objections to Defendants' First Sets of Interrogatories and Document Requests. (Lustig Trust Dkt. Nos. 66, 67 and 69; Lustig Dkt. Nos. 69, 70 and 72).

repeatedly invoke their version of "equity" – that which benefits Defendants must be "equitable." Because there is no question of fact and no substantial question of law to be determined by this Court, and the Trustee will be prejudiced by inclusion of these affirmative defenses, the Trustee respectfully requests that this Court strike Defendants' Eighth, Ninth, Tenth and Eleventh Affirmative Defenses in their entirety.

Dated: New York, New York
April 14, 2017

Respectfully submitted,

*/s/ Nicholas J. Cremona*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-0518
Telephone: 713.751.1600
Facsimile: 713.751.1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Farrell A. Hochmuth
Email: fhochmuth@bakerlaw.com