**BakerHostetler**

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

April 24, 2017

Keith R. Murphy
direct dial: 212.589.4686
kmurphy@bakerlaw.com

**VIA ECF AND ELECTRONIC MAIL**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York  10004-1408
Bernstein.chambers@nysb.uscourts.gov

Re:    *Picard v. Edward A. Zraick Jr., et al.*, Adv. Pro. No. 10-05257 (SMB);

Dear Judge Bernstein:

We are counsel to Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* and the estate of Bernard L. Madoff.  We write in response to the Declaration of Robert A. Rich, dated April 12, 2017 (the "Declaration"), submitted in further support of Defendants' motion to extend the rebuttal expert disclosure deadline (the "Motion"), and the accompanying and unauthorized reply memorandum of law (the "Reply").

As a preliminary matter, at the March 29, 2017 hearing (the "March 29th Hearing"), the Court only authorized Defendants to supplement the Motion with an attorney declaration.  Defendants were not authorized to prepare and file any additional briefing, nor schedule an evidentiary hearing—which Defendants' Notice of Adjournment of Hearing, dated April 13, 2017, purports to do.  *See* ECF No. 72; Exhibit A, Transcript of March 29th Hearing, at p. 42.  The Trustee objects to the contents of the Reply being considered in the Court's resolution of the Motion, as well as the introduction by defense counsel of any further evidence beyond the Declaration in support of the Motion.  It is the Trustee's position that the May 3, 2017 hearing is simply a continuation of the original Motion conference for the limited purpose of addressing the Declaration that defense counsel was authorized to submit.  As addressed below, like the Motion, the Declaration is inadequate to support a finding of diligence, and defense counsel should not be given yet another chance to cure the Motion's deficiencies at an evidentiary hearing—this time, with the benefit of the Trustee's arguments articulated herein.  The Trustee submits that

Defendants have simply run out of chances at this point, and any further opportunities to cure would be prejudicial to the Trustee.

While the Reply is improper and should not be considered, it is worth noting that Defendants continue to incorrectly maintain that Bankr. Rule 9006 governs their request for an extension. As recognized by the Court at the March 29th Hearing, the proper standard governing a motion to amend a scheduling order is the good cause and diligence standard articulated in Fed. R. Civ. P. 16(b)(4) and the corresponding case law. *See, e.g., Misas v. North-Shore Long Island Jewish Health System*, Case No. 14-cv-8787, 2016 WL 4082718, *5 (S.D.N.Y. July 25, 2016) ("The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment."). None of the cases cited by Defendants involve case management dates contemplated by an operative scheduling order, and thus all of the referenced cases are inapposite on this basis alone.[1]

Diligence is the operative standard, and the Declaration is devoid of any evidence of it. Nowhere does the Declaration provide any <u>specific</u> steps or corresponding dates demonstrating that Defendants diligently attempted to timely comply with the original, or even the extended, deadline—which is precisely what the Court stated was lacking from the Motion during the March 29th Hearing. Despite those express observations by the Court, the Declaration—which the Defendants requested two weeks to prepare—similarly lacks sufficient, non-generalized, and non-conclusory representations. Absent such specificity, there can be no finding of diligence. In fact, the scant detail that can be gleaned from the Declaration actually establishes the opposite: that defense counsel failed to act diligently in complying with both the original and extended deadlines.

The relevant steps defense counsel purportedly took in advance of both the original and extended deadlines are primarily articulated in paragraphs four and seven of the Declaration. For the sake of clarity, we have reproduced these paragraphs below and analyzed them by sentence, adding our annotations which are intended to emphasize the details that the Declaration lacks.

### *Paragraph 4*

- Immediately upon reviewing the Dubinsky Report, I initiated the search for a potential rebuttal expert.

    *[This statement lacks any supporting detail as to when defense counsel initiated the search and what specific steps he took. In addition, this statement fails to explain*

---

[1] *See Ahanchain v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (summary judgment motion); *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase bank, N.A. (In re Motors Liquidation Co.)*, 552 B.R. 253, 274 (Bankr. S.D.N.Y. 2016) (amended complaint); *In re Fairfield Sentry Ltd.,* 458 B.R. 665 (S.D.N.Y. 2011) (removal); *Bryant v. Smith*, 165 B.R. 176 (W.D. Va. 1994) (debtor's schedules); *In re Merritt,* 2008 Bankr. LEXIS 4860, *9 (bankr. D. Or. Feb. 29, 2008) (motion regarding standing); *Curbison v. United States*, 2006 U.S. Dist. LEXIS 89004, *13 (D. N.J. Dec. 7, 2006) (motion to dismiss).

*why Defendants did not take any steps to identify a potential rebuttal expert prior to the Trustee's service of the Dubinsky Report in accordance with the case management order. The Trustee had served that report in many other cases prior to November 16, 2016, including to Helen Chaitman, with whom defense counsel has been working in connection with Bernard Madoff's deposition since at least last summer. Because the Trustee's reliance on the Dubinsky Report was no secret, Defendants could have initiated the search for a rebuttal expert long before the Trustee served the Dubinsky Report in this case.]*

- Given Defendants' limited financial means, I contacted defense counsel in other cases brought by the Trustee to try to coordinate the submission of an expert report with other defense counsel.

  *[The statement fails to identify who he spoke to, and when those conversations took place. In any event, this Court has already indicated that financial constraints and efforts to coordinate with other defense counsel in other cases are not relevant to this inquiry.]*

- I also discussed the Dubinsky Report and potential rebuttal witnesses with colleagues at Hunton & Williams LLP, including with Peter S. Partee, Sr., Esq., head of the Bankruptcy, Restructuring and Creditors' Rights group for the firm's New York office.

  *[This is simply an unremarkable statement. The fact that defense counsel spoke to another attorney in his firm about the case is not unusual—and it certainly does not justify the multiple extensions and delays in this adversary proceeding. Even if it were somehow relevant, the statement nevertheless lacks any detail and support as to the timing of this discussion.]*

- And, given Defendants' limited means, I had to determine appropriate compensation arrangement for any expert the Defendants would retain.

  *[The cost of litigating a case is not a basis for allowing deadlines to pass. The statement also fails to detail what steps were taken, and when.]*

## Paragraph 7

- The transcript of the first day of Mr. Madoff's deposition on December 20, 2016 was first made available to me on January 3, 2017. I immediately reviewed the transcript and determined that the first priority was to obtain a rebuttal expert report focused on the portion of the Dubinsky Report that concerned convertible bond trades at BLMIS.

  *[This argument was previously raised and rejected at the March 29th Hearing. Defendants could have sought to depose Madoff years ago, but only joined the bandwagon as their fact discovery deadline was coming to a close. The statement*

> *also fails to provide any detail as to when the stated action was taken, and how long it took to determine the prioritization. It also fails to elucidate why Defendants even needed Madoff's testimony to determine that approach, given that his 2009 plea allocution is a public document. In light of the plea allocution, Madoff's deposition testimony provided no additional justification to focus on Mr. Dubinsky's convertible arbitrage analysis. It is also worth noting that the Madoff deposition took place <u>after</u> the original rebuttal disclosure deadline.]*

- I inquired with several colleagues at Hunton & Williams LLP regarding potential experts on convertible bond trading in the 1980s. I also inquired with a bond trader at a major banking and financial services firm, who then reached out to several of his business contacts in search for a potential expert.

> *[This statement similarly fails to provide any information as to the dates of these inquiries, any efforts defense counsel made to follow-up with the bond trader, or any other specifics that would enable any real analysis of what was done. Most glaringly, this is inconsistent with the representations defense counsel made at the December 29, 2016 chambers conference that defense counsel had <u>already</u> identified a rebuttal expert who was reviewing the Dubinsky Report.]*

A finding of diligence cannot be made without answers to the basic questions noted above, and no such answers can be found in the Declaration. Most fundamentally, the Declaration fails to provide even a <u>single</u> date that any specific action was taken with respect to Defendants' retention of a rebuttal expert. One of the critical aspects of diligence—particularly given the nature of this dispute over Defendants' inability to comport with Court-ordered deadlines—is timing. To satisfy the operative standard, defense counsel must show what specific steps he took, when he took them, and how such steps were diligent under the circumstances. Yet based on the nature of the steps articulated in the paragraphs above, there is no conceivable reason why defense counsel could not have accomplished all of it in a matter of days. And without specific dates, it is possible that defense counsel waited until the eve of the deadline to take any of the action he describes—which would certainly reflect a lack of diligence.

Indeed, the Declaration suggests that this is exactly what happened. The most specific piece of information provided in the Declaration is that "it was not until <u>the end of January</u> that [defense counsel] identified Mr. Bill Feingold as an appropriate rebuttal expert" —despite the fact that the <u>extended</u> deadline to submit that report as granted by the Court was February 2, 2017. *See* Rich Declaration at ¶ 8. This alone should dispel any doubt that defense counsel failed to act diligently. The original deadline was December 16, 2016, and defense counsel has provided no justification for failing to identify an expert until a month and a half later—particularly given his representations to the Court at the December 29, 2016 chambers conference that he had already provided the Dubinsky Report to an identified expert, which was one of the reasons the Court granted the initial extension in the first place. When the Trustee subsequently asked defense counsel to provide the name of the rebuttal expert he had represented to the Court was already identified and was reviewing the Dubinsky Report, defense counsel refused, perhaps for obvious reasons. *See* Motion, Exhibit H.

The reality is that the Declaration proves what the Trustee has consistently asserted since Defendants made their original request for an extension: that this was simply a delay tactic and that Defendants knew that they were not going to be complying with the relevant deadlines. In fact, Defendants only sprang into action after the Court denied their request for yet another extension at the February 7, 2017 hearing. As discussed at length in the Trustee's Opposition to the Motion [ECF No. 68], defense counsel was clear in his very first request for an extension on December 14, 2016 that he was only "considering" the retention of a rebuttal expert, despite the fact that the original disclosure deadline was less than two days away. Moreover, Defendants never requested simple extensions of either deadline so they could finalize a report that was already in progress; rather, Defendants effectively requested indefinite extensions so they could file motions *in limine*, abandon the operative case management order entirely, and re-open fact discovery. These collateral requests revealed Defendants' objective to delay, and delay is simply incompatible with diligence.

The Trustee has already been prejudiced by having to oppose two separate letter requests for extensions, attend four hearings, oppose a formal motion, oppose a request for late and improper additional discovery by the Defendants, and now oppose a supplemental Declaration and an unauthorized Reply—all because Defendants failed to serve a rebuttal expert report by the original December 16th deadline. The fact that defense counsel identified Mr. Feingold at the end of January and finally (and improperly) served the report approximately two weeks later— only after the Court denied his second request for an extension—demonstrates that Defendants could have met the original deadline. Permitting defense counsel to offer additional evidence at an evidentiary hearing would be prejudicial given the number of chances Defendants have had to disclose a timely rebuttal report and file a proper motion with the requisite evidence in support of it. And granting the Motion at this point will only prejudice the Trustee further, as he will be forced to push out the case management deadline to accommodate the discovery the Trustee may need to take with respect to Mr. Feingold's report, including taking his deposition.

In light of all of the above, the Trustee respectfully requests that the Court deny the Motion without further qualification.

Respectfully submitted,

*/s/ Keith R. Murphy*

Keith R. Murphy
Partner

cc:  Robert A. Rich
     Hunton & Williams LLP
     200 Park Avenue
     New York, New York 10166