UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- X
                                   :
In re:                             :
                                   :   SIPA LIQUIDATION
                                   :
BERNARD L. MADOFF INVESTMENT       :
SECURITIES LLC,                    :   No. 08-01789 (SMB)
                                   :
            Debtor.                :
                                   :
---------------------------------- X
                                   :
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :
                                   :
                                   :
            Plaintiff,             :
                                   :   Adv. Proc. No. 09-01182 (SMB)
      v.                           :
                                   :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P., :
ARIEL FUND LTD., ASCOT PARTNERS, L.P., :
ASCOT FUND LTD., GABRIEL CAPITAL   :
CORPORATION,                       :
                                   :
            Defendants.            :
                                   :
---------------------------------- X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
TRUSTEE'S MOTION *IN LIMINE* NUMBER 3 TO EXCLUDE
THE OPINIONS AND TESTIMONY OF JEFFREY M. WEINGARTEN**

| | |
|---|---|
| DECHERT LLP | NORTON ROSE FULBRIGHT US LLP |
| 1095 Avenue of the Americas | 1301 Avenue of the Americas |
| New York, New York 10036 | New York, NY 10019-6022 |
| (212) 698-3500 | (212) 318-3000 |
| *Attorneys for Defendants J. Ezra Merkin* | *Attorneys for Ralph C. Dawson, as* |
| *and Gabriel Capital Corporation* | *Receiver for Defendant Ascot Partners,* |
| | *L.P., and Ascot Fund Ltd.* |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ........................................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 4

    **I.**    **Weingarten's Methodology Is Reliable And Was Accepted By The Trustee's Own Expert** ................................................................................... 5

    **II.**    **Weingarten's Testimony Was Based On Facts And Data Sufficient To Determine Whether Defendants' Due Diligence Was Reasonable During The Relevant Period** ............................................................................ 6

    **III.**    **Weingarten's Testimony That Merkin's Due Diligence Was Well Within Industry Standards Is Relevant To The Second Prong Of The Willful Blindness Test** ................................................................................ 8

**CONCLUSION** ......................................................................................................................... 10


# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002)..................................................................................4, 5, 6

*Boykin v. W. Exp., Inc.*,
 No. 12-cv-7428 (NSR)(JCM), 2015 WL 539423 (S.D.N.Y. Feb. 6, 2015) ..............6

*EEOC v. Bloomberg L.P.*,
 No. 07 Civ. 8383 (LAP), 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010)..................6

*Kumho Tire, Ltd. v. Carmichael*,
 526 U.S. 137 (1999).................................................................................................5

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*,
 No. 98 Civ. 6907, 2001 WL 863552 (S.D.N.Y. July 30, 2001) ..............................5

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................4, 5

**Preliminary Statement**

Defendants J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund" and, collectively with Merkin, GCC, and Ascot Partners, "Defendants") respectfully submit this memorandum of law in opposition to the motion *in limine* of Plaintiff Irving H. Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), to exclude the opinions and testimony of Jeffrey M. Weingarten.

The Trustee's attacks on Weingarten's credentials and credibility--aside from being questions for the Court as factfinder--are frivolous. And the attack on his methodology is no better, particularly in light of the lengths to which the Trustee's expert went to say that he, too, was applying Weingarten's methodology.

**Background**

Weingarten has studied and worked in finance, investment research, fund management, and investing for more than forty years. Expert Report of Jeffrey M. Weingarten dated March 19, 2015 at 1, attached as Exhibit A to the Declaration of Mariel R. Bronen, dated May 10, 2017 ("Decl."). He graduated with honors from the Wharton School of the University of Pennsylvania with a B.S. in Economics in 1970. *Id*. at Ex. A. He then worked as a securities analyst for seven years before joining Goldman Sachs in 1977. *Id*. Weingarten became a Partner at Goldman Sachs in 1990, and became the CEO and CIO of Goldman Sachs Asset Management International in 1991. *Id*. After retiring from Goldman Sachs in 1998, Weingarten founded and became Managing Director of Buttonwood Capital Partners ("Buttonwood"), a long-short fund, focused on European equities, which outperformed the European Index by almost three times, and with much less volatility, for nearly ten years. *Id*. After retiring from Buttonwood, Weingarten

became a consultant, then Chairman, and, from 2011 to 2013, interim CEO of Grosvenor Fund Management, a £3.6 billion real estate fund business based in London and responsible for management of the Duke of Westminster's property interests. *Id*. at 2.

Throughout his lengthy and impressive career, Weingarten performed due diligence on many companies and investment managers, as well as was the subject of due diligence performed by sophisticated investors on him and the funds he managed. *Id*. at 1-3. Through his experience, including forty years analyzing investments and more than twenty years as a fund manager, Weingarten obtained extensive knowledge and expertise with respect to industry due diligence standards and practices. *Id*.

Based on this experience, Weingarten determined that due diligence on an investment involves the evaluation of five characteristics:

> **Philosophy**, what is the manager trying to achieve in his strategy; **Process**, how does the manager go about the strategy; **Procedures**, how is the process executed; **People**, who is the principal for executing the investment strategy and what is his background and reputation; and finally **Performance**, what have been the investment returns and are those returns consistent with the strategy.

*Id*. at 3 (emphasis in original). This methodology, sometimes referred to as the Five Ps, was approved by the Trustee's own purported due diligence expert, Steve Pomerantz. Deposition transcript of Steve Pomerantz dated July 8, 2015 (Decl. Ex. B) at 39:17-23. ("Q: Would you agree that due diligence is a flexible process? A: I guess I don't -- there are aspects -- I don't know what you mean by the process. I would like to think that the process is objective and the process is well defined by what Weingarten and I have said."); *Id.* at 88:4-11 ("Q: So, now let me make sure I understand. If I understand correctly, what you are saying is that the industry standard was the framework, the five P's; is that right? A: Yes. Q: In your opinion? A: Yes."); *Id.* at 37:9-12 ("Q: When you say "what we have described in the reports," who do you mean by

2

'we'? A: Mr. Weingarten and myself."). In his rebuttal report, Pomerantz confirms that he "follow(s) the same general framework" as Weingarten. Rebuttal Expert Report of Steve Pomerantz dated May 15, 2015 (Decl. Ex. C) at ¶¶6, 7, 18, 36, 43, 46.

Weingarten appropriately applied the Five Ps methodology to determine whether the due diligence performed by the Defendants on BLMIS was consistent with industry standards. To perform this analysis, Weingarten had access to all of the data provided by Defendants, as well as the pleadings and deposition testimony in this action, and reviewed those materials he felt were relevant to whether Defendants' due diligence was reasonable during the period Ascot had a managed account at BLMIS, approximately1992 through December 2008 (the "Relevant Period"). These materials included notes, emails, audio files, articles, reports, governing documents, BLMIS trade confirmations and monthly statements, and other information that was available to, or in the possession of, the Defendants during the Relevant Period. Decl. Ex. A at Ex. B. Weingarten also reviewed deposition testimony regarding the Defendants' knowledge and behavior during the Relevant Period. *Id.*

Weingarten reached various conclusions based on his review of these materials, including:

- "In knowing what he knew about Mr. Madoff, Mr. Merkin had every reason to believe that he was highly reputable, highly regarded and had direct and relevant experience in managing money in precisely the manner in which he intended to do;"

- "Consistent with good due diligence practice, on several occasions, Mr. Merkin reviewed both Process and Procedures with Madoff;"

- "Although uncommon, in my experience, [BLMIS'] returns were not implausible. Over the course of my career, I have seen many reports comparing fund managers and observed many fund managers' results where the returns were high and volatility was proportionately low;" and

3

- "Based on [Madoff's] redemption history, there would have been no reason to doubt that the performance as depicted was real or that the funds that were invested were actually there."

Decl. Ex. A at 4-5.  Weingarten ultimately concluded that the due diligence performed by Defendants on BLMIS met or exceeded industry standards:

> In my opinion, the Merkin Defendants performed more than adequate due diligence on Mr. Madoff and his organization. They adequately understood the investment Philosophy; they understood and carefully examined the Process; had transparent knowledge of the Procedures; and knew Mr. Madoff both personally and by reputation. The Performance, both in terms of the results and in terms of realizing the cash from those results were entirely consistent. Moreover, this due diligence was not a one off event but was continued through the life of the Funds' investments.

Decl. Ex. A at 5.

## **Argument**

Federal Rule of Evidence 702 allows expert testimony when the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods." *Id*.

Weingarten's testimony regarding the adequacy of the Defendants' due diligence on BLMIS is admissible under Federal Rule of Evidence 702 because (i) it is based on four decades of experience in investment funds and a reliable methodology accepted by the Trustee's own expert; (ii) it is based on a review and analysis of materials sufficient to evaluate the Defendants actions during the Relevant Period; and (iii) it will assist the Court in the assessing the key issue at trial--whether the Defendants were willfully blind to the Madoff fraud.

4

**I.    Weingarten's Methodology Is Reliable And Was Accepted By The Trustee's Own Expert**

In determining the admissibility of expert evidence, this Court has broad discretion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). It is a flexible inquiry that focuses on "the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the [ ] court's belief as to the correctness of those conclusions." *Id.* at 266. This inquiry will depend on "the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho Tire, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotations omitted). According to the Advisory Committee Notes, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702—2000 Amendments; *see also Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907, 2001 WL 863552, at *3 n. 1 (S.D.N.Y. July 30, 2001) ("[E]xperience alone may provide a sufficient foundation for expert testimony.").

Weingarten's more than forty years of experience in finance, investment research, fund management and investing, during which he obtained extensive knowledge and expertise with respect to industry due diligence standards and practices, qualify him to opine on the adequacy of the Defendants' due diligence on BLMIS.

Based on his experience, Weingarten determined that adequate due diligence of an investment manager involves the evaluation of the Five Ps: Process, People, Performance, Philosophy, and Procedures. Decl. Ex. A at 3. The reliability and appropriateness of Weingarten's methodology was acknowledged by the Trustee's own expert, and he even

5

attempted to apply a similar methodology in his reports. Decl. Ex. B at 39:17-23; 88:4-11; 37:9-12; Decl. Ex. C at ¶¶6, 7, 18, 36, 43, 46.

Weingarten applied this framework and determined that Defendants had adequately assessed each of the Five Ps with respect to BLMIS during the Relevant Period. Decl. Ex. A at 2. He described his reasoning with respect to each characteristic in his report in a manner that can be questioned on cross examination--indeed he was deposed at length by the Trustee--and evaluated by the Court. *Id*. at 3-5. The fact that Weingarten reached a different conclusion than Pomerantz is not relevant to the testimony's admissibility. *Amorgianos*, 303 F.3d at 266.

## II. Weingarten's Testimony Was Based On Facts And Data Sufficient To Determine Whether Defendants' Due Diligence Was Reasonable During The Relevant Period

The Trustee argues that Weingarten should have examined a greater proportion of "the millions of pages of documents produced in this action," and additional deposition transcripts. Pl. Br. at 12-13. The irony of that argument cannot be overstated; the Trustee's own expert, Pomerantz, admitted that he did not review the many thousands of pages listed on his report, for example, he estimated that he looked at ***ten*** out of approximately 30,000 trade confirmations. Decl. Ex. B at 211:6-17; 213:12-214:2. And in any event, it would be improper to exclude Weingarten's testimony on these grounds. As the Trustee acknowledges (Pl. Br. at 13), "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Boykin v. W. Exp., Inc.*, No. 12-cv-7428 (NSR)(JCM), 2015 WL 539423, at *6 (S.D.N.Y. Feb. 6, 2015).

Moreover, the facts and data Weingarten examined were more than sufficient to support his conclusions. Weingarten appropriately examined the materials that he determined were relevant to his assessment of the Defendants' due diligence during the Relevant Period. Contrary

6

to the Trustee's arguments, these materials included notes, emails, audio files, articles, reports, governing documents, BLMIS trade confirmations and monthly statements, and other information that was available to, or in the possession of, the Defendants during the Relevant Period. These materials were not "narrowly selected." Pl. Br. at 13 (citing *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010)). Rather, they are representative of the Defendants' due diligence efforts and the information available during the Relevant Period.

The Trustee argues that Weingarten's testimony is inadmissible in part because he did not perform adequate quantitative analysis of BLMIS's trades or returns. Pl. Br. at 1-2, 13-16. But Weingarten explained that the type of quantitative analysis the Trustee demands was not common in the industry during the Relevant Period. Rebuttal Expert Report of Jeffrey M. Weingarten dated May 14, 2015 (Decl. Ex. D) at 2. In fact, this type of quantitative due diligence has become prevalent only in the wake of the collapse of Lehman Brothers and Madoff's confession. Decl. Ex. A at 3. Pomerantz's testimony corroborates this. Decl. Ex. B at 184:4-13 (admitting that the 1997, 2002, and 2004 AIMA questionnaires, cited by him as evidence of industry practices, "don't identify specific quantitative analyses.").

Indeed, contrary to the Trustee's litigation position here, Pomerantz admitted that he has never performed the type of quantitative due diligence that the Trustee now argues Weingarten should have performed. Notably, to this day, Pomerantz has *never* reviewed trade confirmations when performing due diligence, nor has he ever compared transaction prices against the daily high-low range. Decl. Ex. B at 96:3-6, 100:4-13; 101:13-20. Hence, the Trustee's argument to exclude Weingarten's testimony fails on his own expert witness's testimony.

7

**III.  Weingarten's Testimony That Merkin's Due Diligence Was Well Within Industry Standards Is Relevant To The Second Prong Of The Willful Blindness Test**

The Trustee's sole remaining claim for monetary damages against Ascot Partners is to avoid and recover alleged actual fraudulent conveyances under Section 548(a)(1)(A) of the Bankruptcy Code.  The Trustee's success on that claim depends on whether the alleged fraudulent transfers were received in good faith; in this case, that means whether Defendants made the withdrawals from Ascot Partners' BLMIS account "without their having willfully blinded themselves to Madoff's scheme."  Trial Order at 1, *Picard v. Katz*, 11 Civ. 3605 (JSR) (S.D.N.Y. Mar. 14, 2012) ECF No. 177 (Decl. Ex. E). As the Court explained, to establish "willful blindness" the Trustee must prove first, that Defendants "subjectively believe[d] that there is a *high probability* that a fact exists" and second, that the Defendants "t[ook] deliberate actions to avoid learning of that fact." *Picard v. Merkin*, 563 B.R. 737, 743 (Bankr. S.D.N.Y. 2017) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011); *see* Transcript, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, at 3:18-20 (Oct. 12, 2012) (Rakoff, J.), ECF No. 401 ("Essentially, with a very slight massaging, the [standard is a] test set forth in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070,  a 2011 decision of the Supreme Court.") (Decl. Ex. F).

Weingarten does not pretend to be an expert, and Defendants do not offer him as one, on the first prong of the willful blindness test--whether Merkin subjectively believed that there was a high probability of fraud at BLMIS. Defendants are confident that when the Court hears all of the evidence, including Merkin's testimony, it will conclude that Merkin had no inkling that there was a Ponzi scheme, much less a subjective belief of a high probability of fraud, and will therefore dismiss the Trustee's claims. But should the Court reach the second prong, Weingarten's testimony concluding that Merkin's due diligence was well within industry

8

standards is admissible and highly relevant to refute the Trustee's contention that Merkin took deliberate actions to avoid learning that BLMIS was a Ponzi scheme. It is also relevant to contradict Pomerantz's erroneous contentions regarding the due diligence standard during the Relevant Period, should the Court even permit such testimony in light of the unreliable bases of Pomerantz's opinions on due diligence.

Weingarten's testimony goes beyond merely constructing a factual narrative. He provides an investment fund industry perspective as to whether Defendants had adequate knowledge and took appropriate actions to become comfortable with their investment in BLMIS. For example, he opines that:

- "In knowing what he knew about Mr. Madoff, Mr. Merkin had every reason to believe that he was highly reputable, highly regarded and had direct and relevant experience in managing money in precisely the manner in which he intended to do;"

- "Consistent with good due diligence practice, on several occasions, Mr. Merkin reviewed both Process and Procedures with Madoff;"

- "Although uncommon, in my experience, [BLMIS'] returns were not implausible. Over the course of my career, I have seen many reports comparing fund managers and observed many fund managers' results where the returns were high and volatility was proportionately low;" and

- "Based on [Madoff's] redemption history, there would have been no reason to doubt that the performance as depicted was real or that the funds that were invested were actually there."

Decl. Ex. A. These insights and opinions refute any assertion that Defendants took deliberate actions to avoid discovering Madoff's fraud.

Thus, Weingarten's testimony is admissible under Federal Rule of Evidence 702 because it is reliable and will assist the Court in assessing whether the Defendants were willfully blind to the Madoff fraud.

9

**Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court deny the Trustee's Motion *in limine* to exclude the opinions and testimony of Jeffrey M. Weingarten.

Dated: New York, New York
May 10, 2017

DECHERT LLP

By: */s/ Neil A. Steiner*
Andrew J. Levander
Neil A. Steiner
Mariel R. Bronen
Daphne T. Ha
1095 Avenue of the Americas
New York, New York 10036
andrew.levander@dechert.com
neil.steiner@dechert.com
(212) 698-3500

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP

By: /s/ *Judith A. Archer*
Judith A. Archer
Sarah O'Connell
David B. Schwartz
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*