UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――― X
                                              :
In re:                                        :
                                              :  SIPA LIQUIDATION
                                              :
BERNARD L. MADOFF INVESTMENT                  :
SECURITIES LLC,                               :  No. 08-01789 (SMB)
                                              :
            Debtor.                           :
                                              :
―――――――――――――――――――――――――― X
                                              :
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC,:
                                              :
                                              :
            Plaintiff,                        :  Adv. Proc. No. 09-01182 (SMB)
                                              :
      v.                                      :
                                              :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,        :
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,        :
ASCOT FUND LTD., GABRIEL CAPITAL              :
CORPORATION,                                  :
                                              :
            Defendants.                       :
―――――――――――――――――――――――――― X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S
MOTION *IN LIMINE* NUMBER 2 TO LIMIT TESTIMONY OF J. EZRA MERKIN**

| | |
|---|---|
| DECHERT LLP | NORTON ROSE FULBRIGHT US LLP |
| 1095 Avenue of the Americas | 1301 Avenue of the Americas |
| New York, New York 10036 | New York, NY 10019-6022 |
| (212) 698-3500 | (212) 318-3000 |
| *Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation* | *Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.* |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 6

    I.    Merkin's Testimony Is Highly Probative As To The Key Issue Of Willful Blindness ....................................................................................................... 6

    II.    Merkin's Testimony Is Based On His Personal Knowledge and Is Corroborated by Testimonial and Contemporaneous Documentary Evidence ........................................................................................................ 8

        1.    Merkin Has Personal Knowledge of The Matters to Which He Testifies ........................................................................................................ 9

        2.    Merkin's Testimony Is Supported By Other Testimonial and Contemporaneous Documentary Evidence .............................................. 11

    III.    Merkin's Testimony Is Not Hearsay .................................................................. 15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................................................11

*DeNigris v. N.Y. City Health & Hosps. Corp.*,
  552 F. App'x 3 (2d Cir. 2013) ...................................................................................15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ....................................................................................................7

*Hart v. RCI Hosp. Holdings, Inc.*,
  90 F. Supp. 3d 250 (S.D.N.Y. 2015) ..........................................................................6

*Picard v. Merkin*,
  563 B.R. 737 (Bankr. S.D.N.Y. 2017) .....................................................................6, 7

*Ross v. Am. Express Co.*,
  35 F. Supp. 3d 407 (S.D.N.Y. 2014) ........................................................................10

*S.E.C. v. Singer*,
  786 F. Supp. 1158 (S.D.N.Y. 1992) .................................................................. *passim*

*TiVo Research & Analytics, Inc. v. TNS Media Research LLC*, No. 11-cv-4039,
  2017 WL 213804, at *7-8 (S.D.N.Y. Jan. 18, 2017) ................................................10

*United States v. Al-Moayad*,
  545 F.3d 139 (2d Cir. 2008) .......................................................................................6

*United States v. Dupree*,
  706 F.3d 131 (2d Cir. 2013) .....................................................................................16

*United States v. Evans*,
  484 F.2d 1178 (2d Cir. 1973) .....................................................................................8

*United States v. Fofanah*,
  765 F.3d 141 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1449 (2015) ..........................7

*United States v. Liounis*,
  639 F. App'x 731 (2d Cir.), *cert. denied*, 137 S. Ct. 528 (2016) ...............................8

*United States v. Schultz*,
  333 F.3d 393 (2d Cir. 2003) ................................................................................11, 15

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012) ..........................................................................................8

**Other Authorities**

Fed. R. Evid. 401 ...............................................................................................................1, 6

Fed. R. Evid. 402 ...............................................................................................................1, 6

Fed. R. Evid. 602 ...............................................................................................................8, 9

Fed. R. Evid. 701 ...............................................................................................................8, 9

Fed. R. Evid. 801 ..................................................................................................................15

**Preliminary Statement**

Defendants J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners") and Ascot Fund Limited ("Ascot Fund" and, collectively with Merkin, GCC, and Ascot Partners, "Defendants"), respectfully submit this memorandum of law in opposition to the motion *in limine* of Plaintiff Irving H. Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), to limit Merkin's testimony.

Merkin's testimony is essential to the Trustee's sole remaining claim for monetary damages in this case, which depends on proof that Defendants were willfully blind to Madoff's fraud. Aware that Merkin's testimony constitutes competent proof directly contrary to the Trustee's far-fetched claim of willful blindness, the Trustee seeks to preclude all of Merkin's testimony about his conversations with others about BLMIS and Madoff, as well as Merkin's personal knowledge, beliefs, and state of mind derived from those conversations. Neither logic nor legal authority supports such a broad preclusion of relevant testimony and admissible evidence.

Rather, the rules of evidence require the admission of relevant evidence, and Merkin's testimony is indisputably probative on the question of willful blindness. *See* Fed. R. Evid. 401 & 402. Indeed, the Trustee's claim that Merkin's testimony is not probative and will waste the Court's time is belied by this Court's ruling on summary judgment that Merkin's state of awareness and actions will be issues at trial that go to the question of Defendants' willful blindness. It is also contradicted by the Trustee's admission that Merkin's state of mind is "the overarching issue in this case." Pl. Br. at 1; *see infra* Point I.

There is likewise no merit to the Trustee's assertions that Merkin's testimony lacks foundation, lacks personal knowledge, is speculative or constitutes improper lay opinion testimony. Here, too, the law is clearly to the contrary, and provides that (1) personal knowledge includes what a witness perceives from conversations and can be proven by a witness's own testimony, and (2) lay witnesses can testify about third parties' mental states as long as such testimony is derived from personal interactions with those third parties.

The Trustee's argument boils down to an assertion that Merkin's testimony is unreliable because he cannot provide specific details of conversations and meetings with dozens of people over the past 25 years, such as the date of those conversations or whether the investors with whom Merkin conversed independently conducted due diligence on Madoff. Such facts bear no relationship to the relevance and admissibility of Merkin's testimony, and at most pose questions for cross-examination. In any event, Merkin's testimony shows that he recalls numerous conversations with Madoff and with other Madoff investors, and testified as to numerous specific details that the Trustee deliberately omits from his motion. Merkin's testimony as to his conversations with third parties about Madoff's reputation is also supported by contemporaneous documentary evidence. *See infra* Point II.

Finally, Merkin's testimony about his conversations with other investors or potential investors is not hearsay because it is not offered to prove the truth of what those investors said about their impressions of Madoff, why they invested with BLMIS, or any other topic. Rather, Merkin's testimony proves the effect of those statements on Merkin—that he did not, and had no reason to, believe that BLMIS was a fraud. *See infra* Point III.

**Background**

The evidence adduced through discovery shows that, far from being willfully blind to Madoff's fraud, Defendants conducted extensive due diligence on Madoff. Prior to December 11, 2008, Madoff was a legend on Wall Street. He served as the chairman of NASDAQ and a committee head for the Security Industry Association, regularly met industry leaders at the SEC and testified before Congress about securities and financial issues.[1] Madoff regularly conducted business with sophisticated market participants including Charles Schwab & Co. and Fidelity Brokerage Services, and broke the NYSE's monopoly on Big Board trading.[2] BLMIS was ranked as one of the top three market makers in NASDAQ stocks, reputed as an active market maker in European and Asian equity markets, and was a pioneer in over-the-counter trading in NYSE-listed stocks.[3]

Prior to Defendants' investments with BLMIS, Merkin was aware of Madoff's reputation; aware of the regulatory structure governing Madoff's operations; knew that the SEC and other regulators regularly reviewed Madoff's business; and had several meetings with Madoff himself as well as with several of Madoff's investors concerning Madoff's reputation, trading strategy and risks.[4] These investors included Leon Meyers (at the time the manager of the Scheuer family office), Sandra Manske (at the time a senior executive of the Tremont funds and later the founder of the Maxam funds), David Gottesman (the founder of First Manhattan Corporation and a director of Berkshire Hathaway), Gedale Horowitz (who at the time ran

---

[1]    Ex. 1 (Merkin Dep.) at 157:16-25, 213:7-12; Ex. 2 (Supp. Resps. To Trustee's 2d Set of Interrogatories dated Aug. 30, 2013 ("Supp. Resps.")), at 4-5. Citations to "Ex." refer to exhibits to the May 10, 2017 Declaration of Daphne T. Ha submitted concurrently herewith.

[2]    Ex. 3 (*Forbes* article dated January 6, 1992, at 48, and *Forbes* article dated July 10, 1989, at 66).

[3]    Ex. 4 at 1 (*MAR/Hedge* article dated May 2001).

3

Salomon Brothers' municipal bond department), Daniel Hoffert (a successful Wall Street investor), and Merkin's father (a successful businessperson and investor), all of whom spoke very highly of Mr. Madoff and his investment strategies.[5]  Merkin also had conversations with customers of BLMIS's market-making operations, and found that Madoff's customers had "very positive things to say" about Madoff.[6]

After a period of time during which Merkin gained additional comfort with Madoff and his trading strategies, Ascot Partners and Ascot Fund opened managed accounts with BLMIS and Merkin delegated trading authority over those accounts to Madoff.[7]  Merkin had meetings and telephone calls with Madoff approximately ten to fifteen times per year to discuss Madoff's trading strategy and execution.[8]

Merkin also arranged for many investors and potential investors in Ascot Partners and Ascot Fund to meet with Madoff so that they could conduct their own direct due diligence.[9]  For example, in 2003, Merkin arranged a meeting for himself, Madoff, and Gedale Horowitz—an Ascot investor and also the head of Salomon Brothers' Municipal Department and chairman of the Investment Committee of Yeshiva University.[10]  Merkin also arranged meetings with Madoff for Alec Hackel, a sophisticated investor involved in the commodities industry who had worked

---

[4]  Ex. 5 (Merkin Dep. dated Jan. 30, 2009 in *In the Matter of Madoff Charities Investigation* ("Jan. 30, 2009 Merkin Dep.")), at 9:5-10:14; 128:21-134:3; Ex. 1 (Merkin Dep.) at 157:16-158:22, 181:9-22, 188:20-189:13, 213:7-23; Ex. 2 (Supp. Resps.) at 3.

[5]  Ex. 2 (Supp. Resps.) at 2-3; Ex. 5 (Jan. 30, 2009 Merkin Dep.), at 9:5-10:14; 128:21-134:3; Ex. 1 (Merkin Dep.) at 147:11-16, 147:20-148:1, 149:18-21, 153:17-22, 154:11-156:9, 183:2-9, 255:25-256:20.

[6]  Ex. 1 (Merkin Dep.) at 174:3-17; Ex. 2 (Supp. Resps.) at 3.

[7]  Ex. 1 (Merkin Dep.) at 149:11-14, 152:3-153:22.

[8]  Ex. 1 (Merkin Dep.) at 115:12-15, 186:8-187:1, 212:8-213:6, 255:25-256:20, 428:18-431:13.

[9]  *See, e.g.*, Ex. 6 (Ehrenkranz Dep.) at 43:6-18; Ex. 1 (Merkin Dep.) at 183:2-20, 184:13-17, 306:23-307:6 ("[A]s part of what they were doing and part of what [Research Company A Principal] was doing, he asked for a visit and we set up a visit."); Ex. 7 (J. Ezra Merkin calendar); Ex. 8 (collection of various emails).

[10]  Ex. 9 (Feb. 9, 2003 email from Merkin to Naomi Ferro); Ex. 1 (Merkin Dep.) at 387:16-389:14.

4

at Philipp Brothers, and was on the board of Reichmuth & Co., a Swiss bank.[11] Other sophisticated investors for whom Merkin arranged and with whom Merkin participated in due diligence meetings with Madoff included Ludwig Bravmann (of Oppenheimer & Co. and Yeshiva University's Investment Committee) and Patrick Erne from Reichmuth & Co.[12] In addition, Merkin twice took representatives from Union Bancaire Privee ("UBP"), a sophisticated Swiss bank, to meet with Madoff as part of UBP's due diligence on Ascot.[13] One of these meetings was on November 25, 2008 and included Madoff, Merkin, GCC's chief financial officer Michael Autera, and a team of four people from UBP.[14] Following that meeting, UBP decided to continue their investment of hundreds of millions of dollars in Ascot.[15]

Merkin openly discussed his conversations with Madoff with others. For example, John Steffens, the founder of Spring Mountain Capital, testified that he and Merkin "discussed numerous times the conversations that [Merkin] had with Bernie Madoff in terms of looking at how Ascot was structured and whether Bernie was going to change some of his particular views and whether Ezra agreed with that or didn't agree with that."[16]

These meetings and conversations bear directly on Merkin's subjective belief as to Madoff's bona fides. There is no basis for the Trustee's efforts to exclude testimony about any of these conversations between Merkin and third parties about Madoff, including what the third parties told Merkin about their due diligence activities and opinions of Madoff and BLMIS.

---

[11] Ex. 2 (Supp. Resps.) at 5; Ex. 1 (Merkin Dep.) at 513:10-514:12; Ex. 10 (Reichmuth Dep.), at 85:19-86:1 (erroneously referring to Mr. Hackel as "Alec Hucken").

[12] Ex. 2 (Supp. Resps.) at 5; Ex. 11 (Oct. 3, 2007 email from Erne to Merkin); Ex. 1 (Merkin Dep.) at 514:6-515:9, 516:16-517:22.

[13] Ex. 12 (Autera Dep.) at 164:20-170:24; Ex. 13 (Merkin Dep. dated July 1, 2010), at 20:9-18.

[14] Ex. 12 (Autera Dep.) at 164:20-170:24.

[15] *Id*.

[16] Ex. 14 (Steffens Dep.) at 40:14-41:9, 80:12-21 ("Ezra related some of those meetings [with Madoff] or the results of some of those meetings to me").

5

**Argument**

All relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This "standard of relevance established by the Federal Rules of Evidence is not high." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985)); *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008) (noting "the very low standard for relevance").

**I.    Merkin's Testimony Is Highly Probative As To The Key Issue Of Willful Blindness**

This Court has already found that there are triable issues of fact involving the exact evidence that the Trustee now seeks to preclude. Specifically, in ruling on Defendants' motion for summary judgment, the Court noted that the Trustee will need to "demonstrate at trial that Merkin willfully blinded himself to the fact that Madoff was not engaged in the actual trading of securities." *Picard v. Merkin*, 563 B.R. 737, 743 (Bankr. S.D.N.Y. 2017); *see* Pl. Br. at 1 (acknowledging that the trial "will focus on whether Defendants were willfully blind to facts suggesting a high probability of fraud at BLMIS").

At trial, Defendants will present facts about Madoff's reputation in the industry and the number of sophisticated investors who invested with BLMIS as part of the evidence that Merkin did not, and had no reason to, suspect Madoff's fraud. *See Picard*, 563 B.R. at 743-44. The basis for these facts includes all of the testimony (by Merkin and others) and documentary evidence described in the Background section, *supra*. The Trustee's motion should be rejected because this Court's decision confirms the importance of Merkin's state of mind and actions to the trial.

6

As this Court explained, to establish "willful blindness" the Trustee must prove that Defendants (i) "'subjectively believe[d] that there is a high probability that a fact exists'" and (ii) took "'deliberate actions to avoid learning of that fact.'" *Id.* at 743 (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). "Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech*, 563 U.S. at 769. Notably, willful blindness exists "only where it can almost be said that the defendant actually knew," and therefore requires more than a showing of "merely a known risk" or "deliberate indifference" to the risk. *Id.* at 770 (internal quotation marks omitted); *see United States v. Fofanah*, 765 F.3d 141, 151 n.2 (2d Cir. 2014) (noting that the *Global-Tech* inquiry asks whether defendants "deliberately shield[ed] themselves from clear evidence of critical facts that are strongly suggested by the circumstances"), *cert. denied*, 135 S. Ct. 1449 (2015).

Thus, the willful blindness standard involves questions about mental state and intent, including Merkin's understanding of the beliefs and statements of Madoff and investors during the relevant time period. Indeed, the Court ruled on summary judgment that "Merkin's state of awareness and what he did present disputed issues of fact." *Picard*, 563 B.R. at 751; *see id.* at 743-44 (citing much of the same testimony at issue in the Trustee's motion *in limine*). Applying FRE 402's standard of relevance, Merkin's testimony and evidence about the knowledge he accumulated regarding Madoff and BLMIS over time—including through conversations with other BLMIS investors and potential investors, and contemporaneous documents—plainly makes it more likely that Defendants did not believe there was a high probability that Madoff was engaged in fraud and did not blind themselves to avoid learning of any fraud. Accordingly, far from wasting the Court's time, *see* Pl. Br. at 13, the testimony is highly relevant to Merkin's

7

subjective beliefs and is necessary to evaluate the key willful blindness issue at trial. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 n.10 (2d Cir. 2012) (noting that the Second Circuit "counsels in favor of explicit fact-finding on the issue of willful blindness").

## II. Merkin's Testimony Is Based On His Personal Knowledge and Is Corroborated by Testimonial and Contemporaneous Documentary Evidence

Recognizing the importance of Merkin's testimony, the Trustee seeks to preclude it by characterizing it as inadmissible "opinion" testimony that lacks foundation or as to which Merkin lacks personal knowledge. There is no merit to any of the Trustee's arguments.

Rule 602 requires that a witness have personal knowledge of the matters to which he is testifying. *See* Fed. R. Evid. 602. "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." Fed. R. Evid. 602 advisory committee's note to 1972 Proposed Rules (citing 2 Wigmore § 650); *United States v. Evans*, 484 F.2d 1178, 1181 (2d Cir. 1973) ("the result of the witness' observation need not be positive or absolute certainty . . . ; it suffices if he had an opportunity of personal observation and did get some impressions from this observation"). "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

Rule 701 allows a lay witness to provide opinion testimony, including of a third party's state of mind, as long as the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *United States v. Liounis*, 639 F. App'x 731, 736 (2d Cir.) ("[T]here is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others with whom they deal directly." (internal quotation marks omitted)), *cert. denied*, 137 S. Ct. 528 (2016); *id.* (stating that the Second Circuit has previously held that "to [the] extent

8

witness offered opinion about what he understood defendant to mean, he was indirectly offering opinion about what defendant knew, which evidence in itself is not impermissible" (internal quotation marks omitted)).

The law is thus clear that Merkin's testimony is admissible because he had personal knowledge of the conversations about which he testifies, and the testimony will help the Court to determine whether Defendants were willfully blind to Madoff's fraud. Fed. R. Evid. 602 & 701. While the law does not require any corroboration of Merkin's testimony for it to be admissible, Merkin's testimony is in fact corroborated by others' testimony and by contemporaneous documents.

1.     Merkin Has Personal Knowledge of The Matters to Which He Testifies

The Trustee claims in the most conclusory (and unfounded) fashion that Merkin lacks personal knowledge, but utterly fails to show that Merkin's testimony is not based on his personal perception and impressions derived from those perceptions. Instead, the Trustee resorts to claiming that Merkin's testimony should be excluded because Merkin's memory of conversations and meetings that occurred starting in the late 1980s or early 1990s is imperfect. But the law is clear that "[t]estimony can be admissible under Rule 602 even if the witness has only a broad general recollection of the subject matter," and "a witness' conclusion based on personal observations over time may constitute personal knowledge despite the witness' inability to recall the specific incidents upon which he based his conclusions." *S.E.C. v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992). That is patently true here, especially because Merkin's testimony is corroborated by numerous contemporaneous documents as well as the testimony of other witnesses.

9

In *Singer*, the defendant sought to limit a witness's "vague and inconclusive" testimony, the "gist" of which was "speculation about a conversation he [did] not recall." *Id.* at 1166. The Court rejected this argument, finding that despite the witness's admission that he could not "specifically remember the conversation or its location, evidence need not be conclusive in order to be relevant and admissible." *Id.*; *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 452 (S.D.N.Y. 2014) ("The witnesses . . . were deposed five to nine years after the meetings took place. Their failures to specifically recall certain meetings are not probative of a conspiracy; rather, they are understandable lapses in human memory."), *aff'd*, *Ross v. Citigroup, Inc.*, 630 F. App'x 79 (2d Cir. 2015).

The Trustee cites only one case in support of his argument that the "failure to recall details of conversations constitutes lack of personal knowledge." Pl. Br. at 8 (citing *TiVo Research & Analytics, Inc. v. TNS Media Research LLC*, No. 11-cv-4039 (KBF), 2017 WL 213804, at *7-8 (S.D.N.Y. Jan. 18, 2017)). In that case, a witness was proffered to testify about certain "damages computations or [a] causal element" of the damages theory at issue, but the witness "admitted [he] was not personally involved with developing that valuation," was not aware of documents that discussed the valuation, and did not have discussions with investors or gain firsthand knowledge of any documents about the causal element. *Id.* at *6, 8. Here, by contrast, there is no question that Merkin had the conversations about which he testified. Merkin's personal involvement in those discussions is sufficient to establish his personal knowledge.

The law dictates against exclusion of Merkin's testimony merely because he cannot "expound upon" testimony or "recall the timing or nature of the discussions" to the level of specificity the Trustee has manufactured. Pl. Br. at 4. Nor does the Trustee explain why

10

Merkin's testimony is admissible only if Merkin can "confirm whether certain individuals held a BLMIS investment at the relevant time." *Id.* Indeed, the testimony that the Trustee quotes to show the purported lack of foundation reveals the absurdity of his argument. Among the Trustee's complaints are that Merkin could not recall: how many times he had certain conversations prior to 1990; whether Merkin "understood the nature" of others' investments in BLMIS prior to 1990; whether Messrs. Gottesman, Horowitz, or Hoffert themselves conducted due diligence on BLMIS; and the specific circumstances and details about meetings Merkin had with Madoff and other potential investors ten to twenty years ago. Pls. Br. at 4-8. The Trustee's attempt to erect a false hurdle to admissibility should be rejected outright.

The Trustee does not, and cannot, dispute that Merkin recalls numerous conversations over decades with Madoff and with investors regarding Madoff. It is hardly surprising that his recollections about the specifics of each conversation are not perfect. In any event, the law is well-settled that a witness's imperfect memory "may be a defect in credibility, but it is insufficient to bar the testimony altogether on grounds of relevance." *Singer*, 786 F. Supp. at 1166; *see Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) ("Nonconclusive evidence should still be admitted if it makes a proposition more probable than not; factors which make evidence less than conclusive affect only weight, not admissibility." (internal quotation marks omitted)).

2. Merkin's Testimony Is Supported By Other Testimonial and Contemporaneous Documentary Evidence

The Trustee omits that Merkin's testimony provided greater context regarding the nature, purpose, and content of his conversations about Madoff. First, the Trustee disingenuously claims

11

that Merkin could not recall whether his conversations with Dr. Henry Kaufman—the legendary long-time chief economist of Salomon Brothers who personally invested with Madoff—"were about due diligence on BLMIS or Madoff," Pl. Br. at 6, but Merkin's testimony set forth Merkin's relationship with Dr. Kaufman; discussed their involvement in the community; and explained that their conversations regarding investing with Madoff included discussing how to invest, different risks to be considered, and liquidity requirements. Ex. 1 (Merkin Dep.) at 402:24-405:2.

Second, the Trustee claims that Merkin's inability to "recall the time period within which he arranged a meeting" between Madoff and Christof Reichmuth constitutes reason to bar Merkin's testimony altogether. At best, the Trustee misleadingly selects the quotation presented to the Court. In fact, Merkin testified that the meeting occurred in the late 1990s or 2000. Merkin further explained that he did not recall attending the *specific* meeting at issue because he recalled attending multiple meetings "with various members of the Reichmuth staff," and testified about the "purposes of the meeting between Mr. Reichmuth and Mr. Madoff"—which provided a greater foundation and indication of Merkin's personal knowledge than a specific date of the meeting could have. *See* Ex. 1 (Merkin Dep.) at 514:14-515:23. The meeting is also corroborated by Reichmuth himself, who testified that, "at the end of the 90s," he met with Merkin, Madoff, and Alec Hackel at BLMIS. Ex. 10 at 85:19-86:1 (Reichmuth Dep.) (erroneously referring to Mr. Hackel as "Alec Hucken").

Third, the Trustee states that "Merkin could not recall whether he, in fact," "arrang[ed] a meeting between Mr. Igolnikov and Mr. Madoff in early 2004." Pl. Br. at 7 (internal quotation marks omitted). In fact, a March 13, 2004 email from Igolnikov to Merkin thanked Merkin for arranging the meeting: "I appreciate very much your effort in putting our meeting [with Bernie]

12

together. I feel fortunate having been able to develop friendship with you that was clearly the catalyst for setting up the meeting." Ex. 15.

Fourth, while Merkin could not recall specific details about his meeting with Messrs. Madoff and Horowitz, a February 9, 2003 email from Merkin to his assistant asked her to "[p]lease set up a date with Bernard Madoff for a visit from me and Gedale Horowitz," providing further documentary corroboration and detail about the timeframe and participants of the meeting. Ex. 9.

Fifth, both documentary and testimonial evidence provides additional details about the ███████████████████████████████████████████ Erne emailed Merkin on October 29, 2007 stating: "I very appreciated [*sic*] the open discussion with you, and the opportunity to meet with Bernie. For me, this was very helpful in getting a better understanding of Ariel and Ascot." Ex. 16; *see also* Ex. 11 (Merkin's October 3, 2007 email: "Please let Patrick know that he and I are booked for a visit with Mr. Madoff on the 19th at 1:00 PM."); Ex. 17 (Merkin's October 8, 2007 email re "Visit to Mr. Madoff": "Friday, Oct. 19th, at 1:00 PM, at 885 Third Ave., co. 53d Street, has been suggested as a date for a visit. We may be joined by one additional Ascot Fund shareholder."). ███████ discussion that occurred during that meeting, including that Madoff said that he: "uses index options only," "uses only 50 stocks for his strategy" but "gets very good correlation," at a maximum "would lose 75 basis points per time he gets into – into the market," "always buys one month out options," "has the best computer . . . systems on the street," is "very transparent," "ha[d] not raised new money in years," "[did] not use leverage," "discourage[d] feeders that use leverage," "[t]estified in front of the Congress committee in 1998 about long term capital management hedge fund about rubber band theory," "[d]id not disclose . . . assets under

13

management," and had decreased returns in the last few years because of "competition from fixed income strategists." ███████████████████████████████████ Madoff talked about the volume of the New York Stock Exchange, the volume of OTC options trades, and the strengths of BLMIS's strategy. *Id.* ("[t]he two most important things in the strategy is taking on positions and, number 2, right timing," including "stay[ing] the course").

Merkin's testimony about the state of mind of third parties is similarly corroborated by other testimonial evidence and contemporaneous documentary evidence. Specifically, Merkin's testimony that his father and Messrs. Gottesman and Horowitz "had a very high opinion of Bernie Madoff," who was "a legend on Wall Street" and in Congress, Pl. Br. at 9, is corroborated by testimonial and documentary evidence, including contemporaneous news articles about Madoff and BLMIS's accomplishments and records and testimony of other witnesses whom the Trustee intends to call at trial. *See supra* at 3-4 & nn. 1-6; *see also* Ex. 19 (Teicher Dep.) at 135:22-137:2 ("My impression was that Ezra's father knew Madoff and that Ezra's father thought well of Madoff.").

Indeed, numerous deponents in this case testified about Madoff's positive reputation in the securities industry prior to December 2008. *See, e.g.*, Ex. 20 (Orchard Dep.) at 55:12-56:1 (stating Madoff's reputation was "quite strong" because of "[t]he success he had . . . in his business," his position as "treasurer of Yeshiva University," "the awards that he had won," and "reading the newspaper"); Ex. 21 (Rosenkranz Dep.) at 39:6-40:6 (stating that Madoff had "been a known name in the financial world for at least a couple of decades," and was known to Rosenkranz as "a market maker who would establish an over-the-counter trading business that did over-the-counter trading in New York Stock Exchange listed stocks, and he was a pioneer in that strategy, or that approach to business"); Ex. 14 (Steffens Dep. Tr.) at 149:9-150:8 (stating

14

that Madoff was a committee head for the Security Industry Association and a chairman of NASDAQ, and "was certainly in that [securities] community well respected, well thought of"); Ex. 22 (Harrington Dep.) at 145:18-25 (stating that Madoff "was revered by the people that I worked with," and that she "had the privilege of working with what I would consider geniuses in our own industry"); Ex. 23 (Hess Dep.) at 91:25-92:5 ("[P]rior to the Ponzi scheme becoming public, I think [Madoff] had a good reputation.").

Accordingly, as to each conversation raised in the Trustee's motion, Merkin indisputably showed that he has, at a minimum, the "broad general recollection of the subject matter" that requires finding that his testimony has a proper foundation and is based on personal knowledge. *See Singer*, 786 F. Supp. at 1167; *Schultz*, 333 F.3d at 416. In addition, Merkin's testimony is corroborated by the testimony of other witnesses and by contemporaneous documents. The Trustee has not established, nor can he establish, any grounds on which Merkin's testimony should be excluded.

### III. Merkin's Testimony Is Not Hearsay

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Merkin's testimony about what others said about Madoff or their reasons for investing or staying invested in BLMIS is not hearsay because it is not offered to prove the truth of the matter asserted. Rather, that testimony will be offered to prove the effect of those statements on Merkin, including his decision to invest and stay invested with BLMIS, and his lack of belief that Madoff was operating a Ponzi scheme. Accordingly, the Trustee has failed to establish any grounds for excluding this testimony under the hearsay rules. *See DeNigris v. N.Y. City Health & Hosps. Corp.*, 552 F. App'x 3, 6 (2d Cir. 2013) ("Where

15

statements are offered to show their effect on a listener's state of mind, they are not hearsay.");

*United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay.").

### Conclusion

For the foregoing reasons, Defendants respectfully request that this Court deny the Trustee's Motion *in limine* number 2 to limit the testimony of J. Ezra Merkin.

Dated:  New York, New York
        May 10, 2017

                                        DECHERT LLP

                                        By:   */s/ Neil A. Steiner*
                                              Andrew J. Levander
                                              Neil A. Steiner
                                              Mariel R. Bronen
                                              Daphne T. Ha
                                        1095 Avenue of the Americas
                                        New York, New York 10036
                                        Tel.: (212) 698-3500
                                        andrew.levander@dechert.com
                                        neil.steiner@dechert.com

                                        *Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

                                        NORTON ROSE FULBRIGHT US LLP

                                        By: */s/ Judith A. Archer*
                                              Judith A. Archer
                                              Sarah O'Connell
                                              David B. Schwartz
                                        1301 Avenue of the Americas
                                        New York, NY 10019-6022
                                        Tel.: (212) 318-3000
                                        judith.archer@nortonrosefulbright.com
                                        sarah.oconnell@nortonrosefulbright.com
                                        david.schwartz@nortonrosefulbright.com

                                        *Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

16