UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                             Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PERTAINS TO THE FOLLOWING CASE:

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                            Plaintiff,
                -v-

J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,
ASCOT FUND LTD., GABRIEL CAPITAL
CORPORATION,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Adv. Proc. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Proc. No. 09-1182 (SMB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION *IN LIMINE* NUMBER 1 TO EXCLUDE ALL EVIDENCE AND TESTIMONY ON THE ACTIONS OR INACTIONS OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

                                            NORTON ROSE FULBRIGHT US LLP
                                            1301 Avenue of the Americans
                                            New York, New York 10019
                                            Tel.: (212) 318-3000
                                            *Attorneys for Ralph C. Dawson, as Receiver*
                                            *for Defendant Ascot Partners, L.P., and*
                                            *Ascot Fund Ltd.*

                                            DECHERT LLP
                                            1095 Avenue of the Americas
                                            New York, New York 10036
                                            Tel.: (212) 698-3500
                                            *Attorneys for Defendants J. Ezra Merkin*
                                            *and Gabriel Capital Corporation*

62276630.3

TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

ARGUMENT ................................................................................................................................. 5

    I.    EVIDENCE AND TESTIMONY REGARDING THE SEC'S ACTIONS IS NOT HEARSAY AND SHOULD BE ADMITTED ........................................................ 5

        A.  Evidence of the SEC's Actions or Inactions Is Admissible to Show Its Impact on Merkin's State of Mind .................................................................... 5

        B.  The OIG Report Is Admissible, Even if Offered for Its Truth, Pursuant to Rule 803(8) ............................................................................................................. 7

    II.   EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS ARE RELEVANT TO ALLEGATIONS OF WILLFUL BLINDNESS AND SHOULD BE ADMITTED ............................................................................................. 9

    III.  A PROPER FOUNDATION EXISTS FOR THE INTRODUCTION OF SEC-RELATED TESTIMONY AND EVIDENCE ........................................................... 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bernard L. Madoff Inv. Secs. LLC*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................................5

*DeNigris v. New York City Health and Hospitals Corp.*,
  552 Fed. App'x. 3 (2d Cir. 2013) .....................................................................................6, 9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
  No. 12 Civ. 7372(RWS), 2013 WL 5230818 (S.D.N.Y. Sept. 10, 2013) ..............................13

*Finn v. Barney*,
  471 F. App'x 30 (2d Cir. 2012) ..........................................................................................12

*Gentile v. County of Suffolk*,
  129 F.R.D. 435 (E.D.N.Y. 1990), *aff'd*, 926 F.2d 142 (2d Cir. 1991) ..........................7, 8, 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754, 131 S. Ct. 2060 (2011) ...................................................................................5

*Highland Cap. Mgmt. L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ................................................................................11

*In re MetLife Demutualization Litig.*,
  262 F.R.D. 217 (E.D.N.Y. 2009) ...........................................................................6, 7, 8, 9

*Option Resource Group v. Chambers Dev. Co., Inc.*,
  967 F. Supp. 846 (W.D. Pa. 1996) .......................................................................................8

*Parsons v. Honeywell, Inc.*,
  929 F.2d 901 (2d Cir. 1991) .............................................................................................8, 9

*SEC v. Pentagon Cap. Mgm't PLC*,
  722 F. Supp. 2d 440 (S.D.N.Y. 2010) ..................................................................................8

*Tuccio v. Papstein*,
  307 Fed. App'x. 545 (2d Cir. 2009) .....................................................................................6

*U.S. v. Cuti*,
  720 F.3d 453 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 402 (2014) ........................................11

*U.S. v. Detrich*,
  865 F.2d 17 (2d Cir. 1988) .............................................................................................5, 6

*U.S. v. Gluck*,
    831 F.3d 608 (5th Cir. 2016) ........................................................................................7

*U.S. v. Khan*,
    787 F.2d 28 (2d Cir. 1986) ...........................................................................................9

*Vinieris v. Byzantine Mar. Corp.*,
    731 F.2d 1061 (2d Cir. 1984) .....................................................................................10

**Rules and Statutes**

FED. R. EVID. 201 ..........................................................................................................12

FED. R. EVID. 201(b)(2) .................................................................................................12

FED. R. EVID. 401 ............................................................................................................9

FED. R. EVID. 402 ............................................................................................................9

FED. R. EVID. 403 .....................................................................................................10, 11

FED. R. EVID. 602 ..........................................................................................................11

FED. R. EVID 702 .............................................................................................................9

FED. R. EVID 703 .............................................................................................................9

FED. R. EVID. 801(c) ........................................................................................................6

FED. R. EVID. 801(d)(2) .................................................................................................11

FED. R. EVID. 803(8) ........................................................................................................7

FED. R. EVID. 803(8)(A)(iii) ............................................................................................7

FED. R. EVID. 803(8)(c) ...................................................................................................8

Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC") (collectively, "Merkin Defendants"), Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund") (Ascot Partners and Ascot Fund, together "Ascot" and collectively with the Merkin Defendants, "Defendants"), respectfully submit this Memorandum of Law in opposition to the Trustee's Motion *in Limine* Number 1 to Exclude All Evidence and Testimony on the Actions or Inactions of the United States Securities and Exchange Commission ("SEC").

## PRELIMINARY STATEMENT

Because of its devastating impact on his claims, the Trustee seeks to exclude important evidence about the SEC's investigations and reviews of Bernard L. Madoff Investment Securities ("BLMIS") by baldly claiming that: (i) evidence of conversations Merkin had with Madoff about the SEC is hearsay and the report issued by the Office of Investigations of the SEC should be excluded because it contains hearsay statements; (ii) evidence regarding the SEC's reviews of Madoff is irrelevant to whether Merkin was willfully blind; and (iii) Defendants cannot lay a proper foundation for the admission of this testimony. None of these makeweight arguments justifies the exclusion of this highly relevant evidence.

Conversations between Merkin and Madoff about periodic SEC reviews of BLMIS are admissible to show their impact on Merkin's state of mind – the central remaining issue in this action. Merkin testified that the fact that the SEC regularly reviewed BLMIS and gave it a clean bill of health was significant to him. He further testified that he reviewed an article discussing the SEC's investigation of a pooled investment vehicle that had been invested with Madoff that concluded that far from being a fraud, all investor funds – some $400 million in 1992 – were held by BLMIS, accounted for, and promptly returned, supporting his confidence in BLMIS.

Copies of these articles were maintained in Merkin's due diligence file. This testimony is relevant to Merkin's state of mind, which the Trustee concedes is of critical importance.

The Trustee also seeks to exclude the report entitled "Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme," issued by the Office of Investigations of the SEC (the "OIG Report") because it contains hearsay. The Trustee ignores the fact that courts in this circuit routinely admit official reports whose conclusions are based, in part, on hearsay statements, where, as here, those statements have been properly vetted by the officials preparing the report. The OIG Report should be admitted in its entirety.

Despite the relevance of the SEC's actions on Merkin's state of mind, the Trustee argues that somehow this evidence is irrelevant and should be excluded. This evidence goes precisely to what the Trustee concedes is the relevant inquiry into willful blindness: whether Merkin subjectively believed there was a high probability that Madoff was engaged in fraud (he did not) and if so whether he intentionally avoided learning those facts (he did not). Merkin's knowledge about the SEC's actions or inactions with respect to BLMIS and Madoff is unquestionably relevant to this inquiry and should be admitted.

Finally, the Trustee argues that despite the fact that Merkin had conversations with Madoff about the SEC's examinations, Defendants will somehow be unable to lay a proper foundation for the admission of this testimony. The Trustee contends that Defendants cannot establish a foundation unless Merkin had direct conversations with the SEC about its inspections, was provided by the SEC with evidence of its inspections, or was aware of its specific findings. This tortured attempt to impose a higher standard for admissibility is unsupported by case law and should be rejected. Indeed, the question before the Court is not the quality of the SEC's inspections, but what Merkin understood or was told by Madoff about those regulatory inquiries.

## FACTUAL BACKGROUND

The Trustee's motion seeks to exclude three categories of evidence (i) Merkin's testimony about conversations with Madoff regarding the SEC's examinations of Madoff and BLMIS; (ii) Merkin's testimony about the SEC's investigation into Avellino & Bienes; and (iii) the OIG Report. None of these claims has any merit.

**The SEC's Investigation of Madoff/BLMIS**

Merkin knew that BLMIS was a registered broker-dealer and later registered as an investment advisor, and therefore "was subject to periodic and surprise inspections by . . . the SEC." (Archer Decl. Ex. A at 5; *see also* Archer Decl. Ex. B at 123:2-124:18; 579:8-11) The fact that Madoff and his firm were "regularly inspected by the SEC and the SEC had never raised any significant issue about the firm's operations . . . gave Mr. Merkin additional comfort about Mr. Madoff's bona fides." (Archer Decl. Ex. A at 5) Merkin testified that the SEC's periodic inspections were "significant" to him:

> [Madoff] had either scheduled or surprise visits from the SEC with some regularity and some frequency, perhaps more on the regular than on the surprises. [Madoff] was very proud of his overall compliance record and just sort of a clean bill of health with occasional references to one or two smaller things, and it certainly meant a great deal to me that the SEC, with the power of subpoena, with the ability to spend days at the firm, which is how [Madoff] presented it, came away and said, you know, thank God for Bernie. And that was very significant to me.

(Archer Decl. Ex. B at 188:20-189:7)

**The SEC's Investigation of Avellino & Bienes**

At deposition, Merkin testified that certain events in the securities industry were part of his "monitoring due diligence" on Madoff and BLMIS. (Archer Decl. Ex. B at 212:6-217:21) This included, among other things, the unwinding by the SEC of an investment pool managed by an accounting firm called Avellino & Bienes. (*Id.* at 214:1-22) Merkin testified that it "was a

very important piece of information" that when the SEC unwound the pool and found that all or substantially all of the assets were invested at Madoff, the SEC determined "that every penny was properly accounted for." *Id.* He testified further as to the significance:

> It meant that the SEC, which had every reason to look especially careful [sic], especially carefully at a fund that had been put together that had clear legal issues, forcing the liquefaction of the fund and putting the fund out of business was basically saying we found the fund to be managed by Madoff and we were very, very happy to tell you that everything is there.

(*Id.*) Merkin also recalled an article regarding the unwinding of the fund and the SEC's investigation of the fund, calling the SEC's investigation "very important." (*Id.*; *see also* Archer Decl. Ex. A at 4)

**The OIG Report**

On August 31, 2009, the Office of Investigations of the U.S. Securities and Exchange Commission issued a 435-page report entitled "Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme."[1] The investigation and subsequent report was conducted by the Inspector General of the SEC and members of his staff, and the conclusions were based on reviews of e-mails and other documents from both the SEC and independent third-parties, as well as interviews with 122 individuals. (OIG Report at 3-20) The OIG report concluded, among other things, that investors "were reassured by the fact that the SEC had investigated and/or examined Madoff, or entities that did business with Madoff, and found no evidence of fraud." (OIG Report at 25) The OIG Report further concluded that "the fact that the SEC had conducted examinations and investigations and did not detect the fraud, lent credibility to Madoff's operations and had the effect of encouraging additional individuals and entities to invest with him." (*Id.*)

---

[1] The public version of the OIG Report is available at https://www.sec.gov/news/studies/2009/oig-509.pdf.

**ARGUMENT**

I. **EVIDENCE AND TESTIMONY REGARDING THE SEC'S ACTIONS IS NOT HEARSAY AND SHOULD BE ADMITTED**

"No statement is inherently hearsay. Whether or not a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it." *U.S. v. Detrich*, 865 F.2d 17, 20 (2d Cir. 1988). The Trustee seeks to exclude, as hearsay, testimony and other evidence about the SEC's actions or inactions, namely (i) statements allegedly contained in a newspaper article regarding the unwinding of the investment pool of Avellino & Bienes, (ii) Merkin's testimony of what Madoff told him about SEC examinations of BLMIS and (iii) statements contained in the OIG Report, without any consideration of the purpose for which the evidence may be admitted. (Trustee Br. at 8) The Trustee ignores the fact that this testimony and evidence should properly be admitted because it is offered to show Merkin's state of mind and the absence of willful blindness, the critical issue remaining in this case.

    A. **Evidence of the SEC's Actions or Inactions Is Admissible to Show Its Impact on Merkin's State of Mind**

The primary issue at trial is whether Merkin was willfully blind to the fraud perpetrated by Madoff and BLMIS. As the Court explained, to establish "willful blindness" the Trustee must prove that Defendants (i) "subjectively believe[d] that there is a *high probability* that a fact exists" and (ii) "t[ook] deliberate actions to avoid learning of that fact." *In re Bernard L. Madoff Inv. Secs. LLC*, 515 B.R. 117, 139 (Bankr. S.D.N.Y. 2014) (citing *Global-Tech Appliances, Inc. v. SEB S.A.,*, 563 U.S. 754, 768, 131 S. Ct. 2060, 2070 (2011)). Critical to this inquiry is Merkin's state of mind.

Evidence offered to show a defendant's state of mind, or the impact of a piece of evidence on a listener's state of mind, is not hearsay. *See* FED. R. EVID. 801(c) (evidence constitutes hearsay only if it is offered to prove the truth of the matter asserted therein); *see also*

*DeNigris v. New York City Health and Hospitals Corp.*, 552 Fed. App'x. 3, 6 (2d Cir. 2013) ("Where statements are offered to show their effect on a listener's state of mind, they are not hearsay.") (internal citations omitted); *In re MetLife Demutualization Litig.*, 262 F.R.D. 217, 236 (E.D.N.Y. 2009) ("Evidence that would otherwise satisfy the definition of hearsay, if not offered for the truth of the matters asserted, but instead to show defendants' state of mind, is not hearsay.") (internal citations omitted); *Tuccio v. Papstein*, 307 Fed. App'x. 545, 546 (2d Cir. 2009) (affirming denial of motion to strike statements in an affidavit offered to show information an officer had when he applied for an arrest warrant).

The Trustee seeks to exclude deposition testimony by Merkin regarding the impact of the SEC's periodic investigations and examinations into BLMIS on Merkin's state of mind, describing it as "the very definition of inadmissible hearsay." (Trustee Br. at 9-10) As the Second Circuit has recognized, however, testimony that goes to state of mind and is not offered for the truth of the matter asserted is not hearsay. *Detrich*, 865 F.2d at 20 (reversing and remanding for new trial for improper exclusion of evidence going to state of mind). Evidence offered to show the impact of the SEC's actions or inactions had on Merkin's state of mind it is not hearsay and should not be excluded. *See DeNigris*, 552 Fed. App'x. at 6.

The testimony highlighted by the Trustee goes directly to Merkin's state of mind. At deposition, Mr. Merkin testified that the scheduled or surprise visits of the SEC to BLMIS, each providing "sort of a clean bill of health with occasional reference to one or two smaller things" was "very significant" to him. (Archer Decl. Ex. B at 188:20-189:7) He testified further that "it certainly meant a great deal to [him] that the SEC with the power of subpoena, with the ability to spend days at the firm, which is how [Madoff] presented it, came away and said, you know, thank God for Bernie." (*Id.*) Merkin also testified that fact that the investment pool of Avellino

& Bienes was unwound by the SEC's regional administrator, which determined that all or very substantially all of the assets in the pool were managed by BLMIS, "with the very clear reassurance from the SEC that every penny was properly accounted for, was a very important piece of information." (*Id*. at 214:1-22) These statements demonstrate the impact that the SEC's reviews of BLMIS and apparent overall view of BLMIS had on Merkin's state of mind and are admissible for that purpose. *See In re MetLife Demutualization Litig.*, 262 F.R.D. at 236.

### B. The OIG Report Is Admissible, Even if Offered for Its Truth, Pursuant to Rule 803(8)

The OIG Report falls within the public records exception to hearsay under Fed. R. Evid. 803(8) – the Trustee concedes this point. *See* FED. R. EVID. 803(8)(A)(iii); Trustee Br. 10. He argues, however, that certain statements of third parties contained in the report constitute inadmissible hearsay, rendering the entire report inadmissible. (Trustee Br. at 10) This position is contrary to law within the Second Circuit. *See In re MetLife Demutualization*, 262 F.R.D. at 239 (admitting report of Superintendent of Insurance containing hearsay statements); *Gentile v. County of Suffolk*, 129 F.R.D. 435, 453 (E.D.N.Y. 1990) (admitting report by State Commission of Investigation over objection that findings were based on hearsay), *aff'd*, 926 F.2d 142 (2d Cir. 1991) (district court did not abuse discretion in admitting official report defendant claimed was based on hearsay).

Courts routinely admit into evidence reports and statements regarding SEC investigations pursuant to the hearsay exception for public records. *See, e.g., U.S. v. Gluck*, 831 F.3d 608, 614 (5th Cir. 2016) (reversing and reminding for new trial based on improper exclusion of SEC reports); *SEC v. Pentagon Cap. Mgm't PLC*, 722 F. Supp. 2d 440, 443 (S.D.N.Y. 2010) (holding testimony of SEC's director of enforcement before Senate subcommittee regarding investigation into allegedly illegal mutual fund practices admissible pursuant to hearsay exception for public

records and reports); *Option Resource Group v. Chambers Dev. Co., Inc.*, 967 F. Supp. 846, 851 (W.D. Pa. 1996) (holding that SEC's factual findings, including opinions and conclusions, admissible pursuant to Fed. R. Evid. 803(8)(c)). Such reports are admissible even if the conclusions within them are based, in part, on evidence that would otherwise be inadmissible hearsay. *In re MetLife Demutualization*, 262 F.R.D. at 239.

The Trustee relies on out of circuit authority and *Parsons v. Honeywell, Inc.*, for the proposition that hearsay statements within an official report are inadmissible. (Trustee Br. 10) In *Parsons*, however, the court considered whether statements contained in a police report – what an individual told the sheriff that a third party told that individual – were admissible. *Parsons*, 929 F.2d 901, 907 (2d Cir. 1991). Those statements appear to have been verbatim statements of this individual, without any further evaluation or consideration by the Sheriff. *Id*. The court held that the hearsay statements were not admissible under any exception to the hearsay rule. *Id*. at 908. In cases where the opinions and conclusions of the report are based on hearsay, however, and the hearsay has been "adequately evaluated and filtered" by the preparer of the report within their capacity, courts in the Second Circuit have reached a contrary result. *Gentile*, 129 F.R.D. at 453; *see also In re MetLife Demutualization*, 262 F.R.D. at 239. In *MetLife*, Judge Weinstein held that a report by the Superintendent of Insurance was admissible although it was based, in part, on hearsay. *Id.* The court held that "in light of the Superintendent's expertise and the fact that these are the types of documents that one would expect an expert administrator to rely upon, the court finds that the agency – and the Superintendent – is effectively qualified as an expert under Federal Rules of Evidence 702 and 703," accordingly the report was admissible in its entirety. *Id*. The Trustee has made no showing here that the alleged hearsay statements were not of the type that the SEC would rely upon in this type of investigation, or that the OIG Report,

62276630.3                                  - 8 -

like the report at issue in *Parsons*, was nothing more than recitations of factual observations. *See Gentile*, 129 F.R.D. at 449-450. The OIG Report should be admitted in its entirety.[2]

## II. EVIDENCE AND TESTIMONY OF THE SEC'S ACTIONS ARE RELEVANT TO ALLEGATIONS OF WILLFUL BLINDNESS AND SHOULD BE ADMITTED

The OIG Report and other evidence of Merkin's understanding that BLMIS was regulated and regularly examined by the SEC easily clears the minimal relevance threshold. *See U.S. v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986); *see also Gentile*, 129 F.R.D. at 444 ("Together Rules 401 and 402 express the federal policy underlying the federal rules, which favors liberal admission of evidence."). The Trustee asserts that the relevant question is what Merkin learned about BLMIS during the history of the funds' investments and what he did with that information, arguing further that the actions of the SEC are not relevant or probative of that inquiry. (Trustee Br. 13) To the contrary, Merkin's understanding that BLMIS was regulated, that the SEC regularly had reviewed BLMIS and never sanctioned it, and that at least one SEC investigation found that BLMIS had accurately and completely accounted for its investors' funds, is precisely what the Trustee himself admits is relevant.

As the Trustee recognizes, the principal remaining issue in this action is willful blindness. This requires that the Trustee prove that Merkin had a subjective belief that there was a high probability that Madoff was engaged in a Ponzi scheme and that Merkin took deliberate steps to disregard easily accessible information for fear that it would have confirmed such suspicion. Evidence of Merkin's state of mind is, without doubt, highly relevant. Defendants should therefore be permitted to put forward evidence that Merkin knew and relied on the lack of any regulatory sanctions against BLMIS upon review and investigation by the SEC. *See Vinieris v.*

---

[2] Even if the Report were inadmissible hearsay, which it is not, the Report should be admitted to corroborate Merkin's state of mind regarding the legitimacy of Madoff's operations based on regular SEC inspections. *See, e.g., DiNigris*, 552 Fed. App'x at 6.

62276630.3                                          - 9 -

*Byzantine Mar. Corp.*, 731 F.2d 1061, 1063-1064 (2d Cir. 1984) (where "good faith" is at issue, the trial court should "follow[] a liberal policy in admitting evidence directed towards establishing . . . subjective state of mind").

Evidence regarding the SEC's many reviews of BLMIS is also relevant to both prongs of the willful blindness test – whether Merkin believed BLMIS was a fraud and took deliberate actions to avoid learning of the Madoff Ponzi scheme. Unlike Merkin, the SEC had readily accessible information that could have confirmed BLMIS' operations and trading records. Merkin knew the SEC conducted regular and surprise examinations of BLMIS. Despite the SEC affirmatively looking for potential fraud, the SEC never saw any evidence of a Ponzi scheme prior to Madoff's confession. As set forth in the OIG Report, Madoff and BLMIS were investigated several times by the SEC and cleared every time. *See* OIG Report. This is, at a minimum, evidence that Madoff's scheme was complex and well hidden, which makes it far less probable, if not entirely implausible, that Merkin believed that BLMIS was a Ponzi scheme or had access to and deliberately turned away from information he feared would confirm a scheme in which no securities were being purchased for the accounts under his management, totaling more than a billion dollars for a period of over fifteen years.

Finally, the Trustee's concerns of prejudice or confusion with regard to the introduction of the OIG Report are superficial at best (Trustee Br. 11) and do not outweigh the high probative value of this evidence. Notably, the Trustee claims no specific prejudice. (*Id.*) Such generalized allegations of "prejudice" fall well short of requiring preclusion under Fed. R. Evid. 403. *See Highland Cap. Mgmt. L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) (holding exclusion under Fed. R. Evid. 403 appropriate only where the risk of prejudice is significant).

Indeed, that conclusion is particularly compelling at a bench trial, where an experienced Judge will weigh the evidence.

### III. A PROPER FOUNDATION EXISTS FOR THE INTRODUCTION OF SEC-RELATED TESTIMONY AND EVIDENCE

The Trustee also sets up a false hurdle for admissibility of SEC-related evidence, namely that Merkin must (i) have had direct conversations with the SEC about its inspections or investigations of BLMIS, (ii) have been provided by the SEC with evidence of these investigations, or (iii) be aware of the specific findings of the SEC.  (Trustee Br. at 7)  This is not the correct standard.  Rather, the proper inquiry is whether or not the witness has personal knowledge of the facts on which he testifies.  *See id.* at 6 (citing FED. R. EVID. 602; *U.S. v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 402 (2014)).  A witness may also testify as to what he "thinks he knows from personal perception."  FED. R. EVID. 602 (Advisory Comm. note).  Defendants readily meet that standard.

Merkin will testify that he had conversations with Madoff regarding periodic inspections or investigations of BLMIS by the SEC.  Merkin has personal knowledge as to these conversations he had with Madoff and the Trustee does not suggest otherwise.  While the Trustee argues that testimony regarding these conversations is hearsay – as shown above, it is not[3] – he cannot claim that Merkin is unaware that he had those conversations.  Further, Merkin knew (and the Trustee does not dispute this knowledge) that BLMIS was a registered broker dealer, became a registered investment advisor in 2006, and accordingly was regulated by the SEC.  (Archer Decl. Ex. B at 123:2-124:18; 579:8-11; Archer Decl. Ex. A at 5)  The fact that the SEC would review BLMIS as a regulated entity was well-known by Merkin given his industry background.

---

[3] Again, the issue is whether Madoff made these statements not whether they were true.  Moreover, given that Madoff's statements are being offered against Madoff's Trustee, those statements should be allowed into evidence as admissions.  *See* FED. R. EVID. 801(d)(2).

(*Id.*)  While the Trustee may quibble that Merkin cannot recall whether Madoff told him precisely what occurred during these visits, he cannot plausibly claim that Merkin has no knowledge of conversations he had with Madoff about them.  Archer Decl. Ex. B at 188:20-189:24.  This evidence is admissible.

Similarly, Merkin has personal knowledge of what he read about the SEC's investigation into Avellino & Bienes.  Merkin testified that he read an article about the investigation, had a conversation about it with Madoff and retained a copy of the article in his files for nearly two decades.  (Archer Decl. Ex. B at 214:1-24; 578:3-18)  That article was in Merkin's due diligence file regarding Madoff and quotes statements by former SEC officers clearing Madoff.  Again, the Trustee may argue about Merkin's recollection of the details of the article or conversation, but that goes to the weight of the testimony, not its admissibility.  Merkin has properly established a foundation for the admissibility of this testimony.

The Trustee argues that the OIG Report cannot be admitted unless Merkin had "contemporaneous, personal knowledge of the contents of the report, the investigation conducted by the SEC, or the findings in the report."  (Trustee Br. 8)  The Trustee never questioned Merkin about the OIG Report or his knowledge of it.  Rather than excluding the report at this early stage, the better course of action would be to permit any party seeking to introduce the Report to lay an appropriate foundation at that time.  Further, the Court may take judicial notice of the OIG Report.  *See* FED. R. EVID. 201.  The Report "can be accurately and readily determined from sources whose accuracy cannot be questioned" and should accordingly be admitted.  FED. R. EVID. 201(b)(2); *see also Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming order taking judicial notice of documents including SEC orders); *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, No. 12 Civ. 7372(RWS), 2013 WL 5230818, at *3, n.1 (S.D.N.Y. Sept. 10, 2013)

(taking judicial notice of "Financial Crisis Inquiry Report: Final Report" issued by the National Commission on the Causes of the Financial and Economic Crisis in the United States).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Trustee's Motion *in Limine* Number 1 and permit testimony and evidence regarding the SEC's actions or inactions concerning BLMIS.

Dated: New York, New York
       May 10, 2017

NORTON ROSE FULBRIGHT US LLP

By: /s/ *Judith A. Archer*
      Judith A. Archer
Sarah E. O'Connell
David B. Schwartz
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

DECHERT LLP

By: /s/ *Neil A. Steiner*
      Andrew J. Levander
Neil A. Steiner
Daphne T. Ha
Mariel R. Bronen
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com
daphne.ha@dechert.com
mariel.bronen@dechert.com

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*