UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
In re:                              :
                                    :
BERNARD L. MADOFF INVESTMENT        :   Adv. Proc. No. 08-01789 (SMB)
SECURITIES LLC,                     :   SIPA LIQUIDATION
                                    :   (Substantively Consolidated)
              Debtor.               :
------------------------------------:
PERTAINS TO THE FOLLOWING CASE:     :
                                    :
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :  Adv. Proc. No. 09-1182 (SMB)
                                    :
              Plaintiff,            :
       -v-                          :
                                    :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P., :
ARIEL FUND LTD., ASCOT PARTNERS, L.P., :
ASCOT FUND LTD., GABRIEL CAPITAL    :
CORPORATION,                        :
                                    :
              Defendants.           :
------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
OPPOSITION TO TRUSTEE'S MOTION *IN LIMINE* NUMBER 4 TO
EXCLUDE EXHIBITS NOT PRODUCED IN DISCOVERY**

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americans
New York, New York 10019
Tel.: (212) 318-3000
*Attorneys for Ralph C. Dawson, as Receiver
for Defendant Ascot Partners, L.P., and
Ascot Fund Ltd.*

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
*Attorneys for Defendants J. Ezra Merkin
and Gabriel Capital Corporation*

62278127.2

Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC") (collectively, "Merkin Defendants"), Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund") (Ascot Partners and Ascot Fund, together "Ascot" and collectively with the Merkin Defendants, "Defendants"), respectfully submit this Memorandum of Law in opposition to the Trustee's Motion *in Limine* Number 4 to exclude exhibits not produced in discovery.

## PRELIMINARY STATEMENT

The Trustee seeks to exclude from trial five exhibits—four single-page documents and one twenty-four page document, for a total of twenty-eight pages—that show the performance of five other investment funds that had a consistently high rate of return with low volatility. In his deposition in this action (as well as in other actions for which the transcripts were produced), Merkin identified these funds as ones that he knew had outperformed the returns on Ascot's BLMIS account. These documents thus corroborate Merkin's testimony that other investments generated better returns with low volatility, and undercut the Trustee's theory that BLMIS's consistently successful performance somehow should have alerted investors to his fraud (which theory is legally insufficient to establish willful blindness in any event).

Among the Trustee's hundreds of document requests leading to nearly a million of pages of documents produced by Defendants, the Trustee did not make a single specific request that sought documents concerning the performance of other funds in which Defendants invested or considered investing. Rather, the Trustee contends that these documents should have been produced in response to his catch-all request for "all documents supporting and/or negat[ing] any claim or defense in the litigation." (Trustee Br. at 1, 5).[1] But these five documents only became

---

[1] The Trustee alternatively suggests that the documents may have been responsive to his request for all documents in a category identified in Defendants' Initial Disclosures (Request No. 133) or his request

62278127.2

relevant to negate the Trustee's claim when the Trustee's expert, Steven Pomerantz, submitted his expert report comparing Madoff's returns to "elite investment advisors" and subsequently testified that he excluded several of these managers from his comparison even though he knew that Merkin "specifically noted Paul Singer [Elliot Associates], Israel Englander [Millennium USA] and Steve Cohen [SAC Capital] as investment advisors whose performance he considered comparable to, or better than, Madoff's reported performance." (Archer Decl. Ex. A at 115, n.295)

Thus, at worst, Defendants should have supplemented their document productions to include these five documents after Pomerantz issued his report on March 20, 2015 or after he testified at his deposition on July 8, 2015 – in either case well after fact discovery had closed. In these circumstances, the inadvertent omission of these documents from Defendants' productions should not result in their preclusion. The Trustee has testimony from Merkin regarding these funds, and the Trustee's own expert was aware of Merkin's testimony and considered some but not others of these funds in his "peer analysis." Defendants' inadvertent failure to supplement their production to add these documents during expert discovery is therefore harmless. Unlike the cases cited by the Trustee, this is not an instance of "sandbagging" the adverse party with reams of highly relevant evidence on the eve of trial. Rule 37 does not require the exclusion of these five exhibits. Similarly, Decision #7 of the discovery arbitrator, dated December 6, 2014, should not prevent the introduction of these five exhibits because these documents were not responsive to any request at the time of that decision and Defendants' representations as to completeness were, at that time, correct. The documents only potentially became responsive

---

for all documents produced to the New York Attorney General (Second Request No. 14). *See* Trustee Br. at 5. But the Trustee acknowledges that the documents do not fall into the categories of initial disclosures. (*Id.*) And the documents were not produced in a document production made to the NYAG, but three of them were publicly filed as exhibits to summary judgment motions in the NYAG proceeding.

years later following Pomerantz's report. In any event, Decision #7 does not preclude Merkin's testimony as to the performance of these funds, of which the Trustee and his expert were well aware, which is obviously admissible to rebut the claim of willful blindness.

## ARGUMENT

**I.    FIVE EXHIBITS REGARDING THE PERFORMANCE OF OTHER FUNDS SHOULD NOT BE EXCLUDED PURSUANT TO RULE 37(c)(1)**

The Trustee argues that these five exhibits must be excluded because the sanction included in Rule 37 is "automatic" and "self-executing." This is not the case; the Court has discretion as to whether to exclude evidence for failure to disclose, recognizing that exclusion is a harsh remedy and sparingly used. *See Bey v. Iaquinto*, No. 12 CIV. 5875(JCF), 2015 WL 5786487, at *2 (S.D.N.Y. Sept. 30, 2015); *Williams v. Cnty. of Orange*, No. 03 Civ. 5182(LMS), 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005) (decision to impose sanctions is discretionary "and preclusion is generally not ordered"); *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811(CM)(JCF), 13 Civ. 1580(CM)(JCF), 2013 WL 5495542, at *2 (S.D.N.Y. Oct. 3, 2013) (preclusion is a harsh sanction to be imposed rarely) (internal citations omitted). In determining whether to exercise its discretion, courts consider whether the failure was substantially justified, and even if it not, "exclusion should not apply if the failure was harmless." *U.S. Bank Nat. Ass'n*, 2013 WL 5495542 at *2. In determining whether a failure to produce documents is harmless, courts consider factors such as (1) whether the failure has an explanation or was willful or in bad faith; (2) the surprise or prejudice to the party against whom the evidence would be offered; (3) the ability to cure the surprise; (4) the importance of the evidence; and (5) the extent to which allowing the evidence would disrupt the trial. *See U.S. Bank Nat. Ass'n*, 2013 WL 5495542 at *3. None of these factors weigh in favor of preclusion here.

62278127.2                                           - 3 -

### A.  Analysis of the Harmlessness Factors Favors Admission of the Exhibits

The five exhibits at issue constitute twenty-eight pages out of almost a million pages produced by Defendants, a miniscule percentage. There is no evidence that the failure of production was anything other than inadvertent. Indeed, the Trustee does not even attempt to identify a specific request to which they are even potentially responsive and points only to his catch-all request. But the five documents potentially became responsive to that request only after the service of Pomerantz's expert report on March 20, 2015 or his deposition testimony on July 8, 2015.

There is likewise no merit to the Trustee's argument that it is "particularly egregious" that three of the documents were used as exhibits to Merkin's motion for summary judgment in the action filed by the New York Attorney General. (Trustee Br. at 5) To the contrary, the fact that these documents were publicly filed in that action – and were thus available to the Trustee – belies any inference that Defendants were attempting to hide them. The only appropriate inference is that Defendants' failure to supplement their production to add these five documents was inadvertent.[2]

Nor can the Trustee validly claim that the use of these documents is somehow a surprise. The Trustee's assertion that he could not have anticipated the existence of, or Defendants' reliance on, these five documents (Trustee Br. at 6) is misplaced. In depositions in related arbitrations, copies of the transcripts of which have been produced by Defendants to the Trustee, Merkin testified that he was aware of other high-performance, low-volatility funds in addition to BLMIS, including Elliot Associates, Millennium USA, LP and SAC Capital. (*See* Archer Decl.

---

[2]   In fact, given the inevitability that the Trustee has reviewed the public summary judgment papers in the NYAG action, he cannot claim any surprise or prejudice.

Exs. B, C, D, & E)  This testimony evidencing Defendants' reliance on the performance of other funds was produced to the Trustee, belying any purported surprise.

The Trustee claims that he did not have the opportunity to question Merkin or any other witness about these documents, yet the Trustee had in his possession Merkin's testimony on the subject of the performance of these funds before Merkin's deposition was complete.  Further, the Trustee's expert, Dr. Steve Pomerantz, concedes in his report that Merkin "specifically noted Paul Singer [Elliot Associates], Israel Englander [Millennium USA] and Steve Cohen [SAC Capital] as investment advisors whose performance he considered comparable to, or better than, Madoff's reported performance."  (Archer Decl. Ex. A at 115, n.295)  Dr. Pomerantz considered Mr. Singer's performance in his analysis of the performance of BLMIS as compared to "elite investment advisors," and only excluded Messrs. Cohen and Englander because, although he had data regarding the performance of their funds, he chose not use it because it was not publicly available.  (*Id*.; Archer Decl. Ex. F at 310:4-311:8)  The Trustee's assertion that "[his] experts have not had an opportunity to investigate and opine on the performance of these five funds and how the purported performance may relate to the performance of BLMIS" is contradicted by Dr. Pomerantz's report.  (*Id.*)  The use of these documents is not a surprise and cannot prejudice the Trustee.

Apparently to minimize the impact of exclusion, the Trustee claims that the evidence "cannot be described as important" (Trustee Br. at 6).  To the contrary, the five documents are relevant to rebutting the Trustee's argument that the consistently strong performance, with low volatility, of Madoff's investments should somehow have alerted Merkin to the Ponzi scheme. In considering the performance of other fund managers, including those of the funds described in the five documents, Dr. Pomerantz underscores the importance of this evidence.  (Archer Decl.

Ex. A at 115) Further, as shown above, the Trustee's assertion that it could not have anticipated the existence of these documents is belied by Merkin's prior testimony, the Trustee's expert's own report and the publicly filed summary judgment papers in the NYAG action.

Finally, the Trustee argues that discovery should not be re-opened to permit Defendants to produce and rely upon these documents. Defendants agree. Because the Trustee had Merkin's testimony about these funds since before the close of discovery, had access to and undoubtedly possession of the summary judgment papers in the NYAG action, and several of the funds were considered by the Trustee's expert, allowing the evidence will not disrupt the trial.

B. **The Authority Cited by the Trustee Does Not Support Preclusion**

None of the cases cited by the Trustee mandates preclusion. Some discuss preclusion in the context of the failure of a party to include a damage calculation or category (*see Agence France Presse v. Morel*, 293 F.R.D. 682 (S.D.N.Y. 2013); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698(LAP), 2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010); *Underpinning & Found. Skansa, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339 (S.D.N.Y. 2010)); others address the failure to disclose an expert or other witnesses until the eve of trial (*see Williams*, 2005 WL 6001507; *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006); *Ebwo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004); *Bey*, 2015 WL 5786487; *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006)). In fact, the only case relied upon by the Trustee that discusses a failure to produce documents involves the late production of documents that were "at the heart of plaintiff's allegations in the action." *Lujan v. Cabana Mgm't, Inc.*, 284 F.R.D. 50 (E.D.N.Y. 2012). In *Lujan*, plaintiffs sought damages for failure to pay minimum wage, overtime, and improperly withheld tips. *Id*. at 57. In opposition to plaintiffs' motion for class certification, defendants introduced a declaration attaching exhibits that were created based upon payroll reports for certain plaintiffs that had not been produced in discovery. *Id.* at 70. The

court held that the underlying documents were relevant, responsive, requested by plaintiffs, critically important to plaintiffs' case, and amounted to an effort by defendant to deprive plaintiffs of the ability to challenge the declaration. *Id*.

Unlike the situation in *Lujan*, the five exhibits at issue here, though relevant, do not go to the heart of the Trustee's case. They are illustrative and corroborative of points previously presented in this action, including in Merkin's testimony and the expert report of the Trustee's own expert. Thus, the inadvertent failure to produce these documents did not and will not deprive the Trustee of the ability to present any of his claims.

## II. THE ARBITRATOR'S ORDER SHOULD NOT PRECLUDE INTRODUCTION OF THE FIVE EXHIBITS OR TESTIMONY REGARDING THE PERFORMANCE OF OTHER FUNDS

Because the inadvertent failure to produce these five documents during discovery is harmless, as demonstrated above, the arbitrator's order should not preclude the introduction of these exhibits. On October 10, 2013, Judge Melanie L. Cyganowski (Ret.), appointed as Discovery Arbitrator over discovery disputes in this matter, held a telephone conference with the parties to resolve certain discovery disputes. In the context of addressing an alleged boilerplate objection to the Trustee's request for the production of "all documents supporting and/or negating any claim or defense in the litigation," Defendants accurately represented that all responsive documents had been produced. *See* Dkt. 249 ("Order") at 19. Based on those representations the Arbitrator issued Decision #7, ordering that Defendants would be precluded from using at trial any existing documents that had not previously been produced. *Id*. at 20.

There is no evidence of bad faith by Defendants or harm to the Trustee in Defendants' inadvertent failure to supplement their production years later to produce a mere five documents – twenty-eight pages out of what the Trustee himself recognizes were "millions of documents [that] have been produced in this litigation to date" (Trustee Br. at 6) – that only became relevant

62278127.2                                          - 7 -

to negate the Trustee's claims following its service of Pomerantz's expert report and his deposition testimony. Accordingly, Defendants submit that the Order should not preclude the introduction of these five exhibits.

In any event, the Order does not impact the ability of Defendants to introduce testimony regarding the performance of other funds, including the funds referenced in the five proposed exhibits. The Order addresses only the use of documents, not testimony. (*See* Order at 20) Because Defendants are permitted to introduce testimony regarding the performance of these funds, the documents in question merely corroborate that testimony – as well as the admissions of the Trustee's own expert. In these circumstances, exclusion is not warranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Trustee's Motion *in Limine* Number 4 and permit the introduction of the five proposed exhibits regarding the performance of other funds.

Dated: New York, New York
       May 10, 2017

NORTON ROSE FULBRIGHT US LLP

By:   /s/ *Judith A. Archer*
     Judith A. Archer
Sarah E. O'Connell
David B. Schwartz
1301 Avenue of the Americas
New York, New York  10019
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

62278127.2        - 8 -

- 9 -

DECHERT LLP

By:   /s/ *Neil A. Steiner*
      Andrew J. Levander
Neil A. Steiner
Daphne T. Ha
Mariel R. Bronen
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com
daphne.ha@dechert.com
mariel.bronen@dechert.com

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*