**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>Defendants. | Adv. Pro. No. 09-01182 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE THE EXPERT TESTIMONY OF AMY B. HIRSCH**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................3

    I.    AMY HIRSCH'S OPINIONS AND TESTIMONY ARE RELIABLE AND RELEVANT, AND THUS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*........................................................3

        A.    Amy Hirsch's Qualifications and Reliable Methodology and Analyses ...................................................................................................4

        B.    Amy Hirsch's Opinions Rebut Defendants' Evidence ...............................6

    II.    AMY HIRSCH HAS CONSIDERED SUFFICIENT DATA IN FORMING HER OPINIONS ..........................................................................10

CONCLUSION..............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agron v. Trustees of Columbia University*,
 176 F.R.D. 445 (S.D.N.Y. 1997) .................................................................................5, 6

*Allen v. Dairy Farmers of Am., Inc.*,
 No. 5:09–cv–230, 2013 WL 211303 (D. Vt. Jan. 18, 2013) ...........................................6

*Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation, Grp., Inc.*,
 No. 3:11CV715 (JCH), 2013 WL 5771166 (D. Conn. Oct. 24, 2013) ..........................7

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
 No. 93 CIV 6876 LMM, 2000 WL 1694321 (S.D.N.Y. Nov. 13, 2000) .....................10

*Boucher v. U.S. Suzuki Motor Corp.*,
 73 F.3d 18 (2d Cir. 1996) ...............................................................................................9

*Cerbelli v. City of N.Y.*,
 No. 99 CV 6846(ARR)(RML), 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006) .............5

*Crowley v. Chait*,
 322 F. Supp. 2d 530 (D.N.J. 2004) .................................................................................7

*Ebbert v. Nassau Cty.*,
 No. CV 05-5445(FB)(AKT), 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ................7

*In re Fosamax Prods. Liab. Litig.*,
 645 F. Supp. 2d 164 (S.D.N.Y. 2009) ............................................................................9

*Henkel v. Wagner*,
 No. 12-cv-4098 (AJN), 2016 WL 1271062 (S.D.N.Y. Mar. 29, 2016) .......................10

*Kumho Tire Co. v. Carmichael*,
 526 U.S. at 156 ...............................................................................................................4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
 643 F. Supp. 2d 471 (S.D.N.Y. 2009) ............................................................................5

*New York v. Solvent Chem. Co.*,
 No. 83-CV-1401C, 2006 WL 2640647 (W.D.N.Y. Sept. 14, 2006) ..............................5

*Olin Corp. v. Certain Underwriters at Lloyd's London*,
 468 F.3d 120 (2d Cir. 2006) .........................................................................................10

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Park W. Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ................................................................................7

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010) ................................................................................4

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
   988 F. Supp. 2d 395 (S.D.N.Y. 2013) ................................................................................9

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
   No. 03 CV 1851(NGG)(RML), 2008 WL 4911440 (E.D.N.Y. Nov. 13, 2008) .................7

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) .......................................................................................4, 6

*TC Sys. Inc. v. Town of Colonie*,
   213 F. Supp. 2d 171 (N.D.N.Y. 2002) ................................................................................6

*United States v. Casamento*,
   887 F.2d 1141 (2d Cir. 1989) ..............................................................................................6

*United States v. Mack*,
   No. 3:13-cr-00054 (MPS), 2014 WL 7404763 (D. Conn. Nov. 7, 2014) ...........................5

*United States v. Neary*,
   733 F.2d 210 (2d Cir. 1984) ................................................................................................6

*United States v. Tejada*,
   956 F.2d 1256 (2d Cir. 1992) ..........................................................................................6, 7

*Washington v. Kellwood*,
   105 F. Supp. 3d 293 (S.D.N.Y. 2015) ................................................................................4

**Statutes**

15 U.S.C. § 78aaa *et seq.* ..........................................................................................................1

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................................6

Fed. R. Evid. 702 .......................................................................................................................4

Fed. R. Evid. 703 .....................................................................................................................10

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

**Other Authorities**

29 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Evidence* § 6274 n.50 (2d ed. 2017) ........................................................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to Defendants' Motion *In Limine* to Exclude the Expert Testimony of Amy B. Hirsch.[1]  For the reasons set forth herein, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

Defendants have repeatedly asserted through pleadings, motions, and proffered testimony that their receipt of timely redemptions is evidence of due diligence consistent with industry customs and practices.  The Trustee offers Amy B. Hirsch, a financial professional with more than 30 years of experience in the investment industry, to directly rebut these arguments, namely that Defendants, on numerous occasions, did not obtain redemptions from BLMIS to meet their investors' demands, that there were significant gaps in redemptions from BLMIS between 1998 and 2003, and 2003 and 2005, and that there were improper transfers of monies between separate, independent investment funds controlled by Merkin to cover investor redemptions.  Further, Ms. Hirsch's testimony will aid the Court by explaining that Defendants' redemptions were not consistent with industry customs and practices for requesting and fulfilling redemptions in the fund-of-fund and hedge fund context and providing an analysis of those redemptions from BLMIS to Ascot Partners.  Accordingly, because Ms. Hirsch's testimony rebuts Defendants' arguments and will aid the Court, Defendants' motion should be denied.

---

[1] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Ltd. ("Ascot Fund") are referred to herein as Defendants.

## BACKGROUND

Defendants have repeatedly advanced that their receipt of timely redemptions from BLMIS is evidence of their due diligence on BLMIS. Specifically, Defendants offer:

> Perhaps most significantly, Mr. Merkin had a nearly two-decade track record of receiving timely withdrawals on demand from the Funds' BLMIS accounts, and was aware that other clients of Mr. Madoff had a similar experience. *The ability timely to withdraw capital from the BLMIS accounts provided additional comfort as part of Mr. Merkin's due diligence and monitoring of the Funds' investments.*[2]

Defendants claim that there was never an "instance when Merkin or the Funds requested redemptions and was refused" and that "the Funds also promptly received payments for hundreds of millions of dollars in redemptions whenever requested over a 15-year period."[3]

Defendants' proffered due diligence expert, Jeffrey Weingarten, repeats this redemption refrain:

> Another, but absolutely critical, part of the due diligence process was the determination that the performance was realizable. By that I mean could you get your money back. Without question, from the evidence in the Merkin Defendants' files, until December 11, 2008, Madoff was always able to meet redemption requests on time and in the full amount. Based on this redemption history, there would have been no reason to doubt that the performance as depicted was real or that the funds that were invested were actually there. For example, Mr. Merkin knew that in 1992, Madoff met a $440 million redemption without hesitation, following an investigation by the SEC against third parties who had invested the funds with Madoff. Mr. Merkin retained a copy of the news article about that investigation and Madoff's prompt return of the investor funds in his file."[4]

---

[2] Declaration of Lan Hoang in Support of Trustee's Motions *in limine* Numbers 1-4 dated April 7, 2017 ("Hoang Decl."), Ex. 1 (Defendants J. Ezra Merkin and Gabriel Capital Corporation's Supplemental Responses to Plaintiff's Second Set of Interrogatories and Requests for Admissions in Accordance with Decision #3 ("Defendants' Suppl. Responses")) at 7 (emphasis added), ECF No. 337-1.

[3] Defs.' Mem. Summ. J. at 13, ¶¶ 107–08, ECF No. 285; Joint Statement of Material Facts ¶ 179, ECF No. 287 ("Defendants never had any issues withdrawing money from the Funds' BLMIS accounts.").

[4] Hoang Decl., Ex. 5 (Expert Report of Jeffrey M. Weingarten dated March 19, 2015 ("Weingarten Initial Rpt.")) at 5.

2

Ms. Hirsch's testimony is being offered for the specific purpose of rebutting Defendants' assertions. Ms. Hirsch has over three decades of experience in the investment industry, and has reviewed and analyzed documents pertinent to her opinions, including Defendants' books and records and fund governing documents. Ms. Hirsch offers the opinion that redemptions are the standard mechanism through which investors withdraw monies from a fund,[5] and the "timing of redemption requests" is set forth in the fund's offering memorandum.[6] As such, redemptions are simply part of the business of fund investors. Ms. Hirsch will further opine that the Defendants relied on improper transfers between Gabriel Capital, L.P., Ariel Fund, Ascot Partners, and/or Ascot Fund (the "Merkin Funds") and between the Merkin Funds and GCC to pay their investor redemptions.[7] These transfers resulted in the commingling of the Merkin Funds' assets and were a violation of industry customs and practices, as well as the terms of the governing documents for the Merkin Funds.[8] The totality of Ms. Hirsch's opinions are set forth in her expert report.[9]

## ARGUMENT

### I. AMY HIRSCH'S OPINIONS AND TESTIMONY ARE RELIABLE AND RELEVANT, AND THUS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*

An expert is qualified to testify at trial where she meets the threshold standards regarding qualifications, reliability of the process or methodology, sufficiency of the data, and relevance of

---

[5] Declaration of Judith A. Archer in Support of Defendants' Motion *in Limine* to Exclude the Expert Testimony of Amy B. Hirsch, Ex. A (Expert Report of Amy B. Hirsch dated March 20, 2015 ("Hirsch Rpt.") ¶ 49 ("An investor invests monies with a fund via the subscription and redemption process.")), ECF No. 348.

[6] *Id.* ¶ 52 ("The timing of redemption requests is set forth in the fund's offering documents (*e.g.*, quarterly, biannually, or annually) depending on the fund's strategy.").

[7] *Id.* ¶ 107 (citing Expert Report of Lisa M. Collura dated March 20, 2015 ("Collura Rpt."), Section VIII, ¶¶ 63, 67–69).

[8] *Id.* ¶¶ 62–72; *see also id.* Section VI, Opinion II.

[9] *See generally id.*

3

the testimony. *See* Fed. R. Evid. 702; *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citing *Washington v. Kellwood*, 105 F. Supp. 3d 293, 327 (S.D.N.Y. 2015)).

### A. Amy Hirsch's Qualifications and Reliable Methodology and Analyses

Ms. Hirsch has more than 34 years of experience in the investment management industry, including 19 years spent managing a hedge fund, managing a fund-of-fund with assets at or near $1 billion, and advising institutional investors.[10] Ms. Hirsch has performed all facets of due diligence—operational, qualitative, and quantitative—on hundreds of hedge funds.[11] As a due diligence professional, Ms. Hirsch attempted to perform due diligence on GCC and Ariel Fund in 1995 for one of her clients. Ms. Hirsch requested documents from Merkin and later met with him to discuss the investment.[12] Defendants do not dispute Ms. Hirsch's qualifications, but take issue with the fact that Ms. Hirsch's firsthand experience with Merkin makes her unable to offer expert opinion here. This argument is unavailing and does not undermine Ms. Hirsch's qualifications as an expert at trial.

Ms. Hirsch's expertise is based on the entirety of her professional experience, including her previous firsthand experience with Merkin and Ariel Fund. Indeed, the Federal Rules of Evidence and the Supreme Court decision in *Kumho Tire Co. v. Carmichael*, contemplate that the foundation for an expert's testimony may be based on experience alone. 526 U.S. 137 (1999); Fed. R. Evid. 702 advisory committee's note to 2000 amendment (citing *Kumho Tire*, 526 U.S. at 156 (holding "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience")); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464 (S.D.N.Y. 2010)

---

[10] *Id.* ¶¶ 1–2.

[11] *Id.* ¶ 3.

[12] *Id.* ¶ 4.

4

(holding defendants were entitled to test through cross-examination whether expert's experience in hedge fund industry is sufficient to provide an adequate basis for his testimony); *Cerbelli v. City of N.Y.*, No. 99 CV 6846(ARR)(RML), 2006 WL 2792755, at *2 (E.D.N.Y. Sept. 27, 2006) (finding expert competent to render opinions based on her experience, and any arguments relating to her opinions "are fair ground for cross-examination" because such questions go to "weight, not admissibility").

Personal or firsthand experience with an adverse party does not render the expert's conclusions inadmissible "lay opinion." Rather, any alleged disagreement or fault with the expert's experience is properly the subject of cross-examination and goes to the weight of the evidence before the factfinder. *See, e.g.*, *United States v. Mack*, No. 3:13-cr-00054 (MPS), 2014 WL 7404763, at *2 (D. Conn. Nov. 7, 2014) (rejecting arguments that expert could not testify because his conclusions were based on his forensic experience, stating that "an expert's testimony may be based on experience alone"); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 478–79 (S.D.N.Y. 2009) (holding expert's experience qualified him to testify, but noted defendants may use the expert's "assumptions and admitted unfamiliarity" with any given topics to "impeach his credibility on cross-examination"); *New York v. Solvent Chem. Co.*, No. 83-CV-1401C, 2006 WL 2640647, at *2 (W.D.N.Y. Sept. 14, 2006) (permitting expert to testify, subject to the opportunity for cross-examination probing his "qualifications, experience, and sincerity; weaknesses in the opinion's basis, the sufficiency of assumptions, as well as the strength of the opinion").

In this regard, the case cited by Defendants is inapposite. In *Agron v. Trustees of Columbia University*, the defendant was attempting to designate a witness as a fact witness rather than an expert witness. 176 F.R.D. 445, 448 (S.D.N.Y. 1997). The court held that the witness

5

could only be called as an expert, and that he "d[id] not forfeit his expert status merely because he learned facts, in addition to forming an expert opinion, through his personal observations." *Id.*

The Trustee identified Ms. Hirsch as an expert to directly controvert Defendants' arguments regarding redemptions in their BLMIS accounts by providing an explanation of industry customs and practices for requesting and fulfilling redemptions in the fund-of-fund and hedge fund context and an analysis of redemptions from BLMIS to Ascot Partners. To the extent that Defendants have issues with Ms. Hirsch's experience or how she came to her opinions based on those experiences, such issues are grounds for her cross-examination at trial, not her preclusion on a motion *in limine*.

### B. Amy Hirsch's Opinions Rebut Defendants' Evidence

Ms. Hirsch is a proper rebuttal expert under Federal Rule of Civil Procedure 26(a)(2)(D)(ii) where her testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Scott*, 315 F.R.D. at 44. "The scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report . . . but district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09–cv–230, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013) (citations omitted) (quoting *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002)) (internal quotation marks omitted).

Further, courts have "wide discretion in determining whether to permit evidence on rebuttal." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992) (citations omitted). At base, "[t]he function of rebuttal evidence is to explain or rebut evidence offered by the other party." *United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) (citing *United States v.*

6

*Neary*, 733 F.2d 210, 220 (2d Cir. 1984)); *see also Tejada*, 956 F.2d at 1266; *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 CV 1851(NGG)(RML), 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008) (citing *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)).  Parties may submit expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party" and may present new legal arguments where those arguments are substantially justified and result in no prejudice. *Crowley*, 322 F. Supp. 2d at 551 (quoting *Ebbert v. Nassau Cty.*, No. CV 05-5445(FB)(AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008)).  Further, a rebuttal expert is permitted to use new methodologies "for the purpose of rebutting or critiquing the opinions of [the opposing party's] expert witness." *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009); *see also Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation, Grp., Inc.*, No. 3:11CV715 (JCH), 2013 WL 5771166, at *3 (D. Conn. Oct. 24, 2013) (admitting as proper rebuttal testimony a report in which the expert "offer[ed] new analysis and calculations," because it was intended to "rebut and/or contradict the theory posited by" the affirmative expert).

Ms. Hirsch's opinions directly rebut Defendants' and their expert's repeated refrain that the receipt of redemptions was an absolutely critical part of the Defendants' due diligence on BLMIS—namely, that they could get money back from BLMIS whenever they wanted.  Ms. Hirsch will explain that receipt of redemptions are expected with investments, not due diligence, and that the redemptions are directed and circumscribed by the governing documents of the funds controlled by Merkin.  Significantly, Ms. Hirsch opines that Defendants were not actually receiving redemptions from BLMIS to pay their fund investors, but instead, were improperly transferring money between the Merkin Funds—each independent funds with different investors,

7

different numbers of investors, different equity of investors, different investment strategies, and different investment interests in BLMIS—to meet investor redemption requests. For example:

- On July 6, 2006, Gabriel [Capital] bank account transferred $26 million to Ascot Partners' bank account. On that same day, Ascot Partners paid distributions to investors in the amount of at least $26 million. On the next day, July 7, 2006, Ascot Partners' BLMIS account transferred $26 million to Gabriel Fund's BLMIS account in a reallocation.[13]

- On January 4, 2007, Ascot Partners' bank account had approximately $2.3 million and it received additional inflows from investors in the amount of $425,000.00, for a balance of less than $3 million. On the same day, Ascot Partners had outflows for investor distributions of $33.3 million (including $12.8 million for a distribution to Ascot Fund).[14]

Ms. Hirsch will also explain that between January 2005 and October 2008, Defendants made 26 such transfers between the Merkin Funds and GCC for "investor subscriptions and 'distributions,'"[15] and she will opine that by executing these inter-fund transfers, Ariel and Gabriel were improperly paying redemptions to Ascot Partners' investors, actions that were not authorized by any governing documents for the Merkin Funds.[16] And, Ms. Hirsch will offer analysis that the Merkin Funds took only 21 redemptions from BLMIS over the life of their investments, with gaps in redemptions between 1998 and 2003, and 2003 and 2005;[17] gaps representing nearly six years when no redemptions were taken directly from BLMIS.

---

[13] *Id.* ¶ 118.

[14] *Id.* ¶ 108.

[15] *See id.* ¶¶ 121–24.

[16] *Id.* ¶ 109.

[17] *Id.* at 2 (Collura Rpt. Ex. 7 - List of All Cash Transactions in Merkin Accounts).

8

Ms. Hirsch's review and analysis of the governing and administrative documents of the Merkin Funds yielded only book entries, but no documentation that identified and safeguarded the equity interests of the different investors of the respective funds.[18] If these transfers were "loans," Ms. Hirsch states that at a minimum, loan documentation should have existed to identify the parties to the loan, the principal amount, the interest rate, the duration, any penalties for late payment, and safeguards to protect the respective rights and equity interests of the investors. Ms. Hirsch will explain that without documentation and safeguards, there is no evidence of the obligation to repay the loan, and the investors of the respective funds are at risk of non-repayment of the transferred amount.[19]

Certainly, contrary to Defendants' arguments, Ms. Hirsch's testimony is beyond ordinary bookkeeping and transfers. Her factual recitation is necessary in order to lay the foundation for her expert opinions and analyses and to rebut Defendants' claim that redemptions represent anything other than standard practice in the fund-of-fund and hedge fund context. To the extent that Defendants disagree with Ms. Hirsch's opinions, such disagreement is an issue for cross-examination and not for a motion *in limine*. *See Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 405 (S.D.N.Y. 2013) (holding that "alleged omissions" in the expert report "may be explored on cross-examination but do not affect the admissibility of [the expert's] opinions"); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that an expert's assumptions are not "so unrealistic and contradictory as to suggest bad faith," and arguments that the "assumptions are unfounded go to the weight, not the admissibility, of the testimony" (citations and internal quotation marks omitted)); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 204–05 (S.D.N.Y. 2009) ("[C]hallenge to the factual

---

[18] Hirsch Rpt. ¶¶ 119–20.

[19] *Id.* ¶ 120.

9

foundation to some of [the expert's] opinions can be explored on cross-examination but are not grounds for exclusion.").

## II. AMY HIRSCH HAS CONSIDERED SUFFICIENT DATA IN FORMING HER OPINIONS

Defendants argue that Ms. Hirsch relied on only a small subset of documents in support of her opinions and, therefore, did not consider all documentation of the transfers. Ms. Hirsch opines on the issue of Defendants' purported redemptions from BLMIS to pay their investors' demands and identified the documents that she determined were relevant to that issue and upon which she relied to arrive at her opinions. If Defendants believe that Ms. Hirsch should have reviewed other documents, documents which they have not identified, such disagreement goes to weight, not admissibility and Defendants may question her on cross-examination about any alleged deficiencies in the documents that she considered. *See, e.g.*, *Henkel v. Wagner*, No. 12-cv-4098 (AJN), 2016 WL 1271062, at *11 (S.D.N.Y. Mar. 29, 2016) (denying motion to preclude expert because if the defendants want to highlight documents that the expert may have failed to consider, cross-examination is the "appropriate way of attacking weak expert testimony, rather than complete exclusion") (quoting *Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 134 (2d Cir. 2006)).

Likewise, contrary to Defendants' arguments, Ms. Hirsch's reliance on Ms. Lisa Collura's findings in preparing her opinions is entirely proper under Fed. R. Evid. 703. An expert may "rely on the opinions of other experts," because "[s]uch reliance . . . is permissible." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV 6876 LMM, 2000 WL 1694321, at *2 (S.D.N.Y. Nov. 13, 2000). "[T]he Advisory Committee [on the Federal Rules of Evidence] clearly contemplated that experts can base opinions on the opinions of others." *See* 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Evidence* § 6274 n.50

10

(2d ed. 2017). Accordingly, Ms. Hirsch's reliance on Ms. Collura's opinions is proper, and her expert testimony based thereon is permissible.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order denying Defendants' motion *in limine* to exclude the expert opinions and testimony of Amy B. Hirsch.

Dated: May 10, 2017
       New York, New York

**BAKER & HOSTETLER LLP**

*/s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

11