**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>Defendants. | Adv. Pro. No. 09-01182 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY AND EXHIBITS RELATED**
**TO WHETHER INVESTORS WERE MISLED WITH RESPECT TO**
**GABRIEL CAPITAL, L.P. AND ARIEL FUND LTD.'S EXPOSURE TO BLMIS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.      DEFENDANTS' VAGUE REQUEST TO PRECLUDE THE
           UNDEFINED TESTIMONY OF OR UNIDENTIFIED EVIDENCE
           RELATED TO ARIEL AND GABRIEL INVESTORS SHOULD BE
           DENIED .............................................................................................................2

    II.     TESTIMONY AND EVIDENCE CONCERNING WHAT
           INFORMATION THE DEFENDANTS HAD AND WHAT
           DEFENDANTS DID WITH THAT INFORMATION ARE DIRECTLY
           RELEVANT TO THE CENTRAL ISSUE OF WILLFUL BLINDNESS ..............3

           A.     Joel Ehrenkranz ..............................................................................4

           B.     Joshua Nash ....................................................................................5

           C.     Morris Smith ...................................................................................6

           D.     Jason Orchard ..................................................................................7

           E.     Tina Surh ........................................................................................7

    III.    THE TESTIMONY IS ADMISSIBLE BECAUSE IT SUPPORTS THE
           WITNESSES' CREDIBILITY .........................................................................8

    IV.    THE TESTIMONY IS ADMISSIBLE BECAUSE IT CONCERNS
           MERKIN'S CREDIBILITY ............................................................................9

    V.     THE COURT SHOULD DETERMINE AT TRIAL WHETHER THE
           CHALLENGED EVIDENCE IS RELEVANT TO THE ISSUE OF
           WILLFUL BLINDNESS ...............................................................................10

CONCLUSION...........................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. New Rochelle Pub. Sch. Dist.*,
No. 13 Civ. 3253 (NSR), 2017 WL 66326 (S.D.N.Y. Jan. 6, 2017) .........................................9

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*,
No. 94 Civ. 5220(AJP), 1998 WL 665138 (S.D.N.Y. Sept. 25, 1998)...................................3

*Lewis v. Baker*,
526 F.2d 470 (2d Cir. 1975).................................................................................................8, 9

*New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*,
187 F. Supp. 3d 476 (S.D.N.Y. 2016)......................................................................................2

*Official Comm. of Unsecured Creditors v. Isr. Discount Bank of N.Y. (In re Oak
Rock Fin., LLC)*,
No. 8-13-72251-reg, 2016 WL 5794717 (Bankr. E.D.N.Y. Oct. 4, 2016) ...................... *passim*

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012)................................................................................................10

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011)................................................................................................10

*SIPC v. BLMIS (In re BLMIS)*,
516 B.R. 18 (S.D.N.Y. 2014)..................................................................................................10

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008)..................................................................................................................3

*United States v. Khan*,
787 F.2d 28 (2d Cir. 1986).......................................................................................................3

*United States v. Obayagbona*,
627 F. Supp. 329 (E.D.N.Y. 1985) ..........................................................................................8

*United States v. Rodriguez*,
983 F.2d 455 (2d Cir. 1993)...................................................................................................10

*Wechsler v. Hunt Health Sys., Ltd.*,
381 F. Supp. 2d 135 (S.D.N.Y. 2005)......................................................................................2

*Weisfelner v. Blavatnick (In re Lyondell Chem. Co.)*,
558 B.R. 661 (Bankr. S.D.N.Y. 2016)......................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Weiss v. La Suisse, Société D'Assurances Sur La Vie*,
    293 F. Supp. 2d 397 (S.D.N.Y. 2003)........................................................................2

**Statutes**

15 U.S.C. § 78aaa *et seq.* ..................................................................................................1

**Rules**

Fed. R. Evid. 401 ...........................................................................................................3, 8

Fed. R. Evid. 403 .............................................................................................................3

Fed. R. Evid. 404 .............................................................................................................9

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang ("Hoang Opp'n Decl.") in opposition to Defendants' Motion *In Limine* to Exclude the Testimony and Exhibits Related to Whether Investors Were Misled with Respect to Gabriel Capital, L.P.'s ("Gabriel") and Ariel Fund Ltd.'s ("Ariel") Exposure to BLMIS.[1]  For the reasons set forth herein, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

Defendants seek an extraordinarily broad order to exclude the undisclosed testimony of investors in and evidence related to two funds operated by J. Ezra Merkin ("Merkin") and which were invested with BLMIS—Ariel and Gabriel.  They argue, without identifying a single line of objectionable deposition testimony or a single objectionable exhibit, that such evidence should be excluded because Ariel and Gabriel are no longer parties to this action and that references to Merkin's dealings with investors in those funds are wholly irrelevant.  The testimony that Defendants seek to exclude directly concerns whether Defendants were willfully blind—what information they knew, what information or misinformation they provided to their investors, and the concerns that those investors had regarding the misinformation or misrepresentations provided by Defendants.  The fact that the Trustee has settled with Ariel and Gabriel and these funds are no longer parties to this action is of no consequence where the testimony from investors relate to firsthand interactions with Defendants regarding their investments with BLMIS through the Gabriel, Ariel, Ascot Partners, L.P. ("Ascot Partners"), and/or Ascot Fund

---

[1] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P., and Ascot Fund Ltd. are referred to herein as Defendants.

("Ascot Fund") (together, the "Merkin Funds").  What information Defendants had about

BLMIS and what they did with that information is relevant, probative, and admissible, regardless

of the source.  For the reasons stated herein, the Court should deny Defendants' motion.

**ARGUMENT**

I.    **DEFENDANTS' VAGUE REQUEST TO PRECLUDE THE UNDEFINED TESTIMONY OF OR UNIDENTIFIED EVIDENCE RELATED TO ARIEL AND GABRIEL INVESTORS SHOULD BE DENIED**

Defendants move to exclude the undefined testimony of or unidentified evidence related

to investors of Ariel and Gabriel.  Specifically, Defendants contend that "Defendants' alleged

failure to disclose that a limited percentage of two other funds were sometimes invested with

BLMIS does not speak to whether the Defendant 'subjectively believe[d] that there is a high

probability' that BLMIS was engaged in a fraud or that the Defendants took deliberate actions to

avoid learning of the fraud."  Defendants argue that such evidence is not relevant because Ariel

and Gabriel have settled with the Trustee and that any evidence related to these funds is wholly

irrelevant.  However, Defendants' request is overly broad and vague, and does not identify for

the Court (or the Trustee) the specific evidence or testimony sought to be excluded.  Thus,

Defendants' motion is too sweeping in scope and must be denied.  *See New Am. Mktg. FSI LLC*

*v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476, 478 (S.D.N.Y. 2016) ("The purpose of *in limine*

motions is to enable the Court to rule on disputes over the admissibility of discrete items of

evidence."); *see also Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 150–51 (S.D.N.Y.

2005) (where defendants do not specify the evidence of settlements they seek to preclude, "no

certain forecasted evidence presents itself here for a ruling *in limine*"); *Weiss v. La Suisse,*

*Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 407–08 (S.D.N.Y. 2003) (denying

defendant's motion *in limine*, which sought to exclude evidence regarding "other policy

holders," due to lack of specificity with respect to the particular documents or testimony to be

2

excluded); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220(AJP), 1998 WL

665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying overly broad motions *in limine* seeking to

"exclude all evidence of [plaintiff's] financial condition" and to preclude plaintiff from

presenting evidence on punitive damages (internal quotation marks omitted)).

II.    **TESTIMONY AND EVIDENCE CONCERNING WHAT INFORMATION THE
       DEFENDANTS HAD AND WHAT DEFENDANTS DID WITH THAT
       INFORMATION ARE DIRECTLY RELEVANT TO THE CENTRAL ISSUE OF
       WILLFUL BLINDNESS**

Defendants' arguments regarding the relevancy and admissibility of the testimony and

evidence related to investors in Ariel and Gabriel is unavailing.  Evidence is relevant if it has

"any tendency to make a fact more or less probable than it would be without the evidence; and

the fact is of consequence in determining the action."  Fed. R. Evid. 401.  This Court has broad

discretion to determine whether evidence is relevant.  *See Sprint/United Mgmt. Co. v.

Mendelsohn*, 552 U.S. 379, 384 (2008) (finding trial court determinations under Fed. R. Evid.

403 deserve deference).  The bar for establishing relevance is low.  *United States v. Khan*, 787

F.2d 28, 34 (2d Cir. 1986) (stating that the "any tendency" threshold is "minimal"); *see also

Official Comm. of Unsecured Creditors v. Isr. Discount Bank of N.Y. (In re Oak Rock Fin., LLC)*,

No. 8-13-72251-reg, 2016 WL 5794717, at *3 (Bankr. E.D.N.Y. Oct. 4, 2016) (refusing to make

pre-trial determination *in limine* because context could not be determined, instead directing

parties to raise objections at trial).  "[T]he Court may reserve judgment on the motion until the

appropriate factual context is developed at trial."  *Weisfelner v. Blavatnick (In re Lyondell Chem.

Co.)*, 558 B.R. 661, 666 (Bankr. S.D.N.Y. 2016) (citation omitted).

The Defendants identify five investors in the Merkin Funds in their motion—Joel

Ehrenkranz, Joshua Nash, Jason Orchard, Morris Smith, and Tina Surh.  Each of these witnesses

had interactions with Merkin in the context of ongoing or potential investments in Ariel, Gabriel,

Ascot Partners, or Ascot Fund.  As described below,[2] each witness's narrative is unique as each

was provided with varying information related to the nature and scope of their investments in

BLMIS through the respective Merkin Funds.  The testimonies of these investors directly

concern what information Defendants had regarding BLMIS and what they did with such

information.  In fact, in some cases, Defendants knew of and ignored the concerns of these

investors regarding BLMIS—concerns about the consistency of their investment returns,

auditors, or self-clearing.  This is exactly the type of relevant testimony that the Court should

admit.

> ### A.    Joel Ehrenkranz

Joel Ehrenkranz, a sophisticated investor and friend of Merkin, met with Madoff around

1991 at Merkin's suggestion.[3]  Ehrenkranz chose not to invest with BLMIS because he had

learned during the meeting that BLMIS did not have independent verification of its trades and

did not use a recognized accounting firm.[4]  Ehrenkranz told Merkin that these risks, particularly

the lack of independent verification, were the basis for his decision not to invest with BLMIS.[5]

In 1994, Ehrenkranz agreed to invest with BLMIS indirectly through Ascot Partners because

Merkin said he would provide the independent verification that Ehrenkranz required for his

investments.[6]  Ehrenkranz redeemed from Ascot Partners in 1995 because he had increasing

concerns about the seemingly impossible consistency of BLMIS returns—which he

---

[2] The Trustee fully reserves his right to examine his witnesses to elicit testimony on any permissible topic, and within the bounds of the Federal Rules of Evidence.  The summaries of testimony set forth in this memorandum are intended only to support the arguments made herein.

[3] Hoang Opp'n Decl., Ex. 8 (Deposition of Joel Ehrenkranz dated March 20, 2014 ("Ehrenkranz Dep.")) 43:6–18.

[4] *Id.* 48:4–17, 49:8–50:1, 55:5–7.

[5] *Id.* 55:13–25.

[6] *Id.* 58:1–20.

communicated to Merkin at the time he redeemed his investment.[7]  But, unaware of Ariel's and

Gabriel's investments with BLMIS, Ehrenkranz maintained investments in Ariel and Gabriel

from the early 1990s until he redeemed those investments in approximately 2003 for

performance reasons.[8]

### B.    Joshua Nash

Joshua Nash, a fund manager with over 25 years of industry experience, had personally

met with Madoff concerning an investment made by his father with BLMIS starting in

approximately 1991.[9]  His father redeemed that investment soon thereafter because they

observed the same red flags that Merkin was aware of:  (1) general inability to understand how

Madoff made money; (2) use of an obscure auditing firm; (3) exiting the market at the end of

every quarter; and (4) inability to understand the strategy with the review of account

statements.[10]  Nash told Merkin that he was skeptical of BLMIS, and, as a fiduciary, was not

comfortable investing in BLMIS.[11]  Nash, who knew Merkin for over twenty years, personally

invested approximately $1.5 million in Gabriel in the mid to late 90s.[12]  Nash decided to make

this investment because he "liked the strategies as [he] understood them, being risk arbitrage and

distressed."[13]  Nash did not learn Gabriel was invested with Madoff until the night he called

Merkin after Madoff's arrest.[14]  Upon learning this news, Nash "was shocked and not pleased."[15]

---

[7] *Id.* 64:22–66:5.

[8] *Id.* 28:18–29:4.  Ariel and Gabriel maintained BLMIS accounts from August 2000 through December 2008.

[9] Hoang Opp'n Decl., Ex. 5 (Deposition of Joshua Nash dated October 18, 2012 ("Nash Dep.")) 24:22–25:1, 29:4–11.

[10] *Id.* 28:2–13, 30:11–31:6, 31:25–34:7, 34:8–35:10, 37:12–25.

[11] *Id.* 50:21–51:19.

[12] *Id.* 57:4–21.

[13] *Id.* 57:11–17.

[14] *Id.* 47:4–7.

[15] *Id.* 47:8–11.

5

He "wasn't pleased because [he] just lost some money.  And [he] was shocked because [he] thought [he] knew Ezra well and thought [he] knew what he did, and didn't expect to have Madoff in that fund."[16]

### C.    Morris Smith

Morris Smith held accounts in Ascot Partners[17] and Gabriel.[18]  Smith also served on the investment committee of Yeshiva University with Merkin for a number of years.[19]  Based on Merkin's representations, Smith understood that BLMIS was acting as Ascot's executing broker which carried out the trades directed by Merkin.[20]  As early as 1999, Merkin expressed concerns to Smith that Ascot Partners was "bumping up against the limits of being able to do the trades profitably,"[21] and that the limit for Ascot Partners' trading strategy in the options market was "about a billion dollars."[22]  Furthermore, Merkin told Smith that Morgan Stanley was the sole custodian of Ascot's assets.[23]  Despite regular conversations with Merkin regarding his investments, Smith only learned during the week following Madoff's arrest that Merkin was actually allocating all of Ascot Partners' assets to Madoff.[24]  Smith had no idea Gabriel also had investments with Madoff.[25]

---

[16] *Id.* 47:12–16.

[17] Hoang Opp'n Decl., Ex. 7 (Deposition of Morris Smith dated March 14, 2014) 19:18–21:13.

[18] *Id.* 23:17–24:2.

[19] *Id.* 45:16–47:13.

[20] *Id.* 33:19–36:19.

[21] *Id.* 33:19–34:10.

[22] *Id.* 34:15–19.

[23] *Id.* 34:20–36:4.

[24] *Id.* 66:9–69:2.

[25] *Id.* 68:24–69:2.

### D.   Jason Orchard

Jason Orchard is a Managing Director and Head of Alternative Strategies at Spring

Mountain Capital,[26] which maintained investments in Ascot Partners, Ascot Fund, Ariel, and

Gabriel.[27]   Orchard understood that BLMIS was the executing broker for Ascot Partners' trades

but also thought Merkin was responsible for the investment strategy.[28]   In connection with due

diligence on Ascot Partners, Merkin told Orchard and representatives from Aozora Bank that he

"believes the Ascot [Partners] strategy will stop working one day" because as "more and more

capital is employed to exploit that arbitrage, it eventually goes away."[29]   Aozora Bank repeatedly

asked Orchard to setup a meeting through Merkin with Madoff because "Ezra could answer all

of our questions . . . but I think the point is we have never met with Mr. Madoff and we have

only a little information what he does/how he does it."[30]   However, that meeting was never

arranged.[31]

### E.   Tina Surh

Tina Surh was the Director of Investments of New York University's ("NYU")

endowment fund from 2005 to 2008 and the Deputy Chief Investment Officer from 2008 until

2010.[32]   NYU had investments with Ariel beginning in the early 1990s.[33]   NYU conducted

regular due diligence meetings with Merkin, reviewed and relied upon every quarterly investor

newsletter, and reviewed Merkin's audited financial statements; none of which disclosed or

---

[26] Hoang Opp'n Decl. Ex. 4 (Deposition of Jason Orchard dated Oct. 8, 2013) 24:15–26:14.

[27] *Id.* 65:5–22.

[28] *Id.* 115:17–117:14.

[29] *Id.* 118:1–119:3.

[30] *Id.* 81:23–82:21, 84:18–23.

[31] *Id*. 82:22–83:1.

[32] Hoang Opp'n Decl., Ex. 6 (Deposition of Tina Surh dated September 18, 2013 ("Surh Dep.")) 10:23–11:20.

[33] *Id.* 24:9–16.

suggested Ariel's exposure to BLMIS.[34]  At a meeting in October 2008, Merkin suggested NYU

invest directly with Madoff, but acknowledged that the fact that BLMIS cleared its own trades

was a "significant negative."[35]  Surh informed Merkin that the lack of a third-party administrator

"would be a non-starter."[36]  Merkin never disclosed to NYU the fact that it was already invested

with BLMIS through Ariel.[37]  After the exposure of Madoff's fraud in December 2008, Surh and

her supervisor were on a call with Merkin in which they expressed surprise and disappointment

at the news of Ariel's undisclosed exposure to BLMIS.[38]

### III.   THE TESTIMONY IS ADMISSIBLE BECAUSE IT SUPPORTS THE WITNESSES' CREDIBILITY

Testimony related to whether certain investors were misled with respect to Ariel's and

Gabriel's exposure to BLMIS also is admissible because it relates to the credibility of these

witnesses.  "Credibility of a witness is always critical in assessing the probative force of a

testimonial line of proof and thus of the probability of the truth of the material proposition.

Questions of credibility are therefore basically governed by Rules 401 to 403 of the Federal

Rules of Evidence."  *United States v. Obayagbona*, 627 F. Supp. 329, 336 (E.D.N.Y. 1985)

(citations omitted).  "The relevancy of testimony which aids in the [fact-finder's] determination

of a party's credibility and veracity has been repeatedly affirmed."  *Lewis v. Baker*, 526 F.2d

470, 475 (2d Cir. 1975).

Ehrenkranz, Nash, Orchard, Smith, and Surh are all sophisticated investors.  Their

methods for determining an appropriate investment, understanding of the industry, investment

---

[34] *Id.* 33:19–35:7, 37:24–38:10, 40:1–21.

[35] *Id.* 43:25–45:18.

[36] *Id.*

[37] *Id.* 48:7–16.

[38] *Id.* 62:4–63:4, 70:15–22.

decisions, firsthand interactions with Defendants, and reactions to Ariel's and Gabriel's BLMIS

exposure based on information from Defendants are all relevant to assessing their credibility and

should be presented to the Court at trial.  Ehrenkranz, Nash, and Surh told Merkin that they were

uncomfortable with an investment with BLMIS.[39]  Ehrenkranz was concerned about the lack of

independent verification and the consistency of BLMIS's returns, while Nash told Merkin that as

a fiduciary, he could not invest in BLMIS.[40]  Surh told Merkin that an investment with BLMIS

was a non-starter.[41]  Yet, they all maintained investments in Ariel and/or Gabriel because

Defendants—in the face of concerns and questions raised by those investors and others—refused

or failed to disclose or misrepresented Ariel's and Gabriel's exposure to BLMIS.

## IV.    THE TESTIMONY IS ADMISSIBLE BECAUSE IT CONCERNS MERKIN'S CREDIBILITY

Defendants also mistakenly suggest that the Trustee is seeking to offer impermissible

character evidence of Merkin, which is prohibited under Fed. R. Evid. 404(a)(1).  Merkin has

repeatedly stated that he arranged for his investors to meet with Madoff as part of his due

diligence and has argued that he was transparent regarding his relationship with BLMIS.  The

testimony of Ehrenkranz, Smith, Nash, Orchard, and Surh will directly rebut Merkin's testimony

on this point.  This is not character evidence, but rather relevant evidence that goes to the

credibility of Merkin's statements that he was transparent.  *See Altman v. New Rochelle Pub.*

*Sch. Dist.*, No. 13 Civ. 3253 (NSR), 2017 WL 66326, *7–9 (S.D.N.Y. Jan. 6, 2017) (holding

evidence questioning the plaintiff's credibility admissible); *Lewis*, 526 F.2d at 475 ("Although an

opponent is not permitted to adduce extrinsic evidence that a party lied on a previous occasion,

he may nonetheless ask questions to that end.").

---

[39] Ehrenkranz Dep. 55:13–25; Nash Dep. 50:21–51:19; Surh Dep. 43:25–45:18.

[40] Ehrenkranz Dep. 55:13–25; Nash Dep. 50:21–51:19.

[41] Surh Dep. 43:25–45:18.

## V.    THE COURT SHOULD DETERMINE AT TRIAL WHETHER THE CHALLENGED EVIDENCE IS RELEVANT TO THE ISSUE OF WILLFUL BLINDNESS

Contrary to Defendants' arguments, the evidence they seek to exclude is directly relevant to the central issue in this action—whether Defendants were willfully blind to facts suggesting a high probability of fraud.  The willful blindness inquiry asks whether an individual took deliberate steps to avoid confirming a fact after learning that there was a high probability that such fact was true.  *See SIPC v. BLMIS (In re BLMIS)*, 516 B.R. 18, 24 (S.D.N.Y.  2014).at 24 (citing *Picard v. Greiff,* 476 B.R. 715, 723 (S.D.N.Y. 2012)).  A lack of "good faith" requires showing that Defendants either intentionally [chose] to blind [themselves] to the 'red flags' that suggest a high probability of fraud," or acted with 'willful blindness' to the truth."  *Picard v. Katz,* 462 B.R. 447, 455 (S.D.N.Y. 2011) (quoting *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)).

Merkin deliberately avoided disclosing or mispresented to investors like Ehrenkranz and Nash that both Ariel and Gabriel had exposure to BLMIS.  Both of these investors previously told Merkin that they did not want to invest directly with BLMIS because of numerous red flags, including the consistency of BLMIS's returns and self-clearing.  Further, despite Merkin sharing his concern that Ascot Partners might lack scalability with Orchard and Smith, Merkin failed to disclose Ariel's or Gabriel's exposure to BLMIS to either of these investors.  And, despite being told that BLMIS's lack of a third-party administrator was a non-starter, Merkin failed to advise Surh that NYU was already invested with BLMIS.

As the fact-finder, this Court should hear testimony that will allow it to draw the inference that Defendants' deliberate actions reflect that they were aware of facts suggesting a high probability of fraud at BLMIS and that they intentionally failed to disclose Ariel's and Gabriel's exposure to BLMIS to avoid additional due diligence or confirmation that BLMIS was

10

in fact a fraud.  The testimonies of investors of Ariel and Gabriel are relevant and probative to

this issue, and therefore admissible.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order

denying Defendants' motion *in limine* to exclude the testimony and exhibits related to whether

investors were misled with respect to Gabriel and Ariel's exposure to BLMIS.


Dated:   May 10, 2017              **BAKER & HOSTETLER LLP**
         New York, New York

                                   */s/ David J. Sheehan*
                                   45 Rockefeller Plaza
                                   New York, New York 10111
                                   Telephone: (212) 589-4200
                                   Facsimile:  (212) 589-4201
                                   David J. Sheehan
                                   Email: dsheehan@bakerlaw.com
                                   Lan Hoang
                                   Email: lhoang@bakerlaw.com
                                   Brian W. Song
                                   Email: bsong@bakerlaw.com

                                   *Attorneys for Irving H. Picard, Trustee for the*
                                   *Substantively Consolidated SIPA Liquidation of*
                                   *Bernard L. Madoff Investment Securities LLC and*
                                   *the Chapter 7 Estate of Bernard L. Madoff*