**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01182 (SMB) |
| Plaintiff, | |
| v. | |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE OTHERS'**
**PURPORTED SUSPICIONS ABOUT MADOFF NOT EXPRESSED TO DEFENDANTS**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .........................................................................................................................3

    I.    DEFENDANTS' UNDEFINED AND VAGUE REQUEST TO
         PRECLUDE THE TESTIMONY OF "OTHERS' BELIEFS"
         SHOULD BE DENIED ...............................................................................3

    II.   THE TESTIMONIES OF ██████████████ AND NOREEN
         HARRINGTON ARE ADMISSIBLE BECAUSE THEY ARE
         RELEVANT TO AND PROBATIVE OF WHETHER
         DEFENDANTS WERE WILLFULLY BLIND TO FACTS
         SUGGESTING A HIGH PROBABILITY OF FRAUD AT BLMIS......................4

         A.   ██████████ ...................................................................................5

         B.   Noreen Harrington .......................................................................7

    III.  THE PROBATIVE VALUE OF THE TESTIMONY AT ISSUE
         OUTWEIGHS ANY RISK OF PREJUDICE.........................................................9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*,
   No. 94 Civ. 5220(AJP), 1998 WL 665138 (S.D.N.Y. Sept. 25, 1998).......................................4

*Contreras v. Artus*,
   778 F.3d 97 (2d Cir. 2015)..........................................................................................................4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)....................................................................................................................5

*New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*,
   187 F. Supp. 3d 476 (S.D.N.Y. 2016).........................................................................................3

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011).....................................................................................................5

*Picard v. Merkin*,
   563 B.R. 737 (Bankr. S.D.N.Y. 2017).........................................................................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re BLMIS)*,
   516 B.R. 18 (S.D.N.Y. 2014)......................................................................................................5

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008)....................................................................................................................4

*Torres v. Fisher*,
   No. 06-CV-6579 SLT VVP, 2010 WL 1338088 (S.D.N.Y. Mar. 31, 2010)...........................9

*United States v. Gupta*,
   747 F.3d 111 (2d Cir. 2014).......................................................................................................4

*United States v. Payton*,
   159 F.3d 49 (2d Cir. 1998).........................................................................................................4

*Universe Antiques, Inc. v. Vareika*,
   No. 10 Civ. 3629, 2011 WL 5117057 (S.D.N.Y. Oct. 21, 2011) .............................................9

*Wechsler v. Hunt Health Sys., Ltd.*,
   381 F. Supp. 2d 135 (S.D.N.Y. 2005)........................................................................................3

*Weiss v. La Suisse, Société D'Assurances Sur La Vie*,
   293 F. Supp. 2d 397 (S.D.N.Y. 2003)........................................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

11 U.S.C. § 548(a)(1)...................................................................................................................5

11 U.S.C. § 548(c) ......................................................................................................................5

11 U.S.C. § 550(a) ......................................................................................................................5

11 U.S.C. § 550(b) ......................................................................................................................5

15 U.S.C. § 78aaa *et seq.* ............................................................................................................1

**Rules**

Fed. R. Evid. 401 .......................................................................................................................4

Fed. R. Evid. 403 .......................................................................................................................9

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang

("Hoang Opp'n Decl.") in opposition to Defendants' Motion *In Limine* to Exclude Others'

Purported Suspicions About Madoff Not Expressed to Defendants.  For the reasons set forth

herein, Defendants' motion should be denied.[1]

## PRELIMINARY STATEMENT

The central issue in this avoidance action is whether Defendants were willfully blind to

facts suggesting a high probability of fraud at BLMIS.  The Trustee is prepared to present

evidence and testimony at trial that from the early 1990s, Merkin was warned that BLMIS could

be a Ponzi scheme and that Madoff's self-clearing of trades could be an opportunity for fraud.[2]

Merkin also discussed with prospective investors, investors, and Madoff himself the implausible

consistency of BLMIS's returns, the lack of clarity regarding how Madoff earned those returns,

and BLMIS's lack of a qualified and capable auditor.[3]  Merkin knew that these issues with

BLMIS would be unpalatable to some investors of Gabriel Capital, L.P., Ariel Fund Ltd., Ascot

Partners, L.P. ("Ascot Partners"), and/or Ascot Fund Ltd. (the "Merkin Funds").[4]  At times,

Merkin concealed the Merkin Funds' relationship with BLMIS from investors entirely.[5]  At other

---

[1] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P., and Ascot Fund Ltd. are referred to herein as Defendants.

[2] Trustee's Response to Defendants' Joint Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 ("Tr. Resp. to Def. JSOMF") ¶¶ 173, 198–99, 200, 203, ECF No. 292.

[3] *Id*. ¶¶ 125, 138, 176.

[4] Trustee's Statement of Additional Material Facts Pursuant to Local Bankruptcy Rule 7056-1 ("Tr. SOAMF") ¶¶ 151–52, 195, 199, ECF No. 298.

[5] *Id.* ¶¶ 151–52, 158, 166, 195, 199.

times, Merkin led investors to believe that BLMIS merely served as the executing broker.[6]  And

at yet other times, Merkin led investors to believe that Merkin himself, not Madoff, was

executing the trades.[7]

Now, Defendants ask this Court to preclude evidence that directly concerns the central

issue of willful blindness.  They first seek to exclude unidentified and vague evidence of "others'

beliefs" and then the wholesale testimony of Mr. ███████████ and Ms. Noreen Harrington.

This indiscriminate tactic is intended to preclude relevant evidence of firsthand interactions of

witnesses with Merkin concerning Madoff and investments with BLMIS, what information

Merkin provided or failed to provide, and the conclusions these witnesses drew based on their

discussions with Merkin.  Specifically, Defendants' motion is intended to preclude evidence that

Merkin acted as a gatekeeper to Madoff, selectively choosing which investors or prospective

investors he would allow to meet with Madoff, and that investors drew their own conclusions

that Madoff was engaging in fraud based directly on Merkin's representations, insufficient

explanations, and omissions of information.  These witnesses did not have to directly express

their conclusions to Merkin to make their testimony relevant: their testimony regarding what

Merkin told them, the impressions they formed based on the information Merkin provided, and

the information they provided to Merkin is relevant and probative of whether Defendants,

holding the very same information that Merkin gave to or discussed with these witnesses, were

aware of facts suggesting a high probability of fraud at BLMIS.  Accordingly, Defendants'

motion should be denied.

---

[6] Tr. Resp. to Def. JSOMF ¶¶ 144, 151–52; Tr. SOAMF ¶ 165.

[7] Tr. SOAMF ¶¶ 183–86.

**ARGUMENT**

In their motion, Defendants vaguely refer to a "number of individuals" and "others'

beliefs," and then only name two witnesses—Mr. ██████ and Ms. Harrington.  To the extent

that Defendants seek generalized exclusion of testimony of "others' beliefs," their request should

be denied for lack of the necessary specificity for the Court's proper consideration.  To the extent

that Defendants seek the wholesale exclusion of Mr. ██████ and Ms. Harrington's

testimonies, the request should likewise be denied because these witnesses will offer testimony

concerning their firsthand interactions with Merkin.

## I.     DEFENDANTS' UNDEFINED AND VAGUE REQUEST TO PRECLUDE THE TESTIMONY OF "OTHERS' BELIEFS" SHOULD BE DENIED

Defendants move to exclude any evidence of "others' beliefs" as to the fraud at BLMIS.

Specifically, Defendants contend that "[t]he Trustee has identified as trial witnesses a number of

individuals who now claim that they suspected that Madoff was creating some type of fictitious

returns or otherwise engaged in fraud or misconduct," and that such evidence is not relevant

because "others' beliefs" are not within the subjective knowledge of Defendants.  However, this

category—"others' beliefs"—is overly broad and vague, and does not identify for the Court (or

the Trustee) the specific evidence or testimony sought to be excluded.  Thus, Defendants' motion

is too sweeping in scope and must be denied.  *See New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*,

187 F. Supp. 3d 476, 478 (S.D.N.Y. 2016) ("The purpose of *in limine* motions is to enable the

Court to rule on disputes over the admissibility of discrete items of evidence."); *see also*

*Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 150–51 (S.D.N.Y. 2005) (holding that

where defendants do not specify the evidence of settlements they seek to preclude, "no certain

forecasted evidence presents itself here for a ruling *in limine*"); *Weiss v. La Suisse, Société*

*D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 407–08 (S.D.N.Y. 2003) (denying defendant's

3

motion *in limine*, which sought to exclude evidence regarding "other policy holders," due to lack

of specificity with respect to the particular documents or testimony to be excluded); *Baxter*

*Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220(AJP), 1998 WL 665138, at *3

(S.D.N.Y. Sept. 25, 1998) (denying overly broad motions *in limine* seeking to "exclude all

evidence of [plaintiff's] financial condition" and to preclude plaintiff from presenting evidence

on punitive damages (internal quotation marks omitted)).

**II.   THE TESTIMONIES OF** ███████████ **AND NOREEN HARRINGTON ARE ADMISSIBLE BECAUSE THEY ARE RELEVANT TO AND PROBATIVE OF WHETHER DEFENDANTS WERE WILLFULLY BLIND TO FACTS SUGGESTING A HIGH PROBABILITY OF FRAUD AT BLMIS**

A trial court has broad discretion to determine the relevance of evidence and to exclude

irrelevant information. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008);

*United States v. Gupta*, 747 F.3d 111, 137 (2d Cir. 2014). Evidence is relevant under Fed. R.

Evid. 401 if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401. This two-factor test aids a court's determination as to whether the evidence

"possesses sufficient probative value to justify receiving it in evidence." Fed. R. Evid. 401

advisory committee's note; *see, e.g.*, *Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015).

Evidence has probative value under Fed. R. Evid. 401 if it "tends to prove or to disprove a fact in

issue." *United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998).

Here, the Trustee seeks, *inter alia*, to avoid and recover withdrawals made within two

years of the filing date from BLMIS to Ascot Partners' BLMIS account in the amount of

$280,000,000, as intentional fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1).[8] Such

---

[8] Third Am. Compl., Aug. 30, 2013, ECF No. 151.

4

claims are subject to a defense to the extent that the transferee took "for value and in good faith."

11 U.S.C. § 548(c). [9]  Here, as Ascot Partners gave "value," the central issue is whether Ascot

Partners took the transfers in "good faith." *Picard v. Merkin*, 563 B.R. 737, 748–49 (Bankr.

S.D.N.Y. 2017); *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011).  In the context of a SIPA

case, the District Court has found that "'good faith' means that the transferee neither had actual

knowledge of the [BLMIS] fraud nor willfully blinded himself to circumstances indicating a high

probability of such fraud." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re BLMIS)*,

516 B.R. 18, 23 (S.D.N.Y. 2014); *see also Merkin*, 563 B.R. at 743; *Global-Tech Appliances,*

*Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  The firsthand interactions that Mr. ▮▮▮▮ and Ms.

Harrington had with Merkin—their discussions, the representations made by Merkin, the

information Merkin provided, and the information they provided to Merkin—are relevant to and

probative of whether Defendants purposefully avoided asking questions in the face of evidence

of fraud at BLMIS.

    **A.**   ▮▮▮▮▮▮▮▮

    Mr. ▮▮▮▮ testimony concerns what he learned directly from firsthand interactions

with Merkin while conducting due diligence on Merkin and BLMIS.  Mr. ▮▮▮▮ prepared a

list of questions and concerns about BLMIS to be discussed with Merkin.[10]  For example, Mr.

▮▮▮▮ was concerned that it was difficult for Merkin to justify the significant volume in

stocks, options, and treasuries.[11]  In response to questions concerning such significant volumes,

Merkin responded: "I have come to accept there are things that I don't understand."[12]

---

[9] The Trustee seeks to recover subsequent transfers against Merkin, GCC, and Ascot Fund Ltd. under 11 U.S.C.
§ 550(a)(1) and (2), and any defense of good faith by those defendants falls under 11 U.S.C. § 550(b).

[10] Hoang Opp'n Decl., Ex. 2 (Deposition of ▮▮▮▮ dated Nov. 22, 2013 ("▮▮▮▮ Dep.")) 30:5–20.

[11] *Id.* 73:22–74:1.

[12] *Id.* 46:3–7.

Mr. ████ was also concerned that Merkin had access to Madoff, but that Merkin did not have answers to his questions about BLMIS. Merkin speculated that Madoff was "the equivalent of a super specialist who profits on trades and prop book."[13] When Mr. ████ looked at the "prop book," he saw that Madoff had "virtually no overnight exposure in his book," something Mr. ████ found "shocking."[14] When testifying about the size of BLMIS options trades, Mr. ████ voiced discomfort with Merkin's lack of understanding:

> Q: Why did it concern you that Mr. Merkin did not have a good explanation for how Madoff executes option trades in such size?
>
> A: Well . . . Mr. Merkin was in a position to know Mr. Madoff much better than us. We were hoping that he would have an explanation.[15]

And when Mr. ████ asked to speak directly with BDO Seidman, Defendants' auditors, in order to gather information Merkin lacked and to highlight the issues of "conflict of interests between confirming investments with the investment manager," Merkin told him "no," without reason.[16]

Most significantly, Mr. ████ heard firsthand about the "Madoff scheme" from Merkin:

> Q: During the June 2003 call did Mr. Merkin speculate that BLMIS may be a Ponzi scheme?
>
> A: Yes.[17]

---

[13] *Id.* 56:23–57:8.

[14] *Id.* 56:18–57:18.

[15] *Id.* 47:8–15.

[16] *Id.* 68:25–69:20.

[17] *Id.* 82:13–16.

It was during this call that Merkin commented that "Charles Ponzi would lose out because it would be called the 'Madoff scheme.'"[18]  Mr. ████ made clear that he did not believe Merkin was being sarcastic when he made a reference to Madoff running a Ponzi scheme.[19]

### B.      Noreen Harrington

Ms. Harrington is an investment professional whose decades-long career includes running Goldman Sachs hedge fund business worldwide, leading the international sales department at Merrill Lynch, and serving as Chief Investment Officer ("CIO") for a private investment firm.  As CIO, Ms. Harrington met with Merkin to conduct due diligence on his funds and to have a "better understanding of his management of the funds."[20]  It was "imperative" to Ms. Harrington, as a fiduciary, that she "understand the investments and the decision-making in a fund and subsequent funds."[21]

In conducting her due diligence, Ms. Harrington sought access to Madoff.  Merkin, acting as gatekeeper to Madoff, refused Ms. Harrington's request for access:

> Mr. Merkin told me that this was a privilege. And first, before he told me it was a privilege, he clearly stated that I didn't get it.  And he stated that sentence again adding a "really," you really don't get it, do you?  And after saying that twice, he said that this was a privilege, you don't get to ask questions. And to that I responded: You don't get it.  I have an -- I have an obligation to my investors to ask these questions.  And might I add, Mr. Merkin, so do you. Shortly after that, the meeting ended.[22]

---

[18] *Id.* 53:18–23.

[19] *Id.* 120:21–122:12.

[20] Hoang Opp'n Decl., Ex. 3 (Deposition of Noreen Harrington dated Oct. 1, 2013 ("Harrington Dep.")) 119:4–11.

[21] *Id.* 132:16–133:2.

[22] *Id.* 130:24–131:15.

7

Ms. Harrington further testified that she did, in fact, voice her concerns directly to

Merkin:

> Q. The concerns that you've talked about that you raised in the investment committee meeting, right, which developed after your meeting with Mr. Merkin and prior to the investment committee meeting, you, Noreen Harrington, never raised any of those concerns to Mr. Merkin, correct?
>
> A. Wrong.
>
> [Objections omitted]
>
> A. That's actually wrong.
>
> Q. Well, when after the meeting with Mr. Merkin did you ever speak to him again?
>
> A. I raised the issues of transparency in the meeting, okay. I raised the issues of giving money to a third party in the meeting, okay. I told him for us to do this investment we had to do our due diligence, and I laid out a process, okay. His response to me is this is a privilege; I don't get to ask questions.
>
> You can almost forget all the work that we did, you can almost forget it, okay, because we -- in my opinion as a fiduciary, we had non-transparency, we had a feeder and we had a process which was truncated at the end of one meeting.
>
> So, therefore, I probably didn't even need to do any work. I did work to try and substantiate the accusation in the end that I levered.[23]

Ms. Harrington's testimony goes to the crux of willful blindness—Merkin's repeated decision to

ignore questions and concerns about Madoff and Merkin's attempts to prevent third parties from

conducting adequate due diligence on BLMIS.

In sum, it is clear that Mr. ▮▮▮▮ and Ms. Harrington both testified that they discussed

their concerns about BLMIS and Madoff with Merkin.  Ms. Harrington's and Mr. ▮▮▮▮

concerns, inquiries, and their conclusions of fraud at BLMIS were based on information known

---

[23] *Id.* 213:7–214:10.

8

to and provided to them by Merkin.  When directly asked if Mr. ██████ conversations with

Merkin strengthened his conviction that "BLMIS was engaged in fraudulent activity," Mr.

██████ responded, "Yes."[24]  Ms. Harrington's and Mr. ██████ firsthand interactions with

Merkin are further relevant to the fact that Merkin (and Defendants) had the very same

information, and probative of whether Defendants should have reached the same conclusion.

### III.     THE PROBATIVE VALUE OF THE TESTIMONY AT ISSUE OUTWEIGHS ANY RISK OF PREJUDICE

When determining whether evidence should be admitted under Fed. R. Evid. 403, the

Court must determine whether the probative value of the evidence at issue is substantially

outweighed by the risk of prejudice.  Fed. R. Evid. 403.  Here, "the risk of undue prejudice . . . is

'diminished' because this matter is to be tried before the Court and not a jury."  *Universe

Antiques, Inc. v. Vareika*, No. 10 Civ. 3629, 2011 WL 5117057, at *3 (S.D.N.Y. Oct. 21, 2011)

(citing *Torres v. Fisher*, No. 06-CV-6579 SLT VVP, 2010 WL 1338088, at *3 (S.D.N.Y. Mar.

31, 2010) ("Since this was a bench trial, there was a diminished risk that admission of the

evidence would have an unduly prejudicial effect on the outcome of the case.")).

The testimonies of Ms. Harrington, Mr. ██████ or any other witness with firsthand

knowledge of the Merkin Fund's investments with BLMIS are relevant to the central issue in this

case—whether Defendants were willfully blind to facts suggesting a high probability of fraud at

BLMIS.  There is little to no risk of prejudice or confusion with this testimony at trial and, thus,

Defendants' request to exclude such testimony should be denied.

---

[24] ██████ Dep. 81:21–82:16.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order

denying the Defendants' Motion *In Limine* to Exclude Others' Purported Suspicions About

Madoff Not Expressed to Defendants.


Dated:   May 10, 2017
         New York, New York

**BAKER & HOSTETLER LLP**

*/s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff*