# Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>Defendants. | Adv. Pro. No. 09-01182 (SMB) |

# Expert Rebuttal Report of Paul K. Meyer

## TM Financial Forensics, LLC

## May 15, 2015

Paul K. Meyer

I.    **INTRODUCTION**............................................................................................................ **2**

A.   Background and Experience ............................................................................................ 2

B.   Retention and Assignment .............................................................................................. 3

C.   Information Considered ................................................................................................... 3

II.   **BACKGROUND** ............................................................................................................ **4**

A.   BLMIS and Irving H. Picard........................................................................................... 4

B.   The Defendant Funds ...................................................................................................... 4

C.   The Collura Report .......................................................................................................... 6

III.  **OPINIONS** .................................................................................................................... **8**

A.   Summary .......................................................................................................................... 8

B.   Analysis of the Timing, Amounts and Purpose of the Withdrawals and Subsequent
Disbursements .................................................................................................................. 8

C.   LIFO And Proportionality Are The Most Appropriate Tracing Methods In These
Circumstances ................................................................................................................ 13

D.   FIFO, LIBR And Restated LIBR Tracing Methods Are Inconsistent With How Ascot
Partners Was Managed ................................................................................................... 14

## I.  INTRODUCTION

### A. Background and Experience

1.    I am a founder and the President of TM Financial Forensics, LLC ("TMF").  TMF is a business, economic, financial and damages consulting company that provides services to government agencies, corporations and counsel.

2.    I am a Certified Public Accountant ("CPA"), Certified Fraud Examiner, Certified in Financial Forensics, Certified Licensing Professional and accredited in business valuation.  I am a Consulting Professor at Stanford University in the Graduate School of Engineering, where I have been teaching courses covering accounting, quantitative methods and financial issues for twenty years.  I am also a member of the Advisory Board for the McIntire School of Commerce at the University of Virginia.  I graduated from the University of Virginia in 1979.  I lecture on accounting, damages, and valuation issues, including at the USC Intellectual Property Institute and schools such as Santa Clara University and Stanford University.

3.    Prior to founding TMF, I was a Managing Director at Navigant Consulting, Inc. ("NCI").  NCI is an international consulting company.  Before joining NCI in February 2004, I was co-founder and President of Tucker Alan Inc.  Tucker Alan Inc. was a business, economic, financial and damages consulting company with approximately 350 employees and 13 offices in the United States.  Prior to founding Tucker Alan Inc. in July 1994, I was employed by Peterson Consulting, an international consulting firm.  At Peterson Consulting, I held various positions including Executive Vice President and Member of the Board of Directors.  Before joining Peterson Consulting in 1981, I worked for an international public accounting and consulting firm.

4.    I have over thirty years of experience consulting on financial, accounting, economic and damages matters and am experienced in the matters related to the scope of my work, analysis and study on this matter.  I have experience in matters involving financial institutions and financial asset management.  I have consulted on many tracing, breach of contract, breach of fiduciary duty, and valuation matters.  I have analyzed hundreds of claims for lost profits, royalties, increased costs, diminution in asset or business value and other financial and economic impacts.  I am a Certified Fraud Examiner and have

significant experience in matters involving tracing, determining the sources and uses of funds, and the allocation of costs, expenses and claims.

5.  My curriculum vitae is included as Attachment 1 to this Report. A listing of cases in which I have testified as an expert witness at trial, arbitration and/or deposition in the last 4 years is included as Attachment 2 to this Report. My hourly billing rate on this matter is $650. I have no publications during the last ten years. TMF's compensation is not dependent on the outcome of this matter. TMF's work on this matter was performed by me or under my supervision.

## B.  Retention and Assignment

6.  Counsel for Bart M. Schwartz, the court-appointed receiver for Ariel Fund Ltd. ("Ariel") and Gabriel Capital, L.P. ("Gabriel") and counsel for Ascot Fund Ltd. ("Ascot Fund") and Ralph Dawson, the court-appointed receiver for Ascot Partners, L.P. ("Ascot Partners") retained TMF to review certain analyses and opinions set forth in the Expert Report of Lisa M. Collura dated March 20, 2015 ("the Collura Report").[1]

7.  Specifically, TMF was asked to review Ms. Collura's analysis of withdrawals by Ascot Partners from Bernard L. Madoff Investment Securities LLC ("BLMIS") and the subsequent disbursements to Ascot Fund, Ariel and Gabriel. Additionally, TMF was asked to determine if any particular tracing method was appropriate for identifying the amount of the alleged "Subsequent Transfers" identified by Ms. Collura.

## C.  Information Considered

8.  **Attachment 3** to this Rebuttal Report contains a listing of various documents and information considered in this matter. Selected pages of the documents and information listed on **Attachment 3** may be used as exhibits. Additionally, I may prepare graphical or illustrative exhibits to use at trial based on the documents and information relied upon and our analysis of those documents and information.

9.  The opinions and analyses in this Rebuttal Report are based on currently available documents and information. Accordingly, if additional information becomes available, I may supplement and amend my opinions.

---

[1] The Collura Report.

10.    TMF received and executed a copy of the protective order in this matter.  Some of the documents considered have been designated as "CONFIDENTIAL MATERIAL." Accordingly, I understand that portions of this Report and Attachments may be designated as "CONFIDENTIAL MATERIAL."

## II.    BACKGROUND

### A.  BLMIS and Irving H. Picard

11.    BLMIS was founded by Bernard Madoff in 1960 and became a limited liability company in the State of New York in 2001.[2]  BLMIS operated two business units – investment advisory and market making and proprietary trading.[3]  Through BLMIS, Mr. Madoff purported to invest funds on behalf of customers in various stocks in the S&P 100.[4]  However, Mr. Madoff was operating a Ponzi scheme through BLMIS.[5]  He was arrested on December 11, 2008, the BLMIS funds were frozen, and Irving H. Picard, Esq. was appointed the Trustee for BLMIS.[6]

### B.  The Defendant Funds

12.    *Ascot Partners*: Ascot Partners is a limited partnership formed in 1992.[7]  Mr. Merkin was the general partner for the fund.[8]  Ascot Partners had an account with BLMIS, and invested all or a majority of its assets with BLMIS since 1993.[9]  Ascot Partners paid a management fee to Mr. Merkin, which I understand was paid into Gabriel Capital Corporation ("GCC") for most years.[10]

13.    *Ascot Fund*: Ascot Fund is a Cayman Islands corporation formed in 1992.[11]  Ascot Fund opened an account with BLMIS in January 1992, and invested all or a majority of its

---

[2] Third Amended Complaint, August 30, 2013: p. 7.
[3] Third Amended Complaint, August 30, 2013: p. 7.
[4] Third Amended Complaint, August 30, 2013: pp. 7-8.
[5] Third Amended Complaint, August 30, 2013: p. 9.
[6] Memorandum Decision Granting In Part and Denying In Part Defendants' Motion to Dismiss, August 12, 2014: p. 3.
[7] Third Amended Complaint, August 30, 2013: p. 13; Deposition of J. Ezra Merkin, February 24, 2015: Exhibit 366.
[8] Third Amended Complaint, August 30, 2013: p. 13.
[9] Third Amended Complaint, August 30, 2013: pp. 13, 15.
[10] Deposition of Michael Autera, October 22, 2014: pp. 38-40.
[11] Third Amended Complaint, August 30, 2013: p. 13.

assets with BLMIS.[12]    In 2003, Ascot Fund invested all of its capital with Ascot Partners, becoming the largest limited partner of Ascot Partners.[13]   At that time, Ascot Fund closed its account with BLMIS.[14]

14.    *Ariel*: Ariel was formed by Mr. Merkin in December 1988, and served as a fund for foreign investors, non-profit organizations and others.[15]   Ariel maintained an account with BLMIS, investing a portion of its assets in BLMIS from 2000 to 2008.[16]   Ariel paid GCC, its investment advisor, a management fee and deferred the payment of incentive fees.[17]

15.    *Gabriel:* Gabriel was formed by Mr. Merkin around 1989 and served as a fund for U.S. investors.[18]   Gabriel maintained an account with BLMIS, investing a portion of its assets in BLMIS from 2000 to 2008.[19]   Merkin served as the managing partner for Gabriel.[20]   Gabriel paid management fees and incentive fees to Mr. Merkin.[21]

16.    In this Rebuttal Report, I refer to Ascot Partners, Ascot Fund, Ariel and Gabriel collectively as the Defendant Funds.

17.    *GCC:* GCC was incorporated in 1988 as Ariel Management Corporation, later changing its name to GCC in 1998.[22]    GCC was the investment advisor to certain of the Defendant Funds.[23]   Additionally, GCC incurred expenses on behalf of the Defendant Funds, and as a result, allocated to each of the Defendant Funds the overhead of its office, which included employee compensation, rent, research, communication, quotation and other miscellaneous office expenses.[24]   Additionally, GCC could charge a

---

[12] Third Amended Complaint, August 30, 2013: p. 15.
[13] Third Amended Complaint, August 30, 2013: p. 14; Deposition of J. Ezra Merkin, February 24, 2015: p. 277.
[14] Third Amended Complaint, August 30, 2013: p. 14.
[15] Third Amended Complaint, August 30, 2013: p. 12.
[16] Third Amended Complaint, August 30, 2013: pp. 12, 14.
[17] Deposition of Michael Autera, October 22, 2014: pp. 30-31; Deposition of J. Ezra Merkin, February 24, 2015: pp. 127-128.
[18] Third Amended Complaint, August 30, 2013: p. 12.
[19] Third Amended Complaint, August 30, 2013: pp. 12, 14.
[20] Deposition of J. Ezra Merkin, February 24, 2015: pp. 127-128.
[21] Deposition of Michael Autera, October 22, 2014: p. 32-33.
[22] Third Amended Complaint, August 30, 2013: p. 12.
[23] Deposition of Michael Autera, October 22, 2014: pp. 30-31; Deposition of J. Ezra Merkin, February 24, 2015: pp. 127-128.
[24] Deposition of Michael Autera, October 22, 2014: pp. 36-37, 39-40, 42-44.

Defendant Fund for direct expense reimbursement, such as legal expenses or an auditing bill.[25]

### C. The Collura Report

18. Lisa M. Collura submitted her expert report in this matter on March 20, 2015.[26]  Ms. Collura's opinions and findings include the following: (1) 99% of all BLMIS customer statements reconciled to available BLMIS bank statements from December 1998 to December 2008; (2) cash deposits and withdrawal transactions reflected on the BLMIS customer statements for the Defendant Funds between January 1992 and December 2008 reconciled to available BLMIS bank records and/or documents and data produced by the Defendant Funds; (3)  withdrawals of BLMIS funds from December 1998 to December 2008 can be traced to bank accounts held by the Defendant Funds; and (4) there were sources of funds other than from BLMIS in the five bank accounts held by Defendants.[27]

19. Ms. Collura identified the following withdrawals from BLMIS to Defendant Funds during the period December 11, 2006 through February 28, 2009 ("the Two Year Period").

**Table 1:  BLMIS Withdrawals During the Two Year Period[28]**

| Date | Amount | Transferred To: |
|------|--------|-----------------|
| 12/29/06 | $10,000,000 | Ascot Partners |
| 12/31/07 | $175,000,000 | Ascot Partners |
| 7/2/08 | $50,000,000 | Ascot Partners |
| 7/7/08 | $16,200,000 | Ariel |
| 7/7/08 | $17,400,000 | Gabriel |
| 10/1/08 | $45,000,000 | Ascot Partners |

20. Additionally, Ms. Collura stated that she understands "from counsel to the Trustee that there are several tracing methods available within the court's discretion to trace funds through commingled bank accounts."[29]  Ms. Collura stated that she "was directed by

---

[25] Deposition of Michael Autera, October 22, 2014: pp. 36-37, 39-40, 42-44.

[26] The Collura Report.

[27] The Collura Report: pp. 6-9.

[28] The Collura Report: Exhibit 7.

[29] The Collura Report: p. 5.

counsel to the Trustee to review and apply" five tracing methods to identify alleged Subsequent Transfers of BLMIS Funds: (1) Last In, First Out ("LIFO"); (2) First In, First, Out ("FIFO"); (3) Lowest Intermediate Balance Rule ("LIBR"); (4) Restated Tracing Rules ("Restated LIBR"); and (5) Proportionality.[30] Ms. Collura assumed the withdrawals by Ariel and Gabriel from their respective BLMIS accounts were used to fund negative bank account balances that existed at the time of the withdrawal, and therefore only applied the tracing methods to withdrawals by Ascot Partners.[31]

21.  Ms. Collura identified the following alleged Subsequent Transfers for the Two Year Period based on the five tracing method.[32]

### Table 2: Ms. Collura Identified Alleged Subsequent Transfers For The Two Year Period[33]

| Defendant | Tracing Methods | | | | |
|---|---|---|---|---|---|
| | LIFO | FIFO | LIBR | Restated LIBR | Proportionality |
| Ascot Fund | $21,081,296 | $33,365,000 | $29,064,189 | $33,365,000 | $25,984,614 |
| Ariel | $0 | $0 | $0 | $0 | $0 |
| Gabriel | $0 | $0 | $0 | $0 | $0 |
| GCC | 11,405,779 | 12,051,196 | 9,356,021 | 17,756,812 | 11,546,306 |
| Total | $32,487,075 | $45,416,196 | $38,420,211 | $51,121,812 | $37,530,921 |

---

[30] The Collura Report: pp. 5-6.
[31] The Collura Report: p. 30. As indicated on **Table 1** above, Ms. Collura did not identify any withdrawals from BLMIS to Ascot Fund.
[32] I understand that Ms. Collura additionally identified alleged Subsequent Transfers for the period December 2003 through present. I understand, however, that the Court has dismissed all claims based upon transfers that occurred more than two years prior to December 11, 2008. *See*, The Collura Report: p. 8; Memorandum Decision Granting in Part and Denying in Part Defendants' Motions to Dismiss, August 12, 2014: pp. 25, 51.
[33] The Collura Report: Exhibit 13.

III.    **OPINIONS**

### A. Summary

22.    As stated above, I was asked by counsel to review Ms. Collura's identification of the withdrawals by Ascot Partners and alleged subsequent disbursements to the Gabriel, Ariel and Ascot Fund based on her five tracing methodologies.  Based on the results shown in **Table 2** above, Ms. Collura did not attribute any alleged Subsequent Transfers to Gabriel and Ariel for the Two Year Period.  I have confirmed that using the tracing methods employed by Ms. Collura, there were no Subsequent Transfers to Gabriel and Ariel for the Two Year Period.  Additionally, Ms. Collura did not identify any alleged Subsequent Transfers to Ascot Partners for the Two Year Period or for the longer period examined by Ms. Collura.

23.    As described in **Section B** below, my analysis indicates that Ascot Partners withdrew funds from BLMIS at the end or beginning of a quarter, when Ascot Partners had an immediate and specific cash need to meet redemption requests made by investors of Ascot Partners, and pay management fees to GCC.  My analysis also indicates that during those same periods, Ascot Partners transferred funds to Ascot Fund when Ascot Fund had an immediate and specific cash need to meet redemption requests by Ascot Fund investors.

24.    As explained in **Section C** below, my analysis of the amounts, timing and purpose of the withdrawals from BLMIS, and subsequent disbursements, indicates that LIFO and Proportionality are the most appropriate tracing methods for the identification of alleged Subsequent Transfers in these circumstances.  As explained in **Section D** below, the FIFO, LIBR and Restated LIBR tracing methods are inconsistent with how Ascot Partners was managed and, therefore, are not appropriate for this matter.

### B. Analysis of the Timing, Amounts and Purpose of the Withdrawals and Subsequent Disbursements

25.    For purposes of determining whether a particular tracing method is more appropriate for identifying the amount of alleged Subsequent Transfers in the Two Year Period, I analyzed the timing, amounts, and purpose of both the withdrawals from BLMIS to Ascot Partners, and the subsequent disbursements of funds by Ascot Partners.  For

purposes of this analysis, I reviewed documents including: capital activity spreadsheets prepared by Mr. Michael Autera, CFO of GCC; QuickBooks files of the Defendant Funds; transactional data; bank statements; and deposition testimony. While my scope was to determine if any particular tracing methodology was more relevant for the Two Year Period, I reviewed the activity of Ascot Partners going back to 2003 to determine if the timing and purpose of the withdrawals from BLMIS by Ascot Partners and the subsequent disbursement of funds by Ascot Partners were consistent over a longer time period, and to observe any patterns.[34]

26.    _Analysis of Ascot Partners Withdrawals from BLMIS:_    I understand that Ascot Partners, as well as the other Defendant Funds, had written provisions that specified the terms and timing for when investors could contribute money to, or redeem money from, Ascot Partners.[35]    Ascot Partners, as well as some of the other Defendant Funds, generally allowed contributions and redemptions to occur at the end or beginning of each quarter ("break period").[36]    Additionally, Ascot Partners generally paid its management fee to GCC at the end of each year, which coincided with a break period that occurred in the fourth quarter.[37]    Ascot Partners primary brokerage account at Morgan Stanley that would receive and disburse investor contributions and redemptions, as well as pay GCC management fees, was account number xxx-x3021 ("Ascot Partners' Morgan Stanley Account").[38]    To the extent Ascot Partners had investor redemption and management fee obligations that exceeded expected investor contributions and the existing balance in the Ascot Partners' Morgan Stanley Account, Ascot Partners would have a cash requirement.

27.    Mr. Autera, CFO of GCC, maintained spreadsheets that assessed potential cash requirements of the Defendant Funds during the break periods ("Capital Activity Spreadsheets").[39]    The Capital Activity Spreadsheets included expected cash inflows

---

[34] **Attachment 4.**
[35] Deposition of Michael Autera, October 22, 2014: pp. 161-162; Mr. Merkin testified that he always received from BLMIS amounts requested to be withdrawn.  Deposition of J. Ezra Merkin, February 24, 2015: pp. 216-217.
[36] Deposition of Michael Autera, October 22, 2014: pp. 151-153, 161.
[37] Deposition of Michael Autera, October 23, 2014: pp. 226-227.
[38] See for example, MSYSAF0001128-MSYSAF1485.
[39] Deposition of Michael Autera, October 22, 2014: pp. 20, 201-203.  For example, see Capital Activity Spreadsheet, January 1, 2007: GCC-P 0114356.

(investor contributions) and outflows (investor redemptions and GCC management fees).[40]  When Mr. Autera received a request from an investor for a redemption or notice of a contribution, or if Mr. Autera anticipated a request for a redemption or contribution, he would enter that information into the Capital Activity Spreadsheet.[41]   When the redemption or contribution occurred during a break period, the activity would be entered into both QuickBooks as well as the Capital Activity Spreadsheets.[42]

28.  I have identified Capital Activity Spreadsheets from the third quarter of 2003 through the third quarter of 2008.[43]  As an example, I identified a Capital Activity Spreadsheet for the second quarter of 2008, dated July 1, 2008.[44]  Consistent with the testimony of Mr. Autera, the spreadsheet includes expected investor contributions and redemptions for the end of the second quarter of 2008 for the Defendant Funds.[45]  Specifically, the spreadsheet shows that Ascot Partners expected to receive contributions of approximately $9.7 million from 12 investors and expected to pay redemptions to 18 investors of approximately $59.3 million, resulting in a net cash requirement of approximately $49.6 million ($9.7 million - $59.3 million).[46]

29.  As shown on **Attachment 4**, Ascot Partners withdrew funds from BLMIS in the break periods where there was a net cash requirement that could not be met by the pre-existing balance in the Ascot Partners Morgan Stanley Account.[47]  For certain break periods, Ascot Partners would decrease the allocation of funds it held at BLMIS at the same time that Gabriel and/or Ariel would increase the allocation of funds they held at BLMIS.  At times, this would be processed by a transfer from Ascot Partners' BLMIS account (#1-A0058-3) to Gabriel's and/or Ariel's BLMIS account(s) (#1-G0321-3 and #1-FR070-3,

---

[40] Deposition of Michael Autera, October 22, 2014: pp. 201-203.  For example, see Capital Activity Spreadsheet, January 1, 2007: GCC-P 0114356.
[41] Deposition of Michael Autera, October 22, 2014: pp. 203-204, 206.
[42] Deposition of Michael Autera, October 22, 2014: pp. 203-204, 206.
[43] **Attachment 4**.
[44] Capital Activity Spreadsheet, July 1, 2008: GCC-P0116669.
[45] Capital Activity Spreadsheet, July 1, 2008: GCC-P0116669. Additionally, the Capital Activity Spreadsheets for the last quarter of the year include GCC management fees as expected cash outflows.  For example, see Capital Activity Spreadsheet, January 1, 2007: GCC-P 0114356.
[46] Capital Activity Spreadsheet, July 1, 2008: GCC-P0116669.
[47] **Attachment 4.**

CONFIDENTIAL MATERIAL                    **10**

respectively) and a and a corresponding transfer would be made by Gabriel and/or Ariel into Ascot Partners' Morgan Stanley Account.[48]

30.  As summarized in **Table 3** below, the total funds transferred to Ascot Partners from BLMIS, including those processed via Gabriel and Ariel as described in Paragraph 29, are consistent with the total cash requirements of Ascot Partners as indicated on the Capital Activity Spreadsheet for that break period. As such, my analysis confirmed that Ascot Partners historically withdrew BLMIS funds only when there was an immediate need to cover investor redemptions or payment of GCC management fees, even outside of the Two Year Period.[49]

**Table 3: Ascot Partners Identified Net Cash Requirement and Related Inflows from BLMIS or Other Defendant Funds[50]**

| Break Period / Quarter Ending: | Ascot Partners' Cash Requirement | Transfers to Ascot Partners From: | | | Total Transfers to Ascot Partners |
| --- | --- | --- | --- | --- | --- |
| | | BLMIS | Gabriel | Ariel | |
| 2006 Q4 | $62,868,073 | $10,000,000 | $26,500,000 | $18,500,000 | $55,000,000 |
| 2007 Q4 | $182,223,412 | $175,000,000 | - | - | $175,000,000 |
| 2008 Q2 | $49,551,581 | $50,000,000 | - | - | $50,000,000 |
| 2008 Q3 | $45,727,278 | $45,000,000 | - | - | $45,000,000 |

31.  As shown on **Attachments 5.A** to **5.D**, I have summarized the expected capital activity for Ascot Partners from the Capital Activity Spreadsheets, the activity from Ascot Partners' Morgan Stanley Account per Ms. Collura's Exhibit 12, and the transactions from Ascot Partners' QuickBooks for the relevant break periods when Ascot Partners withdrew funds from BLMIS during the Two Year Period.[51] As shown on **Attachments 5.A** to **5.D**, the expected investor redemptions, investor contributions and payment of management fees to GCC identified on the Capital Activity Spreadsheets are generally consistent with the actual deposits and withdrawals from Ascot Partners'

---

[48] For example, on January 4, 2007, Ascot Partners' Morgan Stanley Account received $26,500,000 from Gabriel and $18,500,000 from Ariel. On that same day, Mr. Autera asked Frank DiPascali from Bernard L. Madoff & Co. to credit Gabriel's BLMIS account $26,500,000 from Ascot Partners BLMIS account and credit Ariel's BLMIS account $18,500,000 from Ascot Partners BLMIS account. *See* Deposition of Michael Autera, October 22, 2014: pp. 188-198; Exhibit 285; **Attachment 4**.

[49] **Attachment 4**.

[50] **Attachment 4**.

[51] **Attachments 5.A** to **5.D**.

Morgan Stanley Account and the transaction detail from Ascot Partners' QuickBooks files.

32.  _Analysis of Disbursements from Ascot Partners to Ascot Fund:_ As stated above, in 2003 Ascot Fund became a limited partner of Ascot Partners and invested all of its capital with Ascot Partners.[52]  I understand that to the extent an investor in Ascot Fund wanted to redeem all or a portion of their investment, the funds would be redeemed through Ascot Partners.

33.  Similar to Ascot Partners, Ascot Fund allowed contributions and redemptions to occur during a break period around the end of a quarter.[53]  Also similar to Ascot Partners, Mr. Autera maintained Capital Activity Spreadsheets for Ascot Fund that included expected investor cash contributions and redemptions, and indicated if there was a net cash requirement for a specific break period.[54]

34.  As summarized in **Table 4** below, for the break periods where Ascot Partners withdrew funds from BLMIS, the amount of transfers from Ascot Partners to Ascot Fund are consistent with Ascot Fund's net cash requirement identified for a given break period. Just as Ascot Partners' withdrawal of funds from BLMIS historically occurred only when it had a net cash requirement for investor redemptions and management fees, transfers to Ascot Fund similarly occurred to meet its net cash requirement due to investor redemptions and fees.

**Table 4: Ascot Fund Identified Net Cash Requirement and Related Transfers from Ascot Partners to Ascot Fund during the Two Year Period[55]**

| Break Period / Quarter Ending: | Ascot Fund Net Cash Requirement | Total Transfers to Ascot Fund From Ascot Partners |
|---|---|---|
| 2006 Q4 | $12,949,534 | $12,750,000 |
| 2007 Q4 | $13,824,662 | $13,825,000 |
| 2008 Q2 | $11,031,076 | $11,000,000 |
| 2008 Q3 | $8,396,575 | $8,500,000 |

---

[52] Third Amended Complaint, August 30, 2013: p. 14.
[53] Deposition of Michael Autera, October 22, 2014: pp. 151-153, 161.
[54] Deposition of Michael Autera, October 22, 2014: pp. 201-203.
[55] **Attachment 6.**

35.    As Ascot Fund's net cash requirement would be included as an expected investor redemption in Ascot Partners' Capital Activity Spreadsheet for each break period, Ascot Fund's net cash requirement contributed to the determination of the total amount that Ascot Partners would need to receive from BLMIS included in **Table 3** above. Therefore, a portion of each transfer to Ascot Partners would be subsequently disbursed by Ascot Partners to Ascot Fund in order to pay Ascot Fund's investor redemptions.

### C.  LIFO And Proportionality Are The Most Appropriate Tracing Methods In These Circumstances

36.    As stated above, Ms. Collura identified alleged Subsequent Transfers using five different tracing methods: LIFO; FIFO; LIBR; Restated LIBR and Proportionality.  Ms. Collura stated that she was directed to apply the five different tracing methods, and she did not provide an opinion on the appropriateness of any particular method.

37.    After analyzing the timing, amounts and purpose of the withdrawals from BLMIS by Ascot Partners, and the subsequent disbursements from Ascot Partners following those withdrawals, I have determined that LIFO and Proportionality tracing methods are the most appropriate tracing methods in these circumstances to identify alleged Subsequent Transfers.

38.    The LIFO method is used to assign accounting value to "inventory" sold, and assumes that the last item of "inventory" acquired ("last in") is the first item that is sold ("first out").  The LIFO tracing method in this circumstance dictates that the last funds transferred into Ascot Partners, would be the first funds transferred out of Ascot Partners.  From an accounting perspective, LIFO generally matches an entity's most recent sales transaction with the most recent inventory cost, or as it relates to tracing the flow of funds, the most recent cash disbursements by a fund are matched with the most recent funds transferred in.  The LIFO tracing method is consistent with how Ascot Partners was actually managed.  As described above, Ascot Partners withdrew funds from BLMIS to satisfy a known, immediate and specific need to pay investor redemptions or management fees (including to meet the needs of Ascot Fund investor redemptions) during a specific break period. The LIFO tracing method is consistent with the nature of the transaction activity at issue.

39.    Per Ms. Collura, for the Two Year Period, the LIFO tracing method indicates $21,081,296 in Subsequent Transfers to Ascot Fund and $11,405,779 in Subsequent Transfers to GCC, for a total of $32,487,075 in Subsequent Transfers.[56]

40.    Proportionality is a tracing method used to associate disbursements from an account with funds originating from multiple sources.  In this case, funds in Ascot Partners' Morgan Stanley Account originated from investors, BLMIS, Ariel and Gabriel, as examples.  The Proportionality tracing method assumes that funds transferred out of Ascot Partners would be proportionately taken from the various sources of funds available to Ascot Partners at the time of the transfer.  The Proportionality tracing methodology is appropriate in these circumstances, as Ascot Partners' investor redemptions requirements and management fee payments to GCC were met through a combination of the most recent investor contributions in a break period and transfers from Gabriel and Ariel, in addition to withdrawals from BLMIS.

41.    Per Ms. Collura, for the Two Year Period, the Proportionality tracing method indicates $25,984,614 in Subsequent Transfers to Ascot Fund and $11,546,306 in Subsequent Transfers to GCC, for a total of $37,530,921 in Subsequent Transfers.[57]

## D.  FIFO, LIBR And Restated LIBR Tracing Methods Are Inconsistent With How Ascot Partners Was Managed

42.    The FIFO, LIBR and Restated LIBR tracing methods employed by Ms. Collura are inconsistent with the how Ascot Partners was managed.

43.    The FIFO method is used to assign accounting value to "inventory" sold, and assumes that the first item of "inventory" acquired ("first in") is the first item that is sold ("first out").  Unlike the LIFO method, the FIFO tracing method assumes that the "first funds" transferred into Ascot Partners would be the "first funds" transferred out.  As Ascot Partners withdrew funds from BLMIS, and then immediately transferred the funds out to pay investor redemptions and management fees, a FIFO tracing method is not consistent with how Ascot Partners operated.

---

[56] The Collura Report: Exhibit 13.
[57] The Collura Report: Exhibit 13.

44.    While I understand that LIBR and Restated LIBR are two additional tracing methods that are available to the Court, these tracing methods are not supported by how Ascot Partners operated in practice.  Under the LIBR tracing method, Ms. Collura assumed disbursements from Ascot Partners were first taken from sources of funds other than the BLMIS funds.[58]  Under the Restated LIBR tracing Method, Ms. Collura assumed that "withdrawals from a commingled bank account can be 'marshaled so far as possible in favor of the claimant' (here, the Trustee), and the claimant can 'claim the entire advantage of beneficial withdrawals that can be attributed to the claimant's funds' (*i.e.*, BLMIS funds)."[59]  In other words, Ms. Collura assumed disbursements to non-Defendants were taken from non-BLMIS funds, to the extent available, and disbursements to Defendants were taken from BLMIS funds, to the extent available.[60]

45.    Ascot Partners did not manage its account in a manner that resulted in paying investor redemptions or management fees from any one specific source of funds (e.g., BLMIS funds or investor contributions).  As demonstrated above, Ascot Partners would pay its redemption and management fee obligations through a combination of BLMIS funds and investor contributions.  As such, the LIBR and Restated LIBR tracing methods are inconsistent with how Ascot Partners was managed and not appropriate in these circumstances.

---

[58] The Collura Report: p. 34, Exhibit 12.
[59] The Collura Report: pp. 8, 36, Exhibit 12.  Ms. Collura determined that there was commingling of funds in Ascot Partners Morgan Stanley Account, because there were sources of funds other than from BLMIS.  As stated above, Ascot Partners received funds from investor contributions, as well as funds from BLMIS and/or Gabriel or Ariel to cover cash requirements.  The fact that Ascot Partners received funds from multiple sources is not improper, nor does Ms. Collura allege it is improper.  Additionally, as stated above, for the break periods where Ascot Partners received transfers from Gabriel or Ariel, corresponding transfers would be reflected in Ascot Partners' account at BLMIS to Gabriel or Ariel's account at BLMIS.
[60] The Collura Report: p. 36, Exhibit 12.



**ATTACHMENT 1**

# Paul K. Meyer

Mr. Meyer is President and Co-Founder of TM Financial Forensics, LLC. Mr. Meyer was formerly a Managing Director with Navigant Consulting and co-leader of the national intellectual property practice. Mr. Meyer was the President and co-founder of Tucker Alan. He is a Certified Public Accountant and Certified Fraud Examiner, as well as Accredited in Business Valuation (CPA-ABV). As a Consulting Professor, Mr. Meyer teaches a course at Stanford University's School of Engineering. Additionally, he frequently lectures on damages and valuation issues. Mr. Meyer has over 30 years of experience consulting on financial, accounting, economic and damages matters, as well as significant testimony experience. He has testified in over 200 depositions and approximately 75 trials and major arbitrations, including 35 jury trials.

## Professional Experience

### Economic, Financial Condition, Damage and Valuation Analyses

Analyzed the financial condition of corporations, partnerships and individuals under a variety of circumstances including lost profits claims, business interruption, business valuation, reduced profitability, troubled loan and bankruptcy, insolvency, reorganization, business failures, mergers and acquisitions, and various fraudulent activities.

Analyzed numerous lost profits and "loss of use" claims including economic analyses of past sales, future projections, costs of goods sold, relevant cost allocations, interest rates, and discount rates.

Business analysis and business valuation in a variety of circumstances, including business interruption, lender liability, consumer class action, and other disputes. Industries include: seafood, ship repair, freight and transportation, high technology, aquaculture, biotechnology, oil, automotive repair, wine, automotive sales, computer resellers, restaurants, service, e-commerce, real estate, hospitality and retail, as examples. Such valuations have involved extensive analysis of past operating results, future projections, comparable companies, capitalization multiples and market risk.

Analyzed the variable costs, indirect and overhead costs, and revenues of companies alleging loss of market share and revenue impact. Analyses of product pricing and discount issues including high technology, biotechnology, sporting goods, superstores, and insurance. Financial analyses of companies in industries including pharmaceutical, computer and equipment leasing, semiconductor, retail, maritime, automotive, service, agriculture, e-commerce, e-procurement, manufacturing, and high technology, as examples. Analyses of hotel and resort property financial operations and profitability. Analysis of impact on market of release of new pharmaceutical drug.

Analysis of damages and other financial and economic issues in various class action matters.

Prepared asset, economic benefit and business valuations, including the following:

- Electric and Gas Utility Asset Transfers, Including Intellectual Property

- Real Estate

- Software Development Company and Software

- High Capacity Disk Drive Development Joint Venture

- Wholesale Nursery

- Aquaculture Operation

- Life Sciences/Bio Marker Research

---

**Paul K. Meyer**
President

TM Financial Forensics, LLC
2 Embarcadero Ctr., Suite 2510
San Francisco, CA 94111
Direct: 415.692.6360

**Professional History**

- TM Financial Forensics, LLC 2010 - Present
- Navigant Consulting - 2004 to 2010
- TUCKER ALAN INC. - 1994 to 2004
- Peterson Consulting L.P. & Peterson & Co. - 1981 and 1994
- Arthur Andersen LLP - 1979 to 1981

**Education**

- Bachelor of Science, Commerce: McIntire School of Commerce, University of Virginia, 1979

**Professional Associations and Certifications**

- Consulting Professor at Stanford University, School of Engineering, Department of Civil and Environmental Engineering (1994 – Present)
- Member of Advisory Board, McIntire School of Commerce, University of Virginia
- Certified Public Accountant licensed in Virginia and California
- Certified Fraud Examiner (CFE)
- Accredited in Business Valuation (CPA – ABV)
- Certified Licensing Professional (CLP)
- Member of Licensing Executive Society (LES)

**Recognitions**

- Recipient of "2003 Alumnus of the Year" Award, McIntire School of Commerce
- Wall Street Journal, March 2007

ATTACHMENT 1

- Contract Research Organization

- Hotel Properties

- Environmental Remediation Company/ Environmental Permits

- Concession and Merchandise Contract (Motor Sports)

- Office Equipment Distributor

- E-procurement / E-Commerce

- Freight and Transportation

- Professional Services

- Renewable Waste Water Technology

- Numerous Retail Businesses, Including Restaurants, Major Retailers and Stores

- Numerous Intellectual Properties

**Intellectual Property Consulting, including Licensing and Patent Infringement, Copyright, Trade Secret and Trademark Matters**

Analyzed the impacts due to alleged intellectual property infringements and misappropriation, including patents, trademarks, copyrights, trade secrets, trade dress and confidential information.

Analyzed lost profits related to lost sales, price erosion and convoyed sales. Evaluated and analyzed markets and potential, market share, historical and projected sales, ability to achieve projected sales, company and product profitability, revenue sources and trends, nature of costs and cost allocations, product pricing issues and cost of capital considerations.

Analyzed sales and profits, product features and other factors, production capacity, sales and distribution capacity, capital expenditures and resources required to bring products to market.

Analyzed and investigated licensing and royalty disputes. Investigated reported sales, guaranteed minimums, deductions from revenue such as returns and volume discounts, and compliance with contractual terms.

Analyzed and determined reasonable royalties. Determined reasonable royalties using a hypothetical negotiation approach. Considered cost savings and enhanced earnings related to licensing technology, licensing history and other license agreements, design-around considerations, head start advantages and avoided product development costs. Mr. Meyer has experience in the analysis of the Georgia-Pacific factors to determine reasonable royalties in numerous industries and with a wide variety of technologies. Mr. Meyer has analyzed hundreds of licensing arrangements, bringing a broad perspective to determining reasonable royalty damages.

Addressed fair, reasonable and non-discriminatory licensing (FRAND and RAND). Analyzed the fair market value of intellectual property related to its transfer and disposition. Valuation of technology transferred between holding companies and subsidiaries. Analyzed technology sharing agreements, including joint product development agreements and software development projects. Mr. Meyer has been in charge of valuation projects related to patents. Mr. Meyer has participated in licensing negotiations, providing inputs related to market, income and cost valuation approach metrics. These engagements have included high technology, aircraft and environmental technologies, as examples.

Analyses and valuation related to intellectual property have included a variety of industries, including computer hardware and software, file and data systems, integrated circuits, flash memory, mobile phones, consumer goods, eye care, pharmaceuticals, medical devices and equipment, cosmetics, apparel, office products, plastic bottling, personal hygiene, frozen foods, 3G and 4G wireless, WLAN, gaming, social networking, major motion pictures, highway sign reflective technology, dental technology, spinal implants, insulin pumps, utility partitioning software, e-commerce networking technology, telecommunications equipment, satellite television, web-conferencing, light emitting diodes (LEDS), liquid crystal displays, optical networking, telephonic billing systems, biotechnology, computer

ATTACHMENT 1

maintenance and servicing, hospitality, cellular communications, energy, aircraft, aerospace, flash memory, consumer credit scores, disc drives, CD-ROM controllers, flash memory, SLICs, ASICs, MOSFETS, IGBTs, nutritional supplements, software, video games, resettable fuses, knee braces, professional sports merchandise, laser measuring devices, sporting goods, VCR, architectural plans, RISC microprocessors, toys and games, and automotive diagnostic equipment, as examples. Analysis of pharmaceutical drug sales, medical devices and market issues. Analysis of computer sales, cost and financial issues related to Apple MAC clones and related manufacturing and supply issues.

Significant experience in matters involving software, including operating systems, human resource and time and reporting enterprise applications, business to business software solutions, database applications, application diagnostic tool software, natural language search software, web hosting software, customer management solutions, business analytics software, retail software packages, video games and emulation software, online auction software, application management solutions, mainframe tools, diagnostic service contracts and support, e-commerce, security and ETL software, as examples.

Significant experience in pharmaceutical and medical devices matters addressing market competitors, market shares, sales, profits and the costs of development. Technology includes drug-eluting stents, spinal implants, surgical devices, heart ablation, generic cyclosporine, insulin pumps, EPO, hepatitis vaccination and urinary drugs, as examples. Analyses and determination of damages.

Analysis of a variety of technology found in PC's and notebook computers including CPU's, memory devices, inverter controllers, hard drive partitioning, keyboard, graphic and audio acceleration, and computer locking devices, as examples.

Related to PC and notebook game play, analysis of financial, economic and royalty rate issues to graphic accelerators and audio acceleration technology. Technology addressed on chip data memory utilization to accomplish acceleration, as an example. Analyses of market issues, product refreshening, development costs, incremental margins earned and reasonable royalty rates. Analysis of numerous other notebook computer technologies related to processing, memory, utilities and other features.

Related to video games, analysis of intellectual property damage issues related to emulator software allowing Playstation games to be played on MAC and Windows' platforms. Analyses of sales, costs, market and other issues. Analysis of video game sales on various platforms. Analysis of MAC emulator software allowing for Windows' utility software to be used on MAC platforms.

Analyzed industry declared essential technologies in a variety of technologies including: WLAN, 2G/3G/4G, PCMCIA, digital compression, notebook computer security, as examples.

Analyzed value of athletic footwear cushioning and athletic performance technology.

Mr. Meyer has analyzed the financial and economic impacts of alleged trade secret misappropriation. He has determined the cost of the development of proprietary technologies and analyzed and valued the economic impact of trade secret misappropriation in a variety of industries. Mr. Meyer has analyzed revenues, apportionment issues and deductible costs in copyright and trade secret matters. Industries include software, semiconductor, mainframe computer, credit card, web conferencing, video games and book publishing, as examples.

Analyzed trademark value and alleged diminution in trademark value in matters involving consumer goods, entertainment, food, major motion picture, athletic footwear, semiconductor and other high technology, as examples. Analyzed corrective advertising issues, including the nature and amount of advertising, marketing, and selling expenditures, customer data, distribution and sales channels, and geographic considerations.

ATTACHMENT 1

**Financial Institution, Bankruptcy, Workout, Alter Ego, Class Action, General Management and Accounting Consulting**

Performed general consulting on accounting, economic, financial, management and business operations matters. Analyzed accounting issues and treatment under a variety of consulting circumstances. Analysis of revenue recognition and accounting for long-term projects. Experience in accounting issues related to high technology companies, including software sales, installation and support revenue recognition.

Performed compliance reviews, and determined the propriety of financial summaries and reports based upon the investigation of the underlying source documentation for a variety of industries and companies, including insurance, financial institutions, and Fortune 500 companies.

Performed detailed reviews of the "sources" and "uses" of cash and funds flow, which uncovered and documented check kiting, various investor "ponzi-type" schemes, fraudulent invoices, and other activities involving the misuse of an entity's assets. Assisted in financial statement audits of banks and other financial institutions.

Consulted to banks and federal government agencies on management procedures and controls, lender liability matters, troubled loan analyses, bankruptcy issues, compliance with policies and procedures, funds flow reviews and assessment of allegations of impropriety such as check kiting.

Significant experience in bankruptcy matters involving solvency analysis, review of reorganization and liquidation plans, reviews for preference items and fraudulent transfers, and analysis of claims.

Assisted corporations and other entities on management reviews of corporate departments and functions, merger and acquisition matters, cost determination studies, financial statement analyses, ability to pay analyses, avoiding or reducing the impact of disputes, cost competitiveness, financial statement disclosure and contract administration issues.

Significant experience in the analysis of the relationship and operations of companies addressing alter ego issues and single entity theory.

Reviews and analyses related to special purpose studies including the verification of account activity, transactions and licensing arrangements.

Consulting to companies on a variety of issues including profitability analysis, transfer pricing, accounting systems, internal controls, account segregation and affiliate issues, as examples.

Experience in the review and analysis of licenses, related business documents and records involving the licensing of intellectual property. This experience includes a variety of industries including athletic performance, consumer goods, household products, sports merchandising, high technology, biotechnology, telecommunications and entertainment, as examples.

Review and analysis of hundreds of talent contracts for actors, producers, directors and providers of rights in motion picture deals in class action dispute. Review and analysis of business and financial data in a variety of matters involving consumer issues and alleged unfair business practices, e.g., 17200.

Analysis of compensation of independent contractors for major freight shipping company in class action matters.

Analysis of damages and other financial and economic issues in various class action matters, including analysis related to class certification issues in financial services, DVD distribution, motor homes, insurance and movie theaters.

Experience in the review and analysis of compensation arrangements including contingent and commission structure consideration. Experience includes distributors and salespersons in industries such as high technology, oil and gas, retail, entertainment and financial services.

Teach accounting and financial class at Stanford University in the School of Engineering (over 20 years).

ATTACHMENT 1

**Entertainment, Sports, Games, Toys and Related Assignments**

Consulting experience in entertainment and related industries, including motion picture, concert merchandising, and sporting goods. Consulting assignments related to toy and game licensing.

Analysis of producer and director compensation related to the release of major motion pictures by a leading studio. Analysis of front-end compensation as well as various forms of contingent compensation.

Research and analyses related to sales, markets, and damages related to videogames, video chips and underlying alleged proprietary technology. Issues related to the accused products of a market leader in the supply of performance 3D graphics processors for enhanced PC game performance, as an example. Study of distribution channels including board suppliers, OEM sales and retail sales. Consideration of products features. Analysis of economic and financial issues related to Soundblaster Live!™ audio card.

Analysis of copyright valuation and apportionment issues in music industry involving Rock Band and International Consumer Electronics Products Company. Addressed sales revenues and deductible costs. Examined sales and market issues related to songs, albums and online distribution channels. Analysis of profits, reasonable royalty issues and apportionment related to copyrighted property in the fashion doll industry.

Analyses related to major motion picture merchandising tie-in deals. Analysis of licensing agreements related to the movie Godzilla for toy distribution. Dispute related to scope of exclusivity arrangements and Classic Godzilla property.

Analysis of financial operations of international pop music star including concert tours, music contracts, appearances fees and endorsement agreements.

Analyses related to design mark issues concerning a major entertainment company and an internet search engine. Dispute related to Go Network.

Analysis related to board game property owned by Whiz Kids/The Topps Company concerning alleged use of a patented game dial. Analysis of licensing agreements related to "licensing in" property to incorporate into game board themes.

Analysis related to interactive toys for children. Patent dispute asserted against a former market leader. Study of learning pad sales, profits and licensing history. Analysis of technology-based educational product market, including major competitors.

Analysis of hundreds of talent contracts in a major class action related to seven Major Motion Picture Studios. Analysis of consideration paid to talent. Court granted summary judgment upon consideration of legal issues and results of analysis included in declaration related to form and nature of talent compensation including upfront and backend payments.

Analysis of financial results and changes in financial condition of professional football League member club. Analysis of revenue trends including ticket sales, suite income, concessions, parking, merchandising and TV and radio revenue sources. Comparisons to other league club local revenues. Review of entity capitalization over time.

Analysis of trademark and related property in a professional football league member club trust in conjunction with lawsuit brought by a team. Allegations were made related to diminution in the value of a specific team's trademark property. Analysis of licensing issues.

Royalty accounting related to professional baseball consumer product licenses. Analysis and audit of royalty payments under professional baseball licensing program for old-timers memorabilia program and merchandising agreements for trading cards, photographs, chess sets and other keepsakes. Analyses of royalties due, royalties underpaid, late payments and failure to meet minimum guarantees.

Analysis of financial issues related to professional soccer matches involving international teams playing friendly competitors in the United States.

Analysis of concessions and merchandise operations and contracts at a motor sports complex. Analyses of sales, costs and profits related to events such as stock cars and national drag races, as examples.

Analyses of athletic footwear market and sales issues related to a raw material supplier dispute and midsole shoe technology. Issues included the consideration of alternate design technology, athletic footwear market trends, and the specific cost structure and facilities of the supplier.

**ATTACHMENT 1**

### Securities and Related Analyses

Performed a variety of analyses in securities and securities-related matters including:  forensic accounting in connection with criminal investigations and litigation; review and assessment of joint venture activities; analysis of complex related party transactions piercing the corporate veil; study of alleged departures from generally accepted accounting principles; funds tracing; asset valuation analyses; debt service analyses; real estate portfolio analyses; special reviews to assess insolvency and related issues; investigation of preference transactions and/or fraudulent conveyances in bankruptcy matters; evaluation of disclosures in financial statements and SEC filings; analysis of restitution damages and forensic analyses of why entities have not met planned and/or projected results.

Performed analyses of mutual fund trading activities in a variety of funds over an extended period of time. Documented and analyzed timing and nature of trades.  Considered specific mutual fund investing objectives and investor prospectus.

### Antitrust

Experience on antitrust matters related to monopolization, tying arrangements, price maintenance and below cost pricing.  Analyses of damages as well as studies of costs related to product pricing.  Cost determination including the review of direct, indirect and overhead costs.  Analysis of product and competitors' revenues, market shares, market issues, prices, costs and profits.  Experience in various industries including computer hardware, software, diagnostics, spare parts, and documentation.  Additional experience in wine, motion picture, sporting goods, insurance, oil and gas, pharmaceutical, construction, electronics, airlines and retail industries, as examples. Experience in class action matters requiring detailed forensic analysis of prices, price changes and costs.

### Forensic And Record Reconstruction

Significant experience in tracing and in financial and cost record reconstruction engagements. Analyses have included detailed reconstruction and record reconciliation in a variety of industries under different circumstances, including:  bank trust accounts, gas well production and mineral rights, general liability insurance policies (dating back to the mid 1930's), incurred cost history of Nuclear Power plants, and intellectual property disputes involving audits of historical royalties due.  These assignments have required various analyses and comparisons of historical production, trends, asset valuations and detailed transaction reviews.  In some instances, third party information has been relied upon in efforts to gain an understanding of missing data, e.g. various third party disclosures, annual financial filings with regulators, insurance brokers files, beneficiaries portfolio listings, published industry data, and the like.

Analyses of costs and expenditures related to long-term contract between provider of HD television programming and satellite television provider.  Analyses included review, aggregation and assessment of the amount and nature of costs reported as programming under a multi-year supply agreement.  Consideration of overhead and administrative costs.

As part of special purpose assignment, analysis of advertising expenditures related to a large pizza franchise operation.  Study of costs of producing ad campaign, including TV, radio and print campaigns, and in-store displays and giveaways.  Analysis of production costs including talent contracts.  Review of media placement costs and media placement.  Review of Ad Fund collections and reserves related to franchisee contributions.

Significant experience in fraud and transactions reviews related to check kiting schemes, other asset transfers, fraudulent invoice schemes and alter ego analyses.  Testimony in Federal Court on the results of tracing and reconstruction.  Northern California engagement required six days of trial testimony (Judge Illston, Northern District Court of California, San Francisco).

Certified Fraud Examiner

## Testimony and Alternative Dispute Resolution Experience

### Testimony Experience

**ATTACHMENT 1**

Testimony in arbitration, state court, federal court, federal bankruptcy court, Court of Federal Claims and International Trade Commission.

Testimony has covered intellectual property valuation, licensing and reasonable royalty determination, lost profits, product and technology markets, technology valuation, business interruption, business value, increased costs, cost allocations, contract accounting and compliance, tracing of funds flow, royalty audits, the nature and behavior of costs, insurance coverage, cost of capital, business plans and forecasts, and the financial operations and relationship of companies.

Presentation of damage analysis in mediation.

Served as an arbitrator on damages and financial issues.

Testimony, depositions and declarations in civil court and arbitration, as follows:

| The United States Federal District Courts for: | Superior Courts for The State of California in the City and Counties of: |
|---|---|
| • The Northern District Of California | • San Francisco |
| • The District Of Delaware | • San Mateo |
| • The Eastern District Of Texas | • Santa Clara |
| • The Southern District of Texas | • Sacramento |
| • The Eastern District Of Massachusetts | • Sonoma |
| • The Eastern District Of Virginia | • Alameda |
| • The District Of Colorado | • Napa |
| • The Eastern District Of California | • Stanislaus |
| • The Central District Of California | • Tulare |
| • The District Of Montana | • Contra Costa |
| • The Northern District Of Illinois | • Sutter |
| • The Central District Of Illinois | • Santa Cruz |
| • The Territory Of Guam | • Martinez |
| • The Eastern District Of Wisconsin | • Monterey |
| • The District of Minnesota (Minneapolis) | • San Luis Obispo |
| • The District of Arizona | • Los Angeles |
| • The District of Nevada | • Orange |
| • The District of Washington | • Ventura |
| • The Eastern District of Kentucky (Lexington) | |
| • The Southern District of Indiana (Indianapolis) | |

**Other State Courts:**

Supreme Court of the State of NY, County of NY

**ATTACHMENT 1**

(Commercial Division)

| **Federal Bankruptcy Court:** | **Arbitration:** |
|---|---|
| • Mississippi | • California |
| • California | • Hawaii |

**International Trade Commission (Washington D.C.)**    **Court of Federal Claims (Washington, D.C.)**

**London Court of International Arbitration (London, UK)**

**Alternative Dispute Resolution Experience**

Consulted to companies and law firms on techniques to avoid disputes and to minimize the impact of existing disputes.

Participated in numerous mediations and settlement negotiations presenting accounting, economic and business operations analyses, and assisting in developing alternative methods to resolve disputes.

Selected by mediators to assist in mediating financial issues between the parties in dispute.

Performed ability to pay analyses in the context of mediations and settlement discussions by analyzing financial statements, cash flows and other accounting and business records.

**Representative Topics Covered In Lectures And Speaking Assignments**

Accounting theory and application; finance and economics; financial statement analysis; tracing of funds flow; construction accounting issues; analysis of construction claims and long term contract claims; preparation and analysis of financial and economic damage claims; alternative dispute resolution / intellectual property; technology valuation and reasonable royalty determination; trademark valuation; intellectual property damages and economics; cost of capital; insurance coverage; antitrust licensing and financial issues; and employee compensation, including stock options.

# PAUL K. MEYER

**ATTACHMENT 2**

## TESTIMONY LISTING SINCE 2011

**Spansion LLC v. Samsung Electronics Co. Ltd, et al**, In the United States District Court for the Eastern District of Virginia, Alexandria Division (Deposition), 2011

**ChampionsWorld, LLC v. United States Soccer Federation, Inc., Major League Soccer, LLC, et al.**, In the United States District Court for the Northern District of Illinois, Eastern Division (Deposition), 2011

**Personalized Media Communications, L.L.C. v. Motorola, Inc., EchoStar Corp., And DISH Network Corp. f/k/a EchoStar Communications Corp.** In the United States District Court for the Eastern District of Texas, Marshall Division (Deposition), 2011

**CTS Eventim AG v. Live Nation Worldwide, Inc. & Live Nation Entertainment, Inc**. In the International Court of Arbitration of the International Chamber of Commerce (ICC), London, U.K. (Arbitration), 2011

**Multimedia Patent Trust v. DIRECTV, et al.,** In the United States District Court for the Southern District of CA (Deposition), 2011

**Trend Micro, Inc., et al. v. Fortinet, Inc.,** In the Superior Court of the State of California, County of Santa Clara (Deposition), 2011

**Anvik Corporation v. Nikon Precision, Inc. et al.,** In the United States District Court for the Southern District of NY (Deposition), 2012

**Fujitsu Limited v. Belkin International, Inc, Belkin, Inc., et al.**, In the United States District Court for the Northern District of California, San Jose Division (Deposition, Trial), 2012

**3M Company and 3M Innovative Properties Company v. Avery Dennison Corporation,** In the United States District Court for the District of Minnesota (Deposition), 2012

**In The Matter Of: Certain Wireless Devices with 3G Capabilities and Components Thereof (Huawei Technologies, et al.)**, United States International Trade Commission Investigation Number 337-TA-800, Washington D.C. (Deposition), 2012; (Trial), 2013

**Bath & Body Work Brand Management, Inc. v. Summit Entertainment, LLC,** In the United States District Court for the Southern District of NY (Deposition), 2012

**Morvil Technology, LLC v. Medtronic Ablation Frontiers LLC and Medtronic, Inc.,** In the United States District Court for the Southern District of California, (Deposition), 2013

**Mosaid Technologies Inc. v. LSI Corporation and Agere Systems, Inc.**, In the United States District Court for the District of Delaware (Deposition), 2013

**MobileMedia Ideas LLC v. Research In Motion Limited and Research In Motion Corporation**, In the United States District Court for the Northern District of Texas, Dallas Division (Deposition), 2013

**In The Matter Of: Certain Wireless Devices with 3G and/or 4G Capabilities and Components Thereof (_Huawei Technologies_, et al.)** United States International Trade Commission Investigation Number 337-TA-868, Washington D.C (Deposition), 2013

**Robyn Fenty and Tourihanna LLC v. Berdon LLP, Michael Mitnick and Peter Gounis**, In the United States District Court, Southern District of New York (Deposition), 2013

**US Airways, Inc. v. Sabre Holdings Corp., Sabre Inc. and Sabre Travel Int'l Ltd.,** In the United States District Court for the Southern District of New York (Deposition), 2014

**GPNE Corp. v. Apple Inc.,** In the United States District Court for the Northern District of California, San Jose Division (First Deposition), 2014

**Brandywine Communications Technologies, LLC v. AT&T Corp., et al.,** In the United States District Court for the Northern District of California, Oakland Division (Deposition), 2014

**GPNE Corp. v. Apple Inc.,** In the United States District Court for the Northern District of California, San Jose Division (Second Deposition, Trial), 2014

**Medtronic MiniMed Inc., Medtronic Puerto Rico Operations Co. and MiniMed Distribution Corp. v. Animas Corporation**, In the United States District Court for the Central District of California (Deposition), 2014

**InterDigital, Inc. v. Huawei Technologies Co., et al.;** International Chamber of Commerce, International Court of Arbitration, ICC Case 20171/RD, (Deposition), 2014, (Arbitration), 2015

## Documents Considered[1]

Attachment 3

| Beginning Bates | Ending Bates |
| --- | --- |
| AMF00070003 | AMF00070063 |
| AMF00076284 | AMF00076314 |
| BS0019173 | BS0019173 |
| BS0019179 | BS0019179 |
| GCC (NYU) 0012943 | GCC (NYU) 0012960 |
| GCC (NYU) 0014092 | GCC (NYU) 0014098 |
| GCC-NYAG 0029332 | GCC-NYAG 0029391 |
| GCC-NYAG 0052951 | GCC-NYAG 0052952 |
| GCC-NYAG 0052951 | GCC-NYAG 0052952 |
| GCC-NYAG 0062018 | GCC-NYAG 0062019 |
| GCC-NYAG 0062018 | GCC-NYAG 0062019 |
| GCC-NYAG 0107722 | GCC-NYAG 0107722 |
| GCC-NYAG 0108802 | GCC-NYAG 0108802 |
| GCC-NYAG 0111816 | GCC-NYAG 0111816 |
| GCC-NYAG 0111897 | GCC-NYAG 0111897 |
| GCC-NYAG 0113636 | GCC-NYAG 0113636 |
| GCC-NYAG 0114604 | GCC-NYAG 0114604 |
| GCC-NYAG 0114606 | GCC-NYAG 0114606 |
| GCC-NYAG 0114941 | GCC-NYAG 0114941 |
| GCC-NYAG 0161814 | GCC-NYAG 0161815 |
| GCC-NYAG 0161817 | GCC-NYAG 0161819 |
| GCC-NYAG 0236913 | GCC-NYAG 0236913 |
| GCC-NYAG 0236913 | GCC-NYAG 0236913 |
| GCC-NYAG 0349435 | GCC-NYAG 0349435 |
| GCC-NYAG 0349458 | GCC-NYAG 0349459 |
| GCC-NYAG 0351274 | GCC-NYAG 0351275 |
| GCC-P 0000396 | GCC-P 0000396 |
| GCC-P 0000432 | GCC-P 0000432 |
| GCC-P 0000439 | GCC-P 0000439 |
| GCC-P 0001977 | GCC-P 0001977 |
| GCC-P 0002013 | GCC-P 0002016 |
| GCC-P 0002177 | GCC-P 0002177 |
| GCC-P 0003725 | GCC-P 0003725 |
| GCC-P 0004245 | GCC-P 0004245 |
| GCC-P 0004280 | GCC-P 0004280 |
| GCC-P 0004655 | GCC-P 0004655 |
| GCC-P 0004657 | GCC-P 0004657 |
| GCC-P 0005135 | GCC-P 0005135 |
| GCC-P 0006175 | GCC-P 0006175 |
| GCC-P 0006189 | GCC-P 0006189 |
| GCC-P 0006228 | GCC-P 0006228 |
| GCC-P 0023813 | GCC-P 0023814 |
| GCC-P 0028281 | GCC-P 0028281 |
| GCC-P 0028802 | GCC-P 0028802 |

## Documents Considered[1]                    Attachment 3

| Beginning Bates | Ending Bates |
| --- | --- |
| GCC-P 0029598 | GCC-P 0029598 |
| GCC-P 0033432 | GCC-P 0033432 |
| GCC-P 0034205 | GCC-P 0034205 |
| GCC-P 0034770 | GCC-P 0034770 |
| GCC-P 0034793 | GCC-P 0034794 |
| GCC-P 0034797 | GCC-P 0034797 |
| GCC-P 0036303 | GCC-P 0036303 |
| GCC-P 0036601 | GCC-P 0036601 |
| GCC-P 0036608 | GCC-P 0036609 |
| GCC-P 0087007 | GCC-P 0087007 |
| GCC-P 0093192 | GCC-P 0093192 |
| GCC-P 0096009 | GCC-P 0096009 |
| GCC-P 0098135 | GCC-P 0098135 |
| GCC-P 0102414 | GCC-P 0102414 |
| GCC-P 0102587 | GCC-P 0102587 |
| GCC-P 0106068 | GCC-P 0106069 |
| GCC-P 0106361 | GCC-P 0106364 |
| GCC-P 0110406 | GCC-P 0110406 |
| GCC-P 0113092 | GCC-P 0113092 |
| GCC-P 0113100 | GCC-P 0113101 |
| GCC-P 0113123 | GCC-P 0113123 |
| GCC-P 0113135 | GCC-P 0113135 |
| GCC-P 0113155 | GCC-P 0113155 |
| GCC-P 0113561 | GCC-P 0113561 |
| GCC-P 0113775 | GCC-P 0113775 |
| GCC-P 0114356 | GCC-P 0114356 |
| GCC-P 0114695 | GCC-P 0114695 |
| GCC-P 0115047 | GCC-P 0115047 |
| GCC-P 0115053 | GCC-P 0115053 |
| GCC-P 0115293 | GCC-P 0115294 |
| GCC-P 0115469 | GCC-P 0115469 |
| GCC-P 0115474 | GCC-P 0115474 |
| GCC-P 0115571 | GCC-P 0115572 |
| GCC-P 0116079 | GCC-P 0116080 |
| GCC-P 0116081 | GCC-P 0116082 |
| GCC-P 0116196 | GCC-P 0116197 |
| GCC-P 0116669 | GCC-P 0116669 |
| GCC-P 0116977 | GCC-P 0116977 |
| GCC-P 0117005 | GCC-P 0117006 |
| GCC-P 0117011 | GCC-P 0117011 |
| GCC-P 0117618 | GCC-P 0117618 |
| GCC-P 0117629 | GCC-P 0117630 |
| GCC-P 0131535 | GCC-P 0131535 |
| GCC-P 0131940 | GCC-P 0131940 |

## Documents Considered[1]

Attachment 3

| Beginning Bates | Ending Bates |
|---|---|
| GCC-P 0133044 | GCC-P 0133044 |
| GCC-P 0133934 | GCC-P 0133934 |
| GCC-P 0136881 | GCC-P 0136881 |
| GCC-P 0136935 | GCC-P 0136935 |
| GCC-P 0139097 | GCC-P 0139097 |
| GCC-P 0139132 | GCC-P 0139132 |
| GCC-P 0139135 | GCC-P 0139142 |
| GCC-P 0139310 | GCC-P 0139310 |
| GCC-P 0143948 | GCC-P 0143948 |
| GCC-P 0144052 | GCC-P 0144052 |
| GCC-P 0145483 | GCC-P 0145483 |
| GCC-P 0167346 | GCC-P 0167346 |
| GCC-P 0168443 | GCC-P 0168443 |
| GCC-P 0171955 | GCC-P 0171955 |
| GCC-P 0177436 | GCC-P 0177436 |
| GCC-P 0179532 | GCC-P 0179532 |
| GCC-P 0193094 | GCC-P 0193094 |
| GCC-P 0195882 | GCC-P 0195882 |
| GCC-P 0197353 | GCC-P 0197353 |
| GCC-P 0208793 | GCC-P 0208793 |
| GCC-P 0222672 | GCC-P 0222672 |
| GCC-P 0222774 | GCC-P 0222774 |
| GCC-P 0338864 | GCC-P 0338873 |
| GCC-P 0505811 | GCC-P 0505811 |
| GCC-P 0828014 | GCC-P 0828144 |
| GCC-P 0829257 | GCC-P 0829274 |
| GCC-P 0829391 | GCC-P 0829391 |
| GCC-P 0830470 | GCC-P 0830475 |
| GCC-P 0830587 | GCC-P 0830587 |
| GCC-P 0830682 | GCC-P 0830682 |
| GCC-P 0830914 | GCC-P 0830915 |
| GCC-P 0831045 | GCC-P 0831045 |
| GCC-P 0831274 | GCC-P 0831274 |
| GCC-P 0831279 | GCC-P 0831279 |
| GCC-P 0831708 | GCC-P 0831712 |
| GCC-P 0831784 | GCC-P 0831786 |
| GCC-P 0831849 | GCC-P 0831849 |
| GCC-P 0831895 | GCC-P 0831898 |
| GCC-P 0831947 | GCC-P 0831951 |
| GCC-P 0832011 | GCC-P 0832121 |
| GCC-P 0832133 | GCC-P 0832137 |
| GCC-P 0832239 | GCC-P 0832298 |
| GCC-P 0832841 | GCC-P 0832844 |
| GCC-P 0836605 | GCC-P 0836607 |

## Documents Considered[1]

Attachment 3

| Beginning Bates | Ending Bates |
| --- | --- |
| GCC-P 0836622 | GCC-P 0836622 |
| GCC-P 0836648 | GCC-P 0836651 |
| GCC-P 0836710 | GCC-P 0836710 |
| GCC-P 0836724 | GCC-P 0836727 |
| GCC-P 0836795 | GCC-P 0836799 |
| GCC-P 0836998 | GCC-P 0837001 |
| GCC-P 0837028 | GCC-P 0837032 |
| GCC-P 0837273 | GCC-P 0837277 |
| GCC-P 0837450 | GCC-P 0837454 |
| GCC-P 0837675 | GCC-P 0837678 |
| GCC-P 0837739 | GCC-P 0837742 |
| GCC-P 0837777 | GCC-P 0837780 |
| GCC-P 0838683 | GCC-P 0838686 |
| GCC-P 0838954 | GCC-P 0838958 |
| GCC-P 0838987 | GCC-P 0838991 |
| GCC-P 0841058 | GCC-P 0841059 |
| GCC-P 0842287 | GCC-P 0842288 |
| GCC-P 0842510 | GCC-P 0842511 |
| GCC-P 0883951 | GCC-P 0883966 |
| GCC-P 0883967 | GCC-P 0883970 |
| GCC-P 0886911 | GCC-P 0886928 |
| GCC-P 0886934 | GCC-P 0886984 |
| JPMCMERK-62 | JPMCMERK-1137 |
| JPMSAB0002865 | JPMSAB0002925 |
| MESTAAP01552457 | MESTAAP01552476 |
| MESTAAP01642302 | MESTAAP01642313 |
| MESTAAP01880213 | MESTAAP01880220 |
| MSYSAA0000378 | MSYSAA0000704 |
| MSYSAA0001427 | MSYSAA0001941 |
| MSYSAA0005026 | MSYSAA0005028 |
| MSYSAA0005056 | MSYSAA0005067 |
| MSYSAF0000001 | MSYSAF0002925 |
| MSYSAF0004859 | MSYSAF0005055 |

Notes:
[1] TMF additionally had access to the Reed Smith Relativity
database that included approximately one million documents.

## Documents Considered

| Expert Reports | Date |
|---|---|
| • Expert Report and Exhibits of Matthew B. Greenblatt (Methodology for Principal Balance Calculation) | 11/15/2012 |
| • Expert Report, Appendices and Exhibits of Bruce G. Dubinsky | 8/20/2013 |
| • Expert Report, Exhibits and Native Files of Lisa M. Collura | 3/20/2015 |
| • Expert Report and Appendices of Amy B. Hirsch on Fund Operations | 3/20/2015 |
| • Expert Report and Appendices of Dr. Steve Pomerantz | 3/20/2015 |
| • Expert Report and Exhibits of Jeffrey M. Weingarten | 3/20/2015 |
| • Expert Report and Exhibits of Matthew B. Greenblatt | 3/20/2015 |

| Legal Filings | Date |
|---|---|
| • Third Amended Complaint | 8/30/2013 |
| • Memorandum Decision Granting in Part and Denying in Part Defendant's Motions to Dismiss | 8/12/2014 |
| • Order Granting in Part and Denying in Part Defendants' Motions to Dismiss the Third Amended Complaint | 12/10/2014 |

| Depositions | Date |
|---|---|
| • Deposition and Exhibits of Michael E. Autera | 10/22/2014 |
| • Continued Deposition and Exhibits of Michael E. Autera | 10/23/2014 |
| • Deposition and Exhibits of J. Ezra Merkin | 2/24/2015 |
| • Continued Deposition and Exhibits of J. Ezra Merkin | 2/25/2015 |

| QuickBooks Files | Date |
|---|---|
| • Ascot Partners QuickBooks Files | |
| • Ascot Fund QuickBooks Files | |
| • Ariel Fund QuickBook Files | |
| • Gabriel Capital LP QuickBooks Files | |

**Comparison of Ascot Partners Capital Activity to Transfers from BLMIS, Gabriel Capital and Ariel Fund**  **Attachment 4**
**Q3 2003 through Q3 2008**

| No. | Quarter | Ascot Partners Net Capital Activity | BLMIS Transfer Date | Total Transfers From: [1] | | | | Source |
| | | | | BLMIS | Gabriel Capital | Ariel Fund | Total | |
|---|---|---|---|---|---|---|---|---|
| 1 | 2003 Q3 | $ 48,061,154.59 | | $ - | | | | GCC-P 0007007 |
| 2 | 12/2/2003 | N/A | 12/2/03 | $ 5,000,000.00 [6] | $ - | $ - | $ 5,000,000.00 | MSYSAF0001207 (at 208) GCC-P 0836710 |
| 3 | 2003 Q4 | $ 26,764,045.43 | 12/26/03 | $ 12,000,000.00 [6] | $ - | $ - | $ 12,000,000.00 | GCC-P 0028281 MSYSAF0001207 (at 208) GCC-P 0836605 |
| 4 | 2004 Q1 | $ 3,821,164.33 | | $ - | $ - | $ - | $ - | GCC-P 0028802 |
| 5 | 2004 Q2 | $ (44,813,953.11) | 7/8/04 | $ - | $ 20,600,000.00 | $ 19,400,000.00 | $ 40,000,000.00 | GCC-P 0029598 MSYSAF0001255 (at 256) MSYSAF0000664 (at 669) MSYSAF0002262 (at 267) AMF00076286 (at 291) |
| 6 | 2004 Q3 | $ 100,426,959.74 | | $ - | $ - | $ - | $ - | GCC-P 0093192 |
| 7 | 2004 Q4 | $ 12,439,516.15 | | $ - | $ - | $ - | $ - | GCC-P 0096009 |
| 8 | 2005 Q1 | $ 30,211,741.55 | | $ - | $ - | $ - | $ - | GCC-P 0098135 |
| 9 | 2005 Q2 | $ 88,915,188.99 | | $ - | $ - | $ - | $ - | GCC-P 0033432 |
| 10 | 2005 Q3 | $ (42,798,896.64) [2] | | $ - | $ - | $ - | $ - | GCC-P 0034205 |
| 11 | 2005 Q4 | $ (182,679,087.36) [3] | 12/23/2005, 1/6/2006 | $ 88,000,000.00 | $ 59,000,000.00 | $ 38,000,000.00 | $ 185,000,000.00 | GCC-P 0036303 MSYSAF0001378 (at 379) MSYSAF0001387 (at 389,391) MSYSAF0002671 (at 283) MSYSAF0000966 (at 971) GCC-P 0841058 GCC-P 0830587 |
| 12 | 2006 Q1 | $ (79,442,162.67) | 4/4/06 | $ 76,000,000.00 | $ - | $ - | $ 76,000,000.00 | GCC-P 0002177 MSYSAF0001415 (at 416) GCC-P 0830914 |
| 13 | 2006 Q2 | $ 10,806,211.18 | | $ - | $ - | $ - | $ - | GCC-P 0110406 |
| 14 | 2006 Q3 | $ 2,895,877.51 | | $ - | $ - | $ - | $ - | GCC-P 0131535 |
| 15 | 2006 Q4 | $ (62,868,072.74) | 12/29/06 | $ 10,000,000.00 | $ 26,500,000.00 | $ 18,500,000.00 | $ 55,000,000.00 | GCC-P 0114356 MSYSAA0004859 (at 861) MSYSAA0004869 (at 872) MSYSAA0001452 (at 463) MSYSAA0000378 (at 381) GCC-P 0113092 GCC-P 0829391 |
| 16 | 2007 Q1 | $ 7,426,254.00 [4] | | $ - | $ - | $ - | $ - | GCC-P 0133934 |
| 17 | 2007 Q2 | $ 87,836,055.61 | | $ - | $ - | $ - | $ - | GCC-P 0114695 |
| 18 | 2007 Q3 | $ (11,294,725.58) [5] | | $ - | $ - | $ - | $ - | GCC-P 0115047 |
| 19 | 2007 Q4 | $ (182,223,412.38) | 12/31/07 | $ 175,000,000.00 | $ - | $ - | $ 175,000,000.00 | GCC-P 0117011 MSYSAA0004869 (at 963) GCC-P 0830470 |
| 20 | 2008 Q1 | | | $ - | $ - | $ - | $ - | |
| 21 | 2008 Q2 | $ (49,551,581.15) | 7/2/08 | $ 50,000,000.00 | $ - | $ - | $ 50,000,000.00 | GCC-P 0166669 MSYSAA0004969 (at 5015) GCC-P 0116081 |
| 22 | 2008 Q3 | $ (45,727,278.02) | 10/1/08 | $ 45,000,000.00 | $ - | $ - | $ 45,000,000.00 | GCC-P 0006175 MSYSAA0004969 (at 5034) GCC-P 0842510 |

Notes:

[1] This analysis includes all transfers from BLMIS for Q3 2003 through Q3 2008  This analysis only includes transfers from Gabriel Capital and Ariel Fund to Ascot Partners for the relevant period when the net capital activity of Ascot Partners was negative

[2] Ascot Partners had sufficient funds in its account to cover its net cash requirement for this period  *See*  The Collura Report, Exhibit 12; Ascot Partners, LP, Bank Statement for the period of October 1, 2005 through October 31, 2005: MSYSAF0001361-369 (at 361)

[3] Calculated as sum of net capital activity from Ascot Partners of $(156,090,138.28) and Management Fees of $(26,170,959.08) per the Capital Activity Spreadsheet and two disbursements that were sent in late 2005 [$(215,000) and $(203,000)] per the Capital Activity Spreadsheet  $(156,090,138.28) + $(26,170,959.08) + $(215,000) + $(203,000) = $(182,679,087.36)

[4] The April 1, 2007 Net Capital Activity includes the "possible add" of $30 million from Renco Group that was ultimately received by Ascot Partners on April 2, 2007

[5] Ascot Partners had sufficient funds in its account to cover its net cash requirement for this period  *See*  The Collura Report, Exhibit 12; Ascot Partners, LP, Bank Statement for the period of October 1, 2007 through October 31, 2007: MSYSAA0004869-968 (at 947)

[6] Ascot Partners redeemed $5,000,000 from BLMIS on December 2, 2003 and $12,000,000 from BLMIS on December 26, 2003, even though the Capital Activity Spreadsheet for the fourth quarter of 2003 showed a net capital activity inflow of $26,764,045.43  However, the running balance in Ascot Partners Morgan Stanley account was $2,470 on December 1, 2003, prior to the $5,000,000 BLMIS redemption on December 2, 2003  The three subsequent disbursements after the $5,000,000 BLMIS redemption were to GCC for the amount of $4,920,357.14  Furthermore, the running balance in Ascot Partners Morgan Stanley account was $632,112.47 on December 26, 2003, prior to the $12,000,000 BLMIS redemption on December 26, 2003  Within four days after the $12,000,000 BLMIS redemption, Ascot Partners subsequently disbursed $12,082,045 to GCC in two payments on December 29 and December 30  *See*  Ascot Partners LP, Bank Statement for the period of December 1, 2003 through December 31, 2003: MSYSAF0001207-213

**Reconciliation of Ascot Partners Capital Activity Report**
**Q4 2006**

Attachment 5.A

| Per Collura Exhibit 12 [1] | | | | | |
|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
| ASC1245 | 12/19/2006 | 1,000,000 00 | 6,129,456 | ICE // FUNDS RECEIVED | Inflows From Other Sources |
| ASC1246 | 12/22/2006 | 166,763 63 | 6,296,220 | ICE // REC FROM MORGAN STANLEY FUNDS RECEIVED | Inflows From Other Sources |
| ASC2038 | 12/22/2006 | 1,020 00 | 6,297,240 | MARK TO THE MARKET | Inflows From Other Sources |
| ASC2039 | 12/22/2006 | (1,020 00) | 6,296,220 | MARK TO THE MARKET | Other Disbursements |
| ASC1247 | 12/27/2006 | 48,000 00 | 6,344,220 | LKM 2006 GIFT FUNDS RECEIVED | Inflows From Other Sources |
| ASC1248 | 12/27/2006 | 48,000 00 | 6,392,220 | JEM 2006 GIFT FUNDS RECEIVED | Inflows From Other Sources |
| ASC1249 | 12/27/2006 | (213,000 00) | 6,179,220 | ICE // PAY BRAVMANN FAMILY TRUST FUNDS PAID | Other Disbursements |
| ASC1250 | 12/27/2006 | (221,000 00) | 5,958,220 | ICE // PAY BRAVMANN FAMILY TRUST FUNDS PAID | Other Disbursements |
| ASC1251 | 12/27/2006 | 101,981 00 | 6,060,201 | ICE // FUNDS RECEIVED | Inflows From Other Sources |
| ASC1252 | 12/28/2006 | 250,000 00 | 6,310,201 | ICE // FUNDS RECEIVED | Inflows From Other Sources |
| ASC1253 | 12/28/2006 | (5,000,000 00) | 1,310,201 | TRANSFER FUNDS FUNDS PAID | Transfers to GCC MS Account |
| ASC1254 | 12/29/2006 | 3,000,000 00 | 4,310,201 | ICE // FUNDS RECEIVED | Inflows From Other Sources |
| ASC1255 | 12/29/2006 | 10,000,000 00 | 14,310,201 | ICE // REC FROM MORGAN STANLEY FUNDS RECEIVED | Inflows from BLMIS |
| ASC1256 | 12/29/2006 | (10,104,539 00) | 4,205,662 | ASP 2006 MF FUNDS PAID | Transfers to GCC MS Account |
| ASC2040 | 12/29/2006 | (680 00) | 4,204,982 | MARK TO THE MARKET | Other Disbursements |
| ASC2041 | 12/29/2006 | 680 00 | 4,205,662 | MARK TO THE MARKET | Inflows From Other Sources |
| ASC2208 | 1/1/2007 | 17,290 24 | 4,222,952 | CREDIT INTEREST FOR DECEMBER USD BALANCES | Inflows From Other Sources |
| ASC1300 | 1/1/2007 | 3,806 74 | 4,226,759 | DECEMBER DOMESTIC SHORT INTEREST ACCRUAL | Inflows From Other Sources |
| ASC1259 | 1/2/2007 | (100,000 00) | 4,126,759 | ICE // PAY CAROL BRAVMANN BERLI FUNDS PAID | Other Disbursements |
| ASC1260 | 1/2/2007 | (200,000 00) | 3,926,759 | ICE // PAY JUDITH KAUFTEAL FUNDS PAID | Other Disbursements |
| ASC1261 | 1/2/2007 | (100,000 00) | 3,826,759 | ICE // PAY TRUST DATE 0 MAY 13 1 FUNDS PAID | Other Disbursements |
| ASC1262 | 1/2/2007 | (30,000 00) | 3,796,759 | ICE // PAY GEORGE RUBIN FUNDS PAID | Other Disbursements |
| ASC1263 | 1/2/2007 | (300,000 00) | 3,496,759 | ICE // PAY LEONARD TO BOROFF FUNDS PAID | Other Disbursements |
| ASC1264 | 1/2/2007 | (375,000 00) | 3,121,759 | ICE // PAY IRWIN AND PHYLLIS FR FUNDS PAID | Other Disbursements |
| ASC1265 | 1/2/2007 | (392,800 00) | 2,728,959 | ICE // PAY GEDALE HOROWITZ 1992 FUNDS PAID | Other Disbursements |
| ASC1266 | 1/2/2007 | (25,000 00) | 2,703,959 | ICE // PAY MARCELLE QUINTON FUNDS PAID | Other Disbursements |
| ASC1267 | 1/2/2007 | (400,000 00) | 2,303,959 | ICE // PAY SAR ACADEMY FUNDS PAID | Other Disbursements |
| ASC1268 | 1/2/2007 | (500,000 00) | 1,803,959 | ICE // PAY DANIEL AND LYNNE ALP FUNDS PAID | Other Disbursements |
| ASC1269 | 1/2/2007 | 1,000,000 00 | 2,803,959 | ICE // FUNDS RECEIVED | Inflows From Other Sources |
| ASC1270 | 1/2/2007 | 200,000 00 | 3,003,959 | ICE // FUNDS RECEIVED | Inflows From Other Sources |

| Per Capital Activity Spreadsheet [2] | | | | |
|---|---|---|---|---|
| Investor | Amount | | Amount Wired | Variance from Collura Exh. 12 |
| BORN REALTY | $ | 1,000,000 00 | $  1,000,000 00 | - |
| ANGELICA BERRIE IRA | $ | 166,763 63 | $  166,763 63 | - |
|  |  |  |  | 1,020 00 [4] |
|  |  |  |  | (1,020 00) [4] |
|  |  |  |  | 48,000 00 |
|  |  |  |  | 48,000 00 |
| BRAVMANN B | $ | (213,000 00) | $  (213,000 00) | - |
| BRAVMANN A | $ | (221,000 00) | $  (221,000 00) | - |
| SJM PLAN - MORRIS SMITH | $ | 101,981 00 | $  101,981 00 | - |
| SKG - GOLDENSON | $ | 250,000 00 | $  250,000 00 | - |
| GP MANAGEMENT FEES | $ | (26,004,161 79) | $  (5,000,000 00) | - [8] |
| SINSHEIMER - NY LAW | $ | 3,000,000 00 | $  3,000,000 00 | - |
|  |  |  |  | 10,000,000 00 [5] |
| GP MANAGEMENT FEES | $ | (26,004,161 79) | $  (10,104,539 00) | - [8] |
|  |  |  |  | (680 00) [4] |
|  |  |  |  | 680 00 [4] |
|  |  |  |  | 17,290 24 [7] |
|  |  |  |  | 3,806 74 [7] |
| CAROL BRAVMANN | $ | (100,000 00) | $  6 00 | (100,006 00) |
| JUDITH KAUFTHAL | $ | (200,000 00) | $  (200,000 00) | - |
| LOUIS BACON TRUST | $ | (100,000 00) | $  (100,000 00) | - |
| GEORGE RUBIN | $ | (30,000 00) | $  (30,000 00) | - |
| LEONARD TOBOROFF | $ | (300,000 00) | $  (300,000 00) | - |
| PHYLLIS FROMME | $ | (375,000 00) | $  (375,000 00) | - |
| HOROWITZ CHARITABLE LEAI | $ | (392,800 00) | $  (392,800 00) | - |
|  |  |  |  | (25,000 00) [6] |
| SAR ACADEMY | $ | (400,000 00) | $  (400,000 00) | - |
| GROWTH ASSOCIATES | $ | (500,000 00) | $  (500,000 00) | - |
| GESHER FOUNDATION | $ | 1,000,000 00 | $  1,000,000 00 | - |
| JOSH BERMAN IRA | $ | 200,000 00 | $  200,000 00 | - |

| Per QuickBooks General Ledger [3] | | |
|---|---|---|
| Date | Memo | Amount |
| 12/19/2006 | 1/07 Cont - Born | 1,000,000 00 |
| 12/26/2006 | 1/07 Cont - A  Berrie | 166,763 63 |
| 12/22/2006 |  |  |
| 12/22/2006 |  |  |
| 12/27/2006 | 1/07 Cont - Merkin Trust | 48,000 00 |
| 12/27/2006 | 1/07 Cont - Merkin Trust | 48,000 00 |
| 12/27/2006 | 12/31/06 Dist - Bravmann B | (213,000 00) |
| 12/27/2006 | 12/31/06 Dist - Bravmann A | (221,000 00) |
| 12/27/2006 | 1/07 Cont - M  Smith | 101,981 00 |
| 12/28/2006 | 1/07 Cont - S  Goldenson | 250,000 00 |
| 12/28/2006 | PARTIAL PYMNT OF 2006 MGMT FEES | (5,000,000 00) [8] |
| 12/29/2006 | 1/07 Cont - NY Law | 3,000,000 00 |
| 12/29/2006 | From Madoff | 10,000,000 00 [5] |
| 12/29/2006 | 2006 Mgmt fee paid | (10,104,539 00) [8] |
|  |  |  |
|  |  |  |
| 01/02/2007 | DEC CREDIT INT - MS | 17,290 24 |
| 01/02/2007 | DEC CREDIT INT - MS | 3,806 74 |
| 01/02/2007 | 1/1 Dist - C  Bravmann | (100,000 00) |
| 01/02/2007 | 1/1 Dist - J  Kaufthal | (200,000 00) |
| 01/02/2007 | 1/1 Dist - 5/13 Trust | (100,000 00) |
| 01/02/2007 | 1/1 Dist - G  Rubin | (30,000 00) |
| 01/02/2007 | 1/1 Dist - L  Toboroff | (300,000 00) |
| 01/02/2007 | 1/1 Dist - Fromme | (375,000 00) |
| 01/02/2007 | 1/1 Dist - G  Horowitz | (392,800 00) |
| 01/02/2007 | 1/1 Dist - Quinton | - |
| 01/02/2007 | 1/1 Dist - SAR Academy | (400,000 00) |
| 01/02/2007 | 1/1 Dist - Daniel & Lynne | (500,000 00) |
| 01/02/2007 | 1/1 Cont - Gesher | 1,000,000 00 |
| 01/02/2007 | 1/1 Cont - Berman IRA | 200,000 00 |

Reconciliation of Ascot Partners Capital Activity Report
Q4 2006

Attachment 5.A

| Per Collura Exhibit 12 [1] | | | | | | | Per Capital Activity Spreadsheet [2] | | | | | Per QuickBooks General Ledger [3] | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category | | Investor | Amount | Amount Wired | Variance from Collura Exh. 12 | | Date | Memo | Amount |
| ASC1271 | 1/2/2007 | (150,000 00) | 2,853,959 | ICE // PAY HERBERT KASPER REVOC FUNDS PAID | Other Disbursements | | KASPER | $ (150,000 00) | (150,000 00) | - | | 01/02/2007 | 1/1 Dist - H Kasper | (150,000 00) |
| ASC1272 | 1/2/2007 | 25,000 00 | 2,878,959 | ICE // RETURN WIRE REDACTED4040 FUNDS RECEIVED | Inflows From Other Sources | | | | | 25,000 00 | [6] | | | |
| ASC2042 | 1/2/2007 | 90,706 55 | 2,969,665 | CHK DEP 1-2-07 | Inflows From Other Sources | | SUZANNE GOLDENSON IRA | $ 90,706 55 | $ 90,706 55 | | | | | |
| ASC2043 | 1/2/2007 | 13,903 00 | 2,983,568 | CHK DEP 1-2-07 | Inflows From Other Sources | | | | | 13,903 00 | [6] | | | |
| ASC1273 | 1/3/2007 | (25,504 07) | 2,958,064 | ICE // PAY JANICE KESTENBAUM F FUNDS PAID | Other Disbursements | | JAN KESTENBAUM | $ (25,504 07) | $ (25,504 07) | - | | 01/03/2007 | 1/1 Dist - J Kestenbaum | (25,504 07) |
| ASC1274 | 1/3/2007 | (38,256 11) | 2,919,808 | ICE // PAY JAY AND HADASA POMRE FUNDS PAID | Other Disbursements | | POMRENZE FOUNDATION | $ (38,256 11) | $ (38,256 11) | - | | 01/03/2007 | 1/1 Dist - Pomrenze | (38,256 11) |
| ASC1275 | 1/3/2007 | (500,000 00) | 2,419,808 | ICE // PAY MAURICE B FALK FUNDS PAID | Other Disbursements | | MAURICE FALK | $ (500,000 00) | $ (500,000 00) | - | | 01/03/2007 | 1/1 Dist - M Falk | (500,000 00) |
| ASC1276 | 1/3/2007 | (58,293 46) | 2,361,515 | ICE // PAY HARRIS GUEDALIA FUNDS PAID | Other Disbursements | | HARRIS GUEDALIA | $ (58,293 46) | $ (58,293 46) | - | | 01/03/2007 | 1/1 Dist - Guedalia | (58,293 46) |
| ASC1277 | 1/3/2007 | (13,903 00) | 2,347,612 | HOBBY FARM TAX REFUND FUNDS PAID | Other Disbursements | | | | | (13,903 00) | [6] | | | |
| ASC1278 | 1/4/2007 | 45,000 00 | 2,392,612 | ICE // FUNDS RECEIVED | Inflows From Other Sources | | ANDY WEISS PSP | $ 45,000 00 | 45,000 00 | - | | 01/04/2007 | 1/1 Cont - A Weiss | 45,000 00 |
| ASC1279 | 1/4/2007 | 30,000 00 | 2,422,612 | ICE // FUNDS RECEIVED | Inflows From Other Sources | | ANDY WEISS MONEY PENSION | $ 30,000 00 | 30,000 00 | - | | 01/04/2007 | 1/1 Cont - A Weiss | 30,000 00 |
| ASC1280 | 1/4/2007 | 350,000 00 | 2,772,612 | ICE // FUNDS RECEIVED | Inflows From Other Sources | | ARLENE EIS PSP | $ 350,000 00 | 350,000 00 | - | | 01/04/2007 | 1/1 Cont - Alt Inv EIS | 350,000 00 |
| ASC1281 | 1/4/2007 | (2,894,671 23) | (122,060) | ICE // PAY LEXINGTON CAPITAL PA FUNDS PAID | Other Disbursements | | LEXINGTON - BEINECKE | $ (3,216,301 37) | $ (2,894,671 23) | - | | 01/04/2007 | 1/1 Dist - Lexington Cap | (2,894,671 23) |
| ASC1282 | 1/4/2007 | (2,611,783 66) | (2,733,843) | ICE // PAY PROSPECT CAPITAL PAR FUNDS PAID | Other Disbursements | | PROSPECT - BEINECKE | $ (2,901,981 84) | $ (2,611,783 66) | - | | 01/04/2007 | 1/1 Dist - Prospect | (2,611,783 66) |
| ASC1283 | 1/4/2007 | (12,750,000 00) | (15,483,843) | ICE // PAY FORTIS PRIME FUNDS PAID | Transfers to Ascot Fund | | ASCOT FUND LTD | $ (12,750,000 00) | (12,750,000 00) | - | | 01/04/2007 | 1/1 Dist - Ascot Fund | (12,750,000 00) |
| ASC1284 | 1/4/2007 | (15,084,206 75) | (30,568,050) | ICE // PAY NYROY 1505 FUNDS PAID | Other Disbursements | | NYROY-ROSENBLOOM | $ (16,760,229 72) | $ (15,084,206 75) | - | | 01/04/2007 | 1/1 Dist - NYROY | (15,084,206 75) |
| ASC1285 | 1/4/2007 | 18,500,000 00 | (12,068,050) | JAN 1 2007 MADOFF REALLOCATE FUNDS RECEIVED | Inflows From Other Sources | | | | | 18,500,000 00 | [5] | | 01/04/2007 | Withdrawal from Madoff (AF) | 18,500,000 00 [5] |
| ASC1286 | 1/4/2007 | 26,500,000 00 | 14,431,950 | JAN 1 2007 MADOFF REALLOCATE FUNDS RECEIVED | Inflows From Other Sources | | | | | 26,500,000 00 | [5] | | 01/04/2007 | Withdrawal from Madoff (GC) | 26,500,000 00 [5] |
| ASC1287 | 1/5/2007 | (448,195 00) | 13,983,755 | ICE // PAY ZBS FAM CAPITAL INVE FUNDS PAID | Other Disbursements | | ZES-FAM CAPITAL | $ (448,195 56) | $ (448,195 00) | - | | 01/05/2007 | 1/1 Dist - Zes-Fam | (448,195 00) |
| ASC1288 | 1/5/2007 | 150,000 00 | 14,133,755 | ICE // FUNDS RECEIVED | Inflows From Other Sources | | LEA EISENBERG PSP | $ 150,000 00 | 150,000 00 | - | | 01/05/2007 | 1/1 Cont - Eisenberg | 150,000 00 |
| ASC2044 | 1/5/2007 | (10,303 26) | 14,123,452 | MARK TO THE MARKET | Other Disbursements | | | | | (10,303 26) | [4] | | | |
| ASC2045 | 1/5/2007 | 10,303 26 | 14,133,755 | MARK TO THE MARKET | Inflows From Other Sources | | | | | 10,303 26 | [4] | | | |
| ASC1289 | 1/8/2007 | (911,610 90) | 13,222,144 | ASP DIV W/H FUNDS PAID | Transfers to GCC MS Account | | | | | (911,610 90) | | | 01/08/2007 | Pay Div W/H to GCC | (911,610 90) |
| ASC1290 | 1/8/2007 | (35,000 00) | 13,187,144 | HAAR REDEMPTION FUNDS PAID | Transfers to GCC MS Account | | DBH HAAR | $ (35,000 00) | (35,000 00) | - | | 01/08/2007 | 1/1 Dist - Haar | (35,000 00) |
| ASC1291 | 1/8/2007 | (100,000 00) | 13,087,144 | WEGIER REDEMPTION FUNDS PAID | Transfers to GCC MS Account | | HEDY WEGIER | $ (100,000 00) | (100,000 00) | - | | 01/08/2007 | 1/1 Dist - Wegier | (100,000 00) |
| ASC1292 | 1/8/2007 | (210,000 00) | 12,877,144 | FROMME REDEMPTION FUNDS PAID | Transfers to GCC MS Account | | IRWIN FROMME IRA | $ (210,000 00) | (210,000 00) | - | | 01/08/2007 | 1/1 Dist - Fromme | (210,000 00) |
| ASC1293 | 1/8/2007 | (25,000 00) | 12,852,144 | SELIGER REDEMPTION FUNDS PAID | Transfers to GCC MS Account | | CHARLES SELIGER IRA | $ (25,000 00) | (25,000 00) | - | | 01/08/2007 | 1/1 Dist - Seliger | (25,000 00) |
| ASC1294 | 1/10/2007 | (134,400 00) | 12,717,744 | JEM TRUST REDEMPTION FUNDS PAID | Other Disbursements | | MERKIN 1992 TRUSTS | $ (172,800 00) | $ (172,800 00) | 38,400 00 | | 01/10/2007 | 1/1 Dist - JEM Trust | (134,400 00) |

**Reconciliation of Ascot Partners Capital Activity Report**
**Q4 2006**

Attachment 5.A

| Per Collura Exhibit 12 [1] | | | | | |
|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
| ASC1295 | 1/10/2007 | (309,622 90) | 12,408,121 | 2006 MG BALANCE FUNDS PAID | Transfers to GCC MS Account |
| ASC1296 | 1/10/2007 | (134,400 00) | 12,273,721 | LKM TRUST REDEMPTION FUNDS PAID | Other Disbursements |
| ASC1297 | 1/10/2007 | (3,000,000 00) | 9,273,721 | ICE // PAY ANGELICA U BERRIE IR FUNDS PAID | Other Disbursements |
| ASC1298 | 1/12/2007 | (25,000 00) | 9,248,721 | ICE // PAY MARCELLE QUINTON FUNDS PAID | Other Disbursements |
| ASC2046 | 1/12/2007 | 37,910 00 | 9,286,631 | MARK TO THE MARKET | Inflows From Other Sources |
| ASC2047 | 1/12/2007 | (37,910 00) | 9,248,721 | MARK TO THE MARKET | Other Disbursements |
| ASC2048 | 1/19/2007 | 2,720 00 | 9,251,441 | MARK TO THE MARKET | Inflows From Other Sources |
| ASC2049 | 1/19/2007 | (2,720 00) | 9,248,721 | MARK TO THE MARKET | Other Disbursements |
| ASC2209 | 1/24/2007 | (2,338,500 00) | 6,910,221 | AMER EXPRESS CO COM | Other Disbursements |
| ASC2210 | 1/24/2007 | (425,200 00) | 6,485,021 | AMER EXPRESS CO COM | Other Disbursements |
| ASC2211 | 1/24/2007 | (412,700 00) | 6,072,321 | AMERIPRISE FINL INC COM STK | Other Disbursements |
| ASC1299 | 1/24/2007 | (75,040 00) | 5,997,281 | AMERIPRISE FINL INC COM STK | Other Disbursements |
| ASC2050 | 1/26/2007 | 205,060 00 | 6,202,341 | MARK TO THE MARKET | Inflows From Other Sources |
| ASC2051 | 1/26/2007 | (205,060 00) | 5,997,281 | MARK TO THE MARKET | Other Disbursements |
| ASC2052 | 1/31/2007 | (6,400 00) | 5,990,881 | MARK TO THE MARKET | Other Disbursements |
| ASC2053 | 1/31/2007 | 6,400 00 | 5,997,281 | MARK TO THE MARKET | Inflows From Other Sources |

| Per Capital Activity Spreadsheet [2] | | | | |
|---|---|---|---|---|
| Investor | Amount | | Amount Wired | Variance from Collura Exh. 12 |
| GP MANAGEMENT FEES | $ | (26,004,161 79) | (309,622 90) | - [8] |
| | | | | (134,400 00) |
| ANGELICA BERRIE IRA | $ | (3,000,000 00) $ | (3,000,000 00) | - |
| MARCELLE QUINTON | $ | (25,000 00) $ | (25,000 00) | - |
| | | | | 37,910 00 [4] |
| | | | | (37,910 00) [4] |
| | | | | 2,720 00 [4] |
| | | | | (2,720 00) [4] |
| | | | | (2,338,500 00) [7] |
| | | | | (425,200 00) [7] |
| | | | | (412,700 00) [7] |
| | | | | (75,040 00) [7] |
| | | | | 205,060 00 [4] |
| | | | | (205,060 00) [4] |
| | | | | (6,400 00) [4] |
| | | | | 6,400 00 [4] |

| Per QuickBooks General Ledger [3] | | |
|---|---|---|
| Date | Memo | Amount |
| 01/10/2007 | Pay '06 Mgmt fee balance | (309,622 90) [8] |
| 01/10/2007 | 1/1 Dist - LKM Trust | (134,400 00) |
| 01/10/2007 | 1/1 Dist - A  Berrie | (3,000,000 00) |
| 01/12/2007 | 1/1 Dist - Quinton | (25,000 00) |

Notes:
[1] Excerpt from Expert Report of Lisa M  Collura, March 20, 2015, Exhibit 12; Ascot Partners L P; Bank Statement for the period of December 1, 2006 to December 31, 2006: MSYSAA0004859-868; Ascot Partners L P; Bank
[2] Capital Activity - January 1, 2007, GCC-P 0114356
[3] Ascot Partners RS L P  General Ledger as of December 31, 2006, GCC-P 0113135; Ascot Partners RS L P  General Ledger as of December 31, 2007, GCC-P 0139097
[4] MARK TO THE MARKET transactions are not tracked on the Capital Activity Spreadsheet or QuickBooks  All transactions net to ze
[5] On January 4, 2007, Ascot Partners' Morgan Stanley account received $26,500,000 from Gabriel and $18,500,000 from Ariel  On that same day, Mr  Autera asked Frank DiPascali from Bernard L  Madoff & Co  to credit Gabriel's BLMIS account $26,500,000 from Ascot Partners BLMIS account a
credit Ariel's BLMIS account $18,500,000 from Ascot Partners BLMIS account  See Deposition of Michael Autera, October 22, 2014: pp  188-198; Exhibit 285  With the additional BLMIS inflows of $10,000,000, the total BLMIS inflows for this break period is $55,000,000 ($26 5M + $18 5M + $10M =
$55M), which generally corresponds with Ascot Partners net cash requirement of $62,868,073
[6] These transactions cannot be found on the Capital Activity Spreadsheet or QuickBooks, however the bank statements show reversing transactions that net to ze
[7] Interest, Ameriprise and American Express transactions do not appear on the Capital Activity Spreadsheet
[8] In addition to the three December 2006 and January 2007 disbursements on the bank statements related to 2006 Management Fees totaling $(15,414,161 90) [$(5,000,000 00) + $(10,104,539 00) + $(309,622 90 = $(15,414,161 90)] , the following disbursements and (one fee correction) were made in 20
that relate to 2006 Management Fees: $(5,000,000 00 (6/5/06), $2,010,000 00 (6/6/06), $(3,000,000 00) (7/14/06), $(2,000,000 00) (10/3/06), $(2,600,000 00) (11/22/06) and $(309,622 90) (1/10/07)  The sum of all disbursements is $(26,004,161 90) [$(15,414,161 90) + $(5,000,000 00) + $2,010,000 00 +
$(3,000,000 00) + $(2,000,000 00) + $(2,600,000 00) = $(26,004,161 90)]

CONFIDENTIAL MATERIAL

**Reconciliation of Ascot Partners Capital Activity Report**
**Q4 2007**

Attachment 5.B

### Per Collura Exhibit 12 [1]

| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
|---|---|---|---|---|---|
| ASC1432 | 12/21/2007 | 95,709 00 | 11,346,638 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1433 | 12/26/2007 | 300,000 00 | 11,646,638 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1434 | 12/27/2007 | 86,161 80 | 11,732,799 | TRANSFER BETWEEN ACCOUNTS - REDACTED4317 - REDACTED0618 FUNDS RECEIVED | Inflows From Other Sources |
| ASC1435 | 12/27/2007 | (10,700,000.00) | 1,032,799 | TRANSFER FUNDS - REDACTED5462 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1436 | 12/27/2007 | (226,000.00) | 806,799 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1437 | 12/27/2007 | (229,000.00) | 577,799 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1438 | 12/28/2007 | 5,000,000 00 | 5,577,799 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1440 | 12/31/2007 | (5,500,000.00) | 77,799 | FROM REDACTED3007 TO REDACTED1654 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1441 | 12/31/2007 | 175,000,000.00 | 175,077,799 | U.S. DOLLARS FUNDS RECEIVED | Inflows from BLMIS |
| ASC1495 | 1/1/2008 | 40,002.04 | 175,117,801 | CREDIT INTEREST FOR DECEMBER USD BALANCES | Inflows From Other Sources |
| ASC1442 | 1/2/2008 | (130,000.00) | 174,987,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1443 | 1/2/2008 | (30,000.00) | 174,957,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1444 | 1/2/2008 | (25,000.00) | 174,932,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1448 | 1/2/2008 | (200,000.00) | 174,732,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1446 | 1/2/2008 | (450,000.00) | 174,282,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1447 | 1/2/2008 | (1,000,000.00) | 173,282,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1445 | 1/2/2008 | (200,000.00) | 173,082,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1449 | 1/2/2008 | (300,000.00) | 172,782,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1450 | 1/2/2008 | (300,000.00) | 172,482,801 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1451 | 1/2/2008 | (13,750,000.00) | 158,732,801 | U.S. DOLLARS FUNDS PAID | Transfers to Ascot Fund |
| ASC1452 | 1/3/2008 | (150,000.00) | 158,582,801 | 1/1 ASP DISTRIBUTION REDACTED2624 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1453 | 1/3/2008 | (100,000.00) | 158,482,801 | 1/1 ASP DISTRIBUTION REDACTED2623 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1454 | 1/3/2008 | (50,000.00) | 158,432,801 | 1/1 ASP DISTRIBUTION REDACTED2622 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1455 | 1/3/2008 | (138,859.04) | 158,293,942 | U.S. DOLLARS FUNDS PAID | Transfers to GCC JPMC Account |

### Per Capital Activity Spreadsheet [2]

| Investor | Amount | Amount Wired | Variance from Collura Exh. 12 |
|---|---|---|---|
| SJM PENSION - MORRIS SMITH | $ 95,709.00 | $ 95,709.00 | - |
| KEHILATH JESHRUM | $ 300,000.00 | $ 300,000.00 | - |
| MERKIN 2000 TRUSTS - LKM | $ 103,987.38 | $ 103,987.38 | |
| MERKIN 2000 TRUSTS - JEM | $ (17,825.58) | $ (17,825.58) | |
| *Total MERKIN 2000* | $ 86,161.80 | $ 86,161.80 | - |
| 2007 MANAGEMENT FEES | $ (28,292,985.66) | $ (10,700,000.00) | - [5] |
| BRAVMANN A | $ (226,000.00) | $ (226,000.00) | - |
| BRAVMANN B | $ (229,000.00) | $ (229,000.00) | - |
| SELECTINVEST ARV LP | $ 5,000,000.00 | $ 5,000,000.00 | - |
| 2007 MANAGEMENT FEES | $ (28,292,985.66) | $ (5,500,000.00) | - [5] |
| ASCOT GROUP TOTAL | (182,223,412.38) | (182,223,412.38) | (7,223,412.38) |
| | | | 40,002.04 [4] |
| ALIZA LIECHTUNG | $ (130,000.00) | $ (130,000.00) | - |
| GEORGE RUBIN | $ (30,000.00) | $ (30,000.00) | - |
| HENRY KATZ IRA | $ (25,000.00) | $ (25,000.00) | - |
| SYLVIA KORNGOLD | $ (200,000.00) | $ (200,000.00) | - |
| PHYLLIS FROMME | $ (450,000.00) | $ (450,000.00) | - |
| LYNTON ASSET LP | $ (1,000,000.00) | $ (1,000,000.00) | - |
| ELAINE SARGENT | $ (200,000.00) | $ (200,000.00) | - |
| SKG PARTNERS - GOLDENSON | $ (300,000.00) | $ (300,000.00) | - |
| BRIAN GELL | $ (300,000.00) | $ (300,000.00) | - |
| ASCOT FUND LTD | $ (13,750,000.00) | $ (13,750,000.00) | - |
| GORDIAN LTD | $ (150,000.00) | $ (150,000.00) | - |
| HEDI WEGIER | $ (100,000.00) | $ (100,000.00) | - |
| HAAR FOUNDATION - HAAR | $ (50,000.00) | $ (50,000.00) | - |
| | | | (138,859.04) |

### Per QuickBooks General Ledger [3]

| Date | Memo | Amount |
|---|---|---|
| 12/21/2007 | 1/08 Cont - SJM Pension | $ 95,709.00 |
| 12/26/2007 | 1/08 Cont - Kelihath | $ 300,000.00 |
| 12/27/2007 | 1/08 CAPITAL ACTIVITY | $ 86,161.80 |
| 12/27/2007 | PAYMENT OF 2007 MGMT FEES | $ (10,700,000.00) [5] |
| 12/27/2007 | 1/08 REDEMPTION TO BRAVMANN A | $ (226,000.00) |
| 12/27/2007 | 1/08 REDEMPTION TO BRAVMANN B | $ (229,000.00) |
| 12/28/2007 | 1/08 Cont - Selectinvest | $ 5,000,000.00 |
| 12/31/2007 | PAY 2007 MGMT FEE | $ (5,500,000.00) [5] |
| 12/31/2007 | 175MM redemption MDFF | $ 99,000,000.00 |
| 12/31/2007 | 175MM redemption MDFF | $ 76,000,000.00 |
| | *Total* | $ 175,000,000.00 |
| 1/2/2008 | DEC INT RECD IN JAN | $ 40,002.04 |
| 1/2/2008 | 1/1 DIST - LEICHTUNG | $ (130,000.00) |
| 1/2/2008 | 1/1 DIST - RUBIN | $ (30,000.00) |
| 1/2/2008 | 1/1 DIST - KATZ | $ (25,000.00) |
| 1/2/2008 | 1/1 DIST - KORNGOLD | $ (200,000.00) |
| 1/2/2008 | 1/1 DIST - FROMME | $ (450,000.00) |
| 1/2/2008 | 1/1 DIST - LYNTON | $ (1,000,000.00) |
| 1/2/2008 | 1/1 DIST - SARGENT | $ (200,000.00) |
| 1/2/2008 | 1/1 DIST - SKG (GOLDENSON) | $ (300,000.00) |
| 1/2/2008 | 1/1 DIST - GELL | $ (300,000.00) |
| 1/2/2008 | 1/1 DIST - ASCOT FUND | $ (13,750,000.00) |
| 1/3/2008 | 1/1 Dist - Gordian Ltd | $ (150,000.00) |
| 1/3/2008 | 1/1 Dist - Weiger | $ (100,000.00) |
| 1/3/2008 | 1/1 Dist - Haar | $ (50,000.00) |
| 1/3/2008 | Dec Div W/H paid in Jan | $ (138,859.04) |

**Reconciliation of Ascot Partners Capital Activity Report**
**Q4 2007**

Attachment 5.B

### Per Collura Exhibit 12 [1]

| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
|---|---|---|---|---|---|
| ASC1456 | 1/3/2008 | (1,000,000.00) | 157,293,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
|  |  |  |  |  |  |
| ASC1457 | 1/3/2008 | (16,000,000.00) | 141,293,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1458 | 1/3/2008 | (60,000.00) | 141,233,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1459 | 1/3/2008 | (20,000.00) | 141,213,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1460 | 1/3/2008 | (125,000.00) | 141,088,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1461 | 1/3/2008 | (2,800,000.00) | 138,288,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1462 | 1/3/2008 | (250,000.00) | 138,038,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1463 | 1/3/2008 | (400,000.00) | 137,638,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1464 | 1/3/2008 | (230,000.00) | 137,408,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1465 | 1/3/2008 | (250,000.00) | 137,158,942 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1466 | 1/3/2008 | (392,800.00) | 136,766,142 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1467 | 1/3/2008 | (25,050.00) | 136,741,092 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC2141 | 1/3/2008 | 200,000.00 | 136,941,092 | CHK DEP 01/03/2008 | Inflows From Other Sources |
| ASC1468 | 1/4/2008 | 750,000.00 | 137,691,092 | U.S. DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1469 | 1/4/2008 | 150,000.00 | 137,841,092 | U.S. DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1470 | 1/4/2008 | 10,160,000.00 | 148,001,092 | U.S. DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1471 | 1/4/2008 | (450,000.00) | 147,551,092 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1472 | 1/4/2008 | (21,233.77) | 147,529,859 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1473 | 1/4/2008 | (387,093.94) | 147,142,765 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1474 | 1/4/2008 | (31,850.65) | 147,110,914 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1475 | 1/4/2008 | (324,424.01) | 146,786,490 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1476 | 1/4/2008 | (959,061.06) | 145,827,429 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1477 | 1/4/2008 | (3,052,698.89) | 142,774,730 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1478 | 1/4/2008 | (9,350,725.17) | 133,424,005 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1479 | 1/4/2008 | (400,000.00) | 133,024,005 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1480 | 1/4/2008 | (770,644.93) | 132,253,360 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1481 | 1/4/2008 | (48,347.75) | 132,205,012 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1482 | 1/4/2008 | (16,748,585.60) | 115,456,427 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1483 | 1/4/2008 | (32,941,614.12) | 82,514,813 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1484 | 1/4/2008 | (51,471,494.80) | 31,043,318 | U.S. DOLLARS FUNDS PAID | Other Disbursements |

### Per Capital Activity Spreadsheet [2]

| Investor | Amount | Amount Wired | Variance from Collura Exh. 12 |
|---|---|---|---|
| CAYMEN PARTNERS | $ (1,000,000.00) | $ (1,000,000.00) | - |
| ALPINE II - RHO/RUCH | $ (8,600,400.38) | $ (8,600,400.38) | |
| ALPINE I - RHO/RUCH | $ (7,399,599.62) | $ (7,399,599.62) | |
| **Total Alpine** | $ (16,000,000.00) | $ (16,000,000.00) | - |
| MARCELLE QUINTON | $ (60,000.00) | $ (60,000.00) | - |
| MATAN | $ (20,000.00) | $ (20,000.00) | - |
| PETER HIRSCHL | $ (125,000.00) | $ (125,000.00) | - |
| SPRING MOUNTAIN QP I | $ (2,800,000.00) | $ (2,800,000.00) | - |
| MORRIS SMITH | $ (250,000.00) | $ (250,000.00) | - |
| JUDITH BRAVMANN KAUFTHAL | $ (400,000.00) | $ (400,000.00) | - |
| IRWIN FROMME IRA | $ (230,000.00) | $ (230,000.00) | - |
| CAROL BRAVMANN | $ (250,000.00) | $ (250,000.00) | - |
| HOROWITZ CHARITABLE LEAD TRUST | $ (392,800.00) | $ (392,800.00) | - |
| SELIGER IRA | $ (25,050.00) | $ (25,050.00) | - |
| CHARLES SELIGER | 200,000.00 | 200,000.00 | - |
| YAD SARAH | 750,000.00 | 750,000.00 | - |
| LIECHTUNG | 150,000.00 | 150,000.00 | - |
| GROSSMAN CURRENCY - CALIBRE | 10,160,000.00 | 10,160,000.00 | - |
| CONGREGATION BETH PINCHAS | $ (450,000.00) | $ (450,000.00) | - |
| JAN KESTENBAUM | $ (21,233.77) | $ (21,233.77) | - |
| LEONARD TOBOROFF | $ (430,104.38) | $ (387,093.94) | - |
| POMRENZE | $ (31,850.65) | $ (31,850.65) | - |
| BURT ROSS | $ (324,424.01) | $ (324,424.01) | - |
| CHULA PARTNERS | $ (1,065,623.40) | $ (959,061.06) | - |
| MAX PALEVSKY 1993 TRUST | $ (3,391,887.65) | $ (3,052,698.89) | - |
| STERLING STAMOS SECURITY SELECT | $ (10,389,694.63) | $ (9,350,725.17) | - |
| MOLLIE ZWEIG | $ (400,000.00) | $ (400,000.00) | - |
| TRAVERSE PARK - BOWMAN | $ (856,272.14) | $ (770,644.93) | - |
| KASPER | $ (48,347.75) | $ (48,347.75) | - |
| STERLING STAMOS QUANT ARB | $ (18,609,539.56) | $ (16,748,585.60) | - |
| STRUCTURED FINANCE - DB | $ (36,601,793.47) | $ (32,941,614.12) | - |
| STERLING STAMOS SECURITY - BNP | $ (57,190,549.78) | $ (51,471,494.80) | - |

### Per QuickBooks General Ledger [3]

| Date | Memo | Amount |
|---|---|---|
| 1/3/2008 | 1/1 Dist - Caymen | $ (1,000,000.00) |
|  |  |  |
| 1/3/2008 | 1/1 Dist - Alpine | $ (16,000,000.00) |
| 1/3/2008 | 1/1 Dist - Quinton | $ (60,000.00) |
| 1/3/2008 | 1/1 Dist - Amer. Friends Mata | $ (20,000.00) |
| 1/3/2008 | 1/1 Dist - Hirschl | $ (125,000.00) |
| 1/3/2008 | 1/1 Dist - SMC QP I | $ (2,800,000.00) |
| 1/3/2008 | 1/1 Dist - Smith | $ (250,000.00) |
| 1/3/2008 | 1/1 Dist - J. Bravmann (Kauf) | $ (400,000.00) |
| 1/3/2008 | 1/1 Dist - Fromme IRA | $ (230,000.00) |
| 1/3/2008 | 1/1 Dist - C. Bravmann (Berlin) | $ (250,000.00) |
| 1/3/2008 | 1/1 Dist - Horowitz | $ (392,800.00) |
| 1/3/2008 | 1/1 Dist - C. Seliger | $ (25,050.00) |
| 1/3/2008 | 1/1 Cont - L. Seliger | $ 200,000.00 |
| 1/4/2008 | 1/1 Cont - Yad Sarah | $ 750,000.00 |
| 1/4/2008 | 1/1 Cont - Liechtung | $ 150,000.00 |
| 1/4/2008 | 1/1 Cont - Grossman (Calibre) | $ 10,160,000.00 |
| 1/4/2008 | 1/1 Dist - Congregation Beth | $ (450,000.00) |
| 1/4/2008 | 1/1 Dist - Kestenbaum | $ (21,233.77) |
| 1/4/2008 | 1/1 Dist - Toboroff | $ (387,093.94) |
| 1/4/2008 | 1/1 Dist - Pomrenze | $ (31,850.65) |
| 1/4/2008 | 1/1 Dist - Ross | $ (324,424.01) |
| 1/4/2008 | 1/1 Dist - Chula | $ (959,061.06) |
| 1/4/2008 | 1/1 Dist - Palevsky | $ (3,052,698.89) |
| 1/4/2008 | 1/1 Dist - S. Stamos | $ (9,350,725.17) |
| 1/4/2008 | 1/1 Dist - Zweig | $ (400,000.00) |
| 1/4/2008 | 1/1 Dist - Traverse Park | $ (770,644.93) |
| 1/4/2008 | 1/1 Dist - Kasper | $ (48,347.75) |
| 1/4/2008 | 1/1 Dist - S. Stamos | $ (16,748,585.60) |
| 1/4/2008 | 1/1 Dist - DB Structured | $ (32,941,614.12) |
| 1/4/2008 | 1/1 Dist - S. Stamos (BNP) | $ (51,471,494.80) |

**Reconciliation of Ascot Partners Capital Activity Report**
**Q4 2007**

Attachment 5.B

| Per Collura Exhibit 12 [1] | | | | | |
|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
| ASC1485 | 1/4/2008 | (6,000.00) | 31,037,318 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1486 | 1/7/2008 | (786,332.30) | 30,250,985 | TRANSFER FUNDS - REDACTED0024 - REDACTED0618 FUNDS PAID | Other Disbursements |
| ASC1487 | 1/7/2008 | (45,794.03) | 30,205,191 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1488 | 1/7/2008 | (1,000,000.00) | 29,205,191 | U.S. DOLLARS FUNDS PAID | Other Disbursements |
| ASC1489 | 1/7/2008 | 200,000.00 | 29,405,191 | U.S. DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1490 | 1/8/2008 | (10,201.47) | 29,394,990 | U.S. DOLLARS FUNDS PAID | Transfers to GCC JPMC Account |
| ASC1491 | 1/9/2008 | (1,092,832.64) | 28,302,157 | BALANCE OF 2007 FEE - REDACTED0297 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1492 | 1/9/2008 | (165,000.00) | 28,137,157 | ASP REDEMPTIONS - REDACTED0195 - REDACTED0618 FUNDS PAID | Other Disbursements |
| ASC1493 | 1/9/2008 | (165,000.00) | 27,972,157 | ASP REDEMPTIONS - REDACTED0196 - REDACTED0618 FUNDS PAID | Other Disbursements |
| ASC1494 | 1/11/2008 | (200,000.00) | 27,772,157 | U.S. DOLLARS FUNDS PAID | Other Disbursements |

| Per Capital Activity Spreadsheet [2] | | | | |
|---|---|---|---|---|
| Investor | | Amount | Amount Wired | Variance from Collura Exh. 12 |
| GOLDENSON IRA | $ | (6,000.00) | (6,000.00) | - |
| ESTATE OF MARTIN MEYERSON | $ | (786,332.30) | (786,332.30) | - |
| HARRIS GUEDALIA | $ | (45,794.03) | (45,794.03) | - |
| GERRY FABRIKANT | $ | (1,000,000.00) | (1,000,000.00) | - |
| | | | | 200,000.00 |
| | | | | (10,201.47) |
| 2007 MANAGEMENT FEES | $ | (28,292,985.66) | (1,092,832.64) | - [5] |
| MERKIN 1992 TRUSTS | $ | (330,000.00) | (165,000.00) | - [ ] |
| MERKIN 1992 TRUSTS | $ | (330,000.00) | (165,000.00) | - [ ] |
| | | | | (200,000.00) |

| Per QuickBooks General Ledger [3] | | |
|---|---|---|
| Date | Memo | Amount |
| 1/4/2008 1/1 Dist - Goldenson | $ | (6,000.00) |
| 1/7/2008 1/1 Dist - Meyerson | $ | (786,332.30) |
| 1/7/2008 1/1 Dist - Geudalia | $ | (45,794.03) |
| 1/7/2008 1/1 Dist - Fabrikant | $ | (1,000,000.00) |
| | | |
| 1/8/2008 Div W/H PAID | $ | (10,201.47) |
| 1/9/2008 Pay 2007 Mgmt fee | $ | (1,092,832.64) [5] |
| 1/9/2008 1/1 Dist - Merkin Trust | $ | (165,000.00) [ ] |
| 1/9/2008 1/1 Dist - Merkin Trust | $ | (165,000.00) [ ] |
| | | |

Notes
[1] Excerpt from Expert Report of Lisa M. Collura, March 20, 2015, Exhibit 12
[2] Capital Activity, December 31, 2007, GCC-P 0117011.
[3] Ascot Partners RS L.P. General Ledger as of September 30, 2008, GCC-P 0005135.
[4] Per the Capital Activity Spreadsheet, the investor redemption to MERKIN 1992 TRUSTS was $330,000. This amount is shown as two disbursements in the bank statements and QuickBooks.
[5] In addition to the three December 2007 and January 2008 disbursements on the bank statements related to 2007 Management Fees totaling $17,292,832.64 [$(10,700,000.00) + $(5,500,000.00) + $(1,092,832.64 = $(17,292,832.64] , the following additional disbursements were made in 2007 that relate to Management Fees  $(4,000,000.00) (7/13/07), $(2,500,000.00) (7/30/07), $(3,500,000.00) (10/25/07) and  $(1,000,000.00) (11/6/07). The sum of all disbursements is $28,292,832.64 [$(17,292,832.64) + $(4,000,000.00) + $(2,500,000.00) + $(3,500,000.00) + $(1,000,000.00) = $(28,292,832.64)].
[6] Interest transactions do not appear on the Capital Activity Spreadsheet.

CONFIDENTIAL MATERIAL

**Reconciliation of Ascot Partners Capital Activity Report**
**Q2 2008**

Atachment 5.C

### Per Collura Exhibit 12 [1]

| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
|---|---|---|---|---|---|
| ASC1548 | 6/24/2008 | 3,000,000 00 | 17,481,915 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1549 | 6/25/2008 | 1,000,000 00 | 18,481,915 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1550 | 6/26/2008 | 195,000 00 | 18,676,915 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1551 | 6/26/2008 | 195,000 00 | 18,871,915 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1552 | 6/27/2008 | 2,026,889 24 | 20,898,804 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1554 | 6/30/2008 | 200,000 00 | 21,098,804 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1583 | 7/1/2008 | 18,951 73 | 21,117,756 | CREDIT INTEREST FOR JUNE USD BALANCES | Inflows From Other Sources |
| ASC1555 | 7/1/2008 | 98,000 00 | 21,215,756 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1556 | 7/1/2008 | 100,000 00 | 21,315,756 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1557 | 7/1/2008 | 2,000,000 00 | 23,315,756 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1558 | 7/1/2008 | 400,000 00 | 23,715,756 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1559 | 7/1/2008 | (100,000 00) | 23,615,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1560 | 7/1/2008 | (30,000 00) | 23,585,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1561 | 7/1/2008 | (70,000 00) | 23,515,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1562 | 7/1/2008 | (300,000 00) | 23,215,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1563 | 7/1/2008 | (6,000 00) | 23,209,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1564 | 7/1/2008 | (20,000 00) | 23,189,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1565 | 7/1/2008 | (300,000 00) | 22,889,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1566 | 7/1/2008 | (25,000 00) | 22,864,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1567 | 7/1/2008 | (60,000 00) | 22,804,756 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC2143 | 7/1/2008 | 50,000 00 | 22,854,756 | CHK DEP 20080701 | Inflows From Other Sources |
| ASC2144 | 7/1/2008 | 40,000 00 | 22,894,756 | CHK DEP 20080701 | Inflows From Other Sources |
| ASC1568 | 7/2/2008 | 50,000,000 00 | 72,894,756 | U S DOLLARS FUNDS RECEIVED | Inflows from BLMIS |
| ASC1569 | 7/2/2008 | (21,340 83) | 72,873,415 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1570 | 7/2/2008 | (32,011 24) | 72,841,404 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1571 | 7/2/2008 | (3,607,983 22) | 69,233,421 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1572 | 7/3/2008 | (24,209,122 50) | 45,024,298 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1573 | 7/3/2008 | (14,814,135 65) | 30,210,163 | U S DOLLARS FUNDS PAID | Other Disbursements |

### Per Capital Activity Spreadsheet [2]

| Investor | Amount | Amount Wired | Variance from Collura Exh. 12 |
|---|---|---|---|
| CHASREL ASSOC - FELDMAN | $ 3,000,000 00 | $ 3,000,000 00 | - |
| ALICE SMOKLER - D KAHN | $ 1,000,000 00 | $ 1,000,000 00 | - |
| JOAN ROSS GRAT - ISAAC | $ 195,000 00 | $ 195,000 00 | - |
| JOAN ROSS GRAT - KATHRYN | $ 195,000 00 | $ 195,000 00 | - |
| CAROL GROSSMAN IRA (KAHN) | $ 2,026,889 24 | $ 2,026,889 24 | - |
| ROMAN IGOLNIKOV | $ 200,000 00 | $ 200,000 00 | - |
| | | | 18,951 73 [5] |
| ARLENE EIS | $ 98,000 00 | $ 98,000 00 | - |
| MALCOLM THOMSON | $ 500,000 00 | $ 100,000 00 | - [4] |
| CHARLOTTE LIECHTUNG | $ 2,000,000 00 | $ 2,000,000 00 | - |
| MALCOLM THOMSON | $ 500,000 00 | $ 400,000 00 | - [4] |
| LADY QUINTON | $ (100,000 00) | $ (100,000 00) | - |
| GEORGE RUBIN | $ (30,000 00) | $ (30,000 00) | - |
| MATAN | $ (70,000 00) | $ (70,000 00) | - |
| SYLVIA KORNGOLD | $ (300,000 00) | $ (300,000 00) | - |
| DAN GOLDENSON IRA | $ (6,000 00) | $ (6,000 00) | - |
| SKG GOLDENSON | $ (20,000 00) | $ (20,000 00) | - |
| MILTON GILBERT | $ (300,000 00) | $ (300,000 00) | - |
| DAVID GORDON IRA | $ (25,000 00) | $ (25,000 00) | - |
| CAROL BRAVMANN | $ (60,000 00) | $ (60,000 00) | - |
| RON FRANK - RJF PENSION | $ 50,000 00 | $ 50,000 00 | - |
| MICHAEL ROSENSWEIG | $ 40,000 00 | $ 40,000 00 | - |
| ASCOT GROUP LP | $ 49,551,581 15 | $ 49,551,581 15 | 448,418 85 |
| JAN KESTENBAUM | $ (21,340 83) | $ (21,340 83) | - |
| JAY POMRENZE | $ (32,011 24) | $ (32,011 24) | - |
| PHIBRO ANIMAL HEALTH | $ (3,797,877 07) | $ (3,607,983 22) | - |
| TLL DUTCH - IDT | $ (26,899,025 53) | $ (24,209,122 50) | - |
| ALPINE - RUCH | $ (16,460,150 72) | $ (14,814,135 65) | - |

### Per QuickBooks General Ledger [3]

| Date | Memo | Amount |
|---|---|---|
| 6/24/2008 | 7/1 cont - Chasrel | $ 3,000,000 00 |
| 6/25/2008 | 7/1 Cont - Smokler | $ 1,000,000 00 |
| 6/26/2008 | 7/1 Cont - Ross | $ 195,000 00 |
| 6/26/2008 | 7/1 Cont - Ross | $ 195,000 00 |
| 6/27/2008 | 7/1 Cont - Grossman | $ 2,026,889 24 |
| 6/30/2008 | 7/1 Cont - Igolnikov | $ 200,000 00 |
| 7/1/2008 | JUNE CREDIT INT | $ 18,951 73 |
| 7/1/2008 | 7/1 Cont - Alt Inv | $ 98,000 00 |
| 7/1/2008 | 7/1 Cont - Thomson | $ 100,000 00 [4] |
| 7/1/2008 | 7/1 Cont - Liechtung | $ 2,000,000 00 |
| 7/1/2008 | 7/1 Cont - Thomson | $ 400,000 00 [4] |
| 7/1/2008 | 7/1 Dist - Quinton | $ (100,000 00) |
| 7/1/2008 | 7/1 Dist - Rubin | $ (30,000 00) |
| 7/1/2008 | 7/1 Dist - Matan | $ (70,000 00) |
| 7/1/2008 | 7/1 Dist - Korngold | $ (300,000 00) |
| 7/1/2008 | 7/1 Dist - Goldenson | $ (6,000 00) |
| 7/1/2008 | 7/1 Dist - SKG | $ (20,000 00) |
| 7/1/2008 | 7/1 Dist - Gilbert | $ (300,000 00) |
| 7/1/2008 | 7/1 Dist - Gordon IRA | $ (25,000 00) |
| 7/1/2008 | 7/1 Dist - Bravmann | $ (60,000 00) |
| 7/1/2008 | 7/1 Cont - Frank | $ 50,000 00 |
| 7/1/2008 | 7/1 Cont - Rosensweig | $ 40,000 00 |
| 7/2/2008 | 7/1 Madoff redemption | $ 50,000,000 00 |
| 7/2/2008 | 7/1 Dist - Kestenbaum | $ (21,340 83) |
| 7/2/2008 | 7/1 Dist - Pomrenze | $ (32,011 24) |
| 7/2/2008 | 7/1 Dist - Phibro | $ (3,607,983 22) |
| 7/3/2008 | 7/1 Dist - TLL Dutch | $ (24,209,122 50) |
| 7/3/2008 | 7/1 Dist - Alpine | $ (14,814,135 65) |

CONFIDENTIAL MATERIAL

**Reconciliation of Ascot Partners Capital Activity Report**
**Q2 2008**

Atachment 5.C

| Per Collura Exhibit 12 [1] | | | | | | Per Capital Activity Spreadsheet[2] | | | | | Per QuickBooks General Ledger [3] | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category | | Investor | Amount | Amount Wired | Variance from Collura Exh. 12 | Date | Memo | Amount |
| ASC1574 | 7/3/2008 | (11,000,000 00) | 19,210,163 | U S DOLLARS FUNDS PAID | Transfers to Ascot Fund | ASCOT FUND LTD | $ (11,000,000 00) | (11,000,000 00) | - | 7/3/2008 | 7/1 Dist - Ascot Fund | $ (11,000,000 00) |
| ASC2145 | 7/7/2008 | 400,000 00 | 19,610,163 | CHX DEP 20080707 | Inflows From Other Sources | DAVID KAHN | $ 400,000 00 | 400,000 00 | - | 7/7/2008 | 7/1 Cont - Kahn | $ 400,000 00 |
| ASC1575 | 7/9/2008 | (100,000 00) | 19,510,163 | REDACTED0277 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account | HEDY WEGIER | $ (100,000 00) | (100,000 00) | - | 7/9/2008 | 7/1 Dist - Wegier | $ (100,000 00) |
| ASC1576 | 7/21/2008 | (30,000 00) | 19,480,163 | U S DOLLARS FUNDS PAID | Other Disbursements | KASPER | $ (30,000 00) | (30,000 00) | - | 7/21/2008 | 7/1 Dist - Kasper | $ (30,000 00) |
| ASC1577 | 7/22/2008 | (5,065 00) | 19,475,098 | U S DOLLARS FUNDS PAID | Other Disbursements | SUZANNE GOLDENSON IRA | $ (5,065 00) $ | (5,065 00) | - | 7/22/2008 | 7/1 Dist - Goldenson IRA | $ (5,065 00) |
| ASC1578 | 7/24/2008 | (1,000,000 00) | 18,475,098 | 2008 FEE ADVANCE ASP - REDACTED0151 - REDACTED0618 FUNDS PAID | Transfers to GCC JPMC Account | | | | (1,000,000 00) | 7/24/2008 | ASP Fee Advance to GCC Morgan | $ (1,000,000 00) |
| ASC1579 | 7/24/2008 | (1,000,000 00) | 17,475,098 | U S DOLLARS FUNDS PAID | Transfers to GCC MS Account | | | | (1,000,000 00) | 7/24/2008 | ASP Fee Advance to GCC Chase | $ (1,000,000 00) |
| ASC1580 | 7/29/2008 | (1,646,015 07) | 15,829,083 | U S DOLLARS FUNDS PAID | Other Disbursements | ALPINE - RUCH | $ (1,646,015 07) | (1,646,015 07) | - | 7/29/2008 | 7/1 Final Payout - Alpine | $ (1,646,015 07) |
| ASC1581 | 7/29/2008 | (189,893 85) | 15,639,189 | U S DOLLARS FUNDS PAID | Other Disbursements | PHIBRO ANIMAL HEALTH | $ (189,893 85) | (189,893 85) | - | 7/29/2008 | 7/1 Final Payout - Phibro | $ (189,893 85) |
| ASC1582 | 7/29/2008 | (2,689,903 03) | 12,949,286 | U S DOLLARS FUNDS PAID | Other Disbursements | TLL DUTCH - IDT | $ (2,689,903 03) | (2,689,903 03) | - | 7/29/2008 | 7/1 Final Payout - TLL Dutch | $ (2,689,903 03) |

Notes:
[1] Excerpt from Expert Report of Lisa M Collura, March 20, 2015, Exhibit 12; Ascot Partners L P; Bank Statement for the period of June 1, 2008 to June 30, 2008: MSYSAA0004969-5055 (at 5007 - 013); Ascot Partners L P; Bank Statement for the period of July 1, 2008 to July 31, 2008: MSYSAA0004969-5055 (at 5014 - 021)
[2] Capital Activity, July 1, 2008, GCC-P 0116669
[3] Ascot Partners RS L P  General Ledger as of September 30, 2008, GCC-P 0005135
[4] Per the Capital Activity Spreadsheet, the investor contribution from MALCOM THOMSON was $500,000.  This amount is shown as two inflows in the bank statements and QuickBooks.
[5] Interest transactions do not appear on the Capital Activity Spreadsheet.

**Reconciliation of Ascot Partners Capital Activity Report**
**Q3 2008**

Attachment 5.D

### Per Collura Exhibit 12 [1]

| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
|---|---|---|---|---|---|
| ASC1589 | 9/24/2008 | 100,000 00 | 12,718,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1590 | 9/25/2008 | 100,000 00 | 12,818,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1591 | 9/26/2008 | 100,000 00 | 12,918,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1592 | 9/29/2008 | 750,000 00 | 13,668,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1593 | 9/29/2008 | 2,750,000 00 | 16,418,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1594 | 9/29/2008 | 100,000 00 | 16,518,867 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1595 | 9/29/2008 | (53,898 66) | 16,464,969 | U S DOLLARS FUNDS PAID | Transfers to GCC JPMC Account |
| ASC1597 | 9/30/2008 | 250,000 00 | 16,714,969 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1622 | 10/1/2008 | 15,177 76 | 16,730,147 | CREDIT INTEREST FOR SEPTEMBER USD BALANCES | Inflows From Other Sources |
| ASC1598 | 10/1/2008 | (8,500,000 00) | 8,230,147 | U S DOLLARS FUNDS PAID | Transfers to Ascot Fund |
| ASC1599 | 10/1/2008 | 45,000,000 00 | 53,230,147 | U S DOLLARS FUNDS RECEIVED | Inflows from BLMIS |
| ASC1600 | 10/2/2008 | (20,000 00) | 53,210,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1601 | 10/2/2008 | (75,000 00) | 53,135,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1602 | 10/2/2008 | (6,000 00) | 53,129,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1603 | 10/2/2008 | (6,300,000 00) | 46,829,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1604 | 10/2/2008 | (30,000 00) | 46,799,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1605 | 10/2/2008 | (35,000 00) | 46,764,147 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1606 | 10/3/2008 | (22,740,218 52) | 24,023,928 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1607 | 10/3/2008 | (42,147 25) | 23,981,781 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1608 | 10/3/2008 | (8,257,200 41) | 15,724,580 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1609 | 10/3/2008 | (28,098 16) | 15,696,482 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1610 | 10/3/2008 | (2,621,579 06) | 13,074,903 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1611 | 10/3/2008 | (582,917 41) | 12,491,986 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1612 | 10/7/2008 | 2,500,000 00 | 14,991,986 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1613 | 10/7/2008 | 2,500,000 00 | 17,491,986 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |
| ASC1614 | 10/7/2008 | (25,140 00) | 17,466,846 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC2146 | 10/7/2008 | 100,000 00 | 17,566,846 | CHECK DEPOSIT | Inflows From Other Sources |
| ASC1615 | 10/8/2008 | (20,730 00) | 17,546,116 | REDACTED5428 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1616 | 10/9/2008 | (10,000,000 00) | 7,546,116 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1617 | 10/9/2008 | 5,000,000 00 | 12,546,116 | U S DOLLARS FUNDS RECEIVED | Inflows From Other Sources |

### Per Capital Activity Spreadsheet [2]

| Investor | Amount | Amount Wired | Variance from Collura Exh. 12 |
|---|---|---|---|
| NEW GUARDIAN TRUST - DRUCKER | $ 400,000 00 | $ 100,000 00 | - [4] |
| NEW GUARDIAN TRUST - DRUCKER | $ 400,000 00 | $ 100,000 00 | - [4] |
| NEW GUARDIAN TRUST - DRUCKER | $ 400,000 00 | $ 100,000 00 | - [4] |
| JOSHUA BERMAN IRA | $ 750,000 00 | $ 750,000 00 | - |
| ETZION FOUNDATION | $ 2,750,000 00 | $ 2,750,000 00 | - |
| NEW GUARDIAN TRUST - DRUCKER | $ 400,000 00 | $ 100,000 00 | - [4] |
| | | | (53,898 66) |
| JEFF MARKOWITZ - APMONT PENSION | $ 250,000 00 | $ 250,000 00 | - |
| | | | 15,177 76 [5] |
| ASCOT FUND LTD | $ (8,500,000 00) | $ (8,500,000 00) | - |
| ASCOT LP TOTAL | $ 45,727,278 02 | 45,727,278 02 | (727,278 02) |
| SKG - GOLDENSON | $ (20,000 00) | $ (20,000 00) | - |
| MARCELLE QUINTON | $ (75,000 00) | $ (75,000 00) | - |
| DANIEL GOLDENSON IRA | $ (6,000 00) | $ (6,000 00) | - |
| DANIEL STRAUS | $ (6,300,000 00) | $ (6,300,000 00) | - |
| GEORGE RUBIN | $ (30,000 00) | $ (30,000 00) | - |
| CAROL BRAVMANN | $ (35,000 00) | $ (35,000 00) | - |
| ILSHAR | $ (22,740,218 52) | $ (22,740,218 52) | - |
| POMRENZE | $ (42,147 25) | $ (42,147 25) | - |
| SMC ALTERNATIVE STEATEGIES | $ (8,691,789 91) | $ (8,257,200 41) | - [5] |
| KESTENBAUM | $ (28,098 16) | $ (28,098 16) | - |
| MILTON GILBERT | $ (2,759,556 91) | $ (2,621,579 06) | - [6] |
| ELMA GOLBERT | $ (613,597 27) | $ (582,917 41) | - [7] |
| SMC RESERVE FUND II | $ 2,500,000 00 | $ 2,500,000 00 | - |
| SPRING MOUNTAIN QP I | $ 2,500,000 00 | $ 2,500,000 00 | - |
| CHARLES SELIGER IRA | $ (25,140 00) | $ (25,140 00) | - |
| JEROME BALSAM | $ 100,000 00 | $ 100,000 00 | - |
| HOROWITZ LEAD TRUST | $ (20,730 00) | $ (20,730 00) | - |
| | | | (10,000,000 00) |
| | | 5,000,000 00 | |

### Per QuickBooks General Ledger [3]

| Date | Memo | Amount |
|---|---|---|
| 09/24/2008 | 10/1 Cont - New Guardian Trust | $ 100,000 00 [4] |
| 09/25/2008 | 10/1 Cont - New Guardian Trust | $ 100,000 00 [4] |
| 09/26/2008 | 10/1 Cont - New Guardian Trust | $ 100,000 00 [4] |
| 09/29/2008 | 10/1 Cont - Berman IRA | $ 750,000 00 |
| 09/29/2008 | 10/1 Cont - Etzion | $ 2,750,000 00 |
| 09/29/2008 | 10/1 Cont - New Guardian Trust | $ 100,000 00 [4] |
| 09/29/2008 | Pay Div W/H | $ (53,898 66) |
| 09/30/2008 | 10/1 Cont - Moskowitz (Apmont) | $ 250,000 00 |
| 10/01/2008 | Sept Credit Int - MS | $ 15,177 76 |
| 10/01/2008 | 10/1 Dist - ASF | $ (8,500,000 00) |
| 10/01/2008 | 10/1 Madoff redemption | $ 45,000,000 00 |
| 10/02/2008 | 10/1 Dist - SKG | $ (20,000 00) |
| 10/02/2008 | 10/1 Dist - Quinton | $ (75,000 00) |
| 10/02/2008 | 10/1 Dist - Goldenson | $ (6,000 00) |
| 10/02/2008 | 10/1 Dist - Straus | $ (6,300,000 00) |
| 10/02/2008 | 10/1 Dist - Rubin | $ (30,000 00) |
| 10/02/2008 | 10/1 Dist - Bravmann | $ (35,000 00) |
| 10/03/2008 | 10/1 Dist - Ilshar | $ (22,740,218 52) |
| 10/03/2008 | 10/1 Dist - Pomrenze | $ (42,147 25) |
| 10/03/2008 | 10/1 Dist - SMC Alt | $ (8,257,200 41) [5] |
| 10/03/2008 | 10/1 Dist - Kestenbaum | $ (28,098 16) |
| 10/03/2008 | 10/1 Dist - Gilbert | $ (2,621,579 06) [6] |
| 10/03/2008 | 10/1 Dist - Gilbert | $ (582,917 41) [7] |
| 10/07/2008 | 10/1 Cont - SMC Res II | $ 2,500,000 00 |
| 10/07/2008 | 10/1 Cont - SMC QP I | $ 2,500,000 00 |
| 10/07/2008 | 10/1 Dist - Seliger IRA | $ (25,140 00) |
| 10/07/2008 | 10/1 Cont - Balsam | $ 100,000 00 |
| 10/08/2008 | 10/1 Dist - Horowitz | $ (20,730 00) |
| 10/09/2008 | Additional capital to Madoff | $ (10,000,000 00) |
| 10/10/2008 | Wire from ASF reduce 10/1 dist | $ 5,000,000 00 |

**Reconciliation of Ascot Partners Capital Activity Report**
**Q3 2008**

Attachment 5.D

| Per Collura Exhibit 12 [1] | | | | | |
|---|---|---|---|---|---|
| FTI ID | Date | Amount | Running Balance | Description Per Morgan Stanley Account Statement - AS REDACTED | Transfer Category |
| ASC1618 | 10/16/2008 | (2,000,000 00) | 10,546,116 | REDACTED2318 - REDACTED0618 FUNDS PAID | Transfers to GCC MS Account |
| ASC1619 | 10/28/2008 | (30,679 86) | 10,515,436 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1620 | 10/28/2008 | (434,589 50) | 10,080,846 | U S DOLLARS FUNDS PAID | Other Disbursements |
| ASC1621 | 10/28/2008 | (137,977 85) | 9,942,869 | U S DOLLARS FUNDS PAID | Other Disbursements |

| Per Capital Activity Spreadsheet [2] | | | |
|---|---|---|---|
| Investor | Amount | Amount Wired | Variance from Collura Exh. 12 |
| | | | (2,000,000 00) |
| ELMA GOLBERT | $ (613,597 27) | $ (30,679 86) | - [7] |
| SMC ALTERNATIVE STEATEGIES | $ (8,691,789 91) | $ (434,589 50) | - [5] |
| MILTON GILBERT | $ (2,759,556 91) | $ (137,977 85) | - [6] |

| Per QuickBooks General Ledger [3] | | |
|---|---|---|
| Date | Memo | Amount |
| 10/16/2008 | FEE ADVANCE PAID TO GCC | $ (2,000,000 00) |
| 10/28/2008 | 10/1 Final Payout - Gilbert | $ (30,679 86) [7] |
| 10/28/2008 | 10/1 Final Payout - SMC Alt | $ (434,589 50) [5] |
| 10/28/2008 | 10/1 Final Payout - Gilbert | $ (137,977 85) [6] |

Notes:

[1] Excerpt from Expert Report of Lisa M Collura, March 20, 2015, Exhibit 12; Bank Statement for the period of September 1, 2008 to September 30, 2008: MSYSAA0004969-5055 (at 5028 - 033); Ascot Partners L P; Bank Statement for the period of October 1, 2008 to October 31, 2008: MSYSAA0004969-5055 (at 5034 - 041)

[2] Capital Activity, October 1, 2008, GCC-P 0006175

[3] Ascot Partners RS L P , QuickBooks General Ledger

[4] Per the Capital Activity Spreadsheet, the investor contribution from NEW GUARDIAN TRUST - DRUCKER was $400,000 This amount is shown as four inflows on the bank statements and QuickBooks

[5] Per the Capital Activity Spreadsheet, the investor redemption to SMC ALTERNATIVE STEATEGIES was $8,691,789 91 This amount is shown as two disbursements on the bank statements and QuickBooks

[6] Per the Capital Activity Spreadsheet, the investor redemption to MILTON GILBERT was $2,759,556 91 This amount is shown as two disbursements on the bank statements and QuickBooks

[7] Per the Capital Activity Spreadsheet, the investor redemption to EMMA GILBERT was $613,597 27 This amount is shown as two disbursements on the bank statements and QuickBooks

[8] Interest transactions do not appear on the Capital Activity Spreadsheet

CONFIDENTIAL MATERIAL

Attachment 6

## Ascot Fund Identified Net Cash Requirement and Related Transfers from Ascot Partners to Ascot Fund

| Break Period / Quarter Ending: | Ascot Fund Net Cash Requirement | Total Transfers to Ascot Fund from Ascot Partners |
|---|---|---|
| 2005 Q4 [1] | $16,883,799 | $17,250,000 |
| 2006 Q1 [2] | $43,276,122 | $43,000,000 |
| 2006 Q4 [3] | $12,949,534 | $12,750,000 |
| 2007 Q4 [4] | $13,824,662 | $13,825,000 |
| 2008 Q2 [5] | $11,031,076 | $11,000,000 |
| 2008 Q3 [6] | $8,396,575 | $8,500,000 |

Notes:

[1] Capital Activity - January 1, 2006: GCC-P 0036303; Ascot Partners, LP, Bank Statement for the period of January 1, 2006 through January 31, 2006: MSYSAF0001387-398 (at 391); Ascot Fund Ltd. QuickBooks General Ledger.

[2] Capital Activity - April 1, 2006: GCC-P 0002177; Ascot Partners, LP, Bank Statement for the period of April 1, 2006 through April 30, 2006: MSYSAF0001415-424 (at 417); Ascot Fund Ltd. QuickBooks General Ledger.

[3] Capital Activity - January 1, 2007: GCC-P 0114356; Ascot Partners, LP, Bank Statement for the period of January 1, 2007 through January 31, 2007: MSYSAA0004869-968 (at 872); Ascot Fund Ltd. QuickBooks General Ledger.

[4] Capital Activity - December 31, 2007: GCC-P 0117011; Ascot Partners, LP, Bank Statement for the period of January 1, 2008 through January 31, 2008: MSYSAA0004969-5055 (at 970); Ascot Partners, LP, Bank Statement for the period of February 1, 2008 through February 28, 2008: MSYSAA0004969-5055 (at 980); Ascot Fund Ltd. QuickBooks General Ledger.

[5] Capital Activity - July 1, 2008: GCC-P 0116669; Ascot Partners, LP, Bank Statement for the period of July 1, 2008 through July 31, 2008: MSYSAA0004969-5055 (at 5016); Ascot Fund Ltd. QuickBooks General Ledger.

[6] Capital Activity - October 1, 2008: GCC-P 0006175; Ascot Partners, LP, Bank Statement for the period of October 1, 2008 through October 31, 2008: MSYSAA0004969-5055 (at 5035); Ascot Fund Ltd. QuickBooks General Ledger.