# Exhibit D

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  CASE NO. 08-01789-smb

4  - - - - - - - - - - - - - - - - - - x

5  SECURITIES INVESTOR PROTECTION

6  CORPORATION

7  v.

8  BERNARD L. MADOFF INVESTMENT

9  SECURITIES, LLC, et al,

10          Debtors.

11  - - - - - - - - - - - - - - - - - - x

12

13                      U.S. Bankruptcy Court

14                      One Bowling Green

15                      New York, New York

16

17                      April 18, 2017

18                      2:05 PM

19

20

21  B E F O R E :

22  HON. STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  Unidentified

Page 9

1    evidence of disbursements.

2           And then the trustee is asking me, as the fact

3    finder, to extrapolate backwards, if that's the right

4    phrase, and conclude or infer from that that even when there

5    are no corresponding records that the PW still stands for a

6    disbursement.  And I don't know how the trustee proves that

7    except statistically.

8           MR. KIRBY:  Okay.  That would be great if they had

9    offered a statistician to support that claim.

10          THE COURT:  Well, the -- I -- I think one of your

11   arguments, and I agree with it, is I would not permit -- and

12   maybe we're getting ahead of ourselves.

13          MR. KIRBY:  Yeah.

14          THE COURT:  I wouldn't accept testimony from Ms.

15   Collura or Mr. Greenblatt that it's reasonable to infer that

16   the records that are missing would prove the trustee's case.

17   It seems to me that's an inference I have to draw from the

18   evidence.  They can tell me on how many instances the PW

19   notation matched the disbursement, what the universe of PW's

20   are and, you know, whatever other relative -- evidence may

21   be relevant to that determination.  And then I will either

22   draw or not draw the inference that the trustee is asking me

23   to draw.

24          MR. KIRBY:  As the finder of fact I agree.

25          THE COURT:  Right.

1    there are -- the records are totally missed.

2            THE COURT:  Well, you know, I would like to hear

3    from the forensic accountants on what they rely on.  I know

4    that there are many cases where forensics accountants will

5    reconstruct fraudulent records.  We wouldn't need forensic

6    accountants if we didn't have problems with fraudulent

7    records and I would like to know what it is they normally

8    rely on and how they go about doing what they do generally

9    and how they did what they did in this particular case.

10            MR. KIRBY:  I can respect that that might be

11   appropriate, but what the experts have written in their

12   reports is that they're not relying on their reconstruction

13   of missing records.  What they're relying on is an inference

14   that they've drawn from what missing records would show.

15   And that's -- that -- there's no foundation for.

16            THE COURT:  But I said that I would or would not

17   draw that inference.  They're going to tell me that they

18   found that correlation that we discussed, and they're going

19   to ask me -- the trustee's going to ask me to draw the

20   inference that PW means in all cases that that was an actual

21   disbursement.

22            MR. KIRBY:  Right.  And --

23            THE COURT:  And that's what this is really about.

24            MR. KIRBY:  Pardon.

25            THE COURT:  And that's what this is really about.

1              THE COURT:  I'm going to --

2              MR. KIRBY:  -- further.

3              THE COURT:  -- I'm going to hear the evidence.

4    It's a statistical case.  And then I'm going to make a

5    determination about whether it's a reasonable inference of

6    the inference that they're asking what the experts have

7    drawn but really they're asking me to draw as a reasonable

8    inference.

9              MR. KIRBY:  Okay.  But as long as it's clear that

10   you're drawing the inference and not --

11             THE COURT:  I'm going to --

12             MR. KIRBY:  -- the experts.

13             THE COURT:  -- take the -- I'm not going to --

14             MR. KIRBY:  Okay, because they're not qualified --

15             THE COURT:  I'm not going to -- I agree with you.

16   The experts can't tell me what's in non-existent or missing

17   --

18             MR. KIRBY:  Okay.

19             THE COURT:  -- documents.

20             MR. KIRBY:  Okay.  I --

21             THE COURT:  Why don't you -- why don't you -- we

22   have four motions so --

23             MR. KIRBY:  I know.  Okay.  We've made three

24   motions to deal first of all with the other records and

25   you've already -- we've talked about them.  But I do think

Page 41

1          THE COURT:  -- because I've indicated what I --

2     how I think this should be decided.

3          But if the statute says the trustee is supposed to

4     determine net equity based on the books and records or other

5     evidence to his satisfaction, what else is he supposed to do

6     in a case like this except hire forensic accountants to try

7     and confirm what the books and records show?

8          MR. KIRBY:  I understand the problem and the

9     plight of the trustee.  And -- but I think the issue is, is

10    as an administrative matter the trustee has to do his best

11    shot, take his best shot at it.  Then the way the rules work

12    is that the customer then must come forward with evidence

13    saying the trustee got it wrong.  Once we've done that, now

14    the Court is faced with having to decide it and the

15    trustee's faced with having to deal with the evidentiary

16    rules because there's no presumption anymore.  The

17    presumption is overcome.

18          And that's the issue that we are now before --

19    that's the issue that's before the Court and would be before

20    the Court at trial, whether the trustee has satisfied his

21    burden on an evidentiary basis to over -- to -- whether --

22    that the cash actually was withdrawn.

23          THE COURT:  Thank you.

24          As I've indicated I want to hear the testimony of

25    the experts and I know that there are other people who were

1    deposed and will testify either through deposition or live

2    regarding how the trust -- how these books and records were

3    maintained, and particularly what the experts did.

4           The only thing I'll say which I'll repeat is I'm

5    not going to hear expert testimony that missing records

6    would contain certain entries or that it's reasonable to

7    infer that if you have a high correlation, therefore I can

8    -- I should infer that all PW entries represent cash

9    withdrawals.  That's an inference that I can draw or not

10   draw.  I doubt it's within the expertise of the forensic

11   accountants and, frankly, it doesn't help me at all.

12          So let's just leave it at that.

13          MR. KIRBY:  Thank you.

14          THE COURT:  Now I have the trustee's -- oh, I'm

15   sorry.  You did -- you were also -- I sat you down, but you

16   also had a --

17          MS. CHAITMAN:  I did.  And if --

18          THE COURT:  I realize you joined in the motion.  I

19   shouldn't have --

20          MS. CHAITMAN:  I actually --

21          THE COURT:  -- been so --

22          MS. CHAITMAN:  -- filed a separate motion.

23          THE COURT:  Right.

24          MS. CHAITMAN:  I also joined in.

25          THE COURT:  Right.