# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>– against –<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. P. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>– against –<br><br>ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND, N.V.),<br><br>Defendant. | Adv. P. No. 11-02760 (SMB) |

**[PROPOSED] ORDER DENYING REQUEST TO CERTIFY JUDGMENT FOR DIRECT APPEAL TO THE UNITED STATES COURT OF <u>APPEALS FOR THE SECOND CIRCUIT</u>**

**STUART J. BERNSTEIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

**WHEREAS**, on November 22, 2016, this Court entered the Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers, directing dismissal of the Trustee's remaining claim against defendant ABN AMRO N.V. (presently known as The Royal Bank of Scotland, N.V.). *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Secs. LLC*

(*In re Madoff*), No. 08-01789 (SMB), ECF No. 14495;

**WHEREAS**, on March 3, 2017, this Court entered the Stipulated Final Order Granting Motion to Dismiss Complaint (the "Judgment"). ECF No. 74;

**WHEREAS**, on March 14, 2017, the Trustee filed a Notice of Appeal, ECF No. 75, the Notice of Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006(f) (the "Request"), ECF No. 77, and the Memorandum of Law in Support of Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006(f), ECF No. 78;

**WHEREAS**, on March 28, 2017, Defendant ABN AMRO Bank, N.V. filed an Objection to the Motion and the Memorandum of Law in Opposition to Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006(f). ECF No. 83;

**WHEREAS**, on March 29, 2017, a hearing was held on the Request;

**WHEREAS**, on May 4, 2017, this Court entered the Memorandum Decision Denying Request to Certify Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit (the "Memorandum Decision"). ECF No. 88;

**NOW**, for the reasons set forth in the Memorandum Decision, which is incorporated herein and attached hereto as Exhibit A, the Court hereby orders:

1. The Request is **DENIED** pursuant to 28 U.S.C. § 158(d)(2)(A).

2. The Clerk shall promptly transmit the Notice of Appeal to the District Court pursuant to Fed. R. Bankr. P. 8003(d).

2

**SO ORDERED**

Dated:   May [●], 2017
        New York, New York

                                        _____
                                        **HONORABLE STUART M. BERNSTEIN**
                                        **UNITED STATES BANKRUPTCY JUDGE**

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

         Plaintiff,

– against –

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

         Defendant.

------------------------------------------------------------X

In re:

BERNARD L. MADOFF,

         Debtor.

------------------------------------------------------------X

IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff Investment
Securities LLC,

         Plaintiff,

– against –

ABN AMRO BANK N.V. (presently known as
THE ROYAL BANK OF SCOTLAND N.V.),

         Defendant.

------------------------------------------------------------X

Adv. P. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. P. No. 11-02760 (SMB)

**MEMORANDUM DECISION DENYING REQUEST TO
CERTIFY JUDGMENT FOR DIRECT APPEAL TO THE
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

David J. Sheehan, Esq.
Regina L. Griffin, Esq.
Stacy A. Dasaro, Esq.
Lauren M. Hilsheimer, Esq.
    Of Counsel

*Attorneys for Irving H. Picard, Trustee
for the Liquidation of Bernard L. Madoff
Investment Securities LLC*

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020

    Michael S. Feldberg, Esq.
        Of Counsel

*Attorneys for ABN AMRO Bank N.V.
(presently known as The Royal Bank
of Scotland N.V.)*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

    Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), requests certification of his direct appeal to the Second Circuit pursuant to 28 U.S.C. § 158(d)(2)(A) from an the judgment dismissing his complaint against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("RBS"). For the reasons that follow, the Trustee's request is denied.

## BACKGROUND

The Trustee commenced this adversary proceeding against RBS on October 6, 2011. (*See Complaint*, dated Oct. 6, 2011 (ECF Doc. # 1[1]).) He sought to recover subsequent transfers totaling $21,799,920 pursuant to Bankruptcy Code § 550(a) that RBS had received in December 2008 from Harley International (Cayman) Limited ("Harley"), a BLMIS feeder fund and the initial transferee. (*Id.*, ¶¶ 55, 62-66, Ex. H.) This adversary proceeding is one of many similar litigations brought by the Trustee to recover subsequent transfers received by foreign investors from foreign feeder funds, some of which are in liquidation proceedings in their home countries.

The District Court previously withdrew the reference pursuant to 28 U.S.C. § 157(d) to determine, *inter alia*, "whether SIPA and/or the Bankruptcy Code as incorporated by SIPA apply extraterritorially, permitting the Trustee to avoid the initial Transfers that were received abroad or to recover from initial, immediate or mediate foreign transferees." (*Order*, dated June 6, 2012, ¶ 1 (ECF Dist. Ct. Case No. 12-mc-0115 Doc. # 167).) In the consolidated District Court proceeding, RBS and other defendants moved to dismiss the Trustee's subsequent transfer claims. District Judge Rakoff held that (i) "the Trustee . . . may not use section 550(a) to pursue recovery of purely foreign subsequent transfers" as a result of the presumption against extraterritorial application of statutes ("Extraterritoriality Issue"), or alternatively, (ii) "the Trustee's use of section

---

[1] "ECF Doc. # ___" refers to documents filed on the electronic docket of *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.)*, Adv. P. No. 11-02760 (SMB). The Trustee initially sued an additional defendant—ABN AMRO Bank (Switzerland) AG—but voluntarily dismissed that defendant without prejudice. (*See* ECF Doc. # 14.)

- 3 -

550(a) to reach these foreign transfers would be precluded by concerns of international comity." ("Comity Issue"). *SIPC v. BLMIS* (*In re BLMIS*), 513 B.R. 222, 231 (S.D.N.Y. 2014) (the "*District Court Decision*"), *supplemented by*, No. 12-mc-115 (JSR), 2014 WL 3778155 (S.D.N.Y. July 28, 2014). As to the latter, Judge Rakoff stated that comity

> is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. Courts conducting a comity analysis must engage in a choice-of-law analysis to determine whether the application of U.S. law would be reasonable under the circumstances, comparing the interests of the United States and the relevant foreign state.

*District Court Decision*, 513 B.R. at 231 (quoting and citing *Maxwell Commc'n Corp. plc v. Societe Generale* (*In re Maxwell Commc'n Corp. plc*), 93 F.3d 1036, 1046-48 (2d Cir. 1996) ("*Maxwell*")). The District Court stated that comity is "especially important" as applied to the Trustee's subsequent transfer claims because many of the initial transferee feeder funds were involved in liquidation proceedings in their own countries, including Harley in the Cayman Islands. *Id.* at 231-32 (quotation omitted). These countries had their own rules concerning the avoidance and recovery of transfers and a "greater interest in applying their own laws than does the United States." *Id.* at 232.

While providing guidelines on the Extraterritoriality Issue and the Comity Issue, the District Court did not dismiss the Trustee's claims. Instead, it re-referred the cases back to this Court for further proceedings consistent with the *District Court Decision*. *Id.* at 232.

After the cases were returned to the Bankruptcy Court, the parties (including RBS) supplemented their submissions relating to the dismissal motions to reflect the

- 4 -

rulings by the District Court. (*See* ECF Doc. ## 47, 62, & 63.) On November 22, 2016, this Court issued its decision applying the *District Court Decision* to the affected adversary proceedings. *See SIPC v. BLMIS* (*In re BLMIS*), Adv. P. Nos. 08-01789 & 11-02732 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ("*Bankruptcy Court Decision*"). As it pertains to this adversary proceeding, the Court granted RBS' motion to dismiss on comity grounds. The Court noted that the Trustee had participated in the Harley liquidation proceedings in the Cayman Islands as well as other BLMIS feeder fund liquidation proceedings in the Cayman Islands, *id.*, at *16, and concluded that the "Cayman Islands ha[d] a greater interest in regulating the activities that gave rise to the Trustee's subsequent transfer claims." *Id.* Since dismissal of the *Complaint* was granted based on the Comity Issue, the Court did not consider RBS' arguments related to dismissal based on the Extraterritoriality Issue. *Id.*, at *17 (considering dismissal on extraterritoriality grounds only for defendants whose claims were not dismissed on comity grounds).

After the Court issued the *Bankruptcy Court Decision*, the Trustee and RBS stipulated to the entry of a final judgment by this Court dismissing the Trustee's claims in this adversary proceeding. (*See Stipulated Final Order Granting Motion to Dismiss Complaint*, so-ordered Mar. 3, 2017 (the "Judgment") (ECF Doc. # 74).) The Court had also dismissed numerous other complaints based on both comity or extraterritoriality grounds, and the parties to those lawsuits, like RBS, stipulated to the entry of final judgments.

In eighty-six of those cases, the Trustee and the defendants jointly agreed to certify the Trustee's direct appeal to the Second Circuit pursuant to 28 U.S.C. §

- 5 -

158(d)(2)(A)(iii). (*See, e.g., Certification to Court of Appeals By All Parties*, dated Apr. 4, 2017 (ECF Adv. P. No. 11-02784 Doc. # 111).) This group included seven other adversary proceedings in which some or all of the subsequent transfer claims were dismissed based on comity because BLMIS made the initial transfers to Harley. *See Bankruptcy Court Decision*, 2016 WL 6900689, at *16. This adversary proceeding is the only one in which the defendant has not agreed to jointly certify the Trustee's direct appeal to the Second Circuit.

The Trustee now requests that the Court certify his direct appeal[2] to the Second Circuit so it can be heard with the other appeals should the Second Circuit decide to exercise its appellate jurisdiction. (*Memorandum of Law in Support of Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8006(f)*, dated Mar. 14, 2017 ("*Trustee Brief*") (ECF Doc. # 78).) He argues that the appeal meets each of the three disjunctive requirements mandating certification of a direct appeal set forth in 28 U.S.C. § 158(d)(2)(A)(i), (ii) and (iii), discussed below. RBS disagrees, contending that the Trustee should follow the usual route, appealing to the District Court, and then, if necessary, to the Court of Appeals. (*Memorandum of Law in Opposition to Trustee's Request for Certification of Judgment for Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006(f)*, dated Mar. 28, 2017 ("*RBS Brief*") (ECF Doc. # 83).)

---

[2] The Trustee's notice of appeal appears at ECF Doc. # 75.

- 6 -

## DISCUSSION

Section 158(d)(2)(A) of title 28 sets forth the circumstances under which a bankruptcy court's order, judgment, or decree may be appealed directly to the court of appeals:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that
>
> (i)  the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii)  the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii)  an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;
>
> and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2)(A).  If the court determines that the circumstances set forth in any of the three subsections exist, it must certify the appeal to the court of appeals, 28 U.S.C. § 158(d)(2)(B), and the court of appeals will then decide whether to exercise its appellate jurisdiction.  In *Weber v. United States Trustee,* 484 F.3d 154 (2d Cir. 2007), the Second Circuit explained when it would be inclined to accept a direct appeal:

> [W]e will be most likely to exercise our discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion) or where we find it patently obvious that the bankruptcy court's decision is either manifestly correct or incorrect, as in such cases we benefit less from the case's prior consideration in the district court and we are more likely to render a decision expeditiously, thereby advancing the progress of the case.  On the other hand, we will be reluctant to accept cases for direct appeal when we think that percolation through

- 7 -

    the district court would cast more light on the issue and facilitate a wise
    and well-informed decision.

*Id.* at 161.

    As a threshold matter, the Trustee requests certification of this Court's rulings on both the Extraterritoriality Issue and the Comity Issue, but the *Complaint* was dismissed solely on comity grounds. The Trustee nonetheless argues that appealing the ruling on the Extraterritoriality Issue is appropriate because this Court and the District Court "presumed in conducting their comity analyses that neither SIPA nor Bankruptcy Code section 550 . . . applied extraterritorially. . . ." (*Trustee Brief* at 6 n. 16.) However, the District Court and this Court assumed that the Trustee had rebutted the presumption against extraterritoriality, but nevertheless concluded that comity barred the application of the Bankruptcy Code's recovery provisions to foreign subsequent transfers, at least where the initial transferee was a debtor in its own foreign insolvency proceeding. *See District Court Decision*, 513 B.R. at 231-32; *Bankruptcy Court Decision*, 2016 WL 6900689, at *11-12. The Extraterritoriality Issue did not factor into the Court's decision to dismiss this adversary proceeding, and the Court will only consider the Trustee's request to appeal from the Court's comity ruling.

**A.**  **No Controlling Precedent or Matter of Public Importance**

    The first subsection of section 158(d)(2)(A) provides for certification where there is no controlling decision or the appeal involves a matter of public importance. 28 U.S.C. § 158(d)(2)(A)(i). The Second Circuit's decision in *Maxwell*, relied on in the *District Court Decision* and the *Bankruptcy Court Decision*, constitutes controlling authority on the Comity Issue. In *Maxwell*, the debtor commenced parallel insolvency

- 8 -

proceedings in the United States and the United Kingdom. The estate's fiduciaries sought to avoid and recover preferential transfers under Bankruptcy Code § 547(b). *Maxwell*, 93 F.3d at 1043. The defendants moved to dismiss asserting that international comity precluded the application of the Bankruptcy Code because England had a greater interest in applying its own laws to the transfers, and the presumption against extraterritoriality precluded the application of U.S. preference law to the foreign transfers. The Bankruptcy and District Courts dismissed the preference claims on both grounds, and the fiduciaries appealed to the Second Circuit. *Id*. at 1044.

The Second Circuit affirmed based on comity. It explained that "[c]omity is especially important in the context of the Bankruptcy Code" because "deference to foreign insolvency proceedings will, in many cases, facilitate 'equitable, orderly, and systematic' distribution of the debtor's assets." *Id*. at 1048 (quoting *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985)). As applied to the preference claims, the Second Circuit held that England had a stronger connection to the circumstances surrounding the bank transfers, and therefore, England had "a stronger interest than the United States in applying its own avoidance law to these actions." *Id*. at 1051-52.

Relying on *Maxwell*, the District Court held that principles of comity required deference to the jurisdictions where the feeder funds (the initial transferees) were in liquidation proceedings. *District Court Decision*, 513 B.R. at 232. Those foreign jurisdictions had a greater interest in applying their own avoidance laws to the transfers at issue, and the Trustee could not circumvent the foreign insolvency proceedings and recover those same transfers as subsequent transfers under the Bankruptcy Code. *Id*.

- 9 -

This Court, in turn, dismissed the Trustee's subsequent transfer claims against RBS following remand from the District Court based on Harley's liquidation proceeding in the Cayman Islands finding that "the Cayman Islands ha[d] a greater interest in regulating the activities that gave rise to the Trustee's subsequent transfer claims. . . ." *Bankruptcy Court Decision*, 2016 WL 6900689, at *16.

As RBS argues, *Maxwell* is controlling circuit law on the issue of comity. The question presented by the Trustee's appeal from the Judgment is whether this Court correctly applied settled law to the *Complaint*. Consideration of that issue, in the first instance, should be addressed to the District Court, and percolate up to the Court of Appeals through the usual route following District Court review.

The Trustee separately asserts that his appeal involves a "matter of public importance" – the second branch of section 158(d)(2)(A)(i) – because (i) an appeal of the Comity Issue would inform the numerous other adversary cases in which the Trustee's subsequent transfer claims were dismissed on comity grounds, and (ii) BLMIS customers would benefit from additional recoveries should the Trustee be successful in his appeal. (*Trustee Brief* at 7.) The District Court in *Mark IV Indus., Inc. v. New Mexico Env't Dep't* explained that

> Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case. An appeal that impacts only the parties, and not the public at large, is not a matter of public importance.

452 B.R. 385, 388-89 (S.D.N.Y. 2011) (footnotes, internal quotation marks, and alternations omitted).

- 10 -

Initially, the "fact that an appeal will affect other parties to [a] bankruptcy does not establish an issue of public importance." *Stanziale v. Car-Ber Testing, Inc.* (*In re Conex Holdings, LLC*), 534 B.R. 606, 611 (D. Del. 2015). Furthermore, this is one of many proposed appeals of the Comity Issue that raise the identical issue. If the Court of Appeals accepts the direct appeals pursuant to the parties' stipulated certifications in those cases, it will decide the Comity Issue without input from RBS. RBS assumed this risk when it declined to stipulate to the certification of a direct appeal and participate in those proceedings. Similarly, it assumed the risk that as a practical matter, the Second Circuit's ruling in the other cases would dispose of the Trustee's appeal to the District Court from the Judgment. Conversely, if the Court of Appeals declines to accept the direct appeals despite the stipulated certifications, there is no reason to certify this appeal.

Finally, the argument that a direct appeal will benefit net losers by increasing their recoveries proves too much. The same can be said anytime a bankruptcy trustee appeals from an adverse judgment rendered by the Bankruptcy Court.

**B.    Conflicting Decisions**

The Trustee next asserts that the direct appeal of the Comity Issue satisfies 28 U.S.C. § 158(d)(2)(A)(ii) because Judge Rakoff's decision conflicts with a decision by District Judge Batts in *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) ("*Kingate*"), *appeal docketed*, No. 16-3450 (2d Cir. Oct. 12, 2016). In *Kingate*, former investors of BLMIS feeder funds (the "Kingate Funds") sued the Kingate Funds' managers, consultants, directors, officers, and administrators asserting common law claims sounding in fraud, negligence, breach of

- 11 -

fiduciary duty, third party beneficiary breach of contract, mutual mistake, aiding and abetting, and unjust enrichment. *Kingate*, 2016 WL 5339538, at *12. The defendants moved to dismiss arguing, among other things, that the Court should abstain from exercising jurisdiction on comity grounds because the Kingate Funds—in liquidation proceedings in the British Virgin Islands ("BVI") and Bermuda—were litigating similar claims in the BVI and Bermuda courts. *Id.*, at *35.

Judge Batts denied the motion to dismiss on comity grounds. She observed that the plaintiffs were alleging the breach of distinct duties owed directly to them and additional causes of action not being raised by the Kingate Funds' Joint Liquidators. *Id.* In other words, they were raising direct claims rather than derivative claims. In addition, the defendants were not in liquidation, and hence, it was not clear that the normal justification for deferring to the foreign bankruptcy proceeding to allow the equitable and orderly distribution of the debtor's property would apply. *Id.*

*Kingate* did not cite or discuss *Maxwell*, the Second Circuit decision upon which Judge Rakoff and this Court relied. Thus, even if the *District Court Decision* and the *Kingate* decision conflicted, this does not amount to a conflict in light of settled Second Circuit law.[3] In addition, comity involves two separate doctrines. Judge Batts focused

---

[3] The only Second Circuit decision concerning comity cited in *Kingate* was *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006). That case reviewed an abstention order involving parallel lawsuits in Canada and the United States. The case did not involve bankruptcy. The Second Circuit reversed, but observed:

> We have recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions—foreign bankruptcy proceedings. A foreign nation's interest in the "equitable and orderly distribution of a debtor's property" is an interest deserving of particular respect and deference, and accordingly we have followed the general practice of American courts and regularly deferred to such actions.

- 12 -

on the application of comity to parallel proceedings – comity among courts – while Judge Rakoff applied comity as a canon of construction – comity among nations – which does not require parallel proceedings. *See Bankruptcy Court Decision*, 2016 WL 6900689, at *12 (discussing the distinction). Finally, unlike *Kingate*, where the plaintiffs were asserting direct claims based on their particularized injuries, the Trustee is suing on behalf of the BLMIS estate to recover the same transfers that Harley's liquidator could have sued to recover from RBS on behalf of Harley's estate. *See, e.g.*, Cayman Is. Companies Law (2007 Revision), § 145(1) ("Every conveyance or transfer of property, or charge thereon, and every payment obligation and judicial proceeding, made, incurred, taken or suffered by any company in favour of any creditor at a time when the company is unable to pay its debts . . . with a view to giving such creditor a preference over the other creditors shall be invalid if made, incurred, taken or suffered within 6 months immediately preceding the commencement of a liquidation."); § 146(2) ("Every disposition of property made at an undervalue by or on behalf of a company with intent to defraud its creditors shall be voidable at the instance of its official liquidator."). If the Harley liquidators did not bring these claims or lost them in litigation because Cayman Islands law foreclosed avoidance and recovery of those transfers, the Trustee should not be able to circumvent the limitations of Cayman Islands law to recover the same transfers. The Cayman Islands has the greater interest

---

*Id.* at 92-93. Although the *Kingate* court apparently viewed this statement as limiting comity to parallel proceedings, the supporting authority cited by the Second Circuit did not involve parallel bankruptcy proceedings.

- 13 -

in controlling the avoidance and recovery of transfers by a Cayman Islands feeder fund in liquidation to its investors.

C.  **Materially Advance the Case**

Finally, the Trustee argues that his appeal will materially advance the progress of the case under 28 U.S.C. § 158(d)(2)(A)(iii) because a coordinated appeal involving all eighty-seven of the Trustee's cases is most efficient. (*Trustee Brief* at 9.) While there is undeniable logic to what the Trustee argues, the fact is that the other appeals, if accepted, will advance the ultimate resolution of the Comity Issue anyway. As discussed, the Second Circuit does not need the RBS appeal to decide this issue. The same issue is raised in connection with the dismissal of claims based on subsequent transfers by Harley to other defendants that have stipulated to certifications of direct appeals. These appeals raise identical issues, and the Second Circuit's ruling on the Comity Issue will effectively dispose of the appeal in this adversary proceeding. If, on the other hand, the Second Circuit chooses not to authorize the appeals, those appeals will be heard by the District Court along with the appeal in this case. 28 U.S.C. § 157(a).

D.  **The District Court's Appellate Jurisdiction over the Judgment**

Last, the Trustee questions whether the District Court has appellate jurisdiction over the Judgment. He argues that the District Court was exercising original bankruptcy jurisdiction when it withdrew the reference and issued the *District Court Decision*. (*Trustee Brief* at 9-10.) In other words, his appeal is really from the *District Court Decision*. However, as described above, the *District Court Decision* did not dismiss the Trustee's claims; instead, Judge Rakoff re-referred the litigations to this Court for further proceedings consistent with the *District Court Decision*.

- 14 -

Consequently, and although the *District Court Decision* obviously informed this Court's decision, it is this Court's final order, and not the District Court's interlocutory order, that is the subject of the Trustee's appeal. Of course, this Court does not pass on the District Court's appellate jurisdiction, and the District Court will undoubtedly consider its own jurisdiction even if the parties do not raise it.

## CONCLUSION

For the reasons stated, the Trustee's request that this Court certify the direct appeal of the Judgment to the Second Circuit under 28 U.S.C. § 158(d)(2)(A) is denied. Submit order.

Dated: New York, New York
      May 4, 2017

                                            /s/ *Stuart M. Bernstein*
                                            STUART M. BERNSTEIN
                                            United States Bankruptcy Judge