**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Nicholas J. Cremona  
Jorian L. Rose  
Amy E. Vanderwal  
Stephanie A. Ackerman

Hearing Date: June 28, 2017  
Hearing Time: 10:00 AM (EST)  
Objection Deadline: June 7, 2017

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW
TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS
HOLDING INTERESTS IN JEFFREY SCHAFFER DONNA SCHAFFER JOINT
TENANCY AND STANLEY I. LEHRER AND STUART M. STEIN JOINT TENANCY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE STRUCTURE OF THE JOINT TENANCIES, BLMIS ACCOUNTS, AND CLAIMS ................................................................................ 4

        1.    Schaffer Joint Tenancy ................................................................................. 4

        2.    Lehrer Stein Joint Tenancy ........................................................................... 5

    C.    THE BLMIS ACCOUNT RECORDS ................................................................ 8

    D.    THE CLAIMS ...................................................................................................... 8

    E.    THE CUSTOMER DECISIONS ........................................................................ 9

    F.    THE SIPC SERIES 100 RULES AND RELATED DECISIONS ....................... 10

ARGUMENT ............................................................................................................................... 12

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adler, Coleman Clearing Corp.*,
    204 B.R. 99 (Bankr. S.D.N.Y. 1997) ............................................................... 12, 13

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ....................................................................... 2

*In re Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011) ..................................................................... 14

*In re Bernard L. Madoff Inv. Sec. LLC*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ..................................................................... 14

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011) ................................................................................. 2, 9

*In re Inv'rs Center, Inc.*,
    129 B.R. 339 (Bankr. E.D.N.Y. 1991) .................................................................... 11

*In re Klein, Maus & Shire, Inc.*,
    301 B.R. 408 (Bankr. S.D.N.Y. 2003) ..................................................................... 14

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) ............................................................................ *passim*

*Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*,
    218 B.R. 689 (Bankr. S.D.N.Y. 1998) ..................................................................... 10

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
    277 B.R. 520 (Bankr. S.D.N.Y. 2002) ................................................................. 3, 14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    Adv. No. 08–01789(SMB), 2017 WL 1323473 (Bankr. S.D.N.Y. Apr. 10,
    2017) ................................................................................................................. *passim*

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976) .......................................................................... *passim*

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........... 2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006) .................................................................................... 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes**

15 U.S.C. § 78aaa *et seq.* ..................................................................................................1

15 U.S.C. § 78eee(a)(4) .....................................................................................................3

15 U.S.C. § 78eee(b)(3) .....................................................................................................3

15 U.S.C. § 78eee(b)(4) .....................................................................................................3

15 U.S.C. § 78fff-1(a) ........................................................................................................3

15 U.S.C. § 78fff-3(a) ........................................................................................................3

15 U.S.C. § 78*lll*(2) .............................................................................................2, 3, 12, 13

15 U.S.C. § 78*lll*(4) ...........................................................................................................3

15 U.S.C. § 78*lll*(11) .........................................................................................................3

**Rules**

Fed. R. Civ. P. 36(a)(3) ...........................................................................................5, 7, 15

**Other Authorities**

17 C.F.R. § 300.100(b) ....................................................................................................10

17 C.F.R. § 300.105(a) ...............................................................................................11, 13

17 C.F.R. § 300.105(b) ..............................................................................................11, 13

17 C.F.R. § 300.105(d) ..............................................................................................11, 13

20 Am. Jur. 2d Cotenancy and Joint Ownership § 3. .....................................................12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of three claims filed by claimants who objected to the Trustee's determinations (the "Objecting Claimants") and who claim an interest in one of two BLMIS account holders, the Jeffrey Schaffer Donna Schaffer JT WROS ("Schaffer Joint Tenancy"), and the Stanley I. Lehrer and Stuart M. Stein J/T WROS ("Lehrer Stein Joint Tenancy") (collectively, the "Joint Tenancies"). The Objecting Claimants, their claims, and their docketed objections are specifically identified in Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek separate customer status in this SIPA proceeding based on their asserted interest in one of the two Joint Tenancies. The Schaffer Objecting Claimants—Jeffrey and Donna Schaffer—were the joint tenants of the Schaffer Joint Tenancy. The Lehrer Stein Objecting Claimant—Elaine Stein Roberts IRA—asserts an interest in the Lehrer Stein Joint Tenancy based on an investment in that account, but is not identified in the books and records as a joint tenant. As set forth in this Court's most recent decision affirming the Trustee's denial of claimants asserting customer status through purported investments in certain joint accounts, in each instance, the Joint Tenancy is the customer for purposes of SIPA, not the

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

individual cotenants or investors. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. No. 08–01789(SMB), 2017 WL 1323473*1 (Bankr. S.D.N.Y. Apr. 10, 2017) ("*Tenancy In Common Decision*"). Like the cotenants in the recent decision, none of the Objecting Claimants held an account with BLMIS in their individual names, and therefore, none are entitled to individual customer status under SIPA.

The current Motion seeks to apply the Second Circuit's decisions in *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013) and *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976) and the relevant SIPC Rules to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Sehgal Declaration, disallowing their claims, and overruling the related claims objections on the grounds that the Objecting Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[2]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application

---

[2] The Trustee reserves all other bases to affirm his denial of such claims.

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to the fullest extent possible to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors, including claimants to the customer fund. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. *See* SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make him or her whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered. *See* ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection with this Court within a certain time period, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

3

**B.  THE STRUCTURE OF THE JOINT TENANCIES, BLMIS ACCOUNTS, AND CLAIMS**

The Objecting Claimants purportedly contributed funds to one of two (2) BLMIS accounts (the "Accounts," and each, an "Account").  In total, they submitted three claims, and filed four related objections to the Trustee's denials of those claims.  Two (2) claims were submitted by Objecting Claimants relating to the Schaffer Joint Tenancy, which Claimants filed three (3) docketed objections to the Trustee's denial of their claims. ECF Nos. 1027, 2138, 3188. One (1) claim was submitted by an Objecting Claimant relating to the Lehrer Stein Joint Tenancy, which Claimant also filed one (1) docketed objection to the Trustee's denial of its claim. ECF No. 3235; *see also* Sehgal Decl. ¶¶ 10-12, Exs. 1-3.  The Joint Tenancies' direct claims, the Trustee's determinations thereof, and any docketed objections filed as to the determinations of those direct claims are not at issue in this Motion.

    **1.  Schaffer Joint Tenancy**

BLMIS Account 1ZA401 ("Account 1ZA401") was opened on or around March 1, 1993 in the name of "Jeffrey Schaffer."  Mr. Schaffer, alone, signed all opening documents including the BLMIS Option Agreement, Customer Agreement, and Trading Authorization. *See* Sehgal Decl. Ex. 4, AMF0045306-13.  Mr. Schaffer's wife, Donna Schaffer, was added to Account 1ZA401 in March of 2001 at Mr. Schaffer's request, *id.*, AMF0045290, and the account name was changed to "Jeffrey Schaffer Donna Schaffer JT WROS" at that time. *See, e.g.*, *id.*, AMF0045288.  Pursuant to this change, Jeffrey and Donna Schaffer each confirmed that the account was a joint tenancy with right of survivorship by signing a BLMIS request detailing the terms and treatment of their account as such. *Id.*, AMF0045289.  All deposits were submitted to BLMIS by Jeffrey Schaffer and all withdrawal requests were signed by either Jeffrey Schaffer alone or with Donna Schaffer. *See, e.g.*, *id.*, AMF0045285, 79, 81, 83.

4

The Trustee served discovery on the Schaffer Objecting Claimants and no response was received. By failing to respond to the requests for admissions, the Schaffer Objecting Claimants admitted (among other things) that they did not have an account in their names at BLMIS, never deposited cash or securities with BLMIS for credit into an account their name, did not receive investment statements, correspondence or tax statements from BLMIS in their individual names, and that they did not have any control, investment discretion or decision-making power over any investments at BLMIS. *See generally* Ackerman Decl. ¶¶ 5, 10, 12-14, Ex. 1; *see also* FED. R. CIV. P. 36(a)(3).

Jeffrey and Donna Schaffer filed a customer claim as joint tenants on behalf of the Schaffer Joint Tenancy account. The Trustee denied that claim because, based on the Trustee's analysis, the amount of money that the Schaffer Joint Tenancy withdrew from Account 1ZA401 was greater than the amount that was deposited, making the account holder a "net winner." Thus, a determination letter was sent to the Schaffer Joint Tenancy denying its customer claim, and two objections to that determination were timely filed.[3]

### 2. **Lehrer Stein Joint Tenancy**

BLMIS Account 1L0013 ("Account 1L0013") was originally opened on or around January 12, 1978 in the name of "Howard M. Squadron & Allen A. Stein as J/T W/R/S." Sehgal Decl. Ex. 7, MADTBB01990524-5. The account opening documents were signed by one or both of Howard M. Squadron and/or Allen A. Stein. *See id.*, MADTBB01990524-25. On December 15, 1988, Howard M. Squadron informed BLMIS by letter that Allen A. Stein was deceased and

---

[3] The Motion does not seek to disallow the claim of the account holder, the Schaffer Joint Tenancy, or seek to overrule the related objections to the determination of that claim (the "Schaffer Joint Tenancy Objections"). ECF Nos. 1027 and 2138. However, the Schaffer Joint Tenancy Objections were also filed on behalf of the two Schaffer Objecting Claimants. The Motion seeks to overrule only those portions of the Schaffer Joint Tenancy Objections that seek individual customer status for the Schaffer Objecting Claimants. The remainder of the Schaffer Joint Tenancy Objections will be resolved through a future motion.

5

as the remaining joint tenant, Mr. Squadron directed BLMIS to change the name on Account 1L0013 to "Howard M. Squadron and Stanley I. Lehrer as joint tenants with right of survivorship." *Id.*, MADTBB01990511-12.  As a result, Stanley I. Lehrer signed additional BLMIS account documents including the BLMIS Trading Authorization, *id.*, MADTBB01990518-21, and the account name was subsequently changed to "Howard M. Squadron and Stanley I. Lehrer J/T W/R/O/S." *See id.*, MADTBB01990454.

In April of 1992, Howard Squadron wrote to BLMIS requesting the name on Account 1L0013 be changed again, this time to replace him with Stuart M. Stein, and shortly thereafter the account name was changed to "Stanley I. Lehrer and Stuart M. Stein J/T WROS." *Id.*, MADTBB01990510.  Stanley I. Lehrer and Stuart M. Stein signed new BLMIS account opening documents including the BLMIS trading authorization, customer agreement, and option agreement shortly thereafter.  *Id.*, AMF00124395-411.  Likewise, in January of 1994, both Stanley I. Lehrer and Stuart M. Stein signed the BLMIS form confirming that Account 1L0013 was properly titled as "Joint Tenants with Rights of Survivorship." *Id.*, MADTBB01990506.

After this final name change, all correspondence with BLMIS, including requests for withdrawals, transfers, and deposits, was sent by Stanley I. Lehrer or Stuart M. Stein.  *See, e.g.*, Sehgal Decl., Ex. 7, MADTBB0199470, 502–5.  In virtually all instances, withdrawals were requested on behalf of the "account holder," identified as the Stanley I. Lehrer and Stuart M. Stein J/T WROS, by either Mr. Lehrer or Mr. Stein and to be made payable to the Lehrer Stein Joint Tenancy.[4]  *Id.*  Conversely, Elaine Stein Roberts IRA is not referenced in the BLMIS books and records and, Elaine Stein Roberts appears only once in the BLMIS customer file—copied on

---

[4] On Feburary 15, 1996, Stuart M. Stein requested a withdrawal of $7,000 to be sent to his accountant. Sehgal Decl., Ex. 7, MADTBB01990486.

6

a December 1999 letter whereby Stanley I. Lehrer asked BLMIS to transfer funds to create a new account in the name of Epic Ventures, LLC.[5]

The Trustee served discovery requests on the Lehrer Stein Objecting Claimant through its counsel. Despite requesting, and receiving, an extension to the time period to respond, no response was received. By failing to respond to the requests for admissions, the Lehrer Stein Objecting Claimant admitted (among other things) that it did not have an account in its name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, and that its only relationship to BLMIS existed by way of its relationship to the Lehrer Stein Joint Tenancy. *See generally* Ackerman Decl. ¶¶ 5, 11-15, Ex. 2; *see also* FED. R. CIV. P. 36(a)(3).

A claim was filed on behalf of the Lehrer Stein Joint Tenancy by Stuart I. Lehrer and Stuart M. Stein as joint tenants. The Trustee denied that claim because, based on the Trustee's analysis, the amount of money that the Lehrer Stein Joint Tenancy withdrew from Account 1L0013 was greater than the amount that was deposited, making the account holder a "net winner."[6] Thus, a determination letter was sent to the Lehrer Stein Joint Tenancy denying its customer claim, and no objection to the Trustee's determination was filed.

---

[5] Elaine Stein Roberts also filed a claim asserting customer status through an investment in Epic Ventures LLC, claim number 013369, which was denied. Ms. Roberts objected to the claim, ECF No. 3371, but did not object to the Trustee's motion to affirm that determination. *See* Claimants' Statement of No Objection to the Disallowance of Certain Claims and Responses (May 27, 2015), ECF No. 10053. The Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in Epic Ventures, LLC was approved by this Court on June 25, 2015. ECF No. 10267.

[6] BLMIS Account 1L0013 is also a subject account in an ongoing adversary proceeding filed by the Trustee. *See Picard v. Stanley I. Lehrer, et al.*, Adv. No. 10-05259(SMB).

7

### C.  THE BLMIS ACCOUNT RECORDS

Each of the Accounts was held in the name of one of the Joint Tenancies with BLMIS. Sehgal Decl., ¶¶ 6, 20, Ex. 1. The books and records of BLMIS reflect money deposited or withdrawn on behalf of the Accounts, and not attributed to any of the Objecting Claimants individually. *See* Sehgal Decl., ¶¶ 15, 18, Exs. 4, 7.

Because the Accounts at BLMIS were maintained as joint tenancies, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate for each Account. The books and records of BLMIS do not, in contrast, reflect all deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to the Accounts, and therefore do not reflect amounts owing or owed by the BLMIS estate for any of the Objecting Claimants. *See id.*

### D.  THE CLAIMS

The claims at issue in this Motion involve only the purported interests of the Objecting Claimants who are seeking customer status based on their asserted interests in one of the two Joint Tenancies.[7] The Objecting Claimants, and the details related to the three (3) claims filed by them, and the four (4) docketed objections to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. Sehgal Decl. ¶¶ 11-13, Exs. 2-3. The Trustee denied these three (3) claims because the Objecting Claimants lacked individual BLMIS accounts in their names and, thus, were not customers of BLMIS. Sehgal Decl. ¶11. This Motion addresses all four (4) docketed objections to the determination of the specified claims by the Objecting Claimants identified on Exhibit 2 of the Sehgal Declaration.

---

[7] The Motion does not seek to address the interests of the two Joint Tenancies themselves.

8

Since receiving the four (4) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. As noted above, no responses were received. *See* Ackerman Decl. ¶¶ 5, 10-15.

### E. THE CUSTOMER DECISIONS

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held interests in a limited partnership that in turn invested partnership funds with BLMIS via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). The Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted). Because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, the claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status— entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27.

The Second Circuit also found that the individual claimants did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS. *Id.* Indicia of customer status include: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Morgan, Kennedy & Co.*, 533 F.2d at 1318). Thus, without entrustment of assets to BLMIS and absent any evidence of any of the indicia of

9

customer status, the Second Circuit held that the objecting claimants failed to sustain their burden of proving that they are customers of BLMIS.

Since *Kruse*, this Court has granted seventeen motions by the Trustee to affirm his determinations that claimants who invested in a BLMIS accountholder are not customers under SIPA.[8] As discussed *infra*, in the most recent of these decisions, this Court affirmed the Trustee's determination that claimants who invested in certain joint accounts—tenancies in common—are not entitled to individual customer status apart from that of the accountholder.

F. **THE SIPC SERIES 100 RULES AND RELATED DECISIONS**

SIPC's Series 100 Rules set forth the circumstances under which "accounts held by a customer in different capacities" will be treated as separate customers of the debtor. 17 C.F.R. § 300.100(b) (2014). SIPC's Rules are controlling because the SEC promulgated the Rules and as a result, they "have the force and effect of law." *Tenancy In Common Decision*, 2017 WL 1323473 at *3 n.9 (quoting *Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*, 218 B.R.

---

[8] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017).

10

689, 699 (Bankr. S.D.N.Y. 1998)); *In re Inv'rs Center, Inc.*, 129 B.R. 339, 348 (Bankr. E.D.N.Y. 1991).

An account held as joint tenants with the right of survivorship will be treated as held by a single customer under SIPC Rule 105 for purposes of SIPA if it is a "qualifying joint account." 17 C.F.R. §§ 300.105(a), (b). SIPC Rule 105 provides for two types of qualifying joint accounts. 17 C.F.R. §§ 300.105(a), (d). SIPC Rule 105(a) provides for a qualifying joint account if all joint account holders "possess[] authority to act" on behalf of the entire account. 17 C.F.R. §§ 300.105(a). SIPC Rule 105(d) provides for a qualifying joint account where *less* than all joint account holders are authorized to act on behalf of the account. 17 C.F.R. §§ 300.105(d). If any cotenant of the joint tenancy lacks the authority to act on behalf of the entire account, then the joint tenancy account will be considered either an individual account or a "qualifying joint account of the co-owner or co-owners" who do "have[] the exclusive power to act." 17 C.F.R. § 300.105(d). "In either case, 'each qualifying joint account . . . shall be deemed held by one separate customer of the member.'" *Tenancy In Common Decision*, 2017 WL 1323473 at *3 (quoting 17 C.F.R. § 300.105(b)).

In *Morgan Kennedy*, the Second Circuit relied upon SIPC Rule 105 when considering the customer status of a joint account in the context of profit-sharing trustees. "Rule 105 . . . provides that where co-owners of a qualifying joint account also hold other accounts in different capacities, the joint account will be treated as belonging to a 'separate customer';. . . and the co-owners will be required to divide the single award in proportion to their ownership interests in the account." 533 F.2d at 1320. The court further clarified that "under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account." *Id*. Most recently,

11

also relying on the SIPC Rules and *Morgan Kennedy*, this Court held that objecting claimants seeking individual customer status based on their investment in certain tenancy in common accounts were likewise only entitled to their share of any allowed claim on behalf of the tenancy in common. *Tenancy In Common Decision*, 2017 WL 1323473 at *3 ("A 'qualifying joint account' is a separate customer, and the 'co-owners will be required to divide the single award in proportion to their ownership interests in the account.'" (quoting *Morgan Kennedy*, 533 F.2d at 1320)); *see also In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997) (holding "[j]oint account holders constitute a single 'customer' under SIPA" and the "joint account holders share any payments on the account of a valid customer claim in proportion to their ownership interests in the account.")

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer," an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities.

Unlike the objecting claimants in *Kruse*, who invested in a vehicle that in turn invested in BLMIS, the Objecting Claimants claim customer status because each purports to have contributed to a joint account as a cotenant. Unlike a partnership or other investment vehicle, a joint tenancy is a form of ownership in which "two or more persons own undivided interests in the same property." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 3. Generally, a joint tenancy is created by a contract, especially as it relates to granting survivorship rights. *Id.* But an ownership interest in the joint tenancy's underlying assets does not translate to each Objecting

12

Claimant having individual customer status under SIPA. Rather, joint tenancies "are separate 'customers' under [SIPA] § 78*lll*(2)" and collectively the "[j]oint account holders constitute a single 'customer' under SIPA." *Adler*, 204 B.R. at 105-6; *see also*, *Tenancy In Common Decision*, 2017 WL 1323473 at *3. The joint account holders then share any payments on account of a valid customer claim in proportion to their individual ownership interests in the account. *Tenancy In Common Decision*, 2017 WL 1323473 at *3; *Morgan Kennedy* 533 F.2d at 1320.

As joint tenancies, both of the Accounts are qualifying joint accounts under SIPC Rule 105. Under SIPC Rule 105(a), all joint tenants must have the authority to act on behalf of the entire account in order for the account to be a qualifying joint account of all cotenants. 17 C.F.R. § 300.105(a). If any cotenants lack that authority, the account is a qualifying joint account *only* as to the co-tenants who do possess such authority. 17 C.F.R. § 300.105(d). Based on the information available to the Trustee, it appears that the Joint Tenancies are each a qualifying joint account under SIPC Rule 105(a).[9] As qualifying joint accounts, each Joint Tenancy is a "separate customer" of BLMIS pursuant to SIPC Rule 105(b) and SIPA. *Adler*, 204 B.R. at 105; *Tenancy In Common Decision*, 2017 WL 1323473 at *3 (holding that qualifying joint accounts under either 105(a) or 105(d) are "deemed held by one separate customer of the member." (citations omitted)). Thus, the "the joint account holders [for each Account] constitute a single 'customer' under SIPA [78*lll*(2)]." *Adler*, 204 B.R. at 105-6. As a result, the Objecting Claimants are not individual customers under SIPA and may only share ratably in any valid

---

[9] The Schaffer Joint Tenancy In Common is a qualifying joint account pursuant to SIPC Rule 105(a) because each of the cotenants—Jeffrey Schaffer and Donna Schaffer—possess authority to act on behalf of the entire account as evidenced by the BLMIS books and records. Sehgal Decl., Ex. 4, AMF0045290. Similarly, both Stanley I. Lehrer and Stuart M. Stein possessed authority to act on behalf of the entire account and there is no evidence that the Lehrer Stein Objecting Claimant is a joint tenant of the Lehrer Stein Joint Tenancy. *See* Section B.1 *supra*; *see also* Sehgal Decl., Ex. 7, MADTBB0199470, 502–5.

13

customer claim attributable to the particular Joint Tenancies. *Tenancy In Common Decision*, 2017 WL 1323473 at *3; *Morgan Kennedy*, 533 F.2d at 1320.

Furthermore, the Objecting Claimants do not meet the requirements for customer status as outlined in *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

As the Second Circuit explained, and this Court recently restated, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Tenancy In Common Decision*, 2017 WL 1323473 at *3 (quoting *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir. 2006)). Thus, customer status under SIPA is narrowly construed and the "burden of proof is on the claimant." *Tenancy In Common Decision*, 2017 WL 1323473 at *3; *see also In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 166 (Bankr. S.D.N.Y. 2014); *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Adler*, 277 B.R. at 557 ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

14

Each of the Objecting Claimants was served with requests for admissions, interrogatories, and requests for production. No responses were received. By failing to respond to the requests for admissions, the Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). These admissions show that Objecting Claimants lack individual relationships with BLMIS that fit the *Morgan Kennedy* criteria and that their claims of "customer" status are unsupported. In fact, the Objecting Claimants, admitted that: (i) the relevant Account was not titled in their name;[10] (ii) that they never received investment statements or tax statements in their names from BLMIS;[11] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[12] (iv) never deposited securities directly with BLMIS;[13] (v) that their only relationship to BLMIS existed by way of their relationship to the Account holder;[14] and (vi) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[15] Thus, the Objecting Claimants here, like those in prior decisions of this Court, have not met this burden. *Tenancy In Common Decision*, 2017 WL 1323473 at *4 (holding that cotenants who did not entrust their assets to BLMIS "failed to carry their burden of proving that they were 'customers' of BLMIS as defined in SIPA"). Therefore, under Second Circuit precedent, this Court's prior decisions, and the SIPC Series 100 Rules the Objecting Claimants are not SIPA customers.

---

[10] Ackerman Decl., Exs. 1-2, ¶ 1.

[11] Ackerman Decl., Ex. 1, ¶¶ 5-6; Ex. 2, ¶¶ 8, 9.

[12] Ackerman Decl., Exs. 1-2, ¶ 4.

[13] Ackerman Decl., Ex. 1, ¶ 3; Ex. 2, ¶ 5.

[14] Ackerman Decl. Ex. 1, ¶ 7; Ex. 2, ¶ 11.

[15] Ackerman Decl. Ex. 1, ¶ 8; Ex. 2, ¶ 12. Although the Schaffer Objecting Claimants admitted their lack of control by virtue of their failure to respond, as discussed above, each was, in fact, authorized to act on behalf of the Account. *See also*, Sehgal Decl. Ex. 4, AMF0045290.

15

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determinations denying the Objecting Claimants' three (3) claims, overrule the Objecting Claimants' four (4) docketed objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York  
       May 19, 2017

Respectfully submitted,

*/s/ David J. Sheehan*  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Nicholas J. Cremona  
Email: ncremona@bakerlaw.com  
Jorian L. Rose  
Email: jrose@bakerlaw.com  
Amy E. Vanderwal  
Email: avanderwal@bakerlaw.com  
Stephanie A. Ackerman  
Email: sackerman@bakerlaw.com  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Tel: (212) 589-4200  
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*