**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Michael R. Matthias

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES P. MARDEN, IRIS ZURAWIN MARDEN, and PATRICE M. AULD,<br><br>Defendants. | Adv. Pro. No. 10-04341 (SMB) |

300423437.6

**SECOND AMENDED COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his second amended complaint (the "Second Amended Complaint"), states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport to show that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2. Defendants James P. Marden ("JPM"), Patrice M. Auld ("PMA") and Iris Zurawin Marden ("IZM" and together with PMA and JPM, "Defendants") were beneficiaries of Madoff's Ponzi scheme. The Trustee's investigation has revealed that between December 11, 2006 and December 11, 2008, $10,312,500 in fictitious profits (the "Transfers") were withdrawn from JPM's BLMIS account (*see* Exhibit B, Column 10) meaning that JPM received $10,312,500 of other people's money. A portion of the Transfers, in the amount of $3,650,000 was deposited into bank accounts in the joint names of JPM and IZM. A portion of the Transfers, in the amount of $212,500, was deposited into a bank account held in the joint names of JPM and

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

PMA. The Transfers initially transferred to the banks accounts in which IZM and PMA are joint account holders with JPM are identified in Exhibit C attached hereto and incorporated herein by reference. The Transfers of fictitious profits to Defendants constitute avoidable transfers and are recoverable by the Trustee. This action is brought to recover the Transfers so that this customer property can be equitably distributed among the holders of allowed claims in this SIPA proceeding.

## JURISDICTION AND VENUE

3. This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

5. Venue in this district is proper under 28 U.S.C. § 1409.

6. This adversary proceeding is brought under sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law.

## DEFENDANTS

-2-

300423437.6

7. JPM holds a BLMIS account in the name, "James P. Marden," having an address in New York, New York.

8. Upon information and belief, PMA is the sister of JPM and maintains her residence in Seattle, Washington.

9. Upon information and belief, IZM is the former wife of JPM and maintains her residence in New York, New York.

## BACKGROUND, THE TRUSTEE AND STANDING

10. On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

11. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA. Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

 (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

 (b) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

300423437.6

(c) removed the case to this Court pursuant to SIPA § 78eee(b)(4).

12. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

13. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

14. At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." .

15. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

16. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

17. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George

-4-

Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

18. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

19. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

20. The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b), 544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

21. Madoff founded BLMIS in or about 1960 as a sole proprietorship. On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York. BLMIS's ownership and control did not change since its formation in

-5-

1960. During that time, BLMIS had been continually registered with the SEC, and remained a SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, sole owner, chairman, and chief executive officer, operated BLMIS with several family members and other employees, including DiPascali and David Kugel, who pleaded guilty to helping Madoff carry out the fraudulent scheme.

22. Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

23. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank

24. Because Madoff claimed that he would carefully time purchases and sales to

-6-

maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

25.     Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

26.     Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS..

27.     BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion

300423437.6

under management.

28.     Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

29.     BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

30.     At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

31.     According to BLMIS's records, JPM maintained an account (No. 1M0024) (the "Account") with BLMIS as set forth on Exhibit A. Upon information and belief, a "Customer Agreement," an "Option Agreement," and/or a "Trading Authorization Limited to Purchases and Sales of Securities and Options" (collectively, the "Account Agreements") were executed for the Account and delivered to BLMIS at its headquarters at 885 Third Avenue, New York, New York. Additionally, there were periodic customer statements, confirmations, and other communications made by BLMIS or Madoff and sent to Defendant JPM (together with the

Account Agreements, the "Account Documents").

32. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and JPM sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for BLMIS application to the Account and the purported conducting of trading activities for the Account. Between the date the Account was opened and the Filing Date, JPM made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

33. During the two years prior to the Filing Date, BLMIS made Transfers to JPM in the amount of $10,312,500 as set forth in Column 10 on Exhibit B annexed hereto.

34. During the two years prior to the Filing Date, BLMIS made Transfers to PMA of $212,500 to a joint account in the name of PMA and JPM as set forth in Exhibit C annexed hereto.

35. During the two years prior to the Filing Date, BLMIS made Transfers to IZM of $3,650,000, to a joint account in the name of IZM and JPM as set forth in Exhibit C annexed hereto.

36. The Transfers constitute fictitious profits supposedly earned in the Account, but, in reality, were other people's money.

37. The Transfers are avoidable and recoverable under sections 548(a), 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and total $10,312,500. See Exhibit B, Column 10.

38. The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers, and any additional or subsequent

-9-

transfers and (ii) seek recovery of such additional transfers.

39. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

### COUNT ONE
### FRAUDULENT TRANSFERS– 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

40. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as if fully rewritten herein.

41. Each of the Transfers was made on or within two years before the Filing Date.

42. Each of the Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

43. Each of the Transfers was made or incurred by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

44. Each of the Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

45. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and sections 78fff-1(a) and 78fff-2(c)(3) of SIPA, as applicable, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, (c) recovering the Transfers, or the value thereof, from Defendants for the benefit of the BLMIS estate, and (d) awarding any other relief the Court deems just and appropriate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i. Pursuant to sections 105(a), 548(a)(1)(A), 550(a) and 551 of the Bankruptcy

-10-

Code, and sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

    ii.    Impressing all Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

    iii.    Establishing a constructive trust over the Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

    iv.    Pursuant to federal common law and/or N.Y. CPLR 5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which the Transfers were received;

    v.    Awarding the Trustee all applicable interest, costs, and disbursements in this proceeding; and

    vi.    Granting the Trustee such other, further, and different relief as the Court deems just, proper and equitable.

Date: May 26, 2017
New York, New York

By: *s/ Nicholas J. Cremona*

Of Counsel:

**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California 90025-0509
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Michael R. Matthias
Email: mmatthias@bakerlaw.com

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff*

300423437.6