| | |
|---|---|
| **Baker & Hostetler LLP** <br> 45 Rockefeller Plaza <br> New York, NY 10111 <br> Telephone: (212) 589-4200 <br> Facsimile:  (212) 589-4201 <br> David J. Sheehan <br> Nicholas J. Cremona <br> Tracy L. Cole <br> Ona T. Wang <br> M. Elizabeth Howe <br> David M. McMillan | **Hearing Date:  June 28, 2017 at 10:00 a.m.** <br> **Objections Due:  June 21, 2017** |

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*And the chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, | Adv. Pro. No. 10-04336 (SMB) |

|  |
|---|
| v.<br><br>THE ESTATE (SUCCESSION) OF DORIS IGOIN, LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin, and EMILIE APFELBAUM,<br><br>                    Defendants. |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE, LAURENCE APFELBAUM AND EMILIE APFELBAUM**

TO:    THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78*aaa-lll* ("SIPA")[1] and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the annexed agreement (the "Settlement Agreement")[2] by and among the Trustee on the one hand, and Laurence Apfelbaum, individually and as executor of the Estate (Succession) of Doris Igoin, and Emilie Apfelbaum on the other hand. Laurence Apfelbaum and Emilie Apfelbaum shall be referred to

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.
[2] A copy of the Settlement Agreement dated June 2, 2017, is attached hereto as Exhibit A.

2

herein as the "Transferees." The Trustee and the Transferees shall be hereinafter referred to collectively as the "Settlement Parties."

In support of the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Transferees are French citizens and the daughter and granddaughter, respectively, of Albert Igoin ("Albert"), who was an associate of Madoff beginning in at least the 1980s. The BLMIS accounts at issue in this action, 1FN075 and 1FN076, were funded by fictitious profits from BLMIS accounts that Mr. Igoin and his wife, Doris Igoin, held before their deaths in 1995 and 2005, respectively.

The Trustee filed this avoidance action on November 30, 2010 against The Estate (Succession) of Doris Igoin,[3] Laurence Apfelbaum, and Emilie Apfelbaum to recover fraudulent transfers received by the Transferees in connection with their BLMIS accounts (the *Igoin* Action, Case No. 10-04336 (SMB),[4] ECF No. 1). Emilie Apfelbaum received at least $8,142,060 in fictitious profits, and Laurence Apfelbaum received at least $16,962,339 in fictitious profits within the two-year period prior to the filing date (as defined below), for a total of $25,104,399 (the "Transfers").

The Trustee's investigation indicates that, due to the nature of the Transferees' assets, the amount recoverable through litigation is less than the Transfers sought in the *Igoin* action. Not only do the Transferees lack any assets in the United States, but their recoverable assets in France are insufficient to pay their two-year liability in full. Specifically, the only significant asset recoverable by litigation at this time is the Transferees' primary residence in Paris, France, which was appraised in December 2016 as being worth €5,800,000 (*i.e.*, approx. $6,200,000

---

[3] The "Doris Igoin Succession Account," account number 1FR122, and Doris Igoin's account, 1FN006, both closed before the two-year period preceding the filing date, and are therefore no longer at issue.
[4] All ECF numbers referenced herein are applicable to Case No. 10-04336 (SMB), unless otherwise stated.

3

USD). Transferees' only other significant assets are two life insurance policies in the name of Laurence Apfelbaum and Emilie Apfelbaum that were purchased in February 2011 with refunds from the French taxing authorities for taxes paid on the purported value of their BLMIS accounts.

The Trustee and the Transferees agreed to submit the matter to mediation, and engaged in a mediation session in July 2016. Following the mediation session and several rounds of negotiations, during which the Transferees disclosed their assets and financial condition, the Settlement Parties ultimately reached a resolution.

The Settlement Parties entered into the Settlement Agreement, which represents a good faith, complete settlement of all disputes among the Settlement Parties related to this adversary proceeding. Under the Settlement Agreement, the Settlement Parties have agreed that the Transferees will pay to the Trustee $7,500,000 in an "Initial Settlement Payment" by liquidating a significant portion of their life insurance policies. The Settlement Parties have also agreed to a process by which the Trustee may recover additional funds: During the mediation, the Transferees informed the Trustee of a lawsuit the Transferees filed in France (the "*Groupama* action") against Groupama Bank, the successor to the French banks that administered the Transferees' BLMIS accounts before 1999. The *Groupama* action is stayed until final resolution of this action. After this action is resolved, the *Groupama* action will proceed, and the Transferees have agreed to pay to the Trustee 35% of any recovery from the *Groupama* action, up to the difference between the Transferee' two-year liability and the Initial Settlement Payment.

The Trustee's settlement with the Transferees will obtain a significant, direct monetary benefit for the estate: it avoids costly and protracted international litigation; provides for an

immediate cash payment; and provides a mechanism by which the Trustee could be additionally compensated through a resolution of the *Groupama* Action. The settlement will benefit the fund of customer property as the proceeds will increase the funds available for distribution to BLMIS customers with allowed claims. The Trustee therefore respectfully requests that the Court approve this settlement.

**BACKGROUND**

### The Commencement of the BLMIS Liquidation Proceeding

On December 11, 2008 (the "Filing Date"),[5] the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). In the complaint, the SEC alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

a.  appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

---

[5] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* section 78*lll*(7)(B) or SIPA.

b.  appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.  removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating Madoff's chapter 7 estate with the BLMIS SIPA proceeding.

### Transferees' BLMIS Accounts

The Trustee has identified $16,962,339 in fictitious profits transferred by BLMIS to or for the benefit of Laurence Apfelbaum, from account number 1FN076, and $8,142,060 in fictitious profits transferred by BLMIS to or for the benefit of Emilie Apfelbaum, from account number 1FN075, within the two-year period, for a total of $25,104,399 in fictitious profits (as defined above, the "Transfers").

The Transferees filed Claims numbered 000623 and 000625 (the "Customer Claims") in connection with account numbers 1FN075 and 1FN076, respectively, which were denied by the Trustee pursuant to the Notices of Trustee's Determination of Claim, dated September 17, 2010 (the "Determinations").

The Transferees did not file objections to the Determinations with the Court.

### The Trustee's Claims Against the Transferees

On November 30, 2010, the Trustee filed a complaint (the "Complaint") commencing this adversary proceeding against the Transferees, seeking to avoid and recover the Transfers under 11 U.S.C. §§ 544, 548, 550, and 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoidance Power Claims").

The Transferees have disputed any liability to the BLMIS estate for the Transfers.

6

Following the commencement of the adversary proceeding, the Transferees filed a motion to dismiss on April 2, 2012 raising defenses based on lack of personal jurisdiction, *forum non conveniens*, and the application of Section 546(e) of the Bankruptcy Code to the Trustee's claims. On the same date, the Transferees filed with the District Court a motion to withdraw the reference on the issue of the application of Section 546(e) to the Trustee's claims.

On April 23, 2012, the Trustee filed an amended complaint (ECF No. 27), and the parties subsequently agreed that the Transferees' motion to dismiss filed on April 2, 2012 was to be treated as a motion to dismiss the amended complaint (ECF No. 18). After jurisdictional discovery and further briefing, the Court entered a Memorandum Decision on February 13, 2015 regarding the Transferees' motion to dismiss, denying the motion in part and reserving ultimate determination of personal jurisdiction for trial (ECF No. 133).

On April 7, 2016, the Trustee filed a Notice of Mediation Referral. On April 21, 2016, the Trustee filed a Notice of Mediator Selection (ECF No. 159).

**Settlement Discussions and the Trustee's Investigation**

In connection with this litigation, the Trustee has conducted a comprehensive investigation relating to the Transfers and the Transferees' assets. The Transferees have cooperated with the Trustee and facilitated the investigation by timely providing information the Trustee has requested. The Trustee's investigation included, but was not limited to: meetings with the Transferees' counsel; interviews and depositions of witnesses in London and Paris, including a deposition of Laurence Apfelbaum; review and analysis of all BLMIS-related transaction histories of the Transferees, their BLMIS account statements, correspondence, financial records, and other records.

In an effort to directly address the underlying claims and issues among the Settlement Parties, on July 19, 2016, the Settlement Parties engaged in mediation and presented

7

their respective claims and defenses. Although the Settlement Parties did not reach a settlement by the end of the session, the Settlement Parties agreed to continue discussions in the ensuing months.

The Transferees have participated in mediation and further settlement discussions in good faith. At the July 2016 mediation, Transferees made a settlement offer almost immediately, and complied timely and in good faith with all of the Trustee's requests for further information on their finances, including disclosure of six years' worth of tax returns and other documents.

On June 2, 2017 the Settlement Parties executed the Settlement Agreement wherein they agreed to settle the matters at issue in this adversary proceeding on the terms summarized below.

**Overview of the Agreement**

The principal terms and conditions of the Settlement Agreement are generally as follows (as stated above, the Settlement Agreement is attached as Exhibit A and may be reviewed for a complete recitation of its terms):[6]

a.      The Transferees shall pay or cause to be paid the Initial Settlement Payment of $7,500,000, less a $5,000 credit for costs incurred by the Transferees in connection with obtaining an appraisal on their primary residence by Robine & Associés. The Initial Settlement Payment will be made by the Transferees in accordance with a percentage split of seventy two and a half percent (72.5%) and twenty seven and a half percent (27.5%) for each Laurence Apfelbaum and Emilie Apfelbaum, respectively, within sixty (60) days of the Bankruptcy Court Approval Date.

---

[6] Terms not otherwise defined shall have the meaning ascribed to them in the Settlement Agreement. In the event of any inconsistency between the summary of the terms provided in this section and the terms of the Agreement, the Settlement Agreement shall prevail.

8

  b.  The amount, if any, reflecting thirty five (35%) of the Transferees' total recovery in the *Groupama* Action, whether by litigation or settlement or other resolution (the "Additional Settlement Payment(s)"), is to be made within 60 days of the Transferees' receipt of such funds.

  c.  The Transferees shall in no event be required to pay the Trustee any more than the total sum of $25,104,399 (the "Maximum Payment Amount").

  d.  Laurence Apfelbaum agrees to cooperate with the Trustee and SIPC in connection with any efforts to recover Customer Property[7] from the principals or agents of BLMIS, the customers of BLMIS or anyone else. Such cooperation shall include but not be limited to: making herself reasonably available to the Trustee, his counsel, and his agents to assist in the Trustee's ongoing investigation of the BLMIS fraud; producing documents, if any; and providing truthful and complete testimony by declaration, at deposition, and/or at trial.

  e.  The Trustee will produce non-privileged, non-confidential documents, consistent with his judgment and fiduciary duties to the Estate, that are reasonably available and responsive to the document requests served by the Transferees on June 2, 2017.

  f.  As soon as practicable after the Approval Date and receipt by the Trustee of the Initial Settlement Payment, the Settlement Parties shall submit to the Court a stipulation requesting dismissal of this adversary proceeding without prejudice as against the Transferees, with the Trustee and the Transferees each bearing their own costs, attorneys' fees, and expenses, subject only to the Trustee's right to reopen the Adversary Proceeding to seek entry of Judgment pursuant to a Stipulation for Entry of Judgment for any uncured failure of the Transferees to perform their obligations under the terms of the Settlement Agreement; and

---

[7] "Customer Property" shall have the same meaning as that provided under section 78*lll*(4) of SIPA: "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

      g.      The Transferees shall release, acquit, and discharge the Trustee, and the Trustee shall release, acquit and discharge the Transferees, subject to certain exceptions.

**RELIEF REQUESTED**

By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit C approving the Settlement Agreement.

**LEGAL BASIS**

Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

a. the probability of success in the litigation;

b. the difficulties associated with collection;

c. the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

d. the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at \*22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

There is a high probability of success in the litigation, because it seeks only fictitious profits in the two-year period. The Trustee would face significant collection difficulties,

11

however, because he may only recover Transferees' assets in France through enforcement of a U.S. judgment in the French courts in a separate French proceeding. This proceeding, known as *exequatur*, is a lengthy process that may not resolve the action for a number of years. It would also require additional legal expenses to be incurred by all parties. Based on a review of the Transferees' available assets in France, the Transferees' apartment, valued at $6,200,000, would be the only significant asset recoverable by litigation at this time. The Settlement Agreement furthers the interest of BLMIS customers by ensuring an immediate cash payment to the estate of Initial Settlement Payment, $7,500,000. This money could be used to pay customer claims while also allowing for the future possibility of recovering 100% of the Transfers. The Settlement Agreement also resolves all claims between the Settlement Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation, both in the U.S. and in France. (*See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit")). A true and accurate copy of the Picard Affidavit is attached as Exhibit B.

**CONCLUSION**

The Trustee believes that the terms of the Settlement Agreement fall well above the lowest point in the range of reasonableness. The Settlement Agreement resolves the claims raised by the Trustee against the Transferees as to this adversary proceeding, and avoids likely lengthy, burdensome, and expensive litigation regarding the claims and defenses in this matter. The Trustee also believes that the Settlement Agreement represents a fair and reasonable compromise of the Avoidance Power Claims. Because the Settlement Agreement is well within the "range of reasonableness" and confers a significant monetary benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Settlement Agreement.

**NOTICE**

In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has

been given to (i) SIPC; (ii) the United States Attorney for the Southern District of New York; and (iii) Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: Jonathan K. Cooperman, counsel for Transferees. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit C granting the relief requested in the Motion.

Dated: New York, New York
       June 2, 2017

Respectfully submitted,

/s/ Ona T. Wang

David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Tracy Cole
Email: tcole@bakerlaw.com
Ona T. Wang
Email: owang@bakerlaw.com
M. Elizabeth Howe
Email: bhowe@bakerlaw.com
David M. McMillan
Email: dmcmillan@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
*Attorneys for Irving H. Picard, Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff*