# EXHIBIT A
# REDACTED

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of June 2, 2017, by and between Irving H. Picard, in his capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act (the "Liquidation Proceeding"), 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on the one hand, and Laurence Apfelbaum, individually and in her capacity as executor and beneficiary of the Estate (Succession) of Doris Igoin, and Emilie Apfelbaum ("Transferees"), on the other hand. The Trustee and the Transferees shall be hereinafter referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers with the United States Securities and Exchange Commission (the "SEC") and members of the Securities Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008 (the "Filing Date"), the SEC filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff. On December 12, 2008, the District Court entered an order which, *inter alia*, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

**WHEREAS**, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with the application of SIPC. Thereafter, SIPC

filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that

BLMIS was not able to meet its obligations to securities customers as they came due and,

accordingly, its customers needed the protections afforded by SIPA.  On December 15, 2008, the

District Court granted the SIPC application and entered an order under SIPA, which, in pertinent

part, appointed the Trustee as the trustee for the liquidation of the business of BLMIS under

section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case

to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No.

08-01789 (SMB). By Order dated June 9, 2009, the estate of Madoff (the "Madoff Estate") was

substantively consolidated with the estate of BLMIS;

WHEREAS, pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers

of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11

U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA.

Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA

proceeding to the extent consistent with SIPA;

WHEREAS, under SIPA, the Trustee is charged with the responsibility to marshal and

liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance

with SIPA in satisfaction of allowed claims, including through the recovery of avoidable

transfers such as preference payments and fraudulent transfers made by BLMIS;

WHEREAS, the Trustee's claims against transferees who received avoidable transfers

from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections

105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and

Creditor Law § 270 *et seq.* (McKinney 2001) and other applicable laws;

WHEREAS, pursuant to an order of the Bankruptcy Court, dated December 23, 2008

(the "Claims Procedures Order", Case No. 08-01789 (SMB),[1] ECF No. 12), the Trustee is authorized to enter into settlements with claimants in connection with any claims upon which there is a disagreement, provided that the Trustee obtains the approval of SIPC. Pursuant to the Claims Procedures Order, no further order of the Bankruptcy Court is necessary as long as any obligations incurred by the BLMIS estate under the settlements are ascertainable from the books and records of BLMIS or are otherwise established to the satisfaction of the Trustee;

**WHEREAS**, pursuant to an order of the Bankruptcy Court, dated November 12, 2010 (the "Settlement Order", ECF No. 3181), the Trustee is authorized to enter into settlement agreements with transferees in settlement of avoidable transfers without Bankruptcy Court approval, subject to the limitations and procedures set forth therein. Pursuant to the Settlement Order, provided that the proposed settlement meets the settlement standards established by the Bankruptcy Court, including, without limitation, the approval of the proposed settlement by SIPC, no further order of the Bankruptcy Court is necessary for the settlement of any and all avoidable transfers in an amount up to and including Twenty Million United States Dollars ($20,000,000.00);

**WHEREAS**, on November 30, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Estate (Succession) of Doris Igoin, et al.*, Adv. Pro. No. 10-04336 (SMB) (the "Adversary Proceeding");

**WHEREAS**, the Trustee alleges that the Transferees received avoidable transfers in the aggregate amount of Twenty-Five Million, One Hundred Four Thousand, Three Hundred Ninety-Nine United States Dollars ($25,104,399.00) in connection with BLMIS Account Nos.

---

[1] All ECF numbers referenced herein are applicable to Case No. 08-01789 (SMB), unless otherwise stated.

1FN075 and 1FN076 (the "BLMIS Accounts") during the two-year period prior to the Filing

Date  (the "Alleged Avoidable Transfers");

     **WHEREAS**, the Trustee has not alleged – and is not aware of evidence – that the

Transferees had any knowledge of the BLMIS fraud before BLMIS's collapse;

     **WHEREAS**, the Trustee has not alleged – and is not aware of evidence – that the

Transferees received the transfers with a lack of good faith;

     **WHEREAS**, the Transferees raised a number of defenses to the Adversary Proceeding,

including a lack of personal jurisdiction in the United States Courts, which the Trustee disputes;

     **WHEREAS**, the Transferees filed Claim Nos. 000623 and 000625 (the "Customer

Claims") in connection with the BLMIS Accounts, which were denied by the Trustee pursuant to

the Notices of Trustee's Determination of Claim dated  September 17, 2010 (the

"Determinations");

     **WHEREAS,** the Transferees did not file objections to their respective Determinations

with the Court;

     **WHEREAS,** the Transferees are plaintiffs in a pending action against Groupama

Banque, S.A. in the District Court of Bobigny, France seeking to recover damages in connection

with their BLMIS accounts, which were managed until 1999 by Banque Pour L'Industrie

Française and/or its successors (the "Groupama Action");

     **WHEREAS,** in determining to settle his disputes with the Transferees, which settlement

includes releasing claims against the Transferees, the Trustee conducted a comprehensive

investigation.  The investigation included the review of BLMIS-related transaction histories for

the Transferees, interviews and depositions of witnesses, and substantial review and analysis of

account statements, correspondence, financial records, and other records and documents.  Such

diligence has also included a review of the Transferees' abilities to satisfy any judgment that the

Trustee may obtain in continued litigation and in settlement thereof;

**WHEREAS**, the Trustee and the Transferees have engaged in settlement negotiations as

well as a mediation conference to attempt to resolve their disputes without the expense, delay

and uncertainty of continuing the litigation about the matters described above; and

**WHEREAS**, the Parties acknowledge that this settlement must be approved by the

United States Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. In the

event that this Settlement Agreement is ultimately not approved by the Courts, this Settlement

Agreement should not be construed as a waiver or compromise of any of the Transferees'

defenses in the Adversary Proceeding or as an admission of the Trustee's allegations in the

Adversary Proceeding.

## DEFINITIONS

The following definition shall apply to and constitute part of this Agreement and all

schedules, exhibits and annexes hereto:

"Unknown Claims" shall mean any Released Claims (as defined in Section 9 herein) or

Trustee Released Claims (as defined in Section 8 herein), that the Parties do not know or suspect

to exist in their favor at the time of giving the release in this Agreement that if known by them,

might have affected their settlement and release in this Agreement.  With respect to any and all

Released Claims and Trustee Released Claims, the Parties shall expressly waive or be deemed to

have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the

extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR
> AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR

HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Transferees expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. The Transferees may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Transferees shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. The Transferees acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

**NOW THEREFORE,** for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1.     Bankruptcy Court Approval; Effective Date.  This Agreement is subject to, and becomes effective and binding on the Parties upon: (i) the Bankruptcy Court's approval by an order (the "Approval Order") that is no longer subject to appeal, review or rehearing by any court of competent jurisdiction ("Approval Date"), and (ii) receipt by the Trustee of the Initial Settlement Payment, as defined in Section 3(a) below ("Effective Date").  If the Approval Order is subject to a timely appeal or stay, the Approval Date shall not occur until the Approval Order becomes

final and no longer subject to any appeal or stay, *provided, however*, the Transferees, in their sole and absolute discretion, may waive the requirement for a final and non-appealable Approval Order. The Trustee shall use reasonable efforts to obtain the Approval Order as promptly as practicable after execution of this Agreement. In the event that this settlement is rejected by a final order that is not subject to appeal, review or rehearing by any court of competent jurisdiction, this Settlement Agreement will become null and void; both parties will be restored to the *status quo ante* as though this Settlement Agreement had never been signed; and neither party shall have deemed to have waived or compromised any claim or defense in the Adversary Proceeding, including laches or statutes of limitations, by virtue of entering into this Settlement Agreement.

2.      9019 Motion. The form of the pleadings in support of the Trustee's request seeking approval of this Settlement Agreement in the BLMIS SIPA proceeding (the "9019 Motion") pursuant to section 105(a) of the Bankruptcy Code, 11 U S.C. §§ 101 et seq., and Rules 2002 and 9010 of the Federal Rules of Bankruptcy Procedure, including the proposed approval order, shall be subject to the Transferees' reasonable approval, which will have occurred prior to the Approval Date. For clarity, as provided below, the releases provided for in Sections 8 and 9 shall become effective upon the Effective Date.

3.      Settlement Payment Obligation. In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration (including, without limitation, the release set forth in Section 8), the receipt and sufficiency of which are hereby acknowledged for purposes of this settlement only, and in settlement for all claims that the Trustee has or may have against the Transferees, including in this Adversary Proceeding or in any other litigation proceeding, the Transferees shall make payments to Trustee as follows:

(a)    Seven Million Four Hundred Ninety Five Thousand United States Dollars ($7,495,000.00), which reflects a settlement payment of Seven Million, Five Hundred Thousand United States Dollars ($7,500,000.00) (the "Initial Settlement Payment") less a Five Thousand United States Dollars ($5,000.00) credit for costs incurred by the Transferees in connection with obtaining an appraisal on their primary residence by Robine & Associés by: (i) wire transfer of immediately available funds to the account specified on Schedule 1 attached hereto, or (ii) bank or cashier's check made payable to Trustee;

(b)    The Initial Settlement Payment will be made by the Transferees in accordance with a percentage split of seventy two and a half percent (72.5%) and twenty seven and a half percent (27.5%) by each of Laurence Apfelbaum and Emilie Apfelbaum, respectively, within sixty (60) days of the Bankruptcy Court Approval Date;

(c)    The amount, if any, reflecting thirty five percent (35%) of the Transferees' total recovery in the Groupama Action, whether by litigation or settlement or other resolution, (the "Additional Settlement Payment(s)"), to be made within sixty (60) days of the Transferees' receipt of such funds, provided that the judicial decision upon which such payment has been made is a final judgment and may not be appealed for any review.  If any payments to or for the benefit of the Transferees are made in connection with the Groupama Action before that time, the money shall be held in the *Caisses des Règlements Pécuniaires des Avocats* ("CARPA") account of the Transferees' counsel in the Groupama Action until a final, non-appealable judgment has been rendered.  The Trustee further acknowledges that the Transferees and their counsel Nicolas Lecoq-Vallon, Esq. may prosecute the Groupama action without interference from, or liability to, the Trustee, provided, however, the Transferees prosecute the Groupama Action in good faith;

(d)    The amount, if any, reflecting thirty five percent (35%) of the Transferees' total recovery in tax appeals denied by the Cour d'appel de Paris on February 7, 2017, for the Transferees' wealth tax refund claim (the "Tax Appeals"), to be made within sixty (60) days of the Transferees' receipt of such funds, provided that the judicial decision upon which such payment has been made is a final judgment and may not be appealed for any review. If payments to or for the benefit of the Transferees are made in connection with the Tax Appeals before that time, the money shall be held in the CARPA account of the Transferees' counsel in the tax appeals, Pierre Pradié, until a final, non-appealable judgment has been rendered. The Trustee further acknowledges that the Transferees and their counsel may prosecute the Tax Appeals without interference from, or liability to, the Trustee; provided, however, the Transferees prosecute the tax appeals in good faith.

(e)    Notwithstanding any of the payment obligations set forth in <u>Sections 3(a)</u> through <u>Section 3(d)</u>, the Transferees shall in no event be required to pay the Trustee any more than the total sum of Twenty Five Million, One Hundred Four Thousand, Three Hundred Ninety Nine United States Dollars ($25,104,399.00) (the "<u>Maximum Payment Amount</u>").

4.    <u>Cooperation of Laurence Apfelbaum.</u>

(a)    Laurence Apfelbaum agrees to cooperate with the Trustee and SIPC in connection with any efforts to recover actual or potential Customer Property[2] from the principals or agents of BLMIS, the customers of BLMIS or anyone else, including but not limited to cooperating with litigation. Mrs. Apfelbaum's cooperation shall include making herself reasonably available to the Trustee, his counsel, and his agents either by phone, videoconference, or in person in an

---

[2] "Customer Property" shall have the same meaning as that provided under section 78*lll*(4) of SIPA: "cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

area close to where she lives in order to minimize and travel inconvenience, to assist in the Trustee's ongoing investigation of the BLMIS fraud; producing documents, if any; and, among other things, to provide truthful and complete testimony by declaration, at deposition, and/or at trial. The Trustee, his counsel, and his agents shall make reasonable efforts to limit the disruption and inconvenience to Mrs. Apfelbaum, including using best efforts to minimize the need, if any, for Mrs. Apfelbaum to travel from Paris. The Parties additionally agree that requests for calls or meetings will be made no less than two (2) days in advance of a call and seven (7) days in advance of a meeting, although the Parties anticipate that in practice, this formality may be waived in a spirit of reasonable and good faith cooperation.

(b)     If the Trustee and/or SIPC request Mrs. Apfelbaum to travel in connection with her cooperation in any pending or future proceeding to recover Customer Property, the Trustee shall reimburse Mrs. Apfelbaum for reasonable expenses.

(c)     Mrs. Apfelbaum's obligation to cooperate, as provided in Section 4(a), shall terminate upon the date the liquidation proceeding is closed pursuant to section 350 of the Bankruptcy Code or as otherwise provided by a final, non-appealable order closing the Liquidation Proceeding.

5.    Document Production by the Trustee. The Trustee will respond to and produce non-privileged, non-confidential documents, consistent with his judgment and fiduciary duties to the Madoff Estate, that are reasonably available and responsive to the document requests served by the Transferees on June 2, 2017, and may produce such documents after the termination of this Adversary Proceeding provided, however, that such production by the Trustee will be completed no later than September 29, 2017.

6.    Notice/Opportunity to Cure.

(a)    The Transferees shall provide written notice to the Trustee of any resolution, judgment, appeal, or material procedural delay ("Triggering Event") of the Groupama Action and the Tax Appeals within ten (10) days of any such Triggering Event, whether favorable or unfavorable to the Transferees.

(b)    Notwithstanding anything herein to the contrary, if the Transferees default on any of their obligations in the Agreement, the Transferees shall have twenty (20) days to cure after receipt of written notice of default.

7.    Stipulation for Entry of Judgment Against the Transferees.    The obligation to pay the Initial Settlement Payment and the Additional Settlement Payment(s) shall be evidenced by a Stipulation for Entry of Judgment in the amount of Twenty Five Million, One Hundred Four Thousand, Three Hundred Ninety Nine United States Dollars ($25,104,399.00), in the form attached hereto as Exhibit 1, which will be executed by the Transferees contemporaneously with the execution of this Agreement.  Counsel for the Trustee shall hold the Stipulation for Entry of Judgment in escrow and shall not file the Stipulation for Entry of Judgment and shall not request entry of the judgment unless there is a default in the payment of the Initial Settlement Payment or any Additional Settlement Payment(s), or other material breach of the terms of the Agreement, which is not cured within twenty (20) days of written notice by the Trustee and his counsel at the addresses listed on the signature pages attached hereto.

8.    Release by Trustee.

(a)    As of the Effective Date, in consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under

this Agreement, the Trustee hereby releases, remises and forever discharges only the Transferees, Laurence Apfelbaum in her capacity as the Executor of the Estate (Succession) of Doris Igoin,  and the Estate (Succession) of Doris Igoin, from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, Madoff, and/or the consolidated BLMIS/Madoff estate, against the Transferees and/or the Estate (Succession) of Doris Igoin based on, arising out of, or relating in any way to the BLMIS Accounts or the Alleged Avoidable Transfers (the "Trustee Released Claims"), and any claims against the Transferees and the Estate (Succession) of Doris Igoin that could be asserted in connection with the *Picard v. Magnify, et al.* Adversary Proceeding, No. 10-05279 (BRL) (the "Magnify Claims") and any proceedings arising out of or in any way related to the facts of the Magnify Claims.  For avoidance of doubt, it is the intention of the parties that the Trustee release all claims he may have against the Transferees anywhere in the world, including but not limited to any claims in the Courts of the United States, France, Switzerland and Israel.

(b)    Notwithstanding the foregoing release contained in Section 8(a), the Transferees, Laurence Apfelbaum in her capacity as the Executor of the Estate (Succession) of Doris Igoin, and the Estate (Succession) of Doris Igoin are not released from liability for any transfers that

they may have received in connection with any account not specified herein or may receive after

the date of this Agreement which constitute subsequent transfers of transfers made by BLMIS

which are avoidable and recoverable under SIPA, including SIPA sections 78fff(b), 78fff-1(a),

and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a), and 551 of the Bankruptcy Code,

the New York Debtor and Creditor Law § 270 *et seq*. (McKinney 2001) and other applicable

laws.

(c)    Dismissal of Adversary Proceeding. As soon as practicable after the Effective

Date, counsel for the Trustee and the Transferees shall respectively execute, and the Trustee shall

subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding without

prejudice and without costs to either the Trustee or the Transferees, subject to Section 6 of this

Agreement and the right to re-open the Adversary Proceeding to seek entry of Judgment pursuant

to the Stipulation for Entry of Judgment.

(d)    Submission to the French Courts for *Exequatur*. After approval by the United

States Courts, counsel for the Transferees will submit the Order of the Bankruptcy Court

approving this Settlement Agreement to the French Courts for *exequatur* for a declaration that

this Settlement Agreement is enforceable in France. Nothing in this paragraph shall be construed

as a waiver by the Trustee of any rights he may have in the French Courts for *exequatur* or any

other proceeding.

9.    Release by Transferees.    As of the Effective Date, the Transferees, on behalf of

themselves and their executors, administrators, heirs and assigns hereby release, remise, and

forever discharge: (a) the Trustee, (b) all of the Trustee's attorneys, professionals, agents and

consultants, and (c) BLMIS and its consolidated estate from any and all claims or causes of

action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from

any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or in any way related to BLMIS, the Madoff Estate, the BLMIS Accounts or the Alleged Avoidable Transfers (the "Released Claims").

10.    General Representations and Warranties.

(a)    The Trustee hereby represents and warrants to the Transferees that he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of his obligations under this Agreement.

(b)    The Transferees hereby represent and warrant to the Trustee that: (i) they have the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform their obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Transferees and constitutes the valid and binding agreement of the Transferees, enforceable against the Transferees in accordance with its terms; (iii) in executing this Agreement, the Transferees have done so with the full knowledge of any and all rights that the Transferees may have with respect to the controversies herein compromised, and the Transferees have received or have had the opportunity to obtain independent legal advice from their attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and

(iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Transferees release herein, and the Transferees have not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Transferees release herein.

(c)    Notwithstanding the foregoing release in <u>Section 8(a)</u>, if the Trustee has fully satisfied all valid net equity claims of customers and obligations to SIPC as subrogee and otherwise in accordance with SIPA, and thereafter has sufficient funds to make a distribution to general unsecured creditors, the Transferees (or their legal successors) may be entitled to a distribution as a general unsecured creditor of BLMIS and/or the Madoff Estate. The amount of any such general unsecured claim will be determined by the Trustee within his discretion and according to the equities of the case pursuant to section 502(j) of the Bankruptcy Code. Nothing contained in this Agreement shall constitute a waiver or release of any claim by any of the Transferees (or their legal successors) to such distribution as general unsecured creditors of BLMIS and/or the Madoff Estate.

11.    <u>Additional Representations and Warranties by Transferees</u>. To induce the Trustee to enter into this Agreement, the Transferees represent and warrant, to the best of their knowledge, information and belief, that: (1) other than the Alleged Avoidable Transfers as referenced on Exhibit B of the Complaint filed in the Adversary Proceeding and any transfers received in connection with BLMIS Account Nos. 1FN075 and 1FN076, the Transferees have not received any money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS within two (2) years of the Filing Date; (2) the Transferees are not an immediate, mediate or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial

transferee, other than as set forth in Exhibit B of the Complaint filed in the Adversary Proceeding and as related to BLMIS Account Nos. 1FN075 and 1FN076 within two (2) years of the Filing Date; (3) the Transferees have not received, since December 11, 2006, any money, funds, loans, transfers, assets, financial assistance or financial accommodation from any defendant in the action styled *Picard v. Magnify Inc. et al,* Adv. Pro. No. 10-05279 or any individual or entity listed in Exhibit 2; (4) the disclosures made by the Transferees have been truthful and accurate, including disclosures regarding their available assets; and (5) the Transferees are not aware of any potential claims against the Transferees by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS arising from the transfer of any funds or property originating from Madoff or BLMIS within two (2) years of the Filing Date.

12.     Termination of Agreements with BLMIS.    Any and all prior agreements between the Transferees and BLMIS are hereby terminated as of the date of this Agreement.

13.     Further Assurances.    Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

14.     Entire Agreement.    This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

15.     Amendment; Waiver.    This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties.    No waiver of any provision of this

Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

16.    Assignment.  This Agreement may not be assigned by either Party without the prior written consent of the other Party.

17.    Successors.  This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors and permitted assigns.

18.    Negotiated Agreement.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

19.    Severability.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

20.    Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

21.    Governing Law.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all

right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

22.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, CONCERNING THIS AGREEMENT.  IN THE EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE CONCERNING THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING CONCERNING THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

23.    Confidentiality.    The Parties agree to keep any performance under this Agreement confidential and not to disclose documents and communications related to performance under this Agreement except: (i) to their respective attorneys, professionals, agents and consultants; (ii) to SIPC or the SEC or any of their respective employees; (iii) as required by law or legal process (including, for the avoidance of doubt, pursuant to a request by any governmental body or instrumentality); and (iv) that the Transferees may produce this Settlement Agreement in the Groupama Action. If either Party is required by law or legal process to disclose this Agreement to any party covered by clause (iii) above, such Party will, if practicable, give the other Party

prompt notice of such request so that such other Party may seek an appropriate protective order at its sole cost and expense. In the absence of a protective order, the Party so required may disclose this Agreement, provided that it will request that confidential treatment be accorded to the identity of the Transferees. Notwithstanding the foregoing, either Party may disclose this Agreement or the terms thereof in connection with any litigation concerning the subject matter herein.

24.    Expenses. Each Party shall bear its respective expenses relating to or arising out of the Adversary Proceeding and this Agreement, including, but not limited to, fees for attorneys, experts, consultants, accountants and other advisors.

25.    Notices. All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto, with copies to counsel identified below the signature lines. A Party or counsel may change his or her address for receiving notice by giving notice of a new address in writing to all counsel and parties identified herein. All such notices, requests, demands, consents and other communications shall be deemed to have been duly given or sent two (2) days following the date on which mailed, or on the date on which delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

26.    No Third Party Beneficiaries. Except as expressly provided in Sections 8 and 9, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

27.     <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a section is to a section of this Agreement.  "Including" is not intended to be a limiting term.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, THE TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF**

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201

By: _____
     Irving H. Picard, Trustee

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  Ona T. Wang
Tel.: (212) 589-4200
Facsimile: (212) 589-4201

Sworn and subscribed before me this
2nd day of _____June_____, 2017.

_____
Notary Public

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/20__

21

**TRANSFEREES**

Address:

Laurence Apfelbaum
Emilie Apfelbaum
52 Rue de Vaugirard
75006 Paris, France

_____
Laurence Apfelbaum

VU UNIQUEMENT POUR LA
CERTIFICATION DE LA SIGNATURE DE
_Laurence APFELBAUM_
APPOSÉE CI-CONTRE, PAR Me
GEORGES DINTRAS NOTAIRE A PARIS

_____
Emilie Apfelbaum

With copies to:
Jonathan K. Cooperman, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, N.Y. 10178
Tel.: (212) 808-7800
Facsimile: (212) 808-7898

VU UNIQUEMENT POUR LA
CERTIFICATION DE LA SIGNATURE DE
_Emilie APFELBAUM_
APPOSÉE CI-CONTRE, PAR Me
GEORGES DINTRAS NOTAIRE A PARIS

Ambre Nernick-Seltzer, Esq.
101 Park Avenue
27th Floor
New York, N.Y. 10178
Tel.: (212) 808-5094

Sworn and subscribed before me this
_____ day of _____, 2017.

_____
Notary Public

Sworn and subscribed before me this
_____ day of _____, 2017.

_____
Notary Public

[TRANSFEREES SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

# SCHEDULE 1

## Wiring Instructions

Citi Private Bank
153 East 53rd Street, 23rd Floor
New York, New York 10022
ABA No.:                **Redacted**
Swift Code:
Account Name:            Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff
                         Investment Securities LLC
Account No.:            **Redacted**

## EXHIBIT 1 TO SETTLEMENT AGREEMENT

### Stipulation for Entry of Judgment

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Tracy Cole
Ona T. Wang
M. Elizabeth Howe
David M. McMillan

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE (SUCCESSION) OF DORIS IGOIN, LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin, and EMILIE APFELBAUM,<br><br>Defendants. | Adv. Pro. No. 10-04336  (SMB) |

## STIPULATION FOR ENTRY OF JUDGMENT

IT IS HEREBY STIPULATED AND AGREED, by and between plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff (the "Trustee"), on the one hand, and, on the other hand, Laurence Apfelbaum and Emilie Apfelbaum ("Transferees"), on the other hand (the Trustee and the Transferees are collectively referred to as the "Parties" and individually as a "Party"), as follows:

1.      That in the event of default in the payment of the Settlement Payment or Additional Settlement Payment(s) set forth in the Settlement Agreement and Release made and entered into as of June 2, 2017 between the Parties (the "Settlement Agreement"), the Trustee shall be entitled to immediate entry of a Judgment Pursuant to Stipulation, a copy of which is attached hereto as Exhibit 1, entered against the Transferees in the amount of Twenty-Five Million, One Hundred Four Thousand, Three Hundred Ninety-Nine United States Dollars ($25,104,399.00), reduced by any payments made by the Transferees under the Settlement Agreement.

2.      That judgment will be entered forthwith upon a default and a failure to cure after proper notice within the allowable time period contained in Section 6 of the Settlement Agreement, upon the filing of a Declaration Regarding Default in Payments by the Trustee or his attorney of record which shall set forth the amount of any payments received from Defendant.

3.      The Transferees confirm the amount set forth in Paragraph 1.

4.      That judgment shall be final for all purposes upon entry of judgment and each Party waives any right to appeal therefrom.

5.      That the Transferees, represented in this action by counsel, have read and understand the contents of this Stipulation for Entry of Judgment (the "Stipulation").

6.      That this Stipulation shall not be filed unless and until there is a default that has not been cured under the Settlement Agreement.  This Stipulation shall be returned to the Transferees when the Transferees have paid all sums and satisfied all obligations arising under the Settlement Agreement.

7.      That the declaration of the Trustee or his attorney of record shall be sufficient to establish the exact sum due and owing pursuant to this Stipulation and shall be sufficient to secure the entry of judgment in the United States and the issuance of a writ of execution or its foreign equivalent, as applicable, in accordance with the terms set forth herein.

8.      That the judgment shall bear interest at the applicable legal rate from the Effective Date of the Settlement Agreement, as stated in the declaration of the Trustee or his attorney of record.

9.      That the Transferees hereby expressly waive notice of entry of judgment, notice of and right to any hearing regarding entry of judgment.  The Trustee shall provide the Transferees with twenty (20) days' written notice prior to requesting entry of judgment.  The Transferees shall have an opportunity to cure said default during such period.

10.     This Stipulation may be signed in counterparts, all of which when taken together shall constitute the agreement of the Parties hereto.  A photocopy, facsimile or email signature to this Stipulation shall be deemed as an original signature for any and all purposes.

11.     That the court shall retain jurisdiction over the Parties to enforce this Stipulation until there is full performance of the terms hereof.

Dated as of:  June 2, 2017

**BAKER & HOSTETLER LLP**                    **KELLEY DRYE LLP**

By: /s/ Ona T. Wang                          By: /s/ Jonathan K. Cooperman
45 Rockefeller Plaza                         101 Park Avenue
New York, New York 10111                     New York, NY 10178
Telephone: 212.589.4200                      Telephone: 212.808.7534
Facsimile: 212.589.4201                      Facsimile: 212.808.7897
David J. Sheehan                             Jonathan K. Cooperman
Email: dsheehan@bakerlaw.com                 Email: jcooperman@kelleydrye.com
Tracy L. Cole                                Benjamin D. Feder
Email: tcole@bakerlaw.com                    Email: bfeder@kelleydrye.com
Ona T. Wang
Email: owang@bakerlaw.com                    *Attorneys for Defendants Laurence*
M. Elizabeth Howe                            *Apfelbaum, Emilie Apfelbaum, and the*
Email: bhowe@bakerlaw.com                    *Estate (Succession) of Doris Igoin*
David M. McMillan
Email: dmcmillan@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Liquidation of Bernard L.*
*Madoff Investment Securities LLC*

Dated:  June 2, 2017
         New York, NY

**Exhibit 1 to Stipulation For Entry Of Judgment**

**Judgment Pursuant to Stipulation**

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Tracy Cole
Ona T. Wang
M. Elizabeth Howe
David M. McMillan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04336 (SMB) |
| v. | |
| THE ESTATE (SUCCESSION) OF DORIS IGOIN, LAURENCE APFELBAUM, individually and in her capacities as executor and beneficiary of the Estate (Succession) of Doris Igoin, and EMILIE APFELBAUM, | |
| Defendants. | |

6

## JUDGMENT PURSUANT TO STIPULATION

Pursuant to the stipulation of the parties, judgment is entered in favor of Plaintiff Irving

H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff

Investment Securities LLC and the Estate of Bernard L. Madoff against Laurence Apfelbaum

and Emilie Apfelbaum in their individual capacities, in the amount of Twenty-Five Million, One

Hundred Four Thousand, Three Hundred Ninety-Nine United States Dollars ($25,104,399.00).

Said judgment shall bear interest at the applicable legal rate per annum from the Effective Date

of the Settlement Agreement.


Date: _____, 2017

                                    _____
                                    HONORABLE STUART M. BERNSTEIN
                                    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 2 TO SETTLEMENT AGREEMENT**

B.G. Negev Technologies and Applications Ltd.

Bar Ilan University, Registered Non-Profit Association

Bar Ilan research and Development Ltd.

Ben Gurion University of the Negev

Robert H. Book

Kurt Brunner

Osnat Dodelson

Shira Nahir Eisen

Express Enterprises, Inc.

Amir Green

Yair Green

The Hebrew University of Jerusalem

Magnify Inc.

Mobideo (Israel) Ltd.

Mobideo Technologies Ltd. F/K/A Mobideo Aerospace Ltd.

Asi Nahir

Ayala Nahir

Premero Investments Ltd.

Ramot at Tel Aviv University Ltd.

Ravit Nahir Getenyu

R.H. Book LLC

Batsheva Shambik

Special Situations Cayman Fund, LP

Strand International Investments Ltd.

Leora Nahir Tamir

The Technion – Israel Institute of Technology

The Technion Institute for Research and Development, Ltd.

University of Tel Aviv

Weizmann Institute of Science

Yeda Research and Development Company

Yeshaya Horowitz Association

Yissum Research and Development Company of Hebrew University