# EXHIBIT 28

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

In Re:

BERNARD L. MADOFF INVESTMENT            Adv.Pro.No.
SECURITIES LLC,                         08-01789(BRL)

        Debtor.

----------------------------------x

IRVING H. PICARD, Trustee for the

Liquidation of Bernard L. Madoff

Investment Securities LLC,

        Plaintiff,                     Adv.Pro.No.

                              09-1182(BRL)

        v.

J. EZRA MERKIN, GABRIEL CAPITAL,

L.P., ARIEL FUND LTD., ASCOT

PARTNERS, L.P., GABRIEL CAPITAL

CORPORATION,

        Defendants.

----------------------------------x

       Videotaped Deposition of TINA HYUNG SURH,
as taken by and before NANCY C. BENDISH, Certified
Court Reporter, RMR, CRR, RSA and Notary Public of
the States of New York and New Jersey, at the
offices of Scott & Scott, 405 Lexington Avenue, New
York, New York on Wednesday, September 18, 2013,
commencing at 10:10 a.m.

**Page 2**

```
 1    A P P E A R A N C E S:
 2
      BAKER & HOSTETLER, LLP
 3    45 Rockefeller Plaza
      New York, New York 10111
 4    BY: EDWARD J. JACOBS, ESQ.
          GANESH KRISHNA, ESQ.
 5    For Irving H. Picard, Trustee
      for the Liquidation of BLMIS
 6
 7    DECHERT, LLP
      1095 Avenue of the Americas
 8    New York, New York 10036-6797
      BY: NEIL A. STEINER, ESQ.
 9        DIANE PRINC, ESQ.
      For Gabriel Capital Corp.
10    and J. Ezra Merkin
11
      REED SMITH LLP
12    599 Lexington Avenue
      New York, New York 10022
13    BY: CASEY D. LAFFEY, ESQ.
      For Gabriel, LP and Ariel Fund, LP
14
15    NORTON ROSE FULBRIGHT
      666 Fifth Avenue,
16    New York, New York 10103-3198
      BY: JUDITH A. ARCHER, ESQ.
17        JAMI MILLS VIBBERT, ESQ.
      For Receiver for Ascot Partners
18
19    SCOTT & SCOTT
      The Chrysler Building
20    405 Lexington Avenue
      New York, New York 10174
21    BY: THOMAS L. LAUGHLIN, IV, ESQ.
      For the Witness
22
23    ALSO PRESENT:
24    JUAN TORRES, Videographer
25
```

**Page 3**

```
 1           I N D E X
 2   WITNESS                            PAGE
 3
     TINA HYUNG SURH
 4
       Examination by: Mr. Jacob         6
 5
                       Ms. Princ         110
 6

12           E X H I B I T S
13   IDENT.     DESCRIPTION              PAGE
14
     Trustee 111   Subpoenas.             8
15
     Trustee 112   Verified Complaint.    19
16
     Trustee 113   Documents In Re NYU v.
17                 Ariel Fund, et al.     29
18   Trustee 114   Copy of a Calendar Page, NYU01836.  39
19   Trustee 115   Two Pages Handwritten Notes.   52
20   Trustee 116   Four Pages Handwritten Notes,
                   BS00037928-31.         55
21
     Trustee 117   Email, NYU01316-18.    57
22
     Trustee 118   Email, NYU01143-45.    65
23
     Trustee 119   Copy of a Calendar Page, NYU01833.  70
24
     Trustee 120   Handwritten Notes, NYU01831
25                 and NYU01821.          71
```

**Page 4**

```
 1           E X H I B I T S (Cont'd)
 2   IDENT.       DESCRIPTION             PAGE
 3
     Trustee 121   Handwritten Notes, BS00037927.   80
 4
     Trustee 122   Management Letter from Gabriel.   82
 5
     Trustee 123   Letter 4/19/02, NYU00463-67.   84
 6
     Trustee 124   Letter 1/20/08, NYU00253-62.   88
 7
     Trustee 125   Email, BS00364244-45.    91
 8
     Trustee 126   Email, NYU01146.         97
 9
     Trustee 127   NYU Endowment Fund Investment
10                 Policy Statement.       100
11   Trustee 128   Letter 12/18/08, NYU00221.  101
```

**Page 5**

```
 1           THE VIDEOGRAPHER: This is media
 2   number 1 of the video deposition of Tina Surh, in
 3   the matter Irving H. Picard, et al., plaintiff,
 4   versus J. Ezra Merkin, et al., defendant, in the
 5   United States Bankruptcy Court, Southern District of
 6   New York. This deposition is being held at Scott &
 7   Scott, New York, New York. The time is 10:10 a.m.
 8   on September 18th, 2013.
 9           My name is Juan Torres with Bendish
10   Reporting. I am the video specialist. And the
11   court reporter is Nancy Bendish.
12           Will counsel please introduce
13   themselves, beginning with the party noticing.
14           MR. JACOBS: Edward J. Jacobs on
15   behalf of the Trustee.
16           MR. KRISHNA: Ganesh Krishna on
17   behalf of the Trustee.
18           MS. VIBBERT: Jami Vibbert on behalf
19   of the receiver for Ascot Partners.
20           MS. ARCHER: Judith Archer,
21   Fulbright & Jaworski, on behalf of the Ascot
22   receiver.
23           MR. LAFFEY: Casey Laffey, Reed
24   Smith, on behalf of the receiver in the Ariel and
25   Gabriel Funds.
```

Page 50

1    MR. LAUGHLIN: We will, at a break.
2    Q. And that disclosure additionally was
3  not made at this meeting, correct?
4    MS. PRINC: Object to form.
5    A. Correct.
6    Q. After the discussion of Mr. Madoff,
7  was there anything else discussed at the meeting, in
8  addition to what you've already testified about?
9    A. Was there anything else discussed at
10 the meeting? As I said, he -- no, I think I've
11 covered most of the topics. Again, there were a lot
12 of little anecdotes, right, so lots of personal
13 family anecdotes and, you know, references to other
14 people in the industry and so forth, but nothing --
15 no big topic, nothing -- no, I think I've covered
16 the -- the main -- the main topics of conversation.
17   Q. If Mr. Merkin had disclosed to you at
18 that meeting that the Ariel Fund was invested with
19 Madoff, what would NYU have done?
20   MS. PRINC: Objection to form.
21   MR. LAUGHLIN: Objection,
22 hypothetical.
23       You can answer, if you can.
24   A. Sure. You're saying if he had
25 disclosed that NYU was invested in Madoff at that

Page 51

1  time, what would we have done?
2    Q. Correct.
3    A. I can't answer that because we have
4  too much knowledge now.
5    Q. What do you mean by too much
6  knowledge now?
7    A. We know how this -- there's -- that's
8  an impossible-to-answer question, in terms of the
9  hypothetical.
10   Q. Based on your understanding at the
11 time of that meeting, if it had been disclosed at
12 that meeting that Ariel was invested with Madoff,
13 would you have viewed that as an appropriate
14 investment for NYU?
15   MS. PRINC: Objection, form.
16   MR. LAUGHLIN: Objection,
17 hypothetical.
18       You can answer, if you can.
19   A. Sure. We would have had serious
20 concerns, given what we had just stated, and the
21 fact that we said that's not -- what you just
22 described would not be an appropriate investment for
23 an institution like our own. Therefore -- you know,
24 so, therefore, we wouldn't -- we wouldn't want that
25 exposure. So -- so that's where, you know, it's

Page 52

1  hard to imagine, um, and that's why it's hard to
2  answer the question of what would -- what would we
3  have done, because now we know exactly the extent to
4  which it was the worst case scenario.
5    Q. Okay. I am going to hand you what I
6  will mark Trustee's -- correct me if I'm wrong --
7  114 -- 115.
8       (Exhibit Trustee 115 marked for
9  identification.)
10 BY MR. JACOBS:
11   Q. Have you had a chance to review?
12   A. Oh. Would you like me to familiarize
13 myself with my old notes?
14   Q. Well, let me ask you this: Do you
15 recognize this document?
16   A. Yes.
17   Q. What is this document?
18   A. These are my notes.
19   Q. Notes of what?
20   A. The October 23rd meeting with Ezra
21 Merkin at his offices between NYU and Maury
22 Maertens, myself and Ezra Merkin.
23   Q. Were these notes taken during the
24 meeting?
25   A. Yes.

Page 53

1    Q. On the second page of the notes in
2  the -- on the far left, there's an asterisk that's
3  circled.
4    A. Yeah.
5    Q. With a note below that that says,
6  "Ezra, that's not appropriate for an institution, so
7  a non-starter for NYU."
8    A. Yes.
9    Q. Is that referring to the conversation
10 you just testified about regarding self-clearing?
11   A. Yes.
12   Q. Sorry, I'm -- the writing is very
13 small and I lost my place.
14   A. It's okay.
15   Q. On the second -- on the second page
16 just to the right of that asterisk we just
17 discussed, there's a note, and forgive me, I don't
18 mean to misstate anything on the paper, it says:
19 "Ezra has a family partnership there called Ascot."
20   A. Correct.
21   Q. Do you know what Ascot is?
22   A. I do now.
23   Q. At the time do you recall a
24 discussion of Ascot?
25   A. That was the first reference to it.

14 (Pages 50 to 53)

Page 54

1  So Ezra introduced Ascot as this family partnership
2  that he had invested at Bernie Madoff or with Bernie
3  Madoff.
4       Q.   Okay.  Understood.  Thank you.
5            Just below that, I believe in a
6  parentheses, it says: "Ezra's father was an
7  approved person at Goldman."  Is that correct?
8       A.   Yes.
9       Q.   Do you recall what -- what you were
10 referring to here?
11      A.   Ezra told us that his father was an
12 approved person at Goldman.  And I put quotes around
13 it because I didn't know at the time what approved
14 person at Goldman really meant, but it sounded very
15 impressive.  And I think it had something to do with
16 the ELK Trust at the top, Eighteen Lucky Kinder, and
17 all this money that, you know, the family supposedly
18 had.
19      Q.   You answered my question before I
20 could even ask it.  I was going to ask you what
21 approved person at Goldman meant.
22           MR. JACOBS:  I believe now might be a
23 good time for a break, if that's --
24           THE WITNESS:  Okay.
25           MR. JACOBS:  -- if that's okay with

Page 55

1  you.
2            Also, the tape will probably need to
3  be changed shortly, so we can probably go ahead and
4  change it now.
5            THE VIDEOGRAPHER:  The time is 11:30
6  a.m.  This is the end of media 1.
7            (Recess taken.)
8            THE VIDEOGRAPHER:  The time is 11:45
9  a.m.  This begins media number 2 of the video
10 deposition of Tina Surh.
11 BY MR. JACOBS:
12      Q.   I'm going to hand you what I'm
13 marking as Trustee's Exhibit 116, is where we are.
14           (Exhibit Trustee 116 marked for
15 identification.)
16           (Witness examining document.)
17 BY MR. JACOBS:
18      Q.   Do you recognize this document?
19      A.   I recognize Maury Maertens'
20 handwriting, so these are his notes.
21      Q.   Have you seen this document prior to
22 today?
23      A.   Possibly.
24      Q.   The document appears to be, and
25 correct me if I'm wrong, Mr. Maertens' handwritten

Page 56

1  notes summarizing the meeting that we've been
2  discussing with Mr. Merkin on the 23rd of October,
3  2008, correct?
4            MS. PRINC:  Object to form.
5       A.   It includes that.
6       Q.   Okay.  Is there anything else in the
7  document in addition to a summary of the meeting
8  that we've been discussing with Mr. Merkin?
9       A.   Yes.
10      Q.   What is that?
11      A.   He then summarizes subsequent
12 conversations that he had.
13      Q.   With Mr. Merkin?
14      A.   With Mr. Merkin and also Michael
15 Steinhardt.
16      Q.   Is there anything in Mr. Maertens'
17 notes that jogs your memory about anything that
18 might have occurred during the meeting with
19 Mr. Merkin that we haven't discussed today?
20      A.   Jogs my memory?  No, I think it's
21 consistent with the notes -- with my notes that we
22 discussed about that meeting.
23      Q.   And to the extent Mr. Maertens
24 discusses that meeting in these notes, is everything
25 that he has summarized regarding what occurred at

Page 57

1  that meeting consistent with your recollection?
2            MS. PRINC:  Object to form.
3       A.   Yes.
4       Q.   When did you learn that the Ariel
5  Fund was invested with Mr. Madoff?
6       A.   When did we learn when the Ariel --
7  December, mid-December.
8       Q.   What were the circumstances of your
9  learning that Ariel Fund was invested with
10 Mr. Madoff?
11      A.   I was flying back from London, and I
12 got an email that made me very upset.
13      Q.   I'm handing you what I'm going to
14 mark as the Trustee's Exhibit 117.
15           (Exhibit Trustee 117 marked for
16 identification.)
17 BY MR. JACOBS:
18      Q.   If you could take a chance to review
19 the email, let me know when you're ready.
20           (Witness examining document.)
21      Q.   Is this the email that you just
22 referenced that made you very upset?
23      A.   Yes.
24      Q.   Do you recognize this email?  And
25 we'll start --

15 (Pages 54 to 57)

Page 118

1  Q. Did anyone at your organization, to
2  your knowledge?
3  A. Not to my knowledge.
4  Q. Mr. Jacobs also asked you about the
5  October 23rd, 2008 meeting with Mr. Merkin. Again,
6  I don't want to go over all of that again in detail,
7  but I just want to ask a couple of clarifying
8  questions.
9  A. Um-hum.
10  Q. When Mr. Merkin brought up Madoff, he
11  was talking about an investment with Ascot, which
12  was another partnership he ran, correct?
13  MR. JACOBS: Object to form.
14  Misstates the record.
15  A. I think you are misstating what I
16  said.
17  Q. Well, can you explain --
18  A. What my notes say and what I said is
19  that Ezra Merkin brought up the concept of the
20  family trust that he had invested called Ascot
21  Partners with Bernie Madoff, or that it was invested
22  with Bernie Madoff.
23  As to whether we should invest as NYU
24  through Ascot or directly with Bernie Madoff, that
25  distinction was never made.

Page 119

1  Q. Okay. Did Mr. Merkin make it clear
2  that Ascot was entirely or almost completely
3  invested with Madoff?
4  MR. JACOBS: Object to form.
5  A. That was my conclusion based on his
6  presentation of it.
7  Q. Last topic.
8  Mr. Jacobs also asked you about
9  the -- during the October 23rd, 2008 meeting, and
10  your reaction to the fact that Mr. Madoff
11  self-cleared or marked his own trades. And you
12  testified, correct me if I'm wrong, that you
13  couldn't remember but that it was possible that
14  Mr. Merkin may have expressed an agreement with
15  that?
16  MR. JACOBS: Object to form.
17  MR. LAUGHLIN: I think it does
18  misstate the record, but do you --
19  A. What I -- what I believe I said, and
20  I think the record will show what I said --
21  Q. Of course.
22  A. -- was that Mr. Merkin did not
23  disclose to us the -- the exposure that we already
24  had as NYU, as an investor in the Ariel Fund, to the
25  Madoff investment strategy. I did say that it was

Page 120

1  possible at that moment, as he was changing the
2  subject, that in addition to nodding, you know, kind
3  of in acknowledgement of our statement, that he may
4  also have said, I can see that, or I see your point,
5  or something fairly benign, but as a transitional,
6  you know, communication, to move along to the next
7  topic.
8  Q. Okay.
9  A. Which is then what he did.
10  Q. And Mr. Maertens testified in the NYU
11  action against Mr. Merkin and others about four
12  years ago and he testified that Mr. Merkin didn't
13  say anything in response to the issues that you
14  raised. Would you have any basis to disagree with
15  his testimony?
16  A. No. Because that's not inconsistent
17  with what I just described.
18  Q. Okay. Understood.
19  You also testified about whether
20  delegation to Mr. Madoff was consistent with
21  Mr. Merkin's duties to Ariel. I think we just spoke
22  about that.
23  A. Um-hum.
24  MR. JACOBS: Object to form.
25  Q. I'd like to show you Ariel's

Page 121

1  prospectus. This was an exhibit to NYU's verified
2  complaint.
3  A. Um-hum.
4  Q. It's Exhibit 112 in front of you.
5  And I believe --
6  A. Which page?
7  Q. It's page 13 of the --
8  MR. STEINER: Well, first the
9  prospectus starts about 20 pages in.
10  Q. You found it.
11  Did you review this prior to
12  December 11th, 2008?
13  A. I do not recall reviewing this
14  prospectus prior to -- prior to that time.
15  Q. Right.
16  Can you please read the first
17  sentence under "Independent Money Managers"?
18  A. "The investment adviser may delegate
19  investment discretion for all or a portion of the
20  assets of the fund to money managers other than the
21  investment adviser or make investments with other
22  investment entities."
23  Q. So I -- correct me if I'm wrong, but
24  you did not -- you don't remember if you reviewed
25  this prior to December 11th, 2008?

31 (Pages 118 to 121)

BENDISH REPORTING, INC.
877.404.2193