UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————— X

In re:                                                    :
                                                          :
                                                          :        SIPA LIQUIDATION
BERNARD L. MADOFF INVESTMENT                               :
SECURITIES LLC,                                            :
                                                          :        No. 08-01789 (SMB)
            Debtor.                                        :
                                                          :
————————————————— X

IRVING H. PICARD, Trustee for the Liquidation             :
of Bernard L. Madoff Investment Securities LLC,           :
                                                          :
            Plaintiff,                                    :
                                                          :
                  v.                                      :        Adv. Proc. No. 09-01182 (SMB)
                                                          :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,                    :
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,                    :
ASCOT FUND LTD., GABRIEL CAPITAL                          :
CORPORATION,                                              :
                                                          :
            Defendants.                                   :
                                                          :
————————————————— X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY, REPORTS, AND DECLARATION OF STEVE POMERANTZ

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3000
*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

POINT I      MR. POMERANTZ'S OPINIONS ARE NOT RELEVANT ............................... 2

POINT II     MR. POMERANTZ'S OPINIONS ARE NOT RELIABLE ................................ 5

             A.  Experience Is No Substitute For Reliability .................................... 5

             B.  Mr. Pomerantz's Quantitative Analyses Were Developed For This
                 Litigation .......................................................................................... 6

POINT III    BOTH THE INITIAL REPORT AND DECLARATION SHOULD  BE
             STRICKEN BECAUSE THEY FAIL TO COMPLY WITH RULE 26(A).......... 9

             A.  The Initial Report Is Improper ......................................................... 9

             B.  The Declaration Is Improper ........................................................... 11

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

Bosco v. United States,
    No. 14 Civ. 3525, 2016 WL 5376205 (S.D.N.Y. Sept. 26, 2016) ...........................................11

Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.,
    769 F. Supp. 2d 269 (S.D.N.Y. 2011)....................................................................................11

Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.,
    262 F. Supp. 2d 50 (S.D.N.Y. 2003)......................................................................................11

Daubert v. Merrell Dow Pharms., Inc.,
    509 U.S. 579 (1993).............................................................................................................3, 4

Dev. Specialists, Inc. v. Weiser Realty Advisors LLC,
    No. 09 CIV. 4084 KBF, 2012 WL 242835 (S.D.N.Y. Jan. 24, 2012)......................................5

Ebron v. United States,
    No. 08 CIV. 0144, 2008 WL 4298515 (S.D.N.Y. Sept. 17, 2008)..........................................9

Frazer v. ITW Food Equip. Grp. LLC,
    No. 11-CV-9699 CS, 2013 WL 6164486 (S.D.N.Y. Nov. 22, 2013)......................................8

In re Meridian Funds Grp. Sec. & Employee Ret. Income Sec. Act (Erisa) Litig.,
    No. 09-CV-7099 TPG, 2015 WL 1258380 (S.D.N.Y. Mar. 13, 2015) ....................................3

In re Merkin & BDO Seidman Sec. Litig.,
    817 F. Supp. 2d 346 (S.D.N.Y. 2011)....................................................................................4

In re Rezulin Prods. Liab. Litig.,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................................................................................3

Jinghong Song v. Yao Bros. Grp. LP,
    No. 10 CIV. 04157 RKE, 2012 WL 1557372 (S.D.N.Y. May 2, 2012)................................10

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999)...............................................................................................................8

Meridian Horizon Fund, LP v. KPMG (In re Tremont Secs. Law, State Law & Ins.
    Litig.),
    487 F. App'x 636 (2d Cir. 2012) ...........................................................................................3

Morritt v. Stryker Corp.,
    No. 07-cv-2319, 2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) .............................................12

*Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*,
    No. 11-CV-1237, 2014 WL 1468118 (S.D.N.Y. Apr. 15, 2014) ...........................................10

*Picard v. Merkin*,
    563 B.R. 737 (Bankr. S.D.N.Y. 2017) ...................................................................................2

*R.W. Grand Lodge of Free & Accepted Masons of Pa. v. Meridian Capital
    Partners, Inc.*,
    634 F. App'x 4 (2d Cir. 2015) ................................................................................................4

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)......................................................................................4

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    No. 03 Civ. 8253, 2006 WL 44053 (S.D.N.Y. Jan. 9, 2006)...........................................11, 12

*U.S. Commodity Futures Trading Comm'n v. Moncada*,
    No. 12 CIV 8791 CM, 2014 WL 2945793 (S.D.N.Y. June 30, 2014) ....................................6

*United States v. City of N.Y.*,
    637 F. Supp. 2d 77 (E.D.N.Y. 2009) ...............................................................................13, 15

*United States v. Prevezon Holdings, Ltd.*,
    -- F. Supp. 3d --, No. 13-CV-6326 (WHP), 2017 WL 714026 (S.D.N.Y. Feb.
    21, 2017) ..............................................................................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 26....................................................................................................................1, 9

Fed. R. Civ. P. 37.......................................................................................................................1

Fed. R. Evid. 702........................................................................................................................8

Tr. of Feb. 23, 2011 Proceedings, *Picard v. Mets Ltd. P'ship*, No. 1:11-cv-03605-
    JSR (S.D.N.Y. Feb. 29, 2012) (Doc. No. 139) .......................................................................4

Defendants respectfully submit this reply memorandum of law in further support of their motion *in limine* to exclude the testimony, reports, and declaration of Steve Pomerantz.[1]

## Preliminary Statement

Mr. Pomerantz's proposed testimony is irrelevant and unreliable. His analyses miss the mark because they focus exclusively on due diligence practices rather than Defendants' willful blindness, and thus the exact testimony he seeks to offer here was ruled inadmissible by the District Court in another Madoff-related case. *See infra* Point I. More fundamentally, Mr. Pomerantz admits that, in his own practice, he did not carry out the due diligence procedures that he now claims were industry customs. He also admits that he worked as a consultant for a fund of funds that invested in a Madoff feeder fund, and never disclosed to investors in the fund of funds with whom he met his purported beliefs that Madoff was operating a Ponzi scheme and that a substantial portion of their investment would become worthless. Realizing that these admissions underscore his unreliability and lack of credibility, Mr. Pomerantz submitted a Declaration seeking to distance himself from his deposition testimony. The post-hoc Declaration is improper. Mr. Pomerantz should be excluded because his analyses are unreliable, based on nothing more than his *ipse dixit*, and deviate from his actual business practices. *See infra* Points II, III(B). Moreover, the Initial Report should be stricken pursuant to Rule 37 of the Federal Rules of Civil Procedure because Mr. Pomerantz's failure to identify the documents he reviewed in forming his opinions violates Rule 26(a). *See infra* Point III(A).

---

[1]     Unless otherwise defined, capitalized terms used herein have the same meaning as in the Defendants' Memorandum of Law In Support of Their Motion *In Limine* to Exclude the Testimony, Reports, and Declaration of Steve Pomerantz filed on April 7, 2017 (Dkt. 356) ("Def. Br.").

The Trustee's opposition does nothing to redeem Mr. Pomerantz's work or overcome his fatal admissions. Instead of addressing Defendants' arguments, the Trustee repeatedly asserts that the numerous flaws in the Reports are matters for cross-examination because they go to the weight, not admissibility, of Mr. Pomerantz's proposed testimony. *See* Trustee's Opposition Brief ("Pl. Br.") at 10, 11, 13. That is wrong as a matter of law. Because Mr. Pomerantz's proposed testimony is fundamentally flawed, it should be excluded in its entirety.

<u>**Argument**</u>

**POINT I**

<u>**MR. POMERANTZ'S OPINIONS ARE NOT RELEVANT**</u>

Defendants' opening brief established that Mr. Pomerantz's proposed testimony on due diligence practices in the hedge fund industry is irrelevant because the relevant inquiry in this case is whether Defendants were willfully blind to Madoff's Ponzi scheme. *See* Def. Br. at 3-4. In opposition, the Trustee discusses the good faith affirmative defense under 11 U.S.C. §§ 548(c) and 550(b) at length. He notes that it "has evolved significantly throughout this SIPA liquidation," cites approximately a dozen cases regarding good faith, cautions this Court not to "conflate[]" the standard with that set forth in the safe harbor of 11 U.S.C. § 546(e), and discusses the burden of establishing good faith. Pl. Br. at 3-5. Hidden in the Trustee's discourse is a critical admission that the issue here "is whether Defendants were willfully blind to facts suggesting a high probability of fraud"—a topic that Mr. Pomerantz utterly fails to address in his Reports. *See id.* at 4 (emphasis omitted).

The Trustee contends that Mr. Pomerantz should be allowed to testify about generic purported red flags regarding BLMIS and Madoff's strategy because they constitute "testimony on industry customs and practices." Pl. Br. at 6. The Trustee is wrong. Willful blindness requires a showing of a "'*subjective*[] belie[f] that there is a high probability that a fact exists'"

2

and "'deliberate actions to avoid learning of that fact.'"  *Picard v. Merkin*, 563 B.R. 737, 743

(Bankr. S.D.N.Y. 2017) (emphasis added) (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563

U.S. 754 (2011)).  In the absence of "facts showing that the defendants actually perceived the red

flags," industry customs and practices have no bearing on this subjective inquiry.  *In re Meridian*

*Funds Grp. Sec. & Employee Ret. Income Sec. Act (Erisa) Litig.*, No. 09-CV-7099 TPG, 2015

WL 1258380, at *7 (S.D.N.Y. Mar. 13, 2015), *aff'd sub nom. R.W. Grand Lodge of Free &*

*Accepted Masons of Pennsylvania v. Meridian Capital Partners, Inc.*, 634 F. App'x 4 (2d Cir.

2015).  Yet neither the Initial Report nor the Rebuttal Report mentions the term "willful

blindness," Defendants' subjective beliefs, or any deliberate conduct of Defendants.  *See* Def. Br.

at 3.  Mr. Pomerantz's proposed testimony thus has no valid "connection to the pertinent

inquiry" of willful blindness and is unhelpful, irrelevant, and inadmissible.  *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *see In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.

2d 531, 540 (S.D.N.Y. 2004) (expert testimony must "have a valid connection to the pertinent

inquiry" (internal quotation marks omitted)).

Moreover, the cases the Trustee cites regarding industry customs and practices are

inapposite because the Second Circuit and Southern District of New York have repeatedly

rejected red flags as insufficient to plead even recklessness or an inference of scienter—much

less willful blindness—in Madoff-related cases.  *See, e.g.*, *Meridian Horizon Fund, LP v. KPMG*

*(In re Tremont Secs. Law, State Law & Ins. Litig.)*, 487 F. App'x 636, 641 (2d Cir. 2012)

("'[T]he more compelling inference as to why Madoff's fraud went undetected for two decades

was his proficiency in covering up his scheme and deceiving the SEC and other financial

professionals.'") (quoting *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F.

Supp. 2d 406, 413 (S.D.N.Y. 2010) (noting that many of the "red flags" of the Madoff fraud

3

were "plainly disclosed to . . . investors in and auditors of other Madoff feeder funds, and the

SEC, none of whom discovered the Madoff scheme")); *R.W. Grand Lodge of Free & Accepted*

*Masons of Pa. v. Meridian Capital Partners, Inc.*, 634 F. App'x 4, 8 (2d Cir. 2015) ("This court,

along with many district courts in this circuit, has rejected similar claims [of recklessness in

ignoring red flags] based upon a failure of due diligence to uncover Madoff's infamous Ponzi

scheme."); *In re Merkin & BDO Seidman Sec. Litig.*, 817 F. Supp. 2d 346, 356 (S.D.N.Y. 2011)

("[I]t is now well-established that Madoff cleverly leveraged his considerable reputation in order

to perpetrate his massive fraud, for many years, without detection by some of the most

sophisticated entities in the financial world: the SEC, Wall Street banks, and the like.  The list of

victims that failed to detect Madoff's fraud is lengthy."); *Saltz v. First Frontier, LP*, 782 F. Supp.

2d 61, 72 (S.D.N.Y. 2010) ("For twenty years, Madoff operated this fraud without being

discovered and with only a handful of investors withdrawing their funds as a result of their

suspicions.  An inference of scienter based on publicly available red flags is simply not as cogent

and compelling as the opposing inference of nonfraudulent intent."), *aff'd*, 485 F. App'x 461 (2d

Cir. 2012).  Because Mr. Pomerantz's testimony about the red flags is insufficiently tied to the

willful blindness inquiry, it "is not relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591.

In addition, the Trustee's claim that "[i]n *Picard v. Katz*, the District Court determined

that Dr. Pomerantz's testimony was unnecessary because defendants there were individual

investors to which no due diligence standard applied" is disingenuous at best.  Pl. Br. at 7; *see id.*

(asserting that Defendants here are "[i]n stark contrast" because they are "sophisticated,

experienced financial professionals").  In fact, Judge Rakoff expressly said that he would "accept

for purposes of this argument that [the Trustee] will be able to show that [the *Katz* defendants]

were not simple barefoot real estate entrepreneurs, that they were in some sense *very*

4

*sophisticated*, but that's not the end of the issue." Tr. of Feb. 23, 2011 Proceedings, *Picard v.*

*Mets Ltd. P'ship*, No. 1:11-cv-03605-JSR (S.D.N.Y. Feb. 29, 2012) (Doc. No. 139), at 32:6-10

(emphasis added); *id.* at 33:4-6 (Judge Rakoff stating that the "relevant fact" is "not what some

expert says in the abstract a reasonable sophisticated investor would do"). Judge Rakoff then

stated that he was "very doubtful about the relevance of [Pomerantz's] methodology and

experience," and that "there are, therefore, issues[] not only under Rule 403, but under Rule 402

and Rule 702 of the rules of evidence." *Id.* at 35:8-14. Thus, the exact testimony that Mr.

Pomerantz seeks to offer here—on "the due diligence standards that apply to experienced

financial professionals," Pl. Br. at 7—was held irrelevant, not probative, and inadmissible in the

*Katz* case. His testimony should likewise be excluded here.

**POINT II**

**MR. POMERANTZ'S OPINIONS ARE NOT RELIABLE**

Even if alleged failure to meet industry customs and practices were relevant to the willful

blindness inquiry in this case—and it is not—Mr. Pomerantz's testimony should be excluded

because his opinions are unreliable and not tied to his own experience and practices.

A.    Experience Is No Substitute For Reliability

Mr. Pomerantz premises his opinions about purported industry customs on nothing but

his own *ipse dixit*. He concedes that, in his own practice, he *never* reviewed trade confirmations

or compared transaction prices against daily highs and lows. Nor could he testify that he "would

have done everything" in his report if he had to conduct due diligence on BLMIS prior to 2008.

And he admitted that the AIMA due diligence questionnaires he cited did not identify *any*

quantitative analysis as an industry custom and practice. *See* Def. Br. at 5-7; *Dev. Specialists,*

*Inc. v. Weiser Realty Advisors LLC*, No. 09 CIV. 4084 KBF, 2012 WL 242835, at *8 (S.D.N.Y.

Jan. 24, 2012) (excluding expert as unreliable where she departed from industry standards and

5

relied on an approach "different than that used by other experts in the industry . . . without

known validation in the industry literature, and 'connected to existing data only by the *ipse dixit*

of the expert'" (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999))).

In opposition, the Trustee attempts to bolster Mr. Pomerantz's proposed testimony by

emphasizing his "experience in the investment management industry" and arguing that this

Court's reliability analysis may "'focus upon personal knowledge or experience.'"  Pl. Br. at 8

(quoting *Katt v. City of N.Y.*, 151 F. Supp. 2d 313, 353 (S.D.N.Y. 2001)).  But the Trustee

ignores well-settled law that even "impressive and extensive experience does not equate to

analysis," and "expert opinions that are not backed up with analysis, studies, or facts that support

the conclusions do not meet the threshold test of reliability."  *U.S. Commodity Futures Trading*

*Comm'n v. Moncada*, No. 12 CIV. 8791 CM, 2014 WL 2945793, at *2, 5 (S.D.N.Y. June 30,

2014) (McMahon, J.) (excluding testimony "about what other traders would do or how they

would react" based on experience as a trader and stating that "[j]udges are not to 'be deceived'

by experts who offer their credentials in lieu of analysis"); *id.* at *5 ("Opinion evidence that is

only connected to existing data by the *ipse dixit* of someone with experience in the field is not

automatically reliable or admissible, and nothing in [the] Report affords this Court any

confidence that [the expert]'s *ipse dixit* is worth the paper on which it is written . . . .").

B.    Mr. Pomerantz's Quantitative Analyses Were Developed For This Litigation

Nor is it enough to claim repeatedly that Mr. Pomerantz analyzed "data and information

available to Defendants over the history of their investments with BLMIS."  Pl. Br. at 8; *see also*

*id.* at 9 ("information that was contemporaneously available to Defendants"); *id.* ("data that was

readily available to the Defendants during their investment"); *id.* ("based on contemporaneous

information available to Defendants").  The issue is not whether Defendants had access to the

documents Mr. Pomerantz reviewed in connection with the Reports.  Rather, Mr. Pomerantz's

opinions are plainly unreliable because, based on his own admissions:  (1) he himself conducted

due diligence on a Madoff feeder fund prior to 2008, did not believe Madoff was running a Ponzi

scheme, and did not advise any potential investor in the feeder fund that he had concerns about

Madoff; (2) the AIMA questionnaires "don't identify specific quantitative analyses"; (3) his own

due diligence practices are contrary to the purported industry customs listed in the Report and

that he now seeks to impose upon Defendants because, for example, he has never reviewed a

trade confirmation or compared transaction prices against the daily range; and (4) he "d[id]n't

know if [he] would have done everything" in his Report if he were conducting due diligence on

BLMIS.  Def. Br. at 5-7 (quoting Mr. Pomerantz's deposition testimony).  Thus, this is not a case

where "an expert witness had sufficiently demonstrated 'a connection between his experience

and the process he used and the conclusions he reached' by asserting that the methodology he

employed *was the same as that he used as a professional*."  Pl. Br. at 8-9 (emphasis added)

(quoting *Emig v. Electrolux Home Prods. Inc.*, No. 06 Civ. 4791, 2008 WL 4200988, at *8

(S.D.N.Y. Sept. 11, 2008)).  Far from asserting that he used the same methodology as he used as

a professional, Mr. Pomerantz conceded that he had reached a different conclusion and

conducted a different analysis when he actually conducted due diligence on BLMIS before

December 2008.

The Trustee's opposition brief, like the Reports, contains nothing more than conclusory

assertions that Mr. Pomerantz's "quantitative analyses are widely-accepted in the investment

management industry."  Pl. Br. at 9; *id.* at 10 (referencing "his analysis utilizing widely-accepted

methodology").  Tellingly, however, the Trustee does not cite a single authority, other than the

deficient Initial Report, to support Mr. Pomerantz's say-so that his analyses were customary

practices in the industry.  To the contrary, the AIMA questionnaires that set forth industry

7

practices on due diligence neither reference nor describe any form of quantitative analysis. Def.
Br. at 5. Where, as here, "[i]f the witness is relying solely or primarily on experience, then the
witness must explain how that experience leads to the conclusion reached, why that experience is
a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.
R. Evid. 702 advisory committee's note (2000 Amendments). Mr. Pomerantz does not, because
he cannot, do so. *See id.* ("The trial court's gatekeeping function requires more than simply
'taking the expert's word for it.'" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311,
1319 (9th Cir. 1995))).

The Trustee's argument that Mr. Pomerantz's fatal admissions—that he never
independently verified trade prices, that he never advised any investors in the fund of funds for
which he performed due diligence that he had concerns about Madoff and the fund of funds'
investment in a Madoff feeder fund, and that certain trades that were purportedly outside the
range fell outside only because Mr. Pomerantz himself adjusted trade confirmation prices by
$0.04—are issues that should be addressed on cross-examination fares no better. Mr.
Pomerantz's deviation from his actual practice and the errors in his analyses render his opinions
irrelevant, unreliable, and inadmissible. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152
(1999) (an expert must "employ[] in the courtroom the same level of intellectual rigor that
characterizes the practice of an expert in the relevant field"); *Frazer v. ITW Food Equip. Grp.
LLC*, No. 11-CV-9699 CS, 2013 WL 6164486, at *4 (S.D.N.Y. Nov. 22, 2013) (excluding expert
who "provide[d] no foundational facts or methodology (not to mention testing or standards) for
his conclusion").

## POINT III

## BOTH THE INITIAL REPORT AND DECLARATION SHOULD BE STRICKEN BECAUSE THEY FAIL TO COMPLY WITH RULE 26(a)

"Rule 37 provides for 'automatic' preclusion for failure to comply with Rule 26(a)(2)(B)'s expert report requirement." *Ebron v. United States*, No. 08 CIV. 0144, 2008 WL 4298515, at *3 (S.D.N.Y. Sept. 17, 2008). Specifically, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* Here, the Trustee does not even attempt to argue that Mr. Pomerantz's failure to disclose the facts or data he himself considered and his inclusion of new opinions in the Declaration was justified or harmless. Because the Trustee fails to establish that either the Initial Report or the Declaration complied with Rule 26(a), the opinions set forth in those documents should be excluded pursuant to Rule 37.

A.    The Initial Report Is Improper

Defendants' opening brief established that the Initial Report failed to comply with Rule 26(a)(2)(B), which requires the disclosure of "facts or data considered by [Mr. Pomerantz] in forming" his opinions. Def. Br. at 7-9. Specifically, Mr. Pomerantz failed to identify the documents he reviewed in forming his opinions. Instead, he listed 130 pages of Bates numbers totaling more than 10,000 documents, most of which Mr. Pomerantz admitted were reviewed not by him but by "other people" and "didn't have information that was relevant to [his] opinions." *Id.* at 8 (quoting Dep. Tr. at 209:21-210:18).

In response, the Trustee sets up and attacks strawmen that Mr. Pomerantz can formulate an expert opinion "with the aid of his assistants" and that "Defendants' argument that the volume of documents relied upon by Dr. Pomerantz are [*sic*] unduly burdensome is also without merit."

Pl. Br. at 11-13.  Defendants are not contesting either of these points, but rather Mr. Pomerantz's inability to identify the documents he reviewed.  The Court should not tolerate Mr. Pomerantz or the Trustee's attempt to sandbag Defendants by identifying tens of thousands of documents that may have been reviewed by Mr. Pomerantz or his staff in formulating his opinions, when he admitted at his deposition that he only looked at small subsets of those documents.  *See* Def. Br. at 8 (quoting Dep. Tr. at 211:9-213:1 ("[I]f there are 30,000 confirmations, I would tell you I looked at ten, but I couldn't tell you which ten of those 30,000.")).  Despite Mr. Pomerantz's testimony under oath that he could not identify which documents he reviewed, the Trustee's response is simply that Defendants must look at all of the documents listed in the Reports, even ones "that didn't have information that was relevant to [Mr. Pomerantz's] opinions."  *Id.* (quoting Dep. Tr. at 209-10).  This is utterly illogical and contrary to the plain text of Rule 26.

Because Mr. Pomerantz did not—and now cannot—disclose the key "facts and data" that he reviewed and upon which he based his opinions, his opinions should be excluded.  *See, e.g.*, *Oleg Cassini, Inc. v. Electrolux Home Prods., Inc*., No. 11-CV-1237, 2014 WL 1468118, at *8 (S.D.N.Y. Apr. 15, 2014) (precluding expert testimony that was not "based on sufficient facts and data"); *Jinghong Song v. Yao Bros. Grp. LP*, No. 10 CIV. 04157 RKE, 2012 WL 1557372, at *2 (S.D.N.Y. May 2, 2012) (precluding expert from testifying where his report "d[id] not adequately identify the 'facts or data'").[2]

---

[2]    The cases cited by the Trustee are wholly inapposite because they involve experts who were criticized for not considering specific data or documents.  Here, Mr. Pomerantz cannot even identify what specific data or documents he considered.  *See* Pl. Br. at 13 (citing *Henkel v. Wagner*, No. 12-cv-4098, 2016 WL 1271062, at *11 (S.D.N.Y. Mar. 29, 2016), discussing "documents that [the expert] may have failed to consider" and *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 279 (D.N.J. 2006), in which Pfizer "point[ed] to evidence that [the expert] failed to consider some documents that might have affected his opinions").

B.    The Declaration Is Improper

Defendants' opening brief established that Mr. Pomerantz offered new opinions in his

Declaration, most of which contradicted his deposition testimony regarding flaws in his

methodology and analyses.  There is no merit in the Trustee's argument that courts "consider not

only the initial expert report, but the expert's deposition testimony to determine the proper scope

of an expert's opinion."  Pl. Br. at 14.  The Trustee mischaracterizes *Bosco v. United States*,

which expressly set forth that the content of "expert affidavits submitted after the close of

discovery" will be considered "only when [it] is within the scope of the *initial report*."  No. 14

Civ. 3525, 2016 WL 5376205, at *10 (S.D.N.Y. Sept. 26, 2016) (emphasis added).  Thus,

contrary to the Trustee's argument, Mr. Pomerantz *cannot* belatedly submit additional expert

disclosures merely because he was asked about the topics underlying those disclosures at his

deposition, because the law is clear that "[d]iscussion of a topic at a deposition is not a substitute

for an expert report."  *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, No. 03 Civ. 8253, 2006

WL 44053, at *2 (S.D.N.Y. Jan. 9, 2006) (noting need for "a timely produced expert report,

served sufficiently in advance of a deposition").  Indeed, two cases cited by the Trustee confirm

that neither Mr. Pomerantz's declaration nor deposition testimony cure his violation of Rule 26.

Pl. Br. at 13-14 (citing *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp.

2d 269, 280 n.3 (S.D.N.Y. 2011) ("deposition testimony does not cure a failure to provide Rule

26 disclosure" (internal quotation marks omitted)) and *Commercial Data Servers, Inc. v. Int'l

Bus. Machs. Corp.*, 262 F. Supp. 2d 50, 62 (S.D.N.Y. 2003) ("[D]eposition testimony on a topic

does not cure a failure to provide Rule 26 disclosure.")).

More fundamentally, the Trustee's claim that the opinions in the Declaration are neither

new nor contradictory is belied by the Reports, Mr. Pomerantz's deposition testimony, and the

Declaration itself.  *First*, Mr. Pomerantz's statements about Goldman Sachs in the Declaration

11

should be stricken. Mr. Pomerantz testified that he "feel[s] very comfortable" and "ha[s] no reason to believe that something is happening that is not as being represented" at Goldman Sachs, and therefore it is "not a problem" that Goldman Sachs acts as a broker-dealer and fails to list underlying holdings on its statements. Def. Br. at 9 (quoting Dep. Tr. at 62:10-12). Goldman Sachs was never mentioned in the Initial Report, and the Declaration plainly attempted to "cure th[e] record through assertions" about the differences between Goldman Sachs and BLMIS, and that Mr. Pomerantz purportedly had "consistent findings that [certain Goldman Sachs] funds were performing consistent with the stated strategy," Declaration at ¶¶ 10-11[3]; *Takeda*, 2006 WL 44053, at *3 (stating expert "will not be allowed to contradict [a] denial [at deposition] through this recently submitted affidavit").

*Second*, Mr. Pomerantz's multiple new analyses—to fix the flawed commissions analysis described in the Initial Report, along with analyses involving Ridgeline, Baupost, Princeton/Newport, SMN Diversified Futures Fund, Eclectica Fund, and Episode Inc., *see* Declaration at ¶¶ 13-14, 17-19—were all conducted after his deposition and are patently improper. Here, too, it is no defense that Mr. Pomerantz was questioned about his flawed analyses involving commissions at his deposition or that Defendants raised "summary judgment arguments that Dr. Pomerantz failed to consider and include these funds in his analyses," Pl. Br. at 15-16. Nothing in Rule 26 allows experts to submit additional analyses to rebut flaws exposed at a deposition or in summary judgment. *See Morritt v. Stryker Corp.*, No. 07-cv-2319, 2011 WL 3876960, at *6 (E.D.N.Y. Sept. 1, 2011) (finding that an expert declaration that set forth certain evidence "for the first time in opposition to summary judgment—and only after

---

[3]     The Declaration was filed on April 7, 2017 as Exhibit C to the Declaration of Daphne T. Ha in support of this motion *in limine* (Dkt. No. 357-3).

defendants raised [a] deficiency in their motion—constitutes a clear violation of Rule 26");

*United States v. City of N.Y.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009) (excluding declaration

that "strongly suggest[ed] an attempt by the City to 'sandbag' its opponents with new opinions

designed to defeat summary judgment").[4]

    *Third*, having no viable argument regarding the admissibility of statements in the

Declaration that explicitly contradict Mr. Pomerantz's deposition testimony, the Trustee resorts

to claiming that Defendants mischaracterized the relevant deposition testimony. The record

demonstrates the contrary. In response to a question about whether, "in [his] performing due

diligence on an investment advisor or hedge fund manager, [he had] ever reviewed trade

confirmations," Mr. Pomerantz unambiguously testified: "No," claiming that he "never had a

need to look at the confirmations." Reply Decl. Ex. A at 100:4-13. And when he was asked,

"you never asked to look at confirmations in any of the due diligence that you have done over the

last 20 years," he replied: "I was never -- I never had a need to do that." *Id.* at 100:14-18. In

fact, Mr. Pomerantz made the same admission at various times in his deposition. *See id.* at 46:8-

15 ("Q. . . . Did you go and get trade confirmations when you were doing due diligence on the

WPG Software Fund? A. I never had reason to look at his confirmations. Q. Why not? A.

There was nothing that suggested to me that I would want to look at them."); *id.* at 96:3-6 ("Q.

Did you go and look at individual trade confirmations in your due diligence of the software

fund? A. No, I didn't look at confirmations . . . ."). Indeed, when Mr. Pomerantz performed due

---

[4]    Mr. Pomerantz's statement in the Declaration that "Baupost and Princeton/Newport were
also not included because performance data was not publicly available" is particularly
egregious because Mr. Pomerantz testified that he was not familiar with Baupost and
never considered including that fund in his analysis. *Compare* Pomerantz Declaration at
¶ 18 *with* Reply Decl. Ex. A at 311:9-25 ("Q. . . . [A]re you familiar with Baupost? . . .
A. No. . . . Q. And so, that is not one that you considered? A. That's correct.").

diligence on Madoff for a fund, he did not even know whether that fund received trade

confirmations and monthly statements from Madoff.  Nor did he ever request to see any trade

confirmations.  *See id.* at 139:20-140:23, 148:18-24 ("Q.  So, in connection with your diligence,

why didn't you ask for those specific categories of documents [trade confirmations and monthly

statements]?  A.  I basically was told they didn't exist.  I asked for everything, and if I ask for

everything, then what I get is what I assume to be everything.").  The implication in the

Declaration that Mr. Pomerantz reviewed information on trade confirmations "where trade

confirmations are available to [him] as part of [his] due diligence process" is plainly contrary to

his sworn deposition testimony.  Declaration at ¶ 5.

Similarly, in response to a question about whether he "ever compared on a transaction-

by-transaction basis transaction price versus the daily high-low range," Mr. Pomerantz gave a

non-responsive answer—"I have looked at transaction prices against VWAP"—and then

admitted:  "I have not looked at transactions versus highs and lows."  Reply Decl. Ex. A at

101:5-14.  In response to the follow-up question of *why* he never looked at transactions versus

highs and lows, Mr. Pomerantz merely responded, "I never had a reason to."  *Id.* at 101:17-20.

Later in his deposition, Mr. Pomerantz again testified that he never compared transaction prices

against the daily high-low range:

> Q.  But, for example, as of 1997, and even as of 2008, you had
> never compared the transaction pricing to the daily high/low;
> correct? . . .
>
> A.  I never had the need to perform that particular analysis.  There
> are – VWAP analysis, as an example, is something that I did
> perform in 1997.
>
> Q.  Okay.  But if you focus on my question, which is the
> comparison of the transactions to the daily highs and lows, that's
> not something that you had performed?

A.  Right.  I just testified that that is not a tool that I used in 1997 .

. . .

*Id.* at 176:12-177:2.  Mr. Pomerantz's assertion in his Declaration that "I would have conducted additional due diligence, which may have included a comparison of transaction prices to daily highs and lows," is a transparent attempt to revise his deposition testimony and should be rejected outright.  Mr. Pomerantz is not "free to continually bolster, strengthen, or improve" his report, nor to "continually supplement" his opinions.  *United States v. Prevezon Holdings, Ltd*., -- F. Supp. 3d --, No. 13-CV-6326 (WHP), 2017 WL 714026, at *3 (S.D.N.Y. Feb. 21, 2017) (internal quotation marks omitted); *see City of N.Y.*, 637 F. Supp. 2d at 108 (striking declaration where proponent "does not even attempt to argue that new evidence should be considered, and simply pretends [it] offers no new opinions" because "[t]o allow such new evidence to be presented would undermine the purpose of the discovery rules, circumvent the discovery schedule that was ordered by the court, and prejudice [the opposing parties]").

## Conclusion

For the foregoing reasons and those in their opening brief, Defendants respectfully request that this Court exclude Mr. Pomerantz's Reports, Declaration, and testimony in their entirety.

Dated:    New York, New York
          June 13, 2017

DECHERT LLP

By:    */s/ Neil A. Steiner*
       Andrew J. Levander
       Neil A. Steiner
       Mariel R. Bronen
       Daphne T. Ha
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com

*Attorneys for Defendants J. Ezra Merkin and
Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP

By:  */s/ Judith A. Archer*
       Judith A. Archer
       Sarah O'Connell
       David B. Schwartz
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: (212) 318-3000
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for
Defendant Ascot Partners, L.P., and Ascot Fund
Ltd.*