**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01182 (SMB) |
| Plaintiff, | |
| v. | |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' *MOTION IN LIMINE***
**TO EXCLUDE THE EXPERT TESTIMONY OF LISA M. COLLURA**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................. 3

    I.    COLLURA'S TESTIMONY IS RELEVANT AND WILL ASSIST THE
    COURT ............................................................................................................ 4

        A.    The Trustee Is Entitled to Rely on an Expert to Analyze BLMIS's
        Books and Records ............................................................................ 4

        B.    Collura's Opinions and Testimony Relating to Subsequent
        Transfers Are Relevant and Admissible ................................................ 5

        C.    Collura's Opinions and Testimony Are Relevant to Defendants'
        Redemptions from BLMIS and Management Fees Paid to Merkin ........... 7

    II.    COLLURA'S OPINIONS AND TESTIMONY AS TO THE TRACING
    METHODOLOGIES ARE RELIABLE ..................................................................... 9

        A.    Collura's Application and Analysis of the Tracing Methodologies
        Are Reliable and Verifiable ................................................................ 9

            1.    Last in, First Out (LIFO) ............................................. 10

            2.    First in, First Out (FIFO) ............................................. 10

            3.    Proportionality (pro rata) ............................................. 10

            4.    Lowest Intermediate Balance Rule (LIBR) .................... 11

            5.    Restated Lowest Intermediate Balance Rule (Restated
            LIBR) ...................................................................... 11

        B.    Selecting a Tracing Methodology Is an Equitable and Legal
        Determination to Be Made by This Court .............................................. 13

        C.    Collura Has Applied Reliable Methodologies .......................................... 14

        D.    Collura Did Not Improperly Draw Upon Inferences ............................... 15

        E.    Defendants' Challenges to Collura's Testimony and Opinions Are
        Not the Basis for Exclusion but Are Issues for Cross-Examination .......... 17

CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auto. Ins. Co. of Hartford v. Electrolux Home Prods., Inc.*,
No. 10-CV-0011 (CS), 2012 WL 6629238 (S.D.N.Y. Dec. 20, 2012)...................................15

*BL Dev. Corp. v. Masella (In re Masella)*,
No. 05-24302, Adv. No. 06-2010, 2007 WL 2302312 (Bankr. D. Conn. Aug.
7, 2007) ..............................................................................................................................17

*Buchwald v. Renco Grp.*,
539 B.R. 31 (S.D.N.Y. 2015)...............................................................................................17

*Buchwald v. Renco Grp. Inc.*,
No. 13-cv-7948 (AJN), 2014 WL 4207113 (S.D.N.Y. Aug. 25, 2014)...................................4

*Burtch v. Hydraquip, Inc. (In re Mushroom Trans. Co.)*,
227 B.R. 244 (Bankr. E.D. Pa. 1998) ...................................................................................10

*In re Comm'l Fin. Serv., Inc.*,
350 B.R. 520 (Bankr. N.D. Okla. 2005) ...............................................................................17

*Computer Assocs. Int'l., Inc. v. Simple.com, Inc.*,
No. CV 02-2748(DRH)(MLO), 2005 WL 6042722 (E.D.N.Y. Jan. 19, 2005)......................15

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)........................................................................................................3, 9, 14

*Fam. Golf Ctr., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctr.,
Inc.)*, 290 B.R. 55 (Bankr. S.D.N.Y. 2003) .............................................................................4

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009)..............................................................................14, 17

*Gowan v. Amaranth Advisors LLC*,
No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .................................6

*Hart v. Rick's Cabaret Int'l, Inc.*,
60 F. Supp. 3d 447 (S.D.N.Y. 2014)....................................................................................13

*Hollman v. Taser Int'l Inc.*,
928 F. Supp. 2d 657 (E.D.N.Y. 2013) ....................................................................................3

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
408 F.3d 689 (11th Cir. 2005) ..........................................................................................5, 6

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)............................................................................................................14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lidle ex rel. Lidle v. Cirrus Design Corp.*,
No. 08 CV. 1253(BSJ)(HBP), 2010 WL 2674584 (S.D.N.Y. July 6, 2010) ..........................15

*Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)..................................................................................18

*McHale v. Boulder Capital LLC* (*In re The 1031 Tax Grp., LLC*),
439 B.R. 78 (Bankr. S.D.N.Y. 2010) ..................................................................................10

*Mishkin v. Ensminger* (*In re Adler, Coleman Clearing Corp.*),
No. 95-08203, 1998 WL 160039 (Bankr. S.D.N.Y. Apr. 3, 1998)......................................4, 5

*Nimely v. City of N.Y.*,
414 F.3d 381 (2d Cir. 2005).................................................................................................3

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
716 F. Supp. 2d 220 (S.D.N.Y. 2010).....................................................................................4

*In re Petters Co., Inc.*,
506 B.R. 784 (Bankr. D. Minn. 2013) ...................................................................................7

*Picard v. Charles Ellerin Revocable Tr.* (*In re BLMIS*),
No. 10-05219 (BRL), 2012 WL 892514 (S.D.N.Y. Mar. 14, 2012) .............................6, 9, 14

*Picard v. Merkin* (*In re BLMIS*),
515 B.R. 117 (Bankr. S.D.N.Y. 2014)...................................................................................6

*Picard v. Merkin* (*In re BLMIS*),
563 B.R. 737 (Bankr. S.D.N.Y. 2017)...................................................................................8

*ProtoComm Corp. v. Novell Adv. Servs. Inc.*,
171 F. Supp. 2d 473 (E.D. Pa. 2001) ..................................................................................17

*Safrani v. Werner Co.*,
No. 95 Civ. 1267(LBS), 1997 WL 729110 (S.D.N.Y. Nov. 24, 1997) ............................17, 18

*Silverman v. K.E.R.U Realty Corp.* (*In re Allou Distribs., Inc.*),
379 B.R. 5 (Bankr. E.D.N.Y. 2007)......................................................................................5

*United States v. Banco Cafetero Panama*,
797 F.2d 1154 (2d Cir. 1986)...............................................................................................6

*United States v. Henshaw*,
388 F.3d 738 (10th Cir. 2004) ..................................................................................... *passim*

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Statutes**

15 U.S.C. § 78aaa *et seq.* ................................................................................................1

**Rules**

Fed. R. Evid. 611 ............................................................................................................4

Fed. R. Evid. 702 ..............................................................................................3, 9, 14, 15

**Other Authorities**

28 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure §
    6162 (2d ed. 2017) .....................................................................................................4

Restatement (Third) of Restitution and Unjust Enrichment § 59 (2011)......................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law and the Declaration of Brian W. Song

("Song Decl.") in opposition to Defendants'[1] Motion *in Limine* to Exclude the Expert Testimony

of Lisa Collura.  For the reasons set forth herein, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

Defendants seek to exclude the entirety of Lisa Collura's expert opinions—opinions that

are relevant and reliable—based on the faulty premise that her opinions have been rendered

unnecessary by the parties' stipulation to the initial transfers.  Instead, Defendants propose that

Collura's opinions and testimony be replaced by simply providing the Court with summary totals

of the Subsequent Transfer amounts[2] she derived from five different tracing methodologies,

without explanation of her methodologies and analyses.  But, Collura's opinions are relevant

because Defendants have not stipulated to Subsequent Transfers from Defendant Ascot Partners.

Moreover, Defendants' proposal to submit only totals would leave this Court with an insufficient

explanation as to the various tracing analyses offered by the Trustee and thus without the

requisite foundation to select an appropriate tracing methodology within the specific facts of this

case.  The Trustee is entitled to rely upon his experts and their expertise to meet his burden of

proof as to Subsequent Transfers, which include transfers from BLMIS to initial transferees,

---

[1] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Ltd. ("Ascot Fund") are referred to herein as Defendants.

[2] Collura defines "Subsequent Transfers" as "any . . . Initial Transfers of BLMIS funds [which] were subsequently transferred to or for the benefit of, the Merkin Defendants."  Collura Rpt. ¶ 7.  She further defines "Subsequent Subsequent Transfers" as "any . . . Subsequent Transfer of BLMIS funds received by Defendant GCC [which] were further transferred to, or for the benefit of, Defendant J. Ezra Merkin."  *Id.*  For ease of reference, both are referred to herein as "Subsequent Transfers."

Subsequent Transfers of the initial transfers, and transfers among the Merkin Funds'[3] BLMIS

accounts and bank accounts—and to rebut any defenses or arguments that Defendants put forth.

In this regard, Defendants' argument as to alleged omissions in Collura's opinions—that

she did not opine that one tracing methodology is superior to others—is likewise erroneous.  The

tracing methodologies are judicially-created and legally-applied tracing fictions that are used to

ensure an equitable substitute when, such as here, specific transfer amounts cannot be identified

because of commingling of assets.  Collura has opined and will testify about her detailed analysis

of these tracing methodologies; the expert determinations she made in applying the

methodologies, particularly the impact of commingled funds; and how she calculated the

Subsequent Transfer amounts.  Thereafter, any determination about the proper methodology to

be applied is a case-specific determination that is properly left to this Court.

For these reasons, Defendants' motion should be denied.

## **BACKGROUND**

In order to arrive at her conclusions regarding the initial transfers to, and Subsequent

Transfers from, Ascot Partners' BLMIS account, Collura reconstructed, reviewed, made

determinations based on her expertise, and reconciled BLMIS's and Defendants' bank records.

From her analysis of BLMIS's banks records, Collura concluded that 99% of the approximately

225,000 cash deposit and withdrawal transactions reflected on all BLMIS customer statements

during the time period from December 1998 to December 2008 (the "Ten Year Period")

reconciled to available BLMIS bank records for the same time period.[4]  Encompassed in that

conclusion is her finding that all of the cash deposit and withdrawal transactions in the Ten Year

---

[3] Gabriel Capital, L.P., Ariel Fund Ltd., Ascot Partners, and Ascot Fund (collectively, the "Merkin Funds").

[4] Declaration of Judith A. Archer in Support of Defendants' Motion *In Limine* to Exclude the Expert Testimony of
Lisa M. Collura dated May 17, 2017 ("Archer Decl."), Ex. A ("Collura Rpt.")) ¶ 35, ECF No. 380-1.

Period reflected on BLMIS customer statements for the Merkin Funds' BLMIS accounts

reconciled to available bank records.  She then traced the initial transfers from BLMIS in the Ten

Year Period to bank accounts held by Ascot Partners.  Based on her analysis of the Defendants'

bank records and business records, Collura identified the sources of the incoming transfers and

the recipients of outgoing transfers.  She then concluded that there was commingling of funds in

the bank accounts held by the Merkin Funds and GCC.  She analyzed those accounts to trace the

Subsequent Transfer amounts to Ascot Fund and GCC using five tracing methods: (i) Last In,

First Out ("LIFO"); (ii) First In, First Out ("FIFO"); (iii) Lowest Intermediate Balance Rule

("LIBR"); (iv) Restated LIBR; and (v) Proportionality.[5]  She further used those same five tracing

methods to trace the Subsequent Transfer amounts from GCC to or for the benefit of J. Ezra

Merkin, as well as the management fees paid by Ascot Partners to GCC that consisted of

Subsequent Transfers.

## ARGUMENT

Federal Rule of Evidence 702 governs the admission of expert testimony.  In determining

whether expert testimony should be admitted, the court looks to ensure that "an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  This requires a court to determine: "(1)

whether the witness is qualified to be an expert; (2) whether the [expert's] opinion is based upon

reliable data and methodology; and (3) whether the expert's testimony on a particular issue will

assist the trier of fact."  *Hollman v. Taser Int'l Inc*., 928 F. Supp. 2d 657, 667 (E.D.N.Y. 2013)

(citing *Nimely v. City of N.Y.*, 414 F.3d 381, 396–97 (2d Cir. 2005)).  Where an expert meets

these requirements, a court should admit the testimony, leaving the adverse party to present

---

[5] Collura Rpt. §§ IX, X.

contrary evidence through vigorous cross-examination. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 716 F. Supp. 2d 220, 224–25 (S.D.N.Y. 2010).

## I.    COLLURA'S TESTIMONY IS RELEVANT AND WILL ASSIST THE COURT

Defendants argue that because the parties have stipulated to the initial transfers, all of Collura's remaining opinions and testimony are irrelevant, duplicative, and not helpful to this Court.  The Trustee agrees that the parties have stipulated to the initial transfer amounts; however, there is no stipulation regarding the amount of Subsequent Transfers and/or the analyses of Defendants' books and records with respect to the Subsequent Transfers.  Therefore, in the absence of a comprehensive stipulation, the Trustee is permitted to advocate for his position and have a fair opportunity to present his case to the Court.  *See* Fed. R. Evid. 611(a); 28 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6162 (2d ed. 2017); *see also Buchwald v. Renco Grp. Inc.*, No. 13-cv-7948 (AJN), 2014 WL 4207113, at *2–3 (S.D.N.Y. Aug. 25, 2014) (permitting trustee to call live witnesses over defendants' objections to same pursuant to Fed. R. Evid. 611(a)).

### A.    The Trustee Is Entitled to Rely on an Expert to Analyze BLMIS's Books and Records

When a trustee liquidates a debtor, the trustee must piece together the books and records based on the information to which he has access in order to determine the amount owed, if any, to each customer.  *See Fam. Golf Ctr., Inc. v. Acushnet Co.* (*In re Randall's Island Family Golf Ctr., Inc.*), 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003).  Bankruptcy courts regularly permit expert witnesses to testify to the reconstruction of a debtor's books and records.  For example, in *Mishkin v. Ensminger* (*In re Adler, Coleman Clearing Corp.*), the court held that the forensic accountant retained by the trustee appointed under the Securities Investor Protection Act ("SIPA") to assist in reconstructing a SIPA debtor's books and records, was a proper expert

witness to testify as to whether trading activity was genuine and whether the debtor's books and records were correct. No. 95-08203 (JLG), 1998 WL 160039, at *1–2, *5, *8 (Bankr. S.D.N.Y. Apr. 3, 1998).

The Trustee has been tasked with unraveling the decades-long BLMIS fraud; requiring the reconstruction of books and records comprised of millions of pages of documents, and the reconciliation of thousands of accounts. As this Court has recognized, the size and length of the BLMIS fraud required the Trustee to hire professionals to assist him.[6] Collura is among those professionals. Specifically, she will provide the Court with testimony regarding her reconciliation of the cash deposit and withdrawal transactions identified on the BLMIS customer statements for all customer accounts to the available BLMIS bank records. This testimony is proper and any application to exclude Collura's testimony on these grounds should be denied. *See Alder, Coleman Clearing Corp.*, 1998 WL 160039, at *1–2, *5, *8 (denying a motion *in limine* and holding that the trustee's expert, whom the trustee retained to assist him in reconstructing a SIPA debtor's books and records, was a proper expert witness).

## B.    Collura's Opinions and Testimony Relating to Subsequent Transfers Are Relevant and Admissible

Because the Subsequent Transfer amounts are still at issue in this case, the Trustee should be permitted to present evidence supporting his determination of these amounts. In an action seeking the recovery of funds, a trustee has the burden to trace funds that are the property of the estate. *Silverman v. K.E.R.U Realty Corp.* (*In re Allou Distribs., Inc.*)*,* 379 B.R. 5, 29–30 (Bankr. E.D.N.Y. 2007) (citing *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.*), 408

---

[6] *Cf. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re BLMIS)*, Adv. No. 08-01789(SMB) (Bankr. S.D.N.Y.) Hr'g Tr. on Motion to Allow Customer Claim of Aaron Blecker at 32, Feb. 24, 2016, ECF No. 2885 (THE COURT: "Can't the trustee in a SIPA case hire an expert to help them understand the books and records. You know, he's a trustee. He inherits all this stuff. And he doesn't know what it means. How does he find out what it means?").

F.3d 689, 708 (11th Cir. 2005)); *see also Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149

(Bankr. S.D.N.Y. 2014) (referencing the Trustee's burden to recover subsequent transfers).

When assets are commingled,[7] it is significantly more difficult to trace funds, even when courts

do not require a dollar for dollar tracing. *Int'l Admin. Servs.*, 408 F.3d at 708 (finding that the

trustee's inability to provide a dollar for dollar tracing as non-fatal to the trustee's case); *see also*

*Gowan v. Amaranth Advisors LLC*, No. 08-15051 (SMB), 2014 WL 47774, at *15 (Bankr.

S.D.N.Y. Jan. 3, 2014) ("[T]he trust's commingling of other property with the fraudulent,

fictitious profits did not defeat tracing." (internal citations omitted)); *Picard v. Charles Ellerin*

*Revocable Tr.* (*In re BLMIS*), No. 10-05219 (BRL), 2012 WL 892514, at *3 (S.D.N.Y. Mar. 14,

2012) (same).  As Judge Lifland previously recognized, "[c]ourts have broad discretion to

determine which monies of commingled funds derive from fraudulent sources," and to select

which of the alternative methods is best suited to achieving a fair and equitable result. *Charles*

*Ellerin Revocable Tr.*, 2012 WL 892514, at *3 n.7 (citing *United States v. Henshaw*, 388 F.3d

738, 741 (10th Cir. 2004)); *see also United States v. Banco Cafetero Panama*, 797 F.2d 1154,

1159–60 (2d Cir. 1986) (finding that the creation and application of a tracing methodology based

on a "'legal fiction'" was appropriate when assets were inseparable in a forfeiture action

involving a commingling of funds).

Here, Collura's opinions and testimony directly concern a key issue in this case: the

Trustee's ability to recover Subsequent Transfers from Defendants.  Defendants argue that the

Trustee should only present the summary totals from the five tracing methodology calculations

but such proposal deprives the Court of the benefit of explanations or understanding of how

those amounts were calculated.  Specifically, and as discussed in more detail below, Collura

---

[7] Commingling is defined as "the combination of BLMIS Funds (the Initial Transfers and/or Subsequent Transfers) and other sources of funds in [the Defendants' and Ariel and Gabriel's] five bank accounts, such that BLMIS funds become unidentifiable and/or inseparable." Collura Rpt. ¶ 57.

confirmed that Defendants commingled the initial transfers within their five bank accounts, analyzed business records and bank records to identify Subsequent Transfers to Defendants, and applied different tracing methodologies to calculate the amounts of the Subsequent Transfers traced back to BLMIS.

Collura's testimony is, moreover, helpful to this Court. "[E]xpert testimony is admissible if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[1] (2d ed. 2017). Notably, expert opinions on commingling are routinely permitted to assist the court. *In re Petters Co., Inc.*, 506 B.R. 784, 804 (Bankr. D. Minn. 2013) (finding CPA with certification in financial forensics and experience with reconstructing books and records qualified to opine on extent of commingling of debtors' funds). Collura's testimony will do exactly that—provide this Court with an understanding of BLMIS's and Defendants' books and records, and valuable analysis related to the tracing methodologies, and will assist the Court in determining which tracing methodology the Court should apply. *See Henshaw*, 388 F.3d at 741 ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them") (internal citation omitted)). Accordingly, Collura's testimony is relevant and admissible.

### C. Collura's Opinions and Testimony Are Relevant to Defendants' Redemptions from BLMIS and Management Fees Paid to Merkin

Collura's opinions and testimony are further relevant to the issue of Defendants' redemptions from BLMIS and management fees paid by the Merkin Funds to GCC for the benefit of Merkin. Defendants—and their expert—have repeatedly taken the position that they did not suspect Madoff's fraud for various reasons, specifically including the fact that Merkin

could always get redemptions from BLMIS to pay his investors' withdrawals. *Picard v. Merkin* (*In re BLMIS*), 563 B.R. 737, 744 (Bankr. S.D.N.Y. 2017) ("*Merkin Summary Judgment Decision*").[8]  The methodologies applied and the analyses conducted by Collura will be offered by the Trustee to dispel this notion.  Rather than obtain redemptions directly from BLMIS, Defendants frequently avoided doing so by using inter-account transfers from commingled bank accounts to pay redemptions to investors.  Defendants' expert, Paul Meyer, does not dispute this fact, noting these inter-account transfers to Ascot Partners from Ariel Fund Ltd. and Gabriel Capital, L.P., two other funds controlled by Merkin, were used to pay redemptions to investors of Ascot Partners.[9]

Similarly, Collura's opinions and testimony regarding the amount of management fees paid to Merkin by the Merkin Funds is relevant to the issue of Merkin's lack of good faith—namely his motives for continuing to deal with BLMIS in the face of facts suggesting a high probability of fraud at BLMIS.  As this Court explained, any favorable inference to Merkin because he and his family purportedly invested and lost money in BLMIS was "undercut by the $685 million in fees Merkin received through 2007 for managing the same funds in which he and his family invested." *Merkin Summary Judgment Decision*, 563 B.R. at 750.  Collura's conclusions as to the amount of the fees she was able to trace will thereby assist the Court in understanding the total management fees subsequently transferred to Merkin.  Accordingly, her opinions and testimony as to Defendants' redemptions from BLMIS and management fees are relevant, probative, and thus should be permitted.

---

[8] *See also* Joint Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 In Support of Defendants' Motion For Summary Judgment ¶¶ 107–08, ECF No. 287.

[9] Archer Decl., Ex. C (Expert Rebuttal Report of Paul K. Meyer ("Meyer Rpt.")), ¶¶ 29–30, ECF No. 380-3.

## II.    COLLURA'S OPINIONS AND TESTIMONY AS TO THE TRACING METHODOLOGIES ARE RELIABLE

Defendants next attack Collura's opinions.  They do not challenge the amounts calculated by Collura.  Rather, Defendants claim that Collura's opinions are unreliable because she failed to advocate for one of the five methodologies for tracing, engaged in nothing more than a "mechanical application of each methodology to the transfers," and applied no expertise or experience.  Defendants are wrong on each count.  Moreover, Defendants ignore that these methodologies are judicially-created tracing fictions that are selected and applied through case-specific determination by the Court, not through an expert.  *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 n.7 (quoting *Henshaw*, 388 F.3d at 741).  Failing to explain how each methodology or analysis is unreliable, Defendants limit their attack to the fact that their expert picked two methods whereas Collura will present this Court with all five possible tracing methods.  As will be discussed below, Collura's methodologies and analyses are reliable and verifiable, and consistent with the mandates of Fed. R. Evid. 702 and *Daubert*.

### A.    Collura's Application and Analysis of the Tracing Methodologies Are Reliable and Verifiable

As a result of Defendants' commingling of assets belonging to different funds, Collura employed five tracing methodologies to determine the Subsequent Transfers.  These tracing methodologies are used when a straightforward determination of particular sums is impossible, such as here because of Defendants' commingling of assets.  A court employs equitable tracing principles "to identify and segregate property that has been mingled with other property in such a manner that it has lost its identity."  *Henshaw*, 388 F.3d at 740 (citation omitted).

The first four tracing methodologies applied by Collura are judicially-created and legally applied by various courts. *Henshaw*, 388 F.3d at 740–41 (finding that the district court properly chose the "last in-first out" method for tracing); *Burtch v. Hydraquip, Inc.* (*In re Mushroom Trans. Co.*), 227 B.R. 244, 257–58 (Bankr. E.D. Pa. 1998) (applying first in first out and lowest intermediate balance rule methods); *McHale v. Boulder Capital LLC* (*In re The 1031 Tax Grp., LLC*), 439 B.R. 78, 84 (Bankr. S.D.N.Y. 2010) (applying the "pro rata method of allocation of the commingled funds" in a Ponzi scheme after considering the first in first out and last in last out methods). The fifth method applied is based on the 2011 amendment to section 59 of The Restatement (Third) of Restitution and Unjust Enrichment (referred to herein as the "Restated LIBR").[10]

The five tracing methodologies applied by Collura are as follows:

### 1.    Last in, First Out (LIFO)

Under this principle, the last money deposited into a commingled bank account is considered to be the first money disbursed from that bank account.[11]

### 2.    First in, First Out (FIFO)

Using FIFO, the first money deposited into a commingled bank account is considered to be the first money disbursed from that bank account.[12]

### 3.    Proportionality (pro rata)

The pro rata tracing method calculates the proportion of the balance in a bank account between sources each time a deposit is made and applies the proportion to the next distribution from the bank account.[13]

---

[10] The Restatement (Third) of Restitution and Unjust Enrichment § 59 (2011).

[11] Collura Rpt. ¶¶ 84–89.

[12] *Id.* ¶¶ 90–94.

### 4.    Lowest Intermediate Balance Rule (LIBR)

LIBR is a method derived from the laws of trusts and assumes that the trust or secured

funds deposited into a commingled bank account are the last funds disbursed from that account.

Simply put, under LIBR, trust or secured funds are assumed to fall to the bottom of the

commingled bank account and any subsequent disbursements made from the commingled

account are taken off the top first—giving the debtor a benefit to the funds.  The secured funds

are only tapped once the balance of the account dips below the amount of those secured funds.[14]

### 5.    Restated Lowest Intermediate Balance Rule (Restated LIBR)

Under the Restated LIBR, withdrawals from a commingled bank account can be

"marshalled so far as possible in favor of the claimant" (here, the Trustee), and the claimant can

"claim the entire advantage of beneficial withdrawals that can be attributed to the claimant's

funds."[15]  Further, the claimant can trace to his benefit any withdrawal from the commingled

bank account that does not exceed the lowest balance reached in that commingled account

between 1) the point at which the Trustee's funds (*i.e.*, BLMIS Funds) are deposited into the

commingled bank account, and 2) the point at which the withdrawal is made.[16]

Contrary to Defendants' allegations, Collura reviewed and reliably applied each of the

five tracing methodologies using her experience and her analysis of the data in this case.  To

complete her analyses under the different methodologies, Collura drew upon her more than 20

years of experience as a forensic accountant to analyze data from the Defendants' bank records,

BLMIS customer account statements (covering more than two decades), BLMIS bank records,

and over 60,000 records of the Defendants' electronic accounting data that spanned from January

---

[13] *Id.* ¶¶ 107–11.

[14] *Id.* ¶¶ 95–100.

[15] *Id.* ¶ 102.

[16] *Id.* ¶¶ 101–06.

1995 to January 2009,[17] including thousands of unique QuickBooks notations and thousands of

transactions reflected within those records.  Specifically, Collura incorporated her analysis of

these accounting records in determining cash movement from bank account to bank account.[18]

To this point, Collura's computations are complex and required analytical tracing by a

forensic accounting expert.  For example, in Collura's application of the LIBR method, she

identified the Subsequent Transfers, treated the BLMIS funds akin to a trust, and applied the

requisite tracing method for trusts.[19]  Because LIBR requires all "non-trust funds" to be

disbursed from the account first, leaving as much of the "trust funds," *i.e.*, BLMIS funds, in the

account to be disbursed last, Collura traced the flow of funds and identified which of the inflows

to Defendant Ascot Partners' Morgan Stanley bank account were BLMIS funds (*i.e.*, initial

transfers, or the "trust funds" under this methodology) and which were non-BLMIS funds (*i.e.*,

from non-BLMIS sources, or "non-trust funds under this methodology).[20]  This determination

required Collura to perform a detailed tracing analysis and reconciliation of thousands of

documents including, but not limited to, BLMIS bank records, Defendants' Morgan Stanley bank

statements, Morgan Stanley wire details, and Defendants' QuickBooks records.[21]

Next, Collura analyzed all outflows from the Ascot Partners' bank account which

consisted of thousands of entries.  Collura relied on her expert judgment to allocate transactions,

---

[17] *Id.* ¶ 44.

[18] *Id.* ¶¶ 57, 60–61.

[19] *Id.* ¶¶ 95–96; Declaration of Brian W. Song in Support of Trustee's Memorandum of Law in Opposition to Defendants' Motion In Limine to Exclude the Expert Testimony of Lisa M. Collura dated June 13, 2017 ("Song Decl."), Ex. 1 (Collura Deposition Transcript dated June 18, 2015 ("Collura Dep.")) at 70:13–71:17.

[20] Collura Rpt. ¶¶ 96, 100; Collura Dep. at  86:14–87:23, 89:13–90:13, 91:9–21; *see also* Song Decl. Ex. 2 (Exhibit 7-List of All Cash Transactions in the Merkin Accounts ("Collura Ex. 7")).

[21] Collura Rpt. ¶¶ 12–14; Collura Dep. at 51:16–53:10.

including same-day transactions which did not include timestamps.[22]  To calculate the lowest

intermediate balance, Collura had to attribute each outflow to a non-BLMIS source of funds until

those funds were all applied.[23]  Once all non-BLMIS funds were used up and the total in the

Ascot Partners bank account went below the total BLMIS funds in the bank account, she then

attributed any additional disbursements to the remaining BLMIS funds in the Ascot Partners

bank account, meaning that those transfers coming from BLMIS funds identified by Collura

were deemed Subsequent Transfers under LIBR.[24]

Collura will provide similar detailed analyses as to each of the other four methodologies

and describe how she used her expertise to determine amounts of Subsequent Transfers.

Certainly, Collura's analyses and the testimony that she will offer are well beyond a "mere

mathematical application of five methodologies."  *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp.

3d 447, 466–67 (S.D.N.Y. 2014) (holding that what could have been a "fundamentally

mechanistic task" by the expert of tabulating something was not because it required the exercise

of judgment due to missing data).

### B.     Selecting a Tracing Methodology Is an Equitable and Legal Determination to Be Made by This Court

Defendants next seek to exclude Collura's opinion because she has not opined as to the

superiority of one of the five tracing methodologies over the others.  In propounding this

argument, Defendants ignore that it is simply improper for Collura to opine on which of these

tracing methodologies *the Court should apply*.  Because no single tracing methodology is

optimal for all commingling cases, it is for the courts to "exercise case-specific judgment[s] to

---

[22] Collura Dep. at 95:19–97:19; *see also* Expert Report of Lisa M. Collura Ex. 12-Excel Spreadsheet "Ascot Partners MS Account Activity and Analysis" (electronic file available upon written request).

[23] Collura Rpt. ¶¶ 96, 100.

[24] *Id.*

select the method best suited to achieve a fair and equitable result on the facts before them."[25]

*Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 n.7 (quoting *Henshaw*, 388 F.3d at 741).

Whatever the Court's determination, the fact that Collura does not opine on the superiority of

one methodology over another is entirely appropriate and not a basis for exclusion of her

opinions and testimony at trial.

### C.   Collura Has Applied Reliable Methodologies

Defendants further seek to exclude Collura's testimony because her methodologies are

somehow unreliable because they were identified by the Trustee. This argument fails. In

*Daubert*, the Supreme Court set forth the following factors that the court may consider in

determining the reliability of the methodology used by a proffered expert: (1) whether the theory

or technique can be tested; (2) whether the theory or technique has been subjected to peer review

and publication; (3) whether the technique has a known or potential rate of error; and (4) whether

the theory or technique has been met with widespread acceptance. *See Daubert*, 509 U.S. at

593–94. "The ultimate object of the court's gate-keeping role under Rule 702 is to 'make certain

that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field.'" *In re Fosamax Prods. Liab. Litig*., 645 F. Supp. 2d 164, 174

(S.D.N.Y. 2009) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

---

[25] Defendants' own expert, Mr. Paul K. Meyer, attempts to subvert the Court's determination by opining that either Proportionality or LIFO are appropriate tracing methods for the identification of subsequent transfers but that FIFO, LIBR and Restated LIBR are not. Meyer does not dispute the totals reached by Collura based on her analyses. Song Decl., Ex. 3 (Transcript Deposition of Paul K. Meyer, dated July 10, 2015 ("Meyer Dep.")) at 80:14–23. Rather, he opines that LIFO and Proportionality are the "most appropriate tracing method" because FIFO, LIBR, and Restated LIBR are "inconsistent with how Ascot Partners was managed." Meyer Rpt. ¶ 24*;* Meyer Dep. at 95:24–96:3. Not surprisingly, his selected methods yield the smallest subsequent transfer amounts. But even Meyer admits that he cannot provide the Court with which two of his subsequent transfer methodologies is appropriate. Meyer Dep. at 98:21–100:14.

The use of judicially-created and sanctioned methodologies does not transform Collura's

methodologies and analyses from reliable to unreliable, especially where Collura has applied

them to the facts of this case using her decades of professional experience.  *See Computer

Assocs. Int'l., Inc. v. Simple.com, Inc.*, No. CV 02-2748(DRH)(MLO), 2005 WL 6042722, at *1

(E.D.N.Y. Jan. 19, 2005) (rejecting argument that expert's methodology was unreliable because

counsel had "at least some input" into his reports).  Collura's conclusions are drawn directly

from her extensive analysis utilizing widely-accepted methodologies and reliable data, thereby

meeting the requirement of Fed. R. Evid. 702.  *See, e.g.*, *Auto. Ins. Co. of Hartford v. Electrolux

Home Prods., Inc.*, No. 10-CV-0011 (CS), 2012 WL 6629238, at *2 (S.D.N.Y. Dec. 20, 2012)

("Rule 702 also requires a sufficiently rigorous analytical connection between that methodology

and the expert's conclusions.").  In fact, even Defendants' expert has testified that he has "no

issues" with Collura's calculations and is in agreement as to the use of two of the

methodologies.[26]  *See Lidle ex rel. Lidle v. Cirrus Design Corp.*, No. 08 CV. 1253(BSJ)(HBP),

2010 WL 2674584, at *9 (S.D.N.Y. July 6, 2010) (denying defendants' motion to strike and

finding plaintiffs' expert's methodology reliable where defendants' expert used similar

methodology to determine similar questions).  The question of the appropriate method is for the

Court to determine and not proper expert testimony.  Therefore, Collura's testimony regarding

how she applied the five methodologies and the analyses she conducted is appropriate and

necessary for the Court to make such a determination.

### D.    Collura Did Not Improperly Draw Upon Inferences

Defendants also seek to exclude Collura as unreliable claiming she draws improper

inferences about certain missing BLMIS records citing two different sections of her report.

---

[26] Meyer Dep. at 80:14–23; *see also* Meyer Dep. at 95:24–97:23 (testifying that in his opinion LIFO and
proportionality are the most appropriate tracing methods to identify Subsequent Transfers in this case).

Although Collura was able to reconcile 99% of the approximately 225,000 cash transactions in

the Ten Year Period, Defendants criticize Collura's inference that if she had the documents for

the remaining 1% of the transactions, she would have been able to reconcile those transactions as

well.[27]  Defendants also criticize Collura's analysis concerning five deposit transactions in the

Ascot Fund's and Ascot Partners's BLMIS accounts during 1993 and 1994.[28]  Finally,

Defendants argue that this Court has stated in another BLMIS-related matter that it will refuse to

hear expert testimony on missing records.

However, the Defendants take this Court's prior statements about inferences out of

context.  With regard to the other BLMIS-related matter, the Court's determination was more

specific than Defendants claim, stating that it: "wouldn't accept testimony from Ms. Collura or

Mr. Greenblatt that it's reasonable to infer that the records that are missing would prove the

trustee's case."[29]  None of Collura's inferences about the missing 1% of the records are directed

to the ultimate conclusion in the Trustee's case here.  Rather, the inferences she draws here are

consistent with and based on her years of expertise as a forensic accountant; it is for the Court to

determine whether it will accept those inferences in determining the ultimate issues in this case.

Critically, the two examples raised by Defendants do not concern Collura's Subsequent

Transfer opinions—the issue Defendants dispute.  Instead, the inferences Defendants' dispute

relate to Collura's reconciliation of BLMIS's books and records.  But, in their moving papers,

Defendants state that they "do not dispute Ms. Collura's reconciliation of the bank account

---

[27] Collura Rpt. ¶ 35.

[28] *Id.* ¶ 47 (The five transactions were reflected on the Defendants' customer statements, but Collura could not complete her reconciliation due to the unavailability of records relating to those transactions.); *see also* Collura Ex. 7 at 1.

[29] Archer Decl., Ex. D, Hr'g Tr. at 9:14–18 (Apr. 18, 2017), ECF No. 380-4.

statements and BLMIS statements of Ascot."[30]  Moreover, Defendants also stipulated to the

deposit and withdrawal transactions for Ascot Partners and the principal balance of Ascot Fund,

which is inclusive of the five deposit transactions.[31]

In any event, Collura's assumptions and inferences are based on her expertise and are

proper expert testimony.  *Fosamax*, 645 F. Supp. 2d at 190 ("An expert is permitted to draw a

conclusion from a set of observations based on extensive and specialized experience");

*ProtoComm Corp. v. Novell Adv. Servs. Inc.*, 171 F. Supp. 2d 473, 480–81 (E.D. Pa. 2001)

(finding reliable method where forensic accountant and certified fraud examiner "based his

opinions on personal knowledge and experience, as well as a seemingly copious review of a

multitude of relevant business documents").  To the extent the available data required her to rely

on her professional judgment, including drawing reasonable conclusions, that judgment does not

render her opinions unreliable or inadmissible.  *See Buchwald v. Renco Grp.*, 539 B.R. 31, 41, 44

(S.D.N.Y. 2015) (permitting expert to render opinions based, in part, on exercise of professional

judgment); *BL Dev. Corp. v. Masella (In re Masella)*, No. 05-24302, Adv. No. 06-2010, 2007

WL 2302312, at *3 (Bankr. D. Conn. Aug. 7, 2007) (expert employing his professional judgment

is not a basis for exclusion) (citing *In re Comm'l Fin. Serv., Inc.*, 350 B.R. 520, 528–29 (Bankr.

N.D. Okla. 2005)).  Here, Collura's inferences based on her expertise are entirely appropriate.

### E.    Defendants' Challenges to Collura's Testimony and Opinions Are Not the Basis for Exclusion but Are Issues for Cross-Examination

To the extent there are any disagreements as to Collura's opinions or the foundation for

her opinions, Defendants are free to raise those issues on cross-examination at trial.  *Safrani v.*

---

[30] Archer Decl. ¶ 6.

[31] Stipulation and Order at 3–4, ECFNo. 361 (Stipulating that "Ascot Fund transferred the entire balance held in BLMIS Account 1FN005, $221,487,622 constituting principal" and stipulating to the deposit of $9,075,489 on January 12, 1993 into Ascot Partners, L.P.'s BLMIS account.).

*Werner Co.*, No. 95 Civ. 1267(LBS), 1997 WL 729110, at *2 (S.D.N.Y. Nov. 24, 1997) (denied

motion *in limine* to limit testimony of plaintiff's expert witness, noting that Defendants are not

barred from "attacking" the expert's "tests and theories at trial"). Indeed, "[w]here the expert's

conclusion is drawn from a reliable methodology . . . the correctness of that conclusion is still an

issue for the finder of fact." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 n.8

(S.D.N.Y. 2007) (quoting the *Manual for Complex Litigation (Fourth)* § 23.24 (2004) ("Cross-

examination and presentation of contrary evidence by the opposing party . . . would identify for

the jury the shakiness of the foundation on which the conclusion is based.")). Here, Defendants'

challenges to Collura's conclusions are properly explored on cross-examination, and not a proper

basis for the exclusion of her testimony and opinions.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order

denying Defendant's motion to exclude Ms. Lisa Collura's opinions and testimony.

Dated:  June 13, 2017          **BAKER & HOSTETLER LLP**
      New York, New York

                                         */s/ David J. Sheehan*
                                         45 Rockefeller Plaza
                                         New York, New York 10111
                                         Telephone: (212) 589-4200
                                         Facsimile:  (212) 589-4201
                                         David J. Sheehan
                                         Email: dsheehan@bakerlaw.com
                                         Lan Hoang
                                         Email: lhoang@bakerlaw.com
                                         Brian W. Song
                                         Email: bsong@bakerlaw.com

                                         *Attorneys for Irving H. Picard, Trustee for the*
                                         *Substantively Consolidated SIPA Liquidation of*
                                         *Bernard L. Madoff Investment Securities LLC and*
                                         *the Chapter 7 Estate of Bernard L. Madoff*