# <u>EXHIBIT 3</u>

Picard v Merkin                          Paul Meyer 7/10/2015

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------x
In Re:

BERNARD L. MADOFF INVESTMENT              Adv.Pro.No.
SECURITIES LLC,                           08-01789(BRL)

            Debtor.
--------------------------------x
IRVING H. PICARD, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC,

            Plaintiff,                    Adv.Pro.No.
                                          09-1182(BRL)

            v.

J. EZRA MERKIN, GABRIEL CAPITAL,
L.P., ARIEL FUND LTD., ASCOT
PARTNERS, L.P., GABRIEL CAPITAL
CORPORATION,

            Defendants.
--------------------------------x

                *   *   *

            VIDEOTAPED DEPOSITION

             OF PAUL K. MEYER

                *   *   *

            TRANSCRIPT of testimony as reported

by NANCY C. BENDISH, Certified Court Reporter,

RMR, CRR, and Notary Public of the State of

New York, at the offices of Baker Hostetler,

45 Rockefeller Plaza, New York, New York, on

Friday, July 10, 2015, commencing at 10:03 a.m.

Picard v Merkin                          Paul Meyer 7/10/2015

                                                           Page 80

1    the two major issues.  First it was just to

2    address the issue of initial transfers and sort

3    of looking at how that was laid out and

4    documented, explained by Ms. Collura.  So Ms.

5    Knox and Mr. Lietsch worked with me very

6    carefully on that.

7              Then we turned to looking at her

8    Exhibit 12 and then how she executed on the five

9    tracing methodologies that she's used in her

10   report.  So we worked together going through a

11   lot of that detail.

12             Then once we did that, we began

13   writing our report.

14        Q.    Did you or your team find any

15   errors in Exhibit 12?

16        A.    If you're asking about the

17   allocations themselves, sort of the process of

18   the allocations, I've raised no issues with the

19   actual calculations.  I have issues about what

20   methodologies I believe are most appropriate for

21   the tracing of the subsequent transfers, but as

22   it relates to the actual calculations in Exhibit

23   12, I have no issues with that.

24        Q.    And did your team -- did you or

25   your team check to see if the amounts listed in

Picard v Merkin                          Paul Meyer 7/10/2015

Page 95

1   really drive the opinion or the basis of the

2   opinion.  The other ones are background and

3   obviously they're part of the opinion but to a

4   lesser extent; more background.

5        Q.      Can you turn to page 8 of your

6   report and do paragraphs 22 through 24

7   accurately summarize the conclusions in your

8   report?

9        A.      Yes, I think those are, those

10   three paragraphs provide a very good summary of

11   my opinions in this case.

12        Q.      And do you intend to offer any

13   opinions other than what's offered here in

14   paragraphs 22, 23 and 24?

15              MS. ARCHER:  Object to the form.

16        A.      My understanding from counsel for

17   Ascot Partners and Ascot Funds is that these

18   would be the opinions that I'm asked to render.

19   There may be some subopinions that sort of back

20   into support for these, but I think that's all

21   addressed in the remainder of the report, but

22   these are the primary opinions and the opinions

23   that are most important.

24        Q.      And in paragraph 24, is it your

25   opinion that LIFO and proportionality are the

Picard v Merkin                              Paul Meyer 7/10/2015

                                                              Page 96

1    most appropriate tracing methods to identify

2    subsequent transfers in this case?

3          A.      Yes, that's my opinion.

4          Q.      And how did you determine that

5    LIFO is an appropriate tracing methodology?

6          A.      From my perspective, based on my

7    background, which is in accounting and

8    forensics, business, business operations, I

9    teach at Stanford a business class to engineers

10   who are going to run businesses, when I use all

11   that experience over my almost 35 years and I

12   then examine how capital partners ran their

13   business, and particularly when they looked at

14   their need for funds, it's explained in my

15   report and it's well documented in Mr. Autera's

16   deposition, that Ascot Partners would basically

17   work hard to understand any funds coming in from

18   new investors.  They would work hard to

19   understand any investors that were going to ask

20   for redemptions.  They want any open periods at

21   the end of a quarter.

22                 And so in that process they would

23   understand -- and then they would understand

24   fees for fund management, and then they would

25   come up with basically withdrawals that are

Picard v Merkin                           Paul Meyer 7/10/2015

                                                          Page 97

 1    going to occur, sources that are coming in, and

 2    then in that process they then would have to

 3    determine how much they'd have to draw down or

 4    ask to be redeemed from the amounts that were

 5    held with the Madoff accounts on behalf of their

 6    investors.  And this was a very consistent

 7    process.

 8                  And so I look at that and then

 9    when you think of that in an accounting sense

10    you're basically looking at funds that are

11    coming in, and those last ones coming in are

12    coming in for a defined purpose.  And so when I

13    use my experience sort of over the 35 years,

14    that tells me that's really a LIFO approach.

15                  And so when Ms. Collura identified

16    the five methods that she was going to put forth

17    to the court and I looked at that and then I

18    studied the business, I said to myself, well,

19    that really, as relates to how this fund --

20    these funds were run, that's a LIFO approach.

21    And based on, if you're an accountant or

22    business person, that's how you would look at

23    it.

24         Q.    And have you ever applied LIFO as

25    a tracing methodology in any of your previous

Picard v Merkin                          Paul Meyer 7/10/2015

                                                          Page 98

1    matters?

2         A.      When we talk about tracing

3    methodologies, although the method -- obviously

4    Ms. Collura addresses this in her report.  The

5    LIFO really is an accounting convention for

6    pricing inventory, but at the same time it sort

7    of has this accounting aspect that -- where

8    you're trying to match up with current

9    operations with the current costs of an asset.

10               And so I've never applied LIFO in

11   the sense of a tracing methodology.  This would

12   be the first time, and I would tell the Court

13   that, but I've done it.  But if it's a method

14   that's going to be proposed by Ms. Collura to

15   use as a tracing methodology, then from my

16   perspective, it's the most -- it's certainly one

17   of the most appropriate, along with

18   proportionality, is how I would look at it, from

19   an accounting perspective.  In these

20   circumstances.

21        Q.      And between LIFO and

22   proportionality, in your opinion which is the

23   most appropriate?

24        A.      It's an interesting question

25   because I pondered that, and I thought about

Picard v Merkin                          Paul Meyer 7/10/2015

                                                             Page 99

 1   what I would tell the Court.  Because I really

 2   can't make a recommendation for one over the

 3   other.  I would tell the Court I think they're

 4   both appropriate.  And the reason it's that way

 5   is because you can look at how Ascot Partners

 6   and then Ascot Funds, to some extent, because it

 7   sort of then becomes a subset, not in a legal

 8   sense but as I look at it.

 9           The way they were run, I just

10   described LIFO, but in that same process if you

11   go back and look at what I said, when Mr. Autera

12   would sit down and look at the funds coming in

13   from new investors and the withdrawals that are

14   going to occur and then knowing fees or costs of

15   operations for GCC, in that process you'd get

16   all that data, but then he also would check on

17   any other funds on hand.

18           So in that process you really are

19   looking at any potential source to meet the

20   needs to, for the fees or the withdrawals.  So

21   in some respects there's also a proportionality

22   aspect to it because you're going to then at

23   some part in your process you're going to say,

24   okay, I'm going to use some funds from the new

25   investors in some respects along with some funds

Page 100

1   down from Madoff to meet these commitments.

2            Because the other way you would do

3   it is you would just basically take the new

4   funds, the new investor funds, they'd go up to

5   Madoff, you're just going to bring down a bigger

6   amount.

7            So proportionality also has -- you

8   can clearly put it in the context of how the

9   funds were managed.

10            So I would tell the Court that

11   really from an accounting operations perspective

12   both those methods to me are appropriate and are

13   certainly far superior to FIFO and the LIBR and

14   the Restated LIBR.

15       Q.    Is there a standard in the

16   accounting industry for which you should use

17   LIFO?

18       A.    You're saying FIFO?

19       Q.    No, LIFO.

20       A.    LIFO.  You know, LIFO in sort of

21   this aspect, as I've mentioned, this is sort of

22   being borrowed from an inventory accounting

23   costing perspective and it was sort of

24   introduced into this exercise by Ms. Collura.

25            So it's really an inventory