UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | Adv. P. No. 08-01789 (SMB) |
| | : | |
| Plaintiff, | : | SIPA LIQUIDATION |
| | : | |
| -against- | : | (Substantively Consolidated) |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------X

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

------------------------------------------------------X

## MEMORANDUM DECISION REGARDING MOTIONS IN LIMINE

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

David J. Sheehan, Esq.
Seanna R. Brown, Esq.
Amy E. Vanderwal, Esq.
Of Counsel

*Attorneys for Irving H. Picard, Trustee
for the Liquidation of Bernard L. Madoff
Investment Securities LLC*

CHAITMAN LLP
465 Park Avenue
New York, NY 10022
Helen Davis Chaitman, Esq.
Gregory M. Dexter, Esq.
Of Counsel

*Attorneys for Various Claimants*

BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006

     Richard A. Kirby, Esq.
     Laura K. Clinton, Esq.
     Graham R. Cronogue, Esq.
        Of Counsel

*Attorneys for the Blums*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") filed motions *in limine* (1) to preclude certain

claimants represented by Chaitman LLP (the "Chaitman Claimants") from calling him as

a trial witness (the "*Picard Motion*"),[1] and (2) to preclude certain deposition testimony

by Drs. Joel Blum and Norman Blum (the "Blums") based on their alleged lack of

personal knowledge (the "*Blums Motion*").[2]  For the reasons stated, the *Picard Motion*

is granted, and the ruling on the *Blums Motion* is deferred until trial.


## BACKGROUND

### A.    Determining Customer Net Equity

The circumstances surrounding the massive Ponzi scheme orchestrated by

Madoff and the demise of BLMIS have been recounted in numerous reported decisions.

---

[1]    *See Memorandum of Law in Support of Trustee's Motion in Limine Number 4 to Exclude the Trustee as Witness*, dated Oct. 28, 2016 (ECF Doc. # 14357).

[2]    *See Memorandum of Law in Support of Trustee's Motion in Limine Number 2 to Exclude Certain Testimony of Joel and Norman Blum*, dated Oct. 28, 2016 (ECF Doc. # 14355).

*See, e.g., Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 414-15 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015); *Picard v. JPMorgan Chase & Co.* (*In re BLMIS*), 721 F.3d 54, 58-59 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014); *SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012).  The Court assumes familiarity and limits the facts to those germane to this dispute.

The issues raised by the motions relate to whether admittedly ambiguous notations in BLMIS' books and records reflect actual withdrawals of cash by BLMIS customers.  SIPA establishes a "customer property" estate for priority distribution to former customers, and each customer shares ratably in the pool of customer property "to the extent of their respective net equities. . . ."  SIPA § 78fff-2(c)(1)(B).  "Net Equity" is defined as the dollar amount of the account or accounts of a customer, to be determined by:

A)  calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date –
    i)   all securities positions of such customer (other than customer name securities reclaimed by such customer); . . . minus
B)  any indebtedness of such customer to the debtor on the filing date. . . .

SIPA § 78*lll*(11).

SIPA directs the Trustee to determine and pay each customer's net equity claim "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee."  SIPA § 78fff-2(b).  In light of the fraudulent nature of most of the entries in BLMIS' books and records, the proper method for computing net equity in this case became a hotly contested subject.

The Trustee determined that each customer's net equity should be calculated by crediting the amount of cash deposited by the customer into his BLMIS account, less the amounts withdrawn from it (the "Net Investment Method").  Conversely, BLMIS customers argued that their net equity was equal to the market value of securities listed on their final BLMIS account statements ("Last Statement Method").

The Second Circuit agreed with the Trustee.  It ruled that the Net Investment Method was "more consistent with the statutory definition of 'net equity' than any other method advocated by the parties," while the use of the Last Statement Method would have the "absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *In re BLMIS*, 654 F.3d 229, 235 (2d Cir. 2011) ("*Net Equity Decision*"), *cert. denied*, 133 S. Ct. 25 (2012).[3]  The Second Circuit further explained that the Net Investment Method was in keeping with SIPA § 78fff-2(b)'s requirement to satisfy net equity claims insofar as the amount owed is "ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." *Id.* at 237 (quoting SIPA § 78fff-2(b)).  The Last Statement Method relies on fictitious profits which were "after-the-fact constructs . . . rigged to reflect a steady and upward trajectory in good times and bad," while the Net Investment Method "relies solely on unmanipulated withdrawals and deposits and refuses to permit Madoff to arbitrarily decide who wins and who loses." *Id.* at 238 (quotation omitted).  Since the Second Circuit ruled that the Net Investment Method was the superior method in the BLMIS case "as a matter of law," it did not have to

---

[3]    The Second Circuit subsequently held that the net equity calculation should not include time-based damages such as inflation or interest.  *SIPC v. 2427 Parent Corp.* (*In re BLMIS*), 779 F.3d 74, 81, 83 (2d Cir.), *cert. denied*, 136 S. Ct. 218 (2015).

determine whether the Trustee's opinion as to the correct methodology was entitled to weight. *Id.* at 238 n. 7. The Second Circuit has since affirmed the use of the Net Investment Method to calculate the amount of actual transfers between BLMIS accounts (*i.e.*, inter-account transfers). *Sagor v. Picard* (*In re BLMIS*), No. 16-413-bk, 2017 WL 2376567, at *4 (2d Cir. June 1, 2017).

**B.    Treatment of Profit Withdrawals**

BLMIS customer statements identified several different "transaction types," and one of them was a "profit withdrawal" identified by a "PW" notation. For purposes of determining net equity, the Trustee treated profit withdrawals as cash withdrawals that reduced a customer's net equity claim. (*See Amended Motion for Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue*, dated May 19, 2015, ¶ 4 (ECF Doc. # 10017).) Several BLMIS customers objected to the reduction of their net equity claims based on profit withdrawals, and some contradicted the conclusion based on their personal knowledge of their own account histories. Accordingly, the Court established a procedure for parties to present evidence about how profit withdrawals should be treated for purpose of determining a customer's net equity. (*See Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue*, dated June 24, 2015 ("*PW Procedures Order*") (ECF Doc. # 10266).)

The Trustee intends to rely on two experts—Matthew B. Greenblatt[4] and Lisa M. Collura[5]— to demonstrate that profit withdrawals reflect actual cash withdrawals. (*See Picard Motion* at 5.) According to Greenblatt, there were 91,138 profit withdrawals[6] in BLMIS customer accounts. (Greenblatt Report at ¶¶ 5, 6, 13.) He concluded that BLMIS treated a profit withdrawal like any other withdrawal, and reduced the amount in a customer's account with each profit withdrawal. (*Id.* at ¶¶ 15, 16, 19.) Collura was tasked with reconciling the PW transactions reflected in the BLMIS customer statements with other available documentation. (Collura Report at ¶¶ 8-9.) According to her report, she was able to reconcile 51,758 of the 91,138 profit withdrawals by reviewing bank records, correspondence, other documents in customer files, and/or documents received from customers or related parties. (*Id.* at ¶ 17.) Of the 5,527 profit withdrawals occurring within ten years of the BLMIS filing date (December 11, 2008), she was able to trace 99.997% of the profit withdrawals into the customer's non-BLMIS bank account. (*Id.*)

In accordance with the *PW Procedures Order*, the Trustee moved to affirm his treatment of profit withdrawal transactions, (*see* ECF Doc. ## 10660, 10661, 13876), and objections were filed by the Chaitman Claimants, represented by Helen Chaitman, Esq. ("Chaitman"),[7] (*see* ECF Doc. # 14161), and the Blums. (*See* ECF Doc. # 14168.) In

---

[4]    *See Expert Report of Matthew B. Greenblatt, CPA/CFF, CFE Senior Managing Director FTI Consulting, Inc.*, dated July 14, 2015 ("Greenblatt Report") (ECF Doc. # 10663-2).

[5]    *See Expert Report of Lisa M. Collura, CPA, CFE, CFF*, dated July 14, 2015 ("Collura Report") (ECF Doc. # 10664-1).

[6]    Greenblatt included transactions with "CW" and "JRNL" notations as profit withdrawals in certain instances. (Greenblatt Report at ¶ 6.)

[7]    Chaitman has represented, and still represents, clients other than the Chaitman Claimants in connection with the BLMIS liquidation. She has also worked at various firms throughout her involvement

advance of the evidentiary hearing, the Trustee filed the *Picard Motion*, which is discussed immediately below, and the *Blums Motion*, which is considered at the end of this decision.

## C.    The *Picard Motion*

The Chaitman Claimants intend to call the Trustee as a witness at the PW trial. (*See Participating Claimants' Prehearing Disclosures*, dated Sept. 30, 2016, Part I (ECF Doc. # 14359-6).)  Through the *Picard Motion*, the Trustee seeks to preclude Chaitman from calling him as a trial witness.  He argues that he is relying on his experts, Lisa Collura and Matthew Greenblatt—who analyzed and reconciled BLMIS' book and records—to testify about the meaning of the PW notations.  The Trustee himself lacks personal knowledge regarding BLMIS' books and records, and any testimony he could provide at the evidentiary hearing would not be probative of the meaning of PW, or would be duplicative of the testimony of his experts.  (*Picard Motion* at 5-10.)  Instead, the Trustee argues that Chaitman included him on the witness list to harass him.  (*Id.* at 10-14.)

The Chaitman Claimants respond[8] that the Trustee's testimony is relevant to the basis of his subjective decision in 2009 to treat the PW transactions as withdrawals in computing their net equity claims.  (*Chaitman Opposition* at 1 ("It was the Trustee who made that determination in 2009, rejecting the claims of the Participating Claimants on

---

in the case.  For ease of reference, the Court will use the term "Chaitman" to refer to the attorney notwithstanding her representation of different clients and while at firms other than her current firm.

[8]    *See Participating Claimants' Memorandum of Law in Opposition to the Trustee's Motion In Limine Number 4 to Bar the Participating Claimants From Calling the Trustee as a Witness*, dated Nov. 18, 2016 ("*Chaitman Opposition*") (ECF Doc. # 14476).

the theory that the PW notations represented withdrawals by the customers. The

Participating Claimants are entitled to have, as part of the record on this issue, the

testimony of the Trustee as to the basis on which he reached that decision."); *id.* at 3

("At the Profit Withdrawal evidentiary hearing, the Participating Claimants intend to

call the Trustee to testify on at least the following issues: (a) his factual basis in 2009 for

denying the claims of the Participating Claimants; (b) the factual investigation he made

as to the appropriate treatment of PW entries; and (c) whether the Trustee's

determinations are justified."); *id.* at 5 ("Here, the Trustee's experts – hired in

connection with the Profit Withdrawal litigation in 2014 – cannot possibly testify as

[sic] the Trustee's processes in denying SIPC claims in 2009. The Trustee is the only

source of testimony as to the factual basis on which he denied SIPC claims in 2009.").)

They hypothesize that he had no basis to deny their claims, and instead, *assume* his

decision was part of a conspiracy with the Securities Investor Protection Corporation

("SIPC") to minimize SIPC's statutory obligation to advance funds to satisfy net equity

claims:

> *Let us assume*, for example, that the Trustee had no factual basis for his
> rejection of the Participating Claimants' claims and he simply charged
> them with profit withdrawals when he had good reason to know the
> debtor's books and records did not evidence the withdrawals. *Let us
> further assume* that his reason for doing this was that the Securities
> Investor Protection Corporation ("SIPC"), which pays the Trustee's
> counsel fees, wanted to save as much money as possible by paying out as
> little in SIPC insurance as it possibly could. In other words, *let us assume*
> that the Trustee denied the SIPC claims of the Participating Claimants for
> a grossly improper reason – in order to enrich himself and SIPC at the
> expense of Madoff's victims. Surely, *if those are the facts*, the record
> should encompass them.

(*See id.* at 1-2 (emphasis added).)

## DISCUSSION

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation omitted). A trial court may reserve decision on an *in limine* motion until trial, so that the motion is reviewed in the "appropriate factual context." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). A court's ruling on a motion *in limine* "is subject to change when the case unfolds," *Luce v. United States*, 469 U.S. 38, 41 (1984); even if nothing changes, a trial court may alter a prior *in limine* ruling in the exercise of sound judicial discretion. *Id.* at 41-42.

The usefulness of *in limine* motions is largely negated in bench trials. As the Ninth Circuit Court of Appeals explained:

> Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, "coals to Newcastle," asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence.

*United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir.), *cert. denied*, 556 U.S. 1252 (2009); *accord Official Comm. of Unsecured Creditors v. Isr. Disc. Bank of New York* (*In re Oak Rock Fin., LLC*), 560 B.R. 635, 638 (Bankr. E.D.N.Y. 2016) ("As this is a bench trial without a jury, the need for an advance ruling to exclude evidence has been deemed by some courts as superfluous and unnecessary.").

The PW evidentiary hearing will be heard by the Court without a jury. Although this Court agrees that the usefulness of *in limine* motions in a bench trial is limited, it concludes that the *Picard Motion* should be granted as explained immediately below.

### 1.    The *Picard Motion*

Relevant evidence is generally admissible, FED. R. EVID. 402, and evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," FED. R. EVID. 401, *i.e.*, the fact is material. The bar for relevancy under Federal Evidence Rule 401 is "very low," *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quotation omitted), and "[e]vidence should not be excluded on a motion *in limine* unless such evidence is 'clearly inadmissible on all potential grounds.'" *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (Engelmayer, J.) (quoting *Nat'l Union Fire Ins. Co.,* 937 F. Supp. at 287). Nevertheless, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," FED. R. EVID. 403, and similarly, may exercise reasonable control over the mode of presenting evidence so as to effectively determine the truth, avoid wasting time and protect witnesses from harassment or undue embarrassment. FED. R. EVID. 611.

A trial court is afforded broad discretion in its evidentiary rulings, including those made in connection with a motion *in limine*. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). As one treatise explained, "[Federal Evidence Rule 611] imposes on the trial court the duty of balancing the trial's primary function of

- 10 -

ascertaining the truth concerning the dispute between the parties against the needs of

the courts to conserve their time and to protect witnesses from harassment or undue

embarrassment at the hands of overzealous advocates." 4 MARK S. BRODIN ET AL.,

WEINSTEIN'S FEDERAL EVIDENCE § 611.02[2][a] at 611-6 (2d ed. 2017). "Restrictions on

examination and exclusion of testimony are within the discretion granted the district

court by Rule 611. To avoid repetition and irrelevant testimony, the court may limit

testimony or exclude it altogether." *Id.* § 611.02[2][b][i] at 611-28.3 to 611-29. The trial

court has "wide latitude" under Federal Evidence Rule 611 in controlling the

presentation of evidence. *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*,

467 F.3d 107, 119 (2d Cir. 2006) (quotation omitted).

    The testimony that Chaitman seeks to adduce regarding the Trustee's subjective

reason in 2009 to treat PW transactions as cash withdrawals is immaterial. The

question for trial is whether the "PW" notation refers to an actual cash withdrawal, and

not whether the Trustee had a reasonable basis in 2009 to treat PW notations as

withdrawals. If the Trustee had a reasonable basis in 2009 to treat PW notations as

withdrawals but his conclusion proves incorrect based on the trial evidence, he will lose.

Conversely, if he did not have a reasonable basis in 2009 but the evidence shows that he

was nevertheless correct, he will prevail.[9] Allowing the Chaitman Claimants to pursue a

line of inquiry into the Trustee's subjective knowledge and conclusions in 2009 will

---

[9]    Chaitman's argument implies that the Trustee could not have rationally concluded in 2009 that
PW referred to an actual withdrawal because he hired these experts in 2014. ((*Chaitman Opposition* at
5.) In fact, both experts are members of the team at FTI Consulting, Inc. hired by the Trustee's counsel
shortly after he was appointed to reconstruct BLMIS' books and records including reconciliation of all
deposits and withdrawals. (*See* Greenblatt Report at ¶ 4; Collura Report at ¶ 4.)

propel the Court and the parties into a time consuming, immaterial area that will prolong the trial without any corresponding benefit.

As to the issue that is before the Court, the Trustee lacks personal knowledge relating to the appropriate treatment of the PW notations. (*Picard Motion* at 8.) Whatever he knows is based on what his experts told him (which is presumably work product). (*Id.* at 5, 9.) It was Greenblatt and his team that reviewed each deposit and withdrawal for each BLMIS account from 1981 to the filing date, and identified a subset of 91,138 profit withdrawal transactions that are relevant to this proceeding. (Greenblatt Report at ¶ 13.) It was Collura and her team that reconciled 51,758 of the 91,138 profit withdrawals with third-party bank records or other documentation. (Collura Report at ¶ 17.) The Chaitman Claimants do not seriously suggest that the Trustee was part of either team or conducted his own forensic investigation and drew his own conclusions – and they have not even bothered to take his deposition. Like most court-appointed trustees, the Trustee lacks personal knowledge about the events that preceded his appointment, a point the Chaitman Claimants do no dispute.

Finally, although the Chaitman Claimants' protest that they do not intend to harass the Trustee, the history of this case suggests otherwise. Based on a litany of unsupported assumptions, they hope to prove that the Trustee's position is the result of a conspiracy with SIPC to take meritless legal and factual positions hostile to BLMIS customers to reduce the amount of statutory payments SIPC has had to make to customers under SIPA § 78fff-3(a).

Chaitman has advanced variations of this theory on multiple occasions to show that the Trustee is hopelessly conflicted and/or in cahoots with SIPC. For instance, Chaitman objected to the Trustee's and his counsel's first interim fee application accusing the Trustee and his attorneys of "misrepresent[ing] the law to destitute Customers who cannot afford to retain their own counsel, with the clear intent of inducing Customers to accept less in SIPC insurance than they are entitled to receive." (*See* ECF Doc. # 351 at ¶ 10.) Judge Lifland (who then presided over the BLMIS SIPA liquidation) overruled the objection finding that "there has been nothing shown that this Trustee is not acting in good faith. That is clear. There is nothing that has been shown that this Trustee is guilty of any kind of fraud or dereliction of duty . . . ." (*Tr. of Aug. 6, 2009 Hr'g* at 35:5-9 (ECF Doc. # 381).) Chaitman moved in the District Court for leave to appeal the Bankruptcy Court's fee order, advancing theories about the Trustee's purported conflict of interest. District Judge Daniels denied Chaitman's motion, and observed that her arguments all stem from her disagreement with the Trustee about the method to be utilized to compute net equity. *See SIPC v. BLMIS*, No. M 47 (GBD), 2010 WL 185102, at *1 (S.D.N.Y. Jan. 11, 2010) ("Objectants essentially argue that the Trustee is applying an incorrect methodology for net equity and is therefore underpaying some of the SIPC customers.").

Chaitman again objected, this time to the Trustee's and his counsel's second interim fee application, citing the same purported conflict of interest. (*See* ECF Doc. # 1055 at ¶ 6 ("SIPC, as the insurer of Customer accounts, is in a direct adversarial position to the Customers, putting the Trustee and [his counsel] in an untenable conflict of interest.").) Once again, Bankruptcy Judge Lifland overruled Chaitman's objection

"on basically the same ground that I have done previously. . . ." (*Tr. of Dec. 17, 2009 Hr'g* at 33:25-34:1 (ECF Doc. # 1438).)

Undaunted, Chaitman objected anew to the Trustee's and his counsel's third interim fee application asserting his conflict of interests. (*See* ECF Doc. # 2233 at 10 ("The Trustee and [his counsel] are disabled from serving because, as they have demonstrated repeatedly in the first 16 months of their service, they have a fundamental conflict of interest and are working solely to enrich SIPC at the expense of the Customers to whom they owe a fiduciary duty.").) The Court overruled the objection for a third time, stating that there was "no basis for finding that the Trustee should be found to have an appearance of a conflict of interest." (*Tr. of May 5, 2010 Hr'g* at 97:23-25 (ECF Doc. # 2267).) Chaitman moved for leave to appeal, but District Judge Scheindlin denied the motion, *SIPC v. BLMIS* (*In re BLMIS*), 2010 WL 3260074, at *5 (S.D.N.Y. Aug. 6, 2010), pointing out that the Trustee and his counsel were deemed to be disinterested under applicable SIPA provisions by the Bankruptcy Court in January 2009. *Id.*, at *4; *see also Order of Disinterestedness of Trustee and Counsel to Trustee*, dated Feb. 4, 2009 at 2 ("ORDERED, DECREED, AND ADJUDGED that the Trustee and Baker & Hostetler LLP are disinterested pursuant to the provisions of Section 78eee(b)(6) of SIPA, Bankruptcy Code Section 327(a) and Federal Rule of Bankruptcy Procedure 2014(a).") (ECF Doc. # 69). Chaitman nevertheless pressed the same objection to the Trustee's fourth interim fee application, (*see* ECF Doc. # 2943 at 10), fifth interim fee application, (*see* ECF Doc. # 3308, ¶ 18), and sixth interim fee application (*see* ECF Doc. # 4088, ¶¶ 4-9; *see also Letter*, dated May 31, 2011 (ECF Doc. # 4116)), all without success.

- 14 -

Fee application objections were not the only vehicle that Chaitman used to drive home her speculative narrative. In the *Picard v. Greiff* case, she argued that the District Court should withdraw the reference under 28 U.S.C. § 157(d) to decide whether the Trustee's receipt of compensation for liquidating BLMIS violated the defendant's due process rights under the United States Constitution. According to Chaitman, the Trustee, as a fiduciary appointed by SIPC, was acting as a judge in the cases he was commencing. (*See Defendants Memorandum of Law In Support of Motion for Mandatory Withdrawal of the Reference*, dated June 2, 2011 at 15-17 (ECF Dist. Ct. Case No. 11-cv-03775 Doc. # 1).) During the oral argument, District Judge Rakoff asked Chaitman about the basis for her allegations:

> MS. CHAITMAN: Your Honor, the basis is that I have been informed by a personal friend of [the Trustee] that he was compensated --
>
> THE COURT: Who?
>
> MS. CHAITMAN: A lawyer in New Jersey.
>
> THE COURT: Who?
>
> MS. CHAITMAN: You know, unfortunately I can't remember his name. . . .
>
> THE COURT: Did you have any other basis?
>
> MS. CHAITMAN: No. When we argued --
>
> THE COURT: So wait a minute . . . on the basis of some hearsay comment from someone who may or may not have personal knowledge, and who must be so little known to you that you can't even remember his name, you made an allegation of unethical or biased approach by [the Trustee]? That seems an awfully weak read to make such an allegation.

(*Tr. of July 28, 2011 Hr'g* at 12:2-22 (ECF Dist. Ct. Case No. 11-cv-03775 Doc. # 17).) The District Court denied Chaitman's motion on the due process issue, but granted it on others. (*See Order*, dated Sept. 15, 2011 (ECF Dist. Ct. Case No. 11-cv-03775 Doc. # 19).)

Chaitman next asserted in motions to dismiss that the Trustee's compensation arrangement denied her clients due process. According to Chaitman, the Trustee's

- 15 -

receipt of a share of his firm's legal fees constituted an improper financial stake in the

fraudulent transfer cases he commenced in the BLMIS liquidation.  (*See Defendants'*

*Omnibus Memorandum of Law In Support of Motions to Dismiss*, dated Nov. 1, 2013 at

5-7 (ECF Adv. P. No. 10-04292 Doc. # 36).)  The Court dismissed the argument as a

matter of law and held that the Trustee's and his counsel's receipt of compensation was

not a due process violation:

> Here, the Trustee is not the adjudicator of the claims he brings. He
> investigates the claims and brings litigation, but a judge decides the
> outcome.  Furthermore, although the Trustee has an interest in the fees
> awarded to his firm and paid by SIPC, neither he nor his firm have an
> interest in the outcome of any litigation he brings.

*SIPC v. BLMIS* (*In re BLMIS*), 531 B.R 439, 460 (Bankr. S.D.N.Y. 2015) ("*Omnibus*

*Decision*").  Chaitman then moved for leave to appeal, but District Judge Daniels denied

her motion because the factual sources she cited failed to support her assertion about

the Trustee's fees.  In addition, Judge Daniels noted that District Judge Rakoff had

previously expressed doubts about Chaitman's sources.  *In re BLMIS*, No. 15 Civ. 06564

(GBD), 2016 WL 690834, at *2, *2 n. 1 (S.D.N.Y. Feb. 11, 2016).

Chaitman persisted.  After her motion for leave to appeal was denied, she served

requests for interrogatories on the Trustee to obtain discovery regarding the Trustee's

compensation.  At a discovery conference, the Court explained that its ruling in the

*Omnibus Decision* resolved the due process issue as a matter of law and discovery on the

topic was therefore improper.  (*Tr. of Mar. 17, 2016 Hr'g* at 9:12-10:20 (ECF Adv. P. No.

10-04658 Doc. # 52).)  Accordingly, the Court issued a protective order consistent with

its bench ruling.  (*See* ECF Doc. # 12912.)  Chaitman moved for leave to appeal but her

motion was denied by District Judge Pauley, ruling that she had failed to establish a

"substantial ground for difference of opinion on the question of whether a SIPA [t]rustee, proceeding as a litigant in filing avoidance actions, attains a state-actor status analogous to that of a judge or prosecutor." *In re BLMIS*, Nos. 16cv2792, 16cv2804, 16cv2806, 16cv2807 (WHP), 2016 WL 3892765, at *4 (S.D.N.Y. July 14, 2016).

Chaitman has never pointed to any facts to overcome the finding of the Trustee's disinterestedness or the good faith performance of his duties, and Chaitman's baseless "assumptions" are no substitute for facts. Her line of inquiry is immaterial, will, at best, duplicate the experts' testimony, and if permitted, unnecessarily prolong the trial and harass the Trustee. Since Chaitman has not identified any other purpose for the Trustee's testimony, the *Picard Motion* is granted.

### 2.    The *Blums Motion*

The Blums' BLMIS accounts received inter-account transfers from the accounts of their now deceased parents. Their parents' account statements showed numerous PW transactions, but the Blums asserted that their parents never received profit withdrawals. (*See, e.g.*, *Deposition of Norman Blum, M.D.*, dated May 13, 2016 at 60:2-61:23 (ECF Doc. # 14359-4) & *Deposition of Joel Alan Blum*, dated May 16, 2016 at 77:20-79:5 (ECF Doc. # 14359-5).)

The crux of the *Blums Motion*, which focused on the Blums' deposition testimony, was that the Blums should not be permitted to testify as to their parents' BLMIS accounts because they lacked personal knowledge as required by FED. R. EVID. 602. (*Blums Motion* at 4-9.) The Blums countered that they would be able to lay a foundation for the testimony about their parents' accounts based on their knowledge of

their father's financial and estate planning.  (*Blums Opposition* at 7-10.)  Alternatively, they asserted that the testimony was admissible under FED. R. EVID. 406 as evidence of their father's habits.  (*Blums Opposition* at 21.)

After the April 18, 2017 hearing, counsel for the Blums informed the Court that the Blums would testify in person.  (*See Letter*, dated May 4, 2017 (EDF Doc. # 15957).)  Accordingly, the Court will defer ruling on the *Blums Motion*.  *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287.

## CONCLUSION

For the reasons stated, the *Picard Motion* is granted, and a ruling on the *Blums Motion* is deferred until trial.  Settle order on notice.

Dated: New York, New York
       June 15, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge