**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date: July 26, 2017
Hearing Time: 10:00 AM (EST)
Objection Deadline: July 6, 2017

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |

## TRUSTEE'S MOTION AND MEMORANDUM OF LAW
## TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF
## <u>CLAIMANTS HOLDING INTERESTS IN THE LAMBETH COMPANY</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    LAMBETH'S STRUCTURE, BLMIS ACCOUNT, AND OBJECTING
        CLAIMANTS' CLAIMS ................................................................................. 3

        1.    The Lambeth Co. ................................................................................. 4

        2.    The BLMIS Account Records ............................................................... 7

        3.    The Claims ........................................................................................ 8

    C.    THE CUSTOMER DECISIONS ..................................................................... 8

ARGUMENT ...................................................................................................... 10

CONCLUSION ................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
216 B.R. 719 (Bankr. S.D.N.Y. 1998) .....................................................................11

*Appleton v. First Nat'l Bank of Ohio*,
62 F.3d 791 (6th Cir. 1995) .................................................................................11

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) .....................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011) ..................................................................2, 8, 11, 12

*Crocker Nat'l Bank v. Perroton*,
255 Cal. Rptr. 794 (Cal. App. 1st Dist. 1989) .........................................................13

*Evans v. Galardi*,
546 P.2d 313 (Cal. 1976) ....................................................................................13

*Everest Investors 8 v. McNeil Partners*,
8 Cal. Rptr. 31 (Cal. 4th Dist. 2003) .....................................................................13

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) ...................................................................16

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013) ......................................................................... *passim*

*In re Lehman Bros., Inc.*,
791 F.3d 277 (2d Cir. 2015) ...............................................................................11

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
277 B.R. 520 (Bankr. S.D.N.Y. 2002) ...............................................................3, 16

*Picard v. Estate of Stanley Chais*,
Adv. No. 09-01172 (Bankr. S.D.N.Y. Oct. 28, 2016) ........................................1, 4, 7

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
779 F.3d 74 (2d Cir. 2015) .............................................................................13, 14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ...................................................................16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ........................................................................10, 12, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*,
    Adv. P. No. 08-01789 (SMB), 2017 WL 1323473 (Bankr. S.D.N.Y. Apr. 10, 2017) ..............................................................................................................................10

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976) ........................................................................... *passim*

*SEC v. Madoff*,
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006).........................................................................................11, 16

**Statutes**

15 U.S.C. § 78aaa *et seq.* .............................................................................................................1

15 U.S.C. § 78eee ........................................................................................................................2

15 U.S.C. § 78fff .....................................................................................................................3, 14

15 U.S.C. § 78*lll*(2).........................................................................................................2, 3, 11, 14

CAL. CIV. PROC. CODE ANN. § 688 ...........................................................................................13

CAL. CORP. CODE ANN. § 15901.04 .........................................................................................13

CAL. CORP. CODE ANN. § 15912.06 .........................................................................................13

**Rules**

FED. R. CIV. P. 36(a)(3)...........................................................................................................5, 14

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ....................................................................9

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L.

Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the

"Motion") to affirm the denial of thirty-nine claims filed by claimants (the "Objecting

Claimants") who objected to the Trustee's determinations and who were, at most, limited

partners in a BLMIS account holder, The Lambeth Co. ("Lambeth").  The Objecting Claimants

are specifically identified on Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal

Declaration") filed herewith.  This Motion is based upon the law set forth below as well as the

facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie

Ackerman ("Ackerman Declaration").[2]

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding apart from the

customer status of the account holder, despite the fact that they did not have accounts in their

names and had no direct financial relationship with BLMIS.  Instead, they each invested in a

limited partnership or partnership that, in turn, directly or indirectly, invested in Lambeth which

had a BLMIS account, and invested its assets with BLMIS.  The case is governed by the Second

Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] The Motion does not seek to overrule any claim or right to payment Objecting Claimants may or may not have to the restitution fund to be created by the Attorney General of the State of California to resolve claims of limited partners and other investors against the Lambeth Company pursuant to the settlement agreements entered in relation to the Trustee's avoidance action against the Estate of Stanley Chais and other defendants.  *See Picard v. Estate of Stanley Chais*, Adv. No. 09-01172 (Bankr. S.D.N.Y. Oct. 28, 2016) (ECF Nos. 152-2, 152-3, 152-4); *see also Picard v. Hall*, Adv. No. 12-01001 (Bankr. S.D.N.Y. Oct. 28, 2016) (ECF Nos. 62-2, 62-3, 62-4).  Rather, it seeks to resolve only the Objecting Claimants' claims and objections to the Trustee's claims determinations that they are not customers as that term is defined by SIPA.

F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d

Cir. 1976), and the many related decisions in this SIPA proceeding, referenced in Section C

*infra*, involving the question of who is a "customer" under SIPA.  The current Motion seeks to

apply these decisions to the Objecting Claimants through entry of an order affirming the

Trustee's denial of their claims as listed in Exhibit 2 to the Sehgal Declaration, disallowing their

claims, and overruling the related claims objections on the grounds that the Objecting Claimants

are not "customers" as such term is used at SIPA § 78*lll*(2).[3]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).  On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to the fullest extent possible to a broker's customers, assessing

---

[3] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

claims, and liquidating other assets of the firm for the benefit of the estate and its creditors,
including claimants to the customer fund. A SIPA trustee has the general powers of a
bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory
framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that
"customers," as defined in SIPA § 78lll(2), share pro rata in "customer property," SIPA §
78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11). For each customer
with a valid net equity claim, if the customer's share of customer property does not make the
customer whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net
equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the
customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In
re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-
established in the Second Circuit that a claimant bears the burden of proving that he or she is a
'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered. ECF No. 12.
Pursuant to that order, the Trustee determines claims eligible for customer protection under
SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection
with this Court within a certain time period, after which the Trustee requests a hearing date for
the objection and notifies the objecting claimant thereof. *Id.*

### B.    LAMBETH'S STRUCTURE, BLMIS ACCOUNT, AND OBJECTING CLAIMANTS' CLAIMS

The Objecting Claimants each invested in one of several entities that then invested in
Lambeth,[4] which in turn invested with BLMIS. The Objecting Claimants submitted thirty-nine

---

[4] The Objecting Claimants each invested in one of eight entities that invested either directly or indirectly with
Lambeth. *See, e.g.*, Sehgal Decl. Ex. 11, MWPTAP00562684. None of the Objecting Claimants claim to have
invested directly in BLMIS.

3

(39) claims, and filed thirty-three (33) related docketed objections to the Trustee's denials of

those claims.  No direct claim on behalf of Lambeth was filed with the Trustee.

### 1.    The Lambeth Co.

Lambeth was originally formed on November 18, 1970 as a California Limited

Partnership and was registered as such with the State of California on December 2, 1970.[5]

Ackerman Decl., Ex. 11, SECSAC0002758-63.  According to the Amended Certificate of

Limited Partnership, the purpose of Lambeth was to "conduct . . . the business of arbitrage and

related transactions."  Ackerman Decl., Ex. 11, SECSAC0002714.  The late Stanley Chais was

identified as the "sole General Partner" of Lambeth at the time of its formation and in subsequent

amended limited partnership agreements, and had the authority to act on behalf of Lambeth.[6]  *Id.*

at SECSAC0002732, 63.

In his capacity as General Partner, Stanley Chais alone interacted with BLMIS on behalf

of BLMIS Account 1L0002, held in the name of "The Lambeth Co." (the "Account").  Sehgal

Decl., Ex. 4, AMF000123978-9.  According to the BLMIS books and records relating to the

Account, all account statements and documentation on behalf of Lambeth were addressed to

Stanley Chais or to Lambeth "c/o Stanley Chais."  Sehgal Decl., Ex. 4, AMF000123979-80; *see

also id.*, Ex. 13.  Accordingly, all correspondence in the BLMIS customer file for the Account,

including withdrawal requests and tax forms, were signed by Stanley Chais.  *See, e.g.*, Sehgal

Decl. Ex. 4, AMF00124060-62, AMF00124043-055.  None of the Objecting Claimants or the

limited partnerships or partnerships they invested in appear in the BLMIS books and records

---

[5] The limited partnership agreement was updated in 1971, 1972 and 1979.  *See* Ackerman Decl., Ex. 11.  A search of
the California business entity database did not return a current registration for The Lambeth Company.  *See*
CALIFORNIA SECRETARY OF STATE, BUSINESS ENTITIES (BE) ONLINE SERVICES, https://businesssearch.sos.ca.gov/
(last visited June 12, 2017).

[6] Stanley Chais passed away in 2010, while the *Picard v. Chais* adversary proceeding (Adv. Pro. No. 09-01172) was
pending.  The action continued against, *inter alia*, the Estate of Stanley Chais and Lambeth.

relating to the Account. *See generally id.* In fact, many of the Objecting claimants were unaware of Lambeth's investment with BLMIS. *See, e.g.*, Sehgal Decl. Exs. 5 at MWPTAP00236021, 6 at MWPTAP00192965.

The Trustee served discovery requests on each of the Objecting Claimants. Five Objecting Claimants responded to the Trustee's requests for admissions and interrogatories; and four of the five also produced documents. Ackerman Decl. ¶¶ 14-17, Exs. 7-10. By failing to respond to the requests for admissions, the remaining Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). Based on their responses, both deemed and actual, all but one of the Objecting Claimants admitted that they did not have an account in their names at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, that all property acquired by the account holder was owned by and in the name of the account holder, and that their only relationship to BLMIS existed by way of their relationship to Lambeth. *See* Ackerman Decl. ¶¶ 7-13, Exs. 1-6. The remaining respondent, Naomi Z. Newman, denied several of the requests for admissions indicating that she did, in fact, entrust funds or securities to and had a direct relationship with BLMIS. Ackerman Decl., Ex. 4, MCMDR_00000559-561.[7] Ms. Newman's responses to the Trustee's request for interrogatories and the documents she produced do not, however, support her denials.

Specifically, Ms. Newman's documents confirm that her relationship was with Bottlebrush Investments, L.P. ("Bottlebrush"), a limited partner in Lambeth, not Lambeth and

---

[7] Specifically Ms. Newman denied that: she never deposited securities directly with BLMIS, never made a payment of cash directly to BLMIS for credit to an account in her name, never entered into any contracts in her name with BLMIS, and she further denied that all property acquired by the accountholder, including the assets at BLMIS, were owned by and in the name of the accountholder. Ackerman Decl., Ex. 4, ¶¶ 4, 5, 10, 14.

certainly not BLMIS.  Ackerman Decl., Ex. 8, MCMDP_00012285.  These documents identify

only her investment in and relationship with Bottlebrush, including statements from Bottlebrush,

*id.* at MCMDP_00012287, 12292, checks made payable to Bottlebrush, *id.* at

MCMDP_00012289, and requests for withdrawals sent to Bottlebrush's general partner, *id.* at

MCMDP_00012294.  The documents produced by Ms. Newman are devoid of any references to

or communications with BLMIS.  Further, in her responses to the Trustee's requests for

interrogatories, Ms. Newman identified Stanley Chais as the sole individual who received direct

payments from BLMIS and who had a direct understanding with BLMIS regarding the

investment.  Ackerman Decl., Ex. 4, MCMDR_00000563-565.

Similarly, the documents produced by the additional respondents confirm that each of

their relationships was not with BLMIS.  For example, Ellen Diamond Waldman identified

Stanley Chais as the individual who had control over the Account, who received direct payments

from BLMIS in connection with the Account, and as the individual who had a direct

understanding or agreement with BLMIS with respect to the accountholder's assets or

investments.  Ackerman Decl., Ex. 2, MCMDR_00000538.  Each produced documents

confirming that their relationship was with an entity other than Lambeth, including investment

statements, Ackerman Decl., Ex. 9, MCMDP_00012434, IRS form K-1s, Ackerman Decl., Ex. 8,

MCMDP_00012378-81, and cancelled checks made payable to the respective limited

partnership, Ackerman Decl., Ex. 10, MCMDP_00012280, Ackerman Decl., Ex. 5,

MCMDP_00012449-12451, 52.

A claim was not filed on behalf of Lambeth. The amount of money that Lambeth withdrew from Account 1L0002 was greater than the amount that was deposited, making the account holder a "net winner."[8]

## 2.    The BLMIS Account Records

The Account was held in the name of Lambeth and the Objecting Claimants, including those who responded to the Trustee's discovery requests, are not identified in the BLMIS books and records relating to the Account. Sehgal Decl. ¶¶ 15, 24, Ex. 4. The books and records of BLMIS reflect money deposited and withdrawn by and on behalf of Lambeth, the account holder, and not by the Objecting Claimants individually. *See id.*

Because the Account was maintained at BLMIS on behalf of Lambeth, and the deposits into and withdrawals from the Account were on behalf of Lambeth, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate to Lambeth. The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to the Account. They also do not show what amounts individual Objecting Claimants invested in, or withdrew from the Account. *See id.* This is particularly true here, where the Objecting Claimants have admitted that their investments were with an entity that in turn invested with Lambeth making their claimed customer status even more attenuated. *See, e.g.*, Sehgal Decl. Exs. 5-12. Therefore, it was Stanley Chais as the general partner, who had the right to demand, on behalf of Lambeth, return of the property entrusted to BLMIS for the Account, and Lambeth that would be entitled to a customer claim to the extent of its net equity.

---

[8] The Account 1L0002 was the subject account in the *Picard v. Chais* adversary proceeding filed by the Trustee. *See Picard v. Estate of Stanley Chais, et al.*, Adv. No. 09-01172(SMB). *See supra* note 2.

3.      **The Claims**

The Objecting Claimants, the thirty-nine (39) claims filed by them, and the thirty-three

(33) docketed objections to the determination of those claims, are specifically identified in

Exhibits 2 and 3 to the Sehgal Declaration.  Sehgal Decl. ¶¶ 9-12, Exs. 1-3.  The Trustee denied

their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS.

Sehgal Decl. ¶ 11.  This Motion addresses all objections to the determinations of the specified

claims by Objecting Claimants who are identified in Exhibit 2 of the Sehgal Declaration.

Since receiving the thirty-three (33) docketed objections to the claims determinations, the

Trustee served discovery requests on each of the Objecting Claimants seeking to determine their

basis for claiming customer status, and inquiring into deposits, payments, communications,

account openings, and their relationship with the account holder.  Five of the Objecting

Claimants responded.  *See* Ackerman Decl. ¶ 5.

C.      <u>**THE CUSTOMER DECISIONS**</u>

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held

interests in a limited partnership that in turn invested partnership funds with BLMIS via the

partnership's own BLMIS account "never entrusted their cash or securities to BLMIS and, thus,

fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent.  708

F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  The Second

Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow

interpretation of the SIPA's provisions."  *Kruse*, 708 F.3d at 426 (citations omitted).  Because

the money sent to BLMIS belonged to the accountholders, not to the individual claimants, the

claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status—

entrustment of their own cash or securities to BLMIS.  *Kruse*, 708 F.3d at 426-27 ("[A] claimant

will not be entitled to customer protection under SIPA unless the debtor actually receives the

8

claimant's cash or securities; the debtor must actually have come into possession or control.")
(citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)).

The Second Circuit also found that the individual claimants did not exhibit other indicia
of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not
exert any control over the accounts at issue and that they were not reflected in BLMIS records.
*Kruse*, 708 F.3d at 426-27.  Indicia of customer status include: (i) a direct financial relationship
with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities
accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v)
identification of the alleged customer in BLMIS's books and records.  *Id.* (citing *Sec. Inv'r Prot.
Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan, Kennedy*").
Thus, without entrustment of assets to BLMIS and absent any evidence of any of the indicia of
customer status, the Second Circuit held that the objecting claimants failed to sustain their
burden of proving that they are customers of BLMIS.

After several similar decisions, on February 25, 2015, this Court read into the record a
decision applying *Kruse* and *Morgan, Kennedy*, granting the Trustee's Motion And
Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In
S&P or P&S Associates, General Partnerships.  ECF No. 9506 at 30 ("*S&P Decision*").  This
Court explained that the indicia of customer status are: (i) a direct financial relationship with
BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities
accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v)
identification of the alleged customer in BLMIS's books and records.  The Court held that the
objecting partners failed to sustain their burden of proving that they are customers, instead they
invested their assets with the partnerships.

Since *Kruse*, and including the *S&P Decision*, there have been seventeen decisions in this

proceeding dealing with whether investors in BLMIS accountholders could be treated as

"customers" under SIPA when those investors did not themselves have individual accounts with

BLMIS; all of the decisions said they could not.[9]  *See Sec. Inv'r Prot. Corp. v. Bernard L.*

*Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y.

2014) (the "*ERISA Claimant Decision*") (noting that prior decisions established that the burden is

on the claimant to establish that he is a "customer" entitled to SIPA protection, and that such

showing is not easily met); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re*

*Bernard L. Madoff)*, Adv. P. No. 08-01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y.

Apr. 10, 2017).

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

---

[9] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding
Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund,
L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The
Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015);
Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No.
10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The
Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund,
And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP,
Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third
Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No.
13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life
Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the
Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS
Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners,
Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No.
14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates
and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited
Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy
in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824,
15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27,
2017).  An eighteenth motion, Trustee's Motion to Affirm His Determinations Denying Claims of Claimants
Holding Interests in Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint
Tenancy, was filed on May 19, 2017 and is currently pending before this Court with a scheduled hearing date of
June 28, 2017.  ECF No. 16031.

dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer," an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities.

In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, failed to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit further upheld this principle in *In re Lehman Bros., Inc.*, concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 791 F.3d 277, 282 (2d Cir. 2015) (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236).

The Objecting Claimants' asserted interests in Lambeth based on their investments in the respective limited partnership or partnership do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. This is especially true here where the Objecting Claimants each invested in an entity that subsequently invested in the account holder. In *Morgan Kennedy*,

11

the Second Circuit rejected the argument that the beneficial owners of the account holder were

the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the

account holder, not the beneficiaries; (2) the securities account with the debtor was in the name

of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to

entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the

beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in

*Morgan Kennedy* and *Kruse*, and their investments in a limited partner or partner of the account

holder do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*.

*S&P Decision* at 30.  The Objecting Claimants entrusted their money to an entity that then

entrusted *its* assets to the account holder, not to BLMIS.  The Objecting Claimants lacked a

direct financial relationship with BLMIS on their own behalf.  The money entrusted to BLMIS

was the property of Lambeth, not the Objecting Claimants and not the limited partnerships into

which the Objecting Claimants invested.  Further, the Account was in the name of Lambeth, not

in the names of Objecting Claimants.

The individual financial interests of the Objecting Claimants were not identified in or

identifiable from BLMIS' books and records relating to the Account.  Only Lambeth, not the

Objecting Claimants, and not the limited partnerships or partnerships they each invested in,

entrusted its assets to BLMIS.  The Objecting Claimants thus fail to satisfy this "critical aspect of

the 'customer' definition."  *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec.

LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169.  Whether the

Objecting Claimants intended Lambeth to invest with BLMIS is irrelevant under SIPA.  *See

Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.  Because a limited

12

partnership is an entity distinct from its partners, the funds that were ultimately contributed to

Lambeth, and anything that Lambeth purchased with those funds, belongs to Lambeth—not the

Objecting Claimants.  CAL. CORP. CODE ANN. § 15901.04 (West).[10]  Like the objecting claimants

dealt with by prior customer decisions, the Objecting Claimants do not individually own the

assets that Lambeth invested with BLMIS.  Instead, the assets are collectively owned by

Lambeth.  It was Lambeth, and not the Objecting Claimants, which entrusted assets to BLMIS

for the purpose of purchasing securities.  Thus, it was Lambeth, through its general partner,

which had the right to direct the investment of those assets and to withdraw property from its

Account on its behalf.  *Kruse*, 708 F.3d at 427.  Lambeth, and not the Objecting Claimants, was

the customer for the Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual

Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net

equity.  The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

the return of customer property" by "protecting the custody function of brokers."  *Sec. Inv'r*

*Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d

Cir. 2015) (finding impermissible the application of interest or time-based damages to customer

claims under SIPA).  Customers share in the fund of customer property ratably, according to

each customer's "net equity."  *Id*. at 77, 81.  The definition of net equity is limited by the

fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash

---

[10] Although the Uniform Limited Partnership Act of 2008 repealed the prior partnership law for all limited partnerships formed on or after January 1, 2008, Lambeth was formed in 1970, and thus is unaffected by the enactment. *See* CAL. CORP. CODE ANN. § 15912.06 (discussing the application of Uniform Limited Partnership Act of 2008 to limited partnerships formed prior to the statute's effective date).  As with the current Act, under the Act's predecessor, a "limited partner has no interest in the partnership property by virtue of his status as a limited partner." *Evans v. Galardi*, 546 P.2d 313, 319 (Cal. 1976) (citing CAL. CIV. PROC. CODE ANN. § 688 (West)); *see also Everest Investors 8 v. McNeil Partners,* 8 Cal. Rptr. 31, 40 (Cal. 4th Dist. 2003); *Crocker Nat'l Bank v. Perroton*, 255 Cal. Rptr. 794, 797 (Cal. App. 1st Dist. 1989).

or in actual securities. *Id*. at 80; *see also* SIPA § 78fff-2(b)(requiring the Trustee to discharge

the obligations of the debtor to customers with valid claims "insofar as such obligations are

ascertainable from the books and records of the debtor or are otherwise established to the

satisfaction of the trustee).[11]   The BLMIS books and records relating to the Account show that

the Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their

own behalf, and none appear in those books and records.  Sehgal Decl. ¶¶ 15, 24, Ex. 4.  The

Objecting Claimants accordingly have no net equity and are not "customers" within the meaning

of SIPA.

        Each of the Objecting Claimants was served with requests for admission, interrogatories,

and requests for production.  Only five of the Objecting Claimants responded.  By failing to

respond to the requests for admissions, the remaining Objecting Claimants admitted them.  FED.

R. CIV. P. 36(a)(3).  Other than Naomi Newman's, the admissions, both deemed and actual, show

that Objecting Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria

and that their claims of "customer" status are baseless.  With the exception of Naomi Newman,

they admitted that: (i) the relevant Account was not titled in their name;[12] (ii) that they never

received investment statements or tax statements in their names from BLMIS;[13] (iii) that they

never paid cash directly to BLMIS for credit to an account in their names;[14] (iv) never deposited

securities directly with BLMIS;[15] (v) that they never withdrew or received funds directly from

---

[11] SIPA §78*lll*(11) sets forth the definition of "net equity" as "the dollar amount of the account or accounts of a customer," and net equity is to be "determined by . . . [c]alculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date . . . all securities positions of such customer."

[12] Ackerman Decl., Exs. 1-6, ¶ 1.

[13] *Id.* ¶¶ 8, 9.

[14] Ackerman Decl., Exs. 1, ¶ 4; 2-6, ¶ 5.

[15] Ackerman Decl., Exs. 1, ¶ 5; 2-6, ¶ 4.

BLMIS;[16] (vi) that their only relationship to BLMIS existed by way of their relationship to the

account holder;[17] (vii) that they never entered into any contracts in their names with BLMIS;[18]

and (viii) that they did not have any control, investment discretion or decision-making power

over any investment assets at BLMIS.[19]  Likewise, the documents produced by the Objecting

Claimants in response to the Trustee's discovery requests confirm that their relationship was not

with BLMIS, but rather with the individual limited partnership with which they each invested.

Although Naomi Newman denied four of the requests for admission: that she never paid

cash directly to BLMIS for credit to an account in her name;[20] never deposited securities directly

with BLMIS;[21] never entered into any contracts in her  name with BLMIS;[22] and that the

property owned by the partnership belonged to the partnership,[23] her responses to the Trustee's

requests for interrogatories and the documents she produced do not support her claim to

customer status.  Ackerman Decl., Ex. 4, MCMDR_00000563-65.  She provided no documents

evidencing any payments by her directly to BLMIS for deposit into an account in her name and

no documents evidencing that she entered into any contract or agreement with BLMIS.  Instead,

it is clear from her interrogatory responses that Stanley Chais controlled the Account, received

direct payments from BLMIS and was the only individual with an understanding of the terms of

Lambeth's relationship with BLMIS, not Ms. Newman.  *Id.*  Likewise, the documents she

produced confirm that her relationship was not with BLMIS or Lambeth, but with Bottlebrush,

---

[16] Ackerman Decl., Exs. 1-6, ¶ 6.

[17] *Id.* ¶ 11.

[18] *Id.* ¶ 10.

[19] *Id.* ¶ 12.

[20] Ackerman Decl., Ex. 4, ¶ 5.

[21] *Id.* ¶ 4.

[22] *Id.* ¶ 10.

[23] *Id.* ¶ 14.

and she entrusted her assets directly to Bottlebrush alone.  Ackerman Decl., Ex. 8,

MCMDP_00012289, MCMDP_00012294.

    As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status

support a narrow interpretation of the SIPA's provisions."  *Kruse*, 708 F.3d at 426 (quoting *In re*

*New Times Sec. Servs., Inc.*, 463 F.3d at 127).  Customer status under SIPA is narrowly

construed and is the burden of the claimant to establish.  *See ERISA Claimant Decision*, 515 B.R.

at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. at 294 (citing *In re Klein, Maus & Shire,*

*Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he

is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also*

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y.

2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving

that he or she is a 'customer' under SIPA.").  The Objecting Claimants have not met this burden.

Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' thirty-nine claims, overrule the Objecting Claimants' thirty-three docketed objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
         June 15, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*