# EXHIBIT O

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In the Matters of:

5

6   SECURITIES INVESTOR PROTECTION

7   CORPORATION,

8                 Plaintiff,

9          v.                  Adv. Case No. 08-01789-smb

10  BERNARD L. MADOFF INVESTMENT

11  SECURITIES, LLC, ET AL,

12                Defendants.

13  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14  IRVING H. PICARD, TRUSTEE FOR THE

15  LIQUIDATION OF BERNARD L. MADOFF

16  INVESTMENT SECURITIES, LLC, ET AL,

17                Plaintiff,

18         v.                   Adv. Case No. 10-04898-smb

19  SAREN-LAWRENCE

20                Defendant.

21  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22

23

24

25

Page 2

1    IRVING H. PICARD, TRUSTEE FOR THE

2    LIQUIDATION OF BERNARD L. MADOFF

3    INVESTMENT SECURITIES, LLC, ET AL,

4                  Plaintiff,

5          v.                  Adv. Case No. 10-04946-smb

6    GOLDENBERG,

7                  Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    IRVING H. PICARD, TRUSTEE FOR THE

10   LIQUIDATION OF BERNARD L. MADOFF

11   INVESTMENT SECURITIES, LLC, ET AL,

12                  Plaintiff,

13         v.                  Adv. Case No. 11-02760-smb

14   ABN AMRO BANK N.V.,

15                  Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - x

17   IRVING H. PICARD, TRUSTEE FOR THE

18   LIQUIDATION OF BERNARD L. MADOFF

19   INVESTMENT SECURITIES, LLC, ET AL,

20                  Plaintiff,

21         v.                  Adv. Case No. 10-04377-smb

22   NELSON, ET AL,

23                  Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 3

1    IRVING H. PICARD, TRUSTEE FOR THE

2    LIQUIDATION OF BERNARD L. MADOFF

3    INVESTMENT SECURITIES, LLC, ET AL,

4                  Plaintiff,

5           v.                  Adv. Case No. 10-04658-smb

6    NELSON,

7                  Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    IRVING H. PICARD, TRUSTEE FOR THE

10   LIQUIDATION OF BERNARD L. MADOFF

11   INVESTMENT SECURITIES, LLC, ET AL,

12                  Plaintiff,

13          v.                  Adv. Case No. 10-04728-smb

14   DIGIULIAN,

15                  Defendant.

16   - - - - - - - - - - - - - - - - - - - - - - - - - x

17

18                  U.S. Bankruptcy Court

19                  One Bowling Green

20                  New York, NY

21

22                  May 31, 2017

23                  10:40 AM

24

25

Page 4

1    B E F O R E :

2    HON STUART M. BERNSTEIN

3    U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Hearing re:  Discovery Conference re Subpoenas to Depose

2    BLMIS Employees

3

4    Hearing re:  Discovery Conference to Request to Set Single

5    Rebuttal Expert Report Deadline

6

7    Hearing re:  Discovery Conference re Application of

8    Discovery Arbitrator's Orders

9

10   Hearing re:  Adversary proceeding: 10-04898-smb Irving H.

11   Picard, Trustee for the Liquidation of B v. Saren-Lawrence.

12   Pre-Trial Conference

13

14   Hearing re:  Adversary proceeding: 10-04946-smb Irving R.

15   Picard, Trustee for the Liquidation of B v. Goldenberg.

16   Pre-Trial Conference

17

18   Hearing re:  Adversary proceeding: 11-02760-smb Irving H.

19   Picard, Trustee for the Liquidation of B v. ABN AMRO BANK

20   N.V.  Conference re Status of Memorandum Decision Denying

21   Certification

22

23   Hearing re:  Adversary proceeding: 10-04377-smb Irving H.

24   Picard, Trustee for the Liquidation of B v. Nelson, et al.

25   Pre-Trial Conference

Page 6

1    Hearing re:  Adversary proceeding: 10-04658-smb Irving H.

2    Picard, Trustee for the Liquidation of B v. Nelson, et al.

3    Pre-Trial Conference

4

5    Hearing re:  Adversary proceeding: 10-04728-smb Irving H.

6    Picard, Trustee for the Liquidation of B v. Digiulian.

7    Cross-Motion to Dismiss

8

9    Hearing re:  Adversary proceeding: 10-04728-smb

10   Motion for Substitution of Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Tracey Williams, Nicole Yawn

```
 1   A P P E A R A N C E S :

 2   BAKER HOSTETLER

 3        Attorneys for Trustee, Irving H. Picard

 4        45 Rockefeller Plaza

 5        New York, NY 10111-0100

 6

 7   BY:  DAVID SHEEHAN, ESQ.

 8        EDWARD J. JACOBS, ESQ.

 9        STACY DASARO, ESQ.

10

11   BAKER HOSTETLER

12        Attorneys for Trustee, Irving H. Picard

13        811 Main Street

14        Suite 1100

15        Houston, TX 77002-6111

16

17   BY:  DEAN D. HUNT, ESQ.

18        FARRELL A. HOCHMUTH, ESQ.

19

20

21

22

23

24

25
```

Page 8

1    A P P E A R A N C E S :   (Contd.)

2    BAKER HOSTETLER

3         Attorney for Trustee, Irving H. Picard

4         Capitol Square, Suite 2100

5         65 East State Street

6         Columbus, OH   43215

7

8    BY:  CATHERINE E. WOLTERING, ESQ.

9

10   CHAITMAN LLP

11        Attorney for Defendants Digiulian, Nelson and

12        Saren Lawrence

13        465 Park Avenue

14        New York, NY   10022

15

16   BY:  HELEN DAVIS CHAITMAN, ESQ.

17

18   ALLEN & OVERY

19        Attorney for Defendant ABN AMRO BANK N.V.

20        1221 Avenue of the Americas

21        New York, NY   10020

22

23   BY:  MICHAEL S. FELDBERG, ESQ.

24

25

1    A P P E A R A N C E S :   (Contd.)

2

3    MILBERG LLP

4         Attorney for Defendant Goldenberg

5         One Pennsylvania Plaza

6         New York, NY   10119

7

8    BY:   J. BIRT REYNOLDS, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  I apologize for the

3      lateness.  Madoff.

4              MR. JACOBS:  Good morning, Your Honor, it's Edward

5      Jacobs for the trustee.  We have a number of matters on the

6      agenda for today.

7              THE COURT:  Well, we can deal with the ones that

8      involve Ms. Chaitman, so then she can get out of here.

9              MR. JACOBS:  Okay.

10             MS. CHAITMAN:  I think most of these are my

11     motions actually, Your Honor.

12             THE COURT:  Well, they're conferences, I guess.

13     But go ahead, if you want.

14             MR. JACOBS:  Your Honor, we're here today asking

15     for three forms of relief on various discovery disputes that

16     we have with Ms. Chaitman.  The question before the Court

17     today is whether at this juncture, seven years into these

18     cases, three to five into discovery, we are going to

19     continue to expand the scope of discovery or if we should be

20     narrowing it in an effort to move these cases forward and

21     wrap them up.

22             THE COURT:  Okay, but why don't we deal with the

23     specific -- the three specific issues --

24             MR. JACOBS:  Sure.

25             THE COURT:  -- that have been raised.

1           MR. JACOBS:  The first issue, Your Honor, is our

2    --

3           MS. CHAITMAN:  Your Honor, if I may, may I --

4    since I asked for --

5           THE COURT:  Yeah, let her go -- why don't we start

6    with the single rebuttal expert bit.

7           MS. CHAITMAN:  Sure.  If I could just set this in

8    context, Your Honor.  When the trustee started the adversary

9    proceedings, he announced to all the defendants that all of

10   the documents they could possibly want were in the e-data

11   room and he then produced, for apparently a fee of over $30

12   million, the report of Bruce Dubinsky, which was touted as

13   the be-all-and-end-all on the Madoff fraud.  However, it

14   became apparent that the trustee never gave Mr. Dubinsky any

15   of the trading records that predated 1992.  And that became

16   clear when we deposed Mr. Madoff and Mr. Madoff totally

17   destroyed the Dubinsky report with respect to the 1980s

18   trading.  It's really shocking, it was shocking, Your

19   Honor --

20           THE COURT:  I read it.

21           MS. CHAITMAN:  Okay, to see the mistakes that Mr.

22   Dubinsky made.  And --

23           THE COURT:  Let's talk about the single -- let's

24   talk about the issues that you've raised --

25           MS. CHAITMAN:  Okay.

Page 12

1           THE COURT:  -- I'm familiar with the background.

2           MS. CHAITMAN:  Okay.  So when I was before you on

3    May 17th, 2016 on my motion to compel the trustee to produce

4    documents to us and other issues, Your Honor said to the

5    trustee and I quote -- well, you said in court, "If the

6    trustee has additional documents, he's got to supplement the

7    disclosure or the production, which he does by adding them

8    to the data room."  The trustee completely ignored what you

9    said.

10           THE COURT:  What does this have to do with your

11   request for a single date for an expert deadline?

12           MS. CHAITMAN:  Because the -- every -- the

13   discovery is ongoing, until we get to the truth, which the

14   trustee has deliberately concealed, we are unable to get --

15           THE COURT:  Well, let's stop with the

16   recriminations and all that.  You want a single discovery

17   deadline or a single deadline for expert reports, right?

18           MS. CHAITMAN:  Right, because those expert reports

19   are going to be based upon the discovery that we're now

20   getting.  The trustee -- Magistrate Judge Moss ordered the

21   trustee --

22           THE COURT:  What is the deadline that you are

23   proposing?

24           MS. CHAITMAN:  There are different deadlines --

25           THE COURT:  But you're asking for single one.  So

Page 13

1    what triggers the deadline, that's what --

2            MS. CHAITMAN:  What triggers the deadline is -- we

3    now I believe have April 27th, I believe, of 2017 was the

4    last production by the trustee, I hope that that concludes

5    what they have, I hope that they haven't held anything back,

6    but we now are trying to go through those documents.  I

7    asked the trustee to put them in the e-data room, as Your

8    Honor had ordered them to do; they've refused to put them in

9    the e-data room --

10           THE COURT:  Ms. Chaitman, what is the date -- or

11   the triggering event that you're proposing?

12           MS. CHAITMAN:  The triggering event is our ability

13   to question Mr. Madoff and the Madoff traders, whom we've

14   subpoenaed, about the complete body of trading records.  And

15   I can't give you the exact date, because I don't know how

16   long that will take.

17           I need to subpoena -- we've subpoenaed ten

18   witnesses, we need to continue Mr. Madoff's deposition --

19           THE COURT:  But my understanding is that none of

20   the witnesses worked at BLMIS prior to 2000, right?  So what

21   are they going to know about trading records prior to that?

22           MS. CHAITMAN:  Your Honor, it's not simply the

23   trading records from the 1980s.  We have evidence now that

24   Mr. Madoff -- and he testified to this -- took $6 billion of

25   money from the 703 account, investors' money, and maintained

Page 14

1    a portfolio of Treasury securities, some of which at a

2    minimum appeared on the customers' statements.  So --

3              THE COURT:  After 1992?

4              MS. CHAITMAN:  Yes.  In the --

5              THE COURT:  I don't recall any questioning at his

6    deposition about events that occurred after 1992 --

7              MS. CHAITMAN:  It was the last April --

8              THE COURT:  -- and he didn't even challenge the

9    Dubinsky report for after 1992.

10             MS. CHAITMAN:  The April 25th -- 20 -- I can't

11   remember if it was the 26th or the 27th, I put before Mr.

12   Madoff a stack of Bloomberg tickets which had been executed

13   by Frank DePasquale (ph), Eric Lipkin and Robert Romer, and

14   I asked Mr. Madoff if these were genuine trades and he said

15   they absolutely were.  And I said but how did people on the

16   17th floor have Bloomberg terminals?  He said they had

17   access to Bloomberg terminals.  He said Frank DePasquale had

18   one on his desk and he said that I -- he -- I," Madoff,

19   "instructed them to use the 703 account money to purchase

20   Treasury securities and I maintained a portfolio of $6

21   billion" --

22             THE COURT:  This was in his first deposition?

23             MS. CHAITMAN:  No, no, no, the one I just took in

24   April.

25             THE COURT:  Oh.

1          MS. CHAITMAN:  He testified that he instructed the

2     people on the 17th floor to maintain a portfolio of $6

3     billion of Treasury securities.  We've been able to match up

4     some of those Treasury securities to the customer

5     statements, it's a massive process.  We've also been able to

6     match up the Treasury securities because Mr. Madoff

7     testified, I believe on April 26th that he maintained this

8     portfolio of 703 account T-bills at Behr Sterns, Lehman

9     Brothers, Morgan Stanley, Fidelity, and J.P. Morgan Chase.

10          So we're poring through all these documents now to

11     locate these and to match them up.  This is an explosive

12     discovery in this case --

13          THE COURT:  And this deals with a period after

14     1992?

15          MS. CHAITMAN:  This is -- yes, yes, 19 -- well, we

16     don't have the records for those institutions that I just

17     recited going back to 1992, they're not in the e-data room,

18     but we've taken the ones from 2000 on and we've been able to

19     match them up to confirm what Mr. Madoff has said.

20          So we have explosive information that, number one,

21     the fraud did not start until the split strike in 1992;

22     number two, that those customers who remained in convertible

23     arbitrage until 1997 always had executed trades, there was

24     never fraud with respect to those; and, number three, that

25     Madoff actually used 703 account money to purchase T-bills,

Page 16

```
1     which if you look at the customer statements -- Your Honor,

2     I don't know if you know this, but every December Madoff

3     would go totally into T-bills and even at the other periods

4     of the year he would go into baskets of stocks, but he would

5     only do that for four or five weeks and then go out of them

6     and put the customers into T-bills.

7            So the T-bills were the common denominator in all

8     of these accounts and to the extent that we can establish

9     the specific T-bills appeared on the customer statements the

10    trustee's complaint fails.  And it's not -- there's very

11    specific information, it's the date of the purchase, the

12    interest rate, the maturity date, we're trying to match all

13    of that, but this is very explosive information which is

14    completely inconsistent with what the trustee has

15    represented.

16           Now, I don't know how long it will take me to get

17    through this, but I want to be able to question the traders,

18    I want to be able to question Mr. Madoff, and we're poring

19    through millions of pages of documents in order to put all

20    this together.

21           THE COURT:  Okay.

22           MR. JACOBS:  Your Honor, if I may?  None of that

23    has any basis in fact or even in the basis of Mr. Madoff's

24    testimony, which we contend whatever he may have said is for

25    the most part completely fraudulent --
```

Page 17

1              THE COURT:  Well --

2              MR. JACOBS:  -- in any event.  I would like --

3              THE COURT:  -- I'll decide that after trial.

4              MR. JACOBS:  Understood.  I would like to correct

5    the record.  There was never a motion to compel the trustee

6    to produce any documents pending in this Court, that's a

7    fiction.

8              THE COURT:  But I thought I directed you to

9    produce the documents.

10             MR. JACOBS:  We said that when the Court allowed

11   the deposition of Mr. Madoff for the specific, narrow

12   purpose of examining as a preliminary matter, as a precursor

13   to an omnibus fraud trial, the start date of the fraud and

14   the Court opened the door to that evidence, we undertook a

15   voluntary effort to search for and identify any material

16   that we may have in BLMIS' possession that would evidence

17   trading --

18             THE COURT:  Did Ms. Chaitman --

19             MR. JACOBS:  -- from that period.

20             THE COURT:  -- did Ms. Chaitman ever ask for

21   trading records in any of her discovery requests?

22             MR. JACOBS:  She did.  She's been asking for

23   trading records for a very long time, for a couple of years

24   now, starting with the subpoena she served on the Depository

25   Trust Clearing Company.  That subpoena was limited in time

Page 18

1    for 2002 to 2008.  We had already served our own subpoena on

2    that entity and produced all of that material.  She later

3    expanded the scope of that inquiry to periods prior to 2002.

4    We undertook a diligent and reasonable search for those

5    records, there weren't any, so we didn't produce any.

6            Then the Court allowed Mr. Madoff's deposition on

7    the narrow issue of the start date of the fraud.  We

8    voluntarily represented in both this Court and before Judge

9    Moss, the discovery arbitrator, that we would voluntarily

10   undertake an effort to look again for any third party

11   verifiable trading records that would evidence real

12   securities being bought or sold on behalf of IA customers

13   and there weren't any.

14           We have produced recently, in the past six months

15   since we took all of these issues to the discovery

16   arbitrator, a lot of additional documents, but those are

17   various iterations of BLMIS reports, very much like the

18   customer statements, very much like the reports that are in

19   the data room, very much like the tens of thousands, if not

20   hundreds of thousands of documents we've already produced

21   and made available in this litigation that we restored from

22   microfilm at the cost of about half a million dollars in

23   another attempt to try to find earlier trading records and

24   they don't exist because there was no trading for those

25   customers.

1                THE COURT:  We're getting a little off track here.

2      I started to ask what is --

3                MR. JACOBS:  Yeah, I've got to talk.

4                THE COURT:  -- if we were going to have a single

5      response date in her cases --

6                MR. JACOBS:  Right.

7                THE COURT:  -- because she's probably going to

8      serve the same expert report in 87 cases --

9                MR. JACOBS:  Right.

10                THE COURT:  -- what do you propose be the

11     triggering date for that?

12                MR. JACOBS:  So our proposal, Your Honor, is that

13     we've talked in this court with Ms. Chaitman about having an

14     omnibus fraud trial, we want to try that issue once with all

15     of the relevant eligible parties at the table, we don't want

16     to do it piecemeal through her cases and then Ms. Neville's

17     cases and then --

18                THE COURT:  Well, this is just the exchange of

19     expert reports.

20                MR. JACOBS:  Right.  Well, the problem is --

21                THE COURT:  We're going to try it once, but she

22     wants a single date to -- and it's not unreasonable in her

23     87 cases --

24                MR. JACOBS:  Right.

25                THE COURT:  -- to file a deadline date.

Page 20

1              MR. JACOBS:  Well, Your Honor, her request only

2    pertains to cases that Your Honor has allowed to participate

3    in the Madoff deposition and that's a subset of her active

4    cases, and that's fine, we're not opposed to having a

5    coordinated expert schedule that would include as part of an

6    omnibus proceeding the disclosure of an expert in chief,

7    rebuttal experts and then possibly reply reports.

8              THE COURT:  You mean for all defendants who are

9    involved in this?

10             MR. JACOBS:  Correct, for all defendants.  So that

11   would reset any of her cases that are still open and

12   eligible for participation in that proceeding to that common

13   schedule that would also include additional defendants --

14             THE COURT:  But she also has cases that are and

15   the only question is does it make sense to have a single

16   date by which she produces her expert reports in 87 cases?

17             MR. JACOBS:  It would make sense as part of an

18   omnibus proceeding where the issue was going to be litigated

19   and litigated once.

20             THE COURT:  So what do you think -- what schedule

21   do you propose?

22             MR. JACOBS:  We're drafting papers for that

23   schedule now.  What we've been waiting for, Your Honor, is

24   the conclusion of the Madoff deposition, which has taken

25   months --

Page 21

1              THE COURT:  So are you proposing that at the

2      conclusion of the Madoff deposition --

3              MR. JACOBS:  Yes.

4              THE COURT:  -- we schedule omnibus submissions.

5      You've already submitted your expert report, I don't know if

6      you want to submit another one.

7              MR. JACOBS:  Well, we anticipate we will have a

8      supplemental report to address the specific testimony from

9      Mr. Madoff as to the earlier period of the fraud.

10             THE COURT:  So the proposal is that at the

11     conclusion of the Madoff deposition on this one issue

12     regarding an expert deadline, we'll reset it at the

13     conclusion of the Madoff deposition.

14             MS. CHAITMAN:  Two points, Your Honor.  Mr. Jacobs

15     is excluding all of my clients who participated in my motion

16     to compel, which Your Honor ruled on on May 17th, 2016 --

17             MR. JACOBS:  There was never any such motion, Your

18     Honor.  I apologize for interrupting.

19             THE COURT:  We are going to -- this is the way

20     this particular issue will be resolved -- we'll conclude the

21     Madoff Department and then we'll reschedule the expert

22     submissions and have a uniform submission date.

23             MS. CHAITMAN:  For all of my clients?

24             THE COURT:  For everybody.

25             MR. JACOBS:  Well, Your Honor --

1                MS. CHAITMAN:  And if I --

2                THE COURT:  For those who are still -- for those

3     who are participating --

4                MR. JACOBS:  Well, Your Honor --

5                THE COURT:  -- you know, you -- let me -- you

6     distinguish between people who are -- who opted in, I guess,

7     to the Madoff --

8                MR. JACOBS:  Right.

9                THE COURT:  -- deposition and those who didn't --

10               MR. JACOBS:  Right.

11               THE COURT:  -- but I'm not inclined to have

12    different staggering dates to the submission --

13               MR. JACOBS:  I under --

14               THE COURT:  -- of expert reports by somebody who's

15    representing people on both sides, that just --

16               MR. JACOBS:  Right.

17               THE COURT: -- doesn't make sense.

18               MR. JACOBS:  I understand, Your Honor.  And there

19    are many cases where expert discovery had long since closed

20    prior to the time Ms. Chaitman even contemplated deposing

21    Mr. Madoff.  And the point there --

22               THE COURT:  Well, we're not talking about more

23    expert discovery -- oh, I see what you're saying.

24               MR. JACOBS:  So there are several cases, several

25    of Ms. Chaitman's cases where any -- where she strategically

Page 23

1    decided not to submit any expert report and that deadline

2    has completely closed.  Three of those cases are scheduled

3    for pretrial conferences today, they all involve cases where

4    the relevant accounts were opened after 1992.

5                THE COURT:  I saw that.

6                MR. JACOBS:  Ms. Chaitman has conceded on the

7    record that she's not contesting the fraud in the

8    arbitration with Judge Moss for periods after 1992.  She

9    said on the record that she's not -- that she agrees with

10   Mr. Madoff's testimony where he admits that it was a Ponzi

11   scheme in full effect from at least 1992 forward.  I mean,

12   you know, why are we expanding the scope of this inquiry at

13   this -- seven years into this case.  I mean, Ms. Chaitman

14   has had millions of documents produced to her, made

15   available to her, she's had the Dubinsky report for years.

16   The time for the types of investigations that she's just now

17   starting to propose has come and gone, Your Honor.

18                So for cases that have closed where you didn't --

19   where Your Honor didn't permit to participate even in the

20   Madoff deposition, I don't think there should be any second

21   bite at the apple and we object to that.  We're trying to

22   move these cases forward and as the next two items on the

23   agenda will illustrate, we're having a very hard time doing

24   that with Ms. Chaitman.

25                THE COURT:  Okay.

Page 24

```
 1              MR. JACOBS:  So we object to any reset on the

 2    clock on those cases where it's not timely.

 3              THE COURT:  Okay.

 4              MS. CHAITMAN:  If I may be heard for just a

 5    second.  I did not concede to any of the facts that Mr.

 6    Jacobs --

 7              THE COURT:  I've heard you concede many times that

 8    you're not arguing that the fact that the Ponzi scheme again

 9    after 1992 -- or by 1992 or 1993 it was a full Ponzi scheme.

10              MS. CHAITMAN:  Your Honor, that is not Mr.

11    Madoff's testimony.

12              THE COURT:  That's what you said, though.  He's

13    not saying what Madoff said, he's saying what you said.

14              MS. CHAITMAN:  I'd like to see the transcript,

15    because based on the --

16              THE COURT:  I've seen it many times.

17              MS. CHAITMAN:  Okay, but based on the information

18    that we now have from Mr. Madoff of the Ponzi scheme, he

19    stopped buying the trades, but the actual Ponzi scheme did

20    not begin at that time.

21              THE COURT:  But in those cases we are discovery-

22    lapsed before this issue came up.  You never sought to take

23    Mr. Madoff's deposition; you should have taken it earlier,

24    that's all.

25              MS. CHAITMAN:  You know what, Judge, I did.  If
```

Page 25

1    you recall, when you were setting the date for Mr. Madoff's

2    deposition in the inter-account transfer -- excuse me, in

3    the profit-withdrawal issue, I asked at that time that we be

4    permitted to take Mr. Madoff's deposition for purposes of

5    the clawback, and you said, no, we'll do that later.

6              But at least you have to include people where

7    discovery was open as of May 17th, 2016.  You ordered the

8    trustee to produce all the trading records.

9              THE COURT:  Well, I don't remember what the cut-

10   off date was.  I also said that I would allow you to take

11   the Madoff deposition, but I didn't say whether or not you

12   could take any further discovery.

13             But what's the date -- we talked about when

14   discovery closed, what's the date?

15             MR. JACOBS:  It was -- I believe it was July 7th,

16   the cutoff for people to participate in that deposition --

17             THE COURT:  July 7th --

18             MR. JACOBS:  -- was July, I think 7th --

19             THE COURT:  -- 2016, right?

20             MR. JACOBS:  -- 2016, correct.  And then the issue

21   came up in this rate case where the discovery was about to

22   close there and you said that you would continue discovery

23   for the limited purpose of allowing that dep, and that's

24   reflected in Your Honor's order governing the --

25             THE COURT:  All right.

Page 26

1               MR. JACOBS:  -- deposition as well.

2               THE COURT:  All right.  With respect to this

3       issue, what we'll do is -- and you can embody this in an

4       order, so we don't forget --

5               MR. JACOBS:  Okay.

6               THE COURT:  -- we'll reset the expert deadline

7       after the Madoff deposition is completed as to those cases

8       where expert discovery was not closed as of July 7th, 2016.

9       Okay?

10              MR. JACOBS:  Okay.

11              THE COURT:  And embody that in the order.

12              MR. JACOBS:  Thank you, Your Honor.

13              THE COURT:  Next, this issue with the BLMIS

14      employees.

15              MS. CHAITMAN:  Your Honor --

16              MR. JACOBS:  That's my application, Your Honor, if

17      I may begin?  It was our letter seeking permission to move

18      to quash the subpoenas.

19              THE COURT:  And what's the basis of the motion to

20      quash?

21              MR. JACOBS:  The basis of the motion to quash is

22      twofold.  First, to the extent Ms. Chaitman is seeking

23      follow-up discovery to the Madoff inquiry regarding the

24      start date of the fraud, additional discovery can only be

25      served with leave of Court per Your Honor's order that

1    governed the Madoff fraud.  And I know that at least in part

2    Ms. Chaitman wishes to depose those ten individuals for that

3    purpose because those subpoenas include a document demand

4    that asks for the production of trades -- of documents

5    reflecting trades for IA customers prior to 1992.

6              THE COURT:  Well, I doubt they're going to have

7    any documents.

8              MR. JACOBS:  I do as well, Your Honor, considering

9    that the earliest any of them worked at BLMIS was the year

10   2000 and in fact several of them didn't begin work until

11   2006 to 2008.

12             THE COURT:  So you're saying that she needs leave

13   of the Court, which would require a formal motion.  What

14   else?

15             MR. JACOBS:  Correct.  And then to the extent Ms.

16   Chaitman is seeking the depositions for any of the theories

17   she's advanced today about the later periods of the fraud, I

18   would submit for Your Honor's consideration that this

19   appears to be a quintessential fishing expedition.  These

20   ten individuals appear to be chosen at random and there's no

21   indication that they have any discoverable evidence under

22   Rule 26 which requires that discovery be relevant in

23   proportion to the issues of the case.

24             THE COURT:  How do you know unless you ask them?

25             MR. JACOBS:  Well, I mean -- well, that's I guess

 1    --

 2            THE COURT:  It doesn't have to be admissible; it

 3    just has to be relevant.

 4            MR. JACOBS:  Right, but I guess my question is,

 5    what is the scope of the relevant testimony that is even

 6    being sought, I don't have an understanding of that beyond

 7    the document requests that's attached to the subpoenas,

 8    which asks for evidence of House 5 trading at any given

 9    point in time.

10            Now, I'd like to just clarify the record that we

11    have never contended that House 5 wasn't trading securities.

12    There was a proprietary --

13            THE COURT:  Is that the convertible arbitrage?

14            MR. JACOBS:  That's the proprietary trading desk.

15    There were securities traded through that portion of BLMIS's

16    operation, but that has nothing to do with the IA customers

17    and there's absolutely no evidence that any of those trades

18    were ever conducted for or on behalf of any IA customers at

19    any point in time.  So it literally is a fishing expedition.

20    And even if the Court is inclined to grant an inquiry,

21    perhaps it would be more reasonable and consistent with the

22    proportionality standards of Rule 26 to start with one, but

23    to serve a subpoena on ten individuals without any

24    articulable basis for relevance under Rule 26 seems to be

25    blunderous.

1          THE COURT:  But they worked at BLMIS, maybe they

2    know something.

3          MR. JACOBS:  I think --

4          THE COURT:  Otherwise it will just be a short

5    deposition.

6          MR. JACOBS:  Well, Your Honor, may I propose that

7    to -- well, first I think we have to resolve the issue of

8    what evidence is being sought.  If it's evidence relating to

9    the 1992 start date of the fraud and the Court is inclined

10   to allow one or more of the depositions, I would propose

11   that we fold that into a coordinated discovery effort that

12   would be governed by a court order and would include all

13   parties eligible to participate in that fraud, not just Ms.

14   Chaitman, so that we aren't conducting discovery piecemeal

15   and in a duplicative fashion.

16          THE COURT:  Uh-huh.

17          MR. JACOBS:  And if it's related to fraud issues

18   in general, I think our position would be the same.  We're

19   trying to find a way, if we are going to do this deposition

20   -- and just for the record I should mention, now that the

21   door has been opened to Madoff's testimony, we may like to

22   depose a few additional BLMIS employees and perhaps others

23   that have testified contrary to everything Ms. Chaitman is

24   saying he said, and all of that -- but all of that should

25   come under an omnibus procedural order much like we have in

Page 30

1    PW that would call for a discovery period, that would call

2    for depositions, that it would require coordination between

3    us and all eligible parties, not just one here, one there

4    and do this piecemeal, and we can do it once, we can do it

5    correctly and do it efficiently and quickly.  That would be

6    my proposal.

7            So if the Court is inclined to allow the

8    deposition, that's okay, we have -- I've stated my

9    objection, but I propose we do it -- we defer it until after

10   we have a hearing to discuss a procedure governing an

11   omnibus trial and that would call for a discovery period

12   which would include this issue.

13           THE COURT:  Okay.

14           MS. CHAITMAN:  Your Honor, you know, this is a

15   search for the truth.  I don't see how the trustee can

16   object to my taking --

17           THE COURT:  Well, he's just saying it should be

18   coordinated, because it's not just you, it may be another

19   hundred cases that want to --

20           MS. CHAITMAN:  There hasn't been anyone else so

21   far, he knows that, but in any event, Your Honor --

22           THE COURT:  Well, maybe you're ahead of the crowd.

23           MS. CHAITMAN:  Perhaps.

24           THE COURT:  The question really is whether it just

25   makes sense to complete Madoff's deposition and then talk

1    about further discovery.

2              MS. CHAITMAN:  Well, this is the problem:  we

3    could be taking these other depositions before we take

4    Madoff's deposition.

5              THE COURT:  And then somebody else may want to

6    take their depositions and then --

7              MS. CHAITMAN:  But then we can just put everyone

8    on notice, if they want to take the depositions, this is

9    when they're going to be --

10             THE COURT:  But some people may prefer to wait for

11   the completion of Madoff's deposition since, you know,

12   you're telling me it's very revealing.  And I read the

13   deposition and I understand what he's testifying to,

14   although all his testimony at least in the first transcript

15   was pre-1992.

16             MS. CHAITMAN:  Right.

17             THE COURT:  I just think it makes sense, because

18   we keep coming back to the same issue, everybody wants to

19   hear what Madoff has to say, for whatever it's worth.

20             MS. CHAITMAN:  Okay, and that's fine, Judge --

21             THE COURT:  We've already agreed that the --

22             MS. CHAITMAN:  -- if you want to put it off,

23   that's fine.

24             THE COURT:  Yeah, I think that this also will just

25   be subject to consideration and a reset, if necessary, at

Page 32

1    the conclusion of the Madoff deposition.  But if stuff comes

2    up, you know, during his deposition, you can argue that

3    people should have taken his deposition earlier.  Some

4    people did notice it on time and I don't know how you -- on

5    a going-forward basis in a trial you're going to separate

6    out those people who were entitled to take his deposition

7    and those people who weren't but want to use it.

8              MR. JACOBS:  Right.

9              MS. CHAITMAN:  The other point I'd just like to

10   make, Your Honor, is that these cases have never been

11   consolidated and in fact the trustee has --

12             THE COURT:  Well --

13             MS. CHAITMAN:  -- insisted that they not be and --

14             THE COURT:  -- they haven't, but they've been

15   consolidated for certain purposes --

16             MS. CHAITMAN:  Right.

17             THE COURT:  -- for omnibus motions or this PW

18   issue, for the start-date issue.

19             MS. CHAITMAN:  Well, the profit withdrawal issue

20   was not in the adversary proceedings, it was simply in the

21   bankruptcy case.  It's a big distinction, Your Honor,

22   because --

23             THE COURT:  Well, no, but it goes into the

24   computation of fictitious profits also; you can't separate

25   the two.

1          MS. CHAITMAN:  Here's the issue, at least with

2     respect to my clients, they've demanded a jury trial, which

3     would necessitate withdrawing the reference and having a

4     jury trial.  So the key factual findings would have to be

5     made by a jury.  It's not susceptible to an omnibus

6     proceeding where the Court would make those determinations

7     to be binding on defendants in individual adversary

8     proceedings.

9          THE COURT:  No, you can make that argument to the

10    District Court --

11         MS. CHAITMAN:  Okay.

12         THE COURT:  -- if, as and when there's a

13    determination.

14         MS. CHAITMAN:  Okay.

15         THE COURT:  Okay.

16         MR. JACOBS:  The -- if I may, Your Honor, the last

17    final specifically discovery-related issue is the --

18         THE COURT:  You can add this to the order, by the

19    way --

20         MR. JACOBS:  Okay.

21         THE COURT:  -- so we have an order, so we don't

22    have to read a lot of transcripts and --

23         MR. JACOBS:  Okay --

24         THE COURT:  -- decide who said what.

25         MR. JACOBS:  -- will do.  The third and final

Page 34

1    specifically discovery-related issue involves Ms. Chaitman's

2    compliance with her discovery obligations.  We've focused a

3    lot of time and energy in this court pursuant the discovery

4    she wants to take, including Mr. Madoff's deposition, all

5    the while she's exhibited a pattern and practice of

6    obstructing, obstructing, obstructing the discovery we have

7    served on her clients.

8            And I just want to remind the Court that we've

9    sued about 1150 people and 850 of those cases are now

10   successfully mediated, settled, and we've entered in -- in

11   some cases we've entered into factual stipulations that have

12   completely obviated the need for protracted discovery, in

13   contrast to Ms. Chaitman's cases where we've been in near

14   continuous discovery litigation for almost two years now, in

15   the last six months before Judge Moss.  I think the time is

16   for the Court to say enough is enough.  Ms. Chaitman has to

17   provide discovery, because we've tried every which way to

18   Tuesday --

19           THE COURT:  Well, is this the discovery

20   arbitrator's --

21           MR. JACOBS:  Correct --

22           THE COURT:  -- orders?

23           MR. JACOBS:  -- we would like --

24           THE COURT:  Okay.

25           MR. JACOBS:  So the very short background there is

Page 35

1      that we -- the Court approve the appointment of Judge Moss.

2      Ms. Chaitman in the first instance agreed to arbitrate less

3      than I think nine cases before him spanning various issues,

4      she moved to compel a production of documents from us, which

5      resulted in an order compelling production, which now we --

6      Judge Moss has found we complied with.  We moved to compel

7      her to fix deficient responses to interrogatories and

8      document requests.  And then also she sought to prohibit our

9      ability to take depositions of her clients.

10                 And all of those things were arbitrated.  They

11     resulted in numerous orders, some of which were favorable to

12     us, some of which were favorable to Ms. Chaitman, and all

13     the while both in this court and before Judge Moss Ms.

14     Chaitman demanded that those rulings apply with equal force

15     and effect to all of her cases where the issues were

16     identical and we now agree that they should.  And yet after

17     we obtained some rulings compelling her to comply with

18     discovery, she's now taking the position that Judge Moss

19     only had jurisdiction in those nine cases.

20                 THE COURT:  Is the order that you want to apply in

21     all cases the order that says that if you don't admit --

22                 MR. JACOBS:  Stipulate, right.

23                 THE COURT:  -- stipulate to the exhibits, then

24     it's --

25                 MR. JACOBS:  Right.

Page 36

1              THE COURT:  -- then it's discovery?

2              MR. JACOBS:  Well, Your Honor, I would submit --

3              THE COURT:  I just want to make sure I know what

4     your orders are talking about.

5              MR. JACOBS:  Yes, but I would submit that all of

6     the orders that he has entered should apply with -- for

7     example on deposing her clients, we have voluntarily adhered

8     to his restriction, which was four hours in the first

9     instance, supply the exhibits in advance.  We've been doing

10    that routinely across all of her cases, even just not -- not

11    just the ones where she obtained that ruling.

12             But most importantly from our perspective it's the

13    order that says -- Judge Moss very carefully with both of us

14    present constructed a fact stipulation that was acceptable

15    to us that also included Ms. Chaitman's withdrawal of

16    certain affirmative defenses and if she were to agree to

17    that language without equivocation then it would likely

18    obviate the need for amended interrogatory responses and

19    potentially some other categories of discovery.

20             Judge Moss asked that Ms. Chaitman indicate to us

21    in each and every single case, I think it was in a ten-day

22    time period if she would still consent, and she then took

23    the position that she wasn't required to do so in any of the

24    cases other than the handful that's stipulated.

25             THE COURT:  The reason I keep coming back to this

1    is Judge Moss entered a lot of orders --

2              MR. JACOBS:  Yes.

3              THE COURT:  -- and I'm not sure I'm familiar with

4    all of them, so I can't --

5              MR. JACOBS:  Right.

6              THE COURT:  I'm just focusing on the order -- the

7    procedure which we've used in these cases anyway before

8    Judge Moss, which was --

9              MR. JACOBS:  Right.

10             THE COURT:  -- if you stipulate to the withdrawals

11   and the deposits --

12             MR. JACOBS:  Right.

13             THE COURT:  -- then you don't have to answer -- or

14   we would deal with it in terms of subpoenas, third party

15   subpoenas to the banks --

16             MR. JACOBS:  Right.

17             THE COURT:  -- but is that the order that you're

18   talking about?

19             MR. JACOBS:  Yes, although the order didn't

20   pertain to bank subpoenas, it pertained to documents and

21   information concerning her affirmative defenses.

22             THE COURT:  Well, if she stipulates, you don't

23   need any of that stuff.

24             MR. JACOBS:  Right, but the problem is that Ms.

25   Chaitman keeps advancing the same argument over and over

Page 38

1    again, which Judge Moss has rejected and Your Honor rejected

2    in the context of the bank subpoenas, which is I'm not

3    contesting the ins and outs, but that doesn't get you much,

4    it gets you something we already have independent

5    confirmation of.  Really we need the stipulation on that

6    equity and the affirmative defenses are really the sticking

7    point.  She simply refuses to abandon these affirmative

8    defenses on value, on tax payments and other payments, but

9    won't provide any factual basis for any of those assertions.

10           In some cases she submitted a tax preparer's

11   affidavit and at least in some case that tax preparer had no

12   personal knowledge of what he was even averring to and in a

13   deposition it came out that he in fact retracted.  So, I

14   mean, we have to have -- if we're not going to agree to a

15   stip --

16           THE COURT:  So what is the order that you want to

17   apply to all cases?

18           MR. JACOBS:  We would like the enforcement of

19   Judge Moss' order where he stated that she should -- that

20   Ms. Chaitman should have I think ten days to agree to the

21   fact stipulation that he crafted without exception, and if

22   not, then we would like an order compelling all outstanding

23   discovery, including interrogatory answers and document

24   productions on the issues of transfers, net equity and

25   affirmative defenses.

1          THE COURT:  Is that the January 9th order?

2          MR. JACOBS:  Yes.  Let me just confirm that date.

3          THE COURT:  A couple of them are case-specific,

4     the -- some of the provisions are case-specific.

5          MR. JACOBS:  Right.

6          THE COURT:  So you're just talking about the first

7     seven paragraphs?

8          MR. JACOBS:  That's correct, Your Honor.  If it

9     would be more helpful, we could submit a brief motion that

10    would attach these orders and outline --

11         THE COURT:  Well, are there others other than this

12    one?

13         MR. JACOBS:  There are many orders on a range of

14    topics, but the one that applies to Ms. Chaitman's discovery

15    deficiencies is this January 4th order.

16         MS. CHAITMAN:  May I be heard, Your Honor?

17         THE COURT:  Yes.  I just want to make sure I know

18    what orders we're talking about.

19         MR. JACOBS:  January -- that January 9th order.

20         THE COURT:  Okay.  And it's the first seven

21    paragraphs you're talking about?

22         MR. JACOBS:  Yes.  And then also -- yes.  And then

23    also in the Digiulian specifically, which was one of those

24    cases dealt with, we had to go back to the arbitrator to

25    enforce compliance with that -- with his January 9th order

Page 40

1     and we obtained a sanctions order that precludes Ms.

2     Chaitman from using evidence that she hadn't produced in a

3     timely fashion.  So we would like that order endorsed and

4     enforced by the Court as well.

5              THE COURT:  Why don't we -- I mean, that's already

6     in the rules or there's a possibility of that in the rules.

7     So that --

8              MR. JACOBS:  Right.

9              THE COURT:  -- can depend on a case-by-case --

10             MR. JACOBS:  That's fair enough.  Thank you.

11             THE COURT:  -- issue.  All right.

12             So the proposal is to make the first seven

13    paragraphs of the January 4th order applicable in all cases.

14             MS. CHAITMAN:  Your Honor, I don't have any

15    problem with that.  As I pointed out in my papers and as

16    Exhibit G and H to my opposition show, the trustee wanted me

17    to abide by Judge Moss' orders, but he didn't want to -- the

18    trustee didn't want to abide by it.  So in other words, if I

19    said before a deposition please send me the deposition

20    exhibits, they say they have no obligation to do it, even

21    though Magistrate Judge Moss ordered it in the cases that

22    were before it.  So they pick and choose what they want to

23    abide by.

24             But I would ask this, Your Honor.  Since Judge

25    Moss ordered in the one case where I inadvertently forgot to

1    produce a client's documents before a deposition that I

2    would be barred from relying on those documents, I would ask

3    that the Court order that the trustee is precluded from

4    relying upon any of the trading records that were not

5    produced until 2017.

6              THE COURT:  I'm not going to in either case make a

7    general ruling that somebody can't rely on something, I

8    would have to know the circumstances, and there may be other

9    sanctions that are more appropriate.

10             With respect to the first seven paragraphs though

11   of the January 4th order, you've just said that you have

12   objection --

13             MS. CHAITMAN:  Correct.

14             THE COURT:  -- to applying them to all cases.

15             MS. CHAITMAN:  Correct.

16             THE COURT:  All right, with the caveat that if

17   somebody hasn't agreed to go before Judge Moss, they'll have

18   to come here --

19             MR. JACOBS:  Right.

20             THE COURT:  -- for the enforcement of the order.

21             MR. JACOBS:  Okay.

22             MS. CHAITMAN:  And, Your Honor --

23             THE COURT:  And you can submit -- you can --

24             MS. CHAITMAN:  -- if I --

25             MR. JACOBS:  Well, Ms. Chaitman --

Page 42

1                  MS. CHAITMAN:  -- if I --

2                  MR. JACOBS:  -- will agree that any follow-up in

3      all of your cases can go before Judge Moss and if so, we can

4      prepare a stipulation to that effect and --

5                  MS. CHAITMAN:  No, I don't agree to that.

6                  THE COURT:  You know what?  The stipulations are

7      what's really tying this case up.  I will direct that to the

8      extent the parties have not already stipulated to go before

9      Judge Moss --

10                 MR. JACOBS:  Right.

11                 THE COURT:  -- and unless they stipulate

12     otherwise, you come here with any enforcement issues.

13                 MR. JACOBS:  Okay.

14                 THE COURT:  Okay?

15                 MR. JACOBS:  Thank you, Your Honor.

16                 MS. CHAITMAN:  And, Your Honor, that's exactly

17     what you ruled on May 15th, 2017.

18                 THE COURT:  So at least I'm consistent, right?

19                 MS. CHAITMAN:  You're consistent.

20                 THE COURT:  All right.

21                 MS. CHAITMAN:  Congratulations.

22                 THE COURT:  Thank you.

23                 MS. CHAITMAN:  We're not finished with our issues,

24     I don't know if Mr. Jacobs is finished.

25                 MR. JACOBS:  Well, I have one last request on this

1    issue.

2              THE COURT:  What?

3              MR. JACOBS:  I'm sorry, Your Honor, I apologize.

4    There's an additional paragraph from that order that we

5    would also like to include in your order.

6              THE COURT:  Which?

7              MR. JACOBS:  It's paragraph (c)(1).  So you just

8    endorsed (a)(1) through (7), and in addition we're

9    requesting (c)(1).  So this is an issue about the tax

10   preparer affidavits we discussed, I mentioned briefly.  Ms.

11   Chaitman has been supplying affidavits from tax preparers in

12   a number of cases; some were served late, most were served

13   without any documentary support.  So we move to compel the

14   production of the timely furnishing of those reports within

15   fact discovery and also a production of any accompanying

16   documents that support the claims being made in that fact

17   affidavit, and also that the affiant may have looked at or

18   relied upon in connection with the affidavit.  And you can

19   see in this paragraph Judge Moss ordered the production of

20   those materials.

21             THE COURT:  Any objection to that?

22             MS. CHAITMAN:  We've been complying with Judge

23   Moss' order even in cases that were not before him.

24             THE COURT:  So you have no objection to that

25   paragraph (1) coming --

```
 1              MS. CHAITMAN:  No, I have no objection to that.

 2              THE COURT:  All right, fine.  You can submit an

 3    order that embodies that.

 4              MR. JACOBS:  Your Honor, those are the three

 5    issues that were formerly noticed and that the Court allowed

 6    hearings for today.

 7              THE COURT:  Okay.  Yes?

 8              MS. CHAITMAN:  Judge, again, I would ask that the

 9    trustee be barred from relying upon any of the documents

10    that he produced in 2017.

11              THE COURT:  You know, that's a sanctions issue.

12    You're going to have to make a specific motion in a specific

13    case and explain why he should be barred in a particular

14    case, and the same holds true --

15              MS. CHAITMAN:  Okay.

16              THE COURT:  -- for you.  I'm not going to enter a

17    general order like that --

18              MS. CHAITMAN:  Okay.

19              THE COURT:  -- it depends on the case.

20              MS. CHAITMAN:  I'll make a specific motion.

21              THE COURT:  Okay.

22              MS. CHAITMAN:  And then the other thing that I had

23    raised, Your Honor, was the trustee objected to our request

24    for the production of indemnification agreements.  Mr.

25    Madoff had testified -- this goes to the issue of whether
```

Page 45

```
 1    Madoff --

 2              THE COURT:  This is with the four investors back

 3    in '80s?

 4              MS. CHAITMAN:  The four families.

 5              THE COURT:  Right.

 6              MS. CHAITMAN:  Mr. Madoff has testified about

 7    indemnification agreements which he valued at -- I can't

 8    remember if he said 10 or $11 billion, and that's a huge

 9    balance sheet issue in terms of when Madoff was insolvent.

10    And the trustee --

11              THE COURT:  It doesn't sound like those

12    indemnification agreements were worth very much though, huh?

13              MS. CHAITMAN:  Well, they weren't enforced, but

14    they could have been, I mean, presumably.  In any event, we

15    haven't been able to -- the trustee has not produced the

16    indemnification agreements.

17              THE COURT:  This is an issue I have raised before,

18    what's the relevance of insolvency in these cases?

19              MR. JACOBS:  Well --

20              THE COURT:  The constructive fraudulent transfer

21    claims are no longer part of the case --

22              MR. JACOBS:  Right.

23              THE COURT:  -- insolvency is not an issue on an

24    intentional fraudulent transfer.

25              MR. JACOBS:  I believe that -- I don't want to
```

Page 46

1    overstep my authority, but I believe we agree with that

2    statement on its face, Your Honor.  But, however, I do

3    believe there's case law that suggests that insolvency can

4    also be a batch of fraud, so it also could be a factor or a

5    consideration in connection with an overall fraud or a Ponzi

6    scheme analysis.  So I think it's indirectly relevant in

7    that manner.

8              THE COURT:  So then if it's relevant indirectly or

9    directly, why isn't she entitled to the indemnification

10   agreements?

11             MR. JACOBS:  Well, what we did, Your Honor, is for

12   precisely that consideration we made our objections, because

13   we don't believe in the first instance it is relevant.

14   However, I've given --

15             THE COURT:  Well, it may be relevant to solvency,

16   you're telling me that may be relevant.

17             MR. JACOBS:  Right.  Well, the only evidentiary

18   authority for the fact that these agreements ever existed

19   was Mr. Madoff's testimony.  So we voluntarily undertook a

20   search to try to identify any such agreements, which no one

21   our team had ever seen or been familiar with in the past,

22   but we couldn't find anything that would --

23             THE COURT:  Why don't you just put in --

24             MR. JACOBS:  -- remotely constitute that.

25             THE COURT:  -- a two-paragraph affidavit from

Page 47

```
 1    somebody that says we searched and we never found them?

 2              MR. JACOBS:  We did, Your Honor, and --

 3              THE COURT:  Oh, you did?

 4              MR. JACOBS:  -- actually we served discovery

 5    responses where we specifically stated that notwithstanding

 6    our objections, we searched and couldn't find any --

 7              THE COURT:  All right.

 8              MR. JACOBS:  -- responsive documents and that was

 9    signed by me.

10              THE COURT:  They don't have them.

11              MR. JACOBS:  So I think that should end the

12    inquiry.

13              MS. CHAITMAN:  I mean, that's something that I'll

14    have to ask Mr. Madoff about as to where they were when he

15    confessed.  I mean --

16              THE COURT:  You can certainly ask him, I guess,

17    but --

18              MS. CHAITMAN:  Yeah.  I mean, the trustee --

19              THE COURT:  -- they're saying -- look, they're

20    saying they don't have it, and they've gone on record in

21    writing in saying they don't have it.

22              MS. CHAITMAN:  They had gone on record to saying

23    they had no pre-1992 trading records and they've produced

24    millions of pages.

25              MR. JACOBS:  That's again not true, Your Honor.
```

Page 48

1              THE COURT:  All right.

2              MR. JACOBS:  Thank you.

3              THE COURT:  Why don't we move on with the other

4      cases, a couple of which are Ms. Chaitman's clients.  They

5      seem to be ready for trial.

6          (Pause)

7              THE COURT:  Good morning.

8              MR. HUNT:  Good morning, Your Honor, Dean Hunt for

9      the trustee.  I'm here on the two Nelson cases and they're

10     Saren Lawrence case.

11             THE COURT:  Let's start with Saren Lawrence.

12             MR. HUNT:  Okay.

13             THE COURT:  Is this case ready for trial?

14             MR. HUNT:  Yes, Your Honor.  The one clarification

15     I want to just raise to make sure that we're consistent with

16     your earlier rulings is fact discovery closed in all three

17     of these cases in March of 2016, expert disclosures were due

18     in May of 2016, and expert discovery closed in September of

19     2016.  All these cases are ready for trial, they've been

20     fully mediated, and we're prepared to move forward.

21             THE COURT:  Okay.  How long do you think it will

22     take you to put on your direct case?

23             MR. HUNT:  We think it'll probably take, you know,

24     two days, something like that.

25             THE COURT:  Okay.

Page 49

1            MS. CHAITMAN:  A couple of points, Your Honor.  I

2    believe that, because expert discovery didn't close until

3    September, expert discovery was open as of July 16th -- July

4    6th, 2016, when you said that anyone --

5            THE COURT:  But in this particular case, the fact

6    discovery was closed.  And I assume that this is not a case

7    that participated or was eligible to participate in the

8    Madoff deposition, right?

9            MR. HUNT:  That's correct, Your Honor.

10           THE COURT:  All right.  So don't you have to put

11   in an expert report?

12           MS. CHAITMAN:  Here's the issue, Judge.  On May

13   17th, 2016, when I believe fact discovery was open in all 3

14   of these cases, you ordered the trustee to put the documents

15   in the e-data room.

16           THE COURT:  Okay.  So the first issue is whether

17   fact discovery was still open in these cases.

18           MR. HUNT:  Fact discovery closed specifically on

19   March 14th.

20           THE COURT:  That's in Saren-Lawrence?

21           MR. HUNT:  In the Nelson cases and March 7th in

22   the Saren-Lawrence case.

23           THE COURT:  Okay.  So fact discovery was closed.

24           MS. CHAITMAN:  Your Honor, I'd like to look back

25   at the date when I made the motion, which --

1              THE COURT:  All right.  Let's assume that that's

2     the case.

3              MS. CHAITMAN:  -- resulted in Your Honor's --

4              THE COURT:  We can always check afterwards.  So

5     why not just put in an expert report in this case?

6              MR. HUNT:  Ms. Chaitman actually did submit expert

7     reports in this case.

8              THE COURT:  Oh, okay.  All right.  So this case is

9     ready for trial?

10             MS. CHAITMAN:  Yeah, we're going to be making a

11    motion to withdraw the reference, because the three --

12             THE COURT:  Okay.  Here's what I'm going to do.

13             MS. CHAITMAN:  The three clients have asked for a

14    jury trial.

15             THE COURT:  I understand.  So here's what I am

16    going to do.  Because if you never make that motion, you

17    control the trial.  So I'm going to schedule trials in these

18    cases far out.  Give you enough time to make the motion.  If

19    you make the motion, I'll obviously adjourn the trial 'til

20    the District Court makes a determination.

21             But this way, I'm going to deem you to have waived

22    the request for a jury trial if you don't make a motion

23    before the date that I'm going to schedule for trial.

24             MS. CHAITMAN:  No, I'll make the motion.

25             THE COURT:  And I'll schedule it far out enough.

Page 51

1          MR. HUNT:  Your Honor, with respect to trial

2    dates, we've consulted with our experts and have some

3    potential dates that are available.

4          THE COURT:  What are you potential dates?

5          MR. HUNT:  So we have three cases.  We think the

6    Nelson cases can probably be handled pretty close to

7    simultaneously.

8          THE COURT:  They can be tried together?

9          MR. HUNT:  I think so.

10          THE COURT:  Is that Ms. Chaitman's case?

11          MR. HUNT:  Yes.

12          THE COURT:  Do you agree that those can be tried

13    together, Ms. Chaitman?

14          MS. CHAITMAN:  They're separate cases.  They were

15    two separate accounts.  So I don't see any reason why they

16    -- maybe the trustees never moved to decide (ph) it.

17          THE COURT:  All right.  All right.

18          Tell me the dates that your experts --

19          MR. HUNT:  Okay.  So dates that are available for

20    us are September 26th through the 28th, October 3rd through

21    the 5th, and October 31st, if you want to do it on

22    Halloween, through November the 2nd.

23          THE COURT:  The end of September is not a good

24    time, but let me look at October.

25        (Pause)

1           THE COURT:  All right.  The Saren-Lawrence trial

2    will begin --

3           MS. CHAITMAN:  Judge, I think we're talking about

4    Nelson.

5           THE COURT:  It doesn't matter.

6           MR. HUNT:  We're talking about all three.

7           THE COURT:  There is --

8           MS. CHAITMAN:  Okay.

9           THE COURT:  I just have them in the order on my --

10          MS. CHAITMAN:  No, that's fine.  I don't care.

11          THE COURT:  I expect you're going to make a motion

12    to withdraw the reference anyway, right?

13          MS. CHAITMAN:  I am.

14          THE COURT:  So these are trial dates.  But if you

15    make the motion -- and let's say, so we don't wait 'til the

16    last minute, that you have to make the motions within the

17    next 30 days.

18          MS. CHAITMAN:  Okay.

19          THE COURT:  Because I have my calendar also that I

20    want to make plain.

21          MS. CHAITMAN:  Sure.

22          THE COURT:  And you can submit orders in each of

23    these cases.  We'll schedule the Saren-Lawrence trial for

24    October 3rd, 4th, and 5th.  I'll have other matters on some

25    of those days, but we'll just deal with them after the end

1     of trial matters, after the calendar matters.

2          (Pause)

3               THE COURT:  Just if, as, and when you make these

4     motions, just write me a letter so I know, and I'll know

5     that the case will probably not be going forward.

6               MS. CHAITMAN:  I will do that.  I'll do it within

7     the next 30 days, Your Honor.

8               THE COURT:  With respect to -- I have two Nelson

9     matters here.  Have you distinguished them?

10               MR. HUNT:  So there's one --

11               MS. CHAITMAN:  One is an IRA account.

12               MR. HUNT:  Yeah, there's one Carol Nelson matter

13     and then one that --

14               THE COURT:  Oh, I see.  Carol.  Okay.

15               MR. HUNT:  -- involves both Ms. Nelson and her

16     husband.

17               THE COURT:  All right.

18               All right.  The next one I have is the one

19     involving Carol Nelson.

20          (Pause)

21               THE COURT:  I'll give you that October 31st-11/2

22     date.

23               MR. HUNT:  Okay.

24          (Pause)

25               THE COURT:  At 10 o'clock.  I didn't mention.

1    Same rule.  Make the motion to withdraw the reference within

2    30 days.  If you don't make it up in 30 days, I will deem

3    that request for a jury trial to have been abandoned,

4    because I have to maintain a calendar.  And let me know if

5    you make the motion.

6              And then you don't have availability dates for the

7    other one?

8              MR. HUNT:  No.  If we're not going to do them

9    together, we'd have to push those on into November some

10   time.  And I don't have specific dates that are available

11   for our experts.

12             THE COURT:  Right.  Why don't you write to me

13   beginning dates from them and then I will fix dates --

14             MR. HUNT:  Okay.

15             THE COURT:  -- for those trials?

16             MR. HUNT:  And that would be for the Carol and

17   Stanley Nelson case, correct?

18             THE COURT:  It's 4658 is the number.

19             MR. HUNT:  Okay, 4658 is Carol.  So -- 4377 and --

20             THE COURT:  Okay.  I'm sorry.  4377 is the IRA,

21   Mr. Nelson's IRA?

22             MS. CHAITMAN:  No, it's the joint tenancy.

23             MR. HUNT:  It's the joint tenancy case.

24             THE COURT:  Right.  4377 the trial is October

25   31st.

1           MR. HUNT:  Okay.  And then 4658 we'll let you know

2     what date's available in November.

3           THE COURT:  Right.  Got it.

4        (Pause)

5           THE COURT:  But provide in an order that you'll

6     let me know, within some period of time.  But you've still

7     got to move to withdraw the reference within 30 days,

8     because the cases are ready to go.

9           MR. HUNT:  Okay.

10          THE COURT:  And that will be up to the District

11    Court to schedule the trial if the District Court grants the

12    motion.

13          MR. HUNT:  So that would be 30 days from today's

14    date?

15          THE COURT:  Thirty days from the date the order's

16    entered.

17          MR. HUNT:  The date the order is entered.  Check.

18    Got it.

19          THE COURT:  Okay.  Next we have Digiulian.

20          MS. HOCHMUTH:  My name is Farrell Hochmuth.  I'm

21    here on behalf of the trustee on a motion to substitute an

22    estate and its personal representative in the place of the

23    deceased defendant, Bruno Digiulian.  Counsel admits that

24    motions to substitute are routinely granted.  In fact, we've

25    entered into numerous stipulations for substitution.

Page 56

1              THE COURT:  Nothing is routine in these cases.

2              MS. HOCHMUTH:  Well-taken, Your Honor.  We've

3    stipulated on numerous occasions to substitute estates and

4    personal representatives.  Counsel's only objection to our

5    motion to substitute is on the basis that she believes that

6    the trustee cannot recover against the defendant, because

7    the account was held by an IRA for the benefit of the

8    deceased defendant.  This defendant resided in Florida.  And

9    while Florida law does typically hold that an IRA is exempt

10   from the claims of creditors, there is an exception to that

11   rule when the account is funded with fraudulent conveyances,

12   which is what happened here.

13             THE COURT:  But you're not looking to enforce this

14   judgment, if you get a judgment against an IRA account, are

15   you?

16             MS. HOCHMUTH:  No, Your Honor, we're looking to

17   enforce the judgment against the estate and its personal

18   representatives.

19             THE COURT:  Okay.

20             MS. CHAITMAN:  Your Honor, we filed a reply

21   yesterday, May 30th.  And I don't know if Your Honor has

22   that.

23             THE COURT:  I did.

24             MS. CHAITMAN:  Okay.  So under Florida law, we've

25   cited in re:  Goldberg and in re: Short (ph) for the

Page 57

1    proposition that, if money is exempt, when it's taken out,

2    it's also exempt.  And the theory is --

3            THE COURT:  But you know what those cases -- those

4    cases are cases that allege that the person who owns the IRA

5    or the pension account is the transferor.  That's not the

6    situation here.  Here the account is a transferee account.

7    And if the money were in the account still, then we'd have

8    the issue of whether or not the trustee could, nonetheless,

9    pursue it because of the fraudulent transfer statute, which

10   I know mentions Florida law, not federal law.  But that's

11   not the situation here.

12           MS. CHAITMAN:  Your Honor, obviously, the IRA was

13   invested in Madoff.  So it had no value as of December

14   11th, 2008.

15           THE COURT:  Right.

16           MS. CHAITMAN:  But what the trustee is seeking to

17   recover here is the money that Mr. Digiulian took out, as

18   mandatory IRA withdrawals, in the years before he died.

19           THE COURT:  I understand that.

20           MS. CHAITMAN:  And the Florida law does not permit

21   that.  So --

22           THE COURT:  But that's an exemption statute, isn't

23   it?  In other words, if he still had an IRA, --

24           MS. CHAITMAN:  No, it covers money taken from an

25   IRA.  It protects --

1           THE COURT:  Only if you can trace it, though,

2    right?  I've seen cases where you have to be able to trace

3    it.  I understand your argument that, if it's exempt and you

4    take it out of an exempt IRA and you do something else with

5    it, even if you put it in what would be a non-exempt asset.

6    There are cases that say if you can trace it from the IRA

7    account.

8           MS. CHAITMAN:  Right.  But here what the trustee

9    is doing is seeking to recover from the estate for money

10   that Mr. Digiulian took out to support himself as mandatory

11   IRA withdrawals.  And I'm convinced that, under Florida law,

12   if we were in a Florida court, the Court would not permit

13   it.

14          THE COURT:  Well, I haven't seen any cases that

15   say that, and I know that Judge Rakoff ruled on this in

16   connection with federal law (indiscernible).

17          MS. CHAITMAN:  Not under Florida law.  He wasn't

18   ruling under Florida law.

19          THE COURT:  All right.  I haven't seen -- I've

20   looked.  I haven't seen any cases that even deal with this

21   issue.  Remember that your client is being sued as a

22   transferee, not as a -- it's not alleged that the client --

23   your client made a fraudulent transfer.

24          MS. CHAITMAN:  Well, if the estate is being sued

25   as a transferee, --

Page 59

1                THE COURT:  Right.

2                MS. CHAITMAN:  -- then, if that's what's really

3      going on, then the case would have to be dismissed, based

4      upon the Court's ruling on the motions to dismiss, because

5      the subsequent transferee allegations are not present in the

6      complaint.

7                THE COURT:  No, no, no, no, the estate is the --

8      well, Mr. Digiulian was a transferee of BLMIS.

9                MS. CHAITMAN:  Right, and --

10               THE COURT:  So if -- so maybe they --

11               MS. CHAITMAN:  -- if --

12               THE COURT:  Let me just finish.  Maybe, if this

13     account still existed, maybe the trustee couldn't enforce a

14     judgment against that account, but they may have other non-

15     exempt assets that they can enforce the judgment against.

16               MS. CHAITMAN:  No.  But if the estate is being

17     sued as a subsequent transferee, --

18               THE COURT:  It's not.  It's being sued as a

19     transferee of BLMIS.

20               MS. HOCHMUTH:  That's correct, Your Honor.  The

21     estate steps into the shoes.

22               THE COURT:  All right.

23               MS. HOCHMUTH:  Thank you.

24               THE COURT:  I just haven't seen any cases that

25     support the theory that you are arguing, which is basically

Page 60

1      that if somebody receives a fraudulent transfer and puts it

2      into an exempt asset, that it's exempt.  Somehow that's not

3      a fraudulent transfer.

4                  MS. CHAITMAN:  Your Honor, the Florida cases on --

5                  THE COURT:  I read all your cases.  They don't --

6                  MS. CHAITMAN:  Okay.

7                  THE COURT:  -- deal with that issue.

8                  MS. CHAITMAN:  The Florida cases on that issue are

9      talking about the owner of the IRA account fraudulently

10     transferring.  What we have in this case is a legal creation

11     of a fraud, which is obviously not the fraud of

12     Mr. Digiulian.

13                 THE COURT:  Nobody's saying Mr. Digiulian

14     committed fraud.

15                 MS. CHAITMAN:  Right.  So the thing is --

16                 THE COURT:  He's an innocent transferee.

17                 MS. CHAITMAN:  Okay.  But the point is he was

18     entitled to all of the protections for his IRA account,

19     under Florida law.  And what the trustee is seeking to do is

20     to enforce a liability which it couldn't enforce against

21     Mr. Digiulian and enforce it against his estate.

22                 THE COURT:  First of all, let me ask you a basic

23     question.  Who do you represent?

24                 MS. CHAITMAN:  I represent Patsy Digiulian, who is

25     --

Page 61

1          THE COURT:  But if she's not a party, how can you

2    make a motion to dismiss the case?

3          MS. CHAITMAN:  She --

4          THE COURT:  You've objected to her substitution.

5    So how can somebody who's not a party make a motion to

6    dismiss a case?

7          MS. CHAITMAN:  Is that the basis on which you --

8          THE COURT:  I'm just asking you.  I'm asking you a

9    legal question, procedural question, whatever.  Because that

10   was my initial reaction when you opposed substitution.  You

11   were making a motion on behalf of somebody who's not a

12   party.

13         MS. CHAITMAN:  You know what, Judge?  The trustees

14   made this motion now.  We've been operating in this case.

15   They've known that Mr. Digiulian died for, you know, 17

16   months or so.  I can't remember exactly.

17         THE COURT:  Yeah, but you haven't formally

18   notified them, as required.

19         MS. CHAITMAN:  Right.

20         THE COURT:  All right.  So --

21         MS. CHAITMAN:  But they've known all this time.

22         THE COURT:  Well, but they don't have to do

23   anything until you give them the notice that they're

24   entitled to, under the rules.

25         MS. CHAITMAN:  So if you've -- if you grant their

1   motion to amend the caption, can I then make this motion

2   again?

3            THE COURT:  Okay.

4            MS. CHAITMAN:  Or are you --

5            THE COURT:  Well, I -- one, I'll just deal with it

6   as a motion to dismiss.  I'll grant the motion to

7   substitute.  I'll just deal with it as a motion to dismiss,

8   if nobody has any objections.  Well, it looks like it's been

9   briefed, although I haven't seen -- as I said, I haven't

10  seen any cases --

11           MS. CHAITMAN:  Well, I'd like to deal with the

12  subsequent transferee issue.  So why don't we --

13           THE COURT:  We're not -- this is not a subsequent

14  transferee case, though.  What's the subsequent transferee

15  issue?

16           MS. CHAITMAN:  If the allegation is that -- there

17  was no estate proceeding in Florida, because there were no

18  estate assets.

19           THE COURT:  I understand.

20           MS. CHAITMAN:  The trustee filed a claim, which

21  forced Mrs. Digiulian to step in as executrix.  So the only

22  way the trustee could ever recover is to get a judgment

23  against the estate, which has no assets, and then seek to

24  sue a subsequent transferee.

25           THE COURT:  Well, if the trustee wants to do that,

Page 63

1    that's the trustee's option.  You know, the trustee, like

2    any litigant, will have to make a business determination

3    whether it's worthwhile to do that, I suppose.

4           MS. HOCHMUTH:  Your Honor, if I may?

5           THE COURT:  But we're getting ahead of ourselves.

6    The issue that you've raised is that, because of this

7    exemption statute, anything that was received, put into that

8    account can't be a fraudulent transfer.  That's really what

9    you're arguing.

10           MS. CHAITMAN:  And also that you can't sue someone

11   for having received and used the withdrawals from the IRA.

12           THE COURT:  But that's not an issue in the case.

13   In other words, the judgment, if the trustee recovered one,

14   would not be based on Mr. Digiulian's transfer out of that

15   account.  It's based on BLMIS' transfer into the account.

16       (Pause)

17           MS. CHAITMAN:  My reading of Florida law is that

18   that's completely apart.  It's like suing the IRA --

19           THE COURT:  Tell me the case, and I will be happy

20   to read it.

21           MS. CHAITMAN:  But you've read all the cases that

22   I've cited?

23           THE COURT:  I have.

24           MS. CHAITMAN:  And you -- okay.

25           THE COURT:  Any other cases?

```
 1            MS. CHAITMAN:  Just the cases I've cited.  I read

 2     them differently.

 3            THE COURT:  All right.  All right.

 4            MS. CHAITMAN:  But I understand your --

 5            THE COURT:  Look, I'm going to grant the motion to

 6     substitute, and I'm going to deny the motion to dismiss the

 7     statute, which is Florida statute, I think, 221.21 or

 8     222.21.

 9            MS. CHAITMAN:  That's correct.  21.  And the

10     exemption is 222.29.

11            THE COURT:  Right, is an exemption against

12     collection?  It has nothing to do -- and I dealt with this

13     issue, I know, in the omnibus motion to dismiss, under New

14     York law, though the law may be a little different.  But

15     it's an exemption against collection.  It doesn't bullet-

16     proof fraudulent transfers into the account.

17            And maybe or maybe not, in a hypothetical

18     situation, a trustee could not enforce a judgment against

19     the IRA account.  The debtor may have -- or the transferee

20     may have other assets which are non-exempt and against which

21     a judgment could be canceled.  The Florida statute, which

22     has been relied on, as I said, is a judgment enforcement

23     exemption statute or an exemption statute.  So you can't

24     collect from that account, and maybe you can't collect if

25     money is transferred from that account, otherwise exempt
```

Page 65

1    money is transferred from that account and it can be traced

2    into some other non-exempt asset.

3            But that's not an issue before me, either.  The

4    transfers from BLMIS into that account -- the statute

5    doesn't deal with that issue.  As I noted, Judge Rakoff

6    dealt with a similar issue in Greef (ph), when he was

7    dealing with withdrawals from federal accounts.  Although he

8    was dealing with the fact that it was mandatory, it's still

9    a withdrawal.  So under the circumstances, the motion is

10   denied.  You can submit an order on that or the cross

11   motions.

12           MS. CHAITMAN:  Thank you, Your Honor.

13           THE COURT:  By the way, there are no cross motions

14   in federal practice.  There are under the CPLR, but none of

15   them in federal or civil procedures.

16           MS. CHAITMAN:  Sorry, Judge.

17           THE COURT:  All right.  So the motion to

18   substitute is granted.  Motion to dismiss or cross motion to

19   dismiss is denied, for reasons stated on the record.

20           All right.

21           MS. CHAITMAN:  I think that's it for

22   (indiscernible).

23           THE COURT:  Okay, thank you.

24           Now we have one other interesting Madoff matter

25   regarding a certification of -- the certification decision.

Page 66

1    This doesn't involve you.

2              MS. CHAITMAN:  This doesn't involve me, I think.

3              THE COURT:  But you're welcome to stay.

4              MR. HUNT:  Your Honor, just to -- procedurally, we

5    also have the pretrial in the Goldenberg matter.

6              THE COURT:  Oh, I'm sorry.

7              MR. HUNT:  But I think --

8              THE COURT:  Okay.

9              MR. HUNT:  -- we can --

10             THE COURT:  Let me just deal with that one first.

11             MR. HUNT:  Yeah, it's a pretty quick one, I think.

12             THE COURT:  It's just a question of scheduling a

13   trial?

14             MR. HUNT:  Yes, Your Honor, I think this is

15   actually something that we could classify as being routine

16   in these cases.

17             THE COURT:  Oh, I forgot to mention, by the way,

18   in those other cases -- Ms. Chaitman, don't leave yet.

19             MS. CHAITMAN:  I'm sorry.

20             THE COURT:  Exchange witness lists and pre-marked

21   exhibits seven days before the scheduled beginning of the

22   trial in each case.  Plaintiffs can use numbers.  Defendants

23   can use letters.  Okay?

24             MS. CHAITMAN:  Okay.

25             THE COURT:  And you can add that into the orders

Page 67

1      also.

2                MS. CHAITMAN:  Okay.

3                THE COURT:  Okay.  Goldenberg.  This one is ready

4      for trial?

5                MR. HUNT:  Yes, Your Honor.  So just to clarify on

6      that one, discovery and mediation are complete.  The parties

7      are actually working on proposed stipulation of facts to

8      move the case toward summary judgment.  We expect we'll have

9      that stipulation complete prior to the June omnibus hearing

10     and would suggest that, in June, after we've submitted that

11     to the Court, we can set a schedule for briefing.

12               THE COURT:  What's the June date?

13               MR. HUNT:  It's June 28th.

14               THE COURT:  So you want to adjourn this to June

15     28th while you're working on a stipulation?

16               MR. HUNT:  That's correct, Your Honor.  Yes, Your

17     Honor.

18               THE COURT:  Okay.  Thanks.

19               MR. HUNT:  Thank you, Your Honor.  I appreciate

20     it.

21               THE COURT:  All right.

22               And we have the RBS matter.

23          (Pause)

24               THE COURT:  All right.

25               MS. WOLTERING:  Thank you.  Good morning or

1      afternoon.

2                THE COURT:  It's still morning.

3                MS. WOLTERING:  Good morning.  Catherine

4      Woltering, of BakerHostetler, on behalf of the trustee,

5      Irving Picard.  We're here today at a conference regarding

6      Your Honor's memorandum decision denying certification

7      directed to the ABN AMRO Bank and the case now known as

8      Royal Bank of Scotland.  I'll probably refer to them as RBS

9      -- and their party letter submissions concerning the --

10               THE COURT:  I'll have to ask you to keep your

11     voice up.

12               MS. WOLTERING:  Oh, I apologize.

13               THE COURT:  I'm getting -- we're getting some

14     competition outside.

15               MS. WOLTERING:  The parties' letter submissions

16     following connection to settling the order and with respect

17     to your decision.  The trustee's position is laid out in his

18     May 16th, 2017 letter.  So I'll keep my comments brief and

19     answer any questions you may have.

20               As you're aware, --

21               THE COURT:  They say I had no jurisdiction to

22     issue the decision.  What's your position on that one?

23               MS. WOLTERING:  As you're aware, we raised a

24     timing concern regarding the Court's (indiscernible) in your

25     Federal Rule of Bankruptcy Procedure 8006 to enter the

1   memorandum decision.  We are now --

2           THE COURT:  Or you are doing it, I should say,

3   although --

4           MS. WOLTERING:  Yeah.

5           THE COURT:  -- the result is the same, I guess.

6           MS. WOLTERING:  Yeah.  And now to enter an order

7   settling the same, the Court's authority to decide the

8   certification motion from 28 U.S.C. 158(d)(2) and which

9   Court has authority at which time is governed by 8006.

10  However, there was a December 31st, 2014 amendment to the

11  Federal Rules of Bankruptcy Procedure governing

12  certification motions.  This change is what's caused the

13  issue resulting in today's hearing.

14          Prior to 2015 -- they're effectively 2015

15  amendment, December 31st, 2014.  It was a Rule 8001 that

16  governed certification motions.

17          THE COURT:  I know the history.

18          MS. WOLTERING:  Okay.

19          THE COURT:  You say I shouldn't have issued the

20  decision.  After 30 days, --

21          MS. WOLTERING:  Correct.

22          THE COURT:  -- I lost jurisdiction.  And I guess

23  you're arguing, although it's for the District Court to

24  decide, that after the 31st day, the issue was -- or the

25  motion for certification was automatically deemed vested in

Page 70

1    the District Court, right?

2            MS. WOLTERING:  Correct, Your Honor.  It was

3    pending.

4            THE COURT:  I got it.

5            MS. WOLTERING:  Okay.

6            MR. FELDBERG:  Your Honor, the trustee argues --

7    Michael Feldberg, from Allen & Overy, for Royal Bank of

8    Scotland.  Trustee argues in its May 16th letter that the

9    Court's decision on certification is null and void because

10   the Court lacked subject matter jurisdiction.  Your Honor,

11   there's no authority for the proposition that the Court

12   lacked --

13           THE COURT:  Well, but usually, once a notice of

14   appeal is filed, whether it's prudential or otherwise, the

15   lower Court loses its jurisdiction, that somehow this 30-day

16   window is carved out in a -- to permit the certification --

17   to permit the lower Court to decide the certification

18   motion.

19           MR. FELDBERG:  Your Honor, in the stipulated final

20   order, the trustee stipulates that the Court has subject

21   matter jurisdiction.  I suspect what your --

22           THE COURT:  But you can't consent to subject

23   matter jurisdiction.

24           MR. FELDBERG:  But there's simply no authority for

25   the proposition that the Court lacks subject matter

Page 71

1    jurisdiction, Your Honor.  I suspect what the argument

2    really boils down to is that Rule 8006(f) imposes a

3    procedural limitation on the Court's authority to decide the

4    certification questions.  But in these facts, it doesn't.

5            Rule 8006(f) provides that -- actually, excuse me.

6    8006(d) -- that only the Court where the matter is pending,

7    as provided in subdivision (b), may certify a direct review

8    on request of parties on its -- or on its own motion.  The

9    Court did not certify --

10           THE COURT:  Oh, so you draw a distinction between

11   certification and denial of certification?

12           MR. FELDBERG:  Yes, I do, Your Honor, because the

13   rule draws it.

14           THE COURT:  And that would -- and you think that

15   was within the purview of the rule-makers when they came up

16   with this?

17           MR. FELDBERG:  Your Honor, I've been at this too

18   long to try to figure out what was in the purview of the

19   rule-makers.

20           THE COURT:  Well, I'm on that committee, but --

21       (Laughter)

22           MR. FELDBERG:  I can tell Your Honor is way ahead

23   of me on that.  But --

24           THE COURT:  Okay.  I just wanted to -- fair

25   warning before you said something.

Page 72

1        (Laughter)

2              MR. FELDBERG:  But in the areas the trustee frames

3    its argument in terms of whether the Court had to decide the

4    motion within 30 days.  But that's not what the rule says.

5    The rule says only the Court where the matter is pending.

6              THE COURT:  But I thought on the 31st day, it's no

7    longer pending here.

8              MR. FELDBERG:  That's right.  But Your Honor never

9    certified.  No Court has ever certified.

10             Now, to the extent that, under the trustee's

11   reading of Rule 8006, there's some procedural limitation on

12   the Court's ability to act.  The procedural limitations are

13   waived all the time.  We cite some authority for the

14   proposition in our May 18th letter.  The trustee was on

15   notice of this 30-day requirement at our March 29th hearing

16   on certification.

17             The trustee's counsel raised the 30-day rule.

18   Your Honor said, "Well, if you think you should, file a

19   motion in the District Court within 30 days."  They didn't

20   do that.

21             Moreover, the matter is now moot, because of Rule

22   8006(f).  A request for certification must be filed with the

23   clerk of the court where the matter is pending, wherever

24   that court is, within 60 days after the entry of judgment.

25   And we're considerably past 60 days.

1           THE COURT:  But this is not really an argument for

2      the District Court.  In other words, you could argue to the

3      District Court they had to file something in the District

4      Court, not deemed filed something in the District Court

5      within 60 days.  And they didn't do it.

6           MR. FELDBERG:  Yep, we could, and we're arguing

7      that now here.

8           THE COURT:  But isn't that really a decision for

9      the District Court?

10          MR. FELDBERG:  Not the way we read the rule, Your

11     Honor.  As we read it, Your Honor -- there's been no

12     violation of any of the elements of Rule 8006 here.  And the

13     matter is before the District Court.  If they want to renew

14     a motion in the District Court, just to ask for some relief

15     at the time this matter goes on to the District Court, I

16     can't think of a way we could prevent that from happening.

17     But as of now, this matter is in the District Court for

18     review.

19          Final point, Your Honor, -- even if trustee were

20     right on everything they say, the argument that Your Honor's

21     decision is null and void, we think, is not the right

22     argument.

23          THE COURT:  Well, I would just vacate it.

24          MR. FELDBERG:  Well, at a minimum, Your Honor, the

25     Court that is most familiar with the matter that has been

1    through the briefing, has the history, has the familiarity

2    with the facts and the law, at a minimum, has the authority

3    to write something that is the functional equivalent of a

4    report and recommendation, which the District Court could

5    review and either follow or not in its discretion.

6              THE COURT:  Well, but that is because I have

7    jurisdiction.  I have jurisdiction.  I'll just issue the

8    decision.

9              MR. FELDBERG:  But we think you have jurisdiction,

10   Your Honor.  And we think the decision is --

11             THE COURT:  All right.

12             MR. FELDBERG:  Your Honor made it.  Your Honor

13   considered it.  Your Honor determined not to certify, and

14   there's been no violation of any of the provisions of Rule

15   8006.

16             THE COURT:  Right.  Thank you.

17             MR. FELDBERG:  Thanks.

18             MS. WOLTERING:  Your Honor, if I may?

19             THE COURT:  Briefly, yes.

20             MS. WOLTERING:  Yeah, so in our letter, we cited

21   one case, and the Great Town (ph) case is an example.  In

22   their reply letter, they stated the IMMC (ph) case, all

23   standing for the proposition that Rule 60(f) requires us --

24   or 8006(f) requires us to refile in the District Court or

25   for the proposition that this is their interpretation of

Page 75

1    8006 is correct.  Since the time of our letter submissions,

2    we've identified several other cases that are on point that

3    have dealt with the rule since the amendment.  And we

4    actually have a chart of the cases and the relevant ECF

5    numbers.  Because I'm sure you can appreciate the dockets

6    are quite complicated, and the decisions don't always refer

7    to --

8              THE COURT:  What is the chart that you have?

9              MS. WOLTERING:  So we have a chart that just

10   simply lists all the different cases --

11             THE COURT:  Have you seen it?

12             MS. WOLTERING:  -- where we've identified on point

13   that dealt with 8006 since the amendment, beyond just the

14   IMMC and Great Town cases, including the Energy Future

15   Holdings case, which the District Court criticizes the

16   trustee for filing their request the day after the

17   Bankruptcy Court -- the expert in bankruptcy law and

18   intimately familiar with the case lost her (indiscernible)

19   but recognized that it was automatically deemed pending

20   before the District Court.  And it had jurisdiction to hear

21   it.  So it recognized that 8000(f) (sic) is when you file.

22   The parties' obligations -- you don't have to refile.  You

23   just file once within the first 60 days.

24             8000(d) (sic) is when and which Court can hear it,

25   as determined by the timing in 8006(b).  Mr. Feldberg,

1    respectfully, hasn't submitted any authority contrary.  So

2    unless Your Honor has questions, we'll give you this chart

3    for your own reference, if you want it, and to make your

4    decision.

5              THE COURT:  This chart has more authorities than

6    were in your letter?

7              MS. WOLTERING:  Correct.

8              THE COURT:  All right.

9              I'll give you an opportunity to respond, if you

10   want, Mr. Feldberg.

11             MS. WOLTERING:  We provided this to him --

12             MR. FELDBERG:  Not today, but --

13             MS. WOLTERING:  We provided this to him yesterday

14   as well.

15             THE COURT:  Great.

16             MR. FELDBERG:  Your Honor, they did provide the

17   chart to us last night.  We've reviewed it.  We think each

18   of the cases is distinguishable.  We'll be happy --

19             THE COURT:  I'd love to hear it.

20             MR. FELDBERG:  If you'd rather have a letter, Your

21   Honor, we'll submit it.

22             THE COURT:  But -- yeah, I think a letter would

23   make more sense.  And also, if you have discovered any

24   authorities of the proposition that they have to refile in

25   the District Court after the 30 days, that would also be

Page 77

1    relevant, obviously, to the inquiry.

2              MS. WOLTERING:  Your Honor, may I approach?

3              THE COURT:  Yes.

4              It's now Wednesday.  Can you write me your reply

5    by Friday?

6              MR. FELDBERG:  Yes, Your Honor.

7              THE COURT:  All right.  And then the matter will

8    be deemed submitted.

9              MR. FELDBERG:  Thank you, Your Honor.

10             MS. WOLTERING:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12         (Whereas, these proceedings were concluded at 11:52

13    A.M.)

14

15

16

17

18

19

20

21

22

23

24

25

Page 78

1                           I N D E X

2

3                           RULINGS

4                                                         PAGE

5   Report Deadline                                        23

6   Subpoena to Depose BLMIS Employees                     30

7   Application of Discovery Arbitrator's Orders           38

8   Motion to Substitute                                   64

9   Motion to Dismiss Florida Statute                      64

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3    We, Tracey Williams and Nicole Yawn, certify that the

4    foregoing transcript is a true and accurate record of the

5    proceedings.

6

7    _____

8    Tracey Williams

9    AAERT Certified Electronic Transcriber CET-914

10

11

12

13   _____

14   Nicole R. Yawn

15

16

17   Date:  June 2, 2017

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

[& - account]                                                                 Page 1

**&**

**&**   8:18 70:7

**0**

**08-01789**   1:9

**1**

**1**   43:7,8,9,25
**10**   45:8 53:25
**10-04377**   2:21
  5:23
**10-04658**   3:5 6:1
**10-04728**   3:13 6:5
  6:9
**10-04898**   1:18
  5:10
**10-04946**   2:5 5:14
**10020**   8:21
**10022**   8:14
**10111-0100**   7:5
**10119**   9:6
**10:40**   3:23
**11**   45:8
**11-02760**   2:13
  5:18
**11/2**   53:21
**1100**   7:14
**1150**   34:9
**11501**   79:25
**11th**   57:14
**1221**   8:20
**14th**   49:19
**158**   69:8
**15th**   42:17
**16th**   49:3 68:18
  70:8
**17**   61:15
**17th**   12:3 14:16
  15:2 21:16 25:7
  49:13
**18th**   72:14
**19**   15:15
**1980s**   11:17 13:23

**1992**   11:15 14:3,6
  14:9 15:14,17,21
  23:4,8,11 24:9,9
  27:5 29:9 31:15
  47:23
**1993**   24:9
**1997**   15:23

**2**

**2**   69:8 79:17
**20**   14:10
**2000**   13:20 15:18
  27:10
**2002**   18:1,3
**2006**   27:11
**2008**   18:1 27:11
  57:14
**2014**   69:10,15
**2015**   69:14,14
**2016**   12:3 21:16
  25:7,19,20 26:8
  48:17,18,19 49:4
  49:13
**2017**   3:22 13:3
  41:5 42:17 44:10
  68:18 79:17
**21**   64:9
**2100**   8:4
**221.21**   64:7
**222.21.**   64:8
**222.29.**   64:10
**23**   78:5
**25th**   14:10
**26**   27:22 28:22,24
**26th**   14:11 15:7
  51:20
**27th**   13:3 14:11
**28**   69:8
**28th**   51:20 67:13
  67:15
**29th**   72:15
**2nd**   51:22

**3**

**3**   49:13
**30**   11:11 52:17
  53:7 54:2,2 55:7
  55:13 69:20 70:15
  72:4,15,17,19
  76:25 78:6
**300**   79:24
**30th**   56:21
**31**   3:22
**31st**   51:21 53:21
  54:25 69:10,15,24
  72:6
**330**   79:23
**38**   78:7
**3rd**   51:20 52:24

**4**

**43215**   8:6
**4377**   54:19,20,24
**45**   7:4
**465**   8:13
**4658**   54:18,19
  55:1
**4th**   39:15 40:13
  41:11 52:24

**5**

**5**   28:8,11
**5th**   51:21 52:24

**6**

**6**   13:24 14:20 15:2
**60**   72:24,25 73:5
  74:23 75:23
**64**   78:8,9
**65**   8:5
**6th**   49:4

**7**

**7**   43:8
**703**   13:25 14:19
  15:8,25
**77002-6111**   7:15

**7th**   25:15,17,18
  26:8 49:21

**8**

**8000**   75:21,24
**8001**   69:15
**8006**   68:25 69:9
  71:2,5,6 72:11,22
  73:12 74:15,24
  75:1,13,25
**80s**   45:3
**811**   7:13
**850**   34:9
**87**   19:8,23 20:16

**9**

**914**   79:9
**9th**   39:1,19,25

**a**

**a.m.**   77:13
**aaert**   79:9
**abandon**   38:7
**abandoned**   54:3
**abide**   40:17,18,23
**ability**   13:12 35:9
  72:12
**able**   15:3,5,18
  16:17,18 45:15
  58:2
**abn**   2:14 5:19
  8:19 68:7
**absolutely**   14:15
  28:17
**acceptable**   36:14
**access**   14:17
**accompanying**
  43:15
**account**   13:25
  14:19 15:8,25
  25:2 53:11 56:7
  56:11,14 57:5,6,6
  57:7 58:7 59:13
  59:14 60:9,18
  63:8,15,15 64:16

64:19,24,25 65:1
65:4
**accounts** 16:8
23:4 51:15 65:7
**accurate** 79:4
**act** 72:12
**active** 20:3
**actual** 24:19
**add** 33:18 66:25
**adding** 12:7
**addition** 43:8
**additional** 12:6
18:16 20:13 26:24
29:22 43:4
**address** 21:8
**adhered** 36:7
**adjourn** 50:19
67:14
**admissible** 28:2
**admit** 35:21
**admits** 23:10
55:23
**adv** 1:9,18 2:5,13
2:21 3:5,13
**advance** 36:9
**advanced** 27:17
**advancing** 37:25
**adversary** 5:10,14
5:18,23 6:1,5,9
11:8 32:20 33:7
**affiant** 43:17
**affidavit** 38:11
43:17,18 46:25
**affidavits** 43:10
43:11
**affirmative** 36:16
37:21 38:6,7,25
**afternoon** 68:1
**agenda** 10:6 23:23
**agree** 35:16 36:16
38:14,20 42:2,5
46:1 51:12

**agreed** 31:21 35:2
41:17
**agreements** 44:24
45:7,12,16 46:10
46:18,20
**agrees** 23:9
**ahead** 10:13 30:22
63:5 71:22
**al** 1:11,16 2:3,11
2:19,22 3:3,11
5:24 6:2
**allegation** 62:16
**allegations** 59:5
**allege** 57:4
**alleged** 58:22
**allen** 8:18 70:7
**allow** 25:10 29:10
30:7
**allowed** 17:10
18:6 20:2 44:5
**allowing** 25:23
**amend** 62:1
**amended** 36:18
**amendment** 69:10
69:15 75:3,13
**americas** 8:20
**amro** 2:14 5:19
8:19 68:7
**analysis** 46:6
**announced** 11:9
**answer** 37:13
68:19
**answers** 38:23
**anticipate** 21:7
**anyway** 37:7
52:12
**apart** 63:18
**apologize** 10:2
21:18 43:3 68:12
**apparent** 11:14
**apparently** 11:11
**appeal** 70:14

**appear** 27:20
**appeared** 14:2
16:9
**appears** 27:19
**apple** 23:21
**applicable** 40:13
**application** 5:7
26:16 78:7
**applies** 39:14
**apply** 35:14,20
36:6 38:17
**applying** 41:14
**appointment** 35:1
**appreciate** 67:19
75:5
**approach** 77:2
**appropriate** 41:9
**approve** 35:1
**april** 13:3 14:7,10
14:24 15:7
**arbitrage** 15:23
28:13
**arbitrate** 35:2
**arbitrated** 35:10
**arbitration** 23:8
**arbitrator** 18:9,16
39:24
**arbitrator's** 5:8
34:20 78:7
**areas** 72:2
**argue** 32:2 73:2
**argues** 70:6,8
**arguing** 24:8
59:25 63:9 69:23
73:6
**argument** 33:9
37:25 58:3 71:1
72:3 73:1,20,22
**articulable** 28:24
**asked** 11:4 13:7
14:14 25:3 36:20
50:13

**asking** 10:14
12:25 17:22 61:8
61:8
**asks** 27:4 28:8
**assertions** 38:9
**asset** 58:5 60:2
65:2
**assets** 59:15 62:18
62:23 64:20
**assume** 49:6 50:1
**attach** 39:10
**attached** 28:7
**attempt** 18:23
**attorney** 8:3,11
8:19 9:4
**attorneys** 7:3,12
**authorities** 76:5
76:24
**authority** 46:1,18
69:7,9 70:11,24
71:3 72:13 74:2
76:1
**automatically**
69:25 75:19
**availability** 54:6
**available** 18:21
23:15 51:3,19
54:10 55:2
**avenue** 8:13,20
**averring** 38:12
**aware** 68:20,23

**b**

**b** 4:1 5:11,15,19
5:24 6:2,6 71:7
75:25
**back** 13:5 15:17
31:18 36:25 39:24
45:2 49:24
**background** 12:1
34:25
**baker** 7:2,11 8:2
**bakerhostetler**
68:4

**balance** 45:9
**bank** 2:14 5:19
  8:19 37:20 38:2
  68:7,8 70:7
**bankruptcy** 1:1
  3:18 4:3 32:21
  68:25 69:11 75:17
  75:17
**banks** 37:15
**barred** 41:2 44:9
  44:13
**based** 12:19 24:15
  24:17 59:3 63:14
  63:15
**basic** 60:22
**basically** 59:25
**basis** 16:23,23
  26:19,21 28:24
  32:5 38:9 56:5
  61:7
**baskets** 16:4
**batch** 46:4
**beginning** 54:13
  66:21
**behalf** 18:12
  28:18 55:21 61:11
  68:4
**behr** 15:8
**believe** 13:3,3
  15:7 25:15 45:25
  46:1,3,13 49:2,13
**believes** 56:5
**benefit** 56:7
**bernard** 1:10,15
  2:2,10,18 3:2,10
**bernstein** 4:2
**beyond** 28:6
  75:13
**big** 32:21
**billion** 13:24
  14:21 15:3 45:8
**bills** 15:8,25 16:3
  16:6,7,9

**binding** 33:7
**birt** 9:8
**bit** 11:6
**bite** 23:21
**blmis** 5:2 13:20
  17:16 18:17 26:13
  27:9 29:1,22 59:8
  59:19 63:15 65:4
  78:6
**blmis's** 28:15
**bloomberg** 14:12
  14:16,17
**blunderous** 28:25
**body** 13:14
**boils** 71:2
**bought** 18:12
**bowling** 3:19
**brief** 39:9 68:18
**briefed** 62:9
**briefing** 67:11
  74:1
**briefly** 43:10
  74:19
**brothers** 15:9
**bruce** 11:12
**bruno** 55:23
**bullet** 64:15
**business** 63:2
**buying** 24:19

**c**

**c** 7:1 8:1 9:1 10:1
  43:7,9 79:1,1
**calendar** 52:19
  53:1 54:4
**call** 30:1,1,11
**canceled** 64:21
**capitol** 8:4
**caption** 62:1
**care** 52:10
**carefully** 36:13
**carol** 53:12,14,19
  54:16,19

**carved** 70:16
**case** 1:9,18 2:5,13
  2:21 3:5,13 15:12
  23:13 25:21 27:23
  32:21 36:21 38:11
  39:3,4 40:9,9,25
  41:6 42:7 44:13
  44:14,19 45:21
  46:3 48:10,13,22
  49:5,6,22 50:2,5,7
  50:8 51:10 53:5
  54:17,23 59:3
  60:10 61:2,6,14
  62:14 63:12,19
  66:22 67:8 68:7
  74:21,21,22 75:15
  75:18
**cases** 10:18,20
  19:5,8,16,17,23
  20:2,4,11,14,16
  22:19,24,25 23:2
  23:3,18,22 24:2
  24:21 26:7 30:19
  32:10 34:9,11,13
  35:3,15,19,21
  36:10,24 37:7
  38:10,17 39:24
  40:13,21 41:14
  42:3 43:12,23
  45:18 48:4,9,17
  48:19 49:14,17,21
  50:18 51:5,6,14
  52:23 55:8 56:1
  57:3,4,4 58:2,6,14
  58:20 59:24 60:4
  60:5,8 62:10
  63:21,25 64:1
  66:16,18 75:2,4
  75:10,14 76:18
**categories** 36:19
**catherine** 8:8 68:3
**caused** 69:12

**caveat** 41:16
**certain** 32:15
  36:16
**certainly** 47:16
**certification** 5:21
  65:25,25 68:6
  69:8,12,16,25
  70:9,16,17 71:4
  71:11,11 72:16,22
**certified** 72:9,9
  79:9
**certify** 71:7,9
  74:13 79:3
**cet** 79:9
**chaitman** 8:10,16
  10:8,10,16 11:3,7
  11:21,25 12:2,12
  12:18,24 13:2,10
  13:12,22 14:4,7
  14:10,23 15:1,15
  17:18,20 19:13
  21:14,23 22:1,20
  23:6,13,24 24:4
  24:10,14,17,25
  26:15,22 27:2,16
  29:14,23 30:14,20
  30:23 31:2,7,16
  31:20,22 32:9,13
  32:16,19 33:1,11
  33:14 34:16 35:2
  35:12,14 36:20
  37:25 38:20 39:16
  40:2,14 41:13,15
  41:22,24,25 42:1
  42:5,16,19,21,23
  43:11,22 44:1,8
  44:15,18,20,22
  45:4,6,13 47:13
  47:18,22 49:1,12
  49:24 50:3,6,10
  50:13,24 51:13,14
  52:3,8,10,13,18
  52:21 53:6,11

54:22 56:20,24
57:12,16,20,24
58:8,17,24 59:2,9
59:11,16 60:4,6,8
60:15,17,24 61:3
61:7,13,19,21,25
62:4,11,16,20
63:10,17,21,24
64:1,4,9 65:12,16
65:21 66:2,18,19
66:24 67:2
**chaitman's** 22:25
34:1,13 36:15
39:14 48:4 51:10
**challenge** 14:8
**change** 69:12
**chart** 75:4,8,9
76:2,5,17
**chase** 15:9
**check** 50:4 55:17
**chief** 20:6
**choose** 40:22
**chosen** 27:20
**circumstances**
41:8 65:9
**cite** 72:13
**cited** 56:25 63:22
64:1 74:20
**civil** 65:15
**claim** 62:20
**claims** 43:16
45:21 56:10
**clarification**
48:14
**clarify** 28:10 67:5
**classify** 66:15
**clawback** 25:5
**clear** 11:16
**clearing** 17:25
**clerk** 72:23
**client** 58:21,22,23
**client's** 41:1

**clients** 21:15,23
33:2 34:7 35:9
36:7 48:4 50:13
**clock** 24:2
**close** 25:22 49:2
51:6
**closed** 22:19 23:2
23:18 25:14 26:8
48:16,18 49:6,18
49:23
**collect** 64:24,24
**collection** 64:12
64:15
**columbus** 8:6
**come** 23:17 29:25
41:18 42:12
**comes** 32:1
**coming** 31:18
36:25 43:25
**comments** 68:18
**committed** 60:14
**committee** 71:20
**common** 16:7
20:12
**company** 17:25
**compel** 12:3 17:5
21:16 35:4,6
43:13
**compelling** 35:5
35:17 38:22
**competition** 68:14
**complaint** 16:10
59:6
**complete** 13:14
30:25 67:6,9
**completed** 26:7
**completely** 12:8
16:14,25 23:2
34:12 63:18
**completion** 31:11
**compliance** 34:2
39:25

**complicated** 75:6
**complied** 35:6
**comply** 35:17
**complying** 43:22
**computation**
32:24
**concealed** 12:14
**concede** 24:5,7
**conceded** 23:6
**concern** 68:24
**concerning** 37:21
68:9
**conclude** 21:20
**concluded** 77:12
**concludes** 13:4
**conclusion** 20:24
21:2,11,13 32:1
**conducted** 28:18
**conducting** 29:14
**conference** 5:1,4
5:7,12,16,20,25
6:3 68:5
**conferences** 10:12
23:3
**confessed** 47:15
**confirm** 15:19
39:2
**confirmation** 38:5
**congratulations**
42:21
**connection** 43:18
46:5 58:16 68:16
**consent** 36:22
70:22
**considerably**
72:25
**consideration**
27:18 31:25 46:5
46:12
**considered** 74:13
**considering** 27:8
**consistent** 28:21
42:18,19 48:15

**consolidated**
32:11,15
**constitute** 46:24
**constructed** 36:14
**constructive**
45:20
**consulted** 51:2
**contd** 8:1 9:1
**contemplated**
22:20
**contend** 16:24
**contended** 28:11
**contesting** 23:7
38:3
**context** 11:8 38:2
**continue** 10:19
13:18 25:22
**continuous** 34:14
**contrary** 29:23
76:1
**contrast** 34:13
**control** 50:17
**convertible** 15:22
28:13
**conveyances**
56:11
**convinced** 58:11
**coordinated** 20:5
29:11 30:18
**coordination** 30:2
**corporation** 1:7
**correct** 17:4 20:10
25:20 27:15 34:21
39:8 41:13,15
49:9 54:17 59:20
64:9 67:16 69:21
70:2 75:1 76:7
**correctly** 30:5
**cost** 18:22
**counsel** 55:23
72:17
**counsel's** 56:4

**country** 79:23
**couple** 17:23 39:3
  48:4 49:1
**court** 1:1 3:18
  10:2,7,12,16,22
  10:25 11:5,20,23
  12:1,5,10,15,22
  12:25 13:10,19
  14:3,5,8,22,25
  15:13 16:21 17:1
  17:3,6,8,10,14,18
  17:20 18:6,8 19:1
  19:4,7,10,13,18
  19:21,25 20:8,14
  20:20 21:1,4,10
  21:19,24 22:2,5,9
  22:11,14,17,22
  23:5,25 24:3,7,12
  24:16,21 25:9,17
  25:19,25 26:2,6
  26:11,13,19,25
  27:6,12,13,24
  28:2,13,20 29:1,4
  29:9,12,16 30:7
  30:13,17,22,24
  31:5,10,17,21,24
  32:12,14,17,23
  33:6,9,10,12,15
  33:18,21,24 34:3
  34:8,16,19,22,24
  35:1,13,20,23
  36:1,3,25 37:3,6
  37:10,13,17,22
  38:16 39:1,3,6,11
  39:17,20 40:4,5,9
  40:11 41:3,6,14
  41:16,20,23 42:6
  42:11,14,18,20,22
  43:2,6,21,24 44:2
  44:5,7,11,16,19
  44:21 45:2,5,11
  45:17,20,23 46:8
  46:15,23,25 47:3

47:7,10,16,19
48:1,3,7,11,13,21
48:25 49:5,10,16
49:20,23 50:1,4,8
50:12,15,20,25
51:4,8,10,12,17
51:23 52:1,5,7,9
52:11,14,19,22
53:3,8,14,17,21
53:25 54:12,15,18
54:20,24 55:3,5
55:10,11,11,15,19
56:1,13,19,23
57:3,15,19,22
58:1,12,12,14,19
59:1,7,10,12,18
59:22,24 60:5,7
60:13,16,22 61:1
61:4,8,17,20,22
62:3,5,13,19,25
63:5,12,19,23,25
64:3,5,11 65:13
65:17,23 66:3,6,8
66:10,12,17,20,25
67:3,11,12,14,18
67:21,24 68:2,10
68:13,21 69:2,5,9
69:17,19,22,23
70:1,4,10,11,13
70:15,17,20,22,25
71:6,9,10,14,20
71:24 72:3,5,6,9
72:19,23,24 73:1
73:2,3,4,4,8,9,13
73:14,15,17,23,25
74:4,6,11,16,19
74:24 75:8,11,15
75:17,20,24 76:5
76:8,15,19,22,25
77:3,7,11
**court's** 59:4 68:24
  69:7 70:9 71:3
  72:12

**covers** 57:24
**cplr** 65:14
**crafted** 38:21
**creation** 60:10
**creditors** 56:10
**criticizes** 75:15
**cross** 6:7 65:10,13
  65:18
**crowd** 30:22
**customer** 15:4
  16:1,9 18:18
**customers** 14:2
  15:22 16:6 18:12
  18:25 27:5 28:16
  28:18
**cut** 25:9
**cutoff** 25:16

**d**

**d** 7:17 10:1 69:8
  71:6 75:24 78:1
**dasaro** 7:9
**data** 11:10 12:8
  13:7,9 15:17
  18:19 49:15
**date** 12:11 13:10
  13:15 16:11,12
  17:13 18:7 19:5
  19:11,22,25 20:16
  21:22 25:1,10,13
  25:14 26:24 29:9
  32:18 39:2 49:25
  50:23 53:22 55:14
  55:15,17 67:12
  79:17
**date's** 55:2
**dates** 22:12 51:2,3
  51:4,18,19 52:14
  54:6,10,13,13
**david** 7:7
**davis** 8:16
**day** 36:21 69:24
  70:15 72:6,15,17
  75:16

**days** 38:20 48:24
  52:17,25 53:7
  54:2,2 55:7,13,15
  66:21 69:20 72:4
  72:19,24,25 73:5
  75:23 76:25
**deadline** 5:5
  12:11,17,17,22
  13:1,2 19:25
  21:12 23:1 26:6
  78:5
**deadlines** 12:24
**deal** 10:7,22 37:14
  52:25 58:20 60:7
  62:5,7,11 65:5
  66:10
**dealing** 65:7,8
**deals** 15:13
**dealt** 39:24 64:12
  65:6 75:3,13
**dean** 7:17 48:8
**debtor** 64:19
**deceased** 55:23
  56:8
**december** 16:2
  57:13 69:10,15
**decide** 17:3 33:24
  51:16 69:7,24
  70:17 71:3 72:3
**decided** 23:1
**decision** 5:20
  65:25 68:6,17,22
  69:1,20 70:9 73:8
  73:21 74:8,10
  76:4
**decisions** 75:6
**deem** 50:21 54:2
**deemed** 69:25
  73:4 75:19 77:8
**defendant** 1:20
  2:7 3:7,15 6:10
  8:19 9:4 55:23
  56:6,8,8

**defendants** 1:12 2:15,23 8:11 11:9 20:8,10,13 33:7 66:22
**defenses** 36:16 37:21 38:6,8,25
**defer** 30:9
**deficiencies** 39:15
**deficient** 35:7
**deliberately** 12:14
**demand** 27:3
**demanded** 33:2 35:14
**denial** 71:11
**denied** 65:10,19
**denominator** 16:7
**deny** 64:6
**denying** 5:20 68:6
**dep** 25:23
**department** 21:21
**depasquale** 14:13 14:17
**depend** 40:9
**depends** 44:19
**depose** 5:1 27:2 29:22 78:6
**deposed** 11:16
**deposing** 22:20 36:7
**deposition** 13:18 14:6,22 17:11 18:6 20:3,24 21:2 21:11,13 22:9 23:20 24:23 25:2 25:4,11,16 26:1,7 29:5,19 30:8,25 31:4,11,13 32:1,2 32:3,6 34:4 38:13 40:19,19 41:1 49:8
**depositions** 27:16 29:10 30:2 31:3,6 31:8 35:9

**depository** 17:24
**deposits** 37:11
**desk** 14:18 28:14
**destroyed** 11:17
**determination** 33:13 50:20 63:2
**determinations** 33:6
**determined** 74:13 75:25
**died** 57:18 61:15
**different** 12:24 22:12 64:14 75:10
**differently** 64:2
**digiulian** 3:14 6:6 8:11 39:23 55:19 55:23 57:17 58:10 59:8 60:12,13,21 60:24 61:15 62:21
**digiulian's** 63:14
**diligent** 18:4
**direct** 42:7 48:22 71:7
**directed** 17:8 68:7
**directly** 46:9
**disclosure** 12:7 20:6
**disclosures** 48:17
**discoverable** 27:21
**discovered** 76:23
**discovery** 5:1,4,7 5:8 10:15,18,19 12:13,16,19 15:12 17:21 18:9,15 22:19,23 24:21 25:7,12,14,21,22 26:8,23,24 27:22 29:11,14 30:1,11 31:1 33:17 34:1,2 34:3,6,12,14,17 34:19 35:18 36:1 36:19 38:23 39:14

43:15 47:4 48:16 48:18 49:2,3,6,13 49:17,18,23 67:6 78:7
**discretion** 74:5
**discuss** 30:10
**discussed** 43:10
**dismiss** 6:7 59:4 61:2,6 62:6,7 64:6 64:13 65:18,19 78:9
**dismissed** 59:3
**disputes** 10:15
**distinction** 32:21 71:10
**distinguish** 22:6
**distinguishable** 76:18
**distinguished** 53:9
**district** 1:2 33:10 50:20 55:10,11 69:23 70:1 72:19 73:2,3,3,4,9,13,14 73:15,17 74:4,24 75:15,20 76:25
**dockets** 75:5
**document** 27:3 28:7 35:8 38:23
**documentary** 43:13
**documents** 11:10 12:4,6 13:6 15:10 16:19 17:6,9 18:16,20 23:14 27:4,7 35:4 37:20 41:1,2 43:16 44:9 47:8 49:14
**doing** 23:23 36:9 58:9 69:2
**dollars** 18:22
**door** 17:14 29:21

**doubt** 27:6
**drafting** 20:22
**draw** 71:10
**draws** 71:13
**dubinsky** 11:12 11:14,17,22 14:9 23:15
**due** 48:17
**duplicative** 29:15

**e**

**e** 4:1,1 7:1,1 8:1,1 8:8 9:1,1 10:1,1 11:10 13:7,9 15:17 49:15 78:1 79:1
**earlier** 18:23 21:9 24:23 32:3 48:16
**earliest** 27:9
**east** 8:5
**ecf** 75:4
**edward** 7:8 10:4
**effect** 23:11 35:15 42:4
**effectively** 69:14
**efficiently** 30:5
**effort** 10:20 17:15 18:10 29:11
**either** 41:6 65:3 74:5
**electronic** 79:9
**elements** 73:12
**eligible** 19:15 20:12 29:13 30:3 49:7
**embodies** 44:3
**embody** 26:3,11
**employees** 5:2 26:14 29:22 78:6
**endorsed** 40:3 43:8
**energy** 34:3 75:14
**enforce** 39:25 56:13,17 59:13,15

60:20,20,21 64:18
**enforced** 40:4
  45:13
**enforcement**
  38:18 41:20 42:12
  64:22
**enter** 44:16 68:25
  69:6
**entered** 34:10,11
  36:6 37:1 55:16
  55:17,25
**entitled** 32:6 46:9
  60:18 61:24
**entity** 18:2
**entry** 72:24
**equal** 35:14
**equity** 38:6,24
**equivalent** 74:3
**equivocation**
  36:17
**eric** 14:13
**esq** 7:7,8,9,17,18
  8:8,16,23 9:8
**establish** 16:8
**estate** 55:22 56:17
  58:9,24 59:7,16
  59:21 60:21 62:17
  62:18,23
**estates** 56:3
**et** 1:11,16 2:3,11
  2:19,22 3:3,11
  5:24 6:2
**event** 13:11,12
  17:2 30:21 45:14
**events** 14:6
**everybody** 21:24
  31:18
**evidence** 13:23
  17:14,16 18:11
  27:21 28:8,17
  29:8,8 40:2
**evidentiary** 46:17

**exact** 13:15
**exactly** 42:16
  61:16
**examining** 17:12
**example** 36:7
  74:21
**exception** 38:21
  56:10
**exchange** 19:18
  66:20
**excluding** 21:15
**excuse** 25:2 71:5
**executed** 14:12
  15:23
**executrix** 62:21
**exempt** 56:9 57:1
  57:2 58:3,4,5
  59:15 60:2,2
  64:20,25 65:2
**exemption** 57:22
  63:7 64:10,11,15
  64:23,23
**exhibit** 40:16
**exhibited** 34:5
**exhibits** 35:23
  36:9 40:20 66:21
**exist** 18:24
**existed** 46:18
  59:13
**expand** 10:19
**expanded** 18:3
**expanding** 23:12
**expect** 52:11 67:8
**expedition** 27:19
  28:19
**expert** 5:5 11:6
  12:11,17,18 19:8
  19:19 20:5,6,16
  21:5,12,21 22:14
  22:19,23 23:1
  26:6,8 48:17,18
  49:2,3,11 50:5,6
  75:17

**experts** 20:7 51:2
  51:18 54:11
**explain** 44:13
**explosive** 15:11
  15:20 16:13
**extent** 16:8 26:22
  27:15 42:8 72:10

**f**

**f** 4:1 71:2,5 72:22
  74:23,24 75:21
  79:1
**face** 46:2
**fact** 16:23 24:8
  27:10 32:11 36:14
  38:13,21 43:15,16
  46:18 48:16 49:5
  49:13,17,18,23
  55:24 65:8
**factor** 46:4
**facts** 24:5 67:7
  71:4 74:2
**factual** 33:4 34:11
  38:9
**fails** 16:10
**fair** 40:10 71:24
**familiar** 12:1 37:3
  46:21 73:25 75:18
**familiarity** 74:1
**families** 45:4
**far** 30:21 50:18,25
**farrell** 7:18 55:20
**fashion** 29:15
  40:3
**favorable** 35:11
  35:12
**federal** 57:10
  58:16 65:7,14,15
  68:25 69:11
**fee** 11:11
**feldberg** 8:23 70:6
  70:7,19,24 71:12
  71:17,22 72:2,8
  73:6,10,24 74:9

74:12,17 75:25
  76:10,12,16,20
  77:6,9
**fiction** 17:7
**fictitious** 32:24
**fidelity** 15:9
**figure** 71:18
**file** 19:25 72:18
  73:3 75:21,23
**filed** 56:20 62:20
  70:14 72:22 73:4
**filing** 75:16
**final** 33:17,25
  70:19 73:19
**find** 18:23 29:19
  46:22 47:6
**findings** 33:4
**fine** 20:4 31:20,23
  44:2 52:10
**finish** 59:12
**finished** 42:23,24
**first** 11:1 14:22
  26:22 29:7 31:14
  35:2 36:8 39:6,20
  40:12 41:10 46:13
  49:16 60:22 66:10
  75:23
**fishing** 27:19
  28:19
**five** 10:18 16:5
**fix** 35:7 54:13
**floor** 14:16 15:2
**florida** 56:8,9,24
  57:10,20 58:11,12
  58:17,18 60:4,8
  60:19 62:17 63:17
  64:7,21 78:9
**focused** 34:2
**focusing** 37:6
**fold** 29:11
**follow** 26:23 42:2
  74:5

following 68:16
force 35:14
forced 62:21
foregoing 79:4
forget 26:4
forgot 40:25
  66:17
formal 27:13
formally 61:17
formerly 44:5
forms 10:15
forward 10:20
  23:11,22 32:5
  48:20 53:5
found 35:6 47:1
four 16:5 36:8
  45:2,4
frames 72:2
frank 14:13,17
fraud 11:13 15:21
  15:24 17:13,13
  18:7 19:14 21:9
  23:7 26:24 27:1
  27:17 29:9,13,17
  46:4,5 60:11,11
  60:14
fraudulent 16:25
  45:20,24 56:11
  57:9 58:23 60:1,3
  63:8 64:16
fraudulently 60:9
friday 77:5
full 23:11 24:9
fully 48:20
functional 74:3
funded 56:11
furnishing 43:14
further 25:12
  31:1
future 75:14

**g**

g 10:1 40:16
general 29:18
  41:7 44:17
genuine 14:14
getting 12:20 19:1
  63:5 68:13,13
give 13:15 50:18
  53:21 61:23 76:2
  76:9
given 28:8 46:14
go 10:13 11:5 13:6
  16:3,4,5 39:24
  41:17 42:3,8 55:8
goes 32:23 44:25
  73:15
going 10:18 12:19
  13:21 15:17 19:4
  19:7,21 20:18
  21:19 27:6 29:19
  31:9 32:5,5 38:14
  41:6 44:12,16
  50:10,12,16,17,21
  50:23 52:11 53:5
  54:8 59:3 64:5,6
goldberg 56:25
goldenberg 2:6
  5:15 9:4 66:5 67:3
good 10:4 48:7,8
  51:23 67:25 68:3
governed 27:1
  29:12 69:9,16
governing 25:24
  30:10 69:11
grant 28:20 61:25
  62:6 64:5
granted 55:24
  65:18
grants 55:11
great 74:21 75:14
  76:15
greef 65:6

green 3:19
guess 10:12 22:6
  27:25 28:4 47:16
  69:5,22

**h**

h 1:14 2:1,9,17
  3:1,9 5:10,18,23
  6:1,5 7:3,12 8:3
  40:16
half 18:22
halloween 51:22
handful 36:24
handled 51:6
happened 56:12
happening 73:16
happy 63:19
  76:18
hard 23:23
hear 31:19 75:20
  75:24 76:19
heard 24:4,7
  39:16
hearing 5:1,4,7,10
  5:14,18,23 6:1,5,9
  30:10 67:9 69:13
  72:15
hearings 44:6
held 13:5 56:7
helen 8:16
helpful 39:9
history 69:17 74:1
hochmuth 7:18
  55:20,20 56:2,16
  59:20,23 63:4
hold 56:9
holdings 75:15
holds 44:14
hon 4:2
honor 10:4,11,14
  11:1,3,8,19 12:4
  13:8,22 16:1,22
  19:12 20:1,2,23
  21:14,16,18,25

22:4,18 23:17,19
24:10 26:12,15,16
27:8 29:6 30:14
30:21 32:10,21
33:16 36:2 38:1
39:8,16 40:14,24
41:22 42:15,16
43:3 44:4,23 46:2
46:11 47:2,25
48:8,14 49:1,9,24
51:1 53:7 56:2,16
56:20,21 57:12
59:20 60:4 63:4
65:12 66:4,14
67:5,16,17,19
70:2,6,10,19 71:1
71:12,17,22 72:8
72:18 73:11,11,19
73:24 74:10,12,12
74:13,18 76:2,16
76:21 77:2,6,9,10
honor's 25:24
  26:25 27:18 50:3
  68:6 73:20
hope 13:4,5
hostetler 7:2,11
  8:2
hours 36:8
house 28:8,11
houston 7:15
huge 45:8
huh 29:16 45:12
hundred 30:19
hundreds 18:20
hunt 7:17 48:8,8
  48:12,14,23 49:9
  49:18,21 50:6
  51:1,5,9,11,19
  52:6 53:10,12,15
  53:23 54:8,14,16
  54:19,23 55:1,9
  55:13,17 66:4,7,9
  66:11,14 67:5,13

67:16,19
**husband** 53:16
**hypothetical**
  64:17

**i**

**ia** 18:12 27:5
  28:16,18
**identical** 35:16
**identified** 75:2,12
**identify** 17:15
  46:20
**ignored** 12:8
**illustrate** 23:23
**immc** 74:22 75:14
**importantly**
  36:12
**imposes** 71:2
**inadvertently**
  40:25
**inclined** 22:11
  28:20 29:9 30:7
**include** 20:5,13
  25:6 27:3 29:12
  30:12 43:5
**included** 36:15
**including** 34:4
  38:23 75:14
**inconsistent** 16:14
**indemnification**
  44:24 45:7,12,16
  46:9
**independent** 38:4
**indicate** 36:20
**indication** 27:21
**indirectly** 46:6,8
**indiscernible**
  58:16 65:22 68:24
  75:18
**individual** 33:7
**individuals** 27:2
  27:20 28:23
**information** 15:20
  16:11,13 24:17

37:21
**initial** 61:10
**innocent** 60:16
**inquiry** 18:3
  23:12 26:23 28:20
  47:12 77:1
**ins** 38:3
**insisted** 32:13
**insolvency** 45:18
  45:23 46:3
**insolvent** 45:9
**instance** 35:2 36:9
  46:13
**institutions** 15:16
**instructed** 14:19
  15:1
**intentional** 45:24
**inter** 25:2
**interest** 16:12
**interesting** 65:24
**interpretation**
  74:25
**interrogatories**
  35:7
**interrogatory**
  36:18 38:23
**interrupting**
  21:18
**intimately** 75:18
**invested** 57:13
**investigations**
  23:16
**investment** 1:10
  1:16 2:3,11,19 3:3
  3:11
**investor** 1:6
**investors** 13:25
  45:2
**involve** 10:8 23:3
  66:1,2
**involved** 20:9
**involves** 34:1
  53:15

**involving** 53:19
**ira** 53:11 54:20,21
  56:7,9,14 57:4,12
  57:18,23,25 58:4
  58:6,11 60:9,18
  63:11,18 64:19
**irving** 1:14 2:1,9
  2:17 3:1,9 5:10,14
  5:18,23 6:1,5 7:3
  7:12 8:3 68:5
**issue** 11:1 18:7
  19:14 20:18 21:11
  21:20 24:22 25:3
  25:20 26:3,13
  29:7 30:12 31:18
  32:18,18,19 33:1
  33:17 34:1 40:11
  43:1,9 44:11,25
  45:9,17,23 49:12
  49:16 57:8 58:21
  60:7,8 62:12,15
  63:6,12 64:13
  65:3,5,6 68:22
  69:13,24 74:7
**issued** 69:19
**issues** 10:23 11:24
  12:4 18:15 27:23
  29:17 35:3,15
  38:24 42:12,23
  44:5
**it'll** 48:23
**items** 23:22
**iterations** 18:17

**j**

**j** 7:8 9:8
**j.p.** 15:9
**jacobs** 7:8 10:4,5
  10:9,14,24 11:1
  16:22 17:2,4,10
  17:19,22 19:3,6,9
  19:12,20,24 20:1
  20:10,17,22 21:3
  21:7,14,17,25

22:4,8,10,13,16
22:18,24 23:6
24:1,6 25:15,18
25:20 26:1,5,10
26:12,16,21 27:8
27:15,25 28:4,14
29:3,6,17 32:8
33:16,20,23,25
34:21,23,25 35:22
35:25 36:2,5 37:2
37:5,9,12,16,19
37:24 38:18 39:2
39:5,8,13,19,22
40:8,10 41:19,21
41:25 42:2,10,13
42:15,24,25 43:3
43:7 44:4 45:19
45:22,25 46:11,17
46:24 47:2,4,8,11
47:25 48:2
**january** 39:1,15
  39:19,19,25 40:13
  41:11
**joint** 54:22,23
**judge** 4:3 12:20
  18:8 23:8 24:25
  31:20 34:15 35:1
  35:6,13,18 36:13
  36:20 37:1,8 38:1
  38:19 40:17,21,24
  41:17 42:3,9
  43:19,22 44:8
  49:12 52:3 58:15
  61:13 65:5,16
**judgment** 56:14
  56:14,17 59:14,15
  62:22 63:13 64:18
  64:21,22 67:8
  72:24
**july** 25:15,17,18
  26:8 49:3,3
**juncture** 10:17

june   67:9,10,12
   67:13,14 79:17
jurisdiction   35:19
   68:21 69:22 70:10
   70:15,21,23 71:1
   74:7,7,9 75:20
jury   33:2,4,5
   50:14,22 54:3

**k**

keep   31:18 36:25
   68:10,18
keeps   37:25
key   33:4
know   13:15,21
   16:2,2,16 21:5
   22:5 23:12 24:25
   27:1,24 29:2
   30:14 31:11 32:2
   32:4 36:3 39:17
   41:8 42:6,24
   44:11 48:23 53:4
   53:4 54:4 55:1,6
   56:21 57:3,10
   58:15 61:13,15
   63:1 64:13 69:17
knowledge   38:12
known   61:15,21
   68:7
knows   30:21

**l**

l   1:10,15 2:2,10,18
   3:2,10
lacked   70:10,12
lacks   70:25
laid   68:17
language   36:17
lapsed   24:22
late   43:12
lateness   10:3
laughter   71:21
   72:1
law   46:3 56:9,24
   57:10,10,20 58:11

58:16,17,18 60:19
   63:17 64:14,14
   74:2 75:17
lawrence   1:19
   5:11 8:12 48:10
   48:11 49:20,22
   52:1,23
leave   26:25 27:12
   66:18
legal   60:10 61:9
   79:22
lehman   15:8
letter   26:17 53:4
   68:9,15,18 70:8
   72:14 74:20,22
   75:1 76:6,20,22
letters   66:23
liability   60:20
limitation   71:3
   72:11
limitations   72:12
limited   17:25
   25:23
lipkin   14:13
liquidation   1:15
   2:2,10,18 3:2,10
   5:11,15,19,24 6:2
   6:6
lists   66:20 75:10
literally   28:19
litigant   63:2
litigated   20:18,19
litigation   18:21
   34:14
little   19:1 64:14
llc   1:11,16 2:3,11
   2:19 3:3,11
llp   8:10 9:3
locate   15:11
long   13:16 16:16
   17:23 22:19 48:21
   71:18

longer   45:21 72:7
look   16:1 18:10
   47:19 49:24 51:24
   64:5
looked   43:17
   58:20
looking   56:13,16
looks   62:8
loses   70:15
lost   69:22 75:18
lot   18:16 33:22
   34:3 37:1
love   76:19
lower   70:15,17

**m**

m   4:2
madoff   1:10,15
   2:2,10,18 3:2,10
   10:3 11:13,16,16
   13:13,13,24 14:12
   14:14,18 15:6,19
   15:25 16:2,18
   17:11 20:3,24
   21:2,9,11,13,21
   22:7,21 23:20
   24:13,18 25:11
   26:7,23 27:1
   31:19 32:1 44:25
   45:1,6,9 47:14
   49:8 57:13 65:24
madoff's   13:18
   16:23 18:6 23:10
   24:11,23 25:1,4
   29:21 30:25 31:4
   31:11 34:4 46:19
magistrate   12:20
   40:21
main   7:13
maintain   15:2
   54:4
maintained   13:25
   14:20 15:7

makers   71:15,19
making   50:10
   61:11
mandatory   57:18
   58:10 65:8
manner   46:7
march   48:17
   49:19,21 72:15
marked   66:20
massive   15:5
match   15:3,6,11
   15:19 16:12
material   17:15
   18:2
materials   43:20
matter   17:12 52:5
   53:12 65:24 66:5
   67:22 70:10,21,23
   70:25 71:6 72:5
   72:21,23 73:13,15
   73:17,25 77:7
matters   1:4 10:5
   52:24 53:1,1,9
maturity   16:12
mean   20:8 23:11
   23:13 27:25 38:14
   40:5 45:14 47:13
   47:15,18
mediated   34:10
   48:20
mediation   67:6
memorandum
   5:20 68:6 69:1
mention   29:20
   53:25 66:17
mentioned   43:10
mentions   57:10
michael   8:23 70:7
microfilm   18:22
milberg   9:3
million   11:12
   18:22

**millions** 16:19
23:14 47:24
**mineola** 79:25
**minimum** 14:2
73:24 74:2
**minute** 52:16
**mistakes** 11:21
**money** 13:25,25
14:19 15:25 57:1
57:7,17,24 58:9
64:25 65:1
**months** 18:14
20:25 34:15 61:16
**moot** 72:21
**morgan** 15:9,9
**morning** 10:4
48:7,8 67:25 68:2
68:3
**moss** 12:20 18:9
23:8 34:15 35:1,6
35:13,18 36:13,20
37:1,8 38:1,19
40:17,21,25 41:17
42:3,9 43:19,23
**motion** 6:7,10
12:3 17:5 21:15
21:17 26:19,21
27:13 39:9 44:12
44:20 49:25 50:11
50:16,18,19,22,24
52:11,15 54:1,5
55:12,21 56:5
61:2,5,11,14 62:1
62:1,6,6,7 64:5,6
64:13 65:9,17,18
65:18 69:8,25
70:18 71:8 72:4
72:19 73:14 78:8
78:9
**motions** 10:11
32:17 52:16 53:4
55:24 59:4 65:11
65:13 69:12,16

**move** 10:20 23:22
26:17 43:13 48:3
48:20 55:7 67:8
**moved** 35:4,6
51:16

**n**

**n** 7:1 8:1 9:1 10:1
78:1 79:1
**n.v.** 2:14 5:20
8:19
**name** 55:20
**narrow** 17:11
18:7
**narrowing** 10:20
**near** 34:13
**necessary** 31:25
**necessitate** 33:3
**need** 13:17,18
34:12 36:18 37:23
38:5
**needs** 27:12
**nelson** 2:22 3:6
5:24 6:2 8:11 48:9
49:21 51:6 52:4
53:8,12,15,19
54:17
**nelson's** 54:21
**net** 38:24
**never** 11:14 15:24
17:5 21:17 24:22
28:11 32:10 47:1
50:16 51:16 72:8
**neville's** 19:16
**new** 1:2 3:20 7:5
8:14,21 9:6 64:13
**nicole** 6:25 79:3
79:14
**night** 76:17
**nine** 35:3,19
**nobody's** 60:13
**non** 58:5 59:14
64:20 65:2

**noted** 65:5
**notice** 31:8 32:4
61:23 70:13 72:15
**noticed** 44:5
**notified** 61:18
**notwithstanding**
47:5
**november** 51:22
54:9 55:2
**null** 70:9 73:21
**number** 10:5
15:20,22,24 43:12
54:18
**numbers** 66:22
75:5
**numerous** 35:11
55:25 56:3
**ny** 3:20 7:5 8:14
8:21 9:6 79:25

**o**

**o** 4:1 10:1 79:1
**o'clock** 53:25
**object** 23:21 24:1
30:16
**objected** 44:23
61:4
**objection** 30:9
41:12 43:21,24
44:1 56:4
**objections** 46:12
47:6 62:8
**obligation** 40:20
**obligations** 34:2
75:22
**obstructing** 34:6
34:6,6
**obtained** 35:17
36:11 40:1
**obviate** 36:18
**obviated** 34:12
**obviously** 50:19
57:12 60:11 77:1

**occasions** 56:3
**occurred** 14:6
**october** 51:20,21
51:24 52:24 53:21
54:24
**oh** 8:6 14:25
22:23 47:3 50:8
53:14 66:6,17
68:12 71:10
**okay** 10:9,22
11:21,25 12:2
16:21 23:25 24:3
24:17 26:5,9,10
30:8,13 31:20
33:11,14,15,20,23
34:24 39:20 41:21
42:13,14 44:7,15
44:18,21 48:12,21
48:25 49:16,23
50:8,12 51:19
52:8,18 53:14,23
54:14,19,20 55:1
55:9,19 56:19,24
60:6,17 62:3
63:24 65:23 66:8
66:23,24 67:2,3
67:18 69:18 70:5
71:24
**old** 79:23
**omnibus** 17:13
19:14 20:6,18
21:4 29:25 30:11
32:17 33:5 64:13
67:9
**once** 19:14,21
20:19 30:4 70:13
75:23
**ones** 10:7 15:18
36:11
**ongoing** 12:13
**open** 20:11 25:7
49:3,13,17

[opened - probably]                                                                 Page 12

opened  17:14 23:4
  29:21
operating  61:14
operation  28:16
opportunity  76:9
opposed  20:4
  61:10
opposition  40:16
opted  22:6
option  63:1
order  16:19 25:24
  26:4,11,25 29:12
  29:25 33:18,21
  35:5,20,21 36:13
  37:6,17,19 38:16
  38:19,22 39:1,15
  39:19,25 40:1,3
  40:13 41:3,11,20
  43:4,5,23 44:3,17
  52:9 55:5,17
  65:10 68:16 69:6
  70:20
order's  55:15
ordered  12:20
  13:8 25:7 40:21
  40:25 43:19 49:14
orders  5:8 34:22
  35:11 36:4,6 37:1
  39:10,13,18 40:17
  52:22 66:25 78:7
outline  39:10
outs  38:3
outside  68:14
outstanding  38:22
overall  46:5
overstep  46:1
overy  8:18 70:7
owner  60:9
owns  57:4

p

p  7:1,1 8:1,1 9:1,1
  10:1

page  78:4
pages  16:19 47:24
papers  20:22
  40:15
paragraph  43:4,7
  43:19,25 46:25
paragraphs  39:7
  39:21 40:13 41:10
park  8:13
part  16:25 20:5
  20:17 27:1 45:21
participate  20:2
  23:19 25:16 29:13
  49:7
participated
  21:15 49:7
participating  22:3
participation
  20:12
particular  21:20
  44:13 49:5
parties  19:15
  29:13 30:3 42:8
  67:6 68:15 71:8
  75:22
party  18:10 37:14
  61:1,5,12 68:9
patsy  60:24
pattern  34:5
pause  48:6 51:25
  53:2,20,24 55:4
  63:16 67:23
payments  38:8,8
pending  17:6 70:3
  71:6 72:5,7,23
  75:19
pennsylvania  9:5
pension  57:5
people  14:15 15:2
  22:6,15 25:6,16
  31:10 32:3,4,6,7
  34:9

period  15:13
  17:19 21:9 30:1
  30:11 36:22 55:6
periods  16:3 18:3
  23:8 27:17
permission  26:17
permit  23:19
  57:20 58:12 70:16
  70:17
permitted  25:4
person  57:4
personal  38:12
  55:22 56:4,17
perspective  36:12
pertain  37:20
pertained  37:20
pertains  20:2
ph  14:13 51:16
  56:25 65:6 74:21
  74:22
picard  1:14 2:1,9
  2:17 3:1,9 5:11,15
  5:19,24 6:2,6 7:3
  7:12 8:3 68:5
pick  40:22
piecemeal  19:16
  29:14 30:4
place  55:22
plain  52:20
plaintiff  1:8,17
  2:4,12,20 3:4,12
plaintiffs  66:22
plaza  7:4 9:5
please  10:2 40:19
point  22:21 28:9
  28:19 32:9 38:7
  60:17 73:19 75:2
  75:12
pointed  40:15
points  21:14 49:1
ponzi  23:10 24:8
  24:9,18,19 46:5

poring  15:10
  16:18
portfolio  14:1,20
  15:2,8
portion  28:15
position  29:18
  35:18 36:23 68:17
  68:22
possession  17:16
possibility  40:6
possibly  11:10
  20:7
potential  51:3,4
potentially  36:19
practice  34:5
  65:14
pre  5:12,16,25 6:3
  31:15 47:23 66:20
precisely  46:12
precluded  41:3
precludes  40:1
precursor  17:12
predated  11:15
prefer  31:10
preliminary
  17:12
prepare  42:4
prepared  48:20
preparer  38:11
  43:10
preparer's  38:10
preparers  43:11
present  36:14
  59:5
presumably  45:14
pretrial  23:3 66:5
pretty  51:6 66:11
prevent  73:16
prior  13:20,21
  18:3 22:20 27:5
  67:9 69:14
probably  19:7
  48:23 51:6 53:5

68:8
**problem**  19:20
  31:2 37:24 40:15
**procedural**  29:25
  61:9 71:3 72:11
  72:12
**procedurally**  66:4
**procedure**  30:10
  37:7 68:25 69:11
**procedures**  65:15
**proceeding**  5:10
  5:14,18,23 6:1,5,9
  20:6,12,18 33:6
  62:17
**proceedings**  11:9
  32:20 33:8 77:12
  79:5
**process**  15:5
**produce**  12:3 17:6
  17:9 18:5 25:8
  41:1
**produced**  11:11
  18:2,14,20 23:14
  40:2 41:5 44:10
  45:15 47:23
**produces**  20:16
**production**  12:7
  13:4 27:4 35:4,5
  43:14,15,19 44:24
**productions**
  38:24
**profit**  25:3 32:19
**profits**  32:24
**prohibit**  35:8
**proof**  64:16
**proportion**  27:23
**proportionality**
  28:22
**proposal**  19:12
  21:10 30:6 40:12
**propose**  19:10
  20:21 23:17 29:6
  29:10 30:9

**proposed**  67:7
**proposing**  12:23
  13:11 21:1
**proposition**  57:1
  70:11,25 72:14
  74:23,25 76:24
**proprietary**  28:12
  28:14
**protection**  1:6
**protections**  60:18
**protects**  57:25
**protracted**  34:12
**provide**  34:17
  38:9 55:5 76:16
**provided**  71:7
  76:11,13
**provides**  71:5
**provisions**  39:4
  74:14
**prudential**  70:14
**purchase**  14:19
  15:25 16:11
**purpose**  17:12
  25:23 27:3
**purposes**  25:4
  32:15
**pursuant**  34:3
**pursue**  57:9
**purview**  71:15,18
**push**  54:9
**put**  13:7,8 14:11
  16:6,19 31:7,22
  46:23 48:22 49:10
  49:14 50:5 58:5
  63:7
**puts**  60:1
**pw**  30:1 32:17

**q**

**quash**  26:18,20,21
**question**  10:16
  13:13 16:17,18
  20:15 28:4 30:24
  60:23 61:9,9

66:12
**questioning**  14:5
**questions**  68:19
  71:4 76:2
**quick**  66:11
**quickly**  30:5
**quintessential**
  27:19
**quite**  75:6
**quote**  12:5

**r**

**r**  4:1 5:14 7:1 8:1
  9:1 10:1 79:1,14
**raise**  48:15
**raised**  10:25
  11:24 44:23 45:17
  63:6 68:23 72:17
**rakoff**  58:15 65:5
**random**  27:20
**range**  39:13
**rate**  16:12 25:21
**rbs**  67:22 68:8
**reaction**  61:10
**read**  11:20 31:12
  33:22 60:5 63:20
  63:21 64:1 73:10
  73:11
**reading**  63:17
  72:11
**ready**  48:5,13,19
  50:9 55:8 67:3
**real**  18:11
**really**  11:18 30:24
  38:5,6 42:7 59:2
  63:8 71:2 73:1,8
**reason**  36:25
  51:15
**reasonable**  18:4
  28:21
**reasons**  65:19
**rebuttal**  5:5 11:6
  20:7

**recall**  14:5 25:1
**received**  63:7,11
**receives**  60:1
**recited**  15:17
**recognized**  75:19
  75:21
**recommendation**
  74:4
**record**  17:5 23:7
  23:9 28:10 29:20
  47:20,22 65:19
  79:4
**records**  11:15
  13:14,21,23 15:16
  17:21,23 18:5,11
  18:23 25:8 41:4
  47:23
**recover**  56:6
  57:17 58:9 62:22
**recovered**  63:13
**recriminations**
  12:16
**refer**  68:8 75:6
**reference**  33:3
  50:11 52:12 54:1
  55:7 76:3
**refile**  74:24 75:22
  76:24
**reflected**  25:24
**reflecting**  27:5
**refused**  13:8
**refuses**  38:7
**regarding**  21:12
  26:23 65:25 68:5
  68:24
**rejected**  38:1,1
**related**  29:17
  33:17 34:1
**relating**  29:8
**relevance**  28:24
  45:18
**relevant**  19:15
  23:4 27:22 28:3,5

46:6,8,13,15,16
75:4 77:1
**relied** 43:18 64:22
**relief** 10:15 73:14
**rely** 41:7
**relying** 41:2,4
44:9
**remained** 15:22
**remember** 14:11
25:9 45:8 58:21
61:16
**remind** 34:8
**remotely** 46:24
**renew** 73:13
**reply** 20:7 56:20
74:22 77:4
**report** 5:5 11:12
11:17 14:9 19:8
21:5,8 23:1,15
49:11 50:5 74:4
78:5
**reports** 12:17,18
18:17,18 19:19
20:7,16 22:14
43:14 50:7
**represent** 60:23
60:24
**representative**
55:22
**representatives**
56:4,18
**represented** 16:15
18:8
**representing**
22:15
**request** 5:4 12:11
20:1 42:25 44:23
50:22 54:3 71:8
72:22 75:16
**requesting** 43:9
**requests** 17:21
28:7 35:8

**require** 27:13
30:2
**required** 36:23
61:18
**requirement**
72:15
**requires** 27:22
74:23,24
**reschedule** 21:21
**reset** 20:11 21:12
24:1 26:6 31:25
**resided** 56:8
**resolve** 29:7
**resolved** 21:20
**respect** 11:17
15:24 26:2 33:2
41:10 51:1 53:8
68:16
**respectfully** 76:1
**respond** 76:9
**response** 19:5
**responses** 35:7
36:18 47:5
**responsive** 47:8
**restored** 18:21
**restriction** 36:8
**result** 69:5
**resulted** 35:5,11
50:3
**resulting** 69:13
**retracted** 38:13
**revealing** 31:12
**review** 71:7 73:18
74:5
**reviewed** 76:17
**reynolds** 9:8
**right** 12:17,18
13:20 19:6,9,20
19:24 22:8,10,16
25:19,25 26:2
28:4 31:16 32:8
32:16 35:22,25
37:5,9,12,16,24

39:5 40:8,11
41:16,19 42:10,18
42:20 44:2 45:5
45:22 46:17 47:7
48:1 49:8,10 50:1
50:8 51:17,17
52:1,12 53:17,18
54:12,24 55:3
57:15 58:2,8,19
59:1,9,22 60:15
61:19,20 64:3,3
64:11 65:17,20
67:21,24 70:1
72:8 73:20,21
74:11,16 76:8
77:7
**road** 79:23
**robert** 14:13
**rockefeller** 7:4
**romer** 14:13
**room** 11:11 12:8
13:7,9 15:17
18:19 49:15
**routine** 56:1
66:15
**routinely** 36:10
55:24
**royal** 68:8 70:7
**rule** 27:22 28:22
28:24 54:1 56:11
68:25 69:15 71:2
71:5,13,15,19
72:4,5,11,17,21
73:10,12 74:14,23
75:3
**ruled** 21:16 42:17
58:15
**rules** 40:6,6 61:24
69:11
**ruling** 36:11 41:7
58:18 59:4
**rulings** 35:14,17
48:16 78:3

**s**

**s** 7:1 8:1,23 9:1
10:1
**sanctions** 40:1
41:9 44:11
**saren** 1:19 5:11
8:12 48:10,11
49:20,22 52:1,23
**saw** 23:5
**saying** 22:23
24:13,13 27:12
29:24 30:17 47:19
47:20,21,22 60:13
**says** 35:21 36:13
47:1 72:4,5
**schedule** 20:5,13
20:20,23 21:4
50:17,23,25 52:23
55:11 67:11
**scheduled** 23:2
66:21
**scheduling** 66:12
**scheme** 23:11
24:8,9,18,19 46:6
**scope** 10:19 18:3
23:12 28:5
**scotland** 68:8 70:8
**search** 17:15 18:4
30:15 46:20
**searched** 47:1,6
**seated** 10:2
**second** 23:20 24:5
**securities** 1:6,11
1:16 2:3,11,19 3:3
3:11 14:1,20 15:3
15:4,6 18:12
28:11,15
**see** 11:21 22:23
24:14 30:15 43:19
51:15 53:14
**seek** 62:23
**seeking** 26:17,22
27:16 57:16 58:9

60:19
seen  24:16 46:21
  58:2,14,19,20
  59:24 62:9,10
  75:11
send  40:19
sense  20:15,17
  22:17 30:25 31:17
  76:23
separate  32:5,24
  51:14,15
september  48:18
  49:3 51:20,23
serve  19:8 28:23
served  17:24 18:1
  26:25 34:7 43:12
  43:12 47:4
set  5:4 11:7 67:11
setting  25:1
settled  34:10
settling  68:16
  69:7
seven  10:17 23:13
  39:7,20 40:12
  41:10 66:21
sheehan  7:7
sheet  45:9
shocking  11:18,18
shoes  59:21
short  29:4 34:25
  56:25
show  40:16
sic  75:21,24
sides  22:15
signed  47:9
similar  65:6
simply  13:22
  32:20 38:7 70:24
  75:10
simultaneously
  51:7
single  5:4 11:6,23
  12:11,16,17,25

19:4,22 20:15
  36:21
situation  57:6,11
  64:18
six  18:14 34:15
smb  1:9,18 2:5,13
  2:21 3:5,13 5:10
  5:14,18,23 6:1,5,9
sold  18:12
solutions  79:22
solvency  46:15
somebody  22:14
  31:5 41:7,17 47:1
  60:1 61:5,11
sorry  43:3 54:20
  65:16 66:6,19
sought  24:22 28:6
  29:8 35:8
sound  45:11
southern  1:2
spanning  35:3
specific  10:23,23
  16:9,11 17:11
  21:8 39:3,4 44:12
  44:12,20 54:10
specifically  33:17
  34:1 39:23 47:5
  49:18
split  15:21
square  8:4
stack  14:12
stacy  7:9
staggering  22:12
standards  28:22
standing  74:23
stanley  15:9 54:17
start  11:5 15:21
  17:13 18:7 26:24
  28:22 29:9 32:18
  48:11
started  11:8 19:2
starting  17:24
  23:17

state  8:5
stated  30:8 38:19
  47:5 65:19 74:22
statement  46:2
statements  14:2
  15:5 16:1,9 18:18
states  1:1
status  5:20
statute  57:9,22
  63:7 64:7,7,21,23
  64:23 65:4 78:9
stay  66:3
step  62:21
steps  59:21
sterns  15:8
sticking  38:6
stip  38:15
stipulate  35:22,23
  37:10 42:11
stipulated  36:24
  42:8 56:3 70:19
stipulates  37:22
  70:20
stipulation  36:14
  38:5,21 42:4 67:7
  67:9,15
stipulations  34:11
  42:6 55:25
stocks  16:4
stop  12:15
stopped  24:19
strategically
  22:25
street  7:13 8:5
strike  15:21
stuart  4:2
stuff  32:1 37:23
subdivision  71:7
subject  31:25
  70:10,20,22,25
submission  21:22
  22:12

submissions  21:4
  21:22 68:9,15
  75:1
submit  21:6 23:1
  27:18 36:2,5 39:9
  41:23 44:2 50:6
  52:22 65:10 76:21
submitted  21:5
  38:10 67:10 76:1
  77:8
subpoena  13:17
  17:24,25 18:1
  28:23 78:6
subpoenaed  13:14
  13:17
subpoenas  5:1
  26:18 27:3 28:7
  37:14,15,20 38:2
subsequent  59:5
  59:17 62:12,13,14
  62:24
subset  20:3
substitute  55:21
  55:24 56:3,5 62:7
  64:6 65:18 78:8
substitution  6:10
  55:25 61:4,10
successfully  34:10
sue  62:24 63:10
sued  34:9 58:21
  58:24 59:17,18
suggest  67:10
suggests  46:3
suing  63:18
suite  7:14 8:4
  79:24
summary  67:8
supplement  12:6
supplemental
  21:8
supply  36:9
supplying  43:11

**support** 43:13,16
58:10 59:25
**suppose** 63:3
**sure** 10:24 11:7
36:3 37:3 39:17
48:15 52:21 75:5
**susceptible** 33:5
**suspect** 70:21
71:1

**t**

**t** 15:8,25 16:3,6,7
16:9 79:1,1
**table** 19:15
**take** 13:16 16:16
24:22 25:4,10,12
31:3,6,8 32:6 34:4
35:9 48:22,23
58:4
**taken** 15:18 20:24
24:23 32:3 56:2
57:1,24
**talk** 11:23,24 19:3
30:25
**talked** 19:13
25:13
**talking** 22:22 36:4
37:18 39:6,18,21
52:3,6 60:9
**tax** 38:8,10,11
43:9,11
**team** 46:21
**tell** 51:18 63:19
71:22
**telling** 31:12
46:16
**ten** 13:17 27:2,20
28:23 36:21 38:20
**tenancy** 54:22,23
**tens** 18:19
**terminals** 14:16
14:17
**terms** 37:14 45:9
72:3

**testified** 13:24
15:1,7 29:23
44:25 45:6
**testifying** 31:13
**testimony** 16:24
21:8 23:10 24:11
28:5 29:21 31:14
46:19
**thank** 26:12 40:10
42:15,22 48:2
59:23 65:12,23
67:19,25 74:16
77:9,10,11
**thanks** 67:18
74:17
**theories** 27:16
**theory** 57:2 59:25
**thing** 44:22 60:15
**things** 35:10
**think** 10:10 20:20
23:20 25:18 29:3
29:7,18 31:17,24
34:15 35:3 36:21
38:20 46:6 47:11
48:21,23 51:5,9
52:3 64:7 65:21
66:2,7,11,14
71:14 72:18 73:16
73:21 74:9,10
76:17,22
**third** 18:10 33:25
37:14
**thirty** 55:15
**thought** 17:8 72:6
**thousands** 18:19
18:20
**three** 10:15,18,23
15:24 23:2 44:4
48:16 50:11,13
51:5 52:6
**tickets** 14:12
**time** 17:23,25
22:20 23:16,23

24:20 25:3 28:9
28:19 32:4 34:3
34:15 36:22 50:18
51:24 54:10 55:6
61:21 69:9 72:13
73:15 75:1
**timely** 24:2 40:3
43:14
**times** 24:7,16
**timing** 68:24
75:25
**today** 10:6,14,17
23:3 27:17 44:6
68:5 76:12
**today's** 55:13
69:13
**topics** 39:14
**totally** 11:16 16:3
**touted** 11:12
**town** 74:21 75:14
**trace** 58:1,2,6
**traced** 65:1
**tracey** 6:25 79:3,8
**track** 19:1
**traded** 28:15
**traders** 13:13
16:17
**trades** 14:14
15:23 24:19 27:4
27:5 28:17
**trading** 11:15,18
13:14,21,23 17:17
17:21,23 18:11,23
18:24 25:8 28:8
28:11,14 41:4
47:23
**transcribed** 6:25
**transcriber** 79:9
**transcript** 24:14
31:14 79:4
**transcripts** 33:22
**transfer** 25:2
45:20,24 57:9

58:23 60:1,3 63:8
63:14,15
**transferee** 57:6
58:22,25 59:5,8
59:17,19 60:16
62:12,14,14,24
64:19
**transferor** 57:5
**transferred** 64:25
65:1
**transferring**
60:10
**transfers** 38:24
64:16 65:4
**treasury** 14:1,20
15:3,4,6
**trial** 5:12,16,25
6:3 17:3,13 19:14
30:11 32:5 33:2,4
48:5,13,19 50:9
50:14,17,19,22,23
51:1 52:1,14,23
53:1 54:3,24
55:11 66:13,22
67:4
**trials** 50:17 54:15
**tried** 34:17 51:8
51:12
**triggering** 13:11
13:12 19:11
**triggers** 13:1,2
**true** 44:14 47:25
79:4
**trust** 17:25
**trustee** 1:14 2:1,9
2:17 3:1,9 5:11,15
5:19,24 6:2,6 7:3
7:12 8:3 10:5 11:8
11:14 12:3,5,6,8
12:14,20,21 13:4
13:7 16:14 17:5
25:8 30:15 32:11
40:16,18 41:3

44:9,23 45:10,15
47:18 48:9 49:14
55:21 56:6 57:8
57:16 58:8 59:13
60:19 62:20,22,25
63:1,13 64:18
68:4 70:6,8,20
72:2,14 73:19
75:16
**trustee's**  16:10
63:1 68:17 72:10
72:17
**trustees**  51:16
61:13
**truth**  12:13 30:15
**try**  18:23 19:14,21
46:20 71:18
**trying**  13:6 16:12
23:21 29:19
**tuesday**  34:18
**two**  15:22 21:14
23:22 32:25 34:14
46:25 48:9,24
51:15 53:8
**twofold**  26:22
**tx**  7:15
**tying**  42:7
**types**  23:16
**typically**  56:9

**u**

**u.s.**  3:18 4:3
**u.s.c.**  69:8
**uh**  29:16
**unable**  12:14
**understand**  22:18
31:13 50:15 57:19
58:3 62:19 64:4
**understanding**
13:19 28:6
**understood**  17:4
**undertake**  18:10
**undertook**  17:14
18:4 46:19

**uniform**  21:22
**united**  1:1
**unreasonable**
19:22
**use**  14:19 32:7
66:22,23
**usually**  70:13

**v**

**v**  1:9,18 2:5,13,21
3:5,13 5:11,15,19
5:24 6:2,6
**vacate**  73:23
**value**  38:8 57:13
**valued**  45:7
**various**  10:15
18:17 35:3
**verifiable**  18:11
**veritext**  79:22
**vested**  69:25
**violation**  73:12
74:14
**voice**  68:11
**void**  70:9 73:21
**voluntarily**  18:8,9
36:7 46:19
**voluntary**  17:15

**w**

**wait**  31:10 52:15
**waiting**  20:23
**waived**  50:21
72:13
**want**  10:13 11:10
12:16 16:17,18
19:14,15 21:6
30:19 31:5,8,22
32:7 34:8 35:20
36:3 38:16 39:17
40:17,18,22 45:25
48:15 51:21 52:20
67:14 73:13 76:3
76:10
**wanted**  40:16
71:24

**wants**  19:22 31:18
34:4 62:25
**warning**  71:25
**way**  21:19 29:19
33:19 34:17 50:21
62:22 65:13 66:17
71:22 73:10,16
**we've**  13:13,17
15:3,5,18,18
18:20 19:13 20:23
31:21 34:2,8,10
34:11,13,17 36:9
37:7 43:22 51:2
55:24 56:2,24
61:14 67:10 75:2
75:12 76:17
**wednesday**  77:4
**weeks**  16:5
**welcome**  66:3
**williams**  6:25 79:3
79:8
**window**  70:16
**wishes**  27:2
**withdraw**  50:11
52:12 54:1 55:7
**withdrawal**  25:3
32:19 36:15 65:9
**withdrawals**
37:10 57:18 58:11
63:11 65:7
**withdrawing**  33:3
**witness**  66:20
**witnesses**  13:18
13:20
**woltering**  8:8
67:25 68:3,4,12
68:15,23 69:4,6
69:18,21 70:2,5
74:18,20 75:9,12
76:7,11,13 77:2
77:10
**words**  40:18
57:23 63:13 73:2

**work**  27:10
**worked**  13:20
27:9 29:1
**working**  67:7,15
**worth**  31:19 45:12
**worthwhile**  63:3
**wrap**  10:21
**write**  53:4 54:12
74:3 77:4
**writing**  47:21

**x**

**x**  1:3,13,21 2:8,16
2:24 3:8,16 78:1

**y**

**yawn**  6:25 79:3,14
**yeah**  11:5 19:3
31:24 47:18 50:10
53:12 61:17 66:11
69:4,6 74:20
76:22
**year**  16:4 27:9
**years**  10:17 17:23
23:13,15 34:14
57:18
**yep**  73:6
**yesterday**  56:21
76:13
**york**  1:2 3:20 7:5
8:14,21 9:6 64:14