**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Lauren J. Resnick

Hearing Date: July 26, 2017
Time: 10:00 a.m.

Objection Deadline: July 19, 2017
Time: 4:00 p.m.

*Attorneys for Irving H. Picard, Trustee for the substantively consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the consolidated Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff,<br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br>  v.<br><br>THE ESTATE OF MARK D. MADOFF and ANDREW H. MADOFF, individually and as Executor of the Estate of Mark D. Madoff,<br><br>      Defendants. | Adv. Pro. No. 09-01503 (SMB) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-03483 (SMB) |

|  |  |
|---|---|
| Plaintiff,<br><br>v.<br><br>MADOFF TECHNOLOGIES LLC, MADOFF BROKERAGE & TRADING TECHNOLOGY, LLC, PRIMEX HOLDINGS, LLC, ESTATE OF MARK D. MADOFF, and ANDREW MADOFF, individually and in his capacity as Executor of the ESTATE OF MARK D. MADOFF,<br><br>Defendants. |  |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A STIPULATION BY AND BETWEEN THE TRUSTEE, THE UNITED STATES GOVERNMENT, AND THE SETTLING DEFENDANTS IN THE ABOVE-CAPTIONED PROCEEDINGS**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), by his undersigned counsel, respectfully submits this memorandum of law in support of his motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the Stipulation and Order of Settlement (the "Stipulation") (annexed hereto as **Exhibit 1**) by and among the Trustee, the United States Attorney's Office for the Southern District of New York, by Joon H. Kim, Acting United States Attorney (the "United States Government"), David Blumenfeld in his capacity as Successor Executor ("Mr. Blumenfeld") of the Estate of Mark D. Madoff (the "Mark Madoff Estate"), Martin Flumenbaum in his capacity as Executor ("Mr. Flumenbaum") of the Estate of Andrew H. Madoff (the "Andrew Madoff Estate"), and Stephanie

2

Mack a/k/a Stephanie Madoff ("Mack") (Mr. Blumenfeld, Mr. Flumenbaum, the Mark Madoff Estate, and the Andrew Madoff Estate are collectively referred to herein as the "Bankruptcy Defendants;" the Bankruptcy Defendants and Stephanie Mack are collectively referred to herein as the "Settling Defendants;" the Settling Defendants, Trustee, and United States Government are collectively referred to herein as the "Parties").[1]

## PRELIMINARY STATEMENT

The current settlement before this Court will result in the final resolution of all disputes between the Parties and will strip the Mark Madoff and Andrew Madoff (together, the "Madoff Brothers") Estates of all assets, cash, and other proceeds of the fraud—valued at over $21.5 million—leaving the Estates of Mark Madoff and Andrew Madoff with only $1,750,000 and $2,000,000, respectively.[2] This settlement is a global and complete resolution of all claims brought by the Trustee against the Bankruptcy Defendants and all other remaining Defendants in the above-captioned proceedings (as well as all claims held by the United States Government against the Settling Defendants), including the customer and creditor claims submitted by the Madoff Brothers.[3]

These adversary proceedings are unlike others that the Trustee has commenced because they are directed against the chief fraudster's immediate family members—his sons (the Madoff Brothers). The Madoff Brothers were business and securities regulatory managers and principals of BLMIS. The Madoff Brothers' management responsibilities extended through BLMIS's

---

[1] The Trustee has previously settled with Mack in December 2014 but she has been included in this global settlement agreement in order to resolve all claims held by the United States government against her.

[2] The total recovery from all Settling Defendants is over $23 million.

[3] In accordance with the Settlement Procedures Order of November 12, 2010 (ECF No. 3181), the Trustee moves this Court with respect to two actions: *Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB) and *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB).

3

market-making and proprietary trading businesses, compliance, and customer relationships. The Madoff Brothers were also Investment Advisory ("IA") customers themselves, each holding and/or controlling seven IA customer accounts.

Mark Madoff, now deceased, was Bernard Madoff's eldest son and Co-Director of Trading at BLMIS. From the time he graduated from the University of Michigan in 1986 through his father's arrest in December 2008, Mark Madoff worked at BLMIS. Mark Madoff was an investor and investment professional who directed many of BLMIS's customer relations efforts and, at times, managed both BLMIS's proprietary trading desk and market-making operations. He held a number of securities licenses with the Financial Industry Regulatory Authority ("FINRA") while working at BLMIS, including Series 7 (securities representative), 24 (securities supervisor), and 55 (equity trader). He was also involved professionally as a leader in the securities industry.

Andrew Madoff, now deceased, was Madoff's youngest son. Andrew Madoff worked at BLMIS from his 1988 graduation from the University of Pennsylvania until his father's arrest in December 2008. Andrew Madoff was an investor and investment professional who supervised proprietary trading at BLMIS, managed the trading floor, and directed many audit and compliance projects for BLMIS, including the confirmation and reporting of proprietary trades. He held a number of securities licenses with FINRA while working at BLMIS, including Series 4 (options principal), 7, 24, and 55. Andrew Madoff was involved professionally as a leader in the securities industry.

The Trustee has alleged, in his most recent proposed Third Amended Complaint in the adversary proceeding captioned *Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB), that Andrew Madoff and Mark Madoff are liable as transferees of fraudulent transfers

totaling at least $153,293,116, which include (i) $35,405,081 in avoidable transfers in connection with BLMIS Accounts 1M0005, 1M0007, 1M0013, 1M0062, 1M0073, 1M0103, 1M0107, 1M0108, 1M0110, 1M0140, 1M0141, 1M0142, 1M0143 and 1M0174, which were each opened and/or controlled by Andrew Madoff or Mark Madoff; (ii) $67,772,805 in avoidable transfers in connection with salary, bonus, and other earnings received by Andrew Madoff and Mark Madoff; and (iii) $50,115,231 in other avoidable transfers Andrew Madoff and Mark Madoff received or benefitted from, and are also liable for unspecified damages based on breach of fiduciary duty, negligence, unjust enrichment, and restitution.[4]

In the adversary proceeding captioned *Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-03483 (SMB), the Trustee has alleged that Andrew Madoff, Mark Madoff, and other Madoff family members (together, the "Technologies Individual Defendants") diverted $22,697,762.35 (the "Technologies Transfers") in BLMIS monies to or for the benefit of entities they owned and/or controlled (the "Technologies Entity Defendants"), which ultimately inured to the benefit of the Technologies Individual Defendants.

The settlement also fully resolves two related adversary proceedings instituted by the Trustee—*Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB) and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB)—as more fully described herein.

This settlement will greatly benefit the customers of BLMIS with allowed claims, and the Trustee respectfully requests that this Court approve it.

## BACKGROUND

On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser

---

[4] The Trustee also seeks a constructive trust and an accounting.

5

fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding, which was pending in the District Court and subsequently closed on March 17, 2015. The SEC's complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.

On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an order that appointed Lee S. Richards as receiver for the assets of BLMIS.

On December 15, 2008, pursuant to SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order that:

a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

b. appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA § 78eee(b)(3); and

c. removed the case to this Court pursuant to SIPA § 78eee(b)(4).

By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated Madoff's Chapter 7 estate into the SIPA Proceeding.

6

At a plea hearing on March 12, 2009 (the "Plea Hearing"), in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]," (Plea Hr'g Tr. at 23: 14-17), and asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." (Id. at 23: 20-21). On June 29, 2009, Madoff was sentenced to 150 years in prison.

## THE CLAIMS AGAINST THE MADOFF BROTHERS

This settlement resolves four related actions currently pending before this Court: (1) *Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB); (2) *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB); (3) *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB); and (4) *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB) (together, the "Adversary Proceedings"). In accordance with the Settlement Procedures Order of November 12, 2010 (ECF No. 3181), the Trustee moves this Court with respect to two of the actions: *Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB) and *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB).

### 1. *Picard* v. *Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB)

In 2009, the Trustee commenced this action against Bernard Madoff's immediate family members. Since that time, and as a result of the Trustee's investigation into Madoff's fraud, the Trustee amended his complaint in 2011 and 2012 to include additional family member defendants (specifically, the spouses and former spouse of Andrew Madoff and Mark Madoff), as well as additional avoidable and recoverable initial and subsequent transfers. As of December 2014, the Trustee has been solely pursuing claims against Mark Madoff and Andrew Madoff (or their respective Estates, as applicable), having settled and/or discontinued his action against Peter

7

Madoff (Bernard Madoff's brother and BLMIS's Senior Managing Director and Chief Compliance Officer), Shana Madoff (Bernard Madoff's niece, Peter Madoff's daughter, and BLMIS's Compliance Director), Susan Elkin (Mark Madoff's ex-wife), Deborah Madoff (Andrew Madoff's widow), and Stephanie Mack (Mark Madoff's widow). Mark Madoff and Andrew Madoff are deceased and their Estates are represented by Executors David Blumenfeld[5] and Martin Flumenbaum,[6] respectively.

In an effort to streamline the Trustee's allegations with respect to the remaining Defendants and to address the current legal standards and added pleading burden on the Trustee in light of the multiple district court decisions affecting this proceeding, the Trustee moved for leave to amend his Complaint and submitted his proposed Third Amended Complaint to this Court. (ECF No. 184).

The Trustee has alleged in the proposed Third Amended Complaint that Andrew Madoff and Mark Madoff are liable as transferees of fraudulent transfers totaling at least $153,293,116,

---

[5] On December 17, 2010, Andrew Madoff petitioned the New York State Surrogate's Court, New York County ("Surrogate's Court"), for Probate and Letters Testamentary and of Trusteeship in the Probate Proceeding No. 2011-39 entitled Probate Proceeding, Will of Mark David Madoff, aka Mark D. Madoff. On April 1, 2011, Surrogate's Court Judge Nora S. Anderson issued a Decree Admitting Will to Probate, pursuant to which Letters Testamentary and of Trusteeship were directed to be issued to Andrew H. Madoff. On December 29, 2012, Andrew Madoff designated David Blumenfeld as the Successor Executor of the Estate of Mark D. Madoff in a Designation of Successor Executor filed with the Surrogate's Court, pursuant to the authority granted to him under Section A, Article 10 of the Mark Madoff Will. Defendant Andrew Madoff passed away on September 3, 2014. On October 27, 2014, David Blumenfeld petitioned the Surrogate's Court for Successor Letters Testamentary and appointment as the Successor Executor of the Estate of Mark Madoff. On November 21, 2014, Surrogate's Court Judge Nora S. Anderson directed that Letters Testamentary be issued to David Blumenfeld, as Successor Executor of the Estate of Mark D. Madoff.

[6] Martin Flumenbaum was designated as the Executor of the Estate of Andrew H. Madoff under Andrew H. Madoff's Last Will and Testament, dated July 8, 2014. On September 10, 2014, Martin Flumenbaum petitioned the Surrogate's Court for Probate and Letters Testamentary and of Trusteeship in the Probate Proceeding No. 2014-3416 entitled Probate Proceeding, Will of Andrew Madoff aka Andrew H. Madoff. On September 12, 2014, The Honorable Nora S. Anderson issued a Decree Admitting Will to Probate in the Probate Proceeding No. 2014-3416 entitled "Probate Proceeding, Will of Andrew H Madoff, aka Andrew Madoff," pursuant to which Letters Testamentary and of Trusteeship were directed to be issued to Martin Flumenbaum.

and are liable for unspecified damages based on breach of fiduciary duty, negligence, unjust enrichment, and restitution.

### 2. *Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-03483 (SMB)

The Trustee commenced this action on July 29, 2010 against the Technologies Entity Defendants and, following further investigation into the Madoff fraud, filed an amended complaint on September 1, 2010 adding Andrew Madoff, Mark Madoff and other Technologies Individual Defendants as defendants. The Amended Complaint seeks (i) turnover and an accounting pursuant to 11 U.S.C. § 542 and SIPA §§ 78fff-2(c)(3) and 78lll(4); (ii) avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 547(b), 548(a)(1)(A), 550(a), and 551; (iii) avoidance and recovery of fraudulent transfers pursuant to New York Debtor and Creditor Law §§ 273-76, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (iv) avoidance and recovery of undiscovered fraudulent transfers pursuant to New York Civil Procedure Law and Rules 203(g), 213(8), and New York Debtor and Creditor Law §§ 276, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (v) recovery of subsequent transfers pursuant to New York Debtor and Creditor Law § 278 and 11 U.S.C. §§ 544, 547, 548, 550(a), and 551; (vi) recovery of damages based on conversion and unjust enrichment; (vii) restitution based on unjust enrichment; (viii) imposition of a constructive trust; and (ix) an accounting.

The Trustee has alleged that Andrew Madoff and Mark Madoff (now their Estates) are liable for the Technologies Transfers, totaling $22,697,762.35, which were made by BLMIS to the Technologies Entity Defendants and inured to the benefit of Andrew Madoff, Mark Madoff, and the other Technologies Individual Defendants. As of December 2013, the Trustee has been pursuing claims in this action against Mark Madoff and Andrew Madoff (or their respective Estates, as applicable) and the Technologies Entity Defendants, having settled and/or

9

discontinued his action against Ruth Madoff, Peter Madoff, Shana Madoff, and Jennifer Dickson (wife of the late Roger Madoff).[7]

### 3. *Picard* v. *Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB) and *Picard* v. *Madoff Family LLC*, Adv. Pro. No. 10-03485 (SMB)

On July 29, 2010, the Trustee filed complaints in these adversary proceedings and subsequently filed amended complaints on September 1, 2010 (the "Madoff Energy Holdings Amended Complaint" and the "Madoff Family LLC Amended Complaint," respectively).

The Madoff Energy Holdings Amended Complaint and the Madoff Family LLC Amended Complaint seek recovery from Andrew Madoff and Mark Madoff (now, their Estates) of BLMIS transfers totaling $5,175,010.42 and $3,000,500.00, respectively, based on causes of action similar to those set forth in Madoff Technologies LLC's Amended Complaint, and seek similar remedies, including unspecified damages based on conversion, unjust enrichment, and restitution.

## THE MARK MADOFF AND ANDREW MADOFF CUSTOMER AND CREDITOR CLAIMS AGAINST THE BLMIS ESTATE

In July of 2009, Andrew Madoff and Deborah Madoff filed customer claims with the Trustee (the "Customer Claims"). A chart setting forth information contained in the Customer Claims is attached hereto as **Exhibit 2**. Exhibit 2 lists the following information for each Customer Claim: (i) the BLMIS account number to which the Customer Claim refers; (ii) the name of the BLMIS account and Customer Claim holder; (iii) the date the Customer Claim was filed; (iv) the Claim Number designated by the Trustee for each Customer Claim; (v) the status of each Customer Claim, including whether the claim was objected to; and (vi) the date

---

[7] The Trustee's Amended Complaint also asserts claims, since resolved, against Alberto Casanova, a co-manager and co-owner of certain of the Technologies Entity Defendants, and the Alberto Casanova Revocable Living Trust.

10

an objection, if any, was filed with respect to the Trustee's determination of each Customer Claim.

In July of 2009, Mark Madoff and Andrew Madoff filed general unsecured creditor claims in the collective amount of $53,848,721.06 and $45,690,776.95, respectively, asserting claims for deferred compensation that allegedly had accrued in their purported deferred compensation accounts, as well as purported unpaid salaries, bonuses, and investments in Madoff Securities International ("MSIL"). Copies of these claims are attached as **Exhibit 3**.

## SETTLEMENT DISCUSSIONS

In 2015, the Trustee and representatives for the Estates of Mark Madoff and Andrew Madoff began to engage in discussions regarding the possible resolution of the Adversary Proceedings. In 2016, the United States Government joined these discussions as all parties—the Trustee, the United States Government, Mark Madoff Estate, Andrew Madoff Estate, and Stephanie Mack—sought to reach a global resolution of all claims asserted by both the Trustee and the United States Government against the Settling Defendants.

The Trustee conducted a comprehensive investigation into Bernard Madoff's sons including, but not limited to, their role in the company, their accounts with BLMIS, and their use of BLMIS monies to fund their personal lifestyles and personal business ventures. The Trustee's investigation included, without limitation, the review and analysis of documents and communications relating to the:

- Madoff Brothers' role in the company;
- Madoff Brothers' role in the Market-Making, Proprietary Trading, and Investment Advisory ("IA") business units;

11

- Madoff Brothers' compensation;

- Madoff Brothers' use of BLMIS corporate credit card;

- Madoff Brothers' interaction with IA employees;

- Madoff Brothers' referral of customers and prospective customers to the IA business;

- Transactional history reflected in the Madoff Brothers' BLMIS accounts;

- Transactional history of the IA, Market-Making, and Proprietary Trading Businesses;

- Transactional history between MSIL and the IA, Market-Making, and Proprietary Trading business units;

- Financial transactions and monies received by the Madoff Brothers' from BLMIS;

- Financial transactions and monies received by the Madoff Brothers' from Bernard and Ruth Madoff;

- Business entities—including Madoff Technologies LLC, Madoff Energy Holdings LLC, Madoff Family LLC, and any related entity defendants in each of those adversary proceedings—in which the Madoff Brothers held an interest, the sources of funding for such interests, and other investments in such entities;

- Financial transactions and monies received by the Madoff Brothers, or by third parties on their behalves, from BLMIS, MSIL, and Bernard and/or Ruth Madoff;

- Real estate and other personal purchases made by the Madoff Brothers with IA Customer funds; and

- BLMIS's business, in general, and its respective corporate and financial records.

After a thorough review of the relevant records and deliberate consideration of the costs, uncertainty, and risks inherent in all litigation, the Trustee, in exercise of his business judgment, has determined that it is appropriate to reach a resolution in this matter rather than proceed with litigation against the deceased defendants and further deplete the funds remaining in each Estate that could go to the victims of the fraud.

## **OVERVIEW OF THE STIPULATION AND ORDER OF SETTLEMENT**

The principal terms and conditions of the Stipulation and Order of Settlement between the Parties include:[8]

- Complete resolution of all of the Trustee's claims against all remaining Defendants in each of the four Adversary Proceedings: (1) *Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB); (2) *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB); (3) *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB); and (4) *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

- The Mark Madoff Estate will turn over all but $1,750,000 of its cash, securities, business interests, and other assets and proceeds of the fraud to the United States Government and Trustee.

- The Andrew Madoff Estate will turn over all but $2,000,000 of its cash, securities, business interests, and other assets and proceeds of the fraud to the United States Government and Trustee.

- The Mark Madoff and Andrew Madoff Estates will assign to the Trustee all rights, title, ownership, management, and economic interests to all investment, partnership and business ownership interests held by Mark Madoff and Andrew Madoff (which will include their respective interests in Madoff Technologies LLC, Madoff Energy Holdings LLC, Madoff Family LLC, and any related defendant entities).

- The Mark Madoff and Andrew Madoff Estates will deliver or cause to be delivered all rights, title, ownership, management, and economic interests to Madoff Family LLC, owner of certain Stemline Shares, to the Trustee.

---

[8] Capitalized terms used in this Section but not defined in this memorandum of law shall have the meaning ascribed to them in the Stipulation.

- All cash and net proceeds from the liquidation of all other assets recovered from the Mark Madoff and Andrew Madoff Estates will be put into an escrow account for the benefit of the Trustee and United States Government.  These funds will be divided evenly between the Trustee and the United States Government.

- All assets recovered by the Trustee pursuant to this settlement will be distributed out of the Trustee's fund of customer property for those customers with allowed SIPA claims, in accordance with SIPA.

- All assets recovered by the United States Government pursuant to this settlement will be applied to the claims process established for victims of the BLMIS fraud through the process of remission, consistent with applicable Department of Justice regulations.

- The Mark Madoff and Andrew Madoff Estates will withdraw their general unsecured creditor claims, with prejudice.

- The Andrew Madoff Estate will withdraw its Customer Claim, with prejudice.

- The Settling Defendants release the Trustee, the United States Government, their respective agents, and BLMIS and its consolidated estate, on the specific terms set forth in the Stipulation.

- The Trustee and United States Government release the Settling Defendants on the specific terms set forth in the Stipulation.

- Contingent upon the Bankruptcy Court's approval of the Trustee's 9019 Motion, counsel for the Trustee, Mr. Flumenbaum, and Mr. Blumenfeld shall respectively execute, and the Trustee shall subsequently file, a Stipulation of Dismissal dismissing the Madoff Brothers Adversary Proceeding with prejudice and without costs to either the Trustee or the Bankruptcy Defendants.

- As soon as practicable after the Transfer Deadline and the satisfaction of all obligations of the Bankruptcy Defendants therein, and contingent upon the Bankruptcy Court's approval of the Trustee's 9019 Motion, the Trustee will file Notices of Dismissal or such other pleadings as are necessary to dismiss in their entirety the Madoff Technologies Adversary Proceeding, Madoff Energy Holdings Adversary Proceeding, and Madoff Family LLC Adversary Proceeding, with prejudice and without costs to either the Trustee or the Bankruptcy Defendants.

## **RELIEF REQUESTED**

By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the Proposed Order attached hereto as **Exhibit 4** approving the

settlement of the Madoff Brothers and Madoff Technologies Adversary Proceedings pursuant to the agreement and terms as detailed in the Stipulation and Order of Settlement.

## LEGAL BASIS

Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate.  *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of Chicago* (*In re Ionosphere Clubs, Inc.*), 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

The Second Circuit has stated that in determining whether to approve a compromise, the court should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir.), *cert. denied*, *Cosoff v. Rodman*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), cert. denied, 409 U.S. 1039 (1972)); *see also In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010).  "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation."  *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

The factors that courts in the Second Circuit consider when approving bankruptcy settlements are well established.  These interrelated factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and

> delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Fox v. Picard* (*In re Madoff*), 848 F.Supp.2d. 469, 487-488 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d. Cir. 2014) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and citations omitted)).

Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp*., 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. 115, 122 (Bankr. S.D.N.Y. 1994). Finally, the Court should be mindful of the principle that "the law favors compromise." *Vaughn v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc*.), 134 B.R 499, 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

The Trustee's settlement with the remaining Bankruptcy Defendants is fair and equitable and in the best interests of the Estate and the customers of BLMIS. *See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard

16

Affidavit is attached hereto as **Exhibit 5**. The following considerations influenced the Trustee's decision to settle:

### 1. Benefit to BLMIS Customers

The settlement greatly furthers the interests of the customers of BLMIS by adding more than $23 million to the respective customer property and victim funds run by the Trustee and the United States Government. The settlement also includes a transfer of all business interests held by the Madoff Brothers' Estates. Although the ultimate value of these business interests is unknown at this time, we can assume the sale of those interests will increase the amount ultimately received under this Stipulation. The settlement proceeds will be equally divided between the United States Government and Trustee, for the ultimate benefit of the Ponzi scheme victims.

Prosecuting this action against the Estates of Madoff's two deceased sons—even to a successful outcome—would simply reduce the amount of assets that would be available in such Estates for payment to the Trustee and United States Government, and ultimately the fraud victims.

### 2. Avoidance of the Cost, Delay, and Risk of Further Litigation

The settlement eliminates the expense and delay of litigation, which would likely require extensive and costly discovery, and a prolonged trial. Mark Madoff and Andrew Madoff are both now deceased. The Trustee cannot be certain that he would prevail in such a litigation, or that, even if success were guaranteed, any litigation recovery would be substantially greater than the sums he is recovering through this settlement given that the assets of the respective estates would most certainly be significantly depleted through further litigation. Moreover even if successful in whole or in part, litigation with the remaining Bankruptcy Defendants would delay distributions for years.

### 3. Collection

In light of the substantial amount of the Trustee's claims against the Bankruptcy Defendants, the Bankruptcy Defendants would inevitably use their assets to fund their defense against the Trustee. Settling this matter allows those funds to go to the BLMIS fund of customer property and United States Government victim fund, and not to pay legal fees.

### 4. Finality

The Stipulation resolves all claims among the Parties as to the Adversary Proceedings.

### 5. Experienced Counsel and Arms-Length Negotiations

The Parties are represented by sophisticated and experienced counsel. The settlement is the product of arm's length and good faith negotiations between the Trustee, United States Government, and the Settling Defendants, which included years of negotiations.

For all of these reasons, the Stipulation is well within the "range of reasonableness," *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d at 693), and confers a substantial benefit on the Estate and the customers of BLMIS. The Trustee respectfully requests that the Court approve the Stipulation.

## CONCLUSION

The Trustee hereby requests that this Court approve the settlement because it represents a fair and reasonable compromise which greatly benefits the BLMIS customer fund and avoids lengthy, burdensome, and expensive litigation that would greatly reduce the funds available to be paid by the remaining Bankruptcy Defendants. The Stipulation is well within the "range of reasonableness" and confers a substantial benefit on the BLMIS estate, and the Trustee most respectfully requests that this Court enter an Order approving the settlement.

## NOTICE

In accordance with Bankruptcy Rules 2002 and 9019 and the Order Establishing Notice Procedures and Limiting Notice entered on December 5, 2011 (Adv. Pro. No. 08-1789, ECF No. 4560) (the "Order Limiting Notice"), notice of this Motion is being given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) counsel for all Defendants and anyone else who has filed notices of appearance in this Adversary Proceeding. Also in accordance with the Order Limiting Notice, the Trustee has provided notice by e-mail to interested parties in the SIPA liquidation proceeding of the following: the Motion; the date and time scheduled for the hearing at which this Court will consider the Motion; the date by which objections, if any, must be filed with this Court, and the name and address of the persons to be served with a copy of any objections. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee most respectfully requests entry of an Order substantially in the form of **Exhibit 4** granting the relief requested in the Motion.

Dated: June 26, 2017
New York, New York

**BAKER & HOSTETLER LLP**

BY: */s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lauren J. Resnick
Email: lresnick@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the substantively consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the consolidated Chapter 7 Estate of Bernard L. Madoff*

19

**Of Counsel:**

Jimmy Fokas
Email: jfokas@bakerlaw.com
Patrick T. Campbell
Email: pcampbell@bakerlaw.com
Melissa M. Carvalho
Email: mcarvalho@bakerlaw.com

**WINDELS MARX LANE & MITTENDORF, LLP**

BY: */s/ Howard L. Simon*
 156 West 56th Street
 New York, New York 10019
 Tel: (212) 237-1000
 Facsimile: (212) 262-1215
 Howard L. Simon
 Email: hsimon@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff with respect to the Madoff Technologies LLC Adversary Proceeding*