# EXHIBIT 1

**EXECUTION COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x

IN RE CERTAIN ASSETS TRANSFERRED BY
BERNARD MADOFF TO MARK D. MADOFF,
ANDREW H. MADOFF, and STEPHANIE
MACK

--------------------------------------------------------------- x

17 Misc. _____ (   )

**STIPULATION AND ORDER OF SETTLEMENT**

The United States Attorney's Office for the Southern District of New York, by Joon H.

Kim, Acting United States Attorney (the "Office" or the "Government"); Irving H. Picard, in his

capacity as the Trustee (the "Trustee") for the substantively consolidated liquidation proceeding

pending in the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, of

Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard

L. Madoff (the "Chapter 7 Madoff Estate"); David Blumenfeld in his capacity as Successor

Executor ("Mr. Blumenfeld") of the Estate of Mark D. Madoff (the "Mark Madoff Estate");

Martin Flumenbaum in his capacity as Executor ("Mr. Flumenbaum") of the Estate of Andrew

H. Madoff (the "Andrew Madoff Estate") (the Andrew Madoff Estate together with the Mark

Madoff Estate, collectively the "Estates"); Mr. Blumenfeld, Mr. Flumenbaum and the Estates are

collectively referred to herein as the "Bankruptcy Defendants"; and Stephanie Mack a/k/a

Stephanie Madoff ("Mack") hereby enter into this stipulation and order (the "Stipulation") and

stipulate and agree as follows:

## RECITALS

Criminal Proceedings

WHEREAS, on or about March 10, 2009, BERNARD L. MADOFF, ("MADOFF" or the

"defendant"), was charged in a eleven-count information in the United States District Court for

the Southern District of New York, 09 Cr. 213 (DC) (the "Information"), with securities fraud, in

violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal

Regulations, Section 240.10b-5; and Title 18 United States Code, Section 2 (Count One);

investment adviser fraud, in violation of, Title 15, United States Code, Sections 80b-6 and 80b-

17, and Title 18, United States Code, Section 2 (Count Two); mail fraud, in violation of, Title 18,

United States Code, Sections 1341 and 2 (Count Three); wire fraud, in violation of Title 18,

United States Code, Sections 1343 and 2 (Count Four); international money laundering to

promote specified unlawful activity, in violation of, Title 18, United States Code, Sections

1956(a)(2)(A) and 2 (Count Five); international money laundering to conceal and disguise the

proceeds of specified unlawful activity, in violation of, Title 18, United States Code, Sections

1956(a)(1)(B)(i) & (f) and 2 (Count Six); money laundering, in violation of, Title 18, United

States Code, Sections 1957 and 2 (Count Seven); making false statements, in violation of, Title

18, United States Code, Section 1001(a) (Count Eight); perjury, in violation of, Title 18, United

States Code, Section 1621 (Count Nine); making a false filing with the Securities and Exchange

Commission, in violation of, Title 15, United States Code, Sections 78q(e) and 78ff; Title 17,

Code of Federal Regulations, Sections 240.17a-5, 240.17a-13 and 210.2-01; Title 18, United

States Code, Section 2 (Count Ten); and theft from an employee benefit plan, in violation of,

Title 18, United States Code, Sections 664 and 2 (Count Eleven);

WHEREAS, the Information included a forfeiture allegation as to Counts One, Three,

Four, and Eleven, seeking forfeiture to the United States pursuant to Title 18, United States

Code, Sections 981(a)(1)(C) and Title 28, United States Code, Sections 2461, of all property,

real and personal, that constitutes or is derived from proceeds traceable to the commission of said

offenses;

2

WHEREAS, the Information included a second forfeiture allegation as to Counts Five through Seven seeking forfeiture to the United States pursuant to Title 18 United States Code, Section 982, of all property, real and personal, involved in the said money laundering offenses and all property traceable to such property;

WHEREAS, on or about June 26, 2009, the District Court entered a Preliminary Order of Forfeiture (Final as to the Defendant) (the "Preliminary Order"; Docket Entry 93) as to the defendant, wherein the Court imposed an aggregate money judgment against the defendant in the amount of $170.799 billion ($170 billion as to the First Forfeiture Allegation and $799 million as to the Second Forfeiture Allegation), and ordered the defendant to forfeit all of his right, title and interest in any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, and all property traceable to such property, including, but not limited to, all right, title and interest of the defendant in any and all loans or promissory notes in favor of Bernard L. Madoff and/or Ruth Madoff, as lender(s) and/or assignee(s), including the following:

    a. A March 25, 2000 promissory note for $1,100,000, executed by Mark Madoff in favor of Ruth Madoff, due March 31, 2001 ("given as a substitution in part of a Note dated December 4, 1994, in the principal sum of $1,000,000");

    b. A June 17, 2005 unsecured promissory note for $6,000,000, executed by Mark Madoff in favor of Ruth Madoff, due May 31, 2010;

    c. A December 31, 2005 unsecured promissory note for $5,000,000 (Restatement of Loan Agreement dated December 31, 2001, which in turn memorializes and modifies an unsecured Loan Agreement dated December 28, 1998, for $5,000,000), executed by Mark Madoff in favor of Bernard L. Madoff, due December 31, 2010;

    d. A June 16, 2008 unsecured promissory note for $6,500,000 executed by Mark Madoff and Stephanie Madoff in favor of Bernard L. Madoff, due June 30, 2013;

e.   A November 25, 2003 unsecured promissory note for $6,800,000, executed by Andrew Madoff in favor of Ruth Madoff, due November 30, 2007;

f.   A December 31, 2005 unsecured promissory note for $5,000,000 (Restatement of Loan Agreement dated December 31, 2001, which in turn memorializes and modifies an unsecured Loan Agreement dated December 28, 1998, for $5,000,000), executed by Andrew Madoff in favor of Bernard L. Madoff, due December 31, 2010;

g.   A September 21, 2008 unsecured promissory note for $250,000, executed by Andrew Madoff in favor of Bernard L. Madoff, due August 31, 2012;

h.   An October 6, 2008 unsecured promissory note for $4,300,000, executed by Andrew Madoff in favor of Bernard L. Madoff, due September 30, 2012; and

(a-h, collectively, the "Promissory Notes");

WHEREAS, on June 29, 2009, the District Court endorsed a Stipulation and Order between the United States Attorney's Office for the Southern District of New York and the defendant's wife, Ruth Madoff, the terms of which included Ruth Madoff's consent to the forfeiture and relinquishment of all claims to property identified as the "Specific Property" in the Preliminary Order, including the Promissory Notes (Docket Entry 98);

WHEREAS, on February 16, 2016, the District Court entered a final order of forfeiture forfeiting to the United States all right, title and interest in the Promissory Notes, including any amounts recovered by the United States relating to the Promissory Notes (Docket Entry 171);

WHEREAS, the Government notified the Estates and Mack, through their counsel, that it sought return of the funds referenced in the Promissory Notes;

Bankruptcy Proceedings

WHEREAS, BLMIS and its predecessors were registered broker-dealers with the United States Securities and Exchange Commission (the "Commission") and members of the Securities Investor Protection Corporation ("SIPC");

4

WHEREAS, on December 11, 2008, the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff. On December 12, 2008, the District Court entered an order which, among other things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

WHEREAS, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee as the trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (SMB). By Order dated June 9, 2009, the Chapter 7 Madoff Estate was substantively consolidated with the estate of BLMIS;

WHEREAS, pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA proceeding to the extent consistent with SIPA;

WHEREAS, under SIPA, the Trustee is charged with, among other things, the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers

5

and others in accordance with SIPA in satisfaction of allowed claims, including through the

recovery of avoidable transfers such as preference payments and fraudulent transfers made by

BLMIS;

WHEREAS, the Trustee's claims against transferees who received avoidable transfers

from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections

105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and

Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws;

WHEREAS, pursuant to an order of the Bankruptcy Court, dated November 12, 2010

(the "Settlement Procedures Order"), Case No. 08-1789 (SMB), the Trustee will seek

Bankruptcy Court approval to enter into this Stipulation and Order of Settlement in final

settlement of his claims against the Bankruptcy Defendants;

_Picard_ v. _Andrew H. Madoff et al._, Adv. Pro. No. 09-1503 (SMB) and Surrogate's Court
Proceedings

WHEREAS, in July 2009, Andrew Madoff filed general unsecured creditor claims with

the Trustee, which the Trustee has designated as Creditor Claim Nos. 100329 and 100427 (the

"Andrew Madoff Creditor Claims"), alleging, among other things, entitlement to deferred

compensation from BLMIS on behalf of Andrew H. Madoff.  The Andrew Madoff Creditor

Claims are attached as Exhibits A-1 – A-2 to this Stipulation.  The Andrew Madoff Creditor

Claims seek a collective amount of $45,690,776.95;

WHEREAS, in July 2009, Andrew Madoff filed Customer Claim Nos. 015306, 015382,

015383, 070065 and 070066 (Customer Claim Nos. 015382 and 070066 were filed jointly with

Deborah West) (the "Andrew Madoff Customer Claims") in connection with BLMIS accounts

1M0107 and 1M0108, seeking to recover funds he believed to be held in accounts at the time of

6

BLMIS's collapse. The Andrew Madoff Customer Claims are attached as Exhibits B-1 – B-5 to this Stipulation;

WHEREAS, in July 2009, Mark Madoff filed general unsecured creditor claims with the Trustee, which the Trustee has designated as Claim Nos. 100328 and 100428 (the "Mark Madoff Creditor Claims"), alleging, among other things, entitlement to deferred compensation from BLMIS on behalf of Mark D. Madoff. The Mark Madoff Creditor Claims are attached as Exhibits C-1 – C-2 to this Stipulation. The Mark Madoff Creditor Claims seek a collective amount of $53,848,721.06;

WHEREAS, on October 2, 2009, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Andrew H. Madoff, Mark D. Madoff, Shana Madoff, and Peter Madoff in an action currently captioned *Picard* v. *Andrew H. Madoff et al.*, Adv. Pro. No. 09-1503 (SMB) (the "Madoff Brothers Adversary Proceeding");

WHEREAS, on March 15, 2010, Andrew H. Madoff and Mark D. Madoff moved to dismiss the Complaint, which the Bankruptcy Court granted in part and denied in part with leave to replead on September 22, 2011;

WHEREAS, during the pendency of the Madoff Brothers Adversary Proceeding, on December 11, 2010, Mark D. Madoff passed away;

WHEREAS, on December 17, 2010, Andrew H. Madoff petitioned the New York State Surrogate's Court, New York County ("Surrogate's Court"), for Probate and Letters Testamentary and of Trusteeship in the Probate Proceeding No. 2011-39 entitled Probate Proceeding, Will of Mark David Madoff, aka Mark D. Madoff;

7

WHEREAS, on April 1, 2011, Surrogate's Court Judge Nora S. Anderson issued a Decree Admitting Will to Probate, pursuant to which Letters Testamentary and of Trusteeship were directed to be issued to Andrew H. Madoff;

WHEREAS, pursuant to a stipulation, So Ordered by the Bankruptcy Court on April 19, 2011, the Mark Madoff Estate and Andrew H. Madoff, as Executor of the Mark Madoff Estate, were substituted for Mark D. Madoff in the Madoff Brothers Adversary Proceeding;

WHEREAS, the Trustee subsequently filed an Amended Complaint and a Second Amended Complaint in the Madoff Brothers Adversary Proceeding on November 7, 2011 and May 4, 2012, respectively;

WHEREAS, on July 2, 2012, Andrew H. Madoff and the Mark Madoff Estate filed an Answer to the Second Amended Complaint in which they denied all liability to the Trustee for the allegations set forth therein and asserted affirmative defenses;

WHEREAS, on July 15, 2014, the Trustee filed a motion for leave to file a Third Amended Complaint ("TAC"), which included a proposed TAC as an exhibit;

WHEREAS, concerning the Bankruptcy Defendants, the Trustee, through the proposed TAC, seeks (i) to avoid preferential transfers pursuant to 11 U.S.C. §§ 101(31), 101(54), 105(a), 502(d), 547(b), 550, and 551; (ii) to avoid and recover fraudulent transfers and obligations pursuant to 11 U.S.C. §§ 105(a), 502(d), 548(a)(1)(A), 550(a), and 551; (iii) to avoid and recover fraudulent transfers and obligations pursuant to 11 U.S.C. §§ 105(a), 502(d), 548(a)(1)(B), 550(a), and 551; (iv) to avoid and recover fraudulent transfers and obligations pursuant to New York Debtor and Creditor Law §§ 273-76, 276-a, 278 and/or 279, and 11 U.S.C. §§ 105(a), 502(d), 544(b), 550(a), and 551; (v) to avoid and recover undiscovered fraudulent transfers and obligations pursuant to New York Civil Practice Law and Rules 203(g) and 213(8), New York

8

Debtor and Creditor Law §§ 276, 276-a, 278, and/or 279, and 11 U.S.C. §§ 105(a), 502(d),

544(b), 550(a), and 551; (vi) disallowance of customer and non-customer claims pursuant to

Bankruptcy Code section 502(b)(1); (vii) to disallow customer and creditor claims; (viii) to

equitably disallow customer and creditor claims pursuant to Bankruptcy Code sections 510(c)

and 105(a); (ix) to recover damages based on breach of fiduciary duty, negligence, and unjust

enrichment; (x) restitution based on unjust enrichment; (xi) to impose a constructive trust; and

(xii) an accounting;

WHEREAS, the Trustee has alleged in the proposed TAC that Andrew H. Madoff and

Mark D. Madoff are liable as transferees of fraudulent transfers totaling at least $153,293,116,

which include (i) $35,405,081 in avoidable transfers in connection with BLMIS Accounts

1M0005, 1M0007, 1M0013, 1M0062, 1M0073, 1M0103, 1M0107, 1M0108, 1M0110, 1M0140,

1M0141, 1M0142, 1M0143 and 1M0174, which were each opened or controlled by Andrew H.

Madoff or Mark D. Madoff; (ii) $67,772,805 in avoidable transfers in connection with salary,

bonus and other earnings received by Andrew H. Madoff and Mark D. Madoff; and (iii)

$50,115,231 in other avoidable transfers Andrew H. Madoff and Mark D. Madoff received or

benefitted from, including in connection with the purchase of real property (collectively, the

"Madoff Brothers Avoidable Transfers"), and are liable for unspecified damages based on breach

of fiduciary duty, negligence and unjust enrichment, restitution, a constructive trust and an

accounting;

WHEREAS, on August 12, 2014, Andrew H. Madoff and the Mark Madoff Estate filed

their Opposition to the Trustee's Motion for Leave to File a Third Amended Complaint, in which

they denied all liability to the Trustee for the allegations contained in the proposed TAC;

WHEREAS, Andrew H. Madoff passed away on September 3, 2014;

9

WHEREAS, on September 10, 2014, Mr. Flumenbaum petitioned the Surrogate's Court
for Probate and Letters Testamentary and of Trusteeship in the Probate Proceeding No. 2014-
3416 entitled Probate Proceeding, Will of Andrew Madoff aka Andrew H. Madoff;

WHEREAS, on September 12, 2014, The Honorable Nora S. Anderson issued a Decree
Admitting Will to Probate in the Probate Proceeding No. 2014-3416 entitled "Probate
Proceeding, Will of Andrew H Madoff, aka Andrew Madoff," pursuant to which Letters
Testamentary and of Trusteeship were directed to be issued to Mr. Flumenbaum;

WHEREAS, on October 27, 2014, Mr. Blumenfeld petitioned the Surrogate's Court for
Successor Letters Testamentary and appointment as the Successor Executor of the Mark Madoff
Estate, as a result of Andrew Madoff's death;

WHEREAS, on November 21, 2014, Surrogate's Court Judge Nora S. Anderson directed
that Letters Testamentary be issued to Mr. Blumenfeld, as Successor Executor of the Mark
Madoff Estate;

WHEREAS, on April 6, 2016, the Trustee filed a Reply Memorandum in further support
of his Motion for Leave to File a Third Amended Complaint and the motion remains pending
before the Bankruptcy Court;

*Picard* v. *Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB)

WHEREAS, on July 29, 2010, the Trustee filed a complaint in an adversary proceeding
captioned *Picard* v. *Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB) (the
"Madoff Technologies Adversary Proceeding");

WHEREAS, the Trustee subsequently filed an amended complaint in the Madoff
Technologies Adversary Proceeding on September 1, 2010 (the "Madoff Technologies Amended
Complaint");

10

WHEREAS, the defendants to the Madoff Technologies Amended Complaint have not yet filed a responsive pleading, but deny all liability to the Trustee and would assert affirmative defenses;

WHEREAS, the Trustee, through the Madoff Technologies Amended Complaint, seeks (i) a turnover and an accounting pursuant to 11 U.S.C. § 542 and SIPA §§ 78fff-2(c)(3) and 78lll(4); (ii) to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 547(b), 548(a)(1)(A), 550(a), and 551; (iii) to avoid and recover fraudulent transfers pursuant to New York Debtor and Creditor Law §§ 273-76, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (iv) to avoid and recover undiscovered fraudulent transfers pursuant to New York Civil Procedure Law and Rules 203(g), 213(8), and New York Debtor and Creditor Law §§ 276, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (v) to recover from subsequent transferees pursuant to New York Debtor and Creditor Law § 278 and 11 U.S.C. §§ 544, 547, 548, 550(a), and 551; (vi) to recover damages based on conversion and unjust enrichment; (vii) restitution based on unjust enrichment; (viii) to impose a constructive trust; and (ix) an accounting;

WHEREAS, the Trustee has alleged in the Madoff Technologies Amended Complaint that Andrew H. Madoff and Mark D. Madoff (and now their estates) are liable for transfers of at least $22,000,000 made by BLMIS to Madoff Technologies LLC and related entities and individuals that inured to the benefit of Andrew H. Madoff and Mark D. Madoff who held ownership interests in Madoff Technologies LLC and related entities (the "Madoff Technologies Avoidable Transfers"), and are liable for unspecified damages based on conversion and unjust enrichment, restitution, a constructive trust and an accounting;

11

*Picard* v. *Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB)

WHEREAS, on July 29, 2010, the Trustee filed a complaint in an adversary proceeding

captioned *Picard* v. *Madoff Energy Holdings LLC et al.*, Adv. Pro. No. 10-03484 (SMB) (the

"Madoff Energy Holdings Adversary Proceeding");

WHEREAS, the Trustee subsequently filed an amended complaint in the Madoff Energy

Holdings Adversary proceeding on September 1, 2010 (the "Madoff Energy Holdings Amended

Complaint");

WHEREAS, the defendants to the Madoff Energy Holdings Amended Complaint have

not yet filed a responsive pleading, but deny all liability to the Trustee and would assert

affirmative defenses;

WHEREAS, the Trustee, through the Madoff Energy Holdings Amended Complaint,

seeks (i) a turnover and an accounting pursuant to 11 U.S.C. § 542 and SIPA §§ 78fff-2(c)(3)

and 78lll(4); (ii) to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 547(b),

548(a)(1)(A), 548(a)(1)(B), 550, 550(a), and 551; (iii) to avoid and recover fraudulent transfers

pursuant to New York Debtor and Creditor Law §§ 273-76, 276-a, 278, and/or 279, and 11

U.S.C. §§ 544, 550(a), and 551; (iv) to recover damages based on conversion and unjust

enrichment; (v) restitution based on unjust enrichment; (vi) to impose a constructive trust; and

(vii) an accounting;

WHEREAS, the Trustee has alleged in the Madoff Energy Holdings Amended Complaint

that Andrew H. Madoff and Mark D. Madoff (and now their estates) are liable for transfers in

excess of $5,175,010.42 made by BLMIS to Madoff Energy Holdings LLC and related entities

and individuals that inured to the benefit of Andrew H. Madoff and Mark D. Madoff who hold

ownership interests in Madoff Energy Holdings LLC and related entities (the "Madoff Energy

12

Holdings Avoidable Transfers"), and are liable for unspecified damages based on conversion and unjust enrichment, restitution, a constructive trust and an accounting;

*Picard* v. *Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB)

WHEREAS, on July 29, 2010, the Trustee filed a complaint in an adversary proceeding captioned *Picard* v. *Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB) (the "Madoff Family LLC Adversary Proceeding");

WHEREAS, the Trustee subsequently filed an amended complaint in the Madoff Family LLC Adversary proceeding on September 1, 2010 (the "Madoff Family LLC Amended Complaint");

WHEREAS, the defendants to the Madoff Family LLC Amended Complaint have not yet filed a responsive pleading, but deny all liability to the Trustee and would assert affirmative defenses;

WHEREAS, the Trustee, through the Madoff Family LLC Amended Complaint, seeks (i) a turnover and an accounting pursuant to 11 U.S.C. § 542 and SIPA §§ 78fff-2(c)(3) and 78lll(4); (ii) to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a), and 551; (iii) to avoid and recover fraudulent transfers pursuant to New York Debtor and Creditor Law §§ 273-76, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (iv) to avoid and recover undiscovered fraudulent transfers pursuant to New York Civil Procedure Law and Rules 203(g), 213(8), and New York Debtor and Creditor Law §§ 276, 276-a, 278, and/or 279, and 11 U.S.C. §§ 544, 550(a), and 551; (v) to recover damages based on conversion and unjust enrichment; (vi) restitution based on unjust enrichment; (vii) to impose a constructive trust; and (viii) an accounting;

WHEREAS, the Trustee has alleged in the Madoff Family LLC Amended Complaint that Andrew H. Madoff and Mark D. Madoff (and now their estates) are liable for transfers of $3,000,500 made by BLMIS to Madoff Family LLC and related entities that inured to the benefit of Andrew H. Madoff and Mark D. Madoff who held ownership interests in Madoff Family LLC (the "Madoff Family LLC Avoidable Transfers" (collectively with the Madoff Brothers Avoidable Transfers, the Madoff Technologies Avoidable Transfers and the Madoff Energy Holdings Avoidable Transfers, the "Avoidable Transfers"), and are liable for unspecified damages based on conversion and unjust enrichment, restitution, a constructive trust and an accounting;

Joint Settlement

WHEREAS, the Government, the Trustee, the Andrew Madoff Estate, the Mark Madoff Estate, Mr. Flumenbaum, Mr. Blumenfeld and Mack (collectively, the "Parties") desire to settle any and all claims and disputes they may have with respect to the Promissory Notes and funds referenced therein, BLMIS, the Avoidable Transfers, the Andrew Madoff Customer Claims, the Andrew Madoff Creditor Claims and the Mark Madoff Creditor Claims without the expense, delay and uncertainty of litigation;

WHEREAS, this Stipulation shall not be construed or deemed to be evidence of an admission on the part of the Bankruptcy Defendants with respect to (i) any claims or allegations of fault asserted in the Bankruptcy proceedings, or (ii) any infirmity in the affirmative defenses that the Bankruptcy Defendants have, or could have, asserted in the Bankruptcy proceedings;

WHEREAS, Mr. Flumenbaum represents and warrants that he (i) is the current executor of the Andrew Madoff Estate and (ii) has been duly appointed as such by the New York County

14

Surrogate's Court and that the letters testamentary issued to him by the New York County

Surrogate's Court have not been revoked and are in full force and effect;

WHEREAS, Mr. Blumenfeld represents and warrants that he (i) is the current executor of

the Mark Madoff Estate and (ii) has been duly appointed as such by the New York County

Surrogate's Court and that the letters testamentary issued to him by the New York County

Surrogate's Court have not been revoked and are in full force and effect;

WHEREAS, Mr. Flumenbaum, on behalf of the Andrew Madoff Estate, Mr. Blumenfeld,

on behalf of the Mark Madoff Estate, and Mack, severally, but not jointly as to himself, herself

or itself, hereby represent and warrant that: (i) they have the full power, authority and legal right

to execute and deliver this Stipulation and to perform their obligations hereunder; (ii) the

execution and delivery of this Stipulation and the performance by Mr. Flumenbaum and Mr.

Blumenfeld of their obligations hereunder have been duly and validly authorized by all necessary

action on the part of Mr. Flumenbaum and Mr. Blumenfeld, as the case may be; (iii) this

Stipulation has been duly executed and delivered by Mr. Flumenbaum and Mr. Blumenfeld and

constitutes the valid and binding agreement of Mr. Flumenbaum and Mr. Blumenfeld,

enforceable against the Bankruptcy Defendants in accordance with its terms; (iv) in executing

this Stipulation, Mr. Flumenbaum and Mr. Blumenfeld have done so with the full knowledge of

any and all rights that Mr. Flumenbaum and Mr. Blumenfeld may have with respect to the

controversies herein compromised, and Mr. Flumenbaum and Mr. Blumenfeld have received or

have had the opportunity to obtain independent legal advice from their attorneys with regard to

the facts relating to said controversies and with respect to the rights arising out of said facts; and

(v) neither Mr. Flumenbaum nor Mr. Blumenfeld have assigned or transferred or purported to

15

assign or transfer to any third person or party all or any portion of the matters that the Bankruptcy Defendants release herein;

WHEREAS, the Government hereby represents and warrants to the Bankruptcy Defendants and Mack that it has the full power, authority and legal right to execute and deliver this Stipulation and to perform its obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of its obligations under this Stipulation;

WHEREAS, the Trustee hereby represents and warrants to the Bankruptcy Defendants that he has, subject to the approval of the Bankruptcy Court under the Settlement Procedures Order, the full power, authority and legal right to execute and deliver this Stipulation and to perform his obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of his obligations under this Stipulation;

WHEREAS, under this Stipulation, the Government and the Trustee will receive approximately $21,500,000 in cash and marketable securities (subject to the expense reserves described in Paragraphs 3 a. and 4 a. below), and interests in investment funds and business entities of presently undetermined value, from the Estates, and $1,500,000 in cash from Mack.

WHEREAS, the Government intends that all assets recovered by the Government pursuant to this Stipulation and Order of Settlement shall be applied to the claims process established for victims of the BLMIS fraud through the process of remission, consistent with applicable Department of Justice regulations;

WHEREAS, the Trustee intends to distribute his share of any recoveries under this Stipulation to the customer victims of the fraud with allowed SIPA claims, in accordance with SIPA;

16

WHEREAS, for the purpose of effectuating this Stipulation, the Trustee will establish an escrow account (the "Escrow Account") for the benefit of the Trustee and the Government;

The Parties hereby stipulate and agree, and the Court orders, as follows:

1.     The recitals above are fully incorporated herein.

2.     The "Effective Date" of this Stipulation shall be the date on which the District Court approves this Stipulation or the Bankruptcy Court grants the 9019 Motion (the "9019 Motion") filed by the Trustee in the Madoff Brothers and Madoff Technologies Adversary Proceedings seeking approval to enter into this Stipulation, whichever occurs later.  If the Bankruptcy Court declines to grant the 9019 Motion, this Stipulation shall be null and void, with no force or effect.  For the avoidance of doubt, nothing in this Stipulation shall subject the Government to the jurisdiction of the Bankruptcy Court.

3.     Within (30) days of the Effective Date (the "Transfer Deadline"), Mr. Flumenbaum shall undertake the following:

a.     Transfer or cause to be transferred into the Escrow Account all assets held in the accounts identified in Part I of the Andrew Madoff Estate Asset Summary, attached hereto as Exhibit D, less the sum of $2,000,000 (the "Andrew Madoff Estate Retention Amount"), plus $1,000,000 to be used only for ordinary and reasonable estate administration expenses, expenses required to maintain and liquidate the assets in the Andrew Madoff Estate Asset Summary, and reasonably estimated or actual state, local, and federal income, transfer, and capital gains taxes owed by the Estate and directly related to the transfer of assets under this Stipulation (the "AM Expense Reserve") incurred before the second anniversary of the Effective Date of this Stipulation (such date being the "AM Reserve Deadline"), but only to the extent such expenses have not previously been reimbursed or otherwise credited to the Andrew Madoff Estate.  For the

17

avoidance of doubt, the AM Expense Reserve shall not be used to satisfy state, local, or federal

estate or gift taxes. The AM Expense Reserve funds of $1,000,000 shall be maintained by Paul,

Weiss, Rifkind, Wharton & Garrison LLP in an interest-bearing escrow account (the "AM

Expense Reserve Account"). Any and all requests for a withdrawal of funds from the AM

Expense Reserve Account will require the submission of appropriate supporting documentation

to the Trustee and advance approval by the Trustee, whose approval shall be provided timely and

shall not be unreasonably withheld. Mr. Flumenbaum shall provide an accounting of the AM

Expense Reserve Account to the Trustee on a quarterly basis, beginning at the end of the fiscal

quarter after the Effective Date of this Stipulation and concluding with a final accounting on the

AM Reserve Deadline, setting forth the amount of funds held in the account, the accrual of

interest or other gains, if any, and a description and the purpose of any deposits or withdrawals

made therein. Upon the AM Reserve Deadline, the balance remaining in the AM Expense

Reserve Account shall be transferred to the Escrow Account for distribution to the Trustee and

Government in the same manner as set forth in Paragraph 7.

      b.      Transfer all funds contained in escrow account number 3711-4204,

maintained at Citibank, N.A., in the name of Paul, Weiss, Rifkind, Wharton & Garrison LLP

Attorney Trust Account, relating to the proceeds of the sale of the real property known as 433

East 74th Street, Apt. 5E, New York, New York 10021-3901, including all interest earned

thereon to the Escrow Account.

      c.      Deliver or cause to be delivered all rights, title, ownership, management,

and economic interests to Madoff Family LLC, owner of certain shares of Stemline

Therapeutics, Inc. (the "Stemline Shares"), to the Trustee.

18

d.      Assign to the Trustee all rights, title, ownership, management, and economic interests to the "Partnership and Business Ownership Interests" identified in Part II of the Andrew Madoff Estate Asset Summary (the "Andrew Madoff Business Interests").  Mr. Flumenbaum shall effectuate the transfer of the Andrew Madoff Business Interests by executing and delivering to the Trustee on or before the Transfer Deadline the assignment and assumption agreements for the Andrew Madoff Business Interests, in the forms attached hereto as Exhibits E-1 – E-11 (the "AM Assignment and Assumption Agreements").  In connection with such assignments, Mr. Flumenbaum represents and warrants that all documents in his possession, custody, or control concerning the Andrew Madoff Business Interests have been provided to the Trustee, and that to the best of his knowledge (A) the Andrew Madoff Business Interests are free and clear of any and all liens, mortgages, pledges, charges, security interests, options, rights of first refusal, or other encumbrances of any kind, and the Andrew Madoff Estate has good and valid title to the Andrew Madoff Business Interests, (B) other than as set forth in the bylaws, operating/shareholder agreements or other operating documents Mr. Flumenbaum delivered to the Trustee, the AM Assignment and Assumption Agreements do not violate or conflict with any company's bylaws, operating/shareholder agreements or any other rights of any third party or any applicable law, and (C) that all liabilities of the Andrew Madoff Business Interests known to Mr. Flumenbaum have been disclosed to the Trustee.  If the Trustee discovers after his own diligence that Mr. Flumenbaum's representations in this Paragraph are false, the Trustee may rescind the transfer of any of the Andrew Madoff Business Interests under this Stipulation.  The Trustee, upon consultation with the Government, may rescind the transfer of the Andrew Madoff Estate's interest in Madoff Energy Holdings LLC in the Trustee's sole discretion and no later than six months after the Transfer Deadline.  Without limiting the generality of the foregoing,

19

nothing in any operating or other agreement concerning the Andrew Madoff Business Interests prevents or affects in any manner the assignment and assumption of the Andrew Madoff Business Interests by the Trustee.

> e.    Deliver to the Trustee an executed Notice of Withdrawal of Customer Claims with Prejudice, in the form attached hereto as Exhibit F.

> f.    Deliver to the Trustee an executed Notice of Withdrawal of Creditor Claims with Prejudice, in the form attached hereto as Exhibit G.

> g.    Deliver to the Trustee any other assets held by the Andrew Madoff Estate not specifically addressed in this Paragraph or in Paragraph 9 (The Andrew Madoff Estate Retention Amount).

> 4.    By the Transfer Deadline, Mr. Blumenfeld shall undertake the following:

> a.    Transfer or cause to be transferred into the Escrow Account all assets held in the accounts identified in Part I of the Mark Madoff Estate Asset Summary, attached hereto as Exhibit H, less the sum of $1,750,000 (such sum, the "Mark Madoff Estate Retention Amount"), plus $1,000,000 to be used only for ordinary and reasonable estate administration expenses, expenses required to maintain and liquidate the assets in the Mark Madoff Estate Asset Summary, and reasonably estimated or actual state, local, and federal income, transfer. and capital gains taxes owed by the Estate and directly related to the transfer of assets under this Stipulation (the "MM Expense Reserve") incurred before the second anniversary of the Effective Date of this Stipulation (such date being the "MM Reserve Deadline"), but only to the extent such expenses have not previously been reimbursed or otherwise credited to the Mark Madoff Estate.  For the avoidance of doubt, the MM Expense Reserve shall not be used to satisfy state, local, or federal estate or gift taxes.  The MM Expense Reserve funds of $1,000,000 shall be

20

maintained by Paul, Weiss, Rifkind, Wharton & Garrison LLP in an interest-bearing escrow account (the "MM Expense Reserve Account"). Any and all requests for a withdrawal of funds from the MM Expense Reserve Account will require the submission of appropriate supporting documentation to the Trustee and advance approval by the Trustee, whose approval shall be provided timely and shall not be unreasonably withheld. Mr. Blumenfeld shall provide an accounting of the MM Expense Reserve Account to the Trustee on a quarterly basis, beginning at the end of the fiscal quarter after the Effective Date of this Stipulation and concluding with the final accounting on the MM Reserve Deadline, setting forth the amount of funds held in the account, the accrual of interest or other gains, if any, and a description and the purpose of any deposits or withdrawals made therein. Upon the MM Reserve Deadline, the balance remaining in the MM Expense Reserve Account shall be transferred to the Escrow Account for distribution to the Trustee and Government in the same manner as set forth in Paragraph 7.

b.    Transfer all funds contained in escrow account number 3711-4204, maintained at Citibank, N.A., in the name of Paul, Weiss, Rifkind, Wharton & Garrison LLP Attorney Trust Account, relating to the proceeds of the sale of the real property known as 21 Cherry Valley Road, Greenwich, Connecticut 06831-3009, including all interest earned thereon to the Escrow Account.

c.    Deliver or cause to be delivered all rights, title, ownership, management, and economic interests to Madoff Family LLC, owner of certain Stemline Shares, to the Trustee.

d.    Assign to the Trustee all rights, title, ownership, management, and economic interests to the "Partnership and Business Ownership Interests" identified in Part II of the Mark Madoff Estate Asset Summary (the "Mark Madoff Business Interests," and together with the Andrew Madoff Business Interests, the "Madoff Business Interests"). Mr. Blumenfeld

21

shall effectuate the transfer of the Mark Madoff Business Interests by executing and delivering to the Trustee on or before the Transfer Deadline the assignment and assumption agreements for the Mark Madoff Business Interests, in the forms attached hereto as Exhibits I-1 – I-7 (the "MM Assignment and Assumption Agreements").  In connection with such assignments, Mr. Blumenfeld represents and warrants that all documents in his possession, custody, or control concerning the Mark Madoff Business Interests have been provided to the Trustee, and that to the best of his knowledge (A) the Mark Madoff Business Interests are free and clear of any and all liens, mortgages, pledges, charges, security interests, options, rights of first refusal, or other encumbrances of any kind, and the Mark Madoff Estate has good and valid title to the Mark Madoff Business Interests, (B) other than as set forth in the bylaws, operating/shareholder agreements or other operating documents Mr. Blumenfeld delivered to the Trustee, the MM Assignment and Assumption Agreements do not violate or conflict with any company's bylaws, operating/shareholder agreements or any other rights of any third party or any applicable law, and (C) that all liabilities of the Mark Madoff Business Interests known to Mr. Blumenfeld have been disclosed to the Trustee.  If the Trustee discovers after his own diligence that Mr. Blumenfeld's representations in this Paragraph are false, the Trustee may rescind the transfer of any of the Mark Madoff Business Interests under this Stipulation.  The Trustee, upon consultation with the Government, may rescind the transfer of the Mark Madoff Estate's interest in Madoff Energy Holdings LLC in the Trustee's sole discretion and no later than six months after the Transfer Deadline.  Without limiting the generality of the foregoing, nothing in any operating or other agreement concerning the Mark Madoff Business Interests prevents or affects in any manner the assignment and assumption of the Mark Madoff Business Interests by the Trustee.

22

e.    Deliver to the Trustee an executed Notice of Withdrawal of Creditor

Claims with Prejudice, in the form attached hereto as Exhibit G.

f.    Deliver to the Trustee any other assets held by the Mark Madoff Estate not

specifically addressed in this Paragraph or in Paragraph 10 (The Mark Madoff Estate Retention

Amount).

5.    Within (30) days of the Effective Date, Mack shall pay or cause to be paid to the

Escrow Account $1,500,000 (the "Stephanie Mack Cash Settlement Payment").

6.    All funds transferred by the Estates and Mack to the Escrow Account pursuant to

this Stipulation and the net proceeds from the liquidation of all assets for which title is it to be

transferred from the Estates to the Trustee pursuant to this Stipulation shall be divided evenly

between the Trustee and the Government.  For the avoidance of doubt, all assets from the Estates

and Mack obtained pursuant to this Stipulation shall be divided evenly between the Trustee and

Government.

7.    Specifically, within ten business days of the Transfer Deadline, the escrow agent

for the Escrow Account (the "Escrow Agent") shall release one half of the cash/liquid funds in

the Escrow Account to the United States Marshals Service for further deposit in the Assets

Forfeiture Fund, pursuant to instructions to be provided to the Escrow Agent by the Government,

and such funds shall be deemed as fully and finally forfeited to the United States.  The Escrow

Agent shall then release the remaining cash/liquid funds to the Trustee.  Any additional funds

subsequently added to the Escrow Account shall be transferred in the same manner specified

herein within ten business days of receipt.

8.    The Trustee shall use his best efforts to sell all assets transferred from the Estates

to the Trustee pursuant to this Stipulation, and any Preexisting Ownership Interests (as the term

23

is defined below), at the highest price possible, consistent with the Trustee's fiduciary duties while incurring only ordinary and reasonable expenses in connection with the sales.  Upon the closings of such sales, the Trustee shall transfer the proceeds, net of ordinary and reasonable costs and expenses and/or liabilities incurred or assumed in connection with the transfer, management, or sale of the assets, to the Escrow Account within five business days.  Next, to the extent that the Government and/or the Trustee possesses a previously acquired ownership interest in an asset that was not acquired by operation of this Stipulation (the "Preexisting Ownership Interest"), the Trustee shall direct that the Escrow Agent separately (1) distribute any net proceeds due to the Government from the Escrow Account on account of and in proportion to the Government's Preexisting Ownership Interest, if any, to the United States Marshals Service for further deposit in the Assets Forfeiture Fund, and such funds shall be deemed as fully and finally forfeited to the United States; and (2) distribute any net proceeds due to the Trustee from the Escrow Account on account of and in proportion to the Trustee's Preexisting Ownership Interest, if any, to the Trustee.  Following payment of any Preexisting Ownership Interests, the Escrow Agent shall release one half of the funds in the Escrow Account to the United States Marshals Service for further deposit in the Assets Forfeiture Fund and such funds shall be deemed as fully and finally forfeited to the United States.  The Escrow Agent shall then release the remaining funds to the Trustee.

9.    The Andrew Madoff Estate Retention Amount.  Pursuant to this Stipulation, the Andrew Madoff Estate is permitted to retain the Andrew Madoff Estate Retention Amount.  The Andrew Madoff Estate Retention Amount will be deemed to fully satisfy the "settlement credit" due to Andrew H. Madoff under the Side Letter Agreement attached as Exhibit 1 to the December 26, 2013 Settlement Agreement and Release between the Trustee and the Deborah and

Andrew Madoff Foundation (the "Andrew Foundation Side Letter Agreement") and the

Trustee's obligation to provide the "settlement credit" pursuant to the Andrew Foundation Side

Letter Agreement shall be included in the claims released by Mr. Flumenbaum and the Andrew

Madoff Estate in favor of the Trustee under Paragraph 14 below.

10.    The Mark Madoff Estate Retention Amount.    Pursuant to this Stipulation, the

Mark Madoff Estate is permitted to retain the Mark Madoff Estate Retention Amount.  The Mark

Madoff Estate Retention Amount will be deemed to fully satisfy the "settlement credit" due to

the Mark D. Madoff Estate under the Side Letter Agreement attached as Exhibit 1 to the January

8, 2014 Settlement Agreement and Release between the Trustee and the Mark & Stephanie

Madoff Foundation (the "Mark Foundation Side Letter Agreement") and the Trustee's obligation

to provide the "settlement credit" pursuant to the Mark Foundation Side Letter Agreement shall

be included in the claims released by Mr. Blumenfeld and the Mark Madoff Estate in favor of the

Trustee under Paragraph 14 below.

11.    Post-Transfer Representations and Warranties.

a.    Within five (5) days of the Transfer Deadline, Mr. Flumenbaum shall

provide a written representation and warranty to the Trustee and the Government, in the form set

forth in Exhibit J, certifying that (1) the amount in cash representing the Andrew Madoff Estate

Retention Amount constitute the only assets remaining in the Andrew Madoff Estate, (2) the

disclosures made in the Andrew Madoff Estate Asset Summary and in the separately provided

financial accounting of the Andrew Madoff Estate dated June 16, 2017 (the "Andrew Madoff

Estate Accounting"), both of which have been provided to the Trustee and Government in

anticipation of entry into this Stipulation, and the accuracy of which the Trustee and Government

have relied upon in entering into this Stipulation, are true and accurate as of the date hereof, to

the best of his knowledge, and he is not aware of other assets or liabilities of the Andrew Madoff

Estate, other than as provided for in the Andrew Madoff Retention Amount, and has not made

any distributions that were not disclosed to the Trustee and Government as of the date hereof.  In

the event that Mr. Flumenbaum failed to disclose estate assets in the Andrew Madoff Estate

Asset Summary or Andrew Madoff Estate Accounting or if any of the statements in the Andrew

Madoff Estate Asset Summary or Andrew Madoff Estate Accounting are determined to be false,

Mr. Flumenbaum shall immediately turn over such undisclosed assets to the Trustee and

Government.

        b.      Within five (5) days of the Transfer Deadline, Mr. Blumenfeld shall

provide a written representation and warranty to the Trustee and the Government, in the form set

forth in Exhibit K, certifying that (1) the amount in cash representing the Mark Madoff Estate

Retention Amount constitute the only assets remaining in the Mark Madoff Estate and (2) the

disclosures made in the Mark Madoff Estate Asset Summary and in the separately provided

financial accounting of the Mark Madoff Estate dated June 16, 2017 (the "Mark Madoff Estate

Accounting"), both of which have been provided to the Trustee and Government in anticipation

of entry into this Stipulation, and the accuracy of which the Trustee and Government have relied

upon in entering into this Stipulation, are true and accurate as of the date hereof, to best of his

knowledge and he is not aware of other assets or liabilities of the Mark Madoff Estate, other than

as provided for in the Mark Madoff Estate Retention Amount, and has not made any distributions

that were not disclosed to the Trustee and Government as of the date hereof.  In the event that

Mr. Blumenfeld failed to disclose estate assets in the Mark Madoff Estate Asset Summary or

Mark Madoff Estate Accounting or if any of the statements in the Mark Madoff Estate Asset

Summary or Mark Madoff Estate Accounting are determined to be false, Mr. Blumenfeld shall
immediately turn over such undisclosed assets to the Trustee and Government.

     12.   <u>Release by the Trustee; Dismissal of Adversary Proceedings</u>.

     a.   In consideration for the covenants and agreements set forth in this
Stipulation and for other good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, except with respect to any representations and warranties, covenants
and/or other obligations provided in, or arising under, this Stipulation, upon the Bankruptcy
Court's approval of the Trustee's 9019 Motion and confirmation that the obligations set forth in
Paragraphs 3-5 and 9-11 of this Stipulation have been satisfied, the Trustee releases, remises and
forever discharges (i) the Bankruptcy Defendants (ii) Mack; and (iii) Mack's and the Bankruptcy
Defendants' attorneys, professionals, agents and consultants, from any and all past, present or
future claims or causes of action (including any suit, petition, demand, or other claim in law,
equity or arbitration) and from any and all allegations of liability or damages (including any
allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages,
responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or
indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or
otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty
or otherwise (including attorneys' fees, costs or disbursements) known or unknown, now existing
or arising in the future, arising out of or in any way related to BLMIS, the Chapter 7 Madoff
Estate or the Avoidable Transfers (collectively, the "Trustee Released Claims").

     b.   As soon as practicable after the Transfer Deadline and the satisfaction of
all obligations of the Bankruptcy Defendants herein, and contingent upon the Bankruptcy
Court's approval of the Trustee's 9019 Motion, counsel for the Trustee, Mr. Flumenbaum and

Mr. Blumenfeld shall respectively execute, and the Trustee shall subsequently file, a Stipulation

of Dismissal dismissing the Madoff Brothers Adversary Proceeding with prejudice and without

costs to either the Trustee or the Bankruptcy Defendants.

c.      As soon as practicable after the Transfer Deadline and the satisfaction of

all obligations of the Bankruptcy Defendants herein, and contingent upon the Bankruptcy

Court's approval of the Trustee's 9019 Motion, the Trustee will file Notices of Dismissal or such

other pleadings as are necessary to dismiss the Madoff Technologies Adversary Proceeding,

Madoff Energy Holdings Adversary Proceeding and Madoff Family LLC Adversary Proceeding

in their entirety, with prejudice and without costs to either the Trustee or the Bankruptcy

Defendants.  The Trustee will also send written notice to Mr. Flumenbaum and Mr. Blumenfeld

withdrawing the initial and amended Notices of Claim and Affidavits of Non-Liquidated Claims

against the Estates that he served on Andrew Madoff, Mr. Flumenbaum, and Mr. Blumenfeld,

with prejudice and without costs to either the Trustee or the Bankruptcy Defendants.

13.    Release by the Government

a.      Subject to the considerations in Paragraph 13 c. below (concerning

excluded claims), and conditioned upon the Bankruptcy Defendants and Mack's full completion

of their obligations pursuant to this Stipulation, the United States releases, remises and forever

discharges the Bankruptcy Defendants and Mack from any and all past, present or future claims

or causes of action (including any suit, petition, demand, or other claim in law, equity or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants or accounts) of whatever kind, nature or description, direct or indirect,

in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or

28

otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, now existing or arising in the future that the United States has arising out of, or in any way related to, the entry of Mark Madoff, Andrew Madoff or Mack into the Promissory Notes or their receipt of funds relating to the Promissory Notes (collectively, the "Government Released Claims").

    b.  The Government will not seek to seize or forfeit any other property of the Estates or Mack derived from the conduct described in the Information.

    c.  Notwithstanding the release given in this paragraph, or any other term of this Stipulation, the following claims of the Government are specifically reserved, are not released by this Stipulation, and are not Government Released Claims:

     i. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    ii. Any criminal liability;

    iii. Except as expressly stated in subparagraph a, any administrative liability;

    iv. Any liability to the United States (or its agencies) for any conduct that does not arise out of or relates in any way to the entry of Mark Madoff, Andrew Madoff or Mack into the Promissory Notes or their receipt of funds relating to the Promissory Notes; and

    v. Any liability based upon obligations created by this Stipulation.

14.    <u>Release of the Trustee by Mack and the Bankruptcy Defendants.</u>

a.    Upon the Transfer Deadline, Mack and each Bankruptcy Defendant, on behalf of himself/herself and his/her executors, administrators, heirs and assigns, hereby releases, remises, and forever discharges: (i) the Trustee, (ii) all of the Trustee's attorneys, professionals, agents and consultants, and (iii) BLMIS and its consolidated estate from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, now existing or arising in the future, arising out of or in any way related to the Trustee Released Claims, and the payments made to, and all assets transferred to (including without limitation the Madoff Business Interests), the Trustee or the Escrow Account under this Stipulation.

15.    <u>Release of the Government by Mack and the Bankruptcy Defendants.</u>

a.    Upon the Transfer Deadline, Mack and each Bankruptcy Defendant, on behalf of himself/herself and his/her executors, administrators, heirs and assigns, hereby releases, remises, and forever discharges the United States of America, and its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Mack and each Bankruptcy Defendant on behalf of himself/herself and his/her executors, administrators, heirs and assigns have asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers,

employees, servants, and agents, arising out of, or in any way related to, the entry of Mark Madoff, Andrew Madoff or Mack into the Promissory Notes or their receipt of funds relating to the Promissory Notes, or the Government's investigation and prosecution thereof.

16.    <u>Further Assurances.</u>

a.    Each of the Parties hereto shall execute and deliver such documents, instruments and agreements and take such further actions as may be reasonably required or desirable to carry out the provisions of this Stipulation and the transfers contemplated hereby, and each of the Parties hereto shall cooperate with each other in connection with the foregoing. Without limiting the generality of the foregoing, the Bankruptcy Defendants shall execute and/or deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to enable and fully authorize the Trustee to sell, transfer and/or convey the Andrew Madoff Business Interests and the Mark Madoff Business Interests to one or more third parties and collect the proceeds from such sales, transfers and/or conveyances.

b.    If, at any time after the Transfer Deadline, the Trustee and/or Government shall determine or be advised that any further assignment, conveyance or assurance in law or any other acts are necessary or desirable to (i) vest, perfect or confirm in the Trustee his right, title or interest in, to or under any of the rights, properties or assets of the Bankruptcy Defendants acquired or to be acquired by the Trustee in connection with this Stipulation, or (ii) otherwise carry out the purposes of this Stipulation, each of Mr. Flumenbaum and Mr. Blumenfeld agree promptly to execute and deliver all such proper deeds, assignments and assurances in law and to do all acts reasonably necessary or proper to vest, perfect or confirm title to and possession of such rights, properties or assets of the Trustee and Government and otherwise carry out the

31

purposes of this Stipulation, such action to be taken promptly upon request of the Trustee and/or Government.  For the avoidance of doubt, Mr. Flumenbaum and Mr. Blumenfeld agree that any property or business interests conveyed by virtue of this Stipulation and the transactions contemplated thereby are free and clear of any interest by the Andrew Madoff Estate and Mark Madoff Estate, respectively.

17.    The Parties hereby agree that this Stipulation, including the Exhibits hereto, is the entire understanding of the Parties with respect to the subject matter of this Stipulation and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof, except that this Stipulation does not supersede the Settlement Agreement and Release made and entered into as of December 22, 2014 by and between the Trustee, Mack, Mr. Blumenfeld, solely in his capacity as Executor of the Mark Madoff Estate, and Robert W. Mikesell, solely in his capacity as Trustee of the A.V.M.M. Trust U/A 01/10/07.  The Parties agree that each participated equally in the preparation of this Stipulation, and that no provision shall be construed against any other Party as draftsman.

18.    The Parties do not intend to confer any benefit by or under this Stipulation upon any person or entity other than the Government, the Trustee, Mack or the Bankruptcy Defendants.   No person or entity shall be entitled to assert any rights under this Stipulation other than the Government, the Trustee, Mack or the Bankruptcy Defendants, nor shall any person or entity other than the Government, the Trustee, Mack or the Bankruptcy Defendants be permitted to use this Stipulation as evidence of an admission regarding any claim, right, or defense that such person or entity may assert.

19.      This Stipulation shall be binding upon and inure to the benefit of each of the
Parties and their successors and permitted assigns.

20.      This Stipulation may not be changed, modified, or amended except in a writing
signed by the Parties and/or their counsel and approved by the Court.

21.      Each Party shall bear its respective expenses relating to or arising out of the
Bankruptcy Court and District Court proceedings and this Stipulation, including, but not limited
to, fees for attorneys, experts, consultants, accountants and other advisors.

22.      This Stipulation may be executed in any number of counterparts and shall
constitute one agreement, binding upon all Parties hereto as if all Parties signed the same
document.  Further, all facsimile and digital images of signatures shall be treated as originals for
all purposes.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

23.     The District Court shall retain exclusive jurisdiction with respect to any and all

issues or disputes that may arise in connection with this Stipulation and its enforcement.  Each

side shall bear its own costs and fees in any dispute brought before the District Court under this

paragraph.

**SO ORDERED:**

Dated: June ___, 2017
         New York, New York

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE
                                                    Part I


**AGREED TO BY:**

GOVERNMENT

Dated: June 26, 2017
         New York, New York                        JOON H. KIM
                                                    Acting United States Attorney
                                                    *Attorney for the United States of America*

                                                    _____
                                                    JONATHAN COHEN
                                                    LOUIS A. PELLEGRINO
                                                    NIKETH VELAMOOR
                                                    Assistant United States Attorneys


[Additional Signatures on Following Page]

34

IRVING H. PICARD, IN HIS
CAPACITY AS THE
TRUSTEE FOR THE
LIQUIDATION
PROCEEDINGS OF
BERNARD L. MADOFF
INVESTMENT SECURITIES
LLC AND THE
SUBSTANTIVELY
CONSOLIDATED
BANKRUPTCY CASE OF
BERNARD L. MADOFF

Dated: June 22, 2017
          New York, New York

_____
IRVING H. PICARD


BAKER & HOSTETLER LLP
Attorneys for the Trustee

_____
DAVID J. SHEEHAN, ESQ.


MARK MADOFF ESTATE

Dated: June__, 2017
          New York, New York

_____
DAVID BLUMENFELD, in his capacity as
Successor Executor

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Attorney for the Executor

_____
MARTIN FLUMENBAUM, ESQ.

IRVING H. PICARD, IN HIS
CAPACITY AS THE
TRUSTEE FOR THE
LIQUIDATION
PROCEEDINGS OF
BERNARD L. MADOFF
INVESTMENT SECURITIES
LLC AND THE
SUBSTANTIVELY
CONSOLIDATED
BANKRUPTCY CASE OF
BERNARD L. MADOFF

Dated: June__, 2017
      New York, New York

_____

IRVING H. PICARD


BAKER & HOSTETLER LLP
Attorneys for the Trustee


_____

DAVID J. SHEEHAN, ESQ.


MARK MADOFF ESTATE

Dated: June__, 2017
      New York, New York

_____

DAVID BLUMENFELD, in his capacity as
Successor Executor

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Attorney for the Executor


_____

MARTIN FLUMENBAUM, ESQ.

IRVING H. PICARD, IN HIS
CAPACITY AS THE
TRUSTEE FOR THE
LIQUIDATION
PROCEEDINGS OF
BERNARD L. MADOFF
INVESTMENT SECURITIES
LLC AND THE
SUBSTANTIVELY
CONSOLIDATED
BANKRUPTCY CASE OF
BERNARD L. MADOFF

Dated: June__, 2017
      New York, New York

_____
IRVING H. PICARD


BAKER & HOSTETLER LLP
Attorneys for the Trustee


_____
DAVID J. SHEEHAN, ESQ.


MARK MADOFF ESTATE

Dated: June _16_, 2017
      New York, New York

_____
DAVID BLUMENFELD, in his capacity as
Successor Executor

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Attorney for the Executor

_____
MARTIN FLUMENBAUM, ESQ.

ANDREW MADOFF
ESTATE

Dated: June 16, 2017
        New York, New York

*[signature]*

MARTIN FLUMENBAUM, in his capacity
as Executor

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Attorney for the Executor

*[signature]*

MARTIN FLUMENBAUM, ESQ.

STEPHANIE MACK

Dated: June __, 2017
        New York, New York

_____

STEPHANIE MACK

COOLEY LLP
Attorney for Mack

_____

ALAN LEVINE, ESQ.

36

ANDREW MADOFF
ESTATE

Dated: June __, 2017
      New York, New York


_____
MARTIN FLUMENBAUM, in his capacity
as Executor

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Attorney for the Executor


_____
MARTIN FLUMENBAUM, ESQ.


STEPHANIE MACK

Dated: June 20, 2017
      New York, New York


_____
STEPHANIE MACK

COOLEY LLP
Attorney for Mack

_____
ALAN LEVINE, ESQ.

36