| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | Hearing Date: June 29, 2017 at 11:00 a.m.<br>Response Due: June 21, 2017 at 5:00 p.m. |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>Robert Roman,<br><br>    Defendant. | Adv. Pro. No. 10-04292 (SMB) |

**TRUSTEE'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY
PURSUANT TO FED. R. BANKR. P. 7037(a)(3)(B)**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE COMMUNICATIONS ARE RELEVANT AND DISCOVERABLE UNDER FED. R. CIV. P. 26 ...............................................................................................2

    II.    DEFENDANT HAS WAIVED THE WORK PRODUCT PRIVILEGE OVER COMMUNICATIONS AND DOCUMENTS DELIBERATELY EXCHANGED WITH MADOFF ...............................................................................4

        A.    The Nature of the Underlying Work Product is Irrelevant in a Waiver Inquiry ...............................................................................................4

        B.    Upholding Defendant's Assertion of Privilege Would Lead to Undesirable Results ...............................................................................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*
(S.D.N.Y. 1990) ............................................................................................................5

*Inst. For Dev. Of Earth Awareness v. People for Ethical Treatment of Animals*,
272 F.R.D. 124 (S.D.N.Y. 2011) ..................................................................................5

*Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*,
248 F.R.D. 126 (S.D.N.Y. 2007) ..................................................................................5

*Medinol, Ltd. v. Boston Scientific Corp.*,
214 F.R.D. 113 (S.D.N.Y. 2002) .......................................................................4, 5, 6, 7

*Randleman v. Fid. Nat. Title Ins. Co.*,
251 F.R.D. 281 (N.D. Ohio 2008) ................................................................................6

*Ricoh Company, Ltd. v. Aeroflex Incorporated*,
219 F.R.D. 66 (S.D.N.Y. 2003) .............................................................................4, 5, 7

*S.E.C. v. Gupta*,
281 F.R.D. 169 (S.D.N.Y 2012) ..........................................................................*passim*

*In re Sealed Case*,
676 F.2d 793 (D.C. Cir. 1982) ......................................................................................6

*Sytemes v. Childress*,
2013 WL 1218774 Case No. 09-10534 (E.D. Mich. Nov. 22, 2013) ..........................6

*Thomas v. News Corporation*,
2001 WL 11474545, Case No. 09-1908 (E.D. Pa. June 7, 2010) ................................6

*Verschoth v. Time Warner, Inc.*,
2001 WL 546630, Case No. 00-Civ 1339 (S.D.N.Y. May 22, 2001) ......................4, 7

**Statutes**

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa ....................................................1

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................2, 3, 4

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa ("SIPA"), and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, hereby submits this reply memorandum of law in further support of his motion to compel discovery (the "Motion").

## PRELIMINARY STATEMENT

The issue before the Court is a straightforward one: whether Defendant's transmittal of purported work product to Madoff—an independent witness without any common interests with Defendant—effectuates a waiver of the privilege. As explained in the Trustee's Motion papers, the relevant authority in this Circuit mandates an answer in the affirmative. By deliberately, affirmatively, and selectively sending purported work product to a disinterested and independent third-party witness, Defendant has waived any assertion of privilege over those materials.

Seemingly recognizing that the operative standard is fatal to his argument, Defendant attempts to shift the Court's attention to the underlying work product itself—a non-factor under the framework articulated in the relevant cases. According to Defendant, because the communications he exchanged with Madoff relate to a declaration he was attempting to obtain from Madoff, all of those communications and the accompanying drafts should be afforded protection under the privilege. That Madoff is not only a disinterested third-party witness, but the incarcerated mastermind of the underlying Ponzi scheme, is apparently a non-issue.

But waiver is waiver, irrespective of the underlying work product. Under the line of cases dealing with work-product waiver in the Second Circuit, the preeminent focus of the waiver inquiry is on the nature of the third party to whom a disclosure is made, not the materials themselves. If the disclosing party and the third party share common interests, then the privilege holds; if they do not, the privilege is waived. Nothing in the cases—or common sense—warrants

a deviation from the waiver rules simply because the work product involves witness declarations. Such an approach would effectively create an enhanced category of work product for which the ordinary waiver rules do not apply, and lead to the absurd result that communications exchanged with the mastermind of the fraud are immune from disclosure.

The Trustee does not dispute that draft declarations prepared by attorneys are attorney work product. But the question before the Court is not what constitutes work product; it is what constitutes <u>waiver</u>. And on that question, the cases in this Circuit are entirely clear that work product deliberately, affirmatively, and selectively shared with a third-party witness without any common interests with the disclosing party constitutes a waiver of the privilege. Because this is precisely what happened here—and because the materials are otherwise indisputably relevant and discoverable under Fed. R. Civ. P. 26—the Motion should be granted in its entirety.

## **ARGUMENT**

**I.     THE COMMUNICATIONS ARE RELEVANT AND DISCOVERABLE UNDER FED. R. CIV. P. 26**

Defendant admits that the relevant communications with Madoff were initiated by Defendant in order to procure and submit a declaration in connection with the profit withdrawal litigation, which addressed Madoff's administration of certain aspects of the Ponzi scheme that he perpetrated (the "Madoff Declaration"). Opposition at 5. Inexplicably, Defendant nevertheless asserts that communications related to the Madoff Declaration and the drafts themselves are neither relevant nor discoverable under Fed. R. Civ. P. 26—despite the fact that he is among the parties that requested Madoff be deposed in connection with the case-wide challenge to the Ponzi scheme that defense counsel has spearheaded. *Id.*

Specifically, Defendant argues that "the Requested Materials have no relevancy whatsoever to the nature of the underlying fraud" and "concern only the Madoff Declaration"—

2

as if the Madoff Declaration addresses something else entirely. *Id.* This argument, of course, is meritless. As a preliminary matter, Defendant mischaracterizes the scope of relevant information requested by the Trustee. As articulated in his Motion, the Trustee is entitled to any communications with Madoff that "relate to BLMIS," not merely "the nature of the underlying fraud." *See* Motion at 5. Regardless, the substance of the Madoff Declaration relates to both, and any revisions by Madoff to the draft declarations are clearly relevant to his ongoing testimony on those subjects. Indeed, if the Madoff Declaration did not relate to BLMIS and the Ponzi scheme, one would wonder why Defendant would go through the effort to obtain it in the first place, much less offer it as evidence in the profit withdrawal litigation.

Second, Defendant argues that "there is no conceivable manner in which the Requested Materials could be used to impeach Madoff," and that "the Requested Materials merely show that Madoff was very careful in executing the Madoff Declaration." Opposition at 5-6. Defendant is certainly entitled to take such a generous position, but the Trustee is equally entitled to make his own inquiry. Not only are Madoff's revisions to the draft declarations potential admissions and/or impeachment evidence, but the communications between Defendant and Madoff themselves may constitute similar evidence. As the Court is aware, Defendant is married to Ruth Madoff's sister, and it is certainly possible that Defendant attempted to use his relationship to Madoff to influence the extent of his cooperation, and that Madoff would be motivated by a desire to improve Defendants' position or otherwise make representations that call the veracity of his testimony into question. *See S.E.C. v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y 2012) ("The ability of a party to meet with a non-party witness, show him documents and ask him questions, and then mask the entire preparation session in the cloak of work product protection would serve to facilitate even the most blatant coaching of a witness if it could not be

3

the subject of inquiry."). The Trustee has no way of fully testing this—which he is entitled to do—unless Defendant produces the underlying communications exchanged between himself and Madoff and all accompanying attachments.

Accordingly, the communications and attachments are relevant and discoverable under Fed. R. Civ. P. 26.

## II. DEFENDANT HAS WAIVED THE WORK PRODUCT PRIVILEGE OVER COMMUNICATIONS AND DOCUMENTS DELIBERATELY EXCHANGED WITH MADOFF

### A. The Nature of the Underlying Work Product is Irrelevant in a Waiver Inquiry

Defendant's position that communications involving a draft declaration are always protected by the work product privilege necessitates the complete abandonment of the operative standard governing work product waiver—which is presumably why Defendant ignores it. That standard dictates that the "deliberate, affirmative, and selective" disclosure of work product to a third party without a "common interest" with the party asserting the privilege constitutes a waiver. *Gupta*, 281 F.R.D. at 171 ("When an attorney discloses work product to prepare a non-party witness for a deposition, and that witness does not share a common interest with the attorney's client, there has been a deliberate, affirmative and selective use of work product that waives the privilege."); *see also Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) ("where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the doctrine will be waived"); *Ricoh Company, Ltd. v. Aeroflex Incorporated*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003) (same); *Verschoth v. Time Warner, Inc.*, 2001 WL 546630, Case No. 00-Civ 1339 (S.D.N.Y. May 22, 2001) (holding privilege waived after litigant shared strategy with non-party independent contractor).

4

Nothing in this standard instructs courts to apply it varyingly depending on the underlying work product—which would hardly make sense given that the concept of waiver already presumes that the material in question is work product that would otherwise warrant protection. Rather, it is the doctrine's focus on the "common interests" between the parties that enables courts to draw a line between work product disclosures that effectuate a waiver and those that do not. *See Medinol*, 214 F.RD. at 115. (distinguishing between disclosures made to retained accountants, translators, and co-counsel and those made to parties having no litigation objectives in common).[1]

Defendant ignores these cases and the operative standard completely, asserting that they are "displaced" by a series of separate cases addressing the application of work product privilege over draft declarations. Opposition at 7. But those cases merely hold that (i) draft affidavits constitute work product (which the Trustee does not dispute), and (ii) the filing of a final affidavit does not waive privilege over its earlier drafts (which is completely irrelevant). *See Inst. For Dev. Of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124 (S.D.N.Y. 2011) ("drafts, which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation"); *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya,* 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (draft declarations are work product but waiver not addressed); *A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*, (S.D.N.Y. 1990) (same). None of these cases apply the operative

---

[1] A number of cases addressing work product waiver include an additional characterization of the operative standard: whether the disclosure "substantially increases the opportunity for adversaries to obtain the information." *See, e.g., Ricoh*, 219 F.R.D. at 70. The *Gupta* court, however, did not mention or apply this language in holding that the plaintiff waived the work product privilege; the lack of "common interests" between the relevant parties was sufficient to make that finding. *See* 281 F.R.D. at 171-73. The cases suggest that the focus on the "common interests" between the disclosing party and the third party is a more particularized way of determining whether a disclosure "substantially increases the opportunity for adversaries to obtain the information." *See Ricoh*, 219 F.R.D. at 70 ("Nothing in the record before me suggests that IBM and the Defendants share a common interest, such that the Defendants could reasonably expect that information revealed to IBM would not be disclosed to their adversary.") (emphasis added).

5

standard governing work product waiver, let alone resolve the question currently before the Court: whether the disclosure of purported work product (including draft declarations) to a third party with no common interests with the disclosing party waives the privilege over such materials.[2]

The answer to this question is found in the Second Circuit cases analyzing waiver of work product, which the *Gupta* court most recently catalogued and harmonized into a workable standard.  Relying on earlier cases, Judge Rakoff reaffirmed a broadly applicable rationale for work product waiver that focuses on the nature of the third-party relationship, not on the underlying work product.  *Gupta*, 281 F.R.D. at 171 (citing *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) and noting "a party waives its work product protection in civil litigation if it discloses privileged material to anyone without common interests in developing legal theories and analyses of documents").  Pursuant to that standard, the relevant inquiry here is whether Madoff has any common interests with Defendant, just as the inquiry in *Gupta* was whether Lloyd Blankfein had any common interests with plaintiff.  That *Gupta* was decided in the context of deposition preparation and did not deal with a draft declaration is a distinction without a difference.

Indeed, nothing in *Gupta* suggests that the result would have been any different if the work product at issue was a draft declaration. To the contrary, affirming Defendant's privilege objections here requires dispensing with Judge Rakoff's rationale altogether. If the question of work product waiver hinges on the nature of the third party relationship—as *Gupta*, *Medinol*,

---

[2] Defendant also cites to a number of cases outside this Circuit that generally stand for the same propositions. *See Randleman v. Fid. Nat. Title Ins. Co.*, 251 F.R.D. 281 (N.D. Ohio 2008) (filing of final affidavit does not constitute waiver); *Thomas v. News Corporation*, 2001 WL 11474545, Case No. 09-1908 (E.D. Pa. June 7, 2010) (unexecuted drafts are work product, but waiver not addressed). While *Sytemes v. Childress*, 2013 WL 1218774, *3 Case No. 09-10534 (E.D. Mich. Nov. 22, 2013) appears somewhat analogous, it is nevertheless inapposite because it applies a heightened standard for waiver not adopted in this Circuit. *Id.* ("the third party to whom the disclosure is made <u>must be an 'adversary'</u> in order for waiver to take place regarding work product material") (emphasis added).

6

*Verschoth*, and *Ricoh* instruct—then the form that the underlying work product takes is of no consequence.  It can be discussions and documents shared during deposition preparation, as in *Gupta* itself; meeting minutes shared with an external auditor, as in *Medinol*; informal conversations disclosing legal strategy, as in *Verschoth*; or e-mails sent to a third-party witness to aid in a litigant's defense of a case, as in *Ricoh*.  The collective lesson of these cases is that waiver is waiver, irrespective of the underlying work product.

In fact, the category of communications at issue in *Ricoh*—"email communication[s] from attorney to percipient third-party witness seeking information related to defense of [claim]"—is substantively identical to the letters Defendant sent to Madoff here.  219 F.R.D. at 70.  Nevertheless, just as in *Gupta*, the *Ricoh* court focused on the nature of the third-party relationship, concluding that "nothing in the record before me suggests that [the third party] and the Defendants share a common interest," and that therefore "Defendants waived protection for these e-mails under the work product doctrine when counsel shared his observations with a third-party who was likely to be an independent witness in this case." *Id.* at 70.  In both *Ricoh* and *Gupta*, the disclosures of work product were made in furtherance of the litigant's case—just as Defendant's disclosures were made in furtherance of his defenses to the Trustee's claims.  That did not matter in those cases, and it should not matter here.

Nor is there any substantive difference between disclosing work product to prepare a third-party witness for a deposition and disclosing work product to prepare a third-party witness's declaration.  Depositions and declarations both involve factual testimonies, and in both situations, the disclosures were purely voluntary.  Just as the plaintiffs in *Gupta* were "under no obligation" to meet with Blankfein and disclose work product, Defendant was under no obligation to make similar disclosures by soliciting the mastermind of the Ponzi scheme for a declaration. 281 F.R.D. at 172.

7

While there may appear to be some tension between the principles articulated in the cases Defendant cites and those cited by the Trustee, there need not be. So long as there are common interests between a third party and a litigant, disclosures of work product by the litigant to that third party—including draft declarations—would likely not constitute a waiver of the accompanying privilege. However, if a litigant voluntarily communicates with an independent third-party witness to procure a declaration and discloses work product in the process, the privilege is rightfully waived.[3]

### B. Upholding Defendant's Assertion of Privilege Would Lead to Undesirable Results

The standard articulated in the cases above is the most appropriate one because it avoids the absurd results of shielding the communications at issue here from disclosure. By focusing on whether the third-party witness has any common interests with the party asserting the privilege, it ensures that only disclosures to third parties that that have a legally significant relationship to the disclosing party are protected by it. But the extension of the privilege to Bernard L. Madoff—the mastermind of the underlying fraud whose estate the Trustee has been investigating and administering for nearly nine years—would make the work product privilege an improper tool for secrecy far beyond its intended purpose.

Curiously, in his attempt to distinguish *Gupta*, Defendant offers an argument that does more to support the Trustee's position than his own. Defendant asserts: (i) "[*Gupta*] held that defendants' attorneys could question Blankfein about these meetings because Blankfein's

---

[3] Defendant asserts that the Trustee's position in this Motion somehow conflicts with the his assertion of work product privilege over materials requested by defense counsel in connection with other adversary proceedings. No such conflict exists. The Trustee asserted the privilege in response to sweeping discovery requests that plainly targeted the Trustee's work product. Here, however, the Trustee is narrowly and expressly targeting specific communications and materials that were exchanged between Defendant and Madoff—which, to the extent they even contain work product, would be subject to waiver. Defense counsel did not similarly target any such materials and the question of third-party waiver was neither raised by the parties nor addressed by Judge Maas in his relevant order. *See* Adv. Pro. No. 08-01789, ECF No. 14807 at ¶ 3.

8

testimony could have been unfairly pressured by those possessing government power;" (ii) "there can be no serious concern that Defendant could unfairly pressure Madoff;" and (iii) "there is no legitimate argument that the Requested Materials do anything to demonstrate bias." Opposition at 7-8. To be sure, this was not the court's holding—far from it.[4] Rather, the court was simply further justifying the application of the waiver standard by pointing to the undesirable results it was preventing:

> To allow the invocation of work product protection to succeed in such circumstances would leave the party taking a deposition with no remedy to determine how, if at all, a witness's testimony was influenced, not by advice from the witness's own counsel, but by suggestions from the questioner's adversary, who, especially if possessing governmental power, was in a position to unfairly pressure the witness.

*Gupta*, 281 F.R.D. at 173.

Despite Defendant's conclusory statements to the contrary, virtually all of these concerns are present here. Loyalty to family can be just as significant a pressure as the government—perhaps even more so. As discussed above, the Trustee cannot overlook the possibility that Defendant exerted some sort of improper influence on Madoff in his attempt to obtain the declaration, or that Madoff was acting with a similarly improper motivation. *See* pg. 3 *supra*. The potential for witness bias here is obvious.

Furthermore, while it is plain that Madoff has no common interests with Defendant, he is no ordinary third-party witness either. Madoff is the reason this dispute is even possible. The notion that a single defendant can effectively coopt a witness as extraordinary and unprecedented as Madoff and insulate their exchanged communications from the Trustee—whose sole function

---

[4] As discussed above, the *Gupta* holding is plain enough: "When an attorney discloses work product to prepare a non-party witness for a deposition, and that witness does not share a common interest with the attorney's client, there has been a deliberate, affirmative and selective use of work product that waives the privilege." *Gupta*, 281 F.R.D. at 173. The portion of the opinion Defendant misleadingly cites was Judge Rakoff's effort to distinguish a previous case that he decided—wrongly, he suggested—due to his failure to consider the authority he relied on in *Gupta*. *Id.* ("Had the Court focused on *Steinhardt*, or had *Grand Jury Proceedings* already been rendered, the Court might well have arrived at a different conclusion in *Morales*.").

9

is to investigate Madoff's crime and recover assets for the benefit of defrauded customers—is particularly absurd. Fortunately, the existing framework's focus on the third-party relationship is sufficient to guard against such a bizarre result. But under Defendant's suggested approach, this would not be the case.

Accordingly, the work product privilege has been waived with respect to any documents and communications Defendant voluntarily shared with Madoff.[5]

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Trustee's Motion in its entirety and order that all communications between Defendant and Madoff and accompanying attachments be produced.

Dated: June 27, 2017  
New York, NY

**BAKER & HOSTETLER LLP**

By:   */s/ Nicholas J. Cremona*  
David J. Sheehan, Esq.  
Email: dsheehan@bakerlaw.com  
Nicholas J. Cremona, Esq.  
Email: ncremona@bakerlaw.com  
Maximillian S. Shifrin, Esq.  
Email: mshifrin@bakerlaw.com  
45 Rockefeller Plaza  
New York, NY 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

---

[5] Defendant argues that the Trustee's Motion warrants sanctions because "he makes it without citing any of the controlling authority that expressly prohibits the relief he seeks." Opposition at 9. Unfortunately, this baseless attack and unfounded accusations against the Trustee are emblematic of what has become defense counsel's repertoire in these cases: smearing the Trustee at every possible turn. Far from warranting sanctions, the Trustee's position is the correct one, as it relies on the controlling cases in this Circuit addressing work product waiver through disclosures to third parties.