UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the Estate of Marianne Lowrey, in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al.*,<br><br>    Defendants. | Adv. Pro. No. 10-04387 (SMB) |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendants James Lowrey, Estate of Marianne Lowrey,

Turtle Cay Partners, and Coldbrook Associates Partnership ("Lowrey Defendants" and together with the Trustee, the "Parties") hereby submit this Joint Statement of Undisputed Material Facts in connection with their forthcoming motions for summary judgment pursuant to the Stipulation for Entry of Scheduling Order ("Scheduling Order") entered by this Court on January 27, 2017 (ECF No. 71) and Federal Rule of Civil Procedure 56 (made applicable by Federal Rule of Bankruptcy Procedure 7056).

1. At all relevant times, Madoff controlled BLMIS, first as its sole member, and thereafter as its chairman and chief executive.

2. On December 11, 2008, Madoff was arrested for violating numerous federal criminal securities statutes.

3. Contemporaneously, the Securities and Exchange Commission (the "SEC") commenced proceedings against BLMIS and Madoff in the United States District Court for the Southern District of New York (the "District Court") in a case captioned *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the "Liquidation Proceeding").

4. On December 15, 2008, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC") pursuant to Section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq*. ("SIPA").

5. Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court because BLMIS was not able to meet its obligations to securities customers as they became due and thus its customers needed the protections afforded by SIPA.

6. BLMIS was, at all times relevant to this adversary proceeding, registered with the SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b), and a member of the Financial Industry Regulatory Agency (formerly known as the National Association of Securities Dealers).

7. At all times relevant to this adversary proceeding, BLMIS was an investment adviser.

8. Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding.

9. The Lowrey Defendants have not undertaken any investigation of BLMIS and the operations of that business. For the sole purposes of this proceeding, the Lowrey Defendants stipulate to the facts set out below in paragraphs 10 through 16.

10. BLMIS was operating a Ponzi scheme.

11. BLMIS was insolvent from at least December 11, 2002 and all points after.

12. BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers.

13. The investment advisory business (the "Investment Advisory Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.

14. The Investment Advisory Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals.

15. The Investment Advisory Business did not receive any legitimate outside financial support from loans or otherwise.

16. BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients.

17. In May of 1999, Defendant Turtle Cay Partners entered into an Account Agreement with BLMIS. This account was identified as account no. 1CM585 (the "1CM585 Account").

18. As reflected in the Stipulation of Undisputed Transfers (Exhibit A), Exhibit B to the Trustee's Amended Complaint accurately reflects the complete history of the transactions to and from the 1CM585 Account.

19. Column 3 of Exhibit B to the Amended Complaint accurately reflects the transaction amounts as reported in the customer statements for the 1CM585 Account.

20. Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits made into the 1CM585 Account and Column 5 of Exhibit B to the Amended Complaint accurately reflects the withdrawals from the 1CM585 Account.

21. Between May 7, 1999 and December 11, 2008, Defendant Turtle Kay Partners deposited a total of $9,000,000 into the 1CM585 Account and withdrew a total of $16,845,089 from the 1CM585 Account.

22. As accurately reflected in Column 10 of Exhibit B to the Amended Complaint, Turtle Kay Partners withdrew from the 1CM585 Account $7,845,089 in excess of deposits between December 11, 2006 and December 11, 2008 (the "Two-Year Period").

23. Turtle Cay Partners stipulates that it received the following transfers from BLMIS:

    a. 3/18/2008 - $12,500,000.00

    b. 10/07/2008 - $4,345,089.00

24. Of the two transfers listed in the preceding paragraph, the Trustee seeks to avoid $7,845,089.00.

25. In May of 2004, Defendant Coldbrook Associates Partnership entered into an Account Agreement with BLMIS. This account was identified as account no. 1CM880 (the "1CM880 Account").

26. As reflected in the Stipulation of Undisputed Transfers, Exhibit B to the Trustee's Amended Complaint accurately reflects the complete history of the transactions to and from the 1CM880 Account.

27. Column 3 of Exhibit B to the Amended Complaint accurately reflects the transaction amounts as reported in the customer statements for the 1CM880 Account.

28. Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits made into the 1CM880 Account and Column 5 of Exhibit B to the Amended Complaint accurately reflects the withdrawals from the 1CM880 Account.

29. Between May 27, 2004 and December 11, 2008, Defendant Coldbrook Associates Partnership deposited a total of $2,800,000 into the 1CM880 Account and withdrew a total of $3,893,402 from the 1CM880 Account.

30. As accurately reflected in Column 10 of Exhibit B to the Amended Complaint, Defendant Coldbrook Associates Partnership withdrew from the 1CM880 Account $1,093,402 in excess of deposits during the Two-Year Period.

31. Coldbrook Associates Partnership stipulates that it received the following transfers from BLMIS:

   a. 5/02/2007 - $1,000,000.00

   b. 12/21/2007 - $2,390,377.00

   c. 10/21/2008 - $3,025.00

32. Of the three transfers listed in the preceding paragraph, the Trustee seeks to avoid a total of $1,093,402.00.

33. In July of 2004, Defendant James Lowrey and Marianne Lowrey entered into an Account Agreement with BLMIS. This account was identified as account no. 1CM832 (the "1CM832 Account," and together with the 1CM585 Account and 1CM880 Account, the "Accounts").

34. As reflected in the Stipulation of Undisputed Transfers, Exhibit B to the Trustee's Amended Complaint accurately reflects the complete history of the transactions to and from the 1CM832 Account.

35. Column 3 of Exhibit B to the Amended Complaint accurately reflects the transaction amounts as reported in the customer statements for the 1CM832 Account.

36. Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits made into the 1CM832 Account and Column 5 of Exhibit B to the Amended Complaint accurately reflects the withdrawals from the 1CM832 Account.

37. Between July 20, 2004 and December 11, 2008, Defendants James Lowrey and Marianne Lowrey deposited a total of $2,500,000 into the 1CM832 Account and withdrew a total of $3,082,182 from the 1CM832 Account.

38. As accurately reflected in Column 10 of Exhibit B to the Amended Complaint, Defendants James Lowrey and Marianne Lowrey withdrew from the 1CM832 Account $582,182 in excess of deposits during the Two-Year Period.

39. James Lowrey and the Estate of Marianne Lowrey, on behalf of Marianne Lowrey, stipulate that they received the following transfers from BLMIS:

   a. 3/18/2008 - $500,000.00

   b. 10/07/2008 - $1,082,182.00

40. Of the two transfers listed in the preceding paragraph, the Trustee seeks to avoid a total of $582,182.00.

41. Attached as Exhibits B through D are true and accurate copies of the Account Agreements for Accounts 1CM585, 1CM880, and 1CM832, in which the Lowrey Defendants provided Madoff with investment discretion.

42. The Lowrey Defendants opened the Accounts in good faith and with no knowledge of BLMIS' fraud.

43. The above the Lowrey Defendants made each of the withdrawals in good faith, believing that they were entitled to these funds and lacking any knowledge of the Ponzi scheme.

44. BLMIS transferred the funds withdrawn by the Lowrey Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors.

45. On November 30, 2010, the Trustee brought this adversary proceeding against the Lowrey Defendants to avoid and recover $9,520,673, the total difference between the amounts deposited and withdrawn by the Lowrey Defendants in connection with the Accounts.

46. As reflected in the Stipulation of Undisputed Transfers, the Trustee has dismissed certain claims asserted in the Amended Complaint with prejudice, including all claims for avoidance of obligations.

47. BLMIS accepted the Lowrey Defendants' funds for the stated purpose of trading securities for the Lowrey Defendants' benefit.

48. The Lowrey Defendants' only business relationships with BLMIS, a registered broker-dealer, were as customers of its Investment Advisory Business.

49. The Lowrey Defendants did not invest in BLMIS, either as partners, shareholders, or other equity stake holders. At no time did any Lowrey Defendant purport to own a share of, or have a financial stake in, the business of BLMIS.

50. The Lowrey Defendants received monthly Account statements from BLMIS reporting purported securities transactions effected on their behalf. At all times, BLMIS defrauded the Lowrey Defendants by intentionally misrepresenting the purported securities transactions in the Accounts. These misrepresentations made to the Lowrey Defendants were an integral and essential part of the fraud, and were made to avoid detection of the fraud, retain existing investors, and to lure other investors into the Ponzi scheme.

51. The Lowrey Defendants relied in good faith on BLMIS' reports of securities transactions that it purportedly made on behalf and for the benefit of the the Lowrey Defendants' Accounts.

52. The Lowrey Defendants reasonably relied on the representations in the Account Agreements and account statements.

53. BLMIS did not comply with its obligations under the Account Agreements.

54. The Lowrey Defendants were injured by BLMIS' fraud.

55. The Lowrey Defendants' injuries occurred in the state of New York.

56. The Trustee has not sought to avoid the Account Agreements.

57. The Lowrey Defendants engaged an expert, Stephen Behnke, to calculate their lost opportunity costs during the period that BLMIS held their funds.

58. Mr. Behnke created a portfolio model for retail securities investments managed by an honest broker at the time the Lowrey Defendants held the Accounts, computed the rate of return the model would have produced during the relevant account period, and applied that model to the Accounts.

59. Mr. Behnke concluded that the Lowrey Defendants' model portfolio would have returned $2,354,352 across all three accounts. The expert calculated that the amount received by the Lowrey Defendants that is in excess of the expert's model is $7,156,321.

60. Alternatively, Mr. Behnke unwound each transaction and prepared a hypothetical analysis comparing the rate of investment return at BLMIS with New York's 9% statutory rate of interest to calculate the Lowrey Defendants' losses.

61. The expert concluded that the Lowrey Defendants' rescission claim would have yielded an interest component of $5,062,340. The expert calculated that the amount received by the Lowrey Defendants that is in excess of the interest component is $4,458,333.

62. For the purposes of this proceeding, the Trustee is not contesting and will not object to the conclusions set out in paragraphs 59 through 61 above.

Dated:   June 26, 2017
         New York, New York

/s/ Keith R. Murphy
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Elyssa S. Kates
ekates@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

/s/ Richard A. Kirby
**BAKER & MCKENZIE LLP**
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone: 202.452.7023
Facsimile: 202.416.7223
Richard A. Kirby
Email: richard.kirby@bakermckenzie.com
Laura K. Clinton
Email: laura.clinton@bakermckenzie.com

*Attorneys James Lowrey et al.*

Dated: June 27, 2017

**IT IS SO ORDERED:**

/s/ STUART M. BERNSTEIN
**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**