# EXHIBIT A

# AGREEMENT

This Agreement, dated as of June 27, 2017, is made by and between Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–lll ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Bernard L. Madoff ("Madoff"), on the one hand, and Lagoon Investment Limited ("Lagoon") and Hermes International Fund Limited ("Hermes") (together with Lagoon, the "Transferees"), on the other hand. The Trustee and the Transferees collectively shall be referred to herein as the "Parties."

## BACKGROUND

A.  BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.  On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C.  On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009 the estate of Madoff was substantively consolidated with the BLMIS Estate.

D.  Lagoon maintained five accounts with BLMIS. The first account was opened on or about April 30, 1992 and designated account no. 1FN021 (the "<u>021 Account</u>"). On or about April 29, 1997, Lagoon opened another account, which was designated account No. 1FR016 (the "<u>016 Account</u>").

E.  Between November 1994 and April 1997, Lagoon opened three other BLMIS accounts, designated account nos. 1FN066, 1FN096, and 1FR015. All of these accounts were closed by November 2001, with the balances internally transferred by BLMIS to either the 016 Account or the 021 Account.

F.  In the six years prior to the Filing Date, Lagoon withdrew from the 021 Account approximately One Hundred Seventy-Four Million Six Hundred Forty-Three Thousand Eight Hundred Eight United States Dollars ($174,643,808.00) (the "<u>021 Account Transfers</u>"). In the six years prior to the Filing Date, Lagoon withdrew from the 016 Account approximately Sixty-Six Million One Hundred Thousand United States Dollars ($66,100,000.00) (the "<u>016 Account Transfers</u>").

G.  On or about March 9, 2009, Lagoon filed a customer claim with respect to the 016 Account, which the Trustee has designated as Claim No. 007423 (the "<u>016 Account Customer Claim</u>"), and a customer claim with respect to the 021 Account, which the Trustee has designated as Claim No. 007424 (the "<u>021 Account Customer Claim</u>"). The 016 and 021 Account Customer Claims are included as Attachments A and B respectively to this Agreement. In the 016 and 021 Account Customer Claims, Lagoon asserts that it is entitled to the market value of securities reflected on its BLMIS Account statements for the period ending November 30, 2008. On July 2, 2009, Lagoon supplemented its claims with charts depicting calculations of

2

Lagoon's net equity. The Parties agree that Lagoon's net equity equals $312,640,702 ("Net Equity").

H. On December 5, 2010, the Trustee filed an amended complaint in the United States Bankruptcy Court for the Southern District of New York in the adversary proceeding captioned *Picard v. HSBC Bank plc, et al.*, Adv. Pro. No. 09-01364 (SMB) (the "Adversary Proceeding"). In the amended complaint, the Trustee asserted claims against Transferees to avoid and recover the 016 and 021 Account Transfers under 11 U.S.C. §§ 544, 547, 548, 550 or 551, SIPA § 78fff-2(c)(3), and the New York Debtor and Creditor Law §§ 270–281 (the "Avoidance Claims"), and claims to disallow the 016 and 021 Account Customer Claims, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate the 016 and 021 Account Customer Claims, pursuant to 11 U.S.C. §§ 510(c) and 105(a) (the "Disallowance and Subordination Claims").

I. On December 3, 2010, the Trustee and BLMIS also filed a proceeding against Lagoon in the Supreme Court of Bermuda, Civil Jurisdiction, No. 427 of 2010 (the "Bermuda Proceeding"), advancing avoidance and constructive trust claims under Bermuda law (the "Bermuda Claims").

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises, and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree:

1. Payment to Trustee. At the Closing (as defined in paragraph 8), in consideration of the release by the Trustee set forth herein, Transferees shall pay or cause to be paid to the Trustee, pursuant to the conveyances, assignments, endorsements, and transfers set forth in paragraph 9, the sum of Two Hundred Forty Million Seven Hundred Forty-Three Thousand Eight Hundred

3

Eight United States Dollars ($240,743,808.00) (the "Settlement Payment") in full and final settlement and satisfaction of the Avoidance Claims, the Disallowance and Subordination Claims, and the Bermuda Claims, and any other past, present or future claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as defined in paragraph 5), that the Trustee or the BLMIS Estate may have against Transferees.

2.    Allowance of the 016 and 021 Account Customer Claims.  Upon the Closing (as defined in paragraph 8), the 016 and 021 Account Customer Claims shall be deemed conclusively allowed pursuant to section 502(h) of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of Five Hundred Fifty-Three Million Three Hundred Eighty-Four Thousand Five Hundred Ten Dollars ($553,384,510.00) (the "Allowed Claim").  As of the date of this Agreement, the amount to be paid by the Trustee to Lagoon allocable to the Allowed Claim in respect of a catch-up distribution (after netting the Settlement Payment) is $92,329,214.84 (60.098% of the Allowed Claim).  Lagoon shall be entitled to receive its proportionate share of any subsequent distributions when made.

3.    Release by the Trustee. In consideration for the terms herein, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 8), the Trustee, on behalf of himself, BLMIS, and its consolidated estates, shall release, acquit, and forever discharge Transferees, including their successors and/or assigns, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of, and any, liability or damages (including any allegation of, and any, duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or

4

accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown (as defined in paragraph 5), that are, have been, could have been, or might in the future be asserted by the Trustee, on behalf of himself, BLMIS, and its consolidated estates, or based on, arising out of, or in any way related to BLMIS or Madoff and the claims against the Transferees in the Adversary Proceeding and the Bermuda Proceeding, except for any and all claims to enforce the obligations of the Transferees under this Agreement. The release granted by the Trustee hereunder shall extend to Transferees' shareholders, investors, directors, managers, third-party service providers, agents and attorneys, and any subsequent transferees thereof, to the extent that any of them received transfers of money from Lagoon and/or Hermes, but shall not include a release of claims that the Trustee may bring that are unrelated to Transferees' investments in or withdrawals from BLMIS.

4. <u>Release by Transferees</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing (as defined in paragraph 8), the Transferees hereby release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, and BLMIS and its consolidated estate, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of, and any, liability or damages (including any allegation of, and any, duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind,

5

nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs or, disbursements), known or unknown (as defined in paragraph 5), that are, have been, could have been, or might in the future be asserted by the Transferees based on, arising out of, or in any way related to BLMIS or Madoff, except for the rights of the Transferees to enforce the obligations of the Trustee under this Agreement.

5. <u>Unknown Claims</u>.  Unknown claims shall mean any released claims pursuant to paragraph 3 or 4 of this Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by the Parties, might have affected their settlement and release in this Agreement.  The Parties shall be deemed to have waived, and by operation of the Bankruptcy Court's approval of this Agreement, shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, (and any similar law, rule, or regulation), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or non-U.S. law, which is similar, comparable, or equivalent to California Civil Code § 1542.

6. <u>Dismissal of Adversary Proceedings.</u>  Within five days of the Closing (as defined in paragraph 8), the Parties shall submit: (i) to the Bankruptcy Court, a stipulation requesting the dismissal of the Adversary Proceeding, with Prejudice, as against the Transferees, with each

6

party bearing its own costs, attorneys' fees, and expenses; (ii) a notice of dismissal with prejudice of the Adversary Proceeding as against Lagoon Investment Trust; and (iii) documents seeking the dismissal of the Bermuda Proceedings, with each party bearing their own costs, attorneys' fees, and expenses.

7.  Court Approval; Effective Date; Termination. This Agreement is subject to and shall become effective and binding on the parties upon the Bankruptcy Court's approval of this Agreement by an order that is no longer subject to appeal, review, or rehearing, except that for the purpose of clarity, if no objections are filed, the Effective Date shall be the date of the Bankruptcy Court's Approval Order (the "Approval Order").  The Trustee shall use his reasonable efforts to obtain the Approval Order in the SIPA Proceeding as promptly as practicable after the date of this Agreement.  The form of the Approval Order shall be subject to the reasonable approval of the Parties.  If this Agreement has not become effective as provided in this paragraph within 60 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor the Transferees may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, the Adversary Proceeding, the Bermuda Proceeding, or any case or proceeding relating to the Transferees, BLMIS, or Madoff.

8.  Closing.  There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement.  At the Closing simultaneously:

7

(a) The Transferees shall satisfy the Settlement Payment by:

(i) conveying, assigning, endorsing, and transferring to the Trustee the funds to be advanced by SIPC in the amount of Five Hundred Thousand Dollars ($500,000.00); and

(ii) conveying, assigning, endorsing, and transferring to the Trustee from the catch-up distribution the sum of Two Hundred Forty Million Two Hundred Forty-Three Thousand Eight Hundred Eight United States Dollars ($240,243,808.00) owed to Lagoon under the Allowed Claims.

These actions shall constitute full payment of the Settlement Payment owed by the Transferees to the Trustee;

(b) The Trustee shall pay Lagoon Ninety-Two Million Three Hundred Twenty-Nine Thousand Two Hundred Fourteen United States Dollars and Eighty-Four Cents ($92,329,214.84), consisting of the balance of the catch-up distribution owed to Lagoon as of this day under the Allowed Claims pursuant to payment instructions to be provided by Lagoon to the Trustee; and

(c) The releases contained in paragraphs 3 and 4 shall become effective without any further action of the Parties.

9. <u>Transferees' and Trustee's Authority</u>.  The Transferees represent and warrant to the Trustee that, as of the date hereof, each of them has the full power, authority, and legal right to execute and deliver, and to perform their respective obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their respective obligations under this Agreement.  The Trustee represents and warrants to the Transferees that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set

8

forth in paragraph 8 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

10.    Business Days.  For purposes of this Agreement the term "business days" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in New York City.

11.    Further Assurances.  The Parties shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

12.    Entire Agreement.  This Agreement constitutes the entire agreement and understanding between the Trustee and Transferees and supersedes any and all prior agreements, representations, and understandings of the Parties concerning the subject matter hereof.

13.    No Admission.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

14.    Amendments; Waiver.  This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

15. <u>Assignability</u>.  No Party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto.

16. <u>Successors Bound</u>.  This Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective successors and permitted assigns.

17. <u>No Third-Party Beneficiary</u>.  Except as expressly provided in paragraphs 3 and 4, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

18. <u>Applicable Law</u>.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

19. <u>Exclusive Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action.  In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement may be brought in the United States District Court for the Southern District of New York or the Supreme Court of the State of New York in New York County.

20. <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  "Includes" and "including" are not intended to be limiting.

21.    <u>Counterparts; Electronic Copy of Signatures</u>.    This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

22.    <u>Negotiated Agreement</u>.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

23.    <u>Severability</u>.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

[*remainder of page intentionally left blank*]

24. <u>Notices</u>.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| If to the Trustee: | If to Lagoon, c/o: |
|---|---|
| Irving H. Picard<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Email: ipicard@bakerlaw.com | Joseph P. Moodhe<br>Shannon Rose Selden<br>Email: jpmoodhe@debevoise.com<br>srselden@debevoise.com<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, New York 10022<br>F: (212) 909-6386 |
| with copies to: | If to Hermes, c/o: |
| Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>F: (212) 589-4201 | Joseph P. Moodhe<br>Shannon Rose Selden<br>Email: jpmoodhe@debevoise.com<br>srselden@debevoise.com<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, New York 10022<br>F: (212) 909-6386 |

[*signature pages follow*]

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

LAGOON INVESTMENT LIMITED

By: _____
Name: Alberto Benbassat

Title:  Director

_____
Irving H. Picard, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC

**HERMES INTERNATIONAL FUND LIMITED**

By: _____
Name: Alberto Benbassat
Title:  Director

13

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

_____
Irving H. Picard, Trustee for the
Liquidation of Bernard L. Madoff
Investment Securities LLC

**LAGOON INVESTMENT LIMITED**

By: _____
    Name:

    Title:

**HERMES INTERNATIONAL FUND LIMITED**

By: _____
    Name:
    Title:

13