LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendants David I. Lustig, individually*
*and in his capacity as Trustee for The Lustig Family*
*1990 Trust, and The Lustig Family 1990 Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,                                         Adv. Pro. No. 08-01789 (SMB)

                    Plaintiff-Applicant,             SIPA LIQUIDATION

          v.                                         (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,
                                                     **MEMORANDUM OF LAW**
                    Defendant.                       **IN SUPPORT OF MOTION**
-------------------------------------------------------------x    **FOR RECONSIDERATION**
In re:

BERNARD L. MADOFF,

                    Debtor.
-------------------------------------------------------------x
IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                    Plaintiff,                       Adv. Pro. No. 10-4554 (SMB)

          v.

DAVID IVAN LUSTIG,

                    Defendant.

------------------------------------------------------------x

IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

               Plaintiff,                       Adv. Pro. No. 10-4417 (SMB)

      v.

THE LUSTIG FAMILY 1990 Trust, et al.,

               Defendants.

------------------------------------------------------------x

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...............................................…..........................................................iii

PRELIMINARY STATEMENT ...............................…......................................................................1

RELEVANT BACKGROUND...........................................…...........................................................1

ARGUMENT..............................................................……….............................................................2

RECONSIDERATION SHOULD BE
GRANTED IN LIGHT OF THE MISTAKES OF
LAW AND FACT IN THE COURT'S RULINGS....………..............................................3

POINT ONE

THE AFFIRMATIVE DEFENSES BASED
ON THE COURT'S EQUITABLE POWERS
UNDER § 105 (a) ARE VIABLE AND
SHOULD NOT HAVE BEEN DISMISSED.......................................................................4

A.    The Equitable Credits Sought By Defendants Are Entirely
Consistent With The Bankruptcy Code And SIPA...................................................4

B.    The Bankruptcy Court's Equitable Powers May Be Invoked
To Avoid The Patent Unreasonableness And Injustice Of The
Trustee's Actions...................................................................................................6

POINT TWO

THE AFFIRMATIVE DEFENSE BASED
ON THE SINGLE SATISFACTION RULE
UNDER § 550(d) IS VIABLE AND
SHOULD NOT HAVE BEEN DISMISSED...…..................................................................9

POINT THREE

THE AFFIRMATIVE DEFENSE BASED
ON THE THEORY OF RECOUPMENT IS VIABLE
AND SHOULD NOT HAVE BEEN DISMISSED...........................................................14

i

POINT FOUR

DISCOVERY SHOULD BE STAYED PENDING
THE ADJUDICATION OF THIS MOTION...........….....................................................16

CONCLUSION...................…………....................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

Bakst v. Sawran (In re Sawran), 359 B.R. 348 (Bankr. S.D. Fl. 2007)..............................7, 12, 13

Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.),
    312 B.R. 262 (Bankr. D.N.J. 2004).....................…………................................7, 10

Friedman v. Vinas (In re Trauger), 109 B.R.502 (Bankr. S.D. Fla. 1989).....................................11

Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.),
    33 B.R. 334 (Bankr. S.D.N.Y. 1983)...........................................................................7, 8

Huffman v. Brandon (In re Harbour), 845 F.2d 1254 (4th Cir. 1988)...................................6-7

In re Old Carco LLC, 423 B.R. 40 (Bankr. S.D.N.Y. 2010)..........................................................3

McCord v. Agard (In re Bean), 252 F.3d 113 (2nd Cir. 2001)......................................................10

Merrill v. Abbott (In re Independent Clearing House Co.), 77 B.R. 843 (D. Utah 1987).............15

New York State Elec. and Gas Corp. v. McMahon, 129 F.3d 93 (2nd Cir. 1997).........................14

Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    499 B.R. 416 (S.D.N.Y. 2013).....................................................................................6

Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014)..........................................................................5

Styler v. Jean Bob Inc., 154 B.R. 581 (D. Utah 1993)................................................................14

Terry v. Meredith (In re Meredith), 367 B.R. 558 (E.D. Va. 2007)..............................................10

Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138 (2nd Cir. 2002)...........................................14

**Statutes**

11 U.S.C. § 105(a)..........................................................…………...........................................4

11 U.S.C. § 550(a)..........................................................………….............................7, 8, 9, 10

11 U.S.C. § 550(a)(1)......................................................…………............................................7

11 U.S.C. § 550(d)....................................…………..............................9, 10, 11, 12, 13

**Rules**

Fed. R. Bankr. P. 9024..............................…………...............................................1

Fed. R. Civ. P. 60(b)..............................…………....................................................1, 2

Fed. R. Civ. P. 60(b)(1)..............................…………..................................................2

Fed. R. Civ. P. 60(b)(6)..............................…………..................................................2

Fed. R. Civ. P. 12(f)..............................…………......................................................1

## PRELIMINARY STATEMENT

Defendants David I. Lustig ("Mr. Lustig") and The Lustig Family 1990 Trust

("Trust") (Mr. Lustig and the Trust are sometimes referred to collectively as "Defendants")

respectfully submit this memorandum of law in support of their motion for an order: (1) pursuant

to Rule 60(b) of the Federal Rules of Civil Procedure, Rule 9024 of the Federal Rules of

Bankruptcy Procedure, and this Court's inherent power granting reconsideration of the Order

Granting Partial Summary Judgment Striking Affirmative Defenses ("Order") entered on June

13, 2017 in <u>Irving H. Picard v. David Ivan Lustig</u>, Adv. Pro. No. 10-4554 ("IRA Case") (Dkt. #

85) and in <u>Irving H. Picard v. The Lustig Family 1990 Trust and David I. Lustig</u>, Adv. Pro. No.

10-4417 ("Trust Case") (Dkt. # 83); (2) staying discovery pending the adjudication of this

motion; and (3) granting such other and further relief as the Court deems just and proper.

## RELEVANT BACKGROUND

On March 1, 2017, prior to the completion of discovery, the Trustee filed a

motion to strike the Eighth, Ninth, Tenth and Eleventh Affirmative Defenses asserted in the IRA

Case and the Trust Case as legally insufficient pursuant to Fed. R. Civ. P. 12(f).[1]  Defendants

opposed the motion.  At the Court's suggestion, the parties agreed to treat the Trustee's motion

as one for summary judgment dismissing those affirmative defenses.

On June 1, 2017, the Court issued a Memorandum Decision Granting Partial

Summary Judgment Striking Certain Affirmative Defenses ("Decision").[2]  The Court found all

the affirmative defenses at issue insufficient as a matter of law.  Notably, in adjudicating the

---

[1]The Trustee also moved to dismiss the Twelfth Affirmative Defense.  Defendants
consented to the withdrawal of that defense, however, so it is not at issue here.

[2]A copy of the Decision is attached as Exhibit A to the Declaration of Bryan Ha in
Support of Motion for Reconsideration ("Ha Decl. Mtn. Recon.") submitted herewith.

Trustee's motion, and with the parties' consent, the Court assumed "that the series of transfers occurred as the Lustig Defendants claim, the fictitious profits they withdrew were subsequently deposited by the Funds [i.e., Senator and Rye Broad Market] in their own BLMIS accounts, and the value of those accounts was effectively zero when the Madoff scandal was revealed." (Decision at 5).  In other words, it was assumed as true for purposes of the motion that: (1) the $2,000,000 withdrawn from the IRA Account and the $5,000,000 withdrawn from the Trust Account were deposited/reinvested back into BLMIS through the Senator Fund and the Broad Market Fund (sometimes referred to collectively herein as the "Senator/Broad Market Feeder Funds") and thus returned to BLMIS; (2) all the money was lost when Madoff's fraud was discovered; and (3) Defendants never actually received any of the money.

On June 13, 2017, pursuant to the Decision, the Court entered the Order Granting Partial Summary Judgment Striking Affirmative Defenses ("Order") striking and dismissing the Eight, Ninth, Tenth and Eleventh Affirmative Defenses as a matter of law in both the IRA Case and the Trust Case.[3]  The Decision was incorporated in and made a part of the Order.  (Order at 3).

---

[3]A copy of the Order is attached as Exhibit B to the Ha Decl. Mtn. Recon.

## ARGUMENT

### RECONSIDERATION SHOULD BE
### GRANTED IN LIGHT OF THE MISTAKES OF
### LAW AND FACT IN THE COURT'S RULINGS

Defendants respectfully submit that the Court made critical mistakes of
law and fact in striking and dismissing the affirmative defenses at issue.  Accordingly, the Court
should grant reconsideration of the Order.

Fed. R. Civ. P. 60(b) provides that "the court may relieve a party . . . from a final
judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect . .
. or (6) any other reason that justifies relief."  "[T]he Second Circuit has approved the use of Rule
60(b)(1) motions to allow a court to correct its own mistakes of either law or fact."  In re Old
Carco LLC, 423 B.R. 40, 46 (Bankr. S.D.N.Y. 2010).  Separate and apart from Rule 60(b), the
Court may also may also exercise its "inherent power to reconsider its orders and judgments" to
correct its own mistakes of law or fact.  Id. at 48.

As discussed below, the Order contains several crucial mistakes of law and fact
that should be corrected pursuant to Rule 60(b)(1) and/or (6) and/or the Court's inherent power.
Accordingly, reconsideration should be granted.

3

## POINT ONE

### THE AFFIRMATIVE DEFENSES BASED
### ON THE COURT'S EQUITABLE POWERS
### UNDER § 105(a) ARE VIABLE AND
### SHOULD NOT HAVE BEEN DISMISSED

The Court's analysis rejecting the affirmative defenses based on the Court's

equitable powers under 11 U.S.C. § 105(a) – which seek equitable credits and dismissal of the

Trustee's claims as a matter of equity – is fundamentally flawed. As discussed below, the

Court's analysis is based on mistakes of law and fact.

**A.    The Equitable Credits Sought By Defendants Are Entirely
        Consistent With The Bankruptcy Code And SIPA**

The Court held that the equitable credits that Defendants are seeking "are

inconsistent with express provisions of the Bankruptcy Code and SIPA which give the credit they

seek to the entity that gave value to the debtor." (Decision at 9). According to the Court, since

the Senator/Broad Market Feeder Funds "gave the value" to BLMIS when they

deposited/reinvested the $2,000,000 and the $5,000,000 back into BLMIS through their own

BLMIS accounts, these feeder funds "are entitled to the credit for those deposits" under the

Bankruptcy Code and under SIPA. (Decision at 9-10). The Court then continued that under the

Net Investment Method for calculating net equity approved by the Second Circuit Court of

Appeals, these feeder funds "are entitled to net equity based on the difference between the

amount they deposited and the amount they withdrew from their BLMIS accounts. The deposits

increased the allowable net equity claims asserted by the [feeder funds]." (Decision at 10). The

Court concluded that, since the Senator/Broad Market Feeder Funds are entitled to the credits for

the $2,000,000 and the $5,000,000 deposits/reinvestments, "Defendants' invocation of equity

4

[seeking equitable credits for those deposits] would force the BLMIS estate to give a second round of credits based on the same deposits." (Decision at 10). Accordingly, the Court ruled that the equitable credits sought by Defendants are inconsistent with the Bankruptcy Code and SIPA and dismissed Defendants' equitable defenses as a matter of law. (Decision at 9-10).

This ruling is incorrect. The fundamental flaw in the Court's analysis is the mistaken assumption that the $2,000,000 and the $5,000,000 deposits made by the Sentator/Broad Market Feeder Funds into their BLMIS accounts were "cash deposits" consisting of principal for which the funds are entitled to credits under the Bankruptcy Code and SIPA. Under the Net Investment Method, a BLMIS direct investor is only entitled to a credit for principal deposited into his account – i.e. "cash deposits". He is not entitled to a credit for deposits that consist of fictitious profits. See Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014) (under Net Investment Method, "each customer's net equity [is calculated] solely with reference to the customer's cash deposits and withdrawals ignoring the fictitious profits depicted in the statements").

The $2,000,000 withdrawn from the IRA Account and the $5,000,000 withdrawn from the Trust Account that the Sentator/Broad Market Feeder Funds subsequently deposited into their own BLMIS accounts were not comprised solely of principal. According to the Trustee, $1,863,225 of the money withdrawn from the IRA Account consisted of fictitious profits and $4,241,336 of the money withdrawn from the Trust Account consisted of fictitious profits. (FAC-IRA ¶ 2; Exh. B to FAC-IRA; FAC-Trust ¶ 2; Exh. B to FAC-Trust). Depositing these fictitious profits into the feeder funds' BLMIS accounts did not transform them into principal:

5

> [T]he true substance of transfers of fictitious profits from
> one account to another remains the same: The funds at
> issue are still other people's money, and shifting them
> among accounts, whether those accounts are owned by the
> same person or entity . . . does not morph those funds into
> actual new principal[.]

Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 499 B.R. 416, 428-29 (S.D.N.Y.

2013).   The Senator/Broad Market Feeder Funds are not entitled to credits for the deposit of

these fictitious profits into their BLMIS accounts.

Because the Court incorrectly assumed that the Senator/Broad Market Feeder

Funds are entitled to full credits for the $2,000,000 and the $5,000,000 deposited into their

BLMIS accounts, the court incorrectly concluded that granting Defendants the equitable credits

they seek "would force the BLMIS estate to give a second round of credits based on the same

deposits." (Decision at 10).  Granting Defendants the equitable credits they seek will not force

the Trustee to give two rounds of credits for the same deposits.

The Court clearly erred in dismissing the equitable defenses based on its

fundamentally flawed "double credit" analysis.

**B.**     **The Bankruptcy Court's Equitable Powers May Be Invoked
To Avoid The Patent Unreasonableness And Injustice Of The
Trustee's Actions**

The Court's analysis rejecting the equitable defenses is also flawed because it

mistakenly ignored the patent unreasonableness and injustice of the Trustee's attempts to recover

from Defendants money that they never actually received and that has already been returned to

BLMIS and lost by the Defendants.

It is well-established that a bankruptcy court may and ought to exercise "its

6

equitable power to prevent an unjust result[.]" Huffman v. Brandon (In re Harbour), 845 F.2d

1254, 1256 (4th Cir. 1988); Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge

Corp.), 312 B.R. 262, 269 (Bankr. D.N.J. 2004) ("Bankruptcy courts have long possessed equity

jurisdiction in order to safeguard against unjust results."). Such equitable powers have been

invoked "to the end that fraud will not prevail, that substance will not give way to form, that

technical considerations will not prevent substantial justice from being done." Dobin, 312 B.R.

at 269.

Courts have recognized that unjust results may occur in avoidance actions where

11 U.S.C. § 550(a) is applied literally and that the equitable powers of a bankruptcy court should

be invoked in those situations "to prevent an inequitable result":

> In some circumstances, a literal application of section
> 550(a) would permit the Trustee to recover from a party
> who is innocent of wrongdoing and deserves protection. In
> such circumstances the bankruptcy court should exercise its
> discretion to use its equitable powers under section 105(a)
> [] to prevent an inequitable result.

Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.), 33 B.R. 334, 337 (Bankr. S.D.N.Y.

1983) (quoting 4 Collier on Bankruptcy ¶ 550.02, at 550-7 (15th ed. 1983)); see Bakst v. Sawran

(In re Sawran), 359 B.R. 348, 353 (S.D. Fl. 2007).

The Trustee's claims against Defendants here depend on a literal application of 11

U.S.C. § 550(a)(1). In the Trustee's view, Defendants were initial transferees of the money

withdrawn from their BLMIS accounts and are therefore liable for those transfers, and no further

analysis is necessary. However, this literal application of § 550(a)(1) would lead to a patently

unjust and unreasonable result. Defendants are innocent good faith investors who have been

totally devastated by BLMIS's fraud. They have already lost all the money that the Trustee is seeking to recover from them as a result of the fraud. They withdrew the $2,000,000 and the $5,000,000 from their BLMIS accounts solely and specifically for the purpose of immediately reinvesting the money back into BLMIS through a third-party feeder fund. All the money was in fact ultimately deposited/reinvested back into BLMS and thus returned to BLMIS. Defendants never actually received any of the money. When the fraud was uncovered, they lost all of their direct and indirect investments in BLMIS. Allowing the Trustee to pursue these actions to clawback from them money that they had already returned to BLMIS and lost as a result of the fraud would effectively double their BLMIS losses and force them into bankruptcy.

The Gropper case is instructive here. In Gropper, a law firm received a payment from the debtor to settle a dispute with the firm's client and then transferred the money to the client. The Trustee brought an avoidance action against the law firm claiming that the firm was an "initial transferee" of the transfer from the debtor and therefore was liable for the transfer. See Gropper, 33 B.R. at 335. The Gropper Court held that, even if the law firm may be deemed to be an "initial transferee" based on a literal application of § 550(a), "the circumstances of this case . . . would permit this Court to exercise its equitable discretion and prevent the Trustee from recovering a preference from the [] firm." Id. at 337. Specifically, the court concluded that the law firm "should not be the subject of recovery efforts by the Trustee" because it was "a mere conduit of funds" from the debtor to the client and only the client "received the benefit of the payment[.]" Gropper, 33 B.R. at 337.

Here, as in Gropper, even if Defendants may be deemed to be "initial transferees" of the withdrawals from their BLMIS accounts under a literal application of § 550(a), they were

8

in reality no more than mere conduits of the money since all the money was immediately

transferred to other entities for reinvestment back into BLMIS and Defendants never actually

received any of the money and got no benefit from it.  Under these circumstances, it is manifestly

unjust to allow the Trustee to seek to recover the money from them as "initial transferees" under

§ 550(a).

       In sum, the Court's ruling striking and dismissing Defendants' equitable defenses

as a matter of law is based on mistakes of law and fact.  Reconsideration should accordingly be

granted.

**POINT TWO**

**THE AFFIRMATIVE DEFENSE BASED
ON THE SINGLE SATISFACTION RULE
UNDER § 550(d) IS VIABLE AND
<u>SHOULD NOT HAVE BEEN DISMISSED</u>**

       The Court ruled that 11 U.S.C. § 550(d) is not applicable here because the Trustee

did not recover the $2,000,000 withdrawal and the $5,000,000 withdrawal from the

Senator/Broad Market Feeder Funds as subsequent transferees of the initial transfers to

Defendants.  (Decision at 12-13).  Essentially, the Court read § 550(d) as applying only where a

trustee is seeking to recover the same initial transfer from the initial transferee and the

subsequent transferee(s) of that initial transfer.  (Decision at 12 (holding that § 550(d) only

"applies to limit a trustee's recovery in those situations where he sues multiple defendants to

recover the value of the avoided initial transfer")).   However, there is nothing in § 550(d) that

supports this overly narrow and technical interpretation.  Moreover, the Court is mistaken in

finding that the Senator/Broad Market Feeder Funds returned the money to BLMIS as initial

9

transferees of the money and not as subsequent transferees of the initial transfers to Defendants.

Section 550(a) provides that, "to the extent that a transfer is avoided . . . the trustee may recover . . . the property transferred, or, if the court so orders, the value of such property[.]"  Section 550(d) states that "[t]he trustee is entitled to only a single satisfaction under [§ 550(a)]."  This rule "bars double recovery of avoidable transferred property."  Terry v. Meredith (In re Meredith), 367 B.R. 558, 563 (E.D. Va. 2007); see McCord v. Agard (In re Bean), 252 F.3d 113 (2nd Cir. 2001).  It "empowers courts to prohibit a trustee from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code."  Dobin, 312 B.R. at 271; see Meredith, 367 B.R. at 563 (recovery against transferee barred because "[t]he Trustee has already taken possession of, and liquidated, the very property that it now seeks the 'value' of from" the transferee); McCord, 252 F.3d at 117 (recovery of equity the debtor held in the property barred because the trustee had already recovered the value of the equity from the sale of the property).

Section 550(d) thus unequivocally bars a trustee from seeking to recover from a transferee where the transferred property or the value thereof has already been returned to the debtor.  See McCord, 252 F.3d at 116.  That is exactly what the Trustee is seeking to do here in both the IRA Case and the Trust Case.  Assuming as true for purposes of this motion that the $2,000,000 withdrawn from the IRA Account and the $5,000,000 withdrawn from the Trust Account were in fact deposited/reinvested back into BLMIS through the Senator/Broad Market Feeder Funds and thus returned to BLMIS, the Trustee's attempts to recover those withdrawals again from Defendant clearly violates § 550(d).

The Court's overly narrow and technical reading of § 550(d) essentially allows the

10

Trustee to seek a double recovery here, i.e., seek to recover the $2,000,000 and $5,000,000

withdrawals from Defendants even though all that money has already been returned to BLMIS

through the Senator/Broad Marker Feeder Funds.  Specifically, the Court held that § 550(d) does

not bar the Trustee from seeking to recover the money again from Defendants because the

Senator/Broad Marker Feeder Funds had returned the money to BLMIS in their capacity as initial

transferees and not in their capacity as subsequent transferees of the initial transfers to

Defendants.  (Decision at 12-13).

        Respectfully, this ruling defies common sense and is mistaken for at least two

reasons.  First, the Court erred in finding that the Senator/Broad Market Feeder Funds  returned

the money to BLMIS as initial transferees.  As discussed in detail in Defendants' opposition to

the Trustee's motion to strike, the Senator/Broad Market Feeder Funds received the $2,000,000

and the $5,000,000 withdrawn from Defendants' BLMIS accounts as subsequent transferees in

connection with the underlying total return swap transactions.  They returned all that money to

BLMIS as subsequent transferees of the money when they deposited/reinvested all the money

into their own accounts at BLMIS.

        The Court's ruling is also incorrect because it unfortunately elevates form over

substance.  "It has long been recognized that in applying Section 550(a), courts should eschew a

literal interpretation of this section and temper its application by examining all the facts and

circumstances of that case."  Friedman v. Vinas (In re Trauger), 109 B.R.502, 504 (Bankr. S.D.

Fla. 1989).  What matters here is the fact that the withdrawals at issue have been returned to

BLMIS, not what hats the Senator/Broad Market Feeder Funds were wearing when they returned

the money to BLMIS.  Quite simply, because the money has already been returned to BLMIS, the

11

Trustee is barred by the single satisfaction rule under § 550(d) from seeking to recover it again from anyone else.

The Sawran case is instructive here.  In Sawran, prior to filing for bankruptcy, the debtor made an initial transfer of $20,000 to her father from the proceeds of the settlement of a personal injury claim.  The father in turn agreed to disburse the money to the debtor (his daughter) "on an as needed basis because he was concerned about her excessive spending."  Id. at 350.  Shortly thereafter, because of concerns that his deteriorating health would prevent him from properly disbursing the $20,000 to his daughter, the father transferred $10,000 to his son and daughter-in-law and $10,000 to his daughter and instructed them to "disburse the money to the Debtor for rent and living expenses."  Id. at 350-51.  His son, daughter-in-law, and daughter – the subsequent transferees of the initial transfer to the father –  ultimately returned a total of $12,000 to the debtor before she filed for bankruptcy.  See id. at 351.

The initial transfer of $20,000 to the father was later found to be an avoidable preferential transfer.  See Sawran, 359 B.R. at 350.  But the Sawran Court held that, to the extent the subsequent transferees (i.e., the father's son, daughter-in-law, and daughter) "made prepetition payments to the Debtor [totaling $12,000], the preferential transfer to the initial transferee [i.e., the father] has been satisfied."  Id. at 353.  Insofar as the initial preferential transfer to the father was thus partially satisfied, the trustee was barred by the single satisfaction rule under § 550(d) from seeking to recover that money again from the father.  See id. at 353.  As the Sawran Court explained: because "[i]t is undisputed" that $12,000 had been returned to the debtor prepetition by the subsequent transferees, "[a]llowing the Trustee to recover the entire $20,000.00 . . . would be a result wholly unintended under section 550" and "would create a

12

windfall of $12,000.00 that violates the single satisfaction rule of section 550(d)." Id. at 353.

Here, the $2,000,000 and the $5,000,000 withdrawn from Defendants' BLMIS accounts were returned to BLMIS prepetition when the money was deposited/reinvested back into BLMIS by the Senator/Broad Market Feeder Funds (who were subsequent transferees of the money as discussed above). As in Sawran, to the extent the feeder funds thus returned this money to BLMIS, the initial allegedly fraudulent transfers to Defendants were satisfied. Just as the trustee in Sawran was barred by § 550(d) from seeking to recover from the initial transferee-father money that had already been returned to the debtor by the subsequent transferees, so too here the Trustee should be barred from seeking to recover from Defendants (the alleged initial transferees) the money that was withdrawn from their BLMIS accounts since that money has already been returned to BLMIS by subsequent transferees of the money (Senator/Broad Market Feeder Funds).

In sum, the Court's ruling that § 550(d) is not applicable here and that the Trustee may seek to recover from Defendants money withdrawn from their BLMIS accounts even though all the money has already been returned to BLMIS is based on mistakes of law and fact. There is no basis for striking and dismissing this defense as a matter of law. Reconsideration should accordingly be granted.

13

## POINT THREE

### THE AFFIRMATIVE DEFENSE BASED
### ON THE THEORY OF RECOUPMENT IS VIABLE
### AND SHOULD NOT HAVE BEEN DISMISSED

The Bankruptcy Court held that the recoupment defense

> is not available to the Lustig Defendants because the parties' claims arise from different transactions. The Trustee's claims against the Lustig Defendants arise from their withdrawal of fictitious profits from their BLMIS accounts. Their recoupment credit is based on their investment of the withdrawn funds in Lakeview which is an entirely different transaction. Even if one accepted that the credit arises from the Funds' reinvestment of money traceable back to those withdrawals, the reinvestment is still a separate transaction governed by whatever account agreements had with BLMIS.

(Decision at 14). This holding is based on a mistake of fact.

Recoupment is an equitable defense that may be invoked in bankruptcy proceedings. See New York State Elec. and Gas Corp. v. McMahon, 129 F.3d 93, 95-96 (2nd Cir. 1997). Essentially, "[a] 'recoupment' is an offset based upon a claim for relief arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." Styler v. Jean Bob Inc., 154 B.R. 581, 586 n.3 (D. Utah 1993). A recoupment defense may be raised where the offsetting claims arise out of "a single contract or transaction or a single set of transactions", McMahon, 129 F.3d at 96, or "a single integrated transaction[.]" Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 147 (2nd Cir. 2002) (quotation marks, citation, and emphasis omitted).

The recoupment defense may be raised in cases involving Ponzi schemes or other fraudulent investment schemes. It is applicable where the transferee reinvested with the debtor the payments that he received from the debtor. See Merrill v. Abbott (In re Independent Clearing

14

House Co.), 77 B.R. 843, 877-78 (D. Utah 1987) ("[e]ven if equity did not counsel against" a rule that would deny victims of financial fraud the right of recoupment, there is "no legal theory supporting such a [rule]").

The recoupment defense is applicable and viable in both the IRA Case and the Trust Case.  In the IRA Case, the Trustee's claim arises out of the $2,000,000 withdrawal from the IRA Account, which was immediately reinvested into Lakeview for reinvestment back into BLMIS through the Senator Fund pursuant to a total return swap transaction.  These constitute a "single set of transactions" or a "single integrated transaction" whereby, essentially, money was taken out of a BLMIS account and reinvested into BLMIS with none of it being retained by Mr. Lustig.  The same is true with respect to the Trustee's claim in the Trust Case, which seeks avoidance and recovery of, among other things, the $5,000,000 withdrawal that was immediately reinvested into Lakeview for reinvestment back into BLMIS through the Broad Market Fund pursuant to a total return swap transaction.  Defendants never actually received any of the money. See Merrill, 77 B.R. at 878 ("If Van Sant can prove that her total investment with the debtors was one transaction and that she did not retain payments made to her by the debtors but rather reinvested those funds with the debtors, she is entitled to either a reduction in or an abatement of the damages.").

In short, the Court's ruling striking and dismissing the recoupment defense is based on a mistake of fact.  Reconsideration should accordingly be granted.

15

**POINT FOUR**

**DISCOVERY SHOULD BE STAYED PENDING
THE ADJUDICATION OF THIS MOTION**

The Court's Order striking and dismissing Defendants' affirmative defenses drastically narrowed the scope of the discovery that remains to be conducted in the IRA Case and the Trust Case.  Rather than take depositions that are so limited by the Order and otherwise conduct such limited discovery at this time and then have to reopen and re-conduct discovery (including recalling witnesses to be deposed again) if the Court decides to reconsider any of its ruling and restore any of Defendant's affirmative defenses in light of this motion, Defendants respectfully submit that the Court should, in the interest of efficiency and economy, stay all discovery pending the adjudication of this motion.

16

## CONCLUSION

For all the foregoing reasons, and especially given the unique and compelling facts presented in these cases, the Court should: (1) grant the instant motion for reconsideration in its entirety; (2) stay discovery pending the adjudication of this motion; and (3) grant such other and further relief as the Court may deem to be just and proper.

Dated:  New York, New York
       June 27, 2017

                  Respectfully submitted,

                  LAW OFFICE OF
                  RICHARD E. SIGNORELLI

By:    /s/ Richard E. Signorelli
       /s/ Bryan Ha

       _____
       Richard E. Signorelli
       Bryan Ha
       799 Broadway, Suite 539
       New York, NY 10003
       Telephone:    212 254 4218
       Facsimile:    212 254 1396
       rsignorelli@nycLITIGATOR.com[SM]
       www.nycLITIGATOR.com[SM]
       Attorneys for Defendants David I. Lustig
       and the Lustig Family 1990 Trust

FILING AND SERVICE VIA ELECTRONIC FILING