EXHIBIT 2

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Geraldine E. Ponto
Dean D. Hunt

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04554 (SMB) |
| Plaintiff, | |
| v. | |
| DAVID IVAN LUSTIG, | |
| Defendant. | |

**TRUSTEE'S FIRST AMENDED COMPLAINT**

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and with BLMIS, "Debtors"), by the Trustee's undersigned counsel, for his first amended complaint (the "First Amended Complaint") against David Ivan Lustig ("Defendant"), states as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts.  When added together, these statements purport to show that clients of BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.      Defendant was a beneficiary of this Ponzi scheme.  Since December 11, 2006, Defendant received $2,000,000 from BLMIS.  The Trustee's investigation has revealed that $1,863,225 of this amount represented fictitious profits from the Ponzi scheme.  Accordingly, Defendant has received $1,863,225 of other people's money.  This action is brought to recover

---

[1] Hereinafter, applicable sections of SIPA shall be cited as SIPA § ____, and omit reference to title 15, United States Code.

the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

## JURISDICTION AND VENUE

3.    This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

4.    This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

5.    Venue in this judicial district is proper under 28 U.S.C. § 1409.

6.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law, for avoidance of fraudulent conveyances in connection with a transfer of property by BLMIS to Defendant. The Trustee seeks to set aside such transfer and preserve and recover the property for the benefit of BLMIS's defrauded customers.

## DEFENDANT

7.    Upon information and belief, Defendant David Ivan Lustig maintains an address in Pescadero, California.  Defendant holds a BLMIS account in the name, "NTC & Co. FBO David Ivan Lustig," with the account address reported in Pescadero, California. [2]

## BACKGROUND, THE TRUSTEE AND STANDING

8.    On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

9.    On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").  Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

10.    Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

(a)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

(b)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

(c)    removed the case to this Court pursuant to SIPA § 78eee(b)(4).

---

[2] NTC & Co. LLP was named as a defendant in this action in the original Complaint filed on December 1, 2010 but has been dismissed from this action pursuant to the Court's So Ordered Stipulation entered on May 11, 2011.

11.     By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

12.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

13.     At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

14.     At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

15.     At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

16.     On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

17.     As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors.  The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

18.     Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

19.     The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

### THE PONZI SCHEME

20.     Madoff founded BLMIS in or about 1960 as a sole proprietorship.  On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York.  BLMIS's ownership and control did not change since its formation in

1960.  During that time, BLMIS had been continually registered with the SEC, and remained a

SIPC member since its formation in late 1970.  For most of its existence, BLMIS operated from

its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder,

sole owner, chairman, and chief executive officer, operated BLMIS with several family members

and other employees, including DiPascali and David Kugel, who pleaded guilty to helping

Madoff carry out the fraudulent scheme.

21.     Beginning in the 1990s, Madoff outwardly ascribed the consistent investment

success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy.

Madoff claimed his strategy would produce steady returns without the volatility in the stock

market or other high return investment strategies. Madoff generally indicated that investors'

funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index

("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as

determined by Standard & Poor's Index Committee.  The basket of stocks was designed to

correlate to the movement of the S&P 100 Index.  The second part of the SSC strategy involved

purporting to sell call options and buy put options on the S&P 100 Index; this is commonly

referred to as a "collar."  Madoff purported to purchase and sell option contracts to control the

downside risk of price changes in the basket of stocks correlated to the performance of the S&P

100 Index.  All options relating to the companies within the S&P 100 Index, including options

based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").

The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-

listed options.

22.     BLMIS commingled all of the funds received from IA Business investors in a

single BLMIS account maintained at JPMorgan Chase Bank.

23.    Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market.  During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills.  There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities.  There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

24.    At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

25.    Madoff operated the IA Business as a Ponzi scheme.  The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers.  The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments.  The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

26.    Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

27.    BLMIS did not register as an investment adviser with the SEC until August 2006.  At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion.  Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008.  It represented that BLMIS had 23

customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

28.    Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

29.    BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

30.    At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfer alleged herein, BLMIS was left with insufficient capital.

**THE TRANSFER**

31.    According to BLMIS's records, an account (No. 1ZR297) was maintained with BLMIS, as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were

executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York,
New York.  At all times relevant hereto, NTC & Co. LLP was custodian of the Account.

32.    The Account Agreements were to be performed in New York, New York through
securities trading activities that would take place in New York, New York.  The Account was
held in New York, New York, and Defendant sent funds to BLMIS and/or to BLMIS's account
at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New
York, New York for application to the Account and the purported conducting of trading
activities.  Between the date the Account was opened and the Filing Date, Defendant made
deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or
received inter-account transfers from other BLMIS accounts.

33.    During the two years prior to the Filing Date, BLMIS made a transfer (the
"Transfer") to Defendant, totaling $1,863,225 in fictitious profits from the Ponzi scheme.

34.    The Transfer received by Defendant constitutes non-existent profits supposedly
earned in the Account, but, in reality, they were other people's money.  The Transfer was made
to Defendant and is set forth in Column 10 on Exhibit B annexed hereto.

35.    The Transfer is avoidable and recoverable under sections 548(a), 550(a)(1) and
551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-
2(c)(3).

## CUSTOMER CLAIMS

36.    On or about June 30, 2009, a customer claim was filed with the Trustee which the
Trustee has designated as Claim # 013425 (the "Customer Claim").

37.    On or about October 19, 2009, the Trustee issued a Notice of Trustee's
Determination of Claim (the "Determination") with respect to the Customer Claim.  A copy of
the Determination is attached hereto as Exhibit C.

38.    On or about December 17, 2009, an objection to the Determination was filed with the Court (the "Claims Objection").

39.    On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; ECF No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.

40.    The Trustee's discovery and investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the Transfer and any additional transfers; and (ii) seek avoidance and recovery of such additional transfers.

41.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

42.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten herein.

43.    The Transfer was made on or within two years before the Filing Date.

44.    The Transfer constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

45.    The Transfer was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

46.    The Transfer was made to Defendant.

47. The Transfer constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendant pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

48. As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfer; (b) directing that the Transfer be set aside; (c) recovering the Transfer, or the value thereof, from the Defendant for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant as follows:

i. On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Transfer; (b) directing that the Transfer be set aside; (c) recovering the Transfer, or the value thereof, from the Defendant for the benefit of the BLMIS estate; (d) awarding any other relief the Court deems just and appropriate;

ii. On the First Claim for Relief, impressing the Defendant's property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfer was used, in whole or in part, to purchase, improve and/or maintain such property;

iii. On the First Claim for Relief, establishing a constructive trust over the Transfer and its proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

   iv. On the First Claim for Relief, pursuant to federal common law and/or N.Y. CPLR

5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which

the Transfer was received;

   v. On the First Claim for Relief, awarding the Trustee all applicable interest, costs

and disbursements incurred in this proceeding; and

   vi. Granting the Trustee such other, further, and different relief as the Court deems

just, proper, and equitable.

Date:  March 18, 2016
   New York, New York

Of Counsel:

**BAKER & HOSTETLER LLP**
1000 Louisiana, Suite 2000
Houston, Texas 77002-5018
Telephone: (713)751-1600
Facsimile: (713)751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Farrell A. Hochmuth
Email: fhochmuth@bakerlaw.com

By: */s/* Nicholas J. Cremona

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
Geraldine E. Ponto
Email:  gponto@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

| BLMIS Account Name | | BLMIS Account Number |
|---|---|---|
| NTC & CO. FBO DAVID IVAN LUSTIG | REDACTED | 1ZR297 |

MADC0624_00000001

BLMIS ACCOUNT NO. 1ZR297 - NTC & CO. FBO DAVID IVAN LUSTIG   REDACTED

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/30/2000 | CHECK | 56,265 | 56,265 | - | - | - | 56,265 | - | - | - |
| 5/31/2000 | TRANS FROM 1ZA31430 | 1,225,426 [1] | | - | - | - | 56,265 | - | - | - |
| 8/16/2000 | TRANS FROM 1ZA31430 | 536 [1] | - | - | - | - | 56,265 | - | - | - |
| 12/18/2001 | CHECK | 28,638 | 28,638 | - | - | - | 84,903 | - | - | - |
| 5/12/2003 | CHECK | 51,872 | 51,872 | - | - | - | 136,775 | - | - | - |
| 7/25/2007 | CHECK WIRE | (2,000,000) | - | (2,000,000) | - | - | (1,863,225) | - | (1,863,225) | (1,863,225) |
| | | Total: | $ 136,775 | $ (2,000,000) | $ - | $ - | $ (1,863,225) | $ - | $ (1,863,225) | $ (1,863,225) |

[1] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

MADC0624_00000002

Exhibit C

08-01789-cgm Doc 16277-4 Filed 06/26/17 Entered 06/26/17 23:39:40 Exhibit 2 -
10-04584-smb Doc 60-17-4 Filed 09/26/17 Entered 09/26/17 23:39:40 Exhibit 2 -
9 Pg 17 of 20
17 of 120

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

### DECEMBER 11, 2008[1]

### NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 19, 2009

NTC & Co. FBO David Ivan Lustig (IRA)
**REDACTED**
Pescadero CA 94060

Dear NTC & Co. FBO David Ivan Lustig (IRA):

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZR297 designated as Claim Number 013425:

Your claim for a credit balance of $3,985.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $2,000,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total

---

[1] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

300034804.1

of $136,774.75). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

Whenever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits or withdrawals in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($1,863,225.25) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

300034804.1                                        2

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

<div align="center">

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

_____
Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

</div>

cc:  Austin G. Bosarge
     Turning Point Law
               **REDACTED**
     San Rafael, California 94903

     NTC & Co. FBO David Ivan Lustig
               **REDACTED**
     Denver, Colorado 80217

300034804.1                             3

| - Table 1 - | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 5/30/2000 | CHECK | $56,264.79 | $56,264.79 |
| 5/31/2000 | TRANS FROM 1ZA31430 | $1,225,426.25 | $0.00 |
| 8/16/2000 | TRANS FROM 1ZA31430 | $536.03 | $0.00 |
| 12/18/2001 | CHECK | $28,638.31 | $28,638.31 |
| 5/12/2003 | CHECK | $51,871.65 | $51,871.65 |
| **Total Deposits:** | | $1,362,737.03 | $136,774.75 |
| | | | |
| **WITHDRAWALS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 7/25/2007 | CHECK WIRE | ($2,000,000.00) | ($2,000,000.00) |
| **Total Withdrawals:** | | ($2,000,000.00) | ($2,000,000.00) |
| | | | |
| **Total deposits less withdrawals:** | | ($637,262.97) | ($1,863,225.25) |

MADC0624_00000006

EXHIBIT 3

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Geraldine E. Ponto
Dean D. Hunt

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04417 (SMB) |
| Plaintiff, | |
| v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |

| | |
|---|---|
| Defendants. | |

## TRUSTEE'S FIRST AMENDED COMPLAINT

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff," and with BLMIS, "Debtors"), by the Trustee's undersigned counsel, for his first amended complaint (the "First Amended Complaint") against The Lustig Family 1990 Trust (the "Lustig Trust") and David I. Lustig, individually and in his capacity as Trustee for The Lustig Family 1990 Trust ("Lustig") (collectively, "Defendants"), states as follows:

## NATURE OF PROCEEDING

1.    This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts.  When added together, these statements purport to show that clients of BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2.    Defendants were beneficiaries of this Ponzi scheme.  Since December 11, 2006, Defendants received $8,800,000 from BLMIS.  The Trustee's investigation has revealed that $4,241,336 of this amount represented fictitious profits from the Ponzi scheme.  Accordingly,

Defendants have received $4,241,336 of other people's money. This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

<u>**JURISDICTION AND VENUE**</u>

3.    This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

4.    This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

5.    Venue in this judicial district is proper under 28 U.S.C. § 1409.

6.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS's defrauded customers.

---

[1] Hereinafter, applicable sections of SIPA shall be cited as SIPA § ____, and omit reference to title 15, United States Code.

## DEFENDANTS

7.     Upon information and belief, Defendant the Lustig Trust is a Trust that was formed under the laws of the state of California.  The Lustig Trust holds a BLMIS account in the name, "David I Lustig TRF Lustig Family 1990 Trust," with the account address reported in Pescadero, California.

8.     Upon information and belief, Defendant Lustig maintains his residence in Pescadero, California.

## BACKGROUND, THE TRUSTEE AND STANDING

9.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

10.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").  Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

11.     Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

(a)     appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

(b)     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

(c)     removed the case to this Court pursuant to SIPA § 78eee(b)(4).

12.     By orders dated December 23, 2008 and February 4, 2009, respectively, this

Court approved the Trustee's bond and found that the Trustee was a disinterested person.

Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

13.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff,

and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the

SIPA Proceeding.

14.     At a plea hearing on March 12, 2009, in the case captioned *United States v.
Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information

filed against him by the United States Attorney for the Southern District of New York.  At the

plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side

of [BLMIS]."

15.     At a plea hearing on August 11, 2009, in the case captioned *United States v.
DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded

guilty to a ten-count criminal information charging him with participating in and conspiring to

perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or sales of securities took

place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing

at BLMIS since at least the 1980s.

16.     At a plea hearing on November 21, 2011, in the case captioned *United States v.
Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded

guilty to a six-count criminal information charging him with securities fraud, falsifying the

records of BLMIS, conspiracy, and bank fraud.  Kugel admitted to helping create false,

backdated trades in BLMIS customer accounts beginning in the early 1970s.

17.    On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

18.    As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors.  The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme.  Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

19.    Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

20.    The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

21.    Madoff founded BLMIS in or about 1960 as a sole proprietorship.  On January 1, 2001, Madoff continued BLMIS as a sole member limited liability company under the laws of the State of New York.  BLMIS's ownership and control did not change since its formation in

1960. During that time, BLMIS had been continually registered with the SEC, and remained a
SIPC member since its formation in late 1970. For most of its existence, BLMIS operated from
its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder,
sole owner, chairman, and chief executive officer, operated BLMIS with several family members
and other employees, including DiPascali and David Kugel, who pleaded guilty to helping
Madoff carry out the fraudulent scheme.

22.     Beginning in the 1990s, Madoff outwardly ascribed the consistent investment
success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy.
Madoff claimed his strategy would produce steady returns without the volatility in the stock
market or other high return investment strategies. Madoff generally indicated that investors'
funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index
("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as
determined by Standard & Poor's Index Committee. The basket of stocks was designed to
correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved
purporting to sell call options and buy put options on the S&P 100 Index; this is commonly
referred to as a "collar." Madoff purported to purchase and sell option contracts to control the
downside risk of price changes in the basket of stocks correlated to the performance of the S&P
100 Index. All options relating to the companies within the S&P 100 Index, including options
based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").
The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-
listed options.

23.     BLMIS commingled all of the funds received from IA Business investors in a
single BLMIS account maintained at JPMorgan Chase Bank.

24.     Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market.  During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills.  There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities.  There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

25.     At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

26.     Madoff operated the IA Business as a Ponzi scheme.  The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers.  The falsified trades reflected in monthly account statements made it appear that the IA Business accounts included substantial gains on customers' principal investments.  The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

27.     Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

28.     BLMIS did not register as an investment adviser with the SEC until August 2006.  At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion.  Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008.  It represented that BLMIS had 23

customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

29.    Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

30.    BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling & Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

31.    At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

**THE TRANSFERS**

32.    According to BLMIS's records, an account (No. 1ZB268) was maintained with BLMIS, as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were

executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

33.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and Defendants sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities.  Between the date the Account was opened and the Filing Date, Defendants made deposits to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

34.    During the two years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Lustig, or in the alternative to the Lustig Trust and for the benefit of Lustig, totaling $4,241,336 in fictitious profits from the Ponzi scheme.

35.    The Transfers received by Defendants constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money.  The Transfers, as discussed in detail below, were made to or for the benefit of Defendants and are set forth in Column 10 on Exhibit B annexed hereto.

36.    Specifically, Defendant Lustig requested that BLMIS wire each of the Transfers to a bank account held in his name (the "David Lustig Bank Account"). Upon information and belief, the David Lustig Bank Account was held by Defendant Lustig, either individually, or as trustee of the Lustig Trust and for Lustig's benefit.  Following each request, each Transfer was wired from BLMIS to the David Lustig Bank Account.

37.    On or about July 23, 2007, Lustig sent a letter to BLMIS by facsimile, requesting that BLMIS transfer $5,000,000 from the Account to the David Lustig Bank Account.  On or about July 24, 2007, consistent with Defendants' instructions, BLMIS wired $5,000,000 from the BLMIS Bank Account to the David Lustig Bank Account.  Of this amount, $2,241,336 constituted non-existent profits supposedly earned in the Account.  *See* Exhibit B, Column 10.

38.    On or about December 18, 2007, Lustig sent a letter to BLMIS by facsimile, requesting that BLMIS transfer $500,000 from the Account to the David Lustig Bank Account. On or about January 2, 2008, consistent with Defendants' instructions, BLMIS wired $500,000 from the BLMIS Bank Account to the David Lustig Bank Account.  The entire $500,000 constituted non-existent profits supposedly earned in the Account.  *See* Exhibit B, Column 10.

39.    On or about September 23, 2008, Lustig sent a letter to BLMIS by facsimile, requesting that BLMIS transfer $1,500,000 from the Account to the David Lustig Bank Account. On or about September 25, 2008, consistent with Defendants' instructions, BLMIS wired $1,500,000 from the BLMIS Bank Account to the David Lustig Bank Account.  The entire $1,500,000 constituted non-existent profits supposedly earned in the Account.  *See* Exhibit B, Column 10.

40.    The Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3).

## CUSTOMER CLAIMS

41.    On or about June 30, 2009, a customer claim was filed with the Trustee which the Trustee has designated as Claim # 013424 (the "Customer Claim").

42.    On or about August 28, 2009, the Trustee issued a Notice of Trustee's Determination of Claim (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit C.

43.    On or about September 23, 2009, an objection to the Determination was filed with the Court (the "Claims Objection").

44.    On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; ECF No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.

45.    The Trustee's discovery and investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the Transfers and any additional transfers; and (ii) seek avoidance and recovery of such additional transfers.

46.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

**COUNT ONE**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551**

47.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten herein.

48.    Each of the Transfers was made on or within two years before the Filing Date.

49.    Each of the Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

50.     Each of the Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

51.     Each of the Transfers was made to Lustig, or in the alternative to the Lustig Trust and for the benefit of Lustig.

52.     Each of the Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

53.     As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i.     On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

ii.     On the First Claim for Relief, impressing the Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

iii.     On the First Claim for Relief, establishing a constructive trust over all Transfers

and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

iv.     On the First Claim for Relief, pursuant to federal common law and/or N.Y. CPLR

5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which

the Transfers were received;

v.     On the First Claim for Relief, awarding the Trustee all applicable interest, costs

and disbursements incurred in this proceeding; and

vi.     Granting the Trustee such other, further, and different relief as the Court deems

just, proper, and equitable.


Date:  March 18, 2016
       New York, New York

Of Counsel:                                          By: */s/* Nicholas J. Cremona

**BAKER & HOSTETLER LLP**          **BAKER & HOSTETLER LLP**
1000 Louisiana, Suite 2000                  45 Rockefeller Plaza
Houston, Texas 77002-5018                  New York, New York 10111
Telephone: (713)751-1600                    Telephone: (212) 589-4200
Facsimile: (713)751-1717                     Facsimile: (212) 589-4201
Dean D. Hunt                                        David J. Sheehan
Email: dhunt@bakerlaw.com              Email:  dsheehan@bakerlaw.com
Farrell A. Hochmuth                            Nicholas J. Cremona
Email: fhochmuth@bakerlaw.com      Email:  ncremona@bakerlaw.com
                                         Geraldine E. Ponto
                                         Email:  gponto@bakerlaw.com

                                         *Attorneys for Irving H. Picard, Trustee for the*
                                         *Substantively Consolidated SIPA Liquidation*
                                           *of Bernard L. Madoff Investment Securities*
                                         *LLC and Bernard L. Madoff*

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| DAVID I LUSTIG TRF LUSTIG FAMILY 1990 TRUST DATED 1/31/90 | 1ZB268 |

MADC0623_00000001

Exhibit B

MADC0623_00000002

## BLMIS ACCOUNT NO. 1Z0268 - DAVID I LUSTIG TRF LUSTIG FAMILY 1990 TRUST DATED 1/3/90

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/11/1995 | CHECK | 500,000 | 500,000 | - | - | - | 500,000 | - | - | - |
| 3/18/1996 | CHECK | 400,000 | 400,000 | - | - | - | 900,000 | - | - | - |
| 9/24/1996 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 1,900,000 | - | - | - |
| 11/1/1996 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 2,900,000 | - | - | - |
| 7/18/1997 | CHECK WIRE | (1,000,000) | | (1,000,000) | - | - | 1,900,000 | - | - | - |
| 1/2/1998 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 2,900,000 | - | - | - |
| 6/22/1998 | CHECK WIRE | (1,000,000) | | (1,000,000) | - | - | 1,900,000 | - | - | - |
| 12/24/1998 | CHECK WIRE | (1,000,000) | | (1,000,000) | - | - | 900,000 | - | - | - |
| 8/19/1999 | CHECK WIRE | (1,100,000) | | (1,100,000) | - | - | (200,000) | - | - | - |
| 1/4/1999 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 800,000 | - | - | - |
| 1/5/1999 | CHECK WIRE | 100,000 | 100,000 | - | - | - | 900,000 | - | - | - |
| 11/10/1999 | TRANS TO 1Z43/1430 A/O 11/5/99 | (100,000) [1] | | - | - | (81,818) | 818,182 | - | - | - |
| 11/10/1999 | TRANS TO 1Z43/1430 A/O 11/4/99 | (1,000,000) [1] | | - | - | (818,182) | | - | - | - |
| 2/24/2000 | CHECK WIRE | (1,100,000) | | (1,100,000) | - | - | (1,100,000) | - | - | - |
| 7/17/2001 | CHECK WIRE | 6,541,617 | 6,541,617 | - | - | - | 5,441,617 | - | - | - |
| 12/4/2001 | CHECK WIRE | (700,000) | | (700,000) | - | - | 4,741,617 | - | - | - |
| 1/9/2002 | CHECK WIRE | 485,000 | 485,000 | - | - | - | 5,226,617 | - | - | - |
| 4/4/2003 | CHECK WIRE | (750,000) | | (750,000) | - | - | 4,476,617 | - | - | - |
| 2/19/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 4,976,617 | - | - | - |
| 3/17/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 5,476,617 | - | - | - |
| 3/24/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 5,976,617 | - | - | - |
| 4/7/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 6,476,617 | - | - | - |
| 5/5/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 6,976,617 | - | - | - |
| 5/17/2004 | CHECK WIRE | 300,000 | 300,000 | - | - | - | 7,276,617 | - | - | - |
| 6/3/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 7,776,617 | - | - | - |
| 6/25/2004 | CHECK WIRE | 200,438 | 200,438 | - | - | - | 7,977,055 | - | - | - |
| 7/23/2004 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 8,477,055 | - | - | - |
| 7/28/2004 | CHECK WIRE | (500,000) | | (500,000) | - | - | 7,977,055 | - | - | - |
| 12/10/2004 | CHECK WIRE | (2,000,000) | | (2,000,000) | - | - | 5,977,055 | - | - | - |
| 1/11/2005 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 7,977,055 | - | - | - |
| 3/2/2005 | CHECK WIRE | 675,000 | 675,000 | - | - | - | 8,652,055 | - | - | - |
| 3/30/2005 | CHECK WIRE | 31,609 | 31,609 | - | - | - | 8,683,664 | - | - | - |
| 4/11/2005 | CHECK WIRE | (1,000,000) | | (1,000,000) | - | - | 7,683,664 | - | - | - |
| 6/28/2005 | CHECK WIRE | (3,000,000) | | (3,000,000) | - | - | 4,683,664 | - | - | - |
| 11/7/2006 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 6,683,664 | - | - | - |
| 3/30/2006 | CHECK WIRE | (2,000,000) | | (2,000,000) | - | - | 4,683,664 | - | - | - |
| 5/25/2006 | CHECK WIRE | 1,875,000 | 1,875,000 | - | - | - | 6,558,664 | - | - | - |
| 6/6/2006 | CHECK WIRE | (2,000,000) | | (2,000,000) | - | - | 4,558,664 | - | - | - |
| 6/26/2007 | CHECK WIRE | (1,800,000) | | (1,800,000) | - | - | 2,758,664 | - | - | - |
| 7/24/2007 | CHECK WIRE | (5,000,000) | | (5,000,000) | - | - | (2,241,336) | - | (2,241,336) | (2,241,336) |
| 1/2/2008 | CHECK WIRE | (500,000) | | (500,000) | - | - | (2,741,336) | - | (500,000) | (500,000) |
| 9/25/2008 | CHECK WIRE | (1,500,000) | | (1,500,000) | - | - | (4,241,336) | - | (1,500,000) | (1,500,000) |
| | Total: | | $ 22,608,664 | $ (25,950,000) | $ - | $ (900,000) | $ (4,241,336) | $ - | $ (4,241,336) | $ (4,241,336) |

[1] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the account was transferred out of the account on this date.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC

In Liquidation

DECEMBER 11, 2008[1]

NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

August 28, 2009

David I Lustig
TRF Lustig Family 1990 Trust Dated 1/31/90
   REDACTED
Pescadero, California  94060

Dear Mr. Lustig:

PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZB268 designated as Claim Number 13424:

Your claim for a credit balance of $13,207.00 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $26,850,000.00), as more fully set forth in Table 1, is greater than the amount that was deposited with BLMIS for the purchase of securities (total of $22,608,664.05). As noted, no

---

[1] Section 78lll(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78lll(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

securities were ever purchased by BLMIS for your account. Any and all profits reported to you by
BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money
beyond the amount that was deposited into your BLMIS account, the amount of money you
received in excess of the deposits in your account ($4,241,335.95) was taken from other
customers and given to you. Accordingly, because you have withdrawn more than was deposited
into your account, you do not have a positive "net equity" in your account and you are not
entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is
**DENIED** in its entirety.

| - Table 1 - | | | |
|---|---|---|---|
| **DEPOSITS** | | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 10/11/1995 | CHECK | $500,000.00 | $500,000.00 |
| 3/18/1996 | CHECK | $400,000.00 | $400,000.00 |
| 9/24/1996 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 11/1/1996 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 1/2/1998 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 11/4/1999 | CHECK WIRE | $1,000,000.00 | $1,000,000.00 |
| 11/5/1999 | CHECK WIRE | $100,000.00 | $100,000.00 |
| 7/17/2001 | CHECK WIRE | $6,541,616.88 | $6,541,616.88 |
| 1/9/2002 | CHECK WIRE | $485,000.00 | $485,000.00 |
| 2/19/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 3/17/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 3/24/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 4/7/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 5/5/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 5/17/2004 | CHECK WIRE | $300,000.00 | $300,000.00 |
| 6/3/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 6/25/2004 | CHECK WIRE | $200,438.36 | $200,438.36 |
| 7/23/2004 | CHECK WIRE | $500,000.00 | $500,000.00 |
| 1/11/2005 | CHECK WIRE | $2,000,000.00 | $2,000,000.00 |
| 3/2/2005 | CHECK WIRE | $675,000.00 | $675,000.00 |
| 3/30/2005 | CHECK WIRE | $31,608.81 | $31,608.81 |
| 1/17/2006 | CHECK WIRE | $2,000,000.00 | $2,000,000.00 |
| 5/25/2006 | CHECK WIRE | $1,875,000.00 | $1,875,000.00 |
| **Total Deposits:** | | $22,608,664.05 | $22,608,664.05 |

| WITHDRAWALS | | | |
|---|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** | **ADJUSTED AMOUNT** |
| 7/18/1997 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 6/22/1998 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 12/24/1998 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 8/19/1999 | CHECK WIRE | ($1,100,000.00) | ($1,100,000.00) |
| 11/10/1999 | TRANS TO 1ZA31430 A/O 11/5/99 | ($100,000.00) | ($81,818.18) |
| 11/10/1999 | TRANS TO 1ZA31430 A/O 11/4/99 | ($1,000,000.00) | ($818,181.82) |
| 2/24/2000 | CHECK WIRE | ($1,100,000.00) | ($1,100,000.00) |
| 12/4/2001 | CHECK WIRE | ($700,000.00) | ($700,000.00) |
| 4/4/2003 | CHECK WIRE | ($750,000.00) | ($750,000.00) |
| 7/28/2004 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 12/10/2004 | CHECK WIRE | ($2,000,000.00) | ($2,000,000.00) |
| 4/11/2005 | CHECK WIRE | ($1,000,000.00) | ($1,000,000.00) |
| 6/28/2005 | CHECK WIRE | ($3,000,000.00) | ($3,000,000.00) |
| 3/30/2006 | CHECK WIRE | ($2,000,000.00) | ($2,000,000.00) |
| 6/6/2006 | CHECK WIRE | ($2,000,000.00) | ($2,000,000.00) |
| 6/26/2007 | CHECK WIRE | ($1,800,000.00) | ($1,800,000.00) |
| 7/24/2007 | CHECK WIRE | ($5,000,000.00) | ($5,000,000.00) |
| 1/2/2008 | CHECK WIRE | ($500,000.00) | ($500,000.00) |
| 9/25/2008 | CHECK WIRE | ($1,500,000.00) | ($1,500,000.00) |
| **Total Withdrawals:** | | ($27,050,000.00) | ($26,850,000.00) |
| **Total deposits less withdrawals:** | | ($4,441,335.95) | ($4,241,335.95) |

As reflected in Table 1, certain of the transfers into or out of your account have been adjusted. As part of the Trustee's analysis of accounts, the Trustee has assessed accounts based on a money in/money out analysis (i.e., has the investor deposited more or less than he or she withdrew from BLMIS). This analysis allows the Trustee to determine which part of an account's balance is originally invested principal and which part is fictitious gains that were fabricated by BLMIS. A customer's allowed claim is based on the amount of principal in the customer's account.

When ever a customer requested a transfer from one account to another, the Trustee analyzed whether the transferor account had principal in the account at the time of the transfer. The available principal in the account was transferred to and credited in the transferee account. Thus, the reason that the adjusted amount of transferred deposits in Table 1 is less than the purported transfer amount is that the transferor account did not have sufficient principal available to effectuate the full transfer. The difference between the purported transfer amount and the adjusted transfer amount is the amount of fictitious gain that was transferred to or from your account. Under the money in/money out analysis, the Trustee does not give credit for fictitious gains in settling your allowed claim.

MADC0623_00000005

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after August 28, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with
the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc:  Austin G. Bosarge
Turning Point Law
**REDACTED**
San Rafael, California 94903

EXHIBIT 4

LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendant David Ivan Lustig*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,                                                Adv. Pro. No. 08-01789 (SMB)

            Plaintiff-Applicant,                           SIPA LIQUIDATION

      v.                                                   (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

            Defendant.
-------------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

            Debtor.
-------------------------------------------------------------------x
IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

            Plaintiff,                                     Adv. Pro. No. 10-4554 (SMB)

      v.

DAVID IVAN LUSTIG,

            Defendant.
-------------------------------------------------------------------x

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant David Ivan Lustig, by his attorneys, as and for his answer to the

Trustee's First Amended Complaint ("FAC"), respectfully alleges as follows, by like-numbered

paragraph:

### As to "Nature Of Proceeding"

1.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.

2.  Deny each and every allegation, except admit that the Trustee purports to bring

this action to recover alleged fictitious profits as stated therein.  Insofar as the allegations purport

to state questions or conclusions of law, no response is required, and such matters of law are

respectfully referred to the Court.

### As to "Jurisdiction And Venue"

3.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, except admit that this is an adversary proceeding commenced

in this Court; that the underlying proceeding under the Securities Investor Protection Act

("SIPA") is pending in this Court; and that the Trustee purports to invoke this Court's

jurisdiction as stated therein.

4.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, except admit that the Trustee purports to consent to the entry

of final orders or judgment by this Court as stated therein.  Insofar as the allegations purport to

state questions or conclusions of law, no response is required, and such matters of law are

respectfully referred to the Court.

5.  Deny each and every allegation, except admit that the Trustee purports to base

2

venue as stated therein.

6.  Deny each and every allegation, except admit that the Trustee purports to bring this adversary proceeding and to seek relief as stated therein.

### As to "Defendant"

7.  Deny each and every allegation, except admit that Mr. Lustig maintains an address in Pescadero, California.

### As to "Background, The Trustee And Standing"

8.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Bernard L. Madoff ("Madoff") was arrested and charged with criminal violations.

9.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

10.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

11.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

12.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

13.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Madoff pleaded guilty to criminal violations.

14.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Frank DiPascali pleaded guilty to criminal

violations.

15.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that David Kugel pleaded guilty to criminal violations.

16.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of criminal violations.

17.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny the allegations that, absent this adversary proceeding against Mr. Lustig, an innocent investor, "the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1)."  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

18.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

19.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny that the Trustee has standing to bring this adversary proceeding against Mr. Lustig.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

4

## As to "The Ponzi Scheme"

20.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Bernard L. Madoff Investment Securities, LLC ("BLMIS") was registered with the United States Securities and Exchange Commission ("SEC") and was a member of the Securities Investor Protection Corporation ("SIPC").   Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

21.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

22.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

23.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

24.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

25.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

26.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

27.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

28.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.

29.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.

30.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.  Insofar as the allegations purport to state questions or

conclusions of law, no response is required, and such matters of law are respectfully referred to

the Court.

### As to "The Transfer"

31.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, except admit that an account identified as Account No.

1ZR297 ("Account") was maintained with BLMIS and that, upon information and belief, certain

documents related to the Account were executed and delivered to BLMIS.

32.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, except admit that deposits and transfers were made into the

Account.

33.   Deny each and every allegation, and state that the entire sum of $2,000,000

that was withdrawn from the Account on or about July 25, 2007, was immediately reinvested

back into BLMIS through third-party feeder fund Lakeview Investment, LP ("Lakeview") and

thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud.

Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact, lost money as a

result of Madoff's fraud.

34.   Deny each and every allegation, and state that the entire sum of $2,000,000

that was withdrawn from the Account on or about July 25, 2007, was immediately reinvested

back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested

with BLMIS until all of it was lost as a result of Madoff's fraud.   Mr. Lustig, therefore, did not

actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.

35.  Deny each and every allegation.  Insofar as the allegations purport to state

questions or conclusions of law, no response is required, and such matters of law are respectfully

referred to the Court.

## As to "Customer Claims"

36.  Admit that a customer claim designated as Claim Number 013425

("Customer Claim") was filed with the Trustee.

37.  Admit that a Notice of Trustee's Determination of Claim ("Determination")

was issued with respect to the Customer Claim on or about October 19, 2009.

38.  Admit that an objection to the Determination was filed.

39.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, and respectfully refer the Court to the order in question for its

full contents and meanings.

40.  Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.  Insofar as the allegations purport to state questions or

conclusions of law, no response is required, and such matters of law are respectfully referred to

the Court.

41.  Deny each and every allegation.  Insofar as the allegations purport to state

questions or conclusions of law, no response is required, and such matters of law are respectfully

7

referred to the Court.

### As to "Count One"

42.   Repeat and reallege each and every allegation, admission, and denial made in
response to the paragraphs of the FAC which are referred to in this paragraph.

43.   Deny each and every allegation, except admit that a withdrawal of $2,000,000
was made from the Account on or about July 25, 2007, and state that this entire sum was
immediately reinvested back into BLMIS through third-party feeder fund Lakeview and
thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud.
Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact, lost money as a
result of Madoff's fraud.

44.   Deny each and every allegation.  Insofar as the allegations purport to state
questions or conclusions of law, no response is required, and such matters of law are respectfully
referred to the Court.

45.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.  Insofar as the allegations purport to state questions or
conclusions of law, no response is required, and such matters of law are respectfully referred to
the Court.

46.   Deny each and every allegation, and state that the entire sum of $2,000,000
that was withdrawn from the Account on or about July 25, 2007, was immediately reinvested
back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested
with BLMIS until all of it was lost as a result of Madoff's fraud.  Mr. Lustig, therefore, did not
actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.

8

47.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

48.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

## AFFIRMATIVE DEFENSES

A.  Mr. Lustig asserts the following affirmative defenses and reserves the right to amend this answer to assert other and further defenses when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

B.  By identifying his allegations as "defenses", Mr. Lustig does not excuse or relieve the Trustee of his burden of proving all elements of his claim under the applicable standard of proof.  Mr. Lustig does not undertake or assume any burden that properly rests with the Trustee and does not suggest that the Trustee does not bear the burden of proof with respect to such matters or that such matters are not elements that the Trustee must establish in order to make out a prima facie case on his claim against Mr. Lustig.

C.  In the event that subsequent legal developments further limit or otherwise alter the claims available to the Trustee, Mr. Lustig hereby raises each and every defense at law, in equity, or otherwise, available under any and all federal and state statutes, laws, rules, and regulations.  Mr. Lustig further adopts and incorporates by reference any and all other defenses asserted or to be asserted by any other defendant or party-in-interest in pending adversary proceedings in the BLMIS SIPA liquidation proceeding to the extent that Mr. Lustig is similarly

9

situated and may properly assert such defense.

D.  Mr. Lustig reserves and asserts all affirmative defenses available under applicable federal or state law. including, without limitation, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the New York Uniform Commercial Code, and reserves the right to assert other defenses and claims when and if it becomes appropriate to do so in this action.

E.  The affirmative defenses set forth below are asserted cumulatively and in the alternative.

### First Affirmative Defense

The FAC fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Pursuant to <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011) and other Supreme Court precedent, this Court "may not finally decide avoidance actions except conceivably in the process of resolving identical claims under § 502(d)[.]"  <u>See</u> <u>In re Madoff Sec.</u>, 490 B.R. at 55.  The Trustee has not asserted a claim under 11 U.S.C. § 502(d) in this adversary proceeding.  Mr. Lustig does not consent to the adjudication and entry of a final order and judgment in this adversary proceeding by this Court.  Accordingly, this Court does not have the power or jurisdiction to "finally decide" this adversary proceeding.

### Third Affirmative Defense

Mr. Lustig demands a trial by jury and does not consent to such a trial in this Court.

### Fourth Affirmative Defense

The Trustee lacks standing to bring a claim against Mr. Lustig.

### Fifth Affirmative Defense

The Trustee has no authority or jurisdiction to bring a claim against Mr. Lustig because the conditions of SIPA § 78fff-2(c)(3) have not been met.  The Trustee has not established that there are insufficient funds in the BLMIS estate to pay all the claims specified in SIPA § 78fff-2(c)(1)(A) – (D).

### Sixth Affirmative Defense

The transfer at issue is not avoidable because the funds were held in trust by BLMIS and were not property in which BLMIS had a legal interest.

### Seventh Affirmative Defense

BLMIS incurred debts and obligations to the customer under contract law and other applicable non-bankruptcy laws and rules.  The transfer at issue was made on account of and constituted satisfaction of such antecedent debts or obligations.

### Eighth Affirmative Defense

The entire sum of $2,000,000 that was withdrawn from the Account on or about July 25, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud.  Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.  The Trustee's attempt to recover any portion of this money from Mr. Lustig even though all of it had been returned to BLMIS and subsequently lost as a result of Madoff's fraud is unreasonable and unconscionable.  Under these circumstances,

11

the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and dismiss the

Trustee's claim.

### Ninth Affirmative Defense

The entire sum of $2,000,000 that was withdrawn from the Account on or about

July 25, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  Under these circumstances, the Court should exercise

its equitable powers under 11 U.S.C. § 105(a) and grant Mr. Lustig an "equitable credit" in the

full amount (i.e., $2,000,000) that he had returned to BLMIS through his Lakeview investment.

### Tenth Affirmative Defense

The entire sum of $2,000,000 that was withdrawn from the Account on or about

July 25, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  The Trustee's attempt to recover from Mr. Lustig

money which he had thus already returned to the BLMIS estate violates the single satisfaction

rule codified at 11 U.S.C. § 550(d), which bars recovery from a transferee where the value of the

transferred property had already been returned to the estate.

### Eleventh Affirmative Defense

The entire sum of $2,000,000 that was withdrawn from the Account on or about

July 25, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  Accordingly, Mr. Lustig is entitled to an offset or credit

under the theory of recoupment in the full amount (i.e., $2,000,000) that he had returned to

BLMIS through his Lakeview investment.

### Twelfth Affirmative Defense

The entire sum of $2,000,000 that was withdrawn from the Account on or about

July 25, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Mr. Lustig, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  Accordingly, Mr. Lustig is entitled to a set-off under 11

U.S.C. § 553 in the full amount (i.e., $2,000,000) that he had returned to BLMIS through his

Lakeview investment

### Thirteenth Affirmative Defense

The Trustee failed to adequately plead that the transfer at issue was made "with

actual intent to hinder, delay, or defraud" as required under 11 U.S.C. § 548(a)(1)(A).

### Fourteenth Affirmative Defense

The Trustee's claim is barred, in whole or in part, by the doctrines of waiver,

laches, and/or estoppel.

### Fifteenth Affirmative Defense

The transfer at issue, to the extent it was actually received by Mr. Lustig, was

taken for value, in good faith, and without knowledge of its voidability.   Accordingly, it is not

13

avoidable or recoverable under 11 U.S.C. §§ 548(c) and/or 550.

### Sixteenth Affirmative Defense

The transfer at issue, to the extent it was actually received by Mr. Lustig, was taken without actual fraudulent intent and for value. Accordingly, it is not avoidable or recoverable under 11 U.S.C. §§ 548 and/or 550.

### Seventeenth Affirmative Defense

. The Trustee's claim is subject to setoff or other equitable adjustment because Mr. Lustig, to the extent he actually received the transfer at issue, received it in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt and/or on account of obligations owed by BLMIS for, inter alia: (a) amounts contractually due to a customer of BLMIS under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest, for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

### Eighteenth Affirmative Defense

The Trustee's claim is barred to the extent the Trustee attempts to directly or indirectly avoid transfers or inter-account transfers that occurred more than two years before December 11, 2008.

### Nineteenth Affirmative Defense

The Trustee's claim is barred to the extent the Trustee failed to properly credit inter-account transfers made to the Account. To the extent the inter-account transfers occurred outside any applicable statutory reach-back period for avoidance and/or recovery of transfers,

14

08-01789-cgm   Doc 16277-4   Filed 06/27/17   Entered 06/27/17 23:39:40   Exhibit 2-
9   Pg 58 of 120

they may not be ignored and/or treated as if they had no value as the Trustee has no power to avoid such inter-account transfers.

### Twentieth Affirmative Defense

By not accounting for the time value of money by making an interest adjustment or other adjustment, the Trustee incorrectly calculated the "value" represented by the principal investments in the Account and the amount of fictitious profits, if any, that may be avoided under § 548(a)(1)(A).

### Twenty-First Affirmative Defense

By not adjusting for inflation, the Trustee incorrectly calculated the "value" represented by the principal investments in the Account and the amount of fictitious profits, if any, that may be avoided under § 548(a)(1)(A).

### Twenty-Second Affirmative Defense

The Trustee is not entitled to recover any prejudgment interest on any recovery that he may obtain in this adversary proceeding.  But if it is found that the Trustee is entitled to prejudgment interest, he is only entitled to such interest at the federal rate of interest on judgments, and only from a date that is no earlier than the date when this adversary proceeding was commenced.

### Twenty-Third Affirmative Defense

The Trustee's claim is barred because the Trustee failed to sufficiently trace the funds at issue from BLMIS to Mr. Lustig.

### Twenty-Fourth Affirmative Defense

The Account is an individual retirement account and, as such, is exempt from the

15

Trustee's claim under applicable state law.

### Twenty-Fifth Affirmative Defense

The Trustee's claim should be dismissed due to Mr. Lustig's justifiable reliance

on the activities of governmental and regulatory bodies, such as the SEC and SIPC, to oversee

and monitor the activities and business of BLMIS.

### Twenty-Sixth Affirmative Defense

The Trustee's claim is barred by intervening or superseding events, factors,

occurrences, or conditions over which Mr. Lustig had no control.

### Twenty-Seventh Affirmative Defense

BLMIS was not formed until January 2001.  The orders of the District Court and

the Bankruptcy Court relating to the consolidation of the estates of BLMIS and Madoff as an

individual or sole proprietor of his securities business do not confer standing or authority upon

the Trustee to avoid or recover, directly or indirectly, fraudulent transfers made by Madoff prior

to the formation of BLMIS.

## DEMAND FOR JUDGMENT

WHEREFORE, defendant David Ivan Lustig respectfully demands judgment
against the Trustee: (1) dismissing the First Amended Complaint and denying all relief requested
therein with costs and disbursements in favor of Mr. Lustig; (2) reimbursing Mr. Lustig for the
attorneys' fees and expenses that he has incurred; and (3) granting such other, further, and
different relief as this Court may deem just and proper.

Dated:  New York, New York
       May 2, 2016

<div style="margin-left:40%">

Respectfully submitted,
LAW OFFICE OF
RICHARD E. SIGNORELLI

By:   /s/ Richard E. Signorelli
_____
Richard E. Signorelli
Bryan Ha
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com^SM
www.nycLITIGATOR.com^SM
Attorneys for Defendant David Ivan Lustig

</div>

FILING AND SERVICE VIA ELECTRONIC FILING

EXHIBIT 5

LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:     212 254 4218
Facsimile:     212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendants The Lustig Family*
*1990 Trust and David I. Lustig, individually*
*and in his capacity as Trustee for The Lustig*
*Family 1990 Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,                                                    Adv. Pro. No. 08-01789 (SMB)

                Plaintiff-Applicant,                   SIPA LIQUIDATION

      v.                                                    (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

             Defendant.

------------------------------------------------------------------x

In re:

BERNARD L. MADOFF,

            Debtor.

------------------------------------------------------------------x

IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,               Adv. Pro. No. 10-4417 (SMB)

           Plaintiff,

      v.                                                    **ANSWER AND**
                                       **<u>AFFIRMATIVE DEFENSES</u>**

THE LUSTIG FAMILY 1990 TRUST, et al.,

            Defendants.

------------------------------------------------------------------x

Defendants The Lustig Family 1990 Trust ("Lustig Trust") and David I. Lustig,
individually and in his capacity as Trustee for the Lustig Trust, by their attorneys, as and
for their answer to the Trustee's First Amended Complaint ("FAC"), respectfully allege as
follows, by like-numbered paragraph:

### As to "Nature Of Proceeding"

1.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

2.  Deny each and every allegation, except admit that the Trustee purports to bring
this action to recover alleged fictitious profits as stated therein.  Insofar as the allegations purport
to state questions or conclusions of law, no response is required, and such matters of law are
respectfully referred to the Court.

### As to "Jurisdiction And Venue"

3.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that this is an adversary proceeding commenced
in this Court; that the underlying proceeding under the Securities Investor Protection Act
("SIPA") is pending in this Court; and that the Trustee purports to invoke this Court's
jurisdiction as stated therein.

4.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that the Trustee purports to consent to the entry
of final orders or judgment by this Court as stated therein.  Insofar as the allegations purport to
state questions or conclusions of law, no response is required, and such matters of law are
respectfully referred to the Court.

2

5.  Deny each and every allegation, except admit that the Trustee purports to base venue as stated therein.

6.  Deny each and every allegation, except admit that the Trustee purports to bring this adversary proceeding and to seek relief as stated therein.

### As to "Defendants"

7.  Deny each and every allegation, except admit that the Lustig Trust is a trust formed under California law.

8.  Admit that Mr. Lustig maintains his residence in Pescadero, California.

### As to "Background, The Trustee And Standing"

9.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Bernard L. Madoff ("Madoff") was arrested and charged with criminal violations.

10.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

11.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

12.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

13.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

14.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Madoff pleaded guilty to criminal violations.

3

15.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Frank DiPascali pleaded guilty to criminal violations.

16.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that David Kugel pleaded guilty to criminal violations.

17.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of criminal violations.

18.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny the allegations that, absent this adversary proceeding against the defendants, who are innocent investors, "the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1)."  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

19.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

20.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny that the Trustee has standing to bring this adversary proceeding against the defendants.  Insofar as the allegations purport to state questions

4

or conclusions of law, no response is required, and such matters of law are respectfully referred
to the Court.

<center><u>**As to "The Ponzi Scheme"**</u></center>

21.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that Bernard L. Madoff Investment Securities,
LLC ("BLMIS") was registered with the United States Securities and Exchange Commission
("SEC") and was a member of the Securities Investor Protection Corporation ("SIPC").   Insofar
as the allegations purport to state questions or conclusions of law, no response is required, and
such matters of law are respectfully referred to the Court.

22.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

23.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

24.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

25.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

26.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

27.   Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

28.   Deny having knowledge or information sufficient to form a belief as to the

<center>5</center>

truth of each and every allegation.

29.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

30.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.

31.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation.  Insofar as the allegations purport to state questions or
conclusions of law, no response is required, and such matters of law are respectfully referred to
the Court.

### As to "The Transfers"

32.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that an account identified as Account No.
1ZB268 ("Account") was maintained with BLMIS and that, upon information and belief, certain
documents related to the Account were executed and delivered to BLMIS.

33.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that deposits and transfers were made into the
Account.

34.  Deny each and every allegation, and state that the entire sum of $5,000,000
that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested
back into BLMIS through third-party feeder fund Lakeview Investment, LP ("Lakeview") and
thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud.
Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a

6

result of Madoff's fraud.

35.   Deny each and every allegation, and state that the entire sum of $5,000,000 that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.

36.   Deny each and every allegation, and respectfully refer the Court to the relevant account documents and bank statements for their full contents and meanings.

37.   Deny each and every allegation, except admit that the sum of $5,000,000 was withdrawn from the Account on or about July 24, 2007 only for the sole purpose of reinvesting this entire sum back into BLMIS, and further state that this entire sum was then in fact immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.

38.   Deny each and every allegation, except admit that the sum of $500,000 was withdrawn from the Account on or about January 2, 2008.

39.   Deny each and every allegation, except admit that the sum of $1,500,000 was withdrawn from the Account on or about September 25, 2008.

40.   Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

7

## As to "Customer Claims"

41.   Admit that a customer claim designated as Claim Number 013424

("Customer Claim") was filed with the Trustee.

42.   Admit that a Notice of Trustee's Determination of Claim ("Determination")

was issued with respect to the Customer Claim on or about August 28, 2009.

43.   Admit that an objection to the Determination was filed.

44.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation, and respectfully refer the Court to the order in question for its

full contents and meanings.

45.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.  Insofar as the allegations purport to state questions or

conclusions of law, no response is required, and such matters of law are respectfully referred to

the Court.

46.   Deny each and every allegation.  Insofar as the allegations purport to state

questions or conclusions of law, no response is required, and such matters of law are respectfully

referred to the Court.

## As to "Count One"

47.   Repeat and reallege each and every allegation, admission, and denial made in

response to the paragraphs of the FAC which are referred to in this paragraph.

48.   Deny each and every allegation, except admit that withdrawals were made

from the Account within the two-year period prior to December 11, 2008.

49.   Deny each and every allegation.  Insofar as the allegations purport to state

8

questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

50. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

51. Deny each and every allegation, and state that the entire sum of $5,000,000 that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud.

52. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

53. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

### AFFIRMATIVE DEFENSES

A. Defendants assert the following affirmative defenses and reserve the right to amend this answer to assert other and further defenses when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

B. By identifying their allegations as "defenses", defendants do not excuse or

relieve the Trustee of his burden of proving all elements of his claim under the applicable

standard of proof.  Defendants do not undertake or assume any burden that properly rests with the

Trustee and do not suggest that the Trustee does not bear the burden of proof with respect to such

matters or that such matters are not elements that the Trustee must establish in order to make out

a prima facie case on his claim against defendants.

   C.  In the event that subsequent legal developments further limit or otherwise alter

the claims available to the Trustee, defendants hereby raise each and every defense at law, in

equity, or otherwise, available under any and all federal and state statutes, laws, rules, and

regulations.  Defendants further adopt and incorporate by reference any and all other defenses

asserted or to be asserted by any other defendant or party-in-interest in pending adversary

proceedings in the BLMIS SIPA liquidation proceeding to the extent that defendants are similarly

situated and may properly assert such defense.

   D.  Defendants reserve and assert all affirmative defenses available under

applicable federal or state law. including, without limitation, the Federal Rules of Bankruptcy

Procedure, the Federal Rules of Civil Procedure, and the New York Uniform Commercial Code,

and reserve the right to assert other defenses and claims when and if it becomes appropriate to do

so in this action.

   E.  The affirmative defenses set forth below are asserted cumulatively and in the

alternative.

## **First Affirmative Defense**

The FAC fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Pursuant to <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011) and other Supreme Court precedent, this Court "may not finally decide avoidance actions except conceivably in the process of resolving identical claims under § 502(d)[.]" <u>See</u> <u>In re Madoff Sec.</u>, 490 B.R. at 55. The Trustee has not asserted a claim under 11 U.S.C. § 502(d) in this adversary proceeding. Defendants do not consent to the adjudication and entry of a final order and judgment in this adversary proceeding by this Court. Accordingly, this Court does not have the power or jurisdiction to "finally decide" this adversary proceeding.

### Third Affirmative Defense

Defendants demand a trial by jury and do not consent to such a trial in this Court.

### Fourth Affirmative Defense

The Trustee lacks standing to bring a claim against defendants.

### Fifth Affirmative Defense

The Trustee has no authority or jurisdiction to bring a claim against defendants because the conditions of SIPA § 78fff-2(c)(3) have not been met. The Trustee has not established that there are insufficient funds in the BLMIS estate to pay all the claims specified in SIPA § 78fff-2(c)(1)(A) – (D).

### Sixth Affirmative Defense

The transfers at issue are not avoidable because the funds were held in trust by BLMIS and were not property in which BLMIS had a legal interest.

### Seventh Affirmative Defense

BLMIS incurred debts and obligations to the customer under contract law and

11

other applicable non-bankruptcy laws and rules.  The transfers at issue were made on account of

and constituted satisfaction of such antecedent debts or obligations.

## Eighth Affirmative Defense

The entire sum of $5,000,000 that was withdrawn from the Account on or about

July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Defendants, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  The Trustee's attempt to recover any portion of this

money from defendants even though all of it had been returned to BLMIS and subsequently lost

as a result of Madoff's fraud is unreasonable and unconscionable.  Under these circumstances,

the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and dismiss the

Trustee's claim.

## Ninth Affirmative Defense

The entire sum of $5,000,000 that was withdrawn from the Account on or about

July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Defendants, therefore, did not actually receive any fictitious profits and, in fact,

lost money as a result of Madoff's fraud.  Under these circumstances, the Court should exercise

its equitable powers under 11 U.S.C. § 105(a) and grant defendants an "equitable credit" in the

full amount (i.e., $5,000,000) that they had returned to BLMIS through their Lakeview

investment.

08-01789-cgm   Doc 16277-4   Filed 06/27/17   Entered 06/27/17 23:39:40   Exhibit 2-
9   Pg 13 of 18

### Tenth Affirmative Defense

The entire sum of $5,000,000 that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. The Trustee's attempt to recover from defendants money which they had thus already returned to the BLMIS estate violates the single satisfaction rule codified at 11 U.S.C. § 550(d), which bars recovery from a transferee where the value of the transferred property had already been returned to the estate.

### Eleventh Affirmative Defense

The entire sum of $5,000,000 that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact, lost money as a result of Madoff's fraud. Accordingly, defendants are entitled to an offset or credit under the theory of recoupment in the full amount (i.e., $5,000,000) that they had returned to BLMIS through their Lakeview investment.

### Twelfth Affirmative Defense

The entire sum of $5,000,000 that was withdrawn from the Account on or about July 24, 2007, was immediately reinvested back into BLMIS through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Defendants, therefore, did not actually receive any fictitious profits and, in fact,

13

lost money as a result of Madoff's fraud. Accordingly, defendants are entitled to a set-off under

11 U.S.C. § 553 in the full amount (i.e., $5,000,000) that they had returned to BLMIS through

their Lakeview investment

### Thirteenth Affirmative Defense

The Trustee failed to adequately plead that each of the transfers at issue was made

"with actual intent to hinder, delay, or defraud" as required under 11 U.S.C. § 548(a)(1)(A).

### Fourteenth Affirmative Defense

The Trustee's claim is barred, in whole or in part, by the doctrines of waiver,

laches, and/or estoppel.

### Fifteenth Affirmative Defense

The transfers at issue, to the extent they were actually received by defendants,

were taken for value, in good faith, and without knowledge of their voidability. Accordingly,

they are not avoidable or recoverable under 11 U.S.C. §§ 548(c) and/or 550.

### Sixteenth Affirmative Defense

The transfers at issue, to the extent they were actually received by defendants,

were taken without actual fraudulent intent and for value. Accordingly, they are not avoidable or

recoverable under 11 U.S.C. §§ 548 and/or 550.

### Seventeenth Affirmative Defense

.        The Trustee's claim is subject to setoff or other equitable adjustment because

defendants, to the extent they actually received the transfers at issue, received them in good faith,

without knowledge of the alleged fraud, and in payment of an antecedent debt and/or on account

of obligations owed by BLMIS for, inter alia: (a) amounts contractually due to a customer of

14

BLMIS under New York law for the balances shown on prior customer account statements and
related documents; (b) rescission remedies, including damages and interest, for fraud and
misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust
enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

### Eighteenth Affirmative Defense

The Trustee's claim is barred to the extent the Trustee attempts to directly or
indirectly avoid transfers or inter-account transfers that occurred more than two years before
December 11, 2008.

### Nineteenth Affirmative Defense

The Trustee's claim is barred to the extent the Trustee failed to properly credit
inter-account transfers made to the Account.  To the extent the inter-account transfers occurred
outside any applicable statutory reach-back period for avoidance and/or recovery of transfers,
they may not be ignored and/or treated as if they had no value as the Trustee has no power to
avoid such inter-account transfers.

### Twentieth Affirmative Defense

By not accounting for the time value of money by making an interest adjustment
or other adjustment, the Trustee incorrectly calculated the "value" represented by the principal
investments in the Account and the amount of fictitious profits, if any, that may be avoided under
§ 548(a)(1)(A).

### Twenty-First Affirmative Defense

By not adjusting for inflation, the Trustee incorrectly calculated the "value"
represented by the principal investments in the Account and the amount of fictitious profits, if

any, that may be avoided under § 548(a)(1)(A).

### Twenty-Second Affirmative Defense

The Trustee is not entitled to recover any prejudgment interest on any recovery that he may obtain in this adversary proceeding. But if it is found that the Trustee is entitled to prejudgment interest, he is only entitled to such interest at the federal rate of interest on judgments, and only from a date that is no earlier than the date when this adversary proceeding was commenced.

### Twenty-Third Affirmative Defense

The Trustee's claim is barred because the Trustee failed to sufficiently trace the funds at issue from BLMIS to defendants.

### Twenty-Fourth Affirmative Defense

The Account is a trust account and, as such, is exempt from the Trustee's claim under applicable state law.

### Twenty-Fifth Affirmative Defense

The Trustee's claim should be dismissed due to defendants' justifiable reliance on the activities of governmental and regulatory bodies, such as the SEC and SIPC, to oversee and monitor the activities and business of BLMIS.

### Twenty-Sixth Affirmative Defense

The Trustee's claim is barred by intervening or superseding events, factors, occurrences, or conditions over which defendants had no control.

### Twenty-Seventh Affirmative Defense

BLMIS was not formed until January 2001. The orders of the District Court and

the Bankruptcy Court relating to the consolidation of the estates of BLMIS and Madoff as an

individual or sole proprietor of his securities business do not confer standing or authority upon

the Trustee to avoid or recover, directly or indirectly, fraudulent transfers made by Madoff prior

to the formation of BLMIS.

### Twenty-Eighth Affirmative Defense

The Trustee cannot recover the initial transfers from Mr. Lustig individually on

the theory that he was the beneficiary of those transfers.

### Twenty-Ninth Affirmative Defense

The Trustee's claim is subject to setoff or other equitable adjustment to the extent

that any of the funds withdrawn from the Account were used to pay tax obligations imposed on

alleged fictitious profits by federal, state, and/or local governmental taxing authorities.

## DEMAND FOR JUDGMENT

WHEREFORE, defendant the Lustig Trust and Mr. Lustig, individually and in his

capacity as Trustee for the Lustig Trust, respectfully demand judgment against the Trustee: (1)

dismissing the First Amended Complaint and denying all relief requested therein with costs and

disbursements in favor of defendants; (2) reimbursing defendants for the attorneys' fees and

expenses that they have incurred; and (3) granting such other, further, and different relief as this

Court may deem just and proper.

Dated:  New York, New York
        May 2, 2016

                                    Respectfully submitted,
                                    LAW OFFICE OF
                                    RICHARD E. SIGNORELLI

                            By:     /s/ Richard E. Signorelli
                                    _____

                                    Richard E. Signorelli
                                    Bryan Ha
                                    799 Broadway, Suite 539
                                    New York, NY 10003
                                    Telephone:     212 254 4218
                                    Facsimile:     212 254 1396
                                    rsignorelli@nycLITIGATOR.com℠
                                    www.nycLITIGATOR.com℠

                                    Attorneys for Defendants The Lustig Family
                                    1990 Trust and David I. Lustig, individually
                                    and in his capacity as Trustee for The Lustig
                                    Family 1990 Trust

FILING AND SERVICE VIA ELECTRONIC FILING

18

EXHIBIT 6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

In re:                                             :
                                                   :        Adv. Proc. No. 08-01789 (SMB)
SECURITIES INVESTOR PROTECTION         :
CORPORATION,                                       :        SIPA Liquidation
                                                   :        (Substantively Consolidated)
                     Plaintiff-Applicant,  :
                                                   :
          – against –                              :
                                                   :
BERNARD L. MADOFF INVESTMENT      :
SECURITIES LLC,                                    :
                                                   :
                     Defendant.            :

-------------------------------------------------------X

In re:                                             :
                                                   :
BERNARD L. MADOFF,                                 :
                                                   :
                     Debtor.               :

-------------------------------------------------------X

IRVING PICARD, Trustee for the Liquidation     :
of Bernard L. Madoff Investment Securities     :
LLC,                                               :
                                                   :
                     Plaintiff,            :
                                                   :
          – against –                              :        Adv. Proc. No. 10-04417 (SMB)
                                                   :
THE LUSTIG FAMILY 1990 TRUST and      :
DAVID I. LUSTIG, individually and in his     :
Capacity as Trustee for The Lustig Family     :
1990 Trust,                                        :
                                                   :
                     Defendants.           :

-------------------------------------------------------X

IRVING PICARD, Trustee for the Liquidation     :
of Bernard L. Madoff Investment Securities     :
LLC,                                               :
                                                   :
                     Plaintiff,            :
                                                   :
          – against –                              :        Adv. Proc. No. 10-04554 (SMB)
                                                   :
DAVID IVAN LUSTIG,                                 :

:
Defendant.             :
------------------------------------------------------X

## MEMORANDUM DECISION GRANTING PARTIAL SUMMARY JUDGMENT STRIKING CERTAIN AFFIRMATIVE DEFENSES

**A P P E A R A N C E S :**

**BAKER & HOSTETLER LLP**
*Attorneys for Plaintiff Irving Picard, Trustee*
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Nicholas J. Cremona, Esq.
    Dean D. Hunt, Esq.
       Of Counsel

**LAW OFFICE OF RICHARD E. SIGNORELLI**
*Attorney for Defendants*
799 Broadway, Suite 539
New York, NY 10003

    Richard E. Signorelli, Esq.
    Bryan Ha, Esq.
       Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

    The defendants David Ivan Lustig ("Lustig") and the Lustig Family 1990 Trust

("Lustig Trust," and collectively with Lustig, the "Lustig Defendants") withdrew

approximately $7 million in fictitious profits from their customer accounts maintained

at Bernard L. Madoff Investment Securities LLC ("BLMIS"). They claim that they

reinvested the withdrawn sums indirectly back into BLMIS through a series of transfers

among other feeder funds that invested with Madoff, and all of the reinvested money

was lost as a result of Madoff's Ponzi scheme.

Irving H. Picard (the "Trustee"), as trustee for the liquidation of BLMIS under the

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), sued the Lustig

Defendants in separate adversary proceedings to recover the fictitious profits they

withdrew.  The Lustig Defendants asserted numerous affirmative defenses, several of

which revolve around the concept that they are entitled to a credit for the amounts that

others reinvested into BLMIS.  The Trustee has moved to strike those defenses, (*Notice

of Trustee's Motion to Strike Affirmative Defenses*, dated Feb. 28, 2017 (ECF Doc. #

73)),[1] and the parties have agreed to treat the Trustee's motion as a motion for partial

summary judgment.  For the reasons that follow, the Trustee's motion is granted.

## BACKGROUND

The background to Madoff's Ponzi scheme has been recounted in numerous

opinions, *e.g. SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y.

2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012), and need not

be restated here as they are not in dispute on this motion.  The Lustig Defendants

maintained separate customer accounts with BLMIS.  Between June 26, 2007 and

September 25, 2008, the Lustig Trust withdrew $8.8 million from BLMIS Account

1ZB268, of which $4,241,336 constituted fictitious profits.  On July 25, 2007, Lustig

withdrew $2 million from BLMIS Account 1ZR297, of which $1,863,225 constituted

fictitious profits.

According to the Lustig Defendants, they reinvested all of the withdrawn

fictitious profits, totaling approximately $7 million, with Lakeview Investment, LP

---

[1]        The parties filed identical papers in each adversary proceeding.  Unless indicated otherwise, all
ECF references are to the docket in Adversary Proceeding No. 10-04417.

("Lakeview").[2] They further allege that through a series of transfers among other funds and financial institutions, all of the withdrawn fictitious profits were eventually reinvested in BLMIS and ultimately lost. Specifically, the approximate $4.2 million withdrawn by the Lustig Trust, in the end, found its way into the customer account maintained by the Rye Select Broad Market Fund ("Rye Broad Market"), part of the Tremont Group. The approximate $2 million in fictitious profits withdrawn by Lustig was subsequently deposited by the Senator Fund ("Senator," and together with Rye Broad Market, the "Funds") in its own account at BLMIS.

The Trustee commenced an adversary proceeding against the Lustig Trust on November 30, 2010, (*Complaint*, dated Nov. 12, 2010 (ECF Doc. # 1)), and sued Lustig one day later. (*Complaint*, dated Nov. 12, 2010 (ECF Adv. Proc. No. 10-04554 Doc # 1).) The Trustee concedes that the Lustig Defendants were good faith transferees entitled to the protection of the safe harbor under 11 U.S.C. § 546(e). Accordingly, he seeks to avoid and recover the fictitious profits withdrawn within two years of the December 11, 2008 filing date of the SIPA proceeding as intentional fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

The Lustig Defendants denied the material allegations in the *Complaints*, and in relevant part, asserted identical affirmative defenses. (*See Answer*, dated May 2, 2016 (ECF Doc. # 58); *Answer,* dated May 2, 2016 (ECF Adv. Proc. No. 10-04554 Doc. # 61).) The Eighth through Twelfth Affirmative Defenses alleged that the entire sum that was

---

[2]    The transfers are summarized in the *Letter from Richard E. Signorelli, Esq. and Bryan Ha, Esq. to the Court,* dated Jan. 6, 2017 (ECF Doc. # 66), and purport to be documented in exhibits attached to the *Declaration of Bryan Ha*, dated Mar. 31, 2017 (ECF Doc. # 78).

4

withdrawn by the Lustig Defendants was reinvested with BLMIS through Lakeview, the
reinvested sums were lost as a result of Madoff's fraud, the Lustig Defendants did not
actually receive any fictitious profits, and in fact, they lost money as a result of Madoff's
fraud.  Based on these allegations, the Lustig Defendants contend that the Court should
use its equitable powers to dismiss the claims, (Eight Affirmative Defense), and/or grant
them an "equitable credit," (Ninth Affirmative Defense), the claims are barred by the
single satisfaction rule under 11 U.S.C. § 550(d), (Tenth Affirmative Defense), they are
entitled to a credit under the theory of recoupment, (Eleventh Affirmative Defense), and
they are entitled to a set off under 11 U.S.C. § 553 (Twelfth Affirmative Defense).  The
Lustig Defendants subsequently withdrew the set off defense, (*Defendants'
Memorandum of Law in Opposition to Trustee's Motion to Strike Certain Affirmative
Defenses*, dated Mar. 31, 2017 ("*Lustig Memo*"), at 17 n. 5 (ECF Doc. # 76)), and the
motion directed at the Twelfth Affirmative Defense requires no further consideration.

The Trustee moved to strike these defenses as legally insufficient pursuant to
Rule 12(f) of the Federal Rules of Civil Procedure.  The Lustig Defendants submitted a
substantial amount of documentary evidence and Lustig's affidavit in opposition, and at
the Court's suggestion, the parties agreed to treat the motion as one for partial summary
judgment dismissing these defenses.  To expedite consideration of the legal issues, I will
assume solely for the purposes of the motion that the series of transfers occurred as the
Lustig Defendants claim, the fictitious profits they withdrew were subsequently
deposited by the Funds in their own BLMIS accounts, and the value of those accounts
was effectively zero when the Madoff scandal was revealed.

5

Through his motion, the Trustee contends that the Bankruptcy Code does not authorize equitable defenses or an "equitable credit" to offset a fraudulent transfer. (*Memorandum of Law in Support of the Trustee's Motion to Strike Affirmative Defenses, dated Feb. 28, 2017* ("*Trustee Memo*"), at 5-7 (ECF Doc. # 74).) Further, the single satisfaction rule codified in 11 U.S.C. § 550(d) is inapplicable because we are dealing with separate initial transfers to the Lustig Defendants and the Funds, (*id.* at 7-8), and the doctrine of recoupment does not apply because the Trustee's claims and the Lustig Defendants' claims arise out of different transactions. (*Id.* at 9-10.) The Lustig Defendants' opposition takes the contrary view on each of these points. (*See Lustig Memo* at 22-40.) The Trustee's reply emphasized that "[a]llowing Defendants to avoid liability in these adversary proceedings because they chose to make an investment in Lakeview with the money Defendants withdrew from their BLMIS accounts would give Defendants preference over BLMIS customers by allowing Defendants' alleged losses to be treated as a claim for customer property." (*Reply in Support of the Trustee's Motion to Strike Affirmative Defenses*, dated Apr. 14, 2017 (*"Trustee Reply"*), at 1 (ECF Doc. # 79).) Furthermore, the money collected from the Funds was for the benefit of all net losers, not the Lustig Defendants. (*Id.* at 5.)

## DISCUSSION

### A.    Introduction

Bankruptcy Code § 548(a) authorizes a bankruptcy trustee to avoid a fraudulent transfer made by the debtor, and SIPA extends that authority to the Trustee. 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that

6

such transfer is voidable or void under the provisions of Title 11").  If the trustee avoids

the transfer under § 548, Bankruptcy Code § 550(a) permits him to recover the initial

transfer or its value, "if the court so orders," from the initial transferee, any subsequent

transferees or the entity for whose benefit the transfer was made.  The purpose of §

550(a) is to restore the estate to the condition it would have been in if the transfer had

never occurred.  *Hirsch v. Gersten* (*In re Centennial Textiles, Inc.*), 220 B.R. 165, 176

(Bankr. S.D.N.Y. 1998), *supplemented by* 220 B.R. 177 (Bankr. S.D.N.Y. 1998); *accord*

*Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*), Adv. Proc. No. 11–2251 (JLG),

2016 WL 1069303, at *14 (Bankr. S.D.N.Y. Mar. 17, 2016); 5 ALAN N. RESNICK & HENRY

J. SOMMER, COLLIER ON BANKRUPTCY ¶ 550.02[3], at 550-10 (16th ed. 2016) ("COLLIER").

The choice under § 550(a) between ordering the return of the property or its value gives

the Court flexibility to grant the appropriate remedy when the value is uncertain or has

changed since the transfer.  "The factors which the Court should consider in

determining whether to order turnover of the property rather than payment of the value

include whether the value of the property (1) is contested; (2) is not readily

determinable; or (3) is not diminished by conversion or depreciation."  *Centennial*

*Textiles,* 220 B.R. at 177; *accord Andrew Velez Constr., Inc. v. Consol. Edison Co. of*

*New York, Inc.* (*In re Andrew Velez Constr., Inc.*), 373 B.R. 262, 274 (Bankr. S.D.N.Y.

2007); 5 COLLIER ¶ 550.02[3], at 550-10 to 550-11.  Where the transfer involves cash, the

Court's discretion does not come into play.

Finally, "[t]he trustee is entitled to only a single satisfaction under [550(a)]."  11

U.S.C. § 550(d).  Thus, although the trustee can sue many defendants, his total recovery

is limited to the initial transfer or its value.  For example, if the debtor transferred $1.00

fraudulently, and that $1.00 was transferred and re-transferred fifty times, the Trustee can sue the initial transferee and the fifty subsequent transferees, but can only recover $1.00.

The Lustig Defendants do not dispute, again for the purposes of the Trustee's motion, that the transfers of fictitious profits they received are avoidable under Bankruptcy Code § 548(a).[3]  Accordingly, the question is whether the Trustee's recovery under Bankruptcy Code § 550(a) is or should be limited based on the defenses they have asserted.

## B.    The Equitable Defenses

The Eighth and Ninth Affirmative Defenses ask the Court to use its general equity powers under § 105(a)[4] to dismiss the Trustee's claims or grant the Lustig Defendants an "equitable credit" in the full amount they invested in Lakeview which, we will assume, was reinvested in BLMIS by the Funds.  Admittedly, no such defenses are specified in the Bankruptcy Code.  Nor does the Bankruptcy Code permit the Court to limit the Trustee's recovery of a cash transfer for equitable reasons.  The Lustig Defendants nevertheless argue that this equitable power exists by virtue of Bankruptcy Code § 105(a).

---

[3]     Although an initial transferee who received the transfer in good faith for value given to the debtor may defend the avoidance claim on that basis, 11 U.S.C. § 548(c), the Lustig Defendants do not concede that they did not give value, and have asserted this defense in their Fifteenth Affirmative Defense. (*Answer*, dated May 2, 2016, at 14 (ECF Doc. # 58); *Answer*, dated May 2, 2016, at 13-14 (ECF Adv. Proc. No. 10-04554 Doc. # 61).)

[4]     Section 105(a) states in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

We are frequently reminded that the equitable powers of the bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, (1988); *accord Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014); *Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 96 (2d Cir. 2010); *Smart World Techs., LLC v. Juno Online Servs., LLC* (*In re Smart World Techs., LLC*), 423 F.3d 166, 184 (2d Cir. 2005); *Schwartz v. Aquatic Dev. Grp.*, Inc. (*In re Aquatic Dev. Grp., Inc.*), 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity," *Kalikow*, 602 F.3d at 96 (citation and internal quotation marks omitted); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)), and extends only to the exercise of equity "in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Dairy Mart,* 351 F.3d at 92 (emphasis in original); *accord Kalikow*, 602 F.3d at 97.

Here, the credits that the Lustig Defendants seek are inconsistent with express provisions of the Bankruptcy Code and SIPA which give the credit they seek to the entity that gave the value to the debtor. Bankruptcy Code § 548(c) provides a defense to the extent that the initial transferee takes in good faith and "gave value to the debtor in exchange for such transfer or obligation." The Funds gave the value through the deposits that the Lustig Defendants are trying to conscript for their own benefit, and the Funds are entitled to the credit for those deposits under § 548(c). Similarly, the Funds

received a credit for those deposits under SIPA.  The Funds are net losers, and under the
"Net Investment Method" approved by the Second Circuit, *see In re BLMIS*, 654 F.3d
229, 239 (2d Cir. 2011), *cert. denied*, 133 U.S. 24 (2012), they are entitled to net equity
claims based on the difference between the amount they deposited and the amount they
withdrew from their BLMIS accounts.  The deposits increased the allowable net equity
claims asserted by the Funds, and the Lustig Defendants' invocation of equity would
force the BLMIS estate to give a second round of credits based on the same deposits.

Moreover, the credits given to the Funds on account of these deposits are not just
theoretical; the Trustee has distributed cash to the Funds based on the deposits.  The
Trustee sued the Tremont Group, including Rye Broad Market, and in July 2011, the
parties reached a settlement.[5]  The Trustee alleged that the entire Tremont Group had
withdrawn $2.1 billion during the life of their accounts, of which Rye Broad Market had
withdrawn $384,140,000.00.  (*Tremont Settlement Agreement* at ¶ G.)  Rye Broad
Market was nonetheless a substantial net loser to the tune of $1,639,171,625.00.  (*Id.* at
¶¶ G, T.)  Under the settlement, the Tremont Group agreed to pay the Trustee $1 billion,
(*id.* at ¶ 2), and the Trustee agreed, among other things, to allow Rye Broad Market's

_____

[5]        A copy of the settlement agreement ("*Tremont Settlement Agreement*") is annexed as Exhibit A to
the *Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and
9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between
the Trustee and Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited,
Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad
Market Portfolio Limited, Rye Select Broad Market Insurance Fund, L.P., Rye Select Broad Market XI
Fund, L.P., Tremont Arbitrage Fund, L.P., Tremont Arbitrage Fund Ireland, Tremont Emerging
Markets Fund - Ireland, Tremont Equity Fund -Ireland, Tremont International Insurance Fund, L.P.,
Tremont Long/Short Equity Fund, L.P., Tremont Market Neutral Fund, L.P., Tremont Market Neutral
Fund Ii, L.P., Tremont Market Neutral Fund Limited, Tremont Opportunity Fund Limited, Tremont
Opportunity Fund II, L.P., Tremont Opportunity Fund III, L.P., Rye Select Equities Fund, Tremont Multi
Manager Fund, and LifeInvest Opportunity Fund LDC, Oppenheimer Acquisition Corp., MassMutual
Holding LLC, Massachusetts Mutual Life Insurance Company, Robert I. Schulman, and Rye Select
Broad Market Insurance Portfolio LDC, dated July 28, 2011* ("*Tremont Settlement Motion*") (ECF Adv.
Proc. No. 10-05310 Doc. # 17).

10

customer claim in the sum of $1,647,687,625.00.  (*Id.* at ¶ 5.)  In addition, the customer claims of Rye Broad Market and Portfolio Limited, another settling member of the Tremont Group, were increased by the aggregate amount of $800 million pursuant to 11 U.S.C. § 502(h)[6] on account of the $1 billion settlement payment.  (*See id.*; *Tremont Settlement Motion* at ¶ 18.)

The Trustee also sued Senator to recover $95 million withdrawn over the life of its account and to disallow its customer net equity claim.  In November 2014, the parties reached a settlement.[7]  Senator, like Rye Broad Market, was a net loser, and at the time of the settlement, its net equity claim was $162,249,980.00.  (*Senator Settlement Agreement* at ¶ E.)  Senator agreed to pay the Trustee $95 million, (*id.* at ¶ 1), and the Trustee agreed to allow Senator's increased customer claim in the amount of $238,753,482.00.  (*Id.* at ¶ 2.)  The latter sum consisted of 88.6% of Senator's net equity claim and 100% of the settlement payment allowed under Bankruptcy Code § 502(h).  (*Senator Settlement Motion* at ¶ 13.)

Through eight interim distributions, the Funds as well as other net losers have received slightly more than 60% of the allowed amounts of their claims.  (*See Motion for an Order Approving Eighth Allocation of Property to the Fund of Customer Property*

---

[6]     Section 502(h) states that "[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."  In other words, Rye Broad Market and Portfolio Limited received an aggregate, allowed unsecured claim for 80% of the amount paid toward the settlement.

[7]     A copy of the settlement agreement ("*Senator Settlement Agreement*") is annexed as Exhibit A to the *Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between the Trustee and Senator Fund SPC*, dated Nov. 18, 2014 ("*Senator Settlement Motion*") (ECF Adv. Proc. No. 09-01364 Doc. # 339).

10-04417-smb   Doc 82   Filed 06/09/17   Entered 06/09/17 18:16:34   Main Document
Pg 12 of 13

*and Authorizing Eighth Interim Distribution to Customers,* Dec. 14, 2016, at ¶ 7 (ECF

Case No. 08-01789 Doc. # 14662).)[8]  These payments reflect credit for the same

investments the Lustig Defendants claim they are entitled to use to defeat their own

liability.

## B.  Bankruptcy Code § 550(d)

The Lustig Defendants also contend through their Tenth Affirmative Defense that

permitting the Trustee to recover against them would violate the single satisfaction rule

embodied in 11 U.S.C. § 550(d).  As noted, Section 550(a) allows the Trustee to recover

an avoided transfer or its value, but under § 550(d), "[t]he trustee is entitled to only a

single satisfaction under subsection (a) of this section."  The single satisfaction rule is a

limitation on recovery rather than a defense to the avoidance of the fraudulent transfer,

but the effect is the same.

As explained earlier, Section 550(d) applies to limit a trustee's recovery in those

situations where he sues multiple defendants to recover the value of the avoided initial

transfer.  *See White v. Jones* (*In re Butler Innovative Solutions, Inc.*), Adv. Proc. No.

10–10021, 2015 WL 1926814, at *8 (Bankr. D.D.C Apr. 27, 2015), *supplemented by* Adv.

Proc. No., 10-10021, 2015 WL 5118684 (Bankr. D.D.C. Aug. 28, 2015).  The Trustee sued

the Funds as initial transferees based on their withdrawals from their BLMIS accounts.

He did not sue them as subsequent transferees of the Lustig Defendants, who are liable

to the estate on account of the initial transfers that they received.  Thus, even if the

---

[8]      The motion to approve the eighth distribution was granted on Jan. 12, 2017.  (*Order Approving Eighth Allocation of Property to the Fund of Customer Property and Authorizing Eighth Interim Distribution to Customers*, dated Jan. 12, 2017 (ECF Case No. 08-01789 Doc. # 14836).)

Trustee recovered the entire initial transfers made to the Funds, Bankruptcy Code §

550(d) does not foreclose the Trustee from recovering the full amount of the initial

transfers made to the Lustig Defendants.

### C.    Recoupment

The Eleventh Affirmative Defense relies on the doctrine of recoupment.

Recoupment rights are determined pursuant to nonbankruptcy law.  *New York State*

*Elec. & Gas Corp. v. McMahon* (*In re McMahon*), 129 F.3d 93, 96 (2d Cir. 1997).  Under

New York law,

> [r]ecoupment means a deduction from a money claim through a process
> whereby cross demands arising out of the same transaction are allowed to
> compensate one another and the balance only to be recovered.  Of course,
> such a process does not allow one transaction to be offset against another,
> but only permits a transaction which is made the subject of suit by a
> plaintiff to be examined in all its aspects, and judgment to be rendered
> that does justice in view of the one transaction as a whole.

*Id.* (quoting *Nat'l Cash Register Co. v. Joseph*, 86 N.E.2d 561, 562 (N.Y. 1949)); *accord*

*Westinghouse Credit Corp. v. D'urso*, 278 F.3d 138, 146 (2d Cir. 2002).

In bankruptcy, "recoupment seeks to avoid the unjust result that would occur if a

debtor who has been overpaid pre-petition by a party in a contract is permitted post-

petition to make a claim under the contract against that party without regard to the

overpayment it has received."  *McMahon*, 129 F.3d at 96.  Thus, it ignores the

demarcation between pre and post-petition debits and credits.  Nevertheless, "[i]n light

of the Bankruptcy Code's strong policy favoring equal treatment of creditors and

bankruptcy court supervision over even secured creditors, the recoupment doctrine is a

limited one and should be narrowly construed."  *McMahon*, 129 F.3d at 97.

13

10-04419-smb    Doc 82    Filed 06/01/17   Entered 06/01/17 16:26:39   Main Document-
Pg 14 of 18

Assuming that the doctrine of recoupment could ever serve as a defense to a fraudulent transfer claim, it is not available to the Lustig Defendants because the parties' claims arise from different transactions.  The Trustee's claims against the Lustig Defendants arise from their withdrawal of fictitious profits from their BLMIS accounts.  Their recoupment credit is based on their investment of the withdrawn funds in Lakeview which is an entirely different transaction.  Even if one accepted that the credit arises from the Funds' reinvestment of money traceable back to those withdrawals, the reinvestment is still a separate transaction governed by whatever account agreements the Funds had with BLMIS.

**D.    The Lustig Defendants' Authorities**

Finally, the Lustig Defendants' authorities are distinguishable.  They rely mainly on two cases.  In *Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*), 312 B.R. 262 (D.N.J. 2004), the Cybridge Corporation ("Cybridge") entered into a pre-petition "factoring" agreement with Presidential Financial Corporation of Delaware Valley ("Presidential").  Presidential advanced up to 80% of the value of Cybridge's eligible accounts receivable, and Presidential's loan was secured, *inter alia*, by a first lien on the accounts receivable.  Presidential collected the receivables from the customer and applied the payments to the outstanding debt.  *Id.* at 265.

Cybridge filed a chapter 11 case, but did not list Presidential as a creditor or provide it with notice of the bankruptcy.  As a result, Presidential continued to advance funds and collect the accounts receivable.  *Cybridge*, 312 B.R at 265.  During the chapter

11 period, Presidential collected $163,847.00 but advanced $192,200.00 in new loans.[9]
*Id.* Following the conversion, the chapter 7 trustee commenced an adversary
proceeding to avoid and recover the post-petition collections as violative of 11 U.S.C. §
549(a).[10]

The Bankruptcy Court granted summary judgment and the District Court
affirmed. It ruled that the recovery was barred by Bankruptcy Code § 550(d) which
"empowers courts to prohibit a trustee from recovering under Section 550(a) from a
transferee that has already returned to the estate that which was taken in violation of the
Code." *Cybridge*, 312 B.R. at 271. "Cash is fungible," and Presidential had returned the
cash it collected through new advances. This limited the trustee's recovery to zero under
Bankruptcy Code § 550(a) because the value of the transfer had already been repaid. *Id.*
at 271-72. Finally, the grant of an "equitable credit" under Bankruptcy Code § 105(a) to
limit the amount of recovery under § 550(a) did not conflict with the Bankruptcy Code.
The equitable credit left the estate in the same position it would have been in but for the
avoided transfer, and prevented the injustice of forcing Presidential to pay $163,847.00
despite the fact that it was deceived into continuing the lending relationship post-

---

[9]    It appears that Presidential collected accounts receivable after the case was converted to chapter
7. *See Cybridge*, 312 B.R. at 265.

[10]    Section 549(a) provides:

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a
transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

petition during which it had advanced $192,200.00 which it was likely never to recoup.

In addition, it was forced to defend itself at considerable cost.  *Id.* at 273.

The Lustig Defendants' other authority, *Bakst v. Sawran* (*In re Sawran*), 359

B.R. 348 (Bankr. S.D. Fla. 2007), extended *Cybridge*'s rationale to subsequent

transferees.  There, the debtor's father supported the debtor, and the debtor paid

$20,000.00 to her father from the proceeds of the settlement of a personal injury claim.

When the father's health deteriorated and he could no longer care for the debtor, he

transferred $10,000.00 to his son and daughter-in-law and $10,000.00 to his daughter,

instructing them to pay the debtor's rent and living expenses.  They paid an aggregate of

$12,000.00 to the debtor before the bankruptcy and an additional $8,000.00 after the

bankruptcy.  *Id.* at 350-51.

The trustee sued the father, obtained a $20,000 preference judgment, and sued

the son, the son's wife and the daughter (collectively, the "Defendants") as subsequent

transferees.  Relying on *Cybridge,* the Bankruptcy Court concluded that permitting the

Trustee to recover $20,000.00 from the Defendants after they had returned $12,000.00

to the debtor pre-petition would create a $12,000.00 windfall that violated the single

satisfaction rule under § 550(d).  *Id.* at 353.  The Defendants were also entitled to an

equitable credit under Bankruptcy Code § 105(a).  Granting the equitable credit was

consistent with the Bankruptcy Code because the Defendants restored the debtor to the

financial condition she would have been if the $12,000.00 transfer had never occurred.

*Id.* at 354.  Further, the Defendants accepted the $20,000, not for personal gain, but to

16

take care of the debtor after her father became incapacitated, and disbursed the money to the debtor at the father's request. *Id.*[11]

Assuming that the cases were correctly decided, they are distinguishable. In both cases, the party sued by the trustee had already returned part or all of the initial transfer to the debtor or the estate before the bankruptcy had been commenced or converted. These payments cured the diminution in the value and made the debtor or the estate whole. Moreover, the parties had acted in good faith, and in fact, Presidential had been duped into continuing to collect accounts receivable and advance fresh funds during the chapter 11.

Here, in contrast, the Lustig Defendants did not repay BLMIS, the Funds did and received the credit for those payments. Instead, the Lustig Defendants withdrew their funds, obtained complete dominion and control over the money and were free to use it as they saw fit. No one forced them to invest in Lakeview, and they are in no different economic position than any other customer who withdrew funds from his BLMIS account and invested those funds in a business that failed. In fact, they are in a better position; they have recovered a portion of their losses from Lakeview. (*See Lustig Memo* at 9 n. 2 & 14 n. 4.)[12] Finally, the payments recovered from the Funds under the settlements were for the benefit of all net losers. Granting the Lustig Defendants an

---

[11]    In contrast, the Bankruptcy Court concluded that the Defendants were not entitled to a credit for the $8,000.00 they transferred to the debtor post-petition. The Court did not rely on equity in reaching this conclusion. Instead, it performed a straight statutory analysis mandated by Bankruptcy Code § 550(a)(2), and concluded that the Defendants did not give value to the father in exchange for the subsequent transfer. The Bankruptcy Court did not explain the reason for the different analysis.

[12]    The Lustig Defendants did not say how much they recovered from Lakeview, but stated that they provided the information to the Trustee, and the Trustee states that they received approximately $800,000.00. (*Trustee Reply* at 2.)

17

equitable credit will potentially take money out of the pockets of the net losers and give

it to them.

Accordingly, the Eighth through Eleventh Affirmative Defenses are stricken, and

the Twelfth Affirmative Defense is withdrawn.  Settle order on notice.

Dated:   New York, New York
        June 1, 2017

                         /s/ *Stuart M. Bernstein*
                         STUART M. BERNSTEIN
              United States Bankruptcy Judge

EXHIBIT 7

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No.: 10-04417 (SMB) |
| v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04554 (SMB) |
| v. | |
| DAVID IVAN LUSTIG, | |

1

| Defendant. |
|---|

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT
## STRIKING AFFIRMATIVE DEFENSES

On February 28, 2017, Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities, LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, and the estate of Bernard L. Madoff filed his Motion to Strike Affirmative Defenses ("Motion to Strike") under Federal Rule of Civil Procedure 12(f), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, in Adversary Proceeding 10-04417 (ECF Nos. 74-75) and Adversary Proceeding 10-04554 (ECF Nos. 76-77) (collectively the "Adversary Proceedings") seeking an order striking the Defendants' Lustig Family 1990 Trust ("Lustig Trust") and David Ivan Lustig, individually and as Trustee of the Lusting Trust (collectively, "Defendants") Affirmative Defenses Eight (Court should use equitable powers to dismiss the Trustee's claims), Nine (Court should grant Defendants an equitable credit), Ten (Trustee's claims are barred by the single satisfaction rule under 11.U.S.C. §550(d)), Eleven (Defendants are entitled to a credit under the theory of recoupment), and Twelve (Defendants are entitled to a set-off under 11 U.S.C. § 553).

On March 31, 2017, Defendants filed their Memorandum of Law in Opposition to Trustee's Motion to Strike and the Declaration of Bryan Ha to which Exhibits A-BB were attached (Adv. Pro. No. 10-04417 (ECF No. 76 and 78)  and Adv. Pro. No. 10-04554 (ECF Nos. 79 and 81) ("Opposition").  The Opposition withdrew Defendants' Twelfth Affirmative Defense.

On April 14, 2017, the Trustee filed his Reply in Support of the Trustee's Motion to Strike ("Reply") (Adv. Pro. No. 10-04417 (ECF. No. 79) and Adv. Pro. No. 10-04554 (ECF. No. 82).

On May 2, 2017, a hearing was held before this Court.  At the hearing, because the Defendants submitted a substantial amount of documentary evidence and David Lustig's declaration in opposition to the Motion to Strike, the Court suggested, and the Parties agreed, to treat the Motion to Strike as a motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Motion for Partial Summary Judgment").

The Court issued its Memorandum Decision Granting Partial Summary Judgment Striking Certain Affirmative Defenses on June 1, 2017 ("Decision") holding Defendants' Eighth through Eleventh Affirmative Defenses are stricken and the Twelfth Affirmative Defense is withdrawn (Adv. Pro. No.10-04417 (ECF. No. 82) and Adv. Pro. No.10-04554 (ECF. No. 84).

For the reasons set forth in the Court's Decision, which is incorporated herein and made a part hereof, it is hereby **ORDERED** that:

1.      The Trustee's Motion for Partial Summary Judgment is **GRANTED**; and

2.      Defendants' Affirmative Defenses Eight, Nine, Ten and Eleven are stricken and dismissed as a matter of law, and the Twelfth Affirmative Defense has been withdrawn.

Dated: June 12, 2017
New York, New York

                                        /s/ STUART M. BERNSTEIN
                                        HONORABLE STUART M. BERNSTEIN
                                        UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 8

LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:     212 254 4218
Facsimile:     212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendant David Ivan Lustig*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,                                                      Adv. Pro. No. 08-01789 (SMB)

                     Plaintiff-Applicant,         SIPA LIQUIDATION

          v.                                          (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                     Defendant.
---------------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

                     Debtor.
---------------------------------------------------------------------x
IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                     Plaintiff,              Adv. Pro. No. 10-4554 (SMB)

          v.

DAVID IVAN LUSTIG,

                     Defendant.
---------------------------------------------------------------------x

## NOTICE OF APPEAL AND STATEMENT OF ELECTION[1]

**Part 1: Identify the appellant(s)**

1.        Name(s) of appellant(s):

           David Ivan Lustig

2.        Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject
          of this appeal:

           Defendant

**Part 2: Identify the subject of this appeal**

1.        Describe the judgment, order, or decree appealed from:

           Order Granting Partial Summary Judgment Striking Affirmative Defenses dated
           June 12, 2017, and entered on June 13, 2017 (Dkt. No. 85) (annexed hereto as
           Exhibit A)[2]

2.        State the date on which the judgment, order, or decree was entered:

           June 13, 2017

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names,
addresses and telephone numbers of their attorneys (attach additional pages if necessary):

---

[1]The bankruptcy reference was previously withdrawn with respect to this case for the
purpose of adjudicating certain issues in this Court. This action was assigned to the Honorable
Jed. S. Rakoff upon the withdrawal of the bankruptcy reference. Picard v. Lustig, Docket No. 12
CV 2783 (JSR). Because this action was previously assigned to Judge Rakoff, this appeal and
the accompanying motion for leave to appeal should also be assigned to Judge Rakoff.

[2]A motion for leave to appeal from this order will be filed in connection with this notice
of appeal.

1.    Party:                                    Attorney:

      Irving H. Picard, Trustee for the SIPA    Baker & Hostetler LLP
      Liquidation of Bernard L. Madoff          45 Rockefeller Plaza
      Investment Securities LLC                 New York, New York 10111
                                                Tel: 212-589-4200
                                                David J. Sheehan, Esq.
                                                Nicholas J. Cremona, Esq.
                                                Dean D. Hunt, Esq.

2.    Party:                                    Attorney:

      David Ivan Lustig                         Law Office of Richard E. Signorelli
                                                799 Broadway, Suite 539
                                                New York, New York 10003
                                                Tel: 212-254-4218
                                                Richard E. Signorelli, Esq.
                                                Bryan Ha, Esq.

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

        Appellant(s) elect to have the appeal heard by the United States District Court
        rather than by the Bankruptcy Appellate Panel.

        (This is not applicable here because there is no Bankruptcy Appellate Panel in this

district.).

Dated: New York, New York
      June 26, 2017

                                    Respectfully submitted,

                                    LAW OFFICE OF
                                    RICHARD E. SIGNORELLI

By:   /s/ Richard E. Signorelli
       /s/ Bryan Ha
       _____
       Richard E. Signorelli
       Bryan Ha
       799 Broadway, Suite 539
       New York, NY 10003
       Telephone:   212 254 4218
       Facsimile:    212 254 1396
       rsignorelli@nycLITIGATOR.comSM
       www.nycLITIGATOR.comSM

       Attorneys for Defendant David Ivan Lustig

FILING AND SERVICE VIA ELECTRONIC FILING

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No.: 10-04417 (SMB) |
| v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-04554 (SMB) |
| v. | |
| DAVID IVAN LUSTIG, | |

1

|  | Defendant. |
|---|---|

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT
## STRIKING AFFIRMATIVE DEFENSES

On February 28, 2017, Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities, LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, and the estate of Bernard L. Madoff filed his Motion to Strike Affirmative Defenses ("Motion to Strike") under Federal Rule of Civil Procedure 12(f), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, in Adversary Proceeding 10-04417 (ECF Nos. 74-75) and Adversary Proceeding 10-04554 (ECF Nos. 76-77) (collectively the "Adversary Proceedings") seeking an order striking the Defendants' Lustig Family 1990 Trust ("Lustig Trust") and David Ivan Lustig, individually and as Trustee of the Lusting Trust (collectively, "Defendants") Affirmative Defenses Eight (Court should use equitable powers to dismiss the Trustee's claims), Nine (Court should grant Defendants an equitable credit), Ten (Trustee's claims are barred by the single satisfaction rule under 11.U.S.C. §550(d)), Eleven (Defendants are entitled to a credit under the theory of recoupment), and Twelve (Defendants are entitled to a set-off under 11 U.S.C. § 553).

On March 31, 2017, Defendants filed their Memorandum of Law in Opposition to Trustee's Motion to Strike and the Declaration of Bryan Ha to which Exhibits A-BB were attached (Adv. Pro. No. 10-04417 (ECF No. 76 and 78) and Adv. Pro. No. 10-04554 (ECF Nos. 79 and 81) ("Opposition"). The Opposition withdrew Defendants' Twelfth Affirmative Defense.

On April 14, 2017, the Trustee filed his Reply in Support of the Trustee's Motion to Strike ("Reply") (Adv. Pro. No. 10-04417 (ECF. No. 79) and Adv. Pro. No. 10-04554 (ECF. No. 82).

On May 2, 2017, a hearing was held before this Court.  At the hearing, because the
Defendants submitted a substantial amount of documentary evidence and David Lustig's
declaration in opposition to the Motion to Strike, the Court suggested, and the Parties agreed, to
treat the Motion to Strike as a motion for partial summary judgment under Rule 56 of the Federal
Rules of Civil Procedure ("Motion for Partial Summary Judgment").

The Court issued its Memorandum Decision Granting Partial Summary Judgment
Striking Certain Affirmative Defenses on June 1, 2017 ("Decision") holding Defendants' Eighth
through Eleventh Affirmative Defenses are stricken and the Twelfth Affirmative Defense is
withdrawn (Adv. Pro. No.10-04417 (ECF. No. 82) and Adv. Pro. No.10-04554 (ECF. No. 84).

For the reasons set forth in the Court's Decision, which is incorporated herein and made a
part hereof, it is hereby **ORDERED** that:

1.    The Trustee's Motion for Partial Summary Judgment is **GRANTED**; and

2.    Defendants' Affirmative Defenses Eight, Nine, Ten and Eleven are stricken and
dismissed as a matter of law, and the Twelfth Affirmative Defense has been withdrawn.

Dated: June 12, 2017
New York, New York

/s/ STUART M. BERNSTEIN
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 9

LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendants The Lustig Family*
*1990 Trust and David I. Lustig, individually*
*and in his capacity as Trustee for The Lustig*
*Family 1990 Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,                                                              Adv. Pro. No. 08-01789 (SMB)

                Plaintiff-Applicant,           SIPA LIQUIDATION

       v.                                               (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
-----------------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

                Debtor.
-----------------------------------------------------------------------x
IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,          Adv. Pro. No. 10-4417 (SMB)

                Plaintiff,

       v.

THE LUSTIG FAMILY 1990 TRUST, et al.,

                Defendants.
-----------------------------------------------------------------------x

## NOTICE OF APPEAL AND STATEMENT OF ELECTION[1]

**Part 1: Identify the appellant(s)**

1.      Name(s) of appellant(s):

        The Lustig Family 1990 Trust and David I. Lustig, individually and in his capacity
        as Trustee for The Lustig Family 1990 Trust

2.      Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject
        of this appeal:

        Defendants

**Part 2: Identify the subject of this appeal**

1.      Describe the judgment, order, or decree appealed from:

        Order Granting Partial Summary Judgment Striking Affirmative Defenses dated
        June 12, 2017, and entered on June 13, 2017 (Dkt. No. 83) (annexed hereto as
        Exhibit A)[2]

2.      State the date on which the judgment, order, or decree was entered:

        June 13, 2017

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names,
addresses and telephone numbers of their attorneys (attach additional pages if necessary):

_____

[1] The bankruptcy reference was previously withdrawn with respect to this case for the
purpose of adjudicating certain issues in this Court. This action was assigned to the Honorable
Jed S. Rakoff upon the withdrawal of the bankruptcy reference.  _Picard v. The Lustig Family
1990 Trust, et al._, Docket No. 12 CV 2782 (JSR).  Because this action was previously assigned to
Judge Rakoff, this appeal and the accompanying motion for leave to appeal should also be
assigned to Judge Rakoff.

[2] A motion for leave to appeal from this order will be filed in connection with this notice
of appeal.

1.    Party:                                              Attorney:

      Irving H. Picard, Trustee for the SIPA             Baker & Hostetler LLP
      Liquidation of Bernard L. Madoff                   45 Rockefeller Plaza
      Investment Securities LLC                          New York, New York 10111
                                                         Tel: 212-589-4200
                                                         David J. Sheehan, Esq.
                                                         Nicholas J. Cremona, Esq.
                                                         Dean D. Hunt, Esq.

2.    Party:                                              Attorney:

      The Lustig Family 1990 Trust                       Law Office of Richard E. Signorelli
                                                         799 Broadway, Suite 539
                                                         New York, New York 10003
                                                         Tel: 212-254-4218
                                                         Richard E. Signorelli, Esq.
                                                         Bryan Ha, Esq.

3.    Party:                                              Attorney:

      David I. Lustig                                    Law Office of Richard E. Signorelli
                                                         799 Broadway, Suite 539
                                                         New York, New York 10003
                                                         Tel: 212-254-4218
                                                         Richard E. Signorelli, Esq.
                                                         Bryan Ha, Esq.

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain
districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate
Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the
appeal heard by the United States District Court.  If an appellant filing this notice wishes to have
the appeal heard by the United States District Court, check below.  Do not check the box if the
appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

        Appellant(s) elect to have the appeal heard by the United States District Court
        rather than by the Bankruptcy Appellate Panel.

        (This is not applicable here because there is no Bankruptcy Appellate Panel in this
        district.).

Dated:  New York, New York
       June 26, 2017

                         LAW OFFICE OF
                         RICHARD E. SIGNORELLI

        By:   /s/ Richard E. Signorelli
             /s/ Bryan Ha

             _____
             Richard E. Signorelli
             Bryan Ha
             799 Broadway, Suite 539
             New York, NY 10003
             Telephone:   212 254 4218
             Facsimile:    212 254 1396
             rsignorelli@nycLITIGATOR.com[SM]
             www.nycLITIGATOR.com[SM]

             Attorneys for Defendants The Lustig Family
             1990 Trust and David I. Lustig

FILING AND SERVICE VIA ELECTRONIC FILING

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
|          Plaintiff-Applicant, | SIPA Liquidation |
|       v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | |
|          Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
|          Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
|          Plaintiff, | Adv. Pro. No.: 10-04417 (SMB) |
|      v. | |
| THE LUSTIG FAMILY 1990 TRUST; and DAVID I. LUSTIG, individually and in his capacity as Trustee for The Lustig Family 1990 Trust, | |
|          Defendants. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
|          Plaintiff, | Adv. Pro. No. 10-04554 (SMB) |
|      v. | |
| DAVID IVAN LUSTIG, | |

<div style="text-align: right;">Defendant.</div>

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT
## STRIKING AFFIRMATIVE DEFENSES

On February 28, 2017, Irving H. Picard ("Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities, LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, and the estate of Bernard L. Madoff filed his Motion to Strike Affirmative Defenses ("Motion to Strike") under Federal Rule of Civil Procedure 12(f), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, in Adversary Proceeding 10-04417 (ECF Nos. 74-75) and Adversary Proceeding 10-04554 (ECF Nos. 76-77) (collectively the "Adversary Proceedings") seeking an order striking the Defendants' Lustig Family 1990 Trust ("Lustig Trust") and David Ivan Lustig, individually and as Trustee of the Lusting Trust (collectively, "Defendants") Affirmative Defenses Eight (Court should use equitable powers to dismiss the Trustee's claims), Nine (Court should grant Defendants an equitable credit), Ten (Trustee's claims are barred by the single satisfaction rule under 11.U.S.C. §550(d)), Eleven (Defendants are entitled to a credit under the theory of recoupment), and Twelve (Defendants are entitled to a set-off under 11 U.S.C. § 553).

On March 31, 2017, Defendants filed their Memorandum of Law in Opposition to Trustee's Motion to Strike and the Declaration of Bryan Ha to which Exhibits A-BB were attached (Adv. Pro. No. 10-04417 (ECF No. 76 and 78) and Adv. Pro. No. 10-04554 (ECF Nos. 79 and 81) ("Opposition"). The Opposition withdrew Defendants' Twelfth Affirmative Defense.

On April 14, 2017, the Trustee filed his Reply in Support of the Trustee's Motion to Strike ("Reply") (Adv. Pro. No. 10-04417 (ECF. No. 79) and Adv. Pro. No. 10-04554 (ECF. No. 82).

<div style="text-align: center;">2</div>

On May 2, 2017, a hearing was held before this Court.  At the hearing, because the Defendants submitted a substantial amount of documentary evidence and David Lustig's declaration in opposition to the Motion to Strike, the Court suggested, and the Parties agreed, to treat the Motion to Strike as a motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Motion for Partial Summary Judgment").

The Court issued its Memorandum Decision Granting Partial Summary Judgment Striking Certain Affirmative Defenses on June 1, 2017 ("Decision") holding Defendants' Eighth through Eleventh Affirmative Defenses are stricken and the Twelfth Affirmative Defense is withdrawn (Adv. Pro. No.10-04417 (ECF. No. 82) and Adv. Pro. No.10-04554 (ECF. No. 84).

For the reasons set forth in the Court's Decision, which is incorporated herein and made a part hereof, it is hereby **ORDERED** that:

1.     The Trustee's Motion for Partial Summary Judgment is **GRANTED**; and

2.     Defendants' Affirmative Defenses Eight, Nine, Ten and Eleven are stricken and dismissed as a matter of law, and the Twelfth Affirmative Defense has been withdrawn.

Dated: June 12, 2017
New York, New York

/s/ STUART M. BERNSTEIN
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE