# EXHIBIT 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff

          v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                 Defendant.

-------------------------------------------------------x

In re:

MADOFF SECURITIES

-------------------------------------------------------x

No.  12-mc-00115 (JSR)

ECF Case

Electronically filed

# CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF
## THE EXTRATERRITORIAL DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page(s)**

ARGUMENT ..................................................................................................................1

I.   THE PROVISIONS ON WHICH THE TRUSTEE MUST RELY TO RECOVER
     THE SUBSEQUENT TRANSFERS DO NOT APPLY EXTRATERRITORIALLY........2

     A.   Section 78fff-2(c)(3) of SIPA Does Not Have Extraterritorial Application............2

     B.   The Bankruptcy Code's Avoidance and Recovery Provisions Do Not Have
          Extraterritorial Application. ......................................................................................4

II.  *MORRISON* CONFIRMS THAT THE TRUSTEE'S CLAIMS ARE
     EXTRATERRITORIAL. .................................................................................................7

     A.   The Focus of the Relevant Statutes is the Transfers. ...............................................7

     B.   The Focus of the Relevant Statutes is Not "Domestic Debtors." ..........................10

     C.   The Subsequent Transfers At Issue Here Were Extraterritorial. ...........................12

III. IN THE ALTERNATIVE, THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED
     ON GROUNDS OF COMITY......................................................................................14

IV.  DISMISSAL OF THE EXTRATERRITORIAL DEFENDANTS WOULD NOT BE
     "ABSURD" OR "PREMATURE." ..............................................................................17

CONCLUSION.............................................................................................................20

Case 1:12-mc-00115-JSR Document 322 Filed 08/30/12 Page 39 of 53

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Absolute Activist Value Master Fund v. Ficeto,*
   677 F.3d 60 (2d Cir. 2012)....................................................................2, 13, 19

*American Banana Co. v. United Fruit Co.,*
   213 U.S. 347 (1909)....................................................................................8

*Begier v. IRS,*
   496 U.S. 53 (1990)..........................................................................4, 5, 6, 10

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690 (1962)....................................................................................8

*EEOC v. Arabian Am. Oil Co.,*
   499 U.S. 244 (1991)............................................................................ passim

*FDIC v. Hirsch (In re Colonial Realty Co.),*
   980 F.2d 125 (2d Cir. 1992)........................................................................4

*French v. Liebmann (In re French),*
   440 F.3d 145 (4th Cir. 2006) ..............................................................5, 6, 18

*Hartford Fire Ins. Co. v. California,*
   509 U.S. 764 (1993) .................................................................................15

*Hill v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.),*
   83 B.R. 880 (D.N.J. 1988) ..........................................................................3

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.),*
   408 F.3d 689 .............................................................................................18

*In re Fairfield Sentry Ltd. Litig.,*
   458 B.R. 665 (S.D.N.Y. 2011) ...................................................................15

*Keene Corp. v. United States,*
   508 U.S. 200 (1993).....................................................................................7

*Kriegman v. Cooper (In re LLS Americas, LLC),*
   No. 11-80093-PCW11, 2012 Bankr. LEXIS 3026 (Bankr. E.D. Wa. July 2, 2012) ..............14

*Loving v. Princess Cruise Lines, Ltd.,*
   No. CV 08-2898, 2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ...........................11

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

*Maxwell Communication Corp. v. Barclays Bank PLC (In re Maxwell Communication Corp.),*
170 B.R. 800 (Bankr. S.D.N.Y. 1994) .......................................................................... passim

*Maxwell Communication Corp. v. Société Generale PLC (In re Maxwell Communication Corp.),*
186 B.R. 807 (S.D.N.Y. 1995) ..................................................................................... passim

*Maxwell Communication Corp. v. Société Generale PLC (In re Maxwell Communication Corp.),*
93 F.3d 1036 (2d Cir. 1996) ................................................................................1, 14, 15, 16

*Morrison v. Nat'l Austl. Bank,*
130 S. Ct. 2869 (2010) .................................................................................................. passim

*Picard v. Katz,*
466 B.R. 208 (S.D.N.Y. 2012) ...................................................................................................17

*Russello v. United States,*
464 U.S. 16 (1983) ........................................................................................................................7

*SEC v. Gruss,*
No. 11-Civ-2420, 2012 U.S. Dist. LEXIS 66052 (S.D.N.Y. May 9, 2012) ..........................12

*SEC v. ICP Asset Mgmt.,*
No. 10-Civ-4791, 2012 U.S. Dist. LEXIS 86561 (S.D.N.Y. Jun. 21, 2012) .........................12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff),*
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ..................................................................................19

## CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

11 U.S.C. § 109 ..............................................................................................................9, 10

11 U.S.C. § 541 ............................................................................................................ passim

11 U.S.C. § 544 ......................................................................................................................8

11 U.S.C. § 545 ......................................................................................................................8

11 U.S.C. § 546 ......................................................................................................................8

11 U.S.C. § 547 ...................................................................................................................3, 7

## TABLE OF AUTHORITIES

*(continued)*

Page(s)

11 U.S.C. § 548 ...................................................................................................3, 6, 7

11 U.S.C. § 549 .....................................................................................................3, 4

11 U.S.C. § 550 ................................................................................................. passim

11 U.S.C. § 1505 ............................................................................................... 17, 18

15 U.S.C. § 78aa .................................................................................................... 11

15 U.S.C. § 78bbb .................................................................................................. 11

15 U.S.C. § 78ccc .................................................................................................. 10

15 U.S.C. § 78eee .............................................................................................. 3, 10

15 U.S.C. § 78f ...................................................................................................... 11

15 U.S.C. § 78fff ............................................................................................... passim

15 U.S.C. § 78j ................................................................................................. passim

15 U.S.C. § 78*lll* ................................................................................................... 10

15 U.S.C. § 78o ................................................................................................ 10, 11

28 U.S.C. § 1334 ................................................................................................. 3, 4


**OTHER AUTHORITIES**

5 *Collier on Bankruptcy* (16th ed. 2012) .................................................................6, 7

*Restatement (Third) of Foreign Relations Law of the United States* § 403(2) (1987)............ 15-16

## ARGUMENT

The memoranda of the Trustee and SIPC ("Respondents") in opposition to the motion fail to overcome the Extraterritorial Defendants' showing that the relevant provisions of the Bankruptcy Code and SIPA do not have extraterritorial application. The Respondents concede that the Trustee's claims depend on the application of SIPA section 78fff-2(c)(3) in addition to the Bankruptcy Code provisions. (Tr. Mem. 10-11; SIPC Mem. 2-3.) Thus, the claims at issue here are precluded by *Morrison*'s presumption against extraterritoriality, as applied separately to both the Code and SIPA. Moreover, that result follows separately from SIPA's language reflecting an affirmative intent to limit section 78fff-2(c)(3) to domestic transactions.

Perhaps recognizing this, Respondents rely primarily on arguments that the Trustee's claims do not actually involve extraterritorial application of the provisions, but those arguments are based on two fundamental mischaracterizations. First, they misinterpret the focus of the relevant statutes, which is the transfers that are allegedly subject to avoidance and recovery, not "domestic debtors." Second, they argue as if the transfers the Trustee seeks to recover were transfers by BLMIS, not the wholly foreign subsequent transfers that are the subject of this motion. (Tr. Mem. 1, 3, 4, 17.) As explained in our Opening Consolidated Memorandum ("Def. Mem."), "[t]he Extraterritorial Defendants are foreign persons and entities, virtually all of whom (or which) are alleged to be immediate or mediate transferees of alleged initial transferees of what was customer property in the hands of BLMIS." (Def. Mem. 3.)[1] The Extraterritorial Defendants did not receive the transfers from BLMIS that the Respondents argue are domestic.

---

[1] An initial transfer would not be subject to the provisions on which the Trustee relies if it occurred outside the United States. *See Maxwell Communication Corp. v. Barclays Bank PLC (In re Maxwell Communication Corp.)*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd on other grounds*, 93 F.3d 1036 (2d Cir. 1996). However, the moving defendants only seek dismissal of claims to recover subsequent transfers between foreign parties.

Rather, as in *Morrison*, the subsequent transfers at issue here are foreign transactions among foreign parties.

The Second Circuit has made clear that a party asserting a claim pursuant to a statute that does not apply outside the United States has the burden of pleading facts showing that his claim is domestic. *Absolute Activist Value Master Fund v. Ficeto*, 677 F.3d 60, 69-70 (2d Cir. 2012). The Trustee has made no pretense of satisfying this requirement in his claims against the Extraterritorial Defendants, and those claims should be dismissed.

**I.    THE PROVISIONS ON WHICH THE TRUSTEE MUST RELY TO RECOVER THE SUBSEQUENT TRANSFERS DO NOT APPLY EXTRATERRITORIALLY.**

**A.    Section 78fff-2(c)(3) of SIPA Does Not Have Extraterritorial Application.**

There is no merit to Respondents' contention that SIPA section 78fff-2(c)(3) has extraterritorial effect because it "incorporates" the Bankruptcy Code's Avoidance and Recovery Provisions, which in their view "incorporate" 11 U.S.C. § 541.  (Tr. Mem. 3-4, 23-24; SIPC Mem. 11-12.)  This is not the case because, as discussed in the Opening Memorandum and pages 4-7 below, the Bankruptcy Code Avoidance and Recovery Provisions do not themselves have extraterritorial application.  In addition, there is nothing in section 78fff-2(c)(3) to overcome the presumption that it lacks extraterritorial effect, and its reference to "the laws of any State" confirms that this section is intended to apply to transactions in the United States.  (*See* Def. Mem. 18.)

The Trustee's response that this provision relates only to preference claims (*see* Tr. Mem. 24 n.25) is unsupported and wrong.  Section 78fff-2(c)(3)'s legal fiction is as essential to the Trustee's fraudulent transfer claims as it is to his preference claims because a SIPA trustee

2

cannot avoid a transfer under either theory unless it is deemed a transfer of "an interest of the

debtor in property." *See* 11 U.S.C. §§ 547(b), 548(a)(1).[2]

Nor does *Hill v. Spencer Savings & Loan Association (In re Bevill, Bresler & Schulman,*

*Inc.)*, 83 B.R. 880 (D.N.J. 1988), support the Trustee's position. As mentioned in our Opening

Memorandum (at 18 n.16), but wholly ignored by Respondents, that pre-*Morrison* and pre-

*Arabian American Oil* case was based on the explicit understanding that section 10(b) applies

extraterritorially. *See In re Bevill*, 83 B.R. at 896 ("Extraterritorial application of SIPA is also

consistent with the extraterritorial application of other federal securities laws."). In the wake of

*Morrison's* contrary holding, the analysis in *Bevill* supports the conclusion that SIPA has no

extraterritorial effect, "consistent with" the lack of extraterritorial application of section 10(b).

*Bevill* provides no support for the Trustee's position for the additional reason that the

challenged transfers in that case were made by a domestic broker-dealer to domestic savings and

loan associations. *See* 83 B.R. at 883 & n.1. Those transfers would be self-evidently domestic

as a matter of common sense and under the test adopted by the Second Circuit in *Absolute*

*Activist*, because the obligations to make the transfers arose here, and no extraterritorial

application of SIPA or the Bankruptcy Code was required.[3]

---

[2] Respondents' invocation of section 78eee(b)(2)(A)(i) does nothing to suggest an intention to give extraterritorial application to section 78fff-2(c)(3). (Tr. Mem. 23; SIPC Mem. 11-12.) Section 78eee(b)(2)(A)(i) simply provides that upon the filing of an application for a protective decree with respect to a debtor, the court "shall have exclusive jurisdiction of such debtor and its property, wherever located." It corresponds to 28 U.S.C. § 1334(c), in the jurisdictional provision for ordinary bankruptcy cases, and no more manifests an intention to give section 78fff-2(c)(3) extraterritorial effect than section 1334 does with respect to the Avoidance and Recovery Provisions. *See Maxwell*, 186 B.R. at 817-18.

[3] Moreover, the transfer was avoided under section 549 of the Bankruptcy Code, which is irrelevant here. Section 549 provides for avoidance of a transfer of "property of the estate" that occurs "after the commencement of the case" and is not authorized by either the Bankruptcy Code or the court. *Bevill* involved a post-petition transfer of property in London which was

**B.** **The Bankruptcy Code's Avoidance and Recovery Provisions Do Not Have Extraterritorial Application.**

Respondents argue that because section 541 defines the "property of the estate" that is created upon the commencement of a bankruptcy case to include property "wherever located and by whomever held," this somehow gives the Avoidance and Recovery Provisions extraterritorial scope because they refer to pre-bankruptcy transfers of "an interest of the debtor in property." (Tr. Mem. 19-20.) The Bankruptcy Court rejected this argument in *Maxwell*:

> [P]roperty which has been preferentially transferred does not become property of the estate until recovered. *In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2d Cir. 1992). . . . Thus, the fact that the estate is defined to include property overseas does not mean that property which never became property of the estate is subject to recapture through the extraterritorial use of section 547.

170 B.R. 800, 811 (Bankr. S.D.N.Y. 1994). On appeal, this Court agreed. *Maxwell*, 186 B.R. at 819-20. In addition, the Court noted that "broad, boilerplate language . . . is insufficient to overcome the presumption against extraterritoriality," and "any ambiguity in the statute must be resolved in favor of refusing to apply the law to events occurring outside U.S. territory." *Id.* at 818-19 (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 251(1991)). This same principle was reaffirmed in *Morrison*.

The Trustee is mistaken in asserting that *Begier v. IRS*, 496 U.S. 53 (1990), held that "Section 541 of the Code was expressly incorporated into Section 547 of the Code . . . ." (Tr. Mem. 20.) *Begier* never uses the word "incorporate," much less "expressly incorporate."

---

already "property of the estate." It was therefore important that section 549 reached "property of the estate" and the post-petition transfers implicated the Bankruptcy Court's "exclusive jurisdiction" of the debtor's property "wherever located," 28 U.S.C. § 1334. Here, the "estate" did not come into existence until after the property was transferred, the property had never been subject to the Bankruptcy Court's jurisdiction, and the transfers occurred outside the United States. Section 549 and *Bevill* are simply irrelevant.

Rather, in considering a purely *domestic* transfer, the Supreme Court used section 541's enumeration of property of the estate "for guidance" to determine whether cash held subject to a statutory trust was property of the debtor *before* it was transferred. *Id*. at 58-59. The Court took account of the fact that the cash held in trust would not have been property of the estate, pursuant to section 541's exclusion of equitable interests in property to which the debtor had only bare legal title, in holding that the trust funds were not property of the debtor before they were transferred to the IRS. The decision had nothing to do with extraterritoriality, and the words in section 541 on which the Trustee's argument is based, "wherever located," are never referred to in *Begier*.

Respondents also rely on *French v. Liebmann (In re French)*, 440 F.3d 145 (4th Cir. 2006), to argue that section 541 is incorporated into the Avoidance and Recovery Provisions. However, that case—which predates *Morrison*—clearly does not support the application of the Avoidance and Recovery Provisions to foreign transfers between foreign parties. In *French*, the Fourth Circuit permitted a trustee to use section 548 to recover property in the Bahamas for which the deed was transferred by an American mother to her American children "at a Christmas party held in Maryland," and observed that "from the outset both sides have treated § 548's reach as extraterritorial." *Id*. at 148, 150-51. The court based its conclusion on the fact that "[m]ost of the activity surrounding th[e] transfer took place in the United States [and] almost all of the parties with an interest in this litigation . . . are based in the United States, and have been for years." *Id*. at 154.

There is likewise no merit to SIPC's argument, based on *Begier* and *French*, that "during the pendency of the action," "Congress intended that property sought by the trustee through an avoidance or recovery action have the status of property of the estate for purpose of that action

5

only." (SIPC Mem. 17.)  The only issue discussed in *Begier* concerning the status of the property the trustee sought to recover was whether it was property of the debtor *before it was transferred*, and the Court never suggested that it had any special status "during the pendency of the action."  *French*, likewise, concluded that section 548 allows a trustee to recover property that would have been property of the estate prior to the transfer "even if that property is not 'property of the estate' *now*."  440 F.3d at 151 (emphasis in original).  In any event, any argument that transferred property remains the debtor's "property" would not establish that a transfer of such property outside the United States is subject to recovery under the Avoidance and Recovery Provisions.

Finally, there is no merit to the Trustee's argument that section 541(a)(3), which provides that the estate includes "[a]ny interest in property the trustee recovers under" section 550, would be "render[ed a] nullity" unless "Section 550 applies extraterritorially." (Tr. Mem. 22.)  The fact that a lengthy enumeration of property of the debtor, "wherever located," includes property actually recovered pursuant to the Avoidance and Recovery Provisions gives no guidance whatsoever concerning what property may be so recovered or the reach of the statutory provisions on which Respondents rely.

In contrast with section 541(a), which provides that the commencement of a case under the Code may create an "estate . . . comprised of [certain] property . . . *wherever located*," the Avoidance and Recovery Provisions do not contain any such language.[4]  This intentional

---

[4] The Trustee also argues that section 541 cannot be contrasted with the Avoidance and Recovery Provisions because, in his view, "these provisions work together as a cohesive whole to replenish a debtor's estate." (Tr. Mem. 21 n.24.)  These provisions cannot be lumped together simply because they appear in the same chapter of title 11.  Rather, section 541 has the particular purpose of "creat[ing] the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court." 5 *Collier on Bankruptcy* ¶ 541.01 (16th ed.

omission[5] must be respected.  *See*, *e.g.*, *Keene Corp. v. U.S.*, 508 U.S. 200, 208 (1993) (noting

that "where Congress includes particular language in one section of a statute but omits it in

another . . . , it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

## II.   *MORRISON* CONFIRMS THAT THE TRUSTEE'S CLAIMS ARE EXTRATERRITORIAL.

Because the Avoidance and Recovery Provisions are plainly "focused" on the transfers

that the Trustee seeks to recover, *Morrison* confirms that the Trustee's attempt to recover foreign

transfers that were made by foreign entities to other foreign entities, in foreign jurisdictions and

subject to foreign law, would violate the presumption against extraterritoriality.

### A.   The Focus of the Relevant Statutes is the Transfers.

The Supreme Court's admonition in *Morrison* to consider the "focus" of a statute in

determining whether a given application of the statute would be extraterritorial reflects the same

considerations that underlie the presumption against extraterritoriality.  The presumption "rests

on the perception that Congress ordinarily legislates with respect to domestic, not foreign

matters."  130 S. Ct. at 2877.  Accordingly, the legislative "focus" relevant to the presumption

---

2012).  On the other hand, Avoidance and Recovery Provisions such as section 548 harken back
to common law principles that long predate the Code and are "an elemental and ancient part of
debtor-creditor relations."  *Id.* ¶ 548.01 (emphasis added).

[5] The fact that the omission is intentional is confirmed by the legislative history cited by
the Trustee (Tr. Mem. 20 n.23), which undercuts rather than supports his argument.  The Trustee
points out that in 1984 sections 547 and 548 were amended by replacing the phrase "property of
the debtor" with "interest of the debtor in property," and notes that as a result "the language of
Sections 547 and 548 now mirrored the Section 541 language."  (Tr. Mem. 20 n.23.)  If this has
any significance for this motion, it is surely that when Congress transplanted the phrase "interest
of the debtor in property" to the avoidance provisions it must have focused on, and apparently
chose not to transplant, the words "wherever located" that immediately follow this phrase in
section 541.

against extraterritoriality is the conduct or transaction to which the statute attaches legal consequences.

In an early case recognizing the presumption against extraterritoriality, Justice Holmes wrote, "The general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done." *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 356 (1909), *abrogated by Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 704-05 (1962); *see also Maxwell*, 170 B.R. at 809 (citing *American Banana*, 213 U.S. at 356). In *Arabian American Oil*, the Court held that Title VII does not apply to an employment relationship overseas even though the plaintiff and defendant were both United States domiciliaries and the plaintiff was hired in the United States. 499 U.S. at 256. In *Morrison*, the Court held that the "focus" of section 10(b) of the Exchange Act was the transactions that Congress sought to regulate. 130 S. Ct. at 2884. *Morrison* expressly rejected the argument that the occurrence of "significant conduct" in the United States can overcome the presumption against extraterritoriality. *Id.* at 2886.

It should not be controversial that the focus of the Avoidance and Recovery Provisions is in fact the transfers that they might subject to avoidance and recovery. The Avoidance and Recovery Provisions provide that transfers are subject to avoidance or recovery based on factors centered on the transfers themselves. Sections 544-545 and 547-548 provide that a bankruptcy trustee may avoid transfers that have certain characteristics, subject to various defenses relating to other characteristics of those transfers: Their timing, purpose, effect on the transferor and transferee, and so on. Section 546 prescribes various limitations on the Trustee's avoidance powers based on the nature of the transfers. Section 550(a)(2), the specific provision governing the Trustee's claims against the Extraterritorial Defendants, authorizes recovery of property to

the extent its initial transfer has been avoided, pursuant to the avoidance provisions just described, but subject to additional defenses specific to the subsequent transfer, relating to value and good faith.

SIPA section 78fff-2(c)(3) also focuses on transfers, and provides a trustee with standing to avoid transfers. It provides that property that would have been customer property before it was transferred shall be deemed to have been property of the debtor, and that the customer that received such property shall be deemed to have been a creditor, notwithstanding "the law of any State to the contrary."

*Maxwell*, although predating *Morrison*, recognized that the location of the transfers determined whether application of the Avoidance and Recovery Provisions would violate the presumption against extraterritoriality. The Bankruptcy Court refused to apply section 547 to foreign transfers because, among other things, "the antecedent debts were incurred overseas, the transfers on account of those debts were made overseas, and the recipients. . . [are] all foreigners." *Maxwell*, 186 B.R. at 815. This Court affirmed that decision even though (i) Maxwell Communication had filed a chapter 11 proceeding in the United States, and was therefore a debtor in possession under the Bankruptcy Code, and (ii) the challenged transfers "consist[ed] of proceeds from the sale of U.S. assets." *Id*. at 813.[6] While the foreign company

---

[6] The Trustee asserts that *Maxwell* "could not take place in the current bankruptcy landscape precisely because Congress has anticipated the problem of differing insolvency laws across multiple jurisdictions" by establishing chapter 15. (Tr. Mem. 15 n.15.) The Trustee's assertion is based on its incorrect belief that "*Maxwell* was conducted pursuant to section 304 of the Bankruptcy Code, which has been superseded by chapter 15." In fact, Maxwell Communications had filed a case under chapter 11, prior to commencing an insolvency proceeding in England. *Maxwell*, 186 B.R. at 813; 11 U.S.C. § 109(a) (permitting a foreigner to be a "debtor" under the Bankruptcy Code if it has "property in the United States"). Because Maxwell Communications was a debtor under chapter 11, *Maxwell* clearly *could* "take place in the current bankruptcy landscape."

that was the debtor in *Maxwell* could have used the Avoidance and Recovery Provisions to recover transfers that occurred *in* the United States, it could not use those same provisions to recover transfers that occurred *outside* of the United States. *Maxwell*, 170 B.R. at 812.

**B. The Focus of the Relevant Statutes is Not "Domestic Debtors."**

There is no merit to the Trustee's and SIPC's argument that the focus of the Avoidance and Recovery Provisions is "domestic debtors" because the "Bankruptcy Code seeks to protect domestic debtors and their creditors." (Tr. Mem. 8-9; SIPC Mem. 9-10.) Putting aside the fact that the Bankruptcy Code and SIPA do not distinguish between "domestic debtors" and foreign debtors with assets in the United States, *see* 11 U.S.C. § 109,[7] the Trustee is mistaken in asserting that the focus of the Avoidance and Recovery Provisions is the debtor.

To be sure, there are other provisions of the Bankruptcy Code that focus on the administration of the debtor *post-petition*. This, however, does not mean that the debtor is the "focus" of every provision of the Code, including the Avoidance and Recovery Provisions. In determining that the "focus" of section 10(b) of the Exchange Act is purchases and sales of securities in the United States, *Morrison* did not require courts to identify a single "focus" for all

---

[7] Because a foreigner with assets in the United States may commence a plenary case under the Bankruptcy Code, 11 U.S.C. §109(a), the Trustee's argument that the Bankruptcy Code and SIPA are focused on "domestic" debtors and broker-dealers is baseless. Although the Trustee misleadingly implies that *Begier* held that the "object of the avoidance and recovery provisions . . . [is] to restore property to domestic debtors' estates for distribution to creditors" (Tr. Mem. 9), *Begier* says *nothing* about "domestic" estates; rather, it simply notes that the basic purpose of the Bankruptcy Code is "to preserve the property" that could be included in "the bankruptcy estate"—without noting where that estate is located. *Begier*, 496 U.S. at 58. In addition, SIPA's liquidation provisions generally apply to any SIPC member, and, as a general matter, any broker dealer with customer accounts in the United States must be a SIPC member. *See* 15 U.S.C. § 78eee(a)(3); 15 U.S.C. § 78*lll*(5) (defining debtor under SIPA liquidation provisions as member of SIPC "with respect to whom an application for a protective decree has been filed under [section 78eee(a)(3)]");15 U.S.C. § 78o(b), 15 U.S.C. § 78ccc(a)(2) (requirement for SIPC membership).

the provisions that Congress codifies as a single "Act" or "Code."  *Morrison*, 130 S. Ct. at 2884.

The Court gave no indication that *Morrison*'s conclusion concerning the focus of section 10(b)

and other provisions regulating securities transactions would apply, for example, to the

provisions regulating securities exchanges for which the act is named, *see* 15 U.S.C. § 78f, or its

provisions regulating broker-dealers, *see* 15 U.S.C. § 78o.[8]  As reflected in the cases cited by the

Trustee concerning the application of the Investment Advisers Act, discussed below, the focus of

a statute designed to regulate a particular type of business is the business itself.  SIPC and

Trustee recognize that "[SIPA] and the Exchange Act are different acts with different purposes"

(Tr. Mem. 11) even though SIPA was enacted as an amendment to, and is codified as part of, the

Exchange Act, *see* 15 U.S.C. § 78bbb.

The Trustee's argument that the Avoidance and Recovery Provisions are focused on the

debtor is flatly inconsistent with *Morrison, Arabian American Oil*, and the plain language of the

Bankruptcy Code.  The notion that the focus of a statute is the person to be protected was

implicitly rejected by the Supreme Court in *Arabian American Oil*.  *See also Loving v. Princess*

*Cruise Lines, Ltd.*, No. CV 08-2898, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009)

(dismissing claims of Texas residents brought under Title III of the Americans with Disabilities

Act as statute "does not apply extraterritorially" to require adequate accommodations at foreign

ports).  *Morrison* did not state that the "focus" of a section 10(b) claim was United States

investors; rather, the focus was on the *transaction* underlying the claim.  *Morrison*, 130 S. Ct. at

2884.

---

[8] Section 27 of the Exchange Act, as amended subsequent to *Morrison*, likewise has an entirely different focus:  "Conduct occurring outside the United States that has a foreseeable substantial effect within the United States."  15 U.S.C. § 78aa(b)(2).

Two decisions cited by Respondents concerning the Investment Advisers Act (the "IAA") are irrelevant. As these cases state, the IAA seeks to regulate and "to prevent fraudulent practices by investment advisers." *SEC v. Gruss*, No. 11-Civ-2420, 2012 U.S. Dist. LEXIS 66052, at *22 (S.D.N.Y. May 9, 2012) (citation omitted); *SEC v. ICP Asset Mgmt.*, No. 10-Civ-4791, 2012 U.S. Dist. LEXIS 86561, at *8-9 (S.D.N.Y. Jun. 21, 2012). Because the IAA seeks to regulate conduct by investment advisors in the United States, it is not surprising that the "focus of the IAA is clearly on the investment adviser and its actions." *Gruss*, 2012 U.S. Dist. LEXIS 66052, at *23. However, the Avoidance and Recovery Provisions do not seek to "regulate" the debtor or any other party.

## C. The Subsequent Transfers At Issue Here Were Extraterritorial.

Respondents pretend that the transfers at issue here are from BLMIS. (Tr. Mem. 1, 3-4, 17; SIPC Mem. 2-3, 9-10.) They are not. The Trustee is asserting claims to recover subsequent foreign transfers. It is those claims that the defendants have moved to dismiss. *See supra* at 1 n.1.

Because claims seeking to *recover* subsequent transfers under section 550 are separate from claims to *avoid* transfers, but depend on the successful assertion of an avoidance claim, the Trustee may only recover the transfers to the Extraterritorial Defendants if he shows that both his avoidance claim and his claim under 11 U.S.C. § 550(a)(2) are "domestic" claims. In other words, even if the Trustee could avoid an initial transfer because the initial transfer is domestic, he would still need to plead facts showing that a subsequent transfer to an Extraterritorial Defendant is also a domestic transaction. Finally, because he can only recover "customer property" by invoking section 78fff-2(c)(3), he must show that his claim involves a domestic application of that provision.

12

The Trustee's own allegations against the Extraterritorial Defendants establish that the subsequent transfers he seeks to recover under 11 U.S.C. § 550(a)(2) are extraterritorial transactions.  Shortly after *Morrison* was decided, the Second Circuit held that a transaction in a security that is not traded on a domestic exchange is "domestic" only "when the parties *incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States*."  *Absolute Activist*, 677 F.3d at 69 (emphasis added).  The Second Circuit made clear that the plaintiff has the burden of alleging specific facts showing that the transaction that is the subject of a claim under section 10(b) is domestic.  *Id*. at 69-70.  "The mere assertion that transactions 'took place in the United States' is insufficient to adequately plead the existence of domestic transactions."  *Id*. at 70.  Because the allegations against the Extraterritorial Defendants show that the transfers which the Trustee seeks to recover were made by foreign parties to foreign defendants abroad, he has not only failed to meet this burden but has affirmatively shown that he cannot do so.[9]

*Morrison* specifically forecloses the Trustee's argument that his claims are domestic because the initial fraudulent transfers were made in "furtherance of a Ponzi scheme BLMIS conducted out of its New York offices."  (Tr. Mem. 17.)  This is no different from the argument that the Supreme Court rejected in *Morrison* when it held that section 10(b) does not apply to foreign transactions simply because "significant conduct" occurred in the United States and this conduct was "material to the fraud's success."  130 S. Ct. at 2886.  In reaching this conclusion, the Court rejected the reasoning of the district and circuit courts, which held that section 10(b) did not apply because the acts performed in the United States did not "compris[e] the heart of the

---

[9] Defendants' Opening Consolidated Memorandum explained why the Trustee cannot plausibly assert that the transfers are domestic because dollars were transferred through correspondent banks in the United States, and Respondents have not made such an assertion

alleged fraud." *Id.* at 2876. The fact that the transfers that the Trustee seeks to recover may have involved money transferred from New York does not convert extraterritorial claims into domestic ones. In *Maxwell*, this Court held that section 547 did not apply to transfers in England even though the transferred money was proceeds of sales of assets in the United States. 186 B.R. at 817.[10]

## III. IN THE ALTERNATIVE, THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED ON GROUNDS OF COMITY

Wholly apart from the fact that the statutes on which the Trustee relies do not apply to the extraterritorial transfers he seeks to recover, his claims against the Extraterritorial Defendants must be dismissed on separate and independent grounds of international comity.

Relying on *Maxwell*, the Trustee incorrectly concludes that there is no conflict here between domestic and foreign law, because there is no foreign liquidation proceeding regarding BLMIS. (Tr. Mem. 15 n.16.) In *Maxwell*, the Court of Appeals held that there was a true conflict because the debtor's assets could not be distributed in a manner consistent with the rules of both jurisdictions. 93 F.3d at 1050. The only difference in how the debtor's assets would have been distributed in *Maxwell* depending on whether United States or English law governed the debtor's preference claims arose from the difference in the likelihood of success of those claims under the different legal regimes. This is precisely the situation here.

---

[10] The Trustee's assertion that after *Morrison* "some courts continue to apply a 'center of gravity' analysis to determine the nature of the claims at issue" (Tr. Mem. 17) is not supported by the only decision cited by the Trustee, *Kriegman v. Cooper* (*In re LLS Americas, LLC*), No. 11-80093-PCW11, 2012 Bankr. LEXIS 3026 (Bankr. E.D. Wa. July 2, 2012). *LLS* did not mention *Morrison* and, instead, engaged in a traditional choice of law analysis that is beside the point if the statute does not apply to the conduct in question under *Morrison*. *Id.* at *24-30. The parties did not mention *Morrison* in the papers submitted in connection with the motion, and there is no reason to suppose that the court considered it. *See* Dkt. No. 59 (Feb. 8, 2012); Dkt. No. 63 (Feb. 14, 2012); Dkt. No. 95 (Apr. 20, 2012); Dkt. No. 97 (Apr. 25, 2012); Dkt. No. 101 (Apr. 25, 2012).

The transfers that the Trustee seeks to recover from the Extraterritorial Defendants were made in foreign jurisdictions and were subject to foreign laws governing their validity. The recipients of the transfers are entitled to rely on the law of their own countries to determine the validity and finality of those transfers. As illustrated by the decision in the Fairfield liquidation discussed in the next paragraph, foreign law is unlikely to require a foreigner to forfeit money it received from a foreign hedge fund because a transfer to the hedge fund was voidable under United States law. A clear conflict between U.S. and foreign law would thus exist if this Court were to construe the relevant statutes to apply outside the United States. *Id.* at 1050.

The conflict is particularly acute in this case because the Fairfield Funds and other foreign investment funds that were the initial transferees of BLMIS's transfers are undergoing or could become subject to court-supervised liquidation proceedings in foreign jurisdictions, and the foreign liquidators may themselves seek separately to recover redemption payments made by these funds to their investors. *See, e.g., In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 671-72 (S.D.N.Y. 2011). A court in the British Virgin Islands has already determined that, under its common law, the Fairfield liquidator may not recover such transfers from Fairfield customers. (Def. Mem. 11-12.) Thus, the Trustee is seeking to recover, by exporting U.S. law, the same transfers that the Fairfield liquidator may not recover under BVI law. The conflict could hardly be clearer. *Maxwell*, 93 F.3d at 1050.

In conducting a comity analysis, the court must consider the interests of the United States and the foreign state and determine whether application of U.S. law would be reasonable under the circumstances. *See Maxwell*, 93 F.3d at 1051-1052; *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 797-98 (1993). The Second Circuit's comity analysis in *Maxwell* took account of the factors listed in section 403(2) of the *Restatement (Third) of Foreign Relations Law of the United*

15

*States* (1987).[11]  *See* 93 F.3d at 1048.  Applying those factors compels the conclusion that it

would be inappropriate to apply the Bankruptcy Code and SIPA to these foreign transfers.[12]  The

subsequent transfers that the Trustee seeks to recover took place outside of the United States,

between foreign entities.  Given the location of the transfers and the nationalities of the parties,

the relevant foreign jurisdictions have much closer connections to the transfers at issue, and a

greater interest in regulating the transfers, many of which were in response to foreign

redemptions by foreign investors of shares in foreign investment funds.  In addition, the parties

to the transfers had a reasonable expectation that foreign law would apply.  *See id.* at 1052.  With

respect to those foreign funds in liquidation, the relevant foreign jurisdictions have a strong

interest in applying their own law to the transfers as part of the liquidation proceedings.  The

same is true of foreign service providers, regulated under the laws of other nations, that received

fees or other compensation from foreign investment funds.  The only arguable "connection"

between these transfers and the United States is the Trustee's allegation that they originated with

---

[11] The Second Circuit summarized these factors as follows:

Whether so legislating would be "unreasonable" is determined "by evaluating all
relevant factors, including, where appropriate," such factors as the link between
the regulating state and the relevant activity, the connection between that state and
the person responsible for the activity (or protected by the regulation), the nature
of the regulated activity and its importance to the regulating state, the effect of the
regulation on justified expectations, the significance of the regulation to the
international system, the extent of other states' interests, and the likelihood of
conflict with other states' regulations.

93 F.3d at 1048.

[12] SIPC performs a misdirected comity analysis and concludes that, because BLMIS, its
principals, and most of its customers and creditors were located in the United States, the United
States has a closer connection to these actions and its law should therefore apply.  (SIPC Mem. at
23-25.)  A comity analysis that is properly focused on the transfers at issue in these actions,
however, clearly demonstrates that foreign jurisdictions have a stronger interest in the transfers.

BLMIS.  Thus, the United States' interest in applying its bankruptcy law here is comparatively

weak and its application would be unreasonable under the circumstances.  *Id.* at 1051 (where

only United States connection was that some transferred funds were proceeds of the sale of

assets in the United States, foreign law applied).

The Code itself contradicts the Trustee's claim that United States law is to be applied

whenever a U.S.-based bankruptcy is involved.  Section 1505 provides that a bankruptcy trustee

"may be authorized by the [Bankruptcy Court] to act in a foreign country . . . in any way

permitted by the applicable *foreign* law."  11 U.S.C. § 1505 (emphasis added).  Thus, the Code

contemplates that the trustee will apply to a foreign court for aid in recovering assets located

within that court's jurisdiction, and the foreign court will determine whether the trustee may

proceed under U.S. or foreign law.  Indeed, the fact that section 1505 limits a trustee to acting in

ways permitted by foreign law further establishes that the Congress, when it considered the

question of extraterritoriality, did not intend for United States law to apply worldwide.

## IV.    DISMISSAL OF THE EXTRATERRITORIAL DEFENDANTS WOULD NOT BE "ABSURD" OR "PREMATURE."

There is no color of merit to the Trustee's argument that limiting the application of the

Avoidance and Recovery Provisions to domestic transactions as required by *Morrison* "would

render the Avoidance and Recovery Provisions of the Code utterly ineffectual and have absurd

results."  (Tr. Mem. 25.)  As this Court has recognized in dismissing the Trustee's avoidance

claims pursuant to section 546(e), there is nothing "that is in any way absurd" in dismissing

claims that are not authorized by the relevant statutes.  *Picard v. Katz*, 466 B.R. 208, 213

(S.D.N.Y. 2012).

The fact that the statutes on which the Trustee relies lack extraterritorial application will

have little effect on the Trustee's claims to recover initial transfers, and no effect at all on his

recovery of domestic transfers. To the extent the Trustee is able to recover property or its value from an initial transferee, 11 U.S.C. § 550(d) precludes a duplicative recovery from a subsequent transferee regardless of geographic limitations. If the initial transferee is unable to return an avoided transfer, the Trustee will have the rights of a creditor to commence and participate in an insolvency proceeding of the initial transferee. If the initial transferee is a foreign entity, his rights as a creditor against subsequent transferees will be governed by the foreign insolvency laws of the entity's domicile, exactly as contemplated by chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1505 (U.S. bankruptcy trustee may be authorized to act in foreign country "in any way permitted by the applicable foreign law").

It is not true that "Defendants wrongly interpret the Bankruptcy Code and SIPA as being geographically limited to the recovery of fraudulent transfers that remain only within the United States' borders." (Tr. Mem. 25.) Defendants' argument is that SIPA and the Avoidance and Recovery Provisions of the Code do not reach transfers from one foreign person to another which took place abroad. There is likewise no risk that barring the Trustee from recovering subsequent transfers from foreign defendants "would enable fraudulent actors to easily place avoidable and recoverable transactions beyond the reach of U.S. law." (SIPC Mem. 7.) As the Trustee knows, BLMIS did not make any of the transfers to the Extraterritorial Defendants, and dismissing claims against foreign investors, nominees, custodians, and service providers that received transfers from unaffiliated foreign hedge funds would obviously not provide any incentive for unscrupulous, would-be-debtors to fraudulently transfer their assets out of the reach of their creditors. *See IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 705-06 (11th Cir. 2005); *French*, 440 F.3d at 154.

There is no basis for the Trustee's assertion that it would be "absurd" to permit foreign creditors to share in the proceeds of the BLMIS estate while barring the Trustee from asserting Avoidance and Recovery claims against them.  (Tr. Mem. 25-27.)  The Trustee has successfully maintained that SIPA does not protect anyone who did not have an account with BLMIS.  *See, e.g.*, *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 454 B.R. 285, 297 (Bankr. S.D.N.Y. 2011).  Because foreign investors, custodians, nominees, service providers, and others that are being sued because they received transfers from foreign feeder funds did not have accounts with BLMIS, the Trustee cannot credibly assert that such creditors would be entitled to recovery while being immunized from Avoidance and Recovery Claims.

Finally, there is no merit to the Trustee's argument that dismissal of the claims against the Extraterritorial Defendants pursuant to *Morrison* should be deferred because "further fact-gathering would be necessary to identify where particular defendants reside and where the fraudulent transfers and subsequent transfers took place."  (Tr. Mem. 27.)  As the Second Circuit explained in *Absolute Activist*, a plaintiff that asserts a claim under a statute that does not apply outside the United States must "allege[] facts giving rise to the plausible inference" that its claim is "domestic."  677 F.3d at 69-70.  The Trustee has alleged the residence of the Extraterritorial Defendants in his complaints and clearly alleged that all or substantially all of them have been sued only because they received transfers from other foreigners.  Because the statutes governing his claims lack extraterritorial application and he alleges no facts suggesting that he is seeking to recover domestic transfers, his claims must be dismissed.

19

## CONCLUSION

For the reasons stated above and in the Opening Consolidated Memorandum, the motion should be granted and the complaints against the Extraterritorial Defendants should be dismissed.

Dated: New York, New York
      August 31, 2012

 

**SULLIVAN & CROMWELL LLP**

 _/s/ Robinson B. Lacy_
Robinson B. Lacy
 (Lacyr@sullcrom.com)
Joshua Fritsch
 (Fritschj@sullcrom.com)

125 Broad Street
New York, New York  10004
(212) 558-4000

**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**

 _/s/ Marco E. Schnabl_
Marco E. Schnabl
 (Marco.Schnabl@Skadden.com)
Susan L. Saltzstein
 (Susan.Saltzstein@Skadden.com)
Stephanie R. Feld
 (Stephanie.Feld@Skadden.com)
Jonathan H. Hofer
 (jhofer@Skadden.com)

Four Times Square
New York, New York  10036
(212) 735-3000

SULLIVAN & WORCESTER LLP

_/s/ Franklin B. Velie_

Franklin B. Velie
 (Fvelie@sandw.com)
Jonathan G. Kortmansky
 (Jkortmansky@sandw.com)
Mitchell C. Stein
 (Mstein@sandw.com)

1633 Broadway
New York, New York 10019
(212) 660-3000

Of counsel:

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Evan A. Davis
Thomas J. Moloney
Lawrence B. Friedman
Breon S. Peace

One Liberty Plaza
New York, NY 10006

**CRAVATH, SWAINE & MOORE LLP**

Richard Levin
David Greenwald
Benjamin M. Smith

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

**DEBEVOISE & PLIMPTON LLP**

Michael E. Wiles
Shannon Rose Selden
Joseph P. Moodhe
Mark P. Goodman

919 Third Avenue
New York, NY 10022

**KELLEY DRYE & WARREN LLP**

Thomas B. Kinzler
Jonathan K. Cooperman
Daniel Schimmel
Jaclyn M. Metzinger

101 Park Avenue
New York, NY 10178

**PAUL HASTINGS LLP**

Jodi A. Kleinick
Barry G. Sher
Mor Wetzler

75 East 55th Street
New York, NY 10022

**SHEARMAN & STERLING LLP**

Heather Lamberg Kafele
Joanna Shally
Jessica Lyn Bartlett

599 Lexington Avenue
New York, NY 10022

**SIMPSON THACHER & BARTLETT LLP**

Mark G. Cunha
Peter E. Kazanoff
Andrew D.W. Cattell

425 Lexington Avenue
New York, NY 10017

**WILLKIE FARR & GALLAGHER LLP**

Mary K. Warren
Douglas Mishkin

787 Seventh Avenue
New York, NY  10019