# EXHIBIT 20

Baker & Hostetler LLP
Rockefeller Plaza
New York, New York 10111
Telephone (212) 589-4200
Facsimile (212) 589-4201
David J. Sheehan
Regina Griffin
Thomas L. Long
Stacey A. Bell
Amanda Fein

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
Bernard L. Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 12-mc-00115 (JSR) |
| Plaintiff-Applicant, | ECF Case |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Electronically Filed |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS CONCERNING
EXTRATERRITORIALITY AS ORDERED BY THE COURT ON JUNE 6, 2012**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................. 1

BRIEF FACTUAL BACKGROUND.................................................... 4

ARGUMENT .......................................................................................... 5

I.     *MORRISON* CONFIRMS THAT THE TRUSTEE'S CLAIMS DO NOT
REQUIRE EXTRATERRITORIAL APPLICATION OF THE
BANKRUPTCY CODE OR SIPA ................................................ 5

     A.   *Morrison's* Two-Part Analysis ................................................ 5

     B.   *Morrison's* Focus Test Confirms that the Trustee's Claims Involve
a Domestic Application of the Bankruptcy Code and SIPA..................... 7

          1.   The "Focus" of the Bankruptcy Code is on Debtors Under
Title 11 ........................................................................... 8

          2.   The Focus of SIPA is on Domestic Broker-Dealers ..................... 9

     C.   Because Congress' Focus Is Domestic as Applied to the Trustee's
Claims, No Extraterritorial Application of the Statutes is Required ....... 12

     D.   The Defendants Ignore the Focus Test Espoused in *Morrison*................ 15

II.    CONGRESS EXPRESSED ITS INTENT THAT THE BANKRUPTCY
CODE AND SIPA APPLY EXTRATERRITORIALLY................................... 18

     A.   The Code's Avoidance and Recovery Provisions Apply
Extraterritorially.......................................................................... 18

     B.   The Plain Language of SIPA Makes Clear that It Applies Beyond
the Boundaries of the United States......................................... 23

III.   HALTING THE BANKRUPTCY CODE AT THE U.S. BORDERS
WOULD HAVE ABSURD RESULTS .......................................... 25

     A.   Congress Never Intended to Permit A U.S. Debtor to Fraudulently
Transfer Its Property Oversees to the Detriment of its Creditors ........... 25

     B.   Congress Did Not Intend for the Code's Application to Depend
upon A Party's Foreign Residence Status................................. 26

IV.   GIVEN THE FACT INTENSIVE NATURE OF THE
EXTRATERRITORIALITY ANALYSIS, DISMISSAL AT THIS
STAGE IS PREMATURE.................................................................. 27

CONCLUSION.......................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
    677 F.3d 60 (2d Cir. 2012)..................................................................16, 27

*In re Adler Coleman Clearing Corp.,*
    198 B.R. 70 (Bankr. S.D.N.Y. 1996).............................................................10

*Ahammed v. SIPC (In re Primeline Secs. Corp.),*
    295 F.3d 1100 (10th Cir. 2002) ..................................................................11

*In re Alstom SA Secs. Litig.,*
    741 F. Supp. 2d 469 (S.D.N.Y. 2010)............................................................7

*Anwar v. Fairfield Greenwich Ltd.,*
    728 F.Supp.2d 372 (S.D.N.Y. 2010)..........................................................8, 28

*In re Banco Santander Securities-Optimal Litigation,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ...........................................................8

*Begier v. IRS,*
    496 U.S. 53 (1990)............................................................9, 19, 20, 21

*In re Bernard L. Madoff Inv. Secs., LLC,*
    2011 WL 3568936 (2d Cir. August 16, 2011) ...................................................11

*CGC Holding Co. v. Hutchens,*
    824 F. Supp. 2d 1193 (D. Colo. 2011) .......................................................13, 17

*Chevron Corp. v. Dozinger,*
    No. 11 Civ 0691, 2012 WL 1711521 (S.D.N.Y. May 14, 2012)............................13, 17

*Commodity Futures Trading Comm'n v. Weintraub,*
    471 U.S. 343 (1985)..................................................................................9

*In re Condor Insurance Ltd.,*
    601 F.3d 319 (5th Cir. 2010) ......................................................................15

*De Lage Landen Fin. Servs., Inc. v. Rasa Floors LP,*
    Civ. No. 08–0533, 2009 WL 884114 (E.D. Pa. March 31, 2009) ...........................28

*Deak & Co., Inc. v. Soedjono (In re Deak & Co.),*
    63 B.R. 422 (Bankr. S.D.N.Y. 1986).............................................................19

*Exch. Nat'l Bank of Chicago v. Wyatt,*
    517 F.2d 453 (2d Cir. 1975)........................................................................10

# TABLE OF AUTHORITIES
(continued)

*Florsheim Grp. Inc. v. USAsia Int'l Corp.* (*In re Florsheim Grp. Inc.*),
  336 B.R. 126 (Bankr. N.D. Ill. 2005) ......................................................................18

*French v. Liebmann (In re French)*,
  440 F.3d 145 (4th Cir. 2006), *cert. denied*, 549 U.S. 815 ................................ *passim*

*Hartford Fire Ins.v. California*,
  509 U.S. 764 (1993).........................................................................................16

*Hill v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler, & Schulman, Inc.)*,
  83 B.R. 880 (D.N.J. 1988) ...........................................................................11, 24

*Hobson v. Travelstead (In re Travelstead),*
  227 B.R. 638 (D. Md. 1998) .............................................................................20

*In re Int'l Admin. Servs., Inc.*,
  211 B.R. 88 (Bankr. M.D. Fla. 1997) ................................................................20

*In re Int'l Admin. Servs., Inc.*,
  408 F.3d 689 (11th Cir. 2005) ..........................................................................26

*Interbulk, Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.)*,
  240 B.R. 195 (Bankr. S.D.N.Y. 1999)...............................................................18

*In re LLS Americas, LLC*,
  No. 09- 06194-PCW11, 2012 WL 2564722 (E.D. Wa. July 2, 2012)..............17, 18

*Maxwell Commc'n Corp. v. Barclays Bank (In re Maxwell Commc'n. Corp.)*,
  170 B.R. 800 (Bankr. S.D.N.Y. 1994)............................................................13, 14

*In re Maxwell Commc'n Corp. v. Societe Generale*,
  93 F.3d 1036 (2d Cir. 1996)........................................................................13, 14, 15

*In re Merkin*,
  817 F. Supp. 2d 346 (S.D.N.Y. 2011)...................................................................8

*In re Midland Euro Exch.*,
  347 B.R. 708 (Bankr. C.D. Cal. 2006)................................................................21

*Mitchell v. Chicago P'ship Bd., Inc.*,
  246 B.R. 854 (N.D. Ill. 2000) ...........................................................................11

*Morrison v. Nat'l Australia Bank, Ltd.*,
  130 S. Ct. 2869 (2010)..................................................................................*passim*

*In re Optimal U.S. Lit.*,
  No. 10 Civ. 4059 (SAS), 2012 WL 1988713 (S.D.N.Y. June 4, 2012)................8, 28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Picard v. Chais* (*In re Bernard L. Madoff Inv. Secs. LLC*),
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ........................................................................23

*Picard v. Maxam Absolute Return Fund, L.P.*,
    --- B.R. ----, No. 11 Civ. 8629 (JPO), 2012 WL 1570859 (S.D.N.Y. May 4, 2012) ..............23

*Picard v. Maxam Absolute Return Fund, L.P.*,
    No. 10-05342 (BRL), Dkt. No. 53 (Oct. 12, 2011) ..................................................11

*Pirie v. Chicago Title & Trust Co.*,
    182 U.S. 438 (1901) ..............................................................................................21

*Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*,
    645 F.3d 1307 (11th Cir. 2011) ...............................................................................28

*In re Rajapakse*,
    346 B.R. 233 (Bankr. N.D. Ga. 2005) ......................................................................20

*SEC v. F.O. Baroff Co.*,
    497 F.2d 280 (2d Cir. 1974) ....................................................................................10

*SEC v. Gruss*,
    --- F. Supp. 2d ---, No. 11 Civ. 2420,
    2012 WL 1659142 (S.D.N.Y. May 9, 2012) ..........................................................7, 8, 13, 27

*SEC v. ICP Asset Mgmt, LLC*,
    No. 10 Civ. 4791(LAK), 2012 WL 2359830 (S.D.N.Y. June 21, 2012) ......................7, 11, 13

*SEC v. Packer, Wilbur & Co.*,
    362 F. Supp. 510 (S.D.N.Y. 1973) ..........................................................................10

*SEC v. Packer, Wilbur & Co.*,
    498 F.2d 978 (2d Cir. 1974) ....................................................................................10

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Secs. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom.*, *Aozora Bank Ltd. v Securities
    Investor Protection Corporation*, 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012) ........................27

*In re Simon*,
    153 F.3d 991 (9th Cir. 1998) ...................................................................................19

*Sinatra v. Gucci* (*In re Gucci*),
    309 B.R. 679 (S.D.N.Y. 2004) ................................................................................23

*SIPC v. Barbour*,
    421 U.S. 412 (1975) ..........................................................................................10, 11

# TABLE OF AUTHORITIES
### (continued)

*In re Siskind,*
    No. 02-65786-NVA, 2008 WL 2705528 (Bankr. D. Md. July 3, 2008)................................20

*Steele v. Bulova Watch Co.,*
    73 S.Ct. 252 (1952)...........................................................................................5, 18, 26

*Toibb v. Radloff,*
    501 U.S. 157 (1991)...............................................................................................9

*U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus., Inc.),*
    68 B.R. 690 (Bankr. S.D.N.Y. 1986).......................................................................19

*Underwood v. Hilliard (In re Rimsat Ltd.),*
    98 F.3d 956 (7th Cir. 1996) .................................................................................26

*United States v. Menasche,*
    348 U.S. 528 (1955)...........................................................................................25

*Universal Church v. Geltzer,*
    463 F.3d 218 (2d Cir. 2006)...................................................................................9

**STATUTES**

11 U.S.C. § 101(10) ......................................................................................................26

11 U.S.C. § 101 *et. seq.* ...............................................................................................8

11 U.S.C. § 109 ............................................................................................................8

11 U.S.C. § 304............................................................................................................15

11 U.S.C. § 541..............................................................................................19, 20, 21, 22

11 U.S.C. § 541(a)(3)....................................................................................................22

11 U.S.C. § 547........................................................................................13, 14, 20, 22

11 U.S.C. § 547(a) .......................................................................................................24

11 U.S.C. § 547(b) .......................................................................................................24

11 U.S.C. § 548 ......................................................................................................*passim*

11 U.S.C. § 550...................................................................................................*passim*

11 U.S.C. § 1501 *et seq.*..............................................................................................15

15 U.S.C. § 78ccc(a)(2)(A)...........................................................................................10

**TABLE OF AUTHORITIES**

(continued)

|  | **Page(s)** |
|---|---|
| 15 U.S.C. § 78eee(b)(2)(A) | 23 |
| 15 U.S.C. § 78fff-1 | 10 |
| 15 U.S.C. § 78fff-2(c)(3) | 10, 23, 24 |
| 15 U.S.C. § 78fff(b) | 10, 24 |
| 15 U.S.C. § 78lll(2) | 26 |
| Bankruptcy Act of 1898 | 19 |
| Bankruptcy Reform Act of 1978 | 9 |
| Dodd–Frank Wall Street Reform and Consumer Protection Act, § 929P(b) | 12 |
| Securities and Exchange Act of 1934, § 10(b) | *passim* |

OTHER AUTHORITIES

| 3 COLLIER ON BANKRUPTCY (14th ed. rev. 1977) | 11, 15, 18 |
|---|---|
| H.R. REP. NO. 82-2320, *reprinted in* 1952 U.S.C.C.A.N. 1960 (1952) | 19 |
| H.R. REP. NO. 95-595 (1977) | 9, 11 |
| H. R. REP. NO. 95-746 (1977) | 12 |
| Restatement (Third) of Foreign Relations Law § 403 (1987) | 16 |
| S. REP. NO. 95-763 (1978), reprinted in 1978 U.S.C.C.A.N. | 11 |
| S. REP. NO. 95-989 | 9 |
| S. REP. NO. 98-65 (1983) | 20 |

Irving H. Picard (the "Trustee") as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this Memorandum in opposition to the motion to dismiss concerning extraterritoriality filed by defendants encompassed in this Court's June 6, 2012 and June 26, 2012 Orders ("Defendants").[1]

## PRELIMINARY STATEMENT

The Moving Defendants, recipients of fraudulent transfers from Madoff's massive Ponzi scheme, claim that they are immunized from liability because they are "foreign persons or entities" who are not subject to the avoidance and recovery laws of the United States.  *See* Consolidated Memorandum of Law in Support of Extraterritorial Defendants' Motion to Dismiss, as Ordered by the Court on June 6, 2012 ("Defs' Br.") at 3.  They contend that the Trustee is using the Securities Investor Protection Act ("SIPA") and the avoidance and recovery provisions of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") "to reach transfers that took place abroad" in violation of the presumption against extraterritoriality recently reaffirmed by the Supreme Court in *Morrison v. Nat'l Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010).  But the Defendants' analysis of *Morrison* is fatally flawed.

*Morrison* analyzed two separate issues: (i) whether Congress affirmatively intended for Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") to apply extraterritorially; and (ii) whether a review of Congress' "focus" in enacting the statute was domestic as applied to the claims at issue, such that no extraterritorial application was required

---

[1] *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, No. 12-mc-00115 (S.D.N.Y. June 7, 2012), ECF No. 167; Consent Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, No. 12-mc-00115 (S.D.N.Y. June 26, 2012), ECF No. 203, at 7-9 (Ex. B).

there.  Defendants intentionally ignore *Morrison's* second analysis regarding Congress' focus, and for good reason:  because that analysis confirms that the Trustee's avoidance and recovery claims here involve only a domestic application of SIPA and the Code.  In any event, Congress has clearly expressed its intention that these provisions of SIPA and the Code apply extraterritorially.

The issue that the Supreme Court decided in *Morrison* was a very narrow one—whether Section 10(b) of the Exchange Act provided a cause of action to <u>foreign</u> plaintiffs suing <u>foreign</u> and American defendants for misconduct in connection with securities traded on <u>foreign</u> exchanges.  *Morrison* at 2875.  Determining that Congress' "focus" in enacting the Exchange Act was the regulation of securities purchased or sold on a domestic U.S. exchange, the Court concluded that the plaintiffs' claims there, which related to securities traded on a foreign exchange, would require an extraterritorial application of the statute.  *Id.* at 2883-84. Reaffirming the long-standing presumption against extraterritoriality, the Supreme Court concluded after reviewing the Exchange Act and its context, including its legislative history, that Congress had not clearly expressed any intention that it was to be applied extraterritorially, and accordingly dismissed the claims.  *Id.* at 2877-2888.

Applying the "focus" construct of *Morrison* here, it is clear that the Trustee's claims involve nothing more than a domestic application of SIPA and the Bankruptcy Code.  Congress' focus in enacting the Bankruptcy Code was the regulation of U.S. debtors in liquidation or reorganization proceedings under Title 11, and the protection of their creditors.  Consistent with that focus, the Code provides causes of action to avoid and recover fraudulent conveyances made by domestic debtors, in order to replenish the domestic debtor's estate for distribution to creditors.  Likewise, the focus of SIPA is the liquidation of U.S. broker-dealers, which are

2

members of the Securities Investor Protection Corporation ("SIPC") and the protection of their customers. Consistent with that focus, SIPA, through incorporation of specified provisions of the Bankruptcy Code, provides causes of action to avoid and recover a broker-dealers' fraudulent conveyances of customer property.

Thus, application of *Morrison*'s focus analysis here confirms a very unremarkable proposition: it is entirely appropriate for a U.S. court-appointed trustee of a <u>U.S. broker-dealer</u> in a liquidation proceeding in a U.S. Court to use SIPA and the Bankruptcy Code to avoid and recover fraudulent transfers made by the <u>U.S. broker-dealer</u> of its customers' property to replenish the broker-dealer's estate for the benefit of its customers.

To manufacture the appearance of extraterritoriality, Defendants attempt to place the "focus" upon the fact that they are foreign residents who received initial or subsequent transfers of BLMIS customer property purportedly beyond the borders of the United States. The location of the recipients is not relevant to a *Morrison* inquiry because Congress' focus in enacting the Bankruptcy Code and SIPA was <u>not</u> on the recipients of fraudulent transfers but rather on domestic debtor/broker-dealers. So long as the Trustee's claims are consistent with Congress' focus—which they are, because the Trustee is seeking to use the Bankruptcy Code and SIPA to remedy the fraudulent transfers of a domestic debtor, not a foreign debtor—extraterritorial application of the statutes is not required. Put differently, *Morrison* does not, as Defendants contend, stand for the proposition that transferees outside of the United States have immunity from avoidance and recovery actions merely by virtue of being foreign residents.

Even were the Trustee's claims deemed to require extraterritorial application of the Bankruptcy Code and SIPA, Congress has clearly indicated its intention that the provisions relevant here were meant to apply extraterritorially. Indeed, to hold otherwise would have

absurd results Congress never intended, including permitting U.S. debtors to fraudulently transfer all of their assets offshore, where their trustees could not recover them for creditors. In addition, under Defendants' view of the Code and SIPA, non-U.S. citizens would be permitted to enjoy the benefits of sharing in a debtor's estate, while facing no liability for receiving the proceeds of the debtor's fraudulent transfers. Such a construction of the acts would provide an unfair advantage to non-U.S. citizens by shifting the burden of replenishing the debtor's estate solely to U.S. transferees. Congress clearly never intended such inequitable results.

## BRIEF FACTUAL BACKGROUND

The Moving Defendants received initial and/or subsequent transfers of fraudulent conveyances of BLMIS customer property. They include Feeder Funds which had customer accounts at BLMIS, and their managers; Feeder Fund investors who invested in both U.S. and non-U.S. based Feeder Funds knowing that all, or nearly all, of the Feeder Funds' assets were to be forwarded to BLMIS, which maintained custody of the assets purportedly to invest in U.S. Securities and U.S. Treasuries; and so-called "leverage providers" that created investment products based on multiplied returns of specified BLMIS Feeder Funds, and which invested in the Feeder Funds. In their motion, the Moving Defendants emphasize that many of the subsequent transfers occurred between and among non-U.S. entities. They ignore the fact that every transfer that forms the basis of the initial and subsequent transferee claims in these actions was a fraudulent conveyance made by BLMIS.

Notably, many of the Defendants who claim on this motion that the Code and SIPA do not apply to foreign residents, have in fact taken advantage of the protections of those acts by filing customer claims in BLMIS's liquidation proceeding.

## **ARGUMENT**

I.  ***MORRISON* CONFIRMS THAT THE TRUSTEE'S CLAIMS DO NOT REQUIRE EXTRATERRITORIAL APPLICATION OF THE BANKRUPTCY CODE OR SIPA**

Defendants' invocation of *Morrison* to support their contention that the claims here are extraterritorial is meritless. Defendants seemingly confuse the fact that *Morrison* and the cases analyzing the presumption against extraterritoriality do not set forth a jurisdictional inquiry. Rather, *Morrison* and its progeny frame the issue as a merits-based inquiry, analyzing whether Congress intended the Bankruptcy Code and SIPA to provide a cause of action to the Trustee to avoid and recover fraudulent transfers made by BLMIS, a debtor/broker-dealer in liquidation in the U.S. *Id.* at 2876-77; s*ee Steele v. Bulova Watch Co.*, 73 S.Ct. 252, 255-56 (1952) (Supreme Court noting that the question posed by the presumption against extraterritoriality "is whether Congress intended to make the law applicable to the facts of this case"). The Trustee's claims here seek to apply the Bankruptcy Code and SIPA domestically in precisely the manner that Congress intended, and therefore, no extraterritorial application of the laws is required.

A.  ***Morrison's* Two-Part Analysis**

In *Morrison*, Australian investors brought claims against Australian and American defendants for alleged securities violations under Section 10(b) of the Exchange Act involving securities traded on the Australian stock exchange. *Morrison*, 130 S. Ct. at 2875-76. The Supreme Court found, unlike the courts below, that the foreign elements of the case posed a question not of jurisdiction, but, instead a merits-based inquiry into what particular claims could be brought pursuant to Section 10(b) of the Exchange Act. *Id.* at 2876-77. The *Morrison* Court specifically analyzed two separate issues: (i) whether Congress affirmatively intended for Section 10(b) of the Exchange Act to apply extraterritorially; and (ii) if the statute was not meant to apply extraterritorially, whether the *Morrison* plaintiffs' Section 10(b) claims could

5

nevertheless survive because they involved a purely domestic application of the statute. *Id.* at 2877-88.

The Supreme Court in *Morrison* reaffirmed the presumption against extraterritoriality of a federal statute, a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Id.* at 2877 (internal citation omitted). This principle "rests upon the perception that Congress ordinarily legislates with respect to domestic, not foreign matters." *Id.* (internal citation omitted). Contrary to Defendants' assertion that *Morrison* "disavowed any mode of statutory interpretation" other than the plain statutory language,[2] it was only after reviewing the language of Section 10(b) of the Exchange Act and the statute's context, including its legislative history, that the Supreme Court concluded that Congress had not clearly expressed any intention that it was to be applied extraterritorially. *See id.* at 2883. In fact, the Supreme Court noted that explicit statutory language evincing Congress' intent to provide for an extraterritorial application is not required. *See id.* Courts can assuredly consult statutory context to determine Congress' intent. *Id.*

After determining that Section 10(b) did not apply extraterritorially, the Supreme Court moved to the second issue of determining whether the plaintiffs' claims even required extraterritorial application of the statute, because the claims would survive if they involved a purely domestic application of the statute. *Id*. at 2883-84. To ascertain whether a plaintiff's claims involve a domestic or extraterritorial application of a statute, the *Morrison* Court set forth an inquiry which involves a determination of the "focus" of Congressional concern in enacting that law. *Id*. To determine Congress' focus, the Supreme Court first looked to the act in

---

[2] Defs' Br. at 5.

question as a whole, and then applied that focus to the particular statute at issue. *See id.* at 2884-85 (analyzing focus of Exchange Act, then applying to plaintiff's Section 10(b) claims by considering the "object[] of the statute's solicitude," what the statute "seeks to regulate," and "the parties or prospective parties" that the statute seeks to protect) (internal marks and citations omitted).[3]  If the focus of Congressional concern is found to be domestic as applied to the plaintiff's specific claim, the claim does not require extraterritorial application. *Morrison*, 130 S. Ct. at 2883-84.  Inasmuch as Congress' focus in enacting the relevant provisions of the Exchange Act was the regulation of securities purchased or sold on a U.S. exchange, the Court concluded that because the *Morrison* plaintiffs' claims related to securities traded on a foreign exchange, the claims required an unauthorized extraterritorial application of the statute. *Id.* at 2883-88. Accordingly, the action was dismissed.

### B.     *Morrison's* Focus Test Confirms that the Trustee's Claims Involve a Domestic Application of the Bankruptcy Code and SIPA

Since *Morrison,* courts have reviewed other securities laws beyond the Exchange Act to consider whether the presumption against extraterritorial application barred the claims at issue. Notwithstanding the presence of foreign parties, those courts have held that because Congress' focus in enacting the relevant acts was domestic as applied to the claims at issue, no extraterritorial application of those laws was required.  For example, in *SEC v. ICP Asset Mgmt., LLC*, the court found that because the focus of the Investment Advisers Act is on domestic investment advisers, it was irrelevant that the complaint involved foreign clients engaged in foreign transactions. *See ICP Asset Mgmt, LLC*, 2012 WL 2359830, at *2-3.  Likewise, in *SEC*

---

[3] *See also SEC v. Gruss*, 2012 WL 1659142 at *9-10 (S.D.N.Y. May 9, 2012) (analyzing focus of the Investment Advisers Act, then applying to plaintiff's Section 206 claims); *In re Alstom SA Secs. Litig.*, 741 F. Supp. 2d 469, 472-73 (S.D.N.Y. 2010) *(accord).*

*v. Gruss*, the Court came to the same conclusion in applying Section 206 of the Investment Advisers Act. *See SEC v. Gruss*, 2012 WL 1659142, at *8 (S.D.N.Y. May 9, 2012).

Thus, Defendants' mere incantation that the presumption against extraterritoriality automatically precludes claims against foreign defendants is wrong. To the contrary, under a proper *Morrison* analysis, the Trustee's claims require nothing more than a domestic application of SIPA and the Bankruptcy Code.[4]

### 1. The Focus of the Bankruptcy Code is on Debtors Under Title 11

Identifying Congress' "focus" in enacting the Bankruptcy Code is simple: debtors that file for bankruptcy under Title 11 of the United States Code.[5] What the Bankruptcy Code seeks to regulate is the reorganization and/or liquidation of domestic debtors. *See* generally 11 U.S.C. § 101 *et. seq.* The Bankruptcy Code seeks to protect domestic debtors and their creditors, as is

---

[4] Defendants' claim that courts post-*Morrison* have "uniformly concluded" that federal securities law claims in Madoff-related actions cannot be asserted extraterritorially is misleading and factually inaccurate. (Defs' Br. at 4, n.4.) The cases Defendants rely on address the applicability of Section 10(b) to "foreign parties, governed by foreign law and concerning foreign securities" -- the precise issue decided in *Morrison*. *In re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d 1305, 1314 (S.D. Fla. 2010); *see also In re Optimal U.S. Litig.,* No. 10 Civ. 4059 (SAS), 2012 WL 1988713 (S.D.N.Y. June 4, 2012); *In re Merkin*, 817 F. Supp. 2d 346 (S.D.N.Y. 2011). None of those cases concerned avoidance and recovery actions brought by a United States trustee based on fraudulent transfers by a domestic debtor/broker-dealer. Further, Defendants omit to mention that at least one other court in this district refused to dismiss a Madoff-related securities class action on the basis of the presumption against extraterritoriality. *See Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 372, 405 (S.D.N.Y. 2010).

[5] As defined in Section 109, as long as a party is a U.S. resident, or has a domicile, place of business or property in the United States, that party can qualify as a "debtor" under Title 11. *See* 11 U.S.C. § 109.

evidenced by the purposes of the Code, which are to provide debtors with a fresh start, and/or to marshal, maximize and liquidate domestic debtors' assets for distribution to their creditors.[6]

Consistent with the Code's focus on domestic debtors and Congress' concern for their creditors, Sections 548 and 550 regulate domestic debtors by providing causes of action to avoid and recover assets fraudulently transferred by the debtor. In *Begier v. IRS*, 496 U.S. 53, 58 (1990), the Supreme Court held that the object of the avoidance and recovery provisions' solicitude is "to preserve the property includable within the bankruptcy estate" and to restore property to domestic debtors' estates for distribution to creditors.[7] The parties that the avoidance and recovery provisions of the Code seek to protect are the defrauded creditors of domestic debtors. *See Morrison*, 130 S. Ct. at 2884 (marks and citations omitted).

### 2.    The Focus of SIPA is on Domestic Broker-Dealers

Because SIPA is a hybrid statute which incorporates numerous chapters of the Bankruptcy Code, Congress' "focus" in enacting SIPA is similar to that of the Bankruptcy Code: domestic broker-dealers in liquidation.

---

[6] *See* H.R. REP. NO. 95-595, at 10 (1977) ("[t]he present purposes of the Bankruptcy Act are twofold: either to rehabilitate financially a distressed debtor or to assemble and liquidate [debtor's] assets for distribution to creditors") (citations omitted); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985) (an "important goal of the bankruptcy laws [is] to maximize the value of the estate"); *Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (recognizing "general [Bankruptcy] Code policy of maximizing the value of the bankruptcy estate"); *French v. Liebmann (In re French)*, 440 F.3d 145, 154 (4th Cir. 2006), *cert. denied*, 549 U.S. 815 ("the Code's avoidance provisions protect creditors by preserving the bankruptcy estate against illegitimate depletions") (citation omitted).

[7] *See also Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006) (purpose is "to protect the interests of creditors against fraudulent transfers"); *French*, 440 F.3d at 154 (purpose is "to protect the rights of both debtors and creditors during insolvency" (citation omitted)); S. REP. NO. 95-989, Bankruptcy Reform Act of 1978, at ch. 5 (1978) (purpose of revising the Code to "include all of the property of the debtor [in the case] and to allow the trustee more easily to recover property that may have been transferred by the debtor").

Through the enactment of SIPA, Congress created "a new form of liquidation proceeding applicable only to SIPC member firms," which was designed to return promptly customer property.  *See, e.g.*, *SIPC v. Barbour*, 421 U.S. 412, 416 (1975).  SIPC's members consist of domestic broker-dealers who are registered with the Securities Exchange Commission.  *See* 15 U.S.C. § 78ccc(a)(2)(A); *SEC v. Packer, Wilbur & Co.*, 498 F.2d 978, 980 (2d Cir. 1974).  A liquidation under SIPA is essentially a bankruptcy proceeding that is conducted under specified chapters of the Bankruptcy Code.  *See* 15 U.S.C. § 78fff(b); *Exch. Nat'l Bank of Chicago v. Wyatt,* 517 F.2d 453, 457-459 (2d Cir. 1975); *In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 74 (Bankr. S.D.N.Y. 1996).  A trustee in a SIPA liquidation proceeding has the general powers of a bankruptcy trustee, as well as additional duties specified by the Act related to recovering and distributing customer property.  *See* 15 U.S.C. Section 78fff-1.

For the purposes of *Morrison's* focus analysis, SIPA seeks to regulate the liquidation of domestic broker-dealers.[8]  The object of SIPA's solicitude is to "protect the public customers of securities dealers from suffering the consequences of financial instability in the brokerage industry." *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 281 (2d Cir. 1974) (citations omitted); *see also SEC v. Packer*, 498 F.2d at 980.  Consistent with SIPA's focus on domestic broker-dealers, Section 78fff-2(c)(3) provides causes of action to recover customer

---

[8] *See, e.g.*, *SIPC v. Barbour*, 421 U.S. at 415 (SIPA "upgrade[s] the financial responsibility requirements for registered brokers and dealers"); *SEC v. Packer*, 362 F. Supp. at 514 (recognizing SIPA's focus on domestic broker-dealers by seeking to "strengthen the financial responsibility of the brokerage industry").

property that was fraudulently transferred by a domestic broker-dealer to restore the funds of customer property for distribution to customers.[9]

Defendants suggest that SIPA has the same focus that the Supreme Court determined in *Morrison* was the focus of Section 10(b) of the Exchange Act because SIPA was enacted as an amendment to the Exchange Act. *See* Defs' Br. at 19. As noted previously, courts have recognized that different acts under Title 15 of the U.S. Code, such as the Investment Advisers Act, have different purposes than Section 10(b). *See*, *e.g*, *ICP Asset Mgmt*, 2012 WL 2359830, at *2-3. Here, the legislative history of SIPA makes clear that the Securities Investor Protection Act and the Exchange Act are different acts[10] with different purposes.[11] *See* S. REP. NO. 95-763 (1978), reprinted in 1978 U.S.C.C.A.N. 764, 780 ("the purposes of the 1934 Act and SIPA are

---

[9] SIPA's main purpose was "not to prevent fraud or conversion, but to reverse losses resulting from brokers' insolvency" and was "intended to expedite the return of customer property." Bench Mem. Determining Trustee's Motion for Entry of an Injunction at 17, *Picard v. Maxam Absolute Return Fund, L.P.*, No. 10-05342 (BRL), Dkt. No. 53 (Oct. 12, 2011) (quoting *In re Bernard L. Madoff Inv. Secs., LLC*, 2011 WL 3568936, at *9, 10 (2d Cir. August 16, 2011) (internal marks omitted)). One of the main tenets of customer protection is equality of distribution among all customers. *See* H.R. REP. NO. 95-595, at 266, 269 (1977); *Hill v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler, & Schulman, Inc.)*, 83 B.R. 880, 888 (D.N.J. 1988) ("SIPA envisions an orderly liquidation of the debtor, and equitable treatment of customers" and "provides for pro rata distribution of customer property, including proceeds from avoidance actions, in satisfaction of customer claims."

[10] For example, where the Exchange Act provides for a private right of action, SIPA has none. *See SIPC v. Barbour*, 421 U.S. at 424 ("[u]nlike the Securities Exchange Act … a private right of action under the SIPA would be consistent neither with the legislative intent, nor with the effectuation of the purposes it is intended to serve").

[11] *See also Mitchell v. Chicago P'ship Bd., Inc*., 246 B.R. 854, 857 (N.D. Ill. 2000) (recognizing "important distinction" between the Exchange Act and SIPA and finding that the purpose of the 1934 Act and SIPA are different); *Ahammed v. SIPC (In re Primeline Secs. Corp.)*, 295 F.3d 1100, 1108 n.7 (10th Cir. 2002) (recognizing the different definition of "security" under SIPA and the Exchange Act because of the different purpose of each Act). *See also* 3 COLLIER ON BANKRUPTCY Pt. 2, ¶ 60.79 (14th ed. rev. 1977) ("it must be observed that the Securities Investor Protection Act stands alone").

11

different"); H. R. REP. NO. 95-746, at 35 (1977) (same). Although SIPA is technically an amendment to Title 15 of the United States Code, Congress expressly created separate provisions for SIPA that have different purposes than the Exchange Act. Thus, to treat SIPA as simply an extension of the Exchange Act for the purposes of *Morrison's* "focus" analysis is contrary to Congress' express intent.[12]

### C.    Because Congress' Focus Is Domestic as Applied to the Trustee's Claims, No Extraterritorial Application of the Statutes is Required

It is clear that the Trustee's claims here, which seek to recover fraudulent conveyances of customer property made by a domestic debtor/broker-dealer, do not require extraterritorial application of the Bankruptcy Code or SIPA. The Trustee's claims seek to remedy the wrongful acts of a debtor/member broker-dealer[13] in a U.S. liquidation proceeding. BLMIS perpetrated a massive Ponzi scheme from its operations in the United States, and fraudulently transferred customer property out of its bank accounts in the United States. Consistent with Congress' "focus" in enacting the Code and SIPA, the Trustee's avoidance and recovery actions seek to recover customer property fraudulently transferred by that domestic debtor/broker-dealer to return it to customers.

---

[12] Defendants argue that SIPA lacks extraterritorial intent because following the *Morrison* decision in 2010, Congress has not passed additional legislation with respect to SIPA that would expressly imbue it with the extraterritorial application. Defendants are attempting to conflate the Exchange Act—which Section 929(P)(b) of the Dodd Frank Act amends—with SIPA, an independent act that requires its own analysis with respect to *Morrison*. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, § 929P(b), 124 Stat. at 1862. And as stated more fully above, Congress affirmatively intended that SIPA apply extraterritorially based on the language of the statute.

[13] Although BLMIS was a registered broker-dealer member of SIPC, at all times relevant to the proceedings, BLMIS was purporting to act as investment adviser to its thousands of customers.

Accordingly, under the principles set forth in *Morrison*, because the Trustee's avoidance and recovery actions focus on the acts of BLMIS, a domestic debtor, his claims involve a purely domestic application of the Bankruptcy Code and SIPA.[14]  *See ICP Asset Mgmt.*, 2012 WL 2359830, at *3 (analyzing *Morrison* in the context of the Investment Advisers Act and holding that the focus of the act was on the domestic investment adviser, therefore, the claims did not require extraterritorial application notwithstanding the involvement of foreign parties); *SEC v. Gruss*, 2012 WL 1659142, at *6, 8-9 (denying a motion to dismiss after the focus of the Investment Adviser Act was determined to be on the domestic investment adviser, not the U.S. securities exchange).

In contrast, a true extraterritorial application of the Bankruptcy Code would exist if a party were seeking to use the Code to avoid fraudulent transfers made by a <u>foreign</u> debtor. Those were the facts in *In re Maxwell Commc'n Corp. v. Societe Generale*, 93 F.3d 1036 (2d Cir. 1996), a case upon which Defendants rely.

*Maxwell* involved an attempt to use Section 547 of the Bankruptcy Code to avoid a preference made abroad by the debtor, an <u>English</u> holding company, to English and French creditors.  *Maxwell Commc'n Corp. v. Barclays Bank* (*In re Maxwell Commc'n. Corp.*), 170 B.R. 800, 814 (Bankr. S.D.N.Y. 1994).  In addition to the holding company's insolvency proceeding in England, the debtor simultaneously filed a petition for relief under Chapter 11 in the United

---

[14] Even in cases involving RICO, a statute which the courts have found does not apply extraterritorially, motions to dismiss have been denied where the plaintiffs' claims did not involve an extraterritorial application of the statute.  *See CGC Holding Co. v. Hutchens*, 824 F. Supp. 2d 1193, 1210 (D. Colo. 2011) ("while I agree that RICO does not apply extraterritorially, I do not agree that this case, as alleged, involves an extraterritorial application of the statute"); *Chevron Corp. v. Dozinger*, No. 11 Civ 0691, 2012 WL 1711521, at *7-9 (S.D.N.Y. May 14, 2012) (denying a motion to dismiss because the RICO claims at issue did not require extraterritorial application of the statute).

13

States.  *Maxwell*, 93 F.3d at 1041.  Rather than seeking to utilize the stricter preference laws of England, the debtor's examiner sought to use the less stringent preference provisions of the Bankruptcy Code.

Because the same preference action could have been brought by the English administrators under English law in the debtor's English insolvency proceeding, the bankruptcy court held that the U.S. examiner's suit was barred because Section 547 did not apply extraterritorially on the facts of that case.  *Maxwell*, 170 B.R. at 814.  Notably, the bankruptcy court expressly declined to extend the holding in the manner that Defendants advocate here to preclude any <u>domestic</u> debtor from pursuing fraudulent transfers overseas:

> <u>To be clear, I do not hold today that no debtor may pursue a transfer overseas.</u> What I do hold is that where a <u>foreign debtor</u> makes a preferential transfer to a <u>foreign transferee</u> and the center of gravity of that transfer is <u>overseas</u>, the presumption against extraterritoriality prevents utilization of section 547 to avoid the transfer.

*Id.* at 814 (emphasis added).  So, too, the Second Circuit expressly "declined to decide" whether the presumption against extraterritoriality would compel a conclusion that the Bankruptcy Code does not reach the pre-petition transfers at issue.  *Maxwell*, 93 F.3d at 1055 ("Thus, we express no view regarding the banks' contention that the Bankruptcy Code *never* applies to non-domestic conduct or conditions.") (emphasis in original).

Thus, *Maxwell* does not stand for the proposition that, as a matter of law, the avoidance provision of Section 547 of the Bankruptcy Code cannot apply extraterritorially as Defendants claim.  Moreover, the facts of *Maxwell* are inapposite.  Unlike *Maxwell*, there is no foreign

debtor here, and no competing foreign liquidation proceeding for BLMIS.[15]  Unlike *Maxwell*,

BLMIS's fraudulent transfers of customer property took place in New York as a consequence of

a fraud conceived and executed in the United States.[16]  Put simply, the facts and rationale of

*Maxwell* have no bearing on this case.

### D.    The Defendants Ignore the Focus Test Espoused in *Morrison*

Defendants attempt to manufacture the appearance of extraterritoriality by emphasizing

that they are non-U.S. residents who received subsequent transfers of the debtor's customer

property abroad.  But Defendants' analysis is faulty because under no reading of *Morrison* is the

---

[15] Notwithstanding Defendants' mistaken assertion to the contrary (Defs' Br. at 9),  *Maxwell* could not take place in the current bankruptcy landscape precisely because Congress has anticipated the problem of differing insolvency laws across multiple jurisdictions.  Notably, Chapter 15 of the Bankruptcy Code establishes that the main liquidation proceeding of an entity is to proceed in the jurisdiction where the entity's "center of main interest" or COMI is located (generally, the debtor's principal place of business).  15 Collier on Bankruptcy ¶ 1502.01[4] (16th ed. 2010).  Under the COMI concept, the law of the center of main interest should govern proceedings ancillary to the COMI.  *See In re Condor Insurance Ltd.*, 601 F.3d 319, 329 (5th Cir. 2010) (in ancillary proceeding brought in U.S. bankruptcy court pursuant to Chapter 15, court held that law of debtor's COMI governed avoidance action).

Prior to the enactment of Chapter 15 of the Code in 2005, *Maxwell* was conducted pursuant to Section 304 of the Bankruptcy Code in parallel liquidation proceedings in the U.S. and the U.K. With the enactment of Chapter 15, Section 304 of the Code was superseded.  In a post-Chapter 15 world, the *Maxwell* case would invariably have had its COMI in the U.K, and as a result, the U.K. liquidation laws and proceeding would have had primacy over any ancillary proceedings elsewhere, including in the United States.

[16] Defendants further attempt to cloud the issues by referencing other litigation in U.S. and foreign jurisdictions involving BLMIS Feeder Funds.  *See* Defs' Br. at 11.  In a case of this magnitude, it is expected that there will be a variety of lawsuits involving numerous claims against a multitude of parties in different fora involving different laws.  The existence of these other lawsuits in the U.S. and abroad in no way abrogates a U.S. trustee's power and duty to use the avoidance and recovery provisions of the Bankruptcy Code and SIPA to replenish the estate of a domestic debtor for the benefit of its creditors.  There is no "conflict" of laws requiring any comity analysis, because the Bankruptcy Code and SIPA apply to BLMIS's liquidation; the relevant foreign laws apply to the liquidation of foreign entities.

efficacy of federal statutes halted at the U.S. borders merely because their application may affect entities or individuals outside of this country.[17]

By emphasizing their purported lack of contacts with the United States, Defendants mistakenly confuse *Morrison's* focus analysis with a personal jurisdiction analysis.[18] Defendants misplace the "focus" on their foreign residence, and on the fact that they received initial and subsequent transfers of BLMIS customer property purportedly abroad. But under *Morrison*, once <u>Congress'</u> focus has been determined, other facts not germane to that focus are irrelevant to the inquiry. *Morrison*, 130 S. Ct. at 2844.

Here, Congress' focus in enacting the Bankruptcy Code and SIPA was on debtor broker-dealers in liquidation proceedings within the United States; it was clearly <u>not</u> on the recipients of fraudulent transfers. Thus, where Defendants reside or where they received the initial or subsequent transfers of BLMIS customer property is entirely irrelevant to the "focus" construct of *Morrison*. *See Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 69 (2d Cir.

---

[17] Defendants also appear to conflate the issues involving the presumption against extraterritoriality with principles of comity. *See* Defs' Br. at 7-8. While the issue at hand involving extraterritoriality is entirely unrelated to comity, if a comity inquiry were relevant, the Supreme Court has referred to the factors in Restatement (Third) of Foreign Relations Law § 403 (1987) ("Restatement"). *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 799 (1993). It is clear that application of the Restatement's factors concerning comity lead to the inescapable conclusion here that it is entirely appropriate and reasonable to apply the U.S. Bankruptcy Code (and SIPA) to avoid and recover a U.S. debtor's fraudulent transfers, essentially for all of the same reasons set forth above. *See* Restatement § 403 (in determining limitations on a state's ability to prescribe law with respect to particular persons or activity, factors to be considered include, among others, the extent to which the activity takes place within the territory, or has substantial, direct effect in the territory; the connections between the regulating state and the person principally responsible for the activity to be regulated (*e.g.* BLMIS), or between that state and those whom the regulation is designed to protect (*e.g.* customers/creditors)).

[18] Facts regarding defendants' residence or where they received subsequent transfers are not germane to a *Morrison* analysis because the domestic and/or extraterritorial application of a federal statute is a merits issue, not a jurisdictional issue. *Morrison*, 130 S. Ct. at 2876.

16

2012) (in determining whether a particular securities transaction is domestic, the Second Circuit rejected test that would "look[] to the identity of the parties, the type of security at issue, or whether each individual defendant engaged in conduct within the United States"); *CGC Holding Co. v. Hutchens*, 824 F. Supp. 2d at 1209 (rejecting argument that RICO defendants' foreign residence rendered application of statute extraterritorial); *Chevron Corp. v. Dozinger*, 2012 WL 1711521, at *8 (noting that RICO's focus "would afford a remedy to a U.S. plaintiff who claims injury caused by domestic acts of racketeering activity without regard to the nationality or foreign character of the defendants").

Defendants obliquely imply in their brief that a proper reading of *Morrison* requires the focus to be on their subsequent transfers of BLMIS customer property. *See* Defs' Br. at 3. But Defendants mischaracterize the nature of the Trustee's claims. The Trustee is not seeking to avoid any <u>subsequent</u> transfers between foreign parties; he is seeking to avoid <u>initial</u> fraudulent transfers of customer property made by BLMIS, a U.S. debtor/broker-dealer, and to recover a portion of that customer property which Defendants received. Every fraudulent transfer at issue originated from Madoff's New York-based J.P. Morgan bank account, and was made in furtherance of a Ponzi scheme BLMIS conducted out of its New York offices. Because the Trustee's claims are domestic as applied, the mere fact that Defendants may have received some of BLMIS's customer property in a foreign country is irrelevant under *Morrison*'s analysis.

Post-*Morrison*, some courts continue to apply a "center of gravity" analysis to determine the nature of the claims at issue. *See In re LLS Americas, LLC*, No. 09- 06194-PCW11, 2012 WL 2564722, at *8-9 (E.D. Wa. July 2, 2012). For example, the *LLS Americas* case involved a Ponzi scheme based in the United States with numerous fraudulent transfers to foreign defendants. The *LLS Americas* court looked to the Ponzi scheme as a whole, and determined that

17

despite the presence of numerous foreign transfers, the center of gravity must be where the debtor carried out the fraudulent scheme: the United States.[19] *Id.* at *8-10. Even under a "center of gravity" analysis, the Trustee's avoidance and recovery claims are domestic.

## II. CONGRESS EXPRESSED ITS INTENT THAT THE BANKRUPTCY CODE AND SIPA APPLY EXTRATERRITORIALLY

Even were the Court to find that the Trustee's claims against Defendants require extraterritorial application of the Bankruptcy Code and SIPA, it is clear that Congress expressed its affirmative intention that the avoidance and recovery provisions apply extraterritorially.

The *Morrison* court made clear that explicit statutory language is not required to establish Congress' intent that a statute apply extraterritorially,[20] and instead held that the statutory context, including its legislative history, should be considered to determine Congress' intent. *Morrison*, 130 S. Ct. at 2883. As set forth more fully below, Congress expressed its intent to apply the avoidance and recovery provisions of the Code and SIPA extraterritorially.

### A.   The Code's Avoidance and Recovery Provisions Apply Extraterritorially

Section 548 of the Code specifically allows for the avoidance of "transactions which unfairly or improperly deplete a debtor's assets or [ ] unfairly or improperly dilute the claims against those assets." 5 Collier on Bankruptcy ¶ 548.01 (16th ed. 2010). Under these circumstances, a trustee may avoid fraudulent transfers because the debtor is deemed to have

---

[19] *See also Interbulk, Ltd. v. Louis Dreyfus Corp.* (*In re Interbulk, Ltd.*), 240 B.R. 195, 198-99 (Bankr. S.D.N.Y. 1999); *Florsheim Grp. Inc. v. USAsia Int'l Corp.* (*In re Florsheim Grp. Inc.*), 336 B.R. 126, 131-32 (Bankr. N.D. Ill. 2005), for cases explaining the "center of gravity" test pre-*Morrison*.

[20] Indeed, as the Supreme Court held in *Steele v. Bulova Watch Co.*, Congress can affirmatively intend for a statute to apply extraterritorially without explicit statutory language to that effect. *Steele*, 73 S. Ct. at 255-56 (holding that Congress intended that the Lanham Act to apply extraterritorially without express statutory language).

18

retained his interest in the property at the time of the transfer because such transactions "are designed, or have the effect of unfairly draining the pool of assets available to satisfy creditors' claims." *Id.* at ¶ 548.01[a]. Thus, unlike "property of the estate" under Section 541 (*see infra*) this "interest of the debtor in property" does not arise from the initiation of a bankruptcy proceeding, but precedes it, dating back to the debtor's fraudulent transfer of property. While the pre-petition "interest of the debtor in property" referenced in these sections is not defined in the avoidance provisions of the Code, the Supreme Court in *Begier* defined that phrase by referring to the same language that is defined in Section 541 of the Code. *Begier*, 496 U.S. at 57-58.

Section 541 of the Code indisputably applies extraterritorially. Section 541 establishes that upon the commencement of a bankruptcy proceeding, an estate of the debtor is created. The section then defines "property of the estate" to include property "wherever located and by whomever held." 11 U.S.C. § 541. The phrase "wherever located and by whomever held" explicitly applies to overseas property based on the legislative history of Section 541 and its predecessor Section 70(a) under the Bankruptcy Act of 1898. Congress stated that its intent in adding this phrase was to "make clear that a trustee in bankruptcy is vested with the title of the bankrupt in property which is located without, as well as within, the United States."[21] Thus, courts have uniformly held that Section 541 applies extraterritorially. *See, e.g., In re Simon,* 153 F.3d 991, 996 (9th Cir. 1998) (holding debtor's estate includes debtor's property wherever located); *In re Deak & Co.,* 63 B.R. 422, 427 (Bankr. S.D.N.Y. 1986) (holding Section 541 applied to all debtor's property, whether located domestically or abroad); *U.S. Lines, Inc. v. GAC*

---

[21] H.R. REP. NO. 82-2320, at 10, *reprinted in* 1952 U.S.C.C.A.N. 1960, at 1976 (1952); *see Deak & Co., Inc. v. Soedjono (In re Deak & Co.),* 63 B.R. 422, 426-427 (Bankr. S.D.N.Y. 1986) (Lifland, J.); *French, et al. v. Liebmann (In re French)*, 440 F.3d 145, 151 (4th Cir. 2006).

*Marine Fuels Ltd. (In re McLean Indus., Inc.)*, 68 B.R. 690, 694 (Bankr. S.D.N.Y. 1986) (holding Section 541 refers to property located both within the United States and abroad).[22]

In *Begier*, the Supreme Court noted that Section 541 of the Code was expressly incorporated into Section 547 of the Code (the preference avoidance provision), and proceeded to consult that statute for context to ascertain what was "property of the debtor" as that phrase was used in Section 547 – and is incorporated in Section 548 as well:

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate-the property available for the distribution to creditors-'property of the debtor' subject to the [avoidance] provision[s] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'

*Begier*, 496 U.S. at 58-59 (emphasis added).[23]

---

[22] *In re Rajapakse,* 346 B.R. 233, 235-36 (Bankr. N.D. Ga. 2005) (same); *In re Siskind,* No. 02-65786-NVA, 2008 WL 2705528, at *14 (Bankr. D. Md. July 3, 2008) (same); *Hobson v. Travelstead (In re Travelstead),* 227 B.R. 638, 654-655 (D. Md. 1998) (same); *In re Int'l Admin. Servs., Inc.*, 211 B.R. 88, 93-94 (Bankr. M.D. Fla. 1997) (same).

[23] As the Supreme Court noted in *Begier,* the legislative history concerning the relevant amendments to Sections 547 and 548 of the Code supports this interpretation. *See Begier*, 496 U.S. at 59, n.3; *In re French*, 440 F.3d at 152. Sections 547 and 548 of the Code were amended in 1984 to substitute "an interest of the debtor in property" for the phrase "property of the debtor." *See Begier*, 496 U.S. at 59, n.3; S. REP. NO. 98-65, at 81 (1983). In doing so, the language of Sections 547 and 548 now mirrored the Section 541 language, "interests of the debtor in property." *Id.* Congress described the new language included in Sections 547 and 548 as a "clarifying change," rendering the language of these provisions fully consistent with parallel language of Section 541. *Id.*

Because 541 applies extraterritorially, and Sections 547, 548, and 550 of the Code expressly incorporate the language of Section 541,[24] Congress manifested its intent that the avoidance and recovery provisions of the Code also apply extraterritorially. As explained by the Fourth Circuit in the *French* case:

> By incorporating the language of § 541 to define what property a trustee may recover under his avoidance powers, § 548 plainly allows a trustee to avoid any transfer of property that would have been 'property of the estate' prior to the transfer in question—as defined by § 541—even if that property is not 'property of the estate' now. <u>Through this incorporation, Congress made manifest its intent that § 548 apply to all property that, absent a prepetition transfer, would have been property of the estate, wherever that property is located.</u>

*French, et al. v. Liebmann (In re French)*, 440 F.3d 145, 151-152 (4th Cir. 2006) (emphasis added) (internal citations omitted).

Defendants rely on *In re Midland Euro Exchange* to support their assertion that Sections 548 and 550 of the Code do not apply extraterritorially (Defs' Br. at 8, n.7), but the *Midland* court misunderstood the analysis presented in *French*. *In re Midland Euro Exch.*, 347 B.R. 708, 718-719 (Bankr. C.D. Cal. 2006). Contrary to the characterization in *Midland*, the *French* court did not hold that avoidable transfers are "property of the estate" as defined in Section 541. *French*, 440 F.3d at 151-152, n.2. Rather, that court held – consistent with the Supreme Court's

---

[24] Defendants erroneously contend that *Morrison* stands for the proposition that because Section 541 explicitly applies extraterritorially, and no other provisions of the Code contain an express statement of extraterritorial application, that alone mandates only domestic application for all other provisions of the Code. (Defs' Br. at 14). A review of *Morrison* makes clear that it held nothing of the sort, but instead refused to extend Congress' intent to apply Section 30(a) of the Exchange Act extraterritorially to Section 10(b). *Morrison*, 130 S. Ct. at 2883-4. Unlike the Exchange Act, which addresses a large swath of topics under its heading, the Bankruptcy Code, and particularly the provisions of Chapter 5 of the Bankruptcy Code, must be read as a whole, because these provisions work together as a cohesive whole to replenish a debtor's estate and allow for the fair treatment of a domestic debtor's creditors. *See Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 449 (1901) ("all the sections of the [Bankruptcy] [A]ct must be construed together as means to effect its purpose").

decision in *Begier* – that the definition of "property of the estate" utilized in Section 541 is simply incorporated into Sections 547 and 548 for the purposes of prepetition property, and that this definition evidences Congressional intent that the avoidance provisions apply extraterritorially to property "wherever located." *French*, 440 F.3d at 151-152.

Section 550 of the Code provides that "to the extent that a <u>transfer</u> is avoided under section … 548 … of this title, the trustee may recover ... the property transferred." 11 U.S.C. § 550. The reference in Section 550 to the "transfer" avoided under section 548 thus expressly incorporates the meaning of the term "transfer of an interest of the debtor in property." 11 U.S.C. § 548. Thus, for the same reasons Section 548 applies extraterritorially as described above, so too does Section 550. *See French*, 440 F.3d at 152 ("Congress thus demonstrated an affirmative intention to allow avoidance [and recovery] of transfers of foreign property that, but for a fraudulent transfer, would have been property of the debtor's estate").

In addition, Congress expressed its affirmative intent to apply the recovery provisions of Section 550 extraterritorially by explicit reference in Section 541 to Section 550. Section 541 enumerates specific categories of property included in its definition of property of the estate "wherever located and by whomever held," which includes "[a]ny interest in property the trustee recovers under" Section 550. 11 U.S.C. § 541(a)(3). In order to give effect to the phrase "wherever located" in connection with Section 541(a)(3), this provision must be interpreted to mean that Section 550 applies extraterritorially, otherwise it would render Section 541(a)(3) a nullity. Such a result would be contrary to fundamental canons of statutory interpretation.

Because Congress has expressed its affirmative intent that the avoidance and recovery provisions apply extraterritorially, they necessarily work together to enable the Trustee to

recover fraudulently conveyed customer property whether located in the United States or overseas.

     **B.**      **The Plain Language of SIPA Makes Clear that it Applies Beyond the Boundaries of the United States**

SIPA § 78eee(b)(2)(A) grants federal courts "exclusive jurisdiction of such debtor and its property *wherever located* (including property located outside the territorial limits of such court and property held by any other person as security for a debt or subject to a lien)." 15 U.S.C. § 78eee(b)(2)(A)(i) (emphasis added). That same provision also grants the bankruptcy court "the jurisdiction, powers, and duties conferred upon a court of the United States having jurisdiction over cases under Title 11" (15 U.S.C. § 78eee(b)(2)(A)(iii))—powers and jurisdiction that are not confined to the borders of the United States. *See Picard v. Maxam Absolute Return Fund, L.P.*, 2012 WL 1570859, at *4 (S.D.N.Y. May 4, 2012) ("Congress *has* expressed its intent that bankruptcy courts (by delegation from district courts) are to have jurisdiction over a debtor's estate of property, *wherever located* and by *whomever held*.") (internal citations omitted) (emphasis in original in part); *Sinatra v. Gucci* (*In re Gucci*), 309 B.R. 679, 683 (S.D.N.Y. 2004); *Picard v. Chais* (*In re Bernard L. Madoff Inv. Secs. LLC*), 440 B.R. 274, 281-82 (Bankr. S.D.N.Y. 2010) (recognizing that the power to avoid and recover fraudulent transfers and preferences may be applied both in the United States and beyond).

     Moreover, the Trustee has authority under SIPA to recover property constituting a fraudulent transfer when, as here, customer property is not sufficient to pay in full the claims of customers. Section 78fff-2(c)(3) of SIPA provides that "the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if

23

and to the extent that such transfer is voidable or void under the provisions of Title 11."[25]   15
U.S.C. § 78fff-2(c)(3).

*In re Bevill* is particularly relevant here because it is the only case that has analyzed the
extraterritorial reach of SIPA.  *See Hill v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler,
& Schulman, Inc.)*, 83 B.R. 880, 895-96 (D.N.J. 1988).  The *Bevill* court analyzed the statute and
concluded that Congress intended for SIPA to apply extraterritorially.  In reaching its conclusion,
the *Bevill* court highlighted the fact that SIPA "grants federal district courts exclusive
jurisdiction of the debtor and its property wherever located (including property located outside
the territorial limits of such court.)"  *Id.* at 895 (internal marks and citation omitted).  The court
concluded that SIPA's sweeping jurisdiction combined with its aim of protecting customers of a
failed U.S. broker-dealer through the ratable distribution of customer property evidenced
Congress' intent to apply SIPA § 78fff-2 (c)(3) extraterritorially.  *Id.*

Finally, SIPA expressly grants the Trustee with the authority to avoid and recover
transfers to the extent they are void or voidable pursuant to Title 11 of the U.S. Code.  *See* 15
U.S.C. §§ 78fff-2(c)(3), 78fff(b).  Thus, for all of the reasons set forth above, because Sections
548 and 550 of the Code apply extraterritorially, so too does SIPA in this context.

---

[25] Defendants argue that Section 78fff-2(c)(3) of SIPA does not provide for extraterritorial
avoidance powers because, among other things, the statute refers to "the laws of any State to the
contrary notwithstanding."  But that phrase, taken in the context of Section 78fff-2(c)(3), has
nothing to with territoriality and is merely there to provide that for purposes of a preference
action (which can only be brought against a creditor) brought against a customer under Section
547(a) of the Bankruptcy Code, such customer is deemed a "creditor," notwithstanding any state
law to the contrary.  *Cf.* Section 547(b) of the Code ("the trustee may avoid any transfer of an
interest of the debtor in property (1) to or for the benefit of a <u>creditor</u>") (emphasis added).

### III.  HALTING THE BANKRUPTCY CODE AT THE U.S. BORDERS WOULD HAVE ABSURD RESULTS

#### A.  Congress Never Intended to Permit a U.S. Debtor to Fraudulently Transfer its Property Oversees to the Detriment of its Creditors

Defendants wrongly interpret the Bankruptcy Code and SIPA as being geographically limited to the recovery of fraudulent transfers that remain only within the United States' borders. (Defs' Br. at 6-8).  Such an interpretation would render the avoidance and recovery provisions of the Code utterly ineffectual,[26] and have absurd results.

In particular, restricting the avoidance and recovery provisions to use within the geographic United States would provide an avenue for all future domestic debtors to defraud and evade their creditors by simply transferring all of their assets overseas where they could never be recovered by a U.S. trustee.  Under Defendants' interpretation of *Morrison*, if Madoff had transferred his defrauded customers' billions of dollars to a relative residing in England, who subsequently transferred those funds to another relative in Switzerland, the Trustee would be precluded as a matter of law from recovering those funds.

As the Eleventh Circuit noted in affirming a trustee's avoidance and recovery action in connection with a debtor who attempted to evade its creditors by having the same funds transferred over 100 times:

> The cornerstone of the bankruptcy courts has always been the doing of equity, and in situations such as this, where money is spread throughout the globe, fraudulent transferors should not be allowed to use § 550 as both a shield and a sword.  Not only would subsequent transferees avoid incurring liability, but they would also defeat recovery and further diminish the assets of the estate.  An opposite result would foster the creation of similar enterprises, for creditors would design increasingly complex transactions, with the knowledge that more transfers decrease the likelihood of a successful avoidance action.  Moreover, the increased

---

[26] *See United States v. Menasche*, 348 U.S. 528, 538 (1955).

cost in litigation and the delays associated with prolonged investigations would
only contribute to a debtor's shrinking estate.

*In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 707 (11th Cir. 2005) (internal marks and citations

omitted).

As the Fourth Circuit has noted, "it is unlikely that Congress would desire to accord an

invariable exemption from the Code's operation to those who leave our borders to engage in

fraud." *French*, 440 F.3d at 155 (Wilkinson, J. concurring); *Underwood v. Hilliard* (*In re Rimsat*

*Ltd.*), 98 F.3d 956, 961 (7th Cir. 1996) (Posner, J.) ("[t]he efficacy of the bankruptcy proceeding

depends on the court's ability to control and marshal the assets of the debtor wherever located");

*see also Steele*, 344 U.S. at 287 (Supreme Court refusing to apply presumption against

extraterritoriality to case where defendants' deliberate actions in violation of Lanham Act taken

outside of the United States caused injury within the U.S., finding that "we do not think that

petitioner by so simple a device can evade the thrust of the laws of the United States in a

privileged sanctuary beyond our borders").

**B.** **Congress Did Not Intend for the Code's Application to Depend upon a
Party's Foreign Residence Status**

The Bankruptcy Code contains no exceptions to its application based upon a party-in-

interest's domicile, and this is exemplified by the fact that the Code provides the same rights and

protections to foreign creditors as it does U.S. creditors. Thus, in a proceeding under Title 11,

the Trustee acts as a fiduciary for *all* creditors, and there is no priority or special treatment

accorded to creditors because of their United States residence. *See* 11 U.S.C. § 101(10).

Similarly, nothing in SIPA's definition of "customers" excludes foreign investors from its

protections, nor provides any preferential treatment or priority to U.S. customers. *See* 15 U.S.C.

§ 78lll(2). In other words, SIPA and the Bankruptcy Code provide for the participation and

status of foreign customers and creditors on a *pari passu* basis with all other customers and creditors.

Indeed, several of the Moving Defendants who claim that the Bankruptcy Code and SIPA are inapplicable to them because they are foreign domiciliaries, have sought to take advantage of the protections of SIPA and the Bankruptcy Code by filing claims pursuant to those acts against BLMIS's estate.[27] *See* Defs' Br. at 12. Interpreting the Code in the manner proposed by Defendants would have the absurd result of favoring a debtor's foreign creditor/customers over domestic creditors/customers, because foreign creditors could share in the estate and yet be immunized from liability for any avoidance and recovery actions to the detriment of U.S. creditors, a result Congress plainly never intended.

## IV. GIVEN THE FACT INTENSIVE NATURE OF THE EXTRATERRITORIALITY ANALYSIS, DISMISSAL AT THIS STAGE IS PREMATURE

Assuming, *arguendo*, that the Court were to accept Defendants' arguments, dismissal at this stage would be inappropriate. At a minimum, further fact-gathering would be necessary to identify where particular defendants reside and where the fraudulent transfers and subsequent transfers took place. *See Ficeto*, 667 F.3d at 71 (concluding that plaintiffs should be given leave to amend in order to plead additional factual allegations, as their briefs and oral argument represented that additional facts could support that extraterritoriality under *Morrison* was not required); *SEC v. Gruss*, 2012 WL 1659142, at *11 (same).

---

[27] Defendants assert that because the Trustee denied certain of their customer claims, that somehow this suggests that SIPA lacks extraterritorial reach. *See* Defs' Br. at 21-22. To the contrary, the denial of certain defendants' claims had nothing to do with their foreign status, but was instead due to the fact that these parties did not qualify as "customers" under SIPA because they were indirect investors of BLMIS. *See Securities Investor Protection Corporation v. Bernard L. Madoff Investment Secs. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom.*, *Aozora Bank Ltd. v Securities Investor Protection Corporation*, 2012 WL 28468 (S.D.N.Y. Jan. 4, 2012).

The various Moving Defendants all stand in unique postures vis-à-vis BLMIS. Some were direct BLMIS customers, who directly availed themselves of investing in the U.S., and who agreed to jurisdiction in New York (*e.g.*, Radcliff Investments Limited, Plaza Investments International Limited). Still others are subsequent transferees who directed their investments to Feeder Funds, which were managed by U.S. entities, while knowing the Feeder Funds' assets would be held by BLMIS (*e.g.*, Banco Bilbao Vizcaya Argentaria, Merrill Lynch International). Still other Defendants have filed claims within this proceeding and, accordingly, have irrevocably subjected themselves to the jurisdiction of the bankruptcy court (*e.g.*, Cardinal Management, Inc., Defender Limited, Estate of Doris Igoin). Others invested in U.S.-based Feeder Funds (*e.g.* ABN Amro). As to others who claim to have no contact with the U.S. or to have received subsequent transfers abroad, the parties should have the opportunity to take adequate discovery regarding these matters before the Court issues any final ruling on this matter.[28]

---

[28] *See Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310-1311 (11th Cir. 2011) (holding that the bright-line nature of the *Morrison* test and the lack of information given in the early stages of the proceeding prevented the Court from determining the extraterritoriality question); *In re Optimal U.S. Lit.*, ---F. Supp. 2d ---, No. 10 Civ. 4059 (SAS), 2012 WL 1988713, at *1 (S.D.N.Y. June 4, 2012) (reaffirming that the "*Morrison* argument was better resolved in the context of a more fully-developed factual record that unequivocally establishes where all of [the] shares were issued" (internal marks and citation omitted)); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010) (finding that a "more developed factual record is necessary to inform a proper determination as to whether [*Morrison* applied]" (citation omitted)); *De Lage Landen Fin. Servs., Inc. v. Rasa Floors LP*, Civ. No. 08–0533, 2009 WL 884114, at *8-9 (E.D. Pa. March 31, 2009) (applying New York law) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests the Court deny the Motion.


Dated: August 17, 2012          /s/ Regina Griffin
       New York, NY             David J. Sheehan
                                Regina Griffin
                                Thomas L. Long
                                Stacey A. Bell
                                Amanda Fein
                                BAKER & HOSTETLER LLP
                                Rockefeller Plaza
                                New York, New York 10111
                                Telephone: (212) 589-4200
                                Facsimile: (212) 589-4201

                                *Attorneys for Trustee Irving H. Picard, Trustee
                                for the SIPA Liquidation of Bernard L. Madoff
                                Investment Securities LLC and Bernard L.
                                Madoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 12-mc-00115 (JSR) |
| Plaintiff-Applicant, | ECF Case |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | Electronically Filed |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

<u>**AFFIDAVIT OF SERVICE**</u>

| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF NEW YORK | ) |

CHRISTINA I. BELANGER, being duly sworn, deposes and says: I am over eighteen

years age, not a party to this action and am employed by the law firm of Baker & Hostetler LLP,

located at 45 Rockefeller Plaza, New York, NY 10111.

On August 17, 2012, I served the ***TRUSTEE'S MEMORANDUM OF LAW IN***

***OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONCERNING***

***EXTRATERRITORIALITY AS ORDERED BY THE COURT ON JUNE 6, 2012*** by emailing

the interested parties true and correct copies via electronic transmission to the email addresses

designated for delivery to those parties or by placing a true and correct copy thereof in a sealed

package designated for regular U.S. Mail to the designated party as set forth on *Schedule A*.

10683346

**TO:**     See *Attached Schedule A*

CHRISTINA I. BELANGER

Sworn to before me this
17th day of August, 2012

_____
Notary Public

Theresa Blaber
Notary Public, State of New York
No. 01BL6122229
Qualified in Queens County
Commission Expires

10683346

## SCHEDULE A

lfriedman@cgsh.com; bpeace@cgsh.com; marc.gottridge@hoganlovells.com;
andrew.behrman@hoganlovells.com; michael.feldberg@allenovery.com; bethany.kriss@allenovery.com;
fvelie@sandw.com; jkortmansky@sandw.com; mstein@sandw.com; susan.saltzstein@Skadden.com;
Marco.Schnabl@Skadden.com; jeremy.berman@Skadden.com; jason.putter@skadden.com;
jcooney@mckoolsmith.com; ehalper@mckoolsmith.com; vweber@mckoolsmith.com;
gmashberg@proskauer.com; rspinogatti@proskauer.com; hkafele@shearman.com;
jshally@shearman.com; jessica.bartlett@shearman.com; dmark@kasowitz.com; tmoloney@cgsh.com;
tkinzler@kelleydrye.com; dschimmel@kelleydrye.com; jmetzinger@kelleydrye.com;
eoconnor@fzwz.com; Jzulack@fzwz.com; mdavis@fzwz.com; bpolovoy@shearman.com;
Cfenton@shearman.com; alipson@shearman.com; zlandsman@beckerglynn.com;
jstern@beckerglynn.com; mmufich@beckerglynn.com; dgreenwald@cravath.com; rlevin@cravath.com;
bieber@thsh.com; delbaum@bruneandrichard.com; davidbernfeld@bernfeld-dematteo.com;
andrea.robinson@wilmerhale.com; charles.platt@wilmerhale.com; george.shuster@wilmerhale.com;
telynch@jonesday.com; sjfriedman@jonesday.com; munno@sewkis.com; deroche@sewkis.com;
weitman@sewkis.com; lacyr@sullcrom.com; fritschj@sullcrom.com; sinopolea@sullcrom.com;
anthony.paccione@kattenlaw.com; petercalamari@quinnemanuel.com;
marcgreenwald@quinnemanuel.com; erickay@quinnemanuel.com; davidmader@quinnemanuel.com;
mcunha@stblaw.com; pkazanoff@stblaw.com; fkessler@wmd-law.com; pdefilippo@wmd-law.com;
mburke@wmd-law.com; mpgoodman@debevoise.com; soshea@osheapartners.com;
mpetrella@osheapartners.com; gkurtz@whitecase.com; ahammond@whitecase.com; bbaird@cov.com;
dfetterman@kasowitz.com; espiro@maglaw.com; andrew.levander@dechert.com;
david.hoffner@dechert.com; joseph.samet@bakermckenzie.com; ira.reid@bakermckenzie.com;
Jpmoodhe@debevoise.com; srselden@debevoise.com; jay.lefkowitz@kirkland.com;
joseph.serino@kirkland.com; david.flugman@kirkland.com; tklestadt@klestadt.com;
bscott@klestadt.com; Jcooperman@KelleyDrye.com; skim@kelleydrye.com; aunger@sidley.com;
bkrakauer@sidley.com; kdarr@steptoe.com; skim@steptoe.com; brian.muldrew@kattenlaw.com;
gary.mennitt@dechert.com; Scott.Schreiber@aporter.com; Andrew.Karron@aporter.com;
jeff.butler@cliffordchance.com; mewiles@debevoise.com; Pamela.Miller@aporter.com;
Kent.Yalowitz@aporter.com; david.Parham@bakermckenzie.com; edavis@cgsh.com;
ACattell@stblaw.com; glee@mofo.com; jhaims@mofo.com; ldearcy@mofo.com; kfletcher@mofo.com;
christopher.harris@lw.com; cameron.smith@lw.com; jodikleinick@paulhastings.com;
barrysher@paulhastings.com; Lacyr@sullcrom.com; nelless@sullcrom.com;
macgimseyd@sullcrom.com; berarduccip@sullcrom.com; mars@sullcrom.com; nfk@stevenslee.com;
morgenstern@butzel.com; abraham@butzel.com; alter@butzel.com; fishere@dicksteinshapiro.com;
seidelb@dicksteinshapiro.com; greers@dicksteinshapiro.com; bergers@dicksteinshapiro.com;
estearns@stearnsweaver.com; hmoorefield@stearnsweaver.com; ccanino@stearnsweaver.com;
jcioffi@dglaw.com; bginsberg@dglaw.com; hrubin@dglaw.com; jserritella@dglaw.com;
david.onorato@freshfields.com; cheryl.howard@freshfields.com; susan.higgins@freshfields.com;
Jonathan.Vine@csklegal.com; jberman@msek.com; brian.sabados@kattenlaw.com;
wsushon@omm.com; seftekhari@omm.com; robert.fischler@ropesgray.com; ssally@ropesgray.com;
rlack@fklaw.com; gfox@fklaw.com; lfriedman@cgsh.com; mark.ciani@kattenlaw.com;