**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  August 30, 2017
Hearing Time:  10:00 AM (EST)
Objection Deadline:  August 2, 2017

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM
HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING
INTERESTS IN THE BRIGHTON COMPANY AND THE POPHAM COMPANY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 3

BACKGROUND ...................................................................................................... 4

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 4

    B.    THE ACCOUNT HOLDERS' STRUCTURES, BLMIS ACCOUNTS,
        AND OBJECTING CLAIMANTS' CLAIMS ...................................................... 6

        1.    The Brighton Company ........................................................................ 6

        2.    The Popham Company ......................................................................... 8

        3.    The BLMIS Account Records ............................................................ 10

        4.    The Claims .......................................................................................... 11

    C.    THE CUSTOMER DECISIONS ....................................................................... 12

ARGUMENT ............................................................................................................ 14

CONCLUSION ......................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
   216 B.R. 719 (Bankr. S.D.N.Y. 1998) .................................................................13

*Appleton v. First Nat'l Bank of Ohio*,
   62 F.3d 791 (6th Cir. 1995) ...............................................................................13

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010)...................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011) ................................................................18

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011).......................................................................... *passim*

*Crocker Nat'l Bank v. Perroton*,
   255 Cal. Rptr. 794 (Cal. App. 1st Dist. 1989) .......................................................15

*Evans v. Galardi*,
   546 P.2d 313 (Cal. 1976) ..................................................................................15

*Everest Investors 8 v. McNeil Partners*,
   8 Cal. Rptr. 31 (Cal. 4th Dist. 2003).....................................................................15

*Firstbank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*,
   562 B.R. 234 (S.D.N.Y. 2016), *aff'd*, No. 16-2547-bk (2d Cir. June 29, 2017) ....................13

*In re Klein, Maus & Shire, Inc.*,
   301 B.R. 408 (Bankr. S.D.N.Y. 2003) ................................................................18

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   708 F.3d 422 (2d Cir. 2013)........................................................................ *passim*

*In re Lehman Bros., Inc.*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002) ................................................................13

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002) ..............................................................3, 18

*In re New Times Sec. Servs., Inc.*,
   463 F.3d 125 (2d Cir. 2006).............................................................................13, 18

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   779 F.3d 74 (2d Cir. 2015)........................................................................................15, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
   515 B.R. 161 (Bankr. S.D.N.Y. 2014) .............................................................. *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*,
   Adv. P. No. 08-01789(SMB),
   2017 WL 1323473*1 (Bankr. S.D.N.Y. Apr. 10, 2017)........................................12

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
   533 F.2d 1314 (2d Cir. 1976)......................................................................... *passim*

*SEC v. Madoff*,
   No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

**Statutes**

15 U.S.C. § 78aaa *et seq* ...........................................................................................1

15 U.S.C. § 78eee(a)(4) ...............................................................................................2

15 U.S.C. § 78eee(b)(3), (4) ........................................................................................3

15 U.S.C. § 78fff-1(a) ..................................................................................................3

15 U.S.C. § 78fff-2(b) ................................................................................................16

15 U.S.C. § 78fff-3(a) ..................................................................................................3

15 U.S.C. § 78*lll*(2), (4), (11) ..............................................................................2, 3, 12, 16

Cal. Civ. Proc. Code Ann. § 688 ..............................................................................15

Cal. Corp. Code Ann. § 15901.04 ............................................................................15

Cal. Corp. Code Ann. § 15912.06 ............................................................................15

**Rules**

Fed. R. Civ. P. 36(a)(3)......................................................................................6, 7, 16

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..................................................10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of twenty-seven (27) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who were investors in limited partnerships that subsequently invested in BLMIS account holders,—The Brighton Company ("Brighton") and/or The Popham Company ("Popham").[2]  The Objecting Claimants are specifically identified on Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith.  This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").[3]

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding apart from the customer status of the account holders—Brighton and Popham—despite the fact that they neither had BLMIS accounts in their names nor had any direct financial relationship with BLMIS.

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] As discussed *infra*, the Objecting Claimants' customer claims, objections to the Trustee's claims determinations, or both, confirm that their financial relationships were with entities that in turn made investments in Brighton or Popham, and that none of the Objecting Claimants invested directly with Brighton or Popham.

[3] The Motion does not seek to overrule any claim or right to payment Objecting Claimants may or may not have to the restitution fund to be created by the Attorney General of the State of California to resolve claims of limited partners and other investors against Brighton and Popham pursuant to the settlement agreements entered in relation to the Trustee's avoidance actions against the Estate of Stanley Chais and other defendants.  *See Picard v. Estate of Stanley Chais*, Adv. No. 09-01172 (Bankr. S.D.N.Y. Oct. 28, 2016) (ECF Nos. 152-2, 152-3, 152-4); *see also Picard v. Hall*, Adv. No. 12-01001 (Bankr. S.D.N.Y. Oct. 28, 2016) (ECF Nos. 62-2, 62-3, 62-4).  Rather, it seeks to resolve only the Objecting Claimants' claims and docketed objections to the Trustee's claims determinations that they are not customers as that term is defined by SIPA.

Instead, they each invested in a limited partnership or partnership that, in turn, directly or

indirectly, invested in Brighton or Popham, each of which had a BLMIS account in *its* name, and

each of which invested *its* assets with BLMIS.  The case is governed by the Second Circuit

decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422

(2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976),

and the many related decisions in this SIPA proceeding, referenced in Section C *infra*, involving

the question of who is a "customer" under SIPA.  The current Motion seeks to apply these

decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of

their claims as listed in Exhibit 2 to the Sehgal Declaration, disallowing their claims, and

overruling the related claims objections on the grounds that the Objecting Claimants are not

"customers" as such term is used at SIPA § 78*lll*(2). [4]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).  On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

---

[4] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to the fullest extent possible to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors, including claimants to the customer fund.  A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).  The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that "customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11).  For each customer with a valid net equity claim, if the customer's share of customer property does not make the customer whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered.  ECF No. 12.  Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection with this Court within a certain time period, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof.  *Id.*

### B.    THE ACCOUNT HOLDERS' STRUCTURES, BLMIS ACCOUNTS, AND OBJECTING CLAIMANTS' CLAIMS

The Objecting Claimants each invested in one of several entities that then invested in Brighton or Popham, which in turn invested in accounts with BLMIS (the "BLMIS Accounts" or "Accounts"). None of the Objecting Claimants claim to have invested directly in BLMIS. The Objecting Claimants submitted twenty-seven (27) claims, and filed twenty-three (23) related docketed objections to the Trustee's denials of those claims. No direct claims were filed with the Trustee on behalf of Brighton or Popham.

### 1.    The Brighton Company

BLMIS Account Number 1B0061 ("Account 1B0061") was opened in July 1993 in the name of "The Brighton Company." *See* Sehgal Decl. Ex. 4, AMF00150050-55, AMF00149945-46. All account opening documents, including the BLMIS Customer Agreement, Trading Authorization, and BLMIS Partnership Account Agreement, were signed by the late Stanley Chais in his capacity as general partner of Brighton.[5] *Id.*, AMF00150050-56.

Requests for withdrawals from Account 1B0061 were sent to BLMIS by Stanley Chais and were in the form of wire transfers to a bank account held in Brighton's name. *See, e.g.*, Sehgal Decl. Ex. 4, AMF00150022-4. Although Stanley Chais authorized William Chais to request withdrawals from Account 1B0061 beginning in April 2001, Stanley Chais continued to request all such withdrawals from BLMIS and no correspondence from William Chais appears in the books and records for Account 1B0061. *Id.*, AMF00150013. Likewise, virtually all correspondence with BLMIS on behalf of Account 1B0061 was sent by Stanley Chais. The only exceptions were two letters from Brighton's accountant, in 2001 and 2008, requesting

---

[5] Stanley Chais passed away in 2010, while the *Picard v. Chais* adversary proceeding (Adv. No. 09-01172) was pending. The action continued against, *inter alia*, the Estate of Stanley Chais, Brighton, and Popham and was subsequently settled. *See supra* note 3.

adjustments to recent transfers.  Sehgal Decl. Ex. 4, AMF00150015; AMF00149948.  Notably,

none of the Objecting Claimants or the limited partnerships or partnerships they invested in

appear in the BLMIS books and records relating to Account 1B0061.  *See generally id.*

Brighton was originally formed on May 31, 1973 as a California Limited Partnership.[6]

Ackerman Decl., Ex. 4, SECSAC0024687-88.  According to the Limited Partnership Agreement,

the purpose of Brighton was to "conduct[] . . . the business of arbitrage and related transactions."

*Id.*  Stanley Chais was identified as the only general partner of Brighton at the time of its

formation and remained as such in all subsequent amended limited partnership agreements.  The

Brighton Limited Partnership Agreement was amended on October 1, 1973, *id.*,

SECSAC0024727-30, January 29, 1974, *id.*, SECSAC0024731-33, January 3, 1977, *id.*,

SECSAC0024723-26, and on January 1, 1993, *id.*, SECSAC0024705-22.  Each amendment

updated the names of certain limited partners, *see id.*, SECSAC0024724, or added new limited

partners to Brighton, *see id.*, SECSAC0024728, SECSAC0024732.[7]  Stanley Chais remained the

sole general partner of Brighton at all times, with "exclusive control over the business of the

Partnership [*i.e.*, Brighton]."  *Id.* SECSAC0024696.  The Brighton Objecting Claimants are not

identified as limited partners of Brighton in the Brighton Partnership Agreement or any of the

amendments thereto.  *Id.*, SECSAC0024685-704, 723-733.

---

[6] Although the Brighton Limited Partnership Agreement states that the registration with the State of California was to occur concurrently with the execution of the Limited Partnership Agreement, *see* Ackerman Decl., Ex. 4, a search of the California business entity database did not return a current registration for The Brighton Company.  *See* CALIFORNIA SECRETARY OF STATE, BUSINESS ENTITIES (BE) ONLINE SERVICES, https://businesssearch.sos.ca.gov/ (last visited June 28, 2017).

[7] Although unsigned, the January 1, 1993 "Amended and Restated Limited Partnership Agreement [of] 'The Brighton Company'" specifies that it was to be entered in order to update "the names and capital accounts of the limited partners" to reflect the changes that were applied by the General Partner since Brighton's formation on May 31, 1973, and was substantively identical to the initial Brighton Limited Partnership Agreement in all other ways. Ackerman Decl., Ex. 4, SECSAC0024707-22.

The Trustee served discovery requests on each of the six (6) Brighton Objecting Claimants. None responded. Ackerman Decl. ¶¶ 8-9. By failing to respond to the requests for admissions, the Brighton Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). Based on their responses, each of the Brighton Objecting Claimants admitted that they did not have an account in their name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, that all property acquired by the account holder was owned by and in the name of the account holder, and that their only relationship to BLMIS existed by way of their relationship to Brighton. *See* Ackerman Decl. ¶¶ 8-9, Exs. 2-5.

No customer claim was filed on behalf of Account 1B0061. The amount of money that Brighton withdrew from Account 1B0061 was greater than the amount that was deposited, making the account holder a "net winner."[8]

### 2.    The Popham Company

BLMIS Account Number 1P0031 ("Account 1P0031") was opened on or around December 12, 1995 in the name of "The Popham Company," and all account opening documents, including the BLMIS Customer Agreement and Trading Authorization, were signed by Stanley Chais in his capacity as general partner of Popham. Sehgal Decl. Ex. 6, AMF0013516-21, AMF00134948.

All requests for withdrawals from Account 1P0031 were sent to BLMIS by Stanley Chais and he directed that all such withdrawals be in the form of wire transfers to a bank account held in Popham's name. *See, e.g.*, Sehgal Decl. Ex.6, AMF00134979-84. As with Brighton, in April

---

[8] BLMIS Account 1B0061 was a subject account in the *Picard v. Chais* adversary proceeding filed by the Trustee. *See Picard v. Estate of Stanley Chais, et al.*, Adv. No. 09-01172(SMB). *See supra* notes 3, 5.

2001, Stanley Chais notified BLMIS that William Chais was authorized to request withdrawals from Account 1P0031. *Id.*, AMF00134985. Again, despite this authorization, Stanley Chais continued to request all such withdrawals from BLMIS and no withdrawal requests from William Chais appear in the books and records for Account 1P0031. *See generally id.* Similarly, none of the Objecting Claimants or the limited partnerships or partnerships they invested in appear in the BLMIS books and records relating to Account 1P0031. *See generally id.*

The Popham Company was formed as a California Limited Partnership on April 21, 1975.[9] Ackerman Decl. Ex.5, SECSAC0025186. The "Limited Partnership Agreement of The Popham Company" identified Stanley Chais as the sole general partner, *id.* at SECSAC0025186, SECSAC002518691, and granted the general partner "exclusive control over the business of the partnership." *Id.* at SECSAC0025195. The Popham Limited Partnership Agreement was later amended on February 1, 1979, *id.* at SECSAC0024899, and April 2, 1979, SECSAC0024874, to add additional limited partners. At all times, Stanley Chais was the sole general partner of Popham. *Id.* at SECSAC0025186, SECSAC0024899, SECSAC0024874. The Popham Objecting Claimants are not identified as limited partners of Popham in the Partnership Agreement or any of the amendments thereto. *See id.* at SECSAC0025184-203, 205-210, 899-902, 874-882.

The Trustee served discovery requests on each of the eleven (11) Popham Objecting Claimants. Only one of the Popham Objecting Claimants, Maxine M. Stewart, responded to the Trustee's requests. Ackerman Decl. ¶¶ 8-11, Exs. 1-3. By failing to respond to the requests for

---

[9] A search of the California business entity database did not return a current registration for The Popham Company. *See* CALIFORNIA SECRETARY OF STATE, BUSINESS ENTITIES (BE) ONLINE SERVICES, https://businesssearch.sos.ca.gov/ (last visited June 28, 2017). However, it appears that at a minimum the April 2, 1979 Amended Certificate of Limited Partnership for Popham was filed with the State of California. Ackerman Decl. Ex.5, SECSAC0024874-81.

admissions, the other Popham Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3).

Likewise, Maxine M. Stewart admitted each of the requests for admissions. Ackerman Decl. Ex.

2, MCMDR_00000540-42. Based on their responses, both deemed and actual, each of the

Popham Objecting Claimants admitted that they did not have an account in their names at

BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive

investment statements, correspondence or tax statements from BLMIS, did not have any control,

investment discretion or decision-making power over any investments at BLMIS, that all

property acquired by the account holder was owned by and in the name of the account holder,

and that their only relationship to BLMIS existed by way of their relationship to Popham. *See*

Ackerman Decl. ¶¶ 8-11, Exs. 1-3.

No customer claim was filed on behalf of Account 1P0031. The amount of money that

Popham withdrew from Account 1P0031 was greater than the amount that was deposited,

making the account holder a "net winner."[10]

### 3.   The BLMIS Account Records

The BLMIS Accounts were held in the names of Brighton and Popham, and neither the

Objecting Claimants, nor the limited partnerships or partnerships they invested in, are identified

in the BLMIS books and records relating to the Accounts. Sehgal Decl. ¶¶ 15, 17, 24, Exs. 4, 6.

The books and records of BLMIS reflect money deposited and withdrawn by the general partner,

Stanley Chais, on behalf of Brighton and Popham, and not by the Objecting Claimants or the

entities in which they invested. *See id.*

Because the Accounts were maintained at BLMIS on behalf of Brighton and Popham,

and the deposits into and withdrawals from the Accounts were on behalf of Brighton and

---

[10] BLMIS Account 1P0031 was a subject account in the *Picard v. Chais* adversary proceeding filed by the Trustee. *See Picard v. Estate of Stanley Chais, et al.*, Adv. No. 09-01172(SMB). *See supra* notes 3, 5.

Popham, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate to Brighton and Popham.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly to or from BLMIS by the individual Objecting Claimants with regard to the Account.  They also do not show what amounts individual Objecting Claimants invested in, or withdrew from Brighton or Popham.  *See id.*  This is particularly true here, where the Objecting Claimants have admitted that their investments were with entities that in turn invested with Brighton and Popham, making their claimed customer status even more attenuated. *See, e.g.*, Sehgal Decl. Exs. 9-13.

It was Stanley Chais as the general partner who had the right to demand, on behalf of Brighton and Popham, return of the property entrusted to BLMIS for the Accounts, and Brighton and Popham that would be entitled to a customer claim to the extent of their respective net equity.

### 4.    The Claims

The Objecting Claimants, the twenty-seven (27) claims filed by them, and the twenty-three (23) docketed objections to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  Sehgal Decl. ¶¶ 8-12, Exs. 1-3.  The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS.  Sehgal Decl. ¶ 11.  This Motion addresses all docketed objections to the determinations of the specified claims by Objecting Claimants who are identified in Exhibit 2 of the Sehgal Declaration.

Since receiving the twenty-three (23) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications,

account openings, and their relationship with the account holder. Only one of the Objecting

Claimants responded. *See* Ackerman Decl. ¶ 9.

### C.    THE CUSTOMER DECISIONS

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held

interests in a limited partnership that in turn invested partnership funds with BLMIS via the

partnership's own BLMIS account "never entrusted their cash or securities to BLMIS and, thus,

fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708

F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Because the

money sent to BLMIS belonged to the accountholders, not to the individual claimants, the

claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status—

entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant

will not be entitled to customer protection under SIPA unless the debtor actually receives the

claimant's cash or securities; the debtor must actually have come into possession or control.")

(citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)). In its decision, the Second Circuit

confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of

the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted).

The Second Circuit also found that the individual claimants in *Kruse* did not exhibit other

indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they

did not exert any control over the accounts at issue and that they were not reflected in BLMIS

records. *Kruse*, 708 F.3d at 426-27. Indicia of customer status include: (i) a direct financial

relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii)

securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS;

and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Sec.*

*Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan,*

*Kennedy*"). Thus, without entrustment of assets to BLMIS and absent any evidence of any of the indicia of customer status, the Second Circuit held that the objecting claimants failed to sustain their burden of proving that they were customers of BLMIS.

After several similar decisions, on February 25, 2015, this Court read into the record a decision applying *Kruse* and *Morgan, Kennedy*, granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships. ECF No. 9506 at 30 ("*S&P Decision*"). Relying on the prior decisions from the Bankruptcy Court, District Court and Second Circuit considering the meaning of the term "customer" under SIPA, this Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. The Court held that the objecting partners failed to sustain their burden of proving that they are customers, instead they invested their assets with the partnerships.

Since *Kruse*, and including the *S&P Decision*, there have been eighteen decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.[11]   *See Sec. Inv'r Prot. Corp. v. Bernard L.*

---

[11] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third

*Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y.

2014) (the "*ERISA Claimant Decision*") (noting that prior decisions established that the burden is

on the claimant to establish that he is a "customer" entitled to SIPA protection, and that such

showing is not easily met); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re

Bernard L. Madoff)*, Adv. P. No. 08-01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y.

Apr. 10, 2017).

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities."  SIPA § 78*lll*(2).  Thus,

to be a "customer," an investor must have entrusted cash or securities to the debtor for the

purpose of trading or investing in securities.

In *Kruse*, the Second Circuit found that investors who bought interests in a limited

partnership that invested partnership funds via the partnership's own BLMIS account "never

entrusted *their* cash or securities to BLMIS and, thus, failed to satisfy this 'critical aspect of the

---

Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); and Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017).  A nineteenth motion, Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in the Lambeth Company, was filed on June 15, 2017 and is currently pending before this Court with a scheduled hearing date of July 26, 2017, ECF No. 16186.

"customer" definition'" regardless of their intent.  708 F.3d at 427 (quoting *In re Bernard L.*

*Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times*

*Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment

of cash or securities to the broker-dealer for the purposes of trading securities."  463 F.3d 125,

128 (2d Cir. 2006) (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.

1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y.

1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for

the purpose of trading and investing in the securities market.").  The Second Circuit further

upheld this principle in *In re Lehman Bros., Inc.*, concluding that the "critical aspect of the

'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes

of trading securities."  791 F.3d 277, 282 (2d Cir. 2015) (quoting *In re Bernard L. Madoff Inv.*

*Secs. LLC*, 654 F.3d at 236); *see also FirstBank Puerto Rico v. Giddens (In re Lehman Bros.*

*Inc.)*, 562 B.R. 234, 242-43 (S.D.N.Y. 2016) (holding that "entrustment" of securities for

purposes of customer status under SIPA requires more than "mere delivery" and a claimant must

have had a "fiduciary relationship" with the debtor), *aff'd,* No. 16-2547-bk (2d Cir. June 29,

2017).

The Objecting Claimants' asserted interests in Brighton and Popham based on their

investments in one of the limited partnerships or partnerships invested in Brighton and Popham

do not meet the requirements for "customer" status outlined in the seminal Second Circuit

decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427.  This is

especially true here where the Objecting Claimants each invested in an entity that subsequently

invested in the account holder.  In *Morgan Kennedy*, the Second Circuit rejected the argument

that the beneficial owners of the account holder were the "customers" under SIPA, citing the

facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy* and *Kruse*, and their investments in a limited partner or partner of the account holder do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*. *S&P Decision* at 30.  The Objecting Claimants entrusted their money to an entity that then entrusted *its* assets to the account holder, who then entrusted *its* assets to BLMIS.  The Objecting Claimants entrusted none of their assets directly to BLMIS and therefore, each lacked a direct financial relationship with BLMIS on their own behalf.  The money entrusted to BLMIS was the property of Brighton or Popham, not the Objecting Claimants and not the limited partnerships or partnerships into which the Objecting Claimants invested and that, in turn, invested in Brighton or Popham.  Further, the Accounts were in the names of Brighton and Popham, not in the names of Objecting Claimants.

The individual financial interests of the Objecting Claimants were not identified in or identifiable from BLMIS' books and records relating to the Accounts.  Only Brighton and Popham, not the Objecting Claimants, and not the limited partnerships or partnerships they invested in, entrusted their assets to BLMIS.  The Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition."  *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169. Whether the Objecting Claimants intended Brighton or Popham to invest with BLMIS is

irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

Brighton and Popham, as discussed above, were each California Limited Partnerships each with multiple limited partners and a single, common general partner, Stanley Chais. Because a California limited partnership is an entity distinct from its partners, the funds that were ultimately contributed to Brighton and Popham, and anything that Brighton or Popham purchased with those funds, belongs to Brighton or Popham—not the Objecting Claimants. CAL. CORP. CODE ANN. § 15901.04 (West).[12]  Like the objecting claimants dealt with by prior customer decisions, the Objecting Claimants do not individually own the assets that Brighton and Popham invested in accounts with BLMIS.  Instead, the assets are owned by Brighton and Popham respectively.  It was Brighton and Popham, and not the Objecting Claimants, which each entrusted assets to BLMIS for the purpose of purchasing securities.  Thus, it was Brighton and Popham, through their general partner, which had the right to direct the investment of those assets and to withdraw property from their respective Accounts on their respective behalves. *Kruse*, 708 F.3d at 427.  Brighton and Popham, and not the Objecting Claimants, were the customers for the Accounts under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity.  The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

---

[12] Although the Uniform Limited Partnership Act of 2008 repealed the prior partnership law for all limited partnerships formed on or after January 1, 2008, Brighton and Popham were formed in 1973 and 1975, respectively, and thus are unaffected by the enactment. *See* CAL. CORP. CODE ANN. § 15912.06 (discussing the application of Uniform Limited Partnership Act of 2008 to limited partnerships formed prior to the statute's effective date).  As with the current Act, under the Act's predecessor, a "limited partner has no interest in the partnership property by virtue of his status as a limited partner." *Evans v. Galardi*, 546 P.2d 313, 319 (Cal. 1976) (citing CAL. CIV. PROC. CODE ANN. § 688 (West)); *see also Everest Investors 8 v. McNeil Partners,* 8 Cal. Rptr. 31, 40 (Cal. 4th Dist. 2003); *Crocker Nat'l Bank v. Perroton*, 255 Cal. Rptr. 794, 797 (Cal. App. 1st Dist. 1989).

the return of customer property" by "protecting the custody function of brokers." *Sec. Inv'r*

*Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d

Cir. 2015) (finding impermissible the application of interest or time-based damages to customer

claims under SIPA). Customers share in the fund of customer property ratably, according to

each customer's "net equity." *Id*. at 77, 81. The definition of net equity is limited by the

fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash

or in actual securities. *Id*. at 80; *see also* SIPA § 78fff-2(b)(requiring the Trustee to discharge

the obligations of the debtor to customers with valid claims "insofar as such obligations are

ascertainable from the books and records of the debtor or are otherwise established to the

satisfaction of the trustee). [13] The BLMIS books and records relating to the Accounts show that

the Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their

own behalf, and none appear in those books and records. Sehgal Decl. ¶¶ 15, 17, Exs. 4, 6. The

Objecting Claimants accordingly have no net equity and are not "customers" within the meaning

of SIPA.

Each of the Objecting Claimants was served with requests for admission, interrogatories,

and requests for production. Only one responded, and she admitted each request for admission.

Ackerman Decl. ¶¶ 9-10, Ex. 2. By failing to respond to the requests for admissions, the

remaining Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). The admissions, both

deemed and actual, show that Objecting Claimants lack any relationship with BLMIS that fits the

*Morgan Kennedy* criteria and that their claims of "customer" status are baseless. Specifically,

---

[13] SIPA §78*lll*(11) sets forth the definition of "net equity" as "the dollar amount of the account or accounts of a customer," and net equity is to be "determined by . . . [c]alculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date . . . all securities positions of such customer."

they admitted that: (i) the relevant Account was not titled in their name;[14] (ii) that they never received investment statements or tax statements in their names from BLMIS;[15] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[16] (iv) never deposited securities directly with BLMIS;[17] (v) that they never withdrew or received funds directly from BLMIS;[18] (vi) that their only relationship to BLMIS existed by way of their relationship to the account holder;[19] (vii) that they never entered into any contracts in their names with BLMIS;[20] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[21]  These admissions are supported by the Objecting Claimants' claims and docketed objections.  The claims and docketed objections confirm that the Objecting Claimants' relationships were with the limited partnerships or partnerships that subsequently invested with Brighton or Popham, and not with BLMIS, making them "indirect claimants,"[22] and Brighton or Popham the customers for purpose of SIPA.[23]

---

[14] Ackerman Decl. Exs. 1-2, ¶ 1.

[15] *Id.* ¶¶ 8, 9.

[16] Ackerman Decl., Exs. 1, ¶ 4; 2, ¶ 5.

[17] Ackerman Decl., Exs. 1, ¶ 5; 2, ¶ 4.

[18] Ackerman Decl., Exs. 1-2, ¶ 6.

[19] *Id.* ¶ 11.

[20] *Id.* ¶ 10.

[21] *Id.* ¶ 12.

[22] *See* Nancy Silverton Objection to Claim Determination, ECF No. 1555 (Claimant is "an indirect investor" and "the only 'customer' in this chain is The Brighton Company (Stanley Chais sole, General Partner))."  *See also* Sehgal Decl. Ex. 10, MWPTAP00531810 ("The Claimant is not a direct customer of Bernard L. Madoff Investment Securities LLC ('BMIS')" and Douglas B. Hall o/b/o Vivian Halpern Hall (deceased) "Popham Company, . . . is believed to be a customer of BMIS with claims to securities and other assets of BMIS.").

[23] *See, e.g.*, Sehgal Decl. Ex. 12, MWPTAP01077900 ("Dottie's Group was an investor in The Popham Company, which is, upon information and belief a "customer," as defined by the Securities Investor Protection Act of 1970 ("SIPA"), of BLMIS."); *see also, e.g.*, Sehgal Decl. Ex. 13, MWPTAP00531498 ("Brighton Partnership A Registered Customer of BMIS").

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm

the Trustee's determination denying the Objecting Claimants' twenty-seven claims, overrule the

Objecting Claimants' twenty-three docketed objections, disallow their claims, and grant such

other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 12, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*