**BakerHostetler**

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

July 14, 2017

**VIA ECF AND ELECTRONIC MAIL**

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 723
New York, New York  10004-1408
Bernstein.chambers@nysb.uscourts.gov

Re:   In re: Bernard L. Madoff—Trustee's Response to Chaitman LLP's Memorandum Dated June 26, 2017 (ECF No. 16236)

Dear Judge Bernstein:

We write on behalf of Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), in response to your request at the June 29, 2017 hearing ("June 29 Hearing") for additional information regarding the production of 4,700 unrestored microfilm reels.  Subject to Chaitman LLP bearing the full expenses of duplication and/or production, the Trustee will make the 4,700 reels of microfilm available to Chaitman LLP.  The production of the microfilm reels, however, should not further delay any deposition of Mr. Madoff.

      **A.**    **Judge Maas's March 15, 2017 Order on "Trading Records"**

The issues surrounding the microfilm have arisen in the context of a discovery dispute around "trading records."  Before we proceed further, it is important to clarify the term "trading records."

Through its AS-400 and predecessor systems, BLMIS generated customer statements and trade confirmations sent to its Investment Advisory ("IA") business customers.  As Mr. Madoff has acknowledged, these documents did not reflect real trading and were used to perpetrate his fraud on his customers.  In his proffer session with the Government in 2008, Mr. Madoff stated that "[c]ustomers received both monthly account statements and trade confirmation reflecting trades th[at] never took place."  (ECF No. 16046 at BHUSAO0000022.)   The AS-400 was also

used to generate dozens of other documents and internal reports regarding IA accounts for use by BLMIS employees.

The AS-400 used for the IA business was a closed system. The data that resided in it was manually entered by BLMIS employees using historical, publicly-available securities data. The AS-400 was not programmed to execute trading nor was it connected with any outside feeds or data sources. It merely provided a means of tracking historical securities data, and generating statements reflecting fabricated securities transactions, trade confirmations, and other internal reports. While the documents generated from the AS-400 reflect *purported* securities trading, they are not "trading records."

On the other hand, it is undisputed that BLMIS engaged in trading through its market making and proprietary trading desks. These business units, their trading counterparties, and their clearing entity, the Depository Trust & Clearing Corporation ("DTCC"), generated records reflecting actual securities trades. While these documents could be correctly referred to as "trading records," they are the trading records of BLMIS's market making and proprietary trading units, not the IA business. They are irrelevant to the issue of when the fraud began in the IA business. These records should not and cannot be conflated with BLMIS documents generated by the AS-400 for the IA business.

In response to Ms. Chaitman's request for "trading records," the Trustee has (i) made available millions of pages of BLMIS documents through E-Data Room 1 ("EDR1"); (ii) restored approximately 600 reels of microfilm and produced the documents from such reels; (iii) applied search terms across 30 million records in the BLMIS database and produced such records; and (iv) provided Ms. Chaitman with two comprehensive and searchable electronic indices of all hard-copy BLMIS records and electronic media in the Trustee's possession, including over 20,000 pieces of unrestored media. Notwithstanding these disclosures, Ms. Chaitman filed numerous motions to compel additional records that were heard and decided by Judge Maas.

Four months ago, Judge Maas issued an order governing any additional discovery into purported BLMIS "trading records." *See* Discovery Arbitrator's Order, dated March 15, 2017, attached hereto as Exhibit A (the "March 15 Order"). In that order—which denied Ms. Chaitman's second motion to compel such records—Judge Maas directed Ms. Chaitman "to confer in person regarding the Defendants' request for BLMIS trading records," and to "send the Trustee's counsel a letter specifically identifying the additional documents [Ms. Chaitman] seeks to have produced, and where she believes they may be found." *Id.* at 6. As explained in his order, Judge Maas placed the burden on Ms. Chaitman precisely because he recognized the significant efforts the Trustee had made to identify and produce documents responsive to Ms. Chaitman's broad demands. *Id.* at 4-6.

Ms. Chaitman has simply ignored this order. Instead, Ms. Chaitman used the "Day 2" Madoff Deposition briefing and hearing to malign the Trustee's significant discovery efforts over the history of this case and to demand the restoration and production of <u>all</u> microfilm in the Trustee's possession—irrespective of any articulable relevance, cost, or proportionality to her cases.

Despite the fact that Ms. Chaitman is improperly seeking an end-run around Judge Maas's order, the Trustee will make 4,700 microfilm reels available to Ms. Chaitman so long as such production is at her expense. The Trustee will provide an additional, searchable, microfilm-specific index to Ms. Chaitman. (*See* Exhibit B.)[1] If any other financial arrangement is contemplated—including any cost-sharing by the parties—the Trustee submits that Ms. Chaitman's request for production of an additional 4,700 reels of microfilm must be denied until and unless Ms. Chaitman makes a good faith effort to comply with the terms of Judge Maas's March 15 Order, including a review of the indices to identify the specific reels she wants restored and an in-person meet and confer with the Trustee's counsel. The Trustee also requests that he be afforded the opportunity make a motion for a protective order should any financial arrangement other than Ms. Chaitman bearing the full costs of production of the 4,700 reels be contemplated at this juncture.

### B.  The Trustee Has Been Transparent About the Microfilm in His Possession

Contrary to Ms. Chaitman's accusations in her June 26 Memorandum, the Trustee has always been open and transparent regarding the preservation, processing, content, and availability of BLMIS records—including the microfilm reels in his possession. Indeed, Ms. Chaitman has been made aware of the existence of the reels of unrestored microfilm, along with other unrestored data, for some time. Not only was the existence of this media detailed in numerous initial disclosures and discovery responses, but the Trustee expressly informed her about the existence of unrestored microfilm in both the E-Data Room 1 Manual, provided to Ms. Chaitman on June 23, 2014, and a detailed letter dated September 26, 2016.

For example, the Trustee's Initial Disclosures, served in Ms. Chaitman's cases on August 1, 2011 and December 21, 2015, explicitly state that the Trustee possesses various media sources, including microfilm. (*See*, *e.g.*, Exhibit C at 4 and Exhibit D at 3-4.) The E-Data Room 1 Manual states that "BLMIS stored historic data on microfilm reels. Generally, each reel contained labeling that gave an indication of what types of reports were contained on the reel . . . [A] subset of the microfilm reels and the reports contained therein were identified for processing and Bates numbering." (Exhibit E at 17.) Finally, by letter dated September 26, 2016, the Trustee reiterated that E-Data Room 1 contained documents retrieved from microfilm reels and

---

[1] Shortly after the Trustee began his investigation, the Trustee's consultants created an index of the 5,299 reels of microfilm and 299 boxes of microfiche (each containing approximately 1,500 pieces of microfilm) collected from BLMIS, and also manually reviewed the reels themselves in order to create a list of the various internal BLMIS reports contained on the reels. This list of internal BLMIS reports was the basis of the search terms referenced above, which the Trustee used to search for and produce additional records in connection with Ms. Chaitman's request for "trading records." The Trustee selected, based on the index and the information obtained from the manual review of all reels, the microfilm reels to restore. Most recently, this included restoration of all reels that were likely to contain materials from the pre-1992 time period. The Trustee will provide Ms. Chaitman with a copy of the microfilm reel index created by the Trustee's consultants. It is color-coded to reflect the restoration and production status of the microfilm. Red cells indicate unprocessed microfilm. Pale green cells indicate that the microfilm was restored and produced to Ms. Chaitman in its entirety as part of the 201 reels from the recent productions. Yellow cells indicate that the microfilm was previously restored and uploaded to the BLMIS database, where search terms were run across it and responsive documents produced to Ms. Chaitman.

that only a subset of such reels were identified for processing and Bates numbering. (Exhibit F at 2-3.)

In light of the above, Ms. Chaitman has no basis to feign surprise that the Trustee possesses unrestored media, including the reels of unrestored microfilm.

### C. The Trustee's Restoration of Microfilm Reels To Date Exceeds His Rule 26 Obligations But the Trustee Will Make the 4,700 Reels Available at Her Expense

Ms. Chaitman's request that the Trustee restore and produce all remaining 4,700 reels of is inappropriate for several reasons. First, the Trustee has already exceeded his Rule 26 obligations with respect to the microfilm, especially when viewed in the larger context of the Trustee's overall discovery disclosures in this case. Second, by seeking this relief here, Ms. Chaitman is attempting an end-run around Judge Maas's March 15 Order. Finally, such request ignores the fact that the Trustee has already restored and produced approximately 600 reels of microfilm to date. Ms. Chaitman has not made any showing under Federal Rule of Civil Procedure 26 that further restoration and production of microfilm reels is necessary or relevant, or proportional to the needs of her cases.

As explained above, the Trustee assumed possession of approximately 5,299 microfilm reels from BLMIS. In 2009, approximately 400 of the reels were restored to capture customer cash and principal transactions in connection with the Trustee's determination of the cash-in/cash-out history for each BLMIS customer account. These reels were uploaded into the BLMIS database. Search terms were run across the BLMIS database, and responsive documents were produced to Ms. Chaitman, including from those 400 reels of microfilm. The Trustee then restored 201 additional microfilm reels and produced those documents in their entirety to Ms. Chaitman in response to her prior request for pre-1992 records. All known pre-1992 microfilm reels have now been restored.

Ms. Chaitman's current request that the Trustee restore and produce all 4,700 unprocessed reels violates both the letter and spirit of Federal Rule of Civil Procedure 26(b)(1).[2] Demanding the wholesale restoration and production of all existing microfilm is akin to asking a corporation to produce *all* emails generated or *all* hard copy records stored. Such a request is facially absurd and contravenes the proportionality standard of Rule 26. By going around Judge Maas's Order and making a blanket request for all unrestored microfilm, Ms. Chaitman has not

---

[2] Federal Rule of Civil Procedure 26(b)(1) states that "the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(2)(C), in turn, states that a court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

even attempted to make a showing that any of the unrestored microfilm is necessary or relevant, as required by Rule 26(b)(1). In such circumstances, the Trustee will not bear the cost of duplicating or processing microfilm reels in addition to the approximately 600 reels that he has already restored and processed.

The Trustee is amenable, however, to making the 4,700 microfilm reels available to Ms. Chaitman at her expense. In an effort to assist with this process and prevent further delay, the Trustee has requested proposals from vendors about the different options and costs associated with accessing the microfilm. There are four options available. With the exception of the first option below, Ms. Chaitman is of course free to solicit her own bids from vendors.

1. <u>Viewing</u>: Ms. Chaitman may review the reels at Iron Mountain, for the following costs. Ms. Chaitman would also need to purchase a microfilm viewer.

   - The cost, per hour, for an employee of Iron Mountain to handle the microfilm in order to prevent damage to the original and ensure that the microfilm is returned to the original media container: $494.48.

   - The cost per day for an environmentally secure room in which to review the microfilm: $229.50

   - The cost for Iron Mountain to locate and retrieve each requested media container for review: $306.50 per container.

   - The cost for Iron Mountain to refile each requested media container after review: $306.50 per container.

2. <u>Duplication</u>: The Trustee has obtained the following quotes from vendors for the costs of duplicating the microfilm. Ms. Chaitman would also need to purchase a microfilm viewer.

| Vendor | Duplication | Duplication Est Cost | Duplication Time |
|---|---|---|---|
| Smooth Solutions | $12/Reel | $56,400 | 4-5 months |
| eMag Solutions, LLC | $39/Reel | $183,300 | 4-5 months |

3. <u>Microfilm Processing and Bates Number Assignment</u>: The Trustee has obtained the following quotes from vendors for the costs to restore, process, and apply Bates numbering to the unrestored microfilm reels, based on estimated pages on the reels, along with the estimated timelines for completion. These quotes do not reflect any additional issues that may arise, such as multi-scanned pages of various documents. This process would provide the microfilm reels in a form just above raw data, without any unitization, coding, or quality control review. "Unitization" refers to the process of human review of each individual page in the microfilm reel and using logical cues, such as page numbering, document titles, headers, footers, and other indicators, to determine pages that belong together as documents or document families.

| Vendor | MF Reels | Est Page per Reel | Est Total Pages | Scan Image | Bates Stamp | PM Time | Est Cost | Timeline |
|---|---|---|---|---|---|---|---|---|
| Smooth Solutions | 4,700 | 2,500 | 11,750,000 | $0.010 | $0.004 | $500 | $165,000 | 4-5 months |
| eMag Solutions, LLC | 4,700 | 2,500 | 11,750,000 | $0.040 | Included | $250/Hr as needed | $471,000 | 4-5 months |

4. <u>Additional Cost for Unitization and Report and Date Coding</u>: In order to have the information produced from the microfilm separated and coded by document such that it is easily viewable in electronic review platforms and easily reproduced for depositions and trial, additional labor is required, including manual review. The chart below estimates the costs and timeline for completion that would be incurred separately and in addition to the costs and timeline for completion outlined in Option 3.

| Vendor | Est Total Pages | Daily Rate | # of Reviewers | Cost/Week | EST Cost | Est. Completion |
|---|---|---|---|---|---|---|
| Integeron | 12 million | $240 | 20 | $24,000 | $2,088,000 | 20-21 months |
| Advanced Discovery | 12 million | $256 | 20 | $25,600 | $2,227,200 | 20-21 months |

**E.     The Remaining Unrestored Reels Should Not Delay the Deposition of Bernard Madoff**

If Ms. Chaitman wishes to have the 4,700 unrestored reels of microfilm produced to her at her expense, such production and review should not delay the deposition of Mr. Madoff on the ordered Day Two topics. Ms. Chaitman has now been in possession of the documents from the pre-1992 microfilm reels for several months. Moreover, the records to which Ms. Chaitman points are not third-party records, but instead come from BLMIS itself and reflect fabricated securities transactions. (*See* June 26 Memo at 17-18.) Most importantly, Mr. Madoff has previously been unable to testify with specificity about individual transactions or the day-to-day operations of his business. (*See*, *e.g.*, April 26, 2017 Deposition Transcript of Bernard L. Madoff at 72:10-16; April 27, 2017 Deposition Transcript of Bernard L. Madoff at 217:12-15, 227:18-21, 233:15-21, 247:20-21, 298:2-25.) There is no reason to delay his deposition based on the unfounded hope that his memory of certain thirty-year-old transactions will suddenly improve. This entire dispute about microfilm is nothing but a delay tactic that should not be countenanced by this Court.

* * * *

      The Trustee will make the 4,700 reels available at Ms. Chaitman's sole expense, but any such production should not delay any deposition of Mr. Madoff. Should any financial arrangement other than Ms. Chaitman bearing the full costs of production of the 4,700 reels be contemplated at this juncture, the Trustee requests that (i) Ms. Chaitman's demand be denied until and unless Ms. Chaitman makes a good faith effort to comply with the terms of Judge Maas's March 15 Order, including a review of the indices to identify the specific microfilm reels for restoration and an in-person meet and confer with the Trustee's counsel, and (ii) the Trustee be permitted to move for a protective order to contest the propriety of the production of the 4,700 reels.

Respectfully submitted,

*/s/ David J. Sheehan*

David J. Sheehan

cc: Helen Davis Chaitman (via email)