# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT

Southern District of _____ New York _____

SECURITIES INVESTOR PROTECTION CORPORATION,

    Plaintiff-Applicant,

  v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

    Defendant.

In re  Bernard L. Madoff Investment Securities, LLC
                Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 08-01789 (SMB)
(Substantively Consolidated)

Irving H. Picard, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities, LLC
                Plaintiff
  v.
Federico Ceretti, et. al.,
                Defendant

Chapter  SIPA

Adv. Proc. No. 09-01161  (SMB)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Tremont Group Holdings, Inc.
555 Theodore Fremd Ave
Rye, NY 10580

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Marshall J. Mattera, Baker & Hostetler LLP, 45 Rockefeller Plaza, 17th Floor, New York, NY 10111 | On or before July 8, 2016 at 5:00 PM EST |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

    The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 7, 2016

        CLERK OF COURT

                              OR

_____         _____
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*
                                                  Marshall J. Mattera

The name, address, email address, and telephone number of the attorney representing *(name of party)* Plaintiff, Irving H. Picard _____, who issues or requests this subpoena, are:


American LegalNet, Inc.
www.FormsWorkFlow.com

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or to Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

08-01789-cgm    Doc 16355-2    Filed 07/17/17    Entered 07/17/17 16:54:50    Exhibit B
Pg 3 of 14

Marshall J. Mattera
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).


American LegalNet, Inc.
www.FormsWorkFlow.com

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $_____.

    I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:



B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

American LegalNet, Inc.
www.FormsWorkFlow.com

**ATTACHMENT A**
**TO SUBPOENA TO TREMONT**

**DEFINITIONS**

1. The rules of construction and definitions in Civil Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules"), as adopted by Rule 7026-1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), are incorporated in their entirety.

2. "Applicable Period" means the period beginning January 1, 1993 through December 31, 2009.

3. "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, its current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers of the above specifically identified Persons.

4. "Ceretti" means Federico Ceretti.

5. "Citi Hedge" means Citi Hedge Fund Services Limited and anyone acting on behalf of Citi Hedge Fund Services Limited, including, but not limited to, its current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers, including, but not limited to, BISYS Hedge Fund Services Limited and Hemisphere Management Limited.

6. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7. "Concerning" means relating to, referring to, describing, evidencing or constituting.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term. For purposes of the Requests for Production of Documents set forth herein (the "Request" or "Requests"), the meaning and scope of Document captures the meaning and scope of Communication. Accordingly, a Request that demands the production of "all Documents" by definition demands the production of "all Communications" responsive to the Request. That a Request may specifically seek "all Communications" does not in any way limit or alter the definitions given to Document and Communication, respectively.

9. "FIM" means FIM Limited, FIM Advisers LLP, FIM (USA), Inc., FIM Group, and anyone acting on behalf of FIM Limited, FIM Advisers LLP, FIM (USA), and FIM Group,

including, but not limited to, their current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers.

10. "Grosso" means Carlo Grosso.

11. "HSBC" means HSBC Bank Bermuda Limited and anyone acting on behalf of HSBC Bank Bermuda Limited, including, but not limited to, its current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, third-party service providers, and HSBC Monaco.

12. "Identify," when referring to a Document, means to give, to the extent known, the (i) type of Document, (ii) general subject matter, (iii) date of the Document, and (iv) author(s), addressee(s), and recipient(s). In the alternative, the Document may be produced, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

13. "Identify," when referring to a Person, means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment, as defined in Local Rule 26.3. Once a Person has been identified in accordance with this paragraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

14. "Initial Transfer" means any and all Transfers (as defined herein) made by BLMIS or any Person acting on behalf of BLMIS to You or for Your benefit.

15. "Kingate Euro Customer Account" means the account with BLMIS designated "1FN086."

16. "Kingate Funds" means Kingate Global Fund, Ltd. and/or Kingate Euro Fund, Ltd. and anyone acting on behalf of Kingate Euro Fund, Ltd. and/or Kingate Global Fund, Ltd., including, but not limited to, their current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, third-party service providers, and the court-appointed liquidators representing their estates in liquidation proceedings commenced in the British Virgin Islands and Bermuda.

17. "Kingate Global Customer Account" means the account with BLMIS designated "1FN061."

18. "KML" means Kingate Management Limited and anyone acting on behalf of Kingate Management Limited, including, but not limited to, its current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, third-party service providers, the court-appointed receiver(s) representing KML's estate in receivership proceedings commenced in Bermuda, and the receiver's agents and representatives.

2

19. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

20. "Tannenbaum Helpern" means Tannenbaum Helpern Syracuse & Hirschtritt LLP, the law firm of which Michael Tannenbaum, Esq. is a partner, located in New York, New York, including, but not limited to, its current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers.

21. "Tremont" means Tremont (Bermuda) Limited, including, but not limited to, its respective current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers.

22. "Trust Defendants" means Alpine Trustees Limited, Ashby Holdings Services Limited, Ashby Investment Services Limited, El Prela Group Holding Services, El Prela Trading Investments Limited, First Peninsula Trustees Limited, Port of Hercules Trustees Limited, and anyone acting on their behalf, including, but not limited to, their current and former parents, subsidiaries, divisions, officers, directors, principals, partners, managers, members, shareholders, agents, representatives, employees, attorneys, nominees, servants, predecessors, successors, affiliates, and third-party service providers.

23. "You" and "Your" mean Tremont.

24. The following rules of construction apply to these discovery requests:

    a. Spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests.

    b. Reference to any Person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

    c. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

    d. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

    e. The use of the singular form of any word includes the plural and vice versa.

3

## INSTRUCTIONS

Federal Rules of Civil Procedure 26 through 37, made applicable to this proceeding by the Bankruptcy Rules, are hereby incorporated by reference and apply to each of the following instructions:

1. Unless otherwise specified, each of these Requests seeks Documents created, modified, or existing during the Applicable Period.

2. Each of these Requests does not seek, and the recipient of these Requests need not produce, Documents previously produced to the Trustee.

3. All Documents shall be identified by the request(s) to which they are primarily responsive and produced as they are maintained in the usual course of business.

4. Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including, but not limited to, those in the possession, custody, or control of a current or former employee or third-party service provider, wherever those Documents and materials are maintained, including, but not limited to, those on personal computers, PDAs, wireless devices, or web-based email systems (such as Gmail, Yahoo, etc.).

5. Produce all Documents in Your custody or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, and instant messages; intranet and internet system data; telephone and cellular telephone calling records; data compilations; spreadsheets; word processing Documents; images; databases; digital photocopier memory; and any other information stored in memory storage devices.

6. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7. Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

4

9. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10. If a request calls for information concerning a Transfer, Initial Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, Documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (i.e., wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

11. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work product protection, or any other privilege or immunity from disclosure, then in answer to such request or part thereof, for each such Document:

    a. Identify the type, title, and subject matter of the Document;

    b. State the place, date, and manner of preparation of the Document;

    c. Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

    d. Identify the privilege(s) or immunity(ies) asserted and the factual basis for same.

12. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work product protection. If Documents are produced with redactions, a log setting forth the information requested in Instruction #11 above must be provided.

13. If a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance surrounding authorization for such disposition thereof and the date thereof, Identify each Person having knowledge of the circumstances of the disposition thereof, and Identify each Person who had possession, custody, or control of the Document, to whom it was available or who had knowledge of the Document and/or the contents thereof.

14. The Bankruptcy Court entered Orders on September 17, 2013: (I) Establishing Procedures for Third-Party Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order. Pursuant to those Orders, upon production, Producing Parties shall provide the following information in a production cover letter, to the extent any of the following information is applicable: (i) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated as confidential pursuant to the Litigation Protective Order; (ii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable, pursuant to Paragraph 10 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph I of the Order

5

Modifying the June 6, 2011 Litigation Protective Order; (iii) the Documents (listed in an Excel file Document-by-Document by Beginning Bates and Ending Bates for each Document) that should be excluded from the Third-Party Data Rooms pursuant to Paragraph 4 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph C of the Order Modifying the June 6, 2001 Litigation Protective Order; and (iv) the designated representative authorized for that production to provide consent to the disclosure of confidential Documents requested or to object to the disclosure of confidential Documents.  Failure to provide such information in a production cover letter shall result in a waiver by the Producing Parties of:  (i) any confidential designations; (ii) any objections to inclusion of the Documents in the Third-Party Data Rooms; and/or (iii) notification that Documents have been requested for disclosure.  For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order, Paragraphs 7 and 14 of the Litigation Protective Order will still apply with respect to:  (i) inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and (ii) inadvertent production or disclosure of any Document or other material otherwise protected by the attorney-client privilege, work product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## MANNER OF PRODUCTION

1.      All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition, also known as "ocr," program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      <u>Database load files and production media structure</u>:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon, also known as ".opt," file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.   If any of the Documents produced in response to these Requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

6

3. <u>Electronic Documents and data, generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata; custodian or Document source information; and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Document's true and original content.

4. <u>Emails and attachments, and other email account-related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to, Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5. <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each Document's content and format, including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

   a) XML format file(s);

   b) Microsoft SQL database(s);

   c) Access database(s); and/or

   d) Fixed or variable length ASCII delimited files.

6. <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. <u>"Other" electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or

7

multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.   Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the Relativity .dat file utilizing Document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests.

### DOCUMENTS REQUESTED

1.   All Documents Concerning the Kingate Funds, KML, FIM, Ceretti, Grosso, the Trust Defendants, Citi Hedge, the Kingate Global Customer Account, the Kingate Euro Customer Account, Christopher Wetherhill, Shazieh Salahuddin, Eric Lazear, Tom Healy, or Phillip Evans.

2.   All Documents Concerning the bank accounts of the Kingate Funds, KML, or FIM.

3.   All Documents describing FIM's or KML's due diligence policies and procedures, including, but not limited to, any list, checklist, protocol, outline, or any guidelines for conducting, confirming, or reviewing investment activity.

4.   All Documents Concerning due diligence on the Kingate Funds or any FIM-managed investment funds, including, but not limited to, due diligence reports, due diligence questionnaires, and updates to due diligence questionnaires and reports.

5.   All Documents containing statements made under oath or penalty of perjury during the period beginning January 1, 2009 through the present Concerning Tremont's due diligence policies and procedures, including, but not limited to, all deposition transcripts, affidavits, declarations, and all exhibits thereto.

6.   All Documents containing statements made under oath or penalty of perjury during the period beginning January 1, 2009 through the present Concerning due diligence on Tremont or BLMIS, including, but not limited to, all deposition transcripts, affidavits, declarations, and all exhibits thereto.

7.   All Documents containing statements made under oath or penalty of perjury during the period beginning January 1, 2009 through the present Concerning the Kingate Funds, KML, FIM, Ceretti, Grosso, the Trust Defendants, Citi Hedge, the Kingate Global Customer Account, the Kingate Euro Customer Account, Christopher Wetherhill, Shazieh Salahuddin, Eric Lazear, Tom Healy, or Phillip Evans, including, but not limited to, all deposition transcripts, affidavits, declarations, and all exhibits thereto.

8.   All Documents filed or submitted to a court or other adjudicatory tribunal and not accessible to the public through PACER, and all Documents produced, in legal proceedings to

8

which the Trustee is not a party during the period beginning January 1, 2009 through the present Concerning BLMIS, the Kingate Funds, KML, or FIM, including, but not limited to, *In re Kingate Management Limited Litigation*, No. 09 Civ. 5386 (DAB) (S.D.N.Y.).

        9.      All Documents that You received or prepared Concerning any warnings, suspicions, complaints, wrongdoing, or fraud in connection with BLMIS.

        10.     All Documents that You received or prepared Concerning the redemption of investments, directly or indirectly, from BLMIS, in connection with any warnings, complaints, or suspicions of wrongdoing or fraud Concerning BLMIS.

        11.     All Documents You sent to or received from any of the following email addresses: cgrosso@fim-group.com; cgrosso@fimltd.com; fceretti@fim-group.com; fceretti@fimltd.com; cw@kingate.bm; cwetherhill@logic.bm; ss@kml.bm; ss@kingate.bm; elazear@fim-group.com; thealy@fim-group.com; thealy@hemisphere.bm; and phillip.evans@moorestephens-mc.com.