# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04488 (SMB) |
| Plaintiff, | |
| v. | |
| SOUTH FERRY BUILDING COMPANY, a New York limited partnership, EMANUEL GETTINGER, ABRAHAM WOLFSON, and ZEV WOLFSON, | |
| Defendants. | |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of

Bernard L. Madoff ("Madoff"), and defendants South Ferry Building Company, Emanuel

Gettinger, Abraham Wolfson, and Zev Wolfson ("South Ferry," and together with the Trustee,

the "Parties") hereby submit this Joint Statement of Undisputed Material Facts in connection with their forthcoming motions for summary judgment pursuant to the Stipulation for Entry of Scheduling Order ("Scheduling Order") entered by this Court on January 27, 2017 (ECF No. 77) and Federal Rule of Civil Procedure 56 (made applicable by Federal Rule of Bankruptcy Procedure 7056).

1.      At all relevant times, Bernard L. Madoff controlled BLMIS, first as its sole member, and thereafter as its chairman and chief executive.

2.      On December 11, 2008, Madoff was arrested for violating numerous federal criminal securities statutes.

3.      Contemporaneously, the Securities and Exchange Commission (the "SEC") commenced proceedings against BLMIS and Madoff in the United States District Court for the Southern District of New York (the "District Court") in a case captioned *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the "Liquidation Proceeding").

4.      On December 15, 2008, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC") pursuant to Section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq. ("SIPA").

5.      Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court because BLMIS was not able to meet its obligations to securities customers as they became due and thus its customers needed the protections afforded by SIPA.

2

6.      BLMIS was, at all times relevant to this adversary proceeding, registered with the SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b), and a member of the Financial Industry Regulatory Agency (formerly known as the National Association of Securities Dealers).

7.      At all times relevant to this adversary proceeding, BLMIS was an investment adviser.

8.      Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding.

9.      South Ferry has not undertaken any investigation of BLMIS and the operations of that business.  For the sole purposes of this proceeding, South Ferry stipulates to the facts set out below in paragraphs 10 through 16.

10.      BLMIS was operating a Ponzi scheme.

11.      BLMIS was insolvent from at least December 11, 2002 and all points after.

12.      BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers.

13.      The investment advisory business (the "Investment Advisory Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.

14.      The Investment Advisory Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals.

3

15.    The Investment Advisory Business did not receive any legitimate outside financial support from loans or otherwise.

16.    BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients.

17.    In August of 2001, South Ferry entered into an Account Agreement with BLMIS.

18.    The South Ferry account was identified as account no. 1S0451 (the "Account").

19.    Attached as Exhibit A is a true and accurate copy of the Account Agreement, in which South Ferry provided Madoff with investment discretion.

20.    South Ferry opened the Account in good faith and with no knowledge of BLMIS' fraud.

21.    As reflected in the Stipulation of Undisputed Transfers (Exhibit B), columns 1 through 8 of Exhibit B to the Complaint accurately reflect the complete history of the transactions affecting the Account.

22.    Column 3 of Exhibit B to the Complaint accurately reflects the transaction amounts as reported in the customer statements for the Account.

23.    Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account and Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the Account.

24.    Between August 13, 2001 and December 11, 2008, South Ferry deposited a total of $45,000,000 into the Account and withdrew a total of $51,620,000 from the Account.

4

25. As accurately reflected in Column 10 of Exhibit B to the Complaint, South Ferry withdrew $6,620,000 in excess of deposits between December 11, 2006 and December 11, 2008 (the "Two-Year Period").

26. South Ferry received the withdrawals made during the Two-Year Period.

27. South Ferry made each of its withdrawals in good faith, believing that it was entitled to these funds and lacking any knowledge of the Ponzi scheme.

28. BLMIS transferred the funds withdrawn by Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors.

29. On November 12, 2010, the Trustee brought this adversary proceeding against South Ferry to avoid and recover $6,620,000, the difference between the total amounts deposited and withdrawn by South Ferry in connection with the Account.

30. The Trustee did not bring any claim for avoidance of obligations in this adversary proceeding.

31. BLMIS accepted South Ferry's funds for the stated purpose of trading securities for South Ferry's benefit.

32. South Ferry's only business relationship with BLMIS, a registered broker-dealer, was as a customer of its Investment Advisory Business.

33. South Ferry did not invest in BLMIS, either as a partner, shareholder, or other equity stake holder. At no time did South Ferry purport to own a share of, or have a financial stake in, the business of BLMIS.

34.     South Ferry received monthly Account statements from BLMIS reporting purported securities transactions effected on its behalf.  At all times, BLMIS defrauded South Ferry by intentionally misrepresenting the purported securities transactions in the Account. These misrepresentations made to South Ferry were an integral and essential part of the fraud, and were made to avoid detection of the fraud, retain existing investors, and to lure other investors into the Ponzi scheme.

35.     South Ferry relied in good faith on BLMIS' reports of securities transactions that it purportedly made on behalf and for the benefit of the South Ferry Account.

36.     South Ferry reasonably relied on the representations in the Account Agreement and account statements.

37.     BLMIS did not comply with its obligations under the Account Agreement.

38.     South Ferry was injured by BLMIS' fraud.

39.     South Ferry's injuries occurred in the state of New York.

40.     The Trustee has not sought to avoid the Account Agreement.

41.     South Ferry engaged an expert, Stephen Behnke, to calculate its lost opportunity costs during the period that BLMIS held its funds.

42.     Mr. Behnke created a portfolio model for retail securities investments managed by an honest broker at the time South Ferry held the Account, computed the rate of return the model would have produced during the relevant account period, and applied that model to South Ferry's Account.

6

43.     Mr. Behnke concluded that South Ferry's model portfolio would have returned $3,414,848.  The expert calculated that the amount received by South Ferry that is in excess of the expert's model is $3,205,152.

44.     Alternatively, Mr. Behnke unwound each transaction and prepared a hypothetical analysis comparing the rate of investment return at BLMIS with New York's 9% statutory rate of interest to calculate South Ferry's losses.

45.     The expert concluded that South Ferry's rescission claim would have yielded an interest component of $4,492,973.  The expert calculated that the amount received by South Ferry that is in excess of the interest component is $2,127,027.

46.     For the purposes of this proceeding, the Trustee is not contesting and will not object to the conclusions set out in paragraphs 42 through 45 above.

Dated:          May 30, 2017
                New York, New York

/s/ Keith R. Murphy_____         /s/ Richard A. Kirby_____
**BAKER & HOSTETLER LLP**         **BAKER & MCKENZIE LLP**
45 Rockefeller Plaza              815 Connecticut Ave., N.W.
New York, NY 10111                Washington, D.C. 20006
Telephone: 212.589.4200           Telephone:  202.452.7023
Facsimile: 212.589.4201           Facsimile:  202.416.7223
David J. Sheehan                  Richard A. Kirby
Email: dsheehand@bakerlaw.com     Email: richard.kirby@bakermckenzie.com
Keith R. Murphy                   Laura K. Clinton
Email:  kmurphy@bakerlaw.com      Email: laura.clinton@bakermckenzie.com
Maximillian S. Shifrin
Email: mshifrin@bakerlaw.com      *Attorneys for Defendants South Ferry Building*
                                  *Company, Emanuel Gettinger, Abraham*
*Attorneys for Plaintiff Irving H. Picard,*   *Wolfson, and Zev Wolfson*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

Dated: May 31st, 2017

**IT IS SO ORDERED:**

                        /s/  STUART M. BERNSTEIN_
                        **STUART M. BERNSTEIN**
                        **United States Bankruptcy Judge**

8

# EXHIBIT A

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC

885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

MADF

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

**Affiliated with:**
**Madoff Securities International Limited**
**12 Berkeley Street, Mayfair, London W1X 5AD. Tel 020-7493 6222**

AMF00220811

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00220812



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

X̲ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X)_____     (X)_____
(Customer Signature/date)                      (Customer Signature/date)

One State St Plaza 29th Floor
(Customer Address)                            (Account Number)

Uy. N.Y. 10004

AMF00220813

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04488 (SMB) |
| Plaintiff, | |
| v. | |
| SOUTH FERRY BUILDING COMPANY, a New York limited partnership, EMANUEL GETTINGER, ABRAHAM WOLFSON, and ZEV WOLFSON, | |
| Defendants. | |

## STIPULATION AND ORDER AS TO UNDISPUTED TRANSFERS

The plaintiff, Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities ("BLMIS") and the estate of Bernard L. Madoff, individually ("Madoff"), and defendants, South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson and Zev Wolfson (collectively, the "Initial Transferee Defendants"), by and through their respective, undersigned counsel (collectively, the "Parties"), state as follows:

**WHEREAS**, as set forth in greater detail below, BLMIS and/or Madoff made certain initial transfers ("Initial Transfers") to or for the benefit of Initial Transferee Defendants relating to Account No. 1S0451 held at BLMIS and/or Madoff in the name of South Ferry Building Company.

**WHEREAS**, in Count One of the Trustee's Complaint, the Trustee seeks to avoid and recover the Initial Transfers or their value as fraudulent transfers pursuant to, *inter alia*, sections 548(a)(1)(A), 550(a) and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), 78fff-2(c)(3) of the Securities Investor Protection Act ("SIPA");

**WHEREAS**, the Initial Transferee Defendants have raised certain defenses to the Trustee's claims in the Complaint; and

**WHEREAS**, the Parties have conferred in an attempt to resolve, where possible, certain differences and disputes between them, and the parties are entering into this stipulation in the interest of efficiency to avoid unnecessary litigation over discovery disputes;

**NOW**, **THEREFORE**, the Parties agree and stipulate to the following undisputed facts:

1.      Defendant South Ferry Building Company maintained an account at BLMIS denominated as Account No. 1S0451 (the "Account").

2.      Columns 1-8 of Exhibit B to the Trustee's Complaint, which are incorporated herein by reference and attached hereto as Exhibit 1, accurately reflect the complete history of the transactions affecting the Account.

3.      Column 4 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects all deposits made into the Account.

4.      Column 5 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects all withdrawals from the Account.

5.      Column 10 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects the funds received by the Initial Transferee Defendants from December, 2006 through October, 2008.

6.      Initial Transferee Defendants stipulate to receipt of the following transfers from BLMIS and further stipulate that those transfers were deposited into a Citibank Bank, N.A. account in the name of South Ferry Building Company, LP, Account No. 31027142:

   a.      6/2/2008 - $6,400,000.00

   b.      10/7/2008 - $220,000.00

7.      Defendant South Ferry Building Company LP ("South Ferry Building") is solvent and has the ability to repay the full amount of the Initial Transfers.  In an effort to obviate the need for discovery into any subsequent transfers of any funds that the Initial Transferee Defendants withdrew from the Account between December 11, 2006 and December 11, 2008, South Ferry Building hereby undertakes to preserve sufficient assets to repay the Initial Transfers in full until such time as (i) a judgment is entered in favor of the Trustee for the recovery of the Initial Transfers or a portion thereof, or (ii) this adversary proceeding is dismissed with prejudice.  South Ferry Building has provided current financial records demonstrating, to the satisfaction of the Trustee, its ability to repay the Initial Transfers.  However, in the event that the Trustee obtains a judgment that South Ferry Building cannot satisfy, South Ferry Building hereby agrees to identify all subsequent recipients of any funds that the Initial Transferee Defendants withdrew from the Account between December 11, 2006 and December 11, 2008, including providing the names of the recipients, the amounts received, and the dates on which the money was received.  Additionally, South Ferry Building agrees to preserve documents sufficient to show all possible subsequent transfers from the period of December 11, 2006

through December 31, 2009, including, but not limited to, monthly account statements for any

account from which such possible transfers may have been made.

8.      Upon execution and entry of this stipulation, the Trustee agrees forgo service of

subpoenas pursuant to Federal Rule of Civil Procedure 45 (made applicable by Federal Rule of

Bankruptcy Procedure 9016) on financial institutions or other third parties and further agrees to

withdraw the Rule 45 subpoenas served on Citibank, N.A.

9.      By executing this Stipulation, the Initial Transferee Defendants in no way

concede or admit liability under Bankruptcy Code sections 548, 550 or any other applicable

section of the Bankruptcy Code, the DCL, SIPA or any other applicable law.

10.     This Stipulation is without prejudice to the Trustee asserting claims to avoid

and/or recover any additional or other transfers to the Initial Transferee Defendants and

Subsequent Transferee Defendants, including any subsequent transfers of the Initial Transfers,

determined through the Trustee's continuing investigation and through discovery.

11.     This Stipulation is without prejudice to the Initial Transferee Defendants' right to

oppose any further claims asserted by the Trustee with respect to additional or other transfers as

set forth above.

Dated:       New York, New York
             November 16, 2015

/s/  Nicholas J. Cremona            /s/  Laura K. Clinton

**BAKER & HOSTETLER LLP**        **BAKER & MCKENZIE LLP**

45 Rockefeller Plaza                 815 Connecticut Ave., N.W.
New York, NY  10111             Washington, D.C. 20006
Telephone:  (212) 589-4200      Telephone:  (202) 452-7023
Facsimile:  (212) 589-4201       Facsimile:  (202) 416-7223
David J. Sheehan                   Richard A. Kirby
Email:  dsheehan@bakerlaw.com    Email:  richard.kirby@bakermckenzie.com
Nicholas J. Cremona            Laura K. Clinton
Email:  ncremona@bakerlaw.com    Email: laura.clinton@bakermckenzie.com
Christa C. Turner
Email:  cturner@bakerlaw.com       *Attorneys for Defendants*

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC
and the estate of Bernard L. Madoff*

SO ORDERED this 19th day of November, 2015.


_/s/ Stuart M. Bernstein_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

Exhibit B

BLMIS ACCOUNT NO. 1S0451 - SOUTH FERRY BUILDING COMPANY

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported In Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/13/2001 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 2,000,000 | - | - | - |
| | CHECK WIRE | 3,500,000 | 3,500,000 | - | - | - | 5,500,000 | - | - | - |
| 12/24/2002 | CHECK WIRE | (5,900,000) | | (5,900,000) | - | - | (400,000) | - | - | - |
| | CHECK WIRE | 11,000,000 | 11,000,000 | - | - | - | 10,600,000 | - | - | - |
| 5/15/2003 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 10,600,000 | - | - | - |
| | CHECK WIRE | (2,000,000) | | (2,000,000) | - | - | 6,900,000 | - | - | - |
| 8/27/2003 | CHECK WIRE | (2,000,000) | | (2,000,000) | - | - | 6,900,000 | - | - | - |
| | CHECK WIRE | (7,800,000) | | (7,800,000) | - | - | 5,100,000 | - | - | - |
| 5/11/2004 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 5,100,000 | - | - | - |
| | CHECK WIRE | (5,000,000) | | (5,000,000) | - | - | | - | - | - |
| 3/1/2005 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 15,100,000 | - | - | - |
| | CHECK WIRE | (5,000,000) | | (5,000,000) | - | - | 5,100,000 | - | - | - |
| 3/30/2006 | CHECK WIRE | (5,000,000) | | (5,000,000) | - | - | 5,100,000 | - | - | - |
| | CHECK WIRE | 7,250,000 | 7,250,000 | - | - | - | 9,600,000 | - | - | - |
| 12/28/2006 | CHECK WIRE | (8,000,000) | | (8,000,000) | - | - | 9,600,000 | - | - | - |
| | CHECK WIRE | (8,000,000) | | (8,000,000) | - | - | | - | - | - |
| 6/2/2008 | CHECK WIRE | (6,400,000) | | (6,400,000) | - | - | (6,400,000) | - | (6,400,000) | (6,400,000) |
| | CHECK | (6,620,000) | | (6,620,000) | - | - | (6,620,000) | - | (6,620,000) | (6,620,000) |
| Total: | | | $ 45,000,000 | $ (51,620,000) | $ - | $ - | $ (6,620,000) | $ - | $ (6,620,000) | $ (6,620,000) |

MADC0369_00000002

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04350 (SMB) |
| Plaintiff, | |
| v. | |
| SOUTH FERRY #2,  EMANUEL GETTINGER, AARON WOLFSON, and ABRAHAM WOLFSON, | |
| Defendants. | |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendants South Ferry #2, Emanuel Gettinger, Aaron Wolfson, and Abraham Wolfson ("South Ferry," and together with the Trustee, the "Parties") hereby submit this Joint Statement of Undisputed Material Facts in connection with their

forthcoming motions for summary judgment pursuant to the Stipulation for Entry of Scheduling

Order ("Scheduling Order") entered by this Court on January 27, 2017 (ECF No. 86) and Federal

Rule of Civil Procedure 56 (made applicable by Federal Rule of Bankruptcy Procedure 7056).

1.    At all relevant times, Bernard L. Madoff controlled BLMIS, first as its sole

member, and thereafter as its chairman and chief executive.

2.    On December 11, 2008, Madoff was arrested for violating numerous federal

criminal securities statutes.

3.    Contemporaneously, the Securities and Exchange Commission (the "SEC")

commenced proceedings against BLMIS and Madoff in the United States District Court for the

Southern District of New York (the "District Court") in a case captioned *Securities Exchange

Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the

"Liquidation Proceeding").

4.    On December 15, 2008, the SEC consented to a combination of its own action

with an application of the Securities Investor Protection Corporation ("SIPC") pursuant to

Section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq.

("SIPA").

5.    Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the

District Court because BLMIS was not able to meet its obligations to securities customers as

they became due and thus its customers needed the protections afforded by SIPA.

6.    BLMIS was, at all times relevant to this adversary proceeding, registered with the

SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. §

2

78o(b), and a member of the Financial Industry Regulatory Agency (formerly known as the National Association of Securities Dealers).

7.    At all times relevant to this adversary proceeding, BLMIS was an investment adviser.

8.    Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding.

9.    South Ferry has not undertaken any investigation of BLMIS and the operations of that business.  For the sole purposes of this proceeding, South Ferry stipulates to the facts set out below in paragraphs 10 through 16.

10.    BLMIS was operating a Ponzi scheme.

11.    BLMIS was insolvent from at least December 11, 2002 and all points after.

12.    BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers.

13.    The investment advisory business (the "Investment Advisory Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.

14.    The Investment Advisory Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals.

15.    The Investment Advisory Business did not receive any legitimate outside financial support from loans or otherwise.

3

16.    BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients.

17.    In August of 2001, South Ferry entered into an Account Agreement with BLMIS.

18.    The South Ferry account was identified as account no. 1S0047 (the "Account").

19.    Attached as Exhibit A is a true and accurate copy of the Account Agreement, in which South Ferry provided Madoff with investment discretion.

20.    South Ferry opened the Account in good faith and with no knowledge of BLMIS' fraud.

21.    As reflected in the Stipulation of Undisputed Transfers (Exhibit B), columns 1 through 8 of Exhibit B to the Complaint accurately reflect the complete history of the transactions affecting the Account.

22.    Column 3 of Exhibit B to the Complaint accurately reflects the transaction amounts as reported in the customer statements for the Account.

23.    Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account, and Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the Account.

24.    Between July 13, 2001 and December 11, 2008, South Ferry deposited a total of $75,000,000 into the Account and withdrew a total of $96,955,000 from the Account.

25.    As accurately reflected in Column 10 of Exhibit B to the Complaint, South Ferry withdrew $21,955,000 in excess of deposits between December 11, 2006 and December 11, 2008 (the "Two-Year Period").

4

26.      South Ferry received the withdrawals made during the Two-Year Period.

27.      South Ferry made each of its withdrawals in good faith, believing that it was entitled to these funds and lacking any knowledge of the Ponzi scheme.

28.      BLMIS transferred the funds withdrawn by Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors.

29.      On November 12, 2010, the Trustee brought this adversary proceeding against South Ferry to avoid and recover $21,955,000, the difference between the total amounts deposited and withdrawn by South Ferry in connection with the Account.

30.      The Trustee did not bring any claim for avoidance of obligations in this adversary proceeding.

31.      BLMIS accepted South Ferry's funds for the stated purpose of trading securities for South Ferry's benefit.

32.      South Ferry's only business relationship with BLMIS, a registered broker-dealer, was as a customer of its Investment Advisory Business.

33.      South Ferry did not invest in BLMIS, either as a partner, shareholder, or other equity stake holder.  At no time did South Ferry purport to own a share of, or have a financial stake in, the business of BLMIS.

34.      South Ferry received monthly Account statements from BLMIS reporting purported securities transactions effected on its behalf.  At all times, BLMIS defrauded South Ferry by intentionally misrepresenting the purported securities transactions in the Account.

These misrepresentations made to South Ferry were an integral and essential part of the fraud, and were made to avoid detection of the fraud, retain existing investors, and to lure other investors into the Ponzi scheme.

35.     South Ferry relied in good faith on BLMIS' reports of securities transactions that it purportedly made on behalf and for the benefit of the South Ferry Account.

36.     South Ferry reasonably relied on the representations in the Account Agreement and account statements.

37.     BLMIS did not comply with its obligations under the Account Agreement.

38.     South Ferry was injured by BLMIS' fraud.

39.     South Ferry's injuries occurred in the state of New York.

40.     The Trustee has not sought to avoid the Account Agreement.

41.     South Ferry engaged an expert, Stephen Behnke, to calculate its lost opportunity costs during the period that BLMIS held its funds.

42.     Mr. Behnke created a portfolio model for retail securities investments managed by an honest broker at the time South Ferry held the Account, computed the rate of return the model would have produced during the relevant account period, and applied that model to South Ferry's Account.

43.     Mr. Behnke concluded that South Ferry's model portfolio would have returned $3,414,848.  The expert calculated that the amount received by South Ferry that is in excess of the expert's model is $3,205,152.

44.      Alternatively, Mr. Behnke unwound each transaction and prepared a hypothetical analysis comparing the rate of investment return at BLMIS with New York's 9% statutory rate of interest to calculate South Ferry's losses.

45.      The expert concluded that South Ferry's rescission claim would have yielded an interest component of $4,492,973.   The expert calculated that the amount received by South Ferry that is in excess of the interest component is $2,127,027.

46.      For the purposes of this proceeding, the Trustee is not contesting and will not object to the conclusions set out in paragraphs 42 through 45 above.

Dated:       June 6, 2017
                New York, New York

/s/  Keith R. Murphy_____
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email:  kmurphy@bakerlaw.com
Maximillian S. Shifrin
Email: mshifrin@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

/s/ Richard A. Kirby____
**BAKER & MCKENZIE LLP**
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone:  202.452.7023
Facsimile:  202.416.7223
Richard A. Kirby
Email: richard.kirby@bakermckenzie.com
Laura K. Clinton
Email: laura.clinton@bakermckenzie.com

*Attorneys for Defendants South Ferry Building*
*Company, Emanuel Gettinger, Abraham*
*Wolfson, and Zev Wolfson*

Dated: June 7th, 2017

**IT IS SO ORDERED:**

/s/  STUART M. BERNSTEIN_
**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

8

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
**Madoff Securities International Limited**
**12 Berkeley Street, Mayfair, London W1X 5AD. Tel 020-7493 6222**

AMF00220677

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00220678



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

✓ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X)_____        *Sith Ferry #2 LP*
                                    *By Aaron Wolfson*
(Customer Signature/date)           *G.P.*    (Customer Signature/date)

*One State Street Plaza* _____
(Customer Address)                    (Account Number)

*NY NY 10004*

AMF00220679

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

| | |
|---|---|
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04350 (SMB) |
| Plaintiff, | |
| v. | |
| SOUTH FERRY #2 LP, EMMANUEL GETTINGER, AARON WOLFSON, and ABRAHAM WOLFSON, | |
| Defendants. | |

## STIPULATION AND ORDER AS TO UNDISPUTED TRANSFERS

The plaintiff, Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities ("BLMIS") and the estate of Bernard L. Madoff, individually ("Madoff"), and defendants, South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson and Abraham Wolfson (collectively, the "Initial Transferee Defendants"), by and through their respective, undersigned counsel (collectively, the "Parties"), state as follows:

**WHEREAS**, as set forth in greater detail below, BLMIS and/or Madoff made certain initial transfers ("Initial Transfers") to or for the benefit of Initial Transferee Defendants relating to Account No. 1S0447 held at BLMIS and/or Madoff in the name of South Ferry #2 LP.

**WHEREAS**, in Count One of the Trustee's Complaint, the Trustee seeks to avoid and recover the Initial Transfers or their value as fraudulent transfers pursuant to, *inter alia*, sections 548(a)(1)(A), 550(a) and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), 78fff-2(c)(3) of the Securities Investor Protection Act ("SIPA");

**WHEREAS**, the Initial Transferee Defendants have raised certain defenses to the Trustee's claims in the Complaint; and

**WHEREAS**, the Parties have conferred in an attempt to resolve, where possible, certain differences and disputes between them, and the parties are entering into this stipulation in the interest of efficiency to avoid unnecessary litigation over discovery disputes;

**NOW**, **THEREFORE**, the Parties agree and stipulate to the following undisputed facts:

1.      Defendant South Ferry #2 LP maintained an account at BLMIS denominated as Account No. 1S0447 (the "Account").

2.      Columns 1-8 of Exhibit B to the Trustee's Complaint, which are incorporated herein by reference and attached hereto as Exhibit 1, accurately reflect the complete history of the transactions affecting the Account.

3.      Column 4 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects all deposits made into the Account.

4.      Column 5 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects all withdrawals from the Account.

5.      Column 10 of Exhibit B to the Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1, accurately reflects the funds received by the Initial Transferee Defendants from December, 2006 through October, 2008.

6.      Initial Transferee Defendants stipulate to receipt of the following transfers from BLMIS and further stipulate that those transfers were deposited into a Citibank, N.A. account in the name of South Ferry #2, LP, Account No. 37208702:

        a.       1/28/2008 - $6,800,000.00

        b.       2/28/2008 - $5,000,000.00

        c.       3/18/2008 - $4,000,000.00

        d.       3/31/2008 - $6,100,000.00

        e.       10/7/2008 - $55,000.00

7.      Defendant South Ferry Building #2 LP ("South Ferry #2") is solvent and has the ability to repay the full amount of the Initial Transfers.  In an effort to obviate the need for discovery into any subsequent transfers of any funds that the Initial Transferee Defendants withdrew from the Account between December 11, 2006 and December 11, 2008, South Ferry #2 hereby undertakes to preserve sufficient assets to repay the Initial Transfers in full until such time as (i) a judgment is entered in favor of the Trustee for the recovery of the Initial Transfers or a portion thereof, or (ii) this adversary proceeding is dismissed with prejudice.  South Ferry #2 has provided current financial records demonstrating, to the satisfaction of the Trustee, its ability to repay the Initial Transfers.  However, in the event that the Trustee obtains a judgment that South Ferry #2 cannot satisfy, South Ferry #2 hereby agrees to identify all subsequent recipients of any funds that the Initial Transferee Defendants withdrew from the Account between December 11, 2006 and December 11, 2008, including providing the names of the recipients, the

amounts received, and the dates on which the money was received. Additionally, South Ferry #2 agrees to preserve documents sufficient to show all possible subsequent transfers from the period of December 11, 2006 through December 31, 2009, including, but not limited to, monthly account statements for any account from which such possible transfers may have been made.

8.      Upon execution and entry of this stipulation, the Trustee agrees forgo service of subpoenas pursuant to Federal Rule of Civil Procedure 45 (made applicable by Federal Rule of Bankruptcy Procedure 9016) on financial institutions or other third parties and further agrees to withdraw the Rule 45 subpoenas served on Citibank, N.A.

9.      By executing this Stipulation, the Initial Transferee Defendants in no way concede or admit liability under Bankruptcy Code sections 548, 550 or any other applicable section of the Bankruptcy Code, the DCL, SIPA or any other applicable law.

10.     This Stipulation is without prejudice to the Trustee asserting claims to avoid and/or recover any additional or other transfers to the Initial Transferee Defendants and Subsequent Transferee Defendants, including any subsequent transfers of the Initial Transfers, determined through the Trustee's continuing investigation and through discovery.

11.     This Stipulation is without prejudice to the Initial Transferee Defendants' right to oppose any further claims asserted by the Trustee with respect to additional or other transfers as set forth above.

Dated:     New York, New York
           November 16, 2015

/s/ Nicholas J. Cremona
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
Christa C. Turner
Email:  cturner@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC*
*and the estate of Bernard L. Madoff*

/s/ Laura K. Clinton
**BAKER & MCKENZIE LLP**
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone:  (202) 452-7023
Facsimile:  (202) 416-7223
Richard A. Kirby
Email:  richard.kirby@bakermckenzie.com
Laura K. Clinton
Email: laura.clinton@bakermckenzie.com

*Attorneys for Defendants*

SO ORDERED this 19th day of November, 2015.

/s/ Stuart M. Bernstein
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 1

Exhibit B

BLMIS ACCOUNT NO. 1S0447 - SOUTH FERRY #2 LP

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/13/2001 | CHECK WIRE | 5,000,000 | 5,000,000 | - | - | - | 5,000,000 | - | - | - |
| | | | | | | | | | | |
| 8/13/2001 | CHECK WIRE | 12,050,000 | 12,050,000 | - | - | - | 23,000,000 | - | - | - |
| | | | | | | | | | | |
| 1/2/2002 | CHECK WIRE | 5,000,000 | 5,000,000 | - | - | - | 24,000,000 | - | - | - |
| | | | | | | | | | | |
| 2/13/2002 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 30,000,000 | - | - | - |
| | | | | | | | | | | |
| 7/1/2002 | CHECK WIRE | (10,000,000) | - | (10,000,000) | - | - | 25,000,000 | - | - | - |
| | | | | | | | | | | |
| 1/10/2003 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 22,000,000 | - | - | - |
| | | | | | | | | | | |
| 9/5/2003 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 19,000,000 | - | - | - |
| | | | | | | | | | | |
| 3/2/2004 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 20,500,000 | - | - | - |
| | | | | | | | | | | |
| 10/27/2004 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 39,500,000 | - | - | - |
| | | | | | | | | | | |
| 12/23/2004 | CHECK WIRE | 20,000,000 | - | (20,000,000) | - | - | 24,500,000 | - | - | - |
| | | | | | | | | | | |
| 5/31/2006 | CHECK WIRE | (1,300,000) | - | (1,300,000) | - | - | 28,200,000 | - | - | - |
| | | | | | | | | | | |
| 10/12/2006 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | 18,200,000 | - | - | - |
| | | | | | | | | | | |
| 7/2/2007 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | 1,200,000 | - | - | - |
| | | | | | | | | | | |
| 2/28/2008 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | (11,800,000) | - | (6,800,000) | (6,800,000) |
| | | | | | | | | | (5,000,000) | (5,000,000) |
| 3/31/2008 | CHECK WIRE | (6,100,000) | - | (6,100,000) | - | - | (21,900,000) | - | (6,100,000) | (6,100,000) |
| | | | | | | | | | | |
| **Total:** | | | $ 75,000,000 | $ (96,955,000) | $ - | $ - | $ (21,955,000) | $ - | $ (21,955,000) | $ (21,955,000) |

MADC0368_00000002

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05110 (SMB) |
| Plaintiff, | |
| v. | |
| UNITED CONGREGATIONS MESORA, | |
| Defendant. | |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendant United Congregations Mesora ("Mesora," and together with the Trustee, the "Parties") hereby submit this Joint Statement of Undisputed Material Facts in connection with their forthcoming motions for summary judgment pursuant to the Stipulation for Entry of Scheduling Order ("Scheduling Order") entered by this Court on

08-01789-cgm    Doc 16423-1    Filed 07/21/17    Entered 07/21/17 19:15:38    Exhibit A
Pg 42 of 66

January 27, 2017 (ECF No. 53) and Federal Rule of Civil Procedure 56 (made applicable by
Federal Rule of Bankruptcy Procedure 7056).

1.     At all relevant times Bernard L. Madoff controlled BLMIS first as its sole
member, and thereafter as its chairman and chief executive.

2.     On December 11, 2008, Madoff was arrested for violating numerous federal
criminal securities statutes.

3.     Contemporaneously, the Securities and Exchange Commission (the "SEC")
commenced proceedings against BLMIS and Madoff in the United States District Court for the
Southern District of New York (the "District Court") in a case captioned *Securities and
Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791
(the "Liquidation Proceeding").

4.     On December 15, 2008, the SEC consented to a combination of its own action
with an application of the Securities Investor Protection Corporation ("SIPC") pursuant to
Section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.*
("SIPA").

5.     Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the
District Court because BLMIS was not able to meet its obligations to securities customers as
they became due and thus its customers needed the protections afforded by SIPA.

6.     BLMIS was, at all times relevant to this adversary proceeding, registered with the
SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. §
78*o*(b), and a member of the Financial Industry Regulatory Agency (formerly known as the
National Association of Securities Dealers).

7.      At all times relevant to this adversary proceeding, BLMIS was an investment adviser.

8.      Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding.

9.      Mesora has not undertaken any investigation of BLMIS and the operations of that business.  For the sole purposes of this proceeding, Mesora stipulates to the facts set out below in paragraphs 10 through 16.

10.     BLMIS was operating a Ponzi scheme.

11.     BLMIS was insolvent from at least December 11, 2002 and all points after.

12.     BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers.

13.     The investment advisory business (the "Investment Advisory Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.

14.     The Investment Advisory Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals.

15.     The Investment Advisory Business did not receive any legitimate outside financial support from loans or otherwise.

16.     Mesora is a religious based charity, formed as a New York religious corporation and recognized as a public charity under Section 501(c)(3) of the Internal Revenue Code.

3

17.     BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients.

18.     In April of 1996, Mesora entered into an Account Agreement with BLMIS.

19.     The Mesora account was identified as account no. 1U0013 (the "Account").

20.     Attached as Exhibit A is a true and accurate copy of the Account Agreement, in which Mesora provided Madoff with investment discretion.

21.     Mesora opened the Account in good faith and with no knowledge of BLMIS' fraud.

22.     As admitted in Defendant's Responses and Objections to Trustee's First Set of Requests for Admission to Defendant United Congregations Mesora (Exhibit B), Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account and Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the Account.

23.     Columns 1 through 8 of Exhibit B to the Complaint accurately reflect the complete history of the transactions affecting the Account.

24.     Column 3 of Exhibit B to the Complaint accurately reflects the transaction amounts as reported in the customer statements for the Account.

25.     Between April 8, 1996 and December 11, 2008, Mesora deposited a total of $56,500,000 into the Account and withdrew a total of $72,935,000 from the Account.

26.     As accurately reflected in Column 10 of Exhibit B to the Complaint, Mesora withdrew $3,200,000 in excess of deposits between December 11, 2006 and December 11, 2008 (the "Two-Year Period").

4

27.     Mesora deposited $3,000,000 during the Two-Year Period.

28.     Mesora received the withdrawal made during the Two-Year Period.

29.     Mesora made each of its withdrawals in good faith, believing that it was entitled to these funds and lacking any knowledge of the Ponzi scheme.

30.     BLMIS transferred the funds withdrawn by Mesora during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors.

31.     On December 2, 2010, the Trustee brought this adversary proceeding against Mesora to avoid and recover $16,435,000, the difference between the total amounts deposited and withdrawn by Mesora in connection with the Account.

32.     The Trustee did not bring any claim for avoidance of obligations in this adversary proceeding.

33.     BLMIS accepted Mesora's funds for the stated purpose of trading securities for Mesora's benefit.

34.     Mesora's only business relationship with BLMIS, a registered broker-dealer, was as a customer of the Investment Advisory Business.

35.     Mesora did not invest in BLMIS, either as a partner, shareholder, or other equity stake holder.  At no time did Mesora purport to own a share of, or have a financial stake in, the business of BLMIS.

36.     Mesora received monthly Account statements from BLMIS reporting purported securities transactions effected on its behalf.  At all times, BLMIS defrauded Mesora by

5

intentionally misrepresenting the purported securities transactions in the Account.    These
misrepresentations made to Mesora were an integral and essential part of the fraud, and were
made to avoid detection of the fraud, retain existing investors, and to lure other investors into the
Ponzi scheme.

37.    Mesora relied in good faith on BLMIS' reports of securities transactions that it
purportedly made on behalf and for the benefit of the Account.

38.    Mesora reasonably relied on the representations in the Account Agreement and
Account statements.

39.    BLMIS did not comply with its obligations under the Account Agreement.

40.    Mesora was injured by BLMIS' fraud.

41.    Mesora's injuries occurred in the state of New York.

42.    The Trustee has not sought to avoid the Account Agreement.

43.    Mesora engaged an expert, Stephen Behnke, to calculate its lost opportunity costs
during the period that BLMIS held its funds.

44.    Mr. Behnke created a portfolio model for retail securities investments managed by
an honest broker at the time Mesora held the Account, computed the rate of return the model
would have produced during the relevant account period, and applied that model to Mesora's
Account.

45.    Mr. Behnke concluded that Mesora's model portfolio would have returned
$6,019,359.  The expert calculated that the amount received by Mesora that is in excess of the
expert's model is $10,415,641.

46.     Alternatively, Mr. Behnke unwound each transaction and prepared a hypothetical analysis comparing the rate of investment return at BLMIS with New York's 9% statutory rate of interest to calculate Mesora's losses.

47.     The expert concluded that Mesora's rescission claim would have yielded an interest component of $6,459,542.  The expert calculated that the amount received by Mesora that is in excess of the interest component is $9,975,458.

48.     For the purposes of this proceeding, the Trustee is not contesting and will not object to the conclusions set out in paragraphs 44 through 47 above.

Dated:       June 6, 2017
             New York, New York

/s/ Nicholas J. Cremona                    /s/Richard A. Kirby
**BAKER & HOSTETLER LLP**                  **BAKER & MCKENZIE LLP**
45 Rockefeller Plaza                       815 Connecticut Ave., N.W.
New York, NY 10111                         Washington, D.C. 20006
Telephone: 212.589.4200                    Telephone:  202.452.7023
Facsimile: 212.589.4201                    Facsimile:  202.416.7223
David J. Sheehan                           Richard A. Kirby
Email: dsheehand@bakerlaw.com              Email: richard.kirby@bakermckenzie.com
Nicholas J. Cremona                        Laura K. Clinton
Email: ncremona@bakerlaw.com               Email: laura.clinton@bakermckenzie.com
Heather J. McDonald
Email: hmcdonald@bakerlaw.com              *Attorneys for Defendant United Congregations*
                                           *Mesora*

1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783
Kendall E. Wangsgard
Email: kwangsgard@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

Dated: June 7th, 2017

**IT IS SO ORDERED:**


                          **/s/  STUART M. BERNSTEIN**
                          **STUART M. BERNSTEIN**
                          **United States Bankruptcy Judge**

8

08-01789-smb    Doc 17423-1    Filed 07/21/17    Entered 07/21/17 19:45:38    Exhibit A
Pg 49 of 66

**BERNARD L. MADOFF**
**Investment Securities**

885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 19 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00227084

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00227085


MADF

13. **ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 18, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

14. **DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X)_____      (X)_____
(Customer Signature/date)                    (Customer Signature/date)

_____         _____
(Customer Address)                            (Account Number)

_____

AMF00227086

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-05110 (SMB) |
| Plaintiff, | |
| v. | |
| UNITED CONGREGATIONS MESORA, | |
| Defendant. | |

**TRUSTEE'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT**
**UNITED CONGREGATIONS MESORA**
**AND DEFENDANT'S RESPONSES AND OBJECTIONS THERETO**

- 1 -

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Rules 7026 and 7036 of the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, the Case Management Notice (Case No. 08-01789, Dkt. No. 3141), and the Litigation Protective Order (Case No. 08-01789, Dkt. No. 4137) that govern discovery in this action, Defendant United Congregations Mesora ("UCM" or "Defendant"), by and through its attorneys, K&L Gates LLP, objects and responds to Trustee's First Set of Requests for Admission to Defendant United Congregations Mesora, dated August 18, 2014 (the "RFAs") as follows.

## DEFINITIONS

1.      The rules of construction and definitions in Local Rule 26.3, as adopted in Rule 7026 of the Bankruptcy Rules, are hereby incorporated by reference. All defined terms, including those defined in Local Rule 26.3, are capitalized herein.

2.      "Account" or "Accounts" means the BLMIS Account set forth on Exhibit A to the Complaint and any other BLMIS account in which any Defendant has or had any interest in any capacity, whether individually, collectively, or as a fiduciary.

3.      "Applicable Period" means the period from May 21, 1996 to the present.

4.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

5.      "Complaint" means the complaint and any amended complaint(s) filed by the Trustee in this adversary proceeding.

6.      "Defendant" means United Congregations Mesora.

7.      "Transfer(s)" means any conveyance, transmittal, disposition, remittance, payment, or payments made by BLMIS during the Applicable Period to or on behalf of Defendant by any means including, but not limited to, cash, funds, property, or other value conveyed by check, wire transfer, debit, credit to an account, the return of property, withdrawal from an Account, or by any other manner as set forth under section 101(54) of the Bankruptcy Code or section 270 of the New York Debtor & Creditor Law. See 11 U.S.C. § 101(54); N.Y. DEBT. & CRED. Law § 270. "Transfer" also includes, but is not limited to, payments or conveyances of value by BLMIS to any third parties, including intermediaries, for the benefit of Defendant.

8.      "You" or "Your" means United Congregations Mesora in any capacity, and/or anyone acting on United Congregations Mesora's behalf or for United Congregations Mesora's benefit, including any predecessor(s)-in-interest.

9.      For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to these Requests.

10.     Reference to any Person that is not a natural Person and is not otherwise defined herein refers to and includes, but is not limited to, any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

## GENERAL OBJECTIONS

UCM makes the following General Objections to each of the Trustee's Requests for Admission, and expressly incorporates them into its specific responses set forth below.  The failure to refer to a particular General Objection in response to any individual Request for Admission should not be construed as a waiver of that General Objection, in whole or part.

1.    UCM objects to the definition of "Account" or "Accounts" as vague and ambiguous in the context of the Requests for Admission below.  In responding to these Requests, UCM understands "Account" to mean solely BLMIS Account No. 1U0013.  If some other account is intended, UCM requests that the Trustee clarify its discovery requests.

2.    In providing these responses and objections, UCM does not in any way waive or intend to waive, but rather intends to preserve and does hereby preserve:

    a.    All objections as to relevancy, materiality, and admissibility; and

    b.    All rights to object on any ground to the use of any responses to this RFA as evidence in this or any other action, or in any subsequent proceeding.

3.    These objections and responses are limited to the information available to UCM at this time.  Further discovery, investigation, and other pretrial preparation may disclose additional or different information.  Accordingly, UCM expressly reserves the right to correct, clarify, amend, and/or supplement the objections and responses herein, if and when it obtains additional information.

## REQUESTS FOR ADMISSION

1.    Admit that Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account.

**RESPONSE:**

Admit.

2.     Admit that Column 5 of Exhibit B to the Complaint accurately reflects the

withdrawals from the Account.

**RESPONSE:**

Admit.


Dated:  October 15, 2014

                                   **K&L GATES LLP**


                                   By: _____
                                   1601 K Street NW
                                   Washington, DC 20006-1600
                                   Telephone: 202.661.3730
                                   Facsimile: 202.778.9100
                                   Richard A. Kirby
                                   Email: Richard.Kirby@klgates.com
                                   Laura K. Clinton
                                   Email:  Laura.Clinton@klgates.com
                                   Martha Rodriguez Lopez
                                   Email: Martha.RodriguezLopez@klgates.com

                                   *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing TRUSTEE'S FIRST SET OF
REQUESTS FOR ADMISSION TO DEFENDANT UNITED CONGREGATIONS MESORA
AND DEFENDANT'S RESPONSES AND OBJECTIONS THERETO was served this 15th day
of October, 2014 by:

electronic mail to:

David J. Sheehan
Nicholas J. Cremona
Christa C. Turner
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Email: dsheehan@bakerlaw.com
Email: ncremona@bakerlaw.com
Email: cturner@bakerlaw.com

electronic mail and overnight delivery to:

Sammantha Clegg
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Email: sclegg@bakerlaw.com

Martha Rodriguez Lopez
An Attorney for Defendant

- 6 -

MADF

# BERNARD L. MADOFF
## Investment Securities
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 19 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00227084

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.



MADF

### 13. ARBITRATION

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 18, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

### 14. DISCLOSURES TO ISSUERS

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X)___*Alise Jaires*___          (X)_____
(Customer Signature/date)              (Customer Signature/date)

_____          _____
(Customer Address)                      (Account Number)

_____

AMF00227086

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 10-05110 (SMB) |
| Plaintiff, | |
| v. | |
| UNITED CONGREGATIONS MESORA, | |
| Defendant. | |

TRUSTEE'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT
UNITED CONGREGATIONS MESORA
**AND DEFENDANT'S RESPONSES AND OBJECTIONS THERETO**

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Rules 7026 and 7036 of the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, the Case Management Notice (Case No. 08-01789, Dkt. No. 3141), and the Litigation Protective Order (Case No. 08-01789, Dkt. No. 4137) that govern discovery in this action, Defendant United Congregations Mesora ("UCM" or "Defendant"), by and through its attorneys, K&L Gates LLP, objects and responds to Trustee's First Set of Requests for Admission to Defendant United Congregations Mesora, dated August 18, 2014 (the "RFAs") as follows.

<u>**DEFINITIONS**</u>

1.      The rules of construction and definitions in Local Rule 26.3, as adopted in Rule 7026 of the Bankruptcy Rules, are hereby incorporated by reference. All defined terms, including those defined in Local Rule 26.3, are capitalized herein.

2.      "Account" or "Accounts" means the BLMIS Account set forth on Exhibit A to the Complaint and any other BLMIS account in which any Defendant has or had any interest in any capacity, whether individually, collectively, or as a fiduciary.

3.      "Applicable Period" means the period from May 21, 1996 to the present.

4.      "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff Securities International Ltd., Madoff Securities International LLC, Bernard L. Madoff, Ruth Madoff, and all affiliated Persons and entities, including, but not limited to, any officers, directors, agents, representatives, employees, partners, parent companies, subsidiaries, predecessor or successor and related entities, and affiliates of the above specifically identified Persons and entities.

5.      "Complaint" means the complaint and any amended complaint(s) filed by the Trustee in this adversary proceeding.

6.      "Defendant" means United Congregations Mesora.

7.      "Transfer(s)" means any conveyance, transmittal, disposition, remittance, payment, or payments made by BLMIS during the Applicable Period to or on behalf of Defendant by any means including, but not limited to, cash, funds, property, or other value conveyed by check, wire transfer, debit, credit to an account, the return of property, withdrawal from an Account, or by any other manner as set forth under section 101(54) of the Bankruptcy Code or section 270 of the New York Debtor & Creditor Law. See 11 U.S.C. § 101(54); N.Y. DEBT. & CRED. Law § 270. "Transfer" also includes, but is not limited to, payments or conveyances of value by BLMIS to any third parties, including intermediaries, for the benefit of Defendant.

8.      "You" or "Your" means United Congregations Mesora in any capacity, and/or anyone acting on United Congregations Mesora's behalf or for United Congregations Mesora's benefit, including any predecessor(s)-in-interest.

9.      For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to these Requests.

10.     Reference to any Person that is not a natural Person and is not otherwise defined herein refers to and includes, but is not limited to, any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

- 3 -

## GENERAL OBJECTIONS

UCM makes the following General Objections to each of the Trustee's Requests for Admission, and expressly incorporates them into its specific responses set forth below.  The failure to refer to a particular General Objection in response to any individual Request for Admission should not be construed as a waiver of that General Objection, in whole or part.

1.    UCM objects to the definition of "Account" or "Accounts" as vague and ambiguous in the context of the Requests for Admission below.  In responding to these Requests, UCM understands "Account" to mean solely BLMIS Account No. 1U0013.  If some other account is intended, UCM requests that the Trustee clarify its discovery requests.

2.    In providing these responses and objections, UCM does not in any way waive or intend to waive, but rather intends to preserve and does hereby preserve:

a.    All objections as to relevancy, materiality, and admissibility; and

b.    All rights to object on any ground to the use of any responses to this RFA as evidence in this or any other action, or in any subsequent proceeding.

3.    These objections and responses are limited to the information available to UCM at this time.  Further discovery, investigation, and other pretrial preparation may disclose additional or different information.  Accordingly, UCM expressly reserves the right to correct, clarify, amend, and/or supplement the objections and responses herein, if and when it obtains additional information.

## REQUESTS FOR ADMISSION

1.    Admit that Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the Account.

**RESPONSE:**

Admit.

2.    Admit that Column 5 of Exhibit B to the Complaint accurately reflects the

withdrawals from the Account.

**RESPONSE:**

Admit.


Dated:  October 15, 2014

**K&L GATES LLP**

By: _____

1601 K Street NW
Washington, DC 20006-1600
Telephone: 202.661.3730
Facsimile: 202.778.9100
Richard A. Kirby
Email: Richard.Kirby@klgates.com
Laura K. Clinton
Email:  Laura.Clinton@klgates.com
Martha Rodriguez Lopez
Email: Martha.RodriguezLopez@klgates.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing TRUSTEE'S FIRST SET OF
REQUESTS FOR ADMISSION TO DEFENDANT UNITED CONGREGATIONS MESORA
AND DEFENDANT'S RESPONSES AND OBJECTIONS THERETO was served this 15th day
of October, 2014 by:

electronic mail to:

David J. Sheehan
Nicholas J. Cremona
Christa C. Turner
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Email: dsheehan@bakerlaw.com
Email: ncremona@bakerlaw.com
Email: cturner@bakerlaw.com

electronic mail and overnight delivery to:

Sammantha Clegg
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Email: sclegg@bakerlaw.com

Martha Rodriguez Lopez
An Attorney for Defendant

- 6 -