# CHAITMAN LLP
### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

July 24, 2017

**VIA ECF AND EMAIL:** bernstein.chambers@nysb.uscourts.gov

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:   *In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB)

Dear Judge Bernstein:

We write, on behalf of the good-faith Defendants represented by Chaitman LLP ("Defendants"), in response to Mr. Sheehan's letter of June 14, 2017 regarding the 4,700 unrestored reels of microfilm in the Trustee's possession, the existence of which the Trustee concealed despite two court orders requiring their production. (ECF No. 16348).

To date, the Securities Investor Protection Corporation ("SIPC") has paid Baker & Hostetler nearly one billion dollars in fees and the Trustee's consultants have been paid nearly $400 million. *See* http://www.madofftrustee.com/recovery-chart-fees-34.html (last accessed July 21, 2017).

Baker & Hostetler's most recent fee application seeks legal fees in excess of $35 million for three months' work. (ECF No. 16367). The waste which has resulted in such massive fees has been obvious. For instance, the Trustee's counsel never go anyplace alone. As this Court is well aware, they usually appear in court in numbers ranging from five to ten attorneys on a motion day. Another glaring example is the Trustee's payment of over $30 million to his key expert, Bruce Dubinsky, to whom the Trustee never disclosed that he was holding trading records from the 1980s. Dubinsky was given access only to the documents that the Trustee put into the E-Data Room, *i.e.,* the documents that supported the Trustee's and SIPC's version of the facts. Thus, Dubinsky was never given the 500 reels of microfilm documents that the Trustee produced to the Defendants in 2017 pursuant to Magistrate Judge Maas' order. And, of course, Dubinsky was never given the 4,700 reels of microfilm that the Trustee is now holding hostage.

Despite the entry of two court orders that the Trustee never challenged; and in the face of his unrestrained spending with respect to fees in which the Trustee participates, the Trustee has decided, for the first time in almost nine years, that he should economize, not by reducing his

CHAITMAN LLP

The Honorable Stuart M. Bernstein
July 24, 2017
Page 2

firm's fees to a justifiable level but rather by imposing upon innocent customers the expense of producing the previously undisclosed 4,700 reels of unrestored microfilm. The Trustee argues that he is not required to pay for the restoration and production of this microfilm under Federal Rule of Civil Procedure 26 because the costs of doing so are not proportional to the needs of these cases.

This argument is a disgrace: the Trustee and his counsel have flatly misrepresented the facts to every court before which they have appeared in order to save SIPC $2 billion in insurance payments. They ignored an order of this Court on May 17, 2016 that they should immediately produce any trading records that are not already in the E-Data Room. And now that the Trustee's fraud has been uncovered, he thinks the financially decimated victims of his own fraud should come up with the money to obtain the evidence documenting the Trustee's dishonesty. The Trustee's position is insupportable.

### I. The Trustee has a duty under the Securities Investor Protection Act to produce the 4,700 reels of unrestored microfilm

The Trustee asserts that the issue before the Court is governed by Rule 26. He does so because he has completely ignored his statutory obligations as a SIPA trustee to investigate the Debtor and disclose to the entire creditor body the facts relating to the Debtor's fraud. *See, e.g.*, 15 U.S.C. §§ 78*fff*-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with respect to fraud, misconduct, mismanagement, and irregularities" of the debtor). The Trustee's claim that he was "transparent" about the microfilm in his possession is preposterous. He concealed the fact that he had 5,300 reels of microfilm records for over a year after this Court ordered him to put all such records in the E-Data room. And he concealed from Defendants, until June 25, 2017 (i) how much microfilm he had (5,300 reels) and (ii) how much of that microfilm had *never* been restored or produced (4,700 reels). (ECF No. 16237 Ex. AA.) Now that he has been caught defrauding this Court, the Second Circuit, and the entire customer body, he seeks to shift the costs of his misconduct onto his victims.

### II. The Trustee has concealed the existence of the 4,700 reels of unrestored microfilm even though he has already been ordered numerous times to produce all trading records

While obviously, the Trustee views this as another billing opportunity for himself, the issue here is much more significant – testing the integrity of this entire proceeding. The Trustee comes into this Court having violated SIPA's mandate that he investigate the debtor and disclose to the court all facts concerning the debtor's financial affairs. *See infra.* The Trustee also comes into court having violated two court orders to produce all of the trading records – the first of which was issued on May 17, 2016. Yet the Trustee concealed from the Defendants, until June 25, 2017, the fact that he was holding 4,700 reels of unrestored microfilm that he had never produced.

While the Trustee relies upon Judge Maas' March 15, 2017 order, he ignores Judge Maas' January 7, 2017 order requiring the Trustee to produce all trading records. *See In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB) ECF No. 14807 at 3 ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data

**CHAITMAN LLP**                                      The Honorable Stuart M. Bernstein
July 24, 2017
Page 3

Room 1, they must promptly be produced."). Obviously, the Trustee ignored Judge Maas' order and simply produced what he found it to be convenient to produce. The Trustee certainly never disclosed that he was still holding 4,700 reels of microfilm. As this Court pointed out to Mr. Sheehan on June 29, 2017, there are "two orders directing you to turn over the documents." (*See* June 29, 2017 Transcript at 74:14-15, attached as Ex. A). Yet, the Trustee has still not turned them over.

Why, under these circumstances, would the Court reward the Trustee for his dishonesty by allowing him to force the innocent Defendants to pay the Trustee's outrageous fees in order to document the Trustee's fraud?

### III. The Federal Rules require the Trustee to produce – at his expense – the 4,700 reels of unrestored microfilm in a searchable format and to pay Defendants' counsel fees incurred in seeking to compel the Trustee to comply with his discovery obligations

The Trustee now offers to comply with his discovery obligations but only if Defendants bear the costs of such compliance. The Trustee never raised the costs of compliance before this Court on May 17, 2016. Nor did the Trustee ever raise the costs of compliance with Magistrate Judge Maas.

Under Rule 37(b)(2), the Trustee is obligated to pay the costs of production and, in addition, to pay the Defendants' reasonable attorneys' fees in seeking the Trustee's compliance with this Court's May 17, 2016 order. *See* Fed. R. Civ. P. 37(b)(2) (if a party "fails to obey an order to provide or permit discovery. . . . the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure")(emphasis added); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure to comply with discovery orders justly allows the court to impose costs upon the failing party . . . . The Second Circuit has repeatedly emphasized the importance of complying with discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'") (citation omitted). *See also Moore's Federal Practice* § 37.50[1][a] ("[A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.").

The 4,700 reels of microfilm are clearly discoverable under Federal Rule of Civil Procedure 26(b)(1), which outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.

{00031867 2 }

**CHAITMAN LLP**

The Honorable Stuart M. Bernstein
July 24, 2017
Page 4

> Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

All of these considerations require the Trustee to restore and produce in a searchable format, at the Trustee's expense, the 4,700 reels of unrestored microfilm. There is absolutely no reason why the expense of restoring and producing these records should be put on the financially decimated Defendants who have been required to produce all of their own records at their own expense, even though the Trustee has virtually all of these records anyway.

The issues at stake are of tantamount importance not only to the Defendants but to the entire creditor body and to the public. It is quite possible that the 1980s trading records will require the Trustee to recalculate the claims of customers so that they are entitled to receive SIPC insurance. And, after repeatedly and endlessly bragging to the courts and the public about the efforts the Trustee went to in order to establish his E-Data Room which he claimed contained every document any customer could possibly want to see in connection with his defense, the Trustee should be held to his word – and be required to put all of the previously undisclosed documents, and any further documents still not disclosed, in the E-Data Room in a legible and searchable format.

Having probably been paid more than any Trustee in the history of the world, and having deprived customers of their statutory right to SIPC insurance based on the false claim that Madoff never purchased securities for any of his investment advisory customers, it is preposterous that the Trustee now seeks to hide behind the proportionality concept of Rule 26. In many of these cases, the Trustee and his law firm have been paid legal fees grossly in excess of the amount in controversy. But the Trustee has never suggested that **his fees** should be subject to a proportionality analysis. It is shameful that the Trustee would seek to impose on the innocent Defendants a cost that he should have incurred to present honestly the facts concerning the timing and scope of Madoff's fraud. Moreover, to each of the Defendants, the amount at issue is life-changing because these are people whose lives were decimated first by Madoff's fraud, and then by the Trustee's fraud. Many of the victims stand to lose their entire life savings and their homes. To withhold relevant evidence from them (or require them to pay millions of dollars to obtain access to this evidence in a usable format) is a callous attempt to determine the outcome of their cases without their being able to defend themselves fully, appropriately, and fairly.

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require consideration of the parties' **relative** access to information. *See* Advisory Committee Notes to the 2015 Amendments to Fed. R. Civ. P. 26. Here, the Trustee – who owes a fiduciary duty to each Defendant – has had access to the 4,700 unrestored reels of microfilm for nine years and yet, for nine years has falsely represented that Madoff never purchased securities for any of his investment advisory customers.

**CHAITMAN LLP**

The importance of the discovery in resolving the issues cannot be over-stated. The discovery sought is designed to ascertain the scope of the Madoff fraud, when the fraud began, and for what period customers are entitled to the appreciation shown on their statements.

The Trustee has repeatedly taken the position that he relies entirely upon Dubinsky to prove that Madoff never purchased any securities for his investment advisory customers. Dubinsky's report is based on the assertion that there is no evidence of any real trading by the investment advisory business. Yet Dubinsky reached this conclusion without being supplied with any of the 1980s trading records, including the microfilm records. Thus, aside from Dubinsky's appalling ignorance of convertible bond trading in the 1980s (as demonstrated by the expert report of William Feingold which supports 100% Madoff's testimony concerning the mistakes in the Dubinsky report), Dubinsky was further handicapped by the Trustee's concealment of the 1980s trading records.

Given that the Trustee's case is based on a purported **absence** of evidence of real trading, the Trustee has an obligation to produce to the Defendants all of Madoff's trading records, whether the Trustee thinks they are "real" trading records or "fake" trading records. It is not for the Trustee to determine which records are real and which are not; it is for the fact finder.

It is also vital that all innocent victims, many of whom are threatened with the loss of their life's savings, be able to defend themselves fully without the Trustee pre-determining the facts by concealing material evidence. The Trustee's proportionality argument is nothing more than a last ditch attempt to conceal the Trustee's fraud because, obviously, the Defendants are incapable of funding the costs of compliance with the Trustee's discovery obligations. And, of course, the Trustee's greed surfaces even here. He now discloses, for the first time, that it will cost over $2 million to put the documents in computer-searchable form so that they can be easily analyzed and shared with others. And he proposes to shift this burden to the innocent Defendants, including a charge of almost $500 an hour (of which the Trustee receives a percentage) to have a clerk monitor the microfilm review. Yet, on May 17, 2016 when the Court ordered the Trustee to put into the E-Data Room any trading records not yet produced, the Trustee did not, at that time, condition compliance with that order on the Defendants paying the costs. Instead, the Trustee lied and said that all trading records had been put into the E-Data Room.

The Trustee and SIPC have worked, since December 2008, to conceal from the courts and the customers the true nature and extent of Madoff's fraud. They did so in order to save SIPC approximately $2 billion in SIPC insurance payments at a time when neither the Trustee nor SIPC knew whether SIPC would be reimbursed for its advances. The devastation that the Trustee and SIPC have caused is immeasurable in terms of the emotional impact on Madoff's customers. The economic devastation is measurable and huge. But the first step is to compel the Trustee to produce all of Madoff's trading records in a reasonably searchable form and at his own expense.

**IV.     Defendants have already made a showing of relevancy under Rule 26**

The Trustee continues to argue that Defendants have not made any showing under Rule 26 that the production of the 4,700 reels of unrestored microfilm will result in relevant evidence. But

**CHAITMAN LLP**

The Honorable Stuart M. Bernstein
July 24, 2017
Page 6

in Defendants' June 26, 2017 Memorandum to the Court (ECF Nos. 16236-37) and in an accompanying letter by the Sage Defendants (ECF No. 16243), Defendants gave several examples of documents in the microfilm that has been produced to date evidencing pre-1992 trading. These documents were only produced because the Trustee was finally forced to restore previously unrestored microfilm. Mr. Sheehan also admitted he had never reviewed the 4,700 reels of microfilm (June 29, 2017 Tr. at 68:4-16), and thus has no basis to claim what these records will or will not show. The 4,700 unrestored reels of microfilm should be produced in computer searchable format and, along with the prior microfilm productions, posted to the E-Data Room as promptly as possible by the Trustee, at the Trustee's expense.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC
Encl.

cc:   (*via ECF and Email w/encl.*)
      David Sheehan (dsheehan@bakerlaw.com)
      Andrew Kratenstein (akratenstein@mwe.com)
      Carole Neville (carole.neville@snrdenton.com)

{00031867 2 }