LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for Defendants David I. Lustig, individually
and in his capacity as Trustee for The Lustig Family
1990 Trust, and The Lustig Family 1990 Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,                                          Adv. Pro. No. 08-01789 (SMB)

                Plaintiff-Applicant,          SIPA LIQUIDATION

        v.                                   (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,
                                                     **REPLY MEMORANDUM
            Defendant.             OF LAW IN FURTHER
-------------------------------------------------------------x    SUPPORT OF MOTION
In re:                                               FOR RECONSIDERATION
                                                     AND STAY OF DISCOVERY**
BERNARD L. MADOFF,

            Debtor.

-------------------------------------------------------------x

IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

            Plaintiff,               Adv. Pro. No. 10-4554 (SMB)

        v.

DAVID IVAN LUSTIG,

            Defendant.

------------------------------------------------------------x

IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                        Plaintiff,                            Adv. Pro. No. 10-4417 (SMB)

        v.

THE LUSTIG FAMILY 1990 Trust, et al.,

                        Defendants.

------------------------------------------------------------x

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................................iii

PRELIMINARY STATEMENT ........................………......................................................1

ARGUMENT...................................................………………...................................................1

RECONSIDERATION SHOULD BE
GRANTED IN LIGHT OF THE MISTAKES OF
LAW AND FACT IN THE COURT'S RULINGS.....…………...............................................1

POINT ONE

THE AFFIRMATIVE DEFENSES BASED
ON THE COURT'S EQUITABLE POWERS
UNDER § 105 (a) ARE VIABLE AND
SHOULD NOT HAVE BEEN DISMISSED.............................................…...................................3

A.    The Equitable Credits Sought By Defendants Are Entirely
      Consistent With The Bankruptcy Code And SIPA...................................…..........3

        1.    The Ruling That The Equitable Credits Sought By
              Defendants With The Bankruptcy
              Code Is Based On Mistakes of Law And Fact...............................................3

        2.    The Ruling That The Equitable Credits Sought By
              Defendants Are Inconsistent With SIPA Is Based On
              Mistakes of Law And Fact............................................................................6

B.    The Bankruptcy Court's Equitable Powers May Be Invoked
      To Avoid The Patent Unreasonableness And Injustice Of The
      Trustee's Actions...................................................…............................................8

POINT TWO

THE AFFIRMATIVE DEFENSE BASED
ON THE SINGLE SATISFACTION RULE
UNDER § 550(d) IS VIABLE AND
SHOULD NOT HAVE BEEN DISMISSED.............................................…...................................9

i

POINT THREE

THE AFFIRMATIVE DEFENSE BASED
ON THE THEORY OF RECOUPMENT IS VIABLE
AND SHOULD NOT HAVE BEEN DISMISSED............................................................12

POINT FOUR

"EXCEPTIONAL CIRCUMSTANCES" EXIST
THAT WARRANT RELIEF UNDER RULE 60(b)..........……...........................................13

POINT FIVE

DISCOVERY SHOULD BE STAYED PENDING
THE ADJUDICATION OF THIS MOTION..........……...................................................15

CONCLUSION.................……….........................................................................................16

## TABLE OF AUTHORITIES

**Cases**

Bakst v. Sawran (In re Sawran), 359 B.R. 348 (Bankr. S.D. Fl. 2007)........................................10

Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),
    397 B.R. 1 (S.D.N.Y. 2007)...............................................................................9

Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.),
    312 B.R. 262 (Bankr. D.N.J. 2004)................…….…..................................14

In re Bayou Grp., 396 B.R. 810 (Bankr. S.D.N.Y. 2008)...............................................5

In re Bayou Grp., LLC, 439 B.R. 284 (S.D.N.Y. 2010)..................................................5

McCord v. Agard (In re Bean), 252 F.3d 113 (2nd Cir. 2001).....................................10

New York State Elec. and Gas Corp. v. McMahon, 129 F.3d 93 (2nd Cir. 1997)..........................12

Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    499 B.R. 416 (S.D.N.Y. 2013)...................................................3-4, 5, 6

Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014)......................................................7

Terry v. Meredith (In re Meredith), 367 B.R. 558 (E.D. Va. 2007)...............................10

Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138 (2nd Cir. 2002)...........................12

**Statutes**

11 U.S.C. § 548(c).................................................……….…..........................3, 4

11 U.S.C. § 550(a).................................................……….….............................8

11 U.S.C. § 550(d).................................................……….…..................9, 10, 11

**Rules**

Fed. R. Bankr. P. 9024.................................................……….…........................1

Fed. R. Civ. P. 60(b).................................................……….…...................1, 13, 15

## PRELIMINARY STATEMENT

Defendants David I. Lustig ("Mr. Lustig") and The Lustig Family 1990 Trust

("Trust") (collectively, "Defendants") respectfully submit this reply memorandum of law in

further support of their motion for an order: (1) pursuant to Rule 60(b) of the Federal Rules of

Civil Procedure, Rule 9024 of the Federal Rules of Bankruptcy Procedure, and this Court's

inherent power granting reconsideration of the Order Granting Partial Summary Judgment

Striking Affirmative Defenses ("Order") entered on June 13, 2017 in <u>Irving H. Picard v. David</u>

<u>Ivan Lustig</u>, Adv. Pro. No. 10-4554 ("IRA Case") (Dkt. # 85) and in <u>Irving H. Picard v. The</u>

<u>Lustig Family 1990 Trust and David I. Lustig</u>, Adv. Pro. No. 10-4417 ("Trust Case") (Dkt. # 83);

(2) staying discovery pending the adjudication of this motion; and (3) granting such other and

further relief as the Court deems just and proper.

## ARGUMENT

### RECONSIDERATION SHOULD BE
### GRANTED IN LIGHT OF THE MISTAKES OF
### LAW AND FACT IN THE COURT'S RULINGS

As discussed in the main moving papers, it was assumed as true for purposes of

the underlying motion that: (1) the $2,000,000 withdrawn from the IRA Account and the

$5,000,000 withdrawn from the Trust Account were deposited/reinvested back into BLMIS

through the Senator/Broad Market Feeder Funds and thus returned to BLMIS; (2) all the money

was lost when Madoff's fraud was discovered; and (3) Defendants never actually received any of

the money.

The Trustee does not dispute items (1) and (2) above but disputes item (3), <u>i.e.</u>,

that it was assumed as true that "Defendants never actually received any of the money."

(Trustee's Memorandum of Law in Opposition to Motion for Reconsideration ("Opp. Mem.") at

3-4).  The Trustee is wrong.  The Court assumed as true that the $2,000,000 and $5,000,000

withdrawals were subsequently reinvested/deposited back into BLMIS through the feeder funds

and that the value of those reinvestments "was effectively zero" when Madoff was discovered.

(Decision at 5).  It necessarily follows from this – i.e., the fact that the money was

reinvested/deposited back into BLMIS and lost when the fraud was discovered – that Defendants

never actually received the money.  While the Court found that Defendants briefly had

"dominion and control" over the money upon withdrawing it from BLMIS, it is clear from the

series of transactions that transpired (which the Court assumed "occurred as the Lustig

Defendants claim") that Defendants did not actually receive the money other than constructively

acting as a brief conduit merely for the purpose of passing it on to Lakeview for reinvestment

into BLMIS.   This is apparent from the fact that, in the IRA Case, the $2,000,000 was

withdrawn and transferred to Fiserv on July 25, 2007, and Mr. Lustig instructed Fiserv to wire

that entire sum to Lakeview the very next day.  Similarly, in the Trust Case, the $5,000,000 was

withdrawn on July 24, 2007, and within a matter of days was transferred to Lakeview pursuant to

Mr. Lustig's instruction.  All that Mr. Lustig did upon making these withdrawals was

immediately or almost immediately instruct that all the money be transferred to Lakeview.  It is

not and cannot be disputed that Defendants did not retain any of the money.

2

**POINT ONE**

**THE AFFIRMATIVE DEFENSES BASED
ON THE COURT'S EQUITABLE POWERS
UNDER § 105(a) ARE VIABLE AND
SHOULD NOT HAVE BEEN DISMISSED**

**A.    The Equitable Credits Sought By Defendants Are Entirely
Consistent With The Bankruptcy Code And SIPA**

The Trustee contends that reconsideration of the Court's ruling dismissing the

equitable defenses is not warranted because the proposition that Defendants are relying upon –

that a customer is only entitled to a credit for deposits made into its BLMIS account to the extent

the deposits consist of principal and not fictitious profits – "is self-serving and unsupportable."

(Opp. Mem. at 4).  The Trustee is wrong.  Respectfully, the Court's ruling is based on mistakes

of law and fact.

**1.    The Ruling That The Equitable Credits Sought By
Defendants Are Inconsistent With The Bankruptcy
Code Is Based On Mistakes Of Law And Fact**

The Court ruled that the equitable credits sought by Defendants are inconsistent

with the Bankruptcy Code because:

> Bankruptcy Code § 548(c) provides a defense to the extent
> that the initial transferee takes in good faith and "gave
> value to the debtor in exchange for such transfer or
> obligation."  The Funds gave value through the deposits
> that the Lustig Defendants are trying to conscript for their
> own benefit, and the Funds are entitled to the credit for
> those deposits under § 548(c).

(Decision at 9).  However, it is well-established law that a deposit made by a customer into its

BLMIS account may count as "value" for which the customer may receive a credit under §

548(c) only to the extent the deposit consists of principal.  See Securities Inv. Prot. Corp. v.

3

Bernard L. Madoff Inv. Sec. LLC, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("Antecedent Debt Decision") ("only a defendant's investment of principal may count as 'value' . . . for purposes of section 548(c)"). Respectfully, the Court overlooked this law in its ruling and also overlooked the fact that the $2,000,000 and the $5,000,000 deposited by the Senator/Broad Market Feeder Funds into their BLMIS accounts consisted primarily of fictitious profits. Pursuant to the Antecedent Debt Decision, the feeder funds are not entitled to credits for these deposits under § 548(c) to the extent these deposits consisted of fictitious profits.[1]

The Trustee argues that the "[t]he portion of the Antecedent Debt Decision cited by Defendants relates to inter-account transfers between one party's various BLMIS accounts" and therefor does not apply here. (Opp. Mem. at 5). This argument is frivolous. First, given that this Court expressly relied on the concept of "value" under § 548(c) as the basis for its ruling that the feeder funds are entitled to credits under the Bankruptcy Code for the deposits made into their BLMIS accounts, the holding in the Antecedent Debt Decision that "only [] an investment of principal may count as 'value'" under § 548(c) is plainly applicable here. There is nothing in the Antecedent Debt Decision that limits this holding to inter-account transfers between accounts owned by the same person. This holding on its face applies to all deposits made into BLMIS accounts.

Second, as a matter of law and common sense, the principle that fictitious profits

---

[1]The Trustee claims that "Defendants admit that the $2,000,000 and $5,000,000 withdrawn from their BLMIS accounts were fictitious profits[.]" (Opp. Mem. at 4). That is not true. Defendants have not admitted that the entire $2,000,000 and $5,000,000 withdrawals were fictitious profits. According to the Trustee's complaints, these withdrawals consisted primarily, but not entirely, of fictitious profits. (FAC-IRA ¶ 2; Exh. B to FAC-IRA; FAC-Trust ¶ 2; Exh. B to FAC-Trust).

cannot be transformed into principal simply by "shifting them among accounts" applies to all

transfers.  As Judge Rakoff wrote:

> [T]he true substance of transfers of fictitious profits from one account to another remains the same: The funds at issue are still other people's money, and shifting them among accounts, <u>whether those accounts are owned by the same person or entity</u> . . . does not morph those funds into actual new principal[.]

Antecedent Debt Decision, 499 B.R. at 428-29 (emphasis added).  That is true regardless of

whether the fictitious profits were transferred from one BLMIS account to another BLMIS

account owned by the same customer or, as here, transferred from one customer's BLMIS

account to another customer and then deposited by the transferee-customer into its own BLMIS

account.  In both instances, the fictitious profits did not "morph . . . into actual new principal"

because "no new value was created by moving these funds between accounts."  <u>Id.</u> at 429 (citing

<u>In re Bayou Grp., LLC</u>, 439 B.R. 284 (S.D.N.Y. 2010) and <u>In re Bayou Grp.</u>, 396 B.R. 810

(Bankr. S.D.N.Y. 2008)).

        The entire premise of the Trustee's argument – <u>i.e.</u>, that fictitious profits do not

morph into principal when transferred "between one party's various BLMIS accounts" but <u>does</u>

morph into principal when withdrawn from one customer's BLMIS account and transferred to

another customer and then deposited by the transferee-customer into its own BLMIS account – is

absurd, illogical, and flies in the face of Judge Rakoff's ruling.  No court anywhere has ever ruled

that fictitious profits can morph into principal under any circumstances.  It is unfortunate that the

Trustee's blind zeal in pursuing these patently unjust and unreasonable avoidance actions against

Defendants has led him to adopt this utterly frivolous position.

5

Finally, it should be noted that, contrary to what the Trustee apparently believes, the inter-account transfers at issue in the Antecedent Debt Decision were not between "one party's various BLMIS accounts[.]"  The decision addressed inter-account transfers between accounts held by different customers.  <u>See</u> Antecedent Debt Decision, 499 B.R. at 429 ("Despite the factual distinction between a single individual's accounts in <u>Bayou</u> and a transfer among account holders here, the <u>Bayou</u> court's reasoning nonetheless applies and is persuasive on the facts of this case.").  The principle articulated by Judge Rakoff that Defendants are relying upon is applicable regardless of whether the transfers were between accounts held by the same person or entity or by different persons or entities.

Accordingly, and for all the reasons set forth in the main moving papers, Defendants respectfully submit that the Court's ruling that the equitable credits sought by Defendants are inconsistent with the Bankruptcy Code is based on mistakes of law and fact.

**2.      The Ruling That The Equitable Credits Sought By Defendants Are Inconsistent With SIPA Is Based On Mistakes Of Law And Fact**

The Court ruled that the equitable credits sought by Defendants are inconsistent with SIPA because the Senator/Broad Market Feeder Funds

> received a credit for [the $2,000,000 and the $5,000,000] deposits under SIPA.  The Funds are net losers, and under the "Net Investment Method" approved by the Second Circuit . . . they are entitled to net equity claims based on the difference between the amount they deposited and the amount they withdrew from their BLMIS account.

(Decision at 9-10).  However, under the Net Investment Method for calculating net equity under SIPA, a customer is entitled to a credit for deposits made into its BLMIS account <u>only to the</u>

6

extent the deposits consist of principal and not fictitious profits. <u>See</u> <u>Securities Inv. Prot. Corp.</u>

<u>v. Bernard L. Madoff Inv. Sec. LLC</u>, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014) (under Net

Investment Method, "each customer's net equity [is calculated] solely with reference to the

customer's cash deposits and withdrawals ignoring the fictitious profits depicted in the

statements"). Respectfully, the Court overlooked this law in its ruling and also overlooked the

fact that the $2,000,000 and the $5,000,000 deposited by the Senator/Broad Market Feeder Funds

into their BLMIS accounts consisted primarily of fictitious profits for which the funds are not

entitled to any credit under the Net Investment Method for calculating net equity. The Trustee

does not dispute this point in his opposition papers.

It is important to point out that, insofar as the Trustee has already given the

Senator/Broad Market Feeder Funds full credits for the deposits made into their BLMIS accounts

in calculating their net equity even though the deposits consisted primarily of fictitious profits,

the Trustee obviously erred in doing so. In pursuing these avoidance actions against Defendants

to recover the same alleged fictitious profits, the Trustee is essentially trying to make Defendants

pay for the Trustee's own costly mistake. It is only by overlooking the fact that the feeder funds

are not entitled to credits for the deposits of fictitious profits into their accounts and erroneously

giving the feeder funds credits for the deposits of fictitious profits into their accounts that this

reality becomes distorted into the "double credit" scenario that the Court relied upon to dismiss

Defendants' equitable defenses.

Accordingly, and for all the reasons set forth in the main moving papers,

Defendants respectfully submit that the Court's ruling that the equitable credits sought by

Defendants are inconsistent with SIPA is based on mistakes of law and fact.

**B.    The Bankruptcy Court's Equitable Powers May Be Invoked
To Avoid The Patent Unreasonableness And Injustice Of The
Trustee's Actions**

As discussed in the main moving papers, the Court's analysis rejecting the

equitable defenses is also flawed because it mistakenly ignored the patent unreasonableness and

injustice of the Trustee's attempts to recover from Defendants money that has already been

returned to BLMIS and lost by Defendants.  The Court also did not take into account well-

established law permitting the Court to exercise its equitable powers to avoid unjust results that

may occur in avoidance actions, such as the ones here, where 11 U.S.C. § 550(a) is applied

literally.  The Trustee did not address this point in his opposition papers.

The Trustee contends that the Court properly dismissed the equitable defenses

because Defendants were not "mere conduits" of the $2,000,000 and $5,000,000 withdrawals at

issue.  (Opp. Mem. at 6).  This contention is misguided for two reasons.  First, assuming "that the

series of transfers occurred as [] Defendants claim" (Decision at 5), they clearly show that

Defendants made the withdrawals from their BLMIS accounts "merely to pass it on to" Lakeview

for reinvestment into BLMIS.  In the IRA Case, the $2,000,000 was withdrawn and transferred to

Fiserv on July 25, 2007, and Mr. Lustig instructed Fiserv to wire that entire sum to Lakeview the

very next day.  Similarly, in the Trust Case, the $5,000,000 was withdrawn on July 24, 2007, and

within a matter of days was transferred to Lakeview pursuant to Mr. Lustig's instruction.  Both

withdrawals were made solely and specifically for the purpose of reinvesting the money back into

BLMIS through Lakeview.  And all that Mr. Lustig did upon making these withdrawals was

immediately or almost immediately instruct that all the money be transferred to Lakeview for that

purpose.  He did not do anything else with the money and had no intention of doing anything else

8

with the money.

Second, while these facts are important to show that the money merely passed through Defendants and that they never actually received any of the money, none of the affirmative defenses at issue has a "mere conduits" requirement. For example, the equitable defenses rely primarily on the fact that the money withdrawn from Defendants' BLMIS accounts were reinvested/deposited back into BLMIS. Similarly, the essential element of the defense based on the single satisfaction rule under § 550(d) is that the money was returned to BLMIS, not that Defendants at some point served as "mere conduits" of the money. These defenses are viable even if it is assumed that Defendants were not "mere conduits" within the meaning of Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.), 397 B.R. 1 (S.D.N.Y. 2007).

In sum, and for all the reasons set forth in the main moving papers, Defendants respectfully submit that the Court's ruling striking and dismissing Defendants' equitable defenses is based on mistakes of law and fact.

## POINT TWO

### THE AFFIRMATIVE DEFENSE BASED
### ON THE SINGLE SATISFACTION RULE
### UNDER § 550(d) IS VIABLE AND
### SHOULD NOT HAVE BEEN DISMISSED

The Trustee asserts that the Senator/Broad Market Feeder Funds are not subsequent transferees of the $2,000,000 and $5,000,000 withdrawn from Defendants' BLMIS accounts because the Trustee has only sued these funds as initial transferees of the money withdrawn from their own BLMIS accounts and not as subsequent transferees of the money withdrawn from Defendants' BLMIS accounts. (Opp. Mem. at 7). However, the fact that the

9

Trustee did not sue these funds as subsequent transferees of the money withdrawn from

Defendants' BLMIS account but has only sued them as initial transferees of the withdrawals

made from their own accounts does not mean that these funds were not subsequent transferees of

the money withdrawn from Defendants' BLMIS accounts. Assuming "that the series of transfers

occurred as the Lustig Defendants claim," it is clear that these funds were subsequent transferees

of the money withdrawn from Defendants' BLMIS accounts.

The Trustee also contends that Bakst v. Sawran (In re Sawran), 359 B.R. 348

(S.D. Fl. 2007) supports the Court's ruling that 11 U.S.C. § 550(d) is not applicable here. (Opp.

Mem. at 7). It does not. The key point in Sawran – which the Trustee did not address – is that,

to the extent a subsequent transferee of an avoidable initial transfer has returned the money to the

debtor prepetition, the initial transfer has been satisfied and the trustee is barred from seeking to

recover it again. See Sawran, 359 B.R. at 350-53. Here, the $2,000,000 and the $5,000,000

withdrawn from Defendants' BLMIS accounts were returned to BLMIS prepetition when the

money was reinvested/ deposited back into BLMIS by subsequent transferees of the money, the

Senator/Broad Market Feeder Funds. Pursuant to Sawran, because these feeder funds-subsequent

transferees returned the money to BLMIS prepetition, the initial allegedly fraudulent transfers to

Defendants were satisfied and the Trustee is barred by § 550(d) from seeking to recover that

money again from Defendants.

The Trustee also contends that Defendants' reliance on Terry v. Meredith (In re

Meredith), 367 B.R. 558, 563 (E.D. Va. 2007) and McCord v. Agard (In re Bean), 252 F.3d 113

(2nd Cir. 2001) is misplaced because these cases are factually distinguishable. (Opp. Mem. at 7-

8). On the contrary, Defendants are simply relying on these cases for the well-established

10

proposition that the single satisfaction rule under § 550(d) bars a trustee from seeking recovery

from a transferee where the transferred property or the value thereof has already been returned to

the debtor.[2]    There is no support whatsoever for the Trustee's suggestion that this rule is not

applicable here simply because BLMIS is subject to a SIPA liquidation proceeding.

The Trustee further claims that § 550(d) is not applicable here because "[c]ontrary

to their misleading characterizations, Defendants did not return the money to the BLMIS estate."

(Opp. Mem. at 8).  However, as discussed above, that fact must be assumed as true for purposes

of this motion.  Assuming as true that the $2,000,000 and $5,000,000 withdrawals at issue were

reinvested/deposited back into BLMIS and thus returned to BLMIS, the Trustee's attempts to

recover those withdrawals again from Defendant clearly violates § 550(d).

Finally, the Trustee inaccurately asserts that "it is Defendants who seek a double

recovery" by opposing the Trustee's claims "while simultaneously recovering from Lakeview[.]"

(Opp. Mem. at 9).  In fact, Defendants lost the entire $2,000,000 and $5,000,000 that they

withdrew and reinvested back into BLMIS through the feeder funds.  They have only recovered

approximately 11% of their losses from Lakeview, and there is no prospect for any further

recovery.  Defendants will never be made whole for their losses.  It is the Trustee who is

unquestionably seeking a double recovery here.

In sum, and for all the reasons set forth in the main moving papers, Defendants

respectfully submit that the Court's ruling that § 550(d) is not applicable here is based on

---

[2]The Trustee also asserts that Defendants are relying on these cases for the first time here.
(Opp. Mem. At 7).  That is not true.  Defendants relied on these cases in their opposition to the
Trustee's motion to strike their affirmative defenses, as well as in various correspondence with
the Trustee and with the Court over the past several years.

11

mistakes of law and fact.

**POINT THREE**

**THE AFFIRMATIVE DEFENSE BASED
ON THE THEORY OF RECOUPMENT IS VIABLE
AND SHOULD NOT HAVE BEEN DISMISSED**

The Trustee contends that "Defendants have not identified any mistake of law or fact made by the Court in determining that the recoupment defense does not apply." (Opp. Mem. at 9). This contention is meritless. At issue is the legal standard applied by the Court in dismissing the recoupment defense. The applicable standard is whether the offsetting claims supporting the defense arise out of "a single contract" or "a single set of transactions" or "a single integrated transaction[.]" New York State Elec. and Gas Corp. v. McMahon, 129 F.3d 93, 96 (2nd Cir. 1997); Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 147 (2nd Cir. 2002). But the Court only considered whether the offsetting claims arose out of "a single contract"; it dismissed the recoupment defense based solely on its finding that the offsetting claims "arise from different transactions", i.e., the reinvestment of the money back into BLMIS was "a separate transaction" from the initial withdrawal of the money from BLMIS. (Decision at 14). The Court did not consider whether these claims arose out of "a single set of transactions" or "a single integrated transaction[.]" The Court thus did not apply the correct standard in dismissing the recoupment defense.

Accordingly, and for all the reasons set forth in the main moving papers, Defendants respectfully submit that the Court's ruling striking and dismissing the recoupment defense is based on mistakes of law and fact.

12

**POINT FOUR**

**"EXCEPTIONAL CIRCUMSTANCES" EXIST
THAT WARRANT RELIEF UNDER RULE 60(b)**

For all the reasons set forth above and in Defendants' main moving papers, there

are "exceptional circumstances" here that warrant relief under Rule 60(b).  In both the IRA Case

and the Trust Case the Trustee is seeking to recover money that has already been returned to

BLMIS.  As a result of the Court's Order dismissing their affirmative defenses, Defendants are

now facing the unfathomable nightmare of having to disgorge to the Trustee money that they

never actually received and that they had already lost as a result of BLMIS's fraud.

In arguing that there are no "exceptional circumstances" here, the Trustee makes

much of the fact that Defendants have recovered $792,654 through Lakeview.  (Opp. Mem. at

10).  However, this sum represents only approximately 11% of the $7,000,000 that Defendants

reinvested back into BLMIS and lost.  The Trustee is still seeking to recover from Defendants

over $6.2 millions that they have lost, have not recovered, and will never recover from Lakeview,

even though all that money has already been returned to BLMIS.  The fact that Defendants have

recovered a small fraction of their losses from Lakeview does not in any way diminish the

extraordinary unfairness, outrageousness, and unreasonableness of the Trustee's actions.  Nor

should it distract the Court from the fact that the IRA Case and the Trust Case are the only

pending cases in which the Trustee is seeking to recover money that has already been returned to

BLMIS.  These cases are totally unique and exceptional in this regard and even the Trustee does

not dispute that there is no other pending case involving a similar situation.  As discussed above,

in pursuing these cases the Trustee is essentially trying to make Defendants pay for the Trustee's

own mistake in granting the Senator/Broad Market Feeder Funds full credits for the deposits

13

made into their BLMIS accounts in calculating their net equity even though the deposits

consisted primarily of fictitious profits.

      The Trustee argues that recognizing the affirmative defenses at issue would

"diminish[] the recoveries available for valid net loser customers" and "render meaningless the

Bankruptcy Code's fraudulent transfer provisions." (Opp. Mem. at 10). This argument,

however, erroneously "presupposes that the equitable credit diminishes the estate." Dobin v.

Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.), 312 B.R. 262, 272 (Bankr.

D.N.J. 2004). In making this argument "[t]he Trustee forgets . . . that every penny [the

transferee] took out has also been put back in." Id. If granted, the credits sought by Defendants

would only operate to prevent the Trustee from recovering again from Defendants money that has

already been returned to BLMIS. Further, as the Dobin Court recognized, such a credit only

"concerns the Trustee's recovery under Section 550" and does not contravene or conflict with his

avoidance powers under other provisions of the Bankruptcy Code. Id.

      It bears noting again in this connection that, if the BLMIS estate has been

diminished to the detriment of valid net loser customers here, it is only because the Trustee had

erroneously given the feeder funds full credits for the deposits made into their accounts even

though the deposits consisted primarily of fictitious profits. Every dollar that the Trustee

erroneously gave the feeder funds credit for is one dollar less available for distribution to valid

net loser customers.

      Finally, it should be emphasized that this is not a typical litigation between two

ordinary litigants. The Trustee is represented by a large law firm and has unlimited resources.

Defendants, on the other hand, are innocent good faith investors with limited resources who have

been totally devastated by BLMIS's fraud.  Mr. Lustig's life has been totally upended by the

fraud.  The Court's rulings essentially left Defendants defenseless against the Trustee's

manifestly unreasonable and unjust attempts to recover from them money that has already been

returned to BLMIS.  Unless reconsideration is granted, Mr. Lustig will be bankrupted due to

sustaining, in effect, a doubling of his BLMIS losses if the Trustee were to prevail.

Under all these circumstances, Defendants respectfully submit that "exceptional

circumstances" exist that warrant relief under Rule 60(b).

## POINT FIVE

### DISCOVERY SHOULD BE STAYED PENDING
### THE ADJUDICATION OF THIS MOTION

For all the reasons discussed above and in their main moving papers,

Defendants respectfully submit that good cause exists for staying all discovery in the IRA Case

and the Trust Case pending the adjudication of this motion.

Incredibly, the Trustee asserts that the Order "did not affect the Trustee's

fraudulent transfer claims against Defendants."  (Opp. Mem. at 11).  As the Trustee knows full

well, the IRA Case and the Trust Case hinge almost entirely on the affirmative defenses at issue.

Any one of these defenses alone is enough to completely defeat the Trustee's claims.  The

Court's rulings dismissing these defenses essentially left Defendants defenseless against the

Trustee's claims and drastically limited the discovery that may be conducted in both the IRA

Case and the Trust Case.  Because these defenses are critical and the restoration of any of these

defenses pursuant to this motion will material affect the scope of the discovery that remains to be

conducted in these cases, Defendants respectfully submit that good cause exists for staying all

discovery in the IRA Case and the Trust Case pending the adjudication of this motion.

15

## CONCLUSION

For all the reasons set forth above and in Defendants' main moving papers, and especially given the unique and compelling facts presented in these cases, the Court should: (1) grant the instant motion for reconsideration in its entirety; (2) stay discovery pending the adjudication of this motion; and (3) grant such other and further relief as the Court may deem to be just and proper.

Dated:  New York, New York
        July 25, 2017

Respectfully submitted,

LAW OFFICE OF
RICHARD E. SIGNORELLI

By:    /s/ Richard E. Signorelli
       /s/ Bryan Ha

_____
Richard E. Signorelli
Bryan Ha
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com[SM]
www.nycLITIGATOR.com[SM]
Attorneys for Defendants David I. Lustig
and the Lustig Family 1990 Trust

FILING AND SERVICE VIA ELECTRONIC FILING

16