**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Nicholas J. Cremona
Robertson D. Beckerlegge
Elyssa S. Kates

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> JAMES LOWREY, individually and in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the Estate of Marianne Lowey, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al.*, <br><br> Defendants. | Adv. Pro. No. 10-04387 (SMB) |

## TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS....................................................3

ARGUMENT ..........................................................................................................6

I.     SUMMARY JUDGMENT STANDARD.................................................6

II.    THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT
AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY
BLMIS TO DEFENDANTS.......................................................................7

    A.    The Evidence Demonstrates as a Matter of Law That BLMIS
Operated the IA Business as a Ponzi Scheme................................8

        1.    The Parties Do Not Dispute The BLMIS Ponzi Scheme................8

        2.    All Four Factors Of The Ponzi Scheme Test Have Been
Met .......................................................................................9

            a.    Defendants Made Deposits And Withdrawals In
Connection With Their Accounts .......................................9

            b.    The IA Business Did Not Conduct Legitimate
Business Operations Despite Representations to
Defendants ..........................................................................9

            c.    The IA Business Produced No Profits Or Earnings...........11

            d.    Defendants Were Paid From Cash Infused By Other
Customers ..........................................................................12

    B.    The Transfers Were Property of BLMIS and BLMIS Made
Transfers to Defendants During The Two-Year Period............................12

    C.    BLMIS Made Every Transfer With Actual Fraudulent Intent And
In Furtherance Of The Fraud ....................................................13

    D.    As a Matter of Law, a Transferee Can Never Give Value for
Fictitious Profits........................................................................15

        1.    Defendants Did Not Give Value For Fictitious Profits................15

        2.    The Value Defense Has Been Litigated And Rejected At
Least Five Times In This Liquidation Proceeding.......................17

        3.    Defendants' Purported Federal And State Law Claims Or
Obligations Do Not Constitute "Value" Under Section
548(c) ..................................................................................19

**TABLE OF CONTENTS**
**(continued)**

Page

4.   Defendants' Purported Remedies, Adjustments, And Setoffs Under State Or Federal Law Do Not Constitute Value Under Section 548(c)..........................................................22

   a.   Taxes May Not Be Considered As Part Of Setoff Or Value Calculation..................................................................22

   b.   Defendants Are Not Entitled to Time-Value Adjustments .......................................................................23

   c.   Defendants' Lost Opportunities Do Not Constitute Consequential Damages That Create Value ......................25

III.   THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION 550 OF THE BANKRUPTCY CODE AND SIPA § 78fff-2(c)(3).......................26

CONCLUSION......................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................6

*Bayou Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou
    Grp. LLC)*,
    396 B.R. 810 (Bankr. S.D.N.Y. 2008), *rev'd on other grounds*, 439 B.R. 284
    (S.D.N.Y. 2010)........................................................................................10, 14, 26

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp.,
    LLC)*,
    362 B.R. 624 (Bankr. S.D.N.Y. 2007)..............................................................8, 15

*In re Bernard L. Madoff Inv. Sec. LLC*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010)...................................................................25

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011), *cert. denied sub nom.* .......................................20, 25

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................6

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re
    Bayou Grp. LLC*),
    439 B.R. 284 (S.D.N.Y. 2010)................................................................12, 15, 16

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir.), *cert. denied*, 555 U.S. 1047 (2008)................................22

*Fed. Ins. Co. v. Am. Home Assurance Co.*,
    639 F.3d 557 (2d Cir. 2011)....................................................................................6

*Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*,
    No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ...............9, 10, 11, 12

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
    359 B.R. 510 (Bankr. S.D.N.Y.), *aff'd in part, rev'd in part*, 397 B.R. 1
    (S.D.N.Y. 2007)......................................................................................................13

*Lyman Commerce Sols. v. Lung*,
    No. 12 Civ. 04398 (TPG), 2015 WL 4545089 ........................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................................6

*McHale v. Boulder Capital LLC* (*The 1031 Tax Group, LLC*),
   439 B.R. 84 (Bankr. S.D.N.Y 2010) .............................................................................3

*McHale v. Boulder Capital LLC* (*In re The 1031 Tax Grp., LLC*),
   439 B.R. 47 (Bankr. S.D.N.Y. 2010) .............................................................8, 13, 14

*Moran v. Goldfarb*,
   No. 09 Civ. 07667 (RJS), 2012 WL 2930210 (S.D.N.Y. July 16, 2002) ............................3, 12

*Picard v. Chais* (*In re Bernard L. Madoff Inv. Sec., LLC*),
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ........................................................................14

*Picard v. Cohen*,
   2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) .................................... *passim*

*Picard v. Cohen*,
   550 B.R. 241 (Bankr. S.D.N.Y. 2016) ........................................................................17

*Picard v. Cohen*,
   No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24 ........................19

*Picard v. Cohmad Sec. Corp.*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................................14, 16

*Picard v. The Estate (Succession) of Doris Igoin* (*In re Madoff Sec.*),
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...................................................................22, 23

*Picard v. Greiff*,
   476 B.R. 715 (S.D.N.Y. 2012) ........................................................................ *passim*

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011) ...........................................................................2, 7, 14, 16

*Picard v. Katz*,
   No. 11 Civ. 3605 (JSR) 2012 WL 691551 (S.D.N.Y. March 5, 2012) ...................25

*Picard v. Lowrey*,
   No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 17, 2014), ECF No. 5886 ............17

*Picard v. Lowrey*,
   No. 12-CV-02510 (JSR) (S.D.N.Y. April 22, 2012), ECF No. 1 ...........................17

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Picard v. Marilyn Bernfeld Trust,*
    Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015)............................................7

*Picard v. Mendelow,*
    Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015)............................................7

*Schneider v. Barnard,*
    508 B.R. 533 (E.D.N.Y. 2014) ...........................................................................................15

*Scholes v. Lehman,*
    56 F.3d 750 (7th Cir. 1995) ...............................................................................10, 12, 18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*),
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)........................................................................ *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
    499 B.R. 416 (S.D.N.Y. 2013)....................................................................................... *passim*

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
    779 F.3d 74 (2d Cir. 2015)..............................................................................................23, 24

*Silverman v. Cullin* (*In re Agape World, Inc.*),
    633 Fed. App'x. 16 (2d Cir. Feb. 4, 2016)...........................................................................23

*Ying Jing Gan v. City of New York,*
    996 F.2d 522 (2d Cir. 1993).................................................................................................6

**Statutes**

11 U.S.C. § 101 *et seq*............................................................................................................3, 4

11 U.S.C. § 105(a) ......................................................................................................................3

11 U.S.C. § 544 ..........................................................................................................................3

11 U.S.C. § 546(e) ......................................................................................................................4

11 U.S.C. § 547 ..........................................................................................................................3

11 U.S.C. § 548(a) ..................................................................................................................3, 26

11 U.S.C. § 548(a)(1)................................................................................................................13

11 U.S.C. § 548(a)(1)(A) ............................................................................................... *passim*

11 U.S.C. § 548(c) .......................................................................................................... *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

11 U.S.C. § 550 ....................................................................................................................26

11 U.S.C. § 550(a) ...................................................................................................3, 4, 25, 26

11 U.S.C. § 550(a)(1) ...........................................................................................................27

11 U.S.C. § 551 ................................................................................................................3, 4

15 U.S.C. § 78aaa–*lll* ..............................................................................................................1

15 U.S.C. § 78fff-1(a) ...........................................................................................................3

15 U.S.C. § 78fff-2(c)(1)(A)–(D) ........................................................................................26

15 U.S.C. § 78fff-2(c)(3) ..............................................................................................*passim*

15 U.S.C. § 78fff(b) .............................................................................................................3

**Rules**

Fed. R. Bankr. P. 7056 ......................................................................................................1, 6

Fed. R. Bankr. P. 7056-1 ......................................................................................................1

Fed. R. Civ. P. 56 ................................................................................................................1

Fed. R. Civ. P. 56(a) ...........................................................................................................6

Fed. R. Civ. P. 56(c)(1) .......................................................................................................6

Fed. R. Evid. 201 .............................................................................................................10

Fed. R. Evid. 803(22) .......................................................................................................10

Irving H. Picard (the "Trustee"), trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of the Trustee's motion for summary judgment (the "Motion"), pursuant to the Stipulation for Entry of Scheduling Order so ordered by this Court on January 26, 2017 (ECF No. 71) and Rule 56 of the Federal Rules of Civil Procedure (made applicable to this proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")) and Southern District of New York Local Bankruptcy Rule 7056-1, on Count Two of the Trustee's amended complaint to avoid and recover as fraudulent transfers the amounts BLMIS fraudulently transferred to defendants James Lowrey, the Estate of Marianne Lowrey, Turtle Cay Partners, and Coldbrook Associates Partnership ("Defendants") in the above-captioned action (the "Avoidance Action").  The facts underlying the Motion are set forth in the Joint Statement of Undisputed Material Facts (the "Joint Statement")[1] submitted by the Trustee and Defendants (together, the "Parties"), and so ordered by this Court on June 27, 2017 (ECF No. 75).

## PRELIMINARY STATEMENT

While thousands of BLMIS's investment advisory customers lost billions of dollars of principal they invested with Madoff, other customers, such as Defendants, benefitted from the receipt of fictitious "profits" from Madoff's scheme—"profits" that in fact consisted of other customers' deposits.  Defendants can assert no rights to these fictitious profits and summary judgment should thus be granted to return these amounts to the estate for distribution to those customers with valid claims.

---

[1] A true and correct copy of the Joint Statement is attached as <u>Exhibit A</u> to the Declaration of Keith R. Murphy, dated August 11, 2017 (the "Murphy Declaration"), filed contemporaneously herewith.

Defendants are recipients of transfers of fictitious profits within two years of December 11, 2008. Defendants admit that BLMIS transferred $9,520,673 to Defendants - (1) Turtle Cay Partners withdrew $7,845,089, (2) Coldbrook Associates Partnership withdrew $1,093,402, and (3) James Lowrey and/or the late Marianne Lowrey withdrew $582,182—in excess of Defendants' deposits to their BLMIS customer accounts (collectively, the "Transfers") (Joint Statement ¶¶ 22, 23, 30, 31, 38 & 39).

Defendants also agree that BLMIS made these transfers "with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors" (Joint Statement ¶ 44). Defendants have stipulated that "BLMIS was operating a Ponzi scheme" at all times relevant to the Avoidance Action and that the investment advisory business (the "IA Business") in which they were invested, "did not actually trade securities for customers and did not generate any legitimate profits for customer accounts" (Joint Statement ¶¶ 10, 13). Defendants therefore do not dispute that the Trustee has satisfied his burden of proof on his *prima facie* case. This is consistent with prior holdings in these proceedings. For example, the District Court recognized, "[s]ince it is undisputed that Madoff's Ponzi scheme began more than two years before the filing of the bankruptcy petition and continued to almost the very day of filing, it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.,* those left holding the bag when the scheme was uncovered." *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011).

Accordingly, Defendants could only avoid liability for the Transfers if they could demonstrate they possess a valid defense thereto. However, they lack any factual or legal basis to do so. In particular, Defendants cannot assert that they took the transfers "for value" because there are no facts in the record supporting any such contention. Similarly, Defendants cannot, as

2

a matter of law, establish that they took the transfers of fictitious profits "for value" because courts have repeatedly held in these proceedings that such false profits were not on account of a valid antecedent debt. *See* Post-Trial Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016), ECF No. 90 (the "*Cohen Decision*"), *adopted,* No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24 (Memorandum Order Adopting Proposed Findings of Fact and Conclusions of Law).

Given there are no material factual issues in dispute regarding the Transfers, this Court should grant summary judgment.[2]

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Trustee commenced the Avoidance Action by filing the complaint on November 30, 2010 (ECF No. 1). The Trustee filed an amended complaint (the "Complaint") on January 9, 2012 (ECF No. 18). The Complaint asserted claims pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 547, 548(a), 550(a), and 551 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), and other applicable law, seeking the avoidance and recovery of preferential and fraudulent transfers, and avoidance of fraudulent obligations in connection with certain transfers of property by BLMIS to or for the benefit of the Defendants. *Id.*

---

[2] The Trustee is additionally entitled to prejudgment interest on the Transfers, and in the event the Motion is granted, reserves his right to request a post-judgment hearing before this Court to determine the appropriate rate to apply to the calculation of such interest. *See, e.g., Lyman Commerce Sols. v. Lung*, No. 12 Civ. 04398 (TPG), 2015 WL 4545089, *4 (S.D.N.Y. July 16, 2015 (awarding prejudgment interest on avoided fraudulent transfer); *Moran v. Goldfarb*, No. 09 Civ. 07667 (RJS), 2012 WL 2930210 (S.D.N.Y. July 16, 2002) (same); *McHale v. Boulder Capital LLC*, (*The 1031 Tax Group, LLC*), 439 B.R. 84, 87 (Bankr. S.D.N.Y 2010) (same).

On June 22, 2015, the Supreme Court of the United States denied *certiorari* of the Trustee's appeal of *SIPC v. Ida Fishman Revocable Trust*, No. 14-1128 and *Picard v. Ida Fishman Revocable Trust*, No. 14-1129 (the "546(e) Decision"), making section 546(e) of the Bankruptcy Code applicable to this Avoidance Action. Counts One, and Three through Eight of the Complaint were subsequently dismissed pursuant to a "Stipulation and Order" (the "Transfer Stipulation") entered on February 24, 2016 (ECF No. 61). As a result, the Trustee's sole remaining claims against the Defendants in the Avoidance Action relate to Count Two, seeking avoidance and recovery of the Transfers pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA.

In their answer to the Complaint (the "Answer"), Defendants admitted that they maintained IA Business accounts 1CM585, 1CM832 and 1CM880 (the "Accounts") at BLMIS.[3] *See* Answer at ¶ 46 (ECF No. 43). The Defendants also admitted in the Transfer Stipulation that the Trustee's Exhibit B to the Complaint, which sets forth in detail all of the transactions in the Accounts, showing all deposits into and withdrawals therefrom, accurately reflects the complete history of the transactions in the BLMIS Accounts (ECF No. 61). The Transfer Stipulation significantly reduced the need for discovery in the Avoidance Action because the Defendants admitted to the Transfers.

In addition, in connection with this Motion, the Parties further entered into and submitted the Joint Statement, which references, incorporates, and attaches the Transfer Stipulation. As stated in the Joint Statement, the undisputed facts include the following:

- BLMIS was operating a Ponzi scheme;

---

[3] Turtle Cay Partners maintained BLMIS account number 1CM585, James Lowrey and Marianne Lowrey maintained BLMIS account number 1CM832 and Coldbrook Associates Partnership maintained BLMIS account number 1CM880.

- BLMIS was insolvent from at least December 11, 2002 and all points after;

- BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers;

- The IA Business did not actually trade securities for customers and did not generate any legitimate profits for customer accounts;

- The IA Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the IA Business customer withdrawals;

- The IA Business did not receive any legitimate outside financial support from loans or otherwise;

- BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients;

- Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the relevant accounts and Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the relevant accounts;

- Column 10 of Exhibit B to the Complaint accurately reflects the amounts the Defendants withdrew between December 11, 2006 and December 11, 2008 (the "Two-Year Period") in excess of deposits; and

- The Defendants received the withdrawals made during the Two-Year Period.

(Joint Statement at ¶¶ 10-16, 20, 22, 28, 30, 36 & 38).

In light of the Joint Statement, there is no dispute that BLMIS was operating a Ponzi scheme at all relevant times and that the Defendants received transfers of other people's money as part of that scheme.  As a result, the Trustee's Motion should be granted.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure (made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure) provides that summary judgment must be granted, in whole or in part, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Factual positions are proven by either citing the record evidence—including declarations, admissions and interrogatory answers—or showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Indeed, the movant need not show the absence of a genuine dispute of material fact with respect to a point "on which the nonmoving party bears the burden of proof." *Celotex Corp.*, 477 U.S. at 325.

When the movant has discharged its burden, the non-movant must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-movant fails to come forward with specific, probative facts showing that there is a genuine dispute of fact for trial, summary judgment is appropriate. *Matsushita*, 475 U.S. at 586-87; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) ("[T]he nonmoving party may . . . not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible").

Here, the Parties entered into the Joint Statement, there is no genuine dispute as to any material fact with respect to the fictitious profits sought in Count Two of the Complaint nor any defenses thereto, and summary judgment is appropriate.

## II.  THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY BLMIS TO DEFENDANTS

As this Court has recognized, fictitious profits cases "are strict liability cases unless the law changes." Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015); *see also* Tr. of Oral Argument at 100:19, *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) (fictitious profit count is "almost a strict liability count").[4] This is especially true here, where, by operation of the Joint Statement, there is no dispute as to the amount and receipt of the Transfers during the Two-Year Period or that those Transfers were made as a part of a Ponzi scheme.

Section 548(a)(1)(A) of the Bankruptcy Code authorizes the Trustee to avoid the entire amount of "any payment" of an interest in property of the debtor made within two years of December 11, 2008 (the "Filing Date") with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A); *Picard v. Greiff*, 476 B.R. 715, 722 (S.D.N.Y. 2012). There is no genuine dispute regarding BLMIS's: (1) operation as a Ponzi scheme, meaning the actual intent to hinder, delay, or defraud its creditors in making the transfers to Defendants is presumed and (2) transfer to and receipt by Defendants of the fictitious profits within the Two-Year Period. (Joint Statement ¶¶ 10, 22, 30 & 38). *See also Katz,* 462 B.R. at 453 (finding that "all of Madoff

---

[4] True and correct copies of relevant sections of the court hearing transcripts in *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), and *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), are attached as <u>Exhibit B</u> and <u>Exhibit C</u> respectively to the Murphy Declaration.

Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.,* those left holding the bag when the scheme was uncovered").

As a result, the Trustee is entitled to avoid all Transfers made to the Defendants within the Two-Year Period unless they can demonstrate that they received the Transfers "in good faith" <u>and</u> "for value." *Cohen Decision,* 2016 WL 1695296, at \*5 (citing 11 U.S.C. § 548(c)); *see also McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 68 (Bankr. S.D.N.Y. 2010) ("Summary judgment is appropriate if the Trustee offers evidence satisfying [the] elements" of a "section 548(a)(1)(A) fraudulent conveyance action."); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2007) ("*Bayou I*") (same)).

Here, all of the relevant facts are admitted, and thus, there is no issue of disputed material fact for a fact finder to determine. In addition, because there are no facts in the record supporting any statutory defense to the Trustee's claims, summary judgment in favor of the Trustee is proper.

## A.   The Evidence Demonstrates as a Matter of Law That BLMIS Operated the IA Business as a Ponzi Scheme

### 1.   <u>The Parties Do Not Dispute The BLMIS Ponzi Scheme</u>

There is no genuine dispute between the Parties that BLMIS was, at all times relevant to the Avoidance Action, engaged in a Ponzi scheme. Indeed, pursuant to the Joint Statement, Defendants explicitly concede that BLMIS was "operating a Ponzi scheme," and "was insolvent from at least December 11, 2002 and all points after" (Joint Statement ¶¶ 10-11). Defendants admit that BLMIS's IA Business did not generate "any legitimate profits," having to use "commingled customer monies" in order to fund its operations and "fund the withdrawal of fictitious profits and principal for other customers" (Joint Statement ¶ 12). In fact, any deposits

made to BLMIS were received "with the intent to not apply such funds to the purchase of securities for the accounts of its clients" (Joint Statement ¶ 16). Defendants further admit that the IA Business "did not actually trade securities for customers" and "did not receive legitimate financial support from the other business units of BLMIS" or "legitimate outside financial support from loans" in amounts sufficient to satisfy the cash requirement needs of the IA Business customer withdrawals (Joint Statement ¶¶ 13-15). The Joint Statement establishes for purposes of this Motion that BLMIS operated the IA Business as a Ponzi scheme.

## 2.    All Four Factors Of The Ponzi Scheme Test Have Been Met

There can be no genuine dispute that standards for establishing the existence of such a scheme have been met here. In *Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*, No. 08-15051 (SMB), 2014 WL 47774, at \*22 (Bankr. S.D.N.Y. Jan. 3, 2014), this Court recognized a four-factor test for the existence of a Ponzi scheme: (i) deposits were made by investors; (ii) the debtor conducted little or no legitimate business operations as represented to investors; (iii) the purported business operation of the debtor produced little or no profits or earnings; and (iv) the source of payments to investors was from cash infused by new investors. Each of these *Gowan* factors has been conclusively established by the Trustee here.

### a.    Defendants Made Deposits And Withdrawals In Connection With Their Accounts

First, Defendants admit to establishing BLMIS Accounts. As customers of the IA Business, Defendants admittedly made deposits and withdrawals in connection with their Accounts (Joint Statement ¶¶ 20, 28 & 36). The first *Gowan* factor has been satisfied.

### b.    The IA Business Did Not Conduct Legitimate Business Operations Despite Representations to Defendants

Second, Defendants admit that despite Madoff's representations otherwise, the IA Business was not a legitimate business operation, but rather a Ponzi scheme by which BLMIS

"utilized commingled customer monies to fund its operations. . .[and] the withdrawals of fictitious profits and principal for other customers" (Joint Statement ¶¶ 10-12). Defendants also admit the IA Business "did not actually trade securities for customers and did not generate any legitimate profits for customer accounts" (Joint Statement ¶ 13). The Joint Statements, standing alone, sufficiently meet the second *Gowan* factor.

That said, the Trustee is also entitled to rely on the plea allocutions of Madoff, as well as BLMIS employees Frank DiPascali and David Kugel, all of which similarly establish that BLMIS did not conduct legitimate operations from the IA Business.[5] Indeed, this Court previously stated that "a transferor's admissions made during a guilty plea or allocution are admissible to prove that the transferor engaged in a Ponzi scheme. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*), 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (citing *In re Dreier LLP,* 2014 WL 47774, at *11); *see also Bayou Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou Grp. LLC)*, 396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008) ("*Bayou III*"), *rev'd on other grounds*, 439 B.R. 284 (S.D.N.Y. 2010) ("Courts have consistently found that criminal proceeding admissions of a fraudulent scheme to defraud investors made in guilty pleas and plea allocutions are admissible as evidence of 'actual intent' to defraud creditors."); *Scholes v. Lehman*, 56 F.3d 750, 762 (7th Cir. 1995) (facts underlying plea agreement, admitting charges of fraud, established existence of Ponzi scheme, were admissible under Fed. R. Evid. 803(22), and were proper subject of judicial notice under Fed. R. Evid. 201).

---

[5] *See* Plea Allocution of Bernard L. Madoff, *United States v. Madoff,* No. 09 Cr. 00213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff Allocution"), ECF No. 143-1; Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (the "DiPascali Allocution"), ECF No. 143-2; Plea Allocution of David L. Kugel, *United States v. Kugel*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011) (the "Kugel Allocution"), ECF No. 143-3.

Madoff admitted during his allocution that "for many years up until my arrest on December 11, 2008, I operated a Ponzi scheme through the investment advisory side of my business, Bernard L. Madoff Securities LLC."  Madoff Allocution, at 23:14-17.  He admitted that he falsely represented to investors that he would "invest their money in shares of common stock, options, and other securities of large well-known corporations" but "never invested these funds in the securities as…promised."  *Id.* at 24:9-17.  Instead, he deposited the investors' funds in a "bank account at Chase Manhattan Bank" and "[w]hen clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds."  *Id.* at 24:18–22.  These statements are consistent with those made by other employees.  DiPascali Allocution, at 47:5-7  ("Most of the time the clients' money just simply went into a bank account in New York that Bernie Madoff controlled."); and Kugel Allocution, at 32:4-12 ("Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. . .that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred").[6]

As a result, the Trustee has conclusively established the second *Gowan* factor.

### c.  The IA Business Produced No Profits Or Earnings

Third, Defendants admit the IA Business "did not generate any legitimate profits for customer accounts."  (Joint Statement ¶ 13).  Defendants also admit the IA Business (ii) "did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer

---

[6] True and correct copies of the Madoff Allocution, DiPascali Allocution, and Kugel Allocution are attached as Exhibit E, Exhibit F, and Exhibit G respectively to the Murphy Declaration.

withdrawals;" and it (iii) "did not receive any legitimate outside financial support from loans or otherwise" (Joint Statement ¶¶ 14-15). In addition, based on the allocutions cited above, there were no actual securities traded—or any legitimate business operations whatsoever—in the IA Business, thus no real profits or earnings. The third *Gowan* factor has been met.

### d. Defendants Were Paid From Cash Infused By Other Customers

Finally, the fourth *Gowan* factor is satisfied as Defendants admit that investors were paid from infusions of cash from new investors, stipulating that "BLMIS utilized commingled customer monies…to fund the withdrawal of fictitious profits and principal for other customers" (Joint Statement ¶ 12).

Therefore, each Defendant was invested with the IA Business, which was a Ponzi scheme at all relevant times. *See e.g.*, *Moran v. Goldfarb*, No. 09 Civ. 7667(RJS), 2012 WL 2930210, at *4 (S.D.N.Y. July 16, 2012) (granting summary judgment in plaintiff's favor on recouping fictitious profits from a Ponzi scheme based on the guilty plea of an investment advisor who "admit[ted] under oath to running a Ponzi scheme from 1998 through 2008."); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Grp. LLC*), 439 B.R. 284, 305, 307-08 (S.D.N.Y. 2010) ("*Bayou IV*") (same, based on testimony of debtor's forensic accountant and guilty pleas of fraudsters); *Scholes v. Lehman*, 56 F.3d 750, 762-63 (7th Cir. 1995) (affirming district court's reliance on the perpetrator's guilty plea by which he admitted all money transferred to him, came directly or indirectly from the defrauded creditors of the perpetrator's corporations).

### B. The Transfers Were Property of BLMIS and BLMIS Made Transfers to Defendants During The Two-Year Period

For purposes of avoidance and recovery, BLMIS is deemed under SIPA to have an interest in transferred property. *See* 15 U.S.C. § 78fff-2(c)(3) (that for recovery purposes,

"property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding."); *Cohen Decision,* 2016 WL 1695296, at *5 ("BLMIS transferred customer property to [defendant], and under SIPA § 78fff-2(c)(3) such property is 'deemed to have been property of the debtor'"); *In re The 1031 Tax Grp., LLC,* 439 B.R. at 58, 70 (finding that, in a Ponzi scheme, money reflected in bank account statements "in the name of a debtor is presumed to be property of the bankruptcy estate" for purposes of 11 U.S.C. § 548(a)(1)).

The uncontroverted evidence shows that BLMIS transferred, and Defendants received, fictitious profits between December 11, 2006 and December 11, 2008 (Joint Statement ¶¶ 22, 30 & 38). Defendants specifically admit that Exhibit B to each of the Trustee's complaints "accurately reflect the complete history of the transactions" affecting their BLMIS accounts, and "accurately reflects the deposits made into the[ir] [a]ccount[s] . . .[and] withdrawals from the[ir] [a]ccounts." (Joint Statement ¶¶ 18, 20, 26, 28, 34 & 36).

### C. BLMIS Made Every Transfer With Actual Fraudulent Intent And In Furtherance Of The Fraud

BLMIS's transfers to Defendants were in furtherance of the fraud. Defendants explicitly admit that BLMIS received every deposit [from its customers] "with the intent to not apply such funds to the purchase of securities for the accounts of its clients" (Joint Statement ¶ 16). Defendants also admit that "BLMIS transferred the funds withdrawn by the Lowrey Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors" (Joint Statement ¶ 44). Indeed, "[e]very payment made by the debtor to keep the scheme on-going was made with the actual intent to hinder, delay or defraud creditors, primarily the new investors." *Gredd v. Bear, Stearns Sec. Corp. (In re*

*Manhattan Inv. Fund Ltd.)*, 359 B.R. 510 (Bankr. S.D.N.Y.), *aff'd in part, rev'd in part*, 397

B.R. 1 (S.D.N.Y. 2007) (internal citation omitted).  Every redemption payment "*in and of itself*

constituted an intentional misrepresentation of fact" of the investor's rights to their falsely

inflated account statement and "an integral and essential part" of the fraud.  *Bayou III,* 396 B.R.

at 843 (emphasis in original).  The transfers to Defendants, like the payments made to customers

in any Ponzi scheme, were an integral and essential part of BLMIS's fraudulent scheme.

Because BLMIS was a Ponzi scheme, as a matter of law, BLMIS intended to defraud its

creditors with every transfer.  *See, e.g., Cohen Decision* , 2016 WL 1695296, at *5 ("the Trustee

is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to

have been made with actual fraudulent intent") (citing *Omnibus Good Faith Decision,* 531 B.R.

at 471); *see also Picard v. Cohmad Sec. Corp.,* 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011)

("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law

by virtue of the 'Ponzi scheme presumption'"); *In re The 1031 Tax Grp.*, 439 B.R. at 72 ("If the

Ponzi scheme presumption applies, actual intent for purposes of section 548(a)(1)(A) is

established as a matter of law.") (internal quotation omitted).

This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave

no basis for disputing the application of the Ponzi scheme presumption. . ."  *Picard v. Chais (In*

*re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 220 (Bankr. S.D.N.Y. 2011); *see also Katz*,

462 B.R. at 453 ("it is patent that all of Madoff Securities' transfers during the two-year period

were made with actual intent to defraud present and future creditors").  The transfers of fictitious

profits made by BLMIS to or for the benefit of Defendants, therefore, are presumed to have been

made with actual fraudulent intent and are recoverable by the Trustee.

Thus, there is no dispute that BLMIS made all transfers to Defendants and other customers and creditors with the actual intent to defraud required to support a fraudulent transfer claim under section 548(a)(1)(A) of the Bankruptcy Code.

**D.      As a Matter of Law, a Transferee Can Never Give Value for Fictitious Profits**

Having established that BLMIS transferred $9,520,673 in fictitious profits within the Two-Year Period to Defendants with actual fraudulent intent, as a matter of law, the Trustee is entitled to avoid and recover such transfers (Joint Statement ¶ 45). Defendants have no viable defenses to these claims.

**1.      Defendants Did Not Give Value For Fictitious Profits**

To defeat the avoidance of a transfer on summary judgment, Defendants must offer evidence sufficient to create a material issue of fact as to whether they took (1) "for value . . . to the extent that [they] gave value to the debtor in exchange for such transfer" and (2) "in good faith." *Bayou IV*, 439 B.R. at 308 (citing 11 U.S.C. § 548(c)) (placing burden of proving affirmative defense on transferee in trustee's motion for summary judgment); *Schneider v. Barnard*, 508 B.R. 533, 551 (E.D.N.Y. 2014) ("Because Bankruptcy Code § 548(c) is an affirmative defense, the transferee bears the burden of establishing all elements of the…defense."); *Bayou I*, 362 B.R. at 631 ("The good faith/value defense provided in Section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense"). Defendants cannot satisfy the "for value" requirement here.

The Parties stipulated that Defendants made each of their withdrawals "in good faith, believing that they were entitled to these funds and lacking any knowledge of the Ponzi scheme" (Joint Statement ¶ 43). Yet, fictitious profits "may [still] be recovered regardless of the customers' good faith," because "transfers made by Madoff Securities to its customers in excess

of the customers' principal—that is, the customers' profits—. . . were in excess of the extent to which the customers gave value." *Katz*, 462 B.R. at 453 (internal quotations omitted); *see also Greiff*, 476 B.R. at 722-24; *Cohen Decision*, 2016 WL 1695296, at *5.

Defendants cannot establish that they took the transfers of fictitious profits "for value" because such false profits were not on account of a valid antecedent debt. There is no dispute that Defendants received fictitious profits or "withdrew . . .in excess of deposits" from their BLMIS accounts with the IA Business, which Defendants admit "did not actually trade securities for customers and did not generate any legitimate profits for customer accounts" (Joint Statement ¶¶ 22, 30, 38 & 13).

As a matter of law, it is universally accepted that when investors invest in a Ponzi scheme, "any payments that they receive in excess of their principal investments can be avoided by the Trustee as fraudulent transfers." *Cohmad*, 454 B.R. at 333; *see also Cohen Decision*, 2016 WL 1695296, at *11 ("Net winners cannot argue that the payment of fictitious profits satisfied an antecedent debt or obligation and provided value within the meaning of Bankruptcy Code § 548(c)"). In fact, "virtually every court to address the question has held *unflinchingly* that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers." *Bayou IV*, 439 B.R. at 337 (emphasis added) (internal quotations omitted); *see also Greiff*, 476 B.R. at 725 ("It is not surprising…every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme are not 'for value'"). Indeed, this Court recently reiterated that the value "issue's been litigated" before; "[i]n every Ponzi scheme case that [this Court has] seen, SIPA and non-SIPA, fictitious profits are just not valued." Tr. of Hearing at 41:25-42:7, *Picard v. Trust u/art*

*Fourth o/w/o Israel Wilenitz, et al.,* Adv. Pro. No. 10-04995 (SMB) (Bankr. S.D.N.Y. May 17, 2016).[7]

### 2.   The Value Defense Has Been Litigated And Rejected At Least Five Times In This Liquidation Proceeding

Importantly, "[t]his issue has been litigated and expressly or impliedly rejected" in at least five previous decisions issued in this liquidation proceeding. *Cohen Decision,* 2016 WL 1695296, at *5. Indeed, this Court earlier observed that defendants in this liquidation proceeding "have had several opportunities to present their antecedent debt/value arguments, those arguments have been rejected, and hearing them again will not add value to the disposition of the antecedent debt/value defense in this Court." *Picard v. Cohen*, 550 B.R. 241, 255 (Bankr. S.D.N.Y. 2016) (denying motion to intervene in the *Cohen* proceeding on the antecedent debt/value issue); *see also Omnibus Good Faith Decision,* 531 B.R. at 465 (noting that the District Court's extensive consideration of the antecedent debt/value issue "would normally foreclose further argument in this Court" because defendants "have had their day in court and Judge Rakoff's decisions are law of the case").[8]

In this liquidation proceeding, the District Court first addressed the value issue in *Greiff* in which defendants in four adversary proceedings—who had withdrawn more money than they deposited with BLMIS—moved to dismiss the Trustee's claims to avoid transfers of fictitious

---

[7] A true and correct copy of the court hearing transcript in *Picard v. Trust u/art Fourth o/w/o Israel Wilenitz, et al.,* Adv. Pro. No. 10-04995 (SMB) (Bankr. S.D.N.Y. May 17, 2016), is attached as <u>Exhibit D</u> to the Murphy Declaration.

[8] Defendants were subject to the *Antecedent Debt Decision*, as they moved to withdraw the reference to the Bankruptcy Court to determine "[w]hether the Trustee can avoid transfers BLMIS made in order to satisfy antecedent debts." *See* Memorandum of Law in Support of Motion to Withdraw the Reference to the Bankruptcy Judge. *Picard v. Lowrey*, No. 12-CV-02510 (JSR) (S.D.N.Y. April 22, 2012), ECF No. 1. Defendants also participated by intervention in the briefings for the *Omnibus Good Faith Decision. See,* Memorandum of Law in Support of Motion to Intervene and Be Heard on the Issue of the Trustee's Standing to Recover Customer Property, *Picard v. Lowrey*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 17, 2014), ECF No. 5886.

profits under section 548(a)(1)(A).  *Greiff*, 476 B.R. at 718.   The District Court ruled that

transfers from BLMIS to defendants that "exceeded the return of defendants' principal, *i.e.*, that

constituted profits, were not 'for value.'"  *Id.* at 725.   According to the District Court, "the

transfers must be assessed on the basis of what they really were; and they really were artificial

transfers designed to further the fraud, rather than any true return on investments."  *Id.*

The District Court revisited the value issue in a decision that disposed, in part, of motions

to dismiss in approximately 300 adversary proceedings.  *Sec. Investor Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*), 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt

Decision*").   Citing *Greiff*, the District Court again held that even if defendants held valid claims

under federal or state law, those claims did not provide value under SIPA against the separate

BLMIS customer property estate.  *Id.* at 423 (citing *Greiff*, 476 B.R. at 727-28); *see also id.* at

422 n.6.

After the District Court returned the adversary proceedings to the Bankruptcy Court for

further proceedings consistent with the *Antecedent Debt Decision*, the Bankruptcy Court

revisited the value issue in deciding omnibus motions to dismiss brought by defendants in nearly

250 adversary proceedings.  *Omnibus Good Faith Decision*, 531 B.R. 439.   The Bankruptcy

Court denied defendants' motions, concluding that the District Court's prior rulings in *Greiff* and

the *Antecedent Debt Decision* were "consistent with the well-settled rule in Ponzi scheme cases

that net winners must disgorge their winnings."   *Id*. at 462-63 (collecting cases).    The

Bankruptcy Court explained that "the rationale for the rule is that the Ponzi scheme participant

does not provide any value to the debtor in exchange for the fictitious profits it receives."  *Id.* at

463 (citing *Scholes,* 56 F.3d at 757 ("The paying out of profits to [the Ponzi scheme investor] not

offset by further investments by him conferred no benefit on the [entities involved in the Ponzi scheme] but merely depleted their resources faster") (modifications in original)).

Finally, in the *Cohen Decision,* this Court concluded in its Post-Trial Proposed Findings of Fact and Conclusions of Law that defendants, as a matter of law, equally cannot establish that they took the transfers of fictitious profits "for value" because such false profits were not on account of a valid antecedent debt.  2016 WL 1695296, at *5.  This Court made clear that in "SIPA Ponzi scheme cases involving fraudulent transfer litigation, [n]et winners cannot argue that the payment of fictitious profits satisfied an antecedent debt or obligation and provided value within the meaning of Bankruptcy Code § 548(c)." *Id.* at *11.  Given that "SIPA creates two estates and grants net losers—those with net equity claims—a priority in the customer property estate," if the Court were to "permit[ ] a net winner to offset a non-net equity claim against the trustee's claim for the return of customer property," it would "effectively allow[ ] the net winner to recover his non-SIPA claim from customer property at the expense of the net losers in violation of SIPA's priority rules." *Id.*  The District Court reviewed *de novo* the lower court submissions and "for substantially the reasons set forth in the well-reasoned and thorough decision of the Bankruptcy Court … adopt[ed] the Bankruptcy Court's Post-Trial Proposed Findings of Fact and Conclusions of Law in their entirety." Memorandum Order Adopting Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen*, No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24.

As a result, Defendants did not provide BLMIS with value for the fictitious profits.

### 3.    Defendants' Purported Federal And State Law Claims Or Obligations Do Not Constitute "Value" Under Section 548(c)

In their Answer, Defendants assert the fictitious profits they received from the Ponzi scheme were "in payment of an antecedent debt, in whole or in part, on account of obligations

owed by Madoff Securities," including purported "damages and interest for fraud and misrepresentation pursuant to federal and state law." (Answer at p. 26). Consequently, Defendants assert the fictitious profits they received were "for value" under section 548(c). (Answer at p. 24). Since the District Court first decided *Greiff* on April 30, 2012, net winners like Defendants have continued to press this same line of argument, but it is even less persuasive now than it was when the District Court first rejected it.

As the District Court held in *Greiff*, "even if the defendants had enforceable claims," under federal or state law, "a conclusion that satisfaction of those claims gave 'value' to [BLMIS] would conflict with SIPA." 476 B.R. at 727*; see also Antecedent Debt Decision*, 499 B.R. at 422 n.6 (holding federal and state law claims "cannot provide value as against the [BLMIS] customer property estate under SIPA"); *Omnibus Good Faith Decision*, 531 B.R. at 476 n.26. This is because SIPA "prioritizes net equity claims over general creditor claims." *Greiff*, 476 B.R. at 727. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233 (2d Cir. 2011), *cert. denied sub nom.* ("*Second Circuit Net Equity Decision*") ("In a SIPA liquidation, a fund of 'customer property,' separate from the general estate of the failed broker-dealer, is established for priority distribution exclusively among customers").

And to allow customers like Defendants, who have no net equity claims, to retain fictitious profits of customer property on the ground that these profits satisfied their purported claims, would deplete the customer fund available for distribution according to customers' "net equities." *Greiff,* 476 B.R. at 728; *see also Omnibus Good Faith Decision*, 531 B.R. at 466. Indeed, this Court recently reiterated, "[e]very offset against the trustee's avoidance claim based on a non-SIPA claim under state or federal law diminishes the SIPA trustee's recovery." *Cohen Decision,* 2016 WL 1695296, at *13. "Neither bankruptcy law nor state law require the Court to

disregard SIPA in this fashion." *Greiff*, 476 B.R. at 728.  As a result, to the extent that Defendants have valid federal or state law claims and payment on those claims theoretically could discharge an antecedent debt, "that debt runs against [the BLMIS] general estate, not the customer property estate, and therefore cannot be the basis of the retention of customer property under section 548(c)." *Antecedent Debt Decision*, 499 B.R. at 424.

Notwithstanding the numerous prior rulings, Defendants continue to press this same argument, albeit now repackaged as "obligations" owed by BLMIS.  In the Joint Statement, the Parties stipulate that (i) Defendants "reasonably relied on the representations in the Account Agreements and account statements" and that (ii) "BLMIS did not comply with its obligations under the Account Agreements" (Joint Statement ¶¶ 52-53).  However, any argument that Defendants' receipt of the fictitious profits were "for value" against purported contractual and brokerage obligations pursuant to their "Account Agreements and account statements," falls flat on its face.  (*Id.*).  As this Court clearly stated, "the argument that payment in satisfaction of an unavoided obligation provides value misses the point.  An obligation may be valid, but payments in excess of principal are avoidable and recoverable (in all Ponzi scheme cases) and violate the priority rules of SIPA (in SIPA Ponzi scheme cases)."  *Cohen Decision,* 2016 WL 1695296, at *12 n.17; *see also Antecedent Debt Decision,* 499 B.R. at 421, n.4 ("[T]he Court rejects defendants' contention that Madoff Securities' pre-reach-back-period account statements constitute binding obligations of Madoff Securities to its customers that the Trustee must avoid.") (citing *Greiff* , 476 B.R. 724-725).

Thus, Defendants' purported federal and state law claims against BLMIS—whether phrased as an "obligation" owed by BLMIS or otherwise—simply do not create any antecedent debts or provide value under section 548(c) for the fictitious profits retained by Defendants.

### 4.    Defendants' Purported Remedies, Adjustments, And Setoffs Under State Or Federal Law Do Not Constitute Value Under Section 548(c)

Defendants raise other affirmative defenses that concern remedies, adjustments, and setoffs they claim they are entitled to under federal or state law.  Specifically, Defendants assert that they are entitled to retain the amount of taxes paid on transfers received from BLMIS (Answer at p. 26), and adjustments for the time-value of money invested with BLMIS, (Answer at p. 26), and "mandatory withdrawals from IRA accounts" (*Id.*).  Defendants also assert that they have "lost opportunity costs during the period that BLMIS held their funds" (Joint Statement ¶ 57).  For the reasons previously stated by the Bankruptcy Court, the District Court, and the Second Circuit, Defendants are entitled to none of the above.

### a.    Taxes May Not Be Considered As Part Of Setoff Or Value Calculation

The Defendants argue they are entitled to a "setoff or other equitable adjustment" to the extent their fraudulent transfers were "used to pay tax obligations. . . to governmental taxing authorities" (Answer at p. 26).  This Court already has rejected this argument in the *Cohen Decision*, holding that a defense for taxes paid on profits would be inconsistent with the approved manner for calculating net equity.  2016 WL 1695296, at *15.  This Court explained that "the offset would introduce complex problems of proof and tracing and reduce the [Trustee's] ability to recover assets" and would only "come at the expense of the other victims." *Id.* (citing *Donell v. Kowell,* 533 F.3d 762 (9th Cir.), *cert. denied,* 555 U.S. 1047 (2008)); *see also Picard v. The Estate (Succession) of Doris Igoin* (*In re Madoff Sec.*), 525 B.R. 871, 893 (Bankr. S.D.N.Y. 2015) ("[T]he withdrawal of the money to pay taxes … is not a defense to the fraudulent transfer claims").

The Defendants are "in the same position as many other Madoff victims who paid taxes on fictitious profits, and then were sued by the Trustee as net winners," and they are not entitled,

as a matter of law, to any offsets for any taxes paid on transfers from BLMIS.  *Igoin*, 525 B.R. at 885 n.16.

### b.    Defendants Are Not Entitled to Time-Value Adjustments

Defendants' affirmative defense seeking "setoff or other equitable adjustments" for the time-value of money has already been rejected by this Court, the District Court, and the Second Circuit (Answer at p. 26).

In the *Cohen Decision,* this Court ruled that allowing defendants to "adjust [their] principal deposits by an inflation, interest or some other time-value factor would disregard the well-settled rule[ ] that govern Ponzi scheme litigation," that "a transferee must return transfers in excess of his principal deposits."  2016 WL 1695296, at *14; *see also Silverman v. Cullin* (*In re Agape World, Inc.*), 633 Fed. App'x. 16, 17 (2d Cir. Feb. 4, 2016) (observing that "the prevailing view in this district and bankruptcy courts in this Circuit has agreed" that "payments of interest to Ponzi scheme investors should be treated as fraudulent transfers . . ") (internal quotation omitted)).

In the *Antecedent Debt Decision*, the District Court ruled that net winner defendants were not entitled to the payment of interest.  499 B.R. at 422.  Because the District Court had not withdrawn the reference with respect to this issue, the District Court did not rule on the issue of whether defendants were entitled to time-based damages as an adjustment to their net equity claims.  However, the Second Circuit decided this issue in 2015, when it affirmed the Bankruptcy Court's decision that BLMIS customers were not entitled under SIPA to adjustments to their claims to account for any form of time-based damages, including those relating to lost opportunity costs or the consumer price index.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* (*In re Madoff Sec.*), 779 F.3d 74 (2d Cir. 2015) ("*Time-Based Damages Decision").*  There, the Second Circuit held that "BLMIS customers were not entitled to an

23

inflation or interest adjustment to their net equity claims because SIPA did not permit it." *Cohen Decision,* 2016 WL 1695296, at \*14 (citing *Time-Based Damages Decision,* 779 F.3d at 79-80). The Second Circuit determined that "an inflation adjustment to net equity claims" would allocate value to the earlier investors "at the expense of customers who have not yet recovered the property they placed in Madoff's hands." *Time-Based Damages Decision,* 779 F.3d at 81. Thus, an inflation or other time-based damages adjustment violated SIPA's statutory structure. *Id.* The Second Circuit further determined that such an adjustment also violated the purpose of SIPA, which was to distribute customer property to customers, not to provide full protection to all victims of a brokerage's collapse. *See id.* ("The purpose of determining net equity under SIPA is to facilitate the proportional distribution of customer property actually held by the broker, not to restore to customers the value of the property that they originally invested").

Although the Second Circuit's *Time-Based Damages Decision* answered a different but related question involving net equity under SIPA rather than value under section 548(c), the logic and rationale of the decision all but resolves the question as to value under section 548(c). As the District Court stated, "a customer's net equity and the amounts sought in avoidance and recovery proceedings (assuming the customer's good faith) are two sides of the same coin." *Antecedent Debt Decision*, 499 B.R. at 420. In both cases, the Trustee nets deposits against withdrawals: "[a] customer who withdrew less than she deposited over the course of her investment with Madoff Securities has a net-equity claim and may be entitled to disbursements from the customer property estate for the amount of that net equity," and customers "who withdraw more money from their accounts than they deposited" are subject to "avoidance actions for the amount in excess of their deposits." *Id.* at 420-21. Therefore, "the computation of net equity under SIPA and value under Bankruptcy Code § 548(c) are 'inherently intertwined'" and

24

there can be no time-value adjustment provided to Defendants. *Cohen Decision*, 2016 WL 1695296, at *14 (citing *Antecedent Debt Decision*, 499 B.R. at 424).[9]

### c.  Defendants' Lost Opportunities Do Not Constitute Consequential Damages That Create Value

The Parties also stipulated that Defendants engaged an expert "to calculate its lost opportunity costs during the period that BLMIS held its funds" (Joint Statement ¶ 57).  While the Trustee stipulated that he is "not contesting and will not object to the conclusions" of the Defendants' expert specifically set forth in the Joint Statement (Joint Statement ¶ 63), any assertion that these defenses constitute "value" in any amount above their principal investment blatantly disregards the long line of decisional authority holding that, in a Ponzi scheme, investors cannot provide value in excess of their principal investment.  *See, e.g., Second Circuit Net Equity Decision*, 654 F.3d 229; *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) ("*Net Equity Decision*"); *Greiff*, 476 B.R. 715; *Cohen Decision,* 2016 WL 1695296.  *See also Picard v. Katz*, No. 11 Civ. 3605 (JSR) 2012 WL 691551 (S.D.N.Y. March 5, 2012) (granting the Trustee partial summary judgment, finding that fictitious profits from BLMIS were not taken for "value").

Accordingly, any affirmative defenses seeking setoff or equitable adjustment for purported losses and/or damages under federal or state law cannot, and should not, be included in the calculation of value.

---

[9] Defendants set forth an affirmative defense seeking a "setoff or other equitable adjustment" for the "mandatory withdrawals from IRA accounts."  (Answer at p. 26).  However, the Accounts are not IRA accounts and thus the Defendants' argument appears to be raised in error.  Even if the Accounts were IRA accounts, the defense has no merit because, as the District Court already ruled, "the IRC does not require dismissal of the Trustee's claims under § 548(a)(1)(A) and § 550(a)."  *Greiff*, 476 B.R. at 729.

### III.    THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION 550 OF THE BANKRUPTCY CODE AND SIPA § 78FFF-2(C)(3)

Section 550 of the Bankruptcy Code allows a trustee to recover a transfer of property (or the value thereof) that has been avoided under section 548(a)(1)(A) of the Bankruptcy Code from either: "(1) the initial transferee of such transfer or the entity from whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transfer." 11 U.S.C. § 550(a). Similarly, SIPA section 78fff-2(c)(3) allows a trustee to "recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11." 15 U.S.C. § 78fff-2(c)(3). As of the filing date of this liquidation proceeding and to date, BLMIS's customer property "is not sufficient to pay in full the claims set forth in" SIPA section 78fff-2(c)(1)(A)–(D), including the claims of customers who have not yet recovered the principal they lost in the Ponzi scheme.[10] *Id.*

The undisputed record establishes that Defendants are the initial transferees of the Transfers received from BLMIS during the Two-Year Period. The undisputed record also establishes that Defendants did not give value in exchange for the fictitious profits, and they provided no evidence to that end. *See Bayou III,* 396 B.R. at 843-844 (stating that "[o]nce the plaintiffs have established their fraudulent conveyance claims under Section 548(a), the burden shifts to the defendants to allege and prove facts to establish their affirmative defense under Section 548(c)"). In fact, the evidence demonstrates the complete lack of value provided to BLMIS.

---

[10] *See* Trustee's Seventeenth Interim Report For the Period October 1, 2016 Through March 31, 2017, at 4-5, 42-43, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Apr. 27, 2017), ECF No. 15922.

Defendants received the Transfers from BLMIS based upon their purported interest in their BLMIS accounts, and not based on any value provided to BLMIS in exchange for those transfers. As a result, the Trustee can recover the avoidable transfers from Defendants under section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3) for the equitable, *pro rata* distribution of funds to those defrauded customers of BLMIS with valid customer claims.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count Two of the Trustee's Complaint and enter an order avoiding the transfers of the fictitious profits made by BLMIS through the IA Business to Defendants within the Two-Year Period, and directing the Defendants to return such transfers or the value thereof to the Trustee, and awarding the Trustee prejudgment interest.

Dated: New York, New York
      August 11, 2017

BAKER & HOSTETLER LLP

By: */s/ Keith R. Murphy*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Keith R. Murphy
    Email: kmurphy@bakerlaw.com
    Nicholas J. Cremona
    Email: ncremona@bakerlaw.com
    Robertson D. Beckerlegge
    Email: rbeckerlegge@bakerlaw.com
    Elyssa S. Kates
    Email: ekates@bakerlaw.com

    *Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*