# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04387 (SMB) |
| Plaintiff, | |
| v. | |
| JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the Estate of Marianne Lowrey, in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al.*, | |
| Defendants. | |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendants James Lowrey, Estate of Marianne Lowrey,

08-01789-cgm   Doc 16506-1   Filed 08/14/17   Entered 08/14/17 16:30:10   Main Document
Pg 2 of 20

Turtle Cay Partners, and Coldbrook Associates Partnership ("Lowrey Defendants" and together
with the Trustee, the "Parties") hereby submit this Joint Statement of Undisputed Material Facts
in connection with their forthcoming motions for summary judgment pursuant to the Stipulation
for Entry of Scheduling Order ("Scheduling Order") entered by this Court on January 27, 2017
(ECF No. 71) and Federal Rule of Civil Procedure 56 (made applicable by Federal Rule of
Bankruptcy Procedure 7056).

1.      At all relevant times, Madoff controlled BLMIS, first as its sole member, and
thereafter as its chairman and chief executive.

2.      On December 11, 2008, Madoff was arrested for violating numerous federal
criminal securities statutes.

3.      Contemporaneously, the Securities and Exchange Commission (the "SEC")
commenced proceedings against BLMIS and Madoff in the United States District Court for the
Southern District of New York (the "District Court") in a case captioned *Securities Exchange
Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the
"Liquidation Proceeding").

4.      On December 15, 2008, the SEC consented to a combination of its own action
with an application of the Securities Investor Protection Corporation ("SIPC") pursuant to
Section 78eee(a)(4)(A) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.*
("SIPA").

5.      Pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the
District Court because BLMIS was not able to meet its obligations to securities customers as
they became due and thus its customers needed the protections afforded by SIPA.

6.      BLMIS was, at all times relevant to this adversary proceeding, registered with the SEC as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b), and a member of the Financial Industry Regulatory Agency (formerly known as the National Association of Securities Dealers).

7.      At all times relevant to this adversary proceeding, BLMIS was an investment adviser.

8.      Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding.

9.      The Lowrey Defendants have not undertaken any investigation of BLMIS and the operations of that business.  For the sole purposes of this proceeding, the Lowrey Defendants stipulate to the facts set out below in paragraphs 10 through 16.

10.      BLMIS was operating a Ponzi scheme.

11.      BLMIS was insolvent from at least December 11, 2002 and all points after.

12.      BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers.

13.      The investment advisory business (the "Investment Advisory Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.

14.      The Investment Advisory Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals.

15.     The Investment Advisory Business did not receive any legitimate outside financial support from loans or otherwise.

16.     BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients.

17.     In May of 1999, Defendant Turtle Cay Partners entered into an Account Agreement with BLMIS. This account was identified as account no. 1CM585 (the "1CM585 Account").

18.     As reflected in the Stipulation of Undisputed Transfers (Exhibit A), Exhibit B to the Trustee's Amended Complaint accurately reflects the complete history of the transactions to and from the 1CM585 Account.

19.     Column 3 of Exhibit B to the Amended Complaint accurately reflects the transaction amounts as reported in the customer statements for the 1CM585 Account.

20.     Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits made into the 1CM585 Account and Column 5 of Exhibit B to the Amended Complaint accurately reflects the withdrawals from the 1CM585 Account.

21.     Between May 7, 1999 and December 11, 2008, Defendant Turtle Kay Partners deposited a total of $9,000,000 into the 1CM585 Account and withdrew a total of $16,845,089 from the 1CM585 Account.

22.     As accurately reflected in Column 10 of Exhibit B to the Amended Complaint, Turtle Kay Partners withdrew from the 1CM585 Account $7,845,089 in excess of deposits between December 11, 2006 and December 11, 2008 (the "Two-Year Period").

23.     Turtle Cay Partners stipulates that it received the following transfers from BLMIS:

    a.   3/18/2008 - $12,500,000.00

    b.   10/07/2008 - $4,345,089.00

24.     Of the two transfers listed in the preceding paragraph, the Trustee seeks to avoid $7,845,089.00.

25.     In May of 2004, Defendant Coldbrook Associates Partnership entered into an Account Agreement with BLMIS.  This account was identified as account no. 1CM880 (the "1CM880 Account").

26.     As reflected in the Stipulation of Undisputed Transfers, Exhibit B to the Trustee's Amended Complaint accurately reflects the complete history of the transactions to and from the 1CM880 Account.

27.     Column 3 of Exhibit B to the Amended Complaint accurately reflects the transaction amounts as reported in the customer statements for the 1CM880 Account.

28.     Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits made into the 1CM880 Account and Column 5 of Exhibit B to the Amended Complaint accurately reflects the withdrawals from the 1CM880 Account.

29.     Between May 27, 2004 and December 11, 2008, Defendant Coldbrook Associates Partnership deposited a total of $2,800,000 into the 1CM880 Account and withdrew a total of $3,893,402 from the 1CM880 Account.

08-01789-cgm    Doc 16506-1    Filed 08/11/17    Entered 08/11/17 16:39:10    Main Document
Pg 6 of 20

30.     As accurately reflected in Column 10 of Exhibit B to the Amended Complaint,
Defendant Coldbrook Associates Partnership withdrew from the 1CM880 Account $1,093,402 in
excess of deposits during the Two-Year Period.

31.     Coldbrook Associates Partnership stipulates that it received the following
transfers from BLMIS:

    a.  5/02/2007 - $1,000,000.00

    b.  12/21/2007 - $2,390,377.00

    c.  10/21/2008 - $3,025.00

32.     Of the three transfers listed in the preceding paragraph, the Trustee seeks to avoid
a total of $1,093,402.00.

33.     In July of 2004, Defendant James Lowrey and Marianne Lowrey entered into an
Account Agreement with BLMIS.  This account was identified as account no. 1CM832 (the
"1CM832 Account," and together with the 1CM585 Account and 1CM880 Account, the
"Accounts").

34.     As reflected in the Stipulation of Undisputed Transfers, Exhibit B to the Trustee's
Amended Complaint accurately reflects the complete history of the transactions to and from the
1CM832 Account.

35.     Column 3 of Exhibit B to the Amended Complaint accurately reflects the
transaction amounts as reported in the customer statements for the 1CM832 Account.

36.     Column 4 of Exhibit B to the Amended Complaint accurately reflects the deposits
made into the 1CM832 Account and Column 5 of Exhibit B to the Amended Complaint
accurately reflects the withdrawals from the 1CM832 Account.

08-01789-cgm  Doc 16506-1  Filed 08/14/17  Entered 08/14/17 16:39:10  Exhibit A
Pg 87 of 90

37.     Between July 20, 2004 and December 11, 2008, Defendants James Lowrey and

Marianne Lowrey deposited a total of $2,500,000 into the 1CM832 Account and withdrew a total

of $3,082,182 from the 1CM832 Account.

38.     As accurately reflected in Column 10 of Exhibit B to the Amended Complaint,

Defendants James Lowrey and Marianne Lowrey withdrew from the 1CM832 Account $582,182

in excess of deposits during the Two-Year Period.

39.     James Lowrey and the Estate of Marianne Lowrey, on behalf of Marianne

Lowrey, stipulate that they received the following transfers from BLMIS:

     a.   3/18/2008 - $500,000.00

     b.   10/07/2008 - $1,082,182.00

40.     Of the two transfers listed in the preceding paragraph, the Trustee seeks to avoid a

total of $582,182.00.

41.     Attached as Exhibits B through D are true and accurate copies of the Account

Agreements for Accounts 1CM585, 1CM880, and 1CM832, in which the Lowrey Defendants

provided Madoff with investment discretion.

42.     The Lowrey Defendants opened the Accounts in good faith and with no

knowledge of BLMIS' fraud.

43.     The above the Lowrey Defendants made each of the withdrawals in good faith,

believing that they were entitled to these funds and lacking any knowledge of the Ponzi scheme.

44.     BLMIS transferred the funds withdrawn by the Lowrey Defendants during the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors.

45.     On November 30, 2010, the Trustee brought this adversary proceeding against the Lowrey Defendants to avoid and recover $9,520,673, the total difference between the amounts deposited and withdrawn by the Lowrey Defendants in connection with the Accounts.

46.     As reflected in the Stipulation of Undisputed Transfers, the Trustee has dismissed certain claims asserted in the Amended Complaint with prejudice, including all claims for avoidance of obligations.

47.     BLMIS accepted the Lowrey Defendants' funds for the stated purpose of trading securities for the Lowrey Defendants' benefit.

48.     The Lowrey Defendants' only business relationships with BLMIS, a registered broker-dealer, were as customers of its Investment Advisory Business.

49.     The Lowrey Defendants did not invest in BLMIS, either as partners, shareholders, or other equity stake holders.  At no time did any Lowrey Defendant purport to own a share of, or have a financial stake in, the business of BLMIS.

50.     The Lowrey Defendants received monthly Account statements from BLMIS reporting purported securities transactions effected on their behalf.  At all times, BLMIS defrauded the Lowrey Defendants by intentionally misrepresenting the purported securities transactions in the Accounts.  These misrepresentations made to the Lowrey Defendants were an integral and essential part of the fraud, and were made to avoid detection of the fraud, retain existing investors, and to lure other investors into the Ponzi scheme.

51.     The Lowrey Defendants relied in good faith on BLMIS' reports of securities transactions that it purportedly made on behalf and for the benefit of the the Lowrey Defendants' Accounts.

52.     The Lowrey Defendants reasonably relied on the representations in the Account Agreements and account statements.

53.     BLMIS did not comply with its obligations under the Account Agreements.

54.     The Lowrey Defendants were injured by BLMIS' fraud.

55.     The Lowrey Defendants' injuries occurred in the state of New York.

56.     The Trustee has not sought to avoid the Account Agreements.

57.     The Lowrey Defendants engaged an expert, Stephen Behnke, to calculate their lost opportunity costs during the period that BLMIS held their funds.

58.     Mr. Behnke created a portfolio model for retail securities investments managed by an honest broker at the time the Lowrey Defendants held the Accounts, computed the rate of return the model would have produced during the relevant account period, and applied that model to the Accounts.

59.     Mr. Behnke concluded that the Lowrey Defendants' model portfolio would have returned $2,354,352 across all three accounts.  The expert calculated that the amount received by the Lowrey Defendants that is in excess of the expert's model is $7,156,321.

60.     Alternatively, Mr. Behnke unwound each transaction and prepared a hypothetical analysis comparing the rate of investment return at BLMIS with New York's 9% statutory rate of interest to calculate the Lowrey Defendants' losses.

61.    The expert concluded that the Lowrey Defendants' rescission claim would have yielded an interest component of $5,062,340.  The expert calculated that the amount received by the Lowrey Defendants that is in excess of the interest component is $4,458,333.

62.    For the purposes of this proceeding, the Trustee is not contesting and will not object to the conclusions set out in paragraphs 59 through 61 above.

Dated:       June 26, 2017
             New York, New York


/s/ Keith R. Murphy
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email:  kmurphy@bakerlaw.com
Elyssa S. Kates
ekates@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

/s/ Richard A. Kirby
**BAKER & MCKENZIE LLP**
815 Connecticut Ave., N.W.
Washington, D.C. 20006
Telephone:  202.452.7023
Facsimile:  202.416.7223
Richard A. Kirby
Email: richard.kirby@bakermckenzie.com
Laura K. Clinton
Email: laura.clinton@bakermckenzie.com

*Attorneys James Lowrey et al.*

Dated: June 27, 2017

**IT IS SO ORDERED:**


/s/  STUART M. BERNSTEIN
**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the Estate of Marianne Lowrey, in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al.*, <br><br> Defendants. | Adv. Pro. No. 10-04387 (SMB) |

## STIPULATION AND ORDER

The plaintiff, Irving H. Picard, trustee ("Trustee") for the substantively consolidated

liquidation of Bernard L. Madoff Investment Securities ("BLMIS") and the estate of Bernard L.

Madoff, individually ("Madoff"), and defendants James Lowrey, Marianne Lowrey, Estate of

Marianne Lowrey, Turtle Cay Partners, Coldbrook Associates Partnership, Trust Created for the

Benefit of Jessica Lee Lowrey Under Article Second of a Certain Trust Agreement Dated August

29, 1984, Trust Created for the Benefit of Tracy McDonald Lowrey Under Article Second of a

Certain Trust Agreement Dated August 29, 1984, Trust Created for the Benefit of Whitney

Hanlon Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984,

Jessica Lee Lowrey, Tracy McDonald Lowrey Lenehan, Whitney Hanlon Lowrey Gaeta, Larry

B. Alexander, and Marianne B. Lowrey Trust ("Defendants"), by and through their respective,

undersigned counsel (collectively, the "Parties"), state as follows:

> **WHEREAS**, as set forth in greater detail below, BLMIS made certain transfers to or for

the benefit of James Lowrey, Marianne Lowrey, now deceased, Turtle Cay Partners, and

Coldbrook Associates Partnership (the "Initial Transferee Defendants") from BLMIS Account

Numbers 1CM585, 1CM832, and 1CM880 (the "Initial Transfers");

> **WHEREAS**, on November 30, 2010, the Trustee filed and served the complaint against

Defendants.  The complaint was amended on January 9, 2012 (the "Amended Complaint");

> **WHEREAS**, on January 16, 2014, Defendants served an answer (the "Answer") to the

Amended Complaint on the Trustee;

> **WHEREAS**, in Counts One through Seven of the Amended Complaint, the Trustee seeks

to avoid and recover from Defendants the Initial Transfers or their value as fraudulent and/or

preferential pursuant to, *inter alia*, sections 544, 547, 548, 550(a) and 551 of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), sections 273, 276, and

278-79 of the New York Debtor and Creditor Law (the "DCL"), as well as sections 78fff(b),

78fff-1(b) and 78fff-2(c)(3) of the Securities Investor Protection Act ("SIPA");

> **WHEREAS**, in Count Eight of the Amended Complaint, the Trustee seeks to recover

from Defendants the subsequent transfers or their value as fraudulent and/or preferential pursuant

to, *inter alia*, sections 544, 548, 550(a) and 551 of the Bankruptcy Code and sections 278 and/or 279 of the DCL, as well as section 78fff-2(c)(3) of SIPA;

**WHEREAS**, the Defendants raised certain defenses to the Trustee's claims in the Answer to the Amended Complaint;

**WHEREAS**, numerous defendants in other adversary proceedings, but not the Defendants, filed motions to dismiss complaints or amended complaints filed against them by the Trustee (the "Motions to Dismiss");

**WHEREAS**, on June 2, 2015, the Bankruptcy Court granted in part and denied in part the Motions to Dismiss for reasons set forth in its Memorandum Decision Regarding Omnibus Motion to Dismiss (the "Decision") [ECF. No. 10089 in Adv. Pro. No. 08-01789 (SMB)] which included a dismissal with prejudice of counts seeking to avoid obligations pursuant to sections 548(a)(1) and 544 of the Bankruptcy Code (the "Obligations Counts") and a dismissal without prejudice of counts seeking to recover subsequent transfers from subsequent transferee defendants pursuant to section 550(a) of the Bankruptcy Code, and applicable provisions of SIPA including section 78fff-2(c)(3) (the "Subsequent Transferee Counts");

**WHEREAS**, on June 22, 2015 the Supreme Court of the United States denied *certiorari* of the Trustee's appeal of *SIPC v. Ida Fishman Revocable Trust*, 14-1128 and *Picard v. Ida Fishman Revocable Trust*, 14-1129 (the "Supreme Court Decision"), and thus section 546(e) of the Bankruptcy Code applies to this adversary proceeding;

**WHEREAS**, the Parties have conferred in an attempt to resolve, where possible, certain differences and disputes between them, and the Parties are entering into this stipulation in the interest of efficiency to avoid unnecessary litigation; and

NOW, **THEREFORE**, the Parties agree and stipulate to the following undisputed facts and to the dismissal of certain claims and defendants from this adversary proceeding:

1.      Defendant Turtle Cay Partners maintained an account at BLMIS, denominated as account no. 1CM585 ("1CM585"), in its name.

2.      Exhibit B to the Trustee's Amended Complaint, which is incorporated herein by reference and attached hereto as Exhibit 1 (the "Exhibit"), accurately reflects the complete history of the transactions to and from account 1CM585.

3.      Column 4 of page one of the Exhibit accurately reflects all deposits made into account 1CM585.

4.      Column 5 of page one of the Exhibit accurately reflects all withdrawals from account 1CM585.

5.      Column 10 of page one of the Exhibit accurately reflects the funds received by Turtle Cay Partners from December 2006 through December 2008 from account 1CM585.

6.      Turtle Cay Partners stipulates that it received the following transfers from BLMIS and further stipulates that those transfers were deposited into a Northern Trust Company account in the name of Turtle Cay Partners (account number 26-35209).

  a.   3/18/2008 - $12,500,000.00

  b.   10/07/2008 - $4,345,089.00

7.      Of the two transfers listed in paragraph 6, the Trustee seeks to avoid $7,845,089.00, as reflected in Column 10 of page one of Exhibit 1.

8.      Defendants James Lowrey and Marianne Lowrey maintained an account at BLMIS, denominated as account no. 1CM832 ("1CM832"), in their names.

9.      The Exhibit accurately reflects the complete history of the transactions to and from account 1CM832.

10.     Column 4 of page two of the Exhibit accurately reflects all deposits made into account 1CM832.

11.     Column 5 of page two of the Exhibit accurately reflects all withdrawals from account 1CM832.

12.     Column 10 of page two of the Exhibit accurately reflects the funds received by James Lowrey and Marianne Lowrey from December 2006 through December 2008 from account 1CM832.

13.     James Lowrey and the Estate of Marianne Lowrey, on behalf of Marianne Lowrey, stipulate that they received the following transfers from BLMIS and further stipulate that those transfers were deposited into a Northern Trust Company account in the name of J&M Lowrey (account number 26-36493).

   a.  3/18/2008 - $500,000.00

   b.  10/07/2008 - $1,082,182.00

14.     Of the two transfers listed in Paragraph 13, the Trustee seeks to avoid a total of $582,182.00, as reflected in Column 10 of page two of Exhibit 1.

15.     Defendant Coldbrook Associates Partnership maintained an account at BLMIS, denominated as account no. 1CM880 ("1CM880"), in its name.

16.     The Exhibit accurately reflects the complete history of the transactions to and from account 1CM880.

17.     Column 4 of page three of the Exhibit accurately reflects all deposits made into account 1CM880.

18.     Column 5 of page three of the Exhibit accurately reflects all withdrawals from account 1CM880.

19.     Column 10 of page three of the Exhibit accurately reflects the funds received by Coldbrook Associates Partnership from December 2006 through December 2008 from account 1CM880.

20.     Coldbrook Associates Partnership stipulates that it received the following transfers from BLMIS and further stipulates that those transfers were deposited into a Northern Trust Company account in the name of Coldbrook Associates (account number 26-35175).

    a.  5/02/2007 - $1,000,000.00

    b.  12/21/2007 - $2,390,377.00

    c.  10/21/2008 - $3,025.00

21.     Of the three transfers listed in Paragraph 20, the Trustee seeks to avoid a total of $1,093,402.00, as reflected in Column 10 of page three of Exhibit 1.

22.     James Lowrey is solvent and has the ability to pay the full amount that the Trustee seeks to avoid regarding the four Initial Transfers withdrawn from account 1CM832 and account 1CM585, identified in paragraphs 7 & 14, above.  In an effort to obviate the need for discovery into any subsequent transfers of any funds withdrawn from accounts 1CM585 and 1CM832 between December 11, 2006 and December 11, 2008, James Lowrey hereby undertakes to maintain sufficient funds or assets to repay the amounts sought to be avoided identified in paragraphs 7 & 14 above, in full until such time as (i) a final, non-appealable judgment is entered in favor of the Trustee for the recovery of the Initial Transfers or a portion thereof, or (ii) this adversary proceeding is dismissed with prejudice.  Mr. Lowrey has provided current financial records demonstrating, to the satisfaction of the Trustee, his ability to repay the amounts

identified in paragraphs 7 & 14. However, in the event that the Trustee obtains a judgment that Mr. Lowrey cannot satisfy, Mr. Lowrey hereby agrees to identify all subsequent recipients of any funds withdrawn between December 11, 2006 and December 11, 2008, including providing the names of the recipients, the amounts received, and the dates on which the money was received. Additionally, Mr. Lowrey agrees to preserve any existing documents in his custody and/or control that reflect possible subsequent transfers from the period of December 11, 2006 through December 31, 2009, including, but not limited to, monthly account statements for any account from which such possible transfers may have been made.

23.    Defendants Trust Created for the Benefit of Jessica Lee Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984, Trust Created for the Benefit of Tracy McDonald Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984, and Trust Created for the Benefit of Whitney Hanlon Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984, were terminated in 2000. Their successors in interests are Jessica Lee Lowrey Grantor Trust dated July 1, 1989, Tracy McDonald Lowrey Grantor Trust dated June 30, 1989; and Whitney Hanlon Lowrey Grantor Trust dated June 30, 1989, respectively (collectively, the "1989 Trusts").

24.    The 1989 Trusts are solvent and have the ability to pay the full amount that the Trustee seeks to avoid regarding the three Initial Transfers withdrawn from account 1CM880 identified in paragraphs 20 and 21, above.   In an effort to obviate the need for discovery into any subsequent transfers of any funds withdrawn from account 1CM880 between December 11, 2006 and December 11, 2008, the 1989 Trusts hereby undertake to maintain sufficient funds or assets to repay the amount sought to be avoided, identified in paragraph 21 above, in full until such time as (i) a final, non-appealable judgment is entered in favor of the Trustee for the recovery of

the Initial Transfers or a portion thereof, or (ii) this adversary proceeding is dismissed with prejudice.  The 1989 Trusts have provided current financial records demonstrating, to the satisfaction of the Trustee, their ability to repay the amount identified in paragraph 21.  However, in the event that the Trustee obtains a judgment that the 1989 Trusts cannot satisfy, the 1989 Trusts hereby agree to identify all subsequent recipients of any funds withdrawn between December 11, 2006 and December 11, 2008, including providing the names of the recipients, the amounts received, and the dates on which the money was received.

25.    Upon execution and entry of this Stipulation, the Trustee agrees to forego enforcement of subpoenas served pursuant to Federal Rule of Civil Procedure 45 (made applicable by Federal Rule of Bankruptcy Procedure 9016).

26.    Pursuant to the Decision, the Obligations Counts are dismissed with prejudice.

27.    In accordance with Federal Rule of Bankruptcy Procedure 7041(a)(1)(ii), and Federal Rule of Civil Procedure 41(a)(1), and based upon the Defendants' representation that none of the following defendants received transfers in any capacity directly from BLMIS, the Parties hereby stipulate to a dismissal of the Trustee's claims against: (i) Trust Created for the Benefit of Jessica Lee Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984 (ii) Trust Created for the Benefit of Tracy McDonald Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984; (iii) Trust Created for the Benefit of Whitney Hanlon Lowrey Under Article Second of a Certain Trust Agreement Dated August 29, 1984; (iv) Jessica Lee Lowrey; (v) Tracy McDonald Lowrey Lenehan; (vi) Whitney Hanlon Lowrey Gaeta; (vii) Larry B. Alexander, and (viii) Marianne B. Lowrey Trust (the "Dismissed Defendants") in the above-captioned adversary proceeding, without prejudice to (i) the Trustee's right to seek to amend in accordance with Rule 15(a)(2) of the Federal Rules of Civil Procedure, made

applicable hereto by Federal Rule of Bankruptcy Procedure 7015 and/or (ii) the Trustee's rights under Section 550(f) of the Bankruptcy Code.  In connection with the dismissal, the Defendants agree that in the event the representations in this paragraph are inaccurate, they shall not assert nor receive the benefit of the statute of limitations periods set forth in Sections 546(a) or 550(f) of the Bankruptcy Code.

28.     Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, as incorporated by Rule 7041 of the Federal Rules of Bankruptcy Procedure, the Trustee's claims in Counts One, Three through Seven of the Amended Complaint, are hereby dismissed with prejudice.  Count Eight is dismissed without prejudice.

29.     Nothing herein shall affect the Trustee's remaining claims, including the claims set forth in Count Two of the Amended Complaint, against any defendant other than the Dismissed Defendants, and the Trustee hereby preserves all his rights and claims against any defendant other than the Dismissed Defendants.

30.     By executing this Stipulation, Defendants in no way concede any defenses to any claim for liability or recovery, nor do they admit liability under Bankruptcy Code sections 548, 550 or any other applicable section of the Bankruptcy Code, DCL, SIPA, or any other applicable law.

31.     Upon dismissal of the Dismissed Defendants, the caption of the adversary proceeding is hereby amended to delete the Dismissed Defendants from the caption.  The amended caption of the adversary proceeding shall appear as indicated in Exhibit 2 hereto.

32.     This Stipulation is without prejudice to the Trustee asserting claims to avoid and/or recover any additional or other transfers to Defendants, including any subsequent

transfers of the Initial Transfers, determined through the Trustee's continuing investigation and through discovery.

33.  This Stipulation is without prejudice to Defendants' right to oppose any further claims asserted by the Trustee with respect to additional or other transfers as set forth above.

34.  The provisions of this Stipulation shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns and upon all creditors and parties of interest.

35.  This Stipulation may be signed by the Parties in any number of counterparts, each of which when so signed shall be an original, but all of which shall together constitute one and the same instrument.  A signed facsimile, photostatic or electronic copy of this Stipulation shall be deemed an original.

[Remainder of Page Intentionally Left Blank]

Dated:      New York, New York
            February 23, 2016

/s/ Keith R. Murphy                         /s/ Laura Clinton
**BAKER & HOSTETLER LLP**                   **BAKER & McKENZIE LLP**
45 Rockefeller Plaza                        815 Connecticut Avenue NW #900
New York, NY  10111                         Washington, DC 20006
Telephone:  (212) 589-4200                  Telephone: (202) 452-7000
Facsimile:  (212) 589-4201                  Facsimile: (202) 452-7074
David J. Sheehan                            Richard A. Kirby
Email:  dsheehan@bakerlaw.com               Email: richard.kirby@bakermckenzie.com
Keith R. Murphy                             Laura Clinton
Email: kmurphy@bakerlaw.com                 Email: laura.clinton@bakermckenzie.com
Elyssa S. Kates
Email: ekates@bakerlaw.com
Jessie A. Kuhn
Email: jkuhn@bakerlaw.com                   *Attorneys for Defendants*

*Attorneys for Irving H. Picard, Trustee for*
*the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff*
*Investment Securities LLC*
*and the estate of Bernard L. Madoff*

SO ORDERED this 24th day of Februrary, 2016.

/s/ STUART M. BERNSTEIN
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

Exhibit B

BLMIS ACCOUNT NO. 1CM585 - TRENT PARTNERS JAMES J LOWERY

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/7/1999 | CHECK WIRE | 1,400,000 | 1,400,000 | - | - | - | 1,400,000 | - | - | - |
| 5/7/1999 | CHECK WIRE | 600,000 | 600,000 | - | - | - | 2,000,000 | - | - | - |
| 9/18/2001 | CHECK WIRE | 600,000 | 600,000 | - | - | - | 2,600,000 | - | - | - |
| 9/18/2001 | CHECK WIRE | 1,400,000 | 1,400,000 | - | - | - | 4,000,000 | - | - | - |
| 10/23/2001 | CHECK WIRE | 1,400,000 | 1,400,000 | - | - | - | 5,400,000 | - | - | - |
| 10/23/2001 | CHECK WIRE | 600,000 | 600,000 | - | - | - | 6,000,000 | - | - | - |
| 3/18/2008 | CHECK WIRE | (12,500,000) | - | (12,500,000) | - | - | (6,500,000) | - | (3,500,000) | (3,500,000) |
| 7/23/2008 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | (3,500,000) | - | - | - |
| 10/7/2008 | CHECK WIRE | (4,345,089) | - | (4,345,089) | - | - | (7,845,089) | - | (4,345,089) | (4,345,089) |
| Total: | | (4,345,089) | $ 9,000,000 | $ (16,845,089) | $ - | $ - | $ (7,845,089) | $ - | $ (7,845,089) | $ (7,845,089) |

Page 1 of 1 - 1CM585

MADC0154_00000002

Exhibit B

BLMIS ACCOUNT NO. 1CM832 - JAMES D MARIANNE LOWRY JT WROS

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 7/20/2004 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 2,000,000 | - | - | - |
| 11/1/2004 | CHECK WIRE | (1,000,000) | - | (1,000,000) | - | - | 1,000,000 | - | - | - |
| 4/12/2007 | CHECK WIRE | (500,000) | - | (500,000) | - | - | 500,000 | - | - | - |
| 4/13/2007 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 1,000,000 | - | - | - |
| 3/18/2008 | CHECK WIRE | (500,000) | - | (500,000) | - | - | 500,000 | (500,000) | (582,182) | (582,182) |
| 10/7/2008 | CHECK WIRE | (1,082,182) | - | (1,082,182) | - | - | (582,182) | (500,000) | (582,182) | (582,182) |
| | Total: | | $  2,500,000 | $ (3,082,182) | $  - | $  - | $ (582,182) | $ (500,000) | $ (582,182) | $ (582,182) |

MADC0154_00000003

08-01789-smb    Doc 16506-1    Filed 08/24/17    Entered 08/24/17 16:39:18    Exhibit A
Pg 26 of 39

Exhibit B

BLMIS ACCOUNT NO. 1CM880 - ARGAIT & ASSOCIATES PTNRSHIP

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 5/27/2004 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 2,000,000 | - | - | - |
| 6/2/2004 | CHECK WIRE | 800,000 | 800,000 | - | - | - | 2,800,000 | - | - | - |
| 12/20/2004 | CHECK WIRE | (500,000) | - | (500,000) | - | - | 2,300,000 | - | - | - |
| 5/2/2007 | CHECK WIRE | (1,000,000) | - | (1,000,000) | - | - | 1,300,000 | - | - | - |
| 12/21/2007 | CHECK WIRE | (2,390,377) | - | (2,390,377) | - | - | (1,090,377) | - | (1,090,377) | (1,090,377) |
| 10/21/2008 | CHECK | (3,025) | - | (3,025) | - | - | (1,093,402) | - | (3,025) | (3,025) |
| | Total: | | $ 2,800,000 | $ (3,893,402) | $ - | $ - | $ (1,093,402) | $ - | $ (1,093,402) | $ (1,093,402) |

Page 1 of 1 - 1CM880

MADC0154_00000004

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the Estate of Marianne Lowrey,  in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, <br><br> THE ESTATE OF MARIANNE LOWREY, <br><br> TURTLE CAY PARTNERS, <br><br> COLDBROOK ASSOCIATES PARTNERSHIP, individually and in its capacity as general partner of Turtle Cay Partners, <br><br> Defendants. | Adv. Pro. No. 10-04387 (SMB) |

# Exhibit B

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267280

MWPTAP00659995

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _New York_ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _New York_.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00267281

MWPTAP00659996



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH
MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER
AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO
THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL
ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR
BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE
BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING
BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST
INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY
ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR
TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A
WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE
ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY
COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers
who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

X Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _____            (X) Marian B Lawrey
(Customer Signature/date)                            (Customer Signature/date)

12032 East Erd Rd                               _____
(Customer Address)                                   (Account Number)

North Palm Beach
FL, 33408

AMF00267282

MWPTAP00659997

# Exhibit C

**BERNARD L. MADOFF**
**INVESTMENT SECURITIES LLC**
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

### CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to, money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

**Affiliated with:**
**Madoff Securities International Limited**
**12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222**

AMF00277485

MWPTAP00670263

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall ensure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00277486

MWPTAP00670264



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH
MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER
AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO
THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL
ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR
BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE
BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING
BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST
INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY
ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR
TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A
WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE
ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY
COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers
who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

_____ Yes, I do object to the disclosure of information.

__✓__ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _____     (X) _____
(Customer Signature/date)                    (Customer Signature/date)

_12032 East End Rd_                          _ICM880_
(Customer Address)                           (Account Number)

_North Palm Beach, FL_
_33418_

AMF00277487

MWPTAP00670265

# Exhibit D



**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

### CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

#### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

#### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

#### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

#### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

#### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

#### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1X 5AD. Tel 020-7493 6222

AMF00276117

MWPTAP00668895

## 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

## 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

## 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall ensure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

## 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

## 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

## 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00276118

MWPTAP00668896



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

✓

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _Jay L Tarch POA_          (X) _Jay L Tacla_ Nov. 28, 2003

(Customer Signature/date) _James Lowrey_    (Customer Signature/date) POA Maxine Lowrey

_12032 East End Rd_          _____

(Customer Address)                (Account Number)

_North Palm Beach, FL_

_33408_

AMF00276119

MWPTAP00668897