**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

Hearing Date: September 20, 2017
Hearing Time: 10:00 AM (EST)
Objection Deadline: August 30, 2017

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>     v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>               Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW
TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF
<u>CLAIMANTS HOLDING INTERESTS IN THE SCHUPAK ACCOUNT</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE ACCOUNT HOLDER'S STRUCTURE, BLMIS ACCOUNT, AND
OBJECTING CLAIMANTS' CLAIMS ................................................................ 3

        1.    The Donald Schupak Account ................................................................... 4

        2.    The BLMIS Account Records ................................................................... 5

        3.    The Claims .................................................................................................. 6

    C.    THE CUSTOMER DECISIONS .......................................................................... 6

ARGUMENT ................................................................................................................................ 9

CONCLUSION ........................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adler, Coleman Clearing Corp.*,
  216 B.R. 719 (Bankr. S.D.N.Y. 1998)......................................................................................9

*Appleton v. First Nat'l Bank of Ohio*,
  62 F.3d 791 (6th Cir. 1995) .....................................................................................................9

*In re Beacon Assocs. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011)....................................................................................14

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011)............................................................................................ passim

*In re Lehman Bros.*,
  791 F.3d 277 (2d Cir. 2015)...................................................................................................10

*FirstBank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*,
  562 B.R. 234 (S.D.N.Y. 2016), *aff'd*, No. 16-2547-bk (2d Cir. June 29, 2017) .................9, 10

*In re Klein, Maus & Shire, Inc.*,
  301 B.R. 408 (Bankr. S.D.N.Y. 2003)..............................................................................13, 14

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  708 F.3d 422 (2d Cir. 2013)............................................................................................ passim

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (Bankr. S.D.N.Y. 2002)................................................................................3, 14

*In re New Times Sec. Servs., Inc.*,
  463 F.3d at 127 ....................................................................................................................9, 13

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  779 F.3d 74 (2d Cir. 2015)................................................................................................11, 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014)....................................................................8, 9, 11, 13

# TABLE OF AUTHORITIES
## (continued)

                                                                                                  Page(s)

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*,
   Adv. P. No. 08-01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y. Apr. 10, 2017) ................................................................................................................. 9

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
   533 F.2d 1314 (2d Cir. 1976) ........................................................................... 1, 7, 10

*SEC v. Madoff*,
   No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ........... 2

**Statutes**

15 U.S.C. § 78aaa *et seq* ................................................................................................ 1

15 U.S.C. § 78eee(a)(4) ................................................................................................ 2

15 U.S.C. § 78eee(b)(3), (4) ......................................................................................... 2

15 U.S.C. § 78fff-1(a) ................................................................................................... 2

15 U.S.C. § 78fff-2(b) ................................................................................................ 12

15 U.S.C. § 78fff-3(a) ................................................................................................... 3

15 U.S.C. § 78*lll*(2) ............................................................................................. 2, 3, 9

15 U.S.C. § 78*lll*(4) ..................................................................................................... 3

15 U.S.C. § 78*lll*(11) ............................................................................................. 3, 12

**Rules**

FED. R. CIV. P. 36(a)(3) ......................................................................................... 4, 12

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ................................................... 7

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of twelve (12) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who claim an interest in BLMIS Account 1S0224 held in the name of "Donald Schupak" (the "Account" or the "Schupak Account"). The Objecting Claimants are specifically identified on Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding apart from the customer status of the account holder—Donald Schupak—despite the fact that they neither had BLMIS accounts in their names nor had any direct financial relationship with BLMIS. Instead, they each entrusted their funds to Donald Schupak for deposit into a BLMIS Account held in his name alone. The case is governed by the Second Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), and the many related decisions in this SIPA proceeding, referenced in Section C *infra*, involving the question of who is a "customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

Exhibit 2 to the Sehgal Declaration, disallowing their claims, and overruling the related claims objections on the grounds that the Objecting Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[2]

## BACKGROUND

### A.  THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and distributing customer property to the fullest extent possible to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors, including claimants to the customer fund. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that

---

[2] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

2

"customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA § 78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11). For each customer with a valid net equity claim, if the customer's share of customer property does not make the customer whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case). SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered. ECF No. 12. Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection with this Court within a certain time period, after which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

### B. THE ACCOUNT HOLDER'S STRUCTURE, BLMIS ACCOUNT, AND OBJECTING CLAIMANTS' CLAIMS

By their own admission, the Objecting Claimants entrusted their funds to Donald Schupak who, in turn, invested with BLMIS through the Schupak Account. None of the Objecting Claimants claim to have held an account with BLMIS in their own name. Donald Schupak submitted twelve (12) claims, and filed twelve (12) related docketed objections to the Trustee's denials of those claims on behalf of the Objecting Claimants. Donald Schupak's direct claim is not at issue in this Motion.

3

### 1.     The Donald Schupak Account

BLMIS Account Number 1S0224 ("Account 1S0224") was opened on or around March 18, 1996 in the name of Donald Schupak and was held in his name alone for the life of the account. Sehgal Decl., Ex. 4, AMF00207675, AMF00207617. The BLMIS account opening documents, including the BLMIS Customer Agreement, Trading Authorization, and Option Agreement, were each signed by Donald Schupak as the individual account holder. *Id.*, AMF00207677-82. In addition, all correspondence related to Account 1S0224 was to or from Donald Schupak. *See generally id.*

All requests for withdrawals from Account 1S0224 were sent to BLMIS by Donald Schupak. *Id.* Each request for a withdrawal was signed by Donald Schupak and was written on either "Schupak Group"[3] or "Donald Schupak" letterhead requesting that a "check [be] drawn from my account." *Id.*, AMF00207619-23. The majority of withdrawals were in the form of checks, which were picked up by a member of Mr. Schupak's staff. *Id.*, AMF00207623. The remaining withdrawals were in the form of wire transfers to an account held in the name of "Donald Schupak." *Id.*, AMF00207634, 50.

The Trustee served discovery requests on each of the twelve (12) Objecting Claimants through Donald Schupak.[4] No response was received. Ackerman Decl. ¶¶ 7-10. By failing to respond to the requests for admissions, the Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). By these admissions, each of the Objecting Claimants admitted that they did not have

---

[3] There is no evidence that the Objecting Claimants were partners of the Schupak Group. A search of the New York State Department of State for all entities including the name "Schupak" did not result in any partnerships by that name. *See* NYS DEPT. OF STATE DIV. OF CORPS., https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (last visited Aug. 7, 2017).

[4] Donald Schupak submitted the claims and objections on behalf of each of the twelve Objecting Claimants and used his company's address as the return address for each. *See* Sehgal Decl. Ex. 14; ECF No. 3285. In addition, Donald Schupak submitted the twelve (12) claims as part of his direct claim. *See* Sehgal Decl., Ex. 5, MWPTAP00424040 ("I have included with the filing for the account in my name claim forms for each of the name persons each reflecting the amount of their net equity in the account determined on the basis of cash in cash out.").

4

an account in their name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, that all property acquired by the account holder was owned by and in the name of the account holder, and that their only relationship to BLMIS existed by way of their relationship to Donald Schupak.  *See* Ackerman Decl. ¶¶ 7-10, Ex. 1.

Donald Schupak submitted a direct customer claim on behalf of Account 1S0224.  The amount of money that Donald Schupak withdrew from Account 1S0224 was less than the amount that was deposited, making the account holder a "net loser."  As such, the Trustee allowed the direct claim up to the net equity in the account and has been making interim distributions.[5]

### 2.    The BLMIS Account Records

Account 1S0224 was held in the name of Donald Schupak and none of the Objecting Claimants are identified in the BLMIS books and records relating to the Account.  Sehgal Decl. ¶¶ 6, 15, Ex. 4.  The books and records of BLMIS reflect money deposited and withdrawn by the account holder, Donald Schupak, on his behalf, and not by the Objecting Claimants.  *See id*.

Because the Account was maintained at BLMIS on behalf of Donald Schupak, and the deposits into and withdrawals from the Accounts were on his behalf, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate to Donald Schupak.  The books and records of BLMIS do not, in contrast, reflect deposits or withdrawals directly from or to BLMIS by the individual Objecting Claimants with regard to BLMIS Account 1S0224.  They

---

[5] The direct claim, Claim No. 007975, is not at issue in the Motion.

5

also do not show what amounts individual Objecting Claimants purportedly invested in, or withdrew from Account 1S0224. *See id.*

It was Donald Schupak, as the account holder, who had the right to demand the return of the property entrusted to BLMIS for Account 1S0224, and Donald Schupak, as the account holder, who was entitled to a customer claim to the extent of the net equity in Account 1S0224.

### 3. The Claims

The Objecting Claimants, the twelve (12) claims filed by them, and the twelve (12) docketed objections to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration. Sehgal Decl. ¶¶ 8-12, Exs. 1-3. The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS. Sehgal Decl. ¶ 11. This Motion addresses all docketed objections to the determinations of the specified claims by Objecting Claimants who are identified in Exhibit 2 of the Sehgal Declaration.

Since receiving the twelve (12) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants through Donald Schupak seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the account holder. None of the Objecting Claimants responded. *See* Ackerman Decl. ¶ 10.

## C.    THE CUSTOMER DECISIONS

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held interests in a limited partnership that in turn invested partnership funds with BLMIS via the partnership's own BLMIS account "never entrusted their cash or securities to BLMIS and, thus, fail to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Because the money sent to BLMIS belonged to the accountholders, not to the individual claimants, the

6

claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status—entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)). In its decision, the Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted).

The Second Circuit also found that the individual claimants in *Kruse* did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Kruse*, 708 F.3d at 426-27. Indicia of customer status include: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan, Kennedy*")). Thus, without entrustment of assets to BLMIS and absent any evidence of any of the indicia of customer status, the Second Circuit held that the objecting claimants failed to sustain their burden of proving that they were customers of BLMIS.

After several similar decisions, on February 25, 2015, this Court read into the record a decision applying *Kruse* and *Morgan, Kennedy*, granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships. ECF No. 9506 at 30 ("*S&P Decision*"). Relying on the prior decisions from the Bankruptcy Court, District Court and Second Circuit considering

7

the meaning of the term "customer" under SIPA, this Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. The Court held that the objecting partners failed to sustain their burden of proving that they were customers, instead they invested their assets with the relevant partnerships.

Since *Kruse*, and including the *S&P Decision*, there have been nineteen decisions in this proceeding dealing with whether investors in BLMIS accountholders could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.[6] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (the "*ERISA Claimant Decision*") (noting that prior decisions established that the burden is

---

[6] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); and the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017).

on the claimant to establish that he is a "customer" entitled to SIPA protection, and that such showing is not easily met); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*, Adv. P. No. 08-01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y. Apr. 10, 2017).

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person," including "any person who has deposited cash with the debtor for the purpose of purchasing securities." SIPA § 78*lll*(2). Thus, to be a "customer," an investor must have entrusted cash or securities to the debtor for the purpose of trading or investing in securities.

In *Kruse*, the Second Circuit found that investors who bought interests in a limited partnership that invested partnership funds via the partnership's own BLMIS account "never entrusted *their* cash or securities to BLMIS and, thus, failed to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." 463 F.3d 125, 128 (2d Cir. 2006) (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market."). The Second Circuit further upheld this principle in *In re Lehman Bros., Inc.*, concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes

9

of trading securities." 791 F.3d 277, 282 (2d Cir. 2015) (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236); *see also FirstBank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*, 562 B.R. 234, 242-43 (S.D.N.Y. 2016) (holding that "entrustment" of securities for purposes of customer status under SIPA requires more than "mere delivery" and a claimant must have had a "fiduciary relationship" with the debtor), *aff'd,* No. 16-2547-bk (2d Cir. June 29, 2017).

The Objecting Claimants' asserted interests in BLMIS Account 1S0224 do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, and reaffirmed in *Kruse*, 708 F.3d at 427. In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the beneficiaries had no legal capacity in which they could deal with the debtor. 533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in *Morgan Kennedy* and *Kruse*, and their contributions to an account held in Donald Schupak's name do not exhibit the hallmarks of customer status discussed in this Court's *S&P Decision*. *S&P Decision* at 30. The Objecting Claimants entrusted their money to an individual who then entrusted *his* assets to BLMIS. The Objecting Claimants entrusted none of their assets directly to BLMIS and therefore, each lacked a direct financial relationship with BLMIS on their own behalf. The money entrusted to BLMIS was the property of Donald Schupak, not the Objecting

10

Claimants. Further, the Account was in the name of Donald Schupak, not in the names of Objecting Claimants.

The individual financial interests of the Objecting Claimants were not identified in or identifiable from BLMIS' books and records relating to the Accounts. Only Donald Schupak, not the Objecting Claimants, entrusted his assets to BLMIS. Each of the Objecting Claimants confirm in their objection to the Trustee's claim determination that the account was held by Donald Schupak, and their funds were deposited into "his account." *See, e.g.*, ECF No. 3282. The Objecting Claimants thus fail to satisfy this "critical aspect of the 'customer' definition." *Kruse*, 708 F.3d at 426-27 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R. at 169. Whether the Objecting Claimants intended Donald Schupak to invest with BLMIS is irrelevant under SIPA. *See Kruse*, 708 F.3d at 426-27; *ERISA Claimant Decision*, 515 B.R. at 169-70.

Like the objecting claimants dealt with by prior customer decisions, the Objecting Claimants do not individually own the assets that Donald Schupak invested in accounts with BLMIS. Instead, the assets are owned by Donald Schupak alone. It was Donald Schupak, and not the Objecting Claimants, who entrusted assets to BLMIS for the purpose of purchasing securities. Thus, it was Donald Schupak, and not the Objecting Claimants, who had the right to direct the investment of those assets and to withdraw property from the Account on their respective behalves. *Kruse*, 708 F.3d at 427. As such, it is Donald Schupak, and not the Objecting Claimants, who is the customer for the Account under SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity. The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

11

the return of customer property" by "protecting the custody function of brokers." *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA). Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id.* at 77, 81. The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash or in actual securities. *Id.* at 80; *see also* SIPA § 78fff-2(b)(requiring the Trustee to discharge the obligations of the debtor to customers with valid claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee).[7] The BLMIS books and records relating to the Account show that the Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their own behalf, and none appear in those books and records. Sehgal Decl. ¶¶ 6, 15, Ex. 4. The Objecting Claimants accordingly have no individual net equity and are not "customers" within the meaning of SIPA.

Donald Schupak submitted all claims and filed all objections on behalf of the Objecting Claimants,[8] using his company's address as the return address. As such, Donald Schupak was served at his company's address with requests for admissions, interrogatories, and requests for production on behalf of each of the Objecting Claimants. No response was received. Ackerman Decl. ¶¶ 7-10, Ex. 1. By failing to respond to the requests for admissions, the Objecting Claimants admitted them. FED. R. CIV. P. 36(a)(3). The admissions show that Objecting

---

[7] SIPA §78*lll*(11) sets forth the definition of "net equity" as "the dollar amount of the account or accounts of a customer," and net equity is to be "determined by . . . [c]alculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date . . . all securities positions of such customer."

[8] *See* Sehgal Decl. Ex. 2, 3. Each objection to the Trustee's claim determination was signed by "Donald Schupak, Esq. On Behalf Of" the claimant. *See, e.g.*, ECF No. 3285.

12

Claimants lack any relationship with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are baseless. Specifically, they admitted that: (i) the relevant Account was not titled in their name;[9] (ii) that they never received investment statements or tax statements in their names from BLMIS;[10] (iii) that they never paid cash directly to BLMIS for credit to an account in their names;[11] (iv) never deposited securities directly with BLMIS;[12] (v) that they never withdrew or received funds directly from BLMIS;[13] (vi) that their only relationship to BLMIS existed by way of their relationship to the account holder;[14] (vii) that they never entered into any contracts in their names with BLMIS;[15] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[16] These admissions are supported by the Objecting Claimants' claims and docketed objections. The docketed objections they filed confirm that the Objecting Claimants' relationships were with Donald Schupak, and not with BLMIS.[17]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R.

---

[9] Ackerman Decl. Ex. 1, ¶ 1.

[10] *Id.* ¶¶ 8, 9.

[11] Ackerman Decl., Exs. 1, ¶ 4.

[12] Ackerman Decl., Exs. 1, ¶ 5.

[13] Ackerman Decl., Exs. 1, ¶ 6.

[14] *Id.* ¶ 11.

[15] *Id.* ¶ 10.

[16] *Id.* ¶ 12.

[17] *See, e.g.*, ECF No. 3282 ("The claimant's funds were entrusted to Bernard Madoff via a deposit with Bernard L. Madoff Investment Securities LLC by intermediary Donald Schupak, . . . in his Account which he allowed as an accommodation….").

13

at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' twelve claims, overrule the Objecting Claimants' twelve docketed objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York  
       August 16, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

14