# BakerHostetler

Baker&Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

T  216.621.0200
F  216.696.0740
www.bakerlaw.com

James H. Rollinson
direct dial: 216.861.7075
jrollinson@bakerlaw.com

June 7, 2017

**U.S. MAIL & EMAIL**

Barry R. Lax
Lax & Neville, LLP
1450 Broadway, 35th Floor
New York, New York 10018

Re:   *Picard v. Shapiro, et al.,* Adv. Pro. No. 10-05383 (SMB)

Dear Barry:

We write regarding several discovery disputes arising out of the parties' respective requests for production of documents in the above-referenced adversary proceeding. Through this letter, we will lay out each dispute, any understanding we may have reached on the dispute during our meet-and-confer on April 6, 2017, and a proposed means by which we might be able to resolve or at least narrow the scope of the dispute. Hopefully, this letter will provide a framework to resolve most of what is in dispute and what remains for which we may need to seek the Court's further assistance.

A.    The Shapiro Family's Document Requests

On November 30, 2016, the Shapiro Family served a number of requests for production of documents, and the Trustee responded to them on January 31, 2017. In your letter, dated March 10, 2017, and during the April 6, 2017 meet-and-confer, you raised several issues concerning the Trustee's responses and objections. For example, you contend that the Trustee has failed to state whether any responsive documents were being withheld on the basis of his objections. You also contend that the Trustee is refusing to produce certain categories of relevant documents. We believe many of your objections are misplaced for the reasons discussed during the meet-and-confer. That said, we intend to restate the Trustee's responses to clarify certain objections and hopefully resolve any unnecessary disputes as to what specifically the Trustee has agreed to produce. We will strive to provide you with the Trustee's restated responses in the next several weeks.

During the meet-and-confer you also asked whether and to what extent the Trustee would produce *all* BLMIS documents relevant to Ms. Bongiorno. The Shapiro Family did not previously seek these documents in its requests for production. Based on an exhaustive review of BLMIS documents (which is still ongoing), we have identified nearly 70,000 documents, totaling more than 150,000 pages, for which it appears Ms.

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

Bongiorno was the custodian. As discussed during the meet and confer, we are currently reviewing each of these documents to identify and then produce relevant documents in a number of adversary proceedings, including this one. An additional keyword search of BLMIS documents using the term "Bongiorno" yields more than 22,000 additional documents, totaling more than 875,000 pages. If you would like all BLMIS documents that either reference Bongiorno or for which Ms. Bongiorno was the custodian, we will consider producing them despite the fact that the deadline for such a request has passed. However, we question whether the vast majority of these documents are relevant to this case or whether such a production would be proportionate to the needs of this case.

During the meet-and-confer you also asked whether the Trustee would produce *all* documents produced to him by Konigsberg Wolf & Co. ("Konigsberg Wolf"). The Trustee already has produced 1,660 documents received from Konigsberg Wolf that concern the Shapiro Family. These documents, totaling almost 10,000 pages, were received by the Trustee pursuant to a Rule 2004 subpoena as well as a Rule 45 subpoena issued in this proceeding. At this stage, the Trustee objects to producing any additional documents from Konigsberg Wolf on several grounds. First, the Shapiro Family did not seek these documents in their requests to the Trustee. Second, the request is overbroad. These documents are of little to no relevance to the Trustee's claims or the Shapiro Family's anticipated defenses. Third, the production would be voluminous, totaling almost 135,000 documents and 575,000 pages, and therefore not proportionate to the needs of this case. Fourth, Konigsberg Wolf has designated these third-party documents as confidential under the June 6, 2011 *Litigation Protective Order* (Adv. Pro. No. 08-01789; ECF No. 4137) and has raised accountant-client privileges which only Konigsberg Wolf's individual clients can waive. Accordingly, the *Order Establishing Procedures for Third-Party Data Rooms* governs and the Shapiro family must therefore request and notify Konigsberg Wolf as the producing party under the procedures set forth therein. See *id.*, ECF No. 5474.

You also have asked that the Trustee produce *all* documents found in BLMIS files relating to Paul Konigsberg or Konigsberg Wolf. The Trustee already has agreed to produce any such documents that concern Mr. Shapiro or any other members of his family. Counsel's search for and review of these documents is ongoing. If you would like all BLMIS documents concerning Mr. Konigsberg or Konigsberg Wolf, the Trustee will consider producing them despite that the deadline for such a request has passed. However, we are again faced with a significant volume of documents, totaling more than 50,000 documents and nearly 1 million pages. The relevance of these documents is questionable, and the burden to assemble, review, and produce them is great. Please advise whether you are still interested in discussing the production of these documents as well as all of those relating to Bongiorno.

B.     The Trustee's Document Requests to Stanley Shapiro

On October 7, 2016, the Trustee served requests for production of documents on Mr. Shapiro, who responded on November 23, 2016. Of the 49 categories of documents sought by the Trustee, Mr. Shapiro agreed to produce only the following: documents concerning the opening of any BLMIS accounts (No. 1); BLMIS account statements (No. 2); BLMIS account agreements (No. 2); other BLMIS agreements (No. 3); documents received by the Shapiro Family from BLMIS concerning the BLMIS accounts (No. 4); documents concerning purported returns, gains, or losses in the

BLMIS accounts (No. 12); documents concerning purported margin balances in the BLMIS accounts (No. 13); documents concerning Mr. Shapiro's employment at BLMIS (No. 17); documents concerning Mr. Shapiro's communications regarding BLMIS with any government or regulatory agency (No. 36); and documents concerning any denial or affirmative defenses asserted in the Shapiro Family's Answer (Nos. 48 & 49). Although Mr. Shapiro agreed to produce these documents more than six months ago, the Trustee has not received any production from him. Please advise when we can expect to receive these documents.

Beyond the categories of documents identified above, Mr. Shapiro objected and refused to produce all other documents sought by the Trustee. Many of his objections are plainly without basis. For example, Mr. Shapiro refuses to produce documents or correspondence among the members of the Shapiro Family, with Konigsberg, and with Madoff or other BLMIS employees concerning the BLMIS accounts (Nos. 6, 29 & 7). Mr. Shapiro also refuses to produce documents or communications concerning whether BLMIS's operations were suspicious, unethical or fraudulent, or were a Ponzi scheme. (No. 32). These and many other categories of documents sought by the Trustee are clearly relevant in this proceeding.

To resolve or narrow the scope of the parties' disputes regarding Mr. Shapiro's responses, the Trustee is willing, for the sake of compromise, to revise some of his requests and hold in abeyance. The Trustee does not waive and reserves his right to compel Mr. Shapiro, or any other member of the Shapiro Family, to comply with the Trustee's requests as originally stated should Mr. Shapiro continue to resist complying with his discovery obligations.

The requests that the Trustee will agree to hold in abeyance are as follows: Nos. 10, 16, 18, 22–24, 27–28, 30, 34–37, 39–42, and 44–46. The Trustee will reframe the following requests as follows:

- All documents concerning the circumstances under which Mr. Shapiro began to invest with BLMIS including but not limited to documents concerning his decision to invest with BLMIS (No. 5);
- All documents and communications between You and any Family Member concerning BLMIS or any of the Core Accounts (No. 6);
- All documents and communications between You, on the one hand, and either Madoff, Annette Bongiorno or any other BLMIS employee, on the other hand, regarding any of the BLMIS Accounts, including but not limited to notes, faxes, letters, calendar entries, emails or telephone records (No. 7);
- All notes, whether made by Mr. Shapiro, Madoff, Annette Bongiorno or any other employee of BLMIS, concerning BLMIS Accounts 1SH014, 1SH028, 1SH030, 1SH079, and 1SH172 (the "Core Accounts") (No. 8);
- All documents concerning any purported investment strategy of either BLMIS or Madoff or financial advice provided by either BLMIS or Madoff to Mr. Shapiro (No. 9);
- All documents concerning the formation, amending or restating of the LAD Trust, the Leslie Shapiro 1985 Trust, or the David Shapiro 1989 Trust (Nos. 19 & 20);

- All documents provided to Mr. Shapiro by any accountant, or vice-versa, to perform any type of services concerning the Core Accounts (Nos. 25 & 26);
- All communications between or among Mr. Shapiro, Mr. Konigsberg, any other accountant, any employee of BLMIS and/or Madoff concerning any tax issue or consideration relating to any of the Core Accounts (No. 29);
- All documents and communications concerning any of Mr. Shapiro's due diligence, if any, concerning Madoff, BLMIS, or any of the BLMIS Accounts (No. 31);
- All documents and communications concerning the purported returns for any of the Core Accounts (No. 33);
- Documents sufficient to identify transfers to Mr. Shapiro and/or S&R Investment Co. including but not limited to the date of the Transfer, the amount of the Transfer, the account name and account number for the BLMIS Account from which the transfer was made, the account name and account number for the account into which the transfer was made, and the method of the Transfer (wire, check, etc.) (No. 37);
- All documents concerning any redemption or withdrawal from any of the Core Accounts (No. 38); and
- All documents concerning Mr. Shapiro's review, management, or any other type of activity for the Core Accounts (No. 43).

There are, however, other requests that seek documents which are so plainly relevant that the Trustee is unwilling to reframe them. They are as follows:

- All documents or communications between You and any other BLMIS investors, regardless of whether such individuals were BLMIS investors at the time of the communication (including but not limited to Ed Kostin, Carl Shapiro, and/or any investors You referred to BLMIS), concerning BLMIS (No. 11);
- All documents concerning any backdated or cancelled trade or any request to backdate or cancel any trade in any of the BLMIS Accounts, including but not limited to any account statement reflecting any backdated trade and/or any substitute or replacement account statement provided by BLMIS and/or Madoff to You, any Family Member, or any Accountant (No. 14);
- All documents concerning the destruction, the return to BLMIS or other disposition of any documents concerning any of the BLMIS Accounts, including but not limited to any account statements (No. 15); and
- All documents and communications concerning whether BLMIS's operations were suspicious, unethical, fraudulent or a Ponzi scheme or whether You and/or the Accountants suspected or knew that BLMIS and/or Madoff were engaged in improper, unusual, illegal, fraudulent, unethical or any other questionable activity (No. 32).

The foregoing requests generally seek information relating to Mr. Shapiro's activities relating to the Core Accounts and his alleged knowledge of fraud at BLMIS. In his decision denying in part the Shapiro Family's motion to dismiss the Second Amended Complaint, Judge Bernstein ruled that the Trustee had sufficiently alleged Mr. Shapiro's knowledge of fraud. *See* Memorandum Decision of 11/25/2105 at p. 21 (holding "the Trustee has pleaded that Stanley knew, at a minimum, that BLMIS was not actually

trading securities it reported it had traded in the monthly statements relating to the Core Accounts"). He further ruled that the Trustee had sufficiently alleged Mr. Shapiro's agency with respect to the Core Accounts. *See id.* at p. 22 (holding the Second Amended Complaint "alleges facts supporting the conclusion that Stanley was an agent with respect to each of the Core Accounts"). Accordingly, the foregoing requests to Mr. Shapiro are plainly appropriate.

Despite several meet-and-confers and a hearing on the matter, Mr. Shapiro has provided no legitimate basis to withhold the above-requested documents. As Judge Bernstein made clear several times during the Rule 7007 conference:

> As a general proposition, as long as the [BLMIS] account is still in dispute or generally Stanley Shapiro's liability, with respect to the account is still in dispute, the money that was deposited, the money that was withdrawn, and what he knew about BLMIS are relevant, even if the particular defendant who's asked that question is no longer in the case.
>
> * * * * *
>
> And again, anything relating, you know, I'm repeating myself, but anything relating to Stanley Shapiro's knowledge, because he's the key to the imputation, is relevant, even if it goes back many, many years . . . .

Hearing Transcript, p. 52:11-17 & p. 61:5-8.

Finally, Judge Bernstein made clear that if Mr. Shapiro objects to any request as unduly burdensome (and therefore not proportionate to the needs of the case), he bears the burden to make that showing:

> Well, document requests, . . . I don't know how burdensome it'll be, and that ultimately will be your burden to show, if they have to make a motion.
>
> * * * *
>
> I'm just not going to accept . . . it's burdensome. You're going to have to explain why . . .

*Id.* at p. 61:15-21. We do not see how producing documents in response to the foregoing requests is unduly burdensome for Mr. Shapiro. During the Rule 2004 examination, he described for us what efforts he made to gather documents responsive to our then-requests. He essentially searched the contents of his Park Avenue apartment and the storage area he maintains in his building's basement. Given the volume of documents he previously produced, Mr. Shapiro may have few additional documents responsive to our requests. Moreover, what further documents he does have are not warehoused in Queens. Rather, they are likely in his apartment, his basement storage location or perhaps at properties in Long Island and Palm Beach.

Please confirm that Mr. Shapiro will produce the foregoing categories of documents.

C.    The Trustee's Document Requests to David Shapiro and the Citrons

On October 7, 2016, the Trustee served separate requests for production of documents on David Shapiro and on Kenneth and Leslie Citron. On November 23, 2016, they responded and agreed to produce documents in response to only seven out of the Trustee's forty-five requests. They agreed to produce: documents concerning the

opening of BLMIS accounts (No. 1); BLMIS account statements (Request No. 2); BLMIS account agreements (No. 3); documents received by the Shapiro Family from BLMIS concerning the BLMIS Accounts (No. 4); documents concerning purported margin balances in the BLMIS Accounts (No. 12); and documents concerning any denials or affirmative defenses asserted in their Answer (Nos. 44 & 45). To date, neither David Shapiro nor the Citrons have produced any documents responsive to these requests.

Again, as a compromise to resolve or narrow the scope of discovery disputes, the Trustee will revise or hold in abeyance certain requests for production to David Shapiro and the Citrons. The requests the Trustee will hold in abeyance are the following: Nos. 5, 9–10, 17–22, 25–27, 31–33, 36–39, and 41–42. The Trustee will reframe the following requests as follows:

- All documents and communications between any of them, on the one hand, and Mr. Shapiro, on the other hand, concerning any of the Core Accounts or BLMIS (No. 6);
- All documents and communications between any of them, on the one hand, and either Madoff, Annette Bongiorno or any other BLMIS employee, on the other hand, concerning any of the Core Accounts or BLMIS (No. 7);
- All notes made by any of them, Mr. Shapiro, Madoff, Annette Bongiorno or any other BLMIS employee concerning any of the Core Accounts (No. 8);
- All documents concerning any purported realized or unrealized gains, losses, or returns in connection with any of the Core Accounts (No. 11);
- All documents concerning any backdated or cancelled trade or any request to backdate or cancel any trade in connection any of the Core Accounts (No. 13);
- All documents concerning the destruction or the return to BLMIS of any statement, confirmation or any other account documents concerning any of the Core Accounts (No. 14);
- All documents concerning the formation, amending or restating of the LAD Trust, the Leslie Shapiro 1985 Trust, or the David Shapiro 1989 Trust (Nos. 15 & 16);
- All documents provided to any members of the Shapiro Family by any accountant, and vice-versa, to perform any type of services concerning the Core Accounts (Nos. 23 & 24);
- All tax returns, including drafts, filed by the LAD Trust, the Leslie Shapiro 1985 Trust, or the David Shapiro 1989 Trust (No. 27);
- All documents and communications concerning any due diligence, either performed by Mr. Shapiro or for his benefit, concerning Madoff, BLMIS, or any of the Core Accounts (No. 28);
- All documents and communications concerning whether BLMIS's operations were suspicious, unethical, fraudulent or a Ponzi scheme or whether Mr. Shapiro suspected or knew that BLMIS and/or Madoff were engaged in improper, unusual, illegal, fraudulent, unethical or any other questionable activity (No. 29);
- All documents and communications concerning the purported returns for any of the Core Accounts (No. 30);

- Documents sufficient to identify transfers from the Core Accounts including but not limited to the date of the Transfer, the amount of the Transfer, the account name and account number for the BLMIS Account from which the transfer was made, the account name and account number for the account into which the transfer was made, and the method of the Transfer (wire, check, etc.) (No. 37);

- All documents concerning any requests for redemption or withdrawal from any of the Core Accounts (No. 35);

- All documents concerning Mr. Shapiro's review, management, or any other type of activity for the Core Accounts (No. 43); and

- All documents concerning Mr. Shapiro's role as trustee of the LAD Trust, the Leslie Shapiro 1985 Trust, or the David Shapiro 1989 Trust (No. 43).

In refusing to produce any of the above-listed documents, David Shapiro and Kenneth and Leslie Citron have categorically objected to the relevancy of the Trustee's document requests. Their objections—at least with respect to each of the requests restated above—are meritless. Under Federal Rule of Civil Procedure 26(b)(1), the Trustee may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim." This means the Trustee may seek discovery relevant to any pending claim, either from Mrs. Citron, for example, or any other party or third party to this proceeding. Accordingly, neither Mrs. Citron, her husband, nor brother can object to requests concerning Mr. Shapiro's knowledge of fraud at BLMIS or any activity in the Core Accounts, because there remain pending claims against Mr. Shapiro to recover fraudulent transfers from each of the Core Accounts.

Their objections are not only meritless but they were cast aside by Judge Bernstein at the Rule 7007 conference:

> [T]he argument is being made that they have the right to ask Leslie Citron, for example, about what her father may have known. And the fact that claims were dismissed against her, except for the two-year claims, doesn't matter. If she knew that in 1990, her father knew that Madoff was a fraud. They can certainly ask her that.
>
> * * * *
>
> [S]ome of these [requests] do seem to relate to what . . . her father know, going back. And she can certainly be asked that. If she doesn't know, then she says she doesn't know.
>
> As a general proposition, as long as the [BLMIS] account is still in dispute or generally Stanley Shapiro's liability, with respect to the account is still in dispute, the money that was deposited, the money that was withdrawn, and what he knew about BLMIS are relevant, even if the particular defendant who's asked that question is no longer in the case
>
> * * * *.
>
> [A]nything that relates to Stanley Shapiro's knowledge is fair game, regardless of who has that knowledge, and even if it relates to a request to Mrs. Citron.

Hearing Transcript, p. 49:8-14, p. 49:22-25, p. 52:11-17, and pp. 56:8-57:14. And we foresee no undue burden on David Shapiro or the Citrons in gathering and producing the documents described above. Your associate, Rush, alluded during the Rule 7007 conference that some documents may perhaps be in "storage facilities," but looking through such a facility or facilities would hardly be overly burdensome. Accordingly, we ask that David Shapiro and the Citrons produce the above-listed documents – they are clearly relevant to Mr. Shapiro's knowledge of fraud and his role with respect to the Core Accounts.

If you should have any questions, please contact me or Torello H. Calvani.

Sincerely,

James H. Rollinson
Partner

cc:   Ona T. Wang
      Torello H. Calvani