UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                              :

BERNARD L. MADOFF INVESTMENT          :      Adv. Proc. No. 08-01789 (SMB)
SECURITIES LLC,                                   :      SIPA LIQUIDATION
                                                          :      (Substantively Consolidated)
                        Debtor.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

PERTAINS TO THE FOLLOWING CASE:    :
                                                          :
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :   Adv. Proc. No. 09-1182 (SMB)
                                                          :
                        Plaintiff,                  :
            -v-                                       :
                                                          :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,  :
ARIEL FUND LTD., ASCOT PARTNERS, L.P., :
ASCOT FUND LTD., GABRIEL CAPITAL        :
CORPORATION,                                   :
                                                          :
                        Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE TRUSTEE FROM SEEKING DOUBLE RECOVERY THROUGH EQUITABLE SUBORDINATION

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10103
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
*Attorneys for Ralph C. Dawson, as Receiver*
*for Defendant Ascot Partners, L.P., and*
*Ascot Fund Ltd.*

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.:  (212) 698-3500
*Attorneys for Defendants J. Ezra Merkin*
*and Gabriel Capital Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS AND PROCEDURAL BACKGROUND ................................................................... 3

    The Motion to Dismiss the Third Amended Complaint ................................................... 3

    The Trustee's Brief in Opposition to the Motion for Summary Judgment ....................... 4

    The Oral Argument on the Summary Judgment Motion .................................................. 5

    The Trustee's Newfound Attempt to Double Recover ..................................................... 8

ARGUMENT ......................................................................................................................... 9

    I.    IF THE TRUSTEE'S FRAUDULENT TRANSFER CLAIM FAILS, THE
          EQUITABLE SUBORDINATION CLAIM FAILS .......................................... 10

    II.   IF THE TRUSTEE SUCCEEDS IN AVOIDING THE FRAUDULENT
          TRANSFERS, THE EQUITABLE SUBORDINATION CLAIM IS
          MOOT ............................................................................................................... 11

    III.  THE TRUSTEE HAS NOT PROPERLY ASSERTED AND CANNOT
          PROVE AN INDEPENDENT BASIS FOR EQUITABLE
          SUBORDINATION ......................................................................................... 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*,
  169 B.R. 832 (Bankr. S.D.N.Y. 1994) .......................................................................14

*ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*,
  210 B.R. 508 (Bankr. S.D.N.Y. 1997) ...........................................................3, 4, 12

*In re Aéropostale, Inc.*,
  555 B.R. 369 (Bankr. S.D.N.Y. 2016) .......................................................................14

*Austin v. Chisick (In re First Alliance Mortg. Co.)*,
  298 B.R. 652 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ...........................4, 12, 16

*In re Best Prods. Co.*,
  168 B.R. 35 (Bankr. S.D.N.Y. 1994) .......................................................................14

*Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*,
  151 B.R. 327 (Bankr. D.Del. 1993) ...........................................................................4, 12

*County of Suffolk v. Amerada Hess Corp. (In re Methyl Tertiary Butyl Ether
  Prods. Liab. Litig.)*,
  517 F. Supp. 2d 662 (S.D.N.Y. 2007) .......................................................................9

*Fed. Ins. Co. v. Mertz*,
  No. 12-cv-1597, 2016 U.S. Dist. LEXIS 4019 (S.D.N.Y. Jan. 12, 2016) .................9

*First Trust & Deposit Company v. Receiver of Salt Springs National Bank (In re
  Onondaga Litholite Co.)*,
  218 F.2d 671 (2d Cir. 1955) ...................................................................................13

*Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*,
  453 B.R. 499 (Bankr. S.D.N.Y. 2011) .....................................................................4, 12

*Hamblin v. British Airways PLC*,
  717 F. Supp. 2d 303 (E.D.N.Y. 2010) .......................................................................9

*Hirsch v. Pennsylvania Textile Corp. (In re Centennial Textiles, Inc.)*,
  227 B.R. 606 (Bankr. S.D.N.Y. 1998) ...................................................................3, 11, 12

*In re Kansas-City Journal-Post Co.*,
  144 F.2d 791 (8th Cir. 1944) ...................................................................................12

*Picard v. Katz*,
    462 B.R. 447 (Bankr. S.D.N.Y. 2011) .....................................................................................3

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................................... *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    563 B.R. 737 (Bankr. S.D.N.Y. 2017) .................................................................................3, 7

*SIPC v. BLMIS*,
    No. 12-mc-115 (JSR), 2014 WL 2925175 (S.D.N.Y. June 30, 2014) .....................................3

*Summit Props. Int'l, LLC v. LPGA*,
    No. 07 Civ. 10407, 2010 U.S. Dist. LEXIS 128825 (S.D.N.Y. Dec. 6, 2010) .........................9

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013) ................................................................................13

**Rules and Statutes**

11 U.S.C. § 502(d) .........................................................................................................1, 3, 11

11 U.S.C. § 502(h) ............................................................................................................4, 15

11 U.S.C. § 510(c) ............................................................................................................5, 10

Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC") (collectively, "Merkin Defendants"), and Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Defendant Ascot Fund Limited ("Ascot Fund") (Ascot Partners and Ascot Fund, together "Ascot" and collectively with the Merkin Defendants, "Defendants"), respectfully submit this Memorandum of Law in support of their Motion *in Limine* to preclude the Trustee from seeking double recovery through equitable subordination.

## PRELIMINARY STATEMENT

The Trustee should be precluded from seeking to double recover at trial in this matter based on a claim of equitable subordination.  As the Court has stated, "equitable subordination[] [is] just a red herring in the case."  *See* Hearing on Summary Judgment Transcript, Dkt. No. 322 ("SJ Tr.") at 37:14-15.[1]  Equitable subordination was pled as an alternative remedy to the Trustee's fraudulent transfer claim, and he cannot equitably subordinate unless he makes—at a minimum— the showing required to avoid the fraudulent transfers.[2]  If the Trustee is unable to prevail on his fraudulent transfer claim, equitable subordination also necessarily fails.  If, however, the Trustee prevails on his fraudulent transfer claim there are two possible outcomes: (1) Defendants do not pay the recoverable amount, and as a result, Ascot Partner's claim against the estate is disallowed under section 502(d), rendering equitable subordination moot; or (2) Defendants pay the recoverable amount, resulting in a monetary recovery for the Trustee that precludes his double recovery through the equitable subordination any of claim Ascot Partners.  Under any scenario, equitable subordination has no place in this trial.

---

[1]    Relevant excerpts from the Summary Judgment Transcript are attached as Exhibit 1 to the Declaration of Judith A. Archer in Support of Defendants' Motion *in Limine* to Preclude the Trustee from Seeking Double Recovery Through Equitable Subordination ("Archer Declaration").

[2]    While it is impossible for the Trustee to prevail on his equitable subordination claim without having first succeeding on his fraudulent transfer claim, the reciprocal is not true.  Equitable subordination is an extraordinary remedy traditionally limited to situations tantamount to actual fraud or illegality and requires the Trustee to prove a standard higher than willful blindness.  Defendants expressly reserve their rights in relation to this argument.

The Trustee effectively conceded each and every one of these points throughout this adversary proceeding. But recently, the Trustee raised a newfound, unsupported theory that he "could literally take the money [recovered after success on the fraudulent transfer claim] and still subordinate [Ascot Partners'] claim." *See* First Hearing on Motions in *Limine* Transcript, Dkt. No. 408 ("MIL Tr.") at 47:15-16.[3] In support of this theory, the Trustee wrongly asserted that the willful blindness for which Defendants could be liable under the fraudulent transfer claim allows him to double recover. *See id.* 47:18-48:7. This position is contrary to this Court's and Second Circuit precedent as well as the fundamental nature of the bankruptcy code and equitable subordination. The Trustee has also recently asserted that Defendants aided and abetted by "allow[ing] this Ponzi scheme to go on," *id.* at 52:11-14. But no such claim has ever existed in this case, the Trustee has no factual basis to assert any such claim, any attempt to amend his Third Amended Complaint to add new facts and new theories unrelated to his fraudulent conveyance claims would be time-barred and procedurally improper, and even if the Trustee could assert such a claim, it still would not justify equitable subordination.

The Trustee was unequivocal that this attempt to impose additional, unwarranted, and unlawful punishment on Ascot Partners arose from his concern that, under proper application of the law, "[t]here's no leverage on [Defendants] to settle this case." *Id.* 50:10-11. Perceived settlement leverage is a wholly inappropriate rationale for continuing to pursue a legally and factually unsupportable claim. Because equitable subordination is immaterial and will not be reached by the Court in this action, the Trustee should be precluded from seeking to double recover on that theory at trial.

---

[3]     Relevant excerpts from the First Hearing on Motions *in Limine* Transcript are attached as Exhibit 2 to the Archer Declaration.

## FACTS AND PROCEDURAL BACKGROUND

### The Motion to Dismiss the Third Amended Complaint

The Court addressed the Trustee's equitable subordination claim in its Decision on Defendants' motion to dismiss the Third Amended Complaint. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),* 515 B.R. 117, 157-161 (Bankr. S.D.N.Y. 2014). In that decision, the Court dismissed most of the claims against Ascot Partners except count two, seeking to avoid and recover $280 million in intentional fraudulent transfers made to Ascot Partners, and count thirteen, seeking to equitably subordinate Ascot Partners' claim against the BLMIS estate.[4]

In denying the motion to dismiss the equitable subordination claim, the Court held that because the Third Amended Complaint adequately pleaded that Ascot "received the transfers in bad faith . . . [it] adequately plead[ed] inequitable conduct." *Id.* at 158. "'Thus . . . the Trustee . . . can potentially subordinate [defendants' claims against the Madoff Securities' estate] by proving that the defendants invested with Madoff Securities with knowledge, or in reckless disregard, of its fraud.'" *Id.* (quoting *Picard v. Katz,* 462 B.R. 447, 456 (Bankr. S.D.N.Y. 2011)).

The Court also made a reasoned determination that the Trustee cannot both avoid and recover the fraudulent transfers and also equitably subordinate Ascot Partners' claims:

> It is well-settled that equitable subordination is an alternative to a monetary recovery for the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a claim based on the same wrong. *Hirsch v. Pennsylvania Textile Corp.* (*In re Centennial Textiles, Inc.*), 227 B.R. 606, 611 (Bankr. S.D.N.Y. 1998); *Granite Partners*, 210 B.R. at 517. If the Trustee proves that the defendants received fraudulent transfers as initial or subsequent transferees, their claims will be disallowed under Bankruptcy Code § 502(d). *SIPC v. BLMIS*, No. 12-mc-115 (JSR), 2014 WL 2925175, at *5, 8 (S.D.N.Y. June 30, 2014). Disallowance under

---

[4]    The Court also allowed count nine for recovery of subsequent fraudulent transfers to continue against Ascot Partners, but that claim was later dismissed on summary judgment. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),* 563 B.R. 737, 752, n.36 (Bankr. S.D.N.Y. 2017).

§ 502(d) provides broader relief than equitable subordination. *Granite Partners*, 210 B.R. at 517.

Furthermore, no defendant will be entitled to any distribution unless it returns the fraudulent transfer. *Id.* Once it does, it can assert a claim to the extent permitted by Bankruptcy Code § 502(h). It would seem that the Trustee should not be able to equitably subordinate the § 502(h) claim because the return of the avoided transfer would compensate the estate for the injury caused by the fraudulent transfer, and the estate cannot recover damages and equitable subordination for the same wrong. *Austin v. Chisick* (*In re First Alliance Mortg. Co.*), 298 B.R. 652, 666 n. 2 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006); *Wachovia*, 453 B.R. at 517; *Granite Partners*, 210 B.R. at 517; *Century Glove, Inc. v. Iselin* (*In re Century Glove, Inc.*), 151 B.R. 327, 332 (Bankr. D.Del. 1993).

*Id.* at 160-61. Nevertheless, the Court declined to dismiss the equitable subordination claim at the pleading stage because dismissal "for legal insufficiency [based on plaintiff's] assert[ion] [of] a claim for damages based upon the same conduct," was not appropriate. *Id.* at 161.

**The Trustee's Brief in Opposition to the Motion for Summary Judgment**

In his briefing on summary judgment, the Trustee agreed with the Court's determination that the equitable subordination claim could not, as a practical matter, provide any relief to the Trustee. The Trustee acknowledged that his alleged basis for equitable subordination was the same conduct underlying the fraudulent transfer claim:

Decisions of the District Court and this Court state that a claim may be subordinated in this liquidation proceeding upon a showing of the *very same conduct* required to sustain the Trustee's avoidance claims—willful blindness to facts suggesting a high probability of fraud.

Trustee's Opposition to the Motion for Summary Judgment, Dkt. No. 289 ("Tr. SJ Opp.") at 3 (emphasis added).[5]

---

[5]    Relevant excerpts from the Trustee's Opposition to the Motion for Summary Judgment are attached as Exhibit 3 to the Archer Declaration.

Because the only conduct alleged in the complaint potentially capable of resulting in equitable subordination is the purported willful blindness in receipt of the fraudulent transfers, the Trustee conceded that "[t]he Trustee's equitable subordination claim is plead in the alternative to his fraudulent transfer claims." *Id.* at 67; *see also id.* at 5 ("[T]he Trustee seeks, in the alternative, equitable subordination of Ascot Partners' SIPA claim under section 510(c)."). Acknowledging his inability to recover under both claims, the Trustee admitted that "[s]hould the Trustee avoid and recover all of the transfers he seeks, the Trustee does not disagree that equitable subordination could be moot." *Id.* at 67.

**The Oral Argument on the Summary Judgment Motion**

At the oral argument on the summary judgment motion, both the Court and the Trustee stated unequivocally that equitable subordination could not occur if the Trustee was successful on the fraudulent transfer claim. The Court said repeatedly that equitable subordination was a "red herring" and that if the Trustee won, he would be permitted to avoid the fraudulent transfers, but not equitably subordinate any claim of Ascot Partners:

> THE COURT: They really don't need subordination, because they're going to get disallowance if they win, and Ascot doesn't pay them. And if Ascot pays them, they've got their remedies. So equitable subordination's just a red herring in the case. Doesn't mean it's insufficient, but it's just a red herring.

SJ Tr. at 37:11-16. This was confirmed in a subsequent exchange:

> THE COURT: But you don't have a net equity claim if you lose and don't return the transfer.
>
> MS. ARCHER: Well, but if we return the transfer, then we do have a net equity claim in excess of $226 million.
>
> THE COURT: But then the trustee has gotten his remedy.

*Id.* at 43:15-21. When questioned by the Court, counsel for the Trustee admitted there were no circumstances under which he could equitably subordinate any claim of Ascot Partners:

- 5 -

MS HOANG:  . . .  For equitable subordination, as well --

THE COURT:  Well, it's never going to come to that, though.

MS. HOANG:  We don't know.  It's an alternative remedy.  It's not to be --

THE COURT:  *Are there any circumstances under which you could get equitable subordination if you [win] on the willful blindness claim and (indiscernible) $280 million?*

MS. HOANG:  No, Your Honor.

THE COURT:  Are there any circumstances under which --

MS. HOANG:  For the 280 million, we're talking about right now?

THE COURT:  Well, if they repay, they're the only transfer wherein they have a claim, right?

MS. HOANG:  Yes, we're talking -- yes.  Yes.

THE COURT:  Okay.  And there's no circumstances under which you'd have to consider equitable subordination if one of them didn't repay, because then you'd get full disallowance under 502(d).

MS. HOANG:  Yes.

THE COURT:  So, under what circumstances would you get equitable subordination in this case?

MS. HOANG:  If --

THE COURT:  Even if they weren't willfully blind?

MS. HOANG:  Well, 502(d) is just -- I'm trying to think of a nice – it's just temporary, until they pay, 502(d).

THE COURT:  Right.

MS. HOANG:  It's -- and if they never pay, then the Trustee would move to equitably subordinate.  It's a –

THE COURT:  But if they never pay, their claim is disallowed.

MS. HOANG:  Correct.

THE COURT:  Why would you equitably subordinate a disallowed claim?

- 6 -

MS. HOANG:  If we equitably subordinate, then the money goes into the final customer property, because, if we just say, "You know what?  You don't get the benefit of that, that's" –

THE COURT:  All I'm saying is, if they don't pay, if you win and they don't pay, then there's no equitable subordination.  Their claim is disallowed.  That's fair.

MS. HOANG:  We would be okay with that, too, if the --

THE COURT:  *So, I'm asking: are there any circumstances under which there would ever be equitable subordination of their claim?*

MS. HOANG:  *We don't know that right now.*

THE COURT:  *I'm asking you.  You brought the claim.*

MS. HOANG:  *I don't know that.  I'm hoping they do pay.  I mean, if they can't* –

THE COURT:  *But if they pay, how could you equitably subordinate their claim?*

MS. HOANG:  *We wouldn't.  That's – it's an alternative remedy.*

THE COURT:  *Right.*

MS. HOANG:  *If they pay, they're entitled to their claim.*

THE COURT:  And if they don't, their claim is disallowed, right?

MS. HOANG:  Yes.

THE COURT:  Okay.

*Id.* at 72:16-75:5 (emphasis added).

The Court ultimately did not dismiss the equitable subordination claim at the summary judgment stage because similar triable issues of fact existed as with the determination of willful blindness for the fraudulent transfer claim.  *See Merkin,* 563 B.R. at 755.  Nevertheless, the Court resolved any question whether equitable subordination could provide duplicative relief to the Trustee in this case and the Court's determination was unequivocally conceded by the Trustee.

**The Trustee's Newfound Attempt to Double Recover**

Now, at the eleventh hour, years after the Court first decided the issue and months after the Trustee's clear admission of the correctness of that determination, the Trustee has argued (in furtherance of attempting to coerce an unreasonable settlement) that he should be entitled to a double recovery, to avoid and recover $280 million in fraudulent transfers *and* to equitably subordinate any claim of Ascot Partners.

At the first oral argument on motions *in limine*, the Trustee argued that he "could literally take the money [recovered after success on the fraudulent transfer claim] and still subordinate [Ascot Partners'] claim [because] equitably subordination is a separate remedy, remedying another harm [and] [t]he two harms are different." MIL Tr. at 47:15-18. The Court, while making clear it was not deciding the issue, expressed skepticism concerning the basis for the Trustee's assertion of a new and purportedly different wrong.

Trustee's counsel provided two explanations of this new purported wrong. First, he argued that a "finding of willful blindness leading to [Defendants] paying [back the avoided transfers means Ascot Partners] should be . . . relegated to being paid at the end of the day when everybody else who in that customer status and did not act with willful blindness, gets fully reimbursed." *Id.* at 47:23-48:4. In response, the Court rightly asked "[i]f [Defendants] make their peace by making payment for their wrong, why should they be in a different position than anybody else?" *id.* 48:5-7, and suggested that "it sounds like [the Trustee is] trying to get a double, two remedies for the same [wrong]" *id.* 49:2-4.

Trustee's counsel's second explanation of this purported second wrong fared no better: "what Mr. Merkin did over the course of two decades was to allow this Ponzi scheme to go on, he helped it, he fostered it, that's what we intend to prove." *Id.* at 52:12-14. Later he repeated that "[t]hey engaged in activity that over a long period of time enhanced a Ponzi scheme, let it go on,

get it there, made it worse." *Id.* at 55:21-23. The Court rightly characterized this new wrong as "[s]ound[ing] like an aiding and abetting claim and that's not a claim in this case." *Id.* at 56:1-2. The Court, without deciding, ultimately indicated that "[i]t just doesn't sound right to me that you can get essentially two remedies for the same wrong. If they pay you whatever it is, the $280 million, the estate is made whole and they're like every other creditor." *Id.* at 55:15-18.

Trustee's counsel was forthcoming about the reason for asserting this new argument—"[t]here's no leverage on [Defendants] to settle this case," *id.* 50:10-11, if the Court were to properly apply its and Second Circuit precedent and allow Ascot Partners to share in the estate with the other creditors after returning any avoided fraudulent transfers. The Trustee's desire for settlement leverage provides no basis to give him a second recovery to which he is not entitled.

## **ARGUMENT**

"Motions *in limine* are appropriate for evidentiary or 'purely legal . . . non-record dependent legal issues.'" *Summit Props. Int'l, LLC v. LPGA*, No. 07 Civ. 10407, 2010 U.S. Dist. LEXIS 128825, at *5 (S.D.N.Y. Dec. 6, 2010) (quoting *Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010)); *see Fed. Ins. Co. v. Mertz*, No. 12-cv-1597, 2016 U.S. Dist. LEXIS 4019, at *15 (S.D.N.Y. Jan. 12, 2016) ("[I]t is appropriate for a court to decide purely legal questions on a motion *in limine*. . . ."). Courts regularly grant motions *in limine* to preclude a party seeking certain remedies at trial, including equitable remedies when legal remedies are coextensive. *See Summit Props.*, 2010 U.S. Dist. LEXIS 128825, at *27 (granting motion *in limine* precluding plaintiff from "offering evidence or theories concerning its claim for unjust enrichment as a quasi-contract theory of recovery" at trial for breach of contract); *see also County of Suffolk v. Amerada Hess Corp. (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.)*, 517 F. Supp. 2d 662, 666-67 (S.D.N.Y. 2007) (treating defendants' motion "as to a particular *remedy*," punitive

damages, "as a motion *in limine*" and precluding plaintiff from arguing the availability of punitive damages).

Because there are no circumstances in which the Court would reach the Trustee's equitable subordination claim, the Trustee should be precluded from seeking double recovery on that theory at trial.

## I.    IF THE TRUSTEE'S FRAUDULENT TRANSFER CLAIM FAILS, THE EQUITABLE SUBORDINATION CLAIM FAILS

The Trustee cannot equitably subordinate without, at minimum, making the showing required to recover on his fraudulent transfer claim. If his fraudulent transfer claim fails, the equitable subordination claim necessarily fails as well.

As this Court has held, "[i]t is well-settled that equitable subordination is an alternative to a monetary recovery for the creditor's wrongdoing." *Merkin,* 515 B.R. at 160. The Trustee has repeatedly admitted as such. *See* Tr. SJ Opp. at 67 (equitable subordination "is plead in the alternative to [the Trustee's] fraudulent transfer claims."); *id.* at 5 ("the Trustee seeks, in the alternative, equitable subordination of Ascot Partners' SIPA claim under section 510(c)")); SJ Tr. at 72:19-20 (equitable subordination is "an alternative remedy"). To show the purported wrongdoing required for the remedy of equitable subordination, the Trustee must make, at a minimum, the same showing at issue in the fraudulent transfer claim. *Merkin,* 515 B.R. at 158 (holding that because the Trustee had adequately pled Ascot "received the transfers in bad faith . . . the [Third Amended Complaint] adequately pleads inequitable conduct."). The Trustee has conceded this point. *See* Tr. SJ Opp. at 3 ("a claim may be subordinated in this liquidation proceeding upon a showing of the ***very same conduct*** required to sustain the Trustee's avoidance claims—willful blindness to facts suggesting a high probability of fraud.") (emphasis added).

- 10 -

Thus, if the Trustee cannot recover on its fraudulent transfer claim, the equitable subordination claim also fails.

## II. IF THE TRUSTEE SUCCEEDS IN AVOIDING THE FRAUDULENT TRANSFERS, THE EQUITABLE SUBORDINATION CLAIM IS MOOT

If the Trustee succeeds on his fraudulent transfer claim, there is no circumstance in which he can equitably subordinate any claim of Ascot Partners. The granting of a legal remedy for the wrong on which an equitable subordination claim is based renders the Trustee's "request for equitable subordination . . . moot." *Hirsch v. Pennsylvania Textile Corporation, Inc. (In re Centennial Textiles)*, 227 B.R. 606, 610 (Bankr. S.D.N.Y. 1998) (Bernstein, J.).[6] Or as the Court succinctly put it, the Trustee is "going to get disallowance if they win, and Ascot [Partners] doesn't pay them. And if Ascot [Partners] pays them, they've got their remedies." SJ Tr. at 37:12-14.

If the Trustee obtains a judgment avoiding fraudulent transfers to Ascot Partners and that judgment is not satisfied, Ascot Partners' claims against the estate will be disallowed pursuant to section 502(d). *See Merkin*, 515 B.R. at 160 ("If the Trustee proves that the defendants received fraudulent transfers as initial or subsequent transferees, their claims will be disallowed under Bankruptcy Code § 502(d).") (citation omitted). "Disallowance under § 502(d) provides broader relief than equitable subordination." *Id.* (citation omitted). Accordingly, as the Trustee has conceded, "there's no circumstance under which [equitable subordination would be applicable] if one of [Defendants] didn't repay, because then [the Trustee would] get full disallowance under 502(d)." SJ Tr. at 73:8-12.

On the other hand, if Defendants pay the avoided amount, equitable subordination is not available. As the Court put it "if Ascot pays them, they've got their remedies. So equitable

---

[6] Because success on the fraudulent transfer claim wholly moots the equitable subordination claim, the Trustee cannot simply elect to equitably subordinate rather than avoid the transfers unless he drops the avoidance claim in its entirety and proceeds only against Ascot Partners and its investors.

subordination's just a red herring in the case." *Id.* at 37:13-15. Relying on its own considerable precedent, the Court held that "[i]t is well-settled that equitable subordination is an alternative to a monetary recovery for the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a claim based on the same wrong." *Merkin,* 515 B.R. at 160; *see Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*, 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) (Bernstein, J.) (same); *Centennial Textiles*, 227 B.R. at 611 (same); *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*, 210 B.R. 508, 517 (Bankr. S.D.N.Y. 1997) (Bernstein, J.) (same). *See also Austin v. Chisick (In re First Alliance Mortg. Co.)*, 298 B.R. 652, 666 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ("[O]nce a party has obtained money damages, that same party may not also obtain equitable subordination based on the same conduct."); *Century Glove, Inc. v. Iselin*, 151 B.R. 327, 332 (Bankr. D. Del. 1993) (citing *In re Kansas-City Journal-Post Co.*, 144 F.2d 791, 801 (8th Cir. 1944)) ("A debtor may not obtain both equitable subordination and an award of money damages which would compensate it for the damages resulting from the same conduct.").

The Trustee conceded that "if [Defendants] pay, they're entitled to their claim." SJ Tr. at 74:25-75:1; *see* Tr. SJ Opp. at 67 ("Should the Trustee avoid and recover all of the transfers he seeks, the Trustee does not disagree that equitable subordination could be moot.") But now, on the eve of trial, he argues he should be entitled to double recovery and "could literally take the money [recovered after success on the fraudulent transfer claim] and still subordinate [Ascot Partners'] claims." MIL Tr. at 47:15-16. He asserts that a "finding of willful blindness leading to [Defendants] paying [back the avoided transfers means Ascot Partners] should be . . . relegated to being paid at the end of the day when everybody else who in that customer status and did not act with willful blindness, gets fully reimbursed." *Id.* at 47:23-48:4.

- 12 -

The Trustee's attempt to double recover is contrary not only to this Court's numerous decisions on the issue, but also Second Circuit precedent and core principals of the bankruptcy code and its predecessor statute. Once the recipient has returned a fraudulent transfer to the debtor, its claims are entitled to be on equal footing with the claims of all other similarly situated creditors.

*First Trust & Deposit Company v. Receiver of Salt Springs National Bank (In re Onondaga Litholite Co.)* is on all fours. 218 F.2d 671 (2d Cir. 1955). That case concerned a defendant bank that had lent funds to debtor and became a voting trustee of debtor after debtor's default on those loans. *Id.* at 672-73. Defendant also possessed mortgage bonds issued by the debtor, and upon debtor's default on those bonds, foreclosed on and ultimately bought debtor's property through a foreclosure sale. *Id.* at 673. That foreclosure sale was found to be a fraudulent transfer, and defendant repaid the full amount of the transfer to the trustee in bankruptcy. *Id.* A creditor then brought an action to subordinate defendant's claim, and a referee found that defendant, as "a transferee of a fraudulent conveyance [was] not entitled to share equally with other creditors on general equitable principals." *Id.* The District Court affirmed, but the Second Circuit reversed, holding that:

> "[T]he Bankruptcy Court was without power in the circumstances of this case, to order the subordination of the appellant's claim . . . If a creditor having a valid common claim free of equitable infirmities, in an effort to obtain satisfaction of his claim or security therefor, accepts a conveyance of assets of his debtor—later the bankrupt—with actual intent thereby to defraud the debtor's other creditors, nevertheless, ***if after adjudication he surrenders the assets thus acquired to the court, he may share on a parity with other creditors.***

*Id.* at 673 (emphasis added). This is very much still the law. *See Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 330 (Bankr. S.D.N.Y. 2013) (On "the question whether the transferee of an intentional fraudulent conveyance can recover on a proof of claim, [courts] seem to have uniformly answered this question in the affirmative.") (citing *Onondaga* and collecting

- 13 -

cases); *In re Best Prods. Co.*, 168 B.R. 35, 58 (Bankr. S.D.N.Y. 1994) ([T]his much is unassailable: to the extent that [defendants] gave consideration to the debtor . . . [they] would have a claim which would be allowable so long as they satisfied the judgment arising out of the fraudulent transfer action.").

Any double recovery by the Trustee also would be contrary to the equitable, non-punitive nature of equitable subordination. "It is well established that equitable subordination is an equitable remedy and that a claim should be subordinated 'only to the extent necessary to offset the harm which the bankruptcy and its creditors suffered on account of the inequitable conduct.'" *In re Aéropostale, Inc.*, 555 B.R. 369, 414 n.29 (Bankr. S.D.N.Y. 2016) (citation omitted); *see 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994) (Bernstein, J.) ("[Equitable subordination is remedial, not penal . . . and a claim will be subordinated only to the extent necessary to offset the harm that resulted.") "The scope of the remedy is, therefore, limited by the extent of the injury, and not by the shocking nature of the claimant's conduct." *80 Nassau Assocs.*, 169 B.R. at 840. The Trustee cannot recover fraudulent transfers and equitably subordinate based on the same conduct because the result would be inequitable.

The inequity would be compounded here because Ascot Partners is one of the largest net losers in Madoff's Ponzi scheme, and recovery on its claims would benefit its approximately 300 innocent investors who were defrauded by BLMIS. The Trustee clearly thought allowance of claims after fraudulent transfers were repaid was the equitable result when he settled with Ariel Fund Ltd. and Gabriel Capital Ltd. The Trustee asserted claims against these former defendants in this action based on ***exactly the same*** evidence of purported willful blindness against the remaining Defendants. Nevertheless, the Trustee settled on terms in which he recovered

- 14 -

approximately $35 million in allegedly fraudulent transfers, and allowed those Funds' nearly $350 million combined net equity claims and granted a springing claim under section 502(h) for a substantial portion of the approximately $35 million settlement payment.[7]

Because double recovery by the Trustee would be contrary to the law and inequitable, the Trustee should be precluded from seeking such double recovery at trial.

### III.   THE TRUSTEE HAS NOT PROPERLY ASSERTED AND CANNOT PROVE AN INDEPENDENT BASIS FOR EQUITABLE SUBORDINATION

In addition to explicitly seeking a double recovery based on the fraudulent transfer claim, the Trustee's counsel asserted at the first oral argument on the motions *in limine* that there was an independent basis for equitable subordination that would allow the Trustee to both recover the fraudulent transfers and equitably subordinate.  No such basis exists.

The Trustee's counsel argued that equitable subordination was warranted because "what Mr. Merkin did over the course of two decades was to allow this Ponzi scheme to go on, he helped it, he fostered it, that's what we intend to prove," MIL Tr. at 52:12-14, and "[t]hey engaged in activity that over a long period of time enhanced a Ponzi scheme, let it go on, get it there, made it worse" *id.* at 55:21-23.

As the Court noted, these assertions "[s]ound[] like an aiding and abetting claim and that's not a claim in this case."  *Id.* at 56:1-2.  The Third Amended Complaint neither asserts an aiding and abetting claim nor includes any specific factual allegations that would support one.  Indeed, the Trustee has never articulated this theory to the Court in any fashion and has not—because he cannot—identify any witnesses or testimony to prove this newly-concocted and plainly time-barred theory of Defendants' wrongdoing.  In any event, the Trustee has wholly failed to articulate

---

[7]   The Trustee also thought it equitable to allow a section 502(h) springing claim based on the recovery of fraudulent transfers consisting of, in part, fictitious profits, in his recent settlement with Lagoon Investment Limited. (Adv. Proc. No. 08-01789, Dkt. No. 16269).

how this purported aiding and abetting would constitute "misconduct [that] injured the creditors of the estate or conferred an unfair advantage on the claimant" sufficient to justify the rare imposition of equitable subordination on a non-insider, non-fiduciary creditor. *Merkin,* 515 B.R. at 158. *See, e.g., Austin*, 298 B.R. at 666-68 (holding that defendant's aiding and abetting fraud was not "sufficiently egregious to justify equitable subordination of a non-insider, non-fiduciary creditor" because it "did not deplete or otherwise adversely impact [debtor's] assets, nor was [defendant's] conduct related to the acquisition or assertion of its secured claim against the [debtor's] estate.").

Most troubling about the Trustee's new and unsupportable position is Trustee counsel's open admission to the Court that the reason for pursuing it was his belief that "[t]here's no leverage on [Defendants] to settle this case." MIL Tr. at 50:10-11. Trustee's counsel cannot manufacture settlement leverage based on erroneous legal theories. Because no circumstances exist in which equitable subordination will be relevant to the outcome of this action, the Trustee should be precluded from seeking to double recover on that theory at trial.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this motion *in limine* to preclude the Trustee from seeking double recovery through equitable subordination.

- 16 -

Dated:  New York, New York            NORTON ROSE FULBRIGHT US LLP
       August 23, 2017

By:_____/s/ *Judith A. Archer*_____
         Judith A. Archer
Sarah O'Connell
David B. Schwartz
1301 Avenue of the Americas
New York, New York  10019
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver
for Defendant Ascot Partners, L.P., and Ascot
Fund Ltd.*

DECHERT LLP

By: _/s/ *Neil A. Steiner*_____
Andrew J. Levander
Neil A. Steiner
Daphne T. Ha
Mariel R. Bronen
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com
daphne.ha@dechert.com
mariel.bronen@dechert.com

*Attorneys for Defendants J. Ezra Merkin and
Gabriel Capital Corporation*