# EXHIBIT 1

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-99000-smb

4   Adv. Case No. 09-01182-smb

5   - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

8           Debtor.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - x

10  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF

11  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

12             Plaintiff,

13         v.

14  MERKIN ET AL.,

15             Defendants.

16  - - - - - - - - - - - - - - - - - - - - - - - - - - x

17             U.S. Bankruptcy Court

18             One Bowling Green

19             New York, NY  10004

20             June 1, 2016

21             10:01 AM

22

23  B E F O R E :

24  HON STUART M. BERNSTEIN

25  U.S. BANKRUPTCY JUDGE

1    Hearing re:   Motion for Summary Judgment

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   BAKER & HOSTETLER LLP

 4        Attorneys for Trustee, Irving H. Picard Esq.

 5        45 Rockefeller Plaza

 6        New York, NY 10111

 7

 8   BY:  LAN HOANG

 9        DAVID J. SHEEHAN

10

11   NORTON ROSE FULBRIGHT US LLP

12        Attorneys for Receiver of Ascot Partners

13        and Ascot Fund

14        666 Fifth Avenue

15        New York, NY 10103

16

17   BY:  JAMI MILLS VIBBERT, ESQ.

18        JUDITH A. ARCHER, ESQ.

19

20

21

22

23

24

25
```

**Page 4**

```
 1   DECHERT LLP

 2         Attorneys for Merkin Defendants

 3         1095 Avenue of the Americas

 4         New York, NY 10036

 5

 6   BY:  ANDREW J. LEVANDER

 7         NEIL A. STEINER

 8

 9   APPEARING TELEPHONICALLY

10   PATRICK MOHAN

11   GEORGE BRICKFIELD

12   MICHAEL FABIANO

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 36

1     sequence of what happens.

2              MR. LEVANDER:  Okay.  We respectfully disagree

3     about that, but I understand Your Honor's position.

4              THE COURT:  There's a reason it hasn't been cited

5     in the Southern District since 1973 (indiscernible).

6              MR. LEVANDER:  Okay.  So let me talk about

7     subordination (indiscernible).

8              THE COURT:  Okay.  Well, it rises and falls with

9     the willful blindness issue, I guess.

10             MR. LEVANDER:  Well, let me make two other points.

11    First, I just want to reserve the legal issue that we think,

12    under Delaware law, under the partnership claim, they

13    haven't satisfied the partnership exception --

14             THE COURT:  But part of that assumes that they can

15    get paid by the primary obligor.

16             MR. LEVANDER:  But it also turns on when you get a

17    judgment against the general partner of a partnership, under

18    Delaware law.  It's in our brief.

19             THE COURT:  Okay.

20             MR. LEVANDER:  Subordination, in our view, is at

21    least as tough as the willful blindness, and we think it has

22    to, as I think you've used the phrase, shocks the

23    conscience.  Nothing about what's in this discussion, even

24    if you accept all the differences --

25             THE COURT:  Well, but (indiscernible) held that

Page 37

```
 1    willful blindness was sufficient to sustain a claim of

 2    equitable subordination also in Katz, I think.

 3              MR. LEVANDER:  In the Katz case, on a motion to

 4    dismiss, without examining the facts.  We now have the

 5    facts, and he didn't say automatically, willful blindness

 6    equals subordination.  But also, there's a sort of -- at

 7    this point, they shouldn't be able to have it both ways.  If

 8    they're going to seek subordination, that means they're not

 9    going to get the $280 million, and so therefore there's no

10    claim against the --

11              THE COURT:  They really don't need subordination,

12    because they're going to get disallowance if they win, and

13    Ascot doesn't pay them.  And if Ascot pays them, they've got

14    their remedies.  So equitable subordination's just a red

15    herring in the case.  Doesn't mean it's insufficient, but

16    it's just a red herring.

17              MR. LEVANDER:  Yeah, but I think it should be

18    dismissed, Your Honor.  Thank you very much.

19              THE COURT:  Okay, thank you.  Who's next?

20              MS. ARCHER:  I am, Your Honor.

21              THE COURT:  Please, don't repeat what's been

22    argued.

23              MS. ARCHER:  I will do my best.

24              THE COURT:  Okay, I don't know what's left.  Go

25    ahead.
```

1          MS. ARCHER:  Just a few things from Ascot's

2     perspective.  And Your Honor, Judith Archer, counsel for

3     receiver of Ascot Partners, and also for Ascot Fund.  Now,

4     as Your Honor pointed out, Mr. Levander has already

5     addressed the willful blindness issue in Count 2, so I won't

6     go into that again.  So I will move into Count 9, which is

7     the subsequent transfer claim against Ascot Partners and

8     Ascot Fund.  Under that Count, the trustee seeks to recover,

9     according to (indiscernible) their amended complaint,

10    subsequent transfers of $225 million from Ascot partners,

11    and according to his expert report, between $21 million and

12    $33 million from Ascot Fund.  So our position is, as Your

13    Honor noted earlier, we believe that the trustee cannot

14    establish willful blindness, that summary judgment is

15    appropriate, and therefore the subsequent transfer claims

16    would fall with that determination.  If they don't, however,

17    they still should be dismissed as against Ascot Partners and

18    Ascot Fund.  Now, the trustee can cede --

19          THE COURT:  I understand the argument with Ascot

20    Partners, (indiscernible), but why should it be dismissed

21    with Ascot Fund?

22          MS. ARCHER:  Well, as Your Honor noted in the

23    decision on the motion to dismiss, any knowledge of Mr.

24    Merkin should not be imputed to Ascot Fund, which became a

25    limited partner in Ascot Partners in 2003, many years before

1    the beginning of the two-year applicable transfer period.

2              THE COURT:  But why did, during the period that

3    Merkin was involved -- wasn't a partner, but was in control

4    of Ascot Fund, Ascot Fund acquired knowledge, which led it

5    to suspect a high probability of fraud.  Should I disregard

6    that?

7              MS. ARCHER:  Yes.

8              THE COURT:  Simply because after 2003, Merkin

9    wasn't there anymore?

10             MS. ARCHER:  Ascot Fund's legal status changed as

11   of 2003.  It became an investor --

12             THE COURT:  I understand.  But people have

13   knowledge, it has institutional knowledge, arguably.

14             MS. ARCHER:  We certainly have belief they had any

15   institutional knowledge --

16             THE COURT:  I understand that.

17             MS. ARCHER:  But before that point, there was a

18   point in time where there was a board of directors, there

19   were other advisors.  The only thing that existed before

20   2003 was an agreement between Ascot Fund and GCC, that it

21   would be an investment advisor.  Merkin was not a general

22   partner even of Ascot Fund at that point.  So we don't

23   believe even before that time any of Merkin's knowledge can

24   be inputted, but we certainly don't think that that

25   knowledge, to the extent that there is any -- because the

Page 40

1    trustee had laid out no evidence with respect to the timing

2    of that -- and when Ascot Fund gained any specific knowledge

3    through imputation or otherwise.  So the trustee had that

4    burden on this motion, and has failed to do that.  So we

5    don't believe that any purported knowledge, well before

6    Ascot Fund became a limited partner, should be implicated in

7    any case after 2003, and certainly after 2006, which is the

8    applicable period for the transfers.  And those are the only

9    transfers that Ascot Fund, the trustee has a claim against

10   Ascot Fund for.

11            The trustee has, I will say, mischaracterized the

12   evidence with respect to Ascot Fund and its relationship

13   with Merkin.  The trustee contends that Mr. Merkin, after

14   2003, continued to direct the fund, and that's simply not

15   the case.  The only evidence that the trustee submits -- and

16   it is the trustee's burden on this point -- is that Mr.

17   Merkin, in his role as general partner of Ascot Partners,

18   made investment decisions for Ascot Partners, which

19   necessarily meant he made investment decisions for all of

20   the limited partners, including Ascot Funds.  There were

21   some ministerial things that people at GCC took care of.

22   There's no evidence that Mr. Merkin had any separate

23   relationship other than his GP position at Ascot Partners

24   for Ascot Fund, and there's no evidence that there was

25   anything other than ministerial functions that GCC performed

**Page 41**

1    for Ascot Fund, and other limited partners.

2            The evidence in the record shows that the

3    directors of Ascot Fund decided, made the determination to

4    invest in Ascot Partners, in the master feeder structure,

5    and at that point, there was a different relationship with

6    Mr. Merkin and with GCC.  That is not sufficient to impute

7    the knowledge of Mr. Merkin, whenever he acquired it, to

8    Ascot Fund, for transfers that occurred between 2006 and

9    2008.  There's authority in our papers that limited partners

10   have an investor-like role, and that supports what we've

11   said, and this Court recognized in the motion to dismiss

12   that the appropriate timeframe is after the 2006 transfers,

13   and not going all the way back to before, when Ascot Fund

14   had a direct account with BLMIS.  I won't go back to the

15   Ascot Partners thing, I believe Your Honor understands that,

16   and the trustee has conceded that Ascot Partners is not a

17   subsequent transferee.  It doesn't even address our argument

18   with respect to that.

19           And there also is authority that imputation is an

20   issue that can be decided on summary judgment.  The trustee,

21   as he has done for every one of his arguments in his

22   opposition, has said summary judgment is appropriate here,

23   but this really an issue of whether there are disputed

24   facts, and the evidence that the trustee has put forth.

25   There is none with respect to Ascot partners as a subsequent

Page 42

1    transferee, and it is severely deficient with respect to

2    Ascot Fund in its capacity as a limited partner.  And so we

3    believe that summary judgment is appropriate.

4            We agree with Your Honor that the equitable

5    subordination claim is a red herring, and that it would fall

6    based on the willful blindness, although we agree with Mr.

7    Levander that there is not necessarily an actual equality

8    between willful blindness and the kind of inequity that

9    would have to exist here for Ascot Partners, which is a non-

10   insider, and Your Honor has recognized that in that case,

11   the circumstances for equitable subordination are few and

12   far between.  The trustee admits that he can't recover, in

13   both respects.  But there's one issue that the trustee

14   implies, or vaguely refers to in his papers that I'd like to

15   address.  So the trustee has to establish inequity, that the

16   misconduct resulted in injury to the creditors, and that

17   equitable subordination would not be inconsistent with the

18   Bankruptcy Act.  That last prong fails when the trustee

19   seems to claim that he may or may not, on his whim, argue

20   that Ascot's net equity claim should be equitably

21   subordinated.

22           So we believe that if the trustee were to recover

23   on the $280 million transfer claim, as Your Honor pointed

24   out in the motion to dismiss decision, that once those

25   monies are paid, or to the extent, since this is the

Page 43

1      trustee's MO in this, the trustee permits a setoff, that

2      would give rise to a springing claim under 502(h) and that

3      that cannot be equitably subordinated, because that would be

4      a double recovery, which is barred by the Bankruptcy Act.

5      To the extent that the trustee attempts to equitably

6      subordinate the net equity claim, which there's some

7      indication in his briefing that he might try to do, although

8      there's nothing specific -- and this is a time where he

9      should have been specific on this.  We made the showing on

10     our moving papers there's nothing in his opposition where he

11     tries to say how much of a net equity claim, whether it's

12     all of it or part of it, and how much does he intend to

13     offset?  He throws out a $550 million transfer number for

14     Ascot Partners --

15             THE COURT:  But you don't have a net equity claim

16     if you lose and don't return the transfer.

17             MS. ARCHER:  Well, but if we return the transfer,

18     then we do have a net equity claim in excess of $226

19     million.

20             THE COURT:  But then the trustee has gotten his

21     remedy.

22             MS. ARCHER:  I agree with you.  But there is some

23     implication -- and I'm happy to stop, Your Honor, if you

24     tell me that's the end of it -- but the trustee seems to

25     imply that he can subordinate, even if he recovers our net

Page 44

1    equity claim.  And that would be a double recovery, because

2    that net equity calculation is a comprehensive calculation

3    of the ins and outs in the accounts of monies invested, the

4    receptions over a 15-plus-year period.  And that includes

5    the two years of the transfer.  So if the trustee were to

6    try to subordinate the net equity claim, then that would be

7    a violation of the Bankruptcy Code, and he would not be able

8    to make out an equitable subordination claim.  No claim,

9    with respect to subordinating a net equity claim, should be

10   permitted, and summary judgment should be clear and granted

11   on that.  He should not be allowed to come back at trial and

12   somehow say that even if you recovered on an avoidable

13   transfer, and even if we paid it all, that somehow he should

14   get to subordinate the rest of our net equity claim.

15             THE COURT:  I thought that the trustee was arguing

16   that if you have a 502(h) claim, it's a General 1 secured

17   claim, but not a claim against the customer estate.

18             MS. ARCHER:  Your Honor, the trustee attempted to

19   argue that as well, but he completely ignored the fact that

20   this is a SIPA proceeding, that there is a customer estate,

21   and that Ascot Partners is a customer, is one of the largest

22   net losers.  So there is no basis for the trustee somehow to

23   say that we should be thrown in with all of the general

24   unsecured creditors.  That's not what SIPA says, it's not

25   what the Bankruptcy Act says, and it's not what any of the

Page 45

1    cases say.

2              THE COURT:  Okay.

3              MS. ARCHER:  If there's nothing else, Your Honor?

4              THE COURT:  No.

5              MS. ARCHER:  Thank you.

6              THE COURT:  Why don't we take a five-minute

7    recess, and then I'll hear from the trustee?

8              (Recess)

9              CLERK:  Please be seated.  Let's continue.

10             THE COURT:  All right.

11             MS. HOANG:  Good morning, Your Honor.  Again, Lan

12   Hoang, on behalf of the trustee, Irving Picard.  This

13   morning, you've heard the defendant argue at length that

14   it's the trustee's burden of proof on this motion for

15   summary judgment.  It's not.  It's the defendant's burden of

16   proof to come forth before this Court and to say that there

17   is no disputed issue of material fact, and that they're

18   entitled to summary judgment on their affirmative defense.

19   548(c) is an affirmative defense.

20             THE COURT:  Well, you have a burden -- they can

21   also show that you can't sustain the burden of proof.  In

22   other words, there's no evidence for you to prove that he

23   was willfully blind.

24             MS. HOANG:  The Trustee need only rebut the proofs

25   that the Defendants put forth on the affirmative defense of

Page 72

1   aren't recoverable?

2           MS. HOANG:  No, Your Honor.

3           THE COURT:  Okay.

4           MS. HOANG:  We've -- we concede that point.  They

5   are an initial transferee.  To the extent we get a judgment

6   against them as an initial transferee, there's -- it seems

7   circular to try to get them as a subsequent transferee as

8   well.

9           THE COURT:  All right.

10          MS. HOANG:  On the subsequent transfer issues, I

11  think the argument on lack of good faith, on willful

12  blindness, there's factual issues related to 548 on the

13  initial transfer to Ascot Partners for the very same reason

14  the subsequent transfer claims against Mr. Merkin, GCC, and

15  Ascot Funds should also be denied summary judgment.

16          For equitable subordination, as well --

17          THE COURT:  Well, it's never going to come to

18  that, though.

19          MS. HOANG:  We don't know.  It's an alternative

20  remedy.  It's not to be --

21          THE COURT:  Are there any circumstances under

22  which you could get equitable subordination if you went on

23  the willful blindness claim and (indiscernible) $280

24  million?

25          MS. HOANG:  No, Your Honor.

Page 73

```
 1                THE COURT:  Are there any circumstances under

 2     which --

 3                MS. HOANG:  For the 280 million, we're talking

 4     about right now?

 5                THE COURT:  Well, if they repay, they're the only

 6     transfer wherein they have a claim, right?

 7                MS. HOANG:  Yes, we're talking -- yes.  Yes.

 8                THE COURT:  Okay.  And there's no circumstances

 9     under which you'd have to consider equitable subordination

10     if one of them didn't repay, because then you'd get full

11     disallowance under 502(d).

12                MS. HOANG:  Yes.

13                THE COURT:  So, under what circumstances would you

14     get equitable subordination in this case?

15                MS. HOANG:  If --

16                THE COURT:  Even if they weren't willfully blind?

17                MS. HOANG:  Well, 502(d) is just -- I'm trying to

18     think of a nice -- it's just temporary, until they pay,

19     502(d).

20                THE COURT:  Right.

21                MS. HOANG:  It's -- and if they never pay, then

22     the Trustee would move to equitably subordinate.  It's a --

23                THE COURT:  But if they never pay, their claim is

24     disallowed.

25                MS. HOANG:  Correct.
```

Page 74

1              THE COURT:  Why would you equitably subordinate a

2       disallowed claim?

3              MS. HOANG:  If we equitably subordinate, then the

4       money goes into the final customer property, because, if we

5       just say, "You know what?  You don't get the benefit of

6       that, that's" --

7              THE COURT:  All I'm saying is, if they don't pay,

8       if you win and they don't pay, then there's no equitable

9       subordination.  Their claim is disallowed.  That's fair.

10             MS. HOANG:  We would be okay with that, too, if

11      the --

12             THE COURT:  So, I'm asking:  are there any

13      circumstances under which there would ever be equitable

14      subordination of their claim?

15             MS. HOANG:  We don't know that right now.

16             THE COURT:  I'm asking you.  You brought the

17      claim.

18             MS. HOANG:  I don't know that.  I'm hoping they do

19      pay.  I mean, if they can't --

20             THE COURT:  But if they pay, how could you

21      equitably subordinate their claim?

22             MS. HOANG:  We wouldn't.  That's -- it's an

23      alternative remedy.

24             THE COURT:  Right.

25             MS. HOANG:  If they pay, they're entitled to their

1    claim.

2            THE COURT:  And if they don't, their claim is

3    disallowed, right?

4            MS. HOANG:  Yes.

5            THE COURT:  Okay.

6            MS. HOANG:  I think Your Honor's gone through

7    their arguments with them on whether they're entitled to

8    this set-off, or this spring claim.  That's not an issue

9    we're here on.

10           General partner liability:  I don't think that

11   issue is ripe here as well, because you need a judgment.

12   And one of the paragraphs that are pointed out by -- in Mr.

13   Merkin's brief is that, while the general partner liability

14   is -- kicks in after you have a judgment and after you move

15   that the partnership can't pay, we're not there yet.  And

16   this is an issue that we would consider at trial to be

17   deferred until after trial.

18           THE COURT:  Okay.

19           MS. HOANG:  If Your Honor has no --

20           THE COURT:  Thank you very much.

21           MS. HOANG:  Thank you.

22           MR. LEVENDER:  Short rebuttal?

23           MS. HOANG:  Short.

24           MR. LEVENDER:  Thank you, Your Honor.  Brief.

25   Brief.  I promise to be brief.