# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 09-01182 (SMB) |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

        **BAKER & HOSTETLER LLP**
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201

        *Attorneys for Irving H. Picard,*
        *Trustee for the Substantively Consolidated SIPA*
        *Liquidation of Bernard L. Madoff Investment*
        *Securities LLC and the Estate of Bernard L.*
        *Madoff*

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Motions for Summary Judgment filed by Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC," collectively, the "Merkin Defendants"), and by Ascot Partners L.P., ("Ascot Partners") and Ascot Fund Ltd. ("Ascot Fund," collectively, the "Ascot Defendants" and together with the Merkin Defendants, "Defendants").

## PRELIMINARY STATEMENT

The overarching issue in this case is Merkin's state of mind—whether he was willfully blind to facts suggesting a high probability of fraud at BLMIS. Defendants have chosen to burden this Court with motions that reveal numerous issues of fact and credibility. As this Court has previously cautioned, state of mind and credibility are classic issues of fact that are inappropriate for resolution by summary judgment. Summary judgment would be appropriate, therefore, only if the Trustee had offered no evidence to support the specific allegations in the operative pleading or if all of the Trustee's evidence somehow had been conclusively disproved. Defendants have made no such showing.

The overwhelming evidence, not addressed by Defendants, shows that Merkin subjectively knew and understood various red flags suggesting fraud at BLMIS. And it shows that Merkin demonstrated his awareness of the red flags by trying unsuccessfully to explain away trading impossibilities, consistent returns year after year and particularly during periods of significant market downturns, and other glaring indicia of fraud at BLMIS in his conversations with third parties. Tellingly, what is missing is any evidence that Merkin conducted any "diligence" consistent with industry custom or practice, followed up on a single warning that was

expressed to him, or attempted to verify the information from BLMIS with any independent sources.

Defendants principally rely upon Merkin's denial that he was not willfully blind. Not only is this testimony unsupported or contradicted by the evidence, it merely confirms that disputed material facts regarding Merkin's state of mind exist and can only be resolved by the factfinder. To deflect from the numerous fact and credibility issues, Defendants resort to challenging the facial sufficiency of the Trustee's pleading and raising a litany of red herrings about what the Trustee did not plead. For example, Defendants argue that summary judgment must be granted because the Trustee has not alleged that Merkin received payments from BLMIS or that he backdated trades in the Merkin Funds' accounts (defined below). But this Court already has determined that the Trustee's pleading sufficiently alleges that Merkin was willfully blind to the fraud at BLMIS. And on those well-pleaded allegations, the Trustee has adduced more than sufficient evidence of Merkin's willful blindness to sustain his avoidance and recovery claims.

The other arguments that Defendants rehash on summary judgment have already been rejected by this Court as insufficient as a matter of law. For example, Defendants argue that the "red flags" the Trustee alleges were publicly known, not unique to Madoff, and do not show a high probability of fraud. But this Court already has considered and rejected that argument, finding that the complaint alleges that Merkin "saw them, understood them, and purposely ignored them." *Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*), 515 B.R. 117, 144 (Bankr. S.D.N.Y. 2014) ("*Merkin*"). Similarly, Defendants repeat their argument that Merkin's purported personal exposure of $110 million to BLMIS refutes the notion that he was willfully blind, even though this Court already noted that Merkin's "substantial fees can explain why they

2

would turn a blind eye to a fraud." *Id.* at 143. The parties have adduced significant conflicting evidence on all of the allegations addressed in this Court's prior decision. Where the parties advance conflicting evidence on sustained allegations, such evidence should not be summarily dismissed on summary judgment but resolved by a factfinder.

For the same reasons that a factfinder must determine the willful blindness issues, a factfinder must determine the Trustee's equitable subordination claim. Decisions of the District Court and this Court state that a claim may be subordinated in this liquidation proceeding upon a showing of the very same conduct required to sustain the Trustee's avoidance claims—willful blindness to facts suggesting a high probability of fraud. Thus, the same credibility and state of mind arguments that require denial of summary judgment on the avoidance claims also require denial of summary judgment on the equitable subordination claim.

Defendants' remaining arguments are meritless. Defendants have repeatedly argued to this Court that they can "setoff" the Trustee's avoidance claims against a potential net equity claim and a claim under section 502(h) of the Bankruptcy Code, meaning that they would not actually have to pay any money to the Trustee out of their own pockets to satisfy the judgment. But that is not how the Bankruptcy Code works. As this Court has already explained to Defendants, there is no setoff under section 502(d). If the Trustee obtains a judgment of avoidance against Ascot Partners, he is legally entitled to disallow Ascot Partners' net equity claim under section 502(d) until the judgment amount is repaid *in full* to the estate. The Trustee may seek payment of this judgment amount from Ascot Partners, Merkin as its general partner, or a portion of this amount from any of the subsequent transferees—simultaneously. And quite simply, until all outstanding amounts are repaid to the estate, there is no net equity claim to be had. Finally, any right to a section 502(h) claim and the estate against which it would be

3

asserted—the customer property estate or the general estate—has yet to be resolved by this Court.

Defendants have failed to discharge their burden on summary judgment. As the Trustee has set forth ample evidence to support his allegations, he is entitled to a trial and a determination of Merkin's credibility and his state of mind. Accordingly, Defendants' motions should be denied.

## **PROCEDURAL HISTORY**

The procedural history of this SIPA proceeding and facts surrounding Bernard L. Madoff's Ponzi scheme are well-known to this Court and have been recounted in numerous decisions. *Sec. Inv'r Prot. Corp. v. BLMIS* (*In re Bernard L. Madoff Inv. Sec. LLC*), 654 F.3d 229, 231-33 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 133 S. Ct. 25 (2012) ("*Net Equity Decision*").

The Trustee commenced this action on May 7, 2009 against defendants Merkin, GCC, Ascot Partners, Ariel Fund Limited ("Ariel"), and Gabriel Capital, L.P. ("Gabriel," and collectively with Ascot Defendants and Ariel, the "Merkin Funds"), for avoidance and recovery of preferential and fraudulent transfers relating to their BLMIS accounts under the Bankruptcy Code and SIPA. Compl., ECF No. 1. The Trustee amended his pleading several times, including adding Ascot Fund as a defendant. Third Amend. Compl., ECF No. 151. The operative pleading, the Third Amended Complaint ("TAC"), was filed on August 30, 2013. *See id.* Motions to dismiss the TAC were filed by Defendants in Fall 2013. Defs. Mot. Dismiss, ECF Nos. 165-69; Ascot Fund Mot. Dismiss, ECF Nos. 182-84.

On August 12, 2014, the Court entered a decision finding that although the Trustee did not sufficiently plead "actual knowledge," he did meet the pleading standard for "willful blindness." *Merkin*, 515 B.R. at 141, 146. Accordingly, the Court denied the motions to dismiss

4

the Trustee's actual fraudulent transfer claims brought under section 548(a)(1)(A), recovery claims under section 550 for initial and subsequent transfers, general partner liability claims, and equitable subordination. *See id.* at 141-46, 149, 152-53, 161. This Court granted the motions as to the Trustee's claims under section 548(a)(1)(B), section 544(b)(1), and the New York Debtor & Creditor Law, as well as the claims disallowance counts. *See id.* at 141, 156-57.

On June 23, 2015, this Court entered an order approving the settlement between the Trustee and Ariel, Gabriel, and their Receiver. Order Approving Settlement Agreement, ECF No. 270. Those parties were dismissed from this proceeding on September 9, 2015. Stip. Dismissal and Consent Order, ECF No. 282.

The remaining defendants in this action are Merkin, GCC, Ascot Partners and Ascot Fund. Third Amend. Compl., ECF No. 151. The Trustee seeks to avoid and recover $280,000,000 in initial transfers to Ascot Partners in the two years preceding December 11, 2008 (the "Filing Date") under section 548(a)(1)(A). *See id.* ¶¶ 333-37. As the general partner of Ascot Partners, Merkin is jointly and severally liable for the debts of Ascot Partners. *See id.* ¶¶ 385-86, 388. The Trustee also seeks the recovery of any subsequent transfers up to $280,000,000.[1] *See id.* ¶¶ 379-83. Finally, the Trustee seeks, in the alternative, equitable subordination of Ascot Partners' SIPA claim under section 510(c). *See id.* ¶¶ 402-08.

On October 6, 2015, Defendants moved for summary judgment. Defs. Mot. Summ. J., ECF Nos. 283-87. This opposition follows.

---

[1] Because the Trustee recovered the full amounts of the initial transfers to Ariel and Gabriel as part of the settlement with those parties, he is not seeking subsequent transfers relating to those funds. *See* Order Approving Settlement Agreement, ECF No. 270; Mot. Entry of Order Approving Settlement Agreement, ECF No. 266, Exhibit A.

5

argument that a recovery would "be negated by a claim . . . under section 502(h) is simply that—speculation." 377 B.R. 808, 815 (Bankr. S.D.N.Y. 2007). Thus, the allowance of any section 502(h) claim, the amount, and the estate against which it may be asserted are all issues for another day.

**VII. ASCOT PARTNERS' CLAIM SHOULD BE EQUITABLY SUBORDINATED**

Defendants seek summary judgment dismissing the Trustee's equitable subordination claim against Ascot Partners. Setting aside the fact that evaluating an equitable subordination claim is a fact-based inquiry not amenable to resolution on summary judgment, the evidence described above and in the Trustee's supporting documents demonstrates that Ascot Partners has engaged in exactly the type of conduct that should result in equitable subordination.

Equitable subordination is codified in section 510(c) of the Bankruptcy Code which provides in relevant part:

> (c) . . . [A]fter notice and a hearing, the court may –
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510 (c).

Claims will be subordinated under section 510(c) when (i) a claimant engaged in inequitable conduct, (ii) which conduct injured creditors of the estate or conferred an unfair advantage on the claimant and (iii) equitable subordination is consistent with bankruptcy law. *Benjamin v. Diamond* (*In re Mobile Steel Co.*), 563 F.2d 692, 699-700 (5th Cir. 1977); *see also*

65

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank* (*In re 80 Nassau Assocs.*), 169 B.R. 832, 836-37 (Bankr. S.D.N.Y. 1994).[14]

The requisite conduct required to warrant equitable subordination of a claim has been described as lawful conduct that shocks "good conscience." *In re 80 Nassau Assocs.*, 169 B.R. at 837. For non-insiders, "the proponent of subordination has the burden of proving, among other things, that the claimant engaged in egregious, improper or wrongful conduct that damages creditors." *Kalisch v. Maple Trade Fin. Corp.* (*In re Kalisch*), 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) (citing *Delphi Corp. v. Appaloosa Mgmt. L.P.* (*In re Delphi Corp.*), No. 05-44481, 2008 WL 3486615, at *22 (Bankr. S.D.N.Y. Aug. 11, 2008)). Such conduct must be "tantamount to fraud, misrepresentation, overreaching, spoliation or conduct involving moral turpitude." *Austin v. Chisick* (*In re First Alliance Mortg. Co.*), 298 B.R. 652, 667 (C.D. Cal. 2003).

This Court has already ruled that a showing of willful blindness satisfies the standard for equitable subordination. *Merkin*, 515 B.R. at 160. In *Katz*, the District Court stated that "the Trustee can subordinate the defendants' own claims against the estate only by making the same showing required under Count 1 [actual fraudulent transfer] or its equitable equivalent." *Katz Decision,* 462 B.R. at 456-57 (applying *Mobile Steel* standard); *see also Mishkin v. Siclari* (*In re Adler, Coleman Clearing Corp*. 277 B.R. 520, 554 and 567 (S.D.N.Y. 2002) (subordinating claim of defendant who knowingly closed his eyes to a fraud). Here, disputed material facts demonstrate that Ascot Partners, through Merkin, was willfully blind to facts indicating a high

---

[14] The third prong may be moot given that the Bankruptcy Code now specifically provides for equitable subordination, which it did not at the time of the *Mobile Steel* decision. *Official Comm. Of Unsecured Creditors v. Blomen* (*In re Hydrogen, LLC*), 431 B.R. 337, 360-61 (Bankr. S.D.N.Y. 2010); *Official Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.* (*In re Verestar, Inc.*), 343 B.R. 444, 461 (Bankr. S.D.N.Y. 2006).

probability of fraud at BLMIS. Accordingly, this conduct is sufficient to sustain a claim for equitable subordination in the face of a summary judgment motion.

Defendants' next argument that their conduct has not injured the creditors of BLMIS was already rejected by this Court. *Merkin*, 515 B.R. at 160. The evidence shows Defendants received transfers of more than $550 million (Third Amend. Compl. ¶ 254, ECF No. 151), making those funds unavailable for distributions to net loser customers with allowed claims. Because this harm affects the whole creditor body, the Trustee need only demonstrate that creditors were harmed in a general, concrete manner and it is sufficient to show that creditors are less likely to collect on their debts. *In re 80 Nassau Assocs.*, 169 B.R. at 840 (citing Andrew DeNatale & Prudence B. Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors*, 40 BUS. LAW. 417, 426 (1985)). As this Court found, "but for these transfers, this money would have been available for distribution to the other BLMIS investors who now find themselves net losers." *Merkin*, 515 B.R. at 160. The fact that Ascot Partners was a net loser does not alter this conclusion. *Ceretti*, 2015 WL 4734749, at *17 ("Although the Funds are net losers, the money they withdrew would have been available to innocent net losers who did not knowingly invest in a Ponzi scheme."); *Merkin*, 515 B.R. at 160 (same).

Defendants' assertion that the Trustee cannot simultaneously prosecute fraudulent transfer claims and seek equitable subordination is incorrect. The Trustee's equitable subordination claim is plead in the alternative to his fraudulent transfer claims. Should the Trustee avoid and recover all of the transfers he seeks, the Trustee does not disagree that equitable subordination could be moot. *See Hirsch v. Pa. Textile Corp. Inc.* (*In re Centennial Textiles, Inc.*), 227 B.R. 606, 610-11 (Bankr. S.D.N.Y. 1998). However, if the Trustee cannot recover some or all of the fraudulent transfers—because of statute of limitations or other

67

defenses, or any other reason—equitable subordination would be appropriate. *Merkin*, 515 B.R. at 160. Defendants' arguments in this regard are therefore, at best, premature.

Defendants' last argument, like their argument on section 502(h), relies on their failure to distinguish between settlements and litigation to a judgment. Defendants claim that because the Trustee allowed the claims of other feeder funds in settlements, the Trustee cannot seek equitable subordination of any potential claim of Ascot Partners. Not so. With this Court's approval, the Trustee can settle any of his claims in a manner that benefits the estate. *Air Line Pilots Ass'n v. Am. Nat'l Bank & Trust Co. of Chicago* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). The Trustee's settlement of claims as appropriate in no way prohibits him from pursuing similar claims against non-settling defendants. And if the parties do not reach a settlement prior to any judgment on the Trustee's claims, the Trustee is entitled to use the full force of the Bankruptcy Code to enforce that judgment, including potentially subordinating a claim against the estate where the full amount of fraudulent transfers are not repaid. Contrary to compromise, there are guarantees in litigation as to any potential claims against the estate following a judgment.

Finally, and most importantly on a summary judgment motion, determining whether equitable subordination is appropriate requires the examination of the relevant facts and circumstances of the case. *Adelphia Commc'ns Corp. v. Bank of Am., N.A.* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 69 (Bankr. S.D.N.Y. 2007) ("in the context of claims for equitable subordination "[t]he nature of the underlying conduct (and, at least arguably, any resulting injury) will have to be fleshed out as a factual matter"); *see also In re Mid-Am. Waste Sys., Inc.*, 274 B.R. 111, 126 (Bankr. D. Del. 2001) ("equitable subordination is rarely amenable

68

to resolution on summary judgment"). Because Defendants contest evidence relied upon by the Trustee in support of his equitable subordination claim, Defendants have failed to show that there is no genuine issue of material fact. Defendants are thus not entitled to judgment as a matter of law.

## CONCLUSION

The evidence overwhelmingly shows that Defendants were willfully blind to fraud at BLMIS. At minimum though, the evidence adduced by the parties presents genuine issues of material fact regarding the Trustee's claims to avoid and recover fraudulent transfers to Defendants and to subordinate the customer claim of Ascot Partners. For the foregoing reasons, the Trustee respectfully requests that Defendants' motions be denied.

Dated: New York, New York
      November 25, 2015

Respectfully submitted,

BAKER & HOSTETLER LLP

By: *s/ David J. Sheehan*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Lan Hoang
    Email: lhoang@bakerlaw.com
    Seanna R. Brown
    Email: sbrown@bakerlaw.com
    Brian W. Song
    Email: bsong@bakerlaw.com

    *Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*