Hearing Date: October 25, 2017 at 10:00 a.m.
Objection Deadline: October 18, 2017

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05224 (SMB) |
| Plaintiff, | |
| v. | |
| DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2, SOUTHPAC INTERNATIONAL TRUST LTD., as trustee of the David R. Markin 2003 Trust, DAVID R. MARKIN 2003 TRUST, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1, DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #2, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS FIRST**
**AMENDED COMPLAINT AND TO COMPEL PAYMENT OF CLAIM**

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for the David R. Markin Estate*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

    A.    STANDARD FOR DISMISSAL OF THE FIRST AMENDED COMPLAINT .... 5

    B.    THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(b)(6) .......... 7

    C.    THE TRUSTEE CANNOT AMEND THE COMPLAINT TO NAME DAVID R. MARKIN AS AN INITIAL TANSFEREE ........................................ 10

CONCLUSION .................................................................................................................. 15

104270780

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..................................................................................................... 6

*Barberan v. Nationpoint*,
   706 F. Supp. 2d 408 (S.D.N.Y. 2010) ............................................................................. 6

*Barrows v. Forest Laboratories, Inc.*,
   742 F.2d 54 (2d Cir. 1984) ............................................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 6

*Bonded Fin. Servs. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) .......................................................................................... 8

*Champlain Enter., Inc. v. U.S.*,
   945 F. Supp. 468 (N.D.N.Y. 1996) ............................................................................... 10

*Contella v. Contella*,
   559 So.2d 2017 (Fla. Dist.Ct.App. 1990) ..................................................................... 14

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,
   333 B.R. 205 (Bankr. S.D.N.Y. 2005) ............................................................................ 8

*Foman v. Davis*,
   371 U.S. 178 (1962) ...................................................................................................... 10

*Genova v. Gottlieb (In re Orange County Sanitation)*,
   221 B.R. 323 (Bankr. S.D.N.Y. 1997) ............................................................................ 8

*In re Chase & Sanborn Corp.*,
   904 F.2d 588 (11th Cir. 1990) ...................................................................................... 12

*In re Columbia Data Products, Inc.*,
   892 F.2d 26 (4th Cir. 1989) .......................................................................................... 12

*In re Incomnet, Inc.*,
   463 F.3d 1064 (9th Cir. 2006) ...................................................................................... 12

*In re Wells*,
   259 B.R. 776 (Bankr. M.D.Fla. 2001) .......................................................................... 14

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, Inc., 742 F.3d 42 (2d Cir. 2014) ......... 5

*Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99 (2d Cir. 1999) ......... 5

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ......... 5

*Meadowlands Invs., LLC v. CIBC World Markets Corp.*, 04 Civ. 7328 (DAB), 2005 U.S. Dist. LEXIS 21102 (S.D.N.Y. Sept. 22, 2005) ......... 6

*Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d. Cir. 2003) ......... 5

*Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688 (7th Cir. 2010) ......... 12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) ......... 10

*Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2014) ......... 2

*Picard v. Legacy Capital Ltd (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016) ......... 8

*Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) ......... 5

**STATUTES**

11 U.S.C. § 502(d) ......... 2

11 U.S.C. § 544 ......... 2, 7

11 U.S.C. § 545 ......... 7

11 U.S.C. § 546 ......... 10

11 U.S.C. § 547 ......... 7

11 U.S.C. § 548 ......... 7, 11

11 U.S.C. § 548(a)(1)(A) ......... 2

11 U.S.C. § 549 ......... 7

11 U.S.C. § 550(a) ......... 7

11 U.S.C. § 550(a)(2) ..................................................................................................................3

11 U.S.C. § 550(b) ........................................................................................................3, 7, 8, 9

11 U.S.C. § 550(b)(1) ...........................................................................................................3, 8

11 U.S.C. § 553(b) ......................................................................................................................7

11 U.S.C. § 724(a) ......................................................................................................................7

26 U.S.C. § 664(d)(2) .................................................................................................................9

26 U.S.C. § 4941 .......................................................................................................................11

Fla. Stat. § 736.0402 .................................................................................................................13

Fla. Stat. § 737.306(2) (2003) ....................................................................................................7

**OTHER AUTHORITIES**

17 C.F.R. § 300.100(b) .............................................................................................................13

17 C.F.R. § 300.104(b) .............................................................................................................14

Fed. R. Bankr. P. 7012 ................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 5, 7, 10

Fed. R. Civ. P. 15(a) .................................................................................................................10

104270780

The estate of David R. Markin (the "Markin Estate"), by its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the first amended complaint ("First Amended Complaint"), filed in this adversary proceeding by the Trustee for Bernard L. Madoff Investment Securities LLC ("BLMIS"), for failure to state claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and to compel payment of an undisputed claim held by the Markin Estate.[1]

**INTRODUCTION**

By this motion, the Markin Estate seeks an order compelling the Trustee to pay on account of its valid claim against BLMIS (i) the $500,000 SIPA advance and (ii) distributions that have been wrongfully withheld by the Trustee for more than seven years. As a predicate for release of such funds, the Markin Estate seeks an order dismissing the First Amended Complaint on the grounds that it no longer states a claim against David R. Markin and any amendment of the First Amended Complaint by the Trustee at this time to identify specific transfers or to reconfigure the parties in a new cause of action would be both untimely and futile.

The First Amended Complaint[2] originally involved four separate BLMIS accounts:

Account No. 1CM0024 - David R. Markin 203 Trust, a foreign trust (the "Southpac Trust").

Account No. 1M0091 - the David R. Markin Charitable Remainder Unitrust #1 ("CRUT#1").

Account No. 1M0094 - the David R. Markin Charitable Remainder Unitrust #2 ("CRUT#2").

---

[1] The Markin Estate is not waiving any defenses available to it in seeking this relief.

[2] A copy of the First Amended Complaint is annexed to the Declaration of Carole Neville as Exhibit A.

- 1 -

104270780

Account No. 1M2011 - David R. Markin account (the "Estate Account").

The Trustee sought to recover the alleged fictitious profits transferred over the six years before the filing of the bankruptcy to the three trust accounts identified above totaling $14,801,414.00. The Trustee named as defendants the Southpac Trust, CRUT#1 and CRUT#2 as initial transferees. The Trustee also named Southpac International Trust Ltd., as trustee of the Southpac Trust, and David R. Markin, as trustee of CRUT#1 and CRUT#2. In both the original version of the complaint filed in December 2010 and the First Amended Complaint filed in January 2012, the Trustee named David R. Markin as a subsequent transferee of transfers from each of the trust accounts. In addition, the Trustee sought to disallow the allegedly related claim against BLMIS held by David R. Markin, and since his death on May 30, 2013, held by the Markin Estate, pursuant to Section 502(d) of the Bankruptcy Code.

As a result of two court decisions, the Trustee's claims in the First Amended Complaint were substantially reduced. The decision of the Court of Appeals for the Second Circuit on December 8, 2014, *Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2014) dismissing the claims against defendants under New York Debtor Creditor law and section 544 of the Bankruptcy Code eliminated claims against CRUT#2 and the Southpac Trust, their trustees and beneficiaries. This Court's Memorandum Decision (ECF No. 10089) and order dated July16, 2015 dismissing claims against subsequent transferees eliminated the claim against David R. Markin as a subsequent transferee. As a result, the only remaining claims in the adversary proceeding are the claims against CRUT#1 as initial transferee under Section 548(a)(1)(A) and the Section 502(d) claim against the Estate Account.

The Trustee's Section 502(d) claim against the Estate Account is contingent upon establishing a claim against David R. Markin. However, there is no pending claim against David R. Markin in his individual capacity. Furthermore, even if the First Amended Complaint was

- 2 -

amended again to add specific transfers from CRUT#1 to David R. Markin or his successor in interest, the Trustee's claim against David R. Markin would fail because he has a complete defense as a subsequent transferee.

The Trustee's right to recover transfers under Section 550(a)(2) is limited by Section 550(b), which prohibits recovery from a subsequent transferee who takes (1) for value, (2) in good-faith, and (3) without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). All three prongs of the defense have been met. The Trustee concedes that David R. Markin acted without knowledge of the voidability of the transfers and in good-faith. The value prong of Section 550(b) is also met. "Value" within the meaning of section 550(b)(1) is consideration sufficient to support a simple contract between the transferee and its transferor.

In this case, the CRUT#1 trust agreement required certain distributions to David R. Markin based upon, among other things, the value of the assets of CRUT#1 and the requirements of the Internal Revenue Code of 1986, as amended ("IRC"). On the termination of CRUT#1, David R. Markin relinquished his lifetime beneficial interest in CRUT#1 in exchange for a distribution from CRUT#1 in accordance with the requirements of the IRC and the Internal Revenue Service ("IRS"). The value of exchange was vetted and approved by the IRS.[3] Thus, "value" within the meaning of Section 550(b) was provided by David R. Markin to Unitrust #1. Accordingly, amending the First Amended Complaint simply to add specific transfers or to substitute the Markin Estate for David R. Markin would be a moot and useless effort.

The Trustee proposed in an earlier letter to this Court to amend the First Amended Complaint again to name David R. Markin as the initial transferee on a highly speculative theory that he exercised complete dominion and control over the accounts and the distributions. As

---

[3] The ruling letter from the IRS, among other things, addressing the value of the transfer was provided to the Trustee well before he filed the First Amended Complaint. See Neville Declaration ¶3.

- 3 -

104270780

more fully discussed below, such an amendment would be both futile and prejudicial. There are no allegations in the First Amended Complaint that would support disregarding the CRUT#1 as a valid and separate legal entity and the primary recipient of the transfers from BLMIS. At this stage in the proceeding, naming a new initial transferee and introducing an entirely new set of facts would be barred by the statute of limitations. It would also restart the process of discovery and discussions that the parties have conducted for seven years based on the facts in the complaint. The delay would be extremely prejudicial to David R. Markin's surviving widow and children who have been in good-faith trying for more than four years to resolve this litigation.

Moreover, there are no facts pertaining to the formation, administration and termination of CRUT#1 that would support the Trustee's belated departure from his consistent characterization of David R. Markin as a subsequent transferee or establish control over the trust funds in order to provide a basis for disregarding the CRUT. Both the CRUT#1[4] trust agreement and the IRC sections referenced therein expressly prohibit and reject the type or kind of exercise of control for David R. Markin's benefit that the Trustee would need to establish to support his new theory. Finally, there is no legal basis for disregarding a validly created trust with two trustees and multiple beneficiaries under the Bankruptcy Code and applicable case law, SIPA or Florida trust law.

In sum, under the existing facts and circumstances, dismissal of the First Amended Complaint is appropriate and long overdue. Upon dismissal, the Trustee should be required to immediately make the distributions to David Markin's family on account of the Estate Claim.

---

[4] A true and correct copy of the CRUT#1 documents are annexed to the Declaration of Carole Neville as Exhibit B.

A. **STANDARD FOR DISMISSAL OF THE FIRST AMENDED COMPLAINT**

A court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, Inc., 742 F.3d 42, 44 n.1 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.") (internal quotation marks omitted)); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). At the time of the filing of the First Amended Complaint, the Trustee possessed a copy of the CRUT#1 trust agreement, the letter ruling of the IRS on termination of CRUT#1, CRUT#1's tax returns and copies of cancelled checks evidencing the terminating distributions to public charities from CRUT#1 (collectively, the "CRUT#1 documents"). The Trustee also had custody of the documents in the BLMIS files with respect to the four accounts.

Affirmative defenses may be raised in a motion to dismiss under Rule 12(b)(6) if the defense is evident on the face of the complaint or from the undisputed facts. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (an affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.); *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 155 (2d. Cir. 2003). As shown herein, the

104270780

allegations in the First Amended Complaint and the CRUT#1 documents establish the elements of the defense to the Trustee's claims against David R. Markin as a subsequent transferee.

Furthermore, the presumption of truth ordinarily afforded the allegations of a complaint does not apply if the allegations are contradicted, by other allegations in the complaint's themselves or by otherwise established facts. *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 (S.D.N.Y. 2010)(dismissal based on contradictory facts); *Meadowlands Invs., LLC v. CIBC World Markets Corp.*, 04 Civ. 7328 (DAB), 2005 U.S. Dist. LEXIS 21102, (S.D.N.Y. Sept. 22, 2005)(dismissal of breach of contract and common law fraud claims when allegations were contradicted by facts). An effort to amend the First Amended Complaint to disregard CRUT#1 and pursue David R. Markin as an initial transferee is contradicted by the terms of the CRUT#1 documents and applicable law.

Similarly, it is insufficient for the Trustee to simply set forth a general theory of recovery based on bare allegations of dominion and control. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). As more fully discussed below, there is no factual or legal basis for the Trustee's new claim that BLMIS distributions can be recovered from David R. Markin as an initial transferee. Accordingly, amendment would be futile and there are ample grounds for dismissal of the First Amended Complaint under these applicable standards.

### B.   THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6)

In the First Amended Complaint, David R. Markin is identified as a subsequent transferee and the recipient of transfers from CRUT#1. Am. Comp. ¶¶47-8[5] ("On information and belief, some or all of the Transfers were subsequently transferred by Defendants to Subsequent Transferee Defendant David R. Markin (collectively, the "'Subsequent Transfers'")….the Subsequent Transfers, or the value thereof, are recoverable from Subsequent Transferee David R. Markin pursuant to §550(a) of the Bankruptcy Code.").[6] Count Seven of the Amended Complaint is completely dedicated to the recovery of subsequent transfers from the three trusts to David R. Markin. Am. Comp. ¶101 ("Subsequent Transferee Defendant is an immediate or mediate transferee of the Subsequent Transfers from Defendant David R. Markin Trust 2003, Markin Charitable Remainder Unitrust #1 and David R. Markin Charitable remainder Unitrust #2.").

As stated above, the Trustee's right to recover transfers from David R. Markin as a subsequent transferee is limited by Section 550(b),[7] which prohibits recovery from a subsequent

---

[5] References to specific paragraphs of the First Amended Complaint are hereinafter stated as "Am. Comp. ¶"

[6] He is also named as the trustee of CRUT#1. *See* Am. Comp.¶7 ("On information and belief, Defendant and subsequent transferee Defendant David R. Markin acts as trustee for the David R Markin Charitable Remainder Unitrust #1 and David R. Markin Charitable Remainder Unitrrust #2"). A trustee may hold title to the trust property in a representative capacity. In that capacity, the trustee is only liable to third parties as a result of holding title to the extent the trust has sufficient assets to indemnify the trustee. *See* Comment A Restatement of Trusts 2d §265 ("The modern trend has been to hold the trustee as holder of the title to the trust property liable to third persons only as trustee, that is only to the extent to which the trust estate is sufficient to indemnify him."). Florida law makes it clear that a trustee is not personally liable for an obligation arising from the ownership or control of trust property unless he is personally at fault. Florida statute Section 737.306(2) (2003).

[7] Section 550(a) of the Bankruptcy Code provides:
  (a) except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
     (1)  the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
     (2)  any immediate or mediate transferee of such initial transferee.
  (b) The trustee may not recover under section [subsection] (a)(2) of this section from--
     (1)  a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
     (2)  any immediate or mediate good faith transferee of such transferee.

- 7 -

transferee who takes (1) for value, (2) in good-faith, and (3) without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988), the seminal case on subsequent transferee liability and followed in this jurisdiction, established, among other principles, the requirement that the court must look to the relationship between the transferor and recipient of property, not the debtor and the subsequent transferee to determine whether value within the meaning of that section has been given. In this jurisdiction, assuming as is the case here that there is no knowledge of the fraud or voidability of the transfer on the part of the transferee, "value" within the meaning of § 550(b)(1) is consideration sufficient to support a simple contract between the transferee and its transferor. 5 Collier on Bankruptcy (16th Ed.), ¶ 550.03[1], p. 550-20; *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005) ("In addition, under section 550(b) of the Bankruptcy Code, the 'value' required to be paid by the transferee is merely consideration sufficient to support a simple contract. . . . There is no requirement that the value given by the transferee be a reasonable or fair equivalent.") (citations omitted); *Picard v. Legacy Capital Ltd (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016) ("'The "value" that a subsequent transferee must provide under section 550(b)(1) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value.'") (citations omitted); *Genova v. Gottlieb (In re Orange County Sanitation)*, 221 B.R. 323, 326 (Bankr. S.D.N.Y. 1997) (section looks to what the transferee gave up rather than what the debtor received).

The value requirement of the subsequent transferee defense is apparent from the provisions of CRUT#1. CRUT#1 was established as a charitable remainder unitrust under

Section 664(d)(2) of the IRC. The highly regulated structure of CRUT#1 under applicable federal tax law establishes legal rights and restrictions of various beneficiaries to the assets of the trust. Articles Three and Four of the CRUT#1 trust agreement provide for the amount and timing of payments (the "Unitrust Amount") from CRUT#1 to David R. Markin, as the income beneficiary.[8] The amount distributable to David R. Markin pursuant to the terms of the trust agreement is the smaller of the trust income for any taxable year and a fixed percentage of ten percent of the net fair market value of the trust assets.

In order to avoid the imposition of stiff penalties in addition to liability to the charitable beneficiaries on a final distribution to David R. Markin, as the settlor/income beneficiary under the IRC, any distribution to the income beneficiary is required to be fair and consistent with regulatory standards. David R. Markin gave up his lifetime interest in CRUT#1 in a fair exchange for a distribution equal to the actuarial value of his relinquished income interest. The IRS ruling letter, a copy of which the Trustee has had since February 2010, states: "In this case, the income beneficiary is not expected to receive more than he would during the full term of the trust under the above-described methodology for valuing his interest in a charitable remainder trust with a net income make-up feature." The termination of CRUT#1, as described above, provided additional value to the charities on an accelerated time frame. As a legal and factual matter, "value" within the meaning of Section 550(b) was provided.

In sum, the Markin Estate has the complete defense to the Frist Amended Complaint against David R. Markin as a subsequent transferee.

---

[8] Article Five of the CRUT#1 trust agreement provides for the distributions to the designated charitable beneficiaries (the "Charitable Remainderman"). At the time of the distributions from CRUT#1 to David R. Markin there were twelve Charitable Remainderman.

- 9 -

104270780

**C. THE TRUSTEE CANNOT AMEND THE COMPLAINT TO NAME DAVID R. MARKIN AS AN INITIAL TANSFEREE**

The Trustee has not disputed the defenses available to David R. Markin as a subsequent transferee. Instead, he proposes to abandon the alignment and clear legal relationships of the parties and the theories of liability he has asserted since the complaint was originally filed in December 2010. Based on a completely new set of manufactured facts or conjectures, the Trustee proposes to name David R. Markin as an initial transferee and disregard CRUT#1 as both a separate and distinct legal entity and the initial transferee of the BLMIS distributions.

Although leave to amend is to be freely given when justice so requires pursuant to Fed. R. Civ. P. 15(a), a court may deny leave to amend on grounds of bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies in amendments previously allowed, <u>or futility of amendment</u>. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile where it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) or is subject to a clear affirmative defense. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir. 2012). The law is clear that a plaintiff's request for leave to amend its complaint should be denied where the proposed amendment would prejudice the defendant. *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (prejudice to opposing party is "touchstone" of district court's authority to deny leave to amend). If a proposed amendment would require the defendant to expend significant additional resources or significantly delay resolution of the dispute between the plaintiff and the defendant, leave to amend should be denied. *Champlain Enter., Inc. v. U.S*., 945 F. Supp. 468, 476 (N.D.N.Y. 1996). There is an element of each of these grounds for denying leave to amend to amend the First Amended Complaint present in this case.

First, a new defendant and cause of action in this adversary proceeding would be time-barred and untimely. Section 546 of the Bankruptcy Code establishes a statute of limitations

within which an avoidance action, including a fraudulent transfer action under section 548 may be brought. Generally, actions to avoid fraudulent transfers must be commenced within later of two years of the entry of the order for relief or one year after the appointment of a trustee if the appointment occurs within the two-year period. This case commenced and the Trustee was appointed in December 2008. Moreover, the Trustee has had seven years of communications, negotiations and meetings with both estate and bankruptcy counsel for David R. Markin during which he never hinted at this new cause of action until the Markin Estate sought leave to file a motion for summary judgment to bring the case to an end.

The Trustee's proposal is a new cause of action based on a completely new set of facts. There are no allegations in the First Amended Complaint by which David R. Markin could be properly characterized as an initial transferee either because CRUT#1 itself can be disregarded or because David R. Markin exercised such a degree of control over CRUT#1 and dominion over the assets that he qualifies as an initial transferee. Any such claim is contradicted by the facts of the account.

Both CRUT#1's trust agreement and the IRC impose standards for both the settlor and the trustees in administering the trust that prevent the exercise of powers for David R. Markin's personal benefit. The trust agreement expressly limits the settlor's powers in Section 5 as follows:

> My trust is irrevocable and may not be altered, amended or terminated in any respect unless specifically authorized by this agreement.
>
> I retain no power to control and direct payments, to remove trust property or to alter, amend revoke, or terminate my trust, either in whole or in part, except as specifically provided in this agreement.

The trust document also prohibits the trustee from engaging in self-dealing within the meaning of Section 4941 of the IRC. 26 U.S.C. §4941 defines self-dealing, in relevant part, as follows:

- 11 -

> 1) In general. For purposes of this section, the term "self-dealing" means any direct or indirect—
> (A) sale or exchange, or leasing, of property between a private foundation and a disqualified person;
> (B) lending of money or other extension of credit between a private foundation and a disqualified person;
> (C) furnishing of goods, services, or facilities between a private foundation and a disqualified person;
> (D) payment of compensation (or payment or reimbursement of expenses) by a private foundation to a disqualified person;
> (E) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a private foundation….

In this case, David R. Markin as a settlor, trustee and beneficiary and all of his family members are disqualified persons within the meaning of the statute and regulations and hence were prevented from using the trust assets for their own benefit.[9] As one of the trustees of CRUT#1 David R. Markin had fiduciary duties to the Charitable Remaindermen and a prescribed standards of conduct under the trust agreement and federal and state law.

The fact that trust distributions were required to made within the confines of the formulas set forth in CRUT#1's trust agreement and the IRC and applicable regulations does not mean that the trust, through its trustees, did not exercise dominion and control over the assets and in particular, the distributions from BLMIS according to relevant case law. *See* e.g. *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 692 (7th Cir. 2010) ("But lots of decisions hold that an entity that receives funds for use in paying down a loan, or passing money to investors in a pool, is an "initial transferee" even though the recipient is obliged by contract to apply the funds according to a formula.") *citing*, *In re Columbia Data Products, Inc.*, 892 F.2d 26, 28 (4th Cir. 1989); *In re Chase & Sanborn Corp.*, 904 F.2d 588, 599-600 (11th Cir. 1990); *In re Incomnet, Inc.,* 463 F.3d 1064, 1071-76 (9th Cir. 2006).

---

[9] CRUT#1 is treated as a "private foundation" for federal tax purposes.

It is also impossible for the Trustee to simply disregard CRUT#1 as a valid, separate legal entity. The documents available for the Trustee shortly after the time the complaint was originally filed and certainly by January 25, 2012 when the Trustee first amended the complaint included the trust agreement for CRUT#1. There can be no argument that the CRUT#1 is not a valid trust. The CRUT#1 trust document meets all the requisite formalities for a valid irrevocable trust under Florida law. To create a valid trust under Florida law the settlor must have the capacity to create a trust; the settlor must indicate an intent to create the trust; the trust must have a definite beneficiary or be a charitable trust; the trustee must have duties to perform; and the same person is not the sole trustee and sole beneficiary. *See* Florida Statutes 736.0402. The trust document clearly evidences David R. Markin's intention to create a charitable remainder trust within the meaning of various sections of the IRC, and (1) permissibly names as trustees David R. Markin and a special independent trustee, Allan R. Tessler in Article 1, Section 1; (2) provides for the funding of CRUT#1; (3) provides for beneficiaries, including the payment of the Unitrust Amount as defined by the IRC, to David R. Markin in Article 4, Section 1 and distributions to the charitable remainderman Article 5, Section 1; and (4) set forth the trustees' powers in Article 10. CRUT#1 had its own tax identification number and reported to the IRS on its own tax return. CRUT#1 maintained its own bank account with segregated trust cash assets. In sum, as is evident from the document itself, CRUT#1 is a valid separate legal entity with two trustees and multiple beneficiaries.

The SIPA rules also require the Trustee to treat CRUT#1 as a separate legal entity. The rules governing the definition of accounts that qualify as a SIPA customer account specify which accounts and persons related to those accounts must be treated separately. Section 300.100(b) states: "Accounts held by a customer in different capacities, as specified by these rules, shall be deemed to be accounts of "separate customers." 17 C.F.R. § 300.100(b). Trust accounts qualify

- 13 -

104270780

as separate customers distinct from the trustee, settlor or any beneficiary of such trust. *See* 17 C.F.R. § 300.104(b) ("A qualifying trust account held with a member shall be deemed a separate customer of the member, distinct from the trustee, the testator or his estate, the settlor or any beneficiary of the trust.").

Finally, there is no legal basis for disregarding CRUT#1. The Trustee implied that David R. Markin and CRUT#1 were one and the same because he was a settlor, a trustee and a beneficiary. However, he was not the only trustee or the only beneficiary. The CRUT#1 trust agreement named an independent trustee and multiple charitable beneficiaries. Under state law, the merger doctrine terminates the trust only if the legal and equitable interests in the trust are held by one person. *See* e.g. *In re Wells*, 259 B.R. 776, 779 (Bankr. M.D.Fla. 2001). ("The merger doctrine is applicable where either the entire beneficial interest passes to the trustee or where the legal title passes to a sole beneficiary.") *citing Contella v. Contella*, 559 So.2d 2017, 1219 (Fla. Dist.Ct.App. 1990). There is no basis for application of the merger doctrine here.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

104270780

## CONCLUSION

For all the reasons stated above, the Trustee's latest effort to hold up distributions to the David R. Markin's family on the Estate Claim should be denied. David R. Markin and now his Estate's Claim; and payments thereon, have been held hostage by the Trustee for too many years without a legitimate basis. The Court should grant the Estate's motion to dismiss and order the Trustee to pay the Estate Claim.

Dated: August 25, 2017
      New York, New York

Respectfully submitted,

DENTONS US LLP

By: */s/ Carole Neville*
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for the David R. Markin Estate*