Windels Marx Lane & Mittendorf, LLP  
156 West 56th Street  
New York, New York 10019  
Tel: (212) 237-1000  
Howard L. Simon (hsimon@windelsmarx.com)  
Kim M. Longo (klongo@windelsmarx.com)  
John J. Tepedino (jtepedino@windelsmarx.com)

Hearing Date: October 3, 2017 at 10 a.m.  
Objection Deadline: September 26, 2017 at 5 p.m.

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>v.<br><br>MILES Q. FITERMAN REVOCABLE TRUST; MILES Q. FITERMAN NON-EXEMPT MARITAL TRUST; TOWERS MANAGEMENT COMPANY LLC; FITERMAN GST EXEMPT MARITAL TRUST; MILES FITERMAN FAMILY TRUST; SHIRLEY FITERMAN, individually, and in her capacity as Trustee for the MILES Q. FITERMAN REVOCABLE TRUST and the MILES Q. FITERMAN NON-EXEMPT MARITAL TRUST; STEVEN FITERMAN, individually, and in his capacity as Trustee for the MILES Q. FITERMAN REVOCABLE | Adv. Pro. No. 10-04337 (SMB) |

| |
|---|
| TRUST and the MILES Q. FITERMAN NONEXEMPT MARITAL TRUST; VALERIE HERSCHMAN, individually, and in her capacity as Trustee for the MILES Q. FITERMAN REVOCABLE TRUST and the MILES Q. FITERMAN NON-EXEMPT MARITAL TRUST; KAREN WASSERMAN; LYNN GUEZ; STEPHANIE ROSENTHAL; MILES Q. FITERMAN II; AND MATTHEW FITERMAN, |
| Defendants. |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE AND THE DEFENDANTS**

TO:   THE HONORABLE STUART M. BERNSTEIN
      UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the settlement agreement (the "Agreement")[1] by and among the Trustee on the one hand, and the Transferees, as defined in the Agreement (the "Defendants"), on the other hand, and in support thereof, the Trustee respectfully represents as follows:

---

[1] The form of Agreement is attached hereto as <u>Exhibit A</u>.  Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Agreement.

2

**PRELIMINARY STATEMENT**

The Trustee's settlement with the Defendants provides for payment to the Trustee of $37,300,000.00 (the "Settlement Payment"), or 97.24% of the two-year transfers in this good faith case. The Settlement Payment adds substantially to the funds available for distribution to customers who lost money as a result of Madoff's Ponzi scheme.

The Trustee's Complaint in this action seeks (i) the avoidance and recovery of $38,356,992.00 in two-year initial transfers from BLMIS account No. 1F0200 (the "BLMIS Account") made to Defendant Miles Q. Fiterman Non-Exempt Marital Trust (the "Marital Trust"), (ii) the recovery of subsequent transfers to certain other Defendants, and (iii) the disallowance of certain customer claims filed with the Trustee with respect to certain related BLMIS accounts.

This Settlement represents a good faith, complete, and total settlement between the Trustee and the Defendants as to any and all disputes between them raised in this Adversary Proceeding and as to any and all claims filed with the Trustee by the Defendants.

This Settlement will benefit the customers of BLMIS with allowed claims, and the Trustee respectfully requests that the Court approve it.

**BACKGROUND**

1. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the SEC commenced a proceeding in the District Court as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791, which was pending in the District Court and subsequently closed on March 17, 2015. The SEC's complaint

3

alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.

2. On December 12, 2008, the Honorable Louis L. Stanton of the District Court entered an order that appointed Lee S. Richards as receiver for the assets of BLMIS.

3. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by SIPC. Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

4. Also on December 15, 2008, the District Court entered an order pursuant to SIPA (the "Protective Decree"), to which BLMIS consented, that, in pertinent part:

 (i) removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; and

 (ii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated Madoff's chapter 7 estate into the SIPA Proceeding.

6. At a plea hearing on March 12, 2009 (the "Plea Hearing"), in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]," (Plea Hr'g Tr. at 23: 14-

4

17), and asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." (Id. at 23: 20-21). On June 29, 2009, Madoff was sentenced to 150 years in prison.

## THE CLAIMS AGAINST THE DEFENDANTS

7. The Trustee commenced this Adversary Proceeding by filing a complaint on November 30, 2010, as subsequently amended on December 10, 2010 (the "Complaint"), against (i) Miles Q. Fiterman Revocable Trust, the Marital Trust, Towers Management Company LLC, Fiterman GST Exempt Marital Trust, and Miles Fiterman Family Trust, (ii) Shirley Fiterman, Steven Fiterman, and Valerie Herschman, in each case individually and in his or her capacity as Trustee for the Miles Q. Fiterman Revocable Trust and the Marital Trust, and (iii) Karen Wasserman, Lynn Guez, Stephanie Rosenthal, Miles Q. Fiterman II, and Matthew Fiterman.

8. Subsequent to the Trustee's filing of the Complaint, Brian M. O'Connell, Esq., of the law firm Ciklin Lubitz & O'Connell, replaced Shirley Fiterman, Steven Fiterman, and Valerie Herschman as trustee for the Marital Trust, thereafter becoming the sole trustee for same.

9. The Complaint asserts claims seeking (i) the avoidance and recovery of initial transfers, (ii) the recovery of subsequent transfers related thereto, and (iii) the disallowance of BLMIS customer claims related to and/or filed by certain Defendants, as described in more detail below. The Trustee's claims against the Defendants include, but are not limited to, claims under Sections 502(d), 548, 550 and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3) for initial and subsequent transfers within the applicable statutory period (collectively, the "Avoiding Power Claims").

5

10. As to avoidance and recovery, the Trustee has alleged in his Complaint that the Marital Trust (and its then-existing trustees, in their capacity as trustees) received $38,356,992 of two-year avoidable initial transfers in connection with the BLMIS Account, which was in its name (the "Avoidable Transfers"), which amounts were subsequently transferred in whole or in part to other Defendants.

11. The Complaint also alleges that Defendants Miles Q. Fiterman Revocable Trust (and its trustees, in their capacity as trustees), Towers Management Company LLC, and Shirley Fiterman received six-year initial transfers in connection with two separate BLMIS accounts, which amounts were subsequently transferred in whole or in part to certain Defendants. The Trustee's allegations as to these transfers were dismissed by virtue of the Supreme Court Decision regarding Bankruptcy Code section 546(e).

### THE CLAIMS FILED AGAINST THE BLMIS ESTATE

12. Prior to July 2, 2009, the bar date for filing claims:

   a. Defendant Marital Trust filed Claim No. 002973 (the "Net Winner Claim") in connection with the BLMIS Account;

   b. Defendant Shirley Fiterman filed Claim No. 003156 (the "1F0198 Claim") in connection with BLMIS Account No. 1F0198;

   c. Defendant Steven Fiterman, as Manager of non-defendant third-party Fairway II LLC, an entity whose members include Defendants Steven Fiterman, Valerie Herschman, Karen Wasserman and Lynn Guez, filed Claim No. 003077 (the "1F0190 Claim") in connection with BLMIS Account No. 1F0190, an account in the name Fairway Partnership II; and

   d. Non-defendant MSM Investment Group LLC filed Claim No. 003162 (the "MSM Claim") in connection with BLMIS Account No. 1M0246.

13. The Complaint seeks the disallowance of the 1F0198 Claim, the 1F0198 Claim, and the MSM Claim[2] and confirms that the Net Winner Claim was denied by

---

[2] The MSM Claim was allowed by the Trustee in October 2014 as a result of separate negotiations.

6

Trustee pursuant to a Notice of Trustee's Determination of Claim dated October 26, 2010, to which no objection was filed.

14. Based on this Court's decision upholding the Trustee's calculation of Net Equity on a Cash In-Cash Out basis (and the Second Circuit Court of Appeals' affirmance, and United States Supreme Court's denial of *certiorari*, as to same),[3] the Trustee has calculated the amount of the 1F0198 Claim to be $1,505,000.00 and the amount of the 1F0190 Claim to be $272,000.00.

## RELEVANT LITIGATION AND NEGOTIATIONS

15. On April 17, 2014, the Defendants filed a Motion to Dismiss the First Amended Complaint on the basis that, *inter alia*, the Marital Trust was a "financial participant" that is deemed to have provided value for the Avoidable Transfers under Bankruptcy Code section 548(d)(2)(b) based on the balances on its BLMIS account statements (the "548(d) Issue"). The Trustee disputes the validity of this defense.

16. Beginning in mid-2016, the Parties began to engage in discussions regarding the possible resolution of the Adversary Proceeding. The Parties thereafter participated in multiple in-person and telephonic meetings and discussions, ultimately reaching a settlement and executing the Agreement on August 28, 2017.

17. After a thorough and deliberate consideration of the circumstances unique to this proceeding, as well as the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to resolve this matter rather than proceed with litigation.

---

[3] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), *cert. denied*, 133 S. Ct. 24 (2012), 133 S. Ct. 25 (2012).

7

## OVERVIEW OF THE AGREEMENT

18. The principal terms and conditions of the Agreement are generally as follows:[4]

- The terms and conditions of the Agreement shall become effective and enforceable on the first business day after the date that the Bankruptcy Court order approving the Agreement becomes a final order, as defined in the Agreement (the "Effective Date").

- Following the Effective Date, Defendants shall pay the Settlement Payment to Trustee in the following amounts and at the following times:

    - $10,000,000 no later than 30 days after the Effective Date (the "Initial Payment");

    - $12,000,000 no later than 15 months after the Effective Date; and

    - $15,300,000 no later than 18 months after the Effective Date.

- The obligation to pay the Settlement Payment is supported by a Stipulation for Entry of Judgment for the full amount of the Avoidable Transfers (less any payments previously received, plus interest), executed contemporaneously with the Agreement, which the Trustee may submit to the Court for entry if a payment default is uncured for 15 business days after written notice to the Defendants.

- The Trustee's determination as to the Net Winner Claim shall continue and be deemed final and not in dispute.

- As soon as practicable after the Settlement Payment has been received in full by the Trustee, the 1F0198 Claim and 1F0190 Claim shall be determined, settled, compromised, and allowed in the total amounts of $1,505,000 and $272,000, respectively.

- The Trustee will release, remise, and forever discharge the Defendants and two related entities—Fairway II LLC and Fairway Partnership LLC—on the specific terms set forth in the Agreement.

- The Defendants will release, remise, and forever discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

---

[4] In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

8

- As soon as practicable after receipt of the Initial Payment, the Trustee shall file a Notice of Dismissal dismissing this Adversary Proceeding, without prejudice to the Trustee's right to re-open the case in the event of an uncured default and without costs to either the Trustee or the Defendants.

## RELIEF REQUESTED

19. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit B approving the Agreement.

## LEGAL BASIS

20. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.*), 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

21. The Second Circuit has stated that in determining whether to approve a compromise, the court should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), *cert. denied*, *Cosoff v. Rodman,* 464 U.S. 822 (1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972)); *see also In re Chemtura Corp.,* 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying

9

litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

22. The factors that courts in the Second Circuit consider when approving bankruptcy settlements are well established. These interrelated factors are:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Fox v. Picard (In re Madoff)*, 848 F.Supp.2d. 469, 487-488 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d. Cir. 2014) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and citations omitted)).

23. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. at 594. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. 115, 122 (Bankr. S.D.N.Y. 1994). Finally, the Court should be mindful of the principle that "the law favors compromise." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham*

10

*Lambert Group, Inc.),* 134 B.R 499, 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

24. The Trustee's settlement with the Defendants is fair and equitable and in the best interests of the estate and the customers of BLMIS. *See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"). A true and accurate copy of the Picard Affidavit is attached hereto as <u>Exhibit C</u>. The following considerations influenced the Trustee's decision to settle:

a) <u>Benefit to BLMIS Customers</u>. The Agreement greatly furthers the interests of the customers of BLMIS by adding $37,300,000 in cash to the fund of BLMIS customer property. Such amount represents over 97% of the two-year transfer amount sought in the Trustee's complaint.

b) <u>Defendants' Motion to Dismiss</u>. As noted, the Defendants previously filed a motion to dismiss which contained various defenses, including the 548(d) Issue. Although he believes that the 548(d) Issue is not a valid defense, the Trustee cannot be certain that he would prevail in litigation. The Agreement eliminates the uncertainty of litigating those claims.

c) <u>Avoidance of the Cost and Delay of Further Litigation</u>. The Agreement eliminates the expense and delay of litigation, which would likely require costly discovery and motion practice, and potentially a trial. The Agreement also eliminates the inevitable delay caused by any future appeals in this proceeding, based on the issues raised in the Defendants' motion to dismiss or otherwise, which benefits the estate and the customers of BLMIS. Even if successful in whole or in part, litigation with the Defendants would delay distributions for years.

11

d) <u>Difficulties with Collection</u>. In light of the substantial amount of the Trustee's claims against Defendants and that Defendants consist of numerous separate individuals and trusts, if the Trustee were to prevail through litigation, there could be significant difficulties and delays associated with judgment enforcement efforts. By entering into the Agreement at this time, such uncertainties have been eliminated.

e) <u>Finality</u>. The Agreement resolves all claims among the Parties as to the Adversary Proceeding.

f) <u>Experienced Counsel</u>. The Parties are represented by sophisticated and experienced professionals. The Parties and their professionals understand the difficulties of a SIPA liquidation of this size and complexity and are aware of the harm to customers and creditors if the Agreement is not consummated.

g) <u>Product of Arms-Length Negotiations</u>. The settlement is the product of arm's length and good faith negotiations between the Trustee and the Defendants.

25. For all of these reasons, the Agreement is well within the "range of reasonableness," *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d at 693), and confers a substantial benefit on the estate and the customers of BLMIS. The Trustee respectfully requests that the Court approve the Agreement.

## CONCLUSION

26. In sum, the Trustee submits that the Agreement should be approved: (a) because it represents a fair and reasonable compromise of the Avoiding Power Claims that greatly benefits the estate and the customers of BLMIS and (b) to avoid lengthy, burdensome, and expensive litigation as well as litigation and collection risks. Because the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the

Agreement.

## NOTICE

27. In accordance with Bankruptcy Rules 2002 and 9019 and that certain Order Establishing Notice Procedures and Limiting Notice entered on December 5, 2011 (BLMIS Main Proceeding, Adv. Pro. No. 08-1789, Dkt. No. 4560) (the "Order Limiting Notice"), notice of this Motion is being given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) counsel for all Defendants and anyone else who has filed notices of appearance in this Adversary Proceeding. Also in accordance with the Order Limiting Notice, the Trustee has provided notice by e-mail to interested parties in the SIPA liquidation proceeding of the following: the Motion; the date and time scheduled for the hearing at which this Court will consider the Motion; the date by which objections, if any, must be filed with this Court, and the name and address of the persons to be served with a copy of any objections. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of <u>Exhibit B</u> granting the relief requested in the Motion.

Dated: New York, New York
      August 29, 2017

By: /s/ Howard L. Simon
Howard L. Simon (hsimon@windelsmarx.com)
Kim M. Longo (klongo@windelsmarx.com)
John J. Tepedino (jtepedino@windelsmarx.com)
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*