**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Maximillian S. Shifrin

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>Robert Roman,<br><br>      Defendant. | Adv. Pro. No. 10-04292 (SMB) |

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY
PURSUANT TO FED. R. BANKR. P. 7037(a)(3)(B)**

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa ("SIPA") and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, hereby submits this supplemental memorandum of law, pursuant to this Court's August 23, 2017 Order (the "Order"), in further support of his motion to compel discovery (the "Motion").

**ARGUMENT**

**I.    THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PROTECT ANY COMMUNICATIONS SHARED WITH MADOFF**

Defendant asserts the attorney-client privilege over an email communication sent by defense counsel to numerous adversary proceeding defendants represented by Chaitman LLP, including Defendant, which Defendant subsequently attached to a letter that he sent to Madoff in prison (the "Chaitman Email").[1]  Defendant's Amended Privilege Log, submitted to the Court on August 16, 2017 (the "Privilege Log"), describes the Chaitman Email as a "[c]onfidential attorney-client memo setting forth attorney's mental impressions, strategy, and matters regarding client participation in the Profit Withdrawal proceeding." Privilege Log, ¶ B.  While the privilege asserted by Defendant has apparently changed, the result should not: Defendant's disclosure of the Chaitman Email to Madoff constituted a waiver of any applicable privilege, and thus the Court should compel its production.

---

[1] Because the Trustee has already addressed the issue of work product waiver in his Motion papers, this memorandum will only address whether Defendant waived his assertion of the attorney-client privilege over the Chaitman Email.  To the extent the Chaitman Email contains attorney work product, Defendant and/or defense counsel effectuated a waiver of that protection for the reasons stated in the Trustee's original Motion papers.

2

      A.      **<u>Disclosure of the Chaitman Email to Madoff, a Third Party, Waives the Privilege</u>**

In order to properly assert the attorney-client privilege over otherwise discoverable material, a party must show that the specific communications were (1) between a client and his or her attorney; (2) intended to be, and in fact were, kept confidential; and (3) for the purpose of obtaining or providing legal advice. *United States v. Mejia*, 655 F3d 126, 132 (2d Cir. 2011). Courts "construe the privilege narrowly because it renders relevant information undiscoverable" and "apply it only where necessary to achieve its purpose." *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (internal quotations omitted). "The party asserting the privilege . . . bears the burden of establishing its essential elements." *Mejia*, 655 F.3d at 132.

However, "[a] party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed . . . ."); *see also In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 66 F.Supp.3d 406, 410 (S.D.N.Y. 2014) ("because the focus of the privilege is the protection of attorney-client confidences, the voluntary disclosure of confidential material to a third party eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege") (internal quotations omitted). "The party invoking the privilege also has the burden to show that the privilege has not been waived." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015).

Here, there is no dispute that Defendant voluntarily sent Madoff a letter enclosing both a draft declaration and the Chaitman Email. Assuming the Chaitman Email was otherwise privileged, Defendant's disclosure of it to Madoff—an independent third-party witness—either constitutes a clear waiver of the privilege or establishes that Defendant never intended the Chaitman Email to be confidential in the first place. Either way, the Chaitman Email is discoverable based on a straightforward application of the relevant rules on privilege and waiver. *See, e.g., Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, 2010 WL 343490, *2 (S.D.N.Y. Feb. 1, 2010) (privilege not applicable to communications with likely third-party witness despite party's claim that it retained third party to act as its representative and that it expected those communications to be confidential); *U.S. v. Kerik*, 531 F.Supp.2d 610, 616 (S.D.N.Y. 2008) ("Where attorney-client communications are disclosed for reasons other than obtaining legal advice to a third party at the direction of the client there is no expectation of privacy or confidentiality, and thus, the client cannot assert the privilege.").

While Defendant's disclosure of the purportedly privileged communication alone extinguishes any claim of privilege, the Trustee's pursuit of the Chaitman Email is also entirely justifiable. Defendant sent the Chaitman Email along with a draft declaration he was attempting to procure from Madoff, and thus it seems that Defendant included the Chaitman Email in order to provide Madoff with strategic context through which to understand the proposed declaration. The Trustee has already emphasized the possibility that Defendant may have attempted to influence Madoff's cooperation through their familial relationship, and Defendant's disclosure of litigation strategy seems to confirm and amplify this concern. The fact that Defendant contacted Madoff at the behest of defense counsel also suggests that this disclosure was an informed and deliberate one.

4

As argued extensively in the Trustee's Motion papers, the Trustee is entitled to any materials exchanged with Madoff that relate to BLMIS, particularly because Defendant—and every other adversary proceeding defendant represented by Chaitman LLP—are relying on Madoff as their principal fact witness, and that anything sent to/from Madoff may potentially constitute impeachment evidence.  While the Trustee generally has no interest in defense counsel's mental impressions and/or litigation strategy, he is certainly interested in any material that Defendant deliberately shared with the principal third-party witness in this case—a witness who not only submitted a fact declaration as a result of the communications at issue, but is also the subject of ongoing deposition testimony on a variety of subjects.  Extension of the privilege to any such communications would go well beyond its intended purpose to protect attorney-client confidentiality and prejudice the Trustee by precluding relevant evidence from discovery.

B. **Neither Exception to the Waiver Rule Applies**

Because the burden is on Defendant to show that he did not waive privilege over the Chaitman Email, Defendant must demonstrate that his disclosure of it to Madoff falls under an exception to the waiver doctrine.  There are two circumstances where courts have found exceptions to the waiver rule: (1) where the third party is a "necessary conduit of information between attorney and client," and (2) where the third party and the litigant share a "common legal interest."  *U.S. v. Ghavami*, 882 F. Supp.2d 532, 537 (S.D.N.Y. 2012) (explaining exceptions and collecting cases).  Neither of these exceptions apply here.

First, there can be no credible argument that Madoff was a "necessary conduit of information" between Defendant and defense counsel—a characterization that typically applies to third parties with specialized expertise, such as accountants or interpreters.  *Id.*  It is clear that Defendant solicited Madoff for what he thought would be a favorable fact declaration, not to aid

5

defense counsel in the interpretation of any technical information. Second, Madoff and Defendant do not share any sort of "common legal interest," which is a far more difficult standard to meet than the similarly referenced inquiry in the context of the work product privilege, as the Trustee discusses at length in his Motion papers. *Id.* (explaining that common interest exception applies if the parties "(i) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy"). In other words, if Defendant cannot credibly claim a common interest with Madoff for purposes of extending the work product privilege to Madoff, he certainly cannot claim that the more demanding "common interest rule" applies here.

Nor can Defendant maintain that every adversary proceeding defendant that received the Chaitman email needed to affirmatively consent to its disclosure in order to effectuate a waiver. Defendant was clearly communicating with Madoff on behalf of all Chaitman LLP parties that were participating in the Profit Withdrawal Litigation—and on whose behalf defense counsel subsequently submitted the Madoff Declaration. Given this context, it is likely that all relevant Chaitman parties provided consent—be it express or implied—for Defendant to write Madoff in an attempt to obtain a declaration. By empowering Defendant to communicate with Madoff in an attempt to obtain a declaration on their behalf, those parties must be said to have consented to whatever disclosures Defendant subsequently made to Madoff. Concluding otherwise would create a situation whereby dozens of Chaitman LLP defendants could freely disclose privileged information to third parties without ever waiving the privilege.

6

**CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Trustee's Motion in its entirety and order that all communications between Defendant and Madoff and accompanying attachments be produced.

Dated:  September 6, 2017
        New York, NY

**BAKER & HOSTETLER LLP**

By:  */s/ Nicholas J. Cremona*
    David J. Sheehan, Esq.
    Email:  dsheehan@bakerlaw.com
    Nicholas J. Cremona, Esq.
    Email: ncremona@bakerlaw.com
    Maximillian S. Shifrin, Esq.
    Email:  mshifrin@bakerlaw.com
    45 Rockefeller Plaza
    New York, NY 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard,
Trustee for the Substantively
Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities
LLC and the Estate of Bernard L. Madoff*