Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 08-01789-smb

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  SECURITIES INVESTOR PROTECTION CORPORATION,

6              Plaintiff,

7         v.

8  BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

9              Defendants.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, NY  10004

15

16              August 23, 2017

17              10:11 AM

18

19

20

21  B E F O R E :

22  HON STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  J. PEREYRA

Page 2

1    HEARING re Twenty-Fourth Application Of Trustee And Baker &

2    Hostetler LLP For Allowance Of Interim Compensation For

3    Services Rendered And Reimbursement Of Actual And Necessary

4    Expenses Incurred From December 1, 2016 Through March 31,

5    2017 for Baker & Hostetler, L.L.P., Trustee's Attorney,

6    period: 12/1/2016 to 3/31/2017, fee: $35698866.30, expenses:

7    $345286.87.

8

9    HEARING re Application for Interim Professional Compensation

10   Application Of Schiltz & Schiltz As Special Counsel To The

11   Trustee For Allowance Of Interim Compensation For Services

12   Rendered And Reimbursement Of Actual And Necessary Expenses

13   Incurred From December 1,2016 Through March 31, 2017 And For

14   Release Of A Portion Of Fees Held Back for Schiltz &

15   Schiltz, Special Counsel, period: 12/1/2016 to 3/31/2017,

16   fee: $63987.24, expenses: $4159.17,

17

18   HEARING re Application for Interim Professional Compensation

19   Application Of Higgs 4& Johnson (Formerly Higgs Johnson

20   Truman Bodden & Co.) As Special Counsel To The Trustee For

21   Allowance Of Interim Compensation For Services Rendered And

22   Reimbursement Of Actual And Necessary Expenses Incurred From

23   December 1, 2016 Through March 31, 2017 And For Release Of A

24   Portion Of Fees Held Back for Higgs & Johnson, Special

25   Counsel, period: 12/1/2016 to 3/31/2017, fee: $82665.90,

1    expenses: $1374.76.

2

3    HEARING re Application for Interim Professional Compensation

4    Application Of Soroker Agmon Nordman As Special Counsel To

5    The Trustee For Allowance Of Interim Compensation For

6    Services Rendered And Reimbursement Of Actual And Necessary

7    Expenses Incurred From December 1, 2016 Through March 31,

8    2017 And For Release Of A Portion Of Fees Held Back for

9    Soroker Agmon Nordman, Special Counsel, period: 12/1/2016 to

10   3/31/2017, fee: $595376.55, expenses: $23698.65.

11

12   HEARING re Twenty-Third Application of Windels Marx Lane &

13   Mittendorf, LLP for Allowance of Interim Compensation for

14   Services Rendered and Reimbursement of Actual and Necessary

15   Expenses Incurred from December 1, 2016 Through March 31,

16   2017 and Request for Partial Release of Holdback for Windels

17   Marx Lane & Mittendorf, LLP, Special Counsel, period:

18   12/1/2016 to 3/31/2017, fee:$2,490,019.00, expenses:

19   $32,148.05.

20

21   HEARING re Application for Interim Professional Compensation

22   Application Of Graf & Pitkowitz Rechtsanwalte GmbH As

23   Special Counsel To The Trustee For Allowance Of Interim

24   Compensation For Services Rendered And for Graf Pitkowitz

25   Rechtsanwalte GmbH, Special Counsel, period: 12/1/2016 to

Page 4

1     3/31/2017, fee: $7571.11, expenses: $35.64.

2

3     HEARING re Application for Interim Professional Compensation

4     Application Of SCA Creque As Special Counsel To The Trustee

5     For Allowance Of Interim Compensation For Services Rendered

6     And Reimbursement Of Actual And Necessary Expenses Incurred

7     From December 1,2016 Through March 31, 2017 And For Release

8     Of A Portion Of Fees Held Back for SCA Creque, Special

9     Counsel, period: 12/1/2016 to 3/31/2017, fee: $30215.77,

10    expenses: $0.00.

11

12    HEARING re Application for Interim Professional Compensation

13    Application Of Young Conaway Stargatt & Taylor, LLP As

14    Special Counsel To The Trustee For Allowance Of Interim

15    Compensation For Services Rendered And Reimbursement Of

16    Actual And Necessary Expenses Incurred From December 1, 2016

17    Through March 31,2017 And For Release Of A Portion Of Fees

18    Held Back for Young Conaway Stargatt & Taylor LLP, Special

19    Counsel, period: 12/1/2016 to 3/31/2017, fee: $61162.97,

20    expenses: $2405.98.

21

22    HEARING re Application for Interim Professional Compensation

23    Application Of Williams, Barristers & Attorneys As Special

24    Counsel To The Trustee For Allowance Of Interim Compensation

25    For Services Rendered Incurred From December 1, 2016 Through

Page 5

1    March 31,2017 And For Release Of A Portion Of Fees Held Back

2    for Williams, Barristers & Attorneys, Special Counsel,

3    period: 12/1/2016 to 3/31/2017, fee:$310177.79, expenses:

4    $0.00

5

6    HEARING re Application for Interim Professional Compensation

7    Application Of UGGC & Associs As Special Counsel To The

8    Trustee For Allowance Of Interim Compensation For Services

9    Rendered And Reimbursement Of Actual And Necessary Expenses

10   From December 1, 2016 Through March 31, 2017 And For Release

11   Of A Portion Of Fees Held Back for UGGC & Associes, Special

12   Counsel, period: 12/1/2016 to 3/31/2017, fee: $60630.50,

13   expenses: $4956.47.

14

15   HEARING re Application for Interim Professional Compensation

16   Application Of Werder Vigano As Special Counsel To The

17   Trustee For Allowance Of Interim Compensation For Services

18   Rendered From December 1, 2016 Through March 31,2017 And For

19   Release Of A Portion Of Fees Held Back for Werder Vigano,

20   Special Counsel, period: 12/1/2016 to 3/31/2017, fee:

21   $2696.82, expenses: $0.

22

23   HEARING re Application for Interim Professional Compensation

24   Application Of Browne Jacobson, LLP As Special Counsel To

25   The Trustee For Allowance Of Interim Compensation For

Page 6

1   Services Rendered And Reimbursement Of Actual And Necessary

2   Expenses Incurred From December 1,2016 Through March 31,

3   2017 And For Release Of A Portion Of Fees Held Back for

4   Browne Jacobson, LLP, Special Counsel, period: 12/1/2016 to

5   3/31/2017, fee:$955643.24, expenses: $35144.25.

6

7   HEARING re Application for Interim Professional Compensation

8   Application Of Eugene F. Collins As Special Counsel To The

9   Trustee For Allowance Of Interim Compensation For Services

10  Rendered And Reimbursement Of Actual And Necessary Expenses

11  Incurred From December 1,2016 Through March 31, 2017 And For

12  Release Of A Portion Of Fees Held Back for Eugene F.

13  Collins, Special Counsel, period: 12/1/2016 to 3/31/2017,

14  fee: $9392.77, expenses: $0.00

15

16  HEARING re Application for Interim Professional Compensation

17  Application Of Cochran Allan As Special Counsel To The

18  Trustee For Allowance Of Interim Compensation For Services

19  Rendered Incurred From December 1, 2016 Through March 31,

20  2017 And For Release Of A Portion Of Fees Held Back for

21  Cochran Allan, Special Counsel, period: 12/1/2016 to

22  3/31/2017, fee:$2676.15, expenses: $0.00

23

24  HEARING re Application for Interim Professional Compensation

25  Application Of Kelley, Wolter & Scott, Professional

Page 7

1    Association As Special Counsel To The Trustee For Allowance

2    Of Interim Compensation For Services Rendered From December

3    1, 2016 Through March 31, 2017 And For Release Of A Portion

4    Of Fees Held Back for Kelley, Wolter & Scott, P.A., Special

5    Counsel, period: 12/1/2016 to 3/31/2017, fee:$4005.00,

6    expenses: $0.00

7

8    HEARING re Application for Interim Professional Compensation

9    Application Of Triay Stagnetto Neish As Special Counsel To

10   The Trustee For Release Of A Portion Of Fees Previously Held

11   For The Prior Compensation Periods.

12

13   HEARING re Application for Interim Professional Compensation

14   Application Of Kugler Kandestin, L.L.P. As Special Counsel

15   To The Trustee For A Release Of A Portion Of Fees Previously

16   Held For The Prior Compensation Periods.

17

18   HEARING re Application for Interim Professional Compensation

19   Application Of Osborne & Osborne, P.A. As Special Counsel To

20   The Trustee For A Release Of A Portion Of Fees Previously

21   Held For The Prior Compensation Periods.

22

23   HEARING re Application for Interim Professional Compensation

24   Application Of La Tanzi, Spaulding & Landreth, P.C. As

25   Special Counsel To The Trustee For A Release Of A Portion Of

1    Fees Previously Held For The Prior Compensation Periods.

2

3    HEARING re Application for Interim Professional Compensation

4    Application Of Bedell Cristin Guernsey Partnership As

5    Special Counsel To The Trustee For A Release Of A Portion Of

6    Fees Previously Held For The Prior Compensation Periods.

7

8    HEARING re Application for Interim Professional Compensation

9    Application Of Munari Giudici Maniglio Panfili E Associati

10   As Special Counsel To The Trustee For A Release Of A Portion

11   Of Fees Previously Held For The Prior Compensation Periods.

12

13   HEARING re Application for Interim Professional Compensation

14   Application Of Ritter & Ritter Advokatur As Special Counsel

15   To The Trustee For A Release Of A Portion Of Fees Previously

16   Held For The Prior Compensation Periods.

17

18   HEARING re Application for Interim Professional Compensation

19   Application Of Tarter Krinsky & Drogin LLP As Special

20   Counsel To The Trustee For A Release Of A Portion Of Fees

21   Previously Held For The Prior Compensation Periods.

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    BAKER HOSTETLER

4        Attorneys for the Trustee, Picard

5        45 Rockefeller Center

6        New York, NY 10111

7

8    BY:  DAVID J. SHEEHAN

9

10   SECURITIES INVESTOR PROTECTION CORPORATION

11       1667 K Street, N.W., Suite 1000

12       Washington, D.C. 20006

13

14   BY:  KEVIN H. BELL

15

16   ALSO PRESENT TELEPHONICALLY:

17

18   SEANNA R. BROWN

19   PATRICK MOHAN

20

21

22

23

24

25

Page 10

1                 P R O C E E D I N G S

2            CLERK:  All rise.  Please be seated.

3            THE COURT:  Madoff.

4            MR. SHEEHAN:  Your Honor, David Sheehan,

5    BakerHostetler, on behalf of the Trustee, Irving Picard.

6    This is the return date of the 24th hearing for fees and

7    allowances by the Trustee and his counsel, BakerHostetler,

8    as well as foreign counsel and (indiscernible) counsel and

9    other retaining counsel on behalf of the Trustee.

10           It's actually been sort of a significant year in

11   some ways, so I thought I'd just give Your Honor an overview

12   of that.  The good faith cases, aside from some that you're

13   familiar with, actually are moving forward and we are down

14   to 240 cases that are still outstanding, worth about $600

15   million.

16           We have settled, approximately, 60 cases this year

17   in 2017 for a total value of $116.1 million.  Following Your

18   Honor's decision in (indiscernible) territoriality, Your

19   Honor knows that we are seeking a direct appeal to the

20   Circuit that has been heard by the motions panel several

21   weeks ago.  We are awaiting a decision.  Either way, we

22   (indiscernible) District Court. In the meantime -- or in the

23   Circuit Court.

24           In the meantime, there are ten initial transfer

25   cases and ten subsequent cases that are so active and alive,

Page 11

1   including, for example, Kingate, where all the initial

2   transferees are still there.  And we are proceeding at pace,

3   as Your Honor also knows, with discovery in those cases on

4   the basis that we would still have to avoid, even if we were

5   able to reinstate the subsequent cases through a reverse of

6   the ET decision.  So we might as well just keep moving

7   forward.

8           So we're aggressively pursuing discovery there;

9   Tremont, Your Honor recently heard an application to file a

10  motion in that case.  I think that, by the way, has been

11  resolved between counsel at this point.  So I don't think

12  we're --

13          THE COURT:  What's that about?

14          MR. SHEEHAN:  Tremont, we were trying -- in the

15  Kingate case to get documents from Tremont, a case we

16  settled long ago.  And counsel was taking the position that

17  they shouldn't have to pay for all of that.  But I think

18  we've worked it out.  And, as usual, SIPC has come in and

19  stepped up and made things happen, so we could get that

20  done.

21          So, we're pretty busy even though there are a lot

22  of cases that are -- there's 87 cases that are now on

23  appeal, but we have quite a few left that we're actively

24  engaged in in discovery and litigating.

25          THE COURT:  How many bad faith cases have to be

Page 12

1    tried?

2         MR. SHEEHAN:  How many what?

3         THE COURT:  Bad faith cases?

4         MR. SHEEHAN:  None.

5         THE COURT:  Well, I mean, you still have the

6    Kingate...

7         MR. SHEEHAN:  Oh, no, you mean to be tried?  Yes,

8    there's ten.  There's ten that will be tried as we stand

9    here now.  And, in fact, Tremont, as Your Honor knows, is

10   still viable because they didn't have a liquidation

11   proceeding and we're moving forward with that.  But that

12   case settled, and as a result we're still moving forward.

13   We're going to have, in effect, prove the initial transfer

14   because that obviously in the subsequent cases we have to do

15   that.  So we're pulling that together.  Because it settled

16   in the middle of all discovery.

17        So, a lot of that is still going on, and there's a

18   lot of activity in relation to that as well.  Just as an

19   insight into something that I do think we should talk about

20   a little bit here today -- SIPC, you know, has been very,

21   very supportive throughout.  There's news that our fees have

22   now reached $900 million, which is true.  Which SIPC's

23   president has been asked about that.  We've appeared in

24   Congress several times with regard to that issue, and the

25   answer we've always given is that, would you spend 900

1    million to get 12 billion?  And there never seems to be a

2    response that says, "No, I wouldn't do that."

3          So, what that highlights is, what I think is

4    important to know about SIPC, and in terms of the whole

5    process here.  By having the ability to press these cases

6    forward, we get these results.  For example, in the Tremont

7    case, they didn't file, as Your Honor knows, but there were

8    many cross-actions instituted and you're all in front of

9    Judge Grissett.  And Grissett has been handling all of those

10   and recently there was an appeal.  Because there's a huge

11   fight over a distribution there, and that's not because they

12   recovered anything; it's because we've already distributed

13   $1.8 million to Tremont.  A billion dollars to Tremont.

14         And as a result of the plan approved by Judge

15   Grissett, over 800 claimants, indirects from our

16   perspective, but claimants in Tremont, have been paid an

17   average of over $950,000 each.  So, our process by which we

18   pay back Tremont, and Tremont then litigates and figures out

19   who to pay, is we think the appropriate way to go.  And we

20   don't see ourselves as running around so much as working

21   with and trying to move those cases forward.

22         Now, why dos that happen?  Because Tremont had no

23   money.  And, in fact, Your Honor is very familiar with this.

24   In most liquidation (indiscernible) no wherewithal to move

25   forward to bring the kind of massive litigation it takes to

Page 14

1   win these cases or to be as relentless in your pursuit of it

2   to give real credibility to the cases to the point where

3   they settle, as recently happened here where we settled

4   Thema Wise and Lagoon for almost $400 million.  Why are

5   those cases settling in light of what's happened in the

6   case?

7            Well, two things:  One is that they know we're

8   here and we're going to litigate, and we're not going to go

9   away, and we're not going to run out of money.  And,

10  secondly, we as a result of that now, as Your Honor knows,

11  in most of our settlements what is happening is we're, in

12  effect, self-funding because the distribution is now so

13  large that they can do that.  So -- that we can do that.

14  They pay us, if you will, out of the distribution and still

15  have substantial sums over.  And they're banking on the

16  fact, as did all the (indiscernible) traders, that we will

17  continue.

18           And that is true.  What we have pending right now,

19  a settlement that I believe will take us over $13 billion

20  before the end of the year, and that's in another one of the

21  major fund cases.  And that's in light of what I would

22  consider to be some setbacks in terms of 546 and ET -- I

23  think as a tribute.  Seriously.  I know it's easy for me to

24  stand here and say that, given the money that we've earned

25  through this case, but I think earned is the right verb.  I

Page 15

1    think we have, in fact, earned it.  We're relentless, we

2    pursued these cases that way, everybody knows that.

3           On the other side are some of the most illustrious

4    law firms in the country and they all know what their

5    chances are, and they take those risks, and they litigate

6    these cases every day and yet we're able to settle.  And I

7    think it's because of the fact that we are, as I say,

8    relentless and superbly funded in a way that we can bring

9    those cases forward.

10          I just thought I'd add that perspective here this

11   morning, a little bit different than what we've talked about

12   here in the past.  And in that regard, what we do is we have

13   the resources -- for example, the case that's about to be

14   settled and, hopefully, bring it to Your Honor's attention

15   shortly -- and then even Thema Wise and Lagoon, those all

16   came about as a result of discovery that took place in

17   Europe, and the efforts that we had over, and the fact that

18   we have these counsel -- Your Honor's familiar with them all

19   -- from Ireland to Germany to Lichten...  Luxembourg, etc.,

20   throughout Europe that have assisted us and had developed a

21   lot of the information that would then compel people to come

22   forward and settle with us, notwithstanding the standards

23   of, you know, actual knowledge and (indiscernible).

24          So, those cases -- those efforts, as it were,

25   supported again but SIPC and paid for by SIPC, get us

Page 16

```
 1    results that I think in the standard liquidation proceeding

 2    would be very, very hard to achieve.

 3             So, in any event, the three firms that are pretty

 4    -- that are significant this time around are Soroker Agmon

 5    in Israel.  As Your Honor knows, they're -- it's a kind of

 6    convoluted case, as it were.  It started with Albert

 7    (indiscernible) back in the '80s.  He's since passed away.

 8    He started to fund the Yeshaya Horowitz Association.  But

 9    Yeshaya Horowitz did not have an account with Madoff.  There

10    was a magnify account at Madoff, and that is what funded

11    Yeshaya Horowitz.  But then it was disseminated throughout

12    Israel.

13             So, that case is ongoing, it's being actively

14    litigated, and that's why Soroker has a significant 1,618.5

15    hours for the reporting period, because they are, as I said,

16    actively engaged in litigation.

17             The same can be said with regard to Williams.

18    Williams Barristers is in Bermuda.  That is where the

19    Kingate Fund is located, the management fund.  And so, as a

20    result, there's a lot of active litigation there.  I think

21    some of it's been reported to Your Honor in the past.  And

22    that's where a lot of the discovery -- we're now commencing

23    depositions in those cases under the auspices of Bermuda

24    law, which is kind of a tricky thing to always get done but

25    we're working on that.  And that's why you're seeing
```

Page 17

1   Williams Barristers' numbers go up.

2           And Brown Jacobson mostly is involved in

3   supervising for us the actions going on in the commonwealth

4   because there is still the commonwealth, interestingly

5   enough, and the laws pertaining to those still go up through

6   the Privy Counsel and through the English system of the

7   courts.  So they assist with that.

8           And then at the same time, we do, as Your Honor

9   knows, a protection action in Kingate that now has taken on

10  more significance in light of the (indiscernible) opinion,

11  so we're --

12          THE COURT:  A protective action?

13          MR. SHEEHAN:  A protective -- we filed an action

14  against all the defendants there and it's been stayed.  With

15  the hope that --

16          THE COURT:  In Bermuda?

17          MR. SHEEHAN:  No, in England. It's in the U.K.

18          THE COURT:  Oh.

19          MR. SHEEHAN:  In the English courts.  And that's

20  not been actively litigated for years, but it's there just

21  in case the ultimate outcome is that we can't pursue Ceretti

22  and Grosso here; we can pursue them in England.  So, that's

23  why that case is also getting a lot of activity.  Now we're

24  re-looking at it.  There's a lot of discovery that's taken

25  place there.  Not in England, I should say, but in Europe.

Page 18

1    So, mostly in a French proceeding.  It's too convoluted to

2    go through the whole thing.  But as a result, at the end of

3    the day, we have a lot more information that we're adding to

4    the complaint there.

5            Those are the reason those three...  The others

6    are all actively involved in assisting, as I said earlier,

7    mostly in discovery efforts.  Then, of course, we of course

8    always have Windels Marx, who has been with us almost from

9    the beginning of the case and has done a superb job as there

10   are still many of these settlements that I reported earlier

11   with regard to good faith cases because of the efforts of

12   Windels Marx.

13           Young Conaway recently also had a very fine

14   settlement that you brought to fruition.  So there's been a

15   lot of assistance from each of those individual counsel that

16   we've hired.  So, overall, I think the effort over the

17   course of this year has been substantial.  And, as I say, I

18   think it will get even better as the year progresses.  As a

19   result, SIPC was willing at this point for not just the

20   firm, our firm, Baker, but for all counsel to award a

21   reduction in hold back of 50 percent, which is part of the

22   order submitted to Your Honor, in light of the fact that

23   we've achieved the significant goal of, at this point, $12

24   billion and probably shortly $13 billion we'll be

25   collecting.

Page 19

1          So, there being no objection, Your Honor, to this

2     application this morning, I would now ask that Your Honor

3     approve the order as submitted with regard to these

4     applications.

5          THE COURT:  Mr. Bell first has to tell me how long

6     the case is going to be.

7          MR. BELL:  Kevin Bell on behalf of the Securities

8     Investor Protection Corporation.  I want to pick up where

9     Mr. Sheehan was, and then I'll go to where I was going to

10    go.  And I think I would go back to the first pages of the

11    24th application to highlight certain points.  And I'm going

12    to do this without my glasses, so this'll be fun.

13         The Trustee has, as he notes, recovered through

14    June 30 over $12 billion of the 17.552 billion of principal

15    that was missing 3,177 days ago when the whole proceeding

16    started.  We are in the last third of the ninth year of this

17    case.

18         The reason I wanted to pick up with Mr. Sheehan is

19    because this is an action under the Securities Investor

20    Protection Act, which was enacted into law in late December,

21    December 30, 1970, to protect customers of stockbrokerages

22    who give money to a broker-dealer and the money's missing

23    because the broker fails financially.

24         This is by far the largest of the 330-plus

25    liquidation proceedings that have been started in this case,

Page 20

1   and I've probably been on at least one-third of them in my

2   now -- I'm in my 45th year of being with SIPC.  But the

3   purpose of it, and Mr. Sheehan started to get into it and I

4   just wanted to follow up on that, is this was set up by

5   Congress as a proceeding -- Judge Rakoff and I have had a

6   dialogue about it under Title 15 under the Federal

7   Securities Laws, so that the industry, the securities

8   industry would pay assessments so that SIPC would have an

9   adequate fund.

10          Because in the mid to late '60s, the New York

11  Stock Exchange, which was the dominant industry leader of

12  broker-dealers, ran out of money in their self-funding

13  mechanism and there was a great debate in the legislative

14  history, which I've read many times, to set something up so

15  that we'd have people who would have confidence in

16  investing.

17          The effort that we have seen reported in these 24

18  applications by BakerHostetler and the Trustee, and the 23

19  or so by Windels and other counsel just follows what the

20  guidance was of all that legislative history.  That we would

21  put the confidence back in the industry.  And there is

22  confidence because -- I had a phone call yesterday with an

23  individual who had an allowed claim and he was able -- the

24  Trustee allowed it for about $2.3 million, and he was able

25  to sell it for 1.8 to a claims trader and get his money, and

Page 21

1    he -- retired lawyer, had a very -- we had a very good

2    discussion about it because there is this fund now that Mr.

3    Bredan is administering, and he was somewhat confused with

4    some of what Mr. Bredan's people were saying.  But I went to

5    talk to him and it's always enlightening when you talk to

6    the innocent victims, to see how pleased they are that we

7    have this protection system here.

8            And Mr. Sheehan talked about SIPC's advances.

9    Well, we're not there yet.  There are still 900 -- I think

10   it's 965 customers who have allowed claims, who have not

11   been fully satisfied.  And I think my corporation has an

12   obligation under the law to keep funding the Trustee as long

13   as there are viable causes of action.

14           And as the Court knows from my past statements,

15   you know, there's been eight interim distributions and I

16   know, as Mr. Sheehan's saying, I get the inkling, there will

17   be a ninth in the near future -- where the Trustee has

18   distributed 9.725 billion, in Paragraph 2 of their

19   application, to customers with allowed claims, including the

20   SIPC advance under the statutory mandate with the limitation

21   of $500,000 -- SPIC has advanced about $840 million to the

22   Trustee to satisfy those claims.

23           We have advanced more than that for all the

24   administrative cost.  Because we -- and I just wanted to put

25   this on the record, is that no administrative cost including

Page 22

1    every penny that has been paid pursuant to the 23 prior

2    orders of this Court for the Trustee and his counsel, all

3    special counsel, all consultants, everybody who works on

4    this case comes out of -- not one penny comes out of these

5    over 12 billion in recoveries.  Most chargeable to the

6    general estate and the mechanism in the amended statute is

7    that SIPC pays everything.  In the early days, and I worked

8    on the Weiss case, it was allocated between the customer --

9    between what was then the fund of customer property, what is

10   now called the fund of customer property and the general

11   estate.  The SIPC board didn't like that.  We went to

12   Congress.  And on May 25, 1978 the statute was changed,

13   fortunately, that SIPC pays the whole loan.

14          So, every penny recovered by these efforts go to

15   satisfying allowed claims, and the -- that just puts us in

16   context this far into the case.  Now, as to our

17   recommendations, as the Court knows, the statute at 78EEEB5A

18   says where there's now an asset case -- and in here the

19   Trustee does say there's no reasonable expectation that

20   we'll get to 100 percent or we'll have enough for a general

21   estate -- maybe that'll change -- then SIPC recommendation

22   is accepted by the Court or the Court reviews our

23   recommendation, ask me questions if they wish, and SIPC will

24   advance the funds to pay it.

25          As to the holdback, SIPC has been since the

Page 23

1    beginning requesting that there be money held back.  And the

2    decision was made by SIPC's president and general counsel,

3    myself, to reduce that holdback because of the excellent

4    effort...  The last reduction holdback was one year ago, so

5    we look in the year that's happened and this year has been

6    very good.  And I think that later in the year the Court

7    will see it's been really very good -- to reduce this

8    holdback, and we think there is a sufficient amount there

9    for our purposes for oversight.

10           I would call the Court's attention to our

11   recommendation, SIPC's recommendation on BakerHostetler or

12   at Paragraph 6 of the recommendation where we note that

13   there -- besides the 10 percent, there were other reductions

14   as we reviewed the fee applications, which are graciously

15   accepted by BakerHostetler when we made the recommendations

16   that there be reductions, and that's about 13.88 percent off

17   their normal billing rates.

18           Similarly, at Paragraph 3 of the Windel Marx

19   recommendation, it shows that that number is about 15.23

20   percent of the normal billing rates.  And, similarly, for

21   the 21 other fee applications that are before the Court,

22   there has been similar oversight.  There are a few of these

23   that are only for a reduction of holdback because in this

24   fee period from December 16 to March, end of March 17,

25   certain counsel did not expend any time but they've expended

Page 24

1    that in the past.

2          So, therefore, based on all of that and on our

3    recommendations, we would ask that the Court approve all 23

4    fee applications that are before the Court, and I am here to

5    answer any questions that Your Honor may have.

6          THE COURT:  Thank you.

7          MR. BELL:  Thank you.

8          THE COURT:  Does anyone else want to be heard?  In

9    light of the representational prediction that this is

10   essentially an insolvent general estate, SIPC's

11   recommendation and the requirements in the statute, I'll

12   approve the fee applications and request for reimbursement

13   of expenses.  Thank you very much.  You can submit an order.

14         MR. SHEEHAN:  Thank you, Your Honor.

15         THE COURT:  Yes.

16         (Whereupon these proceedings were concluded at

17   10:33 AM.)

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                    RULINGS

4                                        Page        Line

5

6   Fee applications and request for reimbursement

7   of expenses Approved                    24          12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                  C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   Sonya

    Ledanski Hyde

7

Digitally signed by Sonya
Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o,
ou, email=digital1@veritext.com,
c=US
Date: 2017.08.24 16:28:32 -04'00'

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 24, 2017