**Baker & Hostetler LLP**

45 Rockefeller Plaza

New York, New York 10111

Telephone: (212) 589-4200

Facsimile: (212) 589-4201

David J. Sheehan

Nicholas J. Cremona

Jorian L. Rose

Amy E. Vanderwal

Stephanie A. Ackerman

Hearing Date:  October 25, 2017

Hearing Time:  10:00 AM (EST)

Objection Deadline:  October 4, 2017

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## TRUSTEE'S MOTION AND MEMORANDUM OF LAW TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN THE JENNIE BRETT AND DAVID MOSKOWITZ ACCOUNTS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................ 2

    B.    THE BLMIS ACCOUNTS AND OBJECTING CLAIMANTS' CLAIMS.......... 3

        1.    The Jennie Brett Account.......................................................................... 3

        2.    The David Moskowitz Account.................................................................. 5

        3.    The BLMIS Account Records ................................................................... 7

        4.    The Claims ................................................................................................ 8

    C.    THE CUSTOMER DECISIONS ....................................................................... 9

ARGUMENT ............................................................................................................... 11

CONCLUSION............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
216 B.R. 719 (Bankr. S.D.N.Y. 1998)......................................................................12

*Appleton v. First Nat'l Bank of Ohio*,
62 F.3d 791 (6th Cir. 1995) ....................................................................................12

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
454 B.R. 285 (Bankr. S.D.N.Y. 2011) ....................................................................16

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011)......................................................................2, 9, 12, 13

*FirstBank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*,
562 B.R. 234 (S.D.N.Y. 2016)................................................................................12

*In re Klein, Maus & Shire, Inc.*,
301 B.R. 408 (Bankr. S.D.N.Y. 2003) ....................................................................16

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
708 F.3d 422 (2d Cir. 2013)............................................................................ *passim*

*In re Lehman Bros., Inc.*,
791 F.3d 277 (2d Cir. 2015)....................................................................................12

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
277 B.R. 520 (Bankr. S.D.N.Y. 2002) ..............................................................3, 16

*In re New Times Securities Services*,
463 F.3d 125 (2d Cir. 2006)..............................................................................12, 16

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
779 F.3d 74 (2d Cir. 2015)......................................................................................14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 161 (Bankr. S.D.N.Y. 2014)..................................................10, 11, 13,16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*,
2017 WL 1323473 (Bankr. S.D.N.Y. Apr. 10, 2017)............................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*,
533 F.2d 1314 (2d Cir. 1976) ............................................................................ *passim*

*SEC v. Madoff*,
2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) ................................................2

**Statutes**

15 U.S.C. § 78aaa *et seq* ........................................................................................1

15 U.S.C. § 78eee(a)(4) ...........................................................................................2

15 U.S.C. § 78eee(b)(3), (4) ....................................................................................2

15 U.S.C. § 78fff-1(a) ..............................................................................................2

15 U.S.C. § 78fff-2(b) ............................................................................................14

15 U.S.C. § 78fff-3(a) ..............................................................................................3

15 U.S.C. § 78*lll*(2) .........................................................................................2, 3, 11

15 U.S.C. § 78*lll*(4) ................................................................................................3

15 U.S.C. § 78*lll*(11) .........................................................................................3, 14

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 36(a)(3) .......................................................................................7, 15

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) ..............................................9

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the "Motion") to affirm the denial of four (4) claims filed by claimants (the "Objecting Claimants") who objected to the Trustee's determinations and who claim an interest in individual BLMIS Accounts—1B0192 held in the name of Jennie Brett, and 1ZA178 held in the name of David Moskowitz.  The Objecting Claimants are specifically identified on Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith.  This Motion is based upon the law set forth below as well as the facts set forth in the accompanying Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding apart from the customer status of the respective account holders—Jennie Brett and David Moskowitz—despite the fact that they neither had BLMIS accounts in their names nor had any direct financial relationship with BLMIS.  Instead, each contributed to a BLMIS Account held only in the name of the individual account holder.  The case is governed by the Second Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), and the many related decisions in this SIPA proceeding, referenced in Section C *infra*, involving the question of who is a "customer" under SIPA.  The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

listed in Exhibit 2 to the Sehgal Declaration, disallowing their claims, and overruling the related

claims objections on the grounds that the Objecting Claimants are not "customers" as such term

is used at SIPA § 78*lll*(2).[2]

## BACKGROUND

### A.    THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in

numerous decisions.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d

Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010).  On

December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the

District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS,

2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor

activities of BLMIS.  The SEC consented to the consolidation of its case with an application of

the Securities Investor Protection Corporation ("SIPC").  Thereafter, SIPC filed an application

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to the fullest extent possible to a broker's customers, assessing

claims, and liquidating other assets of the firm for the benefit of the estate and its creditors,

including claimants to the customer fund.  A SIPA trustee has the general powers of a

bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).  The statutory

framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that

---

[2] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

"customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA §

78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11).  For each customer

with a valid net equity claim, if the customer's share of customer property does not make the

customer whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net

equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the

customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In*

*re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-

established in the Second Circuit that a claimant bears the burden of proving that he or she is a

'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered.  ECF No. 12.

Pursuant to that order, the Trustee determines claims eligible for customer protection under

SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection

with this Court within a certain time period, after which the Trustee requests a hearing date for

the objection and notifies the objecting claimant thereof.  *Id.*

## B.    THE BLMIS ACCOUNTS AND OBJECTING CLAIMANTS' CLAIMS

The Objecting Claimants seek customer status based on their investments with BLMIS

through one of the Accounts.  Three (3) claims were filed by Objecting Claimants related to the

Jennie Brett Account (the "Brett Objecting Claimants"), and one (1) claim was filed by an

Objecting Claimant related to the David Moskowitz Account (the "Moskowitz Objecting

Claimant").  *See* Sehgal Decl., Ex. 1-3.  The claims of the account holders themselves are not at

issue in this Motion.

### 1.    The Jennie Brett Account

BLMIS Account No. 1B0192 ("Account 1B0192") was opened in March of 1993 in the

name of Jennie Brett and remained in her name alone for the life of the account. Sehgal Decl.,

Ex. 4, AMF00156588-92. Each of the BLMIS account opening documents, including the

BLMIS Customer Agreement and Trading Authorization were signed by Jennie Brett as the sole

account holder. *Id.*, AM00156587-92. Over the life of the account, all correspondence with

BLMIS regarding Account 1B0192 was from Jennie Brett or her husband, Thomas Brett on her

behalf. All withdrawal requests were signed by Jennie Brett. *See, e.g.*, *id.*, AMF00156544, 549-

51.[3] *See also*, *id.*, AMF00156545-46, 48. None of the Brett Objecting Claimants— Heidi Hiles,

Rosalinda Macaluso, and Gaetano Macaluso—were identified in the books and records related to

Account 1B0192.

The Trustee served discovery requests on the Brett Objecting Claimants, all of whom

responded. Ackerman Decl. ¶¶ 10. Through his or her responses to the requests for admissions,

each of the Objecting Claimants admitted that he or she did not have an account in his or her

name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not

receive investment statements, correspondence or tax statements from BLMIS, did not have any

control, investment discretion or decision-making power over any investments at BLMIS and

that his or her only relationship to BLMIS existed by way of his or her relationship to Jennie

Brett and/or Thomas Brett. *See* Ackerman Decl. ¶¶ 17.

The documents produced by the Brett Objecting Claimants confirm that their relationship

was with Thomas or Jennie Brett and not BLMIS. Each produced to the Trustee copies of

checks made payable to "Thomas E. Brett, Esq.,"[4] and all identified him as Jennie Brett's

husband who "managed my money in Madoff's 'investment.'" Ackerman Decl., Ex. 4,

---

[3] Mr. Brett submitted deposits and also occasionally requested clarification of the account's returns and other
account maintenance issues, but at all times the account was held in Jennie Brett's name. *Id.*, AMF00156572, 79.

[4] Ackerman Decl., Ex. 4, MCMDP_00001676-77; Ex. 5, MCMDP_00001718-28.

4

MCMDP_00001687; Ex.5, MCMDP_00001703.  That their relationships were with Jennie and

Thomas Brett is further supported and confirmed by the production of IRS Form 1099's provided

to Rosalindo Macaluso and Heidi Hiles by Vincenza J. Brett identifying their respective income

payments from Ms. Brett.  Ackerman Decl., Ex. 4, MCMDP_000001681; Ex.5,

MCMDP_00001753.  Furthermore, all admit that they "do not have a direct account with Madoff

Securities," that they are not among the named customers of BLMIS and that Jennie Brett is the

direct account holder.  *Id.*, Ex. 4, MCMDP_000001687; Ex. 5, MCMDP_00001703.

Jennie Brett filed a customer claim on behalf of Account 1B0192.  The Trustee denied

the claim because, based on the Trustee's analysis, the amount of money that Jennie Brett

withdrew from Account 1B0192 was greater than the amount that was deposited, making the

account holder a "net winner."  Thus, a determination letter was sent to Jennie Brett denying her

customer claim.  An objection to the Trustee's determination of the claim was timely filed on

July 21, 2010 and is pending.

**2.    The David Moskowitz Account**

BLMIS Account Number 1ZA178 ("Account 1ZA178") was opened on or around

December 8, 1992 in the name of David Moskowitz and was held in his name alone for the life

of the account.  Sehgal Decl., Ex. 8, AMF00040114-18.  The BLMIS account opening

documents, including the BLMIS Customer Agreement, Trading Authorization, and Option

Agreement, were each signed by David Moskowitz as the sole account holder.  *Id.*,

AMF00040114-20.

All correspondence related to Account 1ZA178 was to or from David Moskowitz and all

deposits into and all requests for withdrawals from Account 1ZA178 were sent to BLMIS by

David Moskowitz.  *Id.*  Each request for a withdrawal was signed by David Moskowitz and was

written on his own letterhead, with each requesting that a withdrawal from "my account" be sent

5

to him directly.  *See, e.g.*, *id.*, AMF00040103, 109.  In contrast, the BLMIS books and records related to Account 1ZA178 are devoid of any references to the Moskowitz Objecting Claimant, Leah Larsen.

The Trustee served discovery requests on Leah Larsen.  Ms. Larsen responded to the Trustee's Interrogatories and produced documents in response to the Trustee's discovery requests, but failed to respond to the Trustee's Requests for Admissions.  Ackerman Decl. ¶ 16. Ms. Larsen seeks customer status based on two deposits purportedly made by her into Account 1ZA178.  In support, Ms. Larsen attached to her customer claim a bank check purportedly for one of these two deposits, purchased by her, and made payable to "Bernard L. Madoff Investment Securities LLC."[5]  *See* Sehgal Decl., Ex. 9, MWPTAP00544183.  While Ms. Larsen asserts that she sent these checks directly to BLMIS for deposit, she admits that her instructions to BLMIS were for the checks to be "deposited into David [Moskowitz]'s Account."  *See* Ackerman Decl., Ex.3, MCMDR_00000013.  This instruction is borne out by the notation of "1ZA178" on the face of the cancelled January 2007 check and a corresponding credit of the same amount to Account 1ZA178.  *See* Sehgal Decl., Ex. 9, MWPTAP00544183.

The remaining support for Ms. Larsen's claim to customer status further confirms that her relationship was with David Moskowitz and not with BLMIS.  Specifically, Ms. Larsen produced an agreement signed by David Moskowitz acknowledging her January 2007 deposit into his BLMIS account,[6] held in his name.  *See* Ackerman Decl., Ex. 6, MCMDR_00000118. Furthermore, and as noted above, Ms. Larsen failed to respond to the Trustee's Requests for

---

[5] Despite referencing a second check as an exhibit to objection to determination, Ms. Larsen neither attached the second check thereto, nor produced any such check to the Trustee.  *See* ECF No. 3854 (Feb. 15, 2011).

[6] The document references BLMIS Account "1-ZW0002-3" as the recipient account instead of 1ZA178.  Mr. Moskowitz also held BLMIS Account 1ZW002 in the name of "Millennium Trust Company, LLC FBO David Moskowitz (43400)."

Admission.  By failing to respond to the requests for admissions, Ms. Larsen admitted them.

FED. R. CIV. P. 36(a)(3).  Thus, Ms. Larsen admitted that she did not have an account in her

name at BLMIS, did not make a payment of cash directly to BLMIS for credit to an account in

her name, did not receive investment statements, correspondence or tax statements from BLMIS,

did not have any control, investment discretion or decision-making power over any investments

at BLMIS and that her only relationship to BLMIS existed by way of her relationship to David

Moskowitz.  *See* Ackerman Decl. ¶ 13, Ex. 3.

David Moskowitz submitted a direct customer claim on behalf of Account 1ZA178.  The

Trustee denied the claim because, based on the Trustee's analysis, the amount of money that

David Moskowitz withdrew from Account 1ZA178 was greater than the amount that was

deposited, making the account holder a "net winner."  Thus, a determination letter was sent to

David Moskowitz denying his customer claim.  An objection to the Trustee's determination of

the claim was timely filed on January 5, 2010.  The Trustee's determination of the direct claim

for Account 1ZA178 was affirmed and the objection overruled by this Court's Order Granting

Trustee's Fifth Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who

have No Net Equity, ECF No. 12326 (Dec. 30, 2015).  No appeal was taken.

### 3.    The BLMIS Account Records

The account holders each maintained an account in his or her own name (each, an

"Account" and collectively, the "Accounts") with BLMIS.  The Objecting Claimants did not.

The books and records of BLMIS reflect money deposited and withdrawn by the account holders

or their representatives, on behalf of the account holders, and not by the Objecting Claimants.

*See* Sehgal Decl., Exs. 4, 8.  All of the Objecting Claimants admit that BLMIS sent account

statements and related communications to the account holders, not to the Objecting Claimants.

Further, the BLMIS customer files for these Accounts do not reference the particular interests held by any of the Objecting Claimants in the Accounts. *See id.*

Because the Accounts were maintained at BLMIS on behalf of the account holders—Jennie Brett and David Moskowitz—and the deposits into and withdrawals from the Accounts were on their behalf, the books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate to the account holders.  In contrast, the books and records of BLMIS do not reflect deposits or withdrawals directly from or to BLMIS by the individual Objecting Claimants with regard to any of the Accounts.  They also do not show what amounts individual Objecting Claimants purportedly invested in, or withdrew from the Accounts.  *See* Sehgal Decl. ¶ 21, Exs. 4, 8.  It was the account holders, Jennie Brett and David Moskowitz, who had the right to demand the return of the property entrusted to BLMIS for the Accounts, and the account holders alone, who were entitled to customer claims to the extent of the net equity in the Accounts.

### 4.    The Claims

The Objecting Claimants, the four (4) claims filed by them, and the four (4) docketed objections to the determination of those claims, are specifically identified in Exhibits 2 and 3 to the Sehgal Declaration.  Sehgal Decl. ¶¶ 10-12, Exs. 1-3.  The Trustee denied their claims because they lacked BLMIS accounts and, thus were not customers of BLMIS.  Sehgal Decl. ¶ 11.  This Motion addresses all docketed objections to the determinations of the specified claims by Objecting Claimants who are identified in Exhibit 2 of the Sehgal Declaration.

Since receiving the four (4) docketed objections to the claims determinations, the Trustee served discovery requests on each of the Objecting Claimants seeking to determine their basis for claiming customer status, and inquiring into deposits, payments, communications, account openings, and their relationship with the respective account holder.  Each of the Objecting Claimants responded to all or part of the Trustee's discovery requests, but none provided

persuasive evidence of their entitlement to customer status under SIPA. *See* Ackerman Decl. ¶ 10.

## C.    **THE CUSTOMER DECISIONS**

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held interests in a limited partnership that in turn invested partnership funds with BLMIS via the partnership's own BLMIS account "never entrusted their cash or securities to BLMIS and, thus, failed to satisfy this "critical aspect of the 'customer' definition" regardless of their intent. 708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236). There, because the money sent to BLMIS belonged to the account holders, not to the individual claimants, the claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status— entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant will not be entitled to customer protection under SIPA unless the debtor actually receives the claimant's cash or securities; the debtor must actually have come into possession or control.") (citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)). In its decision, the Second Circuit confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted).

The Second Circuit also found that the individual claimants in *Kruse* did not exhibit other indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they did not exert any control over the accounts at issue and that they were not reflected in BLMIS records. *Kruse*, 708 F.3d at 426-27. Indicia of customer status include: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan,*

*Kennedy*").  Thus, without entrustment of assets to BLMIS and absent any evidence of any of the indicia of customer status, the Second Circuit held that the objecting claimants failed to sustain their burden of proving that they were customers of BLMIS.

After several similar decisions, on February 25, 2015, this Court read into the record a decision applying *Kruse* and *Morgan, Kennedy*, granting the Trustee's Motion And Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In S&P or P&S Associates, General Partnerships.  ECF No. 9506 at 30 ("*S&P Decision*").  Relying on the prior decisions from the Bankruptcy Court, District Court and Second Circuit considering the meaning of the term "customer" under SIPA, this Court explained that the indicia of customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records.  The Court held that the objecting partners failed to sustain their burden of proving that they were customers, showing instead that they invested their assets with the relevant partnerships.

Since *Kruse*, and including the *S&P Decision*, there have been twenty decisions in this proceeding dealing with whether investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.[7]  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff*

---

[7] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund,

*Inv. Sec. LLC*), 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (the "*ERISA Claimant Decision*") (noting

that prior decisions established that the burden is on the claimant to establish that he is a

"customer" entitled to SIPA protection, and that such showing is not easily met); *see also Sec.*

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*, Adv. No. 08-

01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y. Apr. 10, 2017).

## ARGUMENT

　　To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities."  SIPA § 78*lll*(2).  Thus,

to be a "customer," an investor must have entrusted cash or securities to the debtor for the

purpose of trading or investing in securities.

　　In *Kruse*, the Second Circuit found that investors who bought interests in a limited

partnership that invested partnership funds via the partnership's own BLMIS account "never

---

And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); and the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017).  A twenty-first motion, Trustee's Motion and Memorandum of Law to Affirm His Determinations Denying Claims of Claimants Holding Interests in the Schupak Account, was filed on August 16, 2017, ECF No. 16526, and is currently pending before this Court with a scheduled hearing date of September 20, 2017.  The objection deadline was August 30, 2017.  The Trustee filed a Certificate of No Objection on September 6, 2017, ECF No. 16592.

entrusted *their* cash or securities to BLMIS and, thus, failed to satisfy this 'critical aspect of the "customer" definition'" regardless of their intent.  708 F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  463 F.3d 125, 128 (2d Cir. 2006) (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y. 1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for the purpose of trading and investing in the securities market.").  The Second Circuit further upheld this principle in *In re Lehman Bros., Inc.*, concluding that the "critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  791 F.3d 277, 282 (2d Cir. 2015) (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d at 236).  Recently, the Second Circuit upheld the Southern District of New York's clarification of the meaning of "entrustment" in the context of customer status under SIPA.  In *FirstBank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*, the District Court held that entrustment of securities for purposes of customer status under SIPA requires more than "mere delivery" and a claimant must have had a "fiduciary relationship" with the debtor.  562 B.R. 234, 242-43 (S.D.N.Y. 2016) *aff'd,* No. 16-2547-bk (2d Cir. June 29, 2017).

The Objecting Claimants' asserted interests in the Accounts do not meet the requirements for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d at 1318, reaffirmed in *Kruse*, 708 F.3d at 427, and further clarified in *Firstbank*.  In *Morgan Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held

by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the

name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power

to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the

beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are little different than those of the claimants in

*Morgan Kennedy* and *Kruse*, and their contributions to accounts held in the names of the

respective individual account holders do not exhibit the hallmarks of customer status discussed

in this Court's *S&P Decision*.  *S&P Decision* at 30.  The Objecting Claimants admit that the

Accounts were held solely in the names of account holders—David Moskowitz or Jennie Brett—

thus, title to the assets in those accounts rested with those individuals and not the Objecting

Claimants.  With the exception of one deposit by Leah Larsen, the Objecting Claimants admit to

having entrusted their money to an individual who then entrusted *his or her* assets to BLMIS.

Despite Ms. Larsen's assertion that she sent her deposit directly to BLMIS, there is no evidence

to that effect, and the existing evidence confirms that the deposit was made into David

Moskowitz's account.  Furthermore, under *Firstbank*, her mere delivery of the check to BLMIS

absent any fiduciary relationship *with* BLMIS is insufficient for a finding that she meets the

"critical aspect" of entrustment.  *See* 562 B.R. at 242-43.  The Objecting Claimants thus fail to

satisfy this "critical aspect of the 'customer' definition."  *Kruse*, 708 F.3d at 426-27 (citing *In re*

*Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236); *accord ERISA Claimant Decision*, 515 B.R.

at 169.

All of the Objecting Claimants admit that they did not hold an account in their name with

BLMIS, and therefore, each lacked a direct financial relationship with BLMIS on their own

behalf.  The individual financial interests of the Objecting Claimants were neither identified in,

nor identifiable from, BLMIS' books and records relating to the Accounts.

Like the objecting claimants dealt with by prior customer decisions, the Objecting

Claimants do not individually own the assets that Jennie Brett or David Moskowitz invested in

the Accounts with BLMIS.  Instead, the assets are owned by Jennie Brett or David Moskowitz

alone.  It was Jennie Brett and David Moskowitz, and not the Objecting Claimants, who

entrusted assets to BLMIS for the purpose of purchasing securities, who had the right to direct

the investment of those assets, and who had the right to withdraw property from the Account on

their respective behalves.  *Kruse*, 708 F.3d at 427.  As such, it is Jennie Brett and David

Moskowitz, and not the Objecting Claimants, who are the customers for the Accounts under

SIPA.

Because BLMIS did not perform a custodial function on behalf of the individual

Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net

equity.  The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite

the return of customer property" by "protecting the custody function of brokers."  *Sec. Inv'r*

*Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d

Cir. 2015) (finding impermissible the application of interest or time-based damages to customer

claims under SIPA).  Customers share in the fund of customer property ratably, according to

each customer's "net equity." *Id.* at 77, 81.  The definition of net equity is limited by the

fundamental SIPA design "to return customer property to customers," *id.* at 77, whether in cash

or in actual securities.  *Id.* at 80; *see also* SIPA § 78fff-2(b)(requiring the Trustee to discharge

the obligations of the debtor to customers with valid claims "insofar as such obligations are

ascertainable from the books and records of the debtor or are otherwise established to the

14

satisfaction of the trustee).[8]  The BLMIS books and records relating to the Accounts show that

the Objecting Claimants made no individual deposits into or withdrawals from BLMIS on their

own behalf, and none appear in those books and records.  Sehgal Decl. ¶¶ 15, 19, Exs. 4, 8.  This

is equally true for Leah Larsen.  Neither a record of Ms. Larsen's purported deposit nor her name

appear in the books and records related to Account 1ZA178.  The Objecting Claimants

accordingly have no individual net equity and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with discovery requests by the Trustee,

either in a *pro se* capacity or through counsel, or in an abundance of caution, both.  All of the

Objecting Claimants responded.  Ackerman Decl. ¶¶ 7-10, Ex. 1-3.  With the exception of Leah

Larsen, all affirmatively admitted the requests for admissions.  Ms. Larsen failed to respond to

the requests for admission and therefore, admitted them. FED. R. CIV. P. 36(a)(3).  The

admissions, both actual and implied, show that Objecting Claimants lack any relationship with

BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are

baseless.  Specifically, they admitted that: (i) the relevant Account was not titled in their name;[9]

(ii) that they never received investment statements or tax statements in their names from

BLMIS;[10] (iii) that they never paid cash directly to BLMIS for credit to an account in their

names;[11] (iv) never deposited securities directly with BLMIS;[12] (v) that they never withdrew or

---

[8] SIPA §78*lll*(11) sets forth the definition of "net equity" as "the dollar amount of the account or accounts of a customer," and net equity is to be "determined by . . . [c]alculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date . . . all securities positions of such customer."

[9] Ackerman Decl. Exs. 1–3, ¶ 1.

[10] *Id.* ¶¶ 8, 9.

[11] Ackerman Decl., Exs. 1–3, ¶ 5.

[12] *Id.* ¶ 4.

received funds directly from BLMIS;[13] (vi) that their only relationship to BLMIS existed by way of their relationship to the account holder;[14] (vii) that they never entered into any contracts in their names with BLMIS;[15] and (viii) that they did not have any control, investment discretion or decision-making power over any investment assets at BLMIS.[16]

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." *Kruse*, 708 F.3d at 426 (quoting *In re New Times Sec. Servs., Inc.*, 463 F.3d at 127). Customer status under SIPA is narrowly construed and is the burden of the claimant to establish. *See ERISA Claimant Decision*, 515 B.R. at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at 557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA."). The Objecting Claimants have not met this burden. Thus, under Second Circuit precedent, the Objecting Claimants are not SIPA customers.

---

[13] *Id.* ¶ 6.

[14] *Id.* ¶ 11.

[15] *Id.* ¶ 10.

[16] *Id.* ¶ 12.

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' four claims, overrule the Objecting Claimants' four docketed objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.


Dated: New York, New York
       September 14, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*