**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>                    Defendants. | Adv. Pro. No. 09-01182 (SMB) |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION *IN LIMINE* ON EQUITABLE SUBORDINATION

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.    THE MOTION SHOULD BE DENIED BECAUSE IT PRESENTS NO
        JUSTICIABLE CONTROVERSY .........................................................................2

    II.    THE TRUSTEE MAY EQUITABLY SUBORDINATE DEFENDANTS'
        CUSTOMER CLAIM AND ANY 502(h) CLAIM ................................................4

        A.    Limitations on Customer Claims in a SIPA Liquidation ...........................5

        B.    Equitable Subordination of Defendants' Customer Claim Is
               Consistent With SIPA's *Pro Rata* Distribution to Innocent
               Customers ...............................................................................................7

        C.    The Trustee Can Simultaneously Recover Fraudulent Transfers
               and Equitably Subordinate Ascot Partners' Customer Claim....................10

        D.    Defendants Do Not Yet Have a Section 502(h) Claim and Any
               Such Claim Cannot Be Asserted Against Customer Property ..................11

    III.    DEFENDANTS REPEATEDLY CONFLATE SETTLEMENT TERMS
         WITH RIGHTS IN LITIGATION.........................................................................13

CONCLUSION............................................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*,
    169 B.R. 832 (Bankr. S.D.N.Y. 1994)...................................................................................7, 8

*In re Adler Coleman Clearing Corp.*,
    195 B.R. 266 (Bankr. S.D.N.Y. 1996)...................................................................................6, 12

*Benjamin v. Diamond (In re Mobile Steel Co.)*,
    563 F.2d 692 (5th Cir. 1977) ................................................................................................8, 9

*In re Bernard L. Madoff Inv. Sec.*,
    654 F.3d 229 (2d Cir. 2011)........................................................................................4, 5, 6, 12

*In re BH Sutton Mezz LLC*,
    Adv. No. 16-01187, 2016 WL 8352445 (Bankr. S.D.N.Y. Dec. 1, 2016) ...............................8

*In re Dreier LLP*,
    453 B.R. 499 (Bankr. S.D.N.Y. 2011)......................................................................................7

*Exch. Nat'l Bank of Chi. v. Wyatt*,
    517 F.2d 453 (2d Cir. 1975).......................................................................................................5

*First Trust & Deposit Co. v. Receiver of Salt Springs Nat'l Bank (In re Onondaga
    Litholite Co.)*,
    218 F.2d 671 (2d Cir. 1955).....................................................................................................10

*Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*,
    No. 08-15051 (SMB), 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012).........................12

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) .................................................................................................15

*Iron Arrow Honor Soc'y v. Heckler*,
    464 U.S. 67 (1992).....................................................................................................................3

*In re Lloyd Sec., Inc.*,
    75 F.3d 853 (3d Cir. 1996).........................................................................................................5

*In re LLS America, LLC*,
    No. 2:12-cv-423-RMP, 2015 WL 328918 (E.D. Wash. Jan 23, 2015)...............................9, 14

*In re MF Glob. Holdings Ltd.*,
    Nos. 11-15059 (MG), 11-02790 (MG), 2012 WL 5499847 (Bankr. S.D.N.Y.
    Nov. 13, 2012) ...........................................................................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
  277 B.R. 520 (S.D.N.Y. 2002)........................................................................9

*Monzack v. ADB Investors (In re EMB Assocs., Inc.)*,
  92 B.R. 9 (Bankr. D.R.I. 1988)......................................................................8

*Murphy v. Meritor Sav. Bank (In re O'Day Corp.)*,
  126 B.R. 370 (Bankr. D. Mass. 1991) ..........................................................8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)......................................................................................3

*Official Comm. Of Unsecured Creditors v. Blomen (In re Hydrogen, LLC)*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010)..........................................................8

*Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*,
  326 B.R. 301 (Bankr. D. Del. 2005) .............................................................8

*Official Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006)..........................................................8

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005)...................................................................10, 11

*Picard v. Katz*,
  462 B.R. 447 (S.D.N.Y. 2011)...............................................................4, 9, 11

*Picard v. The Lustig Family 1990 Trust*,
  568 B.R. 481 (Bankr. S.D.N.Y. 2017)........................................................11

*Perkin v. Merkin*,
  515 B.R. 161 (Bankr. S.D.N.Y. 2014) .................................................. *passim*

*Picard v. Merkin*,
  563 B.R. 737 (Bankr. S.D.N.Y. 2017) .................................................. *passim*

*Pokela v. Red Owl Stores. Inc. (In re Dakota Country Store Foods, Inc.)*,
  107 B.R. 977 (Bankr. D.S.D. 1989).......................................................8, 14

*Rosenman Family, LLC v. Picard*,
  395 F. App'x 766 (2d Cir. 2010) ...........................................................6, 12

*Rule v. Brine, Inc.*,
  85 F.3d 1002 (2d Cir. 1996).......................................................................10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.,*
   788 F.2d 1208 (6th Cir. 1986) ...................................................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   Adv. No. 08-01789 (BRL), 2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24,
   2009) ...................................................................................................3, 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec, LLC (In re Bernard L.*
   *Madoff Inv. Sec. LLC),*
   501 B.R. 26 (S.D.N.Y. 2013) ...................................................................14

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   499 B.R. 416 (S.D.N.Y. 2013) .......................................................5, 11, 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
   513 B.R. 437 (S.D.N.Y. 2014) .................................................................15

*SEC v. Aberdeen Sec. Co.,*
   480 F.2d 1121 (3d Cir. 1973) ....................................................................5

*SEC v. Albert & Maguire Sec. Co.,*
   378 F. Supp. 906 (E.D. Pa. 1974) .............................................................5

*Texas v. United States,*
   523 U.S. 296 (1998) ...................................................................................3

*In re Vivaro Corp,*
   541 B.R. 144 (Bankr. S.D.N.Y. 2015) ......................................................7

*Walling v. Holman,*
   858 F.2d 79 (2d Cir. 1988) ......................................................................10

*In re Weis Sec., Inc.,*
   No. 73 Civil 2332, 1976 WL 820 (S.D.N.Y. Aug. 2, 1976) ......................5

*Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),*
   389 B.R. 721 (B.A.P. 9th Cir. 2008) .......................................................15

*Wynfield Inns v. Edward LeRoux Group, Inc.,*
   896 F.2d 483 (11th Cir. 1990) .................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Statutes**

11 U.S.C. § 60e ....................................................................................................5

11 U.S.C. § 96e ....................................................................................................5

11 U.S.C. § 502(d) ........................................................................................ *passim*

11 U.S.C. § 502(h) ........................................................................................ *passim*

11 U.S.C. § 510(c) ..........................................................................................7, 11

11 U.S.C. § 548(a), (c) ....................................................................................4, 11

11 U.S.C. § 550 ..................................................................................................15

11 U.S.C. § 550(a) ..........................................................................................4, 11

11 U.S.C. § 726 ....................................................................................................6

15 U.S.C. § 78aaa *et seq.* ....................................................................................1

15 U.S.C. § 78fff-2 ..............................................................................4, 6, 10, 12

15 U.S.C. § 78fff ..........................................................................................5, 6, 11

15 U.S.C. § 78*lll*(4), (11) ..............................................................................5, 12

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L.

Madoff, respectfully submits this memorandum of law in opposition to Defendants'[2] Motion *In

Limine* on Equitable Subordination.  For the reasons set forth herein, Defendants' motion should

be summarily denied or, alternatively, the Court should defer ruling on the issue until after the

trial in this matter.

## PRELIMINARY STATEMENT

Defendants' request for an advisory opinion on the Trustee's claim for equitable

subordination in order to validate their settlement position should not be countenanced.  In

denying Defendants' motions for summary judgment, this Court ruled that the avoidance and

recovery of fraudulent transfer claims and equitable subordination claim will proceed

simultaneously at trial.  Equitable subordination, apart from the claims for avoidance and

recovery of fraudulent transfers, is an independent claim that permits the subordination of

Defendants' customer claim and any claim under 11 U.S.C. § 502(h) of the Bankruptcy Code[3]

upon a finding that Defendants were willfully blind and judgment is entered in favor of the

Trustee.

During the pendency of the trial, Ascot Partners' customer claim remains disallowed

under section 502(d) of the Bankruptcy Code.  If judgment is entered for the Trustee on his

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted simply as "SIPA § __."

[2] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Ltd. ("Ascot Fund") are referred to herein as Defendants.

[3] For convenience, certain subsequent references to the Bankruptcy Code shall omit 11 U.S.C.

fraudulent transfer claims, Ascot Partners' customer claim will be permanently disallowed if the judgment is never paid. Equitable subordination only becomes ripe after: (1) Defendants' payment of the full judgment amount, which makes section 502(d) inapplicable; and (2) Defendants file a section 502(h) claim. But none of this has happened yet, nor will it until after trial. Given the significant and genuine issues in dispute between the parties, this Court should be loathe to bar the application of equitable subordination before trial.

Defendants' intent in their disclosure of settlement discussions and to request the Court's intervention on a post-judgment issue is clear—to force the Trustee into giving these litigating Defendants a better deal than other settling defendants. The Trustee has no intention of abandoning settlement discussions with Defendants, including the Trustee's current settlement posture that would provide Ascot Partners with tens of millions of dollars to distribute to its investors. But, if there is an adverse ruling now on the post-judgment issue of equitable subordination, the Trustee will have no choice but to preserve his rights of appeal. To do otherwise would put the rights of innocent customers of the BLMIS estate, who are entitled to their full net equity claims, below the interests of willfully blind defendants. SIPA does not abide such a result.

Defendants' motion *in limine* should be summarily denied or, alternatively, the Court should defer ruling on the issue until after the trial in this matter.

## ARGUMENT

## I. THE MOTION SHOULD BE DENIED BECAUSE IT PRESENTS NO JUSTICIABLE CONTROVERSY

Defendants' request that the Trustee be barred from applying equitable subordination to Ascot Partners' customer claim and any claim under section 502(h) is not ripe for judicial consideration. "A claim is not ripe for adjudication if it rests upon 'contingent future events that

may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998). A court may not exercise subject matter jurisdiction absent compliance with Article III of the Constitution, which limits judicial authority to "cases" and "controversies." U.S. Const. art. III, § 2. "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1992) (citation omitted). Furthermore, ripeness is determined by (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

This Court, as well as the District Court, has already determined that the Trustee's claims for avoidance and recovery of fraudulent transfers and equitable subordination are issues for trial. *Picard v. Merkin*, 563 B.R. 737, 750-55 (Bankr. S.D.N.Y. 2017) ("*Merkin II*"); *Picard v. Katz*, No. 11 Civ. 3605(JSR), 2012 WL 691551, at *2 (S.D.N.Y. Mar. 5, 2012). Here, at this juncture, judgment has not yet been entered against Defendants on either the avoidance claim or the equitable subordination claim; Defendants have not yet paid the full amount of the judgment; the disallowance of the Defendants' customer claim under section 502(d) has not yet been vacated; and, Defendants have not yet filed a section 502(h) claim. Thus, Defendants' motion to bar equitable subordination of a yet to be allowed customer claim or a yet to be filed section 502(h) claim is grounded in speculation at best, and should not be decided unless and until that issue ripens post-trial. *See* Hr'g Tr. at 13:12-25, *Picard v. Katz*, No. 11 Civ. 3605 (JSR) (Mar. 9, 2012), ECF No. 178 (regarding the equitable subordination claim, District Court determined: "So the jury will decide all disputed issues of fact, I'll decide on that claim what follows as a matter of law."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL),

2009 WL 458769, at *2 (Bankr. S.D.N.Y. Feb. 24, 2009) (court refused to render an advisory

opinion on claimant's request for consideration of section 502(h) claim prior to filing of any

502(h) claims).  Accordingly, as the Court has no justiciable controversy before it now, it should

refrain from offering an impermissible advisory opinion.

## II.    THE TRUSTEE MAY EQUITABLY SUBORDINATE DEFENDANTS' CUSTOMER CLAIM AND ANY 502(h) CLAIM

Equitable subordination is not a duplicative claim; nor does it grant the Trustee a double

recovery.  It provides the Trustee with the separate right to rectify the harm the Defendants' bad

faith conduct caused to other creditors by subordinating Defendants' right to payment from the

estate, in whole or in part, below innocent investors.  11 U.S.C. §§ 548(a), 550(a); SIPA § 78fff-

2(b); *Picard v. Katz*, 462 B.R. 447, 455 (S.D.N.Y. 2011); *Cf. In re Bernard L. Madoff Inv. Sec.*,

654 F.3d 229, 240 (2d Cir. 2011) (noting that "the main purpose of determining 'net equity' is to

achieve a fair allocation of the available resources among the customers . . . .").

The Trustee has sued Defendants for avoidance and recovery of fraudulent transfers and

equitable subordination.  The Trustee has a claim for avoidance and recovery of fraudulent

transfers to Ascot Partners within the two-year period before the Filing Date in the amount of

$280,000,000.[4]  *See* Stipulation and Order ¶ 4, May 8, 2017, ECF No. 361.  The Trustee's

equitable subordination claim seeks to subordinate *any allowed claim* held by Defendants against

the BLMIS estate on account of Defendants' willful blindness.  *See* Third Am. Compl. ¶¶ 23,

402-08.

---

[4] In the Third Amended Complaint, the Trustee sought avoidance and recovery of all fraudulent transfers to Defendants under the Bankruptcy Code and state statute. Third Am. Compl. ¶¶ 316–78, Aug. 30, 2013, ECF No. 151. The Court granted a motion to dismiss at the pleading stage on all avoidance claims other than the two-year actual fraudulent transfer claims. *Merkin I*, 515 B.R. at 124-25.  The Trustee reserves all rights to appeal the dismissal of such claims after entry of final judgment herein.

Ascot Partners filed a customer claim against the BLMIS estate in the amount of $235,734,338.00. *See* Stipulation and Order ¶ 5. This claim has been temporarily disallowed during the pendency of the litigation against Ascot Partners under section 502(d). If a fraudulent transfer judgment is entered and paid by Defendants, they have indicated that they will seek to file a section 502(h) claim against the BLMIS estate in that amount.

### A. Limitations on Customer Claims in a SIPA Liquidation

A SIPA proceeding is basically a bankruptcy liquidation with special protection afforded to customers of the failed brokerage. SIPA § 78fff(a); *see, e.g.*, *In re Lloyd Sec., Inc.*, 75 F.3d 853, 857 (3d Cir. 1996); *Sec. Inv'r Prot. Corp. v. Ambassador Church Fin./Dev. Grp., Inc.*, 788 F.2d 1208, 1210-12 (6th Cir. 1986), *cert. denied sub nom.*, *Pine Street Baptist Church v. Sec. Inv'r Prot. Corp.*, 479 U.S. 850 (1986); *Exch. Nat'l Bank of Chi. v. Wyatt*, 517 F.2d 453, 457-59 (2d Cir. 1975). With its roots in section 60e of the Bankruptcy Act, 11 U.S.C. § 96e, a SIPA liquidation effectively is an ordinary bankruptcy liquidation remodeled to achieve the special purposes of SIPA. *See SEC v. Albert & Maguire Sec. Co.*, 378 F. Supp. 906, 909, 911 (E.D. Pa. 1974); *SEC v. Aberdeen Sec. Co.*, 480 F.2d 1121, 1123 (3d Cir. 1973), *cert. denied sub nom.*, *Seligsohn v. SEC*, 414 U.S. 1111 (1973).

A SIPA liquidation gives priority to payment of customer net equity claims from the customer estate, as distinguished from claims of general creditors, which are paid from the general estate. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 499 B.R. 416, 420 (S.D.N.Y. 2013) ("Correspondingly, SIPA superimposes on the Bankruptcy Code a separate customer property estate that takes priority over the debtor's general estate."); *see also In re Weis Sec., Inc.*, No. 73 Civil 2332, 1976 WL 820, at *6 (S.D.N.Y. Aug. 2, 1976). SIPA provides that customers share ratably in customer property and are entitled to a claim to the extent of their "net equity." SIPA § 78*lll*(11); *In re Bernard L. Madoff Inv. Sec.*

5

*LLC*, 654 F.3d 229, 233 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012).  In this SIPA liquidation, net equity is determined under the "Net Investment Method," which is based on the difference between the amount they deposited and the amount they withdrew from their BLMIS accounts.  *In re Bernard L. Madoff Inv. Sec.*, 654 F.3d at 235.

Because a "customer" with a "net equity" claim has priority status over general creditors, claimants bear the burden of showing that they are entitled to such priority.  *See Perkin v. Merkin*, 515 B.R. 161, 166 (Bankr. S.D.N.Y. 2014) ("*Merkin I*").  For this reason, the traditional rules in bankruptcy regarding claims allowance and the relative burdens of proof apply in this SIPA liquidation only to general creditors, not customers.  *See, e.g.*, *In re MF Glob. Holdings Ltd.*, Nos. 11-15059 (MG), 11-02790 (MG), 2012 WL 5499847, at *3 (Bankr. S.D.N.Y. Nov. 13, 2012) (applying standards for general bankruptcy claims in a SIPA liquidation to general creditor claims).  Net equity claims will only be paid "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b) (emphasis added); *In re Bernard L. Madoff Inv. Sec.*, 654 F.3d at 236-37.

The SIPA proceeding looks to the disposition of claims of customers as well as the claims of general creditors.  *In re Bernard L. Madoff Inv. Sec.*, 654 F.3d 229, 233 (2d Cir. 2011); *Rosenman Family, LLC v. Picard*, 395 F. App'x 766, 768 (2d Cir. 2010) (citing *In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996)).  General estate property is distributed in the order provided in section 726 of the Bankruptcy Code.  *See* 11 U.S.C. § 726.

In many of the BLMIS proceedings that remain to be resolved, as here, the defendant transferees have filed customer claims against the customer estate, which are temporarily disallowed pursuant to section 502(d).  *See* SIPA § 78fff-2(a)(2); 11 U.S.C. § 502(d); *Merkin II*, 563 B.R. at 753-54.  If the Trustee obtains a judgment of avoidance and recovery, and that

judgment is not fully paid in accordance with the dictates of the judgment, the remedy of

equitable subordination would be unnecessary. In that case, the customer has no viable claim

against the customer estate; its claim would continue to be disallowed under section 502(d),

effectively becoming permanently disallowed, and equitable subordination is not needed. *See*

*Merkin II*, 563 B.R. at 753-54; *see also In re Dreier LLP*, 453 B.R. 499, 517 (Bankr. S.D.N.Y.

2011) (holding that section 502(d) provides "broader relief than the Trustee's equitable

subordination claim" because defendant "will not be entitled to any distribution unless it returns

the fraudulent transfer"); *Merkin I*, 515 B.R. at 160-61; *80 Nassau Assocs. v. Crossland Fed.

Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 841 (Bankr. S.D.N.Y. 1994); *In re Vivaro

Corp*, 541 B.R. 144, 148 (Bankr. S.D.N.Y. 2015) ("[S]ection 502(d) requires that the entire

claim be disallowed unless the full amount of the avoidable transfer has [been] repaid.").

If, however, the Trustee is successful on the avoidance and recovery claims against

Defendants, and they pay the amount for which they are liable under the judgment, then Ascot

Partners' customer claim is no longer disallowed under section 502(d). Only then does the

question arise as to whether the customer claim should be allowed or subordinated.

### B.    Equitable Subordination of Defendants' Customer Claim Is Consistent With SIPA's *Pro Rata* Distribution to Innocent Customers

Equitable subordination is codified in section 510(c) of the Bankruptcy Code, which

provides in relevant part:

> (c) . . . [A]fter notice and a hearing, the court may –
>
> (1)    under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510(c). Claims will be subordinated under section 510(c) when (i) a claimant

engaged in inequitable conduct, (ii) which conduct injured creditors of the estate or conferred an

unfair advantage on the claimant and (iii) equitable subordination is consistent with bankruptcy law. *In re BH Sutton Mezz LLC*, Adv. No. 16-01187, 2016 WL 8352445 *31-32 (Bankr. S.D.N.Y. Dec. 1, 2016) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-701 (5th Cir. 1977)); *see In re 80 Nassau Assocs.*, 169 B.R. at 836-37.[5]

Where the return of fraudulent transfers fails to remedy the harm to other creditors caused by inequitable conduct, the Court may subordinate a customer claim against the debtor's estate. *See, e.g.*, *Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 310–11 (Bankr. D. Del. 2005) (holding that bankruptcy courts have "broad equitable powers to subordinate a claim on equitable grounds" in order to provide a "complete remedy" for harmed creditors); *Monzack v. ADB Investors (In re EMB Assocs., Inc.)*, 92 B.R. 9, 19 n.11 (Bankr. D.R.I. 1988) (Where "the misconduct by the claimant involves much more than just a preferential transfer, subordination . . . is appropriate and necessary to offset the full extent of the harm."). Equitable subordination would be appropriate when it would be "unjust or unfair to permit the claimant to share *pro rata* . . . ." *80 Nassau Assocs.*, 169 B.R. at 837; *see also Pokela v. Red Owl Stores. Inc. (In re Dakota Country Store Foods, Inc.)*, 107 B.R. 977, 992-95 (Bankr. D.S.D. 1989) (secured creditor's claim subordinated behind unsecured claims because of inequitable conduct to protect and leverage its investment at the expense of other creditors); *Murphy v. Meritor Sav. Bank (In re O'Day Corp.)*, 126 B.R. 370, 411-12 (Bankr. D. Mass. 1991) (trustee entitled to subordinate claim of bank, a secured creditor, engaged in a course of conduct

---

[5] The third prong may be moot given that the Bankruptcy Code now specifically provides for equitable subordination, which it did not at the time of the *Mobile Steel* decision. *See, e.g.*, *Official Comm. Of Unsecured Creditors v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 360-61 (Bankr. S.D.N.Y. 2010); *Official Comm. Of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 461 (Bankr. S.D.N.Y. 2006).

to improve its position to the serious detriment of other creditors and permitting bank to share in the estate would reduce the available recovery to the injured creditors).

The Trustee is entitled to equitably subordinate Ascot Partners' customer claim or any section 502(h) claim if Defendants are found to be willfully blind. *See Merkin II*, 563 B.R. at 755 ("[T]he Trustee may subordinate claims by "proving that the defendants invested with Madoff Securities with knowledge, or in reckless disregard, of its fraud.") (citations omitted); *Katz*, 462 B.R. at 456-57 (holding that the Trustee can meet the *Mobile Steel* factors and equitably subordinate a transferee's claim against the estate by showing that the claimants were willfully blind to the fraud); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 554, 566-67 (S.D.N.Y. 2002) (subordinating claim of defendant who knowingly closed his eyes to a fraud). Here, Defendants' inequitable conduct was receiving transfers from BLMIS while willfully blinding themselves to facts suggesting a high probability of fraud at BLMIS. By receiving transfers in bad faith, Defendants received an unfair advantage and the customer estate as a whole was harmed because those funds otherwise would have been available for distribution.[6] *Merkin I*, 515 B.R. at 160.

The net loser status of Ascot Partners on the Filing Date does not diminish the unfair advantage enjoyed by Ascot Partners and Ascot Fund in the years preceding the Filing Date. Ascot Partners and Ascot Fund leveraged their exclusive relationship with BLMIS to solicit hundreds of millions of dollars from investors, permitting Mr. Merkin and his management

---

[6] Defendants' argument that the Trustee's equitable subordination claim is a disguise for an improper claim for aiding and abetting of the fraud is pointless. Nomenclature aside, the District Court in *Katz* determined that the Trustee only needed to show that the claimant had knowledge of or reckless disregard for the fraud in order to equitably subordinate the claim because such misconduct injured creditors who invested with BLMIS because of the impressive returns that others received. *Katz*, 462 B.R. at 456-57; *see In re LLS America, LLC*, No. 2:12-cv-423-RMP, 2015 WL 328918, at *12 (E.D. Wash. Jan 23, 2015) (subordinating the claims of net winners in a Ponzi scheme because the defendants "recruited other investors without investigating the signs that Debtor's business was fraudulent. This misconduct contributed to Debtor's successful operation of its Ponzi scheme.").

company, GCC, to reap over a half-billion dollars in management fees.  *Merkin I*, 515 B.R. at

148-49 (aura of profitability through investments with BLMIS benefitted Defendants by

allowing them to attract more investors, enabling the business to survive); *Merkin II*, 563 B.R. at

750 ("[A]nd any favorable inference is undercut by the $685 million in fees Merkin received

through 2007 for managing the same funds in which he and his family invested.").  Thus,

Defendants' customer claim is not "free from [the] equitable infirmities" that would permit them

to share *pro rata* with innocent customers of this SIPA liquidation.  *See* SIPA § 78fff-2(b); *First*

*Trust & Deposit Co. v. Receiver of Salt Springs Nat'l Bank (In re Onondaga Litholite Co.)*, 218

F.2d 671 (2d Cir. 1955) (creditor may share on parity with other creditors after adjudication and

return of the debtor's assets only if the creditor has "a valid common claim *free from equitable*

*infirmities*.").

### C.    The Trustee Can Simultaneously Recover Fraudulent Transfers and Equitably Subordinate Ascot Partners' Customer Claim

Contrary to Defendants' accusation, avoidance and recovery claims and equitable

subordination claims are not duplicative claims, nor do they result in a double recovery to the

Trustee.  Claims for avoidance and recovery of fraudulent transfers and equitable subordination

are distinct claims with distinct remedies.[7]  Claims for avoidance of fraudulent transfers requires

the defendant to return property of the customer estate while equitable subordination ensures that

the "bad-acting" creditor does not get paid *pro rata* with innocent creditors.  *In re Owens*

---

[7] Even assuming arguendo that equitable subordination duplicates the return of a fraudulent transfer, which it does not, it is the Trustee, not Defendants, who is entitled to choose the remedy post-trial.  *See, e.g.*, *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("[T]he plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories."); *Walling v. Holman*, 858 F.2d 79, 83 (2d Cir. 1988) (holding that the district court should have permitted a breach of contract claim to go to the jury with a duplicative tort claim); *see, e.g.*, *Wynfield Inns v. Edward LeRoux Group, Inc.*, 896 F.2d 483, 488 (11th Cir. 1990) (after a verdict is entered for the plaintiff, it is the plaintiff who may elect the remedy).  The Trustee reserves all rights and claims to provide briefing and argument accordingly.

*Corning*, 419 F.3d 195, 206 (3d Cir. 2005) ("Equitable subordination places bad-acting creditors

behind other creditors when distributions are made . . . [while] [t]urnover and fraudulent transfer

bring back to the transferor debtor assets improperly transferred to another . . . .").

Avoidance and recovery of fraudulent transfers provide relief when a debtor acts

improperly to transfer assets.  11 U.S.C. §§ 548(a), 550(a).  Equitable subordination, on the other

hand, is predicated on whether the creditor, not the debtor, was willfully blind and therefore

caused harm to fellow creditors.  *See In re Owens Corning*, 419 F.3d at 206; *Katz*, 462 B.R. at

456-57; *see also supra* Section II.B.  The creditor may be allowed a claim against the estate but,

if he has acted inequitably, must await payment on that claim behind innocent creditors.  Nothing

in SIPA prevents equitable subordination from applying to customer claims, even though a

customer has deposited cash or securities with the debtor.  1 Collier on Bankruptcy ¶ 12.12[4][c]

(16th ed. 2017) ( citing SIPA § 78fff(b)) (noting "Section 510(c) of the Bankruptcy Code . . .

applies to SIPA proceedings").

## D.   Defendants Do Not Yet Have a Section 502(h) Claim and Any Such Claim Cannot Be Asserted Against Customer Property

At this juncture, Defendants have yet to file a claim under section 502(h) of the

Bankruptcy Code.[8]  But to the extent that Defendants file a section 502(h) claim post-judgment,

such a claim is not a net equity claim and thus cannot be asserted against the customer property

estate.  *See supra* Section II.A.  Rather, it is a general unsecured creditor claim against the

general estate.  *See In re Madoff Sec.*, 499 B.R. at 424  (holding that customers cannot assert

claims for value under section 548(c) against customer property estate beyond their net-equity

claims but must instead assert them against general estate); *Picard v. The Lustig Family 1990*

---

[8] In the absence of a section 502(h) claim for the Court's consideration, the Trustee expressly reserves all rights, claims, and defenses to the section 502(h) claim.

*Trust*, 568 B.R. 481, 488 n.6, 492 (Bankr. S.D.N.Y. 2017) (court summarily dismissed certain affirmative defenses and acknowledged that claims under section 502(h) are "unsecured claims."); *see also* Hr'g Tr. at 11:15-25, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Apr. 16, 2015), ECF No. 9892 (questioning in *Picard v. Defender Ltd.*, Adv. No. 10-05229(SMB), "whether the settling parties paying the full amount that's owed gets a 502(h) claim because it's a fraudulent transfer claim.  Whether it's a claim against I guess the customer estate or against the general estate . . . .").

Such general creditor claims, if allowed, must be paid from the debtor's general estate. SIPA contemplates two separate categories of estate property: the customer property estate and the general estate.  *In re Madoff Sec.*, 499 B.R. at 419, 422; SIPA § 78*lll*(4).  The customer property estate is comprised of recovered customer property intended to satisfy allowed net equity claims of BLMIS customers.  SIPA § 78*lll*(4); *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 233; *Rosenman Family, LLC*, 395 F. App'x at 768.  By contrast, the general estate is intended to satisfy the allowed claims of general creditors.  Importantly, the customer property estate cannot be used to satisfy general creditor claims until all customers' net equity claims, and the other categories of obligations to which customer property may be allocated pursuant to SIPA § 78fff-2(c)(1), have been fully satisfied.  *See In re Adler Coleman*, 195 B.R. at 270.

Moreover, if a 502(h) claim were allowed against the general estate post-judgment, the amount of that claim must still be determined.  It is unclear whether a customer who is found to have received fraudulent transfers while being willfully blind to the fraud, should be entitled to the full credit for the amount returned to the estate.  *See Gowan v. HSBC Mortg. Corp. (USA)* (*In re Dreier LLP*), No. 08-15051 (SMB), 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12, 2012); 4 Collier on Bankruptcy ¶ 502.09[2]  (16th ed. 2017).

12

In sum, Defendants have repaid no fraudulent transfers on a judgment that might be rendered in the Trustee's favor, and thus any section 502(h) claim is presumptuous. Defendants can only file a claim under section 502(h) *after* they pay in full the amount of a judgment, at which point the Court can determine whether such a claim is viable; if so, whether it is allowable; and if allowable, against which estate and whether it should be equitably subordinated in whole or in part. This Court should not provide Defendants an advisory opinion and should leave arguments on the allowance or disallowance, and the amount, of any section 502(h) claim when a justiciable controversy exists.

## III.    DEFENDANTS REPEATEDLY CONFLATE SETTLEMENT TERMS WITH RIGHTS IN LITIGATION

Throughout this litigation, Defendants have intentionally conflated the relief that parties can achieve in settlement with the relief that litigating parties are entitled to after judgment. Based on this tactic, Defendants contend that, notwithstanding a finding of willful blindness, they are (1) automatically entitled to allowance of their full customer claim from the customer estate on a pro rata basis with innocent customers, and (2) automatically entitled to an allowed claim under section 502(h) against the customer estate for the full amount of the repayment of the fraudulent transfer to the Trustee. While the parties are free to negotiate these two options in the settlement context, neither are availing to litigating defendants after trial and a judgment.

In the settlement context, the Trustee and an avoidance defendant may structure the terms of a deal in a mutually beneficial way, including by netting out payments to and from one another. Indeed, even though Defendants grossly misrepresent the Trustee's settlements (*see, e.g.*, Def. Br. at 14-15 n.7), this is precisely what the Trustee has done. For example, in the Trustee's settlement with Lagoon Investment Ltd. ("Lagoon"), the Trustee settled for recovery of the full 6-year transfers from two separate BLMIS customer accounts and provided Lagoon with

an allowed claim that was expressly reduced by the amount of the fictitious profit transfer. *See*

Mot. for Entry of Order Approving Settlement Agreement ¶¶ 6-8, 11, 20, *Picard v. HSBC Bank*

*PLC*, Adv. No. 09-01364(SMB) (Bankr. S.D.N.Y. June 27, 2017), ECF No. 459 ("The

Agreement furthers the interest of BLMIS customers by . . . (c) reducing Lagoon's net equity

claim by the amount of the Fictitious Profit Transfers.").

Similarly, in the Trustee's settlements with Ariel Fund Ltd. and Gabriel Capital, L.P., two

funds formerly controlled by J. Ezra Merkin and GCC, these funds returned the full amount of

the fraudulent transfers from BLMIS, the maximum amount to which the Trustee was entitled to

avoid and recover. *See* Mot. for Entry of Order Approving Settlement Agreement at 3, , ECF

No. 266.  This Court proffered the same terms for settlement to the remaining Defendants herein,

which Defendants promptly rejected.  Status Conf. Tr. at 13:18-22, Aug. 18, 2015, ECF No. 281.

The Trustee's settlement of claims on mutually agreeable terms in some cases does not

prohibit him from pursuing similar claims against non-settling defendants.  In litigation, the

Trustee can pursue all avenues of recovery simultaneously, up to the amount of the avoidable

initial transfer of $280 million.  *See, e.g.*, *Kriegman v. 1127477 Alberta Ltd. (In re LLS Am.,*

*LLC),* No. 2:12-CV-423-RMP, 2015 WL 328918, at *11-12 (E.D. Wash. Jan. 23, 2015)

(subordinating claims of net winners in a Ponzi scheme and ordering recovery of fraudulent

transfers from those net winners simultaneously); *In re Dakota Country Store Foods*, 107 B.R. at

995 ("Permitting avoidance of the preference and equitable subordination attains a choate

remedy and fair division of assets.  Equitable subordination is useful in a situation to prevent the

consummation of a course of conduct which is inequitable and to undo unfairness."); *Cf. Sec.*

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec, LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,

501 B.R. 26, 31 (S.D.N.Y. 2013) (holding trustee can recover from subsequent transferees before

14

avoiding and recovering transfer from initial transferee); *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005) ("[n]othing in the language of Section 550 requires a plaintiff . . . to avoid the transfer received by the initial transferee before continuing with avoidance actions down the line of transfers.") (citation omitted); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008) (same).

If the parties do not reach a settlement prior to judgment on the Trustee's claims, the Trustee is entitled to use the full force of the Bankruptcy Code to enforce that judgment, including recovery of fraudulent transfers, disallowance of any customer claim, and subordination of the customer claim and any section 502(h) claim. *See* 11 U.S.C. § 502(d); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 513 B.R. 437, 444 (S.D.N.Y. 2014); Status Conf. Tr. at 10:12-13. Until judgment is satisfied in full by a payment to the Trustee, no claim will be allowed against the BLMIS estate. And contrary to compromise, there are no guarantees that any claims against the BLMIS estate will be allowed following a judgment, or in what amounts.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order denying Defendants' motion on equitable subordination or, alternatively, the Court should defer ruling on the issue until after the trial in this matter.

Dated:   September 15, 2017
    New York, New York

**BAKER & HOSTETLER LLP**

*/s/ David J. Sheehan*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*