**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the estate of Marianne Lowrey, in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al.*,<br><br>Defendants. | Adv. Pro. No. 10-04387 |

**MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

SECURITIES INVESTOR PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300

JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Assistant General Counsel

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .....v

PRELIMINARY STATEMENT .....1

QUESTIONS PRESENTED.....2

ARGUMENT.....2

I. 11 U.S.C. SECTION 546(e) IS INAPPLICABLE .....3

II. THE ELEMENTS OF 11 U.S.C. §548(a)(1)(A) ARE PRESENT IN THIS CASE.....4

III. BECAUSE NO FICTITIOUS PROFITS WERE OWED, THERE WERE NO OBLIGATIONS OF THE DEBTOR TO THE DEFENDANTS TO AVOID; THE TRUSTEE CORRECTLY CALCULATED THE AMOUNT OF THE LIABILITY BY THE DEFENDANTS OWED TO THE ESTATE.....6

A. The Payment of Fictitious Profits Was Gratuitous. There Were No Obligations Thereby Created by the Debtor to the Defendants .....6

B. The Trustee Properly Calculated Value Based On Deposits Over the Life of the Account .....7

IV. DEFENDANTS HAVE NO DEFENSE UNDER 11 U. S. C. §548(c).....9

A. The Asserted Grounds Creating "Value".....9

B. The Payment of Fictitious Profits In Connection With a Ponzi Scheme Does Not Satisfy An Antecedent Debt.....11

V. DEFENDANTS ERRONEOUSLY ARGUE THAT FEDERAL SECURITY LAW SUPPORTS THEIR RIGHT TO PAYMENT OF FICTITIOUS PROFIT.....13

A. The Specific Provisions of SIPA Override the General Provisions of Securities Law .....13

B. Allowing the Defendants to Keep the Fictitious Profits Undermines SIPA and the Reasons for Avoidance .....15

**TABLE OF CONTENTS**
**(cont.)**

**PAGE**

VI. IN ORDER FOR 11 U.S.C. SECTION 548(c) TO APPLY, IT MUST BE CONSISTENT WITH SIPA ....16

VII. THE DEFENDANTS MISPERCEIVE THE NATURE OF THEIR RELATIONSHIP TO THE DEBTOR ....19

VIII. THE TWO-YEAR LOOK BACK PERIOD IN SECTION 548(a)(1) IS IRRELEVANT TO THE CALCULATION OF "VALUE" ....20

A. Irrespective of How Section 548(a)(1) Is Characterized, the Trustee's Calculation Remains the Same....21

B. As the District Court Has Held, the Calculation of Value Has No Time Limit ....22

C. The District Court's Holding Is Consistent With Case Law....23

D. The CalPERS Decision Does Not Apply....24

CONCLUSION....25

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*In re Adler Coleman Clearing Corp.*, 198 B.R. 70 (Bankr. S.D.N.Y. 1996) ................................18

*Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269 (1946)............................................................14

*Arford v. Miller*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000) ..........................................................................18

*In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den*. (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den*., 567 U.S. 934 (2012)................3, 7

*In re Bevill, Bresler & Schulman, Inc*., 59 B.R. 353, 378 (D.N.J.), *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986) ...............................................................14

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, 137 S. Ct. 2042 (2017)...................................................................................24

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC*), 439 B.R. 284 (S.D.N.Y. 2010) ...................................8, 19, 23

*CTS Corp. v. Waldburger*, __ U.S. __, 134 S.Ct. 2175 (2014).....................................................20

*Donell v. Kowell*, 533 F.3d 762 (9th Cir.), *cert. den*., 555 U.S. 1047 (2008)............................8, 23

*Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013) ....................................................8

*Emerson v. Maples* (*In re Mark Benskin & Co., Inc.)*, 161 B.R. 644 (Bankr. W.D. Tenn. 1993) ...............................................................................23

*Exch. Nat'l Bank of Chicago v. Wyatt*, 517 F.2d 453 (2d Cir. 1975) ...........................................14

*Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014)..............................................................................12

*J.I. Case v. Borak*, 377 U.S. 426 (1964) .......................................................................................14

*In re Klein, Maus & Shire, Inc*., 301 B.R. 408 (Bankr. S.D.N.Y. 2003).......................................18

*In re Lehman Bros. Inc*., 474 B.R. 139 (Bankr. S.D.N.Y. 2012).................................................18

*Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843 (D. Utah 1987)..........................................................................11, 12

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Miller v. DeQuine (In re Stratton Oakmont, Inc.*), 2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003) ....................17

*In re MV Sec., Inc*., 48 B.R. 156 (Bankr. S.D.N.Y. 1985) ....................18

*Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011) ....................5

*Picard v. Chais (In re BLMIS)*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011) ....................5, 13, 19

*Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296, (Bankr. S.D.N.Y. April 25, 2016), *proposed findings of facts and conclusions of law adopted by Memorandum Order, Picard v. Cohen*, No. 16-cv-5513-LTS, Doc. No. 24 (S.D.N.Y. Feb. 24, 2017) ....................5, 13, 18, 22

*Picard v. Cohmad Securities Corp. (In re BLMIS)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011), *leave to appeal den*., 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012) ....................5, 9, 13

*Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den*., __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ......9, 11, 12, 19, 20, 21

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den*., 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ....................3, 4, 7, 10

*Picard v. Madoff (In re BLMIS*), 458 B.R. 87 (Bankr. S.D.N.Y.), *leave to appeal den. sub nom., Picard v. Estate of Madoff*, 464 B.R. 578 (S.D.N.Y. 2011) ....................5, 13

*Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010), *leave to appeal den*., 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) ....................5, 13

*Ritchie Capital Mgt, LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015) ....................5

*Rosenman Family, LLC v. Picard (SIPC v. BLMIS)*, 401 B.R. 629 (Bankr. S.D.N.Y.), *aff'd*, 420 B.R. 108 (S.D.N.Y. 2009), *aff'd*, 395 F. App'x 766 (2d Cir. 2010) ....................5

**TABLE OF AUTHORITIES**

**CASES:** **PAGE**

*Rosenman Family, LLC v. Picard*, 395 F.App'x 766 (2d Cir. 2010)....17

*Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC*),
2017 WL 2376567 (2d Cir. June 1, 2017) ....7, 14

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.),
*cert. den. sub nom. African Enterprise, Inc. v. Scholes*, 516 U.S. 1028 (1995) ....8

*SEC v. Howard Lawrence & Co*., 1 Bankr. Ct. Dec. 577 (S.D.N.Y. 1975) ....18

*SEC v. JNT Investors, Inc*., 1978 WL 1137 (S.D.N.Y. Feb. 9, 1978) ....18

*SEC v. S.J. Salmon & Co*., 375 F. Supp. 867 (S.D.N.Y. 1974) ....18

*Sender v. Buchanan* (*In re Hedged-Invs. Assocs*.),
84 F.3d 1286 (10th Cir. 1996) .... 8, 11-12, 23

*SIPC v. 2427 Parent Corp. (In re BLMIS)*, 779 F.3d 76 (2d Cir.),
*cert. den. sub nom. Peshkin v. Picard*, 136 S. Ct. 218 (2015) ....18

*SIPC v. BLMIS*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011),
*aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*,
480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom.*
*Kruse v. SIPC (In re BLMIS)*, 708 F.3d 422 (2d Cir. 2013) ....24

*SIPC v. BLMIS*, 499 B.R. 416 (S.D.N.Y. 2013),
*certification for interlocutory appeal den.*,
987 F. Supp. 2d 309 (S.D.N.Y.)....12-13, 16-17, 19, 22

*SIPC v. BLMIS*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015) ....5, 9, 13, 15, 18, 19, 21

*SIPC v. Pepperdine Univ. (In re Brentwood Sec., Inc*.),
925 F.2d 325 (9th Cir. 1991) .... 17-18

*Stafford v. Giddens (In re New Times Securities Services, Inc*.),
463 F.3d 125 (2d Cir. 2006)....17

*Visconsi v. Lehman Bros*., 244 F. App'x. 708 (6th Cir. 2007) ....19, 20

*Young v. United States*, 535 U.S. 43 (2002) ....24

# TABLE OF AUTHORITIES

**STATUTES AND RULES:** **PAGE**

Securities Investor Protection Act, as amended, 15 U.S.C. §

78bbb ....................13, 15
78eee(d)....................2
78fff-2(c)(1) ....................16, 17
78fff-2(c)(1)(B)....................17
78fff-2(c)(3) ....................4, 16
78fff-3(a)....................17
78fff(b)....................16
78fff(e) ....................17
78*lll*(4)....................17
78*lll*(11)....................16

Securities Act of 1933, 15 U.S.C.A. §

77*l*(a)(2) ....................10, 15
77m ....................24

Securities Exchange Act of 1934, 15 U.S.C.A. §

78bb(a) ....................10
78bb(a)(1) ....................10, 13
78bb(a)(2) ....................10, 14
78cc(b) ....................10, 15

United States Bankruptcy Code, 11 U.S.C. §

362(a) ....................15
546(e) ....................3, 4
548....................4, 23
548(a) ....................4, 5, 6
548(a)(1) ....................2, 20, 21, 24
548(a)(1)(A)....................2, 3, 4, 5, 7, 12
548(a)(2) ....................12
548(c) ....................2, 5, 6, 9. 11, 16, 17, 18, 21, 22
548(d)(2) ....................9
550(a) ....................4
726....................17

# TABLE OF AUTHORITIES

**STATUTES AND RULES:** **PAGE**

N.Y.U.C.C.§

8-501 ....................10
8-501(b)(1) ....................10
8-503 ....................14

**TREATISES:**

6 *Collier on Bankruptcy*, ¶749.02[1][a]
(Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ....................16

## PRELIMINARY STATEMENT

The Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Debtor") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff has sued the defendants James Lowrey, the Estate of Marianne Lowrey, Turtle Bay Partners, and Coldbrook Associates Partnership ("Defendants") in this case seeking to avoid the transfer of fictitious profits paid to them by BLMIS.[1] The relevant facts have been stipulated to by the parties.[2] The amounts sought by the Trustee, which were paid within the two years preceding the filing date in this liquidation proceeding, are as follows:

| Payee | Amount |
| --- | --- |
| Turtle Cay Partners | $7,845,089[3] |
| Coldbrook Associates Partnership | $1,093,402[4] |
| James Lowrey and The Estate of Marianne Lowrey | $582,182[5] |

Because BLMIS ran a Ponzi scheme, the amounts paid consisted of deposits by other investors, and not real profits.

The parties have cross-moved for summary judgment. The Securities Investor Protection Corporation ("SIPC") which is a party in interest as to all matters arising in a liquidation proceeding under the Securities Investor Protection Act ("SIPA"),[6] with the right to be heard on

---

[1] Unless the context provides others, the defendants in the adversary proceeding are referred to herein collectively as "Defendants."

[2] A copy of the Joint Statement of Undisputed Material Facts, executed by the Trustee and Defendants is Exhibit ("Ex.") A to the Declaration of Keith R. Murphy In Support of Trustee's Motion for Summary Judgment ("Murphy Decl."), filed on August 11, 2017, in Case No. 08-01789-smb, Doc. No. 16506, and in Adversary Proceeding No. 10-04387 (SMB), Doc. No. 80.

[3] Murphy Decl., Ex. A, ¶¶22, 23, 24.

[4] Murphy Decl., Ex. A, ¶¶30, 31, 32.

[5] Murphy Decl., Ex A, ¶¶38, 39, 40.

[6] 15 U.S.C. § 78aaa *et seq*. For convenience, references hereinafter to provisions of SIPA shall omit "15 U.S.C."

all such matters, submits this memorandum of law in support of the Trustee's motion and in opposition to the motion of the Defendants.[7]

## QUESTIONS PRESENTED

In relevant part, under 11 U.S.C. Section 548(a)(1)(A), a trustee may avoid a transfer of property of the debtor made with actual intent to defraud any entity to which the debtor became indebted on or after the date of transfer. Under 11 U.S.C. Section 548(c), an innocent investor may keep a transfer that is otherwise avoidable under Section 548(a)(1)(A) if the investor provided "value" for the transfer. The questions presented are:

I. In a Ponzi scheme and for purposes of 11 U.S.C. Section 548(c), whether an investor who receives payments of fictitious profits provides "value" in exchange for the payments where (i) the amount of profit received is invented by the fraudster; (ii) the fictitious account statements reflecting the "profit" have been held to be invalid and unenforceable; and (iii) Federal Courts of Appeals considering the issue consistently allow innocent investors to keep distributions only up to the amount of their principal on the basis that further payments confer no benefit or "value" and merely deplete the resources of the debtor more quickly while perpetuating the Ponzi scheme.

II. Whether or not 11 U.S.C. Section 548(a)(1) is a statute of repose, relevant to the calculation of the defendants' avoidance liability where identification of voidable transactions during the two-year period under Section 548(a)(1) is separate from the calculation of value to the estate under 11 U.S.C. Section 548(c) which has no time limitation.

SIPC respectfully submits that the answer to each question is "no."

## ARGUMENT

Defendants assert that they are entitled to keep the fictitious profits for several reasons. None of their reasons are well-grounded. Most have been decided previously by the Courts -- including repeatedly in this liquidation proceeding -- adversely to the Defendants' position. All

[7] SIPA § 78eee(d).

amount to a transparent attempt to have this Court re-write the Second Circuit's *Net Equity Decision*.[8] All would undermine key objectives of a SIPA proceeding including the return to customers of their brokerage cash and securities, *pro rata*, so that no customer benefits at the expense of any other.

## I. <u>11 U. S. C. SECTION 546(e) IS INAPPLICABLE</u>

Initially, the Defendants rely upon the Second Circuit's decision in *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den.*, __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ("*546(e) Decision*"). Def. Mem. at 2, 3, 23, 24, 26, 29, 31, 33.[9] In that case, the Court examined whether Section 546(e) of the Bankruptcy Code (11 U.S.C.) shielded from avoidance certain payments made by the Debtor. The Court noted that by providing a safe harbor against avoidance of certain transfers, Section 546(e) was intended to "minimize[e] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." Thus, if, as a result of repaying unwound settled securities transactions, a firm lacked capital to meet current obligations, other market participants and the securities markets could be placed at risk. 773 F.3d at 416 (citations omitted). But the Court found that Section 546(e) also served another important purpose, which was the need for finality. By limiting a trustee's ability to avoid transfers to those made under Section 548(a)(1)(A) of the Bankruptcy Code, Congress had "struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." 773 F.3d at 423.

---

[8] *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229, 235 (2d Cir. 2011), *reh'g and reh'g en banc den*. (2d Cir. Nov. 08, 2011), *cert. dismissed*, 132 S. Ct. 2712 (2012), and *cert. den*., 567 U.S. 934 (2012) ("*Net Equity Decision*").

[9] On August 11, 2017, the Defendants filed a Memorandum of Law in support of their Motion for Summary Judgment. *See* Adv. Pro. No. 10-04387 (SMB), Doc. No. 83-1, referred to herein as Defendants' Memorandum ("Def. Mem.").

The Trustee brings this action, in part, under 11 U.S.C. Sections 548(a)(1)(A) and 550(a).[10] As Section 546(e) provides, and as the Second Circuit observed, avoidance actions under Section 548(a)(1)(A) of Title 11, are exempt from the safe harbor. As such, the Trustee is empowered to bring this suit so long as the elements of Section 548(a)(1)(A) are met. The elements are met in this case, as Defendants have stipulated; Section 546(e) does not apply; and the contention by the Defendants that the *546(e) Decision* recognizes their right to the full amount of fictitious profit shown on their account statements is in error.

## II. THE ELEMENTS OF 11 U. S. C. §548(a)(1)(A) ARE PRESENT IN THIS CASE

In relevant part, under Section 548(a)(1)(A) of the Bankruptcy Code,

> The trustee may avoid any transfer … of an interest of the debtor in property … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (A) made such transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made …, indebted….

As stipulated by the Defendants, *see* Murphy Decl., Ex. A, ¶9, each requirement of Section 548(a)(1)(A) is satisfied in this case. First, the transfers were made within the two-year period. Second, under SIPA Section 78fff-2(c)(3), the transferred cash that belonged to customers is deemed to be debtor property for purposes of avoidance under Title 11. Third, the Defendants do not dispute that the Debtor ran a Ponzi scheme.[11] Fourth, as a number of Courts

---

[10] Under 11 U.S.C. Section 550(a), if a transfer is avoided under Section 548, the trustee may recover the property transferred or its value from the initial transferee or any immediate or mediate transferee.

The Trustee notes that other counts of the complaints either were dismissed or rendered moot. *See* Trustee's Memorandum of Law In Support of Motion for Summary Judgment, filed on August 11, 2017, in Case No. 08-01789-smb, Doc. No. 16504, at 4.

[11] *See* Murphy Decl., Ex. A, ¶10; Def. Mem. at 1, 7.

have held, including this Bankruptcy Court in this liquidation proceeding, a Ponzi scheme is proof of the Debtor's intent to defraud customers. *See Ritchie Capital Mgt, LLC v. Stoebner*, 779 F.3d 857, 862 (8th Cir. 2015) ("Several courts have decided '[w]ith respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under [11 U.S.C.] § 548(a),' *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011)…"). *See also Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. April 25, 2016) ("*Cohen*"), *proposed findings of fact and conclusions of law adopted by* Memorandum Order, *Picard v. Cohen*, No. 16-cv-5513-LTS, Doc. No. 24 (S.D.N.Y. Feb. 24, 2017); *SIPC v. BLMIS*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*"); *Picard v. Madoff (In re BLMIS*), 458 B.R. 87, 104-105 (Bankr. S.D.N.Y.) ("*Peter Madoff Decision*") ("As a matter of law, the 'Ponzi scheme presumption' establishes the debtors' fraudulent intent as required under … the [Bankruptcy] Code…."), *leave to appeal den. sub nom. Picard v. Estate of Madoff,* 464 B.R. 578 (S.D.N.Y. 2011); *Picard v. Cohmad Securities Corp. (In re BLMIS)*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011), *leave to appeal den*., 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012) *("Cohmad")*; *Picard v. Chais (In re BLMIS)*, 445 B.R. 206, 220 (Bankr. S.D.N.Y. 2011) ("*Chais*"); *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010), *leave to appeal den*., 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011); *Rosenman Family, LLC v. Picard (SIPC v. BLMIS)*, 401 B.R. 629, 632 n.2 (Bankr. S.D.N.Y.), *aff'd,* 420 B.R. 108 (S.D.N.Y. 2009), *aff'd*, 395 F. App'x 766 (2d Cir. 2010).

The requirements of Section 548(a)(1)(A) having been met as stipulated, the Defendants rely upon Section 548(c) of the Bankruptcy Code for their defense. Def. Mem. at 2, 12, 18-24.

In relevant part, under Section 548(c), notwithstanding that a transfer is voidable, among other provisions, under Section 548(a),

> a transferee .. that takes for value and in good faith has a lien on or may retain any interest transferred …, to the extent that such transferee … gave value to the debtor in exchange for such transfer ….

11 U.S.C. § 548(c). The Trustee does not challenge the good faith of the Defendants.[12] Defendants therefore correctly assert that the only issue under Section 548(c) is whether they gave "value" in exchange for the monies received. Def. Mem. at 2. They incorrectly assert that they did.

## III. BECAUSE NO FICTITIOUS PROFITS WERE OWED, THERE WERE NO OBLIGATIONS OF THE DEBTOR TO THE DEFENDANTS TO AVOID; THE TRUSTEE CORRECTLY CALCULATED THE AMOUNT OF THE LIABILITY BY THE DEFENDANTS OWED TO THE ESTATE

### A. The Payment of Fictitious Profits Was Gratuitous. There Were No Obligations Thereby Created by the Debtor to the Defendants

The Defendants argue that in order to recover the fictitious profits, it was necessary for the Trustee first to seek to avoid "obligations" of the Debtor to the Defendants. They contend that the account statements showed "trades" made for the Defendants which allegedly created obligations by the Debtor to the Defendants. Absent avoidance of these "obligations," they maintain that they are entitled to keep the "profits" invented by the fraudster set forth on the statements. Def. Mem. at 3, 6-7, 27-30. Of course, no trades actually were placed by BLMIS. The statements showed profit because the so-called trades were imaginary, invented by Bernard Madoff.

---

[12] *See* Murphy Decl., Ex. A ¶42.

Nevertheless, the Defendants view each account statement as creating an obligation in the amount of the fake profit. Not only is there no basis for their position, but it contradicts the pronouncement by the Second Circuit in this liquidation proceeding on at least two occasions. In the *Net Equity Decision*, the Second Circuit observed that "the BLMIS customer statements reflect impossible transactions and the Trustee is not obligated to step into the shoes of the defrauder or treat the customer statements as reflections of reality." 654 F.3d at 242. The Court reiterated this view in *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC*), 2017 WL 2376567 (2d Cir. June 1, 2017). There, it stated: "[w]e continue to refuse, however, to `treat[] fictitious and arbitrarily assigned paper profits as real' and to give `legal effect to Madoff's machinations.' [citation omitted]." *Id.* at *3. Significantly, the aforementioned *Sagor* decision was issued *after* the *546(e) Decision* upon which the Defendants rely in their attempt to persuade this Court to view the fictitious profits as owed. Def. Mem. at 33-34.

**B. The Trustee Properly Calculated Value Based On Deposits Over the Life of the Account**

The Defendants also maintain that a calculus other than the difference between amounts deposited and amounts withdrawn should have been applied by the Trustee in arriving at amounts owed. Because the look-back period under Section 548(a)(1)(A) is two years before the filing date, they argue that only transactions occurring in the two year period should have been considered.

Contrary to the Defendants' assertions, it is well settled that the calculation of fictitious profit in a Ponzi scheme is based on an offset of the amount of money deposited against the amount withdrawn over the life of an account. If the amount withdrawn is larger, the difference is fictitious profit. In this endeavor, a two-step process is applied to arrive at the amount

recoverable from an innocent "net winner." As described by the Ninth Circuit, the process is as follows:

> Amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability, and the court then determines the actual amount of liability, which may or may not be equal to the net gain, depending on factors such as whether transfers were made within the limitations period, or whether the investor lacked good faith….
>
> * * *
>
> Second, to determine the actual amount of liability, the court permits good faith investors to retain payments up to the amount invested, and requires disgorgement of only the 'profits' paid to them by the Ponzi scheme.

*Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir.), *cert. den.*, 555 U.S. 1047 (2008). *See Scholes v. Lehmann*, 56 F.3d 750, 757-758 (7th Cir.) (In a Ponzi scheme, "[a]ll [the investor] is being asked to do is to return the net profits of his investment – the difference between what he put in at the beginning and what he had at the end."), *cert. den. sub nom. African Enterprise, Inc. v. Scholes*, 516 U.S. 1028 (1995); *Sender v. Buchanan* (*In re Hedged-Invs. Assocs*.), 84 F.3d 1286, 1290 (10th Cir. 1996) (investor had no claim beyond original investment); *Donell v. Mojtahedian*, 976 F. Supp. 2d 1183, 1186 (C.D. Cal. 2013) ("general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers," *citing Donell*, 533 F.3d at 771); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC*), 439 B.R. 284, 337 (S.D.N.Y. 2010) ("*Bayou*") ("to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers").

The approach consistently has been followed, and upheld, in this liquidation proceeding. *See, e. g., Picard v. Greiff (In re Madoff Sec.) ("Greiff")*, 476 B.R. 715, 729 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den*., __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015); *Omnibus Good Faith Decision*, 531 B.R. at 439, 460, 479; *Cohmad*, 454 B.R. at 333. As this Bankruptcy Court observed in the *Omnibus Good Faith Decision*, the District Court expressly reviewed and rejected in this liquidation proceeding, the argument that the Trustee should consider only withdrawals and deposits made in the two-year avoidance period. In that decision, this Court stated that it would not revisit the conclusion of the District Court. 531 B.R. at 460. The Defendants have shown no persuasive reason for the Court to do so here.

## IV. DEFENDANTS HAVE NO DEFENSE UNDER 11 U. S. C. §548(c)

### A. The Asserted Grounds Creating "Value"

The Trustee correctly calculated amounts owed by the Defendants and there were no "obligations" owed by the Debtor to the Defendants that were created by the account statements. The question remains whether "value" was given in consideration of payment of the fictitious profits. If it was, Defendants keep the amounts received. Under Section 548(d)(2) of the Bankruptcy Code, "value" is property or the "satisfaction or securing of a present or antecedent debt of the debtor." Because the Defendants received their principal and more from the Debtor under the fraudulent scheme, there is no "property" that would amount to "value" conveyed by the Defendants. Instead, Defendants argue that the fictitious profits paid to them satisfied an antecedent debt owed to them by the Debtor, thereby creating "value."

Defendants rely upon the following as proof of the existence of an antecedent debt:

First, they contend that the *546(e) Decision* confirmed their entitlement under state law to the securities positions shown on their fictitious account statements. For this proposition, borrowing from the *546(e) Decision*, they cite to N.Y.U.C.C. § 8-501(b)(1) which provides that a security entitlement is acquired when credited to a brokerage securities account, and to comment 2 to Section 8-501(b)(1) which provides that a customer is entitled to a financial asset if the financial intermediary acknowledges that it is carrying the asset for the customer. N.Y. U.C.C. law §8-501, Official Comment 2 (McKinney). *See* Def. Mem. at 24-25.

Second, they maintain that Subsection 2, of Section 28(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C.A. § 78bb(a) (2017), preserves all of their remedies under state law. Def. Mem. at 24-25. In relevant part, Section 28(a) provides as follows:

> SEC. 28. (a) LIMITATION ON JUDGMENTS.—
>
> (1) IN GENERAL.—No person permitted to maintain a suit for damages under the provisions of this chapter [the 1934 Act] shall recover, through satisfaction of judgment in 1 or more actions, a total amount in excess of the actual damages to that person on account of the act complained of. …
>
> (2) RULE OF CONSTRUCTION.—Except as provided in subsection (f), the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

15 U.S.C. § 78bb(a)(1) and (2) (2017).

Third, Defendants rely upon additional federal securities law provisions that allegedly preserve their right to recover on the fraudulent transactions. These consist of Section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), which makes fraudulent contracts voidable at the option of the innocent party, and Section 12(a)(2) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77*l*(a)(2). Under Section 12(a)(2), in a suit against a seller, the buyer of an unregistered security to whom an untrue statement of material fact has been made in a prospectus or verbally in

connection with the sale of the security, may recover the amount paid for the security, with interest. Def. Mem. at 26, 37-38.

According to the Defendants, these provisions create the right to rescission, return of consideration paid, interest, and damages for opportunity lost. They maintain incorrectly that state law overrides federal law and that because SIPA is part of the federal securities laws which allegedly preserve their state rights, the remedies must be deemed to apply. Def. Mem. at 14-15, 24-25. For the reasons set forth below, none of the Defendants' asserted grounds constitute a valid antecedent debt that could provide "value" to the Debtor within the meaning of Section 548(c).

**B. The Payment of Fictitious Profits In Connection With a Ponzi Scheme Does Not Satisfy An Antecedent Debt**

In *Greiff* discussed above, the District Court for this District held that the Trustee correctly calculated amounts owed because the payment of fictitious profits was not in satisfaction of an antecedent debt and therefore, the recipient provided no value in exchange for the payment. The Court's conclusion rested on the fact "that every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme, whether paper profits or actual transfers, are not 'for value.'" 476 B.R. at 725 (citation omitted). The rationale for this view was discussed by the Tenth Circuit in a decision cited by the District Court. In *Sender v. Buchanan* (*In re Hedged-Invs. Assocs*.), 84 F.3d 1286 (10th Cir. 1996), the Court commented:

> Ms. Buchanan correctly observes Colorado law ordinarily permits a fraud plaintiff to affirm the contract and receive expectation and consequential damages. This case, however, is not ordinary; it arises out of a Ponzi scheme in which Ms. Buchanan was only one of many innocent investors. As the district court in *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843 (D. Utah 1987) (en banc), observed:

> > To allow an [investor] to enforce his contract to recover promised returns in excess if [*sic*] his [investment] would be to further the debtors' fraudulent scheme at the expense of other [investors].
> >
> > ... Any recovery would not come from the debtors' own assets because they had no assets they could legitimately call their own. Rather, any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme.
>
> *Id.* at 858.
>
> We find the district court's reasoning in *Merrill* persuasive and reach the same conclusion. "[A]s a matter of public policy, the contract[] involved in this case w[as] unenforceable to the extent [it] purported to give [Ms. Buchanan] a right to payments in excess of [her] undertaking." *Id.* In other words, Ms. Buchanan did not have the enforceable option of affirming her contract with HIA Inc. and recovering expectation and consequential damages. Because she had no claim against HIA Inc. for damages in excess of her original investment, HIA Inc. had no debt to her for those amounts. Therefore, the transfers could not have satisfied an antecedent debt of HIA Inc., which means HIA Inc. received no value in exchange for the transfers. Since HIA Inc. received no value for the transfers, a fortiori, it did not receive reasonably equivalent value, which brings the transfers within the requirements of 11 U.S.C. § 548(a)(2). [citations omitted].

84 F.3d at 1290.

More recently, the Fifth Circuit joined the Seventh, Ninth, and Tenth Circuits in holding that in a Ponzi scheme, transfers that exceed an original investment do not satisfy an antecedent debt and therefore, result in no exchange of value. *See Janvey v. Brown*, 767 F.3d 430, 441-442 (5th Cir. 2014).[13] *See also Greiff*, 476 B.R. at 725 and cases cited therein. In a decision following *Greiff*, the District Court reaffirmed its view that in Ponzi schemes, only repayment by a debtor up to the amount of an initial investment is repayment of an antecedent debt. *SIPC v.*

[13] The action in *Janvey* was brought under the Texas Uniform Fraudulent Transfer Act which contains an avoidance provision similar to 11 U.S.C. Section 548(a)(1)(A), and defines “value” in a similar way. *See Janvey*, 767 F.3d at 440 and 441 n.65.

*BLMIS*, 499 B.R. 416, 421-422 (S.D.N.Y.) ("*Antecedent Debt Decision*"), *certification for interlocutory appeal den*., 987 F. Supp. 2d 309 (S.D.N.Y. 2013). This majority view of the courts consistently has been followed or noted in this liquidation proceeding. *Cohen*, 2016 WL 1695296, at *5-6; *Omnibus Good Faith Decision*, 531 B.R. at 462-463; *Peter Madoff Decision*, 458 B.R. at 112; *Cohmad*, 454 B.R. at 334; *Chais*, 445 B.R. at 225-227; *Merkin*, 440 B.R. at 262.

## V. DEFENDANTS ERRONEOUSLY ARGUE THAT FEDERAL SECURITY LAW SUPPORTS THEIR RIGHT TO PAYMENT OF FICTITIOUS PROFIT

### A. The Specific Provisions of SIPA Override the General Provisions of Securities Law

Instead of providing a reason to depart from the general principles discussed above, the fact that this is a SIPA liquidation reinforces the appropriateness of adhering to them. The Defendants contend that because provisions of the 1934 Act apply to a SIPA proceeding, any state law remedies preserved under federal securities law must be available to Defendants. The federal securities law provisions cited by the Defendants do not apply as they suggest. Nor does state law control.

The Defendants omit to mention that the provisions of the 1934 Act apply unless SIPA provides otherwise. Under SIPA Section 78bbb:

> *Except as otherwise provided in this chapter* [i.e., SIPA], the provisions of the Securities Exchange Act of 1934 … apply as if this chapter constituted an amendment to, and was included as a section of, such Act. [emphasis added]

The Defendants rely upon Subsection 28(a)(2) of the 1934 Act which specifies that rights and remedies under the 1934 Act supplement rights and remedies otherwise available at law or in equity. Significantly, however, Subsection (a)(1) of Section 28 limits recovery on a suit for damages under the 1934 Act to "actual damages." 15 U.S.C. § 78bb(a)(1) *See supra*. "Actual

damages" is not defined, but the Supreme Court has noted that courts must "be alert to provide such remedies as are necessary to make effective the congressional purpose." *J.I. Case v. Borak*, 377 U.S. 426, 433 (1964). As discussed *supra*, courts repeatedly have held that the actual damages of an innocent net winner in a Ponzi scheme are limited to the net amount invested. Construed in this manner, Section 28(a)(1) is consistent with the law on Ponzi schemes and as discussed below, with SIPA. Defendants' reliance upon Subsection 28(a)(2) of the 1934 Act does not change this outcome. There are no remedies at law, including under New York state law, or in equity to modify this result. Official Comment 1 to Section 8-503 of the New York Uniform Commercial Code describes the applicable law as follows:

> Although this section describes the property interest of entitlement holders in the assets held by the intermediary, it does not necessarily determine how property held by a failed intermediary will be distributed in insolvency proceedings. If the intermediary fails and its affairs are being administered in an insolvency proceeding, the applicable insolvency law governs how the various parties having claims against the firm are treated. For example, the distributional rules for stockbroker liquidation proceedings under the Bankruptcy Code and Securities Investor Protection Act ("SIPA") provide that all customer property is distributed pro rata among all customers in proportion to the dollar value of their total positions, rather than dividing the property on an issue by issue basis. For intermediaries that are not subject to the Bankruptcy Code and SIPA, other insolvency law would determine what distributional rule is applied.

N.Y. U.C.C. Law § 8-503, Official Comment 1 (McKinney). *See Sagor*, 2017 WL 2376567, at *3. *See also Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors"); *Exch. Nat'l Bank of Chicago v. Wyatt*, 517 F.2d 453, 459 (2d Cir. 1975); *In re Bevill, Bresler & Schulman, Inc.*, 59 B.R. 353, 378 (D.N.J.), (state law that is inconsistent with SIPA is preempted) *appeal dismissed*, 802 F.2d 445 (3d Cir. 1986).

In short, the remedies that Defendants seek are not available to them. *See Omnibus Good Faith Decision*, 531 B.R. at 465 (under New York law, fictitious profits not recoverable as an element of damages under the U.C.C.). To the extent that Section 29(a) of the 1934 Act purports to make the payment of fictitious profits voidable at the option of the Defendants, the Section is inconsistent with SIPA. The Second Circuit already has twice concluded in this liquidation proceeding that payment of fictitious profits as shown on the customers' account statements is unavailable under SIPA. A contrary result under Section 29(a) of the 1934 Act would be inconsistent with what SIPA provides, and would make Section 29(a) inapplicable under SIPA Section 78bbb.[14] Likewise, Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), also relied upon by the Defendants, does not apply. Although SIPA makes provisions of the 1934 Act applicable to the proceeding, there is no similar provision with regard to provisions of the 1933 Act.

**B. Allowing the Defendants to Keep the Fictitious Profits Undermines SIPA and the Reasons for Avoidance**

In any event, Defendants did not sue the Debtor for rescission, interest, or other damages. If avoidance is allowed, and Defendants were able to sue the Debtor today, assuming that such a suit were not time-barred, the suit would be stayed under the District Court's customer protective decree in this liquidation proceeding[15] and Section 362(a) of the Bankruptcy Code. If the stay was lifted and Defendants obtained a judgment, they would be general creditors as discussed

[14] Defendants' assertion that the Trustee, standing in the shoes of the debtor, would be precluded under the doctrine of *in pari delicto* from seeking to avoid the "obligations" of the Debtor to the Defendants is misguided. Def. Mem. at 30. As discussed *supra*, the fictitious profits were never owed to the Defendants and the fictitious account statements reflecting this imaginary profit created no obligation by the Debtor to the Defendants. The only avoidable transfers were the payments themselves from the Debtor to the Defendants for which the Defendants provided no consideration. Furthermore, *in pari delicto* has no place in these adversary proceedings as the suits are brought pursuant to provisions of Title 11, made applicable by SIPA, and not under the common law. *See Omnibus Good Faith Decision*, 531 B.R. at 449-450.

[15] *SEC v. BLMIS*, Case No. 1:08-cv-10791-LLS, Doc. No. 4 (S.D.N.Y. Dec. 15, 2008)

below, and any claims that they filed in this proceeding, would be late-filed claims of general creditors. Unless a sufficiently large general estate is created in this proceeding, there will be no distribution to general creditors. In contrast, if avoidance is not allowed and Defendants keep the transfers, notwithstanding provisions of the Bankruptcy Code that enable recovery of those transfers and that expressly apply under SIPA, *see* SIPA Section 78fff-2(c)(3), a grave disparity in the treatment of customers versus avoidance transferees results. While avoidance defendants have continued to enjoy the use of other customers' money, net loser customers who have not been fully satisfied by the Trustee would see their recoveries further reduced as the availability of avoidance remedies is pared back even more. Such an outcome contravenes the "overall purpose" of SIPA Section 78fff-2(c)(3), namely, "to prevent one or more customers from depriving other customers of assets by keeping these assets out of the pool available for distribution to customers on a ratable basis." 6 *Collier on Bankruptcy*, ¶749.02[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

## VI. IN ORDER FOR 11 U.S.C. SECTION 548(c) TO APPLY, IT MUST BE CONSISTENT WITH SIPA

Under SIPA Section 78fff(b), specified provisions of Title 11, including the avoidance provisions in chapter 5 of Title 11, apply to the SIPA liquidation proceeding, "[t]o the extent consistent with the provisions of [SIPA]." In a SIPA proceeding, customers share, *pro rata*, in customer property based upon their net equity which is the net amount owed to any customer. *See* SIPA §§ 78fff-2(c)(1) and 78*lll*(11). In its *Antecedent Debt Decision*, the District Court found that equating "value" under Section 548(c) of Title 11 with the net amount invested, to be consistent with SIPA policy. That policy consisted of treating "each investor equitably by providing for recovery of customer property and pro rata distributions based on each customer's net equity claim, rather than merely letting those who came out ahead to retain the amounts

obtained." 499 B.R. at 425. In this light, Section 548(c) is consistent with SIPA, and therefore applicable, but only to the extent of investments of principal. Federal and state law claims cannot be used to increase the amount to which the customer is entitled. 499 B.R. at 426.

The notion that the value defense applies only to the extent of net principal deposited by the investor comports with the treatment of claims under SIPA. The SIPA proceeding is intended to resolve all claims against a debtor, including not only customer, but general creditor, claims. *See Rosenman Family, LLC v. Picard*, 395 F. App'x. at 768 ("SIPA liquidations involve two kinds of claimants: customers and general unsecured creditors."). Customers receive priority treatment by sharing, *pro rata*, in any fund of customer property, to the exclusion of general creditors. *See* SIPA § 78fff-2(c)(1)(B) and 78*lll*(4). To the extent customer property is insufficient, SIPC advances funds within limits to satisfy the balance of customer claims. SIPA § 78fff-3(a). If such claims still are not fully satisfied, the customers share in any general estate with general creditors, on a non-priority basis. SIPA § 78fff-2(c)(1). Estate property is distributed in accordance with Section 726 of the Bankruptcy Code. SIPA § 78fff(e). *See Stafford v. Giddens (In re New Times Securities Services, Inc.*), 463 F.3d 125, 127 (2d Cir. 2006).

The main purpose of SIPA is not to prevent fraud or conversion, but to "reverse losses resulting from brokers' insolvency." *Miller v. DeQuine (In re Stratton Oakmont, Inc.*), 2003 WL 22698876, at *5 (S.D.N.Y. Nov. 14, 2003). Thus, SIPA does not "shield investors from the whims of the marketplace" nor does it "'guarantee that customers will recover their investments which may have diminished as a result of, among other things, market fluctuations or broker-dealer fraud.'" *Id.* (citations omitted). *See SIPC v. Pepperdine Univ. (In re Brentwood Sec., Inc.*), 925 F.2d 325, 330 (9th Cir. 1991) (SIPA "does not comprehensively protect investors from

the risk that some deals will go bad or that some securities issuers will behave dishonestly"); *In re MV Sec., Inc*., 48 B.R. 156, 160 (Bankr. S.D.N.Y. 1985) (no SIPA protection for innocent investor against broker's fraud). Because claims for damages do not involve the return of customer property entrusted to the broker, they are not "customer" claims. Instead, such damage claims based on misrepresentation, fraud or breaches of contract are claims of general creditors. *In re Lehman Bros. Inc*., 474 B.R. 139, 149 (Bankr. S.D.N.Y. 2012); *In re Klein, Maus & Shire, Inc*., 301 B.R. 408, 421 (Bankr. S.D.N.Y. 2003); *Arford v. Miller*, 239 B.R. 698, 701 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 420 (2d Cir. 2000); *In re Adler Coleman Clearing Corp*., 198 B.R. 70, 75 (Bankr. S.D.N.Y. 1996); *SEC v. Howard Lawrence & Co*., 1 Bankr. Ct. Dec. 577, 579 (S.D.N.Y. 1975). Likewise, a claim for rescission is a general creditor claim and not a customer claim under SIPA. *See, e.g., SEC v. S.J. Salmon & Co*., 375 F. Supp. 867, 870-871 (S.D.N.Y. 1974); *SEC v. JNT Investors, Inc*., 1978 WL 1137, at *2 (S.D.N.Y. Feb. 9, 1978). Contrary to Defendants' contention, Def. Mem. at 37-38, the Second Circuit already has rejected the availability of "compensation for the loss of the time value of money, expressed as interest." *See SIPC v. 2427 Parent Corp. (In re BLMIS)*, 779 F.3d 76, 79-80 (2d Cir.), *cert. den. sub nom. Peshkin v. Picard*, 136 S. Ct. 218 (2015). *See also Cohen*, 2016 WL 1695296, at *14; and *Omnibus Good Faith Decision*, 531 B.R. at 463 n.19.

In sum, to treat the avoidance defendant as entitled to more than the return of principal is inconsistent with the treatment of customers under SIPA. Such an interpretation of Section 548(c) renders the Section inconsistent with SIPA and therefore inapplicable. As Defendants note, "[c]ourts have a duty to reconcile provisions in related federal statutes, not search for a conflict between them." Def. Mem. at 16. *See id*. at 39-40. The District Court's limitation on

value furthers the purposes of SIPA and is consistent with the application and construction of SIPA.[16]

## VII. THE DEFENDANTS MISPERCEIVE THE NATURE OF THEIR RELATIONSHIP TO THE DEBTOR

The Defendants attempt to distinguish the Ponzi scheme bankruptcy cases discussed above on the ground that they did not involve customers of a registered securities broker-dealer and on the basis that every defendant in those cases intended to put funds at risk. Def. Mem. at 35. They contend that instead, the decision in *Visconsi v. Lehman Bros*., 244 F. App'x. 708 (6th Cir. 2007) ("*Visconsi*"), provides a more apt comparison. Def. Mem. at 36.

As an initial matter, the implication by the Defendants that they expected their brokerage transactions to be risk-free and their contention that had they invested elsewhere, there would have been certain returns, Def. Mem. at 10-11, are fanciful at best. By investing, every investor assumes the possibility of great rewards, but also of great loss. As to their reliance upon *Visconsi,* the District Court in *Greiff* reviewed the decision and found it distinguishable. *See Greiff*, 476 B.R. at 725-726. *Accord, Chais*, 445 B.R. at 229. For many reasons, the District Court was correct.

In the first place, the arbitration panel in *Visconsi* issued no opinion supporting its award to the investors. Thus, the panel offered no rationale upon which the Court could determine whether the decision was in "manifest disregard of the law." Moreover, the grounds for the suit

---

16 The Defendants' claim for prejudgment interest also lacks merit. Def. Mem. at 39-40. At the very least, prejudgment interest requires that there be a judgment of which there is none here. *Bayou*, 439 B.R. at 337. Moreover, the Defendants having recovered all of their initial investment from the time of their demand for withdrawals, there is no amount on which interest could be due. *See Antecedent Debt Decision*, 499 B.R. at 422 ("'[Defendants] collected the debt owed them – their initial investment – and thus there is no sum upon which pre-judgment interest could attach.' [*citing Bayou*, 439 B.R. at 337]"). In this regard, because the fictitious profits were wholly imaginary, Defendants could not have lost what never existed. *See Omnibus Good Faith Decision*, 531 B.R. at 464.

were statutory securities violations, but also numerous counts of common law violations. Neither provisions of SIPA nor of the Bankruptcy Code were at issue. Also, at the time of the decision, the defendant was a fully operating, ostensibly solvent, brokerage with the wherewithal to make good on its obligations, without, as here, repercussions on other investors. Finally, as the District Court observed, the fictitious account statements in *Visconsi* tracked the investors' funds as if they actually had been invested, unlike the case at hand. Thus, in contrast to this situation, genuine losses were calculable. *See Greiff*, 476 B.R. at 725.

## VIII. THE TWO-YEAR LOOK BACK PERIOD IN SECTION 548(a)(1) IS IRRELEVANT TO THE CALCULATION OF "VALUE"

Defendants also argue that the Trustee's calculation of avoidance liability violates Section 548(a)(1)'s two-year look-back period for avoiding fraudulent transfers (the "Two-Year Period"). Def. Mem. at 40-41. They object to the Trustee's method of calculating value to the estate and thus their avoidance liability. Here too, Defendants' basic argument has been seen and rejected before in this liquidation, and their latest twist is a straw man. Relying upon recent Supreme Court jurisprudence, they insist that the Two-Year Period of Section 548(a)(1) is a statute of repose which must be strictly enforced and cannot be equitably tolled.[17] Defendants assert that the Trustee's calculation of value to the estate—which ignores the face value of the fictitious statements generated outside of the Two-Year Period and which nets deposits and withdrawals over the life of the account—necessarily violates Section 548(a)(1)'s statute of repose. Defendants ask the Court to value their account principal according to their statements at

[17] Whereas a statute of limitations "creates 'a time limit for suing in a civil case, based on the date when the claim accrued,'" a statute of repose "puts an outer limit on the right to bring a civil action" and is measured "not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, __ U.S. __, 134 S.Ct. 2175, 2182 (2014) [citation omitted].

the beginning of the Two-Year Period, netting only any deposits and withdrawals during that time.

### A. Irrespective of How Section 548(a)(1) Is Characterized, the Trustee's Calculation Remains the Same

Determining whether Section 548(a)(1) is a statute of limitations or a statute of repose, however, is largely an academic diversion in this case, because calling Section 548(a)(1) a statute of repose does not change the result. The Trustee's calculation does not depend upon tolling the Two-Year Period in Section 548(a)(1). The Trustee has strictly limited his avoidance causes of action to the recovery of transfers made within the Two-Year Period. While the Trustee's calculations of deposits and withdrawals extend over the life of the account beyond the Two-Year Period, this calculation of value for Section 548(c)'s purposes is not an avoidance action.

Indeed, in defining the calculation of value over the life of the account, neither this Court nor the District Court has stated or even intimated that the time limitation of Section 548(a)(1) must be tolled in order to account for all deposits and withdrawals. *See, e.g., Greiff*, 476 B.R. at 729 ("First, amounts transferred by Madoff Securities to a given defendant *at any time* are netted against the amounts invested by that defendant in Madoff Securities *at any time*." (emphasis added)); *Omnibus Good Faith Decision*, 531 B.R. at 460 ("[The Trustee] offsets all deposits and withdrawals during the life of the account, but he cannot recover more than the amount transferred during the two years preceding the filing date."). To the contrary, in approving the Trustee's calculation of avoidance liability, rather than tolling the statute of limitations or equitably expanding or disregarding it, the District Court explicitly recognized and enforced the Two-Year Period. *Greiff*, 476 B.R. at 729 ("Any net profits in excess of the amount transferred during the two-year period are protected from recovery by the Bankruptcy Code's statute of limitations."). Whether Section 548(a)(1) is a statute of limitations or a statute of repose, the

calculation of value by netting deposits and withdrawals under Section 548(c) is not constrained by the Two-Year Period.

**B. As the District Court Has Held, the Calculation of Value Has No Time Limit**

At any rate, Defendants' argument was considered and rejected by the District Court in the *Antecedent Debt Decision*. There, as here, the defendants asserted that the Trustee's calculation of account value using deposits and withdrawals over the life of the account was improperly "circumvent[ing] the limitation of the statutory reach-back period to indirectly avoid and recover time-barred withdrawals. . ." 499 B.R. at 427. The District Court called the defendants' arguments "a mischaracterization of what is occurring under the Net Investment Method." *Id.* While noting, as Defendants do, that the Two-Year Period "serves to allow finality to ancient transactions," the District Court nevertheless emphasized that the identification of voidable transactions during the Two-Year Period is separate from the calculation of value to the estate under Section 548(c), which has no time limitation. *Id.*; *see also Cohen*, 2016 WL 1695296, at *8 ("Bankruptcy Code § 548(c) is not an element of the Trustee's avoiding powers; instead, it is an affirmative defense to an otherwise avoidable transfer."). "Thus, there is no reason why a line should be drawn at the beginning of the [Two-Year Period] in determining whether a transfer was for value." *Antecedent Debt Decision*, 499 B.R. at 427. As the District Court noted, the Trustee's Net Investment Method supports the equitable treatment of all customers, as mandated by SIPA. *See id.* at 428. Any calculation of the Defendants' net investment or whether a valid antecedent debt existed—and therefore whether value was provided for the transfer—requires an examination of the entire history of the debtor's relationship with the transferee.

**C. The District Court's Holding Is Consistent With Case Law**

Indeed, courts generally consider the history of the relationship between the parties to ascertain whether antecedent debt is present or whether it has been extinguished. They do so without tolling any time limitations. For example, in *Bayou*, the District Court looked to the history of transfers made to investors in a Ponzi scheme to determine whether antecedent debt was provided. 439 B.R. at 337–39. In *Bayou*, the investors had rolled over their account with one of the debtor funds to another debtor fund over two years before the petition date; the investors argued that they should receive credit for the full amount of the rolled-over account as if it constituted only principal. *Id.* at 338. Because the rolled over account included both principal and fictitious profits on the investors' original investment, the Court rejected the investors' argument and found that it was required to look back to the actual value in the account—namely, the amount of the original investment. *Id.* at 338–39. Similarly, in *Donell v. Kowell*, 533 F.3d at 780, the Ninth Circuit affirmed a judgment for recovery of false profits transferred to the defendant during the limitations period in furtherance of a Ponzi scheme, while noting that the liability calculation properly netted deposits and withdrawals over the life of the account. *See also In re Hedged-Investments Assoc., Inc.*, 84 F.3d at 1288–89 (looking at the history of the investments beyond the reach-back period to determine whether transfers constituted principal or fictitious profits); *Emerson v. Maples* (*In re Mark Benskin & Co., Inc.)*, 161 B.R. 644, 650 (Bankr. W.D. Tenn. 1993) (allowing recovery of full amount of reach-back period fraudulent transfers in a Ponzi scheme where "[p]rior to § 548's one year reach back period, the [transferees] had been paid a 'return' in excess of their 'investments.'"). Defendants have not identified any case in which a time limitation—whether called a statute of repose or of limitations, or whether it was tolled or not—was imposed on the calculation of "value" in a

Ponzi scheme. Defendants have no basis for limiting the determination of "value" to the two years prior to the liquidation of BLMIS.

**D. The CalPERS Decision Does Not Apply**

Finally, not only is the Defendants' repose argument irrelevant to the calculation of their two-year avoidance liability, but the case relied upon by them, *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, 137 S. Ct. 2042 (2017), does not resolve what type of limitations is codified in Section 548(a)(1). Unlike Section 548(a)(1), the statute of repose analyzed by the Supreme Court contained exclusive language which forbade the expansion of the limitations period. *Id.* at 2049 ("The statute provides in clear terms that '[i]n no event' shall an action be brought more than three years after the securities offering on which it is based. 15 U.S.C. § 77m. This instruction admits of no exception and on its face creates a fixed bar against future liability.") On the other hand, the Supreme Court has stated that "[i]t is hornbook law that limitations periods 'are customarily subject to equitable tolling'… unless tolling would be 'inconsistent with the text of the relevant statute…." *Young v. United States*, 535 U.S. 43, 49 (2002) (citations omitted).

Under the circumstances presented, SIPA, and the avoidance provisions made applicable by it, should be construed in furtherance of their joint purpose of enabling the return to customers on a *pro rata* basis the property that they entrusted to their broker-dealer. *See SIPC v. BLMIS*, 454 B.R. 285, 305 (Bankr. S.D.N.Y. 2011) ("[E]nsuring that only genuine 'customers' of the debtor share in the fund of customer property maximizes their recovery…."), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. Kruse v. SIPC (In re BLMIS)*, 708 F.3d 422 (2d Cir. 2013). The Defendants' argument—

essentially a request to be allowed to keep stolen customer funds within the Two-Year Period—runs counter to that purpose.

## CONCLUSION

For all of the foregoing reasons, the Trustee's motion for summary judgment should be granted and the Defendants' motions should be denied.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

*/s/Kevin H. Bell*
KEVIN H. BELL
Senior Associate General Counsel
For Dispute Resolution

NATHANAEL S. KELLEY
Assistant General Counsel

SECURITIES INVESTOR
PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
Facsimile: (202) 223-1679
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org

Date: September 25, 2017
Washington, D. C.