UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                   Debtor.
------------------------------------- 
PERTAINS TO THE FOLLOWING CASE:

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                   Plaintiff,
        -v-

J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,
ASCOT FUND LTD., GABRIEL CAPITAL
CORPORATION,

                   Defendants.
------------------------------------- X

Adv. Proc. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Proc. No. 09-1182 (SMB)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE TRUSTEE FROM
SEEKING DOUBLE RECOVERY THROUGH EQUITABLE SUBORDINATION**

NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10103
Tel.: (212) 318-3000
Fax: (212) 318-3400
*Attorneys for Ralph C. Dawson, as Receiver
for Defendant Ascot Partners, L.P., and
Ascot Fund Ltd.*

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
*Attorneys for Defendants J. Ezra Merkin
and Gabriel Capital Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    NO CIRCUMSTANCES EXIST IN WHICH THE TRUSTEE COULD DOUBLE RECOVER THROUGH EQUITABLE SUBORDINATION .............. 3

    II.    DOUBLE RECOVERY THROUGH EQUITABLE SUBORDINATION WOULD BE INEQUITABLE AND INCONSISTENT WITH THE PURPOSE UNDERLYING EQUITABLE SUBORDINATION ......................... 7

    III.    THE TRUSTEE'S ASSERTION THAT DEFENDANTS' 502(h) CLAIM ARISING FROM REPAYMENT OF ANY AVOIDED TRANSFERS SHOULD BE A GENERAL UNSECURED CLAIM IS INCORRECT AND UNSUPPORTED ................................................................................. 9

    IV.    THE MOTION IS RIPE AND THE COURT CAN AND SHOULD DECIDE THIS ISSUE NOW ........................................................................... 12

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*,
    210 B.R. 508 (Bankr. S.D.N.Y. 1997) ............................................................................. 4

*In re Aéropostale, Inc.*,
    555 B.R. 369 (Bankr. S.D.N.Y. 2016) ............................................................................. 8

*Austin v. Chisick (In re First Alliance Mortg. Co.)*,
    298 B.R. 652 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ............................. 4

*In re Best Products Co., Inc.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ............................................................................... 9

*Century Glove, Inc. v. Iselin*,
    151 B.R. 327 (Bankr. D. Del. 1993) ................................................................................ 4

*First Trust & Deposit Company v. Receiver of Salt Springs National Bank (In re Onondaga Litholite Co.)*,
    218 F.2d 671 (2d Cir. 1955) ............................................................................................ 4

*Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*,
    375 F.3d 51 (1st Cir. 2004) ............................................................................................. 9

*Gowan v. HSBC Mortg. Corp. (USA) (In re Drier LLP)*,
    No. 08-15051, 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12. 2012) ............................. 9

*Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*,
    453 B.R. 499 (Bankr. S.D.N.Y. 2011) ............................................................................ 3

*In re Gurly*,
    311 B.R. 910 (Bankr. M.D. Fla. 2001) ............................................................................ 9

*Hirsch v. Pennsylvania Textile Corporation, Inc. (In re Centennial Textiles)*,
    227 B.R. 606 (Bankr. S.D.N.Y. 1998) .................................................................... 3, 7, 14

*Kalisch v. Maple Trade Fin. Co. (In re Kalisch)*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008) ............................................................................ 7

*In re Kansas-City Journal-Post Co.*,
    144 F.2d 791 (8th Cir. 1944) ........................................................................................... 4

*Kreigman v. 1127477 Alberta Ltd. (In re LLS AM., LLC)*,
    No. 12-cv-423, 2015 WL 328918 (E.D. Wash. Jan. 23, 2015) ....................................... 6

*Monzack v. ADB Investors (In re EMB Associates, Inc.)*,
    92 B.R. 9 (Bankr. D.R.I. 1988) ..................................................................................... 5

*Picard v. The Lustig Family 1990 Trust*,
    568 B.R. 481 (Bankr. S.D.N.Y. 2017) ..................................................................... 10, 11

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...................................................................... 3, 6

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    563 B.R. 737 (Bankr. S.D.N.Y. 2017) ........................................................................ 13

*Rule v. Brine, Inc.*,
    85 F.3d 1002 (2d Cir. 1996) ......................................................................................... 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (S.D.N.Y. 2013) ................................................................................... 10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    513 B.R. 437 (S.D.N.Y. 2014) ................................................................................... 10

*Summit Props. Int'l, LLC v. LPGA*,
    No. 07 Civ. 10407, 2010 WL 10407 (S.D.N.Y. Dec. 6, 2010) ................................... 13

*Tronox, Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013) ......................................................................... 9

*Walling v. Holman*,
    858 F.2d 79 (2d Cir. 1988) ........................................................................................... 7

*Wynfield Inns v. Edward Leroux Group, Inc.*,
    896 F.2d 483 (11th Cir. 1990) ...................................................................................... 7

**Rules and Statutes**

11 U.S.C. § 502(d) ............................................................................................................. 3, 13

11 U.S.C. § 502(h) ........................................................................................................... *passim*

11 U.S.C. § 510(c) ...................................................................................................................7

11 U.S.C. § 550 .......................................................................................................................9

Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC") (collectively, "Merkin Defendants"), and Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Defendant Ascot Fund Limited ("Ascot Fund") (Ascot Partners and Ascot Fund, together "Ascot" and collectively with the Merkin Defendants, "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their Motion *in Limine* to preclude the Trustee from seeking double recovery through equitable subordination.

## **PRELIMINARY STATEMENT**

Defendants' brought this motion only after the Trustee raised a new, unsupported theory that he "could literally take the money [recovered after success on the fraudulent transfer claim] and still subordinate [Ascot Partners'] claim." MIL Tr. at 47:15-16.[1] The Trustee's purpose in raising this unprecedented claim is apparent: Under proper application of the law, "[t]here's no leverage on [Defendants] to settle this case." *Id.* 50:10-11. The parties and the Court have addressed what relief equitable subordination could provide to the Trustee since at least the briefing of the motion to dismiss more than three years ago. Indeed, the Trustee has admitted in open Court that "if [Defendants] pay, they're entitled to their claim." SJ Tr. at 74:25-75:1. And as the Court has observed, "equitable subordination[] [is] just a red herring in the case." *See id.* at 37:14-15. The Trustee's about-face on this issue in an improper attempt to gain settlement leverage should not be tolerated. And in any event, his double recovery theory based on equitable subordination is wrong as a matter of law.

---

[1] All capitalized terms used but not defined herein have the meanings as defined in the Memorandum of Law in Support of Defendants' Motion *in Limine* to Preclude the Trustee from Seeking Double Recovery Though Equitable Subordination ("Moving Brief" or "Defs Br.").

As detailed in Defendants' Moving Brief, the Trustee has conceded, in briefing and at oral argument, that his success on the fraudulent transfer claim would render his equitable subordination claim moot. *S*ee Defs. Br. at 3-9. The Trustee attempts to reverse position in this motion, but fails to address—much less controvert—the authority, including long-standing Second Circuit case law, demonstrating that he cannot both recover fraudulent transfers and equitably subordinate Ascot's claims based upon the same wrong. And he admits that the only ground for equitable subordination is the alleged wrong of Defendants' receipt of fraudulent transfers while willfully blind. Tr. Opp. at 9. His repeated concessions decide the issue.

To distract from this clear result, the Trustee does everything he can to avoid squarely confronting the issue—arguing that Defendants are improperly relying on settlement terms provided by the Trustee to other parties, that any section 502(h) claim arising from Defendants' repayment of avoided transfers must be reclassified from a customer claim to an unsecured claim, and that the issue is not ripe. When all else fails, the Trustee threatens that "an adverse ruling" from the Court will leave the Trustee with "no choice" but to "abandon[] settlement discussions with Defendants." Tr. Opp. at 2.[2] These desperate tactics are wholly devoid of merit. The motion *in limine* should be granted and the Trustee should be precluded at trial from seeking double recovery through equitable subordination.

---

[2] Contrary to the Trustee's assertions (*see* Tr. Opp. at 2), Defendants disclosed no settlement discussions in their Moving Brief. All references to the Trustee's newfound position were to the Trustee's statements to the Court at the First Hearing on the Motions *in Limine*. The Trustee, however, makes an incomplete disclosure in his opposition that misrepresents his settlement offer and does not accurately represent the parties' respective settlement positions.

**ARGUMENT**

**I.    NO CIRCUMSTANCES EXIST IN WHICH THE TRUSTEE COULD DOUBLE RECOVER THROUGH EQUITABLE SUBORDINATION**

The Trustee concedes that if the fraudulent transfer claim fails, the equitable subordination claim also fails.  *See* Defs. Br. at 10-11.  He also concedes that if he obtains a judgment on his fraudulent transfer claim and Defendants do not satisfy the judgment in full, "equitable subordination is not needed" because Ascot Partners' claim against the estate will be disallowed pursuant to section 502(d).  Tr. Opp. at 7; *see* Defs. Br. at 11.  The only dispute is whether the Trustee can equitably subordinate Ascot Partners' claims if he obtains a judgment on his fraudulent transfer claim *and* Defendants satisfy that judgment.

On this paramount question, the Trustee ignores nearly the entirety of the authority cited by Defendants in their motion, including this Court's holding on the motion to dismiss and statements at hearings, controlling Second Circuit authority and considerable on-point precedent issued by the Court, as well as the Trustee's own admissions in briefs and at hearings before the Court.  *See* Tr. Opp. at 7-10; *see also* Defs. Br. at 11-15.  All of these sources unequivocally demonstrate that equitable subordination is not available should the Trustee recover on his fraudulent transfer claims.

As the Court has explained, "if Ascot pays them, they've got their remedies.  So equitable subordination's just a red herring in the case."  SJ Tr. at 37:13-15; *see Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 160 (Bankr. S.D.N.Y. 2014) ("It is well-settled that equitable subordination is an alternative to a monetary recovery for the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a claim based on the same wrong."); *Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*, 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) (Bernstein, J.) (same); *Hirsch v. Pennsylvania Textile Corporation, Inc. (In re Centennial*

- 3 -

*Textiles)*, 227 B.R. 606, 611 (Bankr. S.D.N.Y. 1998) (Bernstein, J.) (same); *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*, 210 B.R. 508, 517 (Bankr. S.D.N.Y. 1997) (Bernstein, J.) (same); *see also Austin v. Chisick (In re First Alliance Mortg. Co.)*, 298 B.R. 652, 666 (C.D. Cal. 2003), *aff'd*, 471 F.3d 977 (9th Cir. 2006) ("[O]nce a party has obtained money damages, that same party may not also obtain equitable subordination based on the same conduct."); *Century Glove, Inc. v. Iselin*, 151 B.R. 327, 332 (Bankr. D. Del. 1993) (citing *In re Kansas-City Journal-Post Co.*, 144 F.2d 791, 801 (8th Cir. 1944)) ("A debtor may not obtain both equitable subordination and an award of money damages which would compensate it for the damages resulting from the same conduct."). As the Trustee has already conceded, "if [Defendants] pay, they're entitled to their claim." SJ Tr. at 74:25-75:1; *see* Tr. SJ Opp. at 67 ("Should the Trustee avoid and recover all of the transfers he seeks, the Trustee does not disagree that equitable subordination could be moot.").

Controlling Second Circuit authority is also unequivocal that if the recipient of a fraudulent transfer—even one guilty of ***directing*** the fraudulent transfer—returns the avoided amount, "he may share on a parity with other creditors." *First Trust & Deposit Company v. Receiver of Salt Springs National Bank (In re Onondaga Litholite Co.),* 218 F.2d 671, 673 (2d Cir. 1955); *see* Defs. Br. at 13-14 (collecting cases). As explained in detail in Defendants' Moving Brief, the Second Circuit in *Onondaga* reversed the very determination the Trustee asks this Court to undertake— subordination of a defendant's claim based solely on the bad faith receipt of a fraudulent transfer that had been remedied by repayment. *See* Defs. Br. at 13-14.[3] *A fortiori*, even if the Trustee

---

[3] The Trustee does not address *Onondaga* squarely; rather, he cites one phrase in that case, taken out of context, purportedly to bolster his position. Tr. Opp. at 10. The Trustee argues that *Onondaga* limits which creditors can recover on parity with other creditors, when in fact, it holds that even a creditor who was both the architect and recipient of a fraudulent transfer can recover on its claim against the debtor after repayment of the fraudulent transfer regardless of whether that "surrender is the result of a successful action instituted by the trustee against the creditor." *Onondaga*, 218, F.2d at 673.

- 4 -

proves willful blindness (which he will not), as a non-insider victim of Madoff's Ponzi scheme that the Trustee has admitted in open Court did not have actual knowledge of, much less direct or participate in the fraud, Ascot Partners would indisputably be entitled to "share on a parity" upon repayment of the alleged fraudulent transfer.

Rather than addressing either this overwhelming authority contrary to his new position or his previous admissions, the Trustee argues that equitable subordination is available "[w]here the return of fraudulent transfers fails to remedy the harm to other creditors caused by inequitable conduct." Tr. Opp. at 8. In support of this argument, the Trustee disingenuously cites either general authorities about the power of courts to equitably subordinate—none of which address double recovery for the same wrong—or cases in which defendants engaged in considerable inequitable conduct above and beyond that alleged in the fraudulent transfer claim. *Id.* For instance, in *Monzack v. ADB Investors (In re EMB Associates, Inc.)*, because "the misconduct by the claimant involve[d] much more than just a preferential transfer, subordination ***on totally independent ground*** [wa]s appropriate and necessary to offset the full extent of the harm." 92 B.R. 9, 17, n.11 (Bankr. D.R.I. 1988) (emphasis added). The Trustee quotes this very sentence in his opposition, but misleadingly omitted the "on totally independent ground" language. *See* Tr. Opp. at 8. He also failed to explain that "the totally independent ground" justifying subordination was—unlike any purported conduct by Defendants here—that defendant was debtors' accountant, who had breached his fiduciary duty to investors while, over a 12 year period, shifting his "client-accountant relationship . . . into a very favorable (for [defendant]) debtor-creditor, then secured creditor relationship, and finally ended up with [defendant's] ownership of everything." *EMB Associates,* 92 B.R. at 17-18.

- 5 -

While there theoretically could be a situation where equitable subordination is available based on an entirely separate wrong, that is not the case here. The Trustee asserts that "Defendants' inequitable conduct was *receiving transfers* from BLMIS while *willfully blinding themselves* to facts suggesting a high probability of fraud." Tr. Opp. at 9 (emphasis added).[4] Despite the Trustee's eleventh-hour attempt to concoct a separate wrong (*see* MIL Tr. at 52-56), his opposition confirms there is none.[5] Having admitted that the only basis for equitable subordination is Defendants' receipt of fraudulent transfers, the Trustee cannot circumvent the overwhelming authority that precludes double recovery through equitable subordination. *See Merkin,* 515 B.R. at 160 ("It is well-settled that . . . the trustee cannot recover damages and equitably subordinate a claim based on the same wrong."); *see also* Defs. Opp. at 12 (collecting cases).

The Trustee also makes the specious argument that because avoidance and recovery claims and equitable subordination claims are not *literally* the same thing, the Trustee can simultaneously recover and subordinate without a double recovery. Tr. Opp. at 10-11. In so arguing, the Trustee ignores the Court's statement that "[i]t is well-settled that equitable subordination is an alternative to a monetary recovery for the creditor's wrongdoing," (*Merkin,* 515 B.R. at 160), and his own

---

[4] As shown in Defendants' moving brief, equitable subordination is an extraordinary remedy, traditionally limited to situations tantamount to actual fraud or illegality. Defendants do not concede that willful blindness alone would be sufficient for the Trustee to prove an equitable subordination claim if one existed, (*see* Defs. Br. at 1, n.2), and Defendants expressly reserve their rights in relation to this argument.

[5] The Trustee has abandoned the purported independent basis for equitable subordination that he offered at the First Hearing on the Motions *in Limine*, which the Court noted "[s]ound[s] like an aiding and abetting claim and that's not a claim in this case." MIL Tr. at 56:1-2. In a footnote, however, the Trustee attempts to reserve other grounds for subordination based upon a purported "injur[y] [to] creditors who invested with BLMIS because of the impressive returns that others received." Tr. Opp. at 9 n.6. The Trustee relies on *dicta* in the District Court's decision in *Katz*, which addressed only the sufficiency of allegations in denying a motion to dismiss, as well as a wholly inapposite case in which the defendant, a net winner, actively recruited other debtors into the Ponzi scheme in exchange for kickbacks from the schemer. *See Kreigman v. 1127477 Alberta Ltd. (In re LLS AM., LLC)*, No. 12-cv-423, 2015 WL 328918, at *11-12 (E.D. Wash. Jan. 23, 2015).

As with the purported aiding and abetting claim, the Third Amended Complaint neither asserts nor includes any specific allegation that any other creditor of BLMIS was aware of Defendants' returns or was induced to invest with BLMIS based upon them. Nor are there any witnesses or testimony to prove this newly-concocted theory of Defendants' wrongdoing.

repeated admissions to that effect. *See* Tr. SJ Opp. at 67 (equitable subordination "is plead in the alternative to [the Trustee's] fraudulent transfer claims."); *id.* at 5 ("the Trustee seeks, in the alternative, equitable subordination of Ascot Partners' SIPA claim under section 510(c)")); SJ Tr. at 72:19-20 (equitable subordination is "an alternative remedy"). The distinct nature of avoidance and recovery of fraudulent transfers, on the one hand, and equitable subordination, on the other, does not change that the Trustee is seeking an impermissible double recovery by simultaneously obtaining alternative remedies for the same wrong.[6]

## II. DOUBLE RECOVERY THROUGH EQUITABLE SUBORDINATION WOULD BE INEQUITABLE AND INCONSISTENT WITH THE PURPOSE UNDERLYING EQUITABLE SUBORDINATION

The Trustee also ignores the inherent inequity that would result should he be permitted to recover $280 million from Defendants and equitably subordinate Ascot Partners' claims based upon the same wrong. "Equitable subordination is an extraordinary remedy that is to be used sparingly [and] [i] all cases concerning equitable subordination actual harm to creditors is a necessary component to application of the doctrine." *See Kalisch v. Maple Trade Fin. Co. (In re Kalisch)*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) (citations omitted). As detailed in Defendants' Brief, double recovery by the Trustee would be punitive and contravene the basic premise that "a claim should be subordinated 'only to the extent necessary to offset the harm which

---

[6] The Trustee alternatively asserts that he should be entitled to elect his remedy post-trial, but because success on the fraudulent transfer claim wholly moots the equitable subordination claim, no such post-trial election is possible. *See Centennial Textiles*, 227 B.R. at 610 (Bernstein, J.) (The granting of a legal remedy for the wrong on which an equitable subordination claim is based renders the Trustee's "request for equitable subordination . . . moot."). The authorities cited by the Trustee addressing non-bankruptcy claims are not applicable. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (reciting the principle that "[w]here the complaint asserts claims on theories of both contract and quantum meruit *and there is a genuine dispute as to the existence of a contract*, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories") (emphasis added); *Walling v. Holman*, 858 F.2d 79, 83 (2d Cir. 1988) (noting that election of remedies between a contract and conversion claim "should have been made at trial *at a time within the discretion of the trial judge*") (emphasis added); *Wynfield Inns v. Edward Leroux Group, Inc.*, 896 F.2d 483, 488 (11th Cir. 1990) (addressing election of remedies in contract and quantum meruit context, but noting that the "purpose of the doctrine is to *prevent duplicative recovery for the same wrong*") (emphasis added).

the bankruptcy and its creditors suffered on account of the inequitable conduct.'" *In re Aéropostale, Inc.*, 555 B.R. 369, 414, n.29 (Bankr. S.D.N.Y. 2016) (citation omitted); *see* Defs. Br. at 14-15.

The Trustee blithely asserts that Ascot Partners' "net loser status" is irrelevant (*see* Tr. Opp. at 9-10) without denying that subordination of Ascot Partners' claim even after recovery of fraudulent transfers would serve only to punish again its approximately 300 innocent investors who were defrauded of $235 million by BLMIS. The Trustee also argues at length that his settlement agreements with other defendants do not impact Defendants' rights in this litigation. *See* Tr. Opp. at 13-15. Defendants make no such argument. Defendants refer to other parties' settlement terms only in the context of evaluating the credibility of the Trustee's position vis-a-vis Ascot Partners, insofar as settlements reached in other cases belie his position here that a double recovery from innocent investors is the equitable result. To that end, the settlement with Ariel Fund Ltd. and Gabriel Capital L.P. is instructive because, based on exactly the same evidence of purported willful blindness adduced in this case, the Trustee concluded that allowance of nearly $350 million of customer claims after repayment of approximately $30 million of allegedly fraudulent transfers was an equitable result.[7] Moreover, based on the Trustee's affirmation the Court approved the Ariel and Gabriel settlements.

---

[7]   Tellingly, to our knowledge, *none* of the Trustee's motions to approve settlement agreements for the return of allegedly fraudulent transfers of fictitious principal from net losers, or the Trustee's affidavits in support thereof, has ever evaluated the reasonableness of the proposed settlement against a range of outcomes that included even the possibility of both recovering monetary damages on the fraudulent conveyance claim and equitably subordinating the defendants' net equity claim, Section 502(h) claim, or both. Indeed, to our knowledge, no such approval motion has even evaluated the settlement against the possibility of equitably subordinating the customer claim as an alternative to recovery of monetary damages.

**III.   THE TRUSTEE'S ASSERTION THAT DEFENDANTS' 502(h) CLAIM ARISING FROM REPAYMENT OF ANY AVOIDED TRANSFERS SHOULD BE A GENERAL UNSECURED CLAIM IS INCORRECT AND UNSUPPORTED**

The Trustee also engages in a lengthy discussion of the difference between a customer claim and an unsecured claim and argues that, in a SIPA proceeding, a section 502(h) claim based upon return of customer property should somehow, inexplicably, transform into an unsecured claim rather than a customer claim even absent equitable subordination. *See, e.g.,* Tr. Opp. at 5-7, 11-13.

By paying the judgment for any avoided transfers, Ascot Partners will have the identical customer claim, standing in the same priority, that it would have had absent the avoided transfers. Section 502(h) provides that if there is recovery for fraudulent transfers under section 550, then the fraudulent transferee has a claim "the same as if such claim had arisen before the date of the filing of the petition." *See* 11 U.S.C. § 502(h). "Section 502(h) is based on the principle of fraudulent transfer law that the return of a fraudulent transfer restores the parties to the *status quo*." *Gowan v. HSBC Mortg. Corp. (USA) (In re Drier LLP)*, No. 08-15051, 2012 WL 4867376, at *3 (Bankr. S.D.N.Y. Oct. 12. 2012); *see also In re Best Products Co., Inc.*, 168 B.R. 35, 56 (Bankr. S.D.N.Y. 1994) (Section 502(h) is predicated on the principle "that when a fraudulent transfer is avoided, the parties are restored to their previous positions."); *Tronox, Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013) ("§502(h) does not create a 'claim arising from the recovery of property' under § 550," but rather provides for a prepetition claim to the extent the defendant gave value for the avoided transfer.).   Section 502(h) claims are not general unsecured claims by default; instead, "the 502(h) claim takes on the characteristics of the original claim including, in this case, its secured status." *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 67 (1st Cir. 2004); *In re Gurly*, 311 B.R. 910, 919 (Bankr. M.D. Fla. 2001) ("Courts continue to recognize that § 502(h) addresses the problem of creditors who need

- 9 -

to reassert their satisfied pre-petition claims, rather than providing for a new claim created by the mere avoidance of a pre-petition transfer.").[8]

Ascot Partners, a net loser, has a $235 million net equity claim against the BLMIS customer estate. If the allegedly avoidable fraudulent transfers had not been made, Ascot Partners would be a bigger net loser and its net equity claim would have been $515 million ($280 million greater). If Ascot Partners satisfies a judgment on the $280 million fraudulent transfer claims, the resulting section 502(h) claim would put Ascot Partners in the same position as if the allegedly avoidable transfers had not been made, providing Ascot Partners with a $280 million customer claim in addition to its $235 million net equity claim against the customer estate.

The Trustee cites no authority to the contrary. Instead, he misleadingly strings together inapplicable cases with misrepresentations of his own settlement agreements to conjure purported support for his position. Initially, he cites *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013), in which Judge Rakoff held that claims for lost opportunity costs and out-of-pocket expenses could not form the basis for a SIPA claim and would therefore be general unsecured claims against the general estate. *Id.* at 424. Defendants claims are wholly distinguishable; they would be unrecovered principal invested by a BLMIS customer in the same way as other customers.

The Trustee also cites *Picard v. The Lustig Family 1990 Trust*, 568 B.R. 481 (Bankr. S.D.N.Y. 2017), purportedly for the proposition that the Court acknowledged that section 502(h) claims are unsecured. Tr. Opp. at 12. In *Lustig*, the Court rejected defendants' argument that they should be permitted to claim a credit for funds that they withdrew from their own customer account

---

[8] That this is a SIPA proceeding has no impact on this result. SIPA liquidation proceedings are to be conducted in accordance with, and as though they were being conducted under, the Bankruptcy Code; thus, the "Code's provisions apply absent any indication to the contrary." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437, 442 (S.D.N.Y. 2014). No contrary indication exists here, and the Trustee cites none.

- 10 -

at BLMIS and subsequently reinvested into BLMIS through other funds. In describing the settlement already reached with those other funds regarding the reinvestment, the Court stated that the claims of certain funds within the group had been "increased by the aggregate amount of $800 million pursuant to 11 U.S.C. § 502(h)." 568 B.R. at 488. This statement is followed by a footnote quoting section 502(h) and adding "[i]n other words [the two funds] received an aggregate, allowed unsecured claim for 80% of the amount paid toward the settlement." *Id.* at 488, n.6. The description of the section 502(h) claims as unsecured claims appears to have no basis in the settlement or the parties' submissions and can only be explained as a scrivener's error. The Tremont settlement agreement, to which the *Lustig* Court cites extensively, explicitly states that upon payment of the settlement payment, claims defined as "customer claims" would be "increased by the aggregate amount of Eight Hundred Million Dollars." *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. No. 10-05310 (Bankr. S.D.N.Y. July 28, 2011), ECF No. 17-1 ¶¶ T, V, and 5. The Trustee's motion to approve the settlement confirms this, stating that certain of the funds' customer claims would be "increased under Section 502(h) of the Bankruptcy Code in the aggregate amount of $800,000,000.00." *Tremont Group Holdings,* Adv. No. 10-05310 (Bankr. S.D.N.Y. July 28, 2011), ECF No. 17 at 10. The Trustee's citation to the footnote in *Lustig*, in light of the actual terms of the settlement agreement that he himself signed is at best erroneous, and at worst, misleading.

Finally, the Trustee cites to a transcript in another case where, in the context of approving a settlement, the Court ponders whether the section 502(h) claim at issue would be against the customer estate or the general estate without reaching any conclusion. *See* Hr'g Tr. at 11:15-25, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (Bankr. S.D.N.Y. Apr. 16, 2015), ECF No. 9892. Notably, the settlement at issue provided that following a

- 11 -

settlement payment in satisfaction of the avoidance, subsequent transfer and equitable subordination claims, the defendant received a credit as part of its "*customer claim*" for a percentage of the settlement payment. *Picard v. Defender Limited, et al.*, Adv. No. 10-05229 (Bankr. S.D.N.Y. March 23, 2015), ECF No. 114-2 ¶ 2 (emphasis added). This was confirmed by the Trustee's motion to approve the settlement, which stated that the agreement "increase[d] [defendants'] Customer Claim pursuant to 11 U.S.C. § 502(h)." *Defender Limited*, Adv. No. 10-05229 (Bankr. S.D.N.Y. March 23, 2015), ECF No. 114 at 3, 10. And, as indicated, the Court ultimately approved the settlement, including payment of the section 502(h) claim as a "*customer claim.*" None of the Trustee's citations—nor any other authority—provides support for his position that section 502(h) somehow converts repaid customer funds into a general unsecured claim.

## IV. THE MOTION IS RIPE AND THE COURT CAN AND SHOULD DECIDE THIS ISSUE NOW

The Trustee urges the Court to ignore the issue raised in Defendants' motion, arguing that it is not ripe for judicial consideration and that the Court's determination should be deferred until well after the trial. *See* Tr. Opp. at 2-4. This is somewhat surprising, since it was the Trustee who first proposed this issue be addressed in a motion *in limine*. When, at the First Hearing on Motions *in Limine* the Court stated, without deciding the issue, that "it sounds like [the Trustee is] trying to get two remedies" for the same wrong (MIL Tr. at 50:18-19), Trustee's counsel suggested we "have an in limine motion" on this issue (*id.* at 51:17). Now, apparently recognizing the weakness of his arguments and desperate to maintain settlement "leverage" over Defendants (*see id.* 50:10-11), the Trustee seeks to defer a determination indefinitely.

The question before the Court is precisely the sort of ripe and pressing issue that should be addressed on a motion *in limine*. Discovery and dispositive motion practice are over; trial is upon

- 12 -

us. The only issue to be decided on this motion is whether the Trustee may seek double recovery through equitable subordination at trial. Defendants contend that, as a matter of law, the equitable subordination claim in this action cannot provide the Trustee double recovery under any circumstance. Defendants brought this motion *in limine* to allow the Court to resolve this purely legal issue in order to save the Court and the parties the time and cost of litigating a meaningless claim at trial and to stop the Trustee from continuing to advance theories wholly inconsistent with his long-held and often reaffirmed position. Thus, it is entirely appropriate for the Court to decide now, on a motion *in limine*, whether the Trustee can seek this double remedy at trial. *See Summit Props. Int'l, LLC v. LPGA*, No. 07 Civ. 10407, 2010 WL 10407, at *2 (S.D.N.Y. Dec. 6, 2010) ("Motions *in limine* are appropriate for evidentiary or 'purely legal . . . non-record dependent legal issues.'") (citation omitted); *see also* Defs. Br. at 9-10 (collecting cases).

None of the authorities cited by the Trustee regarding ripeness address a motion *in limine* (*see* Defs Br. at 9-10), and the Court's ruling on summary judgment is not inconsistent with Defendants' position. In that ruling, the Court simply held that issues of fact existed as to both the avoidance and equitable subordination claims, rendering summary judgment inappropriate. *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 563 B.R. 737, 755 (Bankr. S.D.N.Y. 2017). This motion does not argue that these facts are no longer in dispute, but instead that no circumstances exist in which the Trustee could recover on both its fraudulent transfer and equitable subordination claims, and so the Trustee should be precluded from seeking equitable subordination at trial.

The Trustee argues that this issue will only be ripe after "judgment has . . . been entered against Defendants," Defendants have "paid the full amount of the judgment," "disallowance of the Defendants' customer claim under section 502(d) has . . . been vacated," and "Defendants have

- 14 -

. . . filed a section 502(h) claim." Tr. Opp. at 3.  The Trustee ignores that the mere entry of judgment against Defendants on the avoidance claim will moot any equitable relief.  *See Centennial Textiles*, 227 B.R. at 610 (Bernstein, J.) (The granting of a legal remedy for the wrong on which an equitable subordination claim is based renders the Trustee's "request for equitable subordination . . . moot."); *see also* Defs. Br. at 11.  There is no reason for the Court to defer determination of a critical issue until well after trial, particularly because a decision on the motion will save the Court and the parties substantial time and effort at trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion *in limine* to preclude the Trustee from seeking double recovery at trial through equitable subordination.

| | |
|---|---|
| Dated: New York, New York<br>September 29, 2017 | NORTON ROSE FULBRIGHT US LLP<br><br>By:  /s/ *Judith A. Archer*<br>        Judith A. Archer<br>Sarah O'Connell<br>David B. Schwartz<br>1301 Avenue of the Americas<br>New York, New York  10019<br>Tel.:  (212) 318-3000<br>Fax:  (212) 318-3400<br>judith.archer@nortonrosefulbright.com<br>sarah.oconnell@nortonrosefulbright.com<br>david.schwartz@nortonrosefulbright.com<br><br>*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*<br><br>DECHERT LLP<br><br>By:  /s/ *Neil A. Steiner*<br>Andrew J. Levander<br>Neil A. Steiner<br>Daphne T. Ha<br>Mariel R. Bronen<br>1095 Avenue of the Americas<br>New York, New York 10036<br>(212) 698-3500<br>andrew.levander@dechert.com<br>neil.steiner@dechert.com<br>daphne.ha@dechert.com<br>mariel.bronen@dechert.com<br><br>*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation* |