# EXHIBIT A

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 08-99000-smb

4  - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  ADMINISTRATIVE CASE RE: 08-1789 (SECURITIES INVESTMENT

8  ADVERSARY PROCEEDING),

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  Adv. Case No. 08-01789-smb

13  - - - - - - - - - - - - - - - - - - - - - - - - - - x

14  SECURITIES INVESTOR PROTECTION CORPORATION,

15              Plaintiff,

16          v.

17  BERNARD L. MADOFF INVESTMENT SECURITIES, L.L.C.,

18              Defendants.

19  - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25



Page 2

1    Adv. Case No. 10-04292-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                    Plaintiff,

6              v.

7    ROMAN,

8                    Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 10-05257-smb

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

13   MADOFF INVESTMENT SECURITIES LLC,

14                   Plaintiff,

15             v.

16   ZRAICK, JR., INDIVIDUALLY AND AS JOINT TENANT, et al.,

17                   Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25



Page 3

1    - - - - - - - - - - - - - - - - - - - - - - - - - - x

2    Adv. Case No. 10-05257-smb

3    - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    IRVING H. PICARD, ESQ., TRUSTEE FOR THE SUBSTANTIV,

5                   Plaintiff,

6          v.

7    SHAPIRO et al.,

8                   Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                   U.S. Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14

15                   February 7, 2017

16                   2:02 PM

17

18

19

20

21

22

23    B E F O R E :

24    HON STUART M. BERNSTEIN

25    U.S. BANKRUPTCY JUDGE

Page 4

1    Hearing re:  08-01789-smb Conference regarding letter from

2    Chaitman LLP seeking to appeal order of discovery arbitrator

3

4    Hearing re:  10-04292-smb Discovery Conference pursuant to

5    Local Bankruptcy Rule 7007-l(b) (also applies to Adv. P. No.

6    10-04302)

7

8    Hearing re:  10-05257-smb Discovery Conference pursuant to

9    Local Bankruptcy Rule 7007-l(b)

10

11   Hearing re:  10-05383-smb Discovery Conference pursuant to

12   Local Bankruptcy Rule 7007-l(b)

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 5

1    A P P E A R A N C E S :

2

3    CHAITMAN LLP

4         Attorney for Mr. Lawrence

5         465 Park Avenue

6         New York, NY 10022

7

8    BY:  HELEN DAVIS CHAITMAN, ESQ.

9

10   BAKERHOSTETLER

11        Attorney for the Trustee

12        811 Main Street, Suite 1100

13        Houston, TX 77002

14

15   BY:  DEAN D. HUNT

16        BRIAN SONG

17        MAXIMILLIAM S. SHIFRIN

18        TED JACOBS

19        EDWARD J. JACOBS

20        TORELLO H. CALVANI

21        KEITH R. MURPHY

22        JAMES ROLLINSON

23

24

25

Page 6

1    HUNTON & WILLIAMS LLP

2        Attorney for Edward A. Zraick Jr., et al.

3        200 Park Avenue

4        New York, NY 10166

5

6    BY:  ROBERT A. RICH

7

8    LAX & NEVILLE LLP

9        Attorney for Defendant Shapiro

10        1450 Broadway, 35th Floor

11        New York, NY 10018

12

13    BY:  ROBERT R. MILLER

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Madoff.

 3              MR. HUNT:  Which matter would you like to hear

 4    Your Honor?

 5              THE COURT:  Well, why don't we start with the

 6    appeal from the discovery arbitrator's order?

 7              MR. HUNT:  Dean Hunt and Brian Song for the

 8    Trustee, Your Honor.

 9              THE COURT:  Okay.

10              MS. CHAITMAN:  Helen Davis Chaitman.

11              THE COURT:  Go ahead, Ms. Chaitman.

12              MS. CHAITMAN:  Thank you.  Your Honor, I don't

13    know if Magistrate Judge Moss intended that the language in

14    his order, which is Docket Number 14820, places this penalty

15    on people who can't stipulate to the specific facts about

16    transfers in their account.  But, and I'm focusing on

17    Paragraph 3 of the order, which reads --

18              THE COURT:  I don't have the order.  I just have

19    what you quoted in the letter, but do I need the rest of the

20    order?

21              MS. CHAITMAN:  Oh, I'm -- I don't think so.

22              THE COURT:  All right.

23              MS. CHAITMAN:  Okay. In adversary proceedings in

24    which the parties enter into the foregoing stipulation, that

25    is, they consent to the -- they admit to the deposits and
```

Page 8

1     withdrawals -- the defendants need not supplement their

2     prior answers to the Trustee's interrogatories concerning

3     the persons or entities that directly or indirectly received

4     funds withdrawn from the accounts, and the use of those

5     funds.

6          Now it's kind of a non-sequitur, and I'm not sure,

7     as I said, I don't know if this is what Magistrate Judge

8     Moss intended, but there's no basis in the law to punish

9     someone who can't stipulate to a fact, that is, dispute, in

10    good faith disputes a fact, to punish that person by saying,

11    "Well now you're going to have to forego your right to due

12    process of law, and we're going to allow the Trustee to take

13    discovery of subsequent transferees."

14          All of the defendants have already produced

15    evidence of the deposits into their accounts.  And the

16    Trustee has subpoenaed all of the bank records.  So there's

17    no factual dispute that the funds were deposited by Madoff

18    into the defendant account.

19          But for this order to then require people who

20    can't stipulate on certain deposits and withdrawals, for

21    example, you have someone who inherited the account in 2013

22    because her parents died.  She has no personal knowledge and

23    can't stipulate to something.

24          So now, she has to disclose subsequent

25    transferees, which the Trustee's not entitled to take

1   discovery of?

2            THE COURT:  Well, I think you're mixing up two

3   things here.  The first thing I thought you said is that

4   people who won't stipulate are, as a general matter, being

5   punished because they have to answer discovery.

6            MS. CHAITMAN:  No, no, no, no.  Everyone has

7   answered discovery.  It's just that now the Trustee, because

8   of this order, the Trustee is taking the position that

9   people who answered discovery, but didn't answer as to

10  subsequent transferees, now they have to.

11           THE COURT:  Okay.  You know, I looked at the, I

12  guess it was Paragraph 2 in the order, or what was in your

13  letter.

14           MS. CHAITMAN:  Yes.  I quoted --

15           THE COURT:  And it looked like the stipulation

16  that the Trustee was looking to, or that the order referred

17  to was -- were those columns --

18           MS. CHAITMAN:  Exactly, the first five columns --

19           THE COURT:  All right.

20           MS. CHAITMAN:  -- starting on the left of Exhibit

21  B.

22           THE COURT:  And it's saying, as I understood it

23  from reading this, that if you don't agree with those

24  figures, then you have to provide the discovery.

25           MS. CHAITMAN:  We've already provided discovery.

Page 10

```
 1    What we have not provided is discovery of subsequent

 2    transferees.  We've taken the position throughout, as you

 3    know, painfully, that the Trustee is not entitled to take

 4    discovery in order to frame a complaint against a subsequent

 5    transferee.

 6              So we have -- consistently, we've provided all the

 7    discovery we have as to deposits and withdrawals from the

 8    account.  However, we're only questioning the Trustee's

 9    right under this order, if indeed that's what the Magistrate

10    Judge intended.

11              THE COURT:  But where is the Trustee?  I guess

12    where is the Trustee's request for subsequent transfer

13    information?

14              MS. CHAITMAN:  Okay.

15              THE COURT:  I -- because I don't have the

16    discovery.

17              MS. CHAITMAN:  Okay.  So okay, so if you -- every

18    interrogatory, every set of interrogatories that were served

19    at least on my clients demands information as to all

20    subsequent transferees, all people who received money from

21    the account holder.

22              THE COURT:  I am -- I don't recall that being the

23    request.  Do you have a copy of any discovery?  Or let me

24    hear from the Trustee and see what the Trustee's position

25    is.
```

1          MS. CHAITMAN:  Okay.

2          MR. HUNT:  Your Honor, would you -- I have a copy

3    of the order here, if you'd like to see it.

4          THE COURT:  Well, I'm happy to see it.  It sounds

5    like I probably have what I need, but thank you.

6          MR. HUNT:  Okay.

7          THE COURT:  So Ms. Chaitman is telling me that I

8    guess whether or not she can stipulate, and in the past

9    we've talked about certain situations where there can't be a

10   stipulation, for instance, inter-account transfers, where

11   the person just doesn't know, that the particular defendant

12   has given all the information that he, she or it has,

13   regarding deposits and withdrawals into the subject account

14   and that unless the defendant is willing to stipulate to the

15   correctness of all of the Trustee's figures, that defendant

16   is being forced to disclose subsequent transfer information.

17   Is that essentially what you're saying?

18         MS. CHAITMAN:  Correct.

19         THE COURT:  Okay.

20         MR. HUNT:  That's not right.

21         THE COURT:  Tell me why that's wrong.

22         MR. HUNT:  So Judge Moss, just to give you a

23   little background, he issued this order after a full day of

24   arbitration on December 13th.  And then he amended the order

25   after an additional hearing on January 5th where he gave the

                                                              Page 12

1    parties the opportunity to review and comment on his order.

2             And I will just point out that Ms. Chaitman, first

3    of all, never questioning anything in Paragraph 3 of the

4    order during the January 5th hearing.  But I think, if you

5    look at the order, it's entitled "General Rulings," under

6    Paragraph A.

7             And I think Ms. Chaitman is simply misreading the

8    order.  There's nothing to appeal in the general rulings of

9    the order.  What it says is, and it's not a punishment, it's

10   really a gift, if you're able to stipulate to the things in

11   Paragraph 2, then you don't have to respond to the discovery

12   items listed in Paragraph 3.  That's the gift.

13            If they are able to stipulate, and it doesn't say

14   that they have to say they specifically received it, it just

15   means that they don't contest columns 1 through 5 of Exhibit

16   B of our complaint.  So that's a gift.

17            THE COURT:  I think -- yeah, but what she's saying

18   is that some of the areas in Paragraph 3 seem to relate to

19   subsequent transfers.

20            MR. HUNT:  I disagree with that, but I don't think

21   it matters, because if you're unable to stipulate, then

22   Judge Moss directs you to Paragraph 4.  And Paragraph 4 says

23   you're supposed to meet and confer about remaining discovery

24   issues, areas where you can stipulate and if you can't

25   agree, then come see me again and we'll work it out.  That's

1   all it says.  There's no forcing anybody to do anything.

2           THE COURT:  Have you met and conferred on these?

3           MR. HUNT:  Yes, Your Honor, as a matter of fact,

4   on the three cases that were involved in this order, as I

5   said, we spent an entire day of arbitration -- and if you

6   look at the order, you can see that we're -- Ms. Chaitman

7   was able to stipulate in the (indiscernible) client case,

8   were able to cover a lot of ground and reduce the number of

9   interrogatories they had to respond to and so forth.

10          But where she was unable to ultimately stipulate

11  in (indiscernible) and Benjamin, there are still some

12  remaining issues.  And if you look at the December 13th

13  transcript of our arbitration which was attached to our

14  pleadings -- I apologize if you don't have it.  I've got a

15  copy.

16          THE COURT:  No, I have it, but what page?

17          MR. HUNT:  But anyway, what we told Judge Moss was

18  that we would just defer any discussion on certain

19  interrogatories pending resolution of Ms. Chaitman's

20  internal discussions with her clients as to whether or not

21  they could stipulate to what was in Paragraph 2.

22          So the way the order works is, we're now down to

23  Paragraph 4, and we'll need to go back to Judge Moss.  And

24  he, you know, was very aware of the issues regarding

25  subsequent transfers.  And I'll tell you, the one thing that

Page 14

1    the transcript on December 13th says, and it's crystal clear

2    because I'm the one that said it on the record, is I need to

3    know who got the initial transfers.  That's all I need to

4    know.  And that's the position we have taken in front of

5    Judge Moss, absolutely, every single time we've talked to

6    him.

7                THE COURT:  Ms. Chaitman, I'm being told that if

8    you can't stipulate, then you have to meet and confer, you

9    don't have to produce anything at this point.

10               MS. CHAITMAN:  Okay, and --

11               THE COURT:  And if then if there's an area of

12   dispute, such as subsequent transfers, which is the area

13   you've raised, you're supposed to go back to Judge Moss

14   under the order and say, "Here's why I don't think I have to

15   produce this stuff."

16               MS. CHAITMAN:  Okay.  If the Trustee -- we have

17   letters from the Trustee in a case that was not submitted to

18   Judge Moss, where the Trustee -- we answered written

19   discovery, the Trustee deposed the witness for four hours,

20   and every deposit and withdrawal was discussed at length and

21   documents relating to every deposit and withdrawal were

22   discussed and after Magistrate Judge Moss' ruling, I

23   received a letter from the Trustee's counsel saying, "You

24   now have to answer as to all of the subsequent transferees."

25   And that is not a case which was where the clients have

1    agreed to go to Judge Moss.  So there were certain cases

2    that did go to Judge Moss.

3            THE COURT:  All right, but I'll deal with that

4    case in the event there's a dispute as to that particular

5    case, but we're just talking about this order now.  And I'm

6    being told that if you don't want to stipulate, nobody says

7    you have to stipulate --

8            MS. CHAITMAN:  Right.

9            THE COURT:  -- to anything, then you're supposed

10   to meet and confer on specific interrogatories, and I

11   recognize you can't stipulate in some circumstances.

12           MS. CHAITMAN:  Right.

13           THE COURT:  Then you're supposed to meet and

14   confer as to specific interrogatories or requests for

15   admission.

16           MS. CHAITMAN:  Okay, but as I understand it --

17           THE COURT:  And if you can't agree, then you go

18   back to Judge Moss.

19           MS. CHAITMAN:  But as I understand it, the Trustee

20   has now said that they're not seeking information about

21   subsequent transferees.  Therefore, any transfer from the

22   account holder would not be discoverable.

23           THE COURT:  Well, I don't read this as a ruling

24   that you have to answer.  I read it sort of as just taking

25   it off the table if you stipulate, then you don't have to

Page 16

1   talk about it any further.

2           But, you know, we've been through the subsequent

3   transfer issue many times before.  I dismissed the

4   subsequent transfer claims.  As a general matter, you don't

5   have to answer subsequent transfer information.  On the

6   other hand, I took another look at your affirmative

7   defenses, which I assume are the same in every case, and

8   some of them do raise the issue of the use of the proceeds.

9           MS. CHAITMAN:  For certain purposes.

10          THE COURT:  For certain purposes.  But unless

11  you're prepared to say, these are the relevant subsequent

12  transfers I used to pay taxes or whatever the issue is, then

13  the Trustee is entitled to the information.

14          MS. CHAITMAN:  Okay --

15          THE COURT:  So it's kind of the same thing you've

16  been talking about for two years now.

17          MS. CHAITMAN:  Okay, but if --

18          THE COURT:  So what I would suggest you do is if

19  you can't stipulate for whatever reason, then you meet and

20  confer on a case-by-case basis, and as I said, as a general

21  matter you can't get subsequent transfer information.  On

22  the other hand, provided that you identify those subsequent

23  transfers which are relevant to the defense, and no other

24  subsequent transfers are relevant.  And then he's entitled

25  to the information relating to those subsequent transfers.

1            MS. CHAITMAN:  And we have done that, Your Honor.

2            THE COURT:  All right.

3            MS. CHAITMAN:  We've been providing all of the

4    information about the tax payments.

5            THE COURT:  I don't know if you have or you

6    haven't, but the point is, you're supposed to be negotiating

7    this out.

8            MS. CHAITMAN:  Okay.

9            THE COURT:  You're meeting and conferring first,

10   and then, with respect to the matters that are covered by

11   Judge Moss' order, which everybody had a chance to review,

12   go back to Judge Moss on it.

13           MS. CHAITMAN:  Okay.

14           THE COURT:  If something isn't referred to Judge

15   Moss and you want me to deal with it, then I'll deal with

16   it.

17           MS. CHAITMAN:  Okay.

18           THE COURT:  All right?  So it's not really an

19   appeal from his order, because there's nothing that compels

20   you to do anything of this order.

21           MS. CHAITMAN:  Okay.

22           THE COURT:  All right?

23           MS. CHAITMAN:  All right.  Do you want to deal

24   with the Romans?

25           MR. HUNT:  Thank you, Your Honor.

1          THE COURT:  Okay.  I'll just make a note of this.

2          MR. SHIFRIN:  Good afternoon, Your Honor, Max

3     Shifrin and Ted Jacobs at the --

4          THE COURT:  All right, let me just make a note of

5     what just occurred.  Okay.  Go ahead, I'm sorry.

6          MR. SHIFRIN:  Good afternoon, again, Your Honor.

7     Max Shifrin on behalf of the Trustee.  I'm here with my

8     colleague Ted Jacobs.

9          As the Court was aware, the Trustee's application

10    in this case relates to the defendant's assertion of work

11    product objections over communications between the

12    defendants and/or Ms. Chaitman on the one hand, and Bernard

13    Madoff on the other.

14          Now under any conceivable scenario, Your Honor,

15    those communications are either, A, not work product at all,

16    or B, work product that has been deliberately,

17    affirmatively, and selectively waived under the case law.

18          Now as a preliminary matter, Your Honor, the

19    requests seek communications that presumably pre-date Ms.

20    Chaitman's retention as counsel in this case.

21          THE COURT:  Can I ask you something?  What does

22    this have to do with the Roman case, though?

23          MR. SHIFRIN:  Well, Your Honor, the Roman case is

24    part of the case wide deposition efforts that Ms. Chaitman

25    has spearheaded -- spearheading, excuse me.  And --

Page 19

1           THE COURT:  So what does that have to do with the

2     adversary proceeding involving the Romans?  That's what --

3     it wasn't clear.  This had to do with the Picower sentence

4     and the (indiscernible) affidavit?

5           MR. SHIFRIN:  No, Your Honor, Ms. Chaitman has

6     placed the fraud in dispute in this case.  Fraud is an

7     element of our claims in the adversary proceedings.  And

8     therefore --

9           THE COURT:  You mean whether or not it was a Ponzi

10    scheme or when it began or --

11          MR. SHIFRIN:  That's right.  And that's what Ms.

12    Chaitman has been challenging for the last half a year.

13          THE COURT:  And what are the communications that

14    you're seeking?  What do they relate to?

15          MR. SHIFRIN:  Well, we don't know what

16    communications that defendants or Ms. Chaitman have, but we

17    think that any communications between Ms. Chaitman and/or

18    the defendants and Mr. Madoff relating to BLMIS are

19    discoverable under Rule 26 and can be used for --

20          THE COURT:  Wait a minute.  Communications between

21    Ms. Chaitman and her clients are discoverable?

22          MR. SHIFRIN:  No, no, no.  Communications between

23    Ms. Chaitman and Mr. Madoff or the Romans and Mr. Madoff.

24          THE COURT:  Why would -- why wouldn't Ms.

25    Chaitman's communications be work product?  Putting aside

1    Roman's communications?

2         MR. SHIFRIN:  Well, Your Honor, for purposes of

3    this conference, let's assume that whatever was actually

4    sent to Mr. Madoff was work product.

5         THE COURT:  Right.

6         MR. SHIFRIN:  Under the relevant case law, the

7    fact that it was shared with Mr. Madoff constitutes a

8    waiver.  Mr. Madoff is not some consultant or agent.  He is

9    --

10         THE COURT:  But, you know, I know, but this is

11    like Hickman v. Taylor.  You're going -- you don't get the

12    attorney's notes.  You go and take deposition of the person

13    they spoke to.

14         MR. SHIFRIN:  Your Honor, respectfully, the case

15    law, particularly the SEC v. Gupta case, which was the 2012

16    decision decided by Judge Rakoff, effectively, and in a fact

17    pattern that mirrors the facts here, decided that the

18    defendant in that case that was moving to compel was

19    entitled to anything that was discussed between the

20    plaintiff and a third party witness in the days and weeks

21    leading up to a deposition.

22         THE COURT:  No, but I thought you said if Ms.

23    Chaitman spoke to Mr. Madoff in preparing her case.

24         MR. SHIFRIN:  That's right.

25         THE COURT:  You're saying you're entitled to that?

1              MR. SHIFRIN:  I think we're -- we are entitled

2       under the Gupta case, to any communications that relate to

3       BLMIS in preparation of the declaration that she submitted

4       in the PW hearing case.

5              THE COURT:  Notwithstanding work product?

6              MR. SHIFRIN:  Notwithstanding work product.  And I

7       have copies of the case here --

8              THE COURT:  I'm not going to read it now.  So

9       there's -- how did Judge Rakoff deal with the work product

10      issue?

11             MR. SHIFRIN:  Well, for purposes of that case, it

12      was presumed that it was work product.

13             THE COURT:  Right.

14             MR. SHIFRIN:  But the issue was waived.  The fact

15      that -- and in that case, SEC was the plaintiff and they

16      were working with Lloyd Blankfein in connection with a third

17      party deposition that was set to take place.  Leading up to

18      that deposition, they had several meetings with Mr.

19      Blankfein, and the defendants in the subsequent definition -

20      -

21             THE COURT:  Who had several meetings with the --

22      Mr. Blankfein?

23             MR. SHIFRIN:  The SEC and the US Attorney's

24      office.  The defendants in that case, Mr. Gupta, in a

25      deposition, asked Mr. Blankfein about his communications

1    with the US Attorney's office, his communications with the

2    SEC, what was discussed.

3              THE COURT:  Was the SEC a party to this

4    litigation?

5              MR. SHIFRIN:  Yes, it's SEC v. Gupta.  And the

6    defendants moved to compel when the government refused to

7    make that information available and Judge Rakoff handed down

8    the decision that said this was a clear waiver.

9              Mr. Blankfein was a third-party witness.  He had

10   no interest, common legal interest with the defendant in

11   that case and the government made the voluntary, deliberate

12   and selective effort to make that information available.

13   And that was enough to find a waiver in that case.  And I

14   think those facts mirror the facts here.  So the same

15   results should obtain.  And again, Your Honor, I have five

16   copies that I can give them to you.

17             THE COURT:  I'm not going to rule on this one

18   today.

19             MR. SHIFRIN:  Okay.  Your Honor, that -- to us,

20   that's the crux of the issue.  Waiver -- even if we assume

21   that everything was work product, which we, as I said

22   before, dispute.  But if we assume that it's work product,

23   it -- all of it was waived by virtue of it being shared with

24   Mr. Madoff.  And we're happy to brief that for you further,

25   if that's what the Court requires.

1          MR. JACOBS:  May I clarify one point, Your Honor,

2     before Ms. Chaitman speaks, I apologize.  We're only seeking

3     written communications that were shared explicitly with Mr.

4     Madoff.  We're not seeking Ms. Chaitman's mental impressions

5     or notes that she may have made and not shared.  And we're

6     also not seeking any attorney client communications between

7     Ms. Chaitman and her client.

8          THE COURT:  Maybe -- let me hear your response.

9     I'm not going to rule on this today, but go ahead.

10          MS. CHAITMAN:  Okay.  You may recall, Judge, that

11     I served a document demand on the Trustee, and asked him to

12     produce his notes of his communications with various Madoff

13     employees about Madoff's operation.  And the Court ruled

14     that that was work product and there was no way I was

15     getting it.

16          THE COURT:  It sounds like you should've made the

17     motion that they're going to make there.

18          MS. CHAITMAN:  I should.  Right.  Well --

19          THE COURT:  Look, you're going to have to make a

20     motion to compel discovery on this one.  This one, just my

21     initial reaction is that it's work product.  Now the -- what

22     you're looking for is a little more refined than what it

23     sounded like in the letter, because I thought you were

24     looking for notes of all communications and things like

25     that.  And I'll read, you know, the Judge Rakoff's case, and

Page 24

1    anything that you have to provide in response.

2              MS. CHAITMAN:  Okay.  I'd like to just inform the

3    Court that I have been told by the client that there are no

4    communications with Madoff, except for the communications

5    with which Your Honor may recall, were made in connection

6    with Mr. Madoff's declaration.

7              And at that time, Your Honor, I had submitted to

8    you in camera, but not to the Trustee, a few documents that

9    contained my communications with my client, as to why I was

10   seeking Mr. Madoff's declaration.

11             And those were -- those -- that was my work

12   product, and those are the only documents of which I'm

13   aware, that are responsive to this request.  And Your Honor

14   has those documents, if you'd like me to provide them

15   sealed.

16             THE COURT:  I recall them.  You know, I don't know

17   if that satisfies the trustee or if he's looking for

18   something new.

19             MR. JACOBS:  Well, certainly those particular

20   documents, Your Honor, would be discoverable, pursuant to

21   our request in the case law --

22             THE COURT:  You have those, right?

23             MR. JACOBS:  We have them.

24             MS. CHAITMAN:  No, I did not.  As I said in my

25   papers, I was submitting through to you in camera.  I was

Page 25

1    not providing them to the Trustee.

2            THE COURT:  Okay, all right.

3            MS. CHAITMAN:  I think that that's what prompted

4    this.

5            MR. JACOBS:  Well, that's true, Your Honor, and

6    certainly, those particular written communications between

7    Madoff and Ms. Chaitman are discoverable.  They're relevant

8    to -- or Mr. Madoff's testimony, concerning the fraud, and

9    Ms. Chaitman's challenge of the fraud, in which she is

10   exclusively, at this juncture, relying on Mr. Madoff's

11   testimony.

12           They're also impeachment evidence that go to Mr.

13   Madoff's credibility.  So those certainly would fall under

14   our application.  But they're also made an additional --

15           THE COURT:  Mr. Madoff's credibility?

16           MR. JACOBS:  I'm sorry?

17           THE COURT:  Mr. Madoff's credibility, you're

18   questioning it?

19           MR. JACOBS:  Absolutely, we're questioning it,

20   Your Honor.  But Your Honor, the Court has allowed his

21   deposition to go forward.  We resisted that, on the basis of

22   his credibility, but it's happening, so we're entitled to

23   defend ourselves against that testimony.

24           THE COURT:  You're going to have to make a motion

25   to compel discovery.  Make it clear what it is you're

Page 26

1    looking for and if it's limited to certain things, then make

2    that clear, also.

3              MR. JACOBS:  Okay.

4              THE COURT:  You may be talking about a very small

5    universe of documents.  I don't know.

6              MR. JACOBS:  We absolutely are, Your Honor.  And

7    just to reiterate, and to address Ms. Chaitman's concerns,

8    this is not like her application for our work product

9    concerning interviews.  We're not interested in that.

10             THE COURT:  That one's not before me now.

11             MR. JACOBS:  Right.

12             THE COURT:  Let's deal with what's before me.

13             MR. JACOBS:  I'm just -- absolutely, Your Honor,

14   thank you.

15             THE COURT:  All right, okay.  So you'll make a

16   motion to compel on that one.  Thank you.  Next is Zraick?

17             MR. RICH:  Good afternoon.

18             THE COURT:  Good afternoon.

19             MR. RICH:  May it please the Court, Robert Rich,

20   Hunton & Williams, LLP on behalf of Edward A. Zraick Jr., et

21   al.  These are four individual defendants with net alleged

22   liability of $285,000.

23             We're here on a request to extend our deadline to

24   serve a rebuttal witness report by approximately 30 days.

25   And this is with respect to what I'm going to call the

Page 27

1    Dubinsky report.

2           It's an expert report served on us by the Trustee

3    on November 16.  As we had discussed in a chambers

4    conference at the end of December, though we had not had the

5    Madoff transcript at that time, the Madoff deposition made

6    clear that this expert report was highly defective.

7           And we've, since that time, have been able to

8    confirm that with several bond traders, and had been racing

9    to produce a rebuttal report to say the same.  We had hoped

10   at the time of our conference to work with joint counsel,

11   although, you know, just given the different discovery

12   deadlines in each case, getting a report by our deadline was

13   difficult.

14          And so, these defendants scraped together enough

15   money to retain their own rebuttal witness and to submit a

16   report as soon as possible.  Given the stakes here, you

17   know, I also think it's appropriate to consider a uniform

18   discovery and briefing schedule on this issue.

19          THE COURT:  Is this part of the when did the Ponzi

20   scheme begin issue??

21          MR. RICH:  I think you can call it that.

22          THE COURT:  Let me ask Mr. Murphy because we

23   haven't fixed a discovery schedule with that, and that's a

24   common issue that pervades all the cases.

25          MR. MURPHY:  We have not, Your Honor --

Page 28

1            THE COURT:  Pervades a lot of them.  I shouldn't

2    say all of them.

3            MR. MURPHY:  We have not, Your Honor, and that's

4    not something present before the Court.

5            THE COURT:  No, but I'm saying, are we talking

6    about discovery that goes to that issue?

7            MS. CHAITMAN:  May I be heard, Your Honor?

8            THE COURT:  No.

9            MS. CHAITMAN:  Okay.

10            THE COURT:  Is that what we're talking about?  I

11    don't know what the Dubinsky report --

12            MR. MURPHY:  This is the rebuttal expert report

13    with respect to Mr. Dubinsky.

14            THE COURT:  It -- but is Dubinsky opining on when

15    the Ponzi scheme began?

16            MR. MURPHY:  Your Honor, he does talk about the

17    fraud, Your Honor, and what took place in that fraud, yes.

18            THE COURT:  How does the report relate to these --

19    this case?  What's the relevance of the report to this case?

20            MR. MURPHY:  Dubinsky relates to all the good

21    faith cases, Your Honor, at a minimum, and he talks about

22    how the fraud was conducted in the documents that he looked

23    at, to verify that.

24            MR. RICH:  Your Honor --

25            MR. MURPHY:  So it's relative to all the good

Page 29

1    faith cases, Your Honor.

2            THE COURT:  Yeah, but that -- if he looked at all

3    the documents, then that's relevant to each of those cases.

4    But my question is really a broader question, whether or not

5    the Dubinsky report is going to -- is it going to be used to

6    argue when the Ponzi scheme began?

7            MR. MURPHY:  Yes, I think it will, Your Honor.

8    There are portions of that that will be used for that.

9            THE COURT:  Okay.  And there's been no schedule

10   set for expert reports in that particular proceeding, right?

11   You're just taking Madoff's deposition.

12           MR. MURPHY:  There have been no provisions for

13   that, Your Honor.

14           THE COURT:  What I'm getting at, this aspect of

15   the case, if there's a dispute when the Ponzi scheme began

16   in these -- in this particular case, and that's part of the

17   broader omnibus dispute, isn't it?

18           MR. MURPHY:  Your Honor, let me just clarify

19   something, too.  This decision -- this issue, regarding the

20   1992 start of the Ponzi scheme, Madoff has at least admitted

21   --

22           THE COURT:  Right.

23           MR. MURPHY:  -- at least since 1992, he was

24   conducting a Ponzi scheme.  If you recall, back in the time

25   when these defendants were asking for Mr. Madoff's

1    deposition, at that hearing, we produced a report by Mr.

2    Greenblatt.  He did an analysis of all the cases that were

3    going before you at the time, to see whether if the fraud

4    started in 1981 or earlier, of whether the fraud started in

5    1992, made a difference to different defendants.

6              According to that declaration, Your Honor, which I

7    have with me today, it makes no difference to the fictitious

8    profits to these defendants.

9              THE COURT:  Okay.

10             MR. MURPHY:  So I would submit to you that it

11   doesn't -- it's not relevant.

12             THE COURT:  Okay.  So what -- so then, what is it

13   relevant to?  I don't have the report, so I'm just asking,

14   what is it relevant to, in order to gauge what he has to

15   respond to?

16             MR. RICH:  Your Honor, I would ask that they

17   stipulate to that, if that's -- if we could eliminate a

18   large section.  He just said he's not worried about the

19   period --

20             THE COURT:  Are you prepared to stipulate that in

21   this case, the Ponzi scheme began on January 1st, 1992?

22             MR. MURPHY:  I am not, Your Honor, and I'll tell

23   you why.  I know you've asked me before on that, Your Honor,

24   but defendants have now -- certain defendants, other

25   defendants in this case have since --

1           THE COURT:  Just in this case.

2           MR. MURPHY:  I don't know where they're going with

3      this, Your Honor.  They make --

4           THE COURT:  You just told me it doesn't matter.

5           MR. MURPHY:  Defendants have made new arguments

6      with respect to 1992.  After they found that out, that it

7      may not make a difference at all, I think they take a

8      different view about whether the 1992 date matters at all or

9      not.  It's very difficult to pin them down to -- on a

10     particular argument, so it can't suggest to you that for

11     purposes of this argument, that it only started in 1992.

12          THE COURT:  I guess I don't understand that.

13     These are fictitious --

14          MR. MURPHY:  There are defendants, Your Honor --

15     excuse me -- there are defendants --

16          THE COURT:  -- transferees.

17          MR. MURPHY:  -- Your Honor, who suggest that even

18     if the fraud started in 1992, then they are seeking a

19     different calculation of their net equity, based on a

20     different date than what the trustee would use.

21          THE COURT:  A different date for the start of the

22     Ponzi scheme?

23          MR. MURPHY:  Correct.

24          THE COURT:  But if both of you stipulate that the

25     Ponzi scheme began on January 1st, 1992, then does it matter

Page 32

1    in this particular case?  I understand that there are other

2    disputes with other defendants.

3              MR. MURPHY:  These defendants, Your Honor, are

4    pre-1992.  They have inter-account transfers, I believe, or

5    prior accounts, I should say.  I'm not clear.  I'll think

6    about it for a moment, if you would, whether if they

7    stipulate to the Trustee's netting.  And if they stipulate

8    to the calculation of the ins and outs, and they stipulate

9    to their liability in the amount of approximately $285,000,

10   based on that --

11             THE COURT:  But --

12             MR. MURPHY:  -- then I don't know.  Maybe that

13   works, but I'm not sure.

14             THE COURT:  Are there post-1992 inter-account

15   transfers?

16             MR. RICH:  No, Your Honor, and there are other

17   issues post-1992.  You know, we -- our learning evidence --

18             THE COURT:  So what do you -- I don't understand

19   what the Dubinsky report is going to be used to prove in

20   this particular case.

21             MR. RICH:  Your Honor, the Dubinsky report, it

22   states basically that there was very few trades, no trades

23   going on in the IA business, what they're focusing on.

24             THE COURT:  Right.

25             MR. RICH:  Basically, testifying that based on

1    what he looked at, it is impossible for any trades to have

2    been made pre-'92, post-'92.  It's completely debunked, both

3    by Madoff --

4              THE COURT:  But the only issue in your cases is

5    whether there were trades made with your accounts.

6              MR. RICH:  Well, there were certainly trades made

7    in our accounts.

8              THE COURT:  I'm not going to -- let me put it

9    another way.  I'm not going to hear that there may have been

10   an actual trade in some other person's account.  That's --

11             MR. RICH:  We believe that all of the trades, all

12   -- pretty much all of the convertible bond trades were

13   actual trades that happened.

14             THE COURT:  In your client's account?

15             MR. RICH:  Mine and probably most of the

16   customers.

17             THE COURT:  Well, but I'm not talking about most.

18   I'm not going to try somebody else's case.

19             MR. RICH:  Okay.  But we -- I understand.  We have

20   trade records at Madoff that show bonds being traded in our

21   accounts.  There is nothing to suggest that those didn't

22   happen.

23             THE COURT:  So why can't you -- why couldn't you

24   have gotten an expert that said, "These were real trades"?

25   You know, whatever happened in other accounts, we're

1    interested in what happened in your account.

2              MR. RICH:  You, Your Honor, you can't -- with

3    these trades, the only records that exist are of Madoff's.

4    Those are the only things.  You can maybe try to find the

5    counterparty.  Other than that, there's really no way to

6    confirm that a trade happened.

7              THE COURT:  So what is your expert report going to

8    say?

9              MR. RICH:  He's going to say the methodology that

10   Mr. Dubinsky used to say that it is impossible for these

11   trades to have been made, because he based it on the price

12   and the volume, that methodology is completely flawed.

13             He is basically saying, I looked at the New York

14   Stock Exchange and some industry reports in the '80s that

15   said, "Well, the bonds traded between 120 and 140."  Here,

16   you have a record of your bond trading at $118.  It is

17   impossible for that trade to have been made.

18             THE COURT:  Right.

19             MR. RICH:  That is completely bogus.  The -- I

20   understand that these bonds are traded, the highest volume

21   of the account.  In the '80s, there was no required

22   reporting.  The New York Stock Exchange was less than one

23   percent or something --

24             THE COURT:  So why couldn't you have gotten an

25   expert to say that?

Page 35

1            MR. RICH:  Your Honor, I -- we've discovered this

2    through the Madoff deposition.  We've been searching for an

3    expert.  We tried to work with joint counsel --

4            THE COURT:  I thought you told me you had an

5    expert.  I mean, that -- in chambers.

6            MR. RICH:  We did.  We have a -- we had an expert

7    that other defense counsel retained, but we had different

8    deadlines to submit a rebuttal or a report, making it

9    difficult for our -- for him to focus on our case.

10           We had to go out, retain our own expert, which we

11   did, scrape together the money.  We just needed a little

12   more time to submit it.  Now you also mentioned an omnibus

13   proceeding about this.  I wasn't aware that there was

14   already --

15           THE COURT:  We talked about this when we were

16   talking about Madoff's deposition, didn't we, in June or

17   July?  That's what it related to.  You were a participant in

18   that?

19           MR. RICH:  Yes.  And we've formally requested an

20   extension of fact discovery, and we've tried to use it and

21   they've objected in the letter.

22           THE COURT:  That's a separate proceeding with

23   other participants.  It's a meeting on its own.

24           MR. RICH:  Well, Your Honor, if you're telling me

25   that I can submit a report on an extended deadline --

Page 36

1          THE COURT:  I didn't say that.  I didn't say

2     anything.  You know, I fixed a deadline, and now you're

3     coming back and you're saying, "I need more time.  I need

4     more time."  And all you really need is someone to say that

5     the methodology is wrong, because for the reasons you just

6     told me, these trades aren't reported.  I don't know why you

7     need more time.

8          MR. RICH:  It -- Your Honor, like I said, we had

9     to find the right person.  We had -- it was a very lengthy

10    Dubinsky report we needed to review.  We needed to formally

11    retain it and get the money to do so.  It wasn't very long,

12    that we were, you know, before Your Honor on this issue.

13         THE COURT:  But this issue has been in the case, I

14    mean, the case management order was entered and notified in

15    April.  I think this issue's been in the case for almost a

16    year now.

17         MR. RICH:  Well, I didn't know what was going to

18    be served on us on November 16th.  He could've served on us

19    a lot earlier.

20         THE COURT:  Oh okay.

21         MR. RICH:  -- if that's what they want to do in

22    the case.

23         THE COURT:  Okay, all right.  So you got it

24    November 16th and what did you do since then?

25         MR. RICH:  Well, you know, we have been trying --

1    we have been reviewing the thousands of pages of expert

2    reports, which became much more clarified after we received

3    the transcript of the Madoff deposition in very late

4    December.

5              After reading that, it helped us, you know, we

6    thought discovery was supposed to have been completed.  Once

7    we had that, we were armed with the knowledge of where to

8    look, of why the -- this report was so flawed, and have

9    since raced to get an expert to say the same.

10             It's amazing that after all this time, they

11   actually don't know what happened at Madoff Securities for

12   decades.  It's unfathomable, really.

13             THE COURT:  Well, I think if you asked them,

14   they'll say he just made it all up.

15             MR. RICH:  And but, they based that on things that

16   we're going to show are completely flawed.

17             THE COURT:  Didn't Madoff admit that he made it

18   all up?

19             MR. RICH:  He did not.  We have transcript and he

20   in --

21             THE COURT:  I thought I read his allocution.  He

22   said he ran a Ponzi scheme.

23             MR. RICH:  In a very detailed testimony, he was

24   able to tell us, you know, what happened.  And I submit to

25   the Court that once the fact-finder sees how detailed his

Page 38

1    testimony is, plus corroborated by our experts, that it will

2    become clear, the extent to which Madoff made securities.

3           He was also testified and come clear that he held

4    a lot of treasury bills and other securities for the

5    customers' accounts post-'92.  Once they --

6           THE COURT:  Did he ever allocate them to the

7    customer's accounts?

8           MR. RICH:  You know, we've requested discovery on

9    that point, and he's -- and they've objected to it.  And

10   that's why I bring up our request, which is on the docket at

11   Docket Number 60 for an extension.

12          THE COURT:  All right.  This is a conference, I

13   granted you one extension, I'm not inclined to grant you

14   another.  If you want to make a motion to modify the pre-

15   trial order to prevent manifest injustice, you can go ahead

16   and do it, but I'm not inclined, having given you one

17   extension, this matter has been on surface at least since

18   November.

19          You're telling me you need an expert to opine on

20   something that doesn't sound like there's a lot to opine on,

21   other than that Dubinsky didn't do it right for the

22   following five reasons.

23          MR. RICH:  Your Honor, this is a very specific

24   security that only bond-traders need to understand.  We went

25   through people who've tried to go through conflicts.

Page 39

1               THE COURT:  So you put all that in the motion, but

2       you're going to have to make a motion to modify the pre-

3       trial schedule based on a showing of manifest injustice.

4       Because I've already given you an extension, which you

5       requested more or less on the last day, when your last

6       report, when your rebuttal report was due.

7               And you know, I think if I give you another

8       extension, you're going to come back in 30 days asking for

9       more time.  So --

10              MR. RICH:  Your Honor, I have an expert, he's

11      retained, he's --

12              THE COURT:  What's his name?

13              MR. RICH:  Bill Feingold with Hillside Advisors.

14      He wrote the book on his convertible bond trades.

15              THE COURT:  All right, yeah.  As I said, you'll

16      have to make a motion for the reasons that I've stated.

17              MR. RICH:  Your Honor, can I ask the extent to

18      which the omnibus proceeding, with respect to when the fraud

19      started is -- I can submit this report in that proceeding?

20              THE COURT:  You'll have to discuss it with the

21      Trustee.  And if there's a dispute, you can raise it.  I

22      don't think any time has been fixed for that, but it doesn't

23      sound like it matters in your case.  So why would you want

24      to submit it?

25              MR. RICH:  I guess I'm not clear that that issue

Page 40

1    is what I'm talking about, the extent to which Madoff has

2    made actual trades.

3           THE COURT:  It sounded like your -- I guess from

4    your letter, that that's what the -- one of the issues was,

5    but now I'm being told it doesn't matter.  I don't know if

6    that's correct or not, but that's what I'm being told.

7           MR. RICH:  Your Honor, I'm not sure if you wanted

8    to address it at this conference, but we do have a pending

9    request on the docket for fact discovery extension on issues

10   that relate to Madoff's deposition at Docket Number 60.  It

11   hasn't been --

12          THE COURT:  That fact discovery.  I thought I just

13   extended discovery solely for this deposition.

14          MR. RICH:  Your Honor, the Trustee clearly

15   objected to my fact discovery, which was rela --

16          THE COURT:  Because it's beyond the discovery

17   cutoff.  Right.

18          MR. RICH:  It -- well, it is, Your Honor, but we

19   filed a timely request for an extension, which had -- which

20   the Trustee has not responded to, and we've not --

21          THE COURT:  Do you want to grant them an

22   extension?

23          MR. MURPHY:  No, Your Honor.

24          THE COURT:  It's a no to grant you an extension.

25          MR. RICH:  I'm requesting it from Your Honor.  We

1    -- I already knew that they denied it.

2             THE COURT:  You'll have to make a motion.  I'm not

3    inclined to grant it.  I remember this issue coming up at

4    the last minute.  People wanted to take Mr. Madoff's

5    deposition to -- right at the close of the discovery

6    deadline, as I recall.  Wasn't it very close to the close, I

7    said, okay, I'll extend it just for this?

8             And I think I even said, "Don't come back and tell

9    me now that you've learned something from Mr. Madoff's

10   deposition that you want even more discovery of other people

11   because you could've taken that deposition, you know, five

12   years ago, six years ago, whatever it was.

13            MR. RICH:  Your Honor, I have a slightly different

14   recollection.  We requested the extension at the same time

15   as we did the Madoff, and you did say you were not granting

16   any extensions at that point.

17            THE COURT:  Right.

18            MR. RICH:  And that parties should need to file

19   their separate requests, which we went ahead and did.

20            THE COURT:  Right.  Look, I'm not inclined to

21   grant an extension.  You have to prepare your case in a

22   timely manner.  You could've taken Madoff's deposition eight

23   years ago.  And you didn't do it.  And you came at the last

24   minute with a couple of other people, and you said, "Now I

25   want to take the deposition."  There was an objection

Page 42

1    because it was -- either the time had run or it was about to

2    run.

3              And I remember we had a cutoff.  For everybody

4    who's time had run, that couldn't participate in the

5    deposition, that you got your request in before the

6    termination of your fact discovery, which I think was true

7    in your case.  You could take his deposition, but I'm just

8    not inclined to continue to rollover these deadlines.

9              You could have taken his deposition a long time

10   ago.  And the fact that you discovered something six months

11   after the discovery cutoff doesn't lead me, doesn't incline

12   me to extend the discovery now for other people.  You can

13   finish the Madoff deposition and then I think we're done,

14   subject to whatever happens with this expert rebuttal issue,

15   all right?

16             MR. MURPHY:  Thank you, Your Honor.

17             THE COURT:  Next is Shapiro.

18             MR. ROLLINSON:  Good afternoon, Your Honor, James

19   Rollinson here with Torello Calvani on behalf of the

20   plaintiff, Mr. Picard.

21             THE COURT:  Go ahead.

22             MR. ROLLINSON:  Good afternoon, Your Honor.  We

23   are here today on a Rule 7007 conference regarding the

24   Shapiro family's responses to the Trustee's discovery

25   requests.  As Your Honor may recall, the Trustee's case

Page 43

1   against Mr. Shapiro and his family is not your typical case.

2           In this case, the Trustee has alleged and

3   specifically alleged that Mr. Shapiro called Mr. Stanley

4   Shapiro, Mr. Shapiro going forward, had actual knowledge

5   that no securities were being traded in his family's

6   accounts.

7           The Shapiro family filed a motion to dismiss.

8   That motion was largely denied, although we do acknowledge

9   that certain claims were dismissed by Your Honor in

10  connection with that motion.

11          And so, obviously, the Trustee has a fairly high

12  burden in this case, of proving actual knowledge.  And our

13  discovery that we issued to this Shapiro family was targeted

14  to the issue of Mr. Shapiro's knowledge and control over

15  these accounts.

16          It was also directed obviously to proof of receipt

17  of transfers as well.  I want to start by saying, going

18  forward, we're not directing our discovery at certain of the

19  dismissed claims.

20          Certainly, the 502(d) claims were dismissed.  The

21  subsequent transfer claims were dismissed.  And in the

22  exhibit that we provided with our letter, we tried to

23  identify in column one in that chart, just all the various

24  requests that we put out there, notwithstanding the

25  objections from the Shapiro family, we acknowledge that

Page 44

1    those particular issues are of no relevance in this case,

2    due to the dismissed claims.

3            We also have a number of our claims, or excuse me,

4    our requests that were directed specifically at receipt of

5    transfers.  We've tried, with the Shapiro family, to enter

6    into stipulations.  We know how Your Honor pushes the

7    parties to attempt to reach stipulations as it relates to

8    receipt of transfers.

9            As we left it back in early, mid-December,

10   actually, after several meet and confers on that issue with

11   Mr. Lax and Mr. Miller.  We have not heard from them in

12   regards to our latest request for a stipulation, as it

13   relates to receipt of transfers.

14           And so, therefore, we feel these requests are

15   still relevant.  Obviously, if we reach a stipulation and

16   certain of our requests will not be relevant anymore.

17           So there remains a number of our requests that

18   relate to highly relevant both documents and requests for

19   admissions, specifically targeted at Mr. Shapiro's

20   knowledge, his control of these accounts, all that are live

21   issues.

22           Even though, some of the defendants, particularly

23   his two children, Leslie Citron and David Shapiro, have been

24   dismissed out of certain claims.  I think there are only

25   right now subject to count one for the two year transfers in

Page 45

1    connection with a couple of the accounts.

2           We addressed certain discovery to them, as it

3    relates to claims that we still have pending against their

4    father.  And so, with the meet and confers that we did have

5    with counsel on the other side, we basically identified two

6    issues in connection with the Shapiro family's objections to

7    our requests.

8           One is the -- the first is whether they can launch

9    sort of the blanket objection.  They claim that certain of

10   our requests are too broad, that in a certain request,

11   although we're seeking certain relevant information, some of

12   it is irrelevant, so we then have to break out a specific

13   request into -- specific to defend and specific to accounts.

14          We invited them to provide us any authority during

15   our last meet and confer on December 7th.  We followed up

16   with a letter on December 14th.  You know, our position is

17   that you have to respond to the request, and if you object

18   to a portion of it, object to a portion of it.

19          But if you don't object to a certain part of it,

20   under the Rule 34b2c, you have to then respond to that part

21   of it.  And we didn't hear from the Shapiro family, but

22   actually, the most recent, after our last meet and confer,

23   the last time we heard from them was last night at 11

24   o'clock or so, when they submitted a responding letter to

25   our January 11th letter on that.

1          So we attempted to try to narrow the issues.  We

2     attempted to see if they would consent to have this matter

3     heard before Judge Moss, which they, you know, did respond

4     to us on that, saying that they wouldn't consent.  But we've

5     tried to engage them on this issue.  It seems as if we just

6     can't reach a consensus.

7               THE COURT:  Okay.

8               MR. ROLLINSON:  And then, the other issue broad

9     category is as it relates, do we have -- does the Trustee

10    have the ability to ask Leslie Shapiro, who's subject just

11    to the two-year clawback claim, can we ask her about

12    information relating to her father and her father's

13    activities?

14          And we believe we have the ability to do that.

15    Certainly, we could go outside the parties involved in this

16    case through Rule 45 and ask a third party, who has no

17    connection to this case, other than having relevant

18    information, I hope, to weigh in on that.  And we have the

19    right to conduct discovery of that outside party through

20    Rule 45.

21          So that's where we are.  The one thing that I

22    think it's important for Your Honor to know in connection

23    with all of this is there is a bit of a history between the

24    parties that in 2009 and '10, before we filed, we did

25    conduct Rule 2004 discovery with the Shapiro family, former

1   counsel before Lax & Neville got involved, Akin Gump was

2   representing the family then, produced 7,800 pages of

3   documents from the Shapiro family.

4            We've told Mr. Lax and Mr. Miller we're not

5   looking for them to reproduce those documents.  We're only

6   asking for anything above and beyond that, that they've

7   produced.  We had fairly broad categories of documents that

8   we sought through prior counsel.

9            And so, if you get down to proportionality, which

10  is now the standard, we actually, if they didn't object to

11  anything and there was a fairly marginal production, that

12  wouldn't come as a shock to us.

13           THE COURT:  But if they didn't object, we wouldn't

14  be here, would we?

15           MR. ROLLINSON:  That's right.  But had their

16  production been slim, it wouldn't be a shock, because we

17  really don't feel that there are too many documents out

18  there.  So even though they may claim that it's over broad

19  or it's unduly burdensome, they really hadn't backed that up

20  with anything, quite frankly, and we don't expect there's

21  too much burden when we start looking at proportionality.

22           THE COURT:  Well, I mean, you know, they may have

23  to do that to make a motion to compel.  But they have the

24  burden of showing the burden, really.

25           MR. ROLLINSON:  That's correct.  And that's where

1    we might be ultimately, Your Honor.

2              THE COURT:  All right.

3              MR. ROLLINSON:  I have nothing further.

4              THE COURT:  Let me hear from the Shapiros or the

5    defendants.

6              MR. MILLER:  Robert Miller of Lax & Neville for

7    the defendants, my colleague, Lisa Catalano.  I do think

8    that there are two broad issues, although I dispute the way

9    they were characterized.

10              The first are a request in this initial category,

11    as Mr. Rollinson said.  The Trustee won't be directing

12    certain discovery of certain parties, because the claims

13    against them have been dismissed.

14              We're not talking about a few requests on those

15    subjects.  And it's not clear whether they're just talking

16    about subsequent transfers or some of the questions about

17    imputing knowledge to Ms. Citron or David Shapiro, Stanley

18    Shapiro's children, which was, you know, a theory that Your

19    Honor rejected.

20              There are dozens upon dozens of requests on those

21    subjects, and it's only in the course of this process that

22    they've started discussing sort of vaguely backing off from

23    some of those.

24              It's important to note, the case against Stanley

25    Shapiro is distinct from the general good faith cases, but

1   not Stanley Shapiro's family.  And I think that's where the

2   first issue arises from.

3         Mr. Shapiro is here on counts that reach back

4   decades and are about his actual knowledge of the Ponzi

5   scheme, but Mr. Shapiro, Citron is not, and Mr. Shapiro,

6   David Shapiro is not.

7         THE COURT:  Well, I guess we'll just have to go

8   through each of the requests, but the argument is being made

9   that they have the right to ask Leslie Citron, for example,

10   about what her father may have known.  And the fact that

11   claims were dismissed against her, except for the two-year

12   claims, doesn't matter.  If she knew that in 1990, her

13   father knew that Madoff was a fraud.  They can certainly ask

14   her that.

15         MR. MILLER:  And I think that's a little distinct

16   from the issue of claims that could've been dismissed.  I

17   think that there's --

18         THE COURT:  I read through some of the stuff and I

19   agree with you that some of these requests look like they're

20   trying to impute knowledge to Leslie Citron going back.  Her

21   knowledge is irrelevant anyway on the two-year transfers.

22         On the other hand, some of these do seem to relate

23   to what Mr. -- what her father knew, going back.  And she

24   can certainly be asked that.  If she doesn't know, then she

25   says she doesn't know.

1            MR. MILLER:  I think it -- that reaches the second

2    issue, which is primarily on the request for production,

3    although I would say, if there were a request for admission

4    among the 63 that were served to David Shapiro or the 69

5    that were served to Leslie Shapiro, Citron, it's simply

6    asked, did Stanley admit that Stanley Shapiro knew in 1998

7    that there was a Ponzi scheme or in 2000, that there was a

8    Ponzi scheme?

9            THE COURT:  These are requests for admissions?

10           MR. MILLER:  These are requests for admissions.

11   It's likely that I can't say now how we would've

12   (indiscernible), but it's likely that Ms. Citron would not

13   have objected to that kind of request.

14           The problem is, particularly in the request for

15   production, that the Trustee's requests are, in many cases,

16   enormously overbroad.  They reach back decades and decades.

17           THE COURT:  Why don't we go through the requests,

18   because it's hard to talk about these in general terms?  Why

19   don't we start -- I think the first tab you had in your

20   requests for the conference Exhibit B were requests for

21   admissions from Leslie Citron?

22           MR. MILLER:  Is that Exhibit B?

23           MR. ROLLINSON:  It is, yes.

24           THE COURT:  So let me get your chart out.  You say

25   that 21 through 42 are in dispute.  First of all, there's a

Page 51

1    phrase here, portfolio account.  What -- I didn't know what

2    that meant, because I didn't have the definitional section

3    from your requests?

4              MR. ROLLINSON:  Sure, Your Honor.  We

5    distinguished that from the split strike account, so the

6    portfolio account is the one that was held by Mr. Shapiro

7    and his wife as Trustees of the Trust for her benefit.  It's

8    SH30.  But we just called that the portfolio account, so

9    that --

10             THE COURT:  So that's the trust account?

11             MR. ROLLINSON:  That's correct.  And the split

12   strike account, in this instance, would be SH171.

13             THE COURT:  That's her personal account?

14             MR. ROLLINSON:  That's her personal account to

15   which, again, she's subject to the two-year clawback.

16             THE COURT:  Okay, thank you.  All right, so I

17   think Number 21 is -- so why do you think 21 is irrelevant?

18             MR. MILLER:  Again, I think Ms. Citron was

19   dismissed on everything but the two-year claims.  And as the

20   Trustee's aware, she's willing to pay the two-year claims

21   today.

22             THE COURT:  But he's -- but this account, the

23   portfolio account is the account that Stanley Shapiro is

24   liable for since 2001 or 2002.

25             MR. MILLER:  It's the Leslie Shapiro Trust.

Page 52

1              THE COURT:  So it's certainly relevant what went

2      in and what came out, isn't it?

3              MR. MILLER:  I think as far as -- first of all, I

4      think that that question could be handled by the

5      stipulations.  The parties have been back and forth on that

6      question, and hopefully will --

7              THE COURT:  I'm being told that it's still in

8      dispute, but --

9              MR. MILLER:  There's a dispute over the language

10     in the stipulation.

11             THE COURT:  As a general proposition, as long as

12     the account itself is still in dispute or generally Stanley

13     Shapiro's liability, with respect to the account is still in

14     dispute, the money that was deposited, the money that was

15     withdrawn, and what he knew about BLMIS are all relevant,

16     even if the particular defendant who's asked that question

17     is no longer in the case.

18             MR. MILLER:  I think as is the case with many of

19     these requests, the problem is that as phrased, it requires

20     Leslie Citron to go back decades and decades to a Trust that

21     was founded when she was a child, and that has no bearing on

22     any claims against her.  It's not -- in fact, it's not

23     asking about Stanley Shapiro's knowledge.

24             THE COURT:  Well, but if she's a witness in the

25     case, even if she were never a party in this case, and she

Page 53

1    knew relevant information, you know, you're arguing it's a

2    big burden.  I don't know if it's a big burden.  I don't

3    know if she even still has the records.

4              MR. MILLER:  She would have to go looking for

5    them.

6              THE COURT:  Well, where would she look?

7              MR. MILLER:  Well, she could -- I mean, she's

8    moved multiple times from New York, there are storage

9    facilities, there are -- you know, there's a -- the problem

10   with many of these requests is that she has to go back and

11   perform this search.

12             And you know, this -- in terms of the Leslie

13   Shapiro Trust, it was founded when she was, you know, a

14   child.  It's 35, 40 years ago.  She's also asked for all the

15   documents relating to the --

16             THE COURT:  You know, I -- the one thing that when

17   I read this, I questioned the evidentiary value, and she

18   admitted this, that doesn't bother Mr. Shapiro.  So what's

19   the evidentiary value of an admission from her that no money

20   was deposited in the portfolio account?

21             MR. ROLLINSON:  It's certainly probative,

22   particularly if he claims ignorance, and the person who's

23   the beneficiary of that account can say, "Yeah, I agree.

24   There was nothing deposited in that."  I can't say that it's

25   a slam dunk, Your Honor.  I would rather have him admit it.

1          MR. MILLER:  But I think that Mr. Rollinson could

2     examine Ms. Citron on her father's knowledge, but here,

3     we're talking about, I think a strategic attempt to get

4     information from Ms. Citron.

5          THE COURT:  Well, he's just -- he just wants to

6     confirm that more money went in, because he's interested in

7     the money that came out.  It just allows him to make a

8     mathematical calculation of what the exposure of liability

9     is.  But you know, my response is, it's certainly relevant.

10         It sounds to me like you're saying, maybe it's

11    relevant, but it's marginally relevant, given the burden of

12    what's involved, you shouldn't have to do it.  So it's --

13         MR. MILLER:  That's correct.  If it's -- we don't

14    necessarily admit that it's relevant.  Again, as Your Honor

15    said, because it doesn't have probative value.

16         THE COURT:  Well --

17         MR. MILLER:  To establishing --

18         THE COURT:  I agree with you that a Leslie Citron

19    admission about that account probably isn't going to bind

20    Stanley Shapiro.  But you know, if you made the motion to

21    compel discovery, I'd probably grant a protective order on

22    something like this.

23         It's minimal probative value.  I'm not ruling on

24    it, I'm just -- you know, it's minimal probative value, but

25    whatever she answers isn't going to bind Stanley Shapiro.

Page 55

1    And since the theory is that Stanley Shapiro is in charge of

2    the account and he's giving the directions regarding the

3    trading or the record manipulation in the account, then he's

4    the appropriate person to answer that, since he's the guy

5    you're trying to hold liable for that account, and maybe

6    others.  I don't know who else the Trustees (indiscernible).

7            MR. MILLER:  Well, I think that this is,

8    particularly I've just checked, I've cross referenced the

9    same request to Stanley Shapiro, admit that between January

10   1st, 1990 to December 11, 2008, a total of $3,037,500 was

11   withdrawn from the portfolio account, which Stanley Shapiro

12   has admitted.  And so --

13           THE COURT:  So what are you (indiscernible) in

14   this Court?  If he's admitted it and he's the defendant on

15   that, really the target defendant on that charge.

16           MR. ROLLINSON:  I would agree with that, Your

17   Honor.  I mean, I didn't cross reference every one of these

18   --

19           THE COURT:  Why don't you do that?  Maybe if you

20   sat down -- if you all would go through every one of these

21   today, and maybe those will be resolved more quickly, once

22   we establish some ground rules.  But if Mr. Miller has to

23   cross reference or show you every one where you've got to --

24   you got the answer you needed from the person you really

25   needed it from, there's no reason to press.

1          MR. ROLLINSON:  Yeah, I will just add, there are a

2     number of responses, if we get there, on Mr. Shapiro's end -

3     -

4          THE COURT:  All right, (indiscernible) --

5          MR. ROLLINSON:  -- when he says that, "My

6     daughter's no longer subject to the relevant claim in this

7     case, and so, I'm not answering that."

8          THE COURT:  I'm not saying there aren't

9     variations.

10         MR. ROLLINSON:  Sure.

11         THE COURT:  But let's go through them.  Next is

12    22.  It's the same.  We just did 22, didn't we?  These are

13    the withdrawals from the account now.  Did Mr. Shapiro admit

14    that nothing went into the portfolio account?

15         MR. MILLER:  Let me make sure before I answer.

16         MR. ROLLINSON:  He did do -- admit --

17         THE COURT:  Yeah, you know, I have a suggestion.

18         MR. ROLLINSON:  It's at 70 --

19         THE COURT:  Rather than do it this way, why don't

20    you, Mr. Miller, show him, since you've obviously done it

21    anyway, show him, you could check off on your chart, if you

22    want, where he got the corresponding admission from the

23    person he presumably would know and the person who's

24    knowledge he wants?  And maybe, we can hone down this

25    dispute?  Maybe understanding that anything that relates to

1   Stanley Shapiro's knowledge is fair game, regardless of who

2   has that knowledge, and even if it relates to a request to

3   Mrs. Citron.

4           If it's focusing on Stanley's knowledge, then he's

5   entitled to ask it, even if it's, you know, it's Stanley --

6   obviously, I'm being flip, but if Stanley said to Leslie in

7   1990, "You know, this Madoff's a big fraud, but I'm going to

8   continue investing," you know, that's a classic example of,

9   it's relevant for any period of her liability, but it's

10  certainly relevant to the case.

11          MR. MILLER:  I think I understand, Your Honor's

12  point.

13          THE COURT:  Now there are a couple of others I

14  noticed, and maybe this is a (indiscernible).  I was looking

15  at Stanley Shapiro's response, I think (indiscernible).

16  Okay.  This is Stanley -- this is your Exhibit C, and it's

17  Stanley Shapiro's responses.

18          And let's take -- you know, there's a few of

19  these.  So if you look at Number 66, first response, admit

20  that between March 1st, 2003, and December 11th, 2008, a

21  total of $4 million, whatever, was withdrawn from this flood

22  strike account.  My first question is, isn't this the

23  account that's no longer part of the case?

24          MR. ROLLINSON:  It is, but only subject to the

25  two-year liability and --

1          THE COURT:  Okay.

2          MR. ROLLINSON:  -- it's to your point, Your Honor,

3     we need (indiscernible) --

4          THE COURT:  Okay, okay.  And that's admitted.  And

5     then, the next question is, had Leslie Citron received it?

6     What difference does it make, whether she received it, if

7     the money is withdrawn, and they admit it?  This was her

8     account, right?

9          MR. ROLLINSON:  That's correct.

10          THE COURT:  So you -- are you concerned that it

11     was withdrawn by somebody else and paid to somebody else,

12     and if so, would that make a difference?

13          MR. ROLLINSON:  It could make a difference, Your

14     Honor.  It's -- it encompasses the last two years of that

15     period as well, and it just goes frankly to the math, Your

16     Honor.  This is the --

17          THE COURT:  Did you ask Leslie Citron the same

18     question?

19          MR. ROLLINSON:  I did.

20          THE COURT:  And how did she answer it?

21          MR. ROLLINSON:  She was -- she said that it's not

22     relevant, is my recollection.

23          THE COURT:  Let me ask a question.  With respect

24     to at least Leslie Citron, is she prepared to admit that all

25     of the withdrawals from the Split Strike account were

1    fictitious profits within the two years?

2              MR. MILLER:  I believe, and I can flip to it, I

3    believe what she admits, is that within the two year period,

4    she admits to the amount withdrawn, yes.  I think that what

5    we're talking about beyond the two-year period of claims

6    that have been dismissed.  That are (indiscernible) against

7    anyone.

8              THE COURT:  So she admits, and you know, she's got

9    a very limited exposure left in this case.  If she admits

10   that all of the withdrawals within the two years, the Split

11   Strike account were fictitious profits, and I guess she

12   received it, to the extent that's an issue, do you need

13   anything more from her, on her liability?

14             MR. ROLLINSON:  On her liability, no, Your Honor.

15   And that was part of our back and forth for the stipulation.

16             THE COURT:  All right.

17             MR. ROLLINSON:  And we left it with them back on

18   December 14th.

19             THE COURT:  Okay.

20             MR. ROLLINSON:  And we didn't hear anything, and

21   it kind of forced our (indiscernible).

22             THE COURT:  And she's willing to admit that, that

23   cuts away a lot of discovery leads.  Not all of them, by any

24   means, because you know, Stanley Shapiro, and I guess his

25   wife, are involved in this case all the way back.  But it

1    will reduce the amount of discovery from Leslie Shapiro

2    about -- Leslie Citron, about what she got, and out of her

3    accounts.

4              MR. MILLER:  Looking at it just very quickly, Your

5    Honor, I think she does admit there's -- there are multiple

6    questions dealing with withdrawals from the Split Strike

7    account in the two years.  I believe she does admit to all

8    of them.

9              THE COURT:  Does she?  Where?

10             MR. MILLER:  Well, it's, for example, there's

11   Number 65.

12             THE COURT:  Are we back on B?

13             MR. MILLER:  This is -- yeah, this is Leslie

14   Shapiro Citron.

15             THE COURT:  65?

16             MR. MILLER:  Yeah, 65. October of 2008.

17             THE COURT:  Oh, these are the various -- does she

18   admit they're fictitious profits?  And was the question

19   asked about that?

20             MR. MILLER:  I'm not sure that the question was

21   asked of her.

22             THE COURT:  Okay, all right.  So my offer remains.

23   Do you want to go through every one of these now?  Or, Mr.

24   Miller, do you want to tell -- show him where somebody else

25   has answered the question, somebody who is in a better

1    position to answer it?

2            MR. MILLER:  I think we can get together and fix a

3    big part of the problem.

4            THE COURT:  All right.  And again, anything

5    relating, you know, I'm repeating myself, but anything

6    relating to Stanley Shapiro's knowledge, because he's the

7    key to the imputation, is relevant, even if it goes back

8    many, many years, even for a period, but that --

9    particularly (indiscernible), it may be liable for any

10   withdrawals, okay?

11           MR. MILLER:  I think we've objected to certain

12   requests that we consider burdensome and how far they go

13   back and what would be required, particularly in document

14   (indiscernible) --

15           THE COURT:  Well, document requests, but if -- I

16   understand that, but I don't know how burdensome it'll be,

17   and that will ultimately be your burden to show, if they

18   have to make a motion.

19           MR. MILLER:  We understand.

20           THE COURT:  I'm not just going to accept, you

21   know, it's burdensome.  You're going to have to explain why,

22   where they are, and what it's -- what's involved in looking

23   for it.

24           MR. MILLER:  We understand that, Your Honor.

25           THE COURT:  All right.  Do you want me to adjourn

Page 62

1    this one?

2              MR. ROLLINSON:  That's fine, Your Honor.  I guess

3    that the question is, is whether we should come back to you

4    in --

5              THE COURT:  Well, if you tell me you've resolved

6    it, you know, you don't need me next time, but if you do

7    want to come back, I want to know what the area of dispute

8    still -- your chart was very helpful.  To the extent issues

9    have been eliminated, that's fine, but I'd like to know what

10   the area --

11             MR. ROLLINSON:  Sure, we're certainly willing to -

12   -

13             THE COURT:  Let me go back to your letter, you

14   brought in the broad areas, and I realized that's your

15   characterization of dispute, and you have a different

16   characterization of dispute.  One other area, I noticed you

17   were asking -- and this may have been with Stanley Shapiro,

18   I don't know if it was with Leslie Citron or her brother.

19             Stuff relating to communications with Koningsberg,

20   for example, and it doesn't say that relate to Madoff.  It

21   just -- you know, they say that Stanley Shapiro has known

22   Koningsberg for many years.  And they may have been

23   scheduling golf dates for all --

24             MR. ROLLINSON:  Yeah, in 29, this is on --

25             THE COURT:  Which Tab?

1          MR. ROLLINSON:  It will be Tab F, Your Honor.

2     Request Number 29.  If you're there, it's Page 11 of 18,

3     Dock ID 73-7.

4          THE COURT:  (indiscernible) --

5          MR. ROLLINSON:  And Exhibit F --

6          THE COURT:  I have that on Page 10.

7          MR. ROLLINSON:  It is Page 10, correct.  I'm

8     sorry.  I'm looking at the pagination of how it was filed.

9     Number 29 talks about communications --

10         THE COURT:  Well, I was talking about Number 28.

11         MR. ROLLINSON:  28.

12         THE COURT:  "All documents concerning your

13    relationships, social or otherwise, with Paul Koningsberg or

14    any employee of Koningsberg, Wolf & Company."  That sounds

15    pretty broad.

16         MR. ROLLINSON:  Well, I think it's a --

17         THE COURT:  If they don't relate to Madoff or

18    taxes or things like that --

19         MR. ROLLINSON:  Well, I would agree with you

20    wholeheartedly, if Mr. -- if we didn't allege Mr.

21    Koningsberg was in the middle of this scheme to back date

22    trades.  In fact, he was indicted and pled guilty to

23    manipulating trades, including some that relate to Mr.

24    Shapiro.

25         THE COURT:  So why can't you just ask for all the

Page 64

1     documents relating to trading records, back dating records,

2     requests for trading records, taxes, things like that?  Just

3     you asked for everything.

4            MR. ROLLINSON:  Well, I think, Your Honor, to the

5     extent they had a personal relationship, that's certainly

6     probative.  It's relevant.

7            THE COURT:  I'm not so sure.

8            MR. MILLER:  I think if read literally, this would

9     include -- this is our problem with many of these requests.

10    If read literally, this would include, you know, ticket

11    stubs for movies that they saw.  That's a document relating

12    to their social relationship.

13           THE COURT:  It might include a bar mitzvah

14    invitation too, you know.

15           MR. MILLER:  Which is not very likely, so --

16           MR. ROLLINSON:  Well, if he can tell me his burden

17    is to go through thousands and thousands of ticket stubs --

18           THE COURT:  Well, he doesn't have to do anything

19    until you make a relevant request.  So you know, it cuts

20    both ways.

21           MR. MILLER:  We've suggested --

22           THE COURT:  And have any proportionality rules,

23    you know, you are -- you're certifying that it's not

24    disproportionate.  So that's --

25           MR. ROLLINSON:  I understand we're down there on

1    the spectrum.  I'll just note on 29, we did limit it, you

2    know, in terms of the communications to subjects.

3              THE COURT:  Limited is fine, if it's limited to

4    the, you know, to what's an issue in the case or what may be

5    an issue in the case.

6              MR. ROLLINSON:  You know, all I'll say is that if

7    I look at their requests, which they attached their letter

8    of late last night --

9              THE COURT:  I didn't look at it.

10             MR. ROLLINSON:  -- Request Number 48 says, "Any

11   and all communications between Stanley Shapiro and Paul

12   Koningsberg," without time, without subject, so what's good

13   for the goose.

14             THE COURT:  Well, how about if you both temper

15   what you're looking for?  The fact that he asked for it,

16   doesn't make it right.

17             MR. ROLLINSON:  I agree, Your Honor.

18             THE COURT:  And I hope I'll be consistent when you

19   object, all right? I can't promise, but --

20             MR. ROLLINSON:  But we'll, Your Honor --

21             THE COURT:  So do you want me to adjourn this?

22             MR. ROLLINSON:  Yeah, I don't think you have to do

23   a date certain.  We'll --

24             THE COURT:  All right.  Why don't you do this?  If

25   you need another conference, if there are -- you will find

Page 66

1    the evidence of dispute and there are specific

2    interrogatories.  Thank you for sending me the responses,

3    but in the future, if there are definitions, I was reading

4    this, I didn't know what the production portfolio was.  I

5    knew what the splits -- actually I didn't know what that was

6    compared to the split strike portfolio or account.  So at

7    least send me the definitions of these, okay?

8              MR. ROLLINSON:  I -- when the stack got that big,

9    I stopped.

10             THE COURT:  It's okay.  It didn't have to be that

11   big.  All right?  So see what you can do.  Narrow the

12   dispute.  You show him whether it's been answered.  You

13   don't need the answer from five people, if one person who's

14   knowledge you need answers it, and then they can come back.

15             MR. ROLLINSON:  Okay, thank you, Your Honor.

16             THE COURT:  Okay. Thank you.

17             MR. MILLER:  Thank you, Your Honor.

18             (Whereupon these proceedings were concluded at

19   3:12 PM)

20

21

22

23

24

25

Page 67

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 8, 2017

| & | | | |
|---|---|---|---|
| **&**   6:1,8 26:20 47:1 48:6 63:14 | **1998**   50:6<br>**1st**   30:21 31:25 55:10 57:20 | **45**   46:16,20<br>**465**   5:5<br>**48**   65:10 | 51:23,23 52:12,13 53:20,23 54:19 55:2,3,5,11 56:13 56:14 57:22,23 58:8,25 59:11 60:7 66:6 |

**0**

**08-01789**   1:12 4:1
**08-1789**   1:7
**08-99000**   1:3

**2**

**2**   9:12 12:11 13:21
**200**   6:3
**2000**   50:7
**2001**   51:24
**2002**   51:24
**2003**   57:20
**2004**   46:25
**2008**   55:10 57:20 60:16
**2009**   46:24
**2012**   20:15
**2013**   8:21
**2017**   3:15 67:25
**21**   50:25 51:17,17
**22**   56:12,12
**26**   19:19
**28**   63:10,11
**285,000**   26:22 32:9
**29**   62:24 63:2,9 65:1
**2:02**   3:16

**5**

**5**   12:15
**502**   43:20
**5th**   11:25 12:4

**1**

**1**   12:15
**10**   63:6,7
**10-04292**   2:1 4:4
**10-04302**   4:6
**10-05257**   2:10 3:2 4:8
**10-05383**   4:11
**10004**   3:13
**10018**   6:11
**10022**   5:6
**10166**   6:4
**11**   45:23 55:10 63:2
**1100**   5:12
**11501**   67:23
**118**   34:16
**11th**   45:25 57:20
**120**   34:15
**13th**   11:24 13:12 14:1
**140**   34:15
**1450**   6:10
**14820**   7:14
**14th**   45:16 59:18
**16**   27:3
**16th**   36:18,24
**18**   63:2
**1981**   30:4
**1990**   49:12 55:10 57:7
**1992**   29:20,23 30:5,21 31:6,8,11 31:18,25 32:4,14 32:17

**6**

**60**   38:11 40:10
**63**   50:4
**65**   60:11,15,16
**66**   57:19
**69**   50:4

**7**

**7**   3:15
**7,800**   47:2
**70**   56:18
**7007**   4:5,9,12 42:23
**73-7**   63:3
**77002**   5:13
**7th**   45:15

**8**

**8**   67:25
**80s**   34:14,21
**811**   5:12

**3**

**3**   7:17 12:3,12,18
**3,037,500**   55:10
**30**   26:24 39:8
**300**   67:22
**330**   67:21
**34b2c**   45:20
**35**   53:14
**35th**   6:10
**3:12**   66:19

**9**

**92**   33:2,2 38:5

**a**

**ability**   46:10,14
**able**   12:10,13 13:7 13:8 27:7 37:24
**absolutely**   14:5 25:19 26:6,13
**accept**   61:20
**account**   7:16 8:18 8:21 10:8,21 11:10,13 15:22 32:4,14 33:10,14 34:1,21 51:1,5,6,8 51:10,12,13,14,22

**4**

**4**   12:22,22 13:23 57:21
**40**   53:14
**42**   50:25

**accounts**   8:4,15 32:5 33:5,7,21,25 38:5,7 43:6,15 44:20 45:1,13 60:3
**accurate**   67:4
**acknowledge**   43:8 43:25
**activities**   46:13
**actual**   33:10,13 40:2 43:4,12 49:4
**add**   56:1
**additional**   11:25 25:14
**address**   26:7 40:8
**addressed**   45:2
**adjourn**   61:25 65:21
**administrative**   1:7
**admission**   15:15 50:3 53:19 54:19 56:22
**admissions**   44:19 50:9,10,21
**admit**   7:25 37:17 50:6 53:25 54:14 55:9 56:13,16 57:19 58:7,24 59:22 60:5,7,18
**admits**   59:3,4,8,9
**admitted**   29:20 53:18 55:12,14 58:4
**adv**   1:12 2:1,10 3:2 4:5

**adversary** 1:8
7:23 19:2,7
**advisors** 39:13
**affidavit** 19:4
**affirmative** 16:6
**affirmatively**
18:17
**afternoon** 18:2,6
26:17,18 42:18,22
**agent** 20:8
**ago** 41:12,12,23
42:10 53:14
**agree** 9:23 12:25
15:17 49:19 53:23
54:18 55:16 63:19
65:17
**agreed** 15:1
**ahead** 7:11 18:5
23:9 38:15 41:19
42:21
**akin** 47:1
**al** 2:16 3:7 6:2
26:21
**allege** 63:20
**alleged** 26:21 43:2
43:3
**allocate** 38:6
**allocution** 37:21
**allow** 8:12
**allowed** 25:20
**allows** 54:7
**amazing** 37:10
**amended** 11:24
**amount** 32:9 59:4
60:1
**analysis** 30:2
**answer** 9:5,9
14:24 15:24 16:5
55:4,24 56:15
58:20 61:1 66:13
**answered** 9:7,9
14:18 60:25 66:12

**answering** 56:7
**answers** 8:2 54:25
66:14
**anybody** 13:1
**anymore** 44:16
**anyway** 13:17
49:21 56:21
**apologize** 13:14
23:2
**appeal** 4:2 7:6
12:8 17:19
**application** 18:9
25:14 26:8
**applies** 4:5
**appropriate**
27:17 55:4
**approximately**
26:24 32:9
**april** 36:15
**arbitration** 11:24
13:5,13
**arbitrator** 4:2
**arbitrator's** 7:6
**area** 14:11,12
62:7,10,16
**areas** 12:18,24
62:14
**aren't** 36:6 56:8
**argue** 29:6
**arguing** 53:1
**argument** 31:10
31:11 49:8
**arguments** 31:5
**arises** 49:2
**armed** 37:7
**aside** 19:25
**asked** 21:25 23:11
30:23 37:13 49:24
50:6 52:16 53:14
60:19,21 64:3
65:15
**asking** 29:25
30:13 39:8 47:6

52:23 62:17
**aspect** 29:14
**assertion** 18:10
**assume** 16:7 20:3
22:20,22
**attached** 13:13
65:7
**attempt** 44:7 54:3
**attempted** 46:1,2
**attorney** 5:4,11
6:2,9 23:6
**attorney's** 20:12
21:23 22:1
**authority** 45:14
**available** 22:7,12
**avenue** 5:5 6:3
**aware** 13:24 18:9
24:13 35:13 51:20

**b**

**b** 3:23 4:5,9,12
9:21 12:16 18:16
50:20,22 60:12
**back** 13:23 14:13
15:18 17:12 29:24
36:3 39:8 41:8
44:9 49:3,20,23
50:16 52:5,20
53:10 59:15,17,25
60:12 61:7,13
62:3,7,13 63:21
64:1 66:14
**backed** 47:19
**background**
11:23
**backing** 48:22
**bakerhostetler**
5:10
**bank** 8:16
**bankruptcy** 1:1
3:11,25 4:5,9,12
**bar** 64:13
**based** 31:19 32:10
32:25 34:11 37:15

39:3
**basically** 32:22,25
34:13 45:5
**basis** 8:8 16:20
25:21
**bearing** 52:21
**began** 19:10 28:15
29:6,15 30:21
31:25
**behalf** 18:7 26:20
42:19
**believe** 32:4 33:11
46:14 59:2,3 60:7
**beneficiary** 53:23
**benefit** 51:7
**benjamin** 13:11
**bernard** 1:17 2:3
2:12 18:12
**bernstein** 3:24
**better** 60:25
**beyond** 40:16
47:6 59:5
**big** 53:2,2 57:7
61:3 66:8,11
**bill** 39:13
**bills** 38:4
**bind** 54:19,25
**bit** 46:23
**blanket** 45:9
**blankfein** 21:16
21:19,22,25 22:9
**blmis** 19:18 21:3
52:15
**bogus** 34:19
**bond** 27:8 33:12
34:16 38:24 39:14
**bonds** 33:20 34:15
34:20
**book** 39:14
**bother** 53:18
**bowling** 3:12
**break** 45:12

brian  5:16 7:7
brief  22:24
briefing  27:18
bring  38:10
broad  45:10 46:8
  47:7,18 48:8
  62:14 63:15
broader  29:4,17
broadway  6:10
brother  62:18
brought  62:14
burden  43:12
  47:21,24,24 53:2
  53:2 54:11 61:17
  64:16
burdensome
  47:19 61:12,16,21
business  32:23

**c**

c  5:1 7:1 57:16
  67:1,1
calculation  31:19
  32:8 54:8
call  26:25 27:21
called  43:3 51:8
calvani  5:20 42:19
camera  24:8,25
can't  7:15 8:9,20
  8:23 11:9 12:24
  14:8 15:11,17
  16:19,21 31:10
  33:23 34:2 46:6
  50:11 53:24 63:25
  65:19
case  1:3,7,12 2:1
  2:10 3:2 13:7
  14:17,25 15:4,5
  16:7,20,20 18:10
  18:17,20,22,23,24
  19:6 20:6,14,15
  20:18,23 21:2,4,7
  21:11,15,24 22:11
  22:13 23:25 24:21

27:12 28:19,19
29:15,16 30:21,25
31:1 32:1,20
33:18 35:9 36:13
36:14,15,22 39:23
41:21 42:7,25
43:1,2,12 44:1
46:16,17 48:24
52:17,18,25,25
56:7 57:10,23
59:9,25 65:4,5
cases  13:4 15:1
  27:24 28:21 29:1
  29:3 30:2 33:4
  48:25 50:15
catalano  48:7
categories  47:7
category  46:9
  48:10
certain  8:20 11:9
  13:18 15:1 16:9
  16:10 26:1 30:24
  43:9,18 44:16,24
  45:2,9,10,11,19
  48:12,12 61:11
  65:23
certainly  24:19
  25:6,13 33:6
  43:20 46:15 49:13
  49:24 52:1 53:21
  54:9 57:10 62:11
  64:5
certified  67:3
certifying  64:23
chaitman  4:2 5:3
  5:8 7:10,10,11,12
  7:21,23 9:6,14,18
  9:20,25 10:14,17
  11:1,7,18 12:2,7
  13:6 14:7,10,16
  15:8,12,16,19
  16:9,14,17 17:1,3
  17:8,13,17,21,23

18:12,24 19:5,12
19:16,17,21,23
20:23 23:2,7,10
23:18 24:2,24
25:3,7 28:7,9
chaitman's  13:19
  18:20 19:25 23:4
  25:9 26:7
challenge  25:9
challenging  19:12
chambers  27:3
  35:5
chance  17:11
characterization
  62:15,16
characterized
  48:9
charge  55:1,15
chart  43:23 50:24
  56:21 62:8
check  56:21
checked  55:8
child  52:21 53:14
children  44:23
  48:18
circumstances
  15:11
citron  44:23 48:17
  49:5,9,20 50:5,12
  50:21 51:18 52:20
  54:2,4,18 57:3
  58:5,17,24 60:2
  60:14 62:18
claim  45:9 46:11
  47:18 56:6
claims  16:4 19:7
  43:9,19,20,21
  44:2,3,24 45:3
  48:12 49:11,12,16
  51:19,20 52:22
  53:22 59:5
clarified  37:2

clarify  23:1 29:18
classic  57:8
clawback  46:11
  51:15
clear  14:1 19:3
  22:8 25:25 26:2
  27:6 32:5 38:2,3
  39:25 48:15
clearly  40:14
client  13:7 23:6,7
  24:3,9
clients  10:19
  13:20 14:25 19:21
client's  33:14
close  41:5,6,6
colleague  18:8
  48:7
column  43:23
columns  9:17,18
  12:15
come  12:25 38:3
  39:8 41:8 47:12
  62:3,7 66:14
coming  36:3 41:3
comment  12:1
common  22:10
  27:24
communications
  18:11,15,19 19:13
  19:16,17,20,22,25
  20:1 21:2,25 22:1
  23:3,6,12,24 24:4
  24:4,9 25:6 62:19
  63:9 65:2,11
company  63:14
compared  66:6
compel  20:18 22:6
  23:20 25:25 26:16
  47:23 54:21
compels  17:19
complaint  10:4
  12:16

**completed** 37:6
**completely** 33:2
  34:12,19 37:16
**conceivable** 18:14
**concerned** 58:10
**concerning** 8:2
  25:8 26:9 63:12
**concerns** 26:7
**concluded** 66:18
**conduct** 46:19,25
**conducted** 28:22
**conducting** 29:24
**confer** 12:23 14:8
  15:10,14 16:20
  45:15,22
**conference** 4:1,4
  4:8,11 20:3 27:4
  27:10 38:12 40:8
  42:23 50:20 65:25
**conferred** 13:2
**conferring** 17:9
**confers** 44:10
  45:4
**confirm** 27:8 34:6
  54:6
**conflicts** 38:25
**connection** 21:16
  24:5 43:10 45:1,6
  46:17,22
**consensus** 46:6
**consent** 7:25 46:2
  46:4
**consider** 27:17
  61:12
**consistent** 65:18
**consistently** 10:6
**constitutes** 20:7
**consultant** 20:8
**contained** 24:9
**contest** 12:15
**continue** 42:8
  57:8

**control** 43:14
  44:20
**convertible** 33:12
  39:14
**copies** 21:7 22:16
**copy** 10:23 11:2
  13:15
**corporation** 1:14
**correct** 11:18
  31:23 40:6 47:25
  51:11 54:13 58:9
  63:7
**correctness** 11:15
**corresponding**
  56:22
**corroborated**
  38:1
**couldn't** 33:23
  34:24 42:4
**could've** 36:18
  41:11,22 49:16
**counsel** 14:23
  18:20 27:10 35:3
  35:7 45:5 47:1,8
**count** 44:25
**counterparty**
  34:5
**country** 67:21
**counts** 49:3
**couple** 41:24 45:1
  57:13
**course** 48:21
**court** 1:1 3:11 7:2
  7:5,9,11,18,22 9:2
  9:11,15,19,22
  10:11,15,22 11:4
  11:7,19,21 12:17
  13:2,16 14:7,11
  15:3,9,13,17,23
  16:10,15,18 17:2
  17:5,9,14,18,22
  18:1,4,9,21 19:1,9
  19:13,20,24 20:5

20:10,22,25 21:5
  21:8,13,21 22:3
  22:17,25 23:8,13
  23:16,19 24:3,16
  24:22 25:2,15,17
  25:20,24 26:4,10
  26:12,15,18,19
  27:19,22 28:1,4,5
  28:8,10,14,18
  29:2,9,14,22 30:9
  30:12,20 31:1,4
  31:12,16,21,24
  32:11,14,18,24
  33:4,8,14,17,23
  34:7,18,24 35:4
  35:15,22 36:1,13
  36:20,23 37:13,17
  37:21,25 38:6,12
  39:1,12,15,20
  40:3,12,16,21,24
  41:2,17,20 42:17
  42:21 46:7 47:13
  47:22 48:2,4 49:7
  49:18 50:9,17,24
  51:10,13,16,22
  52:1,7,11,24 53:6
  53:16 54:5,16,18
  55:13,14,19 56:4
  56:8,11,17,19
  57:13 58:1,4,10
  58:17,20,23 59:8
  59:16,19,22 60:9
  60:12,15,17,22
  61:4,15,20,25
  62:5,13,25 63:4,6
  63:10,12,17,25
  64:7,13,18,22
  65:3,9,14,18,21
  65:24 66:10,16
**cover** 13:8
**covered** 17:10
**credibility** 25:13
  25:15,17,22

**cross** 55:8,17,23
**crux** 22:20
**crystal** 14:1
**customers** 33:16
**customers'** 38:5
**customer's** 38:7
**cutoff** 40:17 42:3
  42:11
**cuts** 59:23 64:19

## d

**d** 5:15 7:1 43:20
**date** 18:19 31:8
  31:20,21 63:21
  65:23 67:25
**dates** 62:23
**dating** 64:1
**daughter's** 56:6
**david** 44:23 48:17
  49:6 50:4
**davis** 5:8 7:10
**day** 11:23 13:5
  39:5
**days** 20:20 26:24
  39:8
**deadline** 26:23
  27:12 35:25 36:2
  41:6
**deadlines** 27:12
  35:8 42:8
**deal** 15:3 17:15,15
  17:23 21:9 26:12
**dealing** 60:6
**dean** 5:15 7:7
**debtor** 1:10
**debunked** 33:2
**decades** 37:12
  49:4 50:16,16
  52:20,20
**december** 11:24
  13:12 14:1 27:4
  37:4 44:9 45:15
  45:16 55:10 57:20
  59:18

**decided**  20:16,17
**decision**  20:16
  22:8 29:19
**declaration**  21:3
  24:6,10 30:6
**defective**  27:6
**defend**  25:23
  45:13
**defendant**  6:9
  8:18 11:11,14,15
  20:18 22:10 52:16
  55:14,15
**defendants**  1:18
  2:8,17 3:8 8:1,14
  18:12 19:16,18
  21:19,24 22:6
  26:21 27:14 29:25
  30:5,8,24,24,25
  31:5,14,15 32:2,3
  44:22 48:5,7
**defendant's**  18:10
**defense**  16:23
  35:7
**defenses**  16:7
**defer**  13:18
**definition**  21:19
**definitional**  51:2
**definitions**  66:3,7
**deliberate**  22:11
**deliberately**  18:16
**demand**  23:11
**demands**  10:19
**denied**  41:1 43:8
**deposed**  14:19
**deposit**  14:20,21
**deposited**  8:17
  52:14 53:20,24
**deposition**  18:24
  20:12,21 21:17,18
  21:25 25:21 27:5
  29:11 30:1 35:2
  35:16 37:3 40:10
  40:13 41:5,10,11

**decided**  41:22,25 42:5,7,9
  42:13
**deposits**  7:25 8:15
  8:20 10:7 11:13
**detailed**  37:23,25
**didn't**  9:9 33:21
  35:16 36:1,1,17
  37:17 38:21 41:23
  45:21 47:10,13
  51:1,2 55:17
  56:12 59:20 63:20
  65:9 66:4,5,10
**died**  8:22
**difference**  30:5,7
  31:7 58:6,12,13
**different**  27:11
  30:5 31:8,19,20
  31:21 35:7 41:13
  62:15
**difficult**  27:13
  31:9 35:9
**directed**  43:16
  44:4
**directing**  43:18
  48:11
**directions**  55:2
**directly**  8:3
**directs**  12:22
**disagree**  12:20
**disclose**  8:24
  11:16
**discoverable**
  15:22 19:19,21
  24:20 25:7
**discovered**  35:1
  42:10
**discovery**  4:2,4,8
  4:11 7:6 8:13 9:1
  9:5,7,9,24,25 10:1
  10:4,7,16,23
  12:11,23 14:19
  23:20 25:25 27:11
  27:18,23 28:6

**35:20 37:6 38:8**
  40:9,12,13,15,16
  41:5,10 42:6,11
  42:12,24 43:13,18
  45:2 46:19,25
  48:12 54:21 59:23
  60:1
**discuss**  39:20
**discussed**  14:20
  14:22 20:19 22:2
  27:3
**discussing**  48:22
**discussion**  13:18
**discussions**  13:20
**dismiss**  43:7
**dismissed**  16:3
  43:9,19,20,21
  44:2,24 48:13
  49:11,16 51:19
  59:6
**disproportionate**
  64:24
**dispute**  8:9,17
  14:12 15:4 19:6
  22:22 29:15,17
  39:21 48:8 50:25
  52:8,9,12,14
  56:25 62:7,15,16
  66:1,12
**disputes**  8:10 32:2
**distinct**  48:25
  49:15
**distinguished**
  51:5
**district**  1:2
**dock**  63:3
**docket**  7:14 38:10
  38:11 40:9,10
**document**  23:11
  61:13,15 64:11
**documents**  14:21
  24:8,12,14,20
  26:5 28:22 29:3

**44:18 47:3,5,7,17**
  53:15 63:12 64:1
**doesn't**  11:11
  12:13 30:11 31:4
  38:20 39:22 40:5
  42:11,11 49:12,24
  49:25 53:18 54:15
  62:20 64:18 65:16
**don't**  7:5,12,18,21
  8:7 9:23 10:15,22
  12:11,15,20 13:14
  14:9,14 15:6,23
  15:25 16:4 17:5
  19:15 20:11 24:16
  26:5 28:11 30:13
  31:2,12 32:12,18
  36:6 37:11 39:22
  40:5 41:8 45:19
  47:17,20 50:17,19
  53:2,2 54:13 55:6
  55:19 56:19 61:16
  62:6,18 63:17
  65:22,24 66:13
**dozens**  48:20,20
**dubinsky**  27:1
  28:11,13,14,20
  29:5 32:19,21
  34:10 36:10 38:21
**due**  8:11 39:6
  44:2
**dunk**  53:25

---

e

---

**e**  3:23,23 5:1,1 7:1
  7:1 67:1
**earlier**  30:4 36:19
**early**  44:9
**edward**  5:19 6:2
  26:20
**effectively**  20:16
**effort**  22:12
**efforts**  18:24
**eight**  41:22

either  18:15 42:1
element  19:7
eliminate  30:17
eliminated  62:9
else's  33:18
employee  63:14
employees  23:13
encompasses
  58:14
engage  46:5
enormously  50:16
enter  7:24 44:5
entered  36:14
entire  13:5
entities  8:3
entitled  8:25 10:3
  12:5 16:13,24
  20:19,25 21:1
  25:22 57:5
equity  31:19
esq  3:4 5:8
essentially  11:17
establish  55:22
establishing  54:17
et  2:16 3:7 6:2
  26:20
event  15:4
everybody  17:11
  42:3
evidence  8:15
  25:12 32:17 66:1
evidentiary  53:17
  53:19
exactly  9:18
examine  54:2
example  8:21 49:9
  57:8 60:10 62:20
exchange  34:14
  34:22
exclusively  25:10
excuse  18:25
  31:15 44:3

exhibit  9:20 12:15
  43:22 50:20,22
  57:16 63:5
exist  34:3
expect  47:20
expert  27:2,6
  28:12 29:10 33:24
  34:7,25 35:3,5,6
  35:10 37:1,9
  38:19 39:10 42:14
experts  38:1
explain  61:21
explicitly  23:3
exposure  54:8
  59:9
extend  26:23 41:7
  42:12
extended  35:25
  40:13
extension  35:20
  38:11,13,17 39:4
  39:8 40:9,19,22
  40:24 41:14,21
extensions  41:16
extent  38:2 39:17
  40:1 59:12 62:8
  64:5

f

f  3:23 63:1,5 67:1
facilities  53:9
fact  8:9,10 13:3
  20:7,16 21:14
  35:20 37:25 40:9
  40:12,15 42:6,10
  49:10 52:22 63:22
  65:15
facts  7:15 20:17
  22:14,14
factual  8:17
fair  57:1
fairly  43:11 47:7
  47:11

faith  8:10 28:21
  29:1 48:25
fall  25:13
family  43:1,7,13
  43:25 44:5 45:21
  46:25 47:2,3 49:1
family's  42:24
  43:5 45:6
far  52:3 61:12
father  45:4 46:12
  49:10,13,23
father's  46:12
  54:2
february  3:15
  67:25
feel  44:14 47:17
feingold  39:13
fictitious  30:7
  31:13 59:1,11
  60:18
figures  9:24 11:15
file  41:18
filed  40:19 43:7
  46:24 63:8
find  22:13 34:4
  36:9 65:25
finder  37:25
fine  62:2,9 65:3
finish  42:13
first  9:3,18 12:2
  17:9 45:8 48:10
  49:2 50:19,25
  52:3 57:19,22
five  9:18 22:15
  38:22 41:11 66:13
fix  61:2
fixed  27:23 36:2
  39:22
flawed  34:12 37:8
  37:16
flip  57:6 59:2
flood  57:21

floor  6:10
focus  35:9
focusing  7:16
  32:23 57:4
followed  45:15
following  38:22
forced  11:16
  59:21
forcing  13:1
forego  8:11
foregoing  7:24
  67:3
formally  35:19
  36:10
former  46:25
forth  13:9 52:5
  59:15
forward  25:21
  43:4,18
found  31:6
founded  52:21
  53:13
four  14:19 26:21
frame  10:4
frankly  47:20
  58:15
fraud  19:6,6 25:8
  25:9 28:17,17,22
  30:3,4 31:18
  39:18 49:13 57:7
front  14:4
full  11:23
funds  8:4,5,17
further  16:1
  22:24 48:3
future  66:3

g

g  7:1
game  57:1
gauge  30:14
general  9:4 12:5,8
  16:4,20 48:25
  50:18 52:11

[generally - indiscernible]                                                                 Page 7

**generally**  52:12
**getting**  23:15
  27:12 29:14
**gift**  12:10,12,16
**give**  11:22 22:16
  39:7
**given**  11:12 27:11
  27:16 38:16 39:4
  54:11
**giving**  55:2
**go**  7:11 13:23
  14:13 15:1,2,17
  17:12 18:5 20:12
  23:9 25:12,21
  35:10 38:15,25
  42:21 46:15 49:7
  50:17 52:20 53:4
  53:10 55:20 56:11
  60:23 61:12 62:13
  64:17
**goes**  28:6 58:15
  61:7
**going**  8:11,12
  20:11 21:8 22:17
  23:9,17,19 25:24
  26:25 29:5,5 30:3
  31:2 32:19,23
  33:8,9,18 34:7,9
  36:17 37:16 39:2
  39:8 43:4,17
  49:20,23 54:19,25
  57:7 61:20,21
**golf**  62:23
**good**  8:10 18:2,6
  26:17,18 28:20,25
  42:18,22 48:25
  65:12
**goose**  65:13
**gotten**  33:24
  34:24
**government**  22:6
  22:11

**grant**  38:13 40:21
  40:24 41:3,21
  54:21
**granted**  38:13
**granting**  41:15
**green**  3:12
**greenblatt**  30:2
**ground**  13:8
  55:22
**guess**  9:12 10:11
  11:8 31:12 39:25
  40:3 49:7 59:11
  59:24 62:2
**guilty**  63:22
**gump**  47:1
**gupta**  20:15 21:2
  21:24 22:5
**guy**  55:4

**h**

**h**  2:3,12 3:4 5:20
**hadn't**  47:19
**half**  19:12
**hand**  16:6,22
  18:12 49:22
**handed**  22:7
**handled**  52:4
**happen**  33:22
**happened**  33:13
  33:25 34:1,6
  37:11,24
**happening**  25:22
**happens**  42:14
**happy**  11:4 22:24
**hard**  50:18
**hasn't**  40:11
**haven't**  17:6
  27:23
**hear**  7:3 10:24
  23:8 33:9 45:21
  48:4 59:20
**heard**  28:7 44:11
  45:23 46:3

**hearing**  4:1,4,8,11
  11:25 12:4 21:4
  30:1
**held**  38:3 51:6
**helen**  5:8 7:10
**helped**  37:5
**helpful**  62:8
**here's**  14:14
**he's**  16:24 24:17
  30:18 34:9 38:9
  39:10,11 51:22
  54:5,6 55:2,3,4,14
  55:14 57:4 61:6
**hickman**  20:11
**high**  43:11
**highest**  34:20
**highly**  27:6 44:18
**hillside**  39:13
**history**  46:23
**hold**  55:5
**holder**  10:21
  15:22
**hon**  3:24
**hone**  56:24
**honor**  7:4,8,12
  11:2 13:3 17:1,25
  18:2,6,14,18,23
  19:5 20:2,14
  22:15,19 23:1
  24:5,7,13,20 25:5
  25:20,20 26:6,13
  27:25 28:3,7,16
  28:17,21,24 29:1
  29:7,13,18 30:6
  30:16,22,23 31:3
  31:14,17 32:3,16
  32:21 34:2 35:1
  35:24 36:8,12
  38:23 39:10,17
  40:7,14,18,23,25
  41:13 42:16,18,22
  42:25 43:9 44:6
  46:22 48:1,19

  51:4 53:25 54:14
  55:17 58:2,14,16
  59:14 60:5 61:24
  62:2 63:1 64:4
  65:17,20 66:15,17
**honor's**  57:11
**hope**  46:18 65:18
**hoped**  27:9
**hopefully**  52:6
**hours**  14:19
**houston**  5:13
**hunt**  5:15 7:3,7,7
  11:2,6,20,22
  12:20 13:3,17
  17:25
**hunton**  6:1 26:20
**hyde**  4:25 67:3,8

**i**

**ia**  32:23
**identified**  45:5
**identify**  16:22
  43:23
**ignorance**  53:22
**impeachment**
  25:12
**important**  46:22
  48:24
**impossible**  33:1
  34:10,17
**impressions**  23:4
**imputation**  61:7
**impute**  49:20
**imputing**  48:17
**incline**  42:11
**inclined**  38:13,16
  41:3,20 42:8
**include**  64:9,10
  64:13
**including**  63:23
**indicted**  63:22
**indirectly**  8:3
**indiscernible**  13:7
  13:11 19:4 50:12

55:6,13 56:4
57:14,15 58:3
59:6,21 61:9,14
63:4
**individual**  26:21
**individually**  2:16
**industry**  34:14
**inform**  24:2
**information**  10:13
10:19 11:12,16
15:20 16:5,13,21
16:25 17:4 22:7
22:12 45:11 46:12
46:18 53:1 54:4
**inherited**  8:21
**initial**  14:3 23:21
48:10
**injustice**  38:15
39:3
**ins**  32:8
**instance**  11:10
51:12
**intended**  7:13 8:8
10:10
**inter**  11:10 32:4
32:14
**interest**  22:10,10
**interested**  26:9
34:1 54:6
**internal**  13:20
**interrogatories**
8:2 10:18 13:9,19
15:10,14 66:2
**interrogatory**
10:18
**interviews**  26:9
**investing**  57:8
**investment**  1:7,17
2:4,13
**investor**  1:14
**invitation**  64:14
**invited**  45:14

**involved**  13:4
46:15 47:1 54:12
59:25 61:22
**involving**  19:2
**irrelevant**  45:12
49:21 51:17
**irving**  2:3,12 3:4
**isn't**  17:14 29:17
52:2 54:19,25
57:22
**issue**  16:3,8,12
21:10,14 22:20
27:18,20,24 28:6
29:19 33:4 36:12
36:13 39:25 41:3
42:14 43:14 44:10
46:5,8 49:2,16
50:2 59:12 65:4,5
**issued**  11:23
43:13
**issues**  12:24 13:12
13:24 32:17 40:4
40:9 44:1,21 45:6
46:1 48:8 62:8
**issue's**  36:15
**items**  12:12
**it'll**  61:16
**it's**  8:6 9:7,22
12:5,9,9 14:1
16:15 17:18 22:5
22:22 23:21 25:22
26:1 27:2,17
28:25 30:11 31:9
33:2 35:23 37:10
37:12 40:16,24
46:22 47:18,19
48:15,21,24 50:5
50:11,12,18 51:7
51:25 52:1,7,22
52:22 53:1,2,14
53:21,24 54:9,10
54:11,12,13,14,23
54:24 56:12,18

57:4,5,5,9,9,16
58:2,14,21 60:10
61:21,22 63:2,16
64:6,23 65:3
66:10,12
**i'd**  24:2 54:21
62:9
**i'll**  13:25 15:3
17:15 18:1 23:25
30:22 32:5 41:7
65:1,6,18
**i'm**  7:16,21 8:6
11:4 14:2,7 15:5
18:5,7 21:8 22:17
23:9 24:12 25:16
26:13,25 28:5
29:14 30:13 32:5
32:13 33:8,9,17
33:18 38:13,16
39:25 40:1,5,6,7
40:25 41:2,20
42:7 52:7 54:23
54:24 56:7,8 57:6
57:7 60:20 61:5
61:20 63:7,8 64:7
**i've**  13:14 39:4,16
55:8,8

j

**j**  5:19
**jacobs**  5:18,19
18:3,8 23:1 24:19
24:23 25:5,16,19
26:3,6,11,13
**james**  5:22 42:18
**january**  11:25
12:4 30:21 31:25
45:25 55:9
**joint**  2:16 27:10
35:3
**jr**  2:16 6:2 26:20
**judge**  3:25 7:13
8:7 10:10 11:22
12:22 13:17,23

14:5,13,18,22
15:1,2,18 17:11
17:12,14 20:16
21:9 22:7 23:10
23:25 46:3
**july**  35:17
**juncture**  25:10
**june**  35:16

k

**keith**  5:21
**key**  61:7
**kind**  8:6 16:15
50:13 59:21
**knew**  41:1 49:12
49:13,23 50:6
52:15 53:1 66:5
**know**  7:13 8:7
9:11 10:3 11:11
13:24 14:3,4 16:2
17:5 19:15 20:10
20:10 23:25 24:16
24:16 26:5 27:11
27:17 28:11 30:23
31:2 32:12,17
33:25 36:2,6,12
36:17,25 37:5,11
37:24 38:8 39:7
40:5 41:11 44:6
45:16 46:3,22
47:22 48:18 49:24
49:25 51:1 53:1,2
53:3,9,12,13,16
54:9,20,24 55:6
56:17,23 57:5,7,8
57:18 59:8,24
61:5,16,21 62:6,7
62:9,18,21 64:10
64:14,19,23 65:2
65:4,6 66:4,5
**knowledge**  8:22
37:7 43:4,12,14
44:20 48:17 49:4
49:20,21 52:23

54:2 56:24 57:1,2
57:4 61:6 66:14
**known**  49:10
62:21
**koningsberg**
62:19,22 63:13,14
63:21 65:12

**l**

**l**  1:17 2:3,12 4:5,9
4:12
**l.l.c.**  1:17
**language**  7:13
52:9
**large**  30:18
**largely**  43:8
**late**  37:3 65:8
**latest**  44:12
**launch**  45:8
**law**  8:8,12 18:17
20:6,15 24:21
**lawrence**  5:4
**lax**  6:8 44:11 47:1
47:4 48:6
**lead**  42:11
**leading**  20:21
21:17
**leads**  59:23
**learned**  41:9
**learning**  32:17
**ledanski**  4:25 67:3
67:8
**left**  9:20 44:9 59:9
59:17
**legal**  22:10 67:20
**length**  14:20
**lengthy**  36:9
**leslie**  44:23 46:10
49:9,20 50:5,21
51:25 52:20 53:12
54:18 57:6 58:5
58:17,24 60:1,2
60:13 62:18

**letter**  4:1 7:19
9:13 14:23 23:23
35:21 40:4 43:22
45:16,24,25 62:13
65:7
**letters**  14:17
**let's**  20:3 26:12
56:11 57:18
**liability**  26:22
32:9 52:13 54:8
57:9,25 59:13,14
**liable**  51:24 55:5
61:9
**limit**  65:1
**limited**  26:1 59:9
65:3,3
**liquidation**  2:3,12
**lisa**  48:7
**listed**  12:12
**literally**  64:8,10
**litigation**  22:4
**little**  11:23 23:22
35:11 49:15
**live**  44:20
**llc**  2:4,13
**lloyd**  21:16
**llp**  4:2 5:3 6:1,8
26:20
**local**  4:5,9,12
**long**  36:11 42:9
52:11
**longer**  52:17 56:6
57:23
**look**  12:5 13:6,12
16:6 23:19 37:8
41:20 49:19 53:6
57:19 65:7,9
**looked**  9:11,15
28:22 29:2 33:1
34:13
**looking**  9:16
23:22,24 24:17
26:1 47:5,21 53:4

57:14 60:4 61:22
63:8 65:15
**lot**  13:8 28:1
36:19 38:4,20
59:23

**m**

**m**  3:24
**madoff**  1:17 2:4
2:13 7:2 8:17
18:13 19:18,23,23
20:4,7,8,23 22:24
23:4,12 24:4 25:7
27:5,5 29:20 33:3
33:20 35:2 37:3
37:11,17 38:2
40:1 41:15 42:13
49:13 62:20 63:17
**madoff's**  23:13
24:6,10 25:8,10
25:13,15,17 29:11
29:25 34:3 35:16
40:10 41:4,9,22
57:7
**magistrate**  7:13
8:7 10:9 14:22
**main**  5:12
**making**  35:8
**management**
36:14
**manifest**  38:15
39:3
**manipulating**
63:23
**manipulation**
55:3
**manner**  41:22
**march**  57:20
**marginal**  47:11
**marginally**  54:11
**math**  58:15
**mathematical**
54:8

**matter**  1:5 7:3 9:4
13:3 16:4,21
18:18 31:4,25
38:17 40:5 46:2
49:12
**matters**  12:21
17:10 31:8 39:23
**max**  18:2,7
**maximilliam**  5:17
**mean**  19:9 35:5
36:14 47:22 53:7
55:17
**means**  12:15
59:24
**meant**  51:2
**meet**  12:23 14:8
15:10,13 16:19
44:10 45:4,15,22
**meeting**  17:9
35:23
**meetings**  21:18,21
**mental**  23:4
**mentioned**  35:12
**met**  13:2
**methodology**  34:9
34:12 36:5
**mid**  44:9
**middle**  63:21
**miller**  6:13 44:11
47:4 48:6,6 49:15
50:1,10,22 51:18
51:25 52:3,9,18
53:4,7 54:1,13,17
55:7,22 56:15,20
57:11 59:2 60:4
60:10,13,16,20,24
61:2,11,19,24
64:8,15,21 66:17
**million**  57:21
**mine**  33:15
**mineola**  67:23
**minimal**  54:23,24

**minimum** 28:21
**minute** 19:20 41:4
  41:24
**mirror** 22:14
**mirrors** 20:17
**misreading** 12:7
**mitzvah** 64:13
**mixing** 9:2
**modify** 38:14 39:2
**moment** 32:6
**money** 10:20
  27:15 35:11 36:11
  52:14,14 53:19
  54:6,7 58:7
**months** 42:10
**moss** 7:13 8:8
  11:22 12:22 13:17
  13:23 14:5,13,18
  15:1,2,18 17:12
  17:15 46:3
**moss'** 14:22 17:11
**motion** 23:17,20
  25:24 26:16 38:14
  39:1,2,16 41:2
  43:7,8,10 47:23
  54:20 61:18
**moved** 22:6 53:8
**movies** 64:11
**moving** 20:18
**multiple** 53:8 60:5
**murphy** 5:21
  27:22,25 28:3,12
  28:16,20,25 29:7
  29:12,18,23 30:10
  30:22 31:2,5,14
  31:17,23 32:3,12
  40:23 42:16

**n**

**n** 5:1 7:1 67:1
**name** 39:12
**narrow** 46:1
  66:11

**necessarily** 54:14
**need** 7:19 8:1 11:5
  13:23 14:2,3 36:3
  36:3,4,7 38:19,24
  41:18 58:3 59:12
  62:6 65:25 66:13
  66:14
**needed** 35:11
  36:10,10 55:24,25
**negotiating** 17:6
**net** 26:21 31:19
**netting** 32:7
**never** 12:3 52:25
**neville** 6:8 47:1
  48:6
**new** 1:2 3:13 5:6
  6:4,11 24:18 31:5
  34:13,22 53:8
**night** 45:23 65:8
**non** 8:6
**note** 18:1,4 48:24
  65:1
**notes** 20:12 23:5
  23:12,24
**noticed** 57:14
  62:16
**notified** 36:14
**notwithstanding**
  21:5,6 43:24
**november** 27:3
  36:18,24 38:18
**number** 7:14 13:8
  38:11 40:10 44:3
  44:17 51:17 56:2
  57:19 60:11 63:2
  63:9,10 65:10
**ny** 3:13 5:6 6:4,11
  67:23

**o**

**o** 3:23 7:1 67:1
**object** 45:17,18
  45:19 47:10,13
  65:19

**objected** 35:21
  38:9 40:15 50:13
  61:11
**objection** 41:25
  45:9
**objections** 18:11
  43:25 45:6
**obtain** 22:15
**obviously** 43:11
  43:16 44:15 56:20
  57:6
**occurred** 18:5
**october** 60:16
**offer** 60:22
**office** 21:24 22:1
**oh** 7:21 36:20
  60:17
**okay** 7:9,23 9:11
  10:14,17,17 11:1
  11:6,19 14:10,16
  15:16 16:14,17
  17:8,13,17,21
  18:1,5 22:19
  23:10 24:2 25:2
  26:3,15 28:9 29:9
  30:9,12 33:19
  36:20,23 41:7
  46:7 51:16 57:16
  58:1,4,4 59:19
  60:22 61:10 66:7
  66:10,15,16
**old** 67:21
**omnibus** 29:17
  35:12 39:18
**once** 37:6,25 38:5
  55:21
**one's** 26:10
**operation** 23:13
**opine** 38:19,20
**opining** 28:14
**opportunity** 12:1
**order** 4:2 7:6,14
  7:17,18,20 8:19

9:8,12,16 10:4,9
  11:3,23,24 12:1,4
  12:5,8,9 13:4,6,22
  14:14 15:5 17:11
  17:19,20 30:14
  36:14 38:15 54:21
**outs** 32:8
**outside** 46:15,19
**overbroad** 50:16
**o'clock** 45:24

**p**

**p** 4:5 5:1,1 7:1
**page** 13:16 63:2,6
  63:7
**pages** 37:1 47:2
**pagination** 63:8
**paid** 58:11
**painfully** 10:3
**papers** 24:25
**paragraph** 7:17
  9:12 12:3,6,11,12
  12:18,22,22 13:21
  13:23
**parents** 8:22
**park** 5:5 6:3
**part** 18:24 27:17
  29:16 45:19,20
  57:23 59:15 61:3
**participant** 35:17
**participants**
  35:23
**participate** 42:4
**particular** 11:11
  15:4 24:19 25:6
  29:10,16 31:10
  32:1,20 44:1
  52:16
**particularly**
  20:15 44:22 50:14
  53:22 55:8 61:9
  61:13
**parties** 7:24 12:1
  41:18 44:7 46:15

46:24 48:12 52:5
**party** 20:20 21:17
  22:3,9 46:16,19
  52:25
**pattern** 20:17
**paul** 63:13 65:11
**pay** 16:12 51:20
**payments** 17:4
**penalty** 7:14
**pending** 13:19
  40:8 45:3
**people** 7:15 8:19
  9:4,9 10:20 38:25
  41:4,10,24 42:12
  66:13
**percent** 34:23
**perform** 53:11
**period** 30:19 57:9
  58:15 59:3,5 61:8
**person** 8:10 11:11
  20:12 36:9 53:22
  55:4,24 56:23,23
  66:13
**personal** 8:22
  51:13,14 64:5
**persons** 8:3
**person's** 33:10
**pervades** 27:24
  28:1
**phrase** 51:1
**phrased** 52:19
**picard** 2:3,12 3:4
  42:20
**picower** 19:3
**pin** 31:9
**place** 21:17 28:17
**placed** 19:6
**places** 7:14
**plaintiff** 1:15 2:5
  2:14 3:5 20:20
  21:15 42:20
**pleadings** 13:14

**please** 26:19
**pled** 63:22
**plus** 38:1
**pm** 3:16 66:19
**point** 12:2 14:9
  17:6 23:1 38:9
  41:16 57:12 58:2
**ponzi** 19:9 27:19
  28:15 29:6,15,20
  29:24 30:21 31:22
  31:25 37:22 49:4
  50:7,8
**portfolio** 51:1,6,8
  51:23 53:20 55:11
  56:14 66:4,6
**portion** 45:18,18
**portions** 29:8
**position** 9:8 10:2
  10:24 14:4 45:16
  61:1
**possible** 27:16
**post** 32:14,17 33:2
  38:5
**pre** 18:19 32:4
  33:2 38:14 39:2
**preliminary**
  18:18
**preparation** 21:3
**prepare** 41:21
**prepared** 16:11
  30:20 58:24
**preparing** 20:23
**present** 28:4
**press** 55:25
**presumably** 18:19
  56:23
**presumed** 21:12
**pretty** 33:12
  63:15
**prevent** 38:15
**price** 34:11
**primarily** 50:2

**prior** 8:2 32:5
  47:8
**probably** 11:5
  33:15 54:19,21
**probative** 53:21
  54:15,23,24 64:6
**problem** 50:14
  52:19 53:9 61:3
  64:9
**proceeding** 1:8
  19:2 29:10 35:13
  35:22 39:18,19
**proceedings** 7:23
  19:7 66:18 67:4
**proceeds** 16:8
**process** 8:12
  48:21
**produce** 14:9,15
  23:12 27:9
**produced** 8:14
  30:1 47:2,7
**product** 18:11,15
  18:16 19:25 20:4
  21:5,6,9,12 22:21
  22:22 23:14,21
  24:12 26:8
**production** 47:11
  47:16 50:2,15
  66:4
**profits** 30:8 59:1
  59:11 60:18
**promise** 65:19
**prompted** 25:3
**proof** 43:16
**proportionality**
  47:9,21 64:22
**proposition** 52:11
**protection** 1:14
**protective** 54:21
**prove** 32:19
**provide** 9:24 24:1
  24:14 45:14

**provided** 9:25
  10:1,6 16:22
  43:22
**providing** 17:3
  25:1
**proving** 43:12
**provisions** 29:12
**punish** 8:8,10
**punished** 9:5
**punishment** 12:9
**purposes** 16:9,10
  20:2 21:11 31:11
**pursuant** 4:4,8,11
  24:20
**pushes** 44:6
**put** 33:8 39:1
  43:24
**putting** 19:25
**pw** 21:4

**q**

**question** 29:4,4
  52:4,6,16 57:22
  58:5,18,23 60:18
  60:20,25 62:3
**questioned** 53:17
**questioning** 10:8
  12:3 25:18,19
**questions** 48:16
  60:6
**quickly** 55:21
  60:4
**quite** 47:20
**quoted** 7:19 9:14

**r**

**r** 3:23 5:1,21 6:13
  7:1 67:1
**raced** 37:9
**racing** 27:8
**raise** 16:8 39:21
**raised** 14:13
**rakoff** 20:16 21:9
  22:7

rakoff's 23:25
ran 37:22
reach 44:7,15
  46:6 49:3 50:16
reaches 50:1
reaction 23:21
read 15:23,24
  21:8 23:25 37:21
  49:18 53:17 64:8
  64:10
reading 9:23 37:5
  66:3
reads 7:17
real 33:24
realized 62:14
really 12:10 17:18
  29:4 34:5 36:4
  37:12 47:17,19,24
  55:15,24
reason 16:19
  55:25
reasons 36:5
  38:22 39:16
rebuttal 26:24
  27:9,15 28:12
  35:8 39:6 42:14
recall 10:22 23:10
  24:5,16 29:24
  41:6 42:25
receipt 43:16 44:4
  44:8,13
received 8:3 10:20
  12:14 14:23 37:2
  58:5,6 59:12
recognize 15:11
recollection 41:14
  58:22
record 14:2 34:16
  55:3 67:4
records 8:16
  33:20 34:3 53:3
  64:1,1,2

reduce 13:8 60:1
reference 55:17
  55:23
referenced 55:8
referred 9:16
  17:14
refined 23:22
refused 22:6
regarding 4:1
  11:13 13:24 29:19
  42:23 55:2
regardless 57:1
regards 44:12
reiterate 26:7
rejected 48:19
rela 40:15
relate 12:18 19:14
  21:2 28:18 40:10
  44:18 49:22 62:20
  63:17,23
related 35:17
relates 18:10
  28:20 44:7,13
  45:3 46:9 56:25
  57:2
relating 14:21
  16:25 19:18 46:12
  53:15 61:5,6
  62:19 64:1,11
relationship 64:5
  64:12
relationships
  63:13
relative 28:25
relevance 28:19
  44:1
relevant 16:11,23
  16:24 20:6 25:7
  29:3 30:11,13,14
  44:15,16,18 45:11
  46:17 52:1,15
  53:1 54:9,11,11
  54:14 56:6 57:9

57:10 58:22 61:7
  64:6,19
relying 25:10
remaining 12:23
  13:12
remains 44:17
  60:22
remember 41:3
  42:3
repeating 61:5
report 26:24 27:1
  27:2,6,9,12,16
  28:11,12,18,19
  29:5 30:1,13
  32:19,21 34:7
  35:8,25 36:10
  37:8 39:6,6,19
reported 36:6
reporting 34:22
reports 29:10
  34:14 37:2
representing 47:2
reproduce 47:5
request 10:12,23
  24:13,21 26:23
  38:10 40:9,19
  42:5 44:12 45:10
  45:13,17 48:10
  50:2,3,13,14 55:9
  57:2 63:2 64:19
  65:10
requested 35:19
  38:8 39:5 41:14
requesting 40:25
requests 15:14
  18:19 41:19 42:25
  43:24 44:4,14,16
  44:17,18 45:7,10
  48:14,20 49:8,19
  50:9,10,15,17,20
  50:20 51:3 52:19
  53:10 61:12,15
  64:2,9 65:7

require 8:19
required 34:21
  61:13
requires 22:25
  52:19
resisted 25:21
resolution 13:19
resolved 55:21
  62:5
respect 17:10
  26:25 28:13 31:6
  39:18 52:13 58:23
respectfully 20:14
respond 12:11
  13:9 30:15 45:17
  45:20 46:3
responded 40:20
responding 45:24
response 23:8
  24:1 54:9 57:15
  57:19
responses 42:24
  56:2 57:17 66:2
responsive 24:13
rest 7:19
results 22:15
retain 27:15 35:10
  36:11
retained 35:7
  39:11
retention 18:20
review 12:1 17:11
  36:10
reviewing 37:1
rich 6:6 26:17,19
  26:19 27:21 28:24
  30:16 32:16,21,25
  33:6,11,15,19
  34:2,9,19 35:1,6
  35:19,24 36:8,17
  36:21,25 37:15,19
  37:23 38:8,23
  39:10,13,17,25

[rich - sort]                                                                    Page 13

40:7,14,18,25
41:13,18
**right**   7:22 8:11
    9:19 10:9 11:20
    15:3,8,12 17:2,18
    17:22,23 18:4
    19:11 20:5,24
    21:13 23:18 24:22
    25:2 26:11,15
    29:10,22 32:24
    34:18 36:9,23
    38:12,21 39:15
    40:17 41:5,17,20
    42:15 44:25 46:19
    47:15 48:2 49:9
    51:16 56:4 58:8
    59:16 60:22 61:4
    61:25 65:16,19,24
    66:11
**road**   67:21
**robert**   6:6,13
    26:19 48:6
**rollinson**   5:22
    42:18,19,22 46:8
    47:15,25 48:3,11
    50:23 51:4,11,14
    53:21 54:1 55:16
    56:1,5,10,16,18
    57:24 58:2,9,13
    58:19,21 59:14,17
    59:20 62:2,11,24
    63:1,5,7,11,16,19
    64:4,16,25 65:6
    65:10,17,20,22
    66:8,15
**rollover**   42:8
**roman**   2:7 18:22
    18:23
**romans**   17:24
    19:2,23
**roman's**   20:1
**rule**   4:5,9,12
    19:19 22:17 23:9

42:23 45:20 46:16
    46:20,25
**ruled**   23:13
**rules**   55:22 64:22
**ruling**   14:22
    15:23 54:23
**rulings**   12:5,8
**run**   42:1,2,4

**s**

**s**   5:1,17 7:1
**sat**   55:20
**satisfies**   24:17
**saw**   64:11
**saying**   8:10 9:22
    11:17 12:17 14:23
    20:25 28:5 34:13
    36:3 43:17 46:4
    54:10 56:8
**says**   12:9,22 13:1
    14:1 15:6 49:25
    56:5 65:10
**scenario**   18:14
**schedule**   27:18,23
    29:9 39:3
**scheduling**   62:23
**scheme**   19:10
    27:20 28:15 29:6
    29:15,20,24 30:21
    31:22,25 37:22
    49:5 50:7,8 63:21
**scrape**   35:11
**scraped**   27:14
**sealed**   24:15
**search**   53:11
**searching**   35:2
**sec**   20:15 21:15,23
    22:2,3,5
**second**   50:1
**section**   30:18 51:2
**securities**   1:7,14
    1:17 2:4,13 37:11
    38:2,4 43:5

**security**   38:24
**see**   10:24 11:3,4
    12:25 13:6 30:3
    46:2 66:11
**seek**   18:19
**seeking**   4:2 15:20
    19:14 23:2,4,6
    24:10 31:18 45:11
**sees**   37:25
**selective**   22:12
**selectively**   18:17
**send**   66:7
**sending**   66:2
**sent**   20:4
**sentence**   19:3
**separate**   35:22
    41:19
**sequitur**   8:6
**serve**   26:24
**served**   10:18
    23:11 27:2 36:18
    36:18 50:4,5
**set**   10:18 21:17
    29:10
**sh171**   51:12
**sh30**   51:8
**shapiro**   3:7 6:9
    42:17,24 43:1,3,4
    43:4,7,13,25 44:5
    44:23 45:6,21
    46:10,25 47:3
    48:17,25 49:3,5,5
    49:6 50:4,5,6 51:6
    51:23,25 53:13,18
    54:20,25 55:1,9
    55:11 56:13 59:24
    60:1,14 62:17,21
    63:24 65:11
**shapiros**   48:4
**shapiro's**   43:14
    44:19 48:18 49:1
    52:13,23 56:2
    57:1,15,17 61:6

**shared**   20:7 22:23
    23:3,5
**she's**   12:17 51:15
    51:20 52:24 53:7
    53:14 59:8,22
**shifrin**   5:17 18:2
    18:3,6,7,23 19:5
    19:11,15,22 20:2
    20:6,14,24 21:1,6
    21:11,14,23 22:5
    22:19
**shock**   47:12,16
**shouldn't**   28:1
    54:12
**should've**   23:16
**show**   33:20 37:16
    55:23 56:20,21
    60:24 61:17 66:12
**showing**   39:3
    47:24
**side**   45:5
**simply**   12:7 50:5
**single**   14:5
**situations**   11:9
**six**   41:12 42:10
**slam**   53:25
**slightly**   41:13
**slim**   47:16
**small**   26:4
**smb**   1:3,12 2:1,10
    3:2 4:1,4,8,11
**social**   63:13 64:12
**solely**   40:13
**solutions**   67:20
**somebody**   33:18
    58:11,11 60:24,25
**song**   5:16 7:7
**sonya**   4:25 67:3,8
**soon**   27:16
**sorry**   18:5 25:16
    63:8
**sort**   15:24 45:9
    48:22

sought  47:8
sound  38:20 39:23
sounded  23:23
  40:3
sounds  11:4 23:16
  54:10 63:14
southern  1:2
speaks  23:2
spearheaded
  18:25
spearheading
  18:25
specific  7:15
  15:10,14 38:23
  45:12,13,13 66:1
specifically  12:14
  43:3 44:4,19
spectrum  65:1
spent  13:5
split  51:5,11
  58:25 59:10 60:6
  66:6
splits  66:5
spoke  20:13,23
stack  66:8
stakes  27:16
standard  47:10
stanley  43:3 48:17
  48:24 49:1 50:6,6
  51:23 52:12,23
  54:20,25 55:1,9
  55:11 57:1,5,6,15
  57:16,17 59:24
  61:6 62:17,21
  65:11
stanley's  57:4
start  7:5 29:20
  31:21 43:17 47:21
  50:19
started  30:4,4
  31:11,18 39:19
  48:22

starting  9:20
stated  39:16
states  1:1 32:22
stipulate  7:15 8:9
  8:20,23 9:4 11:8
  11:14 12:10,13,21
  12:24 13:7,10,21
  14:8 15:6,7,11,25
  16:19 30:17,20
  31:24 32:7,7,8
stipulation  7:24
  9:15 11:10 44:12
  44:15 52:10 59:15
stipulations  44:6
  44:7 52:5
stock  34:14,22
stopped  66:9
storage  53:8
strategic  54:3
street  5:12
strike  51:5,12
  57:22 58:25 59:11
  60:6 66:6
stuart  3:24
stubs  64:11,17
stuff  14:15 49:18
  62:19
subject  11:13
  42:14 44:25 46:10
  51:15 56:6 57:24
  65:12
subjects  48:15,21
  65:2
submit  27:15
  30:10 35:8,12,25
  37:24 39:19,24
submitted  14:17
  21:3 24:7 45:24
submitting  24:25
subpoenaed  8:16
subsequent  8:13
  8:24 9:10 10:1,4
  10:12,20 11:16

12:19 13:25 14:12
  14:24 15:21 16:2
  16:4,5,11,21,22
  16:24,25 21:19
  43:21 48:16
substantiv  3:4
suggest  16:18
  31:10,17 33:21
suggested  64:21
suggestion  56:17
suite  5:12 67:22
supplement  8:1
supposed  12:23
  14:13 15:9,13
  17:6 37:6
sure  8:6 32:13
  40:7 51:4 56:10
  56:15 60:20 62:11
  64:7
surface  38:17

t

t  67:1,1
tab  50:19 62:25
  63:1
table  15:25
take  8:12,25 10:3
  20:12 21:17 31:7
  41:4,25 42:7
  57:18
taken  10:2 14:4
  41:11,22 42:9
talk  16:1 28:16
  50:18
talked  11:9 14:5
  35:15
talking  15:5 16:16
  26:4 28:5,10
  33:17 35:16 40:1
  48:14,15 54:3
  59:5 63:10
talks  28:21 63:9
target  55:15

targeted  43:13
  44:19
tax  17:4
taxes  16:12 63:18
  64:2
taylor  20:11
ted  5:18 18:3,8
tell  11:21 13:25
  30:22 37:24 41:8
  60:24 62:5 64:16
telling  11:7 35:24
  38:19
temper  65:14
tenant  2:16
termination  42:6
terms  50:18 53:12
  65:2
testified  38:3
testifying  32:25
testimony  25:8,11
  25:23 37:23 38:1
thank  7:12 11:5
  17:25 26:14,16
  42:16 51:16 66:2
  66:15,16,17
that's  10:9 11:20
  11:21 12:12,16,25
  14:3,4 19:2,11,11
  20:24 22:20,25
  25:3,5 27:23 28:3
  29:3,16 30:17
  33:10 35:17,22
  36:21 38:10 40:4
  40:6,6 46:21
  47:15,25,25 49:1
  49:15 51:10,11,13
  51:14 54:13 57:8
  57:23 58:4,9
  59:12 62:2,9,14
  64:5,11,24
theory  48:18 55:1
there's  8:8,16
  12:8 13:1 14:11

**[there's - waived]**

15:4 17:19 21:9
29:9,15 34:5
38:20 39:21 47:20
49:17 50:25 52:9
53:9 55:25 57:18
60:5,10
**they'll** 37:14
**they're** 15:20
23:17 25:7,12,14
31:2 32:23 48:15
49:19 60:18
**they've** 35:21
38:9 47:6 48:22
**thing** 9:3 13:25
16:15 46:21 53:16
**things** 9:3 12:10
23:24 26:1 34:4
37:15 63:18 64:2
**think** 7:21 9:2
12:4,7,17,20
14:14 19:17 21:1
22:14 25:3 27:17
27:21 29:7 31:7
32:5 36:15 37:13
39:7,22 41:8 42:6
42:13 44:24 46:22
48:7 49:1,15,17
50:1,19 51:17,17
51:18 52:3,4,18
54:1,3 55:7 57:11
57:15 59:4 60:5
61:2,11 63:16
64:4,8 65:22
**third** 20:20 21:16
22:9 46:16
**thought** 9:3 20:22
23:23 35:4 37:6
37:21 40:12
**thousands** 37:1
64:17,17
**three** 13:4
**ticket** 64:10,17

**time** 14:5 24:7
27:5,7,10 29:24
30:3 35:12 36:3,4
36:7 37:10 39:9
39:22 41:14 42:1
42:4,9 45:23 62:6
65:12
**timely** 40:19
41:22
**times** 16:3 53:8
**today** 22:18 23:9
30:7 42:23 51:21
55:21
**told** 13:17 14:7
15:6 24:3 31:4
35:4 36:6 40:5,6
47:4 52:7
**torello** 5:20 42:19
**total** 55:10 57:21
**trade** 33:10,20
34:6,17
**traded** 33:20
34:15,20 43:5
**traders** 27:8
38:24
**trades** 32:22,22
33:1,5,6,11,12,13
33:24 34:3,11
36:6 39:14 40:2
63:22,23
**trading** 34:16
55:3 64:1,2
**transcribed** 4:25
**transcript** 13:13
14:1 27:5 37:3,19
67:4
**transfer** 10:12
11:16 15:21 16:3
16:4,5,21 43:21
**transferee** 10:5
**transferees** 8:13
8:25 9:10 10:2,20
14:24 15:21 31:16

**transfers** 7:16
11:10 12:19 13:25
14:3,12 16:12,23
16:24,25 32:4,15
43:17 44:5,8,13
44:25 48:16 49:21
**treasury** 38:4
**trial** 38:15 39:3
**tried** 35:3,20
38:25 43:22 44:5
46:5
**true** 25:5 42:6
67:4
**trust** 51:7,10,25
52:20 53:13
**trustee** 2:3,12 3:4
5:11 7:8 8:12,16
9:7,8,16 10:3,11
10:24 14:16,17,18
14:19 15:19 16:13
18:7 23:11 24:8
24:17 25:1 27:2
31:20 39:21 40:14
40:20 43:2,11
46:9 48:11
**trustees** 51:7 55:6
**trustee's** 8:2,25
10:8,12,24 11:15
14:23 18:9 32:7
42:24,25 50:15
51:20
**try** 33:18 34:4
46:1
**trying** 36:25
49:20 55:5
**two** 9:2 16:16
44:23,25 45:5
46:11 48:8 49:11
49:21 51:15,19,20
57:25 58:14 59:1
59:3,5,10 60:7
**tx** 5:13

**typical** 43:1

**u**

**u.s.** 3:11,25
**ultimately** 13:10
48:1 61:17
**unable** 12:21
13:10
**understand** 15:16
15:19 31:12 32:1
32:18 33:19 34:20
38:24 57:11 61:16
61:19,24 64:25
**understanding**
56:25
**understood** 9:22
**unduly** 47:19
**unfathomable**
37:12
**uniform** 27:17
**united** 1:1
**universe** 26:5
**use** 8:4 16:8 31:20
35:20

**v**

**v** 1:16 2:6,15 3:2
20:11,15 22:5
**vaguely** 48:22
**value** 53:17,19
54:15,23,24
**variations** 56:9
**various** 23:12
43:23 60:17
**verify** 28:23
**veritext** 67:20
**view** 31:8
**virtue** 22:23
**volume** 34:12,20
**voluntary** 22:11

**w**

**wait** 19:20
**waived** 18:17
21:14 22:23

**waiver**  20:8 22:8
22:13,20
**want**  15:6 17:15
17:23 36:21 38:14
39:23 40:21 41:10
41:25 43:17 56:22
60:23,24 61:25
62:7,7 65:21
**wanted**  40:7 41:4
**wants**  54:5 56:24
**wasn't**  19:3 35:13
36:11 41:6
**way**  13:22 23:14
33:9 34:5 48:8
56:19 59:25
**ways**  64:20
**weeks**  20:20
**weigh**  46:18
**went**  38:24 41:19
52:1 54:6 56:14
**we'll**  12:25 13:23
49:7 65:20,23
**we're**  8:12 10:8
13:6,22 15:5 21:1
22:24 23:2,4,5
25:19,22 26:9,23
28:10 33:25 37:16
42:13 43:18 45:11
47:4,5 48:14 54:3
59:5 62:11 64:25
**we've**  9:25 10:2,6
11:9 14:5 16:2
17:3 27:7 35:1,2
35:19,20 38:8
40:20 44:5 46:4
47:4 61:11 64:21
**what's**  26:12
28:19 39:12 53:18
54:12 61:22 65:4
65:12
**wholeheartedly**
63:20

**who's**  42:4 46:10
52:16 53:22 56:23
66:13
**who've**  38:25
**wide**  18:24
**wife**  51:7 59:25
**williams**  6:1 26:20
**willing**  11:14
51:20 59:22 62:11
**withdrawal**  14:20
14:21
**withdrawals**  8:1
8:20 10:7 11:13
56:13 58:25 59:10
60:6 61:10
**withdrawn**  8:4
52:15 55:11 57:21
58:7,11 59:4
**witness**  14:19
20:20 22:9 26:24
27:15 52:24
**wolf**  63:14
**won't**  9:4 48:11
**work**  12:25 18:10
18:15,16 19:25
20:4 21:5,6,9,12
22:21,22 23:14,21
24:11 26:8 27:10
35:3
**working**  21:16
**works**  13:22
32:13
**worried**  30:18
**wouldn't**  19:24
46:4 47:12,13,16
**would've**  50:11
**written**  14:18
23:3 25:6
**wrong**  11:21 36:5
**wrote**  39:14

| x | , |
|---|---|
| **x**  1:4,11,13,19 2:2 | **'10**  46:24 |
| 2:9,11,18 3:1,3,9 | |

| y |
|---|
| **yeah**  12:17 29:2 |
| 39:15 53:23 56:1 |
| 56:17 60:13,16 |
| 62:24 65:22 |
| **year**  19:12 36:16 |
| 44:25 46:11 49:11 |
| 49:21 51:15,19,20 |
| 57:25 59:3,5 |
| **years**  16:16 41:12 |
| 41:12,23 53:14 |
| 58:14 59:1,10 |
| 60:7 61:8 62:22 |
| **york**  1:2 3:13 5:6 |
| 6:4,11 34:13,22 |
| 53:8 |
| **you'd**  11:3 24:14 |
| **you'll**  26:15 39:15 |
| 39:20 41:2 |
| **you're**  8:11 9:2 |
| 11:17 12:10,21,23 |
| 14:13 15:9,13 |
| 16:11 17:6,9 |
| 19:14 20:11,25,25 |
| 23:19,22 25:17,24 |
| 25:25 29:11 35:24 |
| 36:2,3 38:19 39:2 |
| 39:8 53:1 54:10 |
| 55:5 61:21 63:2 |
| 64:23 65:15 |
| **you've**  14:13 |
| 16:15 30:23 41:9 |
| 55:23 56:20 62:5 |

| z |
|---|
| **zraick**  2:16 6:2 |
| 26:16,20 |