**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Nicholas J. Cremona
Joshua B. Rog

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff, | |
| v. | Adv. Pro. No. 10-04946 (SMB) |
| STEPHEN R. GOLDENBERG, | |
| Defendant. | |

<u>**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS.......................................................3

ARGUMENT ............................................................................................................6

    I.       SUMMARY JUDGMENT STANDARD ...........................................................6

    II.     THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT
              AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY
              BLMIS TO DEFENDANT .............................................................................7

          A.     The Evidence Demonstrates as a Matter of Law That BLMIS
                    Operated the IA Business as a Ponzi Scheme................................................8

          B.     The Transfers Were Property of BLMIS and BLMIS Made
                    Transfers to Defendant During The Two-Year Period ............................13

          C.     BLMIS Made Every Transfer With Actual Fraudulent Intent And
                    In Furtherance Of The Fraud ....................................................................13

          D.     As a Matter of Law, a Transferee Can Never Give Value for
                    Fictitious Profits.......................................................................................15

    III.    THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION
              550 OF THE BANKRUPTCY CODE AND SIPA § 78fff-2(c)(3).......................25

CONCLUSION........................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................6

*Bayou Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou
  Grp. LLC)*,
  396 B.R. 810 (Bankr. S.D.N.Y. 2008), *rev'd on other grounds*, 439 B.R. 284
  (S.D.N.Y. 2010) ....................................................................................10, 14, 26

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp.,
  LLC)*,
  362 B.R. 624 (Bankr. S.D.N.Y. 2007) ...............................................................8, 15

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011), *cert. denied sub nom.* ...............................................20

*In re Bernard L. Madoff Inv. Sec., LLC*,
  No. 15 Civ. 1151 (PAE), 2016 WL 183492 (S.D.N.Y. 2016) ................................23

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M.
  Fabrikant & Sons, Inc.)*,
  No. 06-12737 (SMB), 2009 WL 3806683 (Bankr. S.D.N.Y. Nov. 10, 2009) .......21

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................6

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re
  Bayou Grp. LLC)*,
  439 B.R. 284 (S.D.N.Y. 2010) ...............................................................12, 15, 16

*Donell v. Kowell*,
  533 F.3d 762 (9th Cir.), *cert. denied,* 555 U.S. 1047 (2008) ................................23

*Fed. Ins. Co. v. Am. Home Assurance Co.*,
  639 F.3d 557 (2d Cir. 2011) ................................................................................6

*Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*,
  No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ..............9, 10, 11, 12

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
  359 B.R. 510 (Bankr. S.D.N.Y.), *aff'd in part, rev'd in part*, 397 B.R. 1
  (S.D.N.Y. 2007) ..................................................................................................14

## TABLE OF AUTHORITIES
### (Cont'd)

Page(s)

*Lyman Commerce Sols. v. Lung*,
No. 12 Civ. 04398 (TPG), 2015 WL 4545089 ........................................................3

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................6

*McHale v. Boulder Capital LLC* (*The 1031 Tax Group, LLC*),
439 B.R. 84 (Bankr. S.D.N.Y 2010) .......................................................................3

*McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*,
439 B.R. 47 (Bankr. S.D.N.Y. 2010)........................................................8, 13, 14

*Moran v. Goldfarb*,
No. 09 Civ. 07667 (RJS), 2012 WL 2930210 (S.D.N.Y. July 16, 2002) ...........................3, 12

*Picard v. Blumenthal*,
No. 11-cv-04293 (JSR) (S.D.N.Y. June 24, 2011), ECF Nos. 1-3 .........................17

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*,
445 B.R. 206 (Bankr. S.D.N.Y. 2011) .......................................................................14

*Picard v. Cohen*,
550 B.R. 241 (Bankr. S.D.N.Y. 2016) ....................................................................3, 17

*Picard v. Cohen*,
No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24 .........................19

*Picard v. Cohmad Sec. Corp.*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................................14, 16

*Picard v. The Estate (Succession) of Doris Igoin* (*In re Madoff Sec.*),
525 B.R. 871 (Bankr. S.D.N.Y. 2015) ....................................................................23

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012)........................................................ *passim*

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011)...........................................................2, 7, 14, 16

*Picard v. Trust u/art Fourth o/w/o Istael Wilenitz, et al.,* Adv. Pro. No. 10-04995
(SMB) (Bankr. S.D.N.Y. May 17, 2016).............................................................17

*RTC Mortgage Trust 1995-SINI v. Polmar Realty, Inc.*,
No. 91-cv-6685, 1996 WL 689281 (S.D.N.Y. Nov. 27, 1996)................................22

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*Schneider v. Barnard*,
508 B.R. 533 (E.D.N.Y. 2014) ........................................................................................15

*Scholes v. Lehman*,
56 F.3d 750 (7th Cir. 1995) ...................................................................................11, 12, 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*),
531 B.R. 439 (Bankr. S.D.N.Y. 2015).............................................................................10, 17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
499 B.R. 416 (S.D.N.Y. 2013)..............................................................................17, 18, 19, 24

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
779 F.3d 74 (2d Cir. 2015)................................................................................................24, 25

*Silverman v. Cullin* (*In re Agape World, Inc.*),
633 Fed. App'x. 16 (2d Cir. Feb. 4, 2016)............................................................................23

*Ying Jing Gan v. City of New York*,
996 F.2d 522 (2d Cir. 1993)...............................................................................................6

## Statutes

11 U.S.C. § 101 *et seq*...................................................................................................3

11 U.S.C. § 546(e) ..........................................................................................................4

11 U.S.C. § 548(a)(1) .....................................................................................................13

11 U.S.C. § 548(a)(1)(A) ................................................................................ *passim*

11 U.S.C. § 548(c) ........................................................................................... *passim*

11 U.S.C. § 550(a) ..........................................................................................................4, 25

11 U.S.C. § 551...............................................................................................................4

11 U.S.C. § 550(a)(1)......................................................................................................26

15 U.S.C. § 78fff-2(c)(3) ................................................................................................13, 25, 26

15 U.S.C. § 78aaa–*lll* ...................................................................................... *passim*

15 U.S.C. §78fff-2(c)(1)(A)–(D) ....................................................................................26

**TABLE OF AUTHORITIES**
**(Cont'd)**

**Page(s)**

**Rules**

Fed. R. Bankr. P. 7056-1................................................................................................................1

Fed. R. of Bankr. P. 7056...........................................................................................................1, 6

Fed. R. of Civ. P. 56.....................................................................................................................1

Fed. R. of Civ. P. 56(a).................................................................................................................6

Fed. R. Civ. P. 56(c)(1)................................................................................................................6

Fed. R. Evid. 201........................................................................................................................11

Fed. R. Evid. 803(22).................................................................................................................11

Irving H. Picard (the "Trustee"), trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of the Trustee's motion for summary judgment (the "Motion"), pursuant to the Stipulation for Entry of Scheduling Order so ordered by this Court on June 22, 2017 (ECF No. 57) and Rule 56 of the Federal Rules of Civil Procedure (made applicable to this proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")) and Southern District of New York Local Bankruptcy Rule 7056-1, on Count One of the Trustee's amended complaint to avoid and recover as fraudulent transfers the amounts BLMIS fraudulently transferred to defendant Stephen R. Goldenberg ("Defendant") in the above-captioned action (the "Avoidance Action"). The facts underlying the Motion are set forth in the Joint Statement of Undisputed Material Facts (the "Joint Statement")[1] submitted by the Trustee and Defendant (together, the "Parties"), and so ordered by this Court on August 16, 2017. (ECF No. 58).

## PRELIMINARY STATEMENT

While thousands of BLMIS's investment advisory customers lost billions of dollars of principal they invested with Madoff, other customers, such as Defendant, benefitted from the receipt of fictitious "profits" from Madoff's scheme—"profits" that in fact consisted of other customers' deposits. Defendant can assert no rights to these fictitious profits and summary

---

[1] *See* Joint Statement of Undisputed Material Facts, ECF No. 58; A true and correct copies of the Joint Statement is annexed hereto as <u>Exhibit A</u> to the Declaration of Keith R. Murphy, dated October 2, 2017 (the "Murphy Declaration"), filed contemporaneously herewith.

judgment should thus be granted to return these amounts to the estate for distribution to those customers with valid claims.

Defendant is a recipient of transfers of fictitious profits within two years of December 11, 2008.  Defendant admits that BLMIS transferred and Defendant withdrew $4 million in excess of deposits from his customer account (collectively, the "Transfers").  (Joint Statement ¶¶ 23-24).

Defendant also agrees that BLMIS made these transfers "with the actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors."  (Joint Statement ¶ 27). Specifically, Defendant stipulated that "BLMIS was operating a Ponzi scheme" at all times relevant to the Avoidance Action and that the investment advisory business (the "IA Business") in which he was invested, "did not actually trade securities for customers and did not generate any legitimate profits for customer accounts."  (Joint Statement ¶¶ 9, 12).  Defendant therefore does not dispute that the Trustee has satisfied his burden of proof on his *prima facie* case.  This is consistent with prior holdings in these proceedings.  For example, the District Court recognized, "[s]ince it is undisputed that Madoff's Ponzi scheme began more than two years before the filing of the bankruptcy petition and continued to almost the very day of filing, it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.,* those left holding the bag when the scheme was uncovered." *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011).

Accordingly, Defendant can only avoid liability for the Transfers if he can demonstrate he possesses a valid defense thereto.  However, he lacks any factual or legal basis to do so.  In particular, Defendant cannot assert that he took the transfers "for value" because there are no facts in the record supporting any such contention.  Similarly, Defendant cannot, as a matter of law, establish that he took the transfers of fictitious profits "for value" because courts have

repeatedly held in these proceedings that such false profits were not on account of a valid

antecedent debt.  *See* Post-Trial Proposed Findings of Fact and Conclusions of Law, *Picard v.

Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25,

2016), ECF No. 90 (the "*Cohen Decision*"), *adopted,* No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb.

24, 2017), ECF No. 24 (Memorandum Order Adopting Proposed Findings of Fact and

Conclusions of Law).

Given there are no material factual issues in dispute regarding the Transfers, this Court

should grant summary judgment.[2]

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Trustee commenced the Avoidance Action by filing the complaint on December 2,

2010.  (ECF No. 1).  The Trustee filed an amended complaint (the "Complaint") on December 2,

2011.  (Amended Complaint, *Picard v. Stephen R. Goldenberg*, 1:11-cv-04483 (JSR) (S.D.N.Y.

Dec 2, 2011), ECF No. 4).[3]  The Complaint asserted claims pursuant to sections 78fff(b), 78fff-

1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 547, 548(a), 550(a), and 551 of the United

States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), and other applicable

law, and seeks the avoidance and recovery of fraudulent transfers in connection with certain

transfers of property by BLMIS to or for the benefit of Defendant.  *Id.*

---

[2] The Trustee is additionally entitled to prejudgment interest on the Transfers, and in the event the Motion
is granted, reserves his right to request a post-judgment hearing before this Court to determine the
appropriate rate to apply to the calculation of such interest. *See, e.g., Lyman Commerce Sols. v. Lung*, No.
12 Civ. 04398 (TPG), 2015 WL 4545089, *4 (S.D.N.Y. July 16, 2015 (awarding prejudgment interest on
avoided fraudulent transfer); *Moran v. Goldfarb*, No. 09 Civ. 07667 (RJS), 2012 WL 2930210 (S.D.N.Y.
July 16, 2002) (same); *McHale v. Boulder Capital LLC*, (*The 1031 Tax Group, LLC*), 439 B.R. 84, 87
(Bankr. S.D.N.Y 2010) (same).

[3] A copy of the Amended Complaint is annexed hereto as <u>Exhibit B</u> to the Murphy Declaration.

On June 22, 2015, the Supreme Court of the United States denied *certiorari* of the

Trustee's appeal of *SIPC v. Ida Fishman Revocable Trust*, No. 14-1128 and *Picard v. Ida*

*Fishman Revocable Trust*, No. 14-1129 (the "546(e) Decision"), making section 546(e) of the

Bankruptcy Code applicable to this Avoidance Action.  Counts Two through Six of the

Complaint were subsequently dismissed pursuant to the Order Granting In Part and Denying In

Part Defendants' Motions to Dismiss, entered on July 16, 2015.  (ECF No. 42).  As a result, the

Trustee's sole remaining claim against Defendant is Count One, seeking avoidance and recovery

of the Transfers pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and

sections 78fff(b), 78fff-1(b), and 78fff-2(c)(3) of SIPA.

In his answer to the Complaint ("Answer"), Defendant admitted that he maintained IA

Business account number 1CM391 at BLMIS (the "BLMIS Account").  *See* Answer at ¶¶ 7, 34

(ECF No. 43).  The Complaint includes what is identified therein as "Exhibit B," which sets

forth in detail all of the transactions in the BLMIS Account, showing all deposits into and

withdrawals from the BLMIS account.  On May 23, 2016, Defendant admitted in his Responses

and Objections to the Trustee's First Set of Requests for Admission that were served on May 23,

2016 ("RFA Responses"), that the Trustee's Exhibit B to the Complaint accurately reflects the

complete history of the transactions affecting the BLMIS Account, including all deposits and

withdrawals.  (RFA Responses, Nos. 1-40).

In addition, in connection with this Motion, the Parties further entered into and submitted

the Joint Statement.[4]  As stated in the Joint Statement, the undisputed facts include the following:

- BLMIS was operating a Ponzi scheme at all times relevant to this
  adversary proceeding;

---

[4] *See supra* n.1.

- BLMIS was insolvent from at least April 25, 1996, and all points after;

- BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers;

- The IA Business did not actually trade securities for customers and did not generate any legitimate profits for customer accounts;

- The IA Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the IA Business customer withdrawals;

- The IA Business did not receive any legitimate outside financial support from loans or otherwise;

- BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients;

- Column 4 of Exhibit B to the Complaint accurately reflects the deposits made into the BLMIS Account and Column 5 of Exhibit B to the Complaint accurately reflects the withdrawals from the BLMIS Account;

- Column 10 of Exhibit B to the Complaint accurately reflects the amounts Defendant withdrew between December 11, 2006 and December 11, 2008 (the "Two-Year Period") in excess of deposits; and

- Defendant received the withdrawals made during the Two-Year Period.

(Joint Statement at ¶¶ 9-15, 22, 24-25).

In light of the Joint Statement, there is no dispute that BLMIS was operating a Ponzi scheme at all relevant times and that Defendant received transfers of other people's money as part of that scheme.

- 5 -

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure (made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure) provides that summary judgment must be granted, in whole or in part, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Factual positions are proven by either citing the record evidence—including declarations, admissions and interrogatory answers—or showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Indeed, the movant need not show the absence of a genuine dispute of material fact with respect to a point "on which the nonmoving party bears the burden of proof." *Celotex Corp.*, 477 U.S. at 325.

When the movant has discharged its burden, the non-movant must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-movant fails to come forward with specific, probative facts showing that there is a genuine dispute of fact for trial, summary judgment is appropriate. *Matsushita*, 475 U.S. at 586-87; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) ("[T]he nonmoving party may . . . not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.").

Here, the Parties entered into the Joint Statement, there is no genuine dispute as to any material fact with respect to the fictitious profits sought in Count One of the Complaint nor any defenses thereto, and summary judgment is appropriate.

## II.    THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY BLMIS TO DEFENDANT

As this Court has recognized, fictitious profits cases "are strict liability cases unless the law changes." Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015); *see also* Tr. of Oral Argument at 100:19, *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) (fictitious profit count is "almost a strict liability count").[5] This is especially true here, where the Parties have agreed the Trustee has satisfied the elements of his claim.

Section 548(a)(1)(A) of the Bankruptcy Code authorizes the Trustee to avoid the entire amount of "any payment" of an interest in property of the debtor made within two years of December 11, 2008 (the "Filing Date") with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A); *Picard v. Greiff*, 476 B.R. 715, 722 (S.D.N.Y. 2012). There is no genuine dispute regarding BLMIS's: (1) operation as a Ponzi scheme, meaning the actual intent to hinder, delay, or defraud its creditors in making the transfers to Defendant is presumed, and (2) transfer to and receipt by Defendant of the fictitious profits within the Two-Year Period. (Joint Statement at ¶¶ 9, 24-25, 27). *See also Katz,* 462 B.R. at 453 (finding that "all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, *i.e.,* those left holding the bag when the scheme was uncovered").

---

[5] True and correct copies of relevant sections of the court hearing transcripts in *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), and *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), are annexed hereto respectively as <u>Exhibit C</u> and <u>Exhibit D</u> to the Murphy Declaration.

As a result, the Trustee is entitled to avoid all Transfers made to Defendant within the

Two-Year Period unless he can demonstrate that he received the Transfers "in good faith" and

"for value." *Cohen Decision,* 2016 WL 1695296, at *5 (citing 11 U.S.C. § 548(c)); *see also*

*McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 68 (Bankr.

S.D.N.Y. 2010) ("Summary judgment is appropriate if the Trustee offers evidence satisfying

[the] elements" of a "section 548(a)(1)(A) fraudulent conveyance action."); *Bayou Superfund,*

*LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 629 (Bankr.

S.D.N.Y. 2007) ("*Bayou I*") (same)).

Here, all of the relevant facts are admitted, and thus, there is no issue of disputed material

fact for a fact finder to determine.  In addition, because there are no facts in the record supporting

any statutory defense to the Trustee's claims, summary judgment in favor of the Trustee is

proper.

### A.    The Evidence Demonstrates as a Matter of Law That BLMIS Operated the IA Business as a Ponzi Scheme

#### 1.    The Parties Do Not Dispute The BLMIS Ponzi Scheme

There is no dispute between the Parties that BLMIS was, at all times relevant to the

Avoidance Action, engaged in a Ponzi scheme.  Indeed, pursuant to the Joint Statement,

Defendant explicitly concedes that BLMIS was "operating a Ponzi scheme at all times relevant

to this adversary proceeding" and "was insolvent from at least April 25, 1996, and all points

after."  (Joint Statement ¶¶ 9-10).  Defendant admits that BLMIS's IA Business did not generate

"any legitimate profits," having to use "commingled customer monies" in order to fund its

operations and "fund the withdrawal of fictitious profits and principal for other customers."

(Joint Statement ¶¶ 11-12).  In fact, any deposits Defendant made to BLMIS were received "with

the intent to not apply such funds to the purchase of securities for the accounts of its clients."

(Joint Statement ¶ 15). Defendant further admits that the IA Business "did not actually trade securities for customers" and "did not receive legitimate financial support from the other business units of BLMIS" or "legitimate outside financial support from loans" in amounts sufficient to satisfy the cash requirement needs of the IA Business customer withdrawals." (Joint Statement ¶¶ 12-14). The Joint Statement establishes for purposes of this Motion that BLMIS operated the IA Business as a Ponzi scheme.

### 2.    All Four Factors of the Ponzi Scheme Test Have Been Met

Even without the specific stipulations regarding the Ponzi scheme, there can be no genuine dispute that standards for establishing the existence of such a scheme have been met here. In *Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*, No. 08-15051 (SMB), 2014 WL 47774, at *22 (Bankr. S.D.N.Y. Jan. 3, 2014), this Court recognized a four-factor test for the existence of a Ponzi scheme: (i) deposits were made by investors; (ii) the debtor conducted little or no legitimate business operations as represented to investors; (iii) the purported business operation of the debtor produced little or no profits or earnings; and (iv) the source of payments to investors was from cash infused by new investors. Each of these *Gowan* factors has been conclusively established by the Trustee here.

### a.    Defendant Made Deposits And Withdrawals In Connection With the BLMIS Account

First, Defendant admits to establishing the BLMIS Account. (Joint Statement ¶¶ 16-18). As a customer of the IA Business, Defendant admittedly made deposits and withdrawals in connection with the BLMIS Account. (Joint Statement ¶¶ 20-25). The first *Gowan* factor has been satisfied.

### b.    The IA Business Did Not Conduct Legitimate Business Operations Despite Representations to Defendant

Second, Defendant admits that despite Madoff's representations otherwise, the IA

Business was not a legitimate business operation, but rather a Ponzi scheme by which BLMIS

"utilized commingled customer monies to fund its operations. . .[and] the withdrawal of fictitious

profits and principal for other customers." (Joint Statement ¶¶ 9-11). Defendant also admits the

IA Business "did not actually trade securities for customers and did not generate any legitimate

profits for customer accounts." (Joint Statement ¶ 12). The Joint Statement, standing alone,

sufficiently meets the second *Gowan* factor.

That said, the Trustee is also entitled to rely on the plea allocutions of Madoff, as well as

BLMIS employees Frank DiPascali and David Kugel, all of which similarly establish that

BLMIS did not conduct legitimate operations from the IA Business.[6] Indeed, this Court

previously stated that "a transferor's admissions made during a guilty plea or allocution are

admissible to prove that the transferor engaged in a Ponzi scheme. *Sec. Inv. Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Bernard Madoff)*, 531 B.R. 439, 471 (Bankr. S.D.N.Y.

2015) ("*Omnibus Good Faith Decision*") (citing *In re Dreier LLP,* 2014 WL 47774, at *11); *see*

*also Bayou Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou Grp. LLC)*,

396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008) ("*Bayou III*"), *rev'd on other grounds*, 439 B.R. 284

(S.D.N.Y. 2010) ("Courts have consistently found that criminal proceeding admissions of a

---

[6] *See* Plea Allocution of Bernard L. Madoff, *United States v. Madoff,* No. 09 Cr. 00213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff Allocution"), ECF No. 143-1; Plea Allocution of Frank DiPascali, Jr., *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (the "DiPascali Allocution"), ECF No. 143-2; Plea Allocution of David L. Kugel, *United States v. Kugel,* No. 10-CR-228 (LTS) (S.D.N.Y.) Nov. 21, 2011) (the "Kugel Allocution"), ECF No. 143-3. True and correct copies of the Madoff Allocution, DiPascali Allocution, and Kugel Allocution are annexed hereto respectively as Exhibit F, Exhibit G, and Exhibit H to the Murphy Declaration.

fraudulent scheme to defraud investors made in guilty pleas and plea allocutions are admissible
as evidence of 'actual intent' to defraud creditors."); *Scholes v. Lehman*, 56 F.3d 750, 762 (7th
Cir. 1995) (facts underlying plea agreement, admitting charges of fraud, established existence of
Ponzi scheme, were admissible under Fed. R. Evid. 803(22), and were proper subject of judicial
notice under Fed. R. Evid. 201).

Madoff admitted during his allocution that "for many years up until my arrest on
December 11, 2008, I operated a Ponzi scheme through the investment advisory side of my
business, Bernard L. Madoff Securities LLC." Madoff Allocution, at 23:14-17. He admitted
that he falsely represented to investors that he would "invest their money in shares of common
stock, options, and other securities of large well-known corporations" but "never invested these
funds in the securities as…promised." *Id.* at 24:9-17. Instead, he deposited the investors' funds
in a "bank account at Chase Manhattan Bank" and "[w]hen clients wished to receive the profits
they believed they had earned with me or to redeem their principal, I used the money in the
Chase Manhattan bank account that belonged to them or other clients to pay the requested
funds." *Id.* at 24:18–22. These statements are consistent with those made by other employees.
DiPascali Allocution, at 47:5-7 ("Most of the time the clients' money just simply went into a
bank account in New York that Bernie Madoff controlled."); and Kugel Allocution, at 32:4-12
("Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped
create fake, backdated trades . . . that, when included on the account statements and trade
confirmations of Investment Advisory clients, gave the appearance of profitable trading when in
fact no trading had actually occurred").

As a result, the Trustee has conclusively established the second *Gowan* factor.

- 11 -

### c.     The IA Business Produced No Profits Or Earnings

Third, Defendant admits the IA Business "did not generate any legitimate profits for customer accounts." (Joint Statement ¶ 12). Defendant also admits the IA Business (ii) "did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the Investment Advisory Business customer withdrawals"; and it (iii) "did not receive any legitimate outside financial support from loans or otherwise." (Joint Statement ¶¶ 13-14).   In addition, based on the allocutions cited above, there were no actual securities traded—or any legitimate business operations whatsoever—in the IA Business, thus no real profits or earnings. The third *Gowan* factor has been met.

### d.     Defendant Was Paid From Cash Infused By Other Customers

Finally, the fourth *Gowan* factor is satisfied as Defendant admits that investors were paid from infusions of cash from new investors, stipulating that "BLMIS utilized commingled customer monies…to fund the withdrawal of fictitious profits and principal for other customers." (Joint Statement ¶ 11).

Therefore, Defendant was invested with the IA Business, which was a Ponzi scheme at all relevant times. *See e.g.*, *Moran v. Goldfarb*, No. 09 Civ. 7667(RJS), 2012 WL 2930210, at *4 (S.D.N.Y. July 16, 2012) (granting summary judgment in plaintiff's favor on recouping fictitious profits from a Ponzi scheme based on the guilty plea of an investment advisor who "admit[ted] under oath to running a Ponzi scheme from 1998 through 2008."); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Grp. LLC*), 439 B.R. 284, 305, 307-08 (S.D.N.Y. 2010) ("*Bayou IV*") (same, based on testimony of debtor's forensic accountant and guilty pleas of fraudsters); *Scholes v. Lehman*, 56 F.3d 750, 762-63 (7th Cir. 1995) (affirming district court's reliance on the perpetrator's guilty plea by which he admitted all

money transferred to him, came directly or indirectly from the defrauded creditors of the

perpetrator's corporations).

> **B.**    **The Transfers Were Property of BLMIS and BLMIS Made Transfers to Defendant During The Two-Year Period**

For purposes of avoidance and recovery, BLMIS is deemed under SIPA to have an

interest in transferred property. *See* 15 U.S.C. § 78fff-2(c)(3) (that for recovery purposes,

"property so transferred shall be deemed to have been the property of the debtor and, if such

transfer was made to a customer or for his benefit, such customer shall be deemed to have been a

creditor, the laws of any State to the contrary notwithstanding."); *Cohen Decision,* 2016 WL

1695296, at *5 ("BLMIS transferred customer property to [defendant], and under SIPA § 78fff-

2(c)(3) such property is 'deemed to have been property of the debtor'"); *In re The 1031 Tax*

*Grp., LLC,* 439 B.R. at 58, 70 (finding that, in a Ponzi scheme, money reflected in bank account

statements "in the name of a debtor is presumed to be property of the bankruptcy estate" for

purposes of 11 U.S.C. § 548(a)(1)).

The uncontroverted evidence shows that BLMIS transferred, and Defendant received,

fictitious profits between December 11, 2006 and December 11, 2008.  (Joint Statement ¶¶ 20-

25).  Defendant specifically admits that Exhibit B to the Complaint "accurately reflect the

complete history of the transactions" affecting the BLMIS Account, and "accurately reflects the

deposits made into the[ir] [a]ccount[s] . . .[and] withdrawals from the[ir] [a]ccounts."  (Joint

Statement ¶¶ 20-22).

> **C.**    **BLMIS Made Every Transfer With Actual Fraudulent Intent And In Furtherance Of The Fraud**

BLMIS's transfers to Defendant were in furtherance of the fraud.  Defendant explicitly

admits that BLMIS received every deposit [from its customers] "with the intent to not apply such

funds to the purchase of securities for the accounts of its clients."  (Joint Statement ¶ 15).

- 13 -

Defendant also admits that "BLMIS transferred the funds withdrawn by Mr. Goldenberg during
the Two-Year Period with the actual intent to hinder, delay, or defraud some or all of its then
existing and/or future creditors." (Joint Statement ¶ 27). Indeed, "[e]very payment made by the
debtor to keep the scheme on-going was made with the actual intent to hinder, delay or defraud
creditors, primarily the new investors." *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv.
Fund Ltd.)*, 359 B.R. 510 (Bankr. S.D.N.Y.), *aff'd in part, rev'd in part*, 397 B.R. 1 (S.D.N.Y.
2007) (internal citation omitted). Every redemption payment "*in and of itself* constituted an
intentional misrepresentation of fact" of the investor's rights to their falsely inflated account
statement and "an integral and essential part" of the fraud. *Bayou III,* 396 B.R. at 843 (emphasis
in original). The transfers to Defendant, like the payments made to customers in any Ponzi
scheme, were an integral and essential part of BLMIS's fraudulent scheme.

Because BLMIS was a Ponzi scheme, as a matter of law, BLMIS intended to defraud its
creditors with every transfer. *See, e.g., Cohen Decision* , 2016 WL 1695296, at *5 ("the Trustee
is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to
have been made with actual fraudulent intent") (citing *Omnibus Good Faith Decision,* 531 B.R.
at 471); *see also Picard v. Cohmad Sec. Corp.,* 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011)
("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law
by virtue of the 'Ponzi scheme presumption'"); *In re The 1031 Tax Grp.*, 439 B.R. at 72 ("If the
Ponzi scheme presumption applies, actual intent for purposes of section 548(a)(1)(A) is
established as a matter of law.") (internal quotation omitted).

This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave
no basis for disputing the application of the Ponzi scheme presumption. . ." *Picard v. Chais (In
re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 220 (Bankr. S.D.N.Y. 2011); *see also Katz*,

- 14 -

462 B.R. at 453 ("it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors").  The transfers of fictitious profits made by BLMIS to or for the benefit of Defendant, therefore, are presumed to have been made with actual fraudulent intent and are recoverable by the Trustee.

Thus, there is no dispute that BLMIS made all transfers to Defendant and other customers and creditors with the actual intent to defraud required to support a fraudulent transfer claim under section 548(a)(1)(A) of the Bankruptcy Code.

### D.    As a Matter of Law, a Transferee Can Never Give Value for Fictitious Profits

Having established that BLMIS transferred $4 million to Defendant within the Two-Year Period with actual fraudulent intent, as a matter of law the Trustee is entitled to avoid and recover such transfers.  (Joint Statement ¶¶ 24-25, 27).  Defendant has no viable defenses to these claims.

### 1.    Defendant Did Not Give Value For Fictitious Profits

To defeat the avoidance of a transfer on summary judgment, Defendant must offer evidence sufficient to create a material issue of fact as to whether he took (1) "for value . . . to the extent that [he] gave value to the debtor in exchange for such transfer" and (2) "in good faith." *Bayou IV*, 439 B.R. at 308 (citing 11 U.S.C. § 548(c)) (placing burden of proving affirmative defense on transferee in trustee's motion for summary judgment); *Schneider v. Barnard*, 508 B.R. 533, 551 (E.D.N.Y. 2014) ("Because Bankruptcy Code § 548(c) is an affirmative defense, the transferee bears the burden of establishing all elements of the… defense."); *Bayou I*, 362 B.R. at 631 ("The good faith/value defense provided in Section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense.").  Defendant cannot satisfy the "for value" requirement here.

- 15 -

The Parties stipulated that Defendant made his withdrawals "in good faith, believing that he was entitled to these funds and lacking any knowledge of the Ponzi scheme." (Joint Statement ¶ 26). Yet, fictitious profits "may [still] be recovered regardless of the customers' good faith," because "transfers made by Madoff Securities to its customers in excess of the customers' principal—that is, the customers' profits—. . . were in excess of the extent to which the customers gave value." *Katz*, 462 B.R. at 453 (internal quotations omitted); *see also Greiff*, 476 B.R. at 722-24; *Cohen Decision,* 2016 WL 1695296, at *5.

Defendant cannot establish that he took the transfers of fictitious profits "for value" because such false profits were not on account of a valid antecedent debt. There is no dispute that Defendant received fictitious profits or "withdrew . . .in excess of deposits" from the BLMIS Account, which Defendant admits "did not actually trade securities for customers and did not generate any legitimate profits for customer accounts." (Joint Statement ¶¶ 13, 24-25).

As a matter of law, it is universally accepted that when investors invest in a Ponzi scheme, "any payments that they receive in excess of their principal investments can be avoided by the Trustee as fraudulent transfers." *Cohmad,* 454 B.R. at 333; *see also Cohen Decision,* 2016 WL 1695296, at *11 ("Net winners cannot argue that the payment of fictitious profits satisfied an antecedent debt or obligation and provided value within the meaning of Bankruptcy Code § 548(c)."). In fact, "virtually every court to address the question has held *unflinchingly* that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers." *Bayou IV*, 439 B.R. at 337 (emphasis added) (internal quotations omitted); *see also Greiff*, 476 B.R. at 725 ("It is not surprising…every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme are not 'for value'"). Indeed, this Court recently reiterated that the value "issue's

- 16 -

been litigated" before; "[i]n every Ponzi scheme case that [this Court has] seen, SIPA and non-

SIPA, fictitious profits are just not valued." Tr. of Hearing at 41:25-42:7, *Picard v. Trust u/art

Fourth o/w/o Israel Wilenitz, et al.,* Adv. Pro. No. 10-04995 (SMB) (Bankr. S.D.N.Y. May 17,

2016).[7]

## 2.    The Value Defense Has Been Litigated And Rejected At Least Five Times In This Liquidation Proceeding

Importantly, "[t]his issue has been litigated and expressly or impliedly rejected" in at

least five previous decisions issued in this liquidation proceeding. *Cohen Decision,* 2016 WL

1695296, at *5. Indeed, this Court earlier observed that defendants in this liquidation proceeding

"have had several opportunities to present their antecedent debt/value arguments, those

arguments have been rejected, and hearing them again will not add value to the disposition of the

antecedent debt/value defense in this Court." *Picard v. Cohen*, 550 B.R. 241, 255 (Bankr.

S.D.N.Y. 2016) (denying motion to intervene in the *Cohen* proceeding on the antecedent

debt/value issue); *see also Omnibus Good Faith Decision,* 531 B.R. at 465 (noting that the

District Court's extensive consideration of the antecedent debt/value issue "would normally

foreclose further argument in this Court" because defendants "have had their day in court and

Judge Rakoff's decisions are law of the case").[8]

---

[7] A true and correct copy of the court hearing transcript in *Picard v. Trust u/art Fourth o/w/o Israel Wilenitz, et al.,* Adv. Pro. No. 10-04995 (SMB) (Bank. S.D.N.Y. May 17, 2016), is annexed hereto as Exhibit E to the Murphy Declaration.

[8] Defendant was subject to the *Antecedent Debt Decision*, as he moved to withdraw the reference to the Bankruptcy Court to determine whether payments from BLMIS "were in satisfaction of an antecedent debt," by joining the Motion to Withdraw the Reference to the Bankruptcy Court that was filed in *Picard v. Blumenthal,* No. 11-cv-04293 (JSR) (S.D.N.Y. June 24, 2011), ECF Nos. 1-3. *See* Defendant Stephen Goldenberg's Joinder In Gerald Blumenthal's Motion For Mandatory Withdrawal of the Reference, GoldenbergAction, ECF No. 1. In addition, Defendant's counsel at Milberg LLP represented other similarly-situated defendants subject to the *Antecedent Debt Decision* and *Omnibus Good Faith Decision. See, e.g., Estate of Ira S. Rosenberg*, Adv. Pro. No. 10-04978 (SMB) (Bankr. S.D.N.Y.), No. 11 Civ. 04482 (JSR) (S.D.N.Y.)

In this liquidation proceeding, the District Court first addressed the value issue in *Greiff* in which defendants in four adversary proceedings—who had withdrawn more money than they deposited with BLMIS—moved to dismiss the Trustee's claims to avoid transfers of fictitious profits under section 548(a)(1)(A). *Greiff*, 476 B.R. at 718. The District Court ruled that transfers from BLMIS to defendants that "exceeded the return of defendants' principal, *i.e.*, that constituted profits, were not 'for value.'" *Id.* at 725. According to the District Court, "the transfers must be assessed on the basis of what they really were; and they really were artificial transfers designed to further the fraud, rather than any true return on investments." *Id.*

The District Court revisited the value issue in a decision that disposed, in part, of motions to dismiss in approximately 600 adversary proceedings, including that of the Defendant. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*), 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"). Citing *Greiff*, the District Court again held that even if defendants held valid claims under federal or state law, those claims did not provide value under SIPA against the separate BLMIS customer property estate. *Id.* at 423 (citing *Greiff*, 476 B.R. at 727-28); *see also id.* at 422 n.6.

After the District Court returned the adversary proceedings to the Bankruptcy Court for further proceedings consistent with the *Antecedent Debt Decision*, the Bankruptcy Court revisited the value issue in deciding omnibus motions to dismiss brought by defendants in nearly 250 adversary proceedings. *Omnibus Good Faith Decision,* 531 B.R. 439. The Bankruptcy Court denied defendants' motions, concluding that the District Court's prior rulings in *Greiff* and the *Antecedent Debt Decision* were "consistent with the well-settled rule in Ponzi scheme cases that net winners must disgorge their winnings." *Id*. at 462-63 (collecting cases). The Bankruptcy Court explained that "the rationale for the rule is that the Ponzi scheme participant

- 18 -

does not provide any value to the debtor in exchange for the fictitious profits it receives." *Id.* at
463 (citing *Scholes,* 56 F.3d at 757 ("The paying out of profits to [the Ponzi scheme investor] not
offset by further investments by him conferred no benefit on the [entities involved in the Ponzi
scheme] but merely depleted their resources faster.") (modifications in original)).

Finally, in the *Cohen Decision,* this Court concluded in its Post-Trial Proposed Findings
of Fact and Conclusions of Law that defendants, as a matter of law, equally cannot establish that
they took the transfers of fictitious profits "for value" because such false profits were not on
account of a valid antecedent debt.  2016 WL 1695296, at *5.  This Court made clear that in
"SIPA Ponzi scheme cases involving fraudulent transfer litigation, [n]et winners cannot argue
that the payment of fictitious profits satisfied an antecedent debt or obligation and provided value
within the meaning of Bankruptcy Code § 548(c)." *Id.* at *11.  Given that "SIPA creates two
estates and grants net losers—those with net equity claims—a priority in the customer property
estate," if the Court were to "permit[ ] a net winner to offset a non-net equity claim against the
trustee's claim for the return of customer property," it would "effectively allow[ ] the net winner
to recover his non-SIPA claim from customer property at the expense of the net losers in
violation of SIPA's priority rules." *Id.*  The District Court reviewed *de novo* the lower court
submissions and "for substantially the reasons set forth in the well-reasoned and thorough
decision of the Bankruptcy Court … adopt[ed] the Bankruptcy Court's Post-Trial Proposed
Findings of Fact and Conclusions of Law in their entirety."  Memorandum Order Adopting
Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen*, No. 16 Civ. 05513 (LTS)
(S.D.N.Y. Feb. 24, 2017), ECF No. 24.

As a result, Defendant did not provide BLMIS with value for the fictitious profits.

**3.** **Defendant's Purported Federal And State Law Claims Or Obligations Do Not Constitute "Value" Under Section 548(c)**

In his Answer, Defendant asserts the fictitious profits he received from the Ponzi scheme were "in payment of an antecedent debt, in whole or in part, on account of obligations owed by Madoff Securities," including purported "damages and interest for fraud and misrepresentation pursuant to federal and state law." (Answer at p. 30 ¶ 23). Consequently, Defendant asserts the fictitious profits he received were "for value" under section 548(c). (Answer at p. 28-29 ¶ 19). Since the District Court first decided *Greiff* on April 30, 2012, net winners like Defendant have continued to press this same line of argument, but it is even less persuasive now than it was when the District Court first rejected it.

As the District Court held in *Greiff*, "even if the defendants had enforceable claims," under federal or state law, "a conclusion that satisfaction of those claims gave 'value' to [BLMIS] would conflict with SIPA." 476 B.R. at 727; *see also Antecedent Debt Decision*, 499 B.R. at 422 n.6 (holding federal and state law claims "cannot provide value as against the [BLMIS] customer property estate under SIPA"); *Omnibus Good Faith Decision*, 531 B.R. at 476 n.26. This is because SIPA "prioritizes net equity claims over general creditor claims." *Greiff*, 476 B.R. at 727. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233 (2d Cir. 2011), *cert. denied sub nom.* ("*Second Circuit Net Equity Decision*") ("In a SIPA liquidation, a fund of 'customer property,' separate from the general estate of the failed broker-dealer, is established for priority distribution exclusively among customers.").

And to allow a customer like Defendant, who has no net equity claims, to retain fictitious profits of customer property on the ground that these profits satisfied his purported claims, would deplete the customer fund available for distribution according to customers' "net equities." *Greiff*, 476 B.R. at 728; *see also Omnibus Good Faith Decision*, 531 B.R. at 466. Indeed, this

- 20 -

Court recently reiterated, "[e]very offset against the trustee's avoidance claim based on a non-SIPA claim under state or federal law diminishes the SIPA trustee's recovery." *Cohen Decision,* 2016 WL 1695296, at \*13. "Neither bankruptcy law nor state law require the Court to disregard SIPA in this fashion." *Greiff*, 476 B.R. at 728. As a result, to the extent that Defendant has valid federal or state law claims and payment on those claims theoretically could discharge an antecedent debt, "that debt runs against [the BLMIS] general estate, not the customer property estate, and therefore cannot be the basis of the retention of customer property under section 548(c)." *Antecedent Debt Decision*, 499 B.R. at 424.

Undeterred by the numerous prior rulings, Defendant continues to press this same argument, albeit now repackaged as "obligations" owed by BLMIS. In the Joint Statement, the Parties stipulate that (1) Defendant "reasonably relied on the representations in the Account Agreement and account statements" and that (ii) "BLMIS did not comply with its obligations under the Account Agreement." (Joint Statement ¶¶ 34, 36). However, any argument that Defendant's receipt of the fictitious profits were "for value" against purported contractual and brokerage obligations pursuant to his account agreement and account statements fails for the same reasons previously articulated by this Court and the District Court in at least four reported decisions. In short, not a single transfer Defendants received as BLMIS customers satisfied a "valid" debt or obligation, as "*all* of the transfers are presumptively fraudulent, as in the case of a Ponzi scheme." *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.),* No. 06-12737 (SMB), 2009 WL 3806683, at \*13 n. 19 (Bankr. S.D.N.Y. Nov. 10, 2009). But even if any such transfer satisfied a "valid" obligation, the fact remains that payments in excess of principal are avoidable and recoverable (in all Ponzi scheme cases) and violate the priority rules of SIPA (in SIPA Ponzi scheme cases)." *Cohen Decision,*

- 21 -

2016 WL 1695296, at *12 n.17; *see also Antecedent Debt Decision,* 499 B.R. at 421, n.4 ("[T]he

Court rejects defendants' contention that Madoff Securities' pre-reach-back-period account

statements constitute binding obligations of Madoff Securities to its customers that the Trustee

must avoid.") (citing *Greiff,* 476 B.R. 724-725).

Thus, Defendant's purported federal and state law claims against BLMIS—whether

phrased as an "obligation" owed by BLMIS or otherwise—simply do not create any antecedent

debts or provide value under section 548(c) for the fictitious profits retained by Defendant.

### 4. Defendant's Purported Remedies, Adjustments, And Setoffs Under State Or Federal Law Do Not Constitute Value Under Section 548(c)

Defendant raises other affirmative defenses that concern remedies, adjustments, and

setoffs he claims he is entitled to under federal or state law.  Specifically, Defendant asserts that

he is entitled to retain the amount of taxes paid on transfers received from BLMIS (Answer at p.

31 ¶ 29), and adjustments for the time-value of money invested with BLMIS.  (Answer at p. 30

¶¶ 23-24).  For the reasons previously stated by the Bankruptcy Court, the District Court, and the

Second Circuit, Defendant is entitled to neither of the above.

### a. Taxes May Not Be Considered As Part Of Setoff Or Value Calculation

Defendant argues he is entitled to a "setoff or other equitable adjustment" to the extent

his fraudulent transfers were "made to pay estate and/or income taxes based on the value of

assets and statements of gains and income reflected in the BLMIS account at issue."  (Answer at

p. 31 ¶ 29).[9]  This Court already has rejected this argument in the *Cohen Decision*, holding that a

defense for taxes paid on profits would be inconsistent with the approved manner for calculating

---

[9] Defendant failed to produce any evidence during discovery of taxes that he has paid, and thus the defense cannot preclude the imposition of summary judgment.  *See RTC Mortgage Trust 1995-SINI v. Polmar Realty, Inc.*, No. 91-cv-6685, 1996 WL 689281, at *4 (S.D.N.Y. Nov. 27, 1996) ("[A]ffirmative defenses…without any additional supporting evidence, are legally insufficient to preclude the imposition of summary judgment.").

net equity.  2016 WL 1695296, at *15.  This Court explained that "the offset would introduce complex problems of proof and tracing and reduce the [Trustee's] ability to recover assets" and would only "come at the expense of the other victims."  *Id.* (citing *Donell v. Kowell,* 533 F.3d 762 (9th Cir.), *cert. denied,* 555 U.S. 1047 (2008)); *see also Picard v. The Estate (Succession) of Doris Igoin* (*In re Madoff Sec.*), 525 B.R. 871, 893 (Bankr. S.D.N.Y. 2015) ("[T]he withdrawal of the money to pay taxes … is not a defense to the fraudulent transfer claims."); *In re Bernard L. Madoff Inv. Sec., LLC,* No. 15 Civ. 1151 (PAE), 2016 WL 183492, at *15-16 (S.D.N.Y. 2016) (noting that "BLMIS customers who paid gift, estate, or capital gains taxes on transferred funds based on balances fraudulently inflated by Madoff may suffer the additional slight of not being able to recover . . .the overpaid taxes . . .[but] such consequences, as truly unfortunate as they are for those who shoulder them, do not support deviating from" the Trustee's methodology).

Defendant is "in the same position as many other Madoff victims who paid taxes on fictitious profits, and then were sued by the Trustee as net winners," and he is not entitled, as a matter of law, to any offsets for any taxes paid on transfers from BLMIS.  *Igoin*, 525 B.R. at 885 n.16.

### b.    Defendant Is Not Entitled to Time-Value Adjustments

Defendant's affirmative defense seeking "setoff or other equitable adjustments" for the time-value of money has already been rejected by this Court, the District Court, and the Second Circuit.  (Answer at p. 30 ¶¶ 23-24).

In the *Cohen Decision,* this Court ruled that allowing defendants to "adjust [their] principal deposits by an inflation, interest or some other time-value factor would disregard the well-settled rule[ ] that govern Ponzi scheme litigation," that "a transferee must return transfers in excess of his principal deposits."  2016 WL 1695296, at *14; *see also Silverman v. Cullin* (*In re Agape World, Inc.*), 633 Fed. App'x. 16, 17 (2d Cir. Feb. 4, 2016) (observing that "the

- 23 -

prevailing view in this district and bankruptcy courts in this Circuit has agreed" that "payments

of interest to Ponzi scheme investors should be treated as fraudulent transfers . . .") (internal

quotation omitted)).

    In the *Antecedent Debt Decision*, the District Court ruled that net winner defendants were

not entitled to the payment of interest.  499 B.R. at 422.  Because the District Court had not

withdrawn the reference with respect to this issue, the District Court did not rule on the issue of

whether defendants were entitled to time-based damages as an adjustment to their net equity

claims.  However, the Second Circuit decided this issue in 2015, when it affirmed the

Bankruptcy Court's decision that BLMIS customers were not entitled under SIPA to adjustments

to their claims to account for any form of time-based damages, including those relating to lost

opportunity costs or the consumer price index.  *See Sec. Investor Prot. Corp. v. Bernard L.

Madoff Inv. Sec. LLC,* (*In re Madoff Sec.*), 779 F.3d 74 (2d Cir. 2015) ("*Time-Based Damages

Decision*").  There, the Second Circuit held that "BLMIS customers were not entitled to an

inflation or interest adjustment to their net equity claims because SIPA did not permit it."  *Cohen

Decision,* 2016 WL 1695296, at \*14 (citing *Time-Based Damages Decision,* 779 F.3d at 79-80).

The Second Circuit determined that "an inflation adjustment to net equity claims" would allocate

value to the earlier investors "at the expense of customers who have not yet recovered the

property they placed in Madoff's hands."  *Time-Based Damages Decision,* 779 F.3d at 81.  Thus,

an inflation or other time-based damages adjustment violated SIPA's statutory structure.  *Id*.  The

Second Circuit further determined that such an adjustment also violated the purpose of SIPA,

which was to distribute customer property to customers, not to provide full protection to all

victims of a brokerage's collapse.  *See id*.  ("The purpose of determining net equity under SIPA

is to facilitate the proportional distribution of customer property actually held by the broker, not

to restore to customers the value of the property that they originally invested.").

Although the Second Circuit's *Time-Based Damages Decision* answered a different but

related question involving net equity under SIPA rather than value under section 548(c), the

logic and rationale of the decision all but resolves the question as to value under section 548(c).

As the District Court stated, "a customer's net equity and the amounts sought in avoidance and

recovery proceedings (assuming the customer's good faith) are two sides of the same coin."

*Antecedent Debt Decision*, 499 B.R. at 420.  In both cases, the Trustee nets deposits against

withdrawals: "[a] customer who withdrew less than she deposited over the course of her

investment with Madoff Securities has a net-equity claim and may be entitled to disbursements

from the customer property estate for the amount of that net equity," and customers "who

withdraw more money from their accounts than they deposited" are subject to "avoidance actions

for the amount in excess of their deposits."  *Id.* at 420-21.  Therefore, "the computation of net

equity under SIPA and value under Bankruptcy Code § 548(c) are 'inherently intertwined'" and

there can be no time-value adjustment provided to Defendant.  *Cohen Decision*, 2016 WL

1695296, at *14 (citing *Antecedent Debt Decision*, 499 B.R. at 424).

## III.   THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION 550 OF THE BANKRUPTCY CODE AND SIPA § 78FFF-2(C)(3)

Section 550 of the Bankruptcy Code allows a trustee to recover a transfer of property (or

the value thereof) that has been avoided under section 548(a)(1)(A) of the Bankruptcy Code from

either:  "(1) the initial transferee of such transfer or the entity from whose benefit such transfer

was made; or (2) any immediate or mediate transferee of such initial transfer."  11 U.S.C. §

550(a).  Similarly, SIPA section 78fff-2(c)(3) allows a trustee to "recover any property

transferred by the debtor which, except for such transfer, would have been customer property if

and to the extent that such transfer is voidable or void under the provisions of title 11." 15

U.S.C. § 78fff-2(c)(3). As of the filing date of this liquidation proceeding and to date, BLMIS's

customer property "is not sufficient to pay in full the claims set forth in" SIPA section 78fff-

2(c)(1)(A)–(D), including the claims of customers who have not yet recovered the principal they

lost in the Ponzi scheme.[10] *Id.*

The undisputed record establishes that Defendant is the initial transferee of the Transfers

received from BLMIS during the Two-Year Period. The undisputed record also establishes that

Defendant did not give value in exchange for the fictitious profits, and he provided no evidence

to that end. *See Bayou III,* 396 B.R. at 843-844 (stating that "[o]nce the plaintiffs have

established their fraudulent conveyance claims under Section 548(a), the burden shifts to the

defendants to allege and prove facts to establish their affirmative defense under Section 548(c)").

In fact, the evidence demonstrates no value was provided to BLMIS.

Defendant received the Transfers from BLMIS based upon his purported interest in the

BLMIS Account, and not based on any value provided to BLMIS in exchange for those transfers.

As a result, the Trustee can recover the avoidable transfers from Defendant under section

550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3) for the equitable, *pro rata*

distribution of funds to the defrauded customers of BLMIS with valid customer claims.

---

[10] *See* Trustee's Seventeenth Interim Report For the Period October 1, 2016 Through March 31, 2017, at
4-5, 42-43, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB)
(Bankr. S.D.N.Y. Apr. 27, 2017), ECF No. 15922.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count One of the Trustee's Complaint and enter an order avoiding the transfers of the fictitious profits made by BLMIS through the IA Business to Defendant within the Two-Year Period, and directing Defendant to return such transfers or the value thereof to the Trustee, and awarding the Trustee prejudgment interest.

Dated: New York, New York
      October 2, 2017

BAKER & HOSTETLER LLP

By: */s/ Keith R. Murphy*
    Baker & Hostetler LLP
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Keith R. Murphy
    Email: kmurphy@bakerlaw.com
    Nicholas J. Cremona
    Email: ncremona@bakerlaw.com
    Joshua B. Rog
    Email: jrog@bakerlaw.com

    *Attorneys for Irving H. Picard, Trustee*
    *for the Substantively Consolidated SIPA*
    *Liquidation of Bernard L. Madoff*
    *Investment Securities LLC and the Estate*
    *of Bernard L. Madoff*