**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>      Plaintiff-Appellant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT 1 ATTACHED HERETO,<br><br>      Defendants. | Adv. Pro. Nos. listed on Exhibit 1 Attached Hereto |

**CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S**
**MOTION FOR DISCOVERY ON THE GOOD FAITH ISSUE**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...........................................................3

    A.   The Trustee's Expansive Pre-Litigation Investigations.............................................3

    B.   Relevant Decisions....................................................................................................6

    C.   The Trustee's Motion for Leave to Replead and Discovery......................................7

ARGUMENT .........................................................................................................................8

   I.   The Trustee Is Not Entitled to What Is in Effect Renewed Rule 2004 Discovery ........9

   II.   The Trustee is Not Entitled to the Requested Discovery Under Federal Rule of Civil
       Procedure 26(d)..........................................................................................................15

CONCLUSION.....................................................................................................................29

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

Fed. R. Bankr. P. 7026 ................................................................................................    2

**Cases**

*adMarketplace, Inc. v. Tee Support, Inc.,*
No. 13 Civ. 5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) .....................    21, 28

*Attkisson v. Holder,*
113 F. Supp. 3d 156 (D.D.C. 2015) ........................................................................... 20, 23, 25

*Ayyash v. Bank Al-Madina,*
233 F.R.D. 325 (S.D.N.Y. 2005) ................................................................................    15, 28

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................................................    23, 25

*Breeden v. Aegis Consumer Funding Grp. Inc. (In re Bennett Funding Grp., Inc.),*
259 B.R. 243 (N.D.N.Y. 2001) ...................................................................................    12, 22

*Digital Sin, Inc. v. Does 1-27,*
No. 12 Civ. 3873 (JMF), 2012 WL 2036035 (S.D.N.Y. June 6, 2012).......................    21, 28

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,*
234 F.R.D. 4 (D.D.C. 2006)............................................................................... 16, 17, 22, 23

*Dorrah v. United States,*
282 F.R.D. 442 (N.D. Iowa 2012) .............................................................................    21

*Guttenberg v. Emery,*
26 F. Supp. 3d 88 (D.D.C. 2014) ...............................................................................    24, 25

*In re Drexel Burnham Lambert Grp., Inc.,*
123 B.R. 702 (Bankr. S.D.N.Y. 1991)........................................................................    15

*In re Fannie Mae Derivative Litig.,*
227 F.R.D. 142 (D.D.C. 2005).....................................................................................    24

*In re G-I Holdings, Inc.*,
  313 B.R. 612 (Bankr. D.N.J. 2004) ........................................................................... 10

*In re Glitnir banki hf.*,
  No. 08-14757 (SMB), 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011)............. 9

*In re Hickey*,
  168 B.R. 840 (Bankr. W.D.N.Y. 1994) ...................................................................... 10

*In re Manhattan Inv. Fund Ltd.*,
  397 B.R. 1 (S.D.N.Y. 2007)........................................................................................ 11

*In re Med. Cost Mgmt., Inc.*,
  115 B.R. 406 (Bankr. D. Conn. 1990) ....................................................................... 11

*In re Metro Affiliates, Inc.*,
  No. 02-42560 (PCB), 2008 WL 4057139 (Bankr. S.D.N.Y. Aug. 26, 2008).............. 9

*In re MF Glob. Holdings Ltd.*,
  465 B.R. 736 (Bankr. S.D.N.Y. 2012)........................................................................ 12

*In re Orange Cty. Sanitation, Inc.*,
  221 B.R. 323 (Bankr. S.D.N.Y. 1997)........................................................................ 11

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004)................................................................. 9, 12, 22

*In re Vanderveer Estates Holding, LLC*,
  328 B.R. 18 (Bankr. E.D.N.Y. 2005)........................................................................... 9

*Kanowitz v. Broadridge Fin. Sols., Inc.*,
  No. CV 13–649 (DRH) (AKT), 2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014) .......... 24

*Landwehr v. F.D.I.C.*,
  282 F.R.D. 1 (D.D.C. 2010)........................................................................................ 17

*Leone v. King Pharms., Inc.*,
  No. 2:10-CV-230 (JRG), 2010 WL 4736271 (E.D. Tenn. Nov. 16, 2010) ................. 21

*Levy v. Young Adult Inst., Inc.*,
  No. 13-CV-2861 (JPO), 2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) ......................... 16

*Litwin v. Oceanfreight, Inc.*,
  865 F. Supp. 2d 385 (S.D.N.Y. 2011)......................................................................... 21

*Malibu Media, LLC v. Does 1-5*,
No. 12 Civ. 2950 (JPO), 2012 WL 2001968 (S.D.N.Y. June 1, 2012) ...................... 21, 28

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*,
No. 1:16-CV-02462 (AJN), 2016 WL 2894919 (S.D.N.Y. May 16, 2016) ................. 28

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
194 F.R.D. 618 (N.D. Ill. 2000) ................................................................... 17, 21

*Monsanto Co. v. Woods*,
250 F.R.D. 411 (E.D. Mo. 2008) .................................................................. 28

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) .................................................................. 16–17

*OMG Fidelity, Inc. v. Sirius Techs., Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006) ........................................................... 17, 20, 21

*Pacello v. Jimenez*,
Civ. No. 13-0405-GPC (WVG), 2013 WL 1439697 (S.D. Cal. Apr. 9, 2013) .......... 16, 22, 26

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) ....................................................................... 25

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011) ................................................................. *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
513 B.R. 222 (S.D.N.Y. 2014) ................................................................... 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) .............. 7, 25

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
516 B.R. 18 (S.D.N.Y. 2014) ................................................................. *passim*

*Sheridan v. Oak St. Mort., LLC*,
244 F.R.D. 520 (E.D. Wis. 2007) ................................................................. 28

*Spencer Trask Software & Info. Servs. v. RPost Int'l*,
206 F.R.D. 367 (S.D.N.Y. 2002) ................................................................. 24

*Stern v. Cosby*,
246 F.R.D. 453 (S.D.N.Y. 2007) ................................................................. 28

iv

*Swanson v. Citibank, N.A.,*
614 F.3d 400 (7th Cir. 2010) ...................................................................................    19

**Other Authorities**

9 Collier on Bankruptcy ¶ 2004.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.
2017) ..........................................................................................................................    9

Pursuant to this Court's "July 2017 Scheduling Order,"[1] the defendants listed on Exhibit

2 (the "Transferee Defendants") respectfully submit this consolidated memorandum of law (the

"Consolidated Opposition") in opposition to the Trustee's Omnibus Motion Seeking Leave to

Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery

Pursuant to Fed. R. Civ. P. 26(d)(1) (the "Trustee's Motion for Leave to Replead and Discovery"

or "Motion") solely as it relates to the Trustee's request for discovery relevant to the issue of

good faith under either 11 U.S.C. § 548(c) ("Section 548(c)") or 11 U.S.C. § 550(b) ("Section

550(b)") (the "Good Faith Discovery Issue").[2]

## PRELIMINARY STATEMENT

Almost nine years after his appointment, the Trustee now asks this Court for

extraordinarily broad and far-reaching discovery from the Transferee Defendants—most of

whom are net-losers in Bernard Madoff's fraud.  But for nearly a decade, the Trustee has

conducted exhaustive, worldwide investigations into the scope and reach of Madoff's fraud,

including reviewing voluminous documents that had been in the custody of Bernard L. Madoff

Investment Securities LLC ("BLMIS") as well as discovery from some of the Transferee

Defendants, related third parties, and many initial transferees from whom several Transferee

Defendants are alleged to have received their transfers.  Despite all this discovery, the Trustee

seeks still more discovery in the hope of finding some scintilla of evidence that will allow him to

plead plausible claims against the Transferee Defendants and cure the defects in his complaints

---

[1] The "July 2017 Scheduling Order" is this Court's Order Concerning Further Proceedings on Trustee's
Motion for Leave to Replead and Discovery, July 24, 2017, ECF No. 16428.

[2] Pursuant to the July 2017 Scheduling Order, briefing on whether the Trustee shall be permitted to
replead his complaints to add allegations relevant to the good faith issue (the "Leave to Replead Issue") is
deferred. July 2017 Scheduling Order ¶¶ 1–2, 4.

that he implicitly acknowledges are insufficient. The Trustee is not entitled to the extraordinary relief he seeks.

*First*, as the Trustee cannot dispute, he already utilized (or could have utilized, but chose not to) his broad discovery powers under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") when he was investigating his potential claims against the Transferee Defendants. And, as the Trustee acknowledges, his right to take Rule 2004 discovery expired when he commenced litigation against the Transferee Defendants. The Trustee should not be relieved of the consequences of his strategic choice to file complaints against the Transferee Defendants without first seeking further or different discovery. His current Motion boils down to the assertion that he would have conducted a different Rule 2004 investigation in light of the District Court's Good Faith Decision. But this makes no sense—both before and after the District Court's decision, the issue of good faith was at the heart of any potential claims against the Transferee Defendants, and the Trustee could have, and should have, vigorously pursued documents relating to the Transferee Defendants' knowledge during Rule 2004 discovery. Nothing in the Good Faith Decision gives the Trustee the right to a "second bite" at the discovery apple.

*Second*, Federal Rule of Civil Procedure 26(d)(1) ("Rule 26(d)")[3] does not support the Trustee's request for discovery. The Trustee cannot show reasonableness and good cause—the necessary prerequisites for Rule 26(d) relief. Each of the factors considered by courts in the context of Rule 26(d) undercut the Trustee's requests: there is no pending preliminary injunction, and his requests are unnecessary, overly broad, unduly burdensome, made long before the start of typical discovery, and would delay the administration of justice in these

---

[3] Federal Rule of Civil Procedure 26 is made applicable to these adversary proceedings through Federal Rule of Bankruptcy Procedure 7026. Fed. R. Bankr. P. 7026.

proceedings. The Trustee now asks this Court to create new law unsupported by any precedent that would permit him to return to a 2008 state of affairs and obtain what is akin to broad Rule 2004 discovery after litigation is long underway. The Trustee's request for discovery should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The Trustee's Expansive Pre-Litigation Investigations**

Since 2009, the Trustee has initiated hundreds of adversary proceedings seeking to recover customer property of the BLMIS estate, asserting claims to claw back initial and subsequent transfers under 11 U.S.C. § 548(a) ("Section 548(a)") and 11 U.S.C. § 550(a) ("Section 550(a)"), respectively.

Prior to commencing those adversary proceedings, the Trustee conducted an extraordinarily broad investigation into the circumstances of Madoff's fraud. Immediately following his appointment, the Trustee "collected and reviewed thousands of pages of corporate documents from the BLMIS premises" and conducted "interviews . . . with a number of former employees of BLMIS." Trustee's First Interim Report for the Period Dec. 11, 2008 through June 30, 2009 ¶ 103, July 9, 2009, ECF No. 314 ("Trustee's First Interim Rep."); *see also* Transcript of Hearing Held on Feb. 4, 2009 at 5:25–6:4, Feb. 11, 2009, ECF No. 81 (noting Trustee gained access to over 7,000 boxes containing BLMIS's documents). The Trustee also "conducted numerous forensic analysis of electronic [BLMIS] data" collected from various sources, such as servers, computer hard drives, and loose media (*e.g.*, floppy disks, CDs). Trustee's First Interim Rep. ¶¶ 107–09. In addition, the Trustee had an opportunity to—and did—comprehensively investigate the underlying transactions, the alleged transferees, and the "feeder funds"—*e.g.*, Fairfield Sentry Limited ("Fairfield Sentry"), Kingate Global Fund Limited ("Kingate Global"),

3

and various Rye Select funds (the "Rye Funds")—from which many transferees, including

certain of the Transferee Defendants, allegedly received subsequent transfers.

During his investigation, the Trustee utilized Rule 2004 discovery, obtaining "tens of

millions of documents" from parties ultimately sued by the Trustee and related third parties.

Notice of Trustee's Motion for (I) a Report And Recommendation to the District Court for the

Appointment of Special Discovery Masters; (II) an Order Establishing Procedures for Electronic

Data Rooms; and (III) an Order Modifying the June 6, 2011 Litigation Protective Order ¶ 20,

Aug. 5, 2011, ECF No. 4290 ("Trustee's Mot. for an Order Establishing Procedures for

Electronic Data Rooms"); *see also* Trustee's First Interim Rep. ¶ 90 (as of July 2009, Trustee had

"sent more than 230 subpoenas pursuant to Bankruptcy Rule 2004 seeking documents from

many of the funds and banks"). The Trustee also obtained further information from initial

transferees from whom certain of the Transferee Defendants allegedly received their transfers.

*See, e.g.*, Motion to Approve Compromise at 9–10, *Picard v. Tremont Grp. Holdings Inc.*, No.

10-05310 (Bankr. S.D.N.Y. July 28, 2011), ECF No. 17 ("Mot. to Approve Tremont

Compromise") (noting Trustee's "comprehensive investigation" of the Rye Funds, including

Rule 2004 examinations and a "substantial review of records, documents, and analyses provided

by the [Rye Funds] and third parties"); Motion to Approve Settlement at 10, *Picard v. Fairfield

Sentry Ltd.*, No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69 ("Mot. to Approve

Fairfield Settlement") (noting Trustee's "comprehensive investigation" of the Fairfield Funds,

facilitated by the Fairfield Funds "providing information the Trustee has requested," which

included "review and analysis of both the Fairfield Funds' BLMIS-related transactional histories

as reflected in the BLMIS account statements, correspondence, and other records and documents

available to the Trustee," "interviews with third-party witnesses," and "a substantial review of third-party records and documents").

The Trustee sought Rule 2004 discovery from three of the eighteen Transferee Defendants and, for reasons only known to the Trustee, made a strategic decision not to pursue Rule 2004 discovery from at least thirteen Transferee Defendants.[4] *See* Declaration of Michael S. Feldberg in Support of ABN Amro Bank N.V.'s (*presently known as* the Royal Bank of Scotland N.V.) ("RBS/ABN") Supplemental Memorandum of Law in Opposition to the Trustee's Motion for Pre-Motion-to-Dismiss Discovery, dated Oct. 6, 2017 ("Feldberg Decl."), Exs. A–C (Rule 2004 subpoenas served on Transferee Defendant RBS/ABN);[5] Declaration of Anthony L. Paccione in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue, dated Oct. 6, 2017 ("Paccione Decl."), ¶ 2 (Rule 2004 subpoena served on Transferee Defendant Royal Bank of Canada); Declaration of Bruce M. Ginsberg in Support of Natixis Financial Products LLC's ("Natixis FP") Supplemental Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue, dated Oct. 6, 2017 ("Ginsberg Decl."), Exs. A–B (Rule 2004 subpoenas served on Transferee Defendant Natixis FP);[6] *see also*

---

[4] No information is available regarding whether the Trustee sought Rule 2004 discovery from two of the Transferee Defendants: Equity Trading Fund, Ltd. and Equity Trading Portfolio Ltd.

[5] All declarations by counsel to Transferee Defendants referenced in this Consolidated Opposition will be filed in the main adversary proceeding, 08-01789, as well as the adversary proceeding in which the relevant Transferee Defendant is a party.

[6] Furthermore, the Trustee served Rule 2004 subpoenas on affiliates of four Transferee Defendants, but not the Transferee Defendants themselves. *See* Declaration of Carmine D. Boccuzzi, Jr. in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue, dated Oct. 6, 2017 ("Boccuzzi Decl."), ¶ 3 (Rule 2004 subpoena served on Citigroup Global Markets Holdings, Inc., an affiliate of Transferee Defendants Citibank, N.A. and Citibank North America, Inc. (the "Citi Transferee Defendants")); Declaration of Thomas J. Giblin in Support of the ABN Defendants' Supplemental Memorandum of Law in Support of Defendants' Opposition to the Trustee's Motion for Discovery on the Good Faith Issue, dated Oct. 6, 2017 ("Giblin Decl."), ¶¶ 2, 4 (Rule 2004 subpoena served on Fortis Prime Fund Solutions (USA) LLC, a U.S. affiliate of Transferee Defendants ABN AMRO Bank (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd.). With respect to the Citi Transferee Defendants, the Trustee agreed that the Rule 2004 subpoena served on the affiliated entity did not cover the Rye Fund transfer allegedly made

Declaration of Regina Griffin in Support of the Trustee's Motion for Leave to Replead and

Discovery ("Griffin Declaration"), Ex. C, Aug. 28, 2014, ECF No. 7828-4.[7]

## B.    Relevant Decisions

On April 27, 2014, following a withdrawal of the reference to determine the standard for

the Trustee to show that a defendant did not receive transfers in good faith under Sections 548(c)

or 550(b), the District Court held that "in a SIPA proceeding such as this, a defendant may

succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that

defendant did not act in good faith." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

516 B.R. 18, 24 (S.D.N.Y. 2014) (the "Good Faith Decision").  Under the Good Faith Decision,

to avoid and recover initial transfers under Section 548(a) and subsequent transfers under Section

550(a), the Trustee bears the burden of pleading in his complaint "particularized allegations that

the defendants here either knew of Madoff Securities' fraud or willfully blinded themselves to

it." *Id.*  The Trustee sought leave to file an interlocutory appeal of the Good Faith Decision,

which the District Court denied.  Order Denying Motion for Leave to File Interlocutory Appeal,

*In re Madoff Sec.*, No. 12-mc-00115 (S.D.N.Y. July 21, 2014), ECF No. 555.

Shortly after the Good Faith Decision, the District Court held, *inter alia*, that Section

550(a) does not apply extraterritorially.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

---

to the Citi Transferee Defendants. Boccuzzi Decl. ¶ 5.  The Trustee subsequently sought to conduct a Rule 2004 examination of a Citi employee concerning that Rye Fund transfer, but cancelled the deposition just weeks before filing his complaint against the Citi Transferee Defendants. *Id.* ¶¶ 8–9.

[7] In the papers supporting his Motion, the Trustee provides information on the number of documents purportedly produced by some of the Transferee Defendants. *See* Griffin Decl., Exs. C-1, C-2; *compare* Griffin Decl., Ex. C-2 (noting defendant RBS/ABN produced five documents), *with* Feldberg Decl. ¶ 6 (noting defendant RBS/ABN produced 944 documents).  The Trustee identifies Transferee Defendants from whom the Trustee claims he received limited or no productions, Griffin Decl., Exs. C-1, C-2, when, in fact, the Trustee did not serve certain of those Transferee Defendants with Rule 2004 requests, *see supra* at 5.  The Trustee provides no information for six of the Transferee Defendants. *See* Griffin Decl., Exs. C-1, C-2.

*LLC*, 513 B.R. 222, 231–32 (S.D.N.Y. 2014) (the "Extraterritoriality Decision"). In the

Extraterritoriality Decision, the District Court rejected the Trustee's argument that he should

have the opportunity to engage in "additional fact-gathering . . . to determine where the transfers

took place," and returned the relevant proceedings to the Bankruptcy Court with instructions to

dismiss those actions where the Trustee is unable to "put forth specific facts suggesting a

domestic transfer." *Id.* at 232 n.4. Following further proceedings in accordance with the

Extraterritoriality Decision, this Court dismissed Section 550(a) claims on comity and/or

extraterritoriality grounds against all or certain defendants in approximately 86 adversary

proceedings. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB),

2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016); *see also* Pet. of Appellant Irving H. Picard

for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A), Ex. 1, *In re: Bernard L. Madoff*

*Inv. Sec., LLC*, No. 17-1294 (2d Cir. Apr. 28, 2017), ECF No. 1-1.

## C.    The Trustee's Motion for Leave to Replead and Discovery

On August 28, 2014, shortly after the Good Faith Decision was issued, the Trustee filed

the present Motion, seeking, *inter alia*, a court order authorizing "limited" discovery relevant to

the issue of the Transferee Defendants' alleged knowledge of BLMIS's fraud (the "Good Faith

Issue") in 77 adversary proceedings. Trustee's Notice of Motion for Leave to Replead and

Discovery, Aug. 28, 2014, ECF No. 7826 ("Trustee's Mot."); *id.* at Ex. 3. The Trustee's

proposed requests seek a litany of documents, including "[d]ocuments concerning the review,

analysis, due diligence and ongoing monitoring of actual and prospective investments and

transactions involving BLMIS, Feeder Funds or BLMIS-Related Investment Products";

"documents discussing trading activity, or performance or purported returns"; "account

statements, trade tickets, or any summary of the same"; "regulatory filings"; documents

7

concerning "fraud," "illegality," or "investigations"; documents concerning fees and

remuneration; and documents concerning the evaluation and approval of transactions.  Griffin

Decl., Ex. D.[8]

While the Trustee's Motion initially sought discovery on the Good Faith Issue from

defendants in 77 adversary proceedings, *see* Trustee's Mot., Ex. 3, the Trustee now seeks such

discovery from eighteen Transferee Defendants in thirteen actions.[9]  Of the eighteen Transferee

Defendants, five defendants allegedly received initial transfers directly from BLMIS and twelve

allegedly received subsequent transfers from ten different initial transferees (many of which have

produced voluminous documents to the Trustee), including Fairfield Sentry, Kingate Global, and

various Rye Funds.

## ARGUMENT

The Trustee contends that he should be entitled to take discovery now on the Good Faith

Issue because the Good Faith Decision "retroactively imposes upon the Trustee a pleading

burden with respect to the affirmative defense of 'good faith' that he did not have when he

initially investigated and commenced his actions."  Trustee's Memorandum of Law in Support of

Omnibus Motion for Leave to Replead and Discovery ("Trustee's Mem.") at 23.  The Trustee's

argument is without merit because the Good Faith Decision did not change the law relevant to

discovery that could have been pursued by the Trustee —it clarified that the burden of pleading

lack of good faith rests with the Trustee in a SIPA proceeding.  And even if the Good Faith

---

[8] The Trustee also sought leave to replead in 87 adversary proceedings.  Trustee's Mot., Ex. 2.

[9] *See* July 2017 Scheduling Order, Ex. A (listing fourteen adversary proceedings); Stipulated Order Withdrawing Banque Syz & Co., SA from Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and Discovery, *Picard v. Banque Syz & Co.*, No. 11-02149 (Bankr. S.D.N.Y. July 26, 2017), ECF No. 122 (dismissing one of the actions listed in Exhibit A to the July 2017 Scheduling Order).

Decision did effectuate a change in the law, that does not permit the Trustee to take the requested

discovery under either Rule 2004 or Rule 26(d).

## I.    The Trustee Is Not Entitled to What Is in Effect Renewed Rule 2004 Discovery

It is undisputed that a debtor's right to take Rule 2004 discovery ends upon the filing of

an adversary proceeding.[10] *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004)

("Rule 2004 examinations are . . . not generally permitted once an adversary proceeding has been

filed."); *see also* 9 Collier on Bankruptcy ¶ 2004.01 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2017) ("[I]f an adversary proceeding or contested matter is pending, the discovery

devices provided for in Rules 7026-7037, which adopt various discovery provisions of the

Federal Rules of Civil Procedure, apply and Rule 2004 should not be used.").

Here, the Trustee's discovery requests are for all intents and purposes yet another Rule

2004 request. Because the Trustee could have sought this discovery under Rule 2004, his

requests should be denied. *See In re Metro Affiliates, Inc.*, No. 02-42560 (PCB), 2008 WL

4057139, at *9 (Bankr. S.D.N.Y. Aug. 26, 2008) (denying request for additional discovery where

movant "could have sought to take [discovery] under Bankruptcy Rule 2004"); *In re Vanderveer

Estates Holding, LLC*, 328 B.R. 18, 29 (Bankr. E.D.N.Y. 2005) (denying request for additional

discovery where movant "could have sought this discovery pursuant to Bankruptcy Rule 2004"),

*aff'd sub nom. Am. Safety Indem. Co. v. Official Comm. of Unsecured Creditors*, No. 05 CV

5877 (ARR), 2006 WL 2850612 (E.D.N.Y. Oct. 3, 2006). The Trustee's arguments to the

contrary are unavailing.

---

[10] This is known as the "pending proceeding" rule. *See, e.g., In re Glitnir banki hf.*, No. 08-14757 (SMB),
2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011) (Rule 2004's "'pending proceeding' rule
reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004
rather than civil discovery to obtain documents or information relevant to the lawsuit." (citation omitted)).

*First*, while the Trustee makes much of the purported "change in law" represented by the Good Faith Decision, there was no change relevant to discovery that could have been pursued by the Trustee. The Good Faith Decision clarified that, unlike "in the context of an ordinary bankruptcy proceeding," Good Faith Decision at 24, where "'good faith' appears to be an affirmative defense that must be in the first instance pleaded by defendants," *id.* at 23, "in a SIPA proceeding such as this," the burden of pleading lack of good faith rests with the Trustee. *Id.* at 24. In doing so, the District Court rejected the Trustee's approach, which "look[ed] at the question simply in terms of the Bankruptcy Code, without reference to SIPA or other considerations." *Id.* at 23; *see also Picard v. Katz*, 462 B.R. 447, 455 (S.D.N.Y. 2011) (in the "context of a SIPA trusteeship . . . bankruptcy law is informed by federal securities law"). The District Court also denied the Trustee's request to certify the Good Faith Decision for interlocutory appeal, noting that granting the certification requires "that the district judge 'be of the opinion' (i) that the '[Good Faith Decision] involves a controlling question of law as to which there is substantial ground for difference of opinion.'" Good Faith Decision at 25 (citing 28 U.S.C. § 1292(b)).

The Good Faith Decision is in fact consistent with the law in other districts at the time it was issued, undermining the Trustee's principal argument that it represented a break in the law. *See, e.g.*, *In re G-I Holdings, Inc.*, 313 B.R. 612, 645 (Bankr. D.N.J. 2004) ("In order to recover from [the] mediate or immediate transferees, the Committee has the burden of proving that [the mediate or immediate transferees], or both, did not take the transfer for value and in good faith, and that they had knowledge of the voidability of the transfer."); *In re Hickey*, 168 B.R. 840, 850 (Bankr. W.D.N.Y. 1994) ("The trustee has the burden of proving that the defendant should not have the benefit of the shelter provided by Section 550(b)(1) because the defendant did not take

10

the transfer for value and in good faith and that he had knowledge of the voidability of the transfer."); *In re Med. Cost Mgmt., Inc.*, 115 B.R. 406, 409 (Bankr. D. Conn. 1990) ("[T]he plaintiff has the burden of proving that [the subsequent transferee] did not take the transfer for value and in good faith, and that he had knowledge of the voidability of the transfer."). The fact that the Trustee misinterpreted the applicable law during Rule 2004 discovery does not justify the extraordinary relief he seeks here.

*Second*, even if the Good Faith Decision did effectuate a change in law, the Trustee cites no authority for the proposition that a change of law following the completion of Rule 2004 discovery provides any basis for additional discovery on top of the "tens of millions of documents" he has already received. Trustee's Mot. for an Order Establishing Procedures for Electronic Data Rooms ¶ 20.

*Third*, the Trustee's request fails because good faith—however defined and regardless of which party bore the burden of pleading—*has always been an issue central to these cases*. The Trustee could succeed on Sections 548(a) and 550(a) claims only if he could defeat the good faith defense available under Sections 548(c) and 550(b), respectively. *See, e.g.*, *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 22 (S.D.N.Y. 2007) ("[T]he Trustee is not entitled to recover the transfers if [the initial transferee] can establish that it accepted the funds in good faith." (citing Section 548(c))); *In re Orange Cty. Sanitation, Inc.*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997) ("Trustee's right to recover . . . is limited by § 550(b), which prohibits recovery from a subsequent transferee who takes (1) for value, (2) in good faith, and (3) without knowledge of the voidability of the transfer.").

Because the Transferee Defendants' knowledge was central to the Trustee's examination of the relevant transfers and his assessment of whether he had valid avoidance/recovery claims

against the Transferee Defendants, good faith was an issue that the Trustee should have pursued, and in some cases did pursue, in the context of his Rule 2004 discovery. *See In re Recoton*, 307 B.R. at 755 (Rule 2004 available to assist in "revealing assets, examining transactions and assessing whether wrongdoing has occurred" (citation omitted)). In fact, the Trustee had a fiduciary responsibility to thoroughly investigate the merits of his potential claims against the Transferee Defendants—which included an assessment of the Transferee Defendants' good faith—prior to devoting BLMIS estate resources to pursuing those claims. *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 743–44 (Bankr. S.D.N.Y. 2012) ("[T]he SIPA Trustee has a duty to investigate . . . any causes of action available to the estate" (citation and internal quotation marks omitted)); *Breeden v. Aegis Consumer Funding Grp. Inc. (In re Bennett Funding Grp., Inc.)*, 259 B.R. 243, 251 (N.D.N.Y. 2001) ("The bankruptcy estate is composed of limited resources which the Trustee has an obligation to maintain and conserve.").

The Court should reject the Trustee's suggestion that he somehow limited his investigation once he concluded that he had satisfied his preferred inquiry notice standard of good faith, rather than seeking additional documents reflective of willful blindness. *See* Trustee's Mem. at 4 ("[E]ven though it was not his pleading burden, the Trustee and his counsel firmly believed that the documents available to them were more than sufficient to satisfy the then-applicable 'inquiry notice' standard regarding the defendants' lack of good faith."). This distinction makes no sense because the Trustee should have requested the same universe of documents—documents going to the Transferee Defendants' knowledge—regardless of whether good faith was defined as inquiry notice or willful blindness.

Moreover, the Trustee's argument that he limited his investigation is belied by his conduct. The Trustee's pre-litigation worldwide investigation was broad ranging and did seek

12

documents related to defendants' knowledge. The Trustee received "tens of millions of documents" from parties ultimately sued by the Trustee and related third parties—including initial transferees of certain of the Transferee Defendants, such as the Rye Funds, *see* Mot. to Approve Tremont Compromise at 9–10—which should have encompassed documents reflecting interactions with the Transferee Defendants. The Trustee also issued Rule 2004 subpoenas in 2009, long before the Good Faith Decision, that sought documents reflective of potential defendants' knowledge of the BLMIS fraud. *See, e.g.*, Boccuzzi Decl., Ex. 1 at 9–11 (Rule 2004 subpoena seeking, *inter alia*, documents related to "due diligence" on BLMIS, "opinions, research or advice" on BLMIS investments, "legality of BLMIS operations," "feasibility of BLMIS returns," and any "investigation of BLMIS"); Ginsberg Decl., Ex. A at Request Nos. 21–23, 38, 42–44, 49–50 (Rule 2004 subpoena seeking, *inter alia*, documents related to "due diligence," "legality," and "opinions, research or advice" of BLMIS); Giblin Decl., Ex. A ¶¶ 28, 32, 34 (Rule 2004 subpoena seeking, *inter alia*, documents relating to "due diligence of Madoff," "references to consistency of returns, guaranteed returns, . . . Ponzi schemes, fraud or fraudulent schemes" in connection with BLMIS, and any "investigation or litigation by a U.S. or foreign regulatory authority or law enforcement concerning Madoff"); Paccione Decl., Ex A at 4, 6–7 (Rule 2004 subpoena seeking, *inter alia*, documents related to "investments in shares of any Fund with a BLMIS Account," "documents concerning any due diligence . . . conducted . . . concerning BLMIS," and "documents concerning the legality of BLMIS' operations").

The Trustee also had access to BLMIS's electronic data pulled from BLMIS's computer hard drives and servers, which provided another mechanism for the Trustee to obtain documents reflective of the Transferee Defendants' alleged knowledge. *See* Trustee's First Interim Rep. ¶¶ 107–09. Moreover, in the two years immediately following the Trustee's appointment, the

13

Trustee and his counsel sought more than $140 million in fees for nearly 500,000 hours of work related to the BLMIS estate,[11] a significant amount of which was dedicated to the "Trustee's investigation,"[12] including "discovery of and recovery of various assets," Baker's First Fee Appl. ¶ 17, "[r]eview of account information," id., "investigation" of "Madoff-related parties," Trustee's and Baker's Fourth Fee Appl. ¶ 38, issuance of "hundreds" of subpoenas and reviewing responses, and conducting Rule 2004 examinations. Id.

Despite all this discovery, the Trustee now claims to be dissatisfied with the fact that, approximately seven years ago, certain of the Transferee Defendants "produced no documents to the Trustee, or in very few instances made minimal productions or produced materials not

---

[11] See First Appl. Irving H. Picard, Trustee, for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Dec. 15, 2008 through Apr. 30, 2009 ¶ 25, July 10, 2009, ECF No. 320 ("Trustee's First Fee Appl."); First Appl. Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Dec. 15, 2008 through Apr. 30, 2009 ¶ 25, July 10, 2009, ECF No. 321 ("Baker's First Fee Appl."); Second Appl. Irving H. Picard, Trustee, for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred May 1, 2009 through Sep. 30, 2009 ¶ 41, Nov. 23, 2009, ECF No. 998 ("Trustee's Second Fee Appl."); Second Appl. Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred May 1, 2009 through Sep. 30, 2009 ¶ 76, Nov. 23, 2009, ECF No. 1010 ("Baker's Second Fee Appl."); Third Appl. Irving H. Picard, Trustee, for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Oct. 1, 2009 through Jan. 31, 2010 ¶ 43, Apr. 9, 2010, ECF No. 2188 ("Trustee's Third Fee Appl."); Third Appl. Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Oct. 1, 2009 through Jan. 31, 2010 ¶ 79, Apr. 9, 2010, ECF No. 2189 ("Baker's Third Fee Appl."); Fourth Appl. Trustee and Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Feb. 1, 2010 through May 31, 2010 ¶ 124, Aug. 20, 2010, ECF No. 2883 ("Trustee's and Baker's Fourth Fee Appl."); Fifth Appl. Trustee and Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred June 1, 2010 through Sep. 30, 2010 ¶¶ 130, 153, Nov. 10, 2010, ECF No. 3207 ("Trustee's and Baker's Fifth Fee Appl."); Sixth Appl. Trustee and Baker & Hostetler LLP for Allowance Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred Oct. 1, 2010 through Jan. 31, 2011 ¶¶ 174, 200, Apr. 18, 2011, ECF No. 4022 ("Trustee's and Baker's Sixth Fee Appl.").

[12] See Baker's First Fee Appl., Ex. D; Baker's Second Fee Appl., Ex. D; Baker's Third Fee Appl., Ex. D; Trustee's and Baker's Fourth Fee Appl., Ex. E; Trustee's and Baker's Fifth Fee Appl., Ex. E; Trustee's and Baker's Sixth Fee Appl., Ex. E.

relevant to the issue of their good faith," suggesting that certain Transferee Defendants did not

respond adequately to his Rule 2004 discovery requests. Trustee's Mem. at 4.  In reality, the

Trustee decided not to seek Rule 2004 discovery from at least thirteen of the eighteen Transferee

Defendants,[13] despite his expansive powers under Rule 2004 to conduct a virtually unfettered

investigation and pursue discovery from the Transferee Defendants regarding the transfers at

issue.  *See In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991)

(Rule 2004 discovery likened to a "fishing expedition").  As to the few Transferee Defendants

from whom the Trustee did seek Rule 2004 discovery, if the Trustee felt that their productions

were inadequate, his remedy was to vigorously pursue his rights under Rule 2004 discovery prior

to initiating suit, including seeking an order compelling production from this Court, which

retained jurisdiction "with respect to all matters relating to the interpretation or implementation

of [the order granting the Trustee authority to issue Rule 2004 subpoenas.]"  Order Granting

Authority to Issue Subpoenas for the Production of Documents and the Examination of

Witnesses ¶ 10, Jan. 12, 2009, ECF No. 31.  The Court should not grant the Trustee the

extraordinary relief he seeks because he is unhappy with the strategic choices he made years ago.

## II.    The Trustee is Not Entitled to the Requested Discovery Under Federal Rule of Civil Procedure 26(d)

Even if the Trustee were not precluded from a second bite at Rule 2004 discovery, the

Trustee has also not demonstrated his entitlement to the requested discovery on the Good Faith

Issue under Rule 26(d) as a matter of "reasonableness and good cause" as applied by courts in

this district.  *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (noting court

---

[13] In fact, with respect to the Citi Transferee Defendants, the Trustee cancelled a potentially relevant Rule 2004 examination, instead opting to file suit knowing full well that by commencing litigation, his Rule 2004 powers would expire.  Boccuzzi Decl. ¶¶ 8–9.

should "examine the discovery request [] on the entirety of the record to date and the

reasonableness of the request in light of all of the surrounding circumstances" (emphasis

omitted) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D.

Ill. 2000))); *see also Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit

Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006) ("Under the reasonableness test, courts consider the

reasonableness of the request in light of the entire record to date and all of the surrounding

circumstances." (citation omitted)).

In assessing the reasonableness of a request for discovery prior to a Rule 26(f)

conference, courts typically consider the following factors: (1) "whether a preliminary

injunction is pending," *Disability Rights*, 234 F.R.D. at 6; (2) "the proponent's need or purpose

for requesting the discovery," Trustee's Mem. at 21; *see also Disability Rights*, 234 F.R.D. at 6;

(3) "the breadth of the discovery requests," Trustee's Mem. at 21; *see also Disability Rights*, 234

F.R.D. at 6; (4) "the burden on the defendants to comply with the requests," Trustee's Mem. at

21; *see also Disability Rights*, 234 F.R.D. at 6; (5) "how far in advance of the typical discovery

process the request was made," *Disability Rights*, 234 F.R.D. at 6 (citation and internal quotation

marks omitted); and (6) "consideration of the administration of justice," Trustee's Mem. at 21;

*see also Pacello v. Jimenez*, Civ. No. 13-0405-GPC (WVG), 2013 WL 1439697, at *2 (S.D. Cal.

Apr. 9, 2013). Taking these factors into account, the Trustee has failed to show that he is entitled

to the requested discovery.[14]

---

[14] In a footnote, the Trustee recognizes the "more stringent, four-part analysis set forth in *Notaro v. Koch*,
95 F.R.D. 403, 405 (S.D.N.Y. 1982), to determine whether discovery is warranted under Rule 26(d)(1),"
but wrongly contends that "more recent cases in this District have rejected this stricter approach."
Trustee's Mem. at 20 n.13. The *Notaro* test is alive and well in this district. *See, e.g., Levy v. Young
Adult Inst., Inc.*, No. 13-CV-2861 (JPO), 2015 WL 170442, at *11 (S.D.N.Y. Jan. 13, 2015) (denying
request for discovery under *Notaro* test). Like the standard for obtaining a preliminary injunction, the
*Notaro* test requires the party requesting discovery to show, *inter alia*, that he will suffer an "irreparable
injury" if the discovery is not granted as well as a likelihood of success on the merits. *Notaro*, 945 F.R.D.

### 1.    No Preliminary Injunction is Pending

The *Disability Rights* factor—"whether a preliminary injunction is pending," *Disability*

*Rights*, 234 F.R.D. at 6—omitted from the Trustee's brief weighs against the Trustee's request

because there is no preliminary injunction at issue. *Cf.* Fed. R. Civ. P. 26(d) advisory

committee's note (suggesting early discovery "will be appropriate" in cases "involving requests

for preliminary injunction"); *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300 (N.D.N.Y.

2006) (cited by Trustee) (limited discovery granted in contemplation of motion for preliminary

injunction). This factor is important as it stresses that discovery pursuant to Rule 26(d) is

appropriate only in unusual circumstances, such as in the context of a preliminary injunction, and

not for the type of merits discovery the Trustee seeks here.

### 2.    The Trustee Has Failed to Show a Need for Discovery

The Trustee cannot obtain the requested discovery without a "*prima facie* showing of the

*need* for the . . . discovery." *Merrill Lynch*, 194 F.R.D. at 623; *see also Disability Rights*, 234

F.R.D. at 6. The Trustee makes no such showing.

Instead, the Trustee contends that he "need[s]" the requested discovery because the Good

Faith Decision "retroactively imposes upon the Trustee a pleading burden with respect to an

affirmative defense of 'good faith' that he did not have when he initially investigated and

commenced his actions." Trustee Mem. at 22. But that is not true. As discussed *supra* Point I,

the Good Faith Decision confirmed the appropriate burden of pleading for good faith in the

---

at 405 & n.4 (requirements to obtain Rule 26(d) discovery "parallel those showings necessary to obtain a
preliminary injunction"). Despite his assertion that "even were [the *Notaro*] test applicable, the relief
requested is appropriate for all of the same reasons set forth herein," Trustee's Mem. at 20 n.13, the
Trustee's request must also be denied under the *Notaro* test because he has failed to show any irreparable
injury or a likelihood of success on the merits. *See Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010)
(holding plaintiffs "clearly have not satisfied the *Notaro* test" because they "failed to identify any
irreparable injury they will suffer absent expedited discovery and did not address their likelihood of
success on the merits").

context of a SIPA proceeding, and good faith was always an issue in these cases, however articulated.  Good Faith Decision at 23; *see also Katz*, 462 B.R. at 455.

The Trustee's failure to exercise his rights under Rule 2004 is not a legitimate need justifying the requested Rule 26(d) discovery because the appropriate remedy was to utilize his Rule 2004 powers prior to commencing litigation, not to subject the Transferee Defendants to new, burdensome discovery.  The Trustee does not cite a single case where discovery was granted under Rule 26(d) in order to discover facts to fortify an amended complaint or satisfy a plaintiff's pleading burden or a standard of knowledge.  That is because discovery is not appropriate in these circumstances.[15]

Nor should the Trustee be granted the requested discovery due to alleged "information inequities" stemming from the fact that the Trustee was not a party to the relevant transactions.  Trustee's Mem. at 23.  If anything, any "information inequity" cuts against the Trustee, who has taken "comprehensive" discovery of numerous related parties.  Mot. to Approve Tremont Compromise at 9; Mot. to Approve Fairfield Settlement at 10.  For example, of the twelve Transferee Defendants that are subsequent transferees, eleven allegedly received transfers from one of the Rye Funds,[16] concerning which the Trustee conducted a "comprehensive

---

[15] *Cf.* Fed. R. Civ. P. 26(d) advisory committee's note (suggesting early discovery "will be appropriate" in cases "involving . . . motions challenging personal jurisdiction").

[16] *See* Compl. at 48–49, *Picard v. Citibank, N.A.*, No. 10-05345 (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1-1 ("Citi Compl.") (defendants Citibank N.A. and Citibank North America, Inc.); Am. Compl. at 58–66, *Picard v. ABN AMRO Bank, N.A. (Royal Bank of Scotland)*, No. 10-05354 (Bankr. S.D.N.Y. Aug. 8, 2012), ECF No. 47 ("Amended ABN AMRO Compl.") (defendant ABN AMRO Bank N.A.); Am. Compl. at 40–44, *Picard v. ABN AMRO Bank (Ireland) Ltd.*, No. 10-05355 (Bankr. S.D.N.Y. July 3, 2012), ECF No. 42 (defendants ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN AMRO Retained Custodial Services (Ireland) Limited) and ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.)); Compl. at 12–13, *Picard v. Mistral (SPC)*, No. 12-01273 (Bankr. S.D.N.Y Apr. 5, 2012), ECF No. 1 (defendant Mistral (SPC)); Compl. at 12–13, *Picard v. Zephyros Limited*, No. 12-01278 (Bankr. S.D.N.Y. Apr. 5, 2012), ECF No. 1 (defendant Zephyros Limited); Compl. at 20–22, *Picard v. Banque Internationale à Luxembourg S.A.*, No. 12-01698 (Bankr. S.D.N.Y. June 6, 2012), ECF No. 1 ("Banque

investigation," including Rule 2004 examinations and a "substantial review of records,

documents, and analyses provided by the [Rye Funds] and third parties." Mot. to Approve

Tremont Compromise at 10; *see also id.*, Ex. A, ECF No. 17-1. Similarly, with respect to the

Fairfield Funds, from which the Trustee alleges that three of the Transferee Defendants received

subsequent transfers of BLMIS customer property,[17] the Trustee also conducted a

"comprehensive investigation," during which the Fairfield Funds "provid[ed] information the

Trustee requested." Mot. to Approve Fairfield Settlement at 10.

Even assuming any "information inequity" suffered by the Trustee, the law he cites does

not support the relief he seeks. *See* Trustee's Mem. at 23 (citing *Swanson v. Citibank, N.A.*, 614

F.3d 400, 412 (7th Cir. 2010) (Posner, J., dissenting)). The dissenting opinion from Judge

Posner in a Seventh Circuit case not involving a discovery request is a far cry from compelling

authority, and actually supports the Transferee Defendants. What Judge Posner said in his

dissent in *Swanson* (where his view was that the majority should have affirmed in its entirety the

district court's dismissal of the entire complaint at issue in the appeal) is that discovery may be

appropriate where "the plaintiff shows that he can't conduct an even minimally adequate

investigation." 614 F.3d at 412. Here, the Trustee had years of expansive Rule 2004

discovery—certainly more than a "minimally adequate investigation," *id.*—upon which he relied

when drafting the hundreds of complaints he filed against the Transferee Defendants and others.

---

Internationale Compl.") (defendant RBC Dexia Investor Services Trust); Compl. at 21–26, *Picard v. Royal Bank of Canada*, No. 12-01699 (Bankr. S.D.N.Y. June 6, 2012), ECF No. 1 ("RBC Compl.") (defendants Guernroy Limited, RBC Alternative Assets, L.P., and Royal Bank of Canada).

[17] *See* Banque Internationale Compl. at 15–16 (defendant RBC Dexia Investor Services Trust); RBC Compl. at 16–17 (defendants Guernroy Limited and Royal Bank of Canada).

### 3.    The Trustee's Requests Are Overly Expansive

To demonstrate the reasonableness of his request for discovery under Rule 26(d), the Trustee also must show that his requests are "exceedingly pointed." *OMG Fidelity*, 239 F.R.D. at 305. Far from being "exceedingly pointed," or "limited in scope" as the Trustee contends, Trustee's Mem. at 24, the Trustee's requests are, in fact, unduly broad.

*First*, the Trustee's requested discovery on the Good Faith Issue is not tailored to achieve a permissible purpose for Rule 26(d) discovery. Instead, the Trustee seeks discovery that would substantially advance the merits of his claims, rendering it wholly inappropriate for Rule 26(d) discovery. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 163 (D.D.C. 2015) ("[W]hen a plaintiff's discovery requests would go to the heart of the case, such that they become discovery that seeks to prove an element of the plaintiffs' case, a request for expedited discovery is inappropriate." (citing *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014))); *see also* Transcript of Oct. 28, 2015 Hearing at 102:12–15, *Picard v. Estate of Mendelow*, No. 10-04283 (Bankr. S.D.N.Y. Nov. 23, 2016), ECF No. 85 ("Mendelow Transcript") (Court noting "concern" that discovery taken "before [the Trustee has] a legally sufficient claim" might be used "to bolster the allegations which is exactly what you're not supposed to do").

*Second*, rather than reflecting that the Trustee has "consciously narrowed the scope" of his discovery requests to "reduce any potential burden" to the Transferee Defendants, as the Trustee claims, Trustee's Mem. at 24, the Trustee's proposed document requests essentially cover everything related to the relevant transfers—not just the Good Faith Issue. *See, e.g.*, Griffin Decl., Ex. D (requesting "documents concerning the review, analysis, due diligence and ongoing monitoring of actual and prospective investments and transactions involving BLMIS, Feeder Funds or BLMIS-Related Investment Products," including "documents discussing trading

20

activity, or performance or purported returns"; "account statements, trade tickets, or any

summary of the same"; "regulatory filings"; documents concerning fees and remuneration; and

documents concerning the evaluation and approval of transactions). The Trustee's requests are

not "exceedingly pointed," *OMG Fidelity*, 239 F.R.D. at 305, but overbroad and unreasonable,

*see Litwin v. Oceanfreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) ("The sheer volume

and breadth of plaintiff's discovery requests further renders them unreasonable."), and are

"nothing more than a fishing expedition." *Leone v. King Pharms., Inc.*, No. 2:10-CV-230 (JRG),

2010 WL 4736271, at *3 (E.D. Tenn. Nov. 16, 2010) (denying discovery request where plaintiff

failed to show a need for discovery).

Whether the Trustee's requested discovery is limited compared to what "he would

otherwise have been entitled to under Rule 2004," Trustee's Mem. at 25, is irrelevant. As the

Trustee concedes, his "ability to take Rule 2004 discovery from the defendants ceased years

ago," *id.*, and the reasonableness of his request must be evaluated within the context of Rule

26(d), under which early discovery is decidedly "not the norm." *Merrill Lynch*, 194 F.R.D. at

623. Because they are not "exceedingly pointed," *OMG Fidelity*, 239 F.R.D. at 305, the

Trustee's requests should be denied. *Cf. adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ.

5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) (discovery granted for limited issue

of identifying potential defendants); *Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873 (JMF),

2012 WL 2036035 (S.D.N.Y. June 6, 2012) (same); *Malibu Media, LLC v. Does 1-5*, No. 12 Civ.

2950 (JPO), 2012 WL 2001968 (S.D.N.Y. June 1, 2012) (same); *see also Dorrah v. United

States*, 282 F.R.D. 442 (N.D. Iowa 2012) (granting two discovery requests that required yes or

no answers, while denying remaining overbroad discovery request).

4.    **The Trustee's Request Would Impose a Significant and Unjustified Burden on the Transferee Defendants**

The Trustee must also demonstrate that the requested discovery does not impose a burden on the Transferee Defendants. *See Disability Rights*, 234 F.R.D. at 6; *see also Pacello*, 2013 WL 1439697, at *2 (denying plaintiff's request for discovery where it "would subject Defendants to the costs of researching, collecting and producing documents . . . which may never be discoverable in this action"). The Trustee's contention that his requests are not burdensome because they are "narrowly tailored," Trustee's Mem. at 26, is without merit. *See supra* Point II.3.

Furthermore, the Trustee's suggestion that the Transferee Defendants would not be prejudiced because his current requests seek less than what he would have been entitled to under Rule 2004, Trustee's Mem. at 25–26, amounts to an unworkable standard that would vitiate the pending proceeding rule, which exists to subject parties to "the [discovery] restrictions [that apply] in the context of adversary proceedings." *In re Bennett Funding Grp., Inc.*, 203 B.R. at 28; *see also In re Recoton*, 307 B.R. at 755 ("[G]reater protections of [the Federal Rules of Civil Procedure]" apply "once an adversary proceeding has been filed"). These restrictions would be meaningless if the Trustee were able to use the prior existence of his Rule 2004 discovery powers to justify the granting of discovery under Rule 26(d) after he commenced litigation.

In any event, the Transferee Defendants would be significantly burdened by the Trustee's discovery requests, as responding to the requests would require the Transferee Defendants to incur substantial costs to gather responsive documents, some ten years old or more at this point. The Trustee wrongly contends that the requested discovery would not be burdensome in part because "discovery provided at this stage will reduce the defendants' production obligations during pre-trial discovery." Trustee's Mem. at 26. However, this assumes that most or all of

22

these adversary proceedings will reach pre-trial discovery, an assumption that is highly suspect, particularly in light of the Trustee's implicit concession that his current complaints are deficient.

> **5.    The Trustee's Discovery Requests Are Made Far in Advance of the Typical Discovery Process, Which May Never Occur**

Courts generally do not grant requests for discovery under Rule 26(d) that are made "far in advance of the typical discovery process." *Disability Rights*, 234 F.R.D. at 6; *see also Attkisson*, 113 F. Supp. 3d at 165 (in assessing reasonableness, courts consider "the timing of the motion for expedited discovery, in particular how long before the normal discovery process the motion comes"). While the Trustee makes no mention of it in his brief, this factor weighs heavily against granting the Trustee's discovery requests.

As an initial matter, permitting the Trustee to proceed with discovery on the Good Faith Issue now would undermine the District Court's rationale for placing the good faith pleading burden on the Trustee—to spare transferees without knowledge of BLMIS's fraud the burden of having to prove good faith. *See* Good Faith Decision at 23–24; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (pleading of plausible claim necessary to prevent plaintiff with "largely groundless claim" from "tak[ing] up the time of a number of other people" and court must "insist upon some specificity in pleading" before allowing expensive fact discovery to proceed (citations omitted)).

Furthermore, requiring the Transferee Defendants to participate in discovery at this juncture would be particularly burdensome given the defenses available to the Transferee Defendants. *See* Good Faith Decision at 21, 23; *Katz*, 462 B.R. at 455. Most, if not all, of the Transferee Defendants will surely file motions to dismiss in the future, including on the basis of the Good Faith Decision. In fact, three of the Transferee Defendants have filed motions to

dismiss to which the Trustee has deferred responding,[18] pending the resolution of various legal

issues before seeking to amend his complaints (which the Trustee has stated on this Motion he

intends to do). When "still awaiting the filing of plaintiffs' [amended] complaint, the discovery

requests . . . appear to be a thinly veiled attempt to circumvent the normal litigation process." *In

re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005) (finding discovery requests

prior to filing of consolidated complaint to be unreasonable). Now that the legal issues have

been resolved, the Trustee should file proposed amended complaints, rather than trying to turn

back the clock to 2008 by seeking what is in effect renewed Rule 2004 discovery.

Since "discovery typically occurs" following the ruling on a motion to dismiss,

"presenting a motion for expedited discovery prior to rulings on motions to dismiss is often

disfavored." *Id.*; *see also Guttenberg*, 26 F. Supp. 3d at 99 ("[M]ost important for the Court's

reasonableness analysis is the pendency of the defendants' motion to dismiss."). Regular

discovery is often stayed to spare defendants the burden of discovery when there is a strong

likelihood of success on a dispositive motion. *See, e.g., Spencer Trask Software & Info. Servs. v.

RPost Int'l*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (staying discovery where defendants

"appear[ed] to have substantial arguments for dismissal of many, if not all, of the claims

asserted"); *see also Kanowitz v. Broadridge Fin. Sols., Inc.*, No. CV 13–649 (DRH) (AKT), 2014

WL 1338370, at *6 (E.D.N.Y. Mar. 31, 2014) ("Staying discovery pending judicial evaluation of

---

[18] Notice of Motion to Dismiss the Trustee's Complaint, *Picard v. Citibank, N.A.*, No. 10-05345 (SMB) (S.D.N.Y. July 26, 2011), ECF No. 19 (Citi Transferee Defendants); Notice of Motion to Dismiss, or in the Alternative to Stay the Action, *Picard v. Natixis S.A.*, No. 10-05353 (SMB) (S.D.N.Y. July 15, 2011), ECF No. 18 (defendant Natixis FP). The Trustee has been granted repeated extensions to respond to these motions to dismiss, which have been pending for more than six years. *See, e.g.*, Stipulation and Order Extending Time to Respond, *Picard v. Citibank, N.A.*, No. 10-05345 (SMB) (S.D.N.Y. Aug. 8, 2017), ECF No. 120; So-Ordered Stipulation Extending Time to Respond and Adjourning Pre-Trial Conference, *Picard v. Natixis S.A.*, No. 10-05353 (SMB) (S.D.N.Y. Aug. 22, 2017), ECF No. 144.

the sufficiency of the complaint is consistent with the entire purpose of the stay provision . . . to avoid saddling defendants with the burden of discovery in meritless cases . . . .").

Regardless of whether motions to dismiss have already been, or will be, filed, "reasonableness dictates" that the Court resolve any motions to dismiss before "requiring extensive and expensive discovery." *Attkisson*, 113 F. Supp. 3d at 165–66. Otherwise, the remaining Transferee Defendants may be "forced to expend significant resources responding to discovery requests in a case where [the Trustee] did not have a viable cause of action." *Guttenberg*, 26 F. Supp. 3d at 99; *see also Twombly*, 550 U.S. at 558 (failure to state a claim should "be exposed at the point of minimum expenditure of time and money by the parties and the court"); *see also* Mendelow Transcript at 101:12–15, 104:19–22 (staying discovery until the Court determines whether the Trustee has a "valid complaint").

Indeed, the Trustee's claims have been dismissed on numerous occasions and grounds, including dismissals of defendants from approximately 86 actions on extraterritoriality and/or comity grounds, *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-1789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016), many of which were initially subject to the Trustee's Motion. The remaining eighteen Transferee Defendants, like these other defendants, have strong defenses, including based on the Good Faith Decision as well as personal jurisdiction and safe harbor defenses, among others, that are likely to defeat the Trustee's claims. *See, e.g., Katz*, 462 B.R. at 451–53 (dismissing claims predicated on principles of preference or constructive fraud due to application of 546(e) safe harbor); *see also Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 422 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2858 (2015) (affirming application of safe harbor to Trustee's clawback claims). Like the approximately 98 defendants previously dismissed out of these cases

that were initially subject to the Trustee's Motion, the remaining Transferee Defendants should

not be subject to discovery before a ruling on the sufficiency of the Trustee's complaints.

**6.      The Administration of Justice Weighs Against Granting Additional
Discovery in these Circumstances**

To obtain the requested discovery under Rule 26(d), the Trustee must show that taking

the discovery would further the administration of justice. *See Pacello*, 2013 WL 1439697, at *2.

He has failed to do so.  On the contrary, permitting the Trustee to take discovery would be

inefficient and would unreasonably delay, rather than further, the administration of justice.

Far from being "deprive[d] . . . of the opportunity to pursue his claims" if he is not

granted the requested relief, Trustee's Mem. at 27, the Trustee may proceed with litigating his

actions against the Transferee Defendants without first taking additional discovery, as he has

done in other actions following the Good Faith Decision. *See, e.g.*, Stipulation and Order

Amending Caption and Amending Complaint at 2, *Picard v. Legacy Capital Ltd.*, No. 10-05286

(Bankr. S.D.N.Y. July 2, 2015), ECF No. 111 (proposed amended complaint to "address the

standard set by the Good Faith Decision" filed without first obtaining additional discovery in

action in which the Trustee initially sought discovery pursuant to the instant Motion); Amended

Complaint ¶¶ 359, 368, 378, 382, 421, *Picard v. BNP Paribas S.A.*, No. 12-01576 (Bankr.

S.D.N.Y. Aug. 30, 2017), ECF No. 100 (amended complaint alleging defendants were "willfully

blind to circumstances suggesting" fraud filed without first obtaining additional discovery in

action in which the Trustee initially sought discovery pursuant to the instant Motion); *see also*

Amended ABN AMRO Compl. ¶ 8 (amended complaint filed against Transferee Defendant

subject to this Motion alleging "[d]efendants ignored the warnings signs of fraud and chose to

look the other way" after *Katz* clarified willful blindness standard).

In fact, the Trustee has purported to assert that certain defendants were willfully blind in some of his initial complaints. *See, e.g.*, Citi Compl. ¶ 133 ("Citi [Transferee Defendants] willfully turned a blind eye to indicia of possible fraud at BLMIS based upon information available to them."); Citi Compl. ¶ 168 (Citi Transferee Defendants "blindly accepted" Madoff's explanations); Compl. ¶ 57, *Picard v. Cardinal Mgmt. Inc.*, No. 10-04287 (Bankr. S.D.N.Y. Nov. 24, 2010), ECF No. 1 ("Cardinal Compl.") (defendants "willfully turned a blind eye" to fact that strategy earned returns despite how underlying stocks were performing); Cardinal Compl. ¶ 75 (fee structure gave defendants "a powerful incentive to turn a blind eye to the numerous indicia of fraud"); Compl. ¶¶ 178, 206, 208, *Picard v. Natixis S.A.*, No. 10-05353 (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1 (alleging that Natixis "blindly relied" upon information provided by "feeder funds," "blindly accepted" Madoff's explanations, and turned "a blind eye" to "numerous indicia of illegitimate trading activity and fraud"). And as the District Court noted in the Good Faith Decision, even before the District Court had clarified the Trustee's burden of pleading good faith, "experience in the Madoff Trustee's own cases shows that when the Trustee has even a modest basis for claiming a transferee took without good faith, he is fully capable of so pleading." Good Faith Decision at 25; *see also Katz*, 462 B.R. at 454 (noting that the amended complaint at issue "plainly advances this theory of willful blindness"); Amended ABN AMRO Compl. ¶ 105 (amended complaint filed prior to Good Faith Decision alleging that "[a]rmed with such knowledge, rather than conduct further due diligence on BLMIS, [Transferee Defendant] ABN/RBS instead decided to ignore significant indicia of fraud").

The present circumstances are distinguishable from many of the cases cited by the Trustee, where the plaintiffs' discovery requests furthered the administration of justice by

allowing them to identify the relevant defendants,[19] to obtain information from a defaulting

defendant without which plaintiffs' action could not proceed, *see Sheridan v. Oak St. Mort.,*

*LLC*, 244 F.R.D. 520 (E.D. Wis. 2007) (discovery relevant to class certification and damages

granted where plaintiff effectively precluded from engaging in a Rule 26(f) conference because

defendant had not appeared in action), or where there were concerns that evidence may be

concealed or destroyed, *see Digital Sin, Inc.*, 2012 WL 2036035 (discovery granted where court

concerned information would be routinely deleted by internet providers if discovery not granted);

*Monsanto Co. v. Woods*, 250 F.R.D. 411 (E.D. Mo. 2008) (discovery granted where court

concerned that physical samples of seeds would degrade over time); *Stern v. Cosby*, 246 F.R.D.

453 (S.D.N.Y. 2007) (discovery granted where court concerned defendant may interfere with

witnesses); *Ayyash*, 233 F.R.D. 325 (discovery granted in attachment proceeding where foreign

defendants had capacity to conceal assets).

Furthermore, permitting the Trustee to take the requested discovery would further delay

the adjudication of dispositive motions and prevent these actions—which have been pending for

years—from progressing. *Cf.* Good Faith Decision at 25–26 (whether "the Trustee possesses in

any given case . . . even that modest evidence that would enable the Trustee to adequately plead

a lack of good faith . . . should be resolved . . . if these cases are not to languish indefinitely").

This is particularly so in light of the discovery-related disputes that are likely to arise with

---

[19] The Trustee frequently relies on copyright infringement cases that deal with requests for discovery solely for the purpose of identifying the alleged defendant-infringers. *See adMarketplace, Inc.*, 2013 WL 4838854, at *2 (discovery granted where plaintiff had alleged a *prima facie* case but needed discovery to identify potential defendants); *Digital Sin, Inc.*, 2012 WL 2036035 (same); *Malibu Media, LLC v. Does 1-5*, 2012 WL 2001968 (same). Discovery is granted in such infringement cases if the plaintiff has already made a *prima facie* showing of an infringement claim. *See, e.g., Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. 1:16-CV-02462 (AJN), 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016). These infringement cases lend no support to the Trustee's request for discovery because the Trustee has made no *prima facie* showing of a plausible claim and, instead, seeks discovery in order to plead a plausible claim.

respect to the Court's jurisdiction, foreign bank secrecy laws, and data privacy rules, among

other issues.[20]   Accordingly, the administration of justice dictates that the Trustee's broad

discovery requests related to the Good Faith Issue be denied.

## CONCLUSION

For all these reasons, the Transferee Defendants respectfully request that this Court deny

the Trustee's Motion for Leave to Replead and Discovery on the Good Faith Discovery Issue.


Dated: October 6, 2017
      New York, New York

                                       Respectfully submitted,

CLEARY GOTTLIEB STEEN &                 O'MELVENY & MYERS LLP
HAMILTON LLP

/s/   Carmine D. Boccuzzi, Jr.                 /s/   William J. Sushon
Carmine D. Boccuzzi, Jr.                  William J. Sushon
(cboccuzzi@cgsh.com)                      (wsushon@omm.com)
Erica Klipper                             Daniel S. Shamah
(eklipper@cgsh.com)                       (dshamah@omm.com)
Pascale Bibi                              Seven Times Square
(pbibi@cgsh.com)                          New York, New York  10036
One Liberty Plaza                         T: 212-326-2000
New York, New York  10006                 F: 212-326-2061
T: 212-225-2000
F: 212-225-3999                           *Attorneys for Defendants Mistral*
                                          *(SPC) and Zephyros Limited*
*Attorneys for Citibank N.A. and Citibank*
*North America, Inc.*

---

[20] The Transferee Defendants expressly reserve any personal jurisdiction defenses and Individual
Discovery Objections, as that term is defined in the July 2017 Scheduling Order, which provides that
"briefing of such issues shall be deferred until after the Court enters a decision on the Good Faith Limited
Discovery Issue and the Trustee serves any Court-authorized limited discovery demands on any particular
Transferee Defendant." July 2017 Scheduling Order ¶¶ 1, 3.

LATHAM & WATKINS LLP

/s/ Christopher R. Harris
Christopher R. Harris
(christopher.harris@lw.com)
Thomas J. Giblin
(thomas.giblin@lw.com)
885 Third Avenue
New York, New York 10022
T: (212) 906-1200
F: (212) 751-4864

*Attorneys for ABN AMRO Bank (Ireland) Ltd.
(f/k/a Fortis Prime Fund Solutions Bank
(Ireland) Ltd.) (n/k/a ABN AMRO Retained
Custodial Services (Ireland) Limited) and
ABN AMRO Custodial Services (Ireland) Ltd.
(f/k/a Fortis Prime Fund Solutions Custodial
Services (Ireland) Ltd.)*

SHEARMAN & STERLING LLP

/s/ Brian H. Polovoy
Brian H. Polovoy
(bpolovoy@shearman.com)
Randall L. Martin
(Randall.Martin@Shearman.com)
599 Lexington Avenue
New York, New York 10022
T: (212) 848-4000
F: (646) 848-4703

*Attorneys for Citrus Investment Holdings Ltd.*

DAVIS & GILBERT LLP

/s/ Joseph Cioffi
Joseph Cioffi
(JCioffi@dglaw.com)
Bruce M. Ginsberg
(BGinsberg@dglaw.com)
James R. Serritella
(Jserritella@dglaw.com)
1740 Broadway
New York, New York 10019
T: (212) 468-4800
F: (212) 468-4888

*Attorneys for Natixis Financial Products LLC
(as successor-in-interest to Natixis Financial
Products Inc.)*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/ Martin Flumenbaum
Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Andrew J. Ehrlich
(aehrlich@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
T: (212) 373-3000

*Attorneys for Dismissed Defendant Inter
Investissements S.A. (f/k/a Inter Conseil S.A.), solely
in its capacity as former Liquidator of Defendant
Oréades SICAV and for the limited purpose of
responding to the Trustee's Motion for Discovery
on the Good Faith Issue*

30

THOMPSON HINE LLP

/s/  Emily J. Mathieu
Emily J. Mathieu
(Emily.Mathieu@thompsonhine.com)
Barry M. Kazan
(Barry.Kazan@thompsonhine.com)
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
T: (212) 344-5680
F: (212) 344-6101

*Attorneys for Defendant Square One Fund
Ltd.*

ALLEN & OVERY LLP

/s/  Michael S. Feldberg
Michael S. Feldberg
(michael.feldberg@allenovery.com)
1221 Avenue of the Americas
New York, New York 10020
T: 212-610-6300

*Attorneys for Defendant ABN AMRO Bank
N.V. (presently known as The Royal Bank of
Scotland N.V.)*

CLIFFORD CHANCE US LLP

/s/  Jeff E. Butler
Jeff E. Butler
(jeff.butler@cliffordchance.com)
Rijie Ernie Gao
(ernie.gao@cliffordchance.com)
31 West 52nd Street
New York, New York 10019
T: (212) 878-8000
F: (212) 878-8375

*Attorneys for Cardinal Management, Inc.*

KATTEN MUCHIN ROSENMAN LLP

/s/  Anthony L. Paccione
Anthony L. Paccione
(anthony.paccione@kattenlaw.com)
Mark T. Ciani
(mark.ciani@kattenlaw.com)
575 Madison Avenue
New York, New York 10022
T: (212) 940-8800
F: (212) 940-8776

*Attorneys for Royal Bank of Canada,
Guernroy Limited, RBC Alternative
Assets, L.P., and RBC Dexia Investor
Services Trust*

DECHERT LLP

/s/  Neil A. Steiner
Neil A. Steiner
(neil.steiner@dechert.com)
1095 Avenue of the Americas
New York, New York 10036
T: (212) 698-3822
F: (212) 698-0480

*Attorneys for Equity Trading Portfolio
Limited and Equity Trading Fund Limited*

31

**Exhibit 1**
**Applicable Adversary Proceedings**

| | Adv. Pro. No. | Case Name |
|---|---|---|
| 1. | 10-04287 | *Picard v. Cardinal Management Inc., et al.* |
| 2. | 10-04330 | *Picard v. Square One Fund Ltd., et al.* |
| 3. | 10-04457 | *Picard v. Equity Trading Fund, et al.* |
| 4. | 10-04471 | *Picard v. Citrus Investment Holdings, Ltd.* |
| 5. | 10-05120 | *Picard v. Oréades SICAV, et al.* |
| 6. | 10-05345 | *Picard v. Citibank, N.A., et al.* |
| 7. | 10-05353 | *Picard v. Natixis S.A., et al.* |
| 8. | 10-05354 | *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.), et al.* |
| 9. | 10-05355 | *Picard v. ABN AMRO Bank (Ireland) Ltd., et al.* |
| 10. | 12-01273 | *Picard v. Mistral (SPC)* |
| 11. | 12-01278 | *Picard v. Zephyros Limited* |
| 12. | 12-01698 | *Picard v. Banque Internationale à Luxembourg S.A., et al.* |
| 13. | 12-01699 | *Picard v. Royal Bank of Canada, et al.* |

Exhibit 1 [1]

## Exhibit 2
## Transferee Defendants

| | Adv. Pro. No. | Case Name | Defendant Name |
|---|---|---|---|
| 1. | 10-04287 | *Picard v. Cardinal Management Inc., et al.* | Cardinal Management Inc. |
| 2. | 10-04330 | *Picard v. Square One Fund Ltd., et al.* | Square One Fund Ltd. |
| 3. | 10-04457 | *Picard v. Equity Trading Fund, et al.* | Equity Trading Fund, Ltd. |
| 4. | 10-04457 | *Picard v. Equity Trading Fund, et al.* | Equity Trading Portfolio Ltd |
| 5. | 10-04471 | *Picard v. Citrus Investment Holdings, Ltd.* | Citrus Investment Holdings, Ltd. |
| 6. | 10-05120 | *Picard v. Oréades SICAV, et al.* | Oréades SICAV, represented by its liquidator, Inter Investissements S.A. |
| 7. | 10-05345 | *Picard v. Citibank, N.A., et al.* | Citibank N.A. |
| 8. | 10-05345 | *Picard v. Citibank, N.A., et al.* | Citibank North America, Inc. |
| 9. | 10-05353 | *Picard v. Natixis S.A., et al.* | Natixis Financial Products LLC (as successor-in-interest to Natixis Financial Products Inc.) |
| 10. | 10-05354 | *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.), et al.* | ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) |
| 11. | 10-05355 | *Picard v. ABN AMRO Bank (Ireland) Ltd., et al.* | ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN AMRO Retained Custodial Services (Ireland) Limited) |
| 12. | 10-05355 | *Picard v. ABN AMRO Bank (Ireland) Ltd., et al.* | ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) |

Exhibit 2 [1]

| | Adv. Pro. No. | Case Name | Defendant Name |
|---|---|---|---|
| 13. | 12-01273 | *Picard v. Mistral (SPC)* | Mistral (SPC) |
| 14. | 12-01278 | *Picard v. Zephyros Limited* | Zephyros Limited |
| 15. | 12-01698 | *Picard v. Banque Internationale à Luxembourg S.A., et al.* | RBC Dexia Investor Services Trust |
| 16. | 12-01699 | *Picard v. Royal Bank of Canada, et al.* | Guernroy Limited |
| 17. | 12-01699 | *Picard v. Royal Bank of Canada, et al.* | RBC Alternative Assets, L.P. |
| 18. | 12-01699 | *Picard v. Royal Bank of Canada, et al.* | Royal Bank of Canada |

Exhibit 2 [2]