**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 610-6300
Facsimile:    (212) 610-6399
Michael S. Feldberg

*Attorneys for Defendant ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05354 (SMB) |
| Plaintiff, | |
| v. | |
| ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF SCOTLAND, N.V.), | |
| Defendant. | |

**ABN AMRO BANK N.V.'S (presently known as THE ROYAL BANK OF SCOTLAND N.V.) ("RBS/ABN") SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE TRUSTEE'S MOTION FOR <u>PRE-MOTION-TO-DISMISS DISCOVERY</u>**

# **Table of Contents**

|  | **Page** |
|---|---|

Table of Authorities ........................................................................................................................ ii

Preliminary Statement .....................................................................................................................1

Background .....................................................................................................................................3

      A.      The Secondary Transfers At Issue ..................................................................3

      B.      Relevant Procedural History ..........................................................................3

ARGUMENT ...................................................................................................................................6

      I.      The Trustee Took Rule 2004 Discovery Prior To This Case's Inception, Knowing Good Faith Would Be A Key Issue. .................................6

      II.      The Trustee Should Not Be Given A Second, Untimely Bite At Rule 2004 Discovery From RBS/ABN. ....................................................................7

      III.      The District Court Did Not Authorize Pre-Motion-To-Dismiss Discovery. .......................................................................................................9

Conclusion ....................................................................................................................................10

# Table of Authorities

Page(s)

**Cases**

*In re Blinder, Robinson & Co., Inc.*,
127 B.R. 267 (D. Colo. 1991) ........................................................................................... 7–8

*In re Madoff Sec.*,
513 B.R. 222 (S.D.N.Y. 2014) ........................................................................................... 5, 9

*In re Madoff Sec.*,
516 B.R. 18 (S.D.N.Y. 2014) ........................................................................................ *passim*

*In re Martelli*,
Bankr. Case No. 16-20316-PRW, 2017 WL 3098105
(Bankr. W.D.N.Y. July 20, 2017) ....................................................................................... 2, 8

*Picard v. Avellino*,
469 B.R. 408 (S.D.N.Y. 2012) ............................................................................................ 4, 7

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011) ............................................................................................ 4, 7

**Other Authorities**

Fed. R. Bankr. P. 2004 ............................................................................................................... 7

5 *Collier on Bankruptcy* ¶ 550.03
(Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) ............................................. 6–7

ABN Amro Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("RBS/ABN") joins the Consolidated Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue ("Consol. Br."), and respectfully submits this supplemental brief to address additional matters specific to RBS/ABN, including its responses to Rule 2004 subpoenas in 2009 and the Trustee's 2012 Amended Complaint.

**Preliminary Statement**

From the start of this nearly seven year-old litigation, the Trustee has always acknowledged RBS/ABN's good faith to be a central issue. *See* Oct. 12, 2012 Hearing Tr. at 40:2–3, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-mc-0115 (JSR) (S.D.N.Y. Oct. 22, 2012), ECF. No. 401 (the "Good Faith Hearing Tr.") (Trustee's counsel stating that "[with respect to] good faith, the trustee certainly has alleged facts."). In April 2014, the District Court resolved conflicting case law, legislative history, commentary and policy considerations, *see id.* at 21:11–27:4, holding that, under SIPA, in order to avoid transfers, the burden is on the Trustee to plead the lack of good faith of transferees, including subsequent transferees such as RBS/ABN. *In re Madoff Sec.*, 516 B.R. 18, 23–24 (S.D.N.Y. 2014) (the "Good Faith Decision"). The District Court stressed that placing the burden on the Trustee to allege actual knowledge of fraud or "willful blindness" was not unreasonable due to the extensive discovery the Trustee was entitled to under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") prior to filing a complaint. *Id.* at 24 n.5.

Indeed, the Trustee had the opportunity to take Rule 2004 pre-complaint discovery, and availed himself of that opportunity against Royal Bank of Scotland, ABN Amro

and ABN Amro - Netherlands. *See* Feldberg Decl. Exs. A–C.[1] RBS and ABN Amro complied with the Trustee's pre-complaint discovery requests, producing a total of 944 documents comprising 991 pages. Feldberg Decl. ¶ 6. Prior to filing his initial complaint in 2010 and his amended complaint against RBS/ABN in 2012, the Trustee made no application that RBS or ABN had failed to comply with his discovery requests, nor did he seek further discovery from RBS or ABN or any other related RBS or ABN entity.

Now the Trustee contends that in the wake of the District Court's good faith ruling, he should be given the opportunity to re-take Rule 2004 discovery in order to try, for a fourth time, to allege lack of good faith.[2] There is no reason to grant the Trustee pre-motion-to-dismiss discovery, which would effectively grant the Trustee a second opportunity to conduct fact-gathering regarding an issue which has been central to this case from its inception. The Trustee's opportunity to take pre-motion-to-dismiss discovery has come and gone under Rule 2004. *See, e.g., In re Martelli*, Bankr. Case No. 16-20316-PRW, 2017 WL 3098105, at *4 (Bankr. W.D.N.Y. July 20, 2017) (once an adversary proceeding has been commenced, discovery regarding that proceeding and issues addressed in the proceeding can no longer be conducted under Rule 2004). There are no extenuating circumstances that warrant pre-motion-to-dismiss discovery pursuant to Rule 26(d) of the Federal Rules of Civil Procedure ("Rule

---

[1] The accompanying Declaration of Michael S. Feldberg in Support of ABN Amro Bank N.V.'s (*presently known as* The Royal Bank of Scotland N.V.) Supplemental Memorandum of Law in Opposition to the Trustee's Motion for Pre-Motion-to-Dismiss Discovery dated October 6, 2017 is referred to herein as the "Feldberg Decl."

[2] *See* Complaint, ECF No. 1 ("Compl.") (filed on Dec. 8, 2010); Amended Complaint, ECF No. 47, ("Am. Compl.") (filed on Aug. 8, 2012); and the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO Bank N.V. (*presently known as* The Royal Bank of Scotland, N.V.), ECF No. 101 (filed on June 26, 2015).

2

26(d)"), such as the inability to identify relevant defendants or the need for a preliminary injunction. *See* Consol. Br. at 17, 21. The Trustee's motion should be denied.

## Background

### A. The Secondary Transfers At Issue

The Trustee alleges that ABN AMRO Bank N.V. was a commercial bank incorporated under the laws of the Netherlands, whose name was changed in 2010 to The Royal Bank of Scotland N.V. Am. Compl. ¶¶ 29–30. The Trustee alleges that in 2006 and 2007, RBS/ABN entered into agreements with four funds named Rye Select Broad Market XL Portfolio, Rye Select Broad Market Portfolio Limited, Rye Select Broad Market XL Fund, L.P. and Rye Select Broad Market Fund, L.P., and over the course of time received payments from the various funds pursuant to those agreements. *See* Am. Compl. ¶¶ 213, 227, 237, 239. The Trustee seeks to avoid $237.9 million of those subsequent transfers. Am. Compl. ¶ 2.

### B. Relevant Procedural History

Prior to commencing this action as well as numerous other actions against initial and subsequent transferees, the Trustee took advantage of his ability to seek pre-complaint discovery under the examination provisions of Rule 2004. With respect to RBS and ABN, the Trustee issued three Rule 2004 subpoenas in March 2009 directed to the "Royal Bank of Scotland," "ABN Amro Bank-Netherlands," and "ABN Amro." Feldberg Decl., Exs. A–C. These subpoenas included 19 or 20 broadly-worded document requests per subpoena—seeking, among other things, "all documents relating to Madoff" with "Madoff" being defined as "[BLMIS], its parents, affiliates, representatives and any and all related entities." *Id.*, Exs. A–C. In response to those subpoenas, RBS and ABN conferred with the Trustee and made three productions. *Id.* ¶ 6. The Trustee made no application that RBS or ABN had failed to comply

3

with the discovery requests. *See generally* Docket, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. filed Dec. 11, 2008).

On December 8, 2010, over a year after receiving RBS and ABN's Rule 2004 discovery, and without seeking further discovery from RBS or ABN, the Trustee filed his initial complaint, seeking to avoid and recover subsequent transfers from RBS/ABN. Compl. ¶ 2. The initial complaint included allegations aimed at the good faith requirement under 11 U.S.C. § 550(b), including allegations apparently attempting to plead good faith under both the "inquiry notice" and "willful blindness" standards. *Id.* at ¶¶ 100, 130 (alleging that ABN was "on inquiry notice of possible fraud at BLMIS" and that ABN was "motivat[ed] to turn a blind eye to the numerous indicia of illegitimate trading activity and fraud.").

In September 2011 and February 2012, in two related proceedings arising from the Madoff Securities fraud in the context of a SIPA trusteeship, the District Court (i) held that the lack of good faith standard requires the transferee to have actual knowledge or be "willfully blind" to the fraud, *Picard v. Katz*, 462 B.R. 447, 455–56 (S.D.N.Y. 2011); and (ii) noted that a determination would need to be made as to whether the "allegations in each of the Trustee's complaints plausibly suggest 'willful blindness.'" *Picard v. Avellino*, 469 B.R. 408, 412 (S.D.N.Y. 2012). Shortly thereafter, the District Court withdrew the reference with respect to this case and numerous others, to determine "whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in 'good faith' under either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b)." *Good Faith Decision*, 516 B.R. at 20 (citation omitted).

On August 8, 2012, knowing that the issue of the good faith standard was sitting before the District Court—and following the two decisions in which the District Court

4

articulated the relevant standard and referenced the Trustee's pleading burden—the Trustee amended his complaint in an apparent attempt to re-plead good faith. *Compare*, *e.g.,* Compl. at 18 *with* Am. Compl. at 33 (changing title of section from "ABN Was On Inquiry Notice . . ." to "ABN/RBS Had Knowledge Of Indicia Of Fraud At BLMIS . . ."). At no point prior to filing the Amended Complaint did the Trustee raise a need for additional discovery.

After consolidated briefing on the Good Faith Issue, the District Court issued an opinion, consistent with its prior decisions, that the Trustee bears the burden of pleading "particularized allegations that the defendants here either knew of Madoff Securities' fraud or willfully blinded themselves to it." *Good Faith Decision*, 516 B.R. at 24. At oral argument, the District Court acknowledged that to the extent the Trustee had in good faith believed the standard to be different, the Trustee could seek an opportunity to replead the good faith issue. *See* Good Faith Hearing Tr. 39:2–5. The District Court noted that this was an entirely different question than whether the Trustee "ha[d] the facts that would warrant repleading [good faith]," *id.* at 38:5–7, and pointed out that requiring the Trustee to provide a "plausible basis to claim that a defendant lacked good faith in his initial complaint" is reasonable given the Trustee's extensive pre-complaint discovery powers under Rule 2004. *Good Faith Decision*, 516 B.R. at 24, n.5. The District Court in no way indicated that the Trustee should be granted pre-motion-to-dismiss discovery—to the contrary, one month later the District Court rejected the Trustee's bid for "additional fact-gathering" relating to extraterritoriality. *In re Madoff Sec.,* 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014) (the "Extraterritoriality Decision").

5

**ARGUMENT**

I.  **The Trustee Took Rule 2004 Discovery Prior To This Case's Inception, Knowing Good Faith Would Be A Key Issue.**

The primary thrust of the Trustee's argument is that he did not have an opportunity to take meaningful discovery because the District Court's good faith decision "substantially altered" the good faith standard and pleading burden after Rule 2004 discovery closed.[3] But the Trustee's current contention that the District Court's April 2014 good faith decision shifted governing legal principles such that he is entitled to otherwise impermissible discovery is inconsistent with both prior case law and the Trustee's prior litigation approach.

The Trustee has always acknowledged RBS/ABN's good faith and willful blindness to be a central issue, including in his initial complaint. *See*, *e.g.*, Compl. ¶ 130 (alleging that ABN was "motivat[ed] to turn a blind eye to the numerous indicia of illegitimate trading activity and fraud"). Moreover, that the burden of proof falls on the Trustee is not a novel holding. RBS/ABN is a subsequent transferee, and at least one line of cases predating the initial complaint put the Trustee on notice that under Section 550(b) he could be required to bear the burden of pleading that a subsequent transferee lacked good faith. *See* Consol. Br. at 10–11 (citing three cases that placed the burden of proof under § 550(b) on the trustee); *see also* Consolidated Brief on Behalf of Subsequent Transferee Defendants Responding to the Good Faith Standard Issues Raised by Order of the Court Dated June 23, 2012 at 32–33 & n.19, *In re Madoff Sec.*, No. 12-mc-0115 (JSR) (S.D.N.Y. July 20, 2014), ECF No. 242 (citing eight additional cases); Good Faith Hearing Tr. at 26:4–7 (District Court acknowledged counsel's statement that there are cases going both ways); 5 *Collier on Bankruptcy* ¶ 550.03[5] (Alan N.

---

[3] *See* Trustee's Memorandum Of Law In Support Of Omnibus Motion For Leave To Replead Pursuant To Fed. R. Civ. P. 15(a) And Court Order Authorizing Limited Discovery Pursuant To Fed. R. Civ. P. 26(d)(1) at 3, ECF No. 70.

6

Resnick & Henry J. Sommer eds., 16th ed. 2017) (noting that courts appear to be split on where Section 550(b) places the burden of proof).

Nor does the Trustee's current position comport with his prior litigation approach. As of 2011 and 2012, respectively, in two related proceedings, the District Court had (i) delineated the subjective standard of "willful blindness" as the appropriate yardstick by which to measure a transferee's good faith in the context of a SIPA trusteeship, *Katz*, 462 B.R. at 455–56, and (ii) noted that a determination would need to be made as to whether the "allegations in each of the Trustee's complaints plausibly suggest 'willful blindness,'" *Avellino*, 469 B.R. at 412. At that point in time, the Trustee did not flag "willful blindness" or the burden of proof as "alterations" warranting renewed Rule 2004 discovery. Instead the Trustee simply amended his complaint in an attempt to meet the pleading standard. *Compare*, *e.g.*, Compl. at 18 *with* Am. Compl. at 33 (title of section changes from "ABN Was on Inquiry Notice . . ." to "ABN[] Had Knowledge of Indicia of Fraud at BLMIS . . ."). The Trustee cannot now contend that these constitute new standards which warrant allowing him to reopen Rule 2004 discovery.

## II. The Trustee Should Not Be Given A Second, Untimely Bite At Rule 2004 Discovery From RBS/ABN.

Rule 2004 provides for "the examination of any entity . . . . [on] the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate. . . ." Fed. R. Bankr. P. 2004(a)–(b). It is undisputed that Rule 2004 is meant only as a tool to obtain pre-complaint discovery. As soon as a trustee initiates an adversary proceeding, he cuts off his right to Rule 2004 discovery from or about that adversary; that is a well-known risk the Trustee undertook in electing to file the present proceeding. *See, e.g.*, *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 275 (D. Colo. 1991) (SIPA trustee was limited to discovery under the Federal Rules of Civil Procedure

7

where trustee elected to file adversary proceeding against creditor before any Rule 2004 examination); *Martelli*, 2017 WL 3098105, at *4 (responding to a motion to dismiss, trustee sought to reopen Rule 2004 discovery from third parties about adversaries; court denied motion, quoting the "well recognized rule is that once an adversary proceeding . . . has been commenced . . . [d]iscovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive provisions of [the Federal Rules of Bankruptcy Procedure]." (alterations in original)).

Pursuant to Rule 2004's broad purview, the Trustee served three subpoenas on RBS and ABN in March 2009. These subpoenas targeted accounts held at RBS or ABN by Madoff or a Madoff-related entity, and also included numerous requests for documents potentially reflective of RBS or ABN's knowledge of fraud by Madoff and/or BLMIS—in essence the good faith issue on which the Trustee now seeks further discovery.[4] RBS and ABN responded in April and May 2009. Feldberg Decl. ¶ 6.

If the Trustee believed that RBS or ABN's responses to his Rule 2004 subpoenas were insufficient, he never raised that concern with the Court. *See generally*, Docket, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. filed Dec. 11, 2008); *see also* Consol. Br. at 15 (noting that if the Trustee felt productions were inadequate, his remedy was to make a motion to compel

---

[4] Feldberg Decl., Exs. A-C (documents requested in subpoenas included "all documents relating to Madoff" with "Madoff" defined as "[BLMIS], its parents, affiliates, representatives and any and all related entities"; "referrals or reports made by [RBS or ABN] to law enforcement, regulators, self-regulatory organizations about Madoff . . . and all documents reflecting decisions not to make such a referral"; "accounts that Madoff sought to open or new business relationships that Madoff sought to initiate that were refused for any reason by [RBS or ABN]"; "subpoenas served on [RBS or ABN] that relate to Madoff, including . . . investigations initiated as a result of such a subpoena, and any other actions taken by [RBS or ABN]"; "complaints received by [RBS or ABN] concerning any investments in Madoff"; "any threatened or pending investigation, litigation or arbitration concerning Madoff").

8

discovery).  Nor did the Trustee serve RBS or ABN with additional requests specifically targeting the $237.9 million in subsequent transfers that he would later seek to claw back as he did with certain other subsequent transferee defendants.  *See* Consol. Br. at 5 n.6 (noting that the Trustee sought to conduct a Rule 2004 examination of a Citi employee concerning Rye Fund transfer).  On December 8, 2010, more than a year and a half after the Trustee received documents from RBS and ABN in response to the Trustee's subpoenas, the Trustee filed his initial Complaint against RBS/ABN.  *See* Compl.

Now the Trustee requests that this Court permit him to serve "Proposed Limited Document Demands," seeking documents reflective of topics raised in the Rule 2004 subpoenas served on RBS and ABN in 2009.[5]  There is no reason to grant the Trustee pre-motion-to-dismiss discovery and a second opportunity to gather facts on an issue that has always been central to this case.  The Trustee's opportunity under Rule 2004 to seek this information has expired, and Rule 26(d) provides no basis to re-open discovery now.  *See* Consol. Br. at 15–28.

### III. The District Court Did Not Authorize Pre-Motion-To-Dismiss Discovery.

While the District Court has said that the Trustee might be able to amend his complaints based on the good faith ruling so that this Court could then expeditiously hear motions to dismiss, s*ee* Good Faith Hearing Tr. at 39:2–7, nowhere did the District Court indicate that the Trustee should be granted pre-motion-to-dismiss discovery.  To the contrary, the District Court explicitly rejected the Trustee's bid for "additional fact gathering" relating to

---

[5]   *Compare* Declaration of Regina Griffin in Support of the Trustee's Motion for Leave to Replead and for Limited Discovery dated August 28, 2017, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Aug. 28, 2014), ECF No. 7828, Ex. D (seeking documents concerning "the review, analysis, due diligence and ongoing monitoring of actual or prospective investments and transactions involving BLMIS"; "investment decision, evaluation, disapproval, or ongoing monitoring of any investments or transactions involving BLMIS"; and "fraud, Ponzi, illegality, front-running, investigations, insolvency, or embezzlement at BLMIS") *with* Feldberg Decl., Exs. A–C, *supra* n.4.

9

extraterritoriality, *Extraterritoriality Decision*, 513 B.R. at 232 n.4, and noted with respect to good faith that there was no unfairness in placing an affirmative pleading burden on the Trustee, because the Trustee had broad power to seek discovery under Rule 2004 "before he ever files a complaint." *Good Faith Decision* 516 B.R. at 24 n.5.  The District Court stressed that this Court should proceed with motions to dismiss so that the case does not "languish indefinitely." *Id*. at 26.

## **Conclusion**

For these reasons, and the reasons set forth in the Consolidated Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue, this Court should deny the Trustee's Motion for Pre-Motion-to-Dismiss Discovery from RBS/ABN.

Dated:  October 6, 2017
        New York, New York

Respectfully submitted,

/s/Michael S. Feldberg
Michael S. Feldberg
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
212-610-6300
michael.feldberg@allenovery.com

*Attorneys for Defendant ABN AMRO Bank N.V.*
*(presently known as The Royal Bank of Scotland N.V.)*