# EXHIBIT A

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern District of New York

Securities Investor Protection Corporation

        Plaintiffs,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* Adv. Pro. No. 08-01789 BRL

*Pending in the Southern District of New York

To:

Natixis Capital Markets Inc.
9 West 57th St.
New York, New York, 10019-2701

Attn: Officer or Director Authorized
to Accept Service

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this Subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Attention: Brian Esser, Esq. | August 14, 2009 |

American LegalNet, Inc.
www.Forms Workflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Brian K. Esser*     Attorney | July 28, 2009 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Brian K. Esser, Esq.    Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

# ATTACHMENT A
# TO SUBPOENA TO NATIXIS

## A. DEFINITIONS

1. "Natixis," "you," and "your" mean Natixis Capital Markets Inc. and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent, or representative thereof.

2. "Applicable Period" means the period between and including the date on which you first subscribed for shares of Fairfield Sentry Ltd., through the present.

3. "BLMIS" means Bernard L. Madoff Investment Securities, LLC, and all persons affiliated with Bernard L. Madoff Investment Securities, LLC, including, but not limited to, its officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, Madoff Securities International LLC, Madoff Securities, International, Ltd., Bernard L. Madoff, Frank DiPascali, and Annette Bongiorno.

4. "Fund with a BLMIS Account" means any hedge fund, fund of funds, investment fund, trust, pool, partnership, limited partnership, or other investment vehicle for the joint investment of monies or assets, wherever and however organized, other than Fairfield Sentry, that, at any time during the Applicable Period, had an account with, or managed by, BLMIS.

5. "Citco" means Citco Fund Services (Europe) B.V. and all persons affiliated with Citco Fund Services (Europe) B.V., including, but not limited to, its officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates.

6. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

8. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

9. "FGG" means Fairfield Greenwich Group, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield International Managers, Inc., and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates, including, but not limited to, Walter M. Noel, Jr., Jeffrey Tucker, Andrés Piedrahita, Amit Vijayvergia, Brian Francouer, Lourdes Barreneche, Cornelis Boele, Philip Toub, Richard Landsberger,

Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeefry, Harold Greisman, Santiago Reyes, Jacqueline Harary, Robert Blum, Corina Noel Piedrahita, Maria Teresa Pulido Mendoza, Yanko della Schiava, Matthew C. Brown, Vianney d'Hendecourt, David Horn, and Julia Luongo.

10. "Fairfield Sentry" means Fairfield Sentry Limited, its investment manager, Fairfield Greenwich (Bermuda) Ltd., its administrator, Citco, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates.

11. "Immediate family members" means a person's spouse, child, child's spouse, stepchild, stepchild's spouse, grandchild, grandchild's spouse, parent, stepparent, parent-in-law, grandparent, sibling, and sibling's spouse, including persons who were adopted and fall into one of these categories.

12. "Person" is defined as any natural person or any business, legal, or governmental entity or association.

13. The terms "all" and "each" shall be construed as all and each.

14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The use of the singular form of any word includes the plural and vice versa.

## B.   INSTRUCTIONS

1. Except as otherwise noted, this subpoena requires the production of documents created in or referencing the Applicable Period.

2. Documents not otherwise responsive to this subpoena shall be produced if such documents mention, discuss, refer to, or explain one or more documents that are called for by this subpoena, or if such documents are attached to documents called for by this subpoena and constitute routing slips, transmittal memoranda, letters, comments, evaluations, or similar materials.

3. Documents attached to each other shall not be separated; separate documents shall not be attached to each other.

4. Documents shall include all exhibits or appendices that are referenced in, attached to, included with, or are otherwise a part of the requested documents.

5.   If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine, or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Corporation Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter of the document; and (e) the privilege or protection claimed.

6.   If any document sought by this subpoena once was, but no longer is, within your possession, custody, or control, please:

    a.   Identify the document;

    b.   State the time period during which it was maintained;

    c.   State the circumstance under which it ceased to exist, or was otherwise no longer in your possession, custody, or control, and the date thereof;

    d.   Identify each person having knowledge of the circumstances described in response to subsection (c) above; and

    e.   Identify each person who had possession, custody, or control of the document, to whom it was available, or who had knowledge of the document and/or the contents thereof.

7.   All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the requesting party to fairly, accurately and completely access, search, display, and comprehend the documents' contents.

8.   All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database, including, but not limited to, litigation support databases, shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

9.   Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems, including, but not limited to, Microsoft Exchange™, Lotus Notes™, or IBM Groupwise™, shall be produced in their native format, or in alternative readily accessible industry-standard formats that fairly, accurately, and completely represent such documents.

3

10. Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear, and focused documentation explaining the documents' contents and formats, including, but not limited to, a data dictionary and data diagrams. The following are acceptable formats, as long as the documents are provided with definitive files, tables, and field level schemas: XML format files, Microsoft SQL database, Access databases, and fixed or variable length ASCII delimited files.

11. Documents and their metadata portrayed in unstructured files generated by commercially available software systems, excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files, shall be produced as those files were stored in the ordinary course of business.

12. Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files, which shall be accompanied by reasonably detailed, clear, and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document, or subsequently generated through industry-standard Optical Character Recognition (OCR) technology, shall be produced in a format that is reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear, and focused documentation explaining such file's contents.

## C. DOCUMENTS TO BE PRODUCED

1. Any and all documents concerning Fairfield Sentry.

2. Any and all documents concerning BLMIS.

3. Any and all documents concerning any Fund with a BLMIS Account.

4. Any and all documents concerning your investments in shares of Fairfield Sentry.

5. Any and all documents concerning your investments in shares of any Fund with a BLMIS Account.

6. Any and all documents concerning any actual or proposed redemption of shares in Fairfield Sentry.

4

7.  Any and all documents concerning any actual or proposed withdrawal of funds from, redemption of shares of, or redemption of partnership interests in any Fund with a BLMIS Account.

8.  Any and all documents concerning any actual or proposed investments in shares of Fairfield Sentry by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members.

9.  Any and all documents concerning any actual or proposed investments by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members, in accounts with, or managed by, BLMIS.

10. Any and all documents concerning any actual or proposed investments by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members, with any Fund with a BLMIS Account.

11. Any and all documents concerning any actual or proposed redemption of shares of Fairfield Sentry by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members.

12. Any and all documents concerning any actual or proposed withdrawal of funds by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members, from accounts with, or managed by, BLMIS.

13. Any and all documents concerning any actual or proposed withdrawal of funds from, redemption of shares of, or redemption of partnership interests by your employees, principals, partners, limited partners, members, shareholders, owners, or their respective immediate family members, from any Fund with a BLMIS Account.

14. Any and all documents concerning communications between you and Fairfield Sentry or FGG.

15. Any and all documents concerning communications between you and BLMIS.

16. Any and all documents concerning communications between you and any Fund with a BLMIS Account.

17. Any and all documents concerning communications with any person, other than Fairfield Sentry or FGG, concerning Fairfield Sentry.

18. Any and all documents concerning communications with any person, other than BLMIS, concerning BLMIS.

5

19. Any and all documents concerning communications with any person, other than any Fund with a BLMIS Account, concerning any Fund with a BLMIS Account.

20. Any and all documents concerning communications between you and Citco concerning Fairfield Sentry.

21. Any and all documents concerning any due diligence you conducted, or had conducted on your behalf, concerning Fairfield Sentry.

22. Any and all documents concerning any due diligence you conducted, or had conducted on your behalf, concerning BLMIS.

23. Any and all documents concerning any due diligence you conducted, or had conducted on your behalf, concerning any Fund with a BLMIS Account.

24. Any and all documents concerning any remuneration received by you, by any other person for your benefit, or by any entity in which you had an ownership interest, in the form of commissions, management fees, performance fees, shares, salary, or any other form of payment, that resulted in any way from the purchase of Fairfield Sentry shares.

25. Any and all documents concerning any remuneration received by you, by any other person for your benefit, or by any entity in which you had an ownership interest, in the form of commissions, management fees, performance fees, shares, salary, or any other form of payment, that resulted in any way from investments in accounts with, or managed by, BLMIS.

26. Any and all documents concerning any remuneration received by you, by any other person for your benefit, or by any entity in which you had an ownership interest, in the form of commissions, management fees, performance fees, shares, salary, or any other form of payment, that resulted in any way from investments in any Fund with a BLMIS Account.

27. Documents sufficient to show the names and addresses of any and all of your employees who had contact with any Fairfield Sentry representative, investment manager (Fairfield Greenwich (Bermuda) Ltd.), or administrator (Citco Fund Services (Europe) B.V.), or their respective employees, directors, officers, partners, members, or shareholders.

28. Documents sufficient to show the names and addresses of any and all of your employees who had contact with any FGG representative, employee, director, officer, partner, member, or shareholder.

29. Documents sufficient to show the names and addresses of any and all of your employees who had contact with any BLMIS representative, manager, employee, director, officer, principal, partner, limited partner, member, shareholder, owner, or their respective immediate family members.

30. Documents sufficient to show the names and addresses of any and all of your employees who had contact with any Fund with a BLMIS Account representative, manager, employee, director, officer, principal, partner, limited partner, member, shareholder, or owner.

31. Any and all contracts and agreements, whether written or oral, between you and Fairfield Sentry, in effect during the Applicable Period.

32. Any and all contracts and agreements, whether written or oral, between you and BLMIS, in effect during the Applicable Period.

33. Any and all contracts and agreements, whether written or oral, between you and any Fund with a BLMIS Account.

34. Any and all documents concerning BLMIS' financial condition, solvency, or ability to timely pay its debts.

35. Any and all documents concerning how you used, disbursed, or further transferred any funds received from Fairfield Sentry.

36. Any and all documents concerning how you used, disbursed, or further transferred any funds received from BLMIS.

37. Any and all documents concerning how you used, disbursed, or further transferred any funds received from any Fund with a BLMIS Account.

38. Any and all documents concerning the legality of BLMIS' operations.

39. Any and all documents concerning the feasibility of BLMIS' returns on investments.

40. Any and all documents concerning any communication between you and any other person concerning any of BLMIS' accountants, auditors, accounting firms, or auditing firms, including, but not limited, to David G. Friehling or Friehling & Horowitz, CPAs, P.C.

41. Any and all documents concerning any of BLMIS' accountants, auditors, accounting firms, or auditing firms, including, but not limited to, David G. Friehling or Friehling & Horowitz, CPAs, P.C.

42. Any and all documents concerning comparison of the return on investment you received from accounts with, or managed by, BLMIS, and the return on investment any other person received from accounts with, or managed by, BLMIS.

43. Any and all documents concerning any investigation of BLMIS by any government agency or official, to the extent that disclosure is not prohibited by law, including, but not limited to, the Securities and Exchange Commission, the Financial Industry Regulatory Authority, the National Association of Securities Dealers, or the Commonwealth of Massachusetts.

44. Any and all documents concerning any communication between you and any government agency or official, to the extent that disclosure is not prohibited by law, including, but not limited to, the Securities and Exchange Commission, the Financial Industry Regulatory Authority, the National Association of Securities Dealers, or the Commonwealth of Massachusetts, concerning BLMIS.

45. Any and all documents concerning BLMIS' Form 13F filings with the Securities and Exchange Commission.

46. Any and all documents concerning the article in the May 7, 2001 issue of *Barron's*, entitled "Don't Ask, Don't Tell: Bernie Madoff is so secretive, he even asks investors to keep mum."

47. Any and all documents concerning the article in the December 16, 1992 issue of the *Wall Street Journal*, entitled, "Wall Street Mystery Features a Big Board Rival."

48. Any and all documents concerning the May 2001 MAR/Hedge newsletter entitled, "Madoff Tops Charts; Skeptics Ask How."

49. Any and all documents concerning any due diligence on BLMIS performed by any investment bank or financial institution, including, but not limited to, Société Génerale, Goldman Sachs, Citigroup, Morgan Stanley, Merrill Lynch, or Credit Suisse.

50. Any and all documents concerning any opinions, research, or advice concerning investments with BLMIS, or any fund with accounts with, or managed by, BLMIS, from any person, including, but not limited to, Credit Suisse, Aksia, LLC, Albourne Partners, Acorn Partners, Simon Fludgate, Simon Ruddick, or Robert Rosenkranz.

51. Any and all documents concerning the redemptions of Fairfield Sentry shares, as evidenced by the documents attached as Exhibit B.

52. Any and all documents concerning how you used, discharged, or further transferred any funds you received as a result of the redemptions of Fairfield Sentry shares, as evidenced by the documents attached as Exhibit B.

# ATTACHMENT B
# TO SUBPOENA TO NATIXIS



**CITCO**
Citco Fund Services
(Europe) B.V.

NATIXIS  
47 QUAI D'AUSTERLITZ  
75648 PARIS  
CEDEX 13  
FRANCE

Fund ID      : 03302  
Holder ID    : 11469902  
Account ID   : 11464715  
Contract No. : 68717202  
Date         : May-13-2009  
Order No.    : 966017  
Email        : NEWISSUES_BACKOFFICE@IXIS-CIB.(  
FAX Number   : 0033 1 5855 2475

Account name: NATIXIS

**FAIRFIELD SENTRY LIMITED**

In accordance with your instructions we confirm having REDEEMED the following voting shares from FAIRFIELD SENTRY LIMITED

| | | |
|---|---|---|
| Valuation/NAV Date | | Aug-31-2008 |
| Trade Date | | Sep-01-2008 |
| Payment Date | | Sep-16-2008 |
| No. of voting shares Redeemed | | 55,437.3903 |
| Redemption Price | USD | 1,343.9164 |
| Gross Redemption Proceeds | USD | 74,503,218.00 |
| Net Redemption Proceeds | USD | 74,503,218.00 |
| Amount to be Paid | USD | 74,503,218.00 |
| Proceeds Paid to Date | USD | 74,503,218.00 |

Your balance following this transaction will be 254,919.1539 voting shares.

This trade was executed on   Sep-12-2008  
For more information or any inquiries, please contact Citco Investor Relations Group  
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amscfsclientdesk@citco.com

Citco Building  
Telestone - Teleport  
Naritaweg 165  
1043 BW Amsterdam  
The Netherlands

www.citco.com

Phone: (31-20) 5722100  
Fax:   (31-20) 5722610  
Chamber of Commerce 33205112

CONFIDENTIAL



**CITCO**
*Citco Fund Services*
*(Europe) B.V.*

NATIXIS
47 QUAI D'AUSTERLITZ
75648 PARIS
CEDEX 13
FRANCE

Fund ID      : 03302
Holder ID    : 11469902
Account ID   : 11464715
Contract No. : 69075502
Date         : May-13-2009
Order No.    : 555317
Email        : NEWISSUES_BACKOFFICE@IXIS-CIB.(
FAX Number   : 0033 1 5855 2475

Account name: NATIXIS

**FAIRFIELD SENTRY LIMITED**

In accordance with your instructions we confirm having REDEEMED the following voting shares from FAIRFIELD SENTRY LIMITED

| | | |
|---|---|---|
| Valuation/NAV Date | | Sep-30-2008 |
| Trade Date | | Oct-01-2008 |
| Payment Date | | Oct-15-2008 |
| No. of voting shares Redeemed | | 1,552.0000 |
| Redemption Price | USD | 1,350.6040 |
| Gross Redemption Proceeds | USD | 2,096,137.41 |
| Net Redemption Proceeds | USD | 2,096,137.41 |
| Amount to be Paid | USD | 2,096,137.41 |
| Proceeds Paid to Date | USD | 2,096,137.41 |

Your balance following this transaction will be 253,771.2582 voting shares.

This trade was executed on    Oct-13-2008
For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amscfsclientdesk@citco.com

*Citco Building*
*Telestone - Teleport*
*Naritaweg 165*
*1043 BW Amsterdam*
*The Netherlands*

www.citco.com

Phone: (31-20) 5722100
Fax:   (31-20) 5722610
Chamber of Commerce 33205112

CONFIDENTIAL

**CITCO**
*Citco Fund Services*
*(Europe) B.V.*

NATIXIS
47 QUAI D'AUSTERLITZ
75648 PARIS
CEDEX 13
FRANCE

Fund ID       : 03302
Holder ID     : 11469902
Account ID    : 11464715
Contract No.  : 69556102
Date          : May-13-2009
Order No.     : 2234317
Email         : NEWISSUES_BACKOFFICE@IXIS-CIB.(
FAX Number    : 0033 1 5855 2475

Account name: NATIXIS

**FAIRFIELD SENTRY LIMITED**

In accordance with your instructions we confirm having REDEEMED the following voting shares from FAIRFIELD SENTRY LIMITED

| | | |
|---|---|---|
| Valuation/NAV Date | | Oct-31-2008 |
| Trade Date | | Nov-01-2008 |
| Payment Date | | Nov-19-2008 |
| No. of voting shares Redeemed | | 443.0000 |
| Redemption Price | USD | 1,349.7782 |
| Gross Redemption Proceeds | USD | 597,951.74 |
| Net Redemption Proceeds | USD | 597,951.74 |
| Amount to be Paid | USD | 597,951.74 |
| Proceeds Paid to Date | USD | 597,951.74 |

Your balance following this transaction will be 254,143.2069 voting shares.

This trade was executed on    Nov-14-2008
For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (31-20) 572 2850 Fax: (31-20) 572 2610 E-mail: amscfsclientdesk@citco.com

Citco Building
Telestone - Teleport
Naritaweg 165
1043 BW Amsterdam
The Netherlands

www.citco.com

Phone: (31-20) 5722100
Fax:   (31-20) 5722610
Chamber of Commerce 33205112

CONFIDENTIAL