# EXHIBIT B

# Baker Hostetler

Baker & Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

August 26, 2010

Ryan P. Farley
direct dial: 212.589.4607
rfarley@bakerlaw.com

VIA FEDERAL EXPRESS

Natixis Capital Markets Inc.
9 West 57th St.
New York, NY 10019-2701
Attn: Officer or Director Authorized to Accept Service

Re:   *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789-BRL: Subpoena for Rule 2004 Examination

To Whom It May Concern:

Enclosed please find a Subpoena for Rule 2004 Examination and a copy of the Court's January 12, 2009 Order in the matter of *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789-BRL. As required by the Court's January 12, 2009 Order, rolling production of documents must be completed within ten (10) days of the service of this subpoena. Please direct all productions to:

> Brian Esser, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

As set forth in Section C of Attachment A to the Subpoena, the Trustee requires that documents produced in electronic media include metadata and native files. Please call the undersigned before you produce documents to confirm you are producing your documents in an acceptable format.

In the event that you have any questions regarding this subpoena please direct them to Ryan P. Farley, 45 Rockefeller Plaza, New York, New York 10111, phone number (212) 589-4607, rfarley@bakerlaw.com.

Sincerely,

*Ryan P. Farley*
Ryan P. Farley

Enclosures

Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa
Denver    Houston    Los Angeles    New York    Orlando    Washington, DC

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern District of New York

Securities Investor Protection Corporation

        Plaintiffs,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* <u>Adv. Pro. No. 08-01789 BRL</u>

To:
Natixis Capital Markets Inc.
9 West 57th Street
New York, NY 10019-2701
Attn: Officer or Director Authorized to Accept Service

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this Subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Attention: Brian Esser, Esq. | September 13, 2010 |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| [signature]  Attorney | August 26, 2010 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
    Brian K. Esser, Esq.    Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

---

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____           _____
                    DATE                                                        SIGNATURE OF SERVER

                                                                                   _____
                                                                                   ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A
## TO SUBPOENA TO NATIXIS CAPITAL MARKETS INC.

### A.   DEFINITIONS AND INSTRUCTIONS

1.   The term "Natixis," "You" and "Your" means and includes Natixis Capital Markets Inc., IXIS Corporate & Investment Bank, IXIS Financial Products Inc., NATIXIS, Natixis Financial Products Inc., CDC Financial Products Inc., and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2.   The term "Madoff" or "BLMIS" refers to (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, employees, agents, representatives and any and all related entities including, but not limited to, Madoff Securities International LLC and Madoff Securities International, Ltd. ("MSIL"); Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC and Cohmad Securities Corporation; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff.

3.   "Madoff Fund" means any hedge fund, fund of funds, investment fund, trust, pool, partnership, limited partnership, company, limited liability company or other investment vehicle for the joint investment of monies or assets, wherever and however organized, that, at any time during the Applicable Period, had an account with, or was managed by, BLMIS, including, but not limited to, Fairfield Greenwich (defined below) and Tremont (defined below), and any other fund or investment vehicle bearing any of the following names:   Square One Fund, Legacy Capital, Mosaic Fund, Maxam Absolute, Gabriel Capital, Defender, Thybo Stable Fund, Thybo Return Fund, Groupement Financier, Plaza Investments International, M-Invest, Mount Capital, Lagoon Investment, Kingate Global Fund, Kingate Euro Fund, Ariel Fund, Ariel Capital, Ascot Fund, Ascot Partners, Andover Associates, Beacon Associates, Sandpiper Fund, Primeo Fund and Harley International Fund.

4.   The term "Structured Note" refers to any debt security or instrument, the return on which is calculated or derived by reference to another instrument, security, investment contract or transaction.

5.   The term "Swap" refers to any transaction or derivative in which counterparties exchange certain benefits of one party's financial instrument, transaction or arrangement for those of the other party's financial instrument, transaction or arrangement.

6.   The terms "Securities" or "Security" includes any financial instrument or contract including, but not limited to, equities, options and corporate or government obligations, including treasury bills.

7.   The term "Fairfield Greenwich" means and includes Fairfield Greenwich Group, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., Fairfield International Managers, Inc., Greenwich Sentry, L.P., Greenwich Sentry Partners, L.P., Fairfield Sentry Limited, Fairfield Lambda Limited, Fairfield Sigma

Limited, Fairfield Investment Fund Limited, Fairfield Strategies Ltd., Fairfield International, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates.

8.  The term "Tremont" includes without limitation, Tremont Group Holdings, Tremont Partners, Inc., Rye Select Broad Market Fund LP, Rye Select Broad Market Portfolio Limited, the Rye Select Broad Market Prime Fund L.P., Rye Select Broad market Insurance Portfolio LDC, the Rye Select Broad Market Insurance Fund LP, Rye Select Broad Market XL Fund, L.P., Rye Select Broad Market XL Portfolio Limited, and their respective officers, directors, employees, partners, members, corporate parent, subsidiaries, and affiliates.

9.  As used herein, the term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. The term "document" specifically includes responsive content regardless of the media upon which it is expressed including, but not limited to, paper, physical evidence and Electronically Stored Information, as that term is defined in the Federal Rules of Civil Procedure. "Document" includes, but is not limited to, all computerized data or content stored on electromagnetic media even if they are designated as drafts or as deleted. "Document" includes, but is not limited to, voicemail messages, audio files, all e-mail messages including but not limited to web-based email messages such as Gmail messages, text messages, and all other formats including but not limited to word processing, electronic spreadsheets, images, databases, Intranet system data, Internet system data, telephone or cellular telephone calling records, or data compilations. The term "document" includes "metadata" which includes, but is not limited to, all document properties, imbedded codes, links, and descriptions of the document's source as stored in the ordinary course of business. The term "document" includes all related content including, but not limited to, attachments to documents, linked documents and appended documents as well as descriptions of each document's organization such as custodians, files, etc. The term "document" includes multiple copies or versions of documents, an e-mail or its attachment(s) distributed to multiple recipients, or any other non-identical copy of a document so that each are separate documents within the meaning of this term. Identical copies of "documents" stored in distinct locations are separate documents within the meaning of this term.

10. As used herein, the term "communication" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 7026-1 of the Local Bankruptcy Rules and Civil Rule 26.3 of the Local District Rules. The term "communication" specifically includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or portrayed in any "document," and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) written communications, including communications by email.

11. As used herein, "Person" shall mean any natural person or any business, legal or governmental entity or association.

12. As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

13. The following rules of construction apply to this Subpoena:

    a.    "Any" and "all" shall be deemed to include the other;

    b.    the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

    c.    the terms "all" and "each" shall be construed as "all and each";

    d.    the use of the singular form of any word includes the plural and vice versa.

14. Except as otherwise noted, this Subpoena requires the production of documents created in or referencing the time period beginning January 1, 2000 and continuing until the present (the "Relevant Period").

15. Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

16. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a fair and accurate copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

17. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, reference, explain or are incorporated in or referenced by one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

18. Documents attached to each other should not be separated; separate documents should not be attached to each other.

19. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

20. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Corporation Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

21. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

### B. DOCUMENTS TO BE PRODUCED

1. All documents concerning any financing transactions or investment products or services offered by or issued by You that are or were in any way related to, linked to, or referenced to, or invested in Madoff or any Madoff Fund, or the return on which was in any way based on the performance of Madoff or any Madoff Fund, including, but not limited to, the Structured Notes and/or Swaps identified hereto on Attachment B.

2. All term sheets, confirmations, contracts, invoices and related materials concerning any financing transactions or investment products or services offered by or issued by You that were in any way related to, linked to, or referenced to, or invested in Madoff or any Madoff Fund, or the return on which was in any way based on the performance of Madoff or any Madoff Fund, including, without limitation, drafts and executed versions of transaction agreements.

3. All documents concerning the booking, accounting and tracking of the financing transactions or investment products or services described in requests one and two above.

4. All documents and communications concerning the decision to enter or not to enter into any such financing transactions or investment products or services that were designed, structured or intended to be in any way related to, linked to, or referenced to, or invested in Madoff or any Madoff Fund.

5. All prospectuses, offering memoranda, private placement memoranda or other similar offering or presentation material, including, but not limited to, term sheets, brochures, power point presentations and marketing or executive summaries, provided to prospective or existing clients, customers, shareholders, or other investors of Yours whose investments were directly or indirectly related to, or linked to, or referenced to Madoff or any Madoff Fund.

6. All documents concerning communications with counterparties or investors in investment products or services or financing transactions entered, offered or issued by You that were in any way related to, linked to, referenced to, or otherwise invested in Madoff or any Madoff Fund.

7. All documents relating to payments or redemptions made to or by counterparties or investors in financing transactions or investment products or services entered, offered or issued by You that were in any way related to, linked to, referenced to, or invested in Madoff or any Madoff Fund.

8. All documents related to any financing transactions or investment products or services not entered to or offered or issued by You that were in any way related to, referenced to, linked to, or invested in Madoff or any Madoff Fund.

9. All documents showing fees, profits, losses, or monies derived from financing transactions or investment products or services entered, offered or issued by You that were in any way related to or invested in Madoff or any Madoff Fund.

10. All documents relating to any financial exposure You had to Madoff or any Madoff Fund during the Relevant Period, whether directly or indirectly, at any time.

4

11. All documents showing the amount of Your funds or securities that were invested in Madoff, or any Madoff Fund, whether directly or indirectly.

12. All documents and communications regarding Your decision to invest or not to invest in Madoff or any Madoff fund.

13. Documents sufficient to show the redemptions or liquidation of any position in any Madoff Fund by You from January 2001 to the present.

14. All documents concerning Your communications internally or between You and any person, entity, organization, or institution relating to the decision to redeem or liquidate a position in any Madoff Fund.

15. All documents relating to any write-offs or liabilities that were tied to losses sustained as a result of Madoff's liquidation.

16. All documents concerning Your investment (for Your account or those of any of Your clients or counterparties or investors in Your financing transactions or investment products or services) in any Madoff Fund, including:

   (a) monthly statements, including account numbers;
   (b) historical account balance information;
   (c) incoming and outgoing wire transfer records;
   (d) copies of checks, both deposited and drawn;
   (e) records reflecting cash activity;
   (f) account opening documents;
   (g) subscription agreements;
   (h) administrative or custodial agreement;
   (i) account closing documents;
   (j) redemption or liquidation requests; and
   (k) all correspondence with the fund's personnel.

17. All communications between or about You and Madoff or any Madoff Fund.

18. All documents and communications between You and any third party concerning Madoff, Madoff Funds, or any financing transaction or investment products or services linked to any Madoff Fund.

19. All documents regarding Your investigation or due diligence, or requests for due diligence or interviews, conducted at any time regarding any Madoff Fund or Madoff, including, but not limited to, dates and results of on-site visits

20. All documents that refer or relate to any analyses, review, study, or investigation by any oversight committee, review committee, legal department, risk group, internal audit, compliance department, MIS alerts, "know your customer" group, credit or transactional monitoring, anti-money laundering group, or new account acceptance committee for the Madoff Funds.

5

21. All due diligence reports, annual review memoranda, credit approval memoranda, and related materials for Madoff and the Madoff Funds whether created internally or by a third-party, and all documents relied upon in preparing any such reports or memoranda, including, but not limited to, documents related to balance sheet/capital adequacy, derivatives risk, revenues, and credit exposure to Madoff.

22. All documents concerning Your policies and procedures regarding diligence or investigation that must be performed prior to investment of Your funds.

23. All documents and communications between You and Your outside auditor relating to Madoff or Madoff Funds.

24. All documents regarding efforts by Your private banking division(s) to invest or recommend investments in Madoff or Madoff invested funds.

25. All agreements and contracts between You and Madoff, including without limitation custody agreements, sub-custody agreements, demand promissory notes, qualified institutional buyer and purchaser agreements, limited liability company letter and security agreements, and agreements for broker-dealers.

26. All documents concerning Your policies and procedures with regard to preservation of documents for the Relevant Period, including any document preservation notices sent relating to Madoff and documents sufficient to show the recipients of any such notices.

27. Organization charts sufficient to identify your hedge fund research, hedge fund investment, hedge fund due diligence, and structured fund and/or products division(s), including equity derivatives departments.

### C. HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including, but not limited to, litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4.  Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including, but not limited to, a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5.  Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6.  Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's content.

# ATTACHMENT B
## TO SUBPOENA TO NATIXIS CAPITAL MARKETS INC.

The following swap transactions:

1. Confirmation between IXIS Corporate & Investment Bank and FIF 4X, Ltd, dated December 27, 2007.

2. Confirmation between IXIS Financial Products Inc. and Enhanced Guardian II Fund, Ltd., dated November 24, 2006.

3. Confirmation between IXIS Financial Products Inc. and Enhanced Fairfield Investment Fund, Ltd., dated October 25, 2006.

4. Confirmation between NATIXIS and FIF 4X, Ltd., dated February 27, 2008.

5. Amended and Restated Confirmation between IXIS Financial Products Inc. and Santa Clara Holdings Ltd., dated April 28, 2006.

6. Amended and Restated Confirmation between Natxis Financial Products Inc. and FMG Select Fund SPC Ltd., dated October 31, 2007.

7. Confirmation between CDC Financial Products Inc. and Groupement Financier Levered Limited, dated November 5, 2003.

8. Amended and Restated Confirmation between IXIS Financial Products Inc. and Groupement Financier Levered Limited, dated May 26, 2005.

9. Confirmation between Natixis Financial Products Inc. and Groupement Financier II Limited, dated November 5, 2007.

The following note programs linked to the performance of:

1. Fairfield Sentry
   - ISIN: XS0327859640
   - ISIN: XS0327859996
   - ISIN: XS0332062081
   - ISIN: XS0340937415
   - ISIN: XS0355745141
   - ISIN: XS0372972678

2. Fairfield Investment Fund Limited
   - FIF 4X Series A-2USD, ISIN: N/A

3. Irongate
   - ISIN: XS0372870088

4. Alpha Vol. Enhanced 1x1
   - ISIN: XS0372869742

5. Alpha Vol. Enhanced 1x2
   - ISIN: XS0385781892

6. Tensyr
   - ISIN: IE0094J30821

7. 5 year USD Denominated EMTN linked to the Performance of Volatility Alpha Enhanced Fund Limited.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiff,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

Defendant.

---

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

### ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3. The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4. The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5. The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6. Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7. Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8. If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9. Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
January 12, 2009

/s/ BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

-3-