

# EXHIBIT A

# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

November 19, 2009

Brian K. Esser
direct dial: 212.589.4236
besser@bakerlaw.com

**VIA FEDERAL EXPRESS**

Fortis Prime Fund Solutions (USA) LLC
Attn: General Counsel
520 Madison Avenue 3rd Floor
New York, New York 10022

Re:   *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC,* Adv. Pro. No. 08-01789-BRL: Subpoena for Rule 2004 Examination

Dear Sir or Madam:

Attached please find a Subpoena for Rule 2004 Examination and a copy of the Court's January 12, 2009 Order in the matter of *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC,* Adv. Pro. No. 08-01789-BRL. As required by the Court's January 12, 2009 Order, rolling production of documents must be completed within ten (10) days of the service of this subpoena. Please direct all productions to:

> Brian Esser, Esq.
> Baker & Hostetler LLP
> 45 Rockefeller Plaza
> New York, New York 10111

In the event that you have any questions regarding this subpoena please direct them to Frederick W. Chockley III, Baker & Hostetler LLP, Washington Square, Suite 1100, 1050 Connecticut Avenue, N.W., Washington, DC 20036, phone number (202) 861-1680, email fchockley@bakerlaw.com.

Sincerely,

Brian K. Esser

Enclosures

*Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC*

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN District of NEW YORK

Securities Investor Protection Corporation,

    Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

    Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* Adv. Pro. No. 08-01789 BRL

To:

Fortis Prime Fund Solutions (USA) LLC
Attn: General Counsel
520 Madison Avenue 3rd Floor
New York, New York 10022

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.:  212-589-4200<br>Attn:  Brian Esser, Esq. | December 2, 2009 at 1:00 p.m. |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| [signature] Attorney | November 19, 2009 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
              DATE                              SIGNATURE OF SERVER

                                                _____
                                                ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
  (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
  (2) Command to Produce Materials or Permit Inspection.
    (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
  (3) Quashing or Modifying a Subpoena.
    (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information;
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
      (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
    (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
  (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
    (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) Claiming Privilege or Protection.
    (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc
www.FormsWorkflow.com

## ATTACHMENT A
## TO SUBPOENA TO FORTIS PRIME FUND SOLUTIONS (USA) LLC

### A.  DEFINITIONS AND INSTRUCTIONS

### Definitions

1. The terms "FPFS," "you" and "your" mean and include Fortis Prime Fund Solutions (USA) LLC and all of its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives, including Fortis Prime Fund Solutions Bank Limited, Fortis PFS USA LLC, Fortis Prime Fund Solutions Administration Services Limited and Fortis Prime Fund Solutions Custodial Services Limited.

2. The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives, employees and any and all related entities, including but not limited to Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC and Cohmad Securities Corporation and their respective representatives and employees; and (b) Bernard L. Madoff and any relatives, including but not limited to Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff.

3. The term "Fund" means any hedge fund, fund of funds or similar investment fund, trust, pool or other vehicle for the joint investment of investor monies or assets, wherever and however organized, that invested (directly or indirectly) in Madoff.

4. The term "Striker" refers to Striker Fund (BVI) and any sub-funds it may have, its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives.

5. The term "Defender" refers to Defender Limited and any sub-funds it may have, its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives.

6. The term "Harley" refers to Harley International (Cayman) Fund Limited, Harley International Fund Limited and any sub-funds it may have, its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives.

7. The term "Fiman" refers to Fiman Limited (Gibraltar) and all of its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors,

principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives.

8.   The term "Reliance" includes Reliance International Research LLC and all of its subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives, including Reliance International LLC, and Reliance Research LLC.

9.   The term "Reliance International" includes Reliance Management (BVI) Limited, Reliance Multi-Advisor Fund Limited, and Reliance Management (Gibraltar) Limited and all of their subsidiaries, affiliates, divisions, groups, branches, agencies, representative offices, predecessors, successors, principals, members, officers, directors, shareholders, managers, employees, authorized agents, both *de jure* and *de facto*, and representatives.

10.   The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Bankruptcy Procedure 2004 and Federal Rule of Civil Procedure 34, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets and drafts of electronic spreadsheets. A draft or non-identical copy is a separate document within the meaning of this term.

11.   As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, or in electronic format or hard copy, and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) e-mails (with attachments), text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

12.   As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, constituting or referencing.

13.   The following rules of construction apply to this Subpoena:

   a.   "any" and "all" shall be deemed to include the other;

   b.   the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

   c.   the terms "all" and "each" shall be construed as "all and each"; and

   d.   the use of the singular form of any word includes the plural and vice versa.

14. The date range for this production of documents includes all documents in your actual or constructive possession or custody, or subject to your control between January 1, 1994 and the present.

### Instructions

1. Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

2. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a fair and accurate copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

3. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

4. Documents attached to each other should not be separated; separate documents should not be attached to each other.

5. Documents should include all exhibits and appendices which are referenced in, attached to, included with or are a part of the requested documents.

6. If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Act Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

7. If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

## B.    DOCUMENTS TO BE PRODUCED

1. All organizational documents of FPFS, including but not limited to articles of incorporation, limited partnership, limited liability company or trust agreements, memoranda of association and articles of association, or any document with an equivalent function, in each as originally constituted and as amended or otherwise modified through the date of your response.

2. All prospectuses, offering memoranda, private placement memoranda or other similar offering or presentation material, including but not limited to term sheets, brochures, power point presentations and marketing or executive summaries, provided to prospective or existing clients, customers, shareholders, or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance, or Reliance International.

3. All investment advisory, management or consulting contracts or similar agreements provided to prospective or existing clients, customers, shareholders, or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund, or which govern the provision of services by FPFS or any affiliated or related entity to or in connection with FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund.

4. All account opening documents provided to prospective or existing clients, customers, shareholders, or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund.

5. All disclosures provided to prospective or existing clients, customers, shareholders, or other investors concerning investment strategies and advisement or performance in relation thereto by FPFS.

6. All documents concerning the due diligence process used by FPFS, Striker, Defender, Harley, Fiman, Reliance, or Reliance International to oversee investments of sub-advisers or unaffiliated managers used by Striker, Defender, Harley, or any other Fund.

7. Any disclosure document or finder or solicitation fee disclosure document used in relation to Striker, Defender, Harley or any other Fund.

8. Documents sufficient to identify all clients, customers, shareholders or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance and Reliance International.

9. Fee schedule(s) or consulting fees of FPFS, Fiman, Reliance or Reliance International.

10. A copy of each financial statement of FPFS, Striker, Defender, Harley, Fiman, Reliance or Reliance International, including but not limited to audited annual statements, unaudited quarterly and other interim statements, and including all related footnotes, schedules and exhibits.

11. All documents concerning bank accounts or brokerage accounts of FPFS, Striker, Defender, Harley, Fiman, Reliance and Reliance International, regardless of the

institution in which the account is maintained, including operating accounts and accounts maintained for any other purpose, and including monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, account closing documents, and account background.

12. All documents concerning membership in the Managed Funds Association ("MFA") by FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International and, if a member, the identity of the principals or employees who are or were on any MFA board, committee, or working group.

13. All documents detailing any financial transaction entered into by any entity in which any of the following persons has an ownership interest, managerial position, business authority or consultant role: Manuel Echeverria, Francisco Botin, Guillermo Morenes, David Whitehead, Linda Wayman, Nicola Green, Timothy Brockmann, Justin Lowe, Juan Antonio Jimenez Izquierdo, Jakob Hirschbaeck, Sonja Kohn, Butler Darragh, James Kelly, John Briody, Adrian Craig, Damian Keane, Miriam Walsh, Monique Molenaar-Vader, Noel Fahy.

14. All documents showing any ownership interest in FPFS or any affiliated entity, or subsidiary by Manuel Echeverria, Francisco Botin, Guillermo Morenes, David Whitehead, Linda Wayman, Nicola Green, Timothy Brockmann, Justin Lowe, Juan Antonio Jimenez Izquierdo, Jakob Hirschbaeck, Sonja Kohn, Butler Darragh, James Kelly, John Briody, Adrian Craig, Damian Keane, Miriam Walsh, Monique Molenaar-Vader, Noel Fahy.

15. All documents comprising or concerning communications, in electronic format or hard copy, regarding Madoff, including but not limited to direct or indirect communications between and among Madoff, FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International, any Fund, Fidux Trust Company Limited (Gibraltar), Fidux Trust Company Limited (UK), M&B Capital Advisers, Optimal Investment Services, Bank Medici, Manuel Echeverria, Francisco Botin, Guillermo Morenes, David Whitehead, Linda Wayman, Nicola Green, Timothy Brockmann, Justin Lowe, Juan Antonio Jimenez Izquierdo, Jakob Hirschbaeck, Sonja Kohn, Butler Darragh, James Kelly, John Briody, Adrian Craig, Damian Keane, Miriam Walsh, Monique Molenaar-Vader, Noel Fahy.

16. All pitch books, advertisements, website information on services or investments, one-on-one presentations, pamphlets, brochures, performance records, and any other promotional and/or marketing materials furnished to existing and/or prospective clients, customers, shareholders, or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund for each investment strategy or mandate using or permitting an investment in Madoff and the role in these investments of FPFS, Striker, Defender, Harley, Fiman, Reliance, or Reliance International.

17. All documents concerning the selection of Madoff as an asset manager for Striker, Defender, Harley, or any other Fund, and FPFS's role in the selection.

18. All agreements, account opening documentation, offering documents or other legal documents executed between FPFS and Striker, Defender, Harley, Fiman, Reliance, and Reliance International, including but not limited to sub-advisory and/or solicitation agreements, investment contracts, and subscription and limited partnership agreements.

19. All documents concerning any and all investments with Madoff, by account and name of Fund or client(s), customer(s), shareholder(s) or other investor(s), including but not limited to investments made by Striker, Defender, Harley, or any other Fund or investments made by or on behalf of clients, customers, shareholders or other investors of Striker, Defender, Harley or any other Fund.

20. Records of all money or property transmitted to Madoff (directly or indirectly) by any person concerning any investment with Madoff including FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund, and records of all money or property received from Madoff or on its behalf by FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund.

21. Records of all services provided (directly or indirectly) by Madoff to FPFS, Fidux Trust Company Limited (Gibraltar), Fidux Trust Company Limited (UK), M&B Capital Advisers, Optimal Investment Services, Bank Medici, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund.

22. Records of all services performed by any person concerning any Fund (directly or indirectly), including FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International, including all agreements, fees, commissions, or payments.

23. All documents concerning any and all withdrawals and/or redemptions of investments in Madoff (directly or indirectly) by any person concerning any investment with Striker, Defender, Harley, or any other Fund, or by or on behalf of clients, customers, shareholders or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund, by account and name of Fund and client(s), customer(s), shareholder(s) or other investor(s).

24. With respect to Request numbers 19, 20, and 23 above, provide documents sufficient to identify the method(s) used to make the investment(s) or redemption(s) (e.g., check or wire transfer). Include copies of checks (front and back) and documentation clearly denoting the Madoff entity receiving or, in the case of redemptions, funding the check. For wire transfers, provide all instructions or requests, including wire transfer instructions, with respect to investor's investments or redemptions.

25. All Madoff account statements, including but not limited to custodian and executing broker statements and confirmations, concerning any Fund, and including all statements sent by FPFS to any person with an account who invested in any Fund.

26. Documentation sufficient to estimate the loss (or gain) incurred by Striker, Defender, Harley, or any other Fund on investments in Madoff, by account.

6

27. Documents sufficient to demonstrate all fees, commissions, rebates or other compensation arrangements and/or payments between FPFS and Striker, Defender or Harley. This request includes, but is not limited to, any and all arrangements and/or payments through third parties, including but not limited to Fiman, Reliance, Reliance International, Fidux Trust Company Limited (Gibraltar), Fidux Trust Company Limited (UK), M&B Capital Advisers, Optimal Investment Services, Bank Medici, Manuel Echeverria, Francisco Botin, Guillermo Morenes, David Whitehead, Linda Wayman, Nicola Green, Timothy Brockmann, Justin Lowe, Juan Antonio Jimenez Izquierdo, Jakob Hirschbaeck, Sonja Kohn, Butler Darragh, James Kelly, John Briody, Adrian Craig, Damian Keane, Miriam Walsh, Monique Molenaar-Vader, Noel Fahy.

28. All documents relating to due diligence of Madoff by FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund (whether by itself or through third parties), including the dates and results of on-site visits, the names/titles of individuals who made the on-site visits; verification of compliance procedures; review of custody arrangements, prime brokerage agreements between Madoff and any entity, DVP/RVP agreements, or side letters; determinations of the identity of auditor(s), reasons for any change in auditor, and confirmation letters received from auditors; review of audited and/or unaudited financial statements; determination of the identity of Madoff legal counsel or the identity of any third party service provider; and documents describing Madoff's management structure, including any description of how much time Bernard Madoff devotes or devoted to the investment advisory business.

29. All documents concerning any efforts made by FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International or any other Fund to verify Madoff's securities holdings positions and pricing information.

30. All documents concerning Madoff's performance for Striker, Defender, Harley, and/or any other Fund.

31. All documents furnished to existing or prospective clients, customers, shareholders or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance or Reliance International concerning the periodic performance and investment activity of Striker, Defender or Harley, and any status reports prepared by Striker, Defender, Harley, FPFS, Fiman, Reliance, Reliance International or Madoff.

32. All documents and communications, in oral, electronic or hard copy format, concerning Madoff's investment strategy and performance, including but not limited to any and all references to consistency of returns, guaranteed returns, market making business, front-running, Ponzi schemes, fraud or fraudulent schemes.

33. All documents concerning any complaints or claims filed with any court, regulatory authority, or criminal authority concerning any investments in Madoff received by FPFS, Striker, Defender, Harley, Fiman, Reliance or Reliance International.

34. All documents concerning any inquiry, request for documents, subpoena, investigation or litigation by a U.S. or foreign regulatory authority or law enforcement concerning Madoff or any investment in Madoff to the extent that disclosure is not prohibited by law.

35. All documents concerning litigation or arbitration by any private party for any reason concerning Madoff or any investment in Madoff.

36. All documents concerning any decision or discussions to dissolve or unwind FPFS, Striker, Defender, Harley, Fiman, Reliance, Reliance International, whether or not related to any investment in Madoff, and any discussions or communications with any client, customer, shareholder or other investor of FPFS, Striker, Defender, Harley, Fiman, Reliance, or Reliance International regarding potential dissolution or unwinding.

37. All books, records and other documents, including Form K-1s, concerning admissions, capital contributions, withdrawals, redemptions, distributions on withdrawal or redemption, and any other distributions into or out of any Fund, including but not limited to the amounts, dates and payees, by any clients, customers, shareholders or other investors of FPFS, Striker, Defender, Harley, Fiman, Reliance or Reliance International.

38. With respect to Request 37 above, provide documents sufficient to identify the method(s) used to make the investment(s) or redemption(s) (e.g., check or wire transfer). Include copies of checks (front and back), and documentation clearly denoting the entity receiving, or in the case of redemptions, funding the check. For wire transfers, provide all instructions or requests, including wire transfer instructions, with respect to clients', customers', shareholders' or other investors' investments or redemptions.

39. Documents sufficient to show the last known address, telephone number, and any other contact information for the following individuals: Manuel Echeverria, Francisco Botin, Guillermo Morenes, David Whitehead, Linda Wayman, Nicola Green, Timothy Brockmann, Justin Lowe, Juan Antonio Jimenez Izquierdo, Jakob Hirschbaeck, Sonja Kohn, Butler Darragh, James Kelly, John Briody, Adrian Craig, Damian Keane, Miriam Walsh, Monique Molenaar-Vader, Noel Fahy.

40. Documents sufficient to disclose the dollar value of all assets under management, or for which FPFS has any consulting responsibility, as of the end of the most recent calendar month.

## C. HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4. Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5. Documents and their metadata portrayed in unstructured files generated by commercially available software systems, excluding e-mails, and structured electronic databases, such as word processing, spreadsheet, image files and text files, shall produced as those files were stored in the ordinary course of business.

6. Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files, which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document was created or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that is reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789-BRL<br><br>SIPA Liquidation |

### ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3. The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4. The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5. The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6.  Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7.  Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8.  If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9.  Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
       January 12, 2009

/s/ BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE