# Baker Hostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Brian K. Esser
direct dial: 212.589.4236
besser@bakerlaw.com

March 13, 2009

<u>VIA FEDERAL EXPRESS OR EXPRESS MAIL</u>

ABN Amro
P.O. Box 283
1000 EA
Amsterdam, Netherlands
Attn: Corporate Communications or Officer/Director
   Authorized to Accept Service

Head Office
Gustav Mahlerlaan 10
1082 PP
Amsterdam, Netherlands
Attn: Officer or Director Authorized to Accept Service

Re:   *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789-BRL: Subpoena for Rule 2004 <u>Examination</u>

Dear Sir or Madam:

Enclosed please find an original or a courtesy copy of a Subpoena for Rule 2004 Examination and a copy of the Court's January 12, 2009 Order in the matter of *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789-BRL. We seek your voluntary cooperation and production of the documents described in the attached subpoena. As set forth in the Court's January 12, 2009 Order, rolling production of documents should be completed within ten (10) days of the service of this subpoena. Please direct all productions to:

   Brian Esser, Esq.
   Baker & Hostetler LLP
   45 Rockefeller Plaza
   New York, New York 10111

Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC

ABN Amro
March 13, 2009
Page 2

In the event that you have any questions regarding this subpoena please direct them to Heather Wlodek, Baker & Hostetler LLP, 45 Rockefeller Plaza, New York 10111, telephone: (212) 589-4663, e-mail: hwlodek@bakerlaw.com.

Sincerely,

*Brian K. Esser*

Brian K. Esser

Enclosures

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN District of NEW YORK

Securities Investor Protection Corporation,

        Plaintiff,

v.

Bernard L. Madoff Investment Securities LLC,

        Defendant.

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* Adv. Pro. No. 08-01789 BRL

To:
    ABN Amro
    P.O. Box 283
    1000 EA
    Amsterdam, Netherlands
    Attn:    Corporate Communications or
             Officer/Director Authorized to Accept Service

    Head Office
    Gustav Mahlerlaan 10
    1082 PP
    Amsterdam, Netherlands
    Attn:    Officer or Director Authorized to Accept Service

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents described in Attachment A to this subpoena.

| PLACE | DATE AND TIME |
|---|---|
| Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Tel.:   212-589-4200<br>Attn:  Brian Esser, Esq. | March 30, 2009<br>1:00 p.m. |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| [signature] Attorney | March 13, 2009 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Brian K. Esser, Esq.  Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, NY 10111    (212) 589-4200

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

American LegalNet, Inc.
www.FormsWorkflow.com

B254 (Form 254 – Subpoena for Rule 2004 Examination) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
　　　　　　　　　　DATE　　　　　　　　　　　　　　　　SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
　(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
　(2) Command to Produce Materials or Permit Inspection.
　　(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　　(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　　(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
　　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
　(3) Quashing or Modifying a Subpoena.
　　(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
　　　(i) fails to allow a reasonable time to comply;
　　　(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
　　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　　(iv) subjects a person to undue burden.
　　(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
　　　(i) disclosing a trade secret or other confidential research, development, or commercial information;
　　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
　　　(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
　　(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　　(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
　(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
　　(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　　(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　　(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
　　(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
　(2) Claiming Privilege or Protection.
　　(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　　(i) expressly make the claim; and
　　　(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　　(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A
## TO SUBPOENA TO ABN AMRO

### A. DEFINITIONS AND INSTRUCTIONS

1. The term "ABN Amro," "you" and "your" mean and include ABN Amro and any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, officer, director, shareholder, manager, employee, agent or representative thereof.

2. The term "Madoff" refers to (a) Bernard L. Madoff Investment Securities, LLC, its parents, affiliates, representatives and any and all related entities including, but not limited to, Madoff Securities International LLC; Madoff Securities International, Ltd.; Madoff Energy; Madoff Technologies; BLM Air Charter LLC; Madoff Family LLC; Abel Automatics, Inc.; Abel Holdings, LLC and Cohmad Securities Corporation; and (b) Bernard L. Madoff and any and all relatives including, but not limited to, Ruth Madoff; Peter Madoff; Sondra Madoff/Wiener; Marvin Wiener; Charles Wiener; Marion Madoff; Shana Madoff; Andrew Madoff; Deborah Madoff; Mark Madoff; Jennifer Madoff and Stephanie Madoff.

3. The term "account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value held, maintained, made or extended by, to or from Madoff in Madoff's name or for Madoff's benefit, or any other person or entity that Madoff owns or controls or on whose behalf Madoff has power or authority or otherwise purports to act, alone or with other persons, or by Madoff for the benefit or use of any other person or entity.

4. The term "Account" refers to the following:

| Account Name | Type of Account |
| --- | --- |
| Bernard L. Madoff Investment Securities LLC | Custody Account |

5. The term "Fund Account" means any account into which any ABN Amro customer received funds, whether by wire transfer or check, from Madoff, regardless of whether that account was held by Madoff or any other accountholder, including the following:

| Fund Family | Account Name | Account Number |
| --- | --- | --- |
| Thybo | Thybo Asset Management | 1FR069 |

6. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Bankruptcy Procedure 2004, including, without limitation, audio files, electronic text or other computerized data. The term "document" specifically includes voicemail messages, e-mail messages, draft and deleted e-mail messages, text messages, electronic spreadsheets and drafts of electronic spreadsheets. A draft or non-identical copy is a separate document within the meaning of this term.

102729693

7. As used herein, the term "communication" includes any transmittal or receipt of information, whether by chance or prearranged, formal or informal, oral or written, and specifically includes: (a) conversations, meetings and discussions in person; (b) conversations, meetings and discussions by telephone or through telephonic messages; and (c) e-mail, text messages, instant messages, telegrams, letters, faxes, memoranda, formal statements, press releases and newspaper stories.

8. As used herein, the term "concerning" means directly or indirectly, in whole or in part, relating to, describing, reflecting, evidencing, embodying, constituting or referencing.

9. The following rules of construction apply to this Subpoena:

   (a) "Any" and "all" shall be deemed to include the other;

   (b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Subpoena all responses that might otherwise be construed to be outside of its scope;

   (c) the terms "all" and "each" shall be construed as "all and each"; and

   (d) the use of the singular form of any word includes the plural and vice versa.

10. Except as otherwise noted, this Subpoena requires the production of documents created in or referencing the time period beginning at the inception of ABN Amro's relationship with Madoff and continuing until the present (the "Relevant Period"). For purposes of this definition, the term "relationship" means either a direct relationship with Madoff, or an indirect relationship with Madoff through a third party.

11. Produce all documents and all other materials described below in your actual or constructive possession or custody, or subject to your control.

12. Produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof and should be legible and bound or stapled in the same manner as the original.

13. Documents not otherwise responsive to this Subpoena should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by this Subpoena, or if such documents are attached to documents called for by this Subpoena and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

14. Documents attached to each other should not be separated; separate documents should not be attached to each other.

15. Documents should include all exhibits or appendices which are referenced in, attached to, included or are a part of the requested documents.

16.     If any document is withheld from production due to an assertion of the attorney-client privilege, the work product doctrine or any other privilege or protection against production, you must identify each such document in a manner sufficient to permit the Securities Investor Protection Corporation Trustee to evaluate the claimed privilege or protection. At a minimum, such identification shall include, as to each document: (a) its date; (b) its author; (c) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; (d) a description of the subject matter; and (e) the privilege or protection claimed.

17.     If any document sought by this Subpoena once was, but no longer is, within your possession, custody, or control, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discard, theft or other disposal of the document.

## B.     DOCUMENTS TO BE PRODUCED

1.      All documents concerning any Fund Account, including monthly statements, account numbers, account holders, signatories, present and historical account balance information, incoming and outgoing wire transfer records, copies of checks deposited, copies of checks drawn, records reflecting cash activity, account opening documents, administrative or custodial agreements between the holder of the Fund Account and ABN Amro, or account closing documents and account background.

2.      Any and all monthly account statements for the Account and for any accounts maintained by or for the benefit of Madoff, or any accounts for which Madoff had signing authority.

3.      Any and all account opening documents submitted to ABN Amro for the Account and for any accounts maintained by or for the benefit of Madoff, or any accounts for which Madoff had signing authority.

4.      All documents relating to ABN Amro's pre-account opening due diligence (whether by itself or through third parties) of Madoff, including dates and results of on-site visits, names/titles of individuals who made the on-site visits, checks of compliance procedures, custody arrangements, etc. for the Account and for any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

5.      All documents that refer or relate to any efforts ABN Amro made to verify Madoff's account balances, securities holdings positions and pricing information for the Account and for any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

6.      Any and all wire transfer records for the Account and for any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

7.      Any and all documents indicating the names and addresses of all authorized signatories for the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

102729693

8.  True copies of any and all checks drawn on the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

9.  True copies of any and all canceled checks for the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

10. True copies of any and all deposit slips for the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

11. True copies of any and all withdrawal slips for the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

12. True copies of the signature cards on file for the Account and any accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

13. All documents that refer or relate to any analyses, review, study, or investigation by any oversight committee, review committee, legal department, risk group, internal audit, compliance department, "know your customer" group, or new account acceptance committee of Madoff for the Account and for accounts maintained by or for the benefit of Madoff, including accounts for which Madoff had signing authority.

14. All documents that refer or relate to transaction monitoring conducted of Madoff accounts generated by ABN Amro, including the Account and accounts for which Madoff had signing authority.

15. All documents that refer or relate to referrals or reports made by ABN Amro to law enforcement, regulators, self-regulatory organizations about Madoff, including accounts for which Madoff had signing authority, and all documents reflecting decisions to not make such a referral about Madoff, including accounts for which Madoff would have had signing authority.

16. All documents that refer or relate to any accounts that Madoff sought to open or new business relationships that Madoff sought to initiate that were refused for any reason by ABN Amro, including accounts for which Madoff would have had signing authority.

17. All documents that refer or relate to subpoenas served on ABN Amro that relate to Madoff, including documents produced in response to the subpoena, investigations initiated as a result of such a subpoena and any other actions taken by ABN Amro.

18. All documents concerning any complaints received by ABN Amro concerning any investments in Madoff.

19. All documents concerning any threatened or pending investigation, litigation or arbitration concerning Madoff and/or any account maintained by or for the benefit of Madoff at ABN Amro, including the Account and accounts for which Madoff had signing authority.

20. To the extent not provided pursuant to the foregoing requests, any and all documents relating to Madoff and/or any accounts maintained by or for the benefit of Madoff at ABN Amro, including the Account and accounts for which Madoff had signing authority.

102729693

### C. HOW DOCUMENTS ARE TO BE PRODUCED

1. All documents and their metadata portrayed on electronic or electro-magnetic media shall be produced in the form or forms in which the documents are stored in the ordinary course of business, retaining all reasonably accessible metadata, but so as to be in a reasonably usable form enabling, through reasonably modest effort, the Requesting Party to fairly, accurately and completely access, search, and display and comprehend the documents' contents.

2. All documents and their metadata that have been fairly and accurately portrayed within a commercially available document review database including but not limited to litigation support databases shall be produced within that database or in a format that can be directly loaded into such database. Even after producing documents in the document review database format, the documents' originals or their fair and accurate representations shall be preserved as they exist in the ordinary course of business.

3. Documents and their metadata portrayed in the ordinary course of business within commercial, off-the-shelf e-mail systems including Microsoft Exchange™, Lotus Notes™ or IBM Groupwise™ shall be produced in their native format, in alternative readily accessible industry-standard formats that fairly, accurately and completely represent such documents.

4. Documents and their metadata portrayed in structured electronic databases or files (excluding e-mail) shall be produced in a format that enables programmatic management of those documents and their importation into a database. The documents must be accompanied with reasonably detailed, clear and focused documentation explaining the documents' content and format including but not limited to a data dictionary and data diagrams. Some acceptable formats include: (a) XML format file(s) but only if provided with definitive file(s), table(s) and field level schemas; (b) Microsoft SQL database(s) but only if provided with definitive file(s), table(s) and field level schemas; (c) Access database(s) but only if provided with definitive file(s), table(s), and fields level schemas; (d) fixed or variable length ASCII delimited files but only if provided with definitive file(s), tables(s) and field level schemas.

5. Documents and their metadata portrayed in unstructured files generated by commercially available software system excluding e-mails and structured electronic databases such as word processing, spreadsheet, image files, text files shall produced as those files were stored in the ordinary course of business.

6. Documents and their metadata portrayed on paper or in an industry-standard image format shall be produced in image format (200 – 300 bpi in group 3 TIF format or in TIF format). In addition, the relationships among the images shall be described with respect to the how the images relate to one another (as to document and attachment boundaries, folder boundaries, and other groupings) using industry-standard or other reasonably usable electronic data load files which shall be accompanied with reasonably detailed, clear and focused documentation explaining the load files' content. In addition, the text of the documents generated at the time the document or subsequently generated through industry-standard Optical Character Recognition (OCR) technology shall be produced in a format that reasonably usable. In addition, all available descriptions of the documents' properties shall be produced in a

102729693

reasonably accessible data description file along with reasonably detailed, clear and focused documentation explaining such file's contents.

102729693

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff,

        v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

Adv. Pro. No. 08-01789-BRL

SIPA Liquidation

---

**ORDER GRANTING AUTHORITY TO ISSUE SUBPOENAS FOR THE
PRODUCTION OF DOCUMENTS AND THE EXAMINATION OF WITNESSES**

This matter came before the Court on the motion (the "Motion")[1] of Irving H. Picard, Esq. ("Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("Debtor"), for an order authorizing the Trustee to compel the production of documents and the testimony of witnesses through the issuance of Rule 2004 Subpoenas without further order of the Court and establishing procedures in connection with such subpoenas, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein; and it appearing that the relief requested by the Motion is necessary and in the best interests of the estate, its customers, its creditors, and all parties in interest; and due notice of the Motion having been given, and it appearing that no other or further notice need be given; and the Court having determined that the Trustee articulated good cause for the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the proceedings before the Court and after due deliberation,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Trustee hereby is authorized to issue and serve Rule 2004 Subpoenas for examinations pursuant to Bankruptcy Rule 2004 without further order of the Court.

3. The Trustee shall serve each Rule 2004 Subpoena and a copy of the order entered pursuant to this Motion on (i) the target of the Rule 2004 Subpoena, (ii) SIPC, (iii) the SEC, (iv) the Internal Revenue Service, and (v) the United States Attorney for the Southern District of New York.

4. The Trustee shall cooperate fully with the U.S Department of Justice, and any other federal agency designated by them (collectively, the "Government"), in any matter that the Government is currently or in the future may be investigating regarding the Debtor, its management or its financial condition. The Trustee shall use best efforts to coordinate with the Government in order to avoid unnecessary interference with any investigations conducted by the Government. The Trustee will follow a reasonable protocol to be established jointly with the Government for the sharing of information and such sharing shall be subject to appropriate conditions to protect the Debtor's estate, including but not limited to, the preservation of the attorney-client privilege and protections of the work product doctrine. If the Trustee and the Government disagree as to the appropriateness of a proposed action to be taken pursuant to this Order, the Trustee reserves the right to seek a determination from the Court.

5. The Trustee shall file with the Court an affidavit or declaration of service for each Rule 2004 Subpoena he serves.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

6. Recipients of a Rule 2004 Subpoena and any party in interest shall have ten (10) days after any Rule 2004 Subpoena is served to object to and/or seek to quash such Rule 2004 Subpoena.

7. Recipients of a Rule 2004 Subpoena are directed to produce, on a rolling basis, all responsive documents within ten (10) days of the service of the subpoena (unless otherwise agreed by the Trustee), subject to any documents withheld under a claim of privilege.

8. If a witness withholds any documents based upon a claim of privilege, the witness shall provide counsel for the Trustee with a privilege log containing the information required under Bankruptcy Rule 7026(a)(5), within ten (10) days of the service of a subpoena upon that witness (unless otherwise agreed by the Trustee).

9. Recipients of a Rule 2004 Subpoena are directed to submit to oral examination upon reasonable notice and, absent other agreement with the Trustee, in no event more than fifteen (15) days from the service of a deposition subpoena upon the recipient of said subpoena.

10. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
January 12, 2009

/s/ BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE