UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :          Adv. Proc. No. 08-01789 (SMB)
                                        :
          Plaintiff,                    :          SIPA LIQUIDATION
                                        :
          -against-                     :          (Substantively Consolidated)
                                        :
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                         :
                                        :
          Defendant.                    :
--------------------------------------------------------X
                                        :
In re:                                  :
                                        :
BERNARD L. MADOFF,                      :
                                        :
          Debtor.                       :
--------------------------------------------------------X
                                        :
IRVING H. PICARD, trustee for the liquidation :
of Bernard L. Madoff Investment Securities    :          Adv. Proc. No. 10-04292 (SMB)
LLC,                                    :
                                        :
          Plaintiff,                    :
                                        :
          -against-                     :
                                        :
ROBERT ROMAN,                           :
                                        :
          Defendant.                    :
--------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND
DENYING IN PART TRUSTEE'S MOTION TO COMPEL DISCOVERY**

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

          David J. Sheehan, Esq.
          Nicholas J. Cremona, Esq.

Maximillian S. Shifrin, Esq.
      Of Counsel
*Attorneys for Irving H. Picard, Trustee*
  *for the Liquidation of Bernard L. Madoff*
  *Investment Securities LLC*

CHAITMAN LLP
465 Park Avenue
New York, NY 10022

Helen Davis Chaitman, Esq.
Gregory M. Dexter, Esq.
      Of Counsel
*Attorneys for Robert Roman*


Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), has moved to compel discovery from the

defendant Robert Roman ("Roman") regarding certain written communications with

Bernard Madoff.  (*See Trustee's Memorandum of Law In Support of His Motion to*

*Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B)*, dated June 14, 2017

(the "*Motion*") (ECF Doc. # 88[1]).)  Having reviewed the written communications *in*

*camera* and the relevant authorities cited by the parties, the Court concludes that the

*Motion* should be granted in part and denied in part.


## BACKGROUND

The Court assumes familiarity with the circumstances surrounding Bernard

Madoff's Ponzi scheme and the on-going prosecution of hundreds of avoidance actions

by the Trustee against former BLMIS customers.  *See SIPC v. BLMIS* (*In re BLMIS*),

---

[1]      "ECF Doc. # ___" refers to documents filed on the electronic docket of this adversary proceeding.
"ECF Main Case Doc. # ___" refers to documents filed on the electronic docket of the BLMIS SIPA
liquidation.

424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012); *SIPC v. BLMIS* (*In re BLMIS*), 531 B.R. 439, 446-47 (Bankr. S.D.N.Y. 2015).  In this adversary proceeding, the Trustee seeks to avoid and recover alleged fictitious profits in the sum of $410,000 that Roman withdrew from his BLMIS account within two years of December 11, 2008 (the "Filing Date") as intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A).  (*See Complaint*, dated Nov. 12, 2010 ("*Complaint*"), at ¶ 38 & Ex. B, Column 10 (ECF Doc. # 1).)  Roman is the husband of Joan Roman[2] (together, the "Romans"), who is Bernard Madoff's sister-in-law.  (*Id.*, ¶ 8; *Answer and Affirmative Defenses*, dated Aug. 13, 2015, at ¶ 8 (ECF Doc. # 51).)

On October 19, 2016, the Trustee served Roman with his *First Set of Requests for Production of Documents* ("*Document Requests*") and *First Set of Interrogatories* ("*Interrogatories*," and together with the *Document Requests*, the "*Discovery Requests*").[3]  Relevant to the *Motion*, the *Discovery Requests* sought information regarding any communications Roman, or his counsel—Chaitman LLP ("Chaitman"),[4] had with Madoff since the Filing Date.  (*See Document Requests* at ¶¶ 22, 23; *Interrogatories* at ¶ 21.)  Roman objected to those *Discovery Requests* claiming, among other things, that the communications were privileged.  (*See Shifrin Declaration*, Ex. C at 7; *and* Ex. D at 9.)

---

[2]    Joan Roman is a defendant in a separate avoidance action.  *See Picard v. Joan Roman*, Adv. Proc. No. 10-04302 (SMB).

[3]    Copies of the *Document Requests* and the *Interrogatories* are attached as Exhibits A and B to the *Declaration of Maximillian S. Shifrin in Support of the Trustee's Motion to Compel*, dated June 14, 2017 ("*Shifrin Declaration*") (ECF Doc. # 89).

[4]    Chaitman represents defendants in many claw back proceedings brought by the Trustee.

The Trustee deposed Roman on May 17, 2017.  The Trustee's counsel asked Roman about his post-Filing Date communications with Madoff, and Roman testified that he and Madoff had exchanged a total of six "letters," three from Roman to Madoff and three from Madoff to Roman.  (*Transcript of May 17, 2017 Deposition* at 55:19-56:22).[5]  When the Trustee's counsel attempted to question Roman about the communications, Roman's lawyer, Helen Chaitman, Esq., directed Roman not to answer based on the work product privilege.  (*Id.* at 56:25-58:8; 59:12-60:8; 61:19-62-7.)

The *Motion*, filed one month later, sought to compel Roman to produce the six "letters."  The *Motion* argued that the "letters" sent by Madoff to Roman were not privileged, and the Trustee could not determine if the "letters" sent by Roman to Madoff constituted work product because Roman had not produced a privilege log.  (*Motion* at 2.)  Nevertheless, the communications were relevant and discoverable under Federal Civil Rule 26(b) because Madoff had been designated as an important fact witness in the PW Proceeding and the Fraud Proceeding (each defined below).  (*Id.* at 5.)  The Trustee also argued that the communications were relevant for impeachment purposes.  (*Id.* at 5-6.)  Finally, the Trustee asserted that communications sent *by* Madoff fell outside the scope of the work-product doctrine, (*id.* at 6-7), and Roman waived any work-product protection when he sent communications to Madoff.  (*Id.* at 7-10.)

Roman objected, (*see Defendant's Memorandum of Law in Opposition to the Trustee's Motion to Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B)*, dated June 20, 2017 (the "*Objection*") (ECF Doc. # 91)), arguing that the discovery was

---

[5]        A copy of the deposition transcript is annexed as Exhibit E to the *Shifrin Declaration*.

irrelevant and privileged work product. (*Id.* at 5-7.) He also requested that the Court sanction the Trustee. (*Id.* at 9-10.)

At the June 29, 2017 hearing on the *Motion*, the Court directed Roman to produce a privilege log and the underlying documents for *in camera* review. Chaitman provided an initial privilege log on July 17, 2017 which turned out to be somewhat misleading. It identified four documents, including a certain October 8, 2015 email sent by Chaitman to the Romans and other claw back defendants (the "*Chaitman E-mail*"), but failed to reveal that the *Chaitman E-mail* had been attached to an October 28, 2015 letter sent by the Romans to Madoff. Chaitman thereafter provided an amended privilege log which stated that the October 28 letter included an enclosure, but did not identify the enclosure, to wit, the *Chaitman E-mail*. After further inquiry and *in camera* review of the documents, the Court confirmed that the *Chaitman E-mail* was sent by the Romans to Madoff with the October 28 letter.[6] Thus, a complete privilege log would consist of the following four entries as to which Roman and/or Chaitman assert the work product privilege:

A.  An October 28, 2015 letter from the Romans to Madoff attaching (i) a draft of the *Declaration of Bernard L. Madoff*, dated November 17, 2015 (the "*Madoff Declaration*") prepared by Chaitman, and (ii) the *Chaitman E-mail*;

B.  The *Chaitman E-mail*;[7]

C.  An November 11, 2015 blank transmittal email from Joan Roman to Chaitman forwarding Madoff's edits to the *Madoff Declaration*; and

---

[6]    After the Court discovered the earlier omissions, it granted the parties the opportunity to supplement their pleadings to address Roman's disclosure of the *Chaitman E-mail*.

[7]    Roman also asserts that the *Chaitman E-mail* is protected by the attorney-client privilege.

D. A November 11, 2015 letter from the Romans to Madoff attaching (i) two copies of the execution version of the *Madoff Declaration*, and (ii) a prior version of the *Madoff Declaration* with his edits.

## DISCUSSION

### A.    Relevance

Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Even after the 2015 amendment to Rule 26(b), "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense," *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), *aff'd*, No. 14 Civ. 9792 (WHP), 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016); *accord Malanga v. NYU Langone Med. Ctr.*, No. 14cv9681 (WHP), 2016 WL 7477561, at *2 (S.D.N.Y. Dec. 29, 2016), and "the quantum of relevance necessary to warrant discovery is still lower than the quantum of relevance necessary for admissibility at trial." *Almonte v. Hines*, No. 15 Civ. 6843 (HBP), 2016 WL 6834015, at *1 (S.D.N.Y. Nov. 18, 2016) (citations omitted).

The documents at issue are relevant to this adversary proceeding. Some background is helpful. Roman is currently a party to two separate omnibus proceedings that bear on issues in this adversary proceeding and are common to many of the

Trustee's avoidance actions.  The first concerns the meaning of the notation "PW" that appears on BLMIS' books and records.  As outlined in this Court's recent decision, *SIPC v. BLMIS* (*In re BLMIS*), No. 08-01789 (SMB), 2017 WL 2602332, at *2-3 (Bankr. S.D.N.Y. June 15, 2017), the PW Proceeding addresses whether "PW" reflected actual cash withdrawals by BLMIS customers for the purpose of computing net equity and fictitious profits.  Although it is not clear that BLMIS' books and records included any "PW" notations relating to Roman, his lawyer filed opposition on his behalf as a "Participating Claimant" to the Trustee's motion seeking a determination that the PW notation reflected an actual cash withdrawal.  (*See Declaration of Helen Davis Chaitman in Support of Participating Claimants' Memorandum of Law in Opposition to Trustee's Motion Seeking Affirmance of His Treatment of Profit Withdrawals*, dated Sept. 23, 2016, Ex. A at 9 (ECF Main Case Doc. # 14162).)

The second proceeding primarily concerns the date that Madoff's Ponzi scheme began (the "Fraud Proceeding").  (*See Order Authorizing the Deposition of Bernard L. Madoff*, dated Sept. 29, 2016 (ECF Main Case Doc. # 14213).)  The date is critical in determining whether the profits Roman and others withdrew from their BLMIS accounts resulted from actual trades or were based on fictitious transactions listed in their account statements.  Profits resulting from actual trades would not be fictitious or subject to claw back.  During his allocution, Madoff stated that his Ponzi scheme began in the "early 1990s," (*Transcript of March 12, 2009 Allocution of Bernard Madoff* at 25:12-13),[8] but the Trustee contends that it began much earlier.  Although the

---

[8]    The transcript of Madoff's allocution is available on the docket of the District Court criminal proceeding, *United States v. Madoff*, No. 09 CR 213 (DC) (S.D.N.Y.).

*Complaint* alleges that Roman opened his account in July 1997, his account was initially funded with an inter-account transfer from another account, and according to the Trustee, the initial transfer in the sum of $1,239,795.18 consisted entirely of fictitious profits. (*See Complaint*, Exs. B, C (transaction summary table).)[9]

The four documents at issue are relevant to the PW Proceeding and/or the Fraud Proceeding. They fall into four categories: (1) Chaitman's drafts of the *Madoff Declaration*, (2) Madoff's edits to the initial draft, (3) the correspondence authored by one or both Romans transmitting the drafts to Madoff, and (4) the *Chaitman E-mail*. The *Madoff Declaration* has already been submitted to the Court in connection with other proceedings, *see, e.g.*, *Marshall v. Capital Growth Co.* (*In re BLMIS*), 568 B.R. 203, 216-17 (Bankr. S.D.N.Y. 2017) (describing the *Madoff Declaration* and finding that portions of it were conclusory and contradicted Madoff's prior deposition testimony), *appeal docketed*, No. 17-cv-02230 (VSB) (S.D.N.Y. Mar. 28, 2017), and purports to undercut the Trustee's theory regarding the meaning of the PW notation. (*See Madoff Declaration* at ¶¶ 1-3.) In addition, it includes a statement implying that the Ponzi scheme began "[p]ost 1990" when, "[i]n order to raise money, I began to defraud my customers." (*Id.* at ¶ 4.) The drafts and the transmittal letters are relevant to both

---

[9]     It does not appear that the fictitious or real nature of the inter-account transfer makes a difference in this case. Even if Roman received full credit for the inter-account transfer, he still withdrew $570,204.82 more than he deposited. Roman's potential claw back liability is the lesser of his withdrawals during the two-year period preceding the Filing Date and the total amount of fictitious profits he withdrew over the life of the account. *See Picard v. Greiff* (*In re BLMIS*), 476 B.R. 715, 729 (S.D.N.Y. 2012), *aff'd sub nom.*, *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2858 (2015). Hence, even if he withdrew only $570,204.82 in fictitious profits, this amount would still exceed the $410,000 the Trustee is seeking to recover.

- 8 -

omnibus issues, and therefore, to the litigation against Roman.  In addition, the

*Chaitman E-mail* directly addresses the PW issue and is also relevant to that issue.

## B.    The Work Product Doctrine

Notwithstanding their relevance, the documents may be withheld or produced in

redacted form to the extent they are privileged.  The work-product doctrine protects

documents and tangible things from discovery "that are prepared in anticipation of

litigation or for trial by or for another party or its representative (including the other

party's attorney, consultant, surety, indemnitor, insurer, or agent)."  FED. R. CIV. P.

26(b)(3)(A).  The purpose of work-product protection is to provide an attorney with a

"zone of privacy in her work, 'free from unnecessary intrusion by opposing parties and

their counsel.'"  *SEC v. Gupta*, 281 F.R.D. 169, 171 (S.D.N.Y. 2012) (quoting *Hickman v.

Taylor*, 329 U.S. 495, 510 (1947)).  The work-product privilege "is not absolute [and]

may be waived," *United States v. Nobles*, 422 U.S. 225, 239 (1975), through voluntary

disclosure, *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.* (*In re Steinhardt

Partners, L.P.*), 9 F.3d 230, 235 (2d Cir. 1993), provided that the disclosure is "either

inconsistent with maintaining secrecy against opponents or substantially increases the

opportunity for a potential adversary to obtain the protected information."  *Ricoh Co.,

Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003) (quotation omitted); *accord In

re Quigley Co., Inc.*, No. 04-15739 (SMB), 2009 WL 9034027, at *8 (Bankr. S.D.N.Y.

Apr. 24, 2009) ("[T]he deliberate disclosure of work product must create a 'substantial

danger' that it will be disclosed thereafter to an adversary.") (citation omitted),

*supplemented by*, No. 04-15739 (SMB), 2009 WL 2913450 (Bankr. S.D.N.Y. June 19,

2009).  When the disclosing party and the third party share a common interest, there is

no waiver of the work product privilege. *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 446 (S.D.N.Y. 2004).

### 1.    Draft Declarations

The drafts of the *Madoff Declaration* prepared by Chaitman are protected work product. *Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 272 F.R.D. 124 (S.D.N.Y. 2011) ("*PETA*") is directly on point. In *PETA*, the plaintiff sought production of the drafts of two affidavits and other materials exchanged between counsel and the non-party affiants; the defendants objected to the production asserting the work product privilege. *Id.* at 125. Noting that a lawyer's notes of a non-party witness interview are "classic work product and may contain both facts and mental impressions of the lawyer," *id.*, the Court concluded that the draft non-party affidavits were entitled to the same protection:

> Here, the executed affidavits of non-party witnesses remained work product until the lawyer elected to serve and file them. Until the moment of service and filing, the lawyer reserves the right to reverse course and refrain from using the affidavits. The lawyer's drafts, which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation.

*Id.*; *accord Carpenter v. Churchville Greene Homeowner's Assoc.*, No. 09-CV-6552T (MWP), 2011 WL 4711961, at *9 (W.D.N.Y. Sept. 29, 2011), *adopted by*, No. 09-CV-6552 (MAT), 2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011); *Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008). While work product may still be discoverable based upon a showing of substantial need, *A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 49-50 (S.D.N.Y. 1990) (requesting party showed substantial need for third-party draft affidavit where affiant was the only person with

personal knowledge of a material fact and lived in Greece); *accord Sequa Corp. v. Gelmin*, No. 91 Civ. 8675 (MHD), 1993 WL 276081, at *4 (S.D.N.Y. July 16, 1993) (draft affidavits were not protected as work product where, *inter alia*, the adversary showed a substantial need for the materials), the Trustee has not argued that he has a substantial need for the drafts of the *Madoff Declaration*.

Madoff's edits present a closer question that was not directly decided in *PETA*. The Trustee maintains that communications *from* Madoff *to* Roman fall outside the scope of the work-product doctrine. (*Motion* at 6-7.) On the one hand, communications from non-parties to counsel for parties in a lawsuit do not generally qualify as work product. *Ricoh*, 219 F.R.D. at 69; *Carpenter*, 2011 WL 4711961, at *10. On the other hand, the work product protection generally extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit. *Boyer v. Gildea*, 257 F.R.D. 488, 492-93 (N.D. Ind. 2009); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581 (GLF), 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007); *see also* 8 CHARLES ALAN WRIGHT, ET. AL, FEDERAL PRACTICE AND PROCEDURE CIV. § 2024, at 510 n. 23 (3d ed. 2010) ("Recent cases have generally held that draft affidavits, and communications with counsel relating to affidavits, are covered by the work–product rule.").

Chaitman's drafts and Madoff's edits constitute communications between a party's attorney and a non-party witness relating to the completion of the *Madoff Declaration*. Moreover, his edits are intertwined with the drafts prepared by Chaitman that are her work product. Except for a couple of interlineations, his edits simply struck Chaitman's language and cannot be viewed in isolation from the language he struck.

Finally, the Trustee questioned Madoff at length about the draft declaration and his edits. (*See Transcript of June 15, 2016 Deposition of Bernard L. Madoff* at 90:3-100:20 (ECF Main Case Doc. # 14162-8).)

Accordingly, the drafts of the *Madoff Declaration* and Madoff's edits to the drafts are work product. The Trustee nevertheless maintains, relying *SEC v. Gupta*, 281 F.R.D. 169 (S.D.N.Y. 2012), that Roman waived work product protection by sending Madoff the drafts of the *Madoff Declaration*.[10] (*Motion* at 7-10; *see also Trustee's Reply Memorandum of Law in Support of his Motion to Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B)*, dated June 27, 2017, at 4-8 (ECF Doc. # 96).) In *Gupta*, the SEC and representatives of the United States Attorney's Office ("USAO") met with third-party witness Lloyd Blankfein, CEO of Goldman Sachs, to prepare him for his deposition in connection with an insider trading civil enforcement action. *Id.* at 170. When defense counsel asked Blankfein about the meeting at his deposition, including what the participants discussed and what documents Blankfein was given to review, the SEC objected invoking the work product doctrine. *Id.* at 170-71. It argued that the topics the SEC and USAO attorneys discussed with Blankfein and the documents they showed him were protected work product because they revealed the attorneys' legal opinions, thought processes and strategy. *Id.* at 171.

---

[10]    The use of Robert and Ruth Roman as go-betweens did not destroy the privilege or waive it. The Romans were acting as Chaitman's agents in transmitting drafts of the *Madoff Declaration* between Chaitman and Madoff, and the protections afforded by the work-product doctrine are not waived when materials are shared with an attorney's agent. *Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ 1012 (JSM), 2003 WL 660848, at *2-4 (S.D.N.Y. Feb. 27, 2003); *cf. Nobles*, 422 U.S. at 238-39 (materials prepared by an attorney's agent are protected under the work product doctrine).

District Judge Rakoff overruled the objection.  He explained that the privilege is waived when the privileged materials are disclosed "to anyone without 'common interests in developing legal theories and analyses of documents.' " *Id.* at 171 (quoting *In re Sealed Case,* 676 F.2d 793, 817 & n. 97 (D.C. Cir. 1982)).  Neither Blankfein nor Goldman Sachs shared any common interest with the SEC; "Blankfein is simply a third-party witness in this case." *Id.* at 172.

*Gupta* is distinguishable.  Under *Gupta*, the Trustee was free to question Madoff about the circumstances and communications surrounding the execution of the *Madoff Declaration*.  The Trustee did so, without objection, asking Madoff about the substance of the *Madoff Declaration* as well as the changes he made to an earlier draft and his communications with opposing counsel.  Under *PETA*, however, a draft declaration sent to a third party witness retains its privilege, and as discussed, communications relating to the preparation and execution of the declaration are also protected by the work product privilege.   Consequently, the privilege was not waived by the exchange of drafts, including drafts containing Madoff's edits, between Chaitman and Madoff through the Romans, Chaitman's agents.

### 2.    The Transmittal Letters

The privilege log lists an October 28, 2015 letter from the Romans to Madoff which also enclosed a draft of the declaration and the *Chaitman E-mail* in addition to a November 11, 2015 letter from the Romans to Madoff.[11]  Both letters included two types

---

[11]    Joan Roman's November 11, 2015 email transmitting Madoff's edited draft declaration to Chaitman did not contain any content.

of communications: (i) instructions from Chaitman regarding the review and completion of the *Madoff Declaration*, and (ii) statements by one or both Romans unrelated to the review and completion of the *Madoff Declaration*.  As noted, the work product protection extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit.  For the most part, the Romans' transmittal letters to Madoff included Chaitman's instructions to Madoff regarding the completion of the declaration, and as stated, sending the communications through the Romans does not change the analysis because the Romans were acting as Chaitman's agents.

Other portions of the letters are not privileged.  The first paragraph of the October 28 letter refers to the enclosed copy of the *Chaitman E-mail*. The first paragraph of the November 11 letter expresses the Romans' appreciation for Madoff's cooperation.  These portions of the two letters should be disclosed with the balance of the text redacted.

### 3.    The *Chaitman E-mail*

Roman asserts both the work product and attorney-client privileges with respect to the *Chaitman E-mail*.  The *Chaitman E-mail* was sent by Chaitman to her clients on October 8, 2015 and described her factual investigation into the PW issue, identified the scope of the PW Proceeding, and provided instructions on how to participate in the PW Proceeding.  The Romans sent it to Madoff along with the initial draft declaration on October 28, 2015.

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir.), *cert. denied*, 565 U.S. 992 (2011). The purpose behind the privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, the attorney-client privilege should be "narrowly construed, applying only where necessary to achieve its purpose." *Misek-Falkoff v. Int'l Bus. Machs. Corp.*, 144 F.R.D. 48, 49 (S.D.N.Y. 1992) (citing *Fisher v. United States*, 425 U.S. 391, 402-04 (1976)). The "burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 119 F.3d 210, 214 (2d Cir. 1997)).

The *Chaitman E-mail* meets the elements of the attorney-client privilege because it was a confidential communication sent by Chaitman to her clients providing legal advice regarding the PW issue. It also constitutes attorney work product because it was prepared by Chaitman in anticipation of litigating the PW issue against the Trustee. The Court turns, therefore, to whether either or both privileges were waived when Roman sent the *Chaitman E-mail* to Madoff.

### a.    Waiver of Attorney-Client Privilege

The attorney-client privilege is waived by the voluntary disclosure of the confidential communication to a third party "because disclosure is viewed as an

indication that confidentiality is no longer intended." *In re Horowitz*, 482 F.2d 72, 81

(2d Cir.), *cert. denied*, 414 U.S. 867 (1973); *accord In re Bank of New York Mellon*

*Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 410 (S.D.N.Y. 2014).  The privilege

belongs to the client, and only the client can waive it.  *von Bulow v. von Bulow*, 828

F.2d 94, 100 (2d Cir. 1987); *Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551,

556 (2d Cir. 1967).

It would seem beyond cavil that Roman waived *his* attorney-client privilege

concerning the *Chaitman E-mail*.  He voluntarily sent it to Madoff.  Chaitman

nevertheless argues that she "did not intend for any of [her] clients to disclose the

[*Chaitman E-mail*] . . . to anyone," and Roman sent it to Madoff "[w]ithout

[Chaitman's] knowledge."  (*Declaration of Helen Davis Chaitman in Support of*

*Defendant's Opposition to the Trustee's Motion to Compel Discovery Pursuant to Fed.*

*R. Bankr. P. 7037(a)(3)(B)*, dated Sept. 6, 2017, at ¶¶ 5-6 (ECF Doc. # 104); *accord*

*Defendant's Supplemental Memorandum of Law in Opposition to the Trustee's Motion*

*to Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B)*, dated Sept. 6, 2017

("*Defendant Supp. Brief*"), at 1 (ECF Doc. # 103).)

The question posed by the opposition is whether Roman could waive his

attorney-client privilege attaching to the *Chaitman E-mail* without her or her other

clients' consent.  Chaitman has not argued that Roman and her other clients share a

joint defense privilege that precluded Roman from waiving the common attorney-client

privilege without their consent. *See Quigley*, 2009 WL 9034027, at *3 (discussing the

waiver of the attorney-client privilege in the joint defense/common interest context).

Instead, she contends that Roman shared a common interest with Madoff (discussed

- 16 -

below) who had no attorney-client privilege with respect to the *Chaitman E-mail*.
Accordingly, when Roman sent the *Chaitman E-mail* to Madoff, a third party, he waived
his attorney-client privilege with respect to that document.

### b.    Waiver of Work Product Privilege

Unlike the attorney client privilege, disclosure of work product to a third party
constitutes a waiver only if it substantially increases the likelihood of disclosure to the
adversary. *Quigley*, 2009 WL 9034027, at *8. Thus, for example, the District Court in
*United States v. Stewart* ruled that no waiver occurred when a defendant shared work
product with her daughter. 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003). Roman argues
that his disclosure of the *Chaitman E-mail* to Madoff is similar to the disclosure in
*Stewart*. (*Defendant Supp. Brief* at 3.)

The argument lacks merit. Unlike the third party in *Stewart* whose only
connection to the case was as the defendant's daughter, *Stewart*, 287 F. Supp. 2d at 466
("the defendant forwarded a purportedly work product-protected document to a
nonlawyer family member whose interest in the case can only be described as
personal"), Madoff is a fact witness in both the PW Proceeding and the Fraud
Proceeding. In addition, Chaitman implies that Roman sent the *Chaitman E-mail* to
Madoff so that he would understand why she wanted his declaration, (*Defendant Supp.
Brief* at 3), but her accompanying declaration does not state that she asked Roman to
forward the *Chaitman E-mail* to Madoff for that or any other purpose, and the October
28 letter does not indicate why Roman decided to share it with Madoff. Furthermore,
Chaitman directed Roman not to answer any questions about the "letters" at his

- 17 -

deposition, and hence, his deposition testimony does not support the reasons given in his brief.

Finally, Chaitman suggests that Roman and Madoff share a common interest "in their search for the truth." (*Defendant Supp. Brief* at 4.)  Given Roman's and Chaitman's other clients' contention that Madoff is a liar who defrauded them, (*see, e.g.*, *Third Amended Complaint*, filed Aug. 29, 2015, at ¶¶ 3-4 ("Madoff . . . lied to [his customers], failed to disclose information he was legally obligated to disclose, and thereby induced [his customers] to entrust Madoff with their money. . . .  Madoff defrauded [his customers, and their claims arose when they] wired funds to Madoff and released in some instances their life savings into the hands of a thief.") (ECF Adv. Proc. No. 15-01293 Doc. # 1-1)), the assertion is absurd.  Moreover, despite Chaitman's criticisms of the Trustee's motives and tactics, *see BLMIS*, 2017 WL 2602332, at *3, *5-8, I know of no evidence suggesting that the Trustee does not share the same common interest with Roman and Madoff in the "search for the truth."  In any case, the receiving party must have a "common litigation interest[]" with the disclosing party for waiver not to occur, *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002), and an interest in the "search for the truth," while admirable, is not a "litigation interest."

Despite Roman's disclosure of the *Chaitman* Email, Chaitman has standing to object to her client's waiver of the work product privilege, to the extent the work product includes "opinion work product."  *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 262-63 (Bankr. S.D.N.Y. 2005).  "Opinion work product" contains an attorney's "mental impressions, conclusions, opinions, or legal theories."  FED. R. CIV. P. 26(b)(3)(B);

*United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998).  An *in camera* review of the *Chaitman E-mail* reveals that it is mostly factual in nature and does not convey Chaitman's legal strategy.  For instance, Chaitman described her investigation into the profit withdrawal issue and provided instructions on how to participate in the PW Proceeding.  These matters constitute fact work product, *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("fact work product may encompass factual material, including the result of a factual investigation"), *cert. denied sub nom.*, *Doe v. United States*, 553 U.S. 1094 (2008), and Chaitman lacks standing to object to her client's waiver.  On the other hand, a few portions of the email contained legal conclusions or reflected her mental impressions and legal theories, and are entitled to protection as opinion work product.  Accordingly, the *Chaitman E-mail* should be produced, but the portions containing opinion work product – the first sentence of the third paragraph, and the third and fourth sentences of the fourth paragraph – should be redacted.

### D.    Sanctions

In the penultimate paragraph of his opposition, Roman requests sanctions against the Trustee under the Court's inherent authority, 28 U.S.C. § 1927 and Rule 37 of the Federal Rules of Civil Procedure based on his failure to cite "controlling authority that expressly prohibits the relief he seeks."  (*Objection* at 9.)

Roman's request for sanctions is denied.  Roman has not identified the "controlling" authority that the Trustee omitted, but I assume that at a minimum he is referring to *PETA* (which the Trustee attempted to distinguish in his reply).  According to its website, our District Court has forty-three District Court judges.  They sometimes

disagree among themselves.  While their decisions in unrelated cases are persuasive authority, no individual district court judge's decision in an unrelated case can be considered "controlling authority."  *See Barnett v. Jamesway Corp.* (*In re Jamesway Corp.*), 235 B.R. 329, 336 n. 1 (Bankr. S.D.N.Y. 1999) ("where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district") (listing cases); *cf. In re Moore*, 441 B.R. 732, 738 (Bankr. N.D.N.Y. 2010) ("the bankruptcy court is a 'unit' of the district court, and thus is not bound by the decision of a single district court judge").

In addition, Roman identified six "letters" that he exchanged with Madoff, but failed to provide a timely and accurate privilege log.  Hence, the Trustee could not have known that the six "letters" included the draft declaration when he filed the *Motion*.

Finally, Roman has failed to demonstrate a right to sanctions.  Under the Court's inherent authority and 28 U.S.C. § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999)).  Given Roman's testimony about an exchange of "letters" with Madoff and Chaitman's direction to Roman not to answer any questions about them at his deposition, the motion to compel their production was not entirely without color, improper in any sense or designed to harass or delay.

Nor is Roman entitled to sanctions under Rule 37.  If a motion to compel discovery is granted in part and denied in part the court *may* apportion the reasonable

expenses of the motion.  *See* FED. R. CIV. P. 37(a)(5)(C).  The Trustee has not asked to apportion any of his expenses to Roman, and for the reasons stated, including the submission of misleading privilege logs that added time and expense to the disposition of the *Motion*, I decline to foist any of Roman's expenses on the Trustee.

So ordered.

Dated:  New York, New York
          October 17, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge