**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Stephanie A. Ackerman

Hearing Date:  November 29, 2017
Hearing Time:  10:00 AM (EST)
Objection Deadline:  November 8, 2017

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S MOTION AND MEMORANDUM OF LAW**
**TO AFFIRM HIS DETERMINATIONS DENYING CLAIMS OF CLAIMANTS**
**HOLDING INTERESTS IN THE DAVID SHAPIRO NOMINEE, DAVID**
**SHAPIRO NOMINEE #2 AND DAVID SHAPIRO NOMINEE #3 PARTNERSHIPS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

    A.    THE COMMENCEMENT OF THE SIPA PROCEEDING ................................. 2

    B.    THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS AND
           OBJECTING CLAIMANTS' CLAIMS ................................................................. 4

          1.    The Shapiro #1 Account ............................................................. 4

          2.    The Shapiro #2 Account ............................................................. 8

          3.    The Shapiro #3 Account ........................................................... 10

          4.    The BLMIS Account Records ................................................... 13

          5.    The Claims ................................................................................ 14

    C.    THE CUSTOMER DECISIONS ...................................................................... 14

ARGUMENT ........................................................................................................................ 17

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adler, Coleman Clearing Corp.*,
   216 B.R. 719 (Bankr. S.D.N.Y. 1998)......................................................................17

*Alley v. Clark*,
   71 F. Supp. 521 (E.D.N.Y. 1947) ..........................................................................20

*Appleton v. First Nat'l Bank of Ohio*,
   62 F.3d 791 (6th Cir. 1995) ...................................................................................17

*In re Beacon Assocs. Litig.*,
   745 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................................2

*In re Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011)....................................................................22

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011)..............................................................2, 14, 17, 18

*In re Klein, Maus & Shire, Inc.*,
   301 B.R. 408 (Bankr. S.D.N.Y. 2003)....................................................................22

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   708 F.3d 422 (2d Cir. 2013)............................................................................ *passim*

*In re Lehman Bros., Inc.*,
   791 F.3d 277 (2d Cir. 2015)............................................................................17, 18

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002).................................................................3, 22

*In re New Times Securities Services*,
   463 F.3d 125 (2d Cir. 2006)............................................................................17, 22

*Newburger, Loeb & Co. v. Gross*,
   563 F.2d 1057 (2d Cir. 1977)................................................................................20

*Reiter v. Greenberg*,
   21 N.Y.2d 388 (N.Y. 1968) ..................................................................................20

*Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   779 F.3d 74 (2d Cir. 2015)....................................................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
    Madoff Inv. Sec. LLC),*
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) ........................................................16, 17, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff),*
    2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y. Apr. 10, 2017) ................................17

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.,*
    533 F.2d 1314 (2d Cir. 1976) ................................................................2, 15, 18, 21

*SEC v. Madoff,*
    No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008) .........................2

**Statutes**

15 U.S.C. § 78aaa *et seq* .................................................................................................1

15 U.S.C. § 78eee(a)(4) ...................................................................................................3

15 U.S.C. § 78eee(b)(3) ...................................................................................................3

15 U.S.C. § 78eee(b)(4) ...................................................................................................3

15 U.S.C. § 78fff-1(a) .......................................................................................................3

15 U.S.C. § 78fff-2(b) .....................................................................................................20

15 U.S.C. § 78fff-3(a) .......................................................................................................3

15 U.S.C. § 78*lll*(2) ..............................................................................................2, 3, 17

15 U.S.C. § 78*lll*(4) .........................................................................................................3

15 U.S.C. § 78*lll*(11) ...................................................................................................3, 20

N.Y. P'SHIP LAW § 121-701 (McKinney 2016) ............................................................20

**Rules**

FED. R. CIV. P. 36(a)(3) .............................................................................................7, 9, 12

**Other Authorities**

1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012) .......................................................15

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L.

Madoff ("Madoff"), respectfully submits this combined motion and memorandum of law (the

"Motion") to affirm the denial of seven (7) claims filed by claimants (the "Objecting Claimants")

who objected to the Trustee's determinations and who invested in or purchased partnership

interests in one of the following: David Shapiro Nominee, David Shapiro Nominee #2, or David

Shapiro Nominee #3 (the "Partnerships"). The Objecting Claimants assert customer status in the

respective BLMIS Account held in the related Partnership's name, BLMIS Account number

1S0297 held by David Shapiro Nominee, 1S0298 held by David Shapiro Nominee #2, or 1S0299

held by David Shapiro Nominee #3. The Objecting Claimants are specifically identified on

Exhibit 2 to the Declaration of Vineet Sehgal ("Sehgal Declaration") filed herewith. This

Motion is based upon the law set forth below as well as the facts set forth in the accompanying

Sehgal Declaration and the Declaration of Stephanie Ackerman ("Ackerman Declaration").

## PRELIMINARY STATEMENT

The Objecting Claimants seek customer status in this SIPA proceeding apart from the

customer status of the respective accountholder, despite the fact that they neither had BLMIS

accounts in their names nor had any direct financial relationship with BLMIS. Instead, they

invested in the Partnerships, each of which held a BLMIS account, invested partnership assets

with BLMIS, and filed its own customer claim with the Trustee. The Partnerships were nominee

accounts in name only. In reality, David Shapiro served as a general partner, and each

Partnership entrusted its funds to BLMIS, with each limited partner entitled to his or her share of

---

[1] For convenience, subsequent references to sections of the Securities Investor Protection Act shall be denoted
simply as "SIPA § __."

the partnership based on the amount of his or her investment in the respective Partnership. Under either scenario–nominee or partnership—however, the Objecting Claimants fail to meet the requirements for customer status. The customer under either scenario is the accountholder as identified by the BLMIS books and records. The case is governed by the Second Circuit decisions *Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 708 F.3d 422 (2d Cir. 2013), *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976), and the many related decisions in this SIPA proceeding, referenced in Section C *infra*, involving the question of who is a "customer" under SIPA. The current Motion seeks to apply these decisions to the Objecting Claimants through entry of an order affirming the Trustee's denial of their claims as listed in Exhibit 2 to the Sehgal Declaration, disallowing their claims, and overruling the related docketed claims objections on the grounds that the Objecting Claimants are not "customers" as such term is used at SIPA § 78*lll*(2).[2]

## BACKGROUND

### A. THE COMMENCEMENT OF THE SIPA PROCEEDING

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-34 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application

---

[2] The Trustee reserves all other bases to affirm his denial of the claims that are the subject of the Motion.

under SIPA § 78eee(a)(4) alleging that because of its insolvency, BLMIS customers needed

SIPA protection.  The District Court appointed the Trustee under SIPA § 78eee(b)(3) and

removed the proceeding to this Court pursuant to SIPA § 78eee(b)(4).

Under SIPA, the Trustee is responsible, among other things, for recovering and

distributing customer property to the fullest extent possible to a broker's customers, assessing

claims, and liquidating other assets of the firm for the benefit of the estate and its creditors,

including claimants to the customer fund.  A SIPA trustee has the general powers of a

bankruptcy trustee, in addition to the powers granted by SIPA.  SIPA § 78fff-1(a).  The statutory

framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that

"customers," as defined in SIPA § 78*lll*(2), share pro rata in "customer property," SIPA §

78*lll*(4), to the extent of their "net equity," as defined in SIPA § 78*lll*(11).  For each customer

with a valid net equity claim, if the customer's share of customer property does not make the

customer whole, SIPC advances funds to the SIPA trustee up to the amount of the customer's net

equity, not to exceed $500,000 (the amount applicable to this case).  SIPA § 78fff-3(a).  It is the

customer's burden to demonstrate he or she is entitled to customer status.  *Mishkin v. Siclari (In*

*re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-

established in the Second Circuit that a claimant bears the burden of proving that he or she is a

'customer' under SIPA.").

On December 23, 2008, the Claims Procedures Order was entered.  ECF No. 12.

Pursuant to that order, the Trustee determines claims eligible for customer protection under

SIPA, and claimants may object to the Trustee's determination of a claim by filing an objection

with this Court within a certain time period, after which the Trustee requests a hearing date for

the objection and notifies the objecting claimant thereof.  *Id.*

3

B.    **THE PARTNERSHIPS' STRUCTURE, BLMIS ACCOUNTS AND
OBJECTING CLAIMANTS' CLAIMS**

The Objecting Claimants seek customer status based on their investment with BLMIS

through one or more of the Partnerships that invested in BLMIS.  Three (3) claims were filed by

Objecting Claimants related to the David Shapiro Nominee Account (the "Shapiro #1 Objecting

Claimants"), one (1) claim was filed by an Objecting Claimant related to the David Shapiro

Nominee #2 Account (the "Shapiro #2 Objecting Claimants"), and three (3) claims were filed by

Objecting Claimants related to the David Shapiro Nominee #3 Account (the "Shapiro #3

Objecting Claimants").  *See* Sehgal Decl., Ex. 1-3.  The claims of the Partnerships themselves

are not at issue in this Motion.

### 1.    The Shapiro #1 Account

BLMIS Account number 1S0297 was opened in 1984 by the partnership in the name of

"David Shapiro Nominee," and remained in that name for the life of the account (the "Shapiro #1

Account").[3]  Sehgal Decl., Ex. 4, AMF00211882.  The David Shapiro Nominee partnership was

formed in New York and according to tax forms provided by the Objecting Claimants, operated

as a New York limited partnership at all relevant times.  Sehgal Decl., Ex. 7,

MWPTAP00549287-88.

In his capacity as president of the partnership, David Shapiro, alone, signed the BLMIS

account opening documents including the BLMIS Customer Agreement, Trading Authorization,

Option Agreement, and provided the relevant tax information for the account.  Sehgal Decl., Ex.

4, AMF00211882-88, 818-19.  In addition, on June 15, 1994, David Shapiro also executed a

---

[3] The BLMIS account number for the Shapiro #1 Account changed over time.  At the time of its initial opening in 1984, BLMIS assigned the account "number 10193310," Sehgal Decl., Ex. 4, AMF00211882, in 1994 it was changed to 1S0065, *id.*, AMF00211884, and then in early 1997 was changed to 1S0297, compare *id.*, AMF00211819 to *id.*, AMF00211817.

BLMIS Club Account Agreement with each of the then members of the account, including one of the Shapiro #1 Objecting Claimants, Marilyn Komarc. *Id.*, AMF00211843-60. No Membership Agreements for the remaining Shapiro #1 Objecting Claimants, David Drucker and Hilda Drucker, appear in the books and records associated with the Shapiro #1 Account. *See generally id.* The BLMIS Club Account Agreement, signed by David Shapiro and each of the members, directed and "authorized [BLMIS] to open a securities account for the Club, to be known as the David Shapiro Nominee Account." *See, e.g.*, *id.*, AMF00211845.

In June of 1994, each of the members and David Shapiro also executed an Investment Club Membership Agreement for the Shapiro #1 Account (the "Membership Agreement") setting forth the terms of the investment. Specifically, the Membership Agreement stated that each of the members "invested in the club, and [would] receive a share of the earnings of the club in proportion to [his or her] investment," and that "David Shapiro will serve as president of the club." *Id.*, AMF00211843, 44, 47, 50, 52, 56, 60. In his capacity as president, David Shapiro "execute[d] all transactions with Madoff . . . receive[d] payments of profits from Madoff, and . . . distribute[d] those profits to club members." *Id.* Members could make additional deposits and request withdrawals from the Nominee Account by contacting David Shapiro who would, in turn, request such transactions from BLMIS. *Id.*

Under the terms of the Membership Agreement, David Shapiro was also obligated to prepare "partnership income tax returns" and report to the members annually. *Id.* The Objecting Claimants also identified the Shapiro #1 Account as a partnership. For example, in his customer claim, David Drucker explained that he "was part of a larger partnership account, #1-S0297" that was held "in the name of David Shapiro (Partnership ID# 11-2667768)." Sehgal Decl., Ex. 6, MWPTAP00494586. Ms. Komarc similarly understood the account to be a partnership,

submitting her claim in the name of "Marilyn Komarc, Ptr. of David Shapiro Nominee," Sehgal

Decl., Ex. 7, MWPTAP00549283, and attaching as support for her customer claim her 2008 IRS

Schedule K-1, which identifies the "David Shapiro Nominee" as a limited partnership. *Id.*,

MWPTAP00549287-88.

Consistent with the terms of the Membership Agreement, all requests for withdrawals

and all deposits were conveyed to BLMIS by David Shapiro. *See generally* Sehgal Decl., Ex. 4.[4]

However, not all deposits and withdrawals were attributed to an individual partner in the Shapiro

#1 Account. Rather, in certain requests for withdrawals and transfers, David Shapiro refers to

"my . . . account" and does not provide a partner's name. *See, e.g.*, *id.*, AMF00211791, 94, 97,

98; AMF00211813. Similarly, David Shapiro's requests for quarterly distributions do not

reference the share to be distributed to each partner. *See id.*, AMF00211823 ("I have to

distribute Nominee account earnings . . . . Please send me checks as follows."); AMF00211836.

The Shapiro #1 Objecting Claimants do appear in the BLMIS books and records related

to the Account. David Drucker and Hilda Drucker are each referenced once in two separate

letters in which David Shapiro attributes a deposit into the Account to Mr. or Ms. Drucker. *Id.*,

AMF00211787; AMF00211800. As discussed above, Marilyn Komarc executed a Membership

Agreement with David Shapiro. In addition, she is identified in a single letter attributing a

deposit to her, AMF00211834, and in each of the annual listing of partners provided by David

Shapiro to BLMIS for 1995, 1997, and 1998. *Id.*, AMF00211827, 820, 806.

The Trustee served discovery requests on each of the three Shapiro #1 Objecting

Claimants and two responded in part. Ackerman Decl., ¶¶ 9, 10, Exs. 1, 2. Hilda and David

---

[4] On October 20, 2008, David Shapiro instructed BLMIS to "accept instruction from Mr. Levine [his accountant] regarding additions to and withdrawals from" BLMIS Accounts 1S0297, 1S0298, 1S0299, and 1K0118, however, the books and records are devoid of any requests from Mr. Levine. Sehgal Decl., Ex. 4, AMF00211781, 83.

Drucker responded by letter to the Trustee's discovery requests. *Id.* Both Hilda and David

Drucker admit that they "did not have any personal or direct relationship or communication with

BLMIS, but rather invested through a 'feeder fund' or pooled account, the account holder being

David Shapiro nominee, account # 1S0297." *Id.* The Druckers failed to respond to the

remaining requests for admissions. The remaining Shapiro #1 Objecting Claimant, Marilyn

Komarc, also failed to respond to the Trustee's discovery requests. By failing to respond to the

requests for admission, they each admitted them. FED. R. CIV. P. 36(a)(3). By these admissions,

the Druckers and Marilyn Komarc admitted that they did not have an account in their name at

BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive

investment statements, correspondence or tax statements from BLMIS, did not have any control,

investment discretion or decision-making power over any investments at BLMIS, that all

property acquired by the account holder was owned by and in the name of the account holder,

that their only relationship to BLMIS existed by way of their relationship to the Partnership, and

that David Shapiro maintained exclusive management and control of the account pursuant to the

account holder agreement. *See* Ackerman Decl. ¶¶ 9-10, 15, Exs. 1, 2, 7.

David Shapiro filed a customer claim on behalf of the Shapiro #1 partnership. The

Trustee denied the claim because, based on the Trustee's analysis, the amount of money that the

Shapiro #1 partnership withdrew from the account was greater than the amount that was

deposited, making the account a "net winner." Thus, a determination letter was sent to David

Shapiro denying the customer claim, and objections to the Trustee's determination were timely

filed.[5]

---

[5] *See* ECF Nos. 2713, 2714, 2715, 2775 and 2777, filed on July 14, 19, and 20, 2010. BLMIS Account 1S0297 is also the subject of an ongoing adversary proceeding brought by the Trustee. *Picard v. David Shapiro Nominee*, Adv. No. 10-04328 (SMB).

### 2.    The Shapiro #2 Account

David Shapiro opened BLMIS Account 1S0298 in the name of "David Shapiro Nominee

#2" in January of 1990 (the "Shapiro #2 Account").  Sehgal Decl., Ex. 8, AMF00211996.  David

Shapiro alone signed the BLMIS account opening documents including the Customer

Agreement, Trading Authorization, Option Agreement, and provided the relevant tax

information for the Account.  *Id.*, AMF00211995-2000, 928-29, 953.  On June 15, 1994, David

Shapiro executed BLMIS Club Account Agreements and Investment Club Membership

Agreements with each of the then members of the partnership, including the Shapiro #2

Objecting Claimant, Myra M. Levine.  *See id.*, AMF00211956-91.

Similar to the management of the Shapiro #1 Account and consistent with the terms of

the Membership Agreement, all requests for withdrawals and all deposits were conveyed to

BLMIS by David Shapiro.  *See generally* Sehgal Decl., Ex. 8.[6]  However, not all deposits and

withdrawals were attributed to an individual partner in the Shapiro #2 Account.  Rather, in

certain requests for withdrawals and transfers, David Shapiro refers to "my . . . account" or "the

David Shapiro Nominee 2 account" and does not provide a partner's name.  *See, e.g.*, *id.*,

AMF00211896, 99; AMF00211900, 909.  Similarly, David Shapiro's requests for quarterly

distributions do not reference the share to be distributed to each partner.  *See id.*, AMF00211937

("I have to distribute Nominee account earnings . . . .  Please send me checks as follows.").

BLMIS employees further understood David Shapiro to be the account holder.  In May of 2004

the representative of an estate of one of the limited partners contacted BLMIS for an account

balance.  The notation on the letter was that the partner "was not holder of [account] needs to

---

[6] On October 20, 2008, David Shapiro instructed BLMIS to "accept instruction from Mr. Levine [his accountant]
regarding additions to and withdrawals from" BLMIS Accounts 1S0297, 1S0298, 1S0299, and 1K0118, however,
the books and records are devoid of any requests from Mr. Levine.  Sehgal Decl., Ex. 8, AMF00211894-95.

contact David Shapiro." *Id.*, AMF00211901.

The Shapiro #2 Account was also structured as a New York limited partnership as evidenced by the IRS K-1 form submitted by Ms. Levine with her customer claim. Ms. Levine provided her 2008 IRS K-1 Form, which identifies the partnership as "David Shapiro Nominee 2" and identifies the partnership as a domestic limited partnership. Sehgal Decl., Ex. 9, MWPTAP00469031-32. In addition, the tax identification number listed on the IRS Form K-1 is the same number identified in the BLMIS books and records for the Shapiro #2 Account by Mr. Shapiro. *Compare id.*, with Sehgal Decl., Ex.8, AMF00211891, 954.

The Trustee served discovery requests on Ms. Levine, and no response was received. Ackerman Decl., ¶¶ 8, 16, Ex. 8. By failing to respond to the requests for admission, Ms. Levine admitted them. FED. R. CIV. P. 36(a)(3). By these admissions, she admitted that she does not have an account in her name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, that all property acquired by the account holder was owned by and in the name of the account holder, that her only relationship to BLMIS existed by way of her relationship to the Partnership, and that David Shapiro maintained exclusive management and control of the account pursuant to the account holder agreement. *See id.*

David Shapiro filed a customer claim on behalf of the David Shapiro #2 partnership. The Trustee denied the claim because, based on the Trustee's analysis, the amount of money that the David Shapiro #2 partnership withdrew from the account was greater than the amount that was deposited, making the account a "net winner." Thus, a determination letter was sent to David Shapiro denying the customer claim, and objections to the Trustee's determination were timely

filed.[7]

### 3.    The Shapiro #3 Account

BLMIS Account number 1S0299 was opened by David Shapiro on behalf of the "David

Shapiro #3" partnership in its name on January 31, 1990 (the "Shapiro #3 Account").  Sehgal

Decl., Ex. 10, AMF00212063.  All BLMIS account opening documents including the Customer

Agreement, Trading Authorization, Option Agreement and updates to related tax information

were signed by David Shapiro.  *Id.*, AMF00212024-25, 34, 62-67.  Again, in June of 1994,

David Shapiro executed BLMIS Club Account Agreements and Investment Club Membership

Agreements ("Membership Agreements") with the then members of the Shapiro #3 partnership.

*Id.*, AMF00212037-50.  Included in the BLMIS books and records for the Shapiro #3 Account

are Membership Agreements with Objecting Claimants Frederick H. Mandel, *id.*,

AMF00212044-47, and Elaine Langweiler, *id.*, AMF00212037-39.  No Membership Agreement

is present for the remaining Objecting Claimant, Irving M. Sonnenfeld.

David Shapiro, consistent with the Membership Agreement, maintained sole authority to

interact with BLMIS and direct deposits and withdrawals.[8]  All requests for withdrawals and all

deposits were sent to BLMIS by David Shapiro.  *See generally id.*  However, not all deposits and

withdrawals were attributed to an individual partner in the Shapiro #3 Account.  As with the

Shapiro #1 Account and Shapiro #2 Account, in certain requests for withdrawals and transfers,

David Shapiro refers to "my . . . account" and does not provide a partner's name.  *See, e.g.*, *id.*,

---

[7] *See* ECF Nos. 2715, 2775, 2777, filed on July 14, 19, and 20, 2010.  BLMIS Account 1S0298 is also the subject of an ongoing adversary proceeding brought by the Trustee.  *Picard v. David Shapiro Nominee #2*, Adv. No. 10-04325 (SMB).

[8] On October 20, 2008, David Shapiro instructed BLMIS to "accept instruction from Mr. Levine [his accountant] regarding additions to and withdrawals from" BLMIS Accounts 1S0297, 1S0298, 1S0299, and 1K0118.  As with the other partnership accounts that are the subject of this motion, however, the books and records are devoid of any requests from Mr. Levine.  Sehgal Decl., Ex. 10, AMF00212006-7.

AMF00212011-13, 18.  Similarly, David Shapiro's requests for quarterly distributions do not reference the share to be distributed to each partner.  *See id.*, AMF00212028 ("I have to distribute Nominee account earnings . . . .  Please send me checks as follows."); *see also* AMF00212033.

The Shapiro #3 Objecting Claimants do appear in the BLMIS books and records related to the Account.  As discussed above, Frederick H. Mandel and Elaine Langweiler each executed a Membership Agreement with David Shapiro.  *Id.*, AMF00212044, 37.  In addition, Mr. Mandel and Ms. Langweiler are each referenced in correspondence from David Shapiro to BLMIS transmitting deposits, *see, .e.g.*, *id.*, AMF00212019, 29, as well as in each of the annual listing of partners provided by David Shapiro to BLMIS for 1994 through 1998.  *Id.*, AMF00212020-21, 26-27, 31-32, 51-55.  Objecting Claimant Irving M. Sonnenfeld is not identified in the BLMIS books and records related to the Shapiro #3 Account.

The Trustee served discovery requests on each of the three Shapiro #3 Objecting Claimants and two responded.  Elaine Lanweiler and Irving M. Sonnenfeld both produced documents in addition to responding to the Trustee's requests for admissions and interrogatories. The documents they produced and their responses make clear that they and David Shapiro considered and treated Shapiro #3 as a limited partnership.

Mr. Sonnenfeld produced correspondence from David Shapiro in which Mr. Shapiro explains that Mr. Sonnenfeld is a "limited partner in 'David Shapiro Nominee 3' and [David Shapiro] is the general partner."  Ackerman Decl., Ex. 6, MCMDP_00010448.  David Shapiro goes on to explain that the "partnership owned Madoff account number 1-S0299."  *Id.*; *see also* MCMDP_00010466 (Letters from David Shapiro to Irving M. Sonnenfeld and Elaine Langweiler requesting payment of their shares of the legal expenses, but that as "limited partners

[they] are not obligated to make" contributions). In addition to producing similar letters from David Shapiro,[9] Ms. Langweiler produced copies of several checks made payable by her to David Shapiro for deposits into BLMIS. Ackerman Decl., Ex. 5, MCMDP_00010386-88. Relatedly, she also produced an October 22, 1996 letter from David Shapiro in which he confirms her deposit into "the David Shapiro Nominee 3 partnership." *Id.*, MCMDP_00010411; *see also id.*, MCMDP_00010410. In addition, both of the responding Shapiro #3 Objecting Claimants produced to the Trustee IRS Form K-1's listing the tax identification number for the Shapiro #3 Account and identifying it as a limited partnership. *Id.*, MCMDP_00010399-404, 413, 419-20, 431-432, 436-443.

By failing to respond to the requests for admission, Objecting Claimant Frederick H. Mandel admitted them. FED. R. CIV. P. 36(a)(3). By these admissions, Mr. Mandel admitted that he did not have an account in his name at BLMIS, never deposited or withdrew cash or securities with or from BLMIS, did not receive investment statements, correspondence or tax statements from BLMIS, did not have any control, investment discretion or decision-making power over any investments at BLMIS, that all property acquired by the account holder was owned by and in the name of the account holder, that his only relationship to BLMIS existed by way of his relationship to the Partnership, and that David Shapiro maintained exclusive management and control of the account pursuant to the account holder agreement. *See* Ackerman Decl. ¶¶ 8, 17, Ex. 9.

Similarly, through their responses to the requests for admissions and interrogatories, the responding Objecting Claimants admitted that the account at issue was not in their name, that they received correspondence only from David Shapiro and that all deposits and withdrawals

---

[9] *See* Ackerman Decl., Ex. 5, MCMDP_00010392, 398 (letters referring to the Shapiro #3 Account as being owned by the partnership).

were to and from David Shapiro, that their only relationship to BLMIS existed by way of the

relationship to the Partnership, and that they did not have any control, investment discretion or

decision-making power over any investment assets with BLMIS.  *See* Ackerman Decl. ¶¶ 11, 12,

Exs. 3-4.

David Shapiro filed a customer claim on behalf of the David Shapiro #3 partnership.  The

Trustee denied the claim because, based on the Trustee's analysis, the amount of money that the

David Shapiro #3 partnership withdrew from the account was greater than the amount that was

deposited, making the account a "net winner."  Thus, a determination letter was sent to David

Shapiro denying the customer claim, and an objection to the Trustee's determination was timely

filed. [10]

### 4.    The BLMIS Account Records

The Partnerships each maintained an account in its own name with BLMIS.  The

Objecting Claimants did not.  Sehgal Decl., ¶25, Exs. 1-3.  The books and records of BLMIS

reflect money deposited or withdrawn by and on behalf of the Partnerships, and not by the

Objecting Claimants individually.  *See* Sehgal Decl. ¶¶ 15, 19, 21, Exs. 4, 8, 10.  All of the

Objecting Claimants admit that BLMIS sent Account statements and related communications to

David Shapiro on behalf of the Partnerships, not to or on behalf of the Objecting Claimants.

Because the Accounts were maintained at BLMIS on behalf of the Partnerships, the

books and records of BLMIS reflect the amounts owing and owed by the BLMIS estate to the

Partnerships.  The limited partners and David Shapiro's designation of certain deposits to

individuals does not create a fiduciary relationship between BLMIS and the limited partners.  All

---

[10] *See* ECF No. 2718 filed on July 14, 2010.  BLMIS Account 1S0299 is also the subject of an ongoing adversary proceeding brought by the Trustee.  *Picard v. David Shapiro Nominee #3*, Adv. No. 10-04314 (SMB).

deposits and withdrawals directly from or to BLMIS were by the David Shapiro only, not the
Objecting Claimants.

### 5.    The Claims

The Objecting Claimants, the seven (7) claims filed by them, and the six (6) docketed
objections to the determination of those claims, are specifically identified in Exhibits 1 through 3
to the Sehgal Declaration.  Sehgal Decl. ¶¶ 10-12, Exs. 1-3.  The Trustee denied their claims
because they lacked BLMIS accounts and, thus were not customers of BLMIS.  Sehgal Decl. ¶
11.  This Motion addresses all docketed objections to the determinations of the specified claims
by Objecting Claimants who are identified in Exhibit 2 of the Sehgal Declaration.

Since receiving the six (6) docketed objections to the claims determinations, the Trustee
served discovery requests on each of the Objecting Claimants seeking to determine their basis for
claiming customer status, and inquiring into deposits, payments, communications, account
openings, and their relationship with the respective account holder.  Four of the Objecting
Claimants responded to all or part of the Trustee's discovery requests, but none provided
persuasive evidence of their entitlement to customer status under SIPA.  *See* Ackerman Decl. ¶¶
9-14, Exs. 1-6.

### C.    THE CUSTOMER DECISIONS

In *Kruse v. Sec. Inv'r Prot. Corp.*, the Second Circuit found that investors who held
interests in a limited partnership that in turn invested partnership funds with BLMIS via the
partnership's own BLMIS account "never entrusted their cash or securities to BLMIS and, thus,
failed to satisfy this "critical aspect of the 'customer' definition" regardless of their intent.  708
F.3d at 427 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 236).  There, because
the money sent to BLMIS belonged to the account holders, not to the individual claimants, the
claimants in *Kruse* failed to meet this fundamental requirement for SIPA customer status—

entrustment of their own cash or securities to BLMIS. *Kruse*, 708 F.3d at 426-27 ("[A] claimant

will not be entitled to customer protection under SIPA unless the debtor actually receives the

claimant's cash or securities; the debtor must actually have come into possession or control.")

(citing 1–12 *Collier on Bankruptcy* ¶ 12.12 (16th ed. 2012)). In its decision, the Second Circuit

confirmed that "[j]udicial interpretations of 'customer' status support a narrow interpretation of

the SIPA's provisions." *Kruse*, 708 F.3d at 426 (citations omitted).

     The Second Circuit also found that the individual claimants in *Kruse* did not exhibit other

indicia of customer status in their dealings (or lack of dealings) with BLMIS, including that they

did not exert any control over the accounts at issue and that they were not reflected in BLMIS

records. *Kruse*, 708 F.3d at 426-27. Indicia of customer status include: (i) a direct financial

relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii)

securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS;

and (v) identification of the alleged customer in BLMIS's books and records. *Id.* (citing *Sec.

Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1318 (2d Cir. 1976) ("*Morgan,

Kennedy*"). Thus, without entrustment of assets to BLMIS and absent any evidence of any of the

indicia of customer status, the Second Circuit held that the objecting claimants failed to sustain

their burden of proving that they were customers of BLMIS.

     After several similar decisions, on February 25, 2015, this Court read into the record a

decision applying *Kruse* and *Morgan, Kennedy*, granting the Trustee's Motion And

Memorandum To Affirm His Determinations Denying Claims Of Claimants Holding Interests In

S&P or P&S Associates, General Partnerships. ECF No. 9506 at 30 ("*S&P Decision*"). Relying

on the prior decisions from the Bankruptcy Court, District Court and Second Circuit considering

the meaning of the term "customer" under SIPA, this Court explained that the indicia of

customer status are: (i) a direct financial relationship with BLMIS; (ii) a property interest in the funds invested directly with BLMIS; (iii) securities accounts with BLMIS; (iv) control over the account holders' investments with BLMIS; and (v) identification of the alleged customer in BLMIS's books and records.  The Court held that the objecting partners failed to sustain their burden of proving that they were customers, showing instead that they invested their assets with the relevant partnerships.

Since *Kruse*, and including the *S&P Decision*, there have been twenty-one decisions in this proceeding dealing with whether investors in BLMIS account holders, or individual contributors to individually-held accounts, could be treated as "customers" under SIPA when those investors did not themselves have individual accounts with BLMIS; all of the decisions said they could not.[11]  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re*

---

[11] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: S&P or P&S Associates, General Partnerships, ECF No. 9450 (Mar. 10, 2015); Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); and the Schupak Account, ECF No. 16641 (Sept. 18, 2017).  A twenty-second motion, Trustee's Motion and Memorandum of Law to Affirm His Determinations Denying Claims of Claimants Holding Interests in the Jennie Brett and David Moskowitz Accounts, was filed on September 14, 2017, ECF No. 16632, and is currently pending before this Court with a scheduled hearing date of October 25, 2017. The objection deadline was October 4, 2017 and the Trustee filed a Certificate of No Objection on October 12, 2017.  *See* ECF No. 16746.

*Bernard L. Madoff Inv. Sec. LLC*), 515 B.R. 161 (Bankr. S.D.N.Y. 2014) (the "*ERISA Claimant*

*Decision*") (noting that prior decisions established that the burden is on the claimant to establish

that he is a "customer" entitled to SIPA protection, and that such showing is not easily met); *see*

*also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. (In re Bernard L. Madoff)*, Adv. No.

08-01789(SMB), 2017 WL 1323473*1 at *3 (Bankr. S.D.N.Y. Apr. 10, 2017).

## ARGUMENT

To be a "customer" under SIPA, an investor must have "a claim on account of securities

received, acquired, or held by the debtor in the ordinary course of its business as a broker or

dealer from or for the securities accounts of such person," including "any person who has

deposited cash with the debtor for the purpose of purchasing securities."  SIPA § 78*lll*(2).  Thus,

to be a "customer," an investor must have entrusted cash or securities to the debtor for the

purpose of trading or investing in securities.

In *Kruse*, the Second Circuit found that investors who bought interests in a limited

partnership that invested partnership funds via the partnership's own BLMIS account "never

entrusted *their* cash or securities to BLMIS and, thus, failed to satisfy this 'critical aspect of the

"customer" definition'" regardless of their intent.  708 F.3d at 427 (quoting *In re Bernard L.*

*Madoff Inv. Sec. LLC*, 654 F.3d at 236).  Similarly, the Second Circuit in *In re New Times*

*Securities Services* held that "[t]he critical aspect of the 'customer' definition is the entrustment

of cash or securities to the broker-dealer for the purposes of trading securities."  463 F.3d 125,

128 (2d Cir. 2006) (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir.

1995)); *see also In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 724-25 (Bankr. S.D.N.Y.

1998) ("The term [customer] refers to those who entrust cash or securities to broker-dealers for

the purpose of trading and investing in the securities market.").  The Second Circuit further

upheld this principle in *In re Lehman Bros., Inc.*, concluding that the "critical aspect of the

'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes

of trading securities."  791 F.3d 277, 282 (2d Cir. 2015) (quoting *In re Bernard L. Madoff Inv.*

*Secs. LLC*, 654 F.3d at 236).  Recently, the Second Circuit upheld the Southern District of New

York's clarification of the meaning of "entrustment" in the context of customer status under

SIPA.  In *FirstBank Puerto Rico v. Giddens (In re Lehman Bros. Inc.)*, the District Court held

that entrustment of securities for purposes of customer status under SIPA requires more than

"mere delivery" and a claimant must have had a "fiduciary relationship" with the debtor.  562

B.R. 234, 242-43 (S.D.N.Y. 2016) *aff'd,* No. 16-2547-bk (2d Cir. June 29, 2017).

The Objecting Claimants' asserted interests in the Accounts do not meet the requirements

for "customer" status outlined in the seminal Second Circuit decision *Morgan Kennedy*, 533 F.2d

at 1318, reaffirmed in *Kruse*, 708 F.3d at 427, and further clarified in *Firstbank*.  In *Morgan

Kennedy*, the Second Circuit rejected the argument that the beneficial owners of the account

holder were the "customers" under SIPA, citing the facts that: (1) title to the trust assets was held

by the account holder, not the beneficiaries; (2) the securities account with the debtor was in the

name of the account holder, not the beneficiaries; (3) the account holder had the exclusive power

to entrust the assets to the debtor; (4) the beneficiaries were unknown to the broker; and (5) the

beneficiaries had no legal capacity in which they could deal with the debtor.  533 F.2d at 1318.

The Objecting Claimants' circumstances are almost identical to those of the claimants in

*Morgan Kennedy* and *Kruse*, and their contributions to accounts held in the names of the

respective Partnerships do not exhibit the hallmarks of customer status discussed in this Court's

*S&P Decision*.  *S&P Decision* at 30.  The Objecting Claimants admit that the Accounts were

held solely in the names of the Partnerships thus, title to the assets in those accounts rested with

those entities and not the Objecting Claimants.  With the exception of annual listings of members

18

provided to BLMIS by David Shapiro, and some references to the allocation of deposits or withdrawals to certain members, the books and records of BLMIS do not contain an accounting of the deposits and withdrawals of each of the Objecting Claimants. That the Partnerships each owned the respective BLMIS account is conceded by each of the Objecting Claimants through their production or submission of IRS Form K-1's confirming their status as limited partners. Furthermore, all of the Objecting Claimants admit to having entrusted their money to David Shapiro who, in turn entrusted those funds to BLMIS on behalf of the Partnerships.

All of the Objecting Claimants admit that they did not hold an account in their name with BLMIS, and therefore, each lacked a direct financial relationship with BLMIS on their own behalf. Thus, like the objecting claimants dealt with by prior customer decisions, the Objecting Claimants do not individually own the assets the Partnerships invested in the Accounts with BLMIS. It was the Partnerships, and not the Objecting Claimants, who entrusted assets to BLMIS for the purpose of purchasing securities, who had the right to direct the investment of those assets, and who had the right to withdraw property from the Account on their respective behalves. *Kruse*, 708 F.3d at 427. As such, it is the Partnerships, and not the Objecting Claimants, who are the customers for the Accounts under SIPA.

The result remains the same under an analysis of the accounts as "nominee" accounts. The Objecting Claimants' discovery responses confirm that they do not satisfy the crucial element of entrustment of their funds to the debtor. They each admit that their funds were entrusted to David Shapiro and they maintained no direct fiduciary relationship with BLMIS. Where an objecting claimant lacks such a relationship and presents no evidence that they exhibit other indicia of customer status, as discussed above, the legal form of the accountholder does not alter the conclusion that they lack customer status under SIPA.

19

The funds that the Objecting Claimants contributed to the Partnerships, and anything that the Partnerships purchased with those funds, belong to the relevant Partnership and not to the Objecting Claimants.  Pursuant to New York state law governing the Partnerships, partnership property belongs to the partnership alone and not to the individual partners.  N.Y. P'SHIP LAW § 121-701 (McKinney 2016) ("An interest in a limited partnership is personal property and a partner has no interest in specific partnership property.").[12]  The Objecting Claimants do not individually own the assets that the Partnerships invested with BLMIS.  Instead, the assets are collectively owned by the Partnerships themselves.

Because BLMIS did not perform a custodial function on behalf of the individual Objecting Claimants, the Objecting Claimants have neither "customer" claims nor individual net equity.  The purpose of SIPA, a statute intended to deal with broker insolvency, is "to expedite the return of customer property" by "protecting the custody function of brokers."  *Sec. Inv'r Prot. Corp. v. 2427 Parent Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 779 F.3d 74, 80 (2d Cir. 2015) (finding impermissible the application of interest or time-based damages to customer claims under SIPA).  Customers share in the fund of customer property ratably, according to each customer's "net equity." *Id*. at 77, 81.  The definition of net equity is limited by the fundamental SIPA design "to return customer property to customers," *id*. at 77, whether in cash or in actual securities.  *Id*. at 80; *see also* SIPA § 78fff-2(b)(requiring the Trustee to discharge the obligations of the debtor to customers with valid claims "insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the

---

[12] *See also Alley v. Clark*, 71 F. Supp. 521, 526 (E.D.N.Y. 1947) ("[A] limited partner has no property right in the partnership assets."); *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1076 (2d Cir. 1977) (explaining that limited partners have no property right in the partnership assets); *Reiter v. Greenberg*, 21 N.Y.2d 388, 391 (N.Y. 1968) ("An interest in a limited partnership—even a partnership that deals solely in real estate—is personalty not realty.").

satisfaction of the trustee).[13]   The Objecting Claimants accordingly have no individual net equity

and are not "customers" within the meaning of SIPA.

Each of the Objecting Claimants was served with discovery requests by the Trustee, in a

*pro se* capacity.   Four of the Objecting Claimants responded.   Ackerman Decl. ¶¶ 9-12, Exs. 1-6.

The admissions, both actual and implied, show that Objecting Claimants lack any relationship

with BLMIS that fits the *Morgan Kennedy* criteria and that their claims of "customer" status are

baseless.   Specifically, they admitted that: (i) the relevant Account was not titled in their name;[14]

(ii) that they never received investment statements or tax statements in their names from

BLMIS;[15] (iii) that they never paid cash directly to BLMIS for credit to an account in their

names;[16] (iv) never deposited securities directly with BLMIS;[17] (v) that they never withdrew or

received funds directly from BLMIS;[18] (vi) that their only relationship to BLMIS existed by way

of their relationship to the account holder;[19] (vii) that they never entered into any contracts in

their names with BLMIS;[20] (viii) that they did not have any control, investment discretion or

decision-making power over any investment assets at BLMIS;[21] and, (ix) that there was an

accountholder agreement that granted exclusive management and control of the partnerships to

---

[13] SIPA §78*lll*(11) sets forth the definition of "net equity" as "the dollar amount of the account or accounts of a customer," and net equity is to be "determined by . . . [c]alculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . on the filing date . . . all securities positions of such customer."

[14] Ackerman Decl. Exs. 1–4, 7–9, ¶ 1.

[15] *Id.* ¶¶ 8, 9.

[16] *Id.* ¶ 5.

[17] *Id.* ¶ 4.

[18] *Id.* ¶¶ 6, 7.

[19] *Id.* ¶ 11.

[20] *Id.* ¶ 10.

[21] *Id.* ¶ 12.

David Shapiro.[22]  The Shapiro #3 Objecting Claimants, Irving M. Sonnenfeld and Elaine

Langweiler, further confirmed through responses to interrogatories that David Shapiro, alone,

had control over the account, authority to exercise discretion with respect to the assets of the

accountholder, and David Shapiro was the only person with a direct relationship with BLMIS

regarding the account.  Ackerman Decl., Exs. 3-4, MDMDR_00000356; MCMDR_00000361.

As the Second Circuit has explained, "[j]udicial interpretations of 'customer' status

support a narrow interpretation of the SIPA's provisions."  *Kruse*, 708 F.3d at 426 (quoting *In re

New Times Sec. Servs., Inc.*, 463 F.3d at 127).  Customer status under SIPA is narrowly

construed and is the burden of the claimant to establish.  *See ERISA Claimant Decision*, 515 B.R.

at 166; *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 294 (Bankr. S.D.N.Y. 2011) (citing

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)) ("The burden is on

the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing 'is

not easily met.'"); *see also Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. at

557 (Bankr. S.D.N.Y. 2002) ("[I]it is well-established in the Second Circuit that a claimant bears

the burden of proving that he or she is a 'customer' under SIPA.").  The Objecting Claimants

have not met this burden.  Thus, under Second Circuit precedent, the Objecting Claimants are not

SIPA customers.

---

[22] *Id.* ¶ 14.

## **CONCLUSION**

For all of the foregoing reasons, the Trustee respectfully requests that the Court affirm the Trustee's determination denying the Objecting Claimants' seven claims, overrule the Objecting Claimants' six docketed objections, disallow their claims, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        October 18, 2017

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Stephanie A. Ackerman
Email: sackerman@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*