**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Robertson D. Beckerlegge
Tatiana Markel
Ferve Khan

Hearing Date: November 1, 2017
Time: 2:00 p.m.

Objection Deadline: October 25, 2017
Time: 5:00 p.m.

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and for the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1,<br><br>    Defendants. | Adv. Pro. No. 10-05224 (SMB) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND TO COMPEL PAYMENT OF CLAIM AND IN SUPPORT OF THE TRUSTEE'S CROSS-MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND TO SUBSTITUTE DEFENDANTS**

# TABLE OF CONTENTS

**Page**

FACTS .................................................................................................................1

PROCEDURAL HISTORY................................................................................3

ARGUMENT .....................................................................................................6

I.      THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS. ...................6

II.     THE COURT SHOULD GRANT THE TRUSTEE LEAVE TO FILE A SECOND
        AMENDED COMPLAINT .........................................................................................7

        A.  Defendants Will Not Be Prejudiced by the Proposed Amendments............................ 8

        B.  The Trustee Has Acted in Good Faith and Without Delay ........................................ 10

        C.  The Proposed Amendments Will Not Be Futile. ....................................................... 11

III.    THE COURT SHOULD GRANT THE TRUSTEE'S CROSS-MOTION TO
        SUBSTITUTE DEFENDANTS .................................................................................23

        A.  The Trustee's Motion Is Timely ............................................................................... 23

        B.  Mitchell D. Schepps is the Proper Party to Substitute for Deceased Defendant David
        R. Markin ..................................................................................................................... 24

        C.  The Trustee's Claims Have Survived Mr. Markin's Death ....................................... 24

IV.     THE COURT SHOULD DENY DEFENDANTS' REQUEST TO DISMISS THE
        SECTION 502(d) CLAIM AND TO COMPEL PAYMENT............................................25

V.      CONCLUSION.............................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010)................................................................................8

*Alexander Interactive Inc., v. Adorama, Inc.*,
   No. 12-CV-6608, 2014 WL 113728 (S.D.N.Y. Jan. 13, 2014) ................................8

*Allen ex rel. Allen v. Devine*,
   No. 09-CV-668, No. 10-CV-1319 (ADS), 2011 WL 5117619 (E.D.N.Y. Oct.
   25, 2011) ......................................................................................................23, 24

*Allison v. Clos-ette Too, L.L.C.*,
   No. 14-CV-1618, 2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) ...................................8

*In re B.S. Livingston & Co.*,
   186 B.R. 841 (D.N.J. 1995) ..............................................................................18

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007)..............................................................................16

*Bennerson v. City of New York*,
   No. 03-CV-10182, 2004 WL 902166 (S.D.N.Y. Apr. 28, 2004) ...........................7

*In re Best Products Co., Inc.*,
   168 B.R. 35 (Bankr. S.D.N.Y. 1994).................................................................25

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   866 F. Supp. 2d 257 (S.D.N.Y. 2012)..............................................................7, 8

*Bonded Financial Servs. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ........................................................................15, 21

*BR Festivals, LLC v. Uptown Theatre, LLC (In re BR Festivals, LLC)*,
   No. 14-10175 (AJ), 2014 WL 6846429 (N.D. Cal. Dec. 1, 2014).........................21

*In re C.R. Stone Concrete Contractors, Inc.*,
   462 B.R. 6 (Bankr. D. Mass. 2011) ..................................................................25

*In re Chase & Sanborn Corp.*,
   904 F.2d 588 (11th Cir. 1990) ..........................................................................15

*Chemical Bank v. Shearson Lehman Bros., Inc.*,
   No. 91 Civ. 4915 (LMM), 1992 WL 183760 (S.D.N.Y. July 21, 1992) .................14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble,*
*Wagner, Heine, Underburg, Manley, Myerson & Casey),*
130 F.3d 52 (2d Cir. 1997), *cert denied* 524 U.S. 912 (1998)....................................15, 16, 17

*CNB Int'l v. Lloyds TSB Bank plc (In re CNB Int'l, Inc.),*
440 B.R. 31 (W.D.N.Y. 2010) ...........................................................................................16

*Colucci v. Beth Israel Med. Ctr.,*
603 F. Supp. 2d 677 (S.D.N.Y. 2009)................................................................................25

*In re Columbia Data Prods., Inc.,*
892 F.2d 26 (4th Cir. 1989) ...............................................................................................15

*Croom v. Ocala Plumbing & Elec. Co.,*
62 Fla. 460, 57 So. 243 (Fla. 1911) ..................................................................................22

*Crossland Savings FSB v. Rockwood Ins. Co.,*
700 F. Supp. 1274 (S.D.N.Y. 1988)...................................................................................14

*Dover Ltd. v. A.B. Watley, Inc.,*
No. 04 Civ. 7366, 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006) ...........................................6

*In re Enron Creditors Recovery Corp.,*
407 B.R. 17 (Bankr. S.D.N.Y.), *rev'd on other grounds,* 422 B.R. 423
(S.D.N.Y. 2009)..................................................................................................................18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
986 F. Supp. 2d 428 (S.D.N.Y. 2013).................................................................................8

*Fjord v. AMR Corp. (In re AMR Corp.),*
506 B.R. 368 (Bankr. S.D.N.Y. 2014)............................................................................8, 10

*Gallant v. Kanterman (In re Kanterman),*
97 B.R. 768 (Bankr. S.D.N.Y. 1989), *aff'd on other grounds,* 108 B.R. 432
(S.D.N.Y. 1989)...............................................................................................................17, 18

*Gayle v. New York State Div. of Parole,*
No. 95 Civ. 10552 (SS), 1997 WL 53156 (S.D.N.Y. Feb.10, 1998)......................................24

*Gothberg v. Town of Plainville,*
305 F.R.D. 28 (D. Conn. 2015)..........................................................................................23

*Gowan v. Amaranth LLC (In re Dreier LLP),*
452 B.R. 451 (Bankr. S.D.N.Y. 2011).................................................................................18

## TABLE OF AUTHORITIES

### (continued)

**Page(s)**

*Hessco Komsala v. Imhof (In re Hessco)*,
   295 B.R. 372 (B.A.P. 9th Cir. 2003).................................................................19, 20

*U.S. ex rel. Hindin v. New York Lutheran Med. Cntr*,
   No. 00 Civ. 7499, 2009 WL 366490 (E.D.N.Y. Feb. 13, 2009)................................6

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
   665 F. Supp. 2d 239 (S.D.N.Y. 2009)......................................................................11

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
   Scotland Grp., PLC*,
   783 F.3d 383 (2d Cir. 2015)......................................................................................11

*In re Universal Clearing House Co.*,
   62 B.R. 118, 128 n. 10 (D. Utah 1986)....................................................................18

*In re Incomnet, Inc.*,
   463 F.3d 1064 (9th Cir. 2006) ..................................................................................15

*Jimenez-Rodoli v. Dist. 15 Machinist's Union*,
   No. 10 Civ. 8378 (RJS) (KNF), 2011 WL 4494555 (S.D.N.Y. Sept. 27, 2011) ..............23, 24

*Linquist v. Mack (In re Mack)*,
   269 B.R. 392 (Bankr. D. Minn. 2001) .....................................................................19

*In re Lloyd's Am. Tst. Fund Litig.*,
   954 F. Supp. 656 (S.D.N.Y. 1997)......................................................................20, 21

*Lumumba v. Marquis*,
   No. 13 Civ. 69, 2013 WL 5429429 (D. Vt. Aug. 27, 2013) .....................................6

*Menotte v. Brown (In re Brown)*,
   303 F.3d 1261 (11th Cir. 2002) ................................................................................22

*Nordberg v. Société Generale (In re Chase & Sanborn Corp.)*,
   848 F.2d 1196 (11th Cir. 1988). Bankruptcy............................................................16

*In re Northeast Indus. Dev. Corp.*,
   513 B.R. 825 (Bankr. S.D.N.Y. 2014)........................................................................6

*Paloian v. LaSalle Bank, N.A.*,
   619 F.3d 688 (7th Cir. 2010) ........................................................................14, 15, 20

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017)......................................................................................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Patel v. Contemporary Classics of Beverly Hills*,
  259 F.3d 123 (2d Cir. 2001)..................................................................................7

*Pepper v. Litton*,
  308 U.S. 295 (1939)............................................................................................16

*Perlow v. Comm'r of Soc. Sec.*,
  No. 10-CV-1661 (SLT), 2010 WL 4699871 (E.D.N.Y. Nov. 10, 2010)................24

*Picard v. Marilyn Bernfeld Trust*
  Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015)........................17

*Picard v. Estate of Steven Mendelow*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016)...............................................................8, 11

*Picard v. Markin et al.*,
  No. 11-CV-07602 (S.D.N.Y. Jan. 25, 2012)..........................................................3

*Pope Inv. II, LLC v. Deheng Law Firm*,
  No. 10 Civ. 6608(LLS), 2012 WL 3526621 (S.D.N.Y. Aug.15, 2012) ..................6

*Prince v. Cablevision Sys. Corp.*,
  No. 04-CV-8151, 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ..............................6

*Randall's Island Family Golf Ctrs. v. Acushnet Co (In re Randall's Island Family
  Golf Ctrs)*
  Adv. Pro. No. 02-2278 (SMB), 2002 WL 31496229, (Bankr. S.D.N.Y. Nov. 8,
  2002) ..................................................................................................................13

*Roe v. City of New York.*,
  No. 00 Civ. 9062 (RWS), 2003 WL 22715832 (S.D.N.Y. Nov. 19, 2003)............24

*Sec. Inv'r Prot. Corp. v. Ida Fishman Rev. Trust*,
  773 F.3d 411 (2d Cir. 2014)..................................................................................3

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015).................................................................12

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999).................................................................18

*SEC v. Wyly*,
  860 F. Supp. 2d 275 (S.D.N.Y. 2012)..................................................................25

*Siegel v. Converters Transp., Inc.*,
  714 F.2d 213 (2d Cir. 1983)..................................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981).........................................................................8, 9

*Town of New Windsor v. Tesa Tuck, Inc.*,
    919 F. Supp. 662 (S.D.N.Y. 1996).....................................................................10

*Unicorn Tales, Inc. v. Banerjee*,
    138 F.3d 467 (2d Cir. 1998)............................................................................23

*United States v. NEC Corp.*,
    11 F.3d 136 (11th Cir. 1993) ..........................................................................25

*United States v. Walker*,
    No. 1:11-CV-914 (NAM) (DJS), 2016 WL 7409688 (N.D.N.Y. Sept. 26,
    2016) .......................................................................................................23, 24

*In re Vivaro Corp.*,
    541 B.R. 144 (Bankr. S.D.N.Y. 2015)................................................................25

*Waterbury v. Munn*,
    159 Fla. 754, 32 So. 2d 603 (Fla. 1947) (en banc) ..............................................22

**Statutes**

11 U.S.C. 502(d) ...........................................................................................25

11 U.S.C. § 546(a) .........................................................................................12

11 U.S.C. § 548(a)(1)(A) .............................................................................12, 25

11 U.S.C. § 551 ............................................................................................25

11 U.S.C. 502(d) .......................................................................................25, 26

11 U.S.C. 550.......................................................................................9, 17, 25

Fla. Stat. § 736.0505 .....................................................................................22

Internal Revenue Code section 664 ...................................................................15

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa ............................................1

**Rules**

Fed. R. Civ. P. 4(m) ......................................................................................13

Fed. R. Civ. P. 12(b) ....................................................................................5, 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Fed. R. Civ. P. 15 ............................................................................................................. *passim*

Fed. R. Civ. P. 25 ...................................................................................................... i, 22, 25

Rule 12(b)(6) ...................................................................................................................6, 11

Rule 12(c) ...............................................................................................................................6

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1471 (3d ed. 1971) ...........................................................................................................8

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1484 (3d ed. April 2017 update) .....................................................................................9

Restatement (Second) of Trusts § 197 cmt. .................................................................20

Restatement (Third) of Trusts § 42 (2003) ..................................................................14

Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), submits this Memorandum of Law (i) in opposition to the Motion to Dismiss the First Amended Complaint and to Compel Payment of Claim filed by the estate of David Markin (the "Markin Estate"), ECF No. 53, and (ii) in support of the Trustee's cross-motion for leave under Federal Rule of Civil Procedure ("FRCP") 15, as incorporated by Federal Rule of Bankruptcy Procedure ("FRBP") 7015, and FRCP 25, as incorporated by FRBP 7025, to file a Second Amended Complaint in order (1) to substitute the Markin Estate and Mitchell D. Schepps, as personal representative of the Markin Estate (collectively, the "Estate Defendants") for the deceased defendant David R. Markin ("Markin"), individually and in his capacity as trustee of the David Markin Charitable Remainder Unitrust #1 ("CRUT #1"), and (2) to particularize the subsequent transfer claims recoverable from the Estate Defendants.  The movant here, the Markin Estate, is not currently a defendant.

A copy of the Trustee's proposed second amended complaint (the "Second Amended Complaint") is attached as Exhibit A to the Declaration of Tatiana Markel.  Defendants have indicated that they do not consent to the proposed amendment.

## FACTS

On December 16, 1996, Markin created CRUT #1.  As the Settlor of CRUT #1, Markin named himself the trustee and beneficiary. (Sec. Am. Compl.  ¶ 2-3.) Markin also named two charities as the "Charitable Remaindermen." Between 1997 and 2004 Markin amended the Charitable Remaindermen at least 5 times, including to name his own foundation, the David R. Markin Foundation, Inc. (*Id.* ¶¶ 3-5.)  As Trustee, Markin had full administrative and investment

powers over CRUT #1, and had the power to commence and defend litigation on behalf of CRUT #1. (*Id.* ¶ 6.)

In January 1997, Markin opened a BLMIS account bearing the number 1M0091 (the "Account") in the name of CRUT #1 and contributed $4,000,000 to the Account. Markin signed the account opening documents and managed the Account. On August 17, 2004, Markin wrote to the IRS seeking an early termination of CRUT #1. (*See* Ex. B to Markel Decl.) Markin asked for a ruling that, among other things, CRUT #1's early termination would not constitute an act of self-dealing under the Internal Revenue Code, and that any proceeds Markin personally received upon termination would be treated as long term capital gains. (*Id.* at 1.) On March 27, 2007, the IRS responded to Markin that his early termination of CRUT #1 would still provide him with the favorable tax treatment that he sought, provided he distributed the assets to the beneficiaries based on a certain formula set forth in the Internal Revenue Code. (*Id.* ¶ 7-9; *see* Ex. C to Markel Decl.)

On March 29, 2007, Markin wrote a letter to BLMIS seeking the termination of the Account and the withdrawal of all funds. BLMIS closed the Account and transferred $16,107,533 to Markin, as the trustee of CRUT #1. Of that amount $12,107,533 represented fictitious profits from the Ponzi scheme (the "Two-Year Transfers"). Upon receipt of the Two-Year Transfers, Markin made three transfers of the proceeds to himself, as follows: (i) $9,475,604.32 on or around March 30, 2007; (ii) $198,552.97 on or around April 11, 2007; and (iii) $49,148.09 on our around June 7, 2007 (the "Markin Transfers"). The balance of the Two-Year Transfers were transferred to various charities. (Sec. Am. Compl. ¶¶ 10-14.)

Markin died on May 30, 2013. (*Id.* ¶ 15.) The Markin Estate is being administered in the Circuit Court for Palm Beach County, Florida. Mitchell D. Schepps was appointed as personal representative of the Markin Estate on June 13, 2013. (*Id.* ¶¶ 22-23.)

2

## PROCEDURAL HISTORY

On December 4, 2010 the Trustee filed his original complaint (ECF No. 1, the "Original Complaint"), asserting claims against Markin and the BLMIS account-holder entities related to the Markin to avoid and recover transfers from BLMIS within the six-year period prior to December 11, 2008. The Trustee also pleaded that "some or all" of the transfers were subsequently transferred to Markin. (Orig. Compl. ¶ 42.) On January 25, 2012, the Trustee filed the First Amended Complaint in the District Court for the Southern District of New York in the action *Picard v. Markin et al.*, No. 11-CV-07602 (S.D.N.Y. Jan. 25, 2012), ECF No. 8 (the "First Amended Complaint") to, among other things, add causes of action to avoid the defendants' obligations.

On March 22, 2013, as part of the omnibus proceedings before this Court, defendants brought a motion to dismiss the First Amended Complaint. (ECF No. 19.) After extensive proceedings, on July 16, 2015, the Court issued its Order Granting In Part and Denying In Part Defendants' Motions to Dismiss ("Omnibus MTD Order"). (ECF No. 43.) In line with the Second Circuit's decision in *Sec. Inv'r Prot. Corp. v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2014), the Omnibus MTD Order dismissed the Trustee's claims to recover transfers beyond the two-year period prior to December 11, 2008 (the "Two-Year Period") and to avoid obligations. The Omnibus MTD Order also dismissed the subsequent transfer claims for lack of specificity, without prejudice to the Trustee's right to seek to amend under FRCP 15(a)(2) and FRBP 7015.

On May 20, 2013, after the First Amended Complaint was filed, Markin passed away. Defendants did not file or serve a suggestion of death. Nevertheless, upon learning of Markin's death, the Trustee attempted to obtain consent from the remaining defendants to stipulate to the

substitution of the Estate Defendants for Markin, but the Trustee's attempts were unsuccessful. Markin remains a named defendant in this action.

As early as the beginning of 2013, the parties began settlement discussions, which continued on and off until earlier this year. On March 1, 2017, defendants wrote to this Court seeking permission to file a summary judgment motion. The basis for defendants' request was that the Trustee's claim against Markin was allegedly barred by section 550(b) because Markin gave value to CRUT #1 in exchange for the transfers he received (the "550(b) Issue"). In their letter, defendants noted the urgency to resolve this case because Markin's estate could not be distributed to his widow and six children until then. A conference was held before the Court on March 29, 2017 (the "March 29 Conference"). During the conference, the Trustee opposed summary judgment on several grounds: first, that summary judgment was premature, given the impending end of discovery and the fact that defendants had produced no documents; second, that the Trustee required discovery on the 550(b) Issue, at least with respect to his theory that Markin exercised dominion and control over the assets and should therefore be treated as an initial transferee; and third, and most important, there was no defendant on whose behalf such a motion could be made, because the Omnibus MTD Order had dismissed the subsequent transfer claim against Markin individually, and because no substitution had occurred, the proper parties are not before the Court. Judge Bernstein responded that, although he believed the 550(b) Issue was a narrow issue of law and ripe for summary judgment, he could not allow defendants to proceed to summary judgment without bringing the proper parties into the case first (i.e., there is no "case [and] controversy" until the Estate Defendants are parties). (Transcript of March 29, 2017 Hearing ("Tr."), ECF No. 52 (filed Apr. 10, 2017), at 21:22-24, 22:1-2.) Judge Bernstein also stated that Markin's dominion and control over the assets was a theory the Trustee was free to advance, and

believed that issue could be decided as a matter of law.  (Tr. at 23:14-25, 24:1-2.)  To the extent

an issue of fact was to arise with respect to Markin's dominion and control over CRUT #1's assets

that would prevent the Trustee from responding to a summary judgment motion, Judge Bernstein

directed the Trustee to raise it then. (Tr. at 23:11-14.)

On April 21, 2017, the Trustee forwarded a draft of the amended complaint to counsel for

the defendants.  The primary changes to the First Amended Complaint included: (i) the substitution

of Estate Defendants for Markin; (ii) removing the defendants that received transfers beyond the

Two-Year Period, as well as the dismissed causes of action; and (iii) particularizing the transfers

to Markin based on information from defense counsel regarding his receipt of the transfers.  On

May 19, 2017, defendants responded and refused to give their consent to the amendment.  On May

31, 2017, the Trustee wrote to defendants urging them to reconsider consenting to the amendment

in light of the claimed urgency for summary judgment as they represented to the Court.  Defendants

refused, advising the Trustee that he should make a motion instead.

The defendants did not wait for the Trustee to make his motion.  They also did not heed

the Court's advice about first being substituted as defendants in the action so they could be entitled

to seek relief.  Instead, the non-defendant Markin Estate moved to dismiss the First Amended

Complaint.  Its motion is not based on deficiencies of the First Amended Complaint (as those were

addressed by defendants' first motion to dismiss in 2013), but rather on alleged deficiencies in a

proposed Second Amended Complaint that the Trustee shared with defendants in order to obtain

their consent to file it.  The Trustee opposes the Markin Estate's motion, both on procedural and

substantive grounds, and brings the instant motion seeking to substitute the Estate Defendants for

Markin and to amend his complaint to, among other things, particularize the transfers and recover

the same from the Estate Defendants.

## ARGUMENT

## I.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

The Markin Estate seeks to dismiss the First Amended Complaint on the grounds that Markin gave value for the subsequent transfers and did not exercise dominion and control over CRUT #1.  The Markin Estate's motion is an amalgam of different requests for relief—(i) an opposition to the Trustee's expected, but yet-to-be-filed, motion to amend, (ii) a cloaked motion for summary judgment, and (iii) a motion to dismiss the yet-to-be-filed Second Amended Complaint.  The Markin Estate cannot bring any of these motions at this juncture.

First, the movant—the Markin Estate—is not a party in this action.  Only "a party may assert" a 12(b)(6) defense by motion.  Fed. R. Civ. P. 12(b).  The Markin Estate and Personal Representative have no standing to so move.  *See Dover Ltd. v. A.B. Watley, Inc*., No. 04 Civ. 7366, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (defendant not named in a complaint count had no standing to attack the legal sufficiency of the count); *U.S. ex rel. Hindin v. New York Lutheran Med. Cntr*, No. 00 Civ. 7499, 2009 WL 366490, at *1 (E.D.N.Y. Feb. 13, 2009) (party not named in second amended complaint had no standing to move for summary judgment).  This motion to dismiss should therefore be denied as moot.  *See, e.g., Pope Inv. II, LLC v. Deheng Law Firm*, No. 10 Civ. 6608(LLS), 2012 WL 3526621, at *8 (S.D.N.Y. Aug.15, 2012); *Lumumba v. Marquis*, No. 13 Civ. 69, 2013 WL 5429429, at *6 (D. Vt. Aug. 27, 2013) (same).

Second, the Markin Estate's motion to dismiss for failure to state a claim, filed after the pleadings closed, is untimely.  Fed. R. Civ. P. 12(b) ("A motion asserting [a 12(b)(6) defense] must be made before pleading if a responsive pleading is allowed"); *In re Northeast Indus. Dev. Corp.*, 513 B.R. 825, 839 (Bankr. S.D.N.Y. 2014) (Rule 12(b)(6) motion filed after answer was untimely); *Prince v. Cablevision Sys. Corp.*, No. 04-CV-8151, 2005 WL 1060373, at *3

6

(S.D.N.Y. May 6, 2005) (same); *Bennerson v. City of New York*, No. 03-CV-10182, 2004 WL 902166, at *3 (S.D.N.Y. Apr. 28, 2004) (same). Courts in this jurisdiction may construe motions to dismiss filed after the pleadings closed as motions for judgment on the pleadings under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). However, in this case, a motion for judgment on the pleadings would be improper. Defendants have already brought a motion to dismiss the First Amended Complaint. Defendants' first motion to dismiss was resolved by this Court's Omnibus MTD Order, and as a result, Markin was dismissed as a subsequent transferee defendant. Therefore, there are no pleadings against Markin on which defendants can move for judgment. For the same reason, to the extent that the Markin Estate's motion to dismiss is disguised as a motion for summary judgment, such motion is improper and premature. This Court already made clear that summary judgment would not even be proper unless the Estate Defendants were added as defendants. (Tr. at 24:14-16: "if [the Estate is] not a defendant, I'm not going to entertain a motion for summary judgment.")

The Trustee understands that defendants are trying to "fast track" these arguments. The Trustee has given them ample opportunity to do so properly by consenting to the substitution of the Estate Defendants and to the amendment of the First Amended Complaint in order to add allegations of transfers to Markin. The defendants have decided, instead, to eschew the Federal Rules in favor of an ill-conceived and procedurally deficient motion to dismiss. The Trustee seeks to remedy defendants' failure by filing a contemporaneous motion to substitute and amend.

## II.    THE COURT SHOULD GRANT THE TRUSTEE LEAVE TO FILE A SECOND AMENDED COMPLAINT

Under FRCP 15(a)(2), made applicable to this proceeding by FRBP 7015, a party may amend its pleading upon leave of the court, which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). FRCP 15 is to be liberally construed. *E.g.*, *BNP Paribas*

*Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 272 (S.D.N.Y. 2012); *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (the rule reflects Congress's intention "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities") (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1471, at 359 (3d ed. 1971)).  "Generally, amendments are favored because they 'tend to facilitate a proper decision on the merits.'" *Picard v. Estate of Steven Mendelow*, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016) (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013)).

In the Second Circuit, a party may amend its pleadings barring (i) bad faith; (ii) prejudice to the opposing party; (3) undue delay in bringing the motion; and (4) futility of the amendment. *Fjord v. AMR Corp. (In re AMR Corp.)*, 506 B.R. 368, 382 (Bankr. S.D.N.Y. 2014).  None of the four factors is present here.

### A.    Defendants Will Not Be Prejudiced by the Proposed Amendments

The party opposing an amendment has the burden of proving that leave to amend would be prejudicial.  *Allison v. Clos-ette Too, L.L.C.*, No. 14-CV-1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015) (citing *Alexander Interactive Inc., v. Adorama, Inc.*, No. 12-CV-6608, 2014 WL 113728, at *3 (S.D.N.Y. Jan. 13, 2014)).  Further, defendants "must show actual prejudice, not the possibility of prejudice." *Mendelow*, 560 B.R. at 224.

Prejudice turns on whether amendment "would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation marks omitted) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  "If no prejudice is found, then leave normally will be granted."

8

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (3d ed. April 2017 update).

Here, the defendants cannot meet their burden because they are not prejudiced by the amendment. This action is at an early stage. Though the Trustee has served written discovery, defendants have not responded. Regardless, however, discovery would not change by virtue of the amendment. The written discovery requests served on defendants seek the same information the Trustee would seek based on the Second Amended Complaint. The issues remain the same, the facts remain the same, and the documents produced would be the same. Thus, no additional discovery or preparation for trial would result from this amendment. *See, e.g.*, *State Teachers Ret. Bd.*, 654 F.2d at 856 (reversing denial of leave to amend where "no trial date had been set by the court," no party had moved for summary judgment, the amended claim was "obviously one of the objects of discovery and related closely to the original claim," and "the amendment will not involve a great deal of additional discovery.").

Furthermore, the amendment will not delay resolution of the dispute, as the Markin Estate suggests. To the contrary, under Section 550(a) of the Bankruptcy Code, the time to bring an action to recover transfers does not begin to run until the transfers have been avoided. Bringing all the parties into the action now, including to the extent they received subsequent transfers, will speed up the resolution of the entire action. Counsel for defendants, in fact, agreed at the March 29 Conference that amendment was necessary for defendants to proceed with their summary judgment motion. (See Tr. at 22-:3 (Ms. Neville: "We will amend the complaint."); Tr. at 24:21-22 (Ms. Neville: "I'll find a way to make myself a defendant.") The defendants failed to do so, and rejected the Trustee's efforts to amend.

Because the defendants cannot demonstrate that they will be prejudiced by the amendments, leave to amend should be granted.

### B.    <u>The Trustee Has Acted in Good Faith and Without Delay</u>

It is well-settled in the Second Circuit that the mere passage of time, in the absence of bad faith, does not warrant a denial of leave to amend. *See In re AMR Corp.*, 506 B.R. at 383. Only where a court finds that a party delayed in bad faith will leave to amend be denied. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 676–77 (S.D.N.Y. 1996) (granting leave to amend after plaintiff waited two years to file amendments, noting that "[t]he federal rules of pleading are not intended unreasonably to lock counsel into a litigation strategy"). Like prejudice, the burden to prove bad faith is on the defendants. *E.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citations omitted).

Since learning of Markin's death, the Trustee sought defendants' agreement to substitute the Estate Defendants as defendants by stipulation. His efforts have been unsuccessful. Within a month after this Court issued the Omnibus MTD Order, the Trustee wrote to defense counsel requesting their consent to amend the complaint. In an email dated August 11, 2015, the Trustee wrote that because "the procedural posture of the good faith cases is now quite different, [the substitution] stipulation [does not] makes sense anymore. Instead, we would like to amend the complaint, in which we would bring a two-year claim only against the Estate of David Markin. Would you consent to amendment?"

In response, defendants raised the potential for settlement, and requested certain information from the Trustee, which the Trustee promptly provided. The settlement discussions never materialized, and on April 11, 2016, the Trustee again wrote to defendants:

> In August 2015, the Trustee sought your consent to amend the complaint. As stated in our correspondence, the amendment would accomplish two goals: (i) limit the causes of action to those seeking

10

> avoidance and recovery of the two-year transfers; and (ii) substitute the Estate of David Markin. In response, you indicated that your client was interested in settling and requested the Trustee's calculations in connection with Mr. Markin's net loser account – 1M0211.  On September 2, 2015, we provided you with those calculations. In response, you requested a 30-day extension to answer the complaint to allow yourself time to review the figures with your client. We granted the extension. We have not heard back from you on this case concerning settlement for many months. Our presumption is that we should proceed with litigation, and thus are circling back with you on the amendment of the complaint. Please let us know if you will consent to amendment as outlined above by the end of this week. Absent consent, we intend to move to amend the complaint.

In response, defendants again raised the potential for settlement and the parties renewed settlement discussions.  These discussions continued for some time until the parties reached an impasse and defendants wrote to the Court on March 1, 2017 seeking summary judgment.  As stated above, after the March 29 Conference, the Trustee drafted an amended complaint but defendants refused to consent to its filing.

Because the Trustee has diligently pursued his claims and this amendment is in good faith, leave to amend should be granted under FRCP 15.

## C.    The Proposed Amendments Will Not Be Futile.

The party opposing an amendment has the burden of proving that leave to amend would be futile.  *Mendelow*, 560 B.R. at 225 (citing *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)).  "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (internal quotation marks and citation omitted).

11

The Second Amended Complaint does not change the causes of action for the avoidance of the two-year transfers which have already withstood defendants' motion to dismiss. The Second Amended Complaint adds a previously dismissed cause of action for recovery of subsequent transfers. The Second Amended Complaint cures the deficiency in First Amendment complaint by pleading the "'necessary vital statistics—the who, when, and how much'" of the purported transfers to establish an entity as a subsequent transferee of the funds." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 473 (Bankr. S.D.N.Y. 2015). The Second Amended Complaint pleads the Markin Transfers with particularity, including the dates of the transfers and the amounts of the Transfers. (Sec. Am. Compl. ¶ 14.)

### 1.    The Proposed Amendment is Not Time-Barred

Defendants argue that the proposed amendments will be futile because they are time-barred. Defendants are wrong because the proposed amendments are not against a new party and do not bring new claims. In fact, they are the same claims, as limited by section 546(e) and the addition of specific subsequent transfer claims against a defendant. To the extent the Court determines that new claims are raised, the amendments relate back to the original complaint.

Under Section 546(a) of the Bankruptcy Code, a proceeding to avoid a fraudulent transfer under section 548 must be brought within two years of the entry of the order for relief. In its motion, the Markin Estate argues that the limitations period ended here on December 11, 2010, two years after the Petition Date, and that the Trustee's amendments are time-barred because they bring a claim against a new party and assert a new claim based on new facts. (Def. Br. at 10-11.) This argument fails, however, because the Trustee is not adding any new party; rather, the Trustee is simply substituting the Estate Defendants for Markin. Nor is the Trustee adding any new claim. In the original complaint, Markin was named both as an initial transferee, a subsequent transferee, and a person for whose benefit the transfers were made and the proposed amendments do not

12

change these claims.  (Compl. ¶¶ 1, 2, 7.)  Likewise, the proposed amendment as to transfers to Markin merely particularizes the original subsequent transfer claims with specific dates and amounts, curing the deficiency in the First Amended Complaint.  (Sec. Am. Compl. ¶ 14.) As the time to pursue subsequent transfer claims has not even begun to run in this case, the amendment is timely.

But even if the proposed amendments were against a new party or brought a new claim, such amendments are permitted if they "relate back" to the date of the original pleading.  Fed. R. Civ. P. 15(c); *Randall's Island Family Golf Ctrs. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs.)*, Adv. Pro. No. 02-2278 (SMB), 2002 WL 31496229, at *2–5 (Bankr. S.D.N.Y. Nov. 8, 2002).  An amendment relates back to the original pleading when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Additionally, an amendment can change the party or the naming of the party against whom a claim is asserted if "(1) both claims arose out of the same transaction or occurrence, (2) the new party received adequate notice of the plaintiff's claims, within the time limits specified in Fed. R. Civ. P. 4(m), and will not be prejudiced, and (3) the new party knew or should have known that but for a mistake concerning its identity, the new party would have been named in the earlier, timely pleading."  *In re Randall's Island Family Golf Ctrs.*, at *2; Fed. R. Civ. P. 15(c)(1)(C).

Here, the amendments relate back to December 4, 2010, the date the Original Complaint was filed, because they "assert[] a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The original complaint sought to avoid and recover initial transfers made from BLMIS to CRUT #1 and Markin, as trustee of CRUT #1.  The Second Amended Complaint seeks to avoid and recover

13

the same transfers from the Estate Defendants, who are Markin's successors. The original complaint also sought to recover subsequent transfers to Markin; the proposed amendment now particularizes the dates and amounts of subsequent transfers in light of records the Trustee received from defendants after the First Amended Complaint was brought.[1] Thus, the Second Amended Complaint asserts the same claims arising from the same set of transfers as set forth in the original complaint.

In addition, to the extent the Estate Defendants are considered new parties, the Second Amended Complaint relates back under FRCP 15(c)(1)(C). The Estate Defendants received adequate notice of the claims against them because Markin was a named defendant in the First Amended Complaint. The Trustee has been in touch with the Estate Defendants' counsel about these claims, including through settlement discussions that only ceased earlier this year. Therefore, despite not being defendants, the Estate Defendants were "involved in [the proceedings] unofficially from an early stage." *Crossland Savings FSB v. Rockwood Ins. Co.*, 700 F. Supp. 1274, 1278 (S.D.N.Y. 1988). The Estate Defendants therefore had sufficient notice of the proceedings and cannot be surprised by the Trustee's efforts to recover from them the transfers Markin received from BLMIS.

      2.    <u>Amending the Complaint to Include Markin in His Personal Capacity as the Initial Transferee Will Not Render the Amendment Futile</u>

First, to clear up any confusion, Markin was already named as an initial transferee by virtue of his position as the trustee of CRUT #1. A trustee of a trust, as the legal owner of the assets, is an initial transferee subject to avoidance liability. *See Chemical Bank v. Shearson Lehman Bros., Inc.,* No. 91 Civ. 4915 (LMM), 1992 WL 183760, at *1 (S.D.N.Y. July 21, 1992); *Paloian v.*

---

[1] Ms. Neville represents that she sent these documents to two attorneys at Baker & Hostetler in February and June 2010. This transmission (of which Ms. Neville attaches no copy nor does the Trustee have any record) could not have been in reference to this adversary proceeding, because it would have predated even the original complaint.

14

*LaSalle Bank, N.A.*, 619 F.3d 688 (7th Cir. 2010), *In re Incomnet*, 463 F.3d 1064, 1073 (9th Cir.

2006).  That is the case, even though the trustee is obligated to distribute funds based on a formula.

*Paloian*, 619 F.3d at 692 (citing *In re Columbia Data Prods., Inc.*, 892 F.2d 26, 29 (4th Cir. 1989);

*In re Chase & Sanborn Corp.*, 904 F.2d 588, 599-600 (11th Cir. 1990); *In re Incomnet, Inc.*, 463

F.3d at 1071-76)) (emphasis added).   Here, Markin, as the trustee, was the legal owner of the Trust

assets.   *See* Restatement (Third) of Trusts § 42 (2003); (CRUT  #1 Agreement, Article 2, Section

2, Ex. B to the Declaration of Carole Neville, ECF No. 53-2 (stating that the Trustee accepts title

to the Trust property)).   Markin, as trustee, had unfettered control over those assets, with the only

restriction being his duty to act in the best interest of the beneficiaries and to ensure that the

allocation and distribution of CRUT #1's assets comply with the formulas set forth in section 664

of the Internal Revenue Code so that the CRUT maintained its favorable tax status.  (*Id.* Article

10.)  Markin, as the trustee, also had the power to commence and defend litigation.  (*Id.* Article

10, section 4(l).)  Therefore, in his role as the trustee, it cannot be disputed that Markin was the

initial transferee.

> a)      *Markin, Personally, Was the Initial Transferee Because He*
> *Exercised Dominion and control Over CRUT #1*

In the Second Amended Complaint, the Trustee also seeks to have Markin personally

accountable for the Two-Year Transfers as the initial transferee because he exercised dominion

and control over CRUT #1's assets.

The Bankruptcy Code does not define initial transferee, and legislative history is silent on

this issue.  *Brown Publ'g Co. Liquidating Trust v. AXA Equitable Life Ins. Co.,* 519 B.R. 13, 25

(E.D.N.Y. 2014).  In *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th

Cir. 1988), the Seventh Circuit established the "dominion and control test" to determine whether

someone is an initial transferee.  The Second Circuit embraced this test in *Christy v. Alexander &*

15

*Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underburg, Manley,*

*Myerson & Casey)*, 130 F.3d 52, 55 (2d Cir. 1997), *cert denied* 524 U.S. 912 (1998).  Following

*Finley*, New York courts adopted the "'dominion and control test' as an essential part of the

'initial transferee' inquiry." *Brown Publ'g*, 519 B.R. at 25; s*ee also Bear Stearns Sec. Corp. v.*

*Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 14 (S.D.N.Y. 2007); *see also CNB*

*Int'l v. Lloyds TSB Bank plc (In re CNB Int'l, Inc*.), 440 B.R. 31, 38 (W.D.N.Y. 2010).  Whether

someone exercises "dominion and control" over transferred assets is a fact-intensive inquiry.  In

*Manhattan Investment Fund*, the District Court made clear that "dominion and control" does not

mean "unfettered control" over the assets transferred nor the ability to personally profit from

them; rather, a significant level of decision making authority over the transfers, and the ability to

direct transfers is the key to transferee liability.  397 B.R. at 18-21.

　　　　To determine a person's or entity's status as the initial transferee, courts often view the

entire transaction as a whole to decide who truly had control of the money.  *See e.g., Nordberg v.*

*Société Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988).

Bankruptcy courts considering the question of whether a defendant is an initial transferee look at

"dominion and control" over the assets from an equitable perspective, as they must under

bankruptcy law.  *See Pepper v. Litton*, 308 U.S. 295, 304, (1939) ("[C]ourts of bankruptcy are

essentially courts of equity, and their proceedings inherently proceedings in equity.") (internal

quotations omitted).  For example, the "mere conduit" analysis set forth by the Second Circuit in

*Finley*, was borne out of courts' refusal to employ a literal interpretation of section 548 that

would have the inequitable result of holding "the first entity to touch the funds" liable.  *Finley*,

130 F.3d at 56.

16

Here, there is no question that Markin was the person who truly had control of the money.  Markin maintained all control over CRUT #1's assets and the transfers from BLMIS. Markin deposited $4 million of his own money into BLMIS on behalf of CRUT #1.  Markin then decided to prematurely terminate CRUT #1.   Such termination was made for his own benefit (i.e., to accelerate his income interest as a lump sum and to ensure he gets favorable tax treatment).   While there were some charitable beneficiaries of CRUT #1, Markin, personally, as the Settlor, maintained the ability to change them, and in fact did change them several times. (*See* Aug. 17 2004 Letter at 4, Ex. B. to Markel Decl.)  Markin wore multiple hats: maker/settlor, trustee, and beneficiary and maintained control over all aspects of CRUT #1 and amounts and dispositions of its assets, including to himself and with respect to the avoidable transfers.

> b)     *Markin Was Also the Person for Whose Benefit the Transfers Were Made*

Putting aside that Markin was an initial transferee, whether in his role as the trustee or by virtue of his dominion and control, Markin is also strictly liable for the transfers as a person for whose benefit the transfers were made.  *Finley,* 130 F.3d at 57 ("Section 550(a)(1) groups initial transferees with 'entities for whose benefit such transfer was made' and subjects both groups to strict liability."); *see also* Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) (fictitious profits cases "are strict liability cases unless the law changes").   In determining whether a defendant is an entity for whose benefit a transfer was made, courts recognize that:

> If the first transfer would not have been made but in contemplation of another previously agreed and nearly contemporaneous transfer, treating each stage as merely steps in a single transfer accords with and gives meaning to Congress' use of the phrase 'entity for whose benefit such transfer was made' in § 550(a)(1). In such an instance, the first step is merely preliminary to the second and the first recipient is merely a conduit for the transfer of property. The second recipient is not a truly subsequent transferee.

17

*Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768, 778 (Bankr. S.D.N.Y. 1989*), aff'd on other grounds*, 108 B.R. 432 (S.D.N.Y. 1989) (citing *In re Universal Clearing House Co.*, 62 B.R. 118, 128 n. 10 (D. Utah 1986)).  While a "guarantor" is the quintessential entity "for whose benefit" a transfer is made because the transfer relieves him of his obligation, there are other examples, and Bankruptcy Code section 550(a)(1) is not so restricted in its definition or its application.  *See In re B.S. Livingston & Co.*, 186 B.R. 841 (D.N.J. 1995) (principals of a debtor that benefitted from a sale of the business for less than adequate consideration were entities for whose benefit the transfer was made); *see also Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 466 (Bankr. S.D.N.Y. 2011) (granting leave to amend the complaint to supplement allegations regarding the defendant's status as the entity for whose benefit the transfer was made); *In re Enron Creditors Recovery Corp.*, 407 B.R. 17, 33 (Bankr. S.D.N.Y.), *rev'd on other grounds*, 422 B.R. 423 (S.D.N.Y. 2009).

"The key to pegging the entity for whose benefit the initial transfer was made has two sides: 1) the entity must be the intended beneficiary and 2) the intended benefit must originate from the initial transfer." *Dreier*, 452 B.R. at 466 (quoting *Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr. S.D.N.Y. 1999)). The benefit to the defendant also must be quantifiable and direct. *Dreier*, 452 B.R. at 466.

Here, Markin was the intended beneficiary of the initial transfers.  The purpose of the transfers was that Markin receive a lump sum distribution of his income interest in CRUT #1. He terminated CRUT #1 early, he wrote to the IRS to ensure he would receive favorable tax treatment from an early termination, and he requested the withdrawal from CRUT #1's BLMIS Account.  It is also undisputed that the benefit originated from the initial transfer, because Markin received a contemporaneous distribution of his lump sum interest.

18

This precise situation has arisen and been ruled upon before.  In *Hessco Komsala v. Imhof (In re Hessco)*, 295 B.R. 372 (B.A.P. 9th Cir. 2003), the bankruptcy trustee sued a charitable remainder unitrust and its two income beneficiaries (the "Imhofs"), who happened to also be the settlors and trustees of the trust, to avoid and recover preferential and fraudulent transfers. 295 B.R. at 372.  The Imhofs argued, much like the Markin Estate does here, that because they were the income beneficiaries and not the residual beneficiaries of the trust, and because the trust was irrevocable, "the only way they could benefit is by way of a subsequent transfer from the Trust." *Id.* at 377.  The Court rejected their argument and affirmed the bankruptcy court's determination that the transfers to the trust were made for the Imhofs' benefit:

> Here, the Trust is a charitable remainder unitrust (CRUT):
>
> a legal device pursuant to which a taxpayer can transfer assets to a trust, ... take an immediate charitable tax deduction on his personal income taxes, insure himself a guaranteed stream of income generated by the trust assets (on which he must pay income taxes), defer the taxes on the transactions by and accumulations in the trust, control the manner in which trust assets are invested, and control who gets the remainder interest in the trust assets when the taxpayer and named future income beneficiaries die. The only hitch is that at some point down the line, when the settlor and all individuals whom he has named to follow him as income beneficiaries leave this earth, what's left in the trust must go to a qualified charitable organization. To make sure that this happens, in order to qualify for favorable tax treatment, a CRUT must be irrevocable and is subject to rigid rules of operation. It goes without saying that a CRUT is a tax planning tool for the rich.
>
> *Linquist v. Mack (In re Mack)*, 269 B.R. 392, 394 (Bankr. D. Minn. 2001).
>
> Imhofs are the trustors and trustees of the Trust. They are also the income beneficiaries; the residual beneficiary is a foundation. As indicated above, the trust instrument requires them as trustees to pay all Trust income plus 9% of the net fair market value of its assets to themselves as income beneficiaries annually.

19

> *Although Imhofs are not the sole beneficiaries*, the bankruptcy court
> did not err in finding the deposits to the Trust's account were made
> for their benefit.

*Id.* at 378 (emphasis added).

The *Paloian* Court came to the same conclusion.  In finding that the trustee of a trust is an initial transferee, the Court also found that the trust's beneficiaries are the entities for whose benefit the transfer was made.  *Paloian*, 619 F.3d at 692.  The Court reasoned that it is better to sue the trustee of a trust, as the initial transferee, in one suit, rather than chase every trust beneficiary to get the same result.  *Id.*  Here, there is no such distinction, as the trustee and the beneficiary are one and the same.  Thus, whether or not Markin, personally, was the initial transferee, Markin was certainly the person for whose benefit the transfer was made.  Strict liability attaches either way.

### 3.    To the Extent Markin is a Subsequent Transferee, Markin Does Not Have a Defense to the Subsequent Transferee Count Against Him Because He Did Not Not Give Value for the Markin Transfers

Beyond liability as an initial transferee, Markin is also a subsequent transferee to the extent of his receipt of the Markin Transfers.  The Markin Estate does not dispute Markin's receipt of the Markin Transfers, but argues that section 550(b) shields the Estate Defendants from the Trustee's recovery.  In support of its argument, the Markin Estate contends that "value" within the meaning of section 550(b)(1) is consideration sufficient to support a simple contract between the transferee and its transferor.  (Defs.' Br. at 8.)  The Markin Estate claims that Markin gave up an income interest in CRUT #1 in exchange for a lump sum payment of approximately $10,000,000.  These arguments fail.

As an initial matter, trusts are not contracts.  "The creation of a trust is conceived of as a conveyance of the beneficial interest in the trust property rather than as a contract."  Restatement (Second) of Trusts § 197 cmt. b; *see also In re Lloyd's Am. Tst. Fund Litig.*, 954 F. Supp. 656,

20

681 (S.D.N.Y. 1997).  Thus, for example, a beneficiary could not sue a trustee for breach of

contract; at best, the suit would be for breach of fiduciary duty.  *Lloyd's*, 954 F. Supp. at 681.

Here, not only is CRUT #1 not a contract, but even if it were considered as such, Markin is on

both sides of it.  To say that Markin gave value in exchange for the transfers he received would

be the equivalent of taking $10,000,000 from Markin's right hand and putting it into his left.

Fraudulent conveyance case law supports this logic by examining "value" in the context

of whether the transaction was at arms' length.  *See, e.g.*, *BR Festivals, LLC v. Uptown Theatre,*

*LLC (In re BR Festivals, LLC)*, No. 14-10175 (AJ), 2014 WL 6846429, at *3 (N.D. Cal. Dec. 1,

2014) (finding the transferee did not meet the section 550(b) value defense because he was an

insider of both the buyer and the seller and therefore the transaction was not at arms' length).

The Court in *Bonded Financial* explained that "[s]ection 550(b)(1) implements a system well

known in commercial law, in which a transferee of commercial paper or chattels acquires an

interest to the extent he purchased the items without knowledge of a defect in the chain. These

recipients receive protection because monitoring of earlier stages is impractical, and exposing

them to risk on account of earlier delicts would make commerce harder to conduct."  *Bonded*

*Fin. Servs.*, 838 F.2d at 897.  Markin was party to all of the relevant parts of the transactions in

question: the deposit into BLMIS, the withdrawal from BLMIS, and the disbursement of CRUT

#1's assets.  Markin was thus not a bona fide purchaser for value, as the Estate appears to claim,

and is not the sort of transferee section 550(b) was intended to protect.

Finally, even if one were to look to Florida state law, which governs CRUT #1, it is clear

that the transfers to Markin are not protected from the Trustee's avoidance powers.  Under

Florida law, if a settlor transfers assets to an irrevocable charitable trust of which he is a

beneficiary, he cannot shield his interest from creditors. *See generally Menotte v. Brown (In re Brown)*, 303 F.3d 1261 (11th Cir. 2002):

> In Florida, trusts containing valid spendthrift provisions are protected from the reach of creditors, so long as the beneficiaries cannot exercise dominion over the trust assets. *See generally Waterbury v. Munn*, 159 Fla. 754, 32 So. 2d 603, 605 (Fla. 1947) (en banc) (recognizing the validity of spendthrift trusts); *Croom v. Ocala Plumbing & Elec. Co.*, 62 Fla. 460, 57 So. 243, 244-45 (Fla. 1911) (holding creditors could reach trust property, despite presence of spendthrift clause, where the beneficiaries possessed absolute control over the property). *Where a trust is self-funded by a beneficiary, however, there is an issue as to whether the trust's spendthrift provision is valid as against creditors of the settlor-beneficiary. We conclude it is not, and the beneficiary's interest is subject to alienation by her creditors.*

*Id.* at 1265-66 (emphasis added). Any money distributed to the settlor or for his benefit is subject to creditors' reach, whether or not the trust has a spendthrift clause. *See id.*; *see also* Fla. Stat. § 736.0505 ("With respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit.").

Much like in the initial transferee context, courts reviewing trusts with spendthrift provisions analyze dominion and control over the trust's assets in determining whether creditors can reach them. In *Brown*, the Court found that dominion and control on the one hand, and the fact that the settlor and beneficiary are the same, on the other hand, are two distinct reasons to invalidate a spendthrift provision. *Brown*, 303 F.3d at 1267 n.9. This analysis demonstrates that when there is one party that had control of all of the assets and all of the transfers, the law does away with the trust's formalities. That is the case here. Markin cannot shield the transfers he received from CRUT #1 from the Trustee's recovery, simply by virtue of his creation of the trust.

Based on all of the foregoing reasons, the Second Amended Complaint is not futile.

22

## III.    THE COURT SHOULD GRANT THE TRUSTEE'S CROSS-MOTION TO SUBSTITUTE DEFENDANTS

In the event that the substitution of the Estate Defendants for the Markin is not subsumed by the amendment, the Trustee moves to substitute parties under FRCP 25.

FRCP 25 provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). FRCP 25 is a procedural device employed following the death of one of the original parties to a lawsuit in order to prevent delay and allow a litigation to continue. *See Allen ex rel. Allen v. Devine*, No. 09-CV-668, No. 10-CV-1319 (ADS), 2011 WL 5117619, at *2 (E.D.N.Y. Oct. 25, 2011). "[T]hree conditions must be satisfied before a party can be substituted. First, the claim must survive the [party's] death; second the individual seeking to be substituted must be a proper party; and third, the motion for substitution must be made within 90 days after service of a statement noting the death." *Jimenez-Rodoli v. Dist. 15 Machinist's Union*, No. 10 Civ. 8378 (RJS) (KNF), 2011 WL 4494555, at *1 (S.D.N.Y. Sept. 27, 2011) (internal citations omitted). All three conditions have been satisfied here.

### A.    The Trustee's Motion Is Timely

A statement of death was not filed in this case; therefore, the 90-day period for substitution has not yet been triggered. *See Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998) (noting that the period for filing substitution upon the death of a party is not triggered until formal written statement of fact of death has been filed); *Gothberg v. Town of Plainville*, 305 F.R.D. 28, 30 (D. Conn. 2015) ("The running of the 90 days commences with the proper suggestion of death . . . upon the record.") (internal citations omitted); *Devine*, 2011 WL 5117619, at *2; *United States*

*v. Walker*, No. 1:11-CV-914 (NAM) (DJS), 2016 WL 7409688, at *2 (N.D.N.Y. Sept. 26, 2016)

(motion to substitute was timely where no suggestion of death was ever filed).    This motion,

therefore, is timely.

Moreover, the Markin Estate also could have sought substitution in this case, but did not

do so despite counsel advising the Court.  Tr. at 24:21-22 (Ms. Neville: "I'll find a way to make

myself a defendant.")

## B.    Mitchell D. Schepps is the Proper Party to Substitute for Deceased Defendant David R. Markin

A representative of the deceased party's estate is a proper party for substitution.  *E.g.*, *Roe

v. City of New York.*, No. 00 Civ. 9062 (RWS), 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19,

2003) (citing *Gayle v. New York State Div. of Parole*, No. 95 Civ. 10552 (SS), 1997 WL 53156,

at *1 (S.D.N.Y. Feb.10, 1998)).   "A representative is a person who has received letters to

administer the estate of the decedent, usually the appointed administrator or executor of the

decedent's estate." *Perlow v. Comm'r of Soc. Sec.*, No. 10-CV-1661 (SLT), 2010 WL 4699871, at

*2 (E.D.N.Y. Nov. 10, 2010) (citing *Garcia v. City of New York*, No. CV 08–2152 (RRM), 2009

WL 261365, at *1 (E.D.N.Y. Feb. 4, 2009)).   As the personal representative of the estate, Mr.

Schepps is the proper party to substitute for the decedent.

## C.    The Trustee's Claims Have Survived Mr. Markin's Death

To determine whether a claim survives after the death of a party, courts look to the nature

of the cause of action." *Jimenez-Rodoli*, 2011 WL 4494555, at *1.   "The question of whether a

claim is extinguished or survives the death of a party is based upon the substantive law." *Devine*,

2011 WL 5117619, at *2.

When a cause of action is federally created, "courts are generally guided by principles of

federal common law, which prescribe that claims characterized as penal abate upon a party's death,

24

while claims characterized as remedial survive." *Jimenez-Rodoli*, 2011 WL 4494555, at *1 (internal citations omitted); *see also Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009). An action is remedial when it compensates an individual for a specific harm he or she suffered, while a penal action imposes damages for a wrong defendant committed against the public. *SEC v. Wyly*, 860 F. Supp. 2d 275, 277 n.7, 283 (S.D.N.Y. 2012) (holding that the executor can be substituted for deceased party and SEC's disgorgement claim survives as it is "remedial" because it "seeks to prevent a party from being unjustly enriched") (citing *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993)).

The Trustee's causes of action against defendants are for the avoidance and recovery of fraudulent transfers under 11 U.S.C. §§548(a)(1)(A), 550, and 551. The Trustee's federally created causes of action are all "remedial" in nature and therefore, survive Markin's death. *See e.g.*, *In re Best Products Co., Inc.*, 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994) ("Fraudulent transfer laws are intended to promote payment to creditors; that is, the statutes are remedial, rather than punitive."); *In re C.R. Stone Concrete Contractors, Inc.*, 462 B.R. 6, 27 (Bankr. D. Mass. 2011) (for purposes of substitution under FRCP 25, fraudulent transfer claims were not extinguished upon defendant's death). Accordingly, the Court should substitute the Estate Defendants for Markin.

## IV.    THE COURT SHOULD DENY DEFENDANTS' REQUEST TO DISMISS THE SECTION 502(d) CLAIM AND TO COMPEL PAYMENT

The First Amended Complaint contains a claim under section 502(d) of the Bankruptcy Code seeking to disallow the customer claim Markin filed concerning a related BLMIS account he held in his own name. The Markin Estate seeks to dismiss this claim on the ground that Markin is no longer a defendant in the action and that the proposed amended claims against Markin fail because defendants have a value defense. (Defs.' Br. at 2-3.) The defendants'

25

attempt to end-run the Trustee's litigation to obtain a premature distribution on their claim is barred by section 502(d), which provides that a Court shall disallow any claim of any transferee of a transfer avoidable under section 548 or recoverable under section 550.  11 U.S.C. 502(d); *In re Vivaro Corp.*, 541 B.R. 144, 146 (Bankr. S.D.N.Y. 2015) ("Section 502(d) of the Bankruptcy Code prevents an entity in possession of property of a bankruptcy estate, or that received an avoidable transfer from a debtor, from receiving any further distribution from the estate on a claim filed in such a bankruptcy case, unless the entity first turns over the property or repays the avoidable transfer.").   Whether Markin is an initial transferee, a for-the-benefit-of transferee, and/or a subsequent transferee, his claim should be disallowed under section 502(d).  The Markin Estate may renew its request when the Trustee's claims under sections 548 and 550 are resolved.

## V.    **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Markin Estate's motion, and  grant the Trustee cross-motion to substitute and for leave to file the proposed Second Amended Complaint.

Date: October 18, 2017
New York, New York

Respectfully submitted,

By: */s/Keith R. Murphy*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Robertson D. Beckerlegge
Email: rbeckerlegge@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com
Ferve Khan
Email: fkhan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and for the Estate of Bernard L. Madoff*