# EXHIBIT B

Tracy Green Landauer
(212) 801-6863
landauert@gtlaw.com

August 17, 2004

**FEDERAL EXPRESS**

Internal Revenue Service
Attn: CC:PA:LPD:DRU, Room 5336
1111 Constitution Ave., N.W.
Washington, DC 20224

Re:   David R. Markin ("Taxpayer")

Dear Sir or Madam:

The undersigned, pursuant to the procedure set forth in Revenue Procedure 2004-1, 2004-1 I.R.B. 1, respectfully requests, on behalf of the Taxpayer and Allan R. Tessler, as independent trustee, rulings relating to the early termination of two charitable remainder unitrusts (defined as "Unitrust #1" and "Unitrust #2", or the "Trusts" below), namely that (1) early termination of the Trusts will not constitute an act of self-dealing under Section 4941(a)(1) of the Code by the Taxpayer individually with respect to Unitrust #1, Unitrust #2 or the Charitable Beneficiary; or by the Taxpayer as Trustee of Unitrust #1 or Unitrust #2 with regard to the Trusts or the Charitable Beneficiary, (2) early termination of the Trusts will not constitute an act of self-dealing under Section 4941(a)(1) of the Code by the Independent Trustee with respect to Unitrust #1 or Unitrust #2, (3) the proposed termination of the Trusts will not be subject to termination tax under Section 507 of the Code, and (4) the proceeds the Taxpayer receives upon termination of the Trusts will be treated as an amount realized from the sale or exchange of a capital asset under Section 1222. The authority of the undersigned to act as the representative of Taxpayer and Allan R. Tessler is evidenced by the Powers of Attorney, IRS Form 2848, attached as **Exhibit A** hereto. In addition, enclosed please find the following: (i) a check in the amount of $6,000, made payable to the Internal Revenue Service (the "**Service**"), representing the appropriate user fee; and (ii) the deletions statement and checklist required by Revenue Procedure 2004-1.

## STATEMENT OF FACTS

\\ny-srv01\941538v08\45775.010000

DM0000162

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 2

Taxpayer Information.

    The Taxpayer is David R. Markin. His address is 70 Blossom Way, Palm Beach, Florida 33480-5002. The Social Security Number of Taxpayer is 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. Taxpayer is a United States Citizen and a resident and domiciliary of the State of Florida.

    At the present time, the Taxpayer's returns for the taxable years that would have been affected by the income tax deduction claimed by Taxpayer in connection with the creation of the Trusts are not under examination by the Service and are not being considered by an appeals office or by a Federal Court.

Specific Facts Relating to Ruling Request

    On December 16, 1996, the Taxpayer established a charitable remainder unitrust known as the DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #1, of which Taxpayer serves as Trustee ("**Unitrust #1**"), and a charitable remainder unitrust known as the DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #2, of which Taxpayer serves as Trustee ("**Unitrust #2**"). Allan R. Tessler (the "**Independent Trustee**") serves as Independent Special Trustee of Unitrust #1, and as Independent Special Trustee of Unitrust #2. A copy of Unitrust #1 and all amendments thereto is attached as **Exhibit B** hereto. A copy of Unitrust #2 and all amendments thereto is attached as **Exhibit C** hereto.

    The trust agreements creating Unitrust #1 and Unitrust #2 state that each agreement is intended to create a charitable remainder unitrust within the meaning of Section 5 of Rev. Proc. 90-13, Sections 664(d)(2) and (3) of the Code, and applicable Treasury Regulations (the "**Regulations**") governing charitable remainder unitrusts. Taxpayer now wishes to terminate both Unitrust #1 and Unitrust #2 (the "**Trusts**") by selling his income interest in each trust to the charitable remainderman of each unitrust for an amount equal to the present value of Taxpayer's life income interests in said trust. The actuarial values of the respective interests will be calculated using the discount rate in effect under Section 7520 of the Code, and the methodology for valuing interests in charitable remainder trusts contained in Section 1.664-4 of the Regulations.

    Taxpayer was born February 16, 1931, and is aware of no physical condition that would decrease his normal life expectancy. He was recently examined by his personal physician who has also confirmed that there is no indication that Taxpayer's life expectancy is less than would otherwise be expected for a man of Taxpayer's age. See Affidavits of Dr. Bassem El Masri and Taxpayer, attached as **Exhibit D** hereto. According to IRS actuarial tables Taxpayer has a life expectancy of fourteen years.

    Florida law permits said early termination of both Trusts, provided there is agreement among the trustees and beneficiaries thereof to do so. A copy of the proposed Agreement as to Early Termination of Unitrust #1 ("**Agreement #1**") is attached as **Exhibit E** hereto. A copy of the proposed Agreement as to Early Termination of Unitrust #2 ("**Agreement #2**") is attached as

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 3

Exhibit F hereto. There is no requirement that the Florida Attorney General or any court be involved in a trust termination to which all beneficiaries consent.

**Terms of Unitrust #1**

In accordance with Article Four, Section 1, of Unitrust #1, Taxpayer is entitled to quarterly payments of the "Unitrust Amount." The annual Unitrust Amount is defined in Article Three, Section 1 as follows:

The annual "Unitrust Amount" shall be an amount equal to the smaller of:

(a)   The trust income for any taxable year as defined in Section 643(b) of the Code, and

(b)   A "fixed percentage" of ten percent of the net fair market value of the trust assets valued as of the first business day of the first calendar month in each taxable year of the trust hereinafter called the "Valuation Date."

The Unitrust Amount for any year shall also include any amount of trust income for such year that is in excess of the amount required to be distributed under (b) (above) to the extent that the aggregate of the amounts paid in prior years was less than the aggregate of the amounts computed as the fixed percentage of the net fair market value of the trust assets on the valuation dates.

On December 19, 1996, Taxpayer transferred 162.5 shares of Great Dane Holdings, Inc., valued at $21,020,547 by Houlihan Lokey Howard & Zukin, to Unitrust #1. The aggregate amount payable to Taxpayer as an accrued liability for years in which Unitrust #1 did not pay him the full fixed percentage is $6,893,788, as of December 31, 2003, which will be satisfied prior to calculation of the actuarial amounts payable to Taxpayer and the Foundation upon termination of Unitrust #1.

Under the provisions of Article Four, Section 2, of Unitrust #1, Taxpayer reserved the testamentary power to revoke the income interest of any trust beneficiary, exercisable by will. Although Taxpayer originally granted Susan Markin, the Taxpayer's former spouse, a right to the Unitrust Amount for her lifetime, commencing upon Taxpayer's death, Taxpayer executed a will that revoked said income interest on September 21, 2001. Under Section 731.303 of the Florida Probate Code, Taxpayer has the power, as holder of the right to revoke the interest of a beneficiary, to bind his former spouse to the terms of the Agreement as to Early Termination of Unitrust #1. As a result, Taxpayer is now the sole non-charitable beneficiary of Unitrust #1.

Article Five, Section 1 of Unitrust #1 provides that the trust shall terminate upon the death of the survivor of the trust beneficiaries—now only Taxpayer—and all principal, plus income not due to the estate of Taxpayer, shall be paid to the charitable remaindermen. Under the provisions of Article Five, Section 2 of Unitrust #1, Taxpayer reserved the right to amend or

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 4

revoke all or any portion of the interest of any one or more charitable remaindermen and to appoint a remainder interest in said trust to one or more additional or substitute qualified charitable remaindermen in such amounts and in such proportions as Taxpayer deems appropriate. Under the provisions of Article Five, Section 6 of Unitrust #1, Taxpayer reserved the right to accelerate distribution of a portion of the trust assets to one or more charitable remaindermen selected by Taxpayer.

Taxpayer has amended Unitrust #1 as follows:

(a) Amendment of Charitable Beneficiary Designation dated March 14, 1997;

(b) Second Amendment of Charitable Beneficiary Designation dated October 29, 1997;

(c) Instrument Comprising (1) Third Amendment of Charitable Beneficiary Designation and (2) Direction to Trustee as to Partial Acceleration of Charitable Remainder dated September 10, 1999;

(d) Instrument Comprising (1) Fourth Amendment of Charitable Beneficiary Designation and (2) Direction to Trustee as to Acceleration of Entire Charitable Remainder dated April 12, 2000; and

(e) Instrument Comprising Fifth Amendment and irrevocable designation of Charitable Beneficiary Designation, dated July 20, 2004.

As a result of the above amendments, the charitable remainderman of Unitrust #1 is the David R. Markin Foundation, Inc., (the "**Charitable Beneficiary**"), a Florida not-for-profit corporation, recognized as an exempt organization under Section 501(c)(3) of the Code. The determination letter confirming the Charitable Beneficiary's exempt status as a private foundation is attached as **Exhibit G** hereto.

**Terms of Unitrust #2**

In accordance with Article Four, Section 1, of Unitrust #2, Taxpayer is entitled to quarterly payments of the "Unitrust Amount." The annual Unitrust Amount is defined in Article Three, Section 1 as follows:

The annual "Unitrust Amount" shall be an amount equal to seven percent of the net fair market value of the trust property valued as of the first day of the first calendar month in each taxable year of the trust, hereinafter called the "Valuation Date".

On December 19, 1996, Taxpayer transferred 162.5 shares of Great Dane Holdings, Inc., valued at $21,020,547 by Houlihan, Lokey, Howard & Zukin, to Unitrust #2.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 5

Under the provisions of Article Four, Section 2, of Unitrust #2, Taxpayer reserved the testamentary power to revoke the income interest of any trust beneficiary, exercisable by will. Although Taxpayer originally granted Susan Markin, the Taxpayer's former spouse, a right to the Unitrust Amount for her lifetime, commencing upon Taxpayer's death, Taxpayer executed a First Codicil to Last Will of David Markin that revoked said income interest on October 1, 2001. Under Section 731.303 of the Florida Probate Code, Taxpayer has the power, as holder of the right to revoke her interest, to bind his former spouse to the terms of the Agreement as to Early Termination of Unitrust #2. As a result, Taxpayer is the sole non-charitable beneficiary of Unitrust #2.

Article Five, Section 1 of Unitrust #2 provides that the trust shall terminate upon the death of the survivor of the trust beneficiaries—now only Taxpayer—and all principal, plus income not due to the estate of Taxpayer, shall be paid to the charitable remaindermen. Under the provisions of Article Five, Section 2 of Unitrust #2, Taxpayer reserved the right to amend or revoke all or any portion of the interest of any one or more charitable remaindermen and to appoint a remainder interest in said trust to one or more additional or substitute qualified charitable remaindermen in such amounts and in such proportions as Taxpayer deems appropriate. Under the provisions of Article Five, Section 6 of Unitrust #2, Taxpayer reserved the right to accelerate distribution of a portion of the trust assets to one or more charitable remaindermen selected by Taxpayer.

Taxpayer has amended Unitrust #2 as follows:

(a) Amendment of Charitable Beneficiary Designation dated March 14, 1997;

(b) Second Amendment of Charitable Beneficiary Designation dated December 10, 1997;

(c) Third Amendment of Charitable Beneficiary Designation dated April 12, 2000; and

(d) Instrument Comprising Fourth Amendment and irrevocable designation of Charitable Beneficiary Designation, dated July 20, 2004.

As a result of the above amendments, the charitable remainderman of Unitrust #2 is the Charitable Beneficiary. The determination letter confirming the Charitable Beneficiary's exempt status as a private foundation is attached as **Exhibit G** hereto.

Neither of the Trusts were created with any thought of dividing the unitrust and remainder interests in order to avoid the partial interest rules of Section 170(f) of the Code. More than seven years have passed since the creation of the Trusts.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 6

## REQUEST FOR EARLY TERMINATION OF
## CHARITABLE REMAINDER UNITRUSTS

The Taxpayer requests the following rulings: (1) early termination of the Trusts will not constitute an act of self-dealing under Section 4941(a)(1) of the Code by the Taxpayer individually with respect to Unitrust #1, Unitrust #2 or the Charitable Beneficiary; or by the Taxpayer as Trustee of Unitrust #1 or Unitrust #2 with regard to the unitrusts or the Charitable Beneficiary, (2) early termination of the Trusts will not constitute an act of self-dealing under Section 4941(a)(1) of the Code by the Independent Trustee with respect to Unitrust #1 or Unitrust #2, (3) the proposed termination of the Trust will not be subject to termination tax under Section 507 of the Code, and (4) the proceeds the Taxpayer receives upon termination of the Trusts will be treated as an amount realized from the sale or exchange of a capital asset under Section 1222.

## STATEMENT OF LAW AND ANALYSIS

Section 664 of the Code exempts from income tax any charitable remainder unitrust, which is defined as a trust from which (i) a fixed percentage of the net fair market value of the trust's assets is paid to at least one person (other than an organization described in Code Section 170(c)) for a term of years, and (ii) a remainder interest is transferred to an organization described in section 170(c). The term "Section," as used herein, shall be deemed to mean "Section of the Code" unless otherwise stated.

A trust that is a charitable remainder unitrust under Section 664(d)(2) is a split-interest trust as described in Section 4947(a)(2).

Section 4947(a)(2) and Section 53.4947-1(c)(1) of the Regulations define a split-interest trust as a trust (i) which is not exempt from taxation under Section 501(a), (ii) in which not all of the unexpired interests are devoted to one or more of the purposes described in Section 170(c)(2)(B), and (iii) which has amounts in trust for which a deduction was allowed under Section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2016(a)(2), or 2522.

Section 4947(a)(2) provides generally that split-interest trusts are subject to the provisions of Sections 507 and 4941 in the same manner as if such trusts were private foundations.

Section 4941(a)(1) imposes an excise tax on a disqualified person for each act of self dealing between a disqualified person and a private foundation.

Section 4941(d)(1)(E) provides that the term "self-dealing" means any direct or indirect transfer to, or for the benefit of, a disqualified person of the income or assets of a private foundation.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 7

Section 4946(a)(1) defines the term "disqualified person" to include a substantial contributor to the foundation (including the creator of the trust) and a foundation manager (including a trustee of the trust), among others.

Section 4946(a)(2) states that "substantial contributor" is defined in Section 507(a)(2).

Section 507(a)(2) defines a substantial contributor as any person who contributes an aggregate amount of more than $5,000 to a private foundation, if such amount is more than 2% of the total contributions received by the foundation before the end of the taxable year.

Section 4947(a)(2)(A) provides that Section 4947(a)(2) shall not apply with respect to any amounts payable under the terms of such trust to non-charitable income beneficiaries, provided that distribution of money and property to a non-charitable beneficiary is made in accordance with his interest in the trust.

Section 4941(a)(2) imposes an excise tax on a foundation manager who knowingly participates in an act of self dealing between a disqualified person and a private foundation. This tax is only imposed if a tax is imposed on a disqualified person for an act of self dealing under Section 4941(a)(1).

Section 4946(b) defines the term "foundation manager" to include a trustee of a trust, among others.

Section 507(a) provides that, except as otherwise provided in Section 507(b), a private foundation may terminate its private foundation status only under the specific rules set forth in Section 507(a).

Section 507(c) provides for the imposition of a termination tax on certain private foundation terminations described in Section 507(a).

Section 53.4947-1(e) of the Regulations provides that Section 507(a) does not apply to payments to an income beneficiary of a trust that are considered "payable under the terms of such trust" and "directed by the terms of the governing instrument of the trust and not discretionary with the trustee."

The Preamble to Treasury Decision 8791 (12/9/1998) allows, though it does not require, that the make-up amount in a net income makeup charitable remainder unitrust be treated as a liability when valuing the assets of such a unitrust.

Section 664(b) provides that the amounts distributed by a charitable remainder trust to the beneficiary of the annuity or unitrust payment are characterized in the hands of the recipient first as ordinary income, second as capital gain, third as other income, and fourth as trust corpus. Both current and prior undistributed amounts from a tier must be exhausted before distributions are deemed to be made from the next tier.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 8

However, money and property received by a beneficiary upon the termination of a trust do not represent a distribution of an annual unitrust amount. Therefore, Section 664 is inapplicable to this amount. Rather, the beneficiary is disposing of his interest in the trust in exchange for money and property in a transaction that is governed by Section 1001.

Section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in Section 1011 for determining gain.

Section 1001(b) provides that the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of any property received.

Section 1001(c) provides that the entire amount of the gain or loss, determined under Section 1001, on the sale or exchange of property shall be recognized.

Section 1001(e)(1) provides that, in determining gain or loss from the sale or other disposition of a term interest in property, that portion of the adjusted basis of such interest which is determined pursuant to Section 1015 (to the extent that such adjusted basis is a portion of the entire adjusted basis of the property) shall be disregarded. Under Section 1001(e)(2), a "term interest in property" includes an income interest in a trust. Section 1001(e)(3) provides that the general rule of Section 1001(e)(1) does not apply to a sale or other disposition which is a part of a transaction in which the entire interest in property is transferred to any person or persons.

Section 1015(b) provides that if property is acquired by a transfer in trust (other than by a transfer in trust by a gift, bequest, or devise), the basis shall be the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on the transfer.

Section 1.1015-2(a)(2) of the Regulations provides that the principles stated in Section 1.1015-1(b) of the Regulations apply in determining the basis of property where more than one person acquires an interest in property by transfer in trust.

Section 1.1015-1(b) of the Regulations provides that property acquired by gift has a uniform basis, and that the proportionate parts of that basis represented by the interests of the life tenant and remainder interest holder are determined under rules provided in Section 1.1014-5 of the Regulations. Section 1001(e)(1), however, provides that in determining gain or loss from the sale or disposition of a term interest in property, that portion of the adjusted basis of the interest which is determined pursuant to Section 1015 (to the extent that the adjusted basis is a portion of the entire adjusted basis of the property) shall be disregarded. Under Section 1001(e)(2), a "term interest in property" includes an income interest in a trust. Section 1001(e)(3) provides that Section 1001(e)(1) does not apply to a sale or other disposition which is a part of a transaction in which the entire interest in property is transferred to any person or persons. See also Section 1.1001-1(f) of the Regulations.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 9

Section 1222(3) provides that the term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than one year.

Section 1221(a) defines the term "capital asset" as property held by the taxpayer with certain listed exceptions not applicable here.

Section 1223(2) provides that in determining the period for which a taxpayer has held property however acquired there shall be included the period for which the property was held by any other person, if the property has the same basis in the taxpayer's hands as it would have in the hands of that other person.

Revenue Ruling 72-243, 1972-1 CB 233, provides that the proceeds received by the life tenant of a trust, in consideration for the transfer of the life tenant's entire interest in the trust to the holder of the remainder interest, are treated as an amount realized from the sale or exchange of a capital asset under Section 1222. The right to income for life from a trust estate is a right in the estate itself. See McAllister v. Commissioner, 157 F. 2d 235 (2nd Cir.), cert. denied, 330 US 826 (1946).

## Analysis

*Early termination does not harm the Charitable Beneficiary.*

The rulings requested concerning early termination of the Trusts should be granted since the proposed allocation method will not reduce the amounts due to the Charitable Beneficiary. Because the Trustee will use the Regulations' formula for determining the present values of the income and remainder interests in the Trusts, the relative interests of Taxpayer and the Charitable Beneficiary remain unaltered as determined on an actuarial basis.

If the Taxpayer had a diminished life expectancy, then payout in accordance with normal actuarial assumptions based upon age would potentially divert funds from the Charitable Beneficiary to the income beneficiary by paying to the income beneficiary amounts that he could not reasonably have expected to live long enough to receive. However, that is happily not the case. Taxpayer has diligently ascertained that his state of health is at least normal for a man of his age. Thus as income beneficiary, Taxpayer can expect to receive no greater amount than he would have received in accordance with the original terms of the Trusts (absent early termination), since he has no knowledge of any circumstances that would shorten his life expectancy. Where the early termination is not expected to result in a greater allocation of the trust's assets to the income beneficiaries than was otherwise required by the terms of the unitrust, there is no detriment to the charitable beneficiary.[1]

---

[1] While it is recognized that Private Letter Rulings may not be relied upon as legal authority, it should be noted that, where it is not likely that an early termination will deprive a charitable beneficiary of its benefit, the Service has frequently granted the early termination of a charitable remainder unitrust without imposing a termination tax or self dealing excise tax on the termination. See e.g., Priv. Ltr. Rul. 200403051 (January 16, 2004); Priv. Ltr. Rul.

\\ny-srv01\941538v08\45775.010000

DM0000170

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 10

*Early termination will not result in self-dealing.*

Because the Trusts are charitable remainder unitrusts under Section 664(d)(2), they are split-interest trusts. Section 4947(a)(2) provides generally that split-interest trusts are subject to the self-dealing prohibitions of Section 4941 in the same manner as if the trusts were private foundations. In general, the transfer of assets of a split-interest trust to a disqualified person is considered an act of self dealing. The Taxpayer is a disqualified person with respect to the Trusts under Section 4946 because he is a substantial contributor of the Trusts. He is also a disqualified person because he is a trustee of the Trusts. However, since State law permits the early termination of the Trusts, allocation of assets will be made in accordance with the formula contained in the Regulations, the income beneficiary does not have a diminished life expectancy, and any distribution of assets in kind will be made in a pro rata manner, the proposed termination of Unitrust #1 and Unitrust #2 should not constitute a direct or indirect act of self-dealing within the meaning of Section 4941 of the Code, even though the Taxpayer is a disqualified person.

Section 53.4947-1(c)(2)(i) of the Regulations provides, in essence, that the self-dealing provisions under Section 4941 do not apply to any amounts payable under the terms of the trust to income beneficiaries. In this case, the Taxpayer is an income beneficiary, and the amount that he receives from the termination of his unitrust interest is derived solely from his income rights in the Trusts. Although the terms of the Trusts do not seem to provide for early termination of the Trusts, State law provisions allowing for early termination may be considered as implied terms of the Trusts, which would make the termination payments "payable under the terms of the trusts."

There is also no self dealing present because the early termination is not expected to result in a greater allocation of the Trusts' assets to the Taxpayer to the detriment of the Charitable Beneficiary. The Taxpayer's physician has conducted an examination of the Taxpayer and has stated under penalty of perjury that he found no medical conditions that would decrease the Taxpayer's normal life expectancy. Therefore, the Charitable Beneficiary is not deprived of any of its benefits as a result of the early termination.

The Independent Trustee should also not liable for any taxes on self dealing upon the termination of the Trusts. The Independent Trustee is not subject to tax under Section 4941(a)(1) because he is not entitled to any of the proceeds of the Trusts upon termination. Therefore, the Independent Trustee is not a disqualified person with respect to the Trusts. The Independent Trustee should also not be subject to tax under Section 4941(a)(2). A trustee is only liable for tax under Section 4941(a)(2) if the trustee knowingly participates in an act of self dealing between a disqualified person and a private foundation, and such act resulted in the imposition of tax under Section 4941(a)(1). Because there should be no act of self dealing between the

---

200324035 (June 13, 2003); Priv. Ltr. Rul. 200314021 (April 4, 2003); Priv. Ltr. Rul. 200310024 (March 7, 2003); Priv. Ltr. Rul. 200208039 (February 22, 2002).

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 11

Taxpayer and the Trusts, and, therefore, no tax imposed under Section 4941(a)(1), the Independent Trustee should not be subject to tax under Section 4941(a)(2).

*No termination tax should apply.*

Section 507(c) of the Code provides for the imposition of a termination tax on certain private foundation terminations described in Section 507(a). However, the Trusts' final lump sum distributions to the Taxpayer should not be considered a termination within the meaning of Section 507(a) since they should be considered "payable under the terms of such trust" and "directed by the terms of the governing instrument of the trust and not discretionary with the trustee." See Regulation Section 53.4947-1(e). As discussed above, the payment to the Taxpayer upon termination should be viewed as payable under the terms of the Trusts because the State law provisions allowing early termination of a trust are considered to be implied terms of the Trusts. Therefore, Section 507(a) will not apply, and without any termination under Section 507(a), there can be no termination tax under Section 507(c) applied to the Trusts.

*The proceeds received by taxpayer on termination should be deemed long term capital gain.*

Although the termination is in form a distribution of the present values of the respective interests of the Taxpayer and the Charitable Beneficiary, in substance it is a sale by the Taxpayer of his interests in the Trusts to the Charitable Beneficiary. Revenue Ruling 72-243 provides that the proceeds received by the Taxpayer from the Trusts, in consideration for the transfer of his interest in the Trusts to the Charitable Beneficiary, are treated as an amount realized from the sale or exchange of a capital asset. Pursuant to Section 1001(e)(1), the portion of the adjusted basis assigned to the Taxpayer's interests in the Trusts is disregarded. The exception contained in Section 1001(e)(3) is not applicable, because the entire interest in Trusts' assets is not being sold, or otherwise disposed of, to a third party. Accordingly, for purposes of this transaction, the Taxpayer has no basis in his interests in Trusts. Therefore, the amount of gain the Taxpayer must recognize under Section 1001(c) is the amount the Taxpayer realized from the disposition of his interests in the Trusts. Because the Taxpayer held his interests in the Trusts for more than one year, the gain realized from the disposition will be long term capital gain. Any distribution of assets in kind will be made in a pro rata manner.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 12

## CONCLUSION

Because an early termination of the Trusts will not deprive the Charitable Beneficiary of its interest in the Trusts, the Taxpayer should be allowed to terminate his interests in the Trusts. The early termination should not result in a termination tax under Section 507 or a self dealing tax under Section 4941 because the payments are being made to an income beneficiary of a trust that are considered payable under the terms of such trust. The Taxpayer will realize gain under Section 1001(c) in the amount received from the disposition of his interest in the Trusts. This gain will be taxed at the long-term capital gain rates.

## DECLARATIONS

1. To the best knowledge of the undersigned and except as otherwise noted: (i) the issue on which this ruling is requested is relevant to all returns filed by Taxpayer and the Charitable Beneficiary for any year from 1996 to the present but none of these returns are being or have been examined by the Service or considered by the Service in connection with a return from an earlier period, or are pending in litigation in a case involving Taxpayer or a related taxpayer[2]; except as noted above on issues that are not identical or similar to those involved herein (ii) the Service has not ruled on an identical or similar issue for Taxpayer, a related taxpayer or predecessor; (iii) neither Taxpayer, a related taxpayer, a predecessor nor any representative has previously submitted a request involving identical or similar issues to the Service and withdrawn the request prior to its issuance; (iv) neither Taxpayer, a related taxpayer nor a predecessor have previously submitted a request involving identical or similar issues that is currently pending with the Service; and (v) at the same time as this request, neither Taxpayer nor a related taxpayer are presently submitting another request involving identical or similar issues to the Service.

2. The law in connection with this request is certain, and the issue is adequately addressed by relevant authorities.

3. The numerous private letter rulings cited herein would support the issuance of the rulings requested by Taxpayer herein. There are no contrary authorities that address the issues presented in this request.

---

[2] Taxpayer has entered into a settlement with the Service as reflected in Agreement Form 870-AD signed by Taxpayer on March 9, 2004, in connection with certain assignment of income issues raised by the Service.

\\ny-srv01\941538v08\45775.010000

DM0000173

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 13

### REQUEST FOR CONFERENCE

A conference is hereby requested prior to the issuance of a ruling in the event a ruling is unfavorable to the Taxpayer being considered.

### REQUEST FOR OPPORTUNITY TO WITHDRAW

In the event a ruling unfavorable to Taxpayer will be issued, it is here by requested that prior notice be given to the undersigned in order to afford Taxpayer an opportunity to withdraw this request.

### REQUEST FOR FACSIMILE TRANSMISSION

Taxpayer requests that a copy of any document related to this ruling request be faxed to the Taxpayer's authorized representative, Tracy Green Landauer, at the following fax number: (212) 805-5563.

Please contact the undersigned by telephone at (212) 801-6863 if any further information is required or would be helpful.

Respectfully Submitted,

Tracy Green Landauer

TGL/mja

Cc: David R. Markin
    Allan R. Tessler
    Steve Mastbaum, Esq.

Internal Revenue Service
Associate Chief Counsel
August 17, 2004
Page 14

Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and, to the best of my knowledge and belief, the request contains all the relevant facts relating to the request, and such facts are true, correct, and complete.

                                                                              David R. Markin, individually and as
                                                                              Trustee of the David R. Markin Charitable
                                                                              Remainder Unitrust #1 and the David R. Markin
Dated: August ___, 2004                Charitable Remainder Unitrust #2

Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and, to the best of my knowledge and belief, the request contains all the relevant facts relating to the request, and such facts are true, correct, and complete.

                                                                              Allan R. Tessler, as Independent Special
                                                                              Trustee of the David R. Markin Charitable
                                                                              Remainder Unitrust #1 and the David R. Markin
                                                                              Charitable Remainder Unitrust #2

Dated: August ___, 2004

\\ny-srv01\941538v08\45775.010000

DM0000175

## LIST OF EXHIBITS

EXHIBIT "A" — Power of Attorney

EXHIBIT "B" — David R. Markin Charitable Remainder Unitrust #1 Trust Agreement

EXHIBIT "C" — David R. Markin Charitable Remainder Unitrust #2 Trust Agreement

EXHIBIT "D" — Affidavits of Dr. Bassem El Masri, Physician, and David R. Markin, Taxpayer

EXHIBIT "E" — Agreement as to Early Termination of Unitrust #1

EXHIBIT "F" — Agreement as to Early Termination of Unitrust #2

EXHIBIT "G" — Determination Letter Confirming Tax Exempt Status of the David R. Markin Foundation, Inc.