JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution
NATHANAEL S. KELLEY
Assistant General Counsel
SECURITIES INVESTOR
 PROTECTION CORPORATION
1667 K St., N.W., Suite 1000
Washington, D.C.  20006
Telephone:  (202) 371-8300
E-mail: jwang@sipc.org
        kbell@sipc.org
        nkelley@sipc.org

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                 Plaintiff,<br><br>              v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                 Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                 Debtor. | |

**MEMORANDUM OF THE SECURITIES INVESTOR PROTECTION CORPORATION**
**IN SUPPORT OF TRUSTEE'S MOTION TO AFFIRM HIS DETERMINATIONS**
**DENYING CLAIMS OF CLAIMANTS HOLDING INTERESTS IN**
**THE DAVID SHAPIRO NOMINEE, DAVID SHAPIRO NOMINEE #2 AND**
**<u>DAVID SHAPIRO NOMINEE #3 PARTNERSHIPS</u>**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

CONCLUSION ...............................................................................................................................8

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                                                                                **PAGE**

*In re Adler, Coleman Clearing Corp.*,
    216 B.R. 719 (Bankr. S.D.N.Y. 1998) .................................................................................... 4

*Aozora Bank Ltd. v. Sec. Inv'r Prot.. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom.*
    *Kruse v. Sec. Inv'r Prot. Corp* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    708 F.3d 422 (2d Cir. 2013) ............................................................................................. 3, 6

*Appleton v. First Nat'l Bank of Ohio*,
    62 F.3d 791 (6th Cir. 1995) ............................................................................................... 3

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011),
    *cert. dismissed*, __ U.S. __, 132 S. Ct. 2712 (2012), and
    *cert. den.*, 567 U.S. 934 (2012) ........................................................................................ 2, 3

*In re Inv'rs Center, Inc.*,
    129 B.R. 339 (Bankr. E.D.N.Y. 1991) ................................................................................. 4

*Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    708 F.3d 422 (2d Cir. 2013) ............................................................................................. 3, 6

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*,
    218 B.R. 689 (Bankr. S.D.N.Y. 1998) .................................................................................. 4

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. Aozora Bank Ltd. v. Sec.*
    *Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom.*
    *Kruse v. Sec. Inv'r Prot. Corp* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    708 F.3d 422 (2d Cir. 2013) .......................................................................................... 3, 4, 6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    515 B.R. 161 (Bankr. S.D.N.Y. 2014) .................................................................................. 6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    570 B.R. 477 (Bankr. S.D.N.Y.) ........................................................................................... 6

*Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,
    2012 WL 3042986 (S.D.N.Y. July 25, 2012) ................................................................. 3-4, 6

*Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir.),
    *cert. den. sub nom. Trs. of the Reading Body Works v. Sec. Inv'r Prot. Corp.*,
    426 U.S. 936 (1976) ................................................................................................. 3, 4, 5, 7

# TABLE OF AUTHORITIES
### (cont.)

**CASES:**                                                 **PAGE**

*Sec. Inv'r Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*,
    750 F.2d 464 (5th Cir. 1985) ............................................................................................2

*Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*,
    463 F.3d 125 (2d Cir. 2006)..........................................................................................2, 3

**STATUTES AND RULES:**

N.Y. P'ship Law § 12 (McKinney)........................................................................................7

N.Y. P'ship Law § 121-701 (McKinney)..............................................................................7

Securities Investor Protection Act, as amended, 15 U.S.C. §

78ccc(e)..................................................................................................................................4
78fff-2(b)................................................................................................................................3
78fff-3(a)(2) ..........................................................................................................................4
78fff-3(a)(5) ..........................................................................................................................5

Securities Investor Protection Act (2008), 15 U.S.C. §

78*lll*(2)....................................................................................................................................3

Rules of the Securities Investor Protection Corporation, 17 C.F.R. §§ 300.

100–105..............................................................................................................................1, 4
101(a) ....................................................................................................................................4
103................................................................................................................................... 4-5

The Securities Investor Protection Corporation ("SIPC") submits this memorandum in support of the motion ("Motion") of Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–78*lll*, of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff, to affirm the Trustee's determinations denying the claims of claimants ("Claimants") asserting interests in one of the following accounts held in the name of a New York partnership: David Shapiro Nominee (the "Shapiro #1 Account"), David Shapiro Nominee #2 (the "Shapiro #2 Account"), or David Shapiro Nominee #3 (the "Shapiro #3 Account," and, collectively, the "Partnerships"). Under SIPA; the SIPC Series 100 Rules, 17 C.F.R. §§ 300.100–300.105; and this Court's prior decisions, the Claimants, in their individual capacities separate from the Partnerships, are not "customers" of BLMIS and thus have no separate claim to the fund of customer property in this liquidation and, in addition, cannot have their claims satisfied with funds advanced by SIPC.

## BACKGROUND

Through the Motion, the Trustee seeks entry of an order upholding his denial of seven claims for "customer" relief under SIPA—three filed by the Claimants who assert an interest in the Shapiro #1 Account, one filed by a Claimant who asserts an interest in the Shapiro #2 Account, and three filed by the Claimants who assert an interest in the Shapiro #3 Account—and overruling the six objections to those denials. The Claimants did not, however, have any separate relationship with BLMIS in their individual capacity.

As described in more detail in the Trustee's Motion, the Partnerships held accounts solely in their own names. The Partnerships alone, through David Shapiro, executed account opening documents and were listed as the sole account holders of their respective Accounts. All deposits

and withdrawals were made on behalf of the Partnerships. In contrast with the relationship between the Partnerships and BLMIS, the Claimants, in their individual capacities, never completed account agreements and never opened accounts with BLMIS. The books and records of BLMIS do not reflect that Claimants were individual account holders or that they entrusted their own separate cash or securities to BLMIS. Indeed, the Claimants did not have any financial transactions with BLMIS on an individual basis, and the Partnerships alone exercised control over their respective Accounts.

In this liquidation, the Partnerships each submitted a direct claim for their respective Accounts.[1] The Claimants' claims, on the other hand, are individual claims, separate from and in addition to the direct claims for the Accounts yet entirely dependent upon the Claimants' relationship with one of the Partnerships.

## ARGUMENT

SIPA's provisions for customer protection are narrowly tailored to provide relief only to those claimants who entrusted cash or securities to the liquidating broker-dealer for the purpose of trading in the securities markets. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 236 (2d Cir. 2011) (the "*Net Equity Decision*"), *cert. dismissed*, __ U.S. __, 132 S. Ct. 2712 (2012), and *cert. den.*, 567 U.S. 934 (2012); *Stafford v. Giddens (In re New Times Sec. Servs., Inc.)*, 463 F.3d 125, 127–28 (2d Cir. 2006) ("*New Times*") ("Judicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions." (quoting *Sec. Inv'r Prot. Corp. v. Wise (In re Stalvey & Assocs., Inc.)*, 750 F.2d 464, 472 (5th Cir. 1985)). In defining who qualifies as a customer, SIPA requires that the viable claim of a customer relate to the custodial relationship between broker and customer: cash or securities held by the broker for

---

[1] The direct claims filed by the Partnerships are not the subject of the Motion.

2

the customer in an account at the broker in which the customer holds a cognizable interest. *See* SIPA § 78*lll*(2) (2008). Furthermore, the obligations of a liquidating broker-dealer to a claimant for "customer" relief must be ascertainable from the broker-dealer's books and records, or must be established "to the satisfaction of the trustee." *See* SIPA § 78fff-2(b).

Customer status under SIPA is thus not a shorthand designation for anyone who can claim a relationship to a broker-dealer. *Sec. Inv'r Prot. Corp. v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1316 (2d Cir.) ("*Morgan Kennedy*"), *cert. den. sub nom. Trs. of the Reading Body Works v. Sec. Inv'r Prot. Corp.*, 426 U.S. 936 (1976). On the contrary, in order to qualify for such status, a claimant must be able to demonstrate that the claimant: (1) entrusted cash or securities to the broker-dealer; (2) did so pursuant to a direct account or other direct relationship with the broker-dealer; (3) retained the power to direct the disposition of the assets entrusted to the broker-dealer; and (4) intended to use the cash or securities entrusted to the broker-dealer for the purpose of investing or trading in the securities markets. *See* SIPA § 78*lll*(2) (2008); *New Times*, 463 F.3d at 128–29; *Morgan Kennedy*, 533 F.2d at 1317; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285, 295–302 (Bankr. S.D.N.Y. 2011) ("*BLMIS*"), *aff'd sub nom. Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012) ("*Aozora*"), *aff'd sub nom. Kruse v. Sec. Inv'r Prot. Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*, 708 F.3d 422 (2d Cir. 2013) ("*Kruse*"); *see also Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995).

As the Second Circuit has explained in this liquidation, of the above-listed factors, "the critical aspect of the 'customer' definition [in SIPA] is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Net Equity Decision*, 654 F.3d at 236; *see also New Times*, 463 F.3d at 128; *Sec. Inv'r Prot. Corp. v. Jacqueline Green Rollover Account*,

3

2012 WL 3042986, at *4 (S.D.N.Y. July 25, 2012) ("*Jacqueline Green*"). As this Court and others have recognized, legal ownership of cash or securities held, or purportedly held, by a broker-dealer is a foundational element of "customer" status under SIPA—an indispensable prerequisite which a claimant must satisfy in order to have a colorable "customer" claim under SIPA. *See Jacqueline Green*, 2012 WL 3042986, at *5; *BLMIS*, 454 B.R. at 295, 299; *see also Morgan Kennedy*, 533 F.2d at 1318.

Under SIPA, "a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity." SIPA § 78fff-3(a)(2). SIPC's Series 100 Rules set forth the circumstances under which multiple accounts held by the same person with a SIPC-member broker-dealer are deemed to be accounts held in separate capacities eligible for protection.[2] *See* 17 C.F.R. §§ 300.100–300.105; *Morgan Kennedy*, 533 F.2d at 1319–20; *In re Adler, Coleman Clearing Corp.*, 216 B.R. 719, 730 (Bankr. S.D.N.Y. 1998) ("[T]he Series 100 Rules address which accounts held by a customer should be considered as one account for purposes of determining net equity and obtaining SIPC advances." (internal citation omitted)). For example, Rule 101 specifies that "all accounts held with a member by *a person in his own name*, and those which under these rules are deemed his individual accounts, shall be combined so as to constitute *a single account of a separate customer*." 17 C.F.R. § 300.101(a) (emphasis added). Under Rule 103, an account held in the name of a corporation, partnership, or unincorporated association "shall be deemed to be a separate customer distinct from the person or persons owning such corporation or comprising such partnership or unincorporated association," unless the purpose of the entity in question was to obtain or increase protection

---

[2] The SIPC Series 100 Rules were submitted to, and approved by, the Securities and Exchange Commission under SIPA section 78ccc(e) and have the force of law. *See Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998); *In re Inv'rs Center, Inc.*, 129 B.R. 339, 348 (Bankr. E.D.N.Y. 1991).

4

under SIPA. 17 C.F.R. § 300.103. In other words, the corporation or partnership, not the owners, partners, or interest holders, is the "customer" under SIPA.

While the Series 100 Rules determine when different accounts held by the same person will each be treated as a separate "customer" of a liquidating broker-dealer and do not confer "customer" status, the fact that the rules distinguish between the accountholder and the individuals which may have an interest in the account supports the *Morgan Kennedy* holding that the same distinction must be respected when evaluating eligibility for "customer" status. *See Morgan Kennedy*, 533 F.2d at 1319 ("Only those accounts which are held by valid customers of the debtor can qualify for separate coverage. Customer status under SIPA is therefore a prerequisite to the application of the [Series 100] Rules, and not a substitute therefor.") As explained in *Morgan Kennedy*, the Series 100 Rules "illustrate that, under SIPA, separate coverage for accounts held in different capacities is not to be confused with individual coverage for each individual owning some portion of, or interest in, the particular account." *Id.* at 1320.

Thus, an individual may hold multiple accounts in different capacities, each of which may be deemed a customer; but, conversely, with the exception of an omnibus account maintained by a bank or another broker-dealer, *see* SIPA § 78fff-3(a)(5), a single account in a single capacity cannot support the existence of more than one customer. Applying *Morgan Kennedy*, this Court and the District Court repeatedly rejected in this liquidation the separate "customer" claims of claimants who only had an interest in entities that had an account at BLMIS. In April, this Court upheld the Trustee's denial of claims filed by claimants who were individual cotenants holding an interest in a tenancy in common, where the tenancy in common had an account with BLMIS and the individuals did not. The Court found that, under the Series 100 Rules, the joint account was the "customer," and the cotenants "failed to satisfy the 'critical

5

aspect' of the customer definition—'the entrustment of cash or securities to [BLMIS] for the purposes of trading securities.'" *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 570 B.R. 477, 481 (Bankr. S.D.N.Y) (quoting *Kruse*, 708 F.3d at 426). Accordingly, this Court held that "while the [] Tenancy in Common was a 'customer' of BLMIS, the [Cotenants] were not." *Id.*

In the case of the feeder funds, Judge Lifland reasoned, *inter alia*, that, after purchases of fund interests were made, the cash used by the claimants to make them "*became the sole property of the Feeder Funds*," and that the claimants therefore could not have entrusted property to BLMIS and had no legally cognizable claim to any of the assets purportedly held by BLMIS. *See BLMIS*, 454 B.R. at 295 (emphasis in original); *see also Aozora*, 480 B.R. at 125 ("[A]t the moment each appellant used assets to purchase an ownership interest in a Feeder Fund, those assets became property not of the appellants but of the Feeder Fund."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 169 (Bankr. S.D.N.Y. 2014) (holding that the claimants' "financial transactions were with the [ERISA] Plan. Thus, they failed to satisfy the 'critical requirement' that they entrusted cash to BLMIS, as opposed to the [ERISA] Plan, for the purchase of securities."); *Jacqueline Green*, 2012 WL 3042986, at *5 ("One cannot deposit cash with the debtor if this cash belongs to another.").

On February 25, 2015, this Court issued a bench ruling granting the Trustee's motion to uphold his determination denying the claims of general partners who held interests in two Florida partnerships which had invested through BLMIS. (Motion Hr'g Tr. Feb. 25, 2015 [ECF No. 9506]). The Court held that the partners had failed to carry their burden of proving they were SIPA customers entitled to protection (*Id.* at 35.). Importantly, even if the partners invested in the partnerships in order to invest indirectly in BLMIS, "the fact remains that the partners did not

6

entrust anything to BLMIS," and they had no interest in the partnerships' property so entrusted. (*Id.* at 31.)

The same reasoning bars the Claimants' claims here. As investors in the Partnerships that then invested at BLMIS, the Claimants have no legally cognizable relationship with the Partnerships' Accounts at BLMIS, and therefore cannot claim "customer" status through the Partnerships' Accounts. As described in more detail in the Trustee's memorandum and accompanying declarations, the Claimants did not make deposits into or withdrawals from BLMIS; only the Partnerships did. BLMIS's books and records do not reflect any activity by any of the Claimants in an individual capacity. Furthermore, New York's Partnership Law specifies that "[a]ll property originally brought into the partnership stock or subsequently acquired . . . on account of the partnership is partnership property." N.Y. P'ship Law § 12 (McKinney); *see also* N.Y. P'ship Law § 121-701 (McKinney) ("An interest in a limited partnership is personal property and a partner has no interest in specific partnership property."). As a consequence, when the Partnerships invested property with BLMIS, the Claimants had no cognizable legal relationship with BLMIS and therefore are indistinguishable from the trust beneficiaries denied "customer" status in the Second Circuit's decision in *Morgan Kennedy* and the feeder fund investors, ERISA participants, and general partners whose claims this Court and the District Court previously denied.

7

**CONCLUSION**

Claimants are not SIPA "customers" because they had no separate individual relationship with BLMIS. Accordingly, the Court should grant the Trustee's Motion.

Date: October 24, 2017
Washington, D.C.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution


 *s/ Nathanael S. Kelley*
NATHANAEL S. KELLEY
Assistant General Counsel

SECURITIES INVESTOR PROTECTION
 CORPORATION
1667 K St., N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300
E-mail: jwang@sipc.org
          kbell@sipc.org
          nkelley@sipc.org

8