**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LOWREY, individually, in his capacity as general partner of Turtle Cay Partners, in his capacity as personal representative of the estate of Marianne Lowrey, in his capacity as trustee for the Marianne B. Lowrey Trust, and in his capacity as successor partner of Coldbrook Associates Partnership, *et al*.,<br><br>Defendants. | Adv. Pro. No. 10-04387 |

**REPLY MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

SECURITIES INVESTOR PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 371-8300

JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Assistant General Counsel

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... ii

SUMMARY OF ARGUMENT ......................................................................................1

ARGUMENT ................................................................................................................3

    I.     DEFENDANTS MISINTERPRET THE *546(e) DECISION* ..................................3

    II.    THE MANDATE OF THE *546(e) DECISION* IS IRRELEVANT
          TO THE ISSUES AT HAND ..................................................................................5

    III.   THE DEFENDANTS ARE FORECLOSED FROM RE-LITIGATING
          ISSUES THAT HAVE BEEN DECIDED IN MATTERS IN WHICH THEY
          WERE PARTIES ...................................................................................................6

          A.     The Defendants' Motion to Withdraw The Reference
                  On Antecedent Debt Issues............................................................................6

          B.     The Defendants' Participation in *Greiff*........................................................9

          C.     The "Mandate" of the District Court ...........................................................11

    IV.   THE GREIFF, ANTECEDENT DEBT, AND COHEN DECISIONS
          ARE APPLICABLE AND VALID PRECEDENTS.............................................12

    V.    THE DEFENDANTS ERRONEOUSLY ARGUE THAT THE
          TRUSTEE'S AVOIDANCE POWER ARISES ONLY UNDER
          BANKRUPTCY CODE PROVISIONS AND THAT PONZI
          TERMINOLOGY IS MEANINGLESS .............................................................14

    VI.   THE TRUSTEE'S CLAIMS PROPERLY SEEK TO AVOID
          TRANSFERS MADE WITHIN SECTION 548(a)(1)'s TWO-
          YEAR LOOK-BACK PERIOD WHILE CALCULATING
          VALUE TO THE ESTATE BASED UPON TRANSACTIONS
          OVER THE LIFE OF THE ACCOUNT ...............................................................16

CONCLUSION............................................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Andrews v. Modell*, 636 F. Supp. 2d 213 (S.D.N.Y. 2008) ........................................................12

*APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc.,*
    779 F. Supp. 2d 358 (S.D.N.Y. 2011)..................................................................................11

*In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229
    (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011),
    *cert. dismissed*, 566 U.S. 1032 (2012), and *cert. den.*, 567 U.S. 934 (2012) .....................4

*Burrell v. U.S.*, 467 F.3d 160 (2d Cir. 2006), *cert. den.*, 549 U.S. 1344 (2007)...........................11

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,*
    56 F.3d 359 (2d Cir. 1995)..................................................................................................12

*In re Chicago Partnership Bd., Inc.*, 236 B.R. 249 (Bankr. N.D. Ill. 1999) .................................14

*In re Cysen/Montenay Energy Co.*, 226 F.3d 160 (2d Cir. 2000),
    *cert. den.*, 532  U.S. 920 (2001)..........................................................................................6

*In re Government Secs. Corp.*, 111 B.R. 1007 (S.D. Fla. 1990),
    *aff'd*, 972 F.2d 328 (11th Cir. 1992) ..................................................................................14

*Lucente v. Int'l Bus. Machs. Corp.,*
    262 F. Supp. 2d 109 (S.D.N.Y. 2003)........................................................................... 11-12

*Nat'l Union Fire Ins. Co. v. Camp (In re Government Securities Corp.),*
    972 F.2d 328 (11th Cir. 1992), *cert. den.,* 507 U.S. 952 (1993).......................................15

*Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296
    (Bankr. S.D.N.Y. April 25, 2016)...................................................................4, 12, 13, 17

*Picard v. Cohen*, Case No. 16-cv-5513-LTS (S.D.N.Y. Feb. 24, 2017) .......................................13

*Picard v. Greiff (In re Madoff Sec.), 476 B.R. 715*
     (S.D.N.Y. 2012), *aff'd, sub nom., Picard v. Ida Fishman*
    *Revocable Trust (In re BLMIS),* 773 F.3d 411 (2d Cir. 2014),
    *cert. den.*, __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct.
    2859 (2015) ...................................................................3, 5, 6, 8, 9, 10, 13, 16

*Picard v. Ida Fishman Revocable Trust (In re BLMIS),*
    773 F.3d 411 (2d Cir. 2014), *cert.den.*, __U.S.__,
    135 S. Ct. 2858 and  135 S. Ct. 2859 (2015) ...............................................3, 4, 5, 6, 10, 13

## TABLE OF AUTHORITIES

**CASES:**                                                                                                    **PAGE**

*Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC),*
    2017 WL 2376567 (2d Cir. June 1, 2017) .......................................................................4

*SIPC v. BLMIS,* 499 B.R. 416 (S.D.N.Y. 2013),
    *certification for interlocutory appeal den.*,
    987 F. Supp. 2d 309 (S.D.N.Y. 2013).......................................3, 6, 8, 9, 10, 11, 13-14, 17

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 531 B.R. 439
    (Bankr. S.D.N.Y. 2015) ...............................................................................6, 11, 17

*SIPC v. BLMIS,* 987 F.Supp. 2d 309 S.D.N.Y. 2013) ....................................................9

*SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191 (2d Cir. 1974)......................................14

*U.S. v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001)................................................................12

*U.S. v. Bryser*, 95 F.3d 182 (2d Cir. 1996), *cert. den. sub nom.*
    *DeGerolamo v. United States*, 520 U.S. 1129 (1997).......................................11

## STATUTES AND RULES:

Securities Investor Protection Act, as amended, 15 U.S.C. §

78fff(b)...........................................................................................................14
78fff-2(c)(3) .....................................................................................................15

Securities Exchange Act of 1934, 15 U.S.C.A. §

78cc(b) ...........................................................................................................9

United States Bankruptcy Code, 11 U.S.C. §

544...................................................................................................................1
545...................................................................................................................1
546(e) .......................................................................................................1, 2, 4, 5, 10
547...................................................................................................................1
548(a) ...............................................................................................................2
548(a)(1) .........................................................................................................16
548(a)(1)(A)...............................................................................................1, 2, 5
548(a)(1)(B) .......................................................................................................1
548(b) ...............................................................................................................1

# TABLE OF AUTHORITIES

**STATUTES AND RULES:**                                                               **PAGE**

United States Bankruptcy Code, 11 U.S.C. §

548(c) ........................................................................................................2, 8, 13, 16
548(d)(2)(A)........................................................................................................2

28 U.S.C. §

1292(b)........................................................................................................9

Fed. R. Civ. Pro.

54(b) ........................................................................................................9, 10

**TREATISES:**

18 *Moore's Federal Practice* § 134.01[1] (Matthew Bender 3d Ed.) .................................... 10-11

*Black's Law Dictionary* (9th Ed. 2009) ........................................................................10

## SUMMARY OF ARGUMENT

In their September 25, 2017 Memorandum of Law,[1] Defendants argue that their transactions come within the plain meaning of terms used in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e). They claim that they had securities contracts with Bernard L. Madoff Investment Securities, LLC ("BLMIS" or the "Debtor"). They assert that the payments of fictitious profits that they received were "settlement payments." But even assuming, *arguendo*, that their transactions could be brought within the meaning of terms used in Section 546(e), their contention that this is somehow dispositive of the instant cases is wrong because Section 546(e) does not give them the relief that they seek. Section 546(e) limits avoidance actions, but not if avoidance is under Section 548(a)(1)(A).

In relevant part, Section 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title [Title 11], the trustee may not avoid a transfer that is a … settlement payment … made by or to … a … stockbroker … in connection with a securities contract …, *except under section 548(a)(1)(A) of this title.*

11 U.S.C. § 546(e) (emphasis added). Whether or not their transactions were made in connection with securities contracts, and whether or not the payments were settlement payments, are beside the point. The actions at hand are under Section 548(a)(1)(A), and Section 546(e), by its express terms, presents no bar. A transfer of a settlement payment by a stockbroker in connection with a securities contract *can* be avoided under Section 548(a)(1)(A).

Nevertheless, Defendants ignore the legislative mandate under Section 546(e) and instead extrapolate from it in an effort to expand the safe harbor. Under their interpretation, a broker's

---

[1] Lowrey Customers' Memorandum of Law In Opposition to Trustee's Motion for Summary Judgment, filed on September 25, 2017, in Adv. Pro. No. 10-04387 (Doc. No. 86) referred to herein as "Def. 9/25 Mem."

settlement payment to a customer in connection with a securities contract must mean that the payment "discharged a legally enforceable debt or obligation owed by the broker to the customer at the time of the transfers."  Def. 9/25 Mem. at 32.    In their view, this amounts to "value" under Section 548(c) of Title 11, which is a defense to a suit under Section 548(a)(1)(A).  If correct, Defendants' interpretation automatically brings avoidance actions under Section 548(a)(1)(A) for securities-related transfers within the safe harbor of Section 546(e), even though specifically excluded by Congress.

Of course, the leap of faith that the Defendants erroneously ask this Court to make is that settlement payments necessarily equate with "value."  "Value," as used in Section 548(c) of Title 11, is not defined as a "settlement payment," but in relevant part, under Section 548(d)(2)(A), as a payment on account of a present or antecedent debt.  As previously discussed and as elaborated below, the fictitious account statements issued to the Defendants created no obligation by the Debtor to pay the Defendants profits that a) were imaginary; and therefore, b) were not owed to them.  Because the Debtor did not owe the Defendants fictitious profits, there was no debt satisfied by their payment, and therefore, no "value."

The other two grounds asserted by the Defendants also have no merit.  No securities or other law preserves to the Defendants tort claims allowing the Defendants to be placed ahead of customers in a liquidation proceeding under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").  Even assuming, *arguendo*, that Defendants properly could assert such claims, their status would be as general creditors, and those claims would be satisfied, if at all, only *after* customer claims, and from the general estate, if any.  By the same token, the two-year reach back period in Section 548(a) of Title 11 has no place in the calculation of value.  That calculation proceeds under Section 548(c) which has no time limit.

# ARGUMENT

## I.     DEFENDANTS MISINTERPRET THE *546(e) DECISION*[2]

Defendants' assertion that the Trustee needed to avoid "obligations" to the Defendants before he could avoid the transfers is based on a faulty premise, that is, that the Debtor was required to pay the Defendants fictitious profits in the first place.  As discussed in SIPC's main brief,[3] this premise already has been rejected repeatedly in this liquidation proceeding by the District Court for this District ("District Court") and followed by this Bankruptcy Court.  As the District Court held, the payment of fictitious profits in a Ponzi scheme does not satisfy an antecedent debt and provides no value to the Debtor.  The District Court based its conclusion on the uniformly-held decisions of federal Courts of Appeals to consider the question.  Moreover, the District Court reached the same conclusion not once, but twice, in this liquidation proceeding.  *See Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd sub nom., Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,  773 F.3d 411 (2d Cir. 2014), *cert. den*., __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015); and *SIPC v. BLMIS*, 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"), *certif. for interlocutory appeal den*., 987 F. Supp. 2d 309 (S.D.N.Y. 2013).  *See also* SIPC Mem. at 11-13. The District Court's decisions in this respect were not only broadly supported and certain, but were further buttressed by their consistency with the position of the Second Circuit.  Twice, both before and after issuance of the *546(e) Decision*, the Second Circuit declined to treat the Madoff "arbitrarily

---

[2] *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den*., __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ("*546(e) Decision*")

[3] The SIPC Memorandum, filed on September 25, 2017, is Doc. No. 16673 in Adversary Proceeding No. 08-01789; Doc. No. 85, in Adversary Proceeding No. 10-04387 ("SIPC Mem.").  The same short-hand references in the SIPC Memorandum are used in this Memorandum.

assigned paper profits as real" or to give "legal effect to Madoff's machinations." *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 2017 WL 2376567, at \*3 (2d Cir. June 1, 2017); *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229, 235 (2d Cir. 2011), *reh'g and reh'g en banc den*. (2d Cir. Nov. 8, 2011), *cert. dismissed*, 566 U.S. 1032 (2012), and *cert. den*., 567 U.S. 934 (2012).

In spite of this, Defendants seek to advance their position by misreading the application and scope of Section 546(e) in the Second Circuit's *546(e) Decision*. Taking an overly broad and incorrect view of that decision, they argue that the Trustee and this Bankruptcy Court "are proscribed from taking the position that the value defense does not operate in a SIPA case to protect the [Defendants'] receipts as payments on account of unavoided or unavoidable contracts or legal obligations or debts of the debtor-broker, even if the broker perpetrated a widespread fraud." Def. 9/25 Mem. at 11. But the Second Circuit did not decide in the *546(e) Decision*, as the Defendants posit and as this Bankruptcy Court already has acknowledged,[4] that the fictitious account statements were enforceable according to their terms. For the Second Circuit to have done so would have created a conflict between the *546(e) Decision* and the Second Circuit's earlier and later decisions in which it declined to give effect to the fictitious account statements

---

[4] In *Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016), in pertinent part, this Court observed as follows:

> According to Cohen, *Ida Fishman* also ruled that account statements created an enforceable legal obligation, the Trustee never avoided the obligation and its satisfaction constituted value for the withdrawal of fictitious profits. … However, *Ida Fishman* did not hold that BLMIS' fictitious statements created enforceable obligations.

2016 WL 1695296, at \*12 n.17.

or the "machinations" of Bernard Madoff.  Instead, the Second Circuit concluded in the *546(e)*

*Decision* that the customer account documents reasonably could be construed as "securities

contracts," and the payments, as reflected on the account statements, reasonably could be

construed as "settlement payments."  To that extent, the Second Circuit determined that the

transactions could be deemed to come within the plain meaning of Section 546(e) as involving

transfers that were safe-harbored from avoidance, except as provided for under Section

548(a)(1)(A).  The Second Circuit did not in the *546(e) Decision*, as the Defendants argue, take

the further step of opining on whether the account statements were or were not enforceable.  *See*

Def. 9/25 Mem. at 4-5, 7-8, 9, 10-11.  The issue was not presented, and there was no need for the

Second Circuit to do so.  In any event, the Second Circuit already had ruled on the question when

presented, and later reaffirmed its position after the *546(e) Decision* was issued.  *See* SIPC Mem.

at 3-4, 7, 15.

## II.    THE MANDATE OF THE *546(e) DECISION* IS IRRELEVANT TO THE ISSUES AT HAND

The Defendants contend that various precedents do not apply to these adversary

proceedings because they are inconsistent with the mandate of the *546(e) Decision*.  Their

argument is no more than a red herring and a distraction since the argument stems from their

incorrect interpretation of the *546(e) Decision*.  As discussed above, in the *546(e) Decision,* the

Second Circuit applied Section 546(e) according to its plain terms.  It did not hold, as the

Defendants maintain, that Section 548(a)(1)(A) avoidance suits are safe-harbored, nor did it

opine on the enforceability or lack thereof of the account statements showing imaginary trades

and invented profits.  It affirmed the judgment in *Greiff* in which the District Court expressly

rejected every argument again made by the Defendants in these proceedings.  At bottom, the

mandate of the Court in the *546(e) Decision* simply has no bearing on the issues at hand.

### III. THE DEFENDANTS ARE FORECLOSED FROM RE-LITIGATING ISSUES THAT HAVE BEEN DECIDED IN MATTERS IN WHICH THEY WERE PARTIES

All of the questions now raised by the Defendants were decided by the District Court in its *Greiff* and *Antecedent Debt Decisions.* As this Bankruptcy Court observed,

> Judge Rakoff's extensive consideration of the antecedent debt/value issue would normally foreclose further argument in this court. Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015). Under the law of the case doctrine, "if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *In re Cysen/Montenay Energy Co*., 226 F.3d 160, 165 n.5 (2d Cir. 2000), *cert. den*., 532 U.S. 920 (2001). The Defendants moved to withdraw the reference of the antecedent debt/value issue, participated in *Greiff*, and have had their day in court. As to them, the District Court's decisions are binding.

### A. The Defendants' Motion To Withdraw The Reference On Antecedent Debt Issues

On March 30, 2012, Defendants filed in their adversary proceeding a "Notice of Motion to Withdraw the Reference" ("MTWR"), a related Memorandum of Law ("MTWR MOL"), and a Declaration of Richard A. Kirby ("Declaration").[5] They indicated in the MTWR MOL that among other grounds, they sought withdrawal of the reference in order for the District Court to consider "[w]hether transfers from BLMIS constituted payments of antecedent debt…." MTWR MOL at 7.

---

[5] The MTWR, the MTWR MOL, and the Declaration are Doc. Nos. 29, 27, and 28, respectively, in Adv. Pro. No. 10-04387(SMB).

On May 12, 2012, the District Court issued an Order that withdrew the reference of the

Adversary Proceedings "listed in Exhibit A" and provided for consolidated briefing on the merits

of the "Withdrawn Antecedent Debt Issue" the resolution of which would govern all pending

motions to withdraw the reference.[6]  The "Withdrawn Antecedent Debt Issue" was defined by

the Court as follows:

> The reference of the Adversary Proceedings listed in Exhibit A is
> withdrawn, in part, from the Bankruptcy Court to this Court solely
> with respect to the Antecedent Debt Defendants for the limited
> purpose of hearing and determining whether and to what extent (i)
> transfers made by Madoff Securities that the Trustee seeks to avoid
> were made in exchange for value, such as antecedent debts that
> Madoff Securities owed to the Antecedent Debt Defendants at the
> time of the transfers; and (ii) obligations incurred by Madoff
> Securities may be avoided by the Trustee, including whether they
> were exchanged for value, such as antecedent debts owed to the
> Antecedent Debt Defendants (the "Withdrawn Antecedent Debt
> Issue").

May 12 Order, at 4, ¶1.

The May 12 Order would apply, among others, to those parties shown on Exhibit A as

lead cases. In its Order, the Court further stated:

> Exhibit A hereto, prepared by the Trustee's counsel, identifies the
> single cases or, in certain instances, the lead case of related
> adversary proceedings where defendants are represented by
> common counsel, in which Antecedent Debt Defendants have filed
> motions to withdraw the reference… based on, among other
> grounds, that the Trustee cannot avoid transfers or obligations that
> Madoff Securities made in satisfaction of antecedent debts owed
> by Madoff Securities (the "Adversary Proceedings").

May 12 Order, at 2, ¶B.

Exhibit A listed as item no. 176 the instant Lowrey adversary proceeding.   Under the

May 12 Order, the Defendants were Antecedent Debt Defendants.

---

[6] Order dated May 12, 2012, and filed on May 16, 2012, in Case No. 1:12-mc-00115-JSR (S.D.N.Y.),
Doc. No. 107 ("May 12 Order").

In pertinent part, the District Court also cautioned in the May 12 Order:

> The procedures established by this Order, or by further Order of
> this Court, shall constitute the sole and exclusive procedures for
> determination of the Withdrawn Antecedent Debt Issue in the
> Adversary Proceedings (except for any appellate practice resulting
> from such determination), and this Court shall be the forum for
> such determination.

May 12 Order, at 7, ¶15.

Almost two weeks before its May 12 Order, the District Court had issued *Greiff.*  On

October 15, 2013, the *Antecedent Debt Decision* followed.   The *Antecedent Debt Decision*

indicated that it pertained to "Consolidated proceedings on antecedent debt issues."  The issues

reviewed were the same as those presented here.  Significantly, the "Consolidated Memorandum

of Law In Support of Motion to Dismiss Regarding Antecedent Debt Issues on Behalf of

Withdrawal Defendants, as Ordered by the Court on May 12, 2012," submitted in the matter, was

filed on behalf of all counsel by the attorney who represents the Defendants in the instant

adversary proceeding.  *See In re Madoff Securities*, Case No. 1:12-mc-0115-JSR (S.D.N.Y.),

Doc. No. 199, filed on June 25, 2012.  The ECF docket sheet in the case identified the attorney,

now with a different law firm, as counsel for the "Antecedent Debt Defendants Listed in

Appendix A of the Court's May 12, 2012 Order."  The arguments in that Memorandum generally

track the arguments now made to this Bankruptcy Court by the Defendants.  Thus, in addressing

the arguments, the District Court, in the *Antecedent Debt Decision*, concluded that claims against

the Debtor's general estate were not "value" for purposes of Section 548(c) of Title 11, and the

deduction of total withdrawals from total deposits was the appropriate calculus of fraudulent

transfer liability.  499 B.R. at 430.  The Court defended its holding in *Greiff* and rejected

assertions that federal and state law claims (including, among others, under Section 29(b) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), and New York state claims for fraud and

breach of fiduciary duty) allegedly held by the defendants constituted "antecedent debt." 499 B.R. at 421-422; 421 n.4; and 422 n.6.

Having ruled on the issues before it, the District Court ordered that enumerated adversary proceedings be remanded to the Bankruptcy Court for further proceedings *consistent with the Court's Opinion and Order.* The Court provided that the enumerated proceedings included, among others, "those cases listed in Exhibit A of item number 107 on the docket of 12 Misc. 115." *Antecedent Debt Decision,* 499 B.R. at 430. The cases included the adversary proceeding at hand.[7]

## B.    The Defendants' Participation in *Greiff*

The *Antecedent Debt Decision* which built on the Court's opinion in *Greiff* expressly applied to the Defendants in the case at hand. *Greiff* itself applied directly to the Defendants inasmuch as the Defendants also participated in that matter.

On May 16, 2012, the same day that it filed its May 12 Order, the District Court filed an Order certifying its *Greiff* decision for interlocutory review pursuant to Fed. R. Civ. Pro. 54(b).[8] The Order applied to three categories of avoidance actions brought by the Trustee. May 16 Order at 5. These included 1) the adversary proceedings that were parties to the *Greiff* decision which the Court referred to as "Decided Actions" and were listed in Exhibit A to the Order; 2) adversary proceedings withdrawn by the District Court as to which briefing and argument had been scheduled and suspended pending issuance of the decision in *Greiff* (the "Withdrawn

---

[7] Following issuance of the Decision, the defendants in the *Antecedent Debt Decision* cases moved to amend the Court's Opinion and Order to include certification of the matter for immediate review by the Court of Appeals pursuant to 28 U.S.C. § 1292(b). The District Court denied the motion. *SIPC v. BLMIS*, 987 F. Supp. 2d 309, 311 (S.D.N.Y. 2013).

[8] Consent Order Granting Certification Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing Certain Claims and Actions, filed on May 16, 2012 in *In re Madoff Securities*, Case No. 12-MC-0115 (JSR) (S.D.N.Y.), Doc. No. 109 ("May 16 Order").

546(e) Actions" listed in Exhibit B to the Order); and 3) adversary proceedings as to which the Court had not yet determined pending motions for withdrawal of the reference ("Eligible Actions" listed in Exhibit C to the Order). May 16 Order at 1, 3.

For purposes of the certification, the Court consolidated the Eligible Actions, the Withdrawn 546(e) Actions, and the Decided Actions under the caption of *Picard v. Ida Fishman Revocable Trust*, No. 11-cv-7603 (JSR) (S.D.N.Y.) ("*Ida Fishman*"), and entered a single Rule 54(b) judgment in the action which would apply to all three categories of adversary proceedings. *Id*. at 7-8. Unless a party opted out, a notice of appeal of the *Greiff*, now *Ida Fishman*, decision would be deemed entered in each of the three categories. Any party opting out would have 14 days from the date of the Order within which to notify the Trustee and file a notice with the Court. Any party not opting out would "be deemed to have preserved and made all arguments relating to the application and effect of Section 546(e) of the Bankruptcy Code that were raised in the motions to dismiss in the Decided Actions." May 16 Order at 9-10.

Listed among the Eligible Actions was the instant Lowrey adversary proceeding. *See* Exhibit C to May 16 Order, Doc. No. 109 at 80 (item no. 443). The Defendants did not opt out of the procedures set forth in the May 16 Order and therefore adopted all arguments made in *Greiff* and participated in the subsequent appeal which culminated in the *546(e) Decision*.

The Defendants having fully participated in *Antecedent Debt Decision* and in *Greiff*, the District Court's *Greiff* and *Antecedent Debt Decisions* are law of the case as to which Defendants are bound. In this further proceeding, the Defendants moreover are bound by the District Court's decisions under the doctrine of *stare decisis*. *Stare decisis* is the "doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." *Stare Decisis*, *Black's Law Dictionary* (9th ed. 2009). *See* 18 *Moore's Federal*

10

*Practice* § 134.01[1] (Matthew Bender 3d Ed.) ("the doctrine compels lower courts to follow the decisions of higher courts on questions of law."). As a matter of law of the case and *stare decisis*, the Defendants cannot relitigate the issues because the issues already have been decided.

## C.    The "Mandate" of the District Court

It bears mention that in commenting on the District Court's return of proceedings "for further proceedings consistent with this Opinion and Order," this Bankruptcy Court observed that the District Court's directive in the *Antecedent Debt Decision* "sounds like a mandate." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015).

The mandate rule has been described as follows:

> The mandate rule provides: "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." … The rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." To determine whether an issue may be reconsidered on remand, a district court "should look to both the specific dictates of the remand order as well as the broader spirit of the mandate," … and it "must always look to the opinion to interpret the mandate." [citations omitted and emphasis in original].

*APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 366 (S.D.N.Y. 2011).

In sum, on remand, the trial court in the case must follow the decision of the appellate court as to any issue decided by the appellate court in the case. *See U.S. v. Bryser*, 95 F.3d 182, 185 (2d Cir. 1996), *cert. den. sub nom DeGerolamo v. United States*, 520 U.S. 1129 (1997); *Burrell v. U.S.*, 467 F.3d 160, 165 (2d Cir. 2006) (under the mandate rule, district court must follow the decision of the appellate court as to issues explicitly decided on appeal), *cert. den.*, 549 U.S. 1344 (2007); *Lucente v. Int'l Bus. Machs. Corp.*, 262 F. Supp. 2d 109, 112 (S.D.N.Y. 2003)

(mandate rule "'describes the duty of the district court on remand' upon receipt of the mandate, which is the appellate court's direction to the trial court. [citations omitted]")

To the extent that the Court's directive may be viewed as a mandate, the Defendants would cause this Court to violate the mandate by departing from the District Court's rulings. The Second Circuit has held that "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." [citation omitted]." *U.S. v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).

Not only would relitigation of the issues at hand be improper, but in seeking a re-determination of issues already decided by the District Court, the Defendants themselves violate the District Court's May 12 Order. The Order specifies that the procedures established by the District Court are the "sole and exclusive procedures" for determination of the antecedent debt issue in the adversary proceedings and that other than the Court of Appeals, the District Court is the forum for the determination of the issue. May 12 Order at 7, ¶15.[9]

## IV.    THE GREIFF, ANTECEDENT DEBT, AND COHEN DECISIONS ARE APPLICABLE AND VALID PRECEDENTS

Defendants incorrectly assert that the decision of this Bankruptcy Court in *Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016) ("*Cohen*"), which is adverse to the Defendants' position, is irrelevant to the question of whether Defendants provided value in exchange for the payment of fictitious profits. *See* Def. 9/25 Mem. at 7. In *Cohen*, this Court issued proposed findings and conclusions that were reviewed *de novo* and

---

[9] Having already litigated decided issues, Defendants would appear to be collaterally estopped from seeking to relitigate them. Collateral estoppel "or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir. 1995). *But see Andrews v. Modell*, 636 F. Supp. 2d 213, 218 (S.D.N.Y. 2008) ("There is a considerable amount of disagreement as to whether remand orders … may trigger collateral estoppel in subsequent proceedings.").

adopted by the District Court. In doing so, the District Court described the Bankruptcy Court's decision as "well-reasoned and thorough." *See* Memorandum Order Adopting Proposed Findings of Fact and Conclusions of Law (Doc. No. 24), in *Picard v. Cohen*, Case No. 16-cv-5513-LTS (S.D.N.Y. Feb. 24, 2017). Defendants maintain that this Bankruptcy Court should disregard its decision in *Cohen*, as well as the *Greiff* and *Antecedent Debt Decisions*, and the District Court's adoption of the proposed findings and conclusions in *Cohen*, because all of these decisions are "manifestly erroneous." Def. 9/25 Mem. at 7. They base their assertion on the thin reed of the Defendants' misinterpretation of the *546(e) Decision,* contending that the foregoing precedent is inconsistent with the *546(e) Decision* and, under the mandate rule, is not to be followed. As discussed above, the Defendants misread the *546(e) Decision* and its mandate. The *546(e) Decision* is irrelevant to the issues at hand since that Decision did not address the issues. The issues *were* addressed by the District Court in its *Antecedent Debt Decision* which reaffirmed *Greiff,* both of which expressly bind the Defendants.

Nevertheless, should this Bankruptcy Court deems it appropriate for it to rule once again on the issues, in order for it to adopt the District Court's directive of "further proceedings consistent with this Opinion and Order," it should conclude, as did the District Court, that no value was provided under Section 548(c) in exchange for the payment of fictitious profit; that the subtraction of total deposits from total withdrawals is the correct calculus of liability; and that fictitious profit is the amount that exceeds principal. *See* 499 B.R. at 419, 421, 423, 425-426, 430.

As to the *Cohen* decision, rather than being inapplicable as the Defendants contend, the decision reinforces the correctness of the analysis of the issues at hand. Not one, but two Judges, of the same District Court have now reached the same conclusions on the issues presented.

13

## V. THE DEFENDANTS ERRONEOUSLY ARGUE THAT THE TRUSTEE'S AVOIDANCE POWER ARISES ONLY UNDER BANKRUPTCY CODE PROVISIONS AND THAT PONZI TERMINOLOGY IS MEANINGLESS

The Defendants also contend that the Trustee's power to avoid the instant transfers arises exclusively under provisions of the Bankruptcy Code and that the fact that the transfers occurred in order to perpetuate a Ponzi scheme is irrelevant. Def. 9/25 Mem. at 18-19. The Defendants are mistaken.

At least two provisions of SIPA are central to this case. Under SIPA Section 78fff(b), the SIPA proceeding is to be 1) "conducted in accordance with," and 2) "as though it were being conducted" under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11, "[t]o the extent consistent with the provisions of this chapter." Under SIPA Section 78aaa, "this chapter" refers to SIPA. "Conducted in accordance with" the provisions of Title 11 means that the substantive provisions of the designated chapters of Title 11 apply to the proceeding. "As though it were being conducted" means that procedurally, the SIPA proceeding proceeds as if it were a Title 11 liquidation. The applicability of the Title 11 provisions is subject to the caveat of consistency with SIPA. A provision is inconsistent with SIPA if it "conflicts with an explicit provision" of SIPA or if its application "would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits." *SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191, 1195 (2d Cir. 1974). *See In re Chicago Partnership Bd., Inc.*, 236 B.R. 249, 260 (Bankr. N.D. Ill. 1999) ("To the extent that the provisions of the Bankruptcy Code conflict with the provisions of SIPA, SIPA shall control."); *In re Government Secs. Corp.*, 111 B.R. 1007, 1011 (S.D. Fla. 1990) ("it is difficult to imagine how application of [the Bankruptcy Code provision] could be deemed anything but consistent with SIPA, the purpose of which is to protect customers of securities brokerages"), *aff'd*, 972 F.2d 328 (11th Cir. 1992).

14

The other pertinent provision of SIPA is Section 78fff-2(c)(3) which expressly confers upon the SIPA trustee the right to avoid transfers of customer property and characterizes customer property as debtor property for avoidance purposes.

The aforementioned provisions of SIPA make the avoidance provisions of Title 11 applicable to the proceeding and therefore, are crucial components of the avoidance actions. Likewise contrary to the Defendants' position, the fact that a Ponzi scheme is at issue is meaningful and relevant. Avoidance of transfers in a Ponzi scheme are resolved in a certain way in ordinary bankruptcy and such transfers in a SIPA proceeding must be resolved in the same manner so long as consistent with SIPA. *See* SIPC Mem. 11-13. Indeed, the courts' rationale in bankruptcy cases takes on heightened significance in a SIPA case. The transfers that occurred are of other investors' money. To allow avoidance in ordinary bankruptcy but not in the SIPA case would "substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits." As the Eleventh Circuit commented in *Nat'l Union Fire Ins. Co. v. Camp (In re Government Securities Corp.)*, 972 F.2d 328 (11th Cir. 1992), *cert. den.*, 507 U.S. 952 (1993):

> This argument is inapposite to the intent of SIPA. The purpose of SIPA is to return to customers of brokerage firms their property or money. 15 U.S.C. § 78fff(a) provides that "[t]he purposes of a liquidation proceeding shall be … to deliver customer name securities to or on behalf of the customers of the debtor …; and … to distribute customer property and … otherwise satisfy net equity claims of customers…." Congress wanted more, not fewer, assets available for customers of brokerage firms in financial distress. It makes no sense to suggest that Congress intended that the SIPA trustee have less power than an ordinary bankruptcy trustee to gather assets into the debtor's estate.

972 F.2d at 331.

15

In this regard, the Defendants' contention that in the avoidance actions, the Defendants are perceived as investors in the Debtor or as creditors as opposed to equity investors is, as the District Court noted, a "distinction without a difference." *Greiff*, 476 B.R. at 726. *See* Def. 9/25 Mem. at 24-27. As the District Court observed, the Defendants did not bargain for a definite return, but only for a "best efforts to try to generate a profit." *Greiff*, 476 B.R. at 726. To allow the Defendants who no longer have "customer" claims to retain the fictitious profit "would conflict with the priority system established under SIPA by equating net equity and general creditor claims." *Id.* at 727.

### VI.    THE TRUSTEE's CLAIMS PROPERLY SEEK TO AVOID TRANSFERS MADE WITHIN SECTION 548(a)(1)'s TWO-YEAR LOOK-BACK PERIOD WHILE CALCULATING VALUE TO THE ESTATE BASED UPON TRANSACTIONS OVER THE LIFE OF THE ACCOUNT

Finally, Defendants argue that the Trustee's calculation of Defendants' avoidance liability violates Section 548(a)(1)'s two-year look-back period for avoiding actually fraudulent transfers (the "Two-Year Period"). Defendants assert that the Trustee's calculation of value to the estate under Section 548(c) necessarily violates Section 548(a)(1)'s time limits by ignoring the face value of the fictitious statements generated outside of the Two-Year Period and netting deposits and withdrawals over the life of the account. The Trustee's calculation of liability, however, is not—and does not require—a separate transfer or obligation avoidance under Section 548(a)(1). *See* SIPC Mem. at 20-25.

Defendants' argument has been seen and rejected multiple times before in this liquidation. Defendants should not be allowed to return to this Court on the same issues, time and again, based on their most recently-conceived misguided and recast theory. In the District Court's *Antecedent Debt Decision*, Defendants asserted that the Trustee's calculation of account value using deposits and withdrawals over the life of the account was improperly

16

"circumvent[ing] the limitation of the statutory reach-back period to indirectly avoid and recover time-barred withdrawals . . . ." *SIPC v. BLMIS*, 499 B.R. at 427. The District Court responded that the identification of voidable transactions during the Two-Year Period is separate from the calculation of value to the estate under Section 548(c), which has no time limitation. *Id.*; *see also Cohen*, 2016 WL 1695296, at *8 ("Bankruptcy Code § 548(c) is not an element of the Trustee's avoiding powers; instead, it is an affirmative defense to an otherwise avoidable transfer."). "Thus, there is no reason why a line should be drawn at the beginning of the [Two-Year Period] in determining whether a transfer was for value." 499 B.R. at 427; *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 460 (Bankr. S.D.N.Y. 2015) ("[The Trustee] offsets all deposits and withdrawals during the life of the account, but he cannot recover more than the amount transferred during the two years preceding the filing date."). Any calculation of the Defendants' net investment or whether a valid antecedent debt existed—and therefore whether value was provided for the transfer—requires an examination of the entire history of the debtor's relationship with the transferee in order to ensure, as closely as possible under the law, a *pro rata* distribution of customer property to all customers pursuant to SIPA.

## **CONCLUSION**

For the foregoing additional reasons, the Trustee's motion for summary judgment should

be granted and the Defendants' motion should be denied.

Respectfully submitted,

JOSEPHINE WANG
General Counsel

 *s/ Kevin H. Bell*
KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution

NATHANAEL S. KELLEY
Assistant General Counsel

SECURITIES INVESTOR
 PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone: (202) 371-8300
Facsimile: (202) 223-1679
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org

Date:  October 25, 2017
Washington, D. C.