Hearing Date:  November 1, 2017
Hearing Time:  2:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05224 (SMB) |
| Plaintiff, | |
| v. | |
| DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2, SOUTHPAC INTERNATIONAL TRUST LTD., as trustee of the David R. Markin 2003 Trust, DAVID R. MARKIN 2003 TRUST, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1, DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #2, | |
| Defendants. | |

**MARKIN ESTATE'S OPPOSITION TO TRUSTEE'S CROSS MOTION FOR**
**LEAVE TO FILE A SECOND AMENDED COMPLAINT AND REPLY IN FURTHER**
**SUPPORT OF ESTATE'S MOTION TO DISMISS TRUSTEE'S FIRST AMENDED**
**COMPLAINT AND FOR COMPEL PAYMENT ON ESTATE'S CLAIM**

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for the David R. Markin Estate*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ............................................................................................................................... 5

    A.   The Original and Amended Complaints Unequivocally Name David Markin As the
          Subsequent Transferee ...............................................................................................5

    B.   The Procedural History of the Case .................................................................8

    C.   The Trustee's Efforts To Amend the Complaint Fail to Meet Rule 12 Requirements ......10

OBJECTION TO CROSS MOTION ................................................................................ 12

    D.   Leave to Amend Should not be Granted ........................................................12

    E.   The Trustee's "for the benefit" Argument is Ill Conceived...............................17

    F.   The Markin Estate's Motion to Dismiss Should be Granted .............................19

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansarco LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014)..................................................................14

*Babitt v. Citibank, N.A. (In re Vebeliunas)*,
  332 F.3d 85 (2d Cir. 2003)...................................................................15

*Barrows v. Forest Laboratories, Inc.*,
  742 F.2d 54 (2d Cir. 1984)...................................................................12

*Bash v. Sydney Jackson Williams, Jr. Irrevocable Trust*,
  2016 U.S. Dist. LEXIS 52926, 2016 WL 1592445 (N.D. Ohio Apr. 20, 2016)....................15

*Bonded Financial Servs. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) .........................................................2, 15, 17

*In re BR Festivals LLC*,
  2014 Bankr. LEXIS 4915 (Bankr.N.D. Cal. Dec. 1, 2014) ..................................21

*Breeden v. Cowen & Co. (In re Bennett Funding Group)*,
  275 B.R. 447 (Bankr. N.D.N.Y. 2001) ....................................................13

*Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017).................................................................15

*Champlain Enter., Inc. v. U.S.*,
  945 F. Supp. 468 (N.D.N.Y. 1996).........................................................12

*Chemical Bank v. Shearson Lehman Bros., Inc.*,
  1992 WL 183760 (S.D.N.Y. July 21, 1992) ..................................................3

*Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble,
  Wagner Heine, Underberg, Manley, Myerson & Casey*,
  130 F.3d 52 (2d Cir. 1997)................................................................18

*CIT Group/Factoring Mfrs. Hanover, Inc. v. Srour (In re Srour)*,
  138 B.R. 413 (Bankr. S.D.N.Y. 1992) .....................................................14

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,
  333 B.R. 205 (Bankr. S.D.N.Y. 2005) .....................................................20

*Foman v. Davis*,
  371 U.S. 178 (1962)........................................................................12

*Gibbons v. Stemcor USA (In re B.S. Livingston & Co., Inc.)*,
    186 B.R. 841 (D. N.J. 1995) ...................................................................................18

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
    452 B.R. 451 (Bankr. S.D.N.Y. 2011) ....................................................................18

*Henkel v. Bros. Mill, Ltd. (In re Eddy)*,
    2015 Bankr. LEXIS 1113, 2015 WL 1585513 (Bankr. M.D. Fla. Apr. 3, 2015) ...................15

*Hessco Komsala v. Imhof (In re Hessco)*,
    295 B.R. 372 (Bank. 9th Cir. 2003) .........................................................................19

*Mastro v. Rigby (In re Mastro)*,
    2011 Bankr. LEXIS 891 (Bankr. 9th Cir. March 1, 2011) ....................................................19

*Menotte v. Brown (In re Brown)*,
    303 F.3d 1261 (11 Cir. 2002) ...................................................................................22

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012) .....................................................................................12

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
    557 B.R. 89 (Bankr. 2016) ........................................................................................15

*Picard v. Ida Fishman Rev. Trust*,
    773 F.3d 411 (2d Cir. 2014) .......................................................................................9

*Picard v. Legacy Capital Ltd (In re Bernard L. Madoff Inv. Sec. LLC)*,
    548 B.R. 13 (Bankr. S.D.N.Y. 2016) ......................................................................20

*Rescuecom Corp. v. Khafaga (In re Khafaga)*,
    431 B.R. 329 (Bankr. E.D.N.Y. 2010) ....................................................................14

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland
Holding Corp.)*,
    2010 Bankr. LEXIS 3194 (Bankr. S.D.N.Y. Sept. 16, 2010) ...................................13

*Tannerite Sports, LLC v. NBC Universal News Grp.*,
    864 F.3d 236 (2d Cir. 2017) .....................................................................................15

**Statutes**

11 U.S.C. § 502(d) ...........................................................................................1, 5, 7, 19

11 U.S.C. § 541 .......................................................................................................22

11 U.S.C. § 546 .....................................................................................................2, 12

11 U.S.C. § 546(e) ..................................................................................................8, 9

11 U.S.C. § 548(a)(1)(A) ................................................................................................................8

11 U.S.C. § 550 ................................................................................................................8, 9, 22

11 U.S.C. § 550(a) ..........................................................................................................................17

11 U.S.C. § 550(a)(1) ..................................................................................................................2, 3

11 U.S.C. § 550(b) ...................................................................................................................5, 20, 21

11 U.S.C. § 550(b)(1) ...............................................................................................................4, 20

Fla. Stat. § 736.101 ....................................................................................................................4

## Other Authorities

17 C.F.R. § 300.104 ....................................................................................................................16

Fed. R. Civ. P. 12 ..........................................................................................................................9

Fed. R. Civ. P. 12(b)(6) ................................................................................................................12

Fed. R. Civ. P. 15(a) ....................................................................................................................12

Fed. R. Civ. P. 15(c) ..............................................................................................................2, 13, 14

Fed. R. Civ. P. 15(c)(1)(B) ...........................................................................................................13

Fed. R. Civ. P. 25 ..........................................................................................................................19

Restatement of Trusts §265 ...........................................................................................................3

The estate of David Markin (the "Markin Estate"), through its duly appointed Personal Representative, hereby opposes the cross motion for leave to file a second amended complaint (the "Cross Motion") filed by Irving H. Picard as Trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and replies in further support of the Markin Estate's Motion to Dismiss the First Amended Complaint and Compel Payment of Claim (the "Markin Estate's Motion")[1] to the Trustee's opposition to the Markin Estate Motion.

## PRELIMINARY STATEMENT

Seven years ago, the Trustee filed his initial complaint (the "Complaint") against the David R. Markin Charitable Remainder Unitrust #1 (CRUT#1) as initial transferee of alleged fraudulent transfers from CRUT#1's BLMIS account, and David Markin as a subsequent transferee of transfers from CRUT#1.  On the basis of the allegations in the original complaint, the Trustee has withheld and continues to withhold all distributions on account of Mr. Markin's personal BLMIS account pursuant to section 502(d) of the Bankruptcy Code from Mr. Markin and now his widow and children.  The Complaint was amended on January 25, 2012 solely to add a claim to avoid obligations (the "Amended Complaint").[2]  On several occasions, beginning in February 2010 through May 2017 and after his death in May 2013, Mr. Markin and the Markin Estate provided the Trustee with all of the relevant documents regarding CRUT#1 and engaged in negotiations with several members of the Trustee's legal team to resolve the Trustee's subsequent transferee claims against Mr. Markin in order to free up the distributions on his personal BLMIS account.

By the Cross Motion, the Trustee seeks leave to file a second amended complaint to name David Markin as an initial transferee for the first time on three new theories based on facts that

---

[1] The Markin Estate incorporates by reference herein the facts and arguments of the Markin Estate's Motion.
[2] The counts to avoid obligations were dismissed by order of the Court on July 16, 2015.

were available to the Trustee at all times since the filing of the Complaint but never before incorporated into his complaints or discussions. The Trustee's Cross Motion should not be granted because the proposed second amended complaint cannot survive a motion to dismiss on multiple grounds.

First, the new claims were filed outside the two-year limitations period in section 546 of the Bankruptcy Code. Because they are new claims based on entirely new factual allegations, not the same transaction or conduct at issue in the Complaint, the proposed amended complaint cannot be rescued from a limitations bar by the relation back provisions of Rule 15(c). Moreover, even if the complaint somehow survived the limitations bar, it would be subject to dismissal for failure to state a valid claim for relief. The new claims against Mr. Markin as an initial transferee in the proposed amended complaint derive from the misapplication of (a) the "dominion and control" test first announced in *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988); (b) the category of initial transferees "for whose benefit" a transfer was made as set forth in section 550(a)(1); and (c) basic trust law.

The "dominion and control" test is widely used to determine transferee status and to distinguish that status from individuals and entities through which the money or property at issue in the fraudulent transfer merely passes. The focus of the test is on the transfers themselves. However, the Trustee is using the "dominion and control" test for a determination of insider status to eliminate the distinction between CRUT#1 and Mr. Markin, essentially as alter egos. To that end, the Trustee's focus in the newly added factual recitation of the proposed amended complaint is on the historical relationship between Mr. Markin and CRUT#1 selectively taken from the CRUT#1 related documents. Even if the alter ego theory applied to trusts under Florida law, which this Court could not conclusively establish, the facts of the case, including the

express terms of the CRUT#1 agreement, the existence of an independent trustee, the regulatory

scheme which constrained the Trustee's distribution of CRUT#1 assets, and the Internal Revenue

Service determination, would not support the application of an alter ego theory in any event.

Accordingly, the "dominion and control" test as used by the Trustee fails to transform Mr.

Markin into an initial transferee.

The "for the benefit" category as applied by the Trustee is equally unavailing in that

regard.  Persons who are strictly liable as persons for whose benefit the transfer was made under

section 550(a)(1) cannot be recipients of the transfers based upon the express language of the

provision.  They are typically guarantors or co-obligors who receive a benefit of the transfer in

the satisfaction of debt, for example, but not the transferred money or property.  The Trustee

blurs this distinction, he alleges that Mr. Markin is both the recipient of the transfers and the

person for whose benefit the transfers were made.  This Court has previously dismissed the

Trustee's exact contention in this case in its Memorandum Decision Regarding Omnibus

Motions To Dismiss dated June 2, 2015.

Finally, Mr. Markin is not liable under principles of trust law to hold Mr. Markin

personally liable by virtue of his title to the CRUT#1 assets as one of the trustees.  Under the

Restatement of Trusts, §265, where a liability to third persons is imposed upon a trustee, not as a

result of a contract made or a tort committed by the trustee, but because the trustee is the holder

of the title to property, as the Trustee here contends, a trustee as holder of the title to the trust

property is subject to personal liability only to the extent to which the trust estate is sufficient to

indemnify the trustee. The trustees' title to trust assets confers standing to bring a lawsuit (*See

Chemical Bank v. Shearson Lehman Bros., Inc.*, No. 91 Civ. 4915 (LLM), 1992 WL 183760

(S.D.N.Y. July 21, 1992) and the option to be named in their fiduciary capacity. *See* Florida

Statutes 736.101 ("A claim based on a contract entered into by a trustee in the trustee's fiduciary capacity, on an obligation arising from ownership or control of trust property, or on a tort committed in the course of administering a trust may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim.") However, the trustee's representative capacity does not automatically include personal liability. In this case, the Trustee has not alleged that the trustees acted in any other manner than a representative or fiduciary capacity. Although naming the trustee is a way of reaching the trust assets, in this case, CRUT#1 has no assets.

For all these reasons, the amendment of the complaint would be futile to hold Mr. Markin or any successor liable as an initial transferee and the Cross Motion should be denied.

The Cross Motion should also be denied because amendment of the complaint to introduce new facts and theories of liabilities after seven years of litigation, negotiation and preparation based on the posture of the Complaint and Amended Complaint, would impose a substantial burden on the Markin Estate. Restarting the process at this point would invariably delay the resolution of the disputes, which only favors the Trustee who is holding hostage seven years of distributions on a claim now held by the Markin Estate. It appears that the Trustee's new theories have only been advanced after so many years because the Trustee has no credible response to the Markin Estate's subsequent transferee defense under section 550(b)(1) of the Bankruptcy Code.

As set forth in the Markin Estate's Motion, dismissal of the Amended Complaint is warranted. The procedural issues can be resolved by substituting the Markin Estate for Mr. Markin, named in connection with Count 8 of the Amended Complaint, as the holder of the Related Account Customer Claim. The Markin Estate is the successor in interest to claim. The

Markin Estate has asked the Trustee to stipulate to substitution of the Markin estate for David Markin in that capacity and has filed a motion for substitution.

As a substantive matter, the CRUT#1 agreement required certain distributions to David Markin based upon, among other things, the value of the assets of CRUT#1 and the requirements of the Internal Revenue Code of 1986, as amended. On the termination of CRUT#1, David Markin relinquished his lifetime beneficial interest in CRUT#1 in exchange for a distribution from CRUT#1 in accordance with the requirements of the IRC and the Internal Revenue Service ("IRS"). The value of exchange was vetted and approved by the IRS after several years of investigation and requested changes. The final determination was made on notice to and without objection by the independent trustee and the beneficiaries. Thus, "value" within the meaning of Section 550(b) was provided by David Markin to CRUT #1 as required by the Bankruptcy Code and provides a complete defense to the Trustee's claim. It is undisputed that Mr. Markin was an innocent customer of BLMIS with no knowledge of the fraud or the avoidability of the transfers.

Finally, dismissal of the claims in the Amended Complaint against Mr. Markin will also eliminate the Trustee's alleged right under section 502(d) of the Bankruptcy Code to withhold distributions to the Markin Estate. The distributions on the Markin Estate Claim should be authorized and transmitted without further delay.

## FACTS

### A.    The Original and Amended Complaints Unequivocally Name David Markin As the Subsequent Transferee

On December 4, 2009, the Trustee filed his original Complaint against David Markin, SouthPac International Trust Ltd and three trusts--the Southpac Trust, CRUT#1 and CRUT#2. A copy of the original complaint is annexed to the Declaration of Carole Neville as Exhibit A. Although the Trustee lumps the BLMIS accounts and the account holder trusts together in

- 5 -

numerous paragraphs of the Complaint, the Trustee is careful to distinguish Mr. Markin, the

alleged recipient of transfers from the trusts, as a subsequent transferee in, among other

allegations of the Complaint, the definition of the parties as follows: "Upon information and

belief, Defendant David R. Markin ("'Subsequent Transferee Defendant'") received subsequent

transfers of the avoidable transfers referenced above." (Comp.¶2). In addition, in paragraphs 42

and 43 of the Complaint, the Trustee unequivocally labels transfers to Mr. Markin as a

"subsequent transfers" as follows:

> 42. On information and belief, some or all of the Transfers were subsequently
> transferred by Defendants to Subsequent Transferee Defendant David R. Markin
> (collectively, the "Subsequent Transfers").

> 43. The Subsequent Transfers, or the value thereof, are recoverable from
> Subsequent Transferee Defendant David R. Markin pursuant to §550(a) of the
> Bankruptcy Code."

Finally, the Trustee seeks to avoid the transfers to Subsequent Transferee Defendant David

Markin in a separate count (Count 7) to avoid subsequent transfers:

> 92. On information and belief, the Subsequent Transfers were transferred by
> Defendants David R. Markin 2003 Trust, David Markin Charitable Remainder
> Unitrust #1, and David R. Markin Charitable Remainder Unitrust #2 to
> Subsequent Transferee Defendant.

The Trustee also names David Markin as the holder of another BLMIS account in his

own name, designated as account number 1M0211, and identified by the Trustee as the "Related

Account". *See* Comp. ¶49. The Trustee alleges that in connection with the Related Account, a

customer claim (Claim #002690) was filed, which the Trustee has labeled together with a

duplicate claim, the "Related Account Customer Claims." *See* Comp. ¶50. In the final count of

the Complaint (Count 8), the Trustee sought disallowance of the Related Account Customer

Claim. In that count, the Trustee alleged that "David R. Markin is the absolute owner of the

Related Account or has a beneficial or equitable interest in the Related Account." (Comp. ¶97).

Moreover, the Trustee asserts that "the Defendant David R. Markin is the recipient of Transfers of BLMIS property which are avoidable and recoverable…" and that he has not returned the Transfers to the Trustee.  Accordingly, in Count 8 of the Complaint, the Trustee seeks to disallow the Related Account Customer Claims under section 502(d) of the Bankruptcy Code. This Related Account Customer Claim was filed by Mr. Markin and belongs now to the Markin Estate.  Count 8 is the only count in the Complaint that is not affected by the dismissals or trust termination.

After the filing of the Complaint, Mr. Markin sought to reach a compromise with the Trustee with respect to the BLMIS accounts and in particular, the so-called Related Account Customer Claim in order to free up distributions.  The negotiations began as far back as February 2010, not as the Trustee contends in 2013.  *See* Trustee's Cross Motion, p.4; Neville Declaration ¶3.  In February 2010, Mr. Markin, through his counsel, contacted Mary Bittance, then an attorney in the Cleveland office of Baker Hostetler, to discuss settlement.  Ms. Bittance received copies of the CRUT#1 and #2 documents.  Negotiations continued later that year with Nathan Ware, an attorney in the Cleveland office of Baker Hostetler.  In July 2010, Mr. Markin sent Mr. Ware copies of the following documents, in addition to the CRUT agreements: (a) the final Form 5227 tax return; (b) the ruling from the IRS; (c) direction letter to US Trust Company: (d) a chart summarizing the assets and distribution; (e) copies of cancelled checks to charities totaling $7,195,000. *See* Neville Decl. ¶ 4.  In May 2015, the CRUT#1 documents were re-sent to Tatiana Markel in the New York office with a cover letter explaining Mr. Markin's defense as a subsequent transferee.  Neville Decl. ¶5.

In sum, by the time the Trustee prepared to amend the Complaint in January 2012, the Trustee had received all of the relevant documents with respect to the CRUTs from Mr. Markin

several times in addition to whatever documents he obtained from the BLMIS files. Nevertheless, none of the allegations, the theory of recovery or alignment of the parties quoted and cited to above, changed at all between November 2009 and January 25, 2012, when the Trustee amended the Complaint (the "Amended Complaint"). A copy of the Amended Complaint is attached to the Neville Decl. as Exhibit B. As in the Complaint, Mr. Markin was described consistently as the Subsequent Transferee Defendant and recipient of subsequent transfers from CRUT#1 in the Amended Complaint.

In fact, the Trustee's theories of the case remained the same through years of negotiations after the filing of the Amended Complaint until March 29, 2017, at the conference before the Court on the defendants' request for leave to file a motion for summary judgment. At that point, the Trustee introduced, for the first time, his theory that Mr. Markin should be treated as an initial transferee because he exercised dominion and control over the assets. Although the Trustee had been in possession of the relevant documents for nearly seven years and had received them multiple times over that period, the Trustee opposed summary disposition, in part, on the grounds that the defendants had produced no documents.

## B.    The Procedural History of the Case

Although the Trustee claims this case is in its early stages, in addition to the extensive informal exchange of documents and information described above, this adversary has been the subject of two motions to dismiss and has been reviewed on various issues by several courts. The defendants moved to withdraw the reference of this case to the United States District Court. Once the reference of the case was withdrawn by Judge Rakoff with approximately 80 others, the defendants moved to dismiss the complaint on a number of grounds, including that section 546(e) applied to these cases and protected the withdrawals from the Trustee's complaint except for

claims under section 548(a)(1)(A).   On April 30, 2012, the District Court entered an order

dismissing all of the Trustee's claims pursuant to section 546(e) except those under sections

548(a)(1)(A) and 550 (the "Section 546(e) Order") and his ruling was upheld by the Court of

Appeals for the Second Circuit on December 8, 2014. *Picard v. Ida Fishman Rev. Trust*, 773

F.3d 411 (2d Cir. 2014).   On June 22, 2015, the United States Supreme Court denied the

Trustee's petition for review.

The case was returned to the Bankruptcy Court by Order dated August 4, 2014.  In March

2013, the defendants moved to dismiss the Complaint in the Bankruptcy Court on a number of

grounds.  On June 2, 2015, this Court issued its memorandum decision and on July 16, 2015, this

Court dismissed the counts to avoid obligations with prejudice, dismissed the subsequent

transferee claims without prejudice, and rejected the Trustee's allegations that the defendants

who were alleged to have received the transfers, were also persons who qualified as "persons for

whose benefit the transfers were made" under section 550 of the Bankruptcy Code.

Because of these decisions, as well as the death of Mr. Markin and the termination of

CRUT#1 in 2007, simple substitution of the Markin Estate by stipulation in the caption of the

Amended Complaint as offered by the Trustee was not a satisfactory solution.  Claims against

Mr. Markin, CRUT #2 and the Southpac Trust and its trustees were dismissed pursuant to the

Section 546(e) Order.   Moreover, the CRUTs had been terminated in 2007 and there are no

successor trustees.  As stated above, the only unaffected claim was the claim asserted against Mr.

Markin as the holder of the Related Account Customer Claim.  The Markin Estate is the holder

of the Related Account Claim.

An answer to the Amended Complaint was filed as a protective measure with the caveat

that all of the defendants named as a trust, trustee or subsequent transferee were either no longer

in existence or dismissed from the case. *See* Neville Decl. Exhibit C. It should be noted that most of the allegations of the Amended Complaint relate to the BLMIS fraud. The allegations against the defendants themselves are few.

## C.    The Trustee's Efforts To Amend the Complaint Fail to Meet Rule 12 Requirements

On or about April 21, 2017, the Trustee forwarded a draft of the complaint to the Markin Estate's counsel. The first proposed amended complaint, a copy of which is attached to the Neville Decl. as Exhibit D, eliminated the subsequent transfer count against Mr. Markin entirely and simply equated CRUT#1 and Mr. Markin with the bare allegation that Mr. Markin maintained dominion and control over the transfers. *See* proposed complaint ¶47. The Trustee named the Markin Estate and the Personal Representative[3] as either initial transferees or subsequent transferees in Counts One and Two of the proposed complaint. In paragraph 56, the Trustee identified the Markin Estate as the beneficiary of the Related Account Customer Claim and in Count Three the Trustee sought to disallow its claim as the Trustee had done in both the Complaint and Amended Complaint.

It is quite true that the Markin Estate refused to give its consent to the filing of that complaint primarily on the ground that because the proposed complaint was fatally flawed and deliberately deceptive, amendment would be futile. The Markin Estate declined to give its consent to the amendment in a communication to Trustee's counsel as follows:

> We cannot consent to the filing of your proposed amended complaint for several reasons. First, and most important, you cannot eliminate the CRUT by simply ignoring it. The complaint needs a cause of action that will allow the court to determine whether the CRUT stands as a separate legal entity and the initial transferee or is merged with Markin or otherwise disregarded. As it stands now, the complaint is ripe for a dismissal pursuant to Rule 12(b)(6). Second, and as a related matter, your recitation

---

[3] There are no allegations that the Personal Representative engaged in any wrongdoing. Therefore, the Personal Representative should be named, if at all, only in a representative capacity.

of the facts is contrary to the indisputable facts that there are two trustees and multiple beneficiaries. If your theory is that a legal entity can be disregarded because one of the key managing parties is also one of the beneficiaries you will have expanded the concept of domination and control to an absurdity and every legal entity may be disregarded as an initial transferee. I also think your amendment of the facts of the fraud underscores the frailty of the allegations in the two prior versions of the complaint.

We would also oppose any motion to file this amended complaint on the grounds that (1) it does not state a viable claim for relief; and (2) these facts and theories were known at the time of the original complaint and the amended complaint.

*See* Neville Decl. ¶6.

The Trustee's response after asserting new theories for the first time in seven years was: "We understand that you may not be happy with the complaint, however, a defendant never is. You have the ability to deny the allegations with which you disagree and assert defenses you believe are appropriate." When the Trustee failed to file a motion for leave to amend the Amended Complaint for more than five months, the Markin Estate brought this motion as a successor-in-interest to holder of the Related Account Customer Claims to dismiss the Amended Complaint and compel payment on the claim. This is the single count in both the Complaint against the holder of the Related Account Customer Claim and the Amended Complaint is the only count where a simple substitution of the Markin Estate for Mr. Markin is appropriate.

Six months after the Markin Estate declined to give its consent to the draft amended complaint and only after the Markin Estate filed its Motion, the Trustee filed a second version of a proposed second amended complaint with the Trustee's Cross Motion. *See* Exhibit A to Declaration of Tatiana Markel. The Trustee's proposed second amended complaint depends on a new set of facts selectively taken from the documents that the Trustee has had from Mr. Markin for seven years. Paragraphs 2 through 6 describe the formation and select terms of CRUT#1.

- 11 -

Paragraph 7 through 11 describe the early termination and distribution.  Based on those select facts, the Trustee in Paragraph 80 of the proposed second amended complaint sets out three separate theories for treating Mr. Markin as an initial transferee: "Markin was the initial transferee of each of the Two-Year Transfers to CRUT #1 because (i) the Two-Year Transfers were made for his benefit as Settlor and beneficiary; (ii) Markin directly received the Two-Year Transfers as trustee of CRUT#1; and (iii) Markin exercised dominion and control over CRUT #1 and its assets."  In Count Two of the second amended complaint the Trustee seeks to recover the Two-Year Transfers from the Markin Estate and the Personal Representative (without stating whether he is named in a representative capacity)  and to disallow the Related Account Customer Claim held by the Markin Estate.

Although this version of the proposed amended complaint includes additional factual detail, it is also fundamentally flawed.

## OBJECTION TO CROSS MOTION

### D.    Leave to Amend Should not be Granted

Pursuant to Fed. R. Civ. P. 15(a), a court may deny leave to amend on grounds of futility of amendment or prejudice to the opposing party.  *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile where it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) or is subject to a clear affirmative defense. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012);  *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (prejudice to opposing party is "touchstone" of district court's authority to deny leave to amend); *Champlain Enter., Inc. v. U.S.,* 945 F. Supp. 468, 476 (N.D.N.Y. 1996) (requiring defendant to expend significant additional resources or significantly delay of resolution of the dispute between the plaintiff and the defendant constitutes grounds for denying

- 12 -

leave to amend).  The Trustee's request for leave to file a second amended complaint should be denied on both grounds.

First, the leave to file the second amended complaint should be denied because the Trustee's new claims are time barred pursuant to section 546 of the Bankruptcy Code, which provides that actions to avoid fraudulent transfers must be commenced within later of two years of the entry of the order for relief or one year after the appointment of a trustee if the appointment occurs within the two-year period.  The Trustee contends that the claims are not new and even if they are, they are not barred because they relate back to the date of the original complaint.  Both arguments fail.

In the Complaint (and the Amended Complaint), David Markin was identified as the Subsequent Transferee Defendant and recipient of subsequent transfers from CRUT#1.  In the proposed second amended complaint, the Trustee alleges "Markin was the initial transferee of each of the Two-Year  Transfers to CRUT#1 because (i) the Two-Year Transfers were made for his benefit as Settlor and beneficiary; (ii) Markin directly received the Two-Year Transfers as trustee of CRUT#1; and (iii) Markin exercised dominion and control over CRUT#1 and its assets." *See* Comp. ¶80.  The Markin Estate and the Personal Representative are named as the subsequent transferees from Mr. Markin. ¶¶85-56.  Although some of the same words may appear in each version of the complaint, the claims in the proposed amended complaint are not by any test the same claims.  The clearest evidence that the claims are not the same is that, as the predicate for the new claims, the Trustee has loaded the proposed amended complaint with allegations purportedly evidencing Mr. Markin's control of CRUT#1 assets--none of which were in either the Complaint or the Amended Complaint.

- 13 -

The Trustee cannot rely on the relation back provision of Rule 15(c) to save the proposed amended complaint because the new claims do not arise out of the same conduct, transaction or occurrence. *See* Rule 15(c)(1)(B); *Breeden v. Cowen & Co. (In re Bennett Funding Group)*, 275 B.R. 447 (Bankr. N.D.N.Y. 2001)(relation back is not allowed if the plaintiff relies on entirely different conduct or different transactions or occurrences"); *Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.),* 2010 Bankr. LEXIS 3194, Case No. 06-10064 (SMB), Adv. Proc. No. 08-1023 (Bankr. S.D.N.Y. Sept. 16, 2010) (new claims involved different time frames and conduct); *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 431 B.R. 329 (Bankr. E.D.N.Y. 2010)(The factual discrepancies between the original and amended claims, which included different time frames, different alleged conduct, and different operative facts, precluded a finding that the amended claim related back under Fed. R. Civ. P. 15(c)); *CIT Group/Factoring Mfrs. Hanover, Inc. v. Srour (In re Srour)*, 138 B.R. 413, 418 (Bankr. S.D.N.Y. 1992) (claims based on new facts do not relate back).

The new allegations in the proposed amended complaint cover completely different occurrences and time periods from the creation of CRUT#1 in 1996, the establishment of the BLMIS CRUT#1 account in 1997, various amendments to CRUT#1 from 1997 to 2004; communications with the IRS beginning in 2004; and the termination of CRUT#1 before the distributions occurred. These facts are not amplifications of the facts alleged in the prior complaint, or statements that provide greater specificity to the general fact situation alleged in the prior complaints. There are no allegations in the Complaint or Amended Complaint by which David Markin could be properly characterized as an initial transferee either because CRUT#1 itself can be disregarded or because David Markin exercised such a degree of control and dominion over the assets that he qualified as an initial transferee

- 14 -

Because the Trustee did not rely on these new transactions in the Complaint or the Amended Complaint, or for that matter, in any of the discussions, neither Mr. Markin nor the Markin Estate had notice of the Trustee's new claims before the limitations period expired. Accordingly, the proposed amended claims should not be permitted to relate back to the original pleading. *Ansarco LLC v. Goodwin*, 756 F.3d 191, *202 (2d Cir. 2014). The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.").

Leave to file the proposed amended complaint should also be denied because the Trustee has failed to state valid claims for relief. *See Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017)(a proposed amendment to a complaint is futile when it could not withstand a motion to dismiss); *Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (affirming denial of motion to amend as futile because amendment would not cure the defects). In this case, the Trustee has misapplied the "dominion and control" test so that a transfer to CRUT#1 could be deemed a transfer to Mr. Markin as an initial transferee. In effect, the Trustee has labeled what amounts to an alter ego theory as the "dominion and control" test.[4]

---

[4] The Trustee was aware that this Court might be reluctant to accept an alter ego theory if the Trustee properly named the theory. *See Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89 (Bankr. 2016). In that case, the Court surveyed Florida law and reported as follows:

> The question whether the 'alter ego theory' of piercing applies to trusts is a matter of state law." *Babitt v. Citibank, N.A. (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003). The parties have not discussed or briefed the question of whether Florida law would apply alter ego liability to pierce the veil of a trust, and the Court's research indicates that Florida law is unsettled. In *Henkel v. Bros. Mill, Ltd. (In re Eddy)*, No. 6:13—ap—00112—CCJ, 2015 Bankr. LEXIS 1113, 2015 WL 1585513 (Bankr. M.D. Fla. Apr. 3, 2015), the chapter 7 trustee brought an action seeking, inter alia, a declaration that certain property of an irrevocable trust was the property of the individual debtor, and hence, the debtor's estate, because the trust was the debtor's alter ego. 2015 Bankr. LEXIS 1113, [WL] at *4. The court rejected the application of the alter ego doctrine. While noting that several other courts had accepted the doctrine's application to trusts, *see id*. n.30 (citing cases), the court concluded that "[b]ecause the Florida Trust Code (and Florida courts) are so protective of the sanctity of trusts, the Court doubts that the alter ego doctrine applies to irrevocable trusts and is unwilling to extend the doctrine under the circumstances presented in this case." *Id*. The court buttressed its conclusion

However, the "dominion and control" test, originating in *Bonded Financial,* is a test for determining actual transferee status as opposed a conduit status in the context of a defense to a fraudulent transfer. It is not a doctrine used to disregard the legal status of a valid trust to hold a beneficiary liable for the trust's obligations. For purposes of determining transferee status, the dominion and control focuses solely on the use of the transferred money or other property. In contrast, the Trustee is focused on Mr. Markin's alleged control of the CRUT#1 assets over a period of ten years. In sum, the "dominion and control" test is inapplicable for the Trustee's purposes.

Furthermore, the facts of this case do not support treating Mr. Markin as one of the trustees and the CRUT as one of the recipients either through an alter ego theory or merger doctrine.[5] To make his case, the Trustee drew selectively from the CRUT#1 agreement and historical facts. In his recitation of the facts, the Trustee simply ignores the fact that CRUT had an independent trustee, who was required to sign off on the distribution scheme, among other responsibilities. The Trustee also ignores the fact that the distributions from the CRUT were constrained by statute and regulation, as well as the express terms of the CRUT#1 agreement.

---

pointing to provisions of the Florida Trust Code that limit a settlor's creditors' recovery against an irrevocable trust only to the "maximum amount that can be distributed to or for the settlor's benefit." *Id.* (quoting Fla. Stat. § 736.0505(1)(b) (2015)). An Ohio District Court subsequently adopted Henkel's reasoning and concluded that Florida law would not extend the alter ego doctrine to irrevocable trusts. *Bash v. Sydney Jackson Williams, Jr. Irrevocable Trust*, No. 5:16 CV 257, 2016 U.S. Dist. LEXIS 52926, 2016 WL 1592445, at *5 (N.D. Ohio Apr. 20, 2016).

[5] The SIPA Rules also require that the Trustee to treat CRUT#1 as separate from the settlor, trustee or beneficiary. *See* Rule 300.104 "Trust accounts":

(a) A trust account held with a member shall be deemed a "qualifying trust account" if it is held on behalf of a valid and subsisting express trust created by a written instrument. No account held on behalf of a trust that on the filing date existed primarily to obtain or increase protection under the Act shall be deemed to be a qualifying trust account.

(b) A qualifying trust account held with a member shall be deemed held by a separate customer of the member, distinct from the trustee, the testator or his estate, the settlor, or any beneficiary of the trust.

(c) Any account held with a member on behalf of a trust which does not meet the requirements of paragraph (a) of this rule shall be deemed to be an individual account of the settlor of the trust on behalf of which the account is held.

Furthermore, the Trustee disregards the fact that the IRS investigated the termination proposals over several years. In granting its approval, the IRS did not simply rubberstamp the Trustee's proposal for termination. Final approval was on notice to the independent trustee and all the unaffiliated charity recipients. As evidenced by the documents in the Trustee's possession and those turned over to him by Mr. Markin, CRUT#1 had a separate tax identification number, bank account and BLMIS account. CRUT#1 filed its own tax returns.

A full recitation of the facts do not support disregarding CRUT#1 as the initial transferee under any theory of law. Accordingly, the Trustee's claim that Mr. Markin was an initial transferee by virtue of his dominion and control of CRUT#1 fails as purely factual matter.

**E.    The Trustee's "for the benefit" Argument is Ill Conceived**

Similarly, the Trustee's claim that Mr. Markin was an initial transferee because he received the benefit of the transfers would not survive a motion to dismiss. The Trustee devotes more than four pages to his theory that the "for the benefit" designation in section 550(a) of the Bankruptcy Code applies to Mr. Markin and makes him strictly liable for the transfers. *See* Trustee Cross Motion, pp.17-19. This Court has already rejected the argument in connection with this case and others for the reason that the Trustee blurs the distinction in the Bankruptcy Code between a transferee who received the transfer and a person who received a direct and commensurate benefit from the transfer, but not the transfer itself. Here, the Trustee claims the benefit that Mr. Markin received was the transfer.

The Trustee also attempted in a single sentience in both the Complaint and the Amended Complaint to confer strict liability on the Subsequent Transferee Defendant to the extent that the transfers were made for his benefit pursuant to section 550(a). However, this Court disposed of that theory in its Memorandum Decision dated June 2, 2015 [ ECF#39] Adversary Docket. At

that time the Court rejected the Trustee's interpretation of persons "for whose benefit such transfer was made" based upon the clear statutory language and case law including *Bonded Financial*, 838 F2d. at 895 ("The structure of the statute separates initial transferees and beneficiaries, on the one hand, from "'immediate or mediate transferee[s]'", on the other. The implication is that the "entity for whose benefit" is different from a transferee, "'immediate'" or "'otherwise.'"); *see also Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997) ("we know that the "'entity for whose benefit'" phrase does not simply reference the next pair of hand; it references the entities that benefit as guarantors or debtor, or otherwise without ever holding the funds.").

This Court dismissed the subsequent transferee claims and the alternate formulation "for the benefit of" as follows:

> The Trustee's allegations ignore these distinctions. The defendants are either transferees or persons for whose benefit the transfers were made; they can't be both. Furthermore, they are either subsequent transferees or initial transferees. The complaints do not allege facts showing that the transfers were made for the benefit of any defendant; instead, they allege the initial transfers and assert, in conclusory fashion, that the subsequent transferee defendants received subsequent transfers.

*Id.* at 53.

The cases relied on by the Trustee to hold Mr. Markin strictly liable both as a transferee and a person who benefits from the transfers actually recognize the two categories are mutually exclusive. *See e.g. Gibbons v. Stemcor USA (In re B.S. Livingston & Co., Inc.),* 186 B.R. 841, 865 (D. N.J. 1995) ("transferee and entities who benefit from the transfer are distinct."); *Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451 (Bankr. S.D.N.Y. 2011)(requiring the plaintiff to show the defendant received a benefit that is direct, ascertainable and quantifiable,

commensurate with the transfer, but not the transfer itself).  The Trustee's continuing confusion about the separate categories is evident in his claim that the benefit Mr. Markin received was a lump sum payment.

The Trustee's reliance on *Hessco Komsala v. Imhof (In re Hessco),* 295 B.R. 372 (Bank. 9th Cir. 2003) is also seriously misplaced.  In that case, the trustee held the Imhofs liable on the "for the benefit theory" for transfers made to the their charitable remainder unit trust in a sales leaseback transaction with the debtor because at some point down the line the Imhofs would receive payments from the trust.  Mr. Imhof also sat on the board of the debtor company. However, there was no evidence of any transfers to the Imhofs. This case must have turned on Mr. Imhof's insider knowledge and/or the consideration exchanged in the sale leaseback with the debtor.  If applied strictly n its terms any person name as a beneficiary of a trust could be held personally liable for deposits into the trust that might have been made fraudulently even if they never received a distribution. In fact, Imhof has not been widely applied and is not even followed by the Ninth Circuit Bankruptcy Appellate Panel. *See Mastro v. Rigby (In re Mastro)*, 2011 Bankr. LEXIS 891, BAP No. WW-10-1099-JuMkH, (Bankr. 9th Cir. March 1, 2011) (declining to follow *Imhof*  to hold the sole member of a limited liability company liable for post-petition transfers to the company).

The Trustee's belated effort to save claims against David Markin, the CRUT#1, the Markin Estate and/or the Personal Representative in order to withhold distributions on the Related Account Customer Claim from the Markin family should be denied.

## F.    The Markin Estate's Motion to Dismiss Should be Granted

The Trustee has objected to the Markin Estate's Motion primarily on procedural grounds. The Trustee argues that the Markin Estate is not a party because Mr. Markin was dismissed as a

subsequent transferee.  However, the Markin Estate can be substituted as a party on order of this Court pursuant to Rule 25 as the successor-in-interest to David Markin as the holder of the Related Account Customer Claim.  Mr. Markin is named as a defendant for purposes of  Count 8 and the distributions on that account have been withheld pursuant to section 502(d) of the Bankruptcy Code until Mr. Markin or his successor turns over the alleged transfers.  The Markin Estate has requested that the Trustee consent to that limited relief by stipulation and has filed a motion for substitution.

The answer, which was filed as protected measure while noting that most of the defendants had been dismissed or dissolved, can be disregarded. Other than Mr. Markin as the holder of the Related Account Customer Claim, all of the answering parties were either dismissed, terminated or deceased.  Alternatively, the Motion may be deemed a motion for summary judgment.

The Trustee does not have a credible substantive argument that Mr. Markin is not protected under section 550(b) as a subsequent transferee..  First, the Trustee's substantive argument against the Motion depends upon a selective and inaccurate recitation of the facts.  The Trustee ignores both the independent trustee, who signed off on the trust termination, and the regulatory scheme which constrained the CRUT trustees' distributions. Second, the Trustee deliberately misconstrues both the Markin Estate's arguments with respect to value and the law interpreting the "value" requirement under section 550(b).  Finally, the Trustee relies on snippets from cases that are not remotely relevant to the section 550(b) defense to make a case for denying the relief requested by the Markin Estate.

The Markin Estate relies on the law in this jurisdiction that value in the context of section 550(b)(1) need not be reasonable or fair equivalent.  Assuming, as is the case here, that there is

no knowledge of the fraud or voidability of the transfer on the part of the transferee, "value" within the meaning of §550(b)(1) is consideration sufficient to support a simple contract between the transferee and its transferor.  As the cases in this jurisdiction apply the test, it is a simple measurement, not an analysis of contract consideration.  *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005)(applying the test to a claims purchase). *Picard v. Legacy Capital Ltd (In re Bernard L. Madoff Inv. Sec. LLC),* 548 B.R. 13 (Bankr. S.D.N.Y. 2016)(applying the test to accounting services).  In other words, the subsequent transferee must give up something to its transferor, but the amount need not be commensurate with the transfer received.  The cases which deal with rights of trust beneficiary to sue on a contract or for a breach of fiduciary duty cited by the Trustee are not relevant to the assessment of value in the context of a section 550(b) defense.

In his effort to make a case for Mr. Markin's control over the CRUT assets, the Trustee completely ignores the facts that the transaction between Mr. Markin and the CRUT#1 was prescribed by statute and regulations, consented to by the independent trustee and the charitable beneficiaries, and thoroughly vetted by the IRS.  After making the changes required by the IRS to terminate the CRUT, Mr. Markin gave up his lifetime interest in CRUT#1 in a fair exchange for a distribution equal to the actuarial value of his relinquished income interest.  The IRS ruling letter, a copy of which the Trustee has had since February 2010, states: "In this case, the income beneficiary is not expected to receive more than he would during the full term of the trust under the above-described methodology for valuing his interest in a charitable remainder trust with a net income make-up feature."  The termination of CRUT#1, as described above, provided additional value to the charities on an accelerated time frame.  As a legal and factual matter, "value" within the meaning of Section 550(b) was provided.

Instead of responding to the facts of the case or the applicable law, the Trustee relies on two cases that are completely distinguishable. In *BR Festivals, LLC v. Uptown Theatre LLC (In re BR Festivals LLC,* No.14-10175 (AJ), 2014 Bankr. LEXIS 4915 (Bankr.N.D. Cal. Dec. 1, 2014) the court concluded that since the insider did not act in good faith and without knowledge of the voidability of transfer, it did not matter whether the recipient gave value. Nevertheless, the court also concluded that the transferee (Uptown Theater) actually gave up nothing in exchange for the $500,000 payment it received for an option to buy the theater since there was no opportunity for Uptown Theater to sell the theater to another buyer during the unreasonably short option period.

There is no allegation in this case that Mr. Markin knew that BLMIS was operated as a fraud and Mr. Markin was not an insider of BLMIS with knowledge of the voidability of the transfer. In contrast to the insider in BR Festivals, Mr. Markin has a right by statute and agreement to receipt of payment over his lifetime which he gave up in exchange for discounted present value of that interest.

Similarly, *Menotte v. Brown (In re Brown),* 303 F.3d 1261 (11 Cir. 2002), relied upon by the Trusee, is not informative in this context because the case has absolutely nothing to do with a defense to a fraudulent transfer under section 550 of the Bankruptcy Code. In the *Brown* case the CRUT beneficiary was a debtor in her own chapter 7 case, who was seeking to exclude her interest in the trust from the bankruptcy estate based on spendthrift trust provision in her trust agreement. The case deals with property of the estate under section 541 of the Bankruptcy Code, not a defense to a transfer under section 550. The Markin Estate is not seeking to interpose a defense based upon a spendthrift trust provision to shield the income distribution from the claims of creditors. Finally, the Trustee's ridiculously expanded conclusion that "where one party had

control of all the assets and all of the transfers, the law does away with trust formalities" (Motion to Amend p. 22), is refuted by the *Brown* case itself which holds that the trust itself remains valid even if the spendthrift provision is not binding on the creditors.

In sum, under the existing facts and circumstances, dismissal of the Amended Complaint is appropriate and long overdue.  Upon dismissal, the Trustee should be required to immediately make the distributions to David Markin's family on account of the Related Account Customer Claim.

## CONCLUSION

For the reasons stated above, the Court should (a) deny the Trustee's Cross Motion, (b) grant the Markin Estate's Motion and (c) authorize immediate payment of the distributions.

Dated: October 25, 2017
     New York, New York

Respectfully submitted,

DENTONS US LLP

By: */s/ Carole Neville*
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile: (212) 768-6800
carole.neville@dentons.com

*Attorneys for the David R. Markin Estate*

- 23 -