# **EXHIBIT D**

Trustee's Proposed Amended Complaint

*B&H DRAFT 4/21/17*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Keith R. Murphy
Tatiana Markel

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>ESTATE OF DAVID R. MARKIN, MITCHELL D. SCHEPPS, as personal representative of the Estate of David Markin, and DAVID R. MARKIN CHARITABLE REMAINDER UNITRUST #1,<br><br>Defendants. | Adv. Pro. No. 10-05224 (SMB) |

*B&H DRAFT 4/21/17*

**SECOND AMENDED COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"),[1] and the consolidated estate of Bernard L. Madoff ("Madoff"), individually, by and through his undersigned counsel, for his second amended complaint (the "Complaint"), states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its approximately 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the Ponzi scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

2. Defendants were beneficiaries of this Ponzi scheme. From December 11, 2006 to December 11, 2008, Defendant David Markin Charitable Remainder Unitrust #1 ("CRUT") and Decedent David R. Markin ("Decedent"), individually and in his capacity as the trustee of the CRUT, received $16,107,533 in avoidable and recoverable transfers. The Trustee's investigation has revealed that $12,107,533 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, the Decedent and the CRUT received $12,107,533 of other people's money, all within two years of BLMIS's collapse. Because of Decedent's death, defendants Estate of David R. Markin ("Markin Estate") and Mitchell D. Schepps, as personal representative

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

of the Markin Estate ("Personal Representative"), are the proper defendants to substitute the Decedent in this adversary proceeding for purposes of avoiding and recovering transfers Decedent received from BLMIS.

3. This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), and other applicable law. The Trustee seeks to avoid and recover fraudulent transfers of fictitious profits that BLMIS made to or for the benefit of Defendants so that customer property may be equitably distributed to the allowed claims of BLMIS's defrauded customers.

## JURISDICTION AND VENUE

4. This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and section 78eee(b)(2)(A) and (b)(4).

5. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders or judgment by this Court if it is determined that consent of the parties is required for this Court to enter final orders or judgment consistent with Article III of the U.S. Constitution.

6. Venue in this judicial district is proper under 28 U.S.C. § 1409.

*B&H DRAFT 4/21/17*

## DEFENDANTS

7. The CRUT is a trust organized under the laws of the State of Florida. Decedent was the settlor, trustee, and beneficiary of the CRUT. Decedent maintained an account at BLMIS in the name of the CRUT, bearing account number 1M0091 (the "Account"). Decedent terminated the Trust in March 2007 and thereafter withdrew the balance of the Account. Decedent directed a portion of the proceeds from the Account to be transferred to various charities and a portion to himself.

8. Decedent died on May 30, 2013, and the Markin Estate is being administered by the Circuit Court for Palm Beach County, Florida under File Number 502013CP002790.

9. Mitchell D. Schepps was appointed as personal representative of the Markin Estate on June 13, 2013. Mr. Schepps maintains an address for service of process in West Palm Beach, Florida.

## BACKGROUND, THE TRUSTEE AND STANDING

10. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the SEC commenced the District Court Proceeding.

11. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

12. Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

4

    a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    c. removed the case to this Court pursuant to SIPA § 78eee(b)(4).

  13. By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

  14. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

  15. At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

  16. At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme. DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

17. At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

18. On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi ("Ms. Crupi"), George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

19. As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

20. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

21. The Trustee has standing to bring the avoidance and recovery claims in this matter under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including

6

11 U.S.C. §§ 323(b) and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers under Bankruptcy Code sections 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## THE PONZI SCHEME

22.     In compliance with 15 U.S.C. § 78o(b)(1) and SEC Rule 15B1-3, and regardless of its business form, BLMIS operated as a single broker-dealer from 1960 through 2008.  Public records obtained from the Central Registration Depository of the Financial Industry Regulatory Authority Inc. reflect BLMIS's continual registration as a securities broker-dealer from January 1, 1960 through December 31, 2008.  At all relevant times, BLMIS was assigned CRD No. 2625.  SIPC's Membership Management System database ("MMS") also reflects BLMIS's registration with the Securities and Exchange Commission ("SEC") as a securities broker-dealer from January 19, 1960 through December 31, 2008.  On December 30, 1970, BLMIS became a member of SIPC and continued its membership without any change in status until the Filing Date.  SIPC membership is contingent on registration of the broker-dealer with the SEC.

23.     For most of its existence, BLMIS's principal place of business was 885 Third Avenue in New York City, where Madoff operated three principal business units: a proprietary trading desk, a broker dealer operation, and an investment advisory business (the "IA Business").

24.     Beginning in the 1990s, Madoff outwardly ascribed the consistent investment success of BLMIS's IA Business to the "split-strike conversion" ("SSC") investment strategy. Madoff claimed his strategy would produce steady returns without the volatility in the stock market or other high return investment strategies. Madoff generally indicated that investors' funds would be invested in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100 Index"), which is a collection of the 100 largest publicly traded companies, as determined by Standard & Poor's Index Committee. The basket of stocks was designed to

correlate to the movement of the S&P 100 Index. The second part of the SSC strategy involved purporting to sell call options and buy put options on the S&P 100 Index; this is commonly referred to as a "collar." Madoff purported to purchase and sell option contracts to control the downside risk of price changes in the basket of stocks correlated to the performance of the S&P 100 Index. All options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC"). The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

25. BLMIS commingled all of the funds received from IA Business investors in a single BLMIS account maintained at JPMorgan Chase Bank.

26. Because Madoff claimed that he would carefully time purchases and sales to maximize value, customer funds would intermittently be out of the market. During those times, Madoff claimed that the funds were invested in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills. There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at the Depository Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have traded securities. There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

27. At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements.

28. Madoff operated the IA Business as a Ponzi scheme. The money received from IA Business customers was used primarily to make distributions to, or payments for, other customers. The falsified trades reflected in monthly account statements made it appear that the

8

IA Business accounts included substantial gains on customers' principal investments. The Ponzi scheme collapsed in December 2008, when the requests for redemptions overwhelmed the flow of new investments with BLMIS's IA Business.

29.  Since at least 1983, BLMIS financial reports filed with the SEC fraudulently omitted the existence of the billions of dollars of customer funds held by BLMIS.

30.  BLMIS did not register as an investment adviser with the SEC until August 2006. At that time, BLMIS filed with the SEC a Form ADV (Uniform Application for Investment Adviser Registration) representing, among other things, that BLMIS had 23 customer accounts and assets under management of $11.7 billion. Thereafter, BLMIS filed a Form ADV annually with the SEC, the latest of which was filed in January 2008. It represented that BLMIS had 23 customer accounts with assets under management of $17.1 billion. In fact, at that time BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

31.  Contrary to standard practice in the investment advisory industry, BLMIS did not charge the IA Business customers a fee for investment advisory services. Madoff knew others that solicited investors for BLMIS, or, directly or indirectly, funded customer accounts, charged hundreds of millions of dollars for investment advisory services attributed to BLMIS. Instead of investment advisory fees, BLMIS purported to accept commissions for the purported trades, as reflected in the fraudulent IA Business customer statements.

32.  BLMIS's auditor was Friehling & Horowitz, CPA, P.C. ("Friehling & Horowitz"), a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an administrative assistant and one was a semi-retired accountant living in Florida. On or about November 3, 2009, David Friehling, the sole proprietor of Friehling &

Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for Madoff and others.

33.   At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

### THE TRANSFERS

34.   According to BLMIS's records, the Account was maintained with BLMIS, as set forth on Exhibit A.  For the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.

35.   The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and Defendants sent or caused to be sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York.  Between the date the Account was opened and the Filing Date, Defendants made deposits or caused deposits to be made into the Account at BLMIS through checks and/or wire transfers to the BLMIS Bank Account for the purpose of BLMIS investing the funds.

36.   During the two years prior to the Filing Date, BLMIS made transfers totaling approximately $12,107,533 in fictitious profits from the Ponzi scheme (collectively, the "Two Year Transfers") to the CRUT and to Decedent.  The Two Year Transfers constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money.  The Two Year Transfers are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

*B&H DRAFT 4/21/17*

37. Upon information and belief, of the Two Year Transfers, $9,723,305.35 was transferred to Decedent personally, as follows: (i) $9,475,604.32 on or around March 30, 2007; (ii) 198,552.97 on or around April 11, 2007; and $49,148.09 on our around June 7, 2007 (the "Markin Transfers").

38. The Two Year Transfers are avoidable and recoverable under sections 548(a), 550(a) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3). See Exhibit B, Column 10.

39. The Two Year Transfers, or the value thereof, are recoverable from the Defendants pursuant to SIPA section 78fff-2(c)(3) and section 550(a) of the Bankruptcy Code.

40. The Trustee's discovery and investigation is ongoing, and the Trustee reserves the right to: (i) supplement the information on the transfers; and (ii) seek avoidance and recovery of such transfers.

## CUSTOMER CLAIM FOR RELATED ACCOUNT

41. In addition to the Account, Decedent held another BLMIS account in the name "David R. Markin," bearing BLMIS account number 1M0211 (the "Related Account"). Upon information and belief, the Decedent is the absolute owner of the Related Account and/or has a beneficial or equitable interest in the Related Account.

42. On or about February 17, 2009 a customer claim was filed with the Trustee which the Trustee has designated as Claim # 002690, and on or about June 1, 2009 a duplicate customer claim was filed with the Trustee which the Trustee has designated as Claim # 009175 (the "Related Account Customer Claims"). The Trustee has yet to issue a determination with respect to the Related Account Customer Claims and/or make distributions on the Related Account Customer Claims.

*B&H DRAFT 4/21/17*

## COUNT ONE
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

43. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

44. Each of the Two Year Transfers was made on or within two years before the Filing Date.

45. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

46. Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

47. Each of the Two Year Transfers was transferred to the CRUT, the Decedent as the trustee of the CRUT, and the Decedent individually as the person that maintained dominion and control over the transfers.

48. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants the CRUT, the Markin Estate, and the Personal Representative pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

49. As a result of the foregoing, pursuant to sections 105(a), 502(d), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the CRUT, the Markin Estate, and/or the Personal Representative the  for the benefit of the BLMIS estate; (d) disallowing the Related Account Customer Claims until such time as the Two Year

Transfers are repaid to the Trustee; and (e) awarding any other relief the Court deems just and appropriate.

## COUNT TWO
## RECOVERY OF SUBSEQUENT TRANSFER –11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

50. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

51. Each of the Two Year Transfers is avoidable under section 548(a)(1)(A) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

52. The Markin Transfers were transferred from the CRUT to Decedent personally and are recoverable from the Markin Estate and the Personal Representative.

53. The Markin Estate and the Personal Representative are immediate or mediate transferees of the Markin Transfers.

54. As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Markin Estate and the Personal Representative: (a) recovering the Markin Transfers, or the value thereof, from the Markin Estate and the Personal Representative for the benefit of the BLMIS estate; (b) disallowing the Related Account Customer Claims until such time as the Markin Transfers are repaid to the Trustee; and (c) awarding any other relief the Court deems just and appropriate..

## COUNT THREE
## DISALLOWANCE OF RELATED ACCOUNT CUSTOMER CLAIM

55. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

13

56. The Markin Estate is a beneficiary of the Related Account. Upon information and belief, Decedent was the absolute owner of the Related Account or has a beneficial or equitable interest in the Related Account.

57. The Related Account Customer Claims should not be allowed pursuant to section 502(d) of the Bankruptcy Code. The Markin Estate and the Personal Representative are the recipients of Transfers of BLMIS's property which are avoidable and recoverable under section 78fff-2 (c)(3) of SIPA and sections 548 and 550 of the Bankruptcy Code, and the Markin Estate and the Personal Representative of the Markin Estate.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

i. On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), judgment: (a) avoiding and preserving the Two Year Transfers; (b) directing that the Two Year Transfers be set aside; (c) recovering the Two Year Transfers, or the value thereof, from the Defendants the CRUT the Markin Estate and the Personal Representative for the benefit of the BLMIS estate; (d) disallowing the Related Account Customer Claims until such time as the Two Year Transfers are repaid to the Trustee; and (e) awarding any other relief the Court deems just and appropriate;

ii. On the Second Claim for Relief as a result of the avoidance of the Two Year Transfers, pursuant to sections 548, 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) recovering the Markin Transfers, or the value thereof, from the Markin Estate and Mitchell D. Schepps, as personal representative of the Markin Estate, for the benefit of the estate of BLMIS; (b) disallowing the Related Account Customer Claims until such time as

the Markin Transfers are repaid to the Trustee; and (c) awarding any other relief the Court deems just and appropriate;

 iii. On the Third Claim for Relief, the Related Account Customer Claims should not be allowed pursuant to section 502(d) of the Bankruptcy Code unless and until the Two-Year Transfers are paid or turned over;

 iv. Impressing the Defendants' property or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

 v. Establishing a constructive trust over the Two-Year Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

 vi. Pursuant to federal common law, awarding the Trustee prejudgment interest from the date on which the Initial Transfers were received;

 vii. Awarding the Trustee all applicable interest, costs and disbursements incurred in this proceeding; and

 viii. Granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Date: April __, 2017
   New York, New York

             By: */s/*_____

             **BAKER & HOSTETLER LLP**
             45 Rockefeller Plaza
             New York, NY 10111
             Telephone: (212) 589-4200
             Facsimile: (212) 589-4201
             David J. Sheehan
             Email: dsheehan@bakerlaw.com
             Keith R. Murphy

Email:  kmurphy@bakerlaw.com
Tatiana Markel
Email:  tmarkel@bakerlaw.com
Ferve Ozturk
Email:  fozturk@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*