Hearing Date: November 1, 2017
Opposition Due: October 25, 2017
Reply Due: October 27, 2017

Related ECF Nos. 53-59, 62, 63

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID R. MARKIN, individually and as trustee of the David Markin Charitable Remainder Unitrust #1, DAVID MARKIN CHARITABLE REMAINDER UNITRUST #1,<br><br>    Defendants. | Adv. Pro. No. 10-05224 (SMB) |

**TRUSTEE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S CROSS-MOTION FOR LEAVE TO FILE A**
<u>**SECOND AMENDED COMPLAINT AND TO SUBSTITUTE DEFENDANTS**</u>

                  **BAKER & HOSTETLER LLP**
                  45 Rockefeller Plaza
                  New York, New York  10111
                  Telephone: (212) 589-4200
                  Facsimile: (212) 589-4201
                  David J. Sheehan

                  *Attorneys for Irving H. Picard, Trustee for the*
                  *Substantively Consolidated SIPA Liquidation of*
                  *Bernard L. Madoff Investment Securities LLC*
                  *And the Estate of Bernard L. Madoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

FACTS AND PROCEDURAL HISTORY .......................................................................................2

ARGUMENT......................................................................................................................................5

    A. The Second Amended Complaint Is Not Time-Barred..................................................5

    B. The Trustee's Dominion and Control Theory Does Not Render the
    Second Amended Complaint Futile ..................................................................................8

    C. The Two-Year Transfers Were Made for Markin's Benefit........................................10

    D. As a Subsequent Transferee, Markin Has No Value Defense ....................................11

CONCLUSION................................................................................................................................12

# TABLE OF AUTHORITIES

                                                            Page(s)

**Cases**

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007) ................................................................................................. 8

*Bonded Financial Servs. v. European Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ............................................................................................. 11

*Breeden v. Cowen & Co. (In re Bennett Funding Grp.)*,
    275 B.R. 447 (Bankr. N.D.N.Y. 2001) ................................................................................ 6

*In re Chase & Sanborn Corp.*,
    904 F.2d 588 (11th Cir. 1990) ............................................................................................. 9

*CIT Grp./Factoring Mfrs. Hanover (In re Srour)*,
    138 B.R. 413 (Bankr. S.D.N.Y. 1992) ................................................................................ 7

*In re Columbia Data Prods., Inc.*,
    892 F.2d 26 (4th Cir. 1989) ................................................................................................. 9

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
    452 B.R. 451 (Bankr.S.D.N.Y. 2011) ................................................................................ 10

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,
    333 B.R. 205 (Bankr. S.D.N.Y. 2005) .............................................................................. 12

*Gallant v. Kanterman (In re Kanterman)*,
    97 B.R. 768 (Bankr. S.D.N.Y. 1989) ................................................................................ 10

*Hessco Komsala v. Imhof (In re Hessco)*,
    295 B.R. 372 (B.A.P. 9th Cir. 2003) ........................................................................... 10, 11

*In re Incomnet, Inc.*,
    463 F.3d 1064 (9th Cir. 2006) ............................................................................................. 9

*Mastro v. Rigby (In re Mastro)*,
    No. WW–10–1099–JuMkH, 2011 WL 3300370 (B.A.P. 9th Cir. Mar. 1, 2011) .............. 11

*Monahan v. New York City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000) ................................................................................................ 7

*N.Y. State Elec. & Gas Corp. v. Sec'y of Labor*,
    88 F.3d 98 (2d Cir. 1996) .................................................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Paloian v. LaSalle Bank, N.A.*,
 619 F.3d 688 (7th Cir. 2010) .................................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 No. 05 MD 1720 (MKB) (JO), 2017 WL 4325812 (E.D.N.Y. Sept. 27, 2017) .......................7

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
 548 B.R. 13 (Bankr. S.D.N.Y. 2016) .....................................................................................12

*Rescuecom Corp. v. Khafaga (In re Khafaga)*,
 431 B.R. 329 (Bankr. E.D.N.Y. 2010) ..............................................................................6, 7

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*,
 No. 08-1023 (SMB), 2010 WL 3719310 (Bankr. S.D.N.Y. Sept. 16, 2010) ...........................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
 476 B.R. 715 (S.D.N.Y. 2013) ................................................................................................9

*Siegel v. Converters Transp., Inc.*,
 714 F.2d 213 (2d Cir. 1983) ....................................................................................................6

*Stevelman v. Alias Research Inc.*,
 174 F.3d 79 (2d Cir. 1999) ......................................................................................................6

*Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*,
 293 B.R. 116 (S.D.N.Y. 2003), *aff'd* 351 F.3d 57 (2d Cir. 2003) .........................................11

*In re U.S. Mortg. Corp.*,
 492 B.R. 784 (Bankr. D.N.J. 2013) .........................................................................................6

**Statutes**

11 U.S.C. §548 ...............................................................................................................1, 5, 7

11 U.S.C. §550 .............................................................................................................1, 11, 12

15 U.S.C. §§ 78aaa-lll ..............................................................................................................1

Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), submits this Memorandum of Law in reply to the Markin Estate's[1] opposition to the Trustee's cross-motion for substitution and leave to file a Second Amended Complaint.

## **PRELIMINARY STATEMENT**

The relief the Trustee seeks is straightforward—(i) to substitute the estate of a deceased defendant and (ii) to amend the complaint to particularize subsequent transfers and to add certain facts that amplify the Trustee's fraudulent transfer allegations. The Original Complaint asserted, *inter alia*, claims under Bankruptcy Code sections 548 and 550 against David Markin and CRUT #1 to avoid and recover two fraudulent transfers from BLMIS to CRUT #1: $16,059,086 on March 30, 2007 and $48,447 on May 31, 2007. (*See* Ex. A to Neville Decl.) The proposed Second Amended Complaint seeks to do the same. The new facts in the Second Amended Complaint—listing the dates and amounts of the subsequent transfers to Markin, substituting the Estate Defendants, and adding certain facts demonstrating Markin's dominion and control over CRUT #1's assets, came to light after the First Amended Complaint and, regardless, do not alter the Trustee's causes of action. The Trustee still seeks to avoid and recover the same two fraudulent transfers from Markin's succesors-in-interest, the Estate Defendants.

The Markin Estate attempts to escape liability by asserting a defense that is ill-fitting, because fraudulent transfer law is not meant to protect from the Trustee's clawback powers transferees, such as Markin, who exercised complete control over their BLMIS Account, transfers

---

[1] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Trustee's brief in opposition to the Markin Estate's motion and support of his cross-motion, ECF No. 57.

from that account, and all further distributions down the line. Every theory the Trustee has put forth—whether treating Markin as an initial transferee, a beneficiary, or a subsequent transferee—lead to the same destination—the Trustee's recovery of the Two-Year Transfers. Markin should not be entitled to a windfall at the expense of other customers. The Trustee seeks to have the Estate Defendants account for Markin's liability.

## **FACTS AND PROCEDURAL HISTORY**

The following recitation seeks to correct the Markin Estate's inaccuracies in its Opposition to the Trustee's cross-motion.

*Inaccuracies Concerning the Trustee's Possession of the Relevant Documents*

The Markin Estate claims that Markin provided to the Trustee documents from which the Second Amended Complaint's new facts are drawn "[a]fter the filing of the Complaint." (Opp Br. at 7, ECF No. 62.) This is untrue. Ms. Neville incorrectly declares that the Trustee filed his Original Complaint in 2009, and that she provided the documents on behalf of Mr. Markin in February and July 2010. (Opp Br. at 7; Neville Decl. ¶¶ 3-5, ECF No. 63.) However the Original Complaint was actually filed on December 4, 2010. Therefore, even if Ms. Neville provided these documents in 2010, she did so at a time when no action was pending against Markin.

Furthermore, by the Markin Estate's admission, these documents were provided to the Trustee in 2010 "to reach a compromise." (Opp. Br. at 7.) At the March 29, 2017 conference, Trustee's counsel explained to the Court that the documents in the Trustee's possession were provided in connection with settlement discussions. The Court directed defense counsel to provide documents without restrictions, which they did two days later, Bates-stamped DM0000100-161. Among the documents was a March 27, 2007 letter from the IRS concerning Markin's tax consequences from the early termination of CRUT #1 ("IRS Letter"). Importantly, however, the IRS Letter referenced Markin's request for a ruling sent on August 17, 2004 ("Markin's Letter to

2

the IRS"), which was not part of the production. The Trustee wrote to defendants asking for Markin's Letter to the IRS, which defense counsel provided several days later, Bates-stamped DM0000162-176. (*See* Exs. B and C to Markel Decl., ECF 58.) Settlement communications aside, April 2017 was the first time that Markin's Letter to the IRS was provided to the Trustee.

It was only with the documents the Trustee received from the defendants, combined with those that were already in the Trustee's possession, that the Trustee formulated his theory of dominion and control. Trustee relied on these documents in drafting the Second Amended Complaint.

*Inaccuracies Concerning Trustee's Communications with the Markin Estate for Consent to Amend the Complaint*

After Ms. Neville represented to the Court that "[w]e will amend the complaint," the Trustee was optimistic that, after years of chasing the defendants on procedural issues, this litigation would finally be proceeding with the proper parties and claims. On April 21, 2017, the Trustee forwarded a draft complaint to the defendants. One month later, counsel sent the following email:

> We cannot consent to the filing of your proposed amended complaint for several reasons. First, and most important, you cannot eliminate the CRUT by simply ignoring it. The complaint needs a cause of action that will allow the court to determine whether the CRUT stands as a separate legal entity and the initial transferee or is merged with Markin or otherwise disregarded. As it stands now, the complaint is ripe for a dismissal pursuant to Rule 12(b)(6). Second, and as a related matter, your recitation of the facts is contrary to the indisputable facts that there are two trustees and multiple beneficiaries. If your theory is that a legal entity can be disregarded because one of the key managing parties is also one of the beneficiaries you will have expanded the concept of domination and control to an absurdity and every legal entity may be disregarded as an initial transferee. I also think your amendment of the facts of the fraud underscores the frailty of the allegations in the two prior versions of the complaint.

> We would also oppose any motion to file this amended complaint on the grounds that (1) it does not state a viable claim for relief; and (2) these facts and theories were known at the time of the original complaint and the amended complaint.
>
> We think it would be appropriate to have another conference with Judge Bernstein.

Email from Carole Neville to Tatiana Markel (May 19, 2017, 11:17 AM EST).

Though the Markin Estate copies its email almost verbatim in its papers, representing itself as providing the Trustee with a thought-through explanation for declining to consent to the amendment, it represents the Trustee as responding with a dismissive one-liner, to the effect of "you don't have to like it." (Opp. Br. at 10-11.) In so doing, the Markin Estate misleads the Court by withholding the rest of Trustee's *three paragraph response* which addressed the defendants concerns and explained that those concerns are unfounded:

> We disagree with your reading of the complaint. The CRUT is named as an initial transferee. Paragraph 7 describes the CRUT and explains that both Mr. Markin and various charities were beneficiaries. We are therefore confused by your statement that the complaint "ignores" the CRUT. We are also confused by your comment about the second trustee. If you are referring to the Independent Special Trustee - why would we mention him in the complaint? His role, as described in the trust document, is irrelevant here.
>
> We understand that you may not be happy with the complaint, however, a defendant never is. You have the ability to deny the allegations with which you disagree and assert defenses you believe are appropriate. Your comments below appear to be treating the amended complaint as a stipulation—it is not; it is simply the Trustee's position. If you believe there is something relevant in the Trust documents that the Trustee failed to include, you may attach the trust documents and any other documents you believe are relevant to your summary judgment motion. We therefore fail to see how anything that is in the complaint prejudices your client. In your letter to the Court, you claimed that getting to summary judgment and resolving these issues was a matter of urgency for the beneficiaries of Mr. Markin's estate. As a result, your position here is surprising and we urge you to reconsider.

4

>   At the moment, nothing is before Judge Bernstein. If you still believe that opposing a motion to amend is the avenue you wish to take, then we will file the motion, and you will be heard by Judge Bernstein in connection with your opposition.

Email from Tatiana Markel to Carole Neville (May 31, 2017, 6:40 PM EST). The Trustee understands that the Court is not interested in the back-and-forth between parties' counsel. However, the Trustee will not permit defendants to mislead the Court into believing that the Trustee does not take these issues seriously.

*Inaccuracies Concerning the Remaining Causes of Action*

The Markin Estate would have this Court believe that the only viable claim remaining in this Action is Count 8 of the First Amended Complaint for the disallowance of the Related Account Customer Claim. This is incorrect. The Trustee's primary cause of action—Count 1 under section 548(a)(1)(A) against Markin and CRUT #1—is very much alive. Though the Markin Estate argues that CRUT #1 was terminated in 2007, counsel appeared on behalf of both CRUT #1, participated in extensive motion practice on behalf of CRUT #1 and Markin, and filed an answer on behalf of both CRUT #1 and Markin in 2015. The Trustee will address more fully defendants' gamesmanship in seeking to substitute the Estate Defendants only with respect to Count 8 in his response to the Markin Estate's Order To Show Cause.

## ARGUMENT

### A. The Second Amended Complaint Is Not Time-Barred

The Trustee's Second Amended Complaint does not assert any new causes of action or name any new defendants. The Second Amended Complaint adds background facts about Markin's creation and termination of CRUT #1 and the management of its assets in order to support the Trustee's "dominion and control" theory that Markin was an initial transferee. But even if this theory is somehow treated as a new claim—a position with which the Trustee disagrees—such

5

claim arises from the same conduct, transaction, or occurrence as the Original Complaint. The only transactions or occurrences that give rise to a fraudulent transfer claim in a good faith case are the depositing of customer property with BLMIS, withdrawal of customer property from BLMIS, and the subsequent conveyance of that customer property to a third party. Though the Markin Estate attempts to characterize the facts about the formation and termination of CRUT #1 as "new transactions," (Opp. Br. at 15), obviously they are not. They are simply facts that amplify and give further support to the same causes of action. *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999); *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215–16 (2d Cir. 1983); *In re U.S. Mortg. Corp.*, 492 B.R. 784, 798-800 (Bankr. D.N.J. 2013).

In support of its position, the Markin Estate cites multiple cases, none of which is apposite. In *Bennett Funding*, an amended complaint was barred because, in his original complaint, the chapter 11 trustee sought to avoid fraudulent transfers from the debtor to certain accounts and accountholders, and in the amended complaint "abandoned" those claims in favor of avoiding fraudulent transfers to completely different accounts. *Breeden v. Cowen & Co. (In re Bennett Funding Grp.)*, 275 B.R. 447, 453-5 (Bankr. N.D.N.Y. 2001). In *Musicland,* the new claims in the amended complaint did not relate back because they were based on different transactions made during different time periods than those detailed in the original complaint. *Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, No. 08-1023 (SMB), 2010 WL 3719310, at *3 (Bankr. S.D.N.Y. Sept. 16, 2010) ("The Amended Complaint concerned transfers that had occurred during the second quarter of 2003 and aggregated $145 million. The proposed new claims are based on a release that was delivered in November 2004. The Transfer and the Release Claims involved different conduct (the transfer of money versus the delivery of the Release) separated by seventeen months or more."). Likewise in *Khafaga*, the original

6

complaint asserting certain claims under section 523 was dismissed because there was no causation between defendant's fraudulent acts and the plaintiff's damages which preceded defendant's fraudulent acts. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 431 B.R. 329, 333 (Bankr. E.D.N.Y. 2010). In that amended complaint, plaintiff alleged completely new facts concerning different misrepresentations made before plaintiff was damaged in order to plead the causal element of plaintiffs claim. *Id.* at 335. Finally, in *Srour*, the Court allowed an amended complaint for claims that provided "additional embellishments" and asserted a new legal theory, but not for completely new claims based on new facts. *CIT Grp./Factoring Mfrs. Hanover (In re Srour)*, 138 B.R. 413, 418-19 (Bankr. S.D.N.Y. 1992).

     Here, the Second Amended Complaint has been reduced to two counts, both of which align with the claims alleged in the Original Complaint. Count One of the Second Amended Complaint corresponds to Count One of the Original Complaint. It asserts a cause of action for intentional fraudulent transfer under 548(a)(1)(A), which requires the Trustee to prove that BLMIS made a transfer to the defendants within two years of the Filing Date with the intent to defraud creditors. The facts that give rise to that cause of action have not changed. The Trustee added facts to support his legal theory of dominion and control that would make Markin (already a defendant) liable as an initial transferee under section 548(a)(1)(A) (already a cause of action). Parties are well within their rights to change legal theories over the course of litigation, and often do. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05 MD 1720 (MKB) (JO), 2017 WL 4325812, at *8 (E.D.N.Y. Sept. 27, 2017); *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) ("the fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings"); *N.Y. State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98,

7

104-05 (2d Cir. 1996) (prejudice does not arise from an amending party's change of legal theory, but rather from a resulting disadvantage to the opposing party in presenting its case).

The Markin Estate's assertion that it did not have notice of the "new claims" is untrue. Markin was already sued as an initial transferee, albeit in his capacity as the trustee of CRUT #1. As the Markin Estate admits, the law may impose personal liability on a trustee of trust. (Opp. Br. at 3-4); *see also* Restatement (Second) of Trusts § 261 ("The trustee is subject to personal liability to third persons on obligations incurred in the administration of the trust to the same extent that he would be liable if he held the property free of trust."). While the Trustee may not press the theory of personal liability, Markin was certainly apprised and on notice of his potential liability for the entirety of the Two-Year Transfers.

Count Two of the Second Amended Complaint aligns with Count Seven of the Original Complaint. It asserts a cause of action against Markin to recover subsequent transfers. It is the same claim against the same transferee. Although the subsequent transfer count was dismissed, without prejudice, due to lack of particularity of the subsequent transfers, the Second Amended Complaint cures that deficiency by pleading the dates and amounts of the transfers from CRUT #1 to Markin (Sec. Am. Compl. ¶ 14.)

Accordingly, even if the Court determines that the Trustee has asserted a new claim in his Second Amended Complaint, it relates back to the Original Complaint.

**B.     The Trustee's Dominion and Control Theory Does Not Render the Second Amended Complaint Futile**

It can hardly be disputed that Markin exercised virtually unfettered control over CRUT #1's assets and the Two-Year Transfers. He decided to invest in BLMIS, he decided to withdraw the funds from BLMIS, and he chose the parties to whom the funds would be distributed. *See Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. 1, 18-21

8

(S.D.N.Y. 2007). The Markin Estate argues that Markin's control was circumscribed by the IRS. (Opp. at 16-17.) But distribution of trust assets based on a formula does not impede the dominion and control theory. *E.g., Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 692 (7th Cir. 2010) (citing *In re Columbia Data Prods., Inc.*, 892 F.2d 26, 29 (4th Cir. 1989); *In re Chase & Sanborn Corp.*, 904 F.2d 588, 599-600 (11th Cir. 1990); *In re Incomnet, Inc.*, 463 F.3d 1064, 1071-76 (9th Cir. 2006)). Furthermore, the IRS's decision to grant Markin favorable tax treatment based on his compliance with a certain distribution formula has no bearing on whether he had full control over the Two-Year Transfers and CRUT #1's assets. Certain defendants in the BLMIS proceedings made similar arguments when they sought to keep fictitious profits that were transferred to them as a result of mandatory distribution regulations for IRAs, arguing that the IRS would have imposed a imposed a 50% tax on any portion of the minimum amount that the defendants' IRAs failed to distribute. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R. 715, 729 (S.D.N.Y. 2013). The District Court rejected the argument because regulations did not impose an obligation on BLMIS to transfer the money, but rather they required defendant to receive the money or else face penalties. The Court "decline[d] to conclude that [defendants] may . . . keep their profits because they feared that the [Internal Revenue Code] would deprive them of half of a benefit to which they had no entitlement." *Id.* Simply stated, in both the IRA cases and here, the defendants made a choice with respect to their BLMIS transfers that would not subject them to IRS's penalties. That does not affect a fraudulent transfer analysis.

The Markin Estate asserts that, in pressing his dominion and control theory, the Trustee ignores that CRUT #1 had an independent trustee. (Opp. Br. at 16-17.) However, per the trust documents "an Independent Special Trustee shall serve whenever the trust holds any assets that do not have a readily ascertainable fair market value" such as "real estate, stock in a closely-held

9

corporation, patents, or similar intangible property." (CRUT #1 Agreement, Article 8, Ex. B. to Neville Decl., ECF No. 53-2.) The property at issue in this adversary proceeding does not fall into this category and thus the independent trustee had no authority to deal with it based on the trust documents themselves. Another provision of CRUT #1 states that "[i]f I, as the Trustmaker, am a current Trust Beneficiary, then I can remove an Independent Special Trustee at any time." (*Id.* Section 4(a).) This provision only bolsters the Trustee's dominion and control theory.

### C.      The Two-Year Transfers Were Made for Markin's Benefit

If the Court finds Markin to be the initial transferee, the Court need not reach the question whether the Two-Year Transfers were made for Markin's benefit. If, however, the Court finds that the Two-Year Transfers were made to CRUT #1 as the initial transferee, then the transfers were made for Markin's benefit. In that scenario, Markin would not be both the initial transferee and the party for whose benefit the transfer was made. Thus the decisions concerning the two categories being mutually exclusive are of no moment, as there is no conflict. (*See* Opp. at 18.)

The Two-Year Transfer were made for Markin's benefit because Markin's withdrawal of the funds from BLMIS "would not have been made but in contemplation of another previously agreed and nearly contemporaneous transfer" to himself, which, in fact, took place on the same day. *Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768, 778 (Bankr. S.D.N.Y. 1989) (*See* Sec. Am. Compl. ¶ 14 & Ex. B, attached as Ex. A to Markel Decl., ECF No. 58-1.) It cannot be disputed that Markin was the "intended beneficiary" of the Two-Year Transfers because he directed them to himself. *Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 466 (Bankr. S.D.N.Y. 2011). The intended benefit also "originate[d] from the initial transfer." *Id.* The intended benefit was not the money itself, but rather the acceleration of Markin's income interest in CRUT #1.

In support of his position that Markin is the intended beneficiary of the Two-Year Transfers, the Trustee cited *Hessco Komsala v. Imhof (In re Hessco)*, 295 B.R. 372 (B.A.P. 9th

10

Cir. 2003), which held that the income beneficiaries of a CRUT were the people for whose benefit the transfers were made, when those same individuals were also the settlors and trustees, just as here. Substituting its own opinion for the Court's, the Markin Estate attempts to distinguish the case's nearly identical facts by supposing the case "must have turned on" the beneficiaries' insider status. (Opp. Br. at 19.) The Markin Estate also suggests that the case "has not been widely applied," ignoring the obvious reason: the case has very distinct facts and is therefore naturally limited in its application. The Markin Estate cites *Mastro v. Rigby (In re Mastro)*, No. WW–10–1099–JuMkH, 2011 WL 3300370 (B.A.P. 9th Cir. Mar. 1, 2011) as a case that did not follow *Hessco*. As the court expressly acknowledges, however, *Mastro* involved a limited liability company, not a trust, thus rendering *Hessco* merely "instructive." *Id.* at *9. While *Hessco* may be limited to a very particular set of facts, those are the precise facts we have here.

### D. As a Subsequent Transferee, Markin Has No Value Defense

Congress affords subsequent transferees an added level of protection by virtue of the section 550(b) defense when such transferees are bonafide purchasers for value who had no ability to monitor the initial transfer. *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988); *see also Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*, 293 B.R. 116 (S.D.N.Y. 2003), *aff'd* 351 F.3d 57 (2d Cir. 2003). When the subsequent transferee is the same person as the initial transferee, the very purpose of section 550(b) is subverted. Markin requested the withdrawal of the Two-Year Transfers from BLMIS. Any protections afforded to subsequent transferees do not apply to him.

In its opposition, the Markin Estate continues to assert that Markin gave value sufficient to support a simple contract. The Markin Estate fails to address the Trustee's position that a trust is not a contract, and here, certainly not one that is at arms' length when any value Markin may have given was to himself. The Markin Estate cites two cases in support that offer no assistance in

11

overcoming the flaw of its argument. *Enron* is completely inapposite, as it discusses section 550(b) in the context of the recipient's good faith, and applies it only by analogy to the claims context. *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205, 236–37 (Bankr. S.D.N.Y. 2005). In *Legacy*, the Court concluded that Khronos provided accounting services to Legacy Capital and therefore gave value, a fact that the Trustee never disputed. *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 37–38 (Bankr. S.D.N.Y. 2016). *Legacy*'s facts are not analogous to Markin's situation, where there is no contract, no services provided, and Markin exchanged the income interest he would have paid to himself for a lump sum that he paid to himself. Furthermore, as discussed above, the fact that Markin used a formula prescribed by the IRS to distribute is irrelevant to whether he gave value, or to the Trustee's entitlement to recover those transfers.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Markin Estate's motion, and grant the Trustee's cross-motion to substitute and for leave to file the proposed Second Amended Complaint.

Date: October 27, 2017  
     New York, New York

Respectfully submitted,

By: */s/Keith R. Murphy*  
**BAKER & HOSTETLER LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Keith R. Murphy  
Email: kmurphy@bakerlaw.com  
Robertson D. Beckerlegge  
Email: rbeckerlegge@bakerlaw.com  
Tatiana Markel  
Email: tmarkel@bakerlaw.com  
Ferve Khan  
Email: fkhan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and for the Estate of Bernard L. Madoff*