**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S EIGHTEENTH INTERIM REPORT**
**FOR THE PERIOD APRIL 1, 2017 THROUGH SEPTEMBER 30, 2017**

# TABLE OF CONTENTS

**Page**

I.      EXECUTIVE SUMMARY .......................................................................1

II.     BACKGROUND .......................................................................................3

III.    FINANCIAL CONDITION OF THE ESTATE ......................................4

IV.     ADMINISTRATION OF THE ESTATE ..................................................5

    A.      Marshaling And Liquidating The Estate Assets ...............................5

V.      CLAIMS ADMINISTRATION .................................................................6

    A.      Claims Processing .............................................................................6

        i.      Customer Claims .....................................................................6

        ii.     General Creditor Claims .........................................................6

        iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process.......................................................7

        iv.     The Hardship Program ............................................................8

    B.      Objections To Claims Determinations................................................9

    C.      Settlements Of Customer Claims Disputes.......................................11

VI.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ..........................11

    A.      Net Equity Dispute...........................................................................11

    B.      Time-Based Damages.......................................................................13

    C.      "Customer" Definition .....................................................................15

    D.      Fact-Based Objections .....................................................................23

    E.      Inter-Account Transfers...................................................................23

    F.      Profit-Withdrawal Issue ...................................................................27

VII.    RECOVERIES AND CONTINGENCIES ...............................................33

    A.      Recoveries Accomplished During Prior Report Periods .................33

    B.      Recoveries Accomplished During This Report Period.....................33

    C.      Earlier Settlements...........................................................................34

VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND  DISTRIBUTIONS TO CUSTOMERS ...............................................................35

    A.      The Customer Fund..........................................................................35

    B.      The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers ................36

    C.      The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers............37

300453044.10

## TABLE OF CONTENTS
(continued)

                                                                                              **Page**

D.  The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers ...............38

E.  The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers ............39

F.  The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers ................40

G.  The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers ...............41

H.  The Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing the Seventh Interim Distribution to Customers ...........44

I.  The Trustee's Eighth Allocation of Property to the Fund of Customer Property and Authorizing the Eighth Interim Distribution to Customers ............45

J.  The General Estate ...................................................................................46

IX.  LITIGATION .......................................................................................................46

A.  The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals ...........................................................46

  i.  Proceedings Relating to Motions to Withdraw the Reference ..................................................................................47

    (a)  The Administrative Order ...............................................47

    (b)  Consolidated Briefing Orders ........................................47

    (c)  The 546(e) Appeal .........................................................52

B.  Litigation in the Bankruptcy Court and Related Appeals .......................53

  i.  Resolution of Good Faith Avoidance Actions ...........................53

  ii.  Discovery Disputes .....................................................................54

    (1)  Discovery Dispute Regarding Rule 45 Subpoenas ...........55

    (2)  Discovery Dispute in Picard v. Roman, 10-04292 (SMB) ...............................................................................57

  iii.  Summary Judgment Motions .......................................................58

  iv.  Extraterritoriality ........................................................................60

C.  Subsequent Transferee Actions ..............................................................64

    (a)  Picard v. ABN AMRO Bank N.A. ...................................65

    (b)  Picard v. ABN AMRO (Ireland) Ltd. (Fortis) ................71

    (c)  Picard v. BNP Paribas ...................................................76

    (d)  Picard v. Citibank ..........................................................78

D.  Bad Faith/Feeder Fund Actions ..............................................................83

300453044.10

# TABLE OF CONTENTS
(continued)

| | | | Page |
|---|---|---|---|
| | (a) | Picard v. Avellino | 83 |
| | (b) | Picard v. Andrew H. Madoff | 86 |
| | (c) | Picard v. Cohmad Sec. Corp. | 87 |
| | (d) | Picard v. Magnify Inc. | 88 |
| | (e) | Picard v. Stanley Shapiro | 91 |
| | (f) | Picard v. PJ Administrators | 91 |
| | (g) | Picard v. Picower | 92 |
| E. | Feeder Funds | | 94 |
| | (a) | The HSBC Action | 94 |
| | (b) | The Luxalpha Action | 96 |
| | (c) | Picard v. Kingate | 99 |
| | (d) | Picard v. J. Ezra Merkin | 102 |
| | (e) | Picard v. Legacy Capital Limited | 108 |
| | (f) | Picard v. Fairfield Greenwich | 109 |
| | (g) | Picard v. Square One | 114 |
| | (h) | Picard v. Rye/Tremont | 116 |
| F. | Injunction Proceedings | | 118 |
| | i. | Picard v. Marshall | 118 |
| | ii. | Picard v. A&G Goldman Partnership | 121 |
| X. | INTERNATIONAL INVESTIGATION AND LITIGATION | | 123 |
| A. | Austria | | 124 |
| B. | Bermuda | | 124 |
| C. | BVI | | 124 |
| D. | Cayman Islands | | 125 |
| E. | England | | 125 |
| F. | Ireland | | 125 |
| G. | Israel | | 125 |
| H. | Switzerland and Luxembourg | | 125 |
| XI. | FEE APPLICATIONS AND RELATED APPEALS | | 125 |
| A. | Objections to Prior Fee Applications | | 125 |
| B. | Twenty-Third Fee Application | | 126 |
| C. | Twenty-Fourth Fee Application | | 126 |

300453044.10

## TABLE OF CONTENTS
(continued)

**Page**

XII.   CONCLUSION ...................................................................................................................127

300453044.10

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits his Eighteenth Interim Report (this "Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the Trustee shall file additional interim reports every six (6) months.  This Report covers the period between April 1, 2017 and September 30, 2017 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked relentlessly for nearly nine years to recover customer property and distribute it to BLMIS customers who have not fully recovered the money they deposited with BLMIS. Through pre-litigation and other settlements, the Trustee has successfully recovered or reached agreements to recover, more than $12.7 billion through the Report Period—nearly 73% of the currently estimated principal lost in the Ponzi scheme by those who filed claims—for the benefit of all BLMIS customers with allowed claims.[3]

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

[3] Over $20 billion of principal was lost in the Ponzi scheme in total.  Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

2.      On January 12, 2017, this Court entered an Order Approving the Trustee's Eighth

Allocation of Property to the Fund of Customer Property and Authorizing an Eighth Interim

Distribution to Customers, in which the Trustee allocated approximately $342.322 million to the

Customer Fund.  On February 2, 2017, the Trustee distributed approximately $252 million on

allowed claims relating to 953 accounts, or 1.729% of each customer's allowed claim, unless the

claim was fully satisfied.  Subsequent to February 2, 2017 and through the end of the Report

Period, an additional $13.945 million was distributed as catch-up payments, bringing the total

Eighth Interim Distribution amount to $265.536 million. When combined with the approximately

$722.615 million First Interim Distribution, the $5.251 billion Second Interim Distribution, the

$734.569 million Third Interim Distribution, the $494.011 million Fourth Interim Distribution,

the $425.653 million Fifth Interim Distribution, the $1.276 billion Sixth Interim Distribution, the

$200.789 million Seventh Interim Distribution and $841.89 million in advances paid or

committed to be paid by the Securities Investor Protection Corporation ("SIPC"),[4] the Trustee

has distributed approximately $10.211 billion to BLMIS customers through the Report Period,

with 1,338 BLMIS accounts fully satisfied.  The 1,338 fully satisfied accounts represent nearly

60% of accounts with allowed claims, demonstrating that the Trustee has made significant

progress in returning customer property to BLMIS customers. Thus, all allowed customer claims

up to $1,253,018.77 have been fully satisfied. See discussion *infra* in Section VIII.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP

("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special

counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to

---

[4] SIPC has advanced over $839.2 million to date to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history.  Many billions of dollars and thousands of people and entities located across the world were involved in this fraud.  The Trustee continues to work diligently and tirelessly to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein,[5] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[5] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); and October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922).

300453044.10

### III.    FINANCIAL CONDITION OF THE ESTATE

7.    No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid from administrative advances from SIPC.  These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain.  Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of allowed customer claims.

8.    A summary of the financial condition of the estate as of September 30, 2017 is provided in Exhibit A attached hereto.

9.    This summary reflects cash of $23,902,438.95, short term investments, money market deposit accounts, certificates of deposit and other investments, including alternative investments received in connection with the Chais settlement of $437,989,313 and short-term United States Treasuries in the amount of $2,019,793,238.  *See* Exhibit A, page 3, note (3) and page 5, notes (5) and (6).

10.    As detailed in Exhibit A, as of September 30, 2017, the Trustee requested and SIPC has advanced $2,391,747,966.80, of which $839,240,140.06 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account,[6] and $1,552,507,826.74 was used for administrative expenses.  *See* Exhibit A, page 1.

---

[6] The Trustee must receive an executed assignment and release from each customer before receiving and releasing an advance of funds from SIPC.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee.  *See supra* note 4.

4

## IV.    ADMINISTRATION OF THE ESTATE

### A.    Marshaling And Liquidating The Estate Assets

11.    The Trustee and his Counsel have worked diligently to investigate, examine, and evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors.  Thus far, the Trustee has been successful in recovering or entering into agreements to recover a significant amount of assets for the benefit of customers, totaling more than $12.7 billion through September 30, 2017.  For a more detailed discussion of prior recoveries, *see* Section V.B. of the First Interim Report; Section IV of the Second, Amended Third, and Fourth Interim Reports; Section VII of the Fifth Interim Report; Section IV of the Sixth Interim Report; and Section VII of the Seventh through Seventeenth Interim Reports.

12.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities.  As of the Eighteenth Interim Report, the Trustee had received distributions from seven of these class action settlements totaling over $91,000.  The Trustee has not and will not receive any distributions from the eighth class action settlement.  In addition, the Trustee has identified claims that BLMIS may have in 195 other class action suits also arising out of its proprietary and market making activities.  The Trustee has filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 56 additional cases.  Subject to the completion of a review of relevant records, the Trustee intends to file claims in the remaining 11 cases.  As of September 30, 2017, the Trustee has recovered $1,735,131.95 from settlements relating to 59 of the 128 claims filed directly by the Trustee, of which $163.84 was recovered during the Report Period.

5

## V.    CLAIMS ADMINISTRATION

A.    **Claims Processing**

  i.    **Customer Claims**

  13.    During the Report Period, the Trustee allowed $806,984,824.70 in customer claims.  This brings the total amount of allowed claims as of September 30, 2017 to $15,893,011,151.08.  The Trustee has paid or committed to pay $841,889,838.45 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

  14.    As of September 30, 2017, there were 43 claims relating to 32 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code.  Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

  ii.    **General Creditor Claims**

  15.    As of September 30, 2017, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

6

### iii.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

16.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

17.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation.  In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

18.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants.  As of September 30, 2017, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives.

19.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.  As of September 30, 2017, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 calls from claimants and their representatives.

7

300453044.10

20.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.     The Hardship Program

21.     At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship.  An individual could qualify for the Hardship Program if he or she filed a claim and was unable to pay for necessary living or medical expenses, over 65 years old and forced to reenter the work force after retirement, declaring personal bankruptcy, unable to pay for the care of dependents, or suffering from extreme financial hardship beyond the identified circumstances.

22.     As of December 11, 2010, the Trustee had received 394 Hardship Program applications.  The Trustee obtained advances from SIPC and issued 122 checks to hardship applicants with allowed claims.  The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.  Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

23.     The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and

8

requested that accountholders come forward to share information regarding their hardships. Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

24.     As of September 30, 2017, the Trustee had received 453 Hardship Program applications from avoidance action defendants relating to 302 adversary proceedings.   After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 277 Hardship Program applicants-defendants from avoidance actions.   As of September 30, 2017, there were 12 Hardship Program applications still under review and 66 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.[7]   The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

25.     The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify.  Further information and applications are available on the Trustee Website.

**B.      Objections To Claims Determinations**

26.     As required by the Claims Procedures Order and described in each determination letter sent by the Trustee ("Determination Letter"), BLMIS claimants have thirty days from the

_____

[7] The hardship data reported herein has been updated to reflect a reconciliation undertaken by the Trustee that identified and eliminated instances of double-counting where a single hardship application was submitted on behalf of multiple defendants.

300453044.10

date of a Determination Letter to object to the Trustee's determination of their claim. Claimants who disagree with the Trustee's determination of their claim must file with the Court a written opposition setting forth the grounds of disagreement and provide the Trustee with the same. A hearing date will be obtained by the Trustee, and claimants will be notified of that date. As of September 30, 2017, 1,901 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,462 unique claims and 847 accounts. As of September 30, 2017, 573 docketed objections (related to 681 unique claims and 530 accounts) remained.

27.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

28.     The Trustee has departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

10

C.    **Settlements Of Customer Claims Disputes**

29.    As of September 30, 2017, the Trustee had reached agreements relating to 987 accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

## VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

A.    **Net Equity Dispute**

30.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

31.    This Court issued a decision on March 1, 2010 upholding the Trustee's Net Investment Method as the only interpretation consistent with the plain meaning and legislative history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality. (ECF No. 2020); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). This Court certified an immediate appeal to the Second Circuit (ECF No. 2467), which heard oral argument on March 3, 2011.

32.    On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "*Net Equity Decision*").

11

Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id*. at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id*.

33.     Under the *Net Equity Decision*, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id*. at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit "impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

34.     First, the Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.*), 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

300453044.10

35.     Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id.* at 240.    Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id.* at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).    Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id.* at 235.

36.     On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing *en banc*. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537).    The panel that determined the appeal considered the request for panel rehearing, the active members of the Court considered the request for rehearing *en banc*, and on November 8, 2011, both denied the petition.  (ECF No. 551).

37.     Three petitions for certiorari were filed with the Supreme Court.  On June 25, 2012, the Supreme Court denied certiorari in two of the petitions. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).    Certiorari was also dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

**B.     Time-Based Damages**

38.     Following the Supreme Court decision denying certiorari regarding the Net Investment Method, the Trustee filed a motion seeking the affirmance of his calculations of net equity, and denying certain claimants' request for "time-based damages."  (ECF Nos. 5038, 5039).    The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims.

13

39.    Over the objections of hundreds of parties, this Court granted the Trustee's motion, finding that claimants were not entitled to time-based damages as part of their net equity claims against the fund of customer property. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "*Time-Based Damages Decision*"); *see also* ECF No. 5463.

40.    Thereafter, the parties submitted a letter requesting that the Court certify a direct appeal of the *Time-Based Damages Decision* to the Second Circuit under 28 U.S.C. § 158(d)(2). (ECF No. 5488).  On September 24, 2013, the Court certified the *Time-Based Damages Decision* for a direct appeal to the Second Circuit, (ECF No. 5514), which was accepted on January 22, 2014.  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 14-97(L) (2d Cir. Jan. 22, 2014).  Oral argument took place on October 14, 2014.

41.    On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law" and that the SEC was not owed *Skidmore* or *Chevron* deference.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015).  The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id.* at 83.

42.    Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest. The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework."  *Id.* at 79.  Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings.  *Id.* at 80.  While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id*. at 81, "the Act . . .

restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

43. Certain claimants urged the Court to apply deference to the SEC's view, which supported their position that customer claims were deserving of an inflation-based adjustment. While the SEC clarified that it did not seek deference at all, but if it were, it would have been *Skidmore* deference, a more fluid level of deference than the kind sought by the claimants. Nevertheless, the Second Circuit held that no deference was owed to the SEC's views in this case. *Id.* at 82.

44. The claimants did not file a petition for rehearing in the Second Circuit. A petition for a writ of certiorari to the Supreme Court was filed on July 20, 2015. On July 23, 2015 and July 24, 2015, the Trustee and SIPC waived their rights to respond to the petition. On August 21, 2015, a brief was filed in support of the petition by other BLMIS customers. On September 9, 2015, the petition was distributed to the Justices for a conference on September 28, 2015. On October 5, 2015, the Supreme Court declined to review the petition.

## C.    "Customer" Definition

45. The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS ("Claimants Without An Account"), the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

46. On June 11, 2010, the Trustee filed a Motion for an Order to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds. (ECF Nos. 2410–2413, 2416). The motion addressed only

15

those claimants whose claims emanated from their direct or indirect investments in sixteen so-called feeder funds that, in turn, had accounts with and invested directly with BLMIS.

47.     The Court held a hearing on October 19, 2010.   On June 28, 2011, the Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims.  (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

48.     The Court found that, in light of the plain language of SIPA and relevant case law, the investor-claimants did not qualify as "customers" under SIPA.  The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS.  It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds.  The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

49.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ."  *Id.*  at 290.

50.     Twenty-seven notices of appeal were filed and assigned to United States District Judge Denise L. Cote.  *See Aozora Bank Ltd. v. Sec. Inv'r  Prot. Corp.*, No. 11-cv-05683 (DLC)

300453044.10

(S.D.N.Y.).  On January 4, 2012, Judge Cote affirmed the June 28, 2011 order of the Court.  *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012).  In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor."  *Id.* at 123.  Thus, the District Court held that the feeder funds were the BLMIS customers and the appellants were precluded from seeking separate recoveries as additional SIPA claimants.  *Id.* at 129–30.

51.     On January 6, 2012, four appeals were taken from Judge Cote's order to the Second Circuit.  *See Bricklayers and Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410 (2d Cir. Jan. 31, 2012); *Rosamilia v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-437 (2d Cir. Feb. 2, 2012); *Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-483 (2d Cir. Feb. 6, 2012); *Upstate N.Y. Bakery Drivers and Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir. Feb. 3, 2012).  On February 22, 2013, the Second Circuit affirmed the decisions of the District Court and the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013).

52.     On another matter involving the interpretation of the "customer" definition, on October 5, 2011, the Trustee moved before the Court for an order establishing a briefing schedule and hearing to affirm his determination that ERISA did not alter his denial of "customer" status to certain claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

53.     On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4521)

17

(the "ERISA Motion").   On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.   (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).   On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion for an Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.   (ECF No. 4703).   On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.   (ECF Nos. 4746, 4748, 4750, 4755, 4756).   The Trustee's sur-reply was filed on April 20, 2012.   (ECF No. 4781).

54.   During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court. *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Inv'r Prot. Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of thirty-seven ERISA plan claimants).   On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, discussed above, and were re-assigned to Her Honor.   Judge Cote withdrew the reference on April 20, 2012.   *Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y.), (ECF No. 7).

55.   On July 25, 2012, the District Court granted the Trustee's ERISA Motion.   *See id*. (ECF No. 29).   The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for the purchase of securities and did not

own the assets of the ERISA plans that were deposited with BLMIS.  *Id*.  No appeal was taken from this opinion and order.

56.     On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names.  (ECF Nos. 5396, 5397, 5398, 5399, 5438, 5439, collectively, the "Second Feeder Fund Motion").  On August 21, 2013, the Court issued its decision (the *Second Feeder Fund Decision*") (ECF No. 5450).  The *Second Feeder Fund Decision* affirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met."  *Id*. at 4 (quoting 454 BR at 294).  Also, the Court determined that the claimants "failed to [meet their burden] because they lack any indicia of a 'customer' relationship with BLMIS."  *Id*. In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records at BLMIS."  *Id*. at 4.  The *Second Feeder Fund Decision* was not appealed.

57.     On April 30, 2014, the Trustee filed a motion to affirm his determinations denying claims of claimants who invested in certain ERISA plans.  (ECF Nos. 6489, 6491, 6492).  In an opinion rendered on August 22, 2014, this Court determined that the claimants were not "customers" of BLMIS within the meaning of SIPA.  (ECF No. 7761).

58.     On December 12, 2014, the Trustee filed his Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates,

General Partnerships (the "S&P Motion").  (ECF No. 8734).  The S&P Motion was filed to resolve objections to the Trustee's denial of 158 claims that were filed by parties who were either partners in, or investors in those partners in, S&P or P&S Associates (the "S&P and P&S Claimants").[8]  The Trustee allowed the claims of S&P and P&S to the extent of their respective net equity, because each held a BLMIS account in its name.  S&P and P&S have been receiving interim distributions on their claims.

59.    The S&P and P&S Claimants objected to the Trustee's S&P Motion on January 26, 2015. (ECF No. 9185).  They argued that SIPA should be construed broadly to include the S&P and P&S partners and/or investors.  *Id.* at 3-4.  The Claimants also argued that under Florida partnership law, "a partner is an owner of the partnership. . . . [and] a partner owns a specific interest in all partnership assets."  *Id.* at 6.

60.    On February 25, 2015, the Bankruptcy Court issued an oral ruling granting the Trustee's S&P Motion.  *See* Hr'g Tr. 27:19 – 35:25 (ECF No. 9506).  The Court explained that "the objecting partners have failed to sustain their burden of proof" because "[t]hey did not entrust any cash or securities with BLMIS."  Rather, "[t]hey invested with partnerships who, in turn, invested with BLMIS."  As a result, "even if BLMIS knew or surmised that the partnerships' BLMIS accounts were funded with partners' contributions, there is no evidence that BLMIS maintained records identifying the partners or even knew who they were, and the fact remains that the partners did not entrust anything to BLMIS . . . ."  *Id.* at 30:16-31:6.  On March 10, 2015 the Bankruptcy Court entered an Order approving the Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S

---

[8] *See* S&P Motion at 2, n. 3 (citing Declaration of Vineet Sehgal, ECF No. 8734), identifying and describing the objections to the Trustee's determinations of claims at issue in the S&P and P&S Proceeding).

Associates, General Partnerships (the "*S&P Decision*").  (ECF No. 9450).  No appeal was taken

from the order.

61.    Since the *S&P Decision* the Trustee has filed twenty-two similar motions to

affirm his customer claim determinations with respect to indirect investors, twenty-one of which

have been granted by this Court.[9]  The twenty-second motion was filed on September 14, 2017

(ECF No. 16632), with an objection deadline of October 4, 2017.  No timely objections were

received and the Trustee filed a Certificate of No Objection on October 12, 2017 (ECF No.

16746).

62.    Since the S&P/P&S Claimants, three claimants have objected to the Trustee's

motions to affirm his treatment of their claims.  On September 29, 2015, George G. and Linda G.

Pallis filed a timely objection to the Trustee's Motion to Affirm His Determinations Denying

Claims of Claimants Holding Interests in 1973 Masters Vacation Fund, Bull Market Fund, And

---

[9] *See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); and the Schupak Account, ECF No. 16641 (Sept. 18, 2017).  A twenty-second motion, Trustee's Motion and Memorandum of Law to Affirm His Determinations Denying Claims of Claimants Holding Interests in the Jennie Brett and David Moskowitz Accounts, was filed on September 14, 2017, ECF No. 16632, and is currently pending before this Court with a scheduled hearing date of October 25, 2017.  The objection deadline was October 4, 2017.  The Trustee filed a Certificate of No Objection on October 12, 2017.  *See* ECF No. 16746.

Strattham Partners. (ECF No. 11920). Most recently, on March 16, 2017 and March 22, 2017,

respectively, Rebecca and Robert Epstein (ECF No. 15330) and Daniel C. Epstein (ECF No.

15575) (the "Epsteins"), filed objections to the Trustee's Motion to Affirm His Determinations

Denying Claims of Claimants Holding Interests in Judy L. Kaufman *et al.* Tenancy In Common

and Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy In Common (ECF No.

14844).

63.     The Pallises relied upon three checks made payable to Bernard L. Madoff for

investment in the 1973 Masters Vacation Fund BLMIS account as evidence of their customer

status. This Court found that despite the existence of those checks, the Pallises were situated no

differently than any of the other indirect claimants because despite being made payable to

Madoff, they were sent to the "agent of the fund" and were ultimately credited to the fund's

BLMIS account. *See* Transcript of Hearing regarding Trustee's Motion and Memorandum to

Affirm His Determinations Denying Claims of Claimants' Holding Interests in 1973 Masters

Vacation Fund, Bull Market Fund, and Strattham Partners, 12:18-25 (Oct. 28, 2015). This Court

overruled the Pallises' objection and granted the Trustee's Motion because the evidence showed

that the Pallises "didn't have an account with . . . BLMIS, had no connection, received no

correspondence or direct communications" from BLMIS and thus "fail[ed] to demonstrate that

they were customers" of BLMIS. *Id.* at 13:1-8.

64.     The Court heard oral arguments on the Epsteins' objections on March 29, 2017

and issued its Memorandum Decision Affirming the Trustee's Denial of Certain Customer

Claims on April 7, 2017. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 570 B.R.

477 (Bankr. S.D.N.Y. 2017). Again, this Court upheld the Trustee's determination because the

Epsteins, like the Pallises, "failed to carry their burden of proving that they were 'customers' of

BLMIS as defined by SIPA." *Id.* At 482. As with the many indirect objecting claimants before

them, the Epsteins were unable to satisfy the "critical aspect" of entrustment of funds to BLMIS

and therefore were not customers.

## D.      Fact-Based Objections

65.     As part of his ongoing efforts to resolve pending objections, counsel for the

Trustee has continued investigating and analyzing objections of claimants to the Trustee's

determination of their claims. During this extensive review of the facts unique to each claimant,

the Trustee has identified circumstances that require resolution by the Bankruptcy Court. As

such, counsel for the Trustee and counsel for claimant Brian Ross entered into a stipulation

setting dates for the litigation of Mr. Ross's claim (ECF No. 13048) (April 6, 2016). This Court

approved and entered the Stipulated Scheduling Order on May 4, 2016 (ECF No. 13215).

66.     In June 2016, the Trustee and counsel for Mr. Ross exchanged discovery related

to his claim and objection, which assert that he is entitled to customer status based on his

deposits into a BLMIS account held in the name of his father, Allen Ross. On August 24, 2016,

this Court entered a Stipulation and Order Modifying the Scheduling Order Concerning the

Determination of the Brian Ross Claim (ECF No. 13921) to extend fact discovery in order to

allow the parties sufficient time to identify possible witnesses. Prior to the close of fact

discovery, the Trustee noticed the depositions of Mr. Ross and his accountant. Before those

depositions were scheduled, Mr. Ross withdrew his objection to the determination of his claim

and the hearing before this Court was cancelled. *See* (ECF No. 14559) (Dec. 6, 2016).

## E.      Inter-Account Transfers

67.     The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in,

cash-out" methodology is appropriate for calculating a customer's net equity in this case. The

*Net Equity Decision*, however, did not expressly address the treatment of transfers between

BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers."  Many customers maintained more than one BLMIS account, and transferred funds between such accounts.  Other customers transferred funds to the accounts of other BLMIS customers.

68.     On March 27, 2014, the Bankruptcy Court entered an order setting a schedule to file briefs and argue the merits of the Trustee's Motion For An Order to Affirm the Trustee's Determination of Customer Claims Regarding Transfers between BLMIS Accounts (the "IAT Motion").  *See* ECF No. 6049.  On March 31, 2014, the Trustee filed the IAT Motion, which explained that, for Inter-Account Transfers, in which no new funds entered BLMIS, the Trustee reduced the balance of the transferor account to the extent actual principal was available, and then credited the transferee account in the corresponding amount of actual principal transferred. (ECF No. 6084).  If the transferor account did not have any principal available at the time of the transfer, then $0 was credited to the transferee account.  *Id.* at 3.  SIPC filed a brief in support of the Trustee's motion on March 31, 2014.  (ECF No. 6079).

69.     Fifteen objections were filed in response to the IAT Motion.  These objecting parties argued that the inter-account method violates the statute of limitations for pursuing fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code; generates arbitrary results; improperly combines accounts and violates federal securities laws; violates public policy; and violates ERISA.  They also argued that the Bankruptcy Court lacks constitutional authority to render final judgments and that a transferee's net equity claim should not be affected by withdrawals made by other beneficiaries in a shared account.

70.     On December 8, 2014, the Bankruptcy Court entered its Memorandum Decision Affirming Application of the Trustee's Inter-Account Method to the Determination of Transfers Between BLMIS Accounts.  ECF No. 8680; *see Sec. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014).  The Bankruptcy Court affirmed the Trustee's method for calculating a customer's net equity when inter-account transfers were made to or from that account.  Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity.  This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property."  *Id.* at 53.  The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

71.    Five notices of appeal were filed by: (i) Diana Melton Trust, Dated 12/05/05 (ECF No. 8843); (ii) Edward Zraick Jr., Nancy Zraick, Patricia DeLuca and Karen M. Rich (ECF No. 8911); (iii) Michael Most (ECF No. 8913); (iv) claimants represented by Becker & Poliakoff (ECF No. 8916); and (v) Elliot G. Sagor (ECF No. 8917).  (Case Nos. 15-cv-1151; 15-cv-1195; 15-cv-1223; 15-cv-1236; 15-cv-1263).  The appellants filed three briefs on April 27, 2015 (ECF No. 12 (Case No. 15-cv-1151); ECF No. 12 (Case No. 15-cv-1223) and ECF No. 13 (Case No. 15-cv-1263), respectively.  The Trustee's opposition was filed on May 27, 2015.  (ECF No. 21). SIPC filed its opposition brief on May 27, 2015 (ECF No. 20).  An amicus brief was filed on May 4, 2015 (ECF No. 13), and replies were filed on June 25, 2015 (ECF No. 24).   On September 17, 2015, oral argument was held before Judge Engelmayer.

72.    On January 14, 2016, Judge Engelmayer issued his opinion and order affirming this Court's Order approving the use of the Inter-Account Transfer Method.  Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's *Net Equity*

*Decision* and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 15 Civ. 1151(PAE), 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7 (Bankr. S.D.N.Y.).

73.     On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit by (i) Elliot G. Sagor (Docket 16-413, ECF No. 1); (ii) Edward A. Zraick, Jr., Nancy Zraick, Patricia DeLuca, and Karen M. Rich (Docket 16-420, ECF No. 1); and (iii) claimants represented by Chaitman LLP (Docket 16-423, ECF No. 1).     The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016. *See Sagor v. Picard*, (Docket 16-413, ECF No. 34); *Zraick et al. v. Picard*, Docket 16-420, ECF No. 34); *Blecker et al. v. Picard*, (Docket 16-423, ECF No. 39).

74.     The appellants filed three opening briefs on May 23, 2016.  (ECF Nos. 134, 140 and 141).  An amicus brief was filed on May 31, 2016 (ECF No. 155).  The Trustee's opposition was filed on August 22, 2016 (ECF No. 166).  SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170). Replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187).

75.     Oral arguments before the Second Circuit were heard on May 11, 2017.  On June 1, 2017, the Second Circuit issued a Summary Order affirming the District Court's order upholding the Trustee's application of the Net Investment Method to Inter Account Transfers. Rejecting each of the Appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'" *In*

26

*re Bernard L. Madoff Inv. Sec., LLC*, 16-413-bk(L), 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

76.     The deadline for the apellants to file a petition for writ of certiorari to the Supreme Court expired on October 4, 2017 and no petitions were filed.

## F.     <u>Profit-Withdrawal Issue</u>

77.     In a declaration related to the Inter-Account Transfer matter, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm The Application of The Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Several other customers objected to the Trustee's denial of their net equity claims for similar reasons.  These customers dispute whether they actually received funds that appear to be identified on BLMIS customer account statements as "PW", or "Profit Withdrawals."

78.     Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions.  In light of the number of potentially impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Motion for Order Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No. 9357).  Following discussions with various counsel, the Trustee withdrew his Motion and filed an Amended Motion for Order Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No. 10017) ("Profit Withdrawal Scheduling Order").  The Court granted the Amended Motion on June 25, 2015 (ECF No. 10266).

79.     On July 14, 2015, the Trustee filed his motion and memorandum of law on the
Profit Withdrawal Issue, along with the supporting declarations.   (ECF Nos. 10660-10664).
SIPC filed its supporting memorandum on July 14, 2015 (ECF No. 10650).   The Trustee and
Participating Claimants exchanged written discovery in accordance with the Profit Withdrawal
Scheduling Order, including service of supplemental expert reports.

80.     On December 28, 2015, counsel for Aaron Blecker filed a Motion for an Order
Compelling the Trustee to Allow Aaron Blecker's SIPC Claim ("Motion to Compel") despite his
involvement in the Profit Withdrawal litigation. (ECF No. 12319).   The Trustee opposed the
Motion to Compel on the grounds that Mr. Blecker's claims were at the center of both the Profit
Withdrawal litigation and the Inter-Account Transfer appeal before the District Court.  (ECF No.
12432, Jan. 13, 2016).   SIPC filed its memorandum in support of the Trustee's opposition on
January 14, 2016 (ECF No. 12438).   Mr. Blecker filed his reply on February 10, 2016, (ECF No.
12628), and a hearing was held before this Court on February 24, 2016 at which time Mr.
Blecker's Motion to Compel was denied.   This Court denied the motion because (1) Mr. Blecker
agreed to participate in the omnibus Profit Withdrawal Litigation proceedings and he could not
now litigate around those procedures; (2) any decision on the issues raised in his Motion to
Compel would impact the omnibus profit withdrawal litigation; and (3) issues of facts remain
that would only be resolved through an evidentiary hearing.   *See* Hearing Transcript Regarding
Motion to Allow Customer Claim of Aaron Blecker, 28:22 -30:4 (Feb. 24, 2016).

81.     During the February 24, 2016 hearing, this Court also granted counsel for Mr.
Blecker leave to file a Motion for an Order Authorizing the Deposition of Bernard L. Madoff
("Motion to Depose Madoff") and raised the possibility that the Trustee may also want to depose
former BLMIS employees with knowledge of the Profit Withdrawal Transactions.   As a result,

28

on March 9, 2016, counsel for Mr. Blecker filed the Motion to Depose Madoff.  (ECF Nos. 12799, 12800).  The Trustee opposed the Motion to Depose Madoff on the grounds that his testimony would be unreliable and that counsel for the customers was likely to use the deposition as an opportunity to seek information related to other pending litigation.  The Trustee requested that the motion be denied or in the alternative, that all questions be limited to the Profit Withdrawal Issue.[10]  (ECF No. 12892).  A hearing was held on the Motion to Depose Madoff on March 23, 2016, and this Court granted the Motion to Depose Madoff with the requested limitations including that the deposition transcript remain sealed pending review by all interested parties and redaction if necessary.  Transcript of Hearing Regarding Motion to take Deposition of Bernard L. Madoff, 85:14-22 (Mar. 23, 2016); *see also* Order Authorizing the Deposition of Bernard L. Madoff With Certain Limitations, (ECF No. 13060).

82.    To allow time for the depositions of Mr. Madoff and former BLMIS employees before the end of discovery, the Trustee filed a Motion for an Order Amending Schedule of Litigation of Profit Withdrawal Issue on March 14, 2016.  Through that motion, the Trustee requested a 90-day extension of all remaining deadlines, including the close of discovery.  (ECF No. 12865).  Arguments were heard by this Court on April 5, 2016, at which time the Motion to Amend the Scheduling Order was approved.  *See* Hearing Transcript Regarding Trustee's Motion to Extend Discovery Deadline in Profit Withdrawal Proceeding, 14:25-15:1 (Apr. 5, 2016).

---

[10] The Trustee was joined by the Capital Growth Company, Decisions Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower (the "Picower Parties") in opposing the Motion for an Order Authorizing the Deposition of Bernard L. Madoff on the grounds that Ms. Chaitman planned to use the deposition to question Mr. Madoff on information related to the late Jeffry Picower.  *See* (ECF No. 12893).

83.     Prior to close of fact discovery, counsel for the Trustee deposed several former BLMIS employees regarding their work with profit withdrawal transactions at BLMIS.   These former employees provided testimony as to their knowledge of the treatment and management of Profit Withdrawal Transactions at BLMIS.   On May 11 and 13, 2016, counsel for the Trustee also deposed Participating Claimants Drs. Norman and Joel Blum, respectively (the "Blums"). Counsel for Participating Claimant Aaron Blecker deposed Mr. Madoff on June 15, 2016, and counsel for the Trustee attended for purposes of cross-examination.

84.     On July 12, 2016, this Court entered the Stipulation and Order on Schedule for Litigation of and Evidentiary Hearing on Profit Withdrawal Issue (ECF No. 13619), as agreed to by the parties, and modifying the April 5, 2016 amended scheduling order.   The July 12, 2016 order set forth deadlines for supplemental briefing, exchanged proposed trial exhibits, and motions *in limine*.   Pursuant to the updated scheduling order, the Trustee filed his Supplemental Memorandum of Law In Support of Trustee's Motion Affirming Treatment of Profit Withdrawal Transactions (ECF No. 13876) and SIPC filed its Supplemental Memorandum In Support Of the Trustee's Motion (ECF No. 13872) on August 12, 2016.   Participating Claimants subsequently filed two opposition briefs on September 23, 2016 (ECF Nos. 14161 and 14168).   On September 30, 2016, the Trustee and Participating Claimants exchanged proposed trial exhibits, designated deposition testimony, and disclosed draft witness lists.

85.     The Trustee and the Participating Claimants each filed motions *in limine* on October 28, 2016.   The Trustee filed four such motions *in limine* seeking exclusion of the Blums' late-disclosed expert—Thomas S. Respess, III, (ECF No. 14384); inadmissible hearsay testimony by the Blums, (ECF No. 14355); the exclusion of Mr. Blecker's prior deposition testimony, (ECF No. 14356); and to exclude the Trustee as witness, (ECF No. 14357).   Counsel

300453044.10

for the Blums filed a single motion *in limine* seeking the exclusion of certain purported hearsay statements regarding Profit Withdrawals, account documents unrelated to the Blums, and to limit the expert testimony of Matthew Greenblatt and Lisa Collura.  (ECF No. 14362).  Counsel for Mr. Blecker both joined the Blums' motion and further sought the complete exclusion of Mr. Greenblatt and Ms. Collura's testimony.  (ECF Nos. 14363, 14365).

86.   The Trustee's motion to strike the Blums' expert witness was withdrawn on November 17, 2016 after counsel for the Trustee and the Blums entered the Stipulation between the Trustee and Norman and Joel Blum with Respect to Impact of Profit Withdrawal Transactions, eliminating the need for Mr. Respess' proposed testimony. (ECF No. 14444). Because the motions filed by the Blums and Mr. Blecker sought the same results and contained overlapping arguments, the Trustee filed a combined motion in opposition to the motions *in limine*.  (ECF No. 14485) (Nov. 18, 2016).  Also on November 18, 2016, the Blums and Mr. Blecker filed opposition briefs to the Trustee's motion to strike inadmissible hearsay testimony by the Blums, (ECF No. 14484); the exclusion of Mr. Blecker's prior deposition testimony, (ECF No.14475), respectively.  Mr. Blecker filed an opposition to the motion to exclude the Trustee as witness, (ECF No. 14476).  Oral arguments were heard by this Court on April 18, 2017.

87.   This Court issued its Memorandum Decision Regarding Motions In Limine on June 15, 2017 (ECF No. 16180), ruling on two of the motions *in limine* argued on April 18, 2017: the Trustee's motion to exclude the Trustee as witness, (ECF No. 14357), and the Trustee's motion to exclude testimony by Joel and Norman Blum as inadmissible hearsay (ECF No. 14355).  In its decision, the Court granted the motion excluding the Trustee as a witness, and deferred until the evidentiary hearing, the motion seeking to exclude the Blums' testimony.

88.    In granting the Trustee's motion, this Court found that the Trustee's testimony would, "at best" be duplicative of his experts' testimony regarding the evidence supporting his treatment of PW transactions as debits, and that the Participating Claimants had failed to "point[] to any facts to overcome the finding of the Trustee's disinterestedness or the good faith performance of his duties."  Without such a showing, the Participating Claimants' "line of inquiry is immaterial" and would only serve to "unnecessarily prolong the trial and harass the Trustee."

89.    The Court deferred judgment on the Trustee's motion to exclude the Blums' testimony based on their anticipated live testimony during the anticipated evidentiary hearing. Because the PW transactions evidentiary hearing would be a bench trial, the Court need not exclude such testimony now so that it would not hear it at later date.  Such an approach is unnecessary and of limited value in a bench trial as the Court is capable of determining what evidence is admissible and may be considered and what evidence is not.

90.    No decisions as to the remaining motions *in limine* have been issued.

91.    Following the oral arguments on the motions *in limine*, the Trustee and the Blums agreed to settle the adversary proceeding, withdrawal of the Blums as participating claimants in the Profit Withdrawal Transactions Litigation, and final resolution of their customer claims and their objections to the determination of those claims.

92.    The Court approved the settlement and on October 13, 2017, entered the Stipulation and Order as to Withdrawal of Norman, Joel, and Kerry Blum from the Profit Withdrawal Transactions Litigation (ECF No. 16767) and the Stipulation and Order for Voluntary Dismissal of the Trustee's Adversary Proceeding pending against Norman J. Blum

(ECF No. 16766). In addition, Norman, Joel and Kerry Blum withdrew their objections to the

Trustee's determination of their customer claims (ECF Nos. 16760, 16761).

## VII.    RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

93.    In the Sixth through Seventeenth Interim Reports, the Trustee reviewed the

significant settlements entered into during those periods and prior report periods. Prior to this

Report Period, the Trustee had recovered or reached agreements to recover approximately $11.6

billion for the benefit of BLMIS customers. *See* Trustee's Sixth Interim Report ¶¶ 52–63 (ECF

No. 4529); Trustee's Seventh Interim Report ¶¶ 56–62 (ECF No. 4793); Trustee's Eighth Interim

Report ¶¶ 57–61 (ECF No. 5066); Trustee's Ninth Interim Report ¶¶ 59 – 61 (ECF No. 5351);

Trustee's Tenth Interim Report ¶¶ 61-62 (ECF No. 5554); Trustee's Eleventh Interim Report ¶¶

61-62 (ECF No. 6466); Trustee's Twelfth Interim Report ¶¶ 63-64 (ECF No. 8276); Trustee's

Thirteenth Interim Report ¶¶ 72-76 (ECF No. 9895); Trustee's Fourteenth Interim Report ¶¶ 73-

76 (ECF No. 11912); Trustee's Fifteenth Interim Report ¶¶ 79-80 (ECF No. 13184); Trustee's

Sixteenth Interim Report ¶¶ 84-85 (ECF No. 14347) and Trustee's Seventeenth Interim Report

¶¶ 30-31 (ECF No. 15922).

### B.    Recoveries Accomplished During This Report Period

94.    During the Report Period, the Trustee settled 44 cases. Additionally, the Trustee

received settlement recoveries totaling $447,461,319.42. As of the Report Period, the Trustee

has successfully recovered or reached agreements to recover more than $12.7 billion.

95.    On July 24, 2017 this Court approved a settlement between the Trustee, the

United States Attorney's Office for the Southern District of New York (the "Government") and

the Estate of Mark D. Madoff, the Estate of Andrew H. Madoff, and Mark Madoff's widow,

Stephanie Mack. *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 and *Picard v.*

*Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (ECF No. 16429). Under the settlement, the defendants have paid approximately $23 million, with the total recovery being shared equally between the Trustee and the Government.

96.     On July 24, 2017 this Court approved a settlement between the Trustee, Lagoon Investment Limited ("Lagoon") and Hermes International Fund Limited. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 16430). Under the settlement, Lagoon has paid approximately $240 million to the BLMIS Customer Fund.

97.     On July 26, 2017 this Court approved a settlement between the Trustee, Thema Fund Limited and Thema Wise Investments Ltd. ("Thema Wise"). *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 16431). Under the settlement, Thema Wise has paid approximately $130 million to the BLMIS Customer Fund.

98.     On October 20, 2017 this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

## C.    <u>Earlier Settlements</u>

99.     In the Fifteenth Interim Report, the Trustee reported on the Gabriel Capital, Plaza Investments and Defender settlements. *See* Trustee's Fifteenth Interim Report ¶¶ 264-72 (ECF No. 13184). In the Sixteenth Interim Report, the Trustee reported on the Annette Bongiorno settlement. ¶ 85 (ECF No. 14347). In the Seventeenth Interim Report, the Trustee reported on the settlements with the defendants in the Estate of Stanley Chais proceeding ¶ 86 (ECF No. 15922).

100.    Through the end of the Report Period, the Trustee recovered $536,092,384.27 as a result of other settlements that were made pursuant to agreements subject to the Net Equity Dispute.

## VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.    The Customer Fund

101.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate.  The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate.  Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors.  SIPA § 78fff-2(c).

102.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims).  Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

103.    There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves.  Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the

300453044.10

amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.** **The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers**

104.    On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution").  (ECF No. 4048).  This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers on July 12, 2011.  (ECF No. 4217).

105.    On October 5, 2011, the Trustee distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to October 5, 2011, an additional $410.761 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $722.615 million through the end of the Report Period.  The First Interim Distribution was made to 1,360 BLMIS accounts, of which 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

106.    The First Allocation and First Interim Distribution were initial and interim in nature because the Trustee anticipated recovering additional assets through litigation and settlements, and resolving the issues on appeal that require reserves.

C.    **The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers**

107.    During the year after the Trustee made the First Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, as well as the resolution of issues on appeal that required reserves.

108.    In particular, the Supreme Court resolved the Net Equity Dispute on June 25, 2012, and the Trustee received the Picower settlement funds after the final order of forfeiture became final and non-appealable on July 16, 2012.

109.    Thus, the Trustee was prepared to make a second significant distribution to BLMIS customers in an amount as great as $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim had been fully satisfied. However, in order to maintain adequate reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire $3.019 billion.

110.    On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution"). (ECF No. 4930).

111.    In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve"). Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

300453044.10

112.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

113.    Thus, on September 19, 2012, the Trustee distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $2.771 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $5.251 billion through the end of the Report Period.  The Second Interim Distribution was made to 1,347 BLMIS accounts, of which 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

## D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers

114.    During the months after the Second Interim Distribution, the Trustee recovered significant additional assets thorough litigation and settlements, particularly the Tremont settlement.  See discussion *infra* Section IX(B)(ii)(j).

115.    On February 13, 2013, the Trustee filed a motion seeking entry of an order approving the third allocation of property to the Customer Fund and authorizing the third interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Third Allocation" and "Third Interim Distribution").  (ECF No. 5230).

116.    In connection with the Third Interim Distribution, the Trustee proposed holding reserves in connection with the Levy settlement appeal, the Internal Revenue Service (the "IRS") settlement and net loser accounts currently in litigation.  *Id.*

38

117.   On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers.  (ECF No. 5271).

118.   Thus, on March 29, 2013, the Trustee distributed $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $228.341 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $734.569 million through the end of the Report Period.  The Third Interim Distribution was made to 1,157 BLMIS accounts, of which 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

### E.   The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers

119.   During the year after the Trustee made the Third Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly the JPMorgan settlement.

120.   On March 25, 2014, the Trustee filed a motion seeking entry of an order approving the fourth allocation of property to the Customer Fund and authorizing the fourth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fourth Allocation" and "Fourth Interim Distribution").  (ECF No. 6024).

121.   In connection with the Fourth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

122.    On April 18, 2014, this Court entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers.  (ECF No. 6340).

123.    Thus, on May 5, 2014, the Trustee distributed $351.632 million, or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to May 5, 2014, an additional $142.378 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $494.011 million through the end of the Report Period.  The Fourth Interim Distribution was made to 1,124 BLMIS accounts, of which 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

F.    **The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers**

124.    During the months after the Trustee made the Fourth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Blumenfeld defendants (*Picard v. Edward Blumenfeld, et al.,* Adv. Pro. No. 10-04730 (SMB) (Bankr. S.D.N.Y.) (ECF No. 45)), Herald Fund SPC and Primeo Fund (*Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y.) (ECF No. 349)), and Senator Fund SPC *(Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y.) (ECF No. 350)).

125.    On December 22, 2014, the Trustee filed a motion seeking entry of an order approving the fifth allocation of property to the Customer Fund and authorizing the fifth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fifth Allocation" and "Fifth Interim Distribution").  (ECF No. 8860).

300453044.10

126.    In connection with the Fifth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements. *Id.*

127.    On January 15, 2015, this Court entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers.  (ECF No. 9014).

128.    On February 6, 2015, the Trustee distributed $355.761 million, or 2.743% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to February 6, 2015, an additional $69.891 million was distributed as catch-up payments, bringing the total Fifth Interim Distribution amount to $425.653 million through the end of the Report Period.  The Fifth Interim Distribution was made to 1,103 BLMIS accounts, of which 23 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

G.    **The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers**

129.    In its order approving the Second Allocation Motion (ECF No. 4997), the Court required the Trustee to maintain the 3% Reserve for the Time-Based Damages Dispute.  Under the terms of Judge Lifland's order requiring the 3% Reserve, the Trustee set a Time-Based Damages reserve and allocated such reserve to the Customer Fund as part of the total amount allocated to the Customer Fund in the Second through Fifth Allocations and Interim Distributions.

130.    On April 15, 2015, the Trustee filed a motion seeking entry of an order approving the sixth allocation of property to the Customer Fund and authorizing the sixth interim distribution to customers whose claims have not been fully satisfied because their net equity

41

claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Sixth Allocation" and "Sixth Interim Distribution"). (ECF No. 9807). In the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee sought approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth therein. These funds became available for distribution following the decision of the Second Circuit on the "time-based damages" issue. *In Re Bernard L. Madoff Inv. Sec. LLC,* 779 F.3d 74 (2d Cir. Feb. 20, 2015) (the "Time-Based Damages Decision").

131.    The Trustee could not distribute these funds until the time limit to file a petition for certiorari with the Supreme Court expired with no petition being filed or a final, non-appealable order was entered on the Time-Based Damages Decision.

132.    At the time the Trustee filed the Sixth Allocation Motion, no petitions for certiorari had been filed on the Time-Based Damages Decision. The time period to file a petition for certiorari was due to expire on May 21, 2015. The hearing date on the Sixth Allocation Motion was set for May 29, 2015, which would permit the hearing to go forward if no petitions for certiorari were filed by that date. The Trustee indicated in the Sixth Allocation Motion that the hearing may not be able to go forward if a petition for certiorari was filed.

133.    A group of claimants represented by Helen Davis Chaitman, Esq. moved for an extension of time within which to file a petition for certiorari with the Supreme Court. The Supreme Court granted that request on April 28, 2015, extending the time to file a petition for certiorari to July 20, 2015. *Marsha Peshkin v. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,* No. 14A1099 (Oct. 5, 2015).

134.    Following the extension of time to file the petition for a writ of certiorari, the Trustee filed a notice of adjournment of the hearing on the Sixth Allocation Motion, adjourning

the hearing from May 28, 2015 to July 29, 2015. The purpose of the adjournment was to allow the extended time period within which to file a petition for certiorari to expire. If no petition was filed, the Trustee would seek the Court's approval to allocate and distribute funds from the fund of customer property, as outlined in the Trustee's Sixth Allocation Motion.

135.    On July 20, 2015, the group of claimants represented by Helen Davis Chaitman filed a petition for a writ of certiorari with the Supreme Court. Accordingly, the hearing on the Trustee's Sixth Allocation Motion was adjourned *sine die*, pending the determination of the petition for a writ of certiorari by the Supreme Court.

136.    On October 5, 2015, the Supreme Court denied the petition for certiorari, paving the way for the Trustee to request authorization from the Court to make a sixth distribution to customers of more than $1.18 billion—up to 8.186% of each customer's allowed claim amount. On October 20, 2015, the Trustee filed a Notice of Hearing and Supplemental Filing in Further Support of the Trustee's Motion for an Order Approving Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (ECF No. 11834) and an Affidavit of Vineet Sehgal in support. (ECF No. 11835). On November 18, 2015, this Court entered an Order Approving the Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing a Sixth Interim Distribution to Customers. (ECF No. 12066).

137.    On December 4, 2015, the Trustee distributed $1.193 billion, or 8.262% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to December 4, 2015, an additional $82.305 million was distributed as catch-up payments, bringing the total Sixth Interim Distribution amount to $1.276 billion through the end of the Report Period. The Sixth Interim Distribution was made to 1,082 BLMIS accounts, of which 20

payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**H.    The Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing the Seventh Interim Distribution to Customers**

138.    During the months after the Trustee made the Sixth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Thybo defendants (*Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2011) (ECF No. 96) and Vizcaya Partners Limited, Bank J. Safra Sarasin (Gibraltar) Ltd., Bank J. Safra (Gibraltar) Ltd., Asphalia Fund, Ltd., Zeus Partners Limited, Banque J. Safra Sarasin (Suisse) SA, Banque Jacob Safra (Suisse) SA, and Pictet et Cie (*Picard v. Vizcaya Partners Limited, et al.,* Adv. Pro. No. 09-01154 (ECF No. 129); *Picard v. Banque J. Safra (Suisse) SA,* Adv. Pro. No. 11-01725 (ECF No. 73); *Picard v. Pictet et Cie,* Adv. Pro. No. 11-01724 (ECF No. 90)).

139.    On May 26, 2016, the Trustee filed a motion seeking entry of an order approving the seventh allocation of property to the Customer Fund and authorizing the seventh interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Seventh Allocation" and "Seventh Interim Distribution").  (ECF No. 13405).

140.    In connection with the Seventh Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

141.    On June 15, 2016, this Court entered an Order Approving the Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing a Seventh Interim Distribution to Customers**.  (ECF No. 13512).

44

142.    Thus, on June 30, 2016, the Trustee distributed $190.247 million, or 1.305% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Subsequent to June 30, 2016, an additional $10.541 million was distributed as catch-up payments, bringing the total Seventh Interim Distribution amount to $200.789 million through the end of the Report Period. The Seventh Interim Distribution was made to 976 BLMIS accounts, of which 15 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**I.**    **The Trustee's Eighth Allocation of Property to the Fund of Customer Property and Authorizing the Eighth Interim Distribution to Customers**

143.    During the months after the Trustee made the Seventh Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Estate of Stanley Chais, et al. (*Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.)), (ECF No. 157).

144.    On December 14, 2016, the Trustee filed a motion seeking entry of an order approving the eighth allocation of property to the Customer Fund and authorizing the eighth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Eighth Allocation" and "Eighth Interim Distribution"). (ECF No. 14462).

145.    On January 12, 2017, this Court entered an Order Approving the Trustee's Eighth Allocation of Property to the Fund of Customer Property and Authorizing an Eighth Interim Distribution to Customers**.** (ECF No. 14836).

146.    Thus, on February 2, 2017, the Trustee distributed $251.590 million, or 1.729% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied. Upon completion of the Eighth Interim Distribution, nearly 60% of the allowed customer claims were

fully satisfied.   Subsequent to February 2, 2017, an additional $13.945 million was distributed as catch-up payments, bringing the total Eighth Interim Distribution amount to $265.536 million through the end of the Report Period. The Eighth Interim Distribution was made to 956 BLMIS accounts, of which 15 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.  All allowed claims up to $1,253,018.77 were fully satisfied after the distribution.

## J.    The General Estate

147.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

148.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## IX.    LITIGATION

149.    Other major developments have occurred during the Report Period in the Trustee's avoidance actions and bank/feeder fund litigations.  This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

## A.    The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals

150.    Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings.  The District Court returned all proceedings to the Bankruptcy Court.

300453044.10

### i.    Proceedings Relating to Motions to Withdraw the Reference

#### (a)    The Administrative Order

151.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 4707).

152.    On July 10, 2014, the District Court issued an order directing counsel to parties with individual issues not addressed by the Court's decisions in the consolidated withdrawals to inform the Court by letter by July 18, 2014. *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. July 10, 2014), (ECF No. 552).  The District Court received several such letters and addressed the issues they raised in separate orders.  On August 4, 2014, the District Court deemed any remaining motions to withdraw the reference to be denied, referred all the adversary proceedings to be returned to the Bankruptcy Court, and directed the closure of all civil cases seeking to withdraw the reference related to the Madoff matter. *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. Aug. 4, 2014), (ECF No. 557).

#### (b)    Consolidated Briefing Orders

153.    In April 2012, the District Court instituted a protocol for then-pending motions to withdraw, which consolidated briefing on common issues raised in the motions to withdraw (the "Common Briefing").  The common issues included:

- whether the Supreme Court's decision in *Stern v. Marshall* (the "Stern Issue") precluded the Bankruptcy Court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to Bankruptcy Court. 131 S. Ct. 2594 (2011); *see* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), (ECF No. 4);

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 107);

- whether standing issues (the "Standing Issue") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 114);

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith § 546(e) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 119);

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "§ 502(d) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), (ECF No. 155);

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue"). 130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); and

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code (the "Good Faith Standard Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), (ECF No. 197).

154. The Stern Issue was raised by hundreds of defendants. Judge Rakoff heard oral argument on June 18, 2012 and issued a decision on January 4, 2013 (the "Stern Opinion and Order"), ruling that the Bankruptcy Court may finally decide avoidance actions where defendants filed customer claims, which would necessarily be resolved by those avoidance actions, because the two are inextricably intertwined. Opinion and Order (ECF No. 427), 460 B.R. 46 (Bankr. S.D.N.Y. 2013). In the Stern Opinion and Order, Judge Rakoff found that even where the Bankruptcy Court may not issue a final determination under *Stern*, it may still hear the

300453044.10

matter in the first instance and issue a report and recommendation, and referred the Trustee's cases back to the Bankruptcy Court subject to the other pending rulings. *Id.*

155.    The Antecedent Debt Issue was also raised by hundreds of defendants, who filed their motion on June 25, 2012.  (ECF No. 196).  Oral argument was held by Judge Rakoff on August 25, 2012.  Judge Rakoff issued a decision on October 15, 2013 (the "Antecedent Debt Opinion and Order"), rejecting claims that BLMIS's account statements constituted binding, enforceable obligations of BLMIS to its customers, as the amounts reported thereon were not "antecedent debts" that BLMIS owed to its customers, but were instead "invalid and thus entirely unenforceable." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 476 B.R. 715, 421 n. 4 (S.D.N.Y. 2013). The District Court concluded that "it would significantly undo the SIPA scheme to allow customers to recast amounts received as something other than what they were - fictitious profits - and treat them as a claim for antecedent debts beyond the customer's net equity." *Id.* At 425. Therefore, under SIPA, "a customer may only seek the protections of section 548(c) to the extent of investments of principal, and federal and state law claims cannot be used to increase the amount to which a customer is entitled from the customer property estate." *Id.* at 426.s

156.    The Standing Issue was raised by various defendants, who filed two sets of moving papers on August 3, 2012.  (ECF Nos. 269, 270, 271).  Judge Rakoff heard oral argument on October 15, 2012 and issued a decision on December 5, 2013 (the "Standing Opinion and Order"), finding that the Trustee "has standing to bring claims on behalf of Madoff Securities' customers to the extent, but only to the extent, that the customers validly assigned their claims to the Trustee.  However, the Court also finds that the Trustee's pursuit of these assigned claims, to the extent that he brings the claims of more than fifty assignors, constitutes a

300453044.10

covered class action for purposes of SLUSA." Opinion and Order (ECF No. 509), 987 F. Supp.2d 309 (S.D.N.Y. 2013).

157.    The Bad Faith § 546(e) Issue was raised by various defendants, who filed two sets of moving papers on July 27, 2012. (ECF Nos. 259–261). Judge Rakoff heard oral argument on November 26, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that under certain circumstances, the Trustee's complaints should not be dismissed at the pleading stage solely on the basis of defendants' invocation of § 546(e) of the Bankruptcy Code. (ECF No. 439). On April 15, 2013, Judge Rakoff issued a decision (the "Bad Faith § 546(e) Opinion and Order"), setting forth the basis for his ruling, and indicated that the Trustee's claims are not precluded under § 546(e) of the Bankruptcy Code in cases where the Trustee "sufficiently alleges that the transferee from whom [the Trustee] seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." Opinion and Order (ECF No. 460), 491 B.R. 27 (S.D.N.Y. 2013).

158.    Various defendants raised the § 502(d) Issue and joined in moving papers filed on July 13, 2012. (ECF Nos. 231–33). Judge Rakoff heard oral argument on October 9, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that the Trustee may invoke section 502(d) of the Bankruptcy Code. (ECF No. 439). Judge Rakoff issued a decision on June 30, 2014 (the "§ 502(d) Opinion and Order"), explaining the reasons for that decision and directing further proceedings related thereto to be returned to the Bankruptcy Court. Opinion and Order (ECF No. 549), 513 B.R. 437 (S.D.N.Y. 2014).

159.    The Extraterritoriality Issue was joined by various defendants, who filed moving papers on July 3, 2012. (ECF Nos. 234-36). Judge Rakoff held oral argument on September 21, 2012. On July 6, 2014, Judge Rakoff issued a decision (the "Extraterritoriality Opinion and

Order") indicating that certain of the Trustee's claims were barred under *Morrison*, and stated

that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent

transfers received abroad by a foreign transferee from a foreign transferor," and directing further

proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF

No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

160.    The Good Faith Standard Issue was raised by various defendants, who filed two

main sets of moving papers on July 20, 2012.  (ECF Nos. 242, 243).  Judge Rakoff heard oral

argument on October 12, 2012 and issued a decision on April 27, 2014 (the "Good Faith

Standard Opinion and Order"), ruling that "in the context of this litigation and with respect to

both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had

actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances

indicating a high probability of such fraud."  With respect to the issue of which party bears the

burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a

defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly

allege that that defendant did not act in good faith."  Opinion and Order (ECF No. 524), 516 B.R.

18 (S.D.N.Y. 2014).

161.    Following the entry of the Good Faith Standard Opinion and Order and the

Extraterritoriality Opinion and Order, the Trustee filed an omnibus motion for expedited

discovery related to the good faith issue and for leave to replead regarding the issues of good

faith and extraterritoriality, which affected over 86 adversary proceedings (the "Omnibus

Motion").  (ECF No. 7827).  On September 17, 2014, the Bankruptcy Court held a conference to

discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order

and the Omnibus Motion.  The Bankruptcy Court directed the parties to confer and devise an

300453044.10

efficient procedure and briefing schedule. The Omnibus Motion is being held in abeyance pending the Bankruptcy Court's resolution of issues relating to extraterritoriality.

(c)    The 546(e) Appeal

162.    On April 27, 2012 the District Court entered an order dismissing certain claims in 78 adversary proceedings. *See Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.); *Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.); *Picard v. Goldman*, Adv. No. 11-04959 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr. S.D.N.Y.). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), (ECF No. 57). These claims included preferences under § 547 of the Bankruptcy Code, constructive fraudulent transfers under § 548(a)(l)(B) of the Bankruptcy Code, and actual and constructive fraudulent transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims"). The Dismissed Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the Bankruptcy Code.

163.    On April 30, 2012, the District Court entered an Opinion and Order explaining the reasons for its decision. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (Bankr. S.D.N.Y. 2012). On May 15, 2012, the District Court entered a Supplemental Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code. *See* Supplemental Opinion and Order, No. 12 MC 0115 (JSR) (ECF No. 101).

164.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second Circuit from these orders.

165.    The Second Circuit held argument on March 5, 2014. On December 8, 2014, the Second Circuit affirmed the District Court's decision finding that section 546(e) of the

52

Bankruptcy Code bars the Dismissed Claims. (*Picard v. Ida Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Dec. 8, 2014) (ECF Nos. 355, 346, 415, 357, 372, 315, and 320, respectively).

166.    On March 17, 2015, the Trustee and SIPC filed separate petitions for a writ of certiorari with the Supreme Court seeking to reverse the Second Circuit's December 8, 2014 opinion.

167.    On June 22, 2015, the U.S. Supreme Court denied the two petitions for certiorari filed by the Trustee and SIPC. (*Picard v. Ida Fishman Revocable Trust, et al.,* Case No. 14-1129 (U.S. Jun. 22, 2015); (*Picard v. Ida Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Jun. 22, 2015) (ECF Nos. 370, 361, 430, 372, 387, 330 and 335, respectively).

**B.**    **Litigation in the Bankruptcy Court and Related Appeals**

    **i.**    **Resolution of Good Faith Avoidance Actions**

168.    At the beginning of the Report Period, there were 286 active good faith avoidance actions. 56 were closed during the Report Period, leaving a total of 230 open good faith avoidance actions by the end of the Report Period.  In certain avoidance actions, the Trustee entered into several mediations and considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.  During the Report Period, three actions were dismissed pursuant to approved hardship applications, nine were dismissed due to findings of no liability, and four were dismissed due to judgments secured by the Trustee. In addition, the Trustee's professionals engaged in settlement negotiations, which led to 40 cases entering into documented settlements during the Report Period.

ii.     **Discovery Disputes**

169.    On October 4, 2016, the Bankruptcy Court issued an order appointing Frank

Maas, Esq. to serve as "Discovery Arbitrator" to "resolve various discovery disputes in any of

the Trustee's adversary proceedings" and "which have been specifically referred to him by the

Court with the consent of the parties to the dispute, including discovery disputes related to

electronically stored information, questions of privilege, confidentiality, work product,

relevance, scope and burden." Order Appointing A Discovery Arbitrator Pursuant to Bankruptcy

Rule 9019(c) and General Order M-390, *In re BLMIS, LLC,* Adv. Pro. No. 08-01789 (SMB)

(Bankr. S.D.N.Y. Oct. 4, 2016), (ECF No. 14227).

170.    During the Report Period, the Trustee and counsel for certain defendants

submitted letter briefs relating to ongoing discovery disputes to Judge Maas, participated in

telephonic conferences with Judge Maas, and engaged in extensive document reviews to locate

and produce identified documents and materials requested by certain defendants. Judge Maas

entered multiple orders related to the ongoing discovery disputes and work performed in specific

matters during the Report Period.

171.    On May 10, 2017, Judge Maas issued an order resolving discovery disputes in

*Picard v. Bruno Digiulian,* Adv. Pro. No. 10-04728 (SMB). Judge Maas ordered that

Defendants would not need to supplement their responses to the Trustee's Interrogatories if they

agreed via stipulation (a) not to challenge the accuracy of columns 1 through 5 of Exhibit B to

the Trustee's Complaint; (b) concede that the funds reflected in Column 5 of Exhibit B were

withdrawn from the Defendants' BLMIS account and received by the account holder; and (c) to

withdraw the Defendants' Twentieth Affirmative Defense, alleging that the Trustee has

"fraudulently calculated the Defendants' liability" by charging the Defendants with "withdrawals

that the Trustee has no proof were taken," the Twenty-Seventh Affirmative Defense, alleging

54

that the Trustee failed to credit properly "inter-account transfers, profit withdrawals, and other adjustments," and the Forty-Sixth Affirmative Defense, alleging that the Trustee failed to credit properly "all of the Defendants' deposits." *See* Discovery Arbitrator Order, ECF No. 68 (citing Discovery Arbitrator's Amended Order, ECF No. 62). However, Defendants failed to agree to all three aspects of the proposed stipulation, and proceeded to produce documents responsive to the Trustee's document requests only after Patsy DiGiulian, the personal representative of the estate of Bruno DiGiulian, was deposed. Judge Maas ruled that DiGiuliani could not rely on those documents to support any affirmative defenses other than her Sixteenth and Thirty-Seventh Affirmative Defenses, but may rely on any documents produced by the Trustee to support her affirmative defenses. *Id.*

172.    On March 15, 2017, Chaitman LLP ("Chaitman") noticed the Trustee of Rule 45 subpoenas to be served on ten former BLMIS employees in 87 separate adversary proceedings. After the parties corresponded via email, on March 21, 2017, the Trustee filed a letter with Judge Bernstein requesting a conference pursuant to Local Bankruptcy Rule 7007-1 in advance of the Trustee's proposed motion to quash the subpoenas. The hearing was held on May 31, 2017, and pursuant to an order issued on July 26, 2017, Judge Bernstein held that all compliance with those subpoenas were to be held in abeyance pending further consideration and order of the Bankruptcy Court following the deposition of Madoff. *See* Order Implementing The Court's May 31, 2017 And June 29, 2017 Bench Rulings On Multiple Discovery Disputes. *In re Madoff Sec.,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 26, 2017), ECF No. 16549.

(1)    Discovery Dispute Regarding Rule 45 Subpoenas

173.    On December 30, 2015, December 31, 2015, and January 1, 2016, on behalf of at least one defendant, Helen Saren-Lawrence, Chaitman filed letters with the Court, seeking to limit the scope of the Rule 45 subpoenas and to require the Trustee's counsel to arrange for all

Rule 45-related document productions to be first served on Chaitman for redaction of all personal and confidential information.  *See Picard v. Helen Saren-Lawrence*, Adv. Pro. No. 10-04898 (SMB), ECF Nos. 36, 38, 40, 46.   The Trustee filed letters in opposition, noting that Chaitman directly interfered with the Rule 45 subpoenas served by the Trustee and that the Trustee had concerns that Chaitman was not taking reasonable steps to preserve documents relevant to the adversary proceeding.  *See id.*, ECF Nos. 37, 39, 44, 45.

174.   On January 27, 2016, by chambers conference, the Trustee represented that he had served, and would continue to serve, Rule 45 subpoenas because of concerns of spoliation of evidence, but agreed that he would not seek to compel compliance with Rule 45 subpoenas by certain banks until 30 days after he served requests for admissions or proposed stipulations of fact on the defendants.  Chaitman also agreed she would not directly contact any of the subpoenaed banks served Rule 45 subpoenas.

175.   On February 25, 2016, on behalf of defendants in 11 adversary proceedings, including Helen Saren-Lawrence, Chaitman filed motions to dismiss pursuant to Fed. R. Civ. P. 37(b) and 41(b), joint cross-motions to quash the Rule 45 subpoenas, and motions to move the Court to enter a protective order barring the Trustee from compelling discovery of the personal bank records of the defendants in the 11 adversary proceedings.  *See e.g.*, Adv. Pro. No. 10-04898 (SMB), ECF Nos. 63-65.  On March 23, 2016, the Court denied Chaitman's motions.  *See* Order Implementing The Court's March 23, 2016 Bench Ruling ("Discovery Order"), Adv. Pro. No. 10-04898 (SMB), ECF No. 92.

176.   On April 15, 2016, Chaitman, on behalf of Helen Saren-Lawrence and James Lawrence, filed the Motion for Leave to appeal the Discovery Order, under 28 U.S.C. § 158(a)

56

and Federal Rule of Bankruptcy Procedure 8004, and to request a stay pending appeal.  *See* Adv. Pro. No. 10-04898 (SMB), ECF No. 98; No. 16-cv-03006 (ALC), ECF No. 1-4.

177.    On May 5, 2016, the Trustee filed his opposition to the Motion for Leave to appeal the Discovery Order, and on May 9, 2016, Chaitman filed her Reply Brief in further support of the Motion for Leave to appeal.  *See* No. 16-cv-03006 (ALC), ECF No. 6, 10.  The Motion for Leave was assigned to District Court Judge Andrew L. Carter.  *See* Civil Cover Sheet, No. 16 Civ. 03006 (ALC), ECF No. 5.  On March 27, 2017, Judge Carder denied the Motion for Leave to appeal.  *See* Order Denying Motion For Leave To Appeal, No. 16 Civ. 03006 (ALC), ECF No 14.

(2)      Discovery Dispute in Picard v. Roman, 10-04292 (SMB)

178.    On October 19, 2016, the Trustee served Defendant Robert Roman with his First Set of Requests for Production of Documents and First Set of Interrogatories, seeking, among other things, information regarding any communications Roman and/or Chaitman had with Madoff since the Filing Date.  Roman objected to those Discovery Requests claiming, among other things, that the communications were protected by the attorney-client and work product privileges.

179.    On May 17, 2017, the Trustee deposed Roman, who testified that he and Madoff had exchanged a total of six "letters" but was directed not to answer questions relating to those letters based on the work product privilege.

180.    On June 14, 2017, the Trustee filed his Motion to Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B) seeking to compel the production of the six "letters."  *See* 10-04292 (SMB) (Bankr. S.D.N.Y. June 14, 2017), ECF Nos. 87-89.  On June 20, 2017, Roman objected, arguing the discovery was irrelevant and privileged work product.  *See id.,* ECF Nos. 91-92.  At the June 29, 2017 hearing, the Bankruptcy Court directed Roman to produce a

privilege log and the underlying documents for *in camera* review, which consisted of four documents, including (1) a October 28, 2015 letter from the Romans to Madoff, attaching a draft of the "Declaration of Bernard L. Madoff," (the "Madoff Declaration") as prepared by Chaitman, (2) a blank transmittal email dated November 11, 2015 from the Romans to Chaitman, forwarding Madoff's edits to the Madoff Declaration, (3) an email dated October 8, 2015 sent by Chaitman to the Romans and other defendants, and (4) a November 11, 2015 letter from the Romans to Madoff attaching the execution version of the Madoff Declaration as well as a prior version of the Madoff Declaration with his edits. The parties submitted supplemental briefing on September 6, 2017.

181.    On October 17, 2017, the Bankruptcy Court ruled that the (1) drafts of the Madoff Declaration prepared by Chaitman, including the versions with Madoff's edits were protected work product, (2) the October 28, 2015 and November 11, 2015 letters should be produced with redactions as to Chaitman's instructions to Madoff regarding completion of the Madoff Declaration, and (3) the October 8, 2015 email sent by Chaitman should be produced with the portions containing opinion work product redacted. *Id.,* ECF No. 107.

### iii.    **Summary Judgment Motions**

182.    On January 26, 2017, Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson (the "South Ferry Defendants") entered into a stipulation with the Trustee setting a schedule for summary judgment motion practice. *See* Stipulation for Entry of Scheduling Order, *Picard v. South Ferry Bldg. Co.,* Adv. Pro. No. 10-04488 (SMB) (Bankr. S.D.N.Y. Jan. 26, 2017), ECF No. 77 (the "South Ferry Action").

183.    On January 26, 2017, Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson (the "South Ferry #2 Defendants") entered into a similar stipulation. *See* Stipulation for Entry of Scheduling Order, *Picard v. South Ferry #2, et al.,* Adv.

300453044.10

Pro. No. 10-04350 (SMB) (Bankr. S.D.N.Y. Jan. 26, 2017), ECF No. 86 (the "South Ferry #2 Action").

184.    On January 27, 2017, Defendant United Congregations Mesora ("Mesora") entered into a similar stipulation with the Trustee.  *See* Stipulation for Entry of Scheduling Order, *Picard v. United Congregations Mesora,* Adv. Pro. No. 10-05110 (SMB) (Bankr. S.D.N.Y. Jan. 27, 2017), ECF No. 53 (the "Mesora Action").

185.    On May 31, 2017, the South Ferry Defendants and South Ferry #2 Defendants with the Trustee, each entered into Joint Statements of Undisputed Facts that were so ordered by the Bankruptcy Court.  On June 6, 2017, Mesora and the Trustee entered into a similar Joint Statement.  *See* South Ferry Joint Statement of Undisputed Material Facts ("South Ferry Joint Statement"), South Ferry Action, ECF No. 83; South Ferry #2 Joint Statement of Undisputed Material Facts ("South Ferry #2 Joint Statement"), South Ferry #2 Action, ECF No. 90; Mesora Joint Statement of Undisputed Material Facts ("Mesora Joint Statement"); Mesora Action, ECF No. 57.

186.    On July 21, 2017, the South Ferry Defendants, South Ferry #2 Defendants, and Mesora (collectively, the "Defendants") filed a Joint Motion For Summary Judgment. The Trustee filed his own Motion For Summary Judgment.   *See* South Ferry Action, ECF Nos. 86-93, South Ferry #2 Action, ECF Nos. 95-102; Mesora Action, ECF No. 60-67.

187.    On September 5, 2017, the Defendants filed their opposition to the Trustee's Motion For Summary Judgment. The Trustee filed the same in response to the Defendants' Motion For Summary Judgment.   *See* South Ferry Action, ECF Nos. 96-97; South Ferry #2 Action, ECF Nos. 105-106; Mesora Action, ECF No. 70-71.

188.    On October 5, 2017, the Defendants filed their reply brief in further support of their Motion for Summary Judgment. The Trustee filed the same in further support of his Motion For Summary Judgment.  *See* South Ferry Action, ECF Nos. 100, 103; South Ferry #2 Action, ECF Nos. 109, 112; Mesora Action, ECF No. 74, 744.

### iv.    **Extraterritoriality**

189.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).  *See* discussion *supra* Section IX(A)(i)(b).

190.    On August 28, 2014, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") (ECF No. 7826).

191.    On December 10, 2014, this Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Scheduling Order").

192.    On December 31, 2014, the defendants filed a supplemental memorandum of law in support of their extraterritoriality motion to dismiss (the "Consolidated Motion to Dismiss"). Beginning on June 25, 2015 through June 29, 2015, the Trustee filed his responses to the defendants' supplemental memorandum of law in support of their extraterritoriality motion to dismiss, as well as addenda in all applicable adversary proceedings.

193.    On September 30, 2015, the defendants filed their supplemental reply memorandum in support of their extraterritoriality motion to dismiss and addenda in most applicable adversary actions.  This Court held a hearing on the motions to dismiss based on extraterritoriality on December 16, 2015.

60

194.   The Omnibus Motion is currently in abeyance under the ET Scheduling Order pending this Court's ruling on the extraterritoriality issues.

195.   On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss (the "Memorandum Decision"). *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (ECF No. 14495).

196.   Following entry of the Memorandum Decision, on January 18, 2017 and January 19, 2017, the Court entered So Ordered Stipulations Applying Omnibus Extraterritoriality Briefing and Memorandum Decision to Certain Joinder Defendants (collectively the "Joinder Orders"), applying the Memorandum Decision's international comity holding to certain defendants who were not previously subject to the Memorandum Decision. *Id.* at (ECF Nos. 14890 and 14915).

197.   Accounting for the Court's Joinder Orders and the Trustee's voluntary dismissal of certain claims or parties, the Memorandum Decision directed submission of Proposed Orders in ninety-one (91) adversary proceedings (the "ET Proceedings"). Examples of these actions include: *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.); *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y. filed Dec. 8, 2010); *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.); *Picard v. RD Trust*, Adv. No.

61

12-01701 (SMB) (Bankr. S.D.N.Y.); *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.); and *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

198.    On January 20, 2017, the Trustee and certain defendants in the seventeen (17) adversary proceedings where the Memorandum Decision did not dispose of all claims against all parties filed a Joint Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b). *See e.g.*, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. No. 09-01239 (SMB) (ECF No. 221).

199.    Between January 30, 2017 and March 10, 2017, the Court entered orders in all the ET Proceedings, including in seventy-four (74) adversary proceedings where the Trustee's claims were dismissed in whole or part ("Dismissed ET Actions").   *See e.g.*, Final Orders Granting Motions to Dismiss Complaint in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 110 entered Jan. 30, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 228, entered Mar. 10. 2017).

200.    Between March 3, 2017 and March 16, 2017, the Trustee filed timely notices of appeal in the Dismissed ET Actions. *See e.g.*, Notice of Appeal in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 117, entered Mar. 6, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 229, entered Mar. 16. 2017).

201.    Between March 20, 2017 and March 30, 2017 the Trustee timely filed Statements of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the Dismissed ET Actions. *See e.g.*, Statements filed in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 119, entered Mar. 20, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 234, entered Mar. 28. 2017).

202.    Between March 30, 2017 and April 2017, the Trustee and defendant-appellees in the Dismissed ET Proceedings jointly certified those appeals for direct review by the Second Circuit.[11]  *See, e.g.*, Certifications filed in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 121, entered Mar. 30, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 236, entered Apr. 4. 2017).

203.    On April 28, 2017, the Trustee filed Petitions for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in each of the Dismissed ET Actions with the Second Circuit.  *See Picard v. Banque Lombard Odier & Sie S.A.*, No. 17-1294 (2d Cir. Apr. 28, 2017).

204.    On June 1, 2017, the Trustee filed a motion to consolidate those 86 related appeals.  *See e.g.*, motions filed in *Picard v. Lombard Odier & Cie SA*, Case No. 17-1294 (ECF No. 11, entered June 1, 2017); *Picard v. Arden Asset Management Inc.*, Case No. 17-1333 (ECF No. 11, entered June 1, 2017); *Picard v. Dakota Global Investments, Ltd.*, Case No. (ECF No. 12, entered June 1, 2017).

205.    On June 14, 2017, the Second Circuit granted the Trustee's motion to consolidate the 86 related appeals ("Consolidated Appeal"). *See* Order Granting Motion in *Picard v. Lombard Odier & Cie SA*, Case No. 17-1294 (ECF No. 146, entered June 14, 2017) (the "Lead Case").

206.    On July 13, 2017, the Trustee filed a Petition with the Second Circuit for Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in *Picard v. Banco General S.A.*,

---

[11] All defendant-appellees in the Dismissed ET Proceedings consented to direct certification except for defendant ABN AMRO Bank, N.V. in *Picard v. ABN AMRO Bank, N.V.*, No. 11-02760 (SMB).  In that case, the Trustee requested the Bankruptcy Court certify the appeal on March 14, 2017.  *See* Petition Requesting Direct Appeal to Circuit Court, *Picard v. ABN AMRO Bank, N.V.*, No. 11-02760 (SMB) ECF Nos. 77, 78.  The Bankruptcy Court issued a Memorandum Decision Denying Request to Certify Judgment for Direct Appeal on May 4, 2017 (ECF NO. 88), which was subsequently withdrawn for lack of jurisdiction on July 19, 2017.  (ECF No. 97).  As of September 30, 2017, the case was pending before Judge Analisa Torres of the United States District Court for the Southern District of New York.  *See Picard v. ABN AMRO Bank, N.V.*, No. 17-cv-07476 (S.D.N.Y.).

Case No. 17-2328, which was subsequently docketed as the eighty-seventh related appeal in the Consolidated Appeal. *See* Lead Case (ECF No. 271, entered Aug. 2, 2017).

207.    On September 30, 2017, the Second Circuit entered an order granting Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in the 87 petitions filed by the Trustee on April 28, 2017, and July 13, 2017. *See* Lead Case *(*ECF No. 388, *as amended*, ECF Nos. 396, 397). The Trustee's merits brief is due on January 10, 2018.

## C.    **Subsequent Transferee Actions**

208.    To date, the Trustee has brought a total of 92 adversary proceedings seeking recovery of just over $7.2 billion in subsequent transfers from 150 defendants who redeemed money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd.

209.    The subsequent transferee defendants filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing by the Trustee and the defendants.  Among the issues affecting the subsequent transfer cases are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the avoidance of initial transfers through the settlement with Fairfield Sentry, Greenwich Sentry, Greenwich Sentry Partners, and various Tremont funds under Bankruptcy Code § 550, application of SLUSA, and the Trustee's standing to assert claims assigned to him.  The District Court issued its rulings on all of the issues affecting subsequent transferee cases and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

210.    Two subsequent transferee defendants filed motions to dismiss in the Bankruptcy Court.  Briefing on one motion has not yet been completed.  In the second motion, *Picard v. Bureau of Labor Insurance*, the defendant sought to dismiss based on the Foreign Sovereign Immunities Act, lack of personal jurisdiction, improper extraterritorial application of SIPA and

the Bankruptcy Code, the failure to avoid the initial transfers to Fairfield Sentry through the Fairfield Sentry settlement, and the statute of limitations under Bankruptcy Code § 550.  Adv. No. 11-02732 (BRL) (Bankr. S.D.N.Y.), (ECF No. 8–10).  On October 11, 2012, the Bankruptcy Court denied the motion to dismiss on all grounds.  (ECF No. 51).  On April 9, 2015, the Bureau of Labor Insurance filed a motion for judgment on the pleadings (ECF No. 86).  On June 9, 2015, the Trustee filed his memorandum in opposition to the motion for judgment on the pleadings (ECF No. 88).  On July 22, 2015, the Bureau of Labor Insurance filed its reply memorandum in support of its motion for judgment on the pleadings (ECF No. 96).  On July 29, 2015, this Court held a hearing on the Bureau of Labor Insurance's motion for judgment on the pleadings.  On November 22, 2016, this Court issued its decision granting the Bureau of Labor Insurance's motion for judgment on the pleadings. (ECF 110). On March 3, 2017, this Court filed the final order on the motion for judgment on the pleadings. (ECF No. 117). On March 16, 2017, the Trustee filed his Notice of Appeal of the decision.

211.    Following this Court's decision on the extraterritoriality motion to dismiss, the parties conferred on a scheduling order for the remaining briefing on the Trustee's Motion for Limited Discovery. On July 24, 2017, this court entered a scheduling order for the Trustee's Motion for Limited Discovery scheduling briefing due after September 30, 2017. (ECG No. 16428).  As of September 30, 2017, the response dates to the Trustee's subsequent transfer adversary proceedings not dismissed by this Court's decision on the extraterritoriality have been extended while the parties await this Court's ruling on the Trustee's Motion for Limited Discovery.

### (a)    Picard v. ABN AMRO Bank N.A.

212.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("ABN/RBS"), ABN AMRO

Incorporated ("ABNI"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited Ltd. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action").

213.    On September 30, 2011, ABN/RBS and ABNI moved for withdrawal of the reference. *Picard v. ABN AMRO Bank N.V.*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), (ECF Nos. 1-3).  On January 11, 2012, the Trustee and SIPC opposed the motion. *Id.*, (ECF Nos. 12-14).  On January 27, 2012, ABN/RBS and ABNI filed reply papers. *Id.*, (ECF No. 15).  The District Court granted the motion on May 15, 2012, allowing ABN/RBS and ABNI to move to dismiss as to the issues of 550(a) and 546(g). *Id.*, (ECF No. 21).

214.    On July 18, 2012, ABN/RBS and ABNI filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, (ECF Nos. 29-31).  On August 14, 2012, the Trustee filed an amended complaint naming only ABN/RBS and Rye Select Broad Market XL Fund, LP as defendants. *Id.*, (ECF No. 32).  On September 5, 2012, ABN/RBS filed a motion to dismiss the Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, (ECF Nos. 33-35).  On September 25, 2012, the Trustee and SIPC opposed the motion.  *Id.*, (ECF Nos. 36-37).  On October 5, 2012, ABN/RBS filed reply papers. *Id.*, (ECF No. 38).  On March 14, 2013, the District Court issued an order partially denying and partially granting the 546(g) motion, and stating that an opinion providing the reason for the ruling would follow. *Id.*, (ECF No. 39).  On April 15, 2013, the District Court issued its decision concerning Bankruptcy Code section 546(e). *Id.*, (ECF No. 40).

215.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), (ECF No. 56).

216.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which ABN/RBS and other defendants had moved to withdraw the reference.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (Bankr. S.D.N.Y. Apr. 27, 2014).  *See* discussion *supra* Section IX(A)(i)(b).

217.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (Bankr. S.D.N.Y. 2014).  *See* discussion *supra* Section IX(A)(i)(b).  Through the Extraterritoriality Opinion and Order, the ABN/RBS Action was remanded back to the Bankruptcy Court.  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 67).

218.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion").  *Id.*, (ECF No. 69).  *See* discussion *supra* Section IX(B)(iv). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

219.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a

67

mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, (ECF No. 73).

220.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, (ECF No. 78). Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

221.    On December 10, 2014, the Bankruptcy Court entered an Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Scheduling Order"). *Id.*, (ECF No. 89). *See* discussion *supra* Section IX(B)(iv).

222.    On December 31, 2014, Defendant filed the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to dismiss the claims listed in Exhibits A and B to the ET Scheduling Order (the "Consolidated Motion to Dismiss"). *Id.*, (ECF No. 90). *See* discussion *supra* Section IX(B)(iv).

223.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

224.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission. *Id.*, (ECF No. 93). The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

225.    On April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation").  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF No. 9720).   The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

226.    On June 26, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO Bank N.V. (presently known as the Royal Bank of Scotland, N.V.), and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO Bank N.V. (presently known as the Royal Bank of Scotland, N.V.).  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), (ECF Nos. 99-101).

227.    On September 30, 2015, Defendant filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of ABN AMRO N.V.'s Motion to Dismiss Based on Extraterritoriality.  *Id.*, (ECF Nos. 105-106).

228.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.  *Id.*, (ECF No. 107).

229.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision") that denied the Extraterritoriality Motion to Dismiss as to Defendant ABN/RBS and granted the

Trustee leave to amend. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 14495).

230.    On March 3, 2017, the Bankruptcy Court entered a Stipulated Order Denying Motion to Dismiss the Complaint, thereby settling the Memorandum Decision. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 117).

231.    On March 14, 2017, Defendant ABN/RBS filed a Motion for an Extension of Time to File a Notice of Appeal and Motion for Leave to Appeal (the "Motion for Extension of Time") of the Memorandum Decision. *Id.*, (ECF No. 118).   The Trustee did not oppose the Motion for Extension of Time, and, on March 28, 2017, the Bankruptcy Court granted the Motion for Extension of Time, thereby extending Defendant ABN/RBS's time to file a notice of appeal and move for leave to appeal to April 11, 2017. *Id.*, (ECF Nos. 122, 123).

232.    On April 11, 2017, Defendant ABN/RBS filed a Notice of Appeal to the United States District Court for the Southern District of New York from the Stipulated Final Order Denying Motion to Dismiss the Complaint. *Id.*, (ECF No. 124); *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 1).   Along with its Notice of Appeal, Defendant ABN/RBS also filed a Motion for Leave to Appeal from the Bankruptcy Court's Order Concerning its Motion to Dismiss Based on Extraterritoriality ("Motion for Leave to Appeal"). *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 3-5).

233.    On April 24, 2017, the Trustee filed the Memorandum of Law in Opposition to Defendant ABN/RBS's Motion for Leave to Appeal. *Id.*, (ECF No. 8).

234.   On May 2, 2017, Defendant ABN/RBS filed a Reply Memorandum of Law in Further Support of its Motion for Leave to Appeal.  *Id.*, (ECF No. 12).

235.   On July 11, 2017, the Trustee filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion.  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 130).

236.   On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on the Trustee's Motion for Leave to Replead and for Limited Discovery. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (Bankr. S.D.N.Y.) (ECF No. 16428).

### (b)    Picard v. ABN AMRO (Ireland) Ltd. (Fortis)

237.   On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye Select Broad Market XL Portfolio Limited.  *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN (Ireland) Action").

238.   On September 30, 2011, the ABN AMRO Defendants moved for withdrawal of the reference.  *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (JSR) (Bankr. S.D.N.Y.), ECF No. 1-3.  On January 11, 2012, the Trustee opposed the motion to withdraw the reference. (ECF Nos. 13-14).  On January 27, 2012, the ABN AMRO Defendants filed reply papers.  (ECF Nos. 15-16).  The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland) Defendants to move to dismiss as to the issue of Bankruptcy Code section 546(g).

71

(ECF No. 22).   The ABN (Ireland) Defendants participated in Common Briefing on the Stern Issue, the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the Antecedent Debt Issue.   *Picard v. ABN AMRO (Ireland) Ltd.,* No. 11 Civ. 6877 (JSR) (Bankr. S.D.N.Y.), (ECF No. 22).   The District Court has rendered decisions on all of these Common Briefing issues, which are discussed *supra* Section IX(A)(i)(b).

239.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims.  (ECF Nos. 27–29).

240.    On November 29, 2012, the District Court heard oral argument on the ABN (Ireland) Defendants' motion to dismiss, as well as two other motions raising Bankruptcy Code section 546(g) (the "546(g) Motions").   On February 15, 2013, the District Court issued a bottom line order partially denying and partially granting the 546(g) Motions (ECF No. 41).   On December 26, 2013, the District Court issued its opinion concerning the 546(g) Motions, confirming and explaining the February 15, 2013 bottom line order.  (ECF No. 43).

241.    Prior to that, on April 15, 2013, the District Court issued the Bad Faith § 546(e) Opinion and Order.  (ECF No. 42).  See discussion *supra* Section IX(A)(i)(b).

242.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 50).

243.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which certain of the ABN (Ireland) Defendants and other defendants had moved to withdraw the reference.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2014 WL 1651952 (Bankr. S.D.N.Y. Apr. 27, 2014).  See discussion *supra* Section IX(A)(i)(b).

300453044.10

244.   In July 2014, the District Court issued the Extraterritoriality Opinion and Order. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (Bankr. S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and Order, the ABN (Ireland) Action was remanded back to the Bankruptcy Court. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF No. 63).

245.   Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, (ECF No. 65). See discussion *supra* Section IX(b)(iv). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Court directed the parties to confer and devise an efficient procedure and briefing schedule.

246.   On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions were working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, (ECF No. 69).

247.   On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id.*, (ECF No. 74). Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

248.   On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id.*, (ECF No. 85). *See* discussion *supra* Section IX(B)(iv).

249.   On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id.*, (ECF No. 86). *See* discussion *supra* Section IX(B)(iv).

250.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

251.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  *Id*., (ECF No. 89).  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

252.    On April 1, 2015, the Court entered the Third Stipulation.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB), (ECF No. 9720).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

253.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd. and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd.  *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF Nos. 95–97).

254.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Based on

Extraterritoriality and in Reply to the Trustee's Motion for Leave to Amend Complaints, *Id.*,

(ECF Nos. 101–102).

255.    On December 16, 2015, Judge Bernstein heard the Motions to Dismiss Based on

Extraterritoriality. *Id.*, (ECF No. 104).

256.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision

Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision") that

granted the Extraterritoriality Motion to Dismiss as to Defendants. *Sec. Inv. Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495). *See*

discussion *supra* Section IX(B)(iv).

257.    On January 20, 2017, the Trustee filed a Motion for Entry of Final Judgment

Pursuant to Federal Rule of Civil Procedure 54(b) and an accompanying Joint Memorandum of

Law in Support of Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil

Procedure 54(b). *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF

Nos. 116–17).

258.    On March 9, 2017, the Bankruptcy Court entered a Stipulated Final Order

Granting Motion to Dismiss Count Four of the Amended Complaint, thereby settling the

Memorandum Decision as to Defendants. *Id.*, *(*ECF No. 119).

259.    On March 16, 2017, the Trustee filed a Notice of Appeal from, *inter alia*, the

Stipulated Final Order Granting Motion to Dismiss Count Four of the Amended Complaint. *Id.*,

(ECF No. 120).

260.    On March 28, 2017, the Trustee filed the Trustee's Statement of Issues To Be

Presented and Designation of Items To Be Included in the Record on Appeal. *Id.*, (ECF No.

124).

261.    On April 4, 2017, the Trustee filed the Certification of Direct Appeal to the Court of Appeals. *Id.*, (ECF No. 126).

262.    On July 11, 2017, the Trustee filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion.  *Id.*, (ECF No. 129).

263.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery.  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 16428).

### (c)    Picard v. BNP Paribas

264.    The Trustee has brought several adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas")—who redeemed money from feeder funds that invested with BLMIS.  *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").

265.    BNP Paribas filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in consolidated subject matter briefing pending in the District Court.

76

Among the Common Briefing issues affecting the BNP Paribas Proceedings are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the avoidance of initial transfers through settlements with feeder funds that invested with BLMIS. The District Court has issued opinions on each of the withdrawn issues and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for proceedings consistent with the District Court's opinions.

266.    On December 31, 2014 BNP Paribas filed a Motion to Dismiss (the "Motion to Dismiss") relating to the question of extraterritoriality.  *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC,* Adv. Pro. No. 12-01576 (SMB), (ECF No. 52).

267.    On November 22, 2016 the Bankruptcy Court issued a Memorandum Decision (the "Memorandum Decision") that granted in part and denied in part the Motion to Dismiss. *See Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495).

268.    On March 9, 2017 the Bankruptcy Court entered a Dismissal Order (the "Dismissal Order") consistent with the Memorandum Decision.  *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 12-01576 (SMB), (ECF No. 88).

269.    On August 30, 2017 the Trustee filed an Amended Complaint against BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BNP Paribas S.A., BNP Paribas Securities Services S.A. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 12-01576 (SMB), (ECF No. 100).

270.    On September 14, 2017 the parties entered into a stipulation and order governing BNP Paribas's pending motions in response to the Trustee's Amended Complaint.  On or before October 25, 2017 BNP Paribas shall file any motion and supporting memorandum of law ("BNP

Paribas's Motion") in response to the Amended Complaint. On before December 20, 2017, the Trustee shall file a memorandum of law in response to BNP Paribas's Motion (the "Trustee's Opposition Brief"). On or before January 19, 2018, BNP Paribas shall file a reply memorandum of law to the Trustee's Opposition Brief. Oral arguments on BNP Paribas's Motion is currently scheduled for March 6, 2018 at 2:00 p.m.

### (d)    Picard v. Citibank

271.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

272.    On November 2, 2011, Citibank moved for withdrawal of the reference. *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.), (ECF Nos. 1–3). On March 2, 2012, the Trustee opposed the motion to withdraw the reference, and oral argument was held on May 1, 2012. *Id.*, (ECF Nos. 13–15). On July 2, 2012, the District Court granted Citibank's motion, allowing Citibank to move to dismiss as to the issues of Bankruptcy Code sections 550(a) and 546(g), and directing Citibank to participate in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR) (S.D.N.Y. July 3, 2012), (ECF No. 214). The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

273.    On August 15, 2012, Citibank filed a motion to dismiss, claiming that the safe harbor of Bankruptcy Code section 546(g) bars Trustee's subsequent transferee claims. *Picard*

300453044.10

*v. Citibank*, No. 11 Civ. 782, (S.D.N.Y.) (ECF Nos. 25–28).  On November 29, 2012 the District

Court held oral argument on Citibank's motion to dismiss jointly with two other motions raising

the 546(g) issue.  On February 15, 2013, the District Court issued a bottom line order partially

granting and partially denying the 546(g) motions, noting that a full opinion would follow.  *Sec.*

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR), (Bankr. S.D.N.Y.)

(ECF No. 451).  The court issued its full decision in an opinion and order on December 26, 2013.

*Picard v. Citibank*, No. 11 Civ. 7825 (S.D.N.Y.) (ECF No. 37).

274.    On October 5, 2012, Citibank filed a motion to dismiss based on § 550 of the

Bankruptcy Code, asserting that the Trustee must first obtain a judgment of avoidance as to the

initial transferees before pursuing recovery of subsequent transfers from Citibank.  *Sec. Investor*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR), (S.D.N.Y.) (ECF No. 384).

On December 12, 2012, Judge Rakoff issued a bottom line ruling denying defendants' motion to

dismiss in its entirety.  *Id.*, (ECF No. 422).  The court issued its full decision in an opinion and

order on October 30, 2013.  *Picard v. Citibank*, No. 11 Civ. 7825, (S.D.N.Y.) (ECF No. 36).

275.    On April 27, 2014, Judge Rakoff issued the Good Faith Standard Opinion and

Order, upon which Citibank and other defendants had moved to withdraw the reference.

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (Bankr.

S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).  Through this decision, the

Citibank Action was remanded back to the Bankruptcy Court.

276.    In July 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order.

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014).

*See* discussion *supra* Section IX(A)(i)(b).

277.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion").    *Picard v. Citibank*, Adv. Pro. No. 10-05345, (Bankr. S.D.N.Y.) (ECF Nos. 71-73).    *See* discussion *supra* Section IX(B)(iv).    Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

278.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed upon order that will set forth a proposed process and briefing schedule.

279.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.    Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

280.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *See* discussion *supra* Section IX(B)(iv).

281.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *See* discussion *supra* Section IX(B)(iv).

282.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective

submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (SMB) (ECF Nos. 8990, 9350).

283.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

284.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (SMB), (ECF No. 9720). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

285.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints.

286.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

287.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

288.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision"). *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495).  *See* discussion *supra* Section IX(B)(iv).

289.    On January 18, 2017, the Bankruptcy Court entered the So Ordered Stipulation Applying Omnibus Extraterritoriality Briefing and Memorandum Decision to Certain Joinder Defendants (the "Joinder Stipulation"), applying the Memorandum Decision, subject to the reservations of rights and limitations set forth therein, to Defendant Citigroup Global Markets Limited. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14890).

290.    On March 9, 2017, the Bankruptcy Court entered a Stipulated Final Order Granting In Part and Denying In Part Motion to Dismiss (the "Stipulated Final Order"), thereby settling the Memorandum Decision and dismissing all of the Trustee's claims as to Defendant Citigroup Global Markets Limited. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB).

291.    On March 21, 2017, the Trustee filed a Notice of Appeal from, *inter alia*, the Stipulated Final Order. *Id.*, (ECF No. 109).

292.    On March 28, 2017, the Trustee filed the Trustee's Statement of Issues To Be Presented and Designation of Items To Be Included in the Record on Appeal. *Id.*, (ECF No. 111).

293.    On July 11, 2017, the Trustee filed a proposed order setting forth a proposed process and briefing schedule concerning further proceedings on the Omnibus Motion. *Id.*, (ECF No. 118).

294.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 16428).

295.    On September 27, 2017, the Trustee's appeal from the Stipulated Final Order was docketed in the United States Court of Appeal for the Second Circuit as No. 17-3139.  *Picard v. Citigroup Global Markets Limited*, No. 17-3139 (2d. Cir. 2017) (ECF No. 1).

## D.    Bad Faith/Feeder Fund Actions

296.    The Trustee has approximately 27 bad faith and feeder fund actions still pending as of the end of the Report Period.  A few will be highlighted below.

### (a)    Picard v. Avellino

297.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

298.    On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court.  *A&B Action* (ECF Nos. 23-27).  In addition, on June 7, 2011, certain A&B Defendants moved to withdraw the reference to the Bankruptcy Court.  *Id.* (ECF Nos. 28–30); *see also Picard v. Avellino*, No. 11-cv-03882 (JSR) (S.D.N.Y.) (the "A&B Withdrawal Action").

299.    The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011.  On February 29, 2012, the District Court issued a Memorandum Order withdrawing the reference on certain issues of law raised by the A&B Defendants and other defendants named in separate adversary proceedings commenced by the Trustee.  *A&B Withdrawal Action* (ECF No. 20).  As a result of the District Court's order, during

83

the period of May 2012 through October 2012, the Trustee and the A&B Defendants joined in consolidated briefing and oral arguments on the withdrawn issues of law. *See A&B Withdrawal Action* (ECF Nos. 21–23).

300.    Following the disposition of the Common Briefing issues, the Trustee and the A&B Defendants filed a coordinated briefing schedule on August 7, 2014. *A&B Action* (ECF No. 81). Per the schedule, on September 24, 2014, certain A&B Defendants filed a Renewed Motion to Dismiss, incorporating their previous June 6, 2011 pleading. *A&B Action* (ECF Nos. 82-84). On November 24, 2014, the Trustee filed an amendment to the original complaint (the "A&B Amended Complaint") in response to the Renewed Motion to Dismiss. *A&B Action* (ECF No. 86). The Trustee and the A&B Defendants conferred and filed an amended coordinated briefing schedule on January 14, 2015. *A&B Action* (ECF No. 87). Under the schedule, certain A&B Defendants filed a Motion to Dismiss the A&B Amended Complaint on January 28, 2015. *A&B Action* (ECF Nos. 88-89).

301.    The Trustee and A&B Defendants again conferred and filed an amended coordinated briefing schedule on April 7, 2015. *A&B Action* (ECF No. 91). Under the schedule, the Trustee's time to respond to the Motion to Dismiss the A&B Amended Complaint was up to and including May 21, 2015 and oral argument was scheduled for and held on July 29, 2015. At oral argument, Judge Bernstein requested supplemental briefs by the Trustee and the A&B Defendants on issues raised in the Motion to Dismiss briefing, which were filed on August 12, 2015. *A&B Action* (ECF Nos. 102, 104).

302.    On July 21, 2016, Judge Bernstein issued his memorandum decision and order (collectively, "July 21 Decision and Order"), granting in part and denying in part the Motion to Dismiss. *A&B Action* (ECF Nos. 116, 117). In the July 21 Decision and Order, Judge Bernstein

300453044.10

held that, due to changes in the corporate form at BLMIS, the Trustee was legally incapable of recovering fraudulent transfers made prior to January 1, 2001. *A&B Action* (ECF Nos. 116, 117).

303.   Consequently, on August 19, 2016, the Trustee filed a Motion to Reargue ("Motion to Reargue") this specific aspect of the July 21 Decision and Order. *A&B Action* (ECF No. 125). SIPC filed a Memorandum in Support on August 19, 2016. *A&B Action* (ECF No. 123). The A&B Defendants opposed the Trustee's Motion to Reargue and filed their opposition papers on September 19, 2016. *A&B Action* (ECF No. 129). The Trustee replied to their opposition on October 3, 2016. *A&B Action* (ECF No. 134). The Bankruptcy Court denied the Motion to Reargue. *A&B Action* (ECF No. 136). On November 2, 2016, the A&B Defendants filed answers to the A&B Amended Complaint. *A&B Action* (ECF Nos. 137-144). Additionally, certain A&B Defendants filed counterclaims against the Trustee. *A&B Action* (ECF Nos. 140-141, 143). On January 27, 2017, the Trustee filed answers to these counterclaims. *A&B Action* (ECF Nos. 151-153). On March 20, 2017, the Trustee and the A&B Defendants filed their case management plan with the Bankruptcy Court. *A&B Action* (ECF No. 158). A pre-trial conference concerning general case management is currently scheduled before Judge Bernstein for November 29, 2017. *A&B Action* (ECF No. 166).

304.   On April 5, 2017, defendant Michael Bienes died and a suggestion of death was filed. *A&B Action* (ECF No. 161). On June 15, 2017, the Trustee and the A&B Defendants agreed to a stipulation, which was so ordered by the Bankruptcy Court, extending the Trustee's time to move to substitute the Estate of Michael Bienes and the personal representative in place of deceased defendant Michael Bienes. *A&B Action* (ECF No. 162).

300453044.10

305.    During the Report Period, the Trustee drafted and served his initial disclosures and requests for the production of documents on most of the A&B Defendants, reviewed the A&B Defendants' initial disclosures and responses to the Trustee's requests for production, reviewed documents, including those produced by certain A&B Defendants, produced documents to the A&B Defendants, prepared for depositions and performed overall case management.

(b)    **Picard v. Andrew H. Madoff**

306.    During the Report Period, the Trustee's adversary proceeding against the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"), entitled *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB) came to a conclusion.  On June 23, 2017, the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government") and the Estates entered into a Stipulation and Order of Settlement (the "Stipulation"), which resolved all of the Trustee's claims against the Estates and various Madoff-related business entities.[12]  Stephanie Mack was also a party to the Stipulation.  On June 26, 2017, the United States District Court for the Southern District of New York approved the Stipulation.  On July 24, 2017, this Court approved the Trustee's motion pursuant to Bankruptcy Rule 9019 seeking approval of the Stipulation (ECF No. 311).

307.    In pertinent part, the Stipulation required the Estates to transfer all of their assets, which consisted of cash, marketable securities and private investment fund and business interests, to the Trustee and the Government, with the exception of certain retention and reserve amounts they were permitted to retain.  The Stipulation also required Ms. Mack to transfer

---

[12] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

$1,500,000 to the Trustee and the Government. The Trustee and the Government share all assets received under the Stipulation equally.

308.    As of September 30, 2017, the Trustee has received $9,366,343.29 in cash under the Stipulation, which represents his share of all of the cash, except for the retention and reserve amounts described above, and the cash value of certain of the marketable securities held by the Estates, and of the $1,500,000 transfer by Ms. Mack under the Stipulation. The Trustee is now in the process of maintaining and liquidating other marketable securities and the private investment fund and business interests transferred by the Estates under the Stipulation.

### (c)    Picard v. Cohmad Sec. Corp.

309.    On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn ("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB).

310.    The complaint seeks to avoid and recover the fictitious profits withdrawn by the Cohmad Defendants and the return of commissions and fees transferred directly from BLMIS to Sonny Cohn and Cohmad. On October 8, 2009, the Trustee filed an amended complaint. (ECF No. 82). The Cohmad Defendants filed numerous motions to dismiss, which the Trustee opposed. (ECF No. 135).

311.    On August 1, 2011, this Court issued its Memorandum Decision and Order Denying Defendants' Motions to Dismiss Trustee's Complaint. (ECF No. 209). This Court

87

found that the Trustee had adequately pleaded that the transfers received by the Cohmad Defendants in excess of their principal were not transferred for reasonably equivalent value, and Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff. *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 332–34 (Bankr. S.D.N.Y. 2011).

312.    Certain of the Cohmad Defendants filed a motion for leave to appeal. *See Picard v. Cohmad Sec. Corp.*, No. 11 MC 00337 (TPG) (S.D.N.Y.), (ECF Nos. 212–13).  The Cohmad Defendants' appeal was denied by Judge Griesa on November 14, 2012.

313.    In March and April 2012, the Cohmad Defendants moved to withdraw the reference from this Court. *Picard v. Cohmad*, No. 12-cv-02676 (JSR) (S.D.N.Y.), (ECF No. 1). The Cohmad Defendants have also participated in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue. *See* discussion *supra* Section (IX)(A)(i)(b).  The District Court rendered a decision on the Bad Faith § 546(e) Issue, which indicated that the Trustee adequately pleaded a case against the Cohmad Defendants so that the Cohmad Defendants are not entitled to dismiss the Trustee's complaint at the pleading stage on the basis of Bankruptcy Code Section 546(e).

314.    Meanwhile, the parties have engaged in discovery.  The Trustee served discovery on third parties, conducted depositions of third parties, and discovery is ongoing.

315.    On April 18, 2017, a Fourth Amended Case Management Plan was so ordered by the Court extending the date that discovery closes to February 2, 2018.

316.    On October 2, 2017, Linda Schoenheimer McCurdy was dismissed from this adversary proceeding.

(d)    **Picard v. Magnify Inc.**

317.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these

300453044.10

accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (SMB). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39).

318.   On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to withdraw the reference to the District Court on several grounds. *See Picard v. Magnify, Inc.*, No. 12-cv-02482 (JSR) (S.D.N.Y.). These defendants have since resolved the Trustee's claims and have been dismissed from the action.

319.   Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of personal jurisdiction on September 1, 2011, and supplemented this motion with regard to allegations in the amended complaint on November 3, 2011. *Picard v. Magnify*, Adv. No. 10-05279 (SMB) (ECF Nos. 32, 48). On June 14, 2012, this Court held a hearing on Mr. Brunner's motion to dismiss for lack of personal jurisdiction. This Court denied the motion and ordered jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and profited from [defendants] Magnify, Premero and Strand" and entered an order to this effect on June 15, 2012. (ECF No. 97). Determination of personal jurisdiction over Mr. Brunner was stayed pending resolution of a motion to dismiss for lack of personal jurisdiction and *forum non conveniens* filed in *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB), a now-settled avoidance action against defendants who have ties to the late founder of several of the Magnify Defendants.

300453044.10

320.    Mr. Brunner subsequently resolved the Trustee's claims and was dismissed from the *Magnify* action without prejudice on February 5, 2015.  The *Igoin* defendants' motion was denied on February 13, 2015.

321.    On September 21, 2015, the Trustee voluntarily dismissed Defendant Special Situations Cayman Fund, L.P., from the action with prejudice.

322.    On May 1, 2017, the parties entered into an amended case management plan. Pursuant to this plan, the Trustee corresponded with counsel for the Magnify Defendants regarding deficiencies in discovery responses and the production of documents, and continued to confer with opposing counsel regarding the filing of a proposed Second Amended Complaint. The Trustee also continued to work with experts to analyze strategic issues relating to the case. On September 29, 2017, the Trustee filed his Second Amended Complaint pursuant to a stipulation and order granting leave to amend.

323.    In addition, in December 2015, the Trustee filed two separate actions in Israel under Israeli law to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts.  In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including identification of documents responsive to the defendants' discovery requests, dealing with logistical and strategic issues relating to the production of documents in a foreign country, and successfully moving for entry of a protective order governing the disclosure of personally identifying information.   The Trustee also worked with Israeli counsel on the filing of a motion for leave to amend the statement of claim to incorporate newly-discovered facts, as well as a response to certain defendants' motion to strike arguments made by the Trustee in an earlier pleading.

300453044.10

### (e)    Picard v. Stanley Shapiro

324.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.  *See Picard v. Shapiro*, Adv. No. 10-05383 (SMB).

325.    In early 2014, the Trustee filed a second amended complaint against the Shapiro Defendants.  The Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code.  In late 2015, the Bankruptcy Court issued a written decision in which it granted in part and denied in part the Shapiro Defendants' motion (ECF No. 59).

326.    During the Report Period, the Trustee continued to engage in discovery in the action, including producing certain further categories of relevant documents to the Shapiro Defendants, attempting to resolve certain discovery disputes with the Shapiro Defendants, seeking the Bankruptcy Court's assistance relating to such disputes, continuing to seek stipulations from several of the Shapiro Defendants, and issuing subpoenas to third parties.  Also during the Report Period, the Trustee continued to develop his case against the same.

### (f)    Picard v. PJ Administrators

327.    On December 10, 2010, the Trustee commenced an action against American Securities Management, L.P., PJ Associates Group, L.P., and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million,

300453044.10

including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers,

fraudulent conveyances and damages in connection with certain transfers of property by BLMIS

to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-

05415 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

328.    During the Report Period, the Trustee prepared for continued litigation in this

action and engaged in mediation with counsel for the PJ Defendants as part of continued efforts

to explore the prospect of resolving this matter.

### (g)    Picard v. Picower

329.    This matter categorizes time spent by the Trustee and B&H attorneys in

connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and

Barbara Picower, both individually and as trustees for various foundations, and related entities

(collectively, the "Picower Defendants").  The Trustee's lawsuit sought recovery of nearly $7

billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for preferences, fraudulent conveyances, and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the Picower Defendants. *Picard v.

Picower*, Adv. No. 09-01197 (SMB).

330.    On January 13, 2011, this Court entered an Order (the "Picower Settlement

Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M.

Picower et al.  (ECF No. 43).  BLMIS claimants Adele Fox ("Fox") and Susanne Stone Marshall

("Marshall"), who brought actions against the Picower Defendants in Florida, appealed the

Picower Settlement Order.  (ECF Nos. 45, 49).  On March 26, 2012, United States District Judge

John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and

permanently enjoining certain duplicative or derivative actions against the Picower Defendants.

300453044.10

*Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).  On further appeal, the Second Circuit affirmed the District Court's decision on January 13, 2014.  *See In re Bernard L. Madoff Inv. Sec., LLC*, 740 F.3d 81 (2d Cir. 2014).

331.    A forfeiture action against Picower's estate resulted in the additional recovery of more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement.  *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.).  On May 23 and 24, 2011, United States District Judge Thomas P. Griesa entered a final order of forfeiture in favor of the United States.  (ECF Nos. 16, 17).  The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued.  *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), ECF No. 85.

332.    Because the time to appeal the final order of forfeiture expired, the settlement amount of $5 billion was transferred to the BLMIS estate and the Customer Fund.  Part of the proceeds from the Picower settlement has been distributed to customers, and the balance will be distributed in due course.

333.    B&H attorneys are also currently proceeding with litigation to enjoin third party actions that the Trustee has argued are subject to the permanent injunction issued in connection with the Trustee's settlement with the Picower Defendants (the "Permanent Injunction").  During the Report Period, there have been developments in the District Court and the Second Circuit with respect to these proceedings.

E.      **Feeder Funds**

      (a)      **The HSBC Action**

334.     On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action").   After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS.  (ECF No. 35).

335.     The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference.   On April 14, 2011, United States District Judge Jed S. Rakoff ("Judge Rakoff") withdrew the reference to consider the Trustee's standing to assert common law claims. *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (JSR) (S.D.N.Y.), (ECF Nos. 20, 23).

336.     On May 3, 2011, the same defendants filed motions to dismiss. *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (ECF Nos. 24–27).  The Trustee and SIPC opposed the motions. (ECF Nos. 32–36).  On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them. *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).  The District Court returned the remainder of the HSBC Action to this Court for further proceedings. *Id.* at 38.

337.     On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC*, No. 11-5175 (2d Cir. 2011); *Picard v. HSBC*

94

*Bank PLC*, No. 11-5207 (2d Cir. 2011).  Oral argument was held on November 21, 2012.  On

June 20, 2013, the Second Circuit affirmed the decision of the District Court.  (ECF No. 163).

338.    On October 9, 2013, the Trustee filed a petition for a writ of certiorari with the

Supreme Court.  *See Picard v. J.P. Morgan Chase & Co.*, *pet. for cert. filed*, (U.S. Oct. 9, 2013)

No. 13-448.  The Supreme Court denied the petition.

339.    The District Court returned several of the Trustee's bankruptcy claims to this

Court; however, various defendants in the HSBC Action moved to withdraw the reference from

this Court and those motions have been granted, at least in part, by the District Court.  These

defendants participated in a variety of motions before the District Court on Common Briefing,

including the Bad Faith § 546(e) Issue, the § 502(d) Issue, the Extraterritoriality Issue, and the

Good Faith Standard Issue.  The District Court's disposition of these Common Briefing issues is

discussed *supra* in Section IX(A)(i)(b).  The HSBC Action has been returned to the Bankruptcy

Court.

340.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed

the Omnibus Motion.  (ECF No. 7827).  *See* discussion *supra* Section IX(B)(iv).  Following a

request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to

discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order

and the Omnibus Motion.  The Court directed the parties to confer and devise an efficient

procedure and briefing schedule.  The Omnibus Motion is being held in abeyance pending the

Bankruptcy Court's ruling on the extraterritoriality issues.

341.    The Trustee, with the Court's approval, settled his claims against Herald Fund

SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million

in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

300453044.10

342.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate.  (ECF No. 16431).

343.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate.  (ECF No. 16430).

344.    On October 20, 2017 this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 482).   Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

### (b)    The Luxalpha Action

345.    On December 10, 2014, the Court entered the ET Scheduling Order.   *See* discussion *supra* Section IX(B)(iv).  The ET Scheduling Order provided certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Issue and the Omnibus Motion.

346.    On December 31, 2014, the transferee defendants listed in Exhibits A and B to the ET Scheduling Order (the "Defendants Group")—including the moving Access Defendants[13] in the Luxalpha Proceeding (defined below), M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding (defined below), and the UBS Defendants[14] in the Luxalpha and LIF Proceedings—filed their Consolidated Motion to Dismiss in connection with their Omnibus Motion regarding the

---

[13] The moving Access Defendants consist of Access International Advisors Ltd., Access Management Luxembourg SA (f/k/a Access International Advisors (Luxembourg) SA), Access Partners SA, Patrick Littaye, and Pierre Delandmeter.

[14] The UBS Defendants consist of UBS AG, UBS (Luxembourg) SA, UBS Fund Services Luxembourg SA, and UBS Third Party Management SA.

Extraterritoriality Issue. *Picard v. UBS AG*, Adv. Pro. No. 10-4285 (SMB) (Bankr. S.D.N.Y.) (the "Luxalpha Proceeding"); *Picard v. UBS AG*, Adv. Pro. No. 10-05311 (SMB) (Bankr. S.D.N.Y.) (the "LIF Proceeding"). *See* discussion *supra* Section IX(B)(iv).

347.    On June 26, 2015, the Trustee filed submissions opposing moving defendants' Consolidated Motion to Dismiss regarding the Extraterritoriality Issue in the Luxalpha and LIF Proceedings.   These submissions included a proffered Second Amended Complaint in the Luxalpha Proceeding, and a proffered Amended Complaint in the LIF Proceeding.

348.    On September 30, 2015, the moving Access Defendants in the Luxalpha Proceeding, M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, and the UBS Defendants in the Luxalpha and LIF Proceedings filed reply papers in further support of their Consolidated Motion to Dismiss regarding the Extraterritoriality Issue.

349.    On April 4, 2016, the Trustee and the defendants in the LIF Proceeding and the Luxalpha Proceeding, which the parties had agreed should be coordinated for scheduling purposes, participated in a conference under Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f)" Conference) to discuss, among other things, a schedule for discovery.   At the joint Rule 26(f) Conference, the Trustee provided the defendants with a presentation on the procedures for the Trustee's discovery process and protocols, with an explanation of how the Trustee produces relevant documents through an electronic data room.

350.    However, at the Rule 26(f) conference and in additional meet and confers, the parties disputed the appropriate timing of the commencement of discovery under the Federal Rules or otherwise.   The Trustee asserted that the Federal Rules permit the immediate commencement of discovery in the proceedings and that further delay of discovery would result in the loss of evidence relevant to the events underlying the Trustee's claims in the proceedings

300453044.10

and would unduly prejudice his ability to prosecute those claims.  In connection with the Rule 26(f) conference, the Trustee served requests for the production of documents under Rule 34 of the Federal Rules of Civil Procedure.

351.    The defendants objected to the commencement of discovery under the Federal Rules or otherwise, asserting that certain pending motions, including the Extraterritoriality Motion, the Trustee's motion for leave to amend his complaints, and the defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and anticipated motions to dismiss on other grounds (the "Anticipated Motions") will affect the identity of the parties and the scope of discovery in the proceedings, making the commencement of discovery premature at this time and proposed that, in an effort to make progress while the parties awaited the Court's decision on the Extraterritoriality Motion, (a) the parties move forward with briefing on the Anticipated Motions, or (b) in the alternative, the parties be permitted to pursue document discovery overseas by letters of request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").

352.    Unable to resolve their dispute concerning the appropriate time for the commencement of discovery, counsel for the Trustee and certain parties appeared before the Honorable Stuart M. Bernstein on April 27, 2016 for a status conference.  Having considered the parties' positions at the April 27 status conference, Judge Bernstein permitted the Parties to commence document discovery through the Hague Convention under an Order entered on May 18, 2016 in both proceedings ("International Discovery Orders").

353.    On November 22, 2016, Judge Bernstein issued a decision on the Defendants Group's Extraterritoriality Motion, dismissing the subsequent transfer claims against the defendants in the Luxalpha and LIF actions who joined the Extraterritoriality Motion: the

moving Access Defendants in the Luxalpha Proceeding, M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding, and the UBS Defendants in the Luxalpha and LIF Proceedings.  On January 19, 2017, the Trustee voluntarily dismissed Reliance Management (Gibraltar) Ltd. from the LIF proceeding. *See* discussion *supra* Section IX(B)(iv).

354.    On March 9, 2017, the Bankruptcy Court entered so-ordered stipulations in both proceedings dismissing the subsequent transferee claims against the defendants who joined the Extraterritoriality Motion. On March 16, 2017, the Trustee filed notices of appeal, appealing the Bankruptcy Court's November 22, 2016 decision to the Second Circuit. (ECF No. 233).

355.    Between March 20, 2017 and March 30, 2017 the Trustee timely filed Statements of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the Dismissed ET Actions. *See e.g.*, Statements filed in Luxalpha Proceeding (ECF No. 235); LIF Proceeding (ECF No. 248).

356.    During the Report Period, the Trustee continued his international discovery efforts in order to investigate relevant facts pertaining to the Luxalpha Proceeding and LIF Proceeding, pursuant to the International Discovery Orders. The Trustee also continued to develop his case against Defendants, analyzed evidence in preparation for amending the complaints, and began preparing a draft Second Amended Complaint in light of the Court's extraterritoriality decision.

### (c)      Picard v. Kingate

357.    The Trustee is seeking to avoid and recover over $926,000,000 in initial transfers to the Kingate Funds, and to equitably subordinate their customer claims, on the grounds set forth in the Fourth Amended Complaint filed in *Picard v. Federico Ceretti*, Adv. No. 09-01161

99

(SMB) (Bankr. S.D.N.Y.) (ECF No. 100).  During the Report Period, the parties have devoted substantial time to discovery and resolving discovery-related disputes.

358.   The only matter not involving discovery during the Report Period has been the Certification of Direct Appeal (the "Certification") to the U.S. Court of Appeals for the Second Circuit from the Bankruptcy Court's omnibus decision dismissing certain defendants in approximately 86 actions on the ground that the Trustee's right to recover avoidable transfers does not extend  extraterritoriality, or on comity grounds.  *See SIPC v. BLMIS*, No. 08-01789 (SMB) WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016).  The Trustee filed the Certification on April 4, 2017.  The Certification affects all of the Trustee's avoidance and recovery proceedings subject to the Court's ruling.  On appeal in the Kingate proceeding is the Bankruptcy Court's dismissal of the Ninth Count of the Fourth Amended Complaint against all of the non-Kingate Fund defendants on comity grounds (ECF No. 291).

359.   On April 5, 2017, the Trustee's counsel wrote to the Discovery Arbitrator, the Honorable Frank Maas (retired), setting forth the Trustee's position as to the relevance to the Trustee's avoidance and recovery action in the Kingate proceeding of the documents produced to the Joint Liquidators by their defendants in a civil action they commenced in Bermuda.  All such documents were in the Joint Liquidators' possession, custody, or control.  The Joint Liquidators responded by letter dated April 26, 2017 to Judge Maas.  On May 10, 2017, counsel for the respective parties participated in a telephonic conference before Judge Maas, and his Report and Recommendation to the Bankruptcy Court dated May 26, 2017, was adopted by the Bankruptcy Court by Order dated May 30, 2017 (ECF No. 16098).

360.   The Trustee and the Joint Liquidators continued to work on other document discovery during the Report Period.  On April 6, 2017, the Trustee produced an additional

approximately 7,500 non-confidential documents that were in the Third Party Data Rooms and certain other documents requested by the Joint Liquidators and referenced in the Trustee's answers to interrogatories propounded by the Joint Liquidators for the Kingate Funds. On May 12, 2017, the Joint Liquidators produced documents to the Trustee sourced from the Bank of Bermuda.

361.    On May 17, 2017, the Trustee filed with the Bankruptcy Court his motion for issuance of a letter of request to the Bermuda Supreme Court (ECF No. 294) seeking discovery in aid of the U.S. avoidance and recovery proceeding, particularly, to obtain discovery from Mr. Christopher Wetherill.    On May 22, 2017, the Joint Liquidators filed a response seeking modifications to the proposed order (ECF No. 296).    On May 23, the Trustee replied to the Joint Liquidators' response, and the Court granted the Trustee's motion by Order dated May 30, 2017 (ECF No. 299).

362.    On June 29, 2017, the Joint Liquidators produced to the Trustee approximately 147,000 documents from the Bermuda production.    Soon thereafter, on July 13, 2017, the Trustee made his eleventh production of documents to the Joint Liquidators, followed by a twelfth document production on August 9, 2017.

363.    At the same time that document discovery was moving forward with the Joint Liquidators, the Trustee was engaged in meet and confer discussions with counsel for Tremont. On July 26, 2017, the Court conducted a status conference concerning document production by Tremont, at which the Trustee informed the Court we intended to file a motion to compel the production of documents.    Following that status conference, respective counsel for Tremont and the Trustee continued to confer on discovery, ultimately reaching an agreement based on a

300453044.10

mutually agreed upon set of search terms. On September 4, 2017, Tremont produced approximately 54,000 documents electronically.

364.    On September 22, 2017, the Bankruptcy Court so ordered the Second Amendment to Case Management Report extending the close of fact discovery to July 31, 2018, and other deadlines commensurate with that extension, without prejudice to further extensions.

365.    Throughout the Report Period, in addition to foreign counsel, the Trustee's counsel has continued to work with the Trustee's consultants in analyzing documents obtained through discovery that further support the Trustee's claims in the Fourth Amended Complaint against the Kingate Funds.

### (d)    Picard v. J. Ezra Merkin

366.    On May 7, 2009, the Trustee commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"); the investment management company he solely owned, Gabriel Capital Corporation ("GCC"); and his funds, Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund Ltd. ("Ariel Fund"), and Ascot Partners, L.P. ("Ascot Partners") (collectively, the "Merkin Defendants"[15]). (ECF No. 1). The Trustee alleged that Merkin knew or should have known that Madoff's investment advisory business ("IA Business") was predicated on fraud. Among other things, the Trustee sought the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law, for preferential and fraudulent transfers that were made by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.) (ECF No. 1-2). On August 6, 2009, the Trustee filed an amended complaint. (ECF No. 10).

---

[15] Ascot Fund Ltd. was added as a defendant on August 30, 2014 and will be included in the definition of "Merkin Defendants" for all events after this date.

367.    On August 30, 2013, the Trustee filed the third amended complaint (the "Third Amended Complaint"), which alleges that the Merkin Defendants had knowledge of, or were willfully blind to, the fraud at BLMIS consistent with the District Court's recent decisions. (ECF No. 212). The Third Amended Complaint also asserted subsequent transfer claims against Ascot Fund Ltd. ("Ascot Fund"), a Cayman fund controlled by Merkin.

368.    On October 11, 2013, the Receivers, Merkin and GCC filed motions to dismiss the Third Amended Complaint. (ECF Nos. 160, 166, 168). On November 15, 2013, the Trustee filed a consolidated opposition brief in response to these motions to dismiss. (ECF No. 173). On December 20, 2013, the Receivers and Merkin and GCC filed briefs in further support of their motions to dismiss. (ECF Nos. 185-188).

369.    The Trustee entered into a stipulation with Ascot Fund extending its time to move, answer, or otherwise respond to the Third Amended Complaint. (ECF Nos. 159, 171). Ascot Fund ultimately filed a motion to dismiss the Third Amended Complaint on December 20, 2013. (ECF Nos. 182-183). On December 23, 2013, the Trustee and Ascot Fund entered into a stipulation which clarified the subsequent transfer counts of the Third Amended Complaint against Ascot Fund. (ECF No. 189). The Trustee filed his opposition to the Ascot Fund motion to dismiss on January 31, 2014. (ECF Nos. 198-199).

370.    On April 30, 2014, this Court heard oral arguments on the motions to dismiss. (ECF No. 210). Thereafter, on August 12, 2014, this Court entered its Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 212). The Court found that the Third Amended Complaint "adequately pleads willful blindness" and that the Trustee may thus still pursue avoiding and recovering all of the intentional fraudulent transfers that he brought under section 548(a)(1)(A) of the Bankruptcy Code. The Court also found that the Trustee did

not sufficiently plead that the Merkin Defendants had "actual knowledge" of Madoff's fraud.  As

a result, the Court held that section 546(e) of the Bankruptcy Code limits the Trustee's avoidance

counts to those asserted under section 548(a)(1)(A), and dismissed the Trustee's counts for

preferential transfers, constructive fraudulent transfers, and fraudulent transfers under New York

Debtor & Creditor Law.  The Court also dismissed the Third Amended Complaint's counts of

disallowance and equitable disallowance on bases unrelated to actual knowledge.

371.    On January 30, 2015, fact discovery concluded, except for limited matters agreed

upon by the parties.  (ECF No. 264).

372.    On February 5, 2015, Ariel Fund and Gabriel Capital, Ascot Partners and Ascot

Fund, and Merkin and GCC filed their respective answers to the Third Amended Complaint.

(ECF Nos. 259-261).

373.    On March 20, 2015, the Trustee, Merkin, and GCC served expert reports pursuant

to Rule 26(a)(2) of the Federal Rules of Civil Procedure.  (ECF No. 264).  On May 15, 2015, the

Trustee and the Merkin Defendants served rebuttal expert reports.  (ECF No. 264).  Expert

discovery concluded on July 17, 2015.  (ECF No. 264).

374.    On May 29, 2015, the Trustee filed a Motion For Entry of Order Pursuant to

Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of

Bankruptcy Procedure Approving A Settlement Agreement Between the Trustee, Gabriel

Capital, L.P. Ariel Fund LTD., and Bart M. Schwartz as the Appointed Receiver of Gabriel

Capital, L.P. and Ariel Fund Ltd (the "Settlement Motion").  (ECF Nos. 266-267).  On June 22,

2015, the Trustee filed a Certificate of No Objection as to the Settlement Motion, representing

that there had been no objection, responsive pleading, or request for a hearing with respect to the

Settlement Motion by the deadline for filing objections and requesting that the order be entered

300453044.10

without a hearing.  (ECF No. 268).  On June 23, 2015, this Court entered an Order granting the Settlement Motion and approving the settlement agreement between the Trustee, Gabriel Capital, Ariel Fund, and the Ariel/Gabriel Receiver.  (ECF No. 270).  On September 8, 2015, the Trustee, Gabriel Capital, and Ariel Fund entered into a stipulation dismissing Gabriel Capital and Ariel Fund from the action with prejudice.  (ECF No. 282).

375.    On August 10, 2015, the Trustee filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF Nos. 271-273); *see also Picard v. Merkin*, No. 15-cv-06269 (the "Trustee's Withdrawal Motion").

376.    On August 11, 2015, Merkin, GCC, Ascot Partners and Ascot Fund filed respective letters to this Court requesting a pre-motion conference regarding the defendants' intention to file a motion for summary judgment of all the Trustee's remaining claims.  (ECF Nos. 275-276).  On August 21, 2015, this Court permitted the remaining defendants to file motions for summary judgment.  (ECF No. 281).

377.    On August 24, 2015, the remaining defendants filed an opposition to the Trustee's Withdrawal Motion. *Trustee Withdrawal Motion* (ECF Nos. 5-6).

378.    On September 3, 2015, the Trustee withdrew his Withdrawal Motion, as all parties to the action stipulated and consented to: (a) entry of final orders and judgments by the Bankruptcy Court on all claims in this adversary proceeding; (b) waiver of their right to a jury trial; and (c) a bench trial before the Bankruptcy Court on all claims in this proceeding. *Trustee Withdrawal Motion* (ECF No. 10).  On September 17, 2015, the parties had a conference before the District Court where it confirmed the parties' consent to try the case to final judgment before the Bankruptcy Court.  (ECF Nos. 278-280); *Trustee Withdrawal Motion* (ECF Nos. 11-12).

300453044.10

379.    On October 7, 2015, the remaining defendants filed their respective motions for summary judgment.  (ECF Nos. 283-287).  The Trustee filed his opposition on November 25, 2015.  (ECF Nos. 289-302).  The remaining defendants filed their respective replies in support of their motions on December 23, 2015.  (ECF Nos. 306-310).  On June 1, 2016, this Court heard oral argument on the remaining defendants' motions for summary judgment.  (ECF Nos. 315, 318, 322).

380.    On August 22, 2016, the Trustee and remaining defendants had an in-person mediation session, with the Honorable Robert E. Gerber, a retired judge of this Court, serving as mediator.  (ECF No. 325).  After the August 22, 2016 in-person mediation session, Judge Gerber then had a number of telephone conversations with both sides, which continued through September 2, 2016.  (ECF No. 325).  On September 6, 2016, Judge Gerber filed his Mediator's Final Report, which informed the Court that the mediation was unsuccessful.  (ECF No. 325).

381.    On January 30, 2017, this Court entered its Decision Granting in Part and Denying in Part Defendants' Motions For Summary Judgment.  (ECF No. 327).  The Court denied the defendants' motions, with the exception of granting summary judgment dismissing the Trustee's subsequent transfer claims against Ascot Partners, due to the Trustee informing the Court that he will no longer be pursuing these claims.

382.    During the Report Period, the parties filed motions in limine in anticipation of trial.  The parties filed their initial motions in limine on April 7, 2017, and the parties filed their corresponding oppositions to these motions on May 10, 2017 and reply briefs on June 13, 2017 and July 10, 2017.  (ECF Nos. 332-338, 340-360, 362-376, 384-387, 390-393, 396-398, 400-404, 406).  The defendants also filed a motion in limine related to the issue of subsequent transfers on May 17, 2017.  (ECF Nos. 378-380).  The Trustee filed an opposition to this motion on June 13,

106

2017, and the remaining defendants filed their corresponding reply brief on June 23, 2017. (ECF Nos. 394-95, 403).

383.    During the Report Period, the parties entered a stipulation, which was so ordered by this Court, as to certain undisputed facts related to transactions in Ascot Partners' and Ascot Fund's BLMIS accounts. (ECF No. 361).

384.    During the Report Period, on May 22 2017, the parties stipulated to re-open fact discovery for the limited purpose of deposing certain witnesses. (ECF No. 381). The parties completed the last of these depositions on July 19, 2017.

385.    During the Report Period, this Court heard oral argument on the motions in limine on July 18, 2017 and August 9, 2017. (ECF Nos. 408, 413).

386.    During the Report Period, the parties filed additional briefing on issues related to equitable subordination, and the burdens of proof and persuasion at trial based on issues raised by this Court during oral argument on August 9, 2017. The remaining defendants filed a motion in limine regarding equitable subordination on August 23, 2017, the Trustee filed his opposition on September 15, 2017, and the remaining defendants filed their reply brief on September 29, 2017. (ECF Nos. 411, 415, 423). Additionally, on September 29, 2017, the parties filed letter briefs regarding the burden of proof and the burden of persuasion at trial. (ECF Nos. 419, 421).

387.    During the Report Period, on August 24, 2017, the Trustee and remaining defendants entered into a Twentieth Case Management Plan. (ECF No. 414). The plan provided for a settlement conference before this Court on October 11, 2017, which was rescheduled to October 30, 2017. The plan also provides that the final pretrial conference and trial will be held on dates that are to be determined by this Court, with the parties filing their Joint Pretrial Order and Trial Briefs at least 30 days prior to date of trial.

300453044.10

388.     During the Report Period, the Trustee prepared and finalized the briefing on his

and the remaining defendants' motions in limine and the stipulation with the remaining

defendants as to certain undisputed facts related to transactions in Ascot Partners' and Ascot

Fund's BLMIS accounts.     Additionally, the Trustee prepared for and participated in the

depositions of certain witnesses in connection with the limited re-opening of discovery.  Further,

the Trustee prepared for and participated in oral argument before this Court in connection with

the parties' respective motions in limine.  The Trustee also prepared for the October 30, 2017

settlement conference and continued to prepare for a potential trial before this Court.

### (e)     Picard v. Legacy Capital Limited

389.     On December 6, 2010, the Trustee commenced an action against Legacy Capital

Ltd., Isaac Jimmy Mayer, Rafael Mayer, Khronos LLC, Khronos Capital Research LLC,  HCH

Management Co., Montpellier Resources Ltd., BNP Paribas Securities Corp., Inversiones

Coque S.A., Aurora Resources Ltd., and Olympus Assets LDC,  seeking the return of over

$218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants.

*Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. 2010).

390.     During the Report Period, B&H attorneys prepared for continued litigation in this

action.  In support of this effort, B&H attorneys continued to identify relevant witnesses in the

United States and abroad and procured information regarding Legacy and relevant third party

witnesses identified in the Legacy's initial disclosures.

391.     During the Report Period, B&H attorneys, on behalf of the Trustee, proceeded

with expert discovery in accordance with the Case Management Order, and negotiated the

production and confidentiality de-designation of documents to be served from third parties.

108

Expert discovery in this adversary proceeding concluded on July 20, 2017. The Trustee submitted three expert reports during the Report Period in connection with the entered Case Management Order.

392.    During the Report Period, the Trustee continued to develop his case against Defendant Legacy, and prepared Rule 2004 subpoenas for third parties in connection with potential subsequent transferee claims.

393.    B&H attorneys, on behalf of the Trustee, continued in the preparation of a motion for summary judgment against Defendant Legacy in connection with Count One of the Amended Complaint.  Additionally, B&H attorneys prepared a proposed joint stipulation of undisputed facts in connection with the motion for summary judgment.

394.     During the Report Period, B&H attorneys, on behalf of the Trustee and Legacy, met and conferred regarding the possibility of mediation; however, given their respective positions, the parties agreed that mediation would not be productive.

395.    On June 28, 2017, the parties participated in a pre-motion conference before Judge Bernstein in connection with the Trustee's proposed motion for summary judgment. During the conference, Judge Bernstein recommended that in lieu of a motion for summary judgment, the parties should proceed to trial and work together to develop a pre-trial schedule in connection with Count One of the Amended Complaint.

396.    During the Report Period, B&H attorneys, on behalf of the Trustee prepared pre-trial submissions including witness and exhibits lists, as well as pre-trial orders.

### (f)    Picard v. Fairfield Greenwich

397.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners,

300453044.10

L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).

398.   On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95).  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

399.   As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.   Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

400.   On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107).  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity

300453044.10

claim from approximately $143 million to approximately $37 million, for a combined reduction

of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their

claims against Fairfield Greenwich Group management and agreed to share with the Trustee any

recoveries they receive against service providers.

401.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed

motions to withdraw the reference on a number of issues that later became subject to Common

Briefing and hearings before Judge Rakoff of the District Court.  The Trustee briefed and

presented argument at the hearings on these issues before the District Court.  The District Court

has issued its opinions providing guidance to this Court and remanded the cases for further

findings applying the standards set forth in the District Court's opinions.

402.    On June 6, 2012, the Trustee filed additional recovery actions against entities or

persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*,

Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), Picard v. Barrenche Inc., Adv. No. 12-01702

(BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr.

S.D.N.Y.).  The parties in the *Toub* action have entered into a stipulated stay as permitted by this

Court.   None of the defendants in the three actions have responded yet to the Trustee's

complaints.

403.    On November 6, 2012 in the District Court, in a putative class action filed by

former Fairfield Funds investors against several Fairfield Greenwich Group partners and

management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a

motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09

Civ. 118 (S.D.N.Y.), (ECF No. 997).  On November 29, 2012, the Trustee filed an application

seeking an injunction against the implementation of the settlement.  *See Picard v. Fairfield*

*Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), (ECF No. 2).  On December 21,

2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF

No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the

reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, No. 12 Civ. 9408 (VM)

(S.D.N.Y.), (ECF No. 30).   On March 20, 2013, the District Court denied the Trustee's

application seeking an injunction against the implementation of the *Anwar* settlement.  (ECF No.

59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the

Trustee's application for an injunction against the implementation of the *Anwar* settlement.

(ECF No. 61).

404.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion

conference on a motion to intervene in the *Anwar* action.  (ECF No. 1054).  On March 8, 2013,

the District Court deemed the pre-motion conference letter to be a motion to intervene and

denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of

appeal from the order denying his request to intervene in the *Anwar* action.  (ECF. No. 1106).

405.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013.

Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Second

Circuit denied the Trustee's request for an injunction.  (ECF No. 181).

406.    On November 22, 2016, this Court issued its decision on the extraterritoriality

motion to dismiss. *See* discussion *supra* Section IX(B)(iv).  Under the decision, some of the

claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were

dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the

joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties

agreed to consent to the entry of final judgments on the Court's extraterritoriality decision.

Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit. On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.,* No. 17-1294 (2d Cir.), (ECF No. 388).

407.    On April 7, 2017, following his death, the Trustee dismissed his claims against defendant Charles Murphy. (ECF No. 238). On April 19, 2017, the Trustee dismissed his claims against defendant FG Investors, Inc., an entity owned by Charles Murphy, in the *Barrenche* action. (ECF No. 106).

408.    As of September 30, 2017, the parties are determining the process to comply with the Omnibus Order to schedule the response dates to the Trustee's complaints as to those claims not dismissed by the extraterritoriality motion to dismiss decision.

409.    On June 20, 2016, the Joint Liquidators filed a motion with this Court in the Fairfield Funds Chapter 15 proceedings to approve the assignment of the Fairfield Funds' claims against certain management individuals and entities as included in the settlement between the Trustee and the Joint Liquidators that was previously approved by this Court. *In re Fairfield sentry Limited, et al.,* Adv. No. 10-13164 (SMB). (ECF No. 805).  On July 5, 2016, the Trustee filed a memorandum in support of the motion. (ECF No. 810).  On July 5, 2016, two Fairfield Fund investors filed an objection to the motion. (ECF No. 809).  On July 12, 2016, this Court held a hearing on the Joint Liquidators' motion. On March 22, 2017, this Court issued its decision denying the motion without prejudice and further noting it was unclear whether a motion was required to make the assignment.

300453044.10

### (g)    Picard v. Square One

410.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd., Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefit of the Square One Defendants. *Picard v. Square One Fund, Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

411.    On March 30, 2012, all Square One Defendants except for Circle Partners moved to withdraw the reference. (ECF No. 36). On April 2, 2012, Circle Partners moved to withdraw the reference. (ECF No. 37).

412.    On July 30, 2014, the motions to withdraw the reference were returned to the Bankruptcy Court. (ECF No. 68); *see also* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 7546).

413.    On August 28, 2014, the Trustee filed the Omnibus Motion. Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y.), (ECF No. 70). *See* discussion *supra* Section IX(B)(iv). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

414.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

114

415.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

416.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *See* discussion *supra* Section IX(B)(iv).

417.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 8990, 9350).

418.    On April 1, 2015, the Court entered the Third Stipulation.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 9720).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

419.    On June 16, 2015, the Court entered the Stipulation And Order For Dismissal of Defendants Partners Advisers S.A., Circle Partners, Luc D. Estenne, Square Asset Management Ltd., and Kathryn R. Siggins.  (ECF No. 102).

420.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints.

421.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum

of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

422.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee

Defendants' Motion to Dismiss Based on Extraterritoriality.

423.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision

Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision").

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-01789 (SMB)

(Bankr. S.D.N.Y.), (ECF No. 14495).  *See* discussion *supra* Section IX(B)(iv).

424.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further

Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery.  *Sec. Inv.*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr.

S.D.N.Y.), (ECF No. 16428).

### (h)    Picard v. Rye/Tremont

425.    On December 7, 2010, the Trustee commenced an action against Tremont Group

Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund,

and numerous other entities and individuals (collectively, the "Tremont Funds") in which the

Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent

conveyances in connection with certain transfers of property by BLMIS to or for the benefit of

the Tremont Funds (the "Tremont Litigation").  *Picard v. Tremont Group Holdings, Inc.*, Adv.

No. 10-05310 (SMB) (Bankr. S.D.N.Y.).

426.    After the court filing, the parties entered into substantive settlement negotiations.

On September 22, 2011, this Court approved a settlement between the Trustee and more than a

dozen domestic and foreign investment funds, their affiliates, and a former chief executive

116

associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 38). (There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio")).

427.    Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account which, as noted below, subsequently was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion. Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement. (ECF No. 38).

428.    As stated above, Tremont delivered $1.025 billion into an escrow account on November 6, 2012. The settlement payment was released from the escrow account to the Trustee on February 8, 2013. Accordingly, the Trustee allowed certain customer claims related to Tremont.

429.    On February 10, 2012, XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

430.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled and had approved

300453044.10

the latter action.   Upon the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

431.    Subsequent to the dismissal of the Maxam and Tremont cases, strategy and investigation for proposed actions and amended proceedings against subsequent transferees has continued.   This includes work related to issues concerning extraterritoriality of some of the proposed defendants, analysis consistent with various recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself.

## F.    **Injunction Proceedings**

432.    The Trustee commenced numerous injunction actions seeking to enjoin third party lawsuits brought against defendants who also have been named as defendants in the Trustee's avoidance actions.   Through these proceedings, the Trustee has sought to enforce the automatic stay established by § 362 of the Bankruptcy Code and related District Court stays, and/or to enjoin third party actions under § 105 of the Bankruptcy Code in order to facilitate the orderly administration of the BLMIS liquidation, and to preserve assets from which the Trustee may recover for the benefit of all BLMIS customers.   During the Report Period, there have been developments in the Bankruptcy Court, the District Court, and the Second Circuit with respect to these proceedings.

### i.    **Picard v. Marshall**

433.    The Trustee was previously successful in enjoining Adele Fox and other plaintiffs (the "Fox Plaintiffs") from pursuing putative class actions they had brought in 2010 against the Picower estate and related entities (the "Picower Parties") in view of the Trustee's settlement with the Picower Parties and the permanent injunction ("Permanent Injunction") issued as part of the settlement, precluding claims that duplicate or derive from claims the Trustee brought or could have brought against the Picower Parties.   This Court's decision barring the Fox Plaintiffs'

118

suits was affirmed by the District Court and Second Circuit. *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014).

434.   On February 5, 2014, shortly after the Second Circuit's affirmance, the Fox Plaintiffs brought a motion in Florida District Court to bring a second amended complaint against the Picower Parties as "control persons" of BLMIS under the federal securities laws ("*Fox II*").  The Trustee successfully enjoined the Fox Plaintiffs from proceeding with their new proposed class action in violation of the automatic stay and Permanent Injunction. *See Picard v. Marshall*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014).  In the same action, the Trustee also successfully enjoined another set of plaintiffs (the "Goldman Plaintiffs") from bringing a putative class action against the Picower Parties, as discussed further below.  On May 11, 2015, the Court's decision and order was affirmed by the District Court. *Picard v. Marshall*, 531 B.R. 345, 350 (S.D.N.Y. 2015) (Koeltl, J.).

435.   Meanwhile, shortly after appealing this Court's decision in *Fox II* to the District Court, the Fox Plaintiffs moved in this Court for a deposition of Bernard Madoff and others under Federal Rule of Bankruptcy Procedure 2004 and, with respect to Bernard Madoff's deposition, under Federal Rule of Civil Procedure 27(a) and (b).  On October 30, 2014, this Court denied the motion in full except it found that it lacked jurisdiction to rule on the request for Bernard Madoff's deposition under Rule 27(a). *Picard v. Marshall*, No. 14-01840, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014).

436.   The Fox Plaintiffs subsequently brought a Rule 27(a) petition for a deposition of Bernard Madoff in Delaware District Court, which declined to rule on the petition and transferred the case to the District Court. *In re Marshall*, No. 15-MC-01, 2014 WL 849302 (D.

Del. Feb. 25, 2015).  The Fox Plaintiffs unsuccessfully petitioned the Third Circuit to vacate the transfer order.  *In re Marshall*, No. 15-1590 (3d Cir. 2015).

437.    On May 11, 2015, the District Court denied the Rule 27 petition after hearing oral argument jointly with argument on the *Fox II* appeal.  *Marshall v. Madoff*, 15-MC-56, 2015 WL 2183939 (S.D.N.Y. May 11, 2015).  The District Court held that the Fox Plaintiffs appeared to be bringing the petition for the improper purpose of crafting a third amended complaint and failed to show any urgent need for the deposition.  *Id.* at 3.

438.    The Fox Plaintiffs appealed this decision to the Second Circuit, which consolidated the appeal with the appeal of the District Court's decision on the *Fox II* injunction. The Second Circuit dismissed the appeals on September 25, 2015 after the Fox Plaintiffs abandoned the appeals.  (Order, *Marshall v. Capital Growth Co. et al.*, 15-1869 (lead), (ECF No. 70) (2d Cir. Sept. 25, 2015).)

439.    On August 29, 2015, while the appeals to the Second Circuit were still pending, the Fox Plaintiffs brought a declaratory judgment action and motion seeking to file a third amended complaint against the Picower Parties ("*Fox III*").  The Fox Plaintiffs again alleged that the Picower Parties were control persons of BLMIS and incorporated testimony from a recently disclosed deposition of Bernard Madoff.  In support of their claim, the Fox Plaintiffs also introduced on reply a declaration from Bernard Madoff in an unrelated case, which made references to Mr. Picower.  The Fox Plaintiffs also stated in their papers that they intended to seek Bernard Madoff's deposition.  The Trustee and Picower Parties objected to the Fox Plaintiffs' motion on the ground that the *Fox III* complaint was, like the predecessor complaints, duplicative and derivative of the Trustee's complaint, and further objected to the inclusion of Bernard Madoff's declaration in this action.

440.    Counsel for the Fox Plaintiffs then moved in this Court on March 9, 2016 in an unrelated matter for the deposition of Bernard Madoff.   The Trustee and Picower Parties objected to the motion in part on the ground that counsel would improperly seek testimony concerning Mr. Picower, which was irrelevant to the matter.   On March 23, 2016, this Court issued a bench ruling allowing counsel to depose Mr. Madoff, but prohibited any reference to Mr. Picower during the deposition.

441.    On March 7, 2017, after oral argument, this Court issued a memorandum decision denying the Fox Plaintiffs' motion for summary judgment and dismissing the *Fox III* complaint. The Court found that many of the allegations in *Fox III* were identical to the allegations in *Fox II*, and the damages sought were likewise the same.  (Slip Op. at 13-14.)  With respect to the new allegations in *Fox III* about Mr. Picower's alleged role as a control person, the Court found that the allegations were "practically identical" to the allegations in *Goldman III* (discussed further below), which this Court and the District Court had ruled were insufficient and common to all BLMIS customers.   (Slip Op. at 15-18.)   This Court further held that Bernard Madoff's deposition and declaration did not supply the factual material supporting non-derivative claims that was missing from the Fox Plaintiffs' earlier complaints.  (Slip op. at 23-24.)  This Court also held that the allegations failed to identify any conduct by the Picower Parties that was directed at a member of the putative class.  (*Id.* at 26.)

442.    On March 30, 2017, the Fox Parties filed a Notice of Appeal to the District Court, and the appeal has been briefed. (*See Marshall v. Capital Growth Co.*, 17-cv-02230 (VSB) (S.D.N.Y.)). Oral argument has not been scheduled.

**ii.**    **Picard v. A&G Goldman Partnership**

443.    In December 2011, moved before this Court to lift the automatic stay so that they could file putative securities class actions against the Picower Parties.  *Sec. Investor Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (S.D.N.Y. Dec. 13, 2011), (ECF No.

4581).  On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion as

duplicative and derivative of the Trustee's settled claims and thus in violation of the Permanent

Injunction as well as the automatic stay.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, 477 B.R. 351, 352–53 (Bankr. S.D.N.Y. 2012).

444.    The Goldman Plaintiffs appealed to the District Court.  *See A & G Goldman*

*P'ship v. Picard*, No. 12-cv-06109 (RJS) (S.D.N.Y. Aug. 10, 2012).  On September 30, 2013,

after oral argument, the District Court issued a decision affirming the Bankruptcy Court's

decision and order.  *A & G Goldman P'ship v. Picard*, No. 12 Civ. 6109 (RJS), 2013 WL

5511027 (S.D.N.Y. Sept. 30, 2013).  The Goldman Plaintiffs did not further appeal the District

Court's decision.

445.    On January 6, 2014, the Goldman Plaintiffs filed a new action in the District

Court for the Southern District of Florida, seeking to file a new complaint against the Picower

Parties ("*Goldman II*").  On March 11, 2014, the Trustee successfully sought injunctive relief

against both the Goldman Plaintiffs and the Fox Plaintiffs, as discussed above.  The Goldman

Plaintiffs appealed the decision and order, but subsequently withdrew their appeal.

446.    On August 28, 2014, the Goldman Plaintiffs brought a new action against the

Picower Parties in the United States District Court for the Southern District of Florida, again

seeking to allege securities law claims against the Picower Parties ("*Goldman III*").    On

November 17, 2014, the Trustee brought an adversary proceeding in this Court to enforce the

Permanent Injunction against the Goldman Plaintiffs.  The Picower Parties also brought a motion

to enforce the Permanent Injunction against the Goldman Plaintiffs and the two actions were

consolidated.

300453044.10

447.    On February 17, 2016, this Court granted the Trustee's and Picower Parties' motions.  *See Picard v. A&G Goldman P'ship,* 14-02407, 2016 WL 625076 (Bankr. S.D.N.Y. Feb. 17, 2016).  The Court held that the Goldman Plaintiffs sought to recover for conduct that was incidental to withdrawals that formed the basis of the Trustee's claims and for injuries that were identical to those suffered by customers generally.  *Id.* at *11.  The Court thus held that the Goldman Plaintiffs' claims were, like the earlier iterations of the claims, derivative of the claims the Trustee had settled, and were thus enjoined by the Permanent Injunction.  *Id.*  The Goldman Plaintiffs appealed the decision and order to the District Court.

448.    On January 24, 2017, the District Court issued an order and decision affirming this Court's order and decision. (*A&G Goldman P'ship v. Capital Growth Co.*, 16-CV-2058, ECF No. 45 (S.D.N.Y. Jan. 24, 2017)).  The District Court found that the claims in *Goldman III* were derivative, could be brought by any BLMIS creditor, and were not based on conduct by the Picower Parties that was directed to the Goldman Plaintiffs or the putative class members in particular.  (*Id.* at 16.)   The Court found that the claims were general claims that affected all BLMIS investors in the same way, and were "functionally similar" to the prior complaint barred by the permanent injunction.  (*Id.* at 18.)  The Court further held that the *in pari delicto* doctrine did not support the Goldman Plaintiffs' position.  (*Id.* at 22.)

449.    The Goldman Plaintiffs appealed the District Court's decision to the Second Circuit, and the appeal has been briefed.  (*See A&G Goldman P'ship v. Capital Growth Co. et al.*, No. 17-512 (2d Cir.)). Oral argument has not been scheduled.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

450.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or

otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Bermuda, Cayman Islands, France, Israel, and the United Kingdom, among others.

451.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

**A.    Austria**

452.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction.

**B.    Bermuda**

453.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda. The Trustee also continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities.

**C.    BVI**

454.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme. In particular, the Trustee has investigated and filed active complaints in the Bankruptcy Court against several BVI-based defendants, including Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd.

D.  **Cayman Islands**

455.    The Trustee is currently actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

E.  **England**

456.    The Trustee currently has protective claims pending in England against Kingate-related individuals and entities and against HSBC and related entities.

F.  **Ireland**

457.    The Trustee continues to investigate BLMIS related third-party litigation currently pending in Ireland.

G.  **Israel**

458.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS.  In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law.  See discussion *supra* in Section IX(B)(vi)(c).

H.  **Switzerland and Luxembourg**

459.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS-and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals, discussed above.  The Trustee also continues to monitor certain BLMIS-related third party actions currently pending in these jurisdictions.

## XI.    FEE APPLICATIONS AND RELATED APPEALS

A.  **Objections to Prior Fee Applications**

460.    Objections were filed to six of the twenty-four fee applications submitted by the Trustee and B&H.  Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended

Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529).  No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.).  The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

## B.      Twenty-Third Fee Application

461.    On March 20, 2017, the Trustee and his counsel filed the Twenty-Third Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2016 through and including November 30, 2016 with the Bankruptcy Court.  (ECF No. 15355).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 15359-15360, 15362-15374).  A hearing was held on May 3, 2017, and an Order was entered granting the Applications on May 10, 2017 (ECF No. 15984).

## C.      Twenty-Fourth Fee Application

462.    On July 19, 2017, the Trustee and his counsel filed the Twenty-Fourth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from December 1, 2016 through and including March 31, 2017 with the Bankruptcy Court.  (ECF No. 16367).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 16368-16393).  A hearing was held on August 23, 2017, and an Order was entered granting the Applications on August 24, 2017 (ECF No. 16597).

300453044.10

## XII.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through September 30, 2017, unless otherwise indicated.  This Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
       November 1, 2017

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: ipicard@bakerlaw.com

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

127