**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

Hearing Date: November 29, 2017
Time: 10:00am

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04335 (SMB) |
| Plaintiff, | |
| v. | |
| ASPEN FINE ARTS, CO., | |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND INFORMATION ................................................................................ 1

II. APPLICABLE STANDARDS OF LAW ...................................................................... 6

III. THIS COURT SHOULD GRANT THE TRUSTEE LEAVE TO FILE A SECOND AMENDED COMPLAINT TO AVOID AND RECOVER ALL TRANSFERS MADE FOR THE BENEFIT OF MELVIN KNYPER .............................................................. 8

   A. There Has Been No Undue Delay or Bad Faith by the Trustee .......................... 8

   B. The Amendment Will Not Prejudice Aspen or Knyper ..................................... 10

   C. The Amendments Will Not Be Futile ................................................................ 11

IV. CONCLUSION ............................................................................................................ 13

08-01789-cgm    Doc 16880    Filed 11/09/17    Entered 11/09/17 17:46:42    Main Document
Pg 3 of 18


# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010) ................................................................................................10

*In re AMR Corp.*,
   506 B.R. 368 (Bankr. S.D.N.Y. 2014) ................................................................................7, 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ....................................................................................4

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   866 F.Supp.2d 257 (S.D.N.Y. 2012) ......................................................................................7

*Burgee v. Patrick*,
   No. 91-CIV-3023 (MJL), 1996 WL 227819 (S.D.N.Y. May 3, 1996) ..................................10

*In re Colonial Chesire I Ltd. P'ship*,
   167 B.R. 748 (Bankr. D. Conn. 1994) ..................................................................................10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F.Supp.2d 428 (S.D.N.Y. 2013) ...................................................................................7, 9

*Fed. Nat. Mortg. Ass'n v. I.R.S.*,
   No. CV-98-5174 (JM), 2001 WL 260076 (E.D.N.Y. Jan. 17, 2001) ....................................10

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................................................7

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
   Scotland Grp., PLC*,
   783 F.3d 383 (2d Cir. 2015) .................................................................................................11

*In re M. Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ....................................................................................6

*Margel v. E.G.L. Gem Lab Ltd.*,
   No. 04 Civ. 1514, 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) .............................................11

*Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*,
   318 F.R.D. 28 (S.D.N.Y. 2016) ..............................................................................................8

*Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.*,
   No. 05–6432, 2006 WL 1540540 (S.D.N.Y. May 31, 2006) .................................................7

*Panzella v. Skou*,
    471 F.Supp. 303 (S.D.N.Y. 1979) ................................................................................10

*Phillips v. Kidder, Peabody & Co.*,
    No. 87 Civ. 4936 (DLC), 1994 WL 570072 (S.D.N.Y. Oct. 13, 1994)......................9

*Picard v. Estate of Steven Mendelow*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016)..........................................................................7

*Picard v. Ida Fishman Revocable Trust*,
    14-1129 .........................................................................................................................6

*In re Randall's Island Family Golf Ctrs.*,
    2002 WL 31496229 ..............................................................................................7, 8, 12

*Siegel v. Converters Transp., Inc.*,
    714 F.2d 213 (2d Cir. 1983)........................................................................................7

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)......................................................................................10

*Town of New Windsor v. Tesa Tuck, Inc.*,
    919 F.Supp. 662 (S.D.N.Y. 1996) ...............................................................................8

*VKK Corp.*, 244 F.3d at 128–29 ......................................................................................12

**Statutes**

Bankruptcy Code section 546(a)...............................................................................11, 12

Bankruptcy Code section 546(e).................................................................................2, 6

**Rules**

Fed. R. Civ. P. 4(m) ...........................................................................................................8

Fed. R. Civ. P. 15(c) ..........................................................................................................7

Fed. R. Civ. P. 15(c)(1)(B) ............................................................................................7, 11

Fed. R. Civ. P. 15(c)(1)(C) ....................................................................................8, 12, 13

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................................................11

FRCP 15..........................................................................................................................7, 11

FRCP 15(a)(1)(A) ...............................................................................................................2

FRCP 15(a)(2)..................................................................................................................2, 6

Rule 45 ....................................................................................................................................3, 4, 5, 6, 9

**Other Authorities**

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC. § 1471
    (3d ed. 1971) ............................................................................................................................7

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC. § 1484
    (3d ed. 1971) ..........................................................................................................................10

**MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S MOTON FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND FOR RELATED RELIEF**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated chapter 7 estate of Bernard L. Madoff, by and through his undersigned counsel, files this Memorandum of Law in support of the Trustee's motion for leave ("Motion") under Rule 7015 of the Federal Rules of Bankruptcy Procedures ("FRBP") and Rule 15 of the Federal Rules of Civil Procedure ("FRCP") to file a Second Amended Complaint to (1) amend the complaint to reflect that Melvin Knyper is liable under Bankruptcy Code sections 548(a)(1)(A), 550(a)(1) and 551 as an initial transferee because the BLMIS transfers were made for his own benefit, and (2) amend the complaint to conform with certain other allegations and prior Court orders.

A copy of the proposed Second Amended Complaint is attached as Exhibit A. Counsel for the Defendants would not consent to the proposed amendments.

**I.    BACKGROUND INFORMATION**

The Trustee filed his original complaint against Aspen Fine Arts Co. ("Aspen") on November 30, 2010 [ECF 1]. Aspen is a corporation formed under Colorado law on February 20, 1998. *Exhibit A at ¶ 7.* In April 1998, Aspen's President, Melvin Knyper ("Knyper"), opened BLMIS account 1EM381 ("the Account") in the name "Aspen Fine Arts Co. c/o Knyper." *Exhibit A at ¶ 7.* Aspen does not dispute that it withdrew $1,600,000 from the Account between December 11, 2006 and December 11, 2008 (the "Transfers"). *Exhibit B at 17.*

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

1

Under FRCP 15(a)(1)(A), made applicable here by FRBP 7015, the Trustee filed his First Amended Complaint on December 14, 2011, which added allegations against Knyper for recovery of subsequent transfers made by Aspen to him. [ECF 15; *see also Exhibit A at ¶ 8*.]

On June 22, 2015, the Supreme Court of the United States denied certiorari with respect to the Trustee's appeal of *SIPC v. Ida Fishman Revocable Trust*, 14-1128 and *Picard v. Ida Fishman Revocable Trust*, 14-1129 (the "Supreme Court Decision"), in which the Trustee contested application of section 546(e) of the Bankruptcy Code to this and other adversary proceedings.

On July 16, 2015, this Court entered an order consistent with the Supreme Court Decision and this Court's July 2, 2015 Memorandum Decision Regarding Omnibus Motions to Dismiss (ECF No. 10089 in Adv. Pro. No. 08-01789 (SMB)) granting in part and denying in part Motions to Dismiss brought in this and certain other good faith adversary proceedings that (1) dismissed Counts II through VI of the First Amended Complaint and (2) dismissed Count VII of the First Amended Complaint, which sought to recover subsequent transfers from Knyper. [ECF 47] The dismissal of Count VII was without prejudice to the Trustee's right to seek to amend in accordance with FRCP 15(a)(2).

Aspen answered the First Amended Complaint on September 18, 2015 ["Answer", ECF 48], after which the parties held an Initial Case Conference, entered into a Case Management Notice [ECF 49], and exchanged Initial Disclosures.

In April 2016, the Trustee served his first set of Requests for Admission (the "Requests") on Aspen, and Aspen served its responses in June 2016. *See Exhibit B*. The Requests sought admissions that Knyper was the only person to receive distributions or earnings from Aspen, but Aspen objected and refused to answer on the basis that there were currently no claims asserted for the recovery of subsequent transfers. *See Exhibit B at 5*. The Requests also sought admissions

2

that Aspen received all of the Transfers. In response, Aspen admitted to receiving all of the withdrawals listed on Exhibit B to the Trustee's First Amended Complaint *with the exception* of one $350,000 withdrawal dated July 11, 2007. *See Exhibit B at 11.* Aspen admitted that it received the Transfer but alleged the check was "erroneously deposited into Melvin Knyper's bank account due to a banking error, and it appears that some or all of these funds were subsequently transferred by Melvin Knyper back to [Aspen's] bank account." *See Exhibit B at 11.*

Also in April 2016, the Trustee served a Rule 45 Subpoena on Wells Fargo Bank, N.A. ("Wells Fargo"), where both Aspen and Knyper held bank accounts. Aspen objected to the Subpoena on the basis that Knyper was dismissed as a defendant. Counsel for the Trustee explained that Aspen's admission that Knyper received BLMIS funds into his personal account put Knyper's bank account directly at issue, and the Trustee was entitled to discovery concerning the flow of transfers of BLMIS funds and the purported return of the funds back to Aspen's bank account by Knyper. *See Exhibit C, June 22, 2016 Letter to Counsel.* Wells Fargo responded to the Subpoena and produced documents in July 2016.

The Trustee also served a Rule 45 Subpoena on Aspen's accountant, Larry Neu, who produced documents to the Trustee establishing that Knyper used Aspen as a source of funds for him to pay his and his family's personal expenses, including:

    a.    transfers to Knyper's personal bank account;

    b.    cash withdrawals;

    c.    a monthly allowance to Gregory Knyper, the son of Melvin and Marlene Knyper, and transfers to Gregory Knyper's San Diego, CA scuba diving business;

    d.    transfers or payments to relatives of Melvin and Marlene Knyper;

    e.    personal home mortgage expenses;

    f.    health care expenses;

3

  g. life insurance;

  h. homeowners, art, and umbrella insurance;

  i. personal credit card bills;

  j. New York luxury hotel (Bristol Plaza) expenses;

  k. attorneys' fees, including a California family law attorney and a Colorado personal injury attorney;

  l. Pitkin County, Colorado property tax;

  m. country club membership for the Knypers;

  n. home maintenance and upgrades;

  o. home utilities;

  p. charitable contributions; and

  q. federal and state taxes.[2]

Upon information and belief, Aspen conducted no business other than investing and managing Knyper's personal funds at Knyper's direction. *Exhibit A at ¶¶ 66, 69.* Aspen had no employees and no payroll. *Exhibit A at ¶ 61.* It did not have an independent office—its business address was Knyper's personal residence. *Exhibit A at ¶ 63.* Aspen did not hold any corporate meetings after its first meeting in February 1998, and Aspen's corporate records do not indicate it conducted any business apart from passive investments. *Exhibit A at ¶ 70.* Aspen and Knyper ignored corporate formalities that are part and parcel of a corporate existence. *Exhibit A at ¶ 70.* Knyper used Aspen as a "mere instrument to facilitate his personal interests and those of his family members." *See In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 236, n.16 (Bankr. S.D.N.Y. 2011).

---

[2] The documents produced by Aspen's accountant, Larry Neu, pursuant to the Trustee's Federal Rule 45 subpoena were marked confidential.

4

In January 2017, the Trustee propounded additional discovery on Aspen, including Interrogatories and a Request for Production of Documents. Based on Aspen's admissions and the documents produced pursuant to the Rule 45 Subpoenas, the Trustee sought to discover the identity of persons or entities that received funds withdrawn from the Account or who benefitted from transfers from the Account, how Aspen used the money it received from the Account, and information regarding the specific personal expenses from the document production of Aspen's accountant. Aspen objected and refused to answer each Interrogatory on the basis that it sought information concerning subsequent transfers. *See Exhibit D, Answers to Interrogatories*.

The Trustee also propounded a Second Set of Requests for Admission, seeking admissions that Knyper received subsequent transfers, distributions and/or funds from Aspen, and that personal expenses such as life and health insurance, credit card and home repair, as well as property taxes, incurred by Knyper were paid from Aspen's bank account. Again, Aspen refused to answer each and every Request, objecting that information concerning subsequent transfers was not relevant to the Trustee's claims. *See Exhibit E, Responses to Second Set of Requests for Admission*.

The Trustee noticed the deposition of a corporate representative of Aspen for June 9, 2017. The subject areas of inquiry included Aspen's purpose and nature of operations, financial records, resolutions, procedures, protocols, employees, compensation and distribution structures, the conduct of meetings, and meeting agenda, notes and minutes. Aspen objected to the notice, claiming that the topics were irrelevant to the Trustee's claims and Aspen's defenses. *See Exhibit F, May 31, 2017, Letter from Counsel*.

Despite Aspen's refusal to produce a corporate representative to testify regarding its corporate structure, the Trustee's investigation has revealed that Knyper exercised complete dominion and control over the Account and ignored corporate formalities that are part and parcel

5

of a corporate existence. According to its Articles of Reinstatement, Aspen was dissolved on December 1, 2002, and remained dissolved until July 14, 2008, when it filed Articles of Reinstatement with the Colorado Secretary of State. Knyper co-mingled his personal funds in Aspen's bank account (e.g., Aspen received deposits of Social Security funds from Knyper and his wife), and co-mingled Aspen's funds in his personal bank account[3].

As documented above, Aspen used funds and property for Knyper and his family's personal purposes and obligations. Upon information and belief, Aspen's starting capital was largely personal funds provided by Knyper, including a February 2000 inter-account transfer made to "consolidate" Knyper's personal BLMIS account into Aspen's Account. Simply put, Knyper used Aspen as an investment vehicle for Knyper's personal finances.

The Trustee should be permitted leave to file the proposed Second Amended Complaint to add initial transfer allegations against Knyper, and certain other changes, including to the Jurisdiction and Venue, Background, Ponzi Scheme and Transfer sections. These changes were made for consistency with background and other allegations relevant to, and alleged in, all of the Trustee's cases and to address the Supreme Court Decision regarding section 546(e).

## II.    APPLICABLE STANDARDS OF LAW

Under FRCP 15(a)(2), a party may amend its pleading upon leave of the court, which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008).

> The mandate that leave to amend be freely given when justice requires 'is to be heeded' in the absence of a substantial reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'

---

[3] *See supra*, fn 2. The documents produced by Aspen's accountant, Larry Neu, pursuant to the Trustee's Federal Rule 45 subpoena were marked confidential.

6

*Picard v. Estate of Steven Mendelow*, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Generally, amendments are favored because they 'tend to facilitate a proper decision on the merits.'" *Id.* (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d 428, 472 (S.D.N.Y. 2013)).

This is consistent with the Second Circuit's oft-repeated holding that FRCP 15 is to be liberally construed. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F.Supp.2d 257, 272 (S.D.N.Y. 2012) ("the rule is 'interpreted liberally, and an amendment is normally permitted'") (quoting *Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.,* No. 05–6432, 2006 WL 1540540, at *1 (S.D.N.Y. May 31, 2006)); *Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir. 1983) (the rule reflects Congress's intention "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities") (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC. § 1471, at 359 (3d ed. 1971)). In the Second Circuit, a party may amend its pleadings in the absence of a showing of prejudice or bad faith. *In re AMR Corp.*, 506 B.R. 368, 383 (Bankr. S.D.N.Y. 2014). Further, defendants "must show actual prejudice, not the possibility of prejudice" when opposing a proposed amendment. *Mendelow*, 560 B.R. at 224 (citations omitted).

Indeed, even when the proposed amendment is for a claim against a newly added party that would be barred by the applicable statute of limitations, such amendment is permitted if it "relates back" to the date of the original pleading. Fed. R. Civ. P. 15(c); *In re Randall's Island Family Golf Ctrs.*, Adv. Pro. No. 02-2278, 2002 WL 31496229, at *2–5 (Bankr. S.D.N.Y. Nov. 8, 2002). An amendment relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Additionally, an amendment

7

can change the party or the naming of the party against whom a claim is asserted if "(1) both claims arose out of the same transaction or occurrence, (2) the new party received adequate notice of the plaintiff's claims, within the time limits specified in Fed. R. Civ. P. 4(m), and will not be prejudiced, and (3) the new party knew or should have known that but for a mistake concerning its identity, the new party would have been named in the earlier, timely pleading." *In re Randall's Island Family Golf Ctrs.*, 2002 WL 31496229, at *2; Fed. R. Civ. P. 15(c)(1)(C).

### III. THIS COURT SHOULD GRANT THE TRUSTEE LEAVE TO FILE A SECOND AMENDED COMPLAINT TO AVOID AND RECOVER ALL TRANSFERS MADE FOR THE BENEFIT OF MELVIN KNYPER

#### A. There Has Been No Undue Delay or Bad Faith by the Trustee

It is well-settled that the mere passage of time, in the absence of bad faith, does not warrant a denial of leave to amend. *In re AMR Corp.*, 506 B.R. at 383 ("Absent a showing of bad faith or undue prejudice, mere delay does not provide a basis for a district court to deny the right to amend."). A court will deny leave to amend only where a party delayed in bad faith. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662, 676–77 (S.D.N.Y. 1996) (granting leave to amend after plaintiff waited two years to file amendments, noting that "[t]he federal rules of pleading are not intended unreasonably to lock counsel into a litigation strategy"). Furthermore, discovery disputes that delay obtaining the information necessary to amend should be taken into account when determining the diligence of the party seeking leave to amend. *See Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37-8 (S.D.N.Y. 2016) (finding it was proper for a party to wait to seek leave to amend until after receiving information through discovery).

The Trustee did not unduly delay or act in bad faith in bringing this Motion. To the contrary, the Trustee has diligently pursued his claims since the commencement of this action. After Aspen filed its Answer, the Trustee propounded a request for admission regarding Knyper's receipt of

8

distributions from Aspen, which Aspen refused to answer. *Exhibit B at 3*. However, Aspen did admit that a July 11, 2007 withdrawal of $350,000 was "erroneously" deposited in Knyper's bank account. *Exhibit B at 11*. The Trustee also served Rule 45 Subpoenas on Wells Fargo and Aspen's accountant, which yielded records establishing that Aspen was used as a source of funds for Knyper to pay his and his family's personal expenses. Based on these documents, the Trustee served a second set of requests for admission, interrogatories, and requests for production. *Exhibits D, E*. Still, Aspen objected to responding to any discovery concerning Knyper. *Exhibit E*. Aspen also objected to the Trustee's Deposition Notice requiring a corporate representative to testify about topics, including Aspen's business, financial records, employees and compensation, on the basis that those topics were "irrelevant to the Trustee's claims and Aspen's defenses." *Exhibit F*.

Despite Aspen's attempt to block the Trustee's discovery efforts into Knyper's relationship with Aspen, the records produced by Aspen's accountant reveal that Knyper was the person who benefitted from each of the Transfers from BLMIS. In instances where plaintiffs discover new facts relating to and supporting claims asserted in an earlier pleading, "courts routinely permit amendment on the basis of this new information." *In re Facebook, Inc.*, 986 F.Supp.2d at 472 (citing *Phillips v. Kidder, Peabody & Co.,* No. 87 Civ. 4936 (DLC), 1994 WL 570072, at *4 (S.D.N.Y. Oct. 13, 1994) (stating "courts consistently grant motions to amend where it appears that the new facts and allegations are developed during discovery and are closely related to the original claim"). The Trustee has obtained additional evidence to support his allegations against Knyper that was not available when he filed his Original and First Amended Complaints.

The Trustee has diligently pursued his claims against Knyper in good faith, and as a result, leave to amend should be granted.

9

B.  The Amendment Will Not Prejudice Aspen or Knyper

The party opposing an amendment has the burden of proving that leave to amend would be prejudicial. *Fed. Nat. Mortg. Ass'n v. I.R.S.*, No. CV-98-5174 (JM), 2001 WL 260076, at *2 (E.D.N.Y. Jan. 17, 2001) (citing *Panzella v. Skou*, 471 F.Supp. 303, 305 (S.D.N.Y. 1979)). Courts consider whether amendment "would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation marks omitted) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). "If no prejudice is found, then leave normally will be granted." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. AND PROC. § 1484 (3d ed. 1971). Here, Aspen and Knyper cannot meet this burden because the amendments will not result in prejudice.

The proposed Second Amended Complaint will not require Aspen and Knyper to expend "significant additional resources" and it will not "significantly delay" the resolution of this action. In fact, Aspen has delayed the case by objecting to each of the Trustee's discovery requests seeking information about Aspen and Knyper. With Knyper added as an initial transferee defendant, Aspen will be forced to finally respond to relevant discovery.[4] Knyper has known for years that he freely exchanged funds between his and Aspen's bank accounts and ignored corporate formalities, and then attempted to stall the Trustee from discovering that information to delay this case. Aspen cannot demonstrate it will be prejudiced in terms of resources or time.

---

[4] The Second Circuit has held that "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Burgee v. Patrick*, No. 91-CIV-3023 (MJL), 1996 WL 227819, at *4 (S.D.N.Y. May 3, 1996) (citations omitted); *In re Colonial Chesire I Ltd. P'ship*, 167 B.R. 748, 751 (Bankr. D. Conn. 1994) ("Defendant's assertion that the elements of the [amended claim] will require it to investigate and defend against some additional details or circumstances does not rise to the level of undue prejudice.")

10

C.   The Amendments Will Not Be Futile

The party opposing an amendment has the burden of proving that leave to amend would be futile. *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514, 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010) (citations omitted). "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quotation omitted).

Under section 546(a) of the Bankruptcy Code, a proceeding to avoid a fraudulent transfer under section 548 must be brought within two years of the entry of the order for relief. Aspen may attempt to argue that the relevant two-year period ended on December 11, 2010, and the claim against Knyper as an initial transferee is thus time-barred and futile. Any such argument must fail, however, because the amendments relate back to November 30, 2010, the date the Trustee's Original Complaint was filed.

Under FRCP 15, the proposed Second Amended Complaint relates back to the Original Complaint because it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Further, the First Amended Complaint specifically sought to avoid and recover subsequent transfers made from Aspen to Knyper. The proposed Second Amended Complaint now includes Knyper as an initial transferee because the Trustee has learned that the Transfers were made for Knyper's benefit. Thus, the Second Amended Complaint asserts closely related claims set forth in the Original and First Amended Complaints, and the claims arise from the same conduct, transaction or occurrence.

To the extent the Court considers Knyper a new party because he was named only as a subsequent transferee in the First Amended Complaint, the Second Amended Complaint

11

nevertheless relates back under FRCP 15(c)(1)(C). Knyper received adequate notice of the claims against him, given that he was a named defendant in the First Amended Complaint and received service of the Original Complaint and summons as Aspen's registered agent. Knyper knew he was the one to benefit from the Transfers.

This Court's reasoning in an analogous case, *Randall's Island*, is particularly instructive. In *Randall's Island*, the plaintiff-debtors failed to sue Crum, an insurance company, in the original complaint because they believed other parties named in the original complaint actually received the payments at issue. *In re Randall's Island Family Golf Ctrs.*, 2002 WL 31496229, at *4–5. As the Court explained, "the debtors failed to name Crum as a result of a mistake in identifying the transferee of the payments, and not because of a strategic decision." *Id.* at *4. Similarly, as here, the debtors originally sued other parties because those parties appeared to be the initial transferees. *Id.* The debtors in *Randall's Island* did not learn that Crum might be an initial transferee until after the original complaint was filed and after section 546(a)'s two-year statute of limitations had expired. *Id.* at *1. The debtors attempted to amend the complaint to add Crum when they discovered the misidentification, and Crum argued the claims in the amended complaint were barred by the statute of limitations. *Id.* Because the debtors intended in the original complaint to sue the initial transferee, and added Crum when they discovered the misidentification, this Court held that the amendment related back and was not barred by the statute of limitations. *Id.* at *4–5; *see also VKK Corp.*, 244 F.3d at 128–29 (affirming that the proposed amendment related back to the original complaint where the newly named party "should have known that some of the allegations [in the original complaint] were meant to be directed at [them].").

As in *Randall's Island*, the Trustee seeks to amend the First Amended Complaint to name Knyper as an initial transferee, because the Trustee has learned that the avoidable Transfers were

12

made for his benefit. Knyper knew or should have known that, once the Trustee learned the Transfers had been made for Knyper's benefit, the Trustee would add initial transfer allegations against Knyper, especially given that the Order on the Motion to Dismiss dismissed Knyper without prejudice to the Trustee's ability to replead once he conducted additional discovery. Knyper cannot be surprised by the Trustee's effort to add him as an initial transferee and recover the Transfers he received from BLMIS.

Accordingly, the amendments will not be futile, even if the Court considers Knyper a new party, because the Second Amended Complaint relates back under FRCP 15(c)(1)(C) and is not barred by the statute of limitations.

## IV.  CONCLUSION

For the foregoing reasons, the Trustee's Motion for Leave to Amend to File a Second Amended Complaint and Related Relief should be granted in its entirety.

Date:  November 9, 2017
       New York, New York

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-5018
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Farrell A. Hochmuth
Email: fhochmuth@bakerlaw.com

By: */s/ Nicholas J. Cremona*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

13