UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION                  :
CORPORATION,                                    :   SIPA LIQUIDATION
                                                :
       Plaintiff-Applicant,                    :   No. 08-01789 (BRL)
                                                :
   v.                                           :
                                                :
BERNARD L. MADOFF INVESTMENT                    :
SECURITIES, LLC,                                :
                                                :
       Defendant.                              :
---------------------------------------------------------------X
In re:                                          :
                                                :   Adv. Pro. No. 10-05383(BRL)
BERNARD L. MADOFF,                              :
                                                :
       Debtor.                                 :
---------------------------------------------------------------X
IRVING H. PICARD, Trustee for the Liquidation   :
Of Bernard L. Madoff Investment Securities LLC  :
                                                :
       Plaintiff,                              :
                                                :
   v.                                           :
                                                :
STANLEY SHAPIRO, et al.                         :
                                                :
       Defendants.                             :
---------------------------------------------------------------X

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..i

PROCEDURAL BACKGROUND….……………………………………………………..1

LEGAL STANDARD….……………………………………………………………….....3

ARGUMENT….……………………………………………………………………….…....4

    A.  Defendants Have Standing to Move to Quash the Subpoena.……………………………………………………..…………...............5

    B.  The Subpoena Seeks Production of Documents That Are Not Relevant to Any Claim or Defense in This Case….………………………………………………….…………………..……...5

    C.  The Trustee's Interest In the JPMorgan Chase Account Statements, If Any, Is Outweighed By Defendants' Privacy Right….………………...…………………………..………..12

CONCLUSION……………………………………………………………………………..13

# TABLE OF <u>AUTHORITIES</u>

*Arias-Zeballos v. Tan* ……………………………………………………..……………... 4
　　　2007 WL 210112 (S.D.N.Y. Jan. 25, 2007)

*Carey v. Berisford Metals Corp.* ……………………………………………………..….. 5
　　　1991 WL 44843 (S.D.N.Y. Mar.28, 1991)

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.* ………………………………………… 5, 11
　　　206 F.R.D. 78 (S.D.N.Y. 2002)

*Cohen v. City of New York* ……………………………………………………….....…. 6
　　　255 F.R.D. 110, 117 (S.D.N.Y. 2008)

*During v. City Univ. of N.Y.* ……………………………………………………….....… 3, 5
　　　2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006)

*Eisemann v. Greene* ……………………………………………………………..………… 3, 5
　　　1998 WL 164821 (S.D.N.Y. Apr. 8, 1998)

*Go v. Rockefeller Univ.* …………………………………………………………………. 7
　　　280 F.R.D. 165 (S.D.N.Y. 2012)

*Homeward Residential, Inc. v. Sand Canyon Corp.* ………………………………...… 10, 11
　　　2017 WL 4676806 (S.D.N.Y. Oct. 17, 2017)

*In re Refco Sec. Litig.*, 759 F. Supp. 2d 342 (S.D.N.Y. 2011)………………………...… 3, 5

*McVane v. Federal Deposit Ins. Corp.* ……………………………………………….…… 4
　　　44 F.3d 1127, 1136 (2d Cir. 1995)

*Moll v. Telesector Res. Grp., Inc.* ………………………………………………..……... 7
　　　2017 WL 2241967 (W.D.N.Y. May 23, 2017)

*Night Hawk Ltd. v. Briarpatch Ltd.* ……................................................................…. 6
　　　2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)

*Rahman v. Smith & Wollensky Rest. Grp., Inc.* ……………………………….………….. 12
　　　2007 WL 1521117 (S.D.N.Y. May 24, 2007)

*Signal Capital Corp. v. Frank* ………………………..…………………………………….. 6
　　　164 F.R.D. 7, 10 (S.D.N.Y. 1995)

08-01789-cgm    Doc 16903-1    Filed 11/15/17    Entered 11/15/17 20:17:05    Memorandum of Law    Pg 4 of 17

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.* …………....…………… 4, 5, 10, 12
  2017 WL 1133349 (E.D.N.Y. Mar. 24, 2017)

*Solow v. Conseco, Inc.* ………………………………………………………….…… 4, 10
  2008 WL 190340 (S.D.N.Y. Jan. 18, 2008)

*State Farm Mut. Auto. Ins. Co. v. Fayda* …………………………………………..... 4, 12
  2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015)

*United States v. Bonanno Organized Crime Family of La Cosa Nostra* ……………………. 12
  119 F.R.D. 625 (E.D.N.Y. 1988)

*United States v. Int'l Bus. Machines Corp.* ……………………………………….…… 10
  83 F.R.D. 97 (S.D.N.Y. 1979)

## MOTION TO QUASH

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Stanley Shapiro, the Estate of Renee Shapiro, and S & R Investment Co, by their undersigned counsel, now move for an Order quashing the subpoena served by the Trustee upon non-party JPMorgan Chase Bank, N.A. dated June 26, 2017.

## PROCEDURAL BACKGROUND

On June 26, 2017, the Trustee served a subpoena on JPMorgan Chase Bank, NA ("JPMorgan"), attached hereto at Exhibit A, requesting "documents concerning the account(s)," including:

   a)   monthly statements;
   b)   historical Account balance information;
   c)   deposit slips;
   d)   records for incoming and outgoing electronic transfers (e.g., wire transfers, electronic fund transfers, and automated clearing house deposits);
   e)   copies of checks, both deposited and drawn;
   f)   records reflecting cash activity;
   g)   Account opening Documents and any credit file;
   h)   administrative or custodial agreements between the holder of the Account(s) and [the account holder];
   i)   Communications Concerning the Account(s), and
   j)   Account closing Documents

as well as "Documents and Communications Concerning predecessor accounts" from their inception through "December 31, 2008" related to any account belonging to Stanley Shapiro, Renee Shapiro, and/or S & R Investment Co.[1] Ex. A at 14. The Subpoena's definition of accounts specifically identified a Chase checking account held by S & R Investment Co. (Account No. xxxxxxxxxx3467), a Bear Sterns & Co. account held by Renee Shapiro (Account

---

[1] The Trustee sent identical subpoenas to Wells Fargo and Bank of Americas. Doc. 16347 at Ex. A. Both Wells Fargo and Bank of America have since responded that they do not have any responsive documents. The Trustee additionally served subpoenas on JPMorgan requesting the same documents for the period of time from January 1, 1990 up to and including July 31, 2004" related to "any account … held by, for, in the name of, for the benefit of, or on behalf of" David Shapiro, Leslie Citron, and/or Kenneth Citron." *Id.*

1

No. xxx-x1561), and a Chase checking account held by both Stanley and Renee Shapiro (Account No. xxxxxxxxxx0311). *Id.* at 7.

On July 7, 2017, JPMorgan objected to the Subpoena on the grounds that it was overly broad and unduly burdensome, sought information that was not relevant or in proportion to the needs of the case, called for the production of privileged documents, and included definitions and instructions that were vague and ambiguous. *See* July 7, 2017 JPMorgan Letter to the Trustee, attached hereto at Exhibit B, at 3-10. Subject to the foregoing objections, JPMorgan agreed to "produce, within a reasonable time frame after the Trustee provides full account numbers for the accounts specified in this Request, non-privileged account statements for those accounts, to the extent that such documents exist, are responsive to this Request, are not subject to any objections, and can be located after a good faith search." *Id.* at 12.

On July 19, 2017, counsel for JPMorgan informed the Parties by email that "JPMorgan has completed a search for responsive documents consistent with its July 7, 2017 responses and objections." JPMorgan identified statements from January 2008 through December 2008 for S&R's Chase account ending in 3467 ("S&R Account"), statements from January 2008 through December 2008 for Mr. and Mrs. Shapiro's personal Chase account ending in 0311 ("Checking Account"), and statements from December 1997 through May 2008 for Mrs. Shapiro's account with Cohmad Securities Corporation ("Cohmad") ending in 3467 ("Cohmad Account"). Of these accounts, only the S&R account received transfers from BLMIS between January and December 2008.

After multiple discussions between Defendants and the Trustee were unable to fully resolve the issue, a hearing was held before this Court on October 5, 2017. *See* October 5, 2017 Rule 7007 Conference Transcript, attached hereto at Exhibit C. At the hearing, the Trustee

2

argued that the documents sought by the subpoenas were relevant to Mr. Shapiro's state of mind after 2003, an argument that met with the Court's skepticism.

Since the hearing, the parties have continued to attempt to resolve this discovery dispute without the intervention of the Court. Most recently, Mr. Shapiro offered to stipulate to how the transfers identified by the Trustee were used and to provide corroborating documents. The Trustee rejected this offer and continues to seek the production of documents by JPMorgan.

For the foregoing reasons, the Subpoena should be quashed.

## I. LEGAL STANDARD

A motion to quash or modify a subpoena is governed by Federal Rule of Civil Procedure 45(d). In addition to the enumerated grounds of F.R.C.P. 45(d)(A-B), "[s]ubpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011). *See also During v. City Univ. of N.Y.*, 2006 WL 2192843 at *2 (S.D.N.Y. 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement"); *Eisemann v. Greene*, 1998 WL 164821 at *2 (S.D.N.Y. 1998) (quashing subpoena "in light of the doubtful and tangential relevance, at best").

"Even if a subpoena seeks the production of relevant information, Rule 45… requires the Court to quash or modify a subpoena that 'requires disclosure of privileged or other protected matter,' or 'subjects a person to undue burden.'" *See also Zagroba v. York Restoration Corp.*, 2011 WL 2133837 at *2 (E.D.N.Y. 2011). "Federal courts regularly entertain objections to discovery requests based on a 'constitutionally-based right of privacy[,]'" and only order the production of "sensitive financial information" where "it is relevant to the action and there is a

3

compelling need for the documents because the information is not otherwise readily available." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037 at *4 (S.D.N.Y. 2015).

## II.  ARGUMENT

### A.  DEFENDANTS HAVE STANDING TO MOVE TO QUASH THE SUBPOENA

In evaluating a motion to quash or modify a subpoena, a court must first determine whether a party has standing to bring a motion pursuant to Rule 45. *See, e.g., Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349 at *7 (E.D.N.Y. 2017) ("as a threshold issue, the Court is obligated to briefly address [standing] before analyzing the merits of Defendants' motion"). "While Rule 45 speaks of objections to subpoenas being asserted by the person commanded to produce and permit inspection of the subpoenaed documents, it is well-established that a party with a real interest in the documents has standing to raise objections to their production." *Solow v. Conseco, Inc.*, 2008 WL 190340 at *3 (S.D.N.Y. 2008). *See also Arias-Zeballos v. Tan*, 2007 WL 210112 at *1 (S.D.N.Y. 2007) ("courts have recognized that individuals have certain constitutionally protected privacy rights, including the individual interest in avoiding disclosure of personal matters"); *McVane v. Federal Deposit Ins. Corp.*, 44 F.3d 1127, 1136 (2d Cir.1995).

"Accordingly, courts have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias-Zeballos*, 2007 WL 210112 at *1 (SDNY 2007) (collecting cases); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349 at *8 (E.D.N.Y. 2017) ("In this Circuit, courts are generally in agreement that financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege"). Because the Trustee is subpoenaing their bank

records, Stanley Shapiro, the Estate of Renee Shapiro, and S & R have standing to object to the production of the account statements by JPMorgan and to move to quash. *See, e.g., Sky Med. Supply Inc.*, 2017 WL 1133349 at *8 (E.D.N.Y. 2017) (standing where "the Chase Subpoenas clearly seek discrete categories of banking records belonging to Defendants and Non-Party Objectors"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002); *Carey v. Berisford Metals Corp.*, 1991 WL 44843 at *8 (S.D.N.Y. 1991).

B. **THE SUBPOENA SEEKS PRODUCTION OF DOCUMENTS THAT ARE NOT RELEVANT TO ANY CLAIM OR DEFENSE IN THIS CASE**

Once standing is established, the Court determines whether the documents being sought by the subpoena in question are relevant. *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349 at *8 (E.D.N.Y. 2017) ("Having determined that Defendants possess the necessary standing to assert their motion, the Court turns its attention to whether Plaintiff has demonstrated the relevance of the information being sought by the Chase Subpoenas"). "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011). *See also During v. City Univ. of N.Y.*, 2006 WL 2192843 at *2 (S.D.N.Y. 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement"); *Eisemann v. Greene*, 1998 WL 164821 at *2 (S.D.N.Y. 1998) (quashing subpoena "in light of the doubtful and tangential relevance, at best").

Rule 26(b)(1) of the Federal Rules of Civil Procedure states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5

>Information within this scope of discovery need not be admissible in evidence to be discoverable.

F.R.C.P. 26(b)(1). *See also Signal Capital Corp. v. Frank*, 164 F.R.D. 7, 10 (S.D.N.Y. 1995) ("…discovery concerning an opposing party's assets is not ordinarily permitted, unless such discovery is relevant to the merits of the pending claim, or in response to a defense.") "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, 2003 WL 23018833 at *8 (S.D.N.Y. 2003). *See also Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) ("The burden of demonstrating relevance is on the party seeking discovery.").

The JPMorgan account statements are not "relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833 at *8 (S.D.N.Y. 2003). Mr. Shapiro has admitted to the withdrawals, and receipt of the withdrawals, from the BLMIS accounts to the extent he has been asked to admit them. He has also repeatedly offered, and again offered during the October 5 conference, to stipulate to all withdrawals from the BLMIS accounts for S&R, Mr. Shapiro and Renee Shapiro. As the Court observed during the October 5 conference, this obviates the Trustee's purported basis for seeking Defendants' financial records. *See* Ex. C, 25:7-9.

The Trustee has argued that the JPMorgan statements are relevant to Mr. Shapiro's alleged knowledge of a Ponzi scheme at BLMIS. To the extent that the Trustee intends to offer the dates and amounts of the withdrawals to prove Mr. Shapiro's knowledge, no further discovery is necessary; the Trustee is already in possession of ample evidence of when they occurred and how much was withdrawn. Mr. Shapiro has already admitted to many of the withdrawals from his account in his responses both to the First Set of Requests for Admission to Defendant Stanley Shapiro and Second Set of Requests for Admission to Defendant Stanley

6

Shapiro. Mr. Shapiro has additionally agreed to stipulate to the individual withdrawals and their timing. Records from a third party are not necessary to establish facts to which a party has already admitted and subpoenas seeking such information are burdensome and unnecessary. *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 176-77 (S.D.N.Y. 2012); *Moll v. Telesector Res. Grp., Inc.*, 2017 WL 2241967 at *2 (W.D.N.Y. 2017).

To the extent that the Trustee intends to offer the *uses* to which the money withdrawn was put, the Court was skeptical of this argument during the October 5 conference:

> MR. CALVANI: Mr. Shapiro withdrew large sums of money in advance and what we believe in preparation for BLMIS's inevitable collapse and we're entitled to discovery on what he did with this money because it goes to his state of mind.
>
> THE COURT: What he did with the money?
>
> MR. CALVANI: Yes, Your Honor.
>
> THE COURT: Sounds like a subsequent transfer claim.
>
> MR. CALVANI: Well, I –
>
> THE COURT: Why would it matter -- how would it be relevant what he did with the money?
>
> MR. CALVANI: Right.
>
> THE COURT: Whether he bought uranium stock or lottery tickets or invested it in the business?
>
> MR. CALVANI: Well, I mean, after -- as we allege in our complaint, in 2002 Mr. Shapiro met with Annette Bongiorno and Paul Konigsberg and they worked together to fabricate trades.
>
> THE COURT: Mm hmm.
>
> MR. CALVANI: And they did this in 2003. And following those meetings, we see large withdrawals of money out of BLMIS. We see $7.5 million in April 2003, $4 million in April 2004, $4.1 million in 2005, $3 million in 2008.

7

| | |
|---|---|
| | And during the criminal trial, the district court allowed the government to introduce evidence that the Defendants, O'Hara and Perez, withdrew large sums of money after learning of the fraud. So, we think what he did with the money is relevant. |
| THE COURT: | But -- I understand the relevance of his withdrawing money – |
| MR. CALVANI: | Yes, Your Honor. |
| THE COURT: | -- but why does it matter what he did with it? |
| MR. CALVANI: | So, we have Rule 2004 examination testimony from Mr. Shapiro that he withdrew money from BLMIS to invest it in Treasuries or mutual funds at Bear Sterns or Wachovia. Well, his split-strike conversion accounts were invested in Treasuries and mutual funds when they were out of the market. |
| THE COURT: | So, why don't you ask him at a deposition why he withdrew money to invest in the investments that he was supposedly invested in under the split-strike strategy? |
| MR. CALVANI: | Because we think he – |
| THE COURT: | In other words, you know what he did with it, or at least you... |
| MR. CALVANI: | Well, I want to confirm it with the documents because I think the documents are a better source of evidence than testimony about events that happened some time ago… |

Ex. C, 17:22-19:21. After hearing this argument, the Court again expressed skepticism: "It's not clear to me why this outflow information is relevant or why the subpoenas are relevant if you have all the inflow information to those accounts." Ex. C, 25:7-9.

Aside from funds used to pay taxes, between 2003 and 2008 Mr. Shapiro withdrew less than 10% of the value of the BLMIS accounts. On the face of the BLMIS account statements, Mr. Shapiro and his family lost at least $131,215,319.12 on December 8, 2008. *See* November 30, 2008 Account Statements, attached hereto at Exhibit D. Even if the way Mr. Shapiro spent

8

money between 2003 and 2008 could possibly be probative of his *actual knowledge* of a Ponzi scheme at BLMIS, the Trustee's theory depends upon Mr. Shapiro's willingness to leave tens of millions of dollars of his own money in jeopardy and to do nothing to steer his children, and their children, out of harm's way. It is senseless.

Nevertheless, in an effort to address the Trustee's latest explanation for seeking his financial records from the beginning of time to 2008, Mr. Shapiro has offered to stipulate to the purposes of the transfers of "$7.5 million in April 2003, $4 million in April 2004, $4.1 million in 2005, [and] $3 million in 2008" specifically identified to the Court on October 5. *See* November 14, 2017 Letter to the Trustee, attached hereto at Ex. E. Mr. Shapiro has further offered to provide documentation confirming the stipulated purposes. This should fully resolve whatever dispute remains between the parties, satisfy the Trustee's purported interest in the JPMorgan records and protect Mr. Shapiro's privacy.

The Trustee has rejected the offer, doubtless for the same reason his Subpoena broadly sought as much personal financial information as possible, not only from Mr. Shapiro but from his wife and children. *See* Trustee's November 15, 2017 E-mail, attached hereto at Ex. F. As has been a recurring theme in the Trustee's discovery, he is seeking information relating to subsequent transfers, notwithstanding that this Court has long since dismissed the subsequent transfer claims.[2] *See* Doc. 59, 28-34. The fact that the Trustee issued identical subpoenas to third party banks for two decades worth of document regarding accounts held by David Shapiro, Leslie Citron, and Kenneth Citron clearly indicates that the Trustee's purported basis is a pretext. There is no possible reasonable or good faith basis to believe that such documents were evidence of Stanley Shapiro's state of mind between 2003 and 2008.

---

[2] When the Trustee explained the purpose of the Subpoena during the October 5 hearing, the Court called it the same way: "Sounds like a subsequent transfer claim" Ex. C. 18:3-4.

9

The time period of the Subpoena to Defendants is equally suggestive. "A demand for documents should …confine the search to relevant documents." *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y. 1979). Where "the material sought would not be relevant in the circumstances of" the case, it should not be produced. *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806, at *19 (S.D.N.Y. Oct. 17, 2017). As an initial matter, the scope of the Subpoena is much broader than the Trustee's purported basis for serving it. The Subpoena requests documents for "the period of time up to and including December 31, 2008." Ex. A at 8. The Trustee, however, argues that financial documents are relevant to Mr. Shapiro's knowledge of the fraud to the extent that they show how he used funds withdrawn between 2003 and 2008. As such, any documents that predate 2003 cannot possibly show Mr. Shapiro's knowledge, are irrelevant to the Trustee's claims, and should not be produced. *Solow v. Conseco, Inc.*, 2008 WL 190340 at *4–5 (S.D.N.Y. 2008) ("[T]he subpoena seeks financial documents for the period 2003-2007. Notwithstanding Plaintiff's claims to the contrary, the Court fails to see the relevance of [Defendant's] financial condition and refinancing of the Building in 2007, some four years after the auction in issue."). *See Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349 at *11 (E.D.N.Y. 2017) ("After reviewing the overall scope of the Chase Subpoenas—which seek financial documents from 2005 through 2015—the Court finds that as written, the Chase Subpoenas are overly broad and unduly burdensome in scope, especially given the limited nature and extent of the claims…the Chase Subpoenas need to be narrowly tailored to include only those bank records falling within this three-year time period encompassing the 177 claims in this action.")

Furthermore, two of the accounts in question did not receive transfers from BLMIS. JPMorgan has identified statements between January and December 2008 for the Checking

10

Account. The Checking Account did not receive any transfers or checks from the accounts at BLMIS during 2008. *See* Lax Declaration at ¶ 2. JPMorgan has identified statements for the Cohmad Account between 1998 and 2008. The Cohmad Account did not receive any transfers or checks from the accounts at BLMIS during that period. *See* Lax Declaration at ¶ 2. In addition, the Cohmad Account was held in the name of Renee Shapiro and Stanley Shapiro was not a signatory. An account held solely in the name of Renee Shapiro that did not receive transfers from BLMIS cannot possibly be evidence of Stanley Shapiro's state of mind regarding withdrawals from BLMIS. Accordingly, these records are not "relevant to any party's claim or defense."

As the JPMorgan statements for these accounts are not relevant to any claim or defense in this case, they should not be produced. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806 at *19 (S.D.N.Y. 2017) ("[Defendant] has also failed to articulate a credible theory of the relevance of the material it seeks. …it contends that the material will rebut [Plaintiff's] willful blindness notice argument by showing that the repurchase demands were frivolous. However, the material Sand Canyon seeks is not probative of the issue of notice. … the consultants' work is not in any way related to Sand Canyon's knowledge about its loans at the time in question, and thus the work is not relevant to the issue of willful blindness." (internal citations omitted)).

Where, as here, a subpoena is issued without a good faith basis for financial documents the hope of discovering information unrelated to the claims, it is proper for the court to quash it in its entirety. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002).

11

B.  **THE TRUSTEE'S INTEREST IN THE JPMORGAN CHASE ACCOUNT STATEMENTS, IF ANY, IS OUTWEIGHED BY DEFENDANTS' PRIVACY RIGHT**

Even if the personal financial records sought by the Subpoena were relevant, they would also need to be proportional to the case. *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349 at *11 (E.D.N.Y. 2017). "Rule 26(b)(1) instructs parties and courts to evaluate whether the benefit of the discovery sought is proportional to the burden of producing it, taking into account issues like access, importance, and available resources." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037 at *4 (S.D.N.Y. 2015). Specifically, Rule 26 requires that a "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" if that discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R.C.P. 26(b)(2)(C)(i). Accordingly "[f]ederal courts regularly entertain objections to discovery requests based on a 'constitutionally-based right of privacy[,]'" and only order the production of "sensitive financial information" where "it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037 at *4 (S.D.N.Y. 2015). Generally, "the party resisting disclosure should bear the burden of establishing alternative sources for the information." *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). *See also Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117 at *7 (S.D.N.Y. 2007).

Here, the financial records sought by the Trustee are not remotely proportional to the burden of production. The JPMorgan Chase statements, particularly for the Checking Account, would show between a year (Checking Account and S&R Account) and ten years (Cohmad Account) of financial information, the overwhelming majority of which has no connection to this

12

case. The Trustee has only identified one large withdrawal, received in one of the accounts, in May 2008. The production of an entire year's worth of statements, and the accompanying invasion of privacy, are not necessary to determine the use to which a single withdrawal was put even if the use to which that single withdrawal was put were probative.

Finally, Mr. Shapiro is willing to stipulate to, and document, each of the withdrawals the Trustee identified during the October 5 conference. To the extent the Trustee has need of this information, and he does not have need of this information, Mr. Shapiro has offered the best possible alternative source.

## **CONCLUSION**

The Trustee's Subpoena is overbroad, seeks documents irrelevant to the parties' claims and defenses, and demands the production of private financial information grossly disproportionate to the needs of the case. It should be quash.

Dated: New York, New York
           November 15, 2017

LAX & NEVILLE LLP

By:   */s/ Barry R. Lax*
        Barry R. Lax
        Brian Neville
        1450 Broadway, 35th Floor
        New York, NY 10018
        Telephone: (212) 696 - 1999
        Facsimile: (212) 566 - 4531

*Attorneys for Defendants*