Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-99000-smb

4   Adv. Case No. 10-05383-smb

5   - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF

13  BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

14             Plaintiff,

15         v.

16  STANLEY SHAPIRO, et al.,

17             Defendants.

18  - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

Page 2

1              U.S. Bankruptcy Court

2              One Bowling Green

3              New York, NY   10004

4

5              October 5, 2017

6              10:26 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON STUART M. BERNSTEIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   KAREN

Page 3

1    Hearing re:   Discovery Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 4

```
1    A P P E A R A N C E S :

2

3    BAKER & HOSTETLER LLP

4        Attorneys for Trustee, Irving H. Picard Esq.

5        45 Rockefeller Plaza

6        New York, NY 10111

7

8    BY:  TORELLO CALVANI

9        JAMIE ROLLINSON

10

11   LAX & NEVILLE LLP

12       Attorneys for Defendants Stanley Shapiro, Renee Shapiro

13       S&R Investment Co., LAD Trust, David Shapiro,  Rachel

14       Shapiro, David Shapiro 1989 Trust, Leslie Shapiro

15       Citron, Leslie Shapiro 1985 Trust, Trust F/B/O

16       [A.J.C.], [K.F.C.], and [L.L.C.], Kenneth Citron, Trust

17       F/B/O [W.P.S.] & [J.G.S.]

18       1450 Broadway, 35th Floor

19       New York, NY 10018

20

21   BY:  BARRY R. LAX, ESQ.

22       BRIAN J. NEVILLE, ESQ.

23

24

25
```

Page 5

```
1                       P R O C E E D I N G S

2              THE COURT:  Madoff.

3              MR. CALVANI:  Good morning, Your Honor.

4              THE COURT:  Good morning.  Anybody on the other

5    side?

6              MR. CALVANI:  We have not seen them this morning.

7              THE COURT:  All right, second call.

8              MR. CALVANI:  All right, thank you, sir.

9              (BREAK)

10             THE COURT:  Madoff.

11             MR. CALVANI:  Torello Calvani, Baker Hostetler.

12   Here with me is my colleague, Jamie Rollinson.

13             THE COURT:  How do you do?

14             MR. ROLLINSON:  Good morning, Your Honor.

15             MR. CALVANI:  We represent the Plaintiff, Irving

16   Picard.

17             THE COURT:  Okay.

18             MR. MILLER:  Good morning, Your Honor.  I'm Robert

19   Miller of Lax & Neville.  This is Barry Lax, Lax & Neville.

20   We represent the Defendants.

21             THE COURT:  Okay.

22             MR. LAX:  Good morning, Your Honor.

23             THE COURT:  You know, reading these letters, it's

24   not clear to me what's in dispute.

25             MR. CALVANI:  Yes, Your Honor.
```

Page 6

1          THE COURT:  It seems to me to be a moving target.

2          MR. CALVANI:  It does to me as well.  But if I

3     could have a couple of minutes, I think I could frame the

4     issues in dispute succinctly.

5          THE COURT:  Well, assuming that they are prepared

6     to give the stipulation they said they're going to give --

7          MR. CALVANI:  Yes.

8          THE COURT:  -- which I take it is stipulating to

9     all of the deposits and withdrawals in these accounts since

10    the beginning of time, not just two years.

11         MR. CALVANI:  That's correct, Your Honor.

12         MR. MILLER:  Yes.

13         THE COURT:  What's left?

14         MR. CALVANI:  So, as of today, the Trustee has

15    four pending stipulations.  One is to Dan Shapiro, one is to

16    Leslie Shapiro and her husband, Kenneth Citron, one is to

17    Leslie Shapiro by herself, and one is to Stanley Shapiro.

18         THE COURT:  So you have those stipulations?

19         MR. CALVANI:  We do, we do.

20         THE COURT:  All right.

21         MR. CALVANI:  Well, I have copies of them.

22         THE COURT:  Okay --

23         MR. CALVANI:  We don't have signed stipulations.

24         THE COURT:  So --

25         MR. CALVANI:  So --

Page 7

1              THE COURT:  Let's just deal with the non- -- well,

2     I'll call them non-Stanley accounts.

3              MR. CALVANI:  Yes.

4              THE COURT:  This is an issue of his actual

5     knowledge.

6              MR. CALVANI:  Right.

7              THE COURT:  With respect to the people who are

8     essentially good faith purchasers and just liable on that

9     one intentional fraud count, what more do you need regarding

10    that?

11             MR. CALVANI:  I think we're in agreement on the

12    stipulations for Leslie, David and Ken.

13             THE COURT:  Okay.

14             MR. CALVANI:  We don't have signed stipulations.

15    I'm not sure why.  In our proposed stipulations, as

16    currently drafted, we only seek the receipt of transfers

17    within the two-year period.  It confirms net equity --

18             THE COURT:  Right, but you have to have a whole

19    history of the --

20             MR. CALVANI:  Right.

21             THE COURT:  Yeah.

22             MR. CALVANI:  And they've confirmed that equity

23    from the history of the account and we've agreed in the

24    stipulations not to seek discovery from those Defendants'

25    banks.

Page 8

1          THE COURT:  Okay.

2          MR. CALVANI:  So, I think we've given them what

3   they asked for.  I think we're in agreement there.  We don't

4   have signed stipulations, but I'm -- you know, I'm hopeful.

5          We have a fourth stipulation to Stanley Shapiro.

6   In this stipulation we sought, not only the confirmation of

7   net equity over the lifetime of the account, we sought the

8   confirmation of the receipt of the initial transfers that

9   S&R Investment Company or Mr. Shapiro received.

10          THE COURT:  Did you ask for those specific --

11          MR. CALVANI:  Yes.

12          THE COURT:  Okay.

13          MR. CALVANI:  Yes, Your Honor.

14          THE COURT:  So you've just got -- so you just have

15   the stipulation for Stanley, but not for the partnership or

16   Mrs. Shapiro?

17          MR. CALVANI:  Well, the partnership is covered.

18   What we did is we asked for Stanley because we thought --

19          THE COURT:  Right.

20          MR. CALVANI:  We make little distinction between

21   Stanley and S&R.  We believe he received the transfers.  But

22   this week, we received an offer from the Defendants staying

23   that Stanley is now willing to stipulate to that as manager

24   for S&R, S&R Investment Company received the transfers from

25   Accounts 1SH14 and 1SH172.  This should work.  I believe

Page 9

1    it's close to what we asked for.

2        I'm reviewing the BLMIS records to confirm in fact

3    that BLMIS paid the transfers directly from BLMIS to an S&R

4    Investment Company account at JP Morgan Chase.  I think

5    that's correct, and as soon as we confirm that, I think we

6    have an agreement with respect to Stanley Shapiro and S&R

7    Investment Company, Renee Shapiro.

8        So, with respect to those four stipulations, I'm

9    hopeful.  However, this week we also received an offer from

10    Defendants' counsel that Stanley Shapiro, as Trustee, would

11    stipulate that the David Shapiro Trust received the

12    transfers directly from BLMIS for Account 1SH28 and that the

13    Leslie Shapiro Trust receive the transfers directly from

14    BLMIS for Account 1SH30.

15        The problem with that stipulation is those aren't

16    the facts as we understand them and we're not willing to

17    stipulate to something that we don't believe is true.

18        Unlike S&R, the trust didn't have separate bank

19    accounts at JP Morgan Chase.  According to the documents

20    we've produced to Defendants, it appears that the transfers

21    went directly from BLMIS to David and Leslie's respective

22    personal bank accounts at JP Morgan Chase.  We have wire

23    transfers out of the BLMIS 703 account to their JP Morgan

24    Chase accounts.

25        THE COURT:  Have David and Leslie stipulated to

Page 10

1    those receipts?

2            MR. CALVANI:  No, they will not.  We also have

3    canceled checks that we've produced where the check is from

4    BLMIS to Leslie Shapiro individually, and deposited by

5    Leslie Shapiro in her personal bank account at JP Morgan

6    Chase.

7            THE COURT:  So, what is the stipulation that you

8    have with Leslie and David --

9            MR. CALVANI:  That is just what they'll give us as

10   to the receipt of the two-year transfers for their personal

11   bank account.  As you -- you know, the strict liability

12   accounts where you don't need to show a lack of good faith.

13           THE COURT:  But are there pending claims...

14   Aren't those the only claims pending against Leslie and

15   David at this point?

16           MR. CALVANI:  Correct.  Which is why we're seeking

17   the stipulations.  Which is why we're not seeking the

18   stipulations from them as to the receipt of those transfers.

19   Mr. Shapiro is still liable for those --

20           THE COURT:  No, but I guess what I don't

21   understand is, on the one hand you're telling me you have a

22   stipulation that satisfies you with respect to the transfers

23   received, the initial transfers received by David and

24   Leslie.

25           MR. CALVANI:  Yes.

1          THE COURT:  Then you tell me about these trust --

2     these trust BLMIS accounts --

3          MR. CALVANI:  Yes.

4          THE COURT:  -- that didn't have their own bank

5     accounts, and David and Leslie actually received those

6     transfers directly from BLMIS?

7          MR. CALVANI:  That's correct.  And --

8          THE COURT:  So, what does the stipulation do?

9          MR. CALVANI:  The confusion is -- I haven't

10    explained it well.  The stipulation is just for their

11    personal accounts at BLMIS, not the accounts that were in

12    the name of the trusts.

13         THE COURT:  So, you're saying they're the initial

14    transferees of the trust accounts?

15         MR. CALVANI:  David and Leslie are the initial

16    transferees to the accounts.

17         THE COURT:  All right.

18         MR. CALVANI:  Yes.  And we can't get a stipulation

19    to that, and that's fine.

20         So, in summary, you know, I believe the parties

21    may be able to stipulate to the two-year transfers received

22    by David and Leslie and Kenneth Citron, and I'm hopeful as

23    to a stipulation with Mr. Shapiro as to the transfers

24    received either by him or by S&R.

25         However, until we have signed stipulations from

Page 12

1    the Defendants, you know, we have no agreement.  So --

2              THE COURT:  That I understand.

3              MR. CALVANI:  So, that's the question with the

4    stipulations.

5              THE COURT:  But I thought that -- you know, I have

6    a couple of these letters where they said that this is what

7    they'll stipulate to.  If they stipulated to that, would

8    that be satisfactory?

9              MR. CALVANI:  We will not stipulate that the David

10   and Leslie Shapiro Trusts received initial transfers from

11   BLMIS --

12             THE COURT:  Okay.

13             MR. CALVANI:  -- because we don't think that's

14   true.

15             THE COURT:  All right.  But as to the other

16   stipulations which are referred to, I guess, in the latest

17   letter that was written?

18             MR. CALVANI:  Yes.  And I don't believe that we'll

19   have an issue with those.

20             THE COURT:  So, why don't you just submit an order

21   setting forth those facts as facts found in the case or

22   stipulated to?  Just, you know, what I've seen in these

23   cases are you say we're in agreement, and then you sit down

24   and you write the stipulation and it just, you know, doesn't

25   get done or it takes forever to be done.

1          MR. CALVANI:  That's been our experience.  So --

2          THE COURT:  So, why don't you just -- any

3    objection to just submitting an order that establishes at

4    least the facts that you both agree are relevant

5    stipulations?

6          MR. MILLER:  No objection, as long as it tracks

7    the letter that we submitted --

8          THE COURT:  Good.

9          MR. MILLER:  -- to the Court.

10          MR. CALVANI:  Okay.

11          THE COURT:  Settle it on notice.

12          MR. CALVANI:  Great.  So, that's the issue with

13    respect to --

14          THE COURT:  Okay.  Now, with respect --

15          MR. CALVANI:  -- the stipulations.

16          THE COURT:  -- to the trust accounts, you're still

17    seeking information -- well, the trusts didn't have, I

18    guess, bank accounts, so what are you doing about that now?

19          MR. CALVANI:  We're seeking regular discovery from

20    Stanley Shapiro; not from Leslie and David, but from the

21    Trustee Stanley Shapiro as to the receipt of those

22    transfers.  Because we don't just have to show net equity or

23    -- we have to show that someone received those transfers.

24    And no one's willing to step up and say that I received

25    those transfers.

Page 14

1          MR. MILLER:  Your Honor, with all respect I --

2          THE COURT:  Watch out when he says with all

3    respect.

4          MR. MILLER:  Mr. Shapiro has expressed the

5    stipulate -- is willing to stipulate and would have admitted

6    if he'd been asked, that the Leslie Trust and the David

7    Trust were the initial transferees.

8          THE COURT:  Well, he's saying they're not, though.

9          MR. MILLER:  Well, he --

10          THE COURT:  In other words, he's satisfied, I

11    guess, to accept the stipulations regarding David and Leslie

12    individually.  But there seems to be a dispute as to who was

13    the initial transferee of the trust accounts.

14          MR. MILLER:  There are no additional transferee

15    claims outside the two-year against Leslie and David, which

16    is what they're trying to sort of walk their way around to.

17          THE COURT:  Right, but it -- assuming that's the

18    case, if Leslie and David received the initial transfers

19    from the trust within two years and those were fictitious

20    profits, couldn't they recover them under the existing

21    complaint?

22          MR. MILLER:  Within the two-year, and that's what

23    Leslie and David have both admitted to all the facts

24    necessary.

25          THE COURT:  But not with respect to the trust

Page 15

1    accounts?

2                MR. MILLER:  With respect to the trust accounts,

3    the initial transfer claims against Leslie and David,

4    outside the two-year were dismissed.  The (indiscernible)

5    transfer claims were also dismissed.

6                THE COURT:  No, I know, but what I'm saying is if

7    the trust -- this Trustee, not Mr. Shapiro in his capacity

8    as Trustee, but in Picard, can show that the transfers to

9    the trust accounts during the two-year period went to David

10   and Leslie, can't he recover that?

11               MR. MILLER:  I see what the confusion is.  Within

12   the two-year period, we'll stipulate to anything that Leslie

13   and David have received.  There were no transfers from the

14   trust account within the two-year period.

15               MR. CALVANI:  That's correct, Your Honor.

16               THE COURT:  So, they're --

17               MR. MILLER:  They're seeking information outside -

18   -

19               THE COURT:  So, what is this about --

20               MR. CALVANI:  So, we're seeking to hold Mr.

21   Shapiro liable for those transfers as Trustee.  And that's

22   what our discovery is aimed at.  We have outstanding

23   document requests --

24               THE COURT:  What does it matter who the initial

25   transferee is if you're seeking to hold him liable as

Page 16

1    Trustee?

2            MR. CALVANI:  Because I think we're entitled to

3    know who received the transfers, if we're going to hold Mr.

4    Shapiro liable for it.  I don't want him later down the road

5    saying --

6            THE COURT:  Well, what's the theory of liability

7    against Mr. Shapiro if he's not the initial transferee?

8            MR. CALVANI:  What -- excuse me, Your Honor?

9            THE COURT:  What is the basis of Mr. Shapiro's

10   liability as a Trustee if he's not the transferee?  In other

11   words, if the Trust never received the transfer --

12           MR. CALVANI:  Right.

13           THE COURT:  -- then how can he be liable for that

14   transfer as a Trustee and he'd only be liable in his

15   capacity a trustee then, wouldn't he?

16           MR. CALVANI:  I'm not sure, Your Honor.

17           THE COURT:  I have to tell you, I don't understand

18   what this dispute is, but...  So, what is it that you're

19   looking for?

20           MR. CALVANI:  So, we are actually looking for a

21   motion to compel certain responses to document requests and

22   requests for admission that we have served on Stanley

23   Shapiro.

24           THE COURT:  Is that the second set of letters that

25   I've got here?

Page 17

1          MR. CALVANI:  Yes, Your Honor.  So --

2          THE COURT:  Well, let me deal with the first ones,

3     this issue of the third-party subpoenas on the banks.

4          MR. CALVANI:  Sure.

5          THE COURT:  Is that resolved?

6          MR. CALVANI:  No, Your Honor, it is not resolved.

7     After not receiving responses to our proposed stipulations,

8     over the summer we served six subpoenas on Defendants'

9     third-party banks.  Four of those subpoenas are moot because

10    the banks have responded and said we don't have responsive

11    documents for those accounts.

12          At issue today are two subpoenas that the Trustee

13    served on JP Morgan and Wells Fargo Advisors for documents

14    concerning transfers in accounts held by Mr. Shapiro and S&R

15    Investment Company.

16          So, setting aside the issue of net equity and the

17    fact that we don't have stipulations, setting aside the fact

18    that the Defendants have raised affirmative defenses arguing

19    that the Trustee can't trace these transfers, we believe we

20    are entitled to this discovery for the independent reason

21    that it's relevant to Shapiro's knowledge.

22          Mr. Shapiro withdrew large sums of money in

23    advance and what we believe in preparation for BLMIS's

24    inevitable collapse and we're entitled to discovery on what

25    he did with this money because it goes to his state of mind.

Page 18

1          THE COURT:  What he did with the money?

2          MR. CALVANI:  Yes, Your Honor.

3          THE COURT:  Sounds like a subsequent transfer

4    claim.

5          MR. CALVANI:  Well, I --

6          THE COURT:  Why would it matter -- how would it be

7    relevant what he did with the money?

8          MR. CALVANI:  Right.

9          THE COURT:  Whether he bought uranium stock or

10   lottery tickets or invested it in the business?

11         MR. CALVANI:  Well, I mean, after -- as we allege

12   in our complaint, in 2002 Mr. Shapiro met with Annette

13   Bongiorno and Paul Konigsberg and they worked together to

14   fabricate trades.

15         THE COURT:  Mm hmm.

16         MR. CALVANI:  And they did this in 2003.  And

17   following those meetings, we see large withdrawals of money

18   out of BLMIS.  We see $7.5 million in April 2003, $4 million

19   in April 2004, $4.1 million in 2005, $3 million in 2008.

20   And during the criminal trial, the district court allowed

21   the government to introduce evidence that the Defendants,

22   O'Hara and Perez, withdrew large sums of money after

23   learning of the fraud.  So, we think what he did with the

24   money is relevant.

25         THE COURT:  But -- I understand the relevance of

Page 19

1    his withdrawing money --

2         MR. CALVANI:  Yes, Your Honor.

3         THE COURT:  -- but why does it matter what he did

4    with it?

5         MR. CALVANI:  So, we have Rule 2004 examination

6    testimony from Mr. Shapiro that he withdrew money from BLMIS

7    to invest it in Treasuries or mutual funds at Bear Sterns or

8    Wachovia.  Well, his split-strike conversion accounts were

9    invested in Treasuries and mutual funds when they were out

10   of the market.

11        THE COURT:  So, why don't you ask him at a

12   deposition why he withdrew money to invest in the

13   investments that he was supposedly invested in under the

14   split-strike strategy?

15        MR. CALVANI:  Because we think he --

16        THE COURT:  In other words, you know what he did

17   with it, or at least you...

18        MR. CALVANI:  Well, I want to confirm it with the

19   documents because I think the documents are a better source

20   of evidence than testimony about events that happened some

21   time ago.  So, if the documents still exist, we believe

22   we're entitled to them.  You know, for discovery purposes, I

23   think relevance is a very, you know, easy burden to meet.

24        And so, what he did with the money -- I mean, he

25   could have left it at BLMIS and just said to Ms. Bongiorno,

Page 20

1   please keep it in Treasuries, or please keep it in mutual

2   funds.  But he didn't.  He got it out of BLMIS --

3            THE COURT:  But did he have that kind of an

4   account, or did Madoff have discretion over the account?

5            MR. CALVANI:  He had -- yes, he had two kinds of

6   accounts.  So, he had the accounts managed by Annette

7   Bongiorno, which are more buy and hold accounts where they

8   invest in stock and they hope that the stocks appreciate,

9   and if they don't, we've alleged that they back-date trades

10  and short stocks so that they show better gains on the

11  account statements.

12           He also had accounts managed by Frank DiPascali.

13  These are the (indiscernible) split-strike conversion

14  strategy accounts.  Those accounts are invested in

15  Treasuries half the year.  The Annette accounts can be

16  invested in Treasuries.  And we allege that Stanley Shapiro

17  was part of a small, privileged group who Madoff trusted and

18  who Madoff gave special access and special privileges.  And

19  if he had asked Annette Bongiorno to put this money in

20  Treasuries, we would have done it.

21           Our case has been built upon notes that Stanley

22  Shapiro sent to and from Ms. Bongiorno or Paul Konigsberg,

23  and on the face of the notes they at times seem innocuous.

24  You know, it's cancel a trade here, or give me a gain or

25  loss in this account.  But when you look at how Ms.

Page 21

1    Bongiorno affected those transactions in his account

2    statements, you see the hallmarks of fraud.  And so, these

3    notes that seem innocuous about what he can do, what he can

4    ask Ms. Bongiorno to do, we think he had that power and we

5    think it's relevant.

6              THE COURT:  All right.  So, you want to make a

7    motion to compel?

8              MR. CALVANI:  Well, we don't -- on the subpoenas,

9    I believe it's their burden to move to quash.  And if they

10   move to quash --

11             THE COURT:  Can they move to -- other than on

12   privacy grounds -- and I had this argument in one of the

13   other cases --

14             MR. CALVANI:  Yeah.

15             THE COURT:  -- other than on privacy grounds, do

16   they have standing to move to quash a subpoena on a bank?

17             MR. CALVANI:  Well, I think that's --

18             THE COURT:  I've had this issue I know with Ms.

19   (Indiscernible).

20             MR. CALVANI:  Well, the bank -- I mean, the bank

21   has basically said to us, we're going to hold these

22   documents back --

23             THE COURT:  All right.

24             MR. CALVANI:  -- until you work out the dispute

25   amongst yourselves.  So, we can move to compel.  I'm happy

Page 22

1    to do that.

2              THE COURT:  Well, you'd move to compel on the

3    bank.

4              MR. CALVANI:  Right.  And they can oppose it, but

5    I don't know that they'd have standing in that instance.

6              THE COURT:  No, but that's --

7              MR. CALVANI:  So, I understand Your Honor's point,

8    but whatever the proper procedure is, if they can move to

9    quash the subpoena, we'd be happy to oppose that motion.

10   But --

11             THE COURT:  I don't if they can move to quash a

12   subpoena that's served on a third-party.

13             MR. CALVANI:  No.

14             THE COURT:  You can certainly move to compel

15   discovery from a third-party and then maybe they can

16   intervene and say, wait a minute, I have privacy rights or

17   there's some other basis --

18             MR. CALVANI:  Yeah.

19             THE COURT:  -- or some other standing to seek to

20   quash the subpoena.

21             MR. CALVANI:  And so, I will look at the proper

22   procedure to do that and we will act accordingly.  We're

23   happy to move to compel the banks to do that.  But we would

24   also like to move to compel Mr. Shapiro to answer really 18

25   document requests and a couple requests -- and several

Page 23

1    requests for admission.

2            So, you know, we served document requests back in

3    October 2016.  Mr. Shapiro objected to 39 requests and he

4    agreed to produce documents in response to only 10 requests.

5    Your Honor held a Rule 7007 conference last February.

6            THE COURT:  I remember.

7            MR. CALVANI:  We met and conferred in April.  And

8    then in June, the Trustee sent letters to opposing counsel

9    where we withdrew about 21 requests, we narrowed the scope

10   of 14 requests, and we restated only four requests as

11   originally drafted.  We did this as a compromise to try and

12   move this case forward.  And we believe that the narrowed

13   and restated requests go to the heart of our claims against

14   Mr. Shapiro.  And in fact, these are the notes that I was

15   talking about earlier, the notes he wrote to Mr. Konigsberg

16   or Ms. Bongiorno about cancelling trades or requesting gains

17   or losses.  And --

18           THE COURT:  Well, I see that's your Request Number

19   7, but 5 and 6 seem kind of broad.

20           MR. CALVANI:  So --

21           MR. MILLER:  And Your Honor, the requests are

22   still broad.  We've responded and agreed to produce

23   documents to some of these requests.  Others are still too

24   broad.  Requests for admissions are almost exclusively about

25   the trust accounts and receipt of subsequent transfers from

Page 24

1    the trust accounts before the two-year claim period.  Same

2    thing that they're looking for on the stipulation.  And so,

3    you know, we don't think that this issue is ready for the

4    Court.  We are still willing to meet and confer on our new

5    responses.

6              But as to the subpoenas, I do think that it's

7    privacy grounds, and I do think too --

8              THE COURT:  Okay.

9              MR. MILLER:  -- JP Morgan has objected.

10             THE COURT:  Well, if JP Morgan objects, JP Morgan

11   can raise its own objections.  I haven't heard anything from

12   JP Morgan.

13             MR. MILLER:  But I do want to respond just to this

14   idea very briefly that they need discovery from JP Morgan on

15   withdrawals that they already have a complete record of and

16   to which Mr. Shapiro is willing to stipulate.

17             THE COURT:  Well, they want to know about the

18   outflow from that account --

19             MR. MILLER:  We think that's about subsequent

20   transfers.  Their theory is that it was reinvested in other

21   securities.  Mr. Shapiro himself was not in the split-strike

22   strategy.  He was in the portfolio, the core accounts that

23   were managed by Ms. Bongiorno, who was not in the split-

24   strike strategy.  But regardless, they already -- they had

25   the Rule 2004 testimony on whether the money was invested

Page 25

1    elsewhere.

2         THE COURT:  Look, you can make a motion to compel

3    discovery -- or on the banks, I guess, because it's the

4    banks' subpoenas.  If the banks have objections, I'll hear

5    those.  Obviously, you know, if you have privacy objections,

6    you can raise those.

7         It's not clear to me why this outflow information

8    is relevant or why the subpoenas are relevant if you have

9    all the inflow information to those accounts.

10        MR. CALVANI:  Yes, Your Honor.

11        THE COURT:  By the way, the fact that some of this

12   information may disclose subsequent transfers doesn't mean

13   they can't get it if it's relevant or pertinent to some

14   other issue in the case.

15        MR. MILLER:  We don't think it's relevant or

16   pertinent to any other issue in the case.  We think their

17   motive is to get subsequent transfers.

18        MR. CALVANI:  So, unfortunately, Your Honor, I

19   think we're at an impasse on our narrow request as we've

20   reframed them.

21        THE COURT:  Well, I've looked at your requests.

22   Five looks very broad, 6 looks very broad --

23        MR. CALVANI:  So, Your Honor --

24        THE COURT:  Let me just --

25        MR. CALVANI:  Yes.  Excuse me.

Page 26

1          THE COURT:  Seven seems okay.  You know, Shapiro's

2     communications with BLMIS are certainly relevant.  I've seen

3     the notes that were photocopied into the complaint.  I

4     haven't really gone through these one by one.  Look, if you

5     think it's worthwhile to meet and confer, this is the

6     second, at least the second discovery conference I've heard

7     in this case, and if fact, you did meet and confer and

8     apparently made some progress the last time.

9          Just, you know, one word of caution.  You know,

10     when I get these letters and you say we asked him 139

11     interrogatories and he only answered 45 --

12          MR. CALVANI:  Yeah.

13          THE COURT:  -- without telling me what he didn't

14     answer, it doesn't really help.

15          MR. CALVANI:  Yes, Your Honor.

16          THE COURT:  Okay?  So, as I said, you've made

17     progress in the past regarding meet and confer, but you can

18     make a motion, certainly, to compel discovery on the banks,

19     which sounds fairly narrow at this point.  You know, the

20     outstanding requests and those kind of things are a little

21     different --

22          MR. CALVANI:  And Your Honor --

23          THE COURT:  -- and they don't concern the bank.

24          MR. CALVANI:  If we fail to reach an agreement on

25     the narrowed request for production of documents or the

Page 27

1    requests for admission, can we make a motion to compel in

2    response to those?

3            THE COURT:  Well, I mean, I guess you can, but as

4    I said, I can look at these...  Come back to Number 5, "All

5    documents concerning the circumstances under which Shapiro

6    planned to or continued to invest with BLMIS."  That's just

7    -- that's so broad.

8            MR. ROLLINSON:  Your Honor, on that -- Jamie

9    Rollinson, sorry to interrupt.

10           They did respond to that and restate their

11   response and say they are willing to produce documents

12   responsive to his decision to initially invest.  So, you

13   know, those kind of things we can certainly try to sort out.

14           THE COURT:  Well, that's what I'm saying.

15           MR. ROLLINSON:  Yeah, but --

16           THE COURT:  You know, some of them are very

17   specific.  Again, communications with BLMIS or Annette

18   Bongiorno are obviously relevant.  When you start to ask for

19   all documents related to these broad categories, they can be

20   narrowed, I think, to hone in on what it is you're really

21   looking for.  And the narrower they are, the more likely I'm

22   going to say, yeah, you're right.

23           MR. ROLLINSON:  Okay.

24           THE COURT:  All right.

25           MR. ROLLINSON:  Thank you, Your Honor.  Your

1    Honor, just one final point I just wanted for clarification,

2    because I'm not sure who was on the phone with bank's

3    counsel, JP Morgan Bank's counsel.  I think they've

4    objected, general objections, but they have responsive

5    documents, so I don't think they're objecting to producing

6    documents.  What we agreed to with fellow counsel over there

7    is we would tell them to hold back any production until we

8    can --

9              MR. MILLER:  I think they made specific objections

10   on relevance grounds, on grounds of privilege.  I think

11   they've objected on a number of grounds.

12             THE COURT:  I would suggest that -- once again, in

13   this matter I'm hearing two different sides.

14             MR. ROLLINSON:  Certainly.

15             THE COURT:  I would suggest that -- just make a

16   motion to compel and, you know, maybe the bank's will say we

17   have the documents, it's your fight, meaning the Defendants'

18   fight.  We don't really care, we're like stakeholders.

19             MR. ROLLINSON:  Yes.

20             THE COURT:  If they have their own objections,

21   obviously they can object raise them at that point.  If they

22   think they have personal privilege objections, I don't know

23   what they would be.  I don't know how they could object on

24   grounds of relevance.  They're not parties to the lawsuit.

25   But they certainly can object on grounds of proportionality

Page 29

1     or things like that.

2             How many documents do the banks still hold?  This

3     is -- these are old records.

4             MR. CALVANI:  Right.

5             THE COURT:  I realize JP Morgan was involved and

6     we're all certain they may have retained or held -- had a

7     litigation hold on all these, but how far back do their

8     documents go?

9             MR. CALVANI:  I don't know, Your Honor.  But I

10    know that we served six subpoenas and only two came back

11    with responsive documents.  And I think that goes to the

12    fact that we are requesting all documents.

13            THE COURT:  All right.

14            MR. CALVANI:  Okay.  Thank you, Your Honor.  I

15    think we have a way forward.

16            THE COURT:  All right.

17            ALL:  Thank you, Your Honor.

18    (Whereupon these proceedings were concluded at 10:51 AM)

19

20

21

22

23

24

25

Page 30

1                              C E R T I F I C A T I O N

2

3           I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6      Sonya                    Digitally signed by Sonya Ledanski
                                Hyde
                                DN: cn=Sonya Ledanski Hyde, o, ou,
       Ledanski Hyde            email=digital1@veritext.com, c=US
7                               Date: 2017.10.09 15:42:13 -04'00'

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  October 9, 2017

**[& - built]**

| & |
|---|
| **&** 4:3,11,17 5:19 5:19 |

| 0 |
|---|
| **08-99000** 1:3 |

| 1 |
|---|
| **10** 23:4 |
| **10-05383** 1:4 |
| **10004** 2:3 |
| **10018** 4:19 |
| **10111** 4:6 |
| **10:26** 2:6 |
| **10:51** 29:18 |
| **11501** 30:23 |
| **139** 26:10 |
| **14** 23:10 |
| **1450** 4:18 |
| **18** 22:24 |
| **1985** 4:15 |
| **1989** 4:14 |
| **1sh14** 8:25 |
| **1sh172** 8:25 |
| **1sh28** 9:12 |
| **1sh30** 9:14 |

| 2 |
|---|
| **2002** 18:12 |
| **2003** 18:16,18 |
| **2004** 18:19 19:5 24:25 |
| **2005** 18:19 |
| **2008** 18:19 |
| **2016** 23:3 |
| **2017** 2:5 30:25 |
| **21** 23:9 |

| 3 |
|---|
| **3** 18:19 |
| **300** 30:22 |
| **330** 30:21 |
| **35th** 4:18 |
| **39** 23:3 |

| 4 |
|---|
| **4** 18:18 |
| **4.1** 18:19 |
| **45** 4:5 26:11 |

| 5 |
|---|
| **5** 2:5 23:19 27:4 |

| 6 |
|---|
| **6** 23:19 25:22 |

| 7 |
|---|
| **7** 23:19 |
| **7.5** 18:18 |
| **7007** 23:5 |
| **703** 9:23 |

| 9 |
|---|
| **9** 30:25 |

| a |
|---|
| **a.j.c.** 4:16 |
| **able** 11:21 |
| **accept** 14:11 |
| **access** 20:18 |
| **account** 7:23 8:7 9:4,12,14,23 10:5 10:11 15:14 20:4 20:4,11,25 21:1 24:18 |
| **accounts** 6:9 7:2 8:25 9:19,22,24 10:12 11:2,5,11 11:11,14,16 13:16 13:18 14:13 15:1 15:2,9 17:11,14 19:8 20:6,6,7,12 20:14,14,15 23:25 24:1,22 25:9 |
| **accurate** 30:4 |
| **act** 22:22 |
| **actual** 7:4 |
| **additional** 14:14 |
| **admission** 16:22 23:1 27:1 |

| |
|---|
| **admissions** 23:24 |
| **admitted** 14:5,23 |
| **adv** 1:4 |
| **advance** 17:23 |
| **advisors** 17:13 |
| **affirmative** 17:18 |
| **ago** 19:21 |
| **agree** 13:4 |
| **agreed** 7:23 23:4 23:22 28:6 |
| **agreement** 7:11 8:3 9:6 12:1,23 26:24 |
| **aimed** 15:22 |
| **al** 1:16 |
| **allege** 18:11 20:16 |
| **alleged** 20:9 |
| **allowed** 18:20 |
| **annette** 18:12 20:6,15,19 27:17 |
| **answer** 22:24 26:14 |
| **answered** 26:11 |
| **anybody** 5:4 |
| **apparently** 26:8 |
| **appears** 9:20 |
| **appreciate** 20:8 |
| **april** 18:18,19 23:7 |
| **arguing** 17:18 |
| **argument** 21:12 |
| **aside** 17:16,17 |
| **asked** 8:3,18 9:1 14:6 20:19 26:10 |
| **assuming** 6:5 14:17 |
| **attorneys** 4:4,12 |

| b |
|---|
| **b** 2:21 4:15,17 |
| **back** 20:9 21:22 23:2 27:4 28:7 29:7,10 |

| |
|---|
| **baker** 4:3 5:11 |
| **bank** 9:18,22 10:5 10:11 11:4 13:18 21:16,20,20 22:3 26:23 |
| **bank's** 28:2,3,16 |
| **bankruptcy** 1:1 2:1,23 |
| **banks** 7:25 17:3,9 17:10 22:23 25:3 25:4,4 26:18 29:2 |
| **barry** 4:21 5:19 |
| **basically** 21:21 |
| **basis** 16:9 22:17 |
| **bear** 19:7 |
| **beginning** 6:10 |
| **believe** 8:21,25 9:17 11:20 12:18 17:19,23 19:21 21:9 23:12 |
| **bernard** 1:8,13 |
| **bernstein** 2:22 |
| **better** 19:19 20:10 |
| **blmis** 9:2,3,3,12 9:14,21,23 10:4 11:2,6,11 12:11 18:18 19:6,25 20:2 26:2 27:6,17 |
| **blmis's** 17:23 |
| **bongiorno** 18:13 19:25 20:7,19,22 21:1,4 23:16 24:23 27:18 |
| **bought** 18:9 |
| **bowling** 2:2 |
| **break** 5:9 |
| **brian** 4:22 |
| **briefly** 24:14 |
| **broad** 23:19,22,24 25:22,22 27:7,19 |
| **broadway** 4:18 |
| **built** 20:21 |

**[burden - distinction]**

**burden** 19:23
21:9
**business** 18:10
**buy** 20:7

**c**

**c** 4:1 5:1 30:1,1
5:7 7:2
**call** 5:7 7:2
**calvani** 4:8 5:3,6,8
5:11,11,15,25 6:2
6:7,11,14,19,21
6:23,25 7:3,6,11
7:14,20,22 8:2,11
8:13,17,20 10:2,9
10:16,25 11:3,7,9
11:15,18 12:3,9
12:13,18 13:1,10
13:12,15,19 15:15
15:20 16:2,8,12
16:16,20 17:1,4,6
18:2,5,8,11,16
19:2,5,15,18 20:5
21:8,14,17,20,24
22:4,7,13,18,21
23:7,20 25:10,18
25:23,25 26:12,15
26:22,24 29:4,9
29:14
**cancel** 20:24
**canceled** 10:3
**cancelling** 23:16
**capacity** 15:7
16:15
**care** 28:18
**case** 1:3,4 12:21
14:18 20:21 23:12
25:14,16 26:7
**cases** 12:23 21:13
**categories** 27:19
**caution** 26:9
**certain** 16:21 29:6
**certainly** 22:14
26:2,18 27:13
28:14,25

**certified** 30:3
**chase** 9:4,19,22,24
10:6
**check** 10:3
**checks** 10:3
**circumstances**
27:5
**citron** 4:15,16
6:16 11:22
**claim** 18:4 24:1
**claims** 10:13,14
14:15 15:3,5
23:13
**clarification** 28:1
**clear** 5:24 25:7
**close** 9:1
**collapse** 17:24
**colleague** 5:12
**come** 27:4
**communications**
26:2 27:17
**company** 8:9,24
9:4,7 17:15
**compel** 16:21 21:7
21:25 22:2,14,23
22:24 25:2 26:18
27:1 28:16
**complaint** 14:21
18:12 26:3
**complete** 24:15
**compromise**
23:11
**concern** 26:23
**concerning** 17:14
27:5
**concluded** 29:18
**confer** 24:4 26:5,7
26:17
**conference** 3:1
23:5 26:6
**conferred** 23:7
**confirm** 9:2,5
19:18

**confirmation** 8:6
8:8
**confirmed** 7:22
**confirms** 7:17
**confusion** 11:9
15:11
**continued** 27:6
**conversion** 19:8
20:13
**copies** 6:21
**core** 24:22
**correct** 6:11 9:5
10:16 11:7 15:15
**counsel** 9:10 23:8
28:3,3,6
**count** 7:9
**country** 30:21
**couple** 6:3 12:6
22:25
**court** 1:1 2:1 5:2,4
5:7,10,13,17,21
5:23 6:1,5,8,13,18
6:20,22,24 7:1,4,7
7:13,18,21 8:1,10
8:12,14,19 9:25
10:7,13,20 11:1,4
11:8,13,17 12:2,5
12:12,15,20 13:2
13:8,9,11,14,16
14:2,8,10,17,25
15:6,16,19,24
16:6,9,13,17,24
17:2,5 18:1,3,6,9
18:15,20,25 19:3
19:11,16 20:3
21:6,11,15,18,23
22:2,6,11,14,19
23:6,18 24:4,8,10
24:17 25:2,11,21
25:24 26:1,13,16
26:23 27:3,14,16
27:24 28:12,15,20
29:5,13,16

**covered** 8:17
**criminal** 18:20
**currently** 7:16

**d**

**d** 5:1
**dan** 6:15
**date** 20:9 30:25
**david** 4:13,14
7:12 9:11,21,25
10:8,15,23 11:5
11:15,22 12:9
13:20 14:6,11,15
14:18,23 15:3,9
15:13
**deal** 7:1 17:2
**debtor** 1:10
**decision** 27:12
**defendants** 1:17
4:12 5:20 7:24
8:22 9:10,20 12:1
17:8,18 18:21
28:17
**defenses** 17:18
**deposited** 10:4
**deposition** 19:12
**deposits** 6:9
**different** 26:21
28:13
**dipascali** 20:12
**directly** 9:3,12,13
9:21 11:6
**disclose** 25:12
**discovery** 3:1 7:24
13:19 15:22 17:20
17:24 19:22 22:15
24:14 25:3 26:6
26:18
**discretion** 20:4
**dismissed** 15:4,5
**dispute** 5:24 6:4
14:12 16:18 21:24
**distinction** 8:20

**[district - interrupt]**

**district** 1:2 18:20
**document** 15:23
  16:21 22:25 23:2
**documents** 9:19
  17:11,13 19:19,19
  19:21 21:22 23:4
  23:23 26:25 27:5
  27:11,19 28:5,6
  28:17 29:2,8,11
  29:12
**doing** 13:18
**don't** 13:2,22
**drafted** 7:16
  23:11

**e**

**e** 2:21,21 4:1,1 5:1
  5:1 30:1
**earlier** 23:15
**easy** 19:23
**ecro** 2:25
**either** 11:24
**entitled** 16:2
  17:20,24 19:22
**equity** 7:17,22 8:7
  13:22 17:16
**esq** 4:4,21,22
**essentially** 7:8
**establishes** 13:3
**et** 1:16
**events** 19:20
**evidence** 18:21
  19:20
**examination** 19:5
**exclusively** 23:24
**excuse** 16:8 25:25
**exist** 19:21
**existing** 14:20
**experience** 13:1
**explained** 11:10
**expressed** 14:4

**f**

**f** 2:21 4:15,17
  30:1
**fabricate** 18:14
**face** 20:23
**fact** 9:2 17:17,17
  23:14 25:11 26:7
  29:12
**facts** 9:16 12:21
  12:21 13:4 14:23
**fail** 26:24
**fairly** 26:19
**faith** 7:8 10:12
**far** 29:7
**fargo** 17:13
**february** 23:5
**fellow** 28:6
**fictitious** 14:19
**fight** 18:17,18
**final** 28:1
**fine** 11:19
**first** 17:2
**five** 25:22
**floor** 4:18
**following** 18:17
**foregoing** 30:3
**forever** 12:25
**forth** 12:21
**forward** 23:12
  29:15
**found** 12:21
**four** 6:15 9:8 17:9
  23:10
**fourth** 8:5
**frame** 6:3
**frank** 20:12
**fraud** 7:9 18:23
  21:2
**funds** 19:7,9 20:2

**g**

**g** 5:1
**gain** 20:24

**gains** 20:10 23:16
**general** 28:4
**give** 6:6,6 10:9
  20:24
**given** 8:2
**go** 23:13 29:8
**goes** 17:25 29:11
**going** 6:6 16:3
  21:21 27:22
**good** 5:3,4,14,18
  5:22 7:8 10:12
  13:8
**government** 18:21
**great** 13:12
**green** 2:2
**grounds** 21:12,15
  24:7 28:10,10,11
  28:24,25
**group** 20:17
**guess** 10:20 12:16
  13:18 14:11 25:3
  27:3

**h**

**h** 1:12 4:4
**half** 20:15
**hallmarks** 21:2
**hand** 10:21
**happened** 19:20
**happy** 21:25 22:9
  22:23
**hear** 25:4
**heard** 24:11 26:6
**hearing** 3:1 28:13
**heart** 23:13
**held** 17:14 23:5
  29:6
**help** 26:14
**he'd** 16:14
**history** 7:19,23
**hmm** 18:15
**hold** 15:20,25
  16:3 20:7 21:21
  28:7 29:2,7

**hon** 2:22
**hone** 27:20
**honor** 5:3,14,18
  5:22,25 6:11 8:13
  14:1 15:15 16:8
  16:16 17:1,6 18:2
  19:2 23:5,21
  25:10,18,23 26:15
  26:22 27:8,25
  28:1 29:9,14,17
**honor's** 22:7
**hope** 20:8
**hopeful** 8:4 9:9
  11:22
**hostetler** 4:3 5:11
**husband** 6:16
**hyde** 3:25 30:3,8

**i**

**idea** 24:14
**impasse** 25:19
**independent**
  17:20
**indiscernible** 15:4
  20:13 21:19
**individually** 10:4
  14:12
**inevitable** 17:24
**inflow** 25:9
**information** 13:17
  15:17 25:7,9,12
**initial** 8:8 10:23
  11:13,15 12:10
  14:7,13,18 15:3
  15:24 16:7
**initially** 27:12
**innocuous** 20:23
  21:3
**instance** 22:5
**intentional** 7:9
**interrogatories**
  26:11
**interrupt** 27:9

**intervene** 22:16
**introduce** 18:21
**invest** 19:7,12
   20:8 27:6,12
**invested** 18:10
   19:9,13 20:14,16
   24:25
**investment** 1:8,13
   4:13 8:9,24 9:4,7
   17:15
**investments** 19:13
**involved** 29:5
**irving** 1:12 4:4
   5:15
**issue** 7:4 12:19
   13:12 17:3,12,16
   21:18 24:3 25:14
   25:16
**issues** 6:4

**j**

**j** 4:22
**j.g.s.** 4:17
**jamie** 4:9 5:12
   27:8
**jp** 9:4,19,22,23
   10:5 17:13 24:9
   24:10,10,12,14
   28:3 29:5
**judge** 2:23
**june** 23:8

**k**

**k.f.c.** 4:16
**karen** 2:25
**keep** 20:1,1
**ken** 7:12
**kenneth** 4:16 6:16
   11:22
**kind** 20:3 23:19
   26:20 27:13
**kinds** 20:5
**know** 5:23 8:4
   10:11 11:20 12:1
   12:5,22,24 15:6

16:3 19:16,22,23
   20:24 21:18 22:5
   23:2 24:3,17 25:5
   26:1,9,9,19 27:13
   27:16 28:16,22,23
   29:9,10
**knowledge** 7:5
   17:21
**konigsberg** 18:13
   20:22 23:15

**l**

**l** 1:8,13
**l.l.c.** 4:16
**lack** 10:12
**lad** 4:13
**large** 17:22 18:17
   18:22
**latest** 12:16
**lawsuit** 28:24
**lax** 4:11,21 5:19
   5:19,19,22
**learning** 18:23
**ledanski** 3:25 30:3
   30:8
**left** 6:13 19:25
**legal** 30:20
**leslie** 4:14,15 6:16
   6:17 7:12 9:13,25
   10:4,5,8,14,24
   11:5,15,22 12:10
   13:20 14:6,11,15
   14:18,23 15:3,10
   15:12
**leslie's** 9:21
**letter** 12:17 13:7
**letters** 5:23 12:6
   16:24 23:8 26:10
**liability** 10:11
   16:6,10
**liable** 7:8 10:19
   15:21,25 16:4,13
   16:14

**lifetime** 8:7
**liquidation** 1:12
**litigation** 29:7
**little** 8:20 26:20
**llc** 1:8,13
**llp** 4:3,11
**long** 13:6
**look** 20:25 22:21
   25:2 26:4 27:4
**looked** 25:21
**looking** 16:19,20
   24:2 27:21
**looks** 25:22,22
**loss** 20:25
**losses** 23:17
**lottery** 18:10

**m**

**m** 2:22
**madoff** 1:8,13 5:2
   5:10 20:4,17,18
**managed** 20:6,12
   24:23
**manager** 8:23
**market** 19:10
**matter** 1:6 15:24
   18:6 19:3 28:13
**mean** 18:11 19:24
   21:20 25:12 27:3
**meaning** 28:17
**meet** 19:23 24:4
   26:5,7,17
**meetings** 18:17
**met** 18:12 23:7
**miller** 5:18,19
   6:12 13:6,9 14:1,4
   14:9,14,22 15:2
   15:11,17 23:21
   24:9,13,19 25:15
   28:9
**million** 18:18,18
   18:19,19
**mind** 17:25

**mineola** 30:23
**minute** 22:16
**minutes** 6:3
**mm** 18:15
**money** 17:22,25
   18:1,7,17,22,24
   19:1,6,12,24
   20:19 24:25
**moot** 17:9
**morgan** 9:4,19,22
   9:23 10:5 17:13
   24:9,10,10,12,14
   28:3 29:5
**morning** 5:3,4,6
   5:14,18,22
**motion** 16:21 21:7
   22:9 25:2 26:18
   27:1 28:16
**motive** 25:17
**move** 21:9,10,11
   21:16,25 22:2,8
   22:11,14,23,24
   23:12
**moving** 6:1
**mutual** 19:7,9
   20:1

**n**

**n** 4:1 5:1 30:1
**name** 11:12
**narrow** 25:19
   26:19
**narrowed** 23:9,12
   26:25 27:20
**narrower** 27:21
**necessary** 14:24
**need** 7:9 10:12
   24:14
**net** 7:17 8:7 13:22
   17:16
**never** 16:11
**neville** 4:11,22
   5:19,19

[new - requests]                                                              Page 5

**new** 1:2 2:3 4:6,19
  24:4
**non** 7:1,2
**notes** 20:21,23
  21:3 23:14,15
  26:3
**notice** 13:11
**number** 23:18
  27:4 28:11
**ny** 2:3 4:6,19
  30:23

**o**

**o** 2:21 4:15,17 5:1
  30:1
**o'hara** 18:22
**object** 28:21,23
  28:25
**objected** 23:3
  24:9 28:4,11
**objecting** 28:5
**objection** 13:3,6
**objections** 24:11
  25:4,5 28:4,9,20
  28:22
**objects** 24:10
**obviously** 25:5
  27:18 28:21
**october** 2:5 23:3
  30:25
**offer** 8:22 9:9
**okay** 5:17,21 6:22
  7:13 8:1,12 12:12
  13:10,14 24:8
  26:1,16 27:23
  29:14
**old** 29:3 30:21
**once** 28:12
**one's** 13:24
**ones** 17:2
**oppose** 22:4,9
**opposing** 23:8
**order** 12:20 13:3

**originally** 23:11
**outflow** 24:18
  25:7
**outside** 14:15 15:4
  15:17
**outstanding** 15:22
  26:20

**p**

**p** 4:1,1 5:1
**paid** 9:3
**part** 20:17
**parties** 11:20
  28:24
**partnership** 8:15
  8:17
**party** 17:3,9
  22:12,15
**paul** 18:13 20:22
**pending** 6:15
  10:13,14
**people** 7:7
**perez** 18:22
**period** 7:17 15:9
  15:12,14 24:1
**personal** 9:22
  10:5,10 11:11
  28:22
**pertinent** 25:13
  25:16
**phone** 28:2
**photocopied** 26:3
**picard** 1:12 4:4
  5:16 15:8
**plaintiff** 1:14 5:15
**planned** 27:6
**plaza** 4:5
**please** 20:1,1
**point** 10:15 22:7
  26:19 28:1,21
**portfolio** 24:22
**power** 21:4
**preparation**
  17:23

**prepared** 6:5
**privacy** 21:12,15
  22:16 24:7 25:5
**privilege** 28:10,22
**privileged** 20:17
**privileges** 20:18
**problem** 9:15
**procedure** 22:8
  22:22
**proceedings**
  29:18 30:4
**produce** 23:4,22
  27:11
**produced** 9:20
  10:3
**producing** 28:5
**production** 26:25
  28:7
**profits** 14:20
**progress** 26:8,17
**proper** 22:8,21
**proportionality**
  28:25
**proposed** 7:15
  17:7
**purchasers** 7:8
**purposes** 19:22
**put** 20:19

**q**

**quash** 21:9,10,16
  22:9,11,20
**question** 12:3

**r**

**r** 2:21 4:1,21 5:1
  30:1
**rachel** 4:13
**raise** 24:11 25:6
  28:21
**raised** 17:18
**reach** 26:24
**reading** 5:23
**ready** 24:3

**realize** 29:5
**really** 22:24 26:4
  26:14 27:20 28:18
**reason** 17:20
**receipt** 7:16 8:8
  10:10,18 13:21
  23:25
**receipts** 10:1
**receive** 9:13
**received** 8:9,21,22
  8:24 9:9,11 10:23
  10:23 11:5,21,24
  12:10 13:23,24
  14:18 15:13 16:3
  16:11
**receiving** 17:7
**record** 24:15 30:4
**records** 9:2 29:3
**recover** 14:20
  15:10
**referred** 12:16
**reframed** 25:20
**regarding** 7:9
  14:11 26:17
**regardless** 24:24
**regular** 13:19
**reinvested** 24:20
**related** 27:19
**relevance** 18:25
  19:23 28:10,24
**relevant** 13:4
  17:21 18:7,24
  21:5 25:8,8,13,15
  26:2 27:18
**remember** 23:6
**renee** 4:12 9:7
**represent** 5:15,20
**request** 23:18
  25:19 26:25
**requesting** 23:16
  29:12
**requests** 15:23
  16:21,22 22:25,25

**[requests - suite]**

23:1,2,3,4,9,10,10
23:13,21,23,24
25:21 26:20 27:1
**resolved** 17:5,6
**respect** 7:7 9:6,8
10:22 13:13,14
14:1,3,25 15:2
**respective** 9:21
**respond** 24:13
27:10
**responded** 17:10
23:22
**response** 23:4
27:2,11
**responses** 16:21
17:7 24:5
**responsive** 17:10
27:12 28:4 29:11
**restate** 27:10
**restated** 23:10,13
**retained** 29:6
**reviewing** 9:2
**right** 5:7,8 6:20
7:6,18,20 8:19
11:17 12:15 14:17
16:12 18:8 21:6
21:23 22:4 27:22
27:24 29:4,13,16
**rights** 22:16
**road** 16:4 30:21
**robert** 5:18
**rockefeller** 4:5
**rollinson** 4:9 5:12
5:14 27:8,9,15,23
27:25 28:14,19
**rule** 19:5 23:5
24:25

**s**

**s** 4:1 5:1
**s&r** 4:13 8:9,21
8:24,24 9:3,6,18
11:24 17:14

**satisfactory** 12:8
**satisfied** 14:10
**satisfies** 10:22
**saying** 11:13 14:8
15:6 16:5 27:14
**says** 14:2
**scope** 23:9
**second** 5:7 16:24
26:6,6
**securities** 1:8,13
24:21
**see** 15:11 18:17,18
21:2 23:18
**seek** 7:16,24
22:19
**seeking** 10:16,17
13:17,19 15:17,20
15:25
**seen** 5:6 12:22
26:2
**sent** 20:22 23:8
**separate** 9:18
**served** 16:22 17:8
17:13 22:12 23:2
29:10
**set** 16:24
**setting** 12:21
17:16,17
**settle** 13:11
**seven** 26:1
**shapiro** 1:16 4:12
4:12,13,14,14,14
4:15 6:15,16,17
6:17 8:5,9,16 9:6
9:7,10,11,13 10:4
10:5,19 11:23
12:10 13:20,21
14:4 15:7,21 16:4
16:7,23 17:14,22
18:12 19:6 20:16
20:22 22:24 23:3
23:14 24:16,21
27:5

**shapiro's** 16:9
17:21 26:1
**short** 20:10
**show** 10:12 13:22
13:23 15:8 20:10
**side** 5:5
**sides** 28:13
**signed** 6:23 7:14
8:4 11:25
**sir** 5:8
**sit** 12:23
**six** 17:8 29:10
**small** 20:17
**smb** 1:3,4
**solutions** 30:20
**sonya** 3:25 30:3,8
**soon** 9:5
**sorry** 27:9
**sort** 14:16 27:13
**sought** 8:6,7
**sounds** 18:3 26:19
**source** 19:19
**southern** 1:2
**special** 20:18,18
**specific** 8:10
27:17 28:9
**split** 19:8,14
20:13 24:21,23
**stakeholders**
28:18
**standing** 21:16
22:5,19
**stanley** 1:16 4:12
6:17 7:2 8:5,15,18
8:21,23 9:6,10
13:20,21 16:22
20:16,21
**start** 27:18
**state** 17:25
**statements** 20:11
21:2
**states** 1:1

**staying** 8:22
**step** 13:24
**sterns** 19:7
**stipulate** 8:23
9:11,17 11:21
12:7,9 14:5,5
15:12 24:16
**stipulated** 9:25
12:7,22
**stipulating** 6:8
**stipulation** 6:6 8:5
8:6,15 9:15 10:7
10:22 11:8,10,18
11:23 12:24 24:2
**stipulations** 6:15
6:18,23 7:12,14
7:15,24 8:4 9:8
10:17,18 11:25
12:4,16 13:5,15
14:11 17:7,17
**stock** 18:9 20:8
**stocks** 20:8,10
**strategy** 19:14
20:14 24:22,24
**strict** 10:11
**strike** 19:8,14
20:13 24:21,24
**stuart** 2:22
**submit** 12:20
**submitted** 13:7
**submitting** 13:3
**subpoena** 21:16
22:9,12,20
**subpoenas** 17:3,8
17:9,12 21:8 24:6
25:4,8 29:10
**subsequent** 18:3
23:25 24:19 25:12
25:17
**succinctly** 6:4
**suggest** 28:12,15
**suite** 30:22

**[summary - york]**

| | | | |
|---|---|---|---|
| **summary** 11:20 | **torello** 4:8 5:11 | **trusts** 11:12 12:10 | 24:16 27:11 |
| **summer** 17:8 | **trace** 17:19 | 13:17 | **wire** 9:22 |
| **sums** 17:22 18:22 | **tracks** 13:6 | **try** 23:11 27:13 | **withdrawals** 6:9 |
| **supposedly** 19:13 | **trade** 20:24 | **trying** 14:16 | 18:17 24:15 |
| **sure** 7:15 16:16 | **trades** 18:14 20:9 | **two** 6:10 7:17 | **withdrawing** 19:1 |
| 17:4 28:2 | 23:16 | 10:10 11:21 14:15 | **withdrew** 17:22 |
| **t** | **transactions** 21:1 | 14:19,22 15:4,9 | 18:22 19:6,12 |
| **t** 30:1,1 | **transcribed** 3:25 | 15:12,14 17:12 | 23:9 |
| **take** 6:8 | **transcript** 30:4 | 20:5 24:1 28:13 | **word** 26:9 |
| **takes** 12:25 | **transfer** 15:3,5 | 29:10 | **words** 14:10 |
| **talking** 23:15 | 16:11,14 18:3 | **u** | 16:11 19:16 |
| **target** 6:1 | **transferee** 14:13 | **u.s.** 2:1,23 | **work** 8:25 21:24 |
| **tell** 11:1 16:17 | 14:14 15:25 16:7 | **understand** 9:16 | **worked** 18:13 |
| 28:7 | 16:10 | 10:21 12:2 16:17 | **worthwhile** 26:5 |
| **telling** 10:21 | **transferees** 11:14 | 18:25 22:7 | **write** 12:24 |
| 26:13 | 11:16 14:7 | **unfortunately** | **written** 12:17 |
| **testimony** 19:6,20 | **transfers** 7:16 8:8 | 25:18 | **wrote** 23:15 |
| 24:25 | 8:21,24 9:3,12,13 | **united** 1:1 | **x** |
| **thank** 5:8 27:25 | 9:20,23 10:10,18 | **uranium** 18:9 | **x** 1:5,11,18 |
| 29:14,17 | 10:22,23 11:6,21 | **v** | **y** |
| **that's** 22:12 | 11:23 12:10 13:22 | **v** 1:15 | **yeah** 7:21 21:14 |
| **theory** 16:6 24:20 | 13:23,25 14:18 | **veritext** 30:20 | 22:18 26:12 27:15 |
| **they're** 11:13 | 15:8,13,21 16:3 | **w** | 27:22 |
| **thing** 24:2 | 17:14,19 23:25 | **w.p.s.** 4:17 | **year** 7:17 10:10 |
| **things** 26:20 | 24:20 25:12,17 | **wachovia** 19:8 | 11:21 14:15,22 |
| 27:13 29:1 | **treasuries** 19:7,9 | **wait** 22:16 | 15:4,9,12,14 |
| **think** 6:3 7:11 8:2 | 20:1,15,16,20 | **walk** 14:16 | 20:15 24:1 |
| 8:3 9:4,5 12:13 | **trial** 18:20 | **want** 16:4 19:18 | **years** 6:10 14:19 |
| 16:2 18:23 19:15 | **true** 9:17 12:14 | 21:6 24:13,17 | **york** 1:2 2:3 4:6 |
| 19:19,23 21:4,5 | 30:4 | **wanted** 28:1 | 4:19 |
| 21:17 24:3,6,7,19 | **trust** 4:13,14,15 | **watch** 14:2 | |
| 25:15,16,19 26:5 | 4:15,16 9:11,13 | **way** 14:16 25:11 | |
| 27:20 28:3,5,9,10 | 9:18 11:1,2,14 | 29:15 | |
| 28:22 29:11,15 | 13:16 14:6,7,13 | **we've** 7:23 8:2 | |
| **third** 17:3,9 22:12 | 14:19,25 15:2,7,9 | 9:20 10:3 20:9 | |
| 22:15 | 15:14 16:11 23:25 | 23:22 25:19 | |
| **thought** 8:18 12:5 | 24:1 | **week** 8:22 9:9 | |
| **tickets** 18:10 | **trusted** 20:17 | **wells** 17:13 | |
| **time** 6:10 19:21 | **trustee** 1:12 4:4 | **went** 9:21 15:9 | |
| 26:8 | 6:14 9:10 13:21 | **we're** 29:6 | |
| **times** 20:23 | 15:7,8,21 16:1,10 | **willing** 8:23 9:16 | |
| **today** 6:14 17:12 | 16:14,15 17:12,19 | 13:24 14:5 24:4 | |
| | 23:8 | | |