**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. Nos. listed on Exhibit 1 Attached Hereto |
| DEFENDANTS LISTED ON EXHIBIT 1 ATTACHED HERETO, | |
| Defendants. | |

## TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR COURT ORDER AUTHORIZING LIMITED DISCOVERY PURSUANT TO FED. R. CIV. P. 26(d)(1)

## TABLE OF CONTENTS

**Page**

Preliminary Statement..................................................................................................................1

Argument ...................................................................................................................................4

I.  Intervening Changes in the Law Constitute "Good Cause" to Justify Various Types
of Relief, Including the Limited Discovery Sought Here ......................................................4

II.  Defendants Fail to Acknowledge the Two Intervening Changes in the Law that
Establish "Good Cause" Here ..............................................................................................6

III.  The Intervening Changes in Law Establish "Good Cause" to Grant the Trustee's
Limited Discovery Demands with Respect to "Willful Blindness"......................................9

IV.  The Fact that Rule 2004 Discovery Closed Before the District Court Changed the
Law Is Not, As Defendants Contend, a Basis for Denying the Motion............................11

V.  The Limited Discovery Demands are "Reasonable," and Are Neither Duplicative nor
Burdensome .......................................................................................................................13

Conclusion ...............................................................................................................................18

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                          <u>**Page(s)**</u>

*3M Co. v. HSBC Bank USA, N.A.*,
    No. 16 Civ. 5984 (PGG), 2016 WL 8813992 (S.D.N.Y. Oct. 20, 2016)..................................6

*Ayyash v. Bank Al-Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) .........................................................................9, 10, 16

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007).............................................................................................5

*In re Bennett Funding Grp., Inc.*,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) .............................................................................11

*Convolve, Inc. v. Compaq Comput. Corp.*,
    No. 00 Civ. 5141 (GBD)(JCF), 2007 WL 4205868 (S.D.N.Y. Nov. 26, 2007) ......................5

*Darney v. Dragon Prod. Co., LLC*,
    266 F.R.D. 23 (D. Me. 2010)........................................................................................5, 6

*Deloitte & Touche v. Hassett (In re CIS Corp.)*,
    123 B.R. 488, 490-91 (S.D.N.Y. 1991) ..........................................................................12

*Dig. Sin, Inc. v. Does 1-179*,
    No. 11 Civ. 8172(PAE), 2012 WL 8282825 (S.D.N.Y. Feb. 1, 2012) ....................................9

*Every Penny Counts, Inc. v. Bank of Am. Corp.*,
    No. 2:07-cv-42-FtM-29SPC, 2009 WL 10670455 (M.D. Fla. Feb. 20, 2009) ....................4, 5

*In re Gawker Media LLC*,
    No. 16-11700 (SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ........................11

*In re GHR Energy Corp.*,
    35 B.R. 534, 536-38 (Bankr. D. Mass. 1983) ..................................................................12

*Gordon Partners v. Blumenthal (In re NTL, Inc. Secs. Litig.)*,
    244 F.R.D. 179 (S.D.N.Y. 2007) ....................................................................................16

*Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011)...............................................................................8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016)....................................................................................................5

*Luke v. CPlace Forest Park SNF, L.L.C.*,
    608 F. App'x 246 (5th Cir. 2015) ....................................................................................4

# TABLE OF AUTHORITIES

*(continued)*

<u>**Cases**</u>                                                                                                <u>**Page(s)**</u>

*In re Madison Williams & Co.*,
   No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ...........................................12

*In re Metro Affiliates, Inc.*,
   No. 02-42560 (PCB), 2008 WL 4057139 (Bankr. S.D.N.Y. Aug. 26, 2008).........................13

*Motorola Credit Corp. v. Uzan*,
   132 F. Supp. 3d 518 (S.D.N.Y. 2015).....................................................................................6

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982) ..............................................................................................9

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
   271 F.R.D. 429 (S.D.N.Y. 2010) ...........................................................................................16

*Oxaal v. Internet Pictures Corp.*,
   No. 00 CV 1864 (LEK)(DRH), 2002 WL 485704 (N.D.N.Y. Mar. 27, 2002) .................5, 10

*Pearson Educ., Inc. v. Doe*,
   12 Civ. 4786 (BSJ)(KNF), 2012 WL 4832816, (S.D.N.Y. Oct. 1, 2012) ..............................16

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No. 10-5345 (Bankr. S.D.N.Y. July 26. 2011) ........................................................................7

*Picard v. Katz (In re Bernard L. Madoff Inv. Sec. LLC)*,
   462 B.R. 447 (S.D.N.Y. 2011)................................................................................................2

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No. 09-01182 (SMB), 2014 WL 3908211 (Bankr. S.D.N.Y. Aug. 12, 2014)................8, 9, 15

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ...........................................................................................4, 6

*Sahu v. Union Carbide Corp.*,
   No. 07 Civ. 2156 (JFK), 2014 WL 3765556 (S.D.N.Y. July 30, 2014) ...................................9

*In re Seagate Tech. LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)...............................................................................................5

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014)...................................2

# TABLE OF AUTHORITIES
*(continued)*

**Cases**                                                                      **Page(s)**

*St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*,
275 F.R.D. 236 (S.D. Tex. 2011) ........................................................................9, 10

*In re SunEdison, Inc.*,
562 B.R. 243 (Bankr. S.D.N.Y. 2017) ......................................................................12

*United States v. Tenzer*,
213 F.3d 34 (2d Cir. 2000) ........................................................................................6

*In re Vanderveer Estates Holding, LLC*,
328 B.R. 18 (Bankr. E.D.N.Y. 2005) .......................................................................13

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ..............................................................................16

*Zubulake v. UBS Warburg LLC*,
229 F.R.D. 422 (S.D.N.Y. 2004) ..............................................................................16

**Statutes**

11 U.S.C. § 548(a)(1)(A) ...................................................................................................8

11 U.S.C. § 548(c) .............................................................................................................7

11 U.S.C. § 550 .................................................................................................................8

15 U.S.C. §§ 78aaa, *et seq.* ...............................................................................................1

**Rules**

Fed. R. Bankr. P. 2004 ............................................................................................ *passim*

Fed. R. Bankr. P. 7026 ......................................................................................................1

Fed. R. Civ. P. 26(d) .............................................................................................. *passim*

Fed. R. Civ. P. 26-37 .......................................................................................................12

Fed. R. Civ. P. 56(f) ........................................................................................................13

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his motion seeking an order pursuant to Federal Rule of Civil Procedure 26(d) made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026, directing Defendants identified in Attachment 1 hereto to comply with the Proposed Limited Document Discovery Demands attached as Exhibit D to the Griffin Declaration[1] dated August 28, 2014, ECF No. 7828.

## Preliminary Statement

Contrary to Defendants' arguments, the limited discovery sought by the Trustee pursuant to Federal Rule of Bankruptcy Procedure 26(d) is not extraordinary relief.  What is extraordinary is the paradox the Trustee faces here, whereby he must meet a pleading burden imposed on him only after his Rule 2004 discovery rights had closed.

When the Trustee filed these lawsuits, it was well-established law that a defendant's "good faith" was an affirmative defense that could not be disposed of at the pleading stage, but rather was an issue that could only be adjudicated <u>after</u> the parties have completed discovery, at either the summary judgment stage or trial.  As such, motions to dismiss based on an affirmative good faith defense would be routinely denied at the pleading stage, and the Trustee would take

---

[1] Capitalized terms not defined herein have the meaning as set forth in the Trustee's Memorandum of Law in Support of Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1), ECF No. 7827 ("Trustee's Mem.").

fulsome discovery with respect to the defense in the normal course of adversary proceedings pursuant to the Federal Rules of Bankruptcy Procedure.

But the District Court's April 2014 decision ("Good Faith Decision") shifted the pleading burden of the affirmative good faith defense from the Defendants to the Trustee in SIPA liquidations, and thus had the effect of *reversing* the sequence that the courts – including this Court – had previously directed that discovery and resolution of the good faith defense were to take place.[2]  From April 2014 going forward, a SIPA trustee will now take Rule 2004 discovery of a subsequent transferee defendant's good faith defense before filing a complaint in order to best meet the new pleading burden.  Coupled with the District Court's September 2011 decision in *Picard v. Katz*, the Good Faith Decision also now means that the Trustee's pleadings must satisfy the new and heightened standard of subjective "willful blindness" set down by the District Court, rather than the standard of objective "inquiry notice" that previously had governed, thus requiring different types of information.[3]

In their opposition to the Trustee's request for relief pursuant to Rule 26(d), Defendants refuse to acknowledge that there has been any change in the law with regard to the good faith defense, barely referencing the District Court's decisions.  Defendants downplay the importance of the District Court's decisions because acknowledging its full impact would be tantamount under governing precedent to an acknowledgement that "good cause" exists for the relief requested.

Regardless, the question as to whether there has been a substantial, intervening change in the law has been answered by a decision of this Court, which expressly recognizes that the

---

[2] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 Misc. 115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014).

[3] *Id.; Picard v. Katz (In re Bernard L. Madoff Inv. Sec. LLC)*, 462 B.R. 447 (S.D.N.Y. 2011).

District Court's decisions created substantial breaks from the law which previously governed the good faith affirmative defense.

Any suggestion by Defendants that the Trustee was dilatory in requesting the limited discovery relief sought is also baseless. The Trustee promptly filed the motion for the instant relief within a very short time of the District Court's final decision on pending motions to withdraw the reference in April and July 2014. The need for relief came about at that time only because the District Court's Good Faith Decision was issued years after these actions were commenced, when this SIPA Trustee no longer had the right to pursue Rule 2004 pre-complaint discovery with respect to the Defendants' good faith defense.

Defendants' brief also confuses and misstates the standards that govern this motion. The Trustee does not, as Defendants contend, need to meet heightened standards required for "extraordinary" relief, such as preliminary injunctions. *See* Defendants' Consolidated Memorandum of Law in Opposition to Trustee's Motion for Discovery on the Good Faith Issue, ECF No. 16724 at 15, 17 ("Defs.' Opp. Mem."). To the contrary, as Defendants in other places acknowledge, the Trustee need only establish "good cause" and "reasonableness," a standard which the courts routinely find is satisfied by intervening changes in the law. Defs.' Opp. Mem. at 15.

Despite Defendants' arguments to the contrary, the limited discovery sought by the Trustee is "reasonable" under all of the circumstances set forth herein. The discovery being sought is for a certain limited set of Defendants' own documents, directly related to the good faith issue and which Defendants were always under an obligation to preserve. The relief sought is neither burdensome nor duplicative as portrayed by Defendants.

## ARGUMENT

I.    **Intervening Changes in the Law Constitute "Good Cause" to Justify Various Types of Relief, Including the Limited Discovery Sought Here**

Defendants refuse to concede that that there has been an intervening change in the law because to do so would acknowledge that "good cause" exists for the Trustee's motion.

Courts recognize that intervening changes in the law pose such a significant change in circumstance that they merit the reopening of discovery and/or granting of additional discovery relevant to the new legal standards – even after discovery deadlines may have long since passed. For example, during the pendency of an appeal in *Playboy Enters., Inc. v. Netscape Commc'ns Corp.,* the Supreme Court issued a decision that clarified the standard for withstanding summary judgment on trademark dilution claims.  354 F.3d 1020, 1033 (9th Cir. 2004).  Noting that the decision abrogated the Ninth Circuit's precedent, the appellate court vacated the district court's grant of summary judgment to defendant on plaintiff's trademark dilution claim and remanded to the district court "with instructions to re-open discovery to allow the parties to introduce evidence that may satisfy, or undermine, the new standard."  *Id.*

Likewise, after the Supreme Court set forth a new standard for Title VII claims during the pendency of a Fifth Circuit appeal, the court in *Luke v. CPlace Forest Park SNF, L.L.C.* vacated summary judgment and directed the district court on remand to decide "whether, and to what extent, additional discovery is appropriate."[4]  608 F. App'x 246 (5th Cir. 2015).

In *Every Penny Counts, Inc. v. Bank of Am. Corp.*, the district court reopened discovery and permitted the parties to take limited discovery in light of an intervening decision by the

---

[4] The court there noted that "[g]iven this intervening change in the law, we conclude that the parties here must be afforded an opportunity to present their claims and defenses in light of [the new legal standards], and the district court should decide the matter under current law in the first instance."  *Luke,* 608 F. App'x at 246.

United States Court of Appeals for the Federal Circuit that changed the legal requirements for patentability. No. 2:07-cv-42-FtM-29SPC, 2009 WL 10670455, at *1 (M.D. Fla. Feb. 20, 2009).

The decision in *In re Seagate Tech. LLC* is particularly notable in that the Federal Circuit directed the district court to reconsider its prior discovery orders after issuing a decision setting forth a new "state of mind" legal standard necessary to establish whether a party's patent infringement was "willful". 497 F.3d 1360, 1376 (Fed. Cir. 2007) (new standard abrogated by *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)); *see also Convolve, Inc. v. Compaq Comput. Corp.*, No. 00 Civ. 5141 (GBD)(JCF), 2007 WL 4205868, at *4 (S.D.N.Y. Nov. 26, 2007) (on remand from *Seagate*, district court reconsidered discovery orders that were actually outside of the scope of the Federal Circuit's express determination, noting it was "prudent to analyze the impact of [the appellate decision's new legal standards] on the discovery [plaintiff] seeks," and expressly noting that the court's prior discovery orders "may be reviewed on the basis of an intervening change in the law").

In other settings, such as motions seeking leave to amend pleadings after court-ordered deadlines had already passed, courts similarly find that intervening changes in the law constitute "good cause." *See, e.g.*, *Oxaal v. Internet Pictures Corp.*, No. 00 CV 1864 (LEK)(DRH), 2002 WL 485704 (N.D.N.Y. Mar. 27, 2002) (court granted defendant leave to file an amended answer after deadline, holding that "[e]vents occurring after the entry of a scheduling order which were reasonably unforeseeable may suffice to establish good cause," and concluding that a significant change in the law established the requisite good cause); *Darney v. Dragon Prod. Co., LLC*, 266 F.R.D. 23, 26 (D. Me. 2010) (granting motion to amend for good cause where intervening change in law governing strict liability standards occurred after deadlines for amendments and discovery had passed).

5

In fact, courts routinely find intervening changes in the law sufficiently compelling so as to meet even the "strict" standards required for granting motions for reconsideration.  *See, e.g., United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000) (noting Court of Appeals "must usually adhere to its own decision at an earlier stage of the litigation" and "will not depart from this sound policy absent 'cogent' or 'compelling' reasons," such as "an intervening change of controlling law"); *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 520 (S.D.N.Y. 2015) (granting motion for reconsideration with respect to court's previous order compelling third party banks to comply with discovery demands, and describing standard for reconsideration as "strict" but "justified where there is 'an intervening change of controlling law'") (internal citations omitted).

In short, an intervening change in the law is sufficient to satisfy not only the "good cause" standard required of the Trustee on this motion, but much higher standards as well.

## II.    Defendants Fail to Acknowledge the Two Intervening Changes in the Law that Establish "Good Cause" Here

The preceding cases implicitly recognize that where there are intervening changes in the law, fundamental fairness should permit the parties to seek relief from the court.  *See supra* Section I; *see also Darney*, 266 F.R.D. at 26 (court noting "it seems *fundamentally just*" to grant a party relief after a change in the law) [emphasis added].  That is all the Trustee is seeking on this motion – limited discovery in order to address the new legal standards imposed by the District Court.  *See Playboy Enters.,* 354 F.3d at 1033 (instructing district court to re-open discovery so that the parties could address the new standard).

Defendants attempt to deny the full impact of the District Court's decisions on good faith, but the history of those decisions themselves, as well as a decision of this Court applying them,

6

establish there have been two substantial intervening changes in the law with respect to the good faith affirmative defense.

As noted in the Trustee's moving brief, the first change in the law to the good faith affirmative defense was made by the District Court in its September 2011 decision, where it altered the legal standard governing the 548(c) defense in this SIPA liquidation proceeding from objective inquiry notice to subjective willful blindness. *See* Trustee's Mem. at 10-12.[5] For several years after that 2011 decision, the District Court continued to reaffirm, consistent with prior law, that a defendant's good faith remained an affirmative defense that the defendants had the burden of pleading. *Id.* at 11-12. The second change in the law occurred in April 2014, when the District Court reversed its own prior decisions and held for the first time that in a SIPA liquidation, the Trustee would have the initial pleading burden with respect to the good faith defense. *Id.* at 12-13.

As to the pleading burden, Defendants make the disingenuous argument that the effect of the Good Faith Decision was to "clarify" existing law as to the Trustee's pleading burden, citing a smattering of cases from other districts in support of their argument. Defs.' Opp. Mem. at 10. Defendants ignore that, as set forth in the Trustee's moving brief, before these cases were commenced, the law was well-established (both in this district and in the BLMIS case in

---

[5] Contemporaneous papers filed in mid-July 2011 by Citibank N.A., Citicorp North America, Inc. and Citigroup Global Markets Ltd. acknowledged that, at the time, the standard applicable to the good faith defense was the inquiry notice standard. *See* Citibank Defs.' Mem. Supp. Mot. to Dismiss Trustee's Compl. at 27, *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 10-5345 (Bankr. S.D.N.Y. July 26, 2011), ECF No. 21 ("[T]he Trustee must allege that, at the time the Citi Defendants received the transfers, they knew information that put them on notice that BLMIS was either insolvent or had a fraudulent purpose in making a specific transfer, and that having received such notice the Citi Defendants failed to conduct a reasonable investigation") (citing *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 22-23 (S.D.N.Y. 2007)).

particular) that good faith was an affirmative defense to be pled by the defendants, and was not

an element of a trustee's claim under Section 548(a)(1)(A) or section 550 of the Bankruptcy

Code.  *See generally* Trustee's Mem. at 8-13.  As such, this Court (and others) refused to

consider a defendant's good faith affirmative defense on a motion to dismiss, and would do so

only after the parties had completed discovery with respect to the affirmative defense.[6]

Defendants also attempt to characterize the change in legal standard from objective to

subjective willful blindness as inconsequential, because the good faith of the Defendants was

always going to be at issue.  Defs.' Opp. Mem. at 17-18.  Defendants' argument sidesteps the

fact that the different standards necessarily require very different types of information – the

former standard speaks to what persons similar to the Defendants "should have known," while

the new standard speaks to each Defendant's particular knowledge, beliefs and actions.   As a

result, when coupled with the change in pleading burden, as of April 2014, the Trustee was for

the first time tasked with pleading a Defendant's lack of good faith at the complaint stage under

a new subjective standard requiring different types of information.

Any doubt as to whether the District Court changed the law with respect to the good faith

defense was set to rest by this Court in *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec.

LLC)*:

> Ordinarily, the transferee bears the burden of proving the defense, and an
> objective, reasonable investor standard applies.  In the case of BLMIS, however,
> the District Court has modified the good faith defense in two ways.  First, the
> Trustee must plead and prove the transferee's lack of good faith.  Second, the
> 'good faith' standard is subjective rather than objective . . . .

---

[6] Trustee's Mem. at 3-13; *Gowan v. The Patriot Grp., LLC (In re Dreier LLP),* 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.  It is simply not the Trustee's burden at this stage of the case to counter the Defendants' declaration of good faith").

No. 09-01182 (SMB), 2014 WL 3908211, at *12 (Bankr. S.D.N.Y. Aug. 12, 2014) (internal

citations omitted).

### III.    The Intervening Changes in Law Establish "Good Cause" to Grant the Trustee's Limited Discovery Demands with Respect to "Willful Blindness"

In light of the intervening changes in law discussed above, "good cause" exists to grant

the Trustee's limited discovery demands pursuant to Rule 26(d).

As a preliminary matter, Defendants' arguments concerning the standard which governs

"good cause" on this motion pursuant to Rule 26(d) are at best confusing, and at worst, wrong.

On the one hand, Defendants acknowledge that the standard is "reasonableness and good

cause,"[7] and cite to the leading case of *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y.

2005). But then later, Defendants suggest that *Notaro v. Koch*, governs here, and that under that

precedent, in order to establish "good cause," the Trustee is required to satisfy the standards

required for the extraordinary relief of a preliminary injunction – including likelihood of success

on the merits and irreparable harm. Defs.' Opp. Mem. at 14 (citing *Notaro v. Koch*, 95 F.R.D.

403 (S.D.N.Y. 1982)). Defendants' assertion is contrary to the leading case of *Ayyash*, and the

subsequent decisions in this district and others, which favor the "flexible standard of

reasonableness and good cause."[8]

---

[7] Defs.' Opp. Mem. at 15-16 (citing *Ayyash*, 233 F.R.D. at 327) ("noting court should examine the discovery request [] on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances").

[8] *See e.g. Sahu v. Union Carbide Corp.*, No. 07 Civ. 2156 (JFK), 2014 WL 3765556, at *5 (S.D.N.Y. July 30, 2014) ("courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard); *Dig. Sin, Inc. v. Does 1-179*, No. 11 Civ. 8172 (PAE), 2012 WL 8282825, at *3 (S.D.N.Y. Feb. 1, 2012) ("Courts in this district have applied a "flexible standard of reasonableness and good cause" in determining whether to grant a party's expedited discovery request."); *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (the court evaluated and explicitly declined to follow the *Notaro* analysis in favor of

9

Defendants also incorrectly assert there is a rigid test of factors which governs the determination of "good cause," a test which Defendants suggest requires, among other things, a preliminary injunction to be pending before relief can be granted under Rule 26(d).  Defs' Opp. Mem. at 17.  Defendants' argument is contrary to the *Ayyash* decision, which describes the flexible and discretionary nature of the relief under Rule 26(d).  *Ayyash*, 233 F.R.D. at 326 ("As the Rules permit the Court to act by order, but do not elaborate on the basis for taking action, it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, *rather than impose a specific and rather stringent test*") [emphasis added].

The case law set forth in Section I above with respect to intervening changes in law compels the conclusion that the flexible *Ayyash* standards of "good cause" are met here.  Specifically, "good cause" exists to grant the relief requested here because:  (i) there has been a "significant change in the law," and in fact a reversal of prior decisions of this Court with respect to the good faith defense in this liquidation proceeding; (ii) it was reasonable for the Trustee to have acted on the basis of the then-existing law when it came to the pleadings he filed as well as his utilization of Rule 2004 powers in 2008 to 2010; (iii) and upon learning of the changes in the law, the Trustee acted promptly to seek the requested relief in more than 90 cases.[9]  *See Oxaal,* 2002 WL 485704, at *2.

---

following *Ayyash*, noting that the "increasing majority of district courts have instead adopted a 'good cause' standard").

[9] The instant motion for limited discovery pursuant to Rule 26(d) was part of a larger motion filed in 100 cases in August 2014, wherein the Trustee also sought leave to amend his complaints to satisfy the new pleading standards set forth in both the Good Faith Decision in April 2014 and also the Extraterritoriality Decision issued in July 2014.  At a hearing before the Court in September 2014, Defendants requested permission to file motions to dismiss with respect to the Extraterritoriality Issue before having to brief this motion.  The Court directed the parties to meet to work out the briefing procedures, and ultimately this Court entered an Order directing that the Extraterritoriality Issue would be briefed and decided by the Court before the current motion would be briefed by the parties.  *See* Order Concerning Further Proceedings On

IV.    **The Fact that Rule 2004 Discovery Closed Before the District Court Changed the Law Is Not, As Defendants Contend, a Basis for Denying the Motion**

Defendants argue that because the Trustee had the ability under Rule 2004 to pursue discovery from Defendants, the limited discovery the Trustee seeks on this motion is an impermissible "second bite" at the apple.  Defs.' Opp. Mem. at 2.  But this argument ignores all of the precedent set forth above in which the courts have recognized the reasonableness, prudence and fairness of granting various types of relief, including reopening and/or reexamining the scope of discovery obtainable in light of new legal standards promulgated during the pendency of the case.  Regardless of whether the Trustee's initial discovery was taken pursuant to Rule 2004 or under the Federal Rules of Civil Procedure, it does not alter the fact that an intervening change in law warrants the limited relief sought by the Trustee.

Moreover, Defendants' argument ignores that the District Court changed the laws after the Rule 2004 period closed.  The relief sought here merely remedies the paradox this particular Trustee is in as a result of the timing of the District Court's decisions.

As this Court is well aware, Rule 2004 is a practical tool for bankruptcy trustees – who are strangers to the debtor's transactions – to "reveal[] the nature and extent of the estate" so they can quickly and efficiently identify whether there are sufficient facts to state a litigation claim.[10] But there are also limits to Rule 2004 examinations.  In determining whether "good cause" exists for Rule 2004 discovery, courts "weigh the relevance of the discovery against the burden it will

---

Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and For Limited Discovery dated December 10, 2014, ECF 8698.

[10] *In re Bennett Funding Grp., Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *see also In re Gawker Media LLC,* No. 16-11700 (SMB), 2017 WL 2804870, at *6 (Bankr. S.D.N.Y. June 28, 2017) ("The purpose of Rule 2004 is to allow the debtor to acquire information it lacks" [regarding whether there is a reasonable basis to bring a potential cause of action]").

impose on the producing party."[11]   Moreover, where a trustee has sufficient information to state a litigation claim and commence an adversary proceeding, further discovery under Rule 2004 may be considered inappropriate.[12]

The Trustee conducted his Rule 2004 discovery, including whether or not to pursue relief from improper objections or non-responsive productions consistent with these guidelines, and most importantly, in light of the state of the law as it then-existed.  Having determined he had valid claims against the Defendants, the Trustee did not need to press the parties for further Rule 2004 discovery.[13]

Defendants' argument that the Trustee did not fully exercise his Rule 2004 discovery rights years ago totally misses this fundamental point.  The two cases Defendants cite only highlight the uniqueness of the Trustee's situation and merely stand for the unremarkable proposition that a party who has failed to take available discovery, whether under Rule 2004 or

---

[11] *In re Madison Williams & Co.*, No. 11-15896, 2014 WL 56070, at *4 (Bankr. S.D.N.Y. Jan. 7, 2014); *see also In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (observing that a court must balance the competing interests of the affected parties in evaluating a request for Rule 2004 discovery).

[12] *See Deloitte & Touche v. Hasset (In re CIS Corp.)*, 123 B.R. 488, 490-91 (S.D.N.Y. 1991) (rejecting trustee's motion to compel Rule 2004 disclosure of internal auditing manuals, because he had sufficient information about the audit itself and could refer to AICPA standards to evaluate potential claims against accounting firm); *In re GHR Energy Corp.*, 35 B.R. 534, 536-38 (Bankr. D. Mass. 1983) (denying debtors' Rule 2004 application, noting that they were already "in a position to file an action against certain of the individuals and entities if they so cho[]se").

[13] If the Trustee had pursued further Rule 2004 discovery as to the merits of Defendants' affirmative defense of good faith at that time, the Trustee would have been open to objections by the Defendants that he was exceeding the scope of appropriate Rule 2004 discovery.  Indeed, many of the cases cited by Defendants note that a Trustee cannot abuse the Rule 2004 limits because Rule 2004 discovery does not afford the targets of such discovery with the same rights and protections as Rules 26-37 of the Federal Rules of Civil Procedure.

the Federal Rules, cannot utilize Rule 56(f) to belatedly seek discovery to resist a summary

judgment motion.[14]  Neither of these two cases involved an intervening change in law affecting a

party after the Rule 2004 process had concluded.  The importance of this distinction cannot be

overstated, because a change in the law has been found to be justification for parties to reopen

discovery even after a summary judgment motion has been decided, where an appellate court

ruling has overturned existing precedent.

V.      **The Limited Discovery Demands are "Reasonable," and Are Neither Duplicative
        nor Burdensome**

        Defendants' "second bite" at the apple argument also has no merit because there is

nothing "secondary" or duplicative about the limited discovery requests sought by the Trustee on

this motion.

        In an attempt to obfuscate the need for the limited discovery requested by the Trustee, the

Defendants cite to the Trustee's interim reports indicating the Trustee reviewed "tens of millions

of documents … which should have encompassed documents reflecting interactions with the

[subsequent transferee] Defendants."  Defs' Opp. Mem. at 13.  Defendants' argument fails to

take into account that: (1) the vast majority of the records noted in the Trustee's report were

internal BLMIS records, including purported account statements and "trade confirmations"; (2)

another larger part of the documents reviewed and analyzed by the Trustee were records

produced by initial transferees, including both good faith defendants and bad faith feeder funds;

and (3) the documents requested by the Trustee in this motion will not be duplicative of those

previously produced by Defendants.

---

[14] *See* Defs.' Opp. Mem. at 9 (citing *In re Metro Affiliates, Inc.*, No. 02-42560 (PCB), 2008 WL
4057139, at *9 (Bankr. S.D.N.Y. Aug. 26, 2008) and *In re Vanderveer Estates Holding, LLC*,
328 B.R. 18, 29 (Bankr. E.D.N.Y. 2005)).

It is important to further note that, while the Trustee did obtain documents from the initial transferee feeder funds that in some cases involved the subsequent transferee Defendants, when it comes to Defendants' subjective good faith, the feeder fund documents are no substitute for the Defendants' own documents bearing on their subjective state of mind.

And Defendants themselves – who are the best source of information pertaining to what they knew about BLMIS and what actions they took, or did not take, based on that knowledge – have produced no, or very few non-public documents, that are directly relevant to the standard of their subjective willful blindness.

Defendants acknowledge and admit that at least 13 of the Defendants have not produced any documents in connection with the Trustee's Rule 2004 investigation. *See* Defs.' Opp. Mem. at 5.

For those Defendants who did respond to the Trustee's Rule 2004 requests, the Defendants' brief overstates the extent and value of those productions. Those productions were very limited, (i) often restricted just to the documents of the U.S. Defendants, with no documents produced from their affiliated non-U.S. Defendants;[15] (ii) contained mostly public "deal" documents; (iii) often contained no, or very few, internal communications or assessments of the Defendants' BLMIS-related investments; and (iv) omitted documents that were expressly referenced in the produced

---

[15] ABN Amro Bank (Ireland) Ltd. and ABN Amro Custodial Services (Ireland), Ltd. (collectively, "Fortis") separately make the misleading argument that because the Trustee alleged the Fortis entities acted as one "entity" in regards to their BLMIS investments, the limited production of documents by their U.S. affiliate should satisfy the Trustee's need for discovery to meet the good faith pleading burden. Fortis Supp. Mem. Opp. at 11. Importantly, however, Fortis never claims its U.S. affiliate produced the documents in the possession of other Fortis entities, nor does Fortis represent that the production constitutes all of the requested documents held by all Fortis entities. As such, Fortis' claims that all of its affiliates have already produced all documents should be rejected.

14

documents.  *See* Decl. of Regina Griffin, dated Nov. 20, 2017 and Decl. of Howard L. Simon dated

Nov. 20, 2017.

To the extent Defendants assert that the relief sought is not reasonable because

complying with the Trustee's four document requests would be "overly burdensome," that

argument is also without merit.  The Trustee affirmatively sought to limit any "burden" to

Defendants by narrowly tailoring his limited discovery demands to elicit information relevant to

the new subjective "willful blindness" standard, which this Court recognized requires the Trustee

to plead that the Defendants: (1) subjectively believed there was a high probability of fraud at

BLMIS; [16] and (2) took deliberate actions to avoid learning of that fact.[17]  *See Merkin*, 2014 WL

3908211, at *13.  Also, contrary to Defendants' argument, the Trustee's limited document

requests cannot be equated with the broad discovery permitted under Rule 2004.[18]

Moreover, Defendants' "burden" argument omits any discussion of whether they have

properly instituted litigation holds and complied with their duty to conduct a reasonable search as

---

[16] For example, the Trustee's first request and third requests seeks documents about what the Defendants knew about BLMIS.  *See* Trustee's Mem. at 25 ("[D]ocuments concerning the review, analysis, due diligence, evaluation and ongoing monitoring of actual or prospective investments and transactions relating to BLMIS, Feeder Funds, or BLMIS-Related Investment Products" … and "[D]ocuments concerning fraud, Ponzi, illegality, front-running, investigations, insolvency, or embezzlement relating to BLMIS, Feeder Funds, or BLMIS-Related Investment Products").

[17] The Trustee's second request seeks documents concerning the Defendants' decisions to engage in BLIMS-related investments or transactions ("[D]ocuments concerning Defendants' decision whether to participate in any investments or transactions relating to BLMIS, Feeder Funds, or BLMIS-Related Investment Products"), and the fourth request seeks documents regarding the various ways the Defendants generated revenues from their BLMIS related transactions and may bear on motivations to avoid learning facts about BLMIS.  *Id.*

[18] Cognizant of the pending proceeding rule, the Trustee is not seeking to reopen the broad, "fishing expeditions" permitted under Rule 2004.  Rather, he is requesting limited relief pursuant to the Federal Rules of Civil Procedure, and Defendants will have all of the protections afforded thereunder.

15

soon as it was foreseeable that a lawsuit may be filed.  Here, that duty arguably arose in

December 2008 in the immediate aftermath of Madoff's confession, but at the very latest by the

time the Trustee filed his complaints.  Once the duty arose, the Defendants were required to

identify and preserve all relevant information, including "information that is relevant to the

claims or defenses of *any* party, or which is relevant to the subject matter involved in the

action."[19]  In fact, Fortis affirmatively acknowledges that it stored documents in response to the

BLMIS litigation.  Fortis' Supp. Opp. Mem. at 12, ECF No. 16732.  Accordingly, for Fortis and

each of the other Defendants, compliance with the Trustee's limited requests should only entail

the cost of physically producing the previously gathered documents.

Defendants also argue that the Trustee is seeking discovery which would "substantially

advance the merits of his claims" and that such requests are therefore "unduly broad".  *See* Defs.'

Opp. Mem. at 20.  However, there is no bright line rule prohibiting expedited discovery under

Rule 26(d) simply because the information sought may bear on the merits.  As discussed above

and in the Trustee's moving brief, the courts have wide discretion to grant relief under Rule

26(d)(1) where, as here, the Trustee has shown good cause.  *See Ayyash*, 233 F.R.D. at 326.

In determining whether the scope of discovery sought pursuant to Rule 26(d) is

reasonable, courts are guided by the justifications offered in support of the requests,[20] and where

---

[19] *Gordon Partners, et al. v. Blumenthal, et al. (In re NTL, Inc. Secs. Litig.)*, 244 F.R.D. 179, 194
(S.D.N.Y. 2007) (emphasis in original) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D.
212, 218 (S.D.N.Y. 2003)); *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D.
429, 437 (S.D.N.Y. 2010) ("a party and its counsel must make certain that all sources of
potentially relevant information are identified and placed on hold") (quoting *Zubulake v. UBS
Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)).

[20] *See Pearson Educ., Inc. v. Doe*, 12 Civ. 4786 (BSJ)(KNF), 2012 WL 4832816, at *2-3
(S.D.N.Y. Oct. 1, 2012) ("[D]ecisions whether to grant or deny leave for early discovery depend
on the specific justifications offered in support of the application." (quoting 8A Charles Alan

good cause exists for the discovery sought, regardless of whether it has a bearing on the merits, courts have granted such discovery. *See, e.g.*, *3M Co. v. HSBC Bank USA, N.A.*, No. 16 Civ. 5984 (PGG), 2016 WL 8813992, at *1-2 (S.D.N.Y. Oct. 20, 2016) (in dispute over whether a demand to pay on a letter of credit was fraudulent, the court ordered expedited discovery on topics bearing on the merits, "including explanations or reasons as to the right or lack thereof to demand such payment").[21]

As set forth above, even if the limited discovery sought by the Trustee in order to comply with the Good Faith Decision has some bearing on the merits of the Trustee's claims, the Trustee has demonstrated "good cause" for that relief in light of: (i) the intervening change in the law, and (ii) the unique circumstances here, where Rule 2004 expressly gave the Trustee the right to take pre-complaint discovery for the very <u>purpose</u> of gathering information about the merits of claims against parties.

Defendants also contend that factors such as the administration of justice are in their favor. Those factors are addressed in the Trustee's main brief, and in any event, the Trustee submits that in this situation, the change in intervening law is the most compelling factor and it warrants the relief sought herein.

---

Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2046.1 (3d ed. 2010)).

[21] *Attkisson v. Holder* and *Guttenberg v. Emery*, cited by Defendants, do not support a bright line prohibition as to discovery on the merits, but rather were decided on the particular facts of those cases, where the requests for information as to the merits were unrelated to the justification provided for such discovery (such as for instance the proper identity of certain defendants). *See* Defs.' Opp. Mem. at 20 (citing *Attkisson*, 113 F. Supp. 3d 156 (D.D.C. 2015) and *Guttenberg*, 26 F. Supp. 3d 88 (D.D.C. 2014)).

## Conclusion

For the foregoing reasons, the Trustee respectfully requests that the Court grant the

Trustee's request for an order directing the Defendants to produce the limited discovery sought

in Exhibit D to the Griffin Declaration dated August 28, 2014, and any and all other relief the

Court deems just and proper.

Dated: November 20, 2017
      New York, New York

/s/ Regina Griffin
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Regina Griffin
Thomas L. Long
Matthew D. Feil
Camille C. Bent

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and estate of Bernard L.
Madoff*