**MILBERG LLP**
Matthew A. Kupillas
One Pennsylvania Plaza
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Attorneys for Aspen Fine Arts Co.*
*and Melvin W. Knyper*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04335 (SMB) |
| Plaintiff, | |
| v. | |
| ASPEN FINE ARTS CO., | |
| Defendant. | |

**DEFENDANT ASPEN FINE ARTS CO. AND PROPOSED DEFENDANT**
**MELVIN W. KNYPER'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**TRUSTEE'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**
**AND FOR RELATED RELIEF**

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................................... 1

II.    FACTS ........................................................................................................................... 3

     A.     The Original Complaint Does Not Name Mr. Knyper as a Defendant.................. 3

     B.     The Amended Complaint Named Mr. Knyper as a Subsequent Transferee and
         as an Initial Transferee, But All Claims Against Mr. Knyper Were Dismissed..... 4

     C.     The Relevant Subsequent Procedural History of the Case ..................................... 6

III.   LEAVE TO AMEND SHOULD NOT BE GRANTED BECAUSE AMENDMENT
      WOULD BE FUTILE....................................................................................................... 7

     A.     Amendment Is Futile Because the Trustee's New Claims Are Time-Barred......... 8

         1.     The Trustee's New Claims Do Not Relate Back Under Rule
            15(c)(1)(B) ................................................................................................. 9

         2.     Relation Back is Inappropriate Under Rule 15(c)(1)(C).......................... 13

     B.     Amendment is Futile Because the Trustee's "For the Benefit" Allegations
         Must Be Dismissed .............................................................................................. 16

     C.     Amendment is Futile Because the Trustee Has Not Adequately Alleged the
         Elements of a Veil-Piercing Claim Under Colorado Law ..................................... 19

IV.    CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, L.L.C. v. American Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012).................................................................................................8

*Ansarco LLC v. Goodwin*,
    756 F.3d 191 (2d Cir. 2014)................................................................................................12

*Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.)*,
    275 B.R. 357 (Bankr. D. Ariz. 2002).................................................................................13

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) .......................................................................................17, 18

*Breeden v. Cowen & Co. (In re Bennett Funding Group)*,
    275 B.R. 447 (Bankr. N.D.N.Y. 2001) ................................................................................9

*Capmark Fin. Group Inc. v. Goldman Sachs Credit L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013)............................................................................................19

*Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine,
    Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir. 1997).............................................................................................14, 17

*CIT Group/Factoring Mfrs. Hanover, Inc. v. Srour (In re Srour)*,
    138 B.R. 413 (Bankr. S.D.N.Y. 1992) ................................................................................10

*Contractors Heating and Supply Co. v. Scherb*,
    432 P.2d 237 (Colo. 1967)...................................................................................................21

*Crew Tile Distrib., Inc. v. Porcelanosa L.A., Inc.*,
    No.13-cv-3206-WJM-KMT, 2017 U.S. Dist. LEXIS 181793 (D. Colo. Nov. 2, 2017) .........22

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003).................................................................................19

*Danning v. Miller (In re Bullion Reserve of N. Am.)*,
    922 F.2d 544 (9th Cir. 1991) ..............................................................................................18

*In re Enron Corp.*,
    298 B.R. 513 (Bankr. S.D.N.Y. 2003)..............................................................................9, 15

*In re First Assured Warranty Corp.*,
    383 B.R. 502 (Bankr. D. Colo. 2007) .................................................................................21

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995)..................................................................................................20

*Frazier v. Sikeston Bd. of Mun. Utils. (In re Liberty Coal Co., LLC)*,
    Case No. 09-CV-0371-MJR, 2010 U.S. Dist. LEXIS 31587 (S.D. Ill. Mar. 31, 2010) ..........21

*Hahn v. Office & Prof'l. Employees Int'l Union, AFL-CIO*,
    107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015)...........................................................................15

*Hechinger Liquidation Trust v. Cooper Bussmann, Inc. (In re Hechinger Inv. Co. of Del., Inc.)*,
    297 B.R. 390 (Bankr. D. Del. 2003) ......................................................................................10

*Industrial Comm. Of Colorado v. Lavach*,
    439 P.2d 359 (Colo. 1968).....................................................................................................21

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*,
    22 F.3d 458 (2d Cir. 1994).......................................................................................................7

*LaFond v. Basham*,
    683 P.2d 367 (Colo. App. 1984) ............................................................................................22

*Leonard v. McMorris*,
    63 P.3d 323 (Colo. 2003).......................................................................................................20

*Lopez v. Next Gen. Constr. & Envtl., L.L.C.*,
    No. 16-cv-00076-CMA-KLM, 2016 U.S. Dist. LEXIS 154769 (D. Colo. Nov. 8, 2016) ......23

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*,
    878 F.2d 1259 (10th Cir. 1989) .............................................................................................22

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002).....................................................................................................8

*O'Cheskey v. CitiGroup Global Mkts., Inc. (In re Am. Hous. Found.)*,
    543 B.R. 245 (Bankr. N.D. Tex. 2015) ..................................................................................12

*Pereira v. Grecolas Ltd. (In re Saba Enters.)*,
    421 B.R. 626 (Bankr. S.D.N.Y. 2009)...............................................................................19, 20

*Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc.*,
    139 P.3d 639 (Colo. 2006).........................................................................................20, 21, 23

*In re Randall's Island Family Golf Centers*,
    Adv. Pro. No. 02-2278, 2002 Bankr. LEXIS 1247 (Bankr. S.D.N.Y. Nov. 8, 2002)........13, 14

*Rescuecom Corp. v. Khafaga (In re Khafaga)*,
    431 B.R. 329 (Bankr. E.D.N.Y. 2010)...................................................................................10

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*,
  Case No. 06-10064 (SMB), Adv. Pro. No. 08-1023, 2010 Bankr. LEXIS 3194 (Bankr. S.D.N.Y. Sept. 16, 2010) ..................................................................................................9

*Rodriguez v. City of New York*,
  10-CIV-1849, 2011 U.S. Dist. LEXIS 102725 (S.D.N.Y. Sept. 7, 2011) ...............................8

*Rosebud Corp. v. Boggio*,
  561 P.2d 367 (Colo. 1977) ....................................................................................................22

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) .......................................................................... passim

*Sheffield Services Co. v. Trowbridge*,
  211 P.3d 714 (Colo. App. 2009) ...........................................................................................22

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............................................................................18, 19

*Slayton v. Am. Exp. Co.*,
  460 F.3d 215 (2d Cir. 2006) ....................................................................................................9

*VKK Corp. v. Nat'l Football League*,
  244 F.3d 114 (2d Cir. 2011) ..................................................................................................14

*Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*,
  778 F. Supp. 1116 (D. Colo. 1991) ........................................................................................22

*Ward v. Cooper*,
  685 P.2d 1382 (Colo. App. 1984) ..........................................................................................22

**Statutes**

11 U.S.C. § 546(a) ........................................................................................................................8

11 U.S.C. § 550(a) ......................................................................................................................16

11 U.S.C. § 550(a)(1) ..................................................................................................................16

11 U.S.C. § 550(a)(2) ..................................................................................................................16

11 U.S.C. § 550(b)(2) ..................................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................................................................................................................19

Fed. R. Civ. P. 9(b) ....................................................................................................................19

Fed. R. Civ. P. 12(b)(6)..........................................................................................................8

Fed. R. Civ. P. 15(c)(1)..........................................................................................................9

Fed. R. Civ. P. 15(c)(1)(B) ....................................................................................................9

Fed. R. Civ. P. 15(c)(1)(C) ...............................................................................................13, 15

## I.   PRELIMINARY STATEMENT

Defendant Aspen Fine Arts Co. ("Aspen") and proposed defendant Melvin W. Knyper ("Mr. Knyper") submit this memorandum of law in opposition to the Motion for Leave to File a Second Amended Complaint and for Related Relief ("Motion") filed by Irving H. Picard ("Trustee"), as Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA").

The Trustee initiated this action by the timely filing of his original complaint asserting claims against Aspen for the avoidance and recovery of funds that Aspen withdrew from its account at BLMIS.  After the statute of limitations period had expired, the Trustee amended his original complaint to assert claims against Mr. Knyper as a subsequent transferee, and as an initial transferee to the extent that Mr. Knyper was the person who benefitted from the avoidable transfers to Aspen; however, those additional claims were flatly dismissed by this Court.  Now, almost seven years after the statute of limitation has elapsed, the Trustee seeks leave to file another amended complaint, to hold Mr. Knyper, an 83 year-old man who (as the Trustee concedes) had no knowledge of Madoff's fraudulent scheme, as primarily liable for the avoidable transfers made by BLMIS to Aspen in the two years prior to the filing date.

The Trustee's Motion should be denied as futile because the claims he seeks to add against Mr. Knyper would not survive a motion to dismiss.  First, the Trustee's proposed claims against Mr. Knyper are untimely.  The Trustee did not assert any claims against Mr. Knyper within the statute of limitations, and should not be permitted to do so now.  The Trustee's proposed claims do not relate back to the original complaint under Rule 15(c)(1)(B) because they involve completely different conduct and events as the claims alleged in the Trustee's original complaint.  The Trustee's claims also do not relate back under Rule 15(c)(1)(C) because the Trustee is not seeking to correct a mistake in the identification of the proper initial transferee, as

that provision is intended to permit, but is instead seeking to add Mr. Knyper as an additional source of primary liability in addition to Aspen.

The Trustee's motion is also futile because his attempt to allege claims against Mr. Knyper as "the entity for whose benefit" the transfers to Aspen were made suffers from the same deficiencies that caused this Court to dismiss similar claims against Mr. Knyper two years ago. The Trustee's proposed pleading again hopelessly confuses the difference in Bankruptcy Code Section 550(a) between an initial transferee, a subsequent transferee, and an entity for whose benefit avoidable transfers are made, rendering his claims incomprehensible and subject to dismissal. The Trustee also fails to cite any case law supporting his argument that a principal of an alleged veil-pierced corporation can be held liable as an "entity for whose benefit [initial] transfers were made."

Finally, the Trustee's motion is futile because he has failed to allege all of the elements required under the applicable law of the state of Colorado (where Aspen was incorporated) to properly plead a claim for the piercing of the corporate veil between Aspen and Knyper. Specifically, the Trustee's proposed Second Amended Complaint completely fails to allege that Knyper used Aspen's corporate form "to perpetrate a fraud or defeat a rightful claim", as Colorado law requires; indeed, there is no basis for such an allegation, and irrefutable facts show otherwise.

In his motion papers, the Trustee complains about Aspen's responses and objections to the Trustee's discovery requests. However, Aspen did not refuse to respond to the Trustee's legitimate discovery requests; to the contrary, Aspen responded to those requests that sought information relevant to the Trustee's remaining avoidance claims or to Aspen's defenses to those claims, and Aspen properly objected to the Trustee's requests to the extent that they were an

2

impermissible "fishing expedition" into matters outside of the Trustee's claims against Aspen or to Aspen's defenses.  Further, contrary to the Trustee's implication, Mr. Knyper did not refuse to appear for a deposition in his capacity as Aspen's designated corporate representative; in fact, Mr. Knyper's deposition was scheduled and was adjourned at the Trustee's request only days before it was scheduled to take place.  However, Mr. Knyper did object to the Trustee's designation of topics for that deposition to the extent those topics were unrelated to the Trustee's avoidance claims against Aspen and to Aspen's defenses thereto.  In any event, this Motion is not the appropriate vehicle for the Trustee to challenge the sufficiency of Aspen's discovery responses; instead, such challenges are properly made through a motion to compel.  Despite his seemingly endless resources, the Trustee has not filed any such motion, perhaps in recognition that he would not prevail.

The Trustee's first attempt (in his Amended Complaint) to do an "end-run" around the statutory defenses available to alleged subsequent transferees and to hold Mr. Knyper as primarily liable under Section 550(a) was thoroughly rejected by this Court.  The Court should reject the Trustee's latest attempt to do so as well, for the reasons set forth below.

## II.    FACTS

### A.    The Original Complaint Does Not Name Mr. Knyper as a Defendant

On November 30, 2010, almost two years after he was appointed as Trustee in this SIPA liquidation proceeding and less than two weeks before the expiration of the statute of limitations, the Trustee filed his original Complaint (the "Original Complaint") against Aspen.  *See* Original Complaint, ECF No. 1.  The Original Complaint only named Aspen as a defendant.  No claims were asserted against Mr. Knyper in the Original Complaint; indeed, the Original Complaint says nothing whatsoever about Mr. Knyper or his relationship with Aspen.

3

**B.    The Amended Complaint Named Mr. Knyper as a Subsequent
Transferee and as an Initial Transferee, But All Claims Against Mr.
Knyper Were Dismissed**

On December 2, 2011, more than two years after the December 11, 2008 petition date,

the Trustee filed his Amended Complaint.  *See* Amended Complaint, ECF No. 15.  The

Amended Complaint added claims against Mr. Knyper, the alleged recipient of transfers from

Aspen, as a subsequent transferee.  *See* Amended Complaint at ¶ 2 ("Upon information and

belief, Melvin W. Knyper (the 'Subsequent Transferee Defendant') received subsequent transfers

of the avoidable transfers [to Aspen] referenced above."); *id.* at ¶ 44 ("Upon information and

belief, all or a portion of the Transfers were subsequently transferred by Defendant to

Subsequent Transferee Defendant Melvin W. Knyper . . . . ").  The Amended Complaint also set

forth wholly conclusory and speculative claims against Mr. Knyper as a purported initial

transferee, alleging that "[t]o the extent the funds transferred from BLMIS were for the benefit of

the Subsequent Transferee Defendant, Subsequent Transferee Defendant is the initial transferee

of such transfers and is included in the definition of Defendants for purposes of the allegations

herein." *Id.* at ¶ 2.

On March 22, 2013, Aspen and Mr. Knyper moved to dismiss the Amended Complaint

on multiple grounds.[1]  The Motion to Dismiss sought the dismissal of the subsequent transfer

claims against Mr. Knyper, arguing that "the Trustee's claims against alleged Subsequent

Transferee Defendant Knyper must be dismissed as insufficiently pled because the Complaint

fail to specify any subsequent transfers to be avoided and recovered".[2]  The Motion to Dismiss

also sought the dismissal of the Trustee's initial transfer claims against Mr. Knyper, on the

---

[1] *See* Defendants Aspen Fine Arts Co. and Melvin W. Knyper's Motion to Dismiss the Amended
Complaint, ECF No. 23.
[2] *See* Memorandum of Law in Support of Defendants Aspen Fine Arts Co. and Melvin W.
Knyper's Motion to Dismiss the Amended Complaint, ECF No. 24, at 2; *see also id.* at 22-25.

4

ground that "the Trustee misreads the nature and purpose of the 'for the benefit of language' in Section 550(a) of the Bankruptcy Code, which traditionally reaches guarantors and persons in a similar relationship of liability," and because "the Trustee fails to allege any facts supporting this speculative assertion that the funds were, in fact, transferred for the benefit of Subsequent Transferee Defendant Knyper, such as the basis for the beneficiary status or which transfers were purportedly received."[3]

On June 2, 2015, this Court issued a memorandum decision regarding the Motion to Dismiss filed by Aspen and Mr. Knyper, as well as motions to dismiss filed by other good-faith BLMIS investors. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 531 B.R. 439, 477 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*"). In that decision, the Court found that the Trustee's "barebones allegations of subsequent transfer are insufficient. They lack the 'vital statistics,' and the fact that the subsequent transferee defendants have ownership interests in the initial transferees is insufficient to plead a subsequent transfer claim." *Id.* at 473 (citation omitted).

The Court also addressed the Trustee's vague and conclusory attempt to plead claims against Mr. Knyper as an initial transferee:

> The Trustee's opposition merits one further comment. Although not presented in a formal count, the Trustee's complaints often include generic language alleging that to the extent the funds transferred from BLMIS were for the benefit of the subsequent transferee defendant, the latter is an initial transferee of the transfer. Section 550(a)(1) of the Bankruptcy Code allows the Trustee to recover an avoided transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made," 11 U.S.C. § 550(a)(1), and § 550(a)(2) permits the Trustee to recover the avoided transfer from the "immediate or mediate transferee of such initial transferee." "The structure of the statute separates initial transferees and beneficiaries, on the one hand, from 'immediate or mediate transferee[s]', on the other. The implication is that the 'entity for whose benefit' is different from a transferee, 'immediate' or otherwise." *Bonded*

---

[3] *Id.* at 3, 23-25.

*Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988); *accord Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997) ("because 'immediate and mediate' transferees are the subject of the following subsection (§ 550(a)(2)), we know that the 'entity for whose benefit' phrase does not simply reference the next pair of hands; it references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds."). "The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor-someone who receives the benefit but not the money." *Bonded Fin. Servs.*, 838 F.2d at 895.

***The Trustee's allegations ignore these distinctions. The defendants are either transferees or persons for whose benefit the transfers were made; they can't be both. Furthermore, they are either subsequent transferees or initial transferees. The complaints do not allege facts showing that the transfers were made for the benefit of any defendant; instead, they allege the initial transfers and assert, in conclusory fashion, that the subsequent transferee defendants received subsequent transfers.***

*Id.* at 474 (emphasis added).

On July 16, 2015, the Court issued an Order which applied the rulings set forth in the *Omnibus Good Faith Decision* to the instant action, and accordingly, dismissed all claims asserted against Mr. Knyper in the Amended Complaint. *See* Order Granting In Part And Denying In Part Defendants' Motions To Dismiss, ECF No. 47, at ¶ 3.

### C.   The Relevant Subsequent Procedural History of the Case

The Trustee's Memorandum of Law in Support of the Trustee's Motion for Leave to File a Second Amended Complaint and for Related Relief ("Trustee Mem.") generally sets forth the relevant procedural history of this action following the Court's entry of the *Omnibus Good Faith Decision* (as well as some irrelevant history), and this brief will not repeat that entire history. However, a few points deserve clarification.

As stated above, Aspen responded to the Trustee's discovery requests to the extent that those requests sought information relevant to the Trustee's remaining claims or Aspen's defenses thereto, and Aspen objected to those requests which sought information that was not relevant to

those claims or defenses.  *See* Aspen's discovery responses (Exhibits B, D and E to the Trustee's

Motion).  Aspen agreed to produce Mr. Knyper as its designated corporate representative for a

deposition in response to the Trustee's deposition notice, but Aspen objected to those topics

identified in the Trustee's notice which were not relevant to the Trustee's remaining claims or

Aspen's defenses (including those topics which solely related to the causes of action against Mr.

Knyper that this Court had previously dismissed).  *See* letter from Matthew A. Kupillas, Esq. to

Dean D. Hunt, Esq. dated May 31, 2017 (Exhibit F to the Trustee's Motion).  Mr. Knyper was

prepared to appear at his deposition, but the deposition was adjourned by the Trustee's counsel

only three days before the deposition was scheduled to take place.  *See* e-mail from Kody Kleber,

Esq. to Mr. Kupillas dated June 6, 2017 (submitted as Exhibit 1 hereto).

The Trustee also sought and obtained discovery from Wells Fargo Bank, N.A. (where

Aspen and Knyper both held bank accounts) and from Aspen's accountant, Larry Neu, as the

Trustee's brief explains.  Although Aspen served objections to the Trustee's subpoena to Wells

Fargo, neither Aspen nor Mr. Knyper interfered with the Trustee's pursuit of discovery from

those non-parties.  The Trustee has not submitted any of that discovery along with his Motion,

instead giving his own selective interpretation of it. While Mr. Knyper believes that such

evidence would ultimately defeat any claim that the Trustee is permitted to assert against him,

those documents are not necessary in order for the Court to determine, for the reasons set forth

below, that the Trustee's Motion for leave to amend should be denied.

## III.   LEAVE TO AMEND SHOULD NOT BE GRANTED BECAUSE AMENDMENT WOULD BE FUTILE

While a court should freely give leave to amend a complaint when justice so requires, it

must deny it where the amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford*

*Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct.

227, 9 L. Ed. 2d 222 (1962)). "An amendment to a complaint is futile if the proposed claim could

not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus.*

*Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "The adequacy of a proposed amended

complaint to state a claim is to be judged by the same standards as those governing the adequacy

of a filed pleading." *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir.

2012).

### A.     Amendment Is Futile Because the Trustee's New Claims Are Time-Barred

Leave to file a second amended complaint should be denied because the Trustee's new

claims are barred by the applicable statute of limitations.  Section 546(a) of the Bankruptcy Code

requires, in relevant part, that the Trustee must commence any action or proceeding under

section 544, 545, 547, 548 or 553 no later than either (i) two years after the entry of the order of

relief, or (ii) one year after the appointment or the election of a trustee. *See* 11 U.S.C. § 546(a).

In this case, the order for relief was filed on December 11, 2008 when the District Court granted

SIPC's application to provide SIPA protection to BLMIS customers.   Therefore, in order to

timely assert claims against Mr. Knyper, the Trustee was required to commence an adversary

proceeding against him by December 11, 2010, which he failed to do.   Accordingly, the

Trustee's proposed claims against Mr. Knyper are barred by the relevant statute of limitations.

An amendment filed after the applicable statute of limitations has run and where the

claims do not relate back to the date of an earlier timely pleading will be deemed futile. *See*

*Rodriguez v. City of New York*, 10-CIV-1849, 2011 U.S. Dist. LEXIS 102725, at *17 (S.D.N.Y.

Sept. 7, 2011).  The standard for relation back is set forth in Rule 15(c)(1).  A plaintiff seeking to

add a defendant may satisfy this standard if:

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out-or attempted to be set out-in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

The Trustee contends that the claims against Mr. Knyper in the proposed Second Amended Complaint are not barred because they relate back to the date of the original complaint. That argument is meritless.

### 1. The Trustee's New Claims Do Not Relate Back Under Rule 15(c)(1)(B)

For a newly-added claim to relate back under Rule 15(c)(1)(B), "the basic claim must have arisen out of the conduct set forth in the original pleading." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006). The party who asserts the relation back bears the burden of proof. *See In re Enron Corp.*, 298 B.R. 513, 522 (Bankr. S.D.N.Y. 2003).

Here, the Trustee cannot rely on the "relation back" provision of Rule 15(c)(1)(B) to save his proposed Second Amended Complaint because the new claims do not arise out of the same conduct, transaction, or occurrence as the claims alleged in the Original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B); *Breeden v. Cowen & Co. (In re Bennett Funding Group)*, 275 B.R. 447 (Bankr. N.D.N.Y. 2001) (relation back is not allowed if the plaintiff relies on entirely different conduct or different transactions or occurrences"); *Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.),* Case No. 06-10064 (SMB), Adv. Pro.

No. 08-1023, 2010 Bankr. LEXIS 3194 (Bankr. S.D.N.Y. Sept. 16, 2010) (new claims involved

different time frames and conduct); *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 431 B.R. 329,

335 (Bankr. E.D.N.Y. 2010) (the factual discrepancies between the original and amended claims,

which included different time frames, different alleged conduct, and different operative facts,

precluded a finding that the amended claim related back under Fed. R. Civ. P. 15(c)); *CIT*

*Group/Factoring Mfrs. Hanover, Inc. v. Srour (In re Srour)*, 138 B.R. 413, 418 (Bankr. S.D.N.Y.

1992) (claims based on new facts do not relate back).[4]

  The Trustee's claims against Mr. Knyper are undeniably "new", as the Original

Complaint, which was the only complaint filed within the statute of limitations, did not plead any

claims against Mr. Knyper whatsoever. The claims in the proposed Second Amended Complaint

are wholly different from the claims asserted in the Original Complaint. The Trustee now seeks

to add new claims against Mr. Knyper based on his alleged exercise of "complete dominion and

control" over Aspen and his purported use of Aspen as a "mere instrument to facilitate his

personal interests and those of his family members." Second Amended Complaint at ¶ 71.

However, the Original Complaint did not include such claims or allege *any* facts that would

support them. There are no allegations in the Original Complaint concerning Mr. Knyper's

purported exercise of control and dominion over Aspen's assets or his purported use of Aspen as

a "mere instrument", and no allegations that would provide the basis for piercing the corporate

veil between Aspen and Mr. Knyper.

  The operative facts in the proposed Second Amended Complaint supporting the Trustee's

claims to pierce the corporate veil between Aspen and Mr. Knyper involve completely different

---

[4] *See also Hechinger Liquidation Trust v. Cooper Bussmann, Inc. (In re Hechinger Inv. Co. of
Del., Inc.)*, 297 B.R. 390, 393 (Bankr. D. Del. 2003) ("[L]eave to amend shall not be given
where an amendment will be futile and an amendment would be futile if a plaintiff is trying to
add defendants after the statute of limitations has expired.").

time frames and conduct from the claims alleged in the Original Complaint. To support his claims to pierce the corporate veil, the Trustee alleges facts concerning *Mr. Knyper's* conduct and the relationship between Aspen and Mr. Knyper, *i.e.*, Mr. Knyper's appointment as President of Aspen in 1998 (Second Amended Complaint ¶ 61), the issuance of Aspen's common stock to Mr. Knyper in 1998 (*id.* ¶ 62), the transfer of over $3 million from Mr. Knyper's personal BLMIS account to Aspen's BLMIS account in 2000 (*id.* ¶ 54), Aspen's purported failure to hold corporate meetings after February 1998 (*id.* ¶ 70), and Mr. Knyper's purported use of Aspen's funds for his own benefit (*id.* ¶ 67). In contrast, the Original Complaint asserts no facts whatsoever concerning Mr. Knyper's conduct or the relationship between Mr. Knyper and Aspen; the Original Complaint instead focuses solely on the fraudulent activities of Bernard Madoff and BLMIS and, insofar as the Original Complaint says anything about Aspen, it focuses on Aspen's opening of its account at BLMIS and execution of account agreements (Original Complaint ¶ 34), and Aspen's receipt of transfers from BLMIS within the six-year period prior to the Filing Date (i*d.* ¶¶ 36-37).

The new facts set forth in the proposed Second Amended Complaint are not amplifications of the facts alleged in the Original Complaint, or statements that provide greater specificity to the general fact situation alleged in that complaint. There are no allegations in the Original Complaint by which Mr. Knyper could be held primarily liable under Section 550(a) either because Mr. Knyper exercised such a degree of control and dominion over Aspen or because Mr. Knyper so used Aspen as a "mere instrumentality" for his personal ends that he qualifies as an initial transferee or "entity for whose benefit such transfers were made".

Because the Trustee did not rely on these new facts and events in the Original Complaint, Mr. Knyper did not have notice of the Trustee's new claims before the limitations period expired.

11

Accordingly, the proposed amended claims should not be permitted to relate back to the original

pleading. *Ansarco LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) ("The central inquiry is

whether adequate notice of the matters raised in the amended pleading has been given to the

opposing party within the statute of limitations by the general fact situation alleged in the

original pleading.") (quoting *Slayton*, 460 F.3d at 228).

The fact that the Amended Complaint asserted claims against Mr. Knyper as a subsequent

transferee and as the "entity for whose benefit the transfers were made" offers no help to the

Trustee. First, the Original Complaint is the only relevant complaint for assessing whether the

Trustee's new claims relate back under Rule 15(c), because it is the only complaint that was filed

within the statute of limitations; the Amended Complaint is irrelevant to that determination.[5] To

the extent that the Amended Complaint asserted formal claims against Mr. Knyper as "the entity

for whose benefit the transfers were made" (and not just vague, "generic" assertions, as the Court

noted in the *Omnibus Good Faith Decision*), those claims were not filed within the statute of

limitations period under Section 546(a); thus, to the extent that the Trustee's new claims relate

back to the Amended Complaint, they relate back to claims that were themselves untimely when

filed. Second, the assertion of claims against Mr. Knyper as a Subsequent Transferee Defendant

in the Amended Complaint only put Mr. Knyper on notice that he was being sued for the

recovery of subsequent transfers he purportedly received from Aspen, and did not put Mr.

Knyper on notice that he could be sued as an initial transferee and held liable for all money

withdrawn by Aspen from its BLMIS account during the relevant lookback period. Third, the

Court dismissed the claims asserted against Mr. Knyper in the Amended Complaint on the

---

[5]  Under Rule 15(c)(1), the "original pleading" is "the last timely filed pleading." *O'Cheskey v. CitiGroup Global Mkts., Inc. (In re Am. Hous. Found.)*, 543 B.R. 245, 253 (Bankr. N.D. Tex. 2015).

ground that they lacked any factual support[6]; accordingly, those claims were insufficient to put

Mr. Knyper on notice of the Trustee's new claims.[7]

### 2.    Relation Back is Inappropriate Under Rule 15(c)(1)(C)

The Trustee also argues that "even if the Court considers Mr. Knyper to be a new party",

relation back is appropriate under Rule 15(c)(1)(C) because Mr. Knyper purportedly "knew that

he was the one to benefit from the transfers." Trustee Mem. at 11-12. However, the Trustee has

not shown that he meets the criteria for relation back under Rule 15(c)(1)(C).

By its plain terms, Rule 15(c)(1)(C) applies to situations where the plaintiff's amendment

"changes the party or the naming of the party against whom a claim is asserted". Fed. R. Civ. P.

15(c)(1)(C). That is not what the Trustee seeks to do in his proposed Second Amended

Complaint. The Trustee is not seeking to "change" his claims such that claims formerly asserted

against Aspen will now be asserted against Mr. Knyper; instead, the Trustee is seeking to add Mr.

Knyper as an *additional* defendant, so that he may attempt to recover from Aspen, and/or from

Mr. Knyper, for the *same* transfers from BLMIS.

That was not the factual situation in *In re Randall's Island Family Golf Centers*, Adv. Pro.

No. 02-2278, 2002 Bankr. LEXIS 1247 (Bankr. S.D.N.Y. Nov. 8, 2002), which the Trustee cites

in support of his argument that relation back is proper under Rule 15(c)(1)(C). In that case, the

debtors initially named two insurance agents (Mang and Granite) as initial transferees of

preferential transfers from the debtors. *Id.*, 2002 U.S. Bankr. LEXIS 1247, at *2. Mang and

---

[6] *See Omnibus Good Faith Decision*, 531 B.R. at 473 ("The barebones allegations of subsequent transfer are insufficient."); *id.* at 474 (the Amended Complaint and similar complaints against other defendants "do not allege facts showing that the transfers were made for the benefit of any defendant . . . .").

[7] *See, e.g.*, *Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.)*, 275 B.R. 357, 362-63 (Bankr. D. Ariz. 2002) (in assessing whether a proposed amendment relates back, a court may consider whether the claims in the original pleading were alleged with sufficient factual detail).

Granite stated in their combined answer that the transfers represented "insurance premiums owing and due to" an insurer (Crum) that they represented, stated that they received the payments as "mere conduits", and "implied that they remitted the funds to Crum." *Id.* at *3. Based on those facts, the Court found that while Mung and Granite appeared to be the initial transferees because they received the payments at issue, they were not the initial transferees because they were acting as "mere conduits" for Crum. *Id.* at *13-14 (citing *Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.2d 52, 59 (2d Cir. 1997) for the proposition that an insurance broker who acts as a "mere conduit" for an underlying insurer is not the "initial transferee"). Accordingly, the Court allowed the plaintiffs to change their pleading to name Crum as the initial transferee of the alleged preferential payments *instead* of Mung and Granite, not in *addition* to Mung and Granite (although the brokers remained as defendants in connection with other transfers).[8]

Here, the Trustee does not claim it was a "mistake" to name Aspen as the initial transferee, and he is not looking to correct that decision. The Trustee seeks to add Mr. Knyper as a defendant, not because of some misidentification of the recipient of the initial transfers from BLMIS, but because he seeks an alternative source of primary liability, in addition to Aspen, for the same exact transfers.[9] The Trustee does not cite any cases where relation back was permitted

---

[8] Similarly, the other cases cited by the Court in *Randall's Island Family Golf Ctrs.* as appropriate examples of relation back under Rule 15(c)(1)(C) all involved the substitution of the new defendant for a mistakenly-named defendant, not the addition of a new defendant as an alternative source of recovery for the same claims. *See id.*, 2002 Bankr. LEXIS 1247, at *12-13. For example, in *VKK Corp. v. Nat'l Football League*, the plaintiff was permitted to amend where she obviously had intended to sue the company that owned the ship on which she was injured, but mistakenly named Costa Cruise Lines N.V. in her original complaint instead of the true owner of the ship, Costa Crociere S.p.A. *See VKK Corp.*, 244 F.3d 114, 128 (2d Cir. 2011).

[9] A plaintiff who "has sued [what he believes is] the right defendant, and simply neglect[s] to sue

under Rule 15(c)(1)(c) to allow a party to plead claims against a new defendant and to also continue to pursue the same claims against the "mistakenly" named defendant. That is not what Rule 15(c)(1)(C) is designed to allow.

The Trustee's motion also fails under Rule 15(c)(1)(C) because he has not met his burden to *prove* that Mr. Knyper "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Trustee has not submitted evidence along with his motion sufficient to prove that Mr. Knyper "knew" he was the one who benefitted from the transfers to Aspen.

In his Motion, the Trustee cites (but does not submit) documents produced by Aspen's accountant, Larry Neu, purportedly showing "that Knyper used Aspen as a source of funds for him to pay his and his family's personal expenses". Trustee Mem. at 3. However, the documents produced by Mr. Neu also show that Mr. Knyper made loans to Aspen totaling millions of dollars; indeed, the Trustee's proposed Second Amended Complaint includes the allegation that in 2000, "Knyper transferred the balance of $3,096,812 from his personal BLMIS Account" to Aspen's BLMIS account. Second Amended Complaint at ¶ 54. Those facts alone make it plausible that to the extent Aspen transferred any funds to Mr. Knyper or paid Mr. Knyper's expenses, those expenditures were not misuses of corporate funds, but instead were made in repayment of the loans that Mr. Knyper had previously made to Aspen.

It is not enough for the Trustee to *allege* in his proposed amended pleading that Mr. Knyper knew he was the person who benefitted from the Transfers to Aspen; rather, the Trustee "bears the burden of proof" (*In re Enron*, 298 B.R. at 522) to show that relation back is

_____

another defendant who might also be liable" may not avail itself of the relation back doctrine. *Hahn v. Office & Prof'l. Employees Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) (quoting *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014)).

appropriate under Rule 15(c)(1)(C), including the burden to prove all the necessary factual predicates for that Rule *before* the amendment will be allowed. The Trustee has not met that burden.

**B.     Amendment is Futile Because the Trustee's "For the Benefit" Allegations Must Be Dismissed**

Similarly, the Trustee's claim that Mr. Knyper was an initial transferee because he received the benefit of the Transfers to Aspen cannot survive a motion to dismiss. The Trustee's proposed pleading impermissibly blurs the distinction between a transferee of an avoidable transfer and "the entity for whose benefit such transfer was made".

Section 550(a)(1) permits the Trustee to assert avoidance claims against the initial transferee *and* an entity for whose benefit the initial transfer was made. 11 U.S.C. § 550(a)(1). This section provides a means for the Trustee to hold either of those targets liable for the entirety of the avoided initial transfer (but subject to the Section 548(c) defense, for example). Section 550(a)(2) provides for recovery from a subsequent transferee. *See* 11 U.S.C. § 550(a)(2). Unlike an initial transferee, a subsequent transferee may be liable *only for the particular amount of the subsequent transfer traced to it*, subject to its own variant of a "good faith" defense. *See* 11 U.S.C. § 550(a) (limiting recovery to the "property transferred"); 11 U.S.C. § 550(b)(2) (providing that the trustee cannot recover from a subsequent transferee who took in good faith).

This Court has already rejected the Trustee's attempt to bypass the protections afforded subsequent transferees by pleading that Mr. Knyper may have been the beneficiary of the initial transfers to Aspen. In his Amended Complaint, the Trustee named Mr. Knyper as the Subsequent Transferee Defendant and also argued that "[t]o the extent funds transferred from BLMIS were for the benefit of the Subsequent Transferee Defendant, Subsequent Transferee Defendant is the initial transferee of such transfers and is included in the definition of

16

Defendants for purposes of the allegations herein."  Amended Complaint at ¶ 2.

This Court rejected that allegation, finding that it impermissibly blurred the distinction in the Bankruptcy Code between a transferee who received the transfer and a person who received a direct and commensurate benefit from the transfer, but not the transfer itself.  In its *Omnibus Good Faith Decision*, the Court quoted *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988) for the proposition that the structure of Section 550(a) "separates initial transferees and beneficiaries, on the one hand, from 'immediate or mediate transferee[s]', on the other.  The implication is that the 'entity for whose benefit' is different from a transferee, 'immediate' or otherwise." *Omnibus Good Faith Decision*, 531 B.R. at 477.[10]  The Court rejected the Trustee's pleading, holding that "[t]he Trustee's allegations ignore these distinctions. The defendants are either transferees or persons for whose benefit the transfers were made; they can't be both." *Id.*

The Trustee's proposed Second Amended Complaint again ignores these distinctions. The Trustee argues that Mr. Knyper "is liable under Bankruptcy Code sections 548(a)(1)(A), 550(a)(1) and 551 as an initial transferee because the BLMIS transfers were made for his own benefit . . . ."  Trustee Mem. at 1.  That sentence alone shows the Trustee's fatal misunderstanding of the distinction in the Bankruptcy Code between an initial transferee and the "entity for whose benefit such transfer was made".

The Trustee's proposed Second Amended Complaint alleges, in the very same paragraph, that Mr. Knyper both "received avoidable transfers from BLMIS" and "was the person for whose benefit the transfers were made." Second Amended Complaint at ¶ 2.  The proposed Second

---

[10] The Court also cited *In re Finley, Kumble*, 130 F.3d at 57 ("because 'immediate and mediate' transferees are the subject of the following subsection (§ 550(a)(2)), we know that the 'entity for whose benefit' phrase does not simply reference the next pair of hands; it references the entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds.").

Amended Complaint further confuses Mr. Knyper's status as a potential subsequent transferee with his status as a the purported "entity for whose benefit" initial transfers were made by alleging that "the Transfers were made for the benefit of Knyper because the funds were used" by Aspen, among other reasons, "to make . . . transfers to Knyper's personal bank account. . . ." *Id.* ¶ 67.[11]

Mr. Knyper can either be the initial transferee of a transfer from BLMIS, a subsequent transferee of a transfer from BLMIS to Aspen, or the entity for whose benefit a transfer from BLMIS to Aspen was made (or *none* of these, as Mr. Knyper believes the facts will ultimately show). But Mr. Knyper cannot be all of these at the same time. Because the proposed Second Amended Complaint fails to distinguish between these statuses, it cannot withstand a motion to dismiss.

Additionally, the Trustee's motion to amend should be denied because the phrase "the entity for whose benefit such transfers were made" does not apply to an alleged alter-ego or principal of a corporation whose "veil" has been pierced. As the Court has recognized, "[t]he paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor-someone who receives the benefit but not the money." *Omnibus Good Faith Decision*, 531 B.R. at 474 (quoting *Bonded Fin. Servs.*, 838 F.2d at 895); *see also Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr. S.D.N.Y. 1999) ("The quintessential example of the entity who benefits from the initial transfer is a guarantor of the debtor . . . . He or she is relieved of the obligation to pay the lender -- which is the benefit -- while the lender receives the

---

[11] These allegations fail because a *later recipient* of an initial transfer is a subsequent transferee, not an initial transferee or a beneficiary of the initial transfer. *See Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 548 (9th Cir. 1991) ("A subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer."); *Bonded Fin. Servs.*, 838 F.2d at 895 ("[A] subsequent transferee cannot be the 'entity for whose benefit' the initial transfer was made.").

money."). The Trustee does not cite a single case where a controlling shareholder of a veil-pierced corporation was held primarily liable under Section 550(a) as the "entity for whose benefit [a] transfer was made".

### C.    Amendment is Futile Because the Trustee Has Not Adequately Alleged the Elements of a Veil-Piercing Claim Under Colorado Law

The Trustee's proposed new claims seeking the piercing of the corporate veil between Aspen and Mr. Knyper are inadequate and subject to dismissal because the Trustee does not allege all of the necessary elements of a veil-piercing claim under the applicable legal standard. Accordingly, because those claims are futile, the Trustee's Motion must be denied.

In order to survive a motion to dismiss a claim seeking to pierce the corporate veil, a plaintiff must allege facts sufficient to support that claim. *See*, *e.g.*, *Capmark Fin. Group Inc. v. Goldman Sachs Credit L.P.*, 491 B.R. 335, 346 (S.D.N.Y. 2013); *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 427 (S.D.N.Y. 2003) ("Plaintiffs' reliance on cases noting that veil-piercing is a very fact-specific analysis, conducted only after a full examination of the parties and their relationships, is misplaced. The plaintiffs in those cases alleged sufficient facts to support their allegations of veil-piercing."). "To the extent that the Trustee's allegations related to the veil piercing claim involve fraud, they must satisfy the heightened standard for pleading fraud under Rule 9(b) of the Federal Rules of Civil Procedure; otherwise, the post-*Twombly* 'flexible plausibility' standard under Rule 8(a) of the Federal Rules of Civil Procedures governs the determination of the sufficiency of the Trustee's pleading." *Pereira v. Grecolas Ltd. (In re Saba Enters.)*, 421 B.R. 626, 652 (Bankr. S.D.N.Y. 2009).

"State law governs the application of corporate veil piercing principles in the context of transfer avoidance actions in bankruptcy." *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. at 321. Under New York's choice of law rules, "the law of the state of incorporation

19

determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (citation and internal quotation marks omitted). Accordingly, because Aspen was incorporated in the state of Colorado, Colorado state law applies to the Trustee's veil-piercing claim. *See In re Saba Enters.*, 421 B.R. at 648-52 (determining that Colorado state law applies to claims to pierce the corporate veil for a Colorado corporation).

"Generally, a duly formed corporation is treated as a separate legal entity, unique from its officers, directors, and shareholders." *Phillips v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc.*, 139 P.3d 639, 643 (Colo. 2006). "[O]nly extraordinary circumstances justify disregarding the corporate entity to impose personal liability." *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). Under Colorado law, a three-prong analysis applies to a corporate veil-piercing claim:

> To determine whether piercing the corporate veil is appropriate, the court must first inquire into whether the corporate entity is the alter ego of the shareholder. Only then will actions ostensibly taken by the corporation be considered acts of the shareholder. . . .

> The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

> Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity.

*Phillips*, 139 P.3d at 644 (internal citations omitted). "A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met." *Id.*

Here, the Trustee has completely failed to allege sufficient facts to meet the second prong of the veil-piercing analysis under Colorado law, *i.e.*, that Aspen's corporate form was "used to

perpetrate a fraud or defeat a rightful claim". *Id.*[12]

The proposed Second Amended Complaint includes no allegations that Mr. Knyper used Aspen to perpetrate a fraud on the Trustee or any other person. In fact, the proposed complaint is entirely silent about any purported motive Mr. Knyper may have had for allegedly misusing the corporate form. *See Contractors Heating and Supply Co. v. Scherb*, 432 P.2d 237, 238-39 (Colo. 1967) (affirming the denial of a claim to pierce the corporate veil where there was no evidence of "fraud or some other wrong being perpetrated"); *Industrial Comm. of Colorado v. Lavach*, 439 P.2d 359, 361 (Colo. 1968) (affirming judgment denying claim to pierce the corporate veil where there was "no evidence tending to show that [defendant] conducted his business through the Company 'as a means of accomplishing a fraud or an illegal act.') (citation omitted).[13]

To the contrary, incontrovertible evidence makes clear that Aspen was *not* kept undercapitalized in order to defeat the rightful claims of its creditors. As the Trustee cannot deny, Aspen's monthly account statements showed that Aspen held millions of dollars in its BLMIS account throughout the entire life of the account. At the time Aspen received those account statements, Aspen and Mr. Knyper had no knowledge that Madoff was running a fraudulent scheme, but instead had a reasonable belief that Aspen had millions of dollars in assets, and thus was more than adequately capitalized to satisfy potential creditors. Those facts

---

[12] Solely for the purposes of this Motion, Mr. Knyper and Aspen do not contest that the Trustee has adequately alleged the first prong of the veil-piercing analysis -- although the Trustee will be unable to prove those allegations if they are permitted to go forward.

[13] *See also Frazier v. Sikeston Bd. of Mun. Utils. (In re Liberty Coal Co., LLC)*, Case No. 09-CV-0371-MJR, 2010 U.S. Dist. LEXIS 31587, at *31-32 (S.D. Ill. Mar. 31, 2010) ("Even if Liberty was an alter ego of the stakeholders or even if there are other 'issues of fact' still present in the case, Liberty was not used to perpetuate a fraud or to defeat the rightful claims of creditors, which was an essential component of a veil piercing case [under Colorado law]."); *In re First Assured Warranty Corp.*, 383 B.R. 502, 528 (Bankr. D. Colo. 2007) ("The Court finds justice does not require it to disregard the corporate form, because there has been no assertion First Assured used its corporate fiction to perpetrate a fraud against PrimeGuard or otherwise defeat a rightful claim.").

are entirely inconsistent with the idea that Mr. Knyper used Aspen to perpetrate a fraud or wrong on its creditors.

In contrast, Colorado cases which found it appropriate to pierce the corporate veil typically involved situations where a shareholder, officer, or director drained the corporation of funds so as to avoid paying a known creditor or a potential judgment in an existing lawsuit against the corporation. *See Crew Tile Distrib., Inc. v. Porcelanosa L.A., Inc.*, No.13-cv-3206-WJM-KMT, 2017 U.S. Dist. LEXIS 181793, at *42 (D. Colo. Nov. 2, 2017) ("[T]he acknowledged reason for diverting payments from Crew Tile to Paradigm (i.e., commingling of funds) was to evade the garnishment of Crew Tile's bank account and thereby defeat payment of a rightful claim."); *Sheffield Services Co. v. Trowbridge*, 211 P.3d 714, 722 (Colo. App. 2009) (manager of a limited liability company "concealed" transactions and actively transferred funds for the purpose of frustrating claims against the entity); *LaFond v. Basham*, 683 P.2d 367, 369-70 (Colo. App. 1984) (president and general manager took corporate funds to avoid paying builder for home remodeling work contracted for by the corporation); *Ward v. Cooper,* 685 P.2d 1382, 1383 (Colo. App. 1984) (finding that defendant used corporation to avoid his personal liability); *Rosebud Corp. v. Boggio*, 561 P.2d 367, 369-71 (Colo. 1977) (director "converted" corporate funds to avoid paying lender's promissory note).

The mere fact that corporate creditors would go unsatisfied because they cannot reach a shareholder's personal assets does not, alone, justify piercing the corporate veil. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1265 (10th Cir. 1989) (applying Colorado law); *see also Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 778 F. Supp. 1116 (D. Colo. 1991) (applying Colorado law to deny alter-ego claim, the court rejected the argument that "[i]n any case where a corporate creditor will go unsatisfied if he cannot reach a shareholder, it

22

could be said that recognition of the corporate form would be unjust."). Here, the Trustee has completely failed to allege any facts showing that Mr. Knyper misused Aspen's corporate form in order to avoid paying Aspen's creditors, or to perpetrate any other fraud, wrong or illegal act. Accordingly, the Trustee's veil-piercing claim is subject to dismissal, and the filing of the proposed Second Amended Complaint would be futile.[14]

Finally, the Trustee cannot meet the third prong of the Colorado test for piercing the corporate veil, *i.e.*, showing that "an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." *Phillips*, 139 P.3d at 644. Here, denial of the Trustee's Motion would not leave him without a potential remedy against Mr. Knyper, as the Trustee may attempt to reassert claims against Mr. Knyper under Section 550(a)(2) to recover any avoidable transfers that Aspen received from BLMIS and subsequently transferred to Mr. Knyper (subject to the defenses available to subsequent transferees in Section 550(b)). In light of that potential remedy, the granting of the Trustee's Motion would not be an equitable result in the instant action.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Trustee's Motion in its entirety.

---

[14] *See Lopez v. Next Gen. Constr. & Envtl., L.L.C.*, No. 16-cv-00076-CMA-KLM, 2016 U.S. Dist. LEXIS 154769, at *6 (D. Colo. Nov. 8, 2016) ("In his complaint, Lopez presents no facts to support a claim for piercing the corporate veil and allowing his state claims against Lente, in his individual capacity, to proceed. Specifically, Lopez . . . does not allege that Colorado Native is a fiction used by Lente to perpetrate a fraud . . . . That Lopez may present this information later is insufficient to defeat dismissal under Rule 12(b)(6).").

Dated:    New York, New York
          November 22, 2017           <u>s/  Matthew A. Kupillas</u>
                                            MILBERG LLP
                                            Matthew A. Kupillas
                                            E-mail: mkupillas@milberg.com
                                            One Pennsylvania Plaza
                                            New York, NY 10119
                                            Telephone: (212) 594-5300
                                            Facsimile: (212) 868-1229

                                            *Attorneys for Aspen Fine Arts Co. and*
                                            *Melvin W. Knyper*

740785v1