UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　Plaintiff-Applicant,<br><br>　　　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**AFFIDAVIT OF VINEET SEHGAL IN SUPPORT OF THE TRUSTEE'S MOTION FOR AN ORDER APPROVING THE NINTH ALLOCATION OF PROPERTY TO THE FUND OF CUSTOMER PROPERTY AND AUTHORIZING NINTH INTERIM DISTRIBUTION TO CUSTOMERS**

CITY OF NEW YORK　　　　　)
　　　　　　　　　　　　　　) ss:
STATE OF NEW YORK　　　　　)

Vineet Sehgal, being duly sworn, deposes and says:

1.　I am a Managing Director at AlixPartners LLP ("AlixPartners"). I make this affidavit to transmit to the Court information relevant to the motion by Irving H. Picard, trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), for an Order Approving the Trustee's Ninth Allocation of Property to

---

[1] For convenience, subsequent references to sections of the Act shall follow the form: "SIPA § __."

1

the Fund of Customer Property and Authorizing Ninth Interim Distribution to Customers (the "Motion").

2.  AlixPartners has served as the Trustee's Claims Agent and as the accountant for the BLMIS estate since December of 2008 pursuant to SIPA § 78fff-1(a)(1).  As the Claims Agent, AlixPartners was responsible for both mailing the notice of the liquidation and claim forms to potential claimants and causing the notice of the liquidation to be published. AlixPartners has also been responsible for processing all claims submitted to the Trustee and assisting the Trustee in reviewing each customer claim filed to determine whether the asserted claim amount agrees with the "net equity" for that account.  In addition, as the accountants for the BLMIS estate, AlixPartners has assisted and continues to assist the Trustee in accounting for the assets of the BLMIS estate, including the cash and cash equivalents available to the Trustee.

3.  I have been actively involved in the liquidation of BLMIS and the claims process since December 2008 and have personal knowledge of the matters set forth herein.

## The Claims Process

4.  To date, the Trustee has received 16,519 customer claims.  To date, the Trustee has determined 16,479 of those claims.  The Trustee has allowed 2,625 claims and committed to pay approximately $842,850,652.98 million in funds advanced to him by SIPC.  To date, the allowed claims total $16.892 billion. The Trustee denied 2,696 claims by customers who had accounts with BLMIS and 10,732 claims purporting to be customer claims but were in fact claims filed on behalf of third parties or indirect investors who had no account at BLMIS. Twelve other claims were filed that asserted no claim.  Another 414 claims have been withdrawn.

5. Forty claims (relating to 30 accounts)[2] are currently categorized as "deemed determined," meaning that the Trustee has instituted litigation against those claimants.

6. To date, the Trustee has received 428 timely and 22 untimely filed secured priority and unsecured non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 450 claims, 95 are general creditor claims and 49 are broker-dealer claims, which together total approximately $265 million of the $1.7 billion.

7. 1,887 docketed objections have been filed to the Trustee's claims determinations relating to 3,444 claims, which will be noticed for hearing as necessary. These 1,887 objections relate to 834 BLMIS accounts. 1,332 of the 1,887 docketed objections have been fully resolved. 555 objections are still subject to court review.

---

[2] This includes one net winner account (1 claim) that will not be eligible to participate in the Trustee's interim distributions.

### Recoveries by the Trustee

8.      The Trustee previously filed eight motions seeking entry of an order approving allocations of property to the fund of customer property (the "Customer Fund") and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $768.551 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $5.585 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $781.692 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $525.752 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[3] | $453.032 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[4] | $1.358 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $213.815 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $282.794 million | 1.729% | 14662 | 14836 |

9.      The amounts previously distributed as outlined in each of the First through Eighth Allocation Motions change as additional accounts are determined. Below is a summary of the amounts allocated and distributed:

---

[3] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[4] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

4

| No. | Amount Allocated | Reserve From Previous Allocations[5] | Funds Received After Eighth Interim Dist Used for Springing Claims | Amount Available for Distribution | Allocation for Allowed Claims[6] | Allocation for Deemed Determined Claims[7] | SIPC Subrogation | Other Reserves[8] |
|---|---|---|---|---|---|---|---|---|
| 1 | $2.618 billion | N/A | $44.995 million | $2.663 billion | $768.551 million | $114.109 million | $8.802 million | $1.772 billion |
| 2 | $5.501 billion | $1.772 billion | $328.083 million | $7.601 billion | $5.585 billion | $832.038 million | $82.678 million | $1.101 billion |
| 3 | $1.198 billion | $1.101 billion | $46.158 million | $2.345 billion | $781.692 million | $117.060 million | $15.762 million | $1.430 billion |
| 4 | $477.504 million | $1.430 billion | $31.091 million | $1.939 billion | $525.752 million | $78.850 million | $11.402 million | $1.323 billion |
| 5 | $756.538 million[9] | $1.323 billion | $26.819 million | $2.106 billion | $453.032 million | $68.014 million | $10.305 million | $1.575 billion |
| 6 | $345.472 million[10] | $1.575 billion | $80.779 million | $2.001 billion | $1.358 billion | $204.861 million | $37.316 million | $400.885 million |
| 7 | $247.013 million | $400.885 million | $12.759 million | $660.657 million | $213.815 million | $32.358 million | $6.621 million | $407.863 million |
| 8 | $342.322 million | $407.863 million | $16.905 million | $767.090 million | $282.794 million | $42.871 million | $9.262 million | $432.162 million |

10. The Trustee has recovered approximately $1,302,865,670.54 since the Eighth Allocation and Eighth Interim Distribution as a result of litigation and pre-litigation settlements, interest income, and other miscellaneous recoveries. Therefore, the Trustee seeks approval to allocate the full amount of these recoveries to the Customer Fund.

---

[5] Reserve from Previous Allocations represents amounts that were reserved in prior allocations.
[6] Allocation for Allowed Claims represents the amount allocated for claims that have been allowed.
[7] Allocation for Deemed Determined Claims represents amounts allocated and reserved for claims that are currently in litigation with the Trustee.
[8] Other Reserves represents all funds that are reserved for various issues.
[9] The total amount allocated in the Fifth Allocation Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.
[10] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages reserve.

11. The most significant settlement reached since the Eighth Allocation Motion was Thema International, discussed below.

12. On October 19, 2017 this Court approved an approximately $687 million settlement between the Trustee and Thema International Fund plc ("Thema International"). *Picard v. HSBC Bank plc, et al.*, Adv. Pro. No. 09-01364 (SMB) (ECF No. 478). The Trustee allowed the claim of Thema International upon receipt of the payment.

13. As reflected in the table in Paragraph 9, the amount reserved through the Eighth Interim Distribution is $432,162,309.97. This previously reserved amount, plus the $1,302,865,670.54 that the Trustee seeks to allocate in this Motion, less the $587,589,612.78 in aggregate catch-up payments from post-eighth interim distribution recoveries, constitutes the total amount available for distribution. Therefore, the total amount available for the Ninth Interim Distribution will be $1,147,438,367.73. Of this amount, $252,859,897.40 must be held in reserve for the non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements, leaving a total of $894,578,470.33 available for distribution.

14. The Trustee will maintain a general reserve of $200,000,000.00. Thus, the amount available for the Ninth Interim Distribution will be $694,578,470.33.

15. The table below summarizes this calculation.

6

| Category | Amount |
|---|---|
| **SIPC 17 Receipts (November 30, 2017)** | $12,789,132,270.35 |
| **Total Recoveries** | **$12,789,132,270.35** |
| First Through Eighth Interim Distribution Deductions | |
|    Allowed Accounts | $9,969,384,104.91 |
|    Reserved For Deemed Determined Accounts | $1,490,160,611.97 |
|    SIPC Subrogation | $182,149,185.74 |
| **Amount Available for Ninth Interim Distribution** | **$1,147,438,367.73** |
| Current Reserves | |
|    General Reserve | $200,000,000.00 |
|    Settlements containing the net equity clause, as well as certain other settlements | $252,859,897.40 |
| **Amount Available for Ninth Interim Distribution After Reserves** | **$694,578,470.33** |

16.     Of the $694,578,470.33 numerator, $584,490,208.99 will be distributed as part of the Ninth Interim Distribution to allowed accounts, and SIPC subrogation for allowed accounts in the amount of $21,053,129.31[11] will be released to SIPC. For deemed determined accounts, $88,891,906.47 will be reserved.

### The Net Investment Method Denominator

17.     The Trustee's Net Investment Method Denominator is the allowed amount of all accounts that have an allowed claim plus the net cash balance for all accounts into which more funds were deposited than withdrawn for which a claim has been filed, but not yet allowed. As of December 18, 2017, the Trustee's Net Investment Method denominator is $19,371,183,569.17. This number is subject to change as additional accounts are determined.

---

[11] An additional $21,686.52 of SIPC subrogation associated with the Ninth Interim Distribution for accounts that have not returned the necessary paperwork required to receive their SIPC advance will be held in reserve.

### Interim Calculation of *Pro Rata* Share
### Distribution of Customer Fund

18.     As set forth above, the total amount available for the Ninth Interim Distribution will be $1,147,438,367.73. Of that amount, $694,578,470.33 is available for distribution (the "Net Customer Fund"). The difference between those amounts—$452,859,897.40—represents the general reserve and reserves related to the net equity clause, as well as certain other settlements.

19.     The Denominator is $19,371,183,569.17. To determine the percentage of each allowed customer net equity claim that can be satisfied from the Customer Fund, the Net Customer Fund is divided by the Denominator, resulting in the following percentage:

$$\frac{\$694{,}578{,}470.33 \ \text{(Net Customer Fund)}}{\$19{,}371{,}183{,}569.17 \ \text{(Denominator)}} = 3.585\%$$

20.     A total of 926 accounts will receive a distribution of approximately 3.585% of their net equity claims, unless the account becomes fully satisfied. Of these 926 accounts (relating to 1,076 claims), 47 accounts (relating to 56 claims) will become fully satisfied, bringing the total of fully satisfied account holders to 1,386 (all accounts with a net equity of up to $1,375,000.00). 879 accounts will remain partially satisfied and will be entitled to participate in future distributions.

21.     An additional 29 accounts[12] (relating to 39 claims) that are currently "deemed determined" could receive a distribution if and when the status of their claims moves from "deemed determined" to allowed. Fourteen of the 29 accounts would be fully satisfied by the SIPC advance. The remaining 15 accounts would receive both a SIPC advance and a distribution

---

[12] This does not include one net winner account (1 claim) that will not be eligible to participate in the Trustee's interim distributions.

in accordance with the Trustee's Motion and his earlier distribution motions. Two of the remaining 15 accounts would be fully satisfied by the First through Ninth Interim Distributions.

22. Upon approval of the Motion, each customer's ratable share of the Net Customer Fund should be no less than 63.683% of the customer's net equity claim, which includes the proposed 3.585% customers will receive upon the approval of the Ninth Allocation and Ninth Interim Distribution, the 4.602% customers received subject to the First Allocation and First Interim Distribution, the 33.556% customers received subject to the Second Allocation and Second Interim Distribution, the 4.721% customers received subject to the Third Allocation and Third Interim Distribution, the 3.180% customers received subject to the Fourth Allocation and Fourth Interim Distribution, the 2.743% customers received subject to the Fifth Allocation and Fifth Interim Distribution, the 8.262% customers received subject to the Sixth Allocation and Sixth Interim Distribution, the 1.305% customers received subject to the Seventh Allocation and Seventh Interim Distribution, and the 1.729% customers received subject to the Eighth Allocation and Eighth Interim Distribution[13]

By: */s/ Vineet Sehgal*
Vineet Sehgal

City of New York
State of New York

Subscribed and sworn to me (or affirmed) before me, Joann Johnson, Notary Public, on this 18th day of December, 2017 by Vineet Sehgal, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

*/s/ Joann Johnson*
Joanna Johnson, Notary Public
Qualified in New York
*Commission Expires: 7/2018*

---

[13] Each customer's ratable share may be less than 63.683% for those BLMIS accounts that are fully satisfied.