**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04946 (SMB) |
| v. | |
| STEPHEN R. GOLDENBERG, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW OF THE**
**SECURITIES INVESTOR PROTECTION CORPORATION**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

SECURITIES INVESTOR PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone:  (202) 371-8300
JOSEPHINE WANG
General Counsel
KEVIN H. BELL
Senior Associate General Counsel for Dispute Resolution
NATHANAEL S. KELLEY
Assistant General Counsel

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................... ii

SUMMARY OF ARGUMENT .....................................................................1

ARGUMENT .............................................................................................3

I.   DEFENDANT MISINTERPRETS THE *546(e) DECISION* ...................................3

II.  THE MANDATE OF THE *546(e) DECISION* IS IRRELEVANT
     TO THE ISSUES AT HAND ...................................................................5

III. THE DEFENDANT IS FORECLOSED FROM RE-LITIGATING
     ISSUES THAT HAVE BEEN DECIDED IN THIS SIPA LIQUIDATION
     PROCEEDING WHICH ARE LAW OF THE CASE .........................................6

     A.   The Defendant's Participation in *Greiff*.......................................7

     B.   The "Mandate" of the District Court ...........................................9

IV.  THE *GREIFF*, *ANTECEDENT DEBT*, AND *COHEN* DECISIONS
     ARE APPLICABLE AND VALID PRECEDENTS.............................................11

V.   THE DEFENDANT ERRONEOUSLY ARGUES THAT THE
     TRUSTEE'S AVOIDANCE POWER ARISES ONLY UNDER
     BANKRUPTCY CODE PROVISIONS AND THAT PONZI
     TERMINOLOGY IS MEANINGLESS .......................................................12

VI.  THE TRUSTEE'S CLAIMS PROPERLY SEEK TO AVOID
     TRANSFERS MADE WITHIN SECTION 548(a)(1)'s TWO-
     YEAR LOOK-BACK PERIOD WHILE CALCULATING
     VALUE TO THE ESTATE BASED UPON TRANSACTIONS
     OVER THE LIFE OF THE ACCOUNT .....................................................15

CONCLUSION...........................................................................................16

i

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Andrews v. Modell*, 636 F. Supp. 2d 213 (S.D.N.Y. 2008) ..................................................... 10-11

*APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc.*,
   779 F. Supp. 2d 358 (S.D.N.Y. 2011)........................................................................... 9-10

*In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229
   (2d Cir. 2011), *reh'g and reh'g en banc den.* (2d Cir. Nov. 08, 2011),
   *cert. dismissed*, 566 U.S. 1032 (2012), and *cert. den.*, 567 U.S. 934 (2012) .....................4

*Burrell v. U.S.*, 467 F.3d 160 (2d Cir. 2006), *cert. den.*, 549 U.S. 1344 (2007)...........................10

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
   56 F.3d 359 (2d Cir. 1995)..........................................................................................10

*In re Chicago Partnership Bd., Inc.*, 236 B.R. 249 (Bankr. N.D. Ill. 1999) .................................13

*In re Crysen/Montenay Energy Co.*, 226 F.3d 160 (2d Cir. 2000),
   *cert. den.*, 532 U.S. 920 (2001)....................................................................................6

*In re Government Secs. Corp.*, 111 B.R. 1007 (S.D. Fla. 1990),
   *aff'd*, 972 F.2d 328 (11th Cir. 1992) .................................................................................13

*Lucente v. Int'l Bus. Machs. Corp.*,
   262 F. Supp. 2d 109 (S.D.N.Y. 2003)...............................................................................10

*Nat'l Union Fire Ins. Co. v. Camp (In re Government Securities Corp.)*,
   972 F.2d 328 (11th Cir. 1992), *cert. den.*, 507 U.S. 952 (1993)........................................14

*Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296
   (Bankr. S.D.N.Y. April 25, 2016).......................................................................4, 11, 12, 15

*Picard v. Cohen*, Case No. 16-cv-5513-LTS (S.D.N.Y. Feb. 24, 2017) ..................................3, 11

*Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715
   (S.D.N.Y. 2012), *aff'd, sub nom., Picard v. Ida Fishman Revocable Trust
   (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den.*, __ U.S. __,
   135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ........................................3, 5, 6, 7, 8, 9, 11, 14

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
   773 F.3d 411 (2d Cir. 2014), *cert.den.*, __U.S.__,
   135 S. Ct. 2858 and  135 S. Ct. 2859 (2015) ........................................................3, 4, 5, 9, 11

# TABLE OF AUTHORITIES

__CASES__:                                                                    __PAGE__

*Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,
    697 F. App'x 708 (2d Cir. 2017) ..................................................................4, 5

*SIPC v. BLMIS,* 499 B.R. 416 (S.D.N.Y. 2013),
    *certif. for interlocutory appeal den.*,
    987 F. Supp. 2d 309 (S.D.N.Y. 2013)....................................................3, 6, 7, 9, 11, 12, 15

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 531 B.R. 439
    (Bankr. S.D.N.Y. 2015) ................................................................ 6, 9, 15-16

*SIPC v. BLMIS,* 987 F.Supp. 2d 309 S.D.N.Y. 2013) ....................................................6

*SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191 (2d Cir. 1974)....................................13

*U.S. v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001)....................................................10

*U.S. v. Bryser*, 95 F.3d 182 (2d Cir. 1996), *cert. den. sub nom.*
    *DeGerolamo v. United States*, 520 U.S. 1129 (1997)....................................10


__STATUTES AND RULES__:

Securities Investor Protection Act, as amended, 15 U.S.C. §

78aaa ....................................................................................................................2
78fff(b)..............................................................................................................12
78fff-2(c)(3) ......................................................................................................13

Securities Exchange Act of 1934, 15 U.S.C.A. §

78cc(b) ................................................................................................................7

United States Bankruptcy Code, 11 U.S.C. §

544....................................................................................................................1
545....................................................................................................................1
546(e) ...................................................................................................1, 2, 4, 5, 8
547....................................................................................................................1
548(a) ................................................................................................................3
548(a)(1) ..........................................................................................................15
548(a)(1)(A).............................................................................................1, 2, 5
548(a)(1)(B) ......................................................................................................1
548(b) ................................................................................................................1

# TABLE OF AUTHORITIES

**STATUTES AND RULES**:                                                    **PAGE**

United States Bankruptcy Code, 11 U.S.C. §

548(c) ..............................................................................................................12, 15
548(d)(2)(A)................................................................................................................2

28 U.S.C. §

1292(b)........................................................................................................................6

Fed. R. Civ. Pro.

54(b) ...........................................................................................................................8

**TREATISES:**

6 *Collier on Bankruptcy*, §749.02[1][a]
    (Alan N. Resnick &  Henry J. Sommer eds., 16th ed.)......................................................13

18 *Moore's Federal Practice* § 134.01[1] (Matthew Bender 3d Ed.) ............................................9

*Black's Law Dictionary* (9th Ed. 2009) ...........................................................................9

## SUMMARY OF ARGUMENT

In his November 16, 2017 Memorandum of Law,[1] the Defendant argues that his transactions come within the plain meaning of terms used in Section 546(e) of the Bankruptcy Code, 11 U.S.C. § 546(e). He claims that he had securities contracts with Bernard L. Madoff Investment Securities, LLC ("BLMIS" or the "Debtor"). He asserts that the payments of fictitious profits that he received were "settlement payments." But even assuming, *arguendo*, that his transactions could be brought within the meaning of terms used in Section 546(e), his contention that this is somehow dispositive of the instant cases is wrong because Section 546(e) does not give him the relief that he seeks. Section 546(e) limits avoidance actions, but not if avoidance is under Section 548(a)(1)(A).

In relevant part, Section 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title [Title 11], the trustee may not avoid a transfer that is a … settlement payment … made by or to … a … stockbroker … in connection with a securities contract …, *except under section 548(a)(1)(A) of this title.*

11 U.S.C. § 546(e) (emphasis added). Whether or not his transactions were made in connection with securities contracts, and whether or not the payment was a settlement payment, are beside the point. The actions at hand are under Section 548(a)(1)(A), and Section 546(e), by its express terms, presents no bar. A transfer of a settlement payment by a stockbroker in connection with a securities contract *can* be avoided under Section 548(a)(1)(A).

---

[1] Goldenberg's Memorandum of Law In Opposition to Trustee's Motion for Summary Judgment, filed on November 16, 2017, in Adv. Pro. No. 10-04946 (Doc. No. 65) referred to herein as "Def. 11/16 Mem." The Defendant repeats and explicitly incorporates the arguments raised in summary judgment briefing by the defendants in *Picard v. South Ferry Building Co.*, Adv. Pro. No. 10-04488 (SMB). *See* Def. 11/16 Mem. at 40, n. 26. As described below, the defendants in both proceedings have largely rehashed arguments considered and rejected by this Court, the District Court, and the Second Circuit. The Defendant's arguments, like those in *South Ferry*, should once again be rejected.

Nevertheless, the Defendant ignores the legislative mandate under Section 546(e) and instead extrapolates from it in an effort to expand the safe harbor. Under his interpretation, a broker's settlement payment to a customer in connection with a securities contract must mean that the payment "discharged legally enforceable obligations owed by BLMIS to customers at the time of the transfers." Def. 11/16 Mem. at 10. In his view, this amounts to "value" under Section 548(c) of Title 11, which is a defense to a suit under Section 548(a)(1)(A). If correct, the Defendant's interpretation automatically brings avoidance actions under Section 548(a)(1)(A) for securities-related transfers within the safe harbor of Section 546(e), even though specifically excluded by Congress.

Of course, the leap of faith that the Defendant erroneously asks this Court to make is that settlement payments necessarily equate with "value." "Value," as used in Section 548(c) of Title 11, is not defined as a "settlement payment," but in relevant part, under Section 548(d)(2)(A), as a payment on account of a present or antecedent debt. As elaborated below, the fictitious account statements issued to the Defendant created no obligation by the Debtor to pay the Defendant profits that a) were imaginary; and therefore, b) were not owed to them. Because the Debtor did not owe the Defendant fictitious profits, there was no debt satisfied by their payment, and therefore, no "value."

The other grounds asserted by the Defendant also have no merit. No securities or other law preserves the Defendant tort claims allowing the Defendant to be placed ahead of customers in a liquidation proceeding under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"). Even assuming, *arguendo*, that Defendant properly could assert such a claim, his status would be as a general creditor, and his claim would be satisfied, if at all, only *after* customer claims, and from the general estate, if any. By the same token, the two-year reach back

2

period in Section 548(a) of Title 11 has no place in the calculation of value. That calculation proceeds under Section 548(c) which has no time limit.

## ARGUMENT

## I.    DEFENDANT MISINTERPRETS THE *546(e) DECISION*[2]

Defendant's assertion that the Trustee needed to avoid "obligations" to the Defendant before the Trustee could avoid the transfers is based on a faulty premise, that is, that the Debtor was required to pay the Defendant fictitious profits in the first place. This premise already has been rejected repeatedly in this liquidation proceeding by the District Court for this District ("District Court") and followed by this Bankruptcy Court. As the District Court held, the payment of fictitious profits in a Ponzi scheme does not satisfy an antecedent debt and provides no value to the Debtor. The District Court based its conclusion on the uniformly-held decisions of federal Courts of Appeals to consider the question. Moreover, the District Court reached the same conclusion not once, not twice, but thrice in this liquidation proceeding. *See Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715, 725 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den.*, __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015); *SIPC v. BLMIS*, 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"), *certif. for interlocutory appeal den.*, 987 F. Supp. 2d 309 (S.D.N.Y. 2013); and *Picard v. Cohen,* Case No. 16-cv-5513-LTS (S.D.N.Y. Feb. 24, 2017). The District Court's decisions in this respect were not only broadly supported and certain, but were further buttressed by their consistency with the position of the Second Circuit. Twice, both before and after issuance of the *546(e) Decision*, the Second Circuit declined to treat the Madoff

---

[2] *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014), *cert. den.*, __ U.S. __, 135 S. Ct. 2858 and 135 S. Ct. 2859 (2015) ("*546(e) Decision*")

"arbitrarily assigned paper profits as real" or to give "legal effect to Madoff's machinations."

*Sagor v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 697 F. App'x 708, 712 (2d Cir. 2017)

("*Sagor*"); *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229, 235 (2d Cir. 2011),

*reh'g and reh'g en banc den*. (2d Cir. Nov. 8, 2011), *cert. dismissed*, 566 U.S. 1032 (2012), and

*cert. den*., 567 U.S. 934 (2012).

In spite of this, Defendant seeks to advance his position by misreading the application

and scope of Section 546(e) in the Second Circuit's *546(e) Decision*.  Taking an overly broad

and incorrect view of that decision, he argues that the Trustee and this Bankruptcy Court "are

precluded by this decision from taking the position that the value defense in the Bankruptcy

Code does not operate in a SIPA case to permit Defendant to retain payments on account of an

unavoided or unavoidable obligation of the debtor."  Def. 11/16 Mem. at 21.  As this Bankruptcy

Court already has acknowledged,[3]  however, the Second Circuit did not decide in the *546(e)*

*Decision* that the fictitious account statements were enforceable according to their terms as the

Defendant posits.  For the Second Circuit to have done so would have created a conflict between

the *546(e) Decision* and the Second Circuit's earlier and later decisions in which it declined to

give effect to the fictitious account statements or the "machinations" of Bernard Madoff.

---

[3] In *Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016), in
pertinent part, this Court observed as follows:

> According to Cohen, *Ida Fishman* also ruled that account
> statements created an enforceable legal obligation, the Trustee
> never avoided the obligation and its satisfaction constituted value
> for the withdrawal of fictitious profits. …  However, *Ida Fishman*
> did not hold that BLMIS' fictitious statements created enforceable
> obligations.

2016 WL 1695296, at *12 n.17.

4

Instead, the Second Circuit concluded in the *546(e) Decision* that the customer account documents reasonably could be construed as "securities contracts," and the payments, as reflected on the account statements, reasonably could be construed as "settlement payments." To that extent, the Second Circuit determined that the transactions could be deemed to come within the plain meaning of Section 546(e) as involving transfers that were safe-harbored from avoidance, except as provided for under Section 548(a)(1)(A). The Second Circuit did not in the *546(e) Decision*, as the Defendant argues, take the further step of opining on whether the account statements were or were not enforceable. *See* Def. 11/16 Mem. at 8-9, 10, 19-22, 28-29. The issue was not presented, and there was no need for the Second Circuit to do so. In any event, the Second Circuit already had ruled on the question when presented, and later reaffirmed its position after the *546(e) Decision* was issued. *See Sagor,* 697 F. App'x 708.

## II.    THE MANDATE OF THE *546(e) DECISION* IS IRRELEVANT TO THE ISSUES AT HAND

The Defendant contends that various precedents do not apply to this adversary proceeding because they are inconsistent with the mandate of the *546(e) Decision*. His argument is no more than a red herring and a distraction since the argument stems from his incorrect interpretation of the *546(e) Decision*. As discussed above, in the *546(e) Decision,* the Second Circuit applied Section 546(e) according to its plain terms. It did not hold, as the Defendant maintains, that Section 548(a)(1)(A) avoidance suits are safe-harbored, nor did it opine on the enforceability or lack thereof of the account statements showing imaginary trades and invented profits. It affirmed the judgment in *Greiff* in which the District Court expressly rejected every argument again made by the Defendant in this proceeding. At bottom, the mandate of the Court in the *546(e) Decision* simply has no bearing on the issues at hand.

### III.    THE DEFENDANT IS FORECLOSED FROM RE-LITIGATING ISSUES THAT HAVE BEEN DECIDED IN THIS SIPA LIQUIDATION PROCEEDING WHICH ARE LAW OF THE CASE

All of the questions now raised by the Defendant were decided by the District Court in its

*Greiff* and *Antecedent Debt Decisions.*  As this Bankruptcy Court observed,

> Judge Rakoff's extensive consideration of the antecedent debt/value issue would normally foreclose further argument in this Court.  Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015).  Under the law of the case doctrine, "if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *In re Crysen/Montenay Energy Co*., 226 F.3d 160, 165 n.5 (2d Cir. 2000), *cert. den*., 532 U.S. 920 (2001).  The Defendant joined in the withdrawal of the reference of the antecedent debt/value issue, participated in *Greiff*, and has had his day in court.  Judge Rakoff's subsequent *Antecedent Debt Decision* further confirmed the rejection of Defendant's arguments.

Having ruled on the issues before it, the District Court ordered that the enumerated adversary proceedings be remanded to the Bankruptcy Court for further proceedings *consistent with the Court's Opinion and Order.*  Following issuance of that Decision, the defendants in the *Antecedent Debt Decision* cases moved to amend the Court's Opinion and Order to include certification of the matter for immediate review by the Court of Appeals pursuant to 28 U.S.C. § 1292(b).  The District Court denied the motion. *SIPC v. BLMIS,* 987 F. Supp. 2d 309, 311 (S.D.N.Y. 2013).

A.        **The Defendant's Participation in** *Greiff*

The holdings in the *Antecedent Debt Decision,* which built on the Court's opinion in *Greiff,* are applicable to the Defendant's arguments in the case at hand. The *Antecedent Debt Decision* concluded that claims against the Debtor's general estate were not "value" for purposes of Section 548(c) of Title 11, and the deduction of total withdrawals from total deposits was the appropriate calculus of fraudulent transfer liability. 499 B.R. at 430. The District Court followed its holding in *Greiff* in the *Antecedent Debt Decision* and rejected assertions that federal and state law claims (including, among others, under Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), and New York state claims for fraud and breach of fiduciary duty) allegedly held by the defendants constituted "antecedent debt." 499 B.R. at 421-422; 421 n.4; and 422 n.6.

*Greiff* itself applied directly to the Defendant inasmuch as the Defendant participated in that matter. On June 29, 2011, Defendant filed a joinder to the motion to withdraw the reference ("MTWR") by Gerald Blumenthal in his adversary proceeding – "Defendant Joinder In Stephen Goldenberg's Motion for Mandatory withdrawal of the Reference" and "Defendant Stephen Goldenberg's Joinder in Gerald Blumenthal's Second Motion to Withdraw The Reference." ("Joinders").[4] In the Joinders, Defendant asserted that he joined in the motion and all papers submitted therewith filed in *Picard v. Blumenthal,* Adv. Pro. No. 10-04582.

---

[4] See Defendant Stephen Goldenberg's Joinder In Gerald Blumenthal's Motion For Mandatory Withdrawal of the Reference, *Picard v. Stephen Goldenberg,* Adv. Pro. No. 10-04946 (SMB) (Bankr. S.D.N.Y. June 29, 2011), ECF No. 9; Defendant's Motion For Mandatory Withdrawal of the Reference, *Picard v. Gerald Blumenthal,* Adv. Pro. No. 10-04582 (SMB) (Bankr. S.D.N.Y. June 23, 2011), ECF Nos. 15-17.

On May 16, 2012, the District Court filed an Order certifying its *Greiff* decision for interlocutory review pursuant to Fed. R. Civ. Pro. 54(b).[5] The Order applied to three categories of avoidance actions brought by the Trustee. May 16 Order at 5. These included 1) the adversary proceedings that were parties to the *Greiff* decision which the Court referred to as "Decided Actions" and were listed in Exhibit A to the Order; 2) adversary proceedings withdrawn by the District Court as to which briefing and argument had been scheduled and suspended pending issuance of the decision in *Greiff* (the "Withdrawn 546(e) Actions" listed in Exhibit B to the Order); and 3) adversary proceedings as to which the Court had not yet determined pending motions for withdrawal of the reference ("Eligible Actions" listed in Exhibit C to the Order). May 16 Order at 1, 3.

For purposes of the certification, the Court consolidated the Eligible Actions, the Withdrawn 546(e) Actions, and the Decided Actions under the caption of *Picard v. Ida Fishman Revocable Trust*, No. 11-cv-7603 (JSR) (S.D.N.Y.) ("*Ida Fishman*"), and entered a single Rule 54(b) judgment in the action which would apply to all three categories of adversary proceedings. *Id*. at 7-8. Unless a party opted out, a notice of appeal of the *Greiff*, now *Ida Fishman*, decision would be deemed entered in each of the three categories. Any party opting out would have 14 days from the date of the Order within which to notify the Trustee and file a notice with the Court. Any party not opting out would "be deemed to have preserved and made all arguments relating to the application and effect of Section 546(e) of the Bankruptcy Code that were raised in the motions to dismiss in the Decided Actions." May 16 Order at 9-10.

---

[5] Consent Order Granting Certification Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing Certain Claims and Actions, filed on May 16, 2012 in *In re Madoff Securities*, Case No. 12-MC-0115 (JSR) (S.D.N.Y.), Doc. No. 109 ("May 16 Order").

Listed among the Decided Actions was the instant Goldenberg adversary proceeding. *See* Exhibit A to May 16 Order, Doc. No. 109 at 11 (item no. 9). The Defendant did not opt out of the procedures set forth in the May 16 Order and therefore adopted all arguments made in *Greiff* and participated in the subsequent appeal which culminated in the *546(e) Decision*.

The Defendant fully participated in *Greiff* and the District Court's decisions in *Greiff* and *Antecedent Debt,* which reaffirmed the District Court's prior *Greiff* decision, are law of the case as to which the Defendant is bound. The Defendant moreover is constrained by the doctrine of *stare decisis*. *Stare decisis* is the "doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." *Stare Decisis*, *Black's Law Dictionary* (9th ed. 2009). *See* 18 *Moore's Federal Practice* § 134.01[1] (Matthew Bender 3d Ed.) ("the doctrine compels lower courts to follow the decisions of higher courts on questions of law."). As a matter of law of the case and *stare decisis*, the Defendant cannot re-litigate the issues because the issues already have been decided.

## B.    The "Mandate" of the District Court

It bears mention that in commenting on the District Court's return of proceedings "for further proceedings consistent with this Opinion and Order," this Bankruptcy Court observed that the District Court's directive in the *Antecedent Debt Decision* "sounds like a mandate." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015).

The mandate rule has been described as follows:

> The mandate rule provides: "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." … The rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." To determine whether an issue

> may be reconsidered on remand, a district court "should look to both the specific dictates of the remand order as well as the broader spirit of the mandate," … and it "must always look to the opinion to interpret the mandate."    [citations omitted and emphasis in original].

*APL Co. Pte. Ltd v. Blue Water Shipping U.S. Inc.*, 779 F. Supp. 2d 358, 366 (S.D.N.Y. 2011).

In sum, on remand, the trial court in the case must follow the decision of the appellate court as to any issue decided by the appellate court in the case. *See U.S. v. Bryser*, 95 F.3d 182, 185 (2d Cir. 1996), *cert. den. sub nom DeGerolamo v. United States*, 520 U.S. 1129 (1997); *Burrell v. U.S.*, 467 F.3d 160, 165 (2d Cir. 2006) (under the mandate rule, the district court must follow the decision of the appellate court as to issues explicitly decided on appeal), *cert. den.*, 549 U.S. 1344 (2007); *Lucente v. Int'l Bus. Machs. Corp.,* 262 F. Supp. 2d 109, 112 (S.D.N.Y. 2003) (mandate rule "'describes the duty of the district court on remand' upon receipt of the mandate, which is the appellate court's direction to the trial court.  [citations omitted]")

To the extent that the District Court's directive may be viewed as a mandate, the Defendant would cause this Court to violate the mandate by departing from the District Court's rulings.  The Second Circuit has held that "[t]he mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." [citation omitted]."  *U.S. v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  Having already litigated decided issues, the Defendant would appear to be collaterally estopped from seeking to relitigate them.  Collateral estoppel "or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment."  *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *but see Andrews v. Modell*, 636 F. Supp. 2d

213, 218 (S.D.N.Y. 2008) ("There is a considerable amount of disagreement as to whether remand orders … may trigger collateral estoppel in subsequent proceedings.").

### IV.    THE *GREIFF*, *ANTECEDENT DEBT*, AND *COHEN* DECISIONS ARE APPLICABLE AND VALID PRECEDENTS

The Defendant incorrectly asserts that the decision of this Bankruptcy Court in *Picard v. Cohen (SIPC v. BLMIS)*, 2016 WL 1695296 (Bankr. S.D.N.Y. April 25, 2016) ("*Cohen*"), which is adverse to the Defendant's position, is irrelevant to the question of whether the Defendant provided value in exchange for the payment of fictitious profits.  *See* Def. 11/16 Mem. at 17-18. In *Cohen*, this Court issued proposed findings and conclusions that were reviewed *de novo* and adopted by the District Court.  In doing so, the District Court described the Bankruptcy Court's decision as "well-reasoned and thorough."  *See* Memorandum Order Adopting Proposed Findings of Fact and Conclusions of Law (Doc. No. 24), in *Picard v. Cohen*, Case No. 16-cv-5513-LTS (S.D.N.Y. Feb. 24, 2017).  The Defendant maintains that this Bankruptcy Court should disregard its decision in *Cohen*, as well as the *Greiff* and *Antecedent Debt Decisions*, and the District Court's adoption of the proposed findings and conclusions in *Cohen*, because all of these decisions are "manifestly erroneous."  Def. 11/16 Mem. at 18.  He bases his assertion on the thin reed of the Defendant's misinterpretation of the *546(e) Decision,* contending that the foregoing precedent is inconsistent with the *546(e) Decision* and, under the mandate rule, is not to be followed.  As discussed above, the Defendant misreads the *546(e) Decision* and its mandate.  The *546(e) Decision* is irrelevant to the issues at hand since that Decision did not address the issues.  The issues *were* addressed by the District Court in its *Antecedent Debt Decision* which reaffirmed *Greiff,* which expressly binds the Defendant.

11

Nevertheless, should this Bankruptcy Court deem it appropriate for it to rule once again on the issues, in order for it to adopt the District Court's directive of "further proceedings consistent with this Opinion and Order," it should conclude, as did the District Court, that no value was provided under Section 548(c) in exchange for the payment of fictitious profit; that the subtraction of total deposits from total withdrawals is the correct calculus of liability; and that fictitious profit is the amount that exceeds principal. *See* 499 B.R. at 419, 421, 423, 425-26, 430.

As to the *Cohen* decision, rather than being inapplicable as the Defendant contends, the decision reinforces the correctness of the analysis of the issues at hand. Not one, but two Judges, of the same District Court have now reached the same conclusions on the issues presented.

## V.    THE DEFENDANT ERRONEOUSLY ARGUES THAT THE TRUSTEE'S AVOIDANCE POWER ARISES ONLY UNDER BANKRUPTCY CODE PROVISIONS AND THAT PONZI TERMINOLOGY IS MEANINGLESS

The Defendant also contends that the Trustee's power to avoid the instant transfers arises exclusively under provisions of the Bankruptcy Code and that the fact that the transfers occurred in order to perpetuate a Ponzi scheme is irrelevant. Def. 11/16 Mem. at 29-30. The Defendant is mistaken.

At least two provisions of SIPA are central to this case. Under SIPA Section 78fff(b), the SIPA proceeding is to be 1) "conducted in accordance with," and 2) "as though it were being conducted" under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11, "[t]o the extent consistent with the provisions of this chapter." Under SIPA Section 78aaa, "this chapter" refers to SIPA. "Conducted in accordance with" the provisions of Title 11 means that the substantive provisions of the designated chapters of Title 11 apply to the proceeding. "As though it were being conducted" means that procedurally, the SIPA proceeding proceeds as if it were a Title 11 liquidation. The applicability of the Title 11 provisions is subject to the caveat of

consistency with SIPA.  A provision is inconsistent with SIPA if it "conflicts with an explicit provision" of SIPA or if its application "would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits." *SIPC v. Charisma Sec. Corp.*, 506 F.2d 1191, 1195 (2d Cir. 1974).  *See In re Chicago Partnership Bd., Inc.*, 236 B.R. 249, 260 (Bankr. N.D. Ill. 1999) ("To the extent that the provisions of the Bankruptcy Code conflict with the provisions of SIPA, SIPA shall control."); *In re Government Secs. Corp.*, 111 B.R. 1007, 1011 (S.D. Fla. 1990) ("it is difficult to imagine how application of [the Bankruptcy Code provision] could be deemed anything but consistent with SIPA, the purpose of which is to protect customers of securities brokerages"), *aff'd*, 972 F.2d 328 (11th Cir. 1992).

The other pertinent provision of SIPA is Section 78fff-2(c)(3) which expressly confers upon the SIPA trustee the right to avoid transfers of customer property and characterizes customer property as debtor property for avoidance purposes. While the Defendant tries to downplay the provision as a legal fiction that merely expends the property a trustee may recover, its overall purpose is grander: "to prevent one or more customers from depriving other customers of assets by keeping these assets out of the pool available for distribution to customers on a ratable basis." 6 *Collier on Bankruptcy*, ¶749.02[1][a] at 749-4 (Alan N. Resnick &  Henry J. Sommer eds., 16th ed.).

The aforementioned provisions of SIPA make the avoidance provisions of Title 11 applicable to the proceeding and therefore, are crucial components of the avoidance actions. Likewise contrary to the Defendant's position, the fact that a Ponzi scheme is at issue is meaningful and relevant.  Avoidance of transfers in a Ponzi scheme are resolved in a certain way in ordinary bankruptcy and such transfers in a SIPA proceeding must be resolved in the same manner so long as consistent with SIPA.  Indeed, the courts' rationale in bankruptcy cases takes

on heightened significance in a SIPA case.  The transfers that occurred are of other investors'
money.  To allow avoidance in ordinary bankruptcy but not in the SIPA case would
"substantially impede the fair and effective operation of SIPA without providing significant
countervailing benefits."  As the Eleventh Circuit commented in *Nat'l Union Fire Ins. Co. v.
Camp (In re Government Securities Corp.)*, 972 F.2d 328 (11th Cir. 1992), *cert. den.*, 507 U.S.
952 (1993):

> This argument is inapposite to the intent of SIPA.  The purpose of
> SIPA is to return to customers of brokerage firms their property or
> money.  15 U.S.C. § 78fff(a) provides that "[t]he purposes of a
> liquidation proceeding shall be … to deliver customer name
> securities to or on behalf of the customers of the debtor …; and …
> to distribute customer property and … otherwise satisfy net equity
> claims of customers…." Congress wanted more, not fewer, assets
> available for customers of brokerage firms in financial distress. It
> makes no sense to suggest that Congress intended that the SIPA
> trustee have less power than an ordinary bankruptcy trustee to
> gather assets into the debtor's estate.

972 F.2d at 331.

In this regard, the Defendant's contention that in the avoidance actions, the Defendant is
perceived as an investor in the Debtor or as a creditor as opposed to an equity investor is, as the
District Court noted, a "distinction without a difference."  *Greiff*, 476 B.R. at 726.  *See* Def.
11/16 Mem. at 32-34.  As the District Court observed, the Defendant did not bargain for a
definite return, but only for a "best efforts to try to generate a profit."  *Greiff*, 476 B.R. at 726.
To allow the Defendant who no longer has a "customer" claim to retain the fictitious profit
"would conflict with the priority system established under SIPA by equating net equity and
general creditor claims."  *Id.* at 727.

**VI.     THE TRUSTEE'S CLAIMS PROPERLY SEEK TO AVOID TRANSFERS
MADE WITHIN SECTION 548(a)(1)'s TWO-YEAR LOOK-BACK PERIOD
WHILE CALCULATING VALUE TO THE ESTATE BASED UPON
TRANSACTIONS OVER THE LIFE OF THE ACCOUNT**

Finally, the Defendant argues that the Trustee's calculation of Defendant's avoidance

liability violates Section 548(a)(1)'s two-year look-back period for avoiding actually fraudulent

transfers (the "Two-Year Period").  The Defendant asserts that the Trustee's calculation of value

to the estate under Section 548(c) necessarily violates Section 548(a)(1)'s time limits by ignoring

the face value of the fictitious statements generated outside of the Two-Year Period and netting

deposits and withdrawals over the life of the account.  The Trustee's calculation of liability,

however, is not—and does not require—a separate transfer or obligation avoidance under

Section 548(a)(1).

The Defendant's argument has been seen and rejected multiple times before in this

liquidation.  The Defendant should not be allowed to return to this Court on the same issues, time

and again, based on his most recently-conceived misguided and recast theory.  In the District

Court's *Antecedent Debt Decision*, multiple defendants asserted that the Trustee's calculation of

account value using deposits and withdrawals over the life of the account was improperly

"circumvent[ing] the limitation of the statutory reach-back period to indirectly avoid and recover

time-barred withdrawals . . . ." *SIPC v. BLMIS*, 499 B.R. at 427. The District Court responded

that the identification of voidable transactions during the Two-Year Period is separate from the

calculation of value to the estate under Section 548(c), which has no time limitation. *Id.*; *see also*

*Cohen*, 2016 WL 1695296, at *8 ("Bankruptcy Code § 548(c) is not an element of the Trustee's

avoiding powers; instead, it is an affirmative defense to an otherwise avoidable transfer.").

"Thus, there is no reason why a line should be drawn at the beginning of the [Two-Year Period]

in determining whether a transfer for value." 499 B.R. at 427; *see also Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 460 (Bankr. S.D.N.Y. 2015) ("[The Trustee] offsets all deposits and withdrawals during the life of the account, but he cannot recover more than the amount transferred during the two years preceding the filing date.").  Any calculation of the Defendant's net investment or whether a valid antecedent debt existed—and therefore whether value was provided for the transfer—requires an examination of the entire history of the debtor's relationship with the transferee in order to ensure, as closely as possible under the law, a *pro rata* distribution of customer property to all customers pursuant to SIPA.

## CONCLUSION

For the foregoing additional reasons, the Trustee's motion for summary judgment should be granted and the Defendant's motion should be denied.

<div style="margin-left:auto">

Respectfully submitted,

JOSEPHINE WANG
General Counsel


 _/s/Kevin H. Bell_____
KEVIN H. BELL
Senior Associate General Counsel
 For Dispute Resolution

NATHANAEL S. KELLEY
Assistant General Counsel

SECURITIES INVESTOR
  PROTECTION CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone: (202) 371-8300
Facsimile: (202) 223-1679
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org
E-mail: nkelley@sipc.org

</div>

Date:  December 18, 2017
Washington, D. C.