**Opposition Due: November 16, 2017**
**Replies Due:  December 18, 2017**

**Related ECF Nos. 60-66**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 10-04946 (SMB) |
| v. | |
| STEPHEN R. GOLDENBERG, | |
| Defendant. | |

## TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ........................................................................................................ 3

I.     DEFENDANT'S STRAINED READING OF THE SECTION 546(e)
       DECISION IS WITHOUT MERIT ....................................................... 3

       A.     Defendant Improperly Invokes The Mandate Rule ................................... 4

              1.     The Section 546(e) Decision Did Not Determine The
                     Enforceability Or Validity Of BLMIS Customers'
                     Securities Contracts And Settlement Payments ........................... 4

              2.     The Section 546(e) Decision Did Not Make Any Ruling
                     About Defendant's Value Defense ................................................. 7

II.    THE DISTRICT COURT'S DECISION IN *GREIFF* HAS *STARE
       DECISIS* EFFECT ON DEFENDANT'S AVOIDANCE ACTION .................... 8

       A.     The Rejection Of Defendant's Arguments Was Law of the Case
              Even Before The *Cohen Decision* ............................................................. 8

       B.     The District Court Addressed The Same Issues Now Raised Again
              By Defendant Before This Court ................................................................ 9

              1.     Defendant's Alleged Claims Under Federal Securities And
                     State Law Were Previously Considered And Rejected ............... 10

              2.     Trustee's Alleged Failure To Avoid Obligations Owed To
                     Defendant Was Also Considered And Rejected .......................... 11

              3.     Defendant's "At The Time Of Transfer" Value Defense Is
                     Another Rejected And Recycled Argument ................................. 12

              4.     Section 548(a) As A Purported Statute Of Repose
                     Prohibiting Avoidance of BLMIS's Obligations And Debts
                     Was Previously Rejected ............................................................. 13

              5.     Defendant's Allegations That The Trustee Improperly
                     Expanded His Bankruptcy Powers Are Unfounded .................... 15

       C.     Defendant Is Collaterally Estopped By Previous Decisions ................... 16

       D.     The Trustee Is Not Estopped By The *Cohen Decision* ........................... 17

# TABLE OF CONTENTS
## (continued)

**Page**

III.   BLMIS'S OPERATION AS A PONZI SCHEME IS BOTH LEGALLY
       SIGNIFICANT AND FATAL TO DEFENDANT'S ATTEMPTS TO
       RETAIN FICTITIOUS PROFITS ...................................................................... 18

       A.   The Ponzi Scheme Principals Governing This Case Are Universal
            And Endorsed By The District Court........................................................ 18

       B.   There Is No Basis To Treat Equity Investors And Contractual
            Customers Differently.............................................................................. 21

IV.    THE TRUSTEE'S NETTING METHOD AND VALUE
       CALCULATIONS ARE WHOLLY CONSISTENT WITH THE
       SECTION 548(a) REACH-BACK PERIOD........................................................ 22

            1.   The Trustee's Methodology Is Consistent With The Section
                 548(a) Reach-Back Period ............................................................. 23

            2.   The Trustee's Methodology Is Consistent With The U.S.
                 Supreme Court's *CalPERS* Decision ........................................... 26

CONCLUSION....................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
256 B.R. 664 (Bankr. S.D.N.Y. 2000) ..................................................................................20

*Ball v. A.O. Smith Corp.*,
451 F.3d 66 (2d Cir. 2006) ................................................................................................16

*In re Bayou Grp. LLC*,
396 B.R. 810 (Bankr. S.D.N.Y. 2008) ..............................................................................25

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011) ...........................................................................4, 11, 14, 20

*In re Bernard L. Madoff Inv. Sec. LLC*,
No. 16-413-BK(L), 697 F. App'x 708 (2d Cir. 2017) ..........................................4, 6

*In re Bernard L. Madoff Inv. Sec. LLC*,
No. 15 Civ. 1151 (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) ....................24, 25, 26

*California Public Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S.Ct. 2042 (2017) ..................................................................................................26, 27

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...........................................................................................................3

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*,
439 B.R. 284 (S.D.N.Y.2010) ........................................................................................3, 25

*Cunningham v. Brown*,
265 U.S. 1 (1924) ..............................................................................................................19

*Day v. Moscow*,
955 F.2d 807 (2d Cir. 1991) ...............................................................................................5

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ............................................................................................24

*Donell v. Mojtahedian*,
976 F.Supp.2d 1183 (C.D. Cal. 2013) ..........................................................................24, 25

*Eby v. Ashley*,
1 F.2d 971 (4th Cir. 1924) ................................................................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*,
    452 B.R. 391 (Bankr.S.D.N.Y.2011) ...............................................................3, 20

*In re Hechinger Inv. Co. of Del., Inc., v. Universal Forest Prods., Inc. (In re
    Hechinger Inc. Co. of Del., Inc.)*,
    489 F.3d 569 (3d Cir. 2007) ...................................................................................9

*In re Hedged-Inv. Assocs. Inc.*,
    84 F.3d 1286 (10th Cir. 1996) ..............................................................................25

*Kerman v. City of New York*,
    374 F.3d 93 (2d Cir. 2004)......................................................................................4

*Montana v. United States*,
    440 U.S. 147 (1979)..............................................................................................16

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..............................................................................................16

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
    25, 2016) ...................................................................................................... *passim*

*Picard v. Cohen*,
    550 B.R. 241 (Bankr. S.D.N.Y. 2016) ...................................................................9

*Picard v. Cohmad Secs. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr.S.D.N.Y.2011) ...............................................................3, 20

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014)..................................................................................18

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012)..................................................................... *passim*

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    721 F.3d 54 (2d Cir. 2013)....................................................................................12

*Randall v. Sorrell*,
    548 U.S. 230 (2006)................................................................................................9

*Schneider v. Barnard*,
    508 B.R. 533 (E.D.N.Y. 2014) ...............................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Scholes v. Lehman*,
   56 F.3d 750 (7th Cir. 1995) ...................................................................21

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard L. Madoff*),
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................. *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
   499 B.R. 416 (S.D.N.Y. 2013) ........................................................ *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
   773 F.3d 411 (2d Cir. 2014) ...........................................................3, 5, 6, 7

*Sender v. Nancy Elizabeth R. Heggland Family Trust* (*In re Hedged-Invs. Assocs. Inc.*),
   48 F.3d 470 (10th Cir. 1995) ..................................................................22

*Silverman v. Cullin* (*In re Agape World, Inc.*),
   633 F. App'x. 16 (2d Cir. Feb. 4, 2016) .......................................4, 8, 20

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................................16

*In re Teligent, Inc.*,
   380 B.R. 324 (Bankr. S.D.N.Y. 2008) .....................................................9

*United States v. Langley*,
   62 F.3d 602 (4th Cir. 1995) ...................................................................19

*United States v. Uccio*,
   940 F.2d 753 (2d Cir.1991) ......................................................................5

*Estate of Wood v. C.I.R.*,
   909 F.2d 1155 (8th Cir. 1990) ................................................................19

*Wyly v. Weiss*,
   697 F.3d 131 (2d Cir. 2012) ...................................................................16

**Statutes**

11 U.S.C.A. § 741(7)(A)(i) ...........................................................................6

11 U.S.C. § 546(e) ....................................................................................6, 7

15 U.S.C. § 78aaa–*lll* ...................................................................................1

## TABLE OF AUTHORITIES
### (continued)

<u>Page(s)</u>

Bankruptcy Code § 548(a)(1)(A) ...........................................................................................6, 7, 18

Bankruptcy Code § 548(c) ..................................................................................... *passim*

Bankruptcy Code § 550(a) ...........................................................................................18

Cal. Civ. Code sec. 3439.09(c) ......................................................................................24

**Rules**

Fed. R. Civ. P. 54(b) .....................................................................................................8

Federal Rule of Bankruptcy Procedure 9033 ...............................................................3

**Other Authorities**

*Black's Law Dictionary* 1443 (8th ed. 2004)...............................................................10

Irving H. Picard (the "Trustee"), trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the Chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of the Trustee's motion in the above-captioned adversary proceeding ("Avoidance Action") for summary judgment (the "Trustee's Motion"), on Count One of the Trustee's amended complaint to avoid and recover as fraudulent transfers the amounts BLMIS fraudulently transferred to defendant Stephen R. Goldenberg ("Defendant"). Summary judgment should be granted because the Trustee has established that the transfers at issue were intentionally fraudulent and Defendant has failed to establish that he provided value in exchange for the transfers. The facts underlying the Trustee's Motion are set forth in the Joint Statement of Undisputed Material Facts (the "Joint Statement")[1] submitted by the Trustee and Defendant (together, the "Parties"), and so ordered by this Court on August 16, 2017. (ECF No. 58).

## PRELIMINARY STATEMENT

Defendant's assertion that he is raising "important legal issues" that have not been decided before is belied by prior decisions and orders in this proceeding.[2] Defendant fails to acknowledge that the District Court previously withdrew the reference to the Bankruptcy Court and decided the same "important legal issues" that he now references. Indeed, Defendant was explicitly included as a joinder to a lead case's motion to withdraw,[3] which the District Court granted to decide on the merits, and the antecedent debt and value issues articulated therein. *See*

---

[1] A true and correct copy of the Joint Statement was attached as Exhibit A to the Declaration of Keith R. Murphy, dated October 2, 2017, in support of the Trustee's Motion. *See* ECF No. 62.

[2] Defendant's Memorandum of Law in Opposition to Trustee's Motion For Summary Judgment at 22, *Picard v. Goldenberg*, Adv. Pro. No. 10-04946 (SMB) (Bankr. S.D.N.Y. Nov. 16, 2017), ECF No. 65 (the "Opposition").

[3] Defendant was a participant to the *Greiff* decision, as he moved to withdraw the reference to the Bankruptcy Court by joining the Motion to Withdraw the Reference to the Bankruptcy Court that was filed in *Picard v. Blumenthal*, No. 11-cv-04293 (JSR) (S.D.N.Y. June 24, 2011), ECF Nos. 1-3. (*See* Trustee's Motion at 17, n.8)

*e.g.,* Order, *Picard v. Blumenthal*, No. 11 Civ. 04293 (JSR) (S.D.N.Y. Oct. 14, 2011), ECF No. 14; Memorandum Order, *In re Madoff Sec.*, No. 11 Civ. 04293 (JSR) (S.D.N.Y. Nov. 29, 2011), ECF No. 20.[4]  That Court specifically stated that "those transfers from Madoff Securities to defendants that exceeded the return of defendants' principal, *i.e.,* that constituted profits, were not "for value." *Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012).  A subsequent decision by the District Court reiterated the *Greiff* findings, stating that "a customer may only seek the protections of section 548(c) to the extent of investments of principal." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 499 B.R. 416, 426 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*").  Defendant further fails to mention that after the Avoidance Action was returned to this Court, Defendant was a participant and raised these same issues once again, in an omnibus motion to dismiss, and this Court once more concluded that "the payment of fictitious profits did not satisfy an antecedent debt or provide value within the meaning of Bankruptcy Code § 548(c) and (d)(2)(A)." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 531 B.R. 439, 470 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*").[5]  That should end the inquiry.

Instead, by recycling the same arguments—however reworded or repackaged—as pulled from prior briefings before this Court and the District Court, Defendant is trying to have yet another bite at the apple.  Defendant is estopped from doing so based on the law of the case.

Moreover, in an attempt to evade the straightforward precedents set forth by this Court and the District Court, Defendant has twisted the holdings of intervening decisions, including the

---

[4] For this Court's convenience, true and correct copies of the Order and Memorandum Order as filed with the District Court, are annexed hereto as Exhibits 1-2 to the Declaration of Keith R. Murphy, dated December 18, 2017 (the "Murphy Reply Declaration"), filed contemporaneously herewith.

[5] Defendant was subject to the *Omnibus Good Faith Decision. See e.g.,* Order Granting In Part And Denying In Part Defendants' Motions To Dismiss, at Appendix A at No. 5, *Picard v. Stephen R. Goldenberg,* Adv. Pro. No. 10-04946 (Bankr. S.D.N.Y. July 16, 2015), ECF No. 42.

*Section 546(e) Decision* (as hereinafter defined).[6] However, the authority upon which Defendant

relies does not further his cause. To the contrary, all relevant precedent continues to confirm that

Defendant is not entitled to profit from the fraud, and giving credence to his arguments would be

tantamount to validating the machinations of the fraudster, which courts within this Circuit have

unequivocally refused to do on multiple occasions. The District Court previously rejected

Defendant's arguments as insufficient as a matter of law. This time, this Court should –yet

again—reject Defendant's arguments as barred based on the law of the case because Defendant

had ample opportunity to fully litigate the issues raised in the underlying multiple prior briefs.

The Trustee has satisfied his *prima facie* case through the Joint Stipulation, and the Defendant

has not, and cannot, satisfy his affirmative defense under section 548(c).[7]

## ARGUMENT

## I.    DEFENDANT'S STRAINED READING OF THE SECTION 546(e) DECISION IS WITHOUT MERIT

Defendant asserts that the Trustee's reliance on this Court's ruling in *Picard v. Cohen*

(reviewed *de novo* and adopted by the District Court pursuant to Federal Rule of Bankruptcy

Procedure 9033) and other decisions in this liquidation,[8] is inconsistent with the *Section 546(e)*

---

[6] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*), 773 F.3d 411 (2d Cir. 2014) ("*Section 546(e) Decision*")).

[7] Defendant argues that the Trustee "has not met his burden of negating Defendant's affirmative defenses, specifically the value defense," (Opposition at 4) but precisely because Bankruptcy Code section 548(c) is an affirmative defense, Defendant bears the burden of establishing all elements of the defense. *See e.g.,* Post-Trial Proposed Findings of Fact and Conclusions of Law, *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (finding that since the Trustee satisfied his burden of proof on his affirmative claim, the "burden shifted" to the defendant "to establish one or more of his defenses")(hereinafter "*Cohen Decision*"); *Schneider v. Barnard,* 508 B.R. 533, 551 (E.D.N.Y. 2014); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC),* 439 B.R. 284, 308 (S.D.N.Y.2010); *Gowan v. Patriot Grp., LLC (In re Dreier LLP),* 452 B.R. 391, 426 (Bankr.S.D.N.Y.2011); *Picard v. Cohmad Secs. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),* 454 B.R. 317, 331 (Bankr.S.D.N.Y.2011). Defendant cites to *Celotex Corp. v. Catrett* in support, but that case says nothing about the affirmative defense, and only requires the Trustee to show there are "no genuine issue of material fact" and that he, as the moving party, is "entitled to a judgment as a matter of law." 477 U.S. 317, 322 (1986).

[8] This includes but is not limited to: *Cohen Decision,* 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016), adopted mem., No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017), ECF No. 24 (Memorandum Order Adopting Proposed

*Decision,* and therefore "not good law." (Opposition at 17).   However, Defendant's attempt to stretch the bounds of the *Section 546(e) Decision* to assist him in manufacturing a new legal defense is unsustainable.  As this Court has held, the *Section 546(e) Decision* does not alter the treatment of fictitious profits in this Ponzi scheme.  *Cohen Decision*, 2016 WL 1695296, at *12-13; *see also Silverman v. Cullin* (*In re Agape World, Inc.*), 633 F. App'x. 16, 17 (2d Cir. Feb. 4, 2016).

### A.    Defendant Improperly Invokes The Mandate Rule

 Defendant incorrectly asserts that the Trustee's position regarding value cannot be reconciled with the mandate of the *Section 546(e) Decision*; that "[t]he trustee and the court are precluded by this decision from taking the position that the value defense in the Bankruptcy Code does not operate in a SIPA case to permit Defendant to retain payments on account of an unavoided or unavoidable obligation of the debtor."  (Opposition at 21).  However, the *Section 546(e) Decision* did not even address the value defense, and accordingly, creates no Second Circuit mandate relevant to this Avoidance Action.[9]

### 1.    The Section 546(e) Decision Did Not Determine The Enforceability Or Validity Of BLMIS Customers' Securities Contracts And Settlement Payments

The mandate rule provides that "[w]here issues have been explicitly or implicitly decided on appeal, . . . the law-of-the-case doctrine obliges the district court on remand to follow the decision of the court of appeals . . . ."  *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir.

---

Findings of Fact and Conclusions of Law; hereinafter "*Cohen District Court Decision*"); *Omnibus Good Faith Decision,* 531 B.R. 439 (Bankr. S.D.N.Y. 2015); *Antecedent Debt Decision*, 499 B.R. 416 (S.D.N.Y. 2013)*; Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012).

[9] If any applicable principles may be derived from the Second Circuit, they come from the Second Circuit's decisions affirming the Trustee's methodologies for purposes of calculating net equity and addressing inter-account transfers. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) ("*Second Circuit Net Equity Decision*"); *In re Bernard L. Madoff Inv. Sec. LLC*, 697 F. App'x 708, (2d Cir. 2017) (*"Second Circuit Inter-Account Decision"*).

2004) (citing *Day v. Moscow*, 955 F.2d 807, 812 (2d Cir. 1991) (quoting *United States v. Uccio*,

940 F.2d 753, 758 (2d Cir.1991)).    Defendant, however, misleads this Court as to what the

Second Circuit "expressly or implicitly" decided in the *Section 546(e) Decision*.    Defendant

maintains that the Second Circuit established the following purported rule: "when BLMIS sent

trade confirmations and account statements to its customers, those customers had the right to

receive the full amount of money reflected in those statements," and that this rule persists even

though BLMIS defrauded those customers by not trading securities.    (Opposition at 8-9).

However, the Second Circuit did not include customer statements when it considered whether

BLMIS entered into agreements with customers.    Instead, its analysis related to customers'

account opening documents.  *Section 546(e) Decision,* 773 F.3d at 418; *see also Cohen Decision,*

2016 WL 1695296, at *10 (in rejecting this same argument, stated the *Section 546(e) Decision*

did not "address[ ] the question of value under Bankruptcy Code § 548(c), or upset the settled

rule in non-SIPA cases that the transferees of fictitious profits do not give value under

Bankruptcy Code § 548(c) beyond their investments of principal").

    Defendant further insists that "an innocent customer's withdrawals from a brokerage

account are 'settlement payments' that satisfy an enforceable state law securities entitlement, a

valid claim under state law."  (Opposition at 9).    But the Second Circuit never stated that the

contracts between BLMIS and its customers were "enforceable" securities contracts or that the

transfers BLMIS customers received were "valid" settlement payments.  The Second Circuit did

not state anywhere in its decision that each purported settlement payment to Defendant

"discharged legally enforceable obligations owed by BLMIS to customers at the time of the

transfers," and in doing so, "provided value to BLMIS under Section 548(c)." (Opposition at 10).

As explained further below, the Second Circuit made no such ruling relating to Defendant's

value defenses as it applied to purported obligations owed by the BLMIS estate. More importantly, nowhere does the Second Circuit assert such "securities contracts" and/or "settlement payments" were valid, real securities transactions as reflected on Defendant's BLMIS account statements. In fact, this Court recently considered and rejected this argument, stating that the *Section 546(e) Decision* "did not hold that BLMIS' fictitious statements created enforceable obligations." *Cohen Decision,* 2016 WL 1695296, at *12 (further noting "an obligation may be valid, but payments in excess of principal are avoidable and recoverable (in all Ponzi scheme cases)"). The Second Circuit most recently affirmed that it "continue[s] to refuse, however, to treat[] fictitious and arbitrarily assigned paper profits as real" and to give "legal effect to Madoff's machinations… This "court of equity will not lend its power to assist or protect a fraud." *Second Circuit Inter-Account Decision*, 697 F. App'x at 713.

Instead, the Second Circuit simply affirmed that BLMIS's payments to its customers were subject to the safe harbor of section 546(e) because: (1) the customers' account opening documents constituted "agreements by which BLMIS [would] 'acquire or dispose of securities' on behalf of its customers," and thus "f[e]ll within the statute's broad definition of 'securities contracts'" and (2) the securities transactions contemplated by the customers' account opening documents were also "settlement payment[s]." *Section 546(e) Decision,* 773 F.3d at 417-19 (citing 11 U.S.C.A. § 741(7)(A)(i)). The Second Circuit also stated those payments were made "in connection with" a "Ponzi scheme and, as a result, were fraudulent." *Id.* at 422.

The *Section 546(e) Decision* has limited reach and does not foreclose the Trustee from avoiding and recovering transfers of fictitious profits in this case. As the Second Circuit held, section "546(e) is expressly inapplicable to claims of actual fraud brought under § 548(a)(1)(A)…" *Id.* at 416. Notably, the Second Circuit stated that there is a "low bar for the

6

required relationship between the securities contract and the transfer sought to be avoided." *Id.* at

422.  As a result, transferees are able to shield transfers much more easily under section 546(e)

than under section 548(a)(1)(A).    Fatally for Defendant however, by exempting section

548(a)(1)(A) from section 546(e), Congress determined that obtaining "an equitable result for the

debtor and its creditors" is "paramount" with regard to actual fraudulent transfers.  *See*, *id.* at

423.  Accordingly, the mandate rule is inapplicable here.

### 2.    The Section 546(e) Decision Did Not Make Any Ruling About Defendant's Value Defense

The Second Circuit made no ruling, explicit or implicit, about the question of value.  *See*

*generally Section 546(e) Decision,* 773 F.3d 411.  In the *Section 546(e) Decision,* the Second

Circuit never ruled that BLMIS's payments to its customers underlying the securities contract or

settlement payments were made for "value" at the time of transfer pursuant to section 548(c).

*See Omnibus Good Faith Decision*, 531 B.R. at 469 (citing *Section 546(e) Decision,* 773 F.3d at

417-23) (stating that the Second Circuit did not rule "that the defendants paid value in exchange

for the fictitious profits they received" in connection with their securities contract or settlement

payments).

The Second Circuit did not disturb the general rule that a "trustee can recover fictitious

profits because transferees in a Ponzi scheme do not give 'value' within the meaning of the

Bankruptcy Code beyond what they pay into the scheme."  *Omnibus Good Faith Decision*, 531

B.R. at 469-70.  As this Court explained, "[f]ictitious profits are not profits at all but distributions

of other people's money based on an arbitrary allocation of fraudulent bookkeeping entries.  The

[*Section 546(e) Decision*] did not address this rule and it remains the majority view." *Id.* at 470.

Two years later, the Second Circuit explicitly stated that "it ha[d] not addressed this issue" and

noted "the prevailing view in the district and bankruptcy courts in this Circuit has agreed" that

payments above deposits of principal to Ponzi scheme investors should be treated as fraudulent transfers. *Silverman*, 633 F. App'x. at 17 (citing *Omnibus Good Faith Decision*, 531 B.R. at 462-64 (collecting cases)).

Given that Defendant incorrectly identifies and interprets the purportedly "key" issues decided in the *Section 546(e) Decision,* his arguments relating to the mandate rule have no application.  That decision has no impact on the validity of the *Cohen Decision,* nor on the precedential effect of earlier Madoff-related decisions.[10]

## II.    THE DISTRICT COURT'S DECISION IN *GREIFF* HAS *STARE DECISIS* EFFECT ON DEFENDANT'S AVOIDANCE ACTION

### A.    The Rejection Of Defendant's Arguments Was Law of the Case Even Before The *Cohen Decision*

As an initial matter, Defendant argues that the *Cohen Decision* cannot have a *stare decisis* effect on the Avoidance Action because it "did not decide important legal issues Defendant now raises."  (Opposition at 22).  However, given the commonality in the stipulated facts entered in the *Cohen* proceeding and the Avoidance Action, Mr. Cohen and Defendant have the same factual predicate, making the application of the *Cohen Decision* appropriate here. *Compare Cohen Decision*, 2016 WL 1695296, at *2-3, with Joint Statement.  Defendant has no basis for his argument that the Court should deviate from the precedent set in the *Cohen Decision.*

More importantly, while the law of the case doctrine does have application in these proceedings, the relevant law is found in *Greiff,* not the *Section 546(e) Decision.*  Defendant's attack on *Greiff* and other prior decisions in this liquidation proceeding, including the *Antecedent Debt Decision,* should be rejected. *See Omnibus Good Faith Decision*, 531 B.R. at 469-70.  As

---

[10] Defendant also fails to acknowledge that the District Court issued the *Antecedent Debt Decision* on October 15, 2012, months *after* its own decision on section 546(e) in *Greiff* on April 30, 2012.

this Court earlier observed, defendants in this liquidation proceeding "have had several opportunities to present their antecedent debt/value arguments, those arguments have been rejected, and hearing them again will not add value to the disposition of the antecedent debt/value defense in this Court." *Picard v. Cohen*, 550 B.R. 241, 255 (Bankr. S.D.N.Y. 2016). Thus, "the rejection of their antecedent debt/value defense is already *stare decisis* and in most instances law of the case." *Id.; see also Omnibus Good Faith Decision,* 531 B.R. at 465 (stating defendants "have had their day in court and Judge Rakoff's decisions are law of the case").[11]

**B.      The District Court Addressed The Same Issues Now Raised Again By Defendant Before This Court**

As Defendant admits, *stare decisis*, literally to "stand by things decided," is "the basic legal principle that commands judicial respect for a court's earlier decisions and the rules of law they embody." *Randall v. Sorrell*, 548 U.S. 230, 243 (2006).  *Stare decisis* thereby "avoids the instability and unfairness that accompany disruption of settled legal expectations." *Id.*  For this reason, the rule of law demands that adhering to the prior decisions in this liquidation proceeding be the norm.  *See Black's Law Dictionary* 1443 (8th ed. 2004) (*stare decisis* is "[t]he doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation").[12]  Here, Defendant argues that his contentions relating to the antecedent debt/value defense are not subject to any *stare decisis* effect, but the District

---

[11] Defendant's participation in the *Greiff, Omnibus Good Faith Decision,* and *Cohen* proceedings within this SIPA proceeding is unlike the circumstances presented in *Picard v. Roman*, Adv. Pro. No. 10-04292, where the Court declined to hold that *stare decisis* applied to decisions involving unrelated proceedings by other district court judges in this district. *See* Memorandum Decision and Order Granting in Part and Denying in Part Trustee's Motion to Compel Discovery, *Picard v. Roman*, Adv. Pro. No. 10-04292 ECF No. 107. Here, the same parties are litigating the same issue.

[12] Defendant is attempting to raise the same arguments he previously raised before this Court and the District Court. Such delays at the expense of the net loser victims—who have not yet recovered their full principal investments with BLMIS—is further basis to award prejudgment interest in favor of the Trustee for the reasons this Court articulated in *In re Teligent, Inc.,* 380 B.R. 324, 344 (Bankr. S.D.N.Y. 2008) (Bernstein, C.J.) (citing *In re Hechinger Inv. Co. of Del., Inc., v. Universal Forest Prods., Inc. (In re Hechinger Inc. Co. of Del., Inc.),* 489 F.3d 569, 579-80 (3d Cir. 2007).   As noted previously, the Trustee reserves his right to request a post-judgment hearing before this Court to determine the appropriate rate to apply to the calculation of such interest.

Court exhaustively considered and settled these same issues in *Greiff,* and other decisions in this

liquidation, including the *Antecedent Debt Decision.*[13]

### 1.   Defendant's Alleged Claims Under Federal Securities And State Law Were Previously Considered And Rejected[14]

The District Court rejected Defendant's arguments that the transfers of profits from

BLMIS satisfied alleged antecedent debts and thus provided "value" for the profits received from

BLMIS.  *Antecedent Debt Decision,* 499 B.R. at 423.  The District Court explained that even if

BLMIS customers held valid claims under federal or state law, those claims did not provide

value under SIPA against the separate BLMIS customer property estate, which was "created as a

priority estate intended to compensate customers only for their net-equity claims."  *Id.* at 423-24;

*see also id.* 422 n. 6.  According to the District Court:

> To the extent that defendants' state and federal law claims allow them to withhold
> funds beyond their net-equity share of customer property, those defendants are, in
> effect, making those damages claims against the customer property estate.
> Because their damages claims are not net-equity claims (or any other payments
> that are permitted to be made in SIPA's priority scheme), allowing such claims to
> be drawn out of the customer property estate would violate SIPA.  It is for this
> reason that only a defendant's investment of principal may count as "value" with
> respect to the customer property estate for purposes of section 548(c).

*Id.* (citing *Greiff,* 476 B.R. at 728) ("[W]hen determining whether a transferee provides value,

SIPA requires consideration not only of whether the transfer diminishes the resources available

for creditors generally, but also whether it depletes the resources available for the satisfaction of

customers' net equity claims and other priority claims.").  To the extent that Defendant may have

---

[13] Defendant not only made these same arguments in his moving papers herein, but also copied these arguments
from the prior consolidated brief before the District Court in the antecedent debt proceedings. *See* Consolidated
Memorandum Of Law In Support of Motion To Dismiss Regarding Antecedent Debt Issues On Behalf On
Withdrawal Defendants As Ordered By The Court On May 12, 2012, *In re Madoff Sec.,* No. 12 Misc. 0115 (JSR)
(S.D.N.Y. June 25, 2012), ECF No. 199 ("Antecedent Debt Brief").

[14] This argument as raised in Defendant's moving papers was previously raised in the underlying Antecedent Debt
Brief in the antecedent debt proceedings. *Compare* Opposition at 14-17, with Antecedent Debt Brief at 6-11.

any state and federal law claims, those claims run against BLMIS's general estate, not the customer property estate. *Id.* (citing *Second Circuit Net Equity Decision*, 654 F.3d at 233); *see also In re A.R. Baron Co., Inc.*, 226 B.R. 790, 796 (Bankr. S.D.N.Y. 1998). The District Court concluded that "it would significantly undo the SIPA scheme to allow customers to recast amounts received as something other than what they were—fictitious profits—and treat them as a claim for antecedent debts beyond the customer's net equity." *Antecedent Debt Decision*, 499 B.R. at 425. Therefore, under SIPA, "a customer may only seek the protections of section 548(c) to the extent of investments of principal, and federal and state law claims cannot be used to increase the amount to which a customer is entitled from the customer property estate." *Id.* at 426.

### 2.    Trustee's Alleged Failure To Avoid Obligations Owed To Defendant Was Also Considered And Rejected

Defendant also asserts purportedly new arguments that the payment of fictitious profits satisfied valid "lawful obligations" under section 548(c). (Opposition at 5).[15] However, this is simply the antecedent debt argument under a different name, and it fails for the same reasons the District Court set forth in the *Greiff* and *Antecedent Debt Decision*.

In particular, the District Court rebuffed claims that BLMIS's account statements constituted binding, enforceable obligations of BLMIS to its customers, as the amounts reported thereon were not "antecedent debts" that BLMIS owed to its customers. *Antecedent Debt Decision,* 499 B.R. at 421 n. 4. The District Court "reject[ed] defendants' contention that [BLMIS's] pre-reach-back-period account statements constitute[d] binding obligations of [BLMIS] to its customers that the Trustee must avoid." *Id.* The District Court found that the

---

[15] This argument as raised in Defendant's moving papers was previously raised in the underlying Antecedent Debt Brief in the antecedent debt proceedings. *Compare* Opposition at 10-12 with Antecedent Debt Brief at 23-25.

amounts reported on BLMIS account statements were "invalid and thus entirely unenforceable." *Id.* This was equally rejected in *Greiff*, which stated that "[a]ny entitlement defendants had to a return on their investment, then, depended on a representation that Madoff Securities had in fact generated a profit [but] [t]he complaints allege that Madoff Securities' representations in this regard were wholly fraudulent." 476 B.R. at 726. Indeed, "in this context, the transfers must be assessed on the basis of what they really were, and they really were artificial transfers designed to further the fraud, rather than any true return on investments." *Id.* at 725. Such amounts therefore could not create valid obligations used to offset liabilities. [16]

### 3.    Defendant's "At The Time Of Transfer" Value Defense Is Another Rejected And Recycled Argument

Defendant further maintains that he raises new arguments that "value" must be measured at the time of transfer and from the transferee's perspective, and that they should not be precluded from raising the arguments now. (Opposition at 3, 31-32).[17] But the District Court did actually consider and reject this line of argument in the *Antecedent Debt Decision over* four years ago. In that decision, the District Court defined the scope of the antecedent debt and value issues to include "whether and to what extent (i) transfers made by Madoff Securities that the Trustee seeks to avoid were made in exchange for value, such as antecedent debts that Madoff Securities owed to the Antecedent Debt Defendants *at the time of the transfers*." *In re Madoff Sec.*, No. 12 Misc. 0115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 107 ("Antecedent Debt

---

[16] Defendant's argument that the Trustee is "collaterally estopped" from avoiding obligations because of the *in pari delicto* doctrine is a red herring. (Opposition at 13) (citing *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 64 (2d Cir. 2013)). There are, as discussed, no enforceable obligations to avoid. Additionally, the doctrine does not apply to the Avoidance Action, because the Trustee set forth only statutory causes of actions under the Bankruptcy Code. *Cf. JPMorgan,* 721 F.3d at 63 (finding the Trustee's four common law claims of aiding and abetting fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, and money had and received, to be barred by the doctrine of *in pari delicto*); *see also Omnibus Good Faith Decision*, 531 B.R. at 449-50.

[17] This argument as raised in Defendant's moving papers was previously raised in the underlying Antecedent Debt Brief in the antecedent debt proceedings. *See* Antecedent Debt Brief at 23.

Order") (emphasis added).[18]   The District Court also made it clear that "even if defendants held legitimate discretionary brokerage accounts with Madoff Securities, they would have been entitled only to the securities in their accounts on the date of demand, and therefore older statements would have been unenforceable in any case."   499 B.R. at 421 n. 4.

Moreover, Defendant has conceded BLMIS was operating a Ponzi scheme at all relevant times, which means that if there were no legitimate trades of securities in Defendant's BLMIS accounts, then the only thing Defendant was supposedly giving "value" for was fictitious profits.[19]   (Joint Statement ¶ 9).

### 4.    Section 548(a) As A Purported Statute Of Repose Prohibiting Avoidance of BLMIS's Obligations And Debts Was Previously Rejected

Another purportedly "new" argument put forth by Defendant is that the Trustee's methodology for determining avoidance liability violates a purported "statute of repose" under section 548(a).  (Opposition at 34-40).  However, this very same argument was previously raised in the Antecedent Debt Brief.   *See e.g.,* Antecedent Debt Brief, at *39-40 ("Like statutes of limitations, reach-back periods are statutes of repose established by legislatures in recognition of the fact that it would be unfair and unreasonable to force a person to litigate a particular issue more than a certain number of years after the occurrence giving rise to the claim. By not crediting the transferee for the full value of a transfer made before the Reach-Back Period, the Trustee impairs Defendants' substantive rights") (internal citations omitted).

---

[18] A true and correct copy of the Antecedent Debt Order as filed with the District Court, is annexed hereto as Exhibit 3 to the Murphy Reply Declaration.

[19] As to Defendant's argument that he "can retain the amount due to him at the time the Transfers took place based on tort remedies available," such claims, even if they existed, would at most only qualify as claims against the general estate. (Opposition at 13-14).

The argument, which is nothing more than an effort to revive the "Reset to Zero" approach (which ignores the customer's investment history prior to December 11, 2006), was firmly rejected by the District Court in the *Antecedent Debt Decision.* 499 B.R. at 430 (rejecting defendants' "assertion that deposits of principal in the reach-back period should be netted against withdrawals in the same period in calculating their fraudulent-transfer liability.") Instead, this argument was "based on the faulty assumption that the value of the customer property estate is somehow set in stone at the beginning of the two-year reach-back period, such that any investment of principal enriches the estate." *Id.* at 427. The District Court explained that "[j]ust as defendants are entitled to net-equity claims for amounts of principal invested before the reach-back period that they never withdrew; so too must withdrawals before the reach-back period be considered to determine whether a given transfer in fact compensated a given defendant for a claim it would otherwise have had." *Id.* As a result, the District Court found that a "straight netting method—subtracting total withdrawals from total deposits of principal—is the appropriate way to calculate not only net equity but also a defendant's fraudulent-transfer liability." *Id.* The District Court further recognized that the Trustee's methodology is the only workable method in light of the long-running history of the Ponzi scheme, and is the only method that "most reflects the reality of these transfers and that treats all investors as equitably as possible," regardless of when they decided to withdraw or deposit funds. *Id.* at 429; *see also Second Circuit Net Equity Decision,* 654 F.3d at 235 (stating the Trustee's "selection of the Net Investment Method was more consistent with the statutory definition of 'net equity' than any other method advocated by the parties or perceived by [the Second Circuit]"); *Greiff,* 476 B.R. at 729 (endorsing Trustee's netting method and rejecting the Reset to Zero method).

14

By contrast, "[i]n a long-running fraud such as this one, the two-year cut-off for the reach-back period," otherwise known as the proposed Reset to Zero method advanced by Defendant, would "'arbitrarily' allow[] a Madoff Securities investor who withdrew all of his funds in November 2006 to keep the entirety of his 'profits', while a similarly situated investor who withdrew those funds only a month later would not have the same right." *Antecedent Debt Decision*, 499 B.R. at 429.[20]

### 5. Defendant's Allegations That The Trustee Improperly Expanded His Bankruptcy Powers Are Unfounded

Finally, Defendant repeats the claim that the Trustee is seeking to "expand [his] avoidance powers . . . under the Bankruptcy Code," and asserts that Congress "specifically made a SIPA trustee's avoidance of transfers of customer property dependent on the extent to which such transfers are avoidable under the Bankruptcy Code." (Opposition at 5).[21]

Once again, the District Court rejected this argument in the *Antecedent Debt Decision*. "[W]hile SIPA provides that a SIPA trustee is 'vested with the same powers and title with respect to the debtor and the property of the debtor … as a trustee in a case under Title 11,'" the District Court explained that under SIPA "the provisions of the Bankruptcy Code apply only '[t]o the extent consistent with the provisions of this chapter.'" 499 B.R. at 423. The District Court found that the Trustee's powers to avoid transfers under the Code "must be interpreted through the lens of SIPA's statutory scheme." *Id.* Given that Defendant has pulled this argument directly from the underlying Antecedent Debt Brief filed on June 25, 2012, this Court should reject Defendant's argument as barred.

---

[20] If Defendant is instead seeking credit for all pre-December 11, 2006 deposits but not allowing for corresponding offsets for withdrawals during that same period, that is equally contrary to the history of decisions in this liquidation proceeding and grossly inequitable.

[21] This argument as raised in Defendant's moving papers was previously raised in the underlying Antecedent Debt Brief in the antecedent debt proceedings. *Compare* Opposition at 10-12 with Antecedent Debt Brief at 13-18.

### C.    Defendant Is Collaterally Estopped By Previous Decisions

Even if the *Antecedent Debt Decision* did not have *stare decisis* effect, then Defendant at the very minimum is collaterally estopped from challenging the same issues previously raised and addressed before this Court in the *Omnibus Good Faith Decision*, and the District Court in *Greiff* and the *Antecedent Debt Decision*.

Collateral estoppel, or "issue preclusion," bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue is presented in the context of a different claim in a subsequent suit. *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," this doctrine protects against "the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States,* 440 U.S. 147, 153–154 (1979); *see also Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012).

Collateral estoppel requires that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citation omitted). In the Avoidance Action, (1) Defendant's antecedent debt/value arguments are similar to those previously articulated in *Greiff* and the Antecedent Debt Brief; (2) the issues were "actually litigated and decided" in the *Greiff* and *Antecedent Debt Decision*; (3) Defendant had multiple, fair opportunities to litigate the issues before this Court (including the *Omnibus Good Faith Decision*) and/or the District Court; and (4)

the District Court specified that it was returning the Avoidance Action to the Bankruptcy Court

"for further proceedings consistent with this Opinion and Order." *Greiff,* 476 B.R. at 730.

As a result, Defendant is collaterally estopped from raising these same antecedent

debt/value arguments once again.

### D.    The Trustee Is Not Estopped By The *Cohen Decision*

As an argument of last resort, Defendant insists that the Trustee is estopped from arguing

that the *Cohen Decision* binds Defendant because he "opposed Defendant's intervention and

opposed his participation as an *amicus*" in the *Cohen* proceeding.    (Opposition at 23).[22]

However, Defendant simply cannot claim his antecedent debt/value arguments were not

previously raised and addressed by this Court in the *Cohen* proceeding, and in turn, assert the

*Cohen Decision* is not relevant to his Avoidance Action.    *See generally Cohen Decision,* 2016

WL 1695296.    To the contrary, the *Cohen* proceeding is so factually similar, it is simply not

possible to reach a different result, as discussed earlier in Section I(A).    It would be otherwise

unjust and would permit Defendant to incessantly circumvent the rulings in this liquidation

proceeding.

---

[22] Defendant does not alert the Court to his involvement in the *Cohen* proceeding. While barred from formally intervening, defense counsel for Andrew H. Cohen revealed that he "received assistance from counsel for the proposed intervenors in connection with the trial and in preparing submissions to the Bankruptcy Court." *See* Memorandum of Law in Support of Motion to Withdraw as Counsel at 4 n.1, *Picard v. Cohen,* 16 Civ. 05513 (LTS) (S.D.N.Y. July 19, 2016), ECF No. 8; *see also* Order at 26, *Picard v. Cohen,* 16 Civ. 04462 (LAP) (S.D.N.Y. Nov. 2, 2016), ECF No. 24.  Thus, not only did Cohen have his own counsel representing him in the trial and post-trial submissions, but counsel for the proposed intervenors also assisted him behind the scenes with his arguments and his written submissions.

### III.    BLMIS'S OPERATION AS A PONZI SCHEME IS BOTH LEGALLY SIGNIFICANT AND FATAL TO DEFENDANT'S ATTEMPTS TO RETAIN FICTITIOUS PROFITS

#### A.    The Ponzi Scheme Principals Governing This Case Are Universal And Endorsed By The District Court

Because Defendant has no defense to the Trustee's claims under Ponzi scheme law, he seeks to attack it by arguing that it is somehow inconsistent with SIPA or the Bankruptcy Code, going so far as to claim that the Trustee is using "Madoff's decision to employ a Ponzi scheme against BLMIS' good faith customers [to] expand his own power." (Opposition at 31). This is simply untrue. SIPA expressly authorizes a trustee to assert a claim for the avoidance and recovery of fraudulent transfers under sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code.[23] The claims the Trustee is asserting against Defendant are specifically enumerated under those provisions of the Bankruptcy Code.

---

[23] Any argument that the law applying to claims, customer property distribution and net equity is inapplicable to avoidance actions is mistaken. In particular, Defendant cite the Second Circuit's decision in *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) for the proposition that the Trustee is attempting to treat unavoided transfers as customer property by purportedly engrafting provisions regarding the administration of customer property into the bankruptcy avoidance process. (*See* Opposition at 7-8). This is both a misinterpretation of the Second Circuit's decision and a distortion of the Trustee's position. *Fairfield Greenwich* arose out of the Trustee's request to enjoin settlements between feeder funds, their related entities and persons associated with the funds, and the feeder funds' investors. 762 F.3d at 202. The case did not involve an analysis of the relationship between the customer property estate and the calculation of value as a defense to an avoidance action. In contrast, this relationship was specifically considered and resolved, in the *Antecedent Debt Decision*. *See Antecedent Debt Decision*, 499 B.R. at 423-24 ("only a defendant's investment of principal may count as 'value' with respect to the customer property estate for purposes of section 548(c).") Moreover, this Court previously considered and rejected this very argument. First, this Court rejected the notion that *Fairfield Greenwich* was "intervening authority" that "undercut Judge Rakoff's analysis of value in a SIPA case." *Omnibus Good Faith Decision*, 531 B.R. at 468. Second, after fully analyzing *Fairfield Greenwich*, this Court concluded that the decision did not address the question of value in any respect. Lastly, the Court reiterated the well-settled law of this case that the "Trustee can recover fictitious profits because transferees in a Ponzi scheme do not give 'value' within the meaning of the Bankruptcy Code beyond what they pay into the scheme... The three Second Circuit decisions did not address this rule and it remains the majority view." *Id.* at 469-70. In addition, this Court previously stated on the record that *Fairfield Greenwich* has no bearing on the Trustee's avoidance action with only statutory causes of actions under the Bankruptcy Code. *See* Tr. of Hearing at 54:7-55:11, *Picard v. South Ferry*, Adv. Pro. No. 10-04488 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2017), ECF No. 108 (making clear that the Trustee's case is "different" given that *Fairfield Greenwich* involved a third-party settlement with a Madoff-related feeder fund). A true and correct copy of the *South Ferry* transcript is annexed hereto as Exhibit 4 to the Murphy Reply Declaration.

Defendant seeks to avoid the application of Ponzi scheme principles and undo nearly a century of settled precedent by arguing that that "[n]either SIPA nor the Code carves out exceptions for fraudulent transfers supporting Ponzi schemes." (Opposition at 30). But Ponzi scheme jurisprudence predates both SIPA and the Bankruptcy Code by several decades. Ponzi scheme law is part of the law of fraudulent transfers. Indeed, the Supreme Court decided *Cunningham v. Brown,* 265 U.S. 1 (1924) (involving investors' claims to assets of Charles Ponzi in the aftermath of his eponymous fraud scheme), more than forty-five years before Congress enacted SIPA and more than fifty years before Congress enacted the Bankruptcy Code.[24]

The core principle that a transferee does not provide value in exchange for a transfer in excess of an investment in a Ponzi scheme was actually established almost a century ago. For instance, in 1924, in *Eby v. Ashley,* 1 F.2d 971 (4th Cir. 1924), the Fourth Circuit upheld a decision in favor of a trustee, requiring the recipient of "profits" from a Ponzi scheme to return the payments. *Id.* at 972. Notably, the Court ruled that:

> It follows that on October 13, 1922, when Young paid Ashley $3,000 as a full return of the principal, Young actually owed him $1,423.32. Consequently, of the $3,000 paid to Ashley on October 13, 1922, $1,576.68 was entirely without consideration . . . In other words the payment of $1,576,68 of the $3,000 was a gratuitous payment, for which Ashley gave no consideration, and was therefore a fraud on Young's creditors.

*Id.* at 973.

As this Court reiterated in the *Omnibus Good Faith Decision,* it is then a "well-settled rule in Ponzi scheme cases that net winners must disgorge their winnings." *Omnibus Good Faith*

---

[24] Congress, knowing of Ponzi scheme law, is presumed to have intended for it to apply to SIPA liquidations. "It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute." *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (citing cases). Unless Congress clearly indicates a "contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Id.* (quoting *Estate of Wood v. C.I.R.*, 909 F.2d 1155, 1160 (8th Cir. 1990)). This is particularly evident here because Congress expressly precluded certain provisions of the Bankruptcy Code from applying in a SIPA liquidation. Had Congress intended to prevent Ponzi scheme law from applying in a SIPA liquidation, it would have legislated accordingly.

*Decision*, 531 B.R. at 462. Defendant "may retain distributions from an entity engaged in a Ponzi scheme to the extent of [his] investments," but "distributions exceeding [his] investments," which constitute "fraudulent conveyances" or "other people's money," may be recovered by the Trustee in an avoidance action. *Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 333 (Bankr. S.D.N.Y. 2011); *Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 440 n. 44 (Bankr. S.D.N.Y. 2011) ("The Court's conclusion that the Defendants did not provide 'reasonably equivalent value' for the payments in excess of principal is consistent with those courts that have held that investors in a Ponzi scheme are not entitled to retain the fictitious profits they received."). In this context, it is not surprising that the Second Circuit made it clear that "the BLMIS customer statements reflect impossible transactions and the Trustee is not obligated to step into the shoes of the defrauder or treat the customer statements as reflections of reality." *Second Circuit Net Equity Decision*, 654 F.3d at 242; *see also Second Circuit Inter-Account Decision*, 697 F. App'x at 713; *Silverman*, 633 F. App'x. at 17. This is not a case involving legitimate payments under a contract nor legitimate interest payments. The only funds at issue here are transfers of fictitious profits.

Defendant also insists the Trustee's cited "Ponzi scheme investor" cases have no bearing on his affirmative defenses. (Opposition at 30). However, the District Court already determined that Defendant's purportedly "legally recognized claims, debts, and obligations" did not in fact, constitute "value" within the meaning of section 548(c) to the extent they would be used to withhold "artificial transfers designed to further the fraud, rather than any true return on investments." *Antecedent Debt Decision,* 499 B.R. at 421 (quoting *Greiff,* 476 B.R. at 725)*; see also Omnibus Good Faith Decision,* 531 B.R. at 463.

As the Seventh Circuit further explained in *Scholes v. Lehman*, 56 F.3d 750, 757 (7th Cir. 1995) the "injustice in allowing [a defendant] to retain [its] profit at the expense of the defrauded investors" could be circumvented <u>only</u> if it "was offset by an equivalent benefit to the estate." But there was no such offset.  Defendant's receipt of fictitious profits was not offset by anything of value—certainly not by any further investments of principal with BLMIS—and only depleted BLMIS's fund of customer property further.  After all, Defendant stipulated that he received fictitious profits in the Ponzi scheme; that he withdrew in excess of deposits from his BLMIS account with the IA Business, which did not actually trade securities for customers and did not generate any legitimate profits for customer accounts.  (Joint Statement at ¶¶ 12-15; 20-25). Defendant simply did not give value beyond his deposits of principal with BLMIS and "should not be permitted to benefit from a fraud at their expense merely because [he was] not [himself] to blame for the fraud."  *Scholes*, 56 F.3d at 757.  All Defendant is "being asked to do is to return the net profits of [his] investment" within two years of December 11, 2008; "the difference between what [he] put in at the beginning and what [he] had at the end."  *Id.* at 757-58.

Accordingly, Defendant's value arguments must fail and summary judgment should be granted in the Trustee's favor.[25]

**B.    There Is No Basis To Treat Equity Investors And Contractual Customers Differently**

Unlike equity investors in other types of Ponzi schemes, Defendant asserts that he was not an investor in BLMIS, but "a customer of a broker dealer acting as a fiduciary investment adviser," and is entitled to "fundamentally" different rights from those "that might accrue to ordinary equity investors."  (Opposition at 32-34).  As a result, Defendant claims the courts

---

[25] Defendant has repeatedly stated that the Bankruptcy Code must be followed.  The Trustee agrees.  As evidenced by the overwhelming judicial authority, the Bankruptcy Code does not permit the frustration of its fraudulent transfer provisions by transferees who seek to keep false Ponzi scheme profits.

improperly relied upon Ponzi scheme cases involving equity investors, arguing that Defendant was only an "innocent brokerage customer[]" that "deposit[ed] funds with a regulated fiduciary for investment in publicly traded securities." (Opposition at 32).

However, Defendant cites no applicable authority that supports treating "equity investors" and "brokerage customers" differently. (Opposition at 32-34).[26]  And there is none. As the District Court noted, Defendant's parsing "is a distinction without a difference" because Defendant "faced the same risks as equity investors." *Greiff*, 476 B.R. at 726.  As a result, whether Defendant was an equity "investor" or a "brokerage customer" is immaterial—he is not entitled to retain the fictitious profits received from BLMIS.

## IV.    THE TRUSTEE'S NETTING METHOD AND VALUE CALCULATIONS ARE WHOLLY CONSISTENT WITH THE SECTION 548(a) REACH-BACK PERIOD

To determine a BLMIS customer's claim against the customer property fund, the Trustee looks to the deposits into the customer's BLMIS account over the life of the account and nets any withdrawals.  A customer has "net equity" and a corresponding claim against the customer property fund to the extent deposits of principal exceed withdrawals.  *See Second Circuit Net Equity Decision*, 654 B.R. 229 (approving the Trustee's "Net Investment Method").  The same calculation is used to determine a BLMIS customer's avoidance liability, provided that the customer had no knowledge of the fraud.  Specifically, the Trustee nets life-to-date deposits against life-to-date withdrawals.  If the customer has negative net equity and received any withdrawals from BLMIS in the two years before the Filing Date, the amount of those withdrawals constitutes the customer's avoidance liability.  *See Antecedent Debt Decision,* 499 B.R. at 430 (endorsing the Net Investment Method underlying the Trustee's avoidance liability

---

[26] Defendant does cite to *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Invs. Assocs. Inc.)*, 48 F.3d 470 (10th Cir. 1995), but that case does not distinguish between equity investors or customers of a brokerage firm.

calculations).  The Trustee's Net Investment Method has been upheld by the Second Circuit, and

his corresponding methodology to determine avoidance liability have been approved in multiple

decisions by this Court and the District Court, despite repeated challenges by various BLMIS

customers, including customers represented by counsel for the Defendants.

Notwithstanding this overwhelming legal authority, Defendant reasserts his failed

challenge to the Trustee's methodology for determining avoidance liability and attempt to revive

the rejected Reset to Zero approach by arguing that the section 548(a) reach-back period is a

statute of repose.  (Opposition at 34-40).  Defendant incorrectly argues that the Trustee's

methodology violates section 548(a), because deposits and withdrawals are netted over the life of

the account.

Defendant's statute of repose argument is nothing more than a red herring.  Even if the

section 548(a) reach-back period were construed as a statute of repose, which based on the law in

this jurisdiction it is not, the Trustee's methodology is wholly consistent with section 548(a)

because it does not seek to avoid and recover transfers made before the reach-back period, nor

does it apply equitable tolling to extend the period in which avoidance actions could be

commenced.

### 1.    The Trustee's Methodology Is Consistent With The Section 548(a) Reach-Back Period

Defendant persists in arguing that the District Court's prior *Greiff* decision and the

*Antecedent Debt Decision,* were flawed for failing to analyze the section 548(a) reach-back

period as a statute of repose, instead assuming the section created a statute of limitations.

(Opposition at 39-40).  However, because the Trustee's methodology is not an exercise in

equitable tolling—it does not permit the Trustee to stop the clock from running on his avoidance

actions—it is consistent with section 548(a) whether or not the reach-back period operates as a

statute of repose.  In contrast to an action to avoid and recover such transfers, the Trustee's calculation methodology "us[es] past transactions as part of the process of calculating a customer's net equity."  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 15 Civ. 1151 (PAE), 2016 WL 183492, at *17 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom.* 697 F. App'x 708 (2d Cir. 2017) (the *"District Court Inter-Account Decision"*).  Distinct from equitable tolling, it does not give the Trustee greater power to claw back transfers beyond the two-year reach-back period, but simply applies section 548(a) to the Trustee's net equity calculation, as repeatedly affirmed by three levels of courts.

Further, Defendant contends that the District Court in *Greiff* improperly analogized to the Ninth Circuit's decision in *Donell v. Kowell,* 533 F.3d 762 (9th Cir. 2008), which Defendant argues interpreted a statute of limitations in the California Uniform Fraudulent Transfers Act (UFTA) and not a statute of repose.  (Opposition at 39-40) (citing *Greiff*, 476 B.R. at 729).  But cases relying on *Donell* and applying its reasoning to a statute of repose in the California UFTA have used the same netting method as the Trustee.  For example, in *Donell v. Mojtahedian*, 976 F.Supp.2d 1183 (C.D. Cal. 2013) ("*Mojitahedian*"), the receiver for a Ponzi scheme investment fund brought an action under the California UFTA against a fund investor, seeking to recover the investor's alleged profit from the investment.  The defendant sought to limit her liability to withdrawals in the seven-year period set out in Cal. Civ. Code sec. 3439.09(c), as netted against her life-to-date principal investment.  *Mojtahedian*, 976 F. Supp. 2d at 1189.  Relying on *Donell*, the court held that defendant was incorrect and required netting to consider not just the defendant's life-to-date deposits but also her life-to-date withdrawals.  *Id.*  Recognizing that section 3439.09(c) is a statute of repose and the section interpreted by *Donell* was a statute of

limitations, the court nevertheless advised "[t]here is no reason to believe the Ninth Circuit's ruling on the statute of limitations does not also apply to the statute of repose." *Id.*

Here, too, there is no basis to challenge the Trustee's netting method even if the section 548(a) reach-back period is construed as a statute of repose. Indeed, the ruling in *Mojtahedian* is consistent with non-Madoff cases that have approved netting methods referring to life-to-date withdrawals and deposits of principal, as recognized in *Greiff* and the *Antecedent Debt Decision*. *See, e.g., In re Hedged-Inv. Assocs. Inc.*, 84 F.3d 1286, 1288-90 (10th Cir. 1996) (calculating the amount received in excess of principal deposited over the life of the defendant's investment for purposes of determining defendant's avoidance liability); *In re Bayou Grp., LLC*, 439 B.R. 284, 338-39 (S.D.N.Y. 2010) (in Ponzi scheme case, affirming calculation of avoidance liability based on deposits of principal and withdrawals made over the investment relationship, stating "in no event is it appropriate to pile fiction on fiction by deeming these investors' final . . . account statements, including fictitious profits, to be the value of their investments contributed to the Bayou hedge funds.") (quoting *In re Bayou Grp. LLC,* 396 B.R. 810, 885 (Bankr. S.D.N.Y. 2008)).

The *District Court Inter-Account Decision*, which upheld the Trustee's treatment of inter-account transfers between BLMIS customer accounts, is also illustrative. In the *District Court Inter-Account Decision*, certain BLMIS customers argued that the section 548(a) reach-back provision barred the Trustee from looking beyond the two-year period to determine defendants' net equity in connection with transfers between their BLMIS accounts. *District Court Inter-Account Decision,* 2016 WL 183492, at *12-13. The District Court rejected defendants' arguments, stating that "the two-year reach-back limit applicable to attempts to avoid fraudulent transfers does not apply to a Trustee's calculation of net equity" because "[n]othing in the text of

section 548(a)(1) indicates that the two-year restrictions applies to anything other than an avoidance action for fraudulent transfers." *Id.* at *12.  The District Court further explained that because the *Second Circuit Net Equity Decision* "expressly contemplates" that the Trustee will reduce a customer's net equity for withdrawals from a BLMIS account that occurred beyond the reach-back period, it "implicitly but definitively" rejects the Defendants' argument that section 548(a) bars the Trustee from using transfers before the reach-back period to reduce a customer's net equity for purposes of determining his or her avoidance liability.  *Id.* at *13.

### 2.    The Trustee's Methodology Is Consistent With The U.S. Supreme Court's *CalPERS* Decision

Rather than attempt to reconcile the Reset to Zero method with this well-settled law of the case, Defendant looks to the inapposite decision of the United States Supreme Court in *California Public Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S.Ct. 2042 (2017) ("*CalPERS*"). However, *CalPERS*, which did not address section 548(a), does not apply and, even if it did, the Trustee's netting method is entirely consistent with it.

In *CalPERS*, the Supreme Court held that the three-year time period within which an action under Section 13 of the Securities Act could be brought is a statute of repose and thus, is not tolled by a class action filing.  137 S.Ct. at 2049-50.  *CalPERS* recognized the difference between statutes of limitations and statutes of repose, particularly that limitations periods begin to run "when the cause of action accrues," whereas repose periods begin to run on "the date of the last culpable act or omission of the defendant."  *Id.* at 2049 (internal citations omitted). *CalPERS* also recognized that courts cannot extend repose periods based on equitable principles because statutes of repose implement "a legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability."  *Id.* at 2051 (internal citation omitted).  The *CalPERS* court further reasoned that the

three-year period in Section 13 was a statute of repose because it "impose[d] an outside limit" on a defendant's liability, and concluded that tolling did not apply. *Id.* at 2050-51.

Based on the Supreme Court's reasoning in *CalPERS*, Defendant insists that the section 548(a) reach-back period is a statute of repose. (Opposition 36-40). It is not, but regardless of whether section 548(a) operates as a statute of repose, the Trustee's netting method to determine avoidance liability is entirely consistent with *CalPERS*. As discussed above, the Trustee's methodology does not seek to avoid and recover transfers made before the reach-back period, nor does it involve the application of equitable tolling or any other type of tolling that would extend the Trustee's right to avoid and recover transfers beyond the reach-back period. It does not implicate any of the finality concerns raised by *CalPERS* by subjecting the defendants to "protracted liability" in contravention of the legislative policies underlying section 548(a). *See CalPERS*, 137 S.Ct. at 2051 (internal citation omitted). As a result, Defendant's reliance on *CalPERS* is misplaced.

## CONCLUSION

For all of the foregoing reasons, the Trustee's motion for summary judgment should be

granted.[27]

Dated: New York, New York
       December 18, 2017

BAKER & HOSTETLER LLP

By: /s/ *Keith R. Murphy*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Amy E. Vanderwal
avanderwal@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com
Joshua B. Rog
Email: jrog@bakerlaw.com

Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff

---

[27] The Trustee reiterates his entitlement to prejudgment interest on the fraudulent transfers (*See* Trustee's Motion at 3, n.2); *see supra* n. 12.