# EXHIBIT 4



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    IRVING H. PICARD, TRUSTEE

5    FOR THE LIQUIDATION OF

6    BERNARD L. MADOFF INVESTMENT

7    SECURITIES LLC,

8                    Plaintiff,

9    v.                        Adv. Case No. 10-04488(SMB)

10   SOUTH FERRY BUILDING COMPANY,

11   ET AL.,

12                   Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - x

14

15                   U.S. Bankruptcy Court

16                   One Bowling Green

17                   New York, New York 10004-1408

18

19                   December 6, 2017

20                   10:02 AM

21

22

23   B E F O R E :

24   HON STUART M. BERNSTEIN

25   U.S. BANKRUPTCY JUDGE

1    Hearing re:  Motion for Summary Judgment (also applies to

2    Adv. Pro. Nos. 10-04350, 10-05110, and 10-04387)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South and Lisa Beck

**Page 3**

```
 1   A P P E A R A N C E S :

 2   BAKER HOSTETLER

 3        Attorneys for the Trustee

 4        45 Rockefeller Plaza

 5        New York, NY 10111

 6

 7   BY:  KEITH R. MURPHY, ESQ.

 8        NICHOLAS J. CREMONA, ESQ.

 9

10   BAKER MCKENZIE LLP

11        Attorney for the Defendants

12        815 Connecticut Avenue, NW

13        Washington, DC 20006

14

15   BY:  RICHARD A. KIRBY, ESQ.

16        GRAHAM R. CRONOGUE, ESQ.

17        JENNIFER ANCONA SEMKO, ESQ.

18

19   SECURITIES INVESTOR PROTECTION CORPORATION

20        Attorney for SPIC

21        1667 K. Street, N.W., Suite 1000

22        Washington, DC 20006-1620

23

24   BY:  KEVIN H. BELL, ESQ.

25
```

Page 4

1                     P R O C E E D I N G S

2              THE COURT:  Okay.  Madoff?

3              MR. MURPHY:  Good morning, Your Honor.

4              THE COURT:  Good morning.

5              MR. MURPHY:  Keith Murphy of Baker & Hostetler,

6     counsel for the trustee.

7              Your Honor, this morning we're here on a

8     consolidated hearing in four adversary proceedings in which

9     the trustee and the defendants have each sought summary

10    judgment.

11             Those actions are Picard versus South Ferry

12    Building Company, Picard versus South Ferry II, et al.,

13    Picard versus United Congregation of Missouri, and Picard

14    versus James Lowery, et al.

15             Your Honor, we seek summary judgment on the

16    trustee's counts under Section 548(a)(1)(a) for actual

17    fraudulent transfers by BLMIS to these defendants.  We also

18    oppose the defendants' motions for summary judgment.

19             In these cases, Your Honor, the trustee -- the

20    parties have agreed to joint statements of undisputed facts,

21    which are before the Court.  Those statements establish the

22    trustee's prima facie case with the avoidance of the

23    fraudulent transfers and the burden is now on the defendants

24    to establish any affirmative defense they may have.

25             The primary focus of the defendants, Your Honor,

1   in these cases is whether they provided value for the

2   fictitious profits received during the two years prior to

3   BLMIS's collapse, but the defendants cannot do so here

4   because they lack any factual or legal basis to protect the

5   transfers of fictitious profits.

6          The defendants can't assert that they took the

7   transfers for value because there's no facts in the record

8   which establish that.

9          The defendants cannot as a matter of law establish

10  it for value because the courts in these proceedings have

11  repeatedly held that such false profits on account -- are

12  not on account of a valid antecedent debt.

13         The defendants don't dispute that we have

14  satisfied our prima facie case and satisfy our burden of

15  proof.

16         I'll just go over a few key points.  The

17  defendants have admitted to the following.

18         That they are recipients of transfers in excess of

19  deposits or fictitious profits within two years prior to

20  December 11, 2008.

21         That BLMIS made these transfers with the actual

22  intent to hinder, delay, or defraud some or all of its then

23  existing or future creditors.

24         That BLMIS was operating a Ponzi scheme at all

25  times relevant to the avoidance proceedings.

Page 6

1          That BLMIS was insolvent from at least

2   December 11th, 2002 and all points thereafter.

3          And that the investment advisory business in which

4   they were invested did not actually trade securities for

5   customers and did not generate any legitimate profits for

6   the customer accounts.

7          There are additional stipulations, but I'll direct

8   the Court to the joint statements of undisputed material

9   facts.

10          Your Honor, the defendants' arguments here are

11   essentially the same as they have argued before in the

12   antecedent debt proceeding or some variation thereof.  They

13   have been raised before Judge Rakoff, they have been raised

14   before this Court numerous times.

15          I will note that the defendants have participated

16   in the antecedent debt argument, they were expressly

17   included in participants.  At that time the scope --

18          THE COURT:  I thought only Lowery was.  I looked

19   at the record -- I know that the motion to withdraw the

20   reference was made on behalf of all of the defendants --

21          MR. MURPHY:  Your Honor -- sorry -- they were as

22   joinders to the lead case.

23          THE COURT:  Okay.  So every -- all of the

24   defendants were parties to the antecedent debt?

25          MR. MURPHY:  Yes.

Page 7

1          THE COURT:  Okay.

2          MR. MURPHY:  Your Honor, the scope of the

3     antecedent debt and value issues were defined in that

4     antecedent debt order issued by Judge Rakoff, and those

5     disclosed issues were decided on the merits.

6          That order provided that these procedures would be

7     -- the procedures established by that order or by further

8     order of the court could constitute the sole and exclusive

9     procedures for determination of the withdrawn antecedent

10    issue in the adversary proceedings.

11         So the issues that were withdrawn, Your Honor, the

12    consolidated briefings at that time were to consider whether

13    and to what extent the -- number one, the transfers made by

14    Madoff Securities that the trustee seeks to avoid were made

15    in exchange for value such as antecedent debts that Madoff

16    Securities owed to the antecedent debt defendants at the

17    time of the transfers.

18         And two, whether and to what extent the

19    obligations incurred by Madoff Securities may be avoided by

20    the trustee, including whether they were exchanged for

21    value, such as antecedent debts owed to the antecedent debt

22    defendants.  Those were the issues at the time.

23         The District Court made that once the antecedent

24    debt issue decision was issued all affected actions would

25    then be returned to Your Honor for proceedings consistent

1   with those rulings.  The defendants thus are bound by the

2   antecedent debt decision and the doctrine on precedent

3   (indiscernible).

4           Your Honor, based on the antecedent debt decision

5   as well as this Court's decision in the omnibus good faith

6   and the Cohen proceedings the trustee's motion should be

7   granted and the defendants' motions should be denied.

8           I will address the defendants' specific arguments

9   with respect to antecedent debt in a moment, but I just want

10  to turn for a moment to a Section 546(e) decision by the

11  Second Circuit which the defendants have argued changed the

12  law of the case and that it requires -- it constitutes a

13  mandate and requires a new look at Judge Rakoff's rulings.

14          This Court has considered that argument before and

15  it was rejected both in the omnibus good faith and in the

16  Cohen decision.  But here in their papers the defendants are

17  misstating to this Court what the Second Circuit either

18  expressly or implicitly decided in that decision.

19          The Second Circuit never decided that the

20  contracts were enforceability, securities contracts.  They

21  never stated that the transfers were valid settlement

22  payments or real securities transactions as reflected on the

23  defendants' on --

24          THE COURT:  Well I guess the argument is that if

25  it's a settlement payment then it's got to be a payment for

Page 9

1    value also.  That's really what the argument is.

2            MR. MURPHY:  It's their argument, Your Honor, but

3    I believe that the Second Circuit really was looking at what

4    it was -- the account opening document and account

5    authorizations, the Second Circuit viewed that essentially

6    as the contract, if you will, securities contract, and it

7    fell within the definition of 546(e).

8            As with respect to the payments they also felt

9    that these transfers qualified under the definition of a

10   securities -- of a settlement payment.  But at no time did

11   they consider the issue of value or at no time did that say

12   that they were actually valid.  They actually said that

13   there was actually -- those payments were made in connection

14   with the Ponzi scheme and as a result were fraudulent.

15           The Second Circuit made no express ruling

16   whatsoever as to the question of value, and it did not

17   change the rule of law that the defendants can only seek the

18   protections of 546(c) to the extent of their principle

19   investments.

20           THE COURT:  548(e).

21           MR. MURPHY:  548(c).

22           THE COURT:  You said 548 --

23           MR. MURPHY:  Correction.  Thank you, Your Honor.

24           THE COURT:  548(c).

25           MR. MURPHY:  548(c).  In fact I think Your Honor

1    the most recent view we have of the Second Circuit's opinion

2    on these issues comes from the Segar (ph) decision from June

3    of 2017 relating to the inner account transfers decision.

4    The Second Circuit at that time said:

5              "It continues to refuse however to treat

6         fictitious profits fictitious and arbitrarily assigned

7         paper profits as real and to give legal effect to

8         Madoff's machinations.  This court of equity will not

9         (indiscernible) its power to assist or protect a

10        fraud."

11             The defendants have suggested that there's -- the

12   Second Circuit made a distinction and highlighted a conflict

13   between SIPA and the Bankruptcy Code and that that argument

14   should carry through here.  And we know that the court has

15   said where Congress had made a clear choice the court must

16   enforce Congress's will.  But that related only to the

17   546(e) statute of limitations and the trustee's power to

18   avoid transfers beyond a two-year period.

19             But here, unlike 546(e), there's no clear

20   statutory direction as to the satisfaction of claims against

21   the general estate would provide value for the fictitious

22   profits from a Ponzi scheme.

23             The provisions of the Bankruptcy Code, Your Honor,

24   apply to a SIPA liquidation to the extent that they are

25   consistent with the provision of SIPA, and the defendants

Page 11

1   have failed to show any conflict between 546(c) and the

2   goals of SIPA.  So thus, Your Honor --

3             THE COURT:  548.

4             MR. MURPHY:  548(c).  Thank you.

5             This Court has basically already considered, Your

6   Honor, and rejected these arguments before as no purported

7   changed law here that affects us in the mandate

8   (indiscernible).

9             I want to turn back now for the moment to the

10  antecedent debt arguments that were raised previously.  I

11  will note essentially, Your Honor, that these arguments have

12  been raised effectively about six times previous.  They've

13  been either litigated and expressly or impliedly decided.

14  That goes back to the District Court's decision in Griff

15  (ph), the District Court's decision in the antecedent debt

16  decision, the District Court's decision on the motion to

17  certificate interlocutory appeal for the antecedent debt

18  decision, this Court's omnibus good faith decision, the

19  Cohen report and recommendation that was issued by this

20  Court, as well as the Court's adoption of the report and

21  recommendation in whole after the de novo review.

22            So essentially this marks the seventh time that

23  we're seeing these same arguments.  But the District Court

24  exhaustedly reviewed all of these issues and settled them in

25  the antecedent debt decision.

Page 12

1           As this Court recognized the defendants have had

2      the opportunity to raise these issues previously, they have

3      been rejected, and hearing them again does not add any

4      value.  (Indiscernible) and in most instances law of the

5      case.  And each time the defendants attempt to relitigate

6      these issues, Your Honor, they're going against the direct

7      violation of the antecedent debt order.

8           With respect to their federal and state securities

9      claims that was reviewed by Judge Rakoff and rejected.  Even

10     if they had valid claims it doesn't constitute value under

11     SIPA with respect to the separate customer property estate.

12     That customer property estate is a priority estate, it's

13     intended to compensate consumers only for the net equity

14     claim.

15          Now, with respect to determining value, Your

16     Honor, SIPA requires consideration on whether it depletes

17     the resources available for payment of those priority

18     claims.  But by withholding their profits in excess of their

19     net equity claims they're essentially making these claims

20     against the customer property estate, which is improper and

21     it would be in violation of SIPA.

22          Judge Rakoff has noted, as this Court as well,

23     that basically every circuit to review this has said that

24     fictitious profit transfers are not for value.  And this

25     Court also said that there were basically two rules that it

Page 13

1    could devine from all of this case law.  And that the first

2    one applies in SIPA and non-SIPA cases alike, is that a

3    transferee does not give value beyond its deposits of

4    principle, and that was recently reaffirmed in Silverman

5    versus Powerman (ph), the Second Circuit which essentially

6    said although it hadn't come up to the Second Circuit for

7    (indiscernible) and review in this district and bankruptcy

8    court is that it agrees with this consensus.

9         The second rule that the court came up with is

10   that it applies in the SIPA Ponzi case involving fraudulent

11   transfer litigation.  The rule is that you cannot argue that

12   fictitious profits satisfied an antecedent debt or

13   obligation and then provided value under 548(c).

14        SIPA creates two estates and cannot allow a net

15   winner to recover a non-SIPA claim against that customer

16   property estate at the expense of the net losing victims.

17        With respect to the failure to avoid obligations

18   to the defendants who has obligations this is just simply

19   the antecedent debt argument again.  It fails for the

20   reasons that Judge Rakoff said in the antecedent debt

21   decision.  He also rejected the fact that these account

22   statements were binding, enforceable obligations of BLMIS to

23   its customers that the trustee need to avoid as the amounts

24   that were reported on there were not antecedent debts that

25   was owed.  In fact they were completely fictitious and

Page 14

1    fraudulent and part of the scheme.  He found that they were

2    invalid and entirely unenforceable.

3           In Griff, Your Honor, Judge Rakoff further

4    expounded on it actually, he said any entitlement that the

5    defendants had to return on their investment depended on a

6    representation that Madoff Securities had in fact generated

7    a profit, but that was completely not the case and they are

8    wholly fraudulent.

9           The defendants in this case have conceded the

10   Ponzi scheme and that BLMIS did not make trades and

11   therefore they cannot assert that there were any valid

12   antecedent obligations here.

13          One other argument raised by the defendants, Your

14   Honor, is at the time of the transfer they say that the

15   value must be measured at the time of the transfer.  That

16   was actually specifically identified as an issue of the

17   withdrawn antecedent debt issues.  The District Court

18   considered that and rejected it.  Even if they held

19   legitimate brokerage accounts with Madoff they only would

20   have been entitled to their securities that they demand, but

21   the -- those were invalid completely.

22          With respect to the argument as to the statute of

23   repose that 548(a) is a statute of repose this same argument

24   was also raised in 548 -- excuse me -- in the antecedent

25   debt decision.

1            The defendants raised the statute of proposed

2      concept in their brief.  They indicated that like statutes

3      of limitations reach-back periods of statutes of repose, and

4      they said that by not crediting the transferee for the full

5      value of the transfer made before the reach-back period the

6      trustee impairs the defendants' substantive rights.  The

7      reality is Judge Rakoff considered that and rejected it.

8      It's really the reset to zero argument which was rejected in

9      favor of the trustee's netting method.

10            The trustee doesn't seek to recover more than the

11     two-year transfers here, and it's just simply using netting

12     to establish whether there somebody has net equity or

13     whether the claim has -- the trustee has a claim against a

14     defendant.

15            There's an argument, Your Honor, that comes --

16     that suggests that the trustee is improperly expanding his

17     bankruptcy powers.  This was also rejected.

18            Essentially SIPA provides that a SIPA trustee has

19     the same powers as a trustee under Title 11, but SIPA

20     actually expands on that and provides that the Bankruptcy

21     Code provisions are incorporated only to the extent

22     consistent with the revisions of SIPA.  And therefore, as

23     Judge Rakoff noted, the trustee's powers to avoid transfer

24     have to be viewed through a SIPA's statutory lens.

25            As noted, Your Honor, even if they had enforceable

Page 16

1    claims relating to any of these statements a conclusion that

2    they gave value would conflict with SIPA.

3            I would note, Your Honor, that Judge Rakoff and

4    this Court have stated essentially that the -- SIPA

5    prioritizes net equity claims and that it incorporates in

6    its priority system -- excuse me -- SIPA prioritizes net

7    equity claims and incorporates its priority system into the

8    fraudulent transfer rules by allowing the trustee to recover

9    fraudulent transfers if the customer property estate is not

10   sufficient to pay all of the net equity claims.

11           This is a situation that we have here, the trustee

12   cannot satisfy the priority claims for the net equity estate

13   claimants, and therefore his powers are now enabled, and the

14   trustee can avoid the transfers to the defendants in

15   accordance with the priorities.

16           A related argument, Your Honor, in that vain is

17   that the defendants state that it was improper for SIPA's

18   priority scheme to essentially be applied after the

19   collapse.  They say again at the time their value should be

20   viewed at the time of the transfer.  But that completely

21   ignores that SIPA empowers a trustee to avoid the transfers

22   to recover customer property in order to pay those priority

23   claims.

24           You know, if Congress --

25           THE COURT:  Wasn't that argument made though in

Page 17

1    the antecedent debt litigation?

2            MR. MURPHY:  I believe it was, Your Honor, yes.

3            548(c), Your Honor, the Court -- this Court and

4    Judge Rakoff have said this is an affirmative defense, SIPA

5    does not necessarily imply and it has to be applied the same

6    way to the customer property claim estate as it were the

7    general estate.

8            Your Honor, we made a point in our papers that the

9    defendants are essentially collaterally estopped as well by

10   the antecedent debt decision as well as it being law of the

11   case.  That's in our papers.  I will leave that to our

12   papers.

13           I will add though that the Cohen decision here

14   that the defendants attempt to separate themselves from that

15   Cohen decision, but there's really no basis whatsoever to

16   distance themselves from that.  It's the same factual

17   predicate, and in fact the defendants were involved,

18   although they attempted to intervene and that was denied.

19   Mr. Cohen's counsel has said that the defendants' counsel --

20   or the intervenors I should say, were involved in --

21           THE COURT:  Yeah, but they weren't parties.

22           MR. MURPHY:  Excuse me?

23           THE COURT:  They weren't parties.

24           MR. MRUPHY:  They were not parties.  But I think

25   here, Your Honor, regardless of whether they participated or

1   not or helped or not the fact is the Cohen proceedings was

2   so similar with their facts and the legal issue that is were

3   raised that it should be impossible to reach a different

4   conclusion here.

5           The defendants also want to distance themselves

6   from the Ponzi scheme terminology such as net winner and

7   Ponzi scheme, but the fact is they've admitted to that.

8   They admitted to this Ponzi scheme, that it did withdraw

9   more than they had put in.  So they are net winners.

10          Ponzi scheme jurisprudence basically predates the

11  Bankruptcy Code and SIPA, and frankly Ponzi scheme law is

12  part of the law of fraudulent transfers.  Frankly if

13  Congress had intended a different result or wanted it to not

14  apply that Ponzi scheme law they certainly could've written

15  it as such.

16          In fact as we so recorded on our brief United

17  States versus Langley, the Fourth Circuit 1995, unless

18  Congress clearly indicates a contrary intent a newly enacted

19  or revised statute is presumed to be harmonious with

20  existing law and its judicial construction.

21          Another point -- I want to make a point from the

22  Second Circuit's Net Equity decision as well, Your Honor.

23  The Second Circuit made clear that the time years ago that

24  the BLMIS customer statements reflect impossible

25  transactions and the trustee is not obligated to step into

Page 19

1    the shoes of the defrauder or the treat the customer

2    statements as reflections of reality.

3            Briefly this Court has addressed the J.P. Morgan

4    decision.  The defendants are trying to say that the trustee

5    is expanding his powers, but the trustee is only asserting

6    his statutory powers here.  He's not asserting any common

7    law claims and he's not trying to expand his powers beyond

8    that.  He's also asserting his own claims here, not anybody

9    else's.

10           Fairfield Greenwich is a case that the defendants

11   bring up yet again, and you've seen this before.  It was a

12   case where the trustee was pressing to enjoin settlements

13   involving feeder firms, the related entities and investors,

14   but the case didn't involve an analysis in any way of the

15   relationship between the customer property estate and the

16   calculation of value as a defense to an avoidance action.

17   That relationship was actually clearly decided in the

18   antecedent debt and expounded upon in the omnibus good faith

19   and Cohen decisions, and that Court previously rejected the

20   applicability of the Fairfield decision, Your Honor.

21           Their other argument that was made that we've seen

22   before is that the defendants suggest they are not equity

23   investors and therefore the Ponzi scheme law that we've

24   cited and that this Court is aware of isn't applicable, but

25   that argument has been rejected.  There's no basis for that

Page 20

1   to suggest that because the vehicle of this particular Ponzi

2   scheme was a broker dealer that it makes any difference

3   whatsoever.  Judge Rakoff said it was a distinction without

4   a difference and essentially paid lip service to really what

5   was going on here and the fact that this was a Ponzi scheme.

6           Your Honor, we would -- we have requested and said

7   that we would seek prejudgment interest in this case.  We

8   are going to pursue that, Your Honor.  We were -- we will

9   leave that argument for another day as we said, but I will

10  note as I've said here, these arguments have been going on

11  for five years, this is the seventh time.  If you had told

12  the net losers that it would take ten years to get recovery

13  for these fraudulent transfers I think they would be stunned

14  and in disbelief.  The fact the we are here during the

15  entire time the two-year transfers were never really at risk

16  or at issue.

17          Your Honor, that's -- I will conclude at that

18  point.  I will save any further arguments for rebuttal.

19  Thank you.

20          THE COURT:  Mr. Murphy, I think Mr. Bell just

21  wants to make a brief statement.

22      (Laughter)

23          MR. BELL:  Mr. Murphy has stolen most of my lines.

24  Good morning, Your Honor.

25          Today is day 3,282 that the victims do not have

Page 21

1    their money and the defendants --

2            THE COURT:  Well they've been getting --

3            MR. BELL:  -- have their money.

4            THE COURT:  -- interim distributions.

5            MR. BELL:  But even more importantly, Your Honor,

6    it was 1,512 days ago that Judge Rakoff issued the

7    antecedent debt.  It was 1,391 days ago since we were all

8    here on Valentine's Day 2014 to talk about next steps.  And

9    if you recall Mr. Swed (ph) got up and said let's do a

10   comprehensive grouping and Your Honor said we're not going

11   to go as slow as the slowest case.

12           Since that date the trustee has resolved more than

13   500 of these good faith adversary proceedings bringing in

14   about a half a billion dollars that have been distributed

15   and passed and will be distributed in a soon to be filed

16   allocation distribution motion.

17           So let's -- I just wanted to put that in context.

18   Mr. Murphy has highlighted everything, but as you know, I am

19   here on behalf of the Securities Investor Protection

20   Corporation and I filed this proceeding, so we've been

21   dealing with this for 3,282 days.

22           The important point is that I go back to your

23   published decision in Cohen -- or your findings and

24   conclusions, and I start (indiscernible) sound like a

25   mandate, 1,512 days of --

Page 22

1          THE COURT:  The antecedent debt decision.

2          MR. BELL:  -- ago Judge Rakoff did this and said

3     apply.  And then when we were here --

4          THE COURT:  I don't think the record can pick up

5     your gestures.

6          MR. BELL:  I'm sorry, I do the handcuffs where

7     Judge Rakoff said you are bound to apply this to the facts.

8     We have facts that have been conceded that I think are

9     sufficient.  We have this argument on 546(e).

10          But if you go back to the Seminole decision that

11     led to the circuit decision, namely by Judge Rakoff, Judge

12     Rakoff (indiscernible) it out 548(a)(1)(a) actions, the two

13     of your actions which are the subject of this approximately

14     $40 million of other people's money the defendants have been

15     holding for 3,282 days.

16          So clearly, you know, the Second Circuit decision

17     in 546(e), which affirmed Judge Rakoff, dealt with the two

18     year to six year money by which the --

19          THE COURT:  Well, you know, the circuit also said

20     that a payment to a customer was a settlement payment even

21     if in this case Madoff never made the investment.

22          MR. BELL:  And Judge Rakoff had addressed that in

23     his --

24          THE COURT:  Okay.  I thought what you were arguing

25     was that because 548(a)(1)(a) is carved out of 548(e), a

Page 23

1    settlement payment would not be a payment on account of --

2              MR. BELL:  As to matters that occurred in that

3    two-year period.  And we had briefed that, we argued that in

4    the circuit.  Clearly we addressed this in our brief and I

5    refer you to that where we say the circuit never addressed

6    that issue.  It didn't address that issue, it was Judge

7    Rakoff decided that the only issue the circuit had was the

8    two to six year money and the extension of settlement

9    payment to that to create an element of finality.  The

10   circuit did not go to that.

11             But if you look at the quotation that Mr. Murphy

12   gave from the six month ago decision in Segar by the circuit

13   they reaffirmed what they had said before the 546(e)

14   decision about fictitious statements at the conclusion of

15   that.

16             So the circuit has been consistent and I would

17   imagine that this case will -- you had proffered this on

18   Valentine's Day 2014 to say confessed judgment and we'll

19   certify it to the circuit.  I would imagine we will follow

20   the (indiscernible) path for another thousand days or so to

21   get to the circuit, and I reaffirm Mr. Murphy's statement,

22   we're ready to brief prejudgment interest.  But you know,

23   it's been a long time.

24             It's very clear, the decisions on SIPA and the 34

25   Act ignore the fact that except as otherwise provided in

1    SIPA.  You know, we briefed that too, so I'm not going to

2    take your time since you asked me to be brief, Your Honor.

3              But basically --

4              THE COURT:  Weren't those also raised in the

5    antecedent debt argument?  I glanced at the brief yesterday.

6              MR. BELL:  I'm sorry, Your Honor, I didn't hear?

7              THE COURT:  This notion that there were claims

8    under the 34 Act, for example, that was also under Section

9    29 I think.

10             MR. BELL:  Yeah.

11             THE COURT:  Wasn't that also briefed?

12             MR. BELL:  Yeah, we briefed that.

13             THE COURT:  No, I mean it was briefed --

14             MR. BELL:  Yes.

15             THE COURT:  -- before Judge Rakoff.

16             MR. BELL:  We've been consistent for the whole

17   history of SIPA in reading the statute as it's written.  It

18   says except as otherwise provided.

19             THE COURT:  But the issue of this notion that

20   there was antecedent debt because there was some securities

21   law obligations in the 34 Act briefed to Judge Rakoff.

22             MR. BELL:  Yes.

23             THE COURT:  Yeah.

24             MR. BELL:  And he said no.  You know, I mean he

25   clearly -- Judge Rakoff clearly understood in that decision

Page 25

1    of October 15th, 2012, 1,512 days ago, that the relationship

2    between the 34 Act and the Code, he and I have had dialogues

3    about where our statute -- the SIPA statute is placed, it's

4    in Title 15, it was written by the commission back in 1970

5    in the industry.  I'm just here to apply what I'm sort of

6    bound by the words of this action.

7            So clearly there are words that are written in

8    there that we have to follow.  You know, there are

9    provisions that say except where inconsistent with SIPA the

10   Bankruptcy Code applies.  So it's those fine points that

11   Judge Rakoff got in the decision that I think you're

12   absolutely correct in your writings on Cohen, which was

13   affirmed by Judge Swain.

14           As you recall Mr. Kirby was among a group of

15   intervenors, you wrote about that, Judge (indiscernible)

16   affirmed, and the Second Circuit didn't rule because

17   Mr. Cohen settled with the trustee before he filed an

18   appeal.  So, you know, it is what it is.

19           I know, you know, Mr. Kirby knows, we're going to

20   go to the circuit on this question.  I do think that it's as

21   you have done with other directions from Judge Rakoff in the

22   recent past it's a mandate.

23           THE COURT:  Good or bad?

24           MR. BELL:  I'm not commenting on that one, Your

25   Honor.  Thank you very much.  I'll speak to you later.

Page 26

1    Thank you.

2              THE COURT:  Thank you.

3              Mr. Kirby, I think it's your turn.

4              MR. KIRBY:  Thank you, Your Honor.  Good morning

5    and may it please the Court.

6              Our clients have asserted two affirmative defenses

7    which we believe apply in this case, and it's for that

8    reason we've sought summary judgment.

9              The facts are not in dispute, our clients have a

10   statutory defense under 548(c) that gives them the right to

11   retain the payments that they received at the time of the

12   transfer that were valid settlement payments or payments on

13   account of --

14             THE COURT:  But could something be a settlement

15   payment for purposes of 546(c) and still not be a payment

16   for -- a payment of an antecedent debt or the satisfaction

17   of an antecedent debt --

18             MR. KIRBY:  I --

19             THE COURT:  -- let me just finish -- for purposes

20   of 548(c)?

21             MR. KIRBY:  I don't see how you could construe

22   that, Your Honor.  The reason I say that is this.  546(e)

23   incorporates -- what fundamentally 546(e) does it says the

24   only statute -- avoidance statute that would apply is the

25   avoidance statute in 548(a)(1).  Integral to 548(a)(1) is

Page 27

```
 1    the defense of 548(c).

 2              THE COURT:  But is that designed to -- is the rule

 3    under 546(e) designed to provide a transferee with a defense

 4    or to avoid roiling the securities markets?

 5              MR. KIRBY:  It is designed -- what they -- the

 6    statute, 546(3) says, there's going to be one of wins

 7    provision in a securities case like this, and that is the

 8    intentional fraudulent transfer.  But part of that statute

 9    is 548(c), and there's no way that you can read the statute

10    as if wiping out that defense.

11              THE COURT:  So why didn't the Second Circuit just

12    dismiss all the good faith cases?

13              MR. KIRBY:  Nobody has brought that motion to the

14    Second Circuit.

15              So we have a defense based upon the payments that

16    were made at the time of the transfer.  And we look at the

17    statute, and the statute says you focus on whether the

18    payment was valid --

19

20              THE COURT:  Can I -- let me ask a question.  If

21    the payment qualified as a settlement payment but it clearly

22    not to value because there was no antecedent debt would you

23    still have the same defense you're arguing?

24              MR. KIRBY:  Your Honor, I can't accept that

25    premise, but the answer is --
```

1          THE COURT:  Well what's the source of the

2      obligation to make the payment that BLMIS made to your

3      client?

4          MR. KIRBY:  The answer to that is state law.  The

5      securities --

6          THE COURT:  Not the contracts.

7          MR. KIRBY:  What?

8          THE COURT:  Did you have a right under your -- the

9      customer agreement to get the payments of fictitious

10     profits?  Let's just start there, because I'm trying to

11     identify --

12         MR. KIRBY:  The customer agreement simply provides

13     it for a contract.

14         THE COURT:  Right.

15         MR. KIRBY:  There is a separate statement that's

16     received that reports securities entitlements in a book

17     entry system.  But we --

18         THE COURT:  So this is your Article 8 argument?

19         MR. KIRBY:  Well that's what the Second Circuit

20     recognized in recognizing that they were settlement

21     payments.  It's explicit in recognizing that there is a

22     state law right to the payment at the time.

23         THE COURT:  But didn't the Second Circuit, I think

24     it was either in the Segar case or in the IBS Management

25     case say (indiscernible) law trumps that particular

Page 29

1      statement law even if does create a right?

2              MR. KIRBY:  Well that's right, I agree it would if

3      there was an attempt to preempt, but that is -- goes to a

4      fundamental part of our argument is that the -- SIPA -- this

5      is a SIPA case, and the federal -- it's part of the 1934 Act

6      securities statute --

7              THE COURT:  Uh-huh.

8              MR. KIRBY:  -- and there is an express provision

9      in the securities statute, 28(a)(2).

10             THE COURT:  But didn't you make that argument

11     before Judge Rakoff?

12             Let me tell you how I see this just so we put it

13     in perspective.  You, along with many others, make a motion

14     to withdraw the reference on this issue, the reference is

15     withdrawn, you were the author of the brief -- the

16     consolidated brief I think, Judge Rakoff decides it and

17     sends it back to me and says, adjudicate all these other

18     cases consistent with this opinion.

19             You made these arguments before Judge Rakoff, he

20     decided it, and yet I'm bound to follow Judge Rakoff in this

21     matter.

22             MR. KIRBY:  You would be --

23             THE COURT:  I will hear argument if anything else

24     has occurred since the antecedent debt decision, but beyond

25     that I'm not going to say Judge Rakoff was wrong when he

Page 30

1    decided what he decided.

2              MR. KIRBY:  Your Honor, in our view the decision

3    of the Second Circuit in the 546(e) decision supersedes part

4    of the analysis --

5              THE COURT:  Okay.

6              MR. KIRBY:  -- that Judge Rakoff made.

7              And the second -- our second position is that the

8    Supreme Court decision in Halpers overrules any aspect of

9    Judge Rakoff's decision with respect to the statute of

10   repose.

11             So what I think would probably be most

12   constructive for the Court is for us -- I had planned on

13   talking about five distinct points, and I would like to just

14   outline them and then go from there.

15             THE COURT:  Go ahead.  I've read your brief.

16             MR. KIRBY:  Yes, I understand.

17             The first point is why we believe what the trustee

18   is asking the Court to do is contrary to well understood

19   fraudulent transfer law.

20             Number two, what our position is, is that they

21   misread the SIPA statute, and with all due respect to my

22   colleague at SIPC, there is no way to read the statute the

23   way they do, which is that somehow the bankruptcy -- that

24   SIPA supersedes the fraudulent transfer provisions --

25             THE COURT:  But part of my frustration with this

1    is trying to figure out what arguments were laid and decided

2    or rejected by Judge Rakoff and what arguments weren't made

3    to Judge Rakoff and arise from facts or law that occurred

4    after that decision.

5              MR. KIRBY:  Let me get to that, because --

6              THE COURT:  Because I'm not -- you know, I'm not

7    going to say that Judge Rakoff was wrong when he decided the

8    antecedent debt decision.  He withdraw the reference on that

9    and he decided it.

10             MR. KIRBY:  I understand that, but our position

11   is, is that Judge Rakoff's decision has now been superseded

12   --

13             THE COURT:  Okay.

14             MR. KIRBY:  -- by the decision in 546(e), the

15   mandate of that decision, which our clients were part of and

16   it comes back to you not because of Judge Rakoff's

17   antecedent debt decision, but it comes back to you and it's

18   our -- because of the mandate from the Second Circuit on the

19   546(e) decision.  That's what we are -- it is before.  And

20   so to the extent that the 546(e) decision is not consistent

21   with Judge Rakoff's decision there's no choice but you have

22   to revisit the issues.  You have to revisit the issues.  And

23   I will suggest that we cite in our papers the Pan Am case in

24   the Second Circuit.

25             THE COURT:  So why isn't that part of the order

Page 32

1       withdrawing the reference?  In other words if you think that

2       Judge Rakoff is now wrong because of events that occurred

3       afterwards don't you go back to Judge Rakoff and make that

4       argument?  He withdraw the reference on this issue.

5               MR. KIRBY:  Well I think the answer is, is that

6       he's remanded that case, and this gets to the point of why I

7       was saying the Pan Am case, the Lockerby Long (ph) case.

8       The Second Circuit issued that decision as a rule of

9       decision about how the damages would be calculated.  Later

10      the Supreme Court ruled that a different rule, a decision

11      should be considered and how that damages would be

12      calculated in that case.

13              When it gets back to the Second Circuit the Second

14      Circuit says we now have to -- even though we've already

15      decided that issue --

16              THE COURT:  Uh-huh, but it's the same --

17              MR. KIRBY:  -- it's our responsibility --

18              THE COURT:  But it's the same court reviewing its

19      own decision.

20              MR. KIRBY:  It's the same issue for you.  This is

21      on remand to you from the Second Circuit.  And so --

22              THE COURT:  Okay.  Go ahead.

23              MR. KIRBY:  And so you have to address the issue

24      in the first instance of why the mandate doesn't control.

25      And in our view the mandate does control on that point.

1            But the second thing is, and this is why I cite to

2    the Pan Am case that we cite in our papers, is that the

3    Supreme Court itself has made the decision on the limits and

4    how to treat a statute of repose.  Just this last term

5    since.  And --

6            THE COURT:  But does your statute of repose

7    argument go to that when we look at the two years and you

8    don't look back?

9            MR. KIRBY:  Not just on transfers, but on the

10   obligations themselves.  That's what the statute says.

11           But our larger point and our larger defense is

12   that we have a -- this is a -- SIPA is part of a federal

13   statute, there are two statutes that govern.  One, 28(a)(2)

14   as I mentioned, which says that state law claims are

15   permitted.  They are not preempted by anything in the 1934

16   Act.

17           THE COURT:  But you made this argument before

18   Judge Rakoff.

19           MR. KIRBY:  Well Judge Rakoff got it wrong.

20           THE COURT:  All right.  But I'm not --

21           MR. KIRBY:  You have an opportunity to correct it.

22           But the second argument --

23           THE COURT:  I don't think that when a mandate is

24   issued that I have the right to say you know what you issued

25   the mandate but I think you're wrong so I'm going to ignore

Page 34

1      it.

2              MR. KIRBY:  But the second argument was never

3      raised before Judge Rakoff, the 29(b) argument --

4              THE COURT:  I read your brief last night and it

5      cited 29(b) -- just a minute -- I think five times.

6              MR. KIRBY:  Your Honor, we have asserted that as

7      an affirmative defense, which we are in entitled.

8              THE COURT:  I'm not arguing with you about that,

9      Mr. Kirby.

10             MR. KIRBY:  Judge Rakoff decided that on 12(b)(6)

11     motion.

12             THE COURT:  But it's a question of law.

13             MR. KIRBY:  It is not a question of law.  When you

14     choose to raise that defense they're not, because remember

15     29(b) gives the customer an option.  He has an option to

16     either enforce the contract in the event of a fraud or to

17     void it.

18             THE COURT:  But you've gotten your --

19             MR. KIRBY:  And on the face of the trustee's

20     complaint there was not a mention of 29(b) of the fact that

21     it was an affirmative defense.

22             THE COURT:  Well I don't think the trustee has to

23     plead affirmative defenses.

24             MR. KIRBY:  Of course he doesn't.

25             THE COURT:  But it was raised in the context of

1    the antecedent debt argument.

2            MR. KIRBY:  Read anywhere in the -- in Judge

3    Rakoff's decision where he mentions 29(b).

4            THE COURT:  He mentions federal securities laws

5    and he says that claims under the federal securities laws

6    are -- as well as state law, do not provide value, they're

7    not antecedent debts.

8            MR. KIRBY:  Well --

9            THE COURT:  He doesn't mention every single

10   federal security law that might apply, but he says that.

11           MR. KIRBY:  Well let me go -- then let me start

12   with I think the proper way to consider this, Your Honor.

13           THE COURT:  Okay.

14           MR. KIRBY:  First as I indicated why fraudulent

15   transfer law generally would not permit the rule that the

16   trustee argues.

17           We cite in our papers and we have as our first

18   argument what -- the tradition of what fraudulent transfer

19   law is intended to do.

20           THE COURT:  I notice the cite of the statute of

21   Elizabeth, that's going back a little bit.

22           MR. KIRBY:  Right.  Right.  And Judge Bryer in his

23   Boston Trading case exhaustively reviews what fraudulent

24   transfer law is supposed to reach and what it is not

25   supposed to reach.  And he gives as an example if A steals

1     money from B and pays -- uses that money to pay C, an

2     obligation owed to C, that's not fraudulent transfer law.

3             THE COURT:  So let me come back to my question

4     that I asked, what was the source of the obligation to make

5     the payments?  Are you saying it wasn't -- that BLMIS was

6     not under a contractual obligation to make the payments?

7             MR. KIRBY:  It -- the source of the obligation is

8     based upon the -- under New York law, UCC, the security

9     report of a securities entitlement.

10            THE COURT:  It sounds to me the way you're

11    responding that you're agreeing or conceding that the

12    customer agreements did not require the payment of the

13    fictitious profits.

14            MR. KIRBY:  Customer agreements -- Your Honor,

15    let's just step back here.

16            You enter into a discretionary --

17            THE COURT:  You're not going to answer my question

18    are you?

19            MR. KIRBY:  I am going to answer the --

20            THE COURT:  Okay.

21            MR. KIRBY:  -- the question, Your Honor, but I

22    think the customer agreements simply provide for an

23    arrangement where discretion is vested with Mr. Madoff to

24    trade securities.

25            THE COURT:  That's not true.  Paragraph 5 of the

Page 37

1    customer agreement, which is attached to your paper says,

2    with certain exceptions that are not relevant, "The customer

3    is entitled upon appropriate demand to the physical -- to

4    receive physical deliver of fully paid securities in the

5    customer's account."  So that's a contractual obligation to

6    pay upon appropriate demand whatever is in the account.  Are

7    you saying that there was a contractual obligation to pay

8    fictitious profits to the customers upon appropriate demand?

9             MR. KIRBY:  The word fictitious profits is not --

10   there is a contractual obligation --

11            THE COURT:  Okay.  Okay.

12            MR. KIRBY:  -- to pay the securities entitlements

13   which were reported to the customer.

14            THE COURT:  That's not what it says.  I understand

15   your statutory argument under Article 8 and under the

16   securities laws, I'm just focusing on the contract, because

17   the Second Circuit was focusing on the contracts in Fishman,

18   and that's all I'm asking.  Because as I read these

19   contracts they don't obligate BLMIS to pay you money that's

20   not in your account.

21            MR. KIRBY:  Your Honor, there's -- actually the

22   Second Circuit is explicit in (indiscernible) the UCC

23   requirement that a customer is entitled to payment of their

24   securities entitlements.

25            THE COURT:  No, but the Second Circuit has

Page 38

1    rejected that in two Madoff cases in the last couple of

2    years and it's rejected that beforehand.

3              MR. KIRBY:  It says it explicitly in the 546(e)

4    decision.

5              THE COURT:  But since then it has said that the

6    customer statements do not provide a basis for another

7    obligation.

8              MR. KIRBY:  In the Segar case it said that with

9    respect to a SIPA net equity claim.  The difference between

10   our clients and the net equity claim is our clients are

11   strangers to this case.  They were customers, they received

12   their money years before there was ever a SIPA case.  This

13   case has nothing to do with SIPA.  It is --

14             THE COURT:  Well wait a minute SIPA gives the

15   trustee the right to bring these actions.

16             MR. KIRBY:  To bring this action --

17             THE COURT:  Right.

18             MR. KIRBY:  -- but what does SIPA say?  SIPA says

19   that the Bankruptcy Code avoidance provisions apply.

20             THE COURT:  Right.

21             MR. KIRBY:  And that's why we are here, because --

22             THE COURT:  I understand.  We're back to, you

23   know, the antecedent debt argument.  Go ahead.

24             MR. KIRBY:  What the Second Circuit said -- I want

25   to get back to my example with Judge Bryer.  What the Second

1    Circuit said is we're deemed -- in the 546(e) decision, and

2    it's explicit on this point, we believe it's part of the

3    mandate -- that when you're dealing with the Bankruptcy Code

4    you look only to the Bankruptcy Code, you don't look to

5    SIPA, because the SIPA statute itself borrows the Bankruptcy

6    Code fraudulent transfer --

7              THE COURT:  To the extent consistent with SIPA.

8              MR. KIRBY:  Your Honor, that's in 6(b) of SIPA.

9    But the standing of the trustee does not arise from 548, it

10   arises from 8(c)(3) of SIPA, which gives him the right to

11   pursue the claim to the extent a transfer is void or

12   voidable under the Title 11.  That's what the statute says.

13             So what we're here is 8(c)(3), and norms of

14   statutory construction you cannot read SIPA is in any way

15   replacing the Bankruptcy Code.

16             THE COURT:  But didn't you argue that before Judge

17   Rakoff?

18             MR. KIRBY:  Your Honor, we did indeed argue that

19   before Judge Rakoff, but we also argued it before the Second

20   Circuit.  Because what the trustee argued in the Fishman

21   case and what the trustee argued in Fishman was that, oh,

22   these were fraudulent transfers and these were fictitious.

23   And the court said that is what you look to when you're

24   deciding a SIPA net equity claim.  The SIPA net equity

25   analysis does not apply.

1            THE COURT:  I thought the Second Circuit said in

2    Fishman these were fraudulent transfers.

3            MR. KIRBY:  I'm sorry?

4            THE COURT:  The Second Circuit said in Fishman

5    these were fraudulent transfers.

6            MR. KIRBY:  The Second Circuit only said that it

7    was limited to one claim, which is a claim for --

8            THE COURT:  Well the Second Circuit said at page

9    422, "Certainly SIPC and the trustee are correct that these

10   transfers were also made in connection with a Ponzi scheme

11   and as a result were fraudulent."

12           MR. KIRBY:  And it says also, Your Honor, at page

13   422, it says, "This argument, although compelling, is not

14   convincing.  In our earlier decision we interpreted net

15   equity in a manner that would harmonize it with the SIPA

16   statutory framework."  Section 546(e) however is part of the

17   Bankruptcy Code, not SIPA.  And it was not at issue in the

18   net equity decision.

19           THE COURT:  Uh-huh.

20           MR. KIRBY:  This is important because in enacting

21   the Bankruptcy Code Congress struck balances between the

22   need for an equitable result for the debtor and its

23   creditors in any court finality.

24           THE COURT:  So when Congress didn't

25   (indiscernible) the finality of the terms transactions

1    because they're not safe harbored should I then look for an

2    equitable result?

3              MR. KIRBY:  No.  Your Honor, the cases are clear

4    that equity is not available to the trustee -- equitable

5    claims are not available to this trustee.

6              I want to get back, Your Honor, to Judge Bryer's

7    example, because that really goes to the nub of our decision

8    -- of our issue.

9              We have asserted that Section 29(b) of the 34 Act,

10   which we've asserted as an affirmative defense, gives us --

11   our clients a right to enforce their contractual rights,

12   which included their right to a securities entitlement as

13   reported to them.

14             THE COURT:  But that's a statutory right, that's

15   not a contractual right.

16             MR. KIRBY:  Well it is --

17             THE COURT:  We talked about the contractual right,

18   and obviously -- maybe not so obviously -- but I wouldn't

19   think that a customer under the customer agreement had the

20   right to insist on the payment of money that wasn't in their

21   account.

22             MR. KIRBY:  Your Honor --

23             THE COURT:  Which is what the fictitious profits

24   basically are.

25             MR. KIRBY:  No.  What -- all the customer -- at

Page 42

1    the time of the transfer, which is what the Bankruptcy Code

2    asks the court to look at, not what might happen at some

3    point in the future, at the time of the transfer our clients

4    had state law rights to enforce their securities

5    entitlements, that is the settlement payment -- the basis

6    for the settlement payment determination in the Second

7    Circuit, it is explicit on that point, and that in our view

8    is part of the mandate from the Second Circuit, which is now

9    -- why this case is before you.  And the court is explicit

10   on that point.  But not only is that right protected by

11   federal -- by the 34 Act, but it is also part of SIPA,

12   because SIPA is part of that statute.

13           Our fundamental defense and the basis for that is

14   at the time of the transfers our clients were entitled to

15   those payments, which is -- take for example to Your Honor

16   in a book entry system there are no securities, there are no

17   physical securities.  In a book entry system all you're

18   entitled -- all you get is a report of securities

19   entitlement, that's why the UCC makes that legally

20   enforceable under New York law.  And that is what our

21   clients were entitled to at the time.  That is how the

22   Bankruptcy Code measures this.  And that is not how --

23   whether there later might be a SIPA net equity claim has

24   nothing to do with the issue, because our clients are not

25   SIPA claimants for a net equity.

Page 43

1         I think I want to get back to my point about why

2   Judge Bryer's opinion in Boston Trading was so important.

3   The Second Circuit adopted that analysis in Shar (ph).  You

4   remember the facts of Shar are very similar to our

5   situation.

6         The bank in Shar discovered that there may be some

7   financial mismanagement and demanded payment.  They knew in

8   that case, they knew where the allegations where, they knew

9   that the issuer, the debtor was raising money through fraud.

10  And -- but they used the money to pay a valid claim at the

11  time.  And the Second Circuit says they were paying a valid

12  claim to the bank and therefore there's -- fraudulent

13  transfer laws do not apply.  Borrowing from Judge Bryer's

14  analysis.

15         Now, I think it's instructive that in the Griff

16  opinion by Judge Rakoff he spends a considerable amount of

17  time trying to distinguish Boston Trading and Shar.  And

18  what he does is he bases it on the conclusion that these

19  were not enforceable contracts at the time.  The problem

20  with that is, is the Second Circuit later overruled that

21  very point, concluding that those were settlement payments

22  and therefore valid at the time.

23         The second thing is, is that before Judge Rakoff

24  there was not an affirmative defense where our clients had

25  elected to enforce their rights under 29(b), and therefore

Page 44

1    Judge Rakoff had no occasion, you can read his opinion from

2    cover to cover, he never addresses that issue.  And you're

3    not certainly bound to something that he did not address.

4              So it's our view that -- and it's interesting if

5    you look at the trustee's papers in their response they have

6    no response to why that statute doesn't apply other than oh,

7    it might have been considered by Judge Rakoff.  Well he

8    doesn't address it.

9              So we have both the mandate from the Second

10   Circuit on --

11             THE COURT:  But didn't he address it in a sense

12   that he said that even if you have these claims they're

13   claims against the general estate and they can't provide

14   satisfaction of an antecedent debt which would involve

15   essentially a deduction from the customer estate?

16             MR. KIRBY:  Your Honor, that's mixing a bankruptcy

17   case with a SIPA case.  We are not -- our clients are not

18   net equity claimants in a SIPA case, and the statute is

19   clear on that.  What makes it fundamentally clear is that

20   SIPA fixes the date for determining claims as of the date of

21   the petition.

22             THE COURT:  But those are the net equity claims,

23   you said there's a difference.

24             MR. KIRBY:  Right, and we're not there.

25             THE COURT:  I understand you're not --

1          MR. KIRBY:  Bankruptcy fixes the time for

2     determining the validity of a claim as of the date when the

3     transfer is made.  And as of that date the trustee has

4     conceded that our -- as part of the facts that our clients

5     have no knowledge of the fraud, and that gives our clients

6     the right to enforce their secured -- state law securities

7     entitlements and to rely on their Securities Exchange Act

8     rights to enforce those at that time.  And therefore they

9     receive what was lawfully due to them at the time.

10          Which gets back to Judge Bryer's example, it is

11     not part of fraudulent transfer law.

12          THE COURT:  Well let me pick up on that point,

13     putting aside the SIPA cases it's clearly well settled that

14     fictitious profits don't provide value.  What's your

15     response to that?  You say it's not part of fraudulent

16     transfer law, it's not in the statute, but it's fairly well

17     -- part of the law through judicial decisions.

18          MR. KIRBY:  Let just address that directly, Your

19     Honor.

20          I think the simplest way to approach this is that

21     the -- let me just -- the simplest way to approach this is

22     that you can accept all of those cases and still this case

23     is different, and let me explain why.  The facts are

24     different.  And why are the facts different?  In our case

25     the trustee has stipulated that our clients were customers

1    with a registered broker dealer and that they were not

2    investors in the business of Madoff Securities.

3              Second, the law is different.  Why is the law

4    different?  Because in each of those cases, and if you read

5    each of them you will find that the customer -- that the

6    investors did not have legally enforceable rights.  They had

7    a rescission claim, but they did not have legally

8    enforceable rights.

9              The difference in our case is that we have two

10   federal statutes which preserves our clients' rights to the

11   28(a)(2), which preserves our state law rights to get paid

12   the securities entitlements, and 29(b), which gives our

13   clients the right to, at their option enforce all their

14   contractual rights.  And that is -- 29(b) is explicit

15   notwithstanding fraud on the part of the debtor.  That

16   distinguishes all of those cases.  Because if you read each

17   case they were either equity investors who would not have

18   contractual rights, or they're debt instruments in which the

19   courts ruled as in for example the Silverman case where the

20   -- they were not legally enforceable debts.

21             THE COURT:  Well Charles Ponzi had a debt scheme

22   didn't he?

23             MR. KIRBY:  Right.  Right.  But remember the

24   Bankruptcy Code was enacted long after Charles Ponzi, and as

25   Judge Bryer says, the example that the trustee posits here

Page 47

1    that because Madoff defrauded other customers doesn't change

2    that bankruptcy law does not allow a trustee under

3    bankruptcy fraudulent transfer law to reach valid payments

4    to a defendant that were valid at the time of the transfer.

5              THE COURT:  Did you make that argument to Judge

6    Rakoff?

7              MR. KIRBY:  Well he addresses -- that issue he

8    addresses in his footnote 8 in the Griff decision.  I was

9    not party to Griff.  We did raise that issue in the papers.

10             But the key point here is, as I said before, what

11   makes this case -- why the antecedent debt decision is not

12   controlling is because the Second Circuit has addressed

13   specifically the issue of the enforceability of those

14   contract -- those rights in its Section 546(e) decision, and

15   that's part of the mandate of this case.

16             So in our view the Ponzi scheme cases have no

17   bearing on this case because of the enforceability rights

18   that our clients had at the time of the transfer.

19             Now, I do want to address what the law of the case

20   issue that -- and some of the prior decisions and talk about

21   those, because I think, you know, the trustee has spent a

22   lot of time and our friends from SIPC have said -- suggested

23   that somehow those prior decisions control here.

24             For our clients there are only two cases that are

25   potentially controlling that are law of the case.  The

Page 48

```
 1   Section 546(e) decision, which our clients participated in,
 2   and the antecedent debt decision.  But the Section 546(e)
 3   decision is part of the mandate.  What is now before the
 4   Court is the mandate which the Court is required to apply
 5   not just what was explicitly decided in the case, but what
 6   was implicitly decided in the case.
 7            And so the mandate -- and the second thing --
 8   argument is, it's not just the settlement payment part, but
 9   that when you're looking at a -- for an avoidance provision
10   under the Bankruptcy Code SIPA does not control.  That's
11   also part of the mandate.  The part I read you on the last
12   page for the 546(e) decision is explicit on that point.
13            THE COURT:  But doesn't it control on Rule --
14   under 548(a)(1)(A)?
15            MR. KIRBY:  But part of 548(a)(1)(A) claims is the
16   defense of value.  That's part and parcel of the statute.
17            THE COURT:  Well, I guess what -- and I think the
18   point that Mr. Bell raised was whatever the Second Circuit
19   said about sending them payments and contractor had nothing
20   to do with claims under 548(a)(1)(A).
21            MR. KIRBY:  What --
22            THE COURT:  And hence, 548(c).
23            MR. KIRBY:  Well, the part of -- then let's
24   just --
25            THE COURT:  That's the argument.
```

1          MR. KIRBY:  Let's look at why that doesn't make

2     any sense.  It cannot both be a settlement payment and not

3     value.

4          THE COURT:  Well, that's your underlying

5     assumption.  Well, I'm not sure I agree with it but --

6          MR. KIRBY:  Well, I -- it's not logical.  At the

7     time of the transfer, it was value.

8          THE COURT:  I'm not sure I agree with the

9     assumption that a settlement payment must be value because

10    the broad definition of settlement payments and securities

11    contract serves a particular purpose which has nothing to do

12    with this case.

13         MR. KIRBY:  But the foundation for it is the UCC

14    provision for securities entitlements.  That is the state

15    law.  That has not been preempted.  In fact, it has been

16    borrowed and it has been reinforced in the 34 active part of

17    SIPA.  So it means what you have to -- Your Honor, yesterday

18    counsel sent you an e-mail correcting something that they

19    had said in their prior briefs.  And you -- they quote Your

20    Honor's decision in Cohen.  If Congress has made a clear

21    choice, a Court must enforce Congress' will.  Congress has

22    made a clear choice.  In SIPA, they said that state law

23    controls.  And that's really functionally no different than

24    what Butner says.  And Congress has also in 29(b) said that

25    a victim of a securities fraud can enforce any contractual

Page 50

1    rights that it has.

2         And so --

3         THE COURT:  That's why I asked you about the

4    contractual rights --

5         MR. KIRBY:  Well, Your Honor --

6         THE COURT:  -- as opposed to statutory rights.

7         MR. KIRBY:  -- they are both -- well, statutory

8    rights, I think, are stronger than contractual --

9         THE COURT:  Okay.  But 29(b) deals with the

10   enforcement of contractual rights.  And my understanding,

11   your argument is that you had a right under state and

12   federal law but not necessarily the contract --

13        MR. KIRBY:  It rises out --

14        THE COURT:  -- to retain -- to get and retain a

15   fictitious profits.

16        MR. KIRBY:  It's not -- it (indiscernible) doesn't

17   sound in tort; it sounds in contract.  That's why we have

18   asserted throughout our papers that those are contractual

19   rights.

20        THE COURT:  But how can you have a contractual

21   right to get money that's not in your account?

22        MR. KIRBY:  Your Honor, that's not what the state

23   law provides.  State law doesn't say that the money is not

24   in our account.  Our state law gives us the right if there

25   is a securities entitlement reported to the customer.

Page 51

1    That's a basic federal law.

2             THE COURT:  But it's not -- it's not based on your

3    customer agreement.

4             MR. KIRBY:  It is because the customer agreement

5    contemplates that there will be a report of securities --

6    periodic report of securities.  And that's part and parcel

7    of the contract because when the customer signs the

8    agreement, there's transactions to be done in the future.

9    And so, the only enforceable right that the customer has,

10   based upon that contract, is the reported securities

11   entitlements.  And so when the securities laws recognized

12   that you're entitled to a securities entitlement payment,

13   that sounds in contract; that's not tort.  And so, we assert

14   that those contractual rights are legally enforceable.

15            But -- and so that's why when -- we don't think

16   it's consistent with the mandate from the Second Circuit, in

17   546(e), to retrieve those settlement payments as anything

18   other than valid at the time.  And that's the only question

19   that the Bankruptcy Code asks.  And it's for that reason we

20   think that the mandate of the Second Circuit supersedes

21   anything that Judge Rakoff said in the antecedent debt

22   decision.

23            Now let me also address -- because that's

24   fundamentally, in the antecedent debt decision, the basis

25   for his decision that there were not contract -- there were

1    not legally enforceable rights.  That's the basis in my

2    suggestion to Your Honor why those (indiscernible) cases

3    don't apply because the customer did not have legal

4    enforceable rights.  The difference here is our client had

5    legally enforceable rights at that time.  Back to Judge

6    Breyer's analysis in Shar that if you have valid rights at

7    the time, fraudulent transfer law doesn't apply.

8              Which really gets to what the trustee's really

9    arguing.  We've heard the term fictitious profits.  We said

10    in our papers there were, you know, 50 times.  We've heard

11    it 20 times this morning.  If you read the statutes, you

12    will find nowhere the term "fictitious profits".

13              THE COURT:  But, Mr. Kirby, there's a lot of terms

14    you don't find in the statutes of the cases used to -- in

15    interpreting a statute.

16              MR. KIRBY:  But let me say what is --

17              THE COURT:  You don't find a net winner and net

18    loser in the statute either but it's been accepted by the

19    Second Circuit.

20              MR. KIRBY:  Only for determining net equity claims

21    in the SIPA case.

22              THE COURT:  I understand.  But my point is there

23    are words or phrases that are commonly used that don't

24    appear in the statute.

25              MR. KIRBY:  What the trustee is seeking to do in a

Page 53

1    -- if he can't get it under the avoidance provisions, he's

2    seeking as an equitable matter to recover or -- he uses the

3    term in his brief, disgorge, fictitious profits.

4             THE COURT:  Well, he can only proceed under the

5    avoidance provisions.

6             MR. KIRBY:  And my point exactly.  What he is

7    essentially trying to do is do an end run around the

8    avoidance provisions, what JPMorgan said he cannot do.  He

9    does not have the power to pursue a claim for disgorgement

10   of fictitious profits.  He only has the power to avoid

11   transfers that would invalid at the time.  He cannot win

12   that case.  So what he resorts to the language "fictitious

13   profits".  My disgorgement of fictitious profits.  We've

14   heard Mr. Bell here this morning talking about all the

15   victims.

16            That is why we cited to the Court the Fairfield

17   Greenwich case because it's so important.  What Fairfield

18   Greenwich holds is that until there's avoidance and

19   recovery, SIPA doesn't apply.  It doesn't control.  The

20   Bankruptcy Code provisions apply.  And it is that which --

21   those decisions which we believe, as we set forth in our

22   papers, govern this case.

23            And, you know, Your Honor, I'd like to address --

24            THE COURT:  But how could SIPA not apply until

25   avoidance and recovery if it's SIPA that gives the trustee

1    the power to avoid the transaction in the first place where

2    it didn't exist outside of SIPA?

3                 MR. KIRBY:  That's the special provisions of

4    8(c)(3) which I mentioned to you it's the one provision that

5    gives the trustee standing.  But that -- but the statute

6    simply adopts and incorporates the Bankruptcy Code.

7                 THE COURT:  Yeah.  But that -- Fairfield was the

8    situation where the trustee was trying to stop a settlement

9    with Merkin or with the Fairfield Funds arguing that somehow

10   it was going to make them unable to pay the trustee should

11   the trustee prevail.  This is a different case.

12                MR. KIRBY:  Well, yes.  But the principle of what

13   they're saying is, is that until there is a recovery under a

14   SIPA statute, you don't worry about how -- the net equity

15   principles and what --

16                THE COURT:  Well, certainly, for the purposes of

17   injunctive relief to prevent the settlement, that would be

18   true.

19                MR. KIRBY:  But it speaks to (indiscernible)

20   principle.  Okay?  Which is that their effort to sort of --

21   and somehow suggest that Bankruptcy Code has been amended or

22   changed because this is a SIPA case, that's just flatly

23   contrary to any normal statutory construction.

24                We cite the cases about when you have two federal

25   statutes, the Bankruptcy Code and SIPA.  And you have to

Page 55

1    find an irreconcilable conflict if you're going to say that

2    somehow the Bankruptcy Code value defense has been written

3    out of the statute.  And the answer to that is, is there's

4    no -- they don't even argue that there's an irreconcilable

5    conflict.  They argue that there's an implied repeal of the

6    value defense in order to make SIPA -- the SIPA victims

7    whole.  That's not the norms of statutory construction.

8              THE COURT:  Yeah.  But Judge Rakoff decided that

9    that's not implicated by the Fishman decision --

10              MR. KIRBY:  Yeah.  But it is --

11              THE COURT:  -- or the Fairfield decision.

12              MR. KIRBY:  -- directly implicated by the SIPA --

13    the Fishman decision.  And that's why we say it's part of

14    the mandate because what they said is when you're

15    interpreting a Bankruptcy Code, we look only to the

16    Bankruptcy Code.  We don't look to SIPA.  That's the -- that

17    is part of the (indiscernible).  And that means it's not

18    just what they said but what's implicit in that.  And I read

19    you the appropriate portion.

20              Your Honor, I would like to address for a moment -

21    - you know, we were not parties to Cohen.  But I think that

22    there is a way for Your Honor, should it choose to, to grant

23    our client's motion without revisiting your Cohen decision.

24    And that is because we've asserted two defenses which were

25    not asserting in Cohen.  The 29(b) defense which I identify

Page 56

1    and the 28(a)(2) defense statutory right that gives us the

2    right to payments.  Our state law preserves expressly our

3    state law rights and remedies.  And the trustee has

4    stipulated the factual foundation of both of those statutory

5    defenses.

6              And finally, we have asserted the statute of

7    repose.  And Cohen does not address the statute of repose.

8              THE COURT:  Was that asserted before Judge Rakoff?

9              MR. KIRBY:  Not as a statute of repose.  It's been

10   asserted as a defense.

11             And, Your Honor, what -- even if Judge -- you

12   know, let's assume for a moment that Judge -- he does

13   address the reset to zero or how ever it was phrased at that

14   time.  We now have the CalPERS decision.  The basis for

15   Judge Rakoff's decision to not reject the two-year reach-

16   back provision is he says it's not equitable.  That's now

17   foreclosed by the CalPERS decision.  CalPERS is explicit

18   that the Court has no power to disregard a statute of repose

19   as a matter of equity.  So to the extent that Judge Rakoff

20   addressed that issue, and he did, in the reset to zero

21   argument, that has now been superseded.  Which brings me

22   back to what I suggested --

23             THE COURT:  Are you referring to 546(a) that

24   limits the trustee to bringing an action into yours --

25             MR. KIRBY:  Pardon?

Page 57

1          THE COURT:  Are you referring 546(a) in your

2    statute of repose argument?

3          MR. KIRBY:  Right.  548(a) -- 548(a).  546 is a

4    statute of limitations.  548 is actually a substantive

5    limitation on the trustee's --

6          THE COURT:  But he's only suing to recover two-

7    year transfers, right?

8          MR. KIRBY:  He is.  But he's disregarding the

9    other part of the statute which is that there were

10   obligations incurred that were legally enforceable.  And

11   what the trustee has done is ignore one-half of the statute.

12   He's not brought in our client's cases a claim to avoid

13   obligations.  He did, in the Lowry (ph) case, amend his

14   complaint but then subsequently dismissed those with

15   prejudice.

16          And so, our view is, is that the trustee's efforts

17   to pursue these claims and his appeal to equity and fairness

18   makes no sense when there's a statute gives him a right to

19   avoid the underlying obligations themselves.  And he's never

20   elected to pursue that.

21          THE COURT:  Well, I think his argument was there

22   were no underlying obligations.

23          MR. KIRBY:  Well, if --

24          THE COURT:  And if he's correct, he doesn't have

25   to avoid an obligation that is not enforceable under

Page 58

1    nonbankruptcy law.

2            MR. KIRBY:  I agree.  But it is enforceable under

3    nonbankruptcy law because the Second Circuit has already

4    said that in the 546(e) decision.  His obligation -- and

5    state -- and as I said, the federal securities laws

6    expressly preserves that (indiscernible).

7            So it's our view that the statute of repose,

8    putting aside value, and Judge Rakoff's decision on scope of

9    the reach back powers is no longer valid because of the

10   CalPERS decision.  And every bankruptcy court decision that

11   has addressed the issue of whether that is -- in 548, that

12   two-year reach back limit is -- they've all said that those

13   are statutes of repose.  We cite 10 cases in our papers on

14   that point.

15           They point to a Connecticut case that was decided

16   years before.  All the Courts say that's an outlier and it

17   really -- you can read the decision.  It talks about a

18   statute of limitations.  But the limitations provision's in

19   546(a)(1).  The substantive limitation on the trustee's

20   powers is in 548(a)(1).  They can only go back two years.

21   And the statute says obligations incurred or transfers made.

22   He's pursuing the transfers but he's only elected to pursue

23   half of the remedy.  He needed to avoid the obligations.

24           THE COURT:  Only if the obligations are valid in

25   the first place.

1            MR. KIRBY:  And we've spoken to that, Your Honor.

2            THE COURT:  Yes.

3            MR. KIRBY:  Okay?

4            THE COURT:  Why don't you wrap it up and I'll hear

5     rebuttal.

6            MR. KIRBY:  Thank you.

7            Your Honor, what we would ask the Court to do is

8     to enter propose findings of fact and conclusions of law

9     that would grant our client's summary judgment on two

10    points:  on the value defense and on their statute of repose

11    defense.  And so we ask the Court in each case to enter

12    judgment on behalf of our clients and the proposed findings

13    of fact and conclusions of law on that point.

14           Thank you, Your Honor.

15           MR. MURPHY:  Your Honor, I will be brief.  I will

16    just address several points that were made here.

17           THE COURT:  Well, the principal argument is that

18    the Fishman case -- and it's referenced to UCC Article 8,

19    Section 501 -- 8-501 -- recognized that at the time of the

20    transfer there was a valid debt.  And you have to look to

21    the time of the transfer to determine whether or not there

22    was a valid debt.  And this changes the result or -- as it

23    existed at the time that Judge Rakoff the antecedent debt

24    decision.  I know that Mr. Kirby's clients disagree with the

25    antecedent debt decision when it was made for many reasons.

Page 60

1    But at least after that, at this particular statute -- this

2    particular decision changed that result.  Why don't you

3    address that?

4              MR. MURPHY:  Okay, Your Honor.  The 546(e)

5    decision focused on whether these particular defendants and

6    the other defendants like them get the benefit of the

7    protections of the safe harbor.  That's what the Second

8    Circuit was looking at at the time.  They were looking at

9    the Cal. opening documents and the trading agreements and

10   they decided, as you mentioned before, Your Honor, under a

11   very broad definition, whether they would get the coverage

12   of that safe harbor.

13             Same thing with the settlement payment.  Also a

14   very broad definition under that statute.  That's what the

15   Second Circuit was looking at.  And the Second Circuit

16   determined in that situation, it gave the customers the

17   protection of the safe harbor.  And while it was contrary to

18   the goals of SIPA, this was a very clear protection; it was

19   a very clear statute.  And this was the more specific

20   statute that controlled.

21             The Second Circuit decision did not address value.

22   It did not address -- it did not state in any way that these

23   customer statements indicated valid securities transfers.

24   And it did not state that it constituted valid securities

25   obligations to these customers.  In no way did it do that.

1          With respect --

2          THE COURT:  Well, it did say that Article 8

3     "written crediting of securities to impress them as

4     (indiscernible) creates an enforceable securities

5     entitlement".

6          MR. MURPHY:  The securities contracts here, Your

7     Honor -- the Second Circuit said it was not endorsing the

8     validity of these securities contracts.  So how ever they

9     phrased it there, they ultimately said they were not

10    agreeing with Madoff's fraud.  They were not giving credence

11    to it in any way.  They did get the benefit of the safe

12    harbor but only to that extent.

13         The defendants raised as well, I would note, just

14    separately in the antecedent debt decision that this Court

15    was discussing at length -- I went back while you were

16    discussing with Mr. Kirby.  The securities law in Section

17    29(b) and Section 28(a), those sections were specifically

18    raised in the brief filed by Mr. Kirby in antecedent debt.

19    I have a copy here if I can hand it up.

20         THE COURT:  I have it.

21         MR. MURPHY:  You do.  Okay.

22         I would specifically raise to Your Honor on pages

23    -- at least pages 4, 8, 9 and 17 of that brief.  This is --

24    they had their chance to argue, Your Honor -- this is one of

25    the issues that was withdrawn, the withdrawn antecedent debt

Page 62

1    issue, as Judge Rakoff defined them, was the second -- we'll

2    use the second prong:  "whether and to what extent

3    obligations incurred by Madoff securities may be avoided by

4    the trustee including whether they were exchanged for value

5    such as antecedent debts owed to the antecedent debt

6    defendants.

7              THE COURT:  But the trustee never avoided those

8    obligations003F

9              MR. MURPHY:  The trustee never avoided those

10   obligations, Your Honor.  But he didn't have to.  They

11   weren't valid obligations.  The district court made that

12   determination.

13             And the point is, the issue was raised at that

14   time.  Defendants could have raised any issue that they

15   wanted to as to whether these obligations were valid or not.

16   Whether Judge Rakoff specifically spoke about it --

17             THE COURT:  Well, did Judge Rakoff say they

18   weren't valid obligations or that to the extent they were

19   obligations, there would have been claims against the

20   general estate and that they still existed and couldn't

21   basically set off those obligations against the net equity -

22   - or against customer property.

23             MR. MURPHY:  That explanation is fine as well,

24   Your Honor, all because we're saying to the extent that

25   there are any obligations, they don't qualify as value -- as

Page 63

1    against the customer property estate.

2            We're not writing on a blank slate here, clearly.

3    And this is a SIPA case.  It's not a bankruptcy case.  So

4    you cannot simply divorce SIPA's overall goals and the

5    statutory provisions from the Bankruptcy Code's provisions.

6    They're incorporated to the extent consistent with SIPA.

7            I would mention Mr. Kirby raised the CalPERS

8    decision.  That CalPERS decision didn't address 548(a).  It

9    doesn't apply here.  But even if it did, the trustee is

10   netting in how he comes to whether someone is a net equity

11   holder, net loser or net winner, or whether there's an

12   obligation owed to the estate is not affected.  CalPERS

13   recognized that Courts can extend repose periods based on

14   equitable principles.  But whether it's a statute of repose

15   or not -- and in this district it appears that it's not.

16   There's a bankruptcy court decision in Connecticut which

17   indicated it isn't.

18           But regardless of whether it is or it isn't,

19   that's not what we're doing here.  The trustee's netting

20   method is consistent.  You calculate value by netting

21   deposits and withdrawals which is not constrained in any way

22   by Section 548(c).  And we also -- our methodology doesn't

23   involve the application of equitable tolling in any way or

24   any other type of tolling that would extend our right to

25   avoid beyond the reach-back period.  The trustee is only

Page 64

1    going back two years here.  So it doesn't implicate any of

2    the concerns or finality with regard -- of CalPERS we're

3    talking about.

4             The statute of repose argument -- in one form or

5    another, the statute of repose argument was raised by Mr.

6    Kirby in the antecedent debt decision -- in their briefing -

7    - excuse me -- a brief at page 39 to 40.  You will see that

8    reference the statute of repose.  I submit to you that

9    whether Judge Rakoff explicitly expounded upon any specific

10   issue in that decision or not, those were issues that he was

11   aware of and faced because he had these briefs and that is

12   what he was considering.

13            With respect to the option here to enforce a

14   contract, Your Honor -- and Mr. Kirby suggests that he

15   should be able to enforce what he says is the contract, his

16   right to these payments because he was an innocent customer

17   as against Bernard Madoff.  But the reality is that while

18   Courts have permitted that in a situation where there is an

19   innocent party versus a wrongdoer, that would -- that policy

20   here would further none of the policies that favor

21   enforcement to an innocent party to a legal bargain.  And a

22   war of damages here in this instance, Your Honor, would have

23   the effect of harming other innocent creditors -- excuse me

24   -- other innocent customers.  This was a situation --

25            THE COURT:  Does SIPA specifically preclude a

Page 65

1    broker from using customer property to pay general

2    (indiscernible)?

3            MR. MURPHY:  In -- after a liquidation?  Yes.

4            THE COURT:  Well, even before liquidation.

5            MR. MURPHY:  I believe so.

6            THE COURT:  I assume -- well, SIPA would take any

7    liquidation but are there statutes under the federal

8    securities laws that prevent a broker from using customer

9    property to pay claims of the brokerage?

10           MR. MURPHY:  I'll have to defer to Mr. Bell on

11   that.  But I could tell you at this point that in the

12   situation that we find ourselves in here, which is a

13   liquidation, customer property -- the trustee is authorized

14   to gather and collect and --

15           THE COURT:  I'm asking you a different question

16   which goes back to the time that the payments of the

17   customer property was used to pay noncustomer obligations

18   that was in a violation of federal securities laws.

19           MR. BELL:  You want me to answer now or do you

20   want it later?

21           THE COURT:  Well, what I would ask is, you can

22   supplement the --

23           MR. BELL:  No.  I can answer the question when I

24   get up, Your Honor --

25           THE COURT:  All right.

Page 66

1           MR. BELL:  -- if you wish.

2           MR. MURPHY:  And subject to potentially --

3           THE COURT:  You're being superseded by Mr. Bell.

4           MR. MURPHY:  Superseded or perhaps giving the

5    Court some follow-up, if necessary.

6           The concept I was just talking about momentarily

7    ago, Judge, about enforcing a contract here would be

8    improper because you're harming other net innocent

9    customers.  J&B v. Brown, Fifth Circuit decision, 2014,

10   addressed that.

11          I want to turn to the Boston Trading case that Mr.

12   Kirby was referring to.  In that case, then Judge Breyer --

13          THE COURT:  He's still a judge.

14          MR. MURPHY:  Or Justice Breyer.  Still a judge,

15   correct.

16          THE COURT:  That's because there's no justice

17   until the Supreme Court.

18          MR. MURPHY:  Generally -- what he said that

19   generally fraudulent transfer laws not concerned with

20   prioritizing anybody.  It's just to see that somebody -- a

21   debtor who has limited resources uses those resources to pay

22   the sum of his creditors.  That's the general concept.  But

23   the reason that that doesn't work here is that SIPA is

24   different.  SIPA does prioritize the customer property

25   estate and does give them the right to get the return of the

Page 67

1    customer property and have those claims paid to the extent

2    that they're net equity.  So I think that that case is

3    really inapposite in this situation in a SIPA case.

4              There -- as this Court indicated, I don't think

5    that the Second Circuit ever said that these are enforceable

6    contracts in any way.  546 did not hold that.

7              THE COURT:  Well, it's got that parenthetical I

8    read which suggests that.  It's an enforceable securities

9    entitlement.

10              MR. MURPHY:  The reality is here, Your Honor,

11    those customer statements reflected impossible trades.  I

12    think what Mr. -- taking Mr. Kirby's argument to its logical

13    conclusion, his suggestion is that if in one month his

14    clients perhaps had $10 million in the bank -- on the

15    customer statements and the following month it showed -- the

16    customer statements showed $500 million on it and his

17    clients withdrew $500 million, they had a right to do so.

18              THE COURT:  That's the argument.

19              MR. MURPHY:  Right.  And that's not the case, Your

20    Honor.  Our argument is that that can't be possible.  This

21    Court should not lend itself in aid of a fraud where it's

22    going to harm innocent customers.  And that's what we're

23    talking about here.

24              THE COURT:  I'd like to hear from Mr. Bell later

25    when you're done.

Page 68

1           (Pause)

2               MR. BELL:  Forty-seven years ago, Congress enacted

3       the Securities Investment Protection Act on December 3rd and

4       President Nixon signed it.

5               THE COURT:  You don't know the exact number of

6       days?  I got you on that one.

7               MR. BELL:  More than half my lifetime.  And I have

8       spent 44 -- about 40 years interpreting the statute and

9       speaking with judges regarding it.

10              In Section 7 of the original statute, there was a

11      mandate that the Securities and Exchange Commission create a

12      customer protection law.  1972, the Commission released that

13      rule and the guidance that they had with that discussed the

14      creation of the Securities Investor Protection Act and the

15      creation of Securities Investor Protection Corporation and

16      the whole purpose that they set up to get customers back

17      their assets when brokers were not able to do so, mainly

18      insolvency or, as in this monster case, (indiscernible).

19              So that rule has applied throughout.  And what is

20      that rule?  That is the -- the way I look at it, is the pre-

21      SIPA liquidation lock up the money rule because there are

22      formulae that brokers have to follow to have blocked bank

23      accounts and fully paid securities.  So there's a formula

24      that the Commission rules on and follows through and

25      enforces over the period of time.

1            In this liquidation, the amount of money that

2    should have been locked up was $20 billion.  The amount that

3    was locked up was 250 million.  So clearly, there was a

4    failure to comply with the rules.

5            To answer your specific question, brokers are not

6    allowed to go into that pot and comingle because Congress

7    had a clear intent in having --

8            THE COURT:  Well, what prevents it from being a

9    statute, though, or under a regulation?

10            MR. BELL:  Well, then they get into -- the SEC

11    steps in and slaps their wrist or does more.  In fact, I

12    know recently Merrell Lynch wasn't complying with it and the

13    Commission --

14            THE COURT:  But that's got to be pursuant to some

15    rule or statute.

16            MR. BELL:  There's a rule, 15(c)3-3.  That's the

17    pre-SIPA liquidation customer property rule, at least in my

18    humble opinion because what happens is when I filed this

19    case, I should have walked in.  And we get a trustee

20    appointed and the trustee should have called JPMorgan Chase

21    and said give me the $20 billion you got backed up.  Lo and

22    behold, when we talked to the general counsel and president,

23    they had $250 million.  You know, so --

24            THE COURT:  But is there a rule or a statute that

25    absolutely precludes a broker from using customer property

Page 70

1    to pay debts of the brokerage?

2            MR. BELL:  That's the assistance of the SEC to

3    show that there has to be a liquidation.

4            THE COURT:  Okay.  Let me -- maybe the better way

5    to deal with it since I've raised it --

6            MR. BELL:  Is to get a briefing.

7            THE COURT:  -- is for each side to submit a letter

8    brief on the issue of whether or to what extent a broker

9    deal pre-SIPA pre-liquidation can or cannot use customer

10   property to pay debts of a brokerage.

11           MR. BELL:  Yes, Your Honor.

12           THE COURT:  'Cause that's really to a large

13   extent, what we've been talking about with the

14   (indiscernible) profits and --

15           MR. BELL:  Well --

16           THE COURT:  -- whether these claims would have

17   been claims against the general estate.

18           MR. BELL:  We start to talk it somewhat in our

19   brief but I will add some more.

20           THE COURT:  It will be helpful to have it.  And,

21   as I said, since I raised it, I'll give the other side a

22   chance to --

23           MR. BELL:  Simultaneous briefing?

24           THE COURT:  Yeah.  I want them, say, within 14

25   days.

Page 71

1            MR. BELL:  Let me --

2            THE COURT:  Within 14 days.

3            MR. BELL:  Let me --

4            THE COURT:  It can be by letter briefs, not

5    exceeding five pages.

6            MR. BELL:  Yeah.  If I might just make my comments

7    on what was said and replied.

8            SIPA trustee deals with two kinds of claims, not

9    only customer claims but general unsecured claims.  And in

10   the Rosenman family case cited in our materials back in

11   2010, the Circuit so held.

12           New York Law writes -- or are really general

13   creditor claims.  And I would cite the Court to the decision

14   six months ago in Sager.  If I might --

15           THE COURT:  But what I think Mr. Kirby is arguing,

16   what I understand the arguments -- pre-liquidation -- a pre-

17   SIPA liquidation, there are no two mistakes.  That's why I

18   asked the question about --

19           MR. BELL:  That's what --

20           THE COURT:  -- what the rules were that were --

21           MR. BELL:  That's what Bisconzi (ph) was about

22   against Lehman.  And in our case, we cite -- we give you a

23   Lehman cite post the SIPA liquidation where it's a general

24   creditor right, not a customer right, because that's the

25   important point.  This Court has opined on that.  Judge

Page 72

1    Rakoff has opined on that.  You look upon different natures

2    of a proceeding.  The Circuit -- that's why I started with

3    Rosemann.  You know, and if you look at Sager, I would just

4    call the attentions to the Sager decision at page 5 of the

5    slip opinion, at 697 Fed. App. 708, you will see the Court

6    said, "To the extent New York" -- well, first of all, "Under

7    the Net Equity Decision, this Court held that the proper

8    measure of a customer's assets under SIPA is not determined

9    by reference to BLMIS' falsified account statements but

10   instead by reference to a customer's cash deposits and

11   securities."  He was referring to net equity.

12             THE COURT:  So should the rule be different --

13             MR. BELL:  Well --

14             THE COURT:  -- "in a case that doesn't involve net

15   equity but is a fraudulent conveyance.

16             MR. BELL:  If I might, okay?  To continue with

17   what the Circuit wrote six months ago:

18             To the extent that New York law could possibly be

19   read to suggest a different measure of assets of a BLMIS

20   customer, it conflicts with this Court's interpretation of

21   SIPA and is thus suspended."  And they refer to Butner.  I

22   did hear of Butner.  And here's the Circuit six months ago

23   referring to that.  And you put that together with Rosemann

24   and the long line of cases.  And you go to Samsal (ph) a

25   1946 Supreme Court decision which is also referred to in our

Page 73

1    case.  And the other SIPA cases we cite.

2              It's not -- "Further -- I continue -- "Further" --

3    that was editorial comment.

4              "Further, it is not clear to this Court that the

5    New York Uniform Commercial Code would provide for the

6    relief Ryan Appellants seek given the more specific

7    provision dealing with insolvent debtors and SIPA".  When

8    you read the Uniform Commercial Code, and we cite to that,

9    it excludes out this liquidation proceeding and all

10   liquidation proceedings under a statute that governs this

11   liquidation proceeding, the Securities Investor Protection

12   Act.

13             So clearly, you know -- I'm sorry, Your Honor.

14   That's at page 18 of our brief.

15             One note I would raise.  And I did hear a lot of

16   28(a) and 29.  But if you look at page (ix) of the Appendix

17   of the brief submitted in the antecedent debt matter in June

18   of 2012 by Mr. Kirby on behalf of all the withdrawing

19   defendants, you will see the reference to 15 United States

20   Code, otherwise the 34 Act, and 28(a) is passem, meaning

21   throughout, and 29(b) is 4, 9 and 17.

22             So clearly, these arguments were made to the

23   district judge whose decision I quote, Your Honor, sounds

24   like a mandate.

25             Thank you, Your Honor.

Page 74

1           THE COURT:  Thank you.

2           Now (indiscernible) very briefly, Mr. Kirby.

3           MR. KIRBY:  Yes, Your Honor.

4           On the issue of these were avoidance claims were

5      not SIPA claimants.  You heard counsel say we should not be

6      entitled to an award of damages.  That's not what we're

7      talking about.  This is an avoidance claim.  He seeks -- he

8      has an affirmative obligation to recover.  We have asserted

9      the defense.  This is not -- we're not seeking a general

10     unsecured claim.  We will have paid what we were legally

11     entitled to at the time.

12          With respect to Sager, I mentioned this earlier,

13     that's a SIPA net equity where we're dealing with how the

14     Court treats a net equity claim, this is a avoidance claim

15     and that has no bearing on the Court's analysis because that

16     is addressed in Section 546(e) decision where they said when

17     we're dealing with the Bankruptcy Code, the Bankruptcy Code

18     controls.

19          Counsel mentioned Judge Breyer's decision.  I

20     commend the Court to sort of look through that analysis and

21     the following analysis in Shar because what you focus on and

22     what we've established, we believe for basis of summary

23     judgment, that there were valid claims at the time and they

24     had legally enforceable rights at the time of those

25     transfers but the trustee's -- the obligation -- let me just

Page 75

1    put it this way.  The duty of the trustee was to set aside

2    those obligations, if he could, not having brought that

3    claim, the transfer set at the times satisfied an

4    outstanding obligation.  And we think that ends the inquiry

5    as to the value defense.

6           On the statute of repose, I would simply say this.

7    Counsel suggests that somehow if there is a just a

8    bankruptcy court decision in this district that is contrary

9    to the many bankruptcy court decisions about what it -- the

10   reach back limit is not a statute of repose and should be

11   construed as not a statute of repose in this district.

12          Your Honor, that's inconsistent with the analysis

13   in CalPERS and the related case which we cite in our papers,

14   CTS v. Waldburger that looks at what is a statute of repose

15   and what isn't.  We've analyzed that.  They don't argue that

16   those -- that that analysis is wrong.  They say, oh, by the

17   way, it was the district court -- a bankruptcy court

18   decision.  That doesn't even address it when you look at it.

19   But all the bankruptcy courts that have recognized it as an

20   outlier.  We don't think that they have a net, the defense -

21   - that the statute of repose governs here.  And so,

22   therefore, we ask the Court to enter proposed findings and

23   conclusions.

24          THE COURT:  Thank you.  One other question I have

25   is the issue I raised is whether, aside from fraudulent

Page 76

1    transfer statutes, a broker has the right to recover

2    payments that the broker made out of customer funds to

3    satisfy general obligations of brokerage.

4              MR. BELL:  And you mean in a pre-SIPA mode.

5              THE COURT:  In a pre -- in a non-SIPA --

6              MR. BELL:  Yes.

7              THE COURT:  -- nonbankruptcy --

8              MR. BELL:  Yes, Your Honor.

9              THE COURT:  -- situation.

10             Okay.  Thank you very much.  Thank you for the

11   arguments.  I'll reserve decision.  I look forward to

12   receiving your letter briefs on that issue.

13             MR. KIRBY:  Your Honor, excuse me.  About what

14   should we -- (indiscernible).

15             THE COURT:  I said two weeks.

16             MR. KIRBY:  Two weeks.

17             THE COURT:  I mean, if you want to do it in --

18             MR. MURPHY:  Fourteen days.

19             THE COURT:  Fourteen days --

20             MR. KIRBY:  Fourteen days.  Okay.  That's fine.

21   I'm sorry.

22             MR. MURPHY:  Five pages or less.

23             THE COURT:  All right.  Thank you.  Thank you very

24   much.

25             MR. MURPHY:  Thank you, Your Honor.

1          (Whereupon, these proceedings were concluded at 11:42

2     a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 78

1                    C E R T I F I C A T I O N

2

3    We, Dawn South and Lisa Beck, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    _____

7    Dawn South

8    Certified Electronic Transcriber

9    _____

10   Lisa Beck (CET*D-486)

11   AAERT Certified Electronic Transcriber

12

13

14

15   Date:  December 7, 2017

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

[& - admitted]                                                                     Page 1

**&**

**&**  4:5

**1**

**1**  4:16 22:12,25
  26:25,25 48:14,15
  48:20 58:19,20
**1,391**  21:7
**1,512**  21:6,25 25:1
**10**  58:13 67:14
**10-04350**  2:2
**10-04387**  2:2
**10-04488**  1:9
**10-05110**  2:2
**1000**  3:21
**10004-1408**  1:17
**10111**  3:5
**10:02**  1:20
**11**  5:20 15:19
  39:12
**11501**  78:25
**11th**  6:2
**12**  34:10
**14**  70:24 71:2
**15**  25:4 69:16
  73:19
**15th**  25:1
**1667**  3:21
**17**  61:23 73:21
**18**  73:14
**1934**  29:5 33:15
**1946**  72:25
**1970**  25:4
**1972**  68:12
**1995**  18:17

**2**

**2**  29:9 33:13 46:11
  56:1
**20**  52:11 69:2,21
**20006**  3:13
**20006-1620**  3:22
**2002**  6:2

**2008**  5:20
**2010**  71:11
**2012**  25:1 73:18
**2014**  21:8 23:18
  66:9
**2017**  1:19 10:3
  78:15
**250**  69:3,23
**28**  29:9 33:13
  46:11 56:1 61:17
  73:16,20
**29**  24:9 34:3,5,15
  34:20 35:3 41:9
  43:25 46:12,14
  49:24 50:9 55:25
  61:17 73:16,21

**3**

**3**  27:6 39:10,13
  54:4
**3,282**  20:25 21:21
  22:15
**3-3**  69:16
**300**  78:24
**330**  78:23
**34**  23:24 24:8,21
  25:2 41:9 42:11
  49:16 73:20
**39**  64:7
**3rd**  68:3

**4**

**4**  61:23 73:21
**40**  22:14 64:7 68:8
**422**  40:9,13
**44**  68:8
**45**  3:4
**486**  78:10

**5**

**5**  36:25 72:4
**50**  52:10
**500**  21:13 67:16
  67:17

**501**  59:19
**546**  8:10 9:7,18
  10:17,19 11:1
  22:9,17 23:13
  26:15,22,23 27:3
  27:6 30:3 31:14
  31:19,20 38:3
  39:1 40:16 47:14
  48:1,2,12 51:17
  56:23 57:1,3 58:4
  58:19 60:4 67:6
  74:16
**548**  4:16 9:20,21
  9:22,24,25 11:3,4
  13:13 14:23,24
  17:3 22:12,25,25
  26:10,20,25,25
  27:1,9 39:9 48:14
  48:15,20,22 57:3
  57:3,4 58:11,20
  63:8,22

**6**

**6**  1:19 34:10 39:8
**697**  72:5

**7**

**7**  68:10 78:15
**708**  72:5

**8**

**8**  28:18 37:15
  39:10,13 47:8
  54:4 59:18 61:2
  61:23
**8-501**  59:19
**815**  3:12

**9**

**9**  61:23 73:21

**a**

**a.m.**  77:2
**aaert**  78:11
**able**  64:15 68:17

**absolutely**  25:12
  69:25
**accept**  27:24
  45:22
**accepted**  52:18
**account**  5:11,12
  9:4,4 10:3 13:21
  23:1 26:13 37:5,6
  37:20 41:21 50:21
  50:24 72:9
**accounts**  6:6
  14:19 68:23
**accurate**  78:4
**act**  23:25 24:8,21
  25:2 29:5 33:12
  41:9 42:11 45:7
  68:3,14 73:12,20
**action**  19:16 25:6
  38:16 56:24
**actions**  4:11 7:24
  22:12,13 38:15
**active**  49:16
**actual**  4:16 5:21
**add**  12:3 17:13
  70:19
**additional**  6:7
**address**  8:8 23:16
  32:23 44:3,8,11
  45:18 47:19 51:23
  53:23 55:20 56:7
  56:13 59:16 60:3
  60:21,22 63:8
  75:18
**addressed**  19:3
  22:22 23:4,5
  47:12 56:20 58:11
  66:10 74:16
**addresses**  44:2
  47:7,8
**adjudicate**  29:17
**admitted**  5:17
  18:7,8

adopted  43:3
adoption  11:20
adopts  54:6
adv  1:9 2:2
adversary  4:8
  7:10 21:13
advisory  6:3
affirmative  4:24
  17:4 26:6 34:7,21
  34:23 41:10 43:24
  74:8
affirmed  22:17
  25:13,16
ago  18:23 21:6,7
  22:2 23:12 25:1
  66:7 68:2 71:14
  72:17,22
agree  29:2 49:5,8
  58:2
agreed  4:20
agreeing  36:11
  61:10
agreement  28:9
  28:12 37:1 41:19
  51:3,4,8
agreements  36:12
  36:14,22 60:9
agrees  13:8
ahead  30:15 32:22
  38:23
aid  67:21
al  1:11 4:12,14
alike  13:2
allegations  43:8
allocation  21:16
allow  13:14 47:2
allowed  69:6
allowing  16:8
amend  57:13
amended  54:21
amount  43:16
  69:1,2

amounts  13:23
analysis  19:14
  30:4 39:25 43:3
  43:14 52:6 74:15
  74:20,21 75:12,16
analyzed  75:15
ancona  3:17
answer  27:25 28:4
  32:5 36:17,19
  55:3 65:19,23
  69:5
antecedent  5:12
  6:12,16,24 7:3,4,9
  7:15,16,21,21,23
  8:2,4,9 11:10,15
  11:17,25 12:7
  13:12,19,20,24
  14:12,17,24 17:1
  17:10 19:18 21:7
  22:1 24:5,20
  26:16,17 27:22
  29:24 31:8,17
  35:1,7 38:23
  44:14 47:11 48:2
  51:21,24 59:23,25
  61:14,18,25 62:5
  62:5 64:6 73:17
anybody  19:8
  66:20
app  72:5
appeal  11:17
  25:18 57:17
appear  52:24
appears  63:15
appellants  73:6
appendix  73:16
applicability
  19:20
applicable  19:24
application  63:23
applied  16:18
  17:5 68:19

applies  2:1 13:2
  13:10 25:10
apply  10:24 18:14
  22:3,7 25:5 26:7
  26:24 35:10 38:19
  39:25 43:13 44:6
  48:4 52:3,7 53:19
  53:20,24 63:9
appointed  69:20
approach  45:20
  45:21
appropriate  37:3
  37:6,8 55:19
approximately
  22:13
arbitrarily  10:6
argue  13:11 39:16
  39:18 55:4,5
  61:24 75:15
argued  6:11 8:11
  23:3 39:19,20,21
argues  35:16
arguing  22:24
  27:23 34:8 52:9
  54:9 71:15
argument  6:16
  8:14,24 9:1,2
  10:13 13:19 14:13
  14:22,23 15:8,15
  16:16,25 19:21,25
  20:9 22:9 24:5
  28:18 29:4,10,23
  32:4 33:7,17,22
  34:2,3 35:1,18
  37:15 38:23 40:13
  47:5 48:8,25
  50:11 56:21 57:2
  57:21 59:17 64:4
  64:5 67:12,18,20
arguments  6:10
  8:8 11:6,10,11,23
  20:10,18 29:19
  31:1,2 71:16

73:22 76:11
arises  39:10
arrangement
  36:23
article  28:18
  37:15 59:18 61:2
aside  45:13 58:8
  75:1,25
asked  24:2 36:4
  50:3 71:18
asking  30:18
  37:18 65:15
asks  42:2 51:19
aspect  30:8
assert  5:6 14:11
  51:13
asserted  26:6 34:6
  41:9,10 50:18
  55:24 56:6,8,10
  74:8
asserting  19:5,6,8
  55:25
assets  68:17 72:8
  72:19
assigned  10:6
assist  10:9
assistance  70:2
assume  56:12
  65:6
assumption  49:5
  49:9
attached  37:1
attempt  12:5
  17:14 29:3
attempted  17:18
attentions  72:4
attorney  3:11,20
attorneys  3:3
author  29:15
authorizations
  9:5
authorized  65:13

**available** 12:17
41:4,5
**avenue** 3:12
**avoid** 7:14 10:18
13:17,23 15:23
16:14,21 27:4
53:10 54:1 57:12
57:19,25 58:23
63:25
**avoidance** 4:22
5:25 19:16 26:24
26:25 38:19 48:9
53:1,5,8,18,25
74:4,7,14
**avoided** 7:19 62:3
62:7,9
**award** 74:6
**aware** 19:24
64:11

**b**

**b** 1:23 34:3,5,10
34:15,20 35:3
36:1 39:8 41:9
43:25 46:12,14
49:24 50:9 55:25
61:17 73:21
**back** 11:9,14 15:3
15:5 21:22 22:10
25:4 29:17 31:16
31:17 32:3,13
33:8 35:21 36:3
36:15 38:22,25
41:6 43:1 45:10
52:5 56:16,22
58:9,12,20 61:15
63:25 64:1 65:16
68:16 71:10 75:10
**backed** 69:21
**bad** 25:23
**baker** 3:2,10 4:5
**balances** 40:21
**bank** 43:6,12
67:14 68:22

**bankruptcy** 1:1
1:15,25 10:13,23
13:7 15:17,20
18:11 25:10 30:23
38:19 39:3,4,5,15
40:17,21 42:1,22
44:16 45:1 46:24
47:2,3 48:10
51:19 53:20 54:6
54:21,25 55:2,15
55:16 58:10 63:3
63:5,16 74:17,17
75:8,9,17,19
**bargain** 64:21
**based** 8:4 27:15
36:8 51:2,10
63:13
**bases** 43:18
**basic** 51:1
**basically** 11:5
12:23,25 18:10
24:3 41:24 62:21
**basis** 5:4 17:15
19:25 38:6 42:5
42:13 51:24 52:1
56:14 74:22
**bearing** 47:17
74:15
**beck** 2:25 78:3,10
**behalf** 6:20 21:19
59:12 73:18
**behold** 69:22
**believe** 9:3 17:2
26:7 30:17 39:2
53:21 65:5 74:22
**bell** 3:24 20:20,23
21:3,5 22:2,6,22
23:2 24:6,10,12
24:14,16,22,24
25:24 48:18 53:14
65:10,19,23 66:1
66:3 67:24 68:2,7
69:10,16 70:2,6

70:11,15,18,23
71:1,3,6,19,21
72:13,16 76:4,6,8
**benefit** 60:6 61:11
**bernard** 1:6 64:17
**bernstein** 1:24
**better** 70:4
**beyond** 10:18
13:3 19:7 29:24
63:25
**billion** 21:14 69:2
69:21
**binding** 13:22
**bisconzi** 71:21
**bit** 35:21
**blank** 63:2
**blmis** 4:17 5:21,24
6:1 13:22 14:10
18:24 28:2 36:5
37:19 72:9,19
**blmis's** 5:3
**blocked** 68:22
**book** 28:16 42:16
42:17
**borrowed** 49:16
**borrowing** 43:13
**borrows** 39:5
**boston** 35:23 43:2
43:17 66:11
**bound** 8:1 22:7
25:6 29:20 44:3
**bowling** 1:16
**breyer** 66:12,14
**breyer's** 52:6
74:19
**brief** 15:2 18:16
20:21 23:4,22
24:2,5 29:15,16
30:15 34:4 53:3
59:15 61:18,23
64:7 70:8,19
73:14,17

**briefed** 23:3 24:1
24:11,12,13,21
**briefing** 64:6 70:6
70:23
**briefings** 7:12
**briefly** 19:3 74:2
**briefs** 49:19 64:11
71:4 76:12
**bring** 19:11 38:15
38:16
**bringing** 21:13
56:24
**brings** 56:21
**broad** 49:10 60:11
60:14
**broker** 20:2 46:1
65:1,8 69:25 70:8
76:1,2
**brokerage** 14:19
65:9 70:1,10 76:3
**brokers** 68:17,22
69:5
**brought** 27:13
57:12 75:2
**brown** 66:9
**bryer** 35:22 38:25
46:25
**bryer's** 41:6 43:2
43:13 45:10
**building** 1:10 4:12
**burden** 4:23 5:14
**business** 6:3 46:2
**butner** 49:24
72:21,22

**c**

**c** 3:1 4:1 9:18,21
9:24,25 11:1,4
13:13 17:3 26:10
26:15,20 27:1,9
36:1,2 39:10,13
48:22 54:4 63:22
69:16 78:1,1

[cal - complaint]                                                           Page 4

cal 60:9
calculate 63:20
calculated 32:9,12
calculation 19:16
call 72:4
called 69:20
calpers 56:14,17
  56:17 58:10 63:7
  63:8,12 64:2
  75:13
carry 10:14
carved 22:25
case 1:9 4:22 5:14
  6:22 8:12 12:5
  13:1,10 14:7,9
  17:11 19:10,12,14
  20:7 21:11 22:21
  23:17 26:7 27:7
  28:24,25 29:5
  31:23 32:6,7,7,12
  33:2 35:23 38:8
  38:11,12,13 39:21
  42:9 43:8 44:17
  44:17,18 45:22,24
  46:9,17,19 47:11
  47:15,17,19,25
  48:5,6 49:12
  52:21 53:12,17,22
  54:11,22 57:13
  58:15 59:11,18
  63:3,3 66:11,12
  67:2,3,19 68:18
  69:19 71:10,22
  72:14 73:1 75:13
cases 4:19 5:1
  13:2 27:12 29:18
  38:1 41:3 45:13
  45:22 46:4,16
  47:16,24 52:2,14
  54:24 57:12 58:13
  72:24 73:1
cash 72:10

cause 70:12
certain 37:2
certainly 18:14
  40:9 44:3 54:16
certificate 11:17
certified 78:8,11
certify 23:19 78:3
cet 78:10
chance 61:24
  70:22
change 9:17 47:1
changed 8:11 11:7
  54:22 60:2
changes 59:22
charles 46:21,24
chase 69:20
choice 10:15
  31:21 49:21,22
choose 34:14
  55:22
circuit 8:11,17,19
  9:3,5,15 10:4,12
  12:23 13:5,6
  18:17,23 22:11,16
  22:19 23:4,5,7,10
  23:12,16,19,21
  25:16,20 27:11,14
  28:19,23 30:3
  31:18,24 32:8,13
  32:14,21 37:17,22
  37:25 38:24 39:1
  39:20 40:1,4,6,8
  42:7,8 43:3,11,20
  44:10 47:12 48:18
  51:16,20 52:19
  58:3 60:8,15,15
  60:21 61:7 66:9
  67:5 71:11 72:2
  72:17,22
circuit's 10:1
  18:22
cite 31:23 33:1,2
  35:17,20 54:24

58:13 71:13,22,23
  73:1,8 75:13
cited 19:24 34:5
  53:16 71:10
claim 12:14 13:15
  15:13,13 17:6
  38:9,10 39:11,24
  40:7,7 42:23
  43:10,12 45:2
  46:7 53:9 57:12
  74:7,10,14,14
  75:3
claimants 16:13
  42:25 44:18 74:5
claims 10:20 12:9
  12:10,18,19,19
  16:1,5,7,10,12,23
  19:7,8 24:7 33:14
  35:5 41:5 44:12
  44:13,20,22 48:15
  48:20 52:20 57:17
  62:19 65:9 67:1
  70:16,17 71:8,9,9
  71:13 74:4,23
clear 10:15,19
  18:23 23:24 41:3
  44:19,19 49:20,22
  60:18,19 69:7
  73:4
clearly 18:18
  19:17 22:16 23:4
  24:25,25 25:7
  27:21 45:13 63:2
  69:3 73:13,22
client 28:3 52:4
client's 55:23
  57:12 59:9
clients 26:6,9
  31:15 38:10,10
  41:11 42:3,14,21
  42:24 43:24 44:17
  45:4,5,25 46:10
  46:13 47:18,24

48:1 59:12,24
  67:14,17
code 10:13,23
  15:21 18:11 25:2
  25:10 38:19 39:3
  39:4,6,15 40:17
  40:21 42:1,22
  46:24 48:10 51:19
  53:20 54:6,21,25
  55:2,15,16 73:5,8
  73:20 74:17,17
code's 63:5
cohen 8:6,16
  11:19 17:13,15
  18:1 19:19 21:23
  25:12,17 49:20
  55:21,23,25 56:7
cohen's 17:19
collapse 5:3 16:19
collaterally 17:9
colleague 30:22
collect 65:14
come 13:6 36:3
comes 10:2 15:15
  31:16,17 63:10
comingle 69:6
commend 74:20
comment 73:3
commenting
  25:24
comments 71:6
commercial 73:5
  73:8
commission 25:4
  68:11,12,24 69:13
common 19:6
commonly 52:23
company 1:10
  4:12
compelling 40:13
compensate 12:13
complaint 34:20
  57:14

[completely - court]                                        Page 5

**completely** 13:25
14:7,21 16:20
**comply** 69:4
**complying** 69:12
**comprehensive**
21:10
**conceded** 14:9
22:8 45:4
**conceding** 36:11
**concept** 15:2 66:6
66:22
**concerned** 66:19
**concerns** 64:2
**conclude** 20:17
**concluded** 77:1
**concluding** 43:21
**conclusion** 16:1
18:4 23:14 43:18
67:13
**conclusions** 21:24
59:8,13 75:23
**confessed** 23:18
**conflict** 10:12
11:1 16:2 55:1,5
**conflicts** 72:20
**congregation** 4:13
**congress** 10:15
16:24 18:13,18
40:21,24 49:20,21
49:21,24 68:2
69:6
**congress's** 10:16
**connecticut** 3:12
58:15 63:16
**connection** 9:13
40:10
**consensus** 13:8
**consider** 7:12
9:11 35:12
**considerable**
43:16
**consideration**
12:16

**considered** 8:14
11:5 14:18 15:7
32:11 44:7
**considering** 64:12
**consistent** 7:25
10:25 15:22 23:16
24:16 29:18 31:20
39:7 51:16 63:6
63:20
**consolidated** 4:8
7:12 29:16
**constitute** 7:8
12:10
**constituted** 60:24
**constitutes** 8:12
**constrained** 63:21
**construction**
18:20 39:14 54:23
55:7
**constructive**
30:12
**construe** 26:21
**construed** 75:11
**consumers** 12:13
**contemplates** 51:5
**context** 21:17
34:25
**continue** 72:16
73:2
**continues** 10:5
**contract** 9:6,6
28:13 34:16 37:16
47:14 49:11 50:12
50:17 51:7,10,13
51:25 64:14,15
66:7
**contractor** 48:19
**contracts** 8:20,20
28:6 37:17,19
43:19 61:6,8 67:6
**contractual** 36:6
37:5,7,10 41:11
41:15,17 46:14,18

49:25 50:4,8,10
50:18,20 51:14
**contrary** 18:18
30:18 54:23 60:17
75:8
**control** 32:24,25
47:23 48:10,13
53:19
**controlled** 60:20
**controlling** 47:12
47:25
**controls** 49:23
74:18
**conveyance** 72:15
**convincing** 40:14
**copy** 61:19
**corporation** 3:19
21:20 68:15
**correct** 25:12
33:21 40:9 57:24
66:15
**correcting** 49:18
**correction** 9:23
**could've** 18:14
**counsel** 4:6 17:19
17:19 49:18 69:22
74:5,19 75:7
**country** 78:23
**counts** 4:16
**couple** 38:1
**course** 34:24
**court** 1:1,15 4:2,4
4:21 6:8,14,18,23
7:1,8,23 8:14,17
8:24 9:20,22,24
10:8,14,15 11:3,5
11:20,23 12:1,22
12:25 13:8,9
14:17 16:4,25
17:3,3,21,23 19:3
19:19,24 20:20
21:2,4 22:1,4,19
22:24 24:4,7,11

24:13,15,19,23
25:23 26:2,5,14
26:19 27:2,11,20
28:1,6,8,14,18,23
29:7,10,23 30:5,8
30:12,15,18,25
31:6,13,25 32:10
32:16,18,18,22
33:3,6,17,20,23
34:4,8,12,18,22
34:25 35:4,9,13
35:20 36:3,10,17
36:20,25 37:11,14
37:25 38:5,14,17
38:20,22 39:7,16
39:23 40:1,4,8,19
40:23,24 41:14,17
41:23 42:2,9
44:11,22,25 45:12
46:21 47:5 48:4,4
48:13,17,22,25
49:4,8,21 50:3,6,9
50:14,20 51:2
52:13,17,22 53:4
53:16,24 54:7,16
55:8,11 56:8,18
56:23 57:1,6,21
57:24 58:10,24
59:2,4,7,11,17
61:2,14,20 62:7
62:11,17 63:16
64:25 65:4,6,15
65:21,25 66:3,5
66:13,16,17 67:4
67:7,18,21,24
68:5 69:8,14,24
70:4,7,12,16,20
70:24 71:2,4,13
71:15,20,25 72:5
72:7,12,14,25
73:4 74:1,14,20
75:8,9,17,17,22
75:24 76:5,7,9,15

76:17,19,23
**court's** 8:5 11:14
11:15,16,18,20
72:20 74:15
**courts** 5:10 46:19
58:16 63:13 64:18
75:19
**cover** 44:2,2
**coverage** 60:11
**create** 23:9 29:1
68:11
**creates** 13:14 61:4
**creation** 68:14,15
**credence** 61:10
**crediting** 15:4
61:3
**creditor** 71:13,24
**creditors** 5:23
40:23 64:23 66:22
**cremona** 3:8
**cronogue** 3:16
**cts** 75:14
**customer** 6:6
12:11,12,20 13:15
16:9,22 17:6
18:24 19:1,15
22:20 28:9,12
34:15 36:12,14,22
37:1,2,13,23 38:6
41:19,19,25 44:15
46:5 50:25 51:3,4
51:7,9 52:3 60:23
62:22 63:1 64:16
65:1,8,13,17
66:24 67:1,11,15
67:16 68:12 69:17
69:25 70:9 71:9
71:24 72:20 76:2
**customer's** 37:5
72:8,10
**customers** 6:5
13:23 37:8 38:11
45:25 47:1 60:16

60:25 64:24 66:9
67:22 68:16

**d**

**d** 4:1 78:10
**damages** 32:9,11
64:22 74:6
**date** 21:12 44:20
44:20 45:2,3
78:15
**dawn** 2:25 78:3,7
**day** 20:9,25 21:8
23:18
**days** 21:6,7,21,25
22:15 23:20 25:1
68:6 70:25 71:2
76:18,19,20
**dc** 3:13,22
**de** 11:21
**deal** 70:5,9
**dealer** 20:2 46:1
**dealing** 21:21
39:3 73:7 74:13
74:17
**deals** 50:9 71:8
**dealt** 22:17
**debt** 5:12 6:12,16
6:24 7:3,4,16,21
7:24 8:2,4,9 11:10
11:15,17,25 12:7
13:12,19,20 14:17
14:25 17:1,10
19:18 21:7 22:1
24:5,20 26:16,17
27:22 29:24 31:8
31:17 35:1 38:23
44:14 46:18,21
47:11 48:2 51:21
51:24 59:20,22,23
59:25 61:14,18,25
62:5 64:6 73:17
**debtor** 40:22 43:9
46:15 66:21

**debtors** 73:7
**debts** 7:15,21
13:24 35:7 46:20
62:5 70:1,10
**december** 1:19
5:20 6:2 68:3
78:15
**decided** 7:5 8:18
8:19 11:13 19:17
23:7 29:20 30:1,1
31:1,7,9 32:15
34:10 48:5,6 55:8
58:15 60:10
**decides** 29:16
**deciding** 39:24
**decision** 7:24 8:2
8:4,5,10,16,18
10:2,3 11:14,15
11:16,16,18,18,25
13:21 14:25 17:10
17:13,15 18:22
19:4,20 21:23
22:1,10,11,16
23:12,14 24:25
25:11 29:24 30:2
30:3,8,9 31:4,8,11
31:14,15,17,19,20
31:21 32:8,9,10
32:19 33:3 35:3
38:4 39:1 40:14
40:18 41:7 47:8
47:11,14 48:1,2,3
48:12 49:20 51:22
51:24,25 55:9,11
55:13,23 56:14,15
56:17 58:4,8,10
58:10,17 59:24,25
60:2,5,21 61:14
63:8,8,16 64:6,10
66:9 71:13 72:4,7
72:25 73:23 74:16
74:19 75:8,18
76:11

**decisions** 19:19
23:24 45:17 47:20
47:23 53:21 75:9
**deduction** 44:15
**deemed** 39:1
**defendant** 15:14
47:4
**defendants** 1:12
3:11 4:9,17,18,23
4:25 5:3,6,9,13,17
6:10,15,20,24
7:16,22 8:1,7,8,11
8:16,23 9:17
10:11,25 12:1,5
13:18 14:5,9,13
15:1,6 16:14,17
17:9,14,17,19
18:5 19:4,10,22
21:1 22:14 60:5,6
61:13 62:6,14
73:19
**defense** 4:24 17:4
19:16 26:10 27:1
27:3,10,15,23
33:11 34:7,14,21
41:10 42:13 43:24
48:16 55:2,6,25
56:1,10 59:10,11
74:9 75:5,20
**defenses** 26:6
34:23 55:24 56:5
**defer** 65:10
**defined** 7:3 62:1
**definition** 9:7,9
49:10 60:11,14
**defraud** 5:22
**defrauded** 47:1
**defrauder** 19:1
**delay** 5:22
**deliver** 37:4
**demand** 14:20
37:3,6,8

**demanded** 43:7
**denied** 8:7 17:18
**depended** 14:5
**depletes** 12:16
**deposits** 5:19 13:3
63:21 72:10
**designed** 27:2,3,5
**determination** 7:9
42:6 62:12
**determine** 59:21
**determined** 60:16
72:8
**determining**
12:15 44:20 45:2
52:20
**devine** 13:1
**dialogues** 25:2
**difference** 20:2,4
38:9 44:23 46:9
52:4
**different** 18:3,13
32:10 45:23,24,24
46:3,4 49:23
54:11 65:15 66:24
72:1,12,19
**direct** 6:7 12:6
**direction** 10:20
**directions** 25:21
**directly** 45:18
55:12
**disagree** 59:24
**disbelief** 20:14
**disclosed** 7:5
**discovered** 43:6
**discretion** 36:23
**discretionary**
36:16
**discussed** 68:13
**discussing** 61:15
61:16
**disgorge** 53:3
**disgorgement**
53:9,13

**dismiss** 27:12
**dismissed** 57:14
**dispute** 5:13 26:9
**disregard** 56:18
**disregarding** 57:8
**distance** 17:16
18:5
**distinct** 30:13
**distinction** 10:12
20:3
**distinguish** 43:17
**distinguishes**
46:16
**distributed** 21:14
21:15
**distribution** 21:16
**distributions** 21:4
**district** 1:2 7:23
11:14,15,16,23
13:7 14:17 62:11
63:15 73:23 75:8
75:11,17
**divorce** 63:4
**doctrine** 8:2
**document** 9:4
**documents** 60:9
**doing** 63:19
**dollars** 21:14
**due** 30:21 45:9
**duty** 75:1

### e

**e** 1:23,23 3:1,1 4:1
4:1 8:10 9:7,20
10:17,19 22:9,17
22:25 23:13 26:22
26:23 27:3 30:3
31:14,19,20 38:3
39:1 40:16 47:14
48:1,2,12 49:18
51:17 58:4 60:4
74:16 78:1
**earlier** 40:14
74:12

**editorial** 73:3
**effect** 10:7 64:23
**effectively** 11:12
**effort** 54:20
**efforts** 57:16
**either** 8:17 11:13
28:24 34:16 46:17
52:18
**elected** 43:25
57:20 58:22
**electronic** 78:8,11
**element** 23:9
**elizabeth** 35:21
**else's** 19:9
**empowers** 16:21
**enabled** 16:13
**enacted** 18:18
46:24 68:2
**enacting** 40:20
**endorsing** 61:7
**ends** 75:4
**enforce** 10:16
34:16 41:11 42:4
43:25 45:6,8
46:13 49:21,25
64:13,15
**enforceability**
8:20 47:13,17
**enforceable** 13:22
15:25 42:20 43:19
46:6,8,20 51:9,14
52:1,4,5 57:10,25
58:2 61:4 67:5,8
74:24
**enforcement**
50:10 64:21
**enforces** 68:25
**enforcing** 66:7
**enjoin** 19:12
**enter** 36:16 59:8
59:11 75:22
**entire** 20:15

**entirely** 14:2
**entities** 19:13
**entitled** 14:20
34:7 37:3,23
42:14,18,21 51:12
74:6,11
**entitlement** 14:4
36:9 41:12 42:19
50:25 51:12 61:5
67:9
**entitlements**
28:16 37:12,24
42:5 45:7 46:12
49:14 51:11
**entry** 28:17 42:16
42:17
**equitable** 40:22
41:2,4 53:2 56:16
63:14,23
**equity** 10:8 12:13
12:19 15:12 16:5
16:7,10,12 18:22
19:22 38:9,10
39:24,24 40:15,18
41:4 42:23,25
44:18,22 46:17
52:20 54:14 56:19
57:17 62:21 63:10
67:2 72:7,11,15
74:13,14
**esq** 3:7,8,15,16,17
3:24
**essentially** 6:11
9:5 11:11,22
12:19 13:5 15:18
16:4,18 17:9 20:4
44:15 53:7
**establish** 4:21,24
5:8,9 15:12
**established** 7:7
74:22
**estate** 10:21 12:11
12:12,12,20 13:16

[estate - fraudulent]                                                              Page 8

16:9,12 17:6,7
19:15 44:13,15
62:20 63:1,12
66:25 70:17
**estates** 13:14
**estopped** 17:9
**et** 1:11 4:12,14
**event** 34:16
**events** 32:2
**exact** 68:5
**exactly** 53:6
**example** 24:8
35:25 38:25 41:7
42:15 45:10 46:19
46:25
**exceeding** 71:5
**exceptions** 37:2
**excess** 5:18 12:18
**exchange** 7:15
45:7 68:11
**exchanged** 7:20
62:4
**excludes** 73:9
**exclusive** 7:8
**excuse** 14:24 16:6
17:22 64:7,23
76:13
**exhaustedly** 11:24
**exhaustively**
35:23
**exist** 54:2
**existed** 59:23
62:20
**existing** 5:23
18:20
**expand** 19:7
**expanding** 15:16
19:5
**expands** 15:20
**expense** 13:16
**explain** 45:23
**explanation** 62:23

**explicit** 28:21
37:22 39:2 42:7,9
46:14 48:12 56:17
**explicitly** 38:3
48:5 64:9
**expounded** 14:4
19:18 64:9
**express** 9:15 29:8
**expressly** 6:16
8:18 11:13 56:2
58:6
**extend** 63:13,24
**extension** 23:8
**extent** 7:13,18
9:18 10:24 15:21
31:20 39:7,11
56:19 61:12 62:2
62:18,24 63:6
67:1 70:8,13 72:6
72:18

--- f ---

**f** 1:23 78:1
**face** 34:19
**faced** 64:11
**facie** 4:22 5:14
**fact** 9:25 13:21,25
14:6 17:17 18:1,7
18:16 20:5,14
23:25 34:20 49:15
59:8,13 69:11
**facts** 4:20 5:7 6:9
18:2 22:7,8 26:9
31:3 43:4 45:4,23
45:24
**factual** 5:4 17:16
56:4
**failed** 11:1
**fails** 13:19
**failure** 13:17 69:4
**fairfield** 19:10,20
53:16,17 54:7,9
55:11

**fairly** 45:16
**fairness** 57:17
**faith** 8:5,15 11:18
19:18 21:13 27:12
**false** 5:11
**falsified** 72:9
**family** 71:10
**favor** 15:9 64:20
**fed** 72:5
**federal** 12:8 29:5
33:12 35:4,5,10
42:11 46:10 50:12
51:1 54:24 58:5
65:7,18
**feeder** 19:13
**fell** 9:7
**felt** 9:8
**ferry** 1:10 4:11,12
**fictitious** 5:2,5,19
10:6,6,21 12:24
13:12,25 23:14
28:9 36:13 37:8,9
39:22 41:23 45:14
50:15 52:9,12
53:3,10,12,13
**fifth** 66:9
**figure** 31:1
**filed** 21:15,20
25:17 61:18 69:18
**finality** 23:9 40:23
40:25 64:2
**finally** 56:6
**financial** 43:7
**find** 46:5 52:12,14
52:17 55:1 65:12
**findings** 21:23
59:8,12 75:22
**fine** 25:10 62:23
76:20
**finish** 26:19
**firms** 19:13
**first** 13:1 30:17
32:24 35:14,17

54:1 58:25 72:6
**fishman** 37:17
39:20,21 40:2,4
55:9,13 59:18
**five** 20:11 30:13
34:5 71:5 76:22
**fixes** 44:20 45:1
**flatly** 54:22
**focus** 4:25 27:17
74:21
**focused** 60:5
**focusing** 37:16,17
**follow** 23:19 25:8
29:20 66:5 68:22
**following** 5:17
67:15 74:21
**follows** 68:24
**footnote** 47:8
**foreclosed** 56:17
**foregoing** 78:3
**form** 64:4
**formula** 68:23
**formulae** 68:22
**forth** 53:21
**forty** 68:2
**forward** 76:11
**found** 14:1
**foundation** 49:13
56:4
**four** 4:8
**fourteen** 76:18,19
76:20
**fourth** 18:17
**framework** 40:16
**frankly** 18:11,12
**fraud** 10:10 34:16
43:9 45:5 46:15
49:25 61:10 67:21
**fraudulent** 4:17
4:23 9:14 13:10
14:1,8 16:8,9
18:12 20:13 27:8
30:19,24 35:14,18

35:23 36:2 39:6
39:22 40:2,5,11
43:12 45:11,15
47:3 52:7 66:19
72:15 75:25
**friends** 47:22
**frustration** 30:25
**full** 15:4
**fully** 37:4 68:23
**functionally**
49:23
**fundamental** 29:4
42:13
**fundamentally**
26:23 44:19 51:24
**funds** 54:9 76:2
**further** 7:7 14:3
20:18 64:20 73:2
73:2,4
**future** 5:23 42:3
51:8

**g**

**g** 4:1
**gather** 65:14
**general** 10:21
17:7 44:13 62:20
65:1 66:22 69:22
70:17 71:9,12,23
74:9 76:3
**generally** 35:15
66:18,19
**generate** 6:5
**generated** 14:6
**gestures** 22:5
**getting** 21:2
**give** 10:7 13:3
66:25 69:21 70:21
71:22
**given** 73:6
**gives** 26:10 34:15
35:25 38:14 39:10
41:10 45:5 46:12
50:24 53:25 54:5

56:1 57:18
**giving** 61:10 66:4
**glanced** 24:5
**go** 5:16 21:11,22
22:10 23:10 25:20
30:14,15 32:3,22
33:7 35:11 38:23
58:20 69:6 72:24
**goals** 11:2 60:18
63:4
**goes** 11:14 29:3
41:7 65:16
**going** 12:6 20:5,8
20:10 21:10 24:1
25:19 27:6 29:25
31:7 33:25 35:21
36:17,19 54:10
55:1 64:1 67:22
**good** 4:3,4 8:5,15
11:18 19:18 20:24
21:13 25:23 26:4
27:12
**gotten** 34:18
**govern** 33:13
53:22
**governs** 73:10
75:21
**graham** 3:16
**grant** 55:22 59:9
**granted** 8:7
**green** 1:16
**greenwich** 19:10
53:17,18
**griff** 11:14 14:3
43:15 47:8,9
**group** 25:14
**grouping** 21:10
**guess** 8:24 48:17
**guidance** 68:13

**h**

**h** 1:4 3:24
**half** 21:14 57:11
58:23 68:7

**halpers** 30:8
**hand** 61:19
**handcuffs** 22:6
**happen** 42:2
**happens** 69:18
**harbor** 60:7,12,17
61:12
**harbored** 41:1
**harm** 67:22
**harming** 64:23
66:8
**harmonious** 18:19
**harmonize** 40:15
**hear** 24:6 29:23
59:4 67:24 72:22
73:15
**heard** 52:9,10
53:14 74:5
**hearing** 2:1 4:8
12:3
**held** 5:11 14:18
71:11 72:7
**helped** 18:1
**helpful** 70:20
**highlighted** 10:12
21:18
**hinder** 5:22
**history** 24:17
**hold** 67:6
**holder** 63:11
**holding** 22:15
**holds** 53:18
**hon** 1:24
**honor** 4:3,7,15,19
4:25 6:10,21 7:2
7:11,25 8:4 9:2,23
9:25 10:23 11:2,6
11:11 12:6,16
14:3,14 15:15,25
16:3,16 17:2,3,8
17:25 18:22 19:20
20:6,8,17,24 21:5
21:10 24:2,6

25:25 26:4,22
27:24 30:2 34:6
35:12 36:14,21
37:21 39:8,18
40:12 41:3,6,22
42:15 44:16 45:19
49:17 50:5,22
52:2 53:23 55:20
55:22 56:11 59:1
59:7,14,15 60:4
60:10 61:7,22,24
62:10,24 64:14,22
65:24 67:10,20
70:11 73:13,23,25
74:3 75:12 76:8
76:13,25
**honor's** 49:20
**hostetler** 3:2 4:5
**huh** 29:7 32:16
40:19
**humble** 69:18

**i**

**ibs** 28:24
**identified** 14:16
**identify** 28:11
55:25
**ignore** 23:25
33:25 57:11
**ignores** 16:21
**ii** 4:12
**imagine** 23:17,19
**impairs** 15:6
**implicate** 64:1
**implicated** 55:9
55:12
**implicit** 55:18
**implicitly** 8:18
48:6
**implied** 55:5
**impliedly** 11:13
**imply** 17:5
**important** 21:22
40:20 43:2 53:17

71:25
**importantly** 21:5
**impossible** 18:3
18:24 67:11
**impress** 61:3
**improper** 12:20
16:17 66:8
**improperly** 15:16
**inapposite** 67:3
**included** 6:17
41:12
**including** 7:20
62:4
**inconsistent** 25:9
75:12
**incorporated**
15:21 63:6
**incorporates** 16:5
16:7 26:23 54:6
**incurred** 7:19
57:10 58:21 62:3
**indicated** 15:2
35:14 60:23 63:17
67:4
**indicates** 18:18
**indiscernible** 8:3
10:9 11:8 12:4
13:7 21:24 22:12
23:20 25:15 28:25
37:22 40:25 50:16
52:2 54:19 55:17
58:6 61:4 65:2
68:18 70:14 74:2
76:14
**industry** 25:5
**injunctive** 54:17
**inner** 10:3
**innocent** 64:16,19
64:21,23,24 66:8
67:22
**inquiry** 75:4
**insist** 41:20

**insolvency** 68:18
**insolvent** 6:1 73:7
**instance** 32:24
64:22
**instances** 12:4
**instructive** 43:15
**instruments** 46:18
**integral** 26:25
**intended** 12:13
18:13 35:19
**intent** 5:22 18:18
69:7
**intentional** 27:8
**interest** 20:7
23:22
**interesting** 44:4
**interim** 21:4
**interlocutory**
11:17
**interpretation**
72:20
**interpreted** 40:14
**interpreting**
52:15 55:15 68:8
**intervene** 17:18
**intervenors** 17:20
25:15
**invalid** 14:2,21
53:11
**invested** 6:4
**investment** 1:6
6:3 14:5 22:21
68:3
**investments** 9:19
**investor** 3:19
21:19 68:14,15
73:11
**investors** 19:13,23
46:2,6,17
**involve** 19:14
44:14 63:23 72:14
**involved** 17:17,20

**involving** 13:10
19:13
**irreconcilable**
55:1,4
**irving** 1:4
**issue** 7:10,24 9:11
14:16 18:2 20:16
23:6,6,7 24:19
29:14 32:4,15,20
32:23 40:17 41:8
42:24 44:2 47:7,9
47:13,20 56:20
58:11 62:1,13,14
64:10 70:8 74:4
75:25 76:12
**issued** 7:4,24
11:19 21:6 32:8
33:24,24
**issuer** 43:9
**issues** 7:3,5,11,22
10:2 11:24 12:2,6
14:17 31:22,22
61:25 64:10
**ix** 73:16

### j

**j** 3:8
**j&b** 66:9
**j.p.** 19:3
**james** 4:14
**jennifer** 3:17
**joinders** 6:22
**joint** 4:20 6:8
**jpmorgan** 53:8
69:20
**judge** 1:25 6:13
7:4 8:13 12:9,22
13:20 14:3 15:7
15:23 16:3 17:4
20:3 21:6 22:2,7
22:11,11,17,22
23:6 24:15,21,25
25:11,13,15,21
29:11,16,19,20,25

30:6,9 31:2,3,7,11
31:16,21 32:2,3
33:18,19 34:3,10
35:2,22 38:25
39:16,19 41:6
43:2,13,16,23
44:1,7 45:10
46:25 47:5 51:21
52:5 55:8 56:8,11
56:12,15,19 58:8
59:23 62:1,16,17
64:9 66:7,12,13
66:14 71:25 73:23
74:19
**judges** 68:9
**judgment** 2:1
4:10,15,18 23:18
26:8 59:9,12
74:23
**judicial** 18:20
45:17
**june** 10:2 73:17
**jurisprudence**
18:10
**justice** 66:14,16

### k

**k** 3:21
**keith** 3:7 4:5
**kevin** 3:24
**key** 5:16 47:10
**kinds** 71:8
**kirby** 3:15 25:14
25:19 26:3,4,18
26:21 27:5,13,24
28:4,7,12,15,19
29:2,8,22 30:2,6
30:16 31:5,10,14
32:5,17,20,23
33:9,19,21 34:2,6
34:9,10,13,19,24
35:2,8,11,14,22
36:7,14,19,21
37:9,12,21 38:3,8

[kirby - measures]                                                Page 11

38:16,18,21,24
39:8,18 40:3,6,12
40:20 41:3,16,22
41:25 44:16,24
45:1,18 46:23
47:7 48:15,21,23
49:1,6,13 50:5,7
50:13,16,22 51:4
52:13,16,20,25
53:6 54:3,12,19
55:10,12 56:9,25
57:3,8,23 58:2
59:1,3,6 61:16,18
63:7 64:6,14
66:12 71:15 73:18
74:2,3 76:13,16
76:20
**kirby's** 59:24
67:12
**knew** 43:7,8,8
**know** 6:19 10:14
16:24 21:18 22:16
22:19 23:22 24:1
24:24 25:8,18,19
25:19 31:6 33:24
38:23 47:21 52:10
53:23 55:21 56:12
59:24 68:5 69:12
69:23 72:3 73:13
**knowledge** 45:5
**knows** 25:19

**l**

**l** 1:6
**lack** 5:4
**laid** 31:1
**langley** 18:17
**language** 53:12
**large** 70:12
**larger** 33:11,11
**laughter** 20:22
**law** 5:9 8:12 9:17
11:7 12:4 13:1
17:10 18:11,12,14

18:20 19:7,23
24:21 28:4,22,25
29:1 30:19 31:3
33:14 34:12,13
35:6,10,15,19,24
36:2,8 42:4,20
45:6,11,16,17
46:3,3,11 47:2,3
47:19,25 49:15,22
50:12,23,23,24
51:1 52:7 56:2,3
58:1,3 59:8,13
61:16 68:12 71:12
72:18
**lawfully** 45:9
**laws** 35:4,5 37:16
43:13 51:11 58:5
65:8,18 66:19
**lead** 6:22
**leave** 17:11 20:9
**led** 22:11
**legal** 5:4 10:7 18:2
52:3 64:21 78:22
**legally** 42:19 46:6
46:7,20 51:14
52:1,5 57:10
74:10,24
**legitimate** 6:5
14:19
**lehman** 71:22,23
**lend** 67:21
**length** 61:15
**lens** 15:24
**letter** 70:7 71:4
76:12
**lifetime** 68:7
**limit** 58:12 75:10
**limitation** 57:5
58:19
**limitations** 10:17
15:3 57:4 58:18
58:18

**limited** 40:7 66:21
**limits** 33:3 56:24
**line** 72:24
**lines** 20:23
**lip** 20:4
**liquidation** 1:5
10:24 65:3,4,7,13
68:21 69:1,17
70:3,9 71:16,17
71:23 73:9,10,11
**lisa** 2:25 78:3,10
**litigated** 11:13
**litigation** 13:11
17:1
**little** 35:21
**llc** 1:7
**llp** 3:10
**lo** 69:21
**lock** 68:21
**locked** 69:2,3
**lockerby** 32:7
**logical** 49:6 67:12
**long** 23:23 32:7
46:24 72:24
**longer** 58:9
**look** 8:13 23:11
27:16 33:7,8 39:4
39:4,23 41:1 42:2
44:5 49:1 55:15
55:16 59:20 68:20
72:1,3 73:16
74:20 75:18 76:11
**looked** 6:18
**looking** 9:3 48:9
60:8,8,15
**looks** 75:14
**loser** 52:18 63:11
**losers** 20:12
**losing** 13:16
**lot** 47:22 52:13
73:15
**lowery** 4:14 6:18

**lowry** 57:13
**lynch** 69:12

**m**

**m** 1:24
**machinations**
10:8
**madoff** 1:6 4:2
7:14,15,19 14:6
14:19 22:21 36:23
38:1 46:2 47:1
62:3 64:17
**madoff's** 10:8
61:10
**mail** 49:18
**making** 12:19
**management**
28:24
**mandate** 8:13
11:7 21:25 25:22
31:15,18 32:24,25
33:23,25 39:3
42:8 44:9 47:15
48:3,4,7,11 51:16
51:20 55:14 68:11
73:24
**manner** 40:15
**markets** 27:4
**marks** 11:22
**material** 6:8
**materials** 71:10
**matter** 5:9 29:21
53:2 56:19 73:17
**matters** 23:2
**mckenzie** 3:10
**mean** 24:13,24
76:4,17
**meaning** 73:20
**means** 49:17
55:17
**measure** 72:8,19
**measured** 14:15
**measures** 42:22

[mention - order]

mention  34:20
  35:9 63:7
mentioned  33:14
  54:4 60:10 74:12
  74:19
mentions  35:3,4
merits  7:5
merkin  54:9
merrell  69:12
method  15:9
  63:20
methodology
  63:22
million  22:14
  67:14,16,17 69:3
  69:23
mineola  78:25
minute  34:5 38:14
mismanagement
  43:7
misread  30:21
missouri  4:13
misstating  8:17
mistakes  71:17
mixing  44:16
mode  76:4
moment  8:9,10
  11:9 55:20 56:12
momentarily  66:6
money  21:1,3
  22:14,18 23:8
  36:1,1 37:19
  38:12 41:20 43:9
  43:10 50:21,23
  68:21 69:1
monster  68:18
month  23:12
  67:13,15
months  71:14
  72:17,22
morgan  19:3
morning  4:3,4,7
  20:24 26:4 52:11

53:14
motion  2:1 6:19
  8:6 11:16 21:16
  27:13 29:13 34:11
  55:23
motions  4:18 8:7
mruphy  17:24
murphy  3:7 4:3,5
  4:5 6:21,25 7:2
  9:2,21,23,25 11:4
  17:2,22 20:20,23
  21:18 23:11 59:15
  60:4 61:6,21 62:9
  62:23 65:3,5,10
  66:2,4,14,18
  67:10,19 76:18,22
  76:25
murphy's  23:21

**n**

n  3:1 4:1 78:1
n.w.  3:21
natures  72:1
necessarily  17:5
  50:12
necessary  66:5
need  13:23 40:22
needed  58:23
net  12:13,19
  13:14,16 15:12
  16:5,6,10,12 18:6
  18:9,22 20:12
  38:9,10 39:24,24
  40:14,18 42:23,25
  52:20 54:14 62:21
  63:10,11,11 66:8
  67:2 72:7,11,14
  74:13,14 75:20
netting  15:9,11
  63:10,19,20
never  8:19,21
  20:15 22:21 23:5
  34:2 44:2 57:19

62:7,9
new  1:2,17,17 3:5
  8:13 36:8 42:20
  71:12 72:6,18
  73:5
newly  18:18
nicholas  3:8
night  34:4
nixon  68:4
non  13:2,15 76:5
nonbankruptcy
  58:1,3 76:7
noncustomer
  65:17
normal  54:23
norms  39:13 55:7
nos  2:2
note  6:15 11:11
  16:3 20:10 61:13
  73:15
noted  12:22 15:23
  15:25
notice  35:20
notion  24:7,19
notwithstanding
  46:15
novo  11:21
nub  41:7
number  7:13
  30:20 68:5
numerous  6:14
nw  3:12
ny  3:5 78:25

**o**

o  1:23 4:1 78:1
obligate  37:19
obligated  18:25
obligation  13:13
  28:2 36:2,4,6,7
  37:5,7,10 38:7
  57:25 58:4 63:12
  74:8,25 75:4

obligations  7:19
  13:17,18,22 14:12
  24:21 33:10 57:10
  57:13,19,22 58:21
  58:23,24 60:25
  62:3,10,11,15,18
  62:19,21,25 65:17
  75:2 76:3
obligations003f
  62:8
obviously  41:18
  41:18
occasion  44:1
occurred  23:2
  29:24 31:3 32:2
october  25:1
oh  39:21 44:6
  75:16
okay  4:2 6:23 7:1
  22:24 30:5 31:13
  32:22 35:13 36:20
  37:11,11 50:9
  54:20 59:3 60:4
  61:21 70:4 72:16
  76:10,20
old  78:23
omnibus  8:5,15
  11:18 19:18
once  7:23
opening  9:4 60:9
operating  5:24
opined  71:25 72:1
opinion  10:1
  29:18 43:2,16
  44:1 69:18 72:5
opportunity  12:2
  33:21
oppose  4:18
opposed  50:6
option  34:15,15
  46:13 64:13
order  7:4,6,7,8
  12:7 16:22 31:25

55:6
**original** 68:10
**outlier** 58:16
  75:20
**outline** 30:14
**outside** 54:2
**outstanding** 75:4
**overall** 63:4
**overruled** 43:20
**overrules** 30:8
**owed** 7:16,21
  13:25 36:2 62:5
  63:12

**p**

**p** 3:1,1 4:1
**page** 40:8,12
  48:12 64:7 72:4
  73:14,16
**pages** 61:22,23
  71:5 76:22
**paid** 20:4 37:4
  46:11 67:1 68:23
  74:10
**pan** 31:23 32:7
  33:2
**paper** 10:7 37:1
**papers** 8:16 17:8
  17:11,12 31:23
  33:2 35:17 44:5
  47:9 50:18 52:10
  53:22 58:13 75:13
**paragraph** 36:25
**parcel** 48:16 51:6
**pardon** 56:25
**parenthetical**
  67:7
**part** 14:1 18:12
  27:8 29:4,5 30:3
  30:25 31:15,25
  33:12 39:2 40:16
  42:8,11,12 45:4
  45:11,15,17 46:15
  47:15 48:3,8,11

48:11,15,16,23
  49:16 51:6 55:13
  55:17 57:9
**participants** 6:17
**participated** 6:15
  17:25 48:1
**particular** 20:1
  28:25 49:11 60:1
  60:2,5
**parties** 4:20 6:24
  17:21,23,24 55:21
**party** 47:9 64:19
  64:21
**passed** 21:15
**passem** 73:20
**path** 23:20
**pause** 68:1
**pay** 16:10,22 36:1
  37:6,7,12,19
  43:10 54:10 65:1
  65:9,17 66:21
  70:1,10
**paying** 43:11
**payment** 8:25,25
  9:10 12:17 22:20
  22:20 23:1,1,9
  26:15,15,16 27:18
  27:21,21 28:2,22
  36:12 37:23 41:20
  42:5,6 43:7 48:8
  49:2,9 51:12
  60:13
**payments** 8:22
  9:8,13 26:11,12
  26:12 27:15 28:9
  28:21 36:5,6
  42:15 43:21 47:3
  48:19 49:10 51:17
  56:2 64:16 65:16
  76:2
**pays** 36:1
**people's** 22:14

**period** 10:18 15:5
  23:3 63:25 68:25
**periodic** 51:6
**periods** 15:3
  63:13
**permit** 35:15
**permitted** 33:15
  64:18
**perspective** 29:13
**petition** 44:21
**ph** 10:2 11:15
  13:5 21:9 32:7
  43:3 57:13 71:21
  72:24
**phrased** 56:13
  61:9
**phrases** 52:23
**physical** 37:3,4
  42:17
**picard** 1:4 4:11,12
  4:13,13
**pick** 22:4 45:12
**place** 54:1 58:25
**placed** 25:3
**plaintiff** 1:8
**planned** 30:12
**plaza** 3:4
**plead** 34:23
**please** 26:5
**point** 17:8 18:21
  18:21 20:18 21:22
  30:17 32:6,25
  33:11 39:2 42:3,7
  42:10 43:1,21
  45:12 47:10 48:12
  48:18 52:22 53:6
  58:14,15 59:13
  62:13 65:11 71:25
**points** 5:16 6:2
  25:10 30:13 59:10
  59:16
**policies** 64:20

**policy** 64:19
**ponzi** 5:24 9:14
  10:22 13:10 14:10
  18:6,7,8,10,11,14
  19:23 20:1,5
  40:10 46:21,24
  47:16
**portion** 55:19
**position** 30:7,20
  31:10
**posits** 46:25
**possible** 67:20
**possibly** 72:18
**post** 71:23
**pot** 69:6
**potentially** 47:25
  66:2
**power** 10:9,17
  53:9,10 54:1
  56:18
**powerman** 13:5
**powers** 15:17,19
  15:23 16:13 19:5
  19:6,7 58:9,20
**pre** 68:20 69:17
  70:9,9 71:16,16
  76:4,5
**precedent** 8:2
**preclude** 64:25
**precludes** 69:25
**predates** 18:10
**predicate** 17:17
**preempt** 29:3
**preempted** 33:15
  49:15
**prejudgment** 20:7
  23:22
**prejudice** 57:15
**premise** 27:25
**preserves** 46:10
  46:11 56:2 58:6
**president** 68:4
  69:22

pressing 19:12
presumed 18:19
prevail 54:11
prevent 54:17
65:8
prevents 69:8
previous 11:12
previously 11:10
12:2 19:19
prima 4:22 5:14
primary 4:25
principal 59:17
principle 9:18
13:4 54:12,20
principles 54:15
63:14
prior 5:2,19 47:20
47:23 49:19
priorities 16:15
prioritize 66:24
prioritizes 16:5,6
prioritizing 66:20
priority 12:12,17
16:6,7,12,18,22
pro 2:2
probably 30:11
problem 43:19
procedures 7:6,7
7:9
proceed 53:4
proceeding 6:12
21:20 72:2 73:9
73:11
proceedings 4:8
5:10,25 7:10,25
8:6 18:1 21:13
73:10 77:1 78:4
proffered 23:17
profit 12:24 14:7
profits 5:2,5,11,19
6:5 10:6,7,22
12:18 13:12 28:10
36:13 37:8,9

41:23 45:14 50:15
52:9,12 53:3,10
53:13,13 70:14
prong 62:2
proof 5:15
proper 35:12 72:7
property 12:11,12
12:20 13:16 16:9
16:22 17:6 19:15
62:22 63:1 65:1,9
65:13,17 66:24
67:1 69:17,25
70:10
propose 59:8
proposed 15:1
59:12 75:22
protect 5:4 10:9
protected 42:10
protection 3:19
21:19 60:17,18
68:3,12,14,15
73:11
protections 9:18
60:7
provide 10:21
27:3 35:6 36:22
38:6 44:13 45:14
73:5
provided 5:1 7:6
13:13 23:25 24:18
provides 15:18,20
28:12 50:23
provision 10:25
27:7 29:8 48:9
49:14 54:4 56:16
73:7
provision's 58:18
provisions 10:23
15:21 25:9 30:24
38:19 53:1,5,8,20
54:3 63:5,5
published 21:23

purported 11:6
purpose 49:11
68:16
purposes 26:15,19
54:16
pursuant 69:14
pursue 20:8 39:11
53:9 57:17,20
58:22
pursuing 58:22
put 18:9 21:17
29:12 72:23 75:1
putting 45:13
58:8

**q**

qualified 9:9
27:21
qualify 62:25
question 9:16
25:20 27:20 34:12
34:13 36:3,17,21
51:18 65:15,23
69:5 71:18 75:24
quotation 23:11
quote 49:19 73:23

**r**

r 1:23 3:1,7,16 4:1
78:1
raise 12:2 34:14
47:9 61:22 73:15
raised 6:13,13
11:10,12 14:13,24
15:1 18:3 24:4
34:3,25 48:18
61:13,18 62:13,14
63:7 64:5 70:5,21
75:25
raising 43:9
rakoff 6:13 7:4
12:9,22 13:20
14:3 15:7,23 16:3
17:4 20:3 21:6
22:2,7,11,12,17

22:22 23:7 24:15
24:21,25 25:11,21
29:11,16,19,20,25
30:6 31:2,3,7 32:2
32:3 33:18,19
34:3,10 39:17,19
43:16,23 44:1,7
47:6 51:21 55:8
56:8,19 59:23
62:1,16,17 64:9
72:1
rakoff's 8:13 30:9
31:11,16,21 35:3
56:15 58:8
reach 15:3,5 18:3
35:24,25 47:3
56:15 58:9,12
63:25 75:10
read 27:9 30:15
30:22 34:4 35:2
37:18 39:14 44:1
46:4,16 48:11
52:11 55:18 58:17
67:8 72:19 73:8
reading 24:17
ready 23:22
reaffirm 23:21
reaffirmed 13:4
23:13
real 8:22 10:7
reality 15:7 19:2
64:17 67:10
really 9:1,3 15:8
17:15 20:4,15
41:7 49:23 52:8,8
58:17 67:3 70:12
71:12
reason 26:8,22
51:19 66:23
reasons 13:20
59:25
rebuttal 20:18
59:5

recall   21:9 25:14
receive   37:4 45:9
received   5:2 26:11
   28:16 38:11
receiving   76:12
recipients   5:18
recognized   12:1
   28:20 51:11 59:19
   63:13 75:19
recognizing   28:20
   28:21
recommendation
   11:19,21
record   5:7 6:19
   22:4 78:4
recorded   18:16
recover   13:15
   15:10 16:8,22
   53:2 57:6 74:8
   76:1
recovery   20:12
   53:19,25 54:13
refer   23:5 72:21
reference   6:20
   29:14,14 31:8
   32:1,4 64:8 72:9
   72:10 73:19
referenced   59:18
referred   72:25
referring   56:23
   57:1 66:12 72:11
   72:23
reflect   18:24
reflected   8:22
   67:11
reflections   19:2
refuse   10:5
regard   64:2
regarding   68:9
regardless   17:25
   63:18
registered   46:1

regulation   69:9
reinforced   49:16
reject   56:15
rejected   8:15 11:6
   12:3,9 13:21
   14:18 15:7,8,17
   19:19,25 31:2
   38:1,2
related   10:16
   16:16 19:13 75:13
relating   10:3 16:1
relationship
   19:15,17 25:1
released   68:12
relevant   5:25 37:2
relief   54:17 73:6
relitigate   12:5
rely   45:7
remand   32:21
remanded   32:6
remedies   56:3
remedy   58:23
remember   34:14
   43:4 46:23
repeal   55:5
repeatedly   5:11
replacing   39:15
replied   71:7
report   11:19,20
   36:9 42:18 51:5,6
reported   13:24
   37:13 41:13 50:25
   51:10
reports   28:16
repose   14:23,23
   15:3 30:10 33:4,6
   56:7,7,9,18 57:2
   58:7,13 59:10
   63:13,14 64:4,5,8
   75:6,10,11,14,21
representation
   14:6

requested   20:6
require   36:12
required   48:4
requirement
   37:23
requires   8:12,13
   12:16
rescission   46:7
reserve   76:11
reset   15:8 56:13
   56:20
resolved   21:12
resorts   53:12
resources   12:17
   66:21,21
respect   8:9 9:8
   12:8,11,15 13:17
   14:22 30:9,21
   38:9 61:1 64:13
   74:12
responding   36:11
response   44:5,6
   45:15
responsibility
   32:17
result   9:14 18:13
   40:11,22 41:2
   59:22 60:2
retain   26:11 50:14
   50:14
retrieve   51:17
return   14:5 66:25
returned   7:25
review   11:21
   12:23 13:7
reviewed   11:24
   12:9
reviewing   32:18
reviews   35:23
revised   18:19
revisions   15:22
revisit   31:22,22

revisiting   55:23
richard   3:15
right   26:10 28:8
   28:14,22 29:1,2
   33:20,24 35:22,22
   38:15,17,20 39:10
   41:11,12,14,15,17
   41:20 42:10 44:24
   45:6 46:13,23,23
   50:11,21,24 51:9
   56:1,2 57:3,7,18
   63:24 64:16 65:25
   66:25 67:17,19
   71:24,24 76:1,23
rights   15:6 41:11
   42:4 43:25 45:8
   46:6,8,10,11,14
   46:18 47:14,17
   50:1,4,6,8,10,19
   51:14 52:1,4,5,6
   56:3 74:24
rises   50:13
risk   20:15
road   78:23
rockefeller   3:4
roiling   27:4
rosemann   72:3,23
rosenman   71:10
rule   9:17 13:9,11
   25:16 27:2 32:8
   32:10 35:15 48:13
   68:13,19,20,21
   69:15,16,17,24
   72:12
ruled   32:10 46:19
rules   12:25 16:8
   68:24 69:4 71:20
ruling   9:15
rulings   8:1,13
run   53:7
ryan   73:6

**s**

**s** 3:1 4:1
**safe** 41:1 60:7,12
  60:17 61:11
**sager** 71:14 72:3,4
  74:12
**samsal** 72:24
**satisfaction** 10:20
  26:16 44:14
**satisfied** 5:14
  13:12 75:3
**satisfy** 5:14 16:12
  76:3
**save** 20:18
**saying** 32:7 36:5
  37:7 54:13 62:24
**says** 24:18 26:23
  27:6,17 29:17
  32:14 33:10,14
  35:5,10 37:1,14
  38:3,18 39:12
  40:12,13 43:11
  46:25 49:24 56:16
  58:21 64:15
**scheme** 5:24 9:14
  10:22 14:1,10
  16:18 18:6,7,8,10
  18:11,14 19:23
  20:2,5 40:10
  46:21 47:16
**scope** 6:17 7:2
  58:8
**sec** 69:10 70:2
**second** 8:11,17,19
  9:3,5,15 10:1,4,12
  13:5,6,9 18:22,23
  22:16 25:16 27:11
  27:14 28:19,23
  30:3,7,7 31:18,24
  32:8,13,13,21
  33:1,22 34:2
  37:17,22,25 38:24
  38:25 39:19 40:1

40:4,6,8 42:6,8
43:3,11,20,23
44:9 46:3 47:12
48:7,18 51:16,20
52:19 58:3 60:7
60:15,15,21 61:7
62:1,2 67:5
**section** 4:16 8:10
  24:8 40:16 41:9
  47:14 48:1,2
  59:19 61:16,17
  63:22 68:10 74:16
**sections** 61:17
**secured** 45:6
**securities** 1:7 3:19
  6:4 7:14,16,19
  8:20,22 9:6,10
  12:8 14:6,20
  21:19 24:20 27:4
  27:7 28:5,16 29:6
  29:9 35:4,5 36:9
  36:24 37:4,12,16
  37:24 41:12 42:4
  42:16,17,18 45:6
  45:7 46:2,12
  49:10,14,25 50:25
  51:5,6,10,11,12
  58:5 60:23,24
  61:3,4,6,8,16 62:3
  65:8,18 67:8 68:3
  68:11,14,15,23
  72:11 73:11
**security** 35:10
  36:8
**see** 26:21 29:12
  64:7 66:20 72:5
  73:19
**seeing** 11:23
**seek** 4:15 9:17
  15:10 20:7 73:6
**seeking** 52:25
  53:2 74:9

**seeks** 7:14 74:7
**seen** 19:11,21
**segar** 10:2 23:12
  28:24 38:8
**seminole** 22:10
**semko** 3:17
**sending** 48:19
**sends** 29:17
**sense** 44:11 49:2
  57:18
**sent** 49:18
**separate** 12:11
  17:14 28:15
**separately** 61:14
**serves** 49:11
**service** 20:4
**set** 53:21 62:21
  68:16 75:1,3
**settled** 11:24
  25:17 45:13
**settlement** 8:21
  8:25 9:10 22:20
  23:1,8 26:12,14
  27:21 28:20 42:5
  42:6 43:21 48:8
  49:2,9,10 51:17
  54:8,17 60:13
**settlements** 19:12
**seven** 68:2
**seventh** 11:22
  20:11
**shar** 43:3,4,6,17
  52:6 74:21
**shoes** 19:1
**show** 11:1 70:3
**showed** 67:15,16
**side** 70:7,21
**signed** 68:4
**signs** 51:7
**silverman** 13:4
  46:19
**similar** 18:2 43:4

**simplest** 45:20,21
**simply** 13:18
  15:11 28:12 36:22
  54:6 63:4 75:6
**simultaneous**
  70:23
**single** 35:9
**sipa** 10:13,24,25
  11:2 12:11,16,21
  13:2,2,10,14,15
  15:18,18,19,22
  16:2,4,6,21 17:4
  18:11 23:24 24:1
  24:17 25:3,9 29:4
  29:5 30:21,24
  33:12 38:9,12,13
  38:14,18,18 39:5
  39:5,7,8,10,14,24
  39:24 40:15,17
  42:11,12,23,25
  44:17,18,20 45:13
  48:10 49:17,22
  52:21 53:19,24,25
  54:2,14,22,25
  55:6,6,12,16
  60:18 63:3,6
  64:25 65:6 66:23
  66:24 67:3 68:21
  69:17 70:9 71:8
  71:17,23 72:8,21
  73:1,7 74:5,13
  76:4,5
**sipa's** 15:24 16:17
  63:4
**sipc** 30:22 40:9
  47:22
**situation** 16:11
  43:5 54:8 60:16
  64:18,24 65:12
  67:3 76:9
**six** 11:12 22:18
  23:8,12 71:14
  72:17,22

**slaps**  69:11
**slate**  63:2
**slip**  72:5
**slow**  21:11
**slowest**  21:11
**smb**  1:9
**sole**  7:8
**solutions**  78:22
**somebody**  15:12
    66:20
**somewhat**  70:18
**soon**  21:15
**sorry**  6:21 22:6
    24:6 40:3 73:13
    76:21
**sort**  25:5 54:20
    74:20
**sought**  4:9 26:8
**sound**  21:24 50:17
**sounds**  36:10
    50:17 51:13 73:23
**source**  28:1 36:4,7
**south**  1:10 2:25
    4:11,12 78:3,7
**southern**  1:2
**speak**  25:25
**speaking**  68:9
**speaks**  54:19
**special**  54:3
**specific**  8:8 60:19
    64:9 69:5 73:6
**specifically**  14:16
    47:13 61:17,22
    62:16 64:25
**spends**  43:16
**spent**  47:21 68:8
**spic**  3:20
**spoke**  62:16
**spoken**  59:1
**standing**  39:9
    54:5
**start**  21:24 28:10
    35:11 70:18

**started**  72:2
**state**  12:8 16:17
    28:4,22 33:14
    35:6 42:4 45:6
    46:11 49:14,22
    50:11,22,23,24
    56:2,3 58:5 60:22
    60:24
**stated**  8:21 16:4
**statement**  20:21
    23:21 28:15 29:1
**statements**  4:20
    4:21 6:8 13:22
    16:1 18:24 19:2
    23:14 38:6 60:23
    67:11,15,16 72:9
**states**  1:1 18:17
    73:19
**statute**  10:17
    14:22,23 15:1
    18:19 24:17 25:3
    25:3 26:24,24,25
    27:6,8,9,17,17
    29:6,9 30:9,21,22
    33:4,6,10,13
    35:20 39:5,12
    42:12 44:6,18
    45:16 48:16 52:15
    52:18,24 54:5,14
    55:3 56:6,7,9,18
    57:2,4,9,11,18
    58:7,18,21 59:10
    60:1,14,19,20
    63:14 64:4,5,8
    68:8,10 69:9,15
    69:24 73:10 75:6
    75:10,11,14,21
**statutes**  15:2,3
    33:13 46:10 52:11
    52:14 54:25 58:13
    65:7 76:1
**statutory**  10:20
    15:24 19:6 26:10

37:15 39:14 40:16
    41:14 50:6,7
    54:23 55:7 56:1,4
    63:5
**steals**  35:25
**step**  18:25 36:15
**steps**  21:8 69:11
**stipulated**  45:25
    56:4
**stipulations**  6:7
**stolen**  20:23
**stop**  54:8
**strangers**  38:11
**street**  3:21
**stronger**  50:8
**struck**  40:21
**stuart**  1:24
**stunned**  20:13
**subject**  22:13 66:2
**submit**  64:8 70:7
**submitted**  73:17
**subsequently**
    57:14
**substantive**  15:6
    57:4 58:19
**sufficient**  16:10
    22:9
**suggest**  19:22
    20:1 31:23 54:21
    72:19
**suggested**  10:11
    47:22 56:22
**suggestion**  52:2
    67:13
**suggests**  15:16
    64:14 67:8 75:7
**suing**  57:6
**suite**  3:21 78:24
**sum**  66:22
**summary**  2:1 4:9
    4:15,18 26:8 59:9
    74:22

**superseded**  31:11
    56:21 66:3,4
**supersedes**  30:3
    30:24 51:20
**supplement**  65:22
**supposed**  35:24
    35:25
**supreme**  30:8
    32:10 33:3 66:17
    72:25
**sure**  49:5,8
**suspended**  72:21
**swain**  25:13
**swed**  21:9
**system**  16:6,7
    28:17 42:16,17

**t**

**t**  78:1,1
**take**  20:12 24:2
    42:15 65:6
**talk**  21:8 47:20
    70:18
**talked**  41:17
    69:22
**talking**  30:13
    53:14 64:3 66:6
    67:23 70:13 74:7
**talks**  58:17
**tell**  29:12 65:11
**ten**  20:12
**term**  33:4 52:9,12
    53:3
**terminology**  18:6
**terms**  40:25 52:13
**thank**  9:23 11:4
    20:19 25:25 26:1
    26:2,4 59:6,14
    73:25 74:1 75:24
    76:10,10,23,23,25
**thereof**  6:12
**thing**  33:1 43:23
    48:7 60:13

**think** 9:25 17:24
20:13,20 22:4,8
24:9 25:11,20
26:3 28:23 29:16
30:11 32:1,5
33:23,25 34:5,22
35:12 36:22 41:19
43:1,15 45:20
47:21 48:17 50:8
51:15,20 55:21
57:21 67:2,4,12
71:15 75:4,20
**thought** 6:18
22:24 40:1
**thousand** 23:20
**time** 6:17 7:12,17
7:22 9:10,11 10:4
11:22 12:5 14:14
14:15 16:19,20
18:23 20:11,15
23:23 24:2 26:11
27:16 28:22 42:1
42:3,14,21 43:11
43:17,19,22 45:1
45:8,9 47:4,18,22
49:7 51:18 52:5,7
53:11 56:14 59:19
59:21,23 60:8
62:14 65:16 68:25
74:11,23,24
**times** 5:25 6:14
11:12 34:5 52:10
52:11 75:3
**title** 15:19 25:4
39:12
**today** 20:25
**told** 20:11
**tolling** 63:23,24
**tort** 50:17 51:13
**trade** 6:4 36:24
**trades** 14:10
67:11

**trading** 35:23
43:2,17 60:9
66:11
**tradition** 35:18
**transaction** 54:1
**transactions** 8:22
18:25 40:25 51:8
**transcribed** 2:25
**transcriber** 78:8
78:11
**transcript** 78:4
**transfer** 13:11
14:14,15 15:5,23
16:8,20 26:12
27:8,16 30:19,24
35:15,18,24 36:2
39:6,11 42:1,3
43:13 45:3,11,16
47:3,4,18 49:7
52:7 59:20,21
66:19 75:3 76:1
**transferee** 13:3
15:4 27:3
**transfers** 4:17,23
5:5,7,18,21 7:13
7:17 8:21 9:9 10:3
10:18 12:24 15:11
16:9,14,21 18:12
20:13,15 33:9
39:22 40:2,5,10
42:14 53:11 57:7
58:21,22 60:23
74:25
**treat** 10:5 19:1
33:4
**treats** 74:14
**true** 36:25 54:18
78:4
**trumps** 28:25
**trustee** 1:4 3:3 4:6
4:9,19 7:14,20
13:23 15:6,10,13
15:16,18,19 16:8

16:11,14,21 18:25
19:4,5,12 21:12
25:17 30:17 34:22
35:16 38:15 39:9
39:20,21 40:9
41:4,5 45:3,25
46:25 47:2,21
52:25 53:25 54:5
54:8,10,11 56:3
56:24 57:11 62:4
62:7,9 63:9,25
65:13 69:19,20
71:8 75:1
**trustee's** 4:16,22
8:6 10:17 15:9,23
34:19 44:5 52:8
57:5,16 58:19
63:19 74:25
**trying** 19:4,7
28:10 31:1 43:17
53:7 54:8
**turn** 8:10 11:9
26:3 66:11
**two** 5:2,19 7:18
10:18 12:25 13:14
15:11 20:15 22:12
22:17 23:3,8 26:6
30:20 33:7,13
38:1 46:9 47:24
54:24 55:24 56:15
57:6 58:12,20
59:9 64:1 71:8,17
76:15,16
**type** 63:24

**u**

**u.s.** 1:15,25
**ucc** 36:8 37:22
42:19 49:13 59:18
**uh** 29:7 32:16
40:19
**ultimately** 61:9
**unable** 54:10

**underlying** 49:4
57:19,22
**understand** 30:16
31:10 37:14 38:22
44:25 52:22 71:16
**understanding**
50:10
**understood** 24:25
30:18
**undisputed** 4:20
6:8
**unenforceable**
14:2
**uniform** 73:5,8
**united** 1:1 4:13
18:16 73:19
**unsecured** 71:9
74:10
**use** 62:2 70:9
**uses** 36:1 53:2
66:21

**v**

**v** 1:9 66:9 75:14
**vain** 16:16
**valentine's** 21:8
23:18
**valid** 5:12 8:21
9:12 12:10 14:11
26:12 27:18 43:10
43:11,22 47:3,4
51:18 52:6 58:9
58:24 59:20,22
60:23,24 62:11,15
62:18 74:23
**validity** 45:2 61:8
**value** 5:1,7,10 7:3
7:15,21 9:1,11,16
10:21 12:4,10,15
12:24 13:3,13
14:15 15:5 16:2
16:19 19:16 27:22
35:6 45:14 48:16
49:3,7,9 55:2,6

[value - zero]                                                          Page 19

58:8 59:10 60:21
62:4,25 63:20
75:5
**variation**  6:12
**vehicle**  20:1
**veritext**  78:22
**versus**  4:11,12,13
4:14 13:5 18:17
64:19
**vested**  36:23
**victim**  49:25
**victims**  13:16
20:25 53:15 55:6
**view**  10:1 30:2
32:25 42:7 44:4
47:16 57:16 58:7
**viewed**  9:5 15:24
16:20
**violation**  12:7,21
65:18
**void**  34:17 39:11
**voidable**  39:12

| w |
|---|

**wait**  38:14
**waldburger**  75:14
**walked**  69:19
**want**  8:9 11:9
18:5,21 38:24
41:6 43:1 47:19
65:19,20 66:11
70:24 76:17
**wanted**  18:13
21:17 62:15
**wants**  20:21
**war**  64:22
**washington**  3:13
3:22
**way**  17:6 19:14
27:9 30:22,23
35:12 36:10 39:14
45:20,21 55:22
60:22,25 61:11
63:21,23 67:6

68:20 70:4 75:1
75:17
**we've**  19:21,23
21:20 24:16 26:8
32:14 41:10 52:9
52:10 53:13 55:24
59:1 70:13 74:22
75:15
**weeks**  76:15,16
**went**  61:15
**we're**  74:9
**whatsoever**  9:16
17:15 20:3
**wholly**  14:8
**win**  53:11
**winner**  13:15 18:6
52:17 63:11
**winners**  18:9
**wins**  27:6
**wiping**  27:10
**wish**  66:1
**withdraw**  6:19
18:8 29:14 31:8
32:4
**withdrawals**
63:21
**withdrawing**  32:1
73:18
**withdrawn**  7:9,11
14:17 29:15 61:25
61:25
**withdrew**  67:17
**withholding**
12:18
**word**  37:9
**words**  25:6,7 32:1
52:23
**work**  66:23
**worry**  54:14
**wrap**  59:4
**wrist**  69:11
**writes**  71:12

**writing**  63:2
**writings**  25:12
**written**  18:14
24:17 25:4,7 55:2
61:3
**wrong**  29:25 31:7
32:2 33:19,25
75:16
**wrongdoer**  64:19
**wrote**  25:15 72:17

| x |
|---|

**x**  1:3,13

| y |
|---|

**yeah**  17:21 24:10
24:12,23 54:7
55:8,10 70:24
71:6
**year**  10:18 15:11
20:15 22:18,18
23:3,8 56:15 57:7
58:12
**years**  5:2,19 18:23
20:11,12 33:7
38:2,12 58:16,20
64:1 68:2,8
**yesterday**  24:5
49:17
**york**  1:2,17,17 3:5
36:8 42:20 71:12
72:6,18 73:5

| z |
|---|

**zero**  15:8 56:13
56:20