# EXHIBIT 3


**BNP PARIBAS**

CID# 196894

To: Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin
**Re: Ascot Partners, L.P.—Issuance
of Limited Partnership Interests**
Tel: **12128389603**

Fax:

From: BNP Paribas Securities Corp.

Date:    JUNE 29  2007

Please find attached the transfer and subscription documents.

**Registration:** BNP Paribas Bank & Trust Cayman Limited
**Amount:** $55,000,000
**Fund:** ASCOT PARTNERS LP CLASS C
**Date:** JUNE 29, 2007

**REDACTED**

If you should need any assistance please contact us.

Regards,
Kathleen Donohue

**BNP PARIBAS SECURITIES CORP
C/O BNP Paribas Securities Services
787 Seventh Avenue
8th Floor
New York, NY  10019
Phone: 212-471-8231
Fax: 011-331-4014-3015
Fundinfo@americas.bnpparibas.com**

# ASCOT PARTNERS, L.P.

## Subscription Documents

CONFIDENTIAL

GCC-NYAG  0021917
NYGSAA0020958

## ASCOT PARTNERS, L.P.

### INVESTMENT PROCEDURES

Prospective Investors should read the Confidential Memorandum for Ascot Partners, L.P. (the "Partnership") and the Limited Partnership Agreement of the Partnership as well as this booklet prior to subscribing for a limited partnership interest (the "Interest").

Please complete all applicable pages as indicated below and promptly return this booklet to J. Ezra Merkin (the "General Partner") to reserve an Interest in the Partnership:

- ☐   Background Documentation (pages 2-3)

- ☐   Investor Profile Form (page 11)

- ☐   General Eligibility Representations (pages 12-19)

- ☐   Certification of Non-Foreign Status & Substitute Form W-9 (page 13)

- ☐   Wiring Instructions (page 20)

- ☐   Signature Page (page 21)

- ☐   Notarization Acknowledgment (page 22)

1

CONFIDENTIAL

## BACKGROUND DOCUMENTATION

To comply with applicable anti-money laundering/OFAC rules and regulations, you are required to provide the following information:

**I.      Payment Information**

(a)      Name of the bank from which your payment to the Partnership is being wired (the "Wiring Bank"):

BNP PARIBAS NEW YORK

_____

(b)      Is the Wiring Bank located in the U.S. or another "FATF Country"*?

✓ Yes         ____No

If yes, please answer question (c) below.

If no, please provide the information described in Item II below.

(c)      Are you a customer of the Wiring Bank?

✓ Yes         ____No

If yes, you may skip Item II below.

If no, please provide the information described in Item II below.

**II.      Additional Information**

*Note: This section applies only to investors who responded "no" to question I(b) or I(c) above.*

**The following materials must be provided to the General Partner:**

**For Individual Investors, Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans**

☐      A government issued form of picture identification (*e.g.*, passport or driver's license) of the individual or individual plan participant.

☐      Proof of the individual's or the individual plan participant's current address (*e.g.*, current utility bill), if not included in the form of picture identification.

**For Fund of Funds or Entities that Invest on Behalf of Third Parties Not Located in the U.S. or Other FATF Countries**

---

*      As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering ("FATF Country") are:  Argentina, Australia, Austria, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States.

2

CONFIDENTIAL

GCC-NYAG  0021919
NYGSAA0020960

☐      A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.,* certificate of good standing).

☐      An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐      A completed copy of Exhibit B certifying that the entity has adequate anti-money laundering policies and procedures in place that is consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or foreign anti-money laundering laws and regulations.

☐      A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.,* the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

**For All Other Entity Investors**

☐      A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐      An incumbency certificate attesting to the title of the individual executing the Subscription Agreement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as Exhibit A).

☐      A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other FATF Country certifying that the prospective investor (*i.e.,* the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C).

☐      If the prospective investor is a privately-held entity, a completed copy of Exhibit D listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐      If the prospective investor is a trust, a completed copy of Exhibit E listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note:**     **Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is received by the General Partner. Note that exceptions to any of the above requirements may only be made with the consent of the Compliance Officer. Upon approval of the Investor's subscription and verification of the Investor's identity, a copy of the executed Signature Page will be countersigned by the General Partner and returned to the Investor. If the subscription is not accepted, payment will be returned to the prospective Investor.**

**For additional information, please contact J. Ezra Merkin at 212-838-7200.**

3

GCC-NYAG  0021920
NYGSAA0020961

# ASCOT PARTNERS, L.P.

## SUBSCRIPTION AGREEMENT

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin

**Re: Ascot Partners, L.P.—Issuance of Limited Partnership Interests**

Dear Sir/Madam:

The undersigned (the "Investor") wishes to become a limited partner of Ascot Partners, L.P. (the "Partnership"), a Delaware limited partnership, and to purchase a limited partnership interest (an "Interest") in the Partnership upon the terms and conditions set forth herein, in the Confidential Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement").

Accordingly, the Investor agrees as follows:

## I.    SUBSCRIPTION FOR AN INTEREST

**(A)**    The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and, in connection therewith, subscribes for and agrees to purchase an Interest in and to make a capital contribution (a "Capital Contribution") to the Partnership. Payment in good funds for an Interest must be received prior to the closing date established by the Partnership for the subscription (the "Closing Date"). Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Partnership in a non-interest bearing account. The minimum initial subscription is $500,000, subject to the discretion of J. Ezra Merkin (the "General Partner") to accept a lower amount.

**(B)**    The Investor understands and agrees that the Partnership reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected, the Payment will be returned promptly to the Investor and this Subscription Agreement shall have no force or effect. Upon acceptance of this subscription by the Partnership, the Investor shall become a Limited Partner.

## II.    REPRESENTATIONS AND COVENANTS OF THE INVESTOR

The Investor will not sell or otherwise transfer the Interest without registration under the Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom. The Investor understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available. The Investor understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from registration under the Securities Act. Furthermore, the Interest can only be transferred with the prior authorization of the General Partner,

1

GCC-NYAG 0021921
NYGSAA0020962

which may be withheld in General Partner's sole discretion. The Investor understands that the General Partner may cause a compulsory withdrawal of all or any portion of the Investor's Interest in accordance with the Partnership Agreement.

**(A)**    The Investor has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership. The Investor acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for an Interest, the Investor has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Investor. The Investor is not relying on the Partnership or the General Partner, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers. The Investor's investment in the Interest is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for an Interest as a result of or pursuant to (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site that is not password protected) or broadcast over television or radio, or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

**(B)**    The Investor has not reproduced, duplicated or delivered the Memorandum or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the General Partner.

**(C)**    The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Partnership and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment. The Investor has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of an Interest and has determined that the Interest is a suitable investment for the Investor.

**(D)**    The Investor is aware of the limited provisions for transferability and withdrawal from the Partnership and has read the sections of the Memorandum entitled "Summary of Restated Partnership Agreement—Limited Partner Withdrawals" and "—Transfer of Interests." The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Interest and can afford to hold the investment for an indefinite period of time. The Investor acknowledges that distributions, including, without limitation, the proceeds of withdrawals, may be paid in cash or in kind.

**(E)**    The Investor is acquiring the Interest for its own account, for investment purposes only and not with a view toward distributing or reselling the Interest in whole or in part.

2

GCC-NYAG 0021922

NYGSAA0020963

**(F)**     The Investor understands the method of compensation under the Partnership Agreement between the Partnership and the General Partner and understands the profit allocation (as described in the Partnership Agreement) and its risks including that:

  (1)     the profit allocation may create an incentive for the General Partner to cause the Partnership to make investments that are riskier or more speculative than would be the case in the absence of a profit allocation; and

  (2)     the General Partner may receive increased compensation since the profit allocation will be calculated on a basis which includes realized and unrealized appreciation.

**(G)**     The Investor understands that:

  (1)     No federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment; and

  (2)     The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Agreement will be relied upon by the Partnership and the General Partner in determining the Investor's suitability as a purchaser of an Interest and the Partnership's compliance with federal and state securities laws, and shall survive the Investor's admission as a Limited Partner.

**(H)**     The Investor has all requisite power, authority and capacity to acquire and hold the Interest and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Interest, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound. If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Partnership or the General Partner, will furnish to the Partnership a true and correct copy of any instruments governing the Investor, including all amendments thereto.

**(I)**     All information which the Investor has provided to the Partnership or the General Partner concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

**(J)**     The Investor understands that the value of a Limited Partner's capital account and withdrawals therefrom under the Partnership Agreement, and the performance of the Partnership, may be based on unaudited and in some cases, estimated, valuations of the Partnership's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

**(K)**     The Investor understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the United States. The Investor understands that the Partnership complies with Section 3(c)(7) of the Company Act, which permits private investment companies (such as the Partnership) to sell their interests, on a private placement basis, to an unlimited number of investors that are "qualified

CONFIDENTIAL

GCC-NYAG  0021923

NYGSAA0020964

purchasers" under the Company Act. If the Investor is an entity, the Investor represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Investor pro rata in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt in or out of investments made by the Investor, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

**(L)**   If the Investor is a plan (a "Plan") as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

(1)    such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, and/or Section 4975(e)(3) of the Code and such person is authorized to execute the Subscription Agreement;

(2)    unless otherwise indicated in writing to the Partnership, the Plan is not a participant-directed defined contribution plan;

(3)    the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interests and has determined that, in view of such considerations, the purchase of an Interest is consistent with the Fiduciary's responsibilities under ERISA. Such factors include, but are not limited to:

(a)   the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)   whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result there from;

(c)   the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

(d)   the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)   the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and

(f)   the risks associated with an investment in the Partnership and the fact that the Investor has only limited withdrawal rights.

(4)    the investment in the Partnership has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

(5)    the Fiduciary is: (a) responsible for the decision to invest in the Partnership; (b) independent of the Partnership; and (c) qualified to make such investment decision;

CONFIDENTIAL

GCC-NYAG  0021924

NYGSAA0020965

    (6)      neither the General Partner nor any of its employees or affiliates: (a) manages any part of the Investor's investment portfolio on a discretionary basis; (b) regularly gives investment advice with respect to the assets of the Investor; (c) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the Investor's investment decisions; or (d) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives individualized investment advice concerning the Investor's assets;

    (7)      if any of the foregoing representations in subsection (6) above are false, this subscription for Interests will be rejected unless all of the representations and warranties in this subsection (7) are true and correct:

        (a) though the General Partner may have provided the Fiduciary with a copy of the Memorandum, the Fiduciary, who is independent of the General Partner, has studied the Memorandum and has made an independent decision to purchase Interests solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Investor; and

        (b) The Investor represents and warrants that neither the General Partner nor any of its employees or affiliates: (1) has exercised any investment discretion or control with respect to the Investor's purchase of the Interests; (2) has authority, responsibility to give, or has given individualized investment advice with respect to the Investor's purchase of the Interests; or (3) is the employer maintaining or contributing to such Plan.

**(M)**    If the Investor is a corporation, partnership, limited liability company, trust or other entity, it is not a benefit plan investor (a "Benefit Plan Investor") as defined under the Department of Labor Regulation Section 2510.3-101(f), and less than 25% of the value of each class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) are held by Benefit Plan Investors (as so defined). If the Investor is a Benefit Plan Investor because either (a) it is an employee benefit plan ("Employee Benefit Plan") within the meaning of Section 3(3) of ERISA, or (b) 25% or more of the value of each class of equity interests in the Investor (excluding from such computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors, or if the Investor becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the General Partner promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. By signing this Subscription Agreement, the Investor expressly acknowledges that the Partnership may require that the Investor completely withdraw from the Partnership if the Investor is an Employee Benefit Plan or if 25% or more of the value of any class of equity interests in the Investor (excluding from the computation interests of any individual or entity with discretionary authority or control over the assets of the Investor) is held by Benefit Plan Investors (as so defined).

**(N)**    If the Investor is an insurance company investing the assets of its general account in the Partnership, none of the Investor's general account constitutes assets of an employee benefit plan ("Employee Benefit Plan") as defined in Section 3(3) of ERISA. If the Investor is such an entity and any portion of its general account assets constitute assets of an Employee Benefit Plan (as so defined) or, at any time any portion of its general account become assets of an Employee Benefit Plan, the Investor shall forthwith disclose to the General Partner the percentage of its general account assets held by Employee Benefit Plans. By signing this Subscription Agreement, the Investor expressly acknowledges that the Partnership may require that the

CONFIDENTIAL

GCC-NYAG  0021925

NYGSAA0020966

Investor completely withdraw from the Partnership if any portion of the Investor's general account constitutes assets of an Employee Benefit Plan.

(O)    The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(P)    The Investor understands that Schulte Roth & Zabel LLP acts as counsel to the Partnership, the General Partner and its affiliates. The Investor also understands that, in connection with this offering of Interests and subsequent advice to the Partnership, the General Partner, and its affiliates, Schulte Roth & Zabel LLP will not be representing investors in the Partnership, including the Investor, and no independent counsel has been retained to represent investors in the Partnership.

(Q)    If the Investor is a "charitable remainder trust" within the meaning of Section 664 of the Internal Revenue Code of 1986, as amended, the Investor has advised the General Partner in writing of such fact and the Investor acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

(R)    The Investor understands and agrees that, although the Partnership will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.*, affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's Capital Contributions including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemption thereto by the Partnership, the General Partner or its affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Partnership, the General Partner or its affiliates are a party or by which they are or may be bound. The Partnership may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law or in connection with any government or self regulatory organization request or investigation.

(S)    **Prospective Investors should check the OFAC website at <http://www.treas.gov/ofac> before making the following representations.**

The Investor represents that the amounts contributed by it to the Partnership were not and are not directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and Executive Orders administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals.[*] The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs")

---

[*]    These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

CONFIDENTIAL

GCC-NYAG  0021926

NYGSAA0020967

prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(1)    the Investor;

(2)    any person controlling or controlled by the Investor;

(3)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Partnership may not accept any amounts from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor can not make these representations, the Partnership may require the withdrawal of interests.

The Investor agrees promptly to notify the Partnership should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Partnership may be obligated to "freeze the account" of such Investor, either by prohibiting additional investments from the Investor, declining any withdrawal requests and/or segregating the assets in the account in compliance with governmental regulations, and the Partnership may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the General Partner may, by written notice to the Investor, suspend the payment of withdrawal proceeds to such Investor if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the Investment Manager or any of the Partnership's other service providers.

(T)    The Investor represents and warrants that, to the best of its knowledge, none of:

(1)    the Investor;

(2)    any person controlling or controlled by the Investor;

(3)    if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)    any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[*] or any immediate family member[**] or close associate[***] of a senior foreign political figure as such terms are defined in the footnotes below.

---

[*] A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

7

CONFIDENTIAL

GCC-NYAG  0021927
NYGSAA0020968

(U)     If the Investor is a non-U.S. banking institution (a "Foreign Bank") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Foreign Bank, the Investor represents and warrants to the Partnership that:

    (1)     the Foreign Bank has a fixed address, other than solely an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities;

    (2)     the Foreign Bank employs one or more individuals on a full-time basis;

    (3)     the Foreign Bank maintains operating records related to its banking activities;

    (4)     the Foreign Bank is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities; and

    (5)     the Foreign Bank does not provide banking services to any other Foreign Bank that does not have a physical presence in any country and that is not a regulated affiliate.

(V)     The Investor understands and agrees that any withdrawal proceeds paid to it will be paid to the same account from which the Investor's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

## III.    **GENERAL**

(A)     The Investor agrees to indemnify and hold harmless the Partnership, its General Partner, each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.

(B)     The Investor hereby appoints the General Partner of the Partnership as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

    (1)     any partnership certificate, business certificate, fictitious name certificate, or amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state, local or foreign law;

    (2)     the Partnership Agreement and any amendment duly approved as provided therein; and

---

[**]     "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[***]     A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

CONFIDENTIAL

GCC-NYAG  0021928
NYGSAA0020969

(3)    any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including a certificate of cancellation of the certificate of limited partnership).

This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the subsequent death, disability, incompetency, termination, bankruptcy, insolvency or dissolution of the Investor; *provided, however,* that this power of attorney will terminate upon the substitution of another Limited Partner for all of the Investor's investment in the Partnership or upon the withdrawal of the Investor from the Partnership. The Investor hereby waives any and all defenses which may be available to contest, negate or disaffirm the actions of the General Partner taken in good faith under such power of attorney.

**(C)**    If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

**(D)**    If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the General Partner may require such Investor to fully withdraw from the Partnership as permitted under the Limited Partnership Agreement of the Partnership.

## IV.    TRUSTEE, AGENT, REPRESENTATIVE OR NOMINEE

If the Investor is acting as trustee, agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor (A) with respect to the Investor *and* (B) with respect to the Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement. The Investor agrees to indemnify the Partnership, the General Partner and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained herein, or the assertion of the Investor's lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap") with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap: (a) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum, the Partnership Agreement and the Subscription Agreement; (c) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (d) the Third Party is an "eligible contract participant" under Commodity Futures Trading Commission rules, an "accredited investor" under Regulation D and a "qualified purchaser" under the Company Act and is eligible to receive "hot issues" because it is not a restricted person as contemplated under the rules of the National Association of Securities Dealers, Inc. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

CONFIDENTIAL

GCC-NYAG  0021929
NYGSAA0020970

## V.    ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS

The Partnership may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's or the General Partner's compliance with applicable regulatory requirements or the Partnership's tax status, and the Investor agrees to provide such information as may reasonably be requested.

The Investor agrees to notify the General Partner promptly if there is any change with respect to any of the information or representations made herein and to provide the General Partner with such further information as the General Partner may reasonably require.

This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts.  Each counterpart shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

**GEORGIA SUBSCRIBERS.**  The Interests have been issued or sold in reliance on Paragraph (13) of Code Section 10-5-9 of the Georgia Securities Act of 1973, and may not be sold or transferred except in a transaction which is exempt under such act or pursuant to an effective registration under such act.

10

GCC-NYAG  0021930
NYGSAA0020971

**ASCOT PARTNERS, L.P.**

### INVESTOR PROFILE FORM

## ALL INVESTORS MUST COMPLETE THIS PAGE.

*BNP Paribas Bank & Trust Cayman Limited* [ REDACTED ]

Name of Investor (Please Print or Type)        CLASS C

$ 55,000,000

Amount of Subscription

[ REDACTED ]

Social Security No./Tax I.D. Number

Type of Investor—Please check one:
☐ Individual      ☐ Registered Investment Company    ☐ Joint Tenants (with Rights of       ☐ Employee Benefit Plan
                                                          Survivorship)
☑ Partnership     ☐ Limited Liability Company         ☐ Tenants in Common                  ☐ Individual Retirement Plan
☐ Corporation     ☐ Trust                             ☐ Foundation                         ☐ Keogh Plan
                                                       ☐ Endowment                          ☐ Charitable Remainder Trust

Other —Specify: _____

Full Mailing Address (Exactly as it should appear on labels):

☐ Mr.        ☐ Mrs.        ☐ Ms.        ☐ Miss        ☐ Dr.        ☐ Other _____

BNP Paribas Securities Corp
c/o BNP Paribas Securities Services
787 Seventh Avenue, 8th Floor
New York, NY 10019
Phone: 212-471-8231
Fax: 011-331-4014-3015
FUNDINFO@AMERICAS.BNPPARIBAS.COM

REGISTERED ADDRESS
BNP Paribas Bank & Trust
Cayman Limited
Royal Bank House
Shedden Road
George Town, Grand Cayman
KY1-1006

Telephone number                                          Fax number

Residence (if an individual) or Principal Place of Business (if an e Cayman Islands        Please):

Interested Party:•

REDACTED

Fax number

E-mail address: _____

## COMMUNICATIONS TO INVESTOR

Please send all communications to (Initial one):

**TN** _____ Mailing Address _____ Residence or Principal Place of Business Address
*Initial*                        *Initial*

11

GCC-NYAG  0021931
NYGSAA0020972

**ASCOT PARTNERS, L.P.**

<div style="border:1px solid">

### GENERAL ELIGIBILITY REPRESENTATIONS

**PLEASE COMPLETE ALL APPROPRIATE ITEMS.**

I.    **INVESTOR INFORMATION**

(1)    Formation Date of Entity, if applicable: ___JUNE 2002___

(2)    If an entity, the Investor is organized under the laws of: ___DELAWARE___

(3)    Was the Investor referred to the Partnership by a Placement Agent?    Yes ____    No
    ✓

    If yes, please provide name of Placement Agent: _____

(4)    The Investor _____ (is) __✓__ (is not) (*check one*) a "benefit plan investor" (*e.g.*, any employee pension benefit plan or employee welfare plan, including a non-U.S. pension fund).

    (a) If the Investor is a benefit plan investor, it ___ (is) ___ (is not) subject to the fiduciary responsibility provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and/or the prohibited transaction provisions of Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code").

    (b) If the Investor is a life insurance company, it ___ (is) ___ (is not) investing in the Fund with assets from its general account and ____% of its general account constitute plan assets within the meaning of ERISA.

(5)    If the Investor is exempt from U.S. Federal income tax, please indicate the basis for the exemption: _____

(6)    Is the investor a registered investment company, or a company that is excluded from the definition of investment company solely by reason of the provisions of either Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act of 1940, as amended?

        ( Yes )    No

    If the answer to the question above is yes, please state the number of the investor's beneficial owners:
    _____

</div>

12

**ASCOT PARTNERS, L.P.**

---

**II.**    **CERTIFICATION OF NON-FOREIGN STATUS & SUBSTITUTE FORM W-9**

For All Investors

The Investor certifies that it is a U.S. person and that it is **NOT** (1) a non-resident alien or (2) a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code of 1986, as amended, including income tax regulations) for purposes of U.S. Federal income taxation. The Investor agrees to notify the Partnership within 60 days of the date it becomes a foreign person or entity. The Investor further certifies that its name, U.S. tax identification number, home address (in the case of an individual) and business address (in the case of an entity), as they appear on the Investor Profile Form in this Subscription Agreement, are true and correct. The Investor further certifies that it is **NOT** subject to backup withholding because either (1) it is exempt from backup withholding, (2) it has not been notified by the Internal Revenue Service ("IRS") that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (3) the IRS has notified it that it is no longer subject to backup withholding.* The Investor makes these certifications under penalty of perjury and understands that they may be disclosed to the IRS by the Partnership and that any false statement contained in this paragraph could be punished by fine and/or imprisonment.

| | |
|---|---|
| _____ | JUNE 29, 2007 |
| Signature | Date |

---

\*    The Investor must cross out the preceding sentence if it has been notified by the IRS that it is currently subject to backup withholding because it has failed to report all interest and dividends on its tax return.

13

CONFIDENTIAL

GCC-NYAG 0021933
NYGSAA0020974

**ASCOT PARTNERS, L.P.**

---

GENERAL ELIGIBILITY REPRESENTATIONS

**III.**    **INVESTOR ELIGIBILITY**

    i.    The Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act as set forth on Schedule I hereto. **Read Schedule I carefully and check the appropriate boxes below.**

Individuals:

☐ (I)a  or  ☐ (I)b

Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies:

☑ (II)a  or  ☐ (II)b

Employee Benefit Plans:

☐ (III)a  or  ☐ (III)b  or  ☐ (III)c

Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans:

☐ (IV)

Section 501(c)(3) Organizations:

☐ (V)

Trusts:

☐ (VI)a  or  ☐ (VI)b  or  ☐ (VI)c

Banks, Savings and Loans, and Similar Institutions:

☐ (VII)

Insurance Companies:

☐ (VIII)

14

CONFIDENTIAL

GCC-NYAG  0021934
NYGSAA0020975

## ASCOT PARTNERS, L.P.

### GENERAL ELIGIBILITY REPRESENTATIONS

ii.    The Investor is a "qualified purchaser" under the Company Act (generally, $5 million in qualified investments for individuals and family entities and $25 million in qualified investments for non-family entities) as set forth on Schedule II hereto. **Read Schedule II carefully and check the appropriate boxes below.**

| | |
|---|---|
| Individuals: | ☐ (I) |
| "Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or Other "Family" Entities: | ☐ (II)a-c |
| Trusts (Other Than Trusts That Qualify under II or IV hereof): | ☐ (III)a-b |
| Other Entities: | ☑ (IV)a-b |
| Entities That Do Not Qualify under II-IV: | ☐ (V) |
| All Investors That Are Entities: | ☐ (VI)a    ☑ (VI)b*    ☐ (VI)c* |
| Investors That Checked II or III May Check VII Instead of VI: | ☐ (VII) |
| *Investors That Checked VI(b) or VI(c) Must Also Respond YES or NO To Item VIII: | ☐ YES    ☑ NO |

15

CONFIDENTIAL

GCC-NYAG  0021935
NYGSAA0020976

## ASCOT PARTNERS, L.P.

### GENERAL ELIGIBILITY REPRESENTATIONS

**IV.    ALLOCATIONS OF HOT ISSUES**

The Partnership from time to time may invest, directly or through partnerships or other pooled investment vehicles, in "hot issues", as defined in the rules of the National Association of Securities Dealers, Inc. (the "NASD"). In order for the Partnership to determine whether the Investor is eligible to participate in profits and losses from such "hot issues", the Investor has initialed those statements below which apply to it and, if the Investor is a corporation, partnership, trust or other entity, which apply to any person having a beneficial interest in the Investor:

**A.    General:**

**(Initial as Appropriate)**

_____ 1.    The Investor, or a person having a beneficial interest in the Investor, is a broker-dealer.

_____ 2.    The Investor, or a person having a beneficial interest in the Investor, is an officer, director, general partner, employee or agent of a broker-dealer, or a person associated with a broker-dealer.*

_____ 3.    The Investor, or a person having a beneficial interest in the Investor, has acted as a finder in respect of the public offering of any securities or acted in a fiduciary capacity (including, among others, attorneys, accountants and financial consultants) to the managing underwriter in any such offering.

_____ 4.    The Investor, or a person having a beneficial interest in the Investor, is (i) a senior officer of a bank, savings and loan institution, insurance company, investment company, investment advisory firm, or any other institutional type account (including, but not limited to, hedge funds, private investment partnerships, investment corporations or investment clubs), domestic or foreign, or (ii) a person in the securities department of, or an employee or a person who may influence or whose activities directly or indirectly involve or are related to the function of buying or selling securities for, any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or other institutional type account, domestic or foreign.

---

*    For purposes of statement 2 above, "a person associated with a broker-dealer" includes every sole proprietor, partner, officer, director or branch manager of any NASD member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the NASD. For purposes of statement 2 above, broker-dealers do not include members engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

CONFIDENTIAL

GCC-NYAG 0021936
NYGSAA0020977

## ASCOT PARTNERS, L.P.

---

### GENERAL ELIGIBILITY REPRESENTATIONS

_____ 5(a)   The Investor, or a person having a beneficial interest in the Investor, is a member of the immediate family* of an employee or agent of, or person associated with, a broker-dealer. If the foregoing statement applies to the Investor, or to a person with a beneficial interest in the Investor, the name of the broker-dealer is _____.

_____ 5(b)   If 5(a) is applicable, the Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly by the immediate family member referred to in 5(a).

_____ 6.   The Investor, or a person having a beneficial interest in the Investor, is supported directly or indirectly, to a material extent, by a person described in statements 3 or 4 above.

_____ 7.   The Investor owns equity securities of or has contributed capital to (i) a broker-dealer or (ii) an entity which owns equity securities of or has contributed capital to a broker-dealer.** The name of the broker-dealer is: _____.

_____ 8.   The Investor is supported directly or indirectly, to a material extent, by an immediate family member who is a person referred to in 7 above. The name of the broker-dealer is: _____.

_____ 9.   The Investor is an employee benefit plan qualified under the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA") and

(a) is sponsored by a broker-dealer; or

(b) is sponsored by an entity engaged in financial services and either does not permit participation by a broad class of participants or is designed primarily for the benefit of persons restricted from purchasing hot issues under the rules of the NASD.

### OR

__TN__ 10.   None of the above statements are applicable.

---

* The Investor understands that for purposes of the NASD Rules, the term "immediate family" includes parents, mother-in-law or father-in-law, husband or wife, brother or sister, brother-in-law or sister-in-law, son-in-law or daughter-in-law, children and any other person supported, directly or indirectly to a material extent, by a person identified in statement 1 or 2 above.

** For purposes of statements 7 and 8 above, broker-dealers do not include broker-dealers engaged solely in the purchase or sale of either investment company/variable contracts securities or direct participation program securities.

17

CONFIDENTIAL

GCC-NYAG  0021937
NYGSAA0020978

## ASCOT PARTNERS, L.P.

---

### GENERAL ELIGIBILITY REPRESENTATIONS

**B.    Owners, Direct or Indirect, of Securities of or Interests in Broker-Dealers:**

*If statement 7 or statement 8 has been initialed, please indicate which of the following statements are true:*

\_\_\_\_\_    A.    The Investor's interest* in the broker-dealer is passive and constitutes less than 10% of the equity interest or capital of the broker-dealer.

\_\_\_\_\_    B.    The Investor is not in a position, by virtue of its ownership interest in a broker-dealer, to direct the allocation of hot issues.

\_\_\_\_\_    C.    The shares of the broker-dealer in which the Investor has an interest, or the shares of the parent of such broker-dealer, are publicly traded on an exchange or on NASDAQ.

\_\_\_\_\_    D.    The Investor is an account established for the benefit of *bona fide* public customers (such as an insurance company separate, general or investment account or a bank trust account).

**OR**

\_\_\_\_\_    E.    None of the above statements (A, B, C and D) are applicable.

**C.    Nominees:**

*Please answer each of the following questions, if applicable*

1.    Is the Investor investing as a nominee for, or otherwise for or on behalf of, anyone other than the Investor?

\_\_\_\_\_ Yes    ✓ No

2.    If the answer to question C. 1. is "yes", the person for whom the Investor is acting:

*Please check one*

\_\_\_\_\_ is an individual

\_\_\_\_\_ is an entity, but is not an investment fund

✓ is an investment fund (including any family investment vehicle, trust, hedge fund, investment club or other entity, group or association by means of which more than one individual makes investments)

---

\*    The interest of the Investor in a broker-dealer as a result of an investment in an entity (the "Intermediate Owner") which owns or has contributed capital to such broker-dealer is equal to the product of the investor's percentage interest in the Intermediate Owner and the Intermediate Owner's percentage interest in the broker-dealer.

18

GCC-NYAG  0021938
NYGSAA0020979

## ASCOT PARTNERS, L.P.

---

### GENERAL ELIGIBILITY REPRESENTATIONS

**D.     Additional Information:**

      If the Investor is a natural person, indicate the occupation and business affiliation of the Investor. If the Investor is a private corporation, partnership, trust, self-directed employee benefit plan (*e.g.*, an Individual Retirement Account) or other private entity, indicate the name(s), occupation(s) and business affiliations of all person(s) having a beneficial interest in the Investor. **In the case of an Investor which is an investment fund, the Investor may either (i) provide the information requested below with respect to its beneficial owners that participate in profits and losses attributable to hot issues or (ii) if the Investor does not wish to provide such information, contact the General Partner to obtain a form of letter to be delivered to the Partnership by legal counsel or independent certified public accountants to the Investor relating to participation in "hot issues".**

<div style="text-align:center">

**Name**                                       **Occupation**

_____        _____

_____        _____

_____        _____

</div>

The Investor hereby agrees to promptly notify the Partnership should there be any change in the information set forth in this response.

19

GCC-NYAG  0021939
NYGSAA0020980

**ASCOT PARTNERS, L.P.**

---

**WIRING INSTRUCTIONS\***

Citibank, NA
New York, New York
ABA Number REDACTED
Account Name: Morgan Stanley & Co., Inc.
Account Number: REDACTED
Sub Account Name: Ascot Partners, L.P.
Sub Account Number REDACTED

\*IMPORTANT

1.  Please have your bank identify on the wire transfer the name of the prospective Investor.

2.  We recommend that your bank charge its wiring fees separately so that the amount you have elected to
    invest may be invested.

> BNP Paribas New York
> 919 Third Avenue
> New York, NY  10022
> ABA: REDACTED
> Swift Code: REDACTED
> CHIPS: REDACTED
> For credit to: BNP Paribas Bank & Trust Cayman Limited REDACTED
> REDACTED
> Account #: REDACTED

20

CONFIDENTIAL

GCC-NYAG  0021940
NYGSAA0020981

## ASCOT PARTNERS, L.P.

### SIGNATURE PAGE

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

(a)   the undersigned has carefully read and is familiar with this Subscription Agreement, the Memorandum and the Partnership Agreement;

(b)   the information contained herein is complete and accurate and may be relied upon; and

(c)   the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement and the execution and receipt of the Partnership Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this <u>28</u> day of <u>JUNE</u>      , <u>2007</u>.

INDIVIDUALS

ENTITIES
BNP Paribas Bank & Trust Cayman Limited [REDACTED]
**REDACTED**

_____
Signature

_____
Print Name of Entity

_____
Print Name

By: _____
Authorized Signature

TERRANCE NORMAN - AUTHORIZED SIGNATORY
_____
Print Name and Title

_____
Additional Investor Signature

_____
Print Name

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR INTERNAL USE ONLY**
**To be completed by J. Ezra Merkin**

_____
SUBSCRIPTION ACCEPTED
AS TO $ 55,000,000 —
ASCOT PARTNERS, L.P.
By: J. Ezra Merkin .
By: _____
Date: _____ , 2007

21

CONFIDENTIAL

GCC-NYAG  0021941
NYGSAA0020982

## ASCOT PARTNERS, L.P.

### NOTARIZATION ACKNOWLEDGMENT

ACKNOWLEDGMENT
NEW YORK

STATE OF _____ )
                                        ) ss:
COUNTY OF ___NEW YORK___ )

On this 28 day of JUNE , 2007 , before me personally appeared ___TERRANCE NORMAN___ , to me known and known to me to be the individual who executed the foregoing Subscription Agreement in the capacity therein indicated, who acknowledged that he or she, being authorized to do so, executed the foregoing instrument for the purposes therein contained and in the capacity therein indicated as his or her own free act and deed.

_____
Notary Public

My Commission Expires:

_____

KATHLEEN P. DONOHUE
Notary Public, State of New York
No. 01DO6126217
Qualified in New York County
Commission Expires May 2, 20___

KATHLEEN DONOHUE WILL NOTARIZE THE ORIGINALS.

22

GCC-NYAG  0021942
NYGSAA0020983

## ASCOT PARTNERS, L.P.

---

### SCHEDULE I

**i.**  **ACCREDITED INVESTOR STATUS**

The Investor must certify that:

**I.**  **Individuals**

(a)  The Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities; or

(b)  The Investor had individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.**

**II.**  **Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies**

(a)  The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the securities offered; or

(b)  All of the Investor's equity owners are accredited investors as described in this Schedule I.  The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.

**III.**  **Employee Benefit Plans**

(a)  The Investor is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the decision to invest in the

---

*  Notwithstanding anything to the contrary herein, for purposes of determining "net worth", the principal residence owned by an individual shall be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property. "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

**  For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse):  (i) the amount of any tax-exempt interest income under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

SI-1

Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser. The name of such plan fiduciary is:

_____

or

(b)    The Investor is an employee benefit plan within the meaning of ERISA and has total assets in excess of $5,000,000; or

(c)    The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

## IV.    Individual Retirement Accounts, Keogh Plans and Other Self-Directed Defined Contribution Plans

The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years and reasonably expects to reach the same income level in the current year. *The General Partner, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

## V.    Section 501(c)(3) Organizations

The Investor is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, was not formed for the specific purpose of acquiring the securities offered, and has total assets in excess of $5,000,000.

## VI.    Trusts

(a)    The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the securities offered, and its purchase is directed by a sophisticated person. As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment; or

(b)    The Investor is (i) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act, (ii) acting in a fiduciary capacity and (iii) subscribing for the purchase of the securities being offered on behalf of a trust account or accounts; or

(c)    The Investor is a revocable trust which may be amended or revoked at any time by the grantors thereof and all of the grantors are accredited investors as described in this Schedule I. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

SI-2

CONFIDENTIAL

GCC-NYAG  0021944
NYGSAA0020985

**VII.    Banks, Savings and Loans and Similar Institutions**

The Investor is a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual capacity.

**VIII.    Insurance Companies**

The Investor is an insurance company as defined in Section 2(13) of the Securities Act.

SI-3

CONFIDENTIAL

## ASCOT PARTNERS, L.P.

---

### SCHEDULE II

ii.   **QUALIFIED PURCHASER STATUS**

The Investor must certify that:

**I.    Individuals**

The Investor is a qualified purchaser because he/she (alone, or together with his/her spouse, if investing jointly) owns not less that $5,000,000 in investments.[*]

**II.    "Family" Corporations, Foundations, Section 501(c)(3) Organizations, Partnerships, Trusts, Limited Liability Companies or other "Family" Entities**

    (a)   The Investor was not formed for the specific purpose of investing in the Partnership;

    (b)   The Investor owns not less than $5,000,000 in investments; and

    (c)   The Investor is owned directly or indirectly by or for (i) two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, (ii) spouses of such persons, (iii) the estates of such persons or (iv) foundations, Section 501(c)(3) organizations, or trusts established by or for the benefit of such persons.

**III.    Trusts (Other Than Trusts That Qualify under II or IV hereof)**

    (a)   The Investor was not formed for the specific purpose of investing in the Partnership; and

---

[*]    The term "investments" means any or all (1) securities (as defined in the Securities Act), except for securities of issuers controlled by the Investor ("Control Securities") unless the (A) issuer of the Control Securities is itself a registered or private investment company or is exempted from the definition of investment company by Rule 3a-6 or Rule 3a-7 under the Company Act, (B) the Control Securities represent securities of an issuer that files reports pursuant to Section 13 or 15(d) of the Exchange Act, (C) the issuer of the Control Securities has a class of securities listed on a designated offshore securities market under Regulation S under the Securities Act or (D) the issuer of the Control Securities is a private company with shareholders' equity not less than $50 million determined in accordance with generally accepted accounting principles, as reflected in the company's most recent financial statements (provided such financial statements were issued within 16 months of the date of Investor's purchase of Shares); (2) futures contracts or options thereon held for investment purposes; (3) physical commodities held for investment purposes; (4) swaps and other similar financial contracts entered into for investment purposes; (5) real estate held for investment purposes; and (6) cash and cash equivalents held for investment purposes.

Note:   In determining whether the $5 million or $25 million thresholds are met, investments can be valued at cost or fair market value as of a recent date. If investments have been acquired with indebtedness, the amount of the indebtedness must be deducted in determining whether the threshold has been met.

SII-1

CONFIDENTIAL

(b)    Each trustee (or other authorized person) that is authorized and required to make decisions with respect to this investment is a person described in I, II or IV, at the time the decision to purchase Interests is made, and each settlor or other person who has contributed assets to the trust is a person described in I, II or IV at any time such person contributed assets to the trust.

### IV.    Other Entities

(a)    The Investor was not formed for the specific purpose of investing in the Partnership; and

(b)    The Investor is an entity, acting for its own account or the accounts of other qualified purchasers, which in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments (as defined above).

### V.    Entities That Do Not Qualify Under II-IV

The Investor is a qualified purchaser because each beneficial owner of the Investor's securities is a qualified purchaser as described in this Schedule II.[*]

### VI.    All Investors That Are Entities

(a)    The Investor is not an entity that is excepted from the definition of an "investment company" under the Company Act pursuant to Section 3(c)(1) or 3(c)(7) thereof (a "3(c)(1) or 3(c)(7) Company"); or

(b)    The Investor is a Section 3(c)(1) or 3(c)(7) Company but does not have ANY direct "beneficial owners" that have held an interest in the Investor on or before April 30, 1996 (a "Pre-April 30 Holder"); or

(c)    The Investor is a Section 3(c)(1) or 3(c)(7) Company and has obtained consent to its treatment as a qualified purchaser from all of its Pre-April 30 Holders.

### VII.    Investors That Checked II or III May Check VII Instead Of VI

The Investor has obtained consent to its treatment as a qualified purchaser from all of its trustees, directors or general partners.

### VIII.    Investors That Checked VI(b) Or VI(c) Must Also Respond YES or NO To VIII

Is any direct or indirect beneficial owner of the Investor itself a Section 3(c)(1) or 3(c)(7) Company that controls, is controlled by, or is under common control with the Investor?

If the Investor cannot answer NO to VIII because it has a control relationship with a beneficial owner that is itself a Section 3(c)(1) or 3(c)(7) Company, the Investor may be required to obtain consent from the security-holders of such owner.

---

[*]    This certification does not apply to beneficiaries of an irrevocable trust.

SII-2

CONFIDENTIAL
GCC-NYAG  0021947
NYGSAA0020988

**EXHIBIT A**

## FORM OF INCUMBENCY CERTIFICATE

AUTHORIZED SIGNATORY    BNP Paribas Bank & Trust Cayman Limited

The undersigned, being the _____ of _____REDACTED_____,

*Insert Title*                    *Insert Name of Entity*

LIMITED PARTNERSHP                DELAWARE

a _____ organized under the laws of _____

*Insert Type of Entity*                  *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are directors and/or officers of the Company and that the signature at the right of said name, respectively, is the genuine signature of said person and that the persons listed below are each an authorized signatory for the Company.

| Name | Title | Signature |
|------|-------|-----------|
| PLEASE SEE ATTACHED LIST | | |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the 28 day of

_____JUNE_____, 200 7 .

Name: TERRANCE NORMAN
Title: *i*AUTHORIZED SIGNATORY

AUTHORIZED SIGNATORY

THE UNDERSIGNED, _____DANIEL HARTNETT_____, a duly authorized

*Insert Name of Signatory #2*              *Insert Title*

of the Company, does hereby certify that _____TERRANCE NORMAN_____ is a duly authorized

*Insert Name of Signatory #1*

BNP Paribas Bank & Trust Cayman Limited

officer of _____REDACTED_____ and that the signature set forth above is [his][her] true and

*Insert Name of Company*

correct signature.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the 28 day

of _____JUNE_____, 200 7 .

Name: DANIEL HARTNETT
Title: *i*AUTHORIZED SINGATORY

A-1

GCC-NYAG  0021948
NYGSAA0020989

**EXHIBIT B**

## AML CERTIFICATION FORM FOR FUND OF FUNDS OR ENTITIES THAT INVEST ON BEHALF OF THIRD PARTIES

The undersigned, being the _____ of _____,

*Insert Title*          *Insert Name of Entity*

a _____ organized under the laws of _____

*Insert Type of Entity*          *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that it is aware of the requirements of the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control, and other applicable U.S. federal, state or non-U.S. anti-money laundering laws and regulations (collectively, the "anti-money laundering/OFAC laws"). The Company has/have anti-money laundering policies and procedures in place reasonably designed to verify the identity of its [beneficial holders] [underlying investors] and their sources of funds. Such policies and procedures are properly enforced and are consistent with the anti-money laundering/OFAC laws such that the Partnership may rely on this Certification.

The Company hereby represents to the Partnership that, to the best of its knowledge, the Company's [beneficial holders] [underlying investors] are not individuals, entities or countries that may subject the Partnership to criminal or civil violations of any anti-money laundering/OFAC laws. The Company has read the section entitled "Representations and Covenants of the Investor" in the Partnership's Subscription Agreement. The Company has taken all reasonable steps to ensure that its [beneficial holders] [underlying investors] are able to certify to such representations. The Company agrees to promptly notify the Partnership should the Company have any questions relating to any of the investors or become aware of any changes in the representations set forth in this Certification.

Date: _____          By: _____

Name:

Title:

B-1

GCC-NYAG  0021949
NYGSAA0020990

**EXHIBIT C**

## FORM LETTER OF REFERENCE

[LETTERHEAD OF LOCAL OFFICE OF FATF MEMBER BANKING INSTITUTION
OR BROKERAGE FIRM]

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin

To whom it may concern:

I, _____, the _____ of _____, do hereby
     *Name*       *Title*      *Name of Institution*

certify that _____ has maintained an account at our institution for
     *Name of Investor*

_____ years and, during this period, nothing has occurred that would give our institution
*Insert Period*

cause to be concerned regarding the integrity of _____.
                  *Name of Investor*

Do not hesitate to contact me at _____ if you have any further
                 *Insert Telephone No.*

questions.

Very truly yours,

_____
Name:
Title:

C-1

CONFIDENTIAL

## BENEFICIAL OWNERSHIP INFORMATION

### To Be Completed By Entity Investors That Are Privately Held Entities

**Instructions:** Please complete and return this **Exhibit D** and provide the name of every person who is directly, or indirectly through intermediaries, the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the Investor. If the intermediary's shareholders or partners are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed. If there are no 25% beneficial owners, please write None.

| Full Name | If Shareholder is an Individual, Insert Name and Address of Principal Employer and Position | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
| **REDACTED** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

D-1

CONFIDENTIAL

GCC-NYAG  0021951

NYGSAA0020992

<u>**EXHIBIT E**</u>

## TRUST OWNERSHIP INFORMATION

### To Be Completed By Entity Investors That Are Trusts

**Instructions:  Please complete and return this <u>Exhibit E</u> and provide the name of: i) every current beneficiary that has, directly or indirectly, an interest of 25% or more in the trust; ii) every person who contributed assets to the trust (settlors or grantors); and iii) every trustee.  If there are intermediaries that are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed.**

| Full Name and Address | Status (Beneficiary/Settlor/ Trustee) | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

E-1

CONFIDENTIAL

GCC-NYAG  0021952
NYGSAA0020993

## REQUEST FOR WITHDRAWAL OF LIMITED PARTNERSHIP INTEREST

Dated: _____, _____

To:  Ascot Partners, L.P.
     450 Park Avenue
     32nd Floor
     New York, New York 10022
     Attn.: J. Ezra Merkin

Dear Sir or Madam:

The undersigned limited partner of the Partnership (the "Limited Partner") hereby requests that the Partnership withdraw from the Limited Partner's capital account in the Partnership (the "Capital Account") and pay the following amount to the Limited Partner as directed below:

(check one)

_____        the entire balance of the Limited Partner's Capital Account

_____     $_____

on the next available withdrawal date (the "Withdrawal Date") following receipt of this letter.[*]  In the event that after giving effect to such withdrawal, the balance of the Capital Account would be less than $[        ] please:

(check one)

_____        disregard this Request for Withdrawal

_____        withdraw all of the remaining balance of such
               Capital Account on such withdrawal date.

The cash proceeds of the Capital Account should be paid and forwarded to the Limited Partner as follows:

_____
Name

_____
Address

---

[*]    This Request for Withdrawal must be received at least 45 days prior to a Withdrawal Date. **Requests for withdrawal must be unconditional. Notices of Withdrawals are irrevocable by the Investor.**

RW-1

GCC-NYAG  0021953
NYGSAA0020994

If desired, set forth instructions for the account to which the cash proceeds of the Capital Account may be sent by wire transfer:

_____
Name of Bank

_____
Address of Bank

_____
ABA Number

_____
Account Number

_____
Name Under Which Account Is Held

**Note:  Withdrawal proceeds shall be paid to the same account from which the Limited Partner's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.**

Very truly yours,

Signature(s) Guaranteed by:

_____
Signature of Limited Partner

_____
_____
(Print name)

Mailing Address

_____

RW-2

CONFIDENTIAL

GCC-NYAG  0021954
NYGSAA0020995

## ASCOT PARTNERS, L.P.

### ADDITIONAL SUBSCRIPTION FORM

Ascot Partners, L.P.
450 Park Avenue
32nd Floor
New York, New York 10022
Attn.: J. Ezra Merkin

Dear _____:

      The undersigned hereby wishes to make an additional capital contribution to Ascot Partners, L.P. (the "Partnership").

      The additional amount to be contributed ("Additional Capital Contribution") is:

$_____.

      The undersigned acknowledges and agrees: (i) that the undersigned is making the Additional Capital Contribution on the terms and conditions contained in the subscription agreement, dated _____ ___, 20__, previously executed by the undersigned and accepted by the General Partner (the "Subscription Agreement"); (ii) that the representations and covenants of the undersigned contained in the Subscription Agreement are true and correct in all material respects as of the date set forth below; (iii) the information provided on the Investor Profile Form in the Subscription Agreement is correct as of the date set forth below; and (iv) the background information provided to the General Partner is true and correct in all material respects as of the date set forth below.

**THE UNDERSIGNED AGREES TO NOTIFY THE GENERAL
PARTNER PROMPTLY SHOULD THERE BE ANY CHANGE
IN ANY OF THE FOREGOING INFORMATION.**

Dated: _____ ___, 20__

INDIVIDUALS                        ENTITIES

_____    _____
Signature                          Print Name of Entity

                                       By: _____
_____
Print Name                             Authorized Signature

_____    _____
Additional Investor Signature          Print Name and Title

AS-1

CONFIDENTIAL

GCC-NYAG  0021955
NYGSAA0020996

**FOR INTERNAL USE ONLY**
**To be completed by J. Ezra Merkin**

_____

ADDITIONAL CAPITAL CONTRIBUTION ACCEPTED
AS TO $_____

**ASCOT PARTNERS, L.P.**
By: **J. Ezra Merkin**
By: _____

Date: _____, _____

AS-2

GCC-NYAG  0021956
NYGSAA0020997

## ASCOT PARTNERS, L.P.

### CLIENT PRIVACY NOTICE

Your privacy is very important to us. This Privacy Notice sets forth our policies with respect to nonpublic personal information of investors, prospective investors and former investors. These policies apply to individuals and Individual Retirement Accounts only and may be changed at any time, provided a notice of such change is given to you.

You provide us with personal information, such as your address, social security number, assets and/or income information, (i) in the Subscription Agreement and related documents, (ii) in correspondence and conversations with the Partnership's representatives and (iii) through transactions in the Partnership.

We do not disclose any of this personal information about our investors, prospective investors or former investors to anyone, other than to our affiliates, and except as permitted by law, such as to our attorneys, auditors, brokers and regulators and certain service providers, in such case, only as necessary to facilitate the acceptance and management of your investment. Thus, it may be necessary, under anti-money laundering and similar laws, to disclose information about investors in order to accept subscriptions from them. We will also release information about you if you direct us to do so, if compelled to do so by law or in connection with any government or self-regulatory organization request or investigation.

We seek to carefully safeguard your private information and, to that end, restrict access to nonpublic personal information about you to those employees and other persons who need to know the information to enable the Partnership to provide services to you. We maintain physical, electronic and procedural safeguards to protect your nonpublic personal information.

CONFIDENTIAL



**BNP PARIBAS**

## APPOINTMENT OF AGENTS

I, Locke R. McMurray, Secretary and General Counsel of BNP Paribas Securities Corp. (the "Corporation'), pursuant to the authority granted to me (a "Manager") by Resolution of the Board of Directors of the Corporation on October 31, 2006 (a copy of which is attached hereto as Exhibit A, the "Resolution"), which Resolution, as of the date hereof, has not been superseded and remains in full force and effect, do hereby appoint the following person as an Agent (as referred to in such Resolution) with the authority described herein with respect to such Agent to transact on behalf of the Corporation::

**Name:**                                    **Signature**

Anton Drintcho

Is granted the authorization for;

the subscription, redemption, pledging and otherwise granting of security interests in hedge fund shares and limited partnership interests of the Corporation; the authority to direct the transfer on behalf of the Corporation, hedge fund shares and limited partnership interests and any other item or business as may be related to the foregoing or any other business of the Corporation as may be designated by such Manager and such foregoing authority shall encompass the authority to prepare, negotiate, execute and deliver contracts or agreements necessary, advisable or convenient in connection with the business or any undertaking of the Corporation related to hedge fund investments, including, security agreements; contracts for the purchase, placement or sale of shares and limited partnership interests and contracts for the engagement of services.

Appoint additional persons (each, an "Additional Agent") to transact all or some of the authority of the Agent granted hereby (but not the authority to make further appointments).

In WITNESS WHEREOF, the undersigned has executed this instrument this 21st day of May 2007.

Locke R. McMurray

CONFIDENTIAL

**EXHIBIT A**

RESOLVED, that each of Everett Schenk, Larry Sobin, Locke McMurray, Robert Hawley, Thomas Mahoney, Todd Steinberg and Kathryn Swintek (each, a "Manager") is hereby authorized to transact in any and all businesses in which the Corporation may engage and each such Manager is authorized to appoint and authorize such other persons (each an "Agent") to transact all or some of the foregoing authority given to each Manager, including the authority to appoint additional persons (each, an "Additional Agent") to transact all or some of the authority of the Agent granted hereby (but not the authority to make further appointments); and further

RESOLVED, that the foregoing authority hereby vested in each Manager shall encompass authority to transact in structured finance, corporate finance, investment advisory, securities trading, derivatives trading, foreign exchange, loan trading, commodities, trading in financial instruments of every type, the purchase, sale, borrowing, lending, hypothecating, pledging and otherwise granting of security interests in the property of the Corporation; the authority to open or close any accounts in the name of the Corporation with banks, broker-dealers, clearing houses, futures commission merchants or other financial institutions and to direct the transfer on behalf of the Corporation of funds, securities or commodities or any other instruments into or out of such accounts and any other item or business as may be related to the foregoing or any other business of the Corporation as may be designated by such Manager and such foregoing authority shall encompass the authority to prepare, negotiate, execute and deliver any contract or agreement necessary, advisable or convenient in connection with the business or any undertaking of the Corporation, including, but not limited to, securities lending contracts; contracts in respect of bank debt (including but not limited to floating rate par/near par and distressed bank debt); futures contracts; derivative contracts of every type (including but not limited to options and swaps of every type); repurchase agreements and reverse repurchase agreements; sale/buyback contracts, forward contracts; security agreements; underwriting, private placement or other contracts for the purchase, placement or sale of securities; participations in and options on any of the foregoing; contracts for the engagement of services, contracts for the purchase of goods or services (including technology services); real estate contracts; confidentiality agreements; employment contracts; filings with any governmental or regulatory entity; clearing contracts, brokerage contracts, and banking contracts; and further

RESOLVED, that the foregoing authority vested in each Manager shall encompass the authority to exercise any power granted to the Corporation by BNP Paribas to act on behalf of BNP Paribas; and further

RESOLVED, that any such appointment and authorization vested in each Manager to transact business for the Corporation's account shall be in addition to, and not in lieu of, any other appointment or authorization provided by Resolution of the Board of Directors of the Corporation; and further

RESOLVED, that the President may appoint an administrator (the "Administrator") to maintain a list of authorized persons for the Corporation and a signature sample of each such person. The Administrator, if appointed, each Manager and each Agent shall be authorized to confirm the authority of any Agent or Additional Agent from time to time to broker-dealers, banks and other counterparties with whom the Corporation maintains accounts or otherwise transacts business and said broker-dealers, banks and other counterparties shall be entitled to rely upon the authority of officers, employees and agents of the Corporation to transact business for the Corporation's account to the extent confirmed as provided herein until notice of revocation of such authority is delivered to such broker-dealers, banks and other counterparties. Each said Manager or Agent may withdraw any previous appointment or authorization and shall inform the President (or alternatively, if appointed, the Administrator) thereof; and further

RESOLVED, that any, and all, appointments previously made pursuant to those Resolutions duly adopted by the Corporation's Board of Directors on September 22, 2003 April 14, 2005 and May 11, 2006 under which certain persons were designated as "Managers" and granting such Managers the authority to appoint other persons as "Agents" of the Corporation authorized to transact certain business on behalf of the Corporation, and in turn, authorizing such Agents to also appoint "Additional Agents" as authorized to

CONFIDENTIAL

transact certain business on behalf of the Corporation, be, and hereby are, re-confirmed except for those previously appointed Managers, Agents or Additional Agents whose authority has been withdrawn.

CONFIDENTIAL



**BNP PARIBAS**

### APPOINTMENT OF AGENTS

I, Anton Drintcho, Director of BNP Paribas Securities Corp. (the "Corporation'), pursuant to the authority granted to me (an "Agent") by Locke McMurray (a "Manager") pursuant to that Resolution of the Board of Directors of the Corporation on October 31, 2006 (a copy of which is attached hereto as Exhibit A, the "Resolution"), which Resolution, as of the date hereof, has not been superseded and remains in full force and effect, do hereby appoint the following personnel as Additional Agents (as referred to in such Resolution) with the authority described herein with respect to such Agent to transact on behalf of the Corporation:

| Name: | Signature |
|---|---|
| Karl Garrett | |
| Terrance Norman | |
| Daniel Hartnett | |
| Anthony Dixon | |

Is granted the authorization;

the subscription, redemption, pledging and otherwise granting of security interests in hedge fund shares and limited partnership interests of the Corporation; the authority to direct the transfer on behalf of the Corporation, hedge fund shares and limited partnership interests and any other item or business as may be related to the foregoing or any other business of the Corporation as may be designated by such Manager and such foregoing authority shall encompass the authority to prepare, negotiate, execute and deliver contracts or agreements necessary, advisable or convenient in connection with the business or any undertaking of the Corporation related to hedge fund investments, including, security agreements; contracts for the purchase, placement or sale of shares and limited partnership interests.

In WITNESS WHEREOF, the undersigned has executed this instrument this 30th day of May 2007.

_____
Anton Drintcho

CONFIDENTIAL

**Exhibit A**

RESOLVED, that each of Everett Schenk, Larry Sobin, Douglas Cook, Robert Hawley, Thomas Mahoney, Todd Steinberg and Kathryn Swintek (each, a "Manager") is hereby authorized to transact in any and all businesses in which the Corporation may engage and each such Manager is authorized to appoint and authorize such other persons (each an "Agent") to transact all or some of the foregoing authority given to each Manager, including the authority to appoint additional persons (each, an "Additional Agent") to transact all or some of the authority of the Agent granted hereby (but not the authority to make further appointments); and further

RESOLVED, that the foregoing authority hereby vested in each Manager shall encompass authority to transact in structured finance, corporate finance, investment advisory, securities trading, derivatives trading, foreign exchange, loan trading, commodities, trading in financial instruments of every type, the purchase, sale, borrowing, lending, hypothecating, pledging and otherwise granting of security interests in the property of the Corporation; the authority to open or close any accounts in the name of the Corporation with banks, broker-dealers, clearing houses, futures commission merchants or other financial institutions and to direct the transfer on behalf of the Corporation of funds, securities or commodities or any other instruments into or out of such accounts and any other item or business as may be related to the foregoing or any other business of the Corporation as may be designated by such Manager and such foregoing authority shall encompass the authority to prepare, negotiate, execute and deliver any contract or agreement necessary, advisable or convenient in connection with the business or any undertaking of the Corporation, including, but not limited to, securities lending contracts; contracts in respect of bank debt (including but not limited to floating rate par/near par and distressed bank debt); futures contracts; derivative contracts of every type (including but not limited to options and swaps of every type); repurchase agreements and reverse repurchase agreements; sale/buyback contracts, forward contracts; security agreements; underwriting, private placement or other contracts for the purchase, placement or sale of securities; participations in and options on any of the foregoing; contracts for the engagement of services, contracts for the purchase of goods or services (including technology services); real estate contracts; confidentiality agreements; employment contracts; filings with any governmental or regulatory entity; clearing contracts, brokerage contracts, and banking contracts; and further

RESOLVED, that the foregoing authority vested in each Manager shall encompass the authority to exercise any power granted to the Corporation by BNP Paribas to act on behalf of BNP Paribas; and further

RESOLVED, that any such appointment and authorization vested in each Manager to transact business for the Corporation's account shall be in addition to, and not in lieu of, any other appointment or authorization provided by Resolution of the Board of Directors of the Corporation; and further

RESOLVED, that the President may appoint an administrator (the "Administrator") to maintain a list of authorized persons for the Corporation and a signature sample of each such person. The Administrator, if appointed, each Manager and each Agent shall be authorized to confirm the authority of any Agent or Additional Agent from time to time to broker-dealers, banks and other counterparties with whom the Corporation maintains accounts or otherwise transacts business and said broker-dealers, banks and other counterparties shall be entitled to rely upon the authority of officers, employees and agents of the Corporation to transact business for the Corporation's account to the extent confirmed as provided herein until notice of revocation of such authority is delivered to such broker-dealers, banks and other counterparties. Each said Manager or Agent may withdraw any previous appointment or authorization and shall inform the President (or alternatively, if appointed, the Administrator) thereof; and further

RESOLVED, that any, and all, appointments previously made pursuant to those Resolutions duly adopted by

the Corporation's Board of Directors on September 22, 2003 and April 14, 2005, under which certain persons were

designated as "Managers" and granting such Managers the authority to appoint other persons as "Agents" of the

Corporation authorized to transact certain business on behalf of the Corporation, and in turn, authorizing such Agents to

also appoint "Additional Agents" as authorized to transact certain business on behalf of the Corporation, be, and hereby

are, re-confirmed except for those previously appointed Managers, Agents or Additional Agents whose authority has

been withdrawn.

CONFIDENTIAL