# EXHIBIT A

Release No. 9856 (S.E.C. Release No.), Release No. 34-9856, 1972 WL 125352

S.E.C. Release No.
Securities Exchange Act of 1934

SECURITIES AND EXCHANGE COMMISSION (S.E.C.)

PART 240—GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934

November 17, 1972

**Broker-Dealers; Maintenance of Certain Basic Reserves**

\*1 The Securities and Exchange Commission today announced the adoption of Rule 15c3-3 (17 CFR 240.15c3-3) under the Securities Exchange Act of 1934 (the "Act"). The rule provides a formula for the maintenance by broker-dealers of basic reserves with respect to customers' cash and cash realized through the utilization of customers' securities and enunciates standards for broker-dealers concerning the physical possession or control of fully-paid and excess margin of customers' securities.

On September 14, 1972, in Securities Exchange Act Release No. 9775, (37 F.R. 20260), and on two other occasions, May 31, 1972, in Securities Exchange Act Release No. 9622, (37 F.R. 11690) and November 8, 1971, in Securities Exchange Release No. 9388 (36 F.R. 22312) the Commission proposed Rule 15c3-3 and sought public comment. It has considered the comments and suggestions received in response to the proposals and now adopts the rule as set forth below. The basic principles and format of the September 14, 1972, proposal have been retained, the modifications to the September 14th proposal being primarily technical and in one instance to meet a hardship wich was represented to exist by certain members of the financial community.

OBJECTIVES OF RULE 15c3-3

It is the Commission's view that, in the context of the other customer protective provisions it has recently adopted,[1] Rule 15c3-3 as adopted herein is well fashioned to furnish the protection for the integrity of customer funds and securities as envisioned by Congress when it amended section 15(c) (3) of the Act by adopting section 7(d) of the Securities Investor Protection Act of 1970 (the "SIPC Act"). In meeting the Congressional directive for rules regarding the acceptance, custody and use of customers' securities and the maintenance of reserves with respect to customer deposits and credit balances the Commission seeks to accomplish the following in Rule 15c3-3:

(i) To insure that customers' funds held by a broker-dealer (both free credit balances and deposits which may be restricted as to withdrawal) and the cash which is realized through the lending, hypothecation and other permissible uses of customers' securities are deployed in safe areas of the broker-dealer's business related to servicing his customers, or to the extent that the funds are not deployed in these limited areas, that they be deposited in a reserve bank account. In this regard, the Commission has taken a broad view of the Congressional mandate by requiring that the reserve account include all funds which have as their source customer assets.

\*2 (ii) To require a broker-dealer promptly to obtain possession or control of all fully-paid securities and excess margin securities carried by that broker-dealer for the account of customers and to require him to act within designated time frames where possession or control has not been established.

(iii) To accomplish a separation of the brokerage operation of the firm's business from that of its firm activities such as underwriting and trading.

(iv) To require a broker-dealer to maintain more current records. Thus, Rule 15c3-3 requires a daily determination of security locations and periodic computations of the reserve.

© 2017 Thomson Reuters. No claim to original U.S. Government Works.    1

(v) To motivate the securities industry to process its securities transactions in a more expeditious manner. This is particularly important in the area of the rule which penalizes a broker-dealer if a security is in a location which the Commission has determined to be unacceptable or has been out of the broker-dealer's possession for too long a period, as for example in transfer.

(vi) To inhibit the unwarranted expansion of a broker-dealer's business through the use of customers' funds by prohibiting the use of those funds except for designated purposes.

(vii) To augment the broad program of broker-dealer financial responsibility which the Commission has been developing as a result of the financial crisis experienced by the securities industry during the 1968-70 period.

(viii) To facilitate the liquidations of insolvent broker-dealers and to protect customer assets in the event of a SIPC liquidation through a clear delineation in Rule 15c3-3 of specifically identifiable property of customers.

In seeking these objectives the Commission has made every effort to make Rule 15c3-3 flexible enough to be compatible with the accounting, clearance, settlement, and depository systems presently operating or being developed in the securities industry. It is hoped that the rule will encourage the further development of these systems which will increase the protection of customers' funds and securities with the concomitant reduction in the need for this rule particularly in regard to those sections dealing with obtaining possession of securities which have not been brought under the broker-dealer's control within the normal settlement period. Where the provisions of the rule are at odds with present operational methods or where they require the development of new recordkeeping information it is because in the judgment of the Commission such systems or information are necessary to a comprehensive program of investor protection consistent not only with express congressional intent but with the high standards of financial responsibility which must prevail in the brokerage community. At the same time, however, the rule permits the smaller broker-dealer who does not hold customer funds or securities to effectuate his customer transactions through a special bank account and thereby avoid the computations and determinations of this rule which because of his size and capacity may be onerous to him.

PHYSICAL POSSESSION OR CONTROL OF FULLY PAID AND EXCESS MARGIN SECURITIES

**\*3** An important element of Rule 15c3-3 is the requirement for daily determinations by the broker-dealer of the fully paid and excess margin securities in his physical possession or control. The various subparagraphs of paragraph (d) of the rule prescribe the time periods within which a broker-dealer must act to bring securities under his possession or control if his daily determinations show a deficit with respect to his customers' fully paid and excess margin securities. If the determination as at the close of a given business day reveals physical possession or control of all securities of a particular issue required to be in such broker-dealer's possession or control, subparagraph (b) (2) states that, during the following business day, a broker-dealer may effect delivery of shares of such issue received that day to fulfill any of that day's delivery obligations.

With respect to the provisions of the rule relating to control locations, paragraph (c) (4) has been changed to permit application by registered exchanges or the NASD with respect to the designation of foreign locations deemed to be good control under the rule. Additional points of control of securities under the rule are: securities held by a bank custodian, not subject to a lien or claim, which must be delivered to the broker-dealer upon demand without payment of money or other value (paragraph (c) (5)); securities held by a branch office or in transit between offices of the broker-dealer, or held by a guaranteed corporate subsidiary under the control of and operated as a branch office of the broker-dealer (paragraph (c) (6)); securities in the custody or control of a clearing corporation or carried in a special omnibus account (as defined) (paragraphs (c) (1) and (c) (2)); securities in transfer not in excess of 40 days (paragraph (c) (3)); and finally, to provide flexibility to deal with future developments in the securities industry, securities in such other locations as the Commission, upon application or on its own motion, finds adequate for the protection of customers.

Paragraph (d) (1) of the rule provides for 2 business days and 5 business days, respectively, for the release of securities from a lien and for the return of the loaned securities in order to reduce them to possession or control for compliance with the rule. In addition, under paragraph (d) (2), the time after which a fail to receive must be reduced to possession through a buy-in or other procedure is 30 days.

RESERVES WITH RESPECT TO CUSTOMERS' FUNDS

**PART 240FGENERAL RULES AND REGULATIONS,..., Release No. 9856 (1972)**

The revisions to the formula for determination of the reserve are principally technical in nature. In response to a number of public comments that Note B (1) to the formula may have a significant impact on the smaller broker-dealer in its ability to engage in the business of margin lending, the point at which debit balances in margin accounts are required to be reduced as permissible debits in the formula as a result of concentration in an underlying security collateralizing such margin indebtedness has been raised from 10 percent to 15 percent. Otherwise the formula has been retained in a form and concept identical to the September 14th proposal, placing on the credit side (items 1 through 9) funds for which the broker-dealer must be accountable and on the debit side (items 10 through 12) permissible areas where such funds may be deployed, otherwise to be deposited in a special reserve bank account (paragraphs (e) (1) and (e) (2) of the rule). The computation frequency has also been retained, monthly for the smaller firm and weekly for the firm which has aggregate indebtedness exceeding 800 percent of net capital or holds customer funds in excess of $1 million as defined in the rule.

EXEMPTIONS

**\*4** Subparagraph (k) (2) (B) exempts a broker-dealer whose transactions with customers consist exclusively of acting as an introducing broker-dealer to a clearing broker-dealer on a fully disclosed basis, and who transmits all customer funds and securities to the clearing broker-dealer who, in turn, carries all of the accounts of such customers. An additional exemption has been provided (subparagraph (k) (2) (A)) with respect to broker-dealers who carry no margin accounts, promptly transmit all customer funds and deliver all customer securities, do not otherwise hold funds or securities of customers and who effectuate all financial transactions with customers through one or more bank accounts designated as "Special Account for the Exclusive Benefit of his Customers." As with the Reserve Bank Accounts, a broker-dealer maintaining such a Special Account must receive and preserve a notification from the bank that the deposits are for the exclusive benefit of the broker-dealer's customers and are not subject to any lien or charge in favor of the bank or any person claiming through the bank. These exemptions are designed to provide an approach which alleviates difficulties many small and medium size broker-dealers may have in complying with the rule. At the same time the exemptions result in the complete separation of customer funds and property and afford protection over customer assets comparable with that to be attained under the provisions of the rule. The procedures outlined in these exemptions are consistent with one of the principal objectives of the SIPC Act that customer funds and securities not be exposed to risk of loss through broker-dealer insolvency.

OTHER PROVISIONS

The provisions of paragraph (1) delineate the right of a customer to delivery of his fully-paid and excess margin securities. Paragraph (1) articulates the existing rights of broker-dealers to impose maintenance and other margin requirements as permited by § 220.7(b) of Regulation T, provided that such requirements are imposed equitably and reasonably.

Paragraph (m) requires a broker-dealer who sells a security for a customer to obtain possession no later than 10 business days after the settlement date. Additionally, this paragraph clarifies that a broker-dealer who maintains a separate omnibus account conforming to section 4(b) of Regulation T with another broker-dealer is not to be deemed a customer of such other broker-dealer for the purposes of the 10 business day limitation.

Regarding the Commission's exercise of authority under section 6(c) (2) (C) (iii) of the SIPC Act, the rule provides that all fully-paid and excess margin securities in the broker-dealer's physical possession or control or in transfer or stock dividend receivable shall constitute the specifically identifiable property of those customers entitled thereto as evidenced from the broker-dealer's records or as is established otherwise by the preponderance of the evidence or other demonstration, as the respective customers' interests may appear. The cash and qualified securities in the Reserve Bank Account are determined to be the specifically identifiable property of customers with free credit balances. To the extent that the specifically identifiable property of any group of customers is not sufficient to satisfy all their claims, the property is to be prorated among them. In the event, however, that such property should exceed the aggregate claims of such customers, the excess is to be placed in the Single and Separate Fund which is provided for in section 6(c) (2) (B) of the SIPC Act for customers generally.

**\*5** Paragraph (n) provides for extensions of the time in which a broker-dealer is required to buy-in securities as specified in the rule upon good faith application to a self-regulatory body which would grant such extensions in only exceptional circumstances. Any extensions granted must be recorded together with the justification therefor and preserved for a period of not less than 3 years.

IMPACT AND MONITORING

Rule 15c3-3 represents the first comprehensive program undertaken by the Commission to provide regulatory safeguards over customers' funds and securities held by broker-dealers. The handling and processing of customers' funds and securities is a complex process and to a degree the necessary safeguards embodied in Rule 15c3-3 reflect that process. Inasmuch as the rule is comprehensive, touching upon many phases of the broker-dealer's business, its uniformity of application may lead in certain instances to significant impact upon some broker-dealers. Such impact may be attributable to a unique manner in which securities may be processed or held by a particular broker or to the type of business engaged in by the broker-dealer. These broker-dealers are encouraged to consult with the staff of the Commission in the case where the rule works an operational hardship or severely impacts to determine if substitute procedures can be devised which offer equal protection to customer assets or to ascertain whether a phasing in of a particular provision of the rule might be appropriate.

The operations of Rule 15c3-3 will be carefully monitored by the Commission to determine whether there will be need in the public interest and for the protection of investors to tighten or relax any of the restraints and time frames embodied in the rule. The Commission recognizes that this is by no means a final solution and that work must continue to develop a total systems approach which will reduce the time required to clear and settle securities transactions, reduce the paperwork, and increase the safety of customers' funds and securities.

STATUTORY BASIS AND EFFECTIVE DATE

The Securities and Exchange Commission, acting pursuant to the provision of the Securities Exchange Act of 1934 and the Securities Investor Protection Act of 1970, particularly sections 15(c) (3), 15(c) (2), 17(a) and 23(a) of the Exchange Act as well as section 6(c) (2) (C) (iii) of the SIPC Act, and deeming it in the public interest and for the protection of investors, hereby adopts new § 240.15c 3-3 in Part 240 of Chapter II of Title 17 of the Code of Federal Regulations as set forth below, effective January 15, 1973:

§ 240.15c3-3 Customer protection—reserves and custody of securities.

(a) *Definitions*. For the purpose of this section:

(1) The term "customer" shall mean any person from whom or on whose behalf a broker or dealer has received or acquired or holds funds or securities for the account of such person, but shall not include a broker or dealer, or a general, special or limited partner or director or officer of a broker or dealer, or any person to the extent that such person has a claim for property or funds which by contract, agreement or understanding, or by operation of law, is part of the capital of the broker or dealer or is sub-ordinated to the claims of creditors of the broker or dealer: *Provided, however*, That the term "customer" shall also include a broker or dealer but only insofar as such broker or dealer maintains a special omnibus account carried with another broker or dealer in compliance with section 4(b) of Regulation T under the Securities Exchange Act of 1934 (12 CFR Part 220).

*6 (2) The term "securities carried for the account of a customer" (hereinafter also "customer securities") shall mean:

(i) securities received by or on behalf of a broker or dealer for the account of any customer and securities carried long by a broker or dealer for the account of any customer; and

(ii) securities sold to, or bought for, a customer by a broker or dealer.

(3) The term "fully paid securities" shall include all securities carried for the account of a customer in a special cash account as defined in Regulation T promulgated by the Board of Governors of the Federal Reserve System, as well as margin equity securities within the meaning of Regulation T which are carried for the account of a customer in a general account or any special account under Regulation T during any period when section 8 of Regulation T (12 CFR 220.8) specifies that margin equity securities shall have no loan value in a general account or special convertible debt security account, and all such margin equity securities in such account if they are fully paid: *Provided, however*, That the term "fully paid securities" shall not apply to any securities which are purchased in transactions for which the customer has not made full payment.

(4) The term "margin securities" shall mean those securities carried for the account of a customer in a general account as defined in Regulation T, as well as securities carried in any special account (such general or special accounts hereinafter referred to as "margin accounts") other than the securities referred to in paragraph (a) (3) of this section.

(5) The term "excess margin securities" shall mean those securities referred to in paragraph (a) (4) of this section carried for the account of a customer having a market value in excess of 140 percent of the total of the debit balances in the customer's account or accounts encompassed by paragraph (a) (4) of this section which the broker or dealer identifies as not constituting margin securities.

(6) The term "qualified security" shall mean a security issued by the United States or a security in respect of which the principal and interest are guaranteed by the United States.

(7) The term "bank" shall mean a bank as defined in section 3(a) (6) of the Act and shall also mean any building and loan, savings and loan or similar banking institution subject to supervision by a Federal banking authority. With respect to a broker or dealer who maintains his principal place of business in the Dominion of Canada, the term "bank" shall also mean a Canadian bank subject to supervision by an authority of the Dominion of Canada.

(8) The term "free credit balances" shall mean liabilities of a broker or dealer to customers which are subject to immediate cash payment to customers on demand, whether resulting from sales of securities, dividends, interest, deposits or otherwise, excluding, however, funds in commodity accounts which are segregated in accordance with the Commodity Exchange Act or in a similar manner.

*7 (9) The term "other credit balances" shall mean cash liabilities of a broker or dealer to customers other than free credit balances and funds in commodities accounts segregated as aforesaid.

(10) The term "funds carried for the account of any customer" (hereinafter also "customer funds") shall mean all free credit and other credit balances carried for the account of the customer.

(b) *Physical possession or control of securities*. (1) A broker or dealer shall promptly obtain and shall thereafter maintain the physical possession or control of all fully-paid securities and excess margin securities carried by a broker or dealer for the account of customers.

(2) A broker or dealer shall not be deemed to be in violation of the provisions of paragraph (b) (1) of this section regarding physical possession or control of customers' securities if, solely as the result of normal business operations, temporary lags occur between the time when a security is required to be in the possession or control of the broker or dealer and the time that it is placed in his physical possession or under his control, provided that the broker or dealer takes timely steps in good faith to establish prompt physical possession or control. The burden of proof shall be on the broker or dealer to establish that the failure to obtain physical possession or control of securities carried for the account of customers as required by paragraph (b) (1) of this section is merely temporary and solely the result of normal business operations including same day receipt and redelivery (turnaround), and to establish that he has taken timely steps in good faith to place them in his physical possession or control.

(c) *Control of securities*. Securities under the control of a broker or dealer shall be deemed to be securities which:

(1) Are represented by one or more certificates in the custody or control of a clearing corporation or other subsidiary organization of either national securities exchanges or of a registered national securities association, or of a custodian bank in accordance with a system for the central handling of securities complying with the provisions of §§ 240.8c-1(g) and 240.15c2-1(g) the delivery of which certificates to the broker or dealer does not require the payment of money or value, and if the books or records of the broker or dealer identify the customers entitled to receive specified quantities or units of the securities so held for such customers collectively; or

(2) Are carried for the account of any customer by a broker or dealer and are carried in a special omnibus account in the name of such broker or dealer with another broker or dealer in compliance with the requirements of section 4(b) of Regulation T

under the Act (12 CFR 220.4(b)), such securities being deemed to be under the control of such broker or dealer to the extent that he has instructed such carrying broker or dealer to maintain physical possession or control of them free of any charge, lien, or claim of any kind in favor of such carrying broker or dealer or any persons claiming through such carrying broker or dealer; or

**\*8** (3) Are the subject of bona fide items of transfer: provided that securities shall be deemed not to be the subject of bona fide items of transfer if, within 40 calendar days after they have been transmitted for transfer by the broker or dealer to the issuer or its transfer agent, new certificates conforming to the instructions of the broker or dealer have not been received by him, he has not received a written statement by the issuer or its transfer agent acknowledging the transfer instructions and the possession of the securities or he has not obtained a revalidation of a window ticket from a transfer agent with respect to the certificate delivered for transfer; or

(4) Are in the custody of a foreign depository, foreign clearing agency or foreign custodian bank which the Commission upon application from a broker or dealer, a registered national securities exchange or a registered national securities association, or upon its own motion shall designate as a satisfactory control location for securities; or

(5) Are in the custody or control of a bank as defined in section 3(a) (6) of the Act, the delivery of which securities to the broker or dealer does not require the payment of money or value and the bank having acknowledged in writing that the securities in its custody or control are not subject to any right, charge, security interest, lien or claim of any kind in favor of a bank or any person claiming through the bank; or

(6)(i) Are held in or are in transit between offices of the broker or dealer; or (ii) are held by a corporate subsidiary if the broker or dealer owns and exercises a majority of the voting rights of all of the voting securities of such subsidiary, assumes or guarantees all of the subsidiary's obligations and liabilities, operates the subsidiary as a branch office of the broker or dealer, and assumes full responsibility for compliance by the subsidiary and all of its associated persons with the provisions of the Federal securities laws as well as for all of the other acts of the subsidiary and such associated persons; or

(7) Are held in such other locations as the Commission shall upon application from a broker or dealer find and designate to be adequate for the protection of customer securities.

(d) *Requirement to reduce securities to possession or control*. Not later than the next business day, a broker or dealer, as of the close of the preceding business day, shall determine from his books or records the quantity of fully paid securities and excess margin securities in his possession or control and the quantity of fully paid securities and excess margin securities not in his possession or control. In making this daily determination inactive margin accounts (accounts having no activity by reason of purchase or sale of securities, receipt or delivery of cash or securities or similar type events) may be computed not less than once weekly. If such books or records indicate, as of such close of the business day, that such broker or dealer has not obtained physical possession or control of all fully paid and excess margin securities as required by this section and there are securities of the same issue and class in any of the following noncontrol locations:

**\*9** (1) Securities subject to a lien securing moneys borrowed by the broker or dealer or securities loaned to another broker or dealer or a clearing corporation, then the broker or dealer shall, not later than the business day following the day on which such determination is made, issue instructions for the release of such securities from the lien or return of such loaned securities and shall obtain physical possession or control of such securities within two business days following the date of issuance of the instructions in the case of securities subject to lien securing borrowed moneys and within five business days following the date of issuance of instructions in the case of securities loaned; or

(2) Securities included on his books or records as failed to receive more than 30 calendar days, then the broker or dealer shall, not later than the business day following the day on which such determination is made, take prompt steps to obtain physical possession or control of securities so failed to receive through a buy-in procedure or otherwise; or

(3) Securities receivable by the broker or dealer as a security dividend receivable, stock split or similar distribution for more than 45 calendar days, then the broker or dealer shall, not later than the business day following the day on which such determination is made, take prompt steps to obtain physical possession or control of securities so receivable through a buy-in procedure or otherwise.

(e) *Special reserve bank account for the exclusive benefit of customers*. (1) Every broker or dealer shall maintain with a bank or banks at all times when deposits are required or hereinafter specified a "Special Reserve Bank Account for the Exclusive Benefit of Customers" (hereinafter referred to as the "Reserve Bank Account"), and it shall be separate from any other bank account of the broker or dealer. Such broker or dealer shall at all times maintain in such Reserve Bank Account, through deposits made therein, cash and/or qualified securities in an amount not less than the amount computed in accordance with the formula set forth in § 240.15c3-3a.

(2) It shall be unlawful for any broker or dealer to accept or use any of the amounts under items comprising Total Credits under the formula referred to in paragraph (e) (1) of this section except for the specified purposes indicated under items comprising Total Debits under the formula, and, to the extent Total Credits exceed Total Debits, at least the net amount thereof shall be maintained in the Reserve Bank Account pursuant to paragraph (e) (1) of this section.

(3) Computations necessary to determine the amount required to be deposited as specified in paragraph (e) (1) of this section shall be made weekly, as of the close of the last business day of the week, and the deposit so computed shall be made no later than 1 hour after the opening of banking business on the sec-and following business day; provided, however, a broker or dealer which has aggregate indebtedness not exceeding 800 percent of net capital (as defined in § 240.15c3-1 or in the capital rules of a national securities exchange of which it is a member and exempt from § 240.15c3-1 by subparagraph (b) (2) thereof) and which carries aggregate customer funds (as defined in paragraph (a) (10) of this section), as computed at the last required computation pursuant to this section, not exceeding $1 million, may in the alternative make the computation monthly, as of the close of the last business day of the month, and, in such event, shall deposit not less than 105 percent of the amount so computed no later than 1 hour after the opening of banking business on the second following business day. If a broker or dealer, computing on a monthly basis, has, at the time of any required computation, aggregate indebtedness in excess of 800 percent of net capital, such broker or dealer shall thereafter compute weekly as aforesaid until four successive weekly computations are made, none of which were made at a time when his aggregate indebtedness exceeded 800 percent of his net capital. Computations in addition to the computations required in this subparagraph (3), may be made as of the close of any other business day, and the deposits so computed shall be made no later than 1 hour after the opening of banking business on the second following business day. The broker or dealer shall make and maintain a record of each such computation made pursuant to this subparagraph (3) or otherwise and preserve each such record in accordance with § 240.17a-4.

**\*10** (f) *Notification of banks*. A broker or dealer required to maintain the reserve bank account prescribed by this section or who maintains a special account referred to in paragraph (k) of this section shall obtain and preserve in accordance with § 240.17a-4 written notification from each bank in which he has his reserve bank account or special account that the bank was informed that all cash and/or qualified securities deposited therein are being held by the bank for the exclusive benefit of customers of the broker or dealer in accordance with the regulations of the Commission, and are being kept separate from any other accounts maintained by the broker or dealer with the bank, and the broker or dealer shall have a written contract with the bank which provides that the cash and/or qualified securities shall at no time be used directly or indirectly as security for a loan to the broker or dealer by the bank and, shall be subject to no right, charge, security interest, lien, or claim of any kind in favor of the bank or any person claiming through the bank.

(g) *Withdrawals from the reserve bank account*. A broker or dealer may make withdrawals from his reserve bank account if and to the extent that at the time of the withdrawal the amount remaining in the reserve bank account is not less than the amount then required by paragraph (e) of this section. A bank may presume that any request for withdrawal from a reserve bank account is in conformity and compliance with this paragraph (g). On any business day on which a withdrawal is made, the broker or dealer shall make a record of the computation on the basis of which he makes such withdrawal, and he shall preserve such computation in accordance with § 240.17a-4.

(h) *Buy-in of short security differences*. A broker or dealer shall within 45 calendar days after the date of the examination, count, vertification and comparison of securities pursuant to § 240.17a-13 or otherwise or to the annual report of financial condition in accordance with § 240.17a-5, buy-in all short security differences which are not resolved during the 45-day period.

(i) *Notification in the event of failure to make a required deposit*. If a broker or dealer shall fail to make in his reserve bank

account or special account a deposit, as required by this section, the broker or dealer shall by telegram immediately notify the Commission, the Securities Investor Protection Corp., and the regulatory authority for the broker or dealer, which examines such broker or dealer as to financial responsibility and shall promptly thereafter confirm such notification in writing.

(j) *Specifically identifiable property*. For the purpose of section 6(c) (2) (C) (iii) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78fff(c) (2) (C) (iii)) the following are hereby determined to be allocated to and shall constitute the specifically identifiable property of customers:

*11 (1) All fully paid and excess margin securities in the physical possession or control (including any such securities under the control of the broker or dealer in which a customer can demonstrate ownership rights where the condition of the books or records of the broker or dealer may otherwise fail to accurately reflect such rights) of the broker or dealer or in transfer or stock dividend receivable shall constitute the specifically identifiable property of customers having claims for fully paid and excess margin securities as their interests may appear from the books or records of the broker or dealer or as is otherwise established by a preponderance of the evidence or to the satisfaction of a trustee appointed pursuant to section 5(b) of the Securities Investor Protection Act (15 U.S.C. 78eee(b)).

(2) The cash and qualified securities on deposit in the reserve bank account of a broker or dealer shall be deemed to be the specifically identifiable property of those customers of the broker or dealer who have free credit balances.

(3) If specifically identifiable property allocable to customers pursuant to subparagraph (1) or (2) of this paragraph is insufficient to satisfy the respective claims of such customers, such specifically identifiable property shall be prorated among such customers in accordance with their respective interests.

(4) If the specifically identifiable property allocable to either of the specified classes of customers referred to in subparagraph (1) or (2) of this paragraph exceeds their aggregate claims against such property, such excess shall thereafter constitute part of the "Single and Separate Fund" provided for in section 6(c) (2) (B) the Securities Investor Protection Act (15 U.S.C. 78fff(c) (2) (B)).

(k) *Exemptions*. (1) The provisions of this section shall not be applicable to a broker or dealer meeting all of the following conditions:

(i) His dealer transactions (as principal for his own account) are limited to the purchase, sale, and redemption of redeemable securities of registered investment companies or of interests or participations in an insurance company separate account, whether or not registered as an investment company; except that a broker or dealer transacting business as a sole proprietor may also effect occasional transactions in other securities for his own account with or through another registered broker or dealer;

(ii) His transactions as broker (agent) are limited to: (*a*) The sale and redemption of redeemable securities of registered investment companies or of interests or participations in an insurance company separate account, whether or not registered as an investment company; (*b*) the solicitation of share accounts for savings and loan associations insured by an instrumentality of the United States; and (*c*) the sale of securities for the account of a customer to obtain funds for immediate reinvestment in redeemable securities of registered investment companies; and

*12 (iii) He promptly transmits all funds and delivers all securities received in connection with his activities as a broker or dealer, and does not otherwise hold funds or securities for, or owe money or securities to, customers.

(iv) Notwithstanding the foregoing, this section shall not apply to any insurance company which is a registered broker-dealer, and which otherwise meets all of the conditions in subdivisions (i), (ii), and (iii) of this subparagraph, solely by reason of its participation in transactions that are a part of the business of insurance, including the purchasing, selling, or holding of securities for or on behalf of such company's general and separate accounts.

(2) The provisions of this section shall not be applicable to a broker or dealer:

(i) Who carries no margin accounts, promptly transmits all customer funds and delivers all securities received in connection

with his activities as a broker or dealer, does not otherwise hold funds or securities for, or owe money or securities to, customers and effectuates all financial transactions between the broker or dealer and his customers through one or more bank accounts, each to be designated as "Special Account for the Exclusive Benefit of Customers of (name of the broker or dealer)"; or

(ii) Who, as an introducing broker or dealer, clears all transactions with and for customers on a fully disclosed basis with a clearing broker or dealer, and who promptly transmits all customer funds and securities to the clearing broker or dealer which carries all of the accounts of such customers and maintains and preserves such books and records pertaining thereto pursuant to the requirements of §§ 240.17a-3 and 240.17a-4 of this chapter, as are customarily made and kept by a clearing broker or dealer.

(3) Upon written application by a broker or dealer, the Commission may exempt such broker or dealer from the provisions of this section, either unconditionally or on specified terms and conditions. If the Commission finds that the broker or dealer has established safeguards for the protection of funds and securities of customers comparable with those provided for by this section and that it is not necessary in the public interest or for the protection of investors to subject the particular broker or dealer to the provisions of this section.

(l) *Delivery of securities*. Nothing stated in this section shall be construed as affecting the absolute right of a customer of a broker or dealer to receive in the course of normal business operations following demand made on the broker or dealer, the physical delivery of certificates for:

(1) Fully-paid securities to which he is entitled and,

(2) Margin securities upon full payment by such customer to the broker or dealer of his indebtedness to the broker or dealer; and, subject to the right of the broker or dealer under § 220.7(b) of Regulation T [12 CFR 220.7(b)] to retain collateral for his own protection beyond the requirements of Regulation T, excess margin securities not reasonably required to collateralize such customer's indebtedness to the broker or dealer.

**\*13** (m) *Completion of sell orders on behalf of customers*. If a broker or dealer executes a sell order of a customer (other than an order to execute a sale of securities which the seller does not own) and if for any reason whatever the broker or dealer has not obtained possession of the securities from the customer within 10 business days after the settlement date, the broker or dealer shall immediately thereafter close the transaction with the customer by purchasing securities of like kind and quantity: *Provided, however*, The term "customer" for the purpose of this paragraph (m) shall not include a broker or dealer who maintains a special omnibus account with another broker or dealer in compliance with section 4(b) of Regulation T [12 CFR 220.4(b)].

(n) *Extensions of time*. If a registered national securities exchange or a registered national securities association is satisfied that a broker or dealer is acting in good faith in making the application and that exceptional circumstances warrant such action, such exchange or association, on application of the broker or dealer, may extend any period specified in subparagraphs (2) and (3) of paragraph (d), paragraph (h) and paragraph (m) of this section, relating to the requirement that such broker or dealer take action within a designated period of time to buy-in a security, for one or more limited periods commensurate with the circumstances. Each such exchange or association shall make and preserve for a period of not less than 3 years a record of each extension granted pursuant to paragraph (n) of this section which shall contain a summary of the justification for the granting of the extension.

NOTE A. Item I shall include all outstanding drafts payable to customers which have been applied against free credit balances or other credit balances and shall also include checks drawn in excess of bank balances per the records of the broker or dealer.

NOTE B. (1) Debit balances in margin accounts shall be reduced by the amount by which a specific security (other than an exempted security) which is collateral for margin accounts exceeds in aggregate value 15 percent of the aggregate value of all securities which collateralize all margin accounts receivable; provided, however, the required reduction shall not be in excess of the amount of the debit balance required to be excluded because of this concentration rule. A specified security is deemed to be collateral for a margin account only to the extent it represents in value not more than 140 percent of the customer debit

**PART 240FGENERAL RULES AND REGULATIONS,..., Release No. 9856 (1972)**

balance in a margin account.

(2) Debit balances in customers' cash and margin accounts included in the formula under item 10 shall be reduced by all amount equal to 1 percent of their aggregate value.

(Secs. 15(c)(2), 15(c) (3), 17(a), 23(a), 48 Stat. 895, 897, 901, secs. 3, 4, 8, 49 Stat. 1377, 1379, secs. 2, 5, 52 Stat. 1975, 1076, sec. 7(d), 84 Stat. 1653, 15 U.S.C. 78*o*(c), 78q(a), 78w (a); sec. 6(c) 84 Stat. 1652, 15 U.S.C. 78fff(c))

**\*14** By the Commission
Gladys E. Greer
Assistant Secretary

Footnotes

[1]   Among these are Rules: 17a-13 (the box count rule); 17a-5(j) and 17a-11 (establishing an effective early warning system); 17a-5 as amended (requiring the furnishings of financial information to customers); 15c3-1 as amended (increasing minimum net capital requirements); 15b1-2 and 15c3-1 as amended (imposing high minimum threshold net capital requirements and requiring detailed threshold information designed to effect conservative operation).

Release No. 9856 (S.E.C. Release No.), Release No. 34-9856, 1972 WL 125352

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.