# EXHIBIT C

# SECURITIES REGULATION

## Fifth Edition

### LOUIS LOSS
Late William Nelson Cromwell Professor of Law
Harvard University

### JOEL SELIGMAN
President
University of Rochester

### TROY PAREDES
Founder, Paredes Strategies LLC

**VOLUME VII**

 Wolters Kluwer

B. **Broker-Dealer Substantive Regulation**

Every broker-dealer must also maintain with a bank or banks when deposits are required a "Special Reserve Bank Account for the Exclusive Benefit of Customers," separate from any other bank account of the broker or dealer. The broker-dealer must maintain in this Reserve Bank Account cash or qualified securities or both[136]

---

short security differences and short in customer accounts in excess of 10 business days. Further, if instructions shall have been issued for the recall of a security loaned or for the withdrawal of collateral securities in a bank loan, a broker or dealer shall be permitted to make deliveries of that security to the extent that completion of such recall would create an excess, provided such security recalled is returned to the broker or dealer within two business days following the date of issuance of the instructions in the case of collateral securities in a bank loan and within five business days following the date of issuance of the instructions in the case of securities loaned. . . .

A broker or dealer may eliminate a deficiency in a given security required for possession or control by revising the selection of securities in margin accounts (market value not in excess of 140 percent of the total of the debit balance in the customer's account or accounts) representing collateral for customers' indebtedness. In every instance where a broker or dealer has made a determination as to which securities within the permissible limits constitute margin securities and which securities constitute excess margin securities of customers or has made a revision thereof, the determination shall be clearly reflected in the records of the broker-dealer.

Sec. Ex. Act Rel. 9922 (1973). On the impact of this provision, see also Bloomenthal & Salcito, Customer Protection from Brokerage Failures: The Securities Investor Protection Corporation and the SEC, 54 U. Colo. L. Rev. 161, 169–170 (1983).

Rule 15c3-3(d)(2) addresses broker-dealers and establishes 30 calendar day buy-in procedures; for customers, the counterpart provision is Rule 15c3-3(m), which has a 10 day buy-in period. See Le Masurier, James & Chinn, 1972–1973 Fed. Sec. L. Rep. (CCH) ¶79,260 (avail. Feb. 27, 1973).

In Roberta S. Karmel, 1988–1989 Fed. Sec. L. Rep. (CCH) ¶78,818 (avail. June 18, 1988), the staff approved an alternative buy-in procedure to Rules 15c3-3(d)(2) and 15c3-3(m) for foreign issued and settled securities. Under this procedure 30 days after settlement the broker-dealer takes a proprietary haircut for the securities failed to receive or due from a customer, adjusted by the equity in the transaction on a mark-to-market basis.

On procedures to satisfy Rule 15c3-3(d)(3) with respect to dividends receivable, see Merrill Lynch, Pierce, Fenner & Smith Inc., 1973–1974 Fed. Sec. L. Rep. (CCH) ¶79,690 (avail. Dec. 17, 1973).

[136] Rule 15c3-3(e). *Qualified security* means a "security issued by the United States or a security in respect of which the principal and interest are guaranteed by the United States." Rule 15c3-3(a)(6). See Federal Nat'l Mortgage Ass'n, 1975–1976 Fed. Sec. L. Rep. (CCH) ¶80,237 (avail. June 17, 1975) (Federal National Mortgage Association mortgage-backed securities are qualified securities).

79

in amounts computed in accordance with Rule 15c3-3a.[137] This formula requires, in essence, a deposit of the excess of total credits over total debits.[138] This *Reserve Formula* is designed to eliminate the use of customers' funds and securities by broker-dealers in financing firm overhead and such dealer activities as market making, proprietary trading, and underwriting. The formula:

> requires broker-dealers to determine customers' free credit balances, funds realized by a broker-dealer as a result of the hypothecation or lending of customers' margin securities, funds derived from the failure to receive securities of customers on settlement date from another broker-dealer, and funds derived from other customer-related sources as specified in the formula. The Reserve Formula enables the broker-dealers to determine whether these customers' funds had been committed to finance certain permissible areas of brokerage business. The formula places customers' cash and funds generated by the broker-dealer from use of customers' securities on one side of the equation and on the other side appear secured margin loans, securities borrowed to facilitate delivery of customers' securities, certain customer-related fails to deliver, and (making up any deficit) customer funds deposited in a reserve bank account.[139]

Computations necessary to determine the amount required to be deposited under Rule 15c3-3 must be made weekly, as of the close of the last business day of the week, and the deposit must be made no later than one hour after the opening of banking business on the second following day. Alternatively a broker-dealer that has aggregate indebtedness not more than 800 percent of net

[137] Rule 15c3-3(e)(1). See Fred A. Borries, Jr. 51 SEC 51 (1992) (failure to send required telegraphic notice of deficient deposit in special reserve bank account). See also Kirk A. Knapp , 51 SEC 115 (1992).

[138] It is unlawful for any broker-dealer to use any of the amounts under items comprising total credits under this formula except for the specified purposes indicated under items comprising total debits. However only the specific amount described in the text must be maintained in the Reserve Bank Account. Rule 15c3-3(e)(2).

[139] SEC, Study on the Financing and Regulation Capital Needs of the Securities Industry 7 (1985). See Whiteside & Co. v. SEC, 557 F.2d 1118, 1121 (5th Cir. 1977), *cert. denied sub nom.* Whiteside & Co. v. National Ass'n of Sec. Dealers, Inc., 435 U.S. 942.

B.  **Broker-Dealer Substantive Regulation**

capital (as defined in Rule 15c3-1) *and* that carries aggregate customer funds of not more than $1 million, may make the computation monthly at the close of the last business day of the month, and must deposit not less than 105 percent of that amount not later than one hour after the opening of banking business on the second following day.[140]

The Commission has explained of the Reserve Bank Account:

> Under the Rule, a broker-dealer is required to make a weekly computation (or in certain cases a monthly computation), as of the close of business Friday, to determine how much money it is holding which is either customer money or money obtained from the use of customer securities (i.e., formula credits). From that amount the broker-dealer subtracts the amount of money it is owed by its cash or margin customers or by other broker-dealers and certain other entities because of customer transactions (i.e., formula debits). If the credits exceed the debits, the broker-dealer must deposit the excess by Tuesday morning in a Reserve Bank Account. If the debits exceed the credits, no deposit is necessary.
>
> One of the purposes of the Reserve Formula is to ensure that customers' funds held by a broker-dealer are deployed only in areas of the broker-dealer's business related to servicing its customers (i.e., debit items in the Reserve Formula) or, to the extent that the funds are not deployed in these limited areas, that they are deposited in a Reserve Bank Account. . . . The rule makes it unlawful for a broker-dealer to accept or use customer funds to finance any part of its proprietary business activities.[141]

---

[140] Rule 15c3-3(e)(3). *Customer Funds* is defined in Rule 15c3-3(a)(10) to mean all free credit and other credit balances, carried for the account of the customer.

Rule 15c3-3(e)(3) further requires that, if a broker-dealer when making a monthly computation has aggregate indebtedness in excess of 800 percent of net capital, it must make weekly computations until four successive weekly computations are made during which the aggregate indebtedness does not exceed 800 percent of the net capital. The broker-dealer must preserve a record of each of these computations in accordance with Rule 17a-4.

The required computations must be made before a withdrawal "and must be based solely on *completed* transactions that are documented in the firm's records of a particular . . . time." Lowell H. Listrom & Co., Inc., Sec. Ex. Act. Rel. 31,408, 52 SEC Dock. 2306, 2307 (1992).

[141] Sec. Ex. Act Rel. 22,499, 34 SEC Dock. 266, 267 (1985). Bank accounts established in accordance with Rule 15c3-3 are designed to be non-operational accounts. The Commission staff, however, has permitted limited

Chapter 8.   Regulation of Brokers, Dealers, and Investment Advisers

A broker-dealer required to maintain a Reserve Bank Account must obtain a written notification from each bank that the bank was informed that all cash or qualified securities there deposited are being held by the bank for the exclusive benefit of customers of the broker-dealer, and are being kept separate from any accounts maintained by the broker-dealer with that bank. The broker-dealer must further have a written contract with the bank that provides that the cash or qualified securities must not be used directly or indirectly as security for a loan to the broker or dealer by the bank, and must be subject to no right, charge, security interest, lien, or claim of any kind of the bank or any person claiming through the bank.[142]

A broker-dealer may withdraw funds from its Reserve Bank Account at any time if it makes and preserves a computation demonstrating that an adequate amount will remain on deposit after the withdrawal is made.[143] If a broker-dealer fails to make a required deposit, it must immediately telegraph the Commission and the appropriate regulatory authority that examines the broker-dealer as to financial responsibility.[144] "Any failure to make a required deposit triggers the obligation to send telegraphic notice. The fact that a withdrawal could be made thereafter, based on a new computation as of the first business day of the month, would not negate that obligation."[145] A broker-dealer within 45

---

exceptions to facilitate clearance of security sales. See Exchange Serv., Inc., 1979 Fed. Sec. L. Rep. (CCH) ¶82,100 (avail. Apr. 30, 1979).

For the purposes of the Rule 15c3-3 Reserve Formula and Rule 17a-13, broker-dealers may treat the settlement date of foreign issued and settled securities as the customary settlement cycle in the particular country. Securities Indus. Ass'n, 1990–1991 Fed. Sec. L. Rep. (CCH) ¶79,636 (avail. Aug. 9, 1990).

[142] Rule 15c3-3(f). Letter agreements will constitute *written contracts* within the meaning of the Rule. Brittenum & Assoc., Inc., 868 F.2d 272, 274–275 (8th Cir. 1989).

[143] Rule 15c3-3(g); Joseph J. Balint, 47 SEC 1060, 1061 (1984). A bank may presume that any request by a broker or dealer for withdrawal of funds from a Reserve Bank Account is in compliance with the Rule. Rule 15c3-3(g); see also Brittenum & Assoc., Inc., 868 F.2d 272, 275 (8th Cir. 1989).

[144] Rule 15c3-3(i). In the age of the Internet, the reference to the telegraph now seems somewhat quaint.

[145] Joseph J. Balint, 47 SEC 1060, 1062–1063 (1984). "The notification provision is designed to alert regulatory authorities quickly to any potential problem in meeting deposit requirements. Extenuating circumstances can