# EXHIBIT E

# Lofchie's Guide to Broker-Dealer Regulation

### as of January 2005

Steven Lofchie
*Partner*
*Davis Polk & Wardwell*

| PAGE |
|---|
| ........ 491 |
| ........ 491 |
| ........ 491 |
| ........ 492 |
| ........ 492 |
| ........ 492 |
| ........ 492 |
| ........ 493 |
| ........ 493 |
| ........ 493 |
| ........ 494 |
| ........ 494 |
| ........ 494 |
| ........ 495 |
| ........ 495 |
| ........ 495 |
| ........ 496 |
| ........ 496 |
| ........ 496 |
| ........ 496 |
| ........ 496 |
| ........ 496 |
| ........ 496 |
| ........ 497 |
| ........ 497 |
| ........ 497 |
| ........ 498 |
| ........ 498 |
| ........ 498 |
| ........ 498 |
| ........ 499 |
| ........ 499 |
| ........ 499 |
| ........ 500 |
| ........ 500 |
| ........ 500 |

## CUSTODY

Section 15(c)(3) of the 1934 Act authorizes the SEC to prescribe rules relating to the "financial responsibility" of broker-dealers, including with respect to their "acceptance of custody and use of customers' securities and the carrying and use of customers' deposit or credit balances." Pursuant to this provision, the SEC has adopted two of the rules that are at the heart of the broker-dealer regulatory system. These are: first, Rule 15c3-1 (the "net capital rule") which establishes minimum regulatory capital requirements; and second, Rule 15c3-3 (the "customer protection rule") which is intended to prevent a broker-dealer from putting its customers' assets at risk in the conduct of the broker-dealer's proprietary activities. These two rules are supplemented by other SEC and SRO rules that directly regulate capital and the treatment of customer property, or related matters including recordkeeping. The customer protection rule and related regulations are the subject of *Section I of this Chapter*. *Section II of this Chapter* discusses the exemptions from the customer protection rule including the exception for introducing and clearing relationships. *The Capital Chapter* covers the net capital rule.

Practitioners should note that a very useful discussion of the customer protection rule is also provided in Michael P. Jamroz, "The Customer Protection Rule" 57 Bus. Law. 3, 1069 (2002).

### I. The Customer Protection Rule Overview

Rule 15c3-3 is intended to prevent a broker-dealer from using its customers' securities and other assets to finance the broker-dealer's proprietary activities. Speaking very generally, the customer protection rule, as supplemented by Rule 15c2-1 (or essentially identical Rule 8c-1), has three principal requirements.

First, a broker-dealer must maintain **possession or control** of certain customer securities. As to such customer securities, a broker-dealer cannot sell them, lend them to others, use them to deliver against short sales or use them as collateral for a loan. Further, customer securities must be maintained either with the broker-dealer or in another satisfactory control location. When securities that had not been previously subject to a possession or control requirement become subject to the requirement (*e.g.*, because a customer has paid down a margin loan), the customer protection rule establishes a timetable by which the broker-dealer must reclaim the securities.

Second, as to customer cash, a broker-dealer must **deposit the cash** or specified securities (referred to as "qualified securities") of like value in a special account known as the "reserve account."

Third, as to customer securities that are not required to be in the broker's control (*e.g.*, those customer securities that a broker-dealer may pledge as collateral to third parties), the broker-dealer is subject to **limits on the amount it can borrow** against such securities in order to prevent the broker-dealer from using its customers' securities as collateral to leverage its own business. *See Rule 15c3-3(b)(1) and (e)(1); Rule 15c2-1 under the Exchange Act.*