**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Jonathan B. New
Robertson D. Beckerlegge
Robyn M. Feldstein
*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

Hearing Date: January 31, 2018 at 10:00 a.m.
Objection Deadline: January 24, 2018

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE ESTATE OF STEVEN MENDELOW; NANCY MENDELOW, individually and in her capacity as Executrix of THE ESTATE OF STEVEN MENDELOW; CARA MENDELOW; PAMELA CHRISTIAN; C&P ASSOCIATES, LTD.; and C&P ASSOCIATES, INC.,<br><br>Defendants. | Adv. Pro. No. 10-04283 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
A SETTLEMENT AGREEMENT BY AND BETWEEN THE TRUSTEE
AND THE ESTATE OF STEVEN MENDELOW AND OTHER
DEFENDANTS IN ADVERSARY PROCEEDING NO. 10-04283**

TO: THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA") and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement")[1] by and between the Trustee, on the one hand, and Defendants,[2] on the other hand. In support of the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Agreement represents a good faith, complete settlement of all disputes raised in this adversary proceeding between the Trustee and the Defendants. The settlement will

---

[1] The Agreement is attached hereto as Exhibit A.

[2] On June 17, 2017, Nancy Mendelow died. Cara Mendelow and Pamela Christian have been named as executrices of the Estate of Nancy Mendelow and the Estate of Steven Mendelow. Accordingly, the Defendants are The Estate of Steven Mendelow; The Estate of Nancy Mendelow; Cara Mendelow, individually, and in her capacity as Executrix of The Estate of Steven Mendelow and as Executrix of the Estate of Nancy Mendelow; Pamela Christian, individually, and in her capacity as Executrix of The Estate of Steven Mendelow and as Executrix of the Estate of Nancy Mendelow; C&P Associates, Ltd.; and C&P Associates, Inc.

1

benefit the customer property fund by approximately $9.7 million. The Agreement will greatly benefit the victims of the Madoff Ponzi scheme and the Trustee respectfully requests that the Court approve it.

## BACKGROUND

2. On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

3. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    a. removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

    b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

---

[3] In this case, the Filing Date is December 11, 2008, the date on which the Securities and Exchange Commission commenced its suit against BLMIS, which resulted in the appointment of a receiver for the firm. *See* § 78lll(7)(B) of SIPA.

2

c. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

6. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST DEFENDANTS

7. The following is a summary of the factual allegations brought by the Trustee in its Avoidance Action and Amended Complaint, as defined below, against the Defendants.

8. Steven Mendelow ("Mendelow") was an accountant and financial advisor. The Trustee alleges that, for at least 30 years, Mendelow steered investors to BLMIS. He was a principal at Konigsberg Wolf & Co. P.C. ("Konigsberg Wolf").

9. Mendelow invested with Madoff since the 1980's. In the early years of his involvement with BLMIS, Mendelow set up a feeder fund, Telfran Associates Ltd. ("Telfran") that funneled money to BLMIS through the accounting firm Avellino & Bienes ("A&B"). The Trustee alleges that after Telfran was shut down by the Securities and Exchange Commission ("SEC") in 1993 for selling unregistered securities, Mendelow then referred those investors directly to Madoff.

10. Mendelow was also a partner in, and officer of, numerous other companies that he created and that invested with BLMIS, including C&P Associates Ltd. ("C&P Associates") and FGLS Equity, LLC.

11. Mendelow held BLMIS account 1ZR179, in the name "NTC & Co. FBO Steven B. Mendelow." This was an Individual Retirement Account ("IRA"). Mendelow also held BLMIS account 1ZR208 in the name "NTC & Co. FBO Steven Mendelow." This account was also an IRA and was liquidated by January 12, 1995.

12. Mendelow died on June 5, 2016.

13. Cara Mendelow and Pamela Christian were appointed executrices of the Estate of Steven Mendelow on August 14, 2017.

14. Nancy Mendelow was married to Mendelow until the time of his death. Nancy Mendelow held BLMIS account 1ZR180, in the name "NTC & Co. FBO Nancy Mendelow." This was an IRA.

15. Nancy Mendelow died on June 17, 2017.

16. Cara Mendelow and Pamela Christian were appointed executrices of the Estate of Nancy Mendelow on October 18, 2017.

17. Cara Mendelow is the daughter of Mendelow and Nancy Mendelow. Cara Mendelow held BLMIS account 1ZB336 in the name, "Cara Mendelow." At all times, Mendelow managed Cara Mendelow's account at BLMIS. Mendelow also directed subsequent contributions to and withdrawals from her BLMIS account and communicated with BLMIS on her behalf.

18. Pamela Christian is the daughter of Mendelow and Nancy Mendelow. Pamela Christian held BLMIS account 1ZB337 in the name, "Pamela Mendelow." At all times,

Mendelow managed Pamela Christian's account at BLMIS. Mendelow opened her BLMIS account, directed contributions and withdrawals, and communicated with BLMIS on her behalf.

19. C&P Associates, Inc. is a Florida corporation incorporated on January 8, 1988. The address of its principal place of business at the time of Mendelow's death was his residence at 88 Central Park West, New York, New York 10023. Previously, from January 8, 1988 to January 9, 2012, C&P Associates, Inc.'s principal address was 440 Park Avenue South, 10th Floor, New York, New York 10016, which is the same address as Mendelow's previous employer, Konigsberg Wolf. Mendelow and Nancy Mendelow were the only officers of C&P Associates, Inc.

20. C&P Associates is a Florida limited partnership formed on January 15, 1988. The principal address of C&P Associates was care of Steven Mendelow at 88 Central Park West, New York, New York 10023. That was the same address as Mendelow's residence prior to his death. Previously, from January 15, 1988 to March 1, 2005, C&P Associate's principal address was 440 Park Avenue South, 10th Floor, New York, New York 10016, which is the same address as Mendelow's previous employer, Konigsberg Wolf. The general partner of C&P Associates is C&P Associates, Inc. Mendelow initially formed C&P Associates as an investment partnership for the benefit of his children, Defendants Cara Mendelow and Pamela Christian, who are the limited partners of C&P Associates. C&P Associates held BLMIS account 1ZA542 in the name "C&P Associates." Mendelow opened the BLMIS account for C&P Associates, directed contributions to and withdrawals from that account, and communicated with BLMIS on C&P Associates' behalf.

21. Since the opening of these various accounts, Defendants withdrew $20,250,719 from BLMIS. Since January 21, 2001, Defendants withdrew $14,040,000 from BLMIS, $11,414,745 of which was fictitious profit from the Ponzi scheme in that Defendants withdrew

5

more than they invested in their BLMIS accounts. The two-year transfers of fictitious profits for all Defendants total $825,000, and the total amount of six-year transfers, both fictitious profits and principal, total $9,185,000 (the "Six-Year Transfers").

22. On November 23, 2010, the Trustee filed an adversary proceeding (the "Avoidance Action") in this Court against Mendelow, his family members, and entities related to Mendelow. On June 7, 2016, Steven Mendelow died, and the Estate of Steven Mendelow and Nancy Mendelow as Executrix of the Estate of Steven Mendelow were substituted in his place as a defendant in the Avoidance Action. On November 1, 2016, the Trustee filed an amended complaint in this adversary proceeding (the "Amended Complaint") against the Defendants, seeking to avoid and recover the amount of $14,040,000 in payments or other transfers directly to Defendants between and including January 1, 2001[4] and the Filing Date. The Trustee's Amended Complaint asserts claims against the Defendants including, but not limited to, claims under §§ 544, 548, 550(a) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) and 213(8) (McKinney 2001) and the New York Fraudulent Conveyance Act (New York Debtor & Creditor ("DCL")) §§ 273-279 (McKinney 2001).

23. The Avoidance Action alleges that Mendelow knew that BLMIS did not engage in actual securities trading in the Defendants' accounts.

24. The Avoidance Action does not allege and Trustee does not now contend that either Cara Mendelow or Pamela Christian had actual knowledge of fraud at BLMIS.

---

[4] In its Memorandum Decision Granting in Part and Denying in Part Trustee's Motion for Leave to Amend Complaint, this Court limited the Trustee's ability to avoid and recover transfers that occurred prior to January 1, 2001. *Picard v. The Estate of Steven Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Sept. 28, 2016), ECF No. 101.

6

25. Defendants deny the material allegations in the Trustee's Amended Complaint in the Avoidance Action. Defendants dispute the legal and factual bases of the Trustee's claims against them and have asserted certain defenses to the Trustee's claims. Defendants assert that their withdrawals from BLMIS were made in good faith and for value and, thus, are not avoidable. In addition, Defendants assert that they are subject to the "safe harbor" set forth in § 546(e) of the Bankruptcy Code, and any amounts received by Defendants from BLMIS are settlement payments exempt from avoidance under § 546(e) of the Bankruptcy Code. The Adversary Proceeding is pending in this Court.

## SETTLEMENT DISCUSSIONS

26. At various times following the Trustee's filing of the Amended Complaint, the Defendants, through their respective counsel, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims. In early January 2017, counsel for the Trustee met with counsel for the Defendants to discuss the possibility of settlement. Although promoting the participants' understanding of their respective positions, those discussions did not produce an agreement. Defendants thereafter filed their answers on February 28, 2017 to the Trustee's Amended Complaint and the parties began to engage in discovery.

27. In March 2017, the parties restarted settlement negotiations. Though the Defendants continued to dispute the legal and factual bases of the Trustee's claims and to assert that their withdrawals from BLMIS were made in good faith and for value, the parties were able to reach an agreement. The settlement is the result of good faith negotiations over several months.

## OVERVIEW OF THE AGREEMENT

28.  The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as Exhibit A and should be reviewed for a complete account of its terms):

    a.  Defendants shall pay the Trustee the sum of $9.7 million within fifteen days of the Court's Order approving the Agreement.

    b.  In consideration for the covenants and agreements set forth in the Agreement and for other good and valuable consideration, the Trustee releases and discharges the Defendants from any and all past, present or future claims or causes of action and from any and all allegations of liability or damages known or unknown, that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, Madoff, and/or the consolidated BLMIS/Madoff estate, against Defendants based on, arising out of, or relating in any way to the BLMIS accounts or avoidable transfers.

    c.  Defendants, on behalf of themselves and their executors, administrators, heirs and assigns, hereby release, remise, and forever discharge: (a) Trustee; (b) all of Trustee's attorneys, professionals, agents and consultants; and (c) Madoff and BLMIS and its consolidated estate, from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages known or unknown, now existing or arising in the future, arising out of or in any way related to BLMIS, Madoff, the Madoff Estate, BLMIS accounts, or the avoidable transfers.

8

    d.    Counsel for Trustee and counsel for Defendants shall respectively execute, and Trustee shall subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or Defendants.

### RELIEF REQUESTED

29. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit B approving the Agreement.

### LEGAL BASIS

30. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

31. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*,

9

150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

32. In deciding whether a compromise falls within the "range of reasonableness," courts consider the following factors:

    a.    the probability of success in the litigation;

    b.    the difficulties associated with collection;

    c.    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    d.    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

33. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

34. The settlement furthers the interests of BLMIS customers by adding an estimated $9.7 million to the fund of Customer Property. It also results in a recovery by the Trustee in excess of the Six-Year Transfers, without the delay and expense of further litigation along with the attendant uncertainty.

35. The terms of the settlement fall well within the range of reasonableness and, accordingly, the settlement should be approved by this Court. The settlement avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (*See* Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit"), a true and accurate copy of which is attached hereto as Exhibit C).

## CONCLUSION

36. In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise that will greatly benefit the estate and the customers of BLMIS. Because the Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

37. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; (b) the SEC; (c) the Internal Revenue Service; (d) the United States Attorney for the Southern District of New York; and (e) Seth L. Rosenberg, Clayman & Rosenberg LLP, 305 Madison Avenue, Suite 1301, New York, New York 10165. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Date: January 5, 2018
New York, New York

By: *s/ Jonathan B. New*
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Jonathan B. New
Email: jnew@bakerlaw.com
Robertson D. Beckerlegge
Email: rbeckerlegge@bakerlaw.com
Robyn M. Feldstein
Email: rfeldstein@bakerlaw.com
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*