# EXHIBIT A

## SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into as of January 4, 2018, by and between Irving H. Picard, in his capacity as the Trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff" and, collectively, the "BLMIS Estate") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on the one hand, and The Estate of Steven Mendelow ("The Estate"), The Estate of Nancy Mendelow ("Nancy Mendelow"), Cara Mendelow, in her individual capacity, and as executrix of the Estate of Steven Mendelow and executrix of the Estate of the Nancy Mendelow ("Cara Mendelow"), Pamela Christian, in her individual capacity, and as executrix of the Estate of Steven Mendelow and executrix of the Estate of Nancy Mendelow ("Pamela Christian"), C&P Associates Ltd, and C&P Associates, Inc. (collectively, "Transferees"), on the other hand.  Trustee and Transferees shall be hereinafter referred to individually as a "Party" and collectively as the "Parties."

## R E C I T A L S

**WHEREAS**, BLMIS and its predecessor were registered broker-dealers with the United States Securities and Exchange Commission (the "Commission") and members of the Securities Investor Protection Corporation ("SIPC");

**WHEREAS**, on December 11, 2008, the Commission filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 12, 2008, the District Court entered an order which, among other

things, appointed Lee S. Richards, Esq. as receiver (the "Receiver") for the assets of BLMIS (No. 08-CV-10791(LSS));

WHEREAS, on December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed Trustee as the trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA, removed the Receiver as the receiver for BLMIS, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (SMB) ("Liquidation Proceeding"). By Order dated June 9, 2009, the Chapter 7 estate of Madoff (the "Madoff Estate") was substantively consolidated with the estate of BLMIS;

WHEREAS, pursuant to section 78fff-1(a) of SIPA, Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA proceeding to the extent consistent with SIPA;

WHEREAS, under SIPA, Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers such as preference payments and fraudulent transfers made by BLMIS;

**WHEREAS,** Trustee's claims against transferees who received avoidable transfers from BLMIS arise under SIPA, including sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a) and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws;

**WHEREAS,** pursuant to an order of the Bankruptcy Court, dated December 23, 2008 (the "Claims Procedures Order", Case No. 08-01789 (SMB),[1] ECF No. 12), Trustee is authorized to enter into settlements with claimants in connection with any claims upon which there is a disagreement, provided that Trustee obtains the approval of SIPC. Pursuant to the Claims Procedures Order, no further order of the Bankruptcy Court is necessary as long as any obligations incurred by the BLMIS Estate under the settlements are ascertainable from the books and records of BLMIS or are otherwise established to the satisfaction of Trustee;

**WHEREAS,** pursuant to an order of the Bankruptcy Court, dated November 12, 2010 (the "Settlement Order", ECF No. 3181), Trustee is authorized to enter into settlement agreements with transferees in settlement of avoidable transfers without Bankruptcy Court approval, subject to the limitations and procedures set forth therein;

**WHEREAS,** on November 23, 2010, Trustee commenced an adversary proceeding in the Bankruptcy Court against transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Steven B. Mendelow, NTC & Co. LLP, as former custodian of an Individual Retirement Account for the benefit of Steven B. Mendelow, Nancy Mendelow, NTC & Co. LLP as former custodian of an Individual Retirement Account for the benefit of Nancy Mendelow, Cara Mendelow, Pamela Christian, C&P*

---

[1] All ECF numbers referenced herein are applicable to Case No. 08-01789 (SMB), unless otherwise stated.

*Associates, Ltd., C&P Associates, Inc*, Adv. Pro. No. 10-04283 (SMB) (the "<u>Adversary</u> <u>Proceeding</u>");

WHEREAS, On June 5, 2016, Steven Mendelow died;

WHEREAS, On August 3, 2016, The Estate of Steven Mendelow and Nancy Mendelow, in her capacity as Executrix of the Estate were substituted into the action in place of Steven B. Mendelow;

WHEREAS, On November 1, 2016, Trustee filed an Amended Complaint against the Estate of Steven Mendelow, Nancy Mendelow, in her personal capacity and as Executrix of the Estate of Steven Mendelow, Pamela Christian, Cara Mendelow, C&P Associates, Inc. and C&P Associates, Ltd;

WHEREAS, on February 28, 2017, the Estate of Steven Mendelow, Nancy Mendelow, in her personal capacity and as Executrix of the Estate of Steven Mendelow, Pamela Christian, Cara Mendelow, C&P Associates, Inc. and C&P Associates, Ltd filed Answers to the Amended Complaint in which they denied that they received any of the transfers alleged in the Amended Complaint with actual knowledge of fraud at BLMIS, with willful blindness to circumstances suggesting fraud at BLMIS, or otherwise in bad faith, and disputed the legal and factual bases of Trustee's claims;

WHEREAS, on June 17, 2017, Nancy Mendelow died;

WHEREAS, on August 14, 2017, Cara Mendelow and Pamela Christian were named executrices of the Estate of Nancy Mendelow;

WHEREAS, on October 18, 2017, Cara Mendelow and Pamela Christian were named executrices of the Estate of Steven Mendelow;

**WHEREAS,** Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the time from January 1, 2001, to December 11, 2008, at a minimum, in the aggregate amount of Fourteen Million, and Forty Thousand, United States Dollars ($14,040,000) (the "Avoidable Transfers");

**WHEREAS,** Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the six year period, at a minimum, in the aggregate amount of Nine Million, One Hundred and Eighty-Five Thousand, United States Dollars ($9,185,000);

**WHEREAS,** Trustee alleges that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the two year period, at a minimum, in the aggregate amount of Eight Hundred and Twenty-Five Thousand, United States Dollars ($825,000);

**WHEREAS,** Trustee does not allege and does not now contend that either Cara Mendelow or Pamela Christian had actual knowledge of fraud at BLMIS;

**WHEREAS,** Transferees did not file a claim in connection with BLMIS Account Nos. 1ZA179, 1ZA180, 1ZB336, 1ZB337, 1ZA542, (together the "BLMIS Accounts"); and

**WHEREAS,** the Parties desire to settle any and all claims and disputes the Parties may have against each other with respect to BLMIS, the BLMIS Accounts, and the Avoidable Transfers without the expense, delay and uncertainty of litigation.


## DEFINITION

The following definition shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

5

"Unknown Claims" shall mean any Released Claims (as defined in Section 4 herein), that Transferees do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all Released Claims, Transferees shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Transferees expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. Transferees may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Transferees shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. Transferees acknowledge and shall be deemed to have

acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

**NOW THEREFORE,** for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is recognized for all purposes, the Parties agree as follows:

1.    <u>Bankruptcy Court Approval; Effective Date</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon: (i) the Bankruptcy Court's approval of the Agreements in the SIPA Proceeding by an order that is no longer subject to appeal, review or rehearing by any court of competent jurisdiction ("<u>Approval Date</u>"), and (ii) receipt by the Trustee of the Settlement Payment, as defined in paragraph 2 (the "<u>Effective Date</u>"). If the Approval Order is subject to a timely appeal or stay, the Approval Date shall not occur until the Approval Order becomes final and no longer subject to any appeal or stay, provided, however, the Transferees, in their sole and absolute discretion, may waive the requirement for a final and non-appealable Approval Order. The Trustee shall use reasonable efforts to obtain approval of this Agreement in the SIPA Proceeding as promptly as practicable after execution of this Agreement.

2.    <u>Conditions of Settlement</u>. In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration (including, without limitation, the release set forth in <u>Section 3</u>), the receipt and sufficiency of which is hereby acknowledged for purposes of this settlement only, the Transferees shall pay the Trustee the sum of Nine Million, Seven Hundred Thousand Dollars ($9,700,000) (the "<u>Settlement Payment</u>") within fifteen business days of the Approval Date.

3.    <u>No Admission of Liability</u>. This Agreement memorializes a settlement of disputed claims and is not in any way to be construed as an admission of liability, or of any issue of fact or law,

by any Party hereto. Transferees deny actual knowledge of the BLMIS fraud or willful blindness with respect to circumstances suggesting such fraud or that in any other respect they acted in bad faith. Transferees have agreed to settle this matter to avoid the uncertainty, time required and expense of continued litigation.

4.    Release by Trustee.

(a)    In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, except with respect to any rights arising under this Agreement, Trustee hereby releases, remises and forever discharges (a) Transferees; and (b) Transferees' attorneys, professionals, agents and consultants from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown, that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, Madoff, and/or the consolidated BLMIS/Madoff estate, against Transferees based on, arising out of, or relating in any way to the BLMIS Accounts or the Avoidable Transfers.

(b)    Other Limitations on Release

(i)    The foregoing release in Section 3(a) is made by Trustee exclusively in his capacity as trustee for the Liquidation Proceeding and the substantively consolidated Chapter 7

8

case of Bernard L. Madoff, and shall not constitute a release by any other party in any other capacity.

(c)    Notwithstanding the foregoing release contained in Section 3(a), Transferees are not released from liability for any transfers that they may have received in connection with any account not specified herein or may receive after the date of this Agreement which constitute subsequent transfers of transfers made by BLMIS which are avoidable and recoverable under SIPA, including SIPA sections 78fff(b), 78fff-1(a), and 78fff-2(c)(3), sections 105(a), 541, 544, 547, 548, 550(a), and 551 of the Bankruptcy Code, the New York Debtor and Creditor Law § 270 et seq. (McKinney 2001) and other applicable laws.

5.    <u>Release by Transferees</u>.    Transferees, on behalf of themselves and their executors, administrators, heirs and assigns, hereby release, remise, and forever discharge: (a) Trustee; (b) all of Trustee's attorneys, professionals, agents and consultants; and (c) Madoff and BLMIS and its consolidated estate, from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements) known or unknown (including Unknown Claims), now existing or arising in the future, arising out of or in any way related to BLMIS, Madoff, the Madoff Estate, BLMIS Accounts, or the Avoidable Transfers (the "<u>Released Claims</u>").

6.    <u>Dismissal of Adversary Proceeding</u>.  As soon as practicable after the Effective Date, counsel for Trustee and counsel for Transferees shall respectively execute, and Trustee shall subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or Transferees.

7.    <u>Representations and Warranties of Trustee.</u>  Trustee hereby represents and warrants to Transferees that he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder.

8.    <u>Representations and Warranties by Transferees</u>

(a)    Transferees hereby represent and warrant to Trustee that: (i) he or she has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his or her obligations hereunder; (ii) this Agreement has been duly executed and delivered by each Transferee and constitutes the valid and binding agreement of each Transferee, enforceable against each Transferee in accordance with its terms; (iii) in executing this Agreement, each Transferee has done so with the full knowledge of any and all rights that each Transferee may have with respect to the controversies herein compromised, and each Transferee has received or has had the opportunity to obtain independent legal advice from his or her attorneys with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that each Transferee releases herein, and each Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that each Transferee releases herein.

(b)    Transferees represent and warrant, to the best of his, her or its knowledge, information and belief, that: (1) other than the Transfers as referenced on the schedules attached

as Exhibit B to the Complaint filed in the Adversary Proceeding, he, she or it have not received any other money, funds, loans, transfers, assets, financial assistance or financial accommodation from Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS; (2) he or she is not an immediate, mediate or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee, other than as set forth in schedules attached as Exhibit B to the Complaint filed in the Adversary Proceeding; and (3) he, she or it is not aware of any other potential claims against him or her by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS.

9.      Termination of Agreements with BLMIS.    Any and all prior agreements between Transferees, or either Transferee, on the one hand, and BLMIS and/or Madoff on the other hand, are hereby terminated as of the date of this Agreement.

10.     Further Assurances.    Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

11.     Entire Agreement.    This Agreement constitutes the entire agreement and understanding among the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

12.     Amendment; Waiver.    This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

13.    Assignment.  This Agreement may not be assigned by either Party without the prior written consent of the other Party.

14.    Successors.  This Agreement shall be binding upon and inure to the benefit of each Party and its respective successors and permitted assigns.

15.    Negotiated Agreement.  This Agreement has been fully negotiated by the Parties.  Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

16.    Severability.  In the event that any term or provision of this Agreement or any application thereof is deemed to be invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision shall not be affected thereby.

17.    Counterparts; Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

18.    Governing Law.  This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

19.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE EVENT THE BLMIS PROCEEDING IS CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

20.    Expenses. Each Party shall bear its respective expenses relating to or arising out of this Agreement, including, but not limited to, fees for attorneys, accountants and other advisors.

21.    Notices. All notices, requests, demands, consents and communications necessary or required under this Agreement shall be in writing and shall be delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto. A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein. All such notices, requests, demands, consents and other communications shall be deemed to have been duly given or sent two (2) days following the date on which mailed, or on the date on which

13

delivered by courier or by hand or by facsimile or electronic transmission (receipt confirmed), as the case may be, and addressed as aforesaid.

22.      <u>No Third Party Beneficiaries</u>.  The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

23.      <u>Captions and Rules of Construction</u>.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a section is to a section of this Agreement.  "Including" is not intended to be a limiting term.

**[Signature pages follow]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

<u>TRUSTEE</u>

IRVING H. PICARD, THE TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

By: _____
IRVING PICARD, TRUSTEE

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Fernando A. Bohorquez, Jr.
Facsimile: (212) 589-4201

Sworn and subscribed before me this
____ day of December, 2017.

_____
Notary Public

Gracemary Curbelo
Notary Public, State of New York
No. 01CU6288700, Qualified in Bronx County
Certificate Filed in New York County
Commission Expires 9/8/20__

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

15

**TRANSFEREE**

**THE ESTATE OF STEVEN MENDELOW**

Address:                                    By: _Cara Mendelow_
The Estate of Steven Mendelow              **CARA MENDELOW AS EXECUTRIX OF THE**
c/o Clayman & Rosenberg LLP                **ESTATE OF STEVEN MENDELOW**
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
29 day of December, 2017

_____
Notary Public

> MARIJA MILANOVIC
> Notary Public - State of New York
> NO. 01MI6347844
> Qualified in Queens County
> My Commission Expires Sep 12, 2020

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

16

**TRANSFEREE**

**THE ESTATE OF STEVEN MENDELOW**

By: _____

**PAMELA CHRISTIAN AS EXECUTRIX OF THE ESTATE OF STEVEN MENDELOW**

Address:
The Estate of Steven Mendelow
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
2nd day of ~~December, 2017~~ Jan. 2018

_____
Notary Public

DIANE PAVENTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 23, 2022

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

**THE ESTATE OF NANCY MENDELOW**

By: _Cara Mendelow_

**CARA MENDELOW AS EXECUTRIX OF THE
ESTATE OF NANCY MENDELOW**

Address:
The Estate of Nancy Mendelow
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
29th day of December, 2017

_____
Notary Public

MARIJA MILANOVIC
Notary Public - State of New York
NO. 01MI6347844
Qualified in Queens County
My Commission Expires Sep 12, 2020

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

18

**TRANSFEREE**

THE ESTATE OF NANCY MENDELOW

By: _____

**PAMELA CHRISTIAN AS EXECUTRIX OF THE
ESTATE OF NANCY MENDELOW**

Address:
The Estate of Nancy Mendelow
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
2nd day of ~~December, 2017~~ Jan. 2018

_____
Notary Public          DIANE PAVENTA
                  NOTARY PUBLIC OF NEW JERSEY
                My Commission Expires Aug. 23, 2022

[TRANSFEREE SIGNATURE PAGE TO SETTLMENT AGREEMENT

19

**TRANSFEREE**

CARA MENDELOW

*Cara Mendelow*

Address:
Cara Mendelow
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
29th day of December, 2017

*Marija Milanovic*
Notary Public

> MARIJA MILANOVIC
> Notary Public - State of New York
> NO. 01MI6347844
> Qualified in Queens County
> My Commission Expires Sep 12, 2020

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**TRANSFEREE**

PAMELA CHRISTIAN

Address:
Pamela Christian
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
2nd day of ~~December, 2017~~ Jun. 2018

Notary Public

DIANE PAVENTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 23, 2022

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

21

**TRANSFEREE**

Address:
C&P Associates, Ltd.
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

**C&P ASSOCIATES, LTD.**

By: _Cara Mendelow_
    **CARA MENDELOW**

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
29th day of December, 2017

_signature_
Notary Public

> MARIJA MILANOVIC
> Notary Public - State of New York
> NO. 01MI6347844
> Qualified in Queens County
> My Commission Expires Sep 12, 2020

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

22

**TRANSFEREE**

                                        **C&P ASSOCIATES, LTD.**

                                        By: _____
Address:                                        **PAMELA CHRISTIAN**
C&P Associates, Ltd.
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255




With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255




Sworn and subscribed before me this
2nd day of ~~December, 2017~~ Jan. 2018


_____
Notary Public
                    DIANE PAVENTA
                NOTARY PUBLIC OF NEW JERSEY
                My Commission Expires Aug. 23, 2022


            [TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]


                                23

**TRANSFEREE**

C&P ASSOCIATES, INC.

Address:

By: _Cara Mendelow_
CARA MENDELOW

C&P Associates, Inc.
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
29th day of December, 2017

_____
Notary Public

MARIJA MILANOVIC
Notary Public - State of New York
NO. 01MI6347844
Qualified in Queens County
My Commission Expires Sep 12, 2020

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

24

**TRANSFEREE**

C&P ASSOCIATES, INC.

Address:
C&P Associates, Inc.
c/o Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Facsimile: (212) 949-8255

By: _____
    PAMELA CHRISTIAN

With copies to:
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 1301
New York, New York 10165
Attn: Seth Rosenberg
Facsimile: (212) 949-8255

Sworn and subscribed before me this
2nd day of ~~December, 2017~~ Jan. 2018

_____
Notary Public

DIANE PAVENTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 23, 2022

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]