Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff,

7             v.

8    BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

9                    Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  August 22, 2017

17                  2:01 PM

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  J. PEREYRA

Page 2

1    HEARING re Adversary proceeding: 08-01789-smb Securities

2    Investor Protection Corporation V. Bernard L. Madoff

3    Investment Securities, LLC. et al Hearing on Settlement of

4    Order regarding Day 2 Deposition of Bernard Madoff

5

6    HEARING re Debtors' Objection to Larsen & Toubro Limited

7    Claim

8

9    HEARING re Debtors' Objection to Claim No. 4131 (R. T. Cargo)

10

11   HEARING re Debtors' Objection to Steuben County Industrial

12   Development Agency Claims

13

14   HEARING re Debtors' Twentieth Omnibus Objection to Disallow

15   and Expunge Scheduled Claims Designated as Contingent,

16   Unliquidated and/or Disputed

17

18   HEARING re Debtors' First Omnibus Objection to Disallow and

19   Expunge Certain Duplicate Claims (Enerbank Claims)

20

21   HEARING re Debtors' Third Omnibus Objection to Disallow and

22   Expunge Certain Duplicate Claims (Enerbank Claims)

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   BAKER HOSTETLER

 4        Attorneys for the Trustee, Picard

 5        45 Rockefeller Center

 6        New York, NY 10111

 7

 8   BY:  DAVID J. SHEEHAN

 9        AMANDA E. FEIN

10

11   CHAITMAN LLP

12        Attorney for Defendants

13        465 Park Avenue

14        New York, NY 10022

15

16   BY:  HELEN DAVIS CHAITMAN

17

18

19

20

21

22

23

24

25
```

Page 4

```
1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon.  Madoff.  All right, I

3     have -- this conference was scheduled to deal with certain

4     objections to the proposed order related to the date two

5     deposition topics, day two, under the day two deposition

6     participants.  So I hear the objections to the proposed

7     order.

8              MS. CHAITMAN:  Thank you, Your Honor.  Helen Davis

9     Chaitman on behalf of a large number of defendants.  Your

10    Honor, it was clear from all of the transcripts from the

11    very first hearing at which the Court heard argument on my

12    motion to permit us to depose Mr. Madoff, that the Court had

13    set a bar date of July 7th, 2016, which was the date on

14    which I filed that motion.

15             So anyone whose discovery cut off had preceded

16    that date.  The Court held that those people could not

17    participate in Madoff's deposition, but everybody else

18    could.  And in fact, Mr. Murphy acknowledged that on the

19    record.  And there had never been any dispute about it.

20             The Trustee apparently seeking to take some kind

21    of advantage, has continued to use the Exhibit A, which I

22    had filed with my motion, which when I filed it, at that

23    point, I was only including those of my clients whose

24    accounts dated back into the 1980s, because at that point, I

25    was only seeking discovery about the 1980s.
```

1          Once Mr. Madoff started to testify, it became

2    appallingly apparent that there had been tremendous

3    misrepresentations of the facts in this case, and

4    particularly that Mr. Dubinsky's report was completely

5    unfounded.

6          And at that point, everyone recognized that this

7    was something, which concerned everyone.  It wasn't simply

8    that it concerned the trading in the 1980s, because you

9    know, as Mr. Sheehan admitted when we were here last time,

10   that he said that Madoff purchased $16 billion of Treasury

11   bills with investment advisory customers' money.  And that

12   was something, of course, that had never been admitted to

13   the Second Circuit, to Judge Lifland, to Your Honor.

14         So the Trustee's position is simply because I

15   didn't check Exhibit A every time a revised order was

16   submitted, and it was simply limited to the people who have

17   accounts going back to the 1980s, that therefore, everyone

18   else should be barred from participating.

19         And this is -- it's a denial of due process.  It's

20   unfair, and frankly, it's embarrassing that the Trustee

21   would seek to take that kind of advantage.  It's one thing

22   if he can win on the merits, but to try to win by hook and

23   by crook just seems beyond credibility.

24         And the other thing that's really weird about it,

25   Judge, is one of the things that we had agreed on was that

Page 6

1    the time for service of expert reports in all of my cases

2    would be deferred.  Your Honor ruled that the dates would be

3    deferred, and because we were taking this discovery, so that

4    I could then submit one expert report on behalf of all of my

5    clients.

6              And as recently as August 10th, 2017, Baker asked

7    me to agree to the form of an order which was submitted to

8    Your Honor, and which you signed, which said, "With the

9    exception of," and then it named three adversary

10   proceedings, which are proceedings on which I've withdrawn

11   the reference, "the service deadlines for expert reports

12   served by any party in all adversary proceedings represented

13   by Chaitman will be determined and ordered by this Court

14   following the completion of the deposition of Bernard

15   Madoff."  So this is --

16             THE COURT:  So why don't we get back to the day

17   two topics?  That's what we're dealing with.

18             MS. CHAITMAN:  No, we're -- no, the only --

19             THE COURT:  I thought you were objecting to the --

20             MS. CHAITMAN:  My only objection -- my letter says

21   that my only objection is with respect to the Exhibit A.

22             THE COURT:  Okay. This is the -- well --

23             MS. CHAITMAN:  I wrote a letter on August 10th.

24             THE COURT:  Yeah, well, you started to read about

25   expert reports, though, is that in this order?

Page 7

1          MS. CHAITMAN:  No, what I'm trying to say, Judge,

2     maybe I'm not being clear.  My only objection is with

3     respect to Exhibit A, because what the Trustee is saying is,

4     it doesn't include all of my clients, whose discovery cutoff

5     had not occurred as of July 7th, 2016.

6          THE COURT:  But didn't the discovery cutoff

7     subsequent -- didn't the discovery deadline subsequently

8     cutoff?

9          MS. CHAITMAN:  No, because Your Honor held that

10     the discovery, with respect to Madoff's deposition would

11     apply to all defendants whose cases had not ended as of July

12     7th.

13          THE COURT:  Oh I thought it was only to the

14     participating customers in the order.  I'm going to just

15     check the September 29th order here.  But --

16          MS. CHAITMAN:  Your Honor, what happened --

17          THE COURT:  In other words, the universe, as I

18     recall, as I understand it, there's a universe of your

19     clients.  Let's just talk about your clients, since that's

20     what (indiscernible), who could participate in the Madoff

21     deposition day one, right?  And the initial cutoff was

22     everybody, every case in which discovery had run already,

23     right?

24          MS. CHAITMAN:  The initial cutoff was every case

25     in which discovery had gone.

Page 8

1           THE COURT:  Okay.  But then there was a secondary

2    cutoff, where you actually had an opt-in.

3           MS. CHAITMAN:  Right.

4           THE COURT:  Right?

5           MS. CHAITMAN:  And I understood Your Honor's

6    ruling to be, and Mr. Murphy's statement that the opt-in was

7    for all defendants whose cutoff had not occurred, and who

8    wanted to participate in Madoff's deposition.  I intended

9    that to reply to all of my clients.  And clearly, Baker did

10   because otherwise they never would have submitted this order

11   that they submitted to you last week.

12          THE COURT:  But I don't have the exhibit, but I'm

13   looking at the September 29th, '16 order, and there is an

14   Exhibit C, which identifies all of the participating

15   customers who are entitled to participate -- who are

16   permitted to participate in Madoff's deposition.

17          MS. CHAITMAN:  Right.

18          THE COURT:  And I thought now you wanted to add

19   additional names to that?

20          MS. CHAITMAN:  No, because what happened, Your

21   Honor, is when I filed the motion to depose Mr. Madoff, I

22   originally did it just on behalf of those clients, whose

23   accounts dated back to the 1980s because I thought that the

24   only relevant information Mr. Madoff had was with respect to

25   the 1980s.

Page 9

1              What has become apparent as a result of the first

2      day of his deposition is that he has testimony which

3      contradicts the position the Trustee has taken throughout

4      these cases, even up to 2008.  So that the deposition --

5              THE COURT:  What was that position?

6              MS. CHAITMAN:  He's testified, as Mr. Sheehan

7      admitted a few weeks ago, that Madoff purchased up to $16

8      billion at a time of Treasury bills, with investment

9      advisory customers' money.  And you can match up those

10     particular T-bills to the customer statements.

11             THE COURT:  Okay.  My recollection, and I've been

12     in the case since 2014, is that everybody knew that BLMIS,

13     or at least one part of BLMIS, was engaged in legitimate

14     trading or actual trading.

15             As a matter of fact, one of your theories about

16     why BLMIS wasn't a Ponzi scheme is because only 12 of 200

17     employees are involved in the IA business, and the rest of

18     the business was legitimate, all right?

19             MS. CHAITMAN:  Yes.

20             THE COURT:  So everybody always knew that Madoff

21     was out there buying and selling securities.  That's not new

22     information.

23             MS. CHAITMAN:  No, but what persuaded the Second

24     Circuit to repeal, in essence, the Securities Investor

25     Protection Act was the representation that Madoff had never

Page 10

1    purchased securities with the investment advisory customers'

2    money.

3            THE COURT:  I don't know about the Second Circuit.

4    If you think something occurred there, I guess you'll have

5    to go back there.  But all I'm saying or what I'm saying is

6    regardless of when the Ponzi scheme began, whether it began

7    in the 1970s, the 80s, the 90s or the 2000s, there was

8    always the fact in this case that Madoff was actually -- or

9    that BLMIS was actually buying and selling securities,

10   albeit, ostensibly for its own account rather than for other

11   customers, not IA customers.  So there was always a reason

12   to take Madoff's deposition about that.  And I don't see

13   what has changed.

14           MS. CHAITMAN:  It changed because what Madoff

15   testified was that the T-bills, which showed up on the

16   customer statements were purchased by the personnel on the

17   17th floor, which was where only the investment advisory

18   business was, and it was purchased with money from the 703

19   account.

20           THE COURT:  Well, the second statement -- okay.

21   But I don't recall, and I could be wrong that he testified

22   that the (indiscernible) business was purchasing the T-

23   bills.

24           MS. CHAITMAN:  That's -- of course, that's what he

25   testified.

Page 11

```
 1              THE COURT:  Did he purchase -- did he testify to

 2    that?

 3              MS. CHAITMAN:  Yes.

 4              MS. FEIN:  The testimony was about -- are you

 5    referring to the (indiscernible) account testimony with

 6    respect to the J.P. Morgan 703 Account?  But there were

 7    (indiscernible) -- there were (indiscernible) funds that

 8    were put into treasuries, like (indiscernible) and things

 9    like that.

10              THE COURT:  No, I know that the purposes were made

11    with the 703 account and cost of the money, but Ms. Chaitman

12    just said he testified that the IA business, the 17-floor

13    business, was the one that made those purchases.

14              MS. FEIN:  That's not consistent with my

15    recollection of the testimony.  For the most part, it was

16    re-involving third-party financial institutions that held

17    certain treasuries, and that those treasuries were purchased

18    by the legitimate side of the business.

19              THE COURT:  The non-17th floor side of the

20    business?

21              MS. FEIN:  That's right.

22              MS. CHAITMAN:  We can check the transcript.  I

23    didn't bring it with me, but my specific recollection is

24    that he said as to certain confirmations which had the names

25    of Frank (indiscernible), Robert (indiscernible), and Eric
```

Page 12

1   (indiscernible), all of whom worked on the 17 floor

2   exclusively, that they had access to Bloomberg terminals and

3   they purchased T-bills with 703 account money.  And this --

4   this totally changes what this case is about.

5              THE COURT:  You know, I don't have that testimony

6   in front of me.  But I know there were three different days

7   of depositions.

8              MS. CHAITMAN:  Judge, what is the -- you know, we

9   have a situation here where on May 17, 2016, you ordered the

10  Trustee to produce -- to put into the eData room any trading

11  records that have not already been produced.  The Trustee

12  completely ignored that order.  We're now trying to deal

13  with (indiscernible) with the fact that they have millions

14  of pages of documents, which constitute trading records,

15  which we now have to figure out a way --

16             THE COURT:  But I thought that the Trust -- I'm

17  confused.  I thought the Trustee had produced records that

18  were made available, records of actual trading.  Hasn't the

19  Trustee done that?

20             MS. CHAITMAN:  No.  No, we got these records --

21             THE COURT:  I'm getting different stories from

22  (indiscernible).

23             MS. CHAITMAN:  Well --

24             THE COURT:  There may be more records, but in

25  other words, the records of actual trades have been in this

Page 13

1     case and been disclosed.  There may be more.  All I'm saying

2     is whatever incentive you're now saying you have to ask

3     Madoff questions about this, that existed before the Madoff

4     deposition began.  In other words, he -- there was evidence

5     that there were actual trades and there was certainly an

6     incentive to ask him whether those trades were allocated,

7     for example, to IA customer accounts.

8             MS. CHAITMAN:  Judge, we're confusing --

9             THE COURT:  Isn't that what this is about?

10            MS. CHAITMAN:  No, we're confusing --

11            THE COURT:  Well, then I'm confused.

12            MS. CHAITMAN:  We're confusing two different

13    things.  You may recall that we had an argument one day

14    where you turned to -- I think it was Ted Jacobs, but it may

15    have been Mr. Murphy -- and said, do you concede that Madoff

16    in the market making business did any legitimate trading,

17    and he said, we're not prepared to concede that.  They now,

18    of course, concede that.

19            THE COURT:  I don't (indiscernible).

20            MS. CHAITMAN:  But -- okay.  But, the fact of the

21    matter is, Judge, I'm talking about trading with investment

22    advisory customers' money, and I'm talking about it

23    occurring even in 2007 and 2008, where T-bills were

24    purchased by Robert (indiscernible) Frank (indiscernible)

25    and Erik(indiscernible), who worked on the 17 floor, only in

Page 14

1    the investment advisory business, and they were using

2    investment advisory customers' money.

3            THE COURT:  And that information didn't come out

4    before --

5            MS. CHAITMAN:  It didn't come out --

6            THE COURT:  -- April of 2017, or whenever the last

7    day of the deposition was?

8            MS. CHAITMAN:  It didn't come out until we deposed

9    Madoff.  This -- to me, this was absolutely shocking

10   testimony.  And the documents we -- the documents we -- the

11   documents that we were -- that hadn't been produced when you

12   ordered in May of 2016, when you ordered the Trustee to put

13   any trading records in the eData room -- at that point, we

14   didn't have any of the 1980s trading records.  We're now

15   able to match up Mr. (indiscernible), my 107-year-old

16   client.  Mr. (indiscernible) had a transaction where he

17   looked like he bought convertible bonds of such-and-such

18   corporation.  We now have documents showing that Madoff

19   owned those bonds.

20           THE COURT:  Okay.

21           MS. CHAITMAN:  So --

22           THE COURT:  And you didn't know that -- when --

23           MS. CHAITMAN:  No.

24           THE COURT:  -- did you first learn that?

25           MS. CHAITMAN:  We didn't have any of those

Page 15

1    documents until this past April when they produced a whole

2    bunch of reels.

3              THE COURT:  So, you're saying that you didn't have

4    any records of purchases made with customer money until

5    when?

6              MS. CHAITMAN:  Until Madoff testified, and I'd

7    have to look up the transcript to --

8              THE COURT:  Well, he first testified, I think, in

9    April.  That was my recollection.

10             MS. CHAITMAN:  No, he testified once in December -

11   -

12             THE COURT:  Oh, December, right.  That's right.

13             MS. CHAITMAN:  And then in April.

14             THE COURT:  All right.  So, you're saying --

15   you're saying --

16             MS. CHAITMAN:  No, Judge --

17             THE COURT:  You're saying you never saw those

18   records, and hence, you had no reason to know --

19             MS. CHAITMAN:  We had no way --

20             THE COURT:  All right.  Let me hear from the

21   Trustee.

22             MS. CHAITMAN:  We've gone through this whole

23   profit withdrawal proceeding.

24             THE COURT:  Oh, this is the -- when the Ponzi

25   Scheme began proceeding.

Page 16

1              MS. CHAITMAN:  Right.  But in the profit

2     withdrawal litigation, the issue was whether Mr.

3     (indiscernible), as one example, received the profit

4     withdrawals, okay?  That would be (indiscernible).  It would

5     be a non-issue if, in fact, we can now prove, as we can,

6     that Madoff held the securities that he was selling to his

7     investment advisory customers.

8              THE COURT:  All right.  Let --

9              MS. CHAITMAN:  These were records form the -- but

10    --

11             THE COURT:  Let me hear what this information is

12    disclosed about the fact that Madoff was buying actual

13    securities with customer -- with money traceable to

14    customers (indiscernible) 703 account, I assume.

15             MS. FEIN:  Okay.  I'm going to talk about a couple

16    other things as well.

17             THE COURT:  Well, why don't you -- why don't you

18    deal with that one first?

19             MS. FEIN:  Sure.  So, in terms of when that

20    evidence was made available, there has been evidence that's

21    been available in the data room, including the

22    (indiscernible) reports that Ms. Chaitman's referring to for

23    years.

24             THE COURT:  Well, that's what --

25             MS. FEIN:  Yeah, so that information was -- much

Page 17

1    of that information was available prior to 2017.  And then

2    the remainder of that information that pertains to the pre

3    '92 period was produced in 2017, and is a topic for the

4    deposition.  So, that's something that we're not disputing.

5    That's something that will be raised at the deposition.

6    They have free rein to ask about those documents.  We

7    understand that those documents -- those that were made

8    available in 2017 are those -- it's the third topic of

9    discussion for the deposition.

10           So, the question about whether she has an

11   opportunity to ask about those is not for -- not a question

12   at all.  We've agreed to that and it's in the language of

13   the order that we post.

14           I think though we're getting a little confused

15   about the procedure that happened last year.  So, Ms.

16   Chaitman reference the July 7th filing, the July 7, 2016

17   filing, when she requested to depose Mr. Madoff.  We then

18   had a hearing before you July 20th that -- where we decided

19   we would have a uniform consolidated efficient way to do the

20   deposition and at that hearing you stated that all cases

21   would be able to participate, that any (indiscernible) and

22   good faith cases could participate.  Any topic that they

23   wanted to ask about they would put in their notice.  They

24   would put in --

25           THE COURT:  Where discovery had not brought it.

Page 18

1    The deadline had not run.

2            MS. FEIN:  Where discovery had not run, yeah, and

3    that was decided at a later hearing in terms of making sure

4    that the cases for discovery had run as of July 7th couldn't

5    come in because in those cases discovery had closed.  And

6    indeed, of the 36 adversary proceedings that are seeking to

7    join here, 28 of them discovery has closed as of when the

8    date that she requested those cases be added, which was

9    August 10.

10           But for that procedure we noticed every good faith

11   case, including all the cases, the 36 cases here and asked -

12   - they were all permitted to participate.  These cases did

13   not say they wanted to participate.  We had a deadline of

14   August 5th 2016 where if you did not say by August 5th 2016

15   you wanted to participate, you were not included in the

16   deposition.  And that's been the procedure and that's why I

17   know Ms. Chaitman referenced our Exhibit A.  That's what

18   Exhibit A is, that the participating customers, those

19   customers that came forward and said they wanted to

20   participate in the deposition, Exhibit A, the December 29th

21   order, and I have a copy of it too.

22           But something else that you said at the July 20th

23   hearing, I just wanted to reference really quick, and I have

24   a copy if you want to see it, but it goes to this issue of

25   when Mr. Madoff has said things since and whether that's the

1  cause for their discovery, because really for these cases

2  she's requesting additional discovery for these cases and --

3  so it's page 26, line 16 you said, "You waited...", this is

4  last year, so July 20th 2016.  "You waited until the end of

5  discovery to take Mr. Madoff's deposition, so even if he

6  wasn't in prison and you waited too long, then you said,

7  'Oh, now I need an extension of discovery because they took

8  his deposition August 30th and he told us all these things.

9  I wouldn't extend discovery for that.'"

10         And these are cases where discovery has closed in

11  the vast majority of them.  In the cases where it's been

12  left open, they chose not to participate in Mr. Madoff's

13  deposition.

14         THE COURT:  Under the September 2016 order, did

15  discovery continue to run in the cases that weren't part of

16  the participating customers?

17         MS. FEIN:  It only addresses the participating

18  customers, so it does not extend discovery for any other

19  case.

20         THE COURT:  So, discovery has run out.

21         MS. FEIN:  That's right.

22         THE COURT:  Okay.

23         MS. FEIN:  For 28 of the 36 cases it's already

24  run.  It's scheduled to run out by the end of the year for

25  all 36 cases -- of the cases that she seeks to add and Ms.

1    (indiscernible) seeks to add, it'll run out by the end of

2    the year, but --

3              THE COURT:  So there are some cases where

4    discovery hasn't run its course.

5              MS. FEIN:  There are some cases where discovery

6    hasn't run out and in those cases it's really an issue that

7    the September 29th order was very clear that if you did not

8    participate, you did not request to participate, you are not

9    participating in the Madoff deposition.

10             THE COURT:  That's day one and then there was a

11   subsequent cut if you wanted to participate in day 2.

12             MS. FEIN:  Yes, and day 2 was limited to just

13   those participants that participated in day 1.  So, the

14   universe of participants for day 2 was whoever participated

15   in day 1, because that was the list of parties who noticed

16   the deposition.

17             And in terms of topics, topics were open.  In

18   terms of, you know, was there an issue that there were

19   legitimate purchases after 1992, you raised that issue at

20   the August 24th hearing which preceded the order being

21   entered.  You said, "Yes, it's going to be an issue that I

22   can redo the language.  Yes, it's going to be an issue, the

23   strike date of the fraud.  It's also going to be an issue

24   were there legitimate trades after that start date and were

25   those trades allocated to customer accounts."

1          THE COURT:  I said that?

2          MS. FEIN:  Yeah.  It's -- I have the cite for you.

3     I can hand you the transcript too.  So, it's page --

4          THE COURT:  Okay, I understand.  Ms. Chaitman is

5     saying look, you know, basically I've been sandbagged.  You

6     took the position that securities were never used or

7     customer funds were never used to purchase securities,

8     forget about the allocation issue for a moment.  And now

9     Madoff testifies that that's precisely what was done.

10         MS. FEIN:  So, I think, and I wish we'd brought

11    the testimony with us, I don't think the testimony really --

12    if that's the argument, I don't think the testimony says

13    that.

14         THE COURT:  That's the problem I'm having with

15    this whole thing.  You're referring to testimony, Ms.

16    Chaitman and she's referring to testimony.

17         MS. CHAITMAN:  Let's adjourn this and let me

18    submit the testimony.

19         THE COURT:  Why don't we do this, if you want --

20    as far as I'm concerned under the existing orders, only the

21    original -- starting with the original participating

22    customers, that was the universe that could participate in

23    day 1.  Discovery continued to run as to everybody else and

24    then there was as further cut for day 2 when you had to opt

25    in.

Page 22

```
 1              If you think there is a basis to modify those

 2      orders so that more people or more cases should be entitled

 3      to this day 2 deposition, you're going to have to make a

 4      motion to either vacate or modify those orders and lay this

 5      before me because my hearing it from both sides, you know,

 6      everybody's quoting another transcript from a year ago --

 7              MS. CHAITMAN:  Let me make a motion.  I'd rather

 8      have it on the record anyway.

 9              THE COURT:  -- it just -- it, you know, it doesn't

10      help me.

11              MS. CHAITMAN:  Okay, that's fine.

12              MS. FEIN:  I just want to state for the record

13      that this is the fifth hearing we've had on the Madoff

14      deposition so far.  It's been going on for quite a while.

15      We have deposition dates scheduled, one for the end of

16      September, one for early November so I think those are not

17      going to happen.  And we were hoping that we could get

18      through this because we know there's a lot coming after the

19      deposition's over.

20              THE COURT:  Well, the easiest -- I mean, if you

21      really want to get through it, you can agree to let these

22      additional cases in I guess and they can ask Madoff -- I

23      mean, it doesn't matter whether one person or 36 people ask

24      Madoff did you use customer money, you know, to buy

25      securities.  That one's already answered.
```

Page 23

1          So, all these additional people can do is say

2   here's my account, did you actually buy these securities and

3   I would be shocked if he actually remembered that.

4          MS. FEIN:  Well, that's the issue.  It's a memory

5   test and I think he -- no one's claiming that he has a

6   photographic memory.  It's really an expert issue.  If

7   there's a matched transaction, he can't testify I recall

8   making that exact transaction.

9          THE COURT:  So, if you want to make those day --

10  look, I'm not saying you have to do it because I just don't

11  remember how this came up, but if you want to let them ask

12  those questions on day 2, that's one way to resolve it.

13         MS. FEIN:  So, like we said, the topics are on

14  deck for day 2 what wasn't already included in the day 1

15  testimony and she did ask about that already as part of the

16  day 1 testimony.  But all the new topics are included as day

17  2.

18         I think the issue is these parties never wanted to

19  participate in Madoff's deposition, waited a full year --

20         THE COURT:  Okay, but you're telling me that you

21  want to complete this.  I'm just offering a practical

22  solution.  You don't have to accept it.

23         You're telling me you want to complete this.  You

24  have the deposition dates.  You know, frankly, I think this

25  is a big deal about nothing as you do have people who are

Page 24

1   going to participate in this deposition and, if I accept Ms.

2   Chaitman's position, they're going to -- at least these

3   people or some of them are going to establish that BLIMS

4   used customer money to buy securities.

5            There's an allocation issue.  I'd be shocked if

6   Madoff recalls that.  You know, from reading the deposition

7   I don't think he was the bookkeeping guy.

8            MS. FEIN:  Right.

9            THE COURT:  He had the overview of this and all

10  I'm saying is if you want to avoid all this and let these

11  additional people come in and ask the question without

12  objection, you can do that or, you know, Ms. Chaitman can

13  make a motion, but I'll give you a deadline to do it, so

14  this thing doesn't linger.

15           MS. FEIN:  And there is one further issue.  Just

16  because other parties whose discovery was open and they did

17  not act or participate in day 1 had already noticed day 2.

18  They're represented by Loeb & Loeb.  Certain parties noticed

19  day 2.  We rightfully pointed out that if you didn't

20  participate in day 1, based on the order you can't

21  participate in day 2.

22           THE COURT:  It's in essence the same issue.

23           MS. FEIN:  It is, but I'm saying they're not -- we

24  can't just agree to let in Ms. Chaitman's clients because

25  those parties would also want to participate and really any

Page 25

1    party that was open as of a year ago would want to

2    participate.  So it's not -- I don't think we're in a

3    position to say that we could agree to that.

4            THE COURT:  When do you make the motion?

5            MS. CHAITMAN:  What's today's date?

6            THE COURT:  Today is August 22nd.

7            MS. CHAITMAN:  Can I have two weeks?

8            THE COURT:  Fine.

9            MS. CHAITMAN:  Okay.

10           THE COURT:  All right, just get a return date.

11   September is a tough month for me, but get a return date.

12   All right?

13           MS. CHAITMAN:  Thank you, judge.

14           MS. FEIN:  Thank you.

15           THE COURT:  Okay.  And just, you know what, submit

16   an order so we don't have other people coming in in October,

17   that anybody who wants to make a motion to modify the

18   earlier orders to participate in day 2 must make it, let's

19   say two weeks from tomorrow, get me the order.  Otherwise,

20   their challenge or their objections to the order or their

21   attempts to modify the order will be rejected or awarded.

22   That's essentially what we're doing here because the orders

23   themselves say what they say and what you're really arguing

24   is they shouldn't be enforced or they should be vacated or

25   modified.  We'll set this.

Page 26

1              MS. CHAITMAN:  Okay.

2              THE COURT:  Issuing subsequent disclosure, then

3    you can explain to me and show me how this information was

4    provided or at least available beforehand so anybody could

5    have gone and looked at the data because I'm still not sure

6    I understand how the data works or how it's populated.

7              MS. CHAITMAN:  So, we're talking about September

8    5th.

9              THE COURT:  That's fine.  You can have two weeks

10   to respond and I'll give you seven days to reply, so just

11   pick a return date.  It's going to be the latter part of

12   September anyway and there are the holidays then it's a

13   tough end of the month.

14             MS. CHAITMAN:  Thank you, judge.

15             THE COURT:  Okay.

16

17             (Whereupon these proceedings were concluded at

18   2:28 PM)

19

20

21

22

23

24

25

Page 27

C E R T I F I C A T I O N

1

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya
     Ledanski Hyde

        Digitally signed by Sonya Ledanski
        Hyde
        DN: cn=Sonya Ledanski Hyde, o, ou,
        email=digital1@veritext.com, c=US
        Date: 2017.08.24 16:44:32 -04'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 24, 2017