UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――― X
                                          :
In re:                                    :
                                          :   SIPA LIQUIDATION
                                          :
BERNARD L. MADOFF INVESTMENT              :
SECURITIES LLC,                           :   No. 08-01789 (SMB)
                                          :
                                          :
         Debtor.                          :
                                          :
――――――――――――――――――――――――― X
                                          :
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :
                                          :
                                          :
         Plaintiff,                       :
                                          :   Adv. Proc. No. 09-01182 (SMB)
             v.                           :
                                          :
J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,    :
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,    :
ASCOT FUND LTD., GABRIEL CAPITAL          :
CORPORATION,                              :
                                          :
                                          :
         Defendants.                      :
                                          :
――――――――――――――――――――――――― X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO REARGUE THE COURT'S JANUARY 22, 2018 ORDER EXCLUDING
THE OPINIONS AND TESTIMONY OF JEFFREY M. WEINGARTEN**


| | |
|---|---|
| DECHERT LLP | NORTON ROSE FULBRIGHT US LLP |
| 1095 Avenue of the Americas | 1301 Avenue of the Americas |
| New York, New York 10036 | New York, NY 10019-6022 |
| (212) 698-3500 | (212) 318-3000 |
| *Attorneys for Defendants J. Ezra Merkin* | *Attorneys for Ralph C. Dawson, as* |
| *and Gabriel Capital Corporation* | *Receiver for Defendant Ascot Partners,* |
| | *L.P., and Ascot Fund Ltd.* |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii
**BACKGROUND** ..................................................................................................................... 1
**LEGAL STANDARD** ............................................................................................................. 3
**ARGUMENT** .......................................................................................................................... 4
**CONCLUSION** ...................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Counts v. Portuondo*,
  No. 97 Civ. 3305 (LTS) (DFE), 2003 WL 139278 (S.D.N.Y. Jan. 17, 2003) ........................... 3

*Gucci Am., Inc. v. Guess?, Inc.*,
  No. 09 Civ. 4373 SAS, 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011) ................................. 4, 8

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  526 B.R. 499 (Bankr. S.D.N.Y. 2015) ..................................................................................... 3

*Nisanov v. Black & Decker (U.S.) Inc.*,
  No. 05 Civ. 5911(BMC) (SMG), 2008 WL 2185910 (E.D.N.Y. May 23, 2008) ................. 3, 8

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010) ...................................................................................... 6

*Washington v. Kellwood Co.*,
  105 F. Supp. 3d 293 (S.D.N.Y. 2015) ...................................................................................... 6

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................... 4, 5, 8

Pursuant to Local Bankruptcy Rule 9023-1 and Local Civil Rule 6.3, Defendants J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P. ("Ascot Partners"), and Ascot Fund Limited ("Ascot Fund" and, collectively with Merkin, GCC, and Ascot Partners, "Defendants") respectfully submit this memorandum of law in support of their motion to reargue the Court's January 22, 2018 Order, implementing its December 22, 2017 Memorandum Decision, granting the motion *in limine* of Plaintiff Irving H. Picard (the "Trustee"), as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), to exclude the opinions and testimony of Jeffrey M. Weingarten.  For the reasons demonstrated below, Defendants seek reconsideration to the limited extent of permitting Weingarten to offer his expert opinion testimony to rebut the limited testimony concerning "reactive due diligence" that the Court has permitted the Trustee's expert, Steve Pomerantz, to offer.

**Background**

On December 22, 2017, the Court entered its Memorandum Decision regarding the testimony and reports of three expert witnesses, including the Trustee's due diligence expert, Steve Pomerantz, and the Defendants' due diligence expert, Jeffrey M. Weingarten.  With respect to the Initial Expert Report of Dr. Steve Pomerantz, dated March 20, 2015 (the "Pomerantz Report"), the Court found that Pomerantz's "exhaustive discussion of what constitutes appropriate initial and proactive, ongoing due diligence and what red flags Merkin 'would have,' discovered" is irrelevant and, thus, inadmissible.  Memorandum Decision (Dkt. No. 425) at 14.  Similarly, the Court held that the Expert Report of Jeffery M. Weingarten, dated March 19, 2015 (the "Weingarten Report") should be excluded because it "dealt with the general subject of appropriate due diligence," "impermissibly attested to Merkin's state of mind" and

"failed to link [his] experience to the conclusions he reached." *Id*. at 18-20.  Accordingly, the Court excluded the Weingarten Report, Weingarten Rebuttal Report, Pomerantz Rebuttal Report and Pomerantz Declaration in their entirety, along with the exclusion of the vast majority of the Pomerantz Report.  *Id*. at 17, 21.

Nevertheless, the Court held that Pomerantz could offer expert opinion testimony on a very limited basis.  Specifically, the Court found that "the portion of the Pomerantz Report discussing due diligence triggers and reactive due diligence is germane to the second prong of the willful blindness inquiry" and held that "it is important to know what someone like Merkin should have done."  *Id*. at 15.  The Court identified the purported "due diligence triggers" discussed in the Pomerantz Report as to which Pomerantz may testify as: "when colleagues or investors warn the fund manager about a particular investment, (id. at ¶¶ 356-62), when articles are published that raise questions about an investment, (id. at ¶¶ 363-66), or when another fund, exhibiting similar characteristics to an invested fund, is exposed as a fraud. (id. at ¶¶ 367-72.)"  *Id*.

On January 22, 2018 the Court entered an order excluding Weingarten's "opinions and testimony" from trial.  Dkt. No. 427 (the "Weingarten Order"), at 1.  On the same day, the Court entered an order permitting Pomerantz to "provide expert testimony relating to reactive due diligence and due diligence triggers in accordance with the Court's opinion issued on December 22, 2012." Dkt. No. 429 (the "Pomerantz Order"), at 2.  In excluding Weingarten's opinions and testimony, however, the Court did not expressly consider whether Weingarten should be permitted to respond to Pomerantz's testimony regarding due diligence triggers and reactive due diligence.  Because Weingarten's forty years in the investment industry, including two decades as a hedge fund manager, provide ample specialized knowledge and expertise to enable him to

2

offer testimony that would assist the Court on the question of "what someone like Merkin should have done" in response to supposed due diligence triggers – the only due diligence issue as to which the Court found expert testimony would be relevant – his testimony on that subject should be permitted to the same limited extent as the Court has permitted Pomerantz to testify.

### Legal Standard

The Court has broad discretion to reconsider a ruling on a motion *in limine* and find expert testimony admissible. *See Nisanov v. Black & Decker (U.S.) Inc.,* No. 05 Civ. 5911(BMC)(SMG), 2008 WL 2185910, at *1 (E.D.N.Y. May 23, 2008) (granting motion to reconsider motion *in limine* and finding previously excluded expert testimony admissible; "the decision to grant or deny a motion for reconsideration is a matter of discretion. . . and the Court's objective is the administration of justice") (internal citation omitted). The December 22 Memorandum Decision, on which the Order excluding Weingarten's testimony is based, expressly recognized that the Court may reconsider its decision at a later stage of these proceedings, including during trial. Memorandum Decision at 11 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.") (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

Moreover, even under the higher standard for reargument outside the *in limine* context, which "is identical to that applicable to a motion to alter or amend a judgment under Federal Rule of Civil Procedure ('FRCP') 59(e)," *In re Hellas Telecommunications (Luxembourg) II SCA*, 526 B.R. 499, 506 (Bankr. S.D.N.Y. 2015), reconsideration of the exclusion of the entirety of Weingarten's testimony is well-warranted. A motion for reconsideration or reargument should be granted where, as here, "there is a need to . . . prevent manifest injustice," *Counts v. Portuondo*, No. 97 Civ. 3305 (LTS) (DFE), 2003 WL 139278, at *1 (S.D.N.Y. Jan. 17, 2003),

3

because the Court excluded evidence as irrelevant and inadmissible as to one issue, but overlooked its relevance and admissibility with respect to another issue. *See Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373 SAS, 2011 WL 6326032, at *3 (S.D.N.Y. Dec. 16, 2011) (granting motion to reconsider and finding a survey originally excluded in its entirety to be admissible with respect to two narrower issues which it had previously overlooked).

## Argument

Expert testimony is admissible under Federal Rule of Evidence 702 where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Federal Rule of Evidence 702. In excluding Weingarten's testimony in its entirety, the Court overlooked the relevance and admissibility of Weingarten's opinions and testimony to rebut the limited testimony the Court is allowing from the Trustee's purported expert on the issues of due diligence triggers and reactive due diligence. In these circumstances, it would be manifestly unjust to permit Pomerantz to testify on these matters without allowing a response from Weingarten based on his forty years of industry experience as to how hedge fund managers would actually respond to the supposed due diligence triggers identified by Pomerantz. That is particularly the case here, where Pomerantz's testimony as a well-paid expert for the Trustee is contrary to his own conduct when he was paid to conduct due diligence and meet with investors for a fund-of-funds that maintained a significant investment in a Madoff feeder fund.

There can be no doubt that, having concluded that expert testimony on the issue of what a fund manager like Merkin "should have done" in response to questions about a particular

4

investment is relevant, *see* Memorandum Decision at 15, the Court would benefit from hearing both Weingarten's opinion, which is based on his more than forty years of experience in investment research and fund management, as well as Pomerantz's opinion. Having been a successful fund manager for twenty years, Weingarten has "specialized knowledge" and will be able to testify with authority as to what due diligence would be expected "when colleagues or investors warn the fund manager about a particular investment, when articles are published that raise questions about an investment, or when another fund, exhibiting similar characteristics to an invested fund, is exposed as a fraud," because he has extensive personal experience with these circumstances. *Id*. at 15 (internal citations omitted). This testimony will assist the Court in evaluating the second prong of the willful blindness inquiry. *See* Federal Rule of Evidence 702(a).

Indeed, it is clear from the Weingarten Report, and embraced by Pomerantz, that both Weingarten and Pomerantz used the same principles and methods in evaluating what due diligence was required of a fund manager. Weingarten Report at 3, attached as Exhibit A to the Declaration of Mariel R. Bronen, dated February 5, 2018 ("Decl."); Excerpt from Testimony of Steve Pomerantz, Decl. Ex. B at 37:9-12; 39:17-23; 88:4-11. And it is also clear that on the limited remaining issue, both Weingarten and Pomerantz considered the same facts and circumstances. The materials Weingarten reviewed included the Third Amended Complaint in this action, Merkin's file on Madoff, emails produced by the Defendants, trade confirmations and monthly statements from Madoff. Decl. Ex. A at Exhibit B. For example, in reaching his conclusions, Weingarten considered Victor Teicher's alleged warnings and the allegations surrounding the failure of the Bayou fund, which were laid out in the Third Amended Complaint. TAC ¶¶ 93, 102-105, 222. Weingarten also considered the articles in Barron's and MAR/Hedge

regarding Madoff, and the comparison of Madoff feeder fund Primeo's returns to the S&P 500, which were all kept in Merkin's file on Madoff. Decl. Ex. A at Exhibit B; Excerpts from Merkin's Madoff File, Decl. Exs. C-E.

Weingarten concluded, based on his experience and the materials he considered, that the due diligence performed by J. Ezra Merkin and Gabriel Capital Corporation "met or exceeded industry standards." Decl. Ex. A at 2. Although Weingarten does not clearly distinguish the standard for initial and ongoing due diligence from "reactive" due diligence or what a reasonable fund manager in Merkin's position "should have done" from the reasonableness of what Merkin did, it is clear that his opinion encompasses the due diligence triggers and reactive due diligence on which Pomerantz will testify. Weingarten's testimony on these issues should not be excluded merely because these elements are not parsed out in his succinct Report as neatly as they are in Pomerantz's 167-page tome.

The court erroneously held that Weingarten "failed to link [his] experience to the conclusions he reached." Memorandum Decision at 20. Weingarten's four decades long career in investment research and fund management are a sufficient basis for him to testify about the customs and practices in that field. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464-65 (S.D.N.Y. 2010) (finding that plaintiff's due diligence expert's "description of his experience—which include[d] performing due diligence on a multitude of hedge funds and communicating with others in the industry—provide[d] a sufficient link between his experience and his opinions to satisfy the reliability requirement of Rule 702"); s*ee also Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (finding that "courts in the Second Circuit liberally construe expert-qualification requirements in consideration of the 'thrust' of the Federal Rules and their general relaxation of traditional

6

barriers to opinion testimony" and that "the place to 'quibble with [an expert's] academic training' is 'on cross-examination' and goes to his 'testimony's weight ... not its admissibility'") (internal citations omitted).  Moreover, the Weingarten Report expressly links Weingarten's conclusions to his "forty year experience analyzing investments and twenty-plus years as a hedge fund manager," including experience both performing due diligence on numerous companies and investment managers and having due diligence performed on him and the funds he managed by sophisticated investors.  Decl. Ex. A  at 2 ("In forming my opinions, I considered and relied on my forty year experience analyzing investments and twenty-plus years as a hedge fund manager.  In addition, I relied on knowledge of investment fund prospectuses and performance data accumulated over the course of my career."); *id.* at 3 ("Over the many years during which I have performed or been the subject of such reviews, it is clear that certain information about prospective investments need to be adequately obtained and verified."); *id.* ("Adequate due diligence of an investment manager, in my opinion, with many years of experience in this regard, involves the determination of the five following characteristics:  **Philosophy**. . .; **Process**. . .; **Procedures**. . .; **People**. . .; and finally **Performance**. . .").

      Aside from the fact that Pomerantz submitted a much longer report and attached a much longer list of materials supposedly considered,[1] both Weingarten and Pomerantz employed the same principles and methodology and considered the same materials.  The primary differences between Weingarten and Pomerantz (aside from how much each has been paid as an expert and how each primarily earns a living) is their relative experience and their opinions concerning reactive due diligence based on that experience.  Having concluded that the issue of reactive due

---

[1] We are confident that once Pomerantz complies with the Memorandum Decision and January 22 Order directing him to identify those materials that he personally considered with respect to the due diligence

7

diligence is relevant and would be assisted by expert testimony, the Court would undoubtedly benefit from hearing the contrasting opinions of Weingarten and Pomerantz. Because the Court did not address the admissibility of Weingarten's testimony to respond to Pomerantz's testimony regarding due diligence triggers and reactive due diligence, reconsideration is appropriate on this narrow issue. *See Gucci Am., Inc.*, 2011 WL 6326032, at *3. And, because Weingarten is uniquely qualified to opine on these subjects, his opinions are based on the same facts as those considered by Pomerantz as well as the same methods, and because his testimony is reliable and will assist the Court in evaluating Pomerantz's testimony and in understanding what a fund manager in Merkin's position should have done, the Court should exercise its discretion to allow Weingarten to respond to Pomerantz's testimony at trial. *See* Federal Rule of Evidence 702; *Nisanov*, 2008 WL 2185910, at *1.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this motion to reargue the Court's January 22, 2018 Order, implementing its December 22, 2017 Memorandum Decision, granting the Trustee's motion *in limine* to exclude the opinions and testimony of Jeffrey M. Weingarten, and allow Weingarten to respond the testimony of Steve Pomerantz.

---

triggers and reactive due diligence as to which he is permitted to testify, the materials he actually considered on this issue are substantially the same as those considered by Weingarten.

8

Dated: New York, New York
February 5, 2018

DECHERT LLP

By: _____/s/ Neil A. Steiner_____
    Andrew J. Levander
    Neil A. Steiner
    Mariel R. Bronen
    Daphne T. Ha
1095 Avenue of the Americas
New York, New York 10036
andrew.levander@dechert.com
neil.steiner@dechert.com
(212) 698-3500

*Attorneys for Defendants J. Ezra Merkin and Gabriel Capital Corporation*

NORTON ROSE FULBRIGHT US LLP

By: /s/ *Judith A. Archer*
    Judith A. Archer
    Sarah O'Connell
    David B. Schwartz
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: (212) 318-3000
Fax: (212) 318-3400
judith.archer@nortonrosefulbright.com
sarah.oconnell@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

*Attorneys for Ralph C. Dawson, as Receiver for Defendant Ascot Partners, L.P., and Ascot Fund Ltd.*