**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff, | Adv. Pro. No. 12-01576 (SMB) |
| v. | |
| BNP PARIBAS S.A., BNP PARIBAS ARBITRAGE SNC, BNP PARIBAS BANK & TRUST (CAYMAN) LIMITED, and BNP PARIBAS SECURITIES SERVICES S.A., | |
| Defendants. | |

### TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT BNP PARIBAS ARBITRAGE SNC

**PLEASE TAKE NOTICE** that in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the applicable local rules of the United States District Court and the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), Irving H. Picard, (the "Trustee"), as trustee for the

12-01576-smb    Doc 17225-3    Filed 12/21/17    Entered 12/21/17 17:49:52    Exhibit C
Pg 3 of 23

liquidation of Bernard L. Madoff Investment Securities LLC, under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, and the estate of Bernard L. Madoff, by and through

the Trustee's counsel, Baker & Hostetler LLP, hereby requests that defendant BNP Paribas

Arbitrage SNC produce Documents responsive to the requests set forth herein and deliver the

same to the offices of Baker & Hostetler LLP, c/o Jonathan A. Forman, 45 Rockefeller Plaza, New

York, New York 10111, within thirty days of service of these Requests.

## DEFINITIONS

1.     All definitions set forth in Local Rule 26.3, as adopted by Rule 7026-1 of the

Bankruptcy Rules, apply to these Requests.

2.     "Applicable Period" means the period between and including January 1, 1988

through December 2, 2010.

3.     "Asset Management Group" means the business group within BNP Paribas's

Investment Solutions Unit that oversees and facilitates investment strategies for BNP Paribas

customers.

4.     "BGL BNP Paribas" means BNP Paribas Luxembourg S.A., d/b/a BGL BNP

Paribas Luxembourg S.A.

5.     "BLMIS" means Bernard L. Madoff Investment Securities LLC, Madoff

Securities International Ltd., Madoff Securities International LLC, and Bernard L. Madoff.

6.     "BLMIS Feeder Fund(s)" means an investment fund that pooled assets to invest

with BLMIS's investment advisory business, and includes, but is not limited to, Ascot Partners,

L.P., Broad Market Fund, Equity Trading, Fairfield Sentry, Fairfield Sigma, Groupement

Financier Ltd., Harley, Insurance Portfolio Fund, Kingate Euro Fund Ltd., Kingate Global Fund

Ltd., Legacy Capital, Luxalpha SICAV, Oreades, Portfolio Limited Fund, and Rye Select Broad

Market Prime Fund L.P.

7.     "BLMIS Product" means (i) a credit facility or loan provided to BLMIS, any BLMIS Feeder Fund, or any investor in a BLMIS Feeder Fund, (ii) an option, swap, note, or other structured product using any BLMIS Feeder Fund as a reference asset, or (iii) a share of any BLMIS Feeder Fund.

8.     "BNP Paribas" means BNP Paribas S.A.

9.     "BNP Paribas Arbitrage" means BNP Paribas Arbitrage SNC.

10.     "BNP Paribas Cayman" means BNP Paribas Bank & Trust (Cayman) Limited.

11.     "BNP Paribas Entit(y/ies)" means BGL BNP Paribas, BNP Paribas, BNP Paribas Arbitrage, BNP Paribas Cayman, BNP Paribas Securities Corp., BNP Paribas Securities Services, and BNP Paribas (Suisse) (each defined herein).

12.     "BNP Paribas Securities Services" means BNP Paribas Securities Services S.A.

13.     "BNP Paribas (Suisse)" means BNP Paribas (Suisse) S.A.

14.     "Broad Market Fund" means Rye Select Broad Market Fund, L.P.

15.     "Credit Facility Committee" means the committee responsible for reviewing and approving transactions involving credit facilities proposed by the Fund Derivatives Group.

16.     "Defendant(s)" means BNP Paribas, BNP Paribas Arbitrage, BNP Paribas Cayman, and BNP Paribas Securities Services.

17.     "Equity Trading" means Equity Trading Portfolio Limited, as managed by Essex Asset Management.

18.     "Equity Trading Option" means the option, swap, note or other structured product that referenced investments in Equity Trading, including without limitation the transaction by which BNP Paribas sold Equity Trading Fund Ltd., a structured option to leverage Equity Trading's investments with BLMIS.

19.    "Executive Position Committee" means the committee responsible for reviewing and approving large and complex transactions, including ones arising from pre-existing business relationships with BNP Paribas.

20.    "Fairfield Sentry" means Fairfield Sentry Limited.

21.    "Fairfield Sigma" means Fairfield Sigma Limited.

22.    "FAM" means collectively Fix Asset Management Ltd. and its wholly owned subsidiaries, including Fix Asset Management Services Inc. (f/k/a Fix Asset Management, Inc. and Fix Capital Ltd.).

23.    "Fortis" means collectively Fortis Fund Services (Bahamas) Limited, Fortis Fund Services (Cayman) Limited, Fortis Prime Fund Solutions IOM, Fortis Financial Services, and Fortis Prime Funds Solutions USA.

24.    "Fund Derivatives Group" means the business group within BNP Paribas's Global Equity and Derivatives Division that, among other things, creates, markets, and services credit facilities and derivative financial instruments.

25.    "Group Risk Management Department" means the BNP Paribas group responsible for monitoring and managing risk for BNP Paribas.

26.    "Harley" means Harley International (Cayman) Limited.

27.    "Harley Option" means the option, swap, note or other structured product that referenced investments in Harley, including without limitation the option entered into by BNP Paribas and HSBC Bank USA, N.A.

28.    "Hedge Fund Research Group" means the group responsible for conducting research on hedge funds for the Fund Derivatives Group.

4

12-01576-smb    Doc 112-5    Filed 02/09/18    Entered 02/09/18 12:39:34    Exhibit A
Pg 36 of 102

29.    "Initial Transfer" means any Transfer made by BLMIS or any Person acting on behalf of BLMIS to a BLMIS Feeder Fund or to any Person acting on behalf of a BLMIS Feeder Fund.

30.    "Insurance Portfolio Fund" means Rye Select Broad Market Insurance Portfolio LDC.

31.    "Legacy Capital" means Legacy Capital Ltd.

32.    "Madoff" means Bernard L. Madoff.

33.    "Oreades" means Oreades SICAV.

34.    "Portfolio Limited Fund" means Rye Select Broad Market Portfolio Limited.

35.    "Private Banking Group" means the business group within BNP Paribas that provides wealth engineering, financial, and specialized advisory services to clients.

36.    "Securities Services Group" means the business group within BNP Paribas's Investment Solutions Unit that provides administrative banking services to clients of the Fund Derivatives Group who invested with the BLMIS Feeder Funds.

37.    "SocGen" means Société Générale, S.A.

38.    "Subsequent Transfer(s)" means any Initial Transfer conveyed to any BNP Paribas Entity or to any Person acting on behalf of any BNP Paribas Entity.

39.    "Transaction Approval Committee" means the committee responsible for reviewing and approving transactions involving structured products proposed by the Fund Derivatives Group.

40.    "Transfer(s)" conforms to the meaning set forth under the Bankruptcy Code, 11 U.S.C. § 101(54):  (a) the creation of a lien; (b) the retention of title as a security interest; (c) the foreclosure of a debtor's equity redemption; or (d) each mode, direct and indirect, absolute or

conditional, voluntary or involuntary, of disposing of or departing with—(i) property; or (ii) an interest in property.

41.     "Tremont" means Tremont Groups Holdings, Inc. and Tremont Partners, Inc.

42.     "Tremont Option" means the option, swap, note or other structured product that referenced investments in Portfolio Limited Fund or other Tremont fund invested with BLMIS, including without limitation the option transaction entered into by BNP Paribas and Tremont (Bermuda) Ltd. to leverage certain reference investment funds, including the Portfolio Limited Fund, which maintained investment account No. 1FR080 at BLMIS.

43.     "Tremont Swap" means the option, swap, note or other structured product that referenced investments in Prime Fund, Broad Market Fund, or other Tremont fund invested with BLMIS, including without limitation the swap transaction entered into by BNP Paribas to provide leverage to Tremont Enhanced Market Fund, a fund of funds controlled by Tremont which invested in BLMIS.

44.     "You" or "Your" means BNP Paribas Arbitrage or any Person acting on behalf of BNP Paribas Arbitrage.

45.     "ZCM" means Zurich Capital Markets, Inc.

46.     For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper nouns shall be construed and interpreted according to their context to give proper meaning and consistency to the Requests for Production of Documents set forth herein (the "Request" or "Requests").

47.     Reference to any Person that is not a natural Person, including any Person defined herein, refers to and includes any parent, subsidiary, affiliate, division, branch, agency,

representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact, attorney, nominee, agent, or representative of such Person.

## **INSTRUCTIONS**

1.      All provisions and rules of construction set forth in Federal Rules 26 and 34 and Local Rule 26.3, as adopted by Rule 7026-1 of the Bankruptcy Rules, apply to these Requests.

2.      In accordance with Federal Rule 34(b)(2)(B), object with specificity and state whether any responsive materials are being withheld on the basis of that objection.

3.      In accordance with Federal Rule 34(b)(2)(B), the production must be completed either within 30 days of the service of these requests or by another reasonable time specifically identified in the response.  When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

4.      If the Trustee is requesting communications concerning documents in a Request, the Trustee will so state.

5.      Unless otherwise specified, produce documents that were created, modified, or existing for the period up to and including December 2, 2010.

6.      If a request calls for documents concerning a Transfer, Initial Transfer, Subsequent Transfer, redemption, or withdrawal from an account, such request includes, but is not limited to, documents that reflect the account name and number for the account the funds were transferred from and to, method of transfer (*e.g.*, wire, check, etc.), date of, amount and the reason for the Transfer, Initial Transfer, redemption, or withdrawal.

7.      If any document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, subject to an agreement

otherwise, then in answer to such Request or part thereof, for each such document, You must
provide a log that:

      a.      Identifies the type, title and subject matter of the document;

      b.      Identifies all authors, addressees, and recipients of the document
(including CCs and BCCs, with descriptive information about such
Persons to assess the privilege asserted; and

      c.      Describes the legal privilege(s) and the factual basis for the claim.

For emails, the log should include the last-in-time (or top) email in the chain, as well as the
identities of any other authors, addressees, and recipients in the chain who are not in the top
email.

      8.      Do not redact documents for any reason other than privilege. If documents are
produced with redactions, a log setting forth the information requested in Instruction No. 7 above
must be provided.  The Trustee will accept documents designated <u>not confidential</u> under the June
6, 2011 Litigation Protective Order with redactions for personally identifiable information,
provided that you also produce an unredacted version of the document designated confidential.

      9.      Certain instructions for production of documents are contained in Orders entered
by the Bankruptcy Court on September 17, 2013:  (I) Establishing Procedures for Third-Party
Data Rooms; and (II) Modifying the June 6, 2011 Litigation Protective Order.  Pursuant to those
Orders, upon production, producing parties shall provide the following information in a
production cover letter, to the extent any of the following information is applicable:

      a.      the documents (listed in an Excel file document-by-document by
beginning Bates and ending Bates for each document) that are designated
as confidential pursuant to the Litigation Protective Order;

      b.      the documents (listed in an Excel file document-by-document by beginning Bates and ending Bates for each document) that are designated confidential pursuant to an Individual Confidentiality Standard, if applicable;

      c.      the documents (listed in an Excel file document-by-document by beginning Bates and ending Bates for each document) that should be excluded from the Third-Party Data Rooms; and

      d.      the designated representative authorized for that production to provide consent to the disclosure of confidential documents requested or to object to the disclosure of confidential Documents.

Failure to provide such information in a production cover letter shall result in a waiver by the Producing Parties of:

      i.      any confidential designations;

      ii.      any objections to inclusion of the documents in the Third-Party Data Rooms; and/or

      iii.      notification that documents have been requested for disclosure.  For the avoidance of doubt, notwithstanding Paragraph 13 of the Order Establishing Procedures for Third-Party Data Rooms and Paragraph L of the Order Modifying the June 6, 2011 Litigation Protective Order,

Paragraphs 7 and 14 of the Litigation Protective Order continue to govern with respect to:

      A.      inadvertent failure to designate confidential material as confidential or incorrect designations of confidential material (Paragraph 7 of the Litigation Protective Order); and

B.    inadvertent production or disclosure of any document or other material otherwise protected by the attorney-client privilege, work-product protection or a joint defense/common interest privilege (Paragraph 14 of the Litigation Protective Order).

## FORMAT OF PRODUCTION

1.    All documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where documents are produced in tiff format, each document shall be produced along with a multi-page, document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard optical character recognition ("OCR") program in the case of scanned paper documents. Searchable text of documents shall not be produced as fielded data within the ".dat file" as described below.

2.    <u>Database load files and production media structure</u>:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production document identifier information, data designed to preserve "parent and child" relationships within document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper documents), custodian or document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level

"Text" folder.  If any of the documents produced in response to these requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the document has been designated as confidential, as well as native file loading/linking information (where applicable).

3.      <u>Electronic Documents and data, generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the document's true and original content.

4.      <u>Emails and attachments, and other email account-related Documents</u>:  All documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including without limitation to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each document in such a manner as to make the document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.      <u>Documents and data created or stored in or by structured electronic databases</u>:  With the exclusion of email and email account-related documents and data, all documents and accompanying metadata created and/or stored in structured electronic databases or files shall be

12-01576-smb    Doc 11225-3    Filed 12/21/17    Entered 12/21/17 17:49:32    Exhibit A
Pg 40 of 202

produced in a format that enables the Trustee to reasonably manage and import those documents into a useable, coherent database. Documents must be accompanied with reasonably detailed documentation explaining each document's content and format, including without limitation to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

    a.    XML format file(s);

    b.    Microsoft SQL database(s);

    c.    Access database(s); and/or

    d.    fixed or variable length ASCII delimited files.

6.    <u>Spreadsheets, multimedia, and non-standard file types</u>: All documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.    <u>"Other" electronic Documents</u>: All other documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image

12-01576-smb    Doc 117-5  Filed 12/21/17  Entered 12/21/17 17:49:52  Exhibit A
Pg 41 of 202

files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    <u>Paper Documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between documents shall be identified within the .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each document shall be provided as a multi-page text file as provided for by these requests.

## **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

### **General Requests**

1.    All Documents Concerning BLMIS.

2.    All Documents Concerning any BLMIS Feeder Fund.

3.    All Communications between You and BLMIS.

4.    All Communications between You and any BLMIS Feeder Fund.

5.    All Documents Concerning any meeting attended by any BNP Paribas Entity during which BLMIS, any BLMIS Feeder Fund, and/or any BLMIS Product was discussed.

6.    All Documents Concerning any meeting between any BNP Paribas Entity and BLMIS.

7.    All Documents Concerning any meeting between any BNP Paribas Entity and any BLMIS Feeder Fund.

8.    All agreements between any BNP Paribas Entity and BLMIS, including without limitation any such agreement that included another Person as a party to that agreement.

9.      All agreements between any BNP Paribas Entity and any BLMIS Feeder Fund, including without limitation any such agreement that included another Person as a party to that agreement.

10.      All agreements between any BNP Paribas Entity and any client, including without limitation individual and institutional clients, Concerning the client's investment in any BLMIS Feeder Fund or any BLMIS Product.

11.      All Documents Concerning any BNP Paribas Entity's services to BLMIS and/or any BLMIS Feeder Fund.

12.      All Documents Concerning any BNP Paribas Entity's services to any client, including without limitation individual and institutional clients, Concerning the client's investment in any BLMIS Feeder Fund or any BLMIS Product.

13.      All Documents provided to any regulatory authority Concerning any BNP Paribas Entity's services to BLMIS, any BLMIS Feeder Fund, and any client Concerning their investments in any BLMIS Feeder Fund.

**Organizational Requests**

14.      Your organizational charts.

15.      Documents sufficient to identify the roles and relationships between the BNP Paribas Entities.

16.      Documents sufficient to identify the roles and relationships between the Asset Management Group, Credit Facility Committee, Executive Position Committee, Hedge Fund Research Group, Fund Derivatives Group, Group Risk Management Department, Securities Services Group, and Transaction Approval Committee.

17.    Documents sufficient to identify any committee and/or group, not already identified, within any BNP Paribas Entity that was involved with Madoff, BLMIS, any BLMIS Feeder Fund, and/or any BLMIS Product.

18.    Documents sufficient to identify all employees who served on the Transaction Approval Committee.

19.    Documents sufficient to identify all employees who served on the Credit Facility Committee.

20.    Documents sufficient to identify all employees who served on the Executive Position Committee.

21.    Documents sufficient to identify all employees who served on the Group Risk Management Department.

22.    Documents sufficient to identify all employees who served on the Hedge Fund Research Group.

23.    Documents sufficient to identify all employees who served on any committee or group identified by documents responsive to Request 17.

24.    All Documents provided to or prepared by the Hedge Fund Research Group, the Credit Facility Committee, the Executive Position Committee, the Transaction Approval Committee, and/or the Group Risk Management Department Concerning Madoff, BLMIS, any BLMIS Feeder Fund, and/or any BLMIS Product.

### ZCM Acquisition Requests

25.    All Documents Concerning Your due diligence of Harley or BLMIS in connection with Your acquisition of ZCM.

26.    All Documents Concerning Your or any BNP Paribas Entity's knowledge of SocGen's due diligence of ZCM.

27.    All Documents Concerning Your or any BNP Paribas Entity's knowledge of SocGen's decision not to acquire ZCM.

28.    All Documents exchanged between You and SocGen Concerning SocGen's due diligence of ZCM or SocGen's subsequent decision not to acquire ZCM.

**Credit Facility Requests**

29.    Documents sufficient to show Your due diligence process, standards, and policies for providing credit facilities.

30.    All Documents Concerning any credit facility provided by any BNP Paribas Entity to any BLMIS Feeder Fund, including without limitation any credit facility agreement with Santa Barbara Holdings Ltd., Legacy Capital, Tremont, or the Insurance Portfolio Fund.

31.    All Documents Concerning any due diligence conducted by or on behalf of BNP Paribas relating to any credit facility provided by any BNP Paribas Entity to any BLMIS Feeder Fund, including without limitation credit risk approval memoranda.

32.    All Documents Concerning any review, approval, modification, or termination relating to any credit facility provided by any BNP Paribas Entity to any BLMIS Feeder Fund by the Group Risk Management Department, the Transaction Approval Committee, the Credit Facility Committee, and/or the Executive Position Committee.

33.    All Communications between You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning BLMIS and FAM, Charles Fix, Tatiana Fix Katsigera, Marianna Cambanis Fix, and/or any other employee of FAM involved with the management of the BLMIS account of Harley.

34.    All Communications between You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning BLMIS and Fortis, Rhonda Eldridge, and/or any other employee of Fortis involved with the management of the BLMIS account of Harley.

35.     All Documents Concerning any moneys received by, owed to, or paid to You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning Your credit facility with Santa Barbara Holdings Ltd.

36.     All Communications between You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning BLMIS and Khronos LLC, Rafael Mayer, David Mayer, and/or any other employee of Khronos LLC involved with the management of the BLMIS account of Legacy Capital.

37.     All Communications between You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning Renaissance Technologies Corp.'s due diligence of the BLMIS account of Legacy Capital.

38.     All Documents Concerning any moneys received by, owed to, or paid to You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning Your credit facility with Legacy Capital.

39.     All Communications between You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning Tremont and its management of the BLMIS account of Insurance Portfolio Fund.

40.     All Documents Concerning any moneys received by, owed to, or paid to You, BNP Paribas, and/or BNP Paribas Securities Corp. Concerning Your credit facility with Insurance Portfolio Fund.

**<u>Structured Products Requests</u>**

41.     Documents sufficient to show Your due diligence process, standards, and policies for entering into structured product agreements.

42.    All Documents and/or agreements Concerning structured products created, marketed or sold by any BNP Paribas Entity that referenced investments in any BLMIS Feeder Fund, including without limitation the Tremont Option, the Tremont Swap, the Equity Trading Option, or the Harley Option.

43.    All Documents Concerning any due diligence conducted by or on behalf of any BNP Paribas Entity relating to any BLMIS Product, which was created, marketed, or sold by any BNP Paribas Entity, including without limitation credit risk approval memoranda.

44.    All Documents Concerning any review and approval by the Group Risk Management Department, Transaction Approval Committee, Credit Facility Committee, and/or Executive Position Committee of any BLMIS Product, which was created, marketed, or sold by any BNP Paribas Entity.

45.    All agreements Concerning structured products created, marketed or sold by any BNP Paribas Entity that referenced investments in any BLMIS Feeder Fund, including without limitation the Tremont Option, the Tremont Swap, the Equity Trading Option, or the Harley Option.

46.    All Documents Concerning any moneys received by, owed to, or paid to any BNP Paribas Entity Concerning the Tremont Option, Tremont Swap, Equity Trading Option, Harley Option, or any other BLMIS Product.

**Due Diligence Requests**

47.    All Documents Concerning any due diligence or analysis conducted by or on behalf of any BNP Paribas Entity on BLMIS, any BLMIS Feeder Fund, and/or any BLMIS Product.

48.     All Documents Concerning the performance of BLMIS, any BLMIS Feeder Fund, and/or any BLMIS Product, including without limitation any attempt to research, analyze, verify, or replicate any of their performance.

49.     All Documents received from any BLMIS Feeder Fund, including without limitation any marketing material, due diligence questionnaire, private placement memorandum, and/or subscription agreement.

50.     All BLMIS account statements and trade confirmations.

51.     All Documents Concerning any article, opinion, research, advice, or warning Concerning investment with BLMIS or any BLMIS Feeder Fund.

52.     All Documents Concerning fraud or risk of fraud in connection with investment with BLMIS or any BLMIS Feeder Fund.

53.     All Documents Concerning any moneys received by, owed to, or paid to BLMIS including without limitation custodial fees, administration fees, distribution fees, retrocession fees, performance fees, and/or any other fees.

54.     All Documents Concerning BLMIS's accountants, auditors, accounting firms, or auditing firms, including without limitation David G. Friehling or Friehling & Horowitz, CPAs, P.C.

55.     All Documents Concerning the payment of dividends reflected in the BLMIS account statements of any BLMIS Feeder Fund.

56.     All Documents Concerning BLMIS's reliance on outmoded trade reporting technology.

57.     All Documents Concerning BLMIS's lack of transparency and efforts to shield BLMIS from any independent, regulatory, or other governmental scrutiny.

19

58.     All Documents Concerning the refusal to invest with BLMIS or any BLMIS
Feeder Fund by certain investment professionals, including without limitation Aksia LLC,
Albourne Partners Ltd., Cambridge Associates, LLC, Fauchier Partners Ltd., Fauchier Partners
LLP, BNP Paribas Fauchier Partners, and/or any BNP Paribas Entity.

**Transfer Requests**

59.     All Documents Concerning any Transfer or Subsequent Transfer identified in the
Complaint and the exhibits thereto.

60.     All Documents Concerning any Subsequent Transfer made to, or on behalf of, any
BNP Paribas Entity, including without limitation the date of the Subsequent Transfer, the amount
of the Subsequent Transfer, the account name and account number for the account the funds
were transferred from, the account name and account number for the account the funds were
transferred to, the method of transfer (*e.g.*, wire, check), and the reason for the Subsequent
Transfer.

**Other Requests**

61.     All Documents Concerning any litigation, arbitration, government investigation,
or regulatory inquiry involving You Concerning BLMIS and/or any investment with BLMIS
and/or any BLMIS Feeder Fund, including Documents obtained or produced in the course of
discovery.

62.     All Documents on which You relied in Your motion to dismiss, dated October 25,
2017.

63.     All Documents You intend to rely upon in connection with the defense of the
claims alleged in the Complaint.

Dated:  October 27, 2017
       New York, New York                    _____/s/ Jonathan A. Forman_____
                                         Jonathan A. Forman

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 27th day of

October, 2017 by electronic mail upon the following:

Breon S. Peace, Esq.
Ari MacKinnon, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006


_/s/_ Joanna F. Wasick
*An Attorney for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the estate of Bernard L.*
*Madoff*