**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

**Hearing Date: March 28, 2018 at 10 a.m.**
**Objection Deadline: March 14, 2018**

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-01364 (SMB) |
| v. | |
| HSBC BANK PLC, et al., | |
| Defendants. | |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**APPROVING A PARTIAL SETTLEMENT BY AND BETWEEN**
**THE TRUSTEE AND ALPHA PRIME FUND LTD.**

TO:   **THE HONORABLE STUART M. BERNSTEIN**
       **UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15

U.S.C. §§ 78aaa–*lll* ("SIPA"),[1] and the substantively consolidated estate of Bernard L.

Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his

undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the

"Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11

U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a partial settlement (the

"Partial Settlement"), the terms and conditions of which are set forth in a Partial Settlement

Agreement (the "Partial Settlement Agreement")[2] by and between the Trustee and Alpha

Prime Fund Ltd. ("Alpha Prime" and with the Trustee, the "Parties").  In support of the

Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Partial Settlement represents a good faith settlement of certain of the

disputes between the Parties, conferring a significant benefit upon the customer property

fund, and increasing the fund by 0.395%.  Through the Partial Settlement, the Trustee will

recover $76,450,000—a recovery of one hundred percent of the transfers Alpha Prime

received from BLMIS in the two years preceding the commencement of BLMIS's SIPA

proceeding.  The settlement also partially resolves Alpha Prime's customer claim, allowing

the claim in the amount of $238,137,450, which is equal to 95% of Alpha Prime's net

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.

[2] The form of Agreement is attached hereto as Exhibit "A."

equity.[3]  And while the Parties have agreed to continue to litigate the remaining issues—the

claims to avoid the transfers Alpha Prime received in the period between two years and six

years before the commencement of BLMIS's SIPA proceeding, Alpha Prime's entitlement

to a section 502(h) claim for its payment in consideration of the two-year transfers, and the

Trustee's ability to equitably subordinate or disallow some or all of the remainder of Alpha

Prime's customer claim and any section 502(h) claim resulting from a payment in respect of

the six-year transfers—the resolution of those issues may confer a further benefit upon the

estate.  The Trustee therefore respectfully requests that the Court approve the Partial

Settlement.

## **BACKGROUND**

### *The Commencement of the BLMIS Liquidation Proceeding*

2.      On December 11, 2008 (the "Filing Date"),[4] the Securities and Exchange

Commission (the "SEC") filed a complaint in the United States District Court for the

Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV

10791).  In the complaint, the SEC alleged that the Debtors engaged in fraud through the

investment advisor activities of BLMIS.

3.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC

consented to a combination of its own action with an application of the Securities Investor

Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC

filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to

---

[3] Net equity is calculated under the "net equity" ruling of the United States Court of Appeals for the Second Circuit.  *Sec. Inv'r Prot. Corp. v. BLMIS (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), cert. denied, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

[4]  In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* SIPA § 78*lll*(7)(B).

meet its obligations to securities customers as they came due and, accordingly, its customers

needed the protection afforded by SIPA.

    4.      On that date, the District Court entered the Protective Decree, to which

BLMIS consented, which, in pertinent part:

        (i)      appointed the Trustee for the liquidation of the business of BLMIS
                    pursuant to section 78eee(b)(3) of SIPA;

        (ii)     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant
                    to section 78eee(b)(3) of SIPA; and

        (iii)    removed the case to this Court pursuant to SIPA section 78eee(b)(4).

    5.      On April 13, 2009, an involuntary bankruptcy petition was filed against

Madoff.  On June 9, 2009, this Court entered an order substantively consolidating Madoff's

Chapter 7 estate with the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST ALPHA PRIME AND ALPHA PRIME'S CUSTOMER CLAIM

    6.      Beginning in 2003 Alpha Prime, a BLMIS feeder fund incorporated under

Bermuda law, maintained BLMIS Account No. 1FR097 in the name HSBC Securities

Services (Luxembourg) SA, Special Custody Acct for Alpha Prime Fund Limited" (the

"Account").

    7.      Over the life of the Account, Alpha Prime withdrew approximately

$83,170,000.  It made approximately $76,450,000 of those withdrawals in the two years

prior to the Filing Date (the "Two-Year Transfers") and $6,720,000 in the period between

two years and six years before the Filing Date (the "Six-Year Transfers").

    8.      On or about February 2, 2009, after the BLMIS SIPA proceeding had been

commenced, Alpha Prime filed a customer claim with the Trustee, which the Trustee has

designated as Claim No. 001503 (the "Customer Claim").  The Customer Claim asserts that

Alpha Prime is entitled to the allowance of a customer claim in the amount reflected on its

BLMIS Account statement for the period ending November 30, 2008.

9.      On July 15, 2009, the Trustee commenced an action in the Bankruptcy Court against Alpha Prime and others under Adversary Proceeding Number 09-01364 (the "Adversary Proceeding").  On December 5, 2010, the Trustee filed an amended complaint (the "Amended Complaint") in this adversary proceeding asserting claims against Alpha Prime for:

(a)     the avoidance of the Two Year Transfers under 11 U.S.C. §§ 548, 550, and 551 and SIPA § 78fff-2(c)(3), which are set forth in Counts Three and Four of the Amended Complaint;

(b)     the avoidance of the Six Year Transfer under 11 U.S.C. §§ 544 and 550 and the New York Debtor and Creditor Law §§ 270–281, which are set forth in Counts Five, Six, Seven, and Eight of the Amended Complaint;

(c)     the recovery of the Two Year Transfers and Six Year Transfers under 11 U.S.C. §§ 544, 550, and 551, New York Debtor and Creditor Law §§ 270–281, and New York Civil Practice Law and Rules 203(g) and 213(8), which are set forth in Counts Nine and Ten of the Amended Complaint;

(d)     the disallowance of the Customer Claim pursuant to 11 U.S.C. § 502(d), which is set forth in Count Eleven of the Amended Complaint; and

(e)     the equitable subordination of the Customer Claim pursuant to 11 U.S.C. §§ 510(c) and 105(a), which is set forth in Count Twelve of the Amended Complaint.

## SETTLEMENT DISCUSSIONS AND MEDIATION

10.     In the past several years, the Parties have, on multiple occasions, engaged in good faith discussions aimed at resolving the Trustee's avoidance claims and the amount and treatment of the Customer Claim.  These discussions proved unsuccessful, in part, because the Trustee's investigation of Alpha Prime's principals and shareholders was ongoing, and because the District Court issued opinions that affected the pleading standards for the Trustee's Avoidance Claims.

11.     After this Court entered an order April 14, 2014 directing Alpha Prime and

the Trustee to submit to mediation consistent with the Court's General Order M-390, the

Parties engaged in mediation, exchanging written statements and supplemental materials,

and participating in several formal in-person and telephonic sessions with the mediator, and

extensive discussions with the mediator.  Through the mediation process, the Parties reached

an accord on various issues, which are defined in the Partial Settlement Agreement as the

"Resolved Issues."

## OVERVIEW OF THE AGREEMENT

12.    The principal terms and conditions of the Partial Settlement Agreement are

generally as follows (as stated above, the Partial Settlement Agreement is attached as

Exhibit "A" and should be reviewed for a complete account of its terms):[5]

- Alpha Prime shall pay the Trustee $76,450,000, in full and final settlement of the Resolved Issues.

- Alpha Prime's Customer Claim (the "Allowed Claim") shall be allowed in the amount of $238,137,450, which is equal to 95% of Alpha Prime's net equity, calculated on the basis of the "net equity" ruling of the United States Court of Appeals for the Second Circuit, *Sec. Inv'r Prot. Corp. v. BLMIS (In re Bernard L. Madoff Inv. Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), cert. denied, 133 S. Ct. 24, 133 S. Ct. 25 (2012).

- At Closing, Alpha Prime shall pay or cause to be paid to the Trustee, for the benefit of the customer property fund, $76,450,000 by: (i) conveying, assigning, endorsing, and transferring to the Trustee the $500,000 advance to which it is entitled under section 78fff-3(a) of SIPA; and (ii) conveying, assigning, endorsing, and transferring to the Trustee $75,950,000 from the catch-up distribution owed to Alpha Prime based on its Allowed Claim;[6] at Closing the Trustee shall pay

---

[5] Terms not otherwise defined shall have the meaning ascribed in the Partial Settlement Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Partial Settlement Agreement, the Partial Settlement Agreement shall prevail.

[6] As of the date of the Partial Settlement Agreement, the Bankruptcy Court has approved nine *pro rata* interim distributions to BLMIS customers with allowed customer claims of 4.602%, 33.556%, 4.721%, 3.180%, 2.743%, 8.262%. 1.305%, 1.729%, and 3.806% respectively (63.904% in total). 63.904% of Alpha Prime's Allowed Claim is $152,179,356.04.

Alpha Prime $76,229,356.04, consisting of the balance of the Catch-Up Distribution owed to Alpha Prime under the Allowed Claim pursuant to payment instructions to be provided by Alpha Prime to the Trustee.

- The Trustee will release, acquit, and absolutely discharge Alpha Prime from the Resolved Issues. The Trustee will also provide a release, on the terms set forth in the Partial Settlement Agreement, of Alpha Prime's current and former directors, employees, agents, and interest holders, including defendant Ursula Radel-Leszczynski and a former service provider to Alpha Prime, Alpha Prime Asset Management Ltd., and its respective current and former directors, employees, agents, and interest holders.

- The Parties will continue to contest the Disputed Issues, as that term is defined in the Partial Settlement Agreement. The Disputed Issues include: (i) whether Alpha Prime is entitled to a claim under section 502(h) of the Bankruptcy Code in respect of its $76,450,000 payment to the Trustee and, the treatment such section 502(h) claim may receive; (ii) the Six Year Transfer Claims, and in the event of Alpha Prime's payment in respect of the avoidance of the Six Year Transfers, the treatment a resulting section 502(h) claim would receive; and (iii) the Trustee's claims concerning the treatment of the remaining 5% of Alpha Prime's net equity claim. The Parties reserve their rights, and the Partial Settlement Agreement is without prejudice to all of their claims, rights, remedies, and defenses relating in any way to the Disputed Issues.

- The Parties shall submit to the Bankruptcy Court a stipulation requesting the dismissal of the Two-Year Avoidance Claims, *i.e.*, Counts Three and Four of the Amended Complaint, with prejudice, as against Alpha Prime, with each Party bearing its own costs, attorneys' fees, and expenses.

## **RELIEF REQUESTED**

13.     By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit "B" approving the Partial Settlement Agreement.

## **LEGAL BASIS**

14.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

In order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

15.    The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21–22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. "[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

16.    In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i)    the probability of success in the litigation;

(ii)    the difficulties associated with collection;

(iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

17.      The bankruptcy court may credit and consider the opinions of the trustee or

debtor and their counsel in determining whether a settlement is fair and equitable.  *See In re*

*Purified Down Prods*., 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.*, 134 B.R. at

505.  Even though the Court has discretion to approve settlements and must independently

evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr.

E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered

in determining whether a settlement is fair and equitable.  *In re Chemtura Corp.*, 439 B.R.

561, 594 (Bankr. S.D.N.Y. 2010).  The competency and experience of counsel supporting

the settlement may also be considered.  *Nellis*, 165 B.R. at 122.  Finally, the court should be

mindful of the principle that "the law favors compromise."  *In re Drexel Burnham Lambert*

*Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

18.      The Partial Settlement Agreement furthers the interest of BLMIS customers

by (a) adding $76,450,000 to the fund of customer property, thereby increasing it by 0.395

% and (b) recovering 100% of the transfers from BLMIS to Alpha Prime during the two

years prior to the collapse of BLMIS and 91.9% of the transfers from BLMIS to Alpha

Prime over the lifetime of the account.  *See* Declaration of the Trustee in Support of the

Motion, a true and accurate copy of which is attached as Exhibit "C".

## CONCLUSION

19.      In sum, the Trustee submits that the Partial Settlement Agreement should be

approved because it represents a fair and reasonable compromise of the Avoidance Claims

and the Customer Claim.  Because the Partial Settlement Agreement is well within the

"range of reasonableness" and confers a benefit on the estate, the Trustee respectfully

requests that the Court enter an Order approving the Partial Settlement Agreement.

## NOTICE

20.     In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion

has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United

States Attorney for the Southern District of New York; and (v) Todd E. Duffy,

DuffyAmedeo LLP, 275 Seventh Avenue, Seventh Floor, New York, New York 10001.

Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who

have filed notices of appearance in the BLMIS proceeding and to all defendants in this

adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting

Notice, ECF No. 4560.  The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in

the form of Exhibit "B" granting the relief requested in the Motion.

Dated:  New York, New York
        February 12, 2018

Respectfully submitted,

BAKER & HOSTETLER LLP

By: *s/ Oren J. Warshavsky*
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Oren J. Warshavsky
    Email: owarshavsky@bakerlaw.com
    Geoffrey A. North
    Email: gnorth@bakerlaw.com
    Tatiana Markel
    Email: tmarkel@bakerlaw.com

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*