**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br><br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |

**TRUSTEE'S RESPONSE**
**TO THE MOTION FILED BY DEAN LOREN**

Irving H. Picard, as trustee (the "Trustee"), for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by and through his undersigned counsel, respectfully submits this response to the motion filed on January 24, 2018, by Dean Loren, as executor of the Evelyn Goldberg Estate (the "Motion") (ECF No. 17160), and states as follows:

---

[1] The Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* For convenience, subsequent references to sections of the act shall be denoted simply as "SIPA, § __."

## PRELIMINARY STATEMENT

1.      The Motion is premised on unsupported, conspiratorial accusations against the Trustee, various public officials, and others that are difficult to understand. Although difficult to interpret, the Trustee denies the accusations directed at him. The Motion is also procedurally deficient and improper. Among other things, the Motion fails to request any relief that this Court is able to grant and does not comply with the Federal Rules or the Local Rules.[2] For the purposes of this response, the Trustee has nevertheless construed the Motion as one for allowance of a late-filed claim because Mr. Loren is proceeding *pro se*[3] and he has filled out a customer claim form (the "Late Claim"), which he attached to the Motion as an exhibit and submitted to the Securities Investor Protection Corporation ("SIPC").

2.      In preparing this response, the Trustee, with the assistance of his professionals thoroughly reviewed BLMIS's books and records. Based on that review, the Trustee is able to conclude with certainty that neither Mr. Loren, Evelyn Goldberg, her Estate, nor any of the other parties Mr. Loren refers to in the Motion (collectively, the "Claimants") ever invested with BLMIS.[4] Nothing in the Motion supports a different conclusion. In fact, the securities transactions the Claimants identified on the Late Claim are dated several years after these proceedings were

---

[2] Mr. Loren did not obtain a hearing date for the Motion pursuant to the Local Rules. *See* Local Rule 5070-1. As of the date of this response, the Court has not scheduled a hearing date for the Motion, or indicated whether it will make a determination on the papers without a hearing.

[3] Having frequently litigated as a *pro se* litigant, Mr. Loren is not a stranger to the U.S. Court system. *See, e.g., Blakely v. Wells,* 209 F. App'x. 18, 20 (2d Cir. 2006) (the Second Circuit acknowledged that the District Court acted properly in dismissing Mr. Loren's and others' *pro se* complaint as unintelligible, but vacated the dismissal on other grounds); *Loren v. City of New York*, 16 Civ. 3605 (PAE), 2017 U.S. Dist. LEXIS 195284, at *4 (S.D.N.Y. Nov. 28, 2017) (in denying Mr. Loren's *pro se* motion for reconsideration, the District Court noted that "as with his previous filings in this matter, the Court has found Loren's filings abstruse, conclusory, and often addressing impertinent matters that are plainly irrelevant to the claims actually alleged."); *Loren v. Levy*, 00 Civ. 7687 (DC), 2001 U.S. Dist. LEXIS, at *2-3 (S.D.N.Y. Aug. 14, 2001) (granting in part the defendants' motion to dismiss Mr. Loren's *pro se* complaint.).

[4] Specifically, the Trustee's professionals applied search terms across the Trustee's claims and document databases, as well as the docket of these proceedings, using the names Evelyn Goldberg, Dean Loren, and Simon Goldberg, but did not receive any positive matches. *See* Sehgal Decl., at ¶ 13.

commenced and BLMIS ceased whatever business it was allegedly performing. As the movants, the Claimants carry the burden of showing they are entitled to customer status under SIPA. They have failed to do so.

3. Even if the Claimants could show they were customers of BLMIS, it is too late to file a claim. SIPA mandates that all claims must be filed within six months of publication of notice of the commencement of the proceeding. This bar date is absolute and cannot be extended. In this proceeding, that date was July 2, 2009 (the "Bar Date"). The Trustee mailed notice of the Bar Date to the former customers, broker-dealers, and other creditors of BLMIS, published notice of commencement of this proceeding in major newspapers and posted claim-filing information on his website consistent with SIPA's requirements. Because the Late Claim was received after the Bar Date, the Trustee cannot accept it.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this matter pursuant to SIPA §§ 78eee(b)(2) and 78eee(b)(4) and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case is proper in this district pursuant to Section 78eee(b)(4) of SIPA and 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

5. The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of SIPC.

Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, it needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

6.   Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA § 78*lll*(2), as they are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).

7.   On December 23, 2008, upon the Trustee's motion, this Court entered the Claims Procedures Order. (*See* ECF No. 12); Declaration of Vineet Sehgal executed on February 22, 2018 (the "Sehgal Decl.") at ¶ 6, annexed thereto as Exhibit A. The Claims Procedures Order approved (i) the form and manner of publication of the notice of the commencement of the liquidation proceeding and (ii) specified the procedures for filing, determining and adjudicating customer claims. The Claims Procedures Order established a bar date for all claims in the SIPA Proceeding of six (6) months from the date of publication of notice, which occurred on January 2, 2009. *See* Sehgal Decl., Ex. A at 7.

8.   The Claims Procedure Order directed customers to file their claims against the Debtor with the Trustee. It further provided that such claims would be deemed properly filed only when received by the Trustee at "Irving H. Picard, Esq., Trustee for Bernard L. Madoff Investment Securities LLC, Claims Processing Center, 2100 McKinney Ave., Suite 800, Dallas, TX 75201." *See id.* at 3.

- 4 -

### A.     Notice of the Claims Process and Bar Date

9.     The Trustee retained a claims agent, AlixPartners, LLP ("AlixPartners"), to manage the claims intake and the sending of notice for these proceedings. *See* Sehgal Decl., at ¶¶ 2, 5; Trustee's First Interim Report for the Period December 11, 2008 through June 30, 2009, at ¶¶ 23, 65-66, ECF No. 314 ("First Interim Report"). As the Trustee's claims agent, AlixPartners would review each claim form as it was received by the Trustee and would stamp each claim form with the date of receipt. *See* Sehgal Decl., at ¶ 9.

10.    On January 2, 2009, at the Trustee's direction, AlixPartners mailed notice of the Bar Date to former customers, broker-dealers, and other creditors of BLMIS. The notice was mailed in accordance with the Claims Procedures Order and SIPA § 78fff-2(a)(1), which requires such notice to be mailed to the last known address of each of BLMIS's former customers as it appeared on BLMIS's books and records. *See* Affidavit of Service of John Franks executed on February 3, 2009, ECF No. 76; Sehgal Decl., at ¶ 7, annexed thereto as Exhibit B.

11.    Also on January 2, 2009, at the Trustee's direction, AlixPartners published notice of the commencement of the claims process and the Bar Date in all editions of *The New York Times*, *The Wall Street Journal*, *The Financial Times*, *USA Today*, *Jerusalem Post*, and *Ye'diot Achronot* (the "Publication Notice").[5] *See* Affidavit of Service of John Franks executed on February 2, 2009, ECF No. 57; Sehgal Decl., at ¶ 8, annexed thereto as Exhibit C.

12.    The Trustee posted links on his website (www.madofftrustee.com) concerning the Bar Date and information about filing proofs of claim. *See* First Interim Report, at ¶¶ 60, 61. In addition, SIPC disseminated information concerning the BLMIS SIPA proceeding.

---

[5] Like the Claims Procedure Order, the Publication Notice provided instructions on filing claims and stated that all claims must be received by the Trustee by the Bar Date to be considered timely. *See* Sehgal Decl., Ex. C at 5.

13. On May 21, 2009, the Trustee mailed further notice to customers who had not yet filed a claim as a reminder that the Bar Date was July 2, 2009. *See id.*, at ¶ 62. On June 22, 2009, the Trustee mailed a final notice to 7,766 known past and present customers of BLMIS from whom a claim had not yet been received as a reminder of the Bar Date; the Trustee posted the final reminder notice on his website as well. *See id.*, at ¶ 63.

14. Since then, each of the customer claims has been determined by a Letter of Determination sent by the Trustee to the customer of record, except for certain customers who are in litigation with the Trustee. *See* Sehgal Decl., at ¶ 10; Trustee's Eighteenth Interim Report for the Period April 1, 2017 through September 30, 2017 ¶ 14, ECF No. 16862.

**B.    The Claimants' Late Claim**

15. The Late Claim was not received by the Trustee by the Bar Date. *See* Sehgal Decl., at ¶ 11. The Trustee did not receive the Late Claim until January 24, 2018, more than 8 ½ years after the Bar Date. *Id.*, at ¶ 12.

16. The Late Claim is written on a form for a different SIPA proceeding, Legend Securities, Inc., and provides that as of October 20, 2017, BLMIS owed the Claimants $1,546,395.44 of cash, and shares of various securities. According to the Late Claim, BLMIS purportedly traded those securities in 2011 and 2015, several years after this SIPA proceeding was commenced and BLMIS ceased whatever business it had allegedly been conducting.

17. Based on BLMIS's books and records and the Claimants own claim form, the Claimants neither invested nor had accounts with BLMIS.

## ARGUMENT

**A.    The Late Claim Cannot be Allowed Because the Claimants are not Customers of BLMIS**

18. The law governing these proceedings is SIPA. SIPA expressly contemplates the liquidation of a SIPC member that operated as a securities broker-dealer, such as BLMIS prior to its liquidation. *See* SIPA § 78fff-1(b); *see also* SIPA § 78fff(b) (SIPA proceeding conducted in accordance with chapters 1, 3, 5, and portion of chapter 7 of the Bankruptcy Code to the extent consistent with SIPA). In a SIPA liquidation, where SIPA contains an explicit provision, that provision will trump any conflicting provision of the Bankruptcy Code. *See Sec. Investor Prot. Corp. v. Charisma Sec. Corp.,* 506 F.2d 1191, 1195 (2d Cir. 1974) (a provision is not consistent with SIPA if it "conflicts with an explicit provision" of SIPA); *Miller v. Austin (In re John Muir & Co.),* 72 B.R. 893, 897 (S.D.N.Y. 1987) (stating that "even if the Bankruptcy Code presently provided for an express exception to the time limits for filing [of claims], the provision would not be applicable to SIPC liquidations since it would contradict the clear words of SIPA § 78fff-2(a)(3)").

19. SIPA section 78fff-2(b) requires that the obligations of the debtor be demonstrated by an examination of its books and records or be "otherwise established to the satisfaction of the trustee." SIPA customers have the burden of demonstrating their customer status. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")).

20. After a diligent review of BLMIS's books and records, the Trustee and his professionals have established with certainty that the Claimants never invested with BLMIS. The Claimants have not provided any evidence that they can meet their burden of proving customer status, nor have they provided any evidence that would otherwise satisfy the Trustee. *See Sec.*

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 496 B.R. 713, 721 (Bankr. S.D.N.Y. 2013) (finding that claimants had not carried their burden in showing that they were customers because the Trustee had not found any evidence in BLMIS's books and records that they had ever invested with Madoff and the claimants did not provide any contrary evidence to the Trustee's satisfaction); *In re MF Global Inc.,* No. 11-2790, 2013 WL 1683915, at *6–7 (Bankr. S.D.N.Y. Apr. 18, 2013) (holding that claimants were not entitled to SIPA customer status because the debtor's books and records did not reflect that they held securities accounts and they did not put forth evidence of valid securities accounts).

B. **Even if the Claimants Were Customers of BLMIS, the Late Claim Cannot be Allowed Because it was Received by the Trustee After the Statutory Bar Date**

21. Pursuant to SIPA section 78fff-2(a)(3), the statutory period for filing claims in a SIPA liquidation proceeding is limited to the six-month period beginning on the date of publication of notice of the commencement of the case. SIPA § 78fff-2(a)(3) ("No claim . . . which is received by the trustee after the expiration of the six month period beginning on the date of publication of notice under paragraph (1) shall be allowed . . . .").

22. Courts have uniformly determined that this limitation period is immutable and strictly enforced, and that late-filed claims are unequivocally barred. *See, e.g., Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.),* 124 F.3d 1238, 1243 (10th Cir. 1997) (the "six-month time-bar contained in § 78fff-2(a)(3) of SIPA is mandatory and absolute"); *In re Adler, Coleman Clearing Corp.,* 204 B.R. 99, 103 (Bankr. S.D.N.Y. 1997) *aff'd* No. 97-cv-2095 (HB) (S.D.N.Y. Dec. 15, 1997) (SIPA § 78fff-2(a)(3) "is an absolute bar to late filed claims"); *Redington v. Borghi (In re Weis Secs.),* 411 F. Supp. 194, 195 (S.D.N.Y. 1975) (denying late-filed claim despite lack of actual notice of the SIPA proceeding) *aff'd without opinion* 538 F.2d 317 (2d Cir. 1976)).

- 8 -

23. SIPA section 78fff-2(a)(3) "allows for an extension of a claims deadline only if a request is submitted to the court before the deadline passes, *and* the claimant is (i) governmental unit, (ii) an infant, or (iii) an incompetent person without a guardian." *In re MF Global Inc.,* 11-2790 (MG), 2014 WL 657321, at *3 (Bankr. S.D.N.Y. Feb. 20, 2014); *see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL), 2009 WL 458769, at *1 (Bankr. S.D.N.Y. Feb. 24, 2009) ("it is clear from the face of the statute that the six-month time limit for filing [claims] is subject to extension at the discretion of the court in only three specified instances"). In SIPA liquidations, therefore, a court's discretion to extend the claims deadline is "limited to requests made within that period by specified parties and for cause specified in the statute." *Adler, Coleman Clearing Corp.*, 204 B.R. at 103; *see also Blinder, Robinson & Co. Inc.,* 124 F.3d at 1243 (holding that claimant's "hardships caused by the automobile accident in which she was involved are unfortunate, but the fact remains that she was required to apply for an extension within the six-month time period to file her claim" and was therefore not entitled to an extension); *Camp v. Morey (In re Gov't Sec. Corp.),* 107 B.R. 1012, 1022 (S.D. Fla. 1989) (reversing Bankruptcy Court's allowance of late-filed claim "on the basis of fairness and equity," because "[SIPA] time limits for filing claims are mandatory and may not be extended by the exercise of some equity power").

24. Unlike chapter 11 proceedings, there is no exception for "excusable neglect" in a SIPA proceeding. *See In re Lehman Bros.,* 493 B.R. 437, 443 (Bankr. S.D.N.Y. 2013) ("[E]xtensions of the time period for filing claims in SIPA cases are permitted only when the express statutory requirements are satisfied. This differs from the familiar 'excusable neglect' standard that applies to late filed claims in chapter 11 cases.").[6] This conclusion is consistent with

---

[6] Even if this doctrine applied here, which it does not, Claimants have not shown cause for an extension. *Cf Pioneer*

the language of SIPA § 78fff-2(a)(3), its legislative history and SIPA's policy goals. *Id*. at 444. "The standards are designed to be tough, and they are." *Id.* at 440.

25. The Trustee gave notice of the Bar Date by causing claim packages to be mailed to former customers of BLMIS at their last known address on BLMIS's books and records, and by publication on his website and in the national editions of the *New York Times*, the *Chicago Tribune*, the *Financial Times*, and the *Wall Street Journal*. *See* Sehgal Decl., at ¶¶ 7, 8. Like the Claims Procedure Order, the Publication Notice directed where customer claims should be filed, that claims will be deemed filed only when received by the Trustee, and that claims received after the Bar Date would not be allowed. *See* Sehgal Decl., at ¶ 8, Ex. C at 5.

26. Despite these efforts on the part of the Trustee, the Late Claim was first received by the Trustee on January 24, 2018 – more than 8 years and 6 months after the Bar Date. SIPA absolutely bars the allowance of any claim, including the Late Claim, not actually received by the Trustee on or before July 2, 2009. Neither the Trustee nor SIPC has authority to grant extensions of time for filing of claims, regardless of the reason. Because the Claimants cannot show that the Trustee received their Late Claim prior to the expiration of the six-month filing window, their Motion should be denied.

27. SIPA section 78fff-2(a)(3) likewise does not apply because Claimants failed to request an extension of the Bar Date within the six-month window permitted by the statute. Even if they had, Claimants have not shown, or even alleged, cause for an extension. Furthermore, extending the Bar Date for the Claimants would be disruptive to the administration of this SIPA proceeding and create uncertainty in the Trustee's calculation of funds available for distribution to customers with allowed claims and appropriate reserves. *Cf. Midland Cogeneration Venture L.P.*

---

*Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

- 10 -

300460141.3

*v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115, 128 (2d Cir. 2005) (in determining how long of a delay is too long, courts consider the degree to which the delay may disrupt administration of the estate); *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 368 (2d Cir. 2003), *cert. denied* 540 U.S. 1105 (2004) ("the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced — where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.").

## CONCLUSION

28. For the reasons stated herein, Trustee respectfully requests that this Court deny the Motion in its entirety and grant such additional and further relief as the Court deems just and proper.

Dated: New York, New York
      February 22, 2018

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 Estate of Bernard L. Madoff*