| | |
|---|---|
| **Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Stacey A. Bell<br>James H. Rollinson<br>Melissa L. Kosack | Hearing Date: March 28, 2018 at 10:00 a.m.<br>Objection Deadline: March 14, 2018 at 4:00 p.m. |

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>   v.<br><br>DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT A ATTACHED HERETO,<br><br>     Defendants. | Adv. Pro. Nos. listed on Exhibit A Attached Hereto |

**MOTION AND SUPPORTING MEMORANDUM OF LAW FOR AN ORDER
ESTABLISHING OMNIBUS PROCEEDING FOR THE PURPOSE OF DETERMINING
<u>THE EXISTENCE, DURATION, AND SCOPE OF THE PONZI SCHEME AT BLMIS</u>**

TO: THE HONORABLE STUART M. BERNSTEIN
   UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order pursuant to Rule 42 of the Federal Rules of Civil Procedure, as incorporated by Rule 7042 of the Federal Rules of Bankruptcy Procedure, establishing an omnibus proceeding (the "Omnibus Ponzi Proceeding") consolidating all remaining "good faith" adversary proceedings in the BLMIS liquidation, as identified on **Exhibit A** (the "Remaining Good Faith Actions")[1], for the limited purpose of determining that, as alleged by the Trustee, BLMIS operated a Ponzi scheme through its investment advisory business (the "IA Business") at all relevant times, and because of the Ponzi scheme:

(i) BLMIS acted with the intent to hinder, delay, or defraud its creditors, as provided under 11 U.S.C. § 548(a)(1)(A) and SIPA § 78fff-2(c)(3), in connection with the transfers of fictitious profits[2] to each defendant listed on **Exhibit A** ("Defendant" and collectively, "Defendants") during the two years preceding the BLMIS liquidation proceeding; and

(ii) in calculating the Defendants' fictitious profits, the Trustee properly determined that no credit should be given (or removed) for gains (or losses) from Madoff's purported purchases and sales of securities, as reflected on the IA Business customer statements.

The Trustee's position on the Ponzi scheme, including points (i) and (ii) above, shall hereinafter be referred to as the "Ponzi Issue." In support thereof, the Trustee respectfully represents as follows:

---

[1] The "Remaining Good Faith Actions" refers to those remaining adversary proceedings seeking the avoidance and recovery of two-year transfers of fictitious profits (defined below) in which the Trustee's complaint either did not allege lack of good faith of the defendants within the meaning of 11 U.S.C. § 548(c), or to the extent such allegations were made, those such claims have been dismissed by the Court or by agreement of the parties.

[2] As used herein, the term "fictitious profits" refers to the amount of funds withdrawn from an IA Business customer account in excess of the amount deposited into that account.

2

**PRELIMINARY STATEMENT**

1. Since the revelation of Madoff's fraud in late 2008, numerous courts in this Circuit have recognized that Madoff was operating a Ponzi scheme through the IA Business. *See*, *e.g.*, *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 414 (2d Cir. 2014) (Parker, J.) ("Madoff orchestrated a massive Ponzi scheme through the investment advisory unit of Bernard L. Madoff Investment Securities LLC"); *Diana Melton Tr. v. Picard*, 15 Civ. 1151 (PAE), 2016 WL 183492, at *2 (S.D.N.Y. Jan. 14, 2016) (Engelmayer, J.) (Madoff operated a "classic Ponzi scheme in which he used new principal infused by 'new and existing customers to fund withdrawals of principal and supposed profit made by other customers.'"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 128 (Bankr. S.D.N.Y. 2010) (Lifland, J.), *aff'd*, 654 F.3d 229 (2d Cir. 2011) ("Rather than engage in legitimate trading activity, Madoff used customer funds to support operations and fulfill other investors' requests for distributions of profits to perpetuate his Ponzi scheme").

2. These rulings comport with the guilty pleas, criminal trial testimony, and criminal convictions of former BLMIS employees involved in the operation of the scheme. BLMIS's books and records also support the fact that Madoff was operating a Ponzi scheme from at least the 1970s.

3. Yet more than nine years into this liquidation proceeding, largely triggered by recent depositions of Madoff, Defendants in certain good faith adversary proceedings now contest the existence, duration, and/or scope of the Ponzi scheme at BLMIS.

4. This Court has indicated that the determination of the extent of the Ponzi scheme at BLMIS should be conducted on an omnibus basis. To that end, the Trustee submits that a limited consolidation of the Remaining Good Faith Actions for the purpose of discovery and trial on the Ponzi Issue is warranted.

3

5.  The procedures contemplated by the Order proposed herein allow for participation in the Omnibus Ponzi Proceeding by all Defendants in the Remaining Good Faith Actions who choose to affirmatively opt-in.  Defendants who do not opt-in will be barred from contesting the existence, duration, and/or scope of the Ponzi scheme at BLMIS, and will be deemed to have stipulated in their respective adversary proceedings that BLMIS operated a Ponzi scheme through its IA Business at all relevant times.  Those opt-out cases will proceed on an individual basis on all other remaining issues in accordance with their case-specific case management orders.

6.  The Omnibus Ponzi Proceeding will streamline the issues, prevent piecemeal determinations, and provide judicially efficient resolution as to the existence, duration, and scope of the Ponzi scheme at BLMIS.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, 15 U.S.C. § 78eee(b)(2)(A) and (b)(4), and Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing Order of Reference, No. M 10-468, 12 Misc. 0032 (S.D.N.Y. Jan. 31, 2012).  Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

### A.  BLMIS and the Ponzi Scheme

8.  Madoff operated three principal business units within BLMIS: a proprietary trading desk, a market-making business, and the IA Business.  Defendants in the Remaining Good Faith Actions received transfers of fictitious profits from BLMIS in connection with the IA Business.

9.  For most of the accounts in the IA Business, BLMIS purported to execute two investment strategies: the convertible arbitrage strategy and the split-strike conversion strategy.  For certain other IA Business customer accounts, primarily belonging to Madoff's close friends

4

and their families, Madoff used neither the convertible arbitrage strategy nor the split-strike conversion strategy, but rather purportedly executed trades through other "strategies" for various time periods.

10. In reality, the trades reflected on the IA Business customer statements were completely fabricated because Madoff did not engage in the purchases and sales of the securities for IA Business customers using the convertible arbitrage strategy, split-strike conversion strategy, or any other purported strategy. At all relevant times, the IA Business was operated as a Ponzi scheme. The funds received from IA Business customers were commingled, and those commingled funds were primarily used to make distributions to other BLMIS customers, and to enrich Madoff and his associates.

11. The Ponzi scheme collapsed in December 2008 when BLMIS customers' requests for redemptions overwhelmed both the funds on hand and the flow of new investments. Madoff was arrested by federal agents on December 11, 2008 for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced a proceeding in the Southern District of New York. *Sec. Exch. Comm'n v. Bernard L. Madoff Inv. Sec. LLC*, No. 08 CV 10791.

12. On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC"). Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due, and its customers needed the protections afforded by SIPA.

13. Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    (b) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    (c) removed the case to this Court pursuant to SIPA § 78eee(b)(4).

14. Under SIPA, the Trustee is responsible for determining claims, recovering and distributing customer property to BLMIS customers, and liquidating assets of the debtor for the benefit of the estate and its creditors.

### B. The Guilty Pleas, Criminal Proceeding, and Convictions of Former BLMIS Employees

15. On March 12, 2009, Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York. At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 1, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009), ECF No. 50.

16. On August 11, 2009, in the case captioned *United States v. DiPascali*, No. 09-CR-764 (RJS), Frank DiPascali, a BLMIS employee since 1975 and Madoff's right-hand man, pleaded guilty to helping perpetuate the Ponzi scheme at BLMIS. Plea Allocution Transcript of Frank DiPascali at 44:25-25, 65:6-8, *United States v. DiPascali*, 09-CR-764 (RJS) (S.D.N.Y. Oct. 15, 2009), ECF No. 12. In his plea allocution, DiPascali admitted that no purchases or sales of securities took place in connection with the IA Business customer accounts. *Id.* at 46:12-14. He also testified about his participation in the Ponzi scheme at the criminal trial (the "Criminal Trial") of five former BLMIS employees. Criminal Trial Transcript ("Tr."), *United States v. O'Hara*, No.

6

10-CR-228 (LTS) (S.D.N.Y. Apr. 3, 2014), ECF No. 854. In his testimony, DiPascali detailed how, for certain time periods, he "picked" the trades on customer statements "out of thin air." *Id.* at 4620:8-17. He also confirmed that Madoff did not execute trades for his IA Business customers from the 1970s. *Id.* at 4517, 4593-96, 6238.

17. On November 21, 2011, another long-time BLMIS employee, David Kugel, pleaded guilty to securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud. Plea Allocation Transcript of David Kugel at 7:23 – 8:2, *United States v. David Kugel*, 10-CR-228-LTS-7 (S.D.N.Y. Dec. 7, 2011), ECF No. 188. Kugel admitted to helping create false, backdated trades for IA Business customers from the early 1970s, to "[give] the appearance of profitable trading when in fact no trading had actually occurred." *Id.* at 32:4-12. Specifically, Kugel allocuted that in connection with the convertible arbitrage strategy, he provided historical trade information to certain BLMIS employees "which enabled [them] to create fake trades" for IA Business customers, and that those convertible arbitrage trades were executed "only on paper." *Id*. at 32:6-14. Kugel also testified at the Criminal Trial. In his testimony, he admitted that by 1977, he knew definitively that those trades reported on account statements for customers of the IA Business were fake, and detailed his role in creating those fake transactions. *See* Tr. at 1804:09-1817:08; 1860:25-1861:11, *United States v. O'Hara*, No. 10-CR-228 (LTS) (S.D.N.Y. Apr. 3, 2014), ECF No. 826.

18. Irwin Lipkin, a BLMIS employee from 1964, also admitted to his role in the Ponzi scheme. In Lipkin's guilty plea, he confessed that from the beginning of his employment at BLMIS, he created false accounting entries for regulatory filings which "helped Mr. Madoff run the Ponzi scheme." Plea Allocation Transcript of Irwin Lipkin at 29:23-30:3, *United States v. Irwin Lipkin*, 10-CR-228-LTS-11 (S.D.N.Y. Dec. 4, 2012), ECF No. 288.

7

19. On March 24, 2014, the five former BLMIS employees who were defendants at the Criminal Trial -- Daniel Bonventre, Annette Bongiorno, Jo Ann "Jodi" Crupi, George Perez, and Jerome O'Hara -- were convicted of fraud, securities violations, and other crimes in connection with their participation in the Ponzi scheme at BLMIS.

## THE TRUSTEE'S GOOD FAITH ACTIONS AND DISCOVERY RELATED THERETO

20. In connection with his responsibilities under SIPA and the Bankruptcy Code, on or before December 11, 2010, the Trustee commenced over one thousand adversary proceedings, including the Remaining Good Faith Actions, seeking the avoidance and recovery of fictitious profits received by good faith defendants from their IA Business customer accounts. The vast majority of such good faith adversary proceedings have been resolved via settlement, judgment, or dismissal. Remaining are the 155 good faith cases set forth on **Exhibit A**, which are in various stages of litigation.

21. In each adversary proceeding, the Trustee alleged that at all relevant times, BLMIS operated a Ponzi scheme through the IA Business, and as such, BLMIS acted with the requisite intent to hinder, delay, or defraud its creditors in connection with the transfers of fictitious profits to each Defendant during the two years preceding the commencement of the BLMIS liquidation proceeding, pursuant to 11 U.S.C. § 548(a)(1)(A) and SIPA § 78fff-2(c)(3).

22. The Trustee calculated the fictitious profits received by each Defendant by crediting the principal deposited and/or transferred into, and deducting the monies withdrawn and/or transferred from, each Defendant's BLMIS account(s) between April 1, 1981[3] and December 11,

---

[3] The Trustee used April 1, 1981 as the starting date for his net equity calculation because this is the first date on which BLMIS has the relevant data necessary to calculate the principal balance for all BLMIS accounts open at that time.

8

2008, consistent with the Net Investment Method approved by this Court[4] and affirmed by the Second Circuit.[5]  In calculating the fictitious profits, the Trustee did not credit the purchases and sales of securities reflected on the IA Business customer statements because Madoff did not enter into those securities transactions for IA Business customers.

23.  To support his claims in the good faith adversary proceedings, the Trustee produces certain account-related documents, and relevant bank records.  These documents are culled from BLMIS's voluminous books and records, as well as certain third-party documents, and relate to the Trustee's calculation of the Defendant's fictitious profits, and proof of the transfers at issue in a particular adversary proceeding.

24.  The documents typically produced by the Trustee are identified for production based on relevance to a particular adversary proceeding, and proportionality considerations.  Though the Trustee does not produce all of the documents and data in his possession, the Trustee provides a description of the various sources of information to Defendants as part of his Initial Disclosures.

25.  The Trustee also proffers expert reports in support of his claims, as follows:

- Matthew Greenblatt of FTI Consulting, Inc. provides a global expert report establishing the methodology used for the "Principal Balance Calculation" (*i.e.* net equity) for all BLMIS accounts;

- Matthew Greenblatt also provides an expert report setting forth the application of the methodology of the Principal Balance Calculation to the specific BLMIS account(s) at issue in a particular adversary proceeding;

- Lisa Collura of FTI Consulting, Inc. provides an expert report establishing (i) the reconciliation of the cash deposit and withdrawal transactions on IA

---

[4] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010).

[5] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011), *reh'g and reh'g en banc den*. (2d Cir. Nov. 08, 2011), *cert. dismissed*, 566 U.S. 1032 (2012), *cert. den*., 567 U.S. 934 (Jun. 25, 2012).

9

> Business customer statements to IA Business bank accounts for certain periods, and (ii) transfers of funds to the defendant(s) in a particular case; and

- Bruce Dubinsky of Duff & Phelps provides a global expert report, dated August 2013, on the fraud and insolvency at BLMIS.

26. With the service of each of these four reports, the Trustee includes a list of the documents considered by the respective experts in forming the expert opinions at issue ("Documents Considered Lists").

27. As part of the Trustee's disclosure efforts, the Trustee also grants Defendants access to an electronic document repository, E-Data Room 1, a database previously approved by the Court as a portal for documents relevant to the Trustee's proof of fraud and insolvency at BLMIS.[6] This database contains over four million documents, and includes those materials considered by the Trustee's Proof of Fraud and Insolvency expert, Mr. Dubinsky, in connection with his August 2013 expert report. The majority of the documents on the Documents Considered Lists for the Trustee's other experts, Mr. Greenblatt and Ms. Collura, are also part of E-Data Room 1. Any document or data source on the Documents Considered Lists that is not amenable to inclusion in E-Data Room 1 is available upon request.

## CERTAIN DEFENDANTS CONTEST THE PONZI SCHEME

28. Some Defendants in the Remaining Good Faith Actions contest the existence, duration, and/or scope of the Ponzi scheme at BLMIS.

29. On July 7, 2016, certain Defendants, mostly represented by Chaitman LLP, filed a motion for an order permitting the deposition of Madoff on issues related to, in particular, "[t]he proportion and division of legitimate and illegitimate activities of Madoff's operations, including,

---

[6] *See* Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)* at 8, No. 08-1789-brl (Bankr. S.D.N.Y. Nov. 10, 2010), ECF No. 3141.

10

*inter alia*, when Madoff began operating a 'Ponzi' scheme."[7] Other Defendants joined Chaitman LLP's request.

30. This Court entered an Order on September 29, 2016, granting these Defendants permission to depose Madoff as to, *inter alia*, when Madoff began operating his Ponzi scheme and whether there was any legitimate trading in the IA Business prior to 1992.[8]

31. Since that time, discovery disputes related to the Ponzi scheme have arisen in the context of document requests, subpoenas, and expert disclosures. As this Court is aware, in response to these Defendants' discovery demands, the Trustee has, among other things, restored hundreds of reels of microfilm, and produced documents based on search parameters negotiated with certain Defendants. These productions are in addition to the documents the Trustee typically produces during discovery in the adversary proceedings. Notwithstanding these efforts, these Defendants continue to propound discovery requests pertaining to the Ponzi scheme, using different search terms or changing search parameters.

32. In addition, Chaitman LLP served numerous subpoenas on former BLMIS employees, seeking deposition testimony as well as documents relevant to those Defendants' position that "BLMIS engaged in legitimate trading for its Investment Advisory customers prior to 1992." These subpoenas were served simultaneously in 87 different adversary proceedings.

33. Certain Defendants have also proffered the expert report of William Feingold in several of the Remaining Good Faith Actions in support of their position that the Ponzi scheme at

---

[7] Mem. of Law at 1, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. July 7, 2016), ECF No. 13605.

[8] The Court divided Madoff's deposition into two parts: Day 1 and Day 2, each with its own approved set of topics. *See* Order Authorizing the Deposition of Bernard L. Madoff at 2-3, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. Sept. 29, 2016), ECF No. 14213, and Order Authorizing the Continued Deposition of Bernard L. Madoff on Day Two Topics at 3-4, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. Sept. 11, 2017), ECF No. 16625.

11

BLMIS began in 1992. Chaitman LLP also sought from this Court the right to set a single service date for expert rebuttal reports across multiple good faith cases on the issue of the Ponzi scheme at BLMIS.

34. The Trustee objected to certain of the discovery requests and the subpoenas on the basis that they were premature in light of Madoff's deposition, and that coordination of fact and expert discovery as to the start date of the Ponzi scheme at BLMIS should be done by way of an omnibus proceeding.

35. On July 26, 2017, this Court entered an Order implementing certain bench rulings in which it held that compliance with the Chaitman LLP subpoenas should be held in abeyance until after Madoff's deposition. The Court similarly held that service deadlines for expert rebuttal reports to be served by Defendants represented by Chaitman LLP should be determined only after Madoff's deposition.[9] On August 10, 2017, the Court extended its July 26, 2017 ruling to all affirmative and expert rebuttal reports to be served by both the Trustee and Chaitman LLP in these adversary proceedings.[10]

36. More recently, certain Defendants have expanded their challenges to the Ponzi scheme at BLMIS. In some cases, Defendants not only argue that the Ponzi scheme began in 1992, but that Madoff actually purchased and sold securities for IA Business customers using the convertible arbitrage strategy, as well as other strategies for various periods. Other Defendants contend that Madoff conducted the Treasury transactions reflected on customer statements for those specific IA Business accounts. Further still, there are those Defendants who have maintained

---

[9] Order Implementing the Court's May 31, 2017 and June 29, 2017 Bench Rulings on Multiple Discovery Disputes, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. July 26, 2017), ECF No. 16459.

[10] Stipulation and Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. Aug. 10, 2017), ECF No. 16494.

that regardless of the time period, Madoff never conducted a Ponzi scheme through the IA Business because he used the profits and/or interest generated from actual trades to make distributions to BLMIS customers.

37. Defendants' various positions on the Ponzi scheme, and their evolving discovery demands and disputes relating thereto, underscore the need for a single, coordinated proceeding which will address the Ponzi Issue and related discovery efficiently and consistently across the Remaining Good Faith Actions.

38. With the conclusion of Day 1 of Madoff's deposition, the Ponzi Issue is now ripe for determination, and accordingly, the Trustee seeks entry of an order, substantially in the form of the proposed Order (the "Proposed Order") attached hereto as **Exhibit B**.

## THE OMNIBUS PONZI PROCEEDING WILL STREAMLINE THE ISSUES AND PREVENT PIECEMEAL LITIGATION

39. The Omnibus Ponzi Proceeding would allow the Ponzi Issue to be litigated in a coordinated proceeding in the most efficient and effective manner across the Remaining Good Faith Actions, and the Proposed Order would set in place procedures for addressing the Ponzi Issue on an omnibus basis.

### A.   Participating and Non-Participating Defendants

40. As proposed, Defendants in the Remaining Good Faith Actions would have the opportunity to affirmatively opt-in to the Omnibus Ponzi Proceeding by serving upon the Trustee a "Notice of Participation in the Omnibus Ponzi Proceeding." Defendants who choose not to opt-in will be barred from contesting the existence, duration, and/or scope of the Ponzi scheme at BLMIS, and will be deemed to have stipulated in their respective adversary proceedings that BLMIS operated a Ponzi scheme through its IA Business at all relevant times, and because of the Ponzi scheme, (i) BLMIS acted with the intent to hinder, delay, or defraud its creditors, as provided

13

under 11 U.S.C. § 548(a)(1)(A) and SIPA § 78fff-2(c)(3), in connection with the transfers of fictitious profits to each Defendant during the two years preceding the BLMIS liquidation proceeding, and (ii) in calculating the Defendants' fictitious profits, the Trustee properly determined that no credit should be given (or removed) for gains (or losses) from Madoff's purported purchases and sales of securities, as reflected on the IA Business customer statements.

41. The Proposed Order establishes a 60-day period during which the Trustee is amenable to conferring with Defendants in the Remaining Good Faith Actions on their particular arguments related to the Ponzi scheme. This process is aimed at resolving and/or streamlining any issues that may affect Defendants' decision about whether or not to participate in the Omnibus Ponzi Proceeding.

### B. Fact and Expert Discovery

42. The Omnibus Ponzi Proceeding proposed by the Trustee herein will streamline and consolidate a fact and expert discovery process that is currently being conducted in piecemeal fashion across numerous good faith cases.

43. The Proposed Order contemplates that the Participating Defendants would be represented by Liaison Counsel who would act on behalf of the Participating Defendants in all matters related to the Omnibus Ponzi Proceeding.

44. Liaison Counsel would negotiate a Discovery Plan with the Trustee to establish the parameters of fact and expert discovery in the Omnibus Ponzi Proceeding. To the extent the parties fail to agree to a Discovery Plan, the Trustee proposes that the parties may engage in binding arbitration before the Honorable Frank Maas, the discovery arbitrator previously appointed by this Court, to resolve any disputes concerning the Discovery Plan.

45. As proposed, fact discovery (including depositions[11] and production of documents[12]) shall be limited to the Ponzi Issue, and not encompass any other issues. All discovery requests and responses relating to the Ponzi Issue in any of the Remaining Good Faith Actions shall be subsumed in their entirety by the Omnibus Ponzi Proceeding. To avoid the possibility of conflicting rulings, all pending discovery requests, responses and/or disputes in any of the Remaining Good Faith Actions relating to the Ponzi Issue shall be supplanted in their entirety by this proceeding.

46. Expert discovery on the Ponzi Issue would be similarly streamlined and consolidated across the Remaining Good Faith Actions. In accordance with the Proposed Order, it is anticipated that affirmative and rebuttal expert reports will be submitted on the Ponzi Issue. The Trustee's experts will address the evolving arguments advanced by Defendants on the Ponzi Issue, and expert discovery will include all documents considered by any experts in connection with any opinions offered on the Ponzi Issue.

### C. Motion Practice and Trial

47. Motion practice, including any dispositive motions, shall also proceed on a consolidated basis. No motion may be made without prior Court approval, which may be sought by telephone conference jointly with the Court.

---

[11] Certain former BLMIS employees were not previously deposed by the Trustee in connection with the August 2013 Proof of Fraud and Insolvency expert report by Bruce Dubinsky because of the pendency of the Criminal Trial and the roles of those employees in that trial.

[12] The Trustee anticipates producing documents in connection with the Omnibus Ponzi Proceeding, such as, for instance, documents that address the Defendants' evolving arguments on the Ponzi scheme, as well as documents relevant to depositions and expert disclosures.

48. To the extent the Ponzi Issue is not fully determined by dispositive motions, the parties will participate in a consolidated trial for the limited purpose of obtaining a ruling from the Court on the Ponzi Issue.

## APPLICABLE LEGAL STANDARDS

49. Rule 42(a) of the Federal Rules of Civil Procedure, as made applicable to these adversary proceedings by Rule 7042 of the Federal Rules of Bankruptcy Procedure, provides that in actions involving a common question of law or fact, the court may "(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a).

50. Courts are vested with broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990). In exercising this discretion, courts may consider whether judicial economy and equity favor consolidation. *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "So long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *City of New York v. FedEx Ground Package Sys.*, No. 13 Civ. 9173 (ER), 2016 WL 1532252, at *2 (S.D.N.Y. Apr. 15, 2016) (quoting *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997)).

51. "Complete symmetry [between actions] is not a prerequisite for consolidation." *McArdle v. Arms Acres, Inc.*, No. 03 Civ. 05721 (PGG), 2009 WL 890077, at *3 (S.D.N.Y. 2009); *see Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 2016 WL 4718413, at *4 (S.D.N.Y. Sept. 8, 2016) ("Consolidation does not require an exact identity of issues and fact between matters."). In fact, "[i]t is well settled that even one substantial common question of law or fact is enough for consolidation under Rule 42(a)." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 141 (S.D.N.Y. 2000). Differences between causes of action, or defendants, do not render

16

consolidation inappropriate if the cases nevertheless present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

## ARGUMENT

### The Remaining Good Faith Actions Involve Common Questions of Fact and Law on the Ponzi Issue, and Consolidation Will Promote Judicial Economy

52. Consolidation of the Remaining Good Faith Actions for the limited purpose of resolving the Ponzi Issue is appropriate, as the questions of law and fact relevant to the Ponzi Issue are common to all of the cases. Issues as to the start date of the Ponzi scheme, the existence, scope and duration of the Ponzi scheme, as well as whether Defendants should be given credit for the securities listed on their IA Business customer statements, have been raised across the Remaining Good Faith Actions. Determinations on these issues would be equally applicable in each case.

53. By permitting this matter to proceed on an omnibus basis, the Court would ensure that certain basic parameters for the BLMIS liquidation, such as the Trustee's treatment of the securities transactions on the IA Business customer statements in connection with the Principal Balance Calculation, would be uniformly decided, avoiding inconsistent rulings.

54. Consolidation of the Remaining Good Faith Actions for this limited purpose will also help promote judicial economy, as the omnibus procedures will eliminate duplicative and/or competing discovery and litigation.

55. The proposed Omnibus Ponzi Proceeding is an orderly and cost efficient way to proceed with both fact and expert discovery. The Proposed Order contemplates use of one Liaison Counsel to help ensure arguments are not piecemeal and can be addressed at one time, in one place. Fact and expert discovery shall be limited solely to the Ponzi Issue, be governed by certain additional limitations as to scope (such as the number of permissible depositions), and have

specific time parameters for completion. The proposed omnibus procedures are also designed to create an efficient system for addressing discovery disputes, motion practice, and trial.

56. By allowing Defendants to opt-in or out of the process, and by establishing a process for conferring with the Defendants, the Trustee seeks to enhance the possibility of settlements and reduce the volume of cases and/or issues before the Court.

57. If granted, the Proposed Order will establish the Omnibus Ponzi Proceeding and obviate the need for the Court to address discovery issues related to the Ponzi Issue on a case-by-case basis, thereby eliminating the risk of inconsistent arguments/outcomes across cases.

## NOTICE

58. Notice of this Motion will be provided by U.S. Mail, postage prepaid, or email to: (i) all Defendants listed on **Exhibit A** hereto and (ii) all parties on the Master Service List, including the Securities Investor Protection Corporation, pursuant to the Order Establishing Notice Procedures. Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-1789-smb (S.D.N.Y. Dec. 5, 2011), ECF No. 4560. The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests that the Court (i) grant the Trustee's Motion for an order establishing the Omnibus Ponzi Proceeding; (ii) enter an order substantially in the form of the Proposed Order attached hereto as **Exhibit B** granting the relief requested herein; and (iii) grant such other and further relief as the Court deems proper.

Dated: New York, New York
February 23, 2018

By: */s/Stacey A. Bell*

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Stacey A. Bell
Email: sbell@bakerlaw.com
Melissa L. Kosack
Email: mkosack@bakerlaw.com

Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 861-7075
Facsimile: (216) 696-0740
James H. Rollinson
Email: jrollinson@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*