**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01182 (SMB) |
| Plaintiff, | |
| v. | |
| J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION, | |
| Defendants. | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO REARGUE THE COURT'S JANUARY 22, 2018 ORDER EXCLUDING THE OPINIONS AND TESTIMONY OF JEFFREY M. WEINGARTEN

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT .............................................................................................................3

I.    DEFENDANTS FAIL TO MEET THE STANDARD FOR
      RECONSIDERATION...............................................................................3

      A.    Defendants Arguments Regarding Weingarten's Experience Are
            Identical to Those Previously Considered in the Motion *in Limine* ............4

      B.    Defendants' Arguments About Weingarten's Methodology Are
            Identical to Those Previously Considered in the Motion *in Limine* ............6

      C.    The Court's Decision to Narrow the Scope of Permissible
            Testimony as to Willful Blindness Does Not Satisfy Defendants'
            High Burden on a Motion for Reconsideration or Compel Reversal
            of the Court's Decision...............................................................................9

II.   WEINGARTEN WAS GIVEN A FULL OPPORTUNITY TO OPINE ON
      ISSUES OF DUE DILIGENCE TRIGGERS AND REACTIVE DUE
      DILIGENCE BUT FAILED TO ADDRESS IT ....................................................12

III.  DEFENDANTS' MOTION FOR RECONSIDERATION IS
      PROCEDURALLY IMPROPER AND SHOULD BE DENIED. ........................14

CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorigianos v. National R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................. 11

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012) ................................................. 4

*Matter of C. F. Bean, LLC*,
2015 WL 13049833 (S.D. Miss. Nov. 23, 2015) ...................... 8

*In re CRM Holdings, Ltd. Sec. Litig.*,
2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ............................ 8

*Fate v. Vill. of Spring Valley*,
2013 WL 2649548 (S.D.N.Y. June 13, 2013) ........................ 10

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................... 11

*Great Am. Ins. Co. of N.Y. v. USF Holland, Inc.*,
2013 WL 1832185 (S.D.N.Y. May 1, 2013) ........................ 4, 8

*Gucci America, Inc. v. Guess?, Inc.*,
2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011) ....................... 7-8

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
113 F. Supp. 2d 613 (S.D.N.Y. 2000) ................................. 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ......................................................... 11

*Lidle v. Cirrus Design Corp.*,
2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ........................ 15

*Lippe v. Bairnco Corp.*,
288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ................................... 9

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016) ................................. 6

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995) .............................................. 11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*New York v. Parenteau*,
  382 Fed. App'x 49 (2d Cir. 2010) ............................................................................. 8

*New York v. United Parcel Serv., Inc.*,
  2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) .................................................. 10, 11

*Nisanov v. Black & Decker (U.S.) Inc.*,
  2008 WL 2185910 (E.D.N.Y. 2008) ........................................................................ 7

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  669 F. Supp. 2d 448 (S.D.N.Y. 2010) ..................................................................... 6

*Pereira v. Aetna Cas. & Sur. Co.* (*In re Payroll Express Corp.*),
  1997 WL 539777 (S.D.N.Y. Aug. 28, 1997), *aff'd*, 186 F.3d 196 (2d Cir.
  1999) ........................................................................................................................ 8

*In re Point Prods.*,
  2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ........................................................ 15

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014) ..................................................................... 10

*Rafter v. Liddle*,
  288 F. App'x 768 (2d Cir. 2008) ............................................................................ 4

*Range Road Music, Inc. v. Music Sales Corp.*,
  90 F. Supp. 2d 390 (S.D.N.Y. 2000) ...................................................................... 4

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ...................................................... 15

*THOIP v. Walt Disney Co.*,
  690 F. Supp. 2d 218 (S.D.N.Y. 2010) ............................................................. 10, 11

*U.S. v. Kerik*,
  615 F. Supp. 2d 256 (S.D.N.Y. 2009) ..................................................................... 8

*U.S. v. Williams*,
  506 F.3d 151 (2d. Cir. 2007) ................................................................................. 11

*United States v. Larkin*,
  2016 WL 155010 (D. Nev. Jan. 13, 2016) ............................................................. 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ................................................................................. 3

300459858.8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Whalen v. CSX Transp., Inc.*,
 2016 WL 5660381 (S.D.N.Y. Sept. 29, 2016) ....................................................................... 15

*Zito v. N.Y.C. Office of Payroll Admin.*,
 2012 WL 651606 (S.D.N.Y. Feb. 27, 2012) ............................................................................ 4

**Statutes**

15 U.S.C. § 78aaa *et seq.* ..................................................................................................... 1

**Rules**

Fed. R. Evid. 702 .................................................................................................*passim*

300459858.8

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law and the Declaration of Lan Hoang

("Hoang Decl.") in opposition to Defendants'[1] Motion to Reargue the Court's January 22, 2018

Order Excluding the Opinions and Testimony of Jeffrey M. Weingarten.  For the reasons set

forth herein, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

Defendants seek reconsideration of the Court's decision to exclude the testimony of

Jeffrey M. Weingarten based on the argument that it is "manifestly unjust" that their expert—one

who failed to meet the requirements demanded by Federal Rule of Evidence 702 and *Daubert* for

expert testimony—cannot testify at trial.  Defendants' motion, however, cites to no new fact or

controlling case law.  Lacking anything "new," Defendants' motion merely seeks to re-argue the

very same arguments that they previously asserted on the motion *in limine*, which are

inappropriate and insufficient grounds for reconsideration.  The motion should be denied on that

ground alone.

The lack of any proper basis for reconsideration reaffirms the correctness of the Court's

original decision to exclude Weingarten's testimony and allow this matter to proceed to trial.

The Court considered the arguments advanced by the parties on the Trustee's motion *in limine*,

including the lack of expert methodology or analyses by Weingarten and the permissible scope

of expert opinion consistent with the subjective and objective standards of willful blindness.  The

---

[1] J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), Ascot Partners, L.P. ("Ascot Partners"), and
Ascot Fund Ltd. ("Ascot Fund") are referred to herein as Defendants.

Court properly determined that Weingarten's testimony should be excluded in its entirety under

Fed. R. Evid. 702 and *Daubert* because he "impermissibly attested to Merkin's state of mind,"

failed to explain his methodology or "to link [his] experience to the conclusions he reached;" and

thus "his opinions are conclusory and devoid of analysis."[2]  As to the sole contention in his

rebuttal report that could possibly pertain to due diligence triggers, the Court found that the

opinion by Weingarten of what was "publically [sic] known and discussed at the time" was

inadmissible because it was not relevant; the relevant inquiry is "what Merkin knew, not what

the public knew."[3]

The fact that the Court has streamlined the evidence it wishes to hear at trial—evidence

related to due diligence triggers and reactive due diligence—in no way alters the mandates of

Fed. R. Evid. 702 and *Daubert*.  Admissible expert testimony must be based upon sufficient facts

or data using reliable principles and methods applied to the facts of the case.  Defendants did not

meet this standard and now essentially seek a do-over of expert disclosure and discovery in order

to allow Weingarten to offer new undisclosed opinions in rebuttal of the opinions on due

diligence triggers and reactive due diligence that were properly and timely disclosed by the

Trustee's due diligence expert, Dr. Steve Pomerantz.  Defendants cannot make a claim that they

were somehow unaware of Pomerantz's opinions on due diligence triggers and reactive due

diligence or did not have ample time during expert discovery to address the opinions.  In this

lengthy litigation and at this late date, Defendants should not now get a second bite at the apple

---

[2] Mem. Decision Regarding Mots. *in Limine* ("MIL Decision"), 18–19, ECF No. 425 (Dec. 22, 2017).  All "ECF" references in this memorandum refer to the case captioned *Picard v. Merkin*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.), unless otherwise stated herein.

[3] *Id.* at 20–21.

for expert disclosure and discovery because they did not properly address that opinion during expert discovery.

Defendants' motion for reconsideration should be denied.

## BACKGROUND

The Trustee served the Defendants with the Initial Expert Report of Steve Pomerantz on March 20, 2015 and a revised version of the report on April 27, 2015 that incorporated errata disclosed on April 15, 2015. Defendants submitted the Expert Report of Jeffrey M. Weingarten on March 19, 2015,[4] and the Rebuttal Expert Report of Jeffrey M. Weingarten on May 14, 2015.[5] Expert discovery closed on July 17, 2015.[6]

On April 7, 2017, the Trustee filed a motion *in limine* to exclude Weingarten's opinions and testimony.[7] Following briefing and oral argument by the parties, this Court granted the Trustee's motion to exclude Weingarten's testimony in its entirety at trial on December 22, 2017.[8]

## ARGUMENT

### I.    DEFENDANTS FAIL TO MEET THE STANDARD FOR RECONSIDERATION

A party moving for reconsideration bears the heavy burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

---

[4] *See* Decl. of Mariel R. Bronen in Supp. of Defs.' Mot. to Reargue, Ex. A (Expert Report of Jeffrey M. Weingarten, dated Mar. 19, 2015 ("Initial Rpt.")), ECF No. 432-2 (Feb. 5, 2018).

[5] *See* Decl. of Lan Hoang in Supp. Trustee's Mot. *in Limine* Numbers 1 through 4, Ex. 6 (Rebuttal Expert Report of Jeffrey M. Weingarten, dated May 14, 2015 ("Weingarten Rebuttal Rpt." and, together with the Initial Rpt., the "Reports"), ECF No. 337-7 (Apr. 7, 2017).

[6] Order on Ninth Am. Case Management Plan, ¶ 3, ECF No. 264 (Apr. 23, 2015).

[7] Notice of Trustee's Mot. *in Limine* Numbers 1 through 4, ECF No. 336 (Apr. 7, 2017); Trustee's Mot. *in Limine* No. 3 and Mem. to Exclude Ops. and Test. of Jeffrey M. Weingarten, ECF No. 334 (Apr. 7, 2017).

[8] MIL Decision 21.

prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). The standard for granting a motion for reconsideration is very strict and is generally denied unless the movant can show data or a controlling decision that has been overlooked by the court. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations omitted).

Such motions should be "employed sparingly in the interests of finality and conservation of scarce judicial resources." *Zito v. N.Y.C. Office of Payroll Admin.*, 2012 WL 651606, at *1 (S.D.N.Y. Feb. 27, 2012) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Motions for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Great Am. Ins. Co. of N.Y. v. USF Holland, Inc.*, 2013 WL 1832185, at *1 (S.D.N.Y. May 1, 2013) (quoting *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000)). These motions are not an opportunity for the movant to take a second bite at the apple. *See Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008).

Nothing in Defendants' Motion sets forth any new facts or controlling law that this Court did not already consider in its original decision. Similarly, Defendants do not offer any evidence that could materially change the Court's ruling or work a manifest injustice. Rather, Defendants have repeated the same arguments they advanced in opposition to the Trustee's motion *in limine* to exclude Weingarten, all of which the Court previously rejected.

### A.    Defendants Arguments Regarding Weingarten's Experience Are Identical to Those Previously Considered in the Motion *in Limine*

Defendants claim that "Weingarten's four decades long career in investment research and fund management are a sufficient basis for him to testify about the customs and practices in that

field."[9]  This same argument was set forth repeatedly in Defendants' opposition to the motion *in limine*: "Through his experience, including forty years analyzing investments and more than twenty years as a fund manager, Weingarten obtained extensive knowledge and expertise with respect to industry due diligence standards and practices."[10]  And again, "Weingarten's more than forty years of experience in finance, investment research, fund management and investing, during which he obtained extensive knowledge and expertise with respect to industry due diligence standards and practices, qualify him to opine on the adequacy of the Defendants' due diligence on BLMIS."[11]  Similarly, in oral argument on the motion *in limine*, Defendants stated that: "Mr. Weingarten does focus on -- based on 40 years of experience including running Goldman Sachs Asset Management and his own hedge fund, and having done due diligence a gazillion times and having due diligence done on him a gazillion times, that what -- he ties his analysis to what actually Mr. Merkin did."[12]  And counsel then repeated Defendant's reliance on Weingarten's experience:

> Here's the methodology that in pre-Madoff days, people need to focus on the five P's. This is the methodology that people did due diligence.  And based on my 40 years of experience and having done this a lot, I've looked at what Mr. Merkin said he did.  I've looked at what was in Mr. Merkin's due diligence file, and I find that satisfies what would have been normal due diligence standards in that period of time.[13]

---

[9] Defs.' Mem. in Supp. of Mot. to Reargue Court's Jan. 22, 2018 Order ("Defs.' Mot. to Reargue"), 6, ECF No. 431 (Feb. 5, 2018).

[10] Defs.' Mem. in Opp'n to Trustee's Mot. *in Limine* Number 3 ("Defs.' MIL Opp'n"), 2, ECF No. 362 (May 10, 2017).

[11] *Id.* at 5.

[12] Hoang Decl., Ex. 1 (Mot. *in Limine* Hr'g Tr., dated Aug. 9, 2017 ("MIL Hr'g Tr.")), 8:3–9.

[13] *Id.* at 9:11–18.

The Court fully considered Weingarten's reliance on his experience and found it

insufficient to meet the requirements of Fed. R. Evid. 702 and *Daubert*: "While Weingarten

referred to his experience a number of times in his report, he failed to link the experience to the

conclusions he reached."[14]  Because Defendants previously made the same arguments as to

Weingarten's experience, the Court need not reconsider the very same arguments now.

> **B.      Defendants' Arguments About Weingarten's Methodology Are Identical to
> Those Previously Considered in the Motion *in Limine***

Likewise, Defendants also reiterate their argument that Weingarten's testimony is

admissible because he shares a "methodology"—the Five Ps—with Pomerantz.  "[I]t is clear

from the Weingarten Report, and embraced by Pomerantz, that both Weingarten and Pomerantz

used the same principles and methods in evaluating what due diligence was required of a fund

manager."[15]  This same argument was at the forefront of Defendants' earlier briefing: "Based on

his experience, Weingarten determined that due diligence on an investment involves the

evaluation of five characteristics: [Philosophy, Process, Procedures, People, and

Performance]. . . .  This methodology, sometimes referred to as the Five Ps, was approved by the

Trustee's own purported due diligence expert, Steve Pomerantz."[16]

The Court considered Defendants' argument that the five Ps was the "methodology"

utilized by Weingarten again at oral argument, as evidenced by its questions to counsel seeking

clarification as to Weingarten's opinion:

---

[14] MIL Decision at 19–20 (citing *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636
(S.D.N.Y. 2016) (quoting *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 669 F.
Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010) ("If the witness is relying solely or primarily on experience, then [he]
must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the
opinion, and how that experience is reliably applied to the facts."))).

[15] Defs.' Mot. to Reargue 5.

[16] Defs.' MIL Opp'n 2.

MR. LEVANDER:  What Mr. Weingarten has testified to is that in this period of time, methodology of doing due diligence was the (indiscernible) piece.  A--

THE COURT:  Well, that's what the goals or the (indiscernible) that you looked into.  But the argument is he didn't say what he did in order to look into it.

MR. LEVANDER:  No.  So, what he did then was -- and Mr. Pomerantz doesn't disagree that that's the appropriate standard, the five P's, and that he, Mr. Pomerantz, did it that way himself.  And what he said, based on his 50 years of experience and hundreds of due diligence examinations, either as the subject of it or doing it, that the things that Mr. Merkin did satisfied the standards that then existed with – or exceeded those standards with regard to the five P's.[17]

The Court rejected Defendants' methodology argument, finding that "Weingarten did not explain his methodology" and thus "his opinions are conclusory and devoid of analysis."[18]  In particular, the Court found that Weingarten's opinion that "BLMIS' non-volatile, better-than-expected returns were 'consistent' with BLMIS' philosophy, process, and procedures" was devoid of analysis, thus failing to provide the link between the experience and the offered conclusions.[19]  The factual and legal methodology arguments advanced by Defendants on the motion *in limine* were considered by the Court; Defendants have offered no new facts or controlling law to reconsider the very same methodology arguments they previously advanced.

Nor does the case law relied upon by Defendants offer support for their requested relief.  In *Nisanov v. Black & Decker (U.S.) Inc.*, on a motion for reconsideration in a products liability case, plaintiff directed the court to new testing—new facts—that had been completed after the decision to exclude plaintiffs' expert.  2008 WL 2185910, at *2 (E.D.N.Y. May 23, 2008).  In *Gucci America, Inc. v. Guess?, Inc.*, a Lanham Act case, the court granted reconsideration of its

---

[17] MIL Hr'g Tr. 36:9–23.

[18] MIL Decision 19; *see also* MIL Hr'g Tr. 27:8–11 ("And frankly, I didn't find your six-page report particularly probative.").

[19] MIL Decision 20.

decision to strike the opinion of plaintiff's expert because it had overlooked facts relating to the

survey prepared by the expert to show confusion and infringement. 2011 WL 6326032, at *1–2

(S.D.N.Y. Dec. 16, 2011). Neither new facts nor overlooked facts exist in the case herein.

The Court has already considered and has determined that Weingarten opinions are

improper expert testimony, do not meet the reliability standards of Fed. R. Evid. 702 and

*Daubert* for expert testimony, and/or are otherwise not relevant.[20] No new facts or controlling

law exists. The Court need not and should not reconsider its holdings again. *See New York v.

Parenteau*, 382 Fed. App'x 49, 50 (2d Cir. 2010) ("[A] motion to reconsider should not be

granted where the moving party is solely attempting to relitigate an issue that already has been

decided." (citation omitted)); *U.S. v. Kerik*, 615 F. Supp. 2d 256, n.27 (S.D.N.Y. 2009) (finding

that a motion for reconsideration should be denied where the moving party is merely offering

"substantially the same arguments he offered on the original motion"); *Great Am. Ins. Co. of

N.Y.*, 2013 WL 1832185, at *2 (showing that courts routinely deny motions for reconsideration

of motion *in limine* decisions to exclude expert witnesses, particularly where a party's briefing

simply repeats arguments considered and rejected by the Court in its previous decision); *United

States v. Larkin*, 2016 WL 155010, at *2–3 (D. Nev. Jan. 13, 2016) (denying a motion for

reconsideration of a motion *in limine* to exclude expert witnesses because the "defendant

present[ed] no newly discovered evidence and made no showing of clear error or changes in

controlling law," and the "court's ten-page order [] adequately addressed each aspect of the

motions *in limine*"); *Matter of C. F. Bean, LLC*, 2015 WL 13049833, at *1 (S.D. Miss. Nov. 23,

---

[20] *See generally In re CRM Holdings, Ltd. Sec. Litig.*, 2013 WL 787970, at *4 (S.D.N.Y. Mar. 4, 2013)
("All materials and arguments submitted in support of (or in opposition to) a motion are presumed to
have been considered by the Court." (quoting *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll
Express Corp.)*, 1997 WL 539777, at *1 (S.D.N.Y. Aug. 28, 1997), *aff'd*, 186 F.3d 196 (2d Cir.
1999))).

2015) (explaining that "a motion to reconsider is not 'intended to give an unhappy litigant one

additional chance to sway the judge, and its purpose is not to redebate the merits of a particular

motion'" (citations omitted)).

**C.    The Court's Decision to Narrow the Scope of Permissible Testimony as to Willful Blindness Does Not Satisfy Defendants' High Burden on a Motion for Reconsideration or Compel Reversal of the Court's Decision**

The Court has determined that Pomerantz is permitted to testify on due diligence triggers

and reactive due diligence and that such testimony is germane to the second prong of the willful

blindness inquiry.[21]  "It is important to know what someone like Merkin should have done,

because if he did not respond appropriately to specific indications that Madoff was a fraud, it

may support an inference that Merkin consciously turned away from those facts and any further

investigation."[22]

Defendants now contort this holding to urge the Court to overlook the fatal deficiencies

in Weingarten's expert opinions and permit him to nonetheless testify.  Defendants, however, fail

to appreciate that although Pomerantz's testimony has been limited, Pomerantz's opinions have

met the mandates of Fed. R. Evid. 702 and *Daubert*; they are based upon sufficient facts and data

using reliable principles and methods applied to the facts of the case.  Beyond just his experience

and the 5 Ps framework, Pomerantz identified the red flags and due diligence triggers, conducted

analyses consistent with those required of each red flag and due diligence triggers, used accepted

methodologies to carry out each of those analyses, and provided the results of those analyses in

support of his opinions—all of which can be tested, examined, and verified.[23]  *See Lippe v.

Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)

---

[21] MIL Decision 15.

[22] *Id.*

[23] *Id.*

(holding an expert's "testimony must be based on sufficient facts or data and it must be the product of reliable principles and methods properly applied"); *Fate v. Vill. of Spring Valley*, 2013 WL 2649548, at *2, 4 (S.D.N.Y. June 13, 2013) (explaining that expert testimony lacking sufficient data and analysis is the type of expert testimony that the court's gatekeeping function is intended to keep out of the courtroom).

Moreover, the Court's limitation on expert testimony does not alter or undermine its decision to exclude Weingarten's testimony. The mandates of Fed. R. Evid. 702 and *Daubert* still apply. *See New York v. United Parcel Serv., Inc.*, 2016 WL 4735368, at *1 (S.D.N.Y. Sept. 10, 2016) (a trial to the bench "does not signal a 'free-for-all' vis-à-vis expert witnesses;" requirements of Fed. R. Evid. 702 and interpreting case law apply). As this Court determined, while Weingarten may have experience, he did no analyses and applied no methodologies, much less ones that can be tested through replication. Without bridging the gap between experience and an opinion with verifiable methodologies and analyses, Weingarten's suppositions are *ipse dixit* inadmissible expert testimony.[24] Nothing in the current motion for reconsideration or the arguments already considered by the Court cure the defects fatal to Weingarten's opinions.

Nor is it a manifest injustice that one party's expert is excluded and the other party's expert is permitted to testify. *See United Parcel Serv., Inc.*, 2016 WL 4735368, at *1 (excluding one party's expert while permitting testimony at trial of other party's experts who satisfied the mandates of Fed. R. Evid. 702); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 256–57 (S.D.N.Y. 2014) (excluding one side's expert for lack of qualifications but allowing the other side's two qualified experts because "the preclusion of one party's expert does not result in the automatic preclusion of the adverse party's expert on similar topics"); *THOIP v. Walt Disney*

---

[24] Defs.' MIL Opp'n 13, 19–20.

*Co.*, 690 F. Supp. 2d 218, 235–242 (S.D.N.Y. 2010) (precluding one expert witness due to the

defects in methodology of his survey while permitting opposing expert after dueling motions *in*

*limine*).  Rather, the Court's exercise of its gatekeeper role is to ensure the reliability of the

expert testimony as well as justice and efficiency in the trial:

> In short, pre-trial rulings can enhance fairness as well as efficiency
> by informing sensible trial adjustments.  Pre-trial rulings may also
> enable parties to assess the risk/reward profile of a case on a real-
> time basis.  If a court will preclude an expert, it is generally better
> to know that sooner rather than later.  Simply put, fair warning has
> value.

*United Parcel Serv., Inc.*, 2016 WL 4735368, at *1.

Here, the Court properly exercised its discretion to exclude Weingarten's testimony and

that decision should not be disturbed where the Court considered the arguments and provided a

sound basis to exclude the testimony consistent with the mandates of Fed. R. Evid. 702 and

*Daubert*—the failure to provide methodologies and analyses to link his experience to his

conclusions.  *See Amorigianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 264, 268–270

(2d Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that

absent a showing of manifest error, a decision to exclude expert testimony will not be

overturned; district court's exclusion of expert testimony was affirmed where it rested on a sound

basis for each of its carefully circumscribed exclusions)).  *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S.

136, 141–42 (1997) (holding that abuse of discretion is the proper and ordinary standard

applicable to evidentiary rulings, including a district court's decision to admit or exclude

experts); *U.S. v. Williams*, 506 F.3d 151, 159–160 (2d. Cir. 2007) (explaining that the district

court's role is the "ultimate 'gatekeeper,'" giving it "the task of ensuring that an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand" (citations

omitted)); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995) ("The decision to

admit expert testimony is left to the broad discretion of the trial judge and will be overturned

only when manifestly erroneous.").

## II.    WEINGARTEN WAS GIVEN A FULL OPPORTUNITY TO OPINE ON ISSUES OF DUE DILIGENCE TRIGGERS AND REACTIVE DUE DILIGENCE BUT FAILED TO ADDRESS IT

Defendants argue that "the Court did not expressly consider whether Weingarten should

be permitted to respond to Pomerantz's testimony regarding due diligence triggers and reactive

due diligence" in its decision to exclude Weingarten's opinions and testimony.[25]  Thus,

Defendants' claim the Court has excluded Weingarten's opinion and testimony as inadmissible

as to one issue (initial and on-going due diligence), but overlooked its relevance and

admissibility with respect to another issue (due diligence triggers and reactive due diligence).[26]

This argument distorts and misstates the Court's opinion.

The Court ruled that the opinions in Weingarten's Initial Report were inadmissible

because they "dealt with the general subject of appropriate due diligence . . . [which] is

inadmissible."[27]  The Court then specifically addressed Weingarten's passing reference to due

diligence triggers and reactive due diligence in his rebuttal report and found it not relevant to the

inquiry of Merkin's willful blindness, *i.e.*, what Merkin knew or suspected.  The Court's opinion

provides:

> ### 3.    The Rebuttal Reports
>
> The brief *Weingarten Rebuttal* responded to the *Pomerantz Report*, the majority of which will be excluded.  It included a statement, *possibly in response to the Pomerantz Report's discussion of due diligence triggers*, that the "concerns" about BLMIS' accounting firm, the manual confirmations and the issue of self-clearing were "publicly known and discussed at the time," but did not dissuade

---

[25] Defs.' Mot. to Reargue 2.

[26] *Id.* at 4.

[27] MIL Decision 18.

> some of the most sophisticated investors from investing with
> Madoff. (*Weingarten Rebuttal* at 2.) However, Weingarten is not
> being offered as an expert in what was publicly known, and
> moreover, the question is what Merkin knew, not what the public
> knew. Merkin and others with first-hand knowledge are in the best
> position to testify regarding what Merkin knew or suspected, and the
> *Weingarten Rebuttal* will be excluded.[28]

Weingarten's reference to due diligence triggers was considered by the Court and determined to be inadmissible.

Weingarten cannot now offer new expert opinion to address due diligence triggers and reactive due diligence that he did not previously offer. Weingarten was well aware of Pomerantz's opinions and had the opportunity to rebut the opinions on due diligence triggers and reactive due diligence. Defendants received Pomerantz's report in March 2015. Pomerantz offered 16 pages of analysis and opinion on due diligence triggers and reactive due diligence. Thereafter, Weingarten had a full opportunity to provide his opinions on due diligence triggers and reactive due diligence before issuing his rebuttal report. Weingarten chose not to do so; rather, Weingarten submitted essentially the same conclusory narrative as in his initial report and included only a passing reference to publicly known concerns.[29]

Defendants' last salvo that Weingarten should be permitted to testify because he may have reviewed the same documents as Pomerantz is perplexing. Review of the same documents, even if true, does not cure the deficiencies in Weingarten's opinions, namely the lack of methodology and analyses. In any event, the record belies Defendants' assertion that "both Weingarten and Pomerantz considered the same facts and circumstances" on the "limited remaining issue."[30] Weingarten, unlike Pomerantz, only reviewed the testimony of Merkin and

---

[28] *Id.* at 20–21 (emphasis in original and added).

[29] Weingarten Rebuttal Rpt. 3–4.

[30] Defs.' Mot. to Reargue 5.

Mr. Michael Autera and failed to consider the deposition testimony of a single third party

witness.[31]  When asked if he had reviewed any deposition transcripts other than those disclosed

on his documents considered list, he could only recall reading Pomerantz's testimony.[32]  When

asked specifically about the Primeo comparison of a Madoff feeder to the S&P 500 during his

deposition, he could not remember seeing it.[33]  When asked about the Bayou fraud, Weingarten

conceded that he was "[n]ot very familiar with it" and that he was "not aware of . . . I don't recall

that there was a document sent out by Ezra Merkin that was immediately following the

identification of a Ponzi scheme."[34]

　　　　Weingarten did not address the opinions on due diligence triggers and reactive due

diligence with more than a passing reference to public concerns about BLMIS in the industry.

Expert discovery closed in July 2015.  Defendants should not get a second attempt at expert

testimony to address proper and timely opinions by Pomerantz that they previously chose not to

rebut for their own strategic reasons.

## III.　DEFENDANTS' MOTION FOR RECONSIDERATION IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED.

　　　　Defendants' Motion improperly asks this Court to permit Weingarten to testify on new

matters never disclosed in the Reports, as discussed above.  Experts should not testify beyond the

---

[31] *See* Initial Rpt., Ex. B (Jeffrey M. Weingarten Documents Considered).  Defendants seem to suggest that Weingarten's review of the allegations in the Trustee's Third Amended Complaint is sufficient to show that Mr. Weingarten considered and relied upon a fact.  However, much of the key witness testimony, including those from Research Company A and Joel Ehrenkranz, was not referenced in the complaint as it did not come to light until discovery.

[32] Hoang Decl., Ex. 2 (Tr. of Jeffrey Weingarten Dep., July 15, 2015 ("Weingarten Dep.")), 123:3–23.

[33] *Id.* at 174:4–175:19.

[34] *Id.* at 199:10–200:20.

scope of his or her expert disclosures.  As this Court advised at argument: "you know, that

[Weingarten] shouldn't be able to supplement his report by coming to trial and expanding it."[35]

The very purpose behind the expert disclosure rules is to prevent surprise or ambush at

trial.  *Whalen v. CSX Transp., Inc.*, 2016 WL 5660381, at *3 (S.D.N.Y. Sept. 29, 2016) (citation

omitted).  An expert witness must provide "a complete statement of all opinions to be expressed

and the basis and reasons therefor," so the opposition knows what to expect and can decide

whether to depose the expert.  *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5–6

(S.D.N.Y. Dec. 18, 2009) (citation omitted).

Experts are not permitted to supplement their reports to "fill in significant and logical

gaps" from previous reports because it would eviscerate "the purpose of the expert disclosure

rules."  *In re Point Prods.*, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (precluding

admission of new expert affidavits after the close of discovery).  Experts are also not free to

"bolster, strengthen, or improve their reports by endlessly researching the issues they already

opined upon, or to continually supplement their opinions."  *Sandata Techs., Inc. v. Infocrossing,*

*Inc.*, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007) (precluding the admission of two

supplemental expert reports).  Because if experts were permitted to do this, expert discovery

would never close and parties would need to depose an expert multiple times.  *See id.*  As such,

courts are unwilling to permit supplemental reports and new opinions especially when the

information was previously known or available, as here, to the expert.  *Lidle*, 2009 WL 4907201,

at *6 (granting motion to strike supplemental or rebuttal report of expert).

Defendants were aware since March 2015 that Pomerantz was offering opinions on due

diligence triggers and reactive due diligence.  Defendants strategically decided not to address the

---

[35] MIL Hr'g Tr. 37:8–10.

16 pages offered by Pomerantz with anything more than Weingarten's passing reference to

public concerns about BLMIS in the industry.  Defendants should not now get the opportunity to

introduce new opinions through Weingarten, to supplement his prior opinions, or to fill in the

missing gaps or provide an analysis on issues they chose not to address.  Granting Defendants'

request to introduce this additional expert testimony, almost three years after the close of expert

and all discovery, is improper and prejudicial to the Trustee.  There have been 8 years of

litigation and 20 case management orders—this case is ready for trial.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny Defendants'

Motion.

Dated:   March 1, 2018
         New York, New York

BAKER & HOSTETLER LLP

/s Lan Hoang

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*