# Exhibit G

**EXHIBIT A**

**SETTLEMENT AGREEMENT BETWEEN
TRUSTEE AND SETTLING DEFENDANTS**

SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated as of July 25, 2011, is made by and among IRVING H. PICARD (the "Trustee"), in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, et. seq., as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff"), pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); TREMONT GROUP HOLDINGS, INC. ("Tremont Group"); TREMONT PARTNERS, INC. ("Tremont Partners"); TREMONT (BERMUDA) LIMITED ("Tremont Bermuda"); RYE SELECT BROAD MARKET FUND, LP ("Broad Market Fund"); RYE SELECT BROAD MARKET PRIME FUND, L.P. ("Prime Fund"); RYE SELECT BROAD MARKET PORTFOLIO LIMITED ("Portfolio Limited") (Broad Market Fund, Prime Fund, and Portfolio Limited collectively shall be referred to herein as the "Rye Funds"); RYE SELECT BROAD MARKET INSURANCE FUND, L.P. ("Rye Insurance"); RYE SELECT BROAD MARKET XL FUND, L.P. ("XL LP"); TREMONT ARBITRAGE FUND, L.P.; TREMONT ARBITRAGE FUND IRELAND; TREMONT EMERGING MARKETS FUND – IRELAND; TREMONT EQUITY FUND – IRELAND; TREMONT INTERNATIONAL INSURANCE FUND, L.P.; TREMONT LONG/SHORT EQUITY FUND, L.P.; TREMONT MARKET NEUTRAL FUND, L.P.; TREMONT MARKET NEUTRAL FUND II, L.P.; TREMONT MARKET NEUTRAL FUND LIMITED; TREMONT OPPORTUNITY FUND LIMITED; TREMONT OPPORTUNITY FUND II, L.P.; TREMONT OPPORTUNITY FUND III, L.P.; RYE SELECT EQUITIES FUND; TREMONT MULTI MANAGER FUND; LIFEINVEST OPPORTUNITY FUND LDC (the foregoing entities not otherwise defined collectively shall be referred to herein as the "Tremont Funds"); OPPENHEIMER ACQUISITION CORP. ("Oppenheimer"); MASSMUTUAL HOLDING LLC

("MassMutual Holding"); MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY ("MassMutual") (Oppenheimer, MassMutual Holding, and MassMutual collectively shall be referred to herein as the "Parent Defendants"); ROBERT I. SCHULMAN ("Schulman") (Tremont Group, Tremont Partners, Tremont Bermuda, the Rye Funds, Rye Insurance, XL LP, the Tremont Funds, and Schulman collectively shall be referred to herein as the "Tremont Defendants"); and RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LDC ("Insurance Portfolio LDC"). The Tremont Defendants, the Parent Defendants, and Insurance Portfolio LDC collectively shall be referred to herein as the "Settling Defendants." Each of the Settling Defendants and the Trustee shall be referred to herein from time to time as a "Party" and, collectively, as "Parties".

## BACKGROUND

A.    BLMIS and its predecessor were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff. On December 12, 2008, the District Court entered an order which, among other things, appointed a receiver for the assets of BLMIS (No. 08-CV-10791 (LSS)).

C.    On December 11, 2008, Madoff was arrested by federal agents for criminal securities laws violations including securities fraud, investment adviser fraud, and mail and wire fraud. At a plea hearing on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213 (DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York and admitted that he

2

"operated a Ponzi scheme through the investment advisory side of [BLMIS]" and engaged in fraud in the operation of BLMIS. On June 29, 2009, Madoff was sentenced to 150 years in prison.

D.    On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee to liquidate the business of BLMIS under section 5(b)(3) of SIPA, discharged the receiver, and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of both the estate of BLMIS and the estate of Madoff pursuant to the substantive consolidation order of the Bankruptcy Court entered on June 9, 2009.

E.    Pursuant to Section 78fff-1(a) of SIPA, Trustee has the general powers of a bankruptcy trustee in a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") as well as the powers granted pursuant to SIPA. Chapters 1, 3, 5 and subchapters I and II of Chapter 7 of the Bankruptcy Code apply to this SIPA proceeding to the extent consistent with SIPA.

F.    Under SIPA, the Trustee is charged with the responsibility to marshal and liquidate the assets of BLMIS for distribution to BLMIS customers and others in accordance with SIPA in satisfaction of allowed claims, including through the recovery of avoidable transfers such as preference payments and fraudulent transfers made by BLMIS.

3

G.    Broad Market Fund was a customer of BLMIS and maintained BLMIS customer account number 1T0027 commencing in or around 1994. The Trustee alleges that between the opening of the account and the Filing Date, on an overall basis, Broad Market Fund deposited in its BLMIS customer account One Billion Six Hundred Forty-Seven Million Six Hundred Eighty-Seven Thousand Six Hundred Twenty-Five Dollars ($1,647,687,625.00) in excess of the amount of withdrawals that Broad Market Fund made during the life of its account (the "Broad Market Fund Net Loss"); Broad Market Fund withdrew Forty Million Dollars ($40,000,000.00) from its BLMIS account within ninety days of the Filing Date and an additional Two Hundred Twelve Million Dollars ($212,000,000.00) during the period more than ninety days, but less than six years, before the Filing Date from its BLMIS customer account; and in total, Broad Market Fund withdrew Two Hundred Fifty-Two Million Dollars ($252,000,000.00) from BLMIS account 1T0027 during the period less than six years before the Filing Date and Three Hundred Eighty-Four Million One Hundred Forty Thousand Dollars ($384,140,000.00) during the life of its BLMIS customer account.

H.    Prime Fund was a customer of BLMIS and maintained BLMIS customer account number 1C1260 commencing in or around 1997. The Trustee alleges that between the opening of the account and the Filing Date, on an overall basis, Prime Fund withdrew from its BLMIS customer account a total of Two Hundred Ten Million Nine Hundred Fifty-Five Thousand Dollars ($210,955,000.00) in excess of the amount of deposits that Prime Fund made during the life of its account (the "Prime Fund Net Gain"); Prime Fund withdrew Nine Hundred Forty-Five Million Dollars ($945,000,000.00) during the period less than six years before the Filing Date; and in total, Prime Fund withdrew One Billion Ten Million Dollars ($1,010,000,000.00) during the life of its BLMIS customer account.

4

I.     Portfolio Limited was a customer of BLMIS and maintained BLMIS customer account 1FR080 commencing in or around 2001. The Trustee alleges that between the opening of the account and the Filing Date, on an overall basis, Portfolio Limited deposited in its BLMIS customer account Four Hundred Ninety-Eight Million Four Hundred Ninety Thousand Ninety Dollars and Eighty-Eight Cents ($498,490,090.88) in excess of the amount of withdrawals that Portfolio Limited made during the life of its account (the "Portfolio Limited Net Loss"); Portfolio Limited withdrew Two Hundred Seventy-Five Million Six Hundred Eighty-Nine Thousand One Hundred Three  Dollars and Two Cents ($275,689,103.02) from its BLMIS customer account during the period within ninety days of the Filing Date and an additional Three Hundred Forty-Two Million Two Hundred Fifty-Five Thousand Three Hundred Eighty-Nine Dollars and Ninety-Seven Cents ($342,255,389.97) during the period more than ninety days but  less than six years before the Filing Date from its BLMIS customer account; and in total, Portfolio Limited withdrew Six Hundred Seventeen Million Nine Hundred Forty-Four Thousand Four Hundred Thirty-One Dollars and Ninety-Nine Cents ($617,944.431.99) from BLMIS account 1FR080 during the period less than six years before the Filing Date and Six Hundred Twenty-Eight Million Two Hundred Thirty-One Thousand Nine Hundred Nine Dollars and Twelve Cents ($628,231,909.12) during the life of its BLMIS customer account.

J.     Rye Insurance was a customer of BLMIS and maintained BLMIS account number 1R0252 commencing in or around 2008 with a deposit of Forty Million Dollars ($40,000,000.00) ("Rye Insurance Net Loss") to its customer account. Rye Insurance made no withdrawals from its BLMIS customer account.

K.     Insurance Portfolio LDC was a customer of BLMIS and maintained BLMIS customer account number 1FR010 commencing in or around 1997. The Trustee alleges that

5

between the opening of the account and the Filing Date, on an overall basis, Insurance Portfolio LDC deposited in its BLMIS customer account Sixty Two Million Three Hundred Seven Thousand Eight Hundred Twenty-Three Dollars and Thirteen Cents ($62,307,823.13) in excess of the amount of withdrawals that Insurance Portfolio LDC made during the life of its account (the "Insurance Portfolio LDC Net Loss"); Insurance Portfolio LDC withdrew Eight Million Nine Hundred Thirteen Thousand Two Hundred Twenty-Eight Dollars and Two Cents ($8,913,228.02) from its BLMIS customer account during the period within ninety days of the Filing and an additional Eighty Five Million Nineteen Thousand Sixty One Dollars and Fifty-Three Cents ($85,019,061.53) during the period more than ninety days but less than six years before the Filing Date; and in total, Insurance Portfolio LDC withdrew Ninety Three Million Nine Hundred Thirty Two Thousand Two Hundred Eighty Nine Dollars and Fifty-Five Cents ($93,932,289.55) from BLMIS account 1FR010 during the period less than six years before the Filing Date and One Hundred Thirty Million One Hundred Fifty-Two Thousand One Hundred Seventy-Six Dollars and Eighty-Seven Cents ($130,152,176.87) during the life of its BLMIS customer account. Insurance Portfolio is currently in liquidation in the Grand Court of the Cayman Islands, and Messrs. Richard Fogerty and James Cleaver of Zolfo Cooper have been appointed as official liquidators.

L.      Each of the Rye Funds, Rye Insurance, and Insurance Portfolio LDC had direct accounts with BLMIS. Below is a chart that summarizes the alleged 90-Day Preferential Transfers, 2-Year Fraudulent Transfers, 6-Year Fraudulent Transfers, and Full History Fraudulent Transfers (as such terms are defined below) made from BLMIS to Broad Market Fund, Prime Fund, Portfolio Limited, Rye Insurance, and Insurance Portfolio LDC which the Trustee seeks to avoid and recover in the Adversary Proceeding (as defined below).

6

| Account Number | Account Name | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Transfers | Full History Fraudulent Transfers |
|---|---|---|---|---|---|
| 1T0027 | RYE SELECT BROAD MARKET FUND, LP | 40,000,000 | 60,000,000 | 252,000,000 | 384,140,000 |
| 1C1260 | RYE SELECT BROAD MARKET PRIME FUND, LP | - | 495,000,000 | 945,000,000 | 1,010,000,000 |
| 1FR080 | RYE SELECT BROAD MARKET PORTFOLIO LIMITED | 275,689,103 | 354,571,757 | 617,944,432 | 628,231,909 |
| 1R0252 | RYE SELECT BROAD MARKET INSURANCE FUND LP | - | - | - | - |
| 1FR010 | RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LDC | 8,913,228 | 50,060,603 | 93,932,290 | 130,152,177 |
| | Total: | $324,602,331 | $959,632,359 | $1,908,876,722 | $2,152,524,086 |

M.     On December 7, 2010, the Trustee brought an adversary proceeding in the Bankruptcy Court under the caption Picard v. Tremont Group Holdings, *et al.*, Adv. Pro. No. 10-05310 (the "Adversary Proceeding") against the Tremont Defendants, the Parent Defendants, Insurance Portfolio LDC, and two other defendants not parties to this Agreement.     In the Adversary Proceeding, the Trustee asserts a number of claims against the Settling Defendants, including claims that certain of the Settling Defendants are liable to the BLMIS estate under 11 U.S.C. § 544, 547, 548, 550, SIPA § 78fff(2)(c)(3), and the New York Debtor and Creditor Law § 270-281 for approximately $2.1 billion in avoidable transfers from BLMIS to them during the history of their relationship with BLMIS ("Full History Fraudulent Transfers"), including a total of approximately $1.9 billion within six years of the Filing Date ("6-Year Fraudulent Transfers"), $959.63 million within two years of the Filing Date ("2-Year Fraudulent Transfers"), and $324.6 million within 90 days of the Filing Date ("90-Day Preferential Transfers").     In the Adversary Proceeding, the Trustee has asserted, among other things, that the Rye Funds and Insurance Portfolio LDC are liable to the BLMIS estate under 11 U.S.C. § 547 and 550 for all 90-Day Preferential Transfers.     The Trustee also has asserted that the Rye Funds and Insurance Portfolio LDC are liable to the BLMIS estate under 11 U.S.C. § 548 and 550 for their 2-Year Fraudulent Transfers.     In addition, the Trustee has asserted that the Rye Funds and Insurance Portfolio LDC

are liable to the BLMIS estate under 11 U.S.C. § 544(b) and 550 and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270-281) for their 6-Year Fraudulent Transfers, as well as their Full History Fraudulent Transfers. In the Adversary Proceeding, the Trustee also has alleged that certain Settling Defendants were unjustly enriched due to their investments with BLMIS and the fees generated by those investments.

N.    In the Adversary Proceeding, the Trustee has asserted that Tremont Partners, as the general partner for Broad Market Fund and Prime Fund, is liable for the debts of Broad Market Fund and Prime Fund. Moreover, the Trustee has asserted that Tremont Group, Tremont Bermuda, Oppenheimer, MassMutual Holding, and MassMutual are jointly and severally responsible for the liabilities of all of the Rye Funds, as well as Insurance Portfolio LDC.

O.    In the Adversary Proceeding, the Trustee also has asserted that XL LP, the Tremont Funds, Oppenheimer, MassMutual Holding, MassMutual, and Schulman are liable to the Trustee as subsequent transferees of transfers made by BLMIS to the Rye Funds and Insurance Portfolio LDC, and thus as recipients of customer property that allegedly was transferred from BLMIS through transfers avoidable under 11 U.S.C. § 544, 547, 548, and/or the New York Debtor and Creditor Law § 273-281, and recoverable under 11 U.S.C. § 550.

P.    All claims of the Trustee under 11 U.S.C. §§ 544, 547, 548 or 550 and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

Q.    The Settling Defendants have disputed any wrongdoing or liability to the BLMIS estate. The Rye Funds and Insurance Portfolio LDC have asserted that they took all withdrawals or redemptions from BLMIS for value, in good faith, and without knowledge of their voidability. The Tremont Funds and XL LP  also assert that any withdrawals or redemptions from the Rye

8

Funds or Insurance Portfolio LDC were for value, in good faith, and without knowledge of their voidability.

R.    Schulman denies that he received any subsequent transfers and asserts that any withdrawals or fees earned by him were for value, in good faith, and without knowledge of their voidability.

S.    The Parent Defendants dispute that they received, directly or indirectly, any voidable transfers or that they have any liability for the actions of any of the other Settling Defendants or the other defendants in the Adversary Proceeding.

T.    Broad Market Fund filed a customer claim in the SIPA Proceeding (assigned claim number 6237) (the "Broad Market Fund SIPA Claim") alleging a loss of One Billion Six Hundred Thirty-Nine Million One Hundred Seventy-One Thousand Six Hundred Twenty-Five Dollars ($1,639,171,625.00). The Broad Market Fund SIPA Claim asserts Broad Market Fund is entitled to an allowance of a customer claim in the SIPA Proceeding in an amount reflected on Broad Market Fund's BLMIS account statement for the period ending November 30, 2008.

U.    Prime Fund filed a customer claim in the SIPA Proceeding (assigned claim numbers 11041 and 13043) (the "Prime Fund SIPA Claim") alleging a loss of Four Million Forty-Five Thousand Dollars ($4,045,000.00). The Prime Fund SIPA Claim asserts Prime Fund is entitled to an allowance of a customer claim in the SIPA Proceeding in an amount reflected on Prime Fund's BLMIS account statement for the period ending November 30, 2008. The Prime Fund, SIPA Claim was denied in a Letter of Determination dated October 8, 2010. The Prime Fund did not file an objection to that Letter of Determination.

V.    Portfolio Limited filed a customer claim in the SIPA Proceeding (assigned claim number 6238) (the "Portfolio Limited SIPA Claim") alleging a loss of Five Hundred Seven

9

Million Seven Hundred Twenty-Two Thousand Dollars ($507,722,000.00). The Portfolio Limited SIPA Claim asserts Portfolio Limited is entitled to an allowance of a customer claim in the SIPA Proceeding in an amount reflected on Portfolio Limited's BLMIS account statement for the period ending November 30, 2008.

W.    Rye Insurance filed a customer claim in the SIPA Proceeding (assigned claim number 6255) (the "Rye Insurance SIPA Claim") alleging a loss of Forty Million Dollars ($40,000,000.00). The Rye Insurance SIPA Claim asserts Rye Insurance is entitled to an allowance of a customer claim in the SIPA Proceeding in an amount reflected on Rye Insurance's BLMIS account statement for the period ending November 30, 2008.

X.    Insurance Portfolio LDC filed a customer claim in the SIPA Proceeding (assigned claim number 6230) (the "Insurance Portfolio LDC SIPA Claim") alleging a loss of Fifty-One Million Four Hundred Sixty Thousand Dollars ($51,460,000.00). The Insurance Portfolio LDC SIPA Claim asserts Insurance Portfolio LDC is entitled to an allowance of a customer claim in the SIPA Proceeding in an amount reflected on Insurance Portfolio LDC's BLMIS account statement for the period ending November 30, 2008.

Y.    In the Adversary Proceeding, the Trustee sought to equitably subordinate certain of the filed claims in the SIPA Proceeding.

Z.    While the Trustee believes that he would prevail at trial in recovering all initial transfers from BLMIS and subsequent transfers to the Tremont Funds or from the other Settling Defendants, he also recognizes that there is in any adversary proceeding litigation risk, risk of collection, and delay in payment associated with his Avoiding Power Claims.

AA.    While the Settling Defendants believe they have complete defenses to a number of claims asserted by the Trustee, the Settling Defendants recognize that there is litigation cost and

10

risk associated with the Avoiding Power Claims and have decided to settle with the Trustee prior to engaging in expensive and time-consuming litigation in the action brought against them by the Trustee.

BB.    Based on the foregoing, the Trustee and the Settling Defendants wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation. The Settling Defendants are entering into this Agreement to fully resolve these matters and without any concession of fault or liability on the part of any defendant.

CC.    As part of resolving this litigation, the Trustee and the Bankruptcy Court, upon approval of this Agreement, will allow the Broad Market Fund, SIPA Claim, the Portfolio Limited, SIPA Claim, the Rye Insurance SIPA Claim, and the Insurance Portfolio LDC SIPA Claim against the BLMIS estate in the SIPA Proceeding (collectively, the "Customer Claims"), without any subordination of the Customer Claims. As a condition to settling all disputes between the Trustee and the Settling Defendants, and in accordance with the terms of this Agreement set forth below, the Trustee shall allow the Customer Claims and shall agree that the Customer Claims shall not be subordinated in priority to any other allowed customer claims in the SIPA Proceeding.

DD.    In determining to settle the disputes, which involves releasing claims against the Settling Defendants and the allowance of the Customer Claims in favor of Broad Market Fund, Portfolio Limited, Rye Insurance, and Insurance Portfolio LDC in the SIPA Proceeding, the Trustee conducted a comprehensive investigation. The investigation included the review of all BLMIS-related transaction histories for the Tremont Defendants and Insurance Portfolio LDC, interviews of witnesses, account statements, correspondence, other records, Bankruptcy Rule 2004 examinations and substantial review and analysis of records and documents produced by the Tremont Defendants and third parties.

11

EE.    Should this Agreement be approved by the Bankruptcy Court, there will be only two defendants remaining in the Adversary Proceeding: Rye Select Broad Market XL Portfolio Limited and Sandra L. Manzke.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

TERMS

1.    <u>Submission to Bankruptcy Court Jurisdiction</u>.  Each Settling Defendant hereby submits to the jurisdiction of the Bankruptcy Court for the purpose of the Adversary Proceeding and the approval and enforcement of this Agreement.  The Settling Defendants' submission to the jurisdiction of the Bankruptcy Court under this paragraph does not constitute an agreement, admission or denial that any Settling Defendant is subject to the Bankruptcy Court's jurisdiction for any other purpose.

2.    <u>Cash Payment</u>.  The Settling Defendants other than Insurance Portfolio LDC shall cause One Billion Dollars ($1,000,000,000) (the "Tremont Settlement Payment") in cash to be paid to the Trustee for the benefit of the BLMIS estate at the Closing (as defined in Paragraph 10 below).

3.    <u>Cash Payment by Insurance Portfolio LDC</u>.  Insurance Portfolio LDC shall cause Twenty-Five Million Dollars ($25,000,000) (the "Insurance Portfolio LDC Settlement Payment," and, together with the Tremont Settlement Payment, the "Settlement Payments") in cash to be paid to the Trustee for the benefit of the BLMIS estate at the Closing (as defined in Paragraph 10 below). Insurance Portfolio LDC and the Trustee shall issue a joint payment instruction to The Bank of New York Mellon to transfer all cash balances held in accounts in the name of Insurance Portfolio LDC to the Trustee in partial satisfaction of the Insurance Portfolio LDC Settlement Payment.

12

4.    _Effect of Settlement Payments_.  It is expressly understood between the Parties that the

Settlement Payments shall not, and are not, intended to release, waive, prejudice, or limit the

Trustee's rights and ability to pursue any actions or claims, including, but not limited to, recovery

actions under Section 544, 547, 548 and 550 of the Bankruptcy Code, available to him against any

non-party to this Agreement, including, but not limited to, any of the entities specifically set forth

at Exhibit A to this Agreement which is expressly incorporated by reference herein.

5.    _Allowance of Customer Claims: Broad Market Fund, Portfolio Limited, and Rye Insurance_.

Effective as of the Closing, and notwithstanding Section 502(d) of the Bankruptcy Code, the

following Customer Claims against the BLMIS estate shall be deemed conclusively allowed:  (a)

the Broad Market Fund SIPA Claim shall be allowed in the amount of One Billion Six Hundred

Forty-Seven Million, Six Hundred Eighty-Seven Thousand Six Hundred Twenty-Five Dollars

($1,647,687,625.00); (b) the Portfolio Limited SIPA Claim shall be allowed in the amount of Four

Hundred Ninety-Eight Million Four Hundred Ninety Thousand Dollars and Eighty-Eight Cents

($498,490,000.88); and (c) the Rye Insurance SIPA Claim shall be allowed in the amount of Forty

Million Dollars ($40,000,000.00) (the total allowed amount of all such Customer Claims

collectively is referred to as the "POC Amount").  Upon payment of the Tremont Settlement

Payment in accordance with Paragraph 10, the allowed amount of the Broad Market Fund SIPA

Claim and the Portfolio Limited SIPA Claim shall be increased by the aggregate amount of Eight

Hundred Million Dollars ($800,000,000.00) (the "Additional Claim Amount").  The Additional

Claim Amount shall be allocated fairly and equitably by the Tremont Defendants between Broad

Market Fund and Portfolio Limited.  For the avoidance of doubt, after payment of the Tremont

Settlement Payment in accordance with Paragraph 10, the aggregate allowed POC Amount shall

be Two Billion Nine Hundred Eighty-Six Million One Hundred Seventy-Seven Thousand Seven

Hundred Fifteen Dollars and Eighty-Eight Cents ($2,986,177,715.88) (the "Total Allowed Claims Amount") and the aggregate allowed amount of the Broad Market SIPA Claim and the Portfolio Limited SIPA Claim shall be Two Billion Nine Hundred Forty-Six Million Eight Hundred Ninety-Three Thousand Six Hundred Twenty-Five Dollars ($2,946,893,625.00). None of the claims allowed pursuant to this paragraph may be subordinated in any respect to any other allowed customer claim in the SIPA Proceeding. Under no circumstances will the Total Allowed Claims Amount be increased. For the avoidance of doubt, subject to Paragraph 5b., if the Trustee recovers additional funds arising from transfers made by the Tremont Defendants to third party subsequent transferees, there shall not be any increase of the Total Allowed Claims Amount.

      5a.    <u>SIPA Advances</u>. At the Closing, Broad Market Fund, Portfolio Limited, and Rye Insurance shall each receive from the Trustee Five Hundred Thousand Dollars ($500,000.00) as an advance from SIPC under Section 9 of SIPA, which amounts may be paid by set off against the Tremont Settlement Payment.

      5b.    <u>Potential Recalculation of Customer Claims</u>. Notwithstanding any other language in this Agreement, in the event that, as a result of a final, non-appealable judicial determination the amount of BLMIS customer claims are ultimately calculated based on the amounts reflected on a customer's BLMIS account statement for the period ending November 30, 2008, or to include other amounts beyond the difference between cash deposits into and cash withdrawals from the customer's BLMIS account (including, for example, if customers are entitled to receive interest on their deposits with BLMIS), the Customer Claim of each of Broad Market Fund, Portfolio Limited, and Rye Insurance shall be calculated in the same manner as all other nonsubordinated allowed customer claims in the SIPA

14

Proceeding. The Settlement Order (as defined below) shall provide for the allowance of the Customer Claim of each of Broad Market Fund, Portfolio Limited, and Rye Insurance as provided in this paragraph.

5c.    <u>Allocation to the Funds</u>. For purposes of this Agreement, the Tremont Defendants covenant that they will cause all payments received from the Trustee in respect of the Total Allowed Claims Amount to be fairly and equitably allocated among Broad Market Fund, Portfolio Limited, Rye Insurance, and their respective partners and/or investors. The Settling Defendants expressly agree on their own behalf, as well as on behalf of their shareholders, partners or investors, that the BLMIS estate, SIPC, the Trustee, the Trustee's agents, attorneys, accountants, and representatives, Schulman, and the Parent Defendants shall have no responsibility to insure the proper or correct payments to any investor, shareholder, member and/or partner in any fund managed by any of the Tremont Defendants.

5d.    <u>Single Agent for Customer Claims</u>. The Tremont Defendants shall appoint one single agent (the "Appointed Agent") for purposes of receiving distributions from the Trustee on behalf of the allowedCustomer Claims of Broad Market Fund, Portfolio Limited Fund, and Rye Insurance. For each distribution made by the Trustee from the BLMIS estate in which Broad Market Fund, Portfolio Limited Fund, and Rye Insurance are entitled to participate, the Trustee shall make one aggregate payment to the Appointed Agent. In accordance with Paragraph 5c., the Trustee shall have no responsibility for allocating such distributions beyond making such single payment.

15

6. <u>Allowance of Customer Claims: Insurance Portfolio LDC</u>. Effective as of the Closing, and notwithstanding Section 502(d) of the Bankruptcy Code, the Trustee shall allow a customer claim against the BLMIS estate in the amount of Seventy Seven Million Three Hundred Seven Thousand Eight Hundred Twenty Three Dollars and Thirteen Cents ($77,307,823.13) to Insurance Portfolio LDC. Under no circumstances will the amount of the allowed Insurance Portfolio LDC Customer Claim be increased or in any manner subordinated to any other allowed customer claim. For the avoidance of doubt, if the Trustee recovers additional funds arising from transfers made by Insurance Portfolio LDC to third party subsequent transferees, there shall not be any increase of the allowed Insurance Portfolio LDC customer claim.

6a. <u>SIPA Advance</u>. At the Closing, Insurance Portfolio LDC shall receive Five Hundred Thousand Dollars ($500,000.00) from the Trustee as an advance under Section 9 of SIPA, which amount may be paid by set off against the Insurance Portfolio LDC Settlement Payment.

6b. <u>Potential Recalculation of Customer Claim</u>. Notwithstanding any other language in this Agreement, in the event that, as a result of a final, non-appealable judicial determination the amount of BLMIS customer claims are ultimately calculated based on the amounts reflected on a customer's BLMIS account statement for the period ending November 30, 2008, or to include other amounts beyond the difference between cash deposits into and cash withdrawals from the customer's BLMIS account (including, for example, if customers are entitled to receive interest on their deposits with BLMIS), the Insurance Portfolio LDC customer claim shall be calculated in the same manner as other allowed customer claims. The Bankruptcy Court's order approving this Agreement shall provide for

16

the allowance of the Insurance Portfolio LDC customer claim as provided in this paragraph.

7.    <u>Agreement by Tremont Group, Tremont Partners, and Tremont Bermuda to Forego Any Profits</u> .  As part of this Agreement, Tremont Group, Tremont Partners, and Tremont Bermuda agree they shall not be entitled to any fees, profits, or expenses for their management or administration of any funds received, either directly or indirectly, or on behalf of, Broad Market Fund, Portfolio Limited, Rye Insurance, or Insurance Portfolio LDC, from the BLMIS estate.  In addition, except with respect to amounts needed to pay reasonable and necessary expenses associated with accounting, tax, legal, regulatory and other costs of winding up Tremont Group and its subsidiaries, all amounts received by Tremont Group, Tremont Partners, or Tremont Bermuda, either directly or indirectly, from any distribution made by the BLMIS estate to the Rye Funds, shall be distributed solely to investors in the Rye Funds and the Tremont Funds or as directed by the Tremont Group (other than to Tremont Group, Tremont Partners, or Tremont Bermuda), and shall not be paid or retained by Tremont Group, Tremont Partners, or Tremont Bermuda.

8.    <u>Release by Trustee</u>. In consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement and the Escrow Agreement, all of which are reserved, effective as of the Closing, the Trustee, in his capacity as such and on behalf of BLMIS, the BLMIS estate, and the Madoff estate, releases, remises and forever discharges (i) each Settling Defendant from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or

unknown, existing as of the date of the Closing, that are, have been, could have been or might in

the future be asserted by the Trustee, BLMIS, the BLMIS estate, and/or the Madoff estate for all

acts or omissions that were or could have been alleged in the Adversary Proceeding, the XL LP

Adversary Proceedings (as defined in Paragraph 12b. below), or any other action or proceeding or

that otherwise concern, relate to or arise out of any investments, direct or indirect, with BLMIS, or

Madoff, either directly or indirectly made by or through any of the Settling Defendants, and (ii) all

past or present directors, officers, employees, principals, successors, assigns, agents,

representatives, accountants, administrators, liquidators, and attorneys of each Settling Defendant

from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds,

bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever,

asserted or unasserted, known or unknown, existing as of the date of the Closing, that are, have

been, could have been or might in the future be asserted by the Trustee, BLMIS, the BLMIS estate,

and/or the Madoff estate for all acts or omissions that were or could have been alleged in the

Adversary Proceeding, the XL LP Adversary Proceedings (as defined in Paragraph 12b. below), or

any other action or proceeding or that otherwise concern, relate to or arise out of any investments,

direct or indirect, with BLMIS or Madoff, either directly or indirectly made by or through any of

the Settling Defendants. The release contained herein shall become effective Ninety One (91) days

after the payment of the Settlement Payment into the escrow account established at the Closing

without any further action by any of the Parties and without being subject to any further

obligations of the Settling Parties under the terms of this Agreement.

9.      Release of Trustee by Settling Defendants. In consideration for the covenants and

agreements set forth in this Agreement and for other good and valuable consideration, the receipt

and sufficiency of which is hereby acknowledged, except with respect to rights arising under this

Agreement and the Escrow Agreement, including without limitation the allowance of the Customer Claims hereunder, all of which rights are reserved, effective as of the Closing, each of the Settling Defendants hereby releases, acquits and absolutely discharges the Trustee and the Trustee's attorneys, professionals, agents and consultants, BLMIS and its consolidated estate, from any and all past, present or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), known or unknown, existing as of the date of the Closing, arising out of or in any way related to BLMIS, Madoff, the Rye Funds' or Insurance Portfolio LDC's BLMIS customer accounts.

10.    Closing. The closing (the "Closing") shall occur on a business day no later than seven (7) days after an order entered by the Bankruptcy Court approving this Agreement and the Escrow Agreement (as defined below) (the "Settlement Order") becomes a final order. The Settlement Order shall become a final order on the later of (a) the fifteenth (15th) day following entry thereof by the Bankruptcy Court, in the event no appeal therefrom has been noticed to a court of competent jurisdiction, or (b) on the date all timely appeals have been conclusively resolved upholding the Settlement Order. The Closing shall take place at the offices of Trustee's counsel in New York, New York. At the Closing: (a) the Parties shall execute a separate escrow agreement (the "Escrow Agreement") substantively in the form attached hereto as Exhibit B; (b) pursuant to the terms and conditions of the Escrow Agreement, the Settling Defendants shall cause the Settlement Payments

19

for the benefit of the Trustee to be made on the same day to a mutually agreed escrow agent ("Escrow Agent") appointed by the Parties under the Escrow Agreement; (c) pursuant to the terms and conditions of the Escrow Agreement, the Trustee shall cause to be paid on the same day to the Escrow Agent for the benefit of each of Broad Market Fund, Portfolio Limited, Rye Insurance and Insurance Portfolio LDC, respectively, (i) Five Hundred Thousand Dollars ($500,000.00) in SIPC advances under Section 9 of SIPA on account of each of their Customer Claims (aggregating to Two Million Dollars ($2,000,000.00)), and (ii) any *pro rata* distribution that would have been made on account of each of their Customer Claims had such claims been allowed in the Total Allowed Claims Amount at the time the Trustee had made any distribution to customers in the SIPA Proceeding, which amounts set forth in (i) and (ii) above may be paid by set off in whole or in part against the Tremont Settlement Payment and/or the Insurance Portfolio LDC Settlement Payment, as applicable (the "Set-Off Option"); and (d) the Settling Defendants shall be deemed to have delivered to the Escrow Agent each of the releases set forth in this Agreement. In the event the Settling Parties do not elect the Set-Off Option, as long as the Escrow Agreement is in effect, the Trustee shall, contemporaneously with any pro rata distributions that he makes after the Closing to customers holding allowed customer claims in the SIPA Proceeding, deposit with the Escrow Agent the amount of any pro rata distributions that the Trustee would have distributed to each of Broad Market Fund, Portfolio Limited, Rye Insurance, and Insurance Portfolio LDC on account of their respective Customer Claims in the Total Allowed Claims Amount, if such distributions were not subject to the terms of the Escrow Agreement. In the event the Settling Parties elect the Set-Off Option, as long as the Escrow Agreement is in effect, the Trustee shall, contemporaneously with any pro rata distributions that he makes after the Closing to customers holding allowed customer claims in the BLMIS SIPA proceeding, provide written instructions to

the Escrow Agent to release and distribute the specific dollar amount of any pro rata distributions that the Trustee would have distributed to each of Broad Market Fund, Portfolio Limited, Rye Insurance, and Insurance Portfolio LDC on account of their respective Customer Claims in the Total Allowed Claims Amount, if such distributions were not subject to the terms of the Escrow Agreement, to the Appointed Agent for the benefit of Broad Market Fund, Portfolio Limited, and Rye Insurance and to the official liquidators of Insurance Portfolio LDC for the benefit of Insurance Portfolio LDC.

11.    Termination of the Escrow.

11a.    If neither Broad Market Fund nor Portfolio Limited has voluntarily sought relief for protection, filed for liquidation, or is subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws as of the ninetieth (90th) day following the Closing or if either Broad Market Fund or Portfolio Limited becomes subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws and such petition is dismissed as of the ninetieth (90th) day following the Closing, the Escrow Agent shall deliver the payments, and be deemed to have delivered the escrowed releases to the respective beneficiaries thereof contemplated by this Agreement on the ninety-first (91st) day following the Closing without any further action of the Parties; and all of such releases shall become effective in accordance with their terms.

11b.    If either Broad Market Fund or Portfolio Limited has voluntarily sought relief for protection or filed for liquidation at any time prior to ninety (90) days following the Closing, or if either Broad Market Fund or Portfolio Limited becomes subject to a petition for involuntary relief under the Bankruptcy Code or

any other similar laws and such petition is not dismissed as of the ninetieth (90th) day following the Closing, then this Agreement (other than this paragraph and Paragraphs 23 and 24) shall terminate and become void, all of the releases, statements, consents, and agreements contained in the Agreement (other than in this paragraph and Paragraphs 18 and 19) shall become void, the Escrow Agent shall return all sums paid pursuant to the Escrow Agreement to the applicable Parties entitled thereto in accordance with the Escrow Agreement, and none of the Parties may use or rely on any such release, statement, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff; *provided that*, the Parties may, by a writing executed by all of them, and without the necessity for further notice or hearing before the Court, elect to waive this Paragraph 11b., and cause the settlement to become effective notwithstanding the occurrence of one or more conditions precedent to termination of this Agreement. Notwithstanding the foregoing, (i) the Trustee and Insurance Portfolio LDC may, by a writing and without further consent from the Tremont Defendants or the Parent Defendants, and without the necessity for further notice or hearing before the Court, elect to waive this Paragraph 11b., and cause the settlement to become effective as to Insurance Portfolio LDC notwithstanding the occurrence of one or more conditions precedent to termination of this Agreement and (ii) the Trustee and the Settling Defendants other than Insurance Portfolio LDC may, by a writing and without further consent from Insurance Portfolio LDC, and without the necessity for further notice or hearing before the Court, elect to waive

this Paragraph 11b., and cause the settlement to become effective as to the Settling

Defendants other than Insurance Portfolio LDC notwithstanding the occurrence of

one or more conditions precedent to termination of this Agreement.

12.    <u>Dismissal of Adversary Proceeding Claims with Prejudice.</u>

12a.    Within one (1) business day following the termination of the Escrow

pursuant to Paragraph 11a., the Trustee shall file a notice of dismissal dismissing

the Adversary Proceeding with prejudice as to each Settling Defendant and without

cost to any of the Parties. From the date of this Agreement through the termination

of the Escrow, the Adversary Proceeding shall be stayed as to each Settling Party

and no further actions may be taken by any of the Parties hereto.

12b.    Within one (1) business day following the termination of the Escrow

pursuant to Paragraph 11a., the Trustee shall file a notice of dismissal dismissing

the adversary proceedings commenced by the Trustee in the Bankruptcy Court

under the captions Picard v. ABN AMRO Bank N.A. (presently known as The

Royal Bank of Scotland, N.V.), et al., Adv. Pro. No. 10-05354, and Picard v. ABN

AMRO Bank (Ireland) Ltd. (f/n/a Fortis Prime Fund Solutions Bank (Ireland)

Limited), et al., Adv. Pro. No. 10-05355 (collectively, the "XL LP Adversary

Proceedings"), with prejudice as to XL LP and without cost to any of the Parties.

From the date of this Agreement through the termination of the Escrow, the XL LP

Adversary Proceedings shall be stayed as to XL LP and no further actions may be

taken by the Trustee or XL LP.

13.    <u>Representations.</u> In connection with the Tremont Defendants' cash payment of One Billion

Dollars ($1,000,000,000.00) at the time of Closing, each of Oppenheimer, MassMutual, and

MassMutual Holding represents that it will not cause, encourage, approve, or participate in the commencement of any insolvency or winding up proceeding by or against any Tremont Defendant, including without limitation under the Bankruptcy Code, nor otherwise seek to recover, directly or indirectly, from the Trustee any amounts paid pursuant to this Agreement, whether as a preference, fraudulent conveyance or other avoidable transfer. If the Trustee is ever legally compelled to return the Tremont Settlement Payment as a result of a breach of the representations in this paragraph 13, the release of Oppenheimer, MassMutual and MassMutual Holding provided in Paragraph 8 shall be withdrawn and of no force and effect. In such event, the Trustee reserves the right to pursue all of his rights and remedies, including, but not limited to, seeking disallowance of any claims in the SIPA Proceeding, and seeking the recovery of the payment amount, or any portion thereof, interest, and reasonable attorneys' fees and costs.

14.    <u>Bankruptcy Court Approval, Effective Date, Termination</u>. Subject to Paragraph 11b., this Agreement is subject to, and shall become effective, irrevocable and binding on the Parties only following (a) the Bankruptcy Court's approval of this Agreement and the Escrow Agreement and the entry of the Settlement Order, (b) the Settlement Order becoming a final order; and (c) the Closing. The form of the Settlement Order and the form of the Rule 9019 Motion (as defined below) shall be subject to the Settling Defendants' reasonable approval. The Trustee shall file a motion under Fed. R. Bankr. P. 9019 (the "Rule 9019 Motion") seeking approval of this Agreement and the Escrow Agreement and otherwise use his reasonable efforts to obtain entry of the Settlement Order as promptly as practicable after the date of this Agreement. If the Settlement Order has not been entered by the Bankruptcy Court within ninety (90) days after the filing of the Rule 9019 Motion or within such additional time as mutually agreed upon by the Parties, (a) this Agreement (other than this paragraph and Paragraphs 23 and 24) shall terminate and become void,

24

(b) all of the statements, consents and agreements contained in the Agreement (other than in this paragraph and Paragraphs 18 and 19) shall become void, and (c) none of the Parties may use or rely on any such statement, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff. There shall be no other basis for termination of this Agreement by any Party except under the provisions of Paragraph 11b. and this paragraph.

15.    Parties' Authority.  Each of the Settling Defendants that is not a natural person represents and warrants to the Trustee that, as of the date hereof, each of them is duly organized, validly existing, and in good standing under the laws of its jurisdiction of formation; that each of them has the full power, authority and legal right and has obtained any necessary consents, to execute and deliver, and to perform its respective obligations under, this Agreement; and has taken all necessary action to authorize the execution and delivery of, and the performance of its respective obligations under, this Agreement.  The Trustee represents and warrants to each Settling Defendant that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in Paragraph 14 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery and performance of his respective obligations under this Agreement.

16.    No Admission.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability or wrongdoing whatsoever as against the Settling Defendants.  It is expressly agreed by

25

the Tremont Defendants and the Parent Defendants that the transfers from BLMIS to each of the Rye Funds as set forth in Exhibit C to this Agreement, which is expressly incorporated by reference herein, are deemed avoided.

17.    Further Assurances. The Trustee and each of the Settling Defendants shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate this Agreement.

18.    Entire Agreement. This Agreement and the Escrow Agreement constitute the entire agreement and understanding between and among the Parties and together supersede all prior agreements, representations, and understandings concerning the subject matter hereof.

19.    Amendments, Waiver. This Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties, including, without limitation, a writing executed in accordance with Paragraph 11b.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision herein, whether or not similar, nor shall such waiver constitute a continuing waiver.

20.    Assignability. No Party hereto may assign its rights under this Agreement without the prior written consent of the other Parties hereto.

21.    Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

22.    No Third Party Beneficiary.  Except as expressly provided in this Agreement, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted  assigns.

26

23.    Governing Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to the application of New York's conflict of laws provisions.

24.    Jurisdiction.  The Parties agree that the Bankruptcy Court shall have jurisdiction over any action to enforce this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such actions.  The Parties agree that no party shall bring, institute, prosecute, or maintain any action or proceeding pertaining to the enforcement of any  provision of this Agreement in any court other than the Bankruptcy Court, unless and to the extent the Bankruptcy Court lacks jurisdiction over any such action or proceeding.

25.    Captions and Rules of Construction.  The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions.  Any reference in this Agreement to a paragraph is to a paragraph of this Agreement.  The use of the phrases "includes" and "including" are not limiting.

26.    Counterparts, Electronic Copy of Signatures.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document.  The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

27.    Termination of Agreements with BLMIS and the Trustee.  Effective as of the Closing, but subject to Paragraph 11b., except for this Agreement and the Escrow Agreement, each contract or

27

other agreement between any of the Settling Defendants and BLMIS or the Trustee shall terminate and shall have no force or effect, with no Party having liability thereunder to any other Party.

28.    _Notices_.  Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

28

If to the Trustee:

Irving H. Picard, Esq.
Email: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Fax: (212) 589-4201

With copies to:

David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc D. Powers
Email: mpowers@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

If to Tremont Defendants:

James G. McCormick
Email: jmccormick@tremont.com
Tremont Group Holdings, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 925-1143
Fax: (914) 925-4043

With copies to:

Seth M. Schwartz, Esq.
Email: seth.schwartz@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
Tel: (212) 735-2710
Fax: (917) 777-2710

If to the Broad Market Fund, Prime Fund,
Portfolio Limited, Rye Insurance, XL LP, and/or
each of the individual Tremont Funds:

James G. McCormick
Email: jmccormick@tremont.com
Tremont Group Holdings, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 925-1143
Fax: (914) 925-4043

With copies to:

Jamie B.W. Stecher, Esq.
Email: Stecher@thshlaw.com
Ralph A. Siciliano, Esq.
Email: Siciliano@thshlaw.com
Tannenbaum Helpern Syracuse & Hirschtritt LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6738
Fax: (212) 937-3621

29

If to Oppenheimer Acquisition Corporation:

Robert G. Zack
Vice President, Secretary and General Counsel
Oppenheimer Acquisition Corp.
225 Liberty Street
New York, New York 10281-1008
Email: bzack@oppenheimerfunds.com
Tel:  (212) 323-0250
Fax:  (212) 323-4070

With copies to:

William K. Dodds, Esq.
Email: William.dodds@dechert.com
Dechert LLP
1095 Avenue of the Americas
New York, New York  10036-6797
Tel: (212) 698-3557
Fax: (212) 698-3599

If to MassMutual Holding and/or Massachusetts
Mutual  Life Insurance Company:

David S. Allen, Esq.
Email: dallen5@massmutual.com
Massachusetts Mutual Life Insurance Company
1295 State Street
Springfield, MA 01111
Tel:  (413) 744-6414
Fax:  (413) 226-2074

With copies to:

Joseph L. Kociubes, Esq.
Email: joe.kociubes@bingham.com
Bingham McCutchen LLP
One Federal Street
Boston, Massachusetts  02110-1726
Tel: (617) 951-8337
Fax: (617) 428-6334

If to Insurance Portfolio LDC:

Gary S. Lee
Email: glee@mofo.com
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel: (212) 468-8042
Fax: (212) 468-7900

With copies to:

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

TREMONT GROUP HOLDINGS, INC.

_____
            Name:

            Title:

TREMONT PARTNERS, INC.

_____
            Name:

            Title:

TREMONT (BERMUDA) LIMITED

_____
            Name:

            Title:

RYE SELECT BROAD MARKET FUND, L.P.

_____
            Name:

            Title:

31

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

IRVING H. PICARD, Trustee

_____

TREMONT GROUP HOLDINGS, INC.

_____
Name: Lynn Keeshan

Title:  President

TREMONT PARTNERS, INC.

_____
Name: Lynn Keeshan

Title:  President

TREMONT (BERMUDA) LIMITED

_____
Name: Lynn Keeshan

Title:  President

RYE SELECT BROAD MARKET FUND, L.P.

_____
Name: Lynn Keeshan

Title:  President, Tremont Partners, Inc., Gen. Part.

31

RYE SELECT BROAD MARKET PRIME FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.


RYE SELECT BROAD MARKET PORTFOLIO
LIMITED

Name: Darren Johnston

Title:   Director


RYE SELECT BROAD MARKET INSURANCE FUND,
L.P.

Name: Lynn Keeshan

Title:   President, Tremont GP, Inc., Gen. Part.


RYE SELECT BROAD MARKET XL FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.


TREMONT ARBITRAGE FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont GP, Inc., Gen. Part.


32

TREMONT CAPITAL MANAGEMENT (IRELAND) LIMITED for and on behalf of its sub-fund TREMONT ARITRAGE FUND

Name: Lynn Keeshan

Title:   Director

TREMONT CAPITAL MANAGEMENT (IRELAND) LIMITED for and on behalf of its sub-fund TREMONT EMERGING MARKETS FUND

Name: Lynn Keeshan

Title:   Director

TREMONT CAPITAL MANAGEMENT (IRELAND) LIMITED for and on behalf of its sub-fund TREMONT EQUITY FUND

Name: Lynn Keeshan

Title:   Director

TREMONT INTERNATIONAL INSURANCE FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

33

TREMONT LONG/SHORT EQUITY FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.


TREMONT MARKET NEUTRAL FUND, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.


TREMONT MARKET NEUTRAL FUND II, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.


TREMONT MARKET NEUTRAL FUND LIMITED

Name: Darren Johnston

Title:   Director


TREMONT OPPORTUNITY FUND LIMITED

Name: Darren Johnston

Title:   Director

34

TREMONT OPPORTUNITY FUND II, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

TREMONT OPPORTUNITY FUND III, L.P.

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

RYE SELECT EQUITIES FUND

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

WALKERS SPV LIMITED, SOLELY IN ITS CAPACITY
AS TRUSTEE OF TREMONT MULTI MANAGER
FUND, A CLASS OF TREMONT ALTERNATIVE
INVESTMENT UNIT TRUST

Name:

Title:

LIFEINVEST OPPORTUNITY FUND LDC

Name:

Title:

35

TREMONT OPPORTUNITY FUND II, L.P.

_____

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

TREMONT OPPORTUNITY FUND III, L.P.

_____

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

RYE SELECT EQUITIES FUND

_____

Name: Lynn Keeshan

Title:   President, Tremont Partners, Inc., Gen. Part.

WALKERS SPV LIMITED, SOLELY IN ITS CAPACITY
AS TRUSTEE OF TREMONT MULTI MANAGER
FUND, A CLASS OF TREMONT ALTERNATIVE
INVESTMENT UNIT TRUST

_____

Name:                    Michelle Wilson-Clarke

Title:                    Authorised Signatory

LIFEINVEST OPPORTUNITY FUND LDC

_____

Name:

Title:

35

TREMONT OPPORTUNITY FUND II, L.P.

_____
Name:

Title:

TREMONT OPPORTUNITY FUND III, L.P.

_____
Name:

Title:

RYE SELECT EQUITIES FUND

_____
Name:

Title:

TREMONT MULTI MANAGER FUND

_____
Name:

Title:

LIFEINVEST OPPORTUNITY FUND LDC

_____
Name: Alan Milgate

Title: Director

35

MASSMUTUAL HOLDING LLC

_____
Name:

Title:


MASSACHUSETTS MUTUAL LIFE INSURANCE CO.

_____
Name:

Title:


ROBERT I. SCHULMAN

_____
Name:

Title:


RYE SELECT BROAD MARKET INSURANCE
PORTFOLIO, LDC

_____
Name:

Title:

35

OPPENHEIMER ACQUISITION CORP.

Name: _WILLIAM F. GLAVIN, Jr._

Title: _CHIEF EXECUTIVE OFFICER_
_PRESIDENT + MANAGING DIRECTOR_

MASSMUTUAL HOLDING LLC

Name:

Title:

MASSACHUSETTS MUTUAL LIFE INSURANCE CO.

Name:

Title:

ROBERT I. SCHULMAN

Name:

Title:

RYE SELECT BROAD MARKET INSURANCE
PORTFOLIO, LDC

Name:

Title:

36

OPPENHEIMER ACQUISITION CORP.

_____

Name:

Title:


MASSMUTUAL HOLDING LLC

_____

Name: JOSEPH L. KOCIUBES

Title: AUTHORIZED ATTORNEY


MASSACHUSETTS MUTUAL LIFE INSURANCE CO.

_____

Name: JOSEPH L. KOCIUBES

Title: AUTHORIZED ATTORNEY


ROBERT I. SCHULMAN

_____

Name:

Title:


RYE SELECT BROAD MARKET INSURANCE
PORTFOLIO, LDC

_____

Name:

Title:


36

OPPENHEIMER ACQUISITION CORP.

_____

Name:

Title:

MASSMUTUAL HOLDING LLC

_____

Name:

Title:

MASSACHUSETTS MUTUAL LIFE INSURANCE CO.

_____

Name:

Title:

ROBERT I. SCHULMAN

_____

Name:

Title:

RYE SELECT BROAD MARKET INSURANCE
PORTFOLIO, LDC

_____

Name: RICHARD E.L. FOGERTY

Title: JOINT OFFICIAL LIQUIDATOR

36

# EXHIBIT A

EXHIBIT A

ABN AMRO BANK N.

V. (n/k/a The Royal Bank of Scotland, N.V.)

ABN AMRO Incorporated

Austin Capital All Seasons ID Fund, Ltd.

Austin Capital Safe Harbor Fund, Ltd.

Austin Capital Safe Harbor ID Fund, Ltd.

Austin Capital All Seasons Master Account G.P.

Austin Capital Balanced Fund, Ltd.

Austin Capital Management Ltd.

Austin Capital Management G.P. Corp.

Austin Capital & Radix Sterling Fund, Ltd.

The Bank of Nova Scotia

BNP Paribas Arbitrage (Paris)

BNP Paribas Bank and Trust Cayman

BNP Paribas Securities Service

BNP Securities/Tavern

Citibank, N.A.

Citicorp North America, Inc.

Pictet et Cie

Pictet Asset Management SA

Pictet Capital SA

Pictet Funds SA

Pictet International Trust Corporation

Pictet North America Advisors SA

Pictet Investment SA

Silver Creek Capital Management L.L.C., its principals Eric Dillon and Tim Flaherty, and two managed funds, Long/Short Partners, L.P. and Long/Short Holdings, L.L.C.

ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.)

ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.)

HSBC Bank USA, N.A.

HSBC Bank plc,

37

**Transfers to ABN AMRO Entities**

- Transfers from Rye Select Broad Market Fund, L.P. to ABN Amro Bank NV, London Branch in November, 2008 totaling at least $1.4 million;

- Transfers from Rye Select Broad Market Portfolio Limited to ABN Amro Bank NV in October, 2008 totaling at least $11.63 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to ABN Amro Bank NV in the First Quarter of 2008 totaling at least $15.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to ABN Amro Bank NV in the Second Quarter of 2008 totaling at least $25.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to ABN Amro Bank NV in the Third Quarter of 2008 totaling at least $25.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to ABN Amro Bank NV, London Branch in the Fourth Quarter of 2007 totaling at least $7.5 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to ABN Amro Bank NV, London Branch in the First Quarter of 2008 totaling at least $15.0 million;

- Transfers from Rye Select Broad Market Portfolio Limited to ABN Amro Bank NV, London Branch in November 2008 totaling at least $4.26 million;

- Transfers from Rye Select Broad Market Portfolio Limited to ABN Amro Bank NV, London Branch in December 2008 totaling at least $33.574 million;

- Transfers from Rye Select Broad Market Portfolio Limited to ABN Amro Bank NV, London Branch in the Third Quarter of 2007 totaling at least $25.0 million;

- Transfers from Rye Select Broad Market XL Portfolio Limited to ABN Amro Bank NV, London Branch in the Fourth Quarter of 2006 totaling at least $52.0 million;

- Transfers from Rye Select Broad Market XL Portfolio Limited to ABN Amro Bank NV, London Branch in the First Quarter of 2007 totaling at least $44.0 million;

- Transfers from Rye Select Broad Market XL Portfolio Limited to ABN Amro Bank NV, London Branch in the Second Quarter of 2007 totaling at least $5.0 million;

- Transfers from Rye Select Broad Market XL Portfolio Limited to ABN NYC in the Second Quarter of 2007 totaling at least $4.0 million; and

- Transfers from Rye Select Broad Market XL Portfolio Limited to ABN NYC in the Third Quarter of 2007 totaling at least $6.0 million.

**Transfers to The Bank of Nova Scotia**

- Transfers from Rye Select Broad Market XLP Ltd to The Bank of Nova Scotia in the First Quarter of 2008 totaling at least $5.0 million;

- Transfers from Rye Select Broad Market XLF LP to The Bank of Nova Scotia in the Second Quarter of 2008 totaling at least $5.0 million; and

- Transfers from Rye Select Broad Market XLF LP to The Bank of Nova Scotia in the Third Quarter of 2008 totaling at least $30.0 million.

**Transfers to BNP Paribas Arbitrage (Paris)**

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Arbitrage (Paris) in the First Quarter of 2008 totaling at least $3.6 million; and

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Arbitrage (Paris) in the Second Quarter of 2008 totaling at least $2.85 million.

**Transfers to BNP Paribas Bank and Trust Cayman**

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Bank and Trust Cayman in the Third Quarter of 2007 totaling at least $600,000;

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Bank and Trust Cayman in the First Quarter of 2008 totaling at least $600,000;

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Bank and Trust Cayman in the Second Quarter of 2008 totaling at least $600,000;

- Transfers from Rye Select Broad Market XLP Ltd to BNP Paribas Bank and Trust Cayman in the Third Quarter of 2008 totaling at least $700,000;

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Bank and Trust Cayman in December 2008 totaling at least $625,000;

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Bank and Trust Cayman in the First Quarter of 2008 totaling at least $7.25 million;

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Bank and Trust Cayman in the Second Quarter of 2008 totaling at least $381,844; and

- Transfers from Rye Select Broad Market XLF LP to BNP Paribas Bank and Trust Cayman in the Third Quarter of 2008 totaling at least $1.98 million.

**Transfers to BNP Paribas Bank Trust-Ontario**

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Bank Trust-Ontario in June 2007 totaling at least $108,420; and

- Transfers from Rye Select Broad Market XLF LP to BNP Paribas Bank Trust-Ontario in the First Quarter of 2008 totaling at least $1.0 million.

**Transfers to BNP Paribas Securities Service**

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Securities Service in the First Quarter of 2008 totaling at least $1.0 million; and

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Paribas Securities Service in the Second Quarter of 2008 totaling at least $54,900.

**Transfers to BNP Securities/Tauern Redemption**

- Transfers from Rye Select Broad Market Portfolio Limited to BNP Securities/Tauern Redemption in June 2007 totaling at least $2.0 million.

**Transfers to Citibank N.A.**

- Transfers from Rye Select Broad Market Prime Fund, L.P. to Citibank, N.A. (or its agent) in March 2008 totaling at least $316.02 million.

**Transfers to Fortis Entities**

- Transfers from Rye Select Broad Market Fund L.P. to Fortis Prime Fund Solutions in the Third Quarter of 2008 totaling at least $30.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to Fortis Prime Fund Solutions in the Second of 2007 totaling at least $19.5 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to Fortis Prime Fund Solutions in the Third of 2007 totaling at least $86.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to Fortis Prime Fund Solutions in the First of 2008 totaling at least $125.0 million;

- Transfers from Rye Select Broad Market XL Fund, L.P. to Fortis Prime Fund Solutions in the Second of 2008 totaling at least $5.0 million; and

- Transfers from Rye Select Broad Market XL Portfolio Limited to Fortis Prime Fund Solutions in the First Quarter of 2008 totaling at least $2.0 million.

**Transfers to HSBC Bank plc**

- Transfers from Rye Select Broad Market XL Portfolio Limited to HSBC Bank plc in the Third Quarter of 2007 totaling at least $28.0 million;

- Transfers from Rye Select Broad Market XL Portfolio Limited to HSBC Bank plc in the Fourth Quarter of 2007 totaling at least $20.0 million;

40

- Transfers from Rye Select Broad Market XL Portfolio Limited to HSBC Bank plc in the Third Quarter of 2008 totaling at least $5.0 million; and

- Transfers from Rye Select Broad Market Portfolio Limited to HSBC Bank plc in December 2008 totaling at least $15.9 million.

**Transfers to HSBC Bank USA, N.A.**

- Transfers from Rye Select Broad Market Fund, L.P. to HSBC Bank USA, N.A. in the Third Quarter 2007 totaling at least $50.0 million; and

- Transfers from Rye Select Broad Market Fund, L.P. to HSBC Bank USA, N.A. in the Third Quarter 2008 totaling at least $13.5 million.

41

# EXHIBIT B

## ESCROW AGREEMENT

This Escrow Agreement (the "Escrow Agreement") is made and entered into this ___ day of July 2011 by and among IRVING H. PICARD (the "Trustee"), in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa, *et. seq.*, as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated Chapter 7 case of Bernard L. Madoff ("Madoff"), pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and TREMONT GROUP HOLDINGS, INC. ("Tremont Group"); TREMONT PARTNERS, INC. ("Tremont Partners"); TREMONT (BERMUDA) LIMITED ("Tremont Bermuda"); RYE SELECT BROAD MARKET FUND, LP ("Broad Market Fund"); RYE SELECT BROAD MARKET PRIME FUND, L.P. ("Prime Fund"); RYE SELECT BROAD MARKET PORTFOLIO LIMITED ("Portfolio Limited") (Broad Market Fund, Prime Fund, and Portfolio Limited collectively shall be referred to herein as the "Rye Funds"); RYE SELECT BROAD MARKET INSURANCE FUND, L.P. ("Rye Insurance"); RYE SELECT BROAD MARKET XL FUND, L.P. ("XL LP"); TREMONT ARBITRAGE FUND, L.P.; TREMONT ARBITRAGE FUND IRELAND; TREMONT EMERGING MARKETS FUND - IRELAND; TREMONT EQUITY FUND - IRELAND; TREMONT INTERNATIONAL INSURANCE FUND, L.P.; TREMONT LONG/SHORT EQUITY FUND, L.P.; TREMONT MARKET NEUTRAL FUND, L.P.; TREMONT MARKET NEUTRAL FUND II, L.P.; TREMONT MARKET NEUTRAL FUND LIMITED; TREMONT OPPORTUNITY FUND LIMITED; TREMONT OPPORTUNITY FUND II, L.P.; TREMONT OPPORTUNITY FUND III, L.P.; RYE SELECT EQUITIES FUND; TREMONT MULTI MANAGER FUND; LIFEINVEST OPPORTUNITY FUND LDC (the foregoing entities not otherwise defined collectively shall be referred to herein as the "Tremont Funds"); OPPENHEIMER ACQUISITION CORP. ("Oppenheimer"); MASSMUTUAL HOLDING LLC ("MassMutual Holding"); MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY ("MassMutual") (Oppenheimer, MassMutual Holding and MassMutual collectively shall be referred to herein as the "Parent Defendants"); ROBERT I. SCHULMAN ("Schulman") (Tremont Group, Tremont Partners, Tremont Bermuda, the Rye Funds, Rye Insurance, XL LP, the Tremont Funds and Schulman collectively shall be referred to herein as the "Tremont Defendants"); RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LDC ("Insurance Portfolio LDC"), SETTLEMENT AGENT LLC (the "Settlement Agreement Appointed Agent") and US Bank National Association, a national banking association (the "Agent"). The Tremont Defendants, the Parent Defendants and Insurance Portfolio LDC collectively shall be referred to herein as the "Settling Defendants." The Trustee and the Settling Defendants shall collectively be referred to herein from time to time as the "Settling Parties" or the "Depositors". Each of the Trustee, Settling Defendants, the Settlement Agreement Appointed Agent, and Agent shall be referred to herein from time to time as a "Party" and, collectively, as "Parties".

Pursuant to this Escrow Agreement and to the Settlement Agreement dated as of July __, 2011 by and among the Trustee and the Settling Defendants (the "Settlement Agreement," a copy of which is attached hereto as Exhibit 1) the Parties hereby establish Escrow Account No. _____ or, if applicable, Nos. _____, _____,

_____, and _____ (the "Escrow Account(s)") with Agent to be maintained and administered for the purposes described in Schedule I attached hereto in accordance with the following terms and conditions.

The funds and/or property described on Schedule I attached hereto and incorporated herein will be deposited in escrow and held in the Escrow Account(s) upon delivery thereof to the Agent at its office in Cleveland, Ohio, in the manner and at the time(s) specified in the said Schedule I and shall be segregated from all assets and liabilities of the Agent and its affiliates. The releases provided for in the Settlement Agreement (the "Escrowed Releases" and together with all deposited funds and/or property described on Schedule I attached hereto, hereinafter the "Assets") shall be deemed deposited in escrow with, and held by the Agent as of the date of this Escrow Agreement. The Agent is hereby authorized and directed by each of the Depositors, as their escrow agent, to hold, deal with and dispose of the Assets as provided in the Instructions set forth in Schedule II attached hereto and incorporated herein; subject, however, to the terms and conditions set forth below, which in all events, shall govern and control over any contrary or inconsistent provisions contained in Schedules I or II attached hereto.

1.    **Agent's Duties.** Agent's duties and responsibilities shall be limited to those expressly set forth in this Escrow Agreement and in the Settlement Agreement, and Agent shall not be subject to, or obliged to recognize, any other agreement between any or all of the Depositors or any other persons even though reference thereto may be made herein; provided, however, this Agreement may be amended at any time or times by an instrument in writing signed by all the parties hereto. Agent shall not be subject to or obligated to recognize any notice, direction or instruction of any or all of the parties hereto or of any other person, except as expressly provided for and authorized in Schedules I and II and in performing any duties under this Escrow Agreement, Agent shall not be liable to any Party for consequential damages,(including, without limitation lost profits) losses, or expenses, except for gross negligence or willful misconduct on the part of the Agent.

2.    **Court Orders or Process.** If any controversy arises between the Parties to this Agreement, or with any other Party, concerning the subject matter of this Agreement, its terms or conditions, Agent will not be required to determine the controversy or to take any action regarding it. Agent may hold all documents and funds and may wait for settlement of any such controversy by final appropriate legal proceedings or other means as, in Agent's discretion, Agent may require, despite what may be set forth elsewhere in this Agreement. In such event, Agent will not be liable for interest or damage. Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to the Escrow Account(s), the Assets or this Escrow Agreement, without determination by the Agent of such court's jurisdiction in matter. If any Assets are at any time attached, garnished, or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part

thereof, then in any such events Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel of its own choosing is binding upon it; a be liable to any of the Depositors or to any other person, firm or corporation by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

3.   **Effect of Escrow Deposit.** Upon deposit with the Agent, the Settling Defendants relinquish all right, title and interest to the Settling Defendants' Escrow Deposits (as defined in Schedule I) except as provided in this Escrow Agreement and in the Settlement Agreement. Upon deposit with the Agent, the Trustee relinquishes all right, title and interest to the Trustee's Escrow Deposits (as defined in Schedule I) except as provided in this Escrow Agreement.

4.   **Agent's Actions and Reliance.** Agent shall not be personally liable for any act taken or omitted by it hereunder if taken or omitted by it in good faith and in the exercise of its own best judgment. Agent shall also be fully protected in relying upon any written notice, instruction, direction, certificate or document which in good faith it believes to be genuine.

5.   **Collections.** [The parties have intentionally left this section blank.]

6.   **Agent Responsibility.** Agent shall not be responsible or liable for the sufficiency or accuracy of the form, execution, validity or genuineness of documents, instruments or securities now or hereafter deposited in the Escrow Account(s), or of any endorsement thereon, or for any lack of endorsement thereon, or for any description therein. Registered ownership of or other legal title to the Assets deposited in the Escrow Account(s) shall be maintained in the name of Agent. Agent may maintain qualifying Assets in a Federal Reserve Bank or in any registered clearing agency (including, without limitation, the Depository Trust Company) as Agent may select, and may register such deposited Assets in the name of Agent or its agent or nominee on the records of such Federal Reserve Bank or such registered clearing agency. Agent shall not be responsible or liable in any respect on account of the identity, authority or rights of the persons executing or delivering or purporting to execute or deliver any such document, security or endorsement or this Escrow Agreement.

7.   **Investments.** All monies held in the Escrow Account(s) shall be invested by Agent in its name in accordance with, and, as expressly authorized in Schedule III. Agent shall not be responsible for the selection, quality or maturity of such investments, or for the timely reinvestment of interest or maturity proceeds thereof except as provided in the immediately following paragraph.

In the absence of duly authorized and complete directions regarding investment of cash held in the Escrow Account(s), Agent shall automatically invest and reinvest the same in units of the money market mutual funds identified on

Schedule III attached hereto and incorporated herein, which funds may be managed by an affiliate of the Agent.

Monies credited to any account or fund maintained hereunder which are invested pending disbursement or receipt of proper investment directions or as directed herein, may be deposited to and held in a non-interest bearing demand deposit account established with the Commercial Banking Department of the Agent, without the pledge of securities to or other collateralization of such deposit accounts.

The Depositors acknowledge and agree that the Agent is authorized to invest from or through its trust department or U.S. Bank National Association.

8.    **Notices/Directions to Agent.** Notices and directions to Agent from Depositors, or from other persons authorized to give such notices or directions as expressly set forth in Schedule II, shall be in writing and signed by an authorized representative as identified pursuant to Schedule II, and shall not be deemed to be given until actually received by Agent's employee or officer who administers the Escrow Account(s). Agent shall not be responsible or liable for the authenticity or accuracy of notices or directions properly given hereunder if the written form and execution thereof on its face purports to satisfy the requirements applicable thereto as set forth in Schedule II, as determined by Agent in good faith without additional confirmation or investigation.   The instructions and directions of the Depositors to the Trustee set forth in Schedules I and II shall be irrevocable except to the extent expressly set forth in Schedules I and II.

Notices to the Parties may be delivered by hand, by overnight delivery service, by fax, or by electronic transmission to:

If to the Trustee:

Irving H. Picard, Esq.
Email: ipicard@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Fax: (212) 589-4201

With copies to:

David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc D. Powers
Email: mpowers@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

If to Tremont Defendants:

James G. McCormick
Email: jmccormick@tremont.com
Tremont Group Holdings, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 925-1143
Fax: (914) 925-4043

With copies to:

Seth M. Schwartz, Esq.
Email: seth.schwartz@skadden.com
Skadden, Arps, Slate, Meagher &
  Flom LLP
Four Times Square New York,
New York 10036-6522
Tel: (212) 735-2710
Fax: (917) 777-2710

If to the Broad Market Fund, Prime
Fund, Portfolio Limited, Rye Insurance,
XL LP, and/or each of the individual
Tremont Funds:

With copies to:

James G. McCormick
Email: jmccormick@tremont.com
Tremont Group Holdings, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 925-1143
Fax: (914) 925-4043

Jamie B.W. Stecher, Esq.
Email: Stecher@thshlaW.com
Ralph A. Siciliano, Esq.
Email: Siciliano@thshlaw.com
Tannenbaum Helpern Syracuse &
  Hirschtritt LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6738
Fax: (212) 937-3621

If to Oppenheimer Acquisition
Corporation:

With copies to:

Robert G. Zack
Vice President, Secretary and General
  Counsel
Email: bzack@oppenheimerfunds.com
Oppenheimer Acquisition Corp.
225 Liberty Street
New York, New York 10281-1008
Tel: (212) 323-0250
Fax: (212) 323-4070

William K. Dodds, Esq.
Email: William.dodds@dechert.com
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel: (212) 698-3557
Fax: (212) 698-3599

If to Mass Mutual Holding and/or
Massachusetts Mutual Life Insurance
Company:

With copies to:

David S. Allen, Esq.
Email: dallen5@massmutual.com
Massachusetts Mutual Life Insurance
  Company
1295 State Street
Springfield, MA 01111
Tel: (413) 744-6414
Fax: (413) 226-2074

Joseph L. Kociubes, Esq.
Email: joe.kociubes@bingham.com
Bingham McCutchen LLP
One Federal Street
Boston, Massachusetts 02110-1726
Tel: (617) 951-8337
Fax: (617) 428-6334

If to Insurance Portfolio LDC:

With copies to:

Gary S. Lee
Email: glee@mofo.com
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel: (212) 468-8042
Fax: (212) 468-7900

If to the Settlement Agreement
Appointed Agent:

With copies to:

Settlement Agent LLC
c/o Tremont Group Holdings, Inc.
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 925-1143
Fax: (914) 925-4043
Attn: James G. McCormick
Email: jmccormick@tremont.com

Seth M. Schwartz, Esq.
Email: seth.schwartz@skadden.com
Skadden, Arps, Slate, Meagher &
  Flom LLP
Four Times Square New York,
New York 10036-6522
Tel: (212) 735-2710

If to U. S. Bank National Association:

With copies to:

9.   **Books and Records.** Agent shall maintain books and records regarding its administration of the Escrow Account(s), and the deposit, investment, collections and disbursement or transfer of the Assets, shall retain copies of all written notices and directions sent or received by it in the performance of its duties hereunder, and shall afford each Depositor reasonable access, during regular business hours, to review and make photocopies (at Depositor's cost) of the same.

The Depositors acknowledge that regulations of the Comptroller of the Currency grant the Depositors the right to receive brokerage confirmations of the security transactions as they occur. The Depositors specifically waive such notification to the extent permitted by law and will receive periodic cash transaction statements that will detail all investment transactions.

10.  **Disputes Among Depositors and/or Third Parties.** In the event Agent is notified of any dispute, disagreement or legal action between or among any of the Depositors, and/or any third parties, relating to or arising in connection with the Escrow Account(s), the Assets or the performance of the Agent's duties under this Agreement, the Agent shall be authorized and entitled, subject to Section 2 hereof, to suspend further performance hereunder, to retain and hold the Assets then in the Escrow Account(s) and take no further action with respect thereto until the matter has been fully resolved, as evidenced by written notification signed by all Depositors and any other parties to such dispute, disagreement or legal action.

11.  **Notice by Agent.** Any notices which Agent is required or desires to give hereunder to any of the Depositors shall be in writing and may be given by mailing the same to the address indicated above by United States certified or registered mail, postage prepaid, electronically, or by facsimile transmission. For all purposes hereof any notice so mailed shall be as effectual as though served upon the person of any such Depositor to whom it was mailed at the time it is deposited in the United States mail by Agent whether or not such undersigned thereafter actually receives such notice. Whenever under the terms hereof the time for Agent's giving a notice or performing an act falls upon a Saturday, Sunday, or holiday, such time shall be extended to the next business day.

12.  **Legal Counsel.** If Agent believes it to be reasonably necessary to consult with counsel concerning any of its duties in connection with the account or this Escrow Agreement, or in case Agent becomes involved in litigation on account of being escrow agent hereunder or on account of having received property subject hereto, then in either case, its costs, expenses, and reasonable attorney's fees shall be paid in two equal shares by the Trustee and the Settling Defendants.

13.  **Agent Compensation.** Agent shall be paid a fee for its services as set forth on Schedule IV attached hereto and incorporated herein, and reimbursed for its reasonable costs and expenses incurred. If Agent's fees, or reasonable costs or expenses, provided for herein, are not promptly paid, Agent shall have the right

to sell such portion of the Assets held in the Escrow Account(s) as necessary and reimburse itself therefor from the proceeds of such sale or from the cash held in the Escrow Account(s). In the event that the conditions of this Agreement are not promptly fulfilled, or if Agent renders any service not provided for in this Agreement, or if the Parties request a substantial modification of its terms, or if any controversy arises, or if Agent is made a party to, or intervenes in, any litigation pertaining to this escrow or its subject matter, Agent shall be reasonably compensated for such extraordinary services and reimbursed for all costs, attorney's fees, including allocated costs of in-house counsel, and expenses occasioned by such default, delay, controversy or litigation and Agent shall have the right to retain all documents and/or other things of value at any time held by Agent in this escrow until such compensation, fees, costs, and expenses are paid. The Trustee and the Settling Defendants agree to pay in two equal shares these sums upon demand. Unless otherwise provided, the Parties each will pay one-half of all Agents' usual charges and Agent may deduct such sums from the funds deposited. The Depositors and their respective successors and assigns agree jointly and severally to indemnify and hold Agent harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, counsel fees, including allocated costs of in-house counsel and disbursements that may be imposed on Agent or incurred by Agent in connection with the performance of his/her duties under this Agreement, including but not limited to any litigation arising from this Agreement or involving its subject matter. Agent shall have a first lien on the property and papers held under this Agreement for such compensation and expenses.

14. **Agent Resignation.** It is understood that Agent reserves the right to resign at any time following the 180th day after the date this Escrow Agreement is executed, by giving written notice of its resignation, specifying the effective date thereof, to the Depositors. Within 30 days after receiving the aforesaid notice, if the Depositors agree to appoint a successor escrow agent to which Agent may transfer the Assets then held in the Escrow Account(s) Agent shall do so less its unpaid fees, costs and expenses. If a successor escrow agent has not been appointed and has not accepted such appointment by the end of the 30-day period, Agent may apply to a court of competent jurisdiction for the appointment of a successor escrow agent, and the costs and reasonable attorney's fees which Agent incurs in connection with such a proceeding shall be paid in two equal shares by the Trustee and the Settling Defendants.

15. **Governing Law.** This Escrow Agreement shall be construed, enforced, and administered in accordance with the laws of the State of New York without regard to conflict of laws provisions.

16. **Automatic Succession.** Any company into which the Agent may be merged or with which it may be consolidated, shall be the Successor to the Agent without the execution or filing of any paper or any further act on the part of any of the Parties, anything herein to the contrary notwithstanding.

17.    **Tax Reporting.** The Agent shall have no responsibility for the tax consequences of this Escrow Agreement. The Agent hereby advises each party to this escrow to consult with independent legal counsel concerning the tax ramifications of this transaction.

18.    **Electronic Signature or Facsimile.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be one and the same instrument. The exchange of copies of this Agreement and of signature pages electronically or by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted electronically or by facsimile shall be deemed to be their original signatures for all purposes.

19.    **Patriot Act.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a Trust or other legal entity Agent will ask for documentation to verify its formation and existence as a legal entity. Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

IN WITNESS WHEREOF, the Parties hereto have caused this Escrow Agreement to be executed as of the date first above written

**DEPOSITORS**

IRVING H. PICARD, Trustee

_____

TREMONT GROUP HOLDINGS, INC.

_____

Name:

Title:

TREMONT PARTNERS, INC.

_____

Name:

Title:

TREMONT (BERMUDA) LIMITED

_____

Name:

Title:

RYE SELECT BROAD MARKET FUND, LP

_____

Name:

Title:

RYE SELECT BROAD MARKET PRIME FUND, L.P.

_____

Name:

Title:

RYE SELECT BROAD MARKET PORTFOLIO
LIMITED

_____

Name:

Title:

RYE SELECT BROAD MARKET INSURANCE
FUND, L.P.

_____
    Name:

    Title:

RYE SELECT BROAD MARKET XL FUND, L.P.

_____
    Name:

    Title:

TREMONT ARBITRAGE FUND, L.P.

_____
    Name:

    Title:

TREMONT CAPITAL MANAGEMENT (IRELAND)
LIMITED for and on behalf of its sub-fund TREMONT
ARBITRAGE FUND

_____
    Name:

    Title:

TREMONT CAPITAL MANAGEMENT (IRELAND)
LIMITED for and on behalf of its sub-fund TREMONT
EMERGING MARKETS FUND

_____
    Name:

    Title:

TREMONT CAPITAL MANAGEMENT (IRELAND)
LIMITED for and on behalf of its sub-fund TREMONT
EQUITY FUND

_____

    Name:

    Title:

TREMONT INTERNATIONAL INSURANCE FUND,
L.P.

_____

    Name:

    Title:

TREMONT LONG/SHORT EQUITY FUND, L.P.

_____

    Name:

    Title:

TREMONT MARKET NEUTRAL FUND, L.P.

_____

    Name:

    Title:

TREMONT MARKET NEUTRAL FUND II, L.P.

_____

    Name:

    Title:

TREMONT MARKET NEUTRAL FUND LIMITED

_____

Name:

Title:

TREMONT OPPORTUNITY FUND LIMITED

_____

Name:

Title:

TREMONT OPPORTUNITY FUND II, L.P.

_____

Name:

Title:

TREMONT OPPORTUNITY FUND III, L.P.

_____

Name:

Title:

RYE SELECT EQUITIES FUND

_____

Name:

Title:

WALKERS SPV LIMITED, SOLELY IN ITS CAPACITY AS TRUSTEE OF TREMONT MULTI MANAGER FUND, A CLASS OF TREMONT ALTERNATIVE INVESTMENT UNIT TRUST

_____

Name:

Title:

TREMONT MULTI MANAGER FUND

_____

Name:

Title:

LIFEINVEST OPPORTUNITY FUND LDC

_____

Name:

Title:

OPPENHEIMER ACQUISITION CORP.

_____

Name:

Title:

MASSMUTUAL HOLDING LLC

_____

Name:

Title:

MASSACHUSETTS   MUTUAL   LIFE   INSURANCE
COMPANY

_____

Name:

Title:


ROBERT I. SCHULMAN

_____


RYE SELECT BROAD MARKET INSURANCE
PORTFOLIO, LDC

_____

Name:

Title:


SETTLEMENT AGENT LLC

_____

Name:

Title:


**AGENT**

U.S. **Bank National Association**, as Agent

_____

Name: Elizabeth A. Thuning

Title: Vice President

## SCHEDULE I

## PURPOSE OF ESCROW:

Pursuant to paragraph 10 of the Settlement Agreement, at the Closing (as defined in the Settlement Agreement), the Trustee and the Settling Defendants will be deemed to have deposited in escrow with the Agent the Escrowed Releases, and shall deposit funds with the Agent as set forth below.

Under the terms of the Settlement Agreement, the Settling Parties have the option of: (Option A) at the Closing, the Settling Defendants (other than Insurance Portfolio LDC) making a payment in the amount of One Billion Dollars ($1,000,000,000.00) to the Agent for the benefit of the Trustee, and simultaneously the Trustee making payment of (i) One Million Five Hundred Thousand Dollars ($1,500,000.00) to the Escrow Agent, comprising three separate SIPA advances of Five Hundred Thousand Dollars ($500,000.00) for the benefit of each of Broad Market Fund, Portfolio Limited, and Rye Insurance, plus (ii) any pro rata distribution that would have been made on account of each of their Customer Claims had such claims been allowed in the Total Allowed Claims Amount at the time the Trustee had made any distribution to customers in the SIPA Proceeding (as defined in the Settlement Agreement) or (Option B) the Settling Defendants (other than Insurance Portfolio LDC) making a payment of Nine Hundred Ninety Eight Million Five Hundred Thousand Dollars ($998,500,000.00) to the Agent for the benefit of the Trustee, less the amount of any pro rata distribution that would have been made on account of the Customer Claims of Broad Market Fund, Portfolio Limited, and Rye Insurance had such claims been allowed in the Total Allowed Claims Amount at the time the Trustee had made any distribution to customers in the SIPA Proceeding and the Trustee making no payments to the Agent.

Under the terms of the Settlement Agreement, the official liquidators of Insurance Portfolio LDC (the "Liquidators") have the option of: (Option A) at the Closing, Insurance Portfolio LDC making a payment in the amount of Twenty-Five Million Dollars ($25,000,000.00) to the Agent for the benefit of the Trustee, and simultaneously the Trustee making SIPA advance payment of (i) Five Hundred Thousand Dollars ($500,000.00) to the Escrow Agent for the benefit of Insurance Portfolio LDC, plus (ii) any pro rata distribution that would have been made on account of its Customer Claim had such claim been allowed in the allowed amount of such claim at the time the Trustee had made any distribution to customers in the SIPA Proceeding or (Option B) Insurance Portfolio LDC making a payment of Twenty-Four Million Five Hundred Thousand Dollars ($24,500,000.00) to the Agent for the benefit of the Trustee, less the amount of any pro rata distribution that would have been made on account of the Customer Claim of Insurance Portfolio LDC. and the Trustee making no payments to the Agent.

Option A. If the Settling Parties have not mutually agreed in writing to Option B, the Settling Parties shall make payments pursuant to Option A.

At the Closing, the Settling Defendants (other than Insurance Portfolio LDC) will irrevocably deposit with the Agent the sum of One Billion Dollars ($1,000,000,000.00) (any such deposit made under either Option A or Option B, the "Tremont Defendants' Escrow Deposit") and the Trustee will irrevocably deposit with the Agent (i) the sum of One Million Five Hundred Dollars ($1,500,000.00), plus (ii) any pro rata distribution that would have been made on account of the Customer Claims of Broad Market Fund, Portfolio Limited, and Rye Insurance had such claims been allowed in the Total Allowed Claims Amount at the time the Trustee had made any distribution to customers in the SIPA Proceeding (the "Trustee's Tremont Defendants Escrow Deposit").

At the Closing, Insurance Portfolio LDC will irrevocably deposit with the Agent the sum of Twenty-Five Million Dollars ($25,000,000.00) (any such deposit made under either Option A or Option B, the "Insurance Portfolio LDC Escrow Deposit," and together with the Tremont Defendants' Escrow Deposit, the "Settling Defendants' Escrow Deposits") and the Trustee will irrevocably deposit with the Agent (i) the sum of Five Hundred Dollars ($500,000.00), plus (ii) any pro rata distribution that would have been made on account of ts Customer Claim had such claim been allowed in the allowed amount of such claim at the time the Trustee had made any distribution to customers in the SIPA Proceeding (the "Trustee's Insurance Portfolio LDC Escrow Deposit", together with the Trustee's Tremont Defendants Escrow Deposit, the "Trustee's Escrow Deposits").

Following the Closing, Agent shall hold the Tremont Defendants' Escrow Deposit, the Insurance Portfolio LDC Escrow Deposit, the Trustee's Tremont Defendants Escrow Deposit, and the Trustee's Insurance Portfolio LDC Escrow Deposit in four (4) separate accounts subject to the terms and conditions of this Escrow Agreement.

Option B. If the Settling Parties (other than Insurance Portfolio LDC) mutually have agreed in writing to Option B, at the Closing, the Settling Defendants (other than Insurance Portfolio LDC) shall irrevocably deposit with the Agent the sum of Nine Hundred Ninety Eight Million Five Hundred Thousand Dollars ($998,500,000.00), less the amount of any pro rata distribution that would have been made on account of the Customer Claims of Broad Market Fund, Portfolio Limited, and Rye Insurance had such claims been allowed in the Total Allowed Claims Amount at the time the Trustee had made any distribution to customers in the SIPA Proceeding, for the Tremont Defendants' Escrow Deposit. Agent shall hold the Tremont Defendants' Escrow Deposit subject to the terms and conditions of this Escrow Agreement.

If the Liquidators mutually have agreed in writing to Option B, at the Closing, Insurance Portfolio LDC shall irrevocably deposit with the Agent the sum of Twenty-Four Million Five Hundred Thousand Dollars ($24,500,000.00) to the Agent for the benefit of the Trustee, less the amount of any pro rata distribution that would have been made on account of the Customer Claim of Insurance Portfolio LDC had such claim been allowed in the allowed amount of such claim

at the time the Trustee had made any distribution to customers in the SIPA Proceeding, for the Insurance Portfolio LDC Escrow Deposit. Agent shall hold the Insurance Portfolio LDC Escrow Deposit subject to the terms and conditions of this Escrow Agreement.

All funds deposited in the Tremont Defendants' Escrow Deposit and the Insurance Portfolio Escrow Deposit, and if applicable, the Trustee's Escrow Deposits, shall be made in immediately available funds by wire transfer to the account or accounts specified by the Agent by Three O'Clock PM on the date of the Closing.

In the event the Settling Parties do not elect Option B, as long as this Escrow Agreement is in effect, the Trustee shall, contemporaneously with any pro rata distributions that he makes after the Closing to customers holding allowed customer claims in the SIPA Proceeding  deposit with the Agent the amount of any pro rata distributions that the Trustee would have distributed to (a) each of Broad Market Fund, Portfolio Limited, and Rye Insurance, on account of their respective Customer Claims in the Total Allowed Claims Amount, if such distributions were not subject to terms of this Escrow Agreement and (b) Insurance Portfolio LDC  on account of its Customer Claim in the allowed amount of such claim, if such distributions were not subject to this Escrow Agreement. In the case of any amounts paid by the Trustee to the Agent pursuant to the foregoing clause (a) of this paragraph, such amounts shall be added to, and shall at all times be deemed to constitute a part of, the Trustee's Tremont Defendants Escrow Deposit.  In the case of any amounts paid by the Trustee to the Agent pursuant to clause (b) above, such amounts shall be added to, and shall at all times be deemed to constitute a part of, the Trustee's Insurance Portfolio LDC Escrow Deposit.

In the event the Settling Parties elect Option B, as long as this Escrow Agreement is in effect, the Trustee shall, contemporaneously with any pro rata distributions that he makes after the Closing to customers holding allowed customer claims in the SIPA proceeding, provide written instructions to the Agent to release and distribute the specific dollar amount of any pro rata distributions that the Trustee would have distributed to (x) each of Broad Market Fund, Portfolio Limited, and Rye Insurance on account of their respective Customer Claims in the Total Allowed Claims Amount, if such distributions were not subject to the terms of this Escrow Agreement, and (y) Insurance Portfolio LDC on account of its Customer Claim in the allowed amount of such claim, if such distributions were not subject to this Escrow Agreement. Agent shall within three (3) business days of receipt of such written instructions shall release the respective amounts set forth in such instructions  to the Settlement Agreement Appointed Agent for the benefit of Broad Market Fund, Portfolio Limited, and Rye Insurance and to the Liquidators for the benefit of Insurance Portfolio LDC.

**SCHEDULE II**

**INSTRUCTIONS OF DEPOSITORS**

     The Settling Defendants and Trustee, jointly and severally, hereby irrevocably instruct the Escrow Agent to release and distribute the Settling Defendants' Escrow Deposits and Trustee's Escrow Deposits, if any, and any and all interest earned thereon, and shall be deemed to have released the Escrowed Releases as follows:

a.    If neither Broad Market Fund nor Portfolio Limited has voluntarily sought relief for protection, filed for liquidation, or is subject to a petition for involuntary relief under the Bankruptcy Code (as defined in the Settlement Agreement) or any other similar laws as of the ninetieth (90th) day following the date of this Escrow Agreement or if either Broad Market Fund or Portfolio Limited becomes subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws and such petition is dismissed as of the ninetieth (90th) day following the date of this Escrow Agreement, on the ninety-first (91st) day following the date of this Escrow Agreement without any further action of the Trustee and the Settling Defendants, the Agent shall (i) be deemed to have delivered the Escrowed Releases to the respective beneficiaries thereof contemplated by the Settlement Agreement and all of such Escrowed Releases shall become effective in accordance with their terms and (ii) pay the Escrow Deposits as follows: (w) the Tremont Defendants' Escrow Deposit shall be paid by the Agent to the Trustee; (x) the Insurance Portfolio LDC Escrow Deposit shall be paid by the Agent to the Trustee; (y) the Trustee's Tremont Defendants Escrow Deposit shall be paid by the Agent to the Settlement Agreement Appointed Agent; and (z) the Trustee's Insurance Portfolio LDC Escrow Deposit shall be paid by the Agent to the Liquidators.

b.    If either Broad Market Fund or Portfolio Limited has voluntarily sought relief for protection or filed for liquidation at any time prior to ninety (90) days following the Closing, or if either Broad Market Fund or Portfolio Limited becomes subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws and such petition is not dismissed as of the ninetieth (90th) day following the date of this Escrow Agreement, then this Escrow Agreement (other than Paragraph 12) shall terminate and Agent shall return all sums paid pursuant to the Escrow Agreement as follows: (x) the Tremont Defendants' Escrow Deposit shall be paid by the Agent to the Settlement Agreement Appointed Agent; (y) the Insurance Portfolio LDC Escrow Deposit shall be paid by the Agent to the Liquidators; and (z) the Trustee's Escrow Deposits shall be paid by the Agent to the Trustee; *provided that,* the Parties may, by a writing executed by all of them, and without the necessity for further notice or hearing before the Bankruptcy Court (as defined in the Settlement Agreement) , instruct the Agent to act in accordance with paragraph a. of this Schedule

II, notwithstanding satisfaction of the condition specified in this paragraph b.

Notwithstanding the foregoing (A) the Trustee and Insurance Portfolio LDC may, by a writing executed by the Trustee and the Liquidators and without further consent from the Tremont Defendants or the Parent Defendants, and without the necessity for further notice or hearing before the Bankruptcy Court, instruct the Agent to act in accordance with paragraph a. of this Schedule II solely with respect to the Insurance Portfolio LDC Escrow Deposit, the Trustee's Insurance Portfolio LDC Escrow Deposit, and the Escrowed Releases exchanged by such Parties, notwithstanding the occurrence of one or more conditions precedent to termination of this Escrow Agreement and (B) the Trustee and the Settling Defendants other than Insurance Portfolio LDC may, by a writing executed by such Parties and without further consent from Insurance Portfolio LDC and without the necessity for further notice or hearing before the Bankruptcy Court, instruct the Agent to act in accordance with paragraph a. of this Schedule II solely with respect to the Tremont Defendants' Escrow Deposit, the Trustee's Tremont Defendants Escrow Deposit, and the Escrowed Releases exchanged by such Parties, notwithstanding the occurrence of one or more conditions precedent to termination of this Escrow Agreement.

c.   All payments by the Agent shall be made in immediately available funds by wire transfer to the account or accounts specified in writing by the Trustee, the Settlement Agreement Appointed Agent, and the Liquidators, all in accordance with this Escrow Agreement.

d.   Upon payment of the Settling Defendants Escrow Deposits and, if applicable, the Trustee's Escrow Deposits, with any interest accrued thereon, and the deemed delivery or return of the Escrowed Releases, in accordance with this Escrow Agreement, this Escrow Agreement shall terminate, subject to the provisions of Paragraph 12 of this Escrow Agreement.

## SCHEDULE III

I.    U.S. BANK NATIONAL ASSOCIATION

II.    DESCRIPTION AND TERMS

The owner of the account is U.S. Bank as Agent for the Parties under this Escrow Agreement. U.S. Bank's trust department performs all account deposits and withdrawals.  Deposit accounts are FDIC Insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.

## IV. AUTOMATIC AUTHORIZATION

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys solely in United States Treasury securities with a maturity or remaining maturity not to exceed 180 days.

## SCHEDULE IV

### Agent's Fees

Agent shall charge its normal fees.  The Settling Parties agree the fees shall be paid first from the interest of the Escrow Deposit(s).

# EXHIBIT C

BLMIS ACCOUNT NO. 1C1260 - RYE SELECT BROAD MARKET PRIME FUND, LP

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount (Reported in Customer Statement) | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 30 Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Transfers | Column 12 Full History Fraudulent Transfers |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/29/1997 | CHECK WIRE | 21,300,000 | 21,300,000 | | | | 21,300,000 | | | | |
| 9/4/1997 | CHECK WIRE | | | | | | | | | | |
| 9/4/1997 | CHECK WIRE | | | | | | 30,300,000 | | | | |
| 11/24/1997 | CHECK WIRE | 4,200,000 | 4,200,000 | | | | 34,500,000 | | | | |
| 11/25/1997 | CHECK WIRE | 18,670,000 | 18,670,000 | | | | 58,842,000 | | | | |
| 2/4/1998 | CHECK WIRE | 14,000,000 | 14,000,000 | | | | | | | | |
| 3/3/1998 | CHECK WIRE | 9,000,000 | 9,000,000 | | | | 111,920,000 | | | | |
| 5/5/1998 | CHECK WIRE | 7,500,000 | 7,500,000 | | | | 153,420,000 | | | | |
| 6/9/1998 | CHECK WIRE | 5,050,000 | 5,050,000 | | | | | | | | |
| 7/6/1998 | CHECK WIRE | 12,000,000 | 12,000,000 | | | | 171,720,000 | | | | |
| 9/2/1998 | CHECK WIRE | (17,000,000) | | | | (17,000,000) | 185,720,000 | | | | |
| 12/9/1998 | CHECK WIRE | 1,000,000 | 1,000,000 | | | | 227,070,000 | | | | |
| 3/2/1999 | CHECK WIRE | 6,000,000 | 6,000,000 | | | | | | | | |
| 8/25/1999 | CHECK WIRE | 2,000,000 | 2,000,000 | | | | 205,070,000 | | | | |
| 12/31/1999 | CHECK WIRE | 2,000,000 | 2,000,000 | | | | 245,370,000 | | | | |
| 3/7/2000 | CHECK WIRE | 13,225,000 | 13,225,000 | | | | 288,570,000 | | | | |
| 4/5/2000 | CHECK WIRE | 12,750,000 | 12,750,000 | | | | 272,795,000 | | | | |
| 5/4/2000 | CHECK WIRE | 300,545,000 | | | | | 300,545,000 | | | | |
| 7/5/2000 | CHECK WIRE | 12,000,000 | 12,000,000 | | | | 336,045,000 | | | | |
| 9/1/2000 | CHECK WIRE | 10,000,000 | 10,000,000 | | | | 398,545,000 | | | | |
| 1/26/2000 | CHECK WIRE | 12,000,000 | 12,000,000 | | | | 363,545,000 | | | | |
| 1/8/2001 | CHECK WIRE | 5,000,000 | 5,000,000 | | | | 383,045,000 | | | | |
| 8/30/2001 | CHECK WIRE | | | | | | 363,045,000 | | | | |
| 5/22/2001 | CHECK WIRE | 2,000,000 | 2,000,000 | | | | 442,045,000 | | | | |
| 10/1/2001 | CHECK WIRE | 12,000,000 | 12,000,000 | | | | 450,045,000 | | | | |
| 9/27/2002 | CHECK WIRE | 10,000,000 | 10,000,000 | | | | 461,045,000 | | | | |
| 10/1/2004 | CHECK WIRE | (110,000,000) | | (110,000,000) | | | 341,045,000 | | | | (110,000,000) |

Exhibit G

MADC1135_00000002

BLMIS ACCOUNT NO. 1C1260 - RYE SELECT BROAD MARKET PRIME FUND, LP

Exhibit B

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 | Column 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Transfers | Full History Fraudulent Transfers |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| Total | | $ 790,045,000 | $ (1,010,000,000) | $ - | $ - | $ - | $ (210,955,000) | $ - | $ (495,000,000) | $ (945,000,000) | $ (1,010,000,000) |

MADC1135_00000003

ELMJS ACCOUNT NO. 1FR010 - RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LDC

Exhibit B

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 30-Day Fraudulent Transfer | Column 10 2-Year Fraudulent Transfer | Column 11 6-Year Fraudulent Transfer | Column 12 Full History Fraudulent Transfers |
|---|---|---|---|---|---|---|---|---|---|---|---|

MADC1135_00000005

BLMIS ACCOUNT NO. 1FR010 - RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LLC

Exhibit B

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 | Column 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Transfers | Full History Fraudulent Transfers |

BLMIS ACCOUNT NO. 1FR010 - RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LLC

Exhibit B

| Date | Column 1 | Column 2 Transaction Description | Column 3 Transaction Amount Reported In Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers In | Column 7 Transfers Of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Transfers | Column 12 Full History Fraudulent Transfers |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

MADC1135_00000007

Exhibit B

BLMIS ACCOUNT NO. 1FR010 - RYE SELECT BROAD MARKET INSURANCE PORTFOLIO LDC

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 | Column 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Penalized Transfers | 2-Year Penalized Transfers | 6-Year Penalized Transfers | Full Penalized Transfers |

MADC1135_00000008