| | |
|---|---|
| **Baker & Hostetler LLP**<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Fernando A. Bohorquez, Jr.<br>Keith R. Murphy<br>David W. Rice | Hearing Date:  March 28, 2018 at 10:00 a.m.<br>Objections Due:  March 21, 2018 at 5:00 p.m. |

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>AMERICAN SECURITIES MANAGEMENT, L.P., formerly known as AMERICAN SECURITIES, L.P., *et al.*<br><br>    Defendants. | Adv. Pro. No. 10-05415 (SMB) |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING A SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE AND <u>DEFENDANTS IN ADVERSARY PROCEEDING NO. 10-05415</u>**

TO:   THE HONORABLE STUART M. BERNSTEIN
       UNITED STATES BANKRUPTCY JUDGE

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in an agreement (the "Agreement"), a copy of which is annexed hereto as Exhibit B, by and among the Trustee on the one hand, and the Defendants identified in Exhibit A (collectively, "Transferees") on the other hand.[1]  Trustee and each of the Transferees

---

[1] A few hours before filing, the Trustee was informed that defendant Michael Fisch, individually and in his capacity as beneficial owner of a defendant IRA, as custodian or trustee of a defendant profit sharing plan, and as trustee for a defendant trust, and Laura Roberson-Fisch, in her capacity as beneficial owner of a defendant IRA, participant in a defendant profit sharing plan and defendant pension plan, and authorized representative of the estate of defendant Arleen Marie Pettingill, (the "Fisch Defendants") have failed to deliver certain original, ink-signed agreements related to the settlement.  In the event the Fisch Defendants do not provide all such original agreements by 5:00 p.m. on March 5, 2018, the Parties will submit a revised Proposed Order removing the Fisch Defendants from the Agreement for the Court's approval.  In that event, the Adversary Proceeding will continue solely against the Fisch Defendants, and the Fisch Defendants will not be third party beneficiaries of the revised Agreement, nor will they have the benefit of the reduced settlement amount the Trustee reached with the settling Transferees.

2

shall be hereinafter referred to individually as "Party" and collectively as "Parties." In support of the Motion, the Trustee represents as follows:

## PRELIMINARY STATEMENT

The Trustee commenced an action against the Transferees in Adversary Proceeding No. 10-05415 to recover allegedly avoidable transfers made by BLMIS to the Transferees regarding BLMIS Account Nos. 1KW172 and 1KW387 (collectively, the "BLMIS Accounts").

As a result of extensive settlement negotiations among the Parties, as well as mediation before the Honorable Francis Conrad, the Parties entered into the Agreement, which represents a good faith, complete settlement of all disputes raised in this adversary proceeding between the Trustee and the Transferees. Under the Agreement, Transferees have agreed that the Trustee will be paid a total amount of $18,500,000 (the "Settlement Payment"). The Agreement will benefit the fund of customer property, as the Settlement Payment will increase the funds available for distribution to BLMIS customers with allowed claims.

The Trustee respectfully requests that the Court approve this settlement.

## BACKGROUND

*The Commencement of the BLMIS Liquidation Proceeding*

1. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission (the "Commission") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV

---

[2] In this case, the Filing Date is the date on which the Commission commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS. *See* section 78*lll*(7)(B) of SIPA.

3

10791).  In the complaint, the Commission alleged that the Debtors engaged in fraud through the investment adviser activities of BLMIS.

2. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

4. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    (i)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

    (ii)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

    (iii)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

5. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff.  On June 9, 2009, this Court entered an order substantively consolidating Madoff's Chapter 7 estate with the BLMIS SIPA proceeding (the "BLMIS Estate").

***Summary of the Trustee's Claims Against the Transferees***

6. On December 10, 2010, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Transferees in an action captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. American Securities Management, L.P., formerly known as American Securities, L.P., et al.*, Adv. Pro. No. 10-05415 (SMB) (the "Adversary Proceeding").

4

7. On September 9, 2011, the Trustee filed an amended complaint (the "Amended Complaint") and, concurrently, stipulated to the dismissal of eighty-eight (88) subsequent transferee defendants.[3]

8. In the Adversary Proceeding, the Trustee sought to avoid and recover avoidable transfers from BLMIS to the BLMIS Accounts under sections 105(a), 544, 548(a), 550(a) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law ("NY DCL") §§ 273–279), N.Y. C.P.L.R. 203(g) and 213(8), and other applicable laws.

9. The Trustee has alleged that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the two years prior to the Filing Date in the aggregate amount of Thirty-One Million, One Hundred Forty-Six Thousand United States Dollars ($31,146,000), consisting of at least Ten Million, One Hundred Two Thousand, One Hundred Fifty-Seven United States Dollars ($10,102,157) in the form of fictitious profits, and at least Twenty-One Million, Forty-Three Thousand, Eight Hundred Forty-Three United States Dollars ($21,043,843) in the form of returned principal (collectively, the "Two-Year Transfers").

10. The Trustee has also alleged that Transferees are liable to the BLMIS Estate for the receipt of avoidable and recoverable transfers during the six years prior to the Filing Date in the aggregate amount of Fifty-Six Million, Six Hundred Ninety-One Thousand United States Dollars ($56,691,000) (the "Six-Year Transfers," together with the Two-Year Transfers, the "Avoidable Transfers").

---

[3] Since that time, the Trustee has dismissed certain other subsequent transferee defendants, including eighteen (18) such defendants identified in the Notice of Voluntary Dismissal filed on March 1, 2018.

*Customer Claims Filed by Transferees*

11. On or about February 26, 2009, Defendant PJ Administrator LLC ("PJ Administrator") filed Claim No. 004925 (the "Claim") in connection with BLMIS Account No. 1KW387, which was denied by the Trustee pursuant to the Notice of the Trustee's Determination of Claim dated October 5, 2010 (the "Determination Notice").

12. On or about March 28, 2011, PJ Administrator filed an objection to the Determination Notice [ECF No. 4000] (the "Objection"). PJ Administrator has agreed to withdraw the Objection pursuant to the Agreement.

13. Certain Transferees filed individual claims in connection with BLMIS Account No. 1KW387, which were all denied by the Trustee upon determining that the claimants were not customers of BLMIS under SIPA (collectively, the "Indirect Denied Claims").

14. No customer claims were filed in connection with BLMIS Account No. 1KW172, which was closed in or about July 2003.

## SETTLEMENT DISCUSSIONS AND THE TRUSTEE'S INVESTIGATION

15. Over the past several years, the Trustee has engaged in good faith negotiations with counsel for PJ Administrator to resolve the Trustee's claims against PJ Administrator and the other Transferees, with the understanding that any final settlement in this Adversary Proceeding would require approval of the agreement by all Transferees.

16. In June 2017, the Trustee and PJ Administrator voluntarily agreed to enter mediation with the Honorable Francis Conrad ("Judge Conrad"), and exchanged mediation statements in advance of meeting to help facilitate the mediation process. The Trustee and PJ Administrator, through their respective counsel, engaged in in-person mediation conferences on July 12, 2017 and September 6, 2017, and continued settlement discussions with both Judge

Conrad and opposing counsel in an effort to reach a resolution. Through the mediation process and good faith negotiations, the Parties recognized the cost, risk, and uncertainties associated with continuing to litigate this adversary proceeding, and were ultimately able to reach an agreement. The settlement is the result of extensive good faith negotiations and several months of effective mediation.

17. The Trustee has conducted a comprehensive investigation of the funds that Transferees received from BLMIS. PJ Administrator, through mediation and settlement negotiations, has cooperated with the Trustee and facilitated the investigation by providing information the Trustee has requested. The Trustee's investigation included, but was not limited to: the review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Transferees; correspondence and other records and documents available to the Trustee; information provided through the mediation process; and a substantial review of third-party records and documents.

18. After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a resolution rather than to continue the litigation.

19. On or about March 1, 2018, the Trustee, PJ Administrator, and all other Transferees executed the Agreement wherein they agreed to settle the matters at issue in this adversary proceeding on the terms summarized below.

## OVERVIEW OF THE AGREEMENT

20.     The principal terms and conditions of the Agreement are generally as follows (as stated above, the Agreement is attached as <u>Exhibit B</u> and should be reviewed for a complete account of its terms):[4]

(a)     As set forth in the Agreement, Transferees shall pay or cause to be paid to the Trustee the amount of Eighteen Million, Five Hundred Thousand United States Dollars ($18,500,000.00) (the "<u>Settlement Payment</u>") within five business days after the effective date set forth in the Agreement.

(b)     PJ Administrator shall withdraw the Objection by executing concurrently with the Agreement and delivering to Trustee for filing, the executed Notice of Withdrawal of Objection with prejudice, in the form attached to the Agreement as Exhibit A.

(c)     The Trustee's determination with respect to all other individual claims filed by Transferees in connection with BLMIS Account No. 1KW387 shall be deemed final and not subject to dispute.

(d)     The Trustee shall seek approval of the Agreement before the Court.

(e)     The Trustee will release, remise and discharge Transferees, on the specific terms set forth in the Agreement.

(f)     Transferees will release, remise, and discharge the Trustee and the BLMIS Estate on the specific terms set forth in the Agreement.

(g)     As soon as practicable after this Court's approval of the Agreement, counsel for the Trustee and counsel for PJ Administrator shall respectively execute, and Trustee shall

---

[4] Terms not otherwise defined shall have the meaning ascribed to them in the Agreement.

subsequently file, a Stipulation of Dismissal dismissing the Adversary Proceeding with prejudice and without costs to either Trustee or Transferees.

## RELIEF REQUESTED

21. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as Exhibit C approving the Agreement.

## LEGAL BASIS

26. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

27. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, No. 98-5027, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.),* No. 05-6006, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426. The "court need not conduct a 'mini-trial' to determine the merits of the underlying litigation." *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

9

28. In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    a. the probability of success in the litigation;

    b. the difficulties associated with collection;

    c. the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    d. the paramount interests of the creditor (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

29. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Grp.,* 134 B.R. at 505. Even though the court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

30. The Agreement furthers the interests of BLMIS customers by adding an amount of $18,500,000 to the customer property fund, which includes the recovery of all transfers of fictitious profits during the Two-Year Period, as well as a significant amount of transfers of principal during the Two-Year Period. The Agreement results in a clean recovery of almost $20

million to the fund available for distribution to victims of the fraud without any corresponding payment of claims against the BLMIS estate that would otherwise reduce the overall customer property fund. The Agreement also resolves all claims between the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit")). A true and accurate copy of the Picard Affidavit is attached as Exhibit D. The terms of this settlement fall well within the range of reasonableness, and accordingly, the Agreement should be approved by this Court. (*See id.*)

## CONCLUSION

31.  In sum, the Trustee submits that the Agreement should be approved to avoid lengthy, burdensome, and expensive litigation and because it represents a fair and reasonable compromise of the Trustee's claims. Because the Agreement is well within the "range of reasonableness" and confers a benefit on the BLMIS Estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

32.  In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (a) SIPC; and (b) Steven G. Storch, Storch Amini PC, 2 Grand Central Tower, 140 East 45th Street, New York, New York 10017. Notice of this Motion will also be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this adversary proceeding pursuant to the Order Establishing Notice Procedures and Limiting Notice, ECF No. 4560. The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Trustee respectfully requests entry of an Order substantially in the form of <u>Exhibit C</u> granting the relief requested in the Motion.

Dated: March 2, 2018
      New York, New York

Respectfully submitted,

By:    <u>*/s/ Fernando A. Bohorquez, Jr.*</u>
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Fernando A. Bohorquez, Jr.
Email: fbohorquez@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
David W. Rice
Email: drice@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*