# EXHIBIT A

## Part 1 of 2

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-05048 (SMB) |
| Plaintiff, | |
| v. | |
| ESTATE of ARMAND L. GREENHALL, | **SECOND AMENDED COMPLAINT** |

PENG YAN, individually and as Executor of the
Estate of Armand L. Greenhall, and

DEIDRE SWEENEY, as Executor of the Estate of
Armand L. Greenhall,

                    Defendants.

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"),[1] and the substantively consolidated chapter 7 estate of

Bernard L. Madoff ("Madoff," and with BLMIS, "Debtors"), by and through his undersigned

counsel, for his second amended complaint (the "Complaint") against the Estate of Armand L.

Greenhall (the "Greenhall Estate"), Peng Yan, individually and in his capacity as Executor of the

Greenhall Estate ("Yan"), and Deidre Sweeny, in her capacity as Executor of the Greenhall Estate

("Sweeney") (collectively, "Defendants"), states as follows:

## NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff.  Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts.  When added together, these statements purport to show that clients of

BLMIS had approximately $65 billion invested with BLMIS.  In reality, BLMIS had assets on

hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted to the fraudulent

scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in

prison.

---

[1] Hereinafter, applicable sections of SIPA shall be cited as SIPA § ____, and omit reference to title 15, United States
Code.

2.      Defendants the Greenhall Estate and Yan, individually, were beneficiaries of this

Ponzi scheme.  After December 11, 2006, Armand L. Greenhall ("Greenhall") and the Greenhall

Estate received $5,393,925 from BLMIS.  Of this amount, $5,217,527 represented fictitious profits

from the Ponzi scheme.  Yan, in his individual capacity, received subsequent transfers of these

fictitious profits in the amount of at least $4,208,133.  The Trustee seeks to avoid and recover

BLMIS's fraudulent transfers of fictitious profits made to Greenhall, the Greenhall Estate, and,

subsequently, to Yan, so that this customer property can be equitably distributed to the allowed

customer claims against BLMIS.

3.      This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and

78fff-2(c)(3) of SIPA, sections 105(a), 548(a), 550(a), and 551 of title 11 of the United States Code

(the "Bankruptcy Code").

## JURISDICTION AND VENUE

4.      This is an adversary proceeding commenced in this Court, in which the main

underlying SIPA proceeding, No. 08-01789 (SMB) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment

Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to

this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b)

and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

5.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O).  The Trustee

consents to the entry of final orders or judgment by this Court if it is determined that consent of

the parties is required for this Court to enter final orders or judgment consistent with Article III of

the U.S. Constitution.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1409.

**DEFENDANTS**

7.      Greenhall was an individual who died on or about April 14, 2008, in New York, New York.  The Last Will and Testament of Armand L. Greenhall dated August 17, 2006 ("Will") was submitted for probate on May 8, 2008 in the Surrogate Court for New York County, New York, File No. 2008-1750.  Defendant Greenhall Estate is successor-in-interest to Greenhall.

8.      Upon information and belief, Defendant Yan is a resident of Knoxville, Tennessee. Defendant Yan was appointed executor of the Greenhall Estate by preliminary letters testamentary issued in May 2008 and letters testamentary issued in November 2008 by the Surrogate Court for the County of New York.  Defendant Yan is also the residuary beneficiary of the Greenhall Estate and, in that capacity, received subsequent transfers of BLMIS funds as part of his residuary distribution between at least July of 2008 and July of 2014.

9.      Upon information and belief, Defendant Sweeney is a resident of New York, New York.  Defendant Sweeney was appointed executor of the Greenhall Estate by preliminary letters testamentary issued in May 2008 and letters testamentary issued in November 2008 by the Surrogate Court for the County of New York (Sweeney and Yan are referred to collectively as the "Co-Executors").

**BACKGROUND, THE TRUSTEE AND STANDING**

10.     On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") commenced the District Court Proceeding.

11.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").  Thereafter, under SIPA § 78eee(a)(4)(B), SIPC filed an application in the District Court

alleging, among other things, that BLMIS could not meet its obligations to securities customers as they came due and its customers needed the protections afforded by SIPA.

12.     Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA, which, in pertinent part:

    (a)    appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

    (b)    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and

    (c)    removed the case to this Court pursuant to SIPA § 78eee(b)(4).

13.     By orders dated December 23, 2008 and February 4, 2009, respectively, this Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate.

14.     On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court substantively consolidated the chapter 7 estate of Madoff into the SIPA Proceeding.

15.     At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  At the plea hearing, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."

16.     At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, Case No. 09-CR-764 (RJS), Frank DiPascali, a former BLMIS employee, pleaded guilty to a ten-count criminal information charging him with participating in and conspiring to perpetuate the Ponzi scheme.  DiPascali admitted that no purchases or sales of securities took place in connection with BLMIS customer accounts and that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s.

17.    At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, Case No. 10-CR-228 (LTS), David Kugel, a former BLMIS trader and manager, pleaded guilty to a six-count criminal information charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud.  Kugel admitted to helping create false, backdated trades in BLMIS customer accounts beginning in the early 1970s.

18.    On March 24, 2014, Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of fraud and other crimes in connection with their participation in the Ponzi scheme as employees of BLMIS's investment advisory business ("IA Business").

19.    As the Trustee appointed under SIPA, the Trustee is charged with assessing claims, recovering and distributing customer property to BLMIS's customers holding allowed customer claims, and liquidating any remaining BLMIS assets for the benefit of the estate and its creditors. The Trustee is using his authority under SIPA and the Bankruptcy Code to avoid and recover payouts of fictitious profits and/or other transfers made by the Debtors to customers and others to the detriment of defrauded, innocent customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

20.    Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA § 78fff(b).  Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA pursuant to SIPA § 78fff(b).

21.    The Trustee has standing to bring the avoidance and recovery claims under SIPA § 78fff-1(a) and applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 323(b),

544, and 704(a)(1), because the Trustee has the power and authority to avoid and recover transfers

under Bankruptcy Code sections 544, 548, 550(a), and 551, and SIPA §§ 78fff-1(a) and 78fff-

2(c)(3).

## BLMIS, THE PONZI SCHEME, AND MADOFF'S INVESTMENT STRATEGY

### I.    BLMIS

22.    Madoff founded BLMIS in 1960 as a sole proprietorship.  In 2001, Madoff

registered BLMIS as a New York limited liability company.  At all relevant times, Madoff

controlled BLMIS first as its sole member, and thereafter as its chairman and chief executive.

23.    In compliance with 15 U.S.C. § 78o(b)(1) and SEC Rule 15b1-3, and regardless of

its business form, BLMIS operated as a single broker-dealer from 1960 through 2008.  Public

records obtained from the Central Registration Depository of the Financial Industry Regulatory

Authority Inc. reflect BLMIS's continuous registration as a securities broker-dealer from January

19, 1960 through December 31, 2008.  At all times, BLMIS was assigned CRD No. 2625.  SIPC's

Membership Management System database ("MMS") also reflects BLMIS's registration with the

Securities and Exchange Commission ("SEC") as a securities broker-dealer from January 19, 1960

through December 31, 2008.  On December 30, 1970, BLMIS became a member of SIPC and

continued its membership without any change in status until the Filing Date.  SIPC membership is

contingent on registration of the broker-dealer with the SEC.

24.    For most of its existence, BLMIS's principal place of business was 885 Third

Avenue in New York City, where Madoff operated three principal business units: a proprietary

trading desk, a broker dealer operation, and an investment advisory business (the "IA Business").

25.    BLMIS's website publicly boasted about the sophistication and success of its

proprietary trading desk and broker-dealer operations, which were well known in the financial

industry.  BLMIS's website omitted the IA Business entirely. BLMIS did not register as an

investment adviser with the SEC until 2006, following an investigation by the SEC, which forced Madoff to register.

26.    For more than 20 years preceding that registration, the financial reports BLMIS filed with the SEC fraudulently omitted the existence of billions of dollars of customer funds BLMIS managed through its IA Business.

27.    In 2006, BLMIS filed its first Form ADV (Uniform Application for Investment Adviser Registration) with the SEC, reporting that BLMIS had 23 customer accounts with total assets under management of $11.7 billion.  BLMIS filed its last Form ADV in January 2008, reporting that its IA Business still had only 23 customer accounts with total assets under management of $17.1 billion.  In reality, Madoff grossly understated these numbers.  In 2008, BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion in assets under management.  At all times, BLMIS's Form ADVs were publicly available.

## II.    THE PONZI SCHEME

28.    At all relevant times, Madoff operated the IA Business as a Ponzi scheme using money deposited by customers that BLMIS claimed to invest in securities.  The IA Business had no legitimate business operations and produced no profits or earnings.  Madoff was assisted by several family members and a few employees, including Frank DiPascali, Irwin Lipkin, David Kugel, Annette Bongiorno, Joanne Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the fraud.

29.    BLMIS's proprietary trading desk was also engaged in pervasive fraudulent activity.  It was funded, in part, by money taken from the IA Business customer deposits, but fraudulently reported that funding as trading revenues and/or commissions on BLMIS's financial statements and other regulatory reports filed by BLMIS.  The proprietary trading business was

incurring significant net losses beginning in at least mid-2002 and thereafter, and thus required
fraudulent infusions of cash from the IA Business to continue operating.

30.    To provide cover for BLMIS's fraudulent IA Business, BLMIS employed Friehling
& Horowitz, CPA, P.C. ("Friehling & Horowitz") as its auditor, which accepted BLMIS's
fraudulently reported trading revenues and/or commissions on its financial statements and other
regulatory reports that BLMIS filed.  Friehling & Horowitz was a three-person accounting firm
based out of a strip mall in Rockland County, New York.  Of the three employees at the firm, one
was a licensed CPA, one employee was an administrative assistant, and one was a semi-retired
accountant living in Florida.

31.    On or about November 3, 2009, David Friehling, the sole proprietor of Friehling &
Horowitz, pleaded guilty to filing false audit reports for BLMIS and filing false tax returns for
Madoff and others.  BLMIS's publicly available SEC Form X-17A-5 included copies of these
fictitious annual audited financial statements prepared by Friehling & Horowitz.

*Madoff's Investment Strategy*

32.    BLMIS purported to execute two primary investment strategies for IA Business
customers:   the convertible arbitrage strategy and the split strike conversion strategy ("SSC
strategy").   For a limited group of IA Business customers, primarily consisting of Madoff's close
friends and their families, Madoff also purportedly purchased securities that were held for a certain
time and then purportedly sold for a profit.  At all relevant times, Madoff conducted no legitimate
business operations using any of these strategies.

33.    The convertible arbitrage investment strategy was supposed to generate profits by
taking advantage of the pricing mismatches that can occur between the equity and bond/preferred
equity markets.  Investors were told they would gain profits from a change in the expectations for

the stock or convertible security over time.  In the 1970s this strategy represented a significant portion of the total IA Business accounts, but by the early 1990s the strategy was purportedly used in only a small percentage of IA Business accounts.

34.    From 1992 forward, Madoff began telling IA Business customers that he employed the SSC strategy for their accounts, even though in reality BLMIS never traded any securities for its IA Business customers.  All funds received from IA Business customers were commingled in a single BLMIS account maintained at JPMorgan Chase Bank.  These commingled funds were not used to trade securities, but rather to make distributions to, or payments for, other customers, to benefit Madoff and his family personally, and to prop up Madoff's proprietary trading business.

35.    BLMIS reported falsified trades using backdated trade data on monthly account statements sent to IA Business customers that typically reflected substantial gains on the customers' principal investments.

36.    The SSC strategy purported to involve: (i) the purchase of a group or basket of equities (the "Basket") intended to highly correlate to the Standard & Poor's 100 Index (the "S&P 100 Index"), (ii) the purchase of out-of-the-money S&P 100 Index put options, and (iii) the sale of out-of-the-money S&P Index call options.

37.    The put options were to control the downside risk of price changes in the Basket. The exercise of put options could not turn losses into gains, but rather could only put a floor on losses.  By definition, the exercise of a put option would entail a loss for BLMIS.

38.    The sale of call options would partially offset the costs associated with acquiring puts, but would have the detrimental effect of putting a ceiling on gains.  The call options would make it difficult, if not impossible, for BLMIS to outperform the market, because in a rising market, calls would be exercised by the counterparty.

39.     The simultaneous purchase of puts and calls to hedge a securities position is commonly referred to as a "collar."  The purpose of the collar is to limit exposure to volatility in the stock market and flatten out returns on investment.

40.     For the SSC strategy to be deployed as Madoff claimed, the total value of each of the puts and calls purchased for the Basket had to equal the notional value of the Basket.  For example, to properly implement a collar to hedge the $11.7 billion of assets under management that Madoff publicly reported in 2006 would have required the purchase of call and put options with a notional value (for each) of $11.7 billion.  There are no records to substantiate Madoff's purchase of call and put options in any amount, much less in billions of dollars.

41.     Moreover, at all times that BLMIS reported its total assets under management, publicly available information about the volume of exchange-traded options showed that the volume of options contracts necessary to form the collar and implement the SSC strategy exceeded the available options.

BLMIS's Fee Structure

42.     BLMIS charged commissions on purportedly executed trades rather than management and performance fees based on the value of assets under management, but by using a commission-based structure, Madoff inexplicably walked away from hundreds of millions of dollars in fees.

*BLMIS's Market Timing*

43.     Madoff also lied to customers when he told them that he carefully timed securities purchases and sales to maximize value.  Madoff explained that he achieved market timing by intermittently taking customer funds out of the market.  During those times, Madoff purported to

invest BLMIS customer funds in U.S. Treasury securities ("Treasury Bills") or mutual funds invested in Treasury Bills.

44.     BLMIS's market timing, as reported on its customer statements, showed an uncanny ability to buy low and sell high, an ability so uncanny, that any sophisticated or professional investor, including the Defendant[s], could see it was statistically impossible. BLMIS's customer statements also showed, without fail, a total withdrawal from the market at every quarter and year end.

45.     As a registered broker-dealer, BLMIS was required, pursuant to section 240.17a-5 of the Securities Exchange Act of 1934, to file quarterly and annual reports with the SEC that showed, among other things, financial information on customer activity, cash on hand, and assets and liabilities at the time of reporting.  BLMIS's reported quarterly and year-end exits were undertaken to avoid these SEC requirements.  But these exits also meant that BLMIS was stuck with the then-prevailing market conditions.  It would be impossible to automatically sell all positions at fixed times, independent of market conditions, and win every time.  Yet this is precisely what BLMIS's customer statements reported.

46.     BLMIS's practice of exiting the market at fixed times, regardless of market conditions, was completely at odds with the SSC strategy, which relied on holding long positions rather than on short-term speculative trading.

47.     There is no record of BLMIS clearing a single purchase or sale of securities in connection with the SSC strategy at The Depository Trust & Clearing Corporation, the clearing house for such transactions, its predecessors, or any other trading platform on which BLMIS could have traded securities.  There are no other BLMIS records that demonstrate that BLMIS traded securities using the SSC strategy.

48.     All exchange-listed options relating to the companies within the S&P 100 Index, including options based upon the S&P 100 Index itself, clear through the Options Clearing Corporation ("OCC").  The OCC has no records showing that BLMIS's IA Business cleared any trades in any exchange-listed options.

*The Collapse of the Ponzi Scheme*

49.     The Ponzi scheme collapsed in December 2008, when BLMIS customers' requests for redemptions overwhelmed the flow of new investments.

50.     At their plea hearings, Madoff and DiPascali admitted that BLMIS purchased none of the securities listed on the IA Business customers' fraudulent statements, and that the IA Business operated as a Ponzi scheme.

51.     At all relevant times, BLMIS was insolvent because (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers alleged herein, BLMIS was left with insufficient capital.

## THE TRANSFERS

52.     Greenhall maintained three accounts (Nos. 1G0109, 1G0071, and 1G0234, collectively the "Accounts") with BLMIS.  For each Account, Greenhall executed a Customer Agreement and a Trading Authorization Limited to Purchases and Sales of Securities and Options ("Trading Authorization").  In addition to the Customer Agreement and Trading Authorization, for Account Nos. 1G0109 and 1G0234, Greenhall also executed an Option Agreement (the Option Agreement, together with the Customer Agreement and Trading Authorization, are collectively referred to as the "Account Agreements").  The Account Agreements were delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York.  At all times relevant hereto, NTC & Co. ("NTC") was custodian of Account No. 1G0109.

53.    The Account Agreements were performed in New York, New York through securities trading activities that took place in New York, New York.  The Accounts were held in New York, New York, and Greenhall sent funds to BLMIS and/or to BLMIS's account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the purported conducting of trading activities.

*Transfer History as Relating to Account 1G0109 (NTC & Co. FBO Armand L. Greenhall)*

54.    **Account No. 1G0109 (NTC & Co. FBO Armand L. Greenhall):**  In September 1995, Greenhall directed NTC to open an Individual Retirement Account ("IRA") on his behalf, and to invest the IRA with BLMIS.  As reflected in Exhibit B, over the life of Account No. 1G0109, $265,398 was deposited into, and $1,348,032 was withdrawn from, Account No. 1G0109.  Also as reflected in Exhibit B, in September 2003, $30,000 was transferred from Account No. 1G0109 to Account No. 1G0234.  In May 2008, Sweeney notified NTC that Greenhall had died, and that the Co-Executors had been appointed co-executors of the Greenhall Estate.  Thereafter, Sweeney instructed NTC to liquidate Account No. 1G0109.  On or about July 9, 2008, consistent with instructions from NTC, BLMIS wired $1,212,932 to a bank account held by the Greenhall Estate.  Of that amount, $1,112,634 consisted of fictitious profits received by the Greenhall Estate.

*Transfer History as Relating to Account 1G0234 (Armand L. Greenhall) and Transferor Accounts*

55.    **Silvia May Account No. 101309:**  In June 1983, Greenhall's mother, Silvia L. May, opened an account with BLMIS, labeled account no. 101309 (the "Silvia May Account").  Between June 1983 and June 1989, $280,000 was deposited into, and $323,918 was withdrawn from, the Silvia May Account.  In August 1989, when the Silvia May Account contained no principal, BLMIS purportedly transferred $280,000 from the Silvia May Account to Account No. 1G0071.

56.    **Account 1G0071 (Armand L. Greenhall):**    Greenhall opened Account No.
1G0071 in August 1989 with the purported $280,000 inter-account transfer from the Silvia May
Account, consisting entirely of fictitious profits.    Thereafter, between August 1989 and March
1997, $720,000 was deposited into, and $877,723 was withdrawn from, Account No. 1G0071.    In
April 1997, when Account No. 1G0071 contained no principal, BLMIS purportedly transferred
$1,040,050 from Account No. 1G0071 to Account No. 1G0234.

57.    **Account 1G0234 (Armand L. Greenhall):**    Greenhall opened Account No.
1G0234 in April 1997 with the purported $1,040,050 inter-account transfer from Account No.
1G0071, consisting entirely of fictitious profits.    As reflected in Exhibit B, over the life of Account
No. 1G0234, (i) no cash deposits were made into Account No. 1G0234; (ii) $30,000 was
transferred into Account No. 1G0234 from Account No. 1G0109; and (iii) $4,239,893 was
withdrawn from Account No. 1G0234.    The total lifetime amount withdrawn in excess of principal
was $4,209,893.    During the two years prior to the Filing Date, as reflected in Exhibit B,
$4,104,893 was withdrawn in excess of principal and received by Greenhall or the Greenhall
Estate, as follows:

a.    Between January 2007 and April 2008, Greenhall withdrew $110,000 from
Account No. 1G0234.    Greenhall deposited checks totaling this amount into
a JPMorgan Chase Bank account held in his name.

b.    In May 2008, after Greenhall's death, the Co-Executors withdrew
$3,985,470 from Account No. 1G0234, and wired that sum into a Wachovia
Securities bank account held by the Greenhall Estate (the "Greenhall Estate
Wachovia Securities Account").

c.    In June 2008, the Co-Executors withdrew $9,423 from Account No.
1G0234, and deposited a check in that sum into the Greenhall Estate
Wachovia Securities Account.

*Summary of Two-Year Transfers to Greenhall and the Greenhall Estate*

58.    During the two years prior to the Filing Date, BLMIS made transfers of fictitious

profits from the Ponzi scheme to (i) Greenhall, from Account No. 1G0234, totaling $110,000; and

(ii) the Greenhall Estate, from Account Nos. 1G0109 and 1G0234, totaling $5,107,527.  In total,

during the two years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers")

to Greenhall and the Greenhall Estate from Account Nos. 1G0109 and 1G0234 totaling $5,217,527

in fictitious profits.

59.    The Transfers received by Greenhall and the Greenhall Estate constitute non-

existent profits supposedly earned in Account Nos. 1G0109 and 1G0234, but, in reality, they were

other people's money.  The Transfers were made to Greenhall and the Greenhall Estate and are set

forth in Column 10 on Exhibit B annexed hereto.

60.    The Transfers are avoidable and recoverable under sections 548(a), 550(a)(1) and

551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-

2(c)(3).

## SUBSEQUENT TRANSFERS TO DEFENDANT YAN

*Chronology of Subsequent Transfers to Yan*

61.    Defendants each produced to the Trustee a Greenhall Estate accounting covering the period from Greenhall's death on April 14, 2008 to June 30, 2010 (the "Greenhall Estate Accounting").  A copy of the Greenhall Estate Accounting accompanied by a draft "Agreement Settling Account of Executors Receipt and Release" (the "Co-Executors' Agreement"), produced by the Greenhall Estate and Sweeney, is attached hereto as Exhibit D.  Greenhall's Will and the Co-Executors' Agreement each identify Yan as the residuary beneficiary of the Greenhall Estate.

62.    In her capacity as co-executor of the Greenhall Estate, Sweeney subsequently transferred at least $4,208,133 of the Transfers to Defendant Yan (the "Subsequent Transfers"). A chart setting forth the presently known Subsequent Transfers received by Yan is attached as Exhibit C.  As reflected in Exhibit C, the presently known Subsequent Transfers were made to Yan between July 2008 and September 2014.  Of the $4,208,133 in Subsequent Transfers, $1,388,990 was transferred within the time period covered by the Greenhall Estate Accounting, April 14, 2008 through June 30, 2010.

63.    **Subsequent Transfers Between July 2008 and April 2010:**  The schedule of distributions attached to the Greenhall Estate Accounting confirms that the amount of the Subsequent Transfers to Yan during the time period it covers was $1,388,990.  *See* Exhibit D at 10-05048_DEF 0000033—10-05048_DEF 0000034.   The Greenhall Estate Accounting also reflects that a subsequent distribution of the residuary of the Greenhall Estate, of over $2.5 million, had yet to be made as of the end of the period covered by the Greenhall Estate Accounting, June 30, 2010.  *See id.* at 10-05048_DEF 0000038.

64.    **The September 14, 2010 Subsequent Transfer:**  Following the time period covered by the Greenhall Estate Accounting, on or about September 13, 2010, Sweeney sent a

letter to Wells Fargo Advisors by facsimile requesting a transfer of $300,000 from the Greenhall

Estate to Yan.  On or about September 14, 2010, consistent with Sweeney's instructions, $300,000

was wired from the Greenhall Estate's bank account at Wells Fargo Advisors (the "Greenhall

Estate Wells Fargo Account") to a bank account held by Yan at Bank of America.

65.    **The January 4, 2011 Subsequent Transfer**:  On or about December 29, 2010,

Sweeney sent another letter to Wells Fargo Advisors by facsimile, requesting all but approximately

$200,000 of the funds in the Greenhall Estate Wells Fargo Account to be transferred to Yan.  A

copy of the letter is attached as Exhibit E.  On or about January 4, 2011, consistent with Sweeney's

instructions, $2,503,043 was wired from the Greenhall Estate Wells Fargo Account to a bank

account held by Yan at Wells Fargo Advisors.  *See* Greenhall Estate Wells Fargo Account

statement with bank account numbers redacted, attached as Exhibit F, at 10-

05048_DS_0001264—10-05048_DS_0001265.   Approximately $200,000 was to be held in the

Greenhall Estate Wells Fargo Account to cover the remainder of Sweeney's executor's

commission and unforeseen expenses.  *See* Exhibit E at 10-05048_DS_0001098.

66.    **The September 17, 2014 Subsequent Transfer**:  On or about September 17, 2014,

Yan wrote an email to Sweeney, requesting a check for $16,100 to cover taxes he owed to the

United States and New York State taxing authorities, based on distributions received by Yan from

the Greenhall Estate between April 14, 2008 and March 31, 2009.  A copy of the email is attached

as Exhibit G, at 10-05048_DS_0001107.  On September 19, 2014, in accordance with Yan's

request, Sweeney sent a letter to Yan enclosing a check from the Greenhall Estate in the amount

of $16,100, payable to Yan.  A copy of the letter and enclosed check voucher are attached

collectively as Exhibit G, at 10-05048_DS_0001105—10-05048_DS_0001106.

*Recoverability of Subsequent Transfers to Yan*

67.     The Subsequent Transfers are recoverable from Defendant Yan under section

550(a) of the Bankruptcy Code, and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-

2(c)(3).

68.     Yan did not receive an executor's commission.  The Subsequent Transfers to Yan

constituted a gift or bequest of the Greenhall Estate residuary.

69.     The Co-Executors were aware as early as December 11, 2008 that i) a large portion

of Greenhall's assets were invested with BLMIS, ii) BLMIS's operations were fraudulent, and iii)

the Transfers were avoidable by the Trustee.  Yan subsequently took the Subsequent Transfers

from the Greenhall Estate knowing these facts, after being put on notice by Sweeney.

70.     Specifically, on December 17, 2008, Sweeney wrote to several Greenhall Estate

beneficiaries, including Yan, "[o]n behalf of [her]self and Peng Yan as Executors," advising them

that payment of legacies from the Greenhall Estate would be "delayed," as "[a] large portion of

Mr. Greenhall's assets were invested with [BLMIS]," and "Mr. Madoff was arrested last week in

what is alleged to be an elaborate Ponzi scheme."  A copy of these letters is attached collectively

as Exhibit I.  Sweeney stated that, "considering the uncertainty surrounding this situation, the

Executors feel that it would be imprudent to pay your legacy at this time." *See* Exhibit I.

71.     On August 13, 2009, Sweeney wrote to another of the Greenhall Estate legatees,

with copy to Yan, stating that "at this time, the Executors [which included Yan] are [still] not in

not in a position to pay the legacies under the Will because we do not know whether we will be

required to repay any or all of the funds withdrawn from Mr. Greenhall's accounts at [BLMIS] to

the bankruptcy trustee." A copy of this letter is attached as Exhibit J.

72.      On July 9, 2009, the Co-Executors both signed a United States Estate Tax Return

for tax year 2008, on behalf of the Greenhall Estate, in which they reported "[u]nder penalties of

perjury" "a possibility that one or more claims could be filed" against the Greenhall Estate in

connection with withdrawals of funds from the Accounts.    *See* Exhibit H at 10-

05048_DS_0000449, 10-05048_DS_0000461.

73.      On December 14, 2009, Sweeney submitted "protective claims" for refund of taxes

paid by the Greenhall Estate to United States and New York State taxing authorities. A copy of

the claims and related correspondence, with social security numbers, employer identification

numbers and the Greenhall Estate's bank account number redacted, are attached collectively as

Exhibit K. Sweeney wrote to the United States Department of the Treasury and the New York

State Estate Tax Processing Center, copying Yan, "[o]n behalf of [her]self and Peng Yan," stating

that the protective claims were "based on a currently unliquidated possible liability to Irving H.

Picard, the Bankruptcy Trustee appointed in connection with the Bernard Madoff Ponzi scheme."

*See* Exhibit K at YAN PRODUCTION 000002, YAN PRODUCTION 000006. Sweeney sent a

copy of these protective claims to Yan on December 14, 2009. *See id.* at YAN PRODUCTION

000001.

74.      As early as December 11, 2008, and no later than December 17, 2008, the Co-

Executors were aware of BLMIS's fraud, and of the Greenhall Estate's possible liability to the

Trustee for return of the Transfers.

75.    Despite being aware that the Transfers held in the Greenhall Estate could be subject to avoidance by the Trustee, Yan chose to accept millions of dollars in distributions from the Greenhall Estate.

## COUNT ONE

### FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 105(a), 548(a)(1)(A), 550(a) AND 551

76.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

77.    Each of the Transfers was made on or within two years before the Filing Date.

78.    Each of the Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

79.    Each of the Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors.

80.    Each of the Transfers was made to Greenhall or the Greenhall Estate.

81.    Each of the Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

82.    As a result of the foregoing, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers, which total $5,217,527; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from the Greenhall Estate for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate.

## COUNT TWO

### RECOVERY OF SUBSEQUENT TRANSFERS
### 11 U.S.C. §§ 105(a) AND 550(a)

83.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

84.    Each of the Subsequent Transfers, which total at least $4,208,133, is recoverable from Defendant Yan under section 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

85.    Defendant Yan is an immediate or mediate transferee of the Subsequent Transfers from the Greenhall Estate.

86.    None of the Subsequent Transfers was taken by Defendant Yan in exchange for value.

87.    Each of the Subsequent Transfers after December 2008 was received by Defendant Yan at a time when he had actual knowledge or was willfully blind to facts suggesting a high probability of fraud at BLMIS, and with knowledge of the voidability of the Transfers and possible liability to the Trustee.

88.    As a result of the foregoing, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against Defendant Yan: (a) recovering the Subsequent Transfers, which total at least $4,208,133, or the value thereof, from Defendant Yan for the benefit of the BLMIS estate; and (b) awarding any other relief as the Court deems appropriate.

89.    The Trustee's discovery and investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the initial and subsequent transfers discussed above, and any additional transfers; and (ii) seek recovery of such transfers.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor

of the Trustee and against Defendants as follows:

i.      On the First Claim for Relief, pursuant to sections 105(a), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from the Greenhall Estate for the benefit of the BLMIS estate; and (d) awarding any other relief the Court deems just and appropriate;

ii.     On the Second Claim for Relief, pursuant to sections 105(a) and 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, judgment: (a) recovering the Subsequent Transfers, or the value thereof, from Defendant Yan for the benefit of the BLMIS estate; and (b) awarding any other relief the Court deems just and appropriate;

iii.    On all Claims for Relief, impressing the Defendants' property, or the proceeds, product and offspring of such property, with an equitable lien and/or a constructive trust in favor of the Trustee for the benefit of the estate, to the extent that the Transfers or Subsequent Transfers were used, in whole or in part, to purchase, improve and/or maintain such property;

iv.     On all Claims for Relief, establishing a constructive trust over all Transfers and Subsequent Transfers and their proceeds, product and offspring in favor of the Trustee for the benefit of the estate;

v.      On all Claims for Relief, pursuant to federal common law and/or N.Y. CPLR 5001 and 5004, as applicable, awarding the Trustee prejudgment interest from the date on which the Transfers or Subsequent Transfers were received;

vi.     On all Claims for Relief, awarding the Trustee all applicable interest, costs and disbursements incurred in this proceeding; and

vii.    Granting the Trustee such other, further, and different relief as the Court deems

just, proper, and equitable.


Date:  March 9, 2018
        New York, New York

Of Counsel:                                    By: */s/* Nicholas J. Cremona

**BAKER & HOSTETLER LLP**                      **BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100                    45 Rockefeller Plaza
Houston, TX 77002-6111                         New York, New York 10111
Telephone: (713) 751-1600                      Telephone: (212) 589-4200
Facsimile: (713) 751-1717                      Facsimile: (212) 589-4201
Dean D. Hunt                                   David J. Sheehan
Email: dhunt@bakerlaw.com                      Email:  dsheehan@bakerlaw.com
Farrell A. Hochmuth                            Nicholas J. Cremona
Email: fhochmuth@bakerlaw.com                  Email:  ncremona@bakerlaw.com

                                               *Attorneys for Irving H. Picard, Trustee for the*
                                               *Substantively Consolidated SIPA Liquidation*
                                               *of Bernard L. Madoff Investment Securities*
                                               *LLC and the estate of Bernard L. Madoff*

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| NTC & CO. FBO ARMAND L GREENHALL **REDACTED** | 1G0109 |
| ARMAND L GREENHALL | 1G0234 |

MADC0894_00000001

BLMIS ACCOUNT NO. 1G0109 - NTC & CO. FBO ARMAND L GREENHALL **REDACTED**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | 90-Day Preferential Transfers | 2-Year Fraudulent Transfers | 6-Year Fraudulent Conveyances |
| 10/26/1995 | CHECK | 265,398 | 265,398 | - | - | - | 265,398 | - | - | - |
| 9/9/2003 | TRANS TO 1G023430 | (30,000) | - | - | - | (30,000) | 235,398 | - | - | - |
| 8/24/2005 | CHECK | (17,000) | - | (17,000) | - | - | 218,398 | - | - | - |
| 8/29/2006 | CHECK | (42,000) | - | (42,000) | - | - | 176,398 | - | - | - |
| 10/4/2007 | CHECK | (46,100) | - | (46,100) | - | - | 130,298 | - | - | - |
| 3/25/2008 | CHECK | (30,000) | - | (30,000) | - | - | 100,298 | - | - | - |
| 7/9/2008 | CHECK WIRE | (1,212,932) | - | (1,212,932) | - | - | (1,112,634) | - | (1,112,634) | (1,112,634) |
| | Total: | | $  265,398 | $  (1,348,032) | $  - | $  (30,000) | $  (1,112,634) | $  - | $  (1,112,634) | $  (1,112,634) |

MADC0894_00000002

Exhibit B

BLMIS ACCOUNT NO. 1G0234 - ARMAND L GREENHALL

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>90-Day Preferential Transfers | Column 10<br>2-Year Fraudulent Transfers | Column 11<br>6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/1997 | TRANS FROM 1G007110 | 1,040,050 [1] | - | - | - | - | - | - | - | - |
| 7/1/1997 | CHECK | (40,000) | - | (40,000) | - | - | (40,000) | - | - | - |
| 10/1/1997 | CHECK | (40,000) | - | (40,000) | - | - | (80,000) | - | - | - |
| 1/2/1998 | CHECK | (40,000) | - | (40,000) | - | - | (120,000) | - | - | - |
| 9/9/2003 | TRANS FROM 1G010930 | 30,000 | - | - | 30,000 | - | (90,000) | - | - | - |
| 10/2/2006 | CHECK | (15,000) | - | (15,000) | - | - | (105,000) | - | - | (15,000) |
| 1/2/2007 | CHECK | (15,000) | - | (15,000) | - | - | (120,000) | - | (15,000) | (15,000) |
| 4/2/2007 | CHECK | (15,000) | - | (15,000) | - | - | (135,000) | - | (15,000) | (15,000) |
| 4/16/2007 | CHECK | (20,000) | - | (20,000) | - | - | (155,000) | - | (20,000) | (20,000) |
| 7/2/2007 | CHECK | (15,000) | - | (15,000) | - | - | (170,000) | - | (15,000) | (15,000) |
| 10/1/2007 | CHECK | (15,000) | - | (15,000) | - | - | (185,000) | - | (15,000) | (15,000) |
| 1/2/2008 | CHECK | (15,000) | - | (15,000) | - | - | (200,000) | - | (15,000) | (15,000) |
| 4/1/2008 | CHECK | (15,000) | - | (15,000) | - | - | (215,000) | - | (15,000) | (15,000) |
| 5/30/2008 | CHECK WIRE | (3,985,470) | - | (3,985,470) | - | - | (4,200,470) | - | (3,985,470) | (3,985,470) |
| 6/11/2008 | CHECK | (9,423) | - | (9,423) | - | - | (4,209,893) | - | (9,423) | (9,423) |
| | Total: | | $ - | $ (4,239,893) | $ 30,000 | $ - | $ (4,209,893) | $ - | $ (4,104,893) | $ (4,119,893) |

[1] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

MADC0894_00000003

**Exhibit C**

**Subsequent Transfers from the Estate of Armand L. Greenhall
to Defendant Peng Yan**

| Approximate Date | Amount |
|---|---|
| 7/9/2008 | $3,823.01 |
| 7/10/2008 | $4,448.00 |
| 8/27/2008 | $7,000.00 |
| 8/27/2008 | $2,394.00 |
| 9/18/2008 | $1,325.00 |
| 12/5/2008 | $25,000.00 |
| 12/9/2008 | $800,000.00 |
| 3/18/2009 | $25,000.00 |
| 5/29/2009 | $25,000.00 |
| 7/31/2009 | $20,000.00 |
| 10/31/2009 | $25,000.00 |
| 12/28/2009 | $25,000.00 |
| 3/15/2010 | $25,000.00 |
| 4/6/2010 | $400,000.00 |
| 9/14/2010 | $300,000.00 |
| 1/4/2011 | $2,503,043.16 |
| 9/19/2014 | $16,100.00 |
| **Total** | **$4,208,133.17** |

Full date range of currently known subsequent transfers from the Greenhall Estate to Defendant Peng Yan

$1,388,990.01 within 4/14/2008 - 6/30/2010, the time period covered by the Greenhall Estate Accounting

STATE OF NEW YORK
SURROGATE'S COURT: WESTCHESTER COUNTY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In the matter of the Settlement of                                :
The Final Account of Deidre A. Sweeney
And Peng Yan                                                       **AGREEMENT SETTLING**
As Executors of Last Will and Testament          :          **ACCOUNT OF**
                                                                  **EXECUTORS**
Of                                                                **RECEIPT AND RELEASE**

        ARMAND L. GREENHALL,                              :
                                                                  File No. 2008 -1750
                        Deceased.                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        This Agreement made as of November    , 2010 by and among following

parties, TO WIT:

        Deidre A. Sweeney and Peng Yan as Executors under the Will of Armand L.

Greenhall, and Peng Yan as Residuary Beneficiary under said Will.

        WHEREAS:

        (a)    Armand L. Greenhall died on   **Redacted**  , a resident of the City,

County and State of New York, leaving a Will dated August 17, 2006 which was

admitted to probate by the Surrogate's Court of New York County on November 19,

2008.  Letters Testamentary were issued to Deidre A. Sweeney and Peng Yan on

that date.

        (b)    Pursuant to the terms of the Will, numerous legacies were bequeathed

to various individuals and charitable institutions. These legacies have been paid with

9% interest pursuant to an agreement with the Surrogate of New York County and

Alex Straus one of the legatees. The residuary estate was bequeathed to Peng Yan.

A copy of the Will is attached as Exhibit A.

(c)      The Executors has concluded all estate tax proceedings related to the
estate and have paid all estate taxes which may have been due.

(d)      The Executors have prepared as Exhibit B, an account of the
proceedings of the Executors for the period April 14, 2008 to June 30, 2010 in the
form of cash sheets and other schedules (hereinafter referred to as the "Account").

(e) The parties acknowledge that a significant portion of the decedent's assets
were invested with Bernard Madoff & Co. These funds were collected by the
Executors in May and June of 2008 before it was discovered that the operation was
fraudulent. The U. S. and New York Estate Tax Returns were filed on the basis that
the taxable estate included all assets included the funds received from the
decedent's Madoff accounts. To date, no communication has been received from the
Bankruptcy Trustee with respect to the funds. Therefore, the accounting attached
hereto calculates the Executor's commissions due Deidre A. Sweeney as Executor
on the full amount of assets collected by the Executors.

(f)      The parties are desirous of avoiding the cost and delay necessarily
attendant upon a judicial proceeding to settle the account of proceedings of Deidre A.
Sweeney and Peng Yan, as Executors.  Accordingly, they have requested the
Executors to forego their right to a judicial settlement at this time. They have
examined this Agreement and the exhibits hereto (hereinafter collectively referred to
as the "Account") and are satisfied that the Account is complete, correct and
adequately represents the acts and proceedings of the Executors.

2

Therefore,

(1)    Peng Yan, as the residuary Beneficiary of the Estate of Armand L. Greenhall does hereby, for and on behalf of himself, his personal representatives, heirs, successors and assigns:

(a)    Approve the Account, waive his right to demand judicial settlement and agree that the Account shall be deemed settled by this Settlement Agreement, with the same effect as if settled judicially;

(b)    Acknowledges receipt of all amounts of income and principal to which he may be entitled in full satisfaction of all his rights and interests as residuary beneficiary of the estate.

(c)    Authorize and approve of the payment of $28,859.58 as legal fees and disbursements of $1,801.07, all of which has been paid to Messrs. McCanliss & Early for legal fees, and disbursements due to McCanliss & Early LLP for legal fees as attorneys for the Executors.

(d)    Authorize and approve the payment to Deidre A. Sweeney, as Co -Executor of commissions in the amount of $ 225,516.40 as shown by Schedule H.

(e)    Represent that he has not assigned, released or encumbered his interests in the estate;

(f)    Releases and discharges Deidre A. Sweeney, as Executor and her successors and assigns from any and all liability or further accountability whatsoever in connection with or arising from any matters in connection with the Decedent's estate or the administration and distribution thereof for the period April

3

10-05048_DEF_0000003

14, 2010 to June 30, 2010, including any and all claims which may arise subsequent
to the date of this Settlement Agreement with respect to the funds received from the
decedent's accounts held at Bernard L. Madoff Inc., any of its subsidiaries,
successors in interest and assigns; and

(g)     Agrees to indemnify and hold harmless Deidre A. Sweeney and
individually and as Executor, and her successors and assigns from any and all claims
and liabilities which they may incur at any time by reason of anything connected with
the Decedent's estate or the administration thereof including any and all claims which
may arise subsequent to the date of this Settlement Agreement with respect to the
funds received from the decedent's accounts held at Bernard L. Madoff Inc, any of its
subsidiaries, successors in interest and assigns; and;

(h)     Waive the issuance and service of a citation or other process in
any proceeding brought for the judicial settlement of this Account and consent to the
entry of a judgment or decree judicially settling the same without further notice to
them.

(3)     Deidre A. Sweeney and Peng Yan, as Executors, hereby agree to
forego at this time their right to be discharged in a proceeding for the judicial
settlement of the final account.

(4)     This Agreement may be executed in counterparts.

Dated: New York, New York
       November     , 2010

                                    _____
                                    Deidre A. Sweeney

                                    _____
                                    Peng Yan

                                    4

10-05048_DEF_0000004

State of New York   )

                    )ss.:

County of New York)

On the           day of November in ·the year 2010 before me, the
undersigned, personally appeared **Deidre A. Sweeney,** personally known to me or
proved to me on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that she executed the
same in her capacity, and that by her signature on the instrument, the individual, or
the person upon behalf of which the individual acted, executed the instrument, and
that such individual made such appearance before the undersigned in the City,
County and State of New York.

---

Signature and Office of individual taking acknowledgment

State of                 )

                      )ss.:

County of              )

On the           day of           in the year 2010 before me,
the undersigned, personally appeared **Peng Yan,** personally known to me or proved
to me on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he executed the
same in his capacity, and that by his signature on the instrument, the individual, or
the person upon behalf of which the individual acted, executed the instrument, and
that such individual made such appearance before the undersigned in
_____ *(insert the city or other political subdivision and the
state or country or other place the acknowledgment was taken).*

---

Signature and office of individual taking acknowledgment

5

STATE OF NEW YORK
SURROGATE'S COURT : COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                        :

      Accounting of             :     File No. 2008 - 1750

DEIDRE A. SWEENEY and PENG YAN,  :
As Executors of the Estate of        :
                           :
      ARMAND L. GREENHALL   :
                           :
          Deceased . :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TO THE SURROGATE'S COURT OF THE COUNTY OF KINGS:

        The undersigned does hereby render the account of proceedings as
follows:

        Period of account from April 14, 2008 to June 30, 2010.

        This is  a final account.

## SCHEDULE A

Statement of Principal Received

## SCHEDULE A-1

Statement of Increases on Sales, Liquidation or Distribution

## SCHEDULE A-2

Statement of All Income Collected

## SCHEDULE B

Statement of Decreases Due to Sales, Liquidation, Collection, Distribution or
Uncollectibility

## SCHEDULE C

Statement of Funeral and Administration Expenses

## SCHEDULE C-1

Statement of Unpaid Administration Expenses

## SCHEDULE D

Statement of All Creditors' Claims

## SCHEDULE E

Statement of Distributions of Principal

## SCHEDULE F

Statement of New Investments, Exchanges and Stock Distributions

## SCHEDULE G

Statement of Principal Remaining on Hand

## SCHEDULE H

Statement of Interested Parties

## SCHEDULE I

Statement of Estate Taxes Paid and Allocation Thereof

## SCHEDULE J

Statement of Computation of Commissions

## SCHEDULE K

Statement of Other Pertinent Facts and of Cash Reconciliation

THE FOLLOWING IS A SUMMARY STATEMENT OF THIS ACCOUNT:

## PRINCIPAL ACCOUNT

### CHARGES:

| | | |
|---|---|---|
| Amount shown by Schedule "A" (Principal Received) | $ 9,688,246.48 | |
| Amount shown by Schedule "A-1" (Realized Increases on Principal) | 65,756.73 | |
| Amount shown by Schedule "A-2" (Income Collected) | 89,881.55 | |
| Total Charges | | $ 9,843,884.76 |

### CREDITS:

| | | |
|---|---|---|
| Amount shown by Schedule "B" (Realized Decreases on Principal) | 536,097.67 | |
| Amount shown by Schedule "C" (Funeral and Administration Expenses) | 3,541,455.93 | |
| Amount shown by Schedule "D" (Creditors' Claims actually paid) | 89,078.80 | |
| Amount shown by Schedule "E" (Distributions of Principal) | 2,512,708.43 | |
| Total Credits | | 6,679,340.83 |
| Balance on Hand shown by Schedule "F" | | $ 3,164,511.61 |

10-05048_DEF_0000008

## SCHEDULE A

### Statement of Principal Received 4/14/08

Wachovia A/C # [Redacted]-0942

| | | | |
|---|---|---|---|
| 1 | Blackrock NY Insd. | $ 25,000.00 | |
| 1000 | Barrick Gold Corp. | 42,930.00 | |
| 3300 | Blackrock NY Ins. | 44,715.00 | |
| 4000 | Eaton Vance NY | 53,520.00 | |
| 1000 | T.T. Wnhanced Equity | 14,360.00 | |
| 1000 | General Motors @ 5.25% | 16,300.00 | |
| 84 | Idearc | 319.20 | |
| 1000 | Ingram Micro | 15,930.00 | |
| 1000 | Magellan Midstream Prtns | 42,390.00 | |
| 500 | Merck & Co. | 20,575.00 | |
| 1000 | JP Morgan Chase @ 6.25% | 23,200.00 | |
| 1000 | Motorola Inc. | 9,000.00 | |
| 2000 | National Semiconductor | 39,360.00 | |
| 1093 | Vodafone Group | 32,746.28 | |
| 1000 | Xerox | 14,660.00 | |
| 20000 | FHLMC Step @ 4% 5/15/18 | 19,540.40 | |
| 15000 | Green Brier @ 2.375% 5/15/26 | 12,225.00 | |
| 5000 | NY HSG HSP @ 7% 11/1/17 | 5,854.05 | |
| 2000 | NY ST MTG @ 5.3% 4/1/29 | 20,279.80 | |
| 1000 | Trinity @ 3.875% 6/1/36 | 9,237.50 | |
| | Money Market | 49,823.93 | 511,966.16 |

Wachovia A/C [Redacted]-0967

| | | |
|---|---|---|
| 200 | Boeing Co. | 15,431.00 |
| 100 | CBS Corp. CIB | 2,111.50 |
| 200 | Caterpillar Inc. | 15,072.00 |
| 300 | CullenFrost Bankers | 15,567.00 |
| 300 | Dow Chemical Co. | 11,442.00 |

Schedule A
-1-

2

## Schedule A (Cont'd)

| | | | |
|---|---|---|---|
| 45 | DuPont EL Demours | 2,205.00 | |
| 150 | Exxon Mobil | 13,388.25 | |
| 200 | Honeywell International | 11,318.00 | |
| 75 | 1 Shares Dow Jones | 7,132.50 | |
| 100 | 1 Shares Inv. Gr Bond | 10,532.00 | |
| 65 | 1 Shares Lehman 1-3 Yr | 5,453.50 | |
| 200 | Kellogg Co. | 10,435.00 | |
| 300 | Eli Lilly | 15,546.00 | |
| 10 | Merck & Co. | 411.50 | |
| 160 | J.P. Morgan Chase | 6,716.80 | |
| 300 | Nucor Corp. | 20,490.00 | |
| 600 | Qualcomm Inc. | 24,852.00 | |
| 100 | Viacom | 3,938.00 | |
| 2 | Boeing Call June 85 | <590.00> | |
| 3 | Cullen Frosr Call July 55 | <1,200.00> | |
| 3 | Nucor Corp Call July 80 | <960.00> | |
| | Money Market | 43,609.84 | 232,901.89 |
| | | | |
| | Securities in Safe Deposit Box | | |
| 6,927 | AT&T | 259,069.80 | |
| 10,000 | Coca Cola Co. | 607,500.00 | |
| 1,000 | Enbridge Energy | 49,300.00 | |
| 1460 | Energy East Corp. | 35,609.40 | |
| 748 | General Electric | 23,995.84 | |
| 5,000 | MS Municipal Premium | 41,650.00 | |
| 3,000 | Plum Creek Timber Co. | 120,180.00 | |
| 852 | Quest Communications | 3,919.20 | |
| 1,000 | Southern Co. | 36,240.00 | |

Schedule A
-2-

3

**10-05048_DEF_0000010**

## Schedule A (Cont'd)

| | | | |
|---|---|---:|---:|
| 3496 | Trust Co. Bank Corp. | 30,624.96 | |
| 5296 | VKM Advantage Income | 63,499.04 | |
| 1696 | Verizon Communications | 60,326.72 | |
| 1000 | Westmasset Emmkt. | 12,870.00 | |
| 15,000 | Wstrn Asst. Hun. | 116,700.00 | 1,461,484.96 |
| | **Ameritrade** | | |
| 1333 | Alliance Berstein | 10,983.92 | |
| 1,000 | AT&T | 37,400.00 | |
| 1,000 | Agree Realty Corp. | 26,310.00 | |
| 1,000 | Coca Cola | 23,520.00 | |
| 1,000 | Tivo Inc. | 8,940.00 | |
| 2,000 | Time Warner | 28,420.00 | |
| | Cash | 13,860.08 | 149,434.00 |
| | JP Morgan Chase Checking | 73,790.84 | |
| 33 | Fairpoint | 252.29 | |
| | Apartment | 2,010,000.00 | |
| | Life Insurance | 30,000.00 | |
| | Treasury | 20,000.00 | |
| 5/30 | Wire Trans Chas B Madoff | 3,985,470.45 | |
| | Total | | 6,119,513.58 |
| | | | 8,475,300.59 |
| | IRA | | |
| | Bernard Medoff Brkc Acct. | 1,212,931.72 | |
| | Fisher V. Balance | 14.17 | 1,212,945.89 |
| | | | 9,688,246.48 |
| | TOTAL SCHEDULE A | $9,688,246.48 | |

Schedule A
-3-

4

10-05048_DEF_0000011

## SCHEDULE A - 1

## STATEMENT OF INCREASES IN PRINCIPAL

|  |  |  | COST | PROCEEDS | GAIN |
|---|---|---|---|---|---|
| 2008 |  |  |  |  |  |
| 06/06 | 6927 shs. | AT&T | $ 259,069.80 | $ 266,016.67 | $ 6,946.87 |
| 11/06 | $25,000.00 | Blackrock NY INSD Muni | 25,000.00 | 25,000.00 | -0- |
| 11/14 | 2 shs. | Boeing Co. | 590.00 | 590.00 | -0- |
| 11/06 | 200 shs. | Caterpillar Inc. | 15,072.00 | 16,098.90 | 1,026.90 |
| 11/14 | 3 shs. | Cullen Frost Bankers | 1,200.00 | 1,200.00 | -0- |
| 06/06 | 300 shs. | Cullen Frost Bankers | 15,567.00 | 15,982.70 | 415.70 |
| 11/04 | 300 shs. | Dow Chemical Co. | 11,442.00 | 11,525.82 | 83.82 |
| 06 | 4000 shs. | Eaton Vance NY | 53,520.00 | 54,538.75 | 1,018.75 |
| 06 | 1000 shs. | Enbridge Energy | 49,300.00 | 50,838.21 | 1,538.21 |
| 06 | 1460 shs. | Energy East Corp. | 35,609.40 | 38,700.59 | 3,091.19 |
| 06 | 1000 shs. | First Trust Unhanced Equity | 14,360.00 | 14,726.45 | 366.45 |
| 06 | 75 shs. | 1 Shares Dow J NS | 7,132.50 | 7,454.20 | 321.70 |
| 06 | 2000 shs. | National Semiconductor | 39,360.00 | 47,754.70 | 8,394.70 |
| 06 | 300 shs. | Nucor | 20,490.00 | 23,350.36 | 2,860.36 |
|  | 3000 shs. | Plum CRKTMBER Co. | 120,180.00 | 139,913.75 | 19,733.75 |
|  | 600 shs. | Qualcomm Inc. | 24,852.00 | 28,378.35 | 3,526.35 |
|  | 2000 shs. | Time Warner | 28,420.00 | 29,139.22 | 719.22 |

Schedule A - 1
-1-

27

10-05048_DEF_0000012

## Schedule A -1 (cont'd)

|  |  |  | COST | PROCEEDS | GAIN |
|---|---|---|---|---|---|
|  | $10,000.00 | Trinity @ 3.875% due 6/1/36 | 9,237.50 | 9,947.50 | 710.00 |
| 06 | 5296 shs. | VKM Advantage Income | 63,499.04 | 63,709.71 | 210.67 |
|  | 1696 shs. | Verizon Communication | 60,326.72 | 64,155.06 | 3,828.34 |
|  | 1093 shs. | Vodafone Group | 32,746.28 | 34,219.74 | 1,473.46 |
|  | 1000 shs. | Western Assets Emmkt | 12,870.00 | 13,175.55 | 305.55 |
|  | 15000 | Western Assets MUN | 116,700.00 | 117,966.61 | 1,266.61 |
| /14/09 | 33 shs. | Fairpoint | -0- | 94.38 | 94.38 |
| 06 | 1000 shs. | Ingram Micro | 15,930.00 | 18,366.17 | 2,436.17 |
|  |  | Total | 1,032,474.24 | 1,092,843.39 | 60,369.15 |
| 05/26/10 |  | World ComVictim Trust | -0- | 102.89 | 102.89 |
| 05/26/10 |  | World ComVictim Settlement Fd | -0- | 44.74 | 44.74 |
| 04/18/08 |  | Nucor 3 | 1,110.00 | 1,199.99 | 89.99 |
| 04/21 |  | DuPont | -0- | 4,749.97 | 4,749.97 |
| 04/23/06 |  | Boeing | -0- | 399.99 | 399.99 |
|  | TOTAL SCHEDULE A-1 |  | $1,033,584.24 | $1,099,340.97 | $65,756.73 |

Schedule A I
-2-

28

10-05048_DEF_0000013

## SCHEDULE A-2

### Statement Of Income Collected

2008
DIVIDENDS

| | | | |
|---|---|---|---|
| | AT&T | | |
| 05/01 | | 2,770.80 | |
| 05/01 | | 400.00 | 3,170.80 |
| | ALLIANCE BERSTEIN | | |
| 05/01 | | 66.65 | |
| 06/20 | | 66.65 | 133.30 |
| | BARRICK GOLDCORP | | |
| 06/16 | | 200.00 | 200.00 |
| | BOEING CO. | | |
| 06/06 | | 80.00 | 80.00 |
| | CBS CORP. | | |
| 07/01 | | 27.00 | 27.00 |
| | CATERPILLAR INC. | | |
| 05/20 | | 72.00 | 72.00 |
| | COCA COLA | | |
| 06/26 | | 70.00 | 70.00 |
| | CULLEN FROST BANKERS | | |
| 06/13 | | 126.00 | 126.00 |
| | DOW CHEMICAL CO. | | |
| 04/30 | | 126.00 | 126.00 |
| | DUPONT EL DENEMOURS | | |
| 06/12 | | 18.45 | 18.45 |
| | EATON VANCE NY | | |
| 05/19 | | 236.32 | |
| 04/17 | | 236.32 | |
| 06/17 | | 236.32 | 708.96 |
| | ENERGY EAST CORP. | | |
| 05/15 | | 452.60 | 452.60 |

Schedule A-2
-1-

5

**10-05048_DEF_0000014**

## Schedule A-2 (cont'd)

| | EXXON MOBIL | | |
|---|---|---|---|
| 06/10 | | 60.00 | 60.00 |
| | HONEYWELL INT'L | | |
| 06/10 | | 55.00 | 55.00 |
| | 1 SHARES INV GR | | |
| 05/07 | | 46.26 | |
| 06/06 | | 47.32 | 93.58 |
| | 1 SHARES LEHMAN | | |
| 05/07 | | 10.50 | |
| 06/06 | | 14.48 | 24.98 |
| | KELLOGG CO. | | |
| 06/17 | | 62.00 | 62.00 |
| | ELI LILLY | | |
| 06/10 | | 141.00 | 141.00 |
| | MERCK & CO. | | |
| 07/01 | | 193.80 | 193.80 |
| | JP MORGAN CHASE | | |
| 04/30 | | 60.80 | 60.80 |
| | M.S. MUNICIPAL PREMIUM | | |
| 06/19 | | 187.50 | 187.50 |
| | MOTOROLA INC. | | |
| 04/15 | | 50.00 | 50.00 |
| | NUCOR | | |
| 05/09 | | 156.00 | 156.00 |
| | QUALCOMM INC. | | |
| 06/27 | | 96.00 | 96.00 |

6

**10-05048_DEF_0000015**

## Schedule A-2 (cont'd)

|  | Q WEST COMM |  |  |
|---|---|---|---|
| 06/19 |  | 68.16 | 68.16 |
|  | TIME WARNER |  |  |
| 06/16 |  | 125.00 | 125.00 |
|  | TRUST CO. BANK CORP. |  |  |
| 07/01 |  | 384.56 | 384.56 |
|  | VERIZON COMM |  |  |
| 05/01 |  | 774.83 | 774.83 |
|  | VODAFONE GP |  |  |
| 08/01 |  | 1,095.42 | 1,095.42 |
|  | XEROX |  |  |
| 04/30 |  | 42.50 | 42.50 |
|  | AMERITRADE MM |  |  |
| 05/30 |  | 20.64 |  |
| 06/10 |  | 9.87 |  |
| 06/30 |  | .04 | 30.55 |
|  | WACHOVIA MM 942 |  |  |
| 04/30 |  | 42.50 |  |
| 05/30 |  | 44.30 |  |
| 06/24 |  | 1.02 | 87.82 |
|  | WACHOVIA MM 969 |  |  |
| 04/30 |  | 34.70 |  |
| 05/30 |  | 37.61 |  |
| 06/17 |  | .81 | 73.12 |
|  | FAIRPOINT |  |  |
| 07/18 |  | 8.50 |  |
| 01/16/09 |  | 8.50 | 17.00 |
|  | MADOFF US MM |  |  |
| 07/09 |  | 24.72 | 24.72 |

Schedule A-2
-3-

7

10-05048_DEF_0000016

### Schedule A-2 (cont'd)

BLACKROCK NY INSD
MUNI

| | | | |
|---|---|---|---|
| 04/18 | | 14.06 | |
| 04/25 | | 14.68 | |
| 05/02 | | 17.23 | |
| 05/09 | | 18.91 | |
| 05/16 | | 16.94 | |
| 05/23 | | 13.58 | |
| 05/30 | | 12.41 | |
| 06/06 | | 11.90 | |
| 06/13 | | 12.26 | |
| 06/20 | | 12.68 | |
| 06/27 | | 12.05 | |
| 07/07 | | 17.59 | |
| 07/11 | | 6.95 | |
| 07/18 | | 12.79 | |
| 07/25 | | 11.78 | |
| 08/01 | | 17.16 | |
| 08/08 | | 15.99 | |
| 08/15 | | 12.78 | |
| 08/22 | | 12.68 | |
| 08/29 | | 12.52 | |
| 09/30 | | 74.03 | |
| 10/03 | | 58.79 | |
| 10/10 | | 41.63 | |
| 10/17 | | 34.32 | |
| 10/24 | | 24.39 | |
| 10/31 | | 15.85 | |
| 11/07 | | 14.38 | 540.33 |

BLACKROCK NY INSD
MUNI

| | | | |
|---|---|---|---|
| 05/01 | | 191.40 | 191.40 |

| | | | |
|---|---|---|---|
| 06/19 | PLUM CREEK | | 1260.00 |
| 06/19 | VAN KAMDEN | | 315.11 |
| 06/19 | LEGG MASON | | 525.00 |
| 06/19 | Q UEST | | 68.16 |
| 06/19 | MORGAN STANLEY | | 187.50 |
| 06/23 | WACHOVIA SECURITY | | 420.00 |
| | LBX DEPO | | |

Schedule A-2 Dividends    12,596.95

Schedule A-2
-4-

8

10-05048_DEF_0000017

**Schedule A-2 (cont'd)**

INTEREST

| | FREDDIE MAC @ 4% | | |
|---|---|---|---|
| 05/15 | | 425.00 | |
| 06/06 | | 56.67 | 481.67 |
| | GREEN BRIER @ 2.375% | | |
| 05/15 | | 178.13 | |
| 06/06 | | 25.73 | 203.86 |
| | JP MORGAN CHASE @ 6.25% | | |
| 04/15 | | 390.63 | 390.63 |
| | NY HSG HSP @ 7% | | |
| 05/01 | | 175.00 | |
| 06/06 | | 38.89 | 213.89 |
| | NYS MTG @ 5.3% | | |
| 06/06 | | 206.11 | 206.11 |
| | TRINITY @ 3.875% | | |
| 06/02 | | 193.75 | |
| 06/06 | | 10.76 | 204.51 |
| | WACHOVIA BK DEPOSIT SWEEP | | |
| 06/25 | | 2.66 | |
| 06/30 | | 6,120.82 | |
| 07/31 | | 6,082.96 | |
| 08/29 | | 2,383.28 | |
| 09/30 | | 909.93 | |
| 10/31 | | 1,122.21 | |
| 11/28 | | 1,932.43 | |
| 12/31 | | 1,432.76 | |
| 01/30/09 | | 208.92 | |
| 02/27 | | 80.44 | |
| 03/31 | | 160.38 | 20,436.79 |

Schedule A-2
-5-

9

**10-05048_DEF_0000018**

## Schedule A-2 (cont'd)

INTEREST

CHASE CHECKING

| | | | |
|---|---|---:|---:|
| 04/30 | | 3.20 | |
| 05/30 | | 2.63 | |
| 06/30 | | 1.69 | |
| 07/30 | | 1.69 | |
| 08/29 | | 1.58 | |
| 9 | | -0- | |
| 10 | | -0- | |
| 11 | | -0- | |
| 12/08 | | .19 | |
| 01/02/09 | | 7.29 | |
| 02/11 | | .03 | |
| 03/11 | | .03 | 18.33 |

CHASE SWEEP

| | | | |
|---|---|---:|---:|
| 05/01 | | 98.13 | |
| 06/02 | | 118.73 | |
| 07/01 | | 88.70 | |
| 08/01 | | 92.22 | |
| 09 | | -0- | |
| 10 | | -0- | |
| 11 | | -0- | |
| 12/08 | | 33.29 | |
| 01/02/09 | | 58.01 | |
| 02/11 | | 38.44 | |
| 03/11 | | 34.45 | 561.97 |

| 2008 | U.S. TREASURY BILLS | | |
|---|---|---:|---:|
| 08/21 | | 459.52 | |
| 08/14 | | 370.38 | |
| 09/11 | | 587.72 | |
| 08/28 | | 375.71 | |
| 09/18 | | 599.62 | |
| 09/25 | | 1,075.49 | |
| 10/09 | | 1,274.96 | |
| 10/23 | | 1,744.56 | |
| 10/30 | | 776.53 | |
| 11/13 | | 1,978.43 | |
| 11/20 | | 1,074.19 | |
| 11/28 | | 952.00 | |

Schedule A-2
-6-

10

Schedule A-2 (cont'd)

| | | | | |
|---|---|---|---|---|
| 12/23 | | | 2,790.59 | |
| 12/23 | | | 1,422.86 | |
| 12/23 | | | 1,879.28 | |
| 12/26 | | | 1,307.50 | |
| 12/18 | | | 1,095.96 | |
| 02/12/09 | | | 903.83 | |
| 02/19/09 | | | 250.40 | 20,919.53 |
| | | | | |
| 08/18 | 100,000 | FIRST BANK | | 257.67 |
| 10/14 | 100,000 | WACHOVIA BANK | | 754.79 |
| 10/16 | 100,000 | BANCOR SAVINGS BANK | | 693.15 |
| 10/23 | 100,000 | BANCORP | | 680.55 |
| 10/27 | 100,000 | WACHOVIA BANK | | 695.34 |
| 10/27 | 100,000 | COLONIAL BANK | | 695.34 |
| 10/20 | 100,000 | TRI STATE CAP BANK | | 695.34 |
| 11/06 | 100,000 | BANK OF OKLAHOMA | | 667.95 |
| 11/06 | 100,000 | GE CAPITAL FINL | | 642.74 |
| 11/10 | 100,000 | M&I BANK | | 685.62 |
| 11/20 | 100,000 | GE CAPITAL FINL | | 604.93 |
| 11/24 | 100,000 | GREYSTONE BANK | | 203.84 |
| 11/28 | 100,000 | TOMATO BANK | | 611.51 |
| 12/23 | 100,000 | GREYSTONE BANK | | 197.26 |
| 12/29 | 100,000 | STATE STREET BANK | | 560.96 |
| 12/31 | 100,000 | INTEGRA BANK | | 384.38 |
| 01/15/09 | 100,000 | BK OF AMER CHARLOTTE | | 604.93 |
| 01/15/09 | 100,000 | GOLDMAN SACHS | | 604.93 |
| 01/30 | 100,000 | COLUMBUS BK & TR | | 604.93 |
| 01/30 | 100,000 | BANCORP BK | | 617.53 |
| 01/22 | 100,000 | BRANCH BK & TR | | 617.53 |
| 02/03 | 100,000 | GRAND BK & TR | | 604.93 |
| 02/04 | 100,000 | BANK OF INDIA | | 651.10 |
| 02/20 | 100,000 | ISRAEL & DISC BK | | 1,436.71 |
| 02/24 | 100,000 | FIRST UTD BK | | 504.11 |
| 02/26 | 100,000 | AMERICAN EXPRESS BK | | 504.11 |
| 02/26 | 100,000 | AMERICAN EXPRESS BK | | 504.11 |
| 02/26 | 100,000 | BEAL BANK SSB | | 516.71 |
| 02/27 | 100,000 | GMAC BANK | | 523.26 |

Total Interest          60,963.55

Schedule A-2
-7-

11

10-05048_DEF_0000020

### Schedule A-2 (cont'd)

| 2008 | OTHER INCOME | | |
|------|------|------|------|
| | TRANSAMERICA LIFE INC. | | |
| 05/01 | | 150.64 | |
| 06/02 | | 150.64 | |
| 07/01 | | 150.64 | |
| 08/01 | | 150.64 | |
| 09 | | | |
| 10 | | | |
| 11 | | | |
| 12/01 | | 150.64 | |
| 01/02/09 | | 150.64 | |
| 02/12/09 | | 150.64 | 1,054.48 |
| | | | |
| 05/15/08 | MAGELLAN MIDSTREAM PARTNERSHIP DIST. | | 672.50 |
| 05/01 | WESTPOINT STEVEN PENSION | | 158.43 |
| 07/11 | PHOENIX INS. | | 100.75 |
| 06/03 | TERM ASSET INV. CONS FEE | | 313.55 |
| 08/02 | GLOBAL SECURITIES LITIGATION | | 271.52 |
| | CHASE CARD SERVICE | | 40.80 |
| | MARSH CONSUMER | | .94.38 |
| | PHOENIX INS. | | 17.28 |
| 08/01 | VERIZON REFUND | | 45.55 |
| 09/17 | US TREASURY REFUND | | 54.75 |
| 09/17 | NYS INCOME TAX REFUND | | 29.27 |
| 10/09 | TIME WARNER REFUND | | 74.90 |
| 10/17 | BLACKROCK ENERGY PARTNERS | | 950.00 |
| 10/27 | EMPIRE BLUECROSS REFUND | | 449.47 |
| 02/02 | VERIZON REFUND | | 48.73 |
| 03/19 | CITY OF NY PROPERTY REBATED | | 400.00 |
| | Total Other | | 4,776.36 |

Schedule A-2
-8-

12

10-05048_DEF_0000021

## Schedule A-2 (cont'd)

### CHASE CHECKING

| | | |
|---|---|---|
| 04/10/09 | .04 | |
| 05/12 | .04 | |
| 06/10 | .03 | |
| 07/10 | .04 | |
| 08/12 | .04 | |
| 09/10 | .04 | |
| 10/13 | .04 | |
| 11/12 | .04 | |
| 12/10 | .03 | |
| 01/13/10 | .04 | |
| 02/10 | .03 | |
| 03/10 | .03 | |
| 04/30-06-30 | .15 | 0.59 |

### CHASE INV. SWEEP

| | | |
|---|---|---|
| 04/10/09 | 30.96 | |
| 05/12 | 32.80 | |
| 06/10 | 44.60 | |
| 07/10 | 30.76 | |
| 08/12 | 33.83 | |
| 09/11 | 32.80 | |
| 11/12 | 25.62 | |
| 12/10 | 17.41 | |
| 01/13/10 | 34.84 | |
| 02/16/10 | 14.33 | |
| 03/10 | 14.33 | |
| 04/30 | 17.91 | |
| 05/30 | 33.95 | |
| 06/30 | 16.40 | 380.54 |

### BANK DEPOSIT SWEEPS WACHOVIA

| | |
|---|---|
| 04/30/09 | 121.01 |
| 05/29 | 69.05 |
| 06/30 | 57.96 |
| 07/31 | 59.32 |
| 08/31 | 60.08 |
| 09/30 | 61.61 |
| 10/30 | 63.18 |
| 11/30 | 60.76 |
| 12/31 | 62.60 |

Schedule A-2
-9-

13

10-05048_DEF_0000022

### Schedule A-2 (cont'd)

| | | | |
|---|---|---|---|
| 01/29/10 | WELLS FARGO | 35.85 | |
| 02/26 | | 42.13 | |
| 03/25 | | 46.57 | |
| 04/30 | | 32.77 | |
| 05/30 | | 30.93 | |
| 06/30 | | 29.94 | 833.76 |
| | Total Interest | | 1,214.89 |

### OTHER INCOME

| | | | |
|---|---|---|---|
| 04/17/09 | VIRTUS INVESTMENT PARTNERS | 2.18 | |
| 12/14/09 | MIRANT CORP. | 50.00 | |
| | Total other | | 52.18 |

SUMMARY
| | |
|---|---|
| Total Interest | 1,214.89 |
| Total Other | 52.18 |
| Total Schedule A-2 | 1,267.07 |

### IRA

| | | | |
|---|---|---|---|
| 12/17/08 | CD CAPMARK BANK | 610.82 | |
| 12/19/08 | CD LUANA SVGS BANK | 560.96 | |
| 01/15/09 | CD BANK OF AMERICA | 604.93 | |
| | CD GOLDMAN SACHS | 604.93 | |
| 01/22/09 | CD BRANCH BK &TR | 617.53 | |
| 02/05/09 | CD BANCORP BANK | 271.78 | |
| 02/10/09 | BEAL SSB BANK | 280.27 | |
| 03/10/09 | CD AMERICA EXPRESS | 419.18 | |
| | CD ISREAL BANK | 419.18 | |
| | | | 4,389.58 |
| | CD MORGAN STANLEY | | |
| 01/26/09 | | 265.41 | |
| 02/26//09 | | 265.41 | |
| 03/26/09 | | 239.73 | 770.55 |

Schedule A-2
-10-

14

10-05048_DEF_0000023

Schedule A-2 (cont'd)

| | | | |
|---|---|---|---|
| 10/16/08 | UST BILL | | 270.23 |
| 12/18/08 | UST BILL | | 874.46 |
| | BANK DEPOSIT | | |
| | WACHOVIA | | |
| 03/29/08 | | 598.19 | |
| 09/30/08 | | 989.85 | |
| 10/31/08 | | 663.87 | |
| 11/28/08 | | 536.62 | |
| 12/31/08 | | 213.31 | |
| 01/30/09 | | 52.47 | |
| 02/27/09 | | 55.03 | |
| 03/31/09 | | 80.49 | 3,189.83 |
| | FISERV | | |
| 07/31/08 | | 243.97 | 243.97 |
| | BANK DEPOSIT | | |
| 04/30/09 | | 80.38 | |
| 05/29/09 | | 47.23 | |
| 06/30/09 | | 40.20 | |
| 07/31/09 | | 41.54 | |
| 08/30/09 | | 41.54 | |
| 09/30/09 | | 40.20 | |
| 10/30/09 | | 41.54 | |
| 11/30/09 | | 40.20 | |
| 12/30/09 | | 41.54 | |
| 01/30/10 | | 24.12 | |
| 02/26/10 | | 18.76 | |
| 03/31/10 | | 20.77 | |
| 04/30/10 | | 20.11 | |
| 05/28/10 | | 20.77 | |
| 06/30/10 | | 20.10 | 539.00 |

Total Schedule A-2                                     10,277.62

Schedule A-2
-11-

15

10-05048_DEF_0000024

## Schedule A-2 (cont'd)

### SUMMARY

| | |
|---|---|
| TOTAL DIVIDENDS | 12,596.95 |
| TOTAL INTEREST | 72,456.06 |
| TOTAL OTHER | 4,828.54 |
| | |
| TOTAL SCHEDULE A-1 | $89,881.55 |

Schedule A-2
-12-

16

10-05048_DEF_0000025

## SCHEDULE B

### STATEMENT OF DECREASES IN PRINCIPAL

|  |  |  | COST | PROCEEDS | LOSS |
|---|---|---|---|---|---|
| 2008 |  |  |  |  |  |
| 06/25 | 1000 | AT&T | $37,400.00 | $34,640.39 | $2,759.61 |
| 06/25 | 1000 | Agree Realty Corp. | 26,310.00 | 22,749.35 | 3,560.65 |
| 06/25 | 1333 | Alliance Berstein | 10,983.92 | 10,514.73 | 469.19 |
| 06/06 | 1000 | Barrick Gold Corp. | 42,930.00 | 41,147.10 | 1,782.90 |
| 06/06 | 3300 | Blackrock NY Ins. Muni | 44,715.00 | 44,189.30 | 525.70 |
| 06/06 | 200 | Boeing | 15,431.00 | 14,818.41 | 612.59 |
| 06/06 | 100 | CBS Corp. | 2,111.50 | 2,085.48 | 26.02 |
| 06/06 | 10000 | Coca Cola Co. | 607,500.00 | 560,302.62 | 47,197.38 |
| 06/06 | 1000 | Coca Cola Co. | 23,520.00 | 17,243.62 | 6,276.38 |
| 06/06 | 45 | DuPont El Denemours | 2,205.00 | 1,992.26 | 212.74 |
| 06/06 | 150 | Exxon Mobil | 13,388.25 | 13,143.25 | 245.00 |
| 06/06 | 20000 | Freddie Mac @4% due 5/15/18 | 19,540.40 | 19,412.50 | 127.90 |
| 06/06 | 1000 | General Motors @ 5.25% | 16,300.00 | 15,644.67 | 655.33 |
| 06/06 | 748 | General Electric | 23,995.84 | 22,288.55 | 1,707.29 |
| 06/06 | 15000 | Green Brier @ 2.375% | 12,225.00 | 11,647.50 | 577.50 |

Schedule B
-1-

17

10-05048_DEF_0000026

## Schedule B (cont'd)

| | | | COST | PROCEEDS | LOSS |
|---|---|---|---|---|---|
| 2008 | | | | | |
| 06/06 | 200 | Honeywell Int'l | 11,318.00 | 10,815.31 | 502.69 |
| 06/06 | 100 | 1 Shares Inv. Gr. Bond | 10,532.00 | 10,205.20 | 326.80 |
| 06/06 | 84 | Idearc | 319.20 | 287.33 | 31.87 |
| 06/06 | 65 | 1 Shares Lehman 1-3 Yr | 5,453.50 | 5,272.26 | 181.24 |
| 06/06 | 200 | Kellogg Co. | 10,435.00 | 9,994.88 | 440.12 |
| 06/06 | 300 | Eli Lilly | 15,546.00 | 14,385.87 | 1,160.13 |
| 06/06 | 1000 | Magellan Midstream Prtns | 42,390.00 | 38,344.39 | 4,045.61 |
| 06/06 | 510 | Merck & Co. | 20,986.50 | 19,057.20 | 1,929.30 |
| 06/06 | 1000 | JP Morgan Chase @ 6.25% | 23,200.00 | 22,791.57 | 408.43 |
| 06/06 | 160 | JP Morgan Chase | 6,716.80 | 6,337.24 | 379.56 |
| 06/06 | 5000 | M.S. Municipal Premium | 41,650.00 | 40,901.17 | 748.83 |
| 06/06 | 1000 | Motorola Inc. | 9,000.00 | 8,727.78 | 272.22 |
| 06/06 | 5000 | NY HSG Hsp. @ 7% due 11/1/17 | 5,854.05 | 5,601.65 | 252.40 |
| 06/06 | 20000 | NY ST MTG @ 5.3% due 4/1/29 | 20,279.80 | 19,292.50 | 987.30 |
| 06/06 | 852 | Q West Communications | 3,919.20 | 3,889.90 | 29.30 |
| 06/06 | 1000 | Southern Co. | 36,240.00 | 34,916.44 | 1,323.56 |

Schedule B
-2-

18

10-05048_DEF_0000027

## Schedule B (cont'd)

| | | | COST | PROCEEDS | LOSS |
|---|---|---|---|---|---|
| **2008** | | | | | |
| 06/06 | 1000 | Tivo Inc. | 8,940.00 | 6,331.43 | 2,608.57 |
| 06/06 | 3496 | Trust Co. Bank Corp. | 30,624.96 | 26,928.10 | 3,696.86 |
| 06/06 | 100 | Viacom | 3,938.00 | 3,374.70 | 563.30 |
| 06/06 | 1000 | Xerox | 14,660.00 | 12,970.05 | 1,689.95 |
| | | Total Schedule B | 1,220,558.92 | 1,132,244.70 | 88,314.22 |
| 02/11/10 | | Sale of Apartment | 2,010,000.00 | 1,562,216.55 | 447,783.45 |
| | | TOTAL SCHEDULE B | 3,230,558.92 | 2,694,461.25 | 536,097.67 |

Schedule B
-3-

19

## SCHEDULE C

### STATEMENT OF FUNERAL & ADMINISTRATION EXPENSES

| | | |
|---|---|---|
| 05/19/08 | Con Edison | 81.84 |
| 05/27/08 | Time Warner | 105.72 |
| 06/04/08 | Verizon | 41.04 |
| 06/05/08 | AARP Health Care | 24.00 |
| 06/09/08 | West End Maint. Fee | 2,257.40 |
| 06/18/09 | Con Edison | 60.86 |
| 06/27/08 | Time Warnter | 105.72 |
| 06/12/08 | Plaza Jewish Community Chapel | 17,870.20 |
| 06/24/08 | Pension Benefit Guaranty | 158.43 |
| 06/05/08 | NGL GP LLC | 237.00 |
| 07/24/08 | 685 West End Owner | 250.00 |
| 07/08/08 | Time Moving | 922.00 |
| 07/09/08 | Doyle NY -- Appraisal of Tangibles | 750.00 |
| 07/08/09 | RT Hunt & Assn. -- Appraisal of Apartment | 750.00 |
| 07/07/09 | West End Maint. Fee | 2,257.40 |
| 07/07/08 | Verizon | 39.53 |
| 07/07/08 | AARP Health Care | 24.00 |
| 07/18/08 | Con Edison | 32.32 |
| 07/28/08 | Time Warner | 105.73 |
| 06/16/08 | Barrick Gold Foreign Tax | 30.00 |
| 08/06/08 | Exp Del Fee | 18.95 |
| 08/08/08 | TVR Communications | 9.25 |
| 08/05/08 | Verizon | 44.01 |
| 01/23/09 | Con Edison | 30.82 |
| 01/02/09 | West End Owners | 2,029.22 |
| 04/17 | US Treasury Tax | 50,000.00 |
| 04/17 | NY Income Tax | 35,000.00 |
| 04/21 | Con Edison | 32.80 |
| 05/12 | West End Owners | 2,029.22 |
| 06/19 | Con Edison | 32.95 |
| 05/20 | Con Edison | 31.97 |

Schedule C
-1-

20

## Schedule C (cont'd.)

| | | | |
|---|---|---|---|
| 06/18 | West End Owners | 1,868.12 | |
| 07/07 | West End Owners | 2,029.22 | |
| 07/21 | Con Edison | 35.71 | |
| 08/05 | West End Owners | 2,029.22 | |
| 08/19 | Con Edison | 33.01 | |
| 09/03 | West End Owners | 2,029.22 | |
| 10/29 | West End Owners | 2,029.22 | |
| 11/04 | Dimitriy Pravenov (Cleaning Apt.) | 250.00 | |
| 11/03 | West End Owners | 2,029.22 | |
| 09/18 | Con Edison | 32.14 | |
| 10/21 | Con Edison | 36.30 | |
| 11/19 | Con Edison | 39.31 | |
| 12/03 | West End Owners | 2,029.22 | |
| 01/05/10 | West End Owners Jan/Feb | 4,383.12 | |
| 02/21/09 | Con Edison | 36.91 | |
| 01/21/10 | Con Edison | 35.99 | |
| 02/19/10 | Con Edison | 40.04 | |
| 07/15/09 | McCanliss & Early | 25,000.00 | |
| 08/17/09 | UST Tax Refund | <121,951.66> | |
| 09/02/09 | NYS Estate Tax Refund | <43,944.54> | <32,743.25> |
| 08/05/08 | West End Ave. Maint. Fee | 2,257.40 | |
| 08/05/08 | AARP Health Care | 24.00 | |
| 08/27/08 | Con Edison | 45.12 | |
| 08/27/08 | Time Warner | 105.73 | |
| 01/25/08 | Robins & Assn LLPP – Prep. Of 2007 Income Tax | 2,175.00 | |
| 12/04/08 | McCanliss & Early – Disbursements | 1,511.10 | |
| 12/22/08 | Bekerman & Reddy | 900.00 | |
| 12/05/08 | West End Ave. Maint. Fee | 2,257.40 | |
| 12/05/08 | AARP Health | 24.00 | |

Schedule C
-2-

21

**10-05048_DEF_0000030**

## Schedule C (cont'd.)

| | | |
|---|---|---|
| 12/18/08 | Con Edison | 34.64 |
| 01/15/09 | AARP Health | 25.15. |
| 01/21/09 | Con Edison | 30.74 |
| 01/05/09 | NYS Commissioner of Taxes -- NY Estate Tax | 882,000.00 |
| 01/05/09 | West End Owners | 4,514.80 |
| 01/06/09 | US Treasury -- US Estate Tax | 2,650,000.00 |
| 12/20/09 | Con Edison | 39.23 |
| 03/10/09 | West End Owners | 2,029.22 |
| 03/20/09 | Wachovia Fee | 25.25 |
| 04/16/10 | Wachovia Fee | 25.00 |
| | Schedule C 3/30/09 | 3,574,199.18 |
| | Schedule C 3/30/10 | <32,743.25> |
| | TOTAL SCHEDULE C | $3,541,455.93 |

Schedule C
-3-

22

10-05048_DEF_0000031

## SCHEDULE C -1

### STATEMENT OF UNPAID ADMINISTRATION EXPENSES

Deidre A. Sweeney       Executor's Commission          $ 175,516.40


                        Schedule C-1                   $ 175,516.40


Schedule C-1

10-05048_DEF_0000032

## SCHEDULE E

### STATEMENT OF DISTRIBUTIONS

| | | |
|---|---|---:|
| 07/09/08 | Peng Yan | $    3,823.01 |
| 07/10/08 | Peng Yan | 4,448.00 |
| 08/27/08 | Peng Yan | 7,000.00 |
| 08/27/08 | Peng Yan | 2,394.00 |
| 09/18/08 | Peng Yan | 1,325.00 |
| 12/05/08 | Peng Yan | 25,000.00 |
| 12/09/08 | Peng Yan | 800,000.00 |
| 03/18/09 | Peng Yan | 25,000.00 |
| 05/29/09 | Peng Yan | 25,000.00 |
| 07/31 | Peng Yan | 20,000.00 |
| 10/31 | PengYan | 25,000.00 |
| 12/28/09 | Peng Yan | 25,000.00 |
| 03/31/10 | Paul Straus | 8,141.04 |
| 09/09 | Lewis Straus | 25,000.00 |
| 03/16 | Robert E. May | 100,000.00 |
| 03/11 | Robert E. May | 9,854.72 |
| 03/19 | Raymond Foulon | 25,000.00 |
| 03/12 | Calvary Hosp. Fund | 100,000.00 |
| 03/12 | Calvary Hosp. Fund | 9,854.72 |
| 03/12 | NY Univ Alumni Assn. | 5,000.00 |
| 03/12 | NY Univ Alumni Assn. | 542.46 |
| 03/11 | Bronx High School of Science | 10,000.00 |
| 03/11 | Bronx High School of Science | 1,085.61 |
| 03/10 | Woodmere Art Museum | 10,000.00 |
| 03/11 | Woodmere Art Museum | 1,085.61 |
| 03/12 | Bide A Wee Home Assn. | 10,000.00 |
| 03/12 | Bide A Wee Home Assn. | 1,085.61 |
| 03/11 | Alex Straus | 75,000.00 |
| 03/11 | Alex Straus | 8,141.04 |

Schedule E
-1-

23

10-05048_DEF_0000033

<u>Schedule E (cont'd)</u>

| | | |
|---|---|---|
| 03/11 | Jeffrey May | 100,000.00 |
| 03/11 | Jeffrey May | 9,854.72 |
| 03/10 | Richard May | 100,000.00 |
| 03/10 | Richard May | 9,854.72 |
| 03/10 | Cheryl Coleman | 100,000.00 |
| 03/10 | Cheryl Coleman | 9,854.72 |
| 03/09 | Long Luo | 25,000.00 |
| 03/09 | Long Luo | 2,713.68 |
| 03/10 | National Jewish Center For IMM | 100,000.00 |
| 03/10 | National Jewish Center For IMM | 9,854.72 |
| 03/17/10 | NU – Voice Club of Mount Sinai | 10,000.00 |
| 03/17 | NU – Voice Club of Mount Sinai | 1,085.61 |
| 03/11 | Univ. of MA Lowell Alumni Assn. | 15,000.00 |
| 03/11 | Univ. of MA Lowell Alumni Assn. | 1,628.07 |
| 03/10 | United Jewish Appeal Federation | 10,000.00 |
| 03/16 | United Jewish Appeal Federation | 1,085.61 |
| 03/09 | Lewis B. Straus | 2,713.68 |
| 03/15 | Peng Yan | 25,000.00 |
| 04/26 | Paul Straus | 75,000.00 |
| 04/05 | Raymond Foulon | 2,713.68 |
| 04/08 | St Luke's - Roosevelt Hosp. | 100,000.00 |
| 04/08 | St Luke's - Roosevelt Hosp. | 9,854.72 |
| 04/05 | Joseph McNamara | 25,000.00 |
| 04/05 | Joseph McNamara | 2,713.68 |
| 04/06 | Peng Yan | 400,000.00 |

TOTAL SCHEDULE E          $2,512,708.43

Schedule E
-2-

24

10-05048_DEF_0000034

## SCHEDULE D

### CREDITORS CLAIMS

| | | |
|---|---|---|
| 04/18/08 | Wachovia Advisor Fee | $ 1,019.08 |
| 04/18/08 | Con Edison | 90.06 |
| 04/28/08 | Verizon | 38.91 |
| 04/28/08 | Time Warner | 1,05.57 |
| 05/05/08 | AARP Health Care | 24.00 |
| 05/06/08 | West End Ave Fee | 2,104.92 |
| 08/08/08 | U.S. Treasury 1040 For 2007 | 52,814.00 |
| 08/19/08 | NYS Income Tax It-201 for 2007 | 21,213.00 |
| 09/23/08 | SLR Diagnostic Radiology | 82.96 |
| 06/02/08 | Chase Card Service | 1,672.50 |
| 06/11/08 | Landauer Metropolitan | 46.22 |
| 06/18/08 | Chase Card Service | 8,923.50 |
| 06/19/08 | Landauer Metropolitan | 58.42 |
| 09/22/08 | NYS Commissioner of Taxes | 712.39 |
| 10/14/08 | AABS Locksmith | 166.89 |
| 11/06/08 | Landauer Metropolitan | 6.38 |

TOTAL SCHEDULE D                   $89,078.80

Schedule D

25

10-05048_DEF_0000035

## SCHEDULE F

## STATEMENT OF PRINCIPAL ON HAND 6/30/10

| | |
|---|---:|
| Wells Fargo Bank Deposit | $1,821,377.25 |
| Chase Checking | 6,379.17 |
| Chase Savings | 82,717.69 |
| Wells Fargo Bank Deposit IRA | 1,223,037.50 |
| Life Insurance | 30,000.00 |
| TOTAL SCHEDULE F | $3,163,511.61 |

Schedule F

26

10-05048_DEF_0000036

## SCHEDULE H

### STATEMENT OF COMMISSIONS

For receiving

| | |
|---|---|
| Schedule A | 9,688,246.48 |
| Schedule A-1 | 65,756.73 |
| Schedule A-2 | 89,881.55 |

Total Commissionable Estate            9,843,884.76

| | | | |
|---|---|---|---|
| 5% | on | $100,000. | 5,000.00 |
| 4% | on | 200,000 | 8,000.00 |
| 3% | on | 700,000 | 21,000.00 |
| 2 ½% | on | 4,000,000 | 100,000.00 |
| 2% | on | 4,843,884.76 | 96,877.70 |
| | | 9,843,851.99 | 230,877.70 |

One Half (1/2) for Receiving            $ 115,438.85

For Paying Out

| | |
|---|---|
| Schedule C | 3,541,455.93 |
| Schedule D | 89,078.80 |
| Schedule E | 2,512,708.43 |
| Schedule F | 3,164,511.61 |

Total Commissionable Estate            9,307,754.77

| | | | |
|---|---|---|---|
| 5% | on | $100,000. | 5,000.00 |
| 4% | on | 200,000 | 8,000.00 |
| 3% | on | 700,000 | 21,000.00 |
| 2 ½% | on | 4,000,000 | 100,000.00 |
| 2% | on | 4,307,754.77 | 86,155.10 |
| | | 9,307,754.77 | 220,155.10 |

One Half (1/2) for Paying Out            $ 110,077.55

Total Executor's Commission  Payable to Deidre A. Sweeney            $225,516.40

10-05048_DEF_0000037

Schedule I

STATEMENT OF OTHER PERTINENT FACTS

Proposed Distribution of Residuary Estate

| | |
|---|---|
| Assets on Hand as of November 17, 2010 | 2,897,834.17 |
| Less: | |
| Executor's Commission | (175,516.40) |
| Reserve for additional Expenses | (100,000.00) |
| Amount Available for Distribution | 2,622,317.77 |

**10-05048_DEF_0000038**

**EXHIBIT E**

Wall Street Plaza
88 Pine Street, 21st Floor
New York, NY10005
(212)943-0280
Fax: 212-943-0283



**Mccanliss & Early
LLP**

# Fax

| To: | John Donovan &<br>Debra Cardino | From: | Deidre A. Sweeney |
|---|---|---|---|
| **Fax:** | 631-661-0099 | **Pages:** | 2 |
| **Phone:** | 631-893-1302 | **Date:** | December 29, 2010 |

Re: *ESTATE OF ARMAND GREENHALL* cc:

☐ Urgent   x **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

**Hi Debby:**

**Enclosed is a letter of instructions.  I will send you**

**hard copy by snail mail.**

**Happy New Year!**

**Sincerely,**

**Deidre A. Sweeney**

This fax is intended only for the addressee named above. As this fax may contain confidential or privileged information, if you are not the named addressee, or the person responsible for delivering the message to the named addressee, please telephone us immediately. The contents should not be disclosed to any other person nor copies taken.

IF ANY PART OF THE FAX IS ILLEGIBLE, PLEASE TELEPHONE (212) 943-0280

December 29, 2010

VIA Fax and Mail
(631) 661-0099

John M. Donovan, Jr.
Wells Fargo Advisors
500 West Main Street
Suite 105
Babylon, NY 11702

Re: Estate of Armand Greenhall
Account # [Redacted]-3479

Dear John:

Please transfer all but $ 200,516.40 of the funds in the captioned
account to Peng Yan as soon as possible in accordance with his instructions.

After January 1, 2011, $100,516.40 will be paid to me as the balance
of my Executor's commission. The remainder of $100,000. will be held in the
account to cover unforeseen expenses for a reasonable amount of time.

I will not be in the office tomorrow or Friday, December 31.

Happy New Year to you and Debby and your respective families.

Sincerely,

Deidre A. Sweeney

cc: Peng Yan

08-01789-cgm    Doc 17327-1    Filed 03/09/18    Entered 03/09/18 19:14:23    Exhibit A -
Second Amended Complaint Part 1 of 2    Pg 70 of 79

EXHIBIT A

13,985



## SNAPSHOT

Page 1 of 7

EST OF ARMAND L GREENHALL
PENG YAN EXEC
DEIDRE A SWEENEY EXEC

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER [Redacted]3479

## Progress summary

| | THIS PERIOD | THIS YEAR |
|---|---|---|
| Opening value | $2,703,559.56 | $2,703,559.56 |
| Cash deposited | 0.00 | 0.00 |
| Securities deposited | 0.00 | 0.00 |
| Cash withdrawn | -2,603,559.56 | -2,603,559.56 |
| Securities withdrawn | 0.00 | 0.00 |
| Income earned | 6.86 | 6.86 |
| Change in value | 0.00 | 0.00 |
| **Closing value** | **$100,006.86** | **$100,006.86** |

## Value over time



## Portfolio summary

CURRENT



| | | ASSET TYPE | PREVIOUS VALUE ON DEC 31 | % | CURRENT VALUE ON JAN 31 | % | ESTIMATED ANN. INCOME |
|---|---|---|---|---|---|---|---|
| **ASSETS** | | Cash and sweep balances | 2,703,559.56 | 100.00 | 100,006.86 | 100.00 | 20 |
| | | Stocks, options & ETFs | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | | Fixed income securities | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | | Mutual funds | 0.00 | 0.00 | 0.00 | 0.00 | 0 |
| | | **Asset value** | **$2,703,559.56** | **100%** | **$100,006.86** | **100%** | **$20** |

SNAPSHOT
001 PNY8 PG82

WSJ04RLO    011644 032212815234    NNNNN NNNNN NNNNNNNNN 000002

13,986

**SNAPSHOT** ▬▬▬▬▬▬▬▬▬▬▬   Page 2 of 7

EST OF ARMAND L GREENHALL
PENG YAN EXEC
DEIDRE A SWEENEY EXEC

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER:  [Redacted] 3479

## Cash flow summary

| | THIS PERIOD | THIS YEAR |
|---|---|---|
| Opening value of cash and sweep balances | $2,703,559.56 | |
| Income and distributions | 6.86 | 6.86 |
| Net additions to cash | $6.86 | $6.86 |
| Withdrawals by check | -100,516.40 | -100,516.40 |
| Other subtractions | -2,503,043.16 | -2,503,043.16 |
| Net subtractions from cash | -$2,603,559.56 | -$2,603,559.56 |
| Closing value of cash and sweep balances | $100,006.86 | |

## Income summary

| | | THIS PERIOD | THIS YEAR |
|---|---|---|---|
| TAXABLE | Money market/sweep funds | 6.86 | 6.86 |
| | Total taxable income | $6.86 | $6.86 |
| | Total federally tax-exempt income | $0.00 | $0.00 |
| | Total income | $6.86 | $6.86 |

## Gain/loss summary

| | UNREALIZED | THIS PERIOD REALIZED | THIS YEAR REALIZED |
|---|---|---|---|
| Short term | 0.00 | 0.00 | 0.00 |
| Long term | 0.00 | 0.00 | 0.00 |
| Total | $0.00 | $0.00 | $0.00 |

10-05048_DS_0001262



08-01789-cgm   Doc 17327-1   Filed 03/09/18   Entered 03/09/18 19:14:23   Exhibit A -
Second Amended Complaint - Part 1 of 2   Pg 72 of 79

13,987



**SNAPSHOT**

EST OF ARMAND L GREENHALL
PENG YAN EXEC
DEIDRE A SWEENEY EXEC

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER: [Redacted]3479

## Your Financial Advisor

JOHN M. DONOVAN JR.
Phone: 631-893-1302 / 877-613-1600

500 W MAIN STREET
SUITE 105
BABYLON NY 11702

## Client service information

| | | |
|---|---|---|
| Banking inquiries: | 800-266-6263 | (800) COMMAND |
| En espanol: | 800-326-8977 | |
| Website: | www.wellsfargoadvisors.com | |

## Account profile

| | |
|---|---|
| Full account name: | EST OF ARMAND L GREENHALL |
| | PENG YAN EXEC |
| | DEIDRE A SWEENEY EXEC |
| Account type: | Command Asset Program Premier |
| Brokerage account number: | [Redacted]3479 |
| Command account number: | [Redacted]4727 |
| Tax status: | Taxable |
| Investment objective/Risk tolerance: | MODERATE GROWTH & INCOME |
| Cost Basis Election: | First in, First out |
| Sweep option: | BANK DEPOSIT SWEEP |

Per your instructions, copies of this statement have been sent to an interested party. Please contact Your Financial Advisor for details.

## Available funds

| | |
|---|---|
| Cash | 0.00 |
| Money market and sweep funds | 100,006.86 |
| Available for loan | 0.00 |
| **Your total available funds** | **$100,006.86** |

## For your consideration

Go paperless. Accessing all of your account documents online is easy and costs nothing. To participate, go to wellsfargoadvisors.com and click on the Access Online "Client Login" link in the upper right hand corner of the homepage. If you already have a User ID and Password, please log in and click on the "Delivery Preferences" link found under the Accounts & Services tab to turn off paper delivery of your account documents. If you do not have a User ID and Password, please click on the "Sign up online" link on the right side of the Access Online login page or call 877-879-2495 for assistance.

## Document delivery status

| | Paper | Electronic |
|---|---|---|
| Statements: | X | |
| Trade confirmations: | X | |
| Tax documents: | X | |
| Shareholder communications: | X | |

WSJ34FLD   011844 032212815234   NNNNN NNNNN NNNNNNNN 000003

13,988

**EST OF ARMAND L GREENHALL**
**PENG YAN EXEC**
**DEIDRE A SWEENEY EXEC**

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER: ┊Redacted┊3479

## Portfolio detail

### Cash and Sweep Balances

Bank Deposit Sweep - Consists of monies held at Wells Fargo Bank, N.A. and (if amounts exceed $250,000) at one or more other Wells Fargo affiliated banks. These assets are not covered by SIPC, but are instead eligible for FDIC insurance of up to $250,000 per depositor, per institution, in accordance with FDIC rules. For additional information on the Bank Deposit Sweep for your account, please contact Your Financial Advisor.

| DESCRIPTION | % OF ACCOUNT | ANNUAL PERCENTAGE YIELD EARNED* | CURRENT MARKET VALUE | ESTIMATED ANNUAL INCOME |
|---|---|---|---|---|
| BANK DEPOSIT SWEEP | 100.00 | 0.02 | 100,006.86 | 20.00 |
| Interest Period 01/01/11 - 01/31/11 | | | | |
| **Total Cash and Sweep Balances** | **100.00** | | **$100,006.86** | **$20.00** |

* APYE measures the total amount of the interest paid on an account based on the interest rate and the frequency of the compounding during the interest period. The annual percentage yield earned is expressed as an annualized rate, based on a 365- or 366-day year (as applicable).

## Bank Deposit Sweep Allocation

Monies on deposit at each bank, together with any other deposits held in the same insurable capacity at each bank, are eligible for FDIC insurance up to $250,000 per depositor, per bank in accordance with FDIC rules. These assets are not held in your securities brokerage account and therefore are not covered by SIPC. Settlement timing differences will cause balances displayed in this section to vary from those indicated in the Portfolio detail section due to activity that occurs after 2 PM ET on the last business day of the month. If you have questions about your sweep option, including rates, please contact Your Financial Advisor.

| DESCRIPTION | CURRENT VALUE | AS OF VALUE DATE |
|---|---|---|
| WELLS FARGO BANK, N.A. | 100,000.00 | 01/31 |
| **Total Bank Deposits** | **$100,000.00** | |

## Activity detail by date

| DATE | ACCOUNT TYPE | TRANSACTION/ CHECK NUMBER | QUANTITY | DESCRIPTION | PRICE | AMOUNT | CASH AND SWEEP BALANCES |
|---|---|---|---|---|---|---|---|
| 01/01 | | | | BEGINNING BALANCE | | | 2,703,559.56 |
| 01/04 | Cash | JOURNAL | | TO ┊Redacted┊3557 YAN PENG | | -2,503,043.16 | 200,516.40 |
| 01/12 | Cash | 0001252 | | DEIDRE A SWEENEY | | -100,516.40 | 100,000.00 |
| 01/31 | Cash | INTEREST | | BANK DEPOSIT SWEEP | | 6.86 | 100,006.86 |



001 PNY8 PG62
0000 000909 (Rev 03)

08-01789-cgm    Doc 17327-1    Filed 03/09/18    Entered 03/09/18 19:14:23    Exhibit A -
Second Amended Complaint - Part 1 of 2    Pg 74 of 79

13,989

Page 5 of 7



EST OF ARMAND L GREENHALL
PENG YAN EXEC
DEIDRE A SWEENEY EXEC

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER: [Redacted]3479

## Activity detail by type

### Income and distributions

| DATE | ACCOUNT TYPE | TRANSACTION | QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 01/31 | Cash | INTEREST | | BANK DEPOSIT SWEEP | | | 6.86 |
| | | | | **Total Income and distributions:** | | | **$6.86** |

### Withdrawals by check

Entries that display a blank in the expense code field are checks generated by the firm based upon standing or specific instructions that you have provided.

| DATE | ACCOUNT TYPE | CHECK NUMBER | | DESCRIPTION | EXPENSE CODE | | AMOUNT |
|---|---|---|---|---|---|---|---|
| 01/12 | Cash | 0001252 | | DEIDRE A SWEENEY | Unspecified | | -100,516.40 |
| | | | | **Total Withdrawals by check:** | | | **-$100,516.40** |

### Other subtractions

| DATE | ACCOUNT TYPE | TRANSACTION | QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 01/04 | Cash | JOURNAL | | TO [Redacted]3557 YAN PENG | | | -2,503,043.16 |
| | | | | **Total Other subtractions:** | | | **-$2,503,043.16** |

## Cash sweep activity

Our Cash Sweep program allows you to earn a return on the idle cash balances in your account by automatically investing such balances into one of our cash sweep options. These 'sweep transactions' may represent a net amount for the day and occur on settlement date. The following section displays transfers into and out of your sweep option. Transactions displayed here are Transfer To, Transfer From and Reinvested Dividends and Interest. These transaction amounts are not included in your cash flow summary.

| DATE | TRANSACTION | DESCRIPTION | AMOUNT | DATE | TRANSACTION | DESCRIPTION | AMOUNT |
|---|---|---|---|---|---|---|---|
| 01/01 | | BEGINNING BALANCE | 2,703,559.56 | 01/31 | REINVEST INT | BANK DEPOSIT SWEEP | 6.86 |
| 01/04 | TRANSFER FROM | BANK DEPOSIT SWEEP | -2,503,043.16 | 01/31 | | ENDING BALANCE | 100,006.86 |
| 01/12 | TRANSFER FROM | BANK DEPOSIT SWEEP | -100,516.40 | | | | |

## Specific instructions and disclosures

### Available funds

"Available for loan" reflects the approximate amount available as of the statement period ending date and should be reduced by any pending checks and Visa charges not yet cleared.  This amount is the approximate amount available for withdrawal and loans.  A margin loan is a variable rate loan secured by your account.

10-05048_DS_0001265

001 PNY8 PG62

13,990

**EST OF ARMAND L GREENHALL**
**PENG YAN EXEC**
**DEIDRE A SWEENEY EXEC**

JANUARY 1 - JANUARY 31, 2011
ACCOUNT NUMBER: ⸢Redacted⸣3479

**Cost basis**

This statement presents estimated unrealized gains or losses based on information provided by you or your preceding custodian.  The information displayed is provided for your information and may or may not be provided to the Internal
Revenue Service for tax reporting purposes.  If acquisition or other information is not available, the gain/loss information may not be displayed and section and summary totals may not reflect your complete portfolio.  Cost basis information
for non-covered securities is not verified by FCC or Wells Fargo Advisors and should not be relied upon for legal or tax purposes.  Revisions to this information (due to corporate mergers, tenders and other reorganizations) may be required
from time to time.  To update or provide omitted cost basis information, please contact the individual servicing your account.

Cost basis for factored bonds (GNMA, CMO, etc.) will be adjusted for paydown of principal. Systematic investments in mutual funds and reinvested dividends for mutual funds and stocks have been consolidated for each position. Unit cost
data for systematic investments and dividend reinvestment securities is provided for informational purposes only and is a non-weighted average.

Your account statement should not be used for tax preparation without assistance from your tax consultant. We do not report capital gains or losses for non-covered securities to the IRS.



001 PNY8 PG62
0000 000909 (Rev 03)

08-01789-cgm    Doc 17327-1    Filed 03/09/18    Entered 03/09/18 19:14:23    Exhibit A -
Second Amended Complaint - Part 1 of 2    Pg 76 of 79

13,991

Page 7 of 7



## Statement balancing guide

1  Record in your account register all items which may appear on this statement that have not previously been entered in your account register, such as ATM/Check Card transactions, automatic transfers, preauthorized drafts, interest earned, service charges, proceeds from sales, security purchases, etc.

2  In your account register, check off the additions and subtractions as shown in the Activity Detail Section.

3  In the Outstanding Additions section at the right (Section A), list any outstanding additions such as deposits, dividends and interest, proceeds from sales, etc., that have been made since the date of this statement.

4  In the Outstanding Subtractions section at the right (Section B), list any checks that have not yet been paid and any outstanding subtractions such as ATM/Check Card transactions and any margin interest, service fees and purchases, etc., that have been made since the date of this statement.

5  Write in the Closing Balance shown in the Cash flow summary.  _____

6  Write in the total amount of Outstanding additions (Section A).  + _____

7  Total the amounts in lines 5 & 6.  = _____

8  Write the total amount of Outstanding Subtractions (Section B).  - _____

9 Subtract the amount in line 8 from the amount in line 7. This is your
**Adjusted Statement Balance.**  = _____

### A. Outstanding Additions

| Date | Amount | |
|------|--------|--|
| | $ | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total | | |

### B. Outstanding Subtractions

| Number | Amount | |
|--------|--------|--|
| | $ | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total | | |



10-05048_DS_0001267

**EXHIBIT G**

September 19, 2014

Mr. Peng Yan

**Redacted**

Re: Estate of Armand L. Greenhall

Dear Peng:

As requested, I enclose a check payable to you in the amount of $ 16,100. to cover your income tax liability.

Sign your name next to the red arrow and also endorse the check on the back before depositing it.

Sincerely,

Deidre A. Sweeney

Enclosure

ESTATE OF ARMAND GREENHALL

No. **9985**

DO NOT DETACH THIS VOUCHER
PAYMENT OF THIS CHECK WILL BE REFUSED, UNLESS
RECEIPT IS SIGNED AND CHECK ENDORSED.

CHECK NO. 9985 DATE 9/19/14

RECEIVED OF:

Deirdre A. Sweeney

OF THE ESTATE OF

ARMAND GREENHALL

THE SUM OF 16, 100. 00

IN PAYMENT OF Distribution

SIGN HERE
ALSO ENDORSE BACK OF CHECK

⑈⑈009985⑈⑈ ⑈⑈021000021⑈⑈

O REQUIRE ESTHAD

DATE 9/19/14

01-2 217
210

PAY
TO THE
ORDER OF PENG YAN                    | $ 16, 100. 00

SIXTEEN THOUSAND ONE HUNDRED # 00/100 DOLLARS

ARMAND GREENHALL

ESTATE OF

Redacted 2998⑈⑈

CHASE
Sign
Here
JPMorgan Chase Bank
New York, New York
www.Chase.com

10-05048 DS 0001106

## Deidre A. Sweeney

| | |
|---|---|
| **From:** | Bass [ Redacted ] |
| **Sent:** | Wednesday, September 17, 2014 4:59 PM |
| **To:** | Deidre A. Sweeney |
| **Subject:** | Re: Estate of Armand Greenhall |

Hi,Ms Sweeney ,
My tax Acountant just called me,he said, that year I owe $13,000 for federal ,$600 for New York State ,$1600 for TN ,and his fee $900.Total is $16,100.
If you can send me check to cover it would be great.thank you.Peng

On 2014年8月14日, at 上午10:08, "Deidre A. Sweeney" <Dsweeney@McCanliss.com> wrote:

> Dear Peng,
>
> I am writing you from my office email account because it is
> More secure than my personal(Microsoft) account. I have reviewed
> The information you sent and my files. Form April 14, 2008 to March 31, 2009
> You received distributions from the Estate of $868,990.01. $36,576.90 of that
> Was income taxable to you with some adjustments.   Therefore, as your tax advisor
> Has probably informed you, you were required to report this income on your US and
> Tennessee personal income tax returns.
> I still have some money in the estate checking account so if you tell me how much you owe,
> I can send you a check to cover it.
>
> Also in separate email, I will send you a copy of the Schedule K-1.
>
> Hope all is well otherwise.
> Sincerely,
>
> Deidre

10-05048 DS 0001107