**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

Hearing Date: April 25, 2018
Hearing Time: 10:00 a.m. (EST)
Objection Deadline:  April 18, 2018
Time: 4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |

**TWENTY-SIXTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM AUGUST 1, 2017 THROUGH NOVEMBER 30, 2017**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.    BACKGROUND ......................................................................................4

    A.    THE SIPA LIQUIDATION ...............................................................4

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................5

    C.    PRIOR COMPENSATION ORDERS..................................................6

III.    SUMMARY OF SERVICES ....................................................................7

    A.    HARDSHIP PROGRAM ....................................................................7

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY ....................8

        a.    Recoveries Accomplished During the Compensation Period....................8

IV.    DETAILED DESCRIPTION OF SERVICES ...........................................9

    A.    MATTER 01 ....................................................................................9

        a.    Task Code 01: Trustee Investigation ...........................................9

        b.    Task Code 02: Bankruptcy Court Litigation...............................10

        c.    Task Code 03: Feeder Funds......................................................17

        d.    Task Code 04: Asset Search and Sale.........................................17

        e.    Task Code 05: Internal Meetings with Staff...............................18

        f.    Task Code 07: Billing and Trustee Reports.................................18

        g.    Task Code 08: Case Administration ...........................................18

        h.    Task Code 09: Banks .................................................................19

        i.    Task Code 10: Court Appearances .............................................20

        j.    Task Code 11: Press Inquiries and Responses............................20

        k.    Task Code 12: Document Review ...............................................20

        l.    Task Code 13: Depositions and Document Productions by
the Trustee................................................................................20

        m.    Task Code 15: Charities..............................................................21

        n.    Task Code 19: Non-Bankruptcy Litigation.................................21

        o.    Task Code 20: Governmental Agencies ......................................21

        p.    Task Code 21: Allocation............................................................21

    B.    MATTER 04 – MERKIN ...............................................................23

# TABLE OF CONTENTS
## (continued)

**Page**

C.    MATTER 05 – CUSTOMER CLAIMS ................................................26

    a.    Customer Claims................................................26

    b.    General Creditor Claims ................................................27

    c.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process................................................27

D.    MATTER 07 – MADOFF FAMILY ................................................28

E.    MATTER 09 – FAIRFIELD GREENWICH................................................30

F.    MATTER 11 – COHMAD SECURITIES CORPORATION ................................................36

G.    MATTER 12 – PICOWER ................................................37

    a.    Picard v. Marshall ................................................38

    b.    Picard v. A&G Goldman Partnership ................................................41

H.    MATTER 13 – KINGATE ................................................43

I.    MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS................................................48

    a.    Resolution of Good Faith Avoidance Actions ................................................49

    b.    Discovery Disputes in *Picard v. Roman,* Adv. Pro. No. 10-04292 (SMB) ................................................49

    c.    Summary Judgment Motions ................................................50

    d.    District Court Proceedings ................................................52

J.    MATTER 29 – RYE/TREMONT ................................................53

K.    MATTER 30 – HSBC ................................................55

L.    MATTER 32 – LUXALPHA UBS/LIF................................................56

M.    MATTER 34 – CITIBANK ................................................60

N.    MATTER 35 – NATIXIS ................................................63

O.    MATTER 37 – ABN AMRO................................................65

P.    MATTER 39 – FORTIS ................................................67

Q.    MATTER 40 – MEDICI/KOHN ................................................70

R.    MATTER 42 – EQUITY TRADING ................................................71

S.    MATTER 51 – CRUPI ................................................71

## TABLE OF CONTENTS
### (continued)

|  |  |  | **Page** |
|---|---|---|---|
| | T. | MATTER 53 – MAGNIFY | 72 |
| | U. | MATTER 58 – PJ ADMINISTRATORS | 74 |
| | V. | MATTER 59 – STANLEY SHAPIRO | 75 |
| | W. | MATTER 60 – AVELLINO | 76 |
| | X. | MATTER 62 – SUBSEQUENT TRANSFERS | 78 |
| | Y. | MATTER 71 – SQUARE ONE | 80 |
| | Z. | MATTER 73 – BNP PARIBAS | 81 |
| | AA. | MATTER 77 – EXTRATERRITORIALITY | 83 |
| V. | | COMPENSATION REQUESTED | 86 |
| VI. | | REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED | 89 |
| VII. | | CONCLUSION | 92 |

**TO THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the

"Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff

Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually

(collectively, the "Debtor"), respectfully submits this twenty-sixth application (the "Application")

on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331

of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of

SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local

Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of

Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on

December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended

Compensation Order"), allowing and awarding (i) interim compensation for services performed

by the Trustee and B&H for the period commencing August 1, 2017 through and including

November 30, 2017 (the "Compensation Period"), and (ii) reimbursement of the Trustee's and

B&H's actual and necessary expenses incurred during the Compensation Period, and in support

thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed as counsel to the Trustee during the Compensation Period

yielded significant results for BLMIS customers and the liquidation.  Through pre-litigation and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, more than $12.846 billion as of January 31, 2018[2]—over 73% of the $17.552 billion of principal estimated to have been lost in the Ponzi scheme by those who filed claims—for the benefit of all customers of BLMIS with an allowed claim.

2.       The Trustee has made nine interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(p). The Trustee has distributed approximately $11.441 billion to BLMIS customers through February 22, 2018, inclusive of SIPC advances in the amount of $844.313 million.[3] *See* discussion *infra* Section IV(A)(p).

3.       No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon  ("Soroker"), Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels

---

[2] In general, figures will be reported as of November 30, 2017, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,385,000 SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,390 BLMIS accounts have been fully satisfied.

Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid

out of administrative advances made by SIPC, as SIPA plainly directs.  As Judge Lifland affirmed:

"Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not

coming from the estate."  Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general

estate and not to the fund of customer property (the "Customer Fund"), the payment of the same

has absolutely no impact on the Trustee's current and future recoveries that have been and will be

allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have

been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is

insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation

and is required to advance funds to pay the costs of administration.  See SIPA §§ 78eee(b)(5)(c)

and 78fff-3(b)(2).   SIPC staff has carefully reviewed this Application, as it has all other

compensation applications, and has closely analyzed the time records and services rendered.  Each

month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and

the Trustee and B&H make reductions where appropriate and finalize the amounts that appear

herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's

and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and

(ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland

acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities
> started off by Bernie Madoff and the sequelae is left for everybody else to follow
> all the trails and the trails do lead almost everywhere in the world.  It is clear under

the circumstances that a Herculean effort to follow those trails has been involved
both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008.  Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property").  Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

8.      As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been

rendered here, the amounts requested, this is by any stretch of the imagination one of the largest,

most complex sets of litigation that have come down the pike.  It's measured both in quality and

quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm

or any organization to deal with."  Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.   BACKGROUND

### A.   THE SIPA LIQUIDATION

9.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein,[4] have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

---

[4] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee
Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF
No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189);
February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September
30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth
Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application")

## B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

10.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

11.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

12.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

---

(ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2012 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No. 5980); December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470); April 1, 2014 through July 31, 2014 (the "Sixteenth Interim Fee Application") (ECF No. 8549); August 1, 2014 through November 30, 2014 (the "Seventeenth Interim Fee Application") (ECF No. 9583); December 1, 2014 through March 31, 2015 (the "Eighteenth Interim Fee Application") (ECF No. 10814); April 1, 2015 through July 31, 2015 (the "Nineteenth Interim Fee Application") (ECF No. 12089); August 1, 2015 through November 30, 2015 (the "Twentieth Interim Fee Application") (ECF No. 12958); December 1, 2015 through March 31, 2016 (the "Twenty-First Interim Fee Application") (ECF No. 13751); April 1, 2016 through July 31, 2016 (the "Twenty-Second Interim Fee Application") (ECF No. 14456); August 1, 2016 through November  30, 2016 (the "Twenty-Third Interim Fee Application") (ECF No. 15355); December 1, 2016 through March 31, 2017 (the "Twenty-Fourth Interim Fee Application") (ECF No. 16367); and April 1, 2017 through July 31, 2017 (the "Twenty-Fifth Interim Fee Application") (ECF No. 16886).

## C.    **PRIOR COMPENSATION ORDERS**

13.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

| **Applications** | **Orders Entered**[5] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[6] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |

[5] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee.  The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

[6] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| Applications | Orders Entered[5] |
|---|---|
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | August 27, 2015 (ECF No. 11148) |
| Nineteenth Application (ECF No. 12089) | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | December 21, 2017 (ECF No. 17072) |

## III.  SUMMARY OF SERVICES

14.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

15.    As of November 30, 2017, the Trustee had received 453 applications from avoidance action defendants relating to 303 adversary proceedings and 639 defendants.    After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 280 Hardship Program applicants-defendants from avoidance actions.    As of November 30, 2017, there were 13 Hardship Program

applicants-defendants still under review and 346 applicants-defendants were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending. Hardship applications continue to be submitted.

### B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY

#### a.    Recoveries Accomplished During the Compensation Period

16.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 38 cases for $797,072,849.02. As of November 30, 2017, the Trustee had successfully recovered approximately $12.789 billion.[7]

17.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

18.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

19.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

---

[7] As of January 31, 2018, the Trustee has successfully recovered, or reached agreements to recover, more than $12.846 billion.

IV.    **DETAILED DESCRIPTION OF SERVICES**

20.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested. All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims. The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

21.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H. Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

22.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities. In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s). Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

A.    **MATTER 01**

23.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

a.    **Task Code 01: Trustee Investigation**

24.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

25.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA.  In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad of documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

26.     During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS.  B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

27.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

### b.     Task Code 02: Bankruptcy Court Litigation

28.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

29.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

30.    On December 5, 2014, this Court issued an opinion and order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims.  *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014).  In February 2015, five separate appeals were filed in the District Court, challenging the Bankruptcy Court's order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims.  (Case Nos. 15-cv-01151; 15-cv-01195; 15-cv-01223; 15-cv-01236; 15-cv-01263 (S.D.N.Y.)).  Oral argument was held before the Honorable Paul A. Engelmayer on September 17, 2015.  The District Court affirmed the Bankruptcy Court's decision on January 14, 2016 and entered its final order and judgment on January 28, 2016.  *Diana Melton Trust, Dated 12/05/05 v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 115 Civ. 1151(PAE), 2016 WL 183492*1 (S.D.N.Y. Jan. 14, 2016), appeal docketed, No. 16-413 (2d Cir. Feb. 16, 2016).

31.    On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit.  *Blecker v. Picard*, No. 15-cv-01236 (S.D.N.Y. Feb. 12, 2016), (ECF No. 45); *Zraick v. Picard*, No. 15-cv-01195 (S.D.N.Y. Feb. 12, 2016), (ECF No. 34); *Sagor v. Picard*, No. 15-cv-1263 (S.D.N.Y. Feb. 12, 2016), (ECF No. 41).  The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016.  *See Sagor v. Picard*, Case No. 16-413 (2d Cir.), (ECF No. 34); *Zraick et al. v. Picard*, Case No. 16-420 (2d Cir.), (ECF No. 34); *Blecker et al. v. Picard*, Case No. 16-423 (2d Cir.), (ECF No. 39).

32.    The appellants filed three opening briefs on May 23, 2016. (ECF Nos. 134, 140 and 141).  B&H attorneys filed the Trustee's opposition on August 22, 2016. (ECF No. 166).  SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170), and an amicus brief was filed on

May 31, 2016 (ECF No. 155).  Replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187).  The Second Circuit heard arguments on the inter-account transfer appeals on May 11, 2017.  On June 1, 2017, the Second Circuit issued its decision affirming the District Court's ruling, finding that the inter-account transfer method appropriately applies the net investment method to transfers between BLMIS accounts. *Sagor, et al. v. Picard et al. (In re Bernard L. Madoff Inv. Sec., LLC)*, 697 F.App'x 708 (2d Cir. 2017).  The Second Circuit rejected appellants' arguments because, to apply a method other than the inter-account transfer method would require granting credit for "fictitious and arbitrarily assigned paper profits" to the recipient account. *Id.* at 712, 713. Such a result, the Second Circuit held, would give "legal effect to Madoff's machinations" and be tantamount to the "lend[ing] its power to assist or protect a fraud." *Id* at 712.

33.     On June 19, 2017, Elliot Sagor petitioned for a rehearing *en banc* by the Second Circuit. (ECF No. 261). The Court of Appeals denied Sagor's petition without opinion on July 6, 2017. (ECF No. 265). The deadline for the appellants to file a petition for writ of certiorari to the Supreme Court expired on October 4. 2017. No petitions were filed.

34.     While the inter-account transfer matter was being litigated in the Bankruptcy Court, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker in Opposition to the Trustee's Motion to Affirm the Application of the Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Upon further review and analysis, the Trustee discovered that several hundred accounts contained the notation "PW."  In light of the large number of impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Amended Motion for Order

Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No.

10017). On June 25, 2015, the Bankruptcy Court entered a scheduling order, which set forth

various deadlines for briefing and discovery related to the Profit Withdrawal issue. *See* Order

Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No.

10266). Pursuant to that scheduling order, B&H attorneys produced documents and addressed

discovery-related matters with those claimants who elected to participate in the Profit Withdrawal

litigation.

35. On December 28, 2015, Aaron Blecker—an active litigant in both the Profit

Withdrawal litigation and the inter-account transfer appeal, *see supra*—filed a Motion to Compel

the Trustee to Allow His SIPC Claim with an accompanying Declaration of Bernard L. Madoff

(ECF No. 12319). The Trustee opposed the Blecker Motion to Compel on the grounds that it was

an attempt to contravene both the Profit Withdrawal litigation schedule and the Claims Procedure

Order (ECF No. 12), which sets forth the procedures for determination and adjudication of claims

in this SIPA liquidation. (ECF No. 12432). The Bankruptcy Court heard arguments on the Blecker

Motion to Compel on February 24, 2016 and denied the motion as outside the procedures for

resolving the Profit Withdrawal transactions and premature in light of the questions of fact still

surrounding Mr. Blecker's accounts and claims.

36. Following the February 24, 2016 hearing, counsel for Aaron Blecker and several

participating claimants moved for an Order Authorizing the Deposition of Bernard L. Madoff

(ECF Nos. 12799, 12800). The Trustee opposed this motion on March 16, 2016, on the grounds

that the deposition would be of limited probative value as evidenced by Mr. Madoff's Declaration

filed in support of the Blecker Motion to Compel. Alternatively, were the deposition to be allowed,

the Trustee requested that Mr. Madoff's testimony be limited only to issues related to Profit

Withdrawal transactions. (ECF No. 12892) After hearing arguments on March 23, 2016, this Court granted the Customers' motion to depose Mr. Madoff but with specific instructions limiting his testimony to the Profit Withdrawal litigation. (ECF No. 13060). Mr. Madoff's deposition was taken by counsel for Aaron Blecker on June 15, 2016 with counsel for the Trustee in attendance for purposes of cross-examination.

37.     In response to questions raised by this Court during the February 24, 2016 hearing, the Trustee moved for an Order Amending the Schedule of the Litigation of the Profit Withdrawal Issue to allow time for the depositions of former BLMIS employees who may have knowledge of the Profit Withdrawal transactions. (ECF No. 12865). On March 29, 2016, participating claimants Norman and Joel Blum filed an Opposition to the Trustee's Motion to Amend the Schedule of Litigation of the Profit Withdrawal Issue (ECF No. 12997). The Blums argued that the Trustee failed to set forth good cause showing how the depositions of former employees were likely to provide clarification of the Profit Withdrawal transactions. On April 5, 2016, the Bankruptcy Court granted the Trustee's Motion to Amend the Scheduling Order for the Profit Withdrawal litigation. *See* Hearing Transcript Regarding Trustee's Motion to Extend Discovery Deadline in Profit Withdrawal Proceeding, (ECF No. 13077 at 14:25-15:1). As a result, counsel for the Trustee deposed several former BLMIS employees in May and June of 2016 regarding their work with profit withdrawal transactions at BLMIS. In addition, counsel for the Trustee deposed Participating Claimants Drs. Norman and Joel Blum, on May 11 and 13, 2016, respectively.

38.     On July 12, 2016, this Court entered the Stipulation and Order on Schedule for Litigation of and Evidentiary Hearing on Profit Withdrawal Issue (ECF No. 13619), as agreed to by the parties, and modifying the April 5, 2016 amended scheduling order. Pursuant to the updated scheduling order, the Trustee filed his Supplemental Memorandum of Law in Support of Trustee's

14

Motion Affirming Treatment of Profit Withdrawal Transactions (ECF No. 13876), and SIPC filed
its Supplemental Memorandum in Support of the Trustee's Motion (ECF No. 13872) on August
12, 2016. Participating Claimants subsequently filed two opposition briefs on September 23, 2016
(ECF Nos. 14161 and 14168).

39.    Pursuant to the July 12, 2016 Stipulation and Order, the Trustee and the
Participating Claimants exchanged proposed evidentiary hearing exhibits, witness lists, and
deposition designations on September 30, 2016. Shortly thereafter, the Trustee and counsel for
the Participating Claimants filed motions *in limine* on October 28, 2016 with oppositions filed on
November 18, 2016, and replies filed on December 9, 2016. This Court heard oral arguments on
the motions *in limine* on April 18, 2017.

40.    On June 15, 2017, this Court entered its Memorandum Decision Regarding Motions
*In Limine* (ECF No. 16180), granting the Trustee's motion to exclude himself as a witness in the
Profit Withdrawal litigation and deferring a ruling until trial as to whether to exclude certain
testimony of Drs. Joel and Norman Blum. The Court's Order granting the Trustee's Motion *in
Limine* to Exclude the Trustee as a Witness and deferring its ruling on the Trustee's Motion *in
Limine* to Exclude Certain Hearsay Testimony of Drs. Joel and Norman Blum was subsequently
entered on June 29, 2017 (ECF No. 16288).

41.    Following the oral arguments on the motions *in limine*, the Trustee and the Blums
agreed to settle the adversary proceeding, withdrawal of the Blums as participating claimants in
the Profit Withdrawal litigation, and final resolution of their customer claims and their objections
to the determination of those claims. Settlement included payment on the Blum customer claims.

42.    The Court approved the settlement and on October 13, 2017, entered the Stipulation
and Order as to Withdrawal of Norman, Joel, and Kerry Blum from the Profit Withdrawal litigation

(ECF No. 16767) and the Stipulation and Order for Voluntary Dismissal of the Trustee's Adversary Proceeding pending against Norman J. Blum (ECF No. 16766). In addition, and as part of the settlement, Norman, Joel and Kerry Blum withdrew their objections to the Trustee's determination of their customer claims (ECF Nos. 16760, 16761).

43.    During the Compensation Period, counsel for the Trustee continued to prepare for the Profit Withdrawal evidentiary hearing, including attending the pre-trial conference held before this Court on November 9, 2017. During the pre-trial conference, this Court scheduled the hearing to resolve the Profit Withdrawal issue for January 18 and 19, 2018 and confirmed that the hearing would serve to both resolve the omnibus issue regarding the Trustee's treatment of profit withdrawal transactions and resolve Mr. Aaron Blecker's individual claims objections. Shortly thereafter, the date of the hearing was rescheduled to begin on January 19, 2018 with additional dates to be scheduled if necessary.

44.    The Profit Withdrawal issue evidentiary hearing went forward on January 19, 2018. During the one-day evidentiary hearing, this Court heard testimony from Aaron Blecker's son, Robert Blecker, regarding his father's review of his BLMIS account statements and general investment strategy. The Court also heard testimony from the Trustee's expert witnesses, Matthew Greenblatt and Lisa Collura, regarding the reconstruction of the BLMIS books and records and the support therein for the Trustee's determination that Profit Withdrawal transactions should be treated as debits to the customer accounts. Judgment was reserved pending resolution of objections to exhibits on evidentiary grounds and post-hearing submissions.

45.    Since the evidentiary hearing, the Parties simultaneously submitted exhibits for the Court's consideration with a hearing on objections to the exhibits to be scheduled at the Court's convenience. Counsel for the Trustee submitted his Proposed Findings of Fact and Conclusions

of Law to the Court on March 7, 2018, with the Participating Claimants' submission due on March 22, 2018, and a hearing to be scheduled thereafter at the Court's discretion.

### c.    Task Code 03: Feeder Funds

46.    This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### d.    Task Code 04: Asset Search and Sale

47.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

48.    During the Compensation Period, the Trustee and B&H attorneys conducted additional due diligence in furtherance of the liquidation of assets held by Madoff Family, LLC, Madoff Energy LLC, Madoff Brokerage and Trading Technology LLC, and Madoff Technologies LLC and their affiliates, continued to value the intellectual property interest in Primex, evaluated corporate governance issues, worked with consultants to assist in the valuation and marketing of certain intellectual property of Primex, continued to prosecute Primex patent applications in the U.S. and Canada, managed publicly-traded equity assets of Madoff Family LLC and strategized as to their sale, and continued to value the oil and gas property interests held by Madoff Energy LLC.

49.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### e.    Task Code 05: Internal Meetings with Staff

50.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals.  Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### f.    Task Code 07: Billing and Trustee Reports

51.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### g.    Task Code 08: Case Administration

52.    This category relates to time spent assisting the efficient administration of the case.

53.    The Trustee has filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

54.    On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

55.    On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  On January 30, 2012, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September

14, 2012. (ECF No. 4483). On December 11, 2013, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 18, 2014. (ECF No. 5358). On June 19, 2014, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through January 16, 2015. (ECF No. 7037). On December 15, 2014, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 17, 2015. (ECF No. 8762). On December 23, 2015, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 15, 2016. (ECF No. 12312). On July 7, 2016, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 23, 2016. (ECF No. 13601). On November 17, 2016, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through July 31, 2017 (ECF No. 14447). On June 14, 2017, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 31, 2017 (ECF No. 16169). On October 5, 2017, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through June 27, 2018 (ECF No. 16718).

### h.    **Task Code 09: Banks**

56.    Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS. Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other

third parties, and the preparation of pleadings relating to claims that will be brought against such

banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### i.    Task Code 10: Court Appearances[8]

57.    This category relates to time spent by the Trustee and B&H attorneys making court

appearances in this Court, other federal courts within the Second Circuit, and various courts

abroad.

### j.    Task Code 11: Press Inquiries and Responses

58.    This category relates to time spent by the Trustee, B&H attorneys, and

paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the

recovery of funds.

### k.    Task Code 12: Document Review

59.    This category relates to time spent by the Trustee and B&H attorneys reviewing

documents received from parties and third parties in response to the hundreds of letters and

subpoenas issued by the Trustee, as well as other discovery-related tasks that cross multiple cases.

### l.    Task Code 13: Depositions and Document Productions by the Trustee

60.    This category generally relates to time spent by the Trustee and B&H attorneys

conducting discovery that touches upon more than one matter and responding to discovery

propounded to the Trustee by various third parties and defendants in avoidance actions.

---

[8] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court
Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

m.    **Task Code 15: Charities**

61.    This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

n.    **Task Code 19: Non-Bankruptcy Litigation**

62.    This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

o.    **Task Code 20: Governmental Agencies**

63.    This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

p.    **Task Code 21: Allocation**

64.    This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

65.    The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

66.    The Trustee filed nine motions seeking entry of an order approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property, and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $768.551 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $5.585 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $781.692 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $525.752 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[9] | $453.032 million | 2.743% | 8860 | 9014 |
| 6 | 12/4/15 | $345.472 million[10] | $1.358 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $213.815 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $282.794 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | N/A | 3.806% | 17033 | 17195 |
| **TOTAL** | N/A | $12.789 billion | $9.969 billion | 63.904% | N/A | N/A |

67.    After the Compensation Period, on February 22, 2018, the Trustee distributed approximately $620.873 million, or 3.806% of each BLMIS allowed claim through the completion of the Ninth Interim Distribution, unless the claim had been fully satisfied. This represents a significant milestone in this litigation, with 1,390 BLMIS accounts fully satisfied.[11]  The 1,390 fully satisfied accounts represent more than 61% of accounts with allowed claims.  When combined with the $9.969 billion distributed as part of the First through Eighth Interim

---

[9]The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[10]This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015.  The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[11]Any customer with an allowed claim of $1,385,000.00 has been fully satisfied.

Distributions through the end of the Compensation Period, catch-up distributions in the amount of $6.806 million and SIPC advances in the amount of $844.313 million,[12] the Trustee had distributed approximately $11.441 billion to BLMIS customers through February 22, 2018, or 63.904% of each BLMIS allowed customer claim.

## B.    MATTER 04 – MERKIN

68.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"), Gabriel Capital Corporation ("GCC"), and Merkin's funds Ascot Partners, L.P. ("Ascot Partners") and Ascot Fund Limited ("Ascot Fund," collectively, the "Merkin Defendants"). The Trustee alleges that Merkin knew or was willfully blind to the fact that Madoff's investment advisory business was predicated on fraud. The current operative complaint seeks the return of nearly $280 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin, et al.*, Adv. No. 09-01182 (SMB) (Bankr. S.D.N.Y.).

69.    On August 10, 2015, B&H attorneys filed a motion to withdraw the reference to the Bankruptcy Court. (ECF Nos. 271-273; *Picard v. Merkin*, No. 15-cv-06269 (LTS)). Ultimately, the Trustee withdrew this motion after he and the Merkin Defendants entered a stipulation on September 1, 2015, which was so ordered by the Bankruptcy Court on September 2, 2015. Under the stipulation, all parties in the action consented to: (a) the entry of final orders and judgments by the Bankruptcy Court on all claims in this adversary proceeding; (b) waiving

---

[12] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,385,000 SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date.

their right to a jury trial; and (c) agreeing to a bench trial before the Bankruptcy Court on all claims in this proceeding.  (ECF Nos. 278-279; *Picard v. Merkin*, No. 15-cv-06269 (LTS), ECF No. 10).  The terms of the agreement with the Merkin Defendants as to a trial by the Bankruptcy Court were also incorporated into an order that was entered by the District Court agreeing to the withdrawal of the motion to withdraw the reference.  (ECF Nos. 11-12; *Picard v. Merkin*, No. 15-cv-06269 (LTS)).

70.    On August 14, 2015, the Merkin Defendants filed letters with the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 7056-(1)(a), requesting a pre-motion conference with the Court regarding their intention to file a summary judgment motion to dismiss all of the Trustee's remaining claims.  (ECF Nos. 275-276).  The Court granted the Merkin Defendants' motion to file a motion for summary judgment at a conference on August 18, 2015.  (ECF No. 281).  On October 7, 2015, the Merkin Defendants filed their summary judgment motion, (ECF Nos. 283-287), and on November 30, 2015, the Trustee filed his opposition to the motion.  (ECF Nos. 289-302).  On December 23, 2015, the Merkin Defendants filed their reply in support of their motion for summary judgment.  (ECF Nos. 306-310).  On June 1, 2016, the Court heard oral argument on the Merkin Defendants' respective motions for summary judgment.  (ECF Nos. 315, 318, 322).

71.    On January 30, 2017, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motions for Summary Judgment, with the Court denying the Defendants' summary judgment motions except with respect to the Trustee seeking to recover subsequent transfers from Ascot Partners.  (ECF No. 327).  On February 21, 2017, the Trustee and the Merkin Defendants entered into a Sixteenth Amended Case Management Plan, which provided an initial schedule for pretrial briefing and disclosures.  (ECF No. 331).  On May 22, 2017, May

31, 2017, July 5, 2017, and August, 24, 2017, the Trustee and the Merkin Defendants entered into

the Seventeenth, Eighteenth, Nineteenth, and Twentieth Case Management Orders, respectively,

which, among other things, provided an amended schedule for pretrial briefing and disclosures,

re-opened discovery to take the depositions of certain witnesses, and scheduled oral arguments on

the motions *in limine* for July 18, 2017 and August 9, 2017.  (ECF No. 381, 383, 405, 414).

72.    The Trustee filed his motions *in limine* on April 7, 2017.  (ECF Nos. 332-339),

while the Merkin Defendants filed their motions *in limine* on April 7, 2017 and May 17, 2017

(ECF Nos. 340-360).  Oral argument occurred before the Court as to several of the parties'

respective motions *in limine* on July 18, 2017.

73.    During the Compensation Period, B&H attorneys prepared for and participated in

oral argument before the Court on August 9, 2017, as to the parties' remaining motions *in limine*.

74.    During the Compensation Period, on August 24, 2017, the Trustee and the Merkin

Defendants entered a stipulation, which was so ordered by the Court, extending the time to submit

Orders upon consent as to certain rulings that the Court made as to various motions *in limine* at

the August 9, 2017 oral argument based on the papers submitted by the Trustee and Merkin

Defendants and arguments of counsel at oral argument.  (ECF No. 413).  During the Compensation

Period, B&H attorneys drafted and negotiated with opposing counsel as to orders that were

submitted to the Court as to these motions *in limine*.

75.    During the Compensation Period, on August 24, 2017, the Trustee and the Merkin

Defendants entered into the Twentieth Amended Case Management Plan, which provided for an

additional briefing schedule on (i) the issue of equitable subordination and (ii) the parties' burdens

of proof and persuasion, and additionally provides that the Court will determine when the final

pre-trial conference will occur and trial will commence.  (ECF No. 414).

76.     During the Compensation Period, B&H attorneys reviewed the Merkin Defendants' motion *in limi*ne on the issue of equitable subordination.  (ECF No. 410-12).  B&H attorneys then prepared and finalized the Trustee's opposition brief on September 15, 2017.  (ECF No. 415).  Further, B&H attorneys reviewed the Merkin Defendants' corresponding reply brief to their motion *in limine*, which was filed on September 29, 2017.  (ECF No. 423).

77.     During the Compensation Period, B&H attorneys prepared and finalized the Trustee's letter brief to the Court on the issues of burden of proof and persuasion in anticipation of trial, which was filed on September 29, 2017.  (ECF No. 419).  Further, the Trustee reviewed the Merkin Defendants' corresponding brief on the same issue.  (ECF No. 421).

78.     During the Compensation Period, B&H attorneys prepared for and participated in a settlement conference with the Merkin Defendants before the Court, which occurred on October 30, 2017 (ECF No. 414).

79.     During the Compensation Period, B&H attorneys also continued to strategize, prepare, and complete various other tasks in anticipation of trial.

C.     **MATTER 05 – CUSTOMER CLAIMS**

a.     **Customer Claims**

80.     During the Compensation Period, the Trustee allowed $1,004,004,646.24 in customer claims, bringing the total amount of allowed claims as of November 30, 2017 to $16,891,632,482.62. As of November 30, 2017, the Trustee has paid or committed to pay $842,850,652.98 in cash advances from SIPC.  This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

81.     As of November 30, 2017, 40 claims relating to 30 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and

related parties.  The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under § 502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### b.  General Creditor Claims

82.    As of November 30, 2017, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion.  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million.  At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### c.  The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

83.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

84.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-

date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

85. In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of November 30, 2017, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

86. The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of November 30, 2017, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 hotline calls from claimants and their representatives.

87. The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

88. The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts and other matters of interest in determining claims.

89. The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

### D.    MATTER 07 – MADOFF FAMILY

90. This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

91.     During the Compensation Period, the Trustee's adversary proceeding against the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates"), entitled *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503 (SMB) came to a conclusion.

92.     On June 23, 2017, the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government") and the Estates entered into a Stipulation and Order of Settlement (the "Stipulation"), which resolved all of the Trustee's claims against the Estates and various Madoff-related business entities.[13]   Stephanie Mack ("Mack") was also a party to the Stipulation.  Under the terms of the agreement, the Trustee and the Government were to receive more than $23 million in cash and other assets from the Estates and Mack. The total recovery would be shared equally between the Trustee and the Government.

93.     On June 26, 2017, the United States District Court for the Southern District of New York approved the Stipulation.

94.     Also on June 26, 2017, the Trustee filed a Motion For Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of The Federal Rules of Bankruptcy Procedure seeking approval of a settlement by and among the Trustee, the Government, David Blumenfeld in his capacity as Successor Executor of the Estate of Mark D. Madoff, Martin Flumenbaum, in his capacity as Executor of the Estate of Andrew H. Madoff, and Mark Madoff's widow, Stephanie Mack a/k/a Stephanie Madoff. (ECF No. 16239).

95.     On July 24, 2017, the Bankruptcy Court entered an Order granting the Trustee's Motion and approving the settlement (ECF No. 311).

---

[13] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

96.     On September 7, 2017, the Trustee submitted a Stipulation and Order for Voluntary Dismissal of Adversary Proceeding with Prejudice to the Bankruptcy Court.

97.     The Bankruptcy Court so ordered the Stipulation on September 8, 2017 (ECF No. 313).

98.     On September 11, 2017, the Bankruptcy Court "closed" the Adversary Proceeding.

E.     **MATTER 09 – FAIRFIELD GREENWICH**

99.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009). This matter also categorizes time spent by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages claims against other Fairfield Greenwich Group related entities and individuals, including the founding partners and other management officials.

100.     On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the

amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

101.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.   Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.   The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.   Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

102.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.   *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).   In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.   Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

103.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.   *See* discussion *infra* Section IV(I)(d).   The Trustee briefed and presented argument at the hearings on these issues before the District Court.   As of July 31, 2014, the District Court had issued decisions on all issues subject to

Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions. *See* discussion *infra* Section IV(I)(d).

104.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

105.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement. *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.) ("Anwar"), (ECF No. 997).  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement.  *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), (ECF No. 2).  On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, No. 12 Civ. 9408 (VM) (S.D.N.Y.), (ECF No. 30).  On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the Anwar settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the Anwar settlement.  (ECF No. 61).

106.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the Anwar action.  (ECF No. 1054).  On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the Anwar action.  (ECF. No. 1106).

107.    Briefing on both appeals of the Anwar decisions was completed on June 7, 2013.  Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Second Circuit issued its decision affirming the District Court's decisions.

108.    On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11 Civ. 5905 (AT) (Bankr. S.D.N.Y.) ("Fairfield Sentry"), the Court granted a motion to withdraw the reference in an appeal in the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.  On January 28, 2014, the Trustee requested a pre-motion conference for a motion to intervene in the matter.  On January 30, 2014, the District Court denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for the filing of the motion to intervene.  The Trustee submitted his motion to intervene on February 28, 2014.  Morning Mist Holdings and Migual Lomeli filed opposition papers on March 14, 2014.  The Trustee filed a reply in support of the motion to intervene on March 21, 2014.  On July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.  Following the filing of the Trustee's brief, on September 30, 2014, the District Court dismissed the Complaint.  The time for filing an appeal of the District Court's decision has expired without any appeal being filed.

109.    A number of defendants in other proceedings, along with some of the Fairfield management defendants, filed motions to dismiss which were subject to Common Briefing in the District Court following motions to withdraw the reference to this Court.   All of the Common Briefing decisions have been issued by the District Court.   *See* discussion *infra* Section IV(I)(d). The District Court remanded to this Court several of the proceedings which had been subject to Common Briefing, including the Fairfield action.

110.    Some of the Fairfield action defendants joined other defendants in the motion to dismiss on extraterritoriality grounds, which had been subject to Common Briefing. *See* discussion *infra* Section IV(I)(d). The defendants filed a supplemental memorandum in support of the extraterritoriality motion to dismiss on December 31, 2014.   The Trustee filed his response to the supplemental memorandum on June 26, 2015, which included an addendum specific to the Fairfield defendants and a proffered Second Amended Complaint.   The defendants' reply memorandum was filed on September 30, 2015.   This Court held a hearing on the extraterritoriality motion to dismiss on December 16, 2015.   On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. That decision is currently on appeal. *See* discussion *infra* Section (IV)(AA).

111.    Following the issuance of this Court's decision on the extraterritoriality motion to dismiss, the Trustee and the Fairfield defendants could not agree as to the terms of the required settle order. On January 20, 2017, the Fairfield defendants submitted a letter to this Court as to their position as to the extraterritoriality decision settle order. *See* discussion *infra* Section (IV)(AA).

112.    As part of the briefing on the extraterritoriality motion to dismiss, the Trustee sought the de-designation as confidential of certain documents produced by the Fairfield

defendants. Pursuant to a stipulation entered by the Trustee and the Fairfield defendants the Trustee submitted the documents to an arbitrator, who ruled the documents were not confidential. On June 22, 2015, the Trustee submitted a letter to this Court seeking the confirmation of the arbitrator's decision. On July 15, 2015, this Court entered an order deeming the Trustee's letter to be a motion and granted the Trustee's request to confirm the arbitrator's decision holding the documents not to be confidential.

113.    On September 23, 2016, the Trustee requested the Fairfield defendants to de-designate as confidential the remaining documents they had previously produced to the Trustee. On October 10, 2016, the Fairfield defendants agreed to de-designate some of the requested documents but asked for clarification as to compliance with the arbitrator's prior decision as to the confidentiality of the bulk of the documents. During the Compensation Period, the Trustee's counsel reviewed the questioned documents to verify de-designation would comply with the arbitrator's decision.

114.    Pursuant to this Court's order scheduling the extraterritoriality motion to dismiss, the response date to the remaining claims in the Trustee's complaint will be set following the filing of settle orders for the extraterritoriality motion to dismiss decision.

115.    On June 22, 2016, as part of the previously approved settlement between the Trustee and the Fairfield Funds, the Fairfield Funds Joint Liquidators filed a motion in this Court in In re Fairfield *Sentry Limited et al.*, Case No. 10-13164 (SMB) (Bankr. S.D.N.Y.) seeking the approval of the assignment of claims against Fairfield Greenwich Group entities and related persons to the Trustee pursuant to Bankruptcy Code section 363. (ECF No. 805). On July 5, 2016, the Trustee filed a response to the motion. (ECF No. 810). On July 5, 2016, Morning Mist Holdings and Miguel Lomeli filed an objection to the motion. (ECF No. 809). On July 12, 2016,

the Court held a hearing on the motion. On November 22, 2016, this Court issued its decision denying the Liquidators' motion for approval of the assignment of claims without prejudice. This Court noted it could not isolate the assignment without assessing the entire settlement. Furthermore, it was uncertain that any motion was required under Bankruptcy Code section 363.

### F.    MATTER 11 – COHMAD SECURITIES CORPORATION

116.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances, disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Alvin J. Delaire, Jr. et al.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).[14]

117.    During the Compensation Period, B&H attorneys continued to move forward with developing the case and discovery, which has included amending the Trustee's initial disclosures, reviewing and analyzing various Cohmad, BLMIS, and third-party documents, and organizing evidence gathered from direct discovery, third party discovery, informal discovery, and other sources, as well as conducting interviews of and preparing for and/or taking depositions of third parties (including investors referred by Cohmad and a former BLMIS employee).

---

[14] The Adversary Proceeding is currently captioned *Picard v. Alvin J. Delaire, Jr. et al*., Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

### G.    MATTER 12 – PICOWER

118.    This matter categorizes time spent by the Trustee and B&H attorneys in connection with the Trustee's litigation and settlement with Jeffry M. Picower ("Picower") and Barbara Picower, both individually and as trustees for various foundations, and related entities (collectively, the "Picower Parties"). The Trustee's lawsuit sought recovery of nearly $7 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Picower Parties. *Picard v. Picower*, Adv. No. 09-01197 (SMB) (Bankr. S.D.N.Y.).

119.    On January 13, 2011, this Court entered an Order (the "Picower Settlement Order") approving the $5 billion settlement between the Trustee and the Estate of Jeffry M. Picower et al. (ECF No. 43). BLMIS claimants Adele Fox and Susanne Stone Marshall (the "Fox Plaintiffs", who had brought putative class actions against the Picower Parties in Florida in 2010, appealed the Picower Settlement Order. (ECF Nos. 45, 49). On March 26, 2012, United States District Judge John G. Koeltl issued an Opinion and Order affirming this Court's Picower Settlement Order and permanently enjoining certain duplicative or derivative actions against the Picower Parties. *Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012). On further appeal, the Second Circuit affirmed the District Court's decision on January 13, 2014. *See In re Bernard L. Madoff Inv. Sec., LLC*, 740 F.3d 81 (2d Cir. 2014).

120.    A forfeiture action against Picower's estate resulted in the additional recovery of more than $2.2 billion to the United States Government (the "Picower Forfeiture"), which is intertwined with the Trustee's Picower settlement. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 10 Civ. 09398 (TPG) (S.D.N.Y.). On May 23 and 24, 2011, United States District Judge Thomas P. Griesa

entered a final order of forfeiture in favor of the United States. (ECF Nos. 16, 17). The Second Circuit dismissed an appeal of Judge Griesa's order, and on June 8, 2012, a final order of forfeiture was issued. *See United States v. $7,206,157,717 On Deposit at JPMorgan Chase, NA in the Account Numbers Set Forth on Schedule A*, No. 11-2898 (2d Cir. June 8, 2012), (ECF No. 85).

121. Because the time to appeal the final order of forfeiture expired, the settlement amount of $5 billion was transferred to the BLMIS estate and the Customer Fund.

122. B&H attorneys are also currently proceeding with litigation to enjoin third party actions that the Trustee has argued are subject to the permanent injunction issued in connection with the Trustee's settlement with the Picower Parties (the "Permanent Injunction"). During the Compensation Period, there have been developments in the District Court and the Second Circuit with respect to these proceedings.

### a.  **Picard v. Marshall**

123. The Trustee has sought to enjoin the actions brought by the Fox Plaintiffs against the Picower Parties in view of the Permanent Injunction, which precludes claims that duplicate or derive from claims the Trustee brought or could have brought against the Picower Parties. This Court's decision barring the Fox Plaintiffs' suits was affirmed by the District Court and Second Circuit. *Picard v. Fox*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010), *aff'd, Fox v. Picard*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd, In re Marshall*, 740 F.3d 81 (2d Cir. 2014).

124. On February 5, 2014, shortly after the Second Circuit's affirmance, the Fox Plaintiffs brought a motion in Florida District Court to bring a second amended complaint against the Picower Parties as Section 20(a) control persons of BLMIS under the federal securities laws ("*Fox II*"). The Trustee successfully enforced the Permanent Injunction against the Fox Plaintiffs, prohibiting them from proceeding with their new proposed class action. *See Picard v. Marshall*, 511 B.R. 375 (Bankr. S.D.N.Y. 2014). In the same action, the Trustee also successfully enforced

the Permanent Injunction as against another set of plaintiffs (the "Goldman Plaintiffs") as they

sought to bring a putative class action against the Picower Parties, as discussed further below.  On

May 11, 2015, the Court's decision and order was affirmed by the District Court.  *Picard v.*

*Marshall*, 531 B.R. 345 (S.D.N.Y. 2015) (Koeltl, J.).

125.    Meanwhile, shortly after appealing this Court's decision in *Fox II* to the District

Court, the Fox Plaintiffs moved in this Court for depositions of Bernard Madoff and others under

Federal Rule of Bankruptcy Procedure 2004 and, with respect to Bernard Madoff's deposition,

under Federal Rule of Civil Procedure 27(a) and (b).  On October 30, 2014, to the extent this court

found it had jurisdiction, it denied the motion.  *Picard v. Marshall*, No. 14-01840, 2014 WL

5486279 (Bankr. S.D.N.Y. Oct. 30, 2014).

126.    The Fox Plaintiffs subsequently brought a Rule 27(a) petition for a deposition of

Bernard Madoff in Delaware District Court.  That court declined to rule on the petition and

transferred the case to the Southern District of New York.  *In re Marshall*, No. 15-MC-01, 2014

WL 849302 (D. Del. Feb. 25, 2015).  The Fox Plaintiffs petitioned the Third Circuit to vacate the

transfer order, and the Third Circuit denied that petition.  *In re Marshall*, No. 15-1590 (3rd Cir.

2015).

127.    On May 11, 2015, the District Court denied the Rule 27 petition after hearing oral

argument jointly with argument on the *Fox II* appeal.  *Marshall v. Madoff*, 15-MC-56, 2015 WL

2183939 (S.D.N.Y. May 11, 2015) (Koeltl, J.).  The District Court held that the Fox Plaintiffs

appeared to be bringing the petition for the improper purpose of crafting a third amended complaint

and failed to show any urgent need for the deposition.  *Id.* at 3.

128.    The Fox Plaintiffs appealed this decision to the Second Circuit, which consolidated

the appeal with the appeal of the District Court's decision on the *Fox II* injunction.  The Second

Circuit dismissed the appeals on September 25, 2015 after the Fox Plaintiffs abandoned those appeals. (Order, *Marshall v. Capital Growth Co. et al*., 15-1869 (lead), (ECF No. 70) (2d Cir. Sept. 25, 2015).)

129.    On August 29, 2015, while the appeals to the Second Circuit were still pending, the Fox Plaintiffs brought a declaratory judgment action and motion seeking to file a third amended complaint against the Picower Parties ("*Fox III*"). The Fox Plaintiffs again alleged that the Picower Parties were control persons of BLMIS and incorporated testimony from a recently disclosed deposition of Bernard Madoff. In support of their claim, the Fox Plaintiffs also introduced on reply a declaration from Bernard Madoff in an unrelated case, which made references to Mr. Picower. The Fox Plaintiffs also stated in their papers that they intended to seek Bernard Madoff's deposition. The Trustee and Picower Parties objected to the Fox Plaintiffs' motion on the ground that the *Fox III* complaint was, like the predecessor complaints, duplicative and derivative of the Trustee's complaint, and further objected to the inclusion of Bernard Madoff's declaration.

130.    Counsel for the Fox Plaintiffs then moved in this Court on March 9, 2016 in an unrelated matter for the deposition of Bernard Madoff. The Trustee and Picower Parties objected to the motion in part on the ground that counsel would improperly seek testimony concerning Mr. Picower, which was irrelevant to the matter. On March 23, 2016, this Court issued a bench ruling allowing counsel to depose Mr. Madoff, but prohibited any reference to Mr. Picower during the deposition.

131.    On March 7, 2017, after oral argument, this Court issued a memorandum decision, enforcing the Permanent Injunction, denying the Fox Plaintiffs' motion for summary judgment and dismissing the *Fox III* complaint. *Marshall v. Capital Growth Co.*, 568 B.R. 203 (Bankr.

S.D.N.Y.)  The Court found that many of the allegations in *Fox III* were identical to the allegations in *Fox II*, and the damages sought were likewise the same.  *Id.* at 210.  With respect to the new allegations in *Fox III* about Mr. Picower's alleged role as a control person, the Court found that the allegations were "practically identical" to the allegations in *Goldman III* (discussed further below), which this Court and the District Court had ruled were conclusory, as well as common to all BLMIS customers and thus owned by the Trustee.  *Id.* at 211-13.  The allegations likewise failed to identify any conduct by the Picower Parties that was directed at a member of the putative class.  *Id.* at 217.  This Court further held that Bernard Madoff's deposition and declaration did not supply any facts that would support independent claims.  *Id.* at 213-17.

132.    On March 30, 2017, the Fox Parties filed a Notice of Appeal to the District Court, and the appeal is fully briefed. (*See Marshall v. Capital Growth Co.*, 17-cv-02230 (VSB) (S.D.N.Y.)).  Oral argument has not been scheduled.

### b.    Picard v. A&G Goldman Partnership

133.    In December 2011, A & G Goldman Partnership and Pamela Goldman (as defined above, the "Goldman Plaintiffs") moved before this Court to lift the automatic stay to file putative securities class actions against the Picower Parties.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (S.D.N.Y. Dec. 13, 2011), (ECF No. 4581).  On June 20, 2012, this Court issued an order denying the Goldman Plaintiffs' motion on the grounds that the complaints were duplicative and derivative of the Trustee's settled claims and thus in violation of the Permanent Injunction as well as the automatic stay.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 477 B.R. 351, 352–53 (Bankr. S.D.N.Y. 2012).

134.    The Goldman Plaintiffs appealed to the District Court.  *A & G Goldman P'ship v. Picard*, No. 12-cv-06109 (RJS) (S.D.N.Y. Aug. 10, 2012).  On September 30, 2013, after oral argument, the District Court issued a decision affirming the Bankruptcy Court's decision and

order.  *A & G Goldman P'ship v. Picard*, No. 12–cv-6109 (RJS), 2013 WL 5511027 (S.D.N.Y.

Sept. 30, 2013) (Sullivan, J.).  The Goldman Plaintiffs did not further appeal the District Court's

decision.

135.    On January 6, 2014, the Goldman Plaintiffs filed a new action in the District Court

for the Southern District of Florida, seeking to file a new complaint against the Picower Parties

("*Goldman II*").  On March 11, 2014, the Trustee successfully enforced the Permanent Injunction

against the Goldman Plaintiffs and the Fox Plaintiffs, as discussed above.  The Goldman Plaintiffs

appealed the Bankruptcy Court's decision and order, but subsequently withdrew their appeal.

136.    On August 28, 2014, the Goldman Plaintiffs brought a new action against the

Picower Parties in the United States District Court for the Southern District of Florida, again

seeking to allege securities law claims against the Picower Parties ("*Goldman III*").  On November

17, 2014, the Trustee brought an adversary proceeding in this Court to enforce the Permanent

Injunction against the Goldman Plaintiffs.  The Picower Parties also brought a motion to enforce

the Permanent Injunction against the Goldman Plaintiffs, and the two actions were consolidated.

137.    On February 17, 2016, this Court granted the Trustee's and Picower Parties'

motions.  *See Picard v. A&G Goldman P'ship,* 546 B.R. 284 (Bankr. S.D.N.Y. 2016).  The Court

held that the Goldman Plaintiffs sought to recover for conduct that was incidental to withdrawals

that formed the basis of the Trustee's claims and for injuries that were identical to those suffered

by customers generally.  *Id.* at 300.  The Court thus held that the Goldman Plaintiffs' claims were,

like the earlier iterations of the claims, derivative of the claims the Trustee had settled, and were

thus enjoined by the Permanent Injunction.  *Id.*  The Goldman Plaintiffs appealed the decision and

order to the District Court.

138.    On January 24, 2017, the District Court issued an order and decision affirming this Court's order and decision. *A&G Goldman P'ship v. Capital Growth Co.*, 565 B.R. 510 (S.D.N.Y. Jan. 24, 2017). (Wood, J.).    The District Court found that the claims in *Goldman III* were derivative, could be brought by any BLMIS creditor, and were not based on conduct by the Picower Parties that was directed to the Goldman Plaintiffs or to any putative class members in particular. *Id.* at 522.    The court found that the claims were general claims that affected all BLMIS investors in the same way, and were "functionally similar" to the prior complaint barred by the Permanent Injunction.  *Id.* at 523.    The Court further held that the *in pari delicto* doctrine did not support the Goldman Plaintiffs' position.  *Id.* at 526.

139.    The Goldman Plaintiffs appealed the District Court's decision to the Second Circuit, and the appeal is fully briefed.  (*See A&G Goldman P'ship v. Capital Growth Co. et al.*, No. 17-512 (2d Cir.)).    Oral argument is scheduled for May 2, 2018.

## H.    <u>MATTER 13 – KINGATE</u>

140.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law of approximately $926 million in initial fraudulent transfers that BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds").    The proceeding before the Court is captioned as *Picard v. Federico Ceretti*,[15] Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.).    The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators.    Kingate Global and Kingate Euro each filed a customer claim in the

---

[15] Defendant Ceretti and 15 other defendants were dismissed by this Court's November 22, 2016 Memorandum decision on the ground of comity.

SIPA proceeding in the combined total amount of approximately $800 million.  The Trustee seeks

to avoid and recover the fraudulent transfers and equitably subordinate the Kingate Funds'

customer claims.  Until this proceeding is resolved, the customer claims are temporarily disallowed

under section 502(d) of the Bankruptcy Code.

141.    During August 2017, and continuing throughout the Compensation Period, the

Trustee's U.S. and BVI counsel communicated with counsel for the respective trustees of the

Ashby Trust and the El Prela Trust, which hold certain assets of Messrs. Ceretti and Grosso that

the Trustee alleges constitute subsequent transfers originating from BLMIS ("Ceretti and Grosso

Trusts").  Counsel conferred about amendments to the Beddoe orders, as proposed by the trustees

of the Ceretti and Grosso Trusts.  The Beddoe orders of the Eastern Caribbean Supreme Court in

the BVI permit the trustees of the Ceretti and Grosso Trusts, subject to certain agreed-upon

limitations, to draw upon assets in such Trusts for reimbursement of the trustees' fees and expenses

incurred in defending the U.S. litigation.  Changes to the agreed-upon reimbursement limitations

in the Beddoe orders requires the Trustee's consent or an adjudication of the issue by the BVI

court.

142.    On September 6, 2017, the Trustee's counsel monitored the oral argument before

the U.S. Court of Appeals for the Second Circuit in the plaintiffs' appeal from the order of the U.S.

District Court for the Southern District of New York in *In re Kingate Mgmt. Ltd. Litig.*, Case No.

09-cv-05386 (DAB), dismissing the Second Amended Consolidated Class Action Complaint

against Kingate Management Limited ("KML"), *et al.*, captioned as *In re Kingate Management*

*Ltd. Litig.*, Case No. 16-3450.  That appeal involves personal jurisdiction and extraterritoriality

issues of interest to the Trustee in his avoidance proceedings before this Court. The Second Circuit

reserved decision.

143.    Throughout the Compensation Period, the team's focus has been on conducting party and non-party discovery, both within the United States and abroad, as discussed below.

144.    On August 2, 2017, following multiple rounds of negotiations, the Kingate Funds' Joint Liquidators made a supplemental document production to the Trustee.  That production consisted of certain witness statements given to the Joint Liquidators, documents produced by third parties to the Joint Liquidators after their appointment, and the pleadings and other submissions by the Joint Liquidators filed in the Bermuda litigation they commenced against many of the Funds' service providers and Messrs. Ceretti and Grosso, the founders of the Funds.  To obtain a full picture of the disputed facts in the Bermuda action and the positions taken by the parties there, which previously had been denied to the Trustee, and to analyze how those pleadings might impact the Trustee's claims in and defenses to the Fourth Amended Complaint, the Trustee requested that the Joint Liquidators also produce the pleadings and submissions filed by their named defendants in that litigation.  Discussions to obtain those documents continued during the Compensation Period.

145.    On August 9, 2018, the Trustee made his twelfth supplemental production of documents to the Joint Liquidators subject to the terms of this Court's June 6, 2011 Litigation Protective Order, which necessitated prior notice to, and approval of, the source of those documents—the Securities and Exchange Commission.

146.    On September 22, 2017, the Court so ordered the Second Amended Case Management Report, which extends the closing of fact discovery to July 31, 2018, subject to the parties' respective rights to request further extensions of time.

147.    On November 20, 2017, the Trustee served the Joint Liquidators with the Trustee's Second Request for the Production of Documents, particularly concerning the Joint Liquidators'

Sixteenth Affirmative Defense pursuant to 11 U.S.C. § 546(g), which they added with their Amended Answer and Affirmative Defenses.

148.    The Trustee has been pursuing discovery from Ms. Wanda Mello and Mr. Roy Bailey in Bermuda.  By order of the Bermuda Supreme Court dated November 18, 2011, Ms. Mello and Mr. Bailey, both then with Ernst & Young, were personally appointed as joint provisional liquidators for Kingate Management Limited ("KML"), upon its petition dated September 7, 2011, for a winding up under Bermuda law.  At a subsequent creditors' meeting, entities related to Messrs. Ceretti and Grosso voted in favor of KML's winding up.  The Bermuda court order granted the joint provisional liquidators broad powers over KML and its property.

149.    The Trustee also has been pursuing discovery from others who may have worked with Ms. Mello and Mr. Bailey during their tenure as KML's joint provisional liquidators.  Ms. Mello's and Mr. Bailey's involvement with KML continued until March 2, 2012, when the Bermuda Supreme Court ordered that KML be wound up and appointed Mr. Stephen Lowe, the Official Receiver of Bermuda, as KML's liquidator.

150.    Following months of negotiations, the Trustee agreed to interview Mr. Christopher Wetherhill in Bermuda before conducting his examination under oath.  Mr. Wetherhill served on the board of directors of each of the Kingate Funds, and was the president of, and served on, KML's board.  The Trustee believes Mr. Wetherhill has extensive knowledge concerning the Trustee's claims asserted in the Fourth Amended Complaint.  The interview took place on October 3, 2017.  Its purpose was to confirm the scope of Mr. Wetherhill's knowledge.

151.    On October 12, 2017, the Trustee provided written notice to counsel for the Joint Liquidators and the former non-Fund defendants in the Kingate avoidance and recovery proceeding of the examination of Mr. Christopher Wetherhill, as ordered by the Bermuda Supreme

Court, fixing the agreed-upon date of November 7, 2017 in Bermuda. That date had been adjourned at Mr. Wetherhill's request from August 8, 2017.   Mr. Wetherhill, however, decided to challenge the Trustee's right to proceed with the examination on any date, and requested a further postponement.  The Trustee prepared opposition papers to Mr. Wetherhill's application filed with the Bermuda Supreme Court to set aside its order requiring the examination.  The Kingate Funds' Joint Liquidators' Bermuda counsel also sought to intervene.  The Trustee consented to the Joint Liquidators' participation, but Mr. Wetherhill initially indicated he would oppose that relief.  On November 9, 2017, at a hearing before the Bermuda Supreme Court, the parties, having resolved their differences, submitted a consent order for the examination to occur and permitting the Joint Liquidators to participate and cross examine the witness.  The examination has been scheduled to occur on April 26 and 27, 2018.  Eleven months will have elapsed from the date the Trustee obtained an order for judicial assistance from the U.S. Bankruptcy Court to the date of the scheduled examination.   Such delays are encountered frequently when attempting to obtain discovery abroad, and have been a challenge to the progress of discovery.

152.    During the Compensation Period, the Trustee's legal team has devoted substantial resources to drafting motions to ask this Court to issue letters of request to the UK court to order the production of documents and examination under oath of certain former individual employees of FIM Advisers Ltd. or its related entities, who are located in the United Kingdom, and other foreign-based potential witnesses.  Applicable foreign law requires specificity in identifying the documents requested and the subject areas for examination included in the letters of request.

153.    The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda and BVI, some of whom participate by telephone in the team's bi-weekly meetings.

154.    Following a year of negotiations between Tremont and the Trustee and a status conference before this Court, Tremont produced approximately 85,000 electronic documents to the Trustee in three tranches during September, 2017.   On November 20 and 22, 2017, the Trustee's counsel visited Tremont's off-site storage facility in Nanuet, New York, to review Tremont's hard copy documents, from which the Trustee scanned approximately 13,000 relevant documents.

155.    Also during the Compensation Period, the Trustee's counsel engaged in negotiations to obtain documents in the possession, custody, or control of Mr. Michael Tannenbaum, which he initially claimed were all privileged.   Mr. Tannenbaum personally served on the board of directors of both KML and Tremont.   Tremont was co-manager with KML of Kingate Global Fund, Ltd. for ten years.   He also served as legal adviser to the Kingate Funds and Tremont, as well as FIM Advisers LLP.   The Trustee believes Mr. Tannenbaum has extensive knowledge concerning the Trustee's claims asserted in the Fourth Amended Complaint.

## I.    MATTER 21 – AVOIDANCE ACTION LITIGATION AND MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS

156.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, preparing preservation letters and discovery requests and reviewing produced documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.   Resolution of Good Faith Avoidance Actions

157.   At the beginning of the Compensation Period, there were 242 active good faith avoidance actions.  Thirty-five (35) were closed during the Compensation Period, leaving a total of 207 active good faith avoidance actions by the end of the Compensation Period.  In certain avoidance actions, the Trustee entered into several mediations and considered hardship applications and where appropriate, agreed to dismiss certain defendants from the actions.  During the Compensation Period, one (1) case was dismissed due to findings of no liability, two (2) cases were dismissed due to default judgments obtained, and one (1) case was dismissed due to an approved hardship application. In addition, the Trustee's professionals engaged in settlement negotiations, which led to thirty-one (31) cases entering into documented settlements during the Compensation Period.

### b.   Discovery Disputes in *Picard v. Roman,* Adv. Pro. No. 10-04292 (SMB)

158.   Prior to the Compensation Period, on October 19, 2016, the Trustee served Defendant Robert Roman  ("Roman") with his First Set of Requests for Production of Documents and First Set of Interrogatories, seeking, among other things, information regarding any communications Roman and/or Helen Davis Chaitman ("Chaitman") had with Madoff since the Filing Date.  Roman objected to those Discovery Requests claiming, among other things, that the communications were protected by the attorney-client and work product privileges.

159.   Prior to the Compensation Period, on May 17, 2017, the Trustee deposed Roman, who testified that he and Madoff had exchanged a total of six "letters" but was directed not to answer questions relating to those letters based on the work product privilege. On June 14, 2017, the Trustee filed his Motion to Compel Discovery Pursuant to Fed. R. Bankr. P. 7037(a)(3)(B) seeking to compel the production of the six "letters."  *See* 10-04292 (SMB) (Bankr. S.D.N.Y. June

14, 2017), (ECF Nos. 87-89).  On June 20, 2017, Roman objected, arguing the discovery was irrelevant and privileged work product.  *See id.,* (ECF Nos. 91-92).

160.    At the June 29, 2017 hearing, the Bankruptcy Court directed Roman to produce a privilege log and the underlying documents for *in camera* review, which consisted of four documents, including (1) a October 28, 2015 letter from the Romans to Madoff, attaching a draft of the "Declaration of Bernard L. Madoff" (the "Madoff Declaration") as prepared by Chaitman, (2) a blank transmittal email dated November 11, 2015 from the Romans to Chaitman, forwarding Madoff's edits to the Madoff Declaration, (3) an email dated October 8, 2015 sent by Chaitman to the Romans and other defendants, and (4) a November 11, 2015 letter from the Romans to Madoff attaching the execution version of the Madoff Declaration as well as a prior version of the Madoff Declaration with his edits. The parties submitted supplemental briefing on September 6, 2017.

161.    During the Compensation Period, on October 17, 2017, the Bankruptcy Court ruled that the (1) drafts of the Madoff Declaration prepared by Chaitman, including the versions with Madoff's edits, were protected work product, (2) the October 28, 2015 and November 11, 2015 letters should be produced with redactions as to Chaitman's instructions to Madoff regarding completion of the Madoff Declaration, and (3) the October 8, 2015 email sent by Chaitman should be produced with the portions containing opinion work product redacted.  *Id.,* (ECF No. 107).

### c.    Summary Judgment Motions

162.    Prior to the Compensation Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson (the "South Ferry Defendants"), (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson (the "South Ferry #2 Defendants"), (3) Defendant United Congregations Mesora ("Mesora"), and (4) James Lowrey ("Lowrey"), setting a schedule for summary judgment motion practice.  *See* APN 10-04488 (SMB), (ECF No. 77);

APN 10-04350 (SMB), (ECF No. 86); APN 10-05110 (SMB), (ECF No. 53); APN 10-04387 (SMB), (ECF No. 71).

163.    On July 21, 2017, the South Ferry Defendants, South Ferry #2 Defendants, and Mesora (collectively, the "SFM Defendants") filed a Joint Motion For Summary Judgment.  On that same date, the Trustee filed his own Motion For Summary Judgment.  *See* APN 10-04488 (SMB), (ECF Nos. 86-93); APN 10-04350 (SMB), (ECF Nos. 95-102); APN 10-05110 (SMB), (ECF Nos. 95-102).

164.    On August 11, 2017, Lowrey filed his Motion For Summary Judgment, and the Trustee filed his own Motion For Summary Judgment in that action.  *See* APN 10-04387 (SMB), (ECF Nos. 78-81, 83-84).

165.    On September 5, 2017, the SFM Defendants filed their opposition to the Trustee's Motion For Summary Judgment. The Trustee filed the same in response to the SFM Defendants' Motion For Summary Judgment.  *See* APN 10-04488 (SMB), (ECF Nos. 96-97); APN 10-04350 (SMB), (ECF Nos. 105-106); APN 10-05110 (SMB), (ECF Nos. 70-71).

166.    On September 25, 2017, Lowrey filed his opposition to the Trustee's Motion For Summary Judgment. The Trustee filed the same in response to Lowrey's Motion For Summary Judgment.  *See* APN 10-04387 (SMB), (ECF Nos. 86-87).

167.    On October 5, 2017, the SFM Defendants filed their reply brief in further support of their Motion for Summary Judgment. The Trustee filed the same in further support of his Motion For Summary Judgment against the SFM Defendants.  *See* APN 10-04488 (SMB), (ECF Nos. 100, 103); APN 10-04350 (SMB), (ECF Nos. 109, 112); APN 10-05110 (SMB), (ECF Nos. 74, 77).

168.    On September 25, 2017, Lowrey filed his reply brief in further support of his Motion for Summary Judgment. The Trustee filed the same in further support of his Motion For

Summary Judgment against Lowrey's Motion For Summary Judgment.  *See* APN 10-04387 (SMB), (ECF Nos. 91-92).

169.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared for the consolidated hearing scheduled for December 6, 2017, on the summary judgment motions filed by the Trustee, the SFM Defendants, and Lowrey. Oral argument was held on December 6, 2017, and the matter was taken under advisement.

### d.    District Court Proceedings

170.    In April 2012, the District Court instituted a new briefing protocol for pending motions to withdraw the reference, facilitating consolidated briefing on common issues raised in the motions to withdraw ("Common Briefing").  The District Court has issued rulings on all of the Common Briefing issues as follows:

- *Stern v. Marshall Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.*, 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.*, No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.*, No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.*, 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue.  See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012),

(ECF No. 197); *In re Madoff Sec.*, No. 12-MC-0115 (JSR), 2014 WL
1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1,
  2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12,
  2013), (ECF No. 435); *In re Madoff Sec.*, 513 B.R. 437 (S.D.N.Y. 2013);
  and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June
  6, 2012), (ECF No. 167); *In re Madoff Sec.*, 513 B.R. 222 (S.D.N.Y. 2014).

171.    On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and

Order," ruling that "in the context of this litigation and with respect to both section 548(c) and

section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the

Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high

probability of such fraud."  With respect to the issue of which party bears the burden of pleading

a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed

on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant

did not act in good faith."  Good Faith Standard Opinion and Order (ECF No. 524).

172.    On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order,"

indicating that certain of the Trustee's claims were barred under *Morrison*.  It stated that "section

550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received

abroad by a foreign transferee from a foreign transferor," and directed further proceedings related

thereto be returned to the Bankruptcy Court.  Extraterritoriality Opinion and Order (ECF No. 551),

513 B.R. 222 (S.D.N.Y. 2014).

## J.    __MATTER 29 – RYE/TREMONT__

173.    This matter categorizes time spent by the Trustee and B&H attorneys following the

settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc.,

Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous

related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

174. After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011. The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

175. Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

176. Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

177. On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly,

Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

178.     On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

179.     On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd.*, et al., Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

180.     During the Compensation Period, strategy and investigation for proposed actions and amended pleadings against subsequent transferees has continued. This includes work related to issues concerning extraterritoriality of some of the proposed defendants, analysis consistent with recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself.

## K.     **MATTER 30 – HSBC**

181.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and

Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

182.    On October 20, 2017 this Court approved a settlement between the Trustee and Thema International Fund plc. Picard v. HSBC Bank PLC, et al., Adv. Pro. No. 09-01364 (ECF No. 482).    Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

## L.    MATTER 32 – LUXALPHA UBS/LIF

183.    This matter categorizes spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1.1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

184.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

185.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd*., 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants ("Transferee Defendants"). *See* discussion *supra* Section IV(I)(d). The Trustee and his counsel analyzed the decision and its implications in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action and the LIF Action.

186.    On August 28, 2014, the Trustee filed a motion seeking leave to replead and an order authorizing limited discovery (the "Trustee's Motion") (ECF Nos. 7826, 7827 and 7828). *See* discussion *infra* Section (IV)(X). The Trustee's Motion seeks leave to replead in certain adversary proceedings, including Luxalpha and LIF.

187.    On December 10, 2014, the Bankruptcy Court entered the Extraterritoriality Scheduling Order, ECF No. 8800.  Pursuant to the Extraterritoriality Scheduling Order, on December 31, 2014, the Transferee Defendants filed a Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality in the main SIPA proceeding, Adv. No. 08-01789 (SMB).  The Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, (ECF No. 8990); February 24, 2015, (ECF No. 9350); and March 31, 2015, (ECF No. 9720), set June 30, 2015 as the Trustee's deadline to submit his opposition to the Transferee Defendants' motion to dismiss based on extraterritoriality.

188.    On June 26, 2015, B&H attorneys submitted briefs in opposition to the moving defendants' motions to dismiss based on extraterritoriality.  B&H attorneys also submitted a proffered second amended complaint in the Luxalpha Action and a proffered amended complaint

in the LIF Action.  On September 30, 2015, the moving defendants filed their reply brief in further support of their motion to dismiss based on extraterritoriality.

189.    B&H attorneys also had participated in meet and confers with counsel for certain producing parties, including UBS AG, UBS (Luxembourg) SA and Reliance International Research LLC, to discuss documents that were identified as "Confidential" when produced to the Trustee.  The Trustee's ability to rely on such documents/information in preparing his proposed amended complaints or proffered allegations pertaining to the extraterritoriality issue and the Trustee's Motion was in dispute.  Through the meet and confer process, B&H attorneys and attorneys for several producing parties were able to resolve the confidentiality issues regarding several, but not all, relevant documents.  The Trustee thereafter entered into arbitration with several producing parties, for the purpose of resolving the remaining confidentiality issues, which resulted in the de-designation of the majority of the documents at issue, including all of documents at issue that were produced by UBS AG, UBS (Luxembourg) SA and Reliance International Research LLC.

190.    B&H attorneys prepared and served all defendants in both the Luxalpha Action and the LIF Action with requests for the production of documents under Rule 26.  B&H attorneys prepared proposed case management orders and prepared for a joint Rule 26(f) conference, held on April 4, 2016, with all defendants across both actions.  In preparation for the joint Rule 26(f) conference, B&H attorneys created a presentation to explain the procedures for the Trustee's discovery process and protocols, with an explanation of how the Trustee produces relevant documents through an electronic data room.

191.    On April 4, 2016, the Trustee and the defendants in the LIF Action and the Luxalpha Action, which the parties had agreed should be coordinated for scheduling purposes,

participated in a Rule 26(f) conference to discuss, among other things, a schedule for discovery. At the Rule 26(f) conference and in additional efforts to meet and confer, the parties disputed the appropriate timing of the commencement of discovery under the Federal Rules or otherwise.

192. B&H attorneys asserted that the Federal Rules permit the immediate commencement of discovery in the actions. The defendants objected to the commencement of discovery under the Federal Rules or otherwise.

193. Unable to resolve their dispute concerning the appropriate time for the commencement of discovery, B&H attorneys and counsel for certain parties appeared before the Court on April 27, 2016 for a status conference. At the conference, B&H attorneys asserted that the further delay of discovery would result in the loss of evidence relevant to the events underlying the Trustee's claims in the proceedings and would unduly prejudice his ability to prosecute those claims and, in connection with the Rule 26(f) conference, served requests for the production of documents under Rule 34 of the Federal Rules of Civil Procedure. The defendants asserted that certain pending motions, including the Extraterritoriality Motion, the Trustee's motion for leave to amend his complaints, and the defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and anticipated motions to dismiss on other grounds (the "Anticipated Motions") will affect the identity of the parties and the scope of discovery in the actions, making the commencement of discovery premature at this time. The defendants proposed that, in an effort to make progress while the parties awaited the Court's decision on the Extraterritoriality Motion, (a) the parties move forward with briefing on the Anticipated Motions, or (b) in the alternative, the parties be permitted to pursue document discovery overseas by letters of request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").

194.    Having considered the parties' positions at the April 27, 2016 status conference, Judge Bernstein permitted the parties to commence international document discovery, including through the Hague Convention.  At Judge Bernstein's direction, the parties negotiated stipulated orders that all parties signed.  The Bankruptcy Court signed and entered the orders on May 18, 2016 in both actions ("International Discovery Orders").

195.    On November 22, 2016, Judge Bernstein issued a decision on the Transferee Defendants' motion to dismiss based on extraterritoriality, dismissing the foreign Transferee Defendants in the Luxalpha and LIF actions. *See* discussion *infra* Section (IV)(AA).

196.    During the Compensation Period, the Trustee continued his international discovery efforts in order to investigate relevant facts pertaining to the Luxalpha Action and LIF Action, pursuant to the International Discovery Orders. The Trustee also continued to develop his case against defendants, prepared amended complaints in light of the Bankruptcy Court's decision on extraterritoriality issues, and prepared Hague requests for the defendants across both cases located abroad to initiate international discovery efforts and continued their investigation of the facts of the case.

## M.    **MATTER 34 – CITIBANK**

197.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action").  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

198.     Prior to the Compensation Period, the District Court issued an opinion granting Citibank's motion to dismiss in part, holding that the section 546(g) safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Adv. No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37).

199.     Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Citibank Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section IV(I)(d).

200.     Prior to the Compensation Period, the Trustee filed his Memorandum of Law in Support of Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) ("Omnibus Motion"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF No. 72). *See* discussion *infra* Section (IV)(X). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

201.     Prior to the Compensation Period, on October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.  On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 75 and 80).  Following limited objections by certain defendants, on

November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

202.    Prior to the Compensation Period, on January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the Extraterritoriality Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 8990 and 9350). On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

203.    Prior to the Compensation Period, on April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation"). *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 9720). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were filed under the Third Stipulation with the Court on June 30, 2015. On September 30, 2015, defendants filed replies to the Trustee's papers.

204.    Prior to the Compensation Period, pursuant to the Extraterritoriality Scheduling Order, the hearing date on the extraterritoriality briefing was set by the Court, and took place on December 16, 2015.

205.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue. *Securities Investor Prot. Corp. v. Bernard L.*

*Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 14495) (the

"Extraterritoriality Memorandum Decision").    *See* discussion *infra* Section IV(AA).    B&H

attorneys, on behalf of the Trustee, reviewed and analyzed the Extraterritoriality Memorandum

Decision to determine its potential impact on the Citibank Action.

206.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of

the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed

process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion

seeking the Court's leave to replead and authorization for limited discovery.    *Id.*, (ECF No. 118).

207.    Also during the Compensation Period, B&H attorneys, on behalf of the Trustee,

entered into a stipulation with counsel for Citibank and prepared for further litigation.    *Picard v.

Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF No. 120).

## N.    **MATTER 35 – NATIXIS**

208.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate &

Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd.

(collectively, the "Natixis Defendants") seeking the return of approximately $430 million under

SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law

for preferences, fraudulent transfers and fraudulent conveyances in connection with certain

transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis

Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

209.    By orders issued by the District Court, during the Spring and Summer of 2012, the

District Court included the Natixis Defendants' motion to withdraw the reference in Common

Briefing and oral argument.

210.     Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Natixis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 65).  *See* discussion *supra* Section IV(I)(d).  B&H attorneys, on behalf of the Trustee, also presented to the Court, and the Court so ordered, that the transferee defendants, including the Natixis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue.  The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Natixis Defendants.

211.     Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints (ECF No. 100), the addendum opposing the motion to dismiss specific to the Natixis Defendants (ECF No. 101), and proffered allegations pertaining to the extraterritoriality issue as to the Natixis Defendants. (ECF No. 102).  The Natixis Defendants filed replies to the Trustee's extraterritoriality papers on September 30, 2015.  (ECF Nos. 105-06, and 109).

212.     Prior to the Compensation Period, on November 22, 2016, the Court issued its opinion regarding the extraterritoriality issue.  *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (ECF No. 14495) (the "Extraterritoriality Memorandum Decision").  *See* discussion *infra* Section IV(AA).

213.     During the Compensation Period, the Trustee filed a Notice of Presentment of Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited

Discovery in order to seek further discovery from Natixis FP (ECF No. 142). During the Compensation Period, the Trustee filed a memorandum of law on this issue, counsel for the remaining Natixis Defendant, Natixis FP, filed an opposition (ECF Nos. 146-47) and the Trustee replied (ECF Nos. 150-52).

214. During the Compensation Period, in order to give the Trustee sufficient time to amend his complaint against Natixis FP, B&H attorneys, on behalf of the Trustee, entered into a stipulation with counsel for Natixis FP, (ECF No. 144), and continued to prepare for litigation.

### O.    MATTER 37 – ABN AMRO

215. This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN/RBS (the "ABN/RBS Action"). *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

216. Prior to the Compensation Period, ABN/RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

217. In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 56).

218. Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the ABN/RBS

Action back to the Bankruptcy Court for further proceedings consistent with these decisions. *See* discussion *supra* Section IV(I)(d).

219.    Prior to the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for ABN/RBS extending ABN/RBS's time to respond to the Trustee's amended complaint.

220.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, researched and drafted an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF Nos. 69, 70, 71, 72). *See* discussion *infra* Section (IV)(X). B&H attorneys also reviewed and analyzed documents to support the Trustee's filings concerning extraterritoriality, and drafted and filed proffered allegations and a memorandum related thereto. (ECF Nos. 99, 100, 101).

221.    Prior to the Compensation Period, B&H attorneys reviewed and analyzed the transferee defendants' supplemental memorandum of law and ABN/RBS's supplemental memorandum of law concerning extraterritoriality.  *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB), (ECF. Nos. 105, 106).

222.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue.  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision").  *See* discussion *infra* Section (IV)(CC).

223.    Prior to the Compensation Period, on March 3, 2017, the Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the complaint and granting the Trustee's motion to amend (the "Order").  *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354,

(ECF No. 117).  On March 14, 2017, ABN/RBS filed a motion for an extension of time to file a notice of appeal and motion for leave to appeal with respect to the Order.  *Id.*, (ECF No. 118).

224.    Prior to the Compensation Period, ABN/RBS filed a Notice of Appeal from the Order and a Motion for Leave to Appeal from the Order.  *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 1, 3-5).  B&H attorneys, on behalf of the Trustee, researched and drafted an opposition to ABN/RBS's Motion for Leave to Appeal.  *Id.*, (ECF No. 8).  On October 3, 2017, Judge Caproni denied ABN/RBS' motion for leave to appeal.  *Id.*, (ECF No. 14).

225.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on Trustee's omnibus motion seeking the Court's leave to replead and authorization for limited discovery.  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 130).

226.    During the Compensation Period, on October 6, 2017, defendants filed a Consolidated Memorandum of Law in Opposition to the Trustee's Omnibus Motion.  *Id.*, (ECF Nos. 122, 123). *See* discussion *infra* Section (IV)(X).

227.    Also during the Compensation Period, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation.  *Id.*, (ECF Nos. 141-142).

## P.    **MATTER 39 – FORTIS**

228.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market

XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

229.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Bank (Ireland) Ltd*., Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

230.    By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Fortis Defendants' motion to withdraw the reference in Common Briefing and oral argument.  Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Fortis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing.  *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 62, 64. 71, 82).

231.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis Action back to the Bankruptcy Court for further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(I)(d).

232.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, presented to the Court, and the Court so ordered, that the transferee defendants, including the Fortis Defendants, submit a consolidated memorandum of law in support of dismissal based on the

extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Fortis Defendants. (ECF Nos. 83, 85).

233.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to Fortis's motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to the Fortis Defendants.

234.    Prior to the Compensation Period, B&H attorneys reviewed the transferee defendants' supplemental memorandum of law and the Fortis Defendants' supplemental memorandum of law. (ECF No. 101, 102).

235.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision"). *See* discussion *infra* Section IV(AA).

236.    Prior to the Compensation Period, on March 9, 2017, the Bankruptcy Court so ordered a stipulated order (the "Final Judgment"), which: (i) granted the extraterritoriality motion to dismiss as to count four of the Trustee's Amended Complaint; and (ii) granted the request for entry of a final judgment with respect to the dismissed claim. *Id.*, (ECF No. 119).

237.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on Trustee's omnibus motion seeking the Court's leave to replead and authorization for limited discovery. *Id*., (ECF No. 129).

238.    During the Compensation Period B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF No. 146).

### Q.    **MATTER 40 – MEDICI/KOHN**

239.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against Sonja Kohn, Infovaleur, Inc., and Tecno Development & Research Ltd. (collectively, the "Kohn Defendants") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code and New York state law. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).  On November 26, 2014, prior to the Compensation Period, the Trustee filed a motion to amend the complaint. *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. 2010) (ECF No. 282).  This motion is currently pending.

240.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, entered into three stipulations with counsel for the Kohn Defendants to extend their time to respond to the Trustee's motion to seek leave to amend the complaint in this action.  *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. 2010) (ECF Nos. 322, 327, and 330).

241.    Also during the Compensation Period, B&H attorneys filed and served three notices of adjournment of the pre-trial conference in this action.  *Picard v. Kohn*, Adv. No. 10-05411 (SMB) (Bankr. S.D.N.Y. 2010) (ECF Nos. 323–26, 328–29).

### R.     MATTER 42 – EQUITY TRADING

242.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

243.     The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court. (ECF Nos. 16, 21). The District Court included the motions in its orders for Common Briefing and oral argument. Following the District Court's extraterritoriality decision, the Bankruptcy Court denied the motion to dismiss the Equity Trading Defendants on grounds of extraterritoriality and granted the Trustee leave to amend.

244.     During the Compensation Period, B&H attorneys prepared for continued litigation in this action. The pre-trial conference is scheduled for June 27, 2018. (ECF No. 113).

### S.     MATTER 51 – CRUPI

245.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Jo Ann Crupi, a former BLMIS employee, and Judith Bowen (collectively, the "Crupi Defendants"), seeking the return of over $8.7 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Crupi Defendants. *Picard v. Jo Ann Crupi*, Adv. No. 10-04216 (SMB) (Bankr. S.D.N.Y.).

246.    Jo Ann Crupi was charged in a thirty-three count indictment by the United States Attorney's Office, asserting among other things, that she conspired to defraud BLMIS investment advisory clients, conspired to commit securities fraud and to falsify books and records, committed securities fraud, falsified the records of BLMIS, committed tax evasion and committed bank fraud. *USA v. O'Hara, et al.*, Case No. 10-cr-00228 (LTS). On or about March 24, 2014, following a lengthy jury trial, Ms. Crupi was found guilty on several counts of the indictment. On December 23, 2014, the District Court entered the Judgment in a Criminal Case pursuant to which Ms. Crupi was sentenced to six years imprisonment, plus four years of supervised release. A money judgment in the approximate amount of $33,950,967,159.26 was entered against Ms. Crupi. On April 8, 2015, the District Court entered the Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment, Case No. 10-cr-00228 (LTS), (ECF No. 1318), pursuant to which Ms. Crupi and Ms. Bowen forfeited certain assets and retained certain other assets. On February 9, 2018, the District Court entered a Final Order of Forfeiture against Ms. Crupi.

247.    During the Compensation Period, the Trustee's litigation continued.

## T.    MATTER 53 – MAGNIFY

248.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants"), seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

249.    During the Compensation Period, B&H attorneys collaborated with the Trustee's special counsel in Israel, Soroker Agmon Nordman, to pursue two actions in Israel seeking over $108 million against certain persons and entities who received funds transferred from the Magnify Defendants that originated from BLMIS.  These proceedings were filed in the District Court of Jerusalem, Israel in December 2015.  During the Compensation Period, B&H attorneys worked with Soroker Agmon Nordman to identify and analyze documents in the Trustee's possession that were responsive to the defendant's discovery demands.  B&H attorneys also worked closely with Soroker Agmon Nordman in filing and responding to various motions in the Israeli actions, including the Trustee's motion to file an amended Statement of Claim.  B&H attorneys also worked with Soroker Agmon Nordman in finalizing a negotiated protective order governing the disclosure of personally identifiable information, which was filed and approved by the Israeli court.

250.    During the Compensation Period, in the U.S. action, B&H attorneys negotiated with counsel for the Magnify Defendants on a schedule for briefing on the defendants' motion to dismiss the Trustee's Second Amended Complaint, which was filed on September 29, 2017.  B&H attorneys analyzed strategic considerations relating to the motion to dismiss, including performing legal research and developing legal arguments. B&H attorneys also continued to analyze issues relating to ongoing discovery disputes and to develop strategy with respect to continued discovery, including drafting of written discovery requests. B&H attorneys also continued working with experts to analyze documents produced by the Magnify Defendants as well as documents from BLMIS's files relating to the Ponzi scheme, to develop strategy relating to proof of the Trustee's claims.

251.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys pursuing the avoidance action against the Estate (Succession)

of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants, seeking the return of over $152 million under SIPA, the Bankruptcy Code, and other applicable law for fraudulent transfers and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Apfelbaum Defendants. *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010). During the Compensation Period, B&H attorneys conferred with the Apfelbaum Defendants' counsel regarding the terms of a settlement agreement reached between the parties on June 2, 2017.

## U.    MATTER 58 – PJ ADMINISTRATORS

252.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against American Securities Management, L.P., PJ Associates Group, L.P. and numerous other individuals and entities (collectively, the "PJ Defendants") seeking the return of approximately $91 million, including approximately $10 million in fictitious profits under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the PJ Defendants. *Picard v. American Sec. Mgmt., L.P.*, Adv. No. 10-05415 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

253.    During the Compensation Period, B&H attorneys continued to engage in mediation and settlement negotiations with counsel for the PJ Defendants as part of ongoing efforts to determine a potential framework for resolving this matter. Subsequent to the Compensation Period, an $18.5 million settlement was reached for which a hearing has been scheduled on March 28, 2018 (ECF No. 166).

## V.    **MATTER 59 – STANLEY SHAPIRO**

254.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, Renee Shapiro, S&R Investment Co., David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.  *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

255.    Prior to the Compensation Period, B&H attorneys prepared and filed the second amended complaint against the Shapiro Defendants, the Shapiro Defendants moved the Bankruptcy Court to dismiss the second amended complaint on numerous grounds, the Trustee opposed the motion, and the Bankruptcy Court held oral argument on the motion on March 5, 2015.  On November 25, 2015, the Bankruptcy Court issued a written decision granting in part and denying in part the Shapiro Defendants' motion to dismiss.  Since that time, the Trustee and the Shapiro Defendants have been engaged in fact discovery.

256.    During the Compensation Period, B&H attorneys provided several additional categories of relevant documents to the Shapiro Defendants.  B&H attorneys also sought to narrow several ongoing discovery disputes with the Shapiro Defendants, and on October 5, 2017, the Bankruptcy Court held a Rule 7007 Conference to hear the parties' respective positions on the disputes. During the Compensation Period, B&H attorneys continued to further develop the Trustee's case against the Shapiro Defendants.

W.     **MATTER 60 – AVELLINO**

257.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C.

Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities

(collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the

Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for

preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain

transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Avellino*,

Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

258.     On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint

in this Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the

reference.  *Picard v. Avellino*, Case No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–

3).  The motion to withdraw the reference was fully briefed in the District Court, and oral argument

was held on October 18, 2011.  The reference to this Court was withdrawn on several issues on

February 29, 2012.  (ECF No. 20).  The Trustee and the A&B Defendants participated in Common

Briefing before the District Court on the issues withdrawn.

259.     In July 2014, after all withdrawn issues had been decided, the parties negotiated a

schedule for the briefing of pending or renewed motions to dismiss.  On September 24, 2014, the

A&B Defendants filed a supplemental motion to dismiss, renewing their arguments from their

2011 motion. (ECF Nos. 82-85). The Trustee responded by filing an amended complaint on

November 24, 2014. (ECF No. 86).

260.     On January 28, 2015, the A&B Defendants filed a renewed motion to dismiss the

amended complaint.  (ECF No. 88-90).  On May 21, 2015, the Trustee filed an opposition to the

motion to dismiss.  (ECF No. 99).  On June 22, 2015, the A&B Defendants filed a reply in support

of the motion to dismiss.  (ECF No. 101).  Oral argument was held on July 29, 2015.  At oral

argument, the Court requested supplemental briefing from the parties on certain additional issues.

The supplemental briefs were filed on August 12, 2015.  (ECF No. 102-104).  On July 21, 2016,

the Court issued a memorandum decision and order, granting in part and denying in part the motion

to dismiss.  (ECF Nos. 116, 117).  On August 19, 2016, the Trustee filed a motion to reargue a

specific portion of the decision regarding the Trustee's ability to recover fraudulent transfers made

prior to January 1, 2001.  (ECF No. 125).  The A&B Defendants opposed the Trustee's motion to

reargue and filed their opposition papers on September 19, 2016.  (ECF No. 129).  The Trustee

replied to their opposition on October 3, 2016.  (ECF No. 134).  The Bankruptcy Court denied the

motion to reargue on October 18, 2016.  (ECF No. 136).

261.    The A&B Defendants filed answers and counterclaims to the Amended Complaint

on November 2, 2016.  (ECF Nos. 137-144).  The Trustee filed answers to the counterclaims to

the Amended Complaint on January 27, 2017.  (ECF Nos. 150-152).  After participating in a meet

and confer, the Trustee and the A&B Defendants submitted a Case Management Plan, so ordered

by the Court on March 20, 2017.  (ECF No. 158).  A pre-trial conference is set for April 25, 2018.

262.    Following the death of defendant Michael S. Bienes on April 5, 2017, B&H

attorneys drafted, and the Court so ordered, a stipulation to extend the Trustee's time to move to

substitute the Estate of Michael Bienes and the personal representative in place of deceased

defendant Michael S. Bienes (ECF No. 162), and filed a Petition for Administration in the Circuit

Court for Broward County, Florida.  On October 18, 2017, Dianne K. Bienes was issued Letters

of Administration as the duly appointed Personal Representative of the Estate of Michael S.

Bienes.  On November 16, 2017, the Court so ordered a stipulation between the Trustee and the

Estate of Michael S. Bienes and Dianne K. Bienes, in her capacity as Personal Representative for

the Estate of Michael S. Bienes, to substitute the Estate of Michael S. Bienes and Dianne K. Bienes, in her capacity as Personal Representative for the Estate of Michael S. Bienes, as defendants in place of Michael S. Bienes in this adversary proceeding.  (ECF No. 170).

263.    During the Compensation Period, B&H attorneys performed overall case assessment and engaged in discovery,  which included evaluating the A&B Defendants' responses and objections to the Trustee's requests for production, reviewing documents produced by the A&B Defendants, responding to requests for production that defendant Frank J. Avellino served on the Trustee, and preparing to produce additional documents to the A&B Defendants. Additionally, B&H attorneys negotiated and finalized with opposing counsel the Stipulation and Order for Substitution of the Estate of Michael S. Bienes and Dianne K. Bienes, In Her Capacity as Personal Representative of the Estate of Michael S. Bienes, In Place of Deceased Defendant Michael S. Bienes.

## X.    MATTER 62 – SUBSEQUENT TRANSFERS

264.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing recovery actions against entities that received subsequent transfers of Customer Property from BLMIS.

265.    Prior to the Compensation Period, the Trustee briefed and presented argument at hearings before the District Court on issues raised by subsequent transfer defendants, as well as other defendants, that were subject to Common Briefing and hearings.  As of July 31, 2014, the District Court issued all of its decisions on the issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.  *See* discussion *supra* Section IV(I)(d).

266.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss. On August 22,

2014, the subsequent transfer defendants wrote this Court asking for a conference to discuss further proceedings on the extraterritoriality motion to dismiss.  On August 28, 2014, the Trustee filed a motion to replead and requested limited discovery based on the Common Briefing decisions issued by the District Court.  On October 17, 2014, this Court held a conference with the parties regarding the defendants' request as to further proceedings on the extraterritoriality motion to dismiss and the Trustee's motion to replead and for limited discovery. During the conference, this Court requested the parties to submit a proposed order governing the requests.

267.    On October 23, 2014, the parties filed a proposed scheduling order to govern the further proceedings on the defendants' extraterritoriality motion to dismiss and the Trustee's request for leave to replead and for limited discovery.  Two defendants filed objections to the proposed order.  On November 12, 2014, the Trustee filed a response to the objections to the proposed scheduling order.  On November 19, 2014, this Court held a hearing on the two objections, as well as a request for clarification by a third defendant.  Following the hearing, this Court requested the parties to file a revised scheduling order.  This Court issued revised scheduling orders on December 10, 2014, February 24, 2015, and March 31, 2015.

268.    On December 31, 2014, the defendants filed their supplemental memorandum in support of their extraterritoriality motion to dismiss.  On June 26-30, 2015, the Trustee filed a principal brief in response to the supplemental memorandum in support of the extraterritoriality motion to dismiss, as well as addenda and proffered amended complaints or allegations specific to the moving defendants.  The defendants filed reply memoranda on September 30, 2015. This Court held a hearing on the motion on December 16, 2015.  On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. The decision is currently on appeal. *See* discussion *infra* Section IV(AA). Several of the

subsequent transfer cases were dismissed as a result of the extraterritoriality motion to dismiss decision. The Trustee has filed Notices of Appeal in those cases. As to the subsequent transfer cases not dismissed under the extraterritoriality motion to dismiss decision, the Trustee will pursue those claims under the schedule set forth in this Court's previously entered order that is triggered by the entry of the settle orders on the extraterritoriality motion to dismiss decision.

269.    As part of the extraterritoriality briefing, the Trustee sought the de-designation as confidential of numerous documents produced by the defendants. Some of the defendants voluntarily de-designated the documents while others required arbitration and at least one hearing with this Court.

270.    As part of the original December 10, 2014 scheduling order this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. Following this Court's ruling on the Extraterritoriality Motion to Dismiss, the Trustee and the defendants in non-dismissed cases entered into a schedule to complete the briefing on the Trustee's Motion for Limited Discovery. On October 6, 2017, the defendants filed a Consolidated Memorandum in Opposition to the Trustee's Motion for Limited Discovery followed by separate memoranda filed by some of the defendants. (ECF No. 16724). On November 20, 2017, the Trustee filed his Reply Memorandum in Support of the Motion for Limited Discovery. (ECF No. 16924).

271.    The Trustee's investigation is ongoing, and additional recovery actions against other subsequent transferees likely will be filed in the future.

Y.    **MATTER 71 – SQUARE ONE**

272.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $25.9 million under SIPA, the Bankruptcy Code, and the New York Debtor and

Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One. *Picard v. Square One Fund Ltd*., Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

273.    Prior to the Compensation Period, on August 28, 2014, the Trustee filed an omnibus motion for leave to replead and for an order authorizing limited discovery in certain adversary proceedings, including the adversary proceeding against Square One.  (*Id.*, ECF Nos. 70–71).

274.    Prior to the Compensation Period, on July 11, 2017, the Trustee filed a proposed order setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's omnibus motion.  (*Id.*, ECF No. 121).

275.    During the Compensation Period, on October 9, 2017, defendants filed a Consolidated Memorandum of Law in Opposition to the Trustee's omnibus motion.  (*Id.*, ECF No. 128).

276.    During the Compensation Period, on November 20, 2017, the Trustee filed a Reply Memorandum of Law in Further Support of the Trustee's omnibus motion.  (*Id.*, ECF No. 132).

277.    During the Compensation Period, the Trustee entered into a stipulation with counsel for Square One to extend Square One's time to answer, move, or otherwise respond to the Trustee's complaint and prepared for further litigation while awaiting determination from the Bankruptcy Court on the Trustee's omnibus motion.  (*Id.*, ECF No. 129).

278.    Also during the Compensation Period, the Trustee filed and serviced a notice of adjournment of the pre-trial conference in this action.  (*Id.*, ECF No. 130–31).

## Z.    <u>MATTER 73 – BNP PARIBAS</u>

279.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and

its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited,

BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg

S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that

invested with BLMIS.  *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB)

(Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr.

S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd*., Adv. No. 10-04457 (SMB)

(Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

280.    Prior to the Compensation Period, the BNP Paribas Defendants filed motions to

withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing in

the District Court.  The BNP Paribas Defendants' motion to withdraw the reference included

arguments about extraterritoriality and the good faith standard.  As part of Common Briefing, the

District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard

Opinion and Order, and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for

further proceedings consistent with its opinions.  *See* discussion *supra* Section IV(I)(d).

281.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court

issued its opinion on the extraterritoriality issue, which granted in part and denied in part the BNP

Paribas Defendants' motion to dismiss on extraterritoriality.  *Securities Investor Prot. Corp. v.

Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB), (ECF No. 14495) (the

"Extraterritoriality Memorandum Decision").  *See* discussion *infra* Section IV(AA).

282.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, filed a

Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b), a Notice

of Appeal, a Stipulation Regarding a Final Order Granting in Part and Denying in Part Defendants'

Motion to Dismiss, a Statement of Issues to be Presented and Designation of Items to be Included

in the Record of Appeal, and a Petition for Certification to Court of Appeals by All Parties. *See Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (ECF Nos. 85, 86, 88, 89, 93, 94, and 95).

283.    During the Compensation Period, on September 27, 2017, the Court of Appeals granted the parties' petition for a direct appeal of the Bankruptcy Court's order dismissing certain of the Trustee's claims against the BNP Paribas Defendants. *See Picard v. Banque Lombard Odier & Cie SA*, Case No. 17-2992 (2d Cir.). During the Compensation Period, on August 30, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed an amended complaint to recover claims not dismissed under the Extraterritoriality Memorandum Decision and prepared for discovery and trial on those claims not dismissed by the same. *See Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (ECF No. 100).

284.    During the Compensation Period, on October 5, 2017, the BNP Paribas Defendants filed a motion to dismiss the Amended Complaint. *See id*. (ECF Nos. 106-107).

## AA.    MATTER 77 – EXTRATERRITORIALITY

285.    On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss (the "Memorandum Decision"). *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (ECF No. 14495).

286.    Following entry of the Memorandum Decision, on January 18, 2017 and January 19, 2017, the Court entered So Ordered Stipulations Applying Omnibus Extraterritoriality Briefing and Memorandum Decision to Certain Joinder Defendants (collectively the "Joinder Orders"), applying the Memorandum Decision's international comity holding to certain defendants who were not previously subject to the Memorandum Decision. Id. at (ECF Nos. 14890 and 14915).

287.    Accounting for the Court's Joinder Orders and the Trustee's voluntary dismissal of certain claims or parties, the Memorandum Decision directed submission of Proposed Orders in ninety-one (91) adversary proceedings (the "ET Proceedings"). Examples of these actions include:

*Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.); *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y. filed Dec. 8, 2010); *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Equity Trading Portfolio Ltd.,* Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. 2010); *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.); *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.); *Picard v. Barrenche Inc*., Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.); and *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

288.     On January 20, 2017, the Trustee and certain defendants in the seventeen (17) adversary proceedings where the Memorandum Decision did not dispose of all claims against all parties filed a Joint Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b). *See* e.g., *Picard v. Fairfield Inv. Fund Ltd*., Adv. No. 09-01239 (SMB) (ECF No. 221).

289.     Between January 30, 2017 and March 10, 2017, the Court entered orders in all the ET Proceedings, including in seventy-four (74) adversary proceedings where the Trustee's claims were dismissed in whole or part ("Dismissed ET Actions").  *See e.g.*, Final Orders Granting Motions to Dismiss Complaint in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 110 entered Jan. 30, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 228, entered Mar. 10. 2017).

290.     Between March 3, 2017 and March 16, 2017, the Trustee filed timely notices of appeal in the Dismissed ET Actions. *See e.g.*, Notice of Appeal in *Picard v. Korea Exchange Bank*,

Adv. Pro. No. 11-02572 (ECF No. 117, entered Mar. 6, 2017); *Picard v. Fairfield Inv. Fund Ltd*.,

Adv. Pro. No. 09-01239 (ECF No. 229, entered Mar. 16. 2017).

291.    Between March 20, 2017 and March 30, 2017 the Trustee timely filed Statements

of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the

Dismissed ET Actions. *See e.g*., Statements filed in *Picard v. Korea Exchange Bank*, Adv. Pro.

No. 11-02572 (ECF No. 119, entered Mar. 20, 2017); *Picard v. Fairfield Inv. Fund Ltd*., Adv. Pro.

No. 09-01239 (ECF No. 234, entered Mar. 28. 2017).

292.    On April 28, 2017, the Trustee timely filed 86 identical Petitions with the Second

Circuit for Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in 86 Dismissed Actions

(the "Related Appeals"). *See e.g*., Petitions filed in *Picard v. Lombard Odier & Cie SA*, Case No.

17-1294 (ECF No. 1, entered Apr. 28., 2017).

293.    On June 1, 2017, the Trustee filed a motion to consolidate those 86 Related

Appeals. *See e.g.*, motions filed in *Picard v. Lombard Odier & Cie SA*, Case No. 17-1294 (ECF

No. 11, entered June 1, 2017); *Picard v. Arden Asset Management Inc.*, Case No. 17-1333 (ECF

No. 11, entered June 1, 2017); *Picard v. Dakota Global Investments, Ltd.*, Case No. (ECF No. 12,

entered June 1, 2017).

294.    On June 14, 2017, the Second Circuit granted the Trustee's motion to consolidate

the 86 Related Appeals ("Consolidated Appeal").  *See* Order Granting Motion in *Picard v.

Lombard Odier & Cie SA*, Case No. 17-1294 (ECF No. 146, entered June 14, 2017) (the "Lead

Case").

295.    On July 13, 2017, the Trustee timely filed a Petition with the Second Circuit for

Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in *Picard v. Banco General S.A.*, Case

No. 17-2328, which was subsequently docketed as the 87th Related Appeal in the Consolidated

Appeal. *See* Lead Case (ECF No. 271, entered Aug. 2, 2017).

296.    On October 10, 2017, the Trustee timely filed a Petition with the Second Circuit for

Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in *Picard v. ABN AMRO Bank N.V.*,

Case No. 17-3340, which was subsequently docketed as the 88th Related Appeal in the

Consolidated Appeal. *See* Lead Merits Case (ECF No. 221, entered Nov. 28, 2017).

## V.    COMPENSATION REQUESTED

297.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines")

and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration

of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

298.    The Trustee, and B&H, as counsel to the Trustee, expended 80,558.80 hours in the

rendition of professional and paraprofessional services during the Compensation Period, resulting

in an average hourly discounted rate of $423.68 for fees incurred.[16]  The blended attorney rate is

$496.60.

299.    Prior to filing this Application, in accordance with the Second Amended

Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i)

monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and

expenses incurred during the Compensation Period, and (ii) a draft of this Application.  In

connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees

---

[16]In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

by writing off $2,015,879.60 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $306,170.69.

300.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,792,391.56.  The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

301.    Pursuant to the Second Amended Compensation Order, on September 20, 2017, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2017 through August 31, 2017 (the "August Fee Statement").  The August Fee Statement reflected fees of $10,458,996.20 and expenses of $63,029.91.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the August Fee Statement reflected fees of $9,413,096.58 and expenses of $62,691.19.  After subtracting the Court-ordered 10% holdback, SIPC advanced $8,471,786.92 for services rendered and $62,691.19 for expenses incurred by the Trustee and B&H.

302.    Pursuant to the Second Amended Compensation Order, on October 20, 2017, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from September 1, 2017 through September 30, 2017 (the "September Fee Statement"). The September Fee Statement reflected fees of $9,739,998.30 and expenses of $63,820.61.  SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H.  After such adjustments, the September Fee Statement reflected fees of $8,765,998.47 and expenses of

$62,895.61. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,889,398.62 for services rendered and $62,895.61 for expenses incurred by the Trustee and B&H.

303.    Pursuant to the Second Amended Compensation Order, on November 20, 2017, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2017 through October 31, 2017 (the "October Fee Statement"). The October Fee Statement reflected fees of $9,175,961.50 and expenses of $87,903.41. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the October Fee Statement reflected fees of $8,258,365.35 and expenses of $81,892.35. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,432,528.82 for services rendered and $81,892.35 for expenses incurred by the Trustee and B&H.

304.    Pursuant to the Second Amended Compensation Order, on December 20, 2017, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2017 through November 30, 2017 (the "November Fee Statement"). The November Fee Statement reflected fees of $8,548,959.60 and expenses of $83,561.52. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $7,694,063.64 and expenses of $83,041.02. After subtracting the Court-ordered 10% holdback, SIPC advanced $6,924,657.28 for services rendered and $83,041.02 for expenses incurred by the Trustee and B&H.

305.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in

which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

306.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

307.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

308.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

309.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

310.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate application and after a hearing, "[t]he court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees. That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by SIPC,
> the court shall award the amounts recommended by SIPC. In determining the
> amount of allowances in all other cases, the court shall give due consideration to
> the nature, extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

311.    To the extent the general estate is insufficient to pay such allowances as an expense

of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay

the compensation of the Trustee and B&H. *See* SIPA § 78fff-3(b)(2).

312.    While the Trustee has recovered, or entered into agreements to recover, more than

$12.846 billion as of January 31, 2018, a significant portion of these funds must be held in reserve

pending final resolution of several appeals and disputes.

313.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses. The Trustee has been advised by SIPC that it concurs in this belief.

Any fees and expenses allowed by this Court will be paid from advances by SIPC without any

reasonable expectation by SIPC of recoupment thereof.

314.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the

Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts

recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990). SIPC

will file its recommendation to the Court with respect to this Application prior to the hearing

scheduled to be held on April 25, 2018.

315.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    <u>CONCLUSION</u>

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $34,131,524.04 (of which $30,718,371.64 is to be paid currently and $3,413,152.40 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $290,520.17 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        March 15, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  _s/ David J. Sheehan_
        Baker & Hostetler LLP
        45 Rockefeller Plaza
        New York, New York 10111
        Telephone: (212) 589-4200
        Facsimile: (212) 589-4201
        Irving H. Picard
        Email: ipicard@bakerlaw.com
        David J. Sheehan
        Email: dsheehan@bakerlaw.com
        Seanna R. Brown
        Email: sbrown@bakerlaw.com
        Heather R. Wlodek
        Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*