# EXHIBIT 1

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-1789-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6   SECURITIES INVESTOR

7   PROTECTION CORPORATION,

8           Debtor.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 12-01576-smb

11   PICARD

12   v.

13   BNP PARIBAS S.A. et al.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15                       United States Bankruptcy Court

16                       One Bowling Green

17                       New York, New York

18                       March 9, 2018

19                       10:02 a.m.

20

21

22   B E F O R E:

23   HON. STUART M. BERNSTEIN

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  TL

1    **HEARING RE BNP Paribas S.A.'s Motion to Dismiss (ECF 106)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **Transcribed by:  Theresa Pullan**

Page 3

```
1   A P P E A R A N C E S :

2

3   BAKER HOSTETLER

4        Attorneys for the Trustee

5        45 Rockefeller Plaza

6        New York, NY  10111

7   BY:   JOANNA F. WASICK, ESQ.

8

9   CLEARY GOTTLIEB

10        Attorneys for BNP Defendants

11        One Liberty Plaza

12        New York, NY  10006

13   BY:   BREON S. PEACE, ESQ.

14        ARI D. MACKINNON, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

1                     P R O C E E D I N G S

2           THE CLERK:  Please be seated.

3           THE COURT:  Picard v. BNP.

4           MR. PEACE:  Good morning, Your Honor, Breon Peace and

5    Ari MacKinnon for the BNP defendants.

6           MR. MACKINNON:  Good morning, Your Honor.

7           MS. WASICK:  Good morning, Your Honor, Joanna Wasick

8    of Baker & Hostettler for the Trustee with my colleague, Marco

9    Molina.

10          THE COURT:  Thank you.  Go ahead.

11          MR. PEACE:  Thanks, Your Honor.  So as you know we're

12   here on the defendant's dismissal motion.  We have put in

13   briefing and argue that all of the claims asserted by the

14   Trustee should be dismissed.

15          There are several grounds for dismissal which I'll

16   take in turn and tell you sort of the road map that we sort of

17   plan to go through the various issues, Your Honor.

18          So first, Your Honor, as we raise, the amended

19   complaint was improperly filed.  The Trustee had not gotten --

20          THE COURT:  I can treat this as a motion --

21          MR. PEACE:  For leave to amend.

22          THE COURT:  Futility argument.

23          MR. PEACE:  Exactly, Your Honor.  And the argument

24   that we have is that that will be futile so you should not

25   grant leave.  And it's futile for several reasons.

Page 5

1          One is the transfers that the Trustee seeks to

2     recover outside of the two year look back period are barred

3     under 546(e) safe harbor.

4          THE COURT:  I don't understand that argument.

5          MR. PEACE:  Your Honor, should I lay it out?  Shall I

6     lay these issues --

7          THE COURT:  I read it and I think I know what you're

8     citing but I don't understand or maybe I should say I don't

9     agree with it.

10         MR. PEACE:  Okay.

11         THE COURT:  The subsequent transferees, the 546(e)

12    defense is a defense that an initial transferee can assert.

13         MR. PEACE:  Correct.

14         THE COURT:  The debtor doesn't have to separately

15    establish its right to sue under, I'm sorry, the Trustee,

16    doesn't have to separately establish the right to sue under

17    546(e) to recover from the subsequent transfers.  It's not even

18    mentioned in -- 550 isn't even mentioned in 546(e).

19         MR. PEACE:  Your Honor, to address that point, Judge

20    Rakoff from the District Court dealt with this issue and

21    specifically said in the Comad (phonetic) decision that

22    subsequent transferees can raise the 546(e) defense in the

23    context of a case where the Trustee has settled with the

24    initial transferees.

25         THE COURT:  You can argue that the initial transfer

Page 6

```
 1    is --

 2              MR. PEACE:  Correct.

 3              THE COURT:  But that's a different argument.  And the

 4    Trustee has incorporated by reference the complaints in Ascot

 5    and --

 6              MR. PEACE:  Well, it's really the Tremont fund, Your

 7    Honor.

 8              THE COURT:  And the Tremont funds.  And you haven't

 9    explained to me in your motion why those complaints are legally

10    insufficient.

11              MR. PEACE:  Right.  So, Your Honor, on that point

12    they did incorporate by reference the allegations of the

13    Tremont complaint.  If Your Honor looks at that complaint, Your

14    Honor will conclude that the allegations in that complaint do

15    not make out actual knowledge which is the standard that they

16    have to meet to overcome the 546(e) safe harbor.

17              THE COURT:  But you didn't really explain to me why

18    in your motion and I'm not going to go through those pleadings

19    and try and guess at trial if we get there.  You can certainly

20    show that the Trustee cannot avoid the initial transfer for

21    whatever reason, but you haven't really articulated it in your

22    motion and I'm just not going to consider it.

23              MR. PEACE:  Your Honor, on the face of the complaint,

24    which as Your Honor will analyze as part of the total --

25              THE COURT:  I'm not going to analyze the Ascot or the
```

Page 7

1    Tremont complaint.

2         MR. PEACE:  The Tremont complaint is sort of the run

3    of the mill red flag theory complaint which does not at all

4    assert that the Tremont defendants possess actual knowledge of

5    the fraud.

6         THE COURT:  Would you tell me in your motion or show

7    me in your motion where you analyzed the Tremont complaint or

8    the Ascot complaint and explain why the claims barred by 546(e)

9    were, certainly that wouldn't apply to the intentional

10   fraudulent transfer claim, but why the Tremont complaint or the

11   Ascot complaint are otherwise legally insufficient?

12        MR. PEACE:  Your Honor, we say in our reply brief on

13   page 9 that the Trustee had incorporated by reference in the

14   amended complaint the allegations against the Tremont funds as

15   initial transferee.  And we say that they plain fall short of

16   alleging the actual knowledge necessary for the safe harbor to

17   apply.

18        THE COURT:  You know, if you made a motion to -- if

19   you represented an initial transferee and you made a motion to

20   dismiss the complaint simply arguing that the complaint clearly

21   falls short without explaining to me why it clearly falls

22   short, we wouldn't be spending any time having a conversation.

23   So why don't we move off of that because first of all, you

24   raised it in your reply brief so that's grounds alone to not

25   consider it.  But I'm just not going to go through the Tremont

Page 8

1    complaint without you telling me why it's insufficient.

2            MR. PEACE:  Your Honor, there's nothing in the

3    Tremont complaint that alleges actual knowledge.  That was,

4    frankly, we thought pretty plain by the allegations.  And the

5    only thing that the Trustee includes, the Trustee doesn't say

6    they allege actual knowledge with respect to Tremont.  The only

7    thing the Trustee includes is a statement in the amended

8    complaint that says the Tremont funds knew of the fraud.

9            THE COURT:  Why don't we move on to the next point?

10           MR. PEACE:  Okay.  Your Honor, the second point that

11   we want to raise that demonstrates that the complaint, the

12   amended complaint, will be futile is that the Trustee hasn't

13   adequately pled that any of the BNP defendants were willfully

14   blind to the Madoff fraud.  So that's point two that we'll

15   cover.

16           The third and fourth points, Your Honor, are one,

17   they haven't established personal jurisdiction over the BNP

18   defendants and certain of the claims that the assets in this

19   purported amended complaint are time barred.

20           THE COURT:  Can I ask you a question?  I don't know

21   the answer to this one.

22           You've asserted that there's lack of jurisdiction and

23   you've also asserted that the complaint fails to state a claim

24   basically, which to me is a merit based determination.  If I

25   agree with you, can I grant the motion to dismiss without

Page 9

1    deciding whether or not I have personal jurisdiction over the

2    defendants?

3              MR. PEACE:  I think you would decide personal

4    jurisdiction, Your Honor.

5              THE COURT:  I have to decide.

6              MR. PEACE:  I think you would decide personal

7    jurisdiction first and then --

8              THE COURT:  Unless I suppose I deny the motion for

9    leave to amend on the grounds that it's futile, in which case I

10   don't have to get into personal jurisdiction.  All right.  I'll

11   hear from the Trustee on that one.

12             MR. PEACE:  So, Your Honor, just in terms of a

13   roadmap, I was going to cover [indiscernible] which we already

14   did.  And I would cover the willful blindness.

15             THE COURT:  They ultimately turn out to be a good

16   defense, although it's not a defense to the intentional

17   [indiscernible] anyway so, it doesn't matter.

18             MR. PEACE:  I will cover the willful blindness

19   issues.

20             THE COURT:  Okay.

21             MR. PEACE:  And then my colleague, Mr. MacKinnon,

22   will cover the personal jurisdiction and the time bar issue.

23             Your Honor, with respect to the willful blindness

24   issue, the Trustee does not allege sufficient facts with

25   particularity to make out willful blindness with respect to

Page 10

1   each and every BNPP defendant.

2           THE COURT:  That I understand, but let's go to Mr. --

3           MR. PEACE:  Yes.

4           THE COURT:  If that's the correct --

5           MR. PEACE:  Yes.

6           THE COURT:  And after he raises what the Trustee

7   would call red flags, BNP or one of the -- BNP terminates the

8   Oreades fund.  And the Trustee argues that at least for the

9   purposes of a motion to dismiss that supports an inference that

10  BNP knew that there was, and I'll say something wrong for the

11  time being, with Madoff and BLMIS.

12          MR. PEACE:  So, Your Honor, first I'll step back and

13  say the Trevane [phonetic] correspondence when it's read in

14  full demonstrates that Trevane did not question whether or not

15  Madoff was actually trading securities which is the standard

16  that Your Honor has articulated in many opinions about willful

17  blindness.  They have to show subjective belief that there's a

18  high probability Madoff was not actually trading securities.

19          If you look at the correspondence -- and it's

20  interesting because the Trustee laid out this correspondence in

21  a prior complaint, the Oreades complaint and then this

22  purported amended complaint, removes we think a relative

23  sentence that will reflect what Mr. Trevane's subjective

24  beliefs were at the time.

25          So the excerpt I'm thinking of, Your Honor, and if

Page 11

1   you need a copy of the Oreades complaint, I can --

2         THE COURT:  I looked at it but I don't have it.  But

3   I'm familiar, and I know he seemed to be from the regulatory

4   issues --

5         MR. PEACE:  Right.

6         THE COURT:  -- BLMIS and also that it didn't seem

7   that they were concerned about where the U.S. Treasury bills

8   were and they were also concerned that the sales were not being

9   attributed to the proper customers.

10        MR. PEACE:  Correct, Your Honor.  So you identified.

11  The concerns he relayed were related to, okay, they're

12  securities.  How do I make sure they are where they say they

13  are, where are they being held, and the like?  It's not a

14  question of is Madoff not actually trading securities, is

15  Madoff a fraud.  Well, actually read the excerpt, Your Honor,

16  because I think it's instructive.  It says, and this is from

17  paragraph 56 of the Oreades complaint.  The excerpt is, and

18  this is Trevane "it will be appropriate to put this type of

19  order transmission in place between us and B. Madoff because in

20  current practice we have no opportunity to consider the true

21  validity of the orders."

22        So he's saying they're getting the orders, you know,

23  seven days late or so, they need a better process in order to

24  verify what's in the respective accounts.  This is the sentence

25  that the Trustee left out of the amended complaint.  I don't

1    know why.  It was in the Oreades complaint, but he left it out.

2    And I think it's important.  "As broker/dealer, B. Madoff was

3    audited and it seems that everything is correctly posted.  But

4    since there is no B. Madoff management company, it is surely

5    very difficult for the auditors to verify that all the deals

6    carried out on behalf of the clients of B. Madoff are correctly

7    indexed to the same clients."

8         So, Your Honor, he is not raising concerns.  This

9    doesn't reflect a subjective belief of high probability that

10   Madoff is not trading.  He assumes and credits that Madoff is

11   trading, and then is trying to figure out a way to verify that.

12        And it goes on, Your Honor, which is interesting

13   because whatever inquiries he did have, he followed up and this

14   also shows up in the Oreades complaint.  He seeks from BLMIS

15   verification "independent verification" as to Oreades's assets

16   and it's two underlying BLMIS accounts.  That was then provided

17   to BMP Paribas Securities Service by DiPascali, BLMIS and

18   separately the auditor, Friehling and Horowitz.

19        THE COURT:  Is this in the Oreades complaint?

20        MR. PEACE:  It is in the Oreades's complaint Your

21   Honor, and I can patch you --

22        THE COURT:  I recall.  I know you cited to both the

23   Proffer and the Oreades complaint.

24        MR. PEACE:  Yes, this is paragraphs 57 through 59 of

25   the Oreades complaint, Your Honor.  Then he received

Page 13

1   confirmation that he asked for, verification that these

2   securities are in the BNP Paribas Securities Services Accounts.

3   So the issue for Trevane was not at all whether or not there

4   was actual securities trading going on, the issue was one of

5   allocation of verification that they are where they say they

6   are.  That in and of itself does not make out willful blindness

7   in this circumstance.

8         Now, Your Honor did talk about and it's true that

9   they went on to shut down the Oreades accounts and liquidate.

10   But you identified other reasons, other factors that were

11   clearly being considered as to whether the Oreades fund was

12   being operating in compliance with Luxembourg law, not that

13   Madoff was a fraud and so we had to liquidate this investment.

14   And I think that's the critical piece, Your Honor.  Because

15   that, the Trevane emails is really the lynchpin of their

16   complaint.  Because they are the most specific allegations of

17   any individual BNP Paribas Securities Services employee.  And

18   that does not meet the standard.

19         Your Honor, and interestingly and I think the Trustee

20   has sort of dismissed this out of hand, but we thought it was

21   interesting that and I think it's a tacit concession that there

22   was the Oreades complaint, they sued BNP Paribas Securities

23   Services relating to this transaction, then they decided to

24   dismiss the BNP Paribas Securities Services from that action

25   and all other BNP defendants.

1       Now they obviously have the option to do that.  The

2   Trustee has sued hundreds of parties and I think, we think that

3   that sort of indicates how they view this correspondence with

4   Trevane that it doesn't meet the willful blindness test, and we

5   think that was significant, Your Honor.  And I think it's

6   distinguishable from emails and correspondence that Your Honor

7   has assessed in connection with the Legacy case, for example,

8   where you know the individuals are talking about real concerns

9   they have about whether or not Madoff is actually doing the

10  trading that he said he was doing.  That is not at all what we

11  have with respect to Trevane.

12      So if you take Trevane out of this, Your Honor, which

13  I think we should, the rest of the complaint is really at

14  bottom a red flag inquiry notice compliant.  I think the

15  Trustee was trying to artfully draft the complaint that does a

16  few things.  One, relies heavily on group pleading, conflating

17  BNPP defendants as if they're one when there are four

18  defendants and they have to establish willful blindness as to

19  each of the defendants which they don't do.

20      There are no allegations, specific particularized

21  allegations, with respect to BNPP bank and BNPP Cayman, there

22  are no specific allegations regarding BNPP Paribas Arbitrage.

23  The only specific allegations they have regarding BNP Paribas

24  Securities Services are the ones we just discussed.

25      And then with respect to BNP Paribas S.A., that's

Page 15

1   sort of where they just use that name more broadly and

2   attribute anything that any third party or nonparty thought

3   about Madoff, they try to attribute that to BNP Paribas S.A.

4           THE COURT:  I thought the amended complaint alleged

5   that there were these various committees and representatives

6   from each of these entities that participated in one or more of

7   these committees.

8           MR. PEACE:  They do allege that there were committees

9   that evaluated the Madoff transactions.  I don't think they

10  alleged that the were representatives from each attendants on

11  the committees.  They say senior executives, Your Honor.  But

12  this is from BNP Paribas S.A.

13          THE COURT:  Okay.

14          MR. PEACE:  And just to go through, I just want to

15  spend a little time, Your Honor, on the allegations that remain

16  which again I think we would argue make out [indiscernible]

17  barely and not willful blindness or subjective beliefs that BNP

18  Paribas defendants believe there's a high probability that no

19  securities were being traded, that it was a Madoff fraud.

20          What they do is really focus on a couple of buckets

21  of people.  You talk about third parties, not in privity with

22  BNP Paribas.

23          THE COURT:  But I think in Société Générale they say

24  that they told somebody at BNP --

25          MR. PEACE:  They said they told -- a game of

1    telephone, Your Honor.  They told someone at ZCM who told some

2    unknown people at BNP Paribas that SocGen had concerns about

3    Madoff.  They don't identify what the concerns are, they don't

4    identify who was told, what was said to them, when it happened.

5    Your Honor, that's not particularized enough to make out high

6    probability that they believe there was a fraud, right, that

7    there was no securities being traded.  It makes out that they

8    didn't want to invest with Madoff and they decided not to.  But

9    their judgment shouldn't be held against BNP Paribas.  Clearly

10   as the Trustee alleges, the BNPP did diligence on the ZCM

11   transaction and decided to go forward with its investments.

12           They mention another third party, Dresner (phonetic)

13   which decided not to invest with Madoff and had possession of I

14   guess the Renaissance report, nowhere do they allege that any

15   BNP Paribas defendant possess the Renaissance report.

16           THE COURT:  Or they said they didn't.

17           MR. PEACE:  Exactly, Your Honor.  And so the fact

18   that Dresner decided not to invest with Madoff is wholly

19   irrelevant to what the BNP Paribas defendants did.

20           And then they talk about a couple of other

21   individuals that are somehow linked to BNPP.  They talk about

22   an employee in BNP Paribas private wealth unit who said that

23   he, I think it was, he hated Madoff and always had a problem

24   with him and so he didn't invest with Madoff.

25           A couple of things about that.  I'm not sure what

 1   hated Madoff means and whether it doesn't reflect that he's

 2   saying Madoff is not trading securities and he's engaged in

 3   fraud.  They also don't allege that this gentleman's views were

 4   conveyed to anyone else within the BNP Paribas defendants.  So

 5   that's a big sort of nothing burger, Your Honor, with respect

 6   to Gianferrara.

 7           The last is indication about someone named Mr.

 8   Fauchier who is a representative of Fauchier Partners.  They do

 9   claim upon information and belief, now they claim that Fauchier

10   Partners was in a joint venture with BNP Paribas entity.  They

11   claim that in June 2008, and that date is important, Your

12   Honor, that he said that he didn't think Madoff was legitimate.

13   And then they say that he relayed upon information and belief

14   he shared his knowledge that Madoff was illegitimate with other

15   senior officials at BNP Paribas.  First of all thinking they

16   don't say what he shared, they don't say when he shared it.

17           THE COURT:  But I mean if they alleged that in the

18   first instance that he didn't believe that Madoff would

19   actually trade in securities or he was a fraud --

20           MR. PEACE:  That's not what they -- that's not the

21   allegation.

22           THE COURT:  Whatever it is they say.  And then they

23   say, and he shared his concerns with somebody at BNP.  Isn't it

24   reasonable to infer that those were the concerns that he shared

25   without spelling it out again in the amended complaint?

Page 18

1          MR. PEACE:  Your Honor, I think this is an example

2     again of not a particularized allegation here.  It's not clear

3     what he shared; it's not clear to whom he shared it with and

4     when he shared it.  And the reason I focused on June 2008 is

5     because it's unclear he shared this after the Ponzi scheme was

6     revealed in December of 2008.  It's very unclear from this

7     record what these allegations --

8          THE COURT:  What part of the complaint, amended

9     complaint?

10         MR. PEACE:  This is 136, Your Honor.  I think it's

11    133 and 136.

12         The other point to raise on this, Your Honor, they

13    claim as you see that Fauchier told these concerns to Access

14    which is a non-BNPP entity, that he never invested in a fraud,

15    that his diligence team required a fund to be legitimate and

16    that he rejected Madoff.  But it's unclear from these

17    allegations what was, if anything, was relayed to BNP Paribas.

18    There's not specificity to these allegations, Your Honor.  And

19    interestingly with respect to this joint venture he was

20    supposedly in with BNPP, it's not alleged that that has any

21    relation to the Madoff investments.  So whatever knowledge or

22    beliefs he had, there's no basis to refute that to BNP Paribas.

23    There's nothing that says this is all in the context of working

24    with BNP Paribas on Madoff investments.  So that's the other

25    thing on Mr. Fauchier.

1          The last point, Your Honor, on this, just to make --

2     the rest are the red flags Your Honor is well familiar with.

3     And I think the critical point here is that again they make

4     conclusory allegations that the BNPP defendants knew all these

5     parade of horribles, what in effect is Your Honor is equally

6     notice pleading.  All they say is the BNPP defendants got

7     account statements.  Right.  And from that they knew all these

8     things and which we know is not enough to plead with

9     particularity that they had subjective belief that Madoff was

10    not trading securities.  Your Honor has ruled on that numerous

11    times.  They've gone no further in this case with respect to

12    those red flag allegations.

13         And the last thing I'll say on this particular point,

14    Your Honor, and we talk about this in our papers.  And I know,

15    Your Honor, when you analyze these complaints, you not only

16    should look at the allegations but as you've said in many of

17    your opinions, you consider plausibility, you take into account

18    using your experience and common sense as to whether the

19    overall allegations are plausible.  And here, Your Honor, we

20    posit that they're not with respect to the economics.

21         So the Trustee wants Your Honor to believe that BNP

22    Paribas defendants had suspicions that Madoff was engaged in a

23    fraud and so they shut down Oreades.  And they want you to

24    believe that the same year they decided to expand their

25    investments in Madoff and ultimately enter into transactions

Page 20

```
 1    totaling billions of dollars by providing clients credit or

 2    leverage.

 3             The interesting thing about that, it's not, Your

 4    Honor, we're not making the broad argument that a party will

 5    never do something that's not necessarily in their interest.

 6    But here, it's economically irrational.  Here's why.  If they

 7    suspect that Madoff, it's a high probability he's a fraud, he's

 8    not trading securities, what they do then from a business

 9    perspective is enter into transactions in which they're

10    expending capital, they're giving other parties money basically

11    so they can invest in Madoff.  Right.  So their outlaid capital

12    --

13             THE COURT:  Was BNP making loans to the feeder funds?

14             MR. PEACE:  BNP was making loans to its clients that

15    wanted to have exposure to the feeder funds and to Madoff.

16             THE COURT:  So who's being -- maybe I should ask the

17    Trustee this because I didn't quite get it when it says, you

18    know, they're extending leverage.  To me it means they're doing

19    business.  I don't know what that means.

20             MR. PEACE:  Well, I'll explain that, Your Honor.

21    Because it's interesting because --

22             THE COURT:  I'm interested in who the obligors are in

23    these transactions and whether the Trustee is alleging that BNP

24    is incurring obligations from entities whose sole business is

25    to invest in BLMIS.
```

Page 21

1          MR. PEACE:  I think the Trustee can --

2          THE COURT:  I'll ask the Trustee.

3          MR. PEACE:  But what I want to say on this, Your

4    Honor, which I think is very important is the structure of the

5    business.  So they're arguing that BNPP is basically giving

6    client money to invest in Madoff with suspicions that there's a

7    high probability that he's engaged in fraud.  And in exchange

8    they get fees or interest on the loan.  All right.  So big cash

9    outlay, small return in terms of money.

10          The other thing, Your Honor, that's really

11   significant here is what's BNPP's protection on this business?

12   Collateral.  What does the collateral consist of?  Feeder fund

13   shares, Madoff related assets.

14          THE COURT:  You know, that's why I asked about the

15   obligor.  The obligor can be JPMorgan and they don't care about

16   the collateral.

17          MR. PEACE:  No, these are as they plead, these are

18   transactions in which the collateral is based on Madoff.  It's

19   feeder Fauchier, its investment in Madoff.  So if this Ponzi

20   scheme, Your Honor, is revealed, they lose everything which is

21   in an article that was cited by the Trustee and incorporated by

22   reference.  It mentions the losses that BNPP suffered as a

23   result of this because the business was structured in such a

24   way where they had no upside, a lot of downside risk.  It's

25   just irrational if you believe that BNPP believed there's a

Page 22

1   high probability of fraud so we engage in this type of business

2   with respect to Madoff as opposed to other parties that

3   invested in Madoff that were getting the 18, 19 percent upside

4   on their investments.  Totally different business, Your Honor,

5   and I think that undermines the narrative that the Trustee has

6   set forth.  So I wanted to mention that, Your Honor.

7           If you want, I could cover due diligence.  I think

8   our argument is largely that they don't establish that there

9   were suspicions of high probability that they weren't trading

10  securities.  They don't get there.  So they can't show that we

11  turned a blind eye to a fraud.

12          But, just a minute on due diligence.  What's

13  interesting about this is while they say we didn't conduct due

14  diligence, and they say we deviated --

15          THE COURT:  Yeah, I think they said deviated from

16  your normal standards.

17          MR. PEACE:  We deviated.  And it's interesting, Your

18  Honor, because if you read the complaint and you read the

19  Oreades complaint and extraterritorial proffer that they put in

20  regarding activity, you will see a laundry list of diligence

21  activities that BNP Paribas engaged in vis-à-vis Madoff.  So

22  this is not turning a blind eye to fraud.  This is BNPP doing

23  business, I think the most plausible inference, doing business,

24  no suspicions of fraud, did some routine customary due

25  diligence periodically, did not identify red flags, and this

Page 23

1    Ponzi scheme revealed others including BNP Paribas are hurt.

2           And the last point, Your Honor, and I'll sit down, is

3    just on the value argument briefly.  We believe that the

4    complaint sets out enough to find value here.  Under 505(b) for

5    subsequent transferees as Your Honor laid out in Legacy, the

6    only value required is mere consideration.  It's not the

7    reasonably equivalent value that's required for an initial

8    transferee.  In this case, clear, they redeemed shares, and in

9    exchange got the transfers.

10          THE COURT:  How did they get the shares?

11          MR. PEACE:  These were collateral.  Sometimes they

12   invested directly as a result of a hedge on the derivative

13   transaction.  Other times it was, they got the shares as

14   collateral.  So the shares, the payments would come to BNP

15   Paribas by entities that pay down the loans.

16          And, Your Honor, that should cover the entire

17   transfers.

18          THE COURT:  Thank you.

19          MR. MACKINNON:  Good morning, Your Honor.  My name is

20   Ari MacKinnon and I'm going to talk about as Breon mentioned,

21   the issues of jurisdiction and statute of limitations.

22          So just briefly on personal jurisdiction.  As you

23   know, there are two types of jurisdictions -- general and

24   specific.  I'm not going to spend much time on general personal

25   jurisdiction here, just start by saying none of the BNPP

Page 24

1   defendants is incorporated or has its principle place of

2   business here.  So Daimler should control.

3          I think the party's principle dispute relates to the

4   question of specific personal jurisdiction.  Our view is that

5   the cases in To, the recent decisions in To, Hill and

6   [indiscernible] should provide guidance on how to do the

7   personal jurisdiction analysis here for the BNPP defendants,

8   all of whom are incorporated abroad and have their principle

9   places of business abroad.

10          In To and Hill, and [indiscernible] you had

11  allegations that the defendants had entered into custodian and

12  administrative agreements here in New York with Blumis

13  (phonetic), transferred funds here to Blumis in New York.

14          THE COURT:  Can I stop you?  What was the recent

15  Second Circuit case?  There's a recent Second Circuit case and

16  it talks about a sliding scale.  And BNP Paribas has been here

17  since the 1800s, has thousands of U.S. employees, has an office

18  in New York, maybe it has an office elsewhere, I don't

19  remember.  How much more would they have to show with respect

20  to just BNP Paribas, a parent I guess, to show special

21  jurisdiction?

22          MR. MACKINNON:  I think to have specific jurisdiction

23  here they would have to really focus on the conduct that's at

24  issue and show that that conduct happened here in New York as

25  opposed to abroad.  Focus on -- and that's one of the reasons

1   this case is very different from BLI.  Where if you look at the

2   Judge's opinion, Judge Lifland's opinion in BLI, there is

3   tracking and tracing of each and every transfer from a New York

4   located bank account belonging to Fairfield to a New York

5   located bank account belonging to BLI.  There are also

6   allegations about Fairfield's choice of law provisions, choice

7   of forum provisions here in New York which do not, we don't

8   have here for Tremont.  That sort of tracking and tracing would

9   get them closer, but that's just BNP Paribas.

10      When you've got Cayman, for whom there are basically

11  no New York nexus alleged, security services falls in the same

12  boat as Cayman.  They've got -- although there's an allegation

13  they have an office here, they've got no personnel here under

14  the complaint, no allegation they have a New York bank account,

15  no allegation they received the transfers at issue in any such

16  New York account.

17      Arbitrage is similar. Arbitrage is alleged to have an

18  office here and supposedly contributed some employees to the

19  fund derivatives group, but there's no allegation that those

20  employees were here in New York and therefore no reason to

21  conclude that Arbitrage even had any employees here.

22      And I think another thing that's coloring our view on

23  the BLI decision. which really features understandably

24  prominently in the Trustee's opposition, the law in personal

25  jurisdiction has changed significantly since BLI came down.

1  We've got Daimler which came down, but more importantly Walden

2  vs. Fiore which makes clear that we really have to be focusing

3  on the defendant's contacts with the forum, and we can't use a

4  stream of commerce type theory to evaluate personal

5  jurisdiction.  It's not enough under Walden vs. Fiore that the

6  BNP defendants knew or even intended for their money to wind up

7  here.  You have to focus on their actual context with the

8  forum.

9         So our view is post-2014, it's really the To, Hill,

10 and [indiscernible] line of cases that should guide the

11 personal jurisdiction analysis and they just haven't done

12 enough tracking or tracing here to show that their specific

13 conduct arises out of New York or U.S. based context.

14         I can turn briefly to the SOL argument.  The

15 complaint, the amended complaint includes new transfers from a

16 fund called Insurance Portfolio which the fund does not appear

17 in the original complaint.  There's about $40 million worth of

18 transfers that are alleged as to that fund.  And then there are

19 some new transfers as to another Tremont fund portfolio limited

20 that did appear in the original complaint, but all the

21 transfers in the original complaint were well within the two

22 year lookback period.  And now we've got transfers, new

23 transfers, most of which are from outside that two year

24 lookback period, 2004, '05, and '06.

25         The Trustee concedes that these claims are time

Page 27

1    barred unless of course they relate back.  Basic relation back

2    argument the Trustee has put forward is that all the claims

3    relate to the Madoff fraud [indiscernible] operative fact, and

4    that that should be enough.  But we think that proves too much

5    in a case such as this where you've got a far reaching fraud

6    such as the Madoff fraud, and more importantly where you really

7    look at the original complaint and compare it to this one, the

8    original complaint has totally different factual narrative.

9    And the relation back case law really focuses on were the

10   defendants put on notice by that original complaint of the new

11   claims.

12           THE COURT:  Well, why weren't you put on notice that

13   they were going to come after you for any transfers that Madoff

14   made to any of these feeder firms that you subsequently

15   received transfers from?

16           MR. MACKINNON:  Well, as to insurance portfolio, the

17   feeder fund never appeared in the original complaint.  So no

18   notice as to insurance portfolio.

19           The other, I think, factor that should color our view

20   of this is the original complaint in this matter is about four

21   years after the Madoff fraud came to light.  I think it was

22   fair for the BNPP defendants to assume that after four years

23   had passed, the Trustee would have at least identified the

24   feeder funds that are at issue that transferred monies to the

25   BNPP defendants.  That should get rid of insurance portfolio

1    because it didn't appear at all in the original complaint.

2          I think also reading the original complaint and

3    focusing on portfolio limited, we were talking about two year

4    transfers, which makes sense and made sense at the time perhaps

5    because we didn't have in the original complaint any far

6    reaching theory along the lines of what Breon talked about,

7    BNPP defendants supposedly being aware of or almost being

8    active participants in the fraud.  That's their new theory in

9    the original complaint.

10          So the original complaint maybe put us on notice of

11   the two year transfers.  But to go back beyond the six year

12   transfers that are alleged in the new complaint, they don't, we

13   weren't put on notice that those might subsequently be at

14   issue.  And I think the case in Metzeler is helpful for us in

15   that respect because it talks about how your expectations can

16   be sort of limited by a timeframe.

17          That's kind of our core arguments on personal

18   jurisdiction and statute of limitations.  So unless you have

19   any questions.

20          THE COURT:  Thank you.

21          MR. MACKINNON:  Thanks.

22          MS. WASICK:  Good morning, Your Honor, Joanna Wasick

23   of Baker & Hostettler for the Trustee.

24          THE COURT:  Good morning.

25          MS. WASICK:  Your Honor, I'd like to first address

Page 29

1    what constitutes a good faith defense under section 550.

2    Because what we just heard the defendants argue is that if I

3    take money out of BLMIS thinking it might be a Ponzi scheme

4    then I lack good faith and those funds are recoverable for

5    distribution to customers.  But if I take money out of BLMIS

6    even though I know that there all these signs of fraud and I

7    believe that there's a high probability that Madoff is

8    conducting a fraud, if I don't know the specific details of

9    what kind of fraud that is when I'm taking the funds, then I'm

10   acting with good faith.

11          THE COURT:  But to satisfy the requirement that, and

12   nobody seems to have mentioned this separate requirement that

13   you have to not know about the avoidability of the initial

14   transfer.  Don't you have to suspect that he is not, he's

15   engaged in a Ponzi scheme basically?

16          MS. WASICK:  Your Honor, the emphasis on a Ponzi

17   scheme, that came in during the 546(e) analysis, and I'll

18   discuss it more if we need to later.  But I bring it up briefly

19   here just as a point of reference because section 546(e) was

20   designed to safeguard the securities industries specifically.

21   And so it offers a safe harbor defense to certain participants

22   in that industry.  So the District Court found that when he was

23   determining whether initial transfers were avoided, whether

24   546(e) applied, something that's there to protect the

25   securities industry shouldn't also protect the transferee who

Page 30

1   knows very well that the securities being traded don't exist.

2   So there --

3          THE COURT:  I don't think 546(e) is necessarily

4   relevant in determining the liability of the defense of a

5   subsequent transfer.  But you seem to be arguing that there's

6   some lower threshold for the good faith analysis under 550(b),

7   it doesn't have to be knowledge of a Ponzi scheme it just has

8   to be knowledge that there's something wrong.  And I don't know

9   how you apply that.

10          MS. WASICK:  Yes, Your Honor, and we agree that

11   546(e) does not apply to subsequent transfers.  I'm using it as

12   a point of contrast because their actual knowledge of a Ponzi

13   scheme specifically is important because 546(e) is focused on

14   securities.

15          THE COURT:  So what do you think good faith means

16   under 550(b)?

17          MS. WASICK:  Sure.  Under 550, it's a general

18   provision so there are basic bankruptcy concepts such as

19   fraudulent transfers and insolvency which becomes an issue

20   whenever the transferor is or could be committing a fraud.  So

21   it doesn't make any practical or meaningful difference whether

22   I think the funds are coming as a transferee from a Ponzi

23   scheme or --

24          THE COURT:  Good faith generally means under the UCC

25   honesty and fact, so what does the complaint allege that BNP

1    did that was dishonest?

2         MS. WASICK:  There are numerous things, Your Honor,

3    that BNP -- I'm sorry, BLMIS you're asking or BNP?

4         THE COURT:  Well, it's BNP's good faith as the

5    subsequent transferee that's at issue under 550(b).  Does the

6    complaint allege they did anything dishonest?

7         MS. WASICK:  What they did they turned away from red

8    flags that suggested a high probability of fraud which is

9    exactly what the Court held, the first time the District Court

10   ever assessed whether, what constitutes a lack of good faith

11   and recovery proceeding that was addressed directly by the

12   Court, District Court for the first time in 2011 in the Caps

13   (phonetic) decision.  And there the Court held that the lack of

14   good faith requires assuring that the defendant "chooses to

15   blind himself to the red flags that suggest a high probability

16   of fraud."

17        THE COURT:  And you think that's an inquiry notice or

18   they have to have actual notice?

19        MS. WASICK:  Absolutely not.  And again, this is an

20   actual knowledge.

21        THE COURT:  Okay.  So what do you allege they had

22   actual knowledge of that triggered this bad faith?

23        MS. WASICK:  Sure.  I want to just steer away from

24   actual knowledge which is at issue for 546(c) and willful

25   blindness which is what we have here.  But these are the

Page 32

1    indicia of fraud, things that are laid out when BNP Paribas,

2    BNP Paribas Securities Services are tipped off while they're

3    running Oreades, while they're looking at these trade

4    confirmations, they're looking at these account statements and

5    they realize something is highly suspect.  So they conduct a

6    deeper dive, they conduct this inquiry that culminates in a

7    report.  And there are certain things that they knew.

8           Number one, Madoff is not making, giving trade

9    confirmations until seven or eight days after the trades are

10   actually occurring and the defendants try to disregard this

11   concern but it stems from these two defendants' inability to

12   confirm what stocks BLMIS or --

13          THE COURT:  But then in one of the other complaints,

14   and I want to ask you about that, one of the other complaints

15   they say they got assurances from DiPascali and I think the

16   auditor that the stocks are actually there and they were

17   segregated for BNP Paribas Securities Services.  But the

18   defendants in their motion refer to in essence incorporated by

19   reference into your complaint certain allegations about due

20   diligence, etc. that are in other complaints were improper.

21   And I didn't see a response from you saying, gee, you know, you

22   can't do that.  Are you contending that I can't, or arguing

23   that I can't consider what you allege in Oreades or in the BNP

24   proffer?

25          MS. WASICK:  Your Honor, you can look at the Oreades

Page 33

1    complaint?  It's part of the same overall proceeding but there

2    has been a considerable amount of time between the filing of

3    that complaint and this one.  And there are two separate

4    proceedings.  The complaint in one adversary proceeding, it's

5    really a red herring.  But more importantly, Your Honor --

6              THE COURT:  But I disagree because you're talking

7    about the same event.

8              MS. WASICK:  Sure.

9              THE COURT:  And you're pleading it one way, from

10   their point of view, you're pleading it one way in Oreades or

11   in the proffer, you're pleading it a different way here.

12             MS. WASICK:  Your Honor, the Trustee doesn't consider

13   anything in the Oreades complaint as conflicting with the --

14             THE COURT:  Okay.  So you have no problem with me

15   reading the Oreades complaint as they asked me to read.

16             MS. WASICK:  No, Your Honor.

17             THE COURT:  Okay.

18             MS. WASICK:  The Trustee concedes that you can read

19   the Oreades complaint, but there's nothing inconsistent with

20   that complaint and this complaint.

21             THE COURT:  BNP proffer that you submit.

22             MS. WASICK:  Exactly.

23             THE COURT:  All right.

24             MS. WASICK:  But just to go to that point, in both

25   complaints, the Trustee articulates a concern by BNP Paribas

Page 34

1    Securities Services about this trading.  And --

2          THE COURT:  Could BNP loan money to a client to

3    invest in a business that was fraudulent?

4          MS. WASICK:  Can you repeat that?

5          THE COURT:  Is there any problem with BNP loaning

6    money to somebody who wants to invest in a business if BNP

7    knows it's fraudulent?  But, you know, if they don't care,

8    they're not investing in the business, the client will pay them

9    back the money.

10          MS. WASICK:  Your Honor, if we go back to 550 and

11    there are transfers that ultimately BNP gets and they knew that

12    that was a fraudulent transfer that was made to hinder --

13          THE COURT:  But it's not necessarily a fraudulent

14    transfer.  That's a different requirement.  They have to know

15    that the initial transfer is avoidable.  And I don't know how

16    they know that unless they know that the initial transfer was

17    part of a Ponzi scheme.

18          MS. WASICK:  Probably, Your Honor.  But that's not

19    even, doesn't even have to be decided under these cases because

20    here we are dealing with fraudulent transfers.  We're dealing

21    with transfers that were made to hinder, delay or defraud.  And

22    the complaint goes through and shows how BNP Paribas and the

23    other three defendants, each of them knew these indicia of

24    fraud and deliberately turned away from confirming their

25    nature.

1          THE COURT:  I have a question for you.  Paragraph 4

2    of your amended complaint you say in substance that the

3    defendants provided billions of dollars in leverage to BLMIS

4    feeder funds and their investors.  What does that mean?

5          MS. WASICK:  Your Honor, what we know is that the BNP

6    defendants received over a billion dollars, some of which are

7    no longer even at issue.

8          THE COURT:  Does this mean they were lending money to

9    the feeder funds?

10          MS. WASICK:  Each deal had different mechanics and

11    different details.  So in pages 35 to 44, we outline different

12    leverage deals and the part that each --

13          THE COURT:  I don't know what leverage means.  Either

14    it means you're lending money to the feeder funds, whether

15    you're lending money to third parties.  I don't know what that

16    means.

17          MS. WASICK:  It can all come under the umbrella, Your

18    Honor.

19          THE COURT:  Well, what would -- and I know Mr. Peace

20    spoke about collateral, but why would the debtor, why would BNP

21    loan money to an entity whose sole asset, a feeder fund, its

22    investment in BLMIS if they knew that BLMIS was not trading

23    securities, it was a fraud?

24          MS. WASICK:  Well, we've alleged that BNP Paribas

25    suspected that BLMIS was a fraud.

Page 36

1           THE COURT:  But why would they -- why would they --

2           MS. WASICK:  And if something is a fraud the

3     collateral can still have value.  And it had value for all

4     those years.

5           THE COURT:  But how can they have value if there's no

6     trading in securities?

7           MS. WASICK:  Your Honor, it's indicative because of

8     what happened, they were able to keep billions of dollars that

9     were received because of these leveraged deals.  And the

10    collateral specifically --

11          THE COURT:  They got redemptions.  But the plausible

12    explanation for that is they thought that the collateral was

13    good, and then when they had the right to it they redeemed it.

14          MS. WASICK:  Well, Your Honor, it's a risk benefit

15    reward analysis.

16          THE COURT:  But what's the risk and benefit of

17    investing in a Ponzi scheme?

18          MS. WASICK:  Number one, we are not alleging that

19    they had actual knowledge of a Ponzi scheme.  And even a Ponzi

20    scheme can be profitable given the timing.

21          THE COURT:  Well, are you alleging that they had a

22    high suspicion or they thought it was likely that Madoff was

23    conducting a Ponzi scheme or not actually trading in

24    securities?

25          MS. WASICK:  We're alleging that the defendants

1    suspected that the trades weren't valid.  And again if we go

2    back --

3              THE COURT:  I don't know what that means.  You know,

4    we've been talking for years about what's going on in these

5    cases.

6              MS. WASICK:  Well, Your Honor, that's why this

7    decision is about willful blindness and not actual knowledge.

8    Willful blindness is suspecting and turning away --

9              THE COURT:  Willful blindness -- stop.

10             MS. WASICK:  Okay.

11             THE COURT:  Willful blindness of what is the

12    question.  In other words, is it willful blindness that Madoff

13    was secretive, or is it willful blindness that he wasn't

14    actually trading securities?  That's what I'm asking.

15             MS. WASICK:  It's willful blindness of fraud.  So if

16    something material is being misstated --

17             THE COURT:  So what's the fraud?

18             MS. WASICK:  Well the fraud ultimately was that

19    Madoff was conducting a Ponzi scheme, and under actual --

20             THE COURT:  All right. This is getting circular.

21             MS. WASICK:  Sure.  Well --

22             THE COURT:  What did they know, what fraud were they

23    aware of?  They were aware that Madoff didn't comply with the

24    regulatory requirements of Luxembourg law.  They were aware

25    that he was sending out delayed confirmations which itself is

Page 38

1    not a fraud.  What were they aware of?

2           MS. WASICK:  Well, Your Honor, in terms of the trade

3    confirmations, PNB Paribas Securities Services in real time

4    noted that this is a concern because, but we have no

5    opportunity to consider the true validity of the order.  So

6    defendant can try to disregard this but --

7           THE COURT:  Okay.  So let's say that's the problem.

8           MS. WASICK:  So they don't know what's being sold or

9    if it's being sold at all.

10          THE COURT:  So they do a little due diligence and

11   they get assurances from DiPascali and from the accountant that

12   the securities are actually being held and segregated.  So what

13   --

14          MS. WASICK:  Yes.  And as we see, they wanted their

15   own direct confirmation real time that the trade confirmations

16   were happening.  That did not happen.  If you go back to the

17   Oreades --

18          THE COURT:  But that's not fraud.  It's not fraud not

19   to send instantaneous confirmations.  And it sounds like what

20   you're really arguing is they thought well gee, he doesn't do

21   business the way we'd like him to do business, but that's not

22   fraud.

23          MS. WASICK:  Your Honor, this is not cosmetic

24   bookkeeping.  And what's important to you is after all these

25   concerns were raised, PNB Paribas and PNB Paribas Securities

1   Services closed Oreades, they closed a successful feeder fund.

2   You don't do that because you have concerns that, oh gee, the

3   bookkeeping isn't being adequately done.

4           THE COURT:  Why isn't it plausible to infer that they

5   closed Oreades because they couldn't use Madoff who is not

6   licensed in Luxembourg, wasn't even investment advisors in the

7   United States to do what they were doing?

8           MS. WASICK:  Your Honor, that was the case throughout

9   the entire operation of Oreades.  So if that was the reason why

10  they would have shut down Oreades, they would have done it

11  years prior.

12          THE COURT:  But your pleading sort of conflates, what

13  his name --

14          MS. WASICK:  Trevane.

15          THE COURT:  Trevane's warnings with shutting it down.

16  So that must be it.

17          MS. WASICK:  Well, Your Honor, that's a misstatement

18  because these are not the warnings of Trevane.  What happened

19  was that these two defendants conducted an inquiry which

20  culminated in a report that was discussed and circulated

21  between two defendants.  And that the Trevane email is a

22  reaction to the report of those two defendants.  So these are

23  not the musings of some low level employee, this is a senior

24  official of one of the defendants talking about a report that

25  was made on behalf of both and shared with both.

Page 40

1        THE COURT:  I'm not suggesting it was, and BNP to

2    argue that Trevane was some guy in the mailroom who nobody

3    really cared what he said.  But you know they've expanded on

4    the emails which you truncated in this pleading which indicate

5    that he had certain concerns which we've talked about and they

6    were eventually alleviated and by closing down Oreades, they

7    solved the regulatory problem.

8        MS. WASICK:  Your Honor, we cannot concede in any way

9    that his concerns were alleviated.  To the contrary.

10       THE COURT:  I understand.

11       MS. WASICK:  He wants confirmation that these

12   millions of dollars of assets exist and all he gets according

13   to the Oreades complaint and we've since had additional

14   discovery, third party interviews, etc. that contains those.

15   But even taking those allegations --

16       THE COURT:  Well, this complaint was filed on August

17   30th.

18       MS. WASICK:  Right.

19       THE COURT:  So pretty up to date.

20       MS. WASICK:  But the BLMIS "confirmation" and the one

21   from their three person auditor is a letter that says, don't

22   worry, the asset that you're asking about we're going to

23   confirm to you that they're really where they're supposed to

24   be, without any independent verification is what they asked for

25   and without any real substance --

1          THE COURT:  Well, an auditor is an independent

2     verification.  I know as it turns out, this particular auditor

3     may not have been, but --

4          MS. WASICK:  Your Honor, but in this pleading that's

5     not what we found that they were asking.  They were also asking

6     for real time confirmation, ability to make these confirmations

7     themselves.  And they're also asking for Madoff to disclose who

8     he was to investors and regulators.  And when Madoff declined,

9     it closed this profitable fund.  And again a fund is not closed

10    because you're concerned that the bookkeeping isn't sufficient.

11    So --

12         THE COURT:  Where do you allege about the profit of

13    the fund?

14         MS. WASICK:  The profit of the fund?  Your Honor, we

15    have numerous charts showing --

16         THE COURT:  In the amended complaint.

17         MS. WASICK:  In the amended complaint, later on in

18    the complaint.  But it shows that Oreades's returns go up

19    despite the market fluctuating, Oreades continues to go up.

20    They're making their money from Oreades, and that's reflected

21    in the complaint.  And, Your Honor, the defendants talk about

22    this implausibility argument, why would we shut down Oreades

23    and then switch gears to leverage business.  But that's not

24    what happened.  As they're closing down Oreades, the ZCM deal

25    opens up in which Zurich Capital Financial is selling its

Page 42

1    leverage business in New York.

2           And I cannot overstate the importance of this enough,

3    Your Honor, because one thing that PNB Paribas is lacking which

4    keeps it from its competitors, is it doesn't have a substantial

5    leverage business.  And at this time we're going back to the

6    early 2000s, there's this huge exploding market for leverage.

7    So this is a big opportunity.  This isn't about fees, this is

8    about an opportunity to become a bigger and different bank

9    through this acquisition.

10          And this is also important because this is when BNP

11   Paribas Arbitrage comes into the fold.  So Arbitrage, the

12   managing director of Arbitrage is BNP Paribas.  And all three

13   of the defendants, Arbitrage Security Services and BNP conduct

14   diligence on the ZCM acquisition.  And they see that it

15   includes this multi-million dollar credit facility with another

16   Madoff feeder fund, Harley.  And importantly it's this credit

17   facility that makes other competitors decide not to go through

18   with this acquisition.  So, for example, SocGen does the same

19   diligence on this acquisition, sees this Harley feeder fund --

20          THE COURT:  Right.

21          MS. WASICK:  -- looked at the trade, information from

22   the trade confirmation, realizes that the trades are

23   impossible, realized that the options couldn't be happening the

24   way they reported to do.  And even go back to ZCM and say,

25   listen we'll purchase all these assets except for this one

Page 43

1    credit facility.  So ZCM says no, SocGen walks away.  And

2    importantly in paragraph 162 of the complaint, they allege that

3    ZCM told BNP Paribas that this was the reason why SocGen walked

4    away.

5              So BNP knowing full well of the fraud indicators,

6    BLMIS knew this from Oreades, knows this from conducting its

7    own due diligence on the deal, it decides it can't pass up on

8    this opportunity.

9              THE COURT:  With respect to 162, one of the arguments

10   is it's not specific enough to say who told what to whom and

11   when I guess.  But presumably around that time --

12             MS. WASICK:  Your Honor, this is not a baseless

13   conclusory allegation.

14             THE COURT:  But how specific, the question really is

15   how specific you have to be in your pleading to allege what is

16   essentially an allegation of knowledge or suspicion?

17             MS. WASICK:  Your Honor, this is a subsequent

18   transfer complaint, we're subject to rule 8, not rule 9.  But

19   regardless, this is not a conclusory allegation.  It's based on

20   a witness interview from a former CZM employee.  That employee

21   told BNP Paribas executives involved in the 2003 acquisition

22   during negotiations that SocGen walked away from the ZCM

23   transaction because of concerns that they had about Madoff.  So

24   there are details in that allegation that more than comply with

25   rule 8.

1           And importantly, after they know about these concerns

2    of fraud after they hear about SocGen, after all of this, they

3    go forward with the ZCM acquisition and immediately their

4    profile rises and there's buzz and there's press that BNP is

5    now serious about being in leverage.  It's a game changer.  And

6    then the defendants, all four of them, now take on more Madoff

7    related deals that others won't take and they grow their

8    business.

9           And out of that, not only did they get substantial

10   fees and their employees got bonuses, they get over a billion

11   dollars of transfer through their enterprise, and most

12   importantly, they build their brand and they grow their profile

13   and they're able to attract different customers that they never

14   had access to, and then they can cross-sell their services to

15   those customers.

16          And by now all four defendants are working on these

17   deals and now they're getting account statements, they're

18   getting their trade confirmations.  And they're seeing the same

19   kind of information that tipped off PNB Paribas Securities

20   Services and Arbitrage about these fraudulent funds.

21          THE COURT:  You're starting to get into a should have

22   known argument.

23          MS. WASICK:  No, not at all, Your Honor.  We're

24   saying that they knew this while they were running Oreades,

25   they know this, they knew that these were red flags when they

Page 45

1    were conducting diligence.  We have emails in real time that

2    evidence that they know that these are sign of fraud.  And now

3    they get even more information because at the end of the day,

4    Your Honor, they're getting information from 15 different

5    feeder funds.

6              So just as a point of contrast, SocGen when it was

7    doing its diligence on ZCM got trade confirmation information

8    from one feeder fund for a timeframe of two years.  This is 15

9    different funds.

10             THE COURT:  Let me come back to this issue of good

11   faith and distinction between fraud and knowing he's not

12   trading securities.  Would you agree that if BNP knew, highly

13   suspected that Madoff was not trading securities, that its

14   participation in these transactions wouldn't make a lot of

15   sense?

16             MS. WASICK:  Your Honor, it's subject to a risk

17   benefit analysis.  And again that pushes the risk more.

18             THE COURT:  But that also explains why they might be

19   willing to do a deal that SocGen doesn't want to do.

20             MS. WASICK:  That's exactly the reason.  SocGen --

21   wasn't worth the risk to SocGen because they already had a

22   leverage business, BNP didn't.

23             THE COURT:  But the risk of what?  I'm trying to

24   figure out what you think they knew if it's not that Madoff was

25   not trading securities --

Page 46

```
 1            MS. WASICK:  Well, Your Honor --

 2            THE COURT:  -- that triggers this bad faith.

 3            MS. WASICK: -- they didn't know anything.  It's the

 4    willful blindness --

 5            THE COURT:  What's the bad faith?

 6            MS. WASICK:  The bad faith goes back to ideas of

 7    insolvency.  If something happening that, and it doesn't matter

 8    I think that the funds are coming from a Ponzi scheme or

 9    another fraud, I just think that the transferor is absolutely

10    lying about his ability to pay off these creditors.  These are

11    basic bankruptcy concepts.

12            THE COURT:  I just don't understand.  You seem to be

13    saying that any time there's a chance that they won't get paid

14    and they enter into the deal anyway that that's bad faith.  But

15    that's business; it's risk and reward.  You said it yourself.

16            MS. WASICK:  Well, and risk and reward is built in.

17    And, Your Honor, I'll drop it for now and --

18            THE COURT:  I'm trying to understand what it is, if

19    it's not that they knew or suspected that Madoff wasn't engaged

20    in a Ponzi scheme, what is it they knew, what fraud did they

21    know that triggered bad faith?

22            MS. WASICK:  Your Honor, they suspected that Madoff

23    is lying about doing what he is supposed to be doing to a

24    material extent that he's going to be, that BLMIS is going to

25    be in a position where it's obviously, they're not going to at
```

1       some point be able to pay off all their creditors.

2               THE COURT:  How do they know that?  Where is that in

3       the amended complaint?

4               MS. WASICK:  Again, Your Honor, we'll go back to

5       different allegations that start off in paragraph 114.  We can

6       start with 114.

7               THE COURT:  Isn't that true of anybody you do

8       business with?  There's always a possibility that you won't get

9       paid off.  This business that I'm in is built on that.

10              MS. WASICK:  Exactly.

11              THE COURT:  But that doesn't mean it's all

12      fraudulent.

13              MS. WASICK:  No, but, Your Honor, going back to a

14      Ponzi scheme, I just want to return back to your decision in

15      the Legacy matter.  Because there the Court found that the

16      first prong of willful blindness had been adequately pleaded,

17      notwithstanding that the Court also found that trades were,

18      that the defendants suspected that trades were actually going

19      on.  That's evident from Your Honor's oral argument raised in

20      the Renaissance report "the entire report is taken from the

21      view that he's actually trading securities."  And that's the

22      transcript at 33.

23              Later in the decision, the Court notes that the

24      defendants thought that Madoff could be front running.  And

25      that the Court says, "involved actual albeit fraudulent

1    trading."  That's the decision at 31.  So the Court finds the

2    defendant suspected that securities were being traded.  But

3    regardless, the Court ends up holding that the first prong of

4    willful blindness had been adequately pleaded.  Because what

5    matters is that the Trustee pleads that fraud was suspected.

6    And, Your Honor, common sense gets us there too.  Because the

7    concept of willful blindness means that the defendant suspects

8    illegal activity but turns away before confronting its nature.

9    So requiring the defendants note specifics --

10            THE COURT:  In Legacy it was illegal activity with

11    respect to the actual trades.

12            MS. WASICK:  Right.

13            THE COURT:  And you're not really alleging that in

14    the amended complaint.

15            MS. WASICK:  We're alleging that they had a high

16    suspicion that Madoff first of all was making material

17    misstatements if you're given statements saying that the

18    returns aren't what they are, saying that you're making option

19    trades when there's no way that that's true.

20            THE COURT:  How did they know that?

21            MS. WASICK:  Well, for the trading -- well, for the

22    focus reports, Your Honor.  They knew that Madoff was saying

23    that they had 23 accounts.  Yet, at the same time, the

24    defendants had 15 of those, and they know that they don't

25    comprise the entirety of Madoff's business.  They can see from

Page 49

1    the trade confirmations and the account statements that if

2    you're going with the SSC strategy there should be some

3    correlation with the returns to what the market is.  And these

4    are not regular people; these are sophisticated banking --

5              THE COURT:  Yeah, you know, in all of the cases that

6    I've seen usually defined some sort of willful blindness, it's

7    not just that the information is in there, but there are

8    allegations that the person is actually focused on it and knew

9    the information.

10             MS. WASICK:  And in the crux of those, Your Honor,

11   are in paragraphs --

12             THE COURT:  I wouldn't infer that they knew it,

13   simply, you know because they're getting these statements.

14   Some of these allegations are, you looked at the statements

15   over 16 years and 10,000 trades, you'd see 15 which were out of

16   the daily price range, so.

17             MS. WASICK:  Respectfully, I think that the facts are

18   when you go back, they're higher than that.  And again, these

19   are 15 different funds that are being looked at . So it's not

20   just one fund that you have to isolate different things.  But

21   facts like the option trades, BNP Paribas is the main player in

22   option trades.  It knows that there can't be these trades going

23   on because there's just not the capacity in the market to do

24   that.  They know that this seven day timeline, defendants

25   recognize that this is a possibility that Madoff could be

Page 50

1    reporting fictitious trades based on the benefit of hindsight.

2    So these are in the Oreades complaints.  Again, they're in the

3    ZCM arguments.

4           And again, to give more color to this, we have our

5    allegations that for instance, Fauchier Partners who is a joint

6    venture of BNP, he is alerted of these red flags.  And

7    importantly, Fauchier Partners is in a partnership , a joint

8    venture relationship with BNP because of its investment

9    expertise.  And as a matter of law, the knowledge of a joint

10   venture is imputable to --

11          THE COURT:  For that joint venture, but not for

12   anything else.  Right?

13          MS. WASICK:  I think the knowledge that's collected

14   in an investment joint venture if you're there because you have

15   this investment expertise which is what we plead in the

16   complaint, and it is imputed to that other party and that party

17   doesn't have to just use that imputed knowledge and not --

18          THE COURT:  You think it's any knowledge a joint

19   venture has even if it's unrelated to the joint venture?

20          MS. WASICK:  No, Your Honor.  But it is related here,

21   it's about investments and assessing risk.  But, Your Honor,

22   the imputation arguments like the Gianferrara allegations as

23   well, it just gives you color and it makes our allegations more

24   plausible than not.  And respectfully the pieces of evidence we

25   have here show that we have a basis that we're entitled to

Page 51

1    legal, we're entitled at least Your Honor to discovery so we

2    can flesh out what's going on.  Because as everyone, as counsel

3    here knows, we haven't had meaningful discovery from these

4    defendants.  And even the basis for most of our allegations are

5    from our own investigation.

6              THE COURT:  First of all, let's -- stop.

7              MS. WASICK:  Yes.

8              THE COURT:  First of all, as a general principle, you

9    don't get discovery until you plead a legally sufficient

10   complaint.

11             MS. WASICK:  Exactly, Your Honor.

12             THE COURT:  And secondly, in a bankruptcy context,

13   particularly in a case like this, you've had a lot of

14   discovery, you have more discovery than a plaintiff normally

15   gets.

16             MS. WASICK:  Across the cases, yes, Your Honor.

17   Although, with this particular defendant, I would not --  but

18   that doesn't even matter.  What we have here is a start and we

19   have over 100 pages of detailed allegations as to the proximity

20   that these defendants had to BLMIS going back to the late 80s

21   throughout.  We have visibility into 15 different funds.  We

22   have diligence teams who are looking at these trade

23   confirmations because they want to make sure that they're

24   continuing to make money.

25             THE COURT:  So even if they did suspect and this

Page 52

1    starts to get into legacy, even if they did suspect that BLMIS

2    was engaged in some sort of fraudulent trading, but trading

3    nonetheless, and then they do due diligence, doesn't that

4    satisfy what they would have to show, or take them out of the

5    willful blindness scenario?

6         MS. WASICK:  I'm sorry, Your Honor, can you repeat

7    that?

8         THE COURT:  In other words, you say they suspect,

9    they do due diligence, what more do they have to do?

10        MS. WASICK:  Well, Your Honor, I'm glad you brought

11   that up because it's not just due diligence.  In fact, they're

12   getting these red flags.  And while they did do due diligence

13   in Oreades which led them to close down the fund, while they're

14   conducting this leverage deal, they see the same red flags.

15   But instead of looking deeper and asking more questions like

16   they did in Oreades, they do the exact opposite, Your Honor.

17   And they look away and there's a bank wide directive to not

18   follow up on any of these red flags.  And that, Your Honor, is

19   explicitly in our complaint.

20        So paragraph 167 of our complaint, "the diligence

21   team is strict of its ability to recommend, reject or veto any

22   BLMIS related deal."  Paragraph 176 to 77.  The diligence team

23   usually vets proposed transactions, memorialize their findings.

24   But they were told to not do that specifically with Madoff

25   deals.

1          Paragraph 178, they break away with their policy

2      against single manager investments.  And that's a policy that

3      existed because an increase risk of exposure to fraud.  So

4      these are substantial deliberate steps taken to avoid

5      confirming their suspicions of fraud.  This is what willful

6      blindness looks like, Your Honor.

7          THE COURT:  So why were they doing due diligence?

8          MS. WASICK:  They're doing diligence to the extent

9      that they're looking at the trade confirmations and account

10     statements to make sure that they keep making their fees and

11     that they keep making their money.

12         And, Your Honor, just look where we are now to see

13     whether the risk benefit was valid.  Because these defendants

14     are now one of the biggest banking conglomerates in the world.

15     They made their fees --

16         THE COURT:  And one of the biggest losers, I guess.

17         MS. WASICK:  No, Your Honor.  Their standing has gone

18     up over the years.  And even if they lost some money in 2008,

19     during all of these other years --

20         THE COURT:  Some money -- $500 million?

21         MS. WASICK:  Your Honor, we do not accept this --

22         THE COURT:  Pretty soon you'll be talking about real

23     money, huh?

24         MS. WASICK:  Well, that's an allegation that they

25     culled from an article about the "BNP Group."  I don't know who

Page 54

1    that is.

2             THE COURT:  Well, you're telling me their amongst the

3    biggest entities now in the world, so.

4             MS. WASICK:  They are, Your Honor, but --

5             THE COURT:  Are you culling that from a newspaper

6    article?

7             MS. WASICK:  No, I'm culling that from their public

8    statement.

9             But regardless, for all these other years they made

10   their fees, their employees got their bonuses, they retained

11   over a billion dollars of transfers that went through BLMIS and

12   they created this leverage business that made them competitive

13   in a way they never would have been but for these leverage

14   deals.  These are not the Madoff victims that lost their life

15   savings and are sitting before the Court now.  And the idea

16   that they're going to be able retain these subsequent transfers

17   that would otherwise go to victims, it runs contrary to the

18   idea of what a court in bankruptcy and a court in equity

19   usually does in similar circumstances.

20            So, Your Honor, unless you have more questions about

21   --

22            THE COURT:  Well, let me ask you the same question I

23   asked them.

24            MS. WASICK:  Sure.

25            THE COURT:  Do I have to decide the personal

Page 55

```
 1    jurisdiction issue in order to decide the motion, these

 2    motions?

 3              MS. WASICK:  Given the posture, usually this is a

 4    threshold issue.  And --

 5              THE COURT:  Personal jurisdiction or sufficiency?

 6    Legal sufficiency.

 7              MS. WASICK:  No.  Usually jurisdiction is a threshold

 8    issue.  And Your Honor did raise the exact countenance that

 9    this proceeding whether you're deciding futility, etc., it's

10    up, it's not perfectly clear.

11              But jurisdiction.  Your Honor, if you walk up Seventh

12    Avenue and you get to about 51st Street and you turn to your

13    right you will see this big granite skyscraper with an

14    impressive rose stone arch over the word BNP Paribas in huge

15    gold letters --

16              THE COURT:  Do I need a time machine to go back to

17    before 2008?

18       (Laughter)

19              MS. WASICK:  No, you could do that, I think Google

20    maps, there must be something that  --

21              THE COURT:  Are you suggesting I take a view?

22              MS. WASICK:  I'm saying you can just take a walk when

23    --

24              THE COURT:  Okay.  And if I did that --

25              MS. WASICK:  Yes.
```

Page 56

1          THE COURT:   -- what would they tell me about the

2     relationship of that sign to the transactions that are at issue

3     in this case?

4          MS. WASICK:  Your Honor, this is where three of the

5     defendants had a permanent office, they had permanent employees

6     who were conducting the bulk of their BLMIS related business.

7          THE COURT:  But one of the arguments they're making

8     is that under the caselaw I have to show or you have to argue

9     or I have to find that these defendants did something here,

10    they came here and did something in connection with the

11    transactions that are at issue in the case.

12         MS. WASICK:  They absolutely did do something here,

13    Your Honor.  They're talking to Tremont and Ascot, two domestic

14    funds.  They're routing their --

15         THE COURT:  But what does that have to do with the

16    subsequent transfers?

17         MS. WASICK:  The subsequent transfers arise from

18    those transactions.  This whole entire business was about

19    creating leverage deals and getting transfers from different

20    funds that originated in New York and went to BNP Paribas bank

21    accounts in New York.  This is not the Hill case or the To case

22    where there's a foreign plaintiff doing a foreign administrator

23    of a foreign feeder fund and nobody is present in New York but

24    somebody presses a button and a transfer goes through some BNP,

25    some corresponding account in New York.  These defendants are

Page 57

1    working in New York; they're marketing their leverage from New

2    York; they're routing money in BNP Paribas New York accounts,

3    not correspondent accounts, actual accounts.  And all our

4    claims arise from the activity that was here, Your Honor.

5            And as for Cayman that defendants somehow separate

6    out from the other three because the other three have these

7    permanent employees and a permanent New York office, Cayman

8    assigned one of their New York affiliates, New York Securities

9    Corp. to be their agent in relation to certain of these Madoff

10   deals.  Cayman worked together with the other three defendants.

11   They communicated with these three defendants; they facilitated

12   transfers.

13           THE COURT:  These are just kind of generalizations.

14   Don't I have to know what they did?

15           MS. WASICK:  Your Honor, yes.  And so we also include

16   -- to give more detail to the allegations in our complaint, we

17   provided the Calvani declaration with our opposition papers.

18   And those give even more detail about what was being done in

19   New York.  So Exhibit 3 in that declaration is the Ascot

20   subscription agreement for BNP Paribas Cayman.  And so on Bates

21   2099 to 2102 of that document -- I'll wait if you'd like to,

22   it's towards the end.

23           So BNP Paribas came and appoints officers of BNP

24   Paribas Securities Corp. as agents authorized to effectuate the

25   subscriptions and redemptions from the domestic Ascot

Page 58

1   subscription fund.

2           THE COURT:  Which page are you looking at?

3           MS. WASICK:  It's Bates 2099.

4           THE COURT: 2099?

5           MS. WASICK:  Of Exhibit 3.  And as you're looking

6   through that, Your Honor, to get to the page, I'll just remind

7   you that the fund derivatives group and the leverage business

8   that we're talking about ZCM, that whole assets, those were New

9   York assets.  This is the business that they inherited from ZCM

10  that had always been in New York with New York contacts and

11  importantly New York employees.  So I'll get to this.  It's the

12  NYGASS.

13          THE COURT:  I'm looking at Exhibit 3 of the

14  declaration and it's only 38 pages.  I thought you said page

15  2099.

16          MS. WASICK:  Your Honor, it says 44 of 48 on top, if

17  that's helpful.  So I'm looking for the appointment of the

18  agent.

19          THE COURT:  Would it be appointed as agent of Paribas

20  --

21          MS. WASICK:  Sorry, it's 47 of 48, Your Honor.

22          THE COURT: 47 of 48?

23          MS. WASICK:  Yes.  And this is the BNP Paribas

24  Securities Corp, pursuant to the authority granted to me, an

25  agent.

Page 59

1           THE COURT:  But Paribas Securities Corp isn't a

2     defendant here, is it?

3           MS. WASICK:  No, no.  But if acting as an agent for

4     one of the defendants, BNP Cayman, who is authorizing its New

5     York affiliate to conduct some of the Madoff related business

6     that it does in New York.  So it shows, it's an example of how

7     --

8           THE COURT:  But nothing that PNB Paribas Securities

9     did was the subject of this complaint.  Right?

10          MS. WASICK:  If it didn't as an agent for PNB Cayman

11    it absolutely is, Your Honor.

12          Also, I have an easier exhibit to show you too.  For

13    Exhibit 1, for example, on page 11 of that exhibit.  It's 12 of

14    13, but it's page 11 at the bottom of Exhibit 1.  And this is

15    another subscription agreement for PNB Paribas Cayman.  On the

16    top paragraph E it talks about PNB Cayman is organized under

17    the laws of Cayman and has its principle place of business in

18    New York, Your Honor.

19          THE COURT:  What does this relate to?

20          MS. WASICK:  This is related to Fairfield Century

21    subscription agreement for PNB Paribas Cayman.  So again this

22    is part of this New York based leverage business that's based

23    on BLMIS and feeder funds most of which are also domestic

24    feeder funds.

25          And if you go through this, all of the exhibits

Page 60

1    you'll see more about how BNP Paribas Cayman worked with all

2    these three defendants and used the New York offices address,

3    used New York personnel, facilitated transfers through BNP New

4    York bank accounts, assigned New York affiliates as agents to

5    conduct their business, their Madoff-related business, they're

6    exactly where these subsequent transfers claims arose from.

7            And, Your Honor, at the very least, the Trustee

8    submits that we made a non-frivolous sufficient start towards

9    establishing jurisdiction.  So if Your Honor finds that all of

10   these exhibits and allegations that show that the nexus between

11   Cayman and New York, if Your Honor thinks that that doesn't

12   establish a prima facia showing jurisdiction, discovery should

13   be allowed while this motion is held in abeyance.

14           THE COURT:  There was an issue that came up about the

15   sufficiency of service of process.  Is that resolved by the

16   stipulation?

17           MR. PEACE:  Yes.

18           THE COURT:  Is there anything else?  Are you done?

19           MS. WASICK:  Well, Your Honor, I'd like to just touch

20   very quickly on 546(b) and only to reference that there was a

21   major decision last week in the Merit vs. FTI case.  And if

22   you'd like we have copies of the decision.

23           THE COURT:  Well, I know the decision, but the Second

24   Circuit has already concluded that at least the initial

25   transfers were settlement payments on account of securities

Page 61

1    contract, so it seems like 546(e) applies.  That doesn't affect

2    it.  Do you agree?

3             MS. WASICK:  Yes, we agree with the Supreme Court's

4    holding.  Yes.

5             THE COURT:  No, I know -- whether or not you agree

6    with the Supreme Court's holding doesn't matter.  But --

7        (Laughter)

8             THE COURT:  But do you agree that the holding doesn't

9    change the result really under [indiscernible] in that the

10   initial transfers are safe harbor because Madoff was making

11   settlement payments on account of securities contracts.

12            MS. WASICK:  For avoidance.

13            THE COURT:  For the avoidance.

14            MS. WASICK:  For avoidance of initial transfers, yes.

15   We --

16            THE COURT:  Yeah.  No, I agree with you that you

17   don't look to that for subsequent transfers.

18            MS. WASICK:  Right.  And Your Honor, I'd just like to

19   --

20            THE COURT:  Except as they argue, to get there they

21   can argue that the initial transfers were not [indiscernible].

22            MS. WASICK:  Yes.  Which they haven't done, so they

23   just had that one sentence -- yes.

24            Just briefly --

25            THE COURT:  And I decline the invitation to figure

Page 62

1    out why it's insufficient.

2         MS. WASICK:  Right.  And I'll just point out to you

3    that the initial transfers in that argument are just Tremont,

4    they're not Ascot's, we know that they made reference to --

5         THE COURT:  Where did the Ascot transfers come from?

6         MS. WASICK:  The Ascot transfers are all within the

7    two year timeframe and not on the six year timeframe.

8         THE COURT:  All right.  Okay.

9         MS. WASICK:  And as Your Honor points out, we do have

10   that Proffer complaint in addition to the Tremont complaint.

11        And as for relation back, Your Honor, and this idea

12   of them not being on notice and being surprised by the

13   additional --

14        THE COURT:  You know, at least a few cases that have

15   talked about it in terms of initial transfers and said that

16   each transfer is a separate cause of action.

17        MS. WASICK:  Right, Your Honor, and those cases are

18   preferential transfers.  The cases -- and they're also such as

19   Metzeler and in re [indiscernible] is what they're relying on,

20   they're preferential transfer claims, number one.  And number

21   two, the Court found the initial complaint hadn't put them on

22   notice.  Whereas here, these defendants have been in litigation

23   for five years with the Trustee and they're on notice from the

24   initial complaint.

25        THE COURT:  But you have at least one fund that

Page 63

1   wasn't previously mentioned.

2            MS. WASICK:  It's a fund managed by Tremont.  So it's

3   the same individuals.

4            THE COURT:  Well, but it wasn't there and they're

5   saying, you know, even if we knew about the other ones, how did

6   your complaint put us on notice of this one?

7            MS. WASICK:  Respectfully, Your Honor, they should be

8   on, they should be more aware of the transfers than we are

9   because they have access to their own records, whereas --

10           THE COURT:  Well, but that's not the test.  The test

11   is that pleading has to put them on notice, right?

12           MS. WASICK:  Right.  And the pleading did that, Your

13   Honor.  This is all about their business with feeder funds and

14   the transfers received as part of the course of that

15   interaction.

16           Your Honor, unless you have more questions.

17           THE COURT:  I think I've asked you enough.

18           MS. WASICK:  Thank you, Your Honor.

19           MR. PEACE:  Your Honor, can I respond to a couple of

20   points and have my colleague respond?

21           THE COURT:  Sure.

22           MR. PEACE:  I think the back and forth further

23   illustrates that the Trustee is really relying on an equity

24   notice standard.  I mean they speculate and make general

25   statements about certain allegations, but they're not

1   particularized and they don't demonstrate that the BNP

2   defendants, each of the BNP defendants, suspected that there

3   was a high probability of fraud or particularly that they

4   weren't trading of securities.

5           This is an example, Your Honor, they talk about the

6   closing of the Oreades account basically saying you wouldn't

7   close the account because it was making money.  That's not a

8   particular allegation that the account was closed because they

9   suspected fraud at Madoff.  You, Your Honor, pointed out

10  earlier that there were all kinds of discussion of regulatory

11  issues and whether or not they were in compliance.  So to make

12  the leap that they closed it because of suspicions of fraud is

13  just not right.

14          The other thing they -- I'll just mention a couple of

15  things that I didn't mention in my original argument, Your

16  Honor.  They mention that employees at PNB Paribas defendants

17  got bonuses and that was the reason that they would engage in

18  this economically irrational set of transactions.  But in fact,

19  there are no well-pleaded allegations that anyone received a

20  bonus.  They say typically people in the financial services

21  industry get bonuses, but there's nothing in this complaint

22  that supports that sort of bald assertion.

23          One other thing, Your Honor, I wanted to just point

24  out because Your Honor talked a bit about with Trustee's

25  counsel about the economic issue and what's happening with each

Page 65

1    transaction.

2           I just want to point you to the amended, purported

3    amended complaint, paragraph 183.  And this talks about the

4    credit facility with Santa Barbara.  And remember, counsel

5    talked a bit about the transaction with ZCM and BNP Paribas

6    wanted to expand its business and become a big leveraged

7    provider.  One of the transaction that they got in connection

8    with ZCM acquisition was a credit facility with Santa Barbara

9    and then did another one.

10          If you read paragraph 183, Your Honor, it explains

11   exactly what's happening here.  The credit facility agreement

12   called for BNP Paribas to make senior secured loans to Santa

13   Barbara for leveraged investments with Harley.  And Your Honor

14   will remember Harley was one of the funds that has been

15   dismissed on comity grounds and that reduced exposure for BNP

16   Paribas by a billion dollars.  So when they say we received

17   transfers over a billion dollars, most of that is Harley, and

18   that's based on a loan that was provided to Santa Barbara,

19   where as it says here, Your Honor, it explicitly referenced

20   Harley's Madoff account with BLMIS which served as collateral

21   for the credit facility.  So the payments that BNP Paribas

22   actually got are exactly what they allege here -- interest

23   payments and fees.  These transfers that are coming in are

24   repayments of loans that they're making.

25          THE COURT:  There are also allegations that they're

1    getting a lot of redemptions.

2          MR. PEACE:  Right.  But that --

3          THE COURT:  That's where they're getting the real

4    money from, not --

5          MR. PEACE:  Exactly.  But, Your Honor, this is

6    exactly, these are redemptions to pay off the loan.  So that's

7    why I stress that the type of transactions that we're talking

8    about, that they're providing leverage, they are investing

9    capital.  And you'll see multiple examples of this throughout

10   the complaint, Your Honor, where they're investing capital to

11   give to their client so they can have exposure to Madoff.  What

12   they get back is retainment of what they gave the clients as a

13   loan and some interest and fees.  That's not big money making

14   business.  The downside risk in dealing with a potential Ponzi

15   scheme is far greater than any fees in interest that they would

16   get.

17         Your Honor, I just wanted to point that out to Your

18   Honor as well.

19         MR. MACKINNON:  Your Honor, just very briefly.  You

20   asked a question as to whether you can reach the personal

21   jurisdictional issue first.  I think in the --

22         THE COURT:  Well, whether I have to.

23         MR. MACKINNON:  Whether you have to.  Excuse me, I

24   reversed it.  The [indiscernible] case that just came down,

25   there's a concurrence from Judge Calabrese where he indicates

Page 67

1   that you can address the merits before personal jurisdiction.

2   I think we've got a cite to a Chevron case from the Second

3   Circuit in 2012 as well where the Second Circuit said the same

4   in a footnote that you can address the merits first.

5          Just very briefly on the jurisdiction point. Those

6   exhibits that you went through with Trustee's counsel.  They're

7   not part of the complaint.  They were filed as exhibits to the

8   motion to dismiss.

9          THE COURT:  Am I necessarily limited to the complaint

10  on a motion to dismiss the personal jurisdiction if I receive

11  affidavits?

12         MR. MACKINNON:  If you're not going to have a full

13  factual record, I think you're limited to the motion to

14  dismiss.  They've also had nine years to put this complaint

15  together.  So to have them submitting additional affidavits

16  after the fact once they've seen our motion to dismiss, it

17  seems like this is a case where they've had enough time to put

18  forward a personal jurisdiction case if they're going to be

19  able to put one forward.

20         THE COURT:  You know, you often get affidavits

21  relating to personal jurisdiction after the motion to dismiss,

22  not before, because of the motion to dismiss.

23         MR. MACKINNON:  Understood.  The other point just on

24  BNP defendants, the only BNP defendants alleged to have had a

25  BNP, an account here in New York is BNP Paribas.  There's no

Page 68

1    allegation as to any other BNP defendants.  I just wanted to

2    reiterate that point.

3            THE COURT:  I thought I saw in one of the exhibits,

4    again, this is a personal jurisdiction issue, that Cayman had

5    the account and it was payable to BNP Paribas, I assumes in New

6    York, I don't know.

7            MR. MACKINNON:  That may be the Ascot exhibit you

8    were going through where the investors defined as BNP Cayman

9    and Trust, and then a big redacted block.  So it's not even

10   clear from the exhibit that BNP Cayman is the investor because

11   they redacted out the name of the investor.  I suppose it's

12   probably on behalf of somebody, but we don't know who it was on

13   behalf of.  But if you look at the complaint which again should

14   be the focus of the inquiry, there's one entity alleged to have

15   had a New York account, that's BNP Paribas.

16           I think that's all I wanted to add, Your Honor.

17           THE COURT:  All right.  Thank you very much.  I'll

18   reserve decision.

19           MR. MACKINNON:  Thank you, Your Honor.

20      (Proceedings concluded at 11:29 a.m.)

21

22

23

24

25

1                           I N D E X

2

3

4                          RULINGS

5    DESCRIPTION

6                                                      PAGE

7    HEARING RE BNP Paribas S.A.'s Motion to Dismiss

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 70

1                              CERTIFICATION

2               I, Theresa Pullan, certify that the foregoing is a

3      correct transcript from the official electronic sound recording

4      of the proceedings in the above-entitled matter.

5

6      AAERT Certified Electronic Transcriber CET**00650

7      Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22      Veritext

23      330 Old Country Road

24      Suite 300

25      Mineola, NY  11501

| & | | | |
|---|---|---|---|

**&**   4:8 28:23

| **0** | | | |
|---|---|---|---|

**00650**   70:6
**08-1789**   1:3

| **1** | | | |
|---|---|---|---|

**1**   59:13,14
**10,000**   49:15
**100**   51:19
**10006**   3:12
**10111**   3:6
**106**   2:1
**10:02**   1:19
**11**   59:13,14
**114**   47:5,6
**11501**   70:25
**11:29**   68:20
**12**   59:13
**12-01576**   1:10
**13**   59:14
**133**   18:11
**136**   18:10,11
**15**   45:4,8 48:24
  49:15,19 51:21
**16**   49:15
**162**   43:2,9
**167**   52:20
**176**   52:22
**178**   53:1
**18**   22:3
**1800s**   24:17
**183**   65:3,10
**19**   22:3

| **2** | | | |
|---|---|---|---|

**2000s**   42:6
**2003**   43:21
**2004**   26:24
**2008**   17:11 18:4,6
  53:18 55:17
**2011**   31:12
**2012**   67:3

**2014**   26:9
**2018**   1:18
**2099**   57:21 58:3,4
  58:15
**2102**   57:21
**23**   48:23

| **3** | | | |
|---|---|---|---|

**3**   57:19 58:5,13
**300**   70:24
**30th**   40:17
**31**   48:1
**33**   47:22
**330**   70:23
**35**   35:11
**38**   58:14

| **4** | | | |
|---|---|---|---|

**4**   35:1
**40**   26:17
**44**   35:11 58:16
**45**   3:5
**47**   58:21,22
**48**   58:16,21,22

| **5** | | | |
|---|---|---|---|

**500**   53:20
**505**   23:4
**51st**   55:12
**546**   5:3,11,17,18
  5:22 6:16 7:8
  29:17,19,24 30:3
  30:11,13 31:24
  60:20 61:1
**550**   5:18 29:1 30:6
  30:16,17 31:5
  34:10
**56**   11:17
**57**   12:24
**59**   12:24

| **7** | | | |
|---|---|---|---|

**77**   52:22

| **8** | | | |
|---|---|---|---|

**8**   43:18,25
**80s**   51:20

| **9** | | | |
|---|---|---|---|

**9**   1:18 7:13 43:18

| **a** | | | |
|---|---|---|---|

**a.m.**   1:19 68:20
**aaert**   70:6
**abeyance**   60:13
**ability**   41:6 46:10
  52:21
**able**   36:8 44:13
  47:1 54:16 67:19
**abroad**   24:8,9,25
**absolutely**   31:19
  46:9 56:12 59:11
**accept**   53:21
**access**   18:13
  44:14 63:9
**account**   19:7,17
  25:4,5,14,16 32:4
  44:17 49:1 53:9
  56:25 60:25 61:11
  64:6,7,8 65:20
  67:25 68:5,15
**accountant**   38:11
**accounts**   11:24
  12:16 13:2,9
  48:23 56:21 57:2
  57:3,3 60:4
**acquisition**   42:9
  42:14,18,19 43:21
  44:3 65:8
**acting**   29:10 59:3
**action**   13:24
  62:16
**active**   28:8
**activities**   22:21
**activity**   22:20
  48:8,10 57:4
**actual**   6:15 7:4,16
  8:3,6 13:4 26:7

30:12 31:18,20,22
  31:24 36:19 37:7
  37:19 47:25 48:11
  57:3
**add**   68:16
**addition**   62:10
**additional**   40:13
  62:13 67:15
**address**   5:19
  28:25 60:2 67:1,4
**addressed**   31:11
**adequately**   8:13
  39:3 47:16 48:4
**administrative**
  24:12
**administrator**
  56:22
**adv**   1:10
**adversary**   33:4
**advisors**   39:6
**affect**   61:1
**affidavits**   67:11
  67:15,20
**affiliate**   59:5
**affiliates**   57:8
  60:4
**agent**   57:9 58:18
  58:19,25 59:3,10
**agents**   57:24 60:4
**agree**   5:9 8:25
  30:10 45:12 61:2
  61:3,5,8,16
**agreement**   57:20
  59:15,21 65:11
**agreements**   24:12
**ahead**   4:10
**al**   1:13
**albeit**   47:25
**alerted**   50:6
**allegation**   17:21
  18:2 25:12,14,15
  25:19 43:13,16,19
  43:24 53:24 64:8

68:1
**allegations** 6:12
  6:14 7:14 8:4
  13:16 14:20,21,22
  14:23 15:15 18:7
  18:17,18 19:4,12
  19:16,19 24:11
  25:6 32:19 40:15
  47:5 49:8,14 50:5
  50:22,23 51:4,19
  57:16 60:10 63:25
  64:19 65:25
**allege** 8:6 9:24
  15:8 16:14 17:3
  30:25 31:6,21
  32:23 41:12 43:2
  43:15 65:22
**alleged** 15:4,10
  17:17 18:20 25:11
  25:17 26:18 28:12
  35:24 67:24 68:14
**alleges** 8:3 16:10
**alleging** 7:16
  20:23 36:18,21,25
  48:13,15
**alleviated** 40:6,9
**allocation** 13:5
**allowed** 60:13
**amend** 4:21 9:9
**amended** 4:18
  7:14 8:7,12,19
  10:22 11:25 15:4
  17:25 18:8 26:15
  35:2 41:16,17
  47:3 48:14 65:2,3
**amount** 33:2
**analysis** 24:7
  26:11 29:17 30:6
  36:15 45:17
**analyze** 6:24,25
  19:15
**analyzed** 7:7

**answer** 8:21
**anybody** 47:7
**anyway** 9:17
  46:14
**appear** 26:16,20
  28:1
**appeared** 27:17
**applied** 29:24
**applies** 61:1
**apply** 7:9,17 30:9
  30:11
**appointed** 58:19
**appointment**
  58:17
**appoints** 57:23
**appropriate**
  11:18
**arbitrage** 14:22
  25:17,17,21 42:11
  42:11,12,13 44:20
**arch** 55:14
**aren't** 48:18
**argue** 4:13 5:25
  15:16 29:2 40:2
  56:8 61:20,21
**argues** 10:8
**arguing** 7:20 21:5
  30:5 32:22 38:20
**argument** 4:22,23
  5:4 6:3 20:4 22:8
  23:3 26:14 27:2
  41:22 44:22 47:19
  62:3 64:15
**arguments** 28:17
  43:9 50:3,22 56:7
**ari** 3:14 4:5 23:20
**arises** 26:13
**arose** 60:6
**artfully** 14:15
**article** 21:21
  53:25 54:6
**articulated** 6:21
  10:16

**articulates** 33:25
**ascot** 6:4,25 7:8
  7:11 56:13 57:19
  57:25 62:5,6 68:7
**ascot's** 62:4
**asked** 13:1 21:14
  33:15 40:24 54:23
  63:17 66:20
**asking** 31:3 37:14
  40:22 41:5,5,7
  52:15
**assert** 5:12 7:4
**asserted** 4:13 8:22
  8:23
**assertion** 64:22
**assessed** 14:7
  31:10
**assessing** 50:21
**asset** 35:21 40:22
**assets** 8:18 12:15
  21:13 40:12 42:25
  58:8,9
**assigned** 57:8
  60:4
**assume** 27:22
**assumes** 12:10
  68:5
**assurances** 32:15
  38:11
**assuring** 31:14
**attendants** 15:10
**attorneys** 3:4,10
**attract** 44:13
**attribute** 15:2,3
**attributed** 11:9
**audited** 12:3
**auditor** 12:18
  32:16 40:21 41:1
  41:2
**auditors** 12:5
**august** 40:16
**authority** 58:24

**authorized** 57:24
**authorizing** 59:4
**avenue** 55:12
**avoid** 6:20 53:4
**avoidability** 29:13
**avoidable** 34:15
**avoidance** 61:12
  61:13,14
**avoided** 29:23
**aware** 28:7 37:23
  37:23,24 38:1
  63:8

**b**

**b** 1:22 11:19 12:2
  12:4,6 23:4 30:6
  30:16 31:5 60:20
**back** 5:2 10:12
  27:1,1,9 28:11
  34:9,10 37:2
  38:16 42:5,24
  45:10 46:6 47:4
  47:13,14 49:18
  51:20 55:16 62:11
  63:22 66:12
**bad** 31:22 46:2,5
  46:6,14,21
**baker** 3:3 4:8
  28:23
**bald** 64:22
**bank** 14:21 25:4,5
  25:14 42:8 52:17
  56:20 60:4
**banking** 49:4
  53:14
**bankruptcy** 1:1
  1:15,24 30:18
  46:11 51:12 54:18
**bar** 9:22
**barbara** 65:4,8,13
  65:18
**barely** 15:17
**barred** 5:2 7:8
  8:19 27:1

**based** 8:24 21:18
26:13 43:19 50:1
59:22,22 65:18
**baseless** 43:12
**basic** 27:1 30:18
46:11
**basically** 8:24
20:10 21:5 25:10
29:15 64:6
**basis** 18:22 50:25
51:4
**bates** 57:20 58:3
**behalf** 12:6 39:25
68:12,13
**belief** 10:17 12:9
17:9,13 19:9
**beliefs** 10:24
15:17 18:22
**believe** 15:18 16:6
17:18 19:21,24
21:25 23:3 29:7
**believed** 21:25
**belonging** 25:4,5
**benefit** 36:14,16
45:17 50:1 53:13
**bernstein** 1:23
**better** 11:23
**beyond** 28:11
**big** 17:5 21:8 42:7
55:13 65:6 66:13
68:9
**bigger** 42:8
**biggest** 53:14,16
54:3
**billion** 35:6 44:10
54:11 65:16,17
**billions** 20:1 35:3
36:8
**bills** 11:7
**bit** 64:24 65:5
**bli** 25:1,2,5,23,25
**blind** 8:14 22:11
22:22 31:15

**blindness** 9:14,18
9:23,25 10:17
13:6 14:4,18
15:17 31:25 37:7
37:8,9,11,12,13
37:15 46:4 47:16
48:4,7 49:6 52:5
53:6
**blmis** 10:11 11:6
12:14,16,17 20:25
29:3,5 31:3 32:12
35:3,22,22,25
40:20 43:6 46:24
51:20 52:1,22
54:11 56:6 59:23
65:20
**block** 68:9
**blumis** 24:12,13
**bmp** 12:17
**bnp** 1:13 2:1 3:10
4:3,5 8:13,17 10:7
10:7,10 13:2,17
13:22,24,25 14:23
14:25 15:3,12,17
15:22,24 16:2,9
16:15,19,22 17:4
17:10,15,23 18:17
18:22,24 19:21
20:13,14,23 22:21
23:1,14 24:16,20
25:9 26:6 30:25
31:3,3 32:1,2,17
32:23 33:21,25
34:2,5,6,11,22
35:5,20,24 40:1
42:10,12,13 43:3
43:5,21 44:4
45:12,22 49:21
50:6,8 53:25
55:14 56:20,24
57:2,20,23,23
58:23 59:4 60:1,3
64:1,2 65:5,12,15

65:21 67:24,24,25
67:25 68:1,5,8,10
68:15 69:7
**bnpp** 10:1 14:17
14:21,21,22 16:10
16:21 18:14,20
19:4,6 21:5,22,25
22:22 23:25 24:7
27:22,25 28:7
**bnpp's** 21:11
**bnp's** 31:4
**boat** 25:12
**bonus** 64:20
**bonuses** 44:10
54:10 64:17,21
**bookkeeping**
38:24 39:3 41:10
**bottom** 14:14
59:14
**bowling** 1:16
**brand** 44:12
**break** 53:1
**breon** 3:13 4:4
23:20 28:6
**brief** 7:12,24
**briefing** 4:13
**briefly** 23:3,22
26:14 29:18 61:24
66:19 67:5
**bring** 29:18
**broad** 20:4
**broadly** 15:1
**broker** 12:2
**brought** 52:10
**buckets** 15:20
**build** 44:12
**built** 46:16 47:9
**bulk** 56:6
**burger** 17:5
**business** 20:8,19
20:24 21:5,11,23
22:1,4,23,23 24:2
24:9 34:3,6,8

38:21,21 41:23
42:1,5 44:8 45:22
46:15 47:8,9
48:25 54:12 56:6
56:18 58:7,9 59:5
59:17,22 60:5,5
63:13 65:6 66:14
**button** 56:24
**buzz** 44:4

---
**c**
---

**c** 3:1 4:1 31:24
**calabrese** 66:25
**call** 10:7
**called** 26:16 65:12
**calvani** 57:17
**can't** 22:10 26:3
32:22,22,23 43:7
49:22
**capacity** 49:23
**capital** 20:10,11
41:25 66:9,10
**caps** 31:12
**care** 21:15 34:7
**cared** 40:3
**carried** 12:6
**case** 1:3,10 5:2
9:9 14:7 19:11
23:8 24:15,15
25:1 27:5,9 28:14
39:8 51:13 56:3
56:11,21,21 60:21
66:24 67:2,17,18
**caselaw** 56:8
**cases** 24:5 26:10
34:19 37:5 49:5
51:16 62:14,17,18
**cash** 21:8
**cause** 62:16
**cayman** 14:21
25:10,12 57:5,7
57:10,20 59:4,10
59:15,16,17,21
60:1,11 68:4,8,10

**century** 59:20

**certain** 8:18 29:21
32:7,19 40:5 57:9
63:25

**certainly** 6:19 7:9

**certification** 70:1

**certified** 70:6

**certify** 70:2

**cet** 70:6

**chance** 46:13

**change** 61:9

**changed** 25:25

**changer** 44:5

**charts** 41:15

**chevron** 67:2

**choice** 25:6,6

**chooses** 31:14

**circuit** 24:15,15
60:24 67:3,3

**circular** 37:20

**circulated** 39:20

**circumstance**
13:7

**circumstances**
54:19

**cite** 67:2

**cited** 12:22 21:21

**citing** 5:8

**claim** 7:10 8:23
17:9,9,11 18:13

**claims** 4:13 7:8
8:18 26:25 27:2
27:11 57:4 60:6
62:20

**clear** 18:2,3 23:8
26:2 55:10 68:10

**clearly** 7:20,21
13:11 16:9

**cleary** 3:9

**clerk** 4:2

**client** 21:6 34:2,8
66:11

**clients** 12:6,7 20:1
20:14 66:12

**close** 52:13 64:7

**closed** 39:1,1,5
41:9,9 64:8,12

**closer** 25:9

**closing** 40:6 41:24
64:6

**collateral** 21:12
21:12,16,18 23:11
23:14 35:20 36:3
36:10,12 65:20

**colleague** 4:8 9:21
63:20

**collected** 50:13

**color** 27:19 50:4
50:23

**coloring** 25:22

**comad** 5:21

**come** 23:14 27:13
35:17 45:10 62:5

**comes** 42:11

**coming** 30:22
46:8 65:23

**comity** 65:15

**commerce** 26:4

**committees** 15:5,7
15:8,11

**committing** 30:20

**common** 19:18
48:6

**communicated**
57:11

**company** 12:4

**compare** 27:7

**competitive** 54:12

**competitors** 42:4
42:17

**complaint** 4:19
6:13,13,14,23 7:1
7:2,3,7,8,10,11,14
7:20,20 8:1,3,8,11
8:12,19,23 10:21

10:21,22 11:1,17
11:25 12:1,14,19
12:20,23,25 13:16
13:22 14:13,15
15:4 17:25 18:8,9
22:18,19 23:4
25:14 26:15,15,17
26:20,21 27:7,8
27:10,17,20 28:1
28:2,5,9,10,12
30:25 31:6 32:19
33:1,3,4,13,15,19
33:20,20 34:22
35:2 40:13,16
41:16,17,18,21
43:2,18 47:3
48:14 50:16 51:10
52:19,20 57:16
59:9 62:10,10,21
62:24 63:6 64:21
65:3 66:10 67:7,9
67:14 68:13

**complaints** 6:4,9
19:15 32:13,14,20
33:25 50:2

**compliance** 13:12
64:11

**compliant** 14:14

**comply** 37:23
43:24

**comprise** 48:25

**concede** 40:8

**concedes** 26:25
33:18

**concept** 48:7

**concepts** 30:18
46:11

**concern** 32:11
33:25 38:4

**concerned** 11:7,8
41:10

**concerns** 11:11
12:8 14:8 16:2,3

17:23,24 18:13
38:25 39:2 40:5,9
43:23 44:1

**concession** 13:21

**conclude** 6:14
25:21

**concluded** 60:24
68:20

**conclusory** 19:4
43:13,19

**concurrence**
66:25

**conduct** 22:13
24:23,24 26:13
32:5,6 42:13 59:5
60:5

**conducted** 39:19

**conducting** 29:8
36:23 37:19 43:6
45:1 52:14 56:6

**confirm** 32:12
40:23

**confirmation** 13:1
38:15 40:11,20
41:6 42:22 45:7

**confirmations**
32:4,9 37:25 38:3
38:15,19 41:6
44:18 49:1 51:23
53:9

**confirming** 34:24
53:5

**conflates** 39:12

**conflating** 14:16

**conflicting** 33:13

**confronting** 48:8

**conglomerates**
53:14

**connection** 14:7
56:10 65:7

**consider** 6:22
7:25 11:20 19:17
32:23 33:12 38:5

considerable 33:2
consideration
  23:6
considered 13:11
consist 21:12
constitutes 29:1
  31:10
contacts 26:3
  58:10
contains 40:14
contending 32:22
context 5:23
  18:23 26:7,13
  51:12
continues 41:19
continuing 51:24
contract 61:1
contracts 61:11
contrary 40:9
  54:17
contrast 30:12
  45:6
contributed 25:18
control 24:2
conversation 7:22
conveyed 17:4
copies 60:22
copy 11:1
core 28:17
corp 57:9,24
  58:24 59:1
corporation 1:7
correct 5:13 6:2
  10:4 11:10 70:3
correctly 12:3,6
correlation 49:3
correspondence
  10:13,19,20 14:3
  14:6
correspondent
  57:3
corresponding
  56:25

cosmetic 38:23
couldn't 39:5
  42:23
counsel 51:2
  64:25 65:4 67:6
countenance 55:8
country 70:23
couple 15:20
  16:20,25 63:19
  64:14
course 27:1 63:14
court 1:1,15 4:3
  4:10,20,22 5:4,7
  5:11,14,20,25 6:3
  6:8,17,25 7:6,18
  8:9,20 9:5,8,15,20
  10:2,4,6 11:2,6
  12:19,22 15:4,13
  15:23 16:16 17:17
  17:22 18:8 20:13
  20:16,22 21:2,14
  22:15 23:10,18
  24:14 27:12 28:20
  28:24 29:11,22
  30:3,15,24 31:4,9
  31:9,12,12,13,17
  31:21 32:13 33:6
  33:9,14,17,21,23
  34:2,5,13 35:1,8
  35:13,19 36:1,5
  36:11,16,21 37:3
  37:9,11,17,20,22
  38:7,10,18 39:4
  39:12,15 40:1,10
  40:16,19 41:1,12
  41:16 42:20 43:9
  43:14 44:21 45:10
  45:18,23 46:2,5
  46:12,18 47:2,7
  47:11,15,17,23,25
  48:1,3,10,13,20
  49:5,12 50:11,18
  51:6,8,12,25 52:8

53:7,16,20,22
54:2,5,15,18,18
54:22,25 55:5,16
55:21,24 56:1,7
56:15 57:13 58:2
58:4,13,19,22
59:1,8,19 60:14
60:18,23 61:5,8
61:13,16,20,25
62:5,8,14,21,25
63:4,10,17,21
65:25 66:3,22
67:9,20 68:3,17
court's 61:3,6
cover 8:15 9:13
  9:14,18,22 22:7
  23:16
created 54:12
creating 56:19
credit 20:1 42:15
  42:16 43:1 65:4,8
  65:11,21
creditors 46:10
  47:1
credits 12:10
critical 13:14 19:3
cross 44:14
crux 49:10
culled 53:25
culling 54:5,7
culminated 39:20
culminates 32:6
current 11:20
custodian 24:11
customary 22:24
customers 11:9
  29:5 44:13,15
czm 43:20

**d**

d 3:14 4:1 69:1
daily 49:16
daimler 24:2 26:1

date 17:11 40:19
day 45:3 49:24
days 11:23 32:9
deal 35:10 41:24
  43:7 45:19 46:14
  52:14,22
dealer 12:2
dealing 34:20,20
  66:14
deals 12:5 35:12
  36:9 44:7,17
  52:25 54:14 56:19
  57:10
dealt 5:20
debtor 1:8 5:14
  35:20
december 18:6
decide 9:3,5,6
  42:17 54:25 55:1
decided 13:23
  16:8,11,13,18
  19:24 34:19
decides 43:7
deciding 9:1 55:9
decision 5:21
  25:23 31:13 37:7
  47:14,23 48:1
  60:21,22,23 68:18
decisions 24:5
declaration 57:17
  57:19 58:14
decline 61:25
declined 41:8
deeper 32:6 52:15
defendant 10:1
  16:15 31:14 38:6
  48:2,7 51:17 59:2
defendants 3:10
  4:5 7:4 8:13,18
  9:2 13:25 14:17
  14:18,19 15:18
  16:19 17:4 19:4,6
  19:22 24:1,7,11

26:6 27:10,22,25
28:7 29:2 32:10
32:18 34:23 35:3
35:6 36:25 39:19
39:21,22,24 41:21
42:13 44:6,16
47:18,24 48:9,24
49:24 51:4,20
53:13 56:5,9,25
57:5,10,11 59:4
60:2 62:22 64:2,2
64:16 67:24,24
68:1
**defendants'** 32:11
**defendant's** 4:12
  26:3
**defense** 5:12,12
  5:22 9:16,16 29:1
  29:21 30:4
**defined** 49:6 68:8
**defraud** 34:21
**delay** 34:21
**delayed** 37:25
**deliberate** 53:4
**deliberately** 34:24
**demonstrate** 64:1
**demonstrates**
  8:11 10:14
**deny** 9:8
**derivative** 23:12
**derivatives** 25:19
  58:7
**description** 69:5
**designed** 29:20
**despite** 41:19
**detail** 57:16,18
**detailed** 51:19
**details** 29:8 35:11
  43:24
**determination**
  8:24
**determining**
  29:23 30:4

**deviated** 22:14,15
  22:17
**didn't** 6:17 11:6
  16:8,16,24 17:12
  17:18 20:17 22:13
  28:1,5 32:21
  37:23 45:22 46:3
  59:10 64:15
**difference** 30:21
**different** 6:3 22:4
  25:1 27:8 33:11
  34:14 35:10,11,11
  42:8 44:13 45:4,9
  47:5 49:19,20
  51:21 56:19
**difficult** 12:5
**diligence** 16:10
  18:15 22:7,12,14
  22:20,25 32:20
  38:10 42:14,19
  43:7 45:1,7 51:22
  52:3,9,11,12,20
  52:22 53:7,8
**dipascali** 12:17
  32:15 38:11
**direct** 38:15
**directive** 52:17
**directly** 23:12
  31:11
**director** 42:12
**disagree** 33:6
**disclose** 41:7
**discovery** 40:14
  51:1,3,9,14,14
  60:12
**discuss** 29:18
**discussed** 14:24
  39:20
**discussion** 64:10
**dishonest** 31:1,6
**dismiss** 2:1 7:20
  8:25 10:9 13:24
  67:8,10,14,16,21

67:22 69:7
**dismissal** 4:12,15
**dismissed** 4:14
  13:20 65:15
**dispute** 24:3
**disregard** 32:10
  38:6
**distinction** 45:11
**distinguishable**
  14:6
**distribution** 29:5
**district** 1:2 5:20
  29:22 31:9,12
**dive** 32:6
**document** 57:21
**doesn't** 5:14,16
  8:5 9:17 12:9 14:4
  17:1 30:7,21
  33:12 34:19 38:20
  42:4 45:19 47:11
  50:17 51:18 52:3
  60:11 61:6,8
**doing** 14:9,10
  20:18 22:22,23
  39:7 45:7 46:23
  46:23 53:7,8
  56:22
**dollar** 42:15
**dollars** 20:1 35:3
  35:6 36:8 40:12
  44:11 54:11 65:16
  65:17
**domestic** 56:13
  57:25 59:23
**don't** 5:4,8,8 7:23
  8:9,20 9:10 11:2
  11:25 14:19 15:9
  16:3,3 17:3,16,16
  20:19 21:15 22:8
  22:10 24:18 25:7
  28:12 29:8,14
  30:1,3,8 34:7,15
  35:13,15 37:3

38:8 39:2 40:21
46:12 48:24 51:9
53:25 57:14 61:17
64:1 68:6,12
**downside** 21:24
  66:14
**draft** 14:15
**dresner** 16:12,18
**drop** 46:17
**due** 22:7,12,13,24
  32:19 38:10 43:7
  52:3,9,11,12 53:7

| e |
|---|

**e** 1:22,22 3:1,1 4:1
  4:1 5:3,11,17,18
  5:22 6:16 7:8
  29:17,19,24 30:3
  30:11,13 59:16
  61:1 69:1
**earlier** 64:10
**early** 42:6
**easier** 59:12
**ecf** 2:1
**economic** 64:25
**economically** 20:6
  64:18
**economics** 19:20
**ecro** 1:25
**effect** 19:5
**effectuate** 57:24
**eight** 32:9
**either** 35:13
**electronic** 70:3,6
**email** 39:21
**emails** 13:15 14:6
  40:4 45:1
**emphasis** 29:16
**employee** 13:17
  16:22 39:23 43:20
  43:20
**employees** 24:17
  25:18,20,21 44:10
  54:10 56:5 57:7

58:11 64:16
ends 48:3
engage 22:1 64:17
engaged 17:2
  19:22 21:7 22:21
  29:15 46:19 52:2
enter 19:25 20:9
  46:14
entered 24:11
enterprise 44:11
entire 23:16 39:9
  47:20 56:18
entirety 48:25
entities 15:6 20:24
  23:15 54:3
entitled 50:25
  51:1 70:4
entity 17:10 18:14
  35:21 68:14
equally 19:5
equity 54:18
  63:23
equivalent 23:7
esq 3:7,13,14
essence 32:18
essentially 43:16
establish 5:15,16
  14:18 22:8 60:12
established 8:17
establishing 60:9
et 1:13
evaluate 26:4
evaluated 15:9
event 33:7
eventually 40:6
evidence 45:2
  50:24
evident 47:19
exact 52:16 55:8
exactly 4:23 16:17
  31:9 33:22 45:20
  47:10 51:11 60:6
  65:11,22 66:5,6

example 14:7 18:1
  42:18 59:6,13
  64:5
examples 66:9
excerpt 10:25
  11:15,17
exchange 21:7
  23:9
excuse 66:23
executives 15:11
  43:21
exhibit 57:19 58:5
  58:13 59:12,13,13
  59:14 68:7,10
exhibits 59:25
  60:10 67:6,7 68:3
exist 30:1 40:12
existed 53:3
expand 19:24
  65:6
expanded 40:3
expectations
  28:15
expending 20:10
experience 19:18
expertise 50:9,15
explain 6:17 7:8
  20:20
explained 6:9
explaining 7:21
explains 45:18
  65:10
explanation 36:12
explicitly 52:19
  65:19
exploding 42:6
exposure 20:15
  53:3 65:15 66:11
extending 20:18
extent 46:24 53:8
extraterritorial
  22:19

eye 22:11,22

f

f 1:22 3:7
face 6:23
facia 60:12
facilitated 57:11
  60:3
facility 42:15,17
  43:1 65:4,8,11,21
fact 16:17 27:3
  30:25 52:11 64:18
  67:16
factor 27:19
factors 13:10
facts 9:24 49:17
  49:21
factual 27:8 67:13
fails 8:23
fair 27:22
fairfield 25:4
  59:20
fairfield's 25:6
faith 29:1,4,10
  30:6,15,24 31:4
  31:10,14,22 45:11
  46:2,5,6,14,21
fall 7:15
falls 7:21,21 25:11
familiar 11:3 19:2
far 27:5 28:5
  66:15
fauchier 17:8,8,9
  18:13,25 21:19
  50:5,7
features 25:23
feeder 20:13,15
  21:12,19 27:14,17
  27:24 35:4,9,14
  35:21 39:1 42:16
  42:19 45:5,8
  56:23 59:23,24
  63:13

fees 21:8 42:7
  44:10 53:10,15
  54:10 65:23 66:13
  66:15
fictitious 50:1
figure 12:11 45:24
  61:25
filed 4:19 40:16
  67:7
filing 33:2
financial 41:25
  64:20
find 23:4 56:9
findings 52:23
finds 48:1 60:9
fiore 26:2,5
firms 27:14
first 4:18 7:23 9:7
  10:12 17:15,18
  28:25 31:9,12
  47:16 48:3,16
  51:6,8 66:21 67:4
five 62:23
flag 7:3 14:14
  19:12
flags 10:7 19:2
  22:25 31:8,15
  44:25 50:6 52:12
  52:14,18
flesh 51:2
fluctuating 41:19
focus 15:20 24:23
  24:25 26:7 48:22
  68:14
focused 18:4
  30:13 49:8
focuses 27:9
focusing 26:2 28:3
fold 42:11
follow 52:18
followed 12:13
footnote 67:4

foregoing 70:2
foreign 56:22,22
  56:23
former 43:20
forth 22:6 63:22
forum 25:7 26:3,8
forward 16:11
  27:2 44:3 67:18
  67:19
found 29:22 41:5
  47:15,17 62:21
four 14:17 27:20
  27:22 44:6,16
fourth 8:16
frankly 8:4
fraud 7:5 8:8,14
  11:15 13:13 15:19
  16:6 17:3,19
  18:14 19:23 20:7
  21:7 22:1,11,22
  22:24 27:3,5,6,21
  28:8 29:6,8,9
  30:20 31:8,16
  32:1 34:24 35:23
  35:25 36:2 37:15
  37:17,18,22 38:1
  38:18,18,22 43:5
  44:2 45:2,11 46:9
  46:20 48:5 53:3,5
  64:3,9,12
fraudulent 7:10
  30:19 34:3,7,12
  34:13,20 44:20
  47:12,25 52:2
friehling 12:18
frivolous 60:8
front 47:24
fti 60:21
full 10:14 43:5
  67:12
fund 6:6 10:8
  13:11 18:15 21:12
  25:19 26:16,16,18

26:19 27:17 35:21
  39:1 41:9,9,13,14
  42:16,19 45:8
  49:20 52:13 56:23
  58:1,7 62:25 63:2
funds 6:8 7:14 8:8
  20:13,15 24:13
  27:24 29:4,9
  30:22 35:4,9,14
  44:20 45:5,9 46:8
  49:19 51:21 56:14
  56:20 59:23,24
  63:13 65:14
further 19:11
  63:22
futile 4:24,25 8:12
  9:9
futility 4:22 55:9

g

g 4:1
game 15:25 44:5
gears 41:23
gee 32:21 38:20
  39:2
general 23:23,24
  30:17 51:8 63:24
generalizations
  57:13
generally 30:24
gentleman's 17:3
getting 11:22 22:3
  37:20 44:17,18
  45:4 49:13 52:12
  56:19 66:1,3
gianferrara 17:6
  50:22
give 50:4 57:16,18
  66:11
given 36:20 48:17
  55:3
gives 50:23
giving 20:10 21:5
  32:8

glad 52:10
go 4:10,17 6:18
  7:25 10:2 15:14
  16:11 28:11 33:24
  34:10 37:1 38:16
  41:18,19 42:17,24
  44:3 47:4 49:18
  54:17 55:16 59:25
goes 12:12 34:22
  46:6 56:24
going 6:18,22,25
  7:25 9:13 13:4
  23:20,24 27:13
  37:4 40:22 42:5
  46:24,24,25 47:13
  47:18 49:2,22
  51:2,20 54:16
  67:12,18 68:8
gold 55:15
good 4:4,6,7 9:15
  23:19 28:22,24
  29:1,4,10 30:6,15
  30:24 31:4,10,14
  36:13 45:10
google 55:19
gotten 4:19
gottlieb 3:9
granite 55:13
grant 4:25 8:25
granted 58:24
greater 66:15
green 1:16
grounds 4:15 7:24
  9:9 65:15
group 14:16 25:19
  53:25 58:7
grow 44:7,12
guess 6:19 16:14
  24:20 43:11 53:16
guidance 24:6
guide 26:10
guy 40:2

générale 15:23

h

hadn't 62:21
hand 13:20
happen 38:16
happened 16:4
  24:24 36:8 39:18
  41:24
happening 38:16
  42:23 46:7 64:25
  65:11
harbor 5:3 6:16
  7:16 29:21 61:10
harley 42:16,19
  65:13,14,17
harley's 65:20
hasn't 8:12
hated 16:23 17:1
haven't 6:21
  26:11
hear 9:11 44:2
heard 29:2
hearing 2:1 69:7
heavily 14:16
hedge 23:12
held 11:13 16:9
  31:9,13 38:12
  60:13
helpful 28:14
  58:17
here's 20:6
herring 33:5
he's 11:22 17:1,2
  20:7,7 21:7 29:14
  45:11 46:24 47:21
high 10:18 12:9
  15:18 16:5 20:7
  21:7 22:1,9 29:7
  31:8,15 36:22
  48:15 64:3
higher 49:18
highly 32:5 45:12

**hill** 24:5,10 26:9
  56:21
**hinder** 34:12,21
**hindsight** 50:1
**holding** 48:3 61:4
  61:6,8
**hon** 1:23
**honesty** 30:25
**honor** 4:4,6,7,11
  4:17,18,23 5:5,19
  6:7,11,13,14,23
  6:24 7:12 8:2,10
  8:16 9:4,12,23
  10:12,16,25 11:10
  11:15 12:8,12,21
  12:25 13:8,14,19
  14:5,6,12 15:11
  15:15 16:1,5,17
  17:5,12 18:1,10
  18:12,18 19:1,2,5
  19:10,14,15,19,21
  20:4,20 21:4,10
  21:20 22:4,6,18
  23:2,5,16,19
  28:22,25 29:16
  30:10 31:2 32:25
  33:5,12,16 34:10
  34:18 35:5,18
  36:7,14 37:6 38:2
  38:23 39:8,17
  40:8 41:4,14,21
  42:3 43:12,17
  44:23 45:4,16
  46:1,17,22 47:4
  47:13 48:6,22
  49:10 50:20,21
  51:1,11,16 52:6
  52:10,16,18 53:6
  53:12,17,21 54:4
  54:20 55:8,11
  56:4,13 57:4,15
  58:6,16,21 59:11
  59:18 60:7,9,11

  60:19 61:18 62:9
  62:11,17 63:7,13
  63:16,18,19 64:5
  64:9,16,23,24
  65:10,13,19 66:5
  66:10,17,18,19
  68:16,19
**honor's** 47:19
**horowitz** 12:18
**horribles** 19:5
**hostetler** 3:3
**hostettler** 4:8
  28:23
**huge** 42:6 55:14
**huh** 53:23
**hundreds** 14:2
**hurt** 23:1

**i**

**idea** 54:15,18
  62:11
**ideas** 46:6
**identified** 11:10
  13:10 27:23
**identify** 16:3,4
  22:25
**illegal** 48:8,10
**illegitimate** 17:14
**illustrates** 63:23
**immediately** 44:3
**implausibility**
  41:22
**importance** 42:2
**important** 12:2
  17:11 21:4 30:13
  38:24 42:10
**importantly** 26:1
  27:6 33:5 42:16
  43:2 44:1,12 50:7
  58:11
**impossible** 42:23
**impressive** 55:14
**improper** 32:20

**improperly** 4:19
**imputable** 50:10
**imputation** 50:22
**imputed** 50:16,17
**inability** 32:11
**include** 57:15
**includes** 8:5,7
  26:15 42:15
**including** 23:1
**inconsistent** 33:19
**incorporate** 6:12
**incorporated** 6:4
  7:13 21:21 24:1,8
  32:18
**increase** 53:3
**incurring** 20:24
**independent**
  12:15 40:24 41:1
**indexed** 12:7
**indicate** 40:4
**indicates** 14:3
  66:25
**indication** 17:7
**indicative** 36:7
**indicators** 43:5
**indicia** 32:1 34:23
**indiscernible** 9:13
  9:17 15:16 24:6
  24:10 26:10 27:3
  61:9,21 62:19
  66:24
**individual** 13:17
**individuals** 14:8
  16:21 63:3
**industries** 29:20
**industry** 29:22,25
  64:21
**infer** 17:24 39:4
  49:12
**inference** 10:9
  22:23
**information** 17:9
  17:13 42:21 44:19

**improperly** 45:3,4,7 49:7,9
**inherited** 58:9
**initial** 5:12,24,25
  6:20 7:15,19 23:7
  29:13,23 34:15,16
  60:24 61:10,14,21
  62:3,15,21,24
**inquiries** 12:13
**inquiry** 14:14
  31:17 32:6 39:19
  68:14
**insolvency** 30:19
  46:7
**instance** 17:18
  50:5
**instantaneous**
  38:19
**instructive** 11:16
**insufficient** 6:10
  7:11 8:1 62:1
**insurance** 26:16
  27:16,18,25
**intended** 26:6
**intentional** 7:9
  9:16
**interaction** 63:15
**interest** 20:5 21:8
  65:22 66:13,15
**interested** 20:22
**interesting** 10:20
  12:12 13:21 20:3
  20:21 22:13,17
**interestingly**
  13:19 18:19
**interview** 43:20
**interviews** 40:14
**invest** 16:8,13,18
  16:24 20:11,25
  21:6 34:3,6
**invested** 18:14
  22:3 23:12
**investigation** 51:5

**investing**  34:8
  36:17 66:8,10
**investment**  13:13
  21:19 35:22 39:6
  50:8,14,15
**investments**  16:11
  18:21,24 19:25
  22:4 50:21 53:2
  65:13
**investor**  1:6 68:10
  68:11
**investors**  35:4
  41:8 68:8
**invitation**  61:25
**involved**  43:21
  47:25
**irrational**  20:6
  21:25 64:18
**irrelevant**  16:19
**isn't**  5:18 17:23
  39:3,4 41:10 42:7
  47:7 59:1
**isolate**  49:20
**issue**  5:20 9:22,24
  13:3,4 24:24
  25:15 27:24 28:14
  30:19 31:5,24
  35:7 45:10 55:1,4
  55:8 56:2,11
  60:14 64:25 66:21
  68:4
**issues**  4:17 5:6
  9:19 11:4 23:21
  64:11
**it's**  4:25 5:17 6:6
  8:1 9:9,16 10:13
  10:19 11:13,16
  12:2,16 13:8,21
  14:5 18:2,3,5,6,10
  18:16,20 20:3,6,7
  20:21 21:18,24
  22:17 23:6 26:5,9
  30:17 31:4 33:1,4

34:7,13 36:7,14
  37:15 38:9,18
  42:16 43:10,19
  44:5 45:16,24
  46:3,15,19,25
  47:11 49:6,19
  50:18,19,21 52:11
  55:9,10 57:22
  58:3,11,14,21
  59:6,13,14 62:1
  63:2,2 68:9,11
**i'd**  28:25 60:19
  61:18
**i'll**  4:15 9:10
  10:10,12 19:13
  20:20 21:2 23:2
  29:17 46:17 57:21
  58:6,11 62:2
  64:14 68:17
**i'm**  5:15 6:18,22
  6:25 7:25 10:25
  11:3 16:25 20:22
  23:20,24 29:9,9
  30:11 31:3 37:14
  40:1 45:23 46:18
  47:9 52:6,10 54:7
  55:22 58:13,17
**i've**  49:6 63:17

**j**

**joanna**  3:7 4:7
  28:22
**joint**  17:10 18:19
  50:5,7,9,11,14,18
  50:19
**jpmorgan**  21:15
**judge**  1:24 5:19
  25:2 66:25
**judge's**  25:2
**judgment**  16:9
**june**  17:11 18:4
**jurisdiction**  8:17
  8:22 9:1,4,7,10,22
  23:21,22,25 24:4

24:7,21,22 25:25
  26:5,11 28:18
  55:1,5,7,11 60:9
  60:12 67:1,5,10
  67:18,21 68:4
**jurisdictional**
  66:21
**jurisdictions**
  23:23

**k**

**keep**  36:8 53:10
  53:11
**keeps**  42:4
**kind**  28:17 29:9
  44:19 57:13
**kinds**  64:10
**knew**  8:8 10:10
  19:4,7 26:6 32:7
  34:11,23 35:22
  43:6 44:24,25
  45:12,24 46:19,20
  48:22 49:8,12
  63:5
**know**  4:11 5:7
  7:18 8:20 11:3,22
  12:1,22 14:8 19:8
  19:14 20:18,19
  21:14 23:23 29:6
  29:8,13 30:8
  32:21 34:7,14,15
  34:16,16 35:5,13
  35:15,19 37:3,3
  37:22 38:8 40:3
  41:2 44:1,25 45:2
  46:3,21 47:2
  48:20,24 49:5,13
  49:24 53:25 57:14
  60:23 61:5 62:4
  62:14 63:5 67:20
  68:6,12
**knowing**  43:5
  45:11

**knowledge**  6:15
  7:4,16 8:3,6 17:14
  18:21 30:7,8,12
  31:20,22,24 36:19
  37:7 43:16 50:9
  50:13,17,18
**known**  44:22
**knows**  30:1 34:7
  43:6 49:22 51:3

**l**

**lack**  8:22 29:4
  31:10,13
**lacking**  42:3
**laid**  10:20 23:5
  32:1
**largely**  22:8
**late**  11:23 51:20
**laughter**  55:18
  61:7
**laundry**  22:20
**law**  13:12 25:6,24
  27:9 37:24 50:9
**laws**  59:17
**lay**  5:5,6
**leap**  64:12
**leave**  4:21,25 9:9
**led**  52:13
**left**  11:25 12:1
**legacy**  14:7 23:5
  47:15 48:10 52:1
**legal**  51:1 55:6
**legally**  6:9 7:11
  51:9
**legitimate**  17:12
  18:15
**lending**  35:8,14
  35:15
**letter**  40:21
**letters**  55:15
**let's**  10:2 38:7
  51:6
**level**  39:23

leverage 20:2,18
  35:3,12,13 41:23
  42:1,5,6 44:5
  45:22 52:14 54:12
  54:13 56:19 57:1
  58:7 59:22 66:8
leveraged 36:9
  65:6,13
liability 30:4
liberty 3:11
licensed 39:6
life 54:14
lifland's 25:2
light 27:21
limitations 23:21
  28:18
limited 26:19 28:3
  28:16 67:9,13
line 26:10
lines 28:6
linked 16:21
liquidate 13:9,13
list 22:20
listen 42:25
litigation 62:22
little 15:15 38:10
loan 21:8 34:2
  35:21 65:18 66:6
  66:13
loaning 34:5
loans 20:13,14
  23:15 65:12,24
located 25:4,5
longer 35:7
look 5:2 10:19
  19:16 25:1 27:7
  32:25 52:17 53:12
  61:17 68:13
lookback 26:22
  26:24
looked 11:2 42:21
  49:14,19

looking 32:3,4
  51:22 52:15 53:9
  58:2,5,13,17
looks 6:13 53:6
lose 21:20
losers 53:16
losses 21:22
lost 53:18 54:14
lot 21:24 45:14
  51:13 66:1
low 39:23
lower 30:6
luxembourg
  13:12 37:24 39:6
lying 46:10,23
lynchpin 13:15

## m

m 1:23
machine 55:16
mackinnon 3:14
  4:5,6 9:21 23:19
  23:20 24:22 27:16
  28:21 66:19,23
  67:12,23 68:7,19
madoff 8:14 10:11
  10:15,18 11:14,15
  11:19 12:2,4,6,10
  12:10 13:13 14:9
  15:3,9,19 16:3,8
  16:13,18,23,24
  17:1,2,12,14,18
  18:16,21,24 19:9
  19:22,25 20:7,11
  20:15 21:6,13,18
  21:19 22:2,3,21
  27:3,6,13,21 29:7
  32:8 36:22 37:12
  37:19,23 39:5
  41:7,8 42:16
  43:23 44:6 45:13
  45:24 46:19,22
  47:24 48:16,22
  49:25 52:24 54:14

57:9 59:5 60:5
  61:10 64:9 65:20
  66:11
madoff's 48:25
mailroom 40:2
main 49:21
major 60:21
making 20:4,13
  20:14 32:8 41:20
  48:16,18 53:10,11
  56:7 61:10 64:7
  65:24 66:13
managed 63:2
management 12:4
manager 53:2
managing 42:12
map 4:16
maps 55:20
march 1:18
marco 4:8
market 41:19
  42:6 49:3,23
marketing 57:1
material 37:16
  46:24 48:16
matter 1:5 9:17
  27:20 46:7 47:15
  50:9 51:18 61:6
  70:4
matters 48:5
mean 17:17 35:4,8
  47:11 63:24
meaningful 30:21
  51:3
means 17:1 20:18
  20:19 30:15,24
  35:13,14,16 37:3
  48:7
mechanics 35:10
meet 6:16 13:18
  14:4
memorialize
  52:23

mention 16:12
  22:6 64:14,15,16
mentioned 5:18
  5:18 23:20 29:12
  63:1
mentions 21:22
mere 23:6
merit 8:24 60:21
merits 67:1,4
metzeler 28:14
  62:19
mill 7:3
million 26:17
  42:15 53:20
millions 40:12
mineola 70:25
minute 22:12
misstated 37:16
misstatement
  39:17
misstatements
  48:17
molina 4:9
money 20:10 21:6
  21:9 26:6 29:3,5
  34:2,6,9 35:8,14
  35:15,21 41:20
  51:24 53:11,18,20
  53:23 57:2 64:7
  66:4,13
monies 27:24
morning 4:4,6,7
  23:19 28:22,24
motion 2:1 4:12
  4:20 6:9,18,22 7:6
  7:7,18,19 8:25 9:8
  10:9 32:18 55:1
  60:13 67:8,10,13
  67:16,21,22 69:7
motions 55:2
move 7:23 8:9
multi 42:15

multiple  66:9
musings  39:23

**n**

n  3:1 4:1 69:1
name  15:1 23:19
  39:13 68:11
named  17:7
narrative  22:5
  27:8
nature  34:25 48:8
necessarily  20:5
  30:3 34:13 67:9
necessary  7:16
need  11:1,23
  29:18 55:16
negotiations
  43:22
never  18:14 20:5
  27:17 44:13 54:13
new  1:2,17,17 3:6
  3:12 24:12,13,18
  24:24 25:3,4,7,11
  25:14,16,20 26:13
  26:15,19,22 27:10
  28:8,12 42:1
  56:20,21,23,25
  57:1,1,2,7,8,8,19
  58:8,10,10,11
  59:4,6,18,22 60:2
  60:3,3,4,11 67:25
  68:5,15
newspaper  54:5
nexus  25:11 60:10
nine  67:14
non  18:14 60:8
nonparty  15:2
normal  22:16
normally  51:14
note  48:9
noted  38:4
notes  47:23
notice  14:14 19:6
  27:10,12,18 28:10

28:13 31:17,18
  62:12,22,23 63:6
  63:11,24
notwithstanding
  47:17
number  32:8
  36:18 62:20,20
numerous  19:10
  31:2 41:15
ny  3:6,12 70:25
nygass  58:12

**o**

o  1:22 4:1
obligations  20:24
obligor  21:15,15
obligors  20:22
obviously  14:1
  46:25
occurring  32:10
offers  29:21
office  24:17,18
  25:13,18 56:5
  57:7
officers  57:23
offices  60:2
official  39:24 70:3
officials  17:15
oh  39:2
okay  5:10 8:10
  9:20 11:11 15:13
  31:21 33:14,17
  37:10 38:7 55:24
  62:8
old  70:23
once  67:16
ones  14:24 63:5
opens  41:25
operating  13:12
operation  39:9
operative  27:3
opinion  25:2,2
opinions  10:16
  19:17

opportunity
  11:20 38:5 42:7,8
  43:8
opposed  22:2
  24:25
opposite  52:16
opposition  25:24
  57:17
option  14:1 48:18
  49:21,22
options  42:23
oral  47:19
order  11:19,23
  38:5 55:1
orders  11:21,22
oreades  10:8,21
  11:1,17 12:1,14
  12:19,23,25 13:9
  13:11,22 19:23
  22:19 32:3,23,25
  33:10,13,15,19
  38:17 39:1,5,9,10
  40:6,13 41:19,20
  41:22,24 43:6
  44:24 50:2 52:13
  52:16 64:6
oreades's  12:15
  12:20 41:18
organized  59:16
original  26:17,20
  26:21 27:7,8,10
  27:17,20 28:1,2,5
  28:9,10 64:15
originated  56:20
outlaid  20:11
outlay  21:9
outline  35:11
outside  5:2 26:23
overall  19:19 33:1
overcome  6:16
overstate  42:2

**p**

p  3:1,1 4:1
page  7:13 58:2,6
  58:14 59:13,14
  69:6
pages  35:11 51:19
  58:14
paid  46:13 47:9
papers  19:14
  57:17
parade  19:5
paragraph  11:17
  35:1 43:2 47:5
  52:20,22 53:1
  59:16 65:3,10
paragraphs  12:24
  49:11
parent  24:20
paribas  1:13 2:1
  12:17 13:2,17,22
  13:24 14:22,23,25
  15:3,12,18,22
  16:2,9,15,19,22
  17:4,10,15 18:17
  18:22,24 19:22
  22:21 23:1,15
  24:16,20 25:9
  32:1,2,17 33:25
  34:22 35:24 38:3
  38:25,25 42:3,11
  42:12 43:3,21
  44:19 49:21 55:14
  56:20 57:2,20,23
  57:24 58:19,23
  59:1,8,15,21 60:1
  64:16 65:5,12,16
  65:21 67:25 68:5
  68:15 69:7
part  6:24 18:8
  33:1 34:17 35:12
  59:22 63:14 67:7
participants  28:8
  29:21

participated 15:6
participation 45:14
particular 19:13 41:2 51:17 64:8
particularity 9:25 19:9
particularized 14:20 16:5 18:2 64:1
particularly 51:13 64:3
parties 14:2 15:21 20:10 22:2 35:15
partners 17:8,10 50:5,7
partnership 50:7
party 15:2 16:12 20:4 40:14 50:16 50:16
party's 24:3
pass 43:7
passed 27:23
patch 12:21
pay 23:15 34:8 46:10 47:1 66:6
payable 68:5
payments 23:14 60:25 61:11 65:21 65:23
peace 3:13 4:4,4 4:11,21,23 5:5,10 5:13,19 6:2,6,11 6:23 7:2,12 8:2,10 9:3,6,12,18,21 10:3,5,12 11:5,10 12:20,24 15:8,14 15:25 16:17 17:20 18:1,10 20:14,20 21:1,3,17 22:17 23:11 35:19 60:17 63:19,22 66:2,5

people 15:21 16:2 49:4 64:20
percent 22:3
perfectly 55:10
period 5:2 26:22 26:24
periodically 22:25
permanent 56:5,5 57:7,7
person 40:21 49:8
personal 8:17 9:1 9:3,6,10,22 23:22 23:24 24:4,7 25:24 26:4,11 28:17 54:25 55:5 66:20 67:1,10,18 67:21 68:4
personnel 25:13 60:3
perspective 20:9
phonetic 5:21 10:13 16:12 24:13 31:13
picard 1:11 4:3
piece 13:14
pieces 50:24
place 11:19 24:1 59:17
places 24:9
plain 7:15 8:4
plaintiff 51:14 56:22
plan 4:17
plausibility 19:17
plausible 19:19 22:23 36:11 39:4 50:24
player 49:21
plaza 3:5,11
plead 19:8 21:17 50:15 51:9
pleaded 47:16 48:4 64:19

pleading 14:16 19:6 33:9,10,11 39:12 40:4 41:4 43:15 63:11,12
pleadings 6:18
pleads 48:5
please 4:2
pled 8:13
pnb 38:3,25,25 42:3 44:19 59:8 59:10,15,16,21 64:16
point 5:19 6:11 8:9,10,14 18:12 19:1,3,13 23:2 29:19 30:12 33:10 33:24 45:6 47:1 62:2 64:23 65:2 66:17 67:5,23 68:2
pointed 64:9
points 8:16 62:9 63:20
policy 53:1,2
ponzi 18:5 21:19 23:1 29:3,15,16 30:7,12,22 34:17 36:17,19,19,23 37:19 46:8,20 47:14 66:14
portfolio 26:16,19 27:16,18,25 28:3
posit 19:20
position 46:25
possess 7:4 16:15
possession 16:13
possibility 47:8 49:25
post 26:9
posted 12:3
posture 55:3
potential 66:14

practical 30:21
practice 11:20
preferential 62:18 62:20
present 56:23
press 44:4
presses 56:24
presumably 43:11
pretty 8:4 40:19 53:22
previously 63:1
price 49:16
prima 60:12
principle 24:1,3,8 51:8 59:17
prior 10:21 39:11
private 16:22
privity 15:21
probability 10:18 12:9 15:18 16:6 20:7 21:7 22:1,9 29:7 31:8,15 64:3
probably 34:18 68:12
problem 16:23 33:14 34:5 38:7 40:7
proceeding 31:11 33:1,4 55:9
proceedings 33:4 68:20 70:4
process 11:23 60:15
proffer 12:23 22:19 32:24 33:11 33:21 62:10
profile 44:4,12
profit 41:12,14
profitable 36:20 41:9
prominently 25:24

prong 47:16 48:3
proper 11:9
proposed 52:23
protect 29:24,25
protection 1:7
    21:11
proves 27:4
provide 24:6
provided 12:16
    35:3 57:17 65:18
provider 65:7
providing 20:1
    66:8
provision 30:18
provisions 25:6,7
proximity 51:19
public 54:7
pullan 2:25 70:2,7
purchase 42:25
purported 8:19
    10:22 65:2
purposes 10:9
pursuant 58:24
pushes 45:17
put 4:12 11:18
    22:19 27:2,10,12
    28:10,13 62:21
    63:6,11 67:14,17
    67:19

**q**

question 8:20
    10:14 11:14 24:4
    35:1 37:12 43:14
    54:22 66:20
questions 28:19
    52:15 54:20 63:16
quickly 60:20
quite 20:17

**r**

r 1:22 3:1 4:1
raise 4:18 5:22
    8:11 18:12 55:8

raised 7:24 38:25
    47:19
raises 10:6
raising 12:8
rakoff 5:20
range 49:16
reach 66:20
reaching 27:5
    28:6
reaction 39:22
read 5:7 10:13
    11:15 22:18,18
    33:15,18 65:10
reading 28:2
    33:15
real 14:8 38:3,15
    40:25 41:6 45:1
    53:22 66:3
realize 32:5
realized 42:23
realizes 42:22
really 6:6,17,21
    13:15 14:13 15:20
    21:10 24:23 25:23
    26:2,9 27:6,9 33:5
    38:20 40:3,23
    43:14 48:13 61:9
    63:23
reason 6:21 18:4
    25:20 39:9 43:3
    45:20 64:17
reasonable 17:24
reasonably 23:7
reasons 4:25
    13:10 24:25
recall 12:22
receive 67:10
received 12:25
    25:15 27:15 35:6
    36:9 63:14 64:19
    65:16
recognize 49:25

recommend 52:21
record 18:7 67:13
recording 70:3
records 63:9
recover 5:2,17
recoverable 29:4
recovery 31:11
red 7:3 10:7 14:14
    19:2,12 22:25
    31:7,15 33:5
    44:25 50:6 52:12
    52:14,18
redacted 68:9,11
redeemed 23:8
    36:13
redemptions
    36:11 57:25 66:1
    66:6
reduced 65:15
refer 32:18
reference 6:4,12
    7:13 21:22 29:19
    32:19 60:20 62:4
referenced 65:19
reflect 10:23 12:9
    17:1
reflected 41:20
refute 18:22
regarding 14:22
    14:23 22:20
regardless 43:19
    48:3 54:9
regular 49:4
regulators 41:8
regulatory 11:3
    37:24 40:7 64:10
reiterate 68:2
reject 52:21
rejected 18:16
relate 27:1,3
    59:19
related 11:11
    21:13 44:7 50:20

52:22 56:6 59:5
    59:20 60:5
relates 24:3
relating 13:23
    67:21
relation 18:21
    27:1,9 57:9 62:11
relationship 50:8
    56:2
relative 10:22
relayed 11:11
    17:13 18:17
relevant 30:4
relies 14:16
relying 62:19
    63:23
remain 15:15
remember 24:19
    65:4,14
remind 58:6
removes 10:22
renaissance 16:14
    16:15 47:20
repayments 65:24
repeat 34:4 52:6
reply 7:12,24
report 16:14,15
    32:7 39:20,22,24
    47:20,20
reported 42:24
reporting 50:1
reports 48:22
representative
    17:8
representatives
    15:5,10
represented 7:19
required 18:15
    23:6,7
requirement
    29:11,12 34:14
requirements
    37:24

requires 31:14
requiring 48:9
reserve 68:18
resolved 60:15
respect 8:6 9:23
9:25 14:11,21,25
17:5 18:19 19:11
19:20 22:2 24:19
28:15 43:9 48:11
respectfully 49:17
50:24 63:7
respective 11:24
respond 63:19,20
response 32:21
rest 14:13 19:2
result 21:23 23:12
61:9
retain 54:16
retained 54:10
retainment 66:12
return 21:9 47:14
returns 41:18
48:18 49:3
revealed 18:6
21:20 23:1
reversed 66:24
reward 36:15
46:15,16
rid 27:25
right 5:15,16 6:11
9:10 11:5 16:6
19:7 20:11 21:8
33:23 36:13 37:20
40:18 42:20 48:12
50:12 55:13 59:9
61:18 62:2,8,17
63:11,12 64:13
66:2 68:17
rises 44:4
risk 21:24 36:14
36:16 45:16,17,21
45:23 46:15,16
50:21 53:3,13

66:14
road 4:16 70:23
roadmap 9:13
rockefeller 3:5
rose 55:14
routine 22:24
routing 56:14
57:2
rule 43:18,18,25
ruled 19:10
rulings 69:4
run 7:2
running 32:3
44:24 47:24
runs 54:17

**s**

s 3:1,13 4:1
s.a. 1:13 14:25
15:3,12
s.a.'s 2:1 69:7
safe 5:3 6:16 7:16
29:21 61:10
safeguard 29:20
sales 11:8
santa 65:4,8,12,18
satisfy 29:11 52:4
savings 54:15
saw 68:3
saying 11:22 17:2
23:25 32:21 44:24
46:13 48:17,18,22
55:22 63:5 64:6
says 8:8 11:16
18:23 20:17 40:21
43:1 47:25 58:16
65:19
scale 24:16
scenario 52:5
scheme 18:5
21:20 23:1 29:3
29:15,17 30:7,13
30:23 34:17 36:17
36:19,20,23 37:19

46:8,20 47:14
66:15
seated 4:2
second 8:10 24:15
24:15 60:23 67:2
67:3
secondly 51:12
secretive 37:13
section 29:1,19
secured 65:12
securities 1:6
10:15,18 11:12,14
12:17 13:2,2,4,17
13:22,24 14:24
15:19 16:7 17:2
17:19 19:10 20:8
22:10 29:20,25
30:1,14 32:2,17
34:1 35:23 36:6
36:24 37:14 38:3
38:12,25 44:19
45:12,13,25 47:21
48:2 57:8,24
58:24 59:1,8
60:25 61:11 64:4
security 25:11
42:13
see 18:13 22:20
32:21 38:14 42:14
48:25 49:15 52:14
53:12 55:13 60:1
66:9
seeing 44:18
seeks 5:1 12:14
seen 49:6 67:16
sees 42:19
segregated 32:17
38:12
sell 44:14
selling 41:25
send 38:19
sending 37:25

senior 15:11
17:15 39:23 65:12
sense 19:18 28:4,4
45:15 48:6
sentence 10:23
11:24 61:23
separate 29:12
33:3 57:5 62:16
separately 5:14
5:16 12:18
serious 44:5
served 65:20
service 12:17
60:15
services 13:2,17
13:23,24 14:24
25:11 32:2,17
34:1 38:3 39:1
42:13 44:14,20
64:20
set 22:6 64:18
sets 23:4
settled 5:23
settlement 60:25
61:11
seven 11:23 32:9
49:24
seventh 55:11
shared 17:14,16
17:16,23,24 18:3
18:3,4,5 39:25
shares 21:13 23:8
23:10,13,14
short 7:15,21,22
shouldn't 16:9
29:25
show 6:20 7:6
10:17 22:10 24:19
24:20,24 26:12
50:25 52:4 56:8
59:12 60:10
showing 41:15
60:12

**[shows - take]**                                                          Page 16

shows   12:14 34:22
    41:18 59:6
shut   13:9 19:23
    39:10 41:22
shutting   39:15
sign   45:2 56:2
significant   14:5
    21:11
significantly
    25:25
signs   29:6
similar   25:17
    54:19
simply   7:20 49:13
single   53:2
sit   23:2
sitting   54:15
six   28:11 62:7
skyscraper   55:13
sliding   24:16
small   21:9
smb   1:3,10
socgen   16:2 42:18
    43:1,3,22 44:2
    45:6,19,20,21
société   15:23
sol   26:14
sold   38:8,9
sole   20:24 35:21
solved   40:7
somebody   15:24
    17:23 34:6 56:24
    68:12
soon   53:22
sophisticated   49:4
sorry   5:15 31:3
    52:6 58:21
sort   4:16,16 7:2
    13:20 14:3 15:1
    17:5 25:8 28:16
    39:12 49:6 52:2
    64:22

sound   70:3
sounds   38:19
southern   1:2
special   24:20
specific   13:16
    14:20,22,23 23:24
    24:4,22 26:12
    29:8 43:10,14,15
specifically   5:21
    29:20 30:13 36:10
    52:24
specificity   18:18
specifics   48:9
speculate   63:24
spelling   17:25
spend   15:15 23:24
spending   7:22
spoke   35:20
ssc   49:2
standard   6:15
    10:15 13:18 63:24
standards   22:16
standing   53:17
start   23:25 47:5,6
    51:18 60:8
starting   44:21
starts   52:1
state   8:23
statement   8:7
    54:8
statements   19:7
    32:4 44:17 48:17
    49:1,13,14 53:10
    63:25
states   1:1,15 39:7
statute   23:21
    28:18
steer   31:23
stems   32:11
step   10:12
steps   53:4
stipulation   60:16

stocks   32:12,16
stone   55:14
stop   24:14 37:9
    51:6
strategy   49:2
stream   26:4
street   55:12
stress   66:7
strict   52:21
structure   21:4
structured   21:23
stuart   1:23
subject   43:18
    45:16 59:9
subjective   10:17
    10:23 12:9 15:17
    19:9
submit   33:21
submits   60:8
submitting   67:15
subscription
    57:20 58:1 59:15
    59:21
subscriptions
    57:25
subsequent   5:11
    5:17,22 23:5 30:5
    30:11 31:5 43:17
    54:16 56:16,17
    60:6 61:17
subsequently
    27:14 28:13
substance   35:2
    40:25
substantial   42:4
    44:9 53:4
successful   39:1
sue   5:15,16
sued   13:22 14:2
suffered   21:22
sufficiency   55:5,6
    60:15

sufficient   9:24
    41:10 51:9 60:8
suggest   31:15
suggested   31:8
suggesting   40:1
    55:21
suite   70:24
supports   10:9
    64:22
suppose   9:8 68:11
supposed   40:23
    46:23
supposedly   18:20
    25:18 28:7
supreme   61:3,6
sure   11:12 16:25
    30:17 31:23 33:8
    37:21 51:23 53:10
    54:24 63:21
surely   12:4
surprised   62:12
suspect   20:7
    29:14 32:5 51:25
    52:1,8
suspected   35:25
    37:1 45:13 46:19
    46:22 47:18 48:2
    48:5 64:2,9
suspecting   37:8
suspects   48:7
suspicion   36:22
    43:16 48:16
suspicions   19:22
    21:6 22:9,24 53:5
    64:12
switch   41:23

**t**

tacit   13:21
take   4:16 14:12
    19:17 29:3,5 44:6
    44:7 52:4 55:21
    55:22

taken 47:20 53:4
talk 13:8 15:21 16:20,21 19:14 23:20 41:21 64:5
talked 28:6 40:5 62:15 64:24 65:5
talking 14:8 28:3 33:6 37:4 39:24 53:22 56:13 58:8 66:7
talks 24:16 28:15 59:16 65:3
team 18:15 52:21 52:22
teams 51:22
telephone 16:1
tell 4:16 7:6 56:1
telling 8:1 54:2
terminates 10:7
terms 9:12 21:9 38:2 62:15
test 14:4 63:10,10
thank 4:10 23:18 28:20 63:18 68:17 68:19
thanks 4:11 28:21
that's 6:3 7:24 8:14 10:4 13:14 14:25 16:5 17:5 17:20,20 18:24 20:5 21:10,14 23:7 24:23,25 25:9,22 28:8,17 29:24 31:5,17 34:14,18 37:6,14 38:7,18,21 39:17 41:4,20,23 45:20 46:14,15 47:19,21 48:1,19 50:13 53:2,24 58:17 59:22 63:10 64:7 65:18 66:3,6,13 68:15,16

theory 7:3 26:4 28:6,8
theresa 2:25 70:2 70:7
there's 8:2,22 10:17 15:18 18:18 18:22,23 21:6,25 24:15 25:12,19 26:17 29:7 30:5,8 33:19 36:5 42:6 44:4,4 46:13 47:8 48:19 49:23 52:17 56:22 64:21 66:25 67:25 68:14
they're 11:11,22 14:17 19:20 20:9 20:10,18,18 21:5 32:2,3,4 34:8 40:23,23 41:7,20 41:24 44:13,17,17 44:18 45:4 46:25 49:13,18 50:2 51:23 52:11,13 53:8,9 54:16 56:7 56:13,14 57:1,2 60:5 62:4,18,19 62:20,23 63:4,25 65:24,25 66:3,8 66:10 67:6,18
they've 19:11 25:12,13 40:3 67:14,16,17
thing 8:5,7 18:25 19:13 20:3 21:10 25:22 42:3 64:14 64:23
things 14:16 16:25 19:8 31:2 32:1,7 49:20 64:15
think 5:7 9:3,6 10:22 11:16 12:2 13:14,19,21 14:2

14:2,5,5,13,14 15:9,16,23 16:23 17:12 18:1,10 19:3 21:1,4 22:5,7 22:15,23 24:3,22 25:22 27:4,19,21 28:2,14 30:3,15 30:22 31:17 32:15 45:24 46:8,9 49:17 50:13,18 55:19 63:17,22 66:21 67:2,13 68:16
thinking 10:25 17:15 29:3
thinks 60:11
third 8:16 15:2,21 16:12 35:15 40:14
thought 8:4 13:20 15:2,4 36:12,22 38:20 47:24 58:14 68:3
thousands 24:17
three 34:23 40:21 42:12 56:4 57:6,6 57:10,11 60:2
threshold 30:6 55:4,7
time 7:22 8:19 9:22 10:11,24 15:15 23:24 26:25 28:4 31:9,12 33:2 38:3,15 41:6 42:5 43:11 45:1 46:13 48:23 55:16 67:17
timeframe 28:16 45:8 62:7,7
timeline 49:24
times 19:11 23:13
timing 36:20
tipped 32:2 44:19
tl 1:25

told 15:24,25 16:1 16:1,4 18:13 43:3 43:10,21 52:24
top 58:16 59:16
total 6:24
totaling 20:1
totally 22:4 27:8
touch 60:19
tracing 25:3,8 26:12
tracking 25:3,8 26:12
trade 17:19 32:3,8 38:2,15 42:21,22 44:18 45:7 49:1 51:22 53:9
traded 15:19 16:7 30:1 48:2
trades 32:9 37:1 42:22 47:17,18 48:11,19 49:15,21 49:22,22 50:1
trading 10:15,18 11:14 12:10,11 13:4 14:10 17:2 19:10 20:8 22:9 34:1 35:22 36:6 36:23 37:14 45:12 45:13,25 47:21 48:1,21 52:2,2 64:4
transaction 13:23 16:11 23:13 43:23 65:1,5,7
transactions 15:9 19:25 20:9,23 21:18 45:14 52:23 56:2,11,18 64:18 66:7
transcribed 2:25
transcriber 70:6
transcript 47:22 70:3

**transfer**  5:25 6:20
    7:10 25:3 29:14
    30:5 34:12,14,15
    34:16 43:18 44:11
    56:24 62:16,20
**transferee**  5:12
    7:15,19 23:8
    29:25 30:22 31:5
**transferees**  5:11
    5:22,24 23:5
**transferor**  30:20
    46:9
**transferred**  24:13
    27:24
**transfers**  5:1,17
    23:9,17 25:15
    26:15,18,19,21,22
    26:23 27:13,15
    28:4,11,12 29:23
    30:11,19 34:11,20
    34:21 54:11,16
    56:16,17,19 57:12
    60:3,6,25 61:10
    61:14,17,21 62:3
    62:5,6,15,18 63:8
    63:14 65:17,23
**transmission**
    11:19
**treasury**  11:7
**treat**  4:20
**tremont**  6:6,8,13
    7:1,2,4,7,10,14,25
    8:3,6,8 25:8 26:19
    56:13 62:3,10
    63:2
**trevane**  10:13,14
    11:18 13:3,15
    14:4,11,12 39:14
    39:18,21 40:2
**trevane's**  10:23
    39:15
**trial**  6:19

**triggered**  31:22
    46:21
**triggers**  46:2
**true**  11:20 13:8
    38:5 47:7 48:19
**truncated**  40:4
**trust**  68:9
**trustee**  3:4 4:8,14
    4:19 5:1,15,23 6:4
    6:20 7:13 8:5,5,7
    8:12 9:11,24 10:6
    10:8,20 11:25
    13:19 14:2,15
    16:10 19:21 20:17
    20:23 21:1,2,21
    22:5 26:25 27:2
    27:23 28:23 33:12
    33:18,25 48:5
    60:7 62:23 63:23
**trustee's**  25:24
    64:24 67:6
**try**  6:19 15:3
    32:10 38:6
**trying**  12:11
    14:15 45:23 46:18
**turn**  4:16 9:15
    26:14 55:12
**turned**  22:11 31:7
    34:24
**turning**  22:22
    37:8
**turns**  41:2 48:8
**two**  5:2 8:14
    12:16 23:23 26:21
    26:23 28:3,11
    32:11 33:3 39:19
    39:21,22 45:8
    56:13 62:7,21
**type**  11:18 22:1
    26:4 66:7
**types**  23:23
**typically**  64:20

**u**

**u.s.**  1:24 11:7
    24:17 26:13
**ucc**  30:24
**ultimately**  9:15
    19:25 34:11 37:18
**umbrella**  35:17
**unclear**  18:5,6,16
**underlying**  12:16
**undermines**  22:5
**understand**  5:4,8
    10:2 40:10 46:12
    46:18
**understandably**
    25:23
**understood**  67:23
**unit**  16:22
**united**  1:1,15 39:7
**unknown**  16:2
**unrelated**  50:19
**upside**  21:24 22:3
**use**  15:1 26:3 39:5
    50:17
**usually**  49:6 52:23
    54:19 55:3,7

**v**

**v**  1:12 4:3
**valid**  37:1 53:13
**validity**  11:21
    38:5
**value**  23:3,4,6,7
    36:3,3,5
**various**  4:17 15:5
**venture**  17:10
    18:19 50:6,8,10
    50:11,14,19,19
**verification**  12:15
    12:15 13:1,5
    40:24 41:2
**verify**  11:24 12:5
    12:11
**veritext**  70:22

**veto**  52:21
**vets**  52:23
**victims**  54:14,17
**view**  14:3 24:4
    25:22 26:9 27:19
    33:10 47:21 55:21
**views**  17:3
**vis**  22:21,21
**visibility**  51:21
**vs**  26:2,5 60:21

**w**

**wait**  57:21
**walden**  26:1,5
**walk**  55:11,22
**walked**  43:3,22
**walks**  43:1
**want**  8:11 15:14
    16:8 19:23 21:3
    22:7 31:23 32:14
    45:19 47:14 51:23
    65:2
**wanted**  20:15
    22:6 38:14 64:23
    65:6 66:17 68:1
    68:16
**wants**  19:21 34:6
    40:11
**warnings**  39:15
    39:18
**wasick**  3:7 4:7,7
    28:22,22,25 29:16
    30:10,17 31:2,7
    31:19,23 32:25
    33:8,12,16,18,22
    33:24 34:4,10,18
    35:5,10,17,24
    36:2,7,14,18,25
    37:6,10,15,18,21
    38:2,8,14,23 39:8
    39:14,17 40:8,11
    40:18,20 41:4,14
    41:17 42:21 43:12
    43:17 44:23 45:16

45:20 46:1,3,6,16
46:22 47:4,10,13
48:12,15,21 49:10
49:17 50:13,20
51:7,11,16 52:6
52:10 53:8,17,21
53:24 54:4,7,24
55:3,7,19,22,25
56:4,12,17 57:15
58:3,5,16,21,23
59:3,10,20 60:19
61:3,12,14,18,22
62:2,6,9,17 63:2,7
63:12,18

**wasn't**   37:13 39:6
46:19 63:1,4

**way**   12:11 21:24
33:9,10,11 38:21
40:8 42:24 48:19
54:13

**wealth**   16:22

**week**   60:21

**went**   13:9 54:11
56:20 67:6

**weren't**   27:12
28:13 37:1 64:4

**we'd**   38:21

**we'll**   8:14 42:25
47:4

**we're**   4:11 20:4
34:20 36:25 40:22
42:5 43:18 44:23
48:15 50:25 51:1
58:8 66:7

**we've**   26:1,22
35:24 37:4 40:5
40:13 67:2

**what's**   11:24
21:11 22:12 36:16
37:4,17 38:8,24
46:5 51:2 64:25
65:11

**wholly**   16:18

**who's**   20:16

**wide**   52:17

**willful**   9:14,18,23
9:25 10:16 13:6
14:4,18 15:17
31:24 37:7,8,9,11
37:12,13,15 46:4
47:16 48:4,7 49:6
52:5 53:5

**willfully**   8:13

**willing**   45:19

**wind**   26:6

**witness**   43:20

**won't**   44:7 46:13
47:8

**word**   55:14

**words**   37:12 52:8

**worked**   57:10
60:1

**working**   18:23
44:16 57:1

**world**   53:14 54:3

**worry**   40:22

**worth**   26:17 45:21

**wouldn't**   7:9,22
45:14 49:12 64:6

**wrong**   10:10 30:8

**x**

**x**   1:4,9,14 69:1

**y**

**yeah**   22:15 49:5
61:16

**year**   5:2 19:24
26:22,23 28:3,11
28:11 62:7,7

**years**   27:21,22
36:4 37:4 39:11
45:8 49:15 53:18
53:19 54:9 62:23
67:14

**york**   1:2,17,17 3:6
3:12 24:12,13,18

24:24 25:3,4,7,11
25:14,16,20 26:13
42:1 56:20,21,23
56:25 57:1,2,2,7,8
57:8,19 58:9,10
58:10,11 59:5,6
59:18,22 60:2,3,4
60:4,11 67:25
68:6,15

**you'd**   49:15 57:21
60:22

**you'll**   53:22 60:1
66:9

**you're**   5:7 31:3
33:6,9,10,11
35:14,15 38:20
40:22 41:10 44:21
48:13,17,18 49:2
50:14 54:2 55:9
58:5 67:12,13

**you've**   8:22,23
19:16 25:10 27:5
51:13

**z**

**zcm**   16:1,10 41:24
42:14,24 43:1,3
43:22 44:3 45:7
50:3 58:8,9 65:5,8

**zurich**   41:25

**'**

**'05**   26:24

**'06**   26:24

**à**

**à**   22:21