LAW OFFICE OF
RICHARD E. SIGNORELLI
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠
*Attorneys for the Defendants*
*identified on Exhibit 1 hereto*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,                                                                Adv. Pro. No. 08-01789 (SMB)

                Plaintiff-Applicant,                     SIPA LIQUIDATION

        v.                                                        (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.
-------------------------------------------------------------------x
In re:

BERNARD L. MADOFF,

                Debtor.
-------------------------------------------------------------------x
IRVING PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,      Adv. Pro. No. 10-05394 (SMB)

                Plaintiff,

                     **ANSWER AND**
        v.                                                        **AFFIRMATIVE DEFENSES**

RICHARD M. GLANTZ, et al.,

                Defendants.
-------------------------------------------------------------------x

      Defendants, by their attorneys, as and for their answer to the Trustee's Second

Amended Complaint ("SAC"), respectfully allege as follows, by like-numbered paragraph:[1]

## As to "Nature Of Proceeding"

1. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

2. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

3. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

4. Deny each and every allegation, except admit that the Trustee purports to bring this action for the reasons stated therein.

## As to "Jurisdiction And Venue"

5. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that this is an adversary proceeding commenced in this Court; that the underlying proceeding under the Securities Investor Protection Act ("SIPA") is pending in this Court; and that the Trustee purports to invoke this Court's jurisdiction as stated therein.

6. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that the Trustee purports to consent to the entry of final orders or judgment by this Court as stated therein. Insofar as the allegations purport to

---

[1] The answering defendants are identified on Exhibit 1 hereto.

state questions or conclusions of law, no response is required, and such matters of law are
respectfully referred to the Court.

7.  Deny each and every allegation, except admit that the Trustee purports to base
venue as stated therein.

8.  Deny each and every allegation, except admit that the Trustee purports to bring
this adversary proceeding as stated therein.

**As to "Defendants"**

9.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that Richard Glantz resides in Richmond,
California.

10.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that defendant EJS Associates, L.P. ("EJS") was
originally formed as a general partnership; that EJS was subsequently reorganized as a limited
partnership; that Richard Glantz was a general partner of EJS; and that EJS maintains a place of
business in San Rafael, California.

11.  Deny having knowledge or information sufficient to form a belief as to the
truth of each and every allegation, except admit that defendant Jelris & Associates, L.P. ("Jelris")
was originally formed as a general partnership; that Jelris was subsequently reorganized as a
limited partnership; that Richard Glantz was a general partner of Jelris; and that Jelris maintains
a place of business in San Rafael, California.

12.  Deny each and every allegation, except admit that defendant Grace &
Company ("Grace") was a general partnership and that Richard Glantz was a general partner of

3

Grace.

13.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny that defendant The Glantz Family Foundation, Inc. maintains its principal place of business in San Rafael, California.

14.  Admit that Edward Glantz was Richard Glantz's father; that defendant The Estate of Edward R. Glantz ("ERG Estate") was created upon the death of Edward Glantz; and that Richard Glantz was a personal representative of ERG Estate.

15.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Edward Glantz owned an individual retirement account and that Thelma Glantz was designated as the 100% primary beneficiary of that account.

16.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that defendant Lakeview Investment, LP ("Lakeview") is a limited partnership; that defendant Vista Management Co. ("Vista") has been Lakeview's sole general partner; and that Lakeview maintains a place of business in San Rafael, California.

17.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Vista is a corporation; that Richard Glantz is the sole owner and president of Vista; and that Vista maintains a place of business in San Rafael, California.

18.  Deny each and every allegation, and respectfully refer the Court to the "records" in question for their full contents and meaning.

4

19.   Deny each and every allegation, except admit that defendant Elaine Ostrin is Richard Glantz's sister and the daughter of Edward and Thelma Glantz.

20.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Thelma Glantz was Richard Glantz's and Elaine Ostrin's mother and the wife of Edward Glantz; that defendant The Estate of Thelma Glantz ("TG Estate") was created upon the death of Thelma Glantz; and that Richard Glantz is the administrator of TG Estate.

21.   Deny each and every allegation.

22.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that defendant Austin Bosarge resides in Petaluma, California.

### As to "Background, The Trustee And Standing"

23.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Bernard L. Madoff ("Madoff") was arrested and charged with criminal violations.

24.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

25.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

26.   Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

27.   Deny having knowledge or information sufficient to form a belief as to the

truth of each and every allegation.

28.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Madoff pleaded guilty to criminal violations.

29.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Frank DiPascali pleaded guilty to criminal violations.

30.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that David Kugel pleaded guilty to criminal violations.

31.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Daniel Bonventre, Annette Bongiorno, Jo Ann Crupi, George Perez, and Jerome O'Hara were convicted of criminal violations.

32.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except deny the allegations that, absent this adversary proceeding against defendants, who are innocent investors, "the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1)."  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

33.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

6

34.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

### As to "BLMIS, The Ponzi Scheme, And Madoff's Investment Strategy"

35.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

36.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Bernard L. Madoff Investment Securities, LLC ("BLMIS") was registered with the United States Securities and Exchange Commission ("SEC") and was a member of the Securities Investor Protection Corporation ("SIPC").   Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

37.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

38.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

39.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

40.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

41.  Deny each and every allegation.

42.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

43.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

44.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

45.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

46.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

47.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

48.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

49.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

50.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

51.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

52.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

53. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

54. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

55. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

56. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

57. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

58. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

59. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

60. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

61. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

62. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

9

63.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

64.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

65.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

### As to "The Transfers"

66.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that accounts bearing the account names and account numbers set forth in Exhibit A to the SAC (collectively, "Accounts") were maintained with BLMIS and that, upon information and belief, certain documents related to the Accounts were executed and delivered to BLMIS.

67.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that deposits were made into the Accounts.

68.  Deny each and every allegation.

69.  Deny each and every allegation.

70.  Deny each and every allegation.

71.  Deny each and every allegation.

72.  Deny each and every allegation.

73.  Deny each and every allegation.

74.  Deny each and every allegation, and state that the entire sum of $6,000,000 that was withdrawn from Richard Glantz's IRA account at BLMIS, account number 1ZR010

("Richard Glantz IRA Account") on or about December 21, 2006, was immediately reinvested

back into BLMIS through third-party feeder fund Starlight, LP ("Starlight") and thereafter

remained invested with BLMIS until all of it was lost as a result of Madoff's fraud.

75.   Deny each and every allegation.

76.   Deny each and every allegation.   Insofar as the allegations purport to state

questions or conclusions of law, no response is required, and such matters of law are respectfully

referred to the Court.

77.   Deny each and every allegation.

78.a.  Deny each and every allegation, and state that the $165,000 transferred to

Austin Bosarge on or about April 11, 2008, was a loan that has since been repaid.

78.b.  Deny each and every allegation.

78.c.  Deny each and every allegation.

78.d.  Deny each and every allegation.

78.e.  Deny each and every allegation.

78.f.  Deny each and every allegation.

78.g.  Deny each and every allegation.

78.h.  Deny each and every allegation.

78.i.  Deny each and every allegation.

78.j.  Deny each and every allegation, and state that all the money transferred to

Lakeview was immediately invested back into BLMIS by Lakeview and thereafter remained

invested with BLMIS until all of it was lost as a result of Madoff's fraud. Lakeview was a mere

conduit and did not retain any of the money.

11

78.k.  Deny each and every allegation.

78.l.  Deny each and every allegation.

78.m.  Deny each and every allegation.

79.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

80.  Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation.

81.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

### As to "Count One"

82.  Repeat and reallege each and every allegation, admission, and denial made in response to the paragraphs of the SAC which are referred to in this paragraph.

83.  Deny each and every allegation, except admit that withdrawals were made from the Accounts within the two-year period prior to December 11, 2008.

84.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

85.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

86.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

87.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

### As to "Count Two"

88.  Repeat and reallege each and every allegation, admission, and denial made in response to the paragraphs of the SAC which are referred to in this paragraph.

89.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

90.  Deny each and every allegation.

91.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

92.  Deny each and every allegation.  Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

### As to "Count Three"

93.  Repeat and reallege each and every allegation, admission, and denial made in response to the paragraphs of the SAC which are referred to in this paragraph.

94. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Richard Glantz was a general partner of EJS, Jelris, and Grace.

95. Deny each and every allegation.

96. Deny each and every allegation.

97. Deny each and every allegation.

98. Deny having knowledge or information sufficient to form a belief as to the truth of each and every allegation, except admit that Vista was the general partner of Lakeview.

99. Deny each and every allegation.

100. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

101. Deny each and every allegation. Insofar as the allegations purport to state questions or conclusions of law, no response is required, and such matters of law are respectfully referred to the Court.

## AFFIRMATIVE DEFENSES

A. Defendants assert the following affirmative defenses and reserve the right to amend this answer to assert other and further defenses when and if, in the course of investigation, discovery, or preparation for trial, it becomes appropriate to do so.

B. By identifying their allegations as "defenses", defendants do not excuse or relieve the Trustee of his burden of proving all elements of his claims under the applicable standard of proof. Defendants do not undertake or assume any burden that properly rests with the

14

Trustee and do not suggest that the Trustee does not bear the burden of proof with respect to such

matters or that such matters are not elements that the Trustee must establish in order to make out

a prima facie case on his claims against defendants.

C.  In the event that subsequent legal developments further limit or otherwise alter

the claims available to the Trustee, defendants hereby raise each and every defense at law, in

equity, or otherwise, available under any and all federal and state statutes, laws, rules, and

regulations.  Defendants further adopt and incorporate by reference any and all other defenses

asserted or to be asserted by any other defendant or party-in-interest in pending adversary

proceedings in the BLMIS SIPA liquidation proceeding to the extent that defendants are similarly

situated and may properly assert such defense.

D.  Defendants reserve and assert all affirmative defenses available under

applicable federal or state law. including, without limitation, the Federal Rules of Bankruptcy

Procedure, the Federal Rules of Civil Procedure, and the New York Uniform Commercial Code,

and reserve the right to assert other defenses and claims when and if it becomes appropriate to do

so in this action.

E.  The affirmative defenses set forth below are asserted cumulatively and in the

alternative.

### First Affirmative Defense

The SAC fails to state a cause of action upon which relief may be granted.

### Second Affirmative Defense

Pursuant to Stern v. Marshall, 131 S.Ct. 2594 (2011) and other Supreme Court

precedent, this Court "may not finally decide avoidance actions except conceivably in the process

of resolving identical claims under § 502(d)[.]"  See In re Madoff Sec., 490 B.R. at 55.  The

Trustee has not asserted a claim under 11 U.S.C. § 502(d) in the SAC.  Defendants do not

consent to the adjudication and entry of a final order and judgment in this adversary proceeding

by this Court.  Accordingly, this Court does not have the power or jurisdiction to "finally decide"

this adversary proceeding.

### Third Affirmative Defense

Defendants demand a trial by jury and do not consent to such a trial in this Court.

### Fourth Affirmative Defense

The Trustee lacks standing to bring a claim against defendants.

### Fifth Affirmative Defense

The Trustee has no authority or jurisdiction to bring a claim against defendants

because the conditions of SIPA § 78fff-2(c)(3) have not been met.  The Trustee has not

established that there are insufficient funds in the BLMIS estate to pay all the claims specified in

SIPA § 78fff-2(c)(1)(A) – (D).

### Sixth Affirmative Defense

The transfers at issue are not avoidable because the funds were held in trust by

BLMIS and were not property in which BLMIS had a legal interest.

### Seventh Affirmative Defense

BLMIS incurred debts and obligations to its customers under contract law and

other applicable non-bankruptcy laws and rules.  The transfers at issue were made on account of

and constituted satisfaction of such antecedent debts or obligations.

16

**Eighth Affirmative Defense**

The entire sum of $6,000,000 that was withdrawn from the Richard Glantz IRA Account on or about December 21, 2006, was immediately reinvested back into BLMIS through third-party feeder fund Starlight and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Richard Glantz thus did not actually receive and retain any of the money and in fact lost all the money as a result of Madoff's fraud. The Trustee's attempt to recover this money even though all of it had already been returned to BLMIS and subsequently lost as a result of Madoff's fraud is unreasonable and unconscionable. Under these circumstances, the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and: (a) grant Richard Glantz an "equitable credit" in the full amount (i.e., $6,000,000) that he had returned to BLMIS through his Starlight investment; and (b) dismiss the Trustee's claim to avoid and recover any portion of the $6,000,000 withdrawal made from the Richard Glantz IRA Account.

**Ninth Affirmative Defense**

The entire sum of $6,000,000 that was withdrawn from the Richard Glantz IRA Account on or about December 21, 2006, was immediately reinvested back into BLMIS through third-party feeder fund Starlight and thereafter remained invested with BLMIS until all of it was lost as a result of Madoff's fraud. Richard Glantz thus did not actually receive and retain any of the money and in fact lost all the money as a result of Madoff's fraud. The Trustee's attempt to recover any portion of this money, all of which had already been returned to the BLMIS estate, violates the single satisfaction rule codified at 11 U.S.C. § 550(d), which bars recovery from a transferee where the value of the transferred property had already been returned to the estate.

17

**Tenth Affirmative Defense**

The entire sum of $6,000,000 that was withdrawn from the Richard Glantz IRA

Account on or about December 21, 2006, was immediately reinvested back into BLMIS through

third-party feeder fund Starlight and thereafter remained invested with BLMIS until all of it was

lost as a result of Madoff's fraud.  Richard Glantz therefore did not actually receive and retain

any of the money and in fact lost all of the money as a result of Madoff's fraud.  Accordingly,

Richard Glantz is entitled to an offset or credit under the theory of recoupment in the full amount

(i.e., $6,000,000) that he had returned to BLMIS through his Starlight investment.

**Eleventh Affirmative Defense**

The following withdrawals made from the BLMIS accounts of Jelris, EJS, and

Grace ("Jelris/EJS/Grace Withdrawals") were immediately reinvested back into BLMIS through

third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all of the

money was lost as a result of Madoff's fraud:

| BLMIS Account | Amount Withdrawn | Date Withdrawn | Date Transferred to Lakeview for reinvestment into BLMIS |
|---|---|---|---|
| Jelris | $7,000,000 | 7/23/07 | 7/27/07 |
| EJS | $3,500,000 | 7/23/07 | 7/27/07 |
| EJS | $600,000 | 6/27/08 | 7/2/08 |
| Jelris | $800,000 | 6/27/08 | 7/2/08 |
| Grace | $3,100,000 | 6/27/08 | 7/2/08 |
| EJS | $500,000 | 10/30/08 | 11/25/08 |

Jelris, EJS, and Grace thus did not actually receive and retain any of the withdrawn money and in

fact lost all the money as a result of Madoff's fraud.  Under these circumstances, the Court

18

should exercise its equitable powers under 11 U.S.C. § 105(a) and: (a) grant Jelris, EJS, and

Grace "equitable credits" in the full amounts that they had returned to BLMIS through their

Lakeview investments; and (b) dismiss the Trustee's claims to avoid and recover the

Jelris/EJS/Grace Withdrawals or any portion thereof.

### Twelfth Affirmative Defense

The Jelris/EJS/Grace Withdrawals were immediately reinvested back into BLMIS

through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all

of the money was lost as a result of Madoff's fraud. Jelris, EJS, and Grace thus did not actually

receive and retain any of the withdrawn money and in fact lost all the money as a result of

Madoff's fraud. The Trustee's attempt to recover from them money which had thus already been

returned to the BLMIS estate violates the single satisfaction rule codified at 11 U.S.C. § 550(d),

which bars recovery from a transferee where the value of the transferred property had already

been returned to the estate.

### Thirteenth Affirmative Defense

The Jelris/EJS/Grace Withdrawals were immediately reinvested back into BLMIS

through third-party feeder fund Lakeview and thereafter remained invested with BLMIS until all

of the money was lost as a result of Madoff's fraud. Jelris, EJS, and Grace thus did not actually

receive and retain any of the withdrawn money and in fact lost all the money as a result of

Madoff's fraud. Accordingly, Jelris, EJS, and Grace are entitled to an offset or credit under the

theory of recoupment in the full amount that they each had thus returned to BLMIS.

**Fourteenth Affirmative Defense**

The following transfers of money were made to Lakeview ("Lakeview Transfers")

for reinvestment back into BLMIS, and all the money was in fact immediately reinvested back

into BLMIS by Lakeview, where it remained until all of it was lost as a result of Madoff's fraud:

| Transferor | Amount Transferred | Date of Transfer |
|------------|--------------------|------------------|
| Jelris | $7,000,000 | 7/23/07 |
| EJS | $3,500,000 | 7/23/07 |
| EJS | $325,000 | 8/24/07 |
| EJS | $10,000 | 10/24/07 |
| Jelris | $10,000 | 2/26/08 |
| EJS | $600,000 | 7/2/08 |
| Jelris | $800,000 | 7/2/08 |
| Grace | $3,100,000 | 7/2/08 |
| EJS | $950,000 | 8/5/08 |
| Grace | $15,288 | 8/15/08 |
| EJS | $125,000 | 10/14/08 |
| EJS | $500,000 | 10/30/08 |

Lakeview thus did not retain any of the money that was transferred to it. Under these

circumstances, Lakeview was a mere conduit of the money and the Trustee is not entitled to

recover the money from Lakeview as a transferee under 11 U.S.C. § 550(a).

**Fifteenth Affirmative Defense**

The Lakeview Transfers were immediately reinvested back into BLMIS by

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud. Lakeview thus did not retain any of the money that was transferred to it.

20

Under these circumstances, the Court should exercise its equitable powers under 11 U.S.C. §

105(a) and: (a) grant Lakeview "equitable credits" in the full amounts of the Lakeview Transfers;

and (b) dismiss the Trustee's claims to recover the Lakeview Transfers or any portion thereof.

### Sixteenth Affirmative Defense

The Lakeview Transfers were immediately reinvested back into BLMIS by

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Lakeview thus did not retain any of the money that was transferred to it.  The

Trustee's attempt to recover from Lakeview money which had thus already returned to the

BLMIS estate violates the single satisfaction rule codified at 11 U.S.C. § 550(d), which bars

recovery from a transferee where the value of the transferred property had already been returned

to the estate.

### Seventeenth Affirmative Defense

The Lakeview Transfers were immediately reinvested back into BLMIS by

Lakeview and thereafter remained invested with BLMIS until all of it was lost as a result of

Madoff's fraud.  Lakeview thus did not retain any of the money that was transferred to it.

Accordingly, Lakeview is entitled to an offset or credit under the theory of recoupment in the full

amount that it had thus returned to BLMIS.

### Eighteenth Affirmative Defense

The Trustee failed to adequately plead that each of the transfers at issue was made

"with actual intent to hinder, delay, or defraud" as required under 11 U.S.C. § 548(a)(1)(A).

21

### Nineteenth Affirmative Defense

The Trustee's claim is barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

### Twentieth Affirmative Defense

The transfers at issue, to the extent they were actually received by defendants, were taken for value, in good faith, without actual fraudulent intent, and without knowledge of their voidability.   Accordingly, they are not avoidable or recoverable under 11 U.S.C. §§ 548 and/or 550.

### Twenty-First Affirmative Defense

.         The Trustee's claims are subject to setoff or other equitable adjustment because defendants, to the extent they actually received the transfers at issue, received them in good faith, without knowledge of the alleged fraud, and in payment of an antecedent debt and/or on account of obligations owed by BLMIS for, inter alia: (a) amounts contractually due to a customer of BLMIS under New York law for the balances shown on prior customer account statements and related documents; (b) rescission remedies, including damages and interest, for fraud and misrepresentation pursuant to federal and state law; (c) the time value of money; (d) unjust enrichment; (e) damages for breach of fiduciary duty; and/or (f) money had and received.

### Twenty-Second Affirmative Defense

The Trustee's claims are barred to the extent the Trustee attempts to directly or indirectly avoid transfers or inter-account transfers that occurred more than two years before December 11, 2008.

22

## Twenty-Third Affirmative Defense

The Trustee's claim to recover subsequent transfers (Count Two) should be dismissed because the SAC fails to specify the alleged initial transfer(s) from which each of the subsequent transfers alleged to be recoverable were made.

## Twenty-Fourth Affirmative Defense

There is no basis for holding Richard Glantz liable as a general partner for the alleged initial transfers and alleged subsequent transfers to EJS, Jelris, and Grace.

## Twenty-Fifth Affirmative Defense

There is no basis for holding defendant Vista Management Co. liable as a general partner for the alleged subsequent transfers to Lakeview.

## Twenty-Sixth Affirmative Defense

The Trustee's claims are barred to the extent the Trustee failed to properly credit inter-account transfers made to defendants' BLMIS accounts. To the extent the inter-account transfers occurred outside any applicable statutory reach-back period for avoidance and/or recovery of transfers, they may not be ignored and/or treated as if they had no value as the Trustee has no power to avoid such inter-account transfers.

## Twenty-Seventh Affirmative Defense

By not accounting for the time value of money by making an interest adjustment or other adjustment, the Trustee incorrectly calculated the "value" represented by the principal investments in defendants' BLMIS accounts and the amount of fictitious profits, if any, that may be avoided under § 548(a)(1)(A).

### Twenty-Eighth Affirmative Defense

By not adjusting for inflation, the Trustee incorrectly calculated the "value"
represented by the principal investments in defendants' BLMIS accounts and the amount of
fictitious profits, if any, that may be avoided under § 548(a)(1)(A).

### Twenty-Ninth Affirmative Defense

The Trustee is not entitled to recover any prejudgment interest on any recovery
that he may obtain in this adversary proceeding. But if it is found that the Trustee is entitled to
prejudgment interest, he is only entitled to such interest at the federal rate of interest on
judgments, and only from a date that is no earlier than the date when this adversary proceeding
was commenced.

### Thirtieth Affirmative Defense

The Trustee's claims are barred to the extent the Trustee failed to sufficiently
trace the funds at issue from BLMIS to defendants.

### Thirty-First Affirmative Defense

The Richard Glantz IRA Account and Edward Glantz's IRA account at BLMIS
bearing account number 1ZR176 are individual retirement accounts and, as such, are exempt
from the Trustee's claims under applicable state law.

### Thirty-Second Affirmative Defense

The Court lacks jurisdiction over G-O Trust II and the SAC should be dismissed
as against G-O Trust II because G-O Trust II was dissolved and its affairs were wound up prior to
the commencement of this action.

24

### Thirty-Third Affirmative Defense

The Trustee's claims against ERG Estate are barred by the applicable state statute
of limitations.

### Thirty-Fourth Affirmative Defense

The Trustee's claims should be dismissed due to defendants' justifiable reliance
on the activities of governmental and regulatory bodies, such as the SEC and SIPC, to oversee
and monitor the activities and business of BLMIS.

### Thirty-Fifth Affirmative Defense

BLMIS was not formed until January 2001. The orders of the District Court and
the Bankruptcy Court relating to the consolidation of the estates of BLMIS and Madoff as an
individual or sole proprietor of his securities business do not confer standing or authority upon
the Trustee to avoid or recover, directly or indirectly, fraudulent transfers made by Madoff prior
to the formation of BLMIS.

### Thirty-Sixth Affirmative Defense

The $165,000 transferred to Austin Bosarge on or about April 11, 2008, was a
loan that has since been repaid.

### Thirty-Seventh Affirmative Defense

BLMIS did not operate a Ponzi scheme and actually purchased and sold securities
for its customers during all or at least some of the time periods relevant to this action.

### Thirty-Eighth Affirmative Defense

The Trustee's claims are subject to setoff or other equitable adjustment to the
extent that any of the funds withdrawn from the Accounts were used to pay tax obligations

imposed on alleged fictitious profits by federal, state, and/or local governmental taxing authorities.

## **DEMAND FOR JUDGMENT**

WHEREFORE, defendants respectfully demand judgment against the Trustee: (1) dismissing the Second Amended Complaint and denying all relief requested therein with costs and disbursements in favor of defendants; (2) reimbursing defendants for the attorneys' fees and expenses that they have incurred; and (3) granting such other, further, and different relief as this Court may deem just and proper.

Dated:  New York, New York
       March 23, 2018

                    Respectfully submitted,
                    LAW OFFICE OF
                    RICHARD E. SIGNORELLI

By:  /s/ Richard E. Signorelli
                    _____
                    Richard E. Signorelli
                    Bryan Ha
                    799 Broadway, Suite 539
                    New York, NY 10003
                    Telephone:    212 254 4218
                    Facsimile:    212 254 1396
                    rsignorelli@nycLITIGATOR.com[SM]
                    www.nycLITIGATOR.com[SM]

                    Attorneys for the Defendants
                    identified on Exhibit 1 hereto

FILING AND SERVICE VIA ELECTRONIC FILING

## EXHIBIT 1

RICHARD M. GLANTZ, individually, as trustee of the Glantz-Ostrin Trust II, as personal representative of the Estate of Edward R. Glantz, and as administrator of the Estate of Thelma Glantz

EJS ASSOCIATES, L.P.

JELRIS & ASSOCIATES, L.P.

GRACE & COMPANY

THE GLANTZ FAMILY FOUNDATION, INC.

THE ESTATE OF EDWARD R. GLANTZ

LAKEVIEW INVESTMENT, LP

VISTA MANAGEMENT CO.

LAW & MEDIATION OFFICES OF RICHARD M. GLANTZ, A PROFESSIONAL CORPORATION

ELAINE OSTRIN

THE ESTATE OF THELMA GLANTZ

THE GLANTZ-OSTRIN TRUST II

AUSTIN BOSARGE