**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01576 (SMB) |
| v. | |
| BNP PARIBAS S.A., BNP PARIBAS ARBITRAGE SNC, BNP PARIBAS BANK & TRUST (CAYMAN) LIMITED, and BNP PARIBAS SECURITIES SERVICES S.A., | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' CROSS-MOTION TO STAY DISCOVERY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................3

A.    Defendants Cannot Make a "Strong Showing" that this Action Lacks Merit ....................4

    1.    The Legal Standard on a Motion to Dismiss ............................................................5

    2.    The Trustee's Allegations of Willful Blindness Are Plausible.............................7

        a.    The Relevant Standard Is Willful Blindness of Fraud ................................8

        b.    The Trustee Plausibly Alleges Defendants Suspected Fraud ...................11

        c.    The Trustee Plausibly Alleges Defendants Turned a Blind Eye to Fraud ........................................................................................................14

    3.    Defendants' Other Arguments for Dismissal Fail ................................................15

B.    Proceeding with Discovery Now Would Not Impose an Undue Burden on Defendants ......................................................................................................................16

C.    A Discovery Stay Would Prejudice the Trustee ..............................................................18

D.    The Nature and Complexity of this Proceeding Weigh in Favor of Commencing Discovery Now ................................................................................................................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*11 E. 36th LLC v. 1st Cent. Sav. Bank (In re 11 E. 36th LLC)*,
   Adv. Pro. No. 13-11506 (RG), 2014 WL 2903660 (Bankr. S.D.N.Y. June 26,
   2014) ......................................................................................................................6

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012).............................................................................5, 6

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
   94-cv-2120 (LMM) (AJP), 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) ...........................4, 19

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)..............................................................2, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................1, 5

*Barrett v. Forest Labs., Inc.*,
   12-cv-5224 (RA), 2015 WL 4111827 (S.D.N.Y. July 8, 2015) ...............................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................1, 5, 6

*Brown Media Corp. v. K&L Gates, LLP*,
   854 F.3d 150 (2d Cir. 2017).................................................................................6

*City of New York v. YRC Worldwide Inc.*,
   14-cv-4322 (FB), 2015 U.S. Dist. LEXIS 961 (E.D.N.Y. Jan. 6, 2015) .............4, 16, 17

*Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*,
   13-cv-509 (VLB), 2014 WL 3895923 (D. Conn. Aug. 8, 2014) .............................4

*Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food &
   Commercial Workers*,
   13-cv-7187 (SJF) (SIL), 2014 WL 4384712 (E.D.N.Y. Sept. 3, 2014)...................16

*Gandler v. Nazarov*,
   94-cv-2272 (CSH), 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ...........................4

*In re Gawker Media LLC*,
   571 B.R. 612 (Bankr. S.D.N.Y. 2017) ..................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)............................................................................................8

i

*Greater New York Taxi Ass'n v. City of New York*,
  13-cv-3089 (VSB) (JCF), 2017 WL 4012051 (S.D.N.Y. Sept. 11, 2017).............................20

*Hachette Dist. Inc. v. Hudson Cty. News Co.*,
  136 F.R.D. 356 (E.D.N.Y. 1991) ............................................................................................19

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)......................................................................................15

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
  297 F.R.D. 69 (S.D.N.Y. 2013) .................................................................................................4

*Long Island Hous. Servs., Inc. v. Nassau Cty. Indus. Dev. Agency*,
  14-cv-3307 (ADS) (AKT), 2015 WL 7756122 (E.D.N.Y. Dec. 1, 2015) ...............................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015).....................................................................................................14

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
  138 S.Ct. 883 (2018) ................................................................................................................16

*Mirra v. Jordan*,
  15-cv-4100 (AT) (KNF), 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) ...................................19

*Niv v. Hilton Hotels Corp.*,
  06-cv-7839 (PKL), 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007) ...........................................19

*Picard v. Bureau of Labor Ins. (SIPC v. BLMIS)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) .....................................................................................16

*Picard v. Ceretti (In re BLMIS)*,
  Adv. Pro. No. 09-1161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11,
  2015) ...................................................................................................................................13, 15

*Picard v. Katz*,
  462 B.R. 447 (S.D.N.Y. 2011)..........................................................................................2, 8, 9

*Picard v. Legacy Capital Ltd. (In re BLMIS)*,
  548 B.R. 13 (Bankr. S.D.N.Y. 2016) ...........................................................................9, 10, 15

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .........................................................................9, 13, 15

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland
  Holding Corp.)*,
  398 B.R. 761 (Bankr. S.D.N.Y. 2008) .......................................................................................6

*Rivera v. Inc. Vill. of Farmingdale*,
   06-cv-2613 (DRH) (ARL), 2007 WL 3047089 (E.D.N.Y. Oct. 17, 2007)...........................3, 4

*SEC v. Pentagon Capital Mgmt.*,
   612 F. Supp. 2d 241 (S.D.N.Y. 2009)...................................................................................14

*SIPC v. BLMIS (In re Madoff Sec.)*,
   516 B.R. 18 (S.D.N.Y. 2014)........................................................................................2, 8, 9

*Spurr v. United States*,
   174 U.S. 728 (1899).................................................................................................................8

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*,
   07-cv-0051 (ENV) (MDG), 2007 WL 2908205 (E.D.N.Y. Oct. 4, 2007) .............................20

*In re Term Commodities Cotton Futures Litig.*
   12-cv-5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013)...............................17

*To v. HSBC Holdings PLC*,
   15-cv-3590 (LTS), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017).............................................15

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001)....................................................................................................6

*United States v. Reyes*,
   302 F.3d 48 (2d Cir. 2002)...................................................................................................8, 9

## Statutes

11 U.S.C. § 548..........................................................................................................................10

11 U.S.C. § 550.......................................................................................................................9, 10

## Rules

Fed. R. Civ. P. 8..........................................................................................................................5

Fed. R. Civ. P. 9........................................................................................................................14

Fed. R. Civ. P. 12.......................................................................................................................6

Fed. R. Civ. P. 26.......................................................................................................................3

## Other Authorities

17 C.F.R. § 240.10b-5...............................................................................................................13

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to the cross-motion to stay discovery filed by defendants BNP Paribas S.A. ("BNP Paribas"), BNP Paribas Arbitrage SNC ("BNP Arbitrage"), BNP Paribas Securities Services S.A. ("BNP Securities Services"), and BNP Paribas Bank and Trust (Cayman) Limited ("BNP Cayman," and collectively, "Defendants") in this adversary proceeding.  ECF 127 ("Def. Br.").[1]

## PRELIMINARY STATEMENT

Defendants' motion to stay fails for the same reason as their motion to dismiss: the Trustee has plausibly alleged that Defendants were willfully blind to fraud at BLMIS.

The plausibility of the Trustee's allegations means that Defendants cannot make a strong showing of success on their motion to dismiss, as they must to obtain the extraordinary relief of a discovery stay.  Defendants' arguments to the contrary misconstrue the plausibility requirement under *Iqbal* and *Twombly* by suggesting the Trustee's factual allegations should not be taken as true and that fact-specific questions and competing inferences should be resolved on the pleadings. Defendants also misconstrue the good faith standard in this SIPA proceeding by arguing the District Court's prior decisions require the Trustee to show that Defendants suspected BLMIS was not trading securities.  The District Court's prior decisions unambiguously state that the Trustee's burden is simply to show that Defendants "intentionally [chose] to blind [themselves] to the 'red

---

[1] Unless otherwise defined herein, terms shall have the meaning ascribed to them in the Trustee's motion to compel discovery, filed on February 9, 2018.  ECF 119 ("Tr. Br.").

flags' that suggest a high probability of fraud." *SIPC v. BLMIS (In re Madoff Sec.)*, 516 B.R. 18,

21 (S.D.N.Y. 2014) ("*Good Faith Decision*") (quoting *Picard v. Katz*, 462 B.R. 447, 455

(S.D.N.Y. 2011)).  This Court should decline Defendants' invitation to deviate from settled and

binding law.

Even if this Court changes the willful blindness standard set out in *Katz* and the *Good Faith*

*Decision*, Defendants' motion still fails.  The Trustee alleges that Defendants questioned "the true

validity of the orders" made by BLMIS.  (Am. Compl. ¶ 114.)  This concern was emphasized by

an internal audit and compliance report prepared by two Defendants, which recognized the need

to confirm in real time what stocks BLMIS purportedly purchased and recognized that BLMIS's

dual roles violated the bank's compliance and risk rules that required a strict separation between a

fund's investment adviser and custodian in order to avoid and detect fraud. (*Id.* ¶¶ 112, 114, 116,

241-53.)  Moreover, the Trustee alleges Defendants knew indicia of fraud that showed that

BLMIS's investment returns and purported option trading practices were simply impossible. (*Id.*

¶¶ 152-63, 241-339.)  And the Trustee alleges Defendants had insiders during the relevant period

who blacklisted BLMIS from their investment portfolios and believed that "Madoff's unfailing

records was [*sic*] too good to be true." (*Id.* ¶¶ 127-37.)

Defendants' main challenge to these allegations is that the Trustee's version of the facts is

different than theirs.  These fact-intensive arguments demonstrate the necessity for discovery and

the likelihood of Defendants not prevailing on their motion to dismiss.[2]  For these reasons, and for

---

[2] *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 423 (S.D.N.Y. 2010) (declining to
dismiss securities fraud claim despite pleading requirement supporting a "strong inference of
scienter" because defendants merely "suggest a competing inference to the Court," which
"essentially denies Plaintiffs' allegations, raising a factual dispute inappropriate for resolution by
the Court at this stage" and that "can be settled properly only by means of a fuller evidentiary
record developed through factual discovery").

those set out in the Trustee's brief in opposition to Defendants' motion to dismiss, incorporated herein, Defendants have not made the requisite strong showing of success on the merits to warrant a discovery stay at this time.

Defendants similarly fail to establish the other three factors that are relevant to Defendants' extraordinary request for a discovery stay. First, Defendants cannot demonstrate undue burden. Any argument to the contrary is belied by Defendants' unwillingness to meet and confer on narrowing the scope of the Trustee's requests and the Trustee's willingness to engage in limited domestic document discovery while the motion to dismiss is pending. Second, Defendants cannot demonstrate a lack of prejudice to the Trustee. The events at issue here occurred more than a decade ago. Any further delay—during which time documents may get lost and witnesses may forget—prejudices the Trustee. Third, Defendants fail altogether to address the nature and complexity of this proceeding, which weighs in favor of commencing discovery now. Accordingly, there is no good cause for a stay.

The Trustee respectfully requests that the Court grant the Trustee's motion to compel document discovery and deny Defendants' motion to stay so that after years of motion practice, discovery may now proceed.

## ARGUMENT

The Rules require discovery to commence without delay. Fed. R. Civ. P. 26(f)(1) (indicating that "the parties must confer as soon as practicable" to plan discovery). The only exception is where a movant demonstrates "good cause" to stay discovery. *See, e.g.*, *Rivera v. Inc. Vill. of Farmingdale*, 06-cv-2613 (DRH) (ARL), 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007). "It, of course, is black letter law that the mere filing of a motion to dismiss the complaint

does not constitute 'good cause' for the issuance of a discovery stay." *Barrett v. Forest Labs., Inc.*, 12-cv-5224 (RA), 2015 WL 4111827, at *4 (S.D.N.Y. July 8, 2015).

To establish "good cause," Defendants bear the burden of showing that (A) there are strong arguments that the Trustee's Amended Complaint lacks merit, (B) engaging in discovery at this point would unduly burden Defendants, (C) the Trustee will not be prejudiced by a discovery stay, and (D) the nature and lack of complexity of this proceeding warrants a discovery stay. *See, e.g.*, *Rivera*, 2007 WL 3047089, at *1. As set forth below, Defendants here cannot establish any of these factors to obtain such "extraordinary" relief. *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, 13-cv-509 (VLB), 2014 WL 3895923, at *8 (D. Conn. Aug. 8, 2014).

## A.    Defendants Cannot Make a "Strong Showing" that this Action Lacks Merit

Defendants fail to satisfy their burden of making a "'strong' or 'substantial' showing that the [Trustee's] claims lack merit." *City of New York v. YRC Worldwide Inc.*, 14-cv-4322 (FB) (RLM), 2015 U.S. Dist. LEXIS 961, at *3 (E.D.N.Y. Jan. 6, 2015).[3]  At best, Defendants present a competing factual narrative, which is no reason to dismiss the Trustee's Amended Complaint or grant Defendants' motion to stay discovery because the Court may not weigh different plausible

---

[3] Citing dated case law, Defendants argue that a stay of discovery is appropriate when a motion to dismiss is "not unfounded in the law" and "appears to have substantial grounds." Def. Br. at 7 (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 94-cv-2120 (LMM) (AJP), 1996 WL 101277, at *4 (S.D.N.Y. Mar. 7, 1996)). Indeed, several older cases cited by Defendants mention the "not unfounded in the law" standard. *See, e.g.*, *Gandler v. Nazarov*, 94-cv-2272 (CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994). But as one of the recent cases cited by Defendants makes clear, such a formulation is inappropriate because it "would seem to encompass a motion with little chance of succeeding," and as a result, such an "overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary discovery delay in many cases." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (*quoted in* Def. Br. at 7). Instead, in *Hong Leong*, the court assessed whether there were "substantial arguments for dismissal" or "a strong showing that the plaintiff's claim is unmeritorious." *Id.* at 72-73. This Court should apply the latter standard.

inferences at this stage of the litigation. *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680

F.3d 162, 184-85 (2d Cir. 2012).

### 1.   The Legal Standard on a Motion to Dismiss

Rule 8 provides that a complaint seeking relief "must contain . . . a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The factual

allegations in a complaint must suffice to "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "For

a complaint to be sufficient, the claim asserted must be one that, in light of the factual allegations,

is at least 'plausible.'"  *Anderson News*, 680 F.3d at 182 (quoting *Twombly*, 550 U.S. at 570).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).

A plaintiff need not show that his allegations "are more likely than not true  . . . , as would

be required at later litigation stages such as a defense motion for summary judgment." *Anderson

News*, 680 F.3d at 184; *accord Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer

an agreement [as part of a conspiracy] does not impose a probability requirement at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal agreement.").  "Because plausibility is a standard lower than probability, a

given set of actions may well be subject to diverging interpretations, each of which is plausible."

*Anderson News*, 680 F.3d at 184; *see also In re Gawker Media LLC*, 571 B.R. 612, 631 (Bankr.

S.D.N.Y. 2017) ("'Probability' is a much higher bar than 'plausibility'") (Bernstein, J.).

The Second Circuit has explicitly directed that, on a motion to dismiss, choosing between

plausible inferences is not the province of the trial court: "The choice between or among plausible

inferences or scenarios is one for the factfinder . . . .  The choice between two plausible inferences

5

that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News*, 680 F.3d at 184-85 (citations omitted). In other words, "[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* at 185; *accord 11 E. 36th LLC v. 1st Cent. Sav. Bank (In re 11 E. 36th LLC)*, Adv. Pro. No. 14-1819 (RG), 2014 WL 2903660, at *3 (Bankr. S.D.N.Y. June 26, 2014) (denying opposed portions of motion to dismiss because "[i]t is not the Court's role in ruling on a Rule 12(b)(6) motion to choose between the version of events as offered by the Debtor and the version as offered by the Defendants. . . . Rather, the Court must accept the facts in the complaint as true.").

Finally, "fact-specific question[s] cannot be resolved on the pleadings." *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001). "Rather, in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the *assumption that all the [factual] allegations in the complaint are true.*'" *Anderson News*, 680 F.3d at 185 (emphasis in original) (quoting *Twombly*, 550 U.S. at 555); *accord Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 156-57 (2d Cir. 2017). "Even if their truth seems doubtful, 'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Anderson News*, 680 F.3d at 185 (quoting *Twombly*, 550 U.S. at 556). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 50 U.S. at 556; *see also Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 772 (Bankr. S.D.N.Y. 2008) (Bernstein, J.) ("On a motion to dismiss a complaint under [Rule] 12(b)(6), a court must 'accept all factual allegations in the complaint as true,' . . . even if the allegations are doubtful in fact.") (citations omitted).

Based on the foregoing, Defendants cannot demonstrate a "strong showing" that they will prevail on their motion to dismiss. Their arguments for dismissal are largely factual in nature and, hence, cannot be considered, let alone credited, by this Court on a motion to dismiss. For instance, Defendants argue at length that it would be implausible for them to build a leverage business around an investment company they suspected to be operating as a fraud.[4] (MTD Br. at 18-19.) This self-serving assertion is a factual opinion, nothing more. Moreover, Defendants' main attack on the Lionel Trouvain allegations is that the Trustee's version of that story is different than their version, arguing that "the issue was one of allocation of verification that they are where they say they are." (Xu Decl. (ECF 126) Ex. 1 at 13:4-6; MTD Br. at 21-24.) Rather than support Defendants' motion to dismiss, that argument actually demonstrates its futility as well as the need for discovery to determine if material issues of fact exist. Lastly, Defendants disagree with the Trustee's allegations that they enriched themselves to the tune of billions of dollars off the backs of BLMIS's investors, and submit their own facts to the contrary. (MTD Br. at 18.) This Court cannot allow Defendants to argue facts through the guise of a legal motion. Accordingly, Defendants failed to make a "strong showing" that their motion to dismiss will prevail here.

## 2.    The Trustee's Allegations of Willful Blindness Are Plausible

The Trustee's allegations, taken together, establish that each Defendant knew of facts suggesting a high probability of fraud at BLMIS and took deliberate steps to avoid confirming these facts.

---

[4] Defendants argue that they would never provide leverage to BLMIS Feeder Funds if they suspected BLMIS was engaged in fraud. But that is a factual issue dependent on other factual questions, such as whether Defendants believed their collateral had any intrinsic or market value.

7

a.    **The Relevant Standard Is Willful Blindness of Fraud**

What constitutes willful blindness in a SIPA recovery action was first addressed in *Katz*

where the District Court held that a lack of good faith requires a showing that the defendant

"chooses to blind himself to the red flags that suggest a high probability of fraud." *Katz*, 462 B.R.

at 455. The District Court rejected the notion that suspicion of a Ponzi scheme in particular was

needed:

> [E]ven the Trustee does not appear to undertake the dubious task of plausibly
> pleading that the defendants knowingly invested in a Ponzi scheme. Both sides
> also agree, however, that if the defendants willfully blinded themselves to the fact
> that Madoff Securities was involved in *some kind of fraud*, this too might,
> depending on the facts, constitute a lack of good faith.

*Id.* at 454 (emphasis added).

The District Court applied the holding from *Katz* to the Trustee's other adversary

proceedings in the *Good Faith Decision*:

> [I]n *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y.2011), this Court held that, in a SIPA
> proceeding such as this, a lack of "good faith" requires a showing that a given
> defendant acted with " 'willful blindness' to the truth," that is, he "intentionally
> [chose] to blind himself to the 'red flags' that suggest a high probability of fraud."

516 B.R. at 21.

These District Court decisions are in line with the underlying concept of the willful

blindness doctrine, which, as articulated by the Supreme Court and Second Circuit, is that a court

must penalize a defendant who strongly suspects illegal activity, but looks away to avoid

confronting its nature in order to later plead ignorance. *See Global-Tech Appliances, Inc. v. SEB

S.A.*, 563 U.S. 754, 766-67 (2011) (well-established objective of the willful blindness doctrine is

to punish those who "deliberately shield[] themselves from clear evidence" of a crime) (citing

*Spurr v. United States*, 174 U.S. 728, 735 (1899)); *United States v. Reyes*, 302 F.3d 48, 54 (2d Cir.

2002) (citing cases). In contrast, requiring the plaintiff to show the defendant knew specifics about

the criminal activity would be inequitable "given the ease with which a defendant could otherwise escape justice by deliberately" blinding itself to the specifics of the crime. *Reyes*, 302 F.3d at 54.

This equitable tension is at issue here. Defendants ask this Court to limit the willful blindness standard in *Katz* and the *Good Faith Decision* to dismiss claims against those defendants who suspected that BLMIS was committing a fraud but looked away before confirming the specific fraud that BLMIS was perpetrating. In other words, Defendants ask this Court to reward—rather than punish—defendants who suspected Madoff was likely committing securities fraud, but went out of their way to avoid confirming it. Such a result would run contrary to the District Court's willful blindness test and the equitable principles that have long been the bedrock of the willful blindness doctrine in American jurisprudence.

The only support for Defendants' reworking of the willful blindness standard is cherry-picked language taken from the *Merkin* and *Legacy* decisions. But those cases involved six-year avoidance claims requiring the court also to determine whether the safe harbor under section 546(e) applied because the defendant lacked actual knowledge of a Ponzi scheme. *See Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 24 (Bankr. S.D.N.Y. 2016); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 126-27 (Bankr. S.D.N.Y. 2014). Defendants conflate the need to establish knowledge of a Ponzi scheme in section 546(e) with a lack of good faith under section 550. Section 546(e), however, was designed to safeguard the securities industry specifically by providing a safe harbor to certain participants in that industry. *See Legacy*, 548 B.R. at 28 ("The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors."). Given this, the District Court found that this safe harbor should not protect initial transferees in this liquidation proceeding who knew that the securities purportedly traded were fake. *See id.* at 28-29; *Merkin*, 515 B.R. at 138-39. Put simply, defendants who have actual

9

knowledge of the fact that no securities were being traded have no right to the protection of the safe harbor. Applying that same standard to section 548(a)(1)(A) and section 550 makes no sense because if a defendant has actual knowledge of no trading, section 546(e) would not apply at all and that defendant would be subject to the full panoply of avoidance actions available to the Trustee.

Section 550, in contrast, is a general provision that incorporates the basic bankruptcy concepts of fraud and insolvency, which are implicated whenever the transferor is, or could be, committing a fraud. 11 U.S.C. § 550(a) (incorporating section 548 of the Bankruptcy Code, which in turn makes avoidable transfer made "with actual intent to hinder, delay, or defraud"). For purposes of section 550, there is no meaningful difference whether the transferee suspects his transfer originated from a Ponzi scheme, from illegal trading activity, or that the transferee otherwise suspects that the debtor is merely lying about its investment strategy or ability to pay creditors. In all of these situations there is no good faith on the part of the transferee and therefore no defense as to why those funds should not be recovered and distributed equitably. In short, while Defendants conflate actual knowledge of section 546(e) and lack of good faith under section 550, there is no legal basis to do so.

A comprehensive reading of *Legacy* also undermines Defendants' definition of willful blindness. In *Legacy*, the Court found that defendants thought Madoff might have been trading securities. *Legacy*, 548 B.R. at 31 (finding the first prong of willful blindness pleading and also finding that defendants' suspected that Madoff was "cherry picking," which necessarily "involved actual, albeit fraudulent trading."); *see also* Motion to Dismiss Hearing Transcript, *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286 (SMB), ECF 131 at 33:23-24 (court noting that the entire report on BLMIS used and relied on by defendants took "the view that [BLMIS is] actually

10

trading securities"). Yet the Court still concluded that the first prong of willful blindness had been adequately pleaded because the critical fact that must be pleaded is that *fraud* was suspected. The same result should apply here.

### b.    The Trustee Plausibly Alleges Defendants Suspected Fraud

Taken as a whole, the Trustee's Amended Complaint plausibly alleges the first prong of willful blindness, regardless of which willful blindness test is used. The Trustee pleads that each Defendant (i) questioned "the true validity of the orders" made by BLMIS (Am. Compl. ¶ 114), (ii) knew indicia of fraud that showed that BLMIS's investment returns and purported option trading practices were simply impossible (*id.* ¶¶ 152-63, 241-339), and (iii) believed that "Madoff's unfailing records was [sic] too good to be true." (*Id.* ¶¶ 127-37.) While Defendants challenge these allegations with different explanations and interpretations, their fact-intensive arguments only demonstrate the need for discovery, not that it should be stayed.

In 2003, after years of acquiescing to Madoff's unlawful demands that BLMIS's role as Oreades's custodian and investment manager stay hidden, and after years of reviewing account statements and trade confirmations that showed impossible returns, BNP Paribas and BNP Securities Services prepared an internal audit and compliance report that memorialized their significant concerns about BLMIS's operations and the legitimacy of its trades. (*Id.* ¶¶ 84-117.) Among other things, the report recognized the need to confirm in real time what stocks BLMIS purportedly purchased and that BLMIS's dual roles violated the bank's compliance and risk rules that required a strict separation between a fund's investment adviser and custodian in order to avoid and detect fraud. (*Id.* ¶¶ 112, 114, 116, 241-53.) In July 2003, BNP Securities Services executive Lionel Trouvain wrote an email about the concerns reflected in this report and concluded there was no "opportunity to consider the true validity of the orders" (*id.* ¶ 114), "and that the risk [to] BNP Paribas is very extensive" due to BLMIS's seven-day delay in reporting trades, BLMIS's

overlapping (yet hidden) responsibilities as Oreades's custodian, broker-dealer, and investment manager, and BLMIS's inability even to confirm "where the US Treasury Bills held in the Oreades USD and EUR portfolios are held." (*Id.* ¶¶ 112, 114-17.) Defendants attempt to downplay the significance of these concerns by arguing that "the issue was one of allocation of verification that they are where they say they are." (Xu Decl. (ECF 126) Ex. 1 at 13:4-6.) But not knowing the location of assets, as Defendants themselves describe, allows Ponzi schemes and other fraudulent misappropriations to occur. As fiduciaries who were earning advisory and custodial fees for doing nothing more than giving their clients' money to BLMIS (like Merkin and Kingate did), Defendants sought to identify where their clients' assets were located to verify that those assets in fact still existed. (Am. Compl. ¶¶ 106, 110, 114, 117; *Picard v. Oreades SICV et al.*, Adv. Pro. No. 10-5120 (SMB), ECF 1 ("Oreades Compl."), ¶ 57.)

Subsequent efforts to alleviate these concerns failed. For example, BNP Securities Services sought to obtain independent verification of trades, including real-time access to BLMIS's trade confirmations. (Am. Compl. ¶¶ 118-23; *see* Oreades Compl. ¶ 57 (quoting a letter sent to Madoff seeking "periodic independent verification of the Fund's assets").) Within a few weeks, Frank DiPascali—BLMIS's CFO and Madoff's right-hand man who pleaded guilty to a ten-count information charging him with involvement in the Ponzi scheme—and Friehling & Horowitz—a three-person accounting firm that was obviously incapable of auditing a multibillion-dollar entity like BLMIS—each responded to Mr. Trouvain describing purportedly "segregated" accounts. (Am. Compl. ¶¶ 24, 38, 39, 86, 254-57; Oreades Compl. ¶¶ 58, 59; *see* Xu Decl., Ex. 1 at 12:12-13:7.)

These assurances, however, did not assuage Defendants' concerns of potential securities fraud as demonstrated by the fact that BNP Paribas and BNP Securities Services thereafter

persisted in trying to verify the legitimacy of BLMIS's trades. <u>To be sure, BNP Paribas and BNP</u>
<u>Securities Services still suspected that BLMIS was engaging in fraud.</u>  In particular, BNP Paribas
and BNP Securities Services later asked Access to request that BLMIS provide real-time trading
confirmations and also requested that BLMIS's identity and role with Oreades be disclosed to
regulators. (Am. Compl. ¶¶ 118-23.)  When these requests were denied and they still had no other
opportunity to verify the "true validity" of the trades, BNP Paribas and BNP Securities Services
shut down Oreades in August of 2003.  (*Id.* ¶¶ 97-126; Xu Decl., Ex. 1 at 41:5-10.)

Under similar circumstances, courts in this District have denied motions to dismiss in
numerous BLMIS-related actions brought by the Trustee.  For example, this Court held that the
Trustee sufficiently alleged willful blindness when defendants allegedly had real-time concerns
that "BLMIS cleared its own trades and did not use a third party custodian."  *Merkin*, 515 B.R. at
141; *see also Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-1161 (SMB), 2015 WL 4734749,
at *14-15 (Bankr. S.D.N.Y. Aug. 11, 2015) ("*Kingate*") (denying motion to dismiss claims that
defendants were willfully blind when defendants allegedly shielded Madoff and BLMIS from
public scrutiny).  The same result should follow here.

Also under similar circumstances, Defendants would be liable for securities fraud based on
their conduct as administrator and custodian of Oreades.  *See* 17 C.F.R. § 240.10b-5 ("It shall be
unlawful for any person, directly or indirectly, . . . To make any untrue statement of a material fact
or to omit to state a material fact necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading …."); *Anwar*, 728 F. Supp. 2d at
423, 427 (finding securities fraud claims against administrator and custodian defendant adequately
pleaded when defendant allegedly "issued false statements containing inflated NAV calculations
and account balance information" because it "blindly and recklessly relied on information

13

provided by Madoff and the [BLMIS Feeder] Funds to calculate and disseminate the Funds' NAV

. . . even though that information was manifestly erroneous"); *see also Loreley Fin. (Jersey) No. 3*

*Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174-76 (2d Cir. 2015) (allegations that bank's

offering documents omitted hedge fund's role in selecting collateral and position counter to

offering sufficed to plead securities fraud because even under Rule 9(b), plaintiffs need not "plead

facts that make fraud more probable than other explanations"); *SEC v. Pentagon Capital Mgmt.*,

612 F. Supp. 2d 241, 262 (S.D.N.Y. 2009) (denying motion to dismiss securities fraud claims

against investment manager and its CEO who concealed their identities to engage in deceptive and

manipulative trading).

### c.   The Trustee Plausibly Alleges Defendants Turned a Blind Eye to Fraud

Defendants then turned a blind eye to the fraud they suspected at BLMIS when they

purchased ZCM and built their leverage business on BLMIS Feeder Funds.  For example, BNP

Paribas, BNP Securities Services, and BNP Arbitrage learned of "SocGen's concerns regarding

Madoff" from a ZCM employee (Am. Compl. ¶ 162) while they conducted due diligence on the

ZCM acquisition.  (*Id.* ¶¶ 152-64.)  Yet Defendants made an exception for BLMIS so they could

become a "world leader" in the leverage and derivatives industries.  (*Id.* ¶¶ 139, 151, 164.)

Following the ZCM acquisition, Defendants continued to turn a blind eye to the fraud at BLMIS

by weakening bank-wide diligence procedures and making exceptions to standard policies and

procedures for BLMIS-related deals alone.  (*Id.* ¶¶ 165-79.)  For example, Defendants stripped the

ability of the due diligence team to recommend, reject, or veto proposed transactions for BLMIS-

related deals only, despite the knowledge of the increased risk of exposure to fraud inherent in

single-manager investments like those with BLMIS Feeder Funds.  (*Id.* ¶¶ 144, 167, 178.)  And

Defendants made only one on-site visit to BLMIS in 2008, after years of working with Madoff, and contrary to their own policy did not even memorialize what occurred. (*Id.* ¶¶ 170, 174-77.)

The plausible inference that should be drawn from these allegations is that Defendants turned away from confirming their suspicions that BLMIS was conducting a fraud. As this Court found in *Merkin*, watered-down due diligence that leads a defendant to ignore, rather than confront, suspicions of fraud is consistent with willful blindness. 515 B.R. at 141-42; *see also Kingate*, 2015 WL 4734749, at *14 (finding willful blindness adequately pleaded because "[a]lthough the due diligence was wanting, [defendants] closely monitored the performance of the [BLMIS Feeder Funds] on a regular basis, and their review disclosed impossible trades").[5] Financial compensation has consistently been held as a compelling motive for willful blindness. *See, e.g.*, *Merkin*, 515 B.R. at 143. And the "aura of profitability" and reputational benefit that Defendants gained by becoming a prominent leverage provider also plausibly motivated Defendants to ignore their suspicions that Madoff was committing securities fraud or conducting illegal trading activity. *See Kingate*, 2015 WL 4734749, at *16.

### 3.    Defendants' Other Arguments for Dismissal Fail

None of Defendants' ancillary arguments render the Amended Complaint meritless as to support their motion to stay. The cases cited for their jurisdictional argument are inapposite because they involve defendants with no presence in the United States and barely any activity that took place here. *See To v. HSBC Holdings PLC*, 15-cv-3590 (LTS), 2017 WL 816136, at *5-6 (S.D.N.Y. Mar. 1, 2017); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016).[6]

---

[5] Defendants' own stripped-down diligence practices and refusal to investigate is different from the purported due diligence conducted in *Legacy*, where defendants ostensibly hired a third party to investigate concerns regarding BLMIS. *See Legacy*, 548 B.R. at 29.

[6] Here, the bulk of the activities giving rise to the Trustee's claims took place in New York, three Defendants have permanent offices and employees in New York, BNP Cayman had a New York-

Moreover, as the Supreme Court recently confirmed, Section 546(e) applies as a safe harbor only to initial transferees in an avoidance action—not to subsequent transferees in a recovery action. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S.Ct. 883, 888 (2018) ("[T]he plain meaning of § 546(e) dictates that the only relevant transfer for purposes of the safe harbor is the transfer that the trustee seeks to avoid."); *see also* Xu Decl., Ex. 1 at 60:19-61:17). And the Trustee's Amended Complaint is properly before the Court. *See* MTD Opp. Br. at 36-37.

**B.    Proceeding with Discovery Now Would Not Impose an Undue Burden on Defendants**

During the discovery conference on January 23, 2018, the Court instructed the Trustee to move to compel discovery and Defendants to make their "argument about the burden with evidence of what the burden is, just don't tell me it's too burdensome." (Forman Decl., Ex. M at 8:9-12.) Defendants, however, have failed to establish that the requested discovery is unduly burdensome.

Defendants do not attempt to quantify the burden, either in time, expense, or other cost as required for a motion to stay discovery. *See, e.g., Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, 13-cv-7187 (SJF) (SIL), 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014) (finding "conclusory allegations" that discovery requests were "unduly overbroad" or "time-consuming and burdensome" were "insufficient to establish good cause for staying discovery"). For example, in *YRC Worldwide*, the court denied a motion to stay after finding the defendant's claim that "unlimited discovery would be costly and time consuming"

---

based agent conducting BLMIS-related business, and BNP Cayman represented that its principal place of business was in New York. (*See* Am. Compl. ¶¶ 4, 8, 52, 53, 55, 63, 65, 71, 142, 151, 216, 408-12; Calvani Decl., Ex. 1, at 11, ¶ 30(e); *id.*, Exs. 2, 3, 4; *see generally* MTD Opp. Br. at 28-33.) Moreover, BNP Cayman was a direct investor in BLMIS Feeder Funds, which under *Picard v. Bureau of Labor Ins. (SIPC v. BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012), a case upon which Defendants explicitly rely (Def. Br. at 9), alone provides basis for jurisdiction as the Trustee outlined in his opposition to Defendants' motion to dismiss.

was conclusory.  2015 U.S. Dist. LEXIS 961, at *3.  The defendant had not provided affidavits or information "describing the nature of the burden of production" or an estimate of the expected costs, and the defendant's motion to dismiss had "identifie[d] a multitude of issues, some of them complex in nature, from which it may reasonably be inferred that a resolution of the motion will not be an expeditious one."  *Id.* at *3-4.  Even *In re Term Commodities Cotton Futures Litigation*, a case on which Defendants rely, premised a discovery stay on the defendants' burden, which they substantiated by indicating that responding to one particular request would entail reviewing over 90,000 pages of documents at a cost of over 1,000 attorney hours and at least $250,000. 12-cv-5126 (ALC) (KNF), 2013 WL 1907738, at *6 (S.D.N.Y. May 8, 2013) (*quoted in* Def. Br. at 13). Defendants make no such attempt to substantiate their purported burden here.

Instead, Defendants claim that discovery will be burdensome because of foreign data privacy and bank secrecy laws.  (Def. Br. at 11-12.)  But this strawman argument ignores the Trustee's good-faith offer only to engage in limited domestic document discovery pending resolution of the motion to dismiss.  (Forman Decl. at ¶ 28.)  This offer, which remains on the table, addresses these concerns by limiting discovery to 29 unique requests for documents located in, or accessible from, the United States.  Engaging in limited document discovery in this way would not impose any undue burden on Defendants, particularly where they have represented that they have preserved relevant evidence (Xu Decl. at ¶ 23) and have not disputed that three of the Defendants engaged in the conduct at issue from their permanent office in New York.  (Tr. Br. at 6 n.5.)

Nor have Defendants offered any compromise to address their purported burden beyond counteroffering that the parties bring the issue back to the Court.  Despite Defendants' claim of good-faith efforts (Def. Br. at 20), an offer of a full discovery stay is not a compromise.  And

17

Defendants' concern that future "disagreements among the parties may then result in discovery disputes that will require the time and resources of the Court" (Def. Br. at 12) is speculative and irrelevant. The potential for future discovery disputes is not relevant on a motion to stay discovery, and in fact militates in favor of commencing discovery now. Nevertheless, to lessen any burden on the time and resources of the Court, the Trustee has offered to submit this dispute and any future discovery dispute to the Discovery Arbitrator. (Forman Decl. at ¶¶ 20, 26.) This offer remains open.

Finally, Defendants' protest that the limited requests are overbroad is baseless. These requests, which Defendants describe as seeking documents concerning BLMIS and BLMIS Feeder Funds as well as Defendants' communications and agreements with them (Def. Br. at 12-13), are unquestionably relevant to the claims and defenses in this case. Because the Trustee seeks relevant documents and Defendants have not been able to substantiate their purported burden, their motion to stay discovery fails.

## C.    A Discovery Stay Would Prejudice the Trustee

Defendants place the burden on the Trustee to establish that a discovery stay would prejudice the Trustee. (Def. Br. at 14.) The burden, however, is on Defendants as the moving party to establish that a stay would *not* prejudice the Trustee. *See Long Island Hous. Servs., Inc. v. Nassau Cty. Indus. Dev. Agency*, 14-cv-3307 (ADS) (AKT), 2015 WL 7756122, at *3-4 (E.D.N.Y. Dec. 1, 2015) (denying motion to stay discovery where further delay would prejudice the plaintiffs because the case had been pending for 19 months without discovery).

Defendants have failed to meet their burden. As Defendants recognize, this case relates to misconduct that stretches back thirty years. (Def. Br. at 2.) And yet—due to no fault of the Trustee— this case has proceeded for nearly six years without discovery. Any further delay would not be a "mere inconvenience" as Defendants claim. (Def. Br. at 14.) Quite the opposite, each

passing day increases the risk that witnesses' memories will fade and documents will get lost. This

risk is heightened here because the events at issue occurred many years ago and the documents at

issue are nearly exclusively in the possession of Defendants and third parties. Contrary to

Defendants' offhand assertion (Def. Br. at 14), this risk is conceivable and has formed the basis of

previous denials of discovery stay motions. *See, e.g., Mirra v. Jordan*, 15-cv-4100 (AT) (KNF),

2016 WL 889559, at *3 (S.D.N.Y. Mar. 1, 2016) ("witnesses' memories . . . fading with time" was

one reason that the plaintiff would suffer unfair prejudice from a discovery stay).

Defendants have not set forth any legal arguments that lessen this risk. Defendants' cases

are factually inapposite and do not otherwise support their untenable position. For example, unlike

in *Anti-Monopoly*, the Trustee and Defendants have not engaged in discovery, which might

mitigate the risk of lost evidence. 1996 WL 101277, at *3 (staying discovery eight days before

agreed-to cutoff for fact discovery where parties already engaged in significant exchange of

discovery). And unlike in *Niv v. Hilton Hotels Corp.*, the Trustee has identified how a stay would

prejudice him here. 06–cv-7839 (PKL), 2007 WL 510113, at *2 (S.D.N.Y. Feb. 15, 2007)

(allowing discovery only on *forum non conveniens* issue where plaintiffs did not attempt to identify

any prejudice). Because Defendants have failed to meet their burden of establishing that the

Trustee would not be prejudiced by a stay, their motion fails.

### D. The Nature and Complexity of this Proceeding Weigh in Favor of Commencing Discovery Now

The nature and complexity of this action, which Defendants did not address in their motion,

weigh in favor of beginning discovery. *See Hachette Distrib. Inc. v. Hudson Cty. News Co.*, 136

F.R.D. 356, 357 (E.D.N.Y. 1991) (denying motion to stay discovery given nature and complexity

of action). Defendants had extensive relationships with Madoff, BLMIS, and more than fifteen

BLMIS Feeder Funds—they loaned money to Madoff directly, sponsored and serviced a BLMIS

Feeder Fund, and provided credit and structured products for more than one dozen BLMIS Feeder Funds and their clients.  (Am. Compl. ¶¶ 84, 89-112, 139-40, 232-40, 340.)  The Trustee's investigation has uncovered nearly $1.4 billion in transfers from fifteen BLMIS Feeder Funds to six BNP Paribas entities from as early as 1999.  (*Id.* ¶¶ 12, 340.)  Beginning discovery now will assist the Trustee in untangling the complex relationships and transactions among Defendants, BLMIS, and the BLMIS Feeder Funds that led to the transfers Defendants received.

While Defendants contend that the Trustee's discovery requests are "overbroad," the breadth of the requests is commensurate with Defendants' relationships with BLMIS and the BLMIS Feeder Funds.  *See State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, 07-cv-0051 (ENV) (MDG), 2007 WL 2908205, at *4 (E.D.N.Y. Oct. 4, 2007) (denying stay of discovery because "the breadth of those requests [was] commensurate with the nature and scope of the claims alleged"); *see also Greater New York Taxi Ass'n v. City of New York*, 13-cv-3089 (VSB) (JCF), 2017 WL 4012051, at *5 (S.D.N.Y. Sept. 11, 2017) (compelling additional discovery due to "the seriousness of the allegations levied against the defendants," the "tens of millions of dollars" in alleged damages, "the size of [plaintiff]'s enterprises," and "the potential evidentiary value of documents in the custodians' possession").  The scope of Defendants' relationships with Madoff, BLMIS, and the BLMIS Feeder Funds was entirely their choice, and it dictates the scope of the discovery sought here.  Because Defendants did not address these factors and they weigh in the Trustee's favor, Defendants' motion to stay discovery fails.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Trustee's motion to compel document discovery and deny Defendants' cross-motion to stay discovery.

Date:  March 23, 2018
       New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ David J. Sheehan*
    45 Rockefeller Plaza
    New York, New York 10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    David J. Sheehan
    Email: dsheehan@bakerlaw.com
    Mark A. Kornfeld
    Email: mkornfeld@bakerlaw.com
    Torello H. Calvani
    Email: tcalvani@bakerlaw.com
    Jonathan A. Forman
    Email: jforman@bakerlaw.com
    Joanna F. Wasick
    Email: jwasick@bakerlaw.com
    Marco Molina
    Email: mmolina@bakerlaw.com
    Matthew B. Friedman
    Email: mfriedman@bakerlaw.com

    *Attorneys for Irving H. Picard, Trustee for the*
    *Substantively Consolidated SIPA Liquidation*
    *of Bernard L. Madoff Investment Securities*
    *LLC and the Estate of Bernard L. Madoff*