**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for the BNP Paribas Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> BNP PARIBAS S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services S.A. <br><br> Defendants. | Adv. Pro. No. 12-01576 (SMB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE**
**BNP PARIBAS DEFENDANTS' MOTION TO STAY DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT .................................................................... 1

ARGUMENT ................................................................................................ 4

    I.   The Motion To Dismiss Is Strong ........................................................ 4

       A.   The Trustee Cannot Establish Willful Blindness ............................ 4

       B.   The BNPP Defendants Have Demonstrated That Their Motion
           To Dismiss Is Strong ...................................................................... 6

           i.   The Trustee Cannot Overcome The BNPP Defendants' Good
               Faith And Value Defense ........................................................ 7

           ii.   The Motion To Dismiss Contains Other Persuasive Bases
               For Dismissal ............................................................................ 10

    II.   Discovery Would Be Disproportionately Burdensome ....................... 11

    III.   The Trustee Will Not Be Prejudiced By A Short Stay Of Discovery .................. 14

CONCLUSION .......................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### Rules and Statutes

Fed. R. Civ. P. 26(c) .................................................................................................... 1

### Cases

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) .............................................................................. 9

*Boelter v. Hearst Commc'ns, Inc.*,
No. 15 Civ. 03934 (AT), 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ............................. 6

*City of New York v. YRC Worldwide Inc.*,
No. 14-cv-4322 (FB) (RLM), 2015 U.S. Dist. LEXIS 961 (E.D.N.Y. Jan. 6, 2015) ......... 13

*Coene v. 3M Co.*,
303 F.R.D. 32 (W.D.N.Y. 2014) ...................................................................................... 5

*Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*,
No. 13-cv-7187 (SJF) (SIL), 2014 WL 4384712 (E.D.N.Y. Sept. 3, 2014) ...................... 13

*Fields v. Bannister*,
No. 2:08-CV-00659-KJD-GWF, 2013 WL 321876 (D. Nev. Jan. 25, 2013) .................... 4

*Greater New York Taxi Ass'n v. City of New York*,
No. 13 Civ. 3089 (VSB) (JCF), 2017 WL 4012051 (S.D.N.Y. Sept. 11, 2017) ................ 13

*Hachette Distribution, Inc. v. Hudson Cty. News Co.*,
136 F.R.D. 356 (E.D.N.Y. 1991) ...................................................................................... 12

*Harris v. Wu-Tang Prods., Inc.*,
No. 05 Civ. 3157(WHP), 2006 WL 1677127 (S.D.N.Y. June 16, 2006) ........................... 5

*In re Herald, Primeo, & Thema Sec. Litig.*,
No. 09 Civ. 289 RMB, 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011) ............................. 13

*In re Merrill Lynch & Co.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) .............................................................................. 4

ii

*In re Term Commodities Cotton Futures Litig.*,
No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ................. 13, 14

*Kaplan v. Morrison*,
No. 81 Civ. 3096 (RO), 1984 WL 733 (S.D.N.Y. Aug. 6, 1984) ..................................... 4

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ....................................................................................... 9

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
138 S. Ct. 883 (2018) .................................................................................................. 10

*Mirra v. Jordan*,
No. 15-cv-4100 (AT) (KNF), 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) ....................... 15

*Negrete v. Citibank, N.A.*,
No. 15 CIV 7250 (RWS), 2015 WL 8207466 (S.D.N.Y. Dec. 7, 2015) ........................... 6

*Panetta v. SAP Am., Inc.*,
294 F. App'x 715 (3d Cir. 2008) ................................................................................. 14

*Picard v. Ceretti ("Kingate")*,
No. 09-1161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .................... 9

*Picard v. Legacy Capital Ltd.*,
548 B.R. 13 (Bankr. S.D.N.Y. 2016) ........................................................................... 7, 8

*Picard v. Merkin*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ......................................................................... 9

*Picard v. Merkin*,
No. 09-01182 (SMB), 2017 WL 6568755 (Bankr. S.D.N.Y. Dec. 22, 2017) ................... 7

*Picture Patents, LLC v. Terra Holdings LLC*,
No. 07 Civ. 5465 (JGK) (HBP), 2008 WL 5099947 (S.D.N.Y. Dec. 3, 2008) ................. 12

*Rivera v. Inc. Vill. of Farmingdale*,
No. 06-cv-2613 (DRH) (ARL), 2007 WL 3047089 (E.D.N.Y. Oct. 17, 2007) ................. 12

*Robertson v. People Magazine*,
No. 14 Civ. 6759, 2015 WL 9077111 (S.D.N.Y. Dec. 16, 2015) ................................... 11–12

*S.E.C. v. Pentagon Capital Mgmt. PLC*,
612 F. Supp. 2d 241 (S.D.N.Y. 2009) .......................................................................... 9–10

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*,
No. 07-cv-0051 (ENV) (MDG), 2007 WL 2908205 (E.D.N.Y. Oct. 4, 2007) .................    13

*United States ex rel. Ameti v. Sikorsky Aircraft Corp.*,
No. 3:14-CV-1223(VLB), 2016 WL 10490528 (D. Conn. Nov. 28, 2016)......................    6

*United States v. Quinones*,
317 F.3d 86 (2d Cir. 2003) ............................................................................................    5

*Vasquez v. Reilly*,
No. 15-CV-9528 (KMK), 2017 WL 946306 (S.D.N.Y. Mar. 9, 2017) ...........................    4

The BNPP Defendants, by their undersigned attorneys, submit this Reply Memorandum of Law in response to the Trustee's Memorandum of Law in Opposition to Defendants' Cross-Motion to Stay Discovery (the "Opposition" or "Opp.") and in further support of their Motion to Stay Discovery ("Motion to Stay" or "Mot. Stay.").[1]

## PRELIMINARY STATEMENT

Discovery in this action should be stayed under Federal Rule of Civil Procedure 26(c) for the short period of time necessary for the Court to resolve the pending Motion to Dismiss.[2]  The Trustee's opposition papers only confirm the wisdom of this course of action.  Indeed, the Trustee devotes nearly the entirety of his Opposition to (improperly) attempting to re-argue the BNPP Defendants' good faith and value defense, making clear that the Trustee himself recognizes the dispositive nature and substantial strength of the BNPP Defendants' arguments for dismissal on that basis.  Not only has the Trustee failed to counter the BNPP Defendants' demonstration that they have presented a strong motion to dismiss, but he also fails to undermine the BNPP Defendants' self-evident argument that responding to the Trustee's discovery requests (which span over two decades, reach back thirty years, and cover all BLMIS-related documents) will be exceedingly burdensome and costly.  Nor has the Trustee identified any prejudice (other than generic claims of "fading witness memories") that would result in the event that discovery (if necessary) commenced a few months from now, rather than today.  Therefore, the three "stay" factors all favor the granting of the BNPP Defendants' Motion to Stay.

---

[1]    Unless otherwise indicated, capitalized terms have the meaning ascribed to them in the Memorandum of Law in Support of the BNP Paribas Defendants' Motion to Stay Discovery and in Opposition to the Trustee's Motion to Compel, ECF No. 127.

[2]    Mem. Law. Supp. BNP Paribas Defs.' Mot. Dismiss, ECF No. 107 ("Motion to Dismiss" or "Mot. Dismiss").

*First*, the BNPP Defendants' dismissal arguments are strong.  To begin, the Trustee does not dispute that the threshold issue of which complaint is the operative one in the action—and, accordingly, which claims are actually at issue—remains unresolved.  Mot. Stay 8.  Thus, the Court's resolution of the Motion to Dismiss is a necessary step before the costly and burdensome process of discovery proceeds, if at all.

Furthermore, the Trustee's lengthy attempt to re-argue the BNPP Defendants' alleged willful blindness is unpersuasive and is in any event a tacit recognition of the strength of that defense.  The Trustee's presentation of new willful blindness allegations in his Opposition to the Motion to Stay, Opp. 11–13, is procedurally improper, and those allegations should be disregarded.  Moreover, his efforts to reformulate the willful blindness standard to necessitate only that "*fraud* was suspected," Opp. 10–11, contravene controlling precedent that requires him to show that each of the BNPP Defendants subjectively believed that Madoff was probably not engaged in the securities trading in which he purported to engage.  More important still, even applying the Trustee's own loose interpretation of the willful blindness standard, the Trustee has failed to show that any of the BNPP Defendants subjectively believed there was a high probability that BLMIS was engaged in *fraud*.  Indeed, there is nothing in the Trouvain-related correspondence, which forms the centerpiece of the Trustee's willful blindness allegations, that suggests Trouvain subjectively believed there was a high probability of *fraud*.

In addition to the good faith and value defense, the BNPP Defendants have presented strong personal jurisdiction defenses, in light of recent case law in this District requiring the Trustee to tie his claims to the BNPP Defendants' alleged forum contacts, Mot. Dismiss 35–38, and have shown that many of the Trustee's new claims are time-barred, Mot. Stay 10.  Furthermore, because the Trustee has not alleged actual knowledge as to either Tremont or the

BNPP Defendants, Section 546(e) similarly provides a basis for dismissing many of his claims. The Trustee has failed to rebut the BNPP Defendants' showing that these defenses are not unfounded in law and in fact strong.

*Second*, the Trustee fails to counter the BNPP Defendants' claim that responding to his broad discovery requests would be a costly and burdensome process. Mot. Stay 11–13. Indeed, responding to the requests would require significant document location and retrieval efforts from systems that are either currently not used or otherwise archived, Xu Decl. ¶ 20, not to mention risk implicating various foreign laws and require coordination with various foreign BNP Paribas entities. Mot. Stay 11, 13. The Trustee's claim that the "nature and complexity" of the proceeding, Opp. 19–20, necessitate a broad discovery process supports the BNPP Defendants' burden argument. The fact remains that discovery would be a complex, lengthy, and costly process, which may be completely or significantly obviated in the next few months by the Court's resolution of the Motion to Dismiss.

*Third*, the Trustee has not identified any prejudice that will result from waiting a few months to begin discovery (if discovery is necessary at all). That "documents may get lost" over time generally, Opp. 3, says nothing about the prejudice he will suffer over just a few months, particularly when the BNPP Defendants confirmed to the Trustee that document preservation efforts are being employed, Mot. Stay 6; Xu Decl. ¶ 23, and where staying discovery for only a short period does not bar the Trustee from seeking documents down the line should the Motion to Dismiss be resolved in his favor. Mot. Stay 14.

Accordingly, discovery should be stayed pending the decision on the Motion to Dismiss and the Trustee's Motion to Compel should be denied.

# ARGUMENT

## I.    The Motion to Dismiss Is Strong

The Trustee devotes nearly the entirety of his Opposition to a belated attempt to salvage the willful blindness allegations in the purported Amended Complaint.  The Trustee's effort to *augment* his obviously deficient arguments on willful blindness—nine weeks after briefing on the Motion to Dismiss has ended and two weeks after oral argument on that motion took place— are improper and unpersuasive.  More important for purposes of the Motion to Stay, the Trustee's effort to re-argue the willful blindness issue confirms what was already clear: the BNPP Defendants' argument to dismiss on that basis is potentially dispositive and strong.  Similarly, the Trustee has failed to counter the BNPP Defendants' showing that their personal jurisdiction, 546(e), and statute-of-limitations defenses are sufficiently strong to merit a stay of discovery during the pendency of the Motion to Dismiss.

### A.    The Trustee Cannot Establish Willful Blindness

It is a well-settled principle in this district that defendants "are generally not required to defend against a 'moving target.'"  *Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *12 (S.D.N.Y. Mar. 9, 2017); *see also In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 390 (S.D.N.Y. 2003) (plaintiffs should not be entitled to a "third bite at the apple").  Indeed, courts routinely refuse to grant leeway to parties who are "seeking in effect to reargue their . . . motion to dismiss, [which is] . . . a matter that should have been presented by reargument of the original motion . . . *not on a discovery motion*."  *Kaplan v. Morrison*, No. 81 Civ. 3096 (RO), 1984 WL 733, at *4 (S.D.N.Y. Aug. 6, 1984) (emphasis added).[3]  Here, the

---

[3]    *See also Fields v. Bannister*, No. 2:08-CV-00659-KJD-GWF, 2013 WL 321876, at *8 (D. Nev. Jan. 25, 2013) (rebuking a plaintiff for using independent motion practice as "an impermissible surreply which seeks to raise arguments he did not make in his . . . opposition to [the] instant [m]otion to [d]ismiss").  The Trustee's actions are particularly egregious because he has submitted new arguments

Trustee has impermissibly attempted to use his brief in this discovery dispute to add factual

allegations and legal arguments, in a failed effort to bolster his opposition to the BNPP

Defendants' Motion to Dismiss.

For instance, the Trustee uses his Opposition to change his characterization of a supposed

audit report related to BLMIS yet again.  *Compare* Opp. 2 (describing the alleged audit report as

being "prepared by two Defendants" and animated by the need to "avoid and detect fraud"), *with*

Compl. ¶ 53, *Picard v. Oreades SICAV*, Adv. Pro. No. 10-05120 (Bankr. S.D.N.Y. Dec. 2,

2010), ECF No. 1 (alleging that Trouvain sent his July 10, 2003 email only "after reviewing a

legal opinion on BLMIS that [Access] received from *Access's* outside counsel" without reference

to a report authored by BNPP SA or BNPP SS (emphasis added)) *and* Am. Compl. ¶ 113

(containing a single reference to a report allegedly prepared by BNPP's Group Risk Management

department with no exposition of its contents) *and* Trustee's Mem. Law Opp. Defs.' Mot.

Dismiss Am. Compl. 12, ECF No. 110 ("The Report was drafted by BNP Paribas, shared with

BNP Securities Services . . .").  The Opposition, also for the first time, conclusorily claims (or at

least implies) that the BNPP Defendants understood that Frank DiPascali was "Madoff's right-

hand man" who was complicit in the Ponzi scheme and that Friehling & Horowitz was a three-

person firm, Opp. 12, allegations that are wholly absent from the purported Amended Complaint.

Additionally, the Trustee seems to suggest for the very first time in his Opposition that his

allegation of the BNPP Defendants supposedly "not knowing the location of [BLMIS] assets"

---

following oral argument on the Motion to Dismiss.  *See Coene v. 3M Co.*, 303 F.R.D. 32, 39 (W.D.N.Y.
2014); *United States v. Quinones*, 317 F.3d 86, 90 n.2 (2d Cir. 2003) (noting that courts normally do "not
consider arguments raised for the first time . . . at or after oral argument") (citation omitted); *Harris v.
Wu-Tang Prods., Inc.*, No. 05 Civ. 3157 (WHP), 2006 WL 1677127, at *3 (S.D.N.Y. June 16, 2006)
(same).

meant that they should have recognized Madoff's secrecy as something that "allows Ponzi schemes and other fraudulent misappropriations to occur." *Id.*

Because the Trustee's new factual allegations and arguments cannot be considered for the purposes of deciding the Motion to Dismiss, they can have no bearing on the success of the Motion to Dismiss and, therefore, are irrelevant to whether the Court should grant the Motion to Stay. In any event, even were these allegations and arguments considered by the Court, they fail to salvage the Trustee's purported Amended Complaint, for the reasons set forth below.

**B.    The BNPP Defendants Have Demonstrated That Their Motion To Dismiss Is Strong**

The Trustee's lengthy, belated effort to attack the Motion to Dismiss fails to undermine the BNPP Defendants' showing that the motion is sufficiently strong to warrant a stay.[4]

The Trustee's three-page recitation of well-known standards for evaluating a motion to dismiss is a red herring. The Motion to Dismiss plainly does not rely on "fact" assertions, Opp. 6–7, but rather relies only upon the Trustee's pleadings and a New York Times article that was incorporated by reference in the purported Amended Complaint. *See generally* Mot. Dismiss (citing to only legal authority, the Trustee's own pleadings, and a single document the

---

[4]    The Trustee claims that the standard for assessing the strength of a dispositive motion is whether it is "strong" rather than whether it is "not unfounded in the law." Opp. 4. Contrary to the Trustee's assertion, recent case law makes clear that the latter standard—*i.e.*, that a stay of discovery is appropriate when a motion to dismiss is "not unfounded in the law"—is still appropriate. *See United States ex rel. Ameti v. Sikorsky Aircraft Corp.*, No. 3:14-CV-1223 (VLB), 2016 WL 10490528, at *2 (D. Conn. Nov. 28, 2016) (staying discovery pending resolution of motion to dismiss because "it d[id] not appear" that any of defendant's claims in its motion to dismiss were "insubstantial or unfounded in law"); *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (staying discovery where "review of the arguments presented in . . . support [of the pending motion to dismiss] suggest that none are frivolous," since a "stay of discovery should be granted where a motion to dismiss 'is potentially dispositive, and appears to be not unfounded in the law'"); *Negrete v. Citibank, N.A.*, No. 15 CIV. 7250 (RWS), 2015 WL 8207466 (S.D.N.Y. Dec. 7, 2015) (similarly holding "the Defendants' motion to dismiss [to be] sufficient to support a stay because it 'is potentially dispositive, and appears to be not unfounded in the law'"). But the point is unimportant, as the Motion to Dismiss easily satisfies either standard.

Trustee incorporates by reference). Furthermore, the Motion to Dismiss deals not with the accuracy of the Trustee's allegations, but instead tests their legal sufficiency or plausibility. *See, e.g.*, *id.* at 17–19.

### i. The Trustee Cannot Overcome The BNPP Defendants' Good Faith And Value Defense

The Trustee's Opposition also continues to rehash the repeatedly-rejected argument that the relevant standard for assessing willful blindness is whether the defendant subjectively believed there was a high probability of fraud generally. Opp. 8–11. Contrary to the Trustee's revisionist history of controlling precedent, this Court recognized only three months ago that a finding of willful blindness requires a showing that the defendant "entertained the subjective belief that there was a high probability that BLMIS was not actually trading securities." *Picard v. Merkin*, No. 09-01182 (SMB), 2017 WL 6568755, at *6 (Bankr. S.D.N.Y. Dec. 22, 2017). Indeed, the Court has made clear that what matters for willful blindness is whether the defendant subjectively believed that Madoff was probably not engaging in the securities trading in which he purported to engage, rather than that he was involved in some form of vague, undefined fraud untethered to securities. *See, e.g.*, *Picard v. Legacy Capital Ltd.*, 548 B.R. 13, 35–36 (Bankr. S.D.N.Y. 2016) (holding that the "first prong of willful blindness" requires that defendant subjectively "strongly suspected" that Madoff's options "trades were not real"); Reply Mem. Law. Supp. BNP Paribas Defs.' Mot. Dismiss 6–7, ECF No. 116 ("MTD Reply"). Applying the correct legal standard, the Trustee has utterly failed to plead that each BNPP Defendant was willfully blind to the fact that Madoff was not actually engaging in the trading of securities he claimed to have traded. *Id.*

Furthermore, even under the Trustee's increasingly lenient formulation[5] that willful blindness requires allegations that the BNPP Defendants subjectively believed there was a high probability that Madoff was engaged in *fraud*, his allegations fail.  Specifically, there is no basis to infer that Trouvain—the centerpiece of the Trustee's willful blindness narrative—subjectively believed that Madoff was probably engaged in some kind of fraud.  Trouvain raised questions about compliance with Luxembourgian regulations, outdated trade confirmation practices, and the indexing of trades to BNPP SS client accounts, none of which shows that he subjectively believed Madoff was engaged in fraud of any kind, especially given that Trouvain's questions about correctly indexing trades were answered satisfactorily in portions of the correspondence that the Trustee misleadingly excised from the purported Amended Complaint, although he had included them in the *Oreades* complaint.  Xu Decl., Ex. 1, 37:22–38:22 (the Court noting that failing to comply with Luxembourg regulatory requirements and failing to issue instantaneous trade confirmations are "not fraud").  Additionally, the case that the Trustee mainly relies upon for his argument—*Legacy*—is wholly distinguishable because it involved allegations that the defendants knew that at least some of Madoff's options trades were impossible and also suspected that Madoff was engaged in cherry-picking or front-running, *i.e.*, that his trading was fraudulent, allegations that are nowhere to be found in the purported Amended Complaint. *Legacy*, 548 B.R. at 31–32.

---

[5]    Indeed, the Trustee's proposed willful blindness standard has astoundingly relaxed since the oral argument two weeks ago.  *Compare* Xu Decl., Ex. 1, at 46:22–47:1 (arguing bad faith subjective belief requires showing that "Madoff is lying about doing what he is supposed to be doing to a *material extent* [such] that . . . BLMIS is going to be in a position where it's *obviously* . . . not going to at some point be able to pay off *all* their creditors" (emphasis added)), *with* Opp. 10 ("merely lying about its investment strategy" is sufficient to meet bad faith standard).

Moreover, the Trustee's attempt, Opp. 13, to compare the allegations in the purported

Amended Complaint to those in *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) and

*Picard v. Ceretti* ("*Kingate*"), No. 09-1161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y.

Aug. 11, 2015), lays bare the deficiencies of his allegations.  Merkin was subjectively aware of

*and* shared with others that the alleged trading volume was impossible, reported trades were

sometimes outside the daily trade price range and pricing was impossible, and BLMIS's

performance was too good to be true, among other things. *Merkin*, 515 B.R. at 141.  The

*Kingate* defendants were deemed actually aware of the Madoff Ponzi scheme based on the

allegations that they were part of Madoff's inner circle and in constant communication with him,

had been warned that it was not possible to perform due diligence on BLMIS, knew that many of

Madoff's trades were implausible, and actively abetted Madoff in deflecting inquiries made by

investors (including by scripting false responses to their questions).  *Kingate*, 2015 WL 4734749,

at *3, *13–15.  The allegations against the BNPP Defendants come nowhere near those lodged in

*Merkin* and *Kingate*.

Recognizing that he cannot make the requisite showing for willful blindness under

controlling precedent, the Trustee unpersuasively grasps at securities fraud cases that are entirely

inapposite.  Opp. 13–14.  The Trustee's desperate (and irresponsible) claim that the conduct at

issue might constitute securities fraud is entirely unfounded and should not be considered.

Moreover, the Trustee's attempted reliance on securities fraud cases is misplaced, as these cases

either rely on the lesser standard of mere recklessness, *see Anwar v. Fairfield Greenwich Ltd.*,

728 F. Supp. 2d 372, 427 (S.D.N.Y. 2010), or involve defendants alleged, with the support of

significant email evidence, to have "conspired" to further the fraud at issue, *see Loreley Fin.*

*(Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 167 (2d Cir. 2015), or to have been

9

the "architects" of such fraud, *see S.E.C. v. Pentagon Capital Mgmt. PLC*, 612 F. Supp. 2d 241,

259 (S.D.N.Y. 2009). Here, the Trustee has not alleged—nor could he—that the BNPP

Defendants were responsible for engineering Madoff's Ponzi scheme.

Because, even with the benefit of his new allegations and legal theories, the Trustee fails

to demonstrate that the BNPP Defendants held the requisite subjective beliefs necessary to

ground a finding of willful blindness, he has necessarily failed at demonstrating that they turned

away from such beliefs. Moreover, his concessions of numerous instances of due diligence

performed by the BNPP Defendants are the very affirmative steps that defeated such a finding in

*Legacy*. Mot. Dismiss 28–33.

### ii.  The Motion To Dismiss Contains Other Persuasive Bases For Dismissal

The BNPP Defendants' other arguments for dismissal are likewise strong. The cases

cited by the BNPP Defendants demonstrate that, under recent federal personal jurisdiction

jurisprudence, plaintiffs must tie forum contacts with the particular claims at issue, which the

Trustee clearly has not done.[6] Also, Section 546(e) bars the Trustee's recovery of transfers

outside the two-year lookback period, as he has failed to demonstrate that either Tremont or the

BNPP Defendants had actual knowledge of the Madoff fraud.[7] Finally, many of his new claims

are time-barred. Mot. Stay 10.

---

[6]      MTD Reply at 16–19; Xu Decl., Ex. 1, at 56:1–3 (the Court asking "[w]hat would [looking at the sign on the New York BNP Paribas skyscraper] tell me about the relationship of that sign to the transactions that are at issue in this case?").

[7]      The Trustee's reliance on the recent Supreme Court decision in *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 888 (2018), is wholly meritless. *Merit* involved the narrow issue of whether an initial transfer receives Section 546(e) protection from clawback where no covered entity is party to the transfer. Xu Decl., Ex. 1, at 61:8–11 (the Court noting that the *Merit* holding does not prevent the transfers from falling under the safe harbor because "Madoff was making settlement payments on account of securities contracts").

## II.  **Discovery Would Be Disproportionately Burdensome**

The Trustee does not seriously dispute that, until such time as the Court decides the

Trustee's belated request for leave to amend, the operative complaint in the action is the Original

Complaint, which is bereft of allegations related to the BNPP Defendants' supposed willful

blindness and due diligence practices,[8] as well as of references to feeder funds and transfers

newly raised in the purported Amended Complaint, subjects at which the Trustee's discovery

requests—even as modified—take aim.  Mot. Stay 8.  Against this precarious procedural

backdrop, commencing discovery now for documents spanning more than two decades, reaching

back more than thirty years, and concerning BLMIS or any BLMIS feeder fund in any way is

disproportionately burdensome.  Mot. Stay 11–13, 19.

*First*, the Trustee does not dispute that responding to the requests—which cover, among

other things, communications, agreements, several committees, and meeting minutes that relate

in any way to BLMIS or BLMIS feeder funds, Forman Decl., Exs. B–E—would require a

significant expenditure of resources for the location, collection, and retrieval of potentially

responsive materials.[9]  Mot. Stay 11.  Indeed, the requested discovery—even as modified—is

particularly burdensome because the extremely dated nature of the sought-after discovery would

require that the BNPP Defendants overcome various technological hurdles for the location and

retrieval of documents, including accessing archived materials and servers which are not

currently used.  Mot. Stay 11; Xu Decl. ¶ 20.  In addition, even after documents are retrieved,

reviewing them for responsiveness would likewise be a time-consuming process that could be

---

[8]     The Original Complaint would clearly be subject to dismissal as well.  Therefore, the Trustee should not get discovery on that complaint during the pendency of the Motion to Dismiss.

[9]     Given the breadth of the requests, the Trustee's contention that domestic discovery may be less burdensome than foreign discovery, Opp. 17, does nothing to demonstrate that his "limited" discovery proposal is *not* burdensome.

mooted following a decision on the Motion to Dismiss. *Cf. Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) (denying motion to compel documents concerning meetings and decision-making processes because such discovery "would significantly burden [d]efendants"). Furthermore, the risk of discovery disputes that may arise either from the foreign citizenship of the BNPP Defendants or from disagreements as to particular requests—rather than being merely speculative, Opp. 18—is a cognizable burden when evaluating whether to stay discovery. *See Picture Patents, LLC v. Terra Holdings LLC*, No. 07 Civ. 5465 (JGK) (HBP), 2008 WL 5099947, at *3 (S.D.N.Y. Dec. 3, 2008).

*Second*, the Trustee *does not dispute* that the sought-after discovery is broad and instead only contends that it is necessarily so due to "the nature and complexity of this action." Opp. 19–20. That this case is "complicated," however, militates in favor of *staying* rather than *commencing* discovery before the complex steps of document location, retrieval, and collection are set in motion. Moreover, the Trustee does not dispute that his modified proposal includes catch-all requests that call for, among other things, *any* document concerning BLMIS or BLMIS feeder funds, which defeats any claim that the purported modifications meaningfully reduce the breadth of the sought-after discovery. Mot. Stay 18–19. In fact, the Trustee's discovery requests, which seek *every* document in the BNPP Defendants' possession, stretching back *over thirty years*, with *any* connection to BLMIS or BLMIS feeder funds, Mot. Stay 11 (citing Forman Decl., Exs. B–E), are overbroad even in light of the complexity of the action, given that the alleged transfers in the purported Amended Complaint span only four years. *See* Am. Compl., Exs. D–I, K.[10]

---

[10]    The cases cited by the Trustee, Opp. 20, are wholly inapposite. *See Rivera v. Inc. Vill. of Farmingdale*, No. 06-cv-2613 (DRH) (ARL), 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007) (denying a discovery stay based exclusively on the conclusion that it was "doubtful" that the action would be "dismissed in its entirety"); *Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 357,

*Finally*, the Trustee errs in claiming that the BNPP Defendants must quantify the burden at issue by providing a specific number of documents to be reviewed and corresponding cost estimates. Opp. 16–17.[11] Courts in other BLMIS-related proceedings have acknowledged the enormous "costs of conducting discovery in New York, including, without limitation, the intensity and expense of U.S. discovery, and compliance with foreign (*i.e.*, non-U.S.) privacy laws." *In re Herald, Primeo, & Thema Sec. Litig.*, No. 09 Civ. 289 (RMB), 2011 WL 5928952, at *15 (S.D.N.Y. Nov. 29, 2011). Given the substantive and temporal breadth of the Trustee's requests (essentially, all documents related to BLMIS or BLMIS feeder funds for a twenty-two year period), it is self-evident that responding to those requests will be very costly. In this regard, the Trustee's reliance on *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *6 (S.D.N.Y. May 8, 2013), only supports the BNPP Defendants' costliness argument, given that, unlike here—where document location, retrieval, and collection are still necessary in response to the Trustee's 108 requests—the $250,000 in estimated costs in that case were associated with a *single* request for documents that had *already* been produced to a government regulator. *Id.* at *1 (document request for documents previously produced to the CFTC). Ultimately, it will be far more efficient for both parties to discuss, scope, collect, and review documents in a single instance, rather than going

359 (E.D.N.Y. 1991) (premising denial of stay motion on inefficiencies given that not all defendants had moved for a stay); *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. 07-cv-0051 (ENV) (MDG), 2007 WL 2908205, at *4 (E.D.N.Y. Oct. 4, 2007) (denying stay motion based on weaknesses in the motion to dismiss and because defendants failed to show how they would be unduly burdened); *Greater New York Taxi Ass'n v. City of New York*, No. 13 Civ. 3089 (VSB) (JCF), 2017 WL 4012051, at *5 (S.D.N.Y. Sept. 11, 2017) (holding that a mere four custodians was proportional to the needs of the case on a motion to compel, after discovery had already commenced).

[11]    The BNPP Defendants' analysis of the breadth of the Trustee's requests far surpasses the defendant's vague comment of "a large quantity of documents" in *Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, No. 13-cv-7187 (SJF) (SIL), 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014), and the necessarily "conclusory" claims of burden in *City of New York v. YRC Worldwide Inc.*, No. 14-cv-4322 (FB) (RLM), 2015 U.S. Dist. LEXIS 961, at *3 (E.D.N.Y. Jan. 6, 2015), in which the discovery requests did not appear to have been served.

through that entire process now, only to repeat the process later with the benefit of understanding

the full scope of discovery, if any is required. *C.f. Panetta v. SAP Am., Inc.*, 294 F. App'x 715,

718 (3d Cir. 2008) (denying motion to amend complaint, in part due to duplicative discovery

costs for defendants who would be forced to repeat "processes that were already complete").

### III.    The Trustee Will Not Be Prejudiced By A Short Stay Of Discovery

The Trustee does not dispute that the resolution of the Motion to Dismiss will take place

in only a few short months and, therefore, the only prejudice that can be considered in resolving

the Motion to Stay is that which could occur in that period. Mot. Stay 14. There is no such

prejudice.

*First*, the argument that the litigation has been pending for six years has no bearing

whatsoever on whether the Trustee would suffer any prejudice by waiting just a short while to

commence discovery. Indeed, clarity on the scope of claims, time period, and issues that remain

in the action would *increase* the efficiency of the discovery process since the parties would not

be aiming at a moving target.

*Second*, the Trustee's contention that "memories will fade" and "documents will get lost,"

Opp. 18–19, is unpersuasive, since those are always inherent risks of litigation, *see In re Term

Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *7 (discounting plaintiffs' assertions

that "witnesses' memories fade" and documents could be "destroyed" because these "are the

usual litigation risks that affect all the parties equally, regardless of the amount of time permitted

for discovery"), and will be minimally impacted by the short amount of time during which the

requested stay would be in effect.[12] Furthermore, the BNPP Defendants have confirmed to the

---

[12]    Indeed, that risk did not move the Trustee to request discovery in this case any earlier than eleven months after the *Extraterritoriality Decision*.

Trustee that appropriate document preservation measures have been taken.  Mot. Stay 6; Xu.

Decl. ¶ 23.[13]

Finally, the Trustee does not dispute that in the event the Motion to Dismiss is decided in

his favor, there will be no prejudice to his ability to seek discovery from the BNPP Defendants at

that juncture.  Mot. Stay 14.  Thus, the most efficient course of action would be to stay discovery

until the parties have clarity as to what claims, if any, will remain.

**CONCLUSION**

For the foregoing reasons, the BNPP Defendants respectfully request a stay on all

discovery obligations under the Federal Rules pending a decision on the Motion to Dismiss and

otherwise that the Court deny the Trustee's Motion to Compel.

Dated: New York, New York
　　　　March 26, 2018

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　**CLEARY GOTTLIEB STEEN &
　　　　　　　　　　　　　　　　HAMILTON LLP**

　　　　　　　　　　　　　　　　By: /s/ Breon S. Peace

　　　　　　　　　　　　　　　　Breon S. Peace
　　　　　　　　　　　　　　　　Ari D. MacKinnon
　　　　　　　　　　　　　　　　Donna (Dong) Xu

　　　　　　　　　　　　　　　　One Liberty Plaza
　　　　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　　　　Telephone: 212-225-2000
　　　　　　　　　　　　　　　　Facsimile: 212-225-3999
　　　　　　　　　　　　　　　　*Attorneys for the BNP Paribas Defendants*

---

[13]　　The Trustee's reliance on *Mirra v. Jordan*, No. 15-cv-4100 (AT) (KNF), 2016 WL 889559, at
*3 (S.D.N.Y. Mar. 1, 2016) is misplaced, as the *Mirra* court premised its finding of prejudice on the
conclusion that plaintiff would need to review double the volume of documents if discovery were stayed.