Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff,

7            v.

8    BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

9                    Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   One Bowling Green

14                   New York, NY  10004

15

16                   February 8, 2018

17                   2:05 PM

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  SHEA H.

1    HEARING re Trustee's Motion for an Order Authorizing Limited

2    Discovery on Good Faith Issue pursuant to Fed. R. Civ. P.

3    26(d)(1) (Adv. Pro. Nos. 10-04287; 10-04330; 10-04457; 10-

4    04471; 10-05120; 10-05345; 10-05353; 10-05354; 10-05355; 12-

5    01273; 12-01278; 12-01698; 12-01699 (SMB))

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    O'MELVENY & MEYERS LLP

4        Attorneys for Mistral and Zephyror

5        Times Square Tower

6        7 Times Square

7        New York, NY 10036

8

9    BY:  WILLIAM J. SUSHON

10

11   DAVIS & GILBERT LLP

12       Attorneys for Natixis Financial Products LLC

13       1740 Broadway

14       New York, NY 10019

15

16   BY:  BRUCE M. GINSBERG

17

18   WINDELS MARX LANE & MITTENDORF, LLP

19       Attorneys for the Trustee

20       153 West 56th Street

21       New York, NY 10019

22

23   BY:  HOWARD L. SIMON

24

25

Page 4

1    LATHAM & WATKINS LLP

2         Attorneys for ABN AMRO

3         885 Third Avenue

4         New York, NY 10022

5

6    BY:  CHRISTOPHER HARRIS

7

8    CLEARY GOTTLIEB STERN & HAMILTON LLP

9         Attorney for Citibank, N.A., Citicorp North America,

10        Inc.

11        One Liberty Plaza

12        New York, NY 10006

13

14   BY:  CARMINE D. BOCCUZZI, JR.

15        PASCALE BIBI

16

17   ALSO PRESENT TELEPHONICALLY:

18

19   NATHANEL S. KELLEY

20   DAVID J. SHEEHAN

21   EMILY MATHIEU

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Madoff.

3              MS. GRIFFIN:  Good afternoon, Your Honor.  Regina

4      Griffin, BakerHostetler, counsel for the Trustee.

5              THE COURT:  Good afternoon.

6              MR. SIMON:  Good afternoon, Your Honor.  Howard

7      Simons from Windels Marx, also for the Trustee.

8              MR. BOCCUZZI:  Good afternoon, Your Honor.

9      Carmine Boccuzzi, Cleary Gottlieb Steen & Hamilton, for

10     Citibank.  And with me is my colleague, Pascale Bibi.

11             THE COURT:  Okay.

12             MS. GRIFFIN:  Good afternoon, Your Honor.

13             THE COURT:  Good afternoon.

14             MS. GRIFFIN:  Your Honor, the Trustee respectfully

15     submits that good causes exists for the discovery sought for

16     the reasons we put forth in our papers.  To sum it up very,

17     very succinctly, Your Honor.  The good cause --

18             THE COURT:  Go ahead.

19             MS. GRIFFIN:  The good cause that we are relying

20     upon is the intervening change in law with respect to the

21     good faith defense that took place after the Trustee filed

22     the claims at issue.

23             But also, Your Honor, it has to do with the fact

24     that we are dealing here not with your typical case under

25     the Federal Rules, but with a Bankruptcy Trustee who is

Page 6

1     given by Congress the express powers for pre-Complaint

2     discovery under Rule 2004.

3                THE COURT:  Okay.  And you took it, right?

4                MS. GRIFFIN:  Yes, Your Honor.  But, of course, we

5     took it at the time.  Basically, we did everything we needed

6     to do to plead to the law that existed at that time.

7                THE COURT:  I saw a lot of questions though in the

8     2004 discovery relating to the legality of BLMIS and the due

9     diligence conducted by the Defendants.  So what more could

10    you have asked for?

11               MS. GRIFFIN:  Well, Your Honor, frankly,

12    everything that we did at the time was guided -- and I just

13    want to take you back.  And everything in hindsight looks

14    like you coulda, shoulda, woulda.  But at the time, we had

15    already had a decision by Judge Lifland; I think it was

16    Picard v. Merkin.  Also, I think Your Honor came out with a

17    decision shortly thereafter that the typical procedure here

18    was that the Court wouldn't even consider a motion to

19    dismiss on the good faith defense.

20               Once the Trustee using those broad investigative

21    powers to investigate, as you know, thousands of lawsuits,

22    thousands of claims; once we had enough to plead what we

23    needed to plead, we didn't want to bring before the Court

24    unnecessary discovery disputes and compel them.

25               And by the way, we worked with the Defendants to

Page 7

```
 1    narrow the scope, as we should.  At the time, all we had to

 2    do was basically identify the Defendants who received

 3    subsequent transfers from initial transferees and with

 4    specificity the transfers that they received.

 5             And so, while we had gotten more information from

 6    certain Defendants, once we had enough with that, we weren't

 7    going to engage in a protracted battle, particularly given

 8    the contracted time period in which to conduct all of that

 9    investigation and file all those lawsuits.  And so, I'm

10    sorry --

11             THE COURT:  I'm sorry, go ahead.  I had a more

12    general question.

13             MS. GRIFFIN:  I'm happy to --

14             THE COURT:  All right.  Getting back to facts of

15    this case, under what circumstances should a Plaintiff who

16    can't plead a plausible claim be allowed to take discovery

17    in order to be able to plead a plausible claim?

18             MS. GRIFFIN:  Your Honor, in a situation, I would

19    throw this question back at you.  If we were in the 2004

20    time period and the law had changed, we would have good

21    cause to bring the discovery demands we've sought for the

22    information that we're asking for right now, because now,

23    it's necessary to plead a cause of action.

24             And, Your Honor, I think I read In Re. Sun Edison

25    said that good cause under 2004 exists where you see --
```

Page 8

1            THE COURT:  We're past 2004.

2            MS. GRIFFIN:  Right.

3            THE COURT:  And I'm not necessarily limiting my

4     question to a bankruptcy case where a Trustee or somebody

5     has 2004 powers.

6            But just as a general question: I'm a Plaintiff.

7     I can't plead a plausible cause of action or my cause of

8     action just been dismissed because it's legally

9     insufficient.  Are you saying that a Plaintiff in that

10    situation should always be given the opportunity to take

11    discovery in order to plead a plausible cause of action?

12            And if not, what are the circumstances generally

13    under which a Plaintiff should be able to take discovery,

14    merits-based discoveries, in order to plead a plausible

15    cause of action?

16            MS. GRIFFIN:  I think, Your Honor, it's the -- in

17    order to plead a cause of action.  All of the instances that

18    you're talking about, the cases that you will see, are going

19    to be cases where the parties were parties to the

20    transactions at issue.

21            And so, what we're saying is that there is no

22    bright-line rule that say cannot take merits discovery.

23    26(d) gives you the discretion, it's in your sound

24    discretion under the circumstances.

25            THE COURT:  I assume it's an exception that

Page 9

1    swallows the rule.

2            MS. GRIFFIN:  The norm -- you're absolutely right,

3    Your Honor.  The norm typically is to proceed in that

4    manner.  But even in cases that the Defendants cite to

5    themselves and which we cite to, the Court allowed

6    discovery, even in the face of a motion to dismiss, where

7    the justifications of good cause existed under all the

8    factors that went forward.

9            And yes, in some of those instances, it involved

10   preliminary injunctions.  But the point is is good cause

11   exists for relief all of the time where there's an

12   intervening change in law.  And so, there's no bright --

13   there's no bright-line rule that you can't --

14           THE COURT:  Let me interrupt you.

15           MS. GRIFFIN:  Sure.

16           THE COURT:  If you were filing the Complaint today

17   as a normal litigant, the intervening change of law wouldn't

18   matter.  So if you couldn't assert a viable cause of action

19   today, under what circumstances could you take merit-based

20   discovery in order to be able to assert a plausible cause of

21   action?

22           MS. GRIFFIN:  I guess, Your Honor, are you talking

23   about a bankruptcy to --

24           THE COURT:  Because it sounds like you may be

25   arguing an exception that's law of the rule.

Page 10

1              MS. GRIFFIN:  I don't, Your Honor.  I think this

2      is the -- this is one of those unusual circumstances.

3              THE COURT:  Okay.  Tell me what the facts are in

4      this case that make it unusual.

5              MS. GRIFFIN:  Sure.  The unusual facts of this

6      case, Your Honor, is we are a Bankruptcy Trustee who would

7      typically have Rule 2004 powers.  Because of the pending

8      proceeding rule, those powers generally cease, as a general

9      rule -- again, that's what the case law says -- because the

10     Courts want to make sure that the parties that are the

11     target of that Rule 2004 discovery would have the

12     protections of the Federal Rules of Civil Procedure.

13             Here, we're in a paradox, Your Honor, that if we

14     were in 2004 right now, we would be able to seek this

15     discovery.  But because we're not, the Trustee is pleading

16     to a new standard; not just has a pleading burden, but he

17     has a new standard of subjective willful blindness where he

18     has to know what the turning away was, the internal decision

19     powers.

20             And all this Trustee is asking for, Your Honor, is

21     this -- in this limited circumstance, this is a very limited

22     circumstance where there's been an intervening change in

23     law, he merely wants to be on the same footing as all

24     Trustees going forward.

25             THE COURT:  You know, I didn't read every one of

Page 11

1    the Complaints, but every Complaint I read had an allegation

2    that the Defendants willfully blinded themselves.  So you

3    must have had a factual basis under Rule 9 or 11 to make

4    that assertion.

5              MS. GRIFFIN:  Sure.  I mean, Your Honor, all the

6    facts that are in there talk about how the inquiry notice

7    standards exists, what they knew or should have known under

8    the circumstances.

9              And so, Your Honor, the facts are what bear it all

10   out.  And all we are saying is that we are seeking just to

11   have the opportunity to know from the Defendants, many of

12   whom acknowledge they have not produced any documents

13   whatsoever, what that turning away is.  So that's pretty

14   much what we're talking about.

15             THE COURT:  All right.  I still don't understand

16   how Rule 2004 makes this case special.  It sounds like it

17   makes it worse, only because usually, it doesn't have the

18   right to take any kind of discovery.

19             MS. GRIFFIN:  Well, I think, Your Honor, that the

20   way you pose the question is is why is this different?  This

21   is different because every other litigant comes to it as a

22   participant in their own transactions.  Congress anticipated

23   that we would have -- the Trustee would have a right to

24   investigate.  And without the documents of the Defendants,

25   that's what we need to be able to --

1          THE COURT:  But you didn't transact with the

2     subsequent transferees; you have nothing to do with them.

3          MS. GRIFFIN:  Well, I guess, in most instances,

4     that's right, Your Honor, although some of them might think

5     you did have something.

6          THE COURT:  And in every commercial dispute, you

7     don't necessarily interact with the party you're suing.

8          MS. GRIFFIN:  I can't argue with that statement,

9     Your Honor.

10          THE COURT:  All right.

11          MS. GRIFFIN:  But in this circumstance, we're just

12     in a situation that I think you recognize.  Every other

13     Trustee knows that they're going to take expansive, very

14     detailed information about why parties did what they did

15     with respect to their Madoff-connected transactions.

16     Whereas, we're not asking for depositions; we're asking for

17     very limited document discovery.  And there's no

18     prohibition.  That rule is in place to allow you to use your

19     discretion in places where it seems appropriate and justice

20     will result.

21          THE COURT:  Can I ask another question?

22          MS. GRIFFIN:  Of course.

23          THE COURT:  Do you think that in a case like this

24     where you took all this 2004 discovery, and in many cases,

25     asked for the specific discovery that you're now seeking

1    that the equities lie with you?

2              MS. GRIFFIN:  Your Honor, at the time -- again, I

3    know that I'm going to sound like I'm repeating myself.

4    But, but --

5              THE COURT:  I do it all the time.

6              MS. GRIFFIN:  Essentially, Your Honor, every

7    decision we made at the time, we asked for it as time was

8    encroaching on us with the deadlines.

9              To take to Judge Lifland at the time a dispute

10   that we had where our parties said, I'm not answering any of

11   your document demands or I'll answer them, but for this

12   little part, when we didn't need to use that to state a

13   claim; that's what the good cause was under Rule 2004.

14             Why would we take every dispute for discovery when

15   the normal course, as Your Honor has ruled, is that we won't

16   even hear that motion to dismiss on the good faith defense

17   until after discovery has proceeded because it's such an

18   issue of fact intensive decision.

19             THE COURT:  You say that you didn't have to plead

20   it, but you did plead it.  Every Complaint they knew or

21   should have known, which includes knew.

22             MS. GRIFFIN:  Right.

23             THE COURT:  And every Complaint pleads willful

24   blindness.

25             MS. GRIFFIN:  Well, I mean, those are the words

Page 14

1    that are used.  But as Your Honor knows, every single --

2              THE COURT:  Why'd you plead it?

3              MS. GRIFFIN:  Because every single fact turns on

4    this case.  And by the way, Your Honor, every -- I think

5    every lawyer in this room is always going to want to use the

6    words that the Court has described the test is that governs

7    their case.  That is not -- it's not just, hey, that was the

8    law that existed at the time.  Judge Lifland had ruled that

9    what we did was exactly what we needed to do at the time to

10   plead our cause of action.

11             This is not a situation where we just -- we made -

12   - we made no efforts to do anything when we should have.

13   And as a matter of fact, I think the restraint, the working

14   with counsel, the not bringing discovery disputes before the

15   Court shows that --

16             THE COURT:  Like this dispute.

17             MS. GRIFFIN:  I would call this an intervening

18   change in law dispute, Your Honor.  And by the way, all of

19   those cases that we cite in our reply brief?  All of those

20   are instances where the Court has said, you're right, good

21   cause exists to reopen discovery deadlines, good cause

22   exists to even permit a motion for reconsideration.

23             It's not a parsing of what you did in the past;

24   it's a moving forward based on what you know right now.  And

25   what we know right now is that we need to plead to this new

1    standard, and it's a new standard and a new pleading burden.

2    And so, those are the two things that have changed, and

3    we're simply just being asked to be given the same

4    opportunity.  And we respectfully submit that good cause

5    exists.

6              THE COURT:  Thank you.

7              MS. GRIFFIN:  Okay.

8              MR. BOCCUZZI:  Good afternoon, Your Honor.

9    Carmine Boccuzzi.  I'll be presenting the arguments for the

10   transferee defendants, and there are some other lawyers on

11   the defense side here in case there's a specific issue --

12             THE COURT:  Okay.

13             MR. BOCCUZZI:  -- in case Your Honor wants to

14   raise.  The change in law argument, which is really what the

15   Trustee bases their whole motion here today on is really a

16   red herring.

17             As Your Honor identified, the state of mind of

18   these transferee defendants has always been a central issue

19   in this case and was a subject of the Rule 2004 discovery

20   that was served by these folks back before they commenced

21   their litigation; and on which they've gotten discovery from

22   many of the people in this room, as well as untold numbers

23   of other people.

24             It is in the record of this case, and we cite it

25   in our brief, that they're sitting on millions of pages of

Page 16

1    documents.  And, importantly, most of the transferee

2    defendants before Your Honor on this motion are secondary

3    transferees where the primary transferee was the subject of

4    extensive discovery by these folks, including --

5             THE COURT:  But that doesn't necessarily tell them

6    anything about your state of mind.

7             MR. BOCCUZZI:  Well, they have, for example, and

8    they plead it in the Complaint against my client, emails and

9    reported conversations between the primary and the second

10   transferee.

11            THE COURT:  Maybe they can survive a motion to

12   dismiss, and the answer is to make the motion and then we'll

13   see what happens.

14            MR. BOCCUZZI:  Correct.  We should be able to move

15   this Complaint, or they want to amend their Complaint.  And

16   that's the paradigm that Judge Rakoff set forth in the

17   extraterritoriality decision.  He announced the rule about

18   the extraterritorial reach of 550, and he said: Now, on

19   remand, the Trustee shall, if he has the facts, plead them.

20   It wasn't, oh, there's a change of law now; now you get

21   full-blown merits discovery on the issue that you say you

22   need full-blown merits discovery on.

23            And, Your Honor, that's exactly what they want,

24   and that is exactly what 26(d) does not provide for.  And

25   just to be completely clear about that, if you look at the

Page 17

1    document request they're putting forward here, they do it as

2    one, two, three.  Oh, only three document requests.  Of

3    course, there are bullet points; there are 10 document

4    requests.  For my client, they cover a period of nine and a

5    half years; for other folks in this case, eight years, maybe

6    longer.  Those are just -- those are obviously very long

7    time periods.

8            They've cleverly omitted the word all from the

9    front of every one of their document demands, but it's clear

10   that's what they want.  And you need to look no further than

11   Miss Griffin's reply declaration at Paragraph 6.  In that

12   declaration, she is saying that the production they got from

13   Fortis was insufficient.  And why was it insufficient?

14   Quote, "This cannot conceivably encompass all documents

15   related to an eight-year relationship between Fortis and

16   Tremont."  I think Tremont's the primary transferee in that

17   case.

18           It's the feeder fund at issue in our litigation.

19   But my point is, we're in 26(d) land now because they have

20   filed.  So they have rights under the Federal Rules of Civil

21   Procedure and the transferee defendants have those rights.

22           THE COURT:  So let me ask you the same question I

23   asked Miss Griffin.  Under what circumstances should a

24   plaintiff be entitled to, you know, merits-based discovery

25   in order to be able to plead a plausible claim?

1          MR. BOCCUZZI:  You know, you just don't get that.

2          THE COURT:  You're saying that under no

3    circumstances do you get merit-based discovery.

4          MR. BOCCUZZI:  I'm having a hard time thinking of

5    examples.  And I based it on two things, Your Honor: number

6    one, the clear holding in Twombly and Iqbal, which

7    explicitly talks about the gatekeeping function of the

8    12(b)(6).  You got to nudge over the line of plausibility.

9    And if we didn't have that, you're subjecting folks to the

10   burdens of discovery on a claim that otherwise isn't going

11   to survive.  So I think that's in Twombly and Iqbal and the

12   cases that have followed from that.

13         THE COURT:  Have any of the preliminary injunction

14   cases in which it's been granted permit merits-based

15   discovery in order to show a likelihood of success on the

16   merits?

17         MR. BOCCUZZI:  It's an interesting question

18   because I was going to the 26(d) context.  Where, again,

19   26(d) is always talking about what is narrowly needed, and

20   they're talking about things like, in one of the examples in

21   the cases cited, I've got a bunch of foreign defendants and

22   they're about to secrete assets out of the jurisdiction.

23   And so, it's some focused discovery on, you know, some bank

24   accounts, that kind of thing.

25         THE COURT:  Well, that's not really merits-based

Page 19

1    discovery; that's irreparable harm.

2              MR. BOCCUZZI:  Right.

3              THE COURT:  I'm talking more about where if

4    someone seeks a preliminary injunction that says, but in

5    order to show likelihood of success on the merits, I need

6    some discovery.  Are you aware of any cases that have

7    granted that?

8              MR. BOCCUZZI:  We cite a case from the District of

9    Columbia, which was on behalf of handicapped folks suing the

10   D.C. subway system.  I can't remember the exact name of it.

11   But there, I'm pretty sure it was denied, albeit -- and in

12   the context of a preliminary injunction.

13             And usually -- and, again, it's nar- -- in all the

14   cases from my memory of reading them, to the extent anyone

15   ever would get some merits-based discovery, it's always in

16   the PI situation -- or it would be there, which of course,

17   we're not in -- and it's narrow.  Because in that case that

18   I'm recalling about the lawsuit against the subway system,

19   the Court ends up denying a chunk of it saying, you're going

20   too broad in terms of wanting to get what you're trying to

21   get.

22             And the Attkisson case is another case that we

23   cite, where, again, the view was that you're basically

24   hunting for a claim and that's not what you do in the land

25   of 26(d).  And I think that is also how the issue played out

Page 20

1   in the Mendelow case obviously in a case before Your Honor

2   where there's --

3          THE COURT:  Just settled though.

4          MR. BOCCUZZI:  Okay.  But it was -- but I think

5   Your Honor there expressed a concern that there's looking --

6   using discovery to look to see if you've got enough is

7   really not permitted.

8          THE COURT:  I agree with you that under Twombly

9   and Iqbal, you don't get discovery unless you can assert a

10  plausible claim.  But we also had this 26(d)(1) issue, which

11  permits certain expedited discovery.

12         And that's why I asked the question, under what

13  circumstances can you get it if you can't assert a plausible

14  claim without it.  You're telling me never.  I guess Miss

15  Griffin is saying sometimes and this is one of those

16  sometimes.

17         MR. BOCCUZZI:  Right.  And I would say just to,

18  since I got into the facts of that one case I talked about.

19  I guess there are circumstances where it can happen, but

20  it's very narrow, and the case law is insistent on that

21  narrowness, which this -- none of this discovery is narrow.

22         And also, in those cases, it's in service to the

23  concern about preliminary injunction and the issue of

24  irrevocable injury, which, again, is not here.  They've

25  rejected going into the Notaro paradigm, right, which is the

Page 21

1    standard that links Rule 26 to preliminary injunction and

2    irrevocable injury to the more -- to the broader good cause

3    standard.

4              THE COURT:  Well, Judge Lynch thought that was not

5    the correct standard, right?

6              MR. BOCCUZZI:  Correct.  No, I'm saying I --

7              THE COURT:  And he's got a pretty good track

8    record.

9              MR. BOCCUZZI:  I think that's the case, that's the

10   standard that's emerging as the right one.  But all I'm

11   saying is, they can't hang their hat now and say, well, this

12   is like a preliminary injunction situation where I get a

13   peek at the merits.  Because, otherwise, I'm going to lose

14   out on my ability to get a preliminary injunction and,

15   therefore, may suffer irrevocable injury.  That's not our

16   paradigm.

17             THE COURT:  Let me ask you another question.  Is

18   this simply a timing question?  In other words, if I direct

19   the parties to engage in a Rule 26(f) conference, then they

20   can ask for whatever discovery they want, right?

21             MR. BOCCUZZI:  I don't think so, Your Honor,

22   because we're not -- we're in a situation where the

23   Complaints that they have, they say they don't want to stand

24   on them and they don't pass muster.

25             THE COURT:  They do allege knew -- forget about

Page 22

1    the should have known -- they allege knew and they allege

2    willful blindness, so the issues are teed up.  Why can't I

3    just direct you to have a conference and then they'll serve

4    their discovery?

5              MR. BOCCUZZI:  I mean, I think that could only

6    work, Your Honor, if then we say we're going to move against

7    the Complaint, bring a motion to dismiss.

8              THE COURT:  So you move; that doesn't stay

9    discovery.

10             MR. BOCCUZZI:  Excuse me?

11             THE COURT:  If you make a motion, that doesn't

12   necessarily stay discovery.

13             MR. BOCCUZZI:  A motion doesn't necessarily stay

14   discovery, but that's not what they want to do.  They want

15   to amend their Complaint.  So they're saying, Your Honor, I

16   don't have a Complaint that I believe can withstand a motion

17   to dismiss.  I want to amend the Complaint.

18             And, again, I haven't seen any cases where, in

19   that context, the parties nevertheless proceed to discovery

20   on a case that has been abandoned by the Plaintiff.  So

21   they're not saying, Your Honor, here we are --

22             THE COURT:  That's a little strong.  I do -- I do

23   agree with you that there's a certain implication here that

24   they can't assert a plausible claim without the discovery,

25   but I may be wrong.  Some, you know, every case is

1    different.  I looked at a Complaints; it looked like they

2    might have been whistleblowers in some of these cases, and

3    that's a little different than just a plain red flags case.

4              MR. BOCCUZZI:  So going back to you question.

5              THE COURT:  Yeah.

6              MR. BOCCUZZI:  Is it just a matter of timing?  I

7    don't think it's a matter of timing.  I don't think they can

8    proceed to 26(f).  I think if they were to do that, then we

9    would just now have a flip.  Which is this was their motion

10   to get discovery, we would need to make a motion to stay

11   discovery.  And I guess request that they put out a

12   Complaint or do something, and we'd be back, I think, maybe

13   with the mirror images of the issues we're dealing with

14   today.

15             But I think the easy rubric, and the rubric

16   they've handed us in the Court to consider this under, is

17   26(d).  And under 26(d), I don't think they satisfy, if you

18   look at the multifactor test -- and I agree the Court has

19   discretion.  But when all the factors points towards not

20   giving the discovery that's requested, I think is very clear

21   where the discretion must -- how it must be exercised.

22             THE COURT:  Thank you.

23             MR. BOCCUZZI:  Thank you, Your Honor.

24             THE COURT:  I meant to ask you, Miss Griffin, the

25   relationship between your motion to amend and your motion

Page 24

1    for discovery because there's been no objection that I can

2    see to the motion to amend.

3              MS. GRIFFIN:  Sure, Your Honor.  So at the time

4    the good faith decision had come down, and then -- and we

5    were actually preparing this very motion, and then the

6    extraterritorial decision came down.

7              And what we were all trying to do was to do was to

8    move to a point where we would -- we wanted to seek the

9    discovery because of the new standards, but we also knew

10   that we were going to need for leave to replead, and so, we

11   wanted to be timely.  We didn't want any -- there's in every

12   lawsuit, there's always going to be a party that claims

13   something.

14             And so, so what we did is we filed the motion for

15   leave to amend, and then we had all the scheduling orders,

16   Your Honor.  And the whole point of it was the defendants

17   came in and said, wait a minute, we're going to be out on

18   extraterritorial grounds; we don't want to have to litigate

19   the Trustee's issue.

20             I'm sorry, I can see you're not, Your Honor --

21             THE COURT:  No.  I was just, do you want to

22   proceed and amend your Complaints, let's say, within 30 days

23   and leave this issue unresolved?  Of course, I reserve

24   decision over whatever else.

25             MS. GRIFFIN:  So --

1          THE COURT:  Or you're saying it doesn't even pay

2     because I can't assert a claim.

3          MS. GRIFFIN:  We are absolutely not conceding

4     under bad circumstances.

5          THE COURT:  So why don't you just amend, and then

6     we'll see if you survive a motion to dismiss.

7          MS. GRIFFIN:  But, Your Honor, I guess the reason

8     we wanted to ask for the discovery is because we think --

9     and, by the way, I do want to get to some of the case law.

10    You asked the question and I'd like to respond to it.

11         THE COURT:  Okay.

12         MS. GRIFFIN:  But we're not conceding.  There is

13    new information that has come through in other places that

14    we have negotiated; that the entire process was, look, we're

15    going to want to put forth a new amended Complaint anyway in

16    light of the new proceedings.

17         And so, what we were agreeing with the defendants

18    were, let us at least have the discovery motion heard first.

19    If the Court grants it, then you get one.  If the doesn't

20    grant the discovery, then we'll proffer our new amended

21    Complaint and then the judge will decide all of the issues.

22         But let me back up.  You raised the (d)(2) issue.

23    When we made this issue back in 2014, (d)(2) didn't exist.

24    It's that whole point of allowing the Court -- again, it's

25    another flexible tool the Court can exercise to just allow

1    this to proceed, allow our discovery demands to be heard,

2    and show that there's no need for a motion for a stay.

3         THE COURT:  But my discovery has to be informed by

4    something.  I mean, my discretion has to be informed by

5    something.

6         MS. GRIFFIN:  Sure.  So, Your Honor, again, I

7    think good cause is found where there's an intervening

8    change in law.  I understand, I'd like to talk about a

9    couple of the cases that are in case law.

10        I think it's a case we cite, 3M Company v. HSBC

11   Bank.  And in that case, it was a letter of credit case, and

12   it was a situation where they were proceeding on a quick

13   basis.  But the Court did -- it was about basically was a

14   letter of credit, you know, basically being fraudulently

15   induced to be paid on.

16        And the Court did allow in that case, it was Judge

17   Gardephe, allowed limited discovery to take place of HSBC;

18   that goes to the very merits of the issue is the grounds

19   under which the explanation is the reason of the right or

20   lack thereof to demand such payment.  So it went to the

21   merits.

22        We cite to another case, Your Honor, OMG v.

23   Fidelity.  This is another situation where the Court was

24   looking where there was a motion to dismiss pending, and it

25   looked to all the factors.  And there, they decided that the

Page 27

1    Court brought it down to the issue, it comes down to the

2    comparison of the potential prejudice will be suffered by

3    the defendant if discovery is admitted, and that which will

4    be experienced by the plaintiff if denied the opportunity

5    for discovery at this stage.

6           And, again, Your Honor, all we're asking for is,

7    in light of all the new changes, to be heard.

8           And there is one other case that I wasn't -- I

9    didn't provide to the Defendants.  It's just something that

10   we found recently, but I'm happy to give it to counsel.

11   It's the Quintero Trust case.  It's 2009 Westlaw, 3381804.

12          It's an elder law case, in which basically the

13   Court decided that predatory lending claims, in light of the

14   accusations that plaintiffs are very senior and suffering

15   from age-related infirmities, they basically said that the

16   discovery -- he allowed the discovery to go forward

17   basically to allow them to more fully respond to the pending

18   motions to dismiss.

19          The only reason I bring it out, Your Honor, is

20   there are instances where the Courts have said you can do

21   this, there is no prohibition.  Even in the cases they cite

22   to the Court looks at all of the factors: the timing of the

23   request, the need for the request, the scope of the request.

24          I'm not going to get into what everybody's

25   produced.  But suffice to say, Your Honor, that these

Page 28

1   defendants are not retail customers.  They're big banks, and

2   they engaged, in many instances, in multiple Madoff

3   transactions across business groups that crossed entities

4   that crossed borders.

5           What we got from each of these defendants -- from

6   Fortis, we got nothing from the defendant at issue; we got

7   it from a third party, a nonparty Fortis entity that was a

8   U.S. based entity.  So what we got was slivers.

9           I don't want you to think that we are asking for

10  duplicative.  If they've produced everything, we don't --

11  we're not going to force it; that's a meet and confer

12  conversation.  If you've already produced it, we don't want

13  it.  We just want to sit down and start the dialogue.

14          Unless Your Honor has any further questions.

15          THE COURT:  So do you want to hold off on amending

16  the complaints until this issue is resolved?

17          MS. GRIFFIN:  Your Honor, if Your Honor grants us

18  the discovery, then it would give us a more fulsome and fair

19  opportunity to present to you our best claims under these

20  new standards.

21          THE COURT:  So do you want to hold off on amending

22  the complaint?

23          MS. GRIFFIN:  Yes, I'd like to hold off until you

24  decide, Your Honor.

25          THE COURT:  Okay.

Page 29

1              MR. BOCCUZZI:  Your Honor?

2              THE COURT:  Yes.

3              MR. BOCCUZZI:  Just on the cases.  The first two

4    cases that Miss Griffin mentioned were both preliminary

5    injunction cases.

6              THE COURT:  3M and OMG?

7              MR. BOCCUZZI:  Yeah, exactly, Your Honor.  And in

8    OMG, the judge commented how the proposed document requests

9    were, quote, "exceedingly pointed."  And then obviously, I

10   haven't read the Quintero case that was just mentioned.

11   But, I mean, based on the description, it sounded like you

12   had very old plaintiffs and there's probably the concern if

13   they were going to pass away.  Which obviously none of those

14   -- none of these cases are on point or support what the

15   Trustee wants to do here.

16             THE COURT:  You haven't read it, but it's not on

17   point.

18             MR. BOCCUZZI:  Well, I'm not that old, Your Honor.

19             THE COURT:  I am.

20             MS. GRIFFIN:  I guess where I would respond to

21   that, Your Honor, is it's an information inequity.  That's

22   what we're talking about, is those people are elderly and

23   they're facing an information inequity, and that's precisely

24   what we're talking about.  And if you look in our moving

25   papers, there is support for the notion that in a situation

Page 30

1   where you don't have that information because especially

2   you're a Trustee who has to investigate everything.

3           THE COURT:  That whole Trustee argument cuts both

4   ways because the Trustee gets a lot of information under

5   Rule 2004 that a usual ordinary plaintiff doesn't get.

6           MS. GRIFFIN:  Right.  And that's why, Your Honor,

7   we limited.  Again, we're not asking for depositions.  We're

8   asking for limited documents, which we would need for their

9   internal workings.

10          THE COURT:  I'm not so sure they're so limited

11  when you ask for every document related to initial

12  investment and ongoing due diligence.  That's --

13          MS. GRIFFIN:  Your Honor, that is as an issue of

14  there's --

15          THE COURT:  Why did you just ask him for every

16  document that related to BLMIS being a fraudulent activity

17  or fraudulent company?

18          MS. GRIFFIN:  There's a very simple request, and I

19  think we would get baskets of very broad --

20          THE COURT:  I saw it in some of the 2004 requests

21  that's what you asked for.

22          MS. GRIFFIN:  Your Honor, I think what we're

23  talking about can take place.  The narrowing of the request

24  can take place at a meet and confer.  The -- and any

25  lessening of where they're looking for it; that can all take

Page 31

1    place.

2              But using it as a grounds for saying you shouldn't

3    get it at all; that's not it.  We tried to be narrow.  But

4    what we've experienced -- and these are complex cases that

5    involve feeder funds and financial institutional negotiating

6    really complex swaps and derivatives cases.  It takes a lot

7    to figure out.

8              And so, to say that one email or one due diligence

9    analysis, we don't know what we're asking for.  We're not in

10   possession of it.  What we did is we took what we've seen

11   elsewhere and tried to tailor our request to what we think

12   might exist.

13             And it's a conversation, Your Honor, that most of

14   these banks have a due diligence arm.  They have a credit

15   committee.  You can find -- they can figure out very quickly

16   who's going to have the information.  There are going to be

17   key players that have email transactions talking about the

18   very deal, and they could produce those email transactions.

19   That's a significant portion of what's missing.

20             But anyway, that -- Your Honor, I think I said my

21   piece.

22             THE COURT:  Okay, thank you.  I see some other

23   parties' lawyers rising.

24             CHRISTOPHER HARRIS:  Your Honor, Chris Harris of

25   Latham for the ABN AMRO defendants; we were formerly known

```
 1    as Fortis, and I rise just to address some factual issues
 2    that came up.
 3              Just to be clear, the Trustee already requested
 4    all of the categories of documents that they are now
 5    requesting from us again.  We pointed that out in our
 6    briefing and they don't dispute that.
 7              THE COURT:  Well, I think part of the argument is
 8    they may have requested it from one affiliate, but not
 9    necessarily the defendant.
10              MR. HARRIS:  That's right, Your Honor.  But just
11    to make sure it's clear, we produced from the entity they
12    requested.  It's not like they were discovery disputes that
13    they avoided bringing to Your Honor's attention.  They told
14    us which entity they want it collected from.  They told us
15    which funds they thought were relevant, and we gave them
16    everything.
17              THE COURT:  Did the definition of you include
18    affiliates in the documents?
19              MR. HARRIS:  The definition included affiliates.
20    And then we had a meet and confer, and we agreed that it
21    would only be from the entity that they subpoenaed.  And if
22    they -- the idea there's been some change that justifies
23    bringing in new entities, it doesn't make any sense because
24    they had Rule 2004 power up until the day they filed their
25    Complaint.
```

1              They clearly had a draft of it before and knew who

2       they would be suing, and they chose not to exercise that

3       power at the time.  Instead, they asked for the exact

4       documents they're asking for now, which shows that they were

5       indeed relevant to their inquiry notice standard or they

6       wouldn't have asked for it.

7              THE COURT:  That reminds -- you reminded me of

8       something.  I don't know if it was you or one of the

9       defendants had a chart which compared the present requests

10      with prior requests.

11             MR. HARRIS:  That was us, yes.

12             THE COURT:  Yeah, that would be helpful if I had

13      that from the other defendants.  It just makes it easier to

14      compare rather than flipping back and forth between the

15      present requests and prior requests.

16             All right, thank you.  Next.

17             MR. BOCCUZZI:  So, Your Honor, we should submit a

18      chart to Your Honor?

19             THE COURT:  Yeah, I would appreciate that from the

20      defendants.  It's just easier to compare because one of your

21      key arguments is that they asked for this stuff already.

22      Yes, sir.

23             MR. FELBERG:  Your Honor, Michael Felberg from

24      Allen & Overy for the Royal Bank of Scotland.  I'd just like

25      to make one point.

1              THE COURT:  How's you appeals going to the

2      District Court going?

3              MR. FELBERG:  Not so well, Your Honor.

4              THE COURT:  Okay.

5              MR. FELBERG:  But on another subject --

6              THE COURT:  Yes, sir.

7              MR. FELBERG:  There's a point that may be unique

8      to our client here.  And that is that the Trustee has

9      already amended his Complaint.  And the timing of that

10     amendment is interesting because it occurred in 2012.

11             And while there is a dispute among the parties as

12     to whether there's really been a change in the law, there is

13     no dispute that by the time the Trustee amended his

14     Complaint against us in 2012, the standard articulated in

15     cases in the Madoff bankruptcy was -- had switched from

16     inquiry notice to subjective knowledge, subjective willful

17     blindness.

18             And, in fact, at Page 33 of the amended Complaint

19     in our case, the Trustee changed the title of the section of

20     the heading of the Complaint.  From the initial version, ABN

21     was on inquiry notice to, in the new version, ABN RBS had

22     knowledge of indicia of fraud at (indiscernible).

23             So whatever changes in law either did or did not

24     occur, by the time the Trustee amended its Complaint against

25     us, the change had occurred, at least the law was what we

Page 35

1    now know it to be.  And they took their shot and we're eager

2    to have a chance to move against that Complaint.  Thank you.

3              THE COURT:  Were there any other amended

4    complaints after 2012 that are involved in this particular

5    proceeding?

6              MS. GRIFFIN:  I think we amended in Fortis, and if

7    I may talk to that a little bit, Your Honor.  I'm sorry.

8              MR. BOCCUZZI:  Just to give a number, we think

9    there are at least nine transferee defendants against whom

10   it was amended in 2012, so after the --

11             THE COURT:  Initial transferee or subsequent

12   transferee?  It doesn't necessarily matter.

13             MR. SUSHON:  Your Honor, Bill Sushon from

14   O'Melveny & Myers for Mistral and Zephyros.  My clients were

15   not sued in the first instance until April 2012.

16             THE COURT:  Did you extend the statute of

17   limitations?

18             MR. SUSHON:  I don't recall at this point.  I'm

19   sorry, Your Honor, but we were not sued until April 2012, as

20   we say.  Thank you.

21             THE COURT:  Which defendant was that?

22             MR. SUSHON:  Mistral and Zephyros, Your Honor.

23             MR. SIMON:  Your Honor, may I speak to Mistral and

24   Zephyros?

25             THE COURT:  Sure.

Page 36

1           MR. SIMON:  Howard Simon from Windels Marx.  We

2    filed those subsequent transfer complaints in mid-2012.  And

3    I think if anything, those subsequent transfer complaints

4    show the reason why this request for relief is -- there is

5    just cause for it.

6           In 2012, as to subsequent transfers, and I'm

7    focusing on that because that's all our complaints.  We

8    filed -- Windels filed four complaints; they're all

9    subsequent transfer complaints.  The state of the law and

10   the practice of trustees, for as long as I was practicing,

11   was that when it comes to a subsequent transferee, you

12   allege the ABCs of the transfer: who got the transfer; when

13   did they get it; and how much?

14          And that's what was a typical subsequent transfer

15   complaint because there was no law that said -- leaving

16   aside initial transferees, there was no law that said a

17   subsequent transferee -- that a Trustee pleading a

18   subsequent transferee case had a burden of anything.

19          THE COURT:  But the knowledge of the subsequent

20   transferee was always an -- is always an issue in the case

21   and good faith.

22          MR. SIMON:  Yes, the knowledge is always an issue

23   because under the recovery statute, you need to -- you're

24   going to battle that issue.  But it was never one that a

25   Trustee felt the need to get out in front during 2004 and

Page 37

1      find out the information so you could plead that.

2              Now, you wanted to be satisfied that ultimately

3      you could show it.  And in our four subsequent transfer

4      cases, I can tell Your Honor that, although we pleaded bare

5      bones complaints.  We were very confident that under any

6      standard, we could satisfy it because these are big

7      financial companies who put -- there's Google searches,

8      there's newspapers, there's a lot of ways to show that these

9      companies were in a position to know.  Obviously, easier

10     under an objective standard.

11              And it wasn't until 2014, not only did the burden

12     change as to subsequent transferees, but that's the first

13     time a judge said you needed subjective knowledge as to the

14     subsequent transferee.  So that was a total game changer in

15     2014.  And any argument that by 2012, a Trustee suing any

16     transferee, but particularly a subsequent transferee, should

17     have known that he was going to be faced with that new

18     pleading burden just doesn't make sense.

19              THE COURT:  Knew or should have known?

20              MR. SIMON:  Knew or should have known.  I'll go

21     with should have known.  So, Your Honor, I think the point

22     Miss Griffin was making is highlighted by these subsequent

23     transferred cases.  Because whatever discovery requests

24     Trustee's counsel sent out, if the response came back

25     inadequate, as was the case most of the time -- although

1    Mistral and Zephyros, I don't even believe there was a 2004

2    request made because it wasn't necessary.

3         But if the Trust came -- the Trustee's request

4    came back and it was an inadequate response, and most of

5    them were inadequate because that's generally the way the

6    game was played, there was no need for the Trustee to press

7    the issue and start making motions to compel and having

8    discovery conferences because you just didn't need the

9    information.

10        THE COURT:  So why didn't you ask for it in the

11   first place?

12        MR. SIMON:  Because you ask for the information,

13   you put out a request, and you hope to get back information.

14   But so what we're saying, Your Honor, is that merits

15   discovery is not barred.  There are cases in which Miss

16   Griffin has mentioned which it is discovery going towards

17   the merits has been allowed.  It may be preliminary

18   injunction cases.

19        What we're saying though is that under the

20   standard, the 26(d) standard, there's no limitation as to

21   what kind of situations constitutes good cause.  And what

22   we're saying is that where a Trustee, unlike other

23   plaintiffs, has a 2004 discovery tool, when that discovery

24   tool is in a sense taken away somewhat because of timing --

25   purely timing -- that that constitutes good cause for a

Page 39

1    limited discovery before filing a complaint because a

2    Trustee does have that right that other plaintiffs don't.

3            And I think all of that put together, I think is

4    the reason we think that our argument makes sense, it's

5    practical, and is not contrary to the law.

6            THE COURT:  Thank you.  Yes, sir.

7            MR. GINSBERG:  Bruce Ginsberg, Davis & Gilbert,

8    for Natixis Financial Products, one of the defendants who

9    responded to Rule 2004 discovery, just responding to the

10   respective questions that Your Honor asked.

11           First, the subpoena was directed to this

12   defendant, Natixis Financial Products LLC.  We expressly

13   answered on that party's behalf, as well as its U.S. parent

14   and all subsidiaries of the U.S. parent.

15           Second, we are a defendant who did submit a chart

16   comparing the requests that we responded to, to those that

17   are at issue now.  And our chart is an appendix is attached

18   to our supplemental brief.  Our adversary proceeding is 10-

19   05353, and that brief is Docket 146.

20           Third, we didn't respond to just one 2004

21   discovery submission, or demand rather.  In 2009, we

22   responded to a Rule 2004 document subpoena.  A full year

23   later after those documents had been produced, the Trustee

24   came back with a second Rule 2004 subpoena; we responded to

25   that.  And after those documents were produced, the Trustee

Page 40

1     took a Rule 2004 deposition.

2              In their papers, they say they took a deposition

3     of an employee.  It just wasn't any employee; it was the

4     employee who was the head of the group that designed the

5     financial products at issue; it was the employee who did the

6     due diligence; and it was the employee who did the

7     monitoring of the feeder funds after the hedging funds were

8     purchased.

9              In the course of that deposition, which lasted a

10    full day, the Trustee inquired into diligence, indicia of

11    fraud, reactions to indicia of fraud, and into knowledge.

12    Thank you.

13             THE COURT:  I reserve decision.  Thank you very

14    much.  So you don't want to amend your complaints, right?

15             MS. GRIFFIN:  Pardon?

16             THE COURT:  You don't want to amend your

17    complaints.

18             MS. GRIFFIN:  I absolutely do, Your Honor, after

19    you incorporate -- decide the motion in our favor.

20             (Whereupon these proceedings were concluded at

21    2:47 PM)

22

23

24

25

Page 41

1                        C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6         Sonya                    Digitally signed by Sonya Ledanski
                                   Hyde
                                   DN: cn=Sonya Ledanski Hyde, o, ou,
7         Ledanski Hyde            email=digital1@veritext.com, c=US
                                   Date: 2018.03.01 15:22:02 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 10, 2018