**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br>           Plaintiff-Applicant, <br><br>     v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br><br>           Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br>           Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, <br><br>           Plaintiff, <br><br>     v. <br><br> STANLEY SHAPIRO, *et al.*, <br><br>           Defendants. | Adv. Pro. No. 10-05383 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

**Page(s)**

I. PRELIMINARY STATEMENT ...................................................................................................1

II. RELEVANT BACKGROUND................................................................................................3

    A.    The Court Held That the Trustee Sufficiently Alleged Facts Evidencing
Mr. Shapiro's Actual Knowledge and Imputation of That Knowledge..................3

    B.    The Trustee Has Significantly Narrowed His October 2016 Document
Requests but Defendants Continue to Stonewall. ....................................................4

III. ARGUMENT .........................................................................................................................6

    A.    The Legal Standard on a Motion to Compel the Production of Documents............6

    B.    Defendants Must Produce Documents in Response to the Undisputed
Requests. ...............................................................................................................7

    C.    Defendants' Boilerplate Objections and Vague Invocation of "Privilege"
Are Insufficient to Evade Their Discovery Obligations. .........................................8

        1.    Defendants' Boilerplate Objections Violate Rule 26...................................8

        2.    Defendants' Bare Invocations of "Privilege" Are Improper and
Thus Waived. ...........................................................................................10

    D.    The Disputed Document Requests Seek Relevant Documents Proportional
to the Needs of This Case. ...................................................................................12

        1.    The Requested Documents Touch on the Central Issues in This
Case, and Defendants Face Minimal Burden in Producing Them.............13

            a.    Requests Directed to Mr. Shapiro Regarding His
Knowledge of Fraud at BLMIS Are Reasonable and
Proportional...............................................................................15

            b.    Requests Directed to Mr. Shapiro's Children and Son-In-
Law Regarding His Knowledge of Fraud at BLMIS Are
Reasonable and Proportional. .....................................................19

            c.    Requests Concerning Imputation of Mr. Shapiro's
Knowledge Are Relevant and Proportional. ................................21

        2.    The Remaining Proportionality Factors Weigh in Favor of
Ordering Production.................................................................................23

IV. CONCLUSION......................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carl v. Edwards*,
   No. 16-cv-3863 (ADS) (AKT), 2017 WL 4271443 (E.D.N.Y. Sept. 25, 2017) ....................10

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) ..................................................................................11

*Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*,
   136 F.R.D. 682 (D. Kans. 1991) .........................................................................................14

*Durling v. Papa John's Int'l, Inc.*,
   No. 16-cv-3592 (CS) (JCM), 2018 WL 557915 (S.D.N.Y. Jan. 24, 2018) ...........................19

*Fischer v. Forrest*,
   No. 14-cv-1304 (PAE) (AJP), 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) ...........................9

*In re Grand Jury Subpoenas Dated March 2, 2015*,
   628 Fed. App'x 13 (2d Cir. 2015) ........................................................................................12

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
   Nos. 12-cv-5067, 12-cv-7319 (JFK) (JLC), 2017 WL 4676806 (S.D.N.Y. Oct.
   17, 2017) ............................................................................................................................13

*Jacoby v. Hartford Life & Accident Ins. Co.*,
   254 F.R.D. 477 (S.D.N.Y. 2009) ...........................................................................................9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   298 F.R.D. 184 (S.D.N.Y. 2014) ...........................................................................................7

*Leibovitz v. City of New York*,
   No. 15-cv-546 (LGS) (HBP), 2017 WL 462515 (S.D.N.Y. Feb. 3, 2017) ...........................10

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*,
   318 F.R.D. 28 (S.D.N.Y. 2016) .............................................................................................7

*Mirra v. Jordan*,
   No. 13-cv-5519 (AT) (KNF), 2015 WL 8526550 (S.D.N.Y. Dec. 7, 2015) ..........................13

*Picard v. Chais (In re BLMIS)*,
   445 B.R. 224 (Bankr. S.D.N.Y. 2010) ...................................................................................4

*Picard v. Crupi (In re BLMIS)*,
   319 F.R.D. 100 (S.D.N.Y. 2017) ..........................................................................................12

*Picard v. Roman (In re BLMIS)*,
  Adv. Pro. No. 10-04292 (SMB), 2017 WL 4685525 (Bankr. S.D.N.Y. Oct. 17,
  2017) ...........................................................................................................................7

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
  274 F.R.D. 63 (W.D.N.Y. 2011) .............................................................................11

*S.E.C. v. Yorkville Advisors, LLC*,
  300 F.R.D. 152 (S.D.N.Y. 2014) .............................................................................11

*U.S. Dep't of Agric. v. Glenn*,
  122 F.3d 1007 (11th Cir. 1997) ...............................................................................11

*U.S. v. Arthur Young & Co.*,
  465 U.S. 805 (1984) .................................................................................................11

*U.S. v. Bein*,
  728 F.2d 107 (2d Cir. 1984) .....................................................................................11

*U.S. v. Collorafi*,
  876 F.2d 303 (2d Cir. 1989) .....................................................................................13

*U.S. v. Konigsberg*,
  No. 10-cr-00228 (LTS) (S.D.N.Y. 2010) .................................................................12

**Statutes**

11 U.S.C. §§ 701 .............................................................................................................1

15 U.S.C. §§ 78aaa ..........................................................................................................1

**Rules**

Fed. R. Bankr. P. 7026 ...................................................................................................6

Fed. R. Civ. P. 12 ...........................................................................................................2

Fed. R. Civ. P. 26 ...................................................................................................*passim*

Fed. R. Civ. P. 34 .................................................................................................6, 9, 10

Fed. R. Civ. P. 45 .........................................................................................................11

Fed. R. of Evid. 401 .....................................................................................................22

Local Bankruptcy Rule 7034-1 ...............................................................................10, 12

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), under Chapter 7 of the Unites States Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.*, by and through his undersigned counsel, submits this memorandum of law in support of his motion to compel the production of documents (the "Motion") from defendants Stanley Shapiro ("Mr. Shapiro"), David Shapiro, Leslie Shapiro Citron ("Ms. Citron"), and Kenneth Citron ("Mr. Citron," and together with Ms. Citron, the "Citrons," and collectively with Mr. Shapiro and David Shapiro, "Defendants").

## I. PRELIMINARY STATEMENT

The Trustee seeks an order from this Court compelling Defendants to produce certain categories of undeniably relevant documents that the Trustee has sought for more than a year. Despite numerous letters, several meet-and-confers, and two Rule 7007 conferences, Defendants refuse to produce any documents to the Trustee.

Defendants' refusal is remarkable because in November 2016, they agreed to produce documents responsive to a number of the Trustee's requests. Nevertheless, they have not produced a single document responsive to these requests; nor have they explained why not, leaving the Trustee with no option but to ask for the relief sought here.

Defendants also refuse to produce any documents in response to the Trustee's remaining requests on a bevy of grounds, including that they are "overly broad, burdensome, irrelevant, and not proportionate to the needs of the case." These boilerplate objections, beyond being prohibited under the rules, are devoid of basis. This is not a typical "good faith" case involving only a few discrete, largely legal issues. Rather, the Trustee has alleged—and the Court has accepted for

1

purposes of Rule 12 scrutiny—that at a minimum, Mr. Shapiro had actual knowledge of the lack

of actual securities trading in his family's BLMIS accounts and collaborated with others at

BLMIS to fabricate backdated trades in the accounts. Discovery on Mr. Shapiro's knowledge

therefore is crucial. Recognizing this, the Court observed at a Rule 7007 conference, "[A]nything

that relates to Stanley Shapiro's knowledge is fair game . . . ." 2/7/17 Tr. at 56:25–57:2.

Likewise, any documents bearing on the issue of the imputation of Mr. Shapiro's knowledge,

another issue that satisfied Rule 12 scrutiny, is also fair game.

The documents that Defendants object to producing focus on these key issues of

knowledge and imputation.  For example, the requests seek: (i) documents concerning Mr.

Shapiro's return of account statements to BLMIS so that new ones, with new trades, could be

issued in their place; (ii) notes made by Mr. Shapiro, Madoff, or Annette Bongiorno concerning

Defendants' Core Accounts; (iii) Mr. Shapiro's correspondence with Bongiorno and Madoff

himself; and (iv) correspondence between Mr. Shapiro and his accountant, Paul Konigsberg, who

pleaded guilty to his involvement in the fraud at BLMIS. These documents are so plainly

relevant that Defendants' relevancy objections border on the frivolous. Their objections based on

burden and proportionality fare no better—Defendants have not, and cannot, show that their own

records are too voluminous to search for these and other responsive documents.

Despite the breadth of relevant documents that bear on Mr. Shapiro's knowledge and

imputation of his knowledge, the Trustee narrowed many of his requests to Defendants and held

many more in abeyance in an attempt to resolve this dispute. Regrettably, these efforts have been

met largely with torpor from Defendants, and no production of any sort appears to be

forthcoming. It is against this backdrop that the Trustee seeks the instant relief, in the form of the

2

order annexed to the Motion, compelling Defendants to adhere to their basic discovery

obligations.

## II. RELEVANT BACKGROUND

### A.    The Court Held That the Trustee Sufficiently Alleged Facts Evidencing Mr. Shapiro's Actual Knowledge and Imputation of That Knowledge.

In his Second Amended Complaint ("SAC"), the Trustee alleges that Mr. Shapiro—a

former BLMIS employee and close friend of Madoff—managed and controlled many of his

family's BLMIS accounts with knowledge that the trades reflected on those accounts' statements

had not occurred. Defendants moved to dismiss the SAC on various grounds, including that the

Trustee had failed to sufficiently allege Mr. Shapiro's knowledge of fraud to overcome the safe

harbor found in section 546(e). ECF No 38. The Court concluded otherwise:

> Like Jaffe in *Cohmad*, Stanley [Shapiro] demanded canceled trades
> and the fabrication of back-dated, fictitious trades because he knew
> that BLMIS could generate its trades through its STMTPro
> computer program with the stroke of a key. He was aware that the
> transactions in the revised statements, whether they markedly
> increased the value of the accounts or decreased the owners' tax
> liabilities, could not be real. . . . Furthermore, he had to return the
> original monthly statements before he could get the revised monthly
> statements that depicted the newly fabricated trades. Accordingly,
> the Trustee has pleaded that Stanley knew, at a minimum, that
> BLMIS was not actually trading the securities it reported it had
> traded in the monthly statements relating to the Core Accounts.

ECF No. 59 at 20–21. The Court further held that the Trustee had plead sufficient facts to impute

Mr. Shapiro's knowledge to other Defendants:

> "A principal-agent relationship may be established by evidence of
> the consent of one person to allow another to act on his or her behalf
> and subject to his or her control, and consent by the other so to act,
> even where the agent is acting as a volunteer." *Art Fin. Partners, LLC
> v. Christie's Inc.*, 870 N.Y.S. 2d 331, 331 (N.Y. App. Div. 2009)
> (quotation marks and citation omitted). Stanley created the Accounts
> for the benefit of himself and his family, the account statements were
> sent to the Shapiros at their home address, Stanley reviewed those
> statements and he directed BLMIS to execute fabricated trades in the

3

> Core Accounts for the purpose of increasing their market value or decreasing the owners' tax liability. These allegations support the plausible inference that Stanley acted as the agent for the holders of the Core Accounts as well as S&R Account 1SH172 in their dealings with BLMIS. *See Picard v. Chais*, 445 B.R. at 224.

*Id.* at 23.

Following entry of the Court's order on Defendants' motion to dismiss, the Trustee began producing documents to Defendants. Since February 2015, the Trustee has produced more than 29,000 documents, consisting of over 750,000 pages. Those productions have included: "Core Account" documents; documents relating to Mr. Shapiro's employment at BLMIS; documents produced by Konigsberg's former accounting firm; documents regarding Mr. Shapiro's personal relationship with Madoff; and documents relating to Annette Bongiorno's involvement with Defendants' Core Accounts. The Trustee's document production to Defendants is nearly complete. By contrast, Defendants have not produced any documents in this proceeding.

## B. The Trustee Has Significantly Narrowed His October 2016 Document Requests but Defendants Continue to Stonewall.

The Trustee served the three sets of document requests at issue on October 7, 2016. An extended sequence of objections, meet-and-confers, letters, and Rule 7007 conferences followed during which time the Trustee attempted to narrow the issues in dispute to move this proceeding along. These efforts were largely met with intransigence.

Nov. 23, 2016    Defendants served the Trustee with responses and objections to the Trustee's requests. As to several requests, Defendants agreed to produce relevant documents. As to others, they raised boilerplate objections, such as that the requests were overly broad, unduly burdensome, and related only to causes of action that had been dismissed against certain defendants.

Dec. 7, 2016    The Parties met and conferred regarding the Trustee's requests and Defendants' objections.

| | |
|---|---|
| Dec. 14, 2017 | Following the meet and confer, the Trustee wrote Defendants to ask, *inter alia*, that they provide, as they committed to do, authority to support several of their positions raised during the meet and confer. Defendants never responded. |
| Jan. 11, 2017 | The Trustee wrote to the Court requesting a Rule 7007 conference to address Defendants' boilerplate objections to many of the Trustee's document requests. The letter also addressed Defendants' argument that the Trustee's requests concerned dismissed claims. |
| Feb. 6, 2017 | The evening before the first Rule 7007 conference, Defendants submitted a letter to the Court seeking to justify their boilerplate objections and stating without explanation that "Defendants are not making partial productions." |
| Feb. 7, 2017 | The Court held a Rule 7007 conference, during which it reviewed a number of the Trustee's requests. That conference was adjourned *sine die*, with the Court instructing the parties to attempt to resolve or narrow the dispute. |
| April 6, 2017 | The Parties met and conferred again regarding the Trustee's requests. |
| June 7, 2017 | Following the meet and confer, the Trustee wrote to Defendants and summarized the current disputes, narrowed many of the requests to which Defendants objected, and agreed to hold many others in abeyance. |
| July 14, 2017 | Defendants requested a Rule 7007 conference regarding the Trustee's third-party bank subpoenas. |
| Aug. 17, 2017 | The Trustee wrote to the Court to join in Defendants' request for a Rule 7007 conference, seeking resolution of Defendants' objections to many of the Trustee's document requests. |
| Sept. 25, 2017 | In advance of the scheduled conference, the Trustee wrote to the Court summarizing the outstanding discovery disputes. |
| Oct. 1, 2017 | In a letter to the Trustee, Mr. Shapiro—but none of the other Defendants—responded to the reframed requests directed to him, agreed to produce responsive documents to certain of the requests, but maintained his same boilerplate objections as to others. |
| Oct. 2, 2017 | Defendants wrote to the Court asking it to defer consideration of the Trustee's document requests. |
| Oct. 5, 2017 | The Court held a second Rule 7007 conference. After reviewing certain requests, the Court suggested that the parties meet and confer again but granted |

the Trustee's request to file this Motion if the parties failed to reach an agreement. 10/5/17 Tr. at 26:24–27:3.

Oct. 27, 2017     Following the second Rule 7007 conference, the Trustee wrote to Defendants again to meet and confer, explaining how the disputed requests focused on the central issues in the case and asking Defendants if they would reconsider their objections and responses. Defendants never responded.

The following is a summary of where the parties stand on the Trustee's requests:

| Defendant(s) | Original Requests | Undisputed | Disputed | Held in Abeyance |
|---|---|---|---|---|
| Mr. Shapiro | 49 | 13 | 13 | 23 |
| David Shapiro | 45 | 7 | 12 | 26 |
| The Citrons | 45 | 7 | 12 | 26 |

Attached as Exhibit A is a more-detailed chart setting forth the document requests to which Defendants have agreed to produce documents (the "Undisputed Requests"), those to which Defendants have objected (the "Disputed Requests"), and those which the Trustee has agreed to hold in abeyance.[1]

## III. ARGUMENT

### A.     The Legal Standard on a Motion to Compel the Production of Documents

Under Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure, a party may move to compel production if "a party fails to produce documents . . . as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(iv). The scope of permissible discovery under Rule 34 is governed by Rule 26, made applicable here through Federal Rule of Bankruptcy Procedure 7026. FED. R.

---

[1] For the Court's convenience, the Trustee attaches to the Declaration of Torello H. Calvani the following: Mr. Shapiro's responses to the Trustee's requests, as originally framed (Ex. 1); David Shapiro's responses to the Trustee's requests, as originally framed (Ex. 2); the Citron's responses to the Trustee's requests, as originally framed (Ex. 3); the Trustee's June 2017 letter to Defendants regarding the outstanding document requests (Ex. 4); and Mr. Shapiro's October 2017 letter to the Trustee regarding outstanding document requests (Ex. 5).

BANKR. P. 7026 ("Rule 26 Fed.R.Civ.P. applies in adversary proceedings"). Under Rule

26(b)(1), the Trustee:

> [M]ay obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). As this Court recently noted, "Even after the 2015 amendment to Rule

26(b), relevance is still to be construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on any party's claim or defense." *Picard v.

Roman (In re BLMIS)*, Adv. Pro. No. 10-04292 (SMB), 2017 WL 4685525, at *3 (Bankr.

S.D.N.Y. Oct. 17, 2017) (internal marks and citation omitted). Defendants, as the parties

objecting to discovery, "bear[] the burden of showing why discovery should be denied." *Mason

Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y.

2016). And when an objection is based upon burden, Defendants must show with specificity

"how each question is overly broad, burdensome or oppressive by submitting affidavits or

offering evidence revealing the nature of the burden." *John Wiley & Sons, Inc. v. Book Dog

Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (internal marks and citation omitted).

**B.    Defendants Must Produce Documents in Response to the Undisputed Requests.**

Mr. Shapiro has agreed to produce documents in response to thirteen of the Trustee's

document requests. For example, he agreed to produce, after asserting a few boilerplate

objections, "all . . . relevant, non-privilege documents in his possession that have not yet been

produced" responsive to the Trustee's request for all documents relating to the opening of any of

his family's accounts at BLMIS. *See* Exhibit A at p. 1 (Mr. Shapiro's Response to Trustee's

Request No. 1). Notably, Mr. Shapiro did produce, through his prior counsel in early 2010, approximately 2,750 documents in lieu of being served with and responding to a Rule 2004 subpoena. As a result, Mr. Shapiro *may* already have produced most of the documents responsive to Request No. 1, but the Trustee has no way of knowing this. Despite repeated requests, Mr. Shapiro has said nothing on the subject of what documents he is withholding.

David Shapiro and the Citrons likewise agreed to produce documents in response to respectively seven the Trustee's requests. Like Mr. Shapiro, they maintain that they will produce all responsive documents in their respective possession that have not been previously produced. But unlike Mr. Shapiro, neither David Shapiro nor the Citrons produced any documents to the Trustee in 2010 or at any other time. They have no excuse for failing to produce documents responsive to the Undisputed Requests, and should be ordered to do so.

**C.    Defendants' Boilerplate Objections and Vague Invocation of "Privilege" Are Insufficient to Evade Their Discovery Obligations.**

Two key issues in this case concern Mr. Shapiro's knowledge of fraud at BLMIS and his exercise of control over his family's accounts such that his knowledge can be imputed to the holders of those accounts. The Trustee's remaining document requests are tailored to these issues. In response, Defendants offer little more than boilerplate objections that courts have routinely rejected.

**1.    *Defendants' Boilerplate Objections Violate Rule 26.***

According to Defendants, each of the Disputed Requests is some combination of "vague," "overly broad," "overly burdensome," "irrelevant," "outside the relevant time period," "not reasonably likely to lead to the discovery of admissible evidence," and "not proportionate to the needs of the case." Defendants also claim that many of the requests "seek[] documents that are privileged" or "seek[] documents relating to claims and parties that have been dismissed."

8

Defendants' objections rarely go beyond these boilerplate objections. Defendants do not specify what they find "vague," "overly broad," "overly burdensome," and "irrelevant" about the Requests. They do not explain why the documents sought are "not reasonably likely to lead to the discovery of admissible evidence" or "not proportionate to the needs of the case" or fall "outside the relevant time period" (or even what the "relevant time period" is in their view). They do not substantiate their generic claims of "privilege." And they do not explain how a request is improper merely because it "seeks documents relating to claims and parties that have been dismissed"—an objection that the Court has already rejected. *See* 2/7/17 Tr. at 49:7–14 ("And the fact that claims were dismissed against [Ms. Citron], except for the two-year claims, doesn't matter.").

Defendants' reliance on boilerplate objections and generalized references to "privilege" violates Rule 34. As amended in 2015, Rule 34(b)(2)(B) requires that the responding party "state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). Even before the amendment, courts described the use of boilerplate objections as "a paradigm of discovery abuse." *See, e.g.*, *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009) ("[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents . . . are a paradigm of discovery abuse.").

By relying on "meaningless boilerplate" objections without providing any specificity for the basis of their objections, Defendants have disregarded their obligations under Rule 34(b)(2)(B). *See Fischer v. Forrest*, No. 14-cv-1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (A response "stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This

language tells the Court nothing."). Because Defendants offer the very types of objections the

2015 amendment forbids, those objections are "insufficient to exclude discovery of requested

information" and therefore should be stricken. *Carl v. Edwards*, No. 16-cv-3863 (ADS) (AKT),

2017 WL 4271443, at *8 (E.D.N.Y. Sept. 25, 2017); *see Leibovitz v. City of New York*, No. 15-

cv-546 (LGS) (HBP), 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) ("The City lists general,

boilerplate objections to each of plaintiff's requests for production. Because such objections

violate Fed.R.Civ.P. 34(b)(2)(B), they are stricken.").

    **2.**    ***Defendants' Bare Invocations of "Privilege" Are Improper and Thus Waived.***

Defendants claim "privilege" in response to numerous Requests, but they do not specify

which privilege they seek to invoke, do not explain the basis, and do not identify the nature of

the documents they seek to protect.[2]

The bare invocation of privilege violates the letter of the Local Bankruptcy Rules, which

require that the party objecting to production on a claim of privilege identify:

> (1)    the nature of the privilege being claimed . . . and

> (2)    unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the document.

Local Bankruptcy Rule 7034-1(c)(1) & (2). Rule 26(b)(5)(A) likewise requires that a party

withholding discovery based on privilege "describe the nature of the documents,

communications, or tangible things not produced or disclosed—and do so in a manner that,

---

[2] *See* Mr. Shapiro's Responses to Request Nos. 8, 20, 25, 26, 29, 31, 32, & 43; David Shapiro Responses to Request Nos. 6, 15, & 16; Citrons' Responses to Request Nos. 11, 15, & 16.

without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii). Having failed to comply with the explicit requirements of these rules, Defendants' nonspecific and unsubstantiated claims of privilege are waived. *See, e.g.*, *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014) (finding wavier of privilege for "failure to serve indices of privileged documents in a timely and proper manner"); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y. 2010) (noting "the starting position is that the privilege log must be served with the objections or motion to quash and that the failure to do so may result in waiver of the privilege claims"); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 99 (W.D.N.Y. 2011) ("When a party withholds relevant information that is discoverable, pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to promptly provide the adverse party with notice of the claimed privilege by preparing and serving a privilege log sufficiently describing the withheld information . . . .").

A number of Defendants' claims of privilege are made in response to the Trustee's requests for documents related to Konigsberg, suggesting that Defendants seek to invoke some type of accountant-client privilege.[3] If so, the invocation is improper for at least three reasons. There is no federal accountant-client privilege. *See, e.g.*, *U.S. v. Arthur Young & Co.*, 465 U.S. 805, 815–21 (1984); *U.S. v. Bein*, 728 F.2d 107, 112 (2d Cir. 1984); *U.S. Dep't of Agric. v. Glenn*, 122 F.3d 1007, 1012 (11th Cir. 1997). Even if there was such a privilege, Defendants waived it when they failed to object to Konigsberg Wolf & Co.'s prior Rule 45 production. *See* ECF No. 24 (noting Defendants did not object to the issuance of subpoenas to Konigsberg and his former firm).

---

[3] *See, e.g.*, Objections to Request No's 8, 19–32, and 43 (S.S.), and 6, 15, & 16 (D/L/K).

Finally, the crime-fraud exception defeats any such privilege. Konigsberg pleaded guilty to, *inter alia*, conspiring with Annette Bongiorno and Mr. Shapiro to fabricate backdated trades in the Core Accounts. *See* Superseding Information, *U.S. v. Konigsberg*, No. 10-cr-00228 (LTS) (S.D.N.Y. 2010), ECF No. 1031 ¶ 17 (detailing the activities of Konigsberg, Bongiorno, and Mr. Shapiro ("Client-2") as evidence of conspiracy to falsify the books and records of an investment advisory/broker-dealer). Under the crime-fraud exception, Mr. Shapiro's communications with his accountant in connection with that criminal activity are not privileged. *See In re Grand Jury Subpoenas Dated March 2, 2015*, 628 Fed. App'x 13, 14 (2d Cir. 2015) ("The crime-fraud exception removes the protection of the attorney-client privilege from client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.") (internal marks and citation omitted); *Picard v. Crupi (In re BLMIS)*, 319 F.R.D. 100, 107–09 (S.D.N.Y. 2017) (applying crime-fraud exception to communications between BLMIS employee, Jodi Crupi, and her attorneys).

Defendants' boilerplate objections and bare claims of privilege are without basis and should be stricken.[4]

## D.    The Disputed Document Requests Seek Relevant Documents Proportional to the Needs of This Case.

Rule 26 "sets forth factors to consider in analyzing proportionality: 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"

---

[4] To the extent that Defendants are invoking some other type privilege (*e.g.*, the attorney-client privilege), they have offered nothing to substantiate their claim of privilege. At a minimum, Defendants should have produced a privilege log in compliance with the Local Bankruptcy Rule 7034-1 so the Trustee, and if need be, this Court could assess the claim of privilege on a document-by-document basis. They did not do so.

*Homeward Residential, Inc. v. Sand Canyon Corp.*, Nos. 12-cv-5067, 12-cv-7319 (JFK) (JLC),

2017 WL 4676806, at *5 (S.D.N.Y. Oct. 17, 2017) (quoting FED. R. CIV. P. 26(b)(1)).

### 1.    *The Requested Documents Touch on the Central Issues in This Case, and Defendants Face Minimal Burden in Producing Them.*

Mr. Shapiro's state of mind is the central issue in this case. The Second Circuit has

recognized that, because direct evidence is rarely available to prove state of mind, plaintiffs must

often rely upon indirect or circumstantial evidence to satisfy that element of their claim—and

that trial courts should tailor their rulings in recognition of that fact:

> Since bad faith and evil intent involve intangible mental processes, proof of willfulness usually must be accomplished by means of circumstantial evidence. This being so, trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind.

*U.S. v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) (citation omitted). *See also Mirra v. Jordan*,

No. 13-cv-5519 (AT) (KNF), 2015 WL 8526550, at *2 (S.D.N.Y. Dec. 7, 2015) (ordering

production of documents bearing on relevant issue of defendant's state of mind).

The Trustee is entitled to all documents within Defendants' possession, custody, or

control that bear on Mr. Shapiro's knowledge, whether directly or circumstantially. As this Court

stated at the February Rule 7007 conference, "anything that relates to Stanley Shapiro's

knowledge is fair game . . . ." 2/7/17 Tr. at 56:25–57:1. The Trustee is likewise entitled to

documents bearing on another crucial issue in this case: the imputation of Mr. Shapiro's

knowledge to the other Defendants. *See* 2/7/17 Tr. at 61:4–8 ("anything relating . . . to Stanley

Shapiro's knowledge, because he's the key to the imputation, is relevant, even if it goes back

many, many years").

The Trustee's entitlement to liberal discovery on these crucial issues is reinforced by the

minimal burden Defendants face in producing these important documents. Defendants have not

explained, nor can they, how they would be unduly burdened (and not just inconvenienced) by

having to gather and produce relevant documents. This Court has recognized that this is

Defendants' burden. *See* 2/7/17 Tr. at 61:20–23 ("I'm not just going to accept . . . it's

burdensome. You're going to have to explain why, where they are, and . . . what's involved in

looking for it.").

The closest Defendants have come to articulating a burden came during the February

Rule 7007 conference. When asked what Ms. Citron would have to do to produce documents, her

attorney responded: "[S]he's moved multiple times from New York, there are storage facilities,

there are -- you know, there's a -- the problem with many of these requests is that she has to go

back and perform this search." 2/7/17 Tr. at 53:7–11. But that is the nature of document

discovery in any civil case. *See Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D.

682, 684–85 (D. Kans. 1991) ("All discovery requests are a burden on the party who must

respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary,

the general rule requires the entity answering or producing the documents to bear that burden.").

The question is not whether performing a search imposes any burden, but whether it is such an

undue burden that it outweighs the value of the documents to the litigation. Here, the Trustee's

requests satisfy the proportionality test because Defendants face minimal burden in producing

documents that will shed light on crucial issues in this case.

As to each of the Disputed Requests discussed below, Defendants should be ordered

produce the documents sought by the Trustee.

14

a.    ***Requests Directed to Mr. Shapiro Regarding His Knowledge of Fraud at BLMIS Are Reasonable and Proportional.***

Request Nos. 14 and 15 are squarely targeted at Mr. Shapiro's knowledge of fraud at

BLMIS.[5]

> No. 14 (S): All documents concerning any backdated or cancelled trade or any request to backdate or cancel any trade in any of the BLMIS Accounts, including but not limited to any account statement reflecting any backdated trade and/or any substitute or replacement account statement provided by BLMIS and/or Madoff to You, any Family Member, or any Accountant.

> No. 15 (S): All documents concerning the destruction, the return to BLMIS or other disposition of any documents concerning any of the BLMIS Accounts, including but not limited to any account statements.

The Trustee alleges in the SAC that Mr. Shapiro collaborated with Madoff, Bongiorno,

and Konigsberg to fabricate backdated trades in his family's core accounts. *See, e.g.*, SAC

¶¶ 73–93; ECF No. 59 at 20 (finding the Trustee had alleged that Mr. Shapiro "collaborated with

and directed BLMIS personnel, including Bongiorno, to 'cancel' trades that appeared on earlier

monthly statements"). Request Nos. 14 and 15 seek documents regarding the fraud in which Mr.

Shapiro was directly involved. Such documents are indisputably relevant.

Mr. Shapiro objects to the Trustee's "characterizations of the documents" sought in these

requests and then offers the following *non sequitur*: "Mr. Shapiro has produced or will produce

account statements in his possession, custody and/or control." This is unacceptable. All

documents sought in these two requests, not just account statements, are relevant and must be

produced.

The documents sought in Request Nos. 7 and 8 are similarly relevant.

---

[5] Document requests directed to Mr. Shapiro are identified by "S" while those directed to David Shapiro, Ms. Citron, and Mr. Citron are identified by "D/L/K".

> No. 7 (S): All documents and communications between Mr. Shapiro, on the one hand, and either Madoff, Annette Bongiorno or any other BLMIS employee, on the other hand, regarding any of the BLMIS Accounts, including but not limited to notes, faxes, letters, calendar entries, emails or telephone records.
>
> No. 8 (S): All notes, whether made by Mr. Shapiro, Madoff, Annette Bongiorno or any other employee of BLMIS, concerning any of the Core Accounts.

Communications between Mr. Shapiro and those directly involved in running the Ponzi scheme regarding his family's BLMIS accounts are relevant to Mr. Shapiro's knowledge of fraud and the imputation of such knowledge. During the October Rule 7007 conference, the Court noted that Mr. Shapiro is required to produce all such communications. 10/5/17 Tr. at 26:1–2 ("Shapiro's communications with BLMIS are certainly relevant."). Likewise, any notes made by Mr. Shapiro or a BLMIS employee regarding the Core Accounts are relevant for the same reasons.

In response to reframed Request Nos. 7 and 8, Mr. Shapiro again raises boilerplate objections, including that the requests are "irrelevant," a position this Court has rejected. Mr. Shapiro also posits that to the extent that the Trustee is seeking documents, communications, and notes "relating to or evidencing 'Stanley's knowledge' of an alleged Ponzi scheme at BLMIS, no such documents exist." This position is nonsense. It is not even responsive because it does not address the actual requests. Moreover, for the position to be well-founded, the Trustee would have to simply accept Mr. Shapiro's word that he knew nothing (and he is hardly a neutral arbiter on the point). The Trustee also would have to ignore that this Court specifically found that the SAC sufficiently alleged—at a minimum—Mr. Shapiro's knowledge of the lack of actual securities trading in his family's BLMIS accounts. Mr. Shapiro's claim of innocence in response to Request Nos. 7 and 8 also rings hollow given the existence of documents bearing Mr. Shapiro's own handwriting that evidence his knowing participation in the backdating of trades.

16

Accordingly, Mr. Shapiro's own self-serving objection is entitled to no weight and should be disregarded.

> No. 31 (S): All documents and communications concerning any of Mr. Shapiro's due diligence, if any, concerning BLMIS and/or Madoff, Your decision whether or not to perform any due diligence on BLMIS, Madoff, or any of the Core Accounts.

Documents concerning Mr. Shapiro's due diligence or a lack thereof bear on his knowledge of any fraud at BLMIS and in the Core Accounts. Request No. 31, therefore, calls for plainly relevant documents.

Mr. Shapiro responds to this request with boilerplate objections: "Mr. Shapiro objects to Request 31 on the grounds that it is overly broad, burdensome, irrelevant, vague, and not proportionate to the needs of the case and seeks documents that are privileged." Beyond being out of rule, Mr. Shapiro's objections lack any basis.

> No. 11 (S): All documents or communications between You and any other BLMIS investors, regardless of whether such individuals were BLMIS investors at the time of the communication (including but not limited to Ed Kostin, Carl Shapiro, and/or any investors You referred to BLMIS), concerning BLMIS.

In Request No. 11, the Trustee seeks documents that may reveal what Mr. Shapiro may have told other people, and what other people told him, about BLMIS. Such documents may reveal Mr. Shapiro's subjective understanding of the nature of the BLMIS enterprise, criminal or otherwise. For example, a co-investor may have relayed to Mr. Shapiro that he likewise requested and received (as Mr. Shapiro did) promised rates of return or altered account statements with backdated trades. Many fellow BLMIS investors with whom Mr. Shapiro associated have been accused, and others convicted, of fraud. The list includes Stanley Chais, Norman Levy, and David Kugel, a former BLMIS employee who shared an office with Mr. Shapiro and who pleaded guilty to his role in the Ponzi scheme.

17

In his response, Mr. Shapiro raises the same battery of boilerplate objections before
offering the following: "Notwithstanding the foregoing objections, Mr. Shapiro has produced or
will produce all documents and communications between Mr. Shapiro and Ed Kostin and Carl
Shapiro concerning BLMIS to the extent they exist and are within his possession, custody and/or
control." Mr. Shapiro offers no explanation why he limits the universe of fellow investors to
Kostin and Carl Shapiro. Any communications between Mr. Shapiro and any other fellow
investors concerning BLMIS (surely, a finite group of documents) are probative of Mr. Shapiro's
state of mind and are thus "fair game."

> Nos. 25 & 26 (S): All documents provided to Mr. Shapiro by any
> Accountant engaged to perform any type of services concerning any
> of the Core Accounts.
>
> No. 29 (S): All communications between and among Mr. Shapiro,
> Paul Konigsberg, any other Accountant, any employee of BLMIS
> and/or Madoff concerning any tax issue or other matter relating to
> any of the BLMIS Accounts, including but not limited to the
> realization or generation of gains or losses in connection with any
> of the Core Accounts.

Documents relating to work performed by Mr. Shapiro's accountants, most notably
Konigsberg, are highly relevant. When pleading guilty to multiple crimes, Konigsberg admitted
that he knew of and was directly involved in fabricating trades in accounts held by his clients at
BLMIS, including certain of those held by Mr. Shapiro and his family. In the SAC, the Trustee
alleges that Mr. Shapiro and Konigsberg were directly involved in fabricating backdated trades
in his family's accounts at BLMIS. *See, e.g.*, SAC ¶¶ 73–93. Communications and documents
exchanged between Mr. Shapiro and Konigsberg therefore bear on Mr. Shapiro's knowledge of
fraud at BLMIS. The Trustee already possesses some of those communications. For instance, the
Trustee has the letter referenced in paragraph 86 of the SAC, wherein Mr. Shapiro advises
Konigsberg of the "problem" they had that was later fixed through the backdating of trades. The

18

Trustee is entitled to the remainder. *See Durling v. Papa John's Int'l, Inc.*, No. 16-cv-3592 (CS) (JCM), 2018 WL 557915, at *4 (S.D.N.Y. Jan. 24, 2018) (compelling production of communications and documents relating to third party because they were potentially relevant to defendant's "willfulness or good faith").

Mr. Shapiro responds to Request Nos. 25, 26, and 29 with boilerplate responses, with one exception. In response to Request No. 29, he adds: "Notwithstanding the foregoing objections, Mr. Shapiro has produced or will produce communications between Mr. Shapiro and any employee of BLMIS and/or Madoff concerning tax issues and the Core Accounts to the extent they exist and are within his possession, custody and/or control." But Konigsberg was never employed by BLMIS. Communications and documents exchanged between Mr. Shapiro and Konigsberg (or any other accountant) are plainly relevant and must be produced.

      **b.**      ***Requests Directed to Mr. Shapiro's Children and Son-In-Law Regarding His Knowledge of Fraud at BLMIS Are Reasonable and Proportional.***

Any documents David Shapiro or the Citrons possess that likewise may bear on Mr. Shapiro's state of mind and his control over his family's BLMIS accounts are relevant and must be produced. The Trustee seeks such documents through the following requests:

> No. 7 (D/L/K): All documents and communications between [David Shapiro, Leslie and Kenneth Citron], on the one hand, and either Madoff, Annette Bongiorno or any other BLMIS employee, on the other hand, concerning any of the Core Accounts or BLMIS.

> No. 8 (D/L/K): All notes made by [David Shapiro, Leslie and Kenneth Citron], Mr. Shapiro, Madoff, Annette Bongiorno, or any other BLMIS employee concerning any of the Core Accounts.

> No. 11 (D/L/K): All documents concerning any purported realized or unrealized gains, losses, or returns in connection with any of the Core Accounts.

No. 13 (D/L/K): All documents concerning any backdated or cancelled trade or any request to backdate or cancel any trade in connection [with] any of the Core Accounts.

No. 14 (D/L/K): All documents concerning the destruction or the return to BLMIS of any statement, confirmation or any other account documents concerning any of the Core Accounts.

No. 28 (D/L/K): All documents and communications concerning any due diligence, either performed by Mr. Shapiro or for his benefit, concerning Madoff, BLMIS, or any of the Core Accounts.

No. 29 (D/L/K): All documents and communications concerning whether BLMIS's operations were suspicious, unethical, fraudulent or a Ponzi scheme or whether Mr. Shapiro suspected or knew that BLMIS and/or Madoff were engaged in improper, unusual, illegal, fraudulent, unethical or any other questionable activity.

Request Nos. 13, 14, and 29 call for documents implicating Mr. Shapiro's knowledge of and involvement in the backdating of trades at BLMIS. Request Nos. 13 and 14 call for documents related to Mr. Shapiro's participation in the backdating of trades and would, for example, require the production of a letter sent by Mr. Shapiro to his children requesting the return of account statements. Request No. 29 more broadly calls for any documents in Defendants' possession concerning fraud at BLMIS. These documents are clearly relevant. And Request No. 11 calls for analyses of the accounts' performance and tax implications arising from that performance—the sorts of documents that apparently prompted Mr. Shapiro to conspire with Konigsberg and Bongiorno in the backdating of trades.

Meanwhile, Request Nos. 7, 8, and 28 call for documents concerning not only Mr. Shapiro's knowledge of fraud, but also the imputation of that knowledge. David Shapiro and the Citron's possession (or lack thereof) of communications with BLMIS personnel would speak directly to the imputation issue while also potentially implicating Mr. Shapiro's knowledge of fraud. Likewise, documents showing a lack of due diligence in connection with their investments in BLMIS (Request No. 28) would illustrate their entrustment of investment decision to Mr.

20

Shapiro (imputation) while also illustrating Mr. Shapiro's decision whether to conduct due diligence, along with the results of any such inquiry.

        c.    ***Requests Concerning Imputation of Mr. Shapiro's Knowledge Are Relevant and Proportional.***

Documents recovered from BLMIS, as well as those produced by Mr. Shapiro during the Rule 2004 stage, substantiate the Trustee's contention that he controlled the BLMIS accounts he held as trustee of trusts established for the benefit of his children. To meet his burden at trial, the Trustee seeks additional evidence on this point not just from Mr. Shapiro but also from his children. The following Disputed Requests seek documents bearing on the issue:

> <u>No. 6 (S)</u>: All documents and communications between You and any Family Member concerning BLMIS or any of 1SH014, 1SH028, 1SH030, 1SH079, and 1SH172 (the "Core Accounts").

> <u>No. 43 (S)</u>: All documents concerning Mr. Shapiro's review, control, management or any other type of activity for the Core Accounts.

> <u>No. 38 (S)</u>: All documents concerning any actual, proposed, or contemplated requests for redemption or withdrawal from any of the Core Accounts.

> <u>No. 20 (S)</u>: All documents and communications concerning amending or restating the LAD Trust, the Adam Shapiro 1985 Trust, the Leslie Shapiro 1985 Trust or the David Shapiro 1989 Trust.

> <u>No. 6 (D/L/K)</u>: All documents and communications between [David Shapiro, Leslie and Kenneth Citron], on the one hand, and Mr. Shapiro, on the other hand, concerning any of the Core Accounts or BLMIS.

> <u>Nos. 15 & 16 (D/L/K)</u>: All documents concerning the formation, amending or restating the LAD Trust, the Leslie Shapiro 1985 Trust, or the David Shapiro 1989 Trust.

> <u>No. 40 (D/L/K)</u>: Any and all documents concerning Your [Your father's, or any Family Member's] review, control, and/or management of the BLMIS Accounts, including, but not limited to, realized or unrealized gain and loss calculations, rate of return

21

analyses, margin balance calculations, and any inconsistencies or irregularities regarding such investments.

Request Nos. 43 (S) and 40 (D/L/K) seek documents showing Mr. Shapiro's direct exercise of control over the relevant accounts, while Request Nos. 6 (S) and 6, 15 and 16 (D/L/K) seek documents showing that the family acquiesced to Mr. Shapiro's exercise of that control. Defendants raise boilerplate, nonspecific objections to the requests, leaving the Trustee guessing as to why they deny discovery on this key disputed issue. Because Defendants have failed to raise any colorable, specific objections to these requests, and because those narrowly tailored requests do not impose an undue burden, Defendants should be ordered to produce all documents responsive to them.

Finally, requests seeking documents relating to redemption requests and receipt of transfers from BLMIS in connection with the trust accounts (*i.e.*, Account Nos. 1SH028 and 1SH030)[6] are likewise relevant to Mr. Shapiro's control over these accounts:

> No. 38 (S): All documents concerning any actual, proposed, or contemplated requests for redemption or withdrawal from any of the Core Accounts.
>
> No. 35 (D/L/K): All documents concerning any requests for redemption or withdrawal from any of the Core Accounts.

The Trustee intends to offer evidence that BLMIS made transfers to Mr. Shapiro's children from the trust accounts at Mr. Shapiro's *specific* request. Whether BLMIS complied with Mr. Shapiro's requests is highly probative of his level of control over the accounts. If BLMIS refused to distribute funds from the accounts as directed, that fact would bear on Mr. Shapiro's control. And to the extent that David Shapiro and Ms. Citron actually received the

---

[6] Although David Shapiro and Ms. Citron stipulated to receipt of transfers they received in connection with their personal accounts (*i.e.*, Nos. 1S0306 and 1SH171), both have refused to stipulate to any transfers they received from their trust accounts.

transfers as directed by Mr. Shapiro, that evidence would have a "tendency to make a fact [Mr. Shapiro's control over the accounts] more . . . probable than it would without the evidence[.]" FED. R. OF EVID. 401(a).

> **2.** ***The Remaining Proportionality Factors Weigh in Favor of Ordering Production.***

The remaining proportionality factors strongly favor of granting the requested discovery. First, the amount in controversy in this case is substantial: the Trustee seeks the recovery from Defendants more than $50 million in fraudulent transfers they received from BLMIS. Second, Defendants likely are in sole possession of the information the Trustee seeks. Third, the Trustee is not seeking discovery on ancillary issues, but rather has limited his discovery requests to core issues. Fourth, the requested discovery is indispensable to resolving those two core issues. Fifth, Defendants in their responses and objections do not indicate that they lack resources sufficient to participate in document discovery in this case. They do not. And finally, the clear benefit that the requested discovery would bring to the resolution of this case vastly outweighs any potential burden that Defendants have heretofore failed to articulate.

## IV. CONCLUSION

The Trustee respectfully requests that the Court grant the Trustee's Motion in its entirety and enter the Trustee's proposed order annexed to the Motion, ordering Defendants to produce all documents responsive to the Trustee's Undisputed Requests and Disputed Requests without further delay.

23

Dated: April 5, 2018
      New York, New York

**BAKER & HOSTETLER LLP**
PNC Center
1900 E. 9th Street, Suite 3200
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
James H. Rollinson
Email: jrollinson@bakerlaw.com

**BAKER & HOSTETLER LLP**

By: */s/ David J. Sheehan*
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Nicholas M. Rose
Email: nrose@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*