**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　Plaintiff-Applicant,<br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　Defendant. | SIPA LIQUIDATION<br>(Substantively Consolidated)<br><br>Adv. Pro. No. 08-1789 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, EVELYN BEREZIN WILENITZ, individually, and as Trustee and Beneficiary of the Trust U/ART Fourth O/W/O Israel Wilenitz, and SARA SEIMS, as Trustee of the Trust U/ART Fourth O/W/O Israel Wilenitz,<br><br>　　　　　Defendants. | **Adv. Pro. No. 10-04995 (SMB)** |

**DECLARATION OF HELEN DAVIS CHAITMAN**

　　I, Helen Davis Chaitman, hereby declare, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

　　1.　　I am a member of the bars of New York and New Jersey, and of this Court. I am a partner with Chaitman LLP, counsel for the Defendants referenced in the above caption and the Defendants listed on **Exhibit A** annexed hereto ("Defendants").

2. I submit this declaration in support of Defendants' motion, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), for an order directing that, in all of Defendants' cases, it is established that (a) Madoff and BLMIS did not operate a Ponzi scheme and (b) Madoff and BLMIS used the Defendants' money to purchase the securities shown on their statements; and, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), prohibiting the Trustee from introducing any evidence or arguments to the contrary.

3. Annexed hereto as **Exhibit B** is Defendants' Memorandum of Law with my accompanying Declaration both filed with the court in *In re Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB), laying out the history of the Trustee's concealment of material evidence and false allegations concerning Madoff's and BLMIS' trading activities. *See* ECF. Nos. 16236 and 16237, filed June 26, 2017. In that Memorandum, I explained, *inter alia,* that, despite the Trustee's consistent representation throughout these proceedings that Madoff and BLMIS never purchased any securities with the investment advisory customers' money, Madoff testified that he did purchase securities with the investment advisory customers' money, to wit: he always maintained a portfolio of $6 billion of U.S. Treasury Securities which he purchased with investment advisory customers' money. The most consistent holdings shown on the statements of investment advisory customers were U.S. Treasury Securities and, indeed, on July 26, 2017, the Trustee's counsel, David Sheehan, admitted to this Court that Madoff did purchase U.S. Treasury Securities with investment advisory customers' money, although he stated that the amount was $16 billion, not $6 billion. *See* **Exhibit C**: July 26, 2017 Tr. at 36:11-16. The precise amount has not yet been verified through discovery.

4. The Trustee has continually represented that all of Madoff's and BLMIS' trading records (the "Trading Records") were produced by the Trustee early on in these

{00035769 1}    2

cases and placed in the E-Data Room. For example, the following colloquy took place before this Court:

> THE COURT: If you have those things and somebody can look at them and see the subject matter of what they want to look at, figure out what to look at, fine.
>
> MR. JACOBS: There is a subfolder in Data Room 1 that is called DTC that has all of those records.
>
> MS. CHAITMAN: I'm not asking for -- I have the DTC records.
>
> **THE COURT: She wants other non-DTC records.**
>
> **MR. JACOBS: To the extent we have them in addition to publicly available information that we obtain, it's all in the data room clearly labeled.**

*See* **Exhibit D**: May 17, 2016 Tr. at 61:7 – 17 (emphasis added).

5. Mr. Jacobs' representation to the Court was a patent lie. In fact, it was ultimately disclosed that the documents the Trustee put in the E-Data Room were only the documents the Trustee wanted the Defendants to have. The great mass of Madoff's and BLMIS' Trading Records were in the Trustee's BLMIS Data Base, to which the Trustee has admittedly denied the Defendants' access. *See Picard v. Zraick,* Adv. Pro. No. 10-05257 (SMB), ECF No. 68, Trustee's Mem. at 8, Filed March 22, 2017 ("[T]he Trustee created a searchable electronic database containing approximately 30 million hard-copy documents and electronically stored information, to which litigants do <u>not</u> have access. The notion that the Trustee has held out E-Data Room 1 as a comprehensive database of all relevant information is simply false). (Internal citation omitted) (Emphasis in original).

6. At the May 31, 2017 hearing Mr. Jacobs recognized that I had been "asking for trading records for a very long time, for a couple of years now." *See* **Exhibit E**: May 31, 2017 Tr. at 17: 18-24.

{00035769 1}   3

7. As this Court itself recognized, the Trustee has violated two court orders to produce the Trading Records. *See* Ex. D: May 17, 2016 Tr. at 69:19-21 ("[I]f the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room."); *see* Magistrate Judge Maas Discovery Arbitration Order, January 5, 2017, ECF No. 14807 at 3 ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data Room 1, they must promptly be produced."); *see* **Exhibit F**: June 29, 2017 Tr. at 74:11, 14, 20; 67:4-8 (this Court stated to Mr. Sheehan: "I thought you were already directed to produce these documents" by this Court and Magistrate Judge Maas.").

8. The July 26, 2017 hearing concerned the deposition of Madoff on the "Day Two Topics." Mr. Madoff was deposed on the Day Two Topics on November 8 and 9, 2017. However, in view of the fact that the Trustee had still not produced to the Defendants the Trading Records that they had been requesting for several years, it was agreed that the deposition would be continued at a mutually convenient date in December 2017, after the Trustee produced the Trading Records.

9. At the request of Mr. Sheehan, on November 14, 2017, I met with Mr. Sheehan and Mr. Shifrin to discuss the Trustee's production of Madoff's and BLMIS' Trading Records. Mr. Sheehan represented to me that the Trustee was going to promptly produce the Trading Records but he explained that he had no idea what I meant by Trading Records. I had been asking for the Trading Records for several years and nobody from Baker & Hostetler had ever told me they didn't know what I meant by "Trading Records." I explained that I meant confirmations and monthly statements from third party institutions such as Lehman Brothers, Bear Stearns, JPMorgan Chase, and Morgan Stanley showing trades conducted by, and positions held by, Madoff and BLMIS.

{00035769 1}                                    4

10. Mr. Sheehan and Mr. Shifrin explained that they had never understood what I meant by Trading Records, but now that they understood, they would try to figure out a way to search the BLMIS Data Base [of documents the Trustee has consistently refused to provide the Defendants with access to] to find such documents. I suggested that they simply search the specific account number that each institution had assigned to Madoff and/or BLMIS. They both reacted that this was a great idea which had never occurred to them but they didn't know how they would find the account numbers for Madoff and BLMIS. I told them that all they had to do was look at old statements and find the numbers and I told them, to speed things along, that I would provide them with such a list.

11. I raised at the meeting the issue of scheduling the next date for Mr. Madoff's deposition because I was concerned about his health and his continuing ability to testify. Mr. Sheehan requested that I agree to defer continuing Mr. Madoff's deposition until the Trustee produced the Trading Records. I agreed, with the understanding that the Trading Records would be produced immediately.

12. The next day, on November 15, 2017, Mr. Shifrin wrote to me as follows:

> Thanks again for coming in yesterday--I think it was a productive meeting.
>
> After consulting internally, we have identified a list that we created of BLMIS account numbers with various banks. We can apply those search terms across our third party records to get a preliminary idea of what kind of universe of documents that would yield. That way, you don't have to go digging up those numbers yourself.
>
> We will circle back with our results. In the meantime, let me know if you have any questions or would otherwise like to discuss.
>
> Thanks,

> Max

*See* **Exhibit G.**

13. On November 19, 2017, in the hope that we could finally move expeditiously with the discovery which Defendants had sought for several years, I sent the following email to Mr. Sheehan:

> Dave: I very much appreciated your statements at our meeting last week that the Trustee is willing to cooperate with me in producing the documents I have requested, *i.e.,* all of the third party trading records received by Madoff from other financial firms and custodial banks, regardless of time period and regardless of whether the trades were deemed "House 5" or House 17" because, as I explained, Madoff operated as one entity and I view the distinction between House 5 and House 17 as artificial. In response to my email about scheduling the next day of Madoff's deposition for early December to accommodate Amanda's pregnancy, you suggested we not rush to continue Madoff's deposition and that we schedule it in early 2018.
>
> I am amenable to that, as we discussed, but I want to confirm that the Trustee had a full opportunity to cross-examine Madoff on all issues on which Madoff has, to date, been questioned. Thus, the Trustee will have no objection to the use of Madoff's deposition testimony if it turns out he is unable to continue his deposition.
>
> As you know, I have subpoenaed a great number of Madoff traders for both documents and depositions. The Trustee reacted to those subpoenas in what I can only describe as hysteria. Judge Bernstein, at the Trustee's request, stayed production of documents in response to those subpoenas and indicated that the depositions, pursuant to those subpoenas, will be taken once Madoff's deposition is completed. Since the Trustee is now embarking on extensive review of his records in order to comply with my document demands, I would like us jointly to request from Judge Bernstein that we begin the process of scheduling the traders' depositions and production of documents. I see no reason to delay this process. Please let me know if you will agree to this so that we can make a joint request.

*See* **Exhibit H.**

14.     Having received no response to this email, on November 21, 2017, I served the Trustee with an additional document demand so that he would be required, under the Federal Rules of Civil Procedure, to produce the documents no later than December 21, 2017. *See* **Exhibit I.**

15.     Thereafter, I heard nothing from the Trustee's counsel. On January 2, 2018, I sent the following email to Mr. Sheehan and Mr. Shifrin:

> Happy new year to both of you. It is now a month and a half since you promised me that you would search the BLMIS data base for third party trading records and, to date, I have not received a single document as a result of that search. Can you please explain to me what steps you have taken to fulfill your representation to me and when I can expect to receive the documents you have located? Thanks.

*See* **Exhibit J.**

16.     On January 2, 2018, I received the following email from Mr. Shifrin:

> Helen,
>
> Happy New Year to you as well. As we stated in our December 21, 2017 responses and objections to your discovery requests, our search and review of additional records is ongoing, and we anticipate making a supplemental production of any additional records that we identify within four weeks. In addition, as we also stated in our responses and discussed at our meet and confer, we are using known BLMIS bank account numbers to run searches in our Third Party Documents, and are reviewing that population to ensure that we identify and produce the specific types of records that you seek.
>
> As soon as these steps are completed, we will produce any additional responsive records that we identify.
>
> Thanks,
> Max

***See* Exhibit K.**

17.     Despite Mr. Shifrin's promise to produce responsive documents from the BLMIS Data Base "within four weeks," I received no documents from the Trustee's counsel within four weeks of January 2, 2018.

18.     In fact, I had received no documents from the Trustee's counsel as of March 16, 2018. On that day, I received the following email from Mr. Shifrin:

> Helen,
>
> In connection with your request for documents pertaining to what you consider to be "trading records," the Trustee has identified documents from the third-party database responsive to the agreed-upon search terms based upon BLMIS bank account numbers.
>
> As you are aware, the Trustee has filed a Motion for an Order Establishing an Omnibus Proceeding for the Purpose of Determining the Existence, Duration, and Scope of the Ponzi Scheme at BLMIS (the "Omnibus Proceeding"). The proposed Omnibus Proceeding and its impact on consolidated discovery will be discussed with Judge Bernstein during the April 25, 2018 omnibus hearing date. While the Trustee is prepared to begin production of those documents now, we suggest holding the production in abeyance in light of the proposed Omnibus Proceeding. This way we can ensure the involvement of all interested parties and avoid further discovery into the nature of the Ponzi scheme on a piecemeal basis. Other defendants with ongoing cases have agreed to hold discovery related to the Ponzi scheme in abeyance pending this motion.
>
> If you prefer to receive the documents prior to Judge Bernstein's ruling on the Trustee's motion, however, we are prepared to process and send you the bulk of the responsive documents, but will need to provide notice to the producing parties, pursuant to the procedures in the June 6, 2011 Litigation Protective Order, with respect to certain documents that have been designated confidential.
>
> Please let us know how you would like to proceed.
>
> Best,
> Max

*See* **Exhibit L.**

{00035769 1}                                    8

19. On March 16, 2018, I responded to Mr. Shifrin as follows:

> Max: When we met in your office in early January, you gave me every impression that you would promptly produce the documents that I had been requesting because we agreed to defer the continued deposition of Mr. Madoff until you produced these documents. It is now four months later. I would like the documents immediately. I see no reason why you should have delayed as long as you have. Please also give me all of the account opening forms and updates for the 509 account. As you know, this was something I requested in January and it is a very small number of documents. Again, the delay in production is inexplicable.

*See* **Exhibit M.**

20. On March 23, 2018, the Trustee's counsel made its first production of documents to the Defendants of the Trading Records we had been seeking since March 8, 2016. The production is a joke: In total, there are 2,356 documents comprising 16,848 pages. A large number of the documents are completely unresponsive to our requests. We specifically asked for third party Trading Records and documents relating to the agreement with JPMorgan Chase concerning the 509 account. In response, we have received some responsive documents but the production is both incomplete and contains documents that are utterly irrelevant and unresponsive. An index of the documents produced is annexed as **Exhibit N**. As the Court can see, the Trustee produced thousands of pages of irrelevant documents, including checks to and from customers; customer account statements; internal emails; internal Madoff documents, etc. And there were no Trading Records produced for most of the companies with which Madoff and BLMIS maintained accounts and no Trading Records pre-dating 2007.

21. The documents in the BLMIS Data Base are essential for the Defendants' cases, as this Court recognized:

> THE COURT: Okay, I understand. Ms. Chaitman is saying look, you know, basically I've been sandbagged. You took the position that securities were never used or customer funds were never used to purchase securities, forget about the allocation issue for a moment. And now Madoff testifies that that's precisely what was done.

*See* **Exhibit O**: August 22, 2017 Tr. at 21: 4-9.

22. At the May 31, 2017 hearing, this Court granted me permission to file a motion seeking sanctions against the Trustee for failure to produce the Trading Records, despite two court orders. *See* **Exhibit P**: May 31, 2017 Tr. at 44: 8-21.

23. I do not have any doubt that, if any of the Defendants had ignored their discovery obligations, as the Trustee has done here, this Court would impose on the Defendants the most severe sanctions permitted under the Federal Rules of Civil Procedure. I ask that the Court treat the Trustee as he deserves to be treated under those same Rules.

April 11, 2018

*/s/ Helen Davis Chaitman*
Chaitman LLP
465 Park Avenue
New York, NY 10022
Phone & Fax: (888) 759-1114
hchaitman@chaitmanllp.com

*Attorneys for Defendants*

{00035769 1}    10