# EXHIBIT B

GARVEY SCHUBERT BARER                          Hearing Date:  TBD
100 Wall Street, 20th Floor                    Response Deadline: TBD
New York, New York 10005
Tel:  (212) 431-8700
Fax:  (212) 334-1278
Andrew J. Goodman
agoodman@gsblaw.com
*Attorneys for Defendants L.H. Rich Companies,*
*N.R. Investment Associates, M.R. Investment*
*Associates, Jack Polack, and James Polack*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------X
SECURITIES INVESTOR PROTECTION        :
CORPORATION,                          :   Adv. Pro. No. 08-01789 (BRL)
                                      :
         Plaintiff-Applicant,         :   SIPA LIQUIDATION
v.                                    :
                                      :   (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT          :
SECURITIES, LLC,                      :
                                      :
         Defendant.                   :
------------------------------------X
In re:                                :
                                      :
BERNARD L. MADOFF,                    :
                                      :
         Debtor.                      :
------------------------------------X
IRVING H. PICARD, Trustee for the Liquidation   :
of Bernard L. Madoff Investment Securities LLC, :
                                      :   Adv. Pro. No. 10-05371 (BRL)
         Plaintiff,                   :
v.                                    :
                                      :
L.H. RICH COMPANIES, N.R. INVESTM ENT  :
ASSOCIATES, M.R. INVESTMENT           :
ASSOCIATES, JACK POLACK, and JAMES    :
POLACK,                               :
         Defendants.                  :
------------------------------------X

**NOTICE OF MOTION BY DEFENDANTS TO DISMISS**
**COMPLAINT PURSUANT TO RULE 12(b)**

1

**PLEASE TAKE NOTICE** that, upon this Notice and the accompanying Memorandum of Law, the Affidavit of David Stern, and the Declaration of Andrew J. Goodman, Esq. and exhibits thereto, defendants L.H. Rich Companies, N.R. Investment Associates, M.R. Investment Associates, Jack Polack and James Polack ("Defendants") by and through their undersigned counsel, will move before the Honorable Burton R. Lifland, United States Bankruptcy Judge, at the United States Bankruptcy Court, the Alexander Hamilton Customs House, One Bowling Green, New York, New York, 10004-1408 at a date **To Be Determined** pending any mediation under the applicable Case Management Order, for entry of an order, pursuant to Rule 12(b)(5) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, dismissing the Complaint filed on or about December 9, 2010 by Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC, against the Defendants.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on a date **To Be Determined** pending any mediation under the applicable Case Management Order, at the United States Courthouse, One Bowling Green, New York, New York.

**PLEASE TAKE FURTHER NOTICE** that written objection, if any, to the relief requested by the Defendants must be filed with the Clerk of the United States Bankruptcy Court, One Bowling Green, New York, New York 10004-1408, pursuant to Local Bankruptcy Rule 9006-1, by no later than 3:00 p.m. on **To Be Determined** pending any mediation under the applicable Case Management Order, (with a courtesy copy delivered to the Chambers of the Honorable Burton R. Lifland), and must be served upon the undersigned counsel for Defendants. Any objections must specifically state the interest that the objecting party has in these proceedings and the specific basis of any objections to the Defendants' motion.

2

Dated: New York, New York
      May 10, 2011

GARVEY SCHUBERT BARER

By: _____
     Andrew J. Goodman, Esq.  (AG-3406)
     *Attorneys for Defendants L.H. Rich*
     *Companies, N.R. Investment Associates,*
     *M.R. Investment Associates, Jack Polack,*
     *and James Polack*
     100 Wall Street, 20th Floor
     New York, New York 10005
     Tel:  (212) 965-4534
     Fax: (212) 334-1278
     Email: agoodman@gsblaw.com

3

# **AFFIDAVIT OF DAVID STERN**

GARVEY SCHUBERT BARER
100 Wall Street, 20th Floor
New York, New York 10005
Tel: (212) 431-8700
Fax: (212) 334-1278
Andrew J. Goodman
agoodman@gsblaw.com
*Attorneys for Defendants L.H. Rich Companies,*
*N.R. Investment Associates, M.R. Investment*
*Associates, Jack Polack, and James Polack*

**Hearing Date: TBD**
**Response Deadline: TBD**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SECURITIES INVESTOR PROTECTION
CORPORATION,                                     :      Adv. Pro. No. 08-01789 (BRL)
                                                 :
            Plaintiff-Applicant,                 :      SIPA LIQUIDATION
                                                 :
v.                                               :      (Substantively Consolidated)
                                                 :
BERNARD L. MADOFF INVESTMENT                     :
SECURITIES, LLC,                                 :
                                                 :
            Defendant.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                           :
                                                 :
BERNARD L. MADOFF,                               :
                                                 :
            Debtor.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IRVING H. PICARD, Trustee for the Liquidation    :
of Bernard L. Madoff Investment Securities LLC,  :
                                                 :      Adv. Pro. No. 10-05371 (BRL)
            Plaintiff,                            :
                                                 :
v.                                               :
                                                 :
L.H. RICH COMPANIES, N.R. INVESTM ENT            :
ASSOCIATES, M.R. INVESTMENT                      :
ASSOCIATES, JACK POLACK, and JAMES               :
POLACK,                                          :
            Defendants.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**AFFIDAVIT OF DAVID STERN**

1

DAVID STERN, being duly sworn, deposes, and says:

1.    I am the President of Aria Management Company.  I submit this Affidavit in support of the Motion to Dismiss Plaintiff's Complaint Under Rule 12(b) filed by defendants L.H. Rich Companies, N.R. Investment Associates, M.R. Investment Associates, Jack Polack and James Polack in the above-captioned action.

2.    I have personal knowledge of the facts contained in this Affidavit, unless stated on information and belief, and am competent to testify as to such facts.

3.    Aria Management Company is located at 1515 Fifth Avenue, Suite 104 in Moline, Illinois, 61265 and is the sole occupant of this location.  Aria Management Company has performed bookkeeping and some accounting and/or tax services for defendants L.H. Rich Companies, N.R. Investment Associates, and M.R. Investment Associates.  In performing such duties, I have become aware of certain facts related to the business formation, operations and locations of defendants L.H. Rich Companies, N.R. Investment Associates, and M.R. Investment Associates.

4.    Based on information and belief, L.H. Rich Companies is a Washington State general partnership.

5.    L.H. Rich Companies does not have any officer, or any managing or general agent, or any agent otherwise authorized to accept service of process at 1515 Fifth Avenue, Suite 104, Moline, IL 61265.

6.    Based on information and belief, L.H. Rich Companies is an existing, on-going, and solvent general partnership.

2

7.    Based on information and belief, N.R. Investment Associates is a Washington State general partnership.

8.    N.R. Investment Associates does not have any officer, or any managing or general agent, or any agent otherwise authorized to accept service of process at 1515 Fifth Avenue, Suite 104, Moline, IL 61265.

9.    Based on information and belief, M.R. Investment Associates is a Washington State general partnership.

10.    M.R. Investment Associates does not have any officer, or any managing or general agent, or any agent otherwise authorized to accept service of process at 1515 Fifth Avenue, Suite 104, Moline, IL 61265.

11.    Based on information and belief, defendant James Polack is a resident of the State of Washington.

12.    I am not an officer, a managing agent, a general agent of defendants L.H. Rich Companies, N.R. Investment Associates, or M.R. Investment Associates.

13.    I am not an agent authorized by appointment or by law to receive service of process on behalf of defendants L.H. Rich Companies, N.R. Investment Associates, or M.R. Investment Associates.

14.    As President of Aria Management Company, I am aware that no person employed at Aria Management Company is an officer, a managing agent, a general agent of defendants L.H. Rich Companies, N.R. Investment Associates, or M.R. Investment Associates.

15.    As President of Aria Management Company, I am aware that no person employed at Aria Management Company is an agent authorized by appointment or by law to receive service of process on behalf of defendants L.H. Rich Companies, N.R. Investment Associates, or M.R. Investment Associates.

16.    Copies of the envelopes which contained the Summons, Complaint, and related court documents in the above-captioned action are attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

David Stern

Sworn to before me this
_9_ day of May 2011

Notary Public

OFFICIAL SEAL
PAMELA S. FOREST
COMMISSION NO. 547030
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-12-14

4

# Exhibit A

DONLE
Re: Irvi
Bernard L. Madoff Investment Securities LLC
P.O. Box 899
Madison Square Station
New York, NY 10010



UNITED STATES POSTAGE
PITNEY BOWES
02 1R        $ 02.58⁰
0006556649   MAR 14 2011
MAILED FROM ZIP CODE 10016

L. H. RICH COMPANIES
1515 FIFTH AVE SUITE 104
MOLINE IL 61265

1043 10-05371 003864 008549

IMPORTANT OPEN PROMPTLY
DATED MATERIAL ENCLOSED

**DONLIN, RECANO & COMPANY, INC.**
Re: Irving H. Picard, Trustee for the Liquidation of
Bernard L. Madoff Investment Securities LLC
P.O. Box 899
Madison Square Station
New York, NY 10010



UNITED STATES POSTAGE
PITNEY BOWES
02 1R          $ 02.58⁰
0006556649    MAR 14 2011
MAILED FROM ZIP CODE 10016

N. R. INVESTMENT ASSOCIATES
1515 FIFTH AVE SUITE 104
MOLINE IL 61265

1043 10-05371 003865 008550

**IMPORTANT OPEN PROMPTLY**
**DATED MATERIAL ENCLOSED**

**DONLIN**
Re: Irvin
**Bernard L. Madoff Investment Securities LLC**
**P.O. Box 899**
**Madison Square Station**
**New York, NY 10010**

UNITED STATES POSTAGE
PITNEY BOWES
02 1R
0006556649    MAR 14 2011
$ 02.58⁰
MAILED FROM ZIP CODE 10016

M. R. INVESTMENT ASSOCIATES
1515 FIFTH AVE SUITE 104
MOLINE IL 61265

1043 10-05371 003866 00855J

**IMPORTANT OPEN PROMPTLY**
**DATED MATERIAL ENCLOSED**

# DECLARATION OF ANDREW J. GOODMAN

GARVEY SCHUBERT BARER                          Hearing Date:  TBD
100 Wall Street, 20th Floor                    Response Deadline:  TBD
New York, New York 10005
Tel:  (212) 431-8700
Fax: (212) 334-1278
Andrew J. Goodman
agoodman@gsblaw.com
*Attorneys for Defendants L.H. Rich Companies,*
*N.R. Investment Associates, M.R. Investment*
*Associates, Jack Polack, and James Polack*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
SECURITIES INVESTOR PROTECTION          :
CORPORATION,                            :   Adv. Pro. No. 08-01789 (BRL)
                                        :
          Plaintiff-Applicant,          :   SIPA LIQUIDATION
v.                                      :
                                        :   (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT            :
SECURITIES, LLC,                        :
                                        :
          Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                  :
                                        :
BERNARD L. MADOFF,                      :
                                        :
          Debtor.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IRVING H. PICARD, Trustee for the Liquidation  :
of Bernard L. Madoff Investment Securities LLC, :
                                        :   Adv. Pro. No. 10-05371 (BRL)
          Plaintiff,                    :
v.                                      :
                                        :
L.H. RICH COMPANIES, N.R. INVESTM ENT   :
ASSOCIATES, M.R. INVESTMENT             :
ASSOCIATES, JACK POLACK, and JAMES      :
POLACK,                                 :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DECLARATION OF ANDREW J. GOODMAN, ESQ. IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)**

1

**ANDREW J. GOODMAN**, under penalty of perjury, declares the following to be true and correct:

1.     I am a member of the Bar of this Court and an owner of the firm Garvey Schubert Barer, counsel of record for defendants L.H. Rich Companies, N.R. Investment Associates, M.R. Investment Associates, Jack Polack and James Polack ("Defendants").

2.     I submit this declaration in support of documents concerning Defendants' Motion to Dismiss Pursuant to Rule 12(b) and referenced in the accompanying Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint Pursuant to Rule 12(b), filed herewith.

3.     Attached as Exhibit A hereto is a true and correct copy of the Complaint filed by the Trustee in this action on or about December 9, 2010.

4.     Attached as Exhibit B hereto is a true and correct copy of the Affidavit of Service filed by the Trustee herein on March 15, 2011, Docket No. 4 in this Adversary Proceeding.

5.     Attached as Exhibit C hereto is a true and correct copy of the Death Certificate of Jack Polack, with the social security number redacted, showing Mr. Jack Polack died on January 12, 1998.

6.     The sole Affidavit of Service that has been filed in this case is attached hereto as Exhibit B pertaining to defendants L.H. Rich Companies, N.R. Investment Associates, and M.R. Investment Associates.  No Affidavit of Service has been filed in this action related to defendants Jack Polack and James Polack.

///

///

///

2

7.      Attached as Exhibit D hereto are true and correct copies of the Trustee's Exhibits A, B, and C that were attached to the Trustee's (First) Amended Complaint filed August 6, 2009 in Picard v. Merkin, Adv. Proc. No. 09-1182, Docket No. 10.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 10, 2011.

Andrew I. Goodman

3

# Exhibit A

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield
Richard J. Bernard
Geraldine E. Ponto
Marc Skapof
*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-_05571_ (BRL) |
| Plaintiff, | |
| v. | |
| L. H. RICH COMPANIES, N. R. INVESTMENT ASSOCIATES, M. R. INVESTMENT ASSOCIATES, JACK POLACK, and JAMES POLACK, | |
| Defendants. | |

## COMPLAINT

Irving H. Picard (the "Trustee"), as Trustee for the liquidation of the business of Bernard

L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act,

15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),[1] and the substantively consolidated estate of Bernard L.

Madoff individually ("Madoff"), by and through his undersigned counsel, for his complaint (the

"Complaint"), states as follows:

### NATURE OF PROCEEDING

1.      This adversary proceeding arises from the massive Ponzi scheme perpetrated by

Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS.

In early December 2008, BLMIS generated client account statements for its approximately 4,900

open client accounts. When added together, these statements purport that clients of BLMIS had

approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a

small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme

and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison.

The within defendants L.H. Rich Companies, N.R. Investment Associates, and M.R. Investment

Associates (collectively "Defendants"), received avoidable transfers from BLMIS.

2.      Defendants were beneficiaries of this Ponzi scheme. Since December 11, 2002,

Defendants received the amount of $5,550,000 from BLMIS. The Trustee's investigation has

revealed that $4,050,000 of this amount represented fictitious profits from the Ponzi scheme

Accordingly, Defendants have received $4,050,000 of other people's money. Upon information

and belief, the within defendants Jack Polack and James Polack ("Subsequent Transferee

Defendants") received subsequent transfers of the avoidable transfers referenced above. To the

extent the funds transferred from BLMIS were for the benefit of the Subsequent Transferee

Defendants, Subsequent Transferee Defendants are the initial transferees of such transfers and are included in the definition of Defendants for purposes of the allegations herein. This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

3.    This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq.* (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

## JURISDICTION AND VENUE

4.    This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.,* No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A) and (b)(4).

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

6.    Venue in this district is proper under 28 U.S.C. § 1409.

---

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

## DEFENDANTS

7.     Defendant L.H. Rich Companies is a general partnership that was, upon information and belief, formed under the laws of the state of Illinois.  Its principal place of business is located at 1515 Fifth Avenue, Suite 104, Moline, Illinois 61265.  Defendant holds a BLMIS account in the name, "L.H. Rich Companies," with the account address reported as 1515 Fifth Avenue, Suite 104, Moline, Illinois 61265,

8.     Upon information and belief, Defendant N.R. Investment Associates is a general partnership that maintains its principal place of business at 1515 Fifth Avenue, Suite 104, Moline, Illinois 61265 and a general partner of Defendant L.H. Rich Companies.

9.     Upon information and belief, Defendant M.R. Investment Associates is a general partnership that maintains its principal place of business at 1515 Fifth Avenue, Suite 104, Moline, Illinois 61265 and a general partner of Defendant L.H. Rich Companies.

10.     Upon information and belief, Subsequent Transferee Defendant Jack Polack is an individual who is the general partner and trustee of N.R. Investment Associates.

11.     Upon information and belief, Subsequent Transferee Defendant James Polack is an individual who is the general partner and trustee of M.R. Investment Associates.

## BACKGROUND, THE TRUSTEE AND STANDING

12.     On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and

---

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B).  Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

13.    On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

14.    On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

15.    Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a.    appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b.    appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c.    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA. By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

16.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested

person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

17.    At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).  Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal."  *Id.*  Madoff was sentenced on June 29, 2009 to 150 years in prison.

18.    On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme.  At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information.  Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s.  Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali*, No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

19.    As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.  However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.  Consequently, the Trustee must use his authority

under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

20.    Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b).    Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

21.    Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

22.    The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a.    Defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b.    BLMIS incurred losses as a result of the claims set forth herein;

c.    BLMIS' customers were injured as a result of the conduct detailed herein;

d.    SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

e.    the Trustee will not be able to fully satisfy all claims;

f.      the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

g.      the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants and Subsequent Transferee Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

h.      SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

## THE FRAUDULENT PONZI SCHEME

23.      Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b). By that registration, BLMIS

is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

24.     For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

25.     For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

26.     Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in -- or had been traded through -- their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in

the account statements virtually never occurred and the profits reported were entirely fictitious.
At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he
claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at
3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50).
Indeed, based on the Trustee's investigation to date and with the exception of isolated individual
trades for certain parties other than Defendants, there is no record of BLMIS having cleared any
purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing
Corporation, the clearing house for such transactions.

27.    Prior to his arrest, Madoff assured clients and regulators that he conducted all
trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired
tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a
London based entity substantially owned by Madoff and his family. There are no records that
MSIL ever used the wired funds to purchase securities for the accounts of the IA Business
clients.

28.    Additionally, based on the Trustee's investigation to date, there is no evidence
that BLMIS ever purchased or sold any of the options that Madoff claimed on customer
statements to have purchased and sold.

29.    For all periods relevant hereto, the IA Business was operated as a Ponzi scheme
and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or
defraud other current and prospective customers of BLMIS. The money received from investors
was not set aside to buy securities as purported, but instead was primarily used to make the
distributions to – or payments on behalf of – other investors. The money sent to BLMIS for
investment, in short, was simply used to keep the scheme going and to enrich Madoff, his

-10-

associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

30.     The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements, and were made to avoid detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

31.     During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

32.     When payments were made to or on behalf of these investors, including Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

33.     BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due

to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

34.    In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

35.    In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

36.    Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

37.    At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

## THE TRANSFERS

38.    According to BLMIS' records, an account (No. 1ZB250) was maintained with BLMIS, as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were

executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

39.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York.  The Account was held in New York, New York, and funds were sent to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New York, New York for application to the Account and the purported conducting of trading activities.    Between the date the Account was opened and the Filing Date, deposits for application to the Account were made to BLMIS through checks and/or wire transfers into the BLMIS Bank Account and/or received inter-account transfers from other BLMIS accounts.

40.    During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Defendants totaling $4,050,000 in fictitious profits from the Ponzi scheme. The Transfers received by Defendants constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money. The Transfers were made to or for the benefit of Defendants and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

41.    The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001) total $4,050,000 and are referred to hereafter as the "Six Year Transfers." See Exhibit B, Column 11. The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), total $1,800,000 and are referred to hereafter as the "Two Year Transfers." See Exhibit B, Column 10.

-13-

42.    On information and belief, some or all of the Transfers were subsequently transferred by Defendants to Subsequent Transferee Defendants (collectively, the "Subsequent Transfers").

43.    The Subsequent Transfers, or the value thereof, are recoverable from Subsequent Transferee Defendants pursuant to §550(a) of the Bankruptcy Code.

44.    The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers, Subsequent Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

45.    To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

**COUNT ONE**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551**

46.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

47.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

48.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

49.    Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud some or all of BLMIS' then existing and/or future creditors.

50.    Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

51.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT TWO
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551

52.    To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

53.    Each of the Two Year Transfers was made on or within two years before the Filing Date.

54.    Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

55.    BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

56.    At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

57.    At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

58.    At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

-15-

59.     Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

60.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

**COUNT THREE**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276,**
**278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551**

61.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

62.     At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

63.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

64.     Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay or defraud the creditors of BLMIS.  BLMIS made each of the Six Year Transfers to or for the benefit of Defendants in furtherance of a fraudulent investment scheme.

65.     As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year

Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year

Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT FOUR
### FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 273, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

66.     To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of the Complaint as if fully rewritten herein.

67.     At all times relevant to the Six Year Transfers, there have been and are one or

more creditors who have held and still hold matured or unmatured unsecured claims against

BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and

are not allowable only under section 502(e) of the Bankruptcy Code.

68.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined

under DCL section 270.

69.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

70.     BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

71.     As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279,

sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the

Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year

Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year

Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT FIVE
### FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

72.     To the extent applicable, the Trustee incorporates by reference the allegations

contained in the previous paragraphs of the Complaint as if fully rewritten herein.

73. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

74. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

75. BLMIS did not receive fair consideration for any of the Six Year Transfers.

76. At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

77. As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT SIX
### FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

78. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

79. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

-18-

80.     Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

81.     BLMIS did not receive fair consideration for any of the Six Year Transfers.

82.     At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

83.     As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Defendants: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS.

## COUNT SEVEN
## RECOVERY OF SUBSEQUENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 278 AND/OR 279 AND 11 U.S.C. §§ 544, 548, 550(a) AND 551

84.     To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

85.     Each of the Transfers is avoidable under sections 544 and 548 of the Bankruptcy Code, DCL sections 273, 274, 275 and/or 276 and section 78fff-2(c)(3) of SIPA.

86.     On information and belief, the Subsequent Transfers were transferred by Defendants to Subsequent Transferee Defendants.

87.     Each of the Subsequent Transfers was made directly or indirectly to Subsequent Transferee Defendants.

88.     Subsequent Transferee Defendants are immediate or mediate transferees of the Subsequent Transfers from Defendants.

89.    As a result of the foregoing and the avoidance of the within Transfers, pursuant to DCL sections 278 and/or 279, sections 544(b), 548(a), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment against Subsequent Transferee Defendants: (a) avoiding and preserving the Subsequent Transfers, (b) directing that the Subsequent Transfers be set aside, and (c) recovering the Subsequent Transfers, or the value thereof, from Subsequent Transferee Defendants for the benefit of the estate of BLMIS.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i.    On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

ii.    On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

iii.    On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

iv.    On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

v.    On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

vi.    On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS;

vii.    On the Seventh Claim for Relief as a result of the avoidance of the within Transfers, pursuant to DCL section 278 and/or 279, sections 544(b), 548, 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Subsequent Transfers, (b) directing that the Subsequent Transfers be set aside, and (c) recovering the Subsequent Transfers, or the value thereof, from Subsequent Transferee Defendants for the benefit of the estate of BLMIS;

viii.   On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were received;

ix.   On all Claims for Relief, establishment of a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of BLMIS' estate;

x.   On all Claims for Relief, assignment of Defendants' income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the scheme;

SPACE INTENTIONALLY BLANK

      xi.     On all Claims for Relief, awarding the Trustee all applicable interest, costs, and

disbursements of this action; and

      xii.    On all Claims for Relief, granting Plaintiff such other, further, and different relief

as the Court deems just, proper and equitable.

Date: November 12, 2010
     New York, New York

Of Counsel:

**BAKER & HOSTETLER LLP**
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
Matthew P. Julian
mjulian@bakerlaw.com

By: /s/ Marc E. Hirschfield
    /s/ Richard J. Bernard
    /s/ Geraldine E. Ponto
    /s/ Marc Skapof
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Richard J. Bernard
Email: rbernard@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

Exhibit A

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| L H RICH COMPANIES | 1ZB250 |

MADC1043  00000001

Exhibit B

BLMIS ACCOUNT NO. 1ZB250 - L H RICH COMPANIES

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 90-Day Preferential Transfers | Column 10 2-Year Fraudulent Transfers | Column 11 6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/6/1995 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 1,000,000 | - | - | - |
| 6/2/1997 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 1,500,000 | - | - | - |
| 7/3/2000 | CHECK | (250,000) | - | (250,000) | - | - | 1,250,000 | - | - | - |
| 12/31/2004 | CHECK WIRE | (500,000) | - | (500,000) | - | - | 750,000 | - | - | - |
| 8/31/2005 | CHECK WIRE | (1,000,000) | - | (1,000,000) | - | - | (250,000) | - | - | (250,000) |
| 1/31/2006 | CHECK WIRE | (2,000,000) | - | (2,000,000) | - | - | (2,250,000) | - | - | (2,000,000) |
| 3/18/2008 | CHECK WIRE | (1,800,000) | - | (1,800,000) | - | - | (4,050,000) | - | (1,800,000) | (1,800,000) |
| | Total: | | $ 1,500,000 | $ (5,550,000) | $ - | $ - | $ (4,050,000) | $ - | $ (1,800,000) | $ (4,050,000) |

Page 1 of 1 - 1ZB250

MADC1043_00000002

# Exhibit B

## UNITED STATES BANKRUPTCY COURT
### Southern District of New York

------------------------------------------------------------

SECURITIES INVESTOR PROTECTION
CORPORATION,

                           Plaintiff-Applicant,

   v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                           Defendant.

Adv. Pro. No. 08-01789 (BRL)

SIPA LIQUIDATION

(Substantively Consolidated)

------------------------------------------------------------

In re:

BERNARD L. MADOFF,

                           Debtor.

Case No. 09-11893 (BRL)

------------------------------------------------------------

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                           Plaintiff,

   v.

L. H. RICH COMPANIES, N. R. INVESTMENT
ASSOCIATES, M. R. INVESTMENT
ASSOCIATES, JACK POLACK, and JAMES
POLACK,

                           Defendants.

Adv. Pro. No. 10-05371 (BRL)

------------------------------------------------------------

### AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                         ) ss:
COUNTY OF NEW YORK   )

I, Patricia Malval declare:

    1.     I am over the age of 18 years and not a party to these chapter 11 cases.

    2.     I am employed by Donlin, Recano & Company, Inc., 419 Park Avenue South, Suite 1206, New
          York, NY 10016.

    3.     On the 14th day of March, 2011, I caused a true and accurate copy of the:

         (i)      "Complaint", along with the relevant exhibits (Docket No. 1); and the

         (ii)     "Notice of Applicability of the Order Approving Case Management Procedures for
               Avoidance Actions" (Docket No. 2); and the

         (iii)    "Summons and Notice of Pretrial Conference in An Adversary Proceeding" (Docket No.
               3); and the

(iv)  "Order (1) Establishing Litigation Case Management Procedures for Avoidance Actions and (2) Amending the February 16, 2010 Protective Order" dated November 11, 2010; and the

(v)  "Avoidance Action Executive Summary Letter dated December 20, 2010"; and the

(vi)  "Third Amended Notice of Omnibus Avoidance Action Hearing Dates",

to be served upon the parties listed on <u>Exhibit 1</u>, attached hereto, via First Class US Mail.

4.  Said documents were securely enclosed in postage prepaid envelopes and delivered to an office of the United States Postal Service for delivery by First Class Mail.

5.  I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed this 14th day of March, 2011 at New York, New York.

By _____
Patricia Malval

Sworn before me this
14th day of March, 2011

_____
Notary Public

ROBERT ROTMAN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #02RO6211735
COMM. EXP. September 11, 2013

300108860

L. H. RICH COMPANIES
    L. H. RICH COMPANIES
    MOLINE IL 61265

    003864 008549

N. R. INVESTMENT ASSOCIATES
    N. R. INVESTMENT ASSOCIATES
    MOLINE IL 61265

    003865 008550

M. R. INVESTMENT ASSOCIATES
    M. R. INVESTMENT ASSOCIATES
    MOLINE IL 61265

    003866 008551

**10-05371-brl** Irving H. Picard, Trustee for the Liquidation of B v. L.H. Rich Companies et al
**Case type:** ap **Related bankruptcy:** Lead case not found **Judge:** Burton R. Lifland
**Date filed:** 12/09/2010 **Date of last filing:** 03/15/2011 **Date of last filing:** 03/15/2011

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed & Entered:* 12/09/2010 | Complaint |
| 2 | *Filed & Entered:* 12/09/2010 | Letter |
| -- | *Filed & Entered:* 12/10/2010 | Add Judge |
| -- | *Filed & Entered:* 12/10/2010 | Auto- docket of credit card |
| 3 | *Filed & Entered:* 03/11/2011 | Summons (60 Day Answer Deadline) |
| 4 | *Filed & Entered:* 03/15/2011 | Affidavit of Service |

# Exhibit C

STATE OF WASHINGTON
DEPARTMENT OF HEALTH

Public Health - Seattle & King County Vital Statistics

# CERTIFIED COPY OF DEATH CERTIFICATE

328

*Health*
## CERTIFICATE OF DEATH

146

LOCAL FILE NUMBER                                                         STATE FILE NUMBER

| 1. NAME | First: JACK | Middle: NMN | Last: POLACK | 2. SEX (M / F): Male | 3. DEATH DATE (Mo., Day, Yr): 01-12-1998 |
|---|---|---|---|---|---|

| 4. AGE LAST BIRTH-DAY (Yrs): 91 Yrs | 5. UNDER 1 YEAR MOS / DAYS | 6. UNDER 1 DAY HOURS / MINS | 7. BIRTHDATE (Mo., Day, Yr): 10-15-1906 | 8. BIRTHPLACE (City, and Foreign Country): Russia | 9. WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes / No): Yes | 10. COUNTY OF DEATH: King |

| 11. CITY, TOWN OR LOCATION OF DEATH: Seattle | 12. PLACE OF DEATH — X BOX FOR PLACE THEN GIVE ADDRESS OR INSTITUTION NAME: Swedish Medical Center | 13. SMOKING IN LAST 15 YEARS? (Yes / No): No |
|---|---|---|

| 14. MARITAL STATUS—Married, Never Married, Widowed, Divorced (Specify): Never Married | 15. SURVIVING SPOUSE (if wife, give maiden name) | 16. SOCIAL SECURITY NO.: REDACTED | 17. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12): 8   College (1-4 or 5+) |

| 18. USUAL OCCUPATION (Give kind of work done during most of working life. DO NOT USE RETIRED): Business Owner | 19. KIND OF BUSINESS OR INDUSTRY: Poultry | 20. Was Decedent of Hispanic origin or descent? (Ancestry) (Specify) Yes or No. If Yes, specify Cuban, Mexican, Puerto Rican, etc. (Yes / No) Specify: NO | 21. RACE (Specify): Caucasian |

| 22. RESIDENCE—NUMBER AND STREET: 7500 Seward Park Ave S | 23. CITY/TOWN, OR LOCATION: Seattle | 24. INSIDE CITY LIMITS? (Yes / No): Yes | 25A. COUNTY: King | 25B. LENGTH OF RES. IN CO.: 70 Yrs | 26. STATE: WA | 27. ZIP CODE: 98118 |

| 28. FATHER'S NAME—FIRST, MIDDLE, LAST: Isaac Polikousky | 29. MOTHER'S NAME—FIRST, MIDDLE, MAIDEN SURNAME: Minda Unknown |
|---|---|

| 30. INFORMANT—NAME: James Polack | 31. MAILING ADDRESS STREET OR RFD NO.: 6521 - 57th Ave S | CITY OR TOWN: Seattle | STATE: WA | ZIP: 98118 |

| 32. BURIAL, CREMATION, REMOVAL, OTHER (Specify): Burial | 33. DATE (Mo., Day, Yr): 01-14-1998 | 34. CEMETERY—NAME: Herzl Memorial Park | 35. LOCATION—CITY/TOWN, STATE: Shoreline, WA |

| 36. FUNERAL DIRECTOR SIGNATURE | 37. NAME OF FACILITY: Seattle Jewish Chapel | 38. ADDRESS OF FACILITY: 5145 S.Morgan, Seattle, WA |

| TO BE COMPLETED ONLY BY CERTIFYING PHYSICIAN | TO BE COMPLETED ONLY BY MEDICAL EXAMINER OR CORONER |
|---|---|
| 39. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND WAS DUE TO THE CAUSE(S) STATED. SIGNATURE AND TITLE | 43. ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION DEATH OCCURRED AT THE TIME, DATE AND PLACE AND WAS DUE TO THE CAUSE(S) STATED. SIGNATURE AND TITLE |
| 40. DATE SIGNED (Mo., Day, Yr): January 14, 1998 | 41. HOUR OF DEATH (24 Hrs): 16:17 | 44. DATE SIGNED (Mo., Day, Yr) | 45. HOUR OF DEATH (24 Hrs) |
| 42. NAME AND TITLE OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | 46. PRONOUNCED DEAD (Mo., Day, Yr) | 47. HOUR PRONOUNCED DEAD (24 Hrs) |

| 48. NAME AND ADDRESS OF CERTIFIER—PHYSICIAN, MEDICAL EXAMINER OR CORONER (Type or Print): W. Hugh Maloney M.D. 515 Minor Ave #300 Seattle 98104 | 49. ME/CORONER FILE NUMBER |
|---|---|

| 50. ENTER THE DISEASES, INJURIES, OR COMPLICATIONS WHICH CAUSED THE DEATH: | | INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | A. Congestive Heart Failure | 3 Years |
| 51. DO NOT ENTER THE MODE OF DYING, SUCH AS CARDIAC OR RESPIRATORY ARREST, SHOCK, OR HEART FAILURE. LIST ONLY ONE CAUSE ON EACH LINE. Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury which initiated events resulting in death) LAST. | DUE TO, OR AS A CONSEQUENCE OF: B. Coronary Artery Disease | 10 Years |
| | DUE TO, OR AS A CONSEQUENCE OF: C. | |
| | DUE TO, OR AS A CONSEQUENCE OF: D. | |

| OTHER SIGNIFICANT CONDITIONS—CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN ABOVE: Renal Failure | 52. AUTOPSY? (Yes / No) | 53. WAS CASE REFERRED TO MEDICAL EXAMINER OR CORONER? (Yes / No) |
|---|---|---|

| 54. ACC, SUICIDE, HOM., UNDET., OR PENDING INVEST. (Specify) | 55. INJURY DATE (Mo., Day, Yr) | 56. HOUR OF INJURY (24 Hrs) | 57. DESCRIBE HOW INJURY OCCURRED: |
|---|---|---|---|

| 58. INJURY AT WORK? (Yes / No) | 59. PLACE OF INJURY—AT HOME, FARM, STREET, FACTORY, OFFICE, BLDG, ETC. (Specify) | 60. LOCATION—STREET OR RFD NO., CITY/TOWN, STATE |
|---|---|---|

| RECORD AMENDMENT (Registrar use only) ITEM | DOCUMENTARY EVIDENCE | REVIEWED BY | DATE | 62. REGISTRAR SIGNATURE | 63. DATE RECEIVED (Mo., Day, Yr): JAN 15 1998 |
|---|---|---|---|---|---|

DOH 01-003 (9/10)

# Affidavit for Correction

**This is a legal Document. Complete in ink and do not alter**

## STATE OFFICE USE ONLY

Health

| State File Number | Fee Number | Initials | Date | Affidavit Number |

**Use this section below for requesting any changes on the record.**

Record Type: ☐ Birth   ☐ Death   ☐ Marriage   ☐ Dissolution

1. Name on record    2. Date of Event    3. Place of Event

4. Father's Full Name    5. Mother's Full Name

### The Record is/was incomplete as follows:

The Record now shows:    The Record should be:

6.                      7.

8.                      9.

10.                     11.

12.                     13.

14. I represent the person as    ☐ Self   ☐ Parent   ☐ Guardian   ☐ Informant   Telephone Number
☐ Funeral Director   ☐ Other (Specify)

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

15. Signature:    16. Date:    17. Address:

All vital records are registered as received. An item may be changed by affidavit only if the record is registered or corrected by court order.
All changes must be established by documentary proof submitted with the affidavit.

**Birth Certificates:**
1. Only a parent, legal guardian if the child is under 18, or the self if he/she is 18 or older may change the birth certificate.
2. The proof(s) must match exactly the asserted true name(s). For example, if the affidavit says the name is Mary Ann Doe, then the proof must show the name to be Mary Ann Doe, Mary A. Doe or M. A. Doe (and cannot prove the name is Mary Ann Doe.)
3. Proof must be five or more years old or have been established within five years of birth.
4. Up to age one, the parent(s) or legal guardian may change the child's last name with an affidavit for correction, provided:
   - This is a one-time only change. Subsequent changes will require a certified copy of a court ordered name change.
   - The new last name may be the mother's maiden name or father's name (if present on the certificate) or any combination of the two
   - After age one, last name changes require a certified copy of a court ordered name change. Minor spelling changes may be made with an affidavit and documentary proof.
5. Parent(s) may change their child's first or middle name by completing and signing an affidavit for correction until their child's 18th birthday.
6. **This affidavit cannot be used to add a father to a birth certificate. (Use the paternity affidavit - form DOH/CHS 001)**

**Death Certificates:**
1. Only the informant, the funeral director or executors/administrators (if evidence confirming such position is presented) may change the non-medical information.
2. The medical information (cause of death) may be changed only by the certifying physician or the coroner/medical examiner.
3. If it is less than sixty days from date of death contact the county health department where the death occurred to make changes.

**Marriage/Dissolution (Divorce) Certificates:**
1. Personal facts (include spelling changes in name, place of birth or residence) may be changed by affidavit (with proof) by the person
2. To change the name or place of marriage or dissolution the officiant or both parties to the dissolution must sign the affidavit.

**CERTIFIED**
Seattle -- King County
Department of Public Health

David Fleming, MD
Director and Health Officer

MAY 03 2011

UU00311898

# Exhibit D

**EXHIBIT A**

**Bernard L. Madoff Investment Securities, LLC**

**Summary of Defendants' Accounts Maintained with BLMIS**

| A/C# | Account Name | Opening Date |
|---|---|---|
| 1FN005 | Ascot Fund Ltd | January 2, 1992 |
| 1A0058 | Ascot Partners LP | January 4, 1993 |
| 1FR070 | Ariel Fund Ltd | August 2, 2000 |
| 1G0321 | Gabriel Capital LP | August 2, 2000 |

**EXHIBIT B**

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers to Defendants**

| A/C# | Account Name | Date | Transfer | Amount |
|------|-------------|------|----------|--------|
| **For the Period from 12/1/95 - 12/11/08** |||||
| 1A0058 | ASCOT PARTNERS LP | 12/28/1995 | WIRE | $ 6,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/30/1996 | WIRE | 1,600,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/7/1997 | WIRE | 9,240,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/10/1997 | WIRE | 1,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 10/8/1997 | WIRE | 2,500,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/30/1997 | WIRE | 6,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/7/1998 | WIRE | 2,500,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/2/2003 | WIRE | 5,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/26/2003 | WIRE | 12,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/23/2005 | WIRE | 25,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/6/2006 | WIRE | 63,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 4/4/2006 | WIRE | 76,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/29/2006 | WIRE | 10,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 12/31/2007 | WIRE | 175,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 7/2/2008 | WIRE | 50,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 10/1/2008 | WIRE | 45,000,000 |
| **SUBTOTAL** | | | | **$ 489,840,000** |
| | | | | |
| 1FN005 | ASCOT FUND LTD | Dec-95 | MONTHLY W/H AMT | $ 74,554 |
| 1FN005 | ASCOT FUND LTD | Jan-96 | MONTHLY W/H AMT | 21,515 |
| 1FN005 | ASCOT FUND LTD | Feb-96 | MONTHLY W/H AMT | 3,786 |
| 1FN005 | ASCOT FUND LTD | Mar-96 | MONTHLY W/H AMT | 69,268 |
| 1FN005 | ASCOT FUND LTD | Apr-96 | MONTHLY W/H AMT | 25,642 |
| 1FN005 | ASCOT FUND LTD | May-96 | MONTHLY W/H AMT | 42,506 |
| 1FN005 | ASCOT FUND LTD | Jun-96 | MONTHLY W/H AMT | 37,099 |
| 1FN005 | ASCOT FUND LTD | Jul-96 | MONTHLY W/H AMT | 40,172 |
| 1FN005 | ASCOT FUND LTD | Aug-96 | MONTHLY W/H AMT | 43,226 |
| 1FN005 | ASCOT FUND LTD | Sep-96 | MONTHLY W/H AMT | 83,522 |
| 1FN005 | ASCOT FUND LTD | Oct-96 | MONTHLY W/H AMT | 23,118 |
| 1FN005 | ASCOT FUND LTD | Nov-96 | MONTHLY W/H AMT | 13,623 |
| 1FN005 | ASCOT FUND LTD | Dec-96 | MONTHLY W/H AMT | 72,736 |
| 1FN005 | ASCOT FUND LTD | 12/30/1996 | WIRE | 1,200,000 |
| 1FN005 | ASCOT FUND LTD | 1/7/1997 | WIRE | 7,240,000 |
| 1FN005 | ASCOT FUND LTD | Jan-97 | MONTHLY W/H AMT | 24,541 |
| 1FN005 | ASCOT FUND LTD | Feb-97 | MONTHLY W/H AMT | 4,608 |
| 1FN005 | ASCOT FUND LTD | Mar-97 | MONTHLY W/H AMT | 71,540 |
| 1FN005 | ASCOT FUND LTD | Apr-97 | MONTHLY W/H AMT | 7,416 |
| 1FN005 | ASCOT FUND LTD | May-97 | MONTHLY W/H AMT | 22,593 |
| 1FN005 | ASCOT FUND LTD | Jun-97 | MONTHLY W/H AMT | 14,962 |
| 1FN005 | ASCOT FUND LTD | Jul-97 | MONTHLY W/H AMT | 20,826 |
| 1FN005 | ASCOT FUND LTD | Aug-97 | MONTHLY W/H AMT | 31,411 |
| 1FN005 | ASCOT FUND LTD | Sep-97 | MONTHLY W/H AMT | 9,545 |
| 1FN005 | ASCOT FUND LTD | Oct-97 | MONTHLY W/H AMT | 50,607 |
| 1FN005 | ASCOT FUND LTD | Nov-97 | MONTHLY W/H AMT | 38,280 |

**EXHIBIT B**

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers to Defendants**

| For the Period from 12/1/95 - 12/11/08 | | | | |
|---|---|---|---|---|
| A/C# | Account Name | Date | Transfer | Amount |
| 1FN005 | ASCOT FUND LTD | Dec-97 | MONTHLY W/H AMT | 10,986 |
| 1FN005 | ASCOT FUND LTD | Jan-98 | MONTHLY W/H AMT | 15,040 |
| 1FN005 | ASCOT FUND LTD | Feb-98 | MONTHLY W/H AMT | 5,266 |
| 1FN005 | ASCOT FUND LTD | Mar-98 | MONTHLY W/H AMT | 83,396 |
| 1FN005 | ASCOT FUND LTD | 4/13/1998 | WIRE | 26,000,000 |
| 1FN005 | ASCOT FUND LTD | Apr-98 | MONTHLY W/H AMT | 6,878 |
| 1FN005 | ASCOT FUND LTD | May-98 | MONTHLY W/H AMT | 42,803 |
| 1FN005 | ASCOT FUND LTD | Jun-98 | MONTHLY W/H AMT | 64,524 |
| 1FN005 | ASCOT FUND LTD | Jul-98 | MONTHLY W/H AMT | 41,122 |
| 1FN005 | ASCOT FUND LTD | Aug-98 | MONTHLY W/H AMT | 34,451 |
| 1FN005 | ASCOT FUND LTD | Sep-98 | MONTHLY W/H AMT | 1,858 |
| 1FN005 | ASCOT FUND LTD | Oct-98 | MONTHLY W/H AMT | 6 |
| 1FN005 | ASCOT FUND LTD | Nov-98 | MONTHLY W/H AMT | 8 |
| 1FN005 | ASCOT FUND LTD | Dec-98 | MONTHLY W/H AMT | 11,635 |
| 1FN005 | ASCOT FUND LTD | Jan-99 | MONTHLY W/H AMT | 13,325 |
| 1FN005 | ASCOT FUND LTD | Feb-99 | MONTHLY W/H AMT | 12,275 |
| 1FN005 | ASCOT FUND LTD | Mar-99 | MONTHLY W/H AMT | 53,707 |
| 1FN005 | ASCOT FUND LTD | Apr-99 | MONTHLY W/H AMT | 21,295 |
| 1FN005 | ASCOT FUND LTD | May-99 | MONTHLY W/H AMT | 2,542 |
| 1FN005 | ASCOT FUND LTD | Jun-99 | MONTHLY W/H AMT | 54,057 |
| 1FN005 | ASCOT FUND LTD | Jul-99 | MONTHLY W/H AMT | 14,070 |
| 1FN005 | ASCOT FUND LTD | Aug-99 | MONTHLY W/H AMT | 21,576 |
| 1FN005 | ASCOT FUND LTD | Sep-99 | MONTHLY W/H AMT | 38,318 |
| 1FN005 | ASCOT FUND LTD | Oct-99 | MONTHLY W/H AMT | 55,100 |
| 1FN005 | ASCOT FUND LTD | Nov-99 | MONTHLY W/H AMT | 38,374 |
| 1FN005 | ASCOT FUND LTD | Dec-99 | MONTHLY W/H AMT | 26,996 |
| 1FN005 | ASCOT FUND LTD | Jan-00 | MONTHLY W/H AMT | 4 |
| 1FN005 | ASCOT FUND LTD | Feb-00 | MONTHLY W/H AMT | 20,935 |
| 1FN005 | ASCOT FUND LTD | Mar-00 | MONTHLY W/H AMT | 73,400 |
| 1FN005 | ASCOT FUND LTD | Apr-00 | MONTHLY W/H AMT | 21,165 |
| 1FN005 | ASCOT FUND LTD | May-00 | MONTHLY W/H AMT | 8 |
| 1FN005 | ASCOT FUND LTD | Jun-00 | MONTHLY W/H AMT | 46,602 |
| 1FN005 | ASCOT FUND LTD | Jul-00 | MONTHLY W/H AMT | 1,440 |
| 1FN005 | ASCOT FUND LTD | Aug-00 | MONTHLY W/H AMT | 16,671 |
| 1FN005 | ASCOT FUND LTD | Sep-00 | MONTHLY W/H AMT | 27,241 |
| 1FN005 | ASCOT FUND LTD | Oct-00 | MONTHLY W/H AMT | 37,034 |
| 1FN005 | ASCOT FUND LTD | Nov-00 | MONTHLY W/H AMT | 45,653 |
| 1FN005 | ASCOT FUND LTD | Dec-00 | MONTHLY W/H AMT | 1,876 |
| 1FN005 | ASCOT FUND LTD | Jan-01 | MONTHLY W/H AMT | 2,189 |
| 1FN005 | ASCOT FUND LTD | Feb-01 | MONTHLY W/H AMT | 32,506 |
| 1FN005 | ASCOT FUND LTD | Mar-01 | MONTHLY W/H AMT | 70,751 |
| 1FN005 | ASCOT FUND LTD | Apr-01 | MONTHLY W/H AMT | 29,943 |
| 1FN005 | ASCOT FUND LTD | May-01 | MONTHLY W/H AMT | 43,865 |
| 1FN005 | ASCOT FUND LTD | Jun-01 | MONTHLY W/H AMT | 132 |
| 1FN005 | ASCOT FUND LTD | Jul-01 | MONTHLY W/H AMT | 72,549 |

**EXHIBIT B**

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers to Defendants**

| A/C# | Account Name | Date | Transfer | Amount |
|---|---|---|---|---|
| For the Period from 12/1/95 - 12/11/08 | | | | |
| 1FN005 | ASCOT FUND LTD | Aug-01 | MONTHLY W/H AMT | 54,654 |
| 1FN005 | ASCOT FUND LTD | Sep-01 | MONTHLY W/H AMT | 35,556 |
| 1FN005 | ASCOT FUND LTD | Oct-01 | MONTHLY W/H AMT | 122,115 |
| 1FN005 | ASCOT FUND LTD | Nov-01 | MONTHLY W/H AMT | 95,784 |
| 1FN005 | ASCOT FUND LTD | Dec-01 | MONTHLY W/H AMT | 101,023 |
| 1FN005 | ASCOT FUND LTD | Jan-02 | MONTHLY W/H AMT | 6,676 |
| 1FN005 | ASCOT FUND LTD | Feb-02 | MONTHLY W/H AMT | 77,323 |
| 1FN005 | ASCOT FUND LTD | Mar-02 | MONTHLY W/H AMT | 126,742 |
| 1FN005 | ASCOT FUND LTD | Apr-02 | MONTHLY W/H AMT | 143,647 |
| 1FN005 | ASCOT FUND LTD | May-02 | MONTHLY W/H AMT | 102,834 |
| 1FN005 | ASCOT FUND LTD | Jun-02 | MONTHLY W/H AMT | 126,093 |
| 1FN005 | ASCOT FUND LTD | Jul-02 | MONTHLY W/H AMT | 23,679 |
| 1FN005 | ASCOT FUND LTD | Aug-02 | MONTHLY W/H AMT | 57,797 |
| 1FN005 | ASCOT FUND LTD | Sep-02 | MONTHLY W/H AMT | 181,542 |
| 1FN005 | ASCOT FUND LTD | Oct-02 | MONTHLY W/H AMT | 16 |
| 1FN005 | ASCOT FUND LTD | Nov-02 | MONTHLY W/H AMT | 39,302 |
| 1FN005 | ASCOT FUND LTD | Dec-02 | MONTHLY W/H AMT | 98,042 |
| 1FN005 | ASCOT FUND LTD | Jan-03 | MONTHLY W/H AMT | 0 |
| **SUBTOTAL** | | | | **$ 37,893,497** |
| | | | | |
| 1FR070 | ARIEL FUND LTD | Aug-00 | MONTHLY W/H AMT | $ 11 |
| 1FR070 | ARIEL FUND LTD | Sep-00 | MONTHLY W/H AMT | 16 |
| 1FR070 | ARIEL FUND LTD | Oct-00 | MONTHLY W/H AMT | 5,041 |
| 1FR070 | ARIEL FUND LTD | Nov-00 | MONTHLY W/H AMT | 6,198 |
| 1FR070 | ARIEL FUND LTD | Dec-00 | MONTHLY W/H AMT | 275 |
| 1FR070 | ARIEL FUND LTD | Jan-01 | MONTHLY W/H AMT | 329 |
| 1FR070 | ARIEL FUND LTD | Feb-01 | MONTHLY W/H AMT | 6,852 |
| 1FR070 | ARIEL FUND LTD | Mar-01 | MONTHLY W/H AMT | 15,957 |
| 1FR070 | ARIEL FUND LTD | Apr-01 | MONTHLY W/H AMT | 6,429 |
| 1FR070 | ARIEL FUND LTD | May-01 | MONTHLY W/H AMT | 9,391 |
| 1FR070 | ARIEL FUND LTD | Jun-01 | MONTHLY W/H AMT | 115 |
| 1FR070 | ARIEL FUND LTD | Jul-01 | MONTHLY W/H AMT | 17,778 |
| 1FR070 | ARIEL FUND LTD | Aug-01 | MONTHLY W/H AMT | 13,429 |
| 1FR070 | ARIEL FUND LTD | Sep-01 | MONTHLY W/H AMT | 8,581 |
| 1FR070 | ARIEL FUND LTD | Oct-01 | MONTHLY W/H AMT | 29,585 |
| 1FR070 | ARIEL FUND LTD | Nov-01 | MONTHLY W/H AMT | 23,123 |
| 1FR070 | ARIEL FUND LTD | Dec-01 | MONTHLY W/H AMT | 24,381 |
| 1FR070 | ARIEL FUND LTD | Jan-02 | MONTHLY W/H AMT | 1,781 |
| 1FR070 | ARIEL FUND LTD | Feb-02 | MONTHLY W/H AMT | 20,554 |
| 1FR070 | ARIEL FUND LTD | Mar-02 | MONTHLY W/H AMT | 33,538 |
| 1FR070 | ARIEL FUND LTD | Apr-02 | MONTHLY W/H AMT | 37,979 |
| 1FR070 | ARIEL FUND LTD | May-02 | MONTHLY W/H AMT | 27,190 |
| 1FR070 | ARIEL FUND LTD | Jun-02 | MONTHLY W/H AMT | 32,065 |
| 1FR070 | ARIEL FUND LTD | Jul-02 | MONTHLY W/H AMT | 5,992 |

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers to Defendants**

| A/C# | Account Name | Date | Transfer | Amount |
|------|-------------|------|----------|--------|
| | For the Period from 12/1/95 - 12/11/08 | | | |
| 1FR070 | ARIEL FUND LTD | Aug-02 | MONTHLY W/H AMT | 14,055 |
| 1FR070 | ARIEL FUND LTD | Sep-02 | MONTHLY W/H AMT | 43,484 |
| 1FR070 | ARIEL FUND LTD | Oct-02 | MONTHLY W/H AMT | 25 |
| 1FR070 | ARIEL FUND LTD | Nov-02 | MONTHLY W/H AMT | 9,049 |
| 1FR070 | ARIEL FUND LTD | Dec-02 | MONTHLY W/H AMT | 22,600 |
| 1FR070 | ARIEL FUND LTD | Jan-03 | MONTHLY W/H AMT | 1,187 |
| 1FR070 | ARIEL FUND LTD | Feb-03 | MONTHLY W/H AMT | 34,797 |
| 1FR070 | ARIEL FUND LTD | Mar-03 | MONTHLY W/H AMT | 41,371 |
| 1FR070 | ARIEL FUND LTD | Apr-03 | MONTHLY W/H AMT | 6,221 |
| 1FR070 | ARIEL FUND LTD | May-03 | MONTHLY W/H AMT | 922 |
| 1FR070 | ARIEL FUND LTD | Jun-03 | MONTHLY W/H AMT | 45,523 |
| 1FR070 | ARIEL FUND LTD | Jul-03 | MONTHLY W/H AMT | 29,798 |
| 1FR070 | ARIEL FUND LTD | Aug-03 | MONTHLY W/H AMT | 36,358 |
| 1FR070 | ARIEL FUND LTD | Sep-03 | MONTHLY W/H AMT | 32,370 |
| 1FR070 | ARIEL FUND LTD | Oct-03 | MONTHLY W/H AMT | 17,344 |
| 1FR070 | ARIEL FUND LTD | Nov-03 | MONTHLY W/H AMT | 39,773 |
| 1FR070 | ARIEL FUND LTD | Dec-03 | MONTHLY W/H AMT | 39,768 |
| 1FR070 | ARIEL FUND LTD | Jan-04 | MONTHLY W/H AMT | 4,785 |
| 1FR070 | ARIEL FUND LTD | Feb-04 | MONTHLY W/H AMT | 20,309 |
| 1FR070 | ARIEL FUND LTD | Mar-04 | MONTHLY W/H AMT | 31,787 |
| 1FR070 | ARIEL FUND LTD | Apr-04 | MONTHLY W/H AMT | 2,053 |
| 1FR070 | ARIEL FUND LTD | May-04 | MONTHLY W/H AMT | 24,412 |
| 1FR070 | ARIEL FUND LTD | Jun-04 | MONTHLY W/H AMT | 38,590 |
| 1FR070 | ARIEL FUND LTD | Jul-04 | MONTHLY W/H AMT | 13,383 |
| 1FR070 | ARIEL FUND LTD | Aug-04 | MONTHLY W/H AMT | 61 |
| 1FR070 | ARIEL FUND LTD | Sep-04 | MONTHLY W/H AMT | 28,367 |
| 1FR070 | ARIEL FUND LTD | Oct-04 | MONTHLY W/H AMT | 22,115 |
| 1FR070 | ARIEL FUND LTD | Nov-04 | MONTHLY W/H AMT | 570 |
| 1FR070 | ARIEL FUND LTD | Dec-04 | MONTHLY W/H AMT | 25,717 |
| 1FR070 | ARIEL FUND LTD | Jan-05 | MONTHLY W/H AMT | 915 |
| 1FR070 | ARIEL FUND LTD | Feb-05 | MONTHLY W/H AMT | 16,042 |
| 1FR070 | ARIEL FUND LTD | Mar-05 | MONTHLY W/H AMT | 69,667 |
| 1FR070 | ARIEL FUND LTD | Apr-05 | MONTHLY W/H AMT | 33,109 |
| 1FR070 | ARIEL FUND LTD | May-05 | MONTHLY W/H AMT | 43 |
| 1FR070 | ARIEL FUND LTD | Jun-05 | MONTHLY W/H AMT | 16,017 |
| 1FR070 | ARIEL FUND LTD | Jul-05 | MONTHLY W/H AMT | 29,623 |
| 1FR070 | ARIEL FUND LTD | Sep-05 | MONTHLY W/H AMT | 1,753 |
| 1FR070 | ARIEL FUND LTD | Oct-05 | MONTHLY W/H AMT | 27,842 |
| 1FR070 | ARIEL FUND LTD | Nov-05 | MONTHLY W/H AMT | 25,532 |
| 1FR070 | ARIEL FUND LTD | Dec-05 | MONTHLY W/H AMT | 78,651 |
| 1FR070 | ARIEL FUND LTD | Jan-06 | MONTHLY W/H AMT | 18,505 |
| 1FR070 | ARIEL FUND LTD | Feb-06 | MONTHLY W/H AMT | 39,535 |
| 1FR070 | ARIEL FUND LTD | Mar-06 | MONTHLY W/H AMT | 113,685 |
| 1FR070 | ARIEL FUND LTD | Apr-06 | MONTHLY W/H AMT | 58,681 |
| 1FR070 | ARIEL FUND LTD | May-06 | MONTHLY W/H AMT | 73,171 |

**EXHIBIT B**

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers to Defendants**

| For the Period from 12/1/95 - 12/11/08 | | | | |
|---|---|---|---|---|
| A/C# | Account Name | Date | Transfer | Amount |
| 1FR070 | ARIEL FUND LTD | Jun-06 | MONTHLY W/H AMT | 111,315 |
| 1FR070 | ARIEL FUND LTD | Jul-06 | MONTHLY W/H AMT | 39,474 |
| 1FR070 | ARIEL FUND LTD | Aug-06 | MONTHLY W/H AMT | 34,144 |
| 1FR070 | ARIEL FUND LTD | Sep-06 | MONTHLY W/H AMT | 121,270 |
| 1FR070 | ARIEL FUND LTD | Oct-06 | MONTHLY W/H AMT | 50,855 |
| 1FR070 | ARIEL FUND LTD | Nov-06 | MONTHLY W/H AMT | 28,977 |
| 1FR070 | ARIEL FUND LTD | Dec-06 | MONTHLY W/H AMT | 179,390 |
| 1FR070 | ARIEL FUND LTD | Jan-07 | MONTHLY W/H AMT | 56,400 |
| 1FR070 | ARIEL FUND LTD | Feb-07 | MONTHLY W/H AMT | 21 |
| 1FR070 | ARIEL FUND LTD | Mar-07 | MONTHLY W/H AMT | 78,287 |
| 1FR070 | ARIEL FUND LTD | Apr-07 | MONTHLY W/H AMT | 74,535 |
| 1FR070 | ARIEL FUND LTD | May-07 | MONTHLY W/H AMT | 48,815 |
| 1FR070 | ARIEL FUND LTD | Jun-07 | MONTHLY W/H AMT | 205,980 |
| 1FR070 | ARIEL FUND LTD | Jul-07 | MONTHLY W/H AMT | 34,487 |
| 1FR070 | ARIEL FUND LTD | Aug-07 | MONTHLY W/H AMT | 12,683 |
| 1FR070 | ARIEL FUND LTD | Sep-07 | MONTHLY W/H AMT | 45,275 |
| 1FR070 | ARIEL FUND LTD | Oct-07 | MONTHLY W/H AMT | 28,361 |
| 1FR070 | ARIEL FUND LTD | Nov-07 | MONTHLY W/H AMT | 9,370 |
| 1FR070 | ARIEL FUND LTD | Dec-07 | MONTHLY W/H AMT | 36,240 |
| 1FR070 | ARIEL FUND LTD | Jan-08 | MONTHLY W/H AMT | 4,119 |
| 1FR070 | ARIEL FUND LTD | Feb-08 | MONTHLY W/H AMT | 11,381 |
| 1FR070 | ARIEL FUND LTD | Mar-08 | MONTHLY W/H AMT | 123,989 |
| 1FR070 | ARIEL FUND LTD | Apr-08 | MONTHLY W/H AMT | 48,738 |
| 1FR070 | ARIEL FUND LTD | May-08 | MONTHLY W/H AMT | 46,423 |
| 1FR070 | ARIEL FUND LTD | Jun-08 | MONTHLY W/H AMT | 126,053 |
| 1FR070 | ARIEL FUND LTD | 7/7/2008 | WIRE | 16,200,000 |
| 1FR070 | ARIEL FUND LTD | Jul-08 | MONTHLY W/H AMT | 42 |
| 1FR070 | ARIEL FUND LTD | Aug-08 | MONTHLY W/H AMT | 15,648 |
| 1FR070 | ARIEL FUND LTD | Sep-08 | MONTHLY W/H AMT | 170,850 |
| 1FR070 | ARIEL FUND LTD | Oct-08 | MONTHLY W/H AMT | 19,413 |
| 1FR070 | ARIEL FUND LTD | Nov-08 | MONTHLY W/H AMT | 3 |
| | **SUBTOTAL** | | | $ 19,518,697 |
| | | | | |
| 1G0321 | GABRIEL CAPITAL LP | 7/7/2008 | WIRE | $ 17,400,000 |
| | **SUBTOTAL** | | | $ 17,400,000 |
| | | | | |
| | **GRAND TOTAL** | | | $ 564,652,194 |

EXHIBIT C

**Bernard L. Madoff Investment Securities, LLC**
**Summary of Cash Transfers between Defendants**

| A/C# | Account Name | Date | Transferee Account | | Amount |
|------|--------------|------|--------------------|--|--------|
| **For the Period from 12/1/95 – 12/11/08** | | | | | |
| 1FR070 | ARIEL FUND LTD | 7/25/2001 | ASCOT PARTNERS LP | $ | 1,600,000 |
| 1FR070 | ARIEL FUND LTD | 7/14/2004 | ASCOT PARTNERS LP | | 19,400,000 |
| 1FR070 | ARIEL FUND LTD | 1/5/2006 | ASCOT PARTNERS LP | | 38,000,000 |
| 1FR070 | ARIEL FUND LTD | 1/4/2007 | ASCOT PARTNERS LP | | 18,500,000 |
| **SUBTOTAL** | | | | $ | 77,500,000 |

| A/C# | Account Name | Date | Transferee Account | | Amount |
|------|--------------|------|--------------------|--|--------|
| **For the Period from 12/1/95 – 12/11/08** | | | | | |
| 1FR070 | ARIEL FUND LTD | 10/15/2001 | ASCOT FUND LTD | $ | 7,100,000 |
| **SUBTOTAL** | | | | $ | 7,100,000 |

| A/C# | Account Name | Date | Transferee Account | | Amount |
|------|--------------|------|--------------------|--|--------|
| **For the Period from 12/1/95 – 12/11/08** | | | | | |
| 1FR070 | ARIEL FUND LTD | 1/3/2008 | GABRIEL CAPITAL LP | $ | 38,000,000 |
| **SUBTOTAL** | | | | $ | 38,000,000 |

| A/C# | Account Name | Date | Transferee Account | | Amount |
|------|--------------|------|--------------------|--|--------|
| **For the Period from 12/1/95 – 12/11/08** | | | | | |
| 1A0058 | ASCOT PARTNERS LP | 1/23/2002 | ARIEL FUND LTD | $ | 800,000 |
| 1A0058 | ASCOT PARTNERS LP | 7/15/2002 | ARIEL FUND LTD | | 6,700,000 |
| 1A0058 | ASCOT PARTNERS LP | 4/15/2003 | ARIEL FUND LTD | | 11,300,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/8/2003 | ARIEL FUND LTD | | 6,500,000 |
| 1A0058 | ASCOT PARTNERS LP | 7/3/2003 | ARIEL FUND LTD | | 8,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 10/7/2003 | ARIEL FUND LTD | | 12,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/5/2004 | ARIEL FUND LTD | | 14,200,000 |
| 1A0058 | ASCOT PARTNERS LP | 8/2/2004 | ARIEL FUND LTD | | 6,000,000 |
| **SUBTOTAL** | | | | $ | 65,500,000 |

| A/C# | Account Name | Date | Transferee Account | | Amount |
|------|--------------|------|--------------------|--|--------|
| **For the Period from 12/1/95 – 12/11/08** | | | | | |
| 1A0058 | ASCOT PARTNERS LP | 1/23/2002 | GABRIEL CAPITAL LP | $ | 3,700,000 |
| 1A0058 | ASCOT PARTNERS LP | 7/15/2002 | GABRIEL CAPITAL LP | | 200,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/8/2003 | GABRIEL CAPITAL LP | | 19,500,000 |

| For the Period from 12/1/95 – 12/11/08 | | | | | |
|---|---|---|---|---|---|
| A/C# | Account Name | Date | Transferor Account | | Amount |
| 1A0058 | ASCOT PARTNERS LP | 4/15/2003 | GABRIEL CAPITAL LP | | 10,700,000 |
| 1A0058 | ASCOT PARTNERS LP | 7/3/2003 | GABRIEL CAPITAL LP | | 13,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 10/7/2003 | GABRIEL CAPITAL LP | | 6,000,000 |
| 1A0058 | ASCOT PARTNERS LP | 1/5/2004 | GABRIEL CAPITAL LP | | 5,800,000 |
| 1A0058 | ASCOT PARTNERS LP | 8/2/2004 | GABRIEL CAPITAL LP | | 5,000,000 |
| **SUBTOTAL** | | | | $ | 63,900,000 |

| For the Period from 12/1/95 – 12/11/08 | | | | | |
|---|---|---|---|---|---|
| A/C# | Account Name | Date | Transferor Account | | Amount |
| 1FN005 | ASCOT FUND LTD | 7/15/2002 | GABRIEL CAPITAL LP | $ | 400,000 |
| **SUBTOTAL** | | | | $ | 400,000 |

| For the Period from 12/1/95 – 12/11/08 | | | | | |
|---|---|---|---|---|---|
| A/C# | Account Name | Date | Transferor Account | | Amount |
| 1G0321 | GABRIEL CAPITAL LP | 10/8/2002 | ARIEL FUND LTD | $ | 500,000 |
| 1G0321 | GABRIEL CAPITAL LP | 7/14/2005 | ARIEL FUND LTD | | 8,400,000 |
| **SUBTOTAL** | | | | $ | 8,900,000 |

| For the Period from 12/1/95 – 12/11/08 | | | | | |
|---|---|---|---|---|---|
| A/C# | Account Name | Date | Transferor Account | | Amount |
| 1G0321 | GABRIEL CAPITAL LP | 7/25/2001 | ASCOT PARTNERS LP | $ | 1,400,000 |
| 1G0321 | GABRIEL CAPITAL LP | 10/15/2001 | ASCOT PARTNERS LP | | 2,600,000 |
| 1G0321 | GABRIEL CAPITAL LP | 12/31/2002 | ASCOT PARTNERS LP | | 4,400,000 |
| 1G0321 | GABRIEL CAPITAL LP | 7/14/2004 | ASCOT PARTNERS LP | | 20,600,000 |
| 1G0321 | GABRIEL CAPITAL LP | 1/5/2006 | ASCOT PARTNERS LP | | 59,000,000 |
| 1G0321 | GABRIEL CAPITAL LP | 7/7/2006 | ASCOT PARTNERS LP | | 26,000,000 |
| 1G0321 | GABRIEL CAPITAL LP | 1/4/2007 | ASCOT PARTNERS LP | | 26,500,000 |
| **SUBTOTAL** | | | | $ | 140,500,000 |

| For the Period from 12/1/95 – 12/11/08 | | | | | |
|---|---|---|---|---|---|
| A/C# | Account Name | Date | Transferor Account | | Amount |
| 1G0321 | GABRIEL CAPITAL LP | 10/15/2001 | ASCOT FUND LTD | $ | 7,300,000 |
| **SUBTOTAL** | | | | $ | 7,300,000 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SECURITIES INVESTOR PROTECTION           :
CORPORATION,                             :   Adv. Pro. No. 08-01789 (BRL)
                                         :
          Plaintiff-Applicant,           :   SIPA LIQUIDATION
v.                                       :
                                         :   (Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT             :
SECURITIES, LLC,                         :
                                         :
          Defendant.                     :   **AFFIDAVIT OF SERVICE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:                                   :
                                         :
BERNARD L. MADOFF,                       :
                                         :
          Debtor.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IRVING H. PICARD, Trustee for the Liquidation   :
of Bernard L. Madoff Investment Securities LLC, :
                                         :   Adv. Pro. No. 10-05371 (BRL)
          Plaintiff,                     :
v.                                       :
                                         :
L.H. RICH COMPANIES, N.R. INVESTM ENT    :
ASSOCIATES, M.R. INVESTMENT              :
ASSOCIATES, JACK POLACK, and JAMES       :
POLACK,                                  :
          Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK          )

COUNTY OF NEW YORK         ) ss.:

JENNIFER SY LOPEZ, being duly sworn, deposes and says:

I am employed by the firm of GARVEY SCHUBERT BARER, attorneys for Defendants L.H. Rich Companies, N.R. Investment Associates, M.R. Investment Associates, Jack Polack, and James Polack; I am not a party to the above action; I am over 18 years of age and reside at Staten Island, New York. On May 10, 2011, I served the within **NOTICE OF MOTION, STERN AFFIDAVIT AND GOODMAN AFFIDAVIT (and Exhibits thereto) IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)** via EMAIL TRANSMISSION and FEDERAL EXPRESS at the following address:

Marc E. Hirschfield, Richard J. Bernard,
Geraldine E. Ponto, David J. Sheehan, Marc Skapof, Esqs.
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
mhirschfield@bakerlaw.com; dsheehan@bakerlaw.com; rbernard@bakerlaw.com;
gponto@bakerlaw.com; mskapof@bakerlaw.com

_____
JENNIFER SY LOPEZ

Sworn to before me this
____ day of May 2011

_____
Notary Public

**Michael Kalmus**
**Nortary Public, State of New York**
**No.02KA6171197**
**Qualifies in New York County**
**Commission Expires July 23, 2011**