**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. Nos. listed on Exhibit A to the Trustee's Motion |
| Plaintiff, | |
| v. | |
| DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT A TO THE TRUSTEE'S MOTION, | |
| Defendants. | |

**GOOD FAITH DEFENDANTS' CONSOLIDATED OPPOSITION TO THE TRUSTEE'S MOTION TO ESTABLISH AN OMNIBUS PROCEEDING TO DETERMINE THE EXTENT, DURATION AND SCOPE OF THE ALLEGED PONZI SCHEME AT BLMIS**

**BAKER & MCKENZIE LLP**

Richard A. Kirby
Graham R. Cronogue
815 Connecticut Avenue, N.W.
Washington, District of Columbia  20006
Tel:  (202) 452-7020
Email:  richard.kirby@bakermckenzie.com

*Attorneys for Defendants Listed on Exhibit A*
*Additional counsel listed on the signature page*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.    THE OMNIBUS PROCEEDING PROPOSED BY THE TRUSTEE IS
      WHOLLY IMPROPER AS THIS COURT DOES NOT HAVE THE
      AUTHORITY TO MAKE ULTIMATE FINDINGS OF FACT ........................... 2

      A.    The Trustee's Proposed Procedure Violates the Defendants' Seventh
            Amendment Right to a Jury Trial ............................................... 3

      B.    The Trustee's Proposed Procedure Improperly Shifts the Burden of
            Proof to the Defendants .............................................................. 5

II.   ANY OMNIBUS PROCEEDING SHOULD BE STAYED UNTIL
      CERTAIN AFFIRMATIVE DEFENSES RAISED BY DEFENDANTS ARE
      FULLY AND FINALLY ADJUDICATED. ...................................................... 10

III.  PROCEDURAL OBJECTIONS ....................................................................... 12

      A.    There is No Authority to Implement a Procedure That Would Bind
            All Defendants to Speak Through a Single Spokesperson-Liaison
            Counsel, or to Prevent Defendants From Seeking Individualized
            Adjudications on Timely Motions to Opt Out of Any Consolidated
            Proceedings Where an Appropriate Showing is Made ........................... 12

            1.    The opt-in procedure proposed by the Trustee substantively
                  affects Defendants' rights to defend themselves in their
                  individual actions ..................................................... 13

            2.    The Court must allow defendants to file timely opt-out
                  elections to pursue individual actions on the Ponzi scheme
                  issue separately ...................................................... 15

            3.    Appointment of Liaison Counsel with the power to speak for
                  and bind all Defendants is inappropriate, violating their
                  individual rights in their individual actions – even if
                  consolidated – and where counsel to Defendants can
                  coordinate the handling of any proposed omnibus proceedings ... 16

i

B.      The Trustee Should Be Required to Establish a Database of the
        Relevant Records for the Proceeding, that Is Easily Accessible to the
        Defendants, Fully Searchable and Not Subject to Any Ability by the
        Trustee's to Trace Defendants' Searches and Selections of Documents
        for Review ............................................................................................... 18

C.      All Case Management Schedules in Affected Adversary Proceedings
        Should Be Stayed Until the Matters to Be Decided in the Omnibus
        Proceeding are Determined, and Because the Omnibus Proceeding Is
        Designed to Address Issue Underpinning the Trustee's Case in Chief,
        No Discovery Should Be Permitted by the Trustee of the Defendants
        Joined in the Omnibus Proceedings ........................................................... 19

IV.     RESERVATION OF RIGHTS ............................................................................. 20

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allred v. Hauser (In re Jundt)*,
No. ADV 13-1011, 2014 Bankr. LEXIS 2729, 2014 WL 2742868 (Bankr. D.S.D. June 17, 2014) ...............................................................................................................................6

*Augustin v. Jablonsky*,
99-CV-3126 (DRH)(ARL), 2001 U.S. Dist. LEXIS 10276 (E.D.N.Y. Mar. 8, 2001) ...........17

*Bear, Stearns Sec. Corp. v. Gredd*,
275 B.R. 190 (S.D.N.Y. 2002) ...............................................................................................6

*Brown v. Third Nat'l Bank (In re Sherman)*,
67 F.3d 1348 (8th Cir. 1995) ................................................................................................6

*Buchwald v. Renco Grp.*,
539 B.R. 31 (S.D.N.Y. 2015) .................................................................................................5

*County of Suffolk v. Long Island Lighting Co.*,
907 F.2d 1295 (2d Cir. 1990) .............................................................................................16

*Diana Melton Tr. v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*,
15 Civ. 1151 (PAE), 2016 U.S. Dist. LEXIS 4655, 2016 WL183492 (S.D.N.Y. Jan. 14, 2016) ....................................................................................................................................7

*Doeling v. O'Neill (In re O'Neill)*,
550 B.R. 482 (Bankr. D.N.D. 2016) ......................................................................................5

*Exec. Bens. Ins. Agency v. Arkison*,
134 S. Ct. 2165 (2014) ..........................................................................................................3

*Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*,
702 F.3d 553 (9th Cir. 2012) .................................................................................................3

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973)...........................................................................................14, 17

*Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*,
130 B.R. 170 (Bankr. D. Vt. 1991) .......................................................................................6

*Granfinanciera S.A. v. Nordberg*,
109 S. Ct. 2782 (1989)...........................................................................................................3

*Grochocinski v. Knippen (In re Knippen)*,
    355 B.R. 710 (Bankr. N.D. Ill. 2006) ......................................................................6

*Hall v. Hall*,
    No. 16-1150, 584 U.S. ____ (slip op., Mar. 27, 2018) .......................................14, 17

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)..............................................................................14

*In re Joint E. & S. Dist. Asbestos Litig.*,
    78 F.3d 764 (2d Cir. 1996)..................................................................................15

*Korea Trade Ins. Corp v. Neema Clothing, Ltd.*,
    11 CV 8980, 2015 U.S. Dist. LEXIS 9975 (S.D.N.Y. Jan. 28, 2015) .......................5

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    842 F. Supp. 2d 587 (S.D.N.Y. 2012) .............................................................14, 17

*Martens v. Smith, Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................16

*McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*,
    559 B.R. 41 (Bankr. E.D.N.Y. 2016) .....................................................................6

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
    394 B.R. 646 (Bankr. E.D.N.Y. 2008)...................................................................6

*Messer v. Magee (In re FKF3, LLC)*,
    Case No. 13 CV 3601, 2016 U.S. Dist. LEXIS 117258 (S.D.N.Y. Aug. 30, 2016)..................4

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993).................................................................................4

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014)................................................................................7

*Primavera Familienstiftung v. Askin*,
    173 F.R.D. 115 (S.D.N.Y. 1997) ..................................................................15, 16

*Debruyne v. Nat'l Semiconductor Corp. (In re Repetitive Stress Injury Litig.)*,
    11 F.3d 368 (2d Cir. 1993)................................................................................18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) ........................................................7

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Lowrey)*,
    Adv. Pro. Nos. 10-04387, 10-04488, 10-04350, 10-05110, 2018 Bankr. LEXIS 828 (Bankr.
    S.D.N.Y. Mar. 22, 2018)...................................................................................11

*Springel v. Prosser (In re Innovative Commc'n Corp.)*,
    No. 07-30012, 2011 Bankr. LEXIS 3040 (Bankr. D.V.I. Aug. 5, 2011)..............................5, 6

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011)..................................................................................................3, 4

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    567 B.R. 55 (Bankr. S.D.N.Y 2017)............................................................................6

*Wellness Int'l Network, Ltd. v. Sharif*,
    135 S. Ct 1932 (2015)..................................................................................................4

## STATUTES AND RULES

11 U.S.C. § 548(a)(1).......................................................................................................5, 6, 11

Fed. R. Bankr. P. 1001.........................................................................................................19

Fed. R. Civ. P. 23(b)......................................................................................................15, 16

Fed. R. Civ. P. 23(c)(2)(B)...................................................................................................15

Fed. R. Civ. P. 42(b)............................................................................................................12

## SECONDARY AUTHORITIES

5 MOORE'S FEDERAL PRACTICE – CIVIL § 23.42[6][c] (2018)......................................................16

8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.10[5][d] (2018)....................................................14

8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.13[6][a] (2018)....................................................18

8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.13[6][b] (2018)....................................................17

The undersigned defendants in the avoidance actions identified on Exhibit A hereto ("Defendants"), through their counsel, respectfully submit this opposition to the Trustee's Motion for an Order Establishing Omnibus Proceeding for the Purpose of Determining the Existence, Duration, and Scope of the Ponzi Scheme at BLMIS (the "Motion", Dkt. No. 17284 in the consolidated proceeding).

## PRELIMINARY STATEMENT

The Trustee's request for judicial fact-finding on what he terms the "Ponzi Issue" is fundamentally flawed on multiple levels.  Most basically, it asks this Court to improperly invade the province of the jury and to determine disputed factual issues.  This clearly violates the defendants' Seventh Amendment right to a trial of factual issues by jury, a right that most defendants have preserved.  But the errors in this fact-finding process extend beyond that threshold matter.  Indeed, the Trustee's motion seeks to shift his statutory burden of proof to sustain his avoidance claims on to defendants by requiring them to controvert and disprove his thesis that Madoff Securities operated a Ponzi scheme, even though it is well-established that the Trustee alone bears the evidentiary burden of proof for each element of his avoidance claims.

Further, this improvident process could be rendered moot in the near future, making it a further waste of this Court's resources and a further burden on the innocent defendants.  The legal significance of a defense to actual fraudulent transfers by Madoff Securities is soon to be litigated and decided by superior courts on stipulated facts in the *South Ferry* and *Lowrey* cases; only those courts have the authority to enter a final judgment on the merits.  A ruling in defendants' favor and against the Trustee would render this entire fact-finding process moot under principles of collateral estoppel.  To conserve judicial resources and to protect innocent defendants from being further burdened by the Trustee's choices and lexicon, this Court—at a

minimum—should stay consideration of these issues pending a final appellate determination of the dispositive legal questions discussed below.

To the extent the Court is inclined to establish the omnibus proceeding and conduct some kind of fact-finding mission, it must take additional steps to ensure that the defendants are afforded a fair process. Specifically, the Court must protect defendants' individual rights to defend themselves by rejecting the Trustee's request for a super spokesperson/liaison counsel and his bizarre opt-out procedure. Neither withstands scrutiny. Instead, the constitutional and jurisprudential principles of due process require that each defendant be given the full and fair opportunity to participate individually in any consolidated proceeding – in which their individual cases cannot be substantively "merged" into some umbrella construct – and to request individualized adjudication of the issues affecting their particular rights.

Finally, this Court should stay further activity in any affected adversary proceedings during the pendency of any such omnibus process that the Court may establish.

## ARGUMENT

## I. THE OMNIBUS PROCEEDING PROPOSED BY THE TRUSTEE IS WHOLLY IMPROPER AS THIS COURT DOES NOT HAVE THE AUTHORITY TO MAKE ULTIMATE FINDINGS OF FACT

The Trustee has proposed an omnibus procedure to have this Court determine disputed factual elements of his case against the good faith defendants: that "BLMIS operated a Ponzi scheme through its investment advisory business (the 'IA Business') at all relevant times" and, therefore, that each transfer was made with intent to hinder, delay or defraud creditors. Motion at 2. But it is not the province of this Court to determine factual disputes. Rather, good faith Defendants have an absolute right under the Seventh Amendment to have any disputed facts decided by a jury. Further, the proposed omnibus procedure seeks to impermissibly shift the

burden of proof—it is the *Trustee's* sole burden to prove the fraudulent nature of *each* specific

transfer, not the Defendants' to disprove the Trustee's general Ponzi scheme allegations.

> **A.      The Trustee's Proposed Procedure Violates the Defendants' Seventh Amendment Right to a Jury Trial**

The Supreme Court, in *Granfinanciera S.A. v. Nordberg*, 109 S. Ct. 2782 (1989), held

that a fraudulent conveyance claim under Title 11 is not a matter of "public right" for purposes

of Article III, and that the defendant to such a claim is entitled to a jury trial under the Seventh

Amendment. In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that the

bankruptcy courts lacked constitutional authority to adjudicate a private right claim such as the

avoidance claim in *Granfinanciera*.

Following *Granfinanciera* and *Stern*, and in an effort to reconcile bankruptcy and district

court statutory and constitutional jurisdiction in bankruptcy matters, the Supreme Court created a

narrow path for procedures with respect to the adjudication of fraudulent conveyance claims that,

under certain circumstances, would permit a procedure much like what the Trustee has suggested

here.  Thus, where defendants have waived or failed to assert a right to a jury trial, where there

are no disputed facts left for a jury to determine, or where the defendants do not consent to final

adjudication by the bankruptcy court, the bankruptcy court may issue findings of fact and

conclusions of law in an adversary proceeding subject to *de novo* review by the district court.

*See*, *e.g.*, *Executive Benefits Ins. Agency v. Arkison,* 134 S. Ct. 2165 (2014) (under *Stern v.

Marshall*, a bankruptcy court can issue proposed findings of fact and conclusions of law for *de

novo* review by the district court where there were no disputed facts at issue and the defendant

suspended its demand for a jury trial).[1]  Alternatively, if the defendant knowingly and voluntarily

---

[1]  In *Executive Benefits*, the Supreme Court relied heavily on the facts of the case developed in
the decisions below. *See*, *e.g.*, *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins.
Agency)*, 702 F.3d 553, 568 (9th Cir. 2012) ("In other words, EBIA did not simply fail to object

consents to bankruptcy adjudication of a claim, the bankruptcy court may finally adjudicate a *Stern* claim. *See Wellness Int'l Network, Ltd v. Sharif*, 135 S. Ct 1932 (2015) (litigant may have knowingly and voluntarily consented to bankruptcy court adjudication of alter ego claim). Under prior authority in the Madoff Securities proceedings, these principles fully apply to the Trustee's avoidance actions against innocent defendants. *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 490 F. Supp. 2d 46 (S.D.N.Y. 2013) (Rakoff, J.).

However, none of the factors that would permit the procedures proposed by the Trustee are present in these cases. Most of the Defendants have timely asserted their right to a jury trial; they do not consent to the entry of a final order by the bankruptcy court; and key issues of fact in the fraudulent transfer litigation, triable by a jury, remain in dispute. Under these circumstances, the appropriate procedure for the determination of the fraudulent conveyance issue is withdrawal of the reference for jury trial in the district court, not the procedures proposed by the Trustee. *Messer v. Magee (In re FKF3, LLC),* Case No. 13 CV 3601, 2016 U.S. Dist. LEXIS 117258 (S.D.N.Y. Aug. 30, 2016).

In *Messer*, a defendant in a complex adversary proceeding involving fraudulent transfer and preference claims, among others, renewed a motion to withdraw the reference after pretrial proceedings. The court, applying the factors for withdrawal of the reference from *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993)[2], as modified by *Stern v. Marshall*, determined that

---

to the bankruptcy judge's authority to enter final judgment in the fraudulent conveyance action; it affirmatively assented to suspend its demand for a jury trial in district court to give the bankruptcy judge an opportunity to adjudicate the claim.").

[2] The *Orion* factors are "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *In re Orion*, 4 F.3d at 1101. The core/non-core analysis is relevant to the right to a jury trial, which in turn, is relevant in determining whether to withdraw the reference. The Second Circuit vacated dismissal of the adversary proceeding and denial of motion to withdraw the reference holding that the factual issue in the related

as the bankruptcy court lacked constitutional authority to finally adjudicate the trustee's claims against the defendant and the Seventh Amendment required a jury trial on those claims, the reference had to be withdrawn. *See also Buchwald v. Renco Grp.*, 539 B.R. 31 (S.D.N.Y. 2015) (reference withdrawn for jury trial on adversary proceeding asserting claims of fraudulent conveyance); *Korea Trade Ins. Corp v. Neema Clothing, Ltd***,** 11 CV 8980, 2015 U.S. Dist. LEXIS 9975 (S.D.N.Y. Jan. 28, 2015) (court must hold jury trial on disputed issues of fact in fraudulent conveyance case).

In sum, under the facts and circumstances present here, the Court lacks jurisdiction to adjudicate this dispute.

### B.    The Trustee's Proposed Procedure Improperly Shifts the Burden of Proof to the Defendants

The Trustee's proposal should be rejected as an improper effort to shift his burden of proving a key element of his case—fraudulent intent with respect to each transfer—to the Defendants.

It is undisputed that the Trustee has the sole burden of proving every one of the following elements to succeed on a fraudulent transfer claim under section 548(a)(1)(A): (1) the debtor had an interest in property, (2) the debtor voluntarily or involuntarily transferred that interest, (3) the transfer occurred on or within two years before debtor filed for bankruptcy relief, and (4) the debtor made the transfer with actual intent to hinder, delay or defraud any creditor of the debtor on or after the date of the transfer. 11 U.S.C. § 548(a)(1); *see also Doeling v. O'Neill (In re O'Neill)*, 550 B.R. 482, 497 (Bankr. D.N.D. 2016); *Springel v. Prosser (In re Innovative Commc'n Corp.)* No. 07-30012, 2011 Bankr. LEXIS 3040, at *121 n.81 (Bankr. D.V.I. Aug. 5, 2011) ("The burden of proof of establishing the elements of a fraudulent transfer pursuant to

proceedings had to be tried in the district court.

§548 rests on the trustee and never shifts."); *Allred v. Hauser (In re Jundt),* No. ADV 13-1011, 2014 Bankr. LEXIS 2729, 2014 WL 2742868, at *6 (Bankr. D.S.D. June 17, 2014); *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355, n.6 (8th Cir. 1995). The Trustee must prove the element of intent with clear and convincing evidence. *McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 57 (Bankr. E.D.N.Y 2016); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008); *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710 (Bankr. N.D. Ill. 2006); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 130 B.R. 170, 179 (Bankr. D. Vt. 1991).[3] *See also Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 196 (S.D.N.Y.2002) ("[A] Trustee seeking to avoid a transfer under § 548(a)(1)(A) already bears the difficult burden of proving, *inter alia*, that the transfer was made with 'actual intent' to defraud creditors.")

The Trustee's posture on the Motion is that he has already proved the Ponzi scheme allegations in the complaints that he filed against each of the Defendants[4] - even though there have been few dispositive proceedings in those cases and no determination of general application to them - which he recites yet again in the Motion as if they are fully established and not subject to dispute. *See* Motion at ¶¶ 1-2, 8-19. The Trustee's goal is to have the Court validate this

---

[3] But see *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),* 567 B.R. 55, 142 n.38 (Bankr. S.D.N.Y 2017) (discussing the "split of authority within this Circuit about whether a 'preponderance of the evidence' standard, or a 'clear and convincing' standard applies to the burden of proof required by a trustee bringing a claim under section 548(a)(1)(A) of the Code", and finding that the Trustee met neither); *Springel v. Prosser*, 2011 Bankr. LEXIS 3040, at *124 (applying the preponderance of the evidence standard).

[4] Each of the complaints begins with the statement: "This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff." In addition, each complaint alleges: "For all periods relevant hereto the IA business was operated as Ponzi scheme and Madoff and his co-conspirator concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported but was instead used primarily to make distributions to or payments on behalf of other investors."

disputed story, based on an alleged declaration by Bernard Madoff, without any investigation by the Trustee or any authority, that for thirty years, Bernard L. Madoff Investment Securities LLC ("BLMIS") *never* traded securities and *all* redemptions or withdrawals were made with later investors' money. The Trustee's evidence of this alleged Ponzi scheme is disputed, however, by the Defendants, Bernard Madoff's recent testimony, and evidence of BLMIS' securities accounts.

First, the Trustee cites certain decisions in the main case and the adversary proceedings, suggesting that the Trustee's Ponzi scheme allegations have already been well-established as conclusive matters of fact. *See* Motion at ¶ 1 (citing *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 414 (2d Cir. 2014); *Diana Melton Tr. v. Picard*, 15 Civ. 1151 (PAE), 2016 U.S. Dist. LEXIS 4655, 2016 WL 183492, at *13-14 (S.D.N.Y. Jan. 14, 2016); and *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 128 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011)). However, none of the courts in these decisions was presented with evidence of BLMIS' operations or asked to determine whether, based on this evidence, BLMIS was a Ponzi scheme. In each case, the courts merely accepted the allegations of the Trustee's complaints as true only in the specific context of a motion to dismiss the Trustee's avoidance complaint or they adopted a widespread public view of the BLMIS operations for purposes of administering net equity claims filed against the SIPA estate.

Indeed, the Trustee attached the "Ponzi scheme" label to BLMIS' operations early in the liquidation case, well before law enforcement officials or the Trustee conducted any factual investigation. On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against Bernard Madoff and BLMIS, charging violations of the Advisors Act of 1940 and the Securities Act of 1933. The SEC action was purportedly filed based on the report of

senior employees that on the day before, Madoff had confessed to running "a giant Ponzi scheme." *See* SEC Compl. at ¶ 23.  If, indeed, Madoff used the term "Ponzi" scheme, he used it, and it was interpreted, as the term is often widely over-applied in fraud cases without regard to the legal implications or underpinnings of the term.  On the same date, the SEC issued the following release describing Bernard Madoff's statement that BLMIS "basically, a giant Ponzi scheme."  Thereafter, the "Ponzi scheme" label was firmly affixed in the public mind and that characterization was accepted by the courts.  However, widespread public belief is not a substitute for actual evidence, which the Trustee must submit in order to meet his burden of proof.

The Trustee also relies on guilty pleas and testimony of BLMIS employees in criminal trials, which are often conflicting and, in certain cases, self-serving. *See* Motion at ¶¶ 2, 15-19. Additionally, the Trustee relies on the expert report of Bruce Dubinsky, in which Dubinsky opines on "the fraud and insolvency at BLMIS."  Motion at ¶ 25.  The Trustee cites that evidence in his Motion in order to promote the idea that he has already met his burden to prove his Ponzi scheme allegations. However, that evidence is subject to challenge by Defendants.

There is substantial evidence which creates a genuine dispute of fact regarding the Trustee's allegations and the evidence on which he apparently relies.  For example, Mr. Dubinsky's conclusion that "no securities transactions were executed by the IA Business" (Dubinsky Report at 12) is belied, in significant part, by records of United States Treasuries held by BLMIS in various accounts through 2008, some of which can be found in the Trustee's document database.  In fact, Bernard Madoff testified that BLMIS held about $6 billion of these securities, which were purchased with customer funds, invested through maturity, and used to meet withdrawal requests.  *See* Transcript of the April 26, 2017 deposition of Bernard L. Madoff,

8

at p. 28. Defendants believe that when the relevant BLMIS account records are compared to customer records, the CUSIP numbers of the Treasury securities will match the CUSIP numbers on confirmations of trades sent to customers in 2007 and 2008. Indeed, the Trustee's Motion recognizes that various defendants have contested his Ponzi scheme allegations, even though he presents those allegations as established facts. *See* Motion at ¶¶ 28-38.

Thus, while the Trustee's Motion tries to cast the Trustee's "Ponzi scheme" allegations as essentially having been proved, Defendants believe there is already substantial evidence contradicting those allegations, which in turn require adjudication, and that further discovery will reveal additional evidence undermining the Trustee's allegations. But the Trustee's proposed omnibus procedure would improperly place the burden on the Defendants to *disprove* the Trustee's allegations concerning the existence, scope and duration of the alleged Ponzi scheme, when there has been no determination in a proper procedural setting that the Trustee has carried his affirmative evidentiary burden on his claims. Neither the Trustee's Motion, nor the proposed Order submitted by the Trustee, contain any acknowledgement that the Trustee bears the burden of proof on the elements of his claims, or establish any procedures that recognize the Trustee's burden of proof on the questions the Trustee asks the Court to decide in this proposed omnibus procedure.

Instead, the Motion appears to place the Trustee and the Defendants on equal footing with regard to the burden of proof on the question of whether there was a Ponzi scheme, stating that "[t]o the extent the Ponzi Issue is not fully determined by dispositive motions, the parties will participate in a consolidated trial for the limited purpose of obtaining a ruling from the Court on the Ponzi Issue." Motion at ¶ 48; *see also* the Proposed Order at 7 ("The Trustee and Participating Defendants (through Liaison Counsel) will participate in a consolidated trial for the

purpose of obtaining a ruling from the Court on the Ponzi Issue."). But it is the Trustee, not Defendants, who must "obtain[] a ruling" on his allegations in order to prove his claims. Any omnibus procedure which fails to place the burden of proof squarely on the Trustee is objectionable and should not be imposed.

Finally, the Trustee's approach on the Ponzi Issue seems calculated to seek a determination that there is no probative evidentiary value to any account records of Madoff Securities and that his calculation of Defendants' potential avoidance exposure is correct. In this respect, the Trustee seeks to blunt any purpose to which those records can be directed by the Defendants, for example, demonstrating (as the Second Circuit concluded in *Fishman*) that the broker was obligated to the customers under non-bankruptcy law and that the payments made to them were settlement payment or payments made in connection with obligations under their securities contracts with the broker. The Trustee once again puts the cart before the horse, believing that this Court may dispense with any possibility of Defendants' using those records and validating the Trustee's computation of liability under the approach used by courts in addressing Ponzi schemes. The Trustee's attempt under this branch of the Motion to circumvent Defendants' mounting of their defenses should be rejected, certainly pending the superior courts' final determination of the scope of their value defenses, as further discussed below.

## II.    ANY OMNIBUS PROCEEDING SHOULD BE STAYED UNTIL CERTAIN AFFIRMATIVE DEFENSES RAISED BY DEFENDANTS ARE FULLY AND FINALLY ADJUDICATED.

The Trustee's motion is both premature and too narrow in scope. Several key gating issues have been the subject of proposed conclusions of law recently issued by this Court and, soon, will be finally decided by the District Court or the Court of Appeals. Those issues involve:

- Section 548(a)'s statute of repose, which bars the Trustee from avoiding BLMIS' obligations that pre-date the two-year avoidance period in Section 548(a).

- the propriety of applying "Ponzi scheme" terminology and presumptions to the statutory defenses raised by the defendants.

- Section 548(c)'s value defense, which the Trustee seeks to neutralize for purposes for all still-remaining defendant clawback cases by obtaining a ruling that no documents of BLMIS can be deemed to have any probative value because of the alleged nature and extent of the alleged fraud.

*See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (Picard v. Lowrey)*, Adv. Pro. Nos. 10-04387, 10-04488, 10-04350, 10-05110, 2018 Bankr. LEXIS 828 (Bankr. S.D.N.Y. Mar. 22, 2018) ("the *Lowrey* actions").

The final determination of these issues will define the relevant factual questions (if any) that remain concerning the length and extent of BLMIS' fraudulent scheme. The proposed omnibus proceeding should be deferred until these determinative threshold issues have been fully and finally adjudicated.[5]

All Defendants have asserted various statutory defenses to the avoidance claims which, if approved by the appellate courts, will moot the question of the extent of Madoff's fraud. These statutory defenses are premised on the assumption that even if the Trustee is able to make out a prima facie case of fraudulent transfer, various statutory defenses set forth in the avoidance statute operate as complete or alternatively partial defenses to any Trustee claims. These defenses are currently being tested in the four cases selected by the Trustee for these purposes, the *Lowrey* actions.[6] Regardless of whether the Court agrees with the merits of these defenses,

---

[5] In this respect, deferring any omnibus proceeding until key issues are decided is no different from the very tactic that the Trustee employed after losing on the Section 546(e) reach-back issues in the District Court in 2012. All of the good faith avoidance proceedings in this Court effectively were put on hold while the issue was appealed unsuccessfully by the Trustee to the Second Circuit and, after it ruled against him, to the Supreme Court. The Trustee even obtained a deferral of the Second Circuit appeal in the hope that the District Court would rethink its approach to the issue in a trailing case alleged involving bad faith transferees.

[6] Defendants' counsel in the *Lowrey* actions has advised the parties that they intend to file formal Rule 9033 objections to this Court's proposed findings and conclusions on or before April 26, 2018.

since the Court does not have final authority to rule on them, Defendants submit that until these

test cases are finally resolved, any inquiry into the question of the extent and scope of the alleged

Ponzi scheme is premature.  Defendants therefore request that the Court defer the Trustee's

Motion pending final adjudication of the validity of the Defendants' statutory defenses.  Any

other result is a waste of judicial and litigant resources.

## III.    PROCEDURAL OBJECTIONS

### A.    There is No Authority to Implement a Procedure That Would Bind All Defendants to Speak Through a Single Spokesperson-Liaison Counsel, or to Prevent Defendants From Seeking Individualized Adjudications on Timely Motions to Opt Out of Any Consolidated Proceedings Where an Appropriate Showing is Made

The Trustee's proposed proceeding would deprive Defendants of their fundamental rights

of due process in litigation.  The Trustee proposes to bind all Defendants who do not opt-out to

the final outcome of the proceeding.  In addition, the Trustee would have the Court appoint a

defendants' liaison counsel who would have substantive power to speak for all Defendants

included in the proceeding, thereby also binding the Defendants.    These mechanisms

deprive Defendants of their individual rights to exclude themselves from the proceeding at any

point after the establishment of the proceeding.  Moreover, Defendants would be deprived of

their individual rights to be heard and to participate in the proposed omnibus proceeding, which

only procedurally consolidates the avoidance actions – but does not substantive merge them

(absent a Defendant's consent).  Unless intentionally waived by a defendant, those rights cannot

be eviscerated by consolidation under Rule 42(b).  As such, if this Court determines to open the

consolidated proceedings to address the Ponzi scheme issues, the Court must include in any

Order means to (a) permit a Defendant to opt out of the proceeding on an individual basis, and (b)

permit the consolidated proceeding to move forward *without* a formally appointed Liaison

Counsel, allowing Defendants' counsel to coordinate among themselves, all procedural matters, discovery, and dispositive proceedings.

>    **1.    The opt-in procedure proposed by the Trustee substantively affects Defendants' rights to defend themselves in their individual actions**

The Trustee's Proposed Order seeks to automatically impose adverse findings against all "Non-Participating Defendants" even if they do not consent to participate in the consolidated proceedings. *See* Proposed Order at p. 5. This flagrantly disregards those Defendants' due process rights and violates notions of fairness that must be considered—and indeed that must take priority—in determining whether cases should be consolidated and on what basis. The opt-in procedure proposed by the Trustee would bind Non-Participating Defendants to as-yet unspecified and unparticularized factual findings and legal conclusions on the Ponzi scheme issues if they do not "opt-in" to the omnibus proceeding at its inception.

Although opt-in procedures may be appropriate in certain class actions, the proposed proceeding is neither a class action nor subject to the case management procedures in Rule 23 of the Federal Rules of Civil Procedure with their carefully drawn due process protections for absent class members. The Trustee cites no authority allowing the opt-in procedure outlined in the motion. The Trustee's opt-in mechanism essentially deems a Defendant's silence regarding opt-in status as consent and strips the Defendants of material defenses they otherwise would be entitled to interpose on the issues to be addressed by the omnibus proceeding if their cases remained separate.

"[T]he Second Circuit has explained that there is a difference between a consolidation order which 'merely requires the parties, in the interest of avoiding needless duplicative expenditure of time and money, to join in common pretrial discovery and preparation,' and an order which 'goes beyond these permissible objectives to deny a party his due process right to

prosecute his own separate and distinct claims or defenses without having them so merged into the claims or defenses of others that irreparable injury will result.'" *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 592 (S.D.N.Y. 2012) (quoting *Garber v. Randell*, 477 F.2d 711, 716 (2d Cir. 1973)) (vacating order for consolidation of proceedings). When considering the propriety of consolidation, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir. 1990); 8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.10[5][d] (2018) ("Consolidation is inappropriate when it will adversely affect the rights of the parties."). Indeed, as the Supreme Court very recently recognized, "no defendant could be deprived, without its consent, of any right material to its defense . . . to which it would have been entitled if the cases had been tried separately." *Hall v. Hall*, 584 U.S. ____, No. 16-1150, slip op. at 9 (Mar. 27, 2018). Consolidation "does not merge the [separate] suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Id.*, slip op. at 6 (confirming the history of Rule 42(a) "makes clear that one of multiple cases consolidated under the Rule retains its independent character . . . regardless of any ongoing proceedings in the other cases." (citations omitted)).

Assuming, *arguendo*, that the Court elects to institute the consolidated proceeding on the Ponzi scheme issues, the proposed opt-in procedure must be rejected. The Trustee's opt-in mechanism fails to preserve the substantive rights of the individual Defendants to appear and be heard *individually* on all issues relevant to their particular cases, whether on the Trustee's attempt to prove his affirmative claims or on their particular defenses. Because a consolidation order cannot merge the actions substantively absent consent, each Defendant retains an individual due process right to participate individually in a consolidated proceeding. Although

14

defense counsel may be directed to meet and confer among themselves to avoid duplication and to coordinate the course of activity, limiting a party's right to participate beyond that dimension violates due process and should be summarily rejected.[7]

> **2.    The Court must allow defendants to file timely opt-out elections to pursue individual actions on the Ponzi scheme issue separately**

Some Defendants have *sui generis* facts that differentiate them from others, such that questions regarding the nature and effect of their relationships and transactions with BLMIS may be different from a larger segment of the Defendants. The Court must permit timely motions for Defendants to opt out of any consolidation proceeding in order to protect those individualized interests.

With the Trustee's motion purporting to be grounded in the principles of Rule 42 – which has no opt-out mechanism – the Court should look to the analogous provisions of Rule 23 for guidance on this question. Rule 23 expressly permits parties to opt out of a Rule 23(b)(3) class and requires particularized notice to the class to specify the time and manner for exclusion. *See* Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi); *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (district court has discretion to allow a class member to opt out "in order to facilitate the fair and efficient conduct of the action."); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129-30 (S.D.N.Y. 1997) (even with consolidation solely for pretrial purposes, "[c]onsolidation will not impose Primavera's counsel on the ABF plaintiffs, and the ABF plaintiffs remain free to opt out of the class, if one is certified, and to pursue their individual actions.")

---

[7] A similar non-substantive consultative process among counsel in hundreds of affected actions was utilized in the Section 546(e) appellate proceedings – with the consent of the defendants. Although the participating defendants were required to avoid duplication and affirmatively agreed to limitations on the number of briefs that could be submitted, no attorney or client was deprived of the ability to participate and assert respective rights individually.

Moreover, the courts do not limit opt-out processes only to Rule 23(b)(3) class actions. "Several courts have either held or stated that . . . members of a Rule 23(b)(1) class might be permitted to opt out under appropriate circumstances." 5 MOORE'S FEDERAL PRACTICE – CIVIL § 23.42[6][c] (2018). Opt out arrangements are appropriate, for example, where a party's interests and circumstances in the litigation are distinguishable from those of the general class. *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1305 (2d Cir. 1990); *Martens v. Smith, Barney, Inc.*, 181 F.R.D. 243, 260-61 (S.D.N.Y. 1998) ("Opt-out rights are most appropriate where part of the relief is monetary" or "uniquely individual to each class member.").

Here, any consolidated proceeding that may be implemented must allow individual Defendants who have not previously opted out to exclude themselves. The proposed order should also specify the time and manner for requesting exclusion.

> ### 3. Appointment of Liaison Counsel with the power to speak for and bind all Defendants is inappropriate, violating their individual rights in their individual actions – even if consolidated – and where counsel to *Defendants can coordinate the handling of any proposed omnibus proceedings*

The Trustee seeks to appoint a Liaison Counsel who would be charged to represent all Defendants' legal interests in the determination of issues in omnibus proceeding. This runs counter to the principles of an individuals' right to be represented separately by her own counsel, and departs of accepted notions of the role of a liaison attorney in multi-party litigation. Generally, "[l]iaison counsel's main function is to perform administrative tasks" on behalf of the group of parties to the consolidated actions. 8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.13[6][b]. Here, however, the Trustee would imbue Liaison Counsel with far more sweeping, substantive responsibilities, well beyond just administrative tasks. *See* Proposed Order at 5 ("Liaison Counsel shall *act on behalf of Defendants in all matters* related to the Omnibus Ponzi Proceeding …") (emphasis added). This proposal exceeds the permissible objectives and

boundaries of consolidation and denies Defendants their respective due process right to participate in and prosecute their own separate and distinct defenses in their own stead. *See Liberty Media Corp.*, 842 F. Supp. 2d at 592 (quoting *Garber*, 477 F.2d at 716); *see also Hall, supra,* slip op. at 9.

In addition, the Trustee's suggestion that the circumstances of these require a single lead counsel for all Defendants to "ensure arguments are not piecemeal and can be addressed at one time" is misplaced. Motion at ¶ 55. Courts in the Second Circuit have declined to appoint lead counsel holding overarching substantive responsibilities where attorneys of record for the parties are capable of coordinating responses and activities among themselves. *See Augustin v. Jablonsky*, 99-CV-3126 (DRH)(ARL), 2001 U.S. Dist. LEXIS 10276, at *52-53 (E.D.N.Y. Mar. 8, 2001) (denying appointment of lead counsel "in part because the plaintiffs in the three actions are represented by attorneys in just four law firms, who should be quite capable of coordinating the conduct of the proceedings amongst themselves").

Here, there is no showing that defense counsel cannot adequately coordinate and confer as necessary in any common proceedings. The history of these proceedings shows that there is an active and robust common defense group willing and able to coordinate the defense of common issues, as appropriate, and to take the lead in litigating issues (with the consent of participating parties who are willing to defer to them or to cede substantive responsibility). Indeed, the example of the Section 546(e) appellate proceedings – where a coordinating committee exercised administrative and communication functions without depriving any attorneys of the ability to participate on behalf of their clients, and assuring that all interested counsel and parties were involved and able to participate – belies the Trustee's unproven premise.

Finally, the mechanics of a proposed liaison counsel mechanism are completely left to the Court's and the Defendants' imagination. No process for the selection of liaison counsel is proposed, and the Trustee seems to think that designation by fiat will neutralize the possibility that one or more Defendants are unwilling to give up their rights – a prospect that is, in fact, the case. Moreover, the liaison counsel proposal ignores the fundamental question of who will pay for the liaison counsel's activities. There is no basis to tithe the Defendants as a group; they are already obligated to pay their own attorneys, and there is no basis for the Court to force them involuntarily to pay another attorney's fees out of their own pockets. Allocating the payment of attorneys' fees between Liaison Counsel and individual counsel "raises both ethical and practical issues." 8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.13[6][a]; *accord, In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 374 (2d Cir. 1993) ("A party may not use aggregation as a method of increasing the costs of its adversaries – whether plaintiffs or defendants – by forcing them to participate in discovery or other proceedings that are irrelevant to their case. It may be that such increased costs would make settlement easier to achieve, but that would occur only at the cost of elemental fairness.").

Accordingly, the Court should deny the appointment of Liaison Counsel should these proceedings be consolidated.

**B.**     **The Trustee Should Be Required to Establish a Database of the Relevant Records for the Proceeding, that Is Easily Accessible to the Defendants, Fully Searchable and Not Subject to Any Ability by the Trustee's to Trace Defendants' Searches and Selections of Documents for Review**

The Trustee implies that all the relevant information about BLMIS has been readily available to the Defendants in a database maintained by the Trustee. As this Court is aware, there is a dispute about whether the database includes all of the BLMIS trading records. In addition, the Trustee has made access to the documents extremely difficult and expensive. Documents

cannot be easily searched because of how they are indexed and stored; they can only be reviewed

on screen; and they are only available on request to the Trustee.  The database is designed to

discourage discovery by the Defendants. Accordingly, even if no new procedures are adopted to

address issues that arise in the cases, the Trustee should revise the database to accommodate the

legitimate discovery needs of the Defendants.

**C.    All Case Management Schedules in Affected Adversary Proceedings Should Be Stayed Until the Matters to Be Decided in the Omnibus Proceeding are Determined, and Because the Omnibus Proceeding Is Designed to Address Issue Underpinning the Trustee's Case in Chief, No Discovery Should Be Permitted by the Trustee of the Defendants Joined in the Omnibus Proceedings**

Under rubrics of judicial economy, fundamental fairness, and securing "just, speedy and

inexpensive determination" of proceedings, Fed. R. Bankr. P. 1001, the case management

schedules in individual actions should be suspended until the completion of an omnibus

proceeding to avoid what could be duplicative proceedings and with a multiplication of legal

costs and burden to the Defendants.

The Trustee's motion expressly recognizes that the substantive matters proposed to be

addressed by the omnibus proceeding overlap with discovery requests propounded (or that may

yet be propounded) in individual Defendants' cases.  As a result, while his motion is pending, the

Trustee suspended discovery proceedings, in some cases at the request of Defendants and in

others of his own volition.  If the motion is granted, discovery in the omnibus proceeding

expressly would supplant overlapping discovery on any of those issues in the individual cases,

thereby potential truncating or shrinking other matters left for discovery and determination in the

individual cases.  Unstated in the motion, if an omnibus proceeding is established, the

adjudication of issues therein necessarily will impact the scope of any matters left to be

adjudicated in various Defendants' cases.  For this reason, further activity in the "non-

consolidated" aspects of the good faith Defendants' avoidance proceedings should be held in abeyance (and all prevailing individual case management orders stayed) without date until the conclusion of the omnibus proceeding.

Similarly, the Trustee should not be permitted to take additional discovery of the good faith Defendants in this proceeding. The Trustee, as proponent of the alleged Ponzi scheme as elements of his affirmative case of intentional fraudulent transfers, bears the burden to prove those elements by clear and convincing evidence. Indeed, this proceeding is billed by the Trustee as a means to obtain adjudication on elements of his case in chief – the existence, extent and effect of an alleged fraudulent scheme perpetrated by BLMIS and Bernard Madoff. The records of good faith Defendants have nothing to do with this determination.

## IV.    RESERVATION OF RIGHTS

Defendants expressly do not consent to the entry of final orders or judgments by the Bankruptcy Court on any matters that may be addressed by the proposed consolidated proceeding. The Trustee's avoidance claims are not core proceedings; the matters to be addressed by the proposed consolidated involve elements of the Trustee's claims and the defendants' defenses to those claims. To the extent that Defendants demanded trials by jury, they reserve that right but do not consent to a jury trial in the Bankruptcy Court.

## CONCLUSION

For the foregoing reasons, Defendants object to the proposed consolidated proceedings, and request in all events the court defer them pending final adjudication of the test case on the affirmative defenses being asserted in the *Lowrey* actions.  Alternatively, Defendants request that if this Court determines to authorize such a proceeding, that the Court implement the procedural safeguards requested herein.

Dated:    New York, New York
          April 11, 2018                              Respectfully submitted,[8]

                                                     BAKER & MCKENZIE LLP

                                                     By:  /s/ Richard A. Kirby
                                                          Richard A. Kirby
                                                          Graham R. Cronogue
                                                          815 Connecticut Avenue, N.W.
                                                          Washington, District of Columbia  20006
                                                          Tel:  (202) 452-7020
                                                          Email:  richard.kirby@bakermckenzie.com

DENTONS US LLP                                       PRYOR CASHMAN LLP

By:  /s/ Carole Neville                              By:  /s/ Richard Levy, Jr.
     Carole Neville                                       Richard Levy, Jr.
     1221 Avenue of the Americas                          7 Times Square
     New York, New York  10020-1089                       New York, NY  10036.
     Tel:  (212) 768-6889                                 Tel:  (212) 421-4100
     Email: carole.neville@dentons.com                    Email:  rlevy@pryorcashman.com

---

[8] *See* Exhibit A hereto for lists of the Defendants represented by the undersigned counsel.

## EXHIBIT A

**1.    Defendants represented by Pryor Cashman LLP**

| Defendants | Adversary Proceeding |
|---|---|
| Murray Pergament 1999 Trust f/b/o Bruce Pergament | *Picard v. Bruce D. Pergament, et al.* Adv. Pro. No. 10-05194 (SMB) |
| Linda Horowitz Spousal Trust f/b/o Richard Horowitz | *Picard v. Bruce D. Pergament, et al.* Adv. Pro. No. 10-05194 (SMB) |
| James P. Marden, Iris Zurawin Marden, Patrice M. Auld | *Picard v. James P. Marden, et al.* Adv. Pro. No. 10-04341 (SMB) |
| Patrice M. Auld, James P,. Marden, Merritt Kevin Auld, | *Picard v. Patrice M. Auld, et al.* Adv. Pro. No. 10-04343 (SMB) |
| Bernard Marden Profit Sharing Plan | *Picard v. Bernard Marden Profit Sharing Plan, et al.,* Adv. Pro. No. 10-05168 (SMB) |
| Marden Family Limited Partnership | *Picard v. Marden Family Limited Partnership, et al.,* Adv. Pro. No. 10-04348 (SMB) |
| Avram J. Goldberg, Carol R. Goldberg, Avcar Group, Sidney R. Rabb Trust fbo Carol Goldberg, Avcar Group, Ltd. | *Picard v. Marden Avram J. Goldberg, et al.,* Adv. Pro. No. 10-04348 (SMB) |

**2.    Defendants represented by Dentons US LLP**

| Defendants | Adversary Proceeding |
|---|---|
| Harold J. Hein (IRA) | *Picard v. Harold J. Hein Revocable Trust, et al.* Adv. Pro. No. 10-04861 (SMB) |
| Barbara J. Berdon | *Picard v. Estate of Barbara Berdon, et al.* Adv. Pro. No. 10-04415 (SMB) |
| Laura E. Guggenheimer Cole | *Picard v. Guggenheimer Cole* Adv. Pro. No. 10-04882 (SMB) |
| Sidney Cole (IRA) | *Picard v. Cole.* Adv. Pro. No. 10-04672 (SMB) |
| The Frederica Ripley French Revocable Trust, Frederica R. French, and Alexander Mcferran, solely in his capacity as successor trustee | *Picard v. The Frederica Ripley French Revocable Trust, et al.* Adv. Pro. No. 10-05424 (SMB) |
| Alvin Gindel Revocable Trust,  and Alvin Gindel, in his capacity as trustee of the Alvin Gindel Revocable Trust | *Picard v. Alvin Gindel Revocable Trust, a Florida Trust, et al.* Adv. Pro. No. 10-04925 (SMB) |

| Defendants | Adversary Proceeding |
|---|---|
| Rose Gindel Trust, Rose Gindel, individually and in her capacity as Trustee of the Rose Gindel Trust, Michael Gindel, individually, and Alvin Gindel, in his capacity as Trustee of the Rose Gindel Trust | *Picard v. Rose Gindel Trust, et al.* Adv. Pro. No. 10-04401 (SMB) |
| S&L Partnership, a New York partnership, Carla Goldworm, Samuel Goldworm, Luke Goldworm | *Picard v. S&L Partnership, a New York Partnership, et al.* Adv. Pro. No. 10-04702 (SMB) |
| Toby T. Hobish,  (IRA), Li, Ram L.P., a New York limited partnership | *Picard v. Hobish, et al.* Adv. Pro. No. 10-05236 (SMB) |
| Lapin Children LLC | *Picard v. Lapin Children LLC.* Adv. Pro. No. 10-05209 (SMB) |
| Bam L.P., Michael Mann, Meryl Mann, Betsy Mann Polatsch, and Adam Mann | *Picard v. Bam L.P., et al.* Adv. Pro. No. 10-04390 (SMB) |
| Stanley T. Miller (IRA) | *Picard v. Miller* Adv. Pro. No. 10-04921 (SMB) |
| Neil Reger Profit Sharing Keogh and Neil Reger, individually and in his capacity as trustee of the Neil Reger Profit Sharing Keogh | *Picard v. Neil Reger Profit Sharing Keogh, et al.* Adv. Pro. No. 10-05384 (SMB) |
| The Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008; Trust Under Will of Philip L Shapiro; Norma Shapiro, individually, and in her capacity as Trustee for the Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008 and the Trust Under Will of Philip L. Shapiro; and Martin Rosen, in his capacity as Trustee of the Trust Under Will of Philip L. Shapiro | *Picard v. The Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008, et al.* Adv. Pro. No. 10-04486 (SMB) |
| Barry Weisfeld | *Picard v. Weisfeld.* Adv. Pro. No. 10-04332 (SMB) |
| James Greiff | *Picard v. Greiff.* Adv. Pro. No. 10-04357 (SMB) |

3.      **Defendants represented by Baker & McKenzie LLP**

| Defendants | Adversary Proceeding |
|---|---|
| Lanx BM Investments, LLC, The Lanx Fund II, LP, Wolfson Cousins, LP, Edara Partnership, and Sarah Trust | *Picard v. Lanx BM Investments, LLC, et al.* Adv. Pro. No. 10-04384 (SMB) |

24