# EXHIBIT I

# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

David J. Sheehan
direct dial: 212.589.4616
dsheehan@bakerlaw.com

August 17, 2017

**VIA ECF AND ELECTRONIC MAIL**

Andrew B. Kratenstein, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-1922
akratenstein@mwe.com

Re:   *Picard v. Sage Associates, et al.*, Adv. Proc. No. 10-04362 (Bankr. S.D.N.Y.);
      *Picard v. Sage Realty, et al.*, Adv. Proc. No. 10-04400 (Bankr. S.D.N.Y.)

Dear Andrew:

We write on behalf of Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), in response to your letter of August 8, 2017.

    **A.**    <u>**Securities Potentially Received by BLMIS**</u>

With respect to your request for documents pertaining to the "portfolio of stocks" "delivered by [your] clients to Madoff," we are aware of two time periods during which BLMIS may have received securities on behalf of the Maurice Sage Trust (accounts 101961 and 101911), accounts that transferred either directly or indirectly into your clients' BLMIS accounts.[1] In both instances, your clients received credit for these transactions in the net equity calculation.

    <u>Fall 1979</u>

As reflected on the first statement for 101961, issued on December 31, 1979, ten potentially real securities were received into the account and purportedly sold in October and November 1979. (*See* MF00086733.) The proceeds of the liquidation of those securities were credited to account 101961, as reflected on the December 1979 statement. More significantly, however, because the Trustee's principal balance calculation begins on April 1, 1981, the ending cash balance and the historical cost of the securities reported as held in the account as of

---

[1] In July 1983, the accounts 101961 and 101911 were moved into account 101904.

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Denver
Houston    Los Angeles    New York    Orlando    Philadelphia    Seattle    Washington, DC

Andrew B. Kratenstein, Esq.
2

March 31, 1981 were credited as principal to the account. Based on this calculation, the Maurice Sage Trust was granted a principal credit of $455,191 as of April 1, 1981. (*See* MF00095805.)

### March 1980

In March 1980, account 101961 received three deposits of potentially real securities, as reflected on the statement for March 31, 1980. (*See* MF00083497.) Two of the three securities were purportedly sold on June 24, 1981 (*see* MF00097360) and December 10, 1981 (*see* MF00080720), while the third security was redeemed on June 19, 1986 (*see* MF00071629). The funds received from interest payments, dividends, and the purported sales and/or redemption of the securities were treated as principal additions to the accounts. (*See, e.g.*, MF00097360, MF00080720, and MF00071629.)

All of the documents referenced above are available in E-Data Room 1.

**B.   DTCC and NSCC Records**

The Trustee received certain records from the Depository Trust & Clearance Corporation ("DTCC") dating from 2002 through 2008. As such, these records do not evidence any alleged securities sales on behalf of your clients. Nevertheless, we will produce to you these approximately 250 documents. Additionally, there are approximately 520 documents in E-Data Room 1 that bear the production prefix "DTCAA" which were located on a DTCC terminal at BLMIS.

The Trustee has not received a separate production from the National Securities Clearing Corporation ("NSCC"). However, we have already produced to you 95 documents from the BLMIS database that we identified as potential NSCC reports, along with more than 18,000 documents that hit on the search terms "Depository Trust" or "National Securities."

**C.   Alleged Directed Trades**

We understand that your clients contend that they "directed Mr. Madoff and BLMIS as to how to trade in the Sage Associates account." (Letter from Mr. Kratenstein to Judge Bernstein, dated June 26, 2017, at 2. ("June 26 Letter")). We would like to meet and confer to understand the universe of purported trades that your clients allege occurred at their direction.

We are aware of seven letters purporting to direct BLMIS to engage in trading activity. (*See* MADTSS00414949, MADTSS00384441-442, MADTBB01170931, MADTBB02370451, MADTBB01169555, MADTBB02431294, and AMF00203163.) To the extent your clients are aware of any other communications or documents regarding purported directed trading, please provide them to us. Because certain of the letters are undated, we would also ask that your clients identify specific customer statements on which any directed trading appears in order to make the discussion as productive as possible. While we do not concede that BLMIS engaged in specific trades on behalf of or at the direction of your clients, we remain open to an in-person meeting to discuss the monetary impact of these alleged trades, if any, on your clients' accounts.

Andrew B. Kratenstein, Esq.
3

Sincerely,

*/s/ David J. Sheehan*

David J. Sheehan

cc: Heather McDonald, Esq.
    Kristin Keranen, Esq.
    Michael Sabella, Esq.
    Molly Tranbaugh, Esq.