**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　Plaintiff-Applicant,<br>　　v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>　　　　　Plaintiff,<br>　　v.<br>SOUTH FERRY #2, EMANUEL GETTINGER, AARON WOLFSON, and ABRAHAM WOLFSON,<br>　　　　　Defendants. | Adv. Pro. No. 10-04350 (SMB) |

**NOTICE OF SOUTH FERRY #2'S RULE 9033 OBJECTIONS TO
BANKRUPTCY COURT'S REPORT AND RECOMMENDATION**

**PLEASE TAKE NOTICE** that, under Federal Rule of Bankruptcy Procedure 9033 and Federal Rule of Civil Procedure 56, Defendants South Ferry #2 et al. object to the bankruptcy court's proposed findings of fact and conclusions of law and submit the following objections.

I.　The bankruptcy court erred by rejecting the statutory affirmative defenses

1

    A.    Section 548(c) bars the Trustee's claims: it precludes a trustee from avoiding any transfer where the transferee acted in good faith and received the payment in satisfaction of a present or antecedent debt owed, or an obligation incurred, by the transferor.

        1.    SIPA incorporates 548(c)'s value defense, thereby barring a trustee from avoiding transfers received in satisfaction of a valid obligation incurred by the broker under non-bankruptcy law.

        2.    Value is measured at the time of the transfer and from the transferee's perspective.

        3.    Section 28(a) of the 1934 Act preserves Defendants' state law rights and remedies against Madoff Securities.

        4.    Section 29(b) of the 1934 Act ensures that the broker's obligations are enforceable despite Madoff's fraud.

        5.    Each transfer was made in satisfaction of these state law obligations.

    B.    Alternatively, the text of Section 548(a), which precludes a trustee from avoiding any obligations incurred by the debtor more than two years before the liquidation case, severely limits the Trustee's potential right of recovery.

II.    The bankruptcy court erred because it did not apply the statutory defenses as written and improperly permitted equitable concerns to override statutory directives.

    A.    In a SIPA case, court must apply the substantive terms of both the 1934 Act and Bankruptcy Code.

    B.    The bankruptcy court disregarded the text of the controlling statutory provisions in favor of equitable principles.

III.    The bankruptcy court erred in concluding that SIPA repeals part of the Bankruptcy Code's avoidance statute and grants a SIPA trustee greater rights than an ordinary bankruptcy trustee because SIPA does not "necessarily imply" that the Code governs exclusively.

    A.    SIPA borrows Section 548's avoidance statute and its defenses which are integral to the federal avoidance remedy.

    B.    The bankruptcy court's statutory analysis ignores the provision of SIPA that adopts the Code's avoidance statute in whole and is directly contrary to fundamental norms of statutory construction.

    C.    The bankruptcy court's conclusion disregards controlling Second Circuit holdings in these cases that limit a SIPA trustee to the same avoidance powers as an ordinary bankruptcy trustee.

IV. The bankruptcy court erred in disregarding the Second Circuit's mandate in the Section 546(e) Decision: Madoff Securities' fraud did not abrogate Madoff Securities' preexisting obligation to pay settlement payments and contractual debts, and SIPA does not alter the Bankruptcy Code's avoidance statutes.

   A. The Section 546(e) Decision established that Defendants' contracts with Madoff Securities are enforceable in these proceedings, even though Madoff acted fraudulently, and that the Bankruptcy Code controls here.

   B. The bankruptcy court's proposed conclusions violate the express holdings of the Section 546(e) Decision and its mandate.

V. The bankruptcy court erred in deferring to the Antecedent Debt Decision, which has been superseded by later controlling authority and the precedential value, if any, is cabined by its limited procedural posture.

   A. The Antecedent Debt Decision was superseded by later controlling Second Circuit holdings.

   B. In any event, the Antecedent Debt Decision is inapposite because subsequent facts developed in discovery and later affirmative defenses not at issue in 2013 Rule 12(b)(6) motions have altered the key operative questions at issue.

   C. The other cases relied upon by the bankruptcy court are also inapposite for the same reasons the Antecedent Debt Decision is inapplicable.

VI. The bankruptcy court erred in concluding that a valid payment of a pre-petition claim owed by a debtor at the time of the transfer is inconsistent with SIPA because it adversely affects the later distribution of customer property in a subsequent SIPA estate; the decision is in direct disregard of the holding in Fairfield.

   A. SIPA's net equity principles have no bearing on an avoidance action.

      1. Transferred property is not part of the SIPA estate unless and until avoided and recovered by the trustee.

      2. A SIPA trustee has no greater power over unavoided property than an ordinary bankruptcy trustee.

      3. SIPA §8(c)(3) does not change this treatment of unavoided and unrecovered transfers.

   B. The bankruptcy court prematurely treated the unavoided transfers as customer property.

VII. The bankruptcy court erred in granting the Trustee an unpleaded claim against innocent Defendants and concluding that the debtor violated the SEC's financial responsibility rules; in all events, the Second Circuit's decision in JPMorgan confirms that the Trustee has no standing to assert any non-bankruptcy claim.

3

    A.    The bankruptcy court erred in determining that the Trustee had standing to assert an equitable claim because JPMorgan expressly holds that he does not.

        1.  Even if the SEC rules allowed a private right of action, JPMorgan would bar the Trustee from asserting it, because the Trustee inherits the debtor's bad faith status and therefore lacks standing to assert such claims on the debtor's or its creditor's behalf.

        2.  The bankruptcy court disregarded JPMorgan by granting the Trustee powers outside the Bankruptcy Code.

    B.    Even if the Trustee had standing to invoke them, the SEC's financial responsibility rules have no bearing on Defendants state law rights to receive the specific transfers at issue.

        1.  The bankruptcy court misreads the SEC's financial responsibility rules: they do not prohibit a broker from paying a valid debt to a customer at the time of payment.

        2.  Even if the rules prohibited such payments, the action would be brought against the offending party—Madoff Securities—in whose shoes the Trustee stands.

        3.  Even if the SEC rules prohibited a broker from paying a valid debt to its customer, the SEC rules do not provide the wrongdoer or its successor with a private right of action to recover money from a good faith customer.

        4.  In all events, the bankruptcy court improperly assumed, without any factual basis in the record that there was a violation of the SEC's financial responsibility rules; the stipulated facts do not address how customer funds were segregated or what source Madoff Securities used to pay the defendants.

    C.    The bankruptcy court's decision is procedurally improper because it raises unpleaded claims, thereby depriving Defendants of basic procedural rights.

        1.  In a summary judgment proceeding, the bankruptcy court has no authority to amend a complaint de facto to consider a claim that no party ever raised.

        2.  There is no evidence to support relief based on the SEC rules.

VIII.  The bankruptcy court erred in concluding that Madoff Securities' fraud matters because its treatment of property stolen by a thief contradicts the Second Circuit's Sharp holding that fraudulent transfer law does not govern such a transaction.

    A.    Controlling precedent—including the Second Circuit's Sharp holding—dictates that a good faith transferee may retain payments made in satisfaction of a valid debt, even if that payment is derived from stolen funds.

4

        1. Madoff Securities' fraud is irrelevant to the Section 548(c) inquiry because value is measured at the time of the transfer from the transferee's perspective.

        2. Section 29(b) of the 1934 Act gives an innocent fraud victim the option of enforcing securities contractual rights against the wrongdoing broker notwithstanding any fraud.

        3. The Second Circuit's holdings teach that a good faith defendant may keep stolen funds if the payments satisfied valid obligations at the time of the payments: any cause of action lies against the thief who chose to use stolen funds, and not the good faith recipient of the stolen funds.

    B. The bankruptcy court's conclusion that a thief cannot satisfy valid obligations with stolen money is directly contrary to Sharp.

IX. The bankruptcy court erred in concluding that Section 548(a)'s two-year reach back limit is not a statute of repose.

    A. Federal bankruptcy courts consistently treat the time limits in Section 548(a) as a statute of repose.

    B. The Supreme Court's CalPERS decision treats statutes like Section 548 as statutes of repose.

    C. As a statute of repose, Section 548(a)(1) cannot be tolled.

    D. The bankruptcy court erred in adopting the Trustee's calculation method because it directly negates the effect of the statute of repose in Section 548(a) and disregards material facts establishing this defense.

X. The bankruptcy court erred in concluding that the Trustee need not avoid obligations incurred in addition to transfers within the two-year period; the Trustee's failure to plead any avoidance of obligation claims is fatal to his case.

XI. The bankruptcy court erred in ignoring Defendants' alternative grounds for summary judgment: the value defense also allows them to retain amounts due them at the time of the transfers based on their unliquidated state and federal tort claims.

## CONCLUSION

This motion is based on the accompanying joint memorandum of law and its addenda and the summary judgment record before the bankruptcy court, including the statement of material facts not in dispute; all pleadings and papers filed in these proceedings; and any other matters properly before the court. Defendants request oral argument at a time to be fixed by the Court.

Dated: April 26, 2018.

**BAKER & MCKENZIE LLP**

By: */s/Richard A. Kirby*
    Richard A. Kirby
    Graham R. Cronogue
    Raija Churchill
    815 Connecticut Avenue NW
    Washington, DC 20006
    Tel: (202) 452-7020
    richard.kirby@bakermckenzie.com
    graham.cronogue@bakermckenzie.com
    raija.churchill@bakermckenzie.com