**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201  
David J. Sheehan  
Nicholas J. Cremona  
Jorian L. Rose  
Amy E. Vanderwal  
Jason I. Blanchard  

*Attorneys for Irving H. Picard, Trustee  
for the Substantively Consolidated SIPA Liquidation  
of Bernard L. Madoff Investment Securities LLC  
and the chapter 7 estate of Bernard L. Madoff*

Hearing Date: June 27, 2018  
Hearing Time:  10:00 a.m. (EST)  
Objections Due: June 13, 2018  
Objection Time:  4:00 p.m. (EST)  

**UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>            Plaintiff-Applicant,<br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>            Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>            Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |

### TRUSTEE'S EIGHTEENTH OMNIBUS MOTION TO DISALLOW CLAIMS AND OVERRULE OBJECTIONS OF CLAIMANTS WHO HAVE NO NET EQUITY

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, the "Debtor"), by this combined motion and memorandum of law (the "Motion"), asks this Court to affirm his denial of certain customer claims and overrule

the related objections. The claims ("Claims") at issue in this Motion were filed either by customers that withdrew more money from BLMIS than they deposited and are thus, in the parlance of this case, net winners, or by customers that withdrew an equal amount to what was deposited and are thus, in the parlance of this case, net zeros (collectively, the "Claimants"). The Claims and the related objections ("Objections") at issue in this Motion are listed in alphabetical order on Exhibit A to Vineet Sehgal's Declaration in Support of the Motion (the "Sehgal Declaration"), and in alphanumeric order by BLMIS account number on Exhibit B to the Sehgal Declaration.

## PRELIMINARY STATEMENT

The Trustee has reviewed the Objections with the assistance of his professionals and respectfully submits that the Objections should be overruled because they raise arguments that have been rejected by the courts and resolved in the Trustee's favor, including the Trustee's application of the cash in/cash out method for determining the net equity of accounts that received one or more transfers from another BLMIS account (the "Inter-Account Method").

Specifically, Claimants dispute the propriety of the Trustee's methodology for calculating net equity claims, and assert one or more of the following arguments: (i) the Trustee improperly determined net equity based on the cash in/cash out method (the "Net Investment Method"); (ii) the Trustee improperly determined the net equity of accounts that received one or more transfers from another BLMIS account by using the Inter-Account Method; (iii) the Trustee should have made adjustments to net equity to account for the length of time Claimants were invested with BLMIS (the "Time-Based Damages Adjustment"); and (iv) the Trustee should have made adjustments to net equity to account for Claimants' payments in compliance with the Internal Revenue Code (the "Tax-Based Adjustment").

Courts have approved the Trustee's use of the Net Investment Method[1], his rejection of a Time-Based Damages Adjustment,[2] and the United States Supreme Court has declined to address these issues.[3] Courts have also approved the Trustee's rejection of a Tax-Based Adjustment,[4] concluding that withdrawals of funds from BLMIS to avoid taxation still qualify as withdrawals under the Net Investment Method. In addition, the Second Circuit has validated the Inter-Account Method[5], which decision is now final and no longer subject to appeal. Thus, these issues have been finally decided and Claimants are not entitled to an adjustment to their net equity on these grounds.

Moreover, this Court recently approved the Trustee's determination of the claims at issue in the Trustee's *Fourteenth Omnibus Motion to Disallow Claims and Overrule Objections of Claimants Who Have No Net Equity* (*See* ECF No. 17517) and *Fifteenth Omnibus Motion to Overrule Objections of Claimants Who Invested More Than They Withdrew* (*See* ECF No. 17518) on similar grounds that are asserted by the Trustee in this Motion.

Since his appointment, the Trustee and his professionals have continued to investigate and evaluate claims against BLMIS and objections to the Trustee's claims determinations. In doing so, the Trustee evaluates whether particular claims and objections are ripe for final adjudication and whether any pending avoidance actions relate to those claims. Here, the Trustee respectfully submits that the Claims and Objections are ripe for final adjudication for the reasons

---

[1] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011).
[2] *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015).
[3] The Supreme Court denied claimants' petitions for writ of certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012) (Net Investment Method); *Ryan v. Picard*, 133 S. Ct. 24 (2012) (same); *Peshkin v. Picard*, 136 S. Ct. 218 (2015) (Time-Based Damages Adjustment).
[4] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014); s*ee infra* pp. 10-11.
[5] *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017).

set forth below and that there are no pending avoidance actions related thereto. The Trustee has, therefore, included within the scope of the Motion objections that challenge the Net Investment Method and the Inter-Account Method, and seek a Time-Based Damages Adjustment, and/or Tax-Based Adjustment, and has excluded those based on profit withdrawal transactions or a fact-specific argument relating to a customer.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to §§ 78eee(b)(2) and 78eee(b)(4) of the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq., ("SIPA")[6] and 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned *SEC v. Madoff*, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, it needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

---

[6] Subsequent references to SIPA shall omit "15 U.S.C."

Under SIPA, the Trustee is responsible for, among other things, recovering and distributing customer property to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the Trustee evaluates whether claimants are "customers," as defined in SIPA § 78*lll*(2), as they are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11).

For each customer with a valid net equity claim, SIPC advances funds to the SIPA trustee up to the amount of the customer's net equity, not to exceed $500,000 (the amount applicable to this case), if the customer's share of customer property does not make her whole. SIPA § 78fff-3(a). It is the customer's burden to demonstrate he or she is entitled to customer status. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")).

On December 23, 2008, this Court entered a Claims Procedures Order. (*See* ECF No. 12). Pursuant to that order, the Trustee determines claims eligible for customer protection under SIPA. *Id.* Claimants may object to the Trustee's determination of a claim by filing an objection in this Court, following which the Trustee requests a hearing date for the objection and notifies the objecting claimant thereof. *Id.*

**RELIEF REQUESTED**

By this Motion, the Trustee seeks the entry of an order affirming the Trustee's determination of the Claims in accordance with the Net Investment and Inter-Account Methods

5

and without a Time-Based Damages Adjustment or Tax-Based Adjustment. The Trustee respectfully requests that the Objections be overruled and the Claims identified on Exhibit A (by Claimant name) and Exhibit B (by BLMIS account number) to the Sehgal Declaration under the heading "*Claims and Objections*", be disallowed.

## THE NET INVESTMENT METHOD

Pursuant to SIPA § 78*lll*(11), the term "net equity" means the:

> dollar amount of the account or accounts of a customer, to be determined by – (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date.

SIPA § 78fff-2(b) directs the Trustee to make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee."

On this basis, the Trustee determined that net equity claims should be calculated according to the Net Investment Method: the Trustee calculated the amounts of money that customers deposited into their BLMIS accounts and subtracted any amounts they withdrew from their BLMIS accounts. Some claimants argued that the Trustee was instead required to calculate net equity using the amounts shown on their November 30, 2008 customer statements (the "Last Customer Statement Method").

This Court rejected the Last Customer Statement Method and upheld the Trustee's use of the Net Investment Method. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 134-35 (Bankr. S.D.N.Y. 2010). Pursuant to 28 U.S.C. § 158(d)(2), the Bankruptcy Court certified an immediate appeal of its decision, which the United States Court of Appeals for the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 234 (2d Cir. 2011). The

6

Second Circuit subsequently affirmed the Bankruptcy Court's decision. *Id.* at 235-36. Then, on June 25, 2012, the United States Supreme Court denied certiorari. *Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012). Therefore, a final order upholding the Trustee's use of the Net Investment Method has been issued.

## THE INTER-ACCOUNT METHOD

An inter-account transfer is a transfer between BLMIS customer accounts in which no new funds entered or left BLMIS. BLMIS recorded a book entry to internally adjust the balances of those accounts, but because there was no actual movement of cash, these book entries did not reflect any transfers of cash. Rather, the inter-account transfers merely changed the reported value of the purported equity maintained in the accounts. Such transfers consisted of either: (i) all principal; (ii) all fictitious profits; or (iii) a combination of principal and fictitious profits.

In order to calculate the net equity for accounts with inter-account transfers, the Trustee calculated the actual amount of principal available in the transferor account at the time of the transfer, and credited the transferee account up to that same amount. Consistent with the Net Investment Method, the Trustee did not include any fictitious gains in the net equity calculation. If the transferor account did not have any principal available at the time of the inter-account transfer, the transferee account was credited with $0 for that transfer. Similarly, if the transferor account had principal available at the time of the inter-account transfer, the transferee account was credited with the amount of the inter-account transfer, to the extent of that principal.

Several claimants argued that the Trustee was instead required to credit inter-account transfers at their full face value, as if actual money had been moved from one BLMIS account to another. In other words, these claimants argued that the Trustee should treat inter-account transfers as if they were external cash withdrawals by the transferor and external cash deposits

7

by the transferee.

This Court approved the Trustee's use of the Inter-Account Method and held that "increasing [Claimants'] net equity claims by giving them credit for the fictitious profits 'transferred' into their accounts contravenes the *Net Equity Decision*." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014). The Court explained:

> [l]ike the Net Investment Method on which it is based [the Inter-Account Method] . . . ignores the imaginary, fictitious profits . . . and conserves the limited customer pool available to pay net equity claims on an equitable basis. . . . Crediting the Objecting Claimants with the fictitious profits . . . essentially applies the Last Statement Method to the transferors' accounts, and suffers from the same shortcomings noted in the *Net Equity Decision*. It turns Madoff's fiction into a fact.

*Id.* at 53. Several claimants appealed and on January 14, 2016, the District Court issued its Opinion and Order affirming this Court's decision, stating that the Inter-Account Method "is the only method of calculating net equity in the context of inter-account transfers that is consistent with the Second Circuit's *Net Equity Decision*, and that it is not prohibited by law." *In re Bernard L. Madoff Inv. Secs., LLC,* 2016 WL 183492, at *2 (S.D.N.Y. Jan. 14, 2016). Several claimants further appealed to the Second Circuit. The Second Circuit affirmed the District Court's decision, *Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 697 F. App'x 708 (2d Cir. 2017), and no appeal was taken therefrom.[7] Accordingly, the Second Circuit's decision stands as final.

---

[7] The deadline to file a petition for writ of certiorari has expired. *See* 28 U.S.C. §§ 1254, 2101(c).

## **TIME-BASED DAMAGES ADJUSTMENT**

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation to allow for a Time-Based Damages Adjustment. Following the United States Supreme Court's decision denying certiorari on the Net Investment Method, the Trustee filed a motion to address objections that sought a Time-Based Damages Adjustment, arguing it is inconsistent with SIPA and therefore cannot be awarded. (*See* ECF No. 5038). In response, claimants raised numerous theories, all of which sought some increase in their customer claims based upon the amount of time they had invested with BLMIS. Most commonly, claimants relied on the New York prejudgment rate of 9% per annum, lost opportunity cost damages, or the consumer price index to take inflation into account.

The Bankruptcy Court ruled that, as a matter of law, SIPA does not permit the addition of time-based damages to net equity, and therefore upheld the Trustee's rejection of a Time-Based Damages Adjustment. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744, 754-55 (Bankr. S.D.N.Y. 2013). Following its decision, the Bankruptcy Court then certified an immediate appeal pursuant to 28 U.S.C. § 158(d)(2), which the Second Circuit granted. *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 78-79 (2d Cir. 2015). The Second Circuit affirmed the Bankruptcy Court's decision, holding that SIPA did not permit a Time-Based Damages Adjustment to "net equity" claims for customer property. *Id.* at 83. The Second Circuit concluded that such an adjustment would have gone beyond the scope of SIPA's intended protections and was inconsistent with SIPA's statutory framework. *Id.* at 79.

On October 5, 2015, the United States Supreme Court denied certiorari, and thus a final order has been issued upholding the Trustee's rejection of a Time-Based Damages Adjustment. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

**TAX-BASED ADJUSTMENT**

Certain Claimants filed Objections seeking to adjust the Trustee's net equity calculation to allow for Tax-Based Adjustments. Specifically, these Claimants argue that the Trustee should give them credit for payments they made to the Internal Revenue Service required under the Internal Revenue Code or mandatory withdrawals they received in connection with their individual retirement accounts.

The Trustee has not provided any claimants with "credit" for payments of taxes to the Internal Revenue Service in connection with withdrawals from their BLMIS accounts, nor has the Trustee provided claimants with "credit" for mandatory withdrawals from their individual retirement accounts. To do so would be inconsistent with SIPA and the decisions affirming the Trustee's application of the Net Investment Method and rejection of a Time-Based Damages Adjustment. Nor have Claimants cited to any authority supporting such "credit." The Trustee's ability to "claw back" or avoid transfers does not affect the net equity analysis, especially where Claimants subject to this Motion are not the subject of avoidance actions by the Trustee.

In fact, arguments for a Tax-Based Adjustment, like those raised in the Objections, have been considered and rejected in these proceedings. In the inter-account transfer decision, this Court addressed whether a claimant should receive credit for the payment of taxes on account of the "gains" realized in her BLMIS account. Citing to the Ninth Circuit's decision in *Donell v. Kowell*, the Court determined that she should not and stated "payment of taxes does not factor into the computation of fictitious profits." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 522 B.R. 41, 54 n.9 (Bankr. S.D.N.Y. 2014) (citing *Donell v. Kowell*, 533 F.3d 762, 778–79 (9th Cir. 2008), *cert. denied*, 555 U.S. 1047, 129 S. Ct. 640, 172 L. Ed. 2d 612 (2008)). In *Donnell v. Kowell*, the Ninth Circuit explained that unintended consequences would result from

10

allowing an offset for tax payments in defense of a fraudulent transfer: (i) expenses other than tax payments would have to be credited; (ii) there would be complex problems of proof and tracing; and (iii) equity does not permit an offset where a third party, the Internal Revenue Service, receives a benefit without any recourse to the other investors. 533 F.3d at 779. Like in *Donnell*, this Court should reject a Tax-Based Adjustment due to the unintended consequences that would result from allowing such an adjustment to Trustee's net equity calculation.

Similarly, this Court has addressed whether the Trustee can avoid BLMIS customers' mandatory withdrawals from their individual retirement accounts as fraudulent transfers. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729 (S.D.N.Y. 2012), supplemented (May 15, 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). The Court acknowledged that the defendants were required to receive the withdrawals from BLMIS under the rules imposed by the Internal Revenue Code, but nevertheless held that the Trustee could avoid those payments as fraudulent transfers. *Id*. The Court reasoned that unlike the alimony example the defendants touted, the Internal Revenue Code did not require BLMIS to make the payments to the defendants, the defendants were not legally entitled to the payments, and the avoidance of the transfers would not deprive third parties of their legal rights. *Id.* This analysis applies equally to the Trustee's determination that Claimants should not receive a Tax-Based Adjustment to their Claims. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 424 (S.D.N.Y. 2013) ("More fundamentally, the definition of net equity and the definition of claims that can provide 'value' to the customer property estate are inherently intertwined where the customer property estate is created as a priority estate intended to compensate customers only for their net-equity claims.").

## **NOTICE**

Notice of this Motion has been provided by U.S. mail, postage prepaid, or email to (i) all Claimants listed on Exhibit A to the Sehgal Declaration attached hereto (and their counsel) whose objections are pending before this Court; (ii) all parties included in the Master Service List as defined in the Order Establishing Notice Procedures (ECF No. 4560); (iii) all parties that have filed a notice of appearance in this case; (iv) the SEC; (v) the IRS; (vi) the United States Attorney for the Southern District of New York; and (vii) SIPC, pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required. In addition, the Trustee's pleadings filed in accordance with the schedule outlined above will be posted to the Trustee's website www.madofftrustee.com and are accessible, without charge, from that site.

No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

[CONTINUED ON NEXT PAGE – SPACE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto, overruling the Objections and disallowing the Claims, and granting such other and further relief as is just.

Dated: New York, New York  
       May 16, 2018

Respectfully submitted,

*/s/ David J. Sheehan*  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Nicholas J. Cremona  
Email: ncremona@bakerlaw.com  
Jorian L. Rose  
Email: jrose@bakerlaw.com  
Amy E. Vanderwal  
Email: avanderwal@bakerlaw.com  
Jason I. Blanchard  
Email: jblanchard@bakerlaw.com  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Tel: (212) 589-4200  
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff*