

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 1 5 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IRVING H. PICARD, *Trustee for the Liquidation of* :
*Bernard L. Madoff Investment Securities LLC*,
                                       :

                         Plaintiff, :

       -against- :

HELENE SAREN-LAWRENCE, CAROL :
NELSON, and CAROL NELSON, *individually and* :
*as Joint Tenant*, and STANLEY NELSON, :
*individually and as Joint Tenant*, :
                                       :

                      Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                            <u>MEMORANDUM DECISION AND</u>
                                  <u>ORDER</u>

                                17 Civ. 5157 (GBD)
                                17 Civ. 5162 (GBD)
                                17 Civ. 5163 (GBD)

GEORGE B. DANIELS, United States District Judge:

         Defendants Helene Saren-Lawrence, Carol Nelson, and Stanley Nelson, are parties to three

separate Adversary Proceedings commenced in the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court") brought by Plaintiff Irving H. Picard, in

his capacity as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 estate of Bernard L. Madoff

(collectively, the "BLMIS Estate") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*[1]  In each of the Adversary Proceedings, the Trustee seeks to avoid certain

transfers made to Defendants' investment advisory accounts at BLMIS as actually or

---

[1] The cases before this Court involving Defendants are: *Picard v. Saren-Lawrence*, No. 17 Civ.
5157 (GBD) ("*Saren-Lawrence*"); *Picard v. Nelson*, No. 17 Civ. 5162 (GBD) ("*Carol Nelson*")
(involving Defendant Carol Nelson); and *Picard v. Nelson*, No. 17 Civ. 5163 (GBD) ("*Nelson*")
(involving Defendants Carol Nelson and Stanley Nelson).  Though Defendants' cases have not
been formally consolidated, because the proceedings involving each of the Defendants are based
on similar facts, and the legal arguments raised in support of and in opposition to the Defendants'
motions are substantially identical, this Court addresses all three motions in this decision.

constructively fraudulent. Defendants each move to withdraw the reference for the Adversary

Proceedings on the grounds that they have demanded a jury trial and the Bankruptcy Court lacks

the authority to finally adjudicate their claims. (ECF No. 1) Defendants' motions to withdraw the

reference are DENIED.

## I.     **FACTUAL BACKGROUND**

On December 15, 2008, upon an application by the Securities Investment Protection

Corporation ("SIPC"), the BLMIS Estate was placed in SIPA liquidation. *See* Order, *SEC v.*

*Bernard L. Madoff & Bernard L. Madoff Inv. Sec. LLC*, No. 08 Civ. 10791 (LLS) (S.D.N.Y. Dec.

15, 2008), ECF No. 4. In such a proceeding, "[a] trustee's primary duty . . . is to liquidate the

broker-dealer and . . . satisfy claims made by or on behalf of the broker-dealer's customers for cash

balances." *In re Bernard L. Madoff Inv. Sec. LLC* ("*SIPC II*"), 740 F.3d 81, 85 (2d Cir. 2014). In

doing so, "[t]he Trustee allocates the customer property so that customers 'share ratably in such

customer property . . . to the extent of their respective net equities.'" *Id.* (quoting 15 U.S.C.

§ 78fff-2(c)(1)(B)). On December 23, 2008, Bankruptcy Court Judge Burton R. Lifland entered

an order (the "Claims Procedures Order") directing customers and other creditors of BLMIS to file

claims with the Trustee by July 2, 2009. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB) ("*BLMIS Estate Adv. Pro.*") (Bankr. S.D.N.Y. Dec.

23, 2008), ECF No. 12.

Pursuant to the Claims Procedures Order, Defendants filed customer claims seeking to

recover the balance in their BLMIS accounts reflected on their BLMIS account statements dated

November 30, 2008. The Trustee issued Notices of Determination denying each of the

Defendants' claims "because [the Defendant] ha[d] withdrawn more than was deposited into [the

Defendant's] account" and therefore did "not have a positive 'net equity.'" (*See, e.g.*, Objection

to Trustee's Determination of Claim, Ex. A at 3, *BLMIS Estate Adv. Pro.* (Bankr. S.D.N.Y. Nov. 6, 2009), ECF No. 646-1 (Notice of Determination discussing Claim Nos. 000531, 001098, and 001869 filed by Carol Nelson).)    The Defendants each filed objections, which are pending adjudication in the Bankruptcy Court. (*See* Trustee Mem. in Opp'n ("Opp'n"), *Saren-Lawrence*, ECF No. 16, at 4–5 (describing proofs of claim and objections filed by each of the Defendants).[2]) Subsequently, the Trustee instituted Adversary Proceedings against each of the Defendants to recover the amounts of transfers received by each Defendant in excess of their initial investments with BLMIS as actual or constructively fraudulent transfers. (*See* Compl., *Picard v. NTC & Co. LLP*, Adv. Pro. No. 10-4377 (SMB) ("*NTC Adv. Pro.*"), ECF No. 1; Compl., *Picard v. Nelson*, Adv. Pro. No. 10-4658 (SMB) ("*Nelson Adv. Pro*"), ECF No. 1; Compl., *Picard v. Saren-Lawrence*, Adv. Pro. No 10-4898 (SMB) ("*Saren-Lawrence Adv. Pro.*"), ECF No. 1.)    In their answers to the complaints filed in the Adversary Proceedings, each of the Defendants demanded a jury trial and raised various affirmative defenses, but did not assert any counterclaims. (*See* Answer and Affirmative Defenses, *Saren-Lawrence Adv. Pro.*, ECF No. 21; Answer and Affirmative Defenses, *Nelson Adv. Pro.*, ECF No. 30; Answer and Affirmative Defenses, *NTC Adv. Pro.*, ECF No. 31.)

Defendants assert that the Adversary Proceedings are ready for trial, and seek to withdraw the reference from the Bankruptcy Court to this Court on the grounds that they have demanded jury trials and the Bankruptcy Court cannot enter final judgments in the proceedings. (*See* Def. Mem. in Supp., *Carol Nelson*, ECF No. 1-1; Def. Mem. in Supp., *Nelson*, ECF No. 1-1; Def. Mem.

---

[2] The Trustee filed a single memorandum of law in opposition to the Defendants' motions. (*See* Opp'n at 1–2.)

in Supp., *Saren-Lawrence*, ECF No. 1-1 (collectively, "Defs. Mem. in Supp."), at 1.[3]) However,

Defendants' jury trial demands are without merit and, notwithstanding Defendants' contentions to

the contrary, the Bankruptcy Court has the authority to finally adjudicate the Adversary

Proceedings. As discussed further below, no other relevant factors support withdrawal of the

reference.

## II.   LEGAL STANDARDS FOR PERMISSIVE WITHDRAWAL[4]

Federal district courts have original jurisdiction over "all civil proceedings arising under

title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A district court may

refer cases and proceedings over which it has such jurisdiction to the bankruptcy court in the

district. *See* 28 U.S.C. § 157(a). This district has a standing order that provides for automatic

reference of such cases and proceedings to the Bankruptcy Court. *See* In re: Standing Order of

Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012). "The district court may withdraw,

in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . on timely motion

of any party, for cause shown." 28 U.S.C. § 157(d).

In *In re Orion Pictures Corp.*, the Second Circuit set forth several factors (the "*Orion*

factors") that courts should consider in determining whether "cause" exists to withdraw the

---

[3] Though the Defendants filed three separate memoranda of law in support of their motions to
withdraw the reference, the arguments and pagination in each are substantively identical. Thus,
all three are collectively cited herein as "Defs. Mem. in Supp." Defendants filed a single
memorandum of law in reply. (*See* Defs. Mem. in Reply ("Reply"), *Saren-Lawrence* (S.D.N.Y.
Dec. 6, 2017), ECF No. 17, at 1 & n.1.)

[4] Withdrawal of the reference is mandatory in cases that "require consideration of both title 11 and
other laws of the United States regulating organizations or activities affecting interstate
commerce." 28 U.S.C. § 157(d). However, that provision has been "construed narrowly" by the
Second Circuit to apply only in "cases where substantial and material consideration of non-
Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re
Ionosphere Clubs, Inc.*, 922 F.3d 984, 995 (2d Cir. 1990). Defendants do not argue that any non-
Bankruptcy Code federal statutes apply here.

reference. 4 F.3d 1095, 1101 (2d Cir. 1993). The Second Circuit explained that the district court should "first evaluate whether the claim is core or non-core." *Id.* The term "core" refers to "claims . . . within the scope of the historical bankruptcy court's power." *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 n.7 (2014). "Section 157 [of Title 28 of the United States Code] . . . contains a non-exhaustive list of "core proceedings," *In re CBI Holding Co.*, 529 F.3d 432, 460 (2d Cir. 2008), which include, among others, "allowance or disallowance of claims against the estate" and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2). "'Non-core' proceedings . . . are 'not . . . core' but are 'otherwise related to a case under title 11.'" *Executive Benefits Ins. Agency*, 134 S. Ct. at 2172.

"The threshold core/non-core evaluation . . . determines the relevance of the parties' jury trial rights to deciding a motion to withdraw the reference." *In re Orion Pictures Corp.*, 4 F.3d at 1101. "[A] bankruptcy court has the power to hold jury trials in core proceedings," but "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Id.* However, "[t]he mere presence of a jury demand in a case does not mandate withdrawal of the reference, as a district court . . . might decide that a case is unlikely to reach trial . . . or that the jury demand is without merit.'" *In re Murphy*, 482 F. App'x at 628 (internal quotation marks and citation omitted).

Prior to the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), whether a claim was labeled "core" or "non-core" also determined whether a bankruptcy court had final adjudicative authority over a claim. If a claim was "core," the bankruptcy court was empowered to enter a final judgment on the claim. *See* 28 U.S.C. § 157(b)(1). If a claim was "non-core," the bankruptcy court would "submit proposed findings of fact and conclusions of law to the district court," and the district court would enter a final judgment on the claim. *Id.* § 157(c)(1).

In *Stern*, the Supreme Court recognized that even if a bankruptcy court has "statutory authority to enter judgment" on a "core" claim under § 157, it may "lack[] the constitutional authority to do so." 564 U.S. at 469. Thus, "post-*Stern*, district courts must further analyze whether the nature of the core proceeding allows the [b]ankruptcy [c]ourt to issue a final judgment." *In re Madison Bentley Assocs., LLC*, No. 16 Civ. 1083 (GBD), 2016 WL 5793990, at *3 (S.D.N.Y. Sept. 27, 2016). In conducting this analysis, courts consider: "(1) whether the counterclaim involved a public or private right; (2) whether the process of adjudicating the creditor's proof of claim would resolve the counterclaim; and (3) whether the parties consented to final adjudication by the bankruptcy court." *Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 528 (S.D.N.Y. 2012) (citing *Stern*, 564 U.S. at 462). If it lacks final adjudicative authority over a claim, "the bankruptcy court simply treats the claim[] as non-core." *Executive Benefits Ins. Agency*, 134 S. Ct. at 2173.

In determining whether "cause" exists to withdraw the reference, in addition to considering whether a claim is core or non-core, whether a jury demand has been made, and whether the bankruptcy court has final adjudicative authority, courts also "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101.

## III.    WITHDRAWAL OF THE REFERENCE IS UNWARRANTED

### A. Defendants' Jury Demand is Without Merit

Here, Defendants assert that withdrawal of the reference is warranted, in part, because they have demanded a jury trial. (*See* Defs. Mem. in Supp. at 2–3.) However, their demands are without merit. "Under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's

preference [or fraudulent conveyance] claim depends upon whether the creditor has submitted a claim against the estate." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989).[5] When creditors "have not filed claims against the estate, [a bankruptcy trustee's] fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims,'" and is not "integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest [the creditors] of their Seventh Amendment right to a trial by jury." *Id.* (quoting *Katchen v. Landy*, 382 U.S. 323, 336 (1966))

By contrast, a creditor who has filed a claim against the estate has "trigger[ed] the process of 'allowance and disallowance of claims.'" *Langenkamp*, 498 U.S. at 44. "[I]f a creditor who has filed . . . a claim is met with an adversary proceeding, the resolution of which affects the equitable restructuring of debtor-creditor or creditor-creditor relations, then the creditor loses its right to a jury trial even with regard to traditional legal claims." *In re CBI Holding Co., Inc.*, 529 F.3d at 466; *see also In re Coated Sales, Inc.*, 119 B.R. 452, 455–56 (Bankr. S.D.N.Y. 1990) ("[W]hen the claimant invokes the equitable jurisdiction of the bankruptcy court to establish its right to participate in distribution, it cannot, thereafter, object to the court's necessary determination of any misappropriations by the claimant. This is true even though the debtor's claim may be legal in nature, and the Seventh Amendment might have entitled the creditor to a

---

[5] "[T]he Supreme Court does not appear to make a distinction between fraudulent transfer actions and preference actions" for purposes of the Seventh Amendment. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 10 Civ. 842 (AJF), 2012 WL 987539, at *4 (N.D. Tex. Mar. 21, 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014). *Granfinanciera* concerned a fraudulent transfer, but cited to the Court's prior decisions regarding preferential transfers without drawing a distinction between the two. *See Granfinanciera*, 492 U.S. at 58–59 (citing *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932); *Katchen v. Landy*, 382 U.S. 323 (1966)). Similarly, the Court's subsequent decision in *Langenkamp v. Culp*, 498 U.S. 42 (1990), which concerned a preferential transfer, cited to *Granfinanciera* without distinguishing between preferential and fraudulent transfers for purposes of the Seventh Amendment. *See Langenkamp*, 498 U.S. at 44–45 (citing *Granfinanciera*, 492 U.S. at 57–59).

jury trial had it not submitted claims against the estate."). "An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations." *Germain v. Conn. Nat'l Bank*, 988 F.3d 1323, 1329 (2d Cir. 1993). Thus, when a creditor has filed a proof of claim, "[t]he jury trial right is waived as to any matter that the [Bankruptcy] Court would be required to resolve in order to determine the proof of claim's validity or amount." *In re WorldCom, Inc.*, 378 B.R. 745, 753 (Bankr. S.D.N.Y. 2007).

The process of allowance and disallowance of claims is governed by § 502 of Title 11 of the United States Code. Under § 502, "[a] claim or interest, proof of which is filed . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim," subject to certain exceptions and exclusions. *Id.* § 502(b). However, under § 502(d), "[n]otwithstanding subsections (a) and (b), the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under" several sections of Title 11— including sections 547 and 548, which relate to preferential and fraudulent transfers, respectively—"unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable."[6] In other words, "[§] 502(d) functions as an ordering provision. Its fundamental logic is that the estate should receive the property due to it before a liable creditor of the estate may obtain payment on its own claims." *SIPC IV*, 513 B.R. at 444.

---

[6] Though this case involves a SIPA proceeding, rather than the bankruptcy case itself, "[a] statement of claim in a SIPA proceeding is the functional equivalent of a proof of claim in a bankruptcy case: in both cases a trustee has the right to contest a claim, and claims are ultimately resolved by a court." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*SIPC IV*"), 513 B.R. 437, 443 (S.D.N.Y. 2014). Thus, "[§] 502(d) applies to customer claims brought under SIPA." *Id.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 1 5 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IRVING H. PICARD, *Trustee for the Liquidation of* :
*Bernard L. Madoff Investment Securities LLC*,                     :
                                                                   :
                                        Plaintiff,                 :
                                                                   :
            -against-                                              :
                                                                   :
HELENE SAREN-LAWRENCE, CAROL                                       :
NELSON, and CAROL NELSON, *individually and*                      :
*as Joint Tenant*, and STANLEY NELSON,                             :
*individually and as Joint Tenant*,                                :
                                                                   :
                                        Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION AND
ORDER

17 Civ. 5157 (GBD)
17 Civ. 5162 (GBD)
17 Civ. 5163 (GBD)

GEORGE B. DANIELS, United States District Judge:

Defendants Helene Saren-Lawrence, Carol Nelson, and Stanley Nelson, are parties to three

separate Adversary Proceedings commenced in the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court") brought by Plaintiff Irving H. Picard, in

his capacity as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 estate of Bernard L. Madoff

(collectively, the "BLMIS Estate") under the Securities Investor Protection Act ("SIPA"), 15

U.S.C. § 78aaa *et seq.*[1]  In each of the Adversary Proceedings, the Trustee seeks to avoid certain

transfers made to Defendants' investment advisory accounts at BLMIS as actually or

---

[1] The cases before this Court involving Defendants are: *Picard v. Saren-Lawrence*, No. 17 Civ.
5157 (GBD) ("*Saren-Lawrence*"); *Picard v. Nelson*, No. 17 Civ. 5162 (GBD) ("*Carol Nelson*")
(involving Defendant Carol Nelson); and *Picard v. Nelson*, No. 17 Civ. 5163 (GBD) ("*Nelson*")
(involving Defendants Carol Nelson and Stanley Nelson).  Though Defendants' cases have not
been formally consolidated, because the proceedings involving each of the Defendants are based
on similar facts, and the legal arguments raised in support of and in opposition to the Defendants'
motions are substantially identical, this Court addresses all three motions in this decision.

constructively fraudulent. Defendants each move to withdraw the reference for the Adversary

Proceedings on the grounds that they have demanded a jury trial and the Bankruptcy Court lacks

the authority to finally adjudicate their claims. (ECF No. 1) Defendants' motions to withdraw the

reference are DENIED.

## I.      FACTUAL BACKGROUND

On December 15, 2008, upon an application by the Securities Investment Protection

Corporation ("SIPC"), the BLMIS Estate was placed in SIPA liquidation. *See* Order, *SEC v.*

*Bernard L. Madoff & Bernard L. Madoff Inv. Sec. LLC*, No. 08 Civ. 10791 (LLS) (S.D.N.Y. Dec.

15, 2008), ECF No. 4. In such a proceeding, "[a] trustee's primary duty . . . is to liquidate the

broker-dealer and . . . satisfy claims made by or on behalf of the broker-dealer's customers for cash

balances." *In re Bernard L. Madoff Inv. Sec. LLC* ("*SIPC II*"), 740 F.3d 81, 85 (2d Cir. 2014). In

doing so, "[t]he Trustee allocates the customer property so that customers 'share ratably in such

customer property . . . to the extent of their respective net equities.'" *Id.* (quoting 15 U.S.C.

§ 78fff-2(c)(1)(B)). On December 23, 2008, Bankruptcy Court Judge Burton R. Lifland entered

an order (the "Claims Procedures Order") directing customers and other creditors of BLMIS to file

claims with the Trustee by July 2, 2009. *See* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB) ("*BLMIS Estate Adv. Pro.*") (Bankr. S.D.N.Y. Dec.

23, 2008), ECF No. 12.

Pursuant to the Claims Procedures Order, Defendants filed customer claims seeking to

recover the balance in their BLMIS accounts reflected on their BLMIS account statements dated

November 30, 2008. The Trustee issued Notices of Determination denying each of the

Defendants' claims "because [the Defendant] ha[d] withdrawn more than was deposited into [the

Defendant's] account" and therefore did "not have a positive 'net equity.'" (*See, e.g.*, Objection

to Trustee's Determination of Claim, Ex. A at 3, *BLMIS Estate Adv. Pro.* (Bankr. S.D.N.Y. Nov.

6, 2009), ECF No. 646-1 (Notice of Determination discussing Claim Nos. 000531, 001098, and

001869 filed by Carol Nelson).)   The Defendants each filed objections, which are pending

adjudication in the Bankruptcy Court. (*See* Trustee Mem. in Opp'n ("Opp'n"), *Saren-Lawrence*,

ECF No. 16, at 4–5 (describing proofs of claim and objections filed by each of the Defendants).[2])

Subsequently, the Trustee instituted Adversary Proceedings against each of the Defendants to

recover the amounts of transfers received by each Defendant in excess of their initial investments

with BLMIS as actual or constructively fraudulent transfers. (*See* Compl., *Picard v. NTC & Co.

LLP*, Adv. Pro. No. 10-4377 (SMB) ("*NTC Adv. Pro.*"), ECF No. 1; Compl., *Picard v. Nelson*,

Adv. Pro. No. 10-4658 (SMB) ("*Nelson Adv. Pro*"), ECF No. 1; Compl., *Picard v. Saren-

Lawrence*, Adv. Pro. No 10-4898 (SMB) ("*Saren-Lawrence Adv. Pro.*"), ECF No. 1.)   In their

answers to the complaints filed in the Adversary Proceedings, each of the Defendants demanded a

jury trial and raised various affirmative defenses, but did not assert any counterclaims. (*See*

Answer and Affirmative Defenses, *Saren-Lawrence Adv. Pro.*, ECF No. 21; Answer and

Affirmative Defenses, *Nelson Adv. Pro.*, ECF No. 30; Answer and Affirmative Defenses, *NTC

Adv. Pro.*, ECF No. 31.)

Defendants assert that the Adversary Proceedings are ready for trial, and seek to withdraw

the reference from the Bankruptcy Court to this Court on the grounds that they have demanded

jury trials and the Bankruptcy Court cannot enter final judgments in the proceedings. (*See* Def.

Mem. in Supp., *Carol Nelson*, ECF No. 1-1; Def. Mem. in Supp., *Nelson*, ECF No. 1-1; Def. Mem.

---

[2] The Trustee filed a single memorandum of law in opposition to the Defendants' motions. (*See*
Opp'n at 1–2.)

in Supp., *Saren-Lawrence*, ECF No. 1-1 (collectively, "Defs. Mem. in Supp."), at 1.[3]) However, Defendants' jury trial demands are without merit and, notwithstanding Defendants' contentions to the contrary, the Bankruptcy Court has the authority to finally adjudicate the Adversary Proceedings. As discussed further below, no other relevant factors support withdrawal of the reference.

## II.    LEGAL STANDARDS FOR PERMISSIVE WITHDRAWAL[4]

Federal district courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. A district court may refer cases and proceedings over which it has such jurisdiction to the bankruptcy court in the district. *See* 28 U.S.C. § 157(a). This district has a standing order that provides for automatic reference of such cases and proceedings to the Bankruptcy Court. *See* In re: Standing Order of Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012). "The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] . . . on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

In *In re Orion Pictures Corp.*, the Second Circuit set forth several factors (the "*Orion* factors") that courts should consider in determining whether "cause" exists to withdraw the

---

[3] Though the Defendants filed three separate memoranda of law in support of their motions to withdraw the reference, the arguments and pagination in each are substantively identical. Thus, all three are collectively cited herein as "Defs. Mem. in Supp." Defendants filed a single memorandum of law in reply. (*See* Defs. Mem. in Reply ("Reply"), *Saren-Lawrence* (S.D.N.Y. Dec. 6, 2017), ECF No. 17, at 1 & n.1.)

[4] Withdrawal of the reference is mandatory in cases that "require consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). However, that provision has been "construed narrowly" by the Second Circuit to apply only in "cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.3d 984, 995 (2d Cir. 1990). Defendants do not argue that any non-Bankruptcy Code federal statutes apply here.

4

reference. 4 F.3d 1095, 1101 (2d Cir. 1993). The Second Circuit explained that the district court should "first evaluate whether the claim is core or non-core." *Id.* The term "core" refers to "claims . . . within the scope of the historical bankruptcy court's power." *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 n.7 (2014). "Section 157 [of Title 28 of the United States Code] . . . contains a non-exhaustive list of "core proceedings," *In re CBI Holding Co.*, 529 F.3d 432, 460 (2d Cir. 2008), which include, among others, "allowance or disallowance of claims against the estate" and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2). "'Non-core' proceedings . . . are 'not . . . core' but are 'otherwise related to a case under title 11.'" *Executive Benefits Ins. Agency*, 134 S. Ct. at 2172.

"The threshold core/non-core evaluation . . . determines the relevance of the parties' jury trial rights to deciding a motion to withdraw the reference." *In re Orion Pictures Corp.*, 4 F.3d at 1101. "[A] bankruptcy court has the power to hold jury trials in core proceedings," but "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Id.* However, "[t]he mere presence of a jury demand in a case does not mandate withdrawal of the reference, as a district court . . . might decide that a case is unlikely to reach trial . . . or that the jury demand is without merit.'" *In re Murphy*, 482 F. App'x at 628 (internal quotation marks and citation omitted).

Prior to the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), whether a claim was labeled "core" or "non-core" also determined whether a bankruptcy court had final adjudicative authority over a claim. If a claim was "core," the bankruptcy court was empowered to enter a final judgment on the claim. *See* 28 U.S.C. § 157(b)(1). If a claim was "non-core," the bankruptcy court would "submit proposed findings of fact and conclusions of law to the district court," and the district court would enter a final judgment on the claim. *Id.* § 157(c)(1).

In *Stern*, the Supreme Court recognized that even if a bankruptcy court has "statutory authority to enter judgment" on a "core" claim under § 157, it may "lack[] the constitutional authority to do so." 564 U.S. at 469. Thus, "post-*Stern*, district courts must further analyze whether the nature of the core proceeding allows the [b]ankruptcy [c]ourt to issue a final judgment." *In re Madison Bentley Assocs., LLC*, No. 16 Civ. 1083 (GBD), 2016 WL 5793990, at *3 (S.D.N.Y. Sept. 27, 2016). In conducting this analysis, courts consider: "(1) whether the counterclaim involved a public or private right; (2) whether the process of adjudicating the creditor's proof of claim would resolve the counterclaim; and (3) whether the parties consented to final adjudication by the bankruptcy court." *Dynegy Danskammer, LLC v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 528 (S.D.N.Y. 2012) (citing *Stern*, 564 U.S. at 462). If it lacks final adjudicative authority over a claim, "the bankruptcy court simply treats the claim[] as non-core." *Executive Benefits Ins. Agency*, 134 S. Ct. at 2173.

In determining whether "cause" exists to withdraw the reference, in addition to considering whether a claim is core or non-core, whether a jury demand has been made, and whether the bankruptcy court has final adjudicative authority, courts also "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101.

## III.    WITHDRAWAL OF THE REFERENCE IS UNWARRANTED

### A. Defendants' Jury Demand is Without Merit

Here, Defendants assert that withdrawal of the reference is warranted, in part, because they have demanded a jury trial. (*See* Defs. Mem. in Supp. at 2–3.) However, their demands are without merit. "Under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's

6

preference [or fraudulent conveyance] claim depends upon whether the creditor has submitted a claim against the estate." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989).[5] When creditors "have not filed claims against the estate, [a bankruptcy trustee's] fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims,'" and is not "integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest [the creditors] of their Seventh Amendment right to a trial by jury." *Id.* (quoting *Katchen v. Landy*, 382 U.S. 323, 336 (1966))

By contrast, a creditor who has filed a claim against the estate has "trigger[ed] the process of 'allowance and disallowance of claims.'" *Langenkamp*, 498 U.S. at 44. "[I]f a creditor who has filed . . . a claim is met with an adversary proceeding, the resolution of which affects the equitable restructuring of debtor-creditor or creditor-creditor relations, then the creditor loses its right to a jury trial even with regard to traditional legal claims." *In re CBI Holding Co., Inc.*, 529 F.3d at 466; *see also In re Coated Sales, Inc.*, 119 B.R. 452, 455–56 (Bankr. S.D.N.Y. 1990) ("[W]hen the claimant invokes the equitable jurisdiction of the bankruptcy court to establish its right to participate in distribution, it cannot, thereafter, object to the court's necessary determination of any misappropriations by the claimant. This is true even though the debtor's claim may be legal in nature, and the Seventh Amendment might have entitled the creditor to a

---

[5] "[T]he Supreme Court does not appear to make a distinction between fraudulent transfer actions and preference actions" for purposes of the Seventh Amendment. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 10 Civ. 842 (AJF), 2012 WL 987539, at *4 (N.D. Tex. Mar. 21, 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014). *Granfinanciera* concerned a fraudulent transfer, but cited to the Court's prior decisions regarding preferential transfers without drawing a distinction between the two. *See Granfinanciera*, 492 U.S. at 58–59 (citing *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932); *Katchen v. Landy*, 382 U.S. 323 (1966)). Similarly, the Court's subsequent decision in *Langenkamp v. Culp*, 498 U.S. 42 (1990), which concerned a preferential transfer, cited to *Granfinanciera* without distinguishing between preferential and fraudulent transfers for purposes of the Seventh Amendment. *See Langenkamp*, 498 U.S. at 44–45 (citing *Granfinanciera*, 492 U.S. at 57–59).

jury trial had it not submitted claims against the estate."). "An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations." *Germain v. Conn. Nat'l Bank*, 988 F.3d 1323, 1329 (2d Cir. 1993). Thus, when a creditor has filed a proof of claim, "[t]he jury trial right is waived as to any matter that the [Bankruptcy] Court would be required to resolve in order to determine the proof of claim's validity or amount." *In re WorldCom, Inc.*, 378 B.R. 745, 753 (Bankr. S.D.N.Y. 2007).

The process of allowance and disallowance of claims is governed by § 502 of Title 11 of the United States Code. Under § 502, "[a] claim or interest, proof of which is filed . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim," subject to certain exceptions and exclusions. *Id.* § 502(b). However, under § 502(d), "[n]otwithstanding subsections (a) and (b), the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under" several sections of Title 11—including sections 547 and 548, which relate to preferential and fraudulent transfers, respectively—"unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable."[6] In other words, "[§] 502(d) functions as an ordering provision. Its fundamental logic is that the estate should receive the property due to it before a liable creditor of the estate may obtain payment on its own claims." *SIPC IV*, 513 B.R. at 444.

---

[6] Though this case involves a SIPA proceeding, rather than the bankruptcy case itself, "[a] statement of claim in a SIPA proceeding is the functional equivalent of a proof of claim in a bankruptcy case: in both cases a trustee has the right to contest a claim, and claims are ultimately resolved by a court." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*SIPC IV*"), 513 B.R. 437, 443 (S.D.N.Y. 2014). Thus, "[§] 502(d) applies to customer claims brought under SIPA." *Id.*

"Because 11 U.S.C. § 502(d) provides that the claims of pre-petition fraudulent transfers may be disallowed," an adversary proceeding that invokes "11 U.S.C. § 548 is part of the claims allowance process . . . and does not carry a jury trial right." *Glinka v. Abraham & Rose Co.*, No. 93 Civ. 291, 1994 WL 905714, at *11 (D. Vt. June 6, 1994); *see also In re Coated Sales, Inc.*, 119 B.R. at 457–58 (finding that, in filing a proof of claim, a claimant "invoked th[e] [Bankruptcy] Court's jurisdiction with regard to any matters affecting the disposition of those claims," including an action to avoid preferential transfers).

Here, Defendants have filed proofs of claim against the BLMIS Estate. (*See* Opp'n at 4–5.) Defendants argue that "[t]he Trustee's claims allowance process was concluded in 2009," when the Trustee issued "determination letters rejecting Defendants' claims." (Reply at 2.) But Defendants are incorrect. The Trustee's issuance of determinations did not conclude the claims allowance process, because Defendants filed objections. (*See* Opp'n at 4–5.) Thus, Defendants' proofs of claim remain subject to adjudication by the Bankruptcy Court. *See* 28 U.S.C. § 502(b); *cf. In re Bernard L. Madoff Sec. LLC*, 525 B.R. 871, 880, 888 (Bankr. S.D.N.Y. 2015) (finding that, where "[t]he Trustee denied the claims in writing, and Defendants never filed an objection, . . . their customer claims have been finally disallowed" and "disposition of the adversary proceeding will not affect their disallowed claims"). In filing their proofs of claim, Defendants have "triggered the process of allowance and disallowance of claims," and they have been met with Adversary Proceedings that "bear directly on the allowance of a claim." *Germain*, 988 F.3d at 1329. Because Defendants have "invoked th[e] Bankruptcy Court's jurisdiction with regard to any matters affecting the disposition of [their] claims," including the Adversary Proceedings, they have no right to a jury trial.

**B. The Bankruptcy Court Has the Authority to Adjudicate the Adversary Proceedings**

Though "[r]esolution of an avoidance action brought under SIPA" generally "require[s] an exercise of the judicial power reserved for Article III courts," where "the Bankruptcy Court must resolve a § 502(d) claim . . . , it may also finally decide avoidance actions to the extent that those actions raise the same issues as the § 502(d) claim and thus would 'necessarily' be resolved by it." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*SIPC I*"), 490 B.R. 46, 54 (S.D.N.Y. 2013). In other words, "[i]f the defendant has filed a claim and the Trustee is seeking to disallow the claim under § 502(d) based on the defendant's receipt of a fraudulent transfer, [the Bankruptcy] Court can enter a final judgment on the fraudulent transfer claim." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*SIPC V*"), 531 B.R. 439, 455 (Bankr. S.D.N.Y. 2015); *see also SIPC II*, 740 F.3d at 95 (finding that where "defendants filed a proof of claim against the BLMIS [E]state" and, "[i]n order to rule on that claim, the Bankruptcy Court was required to first resolve [a] fraudulent transfer issue," the Bankruptcy Court could adjudicate both).

In ruling on the objections to the Trustee's determinations on Defendants' proofs of claim, the Bankruptcy Court will have to determine whether the transfers to the Defendants are voidable on the grounds that they are actually or constructively fraudulent under 28 U.S.C. § 548. *See* 28 U.S.C. § 502. The resolution of that issue will also determine the result of the Adversary Proceedings, which seek the return of a portion of the funds transferred to the Defendants on the same grounds. (*See* Compl. ¶¶ 46–60, *Nelson Adv. Proc.*; Compl. ¶¶ 48–62, *NTC Adv. Pro.*; Compl. ¶¶ 44–58, *Saren-Lawrence Adv. Pro.*[7]) Because the Defendants have filed claims and the

---

[7] In addition to claims brought pursuant to § 548 of Title 11, which seek to recover transfers made within two years of the bankruptcy petition by the estate of Bernard L. Madoff, the Complaints also assert additional claims under New York Debtor and Creditor Law seeking to recover transfers made within six years of the filing of the bankruptcy decision. (*See* Compl. ¶¶ 61–83, *Nelson Adv. Pro.*; Compl. ¶¶ 63–91, *NTC Adv. Pro.*; Compl. ¶¶ 59–81, *Saren-Lawrence Adv. Pro.*) However,

"Trustee is seeking to disallow the claim[s] under § 502(d) based on the [Defendants'] receipt[s] of . . . fraudulent transfer[s]," the Bankruptcy Court has the constitutional authority to adjudicate the Adversary Proceedings. *SIPC I*, 490 B.R. at 54.

### C.    Other Relevant Factors Weigh Against Withdrawal of the Reference

As noted above, actions to avoid fraudulent transfers are "core" proceedings. *See* 28 U.S.C. § 157(b)(2)(H).  However, "[w]hile the core/non-core distinction is an important factor, courts have repeatedly emphasized that this factor is not dispositive of a motion to withdraw a reference." *In re Lehman Bros. Holdings Inc.* ("*Lehman I*"), 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014).  The other *Orion* factors—*i.e.*, "the efficient use of judicial resources, delay[,] and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors"—must also be considered. *See In re: FKF 3, LLC*, No. 13 Civ. 3601 (KMK), 2016 WL 4540842, at *5 (S.D.N.Y. Aug. 30, 2016) (quoting *In re Orion Pictures Corp.*, 4 F.3d at 1101) (alteration in original).

When "other judges in this District have recognized [a Bankruptcy Court judge's] great expertise over the facts and claims" in related proceedings, considerations of efficiency have weighed against withdrawal of the reference. *Residential Funding Co., LLC v. UBS Real Estate Sec., Inc.*, No. 14 Civ. 3039 (GBD), 2015 WL 1062264, at *4 (S.D.N.Y. Mar. 6, 2015).  The Bankruptcy Court's "familiarity with the proceedings at issue and application of the relevant provisions of the Bankruptcy Code" may also cause considerations of delay and costs to the parties to weigh against withdrawal of the reference. *In re Lehman Bros. Holdings Inc.* ("*Lehman II*"), 532 B.R. 203, 215 (S.D.N.Y. 2015). For similar reasons, when "[t]he [B]ankruptcy [C]ourt's

---

a decision issued after the Complaints were filed found that the Trustee "can recover fraudulent transfers under § 548(a)(1) only when the transfers took place within two years of the petition date." *In re Bernard L. Madoff Inv. Sec. LLC* ("*SIPC III*"), 773 F.3d 411, 423 (2d Cir. 2014).

administration of [a particular matter] has been extensive," adjudicating a related matter in that bankruptcy court "will help promote uniform application of bankruptcy laws." *Id.*; *see also In re Extended Stay, Inc.*, 466 B.R. 188, 206–07 (S.D.N.Y. 2011) (finding "judicial economy would be promoted" by denying withdrawal where the Bankruptcy Court was "already familiar with the extensive record in this case" and "largely for the same reasons, the policy promoting the uniform application of bankruptcy law also weighs against withdrawal"). When, as here, denying withdrawal would "keep the actions in the forum that plaintiffs filed them in," any "assertion that withdrawal would prevent forum shopping is baseless." *In re Extended Stay, Inc.*, 466 B.R. at 206. Moreover, "[a]s a general rule, 'courts should employ withdrawal judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.'" *In re Money Ctrs. of Am., Inc.*, 579 B.R. 710, 710 (S.D.N.Y. 2016) (quoting *In re Formica Corp.*, 305 B.R. 147, 149 (S.D.N.Y. 2004)).

Here, none of the *Orion* factors favor withdrawal. The Adversary Proceedings are core, and are currently before the Honorable Stuart M. Bernstein of the Bankruptcy Court, who is overseeing the BLMIS SIPA liquidation. Considerations of efficiency weigh against withdrawal because, as another judge in this District has noted, Judge Bernstein has great familiarity with the facts regarding the BLMIS Estate. *See Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331 (CM) (MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) ("Judge Bernstein's intimate familiarity with the Madoff matter causes this court to view his conclusions with great deference."). Judge Bernstein is also familiar with the specific facts at issue here, as he has presided over these Adversary Proceedings thus far. He has also handled "numerous adversary proceedings to avoid and recover transfers BLMIS made to certain [other] customers," *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*SIPC VI*"), 568 B.R. 203, 205 (S.D.N.Y.

2017), and is therefore familiar with the "proceedings at issue and application of the relevant

provisions of the Bankruptcy Code." *Lehman II*, 532 B.R. at 215. Thus, considerations of delay

and costs to the parties and the promotion of uniform application of bankruptcy laws also weigh

against withdrawal of the reference. Finally, considerations of forum shopping weigh against

withdrawal of the reference, because denying withdrawal will keep the action in the forum in which

it was filed, *see In re Extended Stay*, 466 B.R. at 206, and will discourage other claimants from

using withdrawal as a "litigation tactic" in hopes of achieving more favorable results in adversary

proceedings. *In re Money Ctrs. of Am., Inc.*, 579 B.R.at 710.

## IV.    **CONCLUSION**

Defendants' motions to withdraw the reference are DENIED. The Clerk of Court is

directed to close the motions accordingly.


Dated: New York, New York
       May 15, 2018


\

                                        SO ORDERED.

                                        GEORGE B. DANIELS
                                        United States District Judge

13