Peter Moskowitz Pro se

Redacted

Hearing Date: June 27, 2018

Objections Due: June 1, 2018

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

SECURITIES INVESTOR PROTECTION CORPORATION,

Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT SECURITIES LLC.

Defendant.

In re:

BERNARD L. MADOFF,

Debtor.

Adv. Pro No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

WRITTEN OBJECTION TO SIPC APPOINTED TRUSTEE'S MOTION TO DISALLOW MY SIPC CLAIM FOR RETURN OF MY PROPERTY STOLEN FROM BMLIS, WITH AN ADDENDUM TO A PREVIOUS OBJECTION FILED IN 2009.

History of my involvement with Madoff:

When I was young boy growing up in the Bronx my father said to me " Peter, don't ever buy stocks. During the depression people used their stock certificates as wall paper. That's how worthless the stocks were." It's ironic that since the SIPA was passed in 1970 that you can't even get the wall paper. I followed my father's advice, being content with FDIC insured bank deposits until well into middle age. In 1987, upon family recommendation, I contacted a man named Sol Alpern (Madoff's father in-law, unknown to me at the time) who claimed to be a broker working for an investment firm named Avellino and Bienes (A&B). He informed that there was a company called Retirement Accounts Inc. (RAI) that

would act as a "passive trustee" (an unfamiliar term to me) that could invest my IRA with A & B. I established an IRA account at RAI. RAI then on my instruction forwarded funds to A&B.

In late 1992 RAI informed me that they had received a large check from Lee Richards, a court appointed bankruptcy receiver. A&B had been forced to liquidate by the SEC for unauthorized dealings in securities. Thousands of investors, myself included, received everything they had been promised (450 million dollars). No fraud was found. Credit was given to a broker of the highest integrity and reputation for resolving any problems and expediting the process. His name was Bernard Madoff. The details were few, but Madoff was willing to accept client A&B clients as his own. The result was the court took money from a thief, gave it to me, and then encouraged me to give it back to the thief.

In early 1993, after a brief consultation with Mr. Madoff, I instructed RAI to open an account for my IRA with Madoff at BMLIS. At some point in 1997 in compliance with a QUADRO RAI ordered BMLIS to calculate the value of ½ the account plus $71,796.00 and then forward it to them. In response BMLIS arrived at a figure of $479,001.00 and the value of the account was reduced accordingly.

In 1998, by an act Congress, the Roth IRA ( separate legal entity recognized as such by the SIPC and its trustee) came into being. RAI informed me that it could remove the assets from the IRA account at BMLIS (closing it) and transfer them to a newly established Roth IRA which could then be invested at BMLIS in a new account. I requested they do so. They assured me it had been done. They supplied me with tax documents (1099), taxes were paid. Throughout the years I would receive monthly statements labeled as duplicates for an account representing my Roth IRA. The statements were addressed to NTC & CO FBO Peter Moskowitz. My tax payer ID was not listed in the owner box. If I had questions I was usually referred to a broker named Frank. When I asked him if I could substitute another company for RAI he got quite upset saying that it was not possible because of the tremendous paperwork burden. BMLIS would only deal with RAI, later to become FISERV. In 2007 and 2008 I had RAI send funds to Ameriprise, where my daughter in-law was employed, to establish an additional Roth IRA for me.

On December 09, 2008 I read that Madoff had been arrested. I called the SIPC and was assured that BMLIS was a member. One week later, on 12/18/2008, I spoke to a Mr. Fisher(an attorney) at SIPC. He assured me that the only record I needed to make a claim was my last BMLIS statement. He also advised me to file the claim early as it would be processed in the order received. I was also reassured by Josephine Wang's (general counsel at SIPC) statements to the effect that SIPC would honor the final statements even if no stocks had ever been bought (Dec 16,2008 Street Insider.com). Two weeks later in early January the SIPC changed its position. SIPC president Stephen Harbeck testified in Congress where, under questioning, he characterized BMLIS investors as" greedy, gullible", seekers of "ill-gotten gains", not worthy of restitution. I was no longer an innocent victim. I was to be treated as a potential accessory after the fact. His talk about the applicability of archaic bankruptcy laws predating the creation of the FDIC and the SIPC, along with the irrelevance of SIPA in this case, left me with a feeling of dread. The reality was that SIPC did not have the means to compensate investors given the size of the failure. Nobody predicted the multi-billion dollar recoveries that would occur.

In the meantime I asked FISERV (previously called RAI) to file the SIPC claim form as I believed was their fiduciary duty. They refused. They claimed that SIPC Trustee gave them claim forms to mail to their clients. I was told that the Trustee would accept my signature on the claim form. The trustee confirmed this by listing me personally with my address as a BMLIS client in public court records and then accepting without any objection the claim form I completed for my Roth IRA. I believe that the Tax Code strictly prohibits an IRA owner from acting as a fiduciary for his own IRA. That is why one needs a company such as FISERV to establish and manage an IRA in the first place. It was clear that with the blessings of the trustee that FISERV had abandoned me and my account to the whims of fate. I decided to file the SIPC claim in person as a last resort to salvage what I could.

I decided that I should educate myself about the SIPA and related bankruptcy law. I studied definitions so that I might have a chance to understand what I was facing. As a result of my research I was shocked by what transpired at the Feb 20, 2009 creditors conference. The trustee invented a new definition of "net equity" for SIPA liquidations (cash in minus cash out). He created two new classes of brokerage customers " net winners" and "net losers" with conflicting interests yet claimed to be able to protect both. He said that the 60 day filing deadline had no relevance. He claimed that a criminal's secret books (not the debtors) were the only true records. He recognized that separate legal entities were entitled to individual protections and claims, yet he commingles them for his cash in cash out hypothesis. He confused the issues of debtor and criminal insider when he called BMLIS a Ponzi scheme. In a room with lawyers being paid as much as $1000/hr. nobody even questioned his positions. Perhaps they were intimidated or perhaps they had never read the SIPA or heard of the "New Times case" where Harbeck told the court that SIPC would replace real stocks listed in the final statements even if they had never been bought. I filed the claim form using the last statement as instructed by Mr. Fisher. Having no knowledge of the true relationships between BMLIS, Madoff, and FISERV, I did my best to answer the questions using the incomplete records provided to me by FISERV. I received the trustee's determination of claim dated Oct 19, 2009. I had an attorney file an objection to that determination on Dec1, 2009.

From the time of Madoff's arrest I suffered from angina pectoris. In March 2010 I was told I had severe coronary artery disease and could die at any moment unless I had quadruple bypass surgery. I decided that I would rather die than have that operation.   I think it was not too long after that I received a call from the trustee's law firm advising me that I would not be the subject of an avoidance action. There was no explanation then, but I was extremely grateful. I wouldn't lose my home. A great stressor was removed from my life and I could try to heal. After nine years I had completely forgotten about this objection. I almost discarded the package containing the notice without opening it. After opening it as the memories stated cascading back, I was torn between burying them or giving my account of what happened to me and possibly thousands of others. All I ever did was entrust my retirement account to an SIPC member broker.

SUPPLEMENTAL ARGUMENTS TO THE ORIGINAL OBJECTION FILED IN 2009

Over the long time span since the original filings new facts have come to light along with changed circumstances. As a result I wish to make some additional arguments for the court's consideration.

Bernard Madoff (an insider) was a thief who worked with other criminal employees to steal funds and property sent to BMLIS (the debtor). Those assets were stolen after BMLIS received them. Unknown to BMLIS, Madoff took the stolen funds and placed them in a criminal account he maintained with Chase JP Morgan Bank. Chase paid more than 2 billion in fines for allowing Madoff's activities. The property was stolen from BLMIS not the customers. BMLIS was a legitimate brokerage with a cancer inside. SIPC acknowledged this and put the legitimate portion up for sale. It is inappropriate for the trustee to substitute a thief's secret second set of books or records for the legitimate records of the debtor to evaluate an SIPC claim. I ask the court to overrule his determination on this basis.

In early 2008 trustee, and/ or his agents, went to my Fiduciary (FISERV). They induced FISERV to abandon its fiduciary responsibilities to thousands of elderly clients (myself included) regarding their retirement accounts which FISERV had established, maintained, and invested at BMLIS . It is well known that the federal tax code prohibits IRA account owners from acting as fiduciaries for their own IRA accounts. That is why financial institutions like FISERV exist and what they are paid for. They are necessary to protect the elderly in their retirement years. I believe the trustee's actions rise to the level of elder abuse under color of authority. Despite my entreaties FISERV refused to file a claim form for the IRA citing arrangements made with the trustee for me personally to do so (see documentation). It is of note that the trustee accepted my signature on the claim without objection.

I disagree with the trustee's determination that no securities were ever bought for my account. In 1998 I requested that RAI close my IRA by taking the assets from the BMLIS account, place them in a newly created Roth IRA to be reinvested at BMLIS (see documentation). They told me this could and would be done. There was a transaction that took place between two SIPC members to accomplish this. RAI and BMLIS were responsible for maintaining those records not I. If the trustee will not honor the final statement, which I presented, he should at least replace the customer name securities which were traded and reregistered to establish the account since securities in securities out would be consistent with his cash in cash out hypothesis. I believe that FISERV and BMLIS have or should have the stock certificate numbers relating to the transaction(see documentation). The stocks were valued at the time at $393,003.21 and distributed to me by RAI as per the information return they filed with the IRS for 1998 (see documentation). The trustee should be able to determine which of my customer name securities were transferred by matching the BMLIS account statements at the time with amount transferred. He could have checked with Fiserv or the DTC nine years ago. I do not know what happened to the customer named securities after they were returned to BMLIS by RAI. If they were converted, they should be returned. If the transaction never happened then there must been have complicity on the part of someone at RAI ne FISERV. The trustee by relieving Fiserv of its fiduciary responsibilities to me and thousands of others may have allowed criminals to go undetected.

4

I was never a direct BMLIS customer. I may have signed getting to know your customer type documents for Madoff due to my relationship with RAI, but I was never allowed to establish a direct customer account. The two accounts I did establish at RAI were clearly separate legal entries each equal to separate SIPC protections under the SIPA rules regarding clients of financial institutions investing with SIPC member brokerages.. The IRA was closed in 1998 before the Roth IRA was opened. The fact that Madoff kept an illegal secret set of books which improperly comingled the two accounts does not give the trustee the right to conjoin them. Neither I nor my trustee (RAI) authorized Madoff to do so. Just as Wells Fargo customers are not responsible for unauthorized accounts opened without their knowledge or consent, neither am I. It is outrageous for the trustee to hold me financially responsible for Madoff's crimes in this way. Any monies that I did receive over the years were from RAI. I do not know the true nature of the relationship between RAI, FISERV, BMLIS, and Madoff. I should not be held responsible for any misdeeds they may have committed even in my name. I would also note that my social security number was never on any statement put out by BMLIS, yet the trustee listed me as a customer. As a result I faced public humiliation as a "greedy, gullible" investor with my address for every scam artist in the world to see. My privacy was unjustly violated in a meaningful way.

The SIPC website states that the trustee owes a fiduciary duty to customers. This is taken to mean customers as a whole or in general. When the trustee created or adopted the cash in/cash out definition of net equity, he also created and adopted the concept of net winners and net losers. He divided the customer pool into two separate groups with conflicting interests. Taking money from the winners would mean more money available to the losers. I do not believe that a fiduciary can ethically represent two groups with conflicting interests. He should have recused himself and been replaced with two trustees, one for each group. His ill-gotten legal fees should be forfeit. They should be returned to SIPC and the customers who paid them. The trustee considered me to be in the net winner group. I believe that he has acted with bias against my claim because he favors the net losers over the winners (recipients of "ill-gotten gains").

It has been more than nine years since I filed an SIPC claim. SIPC is charged with prompt return of customer property when a member is liquidated. This has not come to pass. My property has not been returned. The process has not worked as intended by Congress. Wall Street has not adequately protected a public which can no longer claim physical possession of its property. Who would ever open an account that could be subject to an avoidance action years after it was closed and forgotten. Small brokerages will soon lose the confidence of customers fearing loss to Ponzi schemes, then the large ones. The loss of confidence could eventually destroy the whole financial system as people cash out in a rush to avoid liquidations. In the period that has elapsed many seniors have most assuredly died or are of diminished capacity. I would wager that not many have responded to the trustee's motion.

IN CONCLUSION

5

I ask the Court to please consider my new information and pleadings in addition to what was present in the original objection presented in 2009. I apologize for any legal gaffes I may have committed. I should have heeded my Father's sage advice about not buying stocks. I won't even get any wallpaper.

Respectfully submitted,

*Peter Moskowitz* DDS 5-31-2008

Peter Moskowitz

Redacted

Redacted