**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>J. EZRA MERKIN, GABRIEL CAPITAL, L.P., ARIEL FUND LTD., ASCOT PARTNERS, L.P., ASCOT FUND LTD., GABRIEL CAPITAL CORPORATION,<br><br>Defendants. | Adv. Pro. No. 09-01182 (SMB) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND ASCOT
PARTNERS, L.P., THROUGH ITS RECEIVER, RALPH C. DAWSON, ASCOT
FUND LIMITED, J. EZRA MERKIN, AND GABRIEL CAPITAL CORPORATION**

**TO:    THE HONORABLE STUART M. BERNSTEIN
           UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA")[1] and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtor"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure, approving the settlement, the terms and conditions of which are set forth in the settlement agreement (the "Agreement"), annexed hereto as Exhibit A, by and between the Trustee, on the one hand, and Ascot Partners, L.P. ("Ascot Partners,") through its Receiver, Ralph C. Dawson, Ascot Fund Limited ("Ascot Fund"), J. Ezra Merkin ("Merkin"), and Gabriel Capital Corporation ("Gabriel Capital Corp." and together with Merkin, "GCC"), on the other hand.[2] In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Trustee commenced this action against the Defendants, seeking to, among other things, recover the value of all alleged fraudulent transfers received by Ascot Partners in the two years prior to the December 11, 2008 liquidation filing date of BLMIS (the "Transfers").

Following several rounds of negotiations, the Parties were able to reach a consensual resolution. The Parties entered into the Agreement, which represents a good faith, complete settlement of all disputes between the Trustee and the Defendants, including the customer claim

---

[1] Further citations to SIPA will omit "15 U.S.C." and refer only to the relevant sections of SIPA.
[2] Ascot Partners, Ascot Fund, Merkin and Gabriel Capital Corp. are collectively referred herein as the "Defendants." The Defendants together with the Trustee are hereinafter the "Parties."

2

asserted by Ascot Partners in connection with BLMIS Account 1A0058.  The settlement will benefit the customer property fund by $280,000,000, which represents 100% of the value of the Transfers received by Ascot Partners.  Therefore, the Trustee respectfully requests that the Court approve this settlement.

## BACKGROUND

1. On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtor (Case No. 08 CV 10791).  In the complaint, the SEC alleged that the Debtor engaged in fraud through the investment advisor activities of BLMIS.

2. On December 15, 2008, pursuant to SIPA § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to SIPA § 78eee(a)(3), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3. Also on December 15, 2008, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

    i. appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);
    ii. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3); and
    iii. removed the case to this Court pursuant to SIPA § 78eee(b)(4).

---

[3] In this case, the Filing Date is the date on which the SEC commenced its suit against BLMIS, December 11, 2008, and a receiver was appointed for BLMIS.  *See* SIPA § 78*lll*(7)(B).

3

4. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff with the BLMIS SIPA liquidation proceeding.

## THE CLAIMS AGAINST THE DEFENDANTS

5. Merkin is an individual residing and maintaining a business office in New York, New York. At all relevant times, Merkin was Gabriel Capital Corp.'s sole shareholder and sole director. At all times prior to the Filing Date, Merkin was the general partner of Ascot Partners.

6. Ascot Partners is a Delaware limited partnership, formed in 1992, with a principal place of business in New York, New York. Ascot Partners invested directly with BLMIS and maintained BLMIS Account No. 1A0058 beginning in or around January 1993 through December 2008.

7. Pursuant to a stipulation and order entered in the matter captioned *People v. J. Ezra Merkin and Gabriel Capital Corporation*, Index No. 450879/2009 in the Supreme Court of the State of New York, County of New York, David B. Pitofsky was appointed the receiver of Ascot Partners on July 14, 2009. On May 2, 2013, the court appointed Ralph C. Dawson as successor Receiver of Ascot Partners to replace David B. Pitofsky.

8. Ascot Fund is a private investment fund for foreign investors and other non-U.S. taxpayers incorporated in the Cayman Islands in 1992. In early 2003, Ascot Fund entered into a master-feeder relationship with Ascot Partners whereby Ascot Fund invested substantially all of its capital as a limited partner in Ascot Partners.

9. Gabriel Capital Corp. was incorporated in December 1988 under the laws of Delaware as Ariel Management Corporation and subsequently changed its name to Gabriel Capital Corp. in or about 1998.

10. On August 30, 2013, the Trustee filed the Third Amended Complaint ("Third Amended Complaint"). (ECF No. 151). In the Third Amended Complaint, the Trustee added Ascot Fund as a defendant and asserted claims against defendants Merkin, Gabriel Capital Corp., Ariel Fund Ltd. ("Ariel Fund"), Gabriel Capital, L.P. ("Gabriel Fund"), Ascot Partners, and Ascot Fund to, among other things, avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, or 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281. The Trustee also asserted claims to disallow the Customer Claim, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate those claims, pursuant to 11 U.S.C. §§ 510(c) and 105(a).

11. On August 12, 2014, the Court entered its decision on Defendants' motions to dismiss the Third Amended Complaint, denying the motions in part and granting the motions in part. The Court denied the motions to dismiss the Trustee's actual fraudulent conveyance claims brought under section 548(a)(1)(A), recovery claims under section 550 for initial and subsequent transfers, general partner liability claims, and claim for equitable subordination. The Court granted the motions dismissing the Trustee's claims under section 548(a)(1)(B), section 544(b)(1), and the New York Debtor & Creditor Law, as well as the claim for equitable disallowance. (ECF No. 212).

12. On February 5, 2015, the Defendants filed their respective Answers to the Third Amended Complaint. (ECF Nos. 260, 261).

13. On June 23, 2015, this Court entered an order approving the settlement between the Trustee and Ariel Fund, Gabriel Fund, and their Receiver. (ECF No. 270). Ariel Fund and Gabriel Fund were dismissed from this proceeding on September 9, 2015. (ECF No. 282). Following

5

dismissal of Ariel Fund and Gabriel Fund, the remaining defendants in the action were Merkin, Gabriel Capital Corp., Ascot Partners, and Ascot Fund.

14. On January 30, 2017, the Court entered its decision on the Defendants' motions for summary judgment, denying the motions except with respect to the subsequent transfer claims as to Ascot Partners. (ECF No. 327).

### THE CLAIMS OF ASCOT PARTNERS AGAINST THE BLMIS ESTATE

15. Prior to July 2, 2009, the bar date for filing claims in the BLMIS bankruptcy case, Ascot Partners filed a customer claim in the SIPA Proceeding, which was assigned claim number 005317. Ascot Partners' customer claim is included as Attachment A to the Agreement.

16. In its customer claim, Ascot Partners alleged losses for money balances. The Parties agree that Ascot Partners' net equity is $235,734,338.00. (ECF No. 361).

### SETTLEMENT DISCUSSIONS

17. During the past month, the Parties engaged in good faith discussions aimed at resolving the Trustee's claims. These discussions followed earlier discussions that had not been successful in resolving the Trustee's claims. The Receiver informed the Trustee throughout that he disputed any liability of Ascot Partners regarding the Transfers. Nevertheless, the Receiver, on behalf of Ascot Partners, engaged in good faith negotiations with the Trustee that yielded the settlement set forth in the Agreement.

18. The Trustee has conducted a comprehensive investigation of the funds Ascot Partners invested with BLMIS. This investigation included, but was not limited to: the review and analysis of the BLMIS-related transactional histories as reflected in the BLMIS account statements of Ascot Partners; correspondence and other records and documents available to the

6

Trustee; interviews with and depositions of third-party witnesses; meetings with the Receiver and his counsel; and a substantial review of third-party records and documents.

19.    After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a consensual resolution rather than to continue the litigation.

## OVERVIEW OF THE AGREEMENT

20.    The principal terms and conditions of the Agreement are generally as follows:[4]

- At the Closing, Ascot Partners and GCC shall pay or cause to be paid to the Trustee the sum of Two Hundred Eighty Million Dollars ($280,000,000.00) ("Settlement Payment") in full and final settlement and satisfaction of all claims the Trustee or the BLMIS Estate asserted or could have asserted against Merkin, Gabriel Capital Corp., Ascot Partners, and/or Ascot Fund, and for the release of all Released Claims pursuant to paragraphs 7 through 10 of the Agreement, including, without limitation, all Avoiding Powers Claims, Disallowance and Subordination Claims, and any other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 10), that the Trustee or the BLMIS Estate may have against Merkin, Gabriel Capital Corp., Ascot Partners, and/or Ascot Fund;

- Ascot Partners will not receive a SIPC customer advance;

---

[4] Terms not otherwise defined herein shall have the meanings ascribed in the Agreement. In the event of any inconsistency between the definition of terms provided herein and the definition of terms in the Agreement, the Agreement shall prevail.

7

- At the Closing, the Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of Two Hundred Thirty-Five Million Seven Hundred Thirty-Four Thousand Three Hundred Thirty-Eight Dollars ($235,734,338.00) plus ninety-five percent (95%) of the Settlement Payment, for an aggregate allowed claim amount of Five Hundred One Million Seven Hundred Thirty-Four Thousand Three Hundred Thirty Eight Dollars ($501,734,338.00) (the "Allowed Claim"). As of the date of this Agreement, the initial amount to be paid by the Trustee to Ascot Partners allocable to the Allowed Claim in respect of a catch-up distribution is $320,628,311.35 (63.904% of the Allowed Claim).[5] Ascot Partners and GCC shall satisfy the Settlement Payment by causing Ascot Partners to convey, assign, endorse, and transfer to the Trustee the sum of Two Hundred Eighty Million Dollars ($280,000,000.00) from the catch-up distribution owed to Ascot Partners under the Allowed Claim pursuant to paragraph 13. If at the Closing, the Trustee has made a further distribution to customers holding allowed claims, then any additional amount owed to Ascot Partners based on the then distribution formula will be added to the allocable amount of the Allowed Claim.

- At the Closing, in order to ensure that the Settlement Payment and the Allowed Claim cannot be avoided as a preference pursuant to 11 U.S.C. § 547(b) of the Bankruptcy Code or otherwise avoided, unwound or recovered under any similar

---

[5] As of the date of the Agreement, this Court has approved nine *pro rata* interim distributions to BLMIS customers with allowed customer claims of 4.602%, 33.556%, 4.721%, 3.180%, 2.743%, 8.262%, 1.305%, 1.729%, and 3.806% respectively (63.904% total).

8

laws relating to the relief from debts or the protection of debtors as to Ascot Partners, the Parties agree that the catch-up distribution from the Allowed Claim (including satisfaction of the Settlement Payment as set forth in Paragraph 2) shall be made to an escrow agent ("Escrow Agent") and pursuant to an escrow agreement ("Escrow Agreement") for a period of ninety (90) days ("Escrow Period"). The Escrow Agent and Escrow Agreement shall be agreed upon by Ascot Partners and the Trustee. The Trustee shall bear the fees and costs of the Escrow Agent and Escrow Account, which shall be reasonable, pursuant to the Escrow Agreement.

- The Trustee shall release, acquit, and forever discharge the Defendants and their related parties on the specific terms set forth in the Agreement;

- The Defendants shall release, acquit, and forever discharge the Trustee and all his agents and BLMIS and its consolidated estate, on the specific terms set forth in the Agreement;

- Ascot Partners shall make no payment from the Allowed Claim, either directly or indirectly, to Merkin, Gabriel Capital Corp., or any other person, entity or trust controlled by or for the benefit of Merkin or his immediate family, as set forth in specific terms in the Agreement.

## RELIEF REQUESTED

21. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit B approving the Agreement.

**LEGAL BASIS**

22.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

23.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 WL 3409088 *1, *7 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

24.     In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

    (i)    the probability of success in the litigation;
    (ii)    the difficulties associated with collection;
    (iii)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

    (iv)  the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 WL 3409088 at *8; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

  25.  The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purofied Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. Even though the Court has discretion to approve settlements and must independently evaluate the reasonableness of the settlement, *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009), the business judgment of the trustee and his counsel should be considered in determining whether a settlement is fair and equitable. *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

  26.  The Trustee believes that the Agreement sets forth fair and equitable terms, which fall well above the lowest point in the range of reasonableness. *See* Exhibit C, Affidavit of Irving H. Picard in Support of Motion. The Agreement furthers the interest of BLMIS customers by (i) adding to the fund of customer property $280,000,000.00; (ii) recovering 100% of the Transfers; (iii) and reducing the amount of the section 502(h) claim that arise in connection with the Settlement Payments by 5%. Furthermore, the Agreement resolves all claims against the Defendants and avoids the cost and delay of what could otherwise be a lengthy and contentious litigation.

## CONCLUSION

27.    In sum, the Trustee submits that the Agreement should be approved because it represents a fair and reasonable compromise of the Trustee's claims against the Defendants and the related customer claim against the BLMIS estate.  Because the Agreement is well within the "range of reasonableness" and confers a benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit B granting the relief requested in the Motion.

Dated:  New York, New York
           June 13, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:   */s/ David J. Sheehan*
         David J. Sheehan
         dsheehan@bakerlaw.com
         Lan Hoang
         lhoang@bakerlaw.com
         Brian W. Song
         bsong@bakerlaw.com
         45 Rockefeller Plaza
         14th Floor
         New York, NY  10111
         Telephone: 212.589.4200
         Facsimile:  212.589.4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of the estate of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*