# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of June 12, 2018 ("Agreement"), is made by and among Irving H. Picard, in his capacity as the trustee ("Trustee") for the liquidation proceedings under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), and J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("Gabriel Capital Corp." and, together with Merkin, "GCC"), and Ralph C. Dawson, Esq., as the appointed Receiver of Ascot Partners, L.P. ("Ascot Partners"),[1] and Ascot Fund Limited ("Ascot Fund"). The Trustee, Merkin, Gabriel Capital Corp., Ascot Partners (including its Receiver) and Ascot Fund, collectively shall be referred to herein as the "Parties."

## BACKGROUND

A. BLMIS and its predecessors were registered broker-dealers and members of the Securities Investor Protection Corporation ("SIPC").

B. On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.

C. On December 15, 2008, the District Court entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the Bankruptcy Court under section 5(b)(4) of SIPA, where it is pending as Case No. 08-01789 (SMB) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the BLMIS estate (the "BLMIS Estate"). By Order dated June 9, 2009, the Chapter 7 estate of Madoff was substantively consolidated with the BLMIS Estate.

D. Ascot Partners maintained an account with BLMIS, designated account no. 1A0058, which was opened in or around January 1993. Ascot Partners withdrew Two Hundred Eighty Million Dollars ($280,000,000.00) from its BLMIS account (the "Transfers") during the two-year period prior to the Filing Date.

E. On or about March 3, 2009, Ascot Partners filed a customer claim with the Trustee, which the Trustee has designated as Claim No. 005317 ("Customer Claim"). The Customer Claim is included as Attachment A to this Agreement. The Customer Claim asserts that Ascot Partners is entitled to a claim for money balances as of December 11, 2008. The Parties agree that Ascot Partners' net equity equals Two Hundred Thirty-Five Million Seven Hundred Thirty-Four Thousand Three Hundred Thirty-Eight Dollars ($235,734,338.00).

---

[1] The New York Supreme Court appointed David B. Pitofsky as Receiver on June 30, 2009 by a Stipulation and Order entered in the matter captioned *People v. J. Ezra Merkin and Gabriel Capital Corporation*, Index No. 450879/2009, Supreme Court of the State of New York, County of New York ("NYAG Action"). On May 2, 2013, the court appointed Ralph C. Dawson to replace David B. Pitofsky.

1

G. On August 30, 2013, the Trustee filed the Third Amended Complaint ("Third Amended Complaint") in an adversary proceeding captioned *Picard v. J. Ezra Merkin, et al.*, Adv. Pro. No. 09-1182 (SMB) (the "Adversary Proceeding"). In the Third Amended Complaint, the Trustee added Ascot Fund as a defendant and asserted claims against defendants Merkin, Gabriel Capital Corp., Ariel Fund Ltd. ("Ariel Fund"), Gabriel Capital, L.P. ("Gabriel Fund"), Ascot Partners, and Ascot Fund to, among other things, avoid and recover the Transfers under 11 U.S.C. §§ 544, 547, 548, 550, or 551, SIPA § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270–281 ("Avoiding Powers Claims"). The Trustee also asserted claims to disallow the Customer Claim, pursuant to 11 U.S.C. § 502(d), and to equitably subordinate those claims, pursuant to 11 U.S.C. §§ 510(c) and 105(a) ("Disallowance and Subordination Claims").

H. On August 12, 2014, the Court entered its decision on defendants' motions to dismiss the Third Amended Complaint, denying the motions in part and granting the motions in part. The Court denied the motions to dismiss the Trustee's actual fraudulent transfer claims brought under section 548(a)(1) (A), recovery claims under section 550 for initial and subsequent transfers, the general partner liability claim, and the claim for equitable subordination. The Court granted the motions as to the Trustee's claims under section 548(a)(1)(B), section 544(b)(1), and the New York Debtor & Creditor Law, as well as the claims for equitable disallowance. *Picard v. Merkin, et al*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014).

I. On February 5, 2015, Ascot Partners and Ascot Fund filed their Answer and Affirmative Defenses to the Third Amended Complaint. (EFC No. 260).

J. On February 5, 2015, Merkin and Gabriel Capital Corp. filed their Answer and Affirmative Defenses to the Third Amended Complaint. (ECF No. 261).

K. On June 23, 2015, this Court entered an order approving the settlement between the Trustee and Ariel Fund, Gabriel Fund, and their Receiver. (ECF No. 270). Ariel Fund and Gabriel Fund were dismissed from this proceeding on September 9, 2015. (ECF No. 282). Following dismissal of Ariel Fund and Gabriel Fund, the remaining defendants in the action were Merkin, Gabriel Capital Corp., Ascot Partners, and Ascot Fund (the "Remaining Defendants").

L. On January 30, 2017, the Court entered its decision on the Remaining Defendants' motions for summary judgment, denying the motions except for the subsequent transfer claims as to Ascot Partners. *Picard v. Merkin, et al*, 563 B.R. 737 (Bankr. S.D.N.Y. 2017).

M. The Trustee, on the one hand, and Ascot Partners, Ascot Fund, Merkin, and Gabriel Capital Corp., on the other hand, wish to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

NOW, THEREFORE, in consideration of the foregoing, of the mutual covenants, promises and undertakings set forth herein, and for good and valuable consideration, the mutual receipt and sufficiency of which are hereby acknowledged, the Parties agree:

2

# AGREEMENT

1. <u>Payments to Trustee</u>. At the Closing (as defined in paragraph 13), Ascot Partners and GCC shall pay or cause to be paid to the Trustee the sum of Two Hundred Eighty Million Dollars ($280,000,000.00) ("Settlement Payment") in full and final settlement and satisfaction of all claims the Trustee or the BLMIS Estate asserted or could have asserted against Merkin, Gabriel Capital Corp., Ascot Partners, and/or Ascot Fund, and for the release of all Released Claims pursuant to paragraphs 7 through 10 below, including without limitation, all Avoiding Powers Claims, Disallowance and Subordination Claims, and any other claims of the Trustee or the BLMIS Estate of every kind and nature whatsoever, whether known or unknown (as described in paragraph 10), that the Trustee or the BLMIS Estate may have against Merkin, Gabriel Capital Corp., Ascot Partners, and/or Ascot Fund.

2. <u>Allowance of Customer Claim</u>. Upon the Closing (as defined in paragraph 13), the Customer Claim shall be deemed conclusively allowed pursuant to section 502 of the Bankruptcy Code and 15 U.S.C. § 78*lll*(11), equal in priority to other allowed customer claims against the BLMIS Estate, in the amount of Two Hundred Thirty-Five Million Seven Hundred Thirty-Four Thousand Three Hundred Thirty-Eight Dollars ($235,734,338.00) plus ninety-five percent (95%) of the Settlement Payment, for an aggregate allowed claim amount of Five Hundred One Million Seven Hundred Thirty-Four Thousand Three Hundred Thirty Eight Dollars ($501,734,338.00) (the "Allowed Claim"). As of the date of this Agreement, the initial amount to be paid by the Trustee to Ascot Partners allocable to the Allowed Claim in respect of a catch-up distribution is $320,628,311.35 (63.904% of the Allowed Claim). Ascot Partners and GCC shall satisfy the Settlement Payment by causing Ascot Partners to convey, assign, endorse, and transfer to the Trustee the sum of Two Hundred Eighty Million Dollars ($280,000,000.00) from the catch-up distribution owed to Ascot Partners under the Allowed Claim pursuant to paragraph 13. If at the Closing, the Trustee has made a further distribution to customers holding allowed claims, then any additional amount owed to Ascot Partners based on the then distribution formula will be added to the allocable amount of the Allowed Claim.

3. At the Closing (as defined in paragraph 13), Ascot Partners will not receive an advance from SIPC.

4. As part of this Agreement, Ascot Partners warrants that the total distributions to it from the Allowed Claim at closing, from the NYAG Action, and any other monies available to the Receiver do not exceed 100% of Ascot Partners losses in connection with BLMIS. Upon distributions from the Receiver, Ascot Partners shall notify its investors that they may be required to disclose to the Madoff Victim Fund the receipt of such distributions from the Receiver.

5. As part of this Agreement, Ascot Partners agrees that all distributions on the Allowed Claim from the Trustee shall be made to investors of Ascot Partners, except as excluded in paragraph 6 below, and that no distributions on the Allowed Claim from the Trustee shall be paid or used for expenses or fees related to the administration of Ascot Partners.

6. As part of this Agreement, Ascot Partners shall make no distributions on the Allowed Claim from the Trustee, either directly or indirectly to Merkin, Gabriel Capital Corp., or

3

4827-3591-7926.10

any other person, entity or trust controlled by or for the benefit of Merkin or his immediate family. Merkin and Gabriel Capital Corp. have separately identified these entities and represent and warrant that this list of entities is complete to the best of their knowledge and reasonable efforts. Merkin and Gabriel Capital Corp. further represent and warrant that no deferred compensation payment is owed by Ariel Fund to Merkin or Gabriel Capital Corp. and therefore to the extent that Ariel Fund was or remains an investor in Ascot Fund, no payment to Merkin and/or Gabriel Capital Corp. would result from distributions on the Allowed Claim from the Trustee.

7.     Release by the Trustee. In consideration of the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing and subject to the Terms of Escrow (as defined in paragraph 13), the Trustee on behalf of himself, BLMIS, and its consolidated estates, and all persons, natural or corporate, in privity with any of them hereby releases, acquits, and forever discharges Ascot Partners, as well as Ralph C. Dawson as the appointed Receiver of Ascot Partners, David B. Pitofsky as former Receiver of Ascot Partners, Ascot Fund, Merkin, and Gabriel Capital Corp., each of their respective current and former organizational affiliates, including, but not limited to, parent entities, sister entities, and subsidiary entities, as well as the board members, directors, trustees, officers, partners, general partners, limited partners, members, employees, individual affiliates, family members, attorneys, professionals, agents, assigns, successors, heirs, executors and administrators of each of the foregoing from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature, or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, based on, arising out of, or in any way related to BLMIS, including, without limitation, the claims against Ascot Partners, Ascot Fund, Merkin, and Gabriel Capital Corp. in the Adversary Proceeding and any other avoidance claims under Chapter 5 of Title 11 of the United States Code, except for any and all claims to enforce the obligations of Ascot Partners, Ascot Fund, Merkin and/or Gabriel Capital Corp. under this Agreement and the Escrow Agreement (as defined in paragraph 13).

8.     Releases by Ascot Partners and Ascot Fund. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing and subject to the Terms of Escrow (as defined in paragraph 13), Ascot Partners and Ascot Fund hereby release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, BLMIS and its consolidated estate, and all persons, natural or corporate, in privity with them from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of

4

whatever kind, nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing, based on, arising out of, or in any way related to BLMIS, except for Ascot Partners' and Ascot Funds' rights to enforce the Trustee's obligations under this Agreement and the Escrow Agreement (as defined in paragraph 13). Nothing in this release shall release the right or claim of Ascot Partners or Ascot Fund or their investors to any and all distributions they receive from (i) the forfeiture fund established by the U.S. Department of Justice, (ii) the settlement in the NYAG Action, and (iii) all rights under and distributions due pursuant to the Allowed Claim.

9. <u>Releases by Merkin and Gabriel Capital Corp.</u> In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to the obligations, rights, and considerations arising under this Agreement, upon the Closing and subject to the Terms of Escrow (as defined in paragraph 13), Merkin and Gabriel Capital Corp. hereby release, acquit, and forever discharge the Trustee and all his agents, representatives, attorneys, employees, and professionals, BLMIS and its consolidated estate, and all persons, natural or corporate, in privity with them from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts), of whatever kind, nature or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, existing as of the date of the Closing, based on, arising out of, or in any way related to BLMIS, except for Merkin's and Gabriel Capital Corp.'s rights to enforce the Trustee's obligations under this Agreement and the Escrow Agreement (as defined in paragraph 13).

10. <u>Unknown Claims.</u> Unknown Claims shall mean any released claims pursuant to paragraphs 7 through 9 of the Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all released claims in paragraphs 7 through 9 of this Agreement, the Parties shall expressly waive or be deemed to have waived the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> <u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.</u>

The Parties expressly waive, and shall be deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or

5

4827-3591-7926.10

principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties shall expressly have and be deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

11.    <u>Dismissal of Adversary Proceedings</u>. As soon as practical after the Closing and subject to the Terms of Escrow (as defined in paragraph 13), the Parties shall stipulate to dismissal of the Adversary Proceeding, with prejudice, as appropriate under Fed. R. Civ. Pro. 41(a), with each party bearing its own costs, attorneys' fees, and expenses.

12.    <u>Court Approval; Effective Date; Termination</u>. This Agreement is subject to, and shall become effective and binding on the Parties upon, the Bankruptcy Court's approval of this Agreement in the SIPA Proceeding by an order that is no longer subject to appeal, review, or rehearing (the "Effective Date"). The Trustee shall use his best efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this paragraph within 180 days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this paragraph and paragraphs 23 and 24) shall terminate and be void; (b) all of the statements, concessions, consents, and agreements contained in the Agreement (other than this paragraph) shall be void; and (c) neither the Trustee nor Ascot Partners, Ascot Fund, Merkin, or Gabriel Capital Corp. may use or rely on any such statement, concession, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, or any case or proceeding relating to Ascot Partners, Ascot Fund, Merkin, Gabriel Capital Corp., BLMIS, or Madoff.

13.    <u>Closing and Terms of Escrow</u>.

(a)    There shall be a closing ("Closing") within five business days after the Effective Date of this Agreement.

(b)    At the Closing, in order to ensure that the Settlement Payment and the Allowed Claim cannot be avoided as a preference pursuant to 11 U.S.C. § 547(b) of the Bankruptcy Code or otherwise avoided, unwound or recovered under any similar laws relating to the relief from debts or the protection of debtors as to Ascot Partners, the Parties agree that the catch-up distribution from the Allowed Claim (including satisfaction of the Settlement Payment as set forth in Paragraph 2) shall be made to an escrow agent ("Escrow Agent") and pursuant to an escrow agreement ("Escrow Agreement") for a period of ninety (90) days ("Escrow Period"). The Escrow Agent and Escrow Agreement shall be agreed upon by Ascot Partners and the Trustee. The Trustee

6

4827-3591-7926.10

shall bear the fees and costs of the Escrow Agent and Escrow Account, which shall be reasonable, pursuant to the Escrow Agreement.

(c) If Ascot Partners has not voluntarily filed for relief or is not subject to a petition for involuntary relief, in each case under the Bankruptcy Code or any similar laws relating to the relief from debts or the protection of debtors as of the ninetieth (90th) day following the Closing, or if Ascot Partners becomes subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws relating to the relief from debts or the protection of debtors and such petition is dismissed as of the ninetieth (90th) day following the Closing, the Escrow Agent shall deliver the respective payments to the Trustee and to Ascot Partners, and be deemed to have delivered the escrowed releases to the respective beneficiaries thereof contemplated by this Agreement on the ninety-first (91st) day following the Closing without any further action of the Parties. Simultaneously with the payments by the Escrow Agent to the respective beneficiaries, the releases contained in paragraphs 7, 8, and 9 shall become effective without any further action by any of the Parties and without being subject to any further obligations of the Settling Parties under the terms of this Agreement. Simultaneously with the payments by the Escrow Agent to the respective beneficiaries, the Escrow Agreement shall be terminated.

(d) If Ascot Partners has voluntarily filed for relief or is subject to a petition for involuntary relief, in each case under the Bankruptcy Code or any similar laws relating to the relief from debts or the protection of debtors as of the ninetieth (90th) day following the Closing, or if Ascot Partners becomes subject to a petition for involuntary relief under the Bankruptcy Code or any other similar laws relating to the relief from debts or the protection of debtors and such petition is not dismissed as of the ninetieth (90th) day following the Closing, then this Agreement shall terminate and become void, all of the releases, statements, consents, and agreements contained in the Agreement shall become void, the Escrow Agent shall return all sums paid pursuant to the Agreement to the respective Parties entitled thereto in accordance with the Escrow Agreement, the Escrow Agreement shall be terminated, and none of the Parties may use or rely on any such release, statement, consent, or agreement in any public statement or litigation involving the SIPA Proceeding, any case or proceeding relating to the SIPA Proceeding or any case or proceeding relating to BLMIS or Madoff; provided that, the Parties may, by a writing executed by all of them, without the necessity for further notice or hearing before the Court, elect to waive this paragraph and cause the settlement to become effective notwithstanding the occurrence of one or more conditions precedent to termination of this Agreement, or extend the Escrow Period until such time as the petition is adjudicated by a Bankruptcy Court, at which time either paragraph 13(c) or 13(d) will take effect as though it were the ninetieth (90th) day following the Closing.

14. Cooperation and Discovery Obligations. Ascot Partners, Ascot Fund, Merkin, and Gabriel Capital Corp. hereby agree, if requested by the Trustee, to use good faith efforts to reasonably cooperate with the Trustee in his prosecution of claims against other defendants in other adversary proceedings, so long as such cooperation would not, in their reasonable judgment, have an adverse effect on any of the interests of Ascot Partners, Ascot Fund, Merkin,

7

or Gabriel Capital Corp.. Nothing in this Section shall in any way impair the Trustee's discovery or other rights pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or other applicable law. Nothing in this Section shall impair the rights or duties of Ascot Partners, Ascot Fund, Merkin, or Gabriel Capital Corp. under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or other applicable law to object to such discovery and to provide truthful testimony in any proceeding.

15. <u>The Parties' Authority</u>. The Receiver for Ascot Partners represents and warrants to the Trustee that, as of the date hereof, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his obligations under this Agreement. Ascot Fund represents and warrants to the Trustee that, as of the date hereof, it has the full power, authority, and legal right to execute and deliver, and to perform its obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of its obligations under this Agreement. Merkin and Gabriel Capital Corp. represent and warrant to the Trustee that, as of the date hereof, they have the full power, authority, and legal right to execute and deliver, and to perform their obligations under this Agreement and have taken all necessary action to authorize the execution, delivery, and performance of their obligations under this Agreement. The Trustee represents and warrants to Ascot Partners, Ascot Fund, Merkin, and Gabriel Capital Corp. that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in paragraph 12 above, he has the full power, authority, and legal right to execute and deliver, and to perform his obligations under this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement. Ascot Partners represents and warrants that it owns and controls the Customer Claim as of the date of this Agreement.

16. <u>Further Assurances</u>. The Parties shall execute and deliver any document or instrument reasonably requested by any of them after the date of this Agreement to effectuate the intent of this Agreement.

17. <u>Entire Agreement</u>. Except as to certain representations identified above, this Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements and understandings concerning the subject matter hereof. The representations identified above are incorporated by reference into this agreement and the understanding between and among the Parties.

18. <u>No Admission</u>. This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing whatsoever. This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any fault, liability, or wrongdoing whatsoever.

19. <u>Amendments, Waiver</u>. Except with respect to automatic termination and termination rights expressly set forth herein, this Agreement may not be terminated, amended, or modified in any way except in a writing signed by all of the Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether

8

4827-3591-7926.10

or not similar, nor shall such waiver constitute a continuing waiver.

20. <u>Assignability</u>. No party hereto may assign its rights under this Agreement without the prior written consent of each of the other Parties hereto, except that nothing in this Agreement shall prevent Ascot Partners from assigning all or part of the Allowed Claim, without the prior written consent of the Trustee, pursuant to the Bankruptcy Court's November 10, 2010 Order Establishing Procedures for the Assignment of Allowed Claims.

21. <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

22. <u>No Third Party Beneficiary</u>. Except as expressly provided in paragraph 2 and in the releases contained in paragraphs 7 through 9, the Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

23. <u>Applicable Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

24. <u>Exclusive Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court, including the power of the Bankruptcy Court to enter final judgment, for any such action. In the event the BLMIS proceeding is closed by a final decree and not reopened, the Parties agree that any dispute arising out of this Agreement, or any provision thereof, may be brought in the United States District Court for the Southern District of New York or the Supreme Court of New York in New York County. Nothing in this paragraph is intended to contradict or abrogate the Stipulation and Order appointing a Receiver for Ascot Partners entered in the NYAG Action on June 30, 2009, as amended by the Order dated May 2, 2013.

25. <u>Captions and Rules of Construction</u>. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a paragraph is to a paragraph of this Agreement. "Includes" and "including" are not limiting.

26. <u>Counterparts, Electronic Copy of Signatures</u>. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures with the same effect as the delivery of an original signature.

24. <u>Negotiated Agreement</u>. This Agreement has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Agreement has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Agreement.

9

4827-3591-7926.10

25. <u>Notices</u>. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax, or by electronic transmission to:

| | |
|---|---|
| **If to the Trustee:** | **If to the Receiver and/or Ascot Partners LLP:** |
| Irving H. Picard<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Email: ipicard@bakerlaw.com | Ralph C. Dawson<br>c/o Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, NY 10019-6022<br>Email: ralph.dawson@nortonrosefulbright.com |
| With copies to: | With copies to: |
| David J. Sheehan<br>Lan Hoang<br>Brian W. Song<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Email:<br>dsheehan@bakerlaw.com<br>lhoang@bakerlaw.com<br>bsong@bakerlaw.com | Judith A. Archer<br>David B. Schwartz<br>Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, New York 10019-6022<br>Email:<br>judith.archer@nortonrosefulbright.com<br>david.schwartz@nortonrosefulbright.com |
| **If to Ascot Fund Limited:** | **If to J. Ezra Merkin and/or Gabriel Capital Corporation:** |
| Judith A. Archer<br>Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, NY 10019-6022<br>Email: judith.archer@nortonrosefulbright.com | Andrew J. Levander<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10036<br>Email: Andrew.levander@dechert.com |
| With copies to: | With copies to: |
| David B. Schwartz<br>Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, New York 10019-6022<br>Email:<br>david.schwartz@nortonrosefulbright.com | Neil A. Steiner<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10036<br>Email: neil.steiner@dechert.com |

*[Signature pages follow]*

10

4827-3591-7926.10

    IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff*

_____
IRVING H. PICARD

Sworn to and subscribed before me
this 11th day of June, 2018

_____
Notary Public

SONYA M. GRAHAM
Notary Public, State of New York
No. 01GR6133214
Qualified in Westchester County
Commission Expires: 9/12/2021

4827-3591-7926.10

11

ASCOT PARTNERS LP

*/s/ R. C. Dawson*
RALPH C. DAWSON, RECEIVER

Sworn to and subscribed before me
this 12th day of June, 2018

*/s/ Lynn Perdue*
Notary Public

LYNN PERDUE
Notary Public, State of New York
No. 01PE4853404
Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires Feb. 17, 2022

4827-3591-7926.10

12

ASCOT FUND LIMITED

By: _Don Seymour, Director_

Sworn to and subscribed before me
this _11th_ day of June, 2018

_____
Notary Public

SARAH E. O'CONNELL
Notary Public, State of New York
No. 02OC6138844
Qualified in New York County
Commission Expires March 18, ~~2018~~ 22

J. EZRA MERKIN

_____
J. EZRA MERKIN

Sworn to and subscribed before me
this _11th_ day of June, 2018

_____
Notary Public

Jerome M. Balsam
Notary Public, State of New York
Qualified in New York County
Lic. #02BA6012363
Commission Expires August 24, 20_18_

4827-3591-7926.10

14

**GABRIEL CAPITAL CORPORATION**

By: _____J. Ezra Merkin_____

Sworn to and subscribed before me
this 11th day of June, 2018

_____Jerome M. Balsam_____
Notary Public

Jerome M. Balsam
Notary Public, State of New York
Qualified in New York County
Lic. #02BA6012363
Commission Expires August 24, 20 18

4827-3591-7926.10

15