# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Geraldine E. Ponto
direct dial: 212.589.4690
gponto@bakerlaw.com

June 18, 2018

**VIA ECF AND CHAMBERS' EMAIL**

The Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10006

Re:   *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 08-01789 (SMB)
      *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-01161 (SMB)

Dear Judge Bernstein:

This firm represents Irving H. Picard, Trustee, in the above-referenced matters. This letter addresses the commentary in the June 6, 2018 letter ("June 6 letter") from Quinn Emanuel Urquhart & Sullivan, LLP, counsel for the Kingate Funds' Joint Liquidators ("JLs"). ECF No. 348.

The June 6 letter does not seek relief under applicable court rules; it seeks the Court's "guidance," which would appear to make a response from the Trustee extraneous. There is no controversy properly before this Court, which makes it unnecessary and impossible for the Trustee to answer as he would in a pleading with facts and law. As this Court is aware, the parties are involved in fact discovery relating to the allegations of the Fourth Amended Complaint ("FAC") filed on March 17, 2014 (ECF No. 100), alleging the Kingate Funds invested exclusively with BLMIS and through their agents, including Mr. Federico Ceretti and Mr. Carlo Grosso, had knowledge of Madoff's fraud. The June 6 letter expresses the JLs' current goals and beliefs about settlement prospects. It also paints the picture of the JLs as underdogs with scarce resources, working tirelessly for almost a decade to capitalize on their approximate (and contested) $800 million net loser claim against the BLMIS customer property estate, and thereby relieve the suffering of the Kingate Funds' investors. Because the June 6 letter also implies the Trustee has been deaf to such concerns and has no appetite for settlement, however, we must at least clarify the record in that regard.

The Honorable Stuart M. Bernstein
June 18, 2018
Page 2

*Mediation*

Ten years into the Trustee's avoidance and recovery proceeding before this Court (this "Action"), the JLs inform us they have retained mediation counsel, suggesting fresh faces would make the difference in achieving settlement, and would save time and money in the long run. During the course of this litigation, the Trustee has repeatedly engaged in settlement discussions with the JLs in an effort to stem litigation expense, including, when they requested, with third parties they brought into the negotiations. This has consumed years of effort on the Trustee's part, which the JLs acknowledged and commended in litigation they commenced in the federal court alleging the third parties they brought in to facilitate settlement botched it. *See generally* Complaint for Declaratory Relief, *Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. v. Deutsche Bank Sec. Inc.*, No. 11 Civ. 9364 (DAB) (S.D.N.Y. 2011), ECF No. 1, attached hereto as Exhibit A. The result was not a savings of resources but a substantial waste of resources.[1] These and other past settlement efforts do not mean to suggest that a third or fourth try could not be the proverbial charm. But the issues in this Action are already clearly drawn, which mediation often accomplishes, even when a settlement is unavailing.

The circumstances in which we currently find ourselves have a bearing on the JLs' request. We believe the JLs would not be negotiating independently from their common interest parties. They have informed us in the record before this Court[2] they are operating under a common interest agreement with some or all of their former defendants in their Bermuda civil action, including Messrs. Ceretti and Grosso.[3] While fully cooperating with the JLs, Messrs. Ceretti and Grosso are seeking to deprive the Trustee of document discovery and further to narrow the scope of their testimony by an action they commenced before the English court to set aside the orders obtained by the Trustee giving effect to this Court's letters of request. That litigation is scheduled for a hearing before the English court on July 6, 2018.

The Trustee has been proactive and cooperative with the JLs in connection with discovery, and will still seek to resolve the English litigation with their common interest parties consensually, if possible. The JLs were fully aware that the Trustee would need to examine Messrs. Ceretti and Grosso when the JLs filed their motion to obtain a letter of request for those examinations. The parties agreed, therefore, to coordinate the dates on both the Trustee's and the JLs' examinations of those witnesses, pushing them to the end of the fact discovery period so the examinations of those key witnesses could occur last. The JLs asked that we coordinate the dates for all other depositions to enable them to attend on dates convenient for them and to cross-examine the witnesses. We agreed. The JLs asked that we negotiate the allocation of time for each examination to provide ample time for our direct, their cross, and our re-examination. We

---

[1] It even spilled out into the claims trading community. *See* Summons and Complaint, *Solus Alternative Asset Management LP v. Perry Corp. d/b/a Perry Capital*, No. 652341/2012 (N.Y. Sup. Ct. July 3, 2012), ECF No. 1, attached hereto as Exhibit B.

[2] *See* Order and Report and Recommendation to the Honorable Stuart M. Bernstein at 4, ECF No. 299 (May 30, 2017).

[3] We have not seen the common interest agreement or the settlement agreement in the Bermuda civil action.

The Honorable Stuart M. Bernstein
June 18, 2018
Page 3

agreed. The only exception was that the JLs wanted to defer agreement on the time allocation for examinations of Messrs. Ceretti and Grosso, stating it was premature. All of that was agreed when the parties' respective letters of request were submitted to the English court. Now, the JLs are faulting the Trustee for seeking his own examinations of Messrs. Ceretti and Grosso, which is evidence before the English court in support of the set aside application. And the common interest parties are going forward with the JLs' examinations of Messrs. Ceretti and Grosso on July 17 and 19, 2018, regardless of what happens at the July 6 hearing in London. The JLs' conduct weighs heavily in whether it is in the best interests of the BLMIS estate to make further commitments with them outside the auspices of this Court.

One point overlooked in the July 6 letter was that the Trustee did not reject categorically the JLs' request for mediation. Because the JLs initially imposed the timing of mediation as a condition to consenting to extend the remaining discovery deadlines, the Trustee, in turn, proposed that the JLs cause Messrs. Ceretti and Grosso, in the exercise of their common interests, to agree to withdraw their motion to set aside the orders of the English court so that we could avoid that significant drain on time and resources. The JLs reported that Messrs. Ceretti and Grosso were not receptive. We, therefore, renewed our request for the JLs' consent without a condition, and we inserted into the proposed Third Amended Case Management Report that the parties would continue to discuss the timing of mediation. *See* ECF No. 349 (June 8, 2018). They appeared to agree but submitted the July 6 letter nonetheless.

*The Status of Fact Discovery*

The Trustee has issued six deposition subpoenas to witnesses located in the U.S. The dates for those examinations have not been confirmed as of yet. In addition to the ten letters of request this Court has issued for witnesses we believed were located in London, we have identified witnesses located in Ireland, France, and elsewhere that we believe it is necessary to depose.

*Spiraling Costs of Litigation*

Since at least 2010, upon information and belief, the JLs have been drawing upon funds that were on deposit in an account at HSBC Bank of Bermuda to reimburse the JLs' professional fees and expenses incurred in defending this Action. It may be that the JLs used the cash in that account to fund the Bermuda litigation they commenced against many former, common defendants to the Action. They brought that action generally on the ground that the Kingate Funds had mistakenly paid fees to their management company. They lost that argument in a preliminary hearing in Bermuda. Left with having to prove that bad faith was involved, they settled that action for a nominal sum. The Trustee had asserted a proprietary claim to the funds on deposit with HSBC Bank of Bermuda in a protective action he commenced in Bermuda on December 3, 2010. The funds in HSBC Bank of Bermuda also were subject to the Trustee's subsequent transfer claim under the FAC in the approximate amount of $328,798, prior to dismissal of that claim, which is now on appeal. The JLs do not provide an accounting to the Trustee of the extent of their draw down of such funds. However, on October 7, 2011, we had information that the amount then on deposit was approximately $81,841,784.00. It may be that

The Honorable Stuart M. Bernstein
June 18, 2018
Page 4

the litigation since then has depleted much of that. The point is that the JLs' litigation strategy has been funded, even though they complain their investors have not received a distribution, and presumably not by assets of the Kingate Funds, which are in liquidation. To imply the Trustee is not concerned about "spiraling costs" and the dissipation of the funds at HSBC Bank of Bermuda, which are subject to his claims and controlled exclusively by the JLs, is disingenuous and belied by the procedural history.

If the Court's guidance to the JLs is to file a motion to compel mediation, we will, as always, attempt to resolve the matter consensually or, failing that, file an answer and comply with the Court's ruling as to timing of mediation.

The consideration of this Court is greatly appreciated.

Respectfully,

*Geraldine E. Ponto*
Geraldine E. Ponto
Partner

Attachments

Copy:  Robert S. Loigman, Esq. w/attachments