# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
SOLUS ALTERNATIVE ASSET MANAGEMENT                               :   Index No.: _____
LP,                                                              :
                                                                 :   Date Purchased: _____
                                                                 :
                                        Plaintiff,               :
                                                                 :   Plaintiff designates New York
                                                                 :   County as the place of trial.
        v.                                                       :
                                                                 :   The basis of venue is the residence of
PERRY CORP. d/b/a PERRY CAPITAL,                                 :   one or more of the parties pursuant to
                                                                 :   CPLR § 503.
                                        Defendant.               :
                                                                 :   **SUMMONS**
                                                                 :
---------------------------------------------------------------- x

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: July 3, 2012
       New York, New York

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
David S. Rosner (DRosner@kasowitz.com)
Howard W. Schub (HSchub@kasowitz.com)
Andrew K. Glenn (AGlenn@kasowitz.com)
Daniel A. Fliman (DFliman@kasowitz.com)
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Solus Alternative*
*Asset Management LP*

To:  PERRY CORP. d/b/a PERRY CAPITAL
c/o CORPORATION SERVICE COMPANY
80 State Street
Albany, New York, 12207-2543

c/o RICHARD PERRY
767 Fifth Avenue, 19th Floor
New York, New York, 10153

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x
                                                                             :

SOLUS ALTERNATIVE ASSET MANAGEMENT    :   Index No.: _____
LP,
                                                                             :

                     Plaintiff,             :
                                            :   **<u>COMPLAINT</u>**

      v.                                               :
                                                   :   **JURY TRIAL DEMANDED**

PERRY CORP. d/b/a PERRY CAPITAL,             :

                   Defendant.           :

---------------------------------------------------------------x

       Plaintiff Solus Alternative Asset Management LP ("<u>Solus</u>"), by its undersigned attorneys, Kasowitz, Benson, Torres & Friedman LLP, as and for its Complaint against defendant Perry Corp. d/b/a Perry Capital ("<u>Perry Capital</u>"), hereby alleges, upon knowledge as to itself and upon information and belief as to all other matters, as follows:

## INTRODUCTION

       1.     This action arises out of Perry Capital's willful breach of its obligations under a binding agreement to sell a participation in a claim to Solus, and its complete disregard of longstanding industry custom and practice.

       2.     In April 2012, following extensive negotiations over a period of several weeks, senior traders at Solus and Perry Capital unconditionally agreed that Perry Capital would assign to Solus (the "<u>Trade</u>") Perry Capital's participation in $195 million of certain claims (the "<u>Participation</u>") against the estate of Bernard L. Madoff Investment Securities LLC ("<u>BLMIS</u>").

       3.     As is customary in the industry, traders from Solus and Perry Capital committed to the Trade over the telephone and then corroborated the Trade through Bloomberg instant messages. The parties negotiated all essential terms of the Trade -- including price, terms,

structure, and quantity -- and thus became bound by an enforceable contract (the "Contract"). The parties later reaffirmed these terms in corroborative writings.

4. Next, Solus and Perry Capital worked on closing logistics. Because Perry Capital had acquired the Participation from Deutsche Bank Securities Inc. ("DBSI"), Perry Capital requested DBSI to take certain steps to help facilitate the Trade. Perry Capital, Solus, and DBSI, each through counsel, proceeded to finalize a tripartite assignment agreement (the "Assignment Agreement"). By early June, 2012, the parties were ready to close the agreed-upon binding Trade and Contract.

5. Despite repeated demands by Solus since early June, Perry Capital has refused to honor the binding Contract or to negotiate in good faith any remaining "open issues," of which there were none. Instead, suffering a case of seller's remorse, Perry Capital went radio silent and told its lawyers to put "pens down" rather than complete the closing documentation. Perry Capital's re-trade was motivated by money – an attempt to recapture value that Solus saw and risked to obtain by taking the long position. Since the parties agreed to the Trade, the market for Madoff claims has improved materially, and Perry apparently realized that it made a bad deal.

6. Because seller's remorse is not a legally cognizable basis to relieve a party of its obligation to perform under a binding contract, Perry Capital had to manufacture an excuse to break the Trade. First, Perry Capital falsely contended that it had not agreed to material terms of the Contract. Second, after admitting that it had agreed to all the material terms of the Contract, Perry Capital alleged that it had no legal obligation to finalize or execute the fully-agreed and documented Assignment Agreement. Perry Capital's legally wrongful actions cannot obscure the fact that it is walking from the Trade only because the market has moved against it and, in hindsight, it made a bad deal that is no longer in its interest.

2

7.      Accordingly, Solus is entitled to (i) specific performance of the Trade and Contract or substantial damages from Perry Capital's breach of the Contract, (ii) imposition of a constructive trust due to Perry Capital's unjust enrichment at Solus's expense, or (iii) an order compelling Perry Capital to execute the Assignment Agreement.

## PARTIES

8.      Plaintiff Solus is a Delaware limited partnership which, as an SEC-registered investment advisor, manages assets for institutional and family investors. One or more of Solus's general and/or limited partners is a citizen of New York.

9.      Defendant Perry Capital is a New York corporation with its principal place of business in New York, New York. Perry Capital is a private investment management company.

## JURISDICTION AND VENUE

10.     Perry Capital's principal place of business is in New York, and it is subject to the jurisdiction of this Court pursuant to CPLR § 301.

11.     Venue is proper in this Court pursuant to CPLR § 503(a).

## FACTS

**A.      Solus, BLMIS, DBSI, and the Participation.**

12.     Solus is a private investment management company acting on behalf of affiliated private investment funds. In the ordinary course of its business, Solus purchases and sells various types of securities and "claims," including stocks, bonds, bank debt, claims against bankrupt or insolvent entities, and other more complex financial instruments. Solus employs a number of experienced portfolio managers and traders for this purpose, each of whom is knowledgeable about the customs and practices accepted by the financial community in the trading of securities and other claims.

3

13.     Perry Capital is also actively involved in the trading of claims and is similarly aware of the customs and practices in the claims trading industry.

14.     As part of its investment strategy, Solus focuses on "distressed" investments, which relate to businesses or entities that are insolvent, in default on their debts, or in danger of defaulting on their debts. As a result, Solus's portfolio managers and traders have substantial experience in trading claims of entities in bankruptcy or other insolvency proceedings, or likely to enter such proceedings.

15.     After Bernard Madoff's enormous fraud was revealed in November 2008, BLMIS was placed into an insolvency proceeding under the Securities Investor Protection Act, which is similar to a bankruptcy proceeding under the United States Bankruptcy Code. The Trustee for BLMIS, Irving Picard, has recovered in excess of $10 billion in assets, which will ultimately be distributed to creditors. Creditors holding claims against BLMIS -- just like those with claims against a debtor in a bankruptcy proceeding -- can transfer such claims or "participate" them to other parties, who will then share in any recovery from the estate.

16.     On August 24, 2011, two creditors of BLMIS -- so-called "feeder funds" Kingate Global Fund Ltd. ("Kingate Global") and Kingate Euro Fund Ltd. ("Kingate Euro," and together with Kingate Global, "Kingate") -- agreed to sell to DBSI $1,624,748,095 in claims held by Kingate against the BLMIS estate (the "Kingate Claims"). That trade has not yet closed due to a dispute over certain terms of the definitive documentation. *See Kingate Global Fund Ltd., et al. v. Deutsche Bank Securities Inc.*, No. 11-Civ.-9364 (S.D.N.Y.) (the "Kingate Litigation"). Based on a June 1, 2012 letter to the Court in the Kingate Litigaton, it appears that the parties to that litigation are close to a settlement.

4

17. On or about August 24, 2011 and continuing thereafter, DBSI sold participation interests in the Kingate Claims to various parties. Each participation interest entitles its holder to receive recoveries from the Kingate Claims. For example, in August 2011, Solus purchased from DBSI several participations in the Kingate Claims.

18. At issue here is the Participation that Perry Capital purchased from DBSI, which Perry Capital agreed to sell and assign to Solus.

**B.  Perry Capital and Solus Enter into the Trade.**

19. In March 2012, Perry Capital told Solus that it wanted to sell its Participation in the Kingate Claims. Having previously purchased participations from DBSI in the Kingate Claims, Solus was intimately aware of the claim that Perry Capital was proposing to sell. Solus has purchased many BLMIS claims and, in connection therewith, has performed extensive analysis of the BLMIS claims. With respect to the Kingate Claims in particular, Solus acquired from DBSI participation interests in the Kingate Claims in August 2011 and, in connection therewith, had conducted substantial due diligence concerning the Kingate Claims. Moreover, Scott Martin -- a portfolio manager who joined Solus from DBSI in March 2012 -- had actually himself signed the trade confirmation of DBSI's purchase of the $1.6 billion Kingate Claim.

20. Accordingly, when Perry Capital told Solus it was looking to sell the Participation, Solus immediately expressed interest in acquiring the Participation from Perry Capital. In late March 2012, Solus, primarily through C. J. Lanktree, a portfolio manager, and Perry Capital, primarily through Robert Carroll, a senior trader, commenced negotiations regarding the sale and assignment of the Participation to Solus.

21. Through several phone calls and confirmed and corroborated through Bloomberg instant messages in March and April of 2012 between Mr. Lanktree, on behalf of Solus, and Mr.

5

Carroll, on behalf of Perry Capital, Solus and Perry Capital negotiated and agreed on the Trade. Under New York law, oral contracts for the sale and assignment of claims like the Participation are enforceable so long as there is a form of written or electronic corroboratory evidence. N.Y. Gen. Oblig. Law § 5-701(b)(1) (McKinney 2008). It is a common and accepted practice for traders in this industry to negotiate and finalize legally binding trades orally (*i.e.,* telephonically) and confirm and/or corroborate agreed-upon trades through Bloomberg instant messages. That is precisely what happened here.

22. Culminating in communications on April 10, 2012, Mr. Carroll, on behalf of Perry Capital, and Mr. Lanktree, on behalf of Solus, agreed on final terms for Perry Capital to sell and assign to Solus the Participation. Pursuant to the Contract, Solus would assume Perry Capital's trade with DBSI for the same price that Perry Capital had advised Solus that it had agreed to pay DBSI (66.5 cents on the dollar). Solus also agreed to pay a fee to DBSI to cover its administrative costs in connection with the Trade. This was the agreement on price.

23. During a Bloomberg instant messaging exchange on April 10, 2012, Mr. Carroll, acting on behalf of Perry Capital, confirmed the earlier oral agreement on final terms for the amount of the claim to be sold. Specifically, Mr. Carroll stated that he was "going to sell you [*i.e.,* Solus] our [*i.e.,* Perry Capital's] piece . . . 195,000,000." This was the agreement on the amount of the claim.

24. Mr. Carroll's statement reflects that the parties had a binding agreement for Perry Capital to sell and for Solus to buy and accept assignment of Perry Capital's Participation. The Contract included all terms of Trade: (1) the identity of the parties -- Solus and Perry Capital; (2) the identity of the debtor owing payment on the claim -- BLMIS; (3) the type of claim being sold – the Participation; (4) the amount of the claim to be sold -- $195,000,000; and (4) the price

6

-- 66.5%, or 66.5 cents on the dollar, which was the same price Perry Capital advised Solus that Perry Capital had paid to DBSI in the fall of 2011. Consequently, on April 10, 2012, Perry Capital and Solus each independently confirmed the terms of the Trade to DBSI.

25. Thus, the only remaining task prior to closing the Trade was documenting the sale and assignment of the Participation, which required the execution of a simple and customary assignment agreement.

### C. The Parties Finalize Closing Logistics.

26. Like all claims traded in the secondary debt market, the Trade was to be memorialized in writing. As admitted by Perry's litigation counsel,

> [a]fter the April 10 communication, Perry sent a draft termination of the trade to Deutsche Bank that did not even include Solus as a party. Solus intended to enter into a separate agreement with Deutsche Bank. When Deutsche Bank rejected the draft termination, Perry, Solus, and Deutsche Bank began negotiating the triparty agreement . . . . Perry, Solus, and Deutsche Bank negotiated for weeks to settle material terms of the proposed deal.

Tellingly, Perry Capital has never alleged -- because it cannot -- that the parties did not reach agreement on the "material terms of the proposed deal." In fact, the Assignment Agreement was fully finalized by Perry Capital, Solus and DBSI when, on or about June 4, Perry Capital told its counsel to put "pens down."

27. During May, counsel to the parties -- Willkie Farr & Gallagher LLP ("Willkie") on behalf of Solus, and Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") on behalf of Perry Capital -- exchanged several drafts of the Assignment Agreement to evidence the binding Trade and Contract. The Assignment Agreement is a simple and boilerplate document containing standard provisions. The final version, reflecting comments from Solus, Perry Capital and DBSI, runs to three and one-half pages and contains only six substantive paragraphs.

7

28. On May 22, 2012 Perry Capital's General Counsel, Mike Neus, told Solus's counsel at Willkie (Joe Minias) that Perry Capital was closing the fund that owned the Participation and, accordingly, wanted to close the Trade as soon as possible.

29. On May 31, 2012, counsel for Solus (at Willkie) sent to Perry Capital's counsel (at Kramer Levin) revisions to the Assignment Agreement "reflecting changes to the assignment document based on Solus' conversation with DB[SI]."

30. The next day, on June 1, 2012, Perry Capital's counsel responded to the May 31, 2012 e-mail and draft Assignment Agreement from Solus's counsel stating, "Perry Capital *has one clarifying comment* to Section 4. Assuming you are fine with the addition, please send the proposed draft on to the contact at [DBSI]. . ." (emphasis added). Perry Capital's counsel pasted the clarifying comment into his email.

31. Later that day, Solus's counsel replied, "[t]his is acceptable to Solus. We will make the change and send it to DB[SI]." DBSI provided further comments to the agreement on June 4, 2012. These comments -- which were directed only to Solus's obligations under the Assignment Agreement -- were acceptable to Solus.

32. As the Assignment Agreement was now in a form acceptable to each party, including to Perry Capital (as its counsel confirmed in its June 1, 2012 email), the parties were ready to execute the Assignment Agreement and to close documentation of the Trade and Contract.

**D.  Perry Capital Breaches The Contract.**

33. As noted, the market for BLMIS claims has improved significantly since Solus and Perry Capital agreed to the price for the purchase and sale of the Participation. As also noted, on June 1, 2012, the parties to the Kingate Litigation sent a letter to the court requesting a

8

stay of discovery, stating that they were "hopeful that an additional delay to the start of discovery will lead to a resolution of the litigation." A resolution of the Kingate Litigation would allow Solus to profit handsomely from the increase in the price of the Participation. In fact, the current trading price of claims similar to the Participation is significantly higher than the price that Solus agreed to pay Perry Capital.

34. On June 4, 2012, Tom Janover, a partner at Kramer Levin (Perry's outside counsel), called Joe Minias at Willkie (Solus's outside counsel) to tell him that Perry had instructed Kramer Levin to cease all discussions with Solus regarding the Trade. According to Mr. Janover, he had been told to put "pens down." On June 6, 2012, C.J. Lanktree, on behalf of Solus, wrote to Bob Carroll to express his concern about Perry Capital's failure to communicate with Solus and to execute the Assignment Agreement. Mr. Lanktree wrote to Mr. Carroll on June 6: "Please let me know when we can speak as we have docs that are ready to go and have been agreed by both sides." When Mr. Lanktree failed to get a response, he again wrote to Bob Carroll at Perry Capital on June 6: "I do not understand what is going on . . . let me know . . . if you can explain it to me since you and I were the ones that did the trade . . . obviously I am missing something."

35. Mr. Carroll promptly responded to Mr. Lanktree in writing: "This decision was made away from the desk I was not involved in the process." The "decision" to which Mr. Carroll refers is Perry Capital's decision to simply walk away from the Trade based solely on seller's remorse.

36. In response to Solus's demand that Perry Capital fulfill its obligations under the Contract, Perry Capital (through its counsel at Kramer Levin) initially contended that it never agreed on a price for the Trade. In doing so, Perry Capital flatly denied the substance of its prior

9

communications in which it was expressly agreed that Solus would pay 66.5% for the Participation.

37. Recognizing that this lie would not withstand even the slightest scrutiny if DBSI's recorded phone calls were ever produced during discovery, litigation counsel to Perry Capital subsequently admitted in a letter dated June 21, 2012 that the parties had agreed on a price for the sale of the Participation:

> On April 10, ***Solus and Perry discussed and agreed upon the general contours of the transaction***: Perry would step out of its trade with Deutsche Bank; in its place, Solus would assume Perry's participation interest in the Kingate claim, ***for the same price that Perry had agreed to pay Deutsche Bank***, and in doing so, would directly face Deutsche Bank on the trade. At the same time, Solus stated that it would pay Deutsche Bank 1/8 of one percent for Deutsche Bank's administrative expenses for the proposed transaction. (emphasis added).

Nevertheless, Perry Capital's counsel maintained that Perry Capital was not legally bound to consummate the Trade to which it had agreed, nor to negotiate in good faith towards the execution of final confirmatory deal documentation reflecting that Contract.

38. Perry Capital's contention that it is not bound to the Contract it entered into with Solus is entirely contrary to its own conduct, as it never once expressed any question about the terms of the Trade (including price), and never acted in any manner consistent with a party that did not view itself as contractually bound. Perry Capital's conduct is completely contrary to industry norm and custom. To be clear, there were no matters left for negotiation when Perry Capital repudiated the Contract.

## **FIRST CAUSE OF ACTION**

## **(Breach of Contract – Specific Performance)**

39. Solus repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

40. In April 2012, Perry Capital and Solus entered into a Contract pursuant to which Perry Capital agreed to assign the Participation to Solus. The Contract was reached during the course of telephone calls and confirmed and corroborated in Bloomberg instant messages made in the weeks leading up to and including April 10, 2012, and was further corroborated in contemporaneous and subsequent communications.

41. As of that date, Solus and Perry Capital had agreed on all terms of the Trade -- including quantity and price -- and had a meeting of the minds as to the substance of the Contract, which terms were subsequently reaffirmed in writing.

42. The Contract is a valid and binding agreement, pursuant to which Perry Capital was required to transfer to Solus, at the price and on the terms agreed upon, the Participation.

43. Perry Capital has repudiated the Contract through its words and conduct, including its refusal to memorialize the transaction through execution of the confirmatory Assignment Agreement and to transfer the Participation to Solus.

44. Solus has performed and is ready, willing, and able to continue to perform its obligations under the Contract.

45. Solus has no adequate remedy at law for Perry Capital's breach, and will be irreparably harmed thereby. The Participation is a unique investment for which there is no reasonable substitute.

46.     Solus is entitled to an order requiring Perry Capital to perform its obligations under the Contract by transferring the Participation to Solus.

## SECOND CAUSE OF ACTION

### (Breach of Contract -- Money Damages)

47.     Solus repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

48.     In April 2012, Perry Capital and Solus entered into a Contract pursuant to which Perry Capital agreed to assign the Participation to Solus. The Contract was reached during the course of telephone calls and confirmed and corroborated in Bloomberg instant messages made in the weeks leading up to and including April 10, 2012, and was further corroborated in contemporaneous and subsequent communications.

49.     As of that date, Solus and Perry Capital had agreed on all terms of the Trade -- including quantity and price -- and had a meeting of the minds as to the substance of the Contract, which terms were subsequently reaffirmed in writing.

50.     The Contract is a valid and binding agreement, pursuant to which Perry Capital was required to transfer to Solus, at the price and on the terms agreed upon, the Participation.

51.     Perry Capital has repudiated the Contract through its words and conduct, including its refusal to memorialize the transaction through execution of the confirmatory Assignment Agreement and to transfer the Participation to Solus.

52.     Solus has performed and is ready, willing, and able to continue to perform its obligations under the Contract.

53.     By reason of Perry Capital's breach, Solus is entitled to damages in an amount to be proven at trial, but not less than $20,000,000.

## THIRD CAUSE OF ACTION

### (Breach of the Obligation to Negotiate in Good Faith -- Specific Performance)

54. Solus repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

55. Once the parties had committed to pursue the Trade and reached agreement on the terms, such as the quantity and price, Perry Capital had a duty to use its best efforts to negotiate with Solus in good faith, and to make a good faith effort to close the transaction on terms customary in the market for similar types of trades.

56. Perry Capital breached its obligation to negotiate in good faith when, after all parties had agreed to the final form of the Assignment Agreement, and to all terms of the Trade, Perry Capital unilaterally and without justification withdrew from the parties' negotiations.

57. Perry Capital breached its obligation under New York law to act in good faith in finalizing the underlying transaction by refusing to execute the Assignment Agreement reflecting the terms agreed upon by the parties.

58. Solus has no adequate remedy at law for Perry Capital's breach, and will be irreparably harmed thereby. The Participation is a unique investment for which there is no reasonable substitute.

59. Solus is entitled to an order requiring Perry Capital to execute the Assignment Agreement.

## FOURTH CAUSE OF ACTION

### (Breach of the Obligation to Negotiate in Good Faith -- Money Damages)

60. Solus repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

61. Once the parties had committed to pursue the Trade and reached agreement on the terms, such as the quantity and price, Perry Capital had a duty to use its best efforts to negotiate with Solus in good faith, and to make a good faith effort to close the transaction on terms customary in the market for similar types of trades.

62. Perry Capital breached its obligation to negotiate in good faith when, after all parties had agreed to the final form of the Assignment Agreement, and to all terms of the Trade, Perry Capital unilaterally and without justification withdrew from the parties' negotiations.

63. Perry Capital breached its obligation under New York law to act in good faith in finalizing the underlying transaction by refusing to execute the Assignment Agreement reflecting the terms agreed upon by the parties.

64. Solus is entitled to damages due to Perry's breach of contract, calculated based upon the terms to which the parties had agreed prior to Perry Capital's improper withdrawal from negotiations, in an amount to be proven at trial, but not less than $20,000,000.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

65. Solus repeats and realleges each and every allegation contained in paragraphs 1 through 38 herein.

66. Perry Capital has refused to transfer to Solus the Participation and honor its binding Contract, which was made orally (telephonically) and confirmed in contemporaneous

14

and subsequent corroboratory writings, pursuant to the long-standing practices and procedures governing trading among sophisticated investment professionals.

67. Perry Capital has been enriched by retaining the Participation including, without limitation, by retaining profits and/or incremental value of the Participation accruing since the expected consummation of the Trade.

68. Perry Capital has been enriched at Solus's expenses because Solus would have retained profits and/or incremental value of the Participation accruing since the expected consummation of the Trade.

69. Given Perry Capital's disregard of its Contract and widely-used and well-accepted trading customs and practices which are vital to the functions of the distressed debt trading markets, permitting Perry Capital to retain possession of the Participation and its associated profits and/or incremental value would be contrary to equity and good conscience.

70. As a result, Solus is entitled to an order imposing a constructive trust and requiring Perry Capital to disgorge the profits and/or incremental value of the Participation it has wrongfully retained.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Solus respectfully requests that judgment should be entered in favor of Solus as follows:

(a) On the first cause of action, an order requiring Perry Capital to perform its obligations under the Contract by transferring the Participation to Solus;

(b) On the second cause of action, damages in an amount to be proven at trial;

(c) On the third cause of action, an order requiring Perry Capital to execute the Assignment Agreement;

(d)     On the fourth cause of action, damages in an amount to be proven at trial;

(e)     On the fifth cause of action, a judgment imposing a constructive trust over the Participation and Perry Capital's unjustly obtained profits and/or incremental value of the Participation, and ordering disgorgement and restitution of such gains to Solus; and

(f)     Awarding Solus the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 3, 2012

                                        Respectfully submitted,

                                        KASOWITZ, BENSON, TORRES
                                         & FRIEDMAN LLP

                                        By: _____
                                          David S. Rosner
                                          Howard W. Schub
                                          Andrew K. Glenn
                                          Daniel A. Fliman
                                          1633 Broadway
                                          New York, New York 10019
                                          (212) 506-1700

                                        *Attorneys for Solus Alternative Asset*
                                        *Management LP*

16