UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

SECURITIES INVESTOR PROTECTION
CORPORATION,

                Plaintiff,

                -against-

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                Defendant.

Adv. Proc. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

---------------------------------------------------------X

In re:

BERNARD L. MADOFF,

                Debtor.

---------------------------------------------------------X

IRVING H. PICARD, trustee for the liquidation
of Bernard L. Madoff Investment Securities
LLC

                Plaintiff,

                -against-

STEPHEN R. GOLDENBERG,

                Defendant.

Adv. Proc. No. 10-04946 (SMB)

---------------------------------------------------------X

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT TO
GRANT THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND ENTER MONEY JUDGMENT IN FAVOR OF THE PLAINTIFF**

**A P P E A R A N C E S:**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Keith R. Murphy, Esq.

  Nicholas J. Cremona, Esq.
  Joshua B. Rog, Esq.
   Of Counsel

*Attorneys for Irving H. Picard, Trustee*
 *for the Liquidation of Bernard L. Madoff*
 *Investment Securities LLC*

MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119

  Matthew A. Kupillas, Esq.
   Of Counsel

*Attorneys for Defendant*

SECURITIES INVESTOR PROTECTION
CORPORATION
1667 K Street, N.W., Suite 1000
Washington, D.C. 20006

  Josephine Wang, Esq.
  Kevin H. Bell, Esq.
  Nathanael S. Kelley, Esq.
   Of Counsel

*Attorneys for Securities Investor Protection*
 *Corporation*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

  Irving H. Picard, trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), seeks summary judgment to avoid and recover fictitious profits withdrawn from Defendant's BLMIS account within two years of December 11, 2008 totaling $4 million as intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A). The Defendant objects asserting that he received the fictitious profits "for value and in good faith" under 11 U.S.C. § 548(c), and the Trustee's calculation of his liability violated the two-year reach back period in 11 U.S.C. § 548(a). The Trustee does not allege bad faith on the part of the Defendant, and the issues

- 2 -

presented in this avoidance action are virtually identical to those covered in *Picard v. Lowrey* (*In re BLMIS*), Nos. 10-04387, 10-04488, 10-04350, 10-05110 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. Mar. 26, 2018) (report and recommendation) ("*Lowrey*"), and *Picard v. Cohen* (*In re BLMIS*), No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ("*Cohen*"), *adopted by*, No. 16 CV 5513 (LTS), slip op. (S.D.N.Y. Feb. 24, 2017).

The Court respectfully recommends for the reasons set forth herein that the Trustee's motion be granted and that a judgment be entered in his favor in the amount of $4 million.

**STIPULATED FACTS**

The parties stipulated to the following material facts:[1]

At all relevant times, Bernard L. Madoff controlled BLMIS, first as its sole member, and thereafter, as its chairman and chief executive. (¶ 1.) BLMIS was an investment advisor, registered with the Securities and Exchange Commission ("SEC") as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b), and a member of the Financial Industry Regulatory Authority (formerly known as the National Association of Securities Dealers). (¶¶ 6-7.)

Madoff was arrested on December 11, 2008 (the "Filing Date"), and the SEC contemporaneously commenced proceedings against BLMIS and Madoff in the United States District Court for the Southern District of New York. *See SEC v. BLMIS*, No. 08

---

[1]    *See Joint Statement of Undisputed Material Facts*, so ordered on Aug. 16, 2017 (ECF Doc. # 58). References to paragraphs in the stipulation will be denoted as "(¶ _ )."

CV 10791. The Securities Investor Protection Corporation ("SIPC") filed an application pursuant to SIPA § 78eee(a)(4)(B) in the District Court based on BLMIS' inability to meet its obligations to securities customers as they became due, and the SEC consented to a combination of its own action with an application of SIPC pursuant to SIPA § 78eee(a)(4)(A). (¶¶ 2-5.)[2]

Madoff admitted to running a Ponzi scheme through BLMIS at all times relevant to this adversary proceeding, (¶ 8), and the parties have stipulated that:

1. BLMIS was operating a Ponzi scheme (¶ 9);

2. BLMIS was insolvent from at least April 25, 1996 and all points thereafter (¶ 10);

3. BLMIS utilized commingled customer monies to fund its operations, as well as to fund the withdrawal of fictitious profits and principal for other customers (¶ 11);

4. BLMIS' investment advisory business ("IA Business") did not actually trade securities for customers and did not generate any legitimate profits for customer accounts (¶ 12);

5. The IA Business did not receive legitimate financial support from the other business units of BLMIS in amounts sufficient to satisfy the cash requirement needs of the IA Business customer withdrawals (¶ 13);

6. The IA Business did not receive any legitimate outside financial support from loans or otherwise (¶ 14); and

7. BLMIS received each deposit with the intent to not apply such funds to the purchase of securities for the accounts of its clients. (¶ 15.)

---

[2] The District Court issued a protective decree, appointed Mr. Picard as the Trustee of BLMIS, and removed the SIPA case to this Court pursuant to SIPA § 78eee(b)(4).

The Defendant was a BLMIS customer. He opened account 1CM391 (the "Account") at BLMIS in good faith and with no knowledge of BLMIS' fraud, (¶ 19), and BLMIS accepted the Defendant's funds for the stated purpose of trading securities for his benefit. (¶ 29.) The Defendant's only business relationship with BLMIS was as a customer of its IA Business. (¶ 30.) The Defendant did not invest in BLMIS, either as a partner, shareholder, or other equity stakeholder, and never purported to own a share of, or have a financial stake in, the business of BLMIS. (¶ 31.)

Throughout the life of the Account, the Defendant withdrew more from the Account than he deposited. (¶ 23.) The Court will refer to the amount of withdrawals that exceed deposits as "fictitious profits." During the two-year period preceding the Filing Date, the Defendant withdrew $4 million in fictitious profits (the "Two Year Transfers"). (¶ 24.)

BLMIS made the Two Year Transfers to the Defendant with actual intent to hinder, delay, or defraud some or all of its then existing and/or future creditors, (¶ 27), but the Defendant made each of the withdrawals (*i.e.* received the Two Year Transfers) in good faith, believing that he was entitled to these funds and lacking knowledge of the Ponzi scheme. (¶ 26.)

The Defendant received monthly Account statements from BLMIS reporting purported securities transactions effected on his behalf. At all times, BLMIS defrauded the Defendant by intentionally misrepresenting the purported securities transactions in the Account. These misrepresentations made to the Defendant were an integral and essential part of the fraud, and were made to avoid detection of the fraud, retain existing

investors, and to lure other investors into the Ponzi scheme. (¶ 32.) The Defendant relied in good faith on BLMIS' reports of securities transactions that it purportedly made on behalf and for the benefit of his Account, (¶ 33), he reasonably relied on the representations in the Account agreement and Account statements, (¶ 34), BLMIS did not comply with its obligations under the Account agreement, (¶ 36), and the Defendant was injured by BLMIS' fraud. (¶ 37.)

## PROPOSED CONCLUSIONS OF LAW

### A. Jurisdiction, Standing, and Venue

This Court has jurisdiction over this avoidance action pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the District Court's Amended Standing Order of Reference Re Title 11, 12 misc. 00032, M10-468(LAP) (S.D.N.Y. Jan. 31, 2012). Moreover, the District Court removed the BLMIS SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4),[3] (*see Order*, dated Dec. 15, 2008, at ¶ IX (ECF Case No. 08-01789 Doc. # 1)), which conferred on this Court "all of the jurisdiction, powers, and duties" granted under SIPA.

---

[3] Section 78eee(b)(4) of SIPA provides:

**Removal to bankruptcy court**

Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under Title 11. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.

The reference to the "court of the United States in the same judicial district having jurisdiction over cases under Title 11" means the bankruptcy court. *Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*), 4 F.3d 1556, 1564-65 (10th Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994).

This avoidance action is a "core" proceeding under 28 U.S.C. § 157(b)(2)(H), but this Court may not enter a final judgment in a fraudulent transfer action under the Supreme Court's ruling in *Stern v. Marshall*, 564 U.S. 462, 487 (2012); *accord SIPC v. BLMIS* (*In re BLMIS*), 490 B.R. 46, 51-52 (S.D.N.Y. 2013) ("Resolution of an avoidance action brought under SIPA would thus require an exercise of the judicial power reserved for Article III courts."), absent the parties' consent. *Wellness Int'l, Ltd. v. Sharif*, 135 S. Ct. 1932, 1944-46, 1949 (2015). The Defendant does not consent to this Court's entry of final judgment, (*see, e.g.*, *Defendant's Answer and Affirmative Defenses*, dated Aug. 17, 2015, at p. 25 (ECF Doc. # 43)), but this Court may recommend proposed findings of fact and conclusions of law to the District Court. *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172-74 (2014).

The Trustee has demonstrated Article III standing. He brings this avoidance action as a representative of an insolvent customer property estate to avoid and recover transfers for the benefit of the customer property estate which was injured by the fraudulent transfers of customer property, and the Trustee's action will redress that injury by replenishing the funds in the customer property estate available to satisfy the customers' net equity claims in the SIPA proceeding. *SIPC v. BLMIS* (*In re BLMIS*), 531 B.R. 439, 449 (Bankr. S.D.N.Y. 2015).

The Trustee has also demonstrated that he has statutory and prudential standing pursuant to 15 U.S.C. § 78fff-2(c)(3). The BLMIS estate has been insolvent since April

25, 1996 and at all points thereafter, and the customer property is "not sufficient" to pay in full the claims referenced in 15 U.S.C. § 78fff-2(c)(3).[4]

Finally, the venue of this avoidance action in this Court is proper under 28 U.S.C. § 1409(a).

B.   **The Trustee's *Prima Facie* Case**

The Trustee seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable under Rule 7056 of Federal Rules of Bankruptcy Procedure, on his claim to avoid and recover the Two Year Transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code. (*See Trustee's Memorandum of Law in Support of Motion for Summary Judgment*, dated Oct. 2, 2017 ("*Motion*") (ECF Doc. # 61).) That provision permits the Trustee to "avoid any transfer . . . of an interest of [BLMIS] in property" made within two years of the Filing Date, if BLMIS made the transfer "with actual intent to hinder, delay, or defraud" any creditor. 11 U.S.C. § 548(a)(1)(A).

The Trustee has satisfied his *prima facie* case. First, although customer funds held by a broker (such as BLMIS) are not the broker's property under state law, and an ordinary bankruptcy trustee cannot avoid a transfer of non-debtor property, "SIPA circumvents this problem through a statutorily created legal fiction that confers

---

[4]   Section 78fff-2(c)(3) of SIPA states:

  Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11. Such recovered property shall be treated as customer property. For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.

standing on a SIPA trustee by treating customer property as through it were 'property of the debtor' in an ordinary liquidation." *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014); *see* 15 U.S.C. § 78fff-2(c)(3). Thus, the Two Year Transfers represent transfers of an "interest of the debtor in property" for purposes of section 548(a). Second, the parties stipulated to the amount of the Two Year Transfers, and that BLMIS made the Two Year Transfers with "actual intent to hinder, delay, or defraud" creditors. Alternatively, BLMIS' fraudulent intent may be presumed from the existence of the Ponzi scheme, because "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007) (quotation marks and citation omitted).

### C.     The Defenses

The Defendant opposes the *Motion* raising two defenses. First, the Defendant asserts that he took the Two Year Transfers "for value and in good faith" under 11 U.S.C. § 548(c) because his receipt of fictitious profits satisfied antecedent debts. (*See Defendant's Memorandum of Law in Opposition to Trustee's Motion for Summary Judgment*, dated Nov. 16, 2017 ("*Objection*"), at 4-34 (ECF Doc. # 65).) Second, the Defendant argues that the Trustee's taking into account withdrawals prior to December 11, 2006 when calculating fraudulent transfer liability violates the two-year reach back period set forth in 11 U.S.C. § 548(a)(1). (*Id.* at 34-40.)

The argument that BLMIS customers gave value under section 548(c) in exchange for their withdrawal of fictitious profits is not new and has been rejected by the District Court and this Court no less than six times. *See Cohen*, 2016 WL 1695296,

at *5-10 (describing prior decisions); *see also Lowrey*, 2018 WL 1442312, at *5-8 (same). The Defendant was a party to one of those litigations, *Picard v. Greiff*, (*In re BLMIS*), 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd on other grounds,* 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015). There, defendants in four adversary proceedings moved to dismiss the complaints alleging, among other things, that they had state law claims entitling them to the securities listed on their customer statements, *e.g.,* N.Y.U.C.C. § 8-501(b)(1), even though BLMIS failed to purchase those securities. *Greiff*, 476 B.R. at 724. Hence, each time a customer withdrew fictitious profits, he was receiving money in satisfaction of that entitlement. According to these defendants, BLMIS' "transfers discharged its liability on [their] claims," and consequently, they "took 'for value' under § 548(d)(2)(A)." *Id.* at 725. Defendants in eighty other adversary proceedings, including the Defendant, eventually joined in the motions. *Id.*, Appendix A.

The *Greiff* Court rejected the argument observing that "every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme . . . are not 'for value.'" *Greiff*, 476 B.R. at 725 (citing *Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir.), *cert. denied*, 555 U.S. 1047 (2008); *Sender v. Buchanan* (*In re Hedged-Invs. Assocs., Inc.*), 84 F.3d 1286, 1290 (10th Cir. 1996); and *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir.) (Posner, J.), *cert. denied,* 516 U.S. 1028 (1995)). Consequently, even if the defendants had claims against BLMIS under state or federal law, the transfers from BLMIS exceeding the return of defendants' principal were not made "for value." *Id.* In addition, treating the satisfaction of the state and federal claims as value would conflict with SIPA:

> To allow defendants, who have no net equity claims, to retain profits paid
> out of customer property on the ground that their withdrawals satisfied
> creditor claims under state law would conflict with the priority system
> established under SIPA by equating net equity and general creditor claims.

*Id.* at 727.

Likewise, both the District Court and this Court have rejected the argument that the Trustee's method of calculating fraudulent transfer liability violates the two-year reach back period in Bankruptcy Code § 548(a)(1). *SIPC v. BLMIS* (*In re BLMIS*), 499 B.R. 416, 426-28 (S.D.N.Y. 2013) ("The concept of harm or benefit to the estate is separate from the concept of a reach-back period . . . there is no reason why a line should be drawn at the beginning of the reach-back period in determining whether a transfer was for value."); *Lowrey*, 2018 WL 1442312, at *13-14 (same).  Although the Defendant did not join in the motions that led to these decisions, the decisions are nevertheless law of the case which applies to rulings across adversary proceedings filed within the same bankruptcy case. *In re Motors Liquidation Co.*, Nos. 15-CV-8432(JMF), *et al.*, 2018 WL 2416567, at *14 (S.D.N.Y. May 29, 2018); *accord Moise v. Ocwen Loan Servicing* LLC (*In re Moise*), 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017).

Admittedly, the law-of-the-case doctrine is "a discretionary rule of practice . . . and does not preclude a court from reconsidering its prior opinions, especially in light of an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 152 F.R.D. 18, 24-25 (S.D.N.Y. 1993) (internal quotation marks and citation omitted).  The Defendant contends that intervening change in controlling authority mandates a different result on the antecedent debt and reach-back issues,

- 11 -

respectively, the Second Circuit's decision in *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"), *cert. denied*, 135 S. Ct. 2589 (2015) and the Supreme Court's decision in *Cal. Pub. Emps' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*"). (*See Objection* at 2-3, 8-10, 17-22, 28-29, 36-40.)

The identical arguments were recently made by the defendants in *Lowrey*.[5] There, the Court explored these two cases and the defendants' contentions at length, *see Lowrey*, 2018 WL 1442312, at *8-14, and rather than repeat that lengthy discussion, I incorporate it by reference. For the reasons stated in *Lowrey*, the Court rejects the notion that *Ida Fishman* or *CalPERS* requires a different result from the conclusions reached by every prior court that has considered these issues.

Finally, the Trustee argues that he is entitled to prejudgment interest, and reserves the right to request a post-judgment hearing to determine the appropriate interest rate. (*Motion* at 3 n. 2; *see also Trustee's Reply Memorandum of Law in Further Support of His Motion for Summary Judgment*, dated Dec. 18, 2017, at 9 n. 12 (ECF Doc. # 70).) The award of prejudgment interest is discretionary, and absent a sound reason to deny it, it should be awarded. *Hechinger Inv. Co. of Del., Inc. v. Universal Forest Prods., Inc.* (*In re Hechinger Inv. Co. of Del., Inc.*), 489 F.3d 568, 579–80 (3d Cir. 2007); *In re Milwaukee Cheese Wis., Inc.,* 112 F.3d 845, 849 (7th Cir. 1997); *Savage & Assocs., P.C. v. Mandl* (*In re Teligent Inc.*), 380 B.R. 324, 344 (Bankr. S.D.N.Y. 2008). In exercising discretion whether to award prejudgment interest, a court should consider: "(i) the need to fully compensate the wronged party for actual damages

---

[5] The Defendant explicitly states that the arguments he raises are "substantially the same legal arguments" raised by one of the *Lowrey* defendants. (*Objection* at 40-41 n. 26.)

suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *McHale v. Boulder Capital LLC* (*In re 1031 Tax Grp., LLC*), 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (quoting and applying the criteria set forth in *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL–CIO,* 955 F.2d 831, 833–34 (2d Cir. 1992) to an award of prejudgment interest in connection with an avoided fraudulent transfer).  The Trustee's assertion, made entirely through footnotes, merely sought to reserve the right to a hearing on the matter after the entry of judgment.  Since this Court lacks jurisdiction to enter a final judgment, the Trustee can seek to raise the issue in the event the District Court enters a final judgment in his favor.

   The Court has reviewed the Defendant's arguments and, to the extent not addressed herein, concludes that they lack merit or are moot.  Based on the foregoing, the Clerk of the Court is respectfully directed to mail a copy of these proposed findings of fact and conclusions of law to all parties and note the date of mailing on the docket. FED. R. BANKR. P. 9033(a).

Dated:   New York, New York
         June 19, 2018

                                         /s/ *Stuart M. Bernstein*
                                            STUART M. BERNSTEIN
                                         United States Bankruptcy Judge