**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Jason I. Blanchard

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant.<br>In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |

**TRUSTEE'S REPLY TO THE OBJECTION OF**
**PETER MOSKOWITZ TO THE TRUSTEE'S TWELFTH OMNIBUS MOTION TO**
**DISALLOW CLAIMS AND OVERRULE OBJECTIONS OF CLAIMANTS WHO HAVE**
**NO NET EQUITY**

# **TABLE OF CONTENTS**

**Page(s)**

I. PRELIMINARY STATEMENT ...................................................................................1

II. FACTUAL BACKGROUND........................................................................................2

III. ARGUMENT..................................................................................................................4

    A. Under the Net Investment Method Mr. Moskowitz Has No Net Equity in his Account.......................................................................................5

    B. BLMIS did not Trade in Customer Name Securities on behalf of Mr. Moskowitz..........................................................................................................6

    C. Even if the Trustee were to Treat Mr. Moskowitz's IRA and Roth IRA as Separate BLMIS accounts, Mr. Moskowitz Would Still not be Entitled to a Claim for Net Equity .....................................................................8

    D. Mr. Moskowitz's Remaining Arguments are Without Merit................................10

IV. CONCLUSION............................................................................................................11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adler Coleman Clearing Corp.*,
   211 B.R. 486 (Bankr. S.D.N.Y. 1997)..................................................................................7

*In re Bell & Beckwith*,
   104 B.R. 842 (Bankr. N.D. Ohio 1989) ...............................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd* 654 F.3d 229 (2d Cir. 2011) *cert
   denied Velvel v. Picard*, 133 S. Ct. 25 (2012)......................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   570 B.R. 477 (Bankr. S.D.N.Y. 2017) ..............................................................................5, 8

*In re Chicago P'shp. Bd., Inc.*,
   236 B.R. 249 (Bankr. N.D. Ill. 1999) ..................................................................................8

*In re Enjet, Inc.*,
   220 B.R. 312 (E.D. La. 1998).............................................................................................4

*In re General Vision Servs.*,
   No. 05-01604 (SMB), 2005 WL 3754053 (Bankr. S.D.N.Y. Dec. 28, 2005) .........................4

*Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*,
   94 B.R. 817, 831 (D.N.J. 1989) ..........................................................................................7

*Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*,
   218 B.R. 689 (Bankr. S.D.N.Y. 1998)..................................................................................8

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002)..................................................................................5

*Ryan v. Picard*,
   133 S. Ct. 24 (2012)...........................................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011)..............................................................................5, 8

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff)*,
   522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs.,
   LLC*, 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re
   Bernard L. Madoff Inv. Secs. LLC)*, 697 F. App'x 708 (2d Cir. 2017).....................................9

**Statutes**

11 U.S.C. § 107(c) ...........................................................................................................10

15 U.S.C. § 78fff-2(b) ................................................................................................5, 6, 9

15 U.S.C. § 78fff-2(c)(2) ...............................................................................................7, 8

15 U.S.C. § 78fff-3(a)(2) ....................................................................................................8

15 U.S.C. § 78fff-4(b) .....................................................................................................10

15 U.S.C. § 78fff(a)(1)(A) .................................................................................................7

15 U.S.C. § 78*lll*(2) ...........................................................................................................5

15 U.S.C. § 78*lll*(3) ...........................................................................................................6

15 U.S.C. § 78*lll*(4) ...........................................................................................................5

15 U.S.C. § 78*lll*(5) ...........................................................................................................9

15 U.S.C. § 78*lll*(11) .........................................................................................................5

**Rules**

17 C.F.R. § 300.100-300.105 .............................................................................................8

Fed. R. Bankr. P. 9037 .....................................................................................................10

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, the "Debtor"), by and through his undersigned counsel, respectfully submits this reply to the objection filed by Peter Moskowitz on June 1, 2018 (the "Objection") (ECF No. 17636) to the Trustee's Twelfth Omnibus Motion to Disallow Claims and Overrule Objections of Claimants who have no net equity (the "Motion") (ECF No. 17237).

I.   **PRELIMINARY STATEMENT**

Mr. Moskowitz is a substantial net winner in this proceeding. Based on BLMIS's books and records, Mr. Moskowitz withdrew over $499,000 more than he deposited into his BLMIS customer account. He received a full return of the principal he invested with BLMIS in addition to fictitious profits consisting of other BLMIS customers' money, most of which he received within the two-year period preceding the commencement of this proceeding. Mr. Moskowitz filed two customer claims with the Trustee by the claims' bar date. Applying the Net Investment Method,[1] the Trustee determined that the claims should be denied because Mr. Moskowitz lacked net equity in his customer account. Nothing Mr. Moskowitz states in the Objection contradicts these basic facts, and his allegations have no bearing on the relief requested in the Motion.

Even if Mr. Moskowitz's unsupported factual allegations are accepted as true, they do not entitle Mr. Moskowitz to an allowable customer claim under SIPA. For example, Mr. Moskowitz alleges that in 1998 he requested that Retirement Accounts, Inc. ("RAI"), the custodian for the IRA held on his behalf at BLMIS, close his IRA and transfer the securities purportedly held therein to a newly created Roth IRA. Objection at 2, 4. Mr. Moskowitz further alleges that RAI failed to follow his instructions because a second account at BLMIS was not opened. On this basis, Mr.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

Moskowitz argues his IRA and Roth IRA accounts at RAI should be treated as held by separate customers of BLMIS and his claims should not be calculated according to the Net Investment Method. Objection at 4-5. However, as explained below, even if the IRA and Roth IRA were treated as separate customer accounts, which they cannot be given that Mr. Moskowitz only ever had one BLMIS account, Mr. Moskowitz withdrew more than he deposited into each of the allegedly separate accounts. Therefore, Mr. Moskowitz still would not be entitled to a claim for customer property.

Mr. Moskowitz further argues that the Trustee should replace certain customer name securities purportedly traded and re-registered by BLMIS on his behalf. Objection at 4. As set forth in the declaration of Vineet Sehgal in support of the Trustee's reply to the Objection, attached hereto as Exhibit A ("Sehgal Decl."), BLMIS did not trade customer name securities on behalf of Mr. Moskowitz. Sehgal Decl. at ¶13. Mr. Moskowitz's assertions might entitle him to a claim against RAI or the general estate, but they do not provide the basis for an allowable customer claim. Just like any other customer under SIPA, Mr. Moskowitz shoulders the burden of demonstrating his entitlement to an allowable customer claim. He has not done so and therefore his Objection should be denied and his claims disallowed.

## II.    FACTUAL BACKGROUND

Mr. Moskowitz filed two customer claims with the Trustee. The first was filed on February 26, 2009, which the Trustee designated as claim no. 003998, and the second, a duplicate claim, was filed on March 2, 2009, which the Trustee designated as claim no. 004713. Sehgal Decl. at ¶¶5–6. Claim no. 003998 and claim no. 004713 (jointly, the "Claims") relate to the customer account held at BLMIS on Mr. Moskowitz's behalf, which BLMIS had assigned account number 1ZR135 (the "Account"). Sehgal Decl. at ¶7.

On October 19, 2009, the Trustee issued a determination letter denying the Claims on the

2

basis that Mr. Moskowitz had withdrawn more money from BLMIS than he had deposited and therefore did not have any net equity in the Account (the "Determination Letter"). Sehgal Decl. at ¶8.

On December 1, 2009, Mr. Moskowitz, through counsel, filed an objection to the Determination Letter (the "Objection to Determination" and together with the Objection, the "Objections") primarily contending that the Trustee should apply the Last Customer Statement Method to determine net equity (ECF No. 1030).[2] Sehgal Decl. at ¶10.

After substantial legal proceedings relating to the methodology for calculating customer claims, on February 14, 2018, the Trustee filed the Motion seeking to have the Court disallow any and all claims and overrule objections relating to that calculation filed by or on behalf of customers referred to in this case as net winners or net zeros.

On March 14, 2018, Mr. Moskowitz filed a request for an adjournment and extension of time to file a written objection with respect to the Motion (ECF No. 17333). The Court so ordered the request and directed Mr. Moskowitz to discuss an adjournment and extension of time with the Trustee (ECF No. 17335). After conferring with the Trustee's counsel, Mr. Moskowitz and the Trustee agreed to adjourn the Motion solely with respect to Mr. Moskowitz and extend the time for Mr. Moskowitz to file an objection (ECF Nos. 17383, 17492).

On March 20, 2018, the Trustee filed a certificate of no objection representing to the Court that other than Mr. Moskowitz, no other party had filed a responsive pleading or request for hearing on the Motion (ECF No. 17388).

On March 26, 2018, the Court entered an order granting the Motion as to all parties other

---

[2] As reflected in the stipulations between Mr. Moskowitz and the Trustee to extend the time to file an objection to the Motion (ECF Nos. 17383, 17492), Mr. Moskowitz advised the Trustee that since the filing of the Objection to Determination he had terminated his attorney-client relationship.

3

than Mr. Moskowitz (ECF No. 17411).

The Trustee and Mr. Moskowitz conferred in good faith and the Trustee produced to Mr. Moskowitz BLMIS records concerning his Account, but the parties were ultimately unsuccessful in resolving Mr. Moskowitz's issues with the Motion.

On June 1, 2018, Mr. Moskowitz filed the Objection pro se.

### III. ARGUMENT

As a threshold matter, Mr. Moskowitz makes several untimely arguments in the Objection that this Court should not consider. Mr. Moskowitz was represented by counsel in connection with the Objection to Determination and could have made the arguments he makes for the first time here, including that he had two separate BLMIS accounts subject to SIPC protection and that the Trustee should replace unspecified customer name securities purportedly held in the Account. The Claims Procedure Order required claimants to file objections to the Trustee's claims' determinations within thirty days of the date on which the Trustee mailed the determination. (ECF No. 12 at 6–7). Here, that deadline expired in 2009. Under the Claims Procedure Order, Mr. Moskowitz's additional arguments are therefore untimely. Because Mr. Moskowitz raises new theories arising under newly alleged facts, his new arguments do not relate back to the Objection to Determination. *See generally In re Enjet, Inc.*, 220 B.R. 312, 314-15 (E.D. La. 1998) (reversing bankruptcy court's determination that the debtor's second objection to the creditor's proof of claim related back to the debtor's prior objection); *In re General Vision Servs.*, No. 05-01604 (SMB), 2005 WL 3754053, at *4-5 (Bankr. S.D.N.Y. Dec. 28, 2005) (determining that the estate representative's amended objection to the creditor's claim was time-barred and did not relate back to the original objection). In any event, Mr. Moskowitz's arguments are not supported by the law of this case and his Objection should be overruled.

4

### A. Under the Net Investment Method Mr. Moskowitz Has No Net Equity in his Account

As set forth in the Motion, under SIPA, the Trustee is responsible for assessing and satisfying customer claims. In satisfying customer claims, the Trustee must determine whether a claimant qualifies as a "customer," as defined in SIPA § 78*lll*(2), because customers are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). The customer, here Mr. Moskowitz, bears the burden of demonstrating his entitlement to an allowable customer claim. *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")).[3]

Under SIPA, the term "net equity" is defined as the "dollar amount of the account or accounts of a customer," which must be determined by "calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date." SIPA § 78*lll*(11). SIPA directs the Trustee to make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

Under the Net Investment Method, the Trustee calculates a customer's net equity by adding the total amount of money a customer deposited into his or her BLMIS account less any subsequent

---

[3] The Trustee notes that Mr. Moskowitz has argued that he was "never a direct BLMIS customer." Objection at 5. Because Mr. Moskowitz is proceeding pro se, the Trustee merely notes that this would prohibit Mr. Moskowitz from receiving a distribution on account of his customer claim. *See Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. at 481; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 296 (Bankr. S.D.N.Y. 2011).

5

withdrawals. A final order approving the Trustee's use of the Net Investment Method and rejecting the Last Customer Statement Method has been entered. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd* 654 F.3d 229 (2d Cir. 2011) *cert denied Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012).

Mr. Moskowitz appears to challenge the propriety of the Net Investment Method, which has been fully and finally adjudicated in the Trustee's favor. Objection at 4-5. Based on BLMIS's books and records, the Trustee has determined that Mr. Moskowitz withdrew $499,003.98 more than he deposited in the Account. Sehgal Decl. at ¶8. Mr. Moskowitz does not dispute the Trustee's calculations or that under the Net Investment Method, the Account has negative net equity. Instead, Mr. Moskowitz argues that the Trustee should not be allowed to rely on the books and records of BLMIS's investment advisory business to determine the Claims because those books and records are illegitimate. *See* Objection at 4. Yet, the plain language of SIPA and the decisions affirming the Net Investment Method direct the Trustee to determine a customer's net equity by reference to the debtor's books and records as it relates to deposits and withdrawals of cash. *See* SIPA § 78fff-2(b); *Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 237.

### B. BLMIS did not Trade in Customer Name Securities on behalf of Mr. Moskowitz

SIPA defines "customer name securities" in relevant part as "securities which were held for the account of a customer on the filing date by on or behalf of the debtor and which on the filing date were registered in the name of the customer, … or were in the process of being so registered pursuant to instructions from the debtor…." SIPA § 78*lll*(3). Excluded from this definition are "securities registered in the name of the customer which, by endorsement or otherwise, were in negotiable form." *Id.* Accordingly, a security does not qualify as a "customer name security" under SIPA if it can be negotiated. *In re Bell & Beckwith*, 104 B.R. 842, 858

6

(Bankr. N.D. Ohio 1989); *see Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817, 831 (D.N.J. 1989). Among other duties, SIPA requires the Trustee to "deliver customer name securities" to customers as soon as possible after his appointment, only "if the customer is not indebted to the debtor." SIPA §§ 78fff(a)(1)(A), 78fff-2(c)(2); *see In re Adler Coleman Clearing Corp.*, 211 B.R. 486, 495 (Bankr. S.D.N.Y. 1997).

Mr. Moskowitz asks the Court to compel the Trustee to "replace the customer name securities which were traded and reregistered to establish the [A]ccount…." Objection at 4. Mr. Moskowitz's request should be denied for several reasons. First, BLMIS's books and records do not show that BLMIS held or traded any legitimate securities in the Account, let alone customer name securities. Sehgal Decl. at ¶13. Nor do BLMIS's books and records show that BLMIS re-registered such securities (to the extent it could have) or held out to Mr. Moskowitz or RAI that it did re-register such securities. Second, BLMIS did not trade in customer name securities on behalf of Mr. Moskowitz. Sehgal Decl. at ¶13. In fact, when the Account was opened with BLMIS, RAI sent a letter to BLMIS specifically directing it to "hold all securities in street name unless otherwise directed." Sehgal Decl. at ¶13. Indeed, nothing in the Objection suggests that RAI or Mr. Moskowitz actually directed BLMIS to hold any specific customer name securities in the Account. And Mr. Moskowitz has not provided any evidence that he or RAI requested the purchase of any specific securities to be held in Mr. Moskowitz's name or that the request was acted upon. Third, Mr. Moskowitz signed various agreements with BLMIS in opening the Account which authorized BLMIS to act as Mr. Moskowitz's attorney in fact and agent for all securities transactions. Sehgal Decl. at ¶13. Granting BLMIS such blanket, pre-authorization to trade securities is inconsistent with Mr. Moskowitz's position that BLMIS held and traded specific customer name securities on his behalf. *See In re Chicago P'shp. Bd., Inc.*, 236 B.R. 249, 259 (Bankr. N.D. Ill. 1999) (because

the customer executed a power of attorney granting the debtor the full authority to transfer and negotiate certain securities, the court determined that those securities did not qualify as customer name securities under SIPA). Under these circumstances, at most, Mr. Moskowitz holds a claim against the general BLMIS estate. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 297 n.17 (Bankr. S.D.N.Y. 2011) ("claims based on fraud, misrepresentation or other torts may be entitled to only general creditor status to be paid from the general estate, which is separate from the customer property fund.").

In any event, Mr. Moskowitz had negative net equity of ($499,003.98) in his Account on the filing date and therefore was indebted to BLMIS. *See* SIPA § 78fff-2(c)(2). Accordingly, even if they existed, which they do not, the Trustee would not need to release any customer name securities until Mr. Moskowitz had satisfied his negative net equity obligation to the BLMIS estate.

### C. Even if the Trustee were to Treat Mr. Moskowitz's IRA and Roth IRA as Separate BLMIS accounts, Mr. Moskowitz Would Still not be Entitled to a Claim for Net Equity

Under SIPA, a customer who holds accounts with the debtor in different capacities will be treated as holding separate customer accounts for the purpose of receiving a SIPC advance and a claim for net equity. *See* SIPA § 78fff-3(a)(2). SIPC's Series 100 Rules, which "have the force and effect of law" *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC,* 570 B.R. 477, 481 n.9 (Bankr. S.D.N.Y. Apr. 10, 2017) (quoting *Mishkin v. Ensminger (In re Adler Coleman Clearing Co.)*, 218 B.R. 689, 699 (Bankr. S.D.N.Y. 1998)), set forth the circumstances under which "accounts held by a customer in different capacities" are entitled to separate customer treatment. 17 C.F.R. § 300.100-300.105.

Mr. Moskowitz appears to contend that the IRA and Roth IRA each qualify as separate

8

customer accounts at BLMIS, each entitled to separate SIPA protection.[4] Objection at 5. To the contrary, BLMIS's books and records reflect that the Account was the only account at BLMIS held on Mr. Moskowitz's behalf. None of the documents attached to the Objection demonstrate otherwise. Indeed, the documents on which Mr. Moskowitz relies confirm that he requested that RAI rollover purported securities held in the IRA to the Roth IRA or convert the IRA to the Roth IRA, not that BLMIS create separate customer accounts at BLMIS for the retirement plans, or that BLMIS in fact created separate accounts. Moreover, Mr. Moskowitz acknowledges that he received customer statements for the Account throughout its existence. Objection at 2. Yet, the customer statements dated before and after Mr. Moskowitz's request to RAI reflect the same account number for the Account. Sehgal Decl. at ¶13.

Even if BLMIS maintained different customer accounts for the IRA and Roth IRA, which it did not, neither account would be entitled to a claim for net equity under the Inter-Account Method.[5] In the Motion, the Trustee described the Inter-Account Method, the method he used to calculate the net equity for accounts with inter-account transfers, i.e. transfers between BLMIS customer accounts which no new funds entered or left BLMIS. Under the Inter-Account Method, the Trustee calculated the actual amount of principal available in the transferor account at the time of the transfer, and credited the transferee account up to that same amount, but did not include any fictitious gains in the net equity calculation. Like the Net Investment Method, a final order approving the Trustee's use of the Inter-Account Method has been entered. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y.

---

[4] It is unclear whether Mr. Moskowitz is arguing that RAI's treatment of the IRA and Roth IRA as two separate accounts at RAI entitles him to SIPA protection. Because RAI is neither a SIPC member nor a debtor in this proceeding, whether Mr. Moskowitz held separate accounts with RAI is not relevant to determining his entitlement to a net equity claim as a customer of BLMIS. *See* SIPA §§ 78fff-2(b), 78*lll*(5). Accordingly, the Trustee has construed Mr. Moskowitz's argument as requesting treatment of the IRA and Roth IRA accounts as separate BLMIS accounts.

[5] In addition, if each purported account was calculated independently in accordance with the Net Investment Method, each would be a net winner.

9

2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC*, 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 697 F. App'x 708 (2d Cir. 2017).

According to Mr. Moskowitz, in 1998, he instructed BLMIS to transfer the securities purportedly held in his IRA into a newly created Roth IRA. Even if Mr. Moskowitz's allegation was corroborated by BLMIS's books and records, each account would have had negative net equity under the Inter-Account Method. In other words, by 1997 Mr. Moskowitz had depleted all of the principal from the Account. Therefore, the IRA lacked sufficient principal to transfer to the Roth IRA in 1998. *See* Sehgal Decl. at ¶9.

### D.  Mr. Moskowitz's Remaining Arguments are Without Merit

Mr. Moskowitz contends that the Trustee caused FISERV to refuse to file a claim form on his behalf. *See* Objection at 4. This allegation is without support, but even if true, it is irrelevant to Mr. Moskowitz's entitlement to an allowable customer claim. Mr. Moskowitz filed his Claims by the claims bar date, the Trustee considered the Claims, but ultimately determined that the Account lacks net equity. Mr. Moskowitz does not explain how he was prejudiced as a result of having to file the Claims himself.

Mr. Moskowitz further contends that the Trustee violated his privacy because the Trustee "listed me as a customer." Objection at 5. Mr. Moskowitz fails to explain how this violated his privacy or was in violation of the Bankruptcy Code or Rules. *See* 11 U.S.C. § 107(c); FED. R. BANKR. P. 9037. In fact, under SIPA, the Trustee was required to provide notice to parties who appeared from BLMIS's books and records to have held an account with BLMIS, such as Mr. Moskowitz, within twelve months of the commencement of the liquidation proceeding. *See* SIPA § 78fff-4(b). The Trustee and his professionals endeavor to maintain the privacy of all customers and customer-related information as required by applicable law and have no reason to believe that Mr. Moskowitz's privacy has been violated.

Finally, Mr. Moskowitz argues that the Trustee has induced RAI and/or FISERV to breach its fiduciary duty to Mr. Moskowitz. Mr. Moskowitz fails to substantiate this baseless allegation with any evidence and this Court should disregard it.

## IV.   **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto, overruling the Objections, disallowing the Claims, and granting such other and further relief as is just.

Dated: New York, New York  
　　　June 20, 2018

Respectfully submitted,

*/s/ David J. Sheehan*  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Nicholas J. Cremona  
Email: ncremona@bakerlaw.com  
Jorian L. Rose  
Email: jrose@bakerlaw.com  
Amy E. Vanderwal  
Email: avanderwal@bakerlaw.com  
Jason I. Blanchard  
Email: jblanchard@bakerlaw.com  
**Baker & Hostetler LLP**  
45 Rockefeller Plaza  
New York, New York 10111  
Tel: (212) 589-4200  
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the chapter 7 estate of Bernard L. Madoff*