**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Geraldine E. Ponto
Marshall J. Mattera

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>**LETTER OF REQUEST** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERICO CERETTI, *et al.*,<br><br>    Defendants. | Adv. Pro. No. 09-01161 (SMB) |

# REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE APPROPRIATE JUDICIAL AUTHORITY IN THE UNITED KINGDOM

Presenting his compliments to the appropriate judicial authority of the United Kingdom, this Request is made by The Honorable Stuart M. Bernstein, of the United States Bankruptcy Court for the Southern District of New York, which is located at One Bowling Green, New York, New York 10004-1408, United States of America, to The Senior Master, for the attention of the Foreign Process Section, Room E16 of the Royal Courts of Justice, Strand, London WC2A 2LL.

A copy of the documents obtained through this Request should be returned to The Honorable Stuart M. Bernstein, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004-1408.

In light of the international law and comity that exists between the United States and the United Kingdom, the undersigned applicant respectfully submits this Request.

## INTRODUCTION

This Request seeks evidence for use in the above-named proceeding pending before this Court, which alleges claims arising under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and applicable provisions of the United States Bankruptcy Code, and the New York Debtor and Creditor Law. The purpose of this Request is to obtain testimonial evidence from Mr. Paul Boulton for use as evidence in a trial in this proceeding in this Court. This Court has not yet made a determination on the merits of the claims and allegations asserted by the Plaintiff in this action, which are summarized below.

The Plaintiff's Fourth Amended Complaint filed on March 17, 2014 (hereinafter, "FAC") makes clear that the Plaintiff's allegations against Kingate Global Fund, Ltd., In Liquidation ("Kingate Global") and Kingate Euro Fund, Ltd., In Liquidation ("Kingate Euro" and together with Kingate Global, the "Kingate Funds"), and in particular, of their actual

2

knowledge of fraud and wilful blindness are largely based on the imputation of the knowledge and bad faith of their service providers, their officers and agents, and the individuals that dominated and controlled them, including, but not limited to, Kingate Management Limited ("KML"), FIM Limited, FIM Advisers LLP ("FIM Advisers"), Mr. Federico Ceretti, and Mr. Carlo Grosso.  On August 11, 2015, in its denial of the Kingate Funds' Motion to Dismiss, this Court found, in relevant part:

> to recover from the [Kingate] Funds under the Avoidance Claims, the FAC must also plead facts that permit the imputation of the Non-Fund Defendants' knowledge to the Kingate Funds. . . . The Non-Fund Defendants [which include Citi Hedge Fund Services Limited ("Citi Hedge") and KML] were agents of the Kingate Funds, and their dealings with BLMIS and Madoff on the Funds' behalf fell within the scope of their duties.  Ceretti and Grosso created the Funds to invest exclusively with BLMIS and created the Management Defendants to manage the Kingate Funds.  In addition, Citi Hedge provided administrative services for the Kingate Funds. . . . The allegations in the FAC are . . . sufficient to support the inference that the Funds benefitted from the actions of their agents even if the agents were conflicted and also acted for their own benefit. . . . Accordingly, the Court concludes that the FAC pleads sufficient facts to permit imputation of the Non-Fund Defendants' knowledge to the Funds.

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec.)*, No. 09-01161 (SMB), 2015 WL 4734749, at *15-16 (S.D.N.Y. Aug. 11, 2015).  The Plaintiff seeks the evidence here requested for use at trial and in support of the facts pleaded in his FAC.

### THE PARTIES AND THEIR REPRESENTATIVES

The parties to this action and their representatives are as follows:

(a) The Plaintiff is Mr. Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under SIPA, substantively consolidated with the estate of Bernard L. Madoff.  The Trustee is represented in this action by Baker & Hostetler LLP, 45 Rockefeller Plaza, New York, New York 10111, United States of America.

3

(b) The Defendants in this action are the Kingate Funds. The Kingate Funds are in liquidation proceedings and act through their joint liquidators, who are represented in this action by Quinn Emanuel Urquhart & Sullivan LLP, 51 Madison Avenue, New York, New York 10010, United States of America.

### NATURE AND PURPOSE OF THE PROCEEDING
### AS ALLEGED BY THE TRUSTEE IN HIS FOURTH AMENDED COMPLAINT

**The Proceeding**

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (SMB), is pending.

By way of background, Bernard L. Madoff ("Madoff"), through the investment advisory business of BLMIS, conducted a decades-long Ponzi scheme of breathtaking scale. His fraud was sustained by infusions of money from around the globe. In particular, domestic and foreign investment vehicles, colloquially known as "feeder funds," injected several billions of dollars into his scheme.

Included among these feeder funds were the Kingate Funds. Mr. Ceretti and Mr. Grosso founded the Kingate Funds. Mr. Ceretti and Mr. Grosso formed an important part of Madoff's *de facto* global sales force, marketing BLMIS to European investors. Since their inception, the Kingate Funds deposited a combined total of approximately $1.7 billion with BLMIS, and over time withdrew nearly a billion dollars from BLMIS. The Trustee alleges that these withdrawn funds comprise customer property and constitute avoidable transfers under the United States Bankruptcy Code and other applicable law that the Trustee seeks to recover for equitable distribution.

The FAC seeks, *inter alia*, to avoid and recover $926,351,905 in fraudulent transfers made to the Kingate Funds under the Bankruptcy Code, the New York Debtor Creditor Law, and SIPA § 78fff-2(c)(3). Many of the issues and allegations contained in the FAC, a copy of

4

which is attached to this Request as Exhibit A, are relevant to Mr. Boulton, who worked closely with Mr. Ceretti and Mr. Grosso and who held senior positions at FIM Limited, an entity Mr. Ceretti and Mr. Grosso dominated and controlled. These allegations and facts discussed below give rise to the need for the Letter of Request.

**Mr. Boulton's Connection to the Kingate Funds**

This Request seeks to obtain testimony from Mr. Boulton. Mr. Boulton resides in West Sussex, England. The Trustee's investigation under his statutory authority, including the transcripts of the Kingate Funds' interviews of Mr. Ceretti and Mr. Grosso, testimony provided by Mr. Ceretti and Mr. Grosso to third parties, the review of documents produced to the Trustee, and depositions taken by the Trustee in this proceeding establish that Mr. Boulton has knowledge that is highly relevant to the Trustee's claims in the FAC.

Following an introduction to Madoff by the head of a large feeder fund, Tremont (Bermuda) Limited ("Tremont"), Mr. Ceretti and Mr. Grosso, formed Kingate Global in 1994 in the British Virgin Islands ("BVI"). Kingate Global opened an account with BLMIS that same year. By that time, BLMIS would accept only institutional investors. Mr. Ceretti and Mr. Grosso were sophisticated investment professionals with decades of combined experience in the investment industry. In 1996, Mr. Ceretti and Mr. Grosso created a sub-fund of Kingate Global to attract investments in Deutsche Marks that would then be converted to U.S. currency and deposited with BLMIS. That same year, the sub-fund opened a customer account with BLMIS. In 2000, that sub-fund became a separate BLMIS feeder fund, Kingate Euro, also formed in the BVI, to solicit investments abroad in Euros that would then be converted to U.S. currency and deposited with BLMIS. Kingate Euro assumed the rights to the sub-fund's account with BLMIS. Mr. Ceretti and Mr. Grosso structured the Kingate Funds separately, but they operated relative to BLMIS substantially the same.

5

Letter of Request    Pg 6 of 14

At the time they formed the Kingate Funds, Mr. Ceretti and Mr. Grosso headed an asset management and investment advisory firm in London called FIM Limited.  It was founded by Mr. Grosso in 1981, but Mr. Ceretti became an equal owner in or about 1986.  Mr. Ceretti and Mr. Grosso later co-founded FIM Advisers in London, which succeeded FIM Limited in 2005.  For a time, they operated a related company based in New York, New York named FIM (USA) Inc.  FIM Limited was the managing member of FIM Advisers, and was its immediate and FIM (USA) Inc.'s ultimate parent.  The FIM entities had deep experience in conducting due diligence on investment funds and were well-known for their expertise in this area.  Mr. Ceretti and Mr. Grosso were the sole directors of FIM Limited, the designated members of FIM Advisers, and dominated and controlled all of the FIM entities.

Despite having an existing company that could have managed the Kingate Funds, Mr. Ceretti and Mr. Grosso formed a separate management company by the name of KML to act as manager for the Kingate Funds.  KML employees frequently communicated with, and sought advice from, Mr. Ceretti and Mr. Grosso on the management and operation of KML and the Kingate Funds.  Tremont was appointed as co-manager with KML for Kingate Global, a relationship that lasted about ten years.

Mr. Ceretti and Mr. Grosso caused KML to enter into a consulting and distribution agreement with the FIM entities.  The FIM entities provided marketing, analysis, management, and consulting services to KML and the Kingate Funds.  As a result, much of KML's management responsibilities were delegated to the FIM entities.

FIM had a robust due diligence process and marketed itself to the public accordingly.  In addition to acting as consultant, at least fourteen of FIM's investment funds were invested in the Kingate Funds.  The FIM funds' investments in the Kingate Funds required the performance of due diligence on the Kingate Funds and BLMIS.  The diligence conducted by FIM is part of the cumulative knowledge that can be imputed to the Kingate Funds via Mr. Ceretti and Mr. Grosso.

On Mr. Ceretti's and Mr. Grosso's direction, the Kingate Funds engaged other service providers for the Kingate Funds, including Citi Hedge Fund Services Limited ("Citi Hedge"), based in Bermuda, as administrator, HSBC Bank Bermuda ("HSBC"), as custodian, and PricewaterhouseCoopers ("PWC"), as auditor.

Mr. Ceretti and Mr. Grosso have first-hand knowledge of the flow of the Kingate Funds' assets to and from HSBC, and gave direction as to the movement of those funds to and from BLMIS, or to the Kingate Funds' other service providers. Mr. Ceretti and Mr. Grosso also have first-hand knowledge of the roles performed by Citi Hedge, HSBC, and PWC on behalf of the Kingate Funds, and the concerns raised by these service providers about BLMIS in the course of performing their roles.

To complete their business enterprise relative to investing with BLMIS, Mr. Ceretti and Mr. Grosso formed estate trusts in Jersey, and shell companies, through which they beneficially owned KML. Through El Prela Trust, and its holding companies, Mr. Ceretti personally received millions of dollars in management fees paid to KML as a result of its work on behalf of the Kingate Funds.

Throughout the Kingate Funds' fourteen years of operation, Mr. Ceretti spoke directly with BLMIS employees, including Frank DiPascali, and met with Madoff. After Madoff confessed to running a Ponzi scheme in 2008, the Kingate Funds went into winding up proceedings in the BVI and Bermuda. KML also went into a winding up proceeding in Bermuda.

Mr. Ceretti and Mr. Grosso were essential, and dominant, parties to the enterprise they engineered to benefit from Madoff's fraud, and they acted through the FIM entities. FIM Limited, Mr. Ceretti, and Mr. Grosso all have knowledge concerning the Kingate Funds, KML, the FIM entities, their trusts and shell companies, all of which is relevant to the allegations in the FAC and give rise to this Request.

7

Mr. Boulton joined FIM Limited in 1997 and remained there for approximately seven years. He served as Director of Research and was a member of the investment committee at FIM Limited.

As the head of research and a member of the investment committee, which was responsible for all aspects of the investment process, Mr. Boulton has first-hand knowledge of the operations and due diligence process of FIM Limited. Many of FIM Limited's employees that performed due diligence on behalf of FIM Limited reported directly to Mr. Boulton.

In his role, Mr. Boulton would have had knowledge of the due diligence performed on the Kingate Funds. Mr. Boulton himself participated in the due diligence process. Mr. Boulton also advised FIM Limited's investors on whether to invest in Kingate and participated in decisions to invest FIM investment funds in the Kingate Funds.

Mr. Boulton had a close relationship with Mr. Grosso and has knowledge of Mr. Grosso's instructions with respect to performing due diligence on and making investment decisions concerning the Kingate Funds. Furthermore, Mr. Boulton frequently communicated with investors regarding the Kingate Funds, and has knowledge of the concerns raised about them by investors and employees at FIM Limited. Mr. Boulton was integral to the operations of FIM Limited, and his high level position at the firm exposed him to the decisions made regarding the Kingate Funds' operations and policies.

Mr. Boulton sent and received many communications regarding the Kingate Funds in his capacity as head of research at FIM Limited, and he possesses knowledge regarding the contents of these communications, which are relevant to the allegations contained in the FAC.

Mr. Boulton's knowledge is essential to the prosecution of the Trustee's claims in this adversary proceeding.

Specifically, the Trustee anticipates that Mr. Boulton will be able to provide further information in relation to the issues and allegations contained in paragraphs 4, 5, 7, 49, 50, 51,

52, 53, 101, 104, 110, 112, 115-118, 120, 122-130, 137-141, 146-163, 165-166, 170-174, 176-186, 188-222, 224-225, 227-241 of the FAC.

## REQUEST FOR JUDICIAL ASSISTANCE

The within Request includes a request for the examination under oath of Mr. Boulton, who the Trustee believes upon information is a resident of and is located in West Sussex, England.

**Request for Testimonial Evidence and Question List for Mr. Boulton**

**Definitions**

"Madoff" refers to Bernard L. Madoff.
"BLMIS" means Bernard L. Madoff Investment Securities LLC.
"Kingate Global" means Kingate Global Fund, Ltd.
"Kingate Euro" means Kingate Euro Fund, Ltd.
"Kingate Funds" means Kingate Euro and Kingate Global.
"KML" means Kingate Management Limited.
"FIM" means FIM Limited or FIM Advisers LLP.

**Subject Matter of Examination**

<u>Nature</u>

These questions will seek confirmation of relevant matters including Mr. Boulton's background, qualifications, and experience, the circumstances under which he learned of this Request, and the preparation of his response, including any communications with third parties. Matters to be addressed in questioning are likely to include:

- details of Mr. Boulton's education and professional qualifications;
- Mr. Boulton's employment history to date; and
- whether Mr. Boulton has discussed this Request with anyone, and if so, details of the substance and circumstances of any relevant communications to the extent that they are not protected by legal privilege.

<u>Purpose</u>

This information will go to Mr. Boulton's competence and credibility (i.e., the weight the Court should give to Mr. Boulton's evidence).

**Mr. Boulton's Employment at FIM**

<u>Nature</u>

These questions will cover Mr. Boulton's roles and responsibilities at FIM, details of

9

those who reported to him and to whom he reported, FIM's organizational structure and policies, and the nature of the work conducted by various staff and divisions at FIM. Matters to be addressed in questioning are likely to include:

- Mr. Boulton's responsibilities at FIM;
- the reporting structure at FIM; and
- the role and responsibilities of those within the reporting structure at FIM.

Purpose

This information will establish Mr. Boulton's knowledge of and involvement in the operations and activities of FIM and provide the Trustee with information concerning FIM's operations, which is relevant to various of the allegations concerning FIM and its role in relation to the Kingate Funds as contained in the FAC.

**FIM's Due Diligence**

Nature

These questions seek to confirm Mr. Boulton's knowledge of FIM's due diligence. Matters to be addressed in questioning are likely to include:

- the research and due diligence process at FIM;
- FIM's market reputation for its due diligence process;
- the structure and composition of FIM's investment portfolio, and Mr. Boulton's experience concerning the fund approval process;
- the performance and role of risk management in the FIM due diligence process;
- the level of consistency in the methods employed in FIM due diligence and research; and
- the role of Grosso in the performance of due diligence.

Purpose

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony on FIM's due diligence procedures and protocols will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Due Diligence Performed on the Kingate Funds**

Nature

These questions will confirm Mr. Boulton's knowledge of the usual due diligence performed on funds by FIM, in comparison with the process applied to the Kingate Funds. Matters likely to be addressed in questioning are likely to include:

10

- Mr. Boulton's communications with colleagues at FIM, including communications dealing with the treatment of the Kingate Funds at FIM in the context of their wider due diligence activities, responsibilities, and business;
- documentation concerning analysis and knowledge of and due diligence performed upon the Kingate Funds; and
- FIM's communications with KML in relation to the duties it performed on behalf of KML.

Purpose

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony concerning FIM's due diligence on the Kingate Funds will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Relationship with Ceretti and Grosso**

Nature

These questions will confirm Mr. Boulton's knowledge of the roles of Ceretti and Grosso at FIM and in relation to the Kingate Funds. Matters to be addressed in questioning are likely to include:

- Ceretti's and Grosso's relationships with key stakeholders such as Madoff;
- Ceretti's and Grosso's personal interests in the Kingate Funds;
- Ceretti's and Grosso's influence over FIM's due diligence on the Kingate Funds; and
- Ceretti and Grosso's influence over core investment and risk decisions related to FIM's involvement in the Kingate Funds.

Purpose

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness, and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. The Trustee alleges that Ceretti and Grosso were the key actors in the Kingate Funds, the Kingate Funds' ongoing investments with Madoff, and had actual knowledge of, or were wilfully blind to Madoff's fraud. Accordingly, Mr. Boulton's testimony concerning Ceretti's and Grosso's role relative to the Kingate Funds and their service providers will be used as evidence at trial to demonstrate Ceretti's, Grosso's, and FIM's knowledge as the Kingate Funds' agents.

**FIM Funds' Investments in the Kingate Funds**

<u>Nature</u>

Of the approximate 18 funds managed by FIM, 14 of those funds were invested in Kingate. These questions involve the considerations behind these investments and how they were managed during the material times. Matters to be addressed in questioning are likely to include:

- the level of and rationale behind FIM's investments and investment positions in the Kingate Funds during the material times of FIM's role as investor and manager;
- FIM's treatment of the Kingate Funds in the context of its investment portfolio; and
- the level of consistency employed between separate investments and clients.

<u>Purpose</u>

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness, and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony concerning FIM's investments in the Kingate Funds will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Communications with Investors**

<u>Nature</u>

These questions will investigate Mr. Boulton's knowledge of the information provided to the Kingate Funds' investors about the Kingate Funds (and his involvement, and that of his co-workers, in the process of presenting, sharing, and updating information at FIM).

<u>Purpose</u>

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge of or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness, and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony concerning communications with the Kingate Funds' investors will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Concerns of Investors**

<u>Nature</u>

These questions will investigate Mr. Boulton's knowledge and awareness of the concerns of the Kingate Funds' investors, if any, about the Kingate Funds, and the efforts made by FIM and its staff to address the questions and concerns raised.

<u>Purpose</u>

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness, and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony regarding concerns of the Kingate Funds' investors will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Conflict in FIM's Relationship to the Kingate Funds**

<u>Nature</u>

These questions will investigate Mr. Boulton's knowledge of any conflict that existed with respect to FIM's role as investor in and overseeing of due diligence of the Kingate Funds, and Mr. Boulton's efforts to address this issue including communications with others.

<u>Purpose</u>

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony concerning the perceived conflict of interest will be used as evidence at trial to demonstrate FIM's knowledge as the Kingate Funds' agent.

**Mr. Boulton's Reaction to the Exposure of Madoff's Fraud**

<u>Nature</u>

These questions will confirm Mr. Boulton's reaction to the exposure of Madoff's fraud and his knowledge of how FIM, its officers, directors, and managers, reacted and responded to the exposure.

<u>Purpose</u>

The FAC seeks to avoid and recover fraudulent transfers made to the Kingate Funds. In order to do so, the Trustee must demonstrate that the Kingate Funds had actual

knowledge or were wilfully blind to fraud at BLMIS. This Court determined that the FAC alleges such actual knowledge and wilful blindness and that the Trustee may impute the knowledge of the Kingate Funds' agents to the Kingate Funds. Accordingly, Mr. Boulton's testimony concerning reactions following the exposure off Madoff's fraud will be used as evidence at trial to demonstrate FIM's knowledge as Kingate Funds' agent.

## COSTS

All fees and costs incurred in the execution of this Request shall be borne by Plaintiff.

## CONCLUSION

This Court expresses its appreciation for this assistance and states that the courts of the United States are authorized by statute, section 1782 of Title 28 of the United States Code, to extend similar assistance to the tribunals of the United Kingdom, and shall be ready and willing to provide reciprocal assistance in a similar case when required.

The Court extends to the judicial authorities of the United Kingdom the assurances of the highest consideration.

Dated: New York, New York

_____

_____
The Honorable Stuart M. Bernstein
United States Bankruptcy Judge