Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Lead Case No. 08-99000-smb

4    Case No. 08-01789-smb

5    Adv. Case No. 09-01161-smb

6    - - - - - - - - - - - - - - - - - - - - - - - - - - x

7    SECURITIES INVESTOR PROTECTION CORPORATION,

8                    Plaintiff,

9              v.

10   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

11                   Defendants.

12   - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   PICARD,

14                   Plaintiff,

15             v.

16   KINGATE GLOBAL FUND, LTD. et al.,

17                   Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

1            United States Bankruptcy Court

2            One Bowling Green

3            New York, NY  10004

4

5            June 27, 2018

6            10:28 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

Page 3

1    HEARING re Trustee's Twelfth Omnibus Motion to Disallow

2    Claims, Solely with respect to claimant Peter Moskowitz

3

4    HEARING re Conference re Motion for an Order Establishing

5    Omnibus Proceeding for the Purpose of Determining the

6    Existence, Duration, and Scope of the Ponzi Scheme at BLMIS

7

8    HEARING re Conference re Letters submitted on June 6 [ECF

9    Doc. # 348] & June 18 [ECF Doc. # 352]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   BAKER HOSTETLER

4        Attorneys for Trustee BLMIS

5        45 Rockefeller Plaza

6        New York, NY 10111

7

8   BY:  GERALDINE PONTO

9        NICHOLAS J. CREMONA

10       STACEY A. BELL

11       MELISSA L. KOSACK

12       STEPHANIE A. ACKERMAN

13       JASON BLANCHARD

14

15   DENTONS US LLP

16       Attorneys for Defendants

17       1221 Avenue of the Americas

18       New York, NY 10020

19

20   BY:  CAROLE NEVILLE

21

22

23

24

25

Page 5

1    SECURITIES INVESTOR PROTECTION CORPORATION

2         1667 K Street, N.W., Suite 1000

3         Washington, DC 20006

4

5    BY:  KEVIN H. BELL

6

7    PRYOR CASHMAN LLP

8         Attorneys for the Defendants

9         7 Times Square

10        New York, NY 10036

11

12   BY:  RICHARD LEVY, JR.

13

14   MORRISON & FOERSTER LLP

15        Attorneys for Joint Liquidators Kingate

16        250 West 55th Street

17        New York, NY 10019

18

19   BY:  JOHN A. PINTARELLI

20

21

22

23

24

25

Page 6

1    MCDERMOTT WILL & EMERY LLP

2         Attorneys for Sage Associates, Sage Realty, Malcolm

3         Sage, Martin Sage, Ann Sage

4         340 Madison Avenue

5         New York, NY 10173

6

7    BY:  ANDREW B. KRATENSTEIN

8

9    HUNTON ANDREWS KURTH LLP

10        Attorneys for Defendants

11        200 Park Avenue

12        New York, NY 10166

13

14   BY:  RICHARD A. RICH

15

16   FISHERBROYLES LLP

17        Attorneys for Defendants

18        445 Park Avenue

19        New York, NY 10022

20

21   BY:  RICHARD A. KIRBY

22

23

24

25

1   STEVENS & LEE

2         Attorneys for Legacy Capital

3         485 Madison Avenue, 20th Floor

4         New York, NY 10022

5

6   BY:  NICHOLAS F. KAJON

7

8   CHAITMAN LLP

9         Attorneys for Defendants

10        465 Park Avenue

11        New York, NY 10022

12

13  BY:  HELEN DAVIS CHAITMAN

14

15  PETER MOSKOWITZ (TELEPHONICALLY)

16        Pro Se

17

18  ALSO PRESENT TELEPHONICALLY:

19

20  NATHANIEL S. KELLEY

21  PATRICK MOHAN

22  DAVID J. SHEEHAN

23

24

25

Page 8

1                    P R O C E E D I N G S

2              THE COURT:  Madoff.

3              MS. BELL:  Your Honor, we filed an agenda with the

4      Court yesterday.

5              THE COURT:  Do you have an extra copy?  Oh, I have

6      it.  Thank you.

7              MS. BELL:  So we plan on proceeding in the order

8      of the agenda unless the Court would prefer otherwise.

9              THE COURT:  No, we can start with the conference.

10             MS. BELL:  Good morning, Your Honor.  My name is

11     Stacey Bell.  Baker Hostetler, counsel for the Trustee.

12     We're here on a status conference on the Trustee's motion

13     for an order establishing an omnibus proceeding on the

14     existence, duration, or scope of the Ponzi scheme at BLMIS.

15             As the Court is aware, the Trustee filed his

16     motion on February 23rd in response to this Court's numerous

17     request to set up an omnibus proceeding to address the Ponzi

18     scheme at BLMIS, or as the Court as called it, the fraud

19     proceeding.

20             The goal, as established in the motion of the

21     Trustee -- Trustee's motion is to consolidate the remaining

22     good faith actions.  And at the time we filed the motion,

23     there were 155 good faith actions; we're now down to 153.

24     Two of those cases have been dismissed.  And we received on

25     April 11th objections from eight law firms representing 106

Page 9

1    of the 155 cases.

2           Since that time, that number has gone down to

3    seven law firms because we're down to 153 cases.  And so

4    we've, over the last several weeks, been engaged in

5    telephonic discussions with the Defendants, with the

6    objecting Defendants.

7           We've also had, as of three weeks ago, a

8    conference with the Defendants to go through some of the

9    objections and to see how we can streamline the issues for

10   the Court.

11          Two weeks ago we filed -- we haven't yet put in

12   our reply, and I know that's part of what we'll do today,

13   but two weeks ago, I filed a letter with the Court

14   requesting an extension of time, an extension of 60 days, so

15   that the parties would have additional time to continue

16   those discussions.

17          We think, just based on the last meeting we had,

18   that we're at least optimistic that we will be in a position

19   to agree on a general framework as to what the omnibus

20   proceeding would look like.

21          We've had numerous discussions about discovery and

22   what the Trustee intends to include in the omnibus

23   proceeding.  And so we hope that the Court would give us the

24   ability to continue those discussions, because we're

25   optimistic that those will be fruitful.

Page 10

1          Your Honor, I'm happy to go through anything you'd

2     like to discuss.  I think that just in the interest of

3     judicial economy and in the interest of having the omnibus -

4     - the Ponzi proceeding only once, as the Court has

5     requested, the Trustee is amenable to making certain

6     revisions to the proposed order, though we do think that the

7     order as proposed is -- offers a practical solution to the

8     issue of -- the common issue that runs across all cases.

9     And I don't think that there is any quibble on that, any

10    quarrel on whether the issue of the Ponzi scheme at BLMIS is

11    an issue that runs across all the cases that are remaining.

12          We do think it's a fair and efficient way to go

13    about establishing that issue in having a proceeding on that

14    issue.  But I recognize, just based on the objections that

15    we've received, that the Defendants -- and I don't propose

16    to speak for them, nor do I think they would want me to --

17    that the Defendants have objected to just about every

18    portion of the Trustee's proposed order.

19          THE COURT:  But you said you'd made progress on

20    those objections?

21          MS. BELL:  I think we've made progress.  And I

22    don't know if there's someone from the defense group that

23    would like to address this, but we've had discussions around

24    if we were to do a consolidated proceeding that doesn't go

25    all the way through trial.  And, again, I'm not committing

Page 11

1    to that here because we still think that what the Trustee

2    has put forward is really the best solution to a difficult,

3    a challenging question.

4            But if we were to do, for example, consolidated

5    discovery, and I think that would get rid of many of the

6    objections that the Defendants have around the stern issues,

7    jury trial issues -- around due process concerns; the

8    ability to litigate their own defenses.

9            And so the goal was to come up with something that

10   would streamline the issues but get these cases moving,

11   recognizing that we are trying to get -- not have

12   inconsistent results.  And in the interest of judicial

13   economy, the Trustee is amenable to the extent that it

14   doesn't negate the purpose of the omnibus proceeding.

15   Because if we agree to a procedure that doesn't accomplish

16   what the Court has asked us to accomplish, then obviously

17   that doesn't do the job that we need to do.

18           THE COURT:  How do you deal with the Defendant's

19   concerns about the right to a jury trial?  Because you're

20   asking me to make either findings of fact or proposed

21   findings of fact in connection with the onset of the Ponzi

22   scheme, right?

23           MS. BELL:  Yes.  I think, Your Honor, just based

24   on the revised order that we're contemplating now, and

25   again, I think further discussions with the Defendants would

Page 12

1    get us closer to figuring out whether this is something we

2    could agree to, but if we had consolidated discovery, then I

3    think that issue would no longer be before Your Honor

4    because --

5              THE COURT:  But how would consolidated discovery

6    resolve a 7th Amendment objection?

7              MS. BELL:  So, the idea would be for this

8    proceeding to go through the closed effect in expert

9    discovery -- or if we bifurcate the proceeding into two

10   parts.  And so the first part would simply deal with

11   discovery and we would get all the cases -- they would

12   proceed on the same evidence.

13             Now, at the end of that part of the proceeding,

14   the Defendants, I'm sure, would make either a motion to

15   withdraw the reference or there would be arguments on

16   whether or not Your Honor could enter a final judgment.

17   It's our review, however, that the Court certainly could --

18   many of these cases have claims that were filed and/or

19   objections pending...

20             THE COURT:  Well, that's what I wanted to ask you.

21   In how many of these cases are there pending objections?

22             MS. BELL:  I think we have those numbers here,

23   Your Honor.  Of the 106 cases -- and I'll get you that

24   number in a moment but --

25             THE COURT:  You said there were 153.

Page 13

1          MS. BELL:  There are -- so we started with 153.

2     The objecting Defendants represent at this point initially

3     106 but we dismissed one of those cases, so there are 105

4     cases that are represented here just by the objecting

5     Defendants.  The other Defendants did not object to the

6     Trustee's option.

7          I do think, however, Your Honor, that if we have

8     consolidated discovery and the proceeding stops there, then

9     perhaps at the end of that proceeding -- and, again, the

10    Trustee -- we don't want to negotiate against ourselves, but

11    part of what we're trying to establish is, I think just

12    based on the Defendant's papers and the argument, the

13    discussions we've had, there is at least some openness to

14    having consolidated discovery.

15         If what's before the Court -- and the proposed

16    order before the Court would deal with just that issue, then

17    we could make a part two of this motion where we could fight

18    over whether or not the Court can hear some of those cases.

19    I think 111 of the cases have claims, and 72 of those cases

20    -- 111 of the 153 have --

21         THE COURT:  These -- but not just objections.

22    Have -- what number did you say?  72?

23         MS. BELL:  111.

24         THE COURT:  111.

25         MS. BELL:  72 with objections.

```
 1              THE COURT:  They filed objections to the Trustee's

 2    determination and those objections are still pending?

 3              MS. BELL:  Well --

 4              THE COURT:  If they're not pending, I don't think

 5    it implicates the claims allowance process.

 6              MS. BELL:  Your Honor, my colleague, Nick Cremona,

 7    is prepared to argue that -- the issue on --

 8              THE COURT:  I already addressed that in Apfelbaum,

 9    I think.

10              MR. CREMORA:  I completely agree, Your Honor.  I

11    think that there are -- to the -- in Apfelbaum, there, there

12    was a claim determination by the Trustee and no objection

13    was ever filed.

14              In the cases when we're speaking about these 72

15    cases, there are, from the Trustee's perspective, objections

16    to the Trustee's determination that are extant, that are

17    still outstanding and they're outstanding because there's

18    pending litigation.

19              THE COURT:  My recollection of the procedure was

20    the Trustee reviewed the claims, made a determination, and

21    then the creditor had 30 days, I think, to object.  And

22    there are 72 unresolved objections, you're saying?

23              MR. CREMORA:  That's correct.

24              THE COURT:  Okay.

25              MR. CREMORA:  And they're unresolved, Your Honor,
```

Page 15

1    because they are related to these adversary proceedings.

2          It is our position that those claims and the

3    objections cannot be resolved until they are resolved in the

4    context of the adversary proceeding because they raise the

5    very same issues and defenses that are squarely before the

6    Court in the adversary proceeding.  And to give credence to

7    any of those defenses would necessarily implicate the net

8    equity in those claims objections.

9          And I would just point out just for the record, as

10   I'm sure Your Honor is aware, Judge Daniels recently

11   addressed this very issue in a decision where he denied

12   three motions to withdraw the reference that were filed by

13   Ms. Chaitman.  And just so the Court is aware --

14          THE COURT:  And then she withdrew her claims,

15   right?  Her objections?

16          MR. COOPER:  Yes.  And I would also like to say

17   for the record, Your Honor, that the Trustee's position on

18   the withdrawal of those claims, we view those as a legal

19   nullity.  Bankruptcy Rule 3006 specifically addresses the

20   withdrawal of a claim.  And when you have, in this instance,

21   a claim that was filed, an objection interposed, a complaint

22   that was filed in response, and the Claimant significantly

23   participated in the underlying case, all three of which of

24   those requirements have been met here by those Claimants --

25   one cannot do that unilaterally.  That has to be done by

Page 16

1    notice motion and order of this Court.

2              Our view, again -- and we've brought this to the

3    attention of the District Court -- is that those are legal

4    nullities.  That can't be done unilaterally.  It's our view

5    that you can't invoke the Bankruptcy Court's juris --

6              THE COURT:  But the origin of that rule is so you

7    couldn't circumvent the submission to the equitable

8    jurisdiction of the Bankruptcy Court.

9              MR. COOPER:  Precisely.

10             THE COURT:  Right, right.

11             MS. BELL:  But, Your Honor, I think it's our goal

12   to take those issues off the Court's -- off the table right

13   now if we're able to reach an agreement with the

14   Defendants...

15             THE COURT:  So, what discovery do you think is

16   still open in these cases?  My recollection -- I'll tell you

17   why I ask it -- my recollection is the only two issues were

18   expert discovery, or expert rebuttal reports, I guess, and

19   then expert discovery.  And I think Ms. Chaitman had served

20   some subpoenas on other former employees of BLMIS.  That was

21   all put off to the end of the Madoff deposition, which I

22   understand is not over now.  So, other than that, what's

23   left?

24             MS. BELL:  Yes, Your Honor, in both the Madoff Day

25   One Order and the Madoff Day Two Order, the Trustee -- and I

Page 17

1    think the hearings relating to Madoff's deposition, the

2    Trustee reserved the right to seek additional fact discovery

3    and expert discovery.

4              And so what we're proposing in connection with the

5    testimony that Madoff has given, frankly, and I think in a

6    number of hearings before this Court we've all agreed that

7    some new issues have come to the fore -- there are certainly

8    new defenses that the Trustee gets -- we would like the

9    opportunity to refute those defenses, both with fact

10   witnesses in the same vain that we took Madoff's deposition

11   -- there are a number of former BLMIS employees that we can

12   now speak to, I think, as of -- up until January of last

13   year, when cert was denied in the criminal proceeding, we

14   didn't have the opportunity to speak with those former

15   employees.  We'd like the opportunity to do that.

16             In addition to that, there has been discovery

17   skirmishes.  And so I think what we're trying to set up in

18   the omnibus proceeding is a framework for dealing with all

19   those issues so that on this Ponzi issue all the Defendants

20   are proceeding on the same record, the same factual stuff.

21   So if there's a request for -- whatever the request is for,

22   we can negotiate it in this proceeding what would be

23   produced.

24             So I think we're looking for both fact discovery

25   and expert discovery.  And we had outlined some general

1   perimeter -- parameters in our order.  I think that we are

2   open to having further discussions about those -- the types

3   of discovery that the Court would allow.  But I certainly

4   think to refute Madoff's deposition and testimony we get

5   both facts and expert discovery.

6            THE COURT:  All right.  Let me hear from the

7   Defendants.  Thank you.  Do any of the Defendants want to be

8   heard?

9            MR. MOSKOWITZ:  I would like to be heard.

10            THE COURT:  Who is this?

11            MR. MOSKOWITZ:  Peter Moskowitz.

12            THE COURT:  This doesn't concern you.  You're not

13   a Defendant in an adversary proceeding, or are you?  No,

14   this doesn't concern you.  Your matter will come later, Mr.

15   Moskowitz.  Go ahead.

16            MS. NEVILLE:  Good morning, Your Honor.  Carole

17   Neville from Dentons.  I think we agree for the most part

18   with what the Trustee's counsel has told you.  There are a

19   number of differences in our cases that make it more

20   difficult to have this omnibus proceeding, but we did have

21   one very productive meeting.  And, in fact, we had a second

22   scheduled for this very time slot, which you have usurped.

23            So, I think we are moving forward and that is how

24   we would like to proceed, instead of trying to parse through

25   that order at this point.

Page 19

1          THE COURT:  Okay.  Anybody else want to be heard?

2     Well, it sounds like -- I'm certainly not going to stop you

3     from speaking.  My own idea is I could consolidate and try

4     the 72 cases where there are pending claims objections and

5     just trying those claims objections, but try the same issues

6     essentially.

7          So I don't have a problem with that.  I just have

8     a question about the jury issue.  There's no reason not to

9     consolidate discovery.  You know, on the basic question of -

10    - I guess, if there was a Ponzi scheme.  I know some people

11    have argued that there wasn't.  And when it began, and

12    whether it was limited to the split-strike customers, or

13    whether it involved the convertible arbitrage customers

14    also.  So how do you propose we proceed now?

15         MS. BELL:  Your Honor, we have a couple of

16    proposals.  One is, if the Court would like -- I know my

17    letter requested a 60 day extension, but to the extent that

18    the Court would like to have a status conference at the next

19    omnibus hearing, we're open to that.  We are preparing our

20    reply papers but I think it would probably be more fruitful

21    to have those papers submitted after we've had the

22    opportunity to continue the discussions with the objecting

23    Defendants, so we know what we're responding to.

24         It is our hope that once -- depending on what

25    those discussions yield, we could put before the court a

1   revised order that would address, I think, some of Your

2   Honor's concern about the jury trial issues and what we

3   propose to do about that.

4           So, we're proposing a status conference in July or

5   an August date?

6           THE COURT:  Well, just doing discovery doesn't

7   implicate the jury trial concerns.  It'd be the same

8   discovery and presumably a District Court will consolidate

9   and -- consolidate the discovery anyway.

10          MS. BELL:  Yes.

11          THE COURT:  I mean, I suppose you can have a

12  consolidated trial in a District Court for the jury cases.

13          MS. BELL:  Right.  And so our proposed order would

14  simply stop to the extent that we're, again -- we're not

15  proposing any options.  And, again, I think the original

16  order is really the Trustee's best attempt at coming up with

17  something that would streamline the issues.

18          THE COURT:  Right.

19          MS. BELL:  But that said, I think if we're able to

20  reach an agreement with the Defendants in consolidated

21  discovery, then the idea would be to put that before the

22  Court as a revised order.

23          THE COURT:  Okay.  Why don't we adjourn this for

24  30 days?  I know it's the summer but I'd like to move these

25  along.  We've made progress with the good faith cases.  See

Page 21

1    if we can finish them off.

2           MS. BELL:  Just for clarification, Your Honor,

3    would that be a status conference on the next omnibus date?

4    Just for scheduling purposes, we have not yet put in our

5    reply.  Should we hold that until after the next status

6    conference?

7           THE COURT:  A reply in support of your motion?

8           MS. BELL:  Yes.  Yes, Your Honor.

9           THE COURT:  You could put in a reply.  I mean, I

10   think I know what's appropriate and what's not appropriate.

11   For example, I wouldn't permit any opt out or opt in if

12   you're -- if -- for example, with respect to the claims

13   objections, I'd just order a consolidated trial.  Unless

14   somebody could convince me that their case is so unique that

15   it would be unjust or unfair to have a consolidated trial.

16          But at least with the Trustee going forward, it's

17   the same evidence that affects all the cases.  And then

18   people, I guess, can come in and argue they were convertible

19   arbitrage customers or they can prove that certain treasury

20   stock that was purchased was actually listed on their

21   account and then sold -- it wasn't a fictitious profit.

22          But those are unique to individuals.  The

23   underlying argument about when the Ponzi scheme began is the

24   same in every case.

25          MS. BELL:  Yes, we agree with that, Your Honor.  I

Page 22

1    guess, would it be Your Honor's preference for us to submit

2    the reply if we're not -- we haven't concluded the

3    negotiations with the Defendant?

4            THE COURT:  Or why don't you submit a reply, let's

5    say, in three weeks, okay?

6            MS. BELL:  Okay.

7            THE COURT:  And then we'll have another conference

8    in 30 days.  I'm going to give you another day.

9            MS. BELL:  Perfect.  Great.  Thanks, Your Honor.

10           THE COURT:  Let's say July 25th, okay?

11           MS. BELL:  Great.

12           MR. CREMORA:  July what, Your Honor?

13           THE COURT:  July 25.  It's a little less than 30

14   days but -- it's about four weeks.  At 10 o'clock.

15           MS. BELL:  And I think that's -- thanks, Your

16   Honor.

17           THE COURT:  Okay, thank you.

18           MR. CREMORA: Thank you, Your Honor.

19           THE COURT:  Let's -- everybody's excused who wants

20   to leave.  Let's deal with Mr. Moskowitz's case because he's

21   on the line.  All right, Mr. Moskowitz, there is your

22   objection to the Trustee's determination that you don't have

23   a net equity claim because you withdrew more from your

24   account than you deposited.  So I'll hear from you now.

25           MR. MOSKOWITZ:  The first thing I'd say is I was

Page 23

1   never a direct customer of BMLIS.  I had two accounts.  One

2   was a Roth IRA, and the other was a regular IRA.  And what

3   happened was I converted the regular IRA into a Roth IRA and

4   that was performed by Retirement Accounts, Incorporated, my

5   Trustee.

6          And when the account was converted, the Roth --

7   the regular IRA was closed and they directed BLMIS to

8   reregister the stocks into the name of the new account, and

9   they told me that they had done that and taken possession,

10  and then put it into the new account.  So, one account was

11  closed, another was opened.

12         I did not directly participate in that because I

13  wasn't allowed to act as my fiduciary.  And when I filed the

14  claim, I only did it because I was told by Fiserv, which ad

15  -- which our retirement accounts had become -- I was told

16  that they met with people from SITC and they were not going

17  to file the claims, that I would have to do it personally

18  and that the Trustee would accept my signature on the

19  account.

20         But I didn't think that was proper because when a

21  Roth IRA -- any kind of IRA is set up, you're not allowed to

22  act as your own fiduciary.  And I didn't have the

23  information of what had transpired at the time.  The time

24  was short.  I only had 60 days to file a claim, and if I

25  didn't file it, then all was lost.

1          THE COURT:  But you filed a claim.  And the

2     question now is whether you have a net equity claim.  How

3     much money did you deposit into the accounts?

4          MR. MOSKOWITZ:  I did not deposit anything into

5     the accounts.  The Retirement Accounts did.

6          THE COURT:  Okay.  How much was deposited into the

7     accounts as to which you filed a net equity claim?

8          MR. MOSKOWITZ:  I don't know.

9          THE COURT:  Well, the Trustee says it was --

10          MR. MOSKOWITZ:  I know that the Trustee had a

11     figure.  I don't have it in front of me exactly.

12          THE COURT:  Let me interrupt you.  It's about

13     $455,000 deposited between 1992 and 2001.  Do you agree or

14     disagree with that?

15          MR. MOSKOWITZ:  That was deposited into two

16     different accounts.

17          THE COURT:  Okay.

18          MR. MOSKOWITZ:  And one was -- I don't know if

19     that figure is correct but it may be.

20          THE COURT:  Well, do you have any evidence of a

21     different number?  That's what the Trustee's books and

22     records show.

23          MR. MOSKOWITZ:  No, I don't.

24          THE COURT:  Pardon?

25          MR. MOSKOWITZ:  I don't.

1          THE COURT:  Okay.  How much did you withdraw from

2   the accounts?

3          MR. MOSKOWITZ:  I don't have that figure.  I k now

4   that the Trustee has his figure.

5          THE COURT:  The Trustee's figure is $499,000.  Do

6   you disagree with that?

7          MR. MOSKOWITZ:  And if you accept the cash-in,

8   cash-out theory, it's probably correct, according to the

9   figures that he -- that I was sent.

10          THE COURT:  Okay.

11          MR. MOSKOWITZ:  But disagree with the methodology.

12          THE COURT:  What methodology do you say the

13   Trustee should've used?

14          MR. MOSKOWITZ:  Well, if he's not accepting the

15   final statement as what was in the account -- and when I

16   opened my second accounts, it was opened with stocks.  And

17   there's no credit given to me there.

18          THE COURT:  Well, the Trustee contends that prior

19   to the time that you opened a second account, you had

20   exhausted the first account, so there was nothing to

21   transfer to the second account.

22          MR. MOSKOWITZ:  I agree he contends that.

23          THE COURT:  Right.  Well, do you have any other

24   evidence?

25          MR. MOSKOWITZ:  I have the evidence from

Page 26

1    Retirement Accounts, Incorporated directing BMLIS to

2    reregister stocks and BMLIS supposedly did it, and I was

3    given a 1099 for withdrawing $399,000 worth of stock from

4    BMLIS, which I paid taxes on.

5            THE COURT:  Okay.  Is there anything else?

6            MR. MOSKOWITZ:  I don't think so, Your Honor.

7            THE COURT:  All right.  Anything from the Trustee?

8            MAN 1:  Unless Your Honor has any questions, no.

9            THE COURT:  The issue -- one of the issues that

10   Mr. Moskowitz has raised is whether he was even a customer

11   because he had a fiduciary, I guess, representing him in

12   connection with the account.  What's the response to that?

13           MAN 1:  It's an admission that he didn't have a

14   direct customer account.

15           THE COURT:  Well, but did he have an account?

16           MAN 1:  He did have a customer account.

17           THE COURT:  All right.  So he had an account.  I

18   should say, Mr. Moskowitz, if you didn't have an account,

19   you have no debt equity claim.  So that's not a good

20   argument for you.  But what I'll do is I will sustain the

21   Trustee's determination and overrule the objection.

22           The evidence provided by the Trustee under the

23   cash-in, cash-out method, which is the method that the 2nd

24   Circuit has directed in two cases be used, whether it's

25   direct cash in of cash out or whether it involves an inter-

Page 27

1    account transfer, as these accounts do, is that Mr.

2    Moskowitz deposited to the two accounts -- or into the

3    account, it was always only one account, although it changes

4    in form -- $454,697.02 and withdrew $499,003.98.  So he

5    withdrew in the aggregate more than he deposited.

6           And based upon the timing of the deposits and

7    withdrawals at the time the account was converted from a

8    regular IRA to a Roth IRA, and supposedly funded with an

9    inter-account transfer, there was nothing left.  In the

10   earlier account, whatever the statements purported to say

11   were irrelevant really, unfortunately, to what you actually

12   had, Mr. Moskowitz, because all those entries were

13   fictitious and the courts have rejected reliance -- or the

14   use of the statements to prove what was in the account.

15          So, I will overrule your objection and I will

16   direct the Trustee to submit an order.

17          MAN 1:  Thank you, Your Honor.

18          THE COURT:  Thank you

19          MAN 1:  Thank you, Your Honor.

20          THE COURT:  Thank you, Mr. Moskowitz.  Last is the

21   Kingate matter.  Go ahead.

22          MR. LOIGMAN:  Thank you, Your Honor.  Robert

23   Loigman of Quinn Emanuel for the joint liquidators of the

24   Kingate Funds.  Hopefully, we don't really have any dispute

25   to discuss here today.

1          THE COURT:  It sounds like a dispute.  You want to

2     mediate and they don't.

3          MR. LOIGMAN:  I think -- well, let me give Your

4     Honor a little bit of background and then I'll tell you

5     where I think we're at right now.  As a very brief

6     background, the case is now in active discovery.  We have

7     exchanged probably hundreds of thousands of documents, and

8     depositions are now underway and they are continuing.

9          A few weeks ago, the Trustee proposed that we

10    adjourn the fact discovery cutoff by four months from what

11    was then July 31st to November 30th.  In the context of

12    discussing that proposal, we proposed, in turn, that the

13    Trustee agree that at the end of fact discovery, whenever

14    fact discovery may actually end, we have a mediation.

15         And we believed then, as we believe now, that

16    mediation is appropriate in this case where you have on both

17    sides of the caption Court-appointed officials.  You have

18    the Trustee, who is trying to assemble and ultimately

19    distribute money to victims of Madoff's fraud; and on our

20    side of the caption you have the joint liquidators, and the

21    investors in the Kingate Funds are in the same boat.  They

22    invested the vast bulk of their money with Madoff and they

23    are themselves Madoff victims. It seems like an ideal

24    situation to try to resolve through a mediation.

25         At the time that I raised that a few weeks ago,

Page 29

1    the Trustee correctly pointed out in response that we had

2    attempted to reach settlements in the past and, in fact,

3    came very close to actually concluding settlements on two

4    occasions.  That's true but those settlement discussions,

5    the last one was six years ago now.  It was in --

6             THE COURT:  Have you made an offer to the Trustee?

7             MR. LOIGMAN:  We have not made an offer recently.

8    But to sort of jump ahead, to bring you into the discussions

9    that we had even more recently with the Trustee, what we

10   have done is -- a few years ago the joint liquidators

11   retained separate counsel specifically for mediation

12   purposes.  And the counsel they brought in was Morrison &

13   Foerster.  The reason they had selected Morrison & Foerster

14   is because they have actually mediated with the Trustee

15   other major cases.  My understanding is successfully they've

16   reached settlements.  And here at counsel table with me

17   today is James Peck, who obviously Your Honor knows, who is

18   with Morrison & Foerster and would actively participate in

19   the mediation process.

20             And while we have not made a specific proposal now

21   -- and the Trustee has said we are free to make a specific

22   proposal at any time -- one of the factors that has been

23   missing from past discussions that we think has -- would

24   really make a material difference is having a third party

25   neutral.  Having somebody oversee the process, give

Page 30

1    structure to it, and perhaps bring the two sides to be able

2    to recognize the points made by each other with, I think, a

3    little more understanding and, hopefully, to bring to it a

4    successful resolution.

5            As recently as yesterday, counsel for the joint

6    liquidators -- that included my firm, Quinn Emanuel, also

7    Morrison & Foerster -- spoke with counsel for the Trustee

8    about today's conference.  And it's my understanding, Your

9    Honor, that basically the Trustee has said they would agree

10   to have a mediation at the conclusion of discovery.  We

11   proposed that rather than wait until the end of discovery to

12   start picking a mediator, putting in place deadlines for

13   mediation briefs, whatever the procedures may be, that we

14   start doing that if not now, within the next month or so, so

15   that we don't -- to expedite the process.  And so by the

16   time we get to the end of fact discovery, we are in a

17   position to really charge ahead full speed with the

18   mediation.

19           Obviously, I'll let the Trustee speak for

20   themselves.  I don't want to speak for them.  But it's my

21   understanding that we essentially now have an agreement to

22   that effect.  And if that's so, then I don't think there's

23   anything that we're asking the Court's guidance on today.

24           THE COURT:  You want to select a mediator now, but

25   wait until the end of discovery to mediate?

1          MR. LOIGMAN:  Well, I think, we would be happy to

2    proceed with mediation --

3          THE COURT:  I understand.

4          MR. LOIGMAN:  -- even sooner.  The Trustee has

5    made the point to us that we're now in the middle of very

6    active discovery.  There are, as we acknowledged, very

7    important witnesses who are scheduled already, who are

8    coming up.  And the Trustee has made fairly clear to us on a

9    number of occasions, they would like to complete this

10   discovery process we're in, which is nearing completion,

11   before sitting at the table and mediating.  And we respect

12   that.  And that's why we're saying we're okay -- we're

13   willing to say mediation won't start until the end of fact

14   discovery.

15          It doesn't preclude us, as Your Honor points out,

16   as the Trustee points out, from putting an offer to the

17   Trustee before then.  If it's appropriate at a certain time

18   we'll do that.  But all we're saying is at the same time it

19   shouldn't preclude us from talking about the logistics of

20   the mediation to make sure it's put in place so that we

21   don't have sort of a long delay at the end of fact discovery

22   but, instead, we're really ready to just move forward with

23   mediation at that point in time.

24          THE COURT:  Okay.

25          MS. PONTO:  Good morning, Your Honor.  Geraldine

Page 32

1    Ponto, representing the Trustee.  I'm here with Stephanie

2    Ackerman, my colleague also for the Trustee.

3         Your Honor, we did not oppose mediation.  Two

4    years ago, when I was contacted by the special mediation

5    counsel for the joint liquidators, I said then that we did

6    not oppose mediation.  I said we were just at that point

7    embarking on discovery.  In fact, the joint liquidators at

8    that point were still resisting the production of documents,

9    which took years to obtain.  So we now have that.  We are

10   now in deposition discovery.

11        THE COURT:  So, what's left of discovery?  Because

12   I didn't sign the order extending discovery, I wanted to

13   know what was left.  I'd like to move this case along and

14   try it, if it's necessary.

15        MS. PONTO:  We have -- as Your Honor knows,

16   because you've issued letters of request for ten -- what we

17   thought were London-based witnesses; those depositions have

18   -- six of them, I believe, have occurred.  We have Mr.

19   Ceretti and Grosso yet to occur.  We couldn't find Mr.

20   Chapman, who was one of the witnesses.  We understand he's

21   relocated to France, and we're in the process of identifying

22   him.

23        Your Honor just recently signed another letter of

24   request for another witness, Ms. Salahuddin.  She is in

25   Ireland.  We can report that, I believe it was yesterday,

Page 33

1    the Irish court did give effect to Your Honor's letter

2    rogatory, rather.  I correct myself.  And we are now in the

3    process of seeing whether her counsel -- her U.S. counsel

4    happens to be Mr. Ceretti and Mr. Grosso's counsel --

5    whether they will accept service of the Irish court order or

6    whether she has Irish counsel.  So, we have that one to go.

7            We're looking for Mr. Chapman.  There are two

8    other witnesses in Bermuda that we are looking to depose.

9    We may do one of those informally.  We have four former

10   Tremont employees that we just firmed updates with them, and

11   I believe we sent an email to Mr. Loigman to confirm those

12   dates, subject to his availability.  Because we always try

13   to have a date that's mutually convenient.  As you may

14   recall, Tremont was the co-manager with Kingate Management

15   for ten years.  So we have four of those witnesses.

16           So, we're winding down, and we have hopes -- we

17   could not complete the discovery by July 31 but we're

18   hopeful.  We don't know, but we're very hopeful and we will

19   do everything we can to complete fact discovery by November

20   30, which is the date that we sought.

21           In fact, Your Honor, in the proposed case

22   management order, I did include -- after -- actually, this

23   was agreed between Mr. Loigman and myself before he wrote

24   the letter to the Court.  So I was surprised by it.  I said

25   in this case management order in Paragraph 8 that the

Page 34

1    Trustee and the joint liquidators will continue to discuss

2    the appropriate timing of a mediation.  That could happen

3    today, tomorrow -- there was no restriction.

4            THE COURT:  Well, it sounds like you agree that

5    the mediation, if it's going to occur, should occur at the

6    end of discovery.

7            MS. PONTO:  At the end of fact discovery.  They

8    don't want to go through the expense of expert discovery,

9    and we accommodated that.  So, we will -- and our position

10   has not changed from two years ago, when I was first

11   contacted by mediation counsel.  It hasn't changed recently.

12   There's been no change.  We have always been open to

13   mediation.

14           The reasons, however, that Mr. Loigman cites --

15   and there's really no need to argue them because the Court-

16   appointed officials have been in place from the outset;

17   we've always been dealing with Court-appointed officials.

18   The second reason that a third party neutral is essential --

19   fine, but it hasn't been that.  And that's why in my reply I

20   wanted the Court to know, it hasn't been the Trustee that's

21   resisted discovery.  We had an agreement.  We've had, as Mr.

22   Loigman points out -- we've had two agreements.  But they

23   were, for one reason or another, they could not be

24   consummated.

25           So, in terms of those reasons, that hasn't changed

Page 35

```
1    either.  We are very receptive to settlement and we believe,

2    though, that as we go through the process of discovery,

3    we're learning more facts that strengthen the case.

4             THE COURT:  Well, I guess the proposal is to

5    appoint a mediator now, or a neutral now, but have him or

6    her not start working, I guess, until the end of discovery.

7    What's your response to that?

8             MS. PONTO:  We have some suggestions and we'd like

9    to discuss it with them.  I told them that yesterday on the

10   phone.  They were all on the phone.  And we haven't gotten

11   further than "Let's discuss some suggested names."

12            THE COURT:  Don't you have discovery -- isn't

13   Judge Moss overseeing discovery in this matter?

14            MS. PONTO:  Judge Moss has --

15            THE COURT:  So, why don't you just agree to

16   appoint him as the mediator and he can coordinate -- he can

17   use his judgment in terms of whether it's appropriate to

18   start mediation or to mediate any issues, or just wait until

19   the end of discovery.  I understand you can't necessarily

20   give a complete position paper until you've completed your

21   discovery but, you know, somehow this mediation of the

22   merits, I think, is tied up to some extent with the cost of

23   all of this discovery that you're going through.  That's my

24   suggestion but --

25            MS. PONTO:  Judge Moss is --
```

Page 36

1           THE COURT:  I'm just -- you know, he's probably

2    familiar somewhat with the case.  So he's up and running, he

3    had experience in this, you can select other mediators when

4    the time comes.  I don't know -- I don't see a major benefit

5    to otherwise simply selecting a mediator and having the

6    mediator sit and wait because the Trustee's not going to be

7    in a position to articulate his position until he's

8    completed his fact discovery.  That's basically -- that's

9    implicit in everything he's been saying.

10          MR. LOIGMAN:  And, Your Honor, if I can --

11          THE COURT:  But if you can pick somebody, that's

12   fine.

13          MR. LOIGMAN:  I think to speak to that, Your

14   Honor, I agree there's no need for a mediator to sit around

15   and cool his or her heels for --

16          THE COURT:  So, what's the mediator going to do?

17          MR. LOIGMAN:  I think what our thinking was, is

18   our understanding from the Trustee was that they would agree

19   to mediation but only at the conclusion of fact discovery.

20          THE COURT:  Which they've essentially done, as I

21   understand it.

22          MR. LOIGMAN:  Which we respect.  I think what --

23   and my colleagues at Morrison & Foerster are probably more

24   familiar with this than I am because they've engaged in

25   mediations with the Trustee before.  My understanding is it

Page 37

1    can take some time to actually -- because each party is

2    allowed to propose certain mediators, and then there can be

3    discussions as to the agreement.

4            THE COURT:  But that's -- that's a week.  You

5    know, that's a week's time, and if you don't agree -- in

6    other words, when that trigger occurs, if you don't agree,

7    then in seven days I'll select the mediator in an ultimate

8    sense.

9            MR. LOIGMAN:  So we're happy to work with the

10   Trustee to get a mediator selected.  And all we wanted to do

11   was to make sure that happened sufficiently in advance so

12   that there wouldn't be a delay at the conclusion of

13   discovery.

14           MS. PONTO:  Mr. Loigman has also committed, Your

15   Honor, that when we say at the conclusion of fact discovery,

16   should that -- should we have to seek a further extension of

17   time, and no party really wants that, that it will be

18   whenever fact discovery concludes.  That is when we will

19   commence mediation.  That was our agreement yesterday on the

20   phone.

21           THE COURT:  Why don't you embody this into your --

22   a revised scheduling order, so everybody's in agreement on

23   that?  And, as I said, I'm not inclined to appoint a

24   mediator because I don't think that a mediator is necessary

25   now.  Because I don't think the mediator is really going to

1    accomplish anything.  And it doesn't take as long as you

2    say.  The timing is after the parties have submitted their

3    positions, which the Trustee is not ready to do until the

4    Trustee completes discovery.

5            So, submit a revised order.  I'll reiterate my

6    suggestion that you think about -- it doesn't matter to me -

7    - but you think about using Judge Moss, who can in

8    combination oversee any discovery disputes and also if he

9    thinks they're appropriate, since he has a lot of experience

10   in this, to mediate or conduct a settlement conference

11   either during or after.  But I leave that to you.

12           MR. LOIGMAN:  Your Honor, I did want to raise one

13   final point, which his -- and we can certainly, with the

14   Trustee, submit a revised scheduling order that will provide

15   for the mediation.  I think earlier in this conference, you

16   mentioned that you had not signed the extension --

17           THE COURT:  I didn't think I did.  I wanted to

18   hear what -- pardon?

19           MR. LOIGMAN:  I think the Court did sign it.

20           THE COURT:  Oh, all right.  I'm sorry.  I thought

21   -- I thought I didn't, because I wanted to hear what was

22   left.  And now I'm looking at something like 15 depositions

23   that have to occur.

24           MR. LOIGMAN:  But we will certainly submit a

25   revised --

Page 39

1              THE COURT:  It's not necessary.  You can just

2     submit a letter agreement, if you like.  I'm not concerned

3     that somebody's going to come back and say we didn't agree

4     to something that they said they agreed to on the record.

5              MR. LOIGMAN:  Thank you, Your Honor.

6              THE COURT:  All right.  Thank you very much.

7              (Whereupon these proceedings were concluded at

8     10:53 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *Sonya*

     Digitally signed by Sonya
     Ledanski Hyde
     DN: cn=Sonya Ledanski Hyde, o,
     ou, email=digital1@veritext.com,

7    *Ledanski Hyde*
     c=US
     Date: 2018.07.16 16:38:06 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 28, 2018