**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Anat Maytal
Jason I. Blanchard

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

## TRUSTEE'S MOTION TO STRIKE THE NOTICES OF WITHDRAWAL OF CLAIM AND NOTICES OF WITHDRAWAL OF OBJECTION TO DETERMINATION OF CLAIM FILED BY CHAITMAN LLP AND DENTONS US LLP

# TABLE OF CONTENTS

**Page(s)**

I.     PRELIMINARY STATEMENT ....................................................................1

II.     FACTUAL BACKGROUND .......................................................................3

     A.     The SIPA Liquidation ..................................................................3

     B.     The Claims Allowance Process And Claims-Related Litigation ............................4

     C.     The Net Equity Order....................................................................8

     D.     The Claimants' Customer Claims, Objections And Participation In Litigation Before Multiple Courts In This SIPA Liquidation Proceeding........................................................................8

III.     ARGUMENT .........................................................................12

     A.     The Claimants Have Submitted To The Equitable Jurisdiction Of This Court To Decide All Matters Related To Their Customer Claims .............................................................................12

     B.     The Withdrawals Were Filed In Direct Violation Of The Bankruptcy Rules And Are Therefore Invalid......................................................15

     C.     Even If The Claimants Had Properly Filed Motions Authorizing The Claimants To Withdraw Their Claims And Objections, Claimants Cannot Satisfy The Standards For Withdrawal ...................................19

     D.     The Chaitman LLP Claimants' Objections Were Not Overruled By The Net Equity Decision......................................................................23

IV.     CONCLUSION.......................................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 20/20 Sport, Inc.*,
 200 B.R. 972 (Bankr. S.D.N.Y. 1996) .............................................................................15, 20

*In re B & E Sales Co., Inc.*,
 129 B.R. 133 (Bankr. E.D. Mich. 1990) ...............................................................................13

*In re Bally Total Fitness of Greater N.Y.*,
 411 B.R. 142 (S.D.N.Y. 2009) ..............................................................................................13

*Bankr. Servs. Inc. v. Ernst & Young (In re CBI Holding Co., Inc.)*,
 529 F.3d 432 (2d Cir. 2008) ............................................................................................12, 14

*Bayonne Med. Ctr. v. Bayonne/Omni Dev., LLC (In re Bayonne Med. Ctr.)* ...............................21

*In re Beacon Assocs. Litig.*,
 745 F. Supp. 2d 386 (S.D.N.Y. 2010) .....................................................................................3

*In re Bernard L. Madoff Inv. Sec. LLC*,
 424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd* 654 F.3d 229 (2d Cir. 2011) *cert.*
 *denied Velvel v. Picard*, 133 S. Ct. 25 (2012) ....................................................................6, 24

*In re Bernard L. Madoff Inv. Sec. LLC*,
 654 F.3d 229 (2d Cir. 2011) ..............................................................................................3, 22

*BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*,
 735 F.3d 279 (5th Cir. 2013) .................................................................................................21

*Brook v. Ford Motor Credit Co. (In re Peacock)*,
 455 B.R. 810 (Bankr. M.D. Fla. 2011) ..................................................................................21

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, Nat'l Ass'n (In re M.*
 *Fabrikant & Sons, Inc.)*,
 Nos. 06-12737 (SMB), 07-02780, 08-01734, 2009 Bankr. LEXIS 3606
 (Bankr. S.D.N.Y. Nov. 10, 2009) ..........................................................................................22

*In re Chateaugay Corp.*,
 165 B.R. 130 (S.D.N.Y. 1994) ..............................................................................................20

*In re Christou*,
 448 B.R. 859. (Bankr. N.D. Ga. 2011) ..................................................................................16

*In re Coated Sales, Inc.*,
119 B.R. 452 (Bankr. S.D.N.Y. 1990) ...................................................................13

*Crown Paper Co. v. Fort James Corp. (In re Crown Vantage)*,
No. C-02- 3838 (MMC), 2007 WL 172321 (N.D. Cal. Jan. 18, 2007) .................13

*Cruisephone, Inc. v. Cruise Ships Catering & Servs. N.V. (In re Cruisephone, Inc.)*,
278 B.R. 325 (Bankr. E.D.N.Y. 2002) ...........................................................16, 17

*E. Sav. Bank, FSB v. Whyte*,
No. 13-CV-6111 (CBA)(LB), 2016 U.S. Dist. LEXIS 45880 (E.D.N.Y. Apr. 4, 2016) ..............................................................................................................18

*Emory v. New York*,
No. 11-CV-1774, 2013 U.S. Dist. LEXIS 64414 (E.D.N.Y. May 6, 2013) ...........17

*In re Federated Dep't Stores*,
135 B.R. 950 (Bankr. S.D. Ohio 1992) .................................................................17

*First Fidelity Bank, N.A. v. Hooker Investments, Inc., L.J. (In re Hooker Investments, Inc.)*,
937 F.2d 833 (2d Cir. 1991) .............................................................................5, 13

*In re Frank*,
322 B.R. 745 (Bankr. M.D.N.C. 2005) .................................................................16

*Germain v. v. Connecticut Nat. Bank*,
988 F.2d 1323 (2d Cir. 1993) .........................................................................13, 14

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ...............................................................................................13

*In re Kaiser Grp. Int'l, Inc.*,
272 B.R. 852 (Bankr. D. Del. 2002) .....................................................................20

*Katchen v. Landy*,
382 U.S. 323 (1966) .............................................................................................23

*Keller v. Blinder (In re Blinder Robinson & Co., Inc.)*,
135 B.R. 892 (D. Col. 1991) ................................................................................13

*Langenkamp v. Culp*,
498 U.S. 42 (1990) ...............................................................................5, 12, 13, 19

*In re Lehman Brothers, Inc.*,
2016 WL 316857 (S.D.N.Y. Jan. 26, 2016) .........................................................15

iii

*In re McCorhill Pub., Inc.* 90 B.R. 633, 637-38 (Bankr. S.D.N.Y. 1988)......................................14

*Official Employment–Related Issues Committee of Enron Corp. v. John J. Lavorato (In re Enron Corp.)*,
319 B.R. 122 (Bankr. S.D. Tex. 2004) ...................................................................................14

*Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*,
2005 U.S. Dist. LEXIS 3811 (S.D.N.Y. Mar. 10, 2005) .......................................................18

*Peskin v. Picard*,
413 B.R. 137 (Bankr. S.D.N.Y. 2009) ................................................................................4, 5

*Picard v. Greiff*,
476 B.R. 715 (S.D.N.Y. 2012)..........................................................................................10, 18

*Picard v. Saren-Lawrence*,
No. 17 CIV. 5157 (GBD), 2018 WL 2383141 (S.D.N.Y. May 15, 2018)...................... *passim*

*Picard v. Stahl*,
443 B.R. 295 (Bankr. S.D.N.Y. 2011) ...................................................................................13

*Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs.)*,
562 F.3d 158 (2d Cir. 2009)...................................................................................................15

*Resorts Int'l. Inc. v. Lowenschuss (In re Lowenschuss)*,
67 F.3d 1394 (9th Cir. 1995) .................................................................................................15

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24, 2009).........................................................5, 19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
490 B.R. 46 (S.D.N.Y. 2013).................................................................................10, 18, 22, 23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
496 B.R. 744 (Bankr. S.D.N.Y. 2013) *aff'd In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015)................................................................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
499 B.R. 416 (S.D.N.Y. 2013)..........................................................................................10, 18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC*, 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017) .......................................6

iv

*Thorp v. Scarne,*
    599 F.2d 1169 (2d Cir. 1979)......................................................................................16

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.,*
    No. 3:10-cv-1842-G (AJF), 2012 WL 987539 (N.D. Tex. Mar. 21, 2012),
    *aff'd,* 761 F.3d 409 (5th Cir. 2014)..........................................................................13

*In re Washington Mfg. Co.,*
    133 B.R. 113 (M.D. Tenn. 1991)................................................................................13

*In re Yucca Grp., LLC,*
    No. 10-12079-GM, 2012 WL 2086485 (B.A.P. 9th Cir. June 8, 2012) .................17

*Zagano v. Fordham Univ.,*
    900 F.2d 12 (2d Cir. 1990)..................................................................................17, 20

**Statutes**

11 U.S.C. § 548...................................................................................................10, 11

28 U.S.C. § 1292(b)...........................................................................................11, 12

11 U.S.C. § 502(d) ...............................................................................11, 13, 22, 23

SIPA § 78eee(a)(4) ........................................................................................................3

SIPA § 78eee(b)(3) .......................................................................................................3

SIPA § 78eee(b)(4) .......................................................................................................3

SIPA § 78fff-1(a) .........................................................................................................4

SIPA § 78fff-2(b) .........................................................................................................4

SIPA § 78lll(11) ....................................................................................................4, 22

SIPA § 78lll(2) .............................................................................................................4

SIPA § 78lll(4) .............................................................................................................4

**Rules**

Fed. R. Bankr. P. 7041..............................................................................................15

Fed. R. Bankr. P. 9014......................................................................................15, 19

Fed. R. Bankr. P. 3006 .................................................................................... *passim*

Fed. R. Civ. P. 41(a) ....................................................................................... *passim*

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] and the chapter 7 estate of Bernard L. Madoff ("Madoff") (collectively, the "Debtor"), by and through his undersigned counsel, by this motion (the "Motion") seeks the entry of an order striking the notices of withdrawal of claim and notices of withdrawal of objection to determination of claim filed by Chaitman LLP[2] and Dentons US LLP[3] (collectively, the "Withdrawals").

## I.    PRELIMINARY STATEMENT

Shortly after the commencement of this SIPA liquidation, the Claimants each filed customer claims with the Trustee. Each Claimant sought a distribution from the Trustee in an amount equal to the fictitious securities reflected on the last account statement for their respective BLMIS accounts. Because the Claimants had withdrawn more than or equal to the amount they had deposited in their accounts, the Trustee denied their claims and subsequently notified each Claimant of his determination. Like many other BLMIS claimants, the Claimants each filed an objection to the Trustee's determination on various grounds, each seeking more than the amount determined by the Trustee. Over the next several years, the Trustee and the

---

[1] For convenience, subsequent references to sections of the act shall be denoted simply as "SIPA, § __."

[2] On June 18, 2018, Chaitman LLP filed a *Notice of Withdrawal of SIPC Claim* on behalf of the following claimants: (i) Carol Nelson and Stanley Nelson (ECF No. 17682); (ii) Carol Nelson (ECF No. 17683); and (iii) Helene Saren-Lawrence (ECF No. 17684) (collectively, the "Chaitman LLP Claimants"). On June 27, 2018, Chaitman LLP filed a *Notice of Withdrawal of Objections to Trustee's Determination of SIPC Claim* with respect to the objections previously filed on behalf of the Chaitman LLP Claimants. (ECF Nos. 17732, 17733, 17734).

[3] On June 1, 2018, Dentons US LLP filed a *Notice of Withdrawal of Objection to Determination of Claim* on behalf of the following claimants: (i) Alvin Gindel Revocable Trust and Alvin Gindel (ECF No. 17622); (ii) BAM LP (ECF No. 17623); (iii) Barbara J. Berdon (ECF No. 17624); (iv) Barry Weisfeld (ECF No. 17625); (v) Harold J. Hein (ECF No. 17626); (vi) Lapin Children LLC (ECF No. 17627); (vii) Laura E. Guggenheimer Cole (ECF No. 17628); (viii) LI RAM L.P. (ECF No. 17629); (ix) Michael Mann and Meryl Mann (ECF No. 17630); (x) Neil Reger Profit Sharing Keogh (ECF No. 17631); (xi) Norma Shapiro, IRA (ECF No. 17632); (xii) Norma Shapiro Revocable Declaration of Trust (ECF No. 17633); (xiii) The Rose Gindel Revocable Trust Agreement (ECF No. 17634); (xiv) Stanley T. Miller  (ECF No. 17635); (xv) Toby T. Hobish IRA (ECF No. 17637); and (xvi) Trust U/W/O Philip L. Shapiro ECF No. 17638) (collectively, the "Dentons Claimants" and together with the Chaitman LLP Claimants, the "Claimants").

Claimants, along with numerous other BLMIS claimants, litigated the appropriate methodology for calculating customer claims and other claims-related issues before this Court, the District Court for the Southern District of New York, and the Second Circuit Court of Appeals. The Trustee expended substantial time and resources in successfully litigating these disputes with the Claimants.

While the claims-related litigation proceeded before the courts, the Trustee filed a complaint against each of the Claimants to avoid and recover transfers of fictitious profits they received in furtherance of the Ponzi scheme conducted through BLMIS. These lawsuits remain pending before this Court and have been actively litigated by the Claimants. Moreover, under the law of this case, the causes of action asserted by the Trustee and defenses raised by the Claimants implicate the claims allowance process. In other words, the Trustee's calculation of the Claimants' fraudulent transfer liability, which Claimants have challenged, is based upon the same methodology the Trustee utilized to calculate their customer claims. In light of this overlap and the ongoing litigation of the same issues in the corresponding adversary proceedings, to date, the Trustee has not sought to institute a separate proceeding for an order overruling the Claimants' objections and affirming the Trustee's claims determinations. Instead, the Trustee will seek to resolve all issues between the parties at trial in the adversary proceedings.

At this late stage, the Claimants now attempt to withdraw their claims and objections in a last-ditch effort to circumvent this Court's equitable jurisdiction. They should not be allowed to do so. Under the plain language of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Claimants are prohibited from unilaterally withdrawing their claims or objections because the Claimants are each the subject of a pending avoidance action by the Trustee and have significantly participated in this SIPA proceeding. The Claimants litigated and lost their

2

challenges to the proper methodology for calculating customer claims and other claims' issues and have actively litigated the Trustee's lawsuits against them before this Court and others for nearly a decade. Because the Withdrawals were filed without an authorizing order of this Court in violation of the Bankruptcy Rules, they have no legal effect. These deficiencies are fatal. Even if the Withdrawals are treated as motions to withdraw, the Claimants cannot otherwise satisfy the standard to withdraw because of the resulting prejudice to the Trustee and the BLMIS estate, including the delay withdrawal would cause to the avoidance, recovery, and distribution of the avoided and recovered funds to BLMIS's customers. On these grounds, the Trustee respectfully requests the entry of an order striking the Withdrawals from the Court's docket and determining that they have no legal effect.

## II.    FACTUAL BACKGROUND

### A.    The SIPA Liquidation

The basic facts of the BLMIS fraud are widely known and have been recounted in numerous decisions. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231 (2d Cir. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 393–94 (S.D.N.Y. 2010). On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against Madoff and BLMIS, captioned SEC v. Madoff, No. 1:08-cv-10791-LLS, 2008 WL 5197070 (S.D.N.Y. filed Dec. 11, 2008), alleging fraud through the investment advisor activities of BLMIS. The SEC consented to the consolidation of its case with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, SIPC filed an application under SIPA § 78eee(a)(4) alleging that because of BLMIS's insolvency, it needed SIPA protection. The District Court appointed the Trustee under SIPA § 78eee(b)(3) and removed the proceeding to this Court under SIPA § 78eee(b)(4).

3

Under SIPA, the Trustee is responsible for recovering and distributing customer property

to a broker's customers, assessing claims, and liquidating other assets of the firm for the benefit

of the estate and its creditors. A SIPA trustee has the general powers of a bankruptcy trustee, in

addition to the powers granted by SIPA. SIPA § 78fff-1(a). In satisfying customer claims, the

Trustee evaluates whether claimants are "customers," as defined in SIPA § 78lll(2), as they are

entitled to share pro rata in "customer property," defined in SIPA § 78lll(4), to the extent of their

"net equity," defined in SIPA § 78lll(11). The term "net equity" is defined as the "dollar amount

of the account or accounts of a customer," which must be determined by "calculating the sum

which would have been owed by the debtor to such customer if the debtor had liquidated, by sale

or purchase on the filing date, all securities positions of such customer (other than customer

name securities reclaimed by such customer); minus (B) any indebtedness of such customer to

the debtor on the filing date." SIPA § 78lll(11). SIPA directs the Trustee to make payments to

customers based on "net equity" insofar as the amount owed to the customer is "ascertainable

from the books and records of the debtor or [is] otherwise established to the satisfaction of the

trustee." SIPA § 78fff-2(b).

**B.**    **The Claims Allowance Process And Claims-Related Litigation**

On December 23, 2008, this Court entered the Claims Procedures Order,[4] which sets

forth "a systematic framework for the filing, determination and adjudication of claims in the

BLMIS liquidation proceeding." *Peskin v. Picard*, 413 B.R. 137, 143 (Bankr. S.D.N.Y. 2009).

The Claims Procedures Order directed customers to file their claims against BLMIS with the

Trustee and established a bar date for all claims of six months from the date of publication of

---

[4] A true and correct copy of the Claims Procedure Order (ECF No. 12) is annexed to the Declaration of Vineet
Sehgal in Support of the Motion ("the "Sehgal Decl.") as Exhibit 1.

notice of the commencement of the proceeding, which occurred on January 2, 2009. Sehgal Decl., Ex. 1 at 3, 7.

The Claims Procedure Order provided that if BLMIS's books and records failed to support a claim or the claim was not otherwise established to the Trustee's satisfaction, the Trustee was permitted to deny the claim and required to notify the claimant of the determination in writing. *Id.* at 5. If the claimant did not object to the Trustee's determination, the determination was deemed approved by the Court and binding on the claimant. Claimants who disagreed with the Trustee's determination were required to file objections within thirty days of receiving the determination. *Id.* at 6–7. Following receipt of an objection, the Trustee was to obtain a hearing date before the Bankruptcy Court and notify the objecting claimant thereof. *Id.* at 7. This process "provide[d] a practical and efficient way to resolve a large number of claims without burdening the court or draining its resources," allowing the Trustee to "resolve most of the claims, leaving only those incapable of resolution for this Court." *Peskin*, 413 B.R. at 143.

Early in this proceeding, the Court stated that whether a claimant files or does not file a claim with the Trustee "is an act of volition employed by individual parties as a tactical decision." *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2009 WL 458769 (Bankr. S.D.N.Y. Feb. 24, 2009). In other words, before filing a claim, each claimant had to evaluate the legal consequences that may result from that decision. *Id.* at *2. For example, by filing a claim, a claimant may have been eligible to participate in a distribution to customers, but, by doing so, have submitted to the equitable jurisdiction of the court and thereby forfeited its right to a jury trial. *Id.* (citing *First Fidelity Bank, N.A. v. Hooker Investments, Inc., L.J. (In re Hooker Investments, Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991)); *see also Picard v. Saren-Lawrence,* No. 17 CIV. 5157 (GBD), 2018 WL 2383141, at *4 (S.D.N.Y. May 15, 2018) (filing

of customer claims "triggers the process of allowance and disallowance of claims" and subjects customers to the bankruptcy court's "equitable jurisdiction" for the adjudication of matters related to their customer claims (citing *Langenkamp v. Culp,* 498 U.S. 42, 44 (1990))). Although this decision whether to file or not file a claim in this SIPA proceeding may have presented a "Hobson's choice,"[5] it is one that, nevertheless, each Claimant was faced with prior to expiration of the bar date.

Since the commencement of the liquidation, the Trustee and numerous BLMIS claimants have extensively litigated before the courts of the Second Circuit over the appropriate methodology for calculating customer claims under SIPA. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010) (approving the Trustee's calculation of net equity according to the Net Investment Method) *aff'd* 654 F.3d 229 (2d Cir. 2011) *cert. denied Velvel v. Picard*, 133 S. Ct. 25 (2012); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (approving the Trustee's denial of a time-based damages adjustment) *aff'd In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014) (approving the Trustee's calculation of net equity for accounts with inter-account transfers according to the Inter-Account Method) *aff'd In re Bernard L. Madoff Inv. Secs., LLC,* 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 697 F. App'x 708 (2d Cir. 2017). As explained below, the Claimants are among those claimants who actively litigated these disputes with the Trustee.

As such litigation progressed and reached resolution by final order, the Trustee filed

---

[5] *See In re Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB), February 25, 2009, Hearing Transcript, 38:1-9.

motions on an omnibus basis to address the claims and objections that were ripe for adjudication. The Trustee specifically excluded claimants subject to a pending avoidance action and those who had raised a fact-specific argument. To date, the Bankruptcy Court has entered 19 orders resolving the Trustee's omnibus claims' motions.[6] The Trustee has also negotiated the consensual withdrawal of numerous objections. During this proceeding, 2,410 objections were filed with the Bankruptcy Court. Sehgal Decl. at 3, ¶8. These objections relate to 4,464 claims and 1,236 accounts. *Id.* As of July 23, 2018, 419 objections (related to 492 claims and 382 accounts) remain. *Id.*

---

[6] *See* Order Granting Trustee's First Omnibus Motion Seeking To Expunge Objections By Parties That Did Not File Claims, dated April 19, 2012 (ECF No. 4777); Order Granting Trustee's Second Omnibus Motion Seeking To Expunge Objections By Parties That Did Not File Claims, dated April 19, 2012 (ECF No. 4778); Order Granting Trustee's Third Omnibus Motion To Expunge Claims And Objections Of Claimants That Did Not Invest With BLMIS Or In Entities That Invested In BLMIS, dated April 19, 2012 (ECF No. 4779); Order Granting Trustee's Fourth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated Dec. 30, 2015 (ECF No. 12325); Order Granting Trustee's Fifth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated Dec. 30, 2015 (ECF No. 12326); Order Granting Trustee's Sixth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated Jan. 26, 2016 (ECF No. 12517); Order Granting Trustee's Seventh Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated Jan. 26, 2016 (ECF No. 12518); Order Granting Trustee's Eighth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated May 30, 2017 (ECF No. 16094); Order Granting Trustee's Ninth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated May 30, 2017 (ECF No. 16095); Order Granting Trustee's Tenth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated Jan. 29, 2018 (ECF No. 17184); Order Granting Trustee's Eleventh Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated Jan. 29, 2018 (ECF No. 17185); Order Granting Trustee's Twelfth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated March 26, 2018 (ECF No. 17411); Order Granting Trustee's Thirteenth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated March 26, 2018 (ECF No. 17412); Order Granting Trustee's Fourteenth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated April 24, 2018 (ECF No. 17517); Order Granting Trustee's Fifteenth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated April 24, 2018 (ECF No. 17518); Order Granting Trustee's Sixteenth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated May 29, 2018 (ECF No. 17609); Order Granting Trustee's Seventeenth Omnibus Motion To Overrule Objections Of Claimants Who Invested More Than They Withdrew, dated May 29, 2018 (ECF No. 17611); Order Granting Trustee's Eighteenth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated June 25, 2018 (ECF No. 17726); Order Granting Trustee's Nineteenth Omnibus Motion To Disallow Claims And Overrule Objections Of Claimants Who Have No Net Equity, dated July 23, 2018 (ECF No. 17813).

### C.    The Net Equity Order

On March 8, 2010, the Bankruptcy Court entered an order (1) upholding the Trustee's determinations denying customer claims for the amounts stated on their last BLMIS account statements as of November 30, 2008, (2) affirming the Trustee's Net Investment Method, and (3) overruling any objections related to the Trustee's application of the Net Investment Method.[7] The Net Equity Order specifically applied to 78 claimants identified on Exhibit A to the Trustee's Net Equity Motion,[8] and provided that "the objections to the determinations of customer claims, as listed on Exhibit A . . ., are expunged insofar as those objections are based upon using the Final Customer Statements rather than the Net Investment Method to determine Net Equity. . ." *Id.* at 3.

Thus, to the extent any of the 78 claimants raised other issues beyond the Net Investment Method, their objections were not fully resolved. *Id.* As the Net Equity Order further states, the Bankruptcy Court "shall retain jurisdiction with respect to the remainder of the claimants' objections" and their claims are to be finally resolved pursuant to the procedures as set forth in the Claims Procedures Order. *Id.*

### D.    The Claimants' Customer Claims, Objections And Participation In Litigation Before Multiple Courts In This SIPA Liquidation Proceeding

As reflected in the chart annexed to the Sehgal Declaration as Exhibit 2, each Claimant filed a customer claim with the Trustee by the bar date (the "Claims"). The Trustee denied each

---

[7] *See* Order (1) Upholding Trustee's Determination Denying Customer Claims For Amounts Listed On Last Customer Statement; (2) Affirming Trustee's Determination Of Net Equity; and (3) Expunging Those Objections With Respect To The Determinations Relating to Net Equity (hereinafter the "Net Equity Order") (ECF No. 2020). A true and correct copy of the Net Equity Order is attached as Exhibit 3 to the Sehgal Declaration.

[8] *See* Trustee's Motion for an Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed on Last Statement, Affirming Trustee's Determination of Net Equity and Expunging Those Objections With Respect to The Determinations Relating to Net Equity (hereinafter the "Trustee's Net Equity Motion") (ECF No. 524. Exhibit A to the Trustee's Net Equity Motion was filed separately. *See* Exhibit A: Description of Net Equity Claimants (ECF No. 530), a true and correct copy of which is attached as Exhibit 4 to the Sehgal Declaration.

Claim and mailed notice of his determination to each Claimant. Each Claimant subsequently filed an objection to the Trustee's determination on various grounds (the "Objections"). To date, the Objections remain pending and unresolved.

Each Claimant is also the subject of a pending avoidance action by the Trustee (the "Avoidance Actions"). *See* Sehgal Decl., Ex. 2. Importantly, the Avoidance Actions are predicated, in part, on the Claimants' negative "net equity" in their BLMIS accounts as of December 11, 2008 (the "Filing Date") and thus seek to recover the fictitious profits they received from BLMIS within two years preceding that date. Conversely, the Claims, pending Objections, and defenses to the Avoidance Actions are predicated, in part, on the purported securities transactions reflected on the monthly account statements Claimants received from BLMIS. The Claimants seek to retain the fictitious profits reflected on their account statements as of the Filing Date.

Moreover, the Claimants each participated in the substantial legal proceedings regarding the methodology for calculating customer claims. *See* Seghal Decl., Ex. 2. For example, many of the Claimants filed briefs challenging the Trustee's calculation of net equity according to the Net Investment Method[9] and several appealed the Court's decision affirming the Net Investment Method to the Second Circuit,[10] and, subsequently, to the Supreme Court.[11] *Id*. All of the

---

[9] Customers Memorandum of Law in Opposition to Trustee's Motion for an Order Approving the Trustee's Re-Definition of "Net Equity" Under the Securities Investor Protection Act (ECF No. 760); Declaration of Helen Davis Chaitman in Opposition to Trustee's Motion for an Order Approving the Trustee's Re-Definition of "Net Equity" Under the Securities Investor Protection Act (ECF No. 761); Sonnenschein Investors' Opposition To The Trustee's Motion For An Order Upholding Trustee's Determination Denying "Customer" Claims For Amounts Listed On Last Statement, Affirming Trustee's Determination Of Net Equity And Expunging Those Objections With Respect To The Determination Relating To Net Equity (ECF No. 784). During the course of this SIPA proceeding, the law firm of Sonnenschein Nath & Rosenthal LLP merged with Dentons US LLP (ECF No. 3054). The Dentons Claimants are among those claimants who previously identified themselves as the Sonnenschein Investors.

[10] 10-2378, *In re Bernard L. Madoff Inv. Secs., LLC*, Brief for Appellants Marsha Peshkin IRA, Michael and Meryl Mann and Barry Weisfeld (ECF No. 189); Brief for Appellants (ECF No. 215).

[11] Several Claimants collectively filed a petition for certiorari with the Supreme Court, which was denied. *See Ryan,*

Claimants filed oppositions to the Trustee's motion for an order denying an adjustment to net equity for time-based damages,[12] all appealed the Court's decision granting the Trustee's motion to the Second Circuit,[13] and all appealed to the Supreme Court.[14] *Id.* Several of the Dentons Claimants also contested the Trustee's calculation of net equity for accounts with inter-account transfers.[15]

The Claimants have also actively participated in the Avoidance Actions. The Claimants previously moved to dismiss their respective Avoidance Actions,[16] have been involved in various discovery disputes before the court-appointed discovery arbitrator, Judge Maas, as well as this Court.[17] The Claimants were also part of the briefing for *Greiff*,[18] the *Antecedent Debt Decision*[19] and the *Stern Consolidated Decision*,[20] which were predicated on the Claimants' motions for withdrawal of the reference to the District Court. *See* Seghal Decl., Ex. 2. Following such

---

*et al. v. Picard, et al.*, No. 11-969, 133 S. Ct. 24 (U.S. June 25, 2012).

[12] Customers' Objection to Trustee's Motion for an Order Denying Time-Based Damages (ECF No. 5129); Declaration of Helen Davis Chaitman in Support of Customers' Objection to Trustee's Motion for an Order Denying Time-Based Damages (ECF No. 5130). Customers' Brief Opposing Trustee's Motion for an Order Rejecting an Inflation Adjustment to the Calculation of Net Equity (5133)

[13] *See In re Bernard L. Madoff Inv. Secs., LLC*, No. 14-97, Joint Page Proof Brief of Certain Claimants-Appellants (ECF No. 113).

[14] *See Peshkin, et al. v. Picard, et al.*, No. 15-95, 136 S. Ct. 218 (Oct. 5, 2012).

[15] Claimants' Omnibus Opposition to the Trustee's Motion Affirming Application of Net Investment Method to Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6732).

[16] *See* Memorandum Decision Regarding Omnibus Motions to Dismiss (ECF No. 10089); 10-04898, *Picard v. Saren-Lawrence*, Order Implementing the Court's March 23, 2016 Bench Ruling (I) Denying Defendants' Motion To Dismiss Pursuant To Fed. R. Civ. P. 37(B), 41(B), And Cross-Motion To Quash And For Protective Order; (II) Denying Defendants' Motion For Temporary Restraining Order and Stay Of Enforcement Of Subpoenas; and (III) Granting The Trustee's Motion To Compel (ECF No. 92).

[17] *See, e.g.,* Joinder to Motion for Order Authorizing the Deposition of Bernard L. Madoff Pursuant to Rule 30(a)(2)(B) (ECF No. 13747); Letter dated August 22, 2016 Requesting Conference Regarding Subpoenas Issued by Irving Picard (ECF No. 13909); Letter dated September 6, 2016 Requesting Conference Regarding Subpoenas Issued by Irving Picard (ECF No. 13992); 10-04377, *Picard v. Carol Nelson, et al.*, Letter to Honorable Stuart M. Bernstein regarding Discovery (ECF No. 44); 10-04658, *Picard v. Carol Nelson,* Letter to Honorable Stuart M. Bernstein regarding Discovery (ECF No. 46).

[18] *See Picard v. Greiff,* 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*") (rejecting the argument that customers gave value under 11 U.S.C. § 548(c) in exchange for their withdrawal of fictitious profits).

[19] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*").

[20] *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46 (S.D.N.Y. 2013) (the "*Stern Consolidated Decision*").

10

briefing, the Claimants filed answers substantially denying the allegations in the Trustee's complaints and asserting various affirmative defenses, including that the Claimants had received transfers from BLMIS for value and in good faith under § 548(c) of the Bankruptcy Code and are entitled to an adjustment to their fraudulent transfer liability for taxes and the time value of money deposited into their respective BLMIS accounts.[21] Each of the Claimants seeks to use the calculation of his or her account transactions as a defense in some form or fashion.

On June 29, 2017, the Chaitman LLP Claimants filed new motions for withdrawal of the reference to the District Court, which the District Court denied in a written decision on May 15, 2018. *Saren-Lawrence*, 2018 WL 2383141. The District Court determined that by filing claims with the Trustee and objecting to the Trustee's claims determinations, the Chaitman LLP Claimants had "trigger[ed] the process of allowance and disallowance of claims," which remain subject to adjudication before this Court. The District Court further determined that the Trustee's adversary proceedings against the Chaitman LLP Claimants "bear directly on the allowance" of their claims pursuant to § 502(d) of the Bankruptcy Code. *Id.* at *4. The Chaitman LLP Claimants had therefore "invoked the Bankruptcy Court's jurisdiction with regard to any matters affecting the disposition of their claims," including the Trustee's adversary proceedings against them, and therefore forfeited their right to a jury trial. *Id.* The District Court also concluded that this Court has the constitutional authority to adjudicate the Avoidance Actions against the Chaitman LLP Claimants because the resolution of the Trustee's avoidance claims against them and their Objections involve overlapping issues under §§ 502(d) and 548 of the Bankruptcy Code. *See id.* at *5.

---

[21] *See, e.g.*, 10-04882, *Picard v. Lauren E. Guggenheimer Cole,* Answer to Amended Complaint and Affirmative Defenses (ECF No. 30); 10-04898, *Picard v. Saren-Lawrence*, Amended Answer (ECF No. 30); 10-05236, *Picard v. Toby Hobish, et al.*, Answer to Amended Complaint and Affirmative Defenses (ECF No. 35).

11

The Chaitman LLP Claimants subsequently filed motions for reconsideration of the decision.[22] Those motions remain pending before the District Court.

Having lost their motions for withdrawal before the District Court, the Chaitman LLP Claimants filed notices to withdraw their Claims on June 18, 2018, shortly after filing their motions for reconsideration with the District Court.[23] The Chaitman LLP Claimants also filed separate notices to withdraw their Objections on June 27, 2018. That same day, the Chaitman LLP Claimants filed letters with the District Court falsely stating that the Withdrawals "can be done without a motion …Thus, there is no unresolved issue in the bankruptcy court concerning Defendants' claims."[24]

Prior to that, on June 1, 2018, the Dentons Claimants filed notices to withdraw their Objections.

## III.    ARGUMENT

### A.    The Claimants Have Submitted To The Equitable Jurisdiction Of This Court To Decide All Matters Related To Their Customer Claims

BLMIS customers that file customer claims and objections in the BLMIS liquidation proceeding in the Bankruptcy Court subject themselves to the Bankruptcy Court's "equitable jurisdiction" for the adjudication of matters related to their customer claims. *Saren-Lawrence*,

---

[22] *See* 17-cv-05157 (GBD) *Picard v. Helene Saren-Lawrence*, Defendants' Memorandum of Law in Support of Motion for Reconsideration and, Alternatively, to Certify an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 21); 17-cv-05162 (GBD) *Picard v. Carol Nelson*, Defendants' Memorandum of Law in Support of Motion for Reconsideration and, Alternatively, to Certify an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 18); 17-cv-05163 (GBD) *Picard v. Carol Nelson and Stanley Nelson*, Defendants' Memorandum of Law in Support of Motion for Reconsideration and, Alternatively, to Certify an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 19).

[23] It bears noting that Carol Nelson and Stanley Nelson each filed multiple customer claims with respect to the Carol Nelson (1ZA283) and Carol Nelson and Stanley Nelson (1ZA284) accounts at BLMIS. *See* Sehgal Decl., Ex. 2. The Chaitman LLP Claimants' Withdrawals fail to identify which claims they seek to withdraw.

[24] *See* 17-cv-05157 (GBD) *Picard v. Helene Saren-Lawrence*, June 27, 2018, Letter to Judge Daniels Regarding Withdrawal of Objections  (ECF No. 29); 17-cv-05162 (GBD) *Picard v. Carol Nelson*, June 27, 2018, Letter to Judge Daniels Regarding Withdrawal of Objections  (ECF No. 26); 17-cv-05163 (GBD) *Picard v. Carol Nelson and Stanley Nelson*, June 27, 2018, Letter to Judge Daniels Regarding Withdrawal of Objections (ECF No. 27).

2018 WL 2383141, at *4. The filing of customer claims "trigger[s] the process of allowance and disallowance of claims." *Id.* at *4 (citing *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)); *see also Bankr. Servs. Inc. v. Ernst & Young (In re CBI Holding Co., Inc.),* 529 F.3d 432, 466-67 (2d Cir. 2008); *In re Bally Total Fitness of Greater N.Y.*, 411 B.R. 142, 145 (S.D.N.Y. 2009). As the Supreme Court stated, where a creditor files a proof of claim[25] against a bankruptcy estate and is met with a trustee's preferential transfer action,[26] "that action becomes part of the claims-allowance process which is triable only in equity." *Langenkamp*, 498 U.S. at 44. "In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id.*; *see also First Fid. Bank N.A., N.J. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 838 (2d Cir. 1991) (stating "a creditor who invokes the bankruptcy court's equitable jurisdiction to establish a claim against a debtor's estate is also subject to the procedures of equity in the determination of preference actions brought on behalf of the estate"); *In re Coated Sales, Inc.*, 119 B.R. 452, 455 (Bankr. S.D.N.Y. 1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57-58 (1989) (same)).

---

[25] The filing of a customer claim in a SIPA action is the equivalent of filing a proof of claim in a typical bankruptcy proceeding for purposes of submission to jurisdiction. *Picard v. Stahl*, 443 B.R. 295, 310 (Bankr. S.D.N.Y. 2011) (citing *Keller v. Blinder (In re Blinder Robinson & Co., Inc.)*, 135 B.R. 892, 896–97 (D. Col. 1991)).

[26] To be clear, most courts "do not recognize a distinction between fraudulent transfer claims and preferential transfer claims[]" for purposes of this analysis. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-cv-1842-G (AJF), 2012 WL 987539, at *4 (N.D. Tex. Mar. 21, 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014). The Supreme Court has not distinguished between fraudulent transfer actions and preference actions when determining whether the defendant is subject to the bankruptcy court's equity jurisdiction. *Compare Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36 (1989) (fraudulent transfers) with *Langenkamp*, 498 U.S. at 42-43 (preferential transfers). Additionally, section 502(d) expressly addresses both preferential and fraudulent transfer actions. *See Germain*, 988 F.2d at 1327. And finally, many courts have applied *Langenkamp* in the context of fraudulent transfer claims. *See, e.g., U.S. Bank Nat. Ass'n*, 2012 WL 987539, at *5 ("Because of Section 502(d), the fraudulent transfer actions become 'integral to the restructuring of the debtor-creditor relationship' and 'part of the claims-allowance process which is triable only in equity.'") (citing *Langenkamp*, 498 U.S. at 44–45)); *Crown Paper Co. v. Fort James Corp. (In re Crown Vantage)*, No. C-02- 3838 (MMC), 2007 WL 172321 at *3 (N.D. Cal. Jan. 18, 2007); *In re Washington Mfg. Co.*, 133 B.R. 113, 136-37 (M.D. Tenn. 1991); *In re B & E Sales Co., Inc.*, 129 B.R. 133, 136-37 (Bankr. E.D. Mich. 1990).

Submission to the Bankruptcy Court's "equitable jurisdiction" results in the waiver of the creditor's right to a jury trial. *Langenkamp*, 498 U.S. at 44 (holding that those creditors who submitted claims against debtors' bankruptcy estates had no right to jury trial when sued by trustee to recover preferential transfers); *see also Germain v. v. Connecticut Nat. Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) ("[T]he right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue."); *Official Employment–Related Issues Committee of Enron Corp. v. John J. Lavorato (In re Enron Corp.)*, 319 B.R. 122, 125 (Bankr. S.D. Tex. 2004) ("when a creditor elects to participate in that equitable [bankruptcy] process by filing a proof of claim, . . .[the filing] denies both the creditor and the trustee any right to a jury trial either would have had concerning the claims."). The Second Circuit reinforced this principle in *In re CBI Holding Co., Inc.*, which held that Ernst & Young, LLP ("E&Y") had waived its right to a jury trial when it "voluntarily participated in the equitable reordering of [CBI's] estates by filing a proof of claim," because all of the claims against E&Y "are an 'inextricable part' of the allowance or disallowance of E & Y's claim against the[ ] estates and the adjustment of the debtor-creditor relationship." 529 F.3d at 442, 446–48. Similarly, in *In re McCorhill Pub., Inc.*, the Bankruptcy Court made it clear that "the creditor willingly relinquished any right it might have had outside the bankruptcy court to a jury trial when it filed its proof of claim against the debtors." 90 B.R. 633, 637-38 (Bankr. S.D.N.Y. 1988) (by filing its proof of claim, the creditor "acknowledged that the bankruptcy court was the appropriate forum for determining all issues relating to its claim"). By filing the Claims in this proceeding, Claimants have submitted to the equitable jurisdiction of this Court to adjudicate all matters related to their Claims, which includes the Avoidance Actions.

14

**B.**    **The Withdrawals Were Filed In Direct Violation Of The Bankruptcy Rules And Are Therefore Invalid**

Bankruptcy Rule 3006 provides that:

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, … or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession ….

Fed. R. Bankr. P. 3006. Bankruptcy Rule 3006 "recognizes the applicability of the considerations underlying Rule 41(a) F. R. Civ. P. to the withdrawal of a claim after it has been put in issue by an objection." Advisory Committee Note to Bankruptcy Rule 3006 (citing Fed. R. Civ. P. 41(a)). Bankruptcy Rule 7041, which incorporates Rule 41 of the Federal Rules of Civil Procedure, applies to contested matters before a bankruptcy court. Fed. R. Bankr. P. 9014(c). Because the Objections initiated contested matters before this Court, Rule 41(a) applies to the Claimants' requests to withdraw them. *See Pleasant v. TLC Liquidation Tr. (In re Tender Loving Care Health Servs.)*, 562 F.3d 158, 162 (2d Cir. 2009) (holding that a claim objection triggers a contested matter under Bankruptcy Rule 9014); *In re Lehman Brothers, Inc.*, 2016 WL 316857, at *1 n.3 (S.D.N.Y. Jan. 26, 2016) (noting the same in the context of a SIPA liquidation).

Under Rule 41(a), a plaintiff may dismiss an action without court order by filing a notice of dismissal before issue is joined, or at any time, by stipulation of dismissal signed by all parties who have appeared in the action. *See* Fed. R. Civ. P. 41(a). Otherwise, an action may only be dismissed by court order "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2). Courts have interpreted the Advisory Committee Notes to Bankruptcy Rule 3006 to mean that the same considerations used by courts analyzing voluntary dismissal under Rule 41 should be used in determining the question of withdrawal under Bankruptcy Rule 3006. *See e.g., Resorts*

*Int'l. Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1399 (9th Cir. 1995) (citing Advisory Committee Note to Bankruptcy Rule 3006 in support of using Rule 41(a)(2) considerations); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 979-80 (Bankr. S.D.N.Y. 1996) (citing Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3006, which stated that Federal Rule of Civil Procedure 41(a) analysis should apply to a motion to withdraw a proof of claim).

Under the plain language of Bankruptcy Rule 3006, once an adversary proceeding has been commenced against a claimant, the claimant loses the ability to unilaterally withdraw its filed claim. Similarly, under Rule 41, once issue has been joined, a party may only withdraw a pleading by court order or by agreement of all parties to the dispute. In other words, Rule 41(a) and Bankruptcy Rule 3006 each establish a "bright-line test" that marks the termination of a litigant's "otherwise unfettered right" to "voluntarily and unilaterally" dismiss an action or withdraw a proof of claim, respectively. *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979) (noting that Rule 41(a) serves the important purpose "of establishing a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action"); *Cruisephone, Inc. v. Cruise Ships Catering & Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) ("the plain language of Bankruptcy Rule 3006 establishes [a] bright-line test[] marking the termination of a creditor's otherwise unfettered right voluntarily and unilaterally to withdraw a proof of claim").

Here, each Claimant filed a customer claim with the Trustee. The Trustee then issued a determination with respect to each Claim to which the Claimants filed their Objections. Subsequently, the Trustee commenced an adversary proceeding against each of the Claimants, at which point they were no longer permitted to "voluntarily and unilaterally" withdraw either their

16

Claims or their Objections without court approval. *See Thorp*, 599 F.2d at 1175; *In re Cruisphone, Inc.*, 278 B.R. at 330. Under the plain language of Bankruptcy Rule 3006 and Rule 41(a), therefore, the Withdrawals have no legal effect. *See, e.g., In re Christou*, 448 B.R. 859, 862, n.2. (Bankr. N.D. Ga. 2011) (noting that the creditor's failure to obtain an order from the court authorizing the withdrawal of its claim rendered the withdrawal ineffective); *In re Frank*, 322 B.R. 745, 753 (Bankr. M.D.N.C. 2005) (determining that the creditor's letter purporting to withdraw its claim was not effective because the debtor had previously objected to the claim and the creditor had failed to obtain the court's permission for the withdrawal); *In re Federated Dep't Stores*, 135 B.R. 950, 952 (Bankr. S.D. Ohio 1992) (denying the creditor leave to withdraw its claim and determining that its attempt to withdraw without court approval was "void and of no effect.").

Rule 3006 also makes clear that a claimant who has "participated significantly in the case" may not withdraw a claim without leave of the court. Fed. R. Bankr. P. 3006 (emphasis added). Courts have held that a creditor has "participated significantly in the case" if it has "asked the court to act on its behalf in some substantive way." *Cruisphone, Inc.*, 278 B.R. at 331; *see In re Yucca Grp., LLC*, No. 10-12079-GM, 2012 WL 2086485, at *8 (B.A.P. 9th Cir. June 8, 2012) (holding that the creditor could not withdraw because it had "participated actively in the bankruptcy case, making numerous substantive demands on the court" by filing motions for affirmative relief, opposing relief sought by others, and participating in hearings before the bankruptcy court).

Similarly, courts routinely deny motions for voluntary dismissal under Rule 41(a)(2) under circumstances involving the requesting litigant's significant participation in the lawsuit, especially when the litigant seeks dismissal late in the litigation. *See, e.g., Zagano v. Fordham*

*Univ.,* 900 F.2d 12, 14 (2d Cir. 1990) (affirming district court's denial of plaintiff's motion to dismiss on the eve of trial based on the plaintiff's active participation in the litigation); *Emory v. New York*, No. 11-CV-1774, 2013 U.S. Dist. LEXIS 64414, at *8 (E.D.N.Y. May 6, 2013) (rejecting request for dismissal without prejudice where "Plaintiffs seek to dismiss almost two years after the action began, over a year after fact discovery was concluded, and after multiple motions have been fully-briefed, requiring the defendants to expend significant time, effort and resources to defend an action that plaintiffs now concede has no legal merit."); *Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*, 2005 U.S. Dist. LEXIS 3811, at *15-17 (S.D.N.Y. Mar. 10, 2005) (denying Rule 41(a)(2) motion filed near the close of discovery and after the parties had engaged in exhaustive discovery as "too late."); *cf. E. Sav. Bank, FSB v. Whyte*, No. 13-CV-6111 (CBA)(LB), 2016 U.S. Dist. LEXIS 45880, at *3 (E.D.N.Y. Apr. 4, 2016) (authorizing the plaintiff to withdraw its complaint after issue was joined based on the defendant's lack of an appearance, participation in motion practice or discovery, or other activity in defending the suit).

Claimants fit the very definition of having "participated significantly" in the SIPA liquidation and in the Avoidance Actions before this Court. Claimants actively litigated with the Trustee before this Court and the Second Circuit over the appropriate methodology to calculate net equity and whether to permit a time-based damages adjustment to the net equity calculation. *See* Sehgal Decl., Ex. 2. Since filing suit against the Claimants, the Trustee has expended substantial time and resources on contesting Claimants' motions to withdraw the reference and omnibus motions to dismiss the Trustee's adversary proceedings based on Claimants' affirmative defenses. *See id.* Indeed, Claimants were part of the briefing for *Greiff*, the *Antecedent Debt Decision* and the *Stern Consolidated Decision. Id.*

The Trustee and Claimants have also engaged in exhaustive discovery.  The Trustee has

served initial disclosures, interrogatories, and document requests and responses, and prepared lengthy document productions to Claimants. The Trustee has also served Rule 45 subpoenas on banks in possession of Claimants' financial information—which Claimants actively objected to before this Court.[27] The Trustee and counsel for Claimants have appeared before the appointed discovery arbitrator, Judge Maas, as well as this Court to address discovery disputes and specific deficiencies in the document productions, and litigated motions for leave to appeal discovery orders to the District Court.[28] In light of the Claimants' significant participation in the SIPA proceeding and Avoidance Actions, Claimants are prohibited from withdrawing their Claims and Objections without leave of the Court.

Finally, this Court previously observed that all BLMIS claimants were faced with the "tactical decision" of whether they should file a claim with the Trustee. *See Bernard L. Madoff Inv. Sec. LLC*, 2009 WL 458769, at *2. Although that decision may have presented a "Hobson's choice," the Claimants, nevertheless, chose to file a claim and participate in the claims-allowance process. *See Langenkamp*, 498 U.S. at 44. Under the law of this case, the Claimants have submitted to the equitable jurisdiction of this Court by filing the Claims and Objections, *see Saren-Lawrence,* 2018 WL 2383141, at *4, and may not circumvent the legal consequences of having done so by attempting to withdraw their Claims and Objections at this late stage.

C.      **Even If The Claimants Had Properly Filed Motions Authorizing The Claimants To Withdraw Their Claims And Objections, Claimants Cannot Satisfy The Standards For Withdrawal**

As stated above, Rule 3006 "recognizes the applicability of the considerations underlying

---

[27] *See, e.g.*, Adv. Pro. No. 10-04898, *Picard v. Saren-Lawrence*, ECF Nos. 63-65; Letter dated August 22, 2016 Requesting Conference Regarding Subpoenas Issued by Irving Picard (ECF No. 13909); Letter dated September 6, 2016 Requesting Conference Regarding Subpoenas Issued by Irving Picard (ECF No. 13992).
[28] *See e.g.*, Adv. Pro. No. 10-04658, *Picard v. Nelson* (ECF Nos. 36-38, 93-96, 98, 105); Adv. Pro. No. 10-04377, *Picard v. Carol Nelson, et al.* (ECF Nos. 46, 53-56, 63); Adv. Pro. No. 10-04898, *Picard v. Saren-Lawrence*, ECF Nos. 44, 50, 52-53, 60.

Rule 41(a) F. R. Civ P. to the withdrawal of a claim after it has been put in issue by an

objection." Advisory Committee Note to Bankruptcy Rule 3006 (citing Fed. R. Civ. P. 41(a)).

Bankruptcy courts have likewise looked to case law applying Rule 41 in determining whether a

proof of claim may be withdrawn.[29] And under Bankruptcy Rule 9014, Rule 41 applies to

contested matters in the Bankruptcy Court, such as the Objections. Under Rule 41, courts focus

on "whether the defendant will suffer some actual legal prejudice as a result of the dismissal." *In

re Kaiser Grp. Int'l, Inc.*, 272 B.R. 852, 855 (Bankr. D. Del. 2002). In assessing what rises to

the level of "legal prejudice," the Second Circuit has instructed courts to consider the following

factors:

> the plaintiff's diligence in bringing the motion; any "undue vexatiousness" on
> plaintiff's part; the extent to which suit has progressed, including the defendant's
> effort and expense in preparation for trial; the duplicative expense of relitigation;
> and the adequacy of plaintiff's explanation for the need to dismiss.

*Zagano,* 900 F.2d at 14. Courts consider "the legitimate interests of both the plaintiff and the

defendant" in deciding whether to grant a motion to voluntarily dismiss a case. *In re 20/20 Sport*,

200 B.R. at 979. The same considerations apply to a motion for leave to withdraw a proof of

claim. *Id.*; *see also In re Chateaugay Corp.,* 165 B.R. 130, 133 (S.D.N.Y. 1994) (concluding that

permitting the claimants to withdraw their claims would have been prejudicial to the debtors);

*Kaiser Grp. Int'l, Inc.*, 272 B.R. at 855 (Bankr. D. Del. 2002) (applying Rule 41 standard of

"whether the defendant will suffer some actual legal prejudice as a result of the dismissal").

Here, the Trustee will be substantially prejudiced if Claimants are given leave to

withdraw the Claims and Objections. First, Claimants have failed to act diligently. Claimants

have had nearly a decade to withdraw, only seeking withdrawal after the District Court had

---

[29] *See* pp. 15-16.

denied the Chaitman LLP Claimants' motions to withdraw the reference. Authorizing withdrawal will only further delay the Claimants' return of fictitious profits they received from BLMIS to the estate for the benefit of BLMIS's customers with allowed claims. Seeking withdrawal at this late stage – almost ten years into this SIPA Liquidation – demonstrates a glaring lack of diligence, or more accurately astonishing gamesmanship.

In situations involving blatant forum shopping or gamesmanship, such as here, where the Chaitman LLP Claimants sought withdrawal of their Claims and Objections only after losing on their motions for withdrawal of the reference to the District Court, this Court should not permit withdrawal. For example, bankruptcy courts have frequently rejected a litigant's attempt to withdraw consent to adjudication of an adversary proceeding under circumstances involving similar gamesmanship and impermissible forum shopping. *See, e.g.*, *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, 735 F.3d 279, 285 (5th Cir. 2013) (labeling as "gamesmanship" debtor's effort to withdraw consent before final judgment but after debtor was denied a jury trial before concluding that the bankruptcy court lacked the constitutional authority to decide certain noncore questions); *Bayonne Med. Ctr. v. Bayonne/Omni Dev., LLC (In re Bayonne Med. Ctr.)*, Adv. Pro. No. 09-1689 (MS), 2011 WL 5900960, at *6 (Bankr. D.N.J. Nov. 1, 2011) (finding that trustee had consented to bankruptcy court's adjudication of all matters pleaded in the complaint "by virtue of his pleading and conduct in this litigation," and finding that trustee's attempt to object to the bankruptcy court's adjudication of noncore proceedings was a "late-day tactical change of heart [that] will not be permitted" because "[i]t is a variation of forum shopping" and because "absolutely no reason or cause was expressed by the [trustee] for the effort to withdraw consent"); *Brook v. Ford Motor Credit Co. (In re Peacock)*, 455 B.R. 810, 813 & n.4 (Bankr. M.D. Fla. 2011) (finding that a defendant's "last-minute, indirect attempt

21

to revoke its deemed consent to the undersigned's deciding this proceeding is not well-taken, especially without a showing of cause—perhaps even good cause," because the bankruptcy court feared that the "real 'cause' of the last-minute change in position is . . . this Court's recent oral ruling . . . in a similar adversary proceeding," and "forum shopping can *never* be cause for leave to withdraw consent to the bankruptcy court's adjudicative authority").

Second, Claimants have "participated significantly" in the SIPA liquidation, incurring exhaustive efforts and resources on the part of the Trustee in prosecuting his Avoidance Actions and in claims-related litigation. As stated above, over the past ten years, the Trustee has expended substantial efforts and resources litigating with the Claimants in disputes before this Court, the District Court, and the Second Circuit.[30] The Trustee and Claimants have also engaged in exhaustive discovery in the Avoidance Actions.[31]

Finally, withdrawal is inappropriate because the resolution of the Claimants' fraudulent transfer liability in the Avoidance Actions and determination of their Claims are "two sides of the same coin,"[32] and this Court must resolve identical issues in determining whether the Claims should be disallowed under section 502(d) of the Bankruptcy Code. *See Stern Consolidated Decision*, 490 B.R. at 55. In rejecting the Claims, the Trustee applied the Net Investment Method to determine whether the Claimants had net equity in their respective customer accounts: he credited the amount of cash Claimants had deposited less the amounts they had withdrawn. *Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 233. In the Avoidance Actions, the Claimants' fraudulent transfer liability depends on the calculation of the amount of fictitious profits

---

[30] *See* pp. 9-11; Sehgal Decl., Ex. 2.

[31] *See id.*

[32] *Antecedent Debt Decision,* 499 B.R. at 420 ("a customer's net equity and the amounts sought in avoidance and recovery proceedings (assuming the customer's good faith) are two sides of the same coin."); *see also* SIPA § 78*lll*(11) (defining the calculation of "net equity" to include a determination of "any indebtedness of such customer to the debtor").

22

Claimants' received from BLMIS, i.e., the negative net equity in their customer accounts. *See Antecedent Debt Decision*, 499 B.R. at 420. Moreover, because the Claimants are recipients of avoidable transfers, their Claims must be automatically disallowed under section 502(d) until their fraudulent transfer liability is paid in full. *See* 11 U.S.C. § 502(d); *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, Nat'l Ass'n (In re M. Fabrikant & Sons, Inc.)*, Nos. 06-12737 (SMB), 07-02780, 08-01734, 2009 Bankr. LEXIS 3606, at *27 (Bankr. S.D.N.Y. Nov. 10, 2009) (the disallowance of a claim under section 502(d) is automatic if the estate representative prevails on the underlying avoidance claim). When section 502(d) is implicated, until the claimant's liability for an avoidable transfer has been adjudicated, "the claim can neither be allowed nor disallowed." *Katchen v. Landy*, 382 U.S. 323, 330-31 (1966); *Stern Consolidated Decision*, 490 B.R. at 55.

Therefore, until the Court adjudicates the Avoidance Actions and determines whether the Claimants are entitled to credit or an offset on their affirmative defenses, the Trustee is unable to resolve the Claims and the related Objections. This Court has final adjudicative authority to resolve the Trustee's claims for avoidance and recovery of fraudulent transfers in the Avoidance Actions, which would necessarily resolve the Claims. *See Saren-Lawrence,* 2018 WL 2383141. For these reasons, the Court should not permit the Claimants to withdraw and try to circumvent their submission to the Court's equitable jurisdiction.

### D.    The Chaitman LLP Claimants' Objections Were Not Overruled By The Net Equity Decision

The Chaitman LLP Claimants incorrectly allege that their objections to the Trustee's determinations denying their Claims were "fully and finally" determined when the Trustee's methodology for determining net equity was upheld by Second Circuit (*See, e.g.*, ECF No. 17682, at 3). However, the Claimants' Objections were not overruled, and all remain pending

before the Court.

Specifically, the Net Equity Order provides that "the objections to the determinations of customer claims, as listed on Exhibit A to the Trustee's [Net Equity] Motion [Dkt. No. 530], are expunged insofar as those objections are based upon using the Final Customer Statements rather than the Net Investment Method to determine Net Equity. . ."  *See* Net Equity Order at *3. Exhibit A to the Trustee's Net Equity Motion lists 78 claimants—excluding Claimants—whose objections were specifically determined solely as to the determination of the calculation of net equity based on the Net Investment Method.  All other issues identified in the 78 claimants' objections remained unresolved.

The Chaitman LLP Claimants, nevertheless, insist they were "expressly included" in the Net Equity Decision, pointing to the Court's reference to "Phillips Nizer LLP, by Helen Davis Chaitman, New York, NY, Attorneys for Diane and Roger Peskin, Maureen Ebel and a group of other customers" as being among the attorneys/law firms that participated in the briefing on net equity.[33] This neither "expressly includes" any of the Chaitman LLP Claimants, nor does it comport with the plain language of the Net Equity Order as entered.

As a result, the Objections were not "expressly" overruled as repeatedly and incorrectly asserted by the Chaitman LLP Claimants. Nor have the Objections been addressed by any of the Trustee's omnibus claims' motions. Rather, the Objections remain pending before the Court and involve the same factual predicates and legal issues that must be resolved in the Avoidance Actions.

---

[33] *See, e.g.*, ECF No. 17682, at 2 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122, 123 (Bankr. S.D.N.Y. 2010)).

## IV.    **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, striking the Withdrawals from the Court's docket and determining that they have no legal effect.

Dated: New York, New York
      July 27, 2018

Respectfully submitted,

/s/ David J. Sheehan
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Anat Maytal
Email: amaytal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*