Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Lead Case No. 08-99000-smb

4   Case No. 08-01789-smb

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7   SECURITIES INVESTOR PROTECTION CORPORATION,

8                    Plaintiff,

9            v.

10   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

11                   Defendants.

12

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14                   United States Bankruptcy Court

15                   One Bowling Green

16                   New York, NY  10004

17

18                   July 25, 2018

19                   10:10 AM

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

1   HEARING re Conference re Motion for an Order Establishing

2   Omnibus Proceeding for the Purpose of Determining the

3   Existence, Duration and Scope of the Ponzi Scheme at BLMIS

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    BAKER HOSTETLER

 4         Attorneys for Trustee BLMIS

 5         45 Rockefeller Plaza

 6         New York, NY 10111

 7

 8    BY:  NICHOLAS J. CREMONA

 9         AMANDA E. FEIN

10         STACEY A. BELL

11         MELISSA L. KOSACK

12         MAXIMILLIAN S. SHIFRIN

13

14    DENTONS US LLP

15         Attorneys for Defendants

16         1221 Avenue of the Americas

17         New York, NY 10020

18

19    BY:  CAROLE NEVILLE

20

21

22

23

24

25
```

Page 4

1    PRYOR CASHMAN LLP

2         Attorneys for the Defendants

3         7 Times Square

4         New York, NY 10036

5

6    BY:  RICHARD LEVY, JR.

7

8    MCDERMOTT WILL & EMERY LLP

9         Attorneys for Sage Associates, Sage Realty, Malcolm

10        Sage, Martin Sage, Ann Sage

11        340 Madison Avenue

12        New York, NY 10173

13

14   BY:  ANDREW B. KRATENSTEIN

15

16   HUNTON ANDREWS KURTH LLP

17        Attorneys for Defendants

18        200 Park Avenue

19        New York, NY 10166

20

21   BY:  RICHARD A. RICH

22

23

24

25

```
 1    FISHERBROYLES LLP

 2          Attorneys for Defendants

 3          445 Park Avenue

 4          New York, NY 10022

 5

 6    BY:  RICHARD A. KIRBY

 7

 8    STEVENS & LEE

 9          Attorneys for Legacy Capital

10          485 Madison Avenue, 20th Floor

11          New York, NY 10022

12

13    BY:  NICHOLAS F. KAJON

14

15    CHAITMAN LLP

16          Attorneys for Defendants

17          465 Park Avenue

18          New York, NY 10022

19

20    BY:  HELEN DAVIS CHAITMAN

21

22

23

24

25
```

1   ALSO PRESENT TELEPHONICALLY:

2

3   KEVIN H. BELL

4   PATRICK MOHAN

5   JOSHUA TUCKER

6   DAVID J. SHEEHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE COURT:  Go ahead.

3              MS. BELL:  Good morning, Your Honor.  Stacey Bell,

4     counsel for the Trustees, BakerHostetler.  Your Honor, we're

5     here on a status conference on the Trustee's motion for an

6     order establishing an omnibus proceeding on the existence,

7     duration, and scope of the Ponzi scheme at BLMIS.  Since the

8     last time we were here, we've refiled that motion, and so

9     now we're here on an omnibus Ponzi pretrial proceeding.

10             If this Court will recall, the Trustee filed a

11     motion in February seeking to consolidate the remaining good

12     faith actions on the issue -- on the Ponzi issue.  And in

13     response to the Trustee's motion, the Trustee received a

14     number of objections.  106 cases filed objections.  There

15     were eight law firms. We've since -- that number has since

16     dropped to seven law firms with 105 cases at issue.

17             So, a month ago, the parties appeared before Your

18     Honor to update the Court on the status of the negotiations.

19     And at that time, the Trustee reported that since receiving

20     the Defendant's objections, the parties had been engaged in

21     negotiations seeking to streamline the issues for the Court.

22     More specifically, the parties were engaged in discussions

23     about a consolidated proceeding that would address discovery

24     only, tabling issues of trial and dispositive motions for a

25     later date.

Page 8

1          Based on the progress that the parties had made

2   during the course of their negotiations, as of the last

3   hearing, the Trustee expressed optimism that we would be

4   able to enter into a revised consensual order.  And the

5   objecting parties agreed with the Trustees -- the Trustee

6   and acknowledge the progress that the parties had made to

7   date.

8          Subsequent to the hearing, Your Honor, the Trustee

9   sent a revised proposed order to the Defendants.  That is

10  the order that is now before the Court.  And the revised

11  order, as I stated before, we refiled a pretrial order

12  because we significantly limited -- and it indicated the

13  substantial overhaul and changes between the initial order

14  and the revised order.

15         The Trustee's counsel had a meeting with

16  Defendants with the objecting Defendants, where it was our

17  hope that we would continue in the same vain as the initial

18  rounds of discussions, making progress towards a consensual

19  order.

20         At the meeting, as reflected in our reply papers,

21  the objecting Defendants informed the Trustee that they

22  could not agree to the order because as a threshold matter,

23  discovery was closed in a majority of their cases and the

24  fact, of course -- discovery renders this proceeding

25  problematic.

Page 9

1          In the Defendant's view, the only cases that could

2    proceed on this consolidated basis would be cases where fact

3    discovery is open under the CMO.  The Trustee obviously --

4          THE COURT:  How many of those?

5          MS. BELL:  There are about seven or so cases, Your

6    Honor, and I'll go through those categories in just a

7    moment.  But there are seven cases in the Trustee's view

8    that are open with -- under the existing CMOs.  The Trustee

9    disagrees with Defendant's position, and we decided to file

10   a motion or a reply just in accordance with the Court's

11   directive at the last hearing, that that reply be put in by

12   July 18th.

13         The day before the filing, the Trustees received -

14   - the Trustee received comments to our proposed order, and

15   those comments highlighted and confirmed how far apart the

16   parties were.  In the Trustee's view, we've accommodated and

17   we've sought to accommodate the Defendant's position vis-à-

18   vis our proposed revised order on what a restructured

19   omnibus Ponzi proceeding could look like.  And we think that

20   the revised order is judicially efficient and it streamlines

21   the discovery process going forward on the Ponzi issue.

22         And so, Your Honor, I want to talk just a bit

23   about how the Trustee's grouped the cases because, in our

24   view, there are three groups of cases.  The first group --

25   and that's the question Your Honor just had -- the cases

Page 10

1    where fact discovery is open under existing CMOs.  The

2    second group, in the Trustee's view, would be the cases that

3    participated in Madoff's deposition.  And then the third

4    group of cases are cases where discovery is closed and they

5    did not participate in Madoff's deposition.  And I'll take

6    those (indiscernible).

7            Cases with open fact discovery -- I don't think

8    that there would -- I don't expect there to be disagreement,

9    and I think we've gotten that far with the negotiations

10   where Defendants would agree that those would be part of a

11   consolidated proceeding.  There are seven of those cases.

12           With respect to the cases that participated in

13   Madoff's deposition, of the objecting parties there are 92

14   of those cases that participated in Madoff's deposition.

15   And given the deposition, in the Trustee's view, it's

16   reasonable at this juncture to seek to take additional

17   discovery on the Ponzi issue to refute the issues injected

18   into the case by Mr. Madoff's deposition.

19           And, Your Honor, just -- if you would indulge me a

20   bit, just to go through how Madoff's deposition --

21           THE COURT:  What discovery does the Trustee need?

22   The Trustee's been preparing these cases for ten years or

23   eight years.

24           MS. BELL:  Yes, Your Honor, and that is absolutely

25   correct.  And I think as we addressed at the last hearing,

Page 11

1     Mr. Madoff injected certain issues into the case that the

2     Defendants themselves have agreed that these are completely

3     new issues, and we have transcripts where we've talked about

4     that.  And so, the Trustee would like the opportunity to put

5     in additional fact witnesses who can testify --

6               THE COURT:  But who?  What?  Who do you --

7               MS. BELL:  So, there are certain witnesses that

8     Mr. Madoff himself mentioned at the deposition, so we can

9     start with those individuals like Mr. Dan Bonventre,

10    individuals like Ms. Annette Bongiorno, Ms. Condoleezza

11    Picks.  There are a number of individuals who either worked

12    on the convertible arb transactions that are clearly at

13    issue, just based -- coming out of Mr. Madoff's deposition.

14    The Treasury transactions that the Defendants, I think, have

15    now wrapped a lot of their defenses around.

16              THE COURT:  But let me ask you this.  It's always

17    been the Trustee's theory that the Ponzi scheme began in the

18    '70s, I think.

19              MS. BELL:  Yes, Your Honor.

20              THE COURT:  Okay.  So I assume you would have been

21    able to prove that when -- or develop that case over the

22    last eight years because Madoff allocuted that it began in

23    1992 or something like that, right?

24              MS. BELL:  Yes.

25              THE COURT:  So, why do you need more discovery?

1           MS. BELL:  Yes.  He allocuted that the Ponzi began

2       in the 1990s but Mr. Madoff's testimony has changed over

3       time.  Your Honor, and to be clear, the Trustee --

4           THE COURT:  But he's never deviated from that, I

5       don't think.

6           MS. BELL:  Well, I think he's deviated in a number

7       of significant ways.  He said that the Ponzi scheme began in

8       '92 and then in his deposition, he walked away from that and

9       said, well, the convertible arb transactions were always

10      real.  And so now it's now longer a time limitation; it's

11      become a strategy-based limitation.

12          The convertible arb transactions purportedly

13      occurred through 1998.  And so are we at '98 or are we at

14      '92?  There is also -- Mr. Madoff in his allocution said

15      that the split strike conversion strategy did not happen;

16      that he promised customers that he would have a basket of

17      securities.  He did not.  And as part of that promise he

18      also promised that he would invest in treasury, and he

19      didn't do it.  And he said that --

20          THE COURT:  It's been awhile since I looked at his

21      deposition, but as I recall, he was talking about earlier

22      days in his deposition.  And I thought he always said that

23      once he started the split strike conversion strategy -- or

24      he never even addressed what happened after 1992.

25          MS. BELL:  I think he said in later depositions

Page 13

1    that the convertible arb strategy was real, and those

2    transactions went through '98.  I think --

3              THE COURT:  So, who would you want to depose about

4    that?

5              MS. BELL:  With respect to convertible arb, I

6    think there are a number of former BLMIS employees.  Ms. Jo

7    Ann Sala, who worked with Mr. David Kugel on the convertible

8    arb transactions.  So, Mr. Kugel as well, who also pled.

9    And these are individuals who testified at the criminal

10   trial.

11             What the trustee is seeking to do is to have a

12   limited number of former BLMIS employees who can testify to

13   the issues that admittedly the Defendants have said that

14   these are new issues and these things completely change the

15   case.

16             THE COURT:  Do you know what they're going to say?

17             MS. BELL:  I'm sorry?

18             THE COURT:  Do you know what they're going to say,

19   these witnesses?

20             MS. BELL:  Your Honor, we have a good sense of

21   what they're going to say just based on --

22             THE COURT:  So, why don't you just call them as

23   witnesses at the trial?

24             MS. BELL:  Your Honor, we are preparing to do

25   that.  I think, though, that the Trustee -- the record is

Page 14

1    going forward, at least the evidence that's been produced to

2    date, is going forward with full -- four days of Madoff's

3    deposition.  And similar to the decision that was made in

4    the PW context, where the Trustee was given the opportunity

5    because Defendants sought Mr. Madoff's deposition to speak

6    with former employees.  And Your Honor raised "Well, have

7    you spoken to anyone else?" I think the Trustee should be

8    accorded -- though it might be a limited number of folks --

9    the opportunity to speak to those employees.  To go forward

10   on a full record and a full consistent, balanced record so

11   that Mr. Madoff's testimony is not the only fact witness

12   that we have at play on this Ponzi issue that runs across

13   all the cases.

14          And, Your Honor, I think Mr. Madoff's deposition

15   has changed -- has injected a number of new issues, like I

16   said before, into the case.  And this proceeding, this fraud

17   proceeding, I think as we've termed it, if you recall, when

18   Mr. Madoff's deposition was requested, it was really around

19   the '92 issue.  We started calling it the start date issue.

20          There was an expert report, Mr. Feingold, that

21   some of the Defendants proffered on this '92 issue on

22   convertible arb.  That issue has since changed.  Those

23   issues have evolved.  We're now talking about there was no

24   Ponzi at all, or the treasury transactions were made for the

25   investment advisory business customers.  Or everything that

Page 15

1    happened outside of con-arb or split strike, those accounts

2    that we call in our papers the non-con-arb, non-split-strike

3    transactions, those were always real.

4            I think that because those issues are injected

5    into these cases that the Trustee should be given a limited

6    opportunity to rebut what Mr. Madoff has said, because

7    Defendants themselves -- and we have a number of transcripts

8    where we've all agreed that these are new issues that we

9    would -- when we got to the point of Mr. Madoff's deposition

10   being concluded, that we would address those issues there.

11   And the Trustee's simply asking for the opportunity, to be

12   accorded the opportunity to do that.

13           We're not looking for a discovery period that will

14   go for years and years.  I think, though, that --

15           THE COURT:  Well, it does go for a year.

16           MS. BELL:  It does, Your Honor.  But I think under

17   any other formulation it will go for at least -- longer than

18   that because we'll be proceeding on separate tracks.  You

19   have cases where discovery is still open.  The Trustee will

20   have that evidence in those cases on the same Ponzi scheme

21   perpetuated by the same person at the same company.  And so

22   to proceed on different factual record I think raises a

23   significant issue for the parties and certainly for the

24   Trustee.

25           And our attempt to come up with an omnibus

Page 16

1    proceeding that would be fair, I think the Court can see the

2    significant substantial differences between the original

3    order and the revised order.  And we didn't put in a red

4    line because there was no point in doing that because the

5    order has changed so significantly.  Simply to deal with the

6    Ponzi issue in Mr. Madoff's deposition and the Trustee's

7    ability to -- and just based on the course of dealing, I

8    think, and the hearings before this Court, it was always

9    anticipated that the Trustee would have an opportunity to

10   rebut the testimony.

11           And if we review the day one order on Paragraph L

12   -- Paragraph L was very clear in that order that as to the

13   participating customers, they would not have the opportunity

14   to continue deposition because Your Honor recognized that

15   they requested this deposition years after these cases had

16   been proceeding.  And so the Trustee expressly in hearings

17   carved out his right to be able to go after additional

18   discovery to rebut Mr. Madoff's deposition testimony.

19           I think that also came through in the day two

20   order.  And in that order, that order expressly incorporates

21   what happened at the hearing on June 29.  And at that

22   hearing, again, there was a colloquy about the Trustee's

23   ability to be able to take additional discovery.

24           THE COURT:  One of the problems I have is your

25   order is sort of open-ended.  Both Madoff orders, deposition

Page 17

1    orders said that you had the right to seek further discovery

2    based upon Madoff's testimony.  You've now told me well,

3    there's the issue of whether or not the convertible

4    arbitrage transactions were legitimate transactions; there's

5    the issue of whether -- when the business was purchasing

6    treasuries, they were or should have been allocated to the

7    particular customer accounts.  Those are two issues.  What

8    other issues do you want to take discovery on?  I'm trying

9    to understand and confine what it is you're looking into.

10             MS. BELL:  Well, so I think, Your Honor, there's

11   the issue of Madoff's deposition, but what's derivative of

12   that, what defense is --

13             THE COURT:  Madoff's deposition is done, as I

14   understand it.

15             MS. BELL:  Your Honor, I think that's something

16   that we will decide today.  I know in the Trustee's view,

17   we're prepared -- we're fine with Mr. Madoff's deposition

18   being concluded.  I know --

19             THE COURT:  Well, did everybody have the right to

20   cross-examine?

21             MS. BELL:  Well, at the end of the last deposition

22   I know Ms. Chaitman reserved her right to take additional

23   time.  In the Trustee's view, the deposition has concluded.

24             THE COURT:  How many days was Madoff deposed?

25             MS. BELL:  He was deposed, I believe, on day one

1    he was deposed for three days.  And day two he was deposed

2    for two days.

3                 THE COURT:  Okay.

4                 MS. BELL:  But, Your Honor, the arguments have

5    advanced beyond the convertible arb and beyond the start

6    date of the Ponzi scheme.  So --

7                 THE COURT:  But that's what I'm -- that's what I'm

8    trying to find out, because all your order says is we've got

9    four months of fact discovery and it's not supposed to be a

10   complete do-over.

11                MS. BELL:  Right, and I agree with that, Your

12   Honor.  So, what the Trustee was attempting to do in this

13   order was, in our meet and confer, the Defendants raised the

14   issue of the 27 subpoenas that Ms. Chaitman served.  If you

15   recall in the original order, the Trustee had a limited

16   number of discovery.  We tried to do it based on numbers so

17   the Court would see from the Trustee's perspective we're not

18   trying to have this go for many, many months and to be an

19   open-ended process.

20          In this order we did not do that simply to

21   accommodate the request to have those 27 trader subpoenas.

22   And I think that's worth talking about as well, because not

23   only do we have Madoff's deposition that the Defendants have

24   requested but there are 27 trader subpoenas of former BLMIS

25   employees who worked on the House 5 side.  I think there was

Page 19

```
 1    one who was on the House 17 side, but we want the

 2    opportunity to talk to the House 17 employees.  There is a

 3    criminal trial.  In 2014, five employees were found guilty.

 4    There are a number of plea allocutions where we would like

 5    the opportunity to have -- and we recognize that that's

 6    admissible evidence, but to explore those and to unpack

 7    those to address the issues that are at play in this case.

 8            And so Defendants have not only stated the start

 9    date issue and the convertible arb issue, but there's an

10    issue about how subscription -- how redemption requests were

11    paid.  There was no Ponzi scheme at all.  The issues have

12    ballooned and mushroomed from beyond where we started.  And

13    so if the Trustee was preparing a case -- and we certainly

14    believe, again, that we have enough admissible evidence to

15    prove our case, but as a matter of fairness and equitable

16    principles, this case should go forward on a full and

17    balanced record.

18            THE COURT:  But a lot of the Defendants say we

19    don't -- you know, discovery's cut off.

20            MS. BELL:  But --

21            THE COURT:  You should be able to prove your case.

22    If they don't want discovery, why do you want to keep

23    discovery open?

24            MS. BELL:  Because, Your Honor, we kept it open on

25    the Ponzi issue, I think, from -- that was always
```

Page 20

1    contemplated in connection with Mr. Madoff's deposition.

2              The other fact I would say is, again, if discovery

3    happens in some of the cases and not in the other cases,

4    this becomes an incomplete record for some cases and on the

5    same Ponzi scheme.  So I think there is an issue there that

6    the Court would need to address.

7              And if we go forward, and the Trustee is prepared

8    to go forward on these cases one at a time -- but we've

9    tried that before in the Cohen case, if the Court will

10   recall, and there was a motion to intervene.  And so, again,

11   we're not trying to get --

12             THE COURT:  That was unsuccessful and affirmed on

13   appeal so --

14             MS. BELL:  Correct, correct.  We're not trying to

15   get an advantage here.  It's the Trustee's -- we're not

16   trying to do a one-upmanship here.  I think the idea is to

17   proceed in a way that is rational, that is judicially

18   efficient.  It's an opportunity for the Court and for the

19   parties to streamline this process, because otherwise, we

20   continue with these discovery disputes for certain types of

21   records.  There -- we've integrated and built into the

22   process where we would have Judge Moss overseeing some of --

23   to the extent that discovery disputes come up, to take that

24   off the Court's calendar, and because Judge Moss is familiar

25   with these issues that have come up before.

1          THE COURT:  Well, the Defendants would have to

2     consent to that but --

3          MS. BELL:  Yes, Your Honor, I agree with that.

4          THE COURT:  All right.  All right.  Let me hear

5     from the Defendants.

6          MS. CHAITMAN:  Good morning, Your Honor.  Helen

7     Davis Chaitman on behalf of a number of Defendants.  Your

8     Honor, when I answered the complaints on behalf of all of my

9     clients, I asserted that we did not believe that there was a

10    Ponzi scheme and that we believed that Madoff purchased the

11    securities.

12         So these issues have been in this case from day

13    one.  And the reason that I have embarked on this now two-

14    year effort to obtain the trading records is because I

15    believe I can prove -- I've already gotten some records

16    which I've been able to prove that the securities were

17    actually purchased for some of my customers.

18         Now, there's -- the Court has been so strict in

19    enforcing the case management orders and the deadlines in

20    the case management orders, and most of that has worked

21    against the Defendants.  Because we've come in and asked for

22    additional time and Your Honor has been very strict about

23    it, which, of course, is -- I'm not challenging your right

24    to do that.  Of course you have the right to do that.  But

25    that should be applied to the Trustee as well.

Page 22

1           These issues have been in the case from day one,

2   and the Trustee -- I mean, for the Trustee to say that they

3   didn't know we were going to take the position that actual

4   securities were purchased is absurd.  I believe it was in

5   2011 that I filed evidence of Madoff having purchased T-

6   bills.  And the Trustee filed papers saying I didn't know

7   what I was talking about; this was a phony document.  And

8   then Mr. Madoff said, yes, the 17th floor customers did, in

9   fact, have T-bills and he used their money to purchase a

10  portfolio of $6 billion of T-bills, and you've heard about

11  that in the past.  So these are not new issues and there's

12  no reason to take this discovery now.

13           THE COURT:  So, why do you want to take the

14  discovery of the traders with your subpoenas?

15           MS. CHAITMAN:  Because I served those subpoenas

16  about 18 months ago and Your Honor took the position that I

17  couldn't take those depositions.

18           THE COURT:  Well, we said we would wait -- there's

19  an order that says we'll wait until the end of the Madoff

20  deposition.

21           MS. CHAITMAN:  Right, okay.  So what's happened

22  with the Madoff deposition is that, as you are painfully

23  aware, I've been trying to get the Trustee to produce the

24  trading records.  We've been going round and round on this.

25  But on June 5th we all met with counsel for the Trustee and

1    Mr. Sheehan told us that he would give us access to the

2    BLMIS database, which has, you know -- I forgot the number -

3    - 30 million pages of documents, whatever it is.  That would

4    include all the trading records.

5              In the meantime, I was before you on May 1st, when

6    I was asking for permission to file a motion for sanctions

7    against the Trustee for concealing material evidence, and

8    you said, go back to Magistrate Judge Moss.

9              THE COURT:  That's not what I said.  You said I

10   told you -- in the most recent submission you said I told

11   you you couldn't make the motion.

12             MS. CHAITMAN:  Right.

13             THE COURT:  And what I said was I won't stop you

14   from making the motion, but it sounds to me like Judge Moss

15   has dealt with these issues, he's established a procedure,

16   and that procedure should be followed.  And you said, okay,

17   I'll go back to Judge Moss.

18             MS. CHAITMAN:  Okay.

19             THE COURT:  Did you go back?

20             MS. CHAITMAN:  Here's what happened.  That very

21   afternoon, May 1st --

22             THE COURT:  I take it from your response, you

23   didn't.

24             MS. CHAITMAN:  Let me tell you why.  May 1st, the

25   day we were before you, Mr. Shifrin emailed me and said we

Page 24

1    will voluntarily producing the trading records.

2              THE COURT:  You were before me that day, May 1st.

3              MS. CHAITMAN:  I'm sorry?

4              THE COURT:  The transcript is May 2nd but you were

5    before me May 1st.

6              MS. CHAITMAN:  Okay.  On May 1st, the day that we

7    were here, I got an email from Mr. Shiffrin which I put into

8    evidence.  I sent it -- I filed it on Monday.  Where Mr.

9    Shiffrin emailed me and said, we will produce the trading

10   records.  We then had communications where he produced

11   trading records he'd previously produced --

12             THE COURT:  Can I save some time and cut you off

13   on this?  I've been hearing about this now for over two

14   years.  There is a procedure in place.  You can either go

15   back to Judge Moss, I suppose, where I said, go make a

16   Motion to Compel, if you want to make a motion.  But this

17   has been a he said-she said for two years and they're going

18   to tell me that they did produce whatever it was you had

19   asked for.

20             So, with respect to these trading records, just

21   make a motion or go back to Judge Moss with the procedural -

22   -

23             MS. CHAITMAN:  Then I'll make a motion.

24             THE COURT:  Fine.

25             MS. CHAITMAN:  I'll make a motion.  But let me go

Page 25

1    over a few of the issues.  You know, there --

2                THE COURT:  Let's get back to the procedure.

3                MS. CHAITMAN:  Okay.  There are two separate

4    issues here, though.  One is the discovery, which you have

5    always expressly on the record reserved, which was the open

6    discovery.  I was able -- you said I could take the

7    depositions and get the documents from the subpoenaed --

8                THE COURT:  Well, I said you could serve the

9    subpoenas and then we would talk about that and I think

10   expert discovery after the end of Madoff's deposition.

11               MS. CHAITMAN:  There was the issue of my document

12   demand, which has never been satisfied, and there was the

13   issue of the discovery of the traders, and there was the

14   completion of Madoff's deposition, which I've left open

15   solely because the Trustee has not produced the trading

16   records.

17               If Mr. Sheehan fulfills his promise to us on June

18   5th that he will give us all access to the BLMIS database,

19   that would solve the trading records issue.  He hasn't told

20   me he's reneging on that --

21               THE COURT:  These are the 4,000 microfilms?

22               MS. CHAITMAN:  No, no, no.  This has nothing --

23               MS. BELL:  No, Your Honor , these are 30 million

24   documents.

25               MS. CHAITMAN:  30 million --

1          MS. BELL:  For the BLMIS database.

2          THE COURT:  And what's involved in making them

3     available mechanically?

4          MS. BELL:  Your Honor, I think we have to proceed

5     pursuant to Rule 26 of the Federal Rules of Civil Procedure,

6     and there are some technical issues.

7          THE COURT:  What's involved in producing those?

8          MS. BELL:  So, here's what I'd say, Your Honor.

9     We had -- in the first meet and confer that we had, where we

10    thought we were making progress, one of the things, because

11    we had I thought, tentatively at least -- I conceptually

12    agreed to a consolidated discovery proceeding.

13         In the context of that discussion, the BLMIS

14    database came up and Mr. Sheehan did represent that the

15    Trustee is certainly open to producing that database.  There

16    are some logistical issues that we will need to talk about

17    with Defendants.  There are cost concerns, there are

18    concerns.  And so we had set aside another meeting --

19         THE COURT:  Well, that's what I want to know.  I

20    want to know who's going to bear the cost of this.

21         MS. BELL:  And that's what -- we had a meet and

22    confer that was set up as of the date of the last hearing

23    that -- that meet and confer did not happen because we had

24    to come here.  We set up another meet and confer and we did

25    not continue that discussion because at that time,

Page 27

1    Defendants told us that they were not agreeing to a

2    consolidated discovery proceeding.

3            THE COURT:  Okay.  Let's get back to the issues

4    and the order -- this consolidated discovery issue.

5            MS. CHAITMAN:  The -- you mean --

6            THE COURT:  I understand you have disputes about

7    whether documents have been promised or produced, but let's

8    get back to the order.  The concept of consolidate --

9    additional.

10           MS. CHAITMAN:  Okay.

11           THE COURT:  Reopen -- whatever consolidated

12   discovery along the lines the Trustee is proposing.

13           MS. CHAITMAN:  Okay.  The vast -- as the Trustee

14   says, the Trustee has not given us the names of the seven

15   cases that discovery is still open in, but in the vast

16   majority of my cases, fact discovery has long since closed

17   except for the deficiencies in the Trustee's production, and

18   the deposition of Mr. Madoff, and the subpoenaed witnesses.

19   So, there is no ability to take back discovery.

20           Under the federal rules, the only way that the

21   case management order could be so retroactively changed is

22   if the Trustee could prove that he proceeded with all due

23   diligence, which he can't possibly do, in view of the fact,

24   as I've explained, that I asserted these issues from day one

25   in answering the complaints, and the Trustee -- there's

1    nothing that Mr. Madoff said that couldn't have been

2    anticipated.  These are all the --

3              THE COURT:  So you're telling me that based upon

4    what Madoff said, there's no need for additional discovery?

5              MS. CHAITMAN:  I'm entitled to --

6              THE COURT:  Because the order says -- I'm not --

7    the order says, or both orders say that I'm not reopening

8    discovery but I'll consider the issue based upon what comes

9    out of Madoff's deposition.  And you're telling me that

10   whatever came out of the Madoff deposition has been in the

11   case for eight or ten years or however --

12             MS. CHAITMAN:  Exactly, exactly.

13             THE COURT:  All right.

14             MS. CHAITMAN:  And it will be proven by the

15   trading records, if I ever get them.

16             THE COURT:  Okay.

17             MS. CHAITMAN:  We would like to have the

18   opportunity, Your Honor, if the Court is going to enter an

19   order, of submitting a proposed counter-order.  There are a

20   number of issues that are raised by the --

21             THE COURT:  Let me raise an issue with you, and

22   it's really for everybody.  At the end of the day, some sort

23   of consolidated proceeding is contemplated for those cases

24   that are eligible for that.  And by that I mean, cases where

25   I can make findings of fact and conclusions of law or I can

1    at least make proposed findings of fact and conclusions of

2    law.  I understand the jury trial issue; let's put that

3    aside.

4         Here's my concern.  Discovery is still open in

5    seven cases, right?  The Trustee wants to take Ms.

6    Bongiorno's deposition in those seven cases, and she

7    testifies, "Oh, yeah, we never bought a single security.  It

8    was all a fraud." I then have a consolidated proceeding.

9    Can the parties who were not entitled to further discovery

10   argue you can't use Ms. Bongiorno's deposition against me

11   because I didn't have the opportunity to cross-examine?

12   That's the practical problem I want to deal with.

13        And maybe the answer is, as the Trustee suggests,

14   well, you can opt in to additional discovery or not but your

15   order doesn't say it, but you're deemed to have the

16   opportunity to cross-examine all witnesses that you choose

17   not to attend.

18        MS. CHAITMAN:  Your Honor, with respect to Ms.

19   Bongiorno's deposition, she's --

20        THE COURT:  Let's get back to the practical

21   problem that I just raised.  It could be Ms. Bongiorno's

22   deposition, it could be anybody.  It could be one of your

23   traders.

24        MS. CHAITMAN:  Okay.

25        THE COURT:  Suppose one of your traders says, "We

Page 30

1    never -- we never allocated any purchases from House 5 to

2    House 7 clients." So, how do I deal with that in a

3    consolidated proceeding where some people have not been

4    allowed to participate in discovery because discovery was

5    closed?  That's my practical question to all this.

6              MS. CHAITMAN:  Okay.  That means that we'd have to

7    -- you know, these cases from day one have proceeded

8    separately.

9              THE COURT:  I understand.

10             MS. CHAITMAN:  And so based on who was the

11   attorney representing the Defendants and other issues,

12   different discovery was taken.  You've got that issue.

13   We've got ten years of that history.

14             THE COURT:  So are you saying that you really

15   can't have a consolidated proceeding?  Is that what the

16   answer to all this is?

17             MS. CHAITMAN:  I think that it's impossible.  My

18   own view is it's impossible.  If the cases had been

19   consolidated from day one, that was a choice the Trustee

20   could have made --

21             THE COURT:  Well, with the depositions -- I'm not

22   so worried about documents but with depositions taken in

23   these separate cases as they were proceeding along just with

24   those particular Defendants?

25             MS. CHAITMAN:  Yes.  And particularly with Ms.

Page 31

1  Bongiorno.  I took her deposition in prison with respect to

2  the profit withdrawal issue --

3          THE COURT:  Well, that was a consolidated

4  proceeding.

5          MS. CHAITMAN:  But the point is you ruled that

6  that deposition cannot be used in the claw-back cases.  So -

7  -

8          THE COURT:  Well, I thought you said something

9  differently -- different.  Let me just finish.  I thought

10 you said in any particular case -- and let's take Sarin

11 Lawrence as an example.

12         MS. CHAITMAN:  Okay.

13         THE COURT:  You took a deposition of somebody just

14 in that case.  Then what you're saying is the same problem

15 about trying to use that deposition depending on what they

16 said in the consolidating proceeding is the same problem

17 I've just raised.  So the problem's already there, is what

18 you're saying?

19         MS. CHAITMAN:  The problem is there.  Although in

20 my cases, I've stated a number of times that if I take a

21 deposition in Sarin Lawrence' case, it's applying to all of

22 my clients.  And there's never been any objection.

23         THE COURT:  Okay.  But there are other lawyers

24 here who will be participate.

25         MS. CHAITMAN:  Exactly.  Exactly.

1            MR. KRATENSTEIN:  If I may, Your Honor.  Andrew

2     Kratenstein for the Sage Defendants.  I just wanted to echo

3     something.  I want to pick up on that Bongiorno deposition

4     point.  By the way --

5            THE COURT:  I used her as an example.

6            MR. KRATENSTEIN:  She is.  Well, the reason it's a

7     good example, actually -- because you're absolutely right,

8     by the way.  What you've come to I agree with completely.

9     The problem with the concept of a consolidated proceeding

10    among others is that the cases proceeded on these different

11    tracks, but why?  Why did they proceed -- why are we here,

12    right?

13           I mean, I, for example, was the person who

14    actually asked -- it was me who asked to use Bongiorno in my

15    case, and you said no.  Fine.  I asked that and in a letter

16    in November 2016, almost two years ago, the Trustee said in

17    that letter to this Court, you know, we think we might want

18    to have an omnibus proceeding like this one later where we

19    depose Ms. Bongiorno with everybody.  And they didn't make

20    that motion until now.

21           I mean, they've been thinking about -- musing

22    about doing this for a very long time.  They waited until we

23    were all done to say, "All right, now that I've seen

24    everything you guys have put in, I'd now like to do some new

25    things."

Page 33

1          THE COURT:  That's a variation of Ms. Chaitman's

2     arguments that these issues have been on the table for all

3     these years.

4          MR. KRATENSTEIN:  Absolutely.  And the only

5     addition I'd make on that is when you asked the question of

6     having all these cases going on different tracks, the

7     Trustee, who is in each case -- we're not in each case --

8     had the power very early to realize this issue.  Had the

9     power and, in fact, did realize the issue.  They said it to

10    the Court about two years ago.  "You know, we probably are

11    going to need an omnibus proceeding here.  We probably ought

12    to do that.  I don't want, you know, the Sage Defendants to

13    use Bongiorno's deposition here.  We're going to depose her

14    again," etc.

15          That was the time, Your Honor, to make the motion

16    that they just recently made.  They didn't do it and now

17    they want, to you use your words, a do-over and they

18    shouldn't be allowed to do that.

19          MS. BELL:  Your Honor, if I may --

20          THE COURT:  How do you resolve a practical issue

21    like -- well, I know what you'll tell me.  To reopen a

22    consolidated discovery proceeding.

23          MS. BELL:  But, Your Honor, the Trustee doesn't

24    see it as a reopening of the proceeding; it's a continuation

25    of the proceeding.  But I just want to address a few things

Page 34

1    that were just said.

2              THE COURT:  Okay, but let me just stop you.  There

3    are a lot of cases where discovery ended, they couldn't

4    participate in the Madoff deposition, but they're part of

5    the same issue, right?

6              MS. BELL:  But Mr. Kratenstein -- Mr. Kratenstein,

7    Your Honor, had an objection to the Trustee's original

8    motion.  And I quote from the objection, Paragraph 6, "The

9    Sages have no objection to coordinating the remaining good

10   faith actions for discovery purposes." So this is a complete

11   scene change and an about face.

12             But as equally as important, Your Honor, under the

13   Court's Madoff order, day one and day two, and with all the

14   hearings that occurred, the Trustee could not seek such a --

15   we made it clear that we were contemplating this request.

16   There was a procedure for doing that.  And so --

17             THE COURT:  I don't doubt that you were

18   contemplating the request or you can't make the request, but

19   the order said if you learn something from Madoff's

20   deposition that triggered the need for more discovery, that

21   you could ask for it basically.  Or maybe you'll get it.

22             But what the Defendants are saying is nothing came

23   out of Madoff's deposition that wasn't in the case before.

24             MS. BELL:  But, Your Honor, and I can quote from

25   the transcripts where the Defendants had said, this is

Page 35

1    completely new, this changes the case.

2              THE COURT:  I remember that one.  It's true.

3              MS. BELL:  And we also have more than one

4    Defendant's counsel who's said that.  Mr. Kajon has also

5    said that, who represents the Legacy Defendants.  Because

6    this is new.  Yes, the Trustee has always anticipated --

7              THE COURT:  It's new evidence of something --

8    contrary to what you were saying, I think that's what it

9    meant.

10             MS. BELL:  But it's also very -- so, the issue of

11   treasuries being part of the transactions that the

12   Defendants were claiming either defeated the Ponzi scheme or

13   rendered their transfers not subject to the Ponzi

14   presumption, that is a new issue.  That issue was not at

15   play.  And as Ms. Chaitman said, she raised the issue in

16   2011, and every expert report that we've served on each of

17   these Defendants we have identified in one of the exhibits

18   that treasuries had been purchased at Madoff Securities.

19             Those treasuries were not for the investment

20   advisory customers.  The yields from those treasuries in any

21   given year was far less than one percent of any of the

22   redemptions that went out.

23             And so it's not the Trustee's view that the issue

24   of treasuries, we didn't know that treasuries existed; we

25   were always -- we always -- we were open about the

Page 36

1    treasuries that were purchased by Mr. Madoff.  Those

2    treasuries were not purchased for the investment advisory

3    customers.  The Trustee --

4             THE COURT:  So, okay, but you're saying this issue

5    was always there and, you know, maybe they could've taken

6    discovery in it whenever it was.

7             MS. BELL:  But they've gotten fact deposition --

8    they've gotten deposition of fact witnesses on that issue.

9    There are documents -- the Trustee is in possession of

10   millions, and millions, and millions of documents, as we've

11   discussed in this court before.  The Trustee's discovery

12   obligation is not simply to produce those documents on some

13   perhaps theory that the Defendants might come up with to

14   challenge the Ponzi scheme.

15            And so we are limited by what the issues are in

16   the case; the claims and defenses in the case.  That was

17   never a defense in the case, as acknowledge in the hearing

18   by these very same counsel.

19            THE COURT:  You know what's remarkable about this?

20   You sound like you're the Defendants arguing for more

21   discovery, and the Defendants sound like you're the

22   Plaintiffs wanting to cut off discovery, which is

23   remarkable.

24            MS. BELL:  This case is very curious, Your Honor.

25            MS. CHAITMAN:  Judge, I just want to say one

Page 37

1   thing.  I was the one who made the statement about the

2   evidence being explosive.  The evidence confirmed the

3   position I asserted in every answer.

4            THE COURT:  No, I know what you meant.

5            MS. CHAITMAN:  And it's -- you know, this, if I

6   can use the phrase doubletalk about the treasuries -- they

7   were purchased with money from the investment advisory

8   customers.  It was money from the 703 account.  We can trace

9   that.  So, to say it wasn't purchased for the customers when

10  --

11           THE COURT:  Well, that's the only money he had,

12  right?  The money he got from the customers?

13           MS. CHAITMAN:  Not at all.  He had 188 employees

14  working for every major investment firm in the country.  It

15  was all one entity.  And as he explained in his deposition,

16  the back of every trade confirmation he sent to the

17  investment advisory customers said that he dealt as

18  principal, which he explained meant that he never went into

19  the market for the investment advisory customers.  They only

20  bought and sold from Madoff.

21           So it was all one entity.  You can't separate out

22  what the traders did from --

23           THE COURT:  We're getting a little far afield --

24           MS. CHAITMAN:  Okay.

25           THE COURT:  -- which is how do you try this as a -

Page 38

1    - how do you try it as a consolidated proceeding where

2    discovery has already been taken, I guess, in some cases?

3              MS. BELL:  They have not on the Ponzi issue, Your

4    Honor, for BLMIS employees.

5              THE COURT:  Well, whatever the issue was.  Some of

6    them are trial ready --

7              MS. BELL:  Well, just as Defendants.  We've not

8    taken discovery on any of these issues with the exception of

9    Madoff's deposition in PW, which was different, and that was

10   on a consolidated proceeding.  Essentially, what we're

11   proposing here is the very thing.

12             And, Your Honor, I neglected to mention I accept

13   your proposed change of having the deposition that

14   Defendants deemed to have participated in the deposition,

15   and we'll submit a proposed order that includes that

16   provision.  Because I think that gets to the crux of what it

17   is that we're trying to do here, proceeding on -- and in our

18   review, these cases are not closed on the Ponzi issue.

19             And so we're not seeking to reopen; we're seeking

20   to continue what was started on the Madoff deposition and by

21   the Madoff deposition.  So, we could say that these

22   depositions and the documents that are at issue are part of

23   the very fraud proceeding that this Court has talked about

24   in arguments, and we've raised in the Roman -- Your Honor

25   raised in the Roman decision.

1          THE COURT:  Let me hear from some of the other

2    parties.

3          MS. CHAITMAN:  I just want to say one thing,

4    Judge.  If I came in and I said, "You know, Judge,

5    discovery's over in my cases but I now think that I really

6    should be able to take certain discovery..." I wouldn't get

7    two feet in this court.  And that's what the Trustee's

8    trying to do.

9          Again, if you look at every one of my answers,

10   you'll see I disputed that there was a Ponzi scheme.  This

11   has been in the case since I filed the answers.  Thank you.

12         THE COURT:  Ms. Neville?

13         MS. NEVILLE:  Good morning.  Carole Neville from

14   Dentons.  Your Honor, I have 14 clients on this -- in this

15   matter now, and the case management order, and all but one

16   of them said that discovery closed.  And I'm finding it kind

17   of staggering that Ms. Davis now says that after ten years

18   and a billion dollars, the Trustee has not taken discovery

19   on the Ponzi issue.

20         We have expert reports in all of our cases.  What

21   was happening then?  What were they doing?  Right now, what

22   I hear, if I'm --

23         THE COURT:  What was the date of the Dubinsky

24   Report?  Because that was -- 2013?

25         MR. KRATENSTEIN:  It was 2013.

Page 40

1          THE COURT:  2013.  So, certainly the issue was up

2     there then.

3          MS. NEVILLE:  So, I'm hearing now that of 153 --

4     because it's not 106 cases or 105; it's 153 -- there are

5     seven cases where discovery is open and they want to have a

6     consolidated order that cuts off discovery from everybody

7     else?  They were obliged to make a motion to show why they

8     were entitled to discovery.

9          What that order from, I think it was September

10    2017, says is that discovery is closed except for the right

11    for the right for the Picower parties, of all people, the

12    Defendants, and the Trustee and SIPC to take discovery on

13    the Madoff.  And the Court reserved the issues from the June

14    29th transcript, which I have with me and I read carefully

15    yesterday.  There were two issues that were reserved, and

16    they both were the issues Ms. Chaitman raised.  There was

17    the production of trading records and the deposition of

18    traders.

19         So, the discovery obligation is from the Trustee

20    to us.  Why they now want to open up 12 depositions of

21    Madoff employees to prove the case -- because I think they

22    realize they haven't proved it after all of these years and

23    after all of this money.

24         Rule 16 sets out a standard and I don't think

25    they've met it.  They've been not diligent in pursuing their

Page 41

1    discovery.  It's been a really long time.  And it is

2    prejudicial to us.  Because what they intend to do is reopen

3    all the things that we have now -- I've filed voluminous

4    mediation statements, I've got my case all lined up, and now

5    they want to reopen discovery.  Or if you opt out, they

6    don't have to give us what they've been committing to give

7    us for five years.

8            So, I just -- I really -- I'm kind of outraged at

9    Ms. Davis' position here, that she's reserved --

10           THE COURT:  It's Ms. Bell.  I knew who she meant.

11           MS. BELL:  I did too, Your Honor.

12           MS. NEVILLE:  I'm sorry.  I called you Tracy the

13   other day, too.

14           MS. BELL:  You did.  I should be used to it.

15           MS. NEVILLE:  I have a thing about your name.  I

16   just think that at this point, they haven't made the case

17   for opening discovery --

18           THE COURT:  So, you say you have 13 cases?  13

19   cases where discovery is closed?

20           MS. NEVILLE:  Right.

21           THE COURT:  Are you ready to try those cases?

22           MS. NEVILLE:  We're in mediation in a good number

23   of them.

24           THE COURT:  I assume they all raise the same

25   issue, right?

Page 42

1          MS. NEVILLE:  No, they're not.  There are

2    subsequent transferees, there's all kinds of issues.

3          THE COURT:  But the underlying issue of this Ponzi

4    scheme issue.  It's the same issue --

5          MS. NEVILLE:  Yes, that issue is, but there are

6    lots of other issues and you've heard some of them when we

7    did the Markin case.

8          THE COURT:  I understand.  Before I hear from you,

9    Ms. Bell, let me hear from the other Defendants, to the

10   extent they want to be heard.

11         MR. KAJON:  Good morning, Your Honor.

12         THE COURT:  Good morning.

13         MR. KAJON:  Nicholas Kajon from Stevens & Lee, on

14   behalf of Defendant Legacy Capital.  I'm not going to

15   reiterate arguments that have already been made.  I just

16   want to focus on a few distinct issues that pertain to my

17   client and maybe just a couple of other -- or some other

18   Defendants.

19         First, we did not file a Proof of Claim.  Second,

20   we did not participate in the Madoff deposition, so to the

21   extent that opens the door, and I'm not conceding it does,

22   but to the extent it does, it doesn't apply to us.  Third,

23   fact discovery ended in our case more than a year ago.

24   Fourth, expert discovery ended in our case about a year ago,

25   but for my right to take the deposition of the Trustee's

Page 43

1    expert, Bruce Dubinsky, based on his August 2013 report.

2              THE COURT:  Well, I think everybody wants to do

3    that.  I know, Ms. Chaitman, you reserved that right also?

4              MS. CHAITMAN:  Yes, I did.

5              THE COURT:  Was that for -- well, in some cases,

6    discovery was closed in your cases.  Did you reserve that

7    right, or was that right reserved for all of your cases,

8    even when discovery is closed?

9              MS. CHAITMAN:  You entered an order which said

10   that we -- I was concerned about the expert reports because

11   we hadn't gotten the document productions, and you entered

12   an order which said that we would set the date for expert

13   disclosures after we completed the --

14             THE COURT:  Yeah, but, you know, I read that order

15   and it talked about operative cases and --

16             MS. CHAITMAN:  I think those were the ones that

17   had participated in the Madoff --

18             THE COURT:  So, the ones that were still open at

19   that --

20             MS. CHAITMAN:  Yeah.

21             THE COURT:  As of July 2016?

22             MS. CHAITMAN:  Exactly.

23             THE COURT:  Okay.

24             MR. KAJON:  So, we're very concerned, Your Honor,

25   that, you know, we're differently -- a lot of the Defendants

Page 44

1    are differently situated.  You know, we're all differently

2    situated from each other to at least some extent.  We're at

3    different stages of discovery, etc.  Some it's open, some

4    it's closed; some it's half open, half closed.  And the

5    Trustee is trying to lump us all in the same boat, and we

6    don't think that's fair.

7              So what I did is I proposed language to the

8    Trustee to preserve our separate rights, our separate

9    status.  I suggested that the Trustee include in the order

10   that neither the Trustee nor Legacy may take any further

11   discovery in that omnibus procedure but for the right of

12   Legacy to depose the Trustee's expert, Bruce Dubinsky, based

13   on his expert report dated August 20, 2013.  And neither the

14   Trustee nor Legacy may use any discovery produced during the

15   omnibus discovery proceeding for any purpose in the Legacy

16   adversary proceeding, including without limitation to

17   supplement any expert reports produced in the Legacy

18   adversary proceeding.

19             That language would preserve our rights.  It would

20   let this procedure go forward for those Defendants who

21   wanted to participate in it, but leave us where we were,

22   preserve our rights.  The Trustee rejected that language.

23   The Trustee did not include anything in the order to

24   preserve our separate status.  And for that reason alone the

25   motion should be denied, at least as to Legacy.

Page 45

1            Now, if the Trustee wants to make a motion under

2    Rule 16 to reopen discovery, they have that right.  I'm not

3    taking that right away from them.  But they haven't made

4    that motion.  This motion is not a 16B4 motion saying, I

5    want to reopen discovery for cause, here's my cause.

6    There's nothing in that motion that demonstrates cause to

7    reopen discovery for Legacy or any other Defendant for whom

8    discovery is closed.

9            So, I think, you know, this -- they're putting the

10   cart before the horse.  I think this motion should be

11   denied.  It could be denied without prejudice.  They could

12   make their Rule 16 motion.  If it's granted and Your Honor

13   reopens discovery for everyone for whom it's already closed,

14   then we can discuss again whether this procedure makes

15   sense.

16           But right now, this procedure makes no sense where

17   each case has its own separate record.  You know, there's

18   certain discovery that was taken in my case that clearly

19   wasn't taken in other people's cases.  Everyone's in that

20   same boat, so to speak, of having a completely different

21   record.

22           THE COURT:  Can I ask you a question?  And I don't

23   have it before me.  How did the case management order deal

24   with expert discovery?  Was there a separate deadline that's

25   run?

1             MR. KAJON:  Our deadline ran.  But before it ran,

2     in our case, the Trustee agreed we could depose Dubinsky.

3     And I asked them a year ago for mutually -- you know, give

4     me some dates.

5             THE COURT:  Well, Dubinsky -- to the extent

6     Dubinsky's going to be deposed, he'll be deposed once and

7     whoever is -- you know, if it's limited to people whose

8     discovery is still open, it'll be one proceeding.  He's not

9     going to come back 50 times.

10            MR. KAJON:  We have no problem coordinating with

11     the other Defendants on one deposition of Dubinsky.

12            THE COURT:  Aside from Dubinsky, are there any

13     other experts that have -- any other Trustee experts that

14     have to be deposed?

15            MR. RICH:  Yes, Your Honor.  Robert Rich on behalf

16     of Edward H.  (indiscernible) and other individual

17     Defendants.  We notice that petition (indiscernible)

18     Greenblatt.

19            THE COURT:  On what issue?

20            MR. RICH:  He submitted two expert reports in our

21     case.

22            MS. BELL:  It's on the principle balance

23     calculation, Your Honor.

24            THE COURT:  Yeah, but that's -- you know, that

25     assumes that -- he just did a cash-in, cash-out analysis; he

Page 47

1    wouldn't know whether there was legitimate trading or not

2    legitimate trading.

3              MR. RICH:  I'm sorry.  I thought you were asking

4    what deposition --

5              THE COURT:  Why would you want to take it -- what

6    I'm asking you is why would you want to take his deposition?

7    You went through the records.  He figured out what cash went

8    in, what cash went out.  I understand there are disputes as

9    to whether certain transactions actually reflected cash.

10   But that's all -- you know, that's what he did.  Why would

11   you need his deposition?

12             MR. RICH:  We had questions of expert reports.

13             THE COURT:  About what, though, that's relevant to

14   this?  If the Trustee's right, that all the transactions

15   were fictitious, the Second Circuit has already said it's

16   dollars in and dollars out.  If the Trustee is right that

17   all the transactions are fictitious, then you have his

18   principal balance calculation of cash-in, cash-out.  But he

19   has -- I don't think anything to testify to about the

20   correctness of the Trustee's position.

21             MR. RICH:  I think if you're talking about this

22   one issue -- or in our case, they submitted two expert

23   reports, one talking about transactions in our specific

24   case.  And we have a lot of inter-account transactions and

25   how he calculated is --

1           THE COURT:  All right.  Okay, all right.  So

2     there's Greenblatt -- but that's on an individual case by

3     case basis.  All right.  So other than Greenblatt and

4     Dubinsky, are there any experts on the Trustee's side that

5     people want to depose?  Hearing no response, I'll assume...

6           MR. KRATENSTEIN:  Your Honor, may we have a

7     moment, please?

8           THE COURT:  Yeah.

9           MR. KRATENSTEIN:  There is at least one other

10    expert, Your Honor.  I believe it's Ms. Galura.  I think

11    we're not yet of a view to whether we want to depose her or

12    not.

13          THE COURT:  I don't know if she did a case by case

14    analysis.  I know a supplemental reported listed PW

15    transactions.  But hers was more of a generic type of --

16          MS. NEVILLE:  She did submit -- she submitted

17    reports of individual cases.

18          THE COURT:  Yeah, okay.  So that's -- I'm not sure

19    what she would say but those are three.  Anybody else?

20          MR. KRATENSTEIN:  Well, the Trustee has said --

21    and maybe Ms. Bell will address this -- that given the

22    development of the record that they intend to supplement

23    reports, put in new experts, etc.  So I don't know what

24    their plan is on that.

25          THE COURT:  Well, but if discovery is closed in

Page 49

1    your case, then it's closed.  It wouldn't affect your case,

2    right, unless there's some sort of consolidated procedure?

3            MS. BELL:  Expert discovery is still open in a

4    number of cases, Your Honor, separate from the fact

5    discovery.

6            THE COURT:  How many?  I know in Ms. Chaitman's

7    cases it's still open, right?

8            MS. BELL:  And I think Mr. Kratenstein's case, for

9    example, those two cases expert discovery is open there.  I

10   don't have an exact number.  But in those cases certainly to

11   the extent that the Trustee would -- and I think this

12   highlights the problem going forward on lack of a full

13   record.  Because the additional information that Mr.

14   Dubinsky has been reviewing will be part of an expert report

15   then.

16           THE COURT:  So, let me ask you a question.

17   Because now I realize that the thing I was concerned about

18   has occurred already.  Mr. Madoff, who was deposed, said a

19   lot of things but there were a lot of Defendants that

20   couldn't participate in that.

21           MS. BELL:  Or chose not to, Your Honor.  They had

22   the opportunity, and I just want to address that.

23           THE COURT:  Even when discovery was closed they

24   had the opportunity?

25           MS. BELL:  Well, when the discovery was closed

Page 50

1     they did not have the opportunity --

2              THE COURT:  Okay, so let me just stop you.  So,

3     there are people, there are entities or Defendants who did

4     not have the right to participate in the Madoff deposition,

5     right?

6              MS. BELL:  Well, Your Honor, from the group of

7     objecting Defendants, there are about four or five cases

8     that would fall into that category and they're represented

9     by Ms. Chaitman and Ms. Neville.  So I think that's a

10    hypothetical concern that the Defendants have raised.  I

11    don't think it's a real issue before the Court.

12             But with respect to Mr. Kajon's point on Legacy,

13    and I want to address that because that's the sixth case

14    where discovery is closed in the Trustee's view -- he did

15    not get to participate in Madoff's deposition.  We offered

16    him the opportunity to participate and he declined.

17             More than that, Your Honor, and I have from a

18    transcript of June 2017 where Mr. Kajon before this Court

19    says, "Some new evidence has come to light.  Some new

20    evidence has come to light just this week that raises some

21    questions in our mind." And that new evidence, he cited to

22    Mr. Madoff's deposition.

23             And so it is disingenuous then to say that if Mr.

24    Madoff's deposition goes forward and you choose not to

25    participate, you can use the information that comes out of

1    that deposition to then challenge the Trustee's expert and

2    the Trustee --

3              THE COURT:  We can argue about whether what Madoff

4    says is hearsay in a case where somebody hasn't

5    participated.

6              MS. BELL:  And I agree with that, Your Honor, but

7    I think the point is the issue that Mr. Kajon raised is the

8    issue of treasuries.  That's an omnibus issue.  So, again,

9    in the interest of efficiency, it just doesn't seem to make

10   sense to proceed with these on a piecemeal basis.

11             THE COURT:  Well, maybe -- maybe the underlying

12   assumption that this can be tried as a consolidated issue is

13   not right.

14             MS. BELL:  And so we've taken that off the table,

15   Your Honor.  And so now we're just dealing with discovery.

16             THE COURT:  No, but if it can't be tried as a

17   consolidated issue, I don't have to necessarily consolidate

18   discovery.  I mean, yes, Dubinsky will be deposed once,

19   Greenblatt -- Greenblatt and Galura to some extent have

20   things to say in individual cases.

21             MS. BELL:  That's right, Your Honor.

22             THE COURT:  And maybe it's a two-day deposition or

23   two-part deposition.  One is the general what she did or

24   what he did, and then if people want to take the depositions

25   in individual cases, they can do it.  I don't know, you

Page 52

1    know, really why it's necessary but --

2         MS. BELL:  I think that's right, Your Honor.

3    We've had Mr. Dubinsky -- Ms. Galura's deposition taken in

4    at least one of these cases and we've certainly had Mr.

5    Greenblatt's deposition as well, I think.  And I can't

6    recall if any of these counsel participated.  But to the

7    extent that the Court would like the Trustee to make a Rule

8    16 motion, we're prepared to do that.  This motion was made

9    pursuant to, again, the dealings and the understanding when

10   we review the transcripts in connection with Mr. Madoff's

11   deposition.  And so the Trustee is prepared to make a Rule

12   16 motion.

13        We've had counsel who refused to agree to extend

14   discovery that closed in July with the argument that the

15   omnibus proceeding would deal with many of these issues.

16   And so --

17        THE COURT:  Again, I'm perplexed that the Trustee

18   wants to take the discovery on something the Trustee should

19   know and the Defendants are fighting it.  As I said, this

20   seems to be a reversal.  Is there any other Defendant that

21   wants to be heard?

22        MR. RICH:  Good morning, Your Honor.  Robert Rich,

23   Hunton Andrews Kurth, on behalf of Edward (indiscernible)

24   and certain other individual Defendants.  I just want to

25   address quickly and hopefully put to bed the issue of

Page 53

1    whether, you know -- that it's just our argument that this

2    has been on the table.  It's actually the Trustee's

3    argument.  They've used it over and over.

4              THE COURT:  What argument?  Which argument?

5              MR. RICH:  The argument that this Ponzi -- the

6    things that they want discovery on, this Ponzi scheme is a

7    new issue that they should have discovery on.  I actually

8    tried.  I asked for discovery on this exact issue a year ago

9    when I started seeing that, yes, there were securities

10   traded in our account.  And I wanted more information.  And

11   I wanted more information --

12             THE COURT:  Okay, but that was what led to Mr.

13   Madoff's deposition.

14             MR. RICH:  No, I'm sorry, Your Honor.  This is

15   after the deposition.  This is just last year.  After the

16   deposition was taken, I said, there's a lot of good

17   information here.  I see there's securities -- I now wanted

18   a little more.  And I want to use that same paragraph that

19   they want to use, that I should be able to move for more

20   discovery.  I want some more trading records.  I want some

21   treasury transactions.  This is what Ms. Bell said they're

22   looking for.

23             This is what they said.  They said, well, the

24   deposition -- this is in their brief -- they said, the

25   deposition order provision permitting follow-up based on

Page 54

1    Madoff's deposition should be construed only as permitting

2    discovery that could not have been pursued without his

3    discovery.  I said, surely the Defendants did not need

4    Madoff's deposition to justify a request for documents

5    regarding securities trading.  And the court denied my

6    request.

7              Over and over they said, in the case management

8    order, fact discovery is done; it doesn't matter what Madoff

9    said in his deposition, this issue has been in the record.

10   And on that basis, the Court denied my request.  They're

11   relying on the exact same language and asking for fact

12   discovery and the exact same things.  My Defendants -- I

13   have two Defendants that have exposure of $70,000.  They

14   can't go through 12 more depositions because they don't want

15   to reopen.

16             THE COURT:  Well, all right.  You have no open

17   discovery cases?  Your cases are closed?

18             MR. RICH:  My case is closed.  We have one expert

19   discovery that we noticed but the deadline -- the other

20   one's closed.

21             THE COURT:  Who is that?

22             MR. RICH:  That's for Mr. Greenblatt.

23             THE COURT:  Okay.  But you wouldn't participate in

24   the Dubinsky deposition.  You never noticed it before

25   discovery was closed, right?

Page 55

1           MR. RICH:  That's right.

2           THE COURT:  All right.

3           MS. BELL:  But he participated -- the case

4    participated in Madoff's deposition, Your Honor, and we

5    allowed a number of cases on day two of the deposition to

6    come in to the deposition although discovery was closed --

7    the discovery cutoff had passed in their case.

8           So, again, I think that there is some one-

9    sidedness here that, you know, we would appreciate if the

10   Court takes notice of.  Because the Trustee has allowed

11   discovery in cases where it's been closed and we're not,

12   again, asking for something new; we're asking for a

13   continuation.

14          THE COURT:  But these Defendants don't want more

15   discovery.  I keep coming back to the same issue.  They're

16   ready to try their cases.  And if they haven't gotten

17   records that Ms. Chaitman thinks she needs, well, that's

18   going to be their problem, not yours.

19          MS. BELL:  I think that's right, Your Honor, and

20   so it's the Trustee's position that if we were to use some

21   of those witnesses at trial or those documents that we would

22   like to, we think, go to the issues that Mr. Madoff is

23   raising, then there can be no objection on the Defendants'

24   part that the Trustee did not give them access to these

25   witnesses that we don't have control over, but certainly

1     access to the documents that we'll use in any deposition.

2             MR. RICH:  Your Honor, this is a complete 180 from

3     the exact argument they made a year ago.  They realized

4     their case is weak.  They're seeing that, oh, wait, he

5     traded the securities that my Defendants have on their

6     statements?  We need to get more discovery to refute it.  So

7     all of a sudden they have a new argument.  It should be

8     denied.

9             THE COURT:  Okay.  Mr. Kirby?

10            MR. KIRBY:  Thank you, Your Honor.  Richard Kirby

11    on behalf of one of the only open case I have where

12    discovery is 100 percent open.  We have an open discovery --

13            THE COURT:  I'm sorry.  It's open in your case?

14            MR. KIRBY:  100 percent open fact discovery case.

15            THE COURT:  Which case is that?

16            MR. KIRBY:  It's (indiscernible) BM Investments.

17            THE COURT:  Okay.  And how many cases do you have?

18            MR. KIRBY:  All my other cases are in -- have been

19    decided on summary judgment --

20            THE COURT:  Okay, so you've only got one case

21    left, right?

22            MR. KIRBY:  Right, right.  Okay.  And there's two

23    issues I'd like to raise.  The first issue I think is a

24    threshold issue, is whether -- if there's going to be such a

25    proceeding.

1              THE COURT:  I agree with you.  That's really

2     what's driving all this.

3              MR. KIRBY:  Because if we wait -- our cases, which

4     were the South Ferry and Lowry cases, were set as selected

5     and tried as a test case.  They're pending before Judge

6     Engelmayer at this point.  He has a hearing scheduled for

7     August 28th.  We can assume that he will decide certainly

8     before the end of the year.  And the case will either be

9     decided one way or another, and either side's going to take

10    --

11             THE COURT:  But then it's going to go up to the

12    Second Circuit, so --

13             MR. KIRBY:  Right.  But by one or other side.

14             THE COURT:  Years away from a resolution of this

15    issue.

16             MR. KIRBY:  Certainly probably through the end of

17    '19 is what I would expect.  But the issue -- and so, we

18    think those threshold issues make all of this question of

19    how far back you go irrelevant, especially the issue of

20    whether the statute of repose limits the Trustee's reach

21    back altogether.

22             And that issue on -- with all due respect, we

23    disagree, but there are 16 bankruptcy judges who said it's a

24    statute of repose.  So, it's very possible that Judge

25    Engelmayer's decision could split on the issue.  Okay?  So,

1    our first request is that this is premature.  We should

2    wait.

3               THE COURT:  All right, but I'm --

4               MR. KIRBY:  I understand --

5               THE COURT:  You know, I just can't hold up all

6    these cases, particularly for people who haven't made that

7    argument.

8               MR. KIRBY:  Okay.  Your Honor, the second issue

9    relates to the specific issue in the proposed order of the

10   Trustee.  And that particularly -- that proposed order...

11   Let me just get my copy of the proposed order here.

12   Particularly, I want to point Your Honor out to Footnote 1

13   of the proposed order.

14              THE COURT:  Footnote 1.  Okay.

15              MR. KIRBY:  Capitalized terms but not defined

16   herein shall have the meeting described to them in the

17   motion.  There is throughout this proposed order reference

18   to what's called a Ponzi scheme issue.  But if you go to

19   Page 2 of the Trustee's original motion --

20              THE COURT:  I'm there.

21              MR. KIRBY:  -- original motion, they have -- they

22   define that term, Ponzi scheme.  They call it the Ponzi

23   issue.  And they define it in terms of -- at all relevant

24   times because...  And because of the Ponzi scheme, one, in

25   connection with the transfers of fictitious profits to each

Page 59

1   Defendant listed during the two years preceding; and, two,

2   in calculating Defendants' fictitious profits.

3           That's not what -- all this discussion that you've

4   heard this morning has nothing to do with the question of

5   how you calculate.  The question is when was there -- is the

6   Trustee able to establish his prima facie case of fraud?

7   Okay?

8           THE COURT:  The rest of it is -- it's basically

9   saying calculating fictitious profits, did the Trustee

10  properly determine that the customers shouldn't get credits

11  for any purchases or sales which appeared on this statement,

12  which we include purchases and sales in the convertible

13  arbitrate scenario, or in the treasury scenario, so --

14          MR. KIRBY:  I think the question -- our view is

15  that if there's going to be an order and if there's going to

16  be an omnibus proceeding, it should be limited to whether --

17  what the scope of the fraud is.  Because that is the

18  question that the statute provides.

19          THE COURT:  What do you mean by the scope of the

20  fraud?  This all came about when there was a dispute as to

21  when the Ponzi scheme started and, indeed, whether or not

22  there was a Ponzi scheme or whether there was a hybrid.

23          MR. KIRBY:  But the problem is that Ponzi scheme

24  is not a defined and accepted term.  And so I think the

25  proper way to proceed and particularly not have something

Page 60

1    incorporated by reference in which there's confusion in the

2    proposed order, that they should just use the language of

3    the statute:  whether the Trustee is able to establish the

4    elements of fraud under 548A1A.  And that is --

5             THE COURT:  The Trustee can make a prima facie

6    case without any of this discovery.  Now --

7             MR. KIRBY:  Which is my point and it's been my

8    point -- why I was prepared to stipulate to the issue in the

9    other cases.  In my view, this is a frolic and detour.  But

10   I can't speak for all the Defendants.

11            THE COURT:  Well, you have stipulated to the

12   existence of a Ponzi scheme, though.  And we have people

13   here who are saying there was no Ponzi scheme, or there was

14   a hybrid scheme, where he did purchase some securities which

15   appear in customer statements.

16            In other words, you were willing to stipulate to

17   what this whole fight is about.

18            MR. KIRBY:  Exactly.  But what's now being -- and

19   in my view, that's only half the question.  And that's, of

20   course, what the Court of Appeals will decide or the

21   Appellate Courts will decide.  But in any event, I don't

22   think that the second issue, how you go about calculating

23   it, has anything to do with whether there was a fraud or

24   not.  That's a completely separate issue.

25            THE COURT:  Well, putting aside what the order

1    says, what's your -- do you pose a consolidated proceeding,

2    or do you think it's impractical for the reason I've raised?

3              MR. KIRBY:  It's ultimately ironic because we

4    asked years ago to consolidate these issues in the Cohen

5    case and it was all denied.  Now they want to move around

6    and suggest that these be consolidated.  In my view, and I'm

7    totally opened --

8              THE COURT:  In which case?

9              MR. KIRBY:  In the Cohen case --

10             THE COURT:  You want to intervene to argue that

11   antecedent indebtedness was a defense.  That's not what this

12   is about.

13             MR. KIRBY:  I understand.

14             THE COURT:  You're litigating that issue now.

15             MR. KIRBY:  I understand.  But that is -- to the

16   extent that there's -- I have no objection with fully open

17   discovery.  I don't want it delayed for ever.  But I have no

18   objection to there being consolidated discovery on the

19   similar issues in my open case.  But the form of what the

20   issue is and how that's phrased, we have a specific concern.

21             THE COURT:  Okay.

22             MS. BELL:  Your Honor, just a couple of quick

23   points.  One is the procedural posture of the case is now --

24   we're driven by a number of different things.  And so I

25   think it's unfair to say that because we didn't consolidate

Page 62

1    before, we shouldn't consolidate now.  It's an opportunity

2    for us to streamline these issues.

3            I think with respect to the expert deposition, and

4    the Court had a question about how many expert reports were

5    still outstanding -- and it depends on how you -- if it's

6    under the case management order, there's somewhere around,

7    as of today, 24 of the 105.  And I think this is a great

8    opportunity to correct the numbers with respect to Ms.

9    Neville's presentation.  This argument is about the 105

10   objecting cases; it's not about all the remaining good faith

11   Defendants.  Because the other 40-plus did not object.  And

12   so the numbers that we're giving to the Court today are

13   really around that 105.

14           But if expert discovery is open in 24 or so, now,

15   that doesn't count in Ms. Chaitman's cases where there's an

16   order on file, where in a number of her cases we have not

17   served expert reports.  And so that -- again, that's an

18   opportunity for us to streamline these issues.  Because to

19   the extent that the experts are doing additional work, then

20   whatever report is served will reflect their current -- the

21   access to documents that they've had and their current

22   opinions after reviewing those documents.

23           THE COURT:  Their opposition implies that if you

24   served expert reports in cases where discovery is still

25   open, they're not going to take -- you know, they don't want

Page 63

1    to take the discovery of that expert.

2           MS. BELL:  But that's not how expert discovery

3    works, Your Honor.  That's not Rule 26.

4           THE COURT:  But so what?  I come back to the same

5    question.  Why is that the Plaintiff's problem?  If they

6    don't want to take discovery of your case, why are you

7    insisting on reopening discovery?

8           MS. BELL:  Because the burden is the Trustee's, as

9    the Defendants pointed out in their objections, Your Honor.

10          THE COURT:  But you can make out your prima facie

11   case pretty simply where there's allocution -- I understand

12   his allocution only speaks around 1992.  And I've been told,

13   by the way, countless times that the start date doesn't

14   matter for a lot of these cases.  But his allocution -- you

15   have his allocution.  What else do you need?  And you have

16   the reconstruction of the principal balance calculations by

17   Mr. Greenblatt.  What else do you need?

18          MS. BELL:  Absolutely, we agree, Your Honor.  And

19   we have the allocution not just of Mr. Madoff, but of Mr.

20   Lipkin, Mr. Kugel, Ms. Pitts.  We have a number of other

21   allocutions that would certainly -- and we, the Trustee was

22   successful in getting summary judgment on a similar issue,

23   on what we call the Katz (indiscernible) case, where a Ponzi

24   wasn't stipulated to, and we got fictitious profits there.

25   And we submitted a mountain of evidence.  And then so we

Page 64

1    agree with the Court that we could sufficiently --

2              THE COURT:  I thought that was settled.

3              MS. BELL:  It was, after we got summary judgment

4    on the fictitious profits amount, and then there was still

5    the amount above the principal.  So the Trustee reached a

6    settlement.  But I think, Your Honor, the point is it's not

7    whether we can -- because we agree that we can sufficiently

8    prove -- and, you're right, the admissible evidence that we

9    have carries the day.  I think it's proceeding on different

10   factual records.  Because in the cases that are open, we

11   will produce documents and have depositions of witnesses.

12   Because Mr. Madoff's testimony, which is demonstrably false

13   -- I think the Trustee should be allowed -- afforded the

14   opportunity to go forward with fact witnesses that can

15   counter.  Mr. Madoff mentioned specific names in his

16   deposition, and it was always contemplated that we would

17   have the opportunity to do that.

18             I think any decision by the Court on expert

19   discovery, just so that we're not here on that issue again,

20   I think at the very least, the orders are clear that as to

21   the Trustee, those reports and any expert opinions will be

22   tabled until after Madoff's deposition.  And so I would

23   assume that the Defendants would not have the same arguments

24   with respect to the expert process as they do on the fact

25   discovery piece.

1          MS. NEVILLE:  Your Honor, I have one point to

2     make.  Carole Neville.  When we exchanged discovery

3     initially, what we got from the Trustee basically was bank

4     statements and other documents from their records showing

5     demands for our redemptions, etc., and access to a database.

6          What we have learned in this process is that the

7     Trustee withheld all the trading records from that database,

8     or a good number of them.  And, believe me, I have searched

9     them.  Really searched them.

10          So, my point about this order is that I don't want

11     to reopen discovery but I do think that the Trustee has an

12     obligation to produce what he has been withholding for ten

13     years.  Because the story that he's been telling for ten

14     years, as I keep on saying, was hatched in the first days of

15     the cases and supplemented, and supplemented, and

16     supplemented.  And there's another whole story which we have

17     developed from the records that we have already been given

18     but there are of them.

19          So, I think that this is all subterfuge so that

20     the Trustee, who promised even in June that he was going to

21     produce these things to us or make them available, still

22     hasn't done it.

23          THE COURT:  I'll give you the last word.

24          MS. BELL:  So, Your Honor, I still -- just from

25     what Neville just said, I'm confused about whether

Page 66

1   Defendants want more documents or they don't.

2          THE COURT:  Well, they want the discovery that was

3   timely requested or they want you to supplement the

4   discovery that was timely requested.

5          MS. BELL:  We're not currently engaged in any

6   discussions with Ms. Neville about discovery that was

7   requested, unless it's their position that any request by

8   Ms. Chaitman extends to all of the Defendants.

9          MR. KRATENSTEIN:  If I may, Your Honor, Andrew

10  Kratenstein for the Sage Defendants.  What I just hear Ms.

11  Bell say a few moments ago was that what they're going to do

12  if things proceed as they appear they're going to proceed,

13  is they're going to -- in cases where expert reports have

14  not been put in at least, put in -- give to us a whole bunch

15  of new documents and have their experts rely on them.

16  That's what I understand them to be doing.  And --

17         THE COURT:  Or there may be supplemental reports.

18         MR. KRATENSTEIN:  Or there may be supplemental

19  reports.  And we'll deal with that at some other time.  But

20  if they're going to do that, then they need to produce the

21  documents to us.  So that's what has to happen, right?  If

22  their experts are going to rely on the documents, we have to

23  see them.  Clearly, that has to happen.

24         THE COURT:  So, you don't have any objection in

25  your individual cases to them filing an expert report

1    tomorrow in a case where discovery is closed, and you don't

2    have a right to depose that expert?

3            MR. KRATENSTEIN:  No, no.  They can't have it both

4    ways.  They can't have it both ways.

5            THE COURT:  So, if information comes up in cases

6    where discovery is still open, you want to reopen discovery

7    in your cases?

8            MR. KRATENSTEIN:  No, I do not want to reopen

9    discovery in my cases.

10           THE COURT:  All right.

11           MR. KRATENSTEIN:  Let me be very clear.  I'm going

12   to just go back.  A year ago tomorrow, you noted something

13   in our cases, which is, by the way, another reason why this

14   is all different -- which is my clients actually directed

15   trades, unlike everybody else here.  So I have this whole

16   other argument that nobody has that we have to deal with.

17   And they've known about that for a long time.

18           So, in my cases, expert discovery is -- fact

19   discovery is closed, expert discovery is still open.

20   They're going to put in expert reports.  I don't know what

21   they're going to say.  Okay, yeah, I've seen Dubinsky's old

22   report -- I don't know what they're going to do next.

23           But if what they're going to do is, now all of a

24   sudden through the proverbial backdoor after fact discovery

25   is over, produce a whole bunch of stuff that we've never

Page 68

1    seen, I mean, I think that that's unfair.  I don't want to

2    take more in fact discovery.

3              THE COURT:  But isn't that possibly inevitable if

4    you have some cases where discovery is still open and the

5    Trustee can still put in, let's say, expert reports or even

6    factual discovery --

7              MR. KRATENSTEIN:  The factual records -- my view -

8    -

9              THE COURT:  Which you may never requested but you

10   think is relevant to your case.

11             MR. KRATENSTEIN:  Well, we all have requested it.

12   But the factual information that the experts rely on should

13   be the factual record in that particular case.

14             THE COURT:  Well, they do have to make the

15   information available to you if they're going to -- without

16   regard to discovery, by the way, if they're going to use the

17   expert's report in your case.

18             MR. KRATENSTEIN:  Clearly.  And we can have that

19   debate.  What should happen here, in my view, is that fact

20   discovery in the cases where it's closed is closed, and for

21   all the experts, I agree with you completely -- there should

22   be one Dubinsky deposition.  And if there are other expert

23   depositions over multiple cases, there should be one

24   deposition.  But that's what should be coordinated to the

25   extent there's coordination.

Page 69

1          THE COURT:  All right.  And should, for example,

2     Dubinsky is the example we're using -- should the Dubinsky

3     deposition proceed immediately even though fact discovery is

4     still open in some cases?

5          MR. KRATENSTEIN:  I don't see -- well, in my case

6     it can't proceed immediately because they haven't served

7     Dubinsky's report in my case.  So, in my case I can't do

8     that immediately.

9          MS. BELL:  And that's precisely the point, Your

10    Honor.  The Trustee would not need to supplement in cases

11    where expert report is still open, because the experts will

12    indicate any documents they've considered in connection with

13    the opinions that are being rendered in the case.  And so I

14    think the fact that the expert -- there's a reason the

15    expert date is different than the fact discovery date in

16    these case management orders.

17         I think to the extent that the Court is concerned

18    about opening -- reopening discovery, I think I just want to

19    remind the Court that it's the Trustee's position that the

20    fraud proceeding is underway and the request for this

21    additional discovery is part of that fraud proceeding.  To

22    the extent that the Court would like us to make a Rule 16

23    motion, we're prepared to do that, where we go through the

24    factors of Rule 16.  And we can do that on a case by case

25    basis to the extent we see fit.  And that's something we'll

Page 70

1    evaluate.

2            THE COURT:  All right.  Look, I'm not going to

3    grant this motion on the state of this record.  The order on

4    which this is all predicated -- there are actually two of

5    them, but the first Madoff deposition order said -- in

6    Paragraph 11 -- it says, "As to the participating customers

7    whose fact discovery is set to close on or after the date,

8    the Court extends fact discovery for the limited and sole

9    purpose of taking Madoff's deposition."

10           It then says, "Other than for that purpose, the

11   deadlines in the applicable case management orders remain

12   unchanged, notwithstanding the dates set forth in the case

13   management orders.  Counsel for the Trustee, the

14   participating customers, the Picower parties, and SIPC have

15   the right to move the Court for further discovery based upon

16   Madoff's testimony."

17           If you're going to make that motion, you have to

18   show specifically what it is Madoff said that's new, that

19   you couldn't have anticipated with due diligence of taking

20   that discovery.  I'm being told -- and part of the problem

21   of this process is people tell me a lot of stuff, and it's

22   not contained in a pleading.  But I'm told that some of

23   these issues were always issues in the case and at some

24   point, somebody got the idea they wanted to take Madoff's

25   deposition.  I don't even know how that -- I don't recall

Page 71

1    how that originated.  With Ms. Chaitman, all right.  And we

2    limited it to cases where discovery was still open.

3           I'm not inclined to reopen discovery for another

4    year, certainly in cases where discovery is closed.  To the

5    extent that discovery is still open or you have a duty to

6    supplement or something like that, your proposed order sort

7    of wipes all that out and starts everything anew.  And

8    that's not right.

9           Expert discovery we can deal with to the extent

10   it's still open.  People can go in on one day and take

11   Madoff -- take Dubinsky's deposition.  I don't know if you

12   want to take the deposition Mr. Rich put in.  I forget his

13   name.  Friedland?

14           MS. BELL:  Mr. Greenblatt.

15           THE COURT:  No, no, no.  What was your expert's

16   name?  Friedland?

17           MS. BELL:  Feingold.

18           THE COURT:  All right, Feingold.

19           MR. RICH:  Mr. Feingold.  But their deadline to

20   depose in my cases expired.

21           THE COURT:  Has your deadline to depose Mr.

22   Dubinsky expired?

23           MR. RICH:  Yes.

24           THE COURT:  Okay.  Well, deadlines have expired,

25   they've expired absent the modification of the order.  But a

Page 72

1    lot of these expert reports have been out there forever and

2    there were expert discovery deadlines set.  But, again, I go

3    back to the orders which authorize Madoff's deposition,

4    which is the starting point you have to show in order to

5    reopen discovery in any case that he said something that

6    would be cause to reopen the case.

7              I am also having second thoughts about a

8    consolidated proceeding, although I agree with you, it is

9    certainly the most efficient way to deal with the issue.

10   There may be practical problems with it.  Depositions that

11   have been taken, for example, I use the Madoff deposition,

12   and you're going to tell me you invited people and I don't

13   know what effect that has.  But the Madoff deposition,

14   whether it can be used in all cases, particularly those

15   cases where discovery was run and people didn't have the

16   right under the order to participate in it.  There may be

17   other discovery which was taken in an individual case.  I

18   don't know what that might be but -- I'm told Ms. Galura was

19   deposed.  Or Mr. Greenblatt was deposed a couple of times.

20   I don't know what he or she said, but I don't know if you

21   can use that in the other cases.

22             So there may be a practical problem, which is

23   really, as I said, what's driving this notion of reopening

24   discovery and having a consolidated discovery proceeding.

25   Because if we can't have a consolidated proceeding, we don't

Page 73

1    need this consolidated discovery.  We'll just do it on a

2    case by case basis or a group of cases to the extent it

3    makes sense.  So that if Ms. Neville has 13 cases and your

4    direct case -- to a large extent her defenses are the same

5    in every one of those cases, yeah, we can try those together

6    or consolidate those issues.

7              MS. BELL:  And the Trustee is prepared to move

8    forward, Your Honor, on a case by case basis.  I just want

9    to bring the Court back -- I know you said two orders.

10   There is a third order, Ms. Chaitman's April -- August 10,

11   2017 order that left all the dates in abeyance with the

12   exception of the three motions to withdraw the reference

13   cases.  And it expressly outlined the expert report.  And so

14   it's the Trustee's view that whatever decision the Court

15   renders today, if there can be a carve out for Ms.

16   Chaitman's cases, because they're to be handled separately

17   just under this order and it's separate from --

18             THE COURT:  She retained the right under that

19   order -- there was the issue of the subpoenas on the

20   traders.

21             MS. BELL:  Yes, Your Honor.

22             THE COURT:  Right.  So those were timely served.

23   And that's just a discovery issue.

24             MS. BELL:  But the Trustee has not been serving

25   expert reports under this order because our reading of the

Page 74

1    order -- and we've communicated as much to Ms. Chaitman, and

2    there was no --

3                 THE COURT:  What other expert?  What's the answer?

4                 MS. BELL:  Well, we haven't served any expert

5    reports in those cases.  And so the Trustee will serve --

6    we've been holding those dates in abeyance in accordance

7    with that August order, because in our view, we would

8    revisit all of this at the end of Madoff's deposition and so

9    dates would be set at that time, which is now.  If we agree

10   that Madoff's deposition is --

11                THE COURT:  Do you want me to just set a schedule

12   for expert discovery?  Or expert depositions?

13                MS. CHAITMAN:  Your Honor, I'm going to take up

14   your offer that I file a Motion to Compel.  I haven't

15   completed --

16                THE COURT:  I'm not offering it.  I'm just saying

17   you can always file a Motion to Compel.

18                MS. CHAITMAN:  Yes.  No, no, no, I understand.

19                THE COURT:  I told you the last time, though, and

20   I'll reiterate so there's no confusion, that if Judge Moss

21   put a procedure in place to narrow the issues and you're

22   going around that, you may lose the motion and you may

23   suffer an award against you of attorneys' fees and costs.

24   That's what I said the last time.  Okay?

25                MS. CHAITMAN:  Okay.  But the point is fact

Page 75

1    discovery is open in my cases.  So, until we resolve the

2    issue of the Trustee's production of the documents that have

3    been withheld, we're not prepared to file expert reports.

4    We can't possibly.

5              THE COURT:  All right.  I suppose it's academic if

6    they make a motion and discovery is reopened in all the

7    cases.  But, you know, I think you have to make a motion and

8    identify specifically what it is that Madoff said that

9    triggers the need to reopen discovery in all of the cases.

10   And I think that motion's going to have to be on limited

11   issues.  I'm not going to reopen discovery generally.

12   Nothing I've said today has anything to do with outstanding

13   discovery requests, with the duty to supplement or anything

14   like that.

15             MS. BELL:  Okay, Your Honor, just for

16   clarification, is the Madoff deposition officially over?

17   And I --

18             THE COURT:  As far as I'm concerned, did everybody

19   have an opportunity to question him?  The fact that they

20   reserved their rights on the record doesn't mean anything to

21   me.

22             MS. CHAITMAN:  The reason I wanted to take

23   Madoff's deposition was to question him about the trading

24   records, and I've gotten maybe one percent of the trading

25   records.  And let me explain to you what the importance is.

Page 76

1           THE COURT:  You can make that motion when the time

2    comes, but I think you're going to be hard-pressed to

3    convince me that he should be deposed yet again.

4           MS. CHAITMAN:  You know what the problem is,

5    Judge?  What we've been able to establish is we can match

6    CUSIP numbers on customer statements with CUSIP numbers on

7    confirmations of the purchase of T-bills with investment

8    advisory customers' money.  We want to be able to do that

9    with securities.  I have been able to do it with some

10   securities -- when I say securities, I mean, Fortune 100

11   companies.

12          THE COURT:  I have a suggestion that I thought

13   about.  You have how many cases?

14          MS. CHAITMAN:  70 something.

15          THE COURT:  Why don't you pick -- see if you can

16   agree on a sampling and just get -- look for the documents

17   as to those particular purchases we're talking about, and

18   see if we can try a sample of your cases.

19          MS. BELL:  Your Honor, the issue's a little more

20   complicated than that because if Ms. Chaitman is matching

21   CUSIP numbers in one customer statement to what is reflected

22   on the brokerage account statements, she's matching it for

23   one account.  Madoff used those same CUSIP numbers as

24   against hundreds of accounts.  And so --

25          THE COURT:  You know what?  You're going to say he

1    never purchased securities.  She's going to come forward and

2    show that the CUSIP number that was purchased, I guess, for

3    a House 5 account also matches a CUSIP number on a customer

4    statement or a trading confirmation.

5                 MS. CHAITMAN:  But when you say a House 5 account,

6    it was purchased for BLMIS.

7                 THE COURT:  I understand that.  But the whole

8    point of this is allocation.  And what Ms. Bell is saying

9    is, yeah, that's all well and good but he allocated that

10   same purchase of one T-bill to 200 accounts.  That's

11   basically what she's saying.  But you'll have to show that.

12                MS. BELL:  Yes, Your Honor.  And we're prepared to

13   do that.

14                THE COURT:  Yeah, you don't need more discovery to

15   do that, though?

16                MS. BELL:  I think we have what we need in the

17   record to do that, and we have experts who will testify on

18   that, experts who've been disclosed.  I think, Your Honor,

19   with respect to the -- I think just clarification in terms

20   of Ms. Chaitman's expert disclosure date, so that when we

21   leave here today we have a clear sense of how we're

22   operating.

23                So, again, Ms. Chaitman has said that she needs

24   more time to review documents before Mr. Madoff's deposition

25   could be completed.  And just to look back, at the time we

Page 78

1    produced a number of records in connection with the

2    microfilm dispute that we had last year, and Ms. Chaitman

3    asked for more time to review those records so she could go

4    depose Mr. Madoff.  She took 25 minutes of his deposition

5    and then she was done, and then did five minutes of cross.

6              And so I think, you know, to the extent that this

7    production issue further delays the case, I would request

8    that the Court limits that.

9              THE COURT:  Well, the simple answer to that is

10   just to schedule Dubinsky's deposition, and in the interim

11   you can either make your Motion to Compel or you can go back

12   to Judge Moss, which is what I think you should do since he

13   put this procedure in place --

14             MS. CHAITMAN:  I will go back to Judge Moss --

15             THE COURT:  -- and he will --

16             MS. CHAITMAN:  If Judge Baker had not agreed to

17   give me the documents, I would have gone back to Judge Moss

18   already.

19             MS. BELL:  But we have not served Mr. Dubinsky's

20   deposition yet because fact discovery --

21             THE COURT:  Well, why don't you serve it?

22             MS. BELL:  We typically have a 60-day period

23   between -- because we have to have whatever documents are at

24   play before the expert reports are due.  And so there's a

25   60-day period between the close of fact discovery and expert

1    discovery in every case management order.

2             THE COURT:  So what do you do -- you're saying

3    she's stretching it out, but you're saying you can't serve

4    your expert report and we can't have expert discovery until

5    this document dispute is resolved, right?

6             MS. BELL:  Until we --

7             THE COURT:  So, what do you propose?

8             MS. BELL:  Until we determine that fact discovery

9    is closed.  And so I think, Your Honor, that we need to

10   decide what constitutes the end of fact discovery.

11            THE COURT:  Okay, fair enough.

12            MS. BELL:  And I don't know what that is today.

13   And perhaps a further discussion?  She also has outstanding

14   the trader subpoenas, and it's our view that that's part of

15   fact discovery and the experts should be given an

16   opportunity --

17            THE COURT:  Don't the case management orders in

18   each case determine when fact discovery is over?

19            MS. BELL:  But those dates have expired, I think,

20   as we just agreed, and Ms. Chaitman has outstanding trader

21   subpoenas, for example.  She wants to take depositions.

22            THE COURT:  Okay.

23            MS. BELL:  The experts would need to get the

24   benefit of that -- those depositions before we have to

25   render an expert report.  And so fact discovery -- expert

1    discovery is after the close of fact discovery typically.

2              THE COURT:  And you oppose her taking those

3    depositions if, for no other reason, you want a consolidated

4    proceeding in which everybody attends those depositions?

5              MS. BELL:  Well, we thought it would make sense,

6    Your Honor.  For example, she had David Kugel on the list of

7    27 traders.  He has a plea allocution and he testified at

8    the criminal trial.  There are a number of issues that will

9    go across cases.  And so we think it's not efficient to

10   proceed with those --

11             THE COURT:  Why don't you make your motion to

12   modify the pretrial orders to reopen discovery?

13             MS. BELL:  Yes, Your Honor.

14             THE COURT:  And do that expeditiously.  Now, with

15   respect -- there's got to be a time limit, though, Ms.

16   Chaitman, with you doing something about this issue.

17             MS. CHAITMAN:  I will make the motion -- Judge, if

18   Baker had not indicated to me that they would produce all

19   the trading records without my going back to Judge Moss, I

20   would have done it already.  But I will go back to Judge

21   Moss, but I'd like to be able to proceed with the subpoenaed

22   depositions.  The traders have both documents and testimony.

23             THE COURT:  I think I want to decide the Trustee's

24   motion first, because everybody's going to want to come to

25   Kugel's deposition, for example, if I reopen discovery.  And

Page 81

1    everybody may want to question Kugel.  I don't know who

2    else, you know, is involved.  Maybe Bongiorno.  I don't know

3    --

4              MS. CHAITMAN:  I was not able to serve a subpoena

5    on Kugel.

6              THE COURT:  Pardon?

7              MS. CHAITMAN:  I have not served a subpoena on

8    Kugel.

9              THE COURT:  So, how many depositions do you -- how

10   many subpoenas have you served?

11             MS. CHAITMAN:  You know, I don't have that number.

12   But I think it's -- I mean, I tried to serve 27.  Kugel's in

13   prison, isn't he?  I mean, I didn't serve him, so -- but I'd

14   like to be able to go forward with that discovery.  I don't

15   --

16             THE COURT:  But how many -- that's what I'm asking

17   you.  How many are there?

18             MS. CHAITMAN:  I think it's 12 that we actually

19   served.  I'd like to go forward with those 12 depositions

20   and get the documents.

21             THE COURT:  There's only two possibilities:

22   Either I have to hear her motion first or there's going to

23   be an interim procedure where anybody can opt in, regardless

24   of whether discovery is closed, if they want to attend those

25   depositions.  But they'll be deemed to have attended them,

Page 82

1    whether or not they opt in.

2             MS. CHAITMAN:  Why don't we have the Trustee make

3    the motion and then --

4             THE COURT:  All right.

5             MS. BELL:  So, Your Honor, just a couple of

6    scheduling things.  I'm on vacation for two weeks in August.

7    And so if we can defer that a little to --

8             THE COURT:  Everybody's on vacation in August,

9    except me but --

10            MS. BELL:  But just to address the point of

11   Kugel's deposition, the Trustee had --

12            THE COURT:  You're the only lawyer working on this

13   case, right?

14            MS. BELL:  No, Your Honor, but many --

15            THE COURT:  I've seen your -- I've seen your

16   firm's fee applications.

17            MS. BELL:  A number of other --

18            THE COURT:  You must have a high billing rate.  Go

19   ahead.

20            MS. BELL:  A number of other folks who are on this

21   proceeding are also on vacation, Your Honor.  But just with

22   respect to Kugel's deposition, I think the Trustee assumed

23   that Ms. Chaitman had served, and this is the first time

24   we're hearing that that deposition --

25            THE COURT:  Well, he's in jail.

1           MS. BELL:  Well, but, Your Honor, I think, though,

2      the point I'm trying to make is that the Trustee should be

3      accorded the opportunity, at least in Ms. Chaitman's cases,

4      to take Mr. Kugel's deposition because --

5           THE COURT:  We can argue with that if we get to a

6      case by case determination, if I deny your motion or I limit

7      the issues.  I mean, I've bene hearing about Kugel's

8      allocution now for four years, so...

9           MS. BELL:  Absolutely right, Your Honor.  We

10     thought this would be an appropriate juncture to do that.

11          THE COURT:  Okay.

12          MS. BELL:  Mr. Shifrin is prepared to address, to

13     the extent the Court would like to hear, the specific

14     statements by Ms. Chaitman on trading records and what that

15     means and the status of that, if the Court is so inclined.

16          THE COURT:  I don't want to hear another -- I

17     don't want to have another discovery conference on this

18     issue.  As I said, I've had multiple discovery conferences

19     for two years, culminating last year when Ms. Chaitman said

20     she wanted to make a Motion to Compel.  I suggested that the

21     better procedure might be to go back to Judge Moss, although

22     I never said you couldn't make a motion to compel, and I

23     would never say that.

24          And I'm being told that there were communications,

25     and the Trustee said he would turn over records, and I don't

Page 84

1    know what's happened, whether those statements were made or

2    if they were made, whether there was a follow-up to get the

3    records.  I just don't know.  I don't know if there's a

4    question of proportionality, if there's a question of who's

5    going to bear the cost of all this.  I don't even know what

6    the cost is.  For all I know, you can tell someone to come

7    into the data room and say, "Here, go have a look at 30

8    million documents.  Just be out in an hour." I just don't

9    know.

10            And if you're going to argue that it's

11   disproportionate, you're going to have to explain to me

12   facts which tell me what the cost is and things like that.

13   Because I still remember I told you to go and look at 20

14   reels of microfiche.  You looked at four.

15            MS. CHAITMAN:  You're conflating two issues, Your

16   Honor, if I may --

17            THE COURT:  Okay, but --

18            MS. CHAITMAN:  The microfilm, we dropped the

19   microfilm, as I explained previously.

20            THE COURT:  All right, so the microfilm is no

21   longer at issue?

22            MS. CHAITMAN:  I explained that it wasn't

23   productive for us to go through the microfilm.  There were

24   like, 5,700 microfilms --

25            THE COURT:  So, these 30 million documents, can

Page 85

1    they be searched?

2              MS. CHAITMAN:  Yes.

3              THE COURT:  With search terms?

4              MS. BELL:  And I'll let Mr. Shifrin respond to

5    that, Your Honor.

6              MR. SHIFRIN:  Good morning, Your Honor.  Max

7    Shifrin on behalf of the Trustee.  Yes, the documents in the

8    BLMIS database can be searched.  And we have been searching

9    them for years.  We have run dozens of search terms for Ms.

10   Chaitman, both what we've offered and ones that she's

11   offered, and we've produced those documents to her.  So she

12   has access to the BLMIS database.  She simply has to give us

13   purposeful, concrete, specific, reasonable search terms that

14   aren't bank names like Fidelity that return 3 million hits.

15   That's not a reasonable search term.  That's --

16             THE COURT:  Why don't you give them the CUSIP

17   numbers?  See if they pop up.

18             MS. CHAITMAN:  If I were that smart...

19             THE COURT:  I'm sure you'll figure it out, Ms.

20   Chaitman.

21             MR. SHIFRIN:  Your Honor, just to clarify a couple

22   of things here.  The BLMIS database contains, literally, all

23   documents, hardcopy and electronic that were recovered from

24   all operative floors of the Lipstick Building.

25             THE COURT:  Okay.

Page 86

1              MR. SHIFRIN:  They contain every electronic

2     document recovered from every hard drive, every floppy disk,

3     every CD, every loose paper in everyone's office.  It

4     contains the full assortment of what employees at BLMIS kept

5     in their files and records.  It contains, in short,

6     irrelevant information.

7              So, the notion that she and that any other

8     Defendant is entitled to 30 million documents irrespective

9     of relevance, just the wholesale production of these

10    materials is absurd and it would never be authorized in any

11    litigation.

12             THE COURT:  Mr. Shifrin, there have been disputes

13    about what's relevant and not relevant in this case.

14             MR. SHIFRIN:  That's true.

15             THE COURT:  But if it takes two seconds to put a

16    search in, and you get 10 million hits with the search, and

17    then the question is who's going to pay for it, that's

18    something I can deal with.  But if it doesn't cost anything

19    to put the search terms in and come up with those 10 million

20    hits, what difference does it make?

21             MR. SHIFRIN:  Your Honor, we have no objection to

22    running reasonable search terms and producing those

23    documents.

24             THE COURT:  Well, okay.  All right.  I don't have

25    the search terms before me.  I don't know if they're

Page 87

1   reasonable or unreasonable, but if she wants to look at

2   every single document and it doesn't cost you anything, so

3   what?

4           MR. SHIFRIN:  Well, Your Honor --

5           THE COURT:  I'm just asking.

6           MR. SHIFRIN:  Yeah, and I think there's an answer

7   to that.  Rule 26 entitles litigants to relevant discovery.

8   So, the inherent in that request, 30 million documents,

9   irrespective of any relevance review or responsiveness

10  review, fundamentally will include a relevant discovery

11  that's not entitled under federal rules.

12          THE COURT:  Okay.

13          MS. CHAITMAN:  But it's like I've been getting

14  Chinese takeout menus.  When I ask for -- I name specific

15  institutions and I get Chinese takeout menus.  If they have

16  the database, Judge, there's no dispute about it, let them

17  give us access to it.  It won't cost them anything.

18          THE COURT:  Well, that's the question --

19          MR. SHIFRIN:  She's complaining about Chinese

20  takeout menus.  Now she's asking for 30 million more

21  documents?  So, which one is it?

22          MS. CHAITMAN:  I want access to the database.

23          THE COURT:  Maybe she's hungry.  Look, I've said

24  enough, all right?  My own feeling is if she wants to go and

25  look at 30 million documents and it doesn't cost you

1   anything, let her look at 30 million documents, if that's

2   what she wants to do.  That'll avoid a dispute about

3   relevance.

4           If she asks you for copies of 30 million

5   documents, she'll probably have to pay for it.  That's a

6   different issue.

7           MR. SHIFRIN:  That's true, Your Honor, but the

8   technical aspects of creating a database of 30 million

9   documents that's accessible to people just to walk in and

10  wander and run search terms is a little bit more complicated

11  --

12          THE COURT:  All right, but I don't know that.  You

13  have to explain that to me.  Thank you.  Thank you very

14  much.  What I'll do is I'll just adjourn your motion sine

15  die with the anticipation that you're going to make a motion

16  under Rule 16.

17          MS. BELL:  Great.  Thank you, Your Honor.

18          MS. CHAITMAN:  Judge, I don't want to beat a dead

19  horse --

20          THE COURT:  But you will.

21          MS. CHAITMAN:  Yes.  But when you say he has to

22  explain to you -- you want me to go back to Judge Moss?

23          THE COURT:  I think you should go back to Judge

24  Moss.

25          MS. CHAITMAN:  Okay, okay.

Page 89

1              THE COURT:  That's all.

2              MS. CHAITMAN:  Okay.

3              THE COURT:  And you can explain to him.

4              MS. CHAITMAN:  Okay, thank you.

5              THE COURT:  All right.  Thank you.

6              (Whereupon these proceedings were concluded at

7    11:42 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 90

1                            I N D E X

2

3                          RULINGS

4                                              Page      Line

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 91

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya                    Digitally signed by Sonya
                              Ledanski Hyde
                              DN: cn=Sonya Ledanski Hyde, o,
     Ledanski Hyde            ou, email=digital1@veritext.com,
7                             c=US
                              Date: 2018.07.26 16:58:33 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date: