**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Geraldine E. Ponto
Gonzalo S. Zeballos

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC and*
*the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>            Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>            Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>            Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>            Plaintiff,<br><br>    v.<br><br>FEDERICO CERETTI, *et al.*<br><br>            Defendants. | Adv. Pro. No. 09-01161 (SMB) |

## MOTION FOR THE ISSUANCE OF LETTER OF REQUEST

1.      Plaintiff Mr. Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), substantively consolidated with the estate of Bernard L. Madoff ("Madoff"), through the Trustee's attorneys, Baker & Hostetler LLP, submits this motion for the issuance of a Letter of Request to the Registrar of the Supreme Court in Hamilton, Bermuda for the examination of non-party, Andrew Brook.

2.      This motion is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and Bermuda.  Service will be effected pursuant to the Hague Service Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents, to which the United States and the United Kingdom, inclusive of Bermuda, are signatories.

3.      Mr. Brook is a foreign citizen and a resident of Bermuda.  Thus, the Letter of Request provides the only means of compelling discovery from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme**

4.      Through BLMIS, Madoff's investment advisory business, he conducted a decades-long Ponzi scheme of breathtaking scale.  His fraud was sustained by infusions of money from around the globe.  In particular, domestic and foreign investment vehicles, sometimes colloquially known as "feeder funds," injected several billions of dollars into his scheme.  (*See* Trustee's Fourth Amended Complaint filed on March 17, 2014, ¶ 1 (ECF No. 100) (hereinafter "FAC")).

5.      Included among these feeder funds were Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," and together with Kingate Global, the "Kingate Funds"), both of which are in liquidation proceedings in the British Virgin Islands and in

Bermuda. (*Id.*)

6. Since their inception, the Kingate Funds deposited a combined total of approximately $1.7 billion with BLMIS and over time withdrew nearly a billion dollars from BLMIS. (*Id.* ¶¶ 2-3.)

7. The Trustee alleges that these withdrawn funds comprise customer property and constitute avoidable transfers under the United States Bankruptcy Code and other applicable law that the Trustee seeks to recover for equitable distribution. (*Id.* ¶ 248.)

8. More specifically, the FAC seeks, *inter alia*, to avoid and recover $926,351,905 in fraudulent transfers made to the Kingate Funds under the Bankruptcy Code, the New York Debtor Creditor Law, and SIPA § 78fff-2(c)(3). (*Id.* ¶ 8.)

**Ceretti, Grosso and the Kingate Funds**

9. Following an introduction to Madoff by the head of a large feeder fund, Tremont (Bermuda) Limited ("Tremont") (*id.* ¶ 94), Mr. Ceretti and Mr. Grosso formed Kingate Global in 1994 in the British Virgin Islands ("BVI"). Kingate Global opened an account with BLMIS that same year. By that time, BLMIS would accept only institutional investors.

10. Mr. Ceretti and Mr. Grosso were sophisticated investment professionals with decades of combined experience in the investment industry.

11. In 1996, Mr. Ceretti and Mr. Grosso created a sub-fund of Kingate Global to attract investments in Deutsche Marks that would then be converted to U.S. currency and deposited with BLMIS. That same year, the sub-fund opened a customer account with BLMIS. In 2000, that sub-fund became a separate BLMIS feeder fund, Kingate Euro, also formed in the BVI, to solicit investments abroad in Euros that would then be converted to U.S. currency and deposited with BLMIS. Kingate Euro assumed the rights to the sub-fund's account with BLMIS. Mr. Ceretti and Mr. Grosso structured the Kingate Funds separately, but they operated relative to BLMIS

substantially the same.

12. At the time they formed the Kingate Funds, Mr. Ceretti and Mr. Grosso headed an asset management and investment advisory firm in London called FIM Limited. It was founded by Mr. Grosso in 1981 (*id.* ¶¶ 35, 49), but Mr. Ceretti became an equal owner in or about 1986. Mr. Ceretti and Mr. Grosso later co-founded FIM Advisers LLP in London, which succeeded FIM Limited in 2005 (*id.* ¶¶ 36, 52).

13. Despite having an existing company that could have managed the Kingate Funds, Mr. Ceretti and Mr. Grosso formed a separate management company by the name of Kingate Management Limited ("KML") in Bermuda to act as manager for the Kingate Funds. (*Id.* ¶ 4.) KML employees frequently communicated with, and sought advice from, Mr. Ceretti and Mr. Grosso on the management and operation of KML and the Kingate Funds.

14. Mr. Grosso also frequently communicated directly, or indirectly, with the Kingate Funds' investors, often addressing concerns those investors raised about the Kingate Funds, BLMIS, or Madoff. In fact, one investor referred to Mr. Grosso as "Mr. Kingate." Tremont was appointed as co-manager with KML for Kingate Global, a relationship that lasted about ten years. (*Id.* ¶ 106.)

15. Mr. Ceretti and Mr. Grosso caused KML to engage the FIM entities as a consultant and distributor. The FIM entities provided marketing, analysis, management, and consulting services to KML and the Kingate Funds. As a result, much of KML's management responsibilities were delegated to the FIM entities. (*Id.* ¶¶ 5, 46, 51, 112.)

16. FIM had a robust due diligence process and marketed itself to the public accordingly. (*Id.* ¶¶ 122-27.) In addition to acting as consultant, at least fourteen of FIM's investment funds were invested in the Kingate Funds. The FIM funds' investments in the Kingate Funds required the performance of due diligence on the Kingate Funds and BLMIS. The diligence conducted by FIM is part of the cumulative knowledge that can be imputed to the Kingate Funds

via Mr. Ceretti and Mr. Grosso.

17.  To complete their business enterprise relative to investing with BLMIS, Mr. Ceretti and Mr. Grosso formed estate trusts in Jersey, and shell companies, through which they beneficially owned KML.  Through El Prela Trust, and its holding companies, Mr. Ceretti personally received millions of dollars in management fees paid to KML as a result of its work on behalf of the Kingate Funds.  (*Id*. ¶¶ 54, 257.)  Through The Ashby Trust, and its holding companies, Mr. Grosso personally received millions of dollars in management fees paid to KML as a result of its work on behalf of the Kingate Funds.  (*Id*. ¶¶ 63, 257.)

18.  Throughout the Kingate Funds' fourteen years of operation, Mr. Ceretti and Mr. Grosso spoke directly with Madoff and others at BLMIS, and met with Madoff on multiple occasions.  (*Id*. ¶¶ 99, 100-02.)

19.  After Madoff confessed to running a Ponzi scheme in 2008, the Kingate Funds went into winding up proceedings in the BVI and Bermuda.  KML also went into a winding up proceeding in Bermuda.

20.  Mr. Ceretti and Mr. Grosso were essential, and dominant, parties to the enterprise they engineered to benefit from Madoff's fraud, and they acted through the FIM entities and the Kingate Funds' service providers, all of which is relevant to the allegations in the Trustee's FAC and give rise to this Request.

21.  On Mr. Ceretti's and Mr. Grosso's direction, the Kingate Funds engaged other service providers for the Kingate Funds, including Citi Hedge Fund Services Limited ("Citi Hedge"), based in Bermuda, as administrator, HSBC Bank Bermuda ("HSBC"), as custodian, and PricewaterhouseCoopers ("PwC"), through its Bermuda division PwC Bermuda, as auditor.  (*Id*. ¶¶ 72, 80, 135.)

**Mr. Brook's Connections to the Kingate Funds**

22. Many of the issues and allegations contained in the FAC are relevant to Mr. Brook, a former partner at PwC Bermuda, which served as the auditor for the Kingate Funds from approximately 1999-2009. The allegations and facts discussed below give rise to the need for the Letter of Request for documents from and the examination under oath of Mr. Brook. The transcripts of the Kingate Funds' interviews of Mr. Ceretti and Mr. Grosso, testimony provided by Mr. Ceretti and Mr. Grosso to third parties, the review of documents produced to the Trustee, and depositions taken by the Trustee in this proceeding also establish that Mr. Brook has knowledge that is highly relevant to the Trustee's claims in the FAC.

23. PwC Bermuda acted as auditor for the Kingate Funds from approximately 1999-2009.

24. Mr. Brook was a partner with PwC Bermuda and was also the engagement leader and audit partner at PwC Bermuda for the Kingate Funds.

25. As part of PwC Bermuda's role as auditor of the Kingate Funds, Mr. Brook participated in meetings with key people in Bermuda and also met with FIM representatives. Mr. Brook also had numerous conversations with Messrs. Ceretti and Grosso, as well as Mr. Christopher Wetherhill, regarding the audits of the Kingate Funds. Mr. Brook had discussions with Mr. Grosso regarding FIM internal controls and on-site visits to BLMIS, and traveled to London to meet with Mr. Grosso regarding FIM's role with the Kingate Funds.

26. Mr. Brook has knowledge that is highly relevant to the claims in this proceeding and the Trustee has a need for the documents in Mr. Brook's possession to be produced to the Trustee.

27. Specifically, the Trustee anticipates that Mr. Brook will be able to provide further information in relation to the issues and allegations in paragraphs 107-10, 115, 118, 135-36, 142-43, 145, 200-04, 218, 234-37, 239-46, and 254-58 of the FAC.

28. For the above reasons, the Trustee believes that the proposed Letter of Request, attached hereto as Exhibit 1, is just and appropriate and respectfully requests that the Court issue such Letter of Request to the indicated Judicial Authority.

Dated: August 9, 2018
New York, New York

Respectfully submitted,

 /s/ Geraldine E. Ponto
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Gonzalo S. Zeballos
Email: gzeballos@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and the
Estate of Bernard L. Madoff*