```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SECURITIES INVESTOR PROTECTION           :
CORPORATION,                             :
                        Plaintiff,       :
                                         :
        – against –                      :
                                         :   Adv. Pro. No. 08-01789 (SMB)
BERNARD L. MADOFF INVESTMENT             :   SIPA LIQUIDATION
SECURITIES LLC,                          :   (Substantively Consolidated)
                        Defendant.       :
-----------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER DENYING RELIEF

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
*Attorneys for Irving H. Picard, SIPA Trustee*
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Nicholas J. Cremona, Esq.
    Jorian L. Rose, Esq.
    Amy E. Vanderwal, Esq.
    Jason I. Blanchard, Esq.
        Of Counsel

LAW OFFICES OF LALIT K. JAIN, ESQ.
*Attorney for Dean Loren*
6122 Booth Street
Rego Park, NY 11374-1034

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       Dean Loren, in his capacity as executor of the Estate of Evelyn Goldberg ("Evelyn"), seeks certain substantive relief and requests discovery from Irving H. Picard, the trustee ("Trustee") of the estate of Bernard L. Madoff Investment Securities LLC ("BLMIS"). For the reasons that follow, Loren's motion and discovery requests are denied.

**BACKGROUND**

Loren's motion was originally presented *pro se* on or about January 24, 2018. (*Objection by Madoff Victim and Judicial Notice of Madoff 1993 Probate Thefts Known to Irving Picard, SDNY US Attorney Rudy Giuliani NY District Attorney Morganthal [sic] NY AG Robert Abrams/Koeppel*, dated Jan. 24, 2018 (ECF Doc. # 17160).) Following the appearance of counsel and oral argument, his motion was crystalized in *Dean Loren's Affidavit Dated April 23, 2018 in Support of Motion for SIPC Claims Against Bernard Madoff for the Benefit of Pope Francis before Judge Stuart Bernstein and US House Representatives Goodlatte, Gowdy, Nunes & Hensarling*, sworn to Apr. 23, 2018 ("*Loren Affidavit*") (ECF Doc. # 17551-1)), which included twenty-nine exhibits. Separately, Loren seeks discovery, including records of BLMIS trades in U.S. Treasury securities and the depositions of Bernard Madoff and Peter Madoff. (*See Supplemental Affidavit Supporting Correct Use of Discretion for Arriving at Madoff Wolf Popper Picard Treasury Trade Truth Revealed on April 25, 2018 with Direct Evidence of Merrill Lynch Street Account Trades over Bloomberg Terminals to JPMorgan Chase for the Benefit of Wolf Popper & Madoff*, sworn to June 25, 2018 and filed July 4, 2018 (ECF Doc. # 17748, ECF pp. 15-18 of 18)[1]; *Email*, filed July 17, 2018 (ECF Doc. # 17788) (collectively, the "*Discovery Requests*").)

The underlying dispute arises from an alleged conspiracy to misappropriate assets from the estate of Evelyn's husband, Simon Goldberg ("Simon"). Simon died on May 24, 1985, survived by Evelyn, his wife and sole distributee. (*Loren Affidavit*, Ex. 20

---

[1] "ECF pp." refers to the pagination imprinted at the top of each page by the Court's CM/ECF system.

(Decision of Surrogate Roth, dated Feb. 24, 1995, at ECF pp. 311-14 of 449).)  Under his will, he left his estate in trust, providing a life income benefit for Evelyn with a remainder to various relatives and Harvard and McGill Universities.  (*Id.*)

Loren's complaints relate to an alleged conspiracy among David Mandelbaum, Simon's executor, Mandelbaum's lawyers, Wolf Popper LLP ("Wolf Popper"), John C. Fisher, Esq., the Wolf Popper partner in charge of the matter and Surrogate Renee Roth, all designed to wrest control of Simon's Estate and steal its property to the detriment of Evelyn, the lifetime income beneficiary.  According to Loren, the conspiracy was furthered through sham accounting records, forged checks, illegitimate amendments to Simon's death certificate, secret ancillary probate proceedings to secure Simon's Canadian assets and the installation of a guardian *ad litem* for Evelyn.  The Court has no comment on these claims except to note that during her lifetime, Evelyn commenced numerous litigations against a large cast of defendants seeking to right these perceived wrongs.  Her unsuccessful efforts are recounted in prior decisions of the federal and state courts.  *See Goldberg v. Roth*, No. 99 CIV 11591 (KTD), 2001 WL 1622201 (S.D.N.Y. Dec. 17, 2001); *Estate of Goldberg v. Roth*, 637 N.Y.S.2d 72 (N.Y. App. Div.), *motion for leave to appeal denied*, 670 N.E.2d 1346 (N.Y.), *appeal dismissed*, 675 N.E.2d 1234 (N.Y. 1996); *Will of Goldberg*, 580 N.Y.S.2d 655 (N.Y. App. Div. 1992).

Evelyn passed away on November 11, 2008, and Loren was appointed as her executor.

## A.    The BLMIS Connection

Loren apparently contends that Wolf Popper stole money and/or securities from Simon's Estate, deposited the proceeds in the firm's BLMIS account, and BLMIS bought and sold U.S. and Canadian Treasury securities that were allocable to Wolf Popper's account and belonged to Simon's Estate.  As evidence of this connection, Loren points to the following: while Wolf Popper was representing Mandelbaum in the early and mid-1990s, Fisher communicated about the matter with one Emily Madoff, a Wolf Popper partner who handled Wolf Popper's tax and accounting filings.  Loren contends that Emily Madoff was a cousin of Bernard Madoff,[2] and was involved in the conspiracy against Simon's Estate and Evelyn.  (*Loren Affidavit* ¶¶ 24, 48.)  Next, the final accounting submitted by Simon's Estate, (*id.*, Ex. 23), showed that the Estate held and/or redeemed U.S. Treasury securities as well as Canadian securities.  (*Id.* ¶ 39; Ex. 23, ECF pp. 339, 352-53 of 449.)  Loren became aware of the BLMIS connection when Madoff testified in April 2017 at a deposition that BLMIS' proprietary trading desk maintained a Canadian account that traded in Canadian dollars.  (*Id.* ¶ 26; Ex. 10, ECF pp. 148 of 449.)  Finally, when the Trustee sent out the Claims Procedure Notice[3] to BLMIS customers, it addressed one of the mailings to Wolf Popper.  (*Id.*, Ex. 1.)

---

[2]    During oral argument, the Court questioned Loren at length about the nature of the relationship between Bernard Madoff and Emily Madoff.  (Transcript of Hr'g held Apr. 25, 2018 (ECF Doc. # 17566).)  According to Loren, the common ancestor was Abraham Madoff, but the description of the relationship was imprecise.  Abraham had five children, including Ralph and Rae.  Ralph was Bernard's father and Rae was the mother of "or connected to" Morton Madoff, Emily's father, but the Hasidic records that would document the lineage have disappeared.  (*See id.* 20:22-26:4.)

[3]    The Claims Procedure Notice refers to a document that was sent out to persons appearing to be former BLMIS customers with instructions on filing claims against the BLMIS estate.  (*See Order on Application For an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief*, entered Dec. 23, 2008 (ECF Doc. # 12).)

4

## B.   Evelyn's Status as a BLMIS Customer[4]

Loren's claim depends on whether Evelyn was a "customer" of BLMIS.[5] The Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") defines "customer" as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.
>
> (B) Included Persons
>
> The term 'customer' includes-
>
> > (i) any person who has deposited cash with the debtor for the purpose of purchasing securities;
> >
> > (ii) any person who has a claim against the debtor for cash, securities, futures contracts, or options on futures contracts received, acquired, or held in a portfolio margining account carried as a securities account pursuant to a portfolio margining program approved by the Commission; and
> >
> > (iii) any person who has a claim against the debtor arising out of sales or conversions of such securities.

SIPA § 78*lll*(2).

"Judicial interpretations of 'customer' status support a narrow interpretation of SIPA's provisions." *Stafford v. Giddens* (*In re New Times Sec. Servs., Inc.*), 463 F.3d 125, 127 (2d Cir. 2006) (internal quotations and citations omitted); *accord Kruse v. Bricklayers & Allied Craftsman Local 2 Annuity Fund* (*In re BLMIS*), 708 F.3d 422,

---

[4]   The title of the *Loren Affidavit* suggests that Evelyn's Estate is seeking to assert a customer claim for the benefit of Pope Francis. Loren has not demonstrated his authority, as Evelyn's executor, to request relief on behalf of Pope Francis and I read the motion to seek customer status solely for the benefit of Evelyn's Estate.

[5]   Loren does not argue that the Estate was a "customer" of BLMIS, but in any event, it was not for the reasons discussed in the text, *infra*.

426 (2d Cir. 2013) ("*Kruse*").  The claimant has the burden to establish his status as a "customer," and "such a showing 'is not easily met.'"  *SIPC v. BLMIS*, 454 B.R. 285, 294-95 (Bankr. S.D.N.Y. 2011) (quoting *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003)), *aff'd sub nom. Aozora Bank Ltd. v. SIPC* (*In re BLMIS*), 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom., Kruse v. Bricklayers & Allied Craftsman Local 2 Annuity Fund* (*In re BLMIS*), 708 F.3d 422 (2d Cir. 2013).  The "critical aspect" of the customer definition is "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  *Kruse*, 708 F.3d at 426 (quoting *In re BLMIS,* 654 F.3d 229, 236 (2d Cir. 2011)).  In *Kruse*, the appellants, investors in feeder funds that invested in BLMIS, failed to satisfy this "critical" requirement because they "(1) had no direct financial relationship with BLMIS, (2) had no property interest in the assets that the feeder funds invested with BLMIS, (3) had no securities accounts with BLMIS, (4) lacked control over the feeder funds' investments with BLMIS, and (5) were not identified or otherwise reflected in BLMIS's books and records."  *Id.* at 426-27.

Loren has failed to sustain his burden of proving that Evelyn was a BLMIS customer.  Neither she nor Simon had a BLMIS account or any direct financial relationship with BLMIS.  (*See Declaration of Vineet Sehgal in Support of the Trustee's Response to the Motion Filed by Dean Loren*, dated Feb. 22, 2018, at ¶ 13 (ECF Doc. # 17277).)  Furthermore, she did not have a property interest in the assets of Simon's Estate allegedly siphoned off and deposited in Wolf Popper's BLMIS account, and failed to identify any communications between BLMIS and either Evelyn or Simon or their respective estates indicating any relationship with BLMIS.

In addition, whatever Wolf Popper allegedly did with the assets in Simon's Estate, it did not deposit them into its BLMIS account because Wolf Popper did not have a BLMIS account. (*Supplemental Declaration of Vineet Sehgal in Support of the Trustee's Response to the Motion Filed by Dean Loren*, dated May 22, 2018, at ¶ 7 (ECF Doc. # 17602).) It received the Claims Procedure Notice because Marian Rosner, a BLMIS customer, worked at Wolf Popper and used Wolf Popper's address to receive BLMIS account notices. (*Id.*, ¶ 8.)

Accordingly, Loren's motion for a SIPA customer claim (which was also untimely) is denied.

C.  **Loren's Discovery Requests**

The *Discovery Requests* primarily seek production by the Trustee, *inter alia*, of BLMIS' records relating to trading in U.S. Treasury securities, but include other demands as well. As a stranger to the BLMIS liquidation, Loren has failed to demonstrate the right to any discovery from the Trustee or the BLMIS estate. In addition, he has not produced credible evidence regarding a connection between the alleged thefts of property from Simon's Estate and BLMIS' trading in U.S. Treasury securities or any other securities.

Accordingly, the *Discovery Requests* as well as any other requests for discovery that may have been included in his various submissions are denied.

So ordered.

Dated: New York, New York
August 21, 2018

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge