**Hearing Date: September 26, 2018 @ 10 a.m.**
**Objection Deadline: September 7, 2018**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| - against - | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**DENTONS CUSTOMERS' OBJECTION TO TRUSTEE'S MOTION TO STRIKE DENTONS' WITHDRAWAL OF OBJECTIONS TO DETERMINATIONS OF CLAIMS**

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10016
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Customers*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 3

    I.    The Trustee's Motion Is Based On A Misstatement Of Second Circuit Law Regarding Claims .................................................................................................. 8

    II.   Bankruptcy Rule 3006 Does Not Apply To The Withdrawal Of A SIPA Customer Claim ................................................................................................... 11

    III.  Withdrawal of the Customer Claims and Objection Is Appropriate ....................... 12

CONCLUSION ....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re 20/20 Sport, Inc.*,
   200 B.R. 972 (Bankr. S.D.N.Y. 1996) ................................................................................... 13

*In re Bernard L. Madoff Investment Securities LLC*,
   654 F.3d 229 (2d Cir. 2011) ..................................................................................................... 7

*In re BLMIS*,
   496 B.R. 744 (Bankr. S.D. N.Y. 2013) .................................................................................... 8

*In re BLMS*,
   531 B.R. 439 (Bankr. S.D. N.Y. 2015 ) ............................................................................. 3, 10

*Germain v. Connecticut Nat. Bank*,
   988 F.2d 1323 (2d Cir. 1993) ................................................................................................... 9

*Hoffmann v. Alside, Inc.*,
   596 F.2d 822 (8th Cir. 1979) .................................................................................................. 13

*In ASM Capital, LP v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.)*,
   582 F.3d 422 (2d Cir. 2009) ................................................................................................... 11

*Langenkamp v. Culp*,
   498 U.S. 42 (1990) ................................................................................................................... 8

*Lehman Bros. Special Fin. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*,
   544 B.R. 16 (Bankr. S.D.N.Y. 2015) ..................................................................................... 10

*Picard v. Estate of Igoin (In re BLMIS)*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) ................................................................................. 3, 9

*Resorts Intl, Inc. v. Lowenschuss (In re Lowenschuss)*,
   67 F.3d 1394 (9th Cir.1995) ................................................................................................... 13

*Sempra Energy Trading Corp. v. Covanta Union, Inc. (In re Ogden N.Y. Servs.)*,
   312 B.R. 729 (S.D.N.Y. 2004) ............................................................................................... 13

*Templeton v. Nedlloyd Lines*,
   901 F.2d 1273 (5th Cir.1990) ................................................................................................. 13

*Zagano v. Fordham Univ.*,
   900 F.2d 12 (2d Cir. 1990) ..................................................................................................... 13

**Statutes**

11 U.S.C. § 501 ............................................................................................................................ 11

11 U.S.C. § 502 ................................................................................................................ 11, 12

11 U.S.C. § 502(d) ..................................................................................................... 1, 7, 11, 12

11 U.S.C. § 503 ................................................................................................................ 11, 12

11 U.S.C. § 503(a) ..................................................................................................................11

11 U.S.C. § 503(b) ........................................................................................................... 11, 12

15 U.S.C. § 78fff-2 ................................................................................................................... 4

15 U.S.C. § 78fff-2(a)(1) .......................................................................................................... 4

15 U.S.C. § 78fff-2(a)(2) .......................................................................................................... 4

15 U.S.C. § 78ffff-2(b) ............................................................................................................. 4

28 U.S.C. § 158(d)(2) ............................................................................................................... 6

**Other Authorities**

Fed. R. Bankr. P. 3006 ..................................................................................................... 11, 12

Fed. R. Bankr. P. 9014 ............................................................................................................. 5

Fed. R. Civ. P. 41 ................................................................................................................... 13

Fed. R. Civ. P. 41(a)(2) .......................................................................................................... 13

Customers of Bernard L. Madoff Investment Securities LLP ("BLMIS") represented by Dentons US LLP (the "Dentons' Customers"), through their counsel, respond and object to the Motion to Strike the Notice of Withdrawal of Objections to Determination of Claims (the "Motion") [ECF 17864] filed by Irving Picard as Trustee (the "Trustee") for the liquidation of BLMIS.

**PRELIMINARY STATEMENT**

1.  The Trustee's Motion should not be granted because it is based on several patently false premises. First, the Trustee contends that "the causes of action asserted by the Trustee and the defenses raised by the Customers implicate the claims allowance process." Motion at 2. That contention is refuted by the Trustee's complaints--none of which include a section 502(d) claim.[1] Instead of wrapping the claims allowance process into the adversary proceedings through section 502(d) or any other mechanism, the Trustee in each complaint expressly relegated the resolution of claims to a separate procedure pursuant to the Claim Procedures Order entered in the main case.

2.  That separate procedure has run its course. The Dentons' Customer claims have been finally adjudicated in the separate procedure as the Trustee intended. The dispute raised in the objections, which solely addresses the Trustee's method of calculating net equity, has been resolved by the highest court in the jurisdiction. In August 2011, the Court of Appeals for the Second Circuit upheld the Bankruptcy Court ruling in favor of the Cash In/Cash Out net equity methodology for claims allowance, not only for the two customers listed on the bankruptcy court order cited by the Trustee in the Motion, but for all participating customers represented by Dentons. Three petitions for Writs of Certiorari were filed. As the Trustee admits on his

---

[1] Section 502(d) is the link between the claims allowance process and avoidance litigation. As shown below, when the Trustee actually involved the claims resolution process in adversary proceeding, he has asserted section 502(d) claims. He claims to have done so in adversary proceedings against 27 accounts representing 35 claims. None of these are Dentons Customers.

website: "On June 25, 2012, the Supreme Court entered an order that it refused to grant the petitions, thereby allowing lower court decisions regarding the net equity methodology to stand, ending the appeals process, and resolving the matter." (emphasis added). Although the Trustee struggles throughout the Motion to keep the claims process and the objections alive, he cannot identify a single remaining fact, issue or argument that has any effect on the adversary proceeding. In sum, the Trustee's claim determination for each of the Dentons Customers is final and withdrawal of the objection to the determination at this point is a purely ministerial act.

3.  Second, the Trustee contends that the plain language of Bankruptcy Rules prohibit the Dentons Customers from unilaterally withdrawing objections because each such customer is the subject of a pending avoidance action. Motion at 2. However, if, indeed, the Bankruptcy Rules regarding proofs of claim apply here, which the Dentons Customers dispute, nothing in the Rule even remotely relates to an objection to a determination. The Motion barely refers to the withdrawal of objections and the case law relied upon by the trustee is irrelevant to the withdrawal of objections, whereas here, the claim has not been withdrawn. The Trustee fails to explain in his Motion why it is necessary or appropriate under any legal principle to strike the notices of withdrawal of objections.[2]

4.  Third, the Trustee asserts that the withdrawal of the objections to the determinations should not be allowed because it would prejudice both the Trustee and BLMIS by slowing down distributions of avoided and recovered funds to BLMIS' customers. Motion at 3.[3] However, the Trustee has no immediate or clear right of recovery against the Dentons Customers that would be delayed by the withdrawal of objections. Moreover, the Trustee cannot

---

[2] It may well be that the withdrawal of the objections was included in the Motion solely to make it appear less like the Trustee is attempting to circumvent the District Court where the same issues have been raised in the Chaitman cases.

[3] This is truly a bizarre and unsupportable assertion on the part of the Trustee. This is a Trustee who recently admitted that he has not even commenced discovery in 22 pending bad faith actions--a lapse which may hold up distributions on allowed claims for years.

- 2 -

legitimately argue that withdrawal of either the claims or the objections to the determination results in prejudice to some legal interest, legal claim or legal argument in the adversary proceedings. In fact, he has failed to demonstrate how withdrawal of the objections to the determinations has any impact on the prosecution of the pending litigation that would weigh against approval of the withdrawal, assuming approval is required.

5. Finally, the Trustee misstates the law in the Second Circuit with respect to the consequences of filing a proof of claim. It is well settled in this Circuit that a claimant does not automatically forfeit a right to a jury trial by filing a proof of claim. The right to a jury trial is not waived where, as here, resolution of the action is not required in order to determine whether to allow or deny a claim. Indeed, the Trustee conspicuously ignores controlling case law adverse to his contention – about which the Court specifically reminded the parties *sua sponte* in open court during related proceedings: When a claim has been finally determined, the claims allowance process is no longer implicated; the filing of the claim is then a nullity and the right to a jury trial is preserved. *See Picard v. Estate of Igoin (In re BLMIS),* 525 B.R. 871, 887-88 (Bankr. S.D.N.Y. 2015); *In re BLMS,* 531 B.R. 439 (Bankr. S.D.N.Y. 2015).

6. For these reasons, and as more fully set forth below, the Trustee's motion to strike the notices of withdrawal of objections filed by the Dentons Customers should be denied.

## FACTUAL BACKGROUND

7. The facts of the case demonstrate that in the early liquidation of BLMIS, the Trustee set up a procedure under SIPA for filing and adjudication of customer claims. The process, in greatest part, moved forward through the courts with the active participation of Dentons (and its predecessor firms) on the issue raised in the objection--the calculation of net equity--and was finally settled before the complaints had been amended and a motion to dismiss had been heard in the adversary proceedings. There is nothing left to be decided in connection

- 3 -

with the objections and the objections are unrelated to the adversary proceedings. The names of the Dentons Customers with the dates of their objections and the complaints, are listed on the chart attached hereto as Exhibit A.

8. On December 11, 2008, an action was commenced against BLMIS by the Securities and Exchange Commission in the United States District Court for the Southern District of New York. On December 15, 2008, a liquidation proceeding was commenced by the Securities Investor Protection Corporation pursuant to Securities Investment Protection Act ("SIPA"). Irving Picard was appointed Trustee, charged, *inter alia,* with overseeing and processing customer claims pursuant to SIPA.

9. SIPA contains special provisions for the processing of customers claims in section 78fff-2. *See* 15 U.S.C. §78fff-2. Under SIPA, the trustee must send a copy of the notice of commencement of the case to each person who appears to be a customer of the debtor with an open account within the last 12 months at the address on the debtor's books and records. Notice to creditors other than customers is to be given as prescribed by title 11. Section 78fff-2(a)(1). The customer is required to file a written statement of claim "but is not required to file a formal proof of claim." Section 78fff-2(a)(2). Receipt of written statement of claim triggers the trustee's "obligation to discharge all obligations of the debtor to a customer relating to, or net equity claims based upon, securities or cash, by delivery of securities or the making of payments to or for the account of such customer... insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee." Section 78fffff-2(b).

10. To satisfy his obligations under SIPA with respect to the claims processing, the Trustee filed his Ex Parte Application For Entry Of An Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and

Adjudication of Claims; and Providing Other Relief on December 21, 2008 [ECF 8]. In the application, the Trustee sought an order, *inter alia,* directing him to (i) mail a form of notice to customers; (ii) to publish notice in certain newspapers; and (iii) mail notice to creditors other than customers. He also sought approval of (i) the form of notice; (ii) a customer claim form documenting securities held, among other requirements (Exhibit C); (iii) a formal proof of claim form modeled on the standard proof of claim (Exhibit F); and (iv) the form of notice of trustee's determination of claim.

11. The Trustee also sought approval of a detailed process for resolution of disputes with respect to claims which the Trustee did not allow as filed. Application at ¶16. The process included notification by a letter of determination with an opportunity for the aggrieved claimant to have the matter heard by the Court as a contested matter under Rule 9014 of the Bankruptcy Rules. On December 23, 2008, the Court entered the Claims Procedures Order [ECF 12] . A copy of the Claims Procedures Order is annexed to the Declaration of Vineet Sehgal in support of the Trustee's Motion.

12. The Trustee reports that 16,519 customer claims were filed--all of which have been determined. 2,633 have allowed; 2696 denied. 10,732 claims were denied as third party claims; 414 claims were withdrawn; 12 were determined as 'no claim'. *See* www.Madofftrustee.com.[4]

13. The Dentons Customers submitted customer claim for the "net equity" in the BLMIS account based on the final BLMIS statements consistent with SIPC's advice and the

---

[4] The Trustee also received standard proofs of claim from non-customer creditors, which he reported as follows:

As of March 31, 2018, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million.

*See* Nineteenth Interim Report for the Period October 1, 2017 through March 31, 2018 [ECF 17555] at ¶1.

- 5 -

SIPA definition. The Trustee disallowed the Dentons' Customer claims. As the Trustee began rejecting customer claims based on the last statement, the customers, including the Dentons Customers, began objecting to the rejection, raising substantially similar arguments against the Trustee's Cash In/Cash Out methodology. A true and correct copy of the Dentons form of objection is attached hereto as Exhibit B.

14. To address the avalanche of objections, in August 2009, the Trustee filed a Motion for Order Scheduling a Hearing on "Net Equity" Issue (the "Net Equity Motion"). The Trustee's Net Equity Motion was expressly intended to establish an orderly consolidated process to resolve objections to the Trustee's determination of claims based on the calculation of net equity. In connection with that consolidated procedure the Trustee filed his Motion For An Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed On Last Statement, Affirming Trustee's Determination Of Net Equity, And Expunging Those Objections With Respect To The Determinations Relating To Net Equity on October 16, 2009 and a number of law firms, representing customers, whose claims had been disallowed, including Dentons, objected.

15. Because the method for calculating "net equity" affected the determination and calculation many customer claims in the Madoff case, the "net equity" issue was the first legal issue the bankruptcy court scheduled for common briefing. On March 1, 2010 the Bankruptcy Court upheld the Trustee's method for calculating "net equity" and expunged objections as requested by the Trustee.[5] The Bankruptcy Court, joined by counsel to the Trustee and counsel to a cross-section of investors, then certified the issue for immediate appeal directly to the Second Circuit pursuant to 28 U.S.C. § 158(d)(2).

---

[5] The Trustee argues that the language of the Bankruptcy Court order expunging claims reserved issues that impact on the resolution of the adversary proceeding. The Trustee is unable to identify any reserved issue that affects the adversary proceeding.

16. On August 16, 2011, the Second Circuit ruled that the Trustee properly used the "Net Investment Method" to calculate "net equity" under SIPA. *See In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229 (2d Cir. 2011). As the Trustee reports, Dentons participated actively in every phase of the claims allowance procedure.

17. All of the objections to the Trustee's determination were filed long before the Trustee's complaints were filed. They were resolved by the Net Equity Decision long before the Trustee amended the complaints against the Dentons Customers. The Trustee did not elect to preserve any of the claims resolution issues, which he claims remain unresolved in the objections. Instead, the Trustee's complaints initially filed against the Dentons Customers and as amended relegate the claims allowance issues, if any remained, to the separate procedure as follows: "The Trustee intends to resolve the Customer Claims and the Claims Objection to the Trustee's Determination of such claim through a separate hearing as contemplated by the Claims Procedures Order."

18. In contrast to his posture in the cases of the Dentons Customers, when the Trustee intended to tie resolution of the claims to the adversary proceeding, he did so in the litigation against other claimants pursuant to a count to disallow the claim under section 502(d). In his Nineteenth Interim Report for the Period October 1, 2017 through March 31, 2018 [ECF 17555], the Trustee described those adversary proceedings as follows:

> As of March 31, 2018, there were 35 claims relating to 27 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

Report at ¶14.

- 7 -

19. The Dentons Customers also participated in a matter of an adjustment to net equity based on time value adjustment. The customers' claim for such an adjustment was denied. *See In re BLMIS,* 496 B.R. 744 (Bankr. S.D.N.Y. 2013). There is nothing remaining to be done on the claims processing side except to do what the Dentons Customers intended to do, i.e., formally dispose of the objections.

20. The Trustee has filed omnibus motions to disallow claims and overrule objections to claimants who have no net equity based on his position that the objections "raise arguments that have been rejected by the courts and resolved in the Trustee's favor." *See e.g.* Twentieth Omnibus Objection [ECF 17905]. Thus, although styled as a motion to disallow claims and overrule objections, the motion is a purely administrative and an affirmation of the disallowance that has already occurred.

## I. The Trustee's Motion Is Based On A Misstatement Of Second Circuit Law Regarding Claims

21. It appears that the whole point of the Trustee's Motion insofar as it relates to the Dentons Customers is to get a ruling that he will use in opposing a jury trial at the appropriate time. His argument that the Dentons Customers have irrevocably submitted to the equitable jurisdiction of the Bankruptcy Court and waived a right to a jury trial by filing the customer claims misstates applicable law.

22. Generally, claimants are not entitled to jury trials on claims in a complaint that are integral to or directly affect the allowance of a proof of claim. The Supreme Court stated that in those cases where the claim is filed, "[i]f a creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity." *Langenkamp v. Culp,* 498 U.S. 42, 44, (1990) (citing *Granfinanciera, S.A v. Nordberg,*

92 U.S. 33, 58-59 (1989), (citing *Katchen v. Landy,* 382 U.S. 323, 336 (1966)). However, the general principle should not the end of the analysis of the relevant law.

23.     In this Circuit, a creditor's right to a jury trial depends not only upon whether the claimant filed a proof of claim, but also upon whether the dispute in which it requested a jury trial implicates the claims-allowance process. *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323 (2d Cir. 1993) ("[f]or a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims."). In that case, the Second Circuit distinguished those cases, like the ones involving the Dentons Customers here, where the claims could be adjudicated before and separate from the litigation against the claimant from those cases where the litigation claims must be determined before the claim may be allowed or disallowed.

24.     It follows under Second Circuit law that when the claim has been disallowed outside of the adversary proceeding, the filing of the claim is treated as a nullity and a timely asserted right to a jury trial is preserved. This Court has applied the Second Circuit ruling in two decisions that the Trustee has completely ignored. In *Picard v. Estate of Igoin (In re BLMIS),* 525 B.R. 871, 887-88 (Bankr. S.D.N.Y. 2015), which the Court specifically mentioned to the parties in recent related proceedings, the Court rejected the Trustee's argument that the customers had submitted to the equitable jurisdiction of the Bankruptcy Court by filing the SIPC claim as the claim had been disallowed by the Trustee. The Court stated: "Here, Laurence's and Emilie's customer claims have been finally denied by the Trustee, and the disposition of the adversary proceeding will not affect their disallowed claims. Hence, the adversary proceeding does not implicate the claims allowance process. Instead, the Trustee is seeking legal relief in the form of the recovery of money damages, and Laurence and Emilie did not subject themselves to personal jurisdiction with respect to the Trustee's fraudulent transfer action by filing SIPA claims." *Id*. at 887-88.

25. The Court addressed the issue again in *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,* 531 B.R. 439 (Bankr. S.D.N.Y. 2015) considering the Court's authority to hear and issue final judgments in the adversary proceedings:

> The Court's authority to enter a final judgment depends, therefore, on whether a particular defendant filed a claim that is still subject to allowance or disallowance through the claims allowance process. If the defendant has filed a claim and the Trustee is seeking to disallow the claim under § 502(d) based on the defendant's receipt of a fraudulent transfer, this Court can enter a final judgment on the fraudulent transfer claim. On the other hand, and subject to the possibility of consent discussed in the next paragraph, the Court cannot enter a final judgment against a defendant that never filed a claim because the lawsuit cannot implicate the claims allowance process through § 502(d). Similarly, no § 502(d) disallowance claim would lie against a defendant who filed a claim that has been finally disallowed.

*See also Lehman Bros. Special Fin. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*, 544 B.R. 16 (Bankr. S.D.N.Y. 2015) ("... ANZ Bank's filing of proof of claim number 29532 against LBSF here represents its... submission to the jurisdiction of the Court only with respect to litigation concerning the claims allowance process. As LBSF's adversary proceeding seeks money damages from ANZ Nominees so as to enlarge the estate, and will have no effect [sic] on the allowance or priority of claim number 29532, which was disallowed prior to LBSF commencing proceedings against ANZ Nominees, this adversary proceeding does not concern the claims allowance process. Accordingly, ANZ Bank did not subject itself and its departments to jurisdiction with respect to this adversary proceeding by filing claim number 29532 against LBSF".).

26. Based on Second Circuit case law, the Trustee's conclusion that "By filing the Claims in this proceeding, Claimants have submitted to the equitable jurisdiction of this Court to adjudicate all matters related to their Claims, which includes the Avoidance Actions" (Motion at 14) is factually and legally wrong.

## II. Bankruptcy Rule 3006 Does Not Apply To The Withdrawal Of A SIPA Customer Claim

27. The starting point of the Trustee's Motion is Rule 3006 of the Federal Rules of Bankruptcy Procedure. He assumes that Rule applies to both the withdrawal of the objections to the Trustee's determination of claim and the withdrawal of SIPA claims. The plain language of the Rule refers solely to the withdrawal of the claim, not to any other aspect of a claims process.

28. Moreover, it is not clear that Rule 3006 applies to the withdrawal of a customer claim under S1PA. Although a SIPA customer claim may appear like the functional equivalent of a proof of claim in a chapter 7 or 11, however, the procedure for preparing, filing, adjudication and satisfying, as discussed above, differs in significant respects from the proof of claims in title 11 proceedings. Moreover, the Court's December 23, 2008, order establishing the claims filing and determination procedures in the BLMIS liquidation case makes no reference to the application of the Bankruptcy Rules to objections or the processing of customer claims. Where there are radically different legal requirements, the Rules governing bankruptcy proofs of claim should not apply.

29. The Second Circuit applied this analysis in *In ASM Capital, LP v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.),* 582 F.3d 422 (2d Cir. 2009) in determining whether section 502(d), which disallows claims of a party that has failed to return preferential transfers to the debtor in the case of an unsecured claim, bars payment for administrative expenses under section 503(b). The Court reasoned that the filing of requests for payment of administrative expenses and the allowance thereof were governed by section 503, which is independent from the procedure for filing and allowance of prepetition claims under sections 501 and 502, and differs in significant respects. The Court noted that, among other differences, section 501 allows only "creditors" to file proofs of claims, whereas section 503(a)

- 11 -

provides that any "entity" may file a request for payment of administrative expenses. Section 502 requires notice and a hearing for a prepetition claim only if there is an objection to the claim. However, section 503(b) requires notice and a hearing on all requests for administrative expenses, regardless of whether any objection has been made. With respect to the allowance of claims, sections 502 and 503 are separate and independent. The Court also reasoned that the plain language of section 502(d) appear to apply only in the context of section 502 and not section 503. On that basis, the Court held that section 502(d) was inapplicable.

30.     Similarly, the Bankruptcy Rules requirements for filing a proof of claim and the requirements of SIPA are independent procedures. The Bankruptcy Rules have specific application to "a secured creditor, unsecured creditor or equity security holder" and throughout refer to chapter 7 and chapter 11 events and requirements. The rules prescribe the content of a proof of claim, procedures for filing the claims and objections to them, and the payments on the claims. In contrast, only account holders are entitled to file SIPA customer claims. The form and content of these claims is governed by the account holdings and the Claims Procedure Order. The SIPA claims are not filed or publically available. The claims were denied by a letter of determination.[6] These differences, among many others, support a conclusion that Rule 3006 does not apply in the SIPA case.

### III.   Withdrawal of the Customer Claims and Objection Is Appropriate

31.     Even if Rule 3006 does apply, the withdrawal of objections to the Trustee's determination letters should be permitted because (a) withdrawal of the objection is not withdrawal of the claim, (b) the Trustee cannot show any prejudice as a result of the withdrawal of the objection, and (c) as stated above, the claims are not part of the avoidance litigation.

---

[6] To perpetuate his fiction that the claims have not been finally determined, the Trustee has begun filing omnibus objections to claims based on net equity and the identical analysis followed in the Trustee's letters of determination. The objections demonstrate that claims process is separate from the adversary proceedings and that Second Circuit decisions on net equity and other adjustments was final.

- 12 -

32. The factors for withdrawal of a proof of claim are the same as the factors under Rule 41 of the Federal Rules of Civil Procedure. *See Zagano v. Fordham Univ.*, 900 F.2d 12 (2d Cir. 1990); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 979 (Bankr. S.D.N.Y. 1996). Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Factors relevant to the consideration of a Rule 41 motion depend upon the status of the litigation, including the effort and expense in preparation for trial, and prejudice to the plaintiff. Dismissal should in most instances be granted, unless the result would be to legally harm the defendant. *Sempra Energy Trading Corp. v. Covanta Union, Inc. (In re Ogden N.Y. Servs.),* 312 B.R. 729 (S.D.N.Y. 2004); *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1399 (9th Cir.1995),

33. The Trustee cannot show any legal harm from withdrawal of the claims or objections. In these cases, withdrawal of the customer claims will not affect the Trustee's ability to pursue the claims asserted in the adversarial proceeding, and even if Trustee is ultimately required to try those claims before a jury, that possibility does not constitute legal prejudice. *See 20/20 Sport,* 200 B.R. at 980 (allowing party to withdraw proof of claim to preserve right to jury trial and stating that "legal prejudice is not visited upon [the debtors] because they might have to try their case to a jury rather than the court" (quoting *Hoffmann v. Alside, Inc.,* 596 F.2d 822, 823 (8th Cir. *1979));Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1276 (5th Cir.1990).

## CONCLUSION

Based upon the above, the Dentons Customers respectfully request that the Court deny the Trustee's Motion in its entirety.

Dated: September 7, 2018
New York, New York

Respectfully submitted,

DENTONS US LLP

By: */s/ Carole Neville*
Carole Neville
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
carole.neville@dentons.com

*Attorneys for Customers*