**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com

*Attorneys for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-1789 (SMB) |
| v. | |
| | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**MEMORANDUM OF LAW OF DEFENDANTS REPRESENTED BY CHAITMAN LLP IN OPPOSITION TO THE TRUSTEE'S MOTION TO STRIKE THE NOTICES OF WITHDRAWAL OF CLAIM AND NOTICES OF WITHDRAWAL OF OBJECTION TO DETERMINATION OF CLAIM**

{00037510 2 }

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 5

    I.    The Claims and the Clawback Suits .......................................................... 5

    II.    The Clawback Suits were filed independently of the claims allowance process and involve numerous issues not resolved by the claims allowance process ...................................................... 7

    III.    The Trustee brings no claims against Defendants under § 502(d) and the rejection of Defendants' Claims has no impact on the Clawback Suits ...................................................................... 8

ARGUMENT ........................................................................................................................ 9

    I.    This Court does not have jurisdiction to determine whether Defendants have waived their right to trial by jury ................................. 9

        A.    It is for the District Court to determine whether Defendants have waived their right to trial by jury ............................................. 9

        B.    Defendants are entitled to a jury trial in an Article III Court ......................... 10

        C.    It is the law of this case that the claims allowance process cannot necessarily resolve the Clawback Suits ............................................. 12

        D.    Defendants did not consent to the equitable jurisdiction of the Bankruptcy Court over all matters simply by filing SIPC Claims ...................................................... 13

    II.    The Withdrawals are valid ........................................................................ 14

        A.    Rule 3006 does not apply to withdrawals of objections and the Trustee has not established that Rule 3006 applies in a SIPA proceeding at all ............................................. 15

        B.    Even if Rule 3006 applied, it would not prevent Defendants from unilaterally withdrawing their Objections ............................................. 16

    III.    Defendants satisfy the standard for withdrawal ...................................... 17

A.    A litigant can virtually always dismiss an action with prejudice as a matter of right ........................................................................................ 17

B.    The Withdrawals do not legally prejudice the Trustee .................................. 18

C.    There is a *per se* rule that the Trustee does not suffer legal prejudice by litigating the Clawback Suits in front of a jury .......................... 19

D.    Defendants are not engaged in forum-shopping or gamesmanship and they cannot expand the Scope of Article III.................... 20

E.    The Trustee's citations to § 502(d) are frivolous and the Trustee should be sanctioned ......................................................................... 21

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 20/20 Sport, Inc.*,
   200 B.R. 972 (Bankr. S.D.N.Y. 1996) .............................................................................18, 19

*ACLI Gov't Sec., Inc. v. Rhoades*,
   907 F. Supp. 66 (S.D.N.Y. 1995) ........................................................................................21

*Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*,
   2006 WL 3456521 (S.D.N.Y. Nov. 30, 2006) ...............................................................19, 20

*In re Bernard L. Madoff Inv. Sec. LLC*,
   424 B.R. 122-124 (S.D.N.Y. Bankr. 2010), *aff'd* 654 F.3d 229 (2d Cir.) ...............................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ...................................................................................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
   490 B.R. 46 (S.D.N.Y. 2013) (the *"Consolidated Stern Decision"*) ...............................12, 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
   513 B.R. 437, 440 (S.D.N.Y. 2014) (the *"502(d) Consolidated Decision"*) ...........................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
   525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015) (*"Apfelbaum"*) .................................................3, 12

*In re Bernard L. Madoff Inv. Sec. LLC*, (*"the Net Equity Decision"*),
   424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd,* 654 F.3d 229 (2d Cir. 2011) ........................6, 7

*In re BP RE, L.P.*,
   735 F.3d 279 (5th Cir. 2013) .........................................................................................20, 21

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 (1986) ...........................................................................................................14

*In re Cty. of Orange*,
   203 B.R. 977 (Bankr. C.D. Cal. 1996) .............................................................................10, 20

*Germain v. Connecticut Nat. Bank*,
   988 F.2d 1323  (2d Cir. 1993) .............................................................................................11

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) .........................................................................................................10, 14

*In re Horton*,
149 B.R. 49 (Bankr. S.D.N.Y. 1992) ..................................................................9

*Katchen v. Landy*,
382 U.S. 323 (1966) ........................................................................................12

*Langenkamp v. Culp*,
498 U.S. 42 (1990) ..........................................................................................12

*In re Lehman Bros. Holdings Inc.*,
544 B.R. 16 (Bankr. S.D.N.Y. 2015) .............................................................3, 12

*In re Lowenschuss*,
67 F.3d 1394 (9th Cir. 1995) ..........................................................................15

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) ..............................................................................18

*Nixon Constr. Co. v. Frick Co.*,
45 F.R.D. 387 (S.D.N.Y. 1968) .......................................................................20

*In re Ogden New York Servs., Inc.*,
312 B.R. 729 (S.D.N.Y. 2004) ................................................................9, 19, 20

*Pepper v. United States*,
562 U.S. 476 (2011) ........................................................................................13

*Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*),
773 F.3d 411 (2d Cir. 2014), *cert. denied* 135 S. Ct. 2859 (June 22, 2015)............7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom.* 773 F.3d 411 (2d Cir. 2014)...........2

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
490 B.R. 46 (S.D.N.Y. 2013) ...................................................................4, 9, 11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
499 B.R. 416 (S.D.N.Y. 2013) .........................................................................2

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24 (2012) ..................2, 4, 6, 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
779 F.3d 74 (2d Cir. 2015) ..............................................................................2

*Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*,
2008 WL 4127549 (S.D.N.Y. Sept. 2, 2008) ....................................................19

*Sheridan v. Fox,*
    531 F. Supp. 151 (E.D. Pa. 1982) .......................................................17

*Staten Island Terminal, LLC v. Elberg,*
    2012 WL 1887126 (E.D.N.Y. May 23, 2012) ................................17, 18

*Stern v. Marshall,*
    564 U.S. 462 (2011).......................................................... *passim*

*Templeton v. Nedlloyd Lines,*
    901 F.2d 1273 (5th Cir. 1990) .........................................................20

*Thomas v. Union Carbide Agr. Prod. Co.,*
    473 U.S. 568 (1985)........................................................................14

*In re: Upd Glob. Res., Inc.,*
    2016 WL 3964362 (S.D. Tex. July 21, 2016)..................................17

*In re Whispering Pines Estates, Inc.,*
    369 B.R. 752 (B.A.P. 1st Cir. 2007) ..............................................10

*Zagano v. Fordham Univ.,*
    900 F.2d 12 (2d Cir.), *cert. denied,* 498 U.S. 899 (1990) ..............18

**Statutes**

11 U.S.C. § 502(d) ........................................................................ *passim*

11 U.S.C. § 546(e) ................................................................................7

15 U.S.C. § 78aaa *et seq.* ............................................................ *passim*

15 U.S.C. § 78fff–2(a)(2)......................................................................5

15 U.S.C. § 78fff-3 ............................................................................19

28 U.S.C. § 1927................................................................................21

**Other Authorities**

Fed. R. Bankr. P. 3006.............................................................3, 14, 15, 16

Fed. R. Bankr. P. 5011(a), Advisory Cmt. Notes (1987).......................9

Fed. R. Civ. P. 8 ....................................................................................8

Fed. R. Civ. P. 41(a)(2)...................................................................17, 20

U.S. Const., Art. I ................................................................................14

U.S. Const., Art. III ........................................................................................................1, 10, 14, 20

Wright & Miller, Federal Practice & Procedure, § 2367 ...............................................................17

Defendants represented by Chaitman LLP in 36 clawback suits (the "Clawback Suits"),
including the defendants in three separate clawback suits pending in the District Court (altogether
"Defendants"),[1] respectfully submit this memorandum of law in opposition to the Trustee's Motion
to Strike Notices of Withdrawal of Claim and Objections to the Trustee's Determination of Claims
(the "Motion"), ECF Nos. 17864-66, 17890-91.

## PRELIMINARY STATEMENT

The Motion is an unseemly attempt to forum shop and to circumvent the strictures of
Article III of the United States Constitution as construed by the Supreme Court, the Second Circuit,
the District Court, and this Court.  Defendants are entitled to trial by jury under the Seventh
Amendment to the Constitution, and this Court has no power to deprive them of this constitutional
right.  The Motion originally concerned only the cases of the Nelsons and Saren-Lawrence, which
are pending in the District Court before Judge Daniels.  *See* ECF Nos. 17864-66.  Indeed, the
precise issues the Trustee wants this Court to determine are *sub judice* before Judge Daniels.  Two
days before our opposition papers were due on the Motion, the Trustee filed a "Supplement" to
the Motion seeking to add all of the other Defendants represented by Chaitman LLP who have
filed withdrawals of their Objections to the Trustee's Determination of their Claims (the
"Objections" and the "Withdrawals").  *See* ECF Nos. 17890-91.[2]

While the Clawback Suits raise a myriad of issues that are not implicated by the claims
allowance process, with respect to all Defendants, there are no pending issues in the claims

---

[1]  Three of the 36 Clawback Suits are pending before Judge Daniels. *Picard v. Helene Saren-Lawrence*, Adv. Pro. No. 10-04898 (SMB), No. 17-cv-05157 (GBD); *Picard v. Carol Nelson*, Adv. Pro No. 10-04658 (SMB), No. 17-cv-05162 (GBD); *Picard v. Carol Nelson and Stanley Nelson*, Adv. Pro No. 10-04377 (SMB), No. 17-cv-05163 (GBD).  Defendants in an additional 33 cases are listed on the Trustee's Supplement to the Motion.  *See* ECF No. 17890 at 2-3.

[2]  ECF citations without a docket number are to Adv. Pro. No. 08-0178 (SMB).

allowance process.  Defendants' Objections were based upon the Trustee's methodology for

calculating Net Equity and they have been resolved against them; all ancillary issues arising from

the Trustee's selection of the net investment method for calculating Net Equity have been fully

and finally resolved, such as those involving the interplay between the Trustee's net investment

method and state and national pension laws.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, 654 F.3d 229, 242 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24, 25 (2012) (the "*Net Equity*

*Decision*"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 729

(S.D.N.Y. 2012), *aff'd sub nom.* 773 F.3d 411 (2d Cir. 2014) (holding that transfers from IRA

accounts are not exempt from avoidance); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, 779 F.3d 74, 78 (2d Cir. 2015) (the "*Time-Based Damages Decision*"); *Sec. Inv'r Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 420 (S.D.N.Y. 2013) (the "*Antecedent Debt*

*Decision*").

Thus, there are no issues raised by Defendants' Objections which have not already been

determined by final decisions of the Second Circuit or the District Court.  Indeed, this Court has

routinely entered orders formally expunging claims where the objections to the Trustee's

determination included the same objections asserted by Defendants.  *See, e.g.,* Trustee's Twentieth

Omnibus Motion to Disallow Claims and Overrule Objections of Claimants who have No Net

Equity, ECF Nos. 17905-11 (filed August 22, 2018) (where the Trustee argues that the issues

raised by the customers have been fully and finally determined).

Nonetheless, the Trustee argues that, because the Trustee has chosen not to submit an order

to this Court overruling Defendants' Objections, the Trustee has the power to deny Defendants

their right to trial by jury.  Contrary to the Trustee's arguments, Defendants have an absolute right

to withdraw their SIPC claims and Objections with prejudice, as they have done, and there is no

authority to the contrary cited by the Trustee – neither in the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, ("SIPA"), nor under any reported decision. In the absence of any authority on point, the Trustee cites cases where litigants sought to withdraw a *complaint* in non-SIPC proceedings **without** prejudice (and presumably refile the complaint in another jurisdiction). Those cases are easily distinguishable because here the Withdrawals are **with** prejudice.

The Trustee argues that Bankruptcy Rule 3006 applies to the Withdrawals of Defendants' ***Objections*** even though the Rule speaks only of the withdrawal of ***claims***. While the Trustee argues that he will be prejudiced if he has to try his cases before a jury, this does not constitute legal prejudice.

Indeed, this Court has already held, as it was bound to do, that the submission of a creditor to personal jurisdiction of this Court is limited to litigation concerning the claims allowance process. *See In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015) ("*Apfelbaum*") (Bernstein, J.) ("Laurence's and Emilie's customer claims have been finally denied by the Trustee, and the disposition of the adversary proceeding will not affect their disallowed claims. Hence, the adversary proceeding does not implicate the claims allowance process."); *In re Lehman Bros. Holdings Inc.*, 544 B.R. 16, 35-36 (Bankr. S.D.N.Y. 2015) (citing *Apfelbaum* with approval and holding that the claims allowance process was not in any way implicated by an adversary proceeding when the creditor's claim had already been disallowed). Here, there is no issue pending in the claims allowance process and, even if there were, the issues raised by the Clawback Suits have nothing to do with the claims allowance process.

There is only one circumstance where a defendant in an adversary proceeding could conceivably waive its right to a jury trial by filing a SIPC claim. That one circumstance, which is not present here, is where the defendant has a valid SIPC claim on which the Trustee is withholding

payment because the Trustee asserts a fraudulent transfer claim against the same defendant.  In

that situation, the Trustee's complaint in the clawback suit would include a claim under 11 U.S.C.

§ 502(d), which allows the Trustee to withhold payment on a claim until the defendant satisfies an

allegedly offsetting claim owed to the estate.  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, (the "*Consolidated Stern Decision*"), 490 B.R. 46, 54 (S.D.N.Y. 2013) (Rakoff, J.).

Here, the Trustee has not asserted claims under Section 502(d) and there is no claims allowance

process left in the Bankruptcy Court.  Thus, there is no "process of adjudicating . . . [a creditor's]

proof of claim [that] would necessarily resolve" the Clawback Actions.  *Stern v. Marshall*, 564

U.S. 462, 497 (2011).

The Trustee opposed Defendants' motions to withdraw the reference in the District Court

by making many of the same arguments that he makes here.  Specifically, the Trustee repeatedly

argued that Defendants' claims were pending in the Bankruptcy Court and they cannot be fully

and finally adjudicated until the Clawback Suits are adjudicated.[3]  However, the claims were

decided against Defendants in the *Net Equity Decision* several years ago, and the resolution of the

claims does not depend at all upon a resolution of the Clawback Suits.  Certainly, the Trustee has

never taken the position that a defendant who prevails in a clawback suit is entitled to his full SIPC

claim.

In order to avoid any further wasteful litigation on this issue, the Defendants in the Nelson

and Saren-Lawrence cases filed their Withdrawals of Claim on June 18, 2018.  *See* ECF Nos.

17682-64.  Those Defendants filed their Withdrawals of Objections on June 27, 2018.  ECF Nos.

17732-34.  The other 33 Defendants filed Withdrawals of Objections on July 27, 2018.  *See* ECF

---

[3]  *See, e.g.*, Trustee's Memorandum of Law, *Picard v. Helene Saren-Lawrence*, Adv. Pro. No. 10-04898 (SMB), No. 17-cv-05157 (GBD), ECF No. 24 at 1-2, 4, 6, 7-13, 19-20.

Nos. 17827-45, 17847-60, 17863.  The Withdrawals were filed in order to make clear that, despite

the Trustee's false argument to the contrary, Defendants understand that their SIPC claims have

been fully and finally resolved against them.  Defendants have now clearly and unequivocally

withdrawn their claims and Objections, with prejudice.  Under the United States Constitution,

Defendants are entitled to trial by jury.

## STATEMENT OF FACTS

I. **The Claims and the Clawback Suits**

In a liquidation proceeding brought under SIPA, customers of the debtor can file claims to

recover their "net equities."  Upon application by the Trustee, Judge Burton R. Lifland entered the

Claims Procedures Order on December 23, 2008.  ECF No. 12.  Under the Claims Procedures

Order, any customer seeking SIPC insurance had to file a SIPC claim in the Bankruptcy Court.

*See* ECF No. 12 at 3; 15 U.S.C.  § 78fff-2(a)(2).  Neither the Claims Procedures Order, nor any

provision of SIPA, indicates that the filing of a SIPC claim constitutes a waiver of the right to trial

by jury in a fraudulent transfer action.  *See* Claims Procedures Order, ECF No. 12; *id.* at 3; 15

U.S.C. § 78fff-2(a)(2)).

In July 2009, Defendants filed SIPC claims in the Bankruptcy Court.  On or about October

19, 2009, the Trustee issued determination letters denying the Claims (the "Determination

Letters").  *See, e.g.*, ECF Nos. 612, Ex. A; 646, Ex. A; 647, Ex. A; 648, Ex. A, attached as exhibits

B-E to the September 7, 2018 Declaration of Helen Davis Chaitman ("Chaitman Decl.").[4]  In the

Determination Letters, the Trustee netted out Defendants' deposits and withdrawals over the life

of each account and disallowed the Claims pursuant to the net investment method.  *See, e.g.*,

---

[4] These Determination Letters relate to the accounts held by Saren-Lawrence and the Nelsons.

Chaitman Decl., Exs. B-E. The Determination Letters **in no way** indicated that the Claims were

being denied pursuant to § 502(d) and § 502(d) is not in any way applicable to Defendants.

In November 2009, Defendants filed Objections to the Trustee's Determination Letters on

the basis that their Net Equity should be defined based on the Last Statement Method, as expressly

required under SIPA.  *See e.g.,* Defendants' Objection Letters, ECF Nos. 612, 646, 647, 648,

attached as Exhibits B-E to the Chaitman Decl.  In other words, Defendants' Objections were

based on the Trustee's *methodology* for calculating Net Equity.  Had Defendants not filed

Objections, then the Trustee's Determination Letters would have become final, binding, and

unappealable.  *See, e.g.,* Trustee's Determination Letters, Chaitman Decl. Exs. B-E.

Pursuant to the Bankruptcy Court's "Order Scheduling Adjudication of 'Net Equity'

Issue," entered on September 16, 2009, (the "Scheduling Order"), ECF No. 437, the Bankruptcy

Court set a hearing date of February 2, 2010 "to address whether Net Equity, as defined by SIPA,

is calculated using the Net Investment Method or Last Statement Method." *The Net Equity*

*Decision*, 424 B.R. 122, 126 (Bankr. S.D.N.Y. 2010), *aff'd,* 654 F.3d 229 (2d Cir. 2011).  Pursuant

to the Scheduling Order and the Claims Procedures Order, the Trustee made a motion in the

Bankruptcy Court, which Defendants opposed, seeking an order: (1) upholding the Trustee's

determination denying customer claims based on the Last Statement Method; (2) affirming the

Trustee's determination of Net Equity based on the net investment method; and (3) expunging

objections to the Trustee's determinations of Net Equity claims filed by a certain group of

claimants. *See In re Bernard L. Madoff Inv. Sec. LLC*, (the "*Net Equity Decision*"), 424 B.R. 122-

124, 143 (S.D.N.Y. Bankr. 2010) (Lifland, J.), *aff'd* 654 F.3d 229, 242 (2d Cir.).  Defendants

participated in the *Net Equity Decision*.  Appendix 1 to the *Net Equity Decision*, listing objecting

claimants, ECF No. 1999 (March 1, 2010); *see also* Certification of Helen Davis Chaitman in

Opposition to the Trustee's Motion for an Order Approving the Trustee's Re-Definition of "Net

Equity" Under SIPA, Adv. Pro. No. 08-01789, ECF No. 761-0, 761-1 (Nov. 13, 2009).

On March 8, 2010 Judge Lifland entered an Order immediately certifying an appeal of the

*Net Equity Decision* to the Second Circuit pursuant to 28 U.S.C. § 158(d)(2).  *See* Adv. Pro. No.

08-01789, ECF No. No. 2022.  On August 16, 2011, the Second Circuit affirmed Judge Lifland's

decision in its entirety.  *See Net Equity Decision*, 654 F.3d 229, 242 (2d Cir. 2011), *cert. denied*,

133 S. Ct. 24, 25 (2012) (the "*Net Equity Decision*"); *see also* Notice of Appeal to the Second

Circuit in the *Net Equity Decision*, ECF No. 2048-0, ECF No. 2048-1 (March 19, 2010).  The

Supreme Court denied *certiorari*.  133 S. Ct. 24, 25 (2012).  Thus, Defendants' Objections were

fully and finally resolved in the *Net Equity Decision*.  To the extent there were ancillary

proceedings arising from the *Net Equity Decision*, all of those proceedings have also been resolved.

## II.    **The Clawback Suits were filed independently of the claims allowance process and involve numerous issues not resolved by the claims allowance process**

In December 2010, the Trustee filed the Clawback Suits.  The Trustee sued to recover the

withdrawals that Defendants took out of their accounts in the six-year period prior to Madoff's

confession, *see, e.g.*, Complaint, Adv. Pro. No. 10-04658, ECF No. 1 ¶ 3; *id.*, Ex. B,  but the

Trustee's claims have been limited to withdrawals in the last two years pursuant to 11 U.S.C. §

546(e).  *See Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 423 (2d Cir.

2014), *cert. denied* 135 S. Ct. 2859 (June 22, 2015).  The reduction of the clawback period to two

years was one of a myriad of issues raised by the Clawback Suits that has nothing whatsoever to

do with the claims allowance process.

Defendants have asserted numerous affirmative defenses and denials in their Answers,

none of which was resolved, or could have been resolved, in the claims allowance process.  These

include, *inter alia:*  (1) whether Madoff operated a Ponzi scheme and, if so, for what time period;

(2) whether the "Ponzi scheme" presumption can be used to claw back funds from innocent customers who were creditors of a failed broker-dealer who held securities shown on the customers' statements; (3) whether Madoff had a right, as a market maker, to sell unlimited short positions; (4) whether the alleged transfers to Defendants were made by BLMIS, of which Picard is the Trustee; (5) whether Madoff actually purchased the securities shown on the customers' statements; (6) whether Defendants can be held liable for withdrawals from their account that were used to pay taxes on the profits that Madoff claimed the accounts earned.  *See, e.g.*, Amended Answer, *Picard v. Saren-Lawrence*, Adv. Pro. No. 10-04898, ECF No. 30, affirmative defenses Nos. 11, 12, 16-18, 20, 23, 24, 29-30, 33-35, 37.

## III.    The Trustee brings no claims against Defendants under § 502(d) and the rejection of Defendants' Claims has no impact on the Clawback Suits

Section 502(d) of the Bankruptcy Code allows the Trustee to disallow valid customer claims if the customer is the recipient of estate property that is subject to the clawback provisions of the Bankruptcy Code.  In many clawback suits, the Trustee asserted claims under § 502(d), as he must in order to invoke that provision of the Bankruptcy Code.  *See, e.g.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437, 440 (S.D.N.Y. 2014) (the "*502(d) Consolidated Decision"*) ("In addition to asserting avoidance and recovery claims, the Trustee included a count for 'disallowance of customer claims' pursuant to section 502(d)."); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 239 (Bankr. S.D.N.Y. 2011) (evaluating motion to dismiss Trustee's claims under § 502(d) based on whether they met the Fed. R. Civ. P. 8 pleading standard). However, Defendants did not have any allowed claims and the Trustee did not assert § 502(d) claims against Defendants.  Thus, § 502(d) is irrelevant to these cases.

In fact, the Trustee's Complaints in the Clawback Suits expressly state:  "The Claims Procedures Order includes a process for determination and allowance of claims under which the

Trustee has been operating.   The Trustee intends to resolve the Customer Claim and Claims

Objection to the Trustee's determination of such claim through a separate hearing as contemplated

the Claims Procedures Order."  Complaint, ¶ 45, *Picard v Carol Nelson and Stanley Nelson*, No.

10-04377 (Bankr. S.D.N.Y.) (ECF No. 1-5).  That separate hearing has long concluded, resulting

in the denial of the Claims.  To avoid any doubt, Defendants filed the Withdrawals.

## ARGUMENT

I.   **This Court does not have jurisdiction to determine whether Defendants have waived their right to trial by jury**

   A.   It is for the District Court to determine whether Defendants have waived their right to trial by jury

The Trustee asks this Court to hold that Defendants have waived their right to trial by jury,

arguing that it is within the equitable jurisdiction of the Bankruptcy Court to decide this issue.

However, that issue has already been decided by Judge Rakoff, *Consolidated Stern Decision*, 490

B.R. 46, and that issue is currently before the District Court, which has exclusive jurisdiction to

decide it.   *See* Federal Rule of Bankruptcy Procedure 5011(a) ("Withdrawal.   A Motion for

withdrawal of a case or proceeding shall be heard by a district judge."); Federal Rule of Bankruptcy

Procedure 5011(a), Advisory Committee Notes (1987) ("Subdivision (a) of this rule makes it clear

that the bankruptcy judge will not conduct hearings on a withdrawal motion. The withdrawal

decision is committed exclusively to the district court."); *In re Horton*, 149 B.R. 49, 61 (Bankr.

S.D.N.Y. 1992) ("Dependable has also included in its cross-motion a request that this court

recommend withdrawal of the reference under 28 U.S.C. § 157(d) . . . . The court denies this relief

because a motion for withdrawal of the reference is properly brought before a district court judge

pursuant to Federal Rule of Bankruptcy Procedure 5011(a)."); *In re Ogden New York Servs., Inc.*,

312 B.R. 729, 733 (S.D.N.Y. 2004) ("Any dispute over Sempra's right to a jury trial can be

addressed in connection with a motion to withdraw the reference or at some later time when the

case is closer to trial.  For this motion, the issue is whether Covanta will be prejudiced by the

withdrawal, and there is no evidence that it would be."); *see also In re Cty. of Orange*, 203 B.R.

977, 982 (Bankr. C.D. Cal. 1996) ("The only issue that remains is whether McGraw waived its

right to a jury trial on the Counterclaims.  I leave this matter for the District Court to decide,

because it ultimately will have to try this case.  However, the waiver argument does not prevent

this court from ruling on the Motion [to withdraw]."); *cf. In re Whispering Pines Estates, Inc.*, 369

B.R. 752, 759 (B.A.P. 1st Cir. 2007) (Bankruptcy Court should not rule on matters "closely

related" to those being determined in a higher court).  However, should the Court reach the

question, for the reasons set forth below, Defendants have not waived their right to trial by jury in

the Clawback Suits.

## B.    Defendants are entitled to a jury trial in an Article III Court

Article III of the Constitution mandates that "[t]he judicial Power of the United States, shall

be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time

ordain and establish."  U.S. Const., Art. III, Section 1.  The judicial power cannot be conferred

outside of Article III.  *See, e.g.*, *Stern*, 564 U.S. at 482-84.  When a suit is an action at law, and is

brought in federal court, "the responsibility for deciding that suit rests with Article III judges in

Article III courts."  *Id.* at 484.  The Clawback Suits are actions at law to which the Seventh

Amendment has always secured a right to trial by jury in an Article III Court.  *See, e.g.*,

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989).

The Trustee argues that an exception to these constitutional principles now applies because,

by filing their Claims in the Bankruptcy Court, Defendants have consented to the equitable

jurisdiction of the Bankruptcy Court over all matters relating to their claims.  And according to the

Trustee, the Clawback Suits are related to their claims.  But the filing of a claim in the Bankruptcy

Court constitutes consent to the equitable jurisdiction of the Bankruptcy Court only over those

disputes that are "vital" to the bankruptcy process. *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329-30 (2d Cir. 1993) (creditor's filing of a proof of claim only supplies the Bankruptcy Court with jurisdiction to adjudicate avoidance actions that are "vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy" and courts cannot "presume that the same creditor . . . has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process").

In this SIPA proceeding specifically, Judge Rakoff explained that in "only one circumstance could the Bankruptcy Court conceivably resolve an avoidance action in the process of deciding a claim over which it has jurisdiction." *See Consolidated Stern Decision*, 490 B.R. at 54. That one circumstance is not even remotely implicated by these cases. The one circumstance where a jury waiver could conceivably occur would be only if the following conditions were met: (a) the Trustee would have allowed at least one claim filed by a claimant; (b) the Trustee would have filed a fraudulent transfer action against that claimant and asserted a claim under § 502(d) to disallow the claimant's allowed claim until the Trustee's fraudulent transfer claims are resolved; (c) the claimant would need to have at least one pending claim in the Bankruptcy Court; and (d) resolution of the claimant's claim in the Bankruptcy Court must necessarily resolve the Trustee's fraudulent transfer action. *See, e.g.*, *Consolidated Stern Decision*, 490 B.R. 54. Here, these conditions are not met: the Trustee does not assert claims against Defendants on the basis of § 502(d); Defendants do not have any claims that the Trustee has allowed; Defendants' claims are not pending; and, even if Defendants' claims were pending, their adjudication would not resolve these Clawback Suits at all. Thus, Defendants have not consented to the equitable jurisdiction of the Bankruptcy Court over all matters relating to their claims.

C. It is the law of this case that the claims allowance process cannot necessarily resolve the Clawback Suits

Defendants' Claims were denied nearly a decade ago. Thus, there is nothing left for this Court to rule upon and there is no basis to say that this Court has jurisdiction to resolve the Clawback Suits. *See Apfelbaum*, 525 B.R. at 888 ("Laurence's and Emilie's customer claims have been finally denied by the Trustee, and the disposition of the adversary proceeding will not affect their disallowed claims. Hence, the adversary proceeding does not implicate the claims allowance process."); *In re Lehman Bros. Holdings Inc.*, 544 B.R. at 35-36 (citing *Apfelbaum* approvingly and holding that the claims allowance process was not in any way implicated by an adversary proceeding when the creditor's claim had been disallowed).

This was explained in *Stern v. Marshall*, where the Supreme Court held that the filing of a proof of claim could subject a creditor to the Bankruptcy Court's jurisdiction only if there was "reason to believe that the process of adjudicating . . . [a creditor's] proof of claim would **necessarily** resolve" claims against the creditor. 564 U.S. at 497 (emphasis added); *id*. at 495-96 (distinguishing *Katchen v. Landy*, 382 U.S. 323 (1966), and *Langenkamp v. Culp*, 498 U.S. 42 (1990), on that basis). The rationale for permitting adjudication of such claims is that this "prevents the existence of identical issues from eroding the Bankruptcy Court's jurisdiction over claims that Congress has appropriately empowered it to resolve." *Consolidated Stern Decision*, 490 B.R. at 54. In other words, if the Bankruptcy Court already has jurisdiction of a claim whose resolution will resolve **all** issues in a fraudulent transfer action, then the Bankruptcy Court's determination of the claim would be *res judicata* in the district court. *Consolidated Stern Decision*, 490 B.R. at 54. That is obviously not the case here.

Defendants' rejected SIPC claims resolved nothing other than the Trustee's unique methodology for determining each customer's Net Equity under SIPA. Thus, the claims allowance

process could not possibly have resolved any of the claims and affirmative defenses asserted in the Clawback Suits. Judge Rakoff recognized this in the *Consolidated Stern Decision*, writing: "[d]etermining the amounts of customers' net equity claims does not require the Bankruptcy Court to conclusively resolve any of the issues that arise in an avoidance action, much less the action in its entirety." 490 B.R. at 54. Further, he explained: "[i]n liquidation proceedings, the Bankruptcy Court has rejected many customer claims simply because the customer, according to the Trustee's calculations, had no net equity." *Id.*

Judge Rakoff recognized that the Trustee's selection of the Net Investment Method for calculating Net Equity and the customers' entitlement to SIPC insurance "have not resolved important issues that avoidance actions raise, and thus they have not bound the parties as *res judicata.*" *Id.* Thus, there is "no 'reason to believe that the process of adjudicating' net equity claims 'would necessarily resolve' the Trustee's avoidance actions." *Id.* (quoting *Stern*, 564 U.S. at 497). The Trustee and the Defendants were participants in the *Consolidated Stern Decision*. Thus, that decision is binding and is the law of the case here. *Pepper v. United States*, 562 U.S. 476, 506 (2011) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

### D. Defendants did not consent to the equitable jurisdiction of the Bankruptcy Court over all matters simply by filing SIPC Claims

Defendants did not knowingly or voluntarily consent to equitable jurisdiction over all matters relating to their claims simply by filing a proof of claim in the only forum available for them to do so. No customer could have foreseen that SIPC would take a statute designed to **protect** customers and interpret it in a manner to **deny** SIPC insurance and then, after many of those customers lost their life savings through no fault of their own, the Trustee would take the unprecedented action of suing those customers for alleged fraudulent transfers.

As the Supreme Court has recognized, Defendants' constitutional rights cannot be waived in this manner. *See Stern*, 564 U.S. at 493 (a creditor does not consent to final adjudication of a debtor's common law counterclaim merely by filing a proof of claim, because such a creditor "ha[s] nowhere else to go if he wishe[s] to recover from [the debtor's] estate") (alterations in original) (citing *Granfinanciera,* 492 U.S. at 59, n.14); *id.*, n.8 ("That is why . . . the notion of 'consent' does not apply in bankruptcy proceedings as it might in other contexts."); *Granfinanciera*, 492 U.S. at 59, n.14 (distinguishing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986), on the ground that, in that case, the investors waived their right to have state-law counterclaims against them adjudicated in an Article III court because they elected to "use the speedier, alternative procedures Congress had created" by filing complaints in a CFTC reparations proceeding); *Germain*, 988 F.2d at 1330 ("We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process."); *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 589 (1985) (adjudication over Article III disputes in an Article I court can only be constitutional with consent).

By simply submitting their Claims in the only forum available to do so, Defendants did not consent to the adjudication of any dispute between them and the Trustee in the Bankruptcy Court.

## II.   <u>The Withdrawals are valid</u>

The Trustee argues that the Withdrawals **of Objections** are invalid because Federal Rule of Bankruptcy Procedure 3006 requires that Withdrawals **of claims** be entered only by stipulation or with leave of court. This argument should be rejected.

A. Rule 3006 does not apply to withdrawals of objections and the Trustee has not established
that Rule 3006 applies in a SIPA proceeding at all

Rule 3006 speaks only of withdrawals of claims and it provides no basis to argue that

Claimants need court approval to withdraw their ***Objections to the Trustee's determinations***.

Bankruptcy Rule 3006 speaks only of withdrawals of claims; it does not impose any restrictions

on withdrawals of objections.  Thus, there is no basis to argue that Defendants have not properly

withdrawn their Objections.  By withdrawing their Objections, the Trustee's determination of their

claims is unopposed and finally decided.

Moreover, it is not even clear that Bankruptcy Rule 3006 applies in a SIPA liquidation.

The Trustee assumes that Bankruptcy Rule 3006 applies in a SIPA proceeding, but the Trustee

does not cite any authority for this.  *See* Trustee's Mem. at 16-17, ECF No. 17864.  It should not

be lightly assumed that Rule 3006 applies in a SIPA liquidation; Rule 3006 imposes certain

restrictions on a litigant's right to withdraw claims without leave of court primarily because it

contemplates that a litigant may seek to bring those claims in another forum, after withdrawing

them **without prejudice**.  *Cf. In re Lowenschuss*, 67 F.3d 1394, 1399-400 (9th Cir. 1995) (it is

taken as a given that a litigant will suffer *de facto* prejudice but not *de jure* prejudice by without-

prejudice dismissal of other litigant's claim because there exists the prospect of a second lawsuit).

Since a SIPC claim can only be filed in the Bankruptcy Court, there is no possibility that a trustee

would be prejudiced by that SIPC claim being dismissed without prejudice because it cannot later

be filed against the Trustee in another forum.  Thus, there is no reason to require stipulation or a

court order.  The Trustee has not cited a single case holding that Bankruptcy Rule 3006 applies in

a SIPC proceeding.

B. **Even if Rule 3006 applied, it would not prevent Defendants from unilaterally withdrawing their Objections**

The Trustee argues that Defendants may only withdraw their claims by court order or stipulation under Bankruptcy Rule 3006 because the Trustee commenced the Clawback Suits against Defendants after they filed their claims.  Trustee's Mem. at 15, ECF No. 17864.  However, the Complaints in the Clawback Suits expressly state that "[t]he Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. **The Trustee intends to resolve the Customer Claim and Claims Objection to the Trustee's determination of such claim through a separate hearing as contemplated the Claims Procedures Order."** *See, e.g.*, Complaint, ¶ 45, *Picard v. Carol Nelson and Stanley Nelson*, Adv. Pro. No. 10-04377 (Bankr. S.D.N.Y.), ECF No. 1-5, (emphasis added).  The Trustee is bound by the statement he put into the Complaints.

The Trustee also argues that Defendants may only withdraw their claims by court order or stipulation under Rule 3006 because Defendants have "'participated significantly in the case" and seek "dismissal late in the litigation."  Trustee's Mem. at 17, ECF No. 17864 (citation omitted).  But the Trustee inappropriately refers to Defendants' "participation" in the *Clawback Suits* to make this argument.  *See* Trustee's Mem. at 18-19, ECF No. 17864; *see id*. at 19 (referring to "exhaustive discovery" in the Clawback Suits).  "Participation" in the Clawback Suits is irrelevant for purposes of considering whether Defendants can withdraw their claims which have been fully and finally determined.  Similarly, it is not relevant whether the Trustee "served Rule 45 subpoenas on banks in possession of Defendants' financial information" in the Clawback Suits.  Indeed, the Trustee's conduct cannot deprive Defendants of their Seventh Amendment rights.  *See* Trustee's Mem. at 19, ECF No. 17864.

Additionally, the Trustee's argument about "active participation" relies on citations to cases only where *without*-prejudice dismissals were sought. *See* Trustee's Mem. at 16, ECF No. 17864. The Trustee has not cited a single case where leave of court was required to dismiss a bankruptcy claim *with* prejudice on the basis that the claimant actively participated in the bankruptcy case. Litigations are dismissed with prejudice at a late stage all the time: this is what happens upon a motion for summary judgment or at trial.

## III.    Defendants satisfy the standard for withdrawal

### A. A litigant can virtually always dismiss an action with prejudice as a matter of right

The Trustee engages in arguments about whether the Trustee would suffer "legal prejudice" based on the Withdrawals, but the Trustee only cites authorities concerning withdrawals of claims *without* prejudice. Here, Defendants have withdrawn their claims *with prejudice* and the Trustee can have no legitimate objection to their doing so – his only objection is to try to manipulate the situation to deprive Defendants of their right to trial by jury, despite Judge Rakoff's holding, in these cases, that Defendants have a right to trial by jury. *See* Wright & Miller, Federal Practice & Procedure, § 2367 ("If the plaintiff moves for an order under Rule 41(a)(2) for voluntary dismissal, specifically requesting that the dismissal be with prejudice, it has been held that the district court must grant that request."); *In re: Upd Glob. Res., Inc.*, 2016 WL 3964362, at *23 (S.D. Tex. July 21, 2016) ("While courts have generally held that dismissals without prejudice should be granted if no prejudicial effects would result for the opposing party, where a claimant seeks a voluntary dismissal with prejudice courts generally take a different view."); *Sheridan v. Fox*, 531 F. Supp. 151, 155 (E.D. Pa. 1982) ("Indeed, if dismissal with prejudice would dispose entirely of a case, it may always be an abuse of discretion to deny dismissal."); *Staten Island Terminal, LLC v. Elberg*, 2012 WL 1887126, at *2 (E.D.N.Y. May 23, 2012) ("[C]ourts in this circuit presume that a party's motion to dismiss its own claims without prejudice should be

granted.").  Here, the fact that the Withdrawals are with prejudice eviscerates the Trustee's claim

of legal prejudice.

### B.  The Withdrawals do not legally prejudice the Trustee

If Defendants sought dismissal without prejudice, then the Trustee's arguments about legal

prejudice might be relevant.  The factors relevant to whether dismissal would cause legal prejudice

include: (a) the plaintiff's diligence in bringing the motion; (b) any "undue vexatiousness" on

plaintiff's part; (c) the extent to which suit has progressed, including the defendant's effort and

expense in preparation for trial; (d) the duplicative expense of relitigation; and (e) the adequacy of

plaintiff's explanation for the need to dismiss.  *Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (2d

Cir.), *cert. denied,* 498 U.S. 899 (1990).  In ruling on such a motion, the court's discretion is to be

exercised with due regard to the legitimate interests of both the plaintiff and the defendant.  *In re

20/20 Sport, Inc.*, 200 B.R. 972, 979-80 (Bankr. S.D.N.Y. 1996).  "Dismissal should in most

instances be granted, unless the result would be to legally harm the defendant."  *Id.*

Here, the Trustee cannot establish legal prejudice.  By obtaining a dismissal with prejudice,

the Trustee achieves his overriding goal of the claims allowance process: to deny the Claims.  *See

Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986) ("A dismissal with prejudice has the effect of

a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff

upon the same cause of action.").  Thus, the Trustee is not prejudiced.

The additional *Zagano* factors undermine any claims of legal prejudice.  Defendants

promptly took steps to withdraw the Claims and Objections once it was obvious that the Trustee

had misled Judge Daniels into believing that the Claims would in any way impact the adversary

proceedings.  *See Staten Island Terminal, LLC*, 2012 WL 1887126, at *3 ("[M]easure of diligence

is whether a plaintiff moves to dismiss the complaint expediently after the event that has led

plaintiff to no longer pursue the action").  Similarly, Defendants are not "unduly vexatious" in

withdrawing their Claims: they just want to secure their Constitutional rights.  *See Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, 2008 WL 4127549 (S.D.N.Y. Sept. 2, 2008) (vexatiousness requires an "ill motive").

The progress of the suit is an irrelevant factor where, as here, the Objections have been fully determined by decisions of the Second Circuit and the District Court.  Moreover, to the extent the Trustee argues that this factor counsels against withdrawal, then this means that the Trustee has failed to comply with his statutory duty to "provide for prompt payment and satisfaction of net equity claims of customers."  15 U.S.C. § 78fff-3.  Obviously, it is absurd for the Trustee to argue that the Claims can somehow still be decided in Defendants' favor.  As for the last two factors, there is no duplicative expense of litigation because the dismissal is with prejudice, and Defendants' reason for withdrawals of their claims and Objections is legitimate – to preserve their Constitutional right to trial by jury.  *In re Ogden New York Servs., Inc.*, 312 B.R. at 734 ("Sempra . . . has a legitimate interest in seeking withdrawal to preserve its Seventh Amendment right . . . ."); *see also Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, 2006 WL 3456521, at *7 (S.D.N.Y. Nov. 30, 2006) (litigant must only offer a "reasonable" reason for seeking dismissal).

C.   There is a *per se* rule that the Trustee does not suffer legal prejudice by litigating the Clawback Suits in front of a jury

The Trustee's argument boils down to one simple fact: he wants to try these cases before this Court rather than before a jury.  But that issue was decided when the United States Constitution was drafted and this Court is powerless to change the Constitution.  Obviously, adherence to the United States Constitution does not cause the Trustee "legal prejudice."  *See In re 20/20 Sport, Inc.*, 200 B.R. at 980 ("'[L]egal prejudice is not visited upon [defendants] because they might have to try their case to a jury rather than to the court.'") (quoting *Hoffmann v. Alside, Inc.*, 596 F.2d

822, 823 (8th Cir. 1979)); *In re Ogden New York Servs., Inc.*, 312 B.R. at 733 ("[E]ven if Covanta

is ultimately required to try those claims before a jury, that possibility does not constitute legal

prejudice."); *Banco Cent. De Paraguay*, 2006 WL 3456521, at *7 (holding that a existence of a

"mere tactical advantage" is not a proper basis to determine a motion under Rule 41(a)(2)) (citation

omitted); *see also Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1276 (5th Cir. 1990) (it is not

"sufficient to show legal prejudice to establish that the defendant may lose some perceived tactical

advantage by trying the case to a jury rather than to the court"); *Nixon Constr. Co. v. Frick Co.,* 45

F.R.D. 387, 390 (S.D.N.Y. 1968) ("Absent substantial prejudice, the mere fact that a tactical

advantage will result is insufficient grounds for denial of the motion."); *In re Cty. of Orange*, 203

B.R. 977, 982 (Bankr. C.D. Cal. 1996) (loss of right to try counterclaims in front of district court

judge instead of jury, although possibly tactical disadvantage, is not legal prejudice, as required to

prevent withdrawal of creditor's claim).  Based on this line of cases alone, the Trustee's Motion

should be denied.

D.  <u>Defendants are not engaged in forum-shopping or gamesmanship and they cannot expand
    the Scope of Article III</u>

Ironically, the Trustee accuses the Defendants of "forum shopping" and improper

"gamesmanship."  *See* Trustee's Mem. at 21, ECF No. 17864.  In making this accusation, the

Trustee's citation to *In re BP RE, L.P.*, 735 F.3d 279, 285 (5th Cir. 2013), is particularly misplaced.

In that case, the Fifth Circuit vacated a final judgment entered by the Bankruptcy Court on the

debtor's state-law claims, holding that the Bankruptcy Court lacked Article III authority to

adjudicate such claims in light of *Stern*.  *See In re BP RE, L.P.*, 735 F.3d at 286.  The Fifth Circuit

held that any "gamesmanship" would be legally irrelevant to its holding that litigants cannot

consent to have claims heard in the Bankruptcy Court if the Bankruptcy Court cannot

constitutionally adjudicate those claims under Article III.  *Id*. at 285, 288.  The Court held that

"'the parties cannot by consent cure the constitutional difficulty for the same reason that the parties

by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations

imposed by Article III, § 2.'"  *Id.* at 288 (quoting *Schor,* 478 U.S. at 851).  The same is true here.

E.    The Trustee's citations to § 502(d) are frivolous and the Trustee should be sanctioned

In arguing that he would be prejudiced by the Withdrawals, the Trustee makes the

ridiculous argument that "because the Claimants are recipients of avoidable transfers, their Claims

must be automatically disallowed under section 502(d) until their fraudulent transfer liability is

paid."  Trustee's Mem. at 23, ECF No. 17864; *see also id.* ("[U]ntil the Court adjudicates the

Avoidance Actions and determines whether the Defendants are entitled to credit or an offset on

their affirmative defenses, the Trustee is unable to resolve the Claims and the related objections.").

However, as already explained, the Trustee did not deny Defendants' claims on the basis of §

502(d) and the Trustee has brought no claims in the Clawback Suits under § 502(d).  Moreover, if

the Trustee is concerned that he cannot adjudicate the Claims until the Clawback Suits are fully

litigated, then the Withdrawals would fully resolve this issue.  The Trustee's absurd and misleading

arguments like this are precisely why Defendants took the step of filing the Withdrawals.

In the Motion, the Trustee asks this Court to resolve issues that are pending in the District

Court.  The Trustee's arguments are frivolous but they allow the Trustee to incur unnecessary fees

paid to his law firm and cause Defendants to spend money responding to frivolous arguments.  The

Trustee should be sanctioned pursuant to the Court's inherent authority and 28 U.S.C. § 1927.  *See*

28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any cases unreasonably

and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct."); *ACLI Gov't Sec., Inc. v. Rhoades*,

907 F. Supp. 66, 68 (S.D.N.Y. 1995) ("frivolous contentions" are sanctionable under 28 U.S.C. §

1927).

## CONCLUSION

The Court should deny the Trustee's Motion and award sanctions against the Trustee.


September 7, 2018


**CHAITMAN LLP**

By:    /s/ *Helen Davis Chaitman*
　　　　Helen Davis Chaitman
　　　　Gregory M. Dexter
　　　　465 Park Avenue
　　　　New York, New York 10022
　　　　Phone & Fax: (888)-759-1114
　　　　Helen Davis Chaitman
　　　　hchaitman@chaitmanllp.com
　　　　gdexter@chaitmanllp.com
　　　　*Attorneys for Defendants*