**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Stacey A. Bell
Nicholas J. Cremona

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT A ATTACHED HERETO, <br><br> Defendants. | Adv. Pro. Nos. listed on Exhibit A Attached Hereto |

**MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION**
**FOR LIMITED ADDITIONAL DISCOVERY BASED ON PRIOR ORDERS AUTHORIZING**
**DEPOSITION OF BERNARD L. MADOFF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ................................................................................3

    A.    Burdens and Evidence Adduced to Date in the Good Faith Actions ...........3

    B.    The Madoff Deposition......................................................................7

        1.    Madoff Day 1 Deposition Order ................................................7

        2.    Madoff Day 2 Deposition Order ................................................8

        3.    Madoff Testimony Requiring Further Discovery .........................10

    C.    The Current Motion ........................................................................16

        1.    92 Cases that Participated In Madoff's Deposition ......................17

        2.    55 Cases that Did Not Participate in Madoff's Deposition............19

        3.    Relief Requested ................................................................20

ARGUMENT ..................................................................................21

    1.    Limited Additional Discovery Should be Permitted Under Any Standard............21

        A.    The Madoff Deposition Orders Permit This Limited Additional Discovery to Rebut Madoff's Testimony ...................................21

        B.    Federal Rule of Civil Procedure 26(b)(2) ...................................23

        C.    Federal Rule of Civil Procedure 16 ..........................................25

    2.    Leave of Court Under Rule 30(a)(2) Should Be Granted To Depose the Three Incarcerated Witnesses..................................................................26

    3.    The Trustee Will Produce Documents to the Defendants and Amend His Initial Disclosures ........................................................................27

    4.    Supplemented Expert Disclosures and Additional Experts ...................28

CONCLUSION................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Collins*,
No. 01-Civ. 2437(PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010)...............................6, 7

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
397 B.R. 1 (S.D.N.Y. 2007)..........................................................................................3, 4

*In re Bernard L. Madoff Inv. Sec.*,
654 F.3d 229 (2d Cir. 2011)....................................................................................4, 5, 23

*Callari v. Blackman Plumbing Supply, Inc.*,
No. CV 11-3655 (ADS) (AKT), 2016 WL 1273237 (E.D.N.Y. Mar. 31, 2016)....................25

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*,
439 B.R. 284 (S.D.N.Y. 2010)................................................................................3, 4, 5

*Coene v. 3M Co.*,
303 F.R.D. 32 (W.D.N.Y. 2014)............................................................................................28

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ............................................................................................6, 7

*Gray v. Town of Darien*,
927 F.2d 69 (2d Cir. 1991)....................................................................................................25

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003)....................................................................................................25

*Houghtaling v. Tirado-Montes*,
No. 8:03-CV-2733-T-30EAJ, 2008 WL 2385511 (M.D. Fla. June 9, 2008).........................26

*Houlihan v. Invacare Corp.*,
No. CV 2004-4286(NGG)(MDG), 2006 WL 1455469 (E.D.N.Y. May 24, 2006) ......................................................................................................................29

*Janvey v. Brown*,
767 F.3d 430 (5th Cir. 2014) ..................................................................................................6

*Jeannite v. City of N.Y. Dep't of Bldgs.*,
No. 09 Civ. 2464 (DAB), 2010 WL 2542050 (S.D.N.Y. June 21, 2010)...............................25

*Krawec v. Kiewit Constructors Inc.*,
No. 11-cv-0123 (LAP), 2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013)....................................25

*Lopez v. Ramos*,
 No. 11-cv-07790 (NSR), 2013 WL 6912692 (S.D.N.Y. Dec. 30, 2013)................................25

*Miller v. Harding*,
 No. CIV A 97-11235-WGY, 1998 WL 892702 (D. Mass. Dec. 11, 1998),
 aff'd, 248 F.3d 1127 (1st Cir. 2000) ...................................................................................6

*Miller v. Wulf*,
 84 F. Supp. 3d 1266 (D. Utah 2015), aff'd, 632 F. App'x 937 (10th Cir. 2015).....................6

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
 No. 15 Civ. 0293 (LTS)(JCF), 2016 WL 3906712 (S.D.N.Y. July 14, 2016).......................24

*Noffsinger v. Valspar Corp.*,
 No. 09 C 916, 2012 WL 5948929 (N.D.Ill. Nov. 27, 2012)....................................................28

*OmniSource Corp. v. Heat Wave Metal Processing, Inc.*,
 5:13–CV–772–D, 2015 WL 3452918 (E.D.N.C. May 29, 2015)...........................................28

*Picard v. Greiff*,
 476 B.R. 715 (S.D.N.Y. 2012)..........................................................................................4, 5

*Picard v. Merkin (In re BLMIS)*,
 No. 11 MC 0012(KMW), 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011)................................3

*Picard v. Merkin (In re Madoff)*,
 581 B.R. 370 (Bankr. S.D.N.Y. 2017)...................................................................................5

*S.E.C. v. Boock*,
 No. 09 Civ. 8261 (DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011)...............................28

*S.E.C. v. McGinnis*,
 No. 5:14-cv-00006, 2018 WL 1633592 (D. Vt. Apr. 3, 2018) ..............................................30

*S.W. v. City of New York*,
 No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776 (E.D.N.Y. July 25,
 2011) ................................................................................................................................29, 30

*Scholes v. Lehman*,
 56 F. 3d 750 (7th Cir. 1995) ...........................................................................................6, 7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re BLMIS)*,
 531 B.R. 439 (Bankr. S.D.N.Y. 2015)...................................................................................3

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
 499 B.R. 416 (S.D.N.Y. 2013)........................................................................................1, 2, 5

*In re Slatkin*,
   525 F. 3d 805 (9th Cir. 2008) .................................................................................................6

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
   *No*. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015),
   *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)..............................................................24

## Statutes

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* .......................................................1

SIPA § 78fff-2(b).............................................................................................................................7

SIPA § 78*lll*(4)..................................................................................................................................7

SIPA § 78*lll*(11)................................................................................................................................7

## Rules

Fed. R. Civ. P. 16.......................................................................................................................24, 25

Fed. R. Civ. P. 26................................................................................................................. *passim*

Fed. R. Civ. P. 30.................................................................................................................................26

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, ("SIPA") and the Chapter 7 estate of Bernard L.

Madoff ("Madoff") (collectively, "Debtor"), respectfully submits this memorandum of law in

support of the Trustee's motion for an order authorizing limited additional discovery arising out

of the Madoff deposition.  The Trustee also submits the declaration of David J. Sheehan

("Sheehan Decl.") in support of this motion.

## PRELIMINARY STATEMENT

In 2016, seven years after Madoff pleaded guilty to running the BLMIS Ponzi scheme,

and six years after being named in complaints to recover fictitious profits transferred by BLMIS,

certain defendants in good faith cases belatedly sought Madoff's testimony regarding the extent

of his Ponzi scheme.  They sought this testimony despite the fact that Madoff and twelve former

BLMIS employees either pled guilty or were convicted for their roles in the Ponzi scheme.

Although the good faith cases were in various stages of discovery, all defendants still in

discovery at the time of the request (and some whose discovery had already closed) were

permitted to participate in Madoff's deposition.  Defendants in 92 cases did so.[1]  The orders

authorizing Madoff's deposition specifically contemplated potential additional discovery to

address or to rebut Madoff's testimony.[2]  And, at various hearings regarding Madoff's

---

[1] Initially, 95 cases participated in Madoff's deposition; 92 of those cases remain pending.

[2] *See* Sheehan Decl. Ex. 1, Order Authorizing the Dep. of Bernard L. Madoff dated Sept. 29, 2016, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) ECF No. 14213 ("Madoff Day 1 Deposition Order"); Sheehan Decl. Ex. 2, Order Authorizing the Continued Dep. of Bernard L. Madoff on Day Two Topics dated Sept. 11, 2017, ECF No. 16625 ("Madoff Day 2 Deposition Order," together with the Madoff Day 1 Deposition Order, the "Madoff Deposition Orders").  Unless otherwise noted, the ECF references contained herein refer to *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.).

deposition, the Trustee, certain defense counsel, and the Court repeatedly addressed that a "fraud proceeding" (encompassing additional discovery) would be established.[3]

Following Madoff's deposition,[4] and consistent with the parties' expectations, the Trustee filed a motion seeking an omnibus proceeding to address the extent and scope of Madoff's Ponzi scheme.[5] The motion sought to consolidate all good faith cases (whether they participated in Madoff's deposition or not) for discovery and proceedings on this issue. On July 25, 2018, the Court adjourned the motion indefinitely, and directed the Trustee to move on a more limited basis for further discovery based on Madoff's testimony.

Notwithstanding Madoff's obvious credibility issues, by this motion, the Trustee seeks—only in those cases that participated in Madoff's deposition—limited additional fact discovery to rebut certain issues raised in Madoff's deposition. Specifically, the Trustee seeks to depose: (1) six of the many former BLMIS employees—Annette Bongiorno, Daniel Bonventre, Enrica Cotellessa-Pitz, Joann "Jodi" Crupi, David Kugel, and Joann Sala—likely to have knowledge on the issues about which Madoff testified; and (2) FBI Special Agent Keith Kelly (retired) or, alternatively, Theodore Cacioppi (the "FBI Special Agent"), with respect to the memorialization of Madoff's statements in the Federal Bureau of Investigation Form FD-302 dated December 18, 2008 ("302 Statement"). Three of the six former BLMIS employees referenced above are incarcerated and, thus, only available to testify via depositions authorized by this Court.

---

[3] *See, e.g.,* Hr'g Tr. of May 31, 2017 at 21:1-9, 29-32, ECF No. 16192.

[4] Madoff's deposition took place over five days: December 20, 2016, April 26, 2017, April 27, 2017, November 8, 2017, and November 9, 2017.

[5] *See* Motion and Supporting Memorandum of Law For An Order Establishing Omnibus Proceeding For The Purpose of Determining The Existence, Duration, and Scope of the Ponzi Scheme at BLMIS. ECF No. 17284.

For those cases that participated in Madoff's deposition where expert reports already were served (25 of 92 cases), the Trustee intends to supplement those reports to address new issues raised by Madoff's deposition, and disclose two additional experts to address issues raised by Madoff about the purported convertible arbitrage strategy and the IBM computer systems, including the AS/400 system used by BLMIS.

Consistent with his discovery practices to date, the Trustee will add to E-Data Room 1 any additional documents considered by his experts in connection with the supplemental or new reports, based on issues raised by Madoff, as well as other documents he may use during any permitted fact depositions of the former BLMIS employees identified above. To streamline the process, the Trustee will also produce these documents directly to the defendants that participated in Madoff's deposition.

This limited additional discovery was contemplated by the Madoff Deposition Orders, is consistent with the Federal Rules of Civil Procedure, and will allow the parties to address issues raised by Madoff's deposition.

## BACKGROUND

### A.    Burdens and Evidence Adduced to Date in the Good Faith Actions

As plaintiff, the Trustee has the burden of proof on his claims. Under section 548(a)(1)(A), the Trustee's *prima facie* case consists of showing: (1) that BLMIS made a transfer to a defendant with actual fraudulent intent within the two-year period; and (2) the amount that defendant owes to the estate for that transfer. Actual fraudulent intent can be shown through direct evidence (*e.g.*, an allocution by the principal that he was conducting a fraudulent scheme) or circumstantial evidence (*e.g.*, by showing "badges of fraud").[6] A third option that overlaps

---

[6] *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439

direct and circumstantial evidence of intent is showing the debtor engaged in a Ponzi scheme.[7]

As for the amounts owed to the estate, because Madoff engaged in a Ponzi scheme, the Trustee

nets deposits and withdrawals to determine the amount of fictitious profits a defendant received

in the two-year period prior to BLMIS's collapse.[8]

In support of his *prima facie* case, the Trustee typically proffers the following expert

reports:

- Matthew Greenblatt of FTI Consulting, Inc. provides a global expert report dated November 15, 2012 establishing the methodology used for the "Principal Balance Calculation" (*i.e.*, net equity) for all BLMIS accounts and a case-specific expert report applying the Principal Balance Calculation methodology to the BLMIS account(s) at issue in a particular adversary proceeding;

- Lisa Collura of FTI Consulting, Inc. provides an expert report (i) reconciling the cash deposit and withdrawal transactions on Investment Advisory Business (the "IA Business") customer statements to IA Business bank accounts for certain periods and (ii) tracing the transfers of funds to the defendant(s) in a particular case; and

- Bruce Dubinsky of Duff & Phelps provides a global expert report, dated August 20, 2013, on the fraud and insolvency at BLMIS.

In further support of his *prima facie* case, the Trustee will proffer the plea allocutions of

Madoff, Frank DiPascali, David Kugel, Irwin Lipkin, Enrica Cotellessa-Pitz, and David

Friehling. The Trustee will also proffer testimony offered in the criminal trial of five former

BLMIS employees, styled as *United States v. O'Hara*, 10-CR-228 (LTS), (the "Criminal Trial"),

including that of Frank DiPascali, who is deceased, and of any other unavailable witnesses. At

---

B.R. 284, 307 (S.D.N.Y. 2010) ("*Bayou IV*"); *Picard v. Merkin (In re BLMIS)*, No. 11 MC 0012 (KMW), 2011 WL 3897970, at *4 (S.D.N.Y. Aug. 31, 2011); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. (In re BLMIS)*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*").

[7] *Bear, Stearns Sec. Corp.*, 397 B.R. at 8; *Bayou IV*, 439 B.R. at 304–05; *Omnibus Good Faith Decision*, 531 B.R. at 471.

[8] *Picard v. Greiff*, 476 B.R. 715, 729 (S.D.N.Y. 2012) ("[I]f the amount transferred to the defendant exceeds the amount invested, the Trustee may recover these net profits from that defendant to the extent that such monies were transferred to that defendant in the two years prior to Madoff Securities' filing for bankruptcy."); *see also In re Bernard L. Madoff Inv. Sec.*, 654 F.3d 229, 238–39 (2d Cir. 2011).

the Criminal Trial, for example, Mr. DiPascali testified at length about the timing, nature, and

extent of the Ponzi scheme, as well as about BLMIS's purported purchase of Treasury bills, the

BLMIS computer systems, and various other elements of the Ponzi scheme.

The Court has recognized that the foregoing evidence meets the *prima facie* burden, thus

shifting the burden to the defendants to rebut the Trustee's evidence.[9]

Because good faith is not an issue in these cases, under 548(a)(1)(A), defendants'

affirmative defense under section 548(c) is only for value.  Numerous courts, including decisions

that operate here as law of the case, hold that a defendant does not give value for receipt of

fictitious profits.[10]  Thus, the only means for a given defendant to potentially reduce his or her

liability here is to attack the use of "netting" to calculate the fictitious profits owed by: (1)

rebutting the evidence that BLMIS was engaged in a Ponzi scheme, which could result in the

argument that "netting" is inappropriate; or (2) establishing that the Ponzi scheme began at a

later date, which starts the "netting" calculation at a later point in time (giving defendants a

larger "principal" balance to draw against for the subsequent withdrawals, potentially reducing

the amounts of their fictitious profits).[11]

---

[9] *Picard v. Goldenberg (In re Madoff)*, Adv. Pro. No. 10-04946 (SMB), 2018 WL 3078149, at *4 (Bankr. S.D.N.Y. June 20, 2018); *see Picard v. Merkin (In re Madoff)*, 581 B.R. 370, 375, 385 (Bankr. S.D.N.Y. 2017); Hr'g Tr. of July 25, 2018 at 63:10–17, ECF No. 17877.

[10] *Greiff*, 476 B.R. at 725; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*), 499 B.R. 416, 425–26 (S.D.N.Y. 2013); *Omnibus Good Faith Decision*, 531 B.R. at 471; *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016), *adopted*, No. 16 Civ. 05513 (LTS) (S.D.N.Y. Feb. 24, 2017); *Bayou IV*, 439 B.R. at 337 ("[V]irtually every court to address the question has held *unflinchingly* that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers." (emphasis added) (internal quotations omitted)).  *Picard v. Lowrey (In re Madoff)*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312, at *5 (Bankr. S.D.N.Y. Mar. 22, 2018), *as corrected* (Mar. 26, 2018), *appeal docketed*, No. 18-05381 (S.D.N.Y. June 14, 2018).

[11] In connection with Madoff's deposition, the Trustee submitted a declaration from Matthew Greenblatt showing that the amount of fictitious profits sought by the Trustee from most defendants remained unaffected by beginning the "netting" calculation in 1992, the year Madoff stated in his allocution and deposition that the Ponzi scheme began.  Decl. of Matthew B. Greenblatt at 7, Aug. 19, 2016, ECF No.

In an attempt to controvert the admissions, plea allocutions, convictions, expert opinions, well-developed facts, and established legal precedent that BLMIS was running a Ponzi scheme, defendants argue that because BLMIS also had business units (a proprietary trading desk and a market making business) that engaged in actual securities trading—a fact not in dispute—its IA Business could not have been a Ponzi scheme. Numerous courts, however, have found that a Ponzi schemer's legitimate operations in no way preclude a finding that the company operated a Ponzi scheme.[12]

Defendants also claim that, if Madoff engaged in any actual securities transactions for the accounts at issue, they should receive "credit" for those transactions, thereby reducing their liability on a transaction-by-transaction basis. A body of case law, derived from the very first Ponzi scheme case, *Brown v. Cunningham*, precludes giving credit for individual transactions in a fraudulent scheme because "equity is equality."[13] Courts have held that whether actual trades occurred in a Ponzi scheme is immaterial, "flatly rejecting" investors' claims regarding legitimate trading profits.[14] This is because permitting one investor to keep a profit from "legitimate" trades in a Ponzi scheme may be fair vis-à-vis the schemer, but not fair to the other

---

13904. Since that time, the defendants' challenges to the Ponzi scheme have extended beyond the issue of the 1992 start date of the scheme.

[12] *See, e.g. Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008); *Miller v. Wulf*, 84 F. Supp. 3d 1266, 1272–73 (D. Utah 2015), *aff'd*, 632 F. App'x 937 (10th Cir. 2015) (finding "Ponzi schemes sometimes use legitimate operations to attract investors, but the existence of that legitimate business does not preclude a finding that the company operated a Ponzi scheme."); *Scholes v. Lehman*, 56 F. 3d 750, 752 (7th Cir. 1995); *In re Slatkin*, 525 F. 3d 805, 815 (9th Cir. 2008).

[13] 265 U.S. 1, 13 (1924).

[14] *Miller v. Harding*, No. CIV A 97-11235-WGY, 1998 WL 892702, at *8 (D. Mass. Dec. 11, 1998), *aff'd*, 248 F.3d 1127 (1st Cir. 2000); *Armstrong v. Collins*, No. 01-Civ. 2437(PAC), 2010 WL 1141158, at *23 (S.D.N.Y. Mar. 24, 2010) (holding that legitimate trading activity did not defeat a finding of a Ponzi scheme, "even if [the debtor] made some legal trade . . . any stock transactions were merely tools and artifices used by [the debtor] in furtherance of his Ponzi scheme"); *see also Janvey v. Brown*, 767 F.3d 430, 440–41 (5th Cir. 2014) (rejecting investors' claims to profits on certificates of deposit).

investors who lost money.[15] Thus, even where a company engages in some legitimate trades for an investor's account,[16] investors must be treated equally through netting.[17]

From 2010 until 2016, defendants generally offered no facts or expert opinions to rebut the Trustee's *prima facie* case.

### B.    The Madoff Deposition

#### 1.    Madoff Day 1 Deposition Order

In July 2016, Helen Chaitman of Chaitman LLP sought to depose Madoff in her remaining cases. After several other defendants joined in that request, the Court instituted a process allowing any remaining good faith defendants whose fact discovery was still open in their cases to participate in Madoff's deposition. At that time, the Trustee flagged the obvious credibility issues of Madoff's post-plea testimony, including the possibility that he might change

---

[15] *Scholes*, 56 F.3d at 757–58 ("[An investor] should not be permitted to benefit from a fraud at their expense merely because he was not himself to blame for the fraud."); *Armstrong*, 2010 WL 1141158, at *23 (citing *Scholes*, 56 F.3d at 757).

[16] In addition to arguing that BLMIS purchased securities in the form of Treasury bills *for their account*, defendants also argue that BLMIS purchased Treasury bills with commingled customer money as a general matter, and as such, each account is somehow entitled to the credit from the profits generated by those transactions. But under SIPA, customers are entitled to the cash or securities *in the customer's account*. SIPA § 78fff-2(b); *see also* SIPA § 78*lll*(11) (defining "net equity" as the amount owed to the customer by the broker minus the amount owed to the broker by the customer). Dividends or interest earned by the broker on short-term investments as part of a cash management strategy would constitute property of the debtor, not customer property under SIPA. And where there is a shortfall of customer property due to the debtor's theft, as there is here, that property of the debtor stolen from customer property and its proceeds are allocated to the fund of customer property for distribution to customers on net equity claims). SIPA § 78*lll*(4). As of the end of December 2008, the JPMorgan Chase '703 bank account, the primary bank account for the IA Business, (the "703 Bank Account") had a balance of approximately $229 million, including interest earned on BLMIS's short-term investments. Those amounts were allocated to the fund of customer property and distributed to customers with allowed net equity claims. There is no basis under SIPA (or bankruptcy law) to retroactively "credit" these amounts to particular customers where those profits were not earned in those customer accounts.

[17] *See*, *e.g.*, *Donell*, 533 F.3d at 777.

his story or contradict other former BLMIS employees regarding the timing and extent of the BLMIS fraud.[18]  It was contemplated that rebuttal testimony might be necessary.[19]

The Madoff Day 1 Deposition Order listed the topics on which Madoff could be questioned concerning the timing and extent of the fraud at BLMIS, and provided that the parties had the right to move the Court for further discovery based upon Madoff's testimony.  Paragraph L of the Madoff Day 1 Deposition Order extended fact discovery for the limited purpose of deposing Madoff, and permitted parties to seek additional discovery based on Madoff's testimony independent of the individual case management orders.  "Day 1" lasted three days: December 20, 2016, April 26, 2017 and April 27, 2017.

In May 2017, Chaitman LLP proffered: (i) an expert report from William Feingold, challenging certain conclusions on BLMIS's convertible arbitrage strategy reached by the Trustee's expert, Bruce Dubinsky; and (ii) a declaration from Steven Maslow, a former Bear Stearns employee, averring that Bear Stearns engaged in trading with BLMIS from 1985-1999. Chaitman LLP also issued subpoenas to 27 former BLMIS traders.[20]  To date, no other fact or expert witnesses have been proffered on the Ponzi issues.

### 2.    <u>Madoff Day 2 Deposition Order</u>

After "Day 1" concluded, the parties agreed to the permissible "Day 2" topics after notice and a hearing.[21]  Certain defendants who had not previously opted into Madoff's deposition now

---

[18] *See* Trustee's Resp. to Defs.' Reqs. to Depose Bernard L. Madoff at 4–5, 7, Aug. 19, 2016, ECF No. 13902.

[19] *See id.* at 1, 7 ("no supplemental or follow-up discovery should be permitted, other than by the Trustee to address or rebut statements that Madoff may make at such deposition"); *see also* Hr'g Tr. of Aug. 24, 2016 Hr'g at 21:6–11, ECF No. 13967.

[20] One of the subpoenaed witnesses is David Kugel, whose testimony the Trustee also seeks in this motion.

[21] *See* Madoff Day 2 Deposition Order at 3–4.

sought to participate, even those with closed discovery—in some instances, for up to a year—in their cases.[22]  Nevertheless, the Trustee agreed to permit those parties to participate in Day 2 of the Madoff deposition so that all cases would be on the same track.[23]  The Madoff Day 2 Deposition Order included language identical to Paragraph L of the Madoff Day 1 Deposition Order, extending fact discovery for the limited purpose of deposing Madoff, and permitting parties to seek additional discovery based on Madoff's testimony independent of the individual case management orders.[24]

While the parties were negotiating the Madoff Day 2 Deposition Order, Ms. Chaitman was separately addressing with the Trustee her request for a uniform date to serve rebuttal expert reports in her cases.  On August 10, 2017, this Court entered an order (the "Chaitman Discovery Order") holding fact discovery deadlines in abeyance in certain of Chaitman LLP's cases until after Madoff's deposition concluded.[25]  The Chaitman Discovery Order further provided that the Court would set expert disclosure and discovery deadlines after the completion of Madoff's deposition.[26]

"Day 2" of Madoff's deposition occurred on November 8, 2017 and November 9, 2017. This Court confirmed at the July 25, 2018 hearing that Day 2 of Madoff's deposition was completed.[27]

---

[22] Obj. Ltr. from Chaitman at 1, Aug. 10, 2017, ECF No. 16495.

[23] *See* Madoff Day 2 Deposition Order at 3.

[24] *Id.* ¶ L.

[25] Sheehan Decl. Ex. 3, Stipulation and Order, Aug. 10, 2017, ECF No. 16494.

[26] The Chaitman Discovery Order applies to all cases that were represented by Chaitman LLP on August 10, 2017 regardless of whether they have since obtained new counsel.  For example, while Chaitman LLP withdrew as counsel on September 5, 2018 in three of the affected cases: *Picard v. Leonard J. Oguss Trust* (Adv. Pro. No. 10-5116), *Picard v. Janet Jaffe* (Adv. Pro. No. 10-4798) and *Picard v. Jaffe Family Inv. P'ship* (Adv. Pro. No. 10-4655), these cases are still subject to the Chaitman Discovery Order.

[27] Hr'g Tr. July 25, 2018 at 17:13–14.

9

### 3.    **Madoff Testimony Requiring Further Discovery**

Madoff testified about six broad issues that the Trustee should be permitted to rebut through limited fact witness depositions and additional expert disclosures: (1) the start date of the fraud; (2) the convertible arbitrage trading strategy; (3) any actual securities and/or directed trading in individual accounts; (4) management of customer cash at BLMIS; (5) Treasury bill transactions; and (6) the IBM computer systems at BLMIS.

During his deposition, Madoff identified a number of former BLMIS employees with relevant knowledge on these six topics.  By this motion, the Trustee seeks to depose six long-time employees that Madoff identified: Bongiorno, Bonventre, Cotellessa-Pitz, Crupi, Kugel, and Sala.  Briefly, these employees worked for BLMIS in the following capacities:

- Annette Bongiorno: She worked at BLMIS from 1968 to December 2008 in different roles, mainly focused on the investment advisory customer accounts that did not purport to invest in the so-called split-strike conversion strategy, including inputting trading information for these customer accounts and serving as the main point of contact for many BLMIS customers.

- Daniel Bonventre: He worked at BLMIS from 1968 to December 2008. He worked as the director of operations for BLMIS, with responsibilities related to financial reporting, issuing trading reports, borrowing, and cash management, including reconciling the primary bank account used to maintain investment advisory customer funds.

- Enrica Cotellessa-Pitz:  She worked at BLMIS from 1978 to December 2008. She started in the back office and later served as controller of BLMIS. As such, she had responsibilities related to BLMIS's financial reporting and accounting, trading reports, BLMIS's bank accounts, borrowing practices, and cash management.

- Joann Crupi: She worked at BLMIS from 1983 until December 2008.  She oversaw the activity in the investment advisory customer accounts and monitored activity in the bank accounts used to house investment advisory customer funds.

- David Kugel: He worked at BLMIS from the early 1970s until December 2008.  He was a trader in the firm's market making and proprietary trading business, specializing in convertible arbitrage trading.  Kugel supplied post trading information to be used in fabricating reported trades in investment advisory customer accounts.

- Joann Sala: She worked at BLMIS from August 1983 until 1998. She reported to Annette Bongiorno, and was responsible for the investment advisory customer accounts that purported to use a convertible arbitrage strategy and also regularly corresponded with investment advisory customers.

### a)    <u>Fraud Start Date</u>

Mere days after Madoff's arrest, on December 18, 2008, the FBI memorialized Madoff's proffer session with the Government in the 302 Statement wherein Madoff admitted that he "began engaging in fraud in earnest in the 1970s." At his deposition, Madoff was confronted with his 302 Statement, and in direct contradiction of this statement, Madoff testified that his Ponzi scheme began in approximately 1992. But Madoff also testified that he fraudulently issued backdated trades prior to 1992, pointing to Bongiorno as the person with knowledge of that element of his fraud.[28] The Trustee seeks to depose the six former BLMIS employees, Bongiorno, Bonventre, Cotellessa-Pitz, Crupi, Kugel, and Sala who have knowledge regarding BLMIS operations prior to 1992. Their testimony may rebut Madoff's assertion that BLMIS was not conducting a Ponzi scheme until 1992. Deposing the FBI Special Agent will undermine the credibility of Madoff's deposition testimony as to the scope, timing, and extent of his Ponzi scheme by providing testimony about Madoff's statements to the Government immediately following his arrest.

### b)    <u>Convertible Arbitrage</u>

From at least the late 1970s through as late as 1998, BLMIS purportedly engaged in a convertible arbitrage strategy as reflected on the IA Business customer statements.

Madoff testified in broad terms that the convertible arbitrage strategy was not part of the Ponzi scheme, and defendants have relied on that testimony to advance the argument that the

---

[28] Sheehan Decl. Ex. 4, Tr. of Dec. 20, 2016 Dep. of Bernard L. Madoff at 28:18–33:6 ("Dec. 20, 2016 Madoff Tr."); Sheehan Decl. Ex. 5, Tr. of Apr. 26, 2017 Dep. of Bernard L. Madoff at 10:6–25 ("Apr. 26, 2017 Madoff Tr.").

convertible arbitrage transactions on their statements actually occurred.  The Trustee seeks to

depose five of the six employees (Bongiorno, Bonventre, Crupi, Kugel, and Sala) on this topic.

Madoff acknowledged that Bonventre was the BLMIS employee with knowledge about internal

trading reports including those showing convertible arbitrage trades[29] and certain entries related

to convertible arbitrage trading reported on IA Business customer statements.[30]  Madoff also

testified that Bongiorno and Crupi were involved in the process of "moving" convertible

arbitrage trades to customer accounts.[31]  Sala's prior testimony in the Profit Withdrawal

proceeding, as well as Bongiorno's and Kugel's Criminal Trial testimony, demonstrate that

Sala's duties at BLMIS included working on convertible arbitrage accounts.  Kugel testified at

the Criminal Trial regarding his direct role in fabricating convertible arbitrage trades.[32]

### c)    Actual Securities Trading and Directed Trading

In addition to the convertible arbitrage trading, defendants claim other transactions on

their customer statements were similarly real based on Madoff's testimony that he engaged in

what he called "directed" trading for specific defendants (namely, certain of the accounts at issue

in adversary proceedings 10-04362 and 10-04400).[33]  But Madoff provided contradictory

testimony, testifying that BLMIS engaged in discretionary trading for its customers and as a rule

---

[29] Apr. 26, 2017 Madoff Tr. at 49:20–50:6; Sheehan Decl. Ex. 6, Tr. of Apr. 27, 2017 Dep. of Bernard L. Madoff at 243:6–244:18 ("Apr. 27, 2017 Madoff Tr."); Sheehan Decl. Ex. 8, Tr. of Nov. 9, 2017 Dep. of Bernard L. Madoff at 504:12–21, 674:21–675:20 ("Nov. 9, 2017 Madoff Tr.").

[30] Apr. 27, 2017 Madoff Tr. at 242:6–244:18; *see also id.* at 247:9–21.

[31] Apr. 26, 2017 Madoff Tr. at 84:9–17; *see also* Nov. 9, 2017 Madoff Tr. at 559:19–560:12.

[32] Madoff attempted to discredit Kugel's testimony that the Ponzi started during the convertible arbitrage period, claiming that Kugel would not know about whether the IA Business customer convertible arbitrage trading was legitimate.  Apr. 26, 2017 Madoff Tr. at 84:9–19.

[33] Sheehan Decl. Ex. 7, Tr. of Nov. 8, 2017 Dep. of Bernard L. Madoff at 400:1–401:15, 466:24–469:22 ("Nov. 8, 2017 Madoff Tr.").

did not carry out specific, directed transactions for individual customer accounts.[34]  Again,

former BLMIS employees Bongiorno, Bonventre, Cotellessa-Pitz, and Crupi would have direct

knowledge of BLMIS operations and whether BLMIS executed customer-directed trades.

### d)      Cash Management: Solvency, Banking Records, Financial Reporting, and Loans

During his deposition, Madoff attempted to cloud the record on whether and for what

time periods BLMIS was insolvent, an issue relevant to the Trustee's Ponzi proof.[35]  At his April

2017 deposition, Madoff broadly claimed his business was solvent until 2002.[36]  But when

confronted with the fact that he was $64 billion short of funds for his customers (the IA Business

had less than $230 million in the 703 Bank Account in December 2008), Madoff agreed this

shortfall accumulated over time from at least the early 1990s.  Madoff testified that

approximately $12 billion was paid out in 2008, and that the $64 billion shortfall accumulated

over time from 1992 through 2008.[37]

Former BLMIS employees Bonventre, Cotellessa-Pitz, and Crupi were primarily

responsible for the management of customer cash and handled issues related to the firm's

solvency on a day-to-day basis, including BLMIS's banking practices, loans, and financial

reporting.  Their depositions will clarify Madoff's broad assertions regarding BLMIS's cash

management and solvency.

---

[34] Apr. 26, 2017 Madoff Tr. 26:24–27:15; *see also* Nov. 9, 2017 Madoff Tr. at 619:15–620:10.

[35] *Bayou IV*, 439 B.R. at 305-07 (recognizing that insolvency of a debtor is an element of a Ponzi scheme).

[36] Apr. 26, 2017 Madoff Tr. at 20:8–21:4.

[37] *Id.* at 132:17–134:4.

### e)    The Role of Treasuries in the IA Business Customer Accounts

At his March 2009 plea allocution, Madoff testified he would "be out of the market intermittently, investing client funds during these periods in United States Government-issued securities, such as United States Treasury bills . . . In fact, I never made those investments I promised clients, who believed they were invested with me in the split strike conversion strategy."[38]  At his December 2016 deposition, Madoff testified that he would put incoming customer funds into Treasury bills to the extent he was not using them to pay out redemptions.[39] He agreed with defense counsel's framing that the customer money earned "whatever the Treasury bill rate was," but he conceded that "there [were not] enough Treasury bills to cover all of the liabilities."[40]  Madoff testified that he bought Treasury bills to protect customers, but also testified that the purpose for putting money in Treasury bills was a cash management tool.

Defendants have used Madoff's testimony on his purported Treasury bill purchases to argue that BLMIS satisfied customer redemptions with profits generated by the actual purchase of Treasury bills.  Consequently, they argue, the BLMIS fraud was "far less extensive" than previously believed and "lack[ed] a number of the significant characteristic [*sic*] of a Ponzi scheme."[41]  They have also argued that BLMIS purchased Treasury bills for their specific accounts.

---

[38] *See* Plea Allocution of Bernard Madoff at 26:16–18, *United States v. Madoff*, No. 09 Cr. 213 (DC) (S.D.N.Y. Mar. 12, 2009).

[39] Dec. 20, 2016 Madoff Tr. at 162:5–24.

[40] *Id.* at 162:10–163:2.

[41] Participating Customers' Resp. to Trustee's Opp'n to Notice of Req. to Depose Bernard L. Madoff on Second Day Dep. Topics at 3, June 27, 2017, ECF No. 16252.

Former BLMIS employees Bonventre, Cotellessa-Pitz, and Crupi were involved in the day-to-day process of BLMIS cash management and should have knowledge about how Treasury bills were used at BLMIS.

### f)   IBM AS/400 Computer Systems

Madoff testified that the IBM AS/400 computer system and predecessor computer systems of the IA Business were used to backdate trades prior to 1992[42] and that the system generated reports for trades that did not occur.[43]  He also testified that this system was not linked to outside sources for trading, such as market tools or Bloomberg.[44]

In discussing specific BLMIS reports, Madoff stated that documents showing legitimate trading activity for his proprietary and market making business units—such as trading ledgers and stock records—would be generated daily and that they would be "run through computers."[45] For reports run for the IA Business, Madoff could not answer whether any report would show customer convertible bond trading on a daily basis and he testified that these trades were typically only shown on IA Business documents.[46]  Even though Madoff could testify to no actual link between his market making business and IA Business computer systems or reported trading, defendants claim that BLMIS reports generated for the IA Business show legitimate securities trading carried out on their behalf.[47]  Former BLMIS employees Bongiorno, Bonventre, Cotellessa-Pitz, Crupi, and Sala have knowledge about the BLMIS computer systems

---

[42] Apr. 26, 2017 Madoff Tr. at 13:6–14:21.

[43] Id. at 50:7–14.

[44] Id. at 13:2–24, 49:20–50:6.

[45] Id. at 47:13–48:22, 49:5–19; Nov. 9, 2017 Madoff Tr. at 559:4–560:12.

[46] Apr. 26, 2017 Madoff Tr. at 50:7–17.

[47] Defs.' Memo. in Further Supp. of Their Req. to Depose Bernard L. Madoff on Day Two Dep. Topics at 17–18, June 26, 2017, ECF No. 16236.

and reports generated.  The Trustee will also identify a computer expert to testify about how IBM AS/400 machines were used by BLMIS and whether they were capable of generating trading activity for the IA Business.

### C.      The Current Motion

The Trustee filed over one thousand good faith cases, and of those, 147 remain.[48]  Of the remaining cases, 92 participated in Madoff's deposition (the "Madoff Deposition Cases"),[49] and those 92 cases are the subject of this motion.  For those cases, the Trustee seeks to: (i) conduct limited additional fact discovery to the extent fact discovery is closed pursuant to the case management order deadlines; and (ii) supplement the Trustee's expert reports, and disclose two additional experts, where expert reports have already been served.

The remaining 55 cases did not participate in Madoff's deposition.[50]  Thus, the Trustee is not seeking any further fact discovery in those cases in this motion, and the deadlines in each individual case management order determine whether further fact discovery is permitted.

| Total Number of Cases | 147 |
|---|---|
| Participated in Madoff's Deposition | 92 |
| Did Not Participate in Madoff's Deposition | 55 |

---

[48] These cases are listed on Exhibit A.

[49] These cases are listed on Exhibit B.

[50] These cases are listed on Exhibit C.

1.    **92 Cases that Participated In Madoff's Deposition**

The 92 Madoff Deposition Cases fall into three categories: (i) 33 cases where fact discovery is still open; (ii) 59 cases where fact discovery had closed under operative case management orders; and (iii) of the 59 cases, 25 cases in which expert reports have been served.

(i)    **33 Cases with Open Fact Discovery[51]**

In the 33 cases where fact discovery is open, one is open by virtue of its case management order,[52] and 32 have open fact discovery based on the Chaitman Discovery Order. As discussed in Section B.2, *supra*, the Chaitman Discovery Order stayed all discovery deadlines—including fact discovery deadlines— as of its entry on August 10, 2017.[53]  In 32 cases represented by Chaitman LLP, fact discovery was still open as of August 10, 2017, and those fact discovery deadlines were therefore "held in abeyance" until new deadlines could be determined by this Court following Madoff's deposition.[54]

For each of these cases, the Trustee intends to engage in fact discovery to rebut or clarify issues raised by Madoff's testimony, as described below, without further leave of court.  By way of this motion, the Trustee seeks to set a uniform fact discovery schedule to engage in such discovery for each of these 33 cases.

---

[51] These cases are listed on Exhibit D.

[52] *Picard v. Neil Reger Profit Sharing Keogh, et al.*, Adv. Pro. No. 10-05384 (Bankr. S.D.N.Y. July 17, 2018), ECF No. 71.  The current fact discovery deadline in this case is October 26, 2018. *See id.* ¶ 2.

[53] Chaitman Discovery Order ¶ 2 ("Until further addressed by the Court, all other deadlines in the operative case management notices for the Applicable Chaitman Cases are hereby held in abeyance.").

[54] Indeed, the parties have been operating in accordance with the Chaitman Discovery Order, issuing and responding to discovery requests long after the case management order deadlines for fact discovery had passed.  *See, e.g.*, *Picard v. DiFazio*, Adv. Pro. No. 10-04823.

### (ii)    59 Cases Where Fact Discovery Had Closed Under Operative Case Management Orders[55]

Under the operative case management orders and the Chaitman Discovery Order, fact discovery deadlines have passed in 59 cases that participated in Madoff's deposition. These cases are nonetheless entitled to additional fact discovery because of the Madoff Deposition Orders. *See* Section 1.A, *infra*. Pursuant to this motion, the Trustee seeks to engage in limited additional fact discovery, and to set the same fact discovery schedule as the Madoff Deposition Cases with open fact discovery.

For all the Madoff Deposition Cases, the Trustee seeks testimony from six former BLMIS employees—Bongiorno, Bonventre, Cotellessa-Pitz, Crupi, Kugel, and Sala—and the FBI Special Agent. Should the Court permit these depositions to go forward, the Trustee will also place into E-Data Room 1 and produce to defendants the documents he may show these witnesses, to the extent they are not already in E-Data Room 1. In addition to the six former employees to be deposed, the Trustee will also amend his initial disclosures under Rule 26(a)(1)(A)(i) and (ii) to include any other former BLMIS employee witnesses with relevant knowledge of the issues raised by Madoff and provide certain indices detailing the documents and information in the Trustee's possession.

### (iii)    25 Cases with Served Expert Reports[56]

The Trustee has served expert reports in 25 of the Madoff Deposition Cases;[57] expert reports have not yet been served in the remaining 67 Madoff Deposition Cases. Of the 25 cases, 11 cases are governed by the Chaitman Discovery Order which provides that, with respect to

---

[55] These cases are listed on Exhibit E.

[56] These cases are listed on Exhibit F.

[57] These cases are part of the 59 Madoff Deposition Cases with closed fact discovery.

certain cases where defendants are represented by Chaitman LLP, the Court will set expert deadlines for "any party" following the completion of Madoff's deposition.[58] Since the expert disclosure dates remain open under the Chaitman Discovery Order, the Trustee does not need further leave of Court to serve supplemental expert reports and the additional expert reports in those cases.

In the remaining 14 of the 25 cases, the Trustee will also supplement the previously served expert reports of Bruce Dubinsky and Lisa Collura, as required by Rule 26. By way of this motion, the Trustee seeks permission to serve two additional expert reports in those 14 cases to address issues arising out of Madoff's deposition. The Trustee also seeks to set a uniform date for expert disclosures in all 25 cases where expert reports have already been served.

For the remaining 67 of the Madoff Deposition Cases in which expert reports have not been served (pursuant to case management orders or the Chaitman Discovery Order),[59] the Trustee intends to serve the same expert reports and may do so without leave of Court.[60]

## 2.    55 Cases that Did Not Participate in Madoff's Deposition

The 55 cases that did not participate in Madoff's deposition cannot offer or rely on his testimony to support their defenses. Thus, these 55 cases are not the subject of this motion, and therefore are not impacted by the relief sought herein. For the subset of these cases where fact and expert disclosure dates have already passed, these defendants proffered no fact or expert

---

[58] *See* Exhibit F.

[59] Sixty-four of these cases involved defendants represented by Chaitman LLP wherein the exchange of expert reports was suspended based on the Chaitman Discovery Order.

[60] As noted earlier, of the 147 remaining good faith actions, 55 cases did not participate in Madoff's deposition. Fact discovery is still open in 16 of these cases, and, expert reports have not yet been served in 33. The Trustee will conduct fact discovery consistent with the applicable case management order deadlines, and also intends to serve the same expert reports (as set forth above) in these cases and may do so without leave of Court.

witnesses during their disclosure periods.  As such, the record in those cases is closed and they

are trial ready, subject to pre-trial conferences and applicable orders of this court.

### 3.    Relief Requested

Based on the foregoing, the Trustee requests the following relief for fact discovery in the

Madoff Deposition Cases:

| Case Categories | Relief Requested |
|---|---|
| 33 Cases with Open Fact Discovery | Uniform Discovery Schedule |
| 59 Cases Where Fact Discovery Had Closed under CMOs | Leave to Conduct Limited Fact Discovery<br>Uniform Discovery Schedule |

The Trustee requests the following relief in connection with expert disclosures in the

Madoff Deposition Cases:

| Case Categories | Relief Requested |
|---|---|
| 11 Chaitman Cases with Served Expert Reports | Uniform Discovery Schedule for Service of Supplemental and Additional Reports |
| 14 Non-Chaitman Cases with Served Expert Reports | Leave to Serve Additional Reports<br>Uniform Discovery Schedule for Service of Supplemental and Additional Reports |
| 67 Cases Without Served Expert Reports | Uniform Discovery Schedule for Expert Disclosures |

The Trustee requests that the Court grant ninety days for the Trustee to depose the six

BLMIS witnesses and the FBI Special Agent.  The Trustee requests ninety days because three of

the six witnesses are incarcerated, and their depositions require extensive coordination with the

Bureau of Prisons.  Subpoenaing an FBI agent also takes longer than subpoenaing a more

traditional fact witness.[61]

Following the ninety day period for the limited additional fact discovery sought herein,

the Trustee requests that the Court provide the parties ninety days to disclose new experts

(including experts on convertible arbitrage and IBM computer systems), to supplement prior

expert disclosures in the 25 Madoff Deposition Cases in which expert reports have been served,

and to serve expert reports in cases in which reports have not yet been served.  Thus, within one-

hundred and eighty days of the Court granting the relief requested herein, the remainder of the

Trustee's good faith cases will be ripe for summary disposition or trial.

## ARGUMENT

### 1. <u>Limited Additional Discovery Should be Permitted Under Any Standard</u>

#### A.    The Madoff Deposition Orders Permit This Limited Additional Discovery to Rebut Madoff's Testimony

This motion seeks limited depositions based on Madoff's testimony where his testimony

is not credible, incomplete, unresolved, or inconsistent and other fact witnesses are well-

positioned to testify.  Each category of limited testimony outlined above relates to the scope and

extent of the Ponzi scheme at BLMIS.  The Trustee has carefully chosen this limited group of

witnesses to avoid duplicative testimony and streamline the remaining fact discovery in these

cases.  Each of the witnesses from whom testimony is sought has information directly bearing on

these limited areas.

---

[61] The Trustee has issued a *Touhy* request for testimony and documents from the FBI in the 17 good faith
cases where discovery remains open, per those cases' individual case management orders.  Should this
Court grant the relief sought herein, the Trustee will further serve the subpoena to include additional
cases.

The plain language of the Madoff Deposition Orders anticipates that limited discovery may be required—by any party—to address issues raised by Madoff.  The right to seek this request is categorical and unqualified, and exists regardless of the discovery deadlines in each adversary proceeding:  "Notwithstanding the dates set forth in the case management orders, counsel for the Trustee . . . ha[s] the right to move the Court for further discovery based upon Madoff's testimony."[62]

That the Trustee anticipated moving for further testimony once the deposition was over was well-established.  Before the Madoff deposition took place, the Trustee raised the issue that some discovery would likely be necessary to rebut Madoff's testimony.[63]  Between Day 1 and Day 2 of the Madoff deposition, the Trustee's counsel reiterated that limited discovery may be needed following Madoff's deposition, and even pointed to specific former BLMIS employees from whom the Trustee planned to seek testimony.[64]

Permitting this limited discovery in those cases that participated in Madoff's deposition—regardless of whether fact discovery was closed—is also consistent with how the Madoff Deposition Orders have functioned in these cases thus far.  In cases where fact discovery had closed, and defendants failed to opt in to Madoff's Day 1 deposition but were permitted to participate in Madoff's Day 2 deposition, fact discovery was reopened for that purpose.[65]

---

[62] Madoff Day 1 Deposition Order ¶ L; Madoff Day 2 Deposition Order ¶ L.

[63] Hr'g Tr. of Aug. 24, 2016 at 21:6–11.

[64] *See* Hr'g Tr. of May 31, 2017 at 29:6–30:12, ECF No. 16192; Hr'g Tr. of June 29, 2017 at 24:6–15, ECF No. 16332; Mem. of Law in Opp'n to Notices to Depose Bernard L. Madoff on Day 2 Dep. Topics, June 6, 2017, ECF No. 16135; *see also* Trustee's Resp. to Defs.' Reqs. to Depose Bernard L. Madoff, Aug. 19, 2016, ECF No. 13902.

[65] *See* Madoff Day 2 Deposition Order; Obj. Ltr. from Chaitman, Aug. 10, 2017, ECF No. 16495.

The Trustee's request for limited discovery should be evaluated in light of what all parties anticipated and agreed to in the Madoff Deposition Orders. The parties agreed to extend fact discovery to depose Madoff and, with consideration by the Court, for certain follow up discovery into issues that arose as a result of Madoff's deposition. "A district court has wide latitude to determine the scope of discovery." *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). Here, defendants seek to rely on Madoff's testimony because he has made statements that contradict or call into question the otherwise clear and consistent factual record. The Trustee's request for additional discovery is precisely what was anticipated when Paragraph L was included in the Madoff Deposition Orders. The Madoff Deposition Orders contemplated the limited discovery requested herein.

## B.   Federal Rule of Civil Procedure 26(b)(2)

Notwithstanding the Madoff Deposition Orders, the request also meets the standards of Federal Rule of Civil Procedure 26(b)(2). Under Rule 26(b)(2), the Court must consider relevance and the appropriate balance of burden versus the benefit of the additional discovery sought. The testimony sought is not unreasonable or duplicative, and the benefit of this limited discovery far outweighs its burden.

Of the many former BLMIS employees likely to have relevant knowledge, the Trustee seeks to depose only six. By so limiting the request, the Trustee is endeavoring to avoid duplicative and cumulative testimony. The six employees were at BLMIS for years and have significant insight into BLMIS's operations. Madoff himself testified that these individuals are the appropriate witnesses to provide testimony on issues raised in his deposition. The Trustee also previously deposed Bongiorno and Sala in the profit withdrawal proceeding and they were

knowledgeable witnesses about BLMIS operations and processes.[66]  The information the Trustee

seeks from these witnesses will be limited and directly relevant.  Similarly, the testimony sought

from the FBI Special Agent will be limited to the 302 Statement, which only became available to

the Trustee between Days 1 and 2 of Madoff deposition.

Once the party seeking discovery has demonstrated relevance, "the party resisting

discovery has the burden of showing undue burden or expense." *State Farm Mut. Auto. Ins. Co.*

*v. Fayda, No*. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015),

*aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).

Defendants cannot complain that they will face undue burden or expense from this

limited additional discovery.  Several defendants have sought additional discovery even after

their discovery deadlines had passed, including issuing 27 subpoenas for witness testimony in

late 2017.[67]  Defendants entered into a stipulation with the Trustee to stay certain discovery

deadlines until Madoff's deposition was complete.[68]  Just this past month, certain defendants

requested an additional ten months to review documents.[69] There is no prejudice to any party if

the Trustee is allowed to conduct the limited additional discovery bearing on key open issues.

The limited additional testimony sought simply cannot rise to the level of undue burden or

expense.  *See id.*; *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A*., No.

15 Civ. 0293 (LTS)(JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016).

---

[66] *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. Pro. No. 09-11893, 2018 WL 3617813, at *5 (Bankr. S.D.N.Y. July 27, 2018).

[67] The Trustee has no objection to these depositions going forward in cases that participated in Madoff's deposition.

[68] *See* Chaitman Discovery Order.

[69] *See* Ltr. Sur-Reply to Trustee's Mot. from Chaitman, June 23, 2018, ECF No. 17814 (concerning defendants' request to serve a sur-reply seeking ten months to review additional documents).

C.    **Federal Rule of Civil Procedure 16**

As with Rule 26, the Court need not evaluate the Trustee's request for limited additional

discovery under Rule 16 in light of the governing Madoff Deposition Orders.  Nevertheless, even

if the Madoff Deposition Orders did not govern here, the Trustee's request should be granted

under Rule 16.  Courts permit reopening discovery under Rule 16 where the discovery sought is

of a limited, tailored nature.  *See Krawec v. Kiewit Constructors Inc.*, No. 11-cv-0123 (LAP),

2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013) (re-opening discovery despite pending

summary judgment motion, to permit a deposition because limited prejudice and no trial date

set); *Callari v. Blackman Plumbing Supply, Inc.*, No. CV 11-3655 (ADS) (AKT), 2016 WL

1273237 (E.D.N.Y. Mar. 31, 2016) (reopening discovery to allow fact discovery of each opt-in

plaintiff following class action certification).

Rule 16 permits modifying an existing scheduling order based on a showing of good

cause and the diligence of the moving party.  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86

(2d Cir. 2003); *see Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136 (S.D.N.Y. 2011)

("Reopening discovery after the discovery period has closed requires a showing of good cause."

(citing *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991))).  Five factors to be considered

to determine whether good cause exists under Rule 16 are: "(1) the imminence of trial; (2)

whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving

party foresaw the need for additional discovery, in light of the discovery deadline set by the

court; and (5) whether further discovery is likely to lead to relevant evidence." *Lopez v. Ramos*,

No. 11-cv-07790 (NSR), 2013 WL 6912692, at *3 (S.D.N.Y. Dec. 30, 2013) (quoting *Jeannite v.

City of N.Y. Dep't of Bldgs.*, No. 09 Civ. 2464 (DAB), 2010 WL 2542050, at *2 (S.D.N.Y. June

21, 2010)).

No trial date has been set in any of the Madoff Deposition Cases. As set forth above, any possible prejudice to the defendants must be balanced against their desire to use—after the close of discovery in some cases—Madoff's testimony to support their defenses. The Trustee did not know whether additional discovery would be necessary until Madoff was fully deposed. Thus, this request only became ripe upon the conclusion of Madoff's deposition, as anticipated by the Madoff Deposition Orders. The limited discovery sought herein surely will lead to relevant evidence because even Madoff admits that the former BLMIS employees are likely to have greater knowledge about the operations of BLMIS than Madoff himself. Thus, under any standard, the limited discovery should be granted.

**2. Leave of Court Under Rule 30(a)(2) Should Be Granted To Depose the Three Incarcerated Witnesses**

Just like Madoff himself, three of the former BLMIS employees, Bongiorno, Bonventre, and Crupi are also incarcerated. A person confined in prison may only be deposed with leave of the court. Fed. R. Civ. P. 30(a)(2). The Trustee seeks such leave.

In considering whether to grant such leave, the court considers the limitations generally placed on discovery as set forth in Rule 26(b)(2)(B), which limits discovery in three narrow circumstances: (1) the deposition requested is unreasonably cumulative or duplicative, or if the information sought is obtainable from some other more convenient source; (2) the party seeking the deposition has had ample opportunity to obtain the information sought; or (3) the burden or expense of the deposition outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2) & 30(a)(2). Unless a party objecting to a requested deposition can show that the deposition falls into one of the three circumstances outlined in Rule 26(b)(2), the court should grant leave to depose the incarcerated witness. *See Houghtaling v. Tirado-Montes*, No. 8:03-CV-2733-T-30EAJ, 2008

WL 2385511, at *1 (M.D. Fla. June 9, 2008); *Williams v. Greenlee*, 201 F.R.D. 577, 578 (N.D.

Texas 2002).  None of the limitations provided in Rule 26(b)(2) apply here.

As set forth above, the depositions of the incarcerated witnesses are not duplicative or

cumulative, and their benefit far outweighs their likely costs.  The Trustee therefore requests the

Court issue orders substantially in the form annexed hereto as Exhibits G, H and I.

**3.   The Trustee Will Produce Documents to the Defendants and Amend His Initial Disclosures**

The Trustee will produce to defendants documents considered by the Trustee's experts in

rendering their supplemental reports and new reports based on Madoff's testimony, as well as

documents that may be used at the fact depositions of the former BLMIS employees identified

above, to the extent those documents are not already in E-Data Room 1.  After the redaction of

personally identifiable information, the Trustee will also add these documents to E-Data Room 1

on a rolling basis.

Although the Trustee does not seek to depose all former BLMIS employees who may

have relevant knowledge, the Trustee will serve amended initial disclosures in all of the Madoff

Deposition Cases to include the six former BLMIS employees that the Trustee seeks to depose

along with the following: Semone Anderson, Angela Celentano, Kevin Fong, Margaret Gavlik,

Haresh Hemrajani, Winifer Jackson, Betty Mazzone, Jerry O'Hara, and George Perez.  The

Trustee's amended initial disclosures under Rule 26(a)(1)(A)(ii) will also attach indices detailing

documents and information in the Trustee's possession.[70]

---

[70] These indices have already been provided to defendants represented by Chaitman LLP and McDermott, Will & Emery.

**4. <u>Supplemented Expert Disclosures and Additional Experts</u>**

Because the Trustee served expert reports in some of his cases before Madoff's deposition was completed, certain reports—specifically those of Bruce Dubinsky and Lisa Collura—do not fully address new issues raised by Madoff's testimony. The Trustee intends to supplement prior expert reports, and serve expert reports in cases in which expert reports have not been served. The Trustee also intends to disclose two additional experts respectively on convertible arbitrage trading practices and the IBM AS/400 computer system.

Federal Rule of Civil Procedure 26(e)(1) requires that expert reports be supplemented "if the party learns that in some material respect the disclosure or response is incomplete . . . , and if the additional . . . information has not otherwise been made known to the other parties during the discovery process or in writing." Stated alternatively, "[t]he duty to supplement arises when the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate." *Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014) (citations omitted). The time for supplementing expert reports is not limited to the expert discovery period, and it is required virtually any time new information becomes available after the initial report has been issued. Fed. R. Civ. P. 26(a)(2)(D).

A supplemental report is unquestionably proper under Rule 26 when it is produced in response to fact discovery that occurs <u>after</u> the issuance of expert reports. *See S.E.C. v. Boock*, No. 09 Civ. 8261 (DLC), 2011 WL 3792819, at *11 (S.D.N.Y. Aug. 25, 2011) (supplemental report issued after close of discovery was proper where additional, court-approved discovery had taken place, and the supplemental report addressed that additional discovery); *Noffsinger v. Valspar Corp.*, No. 09 C 916, 2012 WL 5948929, at *4 (N.D. Ill. Nov. 27, 2012) (supplemental report proper where discovery had been reopened to allow for a second deposition of plaintiff, and plaintiff changed his original testimony); *OmniSource Corp. v. Heat Wave Metal*

28

*Processing, Inc.*, 5:13–CV–772–D, 2015 WL 3452918, at *10 (E.D.N.C. May 29, 2015) ("In

light of the substantial amount of new information that [the expert] received after his initial

report and because [expert] relied on some of this new information when formulating his

supplemental opinions, the supplemental report . . . is a true supplement.") (citations omitted)).

Mr. Dubinsky's report was issued in 2013.  Similarly, Ms. Collura's report has remained

consistent in its reconciliation of cash transactions and tracing of customer funds from the 703

Bank Account since 2012.  The Madoff deposition was first requested in the summer of 2016

and was taken over five days in 2016 and 2017.  Defendants participating in Madoff's deposition

continued—and still continue—to seek additional fact discovery from the Trustee related to the

proof of the Ponzi scheme.  The unusual circumstance presented here—where fact discovery

continues during and even beyond the expert disclosure period—militates strongly in favor of

supplementation.

In various meet and confers, defendants have objected to the Trustee supplementing his

expert reports because they say discovery is closed and additional discovery is not permitted.

This position is specious, as defendants clearly seek to use Madoff's deposition testimony.  It

would be inequitable to limit the Trustee to his experts' historical expert reports but allow

defendants to use Madoff's testimony in an attempt to contradict these expert reports, or raise

additional issues the experts could not have addressed.  And courts generally are loathe to

preclude experts from issuing supplemental reports.  *See, e.g., Houlihan v. Invacare Corp.*, No.

CV 2004-4286(NGG)(MDG), 2006 WL 1455469, at *1 (E.D.N.Y. May 24, 2006) ("[C]ourts in

the Second Circuit . . . have generally not ordered preclusion" of supplemental reports); *S.W. v.

City of New York*, No. CV 2009-1777 (ENV)(MDG), 2011 WL 3038776, at *4 (E.D.N.Y.  July

25, 2011) ("exclusion of expert testimony is a drastic remedy" (quotation and citations omitted)).

Moreover, supplementation is required to the extent that documents and information not previously available to the experts at the time their reports were issued later becomes available. Certain reels of microfilm were recently restored and provided to certain defendants.  In addition, the convictions of five former BLMIS employees became final on January 11, 2017, and the FBI recently returned over 200 boxes of documents to the Trustee following the close of the Criminal Trial.  And finally, Madoff's 302 Statement, which was used at Day 2 of his deposition to confront him with his immediate post-fraud statements as to the Ponzi scheme's start date, was obtained from the government on May 17, 2017.  Such documents should be analyzed by the experts as part of the supplementation of their reports. *See, e.g., S.W.*, 2011 WL 3038776, at *4 (where experts' supplemental reports relied on certain governmental agency documents not previously produced and were thus "previously unknown or unavailable," reports were appropriately issued under 26(e)); *S.E.C. v. McGinnis*, No. 5:14-cv-00006, 2018 WL 1633592, at *4 (D. Vt. Apr. 3, 2018) (expert did not know of additional evidence at time of creating original report and thus documents were "unavailable").

In addition to supplementing the reports of Mr. Dubinsky and Ms. Collura, the Trustee also intends to disclose an expert on convertible arbitrage trading practices and an expert on the IBM computer systems used at BLMIS.  As addressed in Section B.3 above, Madoff testified in his deposition that the convertible arbitrage trades appearing on IA Business customer statements were not a part of the Ponzi scheme at BLMIS and instead, the product of legitimate trading.[71] The Trustee intends to use the testimony of a convertible arbitrage expert to explain two things: (1) how legitimate convertible arbitrage trading was conducted in the 1980s and (2) how the books and records of BLMIS illustrate that genuine convertible arbitrage trading was not taking

---

[71] Apr. 26, 2017 Madoff Tr. at 12.

place.  Similarly, Madoff testified that the IA Business used IBM computer systems in the 1980s

and 1990s when Madoff claimed he engaged in legitimate trading on behalf of his IA Business

customers.[72]  The Trustee intends to use the testimony of this expert to demonstrate that BLMIS

did not have the capability to conduct trading on behalf of its IA Business customers using this

computer system.  Such disclosures would be made within the ninety-day period immediately

following the conclusion of the limited document disclosure and deposition testimony sought

herein.

## CONCLUSION

The Trustee respectfully requests that the Court grant the limited discovery and enter the

orders attached to this Motion as Exhibits G-J.

Dated:   September 21, 2018
       New York, New York

Respectfully submitted,

*/s/ Stacey A. Bell*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York  10111
Tel: (212) 589–4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Stacey A. Bell
Email: sbell@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Estate of Bernard L.
Madoff*

---

[72] Apr. 26, 2017 Madoff Tr. at 13:6–14:21.

31