# EXHIBIT 6

**Page 211**

```
 1            UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF NEW YORK
 2
 3
    In re:                              )
 4                                      )
    SECURITIES INVESTOR                 )
 5  PROTECTION CORPORATION,             )
                                        )
 6      Plaintiff-Applicant,            )
                                        )
 7  vs.                                 )  08-01789 (SMB)
                                        )
 8  BERNARD L. MADOFF                   )
    INVESTMENT SECURITIES, LLC,         )
 9                                      )
        Defendant.                      )
10                                      )
                                        )
11  In Re:                              )
                                        )
12  BERNARD L. MADOFF,                  )
                                        )
13      Debtor.                         )
                                        )
14
15
16          Videotaped Deposition of BERNARD L.
17  MADOFF, VOLUME II, taken on behalf of the Customers,
18  before K. Denise Neal, Registered Professional
19  Reporter and Notary Public, at the Federal
20  Correctional Institution, 3000 Old Highway 75,
21  Butner, North Carolina, on the 27th day of April,
22  2017, commencing at 9:11 a.m.
23
24
25                    * * * * *
```

1  APPEARANCES OF COUNSEL:
2    On Behalf of the Customers:
3        HELEN DAVIS CHAITMAN, Esq.
4        Chaitman, LLP
5        465 Park Avenue
6        New York, New York  10022
7        (908) 303-4568
8        hchaitman@chaitmanllp.com
9
10   On Behalf of the Trustee:
11       DAVID J. SHEEHAN, Esq.
12       AMANDA E. FEIN, Esq.
13       Baker Hostetler
14       45 Rockefeller Plaza
15       New York, New York  10111-0100
16       (212) 589-4621
17       afein@bakerlaw.com
18
19   On Behalf of the Deponent:
20       PETER A. GOLDMAN, Esq.
21       12 Fairlawn Parkway
22       Rye Brook, New York  10573
23       (914) 935-6857
24       pagoldman@gmail.com
25

1  APPEARANCES OF COUNSEL:
2       Videographer:
3          Ken Morrison, CLVS
4
5               * * * * *
6
7              CONTENTS
8  THE WITNESS:  BERNARD L. MADOFF          EXAMINATION
9        BY MR. SHEEHAN                          216
10       BY MS. CHAITMAN                         368
11       BY MR. SHEEHAN                          381
12
13              * * * * *
14
15           INDEX OF EXHIBITS
16 FOR THE TRUSTEE:                               PAGE
17 Exhibit 1, Customer statements                 230
18 Exhibit 2, Customer statements                 234
19 Exhibit 3, Copies of Rolodex cards             261
20 Exhibit 4, Customer statement - 8-7-84         299
21 Exhibit 5, Customer statement                  305
22 Exhibit 6, Customer statements                 310
23 Exhibit 7, Focus reports - 1984                333
24
25

Page 242

1  and you're long convertible bonds, uh-huh.
2       Q.  Okay.  So that means that you're still
3  holding them since the 6-30, the 6-7 and 6-8
4  transactions?
5       A.  Correct.
6       Q.  Okay.  And again, the price there under the
7  close-out is a mark to market price?
8       A.  I'm assuming that they're mark to market
9  prices.  You know, I'm not sure going back into '83
10 how they handled the -- whether they actually mark
11 to market at that stage or they just carried it
12 forward at the same price that it was bought at.  I
13 don't know.
14      Q.  Aren't you supposed to tell the customer
15 what their market value is?
16      A.  No.
17      Q.  And their positions?
18      A.  No.  You're not -- you're not obligated to
19 tell them.  You're obligated to tell them -- you
20 know, obviously, what you wouldn't be able to do was
21 put a price on it that was totally unrelated to the
22 market, that would be unrealistic to the market
23 price; but typically our systems, you know, I'm
24 assuming that they were the same in '83 or, you
25 know, as they were, you know, at a later date.  They

Page 243

1   get mark to market by the system.
2       Q.  Okay.
3       A.  So that's why, you know, typically I've had
4   no reason to believe that it wasn't handled that way
5   in '83, but I can't tell you for sure.
6       Q.  Again, would that be Annette or one of her
7   people doing this operational work?
8       A.  It would be the -- it depends upon whether
9   the system did this or they did it manually.
10      Q.  Okay.  But would Annette Bongiorno be
11  responsible for the operational --
12      A.  Someone in the -- well, someone in that
13  department.  Back in '83, you know, there were
14  different people.  It could have been Dan Bonventry,
15  you know.  I don't know.
16      Q.  Right.  Let's go to the next statement.
17  This is August 31, '83 and there are three entries
18  there on August 8th.  Do you see them?
19      A.  And by the way, let me just correct
20  something so you know.  Annette Bongiorno is
21  basically a bookkeeper.  She's not really what we
22  would deem to be a senior operations person,
23  particularly in 1983.  She's more of a bookkeeper
24  clerk.  She's not a systems person or she's not a
25  cashier, an operations person.

Page 244

1   Q.   Let me clarify that then because when I
2   asked you earlier who would be responsible, you told
3   me Annette.  Is there someone else who would have
4   been responsible?
5   A.   She's responsible for the client.  She
6   handles the client business.  She doesn't -- like
7   she's not in the back office type of an operations
8   that receive or deliver or even the mark to the
9   market.  That's not something that she would handle.
10  Q.   In this '83/'84 time frame --
11  A.   At any time.
12  Q.   I understand that, but my question was
13  going to be in that time frame who would have been
14  that back office person?
15  A.   I don't remember.  It could have been Dan
16  Bonventry.  It could have been, you know, Irwin
17  Lipkin.  It could have been, you know, Sylvia
18  Hendel.
19  Q.   All right.  Let's turn as I was just going
20  to to August 31, 1983.  Again, this purports to be a
21  statement for Leonard Alpern of that date.  If you
22  would look at the entries for August 8th and tell me
23  what they represent to you?
24  A.   August 8th?
25  Q.   Yep.

|   |   |
|---|---|
|   | Page 247 |

1               MR. SHEEHAN:  I'm sorry.
2               MS. CHAITMAN:  Which line are you looking
3    at?
4               MR. SHEEHAN:  I apologize.  It's 6-15.
5               THE WITNESS:  Okay.
6               MR. SHEEHAN:  I'm looking at the wrong
7    line.  I apologize.
8               MS. CHAITMAN:  Okay.  6-15, okay.
9          Q.   (By Mr. Sheehan)  Yeah.  6-15, do you see
10   fractional shares?
11         A.   Uh-huh.
12         Q.   See that?  Would that indicate to you that
13   it had been converted?
14         A.   I'm responding the same way I said before.
15   I don't know whether it was converted or whether --
16   I don't know how they handled the fractional shares.
17         Q.   And do you have an explanation of why you
18   would have fractional shares showing on 6-15 when,
19   in fact, the preferred wasn't delivered until 8-8?
20         A.   I can't respond to that.  I don't know how
21   they handled that.  I'm not an operations person.
22              MR. SHEEHAN:  Okay.  All right.
23              (Discussion off the record.)
24              MR. GOLDMAN:  I can see.
25         Q.   (By Mr. Sheehan)  Yesterday Ms. Chaitman