**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Geraldine E. Ponto
Gonzalo S. Zeballos

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERICO CERETTI, *et al.*<br><br>    Defendants. | Adv. Pro. No. 09-01161 (SMB) |

## MOTION FOR THE ISSUANCE OF LETTER OF REQUEST

1. Plaintiff Mr. Irving H. Picard, as trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), substantively consolidated with the estate of Bernard L. Madoff ("Madoff"), through the Trustee's attorneys, Baker & Hostetler LLP, submits this motion for the issuance of a Letter of Request to the Registrar of the Supreme Court in Hamilton, Bermuda for the examination of non-party, Mr. Craig Perry.

2. This motion is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and Bermuda. Service will be effected pursuant to the Hague Service Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents, to which the United States and the United Kingdom, inclusive of Bermuda, are signatories.

3. Mr. Perry is a foreign citizen and a resident of Bermuda. Thus, the Letter of Request provides the only means of compelling discovery from him.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme**

4. Through BLMIS, Madoff's investment advisory business, he conducted a decades-long Ponzi scheme of breathtaking scale. His fraud was sustained by infusions of money from around the globe. In particular, domestic and foreign investment vehicles, sometimes colloquially known as "feeder funds," injected several billions of dollars into his scheme. (*See* Trustee's Fourth Amended Complaint filed on March 17, 2014, ¶ 1 (ECF No. 100) (hereinafter "FAC")).

5. Included among these feeder funds were Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," and together with Kingate Global, the

2

"Kingate Funds"), both of which are in liquidation proceedings in the British Virgin Islands and in Bermuda. (*Id.*)

6. Since their inception, the Kingate Funds deposited a combined total of approximately $1.7 billion with BLMIS and over time withdrew nearly a billion dollars from BLMIS. (*Id.* ¶¶ 2-3.)

7. The Trustee alleges that these withdrawn funds comprise customer property and constitute avoidable transfers under the United States Bankruptcy Code and other applicable law that the Trustee seeks to recover for equitable distribution. (*Id.* ¶ 248.)

8. More specifically, the FAC seeks, *inter alia*, to avoid and recover $926,351,905 in fraudulent transfers made to the Kingate Funds under the Bankruptcy Code, the New York Debtor Creditor Law, and SIPA § 78fff-2(c)(3). (*Id.* ¶ 8.)

**Ceretti, Grosso and the Kingate Funds**

9. Following an introduction to Madoff by the head of a large feeder fund, Tremont (Bermuda) Limited ("Tremont") (*id.* ¶ 94), Mr. Ceretti and Mr. Grosso formed Kingate Global in 1994 in the British Virgin Islands ("BVI"). Kingate Global opened an account with BLMIS that same year. By that time, BLMIS would accept only institutional investors.

10. Mr. Ceretti and Mr. Grosso were sophisticated investment professionals with decades of combined experience in the investment industry.

11. In 1996, Mr. Ceretti and Mr. Grosso created a sub-fund of Kingate Global to attract investments in Deutsche Marks that would then be converted to U.S. currency and deposited with BLMIS. That same year, the sub-fund opened a customer account with BLMIS. In 2000, that sub-fund became a separate BLMIS feeder fund, Kingate Euro, also formed in the BVI, to solicit investments abroad in Euros that would then be converted to U.S. currency and deposited with BLMIS. Kingate Euro assumed the rights to the sub-fund's account with BLMIS.

3

Mr. Ceretti and Mr. Grosso structured the Kingate Funds separately, but they operated relative to BLMIS substantially the same.

12. At the time they formed the Kingate Funds, Mr. Ceretti and Mr. Grosso headed an asset management and investment advisory firm in London called FIM Limited. It was founded by Mr. Grosso in 1981 (*id.* ¶¶ 35, 49), but Mr. Ceretti became an equal owner in or about 1986. Mr. Ceretti and Mr. Grosso later co-founded FIM Advisers LLP in London, which succeeded FIM Limited in 2005 (*id.* ¶¶ 36, 52).

13. Despite having an existing company that could have managed the Kingate Funds, Mr. Ceretti and Mr. Grosso formed a separate management company by the name of Kingate Management Limited ("KML") in Bermuda to act as manager for the Kingate Funds. (*Id.* ¶ 4.) KML employees frequently communicated with, and sought advice from, Mr. Ceretti and Mr. Grosso on the management and operation of KML and the Kingate Funds.

14. Mr. Grosso also frequently communicated, directly or indirectly, with the Kingate Funds' investors, often addressing concerns those investors raised about the Kingate Funds, BLMIS, or Madoff. In fact, one investor referred to Mr. Grosso as "Mr. Kingate." Tremont was appointed as co-manager with KML for Kingate Global, a relationship that lasted about ten years. (*Id.* ¶ 106.)

15. Mr. Ceretti and Mr. Grosso caused KML to engage the FIM entities as a consultant and distributor. The FIM entities provided marketing, analysis, management, and consulting services to KML and the Kingate Funds. As a result, much of KML's management responsibilities were delegated to the FIM entities. (*Id.* ¶¶ 5, 46, 51, 112.)

16. FIM had a robust due diligence process and marketed itself to the public accordingly. (*Id.* ¶¶ 122-27.) In addition to acting as consultant, at least fourteen of FIM's investment funds were invested in the Kingate Funds. The FIM funds' investments in the Kingate

4

Funds required the performance of due diligence on the Kingate Funds and BLMIS. The diligence conducted by FIM is part of the cumulative knowledge that can be imputed to the Kingate Funds via Mr. Ceretti and Mr. Grosso.

17. To complete their business enterprise relative to investing with BLMIS, Mr. Ceretti and Mr. Grosso formed estate trusts in Jersey and shell companies, through which they beneficially owned KML. Through El Prela Trust, and its holding companies, Mr. Ceretti personally received millions of dollars in management fees paid to KML as a result of its work on behalf of the Kingate Funds. (*Id.* ¶¶ 54, 257.) Through The Ashby Trust, and its holding companies, Mr. Grosso personally received millions of dollars in management fees paid to KML as a result of its work on behalf of the Kingate Funds. (*Id.* ¶¶ 63, 257.)

18. Throughout the Kingate Funds' fourteen years of operation, Mr. Ceretti and Mr. Grosso spoke directly with Madoff and others at BLMIS, and met with Madoff on multiple occasions. (*Id.* ¶¶ 99, 100-02.)

19. After Madoff confessed to running a Ponzi scheme in 2008, the Kingate Funds went into winding up proceedings in the BVI and Bermuda. KML also went into a winding up proceeding in Bermuda.

20. Mr. Ceretti and Mr. Grosso were essential, and dominant, parties to the enterprise they engineered to benefit from Madoff's fraud, and they acted through the FIM entities and the Kingate Funds' service providers, all of which is relevant to the allegations in the Trustee's FAC and give rise to this Request.

21. On Mr. Ceretti's and Mr. Grosso's direction, the Kingate Funds engaged other service providers for the Kingate Funds, including Citi Hedge Fund Services Limited, based in Bermuda, as administrator, HSBC Bank Bermuda f/k/a Bank Bermuda Limited ("HSBC"), as

5

custodian, and PricewaterhouseCoopers, through its Bermuda division PwC Bermuda, as auditor. (*Id.* ¶¶ 72, 80, 135.)

**Mr. Perry's Connections to the Kingate Funds**

22. HSBC was the bank through which the Kingate Funds made all of their deposits with, and redemptions from, BLMIS. The Kingate Funds invested exclusively with BLMIS.

23. HSBC served as the Kingate Funds' custodian for the entirety of its operations. The purpose of this motion is to obtain testimony in connection with HSBC's role as the Kingate Funds' custodian. Many of the issues and allegations contained in the FAC are relevant to Mr. Perry, the Senior Account Manager and a primary HSBC contact for the Kingate Funds.

24. The review of documents produced to the Trustee establish that Mr. Perry has knowledge that is highly relevant to the Trustee's claims in the FAC. The allegations and facts discussed below give rise to the need for the Letter of Request for the examination under oath of Mr. Perry.

25. HSBC entered into custodian agreements with Kingate Global and Kingate Euro on March 1, 1994 and May 1, 2000, respectively.

26. Since 1994 and until the present, HSBC has maintained and serviced multiple bank accounts on behalf of the Kingate Funds.

27. During that time at least $1.7 billion dollars was transferred to and/or from the Kingate Funds' HSBC bank accounts.

28. As part of HSBC's role as the Kingate Funds' custodian, Mr. Perry frequently communicated with the Kingate Funds' agents and HSBC employees about the Kingate Funds' bank accounts. In particular, Mr. Perry communicated with Mr. Grosso, Mr. Wetherhill, and Ms. Salahuddin. These discussions included the maintenance of the Kingate Funds' bank accounts, transactions entered into on the Kingate Funds' behalf, and funds paid into and out of the bank

accounts. HSBC did not have custody of the Kingate Funds' investors' assets under management, which were held at BLMIS.

29. Mr. Perry has knowledge that is highly relevant to the claims in this proceeding.

30. Specifically, the Trustee anticipates that Mr. Perry will be able to provide further information in relation to the issues and allegations in paragraphs 2-3, 8, 79-80, 217-222, 225, 242-261 of the FAC.

31. For the above reasons, the Trustee believes that the proposed Letter of Request, attached hereto as Exhibit 1, is just and appropriate and respectfully requests that the Court issue such Letter of Request to the indicated Judicial Authority.

Dated: New York, New York
      October 3, 2018

Respectfully submitted,

 /s/ Geraldine E. Ponto
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Gonzalo S. Zeballos
Email: gzeballos@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*