# EXHIBIT 2

```
                                                              Page 1

 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Lead Case No. 08-99000-smb

 4   Case No. 08-01789-smb

 5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 6   In the Matter of:

 7   SECURITIES INVESTOR PROTECTION CORPORATION,

 8              Plaintiff,

 9         v.

10   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

11              Defendants.

12

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, NY  10004

17

18              July 25, 2018

19              10:10 AM

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN
```

Page 2

1  HEARING re Conference re Motion for an Order Establishing
2  Omnibus Proceeding for the Purpose of Determining the
3  Existence, Duration and Scope of the Ponzi Scheme at BLMIS
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by: Sonya Ledanski Hyde

Page 3

1  APPEARANCES:
2
3  BAKER HOSTETLER
4      Attorneys for Trustee BLMIS
5      45 Rockefeller Plaza
6      New York, NY 10111
7
8  BY: NICHOLAS J. CREMONA
9       AMANDA E. FEIN
10      STACEY A. BELL
11      MELISSA L. KOSACK
12      MAXIMILLIAN S. SHIFRIN
13
14  DENTONS US LLP
15      Attorneys for Defendants
16      1221 Avenue of the Americas
17      New York, NY 10020
18
19  BY: CAROLE NEVILLE
20
21
22
23
24
25

Page 4

1  PRYOR CASHMAN LLP
2      Attorneys for the Defendants
3      7 Times Square
4      New York, NY 10036
5
6  BY: RICHARD LEVY, JR.
7
8  MCDERMOTT WILL & EMERY LLP
9      Attorneys for Sage Associates, Sage Realty, Malcolm
10     Sage, Martin Sage, Ann Sage
11     340 Madison Avenue
12     New York, NY 10173
13
14  BY: ANDREW B. KRATENSTEIN
15
16  HUNTON ANDREWS KURTH LLP
17     Attorneys for Defendants
18     200 Park Avenue
19     New York, NY 10166
20
21  BY: RICHARD A. RICH
22
23
24
25

Page 5

1  FISHERBROYLES LLP
2      Attorneys for Defendants
3      445 Park Avenue
4      New York, NY 10022
5
6  BY: RICHARD A. KIRBY
7
8  STEVENS & LEE
9      Attorneys for Legacy Capital
10     485 Madison Avenue, 20th Floor
11     New York, NY 10022
12
13  BY: NICHOLAS F. KAJON
14
15  CHAITMAN LLP
16     Attorneys for Defendants
17     465 Park Avenue
18     New York, NY 10022
19
20  BY: HELEN DAVIS CHAITMAN
21
22
23
24
25

Page 6

1  ALSO PRESENT TELEPHONICALLY:
2
3  KEVIN H. BELL
4  PATRICK MOHAN
5  JOSHUA TUCKER
6  DAVID J. SHEEHAN
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 7

1      PROCEEDINGS
2      THE COURT: Go ahead.
3      MS. BELL: Good morning, Your Honor. Stacey Bell,
4  counsel for the Trustees, BakerHostetler. Your Honor, we're
5  here on a status conference on the Trustee's motion for an
6  order establishing an omnibus proceeding on the existence,
7  duration, and scope of the Ponzi scheme at BLMIS. Since the
8  last time we were here, we've refiled that motion, and so
9  now we're here on an omnibus Ponzi pretrial proceeding.
10     If this Court will recall, the Trustee filed a
11 motion in February seeking to consolidate the remaining good
12 faith actions on the issue -- on the Ponzi issue. And in
13 response to the Trustee's motion, the Trustee received a
14 number of objections. 106 cases filed objections. There
15 were eight law firms. We've since -- that number has since
16 dropped to seven law firms with 105 cases at issue.
17     So, a month ago, the parties appeared before Your
18 Honor to update the Court on the status of the negotiations.
19 And at that time, the Trustee reported that since receiving
20 the Defendant's objections, the parties had been engaged in
21 negotiations seeking to streamline the issues for the Court.
22 More specifically, the parties were engaged in discussions
23 about a consolidated proceeding that would address discovery
24 only, tabling issues of trial and dispositive motions for a
25 later date.

Page 8

1      Based on the progress that the parties had made
2  during the course of their negotiations, as of the last
3  hearing, the Trustee expressed optimism that we would be
4  able to enter into a revised consensual order. And the
5  objecting parties agreed with the Trustees -- the Trustee
6  and acknowledge the progress that the parties had made to
7  date.
8      Subsequent to the hearing, Your Honor, the Trustee
9  sent a revised proposed order to the Defendants. That is
10 the order that is now before the Court. And the revised
11 order, as I stated before, we refiled a pretrial order
12 because we significantly limited -- and it indicated the
13 substantial overhaul and changes between the initial order
14 and the revised order.
15     The Trustee's counsel had a meeting with
16 Defendants with the objecting Defendants, where it was our
17 hope that we would continue in the same vain as the initial
18 rounds of discussions, making progress towards a consensual
19 order.
20     At the meeting, as reflected in our reply papers,
21 the objecting Defendants informed the Trustee that they
22 could not agree to the order because as a threshold matter,
23 discovery was closed in a majority of their cases and the
24 fact, of course -- discovery renders this proceeding
25 problematic.

Page 9

1      In the Defendant's view, the only cases that could
2  proceed on this consolidated basis would be cases where fact
3  discovery is open under the CMO. The Trustee obviously --
4      THE COURT: How many of those?
5      MS. BELL: There are about seven or so cases, Your
6  Honor, and I'll go through those categories in just a
7  moment. But there are seven cases in the Trustee's view
8  that are open with -- under the existing CMOs. The Trustee
9  disagrees with Defendant's position, and we decided to file
10 a motion or a reply just in accordance with the Court's
11 directive at the last hearing, that that reply be put in by
12 July 18th.
13     The day before the filing, the Trustees received -
14 - the Trustee received comments to our proposed order, and
15 those comments highlighted and confirmed how far apart the
16 parties were. In the Trustee's view, we've accommodated and
17 we've sought to accommodate the Defendant's position vis-à-
18 vis our proposed revised order on what a restructured
19 omnibus Ponzi proceeding could look like. And we think that
20 the revised order is judicially efficient and it streamlines
21 the discovery process going forward on the Ponzi issue.
22     And so, Your Honor, I want to talk just a bit
23 about how the Trustee's grouped the cases because, in our
24 view, there are three groups of cases. The first group --
25 and that's the question Your Honor just had -- the cases

Page 10

1 where fact discovery is open under existing CMOs. The
2 second group, in the Trustee's view, would be the cases that
3 participated in Madoff's deposition. And then the third
4 group of cases are cases where discovery is closed and they
5 did not participate in Madoff's deposition. And I'll take
6 those (indiscernible).
7        Cases with open fact discovery -- I don't think
8 that there would -- I don't expect there to be disagreement,
9 and I think we've gotten that far with the negotiations
10 where Defendants would agree that those would be part of a
11 consolidated proceeding. There are seven of those cases.
12       With respect to the cases that participated in
13 Madoff's deposition, of the objecting parties there are 92
14 of those cases that participated in Madoff's deposition.
15 And given the deposition, in the Trustee's view, it's
16 reasonable at this juncture to seek to take additional
17 discovery on the Ponzi issue to refute the issues injected
18 into the case by Mr. Madoff's deposition.
19       And, Your Honor, just -- if you would indulge me a
20 bit, just to go through how Madoff's deposition --
21       THE COURT: What discovery does the Trustee need?
22 The Trustee's been preparing these cases for ten years or
23 eight years.
24       MS. BELL: Yes, Your Honor, and that is absolutely
25 correct. And I think as we addressed at the last hearing,

Page 11

1 Mr. Madoff injected certain issues into the case that the
2 Defendants themselves have agreed that these are completely
3 new issues, and we have transcripts where we've talked about
4 that. And so, the Trustee would like the opportunity to put
5 in additional fact witnesses who can testify --
6       THE COURT: But who? What? Who do you --
7       MS. BELL: So, there are certain witnesses that
8 Mr. Madoff himself mentioned at the deposition, so we can
9 start with those individuals like Mr. Dan Bonventre,
10 individuals like Ms. Annette Bongiorno, Ms. Condoleezza
11 Picks. There are a number of individuals who either worked
12 on the convertible arb transactions that are clearly at
13 issue, just based -- coming out of Mr. Madoff's deposition.
14 The Treasury transactions that the Defendants, I think, have
15 now wrapped a lot of their defenses around.
16       THE COURT: But let me ask you this. It's always
17 been the Trustee's theory that the Ponzi scheme began in the
18 '70s, I think.
19       MS. BELL: Yes, Your Honor.
20       THE COURT: Okay. So I assume you would have been
21 able to prove that when -- or develop that case over the
22 last eight years because Madoff allocuted that it began in
23 1992 or something like that, right?
24       MS. BELL: Yes.
25       THE COURT: So, why do you need more discovery?

Page 12

1       MS. BELL: Yes. He allocuted that the Ponzi began
2 in the 1990s but Mr. Madoff's testimony has changed over
3 time. Your Honor, and to be clear, the Trustee --
4       THE COURT: But he's never deviated from that, I
5 don't think.
6       MS. BELL: Well, I think he's deviated in a number
7 of significant ways. He said that the Ponzi scheme began in
8 '92 and then in his deposition, he walked away from that and
9 said, well, the convertible arb transactions were always
10 real. And so now it's now longer a time limitation; it's
11 become a strategy-based limitation.
12      The convertible arb transactions purportedly
13 occurred through 1998. And so are we at '98 or are we at
14 '92? There is also -- Mr. Madoff in his allocution said
15 that the split strike conversion strategy did not happen;
16 that he promised customers that he would have a basket of
17 securities. He did not. And as part of that promise he
18 also promised that he would invest in treasury, and he
19 didn't do it. And he said that --
20      THE COURT: It's been awhile since I looked at his
21 deposition, but as I recall, he was talking about earlier
22 days in his deposition. And I thought he always said that
23 once he started the split strike conversion strategy -- or
24 he never even addressed what happened after 1992.
25      MS. BELL: I think he said in later depositions

Page 13

1 that the convertible arb strategy was real, and those
2 transactions went through '98. I think --
3      THE COURT: So, who would you want to depose about
4 that?
5      MS. BELL: With respect to convertible arb, I
6 think there are a number of former BLMIS employees. Ms. Jo
7 Ann Sala, who worked with Mr. David Kugel on the convertible
8 arb transactions. So, Mr. Kugel as well, who also pled.
9 And these are individuals who testified at the criminal
10 trial.
11     What the trustee is seeking to do is to have a
12 limited number of former BLMIS employees who can testify to
13 the issues that admittedly the Defendants have said that
14 these are new issues and these things completely change the
15 case.
16     THE COURT: Do you know what they're going to say?
17     MS. BELL: I'm sorry?
18     THE COURT: Do you know what they're going to say,
19 these witnesses?
20     MS. BELL: Your Honor, we have a good sense of
21 what they're going to say just based on --
22     THE COURT: So, why don't you just call them as
23 witnesses at the trial?
24     MS. BELL: Your Honor, we are preparing to do
25 that. I think, though, that the Trustee -- the record is

4 (Pages 10 - 13)

Page 18

1  he was deposed for three days. And day two he was deposed
2  for two days.
3       THE COURT: Okay.
4       MS. BELL: But, Your Honor, the arguments have
5  advanced beyond the convertible arb and beyond the start
6  date of the Ponzi scheme. So --
7       THE COURT: But that's what I'm -- that's what I'm
8  trying to find out, because all your order says is we've got
9  four months of fact discovery and it's not supposed to be a
10 complete do-over.
11      MS. BELL: Right, and I agree with that, Your
12 Honor. So, what the Trustee was attempting to do in this
13 order was, in our meet and confer, the Defendants raised the
14 issue of the 27 subpoenas that Ms. Chaitman served. If you
15 recall in the original order, the Trustee had a limited
16 number of discovery. We tried to do it based on numbers so
17 the Court would see from the Trustee's perspective we're not
18 trying to have this go for many, many months and to be an
19 open-ended process.
20      In this order we did not do that simply to
21 accommodate the request to have those 27 trader subpoenas.
22 And I think that's worth talking about as well, because not
23 only do we have Madoff's deposition that the Defendants have
24 requested but there are 27 trader subpoenas of former BLMIS
25 employees who worked on the House 5 side. I think there was

Page 19

1  one who was on the House 17 side, but we want the
2  opportunity to talk to the House 17 employees. There is a
3  criminal trial. In 2014, five employees were found guilty.
4  There are a number of plea allocutions where we would like
5  the opportunity to have -- and we recognize that that's
6  admissible evidence, but to explore those and to unpack
7  those to address the issues that are at play in this case.
8       And so Defendants have not only stated the start
9  date issue and the convertible arb issue, but there's an
10 issue about how subscription -- how redemption requests were
11 paid. There was no Ponzi scheme at all. The issues have
12 ballooned and mushroomed from beyond where we started. And
13 so if the Trustee was preparing a case -- and we certainly
14 believe, again, that we have enough admissible evidence to
15 prove our case, but as a matter of fairness and equitable
16 principles, this case should go forward on a full and
17 balanced record.
18      THE COURT: But a lot of the Defendants say we
19 don't -- you know, discovery's cut off.
20      MS. BELL: But --
21      THE COURT: You should be able to prove your case.
22 If they don't want discovery, why do you want to keep
23 discovery open?
24      MS. BELL: Because, Your Honor, we kept it open on
25 the Ponzi issue, I think, from -- that was always

Page 20

1  contemplated in connection with Mr. Madoff's deposition.
2       The other fact I would say is, again, if discovery
3  happens in some of the cases and not in the other cases,
4  this becomes an incomplete record for some cases and on the
5  same Ponzi scheme. So I think there is an issue there that
6  the Court would need to address.
7       And if we go forward, and the Trustee is prepared
8  to go forward on these cases one at a time -- but we've
9  tried that before in the Cohen case, if the Court will
10 recall, and there was a motion to intervene. And so, again,
11 we're not trying to get --
12      THE COURT: That was unsuccessful and affirmed on
13 appeal so --
14      MS. BELL: Correct, correct. We're not trying to
15 get an advantage here. It's the Trustee's -- we're not
16 trying to do a one-upmanship here. I think the idea is to
17 proceed in a way that is rational, that is judicially
18 efficient. It's an opportunity for the Court and for the
19 parties to streamline this process, because otherwise, we
20 continue with these discovery disputes for certain types of
21 records. There -- we've integrated and built into the
22 process where we would have Judge Moss overseeing some of --
23 to the extent that discovery disputes come up, to take that
24 off the Court's calendar, and because Judge Moss is familiar
25 with these issues that have come up before.

Page 21

1       THE COURT: Well, the Defendants would have to
2  consent to that but --
3       MS. BELL: Yes, Your Honor, I agree with that.
4       THE COURT: All right. All right. Let me hear
5  from the Defendants.
6       MS. CHAITMAN: Good morning, Your Honor. Helen
7  Davis Chaitman on behalf of a number of Defendants. Your
8  Honor, when I answered the complaints on behalf of all of my
9  clients, I asserted that we did not believe that there was a
10 Ponzi scheme and that we believed that Madoff purchased the
11 securities.
12      So these issues have been in this case from day
13 one. And the reason that I have embarked on this now two-
14 year effort to obtain the trading records is because I
15 believe I can prove -- I've already gotten some records
16 which I've been able to prove that the securities were
17 actually purchased for some of my customers.
18      Now, there's -- the Court has been so strict in
19 enforcing the case management orders and the deadlines in
20 the case management orders, and most of that has worked
21 against the Defendants. Because we've come in and asked for
22 additional time and Your Honor has been very strict about
23 it, which, of course, is -- I'm not challenging your right
24 to do that. Of course you have the right to do that. But
25 that should be applied to the Trustee as well.

6 (Pages 18 - 21)

Page 38

1  - how do you try it as a consolidated proceeding where
2  discovery has already been taken, I guess, in some cases?
3  　　　MS. BELL: They have not on the Ponzi issue, Your
4  Honor, for BLMIS employees.
5  　　　THE COURT: Well, whatever the issue was. Some of
6  them are trial ready --
7  　　　MS. BELL: Well, just as Defendants. We've not
8  taken discovery on any of these issues with the exception of
9  Madoff's deposition in PW, which was different, and that was
10 on a consolidated proceeding. Essentially, what we're
11 proposing here is the very thing.
12 　　　And, Your Honor, I neglected to mention I accept
13 your proposed change of having the deposition that
14 Defendants deemed to have participated in the deposition,
15 and we'll submit a proposed order that includes that
16 provision. Because I think that gets to the crux of what it
17 is that we're trying to do here, proceeding on -- and in our
18 review, these cases are not closed on the Ponzi issue.
19 　　　And so we're not seeking to reopen; we're seeking
20 to continue what was started on the Madoff deposition and by
21 the Madoff deposition. So, we could say that these
22 depositions and the documents that are at issue are part of
23 the very fraud proceeding that this Court has talked about
24 in arguments, and we've raised in the Roman -- Your Honor
25 raised in the Roman decision.

Page 39

1  　　　THE COURT: Let me hear from some of the other
2  parties.
3  　　　MS. CHAITMAN: I just want to say one thing,
4  Judge. If I came in and I said, "You know, Judge,
5  discovery's over in my cases but I now think that I really
6  should be able to take certain discovery..." I wouldn't get
7  two feet in this court. And that's what the Trustee's
8  trying to do.
9  　　　Again, if you look at every one of my answers,
10 you'll see I disputed that there was a Ponzi scheme. This
11 has been in the case since I filed the answers. Thank you.
12 　　　THE COURT: Ms. Neville?
13 　　　MS. NEVILLE: Good morning. Carole Neville from
14 Dentons. Your Honor, I have 14 clients on this -- in this
15 matter now, and the case management order, and all but one
16 of them said that discovery closed. And I'm finding it kind
17 of staggering that Ms. Davis now says that after ten years
18 and a billion dollars, the Trustee has not taken discovery
19 on the Ponzi issue.
20 　　　We have expert reports in all of our cases. What
21 was happening then? What were they doing? Right now, what
22 I hear, if I'm --
23 　　　THE COURT: What was the date of the Dubinsky
24 Report? Because that was -- 2013?
25 　　　MR. KRATENSTEIN: It was 2013.

Page 40

1  　　　THE COURT: 2013. So, certainly the issue was up
2  there then.
3  　　　MS. NEVILLE: So, I'm hearing now that of 153 --
4  because it's not 106 cases or 105; it's 153 -- there are
5  seven cases where discovery is open and they want to have a
6  consolidated order that cuts off discovery from everybody
7  else? They were obliged to make a motion to show why they
8  were entitled to discovery.
9  　　　What that order from, I think it was September
10 2017, says is that discovery is closed except for the right
11 for the right for the Picower parties, of all people, the
12 Defendants, and the Trustee and SIPC to take discovery on
13 the Madoff. And the Court reserved the issues from the June
14 29th transcript, which I have with me and I read carefully
15 yesterday. There were two issues that were reserved, and
16 they both were the issues Ms. Chaitman raised. There was
17 the production of trading records and the deposition of
18 traders.
19 　　　So, the discovery obligation is from the Trustee
20 to us. Why they now want to open up 12 depositions of
21 Madoff employees to prove the case -- because I think they
22 realize they haven't proved it after all of these years and
23 after all of this money.
24 　　　Rule 16 sets out a standard and I don't think
25 they've met it. They've been not diligent in pursuing their

Page 41

1  discovery. It's been a really long time. And it is
2  prejudicial to us. Because what they intend to do is reopen
3  all the things that we have now -- I've filed voluminous
4  mediation statements, I've got my case all lined up, and now
5  they want to reopen discovery. Or if you opt out, they
6  don't have to give us what they've been committing to give
7  us for five years.
8  　　　So, I just -- I really -- I'm kind of outraged at
9  Ms. Davis' position here, that she's reserved --
10 　　　THE COURT: It's Ms. Bell. I knew who she meant.
11 　　　MS. BELL: I did too, Your Honor.
12 　　　MS. NEVILLE: I'm sorry. I called you Tracy the
13 other day, too.
14 　　　MS. BELL: You did. I should be used to it.
15 　　　MS. NEVILLE: I have a thing about your name. I
16 just think that at this point, they haven't made the case
17 for opening discovery --
18 　　　THE COURT: So, you say you have 13 cases? 13
19 cases where discovery is closed?
20 　　　MS. NEVILLE: Right.
21 　　　THE COURT: Are you ready to try those cases?
22 　　　MS. NEVILLE: We're in mediation in a good number
23 of them.
24 　　　THE COURT: I assume they all raise the same
25 issue, right?

11 (Pages 38 - 41)

Page 50

1 they did not have the opportunity --
2     THE COURT: Okay, so let me just stop you. So,
3 there are people, there are entities or Defendants who did
4 not have the right to participate in the Madoff deposition,
5 right?
6     MS. BELL: Well, Your Honor, from the group of
7 objecting Defendants, there are about four or five cases
8 that would fall into that category and they're represented
9 by Ms. Chaitman and Ms. Neville. So I think that's a
10 hypothetical concern that the Defendants have raised. I
11 don't think it's a real issue before the Court.
12     But with respect to Mr. Kajon's point on Legacy,
13 and I want to address that because that's the sixth case
14 where discovery is closed in the Trustee's view -- he did
15 not get to participate in Madoff's deposition. We offered
16 him the opportunity to participate and he declined.
17     More than that, Your Honor, and I have from a
18 transcript of June 2017 where Mr. Kajon before this Court
19 says, "Some new evidence has come to light. Some new
20 evidence has come to light just this week that raises some
21 questions in our mind." And that new evidence, he cited to
22 Mr. Madoff's deposition.
23     And so it is disingenuous then to say that if Mr.
24 Madoff's deposition goes forward and you choose not to
25 participate, you can use the information that comes out of

Page 51

1 that deposition to then challenge the Trustee's expert and
2 the Trustee --
3     THE COURT: We can argue about whether what Madoff
4 says is hearsay in a case where somebody hasn't
5 participated.
6     MS. BELL: And I agree with that, Your Honor, but
7 I think the point is the issue that Mr. Kajon raised is the
8 issue of treasuries. That's an omnibus issue. So, again,
9 in the interest of efficiency, it just doesn't seem to make
10 sense to proceed with these on a piecemeal basis.
11     THE COURT: Well, maybe -- maybe the underlying
12 assumption that this can be tried as a consolidated issue is
13 not right.
14     MS. BELL: And so we've taken that off the table,
15 Your Honor. And so now we're just dealing with discovery.
16     THE COURT: No, but if it can't be tried as a
17 consolidated issue, I don't have to necessarily consolidate
18 discovery. I mean, yes, Dubinsky will be deposed once,
19 Greenblatt -- Greenblatt and Galura to some extent have
20 things to say in individual cases.
21     MS. BELL: That's right, Your Honor.
22     THE COURT: And maybe it's a two-day deposition or
23 two-part deposition. One is the general what she did or
24 what he did, and then if people want to take the depositions
25 in individual cases, they can do it. I don't know, you

Page 52

1 know, really why it's necessary but --
2     MS. BELL: I think that's right, Your Honor.
3 We've had Mr. Dubinsky -- Ms. Galura's deposition taken in
4 at least one of these cases and we've certainly had Mr.
5 Greenblatt's deposition as well, I think. And I can't
6 recall if any of these counsel participated. But to the
7 extent that the Court would like the Trustee to make a Rule
8 16 motion, we're prepared to do that. This motion was made
9 pursuant to, again, the dealings and the understanding when
10 we review the transcripts in connection with Mr. Madoff's
11 deposition. And so the Trustee is prepared to make a Rule
12 16 motion.
13     We've had counsel who refused to agree to extend
14 discovery that closed in July with the argument that the
15 omnibus proceeding would deal with many of these issues.
16 And so --
17     THE COURT: Again, I'm perplexed that the Trustee
18 wants to take the discovery on something the Trustee should
19 know and the Defendants are fighting it. As I said, this
20 seems to be a reversal. Is there any other Defendant that
21 wants to be heard?
22     MR. RICH: Good morning, Your Honor. Robert Rich,
23 Hunton Andrews Kurth, on behalf of Edward (indiscernible)
24 and certain other individual Defendants. I just want to
25 address quickly and hopefully put to bed the issue of

Page 53

1 whether, you know -- that it's just our argument that this
2 has been on the table. It's actually the Trustee's
3 argument. They've used it over and over.
4     THE COURT: What argument? Which argument?
5     MR. RICH: The argument that this Ponzi -- the
6 things that they want discovery on, this Ponzi scheme is a
7 new issue that they should have discovery on. I actually
8 tried. I asked for discovery on this exact issue a year ago
9 when I started seeing that, yes, there were securities
10 traded in our account. And I wanted more information. And
11 I wanted more information --
12     THE COURT: Okay, but that was what led to Mr.
13 Madoff's deposition.
14     MR. RICH: No, I'm sorry, Your Honor. This is
15 after the deposition. This is just last year. After the
16 deposition was taken, I said, there's a lot of good
17 information here. I see there's securities -- I now wanted
18 a little more. And I want to use that same paragraph that
19 they want to use, that I should be able to move for more
20 discovery. I want some more trading records. I want some
21 treasury transactions. This is what Ms. Bell said they're
22 looking for.
23     This is what they said. They said, well, the
24 deposition -- this is in their brief -- they said, the
25 deposition order provision permitting follow-up based on

14 (Pages 50 - 53)

Page 54

1 Madoff's deposition should be construed only as permitting
2 discovery that could not have been pursued without his
3 discovery. I said, surely the Defendants did not need
4 Madoff's deposition to justify a request for documents
5 regarding securities trading. And the court denied my
6 request.
7     Over and over they said, in the case management
8 order, fact discovery is done; it doesn't matter what Madoff
9 said in his deposition, this issue has been in the record.
10 And on that basis, the Court denied my request. They're
11 relying on the exact same language and asking for fact
12 discovery and the exact same things. My Defendants -- I
13 have two Defendants that have exposure of $70,000. They
14 can't go through 12 more depositions because they don't want
15 to reopen.
16     THE COURT: Well, all right. You have no open
17 discovery cases? Your cases are closed?
18     MR. RICH: My case is closed. We have one expert
19 discovery that we noticed but the deadline -- the other
20 one's closed.
21     THE COURT: Who is that?
22     MR. RICH: That's for Mr. Greenblatt.
23     THE COURT: Okay. But you wouldn't participate in
24 the Dubinsky deposition. You never noticed it before
25 discovery was closed, right?

Page 55

1     MR. RICH: That's right.
2     THE COURT: All right.
3     MS. BELL: But he participated -- the case
4 participated in Madoff's deposition, Your Honor, and we
5 allowed a number of cases on day two of the deposition to
6 come in to the deposition although discovery was closed --
7 the discovery cutoff had passed in their case.
8     So, again, I think that there is some one-
9 sidedness here that, you know, we would appreciate if the
10 Court takes notice of. Because the Trustee has allowed
11 discovery in cases where it's been closed and we're not,
12 again, asking for something new; we're asking for a
13 continuation.
14     THE COURT: But these Defendants don't want more
15 discovery. I keep coming back to the same issue. They're
16 ready to try their cases. And if they haven't gotten
17 records that Ms. Chaitman thinks she needs, well, that's
18 going to be their problem, not yours.
19     MS. BELL: I think that's right, Your Honor, and
20 so it's the Trustee's position that if we were to use some
21 of those witnesses at trial or those documents that we would
22 like to, we think, go to the issues that Mr. Madoff is
23 raising, then there can be no objection on the Defendants'
24 part that the Trustee did not give them access to these
25 witnesses that we don't have control over, but certainly

Page 56

1 access to the documents that we'll use in any deposition.
2     MR. RICH: Your Honor, this is a complete 180 from
3 the exact argument they made a year ago. They realized
4 their case is weak. They're seeing that, oh, wait, he
5 traded the securities that my Defendants have on their
6 statements? We need to get more discovery to refute it. So
7 all of a sudden they have a new argument. It should be
8 denied.
9     THE COURT: Okay. Mr. Kirby?
10     MR. KIRBY: Thank you, Your Honor. Richard Kirby
11 on behalf of one of the only open case I have where
12 discovery is 100 percent open. We have an open discovery --
13     THE COURT: I'm sorry. It's open in your case?
14     MR. KIRBY: 100 percent open fact discovery case.
15     THE COURT: Which case is that?
16     MR. KIRBY: It's (indiscernible) BM Investments.
17     THE COURT: Okay. And how many cases do you have?
18     MR. KIRBY: All my other cases are in -- have been
19 decided on summary judgment --
20     THE COURT: Okay, so you've only got one case
21 left, right?
22     MR. KIRBY: Right, right. Okay. And there's two
23 issues I'd like to raise. The first issue I think is a
24 threshold issue, is whether -- if there's going to be such a
25 proceeding.

Page 57

1     THE COURT: I agree with you. That's really
2 what's driving all this.
3     MR. KIRBY: Because if we wait -- our cases, which
4 were the South Ferry and Lowry cases, were set as selected
5 and tried as a test case. They're pending before Judge
6 Engelmayer at this point. He has a hearing scheduled for
7 August 28th. We can assume that he will decide certainly
8 before the end of the year. And the case will either be
9 decided one way or another, and either side's going to take
10 --
11     THE COURT: But then it's going to go up to the
12 Second Circuit, so --
13     MR. KIRBY: Right. But by one or other side.
14     THE COURT: Years away from a resolution of this
15 issue.
16     MR. KIRBY: Certainly probably through the end of
17 '19 is what I would expect. But the issue -- and so, we
18 think those threshold issues make all of this question of
19 how far back you go irrelevant, especially the issue of
20 whether the statute of repose limits the Trustee's reach
21 back altogether.
22     And that issue on -- with all due respect, we
23 disagree, but there are 16 bankruptcy judges who said it's a
24 statute of repose. So, it's very possible that Judge
25 Engelmayer's decision could split on the issue. Okay? So,

15 (Pages 54 - 57)

Page 70

1  evaluate.
2  THE COURT: All right. Look, I'm not going to
3  grant this motion on the state of this record. The order on
4  which this is all predicated -- there are actually two of
5  them, but the first Madoff deposition order said -- in
6  Paragraph 11 -- it says, "As to the participating customers
7  whose fact discovery is set to close on or after the date,
8  the Court extends fact discovery for the limited and sole
9  purpose of taking Madoff's deposition."
10  It then says, "Other than for that purpose, the
11  deadlines in the applicable case management orders remain
12  unchanged, notwithstanding the dates set forth in the case
13  management orders. Counsel for the Trustee, the
14  participating customers, the Picower parties, and SIPC have
15  the right to move the Court for further discovery based upon
16  Madoff's testimony."
17  If you're going to make that motion, you have to
18  show specifically what it is Madoff said that's new, that
19  you couldn't have anticipated with due diligence of taking
20  that discovery. I'm being told -- and part of the problem
21  of this process is people tell me a lot of stuff, and it's
22  not contained in a pleading. But I'm told that some of
23  these issues were always issues in the case and at some
24  point, somebody got the idea they wanted to take Madoff's
25  deposition. I don't even know how that -- I don't recall

Page 71

1  how that originated. With Ms. Chaitman, all right. And we
2  limited it to cases where discovery was still open.
3  I'm not inclined to reopen discovery for another
4  year, certainly in cases where discovery is closed. To the
5  extent that discovery is still open or you have a duty to
6  supplement or something like that, your proposed order sort
7  of wipes all that out and starts everything anew. And
8  that's not right.
9  Expert discovery we can deal with to the extent
10  it's still open. People can go in on one day and take
11  Madoff -- take Dubinsky's deposition. I don't know if you
12  want to take the deposition Mr. Rich put in. I forget his
13  name. Friedland?
14  MS. BELL: Mr. Greenblatt.
15  THE COURT: No, no, no. What was your expert's
16  name? Friedland?
17  MS. BELL: Feingold.
18  THE COURT: All right, Feingold.
19  MR. RICH: Mr. Feingold. But their deadline to
20  depose in my cases expired.
21  THE COURT: Has your deadline to depose Mr.
22  Dubinsky expired?
23  MR. RICH: Yes.
24  THE COURT: Okay. Well, deadlines have expired,
25  they've expired absent the modification of the order. But a

Page 72

1  lot of these expert reports have been out there forever and
2  there were expert discovery deadlines set. But, again, I go
3  back to the orders which authorize Madoff's deposition,
4  which is the starting point you have to show in order to
5  reopen discovery in any case that he said something that
6  would be cause to reopen the case.
7  I am also having second thoughts about a
8  consolidated proceeding, although I agree with you, it is
9  certainly the most efficient way to deal with the issue.
10  There may be practical problems with it. Depositions that
11  have been taken, for example, I use the Madoff deposition,
12  and you're going to tell me you invited people and I don't
13  know what effect that has. But the Madoff deposition,
14  whether it can be used in all cases, particularly those
15  cases where discovery was run and people didn't have the
16  right under the order to participate in it. There may be
17  other discovery which was taken in an individual case. I
18  don't know what that might be but -- I'm told Ms. Galura was
19  deposed. Or Mr. Greenblatt was deposed a couple of times.
20  I don't know what he or she said, but I don't know if you
21  can use that in the other cases.
22  So there may be a practical problem, which is
23  really, as I said, what's driving this notion of reopening
24  discovery and having a consolidated discovery proceeding.
25  Because if we can't have a consolidated proceeding, we don't

Page 73

1  need this consolidated discovery. We'll just do it on a
2  case by case basis or a group of cases to the extent it
3  makes sense. So that if Ms. Neville has 13 cases and your
4  direct case -- to a large extent her defenses are the same
5  in every one of those cases, yeah, we can try those together
6  or consolidate those issues.
7  MS. BELL: And the Trustee is prepared to move
8  forward, Your Honor, on a case by case basis. I just want
9  to bring the Court back -- I know you said two orders.
10  There is a third order, Ms. Chaitman's April -- August 10,
11  2017 order that left all the dates in abeyance with the
12  exception of the three motions to withdraw the reference
13  cases. And it expressly outlined the expert report. And so
14  it's the Trustee's view that whatever decision the Court
15  renders today, if there can be a carve out for Ms.
16  Chaitman's cases, because they're to be handled separately
17  just under this order and it's separate from --
18  THE COURT: She retained the right under that
19  order -- there was the issue of the subpoenas on the
20  traders.
21  MS. BELL: Yes, Your Honor.
22  THE COURT: Right. So those were timely served.
23  And that's just a discovery issue.
24  MS. BELL: But the Trustee has not been serving
25  expert reports under this order because our reading of the

19 (Pages 70 - 73)

Page 78

1  produced a number of records in connection with the
2  microfilm dispute that we had last year, and Ms. Chaitman
3  asked for more time to review those records so she could go
4  depose Mr. Madoff. She took 25 minutes of his deposition
5  and then she was done, and then did five minutes of cross.
6      And so I think, you know, to the extent that this
7  production issue further delays the case, I would request
8  that the Court limits that.
9      THE COURT: Well, the simple answer to that is
10 just to schedule Dubinsky's deposition, and in the interim
11 you can either make your Motion to Compel or you can go back
12 to Judge Moss, which is what I think you should do since he
13 put this procedure in place --
14     MS. CHAITMAN: I will go back to Judge Moss --
15     THE COURT: -- and he will --
16     MS. CHAITMAN: If Judge Baker had not agreed to
17 give me the documents, I would have gone back to Judge Moss
18 already.
19     MS. BELL: But we have not served Mr. Dubinsky's
20 deposition yet because fact discovery --
21     THE COURT: Well, why don't you serve it?
22     MS. BELL: We typically have a 60-day period
23 between -- because we have to have whatever documents are at
24 play before the expert reports are due. And so there's a
25 60-day period between the close of fact discovery and expert

Page 79

1  discovery in every case management order.
2      THE COURT: So what do you do -- you're saying
3  she's stretching it out, but you're saying you can't serve
4  your expert report and we can't have expert discovery until
5  this document dispute is resolved, right?
6      MS. BELL: Until we --
7      THE COURT: So, what do you propose?
8      MS. BELL: Until we determine that fact discovery
9  is closed. And so I think, Your Honor, that we need to
10 decide what constitutes the end of fact discovery.
11     THE COURT: Okay, fair enough.
12     MS. BELL: And I don't know what that is today.
13 And perhaps a further discussion? She also has outstanding
14 the trader subpoenas, and it's our view that that's part of
15 fact discovery and the experts should be given an
16 opportunity --
17     THE COURT: Don't the case management orders in
18 each case determine when fact discovery is over?
19     MS. BELL: But those dates have expired, I think,
20 as we just agreed, and Ms. Chaitman has outstanding trader
21 subpoenas, for example. She wants to take depositions.
22     THE COURT: Okay.
23     MS. BELL: The experts would need to get the
24 benefit of that -- those depositions before we have to
25 render an expert report. And so fact discovery -- expert

Page 80

1  discovery is after the close of fact discovery typically.
2      THE COURT: And you oppose her taking those
3  depositions if, for no other reason, you want a consolidated
4  proceeding in which everybody attends those depositions?
5      MS. BELL: Well, we thought it would make sense,
6  Your Honor. For example, she had David Kugel on the list of
7  27 traders. He has a plea allocation and he testified at
8  the criminal trial. There are a number of issues that will
9  go across cases. And so we think it's not efficient to
10 proceed with those --
11     THE COURT: Why don't you make your motion to
12 modify the pretrial orders to reopen discovery?
13     MS. BELL: Yes, Your Honor.
14     THE COURT: And do that expeditiously. Now, with
15 respect -- there's got to be a time limit, though, Ms.
16 Chaitman, with you doing something about this issue.
17     MS. CHAITMAN: I will make the motion -- Judge, if
18 Baker had not indicated to me that they would produce all
19 the trading records without my going back to Judge Moss, I
20 would have done it already. But I will go back to Judge
21 Moss, but I'd like to be able to proceed with the subpoenaed
22 depositions. The traders have both documents and testimony.
23     THE COURT: I think I want to decide the Trustee's
24 motion first, because everybody's going to want to come to
25 Kugel's deposition, for example, if I reopen discovery. And

Page 81

1  everybody may want to question Kugel. I don't know who
2  else, you know, is involved. Maybe Bongiorno. I don't know
3  --
4      MS. CHAITMAN: I was not able to serve a subpoena
5  on Kugel.
6      THE COURT: Pardon?
7      MS. CHAITMAN: I have not served a subpoena on
8  Kugel.
9      THE COURT: So, how many depositions do you -- how
10 many subpoenas have you served?
11     MS. CHAITMAN: You know, I don't have that number.
12 But I think it's -- I mean, I tried to serve 27. Kugel's in
13 prison, isn't he? I mean, I didn't serve him, so -- but I'd
14 like to be able to go forward with that discovery. I don't
15 --
16     THE COURT: But how many -- that's what I'm asking
17 you. How many are there?
18     MS. CHAITMAN: I think it's 12 that we actually
19 served. I'd like to go forward with those 12 depositions
20 and get the documents.
21     THE COURT: There's only two possibilities:
22 Either I have to hear her motion first or there's going to
23 be an interim procedure where anybody can opt in, regardless
24 of whether discovery is closed, if they want to attend those
25 depositions. But they'll be deemed to have attended them,

21 (Pages 78 - 81)

Page 82

1  whether or not they opt in.
2       MS. CHAITMAN: Why don't we have the Trustee make
3  the motion and then --
4       THE COURT: All right.
5       MS. BELL: So, Your Honor, just a couple of
6  scheduling things. I'm on vacation for two weeks in August.
7  And so if we can defer that a little to --
8       THE COURT: Everybody's on vacation in August,
9  except me but --
10      MS. BELL: But just to address the point of
11 Kugel's deposition, the Trustee had --
12      THE COURT: You're the only lawyer working on this
13 case, right?
14      MS. BELL: No, Your Honor, but many --
15      THE COURT: I've seen your -- I've seen your
16 firm's fee applications.
17      MS. BELL: A number of other --
18      THE COURT: You must have a high billing rate. Go
19 ahead.
20      MS. BELL: A number of other folks who are on this
21 proceeding are also on vacation, Your Honor. But just with
22 respect to Kugel's deposition, I think the Trustee assumed
23 that Ms. Chaitman had served, and this is the first time
24 we're hearing that that deposition --
25      THE COURT: Well, he's in jail.

Page 83

1       MS. BELL: Well, but, Your Honor, I think, though,
2  the point I'm trying to make is that the Trustee should be
3  accorded the opportunity, at least in Ms. Chaitman's cases,
4  to take Mr. Kugel's deposition because --
5       THE COURT: We can argue with that if we get to a
6  case by case determination, if I deny your motion or I limit
7  the issues. I mean, I've bene hearing about Kugel's
8  allocution now for four years, so...
9       MS. BELL: Absolutely right, Your Honor. We
10 thought this would be an appropriate juncture to do that.
11      THE COURT: Okay.
12      MS. BELL: Mr. Shifrin is prepared to address, to
13 the extent the Court would like to hear, the specific
14 statements by Ms. Chaitman on trading records and what that
15 means and the status of that, if the Court is so inclined.
16      THE COURT: I don't want to hear another -- I
17 don't want to have another discovery conference on this
18 issue. As I said, I've had multiple discovery conferences
19 for two years, culminating last year when Ms. Chaitman said
20 she wanted to make a Motion to Compel. I suggested that the
21 better procedure might be to go back to Judge Moss, although
22 I never said you couldn't make a motion to compel, and I
23 would never say that.
24      And I'm being told that there were communications,
25 and the Trustee said he would turn over records, and I don't

Page 84

1  know what's happened, whether those statements were made or
2  if they were made, whether there was a follow-up to get the
3  records. I just don't know. I don't know if there's a
4  question of proportionality, if there's a question of who's
5  going to bear the cost of all this. I don't even know what
6  the cost is. For all I know, you can tell someone to come
7  into the data room and say, "Here, go have a look at 30
8  million documents. Just be out in an hour." I just don't
9  know.
10      And if you're going to argue that it's
11 disproportionate, you're going to have to explain to me
12 facts which tell me what the cost is and things like that.
13 Because I still remember I told you to go and look at 20
14 reels of microfiche. You looked at four.
15      MS. CHAITMAN: You're conflating two issues, Your
16 Honor, if I may --
17      THE COURT: Okay, but --
18      MS. CHAITMAN: The microfilm, we dropped the
19 microfilm, as I explained previously.
20      THE COURT: All right, so the microfilm is no
21 longer at issue?
22      MS. CHAITMAN: I explained that it wasn't
23 productive for us to go through the microfilm. There were
24 like, 5,700 microfilms --
25      THE COURT: So, these 30 million documents, can

Page 85

1  they be searched?
2       MS. CHAITMAN: Yes.
3       THE COURT: With search terms?
4       MS. BELL: And I'll let Mr. Shifrin respond to
5  that, Your Honor.
6       MR. SHIFRIN: Good morning, Your Honor. Max
7  Shifrin on behalf of the Trustee. Yes, the documents in the
8  BLMIS database can be searched. And we have been searching
9  them for years. We have run dozens of search terms for Ms.
10 Chaitman, both what we've offered and ones that she's
11 offered, and we've produced those documents to her. So she
12 has access to the BLMIS database. She simply has to give us
13 purposeful, concrete, specific, reasonable search terms that
14 aren't bank names like Fidelity that return 3 million hits.
15 That's not a reasonable search term. That's --
16      THE COURT: Why don't you give them the CUSIP
17 numbers? See if they pop up.
18      MS. CHAITMAN: If I were that smart...
19      THE COURT: I'm sure you'll figure it out, Ms.
20 Chaitman.
21      MR. SHIFRIN: Your Honor, just to clarify a couple
22 of things here. The BLMIS database contains, literally, all
23 documents, hardcopy and electronic that were recovered from
24 all operative floors of the Lipstick Building.
25      THE COURT: Okay.

22 (Pages 82 - 85)