# EXHIBIT 13

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-99000-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    ADMINISTRATIVE CASE RE: 08-1789 (SECURITIES INVEST...),

8    BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   Adv. Case No. 08-01789-smb

13   - - - - - - - - - - - - - - - - - - - - - - - - - x

14   SECURITIES INVESTOR PROTECTION CORPORATION,

15              Plaintiff,

16          v.

17   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

18              Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

```
                                                       Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-99000-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    ADMINISTRATIVE CASE RE: 08-1789 (SECURITIES INVEST...),

8    BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - -x

12   Adv. Case No. 08-01789-smb

13   - - - - - - - - - - - - - - - - - - - - - - - - - -x

14   SECURITIES INVESTOR PROTECTION CORPORATION,

15              Plaintiff,

16           v.

17   BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

18              Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - -x

20

21

22

23

24

25
```

Page 2

1    Adv. Case No. 10-05312-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF,

5                    Plaintiff,

6            v.

7    DORON TAVLIN TRUST U/A 2/4/91, et al.

8                    Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11                    U.S. Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    December 6, 2016

16                    10:08 AM

17

18

19

20

21    B E F O R E :

22    HON STUART M. BERNSTEIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  UNKNOWN

Page 3

1   Hearing re:  Discovery Conference re Various Letters on

2   Profit Withdrawal Proceeding

3

4   Hearing re:  Pre-Summary Judgment Motion Conference Pursuant

5   to Local Bankr. R. 7056-1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1    A P P E A R A N C E S :

 2

 3    BAKER HOSTETLER

 4          Attorney for the Trustee

 5          45 Rockefeller Plaza

 6          New York, NY 10111

 7

 8    BY:  EDWARD J. JACOBS

 9          NICHOLAS J. CREMONA

10

11    CHAITMAN LLP

12          Attorney for

13          465 Park Avenue

14          New York, NY 10022

15

16    BY:  HELEN DAVIS CHAITMAN, ESQ.

17

18    DENTONS US LLP

19          Attorney for Madoff Defendants

20          1221 Avenue of the Americas

21          New York, NY 10020

22

23    BY:  CAROLE NEVILLE

24

25
```

Page 5

```
 1   MCDERMOTT WILL & EMERY LLP

 2        Attorney for Sage Associates, Sage Realty, Malcolm Sage

 3        Mountain Sage, Ark Sage Partner

 4        340 Madison Avenue

 5        New York, NY 10173

 6

 7   BY:  ANDREW B. KRATENSTEIN

 8

 9   ALSO PRESENT TELEPHONICALLY:

10

11   KEVIN H. BELL

12   PATRICK MOHAN

13   DAVID J. SHEEHAN

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 6

1                    P R O C E E D I N G S

2          THE COURT:  Madoff.  Good morning.

3          MR. JACOBS:  Good morning.

4          MR. KRATENSTEIN:  Good morning, Your Honor.

5   Andrew Kratenstein, McDermott Will & Emery on behalf of the

6   Sage Defendants.

7          THE COURT:  Okay.  Go ahead.

8          MR. KRATENSTEIN:  Your Honor, during discovery in

9   our adversary proceedings, we asked for production of all

10  Madoff or BLMIS related statements, deposition transcripts,

11  what have you.  And in their objections, the Trustee said

12  you can't have the profit withdrawal deposition transcripts

13  because of Your Honor's order which contained a restriction

14  on the use, as you know, in anything but the profit

15  withdrawal proceedings.

16          My understanding, although I haven't been involved

17  in those proceedings, is that that restriction was put in at

18  the request of the Picower defendants.  That's my

19  understanding, I don't have firsthand knowledge of that.

20          THE COURT:  Well, I do, but go ahead.

21          MR. KRATENSTEIN:  All right.  So we've got the --

22  rather than to bring that to Your Honor at the time, I just

23  got the transcripts elsewhere because they weren't

24  confidential.  So I got them and I read them.

25          And when I read them I read things in them that

Page 7

1    were relevant to my client's defenses.  I read that Bernard

2    Madoff testified, consistent with his plea allocution, that

3    the fraud began in 1992 and was limited to the so-called

4    split-strike strategy.  I read -- and that's important to my

5    clients because my clients had two separate accounts, one of

6    which was a, what we call, directed trading account, in

7    which they actually directed Mr. Madoff on what to do, and

8    then the other account was a convertible bond arbitrage

9    trading account in which Mr. Madoff also testified that the

10   convertible bond arbitrage trading was real.  So that was

11   important to me, obviously, and my clients.

12         And then I read Annette Bongiorno's deposition

13   transcript in which she said she remembered the Sage's

14   accounts and that they held real securities and substance.

15   That was important, obviously, to my clients also.

16         So I then went to the Trustee's counsel and I

17   said, in substance, look, I don't want to have to go and re-

18   depose Annette Bongiorno to get her to restate what she

19   already said in this deposition and go to federal -- go the

20   federal penitentiary, set up a whole protocol, we'll go

21   through what we went through with Mr. Madoff.  I'm happy to

22   just use this testimony, if you'll allow it.  Will you

23   stipulate?  And I'd also like you to agree we can stipulate

24   to Mr. Madoff's testimony so that Ms. Chaitman, who's going

25   to -- is sitting here and is going to, as you know, lead,

Page 8

1    won't have to re-ask all of these questions.  And they came

2    back and said, sorry, no.  The judge's order says you can't

3    use it, you can't use it.  And so that's why we're here.

4           THE COURT:  Do you disagree that that's what the

5    order said?

6           MR. KRATENSTEIN:  I do not.

7           THE COURT:  Okay.

8           MR. KRATENSTEIN:  The order says it.

9           THE COURT:  So what relief are you seeking?

10          MR. KRATENSTEIN:  The relief, I guess, is a

11   modification of the order to the extent that we think we

12   should be able to use the transcripts in this proceeding for

13   a few reasons.  First, there's no real prejudice to anybody.

14          THE COURT:  But the questions weren't subject to

15   cross examination.

16          MR. KRATENSTEIN:  Well, that could be cured in a

17   couple of ways.  First, with respect to Mr. Madoff, as

18   everybody knows, that depositions coming up soon.  So if the

19   Trustee wants to ask whatever it wants to ask of Mr. Madoff,

20   it's free to do so at that deposition.  If he says something

21   inconsistent with the testimony that he gave before, what

22   have you, people should be allowed to use it to impeach him,

23   to refresh his recollection, what have you.

24          Mrs. Bongiorno's a slightly -- so they'll have a

25   full opportunity, with respect to Mr. Madoff to ask him what

Page 9

1   --

2           THE COURT:  Well, wouldn't you also?

3           MR. KRATENSTEIN:  Yes.

4           THE COURT:  Okay.

5           MR. KRATENSTEIN:  So it should be fair game for

6   all; we're not suggesting otherwise.

7           But to suggest that the profit withdrawal

8   testimony never occurred, or we can't use it or refer to it,

9   we think that that goes too far.

10          Second, with respect to Ms. Bongiorno, the Trustee

11  has said, well, let's hold this all in abeyance; we may have

12  an omnibus deposition of Ms. Bongiorno as well.  To which

13  our response is, okay, you're of course free to do that and

14  of course if you want to have us all go to Florida to depose

15  Ms. Bongiorno in jail, I guess we'll have to go.

16  But you should tell us that now, you should tell us that

17  soon because the clock is running.  I'm happy to just use

18  your transcript if you'll agree.  But if you don't, we'll go

19  down and you'll have the same opportunity everybody would

20  that would happen with Mr. Madoff's testimony.

21          So our position is relatively simple.  If -- these

22  transcripts should be used.  We shouldn't have to have

23  another Bongiorno deposition, unless the Trustee wants one.

24  And if the Trustee wants one, the Trustee can have one but

25  they should tell us soon.  If they don't, we should be able

Page 10

1    to use the transcript.  And if they do, we should be able to

2    use the transcript and that deposition for -- if she

3    testifies inconsistently with it.  To say we can't use it at

4    all, that it's -- it just didn't happen, they didn't testify

5    to this under oath, we think goes too far and would be

6    unfair.  So those are our positions, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              MR. JACOBS:  Good morning, Your Honor.  This is

9    Edward Jacobs on behalf of the Trustee.  I think, as you are

10   aware, the Trustee, historically, had never intended to rely

11   upon the testimony of Mr. Madoff with respect to his proof

12   of fraud.  That can of worms, so to speak, was opened in the

13   profit withdrawal hearing when we heard from Mr. Madoff on

14   the issue of profit withdrawal.  And as the Court noted,

15   there was an order strictly limiting the subject of that

16   deposition to the profit withdrawal issue.

17             Ms. Chaitman's questions during the course of that

18   deposition went beyond the scope of the Court allow of the

19   deposition.  There was testimony provided on the start date

20   of fraud.  Subsequently the same thing happened in the

21   deposition of Ms. Bongiorno, which was also subject to the -

22   - Your Honor's strict limitation that the subject matter be

23   limited to profit withdrawal only.

24             In the case of Ms. Bongiorno, her testimony -- she

25   did provide some specific testimony about the Sage

Page 11

1   defendants, but it's lacking foundation, there's no context,

2   it's vague and ambiguous.  There's no -- there was

3   absolutely no cross examination because the Trustee was

4   prohibited, by court order.

5          THE COURT:  But the argument is you can go back

6   and ask them the questions now.

7          MR. JACOBS:  That's right, and that's also true of

8   Mr. Madoff --

9          THE COURT:  Right.

10         MR. JACOBS:  -- and all three defense counsel who

11  are sitting here today and are participating in that

12  deposition which is set to occur on December 20th.

13         So to make a long story short, Your Honor, once

14  that -- once Mr. Madoff made those statements about the

15  start date of the fraud, Ms. Chaitman brought that to the

16  Court's attention.  And notwithstanding the fact that

17  there's absolutely no evidence to -- in existence that the

18  Defendants have provided or that we've been able to find in

19  our records that support his contentions, the Court did

20  allow a second --

21         THE COURT:  Well, you have his allocution and his

22  testimony.

23         MR. JACOBS:  That's correct.  But he -- that is

24  correct, Your Honor.

25         THE COURT:  Why would he lie about it?

Page 12

1          MR. JACOBS:  I don't wish to speculate as to why

2     Mr. Madoff would lie, although we do know for a fact that he

3     did lie --

4          THE COURT:  No, I mean --

5          MR. JACOBS:  -- about a great many things.

6          THE COURT:  -- about this, though.  You know, what

7     difference does it make?

8          MR. JACOBS:  The -- I'm not sure, Your Honor, I'm

9     purely speculating, but he may have been saying that to

10    protect certain of his family members who were involved in

11    the business and engaged in the proprietary trading function

12    of the --

13         THE COURT:  Who?  His sons?

14         MR. JACOBS:  Yes, Your Honor.

15         THE COURT:  His brother's in jail, his sons are

16    dead, who's he protecting?

17         MR. JACOBS:  Again, Your Honor, I'm purely

18    speculating, I don't pretend to know what's in Mr. Madoff's

19    mind.  But he had a number of family members and employees

20    working for him for whom he may have felt a need to shield

21    or protect from criminal liability at some point in time.

22    And that's -- beyond that, Your Honor, I just -- I wouldn't

23    wish to comment.

24         So in any event, all three of the Defendants will

25    be participating in Mr. Madoff's deposition on the 20th.

Page 13

1    That specifically is about the start date of the fraud, so

2    they're free to ask any questions they may have.  We will be

3    free and unencumbered in conducting our cross examination

4    and as I think Your Honor knows, at a recent hearing about

5    that deposition we specifically told the Court that we

6    reserved our rights to request additional follow up

7    depositions after Mr. Madoff gives his testimony, because

8    yes, we may want to, at that juncture, re-depose Ms.

9    Bongiorno but we wish to reserve the right to make that

10   decision until we have the benefit of Mr. Madoff's testimony

11   because now that there will be a full on examination on

12   these issues, we're not exactly sure what he may say.

13         So we do expect that there'll be an additional

14   deposition of Ms. Bongiorno at some place and time and that

15   will be the appropriate place for the Defendants to examine

16   Ms. Bongiorno as to her memory as to any of their specific

17   clients.

18         And as a legal issue, Your Honor, I would point

19   out that under the prior proceeding rule, it's Federal Rule

20   of Civil Procedure 32(a)(8), a prior deposition is only

21   allowed for use in a current litigation where the opponent

22   had the same motivation to cross examine.  And here that

23   absolutely cannot be the case, because as you know there was

24   a court order prohibiting us from cross examining that

25   particular testimony that went outside the bounds of the

Page 14

1     subject matter of the deposition on that day.  Thank you,

2     Your Honor.

3               THE COURT:  I think we're --

4               MS. NEVILLE:  Your Honor, may I be heard?

5               THE COURT:  Very, very briefly.

6               MS. NEVILLE:  Okay.  First of all, Carole Neville

7     from Dentons.  The issue here is not only the start date,

8     it's also the issue of the arbitrage account versus split-

9     strike conversion.  I have five clients who were in that and

10    when they were transferred to split-strike conversion the

11    Trustee discounted all of the prior amounts.

12              It seems to me Madoff testified no fewer than five

13    times that the fraud was limited to the split-strike

14    conversion.  Ms. Brown sat there, she did ask questions, she

15    asked questions about every issue that was raised.  She

16    didn't restrict it only to profit withdrawal.  And so what

17    the Trustee is trying to do by withholding that transcript,

18    is to perpetuate a fiction that all of the Madoff accounts

19    were treated in the exact same way.

20              At some point Your Honor can weigh whether Bernie

21    Madoff's testimony versus Mr. Dubinsky's expert report

22    carries more weight, but the transcript was only sealed to

23    protect the Picowers.  None of us knew that Bernie Madoff

24    had testified that the arbitrage accounts were really

25    traded.  So I don't understand why the Trustee is taking

Page 15

1    such an effort to perpetuate a fiction to rest a couple a

2    hundred thousand dollars from some innocent investors.  I

3    think that transcript should be made available for all

4    purposes, as it normally would have been.

5              THE COURT:  All right. The orders that I entered

6    in connection with both the Madoff and the Bongiorno

7    depositions were quite clear.  Questions shouldn't have been

8    answered, and the transcripts can only be used in connection

9    with the profit withdrawal issue.

10             If you -- obviously the issue of when the fraud

11   began, which is an important issue that's going to be the

12   subject of a separate deposition -- and the orders specific

13   limit the depositions because of where they're being taking,

14   how many people can be in the room and how much time they

15   can -- that can be allotted to the deposition.  So I'm not

16   going to permit the use of this transcript for anything

17   other than the profit withdrawal issue.

18             If the difference between a arbitrage account and

19   a strict-strike account is relevant to that particular

20   issue, well then it can be used for that purpose, but it's

21   limited to profit withdrawal, that's all.

22             MR. JACOBS:  Thank you, Your Honor.

23             THE COURT:  Okay.  Ms. Chaitman?

24             MS. CHAITMAN:  Helen Davis Chaitman of Chaitman,

25   LLP.