# EXHIBIT 20



Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Andrew B. Kratenstein
Attorney at Law
akratenstein@mwe.com
+1 212 547 5695

August 30, 2017

BY EMAIL TO DSHEEHAN@BAKERLAW.COM

David Sheehan, Esq.
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111-0100

Re:   *Picard v. Sage Associates, et al.*, Adv. Proc. No. 10-04362 (Bankr. S.D.N.Y.);
      *Picard v. Sage Realty, et al.*, Adv. Proc. No. 10-04400 (Bankr. S.D.N.Y.)

Dear David:

I write in response to your letter dated August 17, 2017 concerning the Sages' delivery of securities to Mr. Madoff and the Sages' directed trading.

**Delivery of Securities**

Your letter confirms the inaccuracy of your statements to the Court at the hearing before Judge Bernstein on July 26, 2017, concerning the delivery by the Sages of a portfolio of securities to Mr. Madoff and his sale of those securities. At the hearing you claimed that these transactions were "going to show up, all right, in DTCC records" and "[t]hey'll show up in DTCC and they'll show up in the market making records." (July 26, 2017 Hearing Tr. at 37:20-38:25.)

Those statements were false.

In your August 17 letter, you correctly note that these securities were delivered in 1979 and 1980, and were sold in 1979, 1981, and 1986. But you then acknowledge that you only have DTCC records only for 2002-2008. In fact, the transactions do not "show up" in the "DTCC records" as you incorrectly claimed at the July 26 hearing.

Moreover, the microfilmed records that you cite memorializing these transactions are the same types of internal Madoff or BLMIS reports that you have repeatedly claimed are fictitious. Your failure to acknowledge this critical contradiction is noteworthy, and it is not mitigated by the fact the Trustee has given the Sages credit for these transactions in calculating the net equity for the Maurice Sage Trust account.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue  New York  New York 10173-1922  Telephone: +1 212 547 5400  Facsimile: +1 212 547 5444  www.mwe.com

David Sheehan, Esq.
August 30, 2017
Page 2

**Directed Trades**

With respect to the directed trades, you asserted in your Memorandum of Law in Opposition to Notices of Request to Depose Bernard L. Madoff on Day 2 Deposition Topics that there is no evidence that Mr. Madoff took directions from any of his customers. (ECF No. 16135 at 16-18.) In response, I attached as Exhibit C to my letter to the Court dated June 26, 2017 an example of a direction letter from Malcolm Sage to Mr. Madoff. (MADTBB02431294.) Nonetheless, during the hearing on June 29, 2017, you stated: "[Mr. Madoff] wouldn't take an order from you. If you look at how people took money in and out, you know, again, available, take a look at it. Nobody calls up and says sell my 10,000 shares. They say give me 50 grand, or Picower, give me $250 million, all right? Those things were going on." (June 26, 2017 Hearing Tr. at 58:9-14.)

After reviewing the direction letter on the bench at the hearing on July 26, 2017, Judge Bernstein confirmed that you were wrong, observing that the Sages can indeed "identify specific instructions". (July 26, 2017 Hearing Tr. at 50:1-9.) Confronted with this evidence, you have finally been forced to acknowledge that your statements that Mr. Madoff and BLMIS did not take directions from any customers, including the Sages, were false.

Further, in your August 17 letter, you identified six additional letters in which the Sages directed Mr. Madoff to perform (or not perform) specific transactions in their accounts. You failed to acknowledge that you identified these letters more than a eighteen months after we were led to believe from your initial disclosures that we had been presented with a complete file of correspondence between the Sages and Madoff – and only after I had already discovered and identified to the Court and to you a specific direction letter in the vast assemblage of documents, most of them entirely unrelated to this matter, that the Trustee produced earlier this year.

These letters alone (which are supported by the associated statements and confirms discussed below) demonstrate that the Sages directed the trading of *over one million shares* of securities in their accounts.

You requested the dates on which the direction letters were sent and whether the Sages are aware of any other evidence of directed trades. The letter bates numbered AMF00203163 is dated September 29, 1999. A related letter dated December 1, 1999 can be found at AMF00203162. Another unrelated direction letter dated December 18, 2000 can be found at MADTBB02432826. Annette Bongiorno's undated notes (MADTBB01170922-23) also contain evidence of directions.

Six of the letters that you identified are undated or have a fax line showing a date on them. The date on the fax line is inaccurate because Malcolm Sage's fax machine was not set to the correct date. The statements and confirms that correspond to the trades directed in these six letters and instructions reflected in Annette Bongiorno's undated notes are as follows.

David Sheehan, Esq.
August 30, 2017
Page 3

| Direction Document | Month/Year of Direction Document and Associated Transaction(s) | Statements/Confirms |
|---|---|---|
| MADTBB02431294 | November 2001 | SAGE0003451-53<br>SAGE0003459-61<br>SAGE0004215-26<br>SAGE0004280-84<br>SAGE0004285-87<br>SAGE0004288-89<br>SAGE0004290-94<br>SAGE0004295-96<br>SAGE0004297-304<br>SAGE0004312<br>SAGE0006471-76<br>SAGE0006477-80<br>SAGE0008322-23<br>SAGE0008327-28 |
| MADTBB02370451 | December 2002 | SAGE0003508-10<br>SAGE0003511-12<br>SAGE0004341<br>SAGE0004344<br>SAGE0004375-76<br>SAGE0004387-92<br>SAGE0023798 |
| MADTB01169555 | Letter sent in December 2002 and trades executed in January 2003 | SAGE0003629-31<br>SAGE0004446-47<br>SAGE0004448-49 |
| MADTBB01170922-23 | After purchase of eBay stock in October 2003, Madoff was directed not to go short against the box in eBay for the rest of 2003 (which he did not) | SAGE0003561-63<br>SAGE0003564-65<br>SAGE0003573-74<br>SAGE0004506-09 |
| MADTBB011170931 | December 2003 | SAGE0003561-62<br>SAGE0003566-67<br>SAGE0004494-95<br>SAGE0004486-87<br>SAGE0004053<br>SAGE0004481<br>SAGE0006707-12<br>SAGE0006713-16<br>SAGE0008415-16 |

David Sheehan, Esq.
August 30, 2017
Page 4

| Direction Document | Month/Year of Direction Document and Associated Transaction(s) | Statements/Confirms |
|---|---|---|
| | | SAGE0023811 |
| MADTSS414949 | May 2006 | SAGE0003736-37 |
| | | SAGE0004625-32 |
| MADTSS0038441-42 | June-August 2006 (directing Madoff not to buy back eBay, which Madoff did not) | SAGE0003722-23 |
| | | SAGE0003726-27 |
| | | SAGE0003728-29 |
| | | SAGE0003730-31 |
| | | SAGE0003732-33 |
| | | SAGE0003734-35 |
| | | SAGE0003742-43 |
| | | SAGE0003744-45 |
| | | SAGE0003746-47 |
| | | SAGE0003748-49 |
| | | SAGE0003750-51 |
| | | SAGE0003754-55 |
| | | SAGE0003756-57 |
| | | SAGE0003758-59 |
| | | SAGE0003760-61 |
| | | SAGE0003764-65 |

In addition to presenting these letters, the Sages will testify that they periodically directed Mr. Madoff – in person, over the phone, and in additional written correspondence that has not been located – concerning the specific investment strategies they wished him to utilize, and that they explicitly directed him to buy, sell, or hold certain securities to execute on those strategies.

In fact, during all relevant periods, the Sage Associates account was a buy-and-hold account in which the Sages directed Mr. Madoff to buy, sell, and hold long-term positions, year-over-year. As the Sage Associates account statements and trade confirms demonstrate, the account was not a split-strike account that generated consistent returns of 10%-20%, and was liquidated to Treasuries and cash at year-end. The account generated neither predictable nor steady returns, but rather reflected the returns of the securities it held until July of 2008, when it began to operate as a split-strike account after all of the profit withdrawals at issue occurred.

Significantly, the Second Circuit's Net Equity Opinion is premised entirely on Madoff's split-strike fraud and explicitly excluded all non-split strike accounts. *In re Bernard L. Madoff Inv. Secs. LLC*, 654 F.3d 229, 242 n.1 (2d Cir. 2011). As the Second Circuit held, "the Last Statement Method may be especially appropriate where—unlike with the BLMIS accounts at issue in this appeal—*customers authorize or direct purchases of specific stocks.*" *Id.* at 238

David Sheehan, Esq.
August 30, 2017
Page 5


(emphasis added) (citing *Miller v. DeQuine (In re Stratton Oakmont, Inc.)*, No. 01–CV–2812 RCC, 01–CV–2313 RCC, 2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003)).

As Judge Bernstein stated at the July 26 hearing, the Sages are thus ***"in a different position"*** than the split-strike customers because the Sages ***"can identify specific instructions."*** (July 26, 2017 Hearing Tr. at 50:1-9) (emphasis added). The Judge also directed that we compile and assemble records corresponding to the trading instructions that were given to Mr. Madoff over the years. (*Id.* at 54:18-55:2.) We have done so above with regard to the correspondence that we have been able to uncover to date.

In short, unlike split-strike customers, the Sages employed Mr. Madoff as a traditional securities broker to engage in a long-term buy-and-hold strategy for a diverse portfolio of equities held in the Sage Associates account and in other Sage accounts. They are victims of Mr. Madoff's fraud. For the Trustee to seek to victimize them a second time and render them destitute is unconscionable. The Trustee should reconsider its position in this matter and drop its claims against the Sages.


Very truly yours,

Andrew B. Kratenstein


cc:   Heather McDonald, Esq.
      Nicholas Cremona, Esq.
      Molly Tranbaugh, Esq.
      Michael Sabella, Esq.
      Kristin Keranen, Esq.