# EXHIBIT A



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-01789-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   SECURITIES INVESTOR PROTECTION CORPORATION,

6                     Plaintiff,

7             v.

8   BERNARD L. MADOFF INVESTMENT SECURITIES, L.L.C.,

9                     Defendants.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11  Adv. Case No. 10-05224-smb

12  - - - - - - - - - - - - - - - - - - - - - - - - - - x

13  IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14  MADOFF INVESTMENT SECURITIES LLC,

15                    Plaintiff,

16            v.

17  DAVID R. MARKIN, INDIVIDUALLY AND AS TRUSTEE OF THE DAVID

18  MARKIN CHARITABLE REMAINDER UNITRUST #1, AND DAVID R. MARKIN

19  CHARITABLE REMINDER UNITRUST #2

20                    Defendants.

21  - - - - - - - - - - - - - - - - - - - - - - - - - - x

22

23

24

25

Page 2

1    Adv. Case No. 10-05257-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                        Plaintiff,

6              v.

7    ZRAICK, JR., INDIVIDUALLY AND AS A JOINT TENANT et al.,

8                        Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 11-02760-smb

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

13   MADOFF INVESTMENT SECURITIES LLC,

14                       Plaintiff,

15             v.

16   ABN AMRO BANK N.V. (presently known as THE ROYAL BANK OF

17   SCOTLAND, N.V.),

18                       Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

Page 3

1    Adv. Case No. 10-04390-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                   Plaintiff,

6            v.

7    BAM L.P., et al.,

8                   Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 10-04488-smb

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

13   MADOFF INVESTMENT SECURITIES LLC,

14                  Plaintiff,

15           v.

16   SOUTH FERRY BUILDING COMPANY,

17                  Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

Page 4

1    Adv. Case No. 10-04971-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - x

3    IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4    MADOFF INVESTMENT SECURITIES LLC,

5                      Plaintiff,

6              v.

7    ESTATE OF RICHARD M. STARK et al.,

8                      Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12                              U.S. Bankruptcy Court

13                              One Bowling Green

14                              New York, NY  10004

15

16                              March 29, 2017

17                              10:02 AM

18

19

20

21   B E F O R E:

22   HON. STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  MATTHEW

1          THE COURT:  So why don't you stipulate the

2    judgment subject to the preservation of the defenses, and

3    then you can appeal?

4          MS. NEVILLE:  I -- Your Honor, there is a

5    procedure that we've all agreed to, and I would like to

6    continue this --

7          THE COURT:  All right.  So you can submit your

8    schedule and stipulation.

9          MS. NEVILLE:  Thank you.

10          MR. MURPHY:  Thank you, Your Honor.

11          THE COURT:  What's next?

12          MR. RICH:  Good morning, Your Honor.

13          THE COURT:  Good morning.

14          MR. RICH:  Robert Rich, Hunton & Williams LLP on

15    behalf of Edward A. Zraick et al.  This is adversary

16    proceeding 0801789.  We're here on two issues.  The first is

17    a request for what is a 12-day extension of the deadline to

18    serve a rebuttal expert report.  And just very briefly on

19    what the report is, this is --

20          THE COURT:  I read it.

21          MR. RICH:  Okay.  Yeah, and I'm sure the Court

22    found, what a lot of people found is that, you know, our

23    expert, Bill Feingold used the very same cherry-picked

24    transactions that Mr. Dubinsky, the Trustee's expert kept to

25    -- in order to prove his allegation that no transfer -- that

Page 28

1    no trading took place.  And using those very same cherry-

2    picked transactions, I think showed very strongly --

3            THE COURT:  Well, the issue was not that, the

4    issue was whether or not you should be permitted to use his

5    rebuttal for it.

6            MR. RICH:  Absolutely.  And Your Honor, we were

7    here at a --

8            THE COURT:  Whether or not it's credible or

9    anything else like that is a different issue.

10            MR. RICH:  Okay.  And we were here at a conference

11   on February 7th.  It was originally scheduled for the 16th,

12   but Your Honor was gracious enough outside the conflict to

13   move it to the 7th.

14            We actually ended up serving the report.  We got

15   it done seven days later on the 14th.  It would've been

16   before what was even originally the conference.  At that

17   February 7th conference, I know Your Honor expressed

18   reservations on granting a 30-day extension because as Your

19   Honor said, you know, we could just come back at the end and

20   come back with another request for further extension.

21            But you know, and so, we worked hard, asked Mr.

22   Feingold to work around the clock to get it done.  This is

23   as quickly as possible, at great expense to us, and was able

24   to get it served on the Trustee seven days later.

25            THE COURT:  Let me -- I know the timeline.  Here's

Page 29

1    my question.  You have a burden to show cause.  And all

2    you've said is that you were 12 days late.  But you haven't

3    explained why you weren't able to file it on time, what

4    efforts you made, when you hired the guy, why it took so

5    long.

6              MR. RICH:  Your Honor --

7              THE COURT:  Don't you have to show that under Rule

8    16?

9              MR. RICH:  We have to show cause.  I believe we

10   have, and I certainly can --

11             THE COURT:  Well, what's the cause that you've

12   shown when you -- this is no affidavit here or anything like

13   that, but it's --

14             MR. RICH:  You know, I'm the only one -- I'm the

15   one who handled this, you know, personally, so I can -- I'm

16   the one who would know all the facts.

17             THE COURT:  But I don't have a declaration or an

18   affidavit.

19             MR. RICH:  I could testify to it just as much as I

20   can --

21             THE COURT:  Let me finish.  You know, this should

22   be a relatively simple motion, but you haven't provided

23   anything that explains why you couldn't get an expert report

24   in on time.

25             MR. RICH:  I think I've explained it in the motion

1    papers, but not --

2              THE COURT:  When did you hire this guy?

3              MR. RICH:  We hired him -- he was in discussions

4    at the chambers conference.  I'm not sure when the --

5    exactly the engagement letter dated is, but we had him,

6    prior to the engagement conference, I even -- I mentioned

7    his name, when you asked.

8              THE COURT:  That was on February 7th.

9              MR. RICH:  On February 7th, yes.

10             THE COURT:  But back in December --

11             MR. RICH:  Sure.

12             THE COURT:  -- I thought you said you had an

13   expert.

14             MR. RICH:  Sure.  Yeah, I'll tell you exactly what

15   happened.  So we were served with four expert reports on the

16   very last day, notwithstanding the fact that it was prepared

17   three years earlier.

18             THE COURT:  Well, but they served you whenever

19   they were supposed to serve you under the case management

20   order, right?

21             MR. RICH:  They did, although I, you know, I think

22   some of the expert reports are not in fact expert reports,

23   should've been done earlier.  But they wanted to, of course,

24   you know, (indiscernible) --

25             THE COURT:  But you know, look.  Everything

1    (indiscernible) to review --

2            MR. RICH:  Your Honor, we had four expert reports,

3    you know, given the amount at issue in our adversary

4    proceeding, we thought (indiscernible) it made sense to work

5    with joint counsel to find an expert.  We immediately did

6    it.

7            THE COURT:  That's a different issue.  Are you

8    saying that the cause is that it was not economically

9    feasible for you to offer an expert?

10            MR. RICH:  I think it was -- I think we

11    immediately pursued hiring an expert with joint --

12            THE COURT:  But that's what I don't know.  There's

13    no record of any of this.  That's the problem I have.

14            MR. RICH:  It's in the papers, and I can testify

15    that --

16            THE COURT:  The papers -- a memorandum of law is

17    not evidence of anything.

18            MR. RICH:  Your Honor, I don't -- a declaration

19    from me would be -- I don't see how that's any better than

20    me testifying the same.

21            THE COURT:  Well, but that's evidence -- I'm not

22    going to take testimony today.  If you want me to schedule a

23    trial on this, I'll schedule a trial.

24            MR. RICH:  I mean, if that's, you know, what Your

25    Honor thinks is necessary --

1           THE COURT:  I'm just say --

2           MR. RICH:  -- then sure.

3           THE COURT:  Don't tell me if that's what I think

4    is necessary.  You're supposed to show cause and I'm just

5    asking you how you showed it with no evidence.

6           MR. RICH:  Your Honor, I think I could testify to

7    the evidence or submit a declaration.

8           THE COURT:  Let me hear from the other side,

9    because I have a question for the other side.

10          MR. RICH:  Mm hmm.

11          THE COURT:  And here's my question.  I read your

12   papers.  His expert report has nothing specific to do with

13   his client's account.  It's more of the stuff that Mr.

14   Dubinsky didn't know how to read the records or made certain

15   narratives.  I thought we had -- and that really goes to the

16   issue of when the Ponzi scheme began.  I think obviously it

17   bleeds over into his case.  Is there a discovery scheduled

18   for that particular issue?

19          MR. SHIFRIN:  Your Honor, Max Shifrin on behalf of

20   the Trustee, good morning.  There is no discovery schedule

21   for this fraud proceeding because it's entirely premature to

22   have such a schedule in place.  The Madoff deposition is

23   ongoing.  There are two additional days scheduled, April

24   27th and April 28th.

25          And under the relevant deposition order, that

Page 33

1   deposition needs to be completed before any additional

2   discovery, including any fraud proceeding is brought before

3   the Court, and the merits of that proceeding is addressed.

4          And I think given the nature or given the text of

5   the deposition order, specifically Paragraph L, there needs

6   to be some justification for further discovery after the

7   deposition is completed.

8          THE COURT:  Okay, okay.  So if discovery is still

9   ongoing, on that particular issue, when the Ponzi scheme

10  began, with a view towards having some sort of proceeding,

11  to determine that, because it really affects a lot of the

12  cases, couldn't I receive this report in connection with

13  that issue?

14         MR. SHIFRIN:  Your Honor, should a fraud

15  proceeding be established, when the Madoff deposition is

16  completed.

17         THE COURT:  Well, unless everybody's going to

18  concede that it was fixed on a certain date, how can I avoid

19  that?

20         MR. SHIFRIN:  Well, I think there are numerous

21  ways to address a fraud proceeding, including who can

22  participate.  As you, as the Court is aware, we submitted a

23  declaration by Matt Greenblatt that basically says even if

24  we credit the customer statements through -- up until 1992,

25  in all of the cases that are participating in the Madoff

Page 34

1    deposition, only three of the cases would be affected.

2           So I think there is -- there should be a hearing

3    at the end of the Madoff deposition, and the contours of any

4    fraud proceeding could be addressed on submissions by the

5    parties, and we can decide whether, A, Madoff's testimony

6    justifies any further discovery, including any fraud

7    proceeding, and B, who can participate?

8           And I think at a minimum, the participating

9    defendants in the cases that want to participate, they need

10   to make a showing that that proceeding is relevant and

11   proportionate to their cases.  And I think if they can't --

12           THE COURT:  Proportionate?

13           MR. SHIFRIN:  That's correct, Your Honor.  Yes.

14   Given the fact that only three cases out of 83 are affected.

15   I mean, it's arguably not even relevant in 80 of these

16   cases, right?  So I think it would be --

17           THE COURT:  So why is everybody fighting so much

18   on this issue?

19           MR. SHIFRIN:  Well, Your Honor, I know you've

20   addressed that several times, where you've inquired why we

21   are not willing to concede.  I think the core issues that

22   the Trustee's unwilling to concede anything that's just not

23   true.  That's first and foremost.  And we have hundreds of

24   claimants --

25           THE COURT:  But it sounds like we're going to have

1    to have a proceeding on (indiscernible) the Ponzi scheme

2    again.  So that affects this particular case, as I

3    understand it, right?

4                MR. SHIFRIN:  Well, under Greenblatt's

5    declaration, this (indiscernible) case is not affected

6    because even if we credit the customer statements up until

7    1992, the two-year demand amount does not change.  And in

8    any event --

9                THE COURT:  But the computation of fictitious

10   profits may change, depending on whether they were inter-

11   account transfers before 1992 or any deposit or any -- was

12   there -- when were these accounts opened?

13               MR. RICH:  Your Honor, these accounts started in

14   the 80's, early 80's.

15               THE COURT:  So it was obviously --

16               MR. RICH:  And we obviously opposed this

17   Greenblatt report, that is, you know, no better -- we

18   haven't had an opportunity to cross him.

19               THE COURT:  Well, the Greenblatt report is

20   predicated on the assumption that there was no actual

21   trading ever, right?

22               MR. RICH:  I think he's referring to a separate

23   Greenblatt report, which purports that, well, even if we say

24   that, you know, the transaction's pre-'92 took place, only

25   these certain adversary proceedings are affected.  Of

Page 36

1  course, they're all affected.  He's just trying to say, it

2  doesn't change the calculation enough into --

3          THE COURT:  Oh I remember.

4          MR. RICH:  -- into change the result.

5          THE COURT:  All right.  It sounds -- my point is,

6  it sounds like this is an issue, when the Ponzi scheme

7  began, unless you're willing to give him credit for all of

8  the -- everything that occurred, you know, all the transfers

9  or actually all the profits, I guess, that were realized

10  before that date.

11          If you're telling me you're not and it's true in

12  other cases, there's going to have to be some sort of a

13  proceeding to determine for everybody, when the Ponzi scheme

14  began.

15          MR. RICH:  Your Honor, if I could just make a

16  couple of points to address that.  The Madoff deposition is

17  the precursor to any fraud proceeding --

18          THE COURT:  There may be no more discovery after

19  the Madoff deposition.  I let everybody take the Madoff --

20  Madoff's deposition, but I didn't say that I would extend

21  any other discovery.

22          MR. RICH:  Right.

23          THE COURT:  But even if that's the end of it, I

24  have Madoff's testimony on the one-hand, and I guess I have

25  the Dubinsky report on the other hand.

1          MR. RICH:  Right.

2          THE COURT:  And Mr. (indiscernible) and some other

3     people, who allocated, who might give rise to an inference

4     of an earlier Ponzi scheme.  But I don't have a trial on

5     that.

6          MR. SHIFRIN:  And I think Your Honor should --

7     once the deposition's complete, we can have a hearing and

8     begin to address all of these concerns and discuss what the

9     contours of that proceeding would be.  But I think the core,

10    from our perspective, we are concerned that the fraud

11    proceeding will be used to delay certain cases, particularly

12    cases where a 1992 finding would be irrelevant to the -- to

13    --

14         THE COURT:  Well, I agree with you.  There are

15    some cases where the accounts were opened up after that and

16    there are no inter-account transfers or anything like that.

17         MR. SHIFRIN:  That's correct.  And I think we have

18    this Greenblatt affidavit.  And I think prior to any fraud

19    proceeding, defendants should make a showing that either Mr.

20    Greenblatt's report is incorrect or otherwise demonstrate

21    that it --

22         THE COURT:  Well, you have a burden of proof, so

23    you would have to make the initial showing under burden of

24    proof, and then they would presumably cross-examine Mr.

25    Greenblatt.

1          MR. SHIFRIN:  Right.

2          THE COURT:  Or possibly, depending on the case,

3    bring in other experts.

4          MR. SHIFRIN:  That's correct.  And again, the core

5    -- our core argument here is that this is just premature at

6    this point.  We have two days at least of Madoff testimony

7    scheduled in April, and that's --

8          THE COURT:  Right.

9          MR. SHIFRIN:  -- still under the day one

10   deposition topics.  And thus, there can be a day two

11   deposition topic, deposition date scheduled in accordance

12   with the deposition order.  We just don't know when that

13   deposition's going to be wrapped up.  And the issue of the

14   fraud proceeding should wait until that's completed.

15         THE COURT:  All right.  But couldn't I receive

16   this particular expert report in the context of that fraud

17   proceeding?

18         MR. SHIFRIN:  At that time, we can address that,

19   if --

20         THE COURT:  So you want me to put off addressing

21   this until then?

22         MR. SHIFRIN:  Well, Mr. -- again --

23         THE COURT:  And basically consider it on an issue

24   of relevance, as opposed to lateness or something else?

25         MR. SHIFRIN:  The Zraick defendants can not put in

Page 39

1    a Feingold report in connection with the fraud proceeding if

2    it's determined they can't participate for whatever that

3    reason is, including that they're unaffected by 1992 start

4    date.

5              So I think, again, the contours of the fraud

6    proceeding are critical to establish first.  And then, once

7    we're there, the participating parties can submit whatever

8    expert reports they want, in accordance with the procedures

9    that are established.

10             THE COURT:  So what should I do with this expert

11   report, since it relates to the fraud proceeding?

12             MR. SHIFRIN:  This is -- it doesn't relate to the

13   fraud proceeding, Your Honor, respectively, because there is

14   no fraud proceeding.  This would serve the connection with

15   this specific adversary proceeding.  It's untimely.  It's

16   inadmissible.

17             THE COURT:  There is a dispute as to when --

18   whether or not to count all those transactions before 1992

19   or 1993.  And that same dispute arises in a number of cases,

20   not just in the cases where the parties are participating in

21   discovery, but in a lot of the cases.  I don't know how many

22   are left, 200, 300, 400.  But that's (indiscernible) a lot

23   of these big faith cases.  And before I try the merits of

24   this particular case, I'm going to have to resolve that

25   issue, won't I?

1            MR. SHIFRIN:  Again, it depends if --

2            THE COURT:  Unless you're willing to concede, for

3     the purposes of the -- of this particular adversary

4     proceeding, that the transactions that occurred prior to

5     1992 and 1993 were legitimate.

6            MR. SHIFRIN:  Your Honor, again, once the fraud

7     proceeding is established and there are dates established

8     for the disclosure of expert reports, the participating

9     defendants and parties can submit a report.  But right now,

10    the issue is whether the Feingold report is admissible in

11    this adversary proceeding in accordance with the CMO that's

12    been entered in this adversary proceeding.

13           THE COURT:  But all I'm saying is you may be right

14    --

15           MR. SHIFRIN:  Okay.

16           THE COURT:  -- as a technical matter under the

17    CMO, but if I take additional discovery in connection with

18    the, you know, when the Ponzi scheme began, then I may

19    receive the same declaration.

20           I see that you know, your argument that there may

21    be no further discovery.  All right.  Mr. Rich, what you're

22    going to have to give me is some sort of a -- evidence which

23    will establish cause, and I'll adjourn this matter.  But I

24    just don't see it in the papers you've provided.

25           MR. RICH:  Your Honor, I'd be happy to submit a

1    declaration.

2              THE COURT:  You'd be happy to?

3              MR. RICH:  And you know, I think I'd be subject to

4    cross, just -- I'm not sure how it would change, how -- this

5    same (indiscernible) --

6              THE COURT:  Well, how would I resolve the issue?

7    Well, how am I supposed to resolve the issue?  There's an

8    issue -- you have a burden of proof.  And they may disagree

9    with you, either on the facts or on how the law applies to

10   what you've said.

11             MR. RICH:  All right, but we would also believe

12   that --

13             THE COURT:  You're right.  There may be a factual

14   dispute.  You made certain representations.  Your

15   explanations have changed over time and they may want to

16   cross-examine you.

17             MR. RICH:  Okay.  Thank you, Your Honor.

18             MR. SHIFRIN:  Your Honor, if I may just address a

19   couple of the points that Mr. Rich made?  The core inquiry

20   here is diligence, right?  And I don't know what kind of

21   declaration Mr. Rich can submit, but based on --

22             THE COURT:  Well, let's see it.

23             MR. SHIFRIN:  Well, based on the record that's

24   before the Court, Your Honor, we think that's sufficient to

25   conclude that he hasn't acted diligently, with respect to

Page 42

1     the first deadline, with respect to the extended deadline,

2     the emails and the reasons for the --

3             MR. RICH:  Your Honor, I didn't see a declaration

4     from their side, either, and now he's testifying to facts.

5     If we're going to adjourn this and have an evidentiary

6     hearing, I think that should be subject to change --

7             THE COURT:  Well, why don't you just -- let me

8     just supplement your motion with some evidence of cause,

9     okay, under Rule 16.  I don't think Rule 9006 applies to

10    this.  That's a scheduling order that we're talking about.

11            MR. SHIFRIN:  Your Honor, to the extent he

12    supplements his submissions, the Trustee respectfully

13    requests that we be permitted to respond to anything that's

14    submitted.

15            THE COURT:  You may want to take his deposition.

16    All right, submit your declaration.  When are you going to

17    do that?

18            MR. RICH:  I'll do it within 14 days.

19            THE COURT:  14 days.

20            MR. RICH:  Your Honor, we also think that the

21    expert report is timely under the case management order.

22            THE COURT:  How can it be timely?

23            MR. RICH:  Because the case management order pegs

24    expert discovery on the end of fact discovery.  Fact

25    discovery, actually, on the specific issue of what this

1   expert report is about has been -- already been extended.

2   So by the plain terms of the order, you know, this report is

3   timely and the Trustee has interpreted the order the same

4   way in a different context.

5             THE COURT:  Well --

6             MR. SHIFRIN:  But Your Honor --

7             THE COURT:  But you're talking about the order

8   authorizing the Madoff deposition.  I made it clear that at

9   that point I was not authorizing any further other

10  discovery, where discovery was closed or would otherwise run

11  out -- the deadline would otherwise expire.  I'm certainly

12  not inclined to -- as everybody seemed to wait until the

13  last minute just to pipe up to take the Madoff deposition.

14  If it was that important, it should've been done before.

15  That issue with respect to the document demand?

16            MR. RICH:  Yeah, Your Honor --

17            THE COURT:  That is way late.  And if your, you

18  know, your prior document demand didn't seek the trading

19  records, and you knew trading was important to form the end

20  of discovery.  So --

21            MR. RICH:  Your Honor --

22            THE COURT:  You know, I would not be inclined to

23  grant a motion to compel discovery on that one.  I'll tell

24  you.

25            MR. RICH:  Your Honor, first, I think we're

1   entitled to -- I think we would serve the same discovery in

2   the context of our SIPC claim, which is riled and subject to

3   an objection.  I think we're entitled to it there.  Or under

4   Rule 2004.  In addition, I, you know, the Trustee --

5          THE COURT:  Well, I don't have a 2004 order

6   application before me.

7          MR. RICH:  You know, and the Trustee has said he

8   has --

9          THE COURT:  Mr. Rich, if you want to make a motion

10  to compel, go ahead.  I'm probably not going to grant it.

11  If you didn't have the desire or the need for the trading

12  records before the end of discovery, I don't know what

13  suddenly occurred that makes you need the trading records.

14         MR. RICH:  Your Honor, I understood that

15  everything he obtained, the Trustee obtained from BLMIS,

16  this is what he wrote in his discovery response --

17         THE COURT:  I'm done.  I told you you could make a

18  motion to compel.

19         MR. SHIFRIN:  Your Honor, if I may clarify one

20  aspect of the record?  He has moved to compel.  Granted, it

21  was unauthorized, he --

22         THE COURT:  All right, the motion is denied, then.

23         MR. SHIFRIN:  Thank you.

24         THE COURT:  The motion is denied because the

25  trading records were not originally requested, so there was

Page 45

1   no duty to supplement.  Asking for the trading records

2   months and months after discovery is inexplicable in a case

3   like this.  I also noticed you were asking for all of the

4   trading records for all of the accounts?

5          MR. SHIFRIN:  I'd be willing to limit it to the

6   securities on our statements.  It's just that the Trustee --

7          THE COURT:  Well, then that was certainly relevant

8   from starting in 2010, when the motion -- when the case was

9   filed.

10          MR. SHIFRIN:  I'd understood that the Trustee,

11   from his response, it populated the data under all documents

12   he obtained relevant to the fraud.

13          MR. RICH:  We never made such a representation --

14          THE COURT:  But you never -- listen, listen.  You

15   never asked for the trading records.  So whether or not he

16   has all the trading records or populated the data

17   (indiscernible) all the trading records is immaterial.  He

18   never asked for them.  You can submit an order denying the

19   motion to compel (indiscernible) --

20          MR. SHIFRIN:  Thank you, Your Honor.

21          MR. RICH:  Thank you, Your Honor.

22          THE COURT:  Next.

23          MR. MURPHY:  Your Honor, Keith Murphy.  Next up on

24   the calendar, Your Honor, is the matter of Stark.  I'm not

25   sure if you want to take that later, Your Honor?