# EXHIBIT A

08-01789-cgm    Doc 18085-1    Filed 10/17/18    Entered 10/17/18 13:53:01    Exhibit A
-2016-05-17 Transcript of proceedings    Pg 2 of 15

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 08-99000-smb
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  ADMINISTRATIVE CASE RE: 08-01789 (SECURITIES INVEST-
8  ADVERSARY PROCEEDING),
9
10           Debtor.
11 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
12
13 Adv. Case No. 10-04995-smb
14 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
15 IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.
16 MADOFF INVESTMENT SECURITIES LLC,
17              Plaintiff,
18        v.
19 TRUST u/art FOURTH o/w/o ISRAEL WILENITZ,
20              Defendants.
21 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
22
23
24
25

08-01789-cgm    Doc 18085-1    Filed 10/17/18    Entered 10/17/18 13:53:01    Exhibit A
-2016-05-17 Transcript of proceedings    Pg 3 of 15

Page 2

```
 1   Adv. Case No. 10-05184-smb

 2   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

 4   MADOFF INVESTMENT SECURITIES LLC,

 5                  Plaintiff,

 6            v.

 7   LAURA ANN SMITH REVOCABLE LIVING TRUST et al,

 8                  Defendants.

 9   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

10

11   Adv. Case No. 10-04352-smb

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

13   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14   MADOFF INVESTMENT SECURITIES LLC,

15                  Plaintiff,

16            v.

17   RAR ENTREPRENEURIAL FUND. LTD. et al.,

18                  Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

20

21

22

23

24

25
```

Page 3

```
 1              U.S. Bankruptcy Court
 2              One Bowling Green
 3              New York, NY  10004
 4
 5              May 17, 2016
 6              10:51 AM
 7
 8
 9   B E F O R E :
10   HON STUART M. BERNSTEIN
11   U.S. BANKRUPTCY JUDGE
12
13
14
15   Hearing re:  10-04995-smb, 10-05184-smb, 10-04352-smb The
16   Trustee's Request For Leave To File A Motion For a
17   Protective Order in Wilentiz.
18
19
20
21
22
23
24
25   Transcribed by:  Sonya Ledanski Hyde
```

08-01789-cgm    Doc 18085-1    Filed 10/17/18    Entered 10/17/18 13:53:01    Exhibit A
-2016-05-17 Transcript of proceedings    Pg 5 of 15

Page 4

```
 1  A P P E A R A N C E S :

 2

 3  WINDELS MARX LANE & MITTENDORF, LLP

 4       Special Counsel to Irving H. Picard, as Trustee

 5       156 West 56th Street

 6       New York, NY 10019

 7

 8  BY:  KIM M. LONGO

 9       JOHN J. TEPEDINO

10

11  BAKER HOSTETLER

12       Attorney for the Trustee

13       45 Rockefeller Plaza

14       New York, NY 10111

15

16  BY:  EDWARD J. JACOBS

17       NICHOLAS J. CREMONA

18

19  CHAITMAN LLP

20       Attorney for Defendants

21       465 Park Avenue

22       New York, NY 10022

23

24  BY:  HELEN DAVIS CHAITMAN, ESQ.

25
```

08-01789-cgm    Doc 18085-1    Filed 10/17/18    Entered 10/17/18 13:53:01    Exhibit A
-2016-05-17 Transcript of proceedings    Pg 6 of 15

Page 5

1  ALSO PRESENT TELEPHONICALLY:
2  KEVIN H. BELL
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 7 of 15

Page 11

1  Wilenitz matter, but a copy of that report has been served
2  to Ms. Chaitman on behalf of some of her other clients in
3  different proceedings.  And in Section 4C of the procedures
4  order, that permits the Trustee to handle the voluminous
5  nature of discovery that's potentially relevant in this case
6  in that fashion.
7           THE COURT:  Well, does Ms. Chaitman or any other -
8  - clients or any other defendant have the ability to look at
9  the same documents that your expert looked at and draw their
10 own conclusions?
11          MR. JACOBS:  Absolutely.  Every single document --
12 what we've endeavored to do, Your Honor, is that what we
13 refer to as Electronic Data Room 1 contains all of the
14 underlying documents considered by Mr. Dubinsky and we're
15 also building upon that in including documents that our
16 other experts who we may offer to prove transactions and who
17 do other functions, all of those documents as well.  So,
18 that's approximately 4 million records.  Not pages, but
19 records.
20          And it's an enormous amount of data that I believe
21 is unprecedented, at least in my career, and for that reason
22 we've structured the data room in a very organized fashion
23 with issue trees.  So if you're a participant who's
24 accessing the data room, you'll see something that you might
25 be familiar with already in terms of like, an Outlook email

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 8 of 15

Page 12

1   folder tree that has topics, broken down documents,

2   financials, third party records; and then each of those

3   trees can be broken down further to drill down to J.P.

4   Morgan statements.  You know, Chicago Options Trading

5   information, Depository Trust Clearing Corporation

6   documents; all of those types of things.  It's also

7   searchable.

8            So, absolutely the Defendant has the ability to

9   conduct whatever investigation they believe is relevant to

10  the claims of their defenses, the same that our expert did,

11  and they have access to all the same information that our

12  expert did.  And we did that to be transparent and to

13  provide any data that any litigant believes that they should

14  have access to.

15           So, that's the starting point of where we are in

16  discovery.  And then because Section 4C of the procedures

17  order allows us to provide a summary report, we do that.

18  And Mr. Dubinsky painstakingly analyzes the Ponzi scheme and

19  the IA business specifically, but also the other aspects of

20  BLMIS's businesses as well.  And issues of insolvency are

21  also part of his analysis to the extent they may bear on the

22  Ponzi scheme or on other proofs we may have, or have had at

23  some point in our cases.

24           But all of the financials are considered, the

25  Ponzi scheme is considered, the stock-trading activity or

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 9 of 15

Page 15

1  And that involves transfers that occurred long before the

2  two-year period.  Were there transfers from other accounts

3  in this case?  Interaccount transfers?

4          MR. JACOBS:  There were interaccount transfers in

5  this case, Your Honor.

6          THE COURT:  All right.  You would have to prove

7  that the Trustee -- or those account transfers were

8  correctly computed.

9          MR. JACOBS:  From a net equity perspective, we

10 absolutely agree, yes.

11         THE COURT:  Yeah.  So, all I'm saying is although

12 the claim only reaches back two years, you still have to

13 compute whether you call it net equity or fictitious

14 profits, that still has to be demonstrated so that you know

15 the scope of the liability.

16         MR. JACOBS:  That's correct, Your Honor.  And as

17 you may recall from the (indiscernible) trial, we submit

18 experts whose specific function is to do that.

19         THE COURT:  Okay, but the Defendants are entitled

20 to see the data --

21         MR. JACOBS:  That's absolutely right.  And we have

22 already produced in this litigation, without even having

23 received a document request, 100 percent of that data.  So

24 the Defendants have all of those records that we intend to

25 rely upon in order to prove both the net equity and to trace

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 10 of 15

Page 16

1    the transfers.
2            THE COURT: So, you produce the records of other
3    accounts, for instance, the transferor accounts?
4            MR. JACOBS: We do, Your Honor. We call that our
5    initial disclosure production. In every case where there's
6    an interaccount transfer, we replicate our production of the
7    CADs, which I described earlier, for any related accounts.
8    And by related accounts, to be clear, in our mind that means
9    any account that transferred money to the sued upon account.
10   We do provide all of that documentation.
11           And also, the only additional possible discovery
12   that I believe would be relevant to the issues of transfers
13   and net equity are the Defendants' own bank records. And as
14   Your Honor I know is aware, this Defendant in addition to
15   others, have vigorously contested our right to those
16   documents. The Court has rejected those objections. That's
17   no longer an issue in this case, although I think we're
18   going to be talking about that in some others again later.
19           But in any event, our position is that the bank
20   records have limited utility. Our experts will submit
21   reports that detail exactly why BLMIS's books and records
22   are accurate and reliable for the cash activity, transaction
23   activity for every relevant account over the life of the
24   account. Those reports have not yet been submitted but I
25   can promise the Defendant and the Court that they will be

08-01789-cgm Doc 18085-1 Filed 10/17/18 Entered 10/17/18 13:53:01 Exhibit A -2016-05-17 Transcript of proceedings Pg 11 of 15

Page 19

1  us to prematurely provide our report, we will provide our
2  report.  Ms. Chaitman will have an opportunity to consider
3  all of the records our expert considers.  She'll have an
4  opportunity to depose Mr. Dubinsky, although she hasn't yet
5  deposed him in any other case.  And at a minimum, the
6  Defendants should have to start with the voluminous
7  discovery we've already provided before more is demanded.
8  And I think that is a principle that is expressly baked into
9  Rule 26, particularly in light of the recent amendment,
10 where the purpose of the amendment is to ensure that
11 litigants don't get to engage in endless and abuse of
12 discovery.  And I think that that request falls into that
13 category of needless abuse of discovery, particularly given
14 everything we've already provided.
15          The same is true within that group of requests --
16 there are several requests that ask for stock trading
17 records for the market-making side of the business, and the
18 proprietary trading side of the business, and the IA side of
19 the business.  However, our contention is there were no
20 stocks ever traded for any IA investment advisory customer.
21 And that request asks for that documentation going back to,
22 I believe, 1982.
23          Your Honor, the Wilenitz accounts were opened in
24 2003, so how can any stock trading activity for any part of
25 the business, however unconnected it may be to this

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 12 of 15

Page 61

1               THE COURT:  And, again, this comes back to my

2     understanding of the records.  If you have tables of content

3     or indices...

4               MR. JACOBS:  I do.

5               THE COURT:  I don't want to see them now.

6               MR. JACOBS:  Okay.

7               THE COURT:  If you have those things and somebody

8     can look at them and see the subject matter of what they

9     want to look at, figure out what to look at, fine.

10              MR. JACOBS:  There is a subfolder in Data Room 1

11    that is called DTC that has all of those records.

12              MS. CHAITMAN:  I'm not asking for -- I have the

13    DTC records.

14              THE COURT:  She wants other non-DTC records.

15              MR. JACOBS:  To the extent we have them in

16    addition to publicly available information that we obtain,

17    it's all in the data room clearly labeled.

18              THE COURT:  You'll have to show me when the time

19    comes.  17 -- these are the number of employees that work

20    for each unit.

21              MR. JACOBS:  Yes, Your Honor.  And as I had

22    mentioned before, we provided a specific chart that contains

23    this exact information, even though I believe we're not

24    obligated to because it had already been made available in

25    the data room and could've been found with the click of a

08-01789-cgm   Doc 18085-1   Filed 10/17/18   Entered 10/17/18 13:53:01   Exhibit A
-2016-05-17 Transcript of proceedings   Pg 13 of 15

Page 68

1  BLMIS bought 100 shares of IBM and 50 shares show up on
2  Wilenitz.
3      MR. JACOBS:  Right.
4      THE COURT:  Who's to say he didn't actually own
5  that stock?
6      MR. JACOBS:  I would love to be able to --
7      THE COURT:  Which I guess would be relevant to his
8  net equity claim or his claim in the SIRA case.
9      MR. JACOBS:  I wish I could give you a
10 satisfactory answer but in the time that we have today, I
11 can't replicate the report of our expert, which, in
12 painstaking detail goes through all of the reasons why we
13 believe there was never a security traded in connection with
14 the fraudulent Ponzi scheme being operated and the IA
15 business.
16     THE COURT:  So, how does she test that conclusion?
17     MR. JACOBS:  She tests that conclusion the same
18 way our expert does, by examining the underlying records.
19 All of those records again have been made available to Ms.
20 Chaitman.  They're in the data room.  Those other records
21 are expert reports.
22     THE COURT:  Maybe that's the answer.  If there are
23 records -- because they do have the DTC records, at least
24 from the period when Wilenitz was investing.  If the records
25 show that BLMIS actually owned something, and the same stock

08-01789-cgm    Doc 18085-1    Filed 10/17/18    Entered 10/17/18 13:53:01    Exhibit A
-2016-05-17 Transcript of proceedings    Pg 14 of 15

Page 69

1  shows up in Wilenitz's account statement, you can make the

2  argument that he actually owned that stock.  But you can do

3  that (indiscernible) and the information has been made

4  available to you.

5           And the sense I'm getting -- and I understand that

6  it's a lot of work -- is you want the Trustee to do this for

7  you, but you're going to have to do this yourself if this

8  stuff is available.

9           MS. CHAITMAN:  You know, Judge, with 4 million

10 pages of documents, the least the Trustee could do is

11 specify the specific Bates Numbers.  Because I don't want to

12 be in a position where we go to trial...  I mean, for all I

13 know, the data room is updated constantly and new documents

14 are added.  How am I going to prove at trial that certain

15 documents were not made available to me?  I mean, it's

16 impossible.  Why can't the Trustee be bound to tell me these

17 are the documents responsive to this request?

18          THE COURT:  But that doesn't solve your problem...

19 Well, if the Trustee has additional documents, he's got to

20 supplement the disclosure or the production, which he does

21 by adding them to the data room, and maybe you have a

22 continuing duty to check the data room.

23          But part of the problem is you've thrown such a

24 broad net over what you're looking for, instead of the

25 specific documents relevant -- that I think seem to be

08-01789-cgm Doc 18085-1 Filed 10/17/18 Entered 10/17/18 13:53:01 Exhibit A -2016-05-17 Transcript of proceedings Pg 15 of 15

Page 79

1 C E R T I F I C A T I O N

3 I, Sonya Ledanski Hyde, certified that the foregoing
4 transcript is a true and accurate record of the proceedings.

8 Sonya Ledanski Hyde

20 Veritext Legal Solutions
21 330 Old Country Road
22 Suite 300
23 Mineola, NY 11501

25 Date: May 19, 2016