**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| - against - | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**DENTONS CUSTOMERS' OBJECTION TO THE TRUSTEE'S MOTION FOR
LIMITED ADDITIONAL DISCOVERY BASED ON PRIOR ORDERS AUTHORIZING
DEPOSITION OF BERNARD L. MADOFF**

DENTONS US LLP
Carole Neville
1221 Avenue of the Americas
New York, New York 10016
Telephone: 212 768-6700
Facsimile: 212 768-6800

*Attorneys for Dentons Customers*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 4

    A.   THE TRUSTEE'S DISCOVERY MOTION DOES NOT MEET THE
        STANDARD OF RULE 16(B)(4) ........................................................................ 9

    B.   THE TRUSTEE HAS REFUSED DEFENDANTS' DISCOVERY
        REQUESTS ......................................................................................................... 10

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*,
   2009 WL 1617773 (E.D.N.Y. June 9, 2009) ...................................................................... 11

*Arthur v. Atkinson Freight Lines Corp.*,
   164 F.R.D. 19 (S.D.N.Y. 1995) ......................................................................................... 10

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003) .................................................................................................. 9

*Kassner v. 2nd Avenue Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007) .............................................................................................. 10

*Lopez v. Ramos*,
   11-cv-07790 (NSR), 2013 WL 6912692 (S.D.N.Y. Dec. 30, 2013) ............................ 9, 10

*McKinney v. Connecticut*,
   2011 WL 166199 (D. Conn. Jan. 19, 2011) ...................................................................... 11

*Parker v. Columbia Pictures, Indus.*,
   204 F.3d 326 (2nd Cir. 2000) .............................................................................................. 9

**Other Authorities**

Fed. R. Bankr. P. 26 .................................................................................................................... 6

Fed. R. Bankr. P. 30 .................................................................................................................... 6

Fed. R. Bankr. P. 7016 ................................................................................................................ 9

Fed. R. Civ. P. 16
   (b)(2) ................................................................................................................................... 2
   (b)(3)(A) .............................................................................................................................. 9
   (b)(4) ................................................................................................................................... 9

Fed. R. Civ. P. 26
   (b)(2) ................................................................................................................................... 7
   (e) ................................................................................................................................ 10, 11

Customers of Bernard L. Madoff Investment Securities LLP ("BLMIS") represented by Dentons US LLP (the "Dentons Customers") and listed on the attached Schedule A, through their counsel, respond and object to the Motion For Limited Additional discovery Based On Prior Orders Authorizing Deposition of Bernard L. Madoff (the "Discovery Motion") [ECF No. 18015] filed by Irving Picard as Trustee (the "Trustee") for the liquidation of BLMIS.[1]

## PRELIMINARY STATEMENT

Although the Trustee consistently uses the late stage of the litigation to deny the good faith defendants' requests for documents that are essential to their defense, he seeks permission to launch extensive discovery and substantially supplement the record almost ten years after the BLMIS case was filed, several years after the good faith defendants began to challenge the Trustee's fabricated history of the BLMIS operations, and after discovery, including deadlines for expert witnesses, has closed in most of the cases.

The Trustee's Discovery Motion should not be granted because it is certainly not "limited", consistent with this Court's prior orders or appropriate under the discovery rules. In addition, the Discovery Motion should not be granted, because, while he has stuffed the data room with public documents, duplicate statements, select bank and trading records, the Trustee has withheld the trading records and customer confirmations that link Madoff securities to the customer statements and support the Dentons' Customers' defenses.

Although the Trustee characterizes the discovery he seeks as "limited", he is actually planning to substantially reopen discovery for select remaining good faith cases. He

---

[1] Dentons joins in the oppositions filed by McDermott Will & Emory LLP (The Sage Defendants' Memorandum Of Law On Opposition To The Trustee's Motion For Limited Additional Discovery Based On Prior Orders Authorizing Deposition Of Bernard L. Madoff); Hunton Andrews Kurth LLP (Zraick Defendants' Objection To Trustee's Motion For Limited Additional Discovery Based On Prior Orders Authorizing Deposition Of Bernard L. Madoff; and Chaitman LLP. (Opposition To The Trustee's Motion For Limited Additional Discovery Based On Prior Orders Authorizing Deposition Of Bernard L. Madoff)

specifically seeks authority to (1) depose virtually all of the key BLMIS employees who are still alive: Annette Bongiorno, Daniel Bonaventre, Erica Cotelless-Pitz, Joan Crupi, David Kugel and Joann Sala; and (2) depose an FBI Special Agent with regard to the statements memorialized in the Form FD-302 written almost ten years ago. In addition, the Trustee plans to rewrite expert reports submitted in various cases several years ago, **and** to supplement the record of cases where discovery has been closed by adding two additional expert reports regarding both the convertible arbitrage strategy and the computer systems used by BLMIS and more select data to the electronic data room.

The Trustee's Discovery Motion goes well beyond what this Court's Orders with respect to discovery following the Madoff deposition expressly state or contemplated. The Orders mandate that case management orders, including deadlines for expert reports, remain unchanged, except for rebuttal testimony.[2] In addition, the Orders were not an invitation to reopen discovery in full. Participation in the process was limited; the scope of the discovery was limited as well. Nothing in the Orders would indicate that the Trustee should be free to take depositions of Madoff's key staff and a retired FBI agent on the six broad topics outlined in the Discovery Motion.[3]

The Trustee has not made a case for extensive new discovery under the Federal Rules of Civil Procedure applicable in these case. Rule 26 of the Federal Rules of Civil Procedure does not provide authority for the Trustee to add to expert reports and add expert reports in violation of a scheduling order. Reopening discovery is not an option for the Trustee pursuant

---

[2] The Trustee should not be authorized to supplement the record or submit new expert reports in those cases of non-participating defendants where discovery has closed and expert witness reports have been served.

[3] The Trustee seeks to reopen discovery with respect to the following topics: (1) the start date of the fraud; (2) the convertible arbitrage trading strategy; (3) any actual securities and/or directed trading in individual accounts; (4) management of customer cash at BLMIS; (5) Treasury bill transactions; and (6) the IBM computer systems at BLMIS.

to Rule 16(b)(2) because he has not been diligent in pursing this discovery. In addition, the discovery is opposed by all the defendants. Since it involves several incarcerated deponents, the depositions will be costly and difficult to manage. While the cost is not an issue for the Trustee, it is a significant burden for the defendants. Finally, it is not clear that the Trustee is likely to succeed in eliciting reliable rebuttal testimony almost ten years after the events occurred, particularly as Madoff and at least one of the deponents already testified that none of these parties had any involvement with the intra-BLMIS trades for customers.

The Trustee's posture in the Discovery Motion is record that he relies upon has already proven the Ponzi scheme allegations in the complaint that he filed against each of the defendants. Nevertheless, the Trustee's goal with this Discovery Motion is to validate with more of the same sort of testimony the implausible story, fabricated within days of a an alleged declaration by Madoff, without any investigation by any government authority or the Trustee, that for thirty years, Madoff never traded securities and all redemptions or withdrawals were made with later investors' money. The history of the cases leading up to the Discovery Motion reveals that the Trustee did not investigate Madoff's business through the employees with first-hand knowledge of the business before filing the complaints against the good faith defendants or at any point thereafter until pressured to do so only two years ago. As the custodian of all the Madoff and BLMIS records, he has relied upon and made available the select universe of the documents that support his story and withheld the records that refute it. He has repeatedly stood in the way of the defendants' discovery requests; and his efforts to rehabilitate the record now with expansive discovery is made too late in the history of these adversary proceedings to be permitted.

For these reasons, as more fully discussed below, the Discovery Motion should be denied.

## FACTUAL BACKGROUND

1.      On July 7, 2016, certain defendants represented by Chaitman LLP filed a motion to depose Madoff.  The request was prompted by testimony given by Madoff in connection with the profit withdrawal litigation and focused on Madoff trading activities and operations prior to 1992.  The defendants emphasized that the Trustee had never deposed Madoff or DiPascali on these or any other topics related to the sole proprietorship or BLMIS.  *See* ECF No. 13605.

2.      On July 20, 2016, the Dentons Customers, defendants who had either opened an account or received funds from an account that was opened with BLMIS or its predecessor Madoff securities prior to 1992, joined in the motion to depose Madoff.  Other defendants also joined in the request.  Following a Court hearing on July 20, 2016, the Trustee was forced to offer the opportunity to participate in the Madoff depositions to good faith defendants that filed a timely notice of request.  The Trustee advised that the Court would hold a hearing on August 24, 2016 to determine whether a deposition should be authorized and, if so, what the parameters of the deposition would be.  *See* Notice To Defendants Establishing Deadline to File Requests to Depose Bernard L. Madoff,  ECF No. 13786.

3.      In response to the Trustee's Notice, the defendants in nineteen additional adversary proceedings filed and served Notices of Request to Depose Madoff by the August 5, 2016 deadline. On August 19, 2016, the Trustee opposed the defendants' requests to depose Madoff on almost every conceivable ground.  He argued that (a) discovery was closed in many cases; (b) it would not make any difference when the fraud began or how pervasive it was; (c) the facts of the case were already well established, including by the testimony in the criminal case of one of his proposed deponents, David Kugel; (d) the testimony wasn't relevant to the defenses; and (e) the parties were just seeking information about Jeffrey Picower.  *See* ECF No. 13902

4. The Trustee also argued that he had already provided Dentons (and presumably all the defendants) with huge amounts of the relevant information:

> Defendants represented by Dentons US LLP (the "Dentons Defendants") contend they "have no information regarding the early operations of Madoff Securities except what the Trustee's consultants describe." ECF No.13825 ¶ 3 (Notice of Request by Dentons Defendants). To the contrary, as he does in all matters, the Trustee provided the Dentons Defendants with direct access to over 4 million documents (just under 16.5 million pages) in E-Data Room 1 relating to BLMIS operations. The documents in E-Data Room 1 include regulatory disclosures, documents received from regulatory bodies about BLMIS, financial statements and BLMIS bank records, BLMIS customer monthly account statements, records of transfers of money to, from, and within BLMIS, other BLMIS internal records, and certain public documents like plea allocutions by Madoff and BLMIS employees.

ECF No. 13902, note 3. The Madoff testimony refutes that representation.

5. On September 29, 2016, this Court entered its Order authorizing the deposition of Madoff only for those defendants whose fact discovery had not closed before July 7, 2016 on following seven topics:

> 1. The trading activities of Madoff's market making and proprietary trading units during the period prior to January 1, 1992 and thereafter.
> 2. The trading activities for Madoff's investment advisory customers prior to January 1, 1992 and thereafter.
> 3. The number of employees, profitability, and revenue-generating activities of each Madoff unit in the period prior to January 1, 1992 and thereafter.
> 4. The nature, extent and scope of Madoff's legitimate and illegitimate activities at various time periods, including, inter alia, when Madoff began operating a "Ponzi" scheme and how it came about that he began operating a "Ponzi" scheme.
> 5. The extent to which different trading strategies were involved with legitimate or illegitimate activities.
> 6. The record-keeping procedures of each unit of Madoff's operations, including but not limited to records indicating the purported purchase and sale of securities and the purported allocation of securities to investment advisory customers.
> 7. The interpretation of Madoff's or BLMIS' account records, including but not limited to monthly account statements.

*See* ECF No. 14213. Although the Order does provide for the right of the parties to take further discovery based on Madoff's testimony, it was not an invitation to reopen the process. Participation was limited, as were the topics. The deadlines, including the deadlines for expert

witness reports, in the applicable case management order were to remain the same. As Schedule A demonstrates, expert reports were served on all but one of the Dentons Customers in accordance with the case management orders long ago.

6.  Madoff was deposed on December 20, 2016 April 26, and April 27 2017 (the "Day 1 Topic Depositions"). Although the Trustee continues to mischaracterize the testimony, on April 26, 2017, Madoff clearly and unequivocally testified that he was still buying securities through most of 1993. Madoff Transcript, 4/26/2016 at 11-12:l-3. He continued to buy securities for those customers in convertible arbitrage accounts so long as they were in those account. Trans. at 11-12:5-11. He testified that he took investment advisory business customer funds and purchased Treasury bills with those funds and that customer statements reflected the ownership of those Treasury securities. Trans. at. 19:3-23.[4] Madoff testified that he held up to $6 billion in U.S. Treasuries in five firms including JP Morgan. Trans. at 28:7-14. Those securities were purchased by Frank Di Pasquale, Eric Lipkin and Robert Romer Trans. at 29:10-13. Madoff testified, except for the last week in December, he always had sufficient funds to cover redemptions and never had to solicit new customers. Trans. at 31:1- 25. A copy of the April 26 Deposition transcript is annexed to the accompanying Declaration of Carole Neville (hereinafter, the "Neville Decl.") as Exhibit A.

7.  In May 2017, certain defendants, including the Dentons Customers, based on his testimony with respect to post 1992 intra BLMIS trading activities, filed notices of requests to depose Madoff on a subset of topics primarily relating to his post 1992 trading activities. *See* ECF Nos. 16099, 16101, 16104, 16105, 16106, 16110.

---

[4] Madoff consistently testified that the US treasuries were purchased with investment advisory business customer funds and he used those treasuries to make redemptions. *See* Madoff transcript, 11/9/2017 at 674:7-20.

- 6 -

8. Once again, the Trustee strongly opposed the additional deposition. In addition to arguing that the requests "run afoul of the limited on discovery imposed by Federal Rules of Civil Procedure 26 and 30," the Trustee disputed the both the Madoff testimony and the defendants' characterization of it. *See* Memorandum of Law in Opposition To Notices of Request To Depose Bernard L. Madoff on Day 2 Deposition Topics. ECF No. 16135. His arguments against further deposition topics are applicable to his request for wide ranging discovery now: "The Disputed Topics should not be permitted because they (i) are cumulative and/or duplicative; (ii) can be sought from another more convenient source because Madoff [proposed witnesses have] has not demonstrated knowledge of them; or (iii) are irrelevant to the issues before the court. *See* Rule 26(b)(2)." *Id*. at p.16.

9. The Trustee's sole request after the Day 1 Topic Depositions was for additional testimony with respect to statements contained in the FBI form FD-302 statements purportedly memorializing a meeting with Madoff and his proffer. In fact, the Trustee had already questioned Madoff about his meeting with the FBI at length on April 27, 2017. *See* Madoff Transcript 4/27/2017 at 248-251; 356-364. Madoff denied making the statements in the proffer and contends that the FBI agents were distracted with the photos on his piano during the proffer meeting. Nevertheless, the Trustee's counsel questioned Madoff extensively again about the proffer on November 9, 2017 from a heavily redacted document. Madoff Transcript, 11/9/2017 at 626-642. Madoff denied making the statements that were legible as offered by the Trustee. Almost one year later and nearly ten years after the event, the Trustee seeks to depose the retired FBI agent with respect to the form and the proffer. A copy of the November 9 transcript is annexed to the accompanying Neville Decl. as Exhibit B.

- 7 -

10. On September 11, 2017, the Court entered the order authorizing the continued deposition of Madoff on Day Two Topics. *See* Order Authorizing the Continued Deposition of Bernard L. Madoff on Day Two Topics. [ECF No. 16625]. The deposition was intended to focus on the extent to which Madoff used customer funds to purchase the securities shown on the customer's statements. As with the prior orders, this Order preserved the parties rights to take additional discovery based on Madoff's testimony, but maintained the other case management deadlines. Madoff was deposed again on November 8 and 9, 2017, when the depositions effectively concluded.

11. It is not at all clear that the witnesses the trustee belatedly seeks to depose have any relevant testimony or that they can accurately account for event that occurred ten years ago.

12. The Trustee has already had an opportunity to hear the testimony of several of the witnesses he seeks to depose again now on the same topics. At about the same time as the Chaitman defendants were first seeking to depose Madoff, in May 2016, the Trustee filed a motion to depose Annette Bongiorno and Joann Crupi for the first time regarding their handling of the advisory customer accounts in connection with the profit withdrawal litigation [ECF No.13193]. the motion was made only because this Court recognized that Trustee was attempting to resolve factual disputes with expert witnesses instead of parties potentially with firsthand knowledge of the BLMIS operations and challenged the trustee to go to the source: "You're going through this exercise of getting experts. Has anyone taken the deposition of a person who worked at Madoff Securities and might know what these profit withdrawals mean?" (Hearing Transcript, 2/24/2016 at 13:5-8).

13. The transcript of Ms. Bongiorno's testimony on the afternoon of July 8, 2016 is 270 pages long and goes well beyond the profit withdrawals. The testimony covered Ms. Bongiorno's duties at BLMIS, her limited use of the AS/400 computer, and how the statements, confirmations

- 8 -

and checks were generated, and the handling of the arbitrage accounts, among things. Ms. Bongiorno testified that she could not remember dates even then (Transcript at 12); she did not have anything to do with the arbitrage accounts after 1991(Transcript at 201); and at all times she believed the trades were real (Transcript at 205). A copy of the select pages of the Bongiorno Transcript is attached to the Neville Decl. as Exhibit C.

### A.    THE TRUSTEE'S DISCOVERY MOTION DOES NOT MEET THE STANDARD OF RULE 16(B)(4)

14.    The Trustee claims that his Discovery Motion is consistent with Rule 26 of the Federal Rules of Civil Procedure. However, his intent to supplement the expert reports and add new expert reports runs afoul of the scheduling orders in each case and rule 16.

15.    Rule 16(b)(3)(A) grants the court the authority to set discovery schedules. Pursuant to the Rule and the protocol for the BLMIS case, schedules were established in case management orders in each of the adversary proceedings. Once the scheduling order has been entered, Rule 16(b)(4) of the Federal Rules of Civil Procedure (the "Rules"), incorporated to this Adversary Proceeding by Rule 7016 of the Federal Rules of Bankruptcy Procedure, provides that a scheduling order "only for good cause and with the judge's consent." A finding of good cause focuses on the diligence of the moving party. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (good cause depends upon the diligence of the moving party); *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 339-40 (2nd Cir. 2000)(same). The moving party must "show that even if it had exercised diligence, it could not have met the deadline set by the court." *Lopez v. Ramos*, 11-cv-07790 (NSR), 2013 WL 6912692, at *3 (S.D.N.Y. Dec. 30, 2013).

16.    The Trustee cannot claim that he has exercised diligence. The good faith defendants' challenge to the Trustee's $30 million Dubinsky report was on the table from at least the time when the Chaitman defendants sought to depose Madoff in July 2016. On February 23,

- 9 -

2018, months after the last deposition of Madoff, the Trustee first moved an order establishing an omnibus proceeding on the existence, duration, and scope of Madoff's alleged fraud, which had as one of its key features additional discovery based on the Madoff testimony. At a hearing on that motion on July 25, 2018, the Court denied the motion without prejudice to the filing a separate motion to reopen discovery, provided that the Trustee did so expeditiously. Although the Trustee had his discovery plan mapped out from February 2018 at the latest, he waited an additional two months to file this Discovery Motion.

17. In addition to the moving party's diligence, courts consider are: "(1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). *See also Lopez v. Ramos*, No.11-CV-7790 (NSR), 2013 WL 6912692, (S.D.N.Y. Dec. 30, 2013). All of these factors, as demonstrated by the universal opposition to the motion and the discussion above, weight heavily in favor of denial of the Discovery Motion. .

**B.    THE TRUSTEE HAS REFUSED DEFENDANTS' DISCOVERY REQUESTS**

18. Although the Trustee seeks to go over old ground with more depositions and expert reports positions to bolster the Ponzi scheme blather, he has refused to supplement the record with the account documents and trading records that support the good faith defendants' defenses and which he admits, he has deliberately withheld.

19. In connection with his motion to prove his Ponzi scheme allegations in February 2018, Trustee's counsel and the counsel for the good faith defendants met to discuss discovery. In one of the meetings, David Sheehan disclosed for the first time that the Trustee had the customer confirmations in storage and Madoff trading records that had not been entered into the data base.

- 10 -

The confirmations are core account documents. The CUSIP numbers for the securities on those confirmations tie to securities held by Madoff and listed on customer statements. Sheehan offered to make these documents available. Of course, he never has and the rest of his team have refused to produce the documents on the grounds that discovery is closed and/or no formal request was timely made. However, the Trustee has an obligation to supplement the record with the relevant documents.

20. A "party may not free itself of the burden to fully comply" with the obligation to supplement by placing "a heretofore unrecognized duty of repeated requests for information on its adversary." *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (discussing duty to supplement under Rule 26(e)). The duty to supplement applies whether the corrective information is learned by the client or the attorney and extends not only to newly discovered evidence but also to information that was not originally provided even though it was available at the time of the initial disclosure or response. *Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, 2009 WL 1617773, at *5 (E.D.N.Y. June 9, 2009). In addition, the duty to supplement continues even after the discovery period has closed. *See, e.g., McKinney v. Connecticut*, 2011 WL 166199, at *2 (D. Conn. Jan. 19, 2011) (noting that the "fact that discovery has closed has no bearing on [the d]efendant's duty to supplement under Rule 26(e)").

21. To the extent the Trustee is permitted to bolster his record with any additional deposition testimony, he should be required to produce the customer confirmations and third party trading records.

## CONCLUSION

Based upon the above, the Dentons Customers respectfully request that the Court deny the Trustee's Discovery Motion in its entirety.

Dated: October 17, 2018
       New York, New York

                                      DENTONS US LLP
                                      By:   */s/ Carole Neville*
                                      Carole Neville
                                      1221 Avenue of the Americas
                                      New York, New York 10020
                                      Tel:  (212) 768-6700
                                      Fax: (212) 768-6800

                                      *Attorneys for Dentons Customers*

## SCHEDULE A
### DENTONS PARTICIPATING DEFENDANTS

|   | Case Name | Adversary Proceeding No. |
|---|---|---|
|   | **Expert Witness Reports Served** |   |
| 1. | HAROLD J. HEIN (IRA) | 10-04861 (SMB) |
| 2. | BARBARA J. BERDON | 10-04415 (SMB) |
| 3. | LAURA E. GUGGENHEIMER COLE | 10-04882 (SMB) |
| 4. | SIDNEY COLE (IRA) | 10-04672 (SMB) |
| 5. | ALVIN GINDEL REVOCABLE TRUST, and ALVIN GINDEL, In His Capacity As Trustee Of The Alvin Gindel Revocable Trust | 10-04925 (SMB) |
| 6. | ROSE GINDEL TRUST, ROSE GINDEL, Individually and In Her Capacity As Trustee Of The Rose Gindel Trust, MICHAEL GINDEL, Individually, and ALVIN GINDEL, In His Capacity As Trustee Of The Rose Gindel Trust | 10-04401 (SMB) |
| 7. | S&L PARTNERSHIP, a New York partnership, CARLA GOLDWORM, SAMUEL GOLDWORM, LUKE GOLDWORM | 10-04702 (SMB) |
| 8. | TOBY T. HOBISH, (IRA), LI, RAM L.P., A New York Limited Partnership | 10-05236 (SMB) |
| 9. | LAPIN CHILDREN LLC | 10-05209 (SMB) |
| 10. | STANLEY T. MILLER (IRA) | 10-04921 (SMB) |
| 11. | THE NORMA SHAPIRO REVOCABLE DECLARATION OF TRUST UNDER AGREEMENT DATED 9/16/2008; TRUST UNDER WILL OF PHILIP L SHAPIRO; NORMA SHAPIRO, individually, and in her capacity as Trustee for the Norma Shapiro Revocable Declaration of Trust Under Agreement Dated 9/16/2008 and the Trust Under Will of Philip L. Shapiro; and MARTIN ROSEN, in his capacity as Trustee of the Trust Under Will of Philip L. Shapiro | 10-04486 (SMB) |
| 12. | BARRY WEISFELD | 10-04332 (SMB) |
| 13. | JAMES GREIFF | 10-04357 (SMB) |
|   | **Discovery Open** |   |
| 14. | Neil Reger Profit Sharing Keogh | 10-05384 (SMB) |

109037841\V-2