**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TRUSTEE'S TWENTIETH INTERIM REPORT**
**FOR THE PERIOD APRIL 1, 2018 THROUGH SEPTEMBER 30, 2018**

# TABLE OF CONTENTS

**Page**

I.      EXECUTIVE SUMMARY ...........................................................................1

II.     BACKGROUND ........................................................................................3

III.    FINANCIAL CONDITION OF THE ESTATE ........................................4

IV.     ADMINISTRATION OF THE ESTATE ..................................................5

    A.    Marshaling And Liquidating The Estate Assets ...............................5

V.      CLAIMS ADMINISTRATION ...................................................................6

    A.    Claims Processing ..............................................................................6

        i.      Customer Claims .......................................................................6

        ii.     General Creditor Claims ..........................................................6

        iii.    The Trustee Has Kept Claimants Informed Of The Status
              Of The Claims Process...............................................................7

        iv.     The Hardship Program ............................................................8

    B.    Objections To Claims Determinations...............................................10

    C.    Settlements Of Customer Claims Disputes........................................11

VI.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ...........11

    A.    Net Equity Dispute............................................................................11

    B.    Time-Based Damages.........................................................................14

    C.    "Customer" Definition .......................................................................16

    D.    Fact-Based Objections .......................................................................23

    E.    Inter-Account Transfers.....................................................................24

    F.    Profit-Withdrawal Issue.....................................................................27

VII.    RECOVERIES AND CONTINGENCIES ................................................34

    A.    Recoveries Accomplished During Prior Report Periods ...................34

    B.    Recoveries Accomplished During This Report Period........................35

    C.    Earlier Settlements ............................................................................36

VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND  DISTRIBUTIONS
       TO CUSTOMERS ...................................................................................36

    A.    The Customer Fund............................................................................36

    B.    The Trustee's Initial Allocation of Property to the Fund of Customer
          Property and Authorizing the First Interim Distribution to Customers .............37

    C.    The Trustee's Second Allocation of Property to the Fund of Customer
          Property and Authorizing the Second Interim Distribution to Customers............38

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| D. | The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers | 39 |
| E. | The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers | 40 |
| F. | The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers | 41 |
| G. | The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers | 42 |
| H. | The Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing the Seventh Interim Distribution to Customers | 45 |
| I. | The Trustee's Eighth Allocation of Property to the Fund of Customer Property and Authorizing the Eighth Interim Distribution to Customers | 46 |
| J. | The Trustee's Ninth Allocation of Property to the Fund of Customer Property and Authorizing the Ninth Interim Distribution to Customers | 47 |
| K. | The General Estate | 48 |
| IX. | LITIGATION | 48 |
| A. | The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals | 49 |
| i. | Proceedings Relating to Motions to Withdraw the Reference | 49 |
| (a) | The Administrative Order | 49 |
| (b) | Consolidated Briefing Orders | 50 |
| (c) | The 546(e) Appeal | 54 |
| B. | Litigation in the Bankruptcy Court and Related Appeals | 55 |
| i. | Resolution of Good Faith Avoidance Actions | 55 |
| ii. | Summary Judgment Motions | 56 |
| (a) | South Ferry/Lowrey Motions | 56 |
| (b) | Goldenberg Motion | 58 |
| (c) | Saren-Lawrence/Nelson Motions | 59 |
| iii. | Extraterritoriality | 60 |
| C. | Subsequent Transferee Actions | 66 |
| i. | Picard v. ABN AMRO | 68 |
| ii. | Picard v. ABN AMRO (Ireland) Ltd. (Fortis) | 75 |
| iii. | Picard v. BNP Paribas | 80 |
| iv. | Picard v. Citibank | 82 |

# TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | v. | Picard v. Natixis | 87 |
| D. | | Bad Faith Actions | 92 |
| | i. | Picard v. Avellino | 92 |
| | ii. | Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff | 95 |
| | iii. | Picard v. Cohmad Sec. Corp. | 96 |
| | iv. | Picard v. Magnify Inc. | 98 |
| | v. | Picard v. Stanley Shapiro | 101 |
| E. | | Feeder Fund Actions | 102 |
| | i. | The HSBC Action | 102 |
| | ii. | The Luxalpha Action | 104 |
| | iii. | Picard v. Kingate | 108 |
| | iv. | Picard v. J. Ezra Merkin | 110 |
| | v. | Picard v. Fairfield Greenwich | 115 |
| | vi. | Picard v. Rye/Tremont | 119 |
| X. | | INTERNATIONAL INVESTIGATION AND LITIGATION | 121 |
| | A. | Austria | 122 |
| | B. | Bermuda | 122 |
| | C. | BVI | 122 |
| | D. | Cayman Islands | 122 |
| | E. | England | 123 |
| | F. | France | 123 |
| | G. | Ireland | 123 |
| | H. | Israel | 123 |
| | I. | Liechtenstein | 123 |
| | J. | Switzerland and Luxembourg | 123 |
| XI. | | FEE APPLICATIONS AND RELATED APPEALS | 124 |
| | A. | Objections to Prior Fee Applications | 124 |
| | B. | Twenty-Sixth Fee Application | 124 |
| | C. | Twenty-Seventh Fee Application | 124 |
| XII. | | CONCLUSION | 126 |

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7 estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and collectively, the "Debtors"), respectfully submits his Twentieth Interim Report (this "Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2]  Pursuant to the Claims Procedures Order, the Trustee shall file additional interim reports every six (6) months.  This Report covers the period between April 1, 2018 and September 30, 2018 (the "Report Period").

## I.    EXECUTIVE SUMMARY

1.    The Trustee has worked relentlessly for almost ten years to recover customer property and distribute it to BLMIS customers who have not fully recovered the money they deposited with BLMIS.  Through pre-litigation and other settlements, the Trustee has successfully recovered or reached agreements to recover, over $13.301 billion[3] through October

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

[3] On July 3, 2018, the United States Bankruptcy Court for the Southern District of New York approved a recovery agreement with Ascot Partners, Ascot Fund, J. Ezra Merkin, and Gabriel Capital Corporation. The $281 million payment (including interest) associated with this settlement was released from escrow and added to the Customer Fund on October 19, 2018. This $281 million recovery, when combined with recoveries of $13,020,056,723.46 through September 30, 2018, brings the total recoveries to date to $13,301,429,453.65.

31, 2018—over 75% of the currently estimated principal lost in the Ponzi scheme by those who

filed claims—for the benefit of all BLMIS customers with allowed claims.[4]

2.    On January 30, 2018, this Court entered an Order Approving the Trustee's Ninth

Allocation of Property to the Fund of Customer Property and Authorizing a Ninth Interim

Distribution to Customers, in which the Trustee allocated approximately $1.3 billion to the

Customer Fund.  On February 22, 2018, the Trustee distributed approximately $620.9 million on

allowed claims relating to 927 accounts, or 3.806% of each customer's allowed claim, unless the

claim was fully satisfied.  Subsequent to February 22, 2018 and through the end of the Report

Period, an additional $28.160 million was distributed as catch-up payments, bringing the total

Ninth Interim Distribution amount to approximately $649.033 million.  When combined with the

approximately $803.121 million First Interim Distribution, the $5.838 billion Second Interim

Distribution, the $817.156 million Third Interim Distribution, the $549.640 million Fourth

Interim Distribution, the $473.637 million Fifth Interim Distribution, the $1.420 billion Sixth

Interim Distribution, the $223.618 million Seventh Interim Distribution, the $295.782 million

Eighth Interim Distribution and $844.918 million in advances paid or committed to be paid by

the Securities Investor Protection Corporation ("SIPC"),[5] the Trustee has distributed over $11.9

billion to BLMIS customers through the Report Period, with 1,391 BLMIS accounts fully

satisfied.  The 1,391 fully satisfied accounts represent more than 61% of accounts with allowed

claims, demonstrating that the Trustee has made significant progress in returning customer

---

[4] Over $20 billion of principal was lost in the Ponzi scheme in total.  Of the $20 billion, approximately $17.5 billion of principal was lost by those who filed claims.

[5] SIPC has advanced approximately $844.023 million through the Report Period to the Trustee to pay allowed claims.  The difference between the amount committed to pay by SIPC and the amount actually advanced to customers depends on whether the Trustee has received an executed assignment and release from the customer. Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims is less than the amount of SIPC advances committed by the Trustee.

property to BLMIS customers.  Thus, all allowed customer claims up to $1,385,000.00 have been fully satisfied.  See discussion *infra* in Section VIII.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history.  Many billions of dollars and thousands of people and entities located across the world were involved in this fraud.  The Trustee continues to work diligently and tirelessly to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.      BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein,[6] have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.

---

[6] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April

## III.   FINANCIAL CONDITION OF THE ESTATE

7.      No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims.  Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid from administrative advances from SIPC.  These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain.  Thus, recoveries from litigation, settlements, and other means will be available in their entirety for the satisfaction of allowed customer claims.

8.      A summary of the financial condition of the estate as of September 30, 2018 is provided in Exhibit A attached hereto.

9.      This summary reflects cash of $12,115,117.10, short term investments, money market deposit accounts and other investments, including alternative investments received in connection with the Chais settlement of $514,798,180.00, and short-term United States Treasuries in the amount of $1,196,017,694.00.  *See* Exhibit A, page 3, note (3) and page 5, notes (5) and (6).

10.     As detailed in Exhibit A, as of September 30, 2018, the Trustee requested and SIPC advanced $2,542,421,595.00, of which $844,022,873.98 was used to pay allowed customer

---

1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); and October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555).

claims up to the maximum SIPA statutory limit of $500,000 per account,[7] and $1,698,398,721.02

was used for administrative expenses. *See* Exhibit A, page 1.

## IV.   ADMINISTRATION OF THE ESTATE

### A.   Marshaling And Liquidating The Estate Assets

11.     The Trustee and his Counsel have worked diligently to investigate, examine, and

evaluate the Debtor's activities, assets, rights, liabilities, customers, and other creditors.   Thus

far, the Trustee has been successful in recovering or entering into agreements to recover a

significant amount of assets for the benefit of customers, totaling over $13.301 billion through

October 31, 2018.[8]  For a more detailed discussion of prior recoveries, *see* Section V.B. of the

First Interim Report; Section IV of the Second, Amended Third, and Fourth Interim Reports;

Section VII of the Fifth Interim Report; Section IV of the Sixth Interim Report; and Section VII

of the Seventh through Nineteenth Interim Reports.

12.     The Trustee has identified claims in at least eight shareholder class action suits

that BLMIS filed before the Trustee's appointment arising out of its proprietary and market

making desk's ownership of securities.   During the Report Period, the Trustee had received

distributions from seven of these class action settlements totaling over $91,000.   The Trustee has

not and will not receive any distributions from the eighth class action settlement.   In addition, the

Trustee has identified claims that BLMIS may have in 196 other class action suits also arising

out of its proprietary and market making activities.   The Trustee has filed proofs of claim in 128

---

[7] The Trustee must receive an executed assignment and release from each customer before receiving and releasing an advance of funds from SIPC.  Thus, the amount of SIPC advances requested by the Trustee and paid for allowed customer claims that have been determined is less than the amount of SIPC advances committed by the Trustee. *See supra* note 4.

[8] On July 3, 2018, the United States Bankruptcy Court for the Southern District of New York approved a recovery agreement with Ascot Partners, Ascot Fund, J. Ezra Merkin, and Gabriel Capital Corporation. The $281 million payment (including interest) associated with this settlement was released from escrow and added to the Customer Fund on October 19, 2018. This $281 million recovery, when combined with recoveries of $13,020,056,723.46 through September 30, 2018, brings the total recoveries to date to $13,301,429,453.65.

of these cases and, based on a review of relevant records, has declined to pursue claims in 68 additional cases. As of September 30, 2018, the Trustee has recovered $1,777,342.80 from settlements relating to 61 of the 128 claims filed directly by the Trustee during the Report Period, of which $42,210.85 was recovered during this Report Period.

## V.    CLAIMS ADMINISTRATION

### A.    Claims Processing

#### i.    Customer Claims

13.    During the Report Period, the Trustee allowed $739,976,788.00 in customer claims. This brings the total amount of allowed claims as of September 30, 2018 to $17,643,896,491.62. The Trustee has paid or committed to pay $844,917,873.98 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

14.    As of September 30, 2018, there were 32 claims relating to 24 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### ii.    General Creditor Claims

15.    As of September 30, 2018, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling

approximately $1.7 billion.[9]  The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms.  Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million.  At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

iii.    **The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process**

16.    Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

17.    The Trustee Website allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation.  In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events.  The Trustee Website is monitored and updated on a daily basis.

18.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the

---

[9] *See* Paragraph 154 of the Trustee's Twentieth Interim Report.

claimants.    As of September 30, 2018, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives.

19.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns.    As of September 30, 2018, the Trustee, B&H, and the Trustee's professionals had fielded thousands of calls from claimants and their representatives.

20.    In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.    The Hardship Program

21.    At the commencement of claims administration, the Trustee established the Hardship Program to accelerate the determination of claims and the receipt of SIPC protection up to $500,000 for individual account holders who were dealing with hardship.    An individual could qualify for the Hardship Program if he or she filed a claim and was unable to pay for necessary living or medical expenses, over 65 years old and forced to reenter the work force after retirement, declaring personal bankruptcy, unable to pay for the care of dependents, or suffering from extreme financial hardship beyond the identified circumstances.

22.    As of December 11, 2010, the Trustee had received 394 Hardship Program applications.    The Trustee obtained advances from SIPC and issued 125 checks to hardship applicants with allowed claims.    The Trustee also worked in good faith with approved applicants to reconcile any disputed portions of their claims.    Of the 394 Hardship Program applications received prior to December 11, 2010, the Trustee assessed the information provided and, in the exercise of his discretion, decided not to commence avoidance actions against 249 hardship applicants.

23.    The Trustee expanded the Hardship Program into a second phase as he instituted avoidance actions.  While the law requires the Trustee to pursue avoidance actions to recover customer property, the Trustee has stated that he will not pursue avoidance actions against BLMIS accountholders suffering proven hardship.  In order to forego an avoidance action, the Trustee needed financial information about the accountholder.  Thus, the Trustee announced in November 2010 that the Hardship Program would focus on avoidance action defendants and requested that accountholders come forward to share information regarding their hardships.  Through this program, the Trustee has worked with a substantial number of hardship applicants who were subject to avoidance actions to confirm their hardship status and forego the pursuit of an avoidance action.

24.    As of September 30, 2018, the Trustee had received 457 Hardship Program applications from avoidance action defendants relating to 302[10] adversary proceedings.  After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 277 Hardship Program applicants-defendants from avoidance actions.  As of September 30, 2108, there were 8 Hardship Program applications still under review and 65 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement.  The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending.

25.    The Trustee established a Hardship Program Hotline with a telephone number and electronic mail address.  A large number of potential applicants have been assisted by the Trustee

---

[10] The hardship data reported herein has been updated to reflect a reconciliation undertaken by the Trustee that identified and eliminated instances of double-counting where a single hardship application was submitted on behalf of multiple defendants.

9

through the use of the Hotline, and the Trustee urges customers to continue using this resource and the Hardship Program if they believe they qualify. Further information and applications are available on the Trustee Website.

**B.    Objections To Claims Determinations**

26.    As required by the Claims Procedures Order and described in each determination letter sent by the Trustee ("Determination Letter"), BLMIS claimants have thirty days from the date of a Determination Letter to object to the Trustee's determination of their claim. Claimants who disagree with the Trustee's determination of their claim must file with the Court a written opposition setting forth the grounds of disagreement and provide the Trustee with the same. A hearing date will be obtained by the Trustee, and claimants will be notified of that date. As of September 30, 2018, 1,863 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,415 unique claims and 812 accounts. As of September 30, 2018, 408 docketed objections (related to 478 unique claims and 369 accounts) remained.

27.    The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS

10

account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

28.    The Trustee departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

## C.    Settlements Of Customer Claims Disputes

29.    As of September 30, 2018, the Trustee had reached agreements relating to 1,043 accounts and with the IRS (which did not have a BLMIS account).  These litigation, pre-litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have been necessary to obtain and collect judgments from these customers.

## VI.    PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

## A.    Net Equity Dispute

30.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method.  Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

31.    For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method.  Some claimants argued that the Trustee was required to allow

customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net
Equity Dispute").

32.     On August 16, 2011, the Second Circuit affirmed this Court's decision and the
Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee
to discharge claims for securities under SIPA "upon the false premise that customers' securities
positions are what the account statements purport them to be." *Sec. Investor Prot. Corp. v.
Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "*Net Equity Decision*").
Any calculation other than the Net Investment Method would "aggravate the injuries caused by
Madoff's fraud." *Id*. at 235.   Instead, the Net Investment Method prevents the "whim of the
defrauder" from controlling the process of unwinding the fraud. *Id*.

33.     Under the *Net Equity Decision*, the relative position of each BLMIS customer
account must be calculated based on "unmanipulated withdrawals and deposits" from its opening
date through December 2008.  *Id*. at 238.   If an account has a positive cash balance, that
accountholder is owed money from the estate.  As a corollary, if an account has a negative cash
balance, the accountholder owes money to the estate.  Both the recovery and distribution of
customer property in this case are centered on the principle that the Trustee cannot credit
"impossible transactions."  *Id*. at 241.  If he did, then "those who had already withdrawn cash
deriving from imaginary profits in excess of their initial investment would derive additional
benefit at the expense of those customers who had not withdrawn funds before the fraud was
exposed." *Id*. at 238.

34.     First, the Second Circuit found, "in the context of this Ponzi scheme—the Net
Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a
trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims

unfairly ahead of others.'"  *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)).  Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

35.     Next, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240.  Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id*. at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)).  Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id*. at 235.

36.     On September 6, 2011, certain claimants filed a petition for panel rehearing, or, in the alternative, for rehearing *en banc*. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537).  The panel that determined the appeal considered the request for panel rehearing, the active members of the Court considered the request for rehearing *en banc*, and on November 8, 2011, both denied the petition.  (ECF No. 551).

37.     Three petitions for certiorari were filed with the Supreme Court.  On June 25, 2012, the Supreme Court denied certiorari in two of the petitions. *Ryan v. Picard*, 133 S. Ct. 24

(2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012).  Certiorari was also dismissed with respect to one

appeal.  *Sterling Equities Assoc. v. Picard*, 132 S. Ct. 2712 (2012).

**B.**    **Time-Based Damages**

38.    Following the Supreme Court decision denying certiorari regarding the Net

Investment Method, the Trustee filed a motion seeking the affirmance of his calculations of net

equity, and denying certain claimants' request for "time-based damages."  (ECF Nos. 5038,

5039).  The Trustee took the position that customers were not entitled to an inflation-based

adjustment to their allowed customer claims.

39.    Over the objections of hundreds of parties, this Court granted the Trustee's

motion, finding that claimants were not entitled to time-based damages as part of their net equity

claims against the fund of customer property.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv.

Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "Time-Based

Damages Decision"); see also ECF No. 5463.

40.    Thereafter, the parties submitted a letter requesting that the Court certify a direct

appeal of the Time-Based Damages Decision to the Second Circuit under 28 U.S.C. § 158(d)(2).

(ECF No. 5488).  On September 24, 2013, the Court certified the Time-Based Damages Decision

for a direct appeal to the Second Circuit, (ECF No. 5514), which was accepted on January 22,

2014.  *In re Bernard L. Madoff Inv. Sec. LLC*, No. 14-97(L) (2d Cir. Jan. 22, 2014).  Oral

argument took place on October 14, 2014.

41.    On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's

decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law" and

that the SEC was not owed *Skidmore* or *Chevron* deference.  *See In re Bernard L. Madoff Inv.

Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015).  The Court also held that "an interest adjustment to

customer net equity claims is impermissible under SIPA's scheme."  *Id.* at 83.

42.    Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest. The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id.* at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id.* at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id*. at 81, "the Act . . . restores investors to what their position would have been in the absence of liquidation." *Id.* at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id.* at 83.

43.    Certain claimants urged the Court to apply deference to the SEC's view, which supported their position that customer claims were deserving of an inflation-based adjustment. While the SEC clarified that it did not seek deference at all, but if it were, it would have been *Skidmore* deference, a more fluid level of deference than the kind sought by the claimants. Nevertheless, the Second Circuit held that no deference was owed to the SEC's views in this case. *Id.* at 82.

44.    The claimants did not file a petition for rehearing in the Second Circuit. A petition for a writ of certiorari to the Supreme Court was filed on July 20, 2015. On July 23, 2015 and July 24, 2015, the Trustee and SIPC waived their rights to respond to the petition. On August 21, 2015, a brief was filed in support of the petition by other BLMIS customers. On September 9, 2015, the petition was distributed to the Justices for a conference on September 28, 2015. On October 5, 2015, the Supreme Court declined to review the petition.

## C.   "Customer" Definition

45.     The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78*lll*(2) of SIPA.   Where it appeared that claimants did not have an account in their names at BLMIS ("Claimants Without An Account"), the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

46.     On June 11, 2010, the Trustee filed a Motion for an Order to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds.   (ECF Nos. 2410–2413, 2416).   The motion addressed only those claimants whose claims emanated from their direct or indirect investments in sixteen so-called feeder funds that, in turn, had accounts with and invested directly with BLMIS.

47.     The Court held a hearing on October 19, 2010.   On June 28, 2011, the Court issued a Memorandum Decision and Order affirming the Trustee's denial of these claims.   (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285 (Bankr. S.D.N.Y. 2011).

48.     The Court found that, in light of the plain language of SIPA and relevant case law, the investor-claimants did not qualify as "customers" under SIPA.   The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS.   It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds.   The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

49.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no transactions reflected on the books and records of BLMIS . . . ." *Id.* at 290.

50.     Twenty-seven notices of appeal were filed and assigned to United States District Judge Denise L. Cote. *See Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, No. 11-cv-05683 (DLC) (S.D.N.Y.). On January 4, 2012, Judge Cote affirmed the June 28, 2011 order of the Court. *See Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision, Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition excludes persons like the appellants who invest in separate third-party corporate entities like their feeder funds that in turn invest their assets with the debtor." *Id*. at 123. Thus, the District Court held that the feeder funds were the BLMIS customers and the appellants were precluded from seeking separate recoveries as additional SIPA claimants. *Id*. at 129–30.

51.     On January 6, 2012, four appeals were taken from Judge Cote's order to the Second Circuit. *See Bricklayers and Allied Craftsman Local 2 Annuity Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-410 (2d Cir. Jan. 31, 2012); *Rosamilia v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-437 (2d Cir. Feb. 2, 2012); *Kruse v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-483 (2d Cir. Feb. 6, 2012); *Upstate N.Y. Bakery Drivers and Indus. Pension Fund v. Sec. Investor Prot. Corp., Irving H. Picard*, No. 12-529 (2d Cir. Feb. 3, 2012). On February 22, 2013, the Second Circuit affirmed the decisions of the District Court

and the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). *See Kruse v. Sec. Investor Prot. Corp., Irving H. Picard,* 708 F.3d 422 (2d Cir. 2013).

52.    On another matter involving the interpretation of the "customer" definition, on October 5, 2011, the Trustee moved before the Court for an order establishing a briefing schedule and hearing to affirm his determination that ERISA did not alter his denial of "customer" status to certain claimants.  (ECF No. 4432).  This Court entered a scheduling order on November 8, 2011.  (ECF No. 4507).

53.    On November 14, 2011, the Trustee filed his Motion For An Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4521) (the "ERISA Motion").  On or around January 17, 2012, approximately eighteen opposition briefs to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4625–4628, 4631–4633, 4635, 4637–4643, 4652–4654).  On March 2, 2012, the Trustee filed his Memorandum in Support of the Trustee's Motion for an Order Affirming Trustee's Determinations Denying Claims Over ERISA-Related Objections.  (ECF No. 4703).  On April 2, 2012, five replies to the ERISA Motion were filed on behalf of various ERISA claimants.  (ECF Nos. 4746, 4748, 4750, 4755, 4756).  The Trustee's sur-reply was filed on April 20, 2012.  (ECF No. 4781).

54.    During the pendency of the above briefing, certain ERISA claimants also filed motions to withdraw the reference on the ERISA Motion from this Court to the District Court. *See Sec. Investor Prot. Corp. v. Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y. Aug. 6, 2012) (filed on behalf of J. X. Reynolds & Co. Deferred Profit Sharing Plan, Jacqueline Green Rollover Account and Wayne D. Green Rollover Account); *Sec. Inv'r Prot. Corp. v. I.B.E.W. Local 241 Pension Fund*, No. 12-cv-01139-DLC (S.D.N.Y. Aug. 6, 2012)

(filed on behalf of thirty-seven ERISA plan claimants). On February 28, 2012 and March 1, 2012, these motions were accepted as related to the appeals decided by Judge Cote in *Aozora Bank*, discussed above, and were re-assigned to Her Honor. Judge Cote withdrew the reference on April 20, 2012. *Jacqueline Green Rollover Account*, No. 12-cv-01039-DLC (S.D.N.Y.), (ECF No. 7).

55.    On July 25, 2012, the District Court granted the Trustee's ERISA Motion. *See id*. (ECF No. 29). The District Court found that the ERISA claimants were not "customers" under SIPA because they did not deposit money with BLMIS for the purchase of securities and did not own the assets of the ERISA plans that were deposited with BLMIS. *Id*. No appeal was taken from this opinion and order.

56.    On June 27, 2013, the Trustee filed the Trustee's Second Motion to Affirm Trustee's Determinations Denying Claims of Claimants Who Invested in Certain Feeder Funds and Did Not Have BLMIS Accounts in Their Names. (ECF Nos. 5396, 5397, 5398, 5399, 5438, 5439, collectively, the "Second Feeder Fund Motion"). On August 21, 2013, the Court issued its decision (the "*Second Feeder Fund Decision*") (ECF No. 5450). The *Second Feeder Fund Decision* affirmed that "the burden is on the claimant to establish he is a 'customer' entitled to SIPA protection, and such a showing is not easily met." *Id*. at 4 (quoting 454 BR at 294). Also, the Court determined that the claimants "failed to [meet their burden] because they lack any indicia of a 'customer' relationship with BLMIS." *Id*. In particular, "they had no securities accounts at BLMIS, were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked property interest in any feeder fund account assets at BLMIS, entrusted no cash or securities to BLMIS, had no investment discretion over feeder fund assets invested with BLMIS, received no account statements or other communications from BLMIS and had no

transactions reflected on the books and records at BLMIS." *Id.* at 4. The *Second Feeder Fund Decision* was not appealed.

57.    On April 30, 2014, the Trustee filed a motion to affirm his determinations denying claims of claimants who invested in certain ERISA plans. (ECF Nos. 6489, 6491, 6492). In an opinion rendered on August 22, 2014, this Court determined that the claimants were not "customers" of BLMIS within the meaning of SIPA. (ECF No. 7761).

58.    On December 12, 2014, the Trustee filed his Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S Associates, General Partnerships (the "S&P Motion"). (ECF No. 8734). The S&P Motion was filed to resolve objections to the Trustee's denial of 158 claims that were filed by parties who were either partners in, or investors in those partners in, S&P or P&S Associates (the "S&P and P&S Claimants").[11] The Trustee allowed the claims of S&P and P&S to the extent of their respective net equity, because each held a BLMIS account in its name. S&P and P&S have been receiving interim distributions on their claims.

59.    The S&P and P&S Claimants objected to the Trustee's S&P Motion on January 26, 2015. (ECF No. 9185). They argued that SIPA should be construed broadly to include the S&P and P&S partners and/or investors. *Id.* at 3-4. The Claimants also argued that under Florida partnership law, "a partner is an owner of the partnership. . . . [and] a partner owns a specific interest in all partnership assets." *Id.* at 6.

60.    On February 25, 2015, the Bankruptcy Court issued an oral ruling granting the Trustee's S&P Motion. *See* Hr'g Tr. 27:19 – 35:25 (ECF No. 9506). The Court explained that "the objecting partners have failed to sustain their burden of proof" because "[t]hey did not

---

[11] *See* S&P Motion at 2, n. 3 (citing Declaration of Vineet Sehgal, ECF No. 8734), identifying and describing the objections to the Trustee's determinations of claims at issue in the S&P and P&S Proceeding).

entrust any cash or securities with BLMIS."  Rather, "[t]hey invested with partnerships who, in

turn, invested with BLMIS."   As a result, "even if BLMIS knew or surmised that the

partnerships' BLMIS accounts were funded with partners' contributions, there is no evidence

that BLMIS maintained records identifying the partners or even knew who they were, and the

fact remains that the partners did not entrust anything to BLMIS . . . ."  *Id.* at 30:16-31:6.  On

March 10, 2015 the Bankruptcy Court entered an Order approving the Trustee's Motion to

Affirm His Determinations Denying Claims of Claimants Holding Interests in S&P or P&S

Associates, General Partnerships (the "*S&P Decision*").  (ECF No. 9450).  No appeal was taken

from the order.

       61.    Since the *S&P Decision* the Trustee has filed twenty-two similar motions to

affirm his customer claim determinations with respect to indirect investors, twenty-one of which

have been granted by this Court.[12]  The twenty-second motion was filed on September 14, 2017

---

[12]*See* Order Approving Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in: Peerstate Equity Fund, L.P., ECF No. 9883 (Apr. 27, 2015); The Lazarus-Schy Family Partnership, The Schy Family Partnership, Or The Lazarus Investment Group, ECF No. 10010 (May 18, 2015); Epic Ventures, LLC, ECF No. 10267 (June 25, 2015); Partners Investment Co., Northeast Investment Club, And Martin R. Harnick & Steven P. Norton, Partners, ECF No. 10894 (July 29, 2015); The Whitman Partnership, The Lucky Company, The Petito Investment Group, And The Harwood Family Partnership, ECF No. 11145 (Aug. 26, 2015); 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners, ECF No. 11920 (Oct. 29, 2015); Black River Associates LP, MOT Family Investors, LP, Rothschild Family Partnership, and Ostrin Family Partnership, ECF No. 12757 (Mar. 3, 2016); The Article Third Trust, Palmer Family Trust, Maggie Faustin, Estate of Theodore Schwartz, and Miller Trust Partnership, ECF No. 13172 (Apr. 26, 2016); William M. Pressman, Inc., William Pressman, Inc. Rollover Account, and AGL Life Assurance Company, ECF No. 13466 (June 7, 2016); Palko Associates, Gloria Jaffe Investment Partnership, and the Miller Partnership, ECF No. 13780 (July 22, 2016); Chalek Associates LLC, Chaitman/Schwebel LLC, FGLS Equity LLC, Larsco Investments LLC, and Kuntzman Family LLC, ECF No. 14225 (Oct. 4, 2016); AHT Partners, Pergament Equities, LLC, SMT Investors LLC, Greene/Lederman, L.L.C., and Turbo Investors, LLC, ECF No. 14346 (Oct. 27, 2016); M&H Investment Group L.P., PJFN Investors Limited Partnership, Kenn Jordan Associates and Harmony Partners, Ltd., ECF No. 14537 (Dec. 1, 2016); Sienna Partnership, L.P., Katz Group Limited Partnership, and Fairfield Pagma Associates, L.P., ECF No. 14774 (Dec. 22, 2016); Judy L. Kaufman et al. Tenancy in Common, Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy in Common, ECF Nos. 15819, 15824, 15825 (Apr. 13, 2017); Richard B. Felder and Deborah Felder Tenancy In Common, ECF No. 15920 (Apr. 27, 2017); Jeffrey Schaffer Donna Schaffer Joint Tenancy and Stanley I. Lehrer and Stuart M. Stein Joint Tenancy, ECF No. 16229 (June 26, 2017); the Lambeth Company, ECF No. 16404 (July 20, 2017); the Brighton Company and the Popham Company, ECF No. 16523 (Aug. 16, 2017); and the Schupak Account, ECF No. 16641 (Sept. 18, 2017). A twenty-second motion, Trustee's Motion and Memorandum of Law to Affirm His Determinations Denying Claims of Claimants Holding Interests in the Jennie Brett and David Moskowitz Accounts, was filed on September 14, 2017, ECF No. 16632. The objection deadline was October 4, 2017. The Trustee filed a Certificate of No Objection on October 12, 2017.  *See* ECF No. 16746.

(ECF No. 16632), with an objection deadline of October 4, 2017. No timely objections were received and the Trustee filed a Certificate of No Objection on October 12, 2017 (ECF No. 16746).

62.     Since the S&P/P&S Claimants, three claimants have objected to the Trustee's motions to affirm his treatment of their claims. On September 29, 2015, George G. and Linda G. Pallis filed a timely objection to the Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in 1973 Masters Vacation Fund, Bull Market Fund, And Strattham Partners. (ECF No. 11920). On March 16, 2017 and March 22, 2017, respectively, Rebecca and Robert Epstein (ECF No. 15330) and Daniel C. Epstein (ECF No. 15575) (the "Epsteins"), filed objections to the Trustee's Motion to Affirm His Determinations Denying Claims of Claimants Holding Interests in Judy L. Kaufman *et al.* Tenancy In Common and Keith Schaffer, Jeffrey Schaffer, Carla R. Hirschhorn Tenancy In Common (ECF No. 14844).

63.     The Pallises relied upon three checks made payable to Bernard L. Madoff for investment in the 1973 Masters Vacation Fund BLMIS account as evidence of their customer status. This Court found that despite the existence of those checks, the Pallises were situated no differently than any of the other indirect claimants because despite being made payable to Madoff, they were sent to the "agent of the fund" and were ultimately credited to the fund's BLMIS account. *See* Transcript of Hearing regarding Trustee's Motion and Memorandum to Affirm His Determinations Denying Claims of Claimants' Holding Interests in 1973 Masters Vacation Fund, Bull Market Fund, and Strattham Partners, 12:18-25 (Oct. 28, 2015). This Court overruled the Pallises' objection and granted the Trustee's Motion because the evidence showed that the Pallises "didn't have an account with . . . BLMIS, had no connection, received no

22

correspondence or direct communications" from BLMIS and thus "fail[ed] to demonstrate that they were customers" of BLMIS. *Id.* at 13:1-8.

64.    The Court heard oral argument on the Epsteins' objections on March 29, 2017 and issued its Memorandum Decision Affirming the Trustee's Denial of Certain Customer Claims on April 7, 2017. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 570 B.R. 477 (Bankr. S.D.N.Y. 2017).  Again, this Court upheld the Trustee's determination because the Epsteins, like the Pallises, "failed to carry their burden of proving that they were 'customers' of BLMIS as defined by SIPA." *Id.* At 482.  As with the many indirect objecting claimants before them, the Epsteins were unable to satisfy the "critical aspect" of entrustment of funds to BLMIS and therefore were not customers.

D.    **Fact-Based Objections**

65.    As part of his ongoing efforts to resolve pending objections, counsel for the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims.  During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court.  As such, counsel for the Trustee and counsel for claimant Brian Ross entered into a stipulation setting dates for the litigation of Mr. Ross's claim (ECF No. 13048) (April 6, 2016).  This Court approved and entered the Stipulated Scheduling Order on May 4, 2016 (ECF No. 13215).

66.    In June 2016, the Trustee and counsel for Mr. Ross exchanged discovery related to his claim and objection, which assert that he is entitled to customer status based on his deposits into a BLMIS account held in the name of his father, Allen Ross.  On August 24, 2016, this Court entered a Stipulation and Order Modifying the Scheduling Order Concerning the Determination of the Brian Ross Claim (ECF No. 13921) to extend fact discovery in order to allow the parties sufficient time to identify possible witnesses.  Prior to the close of fact

23

discovery, the Trustee noticed the depositions of Mr. Ross and his accountant. Before those depositions were scheduled, Mr. Ross withdrew his objection to the determination of his claim and the hearing before this Court was cancelled. *See* (ECF No. 14559) (Dec. 6, 2016).

### E.    Inter-Account Transfers

67.    The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in, cash-out" methodology is appropriate for calculating a customer's net equity in this case. The *Net Equity Decision*, however, did not expressly address the treatment of transfers between BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers maintained more than one BLMIS account, and transferred funds between such accounts. Other customers transferred funds to the accounts of other BLMIS customers.

68.    On March 27, 2014, the Bankruptcy Court entered an order setting a schedule to file briefs and argue the merits of the Trustee's Motion For An Order to Affirm the Trustee's Determination of Customer Claims Regarding Transfers between BLMIS Accounts (the "IAT Motion"). *See* ECF No. 6049. On March 31, 2014, the Trustee filed the IAT Motion, which explained that, for Inter-Account Transfers, in which no new funds entered BLMIS, the Trustee reduced the balance of the transferor account to the extent actual principal was available, and then credited the transferee account in the corresponding amount of actual principal transferred. (ECF No. 6084). If the transferor account did not have any principal available at the time of the transfer, then $0 was credited to the transferee account. *Id.* at 3. SIPC filed a brief in support of the Trustee's motion on March 31, 2014. (ECF No. 6079).

69.    Fifteen objections were filed in response to the IAT Motion. These objecting parties argued that the inter-account method violates the statute of limitations for pursuing fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code; generates arbitrary results; improperly combines accounts and violates federal securities laws; violates public

24

policy; and violates ERISA. They also argued that the Bankruptcy Court lacks constitutional authority to render final judgments and that a transferee's net equity claim should not be affected by withdrawals made by other beneficiaries in a shared account.

70.    On December 8, 2014, the Bankruptcy Court entered its Memorandum Decision Affirming Application of the Trustee's Inter-Account Method to the Determination of Transfers Between BLMIS Accounts. ECF No. 8680; *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). The Bankruptcy Court affirmed the Trustee's method for calculating a customer's net equity when inter-account transfers were made to or from that account. Judge Bernstein explained that if he adopted the objecting parties' arguments, "computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id.* at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

71.    Five notices of appeal were filed by: (i) Diana Melton Trust, Dated 12/05/05 (ECF No. 8843); (ii) Edward Zraick Jr., Nancy Zraick, Patricia DeLuca and Karen M. Rich (ECF No. 8911); (iii) Michael Most (ECF No. 8913); (iv) claimants represented by Becker & Poliakoff (ECF No. 8916); and (v) Elliot G. Sagor (ECF No. 8917). (Case Nos. 15-cv-1151; 15-cv-1195; 15-cv-1223; 15-cv-1236; 15-cv-1263). The appellants filed three briefs on April 27, 2015 (ECF No. 12 (Case No. 15-cv-1151); ECF No. 12 (Case No. 15-cv-1223) and ECF No. 13 (Case No. 15-cv-1263), respectively. The Trustee's opposition was filed on May 27, 2015. (ECF No. 21).

SIPC filed its opposition brief on May 27, 2015 (ECF No. 20). An amicus brief was filed on May 4, 2015 (ECF No. 13), and replies were filed on June 25, 2015 (ECF No. 24). On September 17, 2015, oral argument was held before Judge Engelmayer.

72.    On January 14, 2016, Judge Engelmayer issued his opinion and order affirming this Court's Order approving the use of the Inter-Account Transfer Method. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's *Net Equity Decision* and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 15 Civ. 1151(PAE), 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238 n.7 (Bankr. S.D.N.Y.).

73.    On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit by (i) Elliot G. Sagor (Docket 16-413, ECF No. 1); (ii) Edward A. Zraick, Jr., Nancy Zraick, Patricia DeLuca, and Karen M. Rich (Docket 16-420, ECF No. 1); and (iii) claimants represented by Chaitman LLP (Docket 16-423, ECF No. 1). The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016. *See Sagor v. Picard*, (Docket 16-413, ECF No. 34); *Zraick et al. v. Picard*, Docket 16-420, ECF No. 34); *Blecker et al. v. Picard*, (Docket 16-423, ECF No. 39).

74.    The appellants filed three opening briefs on May 23, 2016. (ECF Nos. 134, 140 and 141). An amicus brief was filed on May 31, 2016 (ECF No. 155). The Trustee's opposition was filed on August 22, 2016 (ECF No. 166). SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170). Replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187).

75.    The Second Circuit heard oral arguments on May 11, 2017.  On June 1, 2017, the Second Circuit issued a Summary Order affirming the District Court's order upholding the Trustee's application of the Net Investment Method to Inter Account Transfers.  Rejecting each of the Appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'"  *In re Bernard L. Madoff Inv. Sec., LLC*, 16-413-bk(L), 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

76.    The deadline for the appellants to file a petition for writ of certiorari to the Supreme Court expired on October 4, 2017.  No petitions were filed.

## F.    <u>Profit-Withdrawal Issue</u>

77.    In a declaration related to the Inter-Account Transfer matter, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements.  *See* Declaration of Aaron Blecker, In Opposition to the Trustee's Motion to Affirm the Application of the Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761).  Several other customers objected to the Trustee's denial of their net equity claims for similar reasons.  These customers dispute whether they actually received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

78.    Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions.  In light of the number of potentially impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper.  *See* Motion for Order Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No. 9357).  Following discussions with

27

various counsel, the Trustee withdrew his Motion and filed an Amended Motion for Order

Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No.

10017).  The Court granted the amended motion on June 25, 2015 (ECF No. 10266).

79.    On July 14, 2015, the Trustee filed his motion and memorandum of law on the

Profit Withdrawal Issue, along with the supporting declarations.  (ECF Nos. 10660-10664).

SIPC filed its supporting memorandum on July 14, 2015 (ECF No. 10650).  The Trustee and

Participating Claimants exchanged written discovery in accordance with the Profit Withdrawal

Scheduling Order, including service of supplemental expert reports.

80.    On December 28, 2015, counsel for Aaron Blecker filed a Motion for an Order

Compelling the Trustee to Allow Aaron Blecker's SIPC Claim ("Motion to Compel") despite his

involvement in the Profit Withdrawal litigation.  (ECF No. 12319).  The Trustee opposed the

Motion to Compel on the grounds that Mr. Blecker's claims were at the center of both the Profit

Withdrawal litigation and the Inter-Account Transfer appeal before the District Court.  (ECF No.

12432, Jan. 13, 2016).  SIPC filed its memorandum of law in support of the Trustee's opposition

on January 14, 2016 (ECF No. 12438).  Mr. Blecker filed his reply on February 10, 2016, (ECF

No. 12628), and a hearing was held before this Court on February 24, 2016 at which time Mr.

Blecker's Motion to Compel was denied.  This Court denied the Motion to Compel because (1)

Mr. Blecker agreed to participate in the omnibus Profit Withdrawal Litigation proceedings and

he could not now litigate around those procedures; (2) any decision on the issues raised in his

Motion to Compel would impact the omnibus profit withdrawal litigation; and (3) issues of facts

remain that would only be resolved through an evidentiary hearing.  *See* Hearing Transcript

Regarding Motion to Allow Customer Claim of Aaron Blecker, 28:22 -30:4 (Feb. 24, 2016).

81.     During the February 24, 2016 hearing, this Court also granted counsel for Mr.

Blecker leave to file a Motion for an Order Authorizing the Deposition of Bernard L. Madoff

("Motion to Depose Madoff") and raised the possibility that the Trustee may also want to depose

former BLMIS employees with knowledge of the Profit Withdrawal Transactions.  As a result,

on March 9, 2016, counsel for Mr. Blecker filed the Motion to Depose Madoff.  (ECF Nos.

12799, 12800).  The Trustee opposed the Motion to Depose Madoff on the grounds that his

testimony would be unreliable and that counsel for the customers was likely to use the deposition

as an opportunity to seek information related to other pending litigation.  The Trustee requested

that the motion be denied or in the alternative, that all questions be limited to the Profit

Withdrawal Issue.[13]  (ECF No. 12892).  A hearing was held on the Motion to Depose Madoff on

March 23, 2016, and this Court granted the Motion to Depose Madoff with the requested

limitations including that the deposition transcript remain sealed pending review by all interested

parties and redaction if necessary.  *See* Transcript of Hearing Regarding Motion to take

Deposition of Bernard L. Madoff, 85:14-22 (Mar. 23, 2016); *see also* Order Authorizing the

Deposition of Bernard L. Madoff With Certain Limitations, (ECF No. 13060).

82.     To allow time for the depositions of Mr. Madoff and former BLMIS employees

before the end of discovery, the Trustee filed a Motion for an Order Amending Schedule of

Litigation of Profit Withdrawal Issue on March 14, 2016.  Through that motion, the Trustee

requested a 90 day extension of all remaining deadlines, including the close of discovery.  (ECF

---

[13] The Trustee was joined by the Capital Growth Company, Decisions Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower (the "Picower Parties") in opposing the Motion for an Order Authorizing the Deposition of Bernard L. Madoff on the grounds that Ms. Chaitman planned to use the deposition to question Mr. Madoff on information related to the late Jeffry Picower.  *See* (ECF No. 12893).

29

No. 12865).  Arguments were heard by this Court on April 5, 2016, at which time the Motion to Amend the Scheduling Order was approved.  *See* Hearing Transcript Regarding Trustee's Motion to Extend Discovery Deadline in Profit Withdrawal Proceeding, 14:25-15:1 (Apr. 5, 2016).

83.    Prior to close of fact discovery, counsel for the Trustee deposed several former BLMIS employees regarding their work with profit withdrawal transactions at BLMIS.  These former employees provided testimony as to their knowledge of the treatment and management of Profit Withdrawal Transactions at BLMIS.  On May 11 and 13, 2016, counsel for the Trustee also deposed Participating Claimants Drs. Norman and Joel Blum, respectively (the "Blums").  Counsel for Participating Claimant Aaron Blecker deposed Mr. Madoff on June 15, 2016, and counsel for the Trustee attended for purposes of cross-examination.

84.    On July 12, 2016, this Court entered the Stipulation and Order on Schedule for Litigation of and Evidentiary Hearing on Profit Withdrawal Issue (ECF No. 13619), as agreed to by the parties, and modifying the April 5, 2016 amended scheduling order.  The July 12, 2016 order set forth deadlines for supplemental briefing, exchanged proposed trial exhibits, and motions *in limine*.  Pursuant to the updated scheduling order, the Trustee filed his Supplemental Memorandum of Law In Support of Trustee's Motion Affirming Treatment of Profit Withdrawal Transactions (ECF No. 13876) and SIPC filed its Supplemental Memorandum In Support Of the Trustee's Motion (ECF No. 13872) on August 12, 2016.  Participating Claimants subsequently filed two opposition briefs on September 23, 2016 (ECF Nos. 14161 and 14168).  On September 30, 2016, the Trustee and Participating Claimants exchanged proposed trial exhibits, designated deposition testimony, and disclosed draft witness lists.

30

85.    The Trustee and the Participating Claimants each filed motions *in limine* on October 28, 2016.  The Trustee filed four such motions *in limine* seeking exclusion of the Blums' late-disclosed expert—Thomas S. Respess, III, (ECF No. 14384); inadmissible hearsay testimony by the Blums, (ECF No. 14355); the exclusion of Mr. Blecker's prior deposition testimony, (ECF No. 14356); and to exclude the Trustee as a witness, (ECF No. 14357).  Counsel for the Blums filed a single motion *in limine* seeking the exclusion of certain purported hearsay statements regarding Profit Withdrawals, account documents unrelated to the Blums, and to limit the expert testimony of Matthew Greenblatt and Lisa Collura.  (ECF No. 14362).  Counsel for Mr. Blecker both joined the Blums' motion and further sought the complete exclusion of Mr. Greenblatt and Ms. Collura's testimony.  (ECF Nos. 14363, 14365).

86.    The Trustee's motion to strike the Blums' expert witness was withdrawn on November 17, 2016 after counsel for the Trustee and the Blums entered the Stipulation between the Trustee and Norman and Joel Blum with Respect to Impact of Profit Withdrawal Transactions, eliminating the need for Mr. Respess' proposed testimony.  (ECF No. 14444).  Because the motions filed by the Blums and Mr. Blecker sought the same results and contained overlapping arguments, the Trustee filed a combined motion in opposition to the motions *in limine*.  (ECF No. 14485, Nov. 18, 2016).  Also on November 18, 2016, the Blums and Mr. Blecker filed opposition briefs to the Trustee's motion to strike inadmissible hearsay testimony by the Blums, (ECF No. 14484).  Mr. Blecker filed an opposition to the motion to exclude the Trustee as witness, (ECF No. 14476).  This Court heard oral argument on April 18, 2017.

87.    This Court issued its Memorandum Decision Regarding Motions In Limine on June 15, 2017 (ECF No. 16180), ruling on two of the motions *in limine* argued on April 18, 2017: the Trustee's motion to exclude the Trustee as witness (ECF No. 14357), and the Trustee's

31

motion to exclude testimony by Joel and Norman Blum as inadmissible hearsay (ECF No. 14355). In its decision, the Court granted the motion excluding the Trustee as a witness, and deferred until the evidentiary hearing, the motion seeking to exclude the Blums' testimony.

88.    In granting the Trustee's motion, this Court found that the Trustee's testimony would "at best" be duplicative of his experts' testimony regarding the evidence supporting his treatment of PW transactions as debits, and that the Participating Claimants had failed to "point[] to any facts to overcome the finding of the Trustee's disinterestedness or the good faith performance of his duties." Without such a showing, the Participating Claimants' "line of inquiry is immaterial" and would only serve to "unnecessarily prolong the trial and harass the Trustee."

89.    The Court deferred judgment on the Trustee's motion to exclude the Blums' testimony. The question of the Blums' testimony was resolved shortly thereafter by a settlement reached between the Blums and the Trustee following the oral arguments on the motions *in limine*.

90.    The Court approved the settlement and on October 13, 2017, entered the Stipulation and Order as to Withdrawal of Norman, Joel, and Kerry Blum from the Profit Withdrawal Transactions Litigation (ECF No. 16767) and the Stipulation and Order for Voluntary Dismissal of the Trustee's Adversary Proceeding pending against Norman J. Blum (ECF No. 16766). In addition, Norman, Joel and Kerry Blum withdrew their objections to the Trustee's determination of their customer claims (ECF Nos. 16760, 16761).

91.    Following a November 9, 2017 pre-trial conference before this Court, the Profit Withdrawal evidentiary hearing went forward on January 19, 2018. Prior to the hearing, the parties agreed to try Mr. Blecker's objection to the Trustee's determination of his customer

claims together with the omnibus issue regarding the appropriate treatment of the PW Transactions.

92.    During the hearing, this Court heard testimony from Aaron Blecker's son, Robert Blecker, regarding his father's review of his BLMIS account statements and general investment strategy.    The Court also heard testimony from the Trustee's expert witnesses, Matthew Greenblatt and Lisa Collura, regarding the reconstruction of the BLMIS books and records and the support therein for the Trustee's determination that "PW" transactions should be treated as debits to the customer accounts.    Judgment was reserved pending post-hearing submissions.

93.    On January 31, 2018, the parties filed a joint submission on evidence, stipulating to the admission of certain exhibits and identifying objections to others for the Court's ruling. ECF No. 17207.    Thereafter, counsel for the Trustee submitted his Proposed Findings of Fact and Conclusions of Law to the Court on March 7, 2018.    Counsel for Mr. Blecker submitted his Proposed Findings of Fact and Conclusions of Law to the Court on March 22, 2018.    On July 27, 2018, this Court issued its Memorandum Decision and Order Regarding Treatment of Profit Withdrawal Transactions, upholding the Trustee's treatment of "PW" Transactions as debits to the customer's account and affirming the Trustee's determination of Mr. Blecker's customer claims.    (ECF No. 17869).

94.    After consideration and review of the employee deposition testimony and the BLMIS books and records, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction.    As such, because Mr. Blecker failed to provide any credible, contrary evidence that

the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims.

95.     In accordance with the PW Decision, the Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018.  (ECF No. 17878).

96.     On August 10, 2018, Mr. Blecker, on behalf of himself and certain other participating claimants ("PW Appellants") appealed the PW Decision and Order Affirming the Trustee's Determination of Mr. Blecker's customer claims.   (ECF No. 17884).   The PW Appellants filed their designation of the issues on appeal as well as their designation of the record on appeal on August 24, 2018.  (ECF Nos. 17921 and 17922).  The Trustee filed his counter-designation of additional items to be included in the record on appeal on September 7, 2018.  (ECF No. 17956).

97.     While preparing the Trustee's designation of additional items to be included in the record on appeal, counsel for the Trustee identified certain errors and omissions in the Appellants' designation of the record on appeal.  As a result, the parties filed the Joint Notice Correcting Record on Appeal in Profit Withdrawal Matter correcting the record on appeal in the profit withdrawal matter.  (ECF No. 18022).

98.     The parties are currently briefing the appeal, with the Appellants' opening brief due on November 2, 2018 and the Trustee's and SIPC's briefs due on December 14, 2018.  The Appellants' reply brief is due on January 18, 2019, after which oral argument will be set.

## VII.    RECOVERIES AND CONTINGENCIES

### A.    Recoveries Accomplished During Prior Report Periods

99.     In the Sixth through Nineteenth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods.  Prior to this

Report Period, the Trustee had recovered or reached agreements to recover approximately $12.9 billion for the benefit of BLMIS customers. *See* Trustee's Sixth Interim Report ¶¶ 52–63 (ECF No. 4529); Trustee's Seventh Interim Report ¶¶ 56–62 (ECF No. 4793); Trustee's Eighth Interim Report ¶¶ 57–61 (ECF No. 5066); Trustee's Ninth Interim Report ¶¶ 59 – 61 (ECF No. 5351); Trustee's Tenth Interim Report ¶¶ 61-62 (ECF No. 5554); Trustee's Eleventh Interim Report ¶¶ 61-62 (ECF No. 6466); Trustee's Twelfth Interim Report ¶¶ 63-64 (ECF No. 8276); Trustee's Thirteenth Interim Report ¶¶ 72-76 (ECF No. 9895); Trustee's Fourteenth Interim Report ¶¶ 73-76 (ECF No. 11912); Trustee's Fifteenth Interim Report ¶¶ 79-80 (ECF No. 13184); Trustee's Sixteenth Interim Report ¶¶ 84-85 (ECF No. 14347); Trustee's Seventeenth Interim Report ¶¶ 85-86 (ECF No. 15922); Trustee's Eighteenth Interim Report ¶¶94-98 (ECF No. 16862) and Trustee's Nineteenth Interim Report ¶¶ 95-97 (ECF No. 17555).

## B.    **Recoveries Accomplished During This Report Period**

100.    During the Report Period, the Trustee settled 20 cases.  Additionally, the Trustee received settlement recoveries totaling $122,175,310.55.  As of the Report Period, the Trustee has successfully recovered or reached agreements to recover over $13.020 billion.[14]

101.    On July 3, 2018 this Court approved a settlement between the Trustee and Ascot Partners, L.P., Ascot Fund Limited, J. Ezra Merkin and Gabriel Capital Corporation. *Picard v. J. Ezra Metkin, et al.*, Adv. Pro. No. 09-01182 (ECF No. 454).  Under the settlement, the Trustee recovered approximately $280 million for the BLMIS Customer Fund.

---

[14] On July 3, 2018, the United States Bankruptcy Court for the Southern District of New York approved a recovery agreement with Ascot Partners, Ascot Fund, J. Ezra Merkin, and Gabriel Capital Corporation. The $281 million payment (including interest) associated with this settlement was released from escrow and added to the Customer Fund on October 19, 2018. This $281 million recovery, when combined with recoveries of $13,020,056,723.46 through September 30, 2018, brings the total recoveries to date to $13,301,429,453.65.

C.    **Earlier Settlements**

102.    In the Eighteenth Interim Report, the Trustee reported on the settlements with the

Madoff family (¶ 95, ECF No. 16429), Lagoon funds (¶ 96, ECF No. 16430), Thema funds (¶

97, ECF No. 16431), and Thema International (¶ 98, ECF No. 482).   In the Nineteenth Interim

Report, the Trustee reported on settlements with Thema International Fund plc (¶ 96, ECF No.

482) and Alpha Prime Fund Ltd. (¶ 97, ECF No. 17418). Through the end of the Report Period,

the Trustee recovered $536,092,384.27 as a result of other settlements that were made pursuant

to agreements subject to the Net Equity Dispute.

## VIII.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

A.    **The Customer Fund**

103.    In order to protect customers of an insolvent broker-dealer such as BLMIS,

Congress established a statutory framework pursuant to which customers of a debtor in a SIPA

liquidation are entitled to preferential treatment in the distribution of assets from the debtor's

estate.   The mechanism by which customers receive preferred treatment is through the creation

of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general

estate.   Customers holding allowable claims are entitled to share in the Customer Fund based on

each customer's net equity as of the filing date, to the exclusion of general creditors.   SIPA

§ 78fff-2(c).

104.    In order to make interim distributions from the Customer Fund, the Trustee must

determine or be able to sufficiently estimate: (a) the total value of customer property available

for distribution (including reserves for disputed recoveries), and (b) the total net equity of all

allowed claims (including reserves for disputed claims).   Each element of the equation—the

customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

105.    There are many unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves.  Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

**B.    The Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing the First Interim Distribution to Customers**

106.    On May 4, 2011, the Trustee moved for an initial allocation and pro rata interim distribution of the Customer Fund to customers whose claims had not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "First Allocation" and "First Interim Distribution").  (ECF No. 4048).  This motion was unopposed, and the Court entered the Order Approving the Trustee's Initial Allocation of Property to the Fund of Customer Property and Authorizing an Interim Distribution to Customers on July 12, 2011.  (ECF No. 4217).

107.    On October 5, 2011, the Trustee distributed $311.854 million, or 4.602% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to October 5, 2011, an additional $491.267 million was distributed as catch-up payments, bringing the total First Interim Distribution amount to $803.121 million through the end of the Report Period.  The First Interim Distribution was made to 1,364 BLMIS accounts, of which 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

108.    The First Allocation and First Interim Distribution were initial and interim in nature because the Trustee anticipated recovering additional assets through litigation and settlements, and resolving the issues on appeal that require reserves.

**C.    The Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing the Second Interim Distribution to Customers**

109.    During the year after the Trustee made the First Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, as well as the resolution of issues on appeal that required reserves.

110.    In particular, the Supreme Court resolved the Net Equity Dispute on June 25, 2012, and the Trustee received the Picower settlement funds after the final order of forfeiture became final and non-appealable on July 16, 2012.

111.    Thus, the Trustee was prepared to make a second significant distribution to BLMIS customers in an amount as great as $3.019 billion, or 41.826% of each customer's allowed claim, unless the claim had been fully satisfied.  However, in order to maintain adequate reserves for the Time-Based Damages Issue, the Trustee was unable to distribute the entire $3.019 billion.

112.    On July 26, 2012, the Trustee filed a motion seeking entry of an order approving the second allocation of property to the Customer Fund and authorizing the second interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Second Allocation" and "Second Interim Distribution").  (ECF No. 4930).

113.    In connection with the Second Interim Distribution, the Trustee proposed holding in reserve an amount sufficient for the Trustee to pay Time-Based Damages assuming an interest rate of three percent (the "3% Reserve") or, in the alternative, nine percent (the "9% Reserve").

38

Four objections were made to the Trustee's motion, seeking the imposition of the 9% Reserve. (ECF Nos. 4965, 4966, 4971, 4976).

114.    On August 22, 2012, this Court held a hearing and entered an Order Approving the Trustee's Second Allocation of Property to the Fund of Customer Property and Authorizing a Second Interim Distribution to Customers, with a 3% Reserve.  (ECF No. 4997).

115.    Thus, on September 19, 2012, the Trustee distributed $2.479 billion, or 33.556% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to September 19, 2012, an additional $3.358 billion was distributed as catch-up payments, bringing the total Second Interim Distribution amount to $5.838 billion through the end of the Report Period.  The Second Interim Distribution was made to 1,351 BLMIS accounts, of which 39 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**D.    The Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing the Third Interim Distribution to Customers**

116.    During the months after the Second Interim Distribution, the Trustee recovered significant additional assets thorough litigation and settlements, particularly the Tremont settlement.  See discussion *infra* Section IX(E).

117.    On February 13, 2013, the Trustee filed a motion seeking entry of an order approving the third allocation of property to the Customer Fund and authorizing the third interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Third Allocation" and "Third Interim Distribution").  (ECF No. 5230).

118.    In connection with the Third Interim Distribution, the Trustee proposed holding reserves in connection with the Levy settlement appeal, the Internal Revenue Service (the "IRS") settlement and net loser accounts currently in litigation.  *Id.*

119.    On March 13, 2013, this Court held a hearing and entered an Order Approving the Trustee's Third Allocation of Property to the Fund of Customer Property and Authorizing a Third Interim Distribution to Customers.  (ECF No. 5271).

120.    Thus, on March 29, 2013, the Trustee distributed $506.227 million, or 4.721% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to March 29, 2013, an additional $310.928 million was distributed as catch-up payments, bringing the total Third Interim Distribution amount to $817.156 million through the end of the Report Period.  The Third Interim Distribution was made to 1,161 BLMIS accounts, of which 26 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**E.    The Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing the Fourth Interim Distribution to Customers**

121.    During the year after the Trustee made the Third Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly the JPMorgan settlement.

122.    On March 25, 2014, the Trustee filed a motion seeking entry of an order approving the fourth allocation of property to the Customer Fund and authorizing the fourth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fourth Allocation" and "Fourth Interim Distribution").  (ECF No. 6024).

123.    In connection with the Fourth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

124.    On April 18, 2014, this Court entered an Order Approving the Trustee's Fourth Allocation of Property to the Fund of Customer Property and Authorizing a Fourth Interim Distribution to Customers.  (ECF No. 6340).

125.    Thus, on May 5, 2014, the Trustee distributed $351.632 million, or 3.180% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to May 5, 2014, an additional $198.008 million was distributed as catch-up payments, bringing the total Fourth Interim Distribution amount to $549.640 million through the end of the Report Period.  The Fourth Interim Distribution was made to 1,128 BLMIS accounts, of which 25 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

F.    **The Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing the Fifth Interim Distribution to Customers**

126.    During the months after the Trustee made the Fourth Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Blumenfeld defendants (*Picard v. Edward Blumenfeld, et al.,* Adv. Pro. No. 10-04730 (SMB) (Bankr. S.D.N.Y.) (ECF No. 45)), Herald Fund SPC and Primeo Fund (*Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y.) (ECF No. 349)), and Senator Fund SPC (*Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (SMB) (Bankr. S.D.N.Y.) (ECF No. 350)).

127.    On December 22, 2014, the Trustee filed a motion seeking entry of an order approving the fifth allocation of property to the Customer Fund and authorizing the fifth interim

distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Fifth Allocation" and "Fifth Interim Distribution").  (ECF No. 8860).

128.    In connection with the Fifth Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

129.    On January 15, 2015, this Court entered an Order Approving the Trustee's Fifth Allocation of Property to the Fund of Customer Property and Authorizing a Fifth Interim Distribution to Customers.  (ECF No. 9014).

130.    On February 6, 2015, the Trustee distributed $355.761 million, or 2.743% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to February 6, 2015, an additional $117.876 million was distributed as catch-up payments, bringing the total Fifth Interim Distribution amount to $473.637 million through the end of the Report Period.  The Fifth Interim Distribution was made to 1,107 BLMIS accounts, of which 23 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

**G.    The Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing the Sixth Interim Distribution to Customers**

131.    In its order approving the Second Allocation Motion (ECF No. 4997), the Court required the Trustee to maintain the 3% Reserve for the Time-Based Damages Dispute.  Under the terms of Judge Lifland's order requiring the 3% Reserve, the Trustee set a Time-Based Damages reserve and allocated such reserve to the Customer Fund as part of the total amount allocated to the Customer Fund in the Second through Fifth Allocations and Interim Distributions.

132.    On April 15, 2015, the Trustee filed a motion seeking entry of an order approving the sixth allocation of property to the Customer Fund and authorizing the sixth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Sixth Allocation" and "Sixth Interim Distribution").  (ECF No. 9807).  In the Sixth Allocation and Sixth Interim Distribution Motion, the Trustee sought approval to release the bulk of the Time-Based Damages reserve and distribute such funds under the terms set forth therein.  These funds became available for distribution following the decision of the Second Circuit on the "time-based damages" issue.  *In Re Bernard L. Madoff Inv. Sec. LLC,* 779 F.3d 74 (2d Cir. Feb. 20, 2015) (the "Time-Based Damages Decision").

133.    The Trustee could not distribute these funds until the time limit to file a petition for certiorari with the Supreme Court expired with no petition being filed or a final, non-appealable order was entered on the Time-Based Damages Decision.

134.    At the time the Trustee filed the Sixth Allocation Motion, no petitions for certiorari had been filed on the Time-Based Damages Decision.  The time period to file a petition for certiorari was due to expire on May 21, 2015.  The hearing date on the Sixth Allocation Motion was set for May 29, 2015, which would permit the hearing to go forward if no petitions for certiorari were filed by that date.  The Trustee indicated in the Sixth Allocation Motion that the hearing may not be able to go forward if a petition for certiorari was filed.

135.    A group of claimants represented by Helen Davis Chaitman, Esq. moved for an extension of time within which to file a petition for certiorari with the Supreme Court.  The Supreme Court granted that request on April 28, 2015, extending the time to file a petition for

certiorari to July 20, 2015. *Marsha Peshkin v. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,* No. 14A1099 (Oct. 5, 2015).

136.    Following the extension of time to file the petition for a writ of certiorari, the Trustee filed a notice of adjournment of the hearing on the Sixth Allocation Motion, adjourning the hearing from May 28, 2015 to July 29, 2015. The purpose of the adjournment was to allow the extended time period within which to file a petition for certiorari to expire. If no petition was filed, the Trustee would seek the Court's approval to allocate and distribute funds from the fund of customer property, as outlined in the Trustee's Sixth Allocation Motion.

137.    On July 20, 2015, the group of claimants represented by Helen Davis Chaitman filed a petition for a writ of certiorari with the Supreme Court. Accordingly, the hearing on the Trustee's Sixth Allocation Motion was adjourned *sine die*, pending the determination of the petition for a writ of certiorari by the Supreme Court.

138.    On October 5, 2015, the Supreme Court denied the petition for certiorari, paving the way for the Trustee to request authorization from the Court to make a sixth distribution to customers of more than $1.18 billion—up to 8.186% of each customer's allowed claim amount. On October 20, 2015, the Trustee filed a Notice of Hearing and Supplemental Filing in Further Support of the Trustee's Motion for an Order Approving Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers (ECF No. 11834) and an Affidavit of Vineet Sehgal in support. (ECF No. 11835). On November 18, 2015, this Court entered an Order Approving the Trustee's Sixth Allocation of Property to the Fund of Customer Property and Authorizing a Sixth Interim Distribution to Customers. (ECF No. 12066).

139.    On December 4, 2015, the Trustee distributed $1.193 billion, or 8.262% of each

BLMIS customer's allowed claim, unless the claim had been fully satisfied.    Subsequent to

December 4, 2015, an additional $226.837 million was distributed as catch-up payments,

bringing the total Sixth Interim Distribution amount to $1.420 billion through the end of the

Report Period.    The Sixth Interim Distribution was made to 1,086 BLMIS accounts, of which 20

payments went to claimants who qualified for hardship status under the Trustee's Hardship

Program whose claims had not been fully satisfied previously.

**H.**    **The Trustee's Seventh Allocation of Property to the Fund of Customer Property
and Authorizing the Seventh Interim Distribution to Customers**

140.    During the months after the Trustee made the Sixth Interim Distribution, the

Trustee recovered significant additional assets through litigation and settlements, particularly

with the Thybo defendants (*Picard v. Thybo Asset Mgmt. Ltd.*, Adv. No. 09-01365 (SMB)

(Bankr. S.D.N.Y. Feb. 10, 2011) (ECF No. 96) and Vizcaya Partners Limited, Bank J. Safra

Sarasin (Gibraltar) Ltd., Bank J. Safra (Gibraltar) Ltd., Asphalia Fund, Ltd., Zeus Partners

Limited, Banque J. Safra Sarasin (Suisse) SA, Banque Jacob Safra (Suisse) SA, and Pictet et Cie

(*Picard v. Vizcaya Partners Limited, et al.,* Adv. Pro. No. 09-01154 (ECF No. 129); *Picard v.

Banque J. Safra (Suisse) SA,* Adv. Pro. No. 11-01725 (ECF No. 73); *Picard v. Pictet et Cie,* Adv.

Pro. No. 11-01724 (ECF No. 90)).

141.    On May 26, 2016, the Trustee filed a motion seeking entry of an order approving

the seventh allocation of property to the Customer Fund and authorizing the seventh interim

distribution to customers whose claims have not been fully satisfied because their net equity

claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000

(respectively, the "Seventh Allocation" and "Seventh Interim Distribution").    (ECF No. 13405).

142.    In connection with the Seventh Interim Distribution, the Trustee proposed holding reserves in connection with non-preference related settlement payments for accounts with net equity clauses, as well as certain other settlements.  *Id.*

143.    On June 15, 2016, this Court entered an Order Approving the Trustee's Seventh Allocation of Property to the Fund of Customer Property and Authorizing a Seventh Interim Distribution to Customers.  (ECF No. 13512).

144.    Thus, on June 30, 2016, the Trustee distributed $190.247 million, or 1.305% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to June 30, 2016, an additional $33.370 million was distributed as catch-up payments, bringing the total Seventh Interim Distribution amount to $223.618 million through the end of the Report Period.  The Seventh Interim Distribution was made to 980 BLMIS accounts, of which 15 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.

I.    **The Trustee's Eighth Allocation of Property to the Fund of Customer Property and Authorizing the Eighth Interim Distribution to Customers**

145.    During the months after the Trustee made the Seventh Interim Distribution, the Trustee recovered significant additional assets through litigation and settlements, particularly with the Estate of Stanley Chais, et al. (*Picard v. Estate of Chais, et. al.*, Adv. No. 09-01172 (SMB) (Bankr. S.D.N.Y.)), (ECF No. 157).

146.    On December 14, 2016, the Trustee filed a motion seeking entry of an order approving the eighth allocation of property to the Customer Fund and authorizing the eighth interim distribution to customers whose claims have not been fully satisfied because their net equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000 (respectively, the "Eighth Allocation" and "Eighth Interim Distribution").  (ECF No. 14462).

46

147.    On January 12, 2017, this Court entered an Order Approving the Trustee's Eighth

Allocation of Property to the Fund of Customer Property and Authorizing an Eighth Interim

Distribution to Customers.  (ECF No. 14836).

148.    Thus, on February 2, 2017, the Trustee distributed $251.590 million, or 1.729% of

each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to

February 2, 2017, an additional $44.192 million was distributed as catch-up payments, bringing

the total Eighth Interim Distribution amount to $295.782 million through the end of the Report

Period.    The Eighth Interim Distribution was made to 960 BLMIS accounts, of which 15

payments went to claimants who qualified for hardship status under the Trustee's Hardship

Program whose claims had not been fully satisfied previously.

## J.    The Trustee's Ninth Allocation of Property to the Fund of Customer Property and Authorizing the Ninth Interim Distribution to Customers

149.    During the months after the Trustee made the Eighth Interim Distribution, the

Trustee recovered significant additional assets through litigation and settlements, particularly

with Lagoon Investment Limited and Hermes International Fund Limited (*Picard v. HSBC Bank

plc, et al.*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y.) (ECF No. 459), Thema International

Fund plc (*Picard v. HSBC Bank plc, et al.*, Adv. Pro. No. 09-01364 (SMB) (ECF No. 478), and

the Madoff family (*Picard v. Andrew H. Madoff et al.*, Adv. Pro. No. 09-01503 (SMB) (Bankr.

S.D.N.Y.) (ECF No. 303).

150.    On December 18, 2017, the Trustee filed a motion seeking entry of an order

approving the ninth allocation of property to the Customer Fund and authorizing the ninth

interim distribution to customers whose claims have not been fully satisfied because their net

equity claims as of the Filing Date exceeded the statutory SIPA protection limit of $500,000

(respectively, the "Ninth Allocation" and "Ninth Interim Distribution").  (ECF No. 17033).

151.    On January 30, 2018, this Court entered an Order Approving the Trustee's Ninth Allocation of Property to the Fund of Customer Property and Authorizing a Ninth Interim Distribution to Customers.  (ECF No. 17195).

152.    Thus, on February 22, 2018, the Trustee distributed approximately $620.873 million, or 3.806% of each BLMIS customer's allowed claim, unless the claim had been fully satisfied.  Subsequent to February 22, 2018, an additional $28.160 million was distributed as catch-up payments, bringing the total Ninth Interim Distribution amount to $649.033 million through the end of the Report Period.  The Ninth Interim Distribution was made to 929 BLMIS accounts, of which 15 payments went to claimants who qualified for hardship status under the Trustee's Hardship Program whose claims had not been fully satisfied previously.  All allowed claims up to $1,385,000.00 were fully satisfied after the distribution. Upon completion of the Ninth Interim Distribution, 1,391 BLMIS accounts (related to 1,611 claims) were fully satisfied. The 1,391 fully satisfied accounts represent more than 61% of accounts with allowed claims.

## K.    **The General Estate**

153.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

154.    All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate.  The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## IX.    LITIGATION

155.    Other major developments have occurred during the Report Period in the Trustee's avoidance actions and bank/feeder fund litigations.  This Report does not discuss each

of them in detail but instead summarizes those matters with the most activity during the Report Period.

A.    **The District Court—Motions to Withdraw the Reference, Motions to Dismiss and Related Appeals**

156.    Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss.  A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings.  The District Court returned all proceedings to the Bankruptcy Court.

i.    **Proceedings Relating to Motions to Withdraw the Reference**

(a)    **The Administrative Order**

157.    On March 5, 2012, this Court entered the Administrative Order which stated: "[i]n the interest of administrative efficiency, this Court has been informed by Judge Rakoff, and hereby notifies all parties to the Adversary Proceedings, that the District Court will automatically regard untimely any motion to withdraw . . . if such motion is not filed on or before April 2, 2012." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 4707).

158.    On July 10, 2014, the District Court issued an order directing counsel to parties with individual issues not addressed by the Court's decisions in the consolidated withdrawals to inform the Court by letter by July 18, 2014.  *See In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. July 10, 2014), (ECF No. 552).  The District Court received several such letters and addressed the issues they raised in separate orders.  On August 4, 2014, the District Court deemed any remaining motions to withdraw the reference to be denied, referred all the adversary proceedings to be returned to the Bankruptcy Court, and directed the closure of all civil cases

seeking to withdraw the reference related to the Madoff matter.  *See In re Madoff Sec.,* No. 12

MC 00115 (JSR) (S.D.N.Y. Aug. 4, 2014), (ECF No. 557).

### (b)    Consolidated Briefing Orders

159.    In April 2012, the District Court instituted a protocol for then-pending motions to

withdraw, which consolidated briefing on common issues raised in the motions to withdraw (the

"Common Briefing").  The common issues included:

- whether the Supreme Court's decision in *Stern v. Marshall* (the "Stern Issue") precluded the Bankruptcy Court from entering final judgment on the Trustee's claims and therefore mandated withdrawal of the reference to Bankruptcy Court. 131 S. Ct. 2594 (2011); *see* Order, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12 MC 0115 (JSR) (S.D.N.Y. Apr. 13, 2012), (ECF No. 4);

- whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense of antecedent debt (the "Antecedent Debt Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 107);

- whether standing issues (the "Standing Issue") bar the Trustee's common law claims against certain defendants by virtue of the doctrine of *in pari delicto* and/or the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as well as whether the Trustee is entitled to accept assignments or assert the "insider exception" to *in pari delicto*.  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 114);

- whether § 546(e) of the Bankruptcy Code precludes the Trustee's claims against certain defendants against whom the Trustee has alleged knew or should have known that Madoff was running a Ponzi scheme (the "Bad Faith § 546(e) Issue"). *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 119);

- whether the Trustee is entitled to employ § 502(d) of the Bankruptcy Code against defendants accused of receiving avoidable transfers (the "§ 502(d) Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 1, 2012), (ECF No. 155);

- whether the Supreme Court's ruling in *Morrison v. National Australia Bank Ltd.*, as applied to SIPA or the Bankruptcy Code, bars the Trustee's claims against certain defendants (the "Extraterritoriality Issue").  130 S. Ct. 2869 (2010); *see* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); and

- whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code (the "Good Faith

Standard Issue").  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), (ECF No. 197).

160.    The Stern Issue was raised by hundreds of defendants.  Judge Rakoff heard oral argument on June 18, 2012 and issued a decision on January 4, 2013 (the "Stern Opinion and Order"), ruling that the Bankruptcy Court may finally decide avoidance actions where defendants filed customer claims, which would necessarily be resolved by those avoidance actions, because the two are inextricably intertwined.  Opinion and Order (ECF No. 427), 460 B.R. 46 (Bankr. S.D.N.Y. 2013).  In the Stern Opinion and Order, Judge Rakoff found that even where the Bankruptcy Court may not issue a final determination under *Stern*, it may still hear the matter in the first instance and issue a report and recommendation, and referred the Trustee's cases back to the Bankruptcy Court subject to the other pending rulings.  *Id.*

161.    The Antecedent Debt Issue was also raised by hundreds of defendants, who filed their motion on June 25, 2012.  (ECF No. 196).  Judge Rakoff heard oral argument on August 25, 2012.  Judge Rakoff issued a decision on October 15, 2013 (the "Antecedent Debt Opinion and Order"), rejecting claims that BLMIS's account statements constituted binding, enforceable obligations of BLMIS to its customers, as the amounts reported thereon were not "antecedent debts" that BLMIS owed to its customers, but were instead "invalid and thus entirely unenforceable."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 476 B.R. 715, 421 n. 4 (S.D.N.Y. 2013).  The District Court concluded that "it would significantly undo the SIPA scheme to allow customers to recast amounts received as something other than what they were - fictitious profits - and treat them as a claim for antecedent debts beyond the customer's net equity."  *Id.* At 425.  Therefore, under SIPA, "a customer may only seek the protections of section 548(c) to the extent of investments of principal, and federal and state law claims cannot

be used to increase the amount to which a customer is entitled from the customer property estate." *Id.* at 426.s

162.    The Standing Issue was raised by various defendants, who filed two sets of moving papers on August 3, 2012.  (ECF Nos. 269, 270, 271).  Judge Rakoff heard oral argument on October 15, 2012 and issued a decision on December 5, 2013 (the "Standing Opinion and Order"), finding that the Trustee "has standing to bring claims on behalf of Madoff Securities' customers to the extent, but only to the extent, that the customers validly assigned their claims to the Trustee.  However, the Court also finds that the Trustee's pursuit of these assigned claims, to the extent that he brings the claims of more than fifty assignors, constitutes a covered class action for purposes of SLUSA."  Opinion and Order (ECF No. 509), 987 F. Supp.2d 309 (S.D.N.Y. 2013).

163.    The Bad Faith § 546(e) Issue was raised by various defendants, who filed two sets of moving papers on July 27, 2012.  (ECF Nos. 259–261).  Judge Rakoff heard oral argument on November 26, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that under certain circumstances, the Trustee's complaints should not be dismissed at the pleading stage solely on the basis of defendants' invocation of § 546(e) of the Bankruptcy Code.  (ECF No. 439).  On April 15, 2013, Judge Rakoff issued a decision (the "Bad Faith § 546(e) Opinion and Order"), setting forth the basis for his ruling, and indicated that the Trustee's claims are not precluded under § 546(e) of the Bankruptcy Code in cases where the Trustee "sufficiently alleges that the transferee from whom [the Trustee] seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." Opinion and Order (ECF No. 460), 491 B.R. 27 (S.D.N.Y. 2013).

164.    Various defendants raised the § 502(d) Issue and joined in moving papers filed on July 13, 2012.  (ECF Nos. 231–33).  Judge Rakoff heard oral argument on October 9, 2012 and issued a "bottom line" ruling on February 12, 2013, indicating that the Trustee may invoke section 502(d) of the Bankruptcy Code.  (ECF No. 439).  Judge Rakoff issued a decision on June 30, 2014 (the "§ 502(d) Opinion and Order"), explaining the reasons for that decision and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 549), 513 B.R. 437 (S.D.N.Y. 2014).

165.    The Extraterritoriality Issue was joined by various defendants, who filed moving papers on July 3, 2012.  (ECF Nos. 234-36).  Judge Rakoff held oral argument on September 21, 2012.  On July 6, 2014, Judge Rakoff issued a decision (the "Extraterritoriality Opinion and Order") indicating that certain of the Trustee's claims were barred under *Morrison*, and stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court.  Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

166.    The Good Faith Standard Issue was raised by various defendants, who filed two main sets of moving papers on July 20, 2012.  (ECF Nos. 242, 243).  Judge Rakoff heard oral argument on October 12, 2012 and issued a decision on April 27, 2014 (the "Good Faith Standard Opinion and Order"), ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), 'good faith' means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud."  With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a

defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly

allege that that defendant did not act in good faith."  Opinion and Order (ECF No. 524), 516 B.R.

18 (S.D.N.Y. 2014).

### (c)    The 546(e) Appeal

167.    On April 27, 2012 the District Court entered an order dismissing certain claims in

78 adversary proceedings.  *See Picard v. Greiff*, Adv. No. 11-03775 (BRL) (Bankr. S.D.N.Y.);

*Picard v. Blumenthal*, Adv. No. 11-04293 (BRL) (Bankr. S.D.N.Y.); *Picard v. Goldman*, Adv.

No. 11-04959 (BRL) (Bankr. S.D.N.Y.); and *Picard v. Hein*, Adv. No. 11-04936 (BRL) (Bankr.

S.D.N.Y.).  *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. April 30, 2012), (ECF No. 57).  These

claims included preferences under § 547 of the Bankruptcy Code, constructive fraudulent

transfers under § 548(a)(l)(B) of the Bankruptcy Code, and actual and constructive fraudulent

transfers or fraudulent conveyances under provisions of the New York Debtor & Creditor Law

incorporated by § 544(b) of the Bankruptcy Code (the "Dismissed Claims").  The Dismissed

Claims did not include those claims proceeding under § 548(a)(l)(A) and § 550(a) of the

Bankruptcy Code.

168.    On April 30, 2012, the District Court entered an Opinion and Order explaining the

reasons for its decision.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476

B.R. 715 (Bankr. S.D.N.Y. 2012).  On May 15, 2012, the District Court entered a Supplemental

Opinion and Order to make explicit that § 546(e) of the Bankruptcy Code applies to the Trustee's

claims for avoidance and recovery of preferential transfers under § 547 of the Bankruptcy Code.

*See* Supplemental Opinion and Order, No. 12 MC 0115 (JSR) (ECF No. 101).

169.    On June 21, 2012, the Trustee and SIPC each filed notices of appeal in the Second

Circuit from these orders.

170.    The Second Circuit held argument on March 5, 2014.  On December 8, 2014, the Second Circuit affirmed the District Court's decision finding that section 546(e) of the Bankruptcy Code bars the Dismissed Claims.  (*Picard v. Ida Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Dec. 8, 2014) (ECF Nos. 355, 346, 415, 357, 372, 315, and 320, respectively).

171.    On March 17, 2015, the Trustee and SIPC filed separate petitions for a writ of certiorari with the Supreme Court seeking to reverse the Second Circuit's December 8, 2014 opinion.

172.    On June 22, 2015, the U.S. Supreme Court denied the two petitions for certiorari filed by the Trustee and SIPC.  (*Picard v. Ida Fishman Revocable Trust, et al.,* Case No. 14-1129 (U.S. Jun. 22, 2015); (*Picard v. Ida Fishman Revocable Trust, et al.,* Case Nos. 12-2497, 12-2500, 12-2557, 12-2616, 12-3422, 12-3440, 12-3582 and 12-3585 (2d. Cir., Jun. 22, 2015) (ECF Nos. 370, 361, 430, 372, 387, 330 and 335, respectively).

**B.**    **Litigation in the Bankruptcy Court and Related Appeals**

     **i.**    **Resolution of Good Faith Avoidance Actions**

173.    At the beginning of the Report Period, there were 182 active good faith avoidance actions. 21 were closed during the Report Period, leaving a total of 161 open good faith avoidance actions by the end of the Report Period.  In certain avoidance actions, the Trustee entered into mediations, considered hardship applications and, where appropriate, agreed to dismiss certain defendants from the actions.  During the Report Period, 1 action was dismissed for inability to serve, 1 action was dismissed because the defendant is deceased,  4 actions were dismissed for unlikely recovery, and 1 action was dismissed due to judgment secured by the Trustee. In addition, the Trustee's professionals engaged in settlement negotiations, which led to 14 cases entering into documented settlements during the Report Period.

ii.    **Summary Judgment Motions**

(a)    **South Ferry/Lowrey Motions**

174.    Prior to the Report Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson (the "South Ferry Defendants"), (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson (the "South Ferry #2 Defendants"), (3) Defendant United Congregations Mesora ("Mesora"), and (4) James Lowrey ("Lowrey"), setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* APN 10-04488, ECF No. 77; APN 10-04350, ECF No. 86; APN 10-05110, ECF No. 53; APN 10-04387, ECF No. 71.

175.    On July 21, 2017, the South Ferry Defendants, South Ferry #2 Defendants, and Mesora (collectively, the "SFM Defendants") filed a Joint Motion For Summary Judgment. On that same date, the Trustee filed his own Motion For Summary Judgment. *See* APN 10-04488, ECF Nos. 86-93; APN 10-04350, ECF Nos. 95-102; APN 10-05110, ECF Nos. 95-102.

176.    On August 11, 2017, Lowrey filed his Motion For Summary Judgment, and the Trustee simultaneously filed his own Motion For Summary Judgment in that action. *See* APN 10-04387, ECF No. 78-81, 83-84.

177.    On September 5, 2017, the SFM Defendants filed their opposition to the Trustee's Motion For Summary Judgment. The Trustee filed the same in response to the SFM Defendants' Motion For Summary Judgment. *See* APN 10-04488, ECF Nos. 96-97; APN 10-04350, ECF Nos. 105-106; APN 10-05110, ECF Nos. 70-71.

178.    On September 25, 2017, Lowrey filed his opposition to the Trustee's Motion For Summary Judgment. The Trustee filed the same in response to Lowrey's Motion For Summary Judgment. *See* APN 10-04387, ECF Nos. 86-87.

179.    On October 5, 2017, the SFM Defendants filed their reply brief in further support of their Motion for Summary Judgment.  The Trustee filed the same in further support of his Motion For Summary Judgment against the SFM Defendants.  *See* APN 10-04488, ECF Nos. 100, 103; APN 10-04350, ECF Nos. 109, 112; APN 10-05110, ECF Nos. 74, 77.

180.    On September 25, 2017, Lowrey filed his reply brief in further support of his Motion for Summary Judgment.  The Trustee filed the same in further support of his Motion For Summary Judgment against the Lowrey Defendants.  *See* APN 10-04387, ECF Nos. 91-92.

181.    On December 6, 2017, oral arguments were held on the motions for summary judgment.  On December 20, 2017, the Trustee and counsel for the South Ferry/Lowrey Actions each submitted a five-page letter brief addressing questions raised by the Bankruptcy Court on issues relating to the SIPA broker-dealer and customer property.  *See* APN 10-04488, ECF Nos.110-112; APN 10-04350, ECF Nos. 116-118; APN 10-05110, ECF Nos. 81-83; APN 10-04387, ECF Nos. 96-98.

182.    On January 17, 2018 and February 23, 2018, counsel for South Ferry/Lowrey Actions filed letters notifying the Bankruptcy Court of supplementary authority that they asserted in support of their motions for summary judgment.  On January 25, 2018 and March 5, 2018, the Trustee filed his response to each letter.  *See* APN 10-04488, ECF Nos.114-115, 117-118; APN 10-04350, ECF Nos. 120-21, 123-124; APN 10-05110, ECF Nos. 85-86, 88-89; APN 10-04387, ECF Nos. 100-101, 103-104.

183.    On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment.  *See In re Bernard L. Madoff [Good*

*Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

184.    On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation.  *See* APN 10-04387, ECF No. 116.  On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033 Objections.  APN 10-04387, ECF No. 119.  As of June 14, 2018, the case was assigned to District Court Judge Paul Engelmayer for his review and approval.

185.    On June 18, 2018, counsel for the South Ferry/Lowrey Actions filed a Joint Motion for Leave to File a Reply to The Trustee's Response to Rule 9033 Objections.  *See* No. 18-cv-05381, ECF No. 5.  On June 29, 2018, the Trustee filed his opposition brief to the Joint Motion for Leave to File a Reply to the Trustee's Response to Rule 9033 Objections.  *See* No. 18-cv-05381, ECF No. 6.  On July 6, 2018, Defendants filed their Joint Reply Brief in further support of their Joint Motion for Leave to File a Reply Brief.  *See* No. 18-cv-05381, ECF No. 10. Defendants then filed a letter seeking oral arguments on their Rule 9033 Objections on July 9, 2018, which the District Court granted on July 10, 2018.  *See* No. 18-cv-05381, ECF No. 11. Oral arguments were held on August 28, 2018, and no ruling has yet been issued.

### (b)    Goldenberg Motion

186.    Prior to the Report Period, the Trustee entered into a stipulation with Defendant Stephen R. Goldenberg setting a schedule for summary judgment motion practice.  *See* APN 10-04946, ECF No. 57.

187.    On October 16, 2017, the Trustee filed his Motion For Summary Judgment.  *See* APN 10-04946, ECF Nos. 60-63.  On November 16, 2017, Defendant Stephen R. Goldenberg filed his opposition brief to the Trustee's Motion For Summary Judgment.  *See* APN 10-04946,

ECF No. 65.  On December 18, 2017, the Trustee filed his reply brief in further support of his Motion For Summary Judgment.  *See* APN 10-04946, ECF Nos. 69-71.

188.    On February 16, 2018, the oral argument on the Trustee's Motion For Summary Judgment in the Goldenberg adversary proceeding was adjourned *sine die* pending the issuance of the Bankruptcy Court's Report and Recommendations in the South Ferry/Lowrey proceedings.  APN 10-04946, ECF No. 74.

189.    On June 20, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court, granting the Trustee's Motion for Summary Judgment and Enter Money Judgment in Favor of the Trustee.  *See* APN 10-04946, ECF No. 76.  On August 10, 2018, a Stipulation and Order for Voluntary Dismissal was filed given that the Trustee and Defendant Stephen R. Goldenberg entered into a settlement agreement as of July 30, 2018.  *See* APN 10-04946, ECF No. 84.

### (c)    Saren-Lawrence/Nelson Motions

190.    On July 7, 2017, counsel for Defendants in three actions, namely *Picard v. Saren Lawrence,* APN. 10-04898, *Picard v. Carol Nelson, et al.,* APN 10-04377, and *Picard v. Carol Nelson,* APN 10-04658, moved to withdraw the reference to the Bankruptcy Court (the "Motions to Withdraw") on their asserted right to a jury trial before the District Court.  *See* No. 17-cv-05157, ECF No. 1. On November 1, 2017, the Trustee filed his opposition brief to the Defendants' Motions to Withdraw.  *See* No. 17-cv-05157, ECF No. 16. On Dec 6, 2017, Defendants filed their reply brief in further support of their Motions to Withdraw.  *See* No. 17-cv-05157, ECF No.17.  On May 15, 2018, District Court Judge George B. Daniels issued his Memorandum Decision and Order denying the Motions to Withdraw.

191.    On May 29, 2018, the defendants filed their Motion For Reconsideration And Alternatively, to Certify An Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), of Judge

Daniels' Memorandum Decision and Order denying the Motions to Withdraw. *See* No. 17-cv-05157, ECF Nos. 20-21 (the "Motion for Reconsideration"). On June 4, 2018, the Trustee filed his opposition brief to the Motion For Reconsideration. *See* No. 17-cv-05157, ECF Nos. 24-25. On July 19, 2018, the Defendants filed their reply brief in further support of their Motion for Reconsideration. *See* No. 17-cv-05157, ECF No. 26. On June 20, 2018, the Trustee sought to file a sur-reply in further opposition to the defendants' Motion for Reconsideration, but Judge Daniels denied the request on July 11, 2018. *See* No. 17-cv-05157, ECF No. 28. On September 11, 2018, Judge Daniels issued his Memorandum Decision and Order denying the Motion for Reconsideration. *See* No. 17-cv-05157, ECF No. 30.

### iii.    <u>Extraterritoriality</u>

192.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b).

193.    On August 28, 2014, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1). *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 7826). On December 10, 2014, this Court issued the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 8800).

194.    On December 31, 2014, the defendants filed a supplemental memorandum of law in support of their Extraterritoriality Motion to Dismiss. Between June 25 and June 29, 2015, the Trustee filed his responses to the defendants' supplemental memorandum of law in support of their extraterritoriality motion to dismiss, as well as addenda in all applicable adversary

proceedings.  On September 30, 2015, the defendants filed their consolidated and supplemental reply memoranda in support of their Extraterritoriality Motion to Dismiss and addenda in most adversary actions.

195.    This Court held a hearing on the motions to dismiss based on extraterritoriality on December 16, 2015.  On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss (the "Memorandum Decision").  *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

196.    Following entry of the Memorandum Decision, on January 18, 2017 and January 19, 2017, the Court entered So Ordered Stipulations Applying Omnibus Extraterritoriality Briefing and Memorandum Decision to Certain Joinder Defendants (collectively the "Joinder Orders"), applying the Memorandum Decision's international comity holding to certain defendants who were not previously subject to the Memorandum Decision.  *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-01789 (ECF Nos. 14890 and 14915).

197.    Accounting for the Court's Joinder Orders and the Trustee's voluntary dismissal of certain claims or parties, the Memorandum Decision directed submission of Proposed Orders in ninety-one (91) adversary proceedings (the "ET Proceedings").  These actions include: *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.); *Picard v. BNP Paribas Arbitrage, SNC*, Adv. Pro. No. 11-02796 (SMB) (Bankr. S.D.N.Y. 2011); *Picard v. Oreades SICAV*, Adv. Pro. No. 10-05120 (SMB) (Bank. S.D.N.Y. 2010); and *Picard v. Barreneche Inc.*, Adv. Pro. No. 12-01702 (SMB) (Bankr. S.D.N.Y.).

198.    On January 20, 2017, the Trustee and certain defendants in 17 adversary proceedings where the Memorandum Decision did not dispose of all claims against all parties

filed a Joint Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b). *See e.g.*, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. No. 09-01239 (SMB) (ECF No. 221).

199.    Between January 30, 2017 and March 10, 2017, the Court entered orders in all the ET Proceedings ("Dismissed ET Actions"). *See e.g.*, Final Orders Granting Motions to Dismiss Complaint in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 110, entered Jan. 30, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 228, entered Mar. 10, 2017).

200.    Between March 3, 2017 and March 30, 2017, the Trustee timely filed Notices of Appeal and Statements of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the Dismissed ET Actions. *See e.g.*, Notices of Appeal and Statements filed in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF Nos. 117 and 119); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF Nos. 229 and 234).

201.    In March and April 2017, the Trustee and defendants in the Dismissed ET Proceedings jointly certified those appeals for direct review by the Second Circuit. *See, e.g.*, Certifications filed in *Picard v. Korea Exchange Bank*, Adv. Pro. No. 11-02572 (ECF No. 121, entered Mar. 30, 2017); *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (ECF No. 236, entered Apr. 4. 2017).

202.    On April 28, 2017, the Trustee filed Petitions for Permission to Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in each of the Dismissed ET Actions with the Second Circuit. *See, e.g.,* Motion in *Picard v. Banque Lombard Odier & Cie S.A.*, No. 17-1294 (ECF No. 1).

203.    On June 1, 2017, the Trustee filed a motion to consolidate 86 related appeals. *See e.g.*, Motion in *Picard v. Lombard Odier & Cie SA*, No. 17-1294 (ECF No. 11). On June 14, 2017, the Second Circuit granted the Trustee's motion to consolidate the 86 related appeals

("Consolidated Appeal"). *See* Order Granting Motion in *Picard v. Lombard Odier & Cie SA*, No. 17-1294 (ECF No. 146).

204.    On July 13, 2017, the Trustee filed a Petition with the Second Circuit for Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in *Picard v. Banco General S.A.*, No. 17-2328, which was subsequently consolidated as the eighty-seventh case in the Consolidated Appeal. *See Picard v. Lombard Odier & Cie SA*, No. 17-1294 (ECF No. 271, entered Aug. 2, 2017).

205.    On September 27, 2017, the Second Circuit entered an order granting Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in the 87 petitions filed by the Trustee on April 28, 2017, and July 13, 2017. *See In Re Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC*, No. 17-2992(L) (ECF No. 1, *as amended*, ECF No. 65) (the "Lead Case").

206.    On October 19, 2017, the Trustee filed a Petition with the Second Circuit for Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in *Picard v. ABN AMRO Bank N.V.*, No. 17-3340 (ECF No. 1). On November 30, 2017, it was consolidated as the eighty-eighth case in the Consolidated Appeal. *See* Order Granting Petition for Permission to Appeal in *Picard v. ABN AMRO Bank N.V.*, No. 17-3340 (ECF No. 27).

207.    On January 8, 2018, the Trustee filed the Joint Appendix and Special Appendix for the Consolidated Appeal. *See* Lead Case (ECF Nos. 384 through 474). On January 10, 2018, SIPC submitted its appellate briefs for Consolidated Appeal. *See* Briefs in Lead Case (ECF Nos. 496 and 497).

208.    On January 16, 2018, the defendant-appellees filed a notice of consent to the filing of amicus briefs in support of the Trustee by the National Association of Bankruptcy

Trustees, the Professors of Conflicts of Laws, and the Professors of Bankruptcy Law. *See* Letter in Lead Case (ECF No. 578). The defendant-appellees in the Consolidated Appeal also filed a Scheduling Notification Letter requesting to submit their briefs on April 11, 2018, which was subsequently granted by the Second Circuit. *See* Letter and Order in Lead Case (ECF Nos. 579 and 600).

209.    On January 16, 2018, the National Association of Bankruptcy Trustees, the Professors of Conflicts of Laws, and the Professors of Bankruptcy Law each filed an amicus brief in support of the Trustee. *See* Briefs in Lead Case (ECF Nos. 588, 592, 593).

210.    On January 16, 2018, Kenneth M. Krys, in his capacity as liquidator and foreign representative of Fairfield Sentry Limited (in liquidation), Fairfield Sigma Limited (in liquidation), and Fairfield Lambda Limited (in liquidation) (the "Fairfield Liquidator") filed a motion for leave to file an amicus brief in support of the Trustee. *See* Motion and Brief in Lead Case (ECF 591). The Second Circuit referred the Fairfield Liquidator's motion for leave to file an amicus brief to a panel to determine the merits. *See* Order in Lead Case (ECF No. 596).

211.    On January 29, 2018, the defendant-appellees filed an opposition to the motion for leave to file an amicus brief by the Fairfield Liquidator. *See* Motion Opposition in Lead Case (ECF No. 701). On February 3, 2018, the Fairfield Liquidator filed a reply brief in support of the motion for leave to file an amicus brief. *See* Reply in Lead Case (ECF No. 751).

212.    On March 22, 2018, the defendant-appellees filed a motion for leave to file an oversized opposition brief and for a seven-day extension of the filing deadline, which the Second Circuit granted on March 27 and 28, 2018. *See* Motion and Orders in Lead Case (ECF Nos. 901, 905, 909).

213.    On March 29, 2018, the Trustee and SIPC filed a joint motion for leave to file oversized reply briefs and for a seven-day extension until May 9, 2018, which the Second Circuit granted on April 6, 2018. *See* Motions and Order in Lead Case (ECF Nos. 911, 912, 917).

214.    On April 17, 2018, select Kingate Management defendant-appellees (No. 17-3077) filed a motion for judicial notice, a declaration, and exhibits of foreign law decisions. *See* Motion for Judicial Notice in Lead Case (ECF No. 923).

215.    On April 18, 2018, the defendant-appellees filed the opposition brief (ECF No. 935). Defendant-appellees Lighthouse Investment Partners, LLC, Lighthouse Supercash Fund Limited, and Lighthouse Diversified Fund Limited (No. 17-3132) also filed a supplemental brief to the consolidated opposition brief (ECF No. 981).

216.    On April 25, 2018, the Cayman Finance and the Restructuring and Insolvency Specialists Association of the Cayman Islands, the Securities Industry and Financial Markets Association, and the British Virgin Island Restructuring Professionals each filed an amicus brief in support of the defendant-appellees. *See* Briefs in Lead Case (ECF Nos. 1024, 1029, 1030).

217.    On April 25, 2018, certain good faith defendants filed a motion for leave to file an amicus brief in support of the defendant-appellees. *See* Motion and Brief in Lead Case (ECF No. 1028). On April 30, 2018, the Second Circuit referred this motion for leave to file an amicus brief to the panel to determine the merits. *See* Order in Lead Case (ECF No. 1042).

218.    On May 8, 2018, SIPC filed its reply brief. *See* Reply Brief in Lead Case (ECF No. 1090). On May 9, 2018, the Trustee filed the reply brief and with SIPC, filed a joint motion for leave to file a foreign law declaration with a supporting affidavit and exhibits. *See* Lead Case (ECF Nos. 1092, 1093).

219.    On May 21, 2018, the defendant-appellees filed a limited opposition to the joint motion for leave to file a foreign law declaration.  *See* Limited Opposition in Lead Case (ECF No. 1129).  SIPC and the Trustee filed a joint reply on May 29, 2018.  *See* Reply in Lead Case (ECF No. 1209).

220.    On June 27, 2018, the Trustee filed a Federal Rule of Appellate Procedure 28(j) letter to bring to the Second Circuit's attention the U.S. Supreme Court decision in *WesternGeco LLC v. ION Geophysical Corp.*, No. 16-1011 (June 22, 2018), and attached the decision to the letter.  *See* Letter in Lead Case (ECF No. 1213).  The defendant-appellees filed a responsive letter on July 3, 2018.  *See* Letter in Lead Case (ECF No. 1216).

221.    Oral argument is scheduled for November 16, 2018 at 10 a.m. at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY, 10007, 17th Floor, Room 1703. *See* Lead Case (ECF No. 1270-1).

## C.    Subsequent Transferee Actions

222.    To date, the Trustee has brought a total of 92 adversary proceedings seeking recovery of just over $7.2 billion in subsequent transfers from 150 defendants who redeemed money from Fairfield Sentry Limited, Fairfield Sigma Limited, Fairfield Lambda Limited, Harley International (Cayman) Ltd., Kingate Global Fund Ltd., and Kingate Euro Fund Ltd.

223.    The subsequent transferee defendants filed motions to withdraw the reference, which were granted by Judge Rakoff and resulted in Common Briefing by the Trustee and the defendants.  Among the issues affecting the subsequent transfer cases are the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the avoidance of initial transfers through the settlement with Fairfield Sentry, Greenwich Sentry, Greenwich Sentry Partners, and various Tremont funds under Bankruptcy Code § 550, application of SLUSA, and the Trustee's standing to assert claims assigned to him.  The District Court issued its rulings on all of the issues affecting subsequent

transferee cases and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.

224.    Two subsequent transferee defendants filed motions to dismiss in the Bankruptcy Court.  Briefing on one motion has not yet been completed.  In the second motion, *Picard v. Bureau of Labor Insurance*, the defendant sought to dismiss based on the Foreign Sovereign Immunities Act, lack of personal jurisdiction, improper extraterritorial application of SIPA and the Bankruptcy Code, the failure to avoid the initial transfers to Fairfield Sentry through the Fairfield Sentry settlement, and the statute of limitations under Bankruptcy Code § 550. Adv. No. 11-02732 (BRL) (Bankr. S.D.N.Y.), (ECF No. 8–10).  On October 11, 2012, the Bankruptcy Court denied the motion to dismiss on all grounds.  (ECF No. 51).  On April 9, 2015, the Bureau of Labor Insurance filed a motion for judgment on the pleadings (ECF No. 86).  On June 9, 2015, the Trustee filed his memorandum in opposition to the motion for judgment on the pleadings (ECF No. 88).  On July 22, 2015, the Bureau of Labor Insurance filed its reply memorandum in support of its motion for judgment on the pleadings (ECF No. 96).  On July 29, 2015, this Court held a hearing on the Bureau of Labor Insurance's motion for judgment on the pleadings.  On November 22, 2016, this Court issued its decision granting the Bureau of Labor Insurance's motion for judgment on the pleadings.  (ECF 110).  On March 3, 2017, this Court filed the final order on the motion for judgment on the pleadings.  (ECF No. 117).  On March 16, 2017, the Trustee filed his Notice of Appeal of the decision.

225.    As part of the original December 10, 2014 scheduling order this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss.  Following this Court's ruling on the Extraterritoriality Motion to Dismiss, the Trustee and the defendants in non-dismissed cases entered into a

schedule to complete the briefing on the Trustee's Motion for Limited Discovery. On October 6, 2017, the defendants filed a Consolidated Memorandum in Opposition to the Trustee's Motion for Limited Discovery followed by separate memoranda filed by some of the defendants. (ECF No. 16724). On November 20, 2017, the Trustee filed his Reply Memorandum in Support of the Motion for Limited Discovery. (ECF No. 16924). On June 9, 2018, this Court denied the Trustee's Motion for Limited Discovery. (ECF No. 17696). As of September 20, 2018, the response dates to the Trustee's subsequent transfer adversary proceedings not dismissed by this Court's decision on extraterritoriality have been extended while the parties determine how to proceed with the Trustee's claims.

### i.      Picard v. ABN AMRO

226.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland N.V.) ("ABN/RBS"), ABN AMRO Incorporated ("ABNI"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Limited Ltd. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (the "ABN/RBS Action").

227.    On September 30, 2011, ABN/RBS and ABNI moved for withdrawal of the reference. *Picard v. ABN AMRO Bank N.V.*, No. 11 Civ. 6878 (JSR) (S.D.N.Y.), (ECF Nos. 1-3). On January 11, 2012, the Trustee and SIPC opposed the motion. *Id.*, (ECF Nos. 12-14). On January 27, 2012, ABN/RBS and ABNI filed reply papers. *Id.*, (ECF No. 15). The District Court granted the motion on May 15, 2012, allowing ABN/RBS and ABNI to move to dismiss as to the issues of 550(a) and 546(g). *Id.*, (ECF No. 21).

228.    On July 18, 2012, ABN/RBS and ABNI filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, (ECF Nos. 29-31). On August 14, 2012, the Trustee filed an

amended complaint naming only ABN/RBS and Rye Select Broad Market XL Fund, LP as defendants. *Id.*, (ECF No. 32).  On September 5, 2012, ABN/RBS filed a motion to dismiss the Trustee's amended complaint, again claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. *Id.*, (ECF Nos. 33-35).  On September 25, 2012, the Trustee and SIPC opposed the motion. *Id.*, (ECF Nos. 36-37).  On October 5, 2012, ABN/RBS filed reply papers. *Id.*, (ECF No. 38).  On March 14, 2013, the District Court issued an order partially denying and partially granting the 546(g) motion, and stating that an opinion providing the reason for the ruling would follow. *Id.*, (ECF No. 39).  On April 15, 2013, the District Court issued its decision concerning Bankruptcy Code section 546(e). *Id.*, (ECF No. 40).

229.    On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), (ECF No. 56).

230.    On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which ABN/RBS and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (Bankr. S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).

231.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (Bankr. S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b).  Through the Extraterritoriality Opinion and Order, the ABN/RBS Action was remanded back to the Bankruptcy Court. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 67).

232.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion").  *Id.*, (ECF No. 69).  *See* discussion *supra* Section IX(B)(iii).  Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion.  The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

233.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.  *Id.*, (ECF No. 73).

234.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  *Id.*, (ECF No. 78).  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

235.    On December 10, 2014, the Bankruptcy Court entered an Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "ET Scheduling Order").  *Id.*, (ECF No. 89).  *See* discussion *supra* Section IX(B)(iii).

236.    On December 31, 2014, Defendant filed the Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality seeking to dismiss the claims listed in Exhibits A and B to the ET Scheduling

Order (the "Consolidated Motion to Dismiss").  *Id*., (ECF No. 90).  *See* discussion *supra* Section IX(B)(iii).

237.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

238.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  *Id*., (ECF No. 93).  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

239.    On April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation").  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), (ECF No. 9720).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

240.    On June 26, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO Bank N.V. (presently known as the Royal Bank of Scotland, N.V.), and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO Bank N.V. (presently known as the Royal Bank of Scotland, N.V.).  *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.), (ECF Nos. 99-101).

241.    On September 30, 2015, Defendant filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of ABN AMRO N.V.'s Motion to Dismiss Based on Extraterritoriality. *Id.*, (ECF Nos. 105-106).

242.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality. *Id.*, (ECF No. 107).

243.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision") that denied the Extraterritoriality Motion to Dismiss as to Defendant ABN/RBS and granted the Trustee leave to amend. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 14495). *See* discussion *supra* Section IX(B)(iii).

244.    On March 3, 2017, the Bankruptcy Court entered a Stipulated Order Denying Motion to Dismiss the Complaint, thereby settling the Memorandum Decision. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 117).

245.    On March 14, 2017, Defendant ABN/RBS filed a Motion for an Extension of Time to File a Notice of Appeal and Motion for Leave to Appeal (the "Motion for Extension of Time") the Memorandum Decision. *Id.*, (ECF No. 118).  The Trustee did not oppose the Motion for Extension of Time, and, on March 28, 2017, the Bankruptcy Court granted the Motion for Extension of Time, thereby extending Defendant ABN/RBS's time to file a notice of appeal and motion for leave to appeal to April 11, 2017. *Id.*, (ECF Nos. 122, 123).

246.    On April 11, 2017, Defendant ABN/RBS filed a Notice of Appeal from the Stipulated Final Order Denying Motion to Dismiss the Complaint. *Id.*, (ECF No. 124); *Picard v.*

*ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 1). Along with its Notice of Appeal, Defendant ABN/RBS also filed a Motion for Leave to Appeal from the Bankruptcy Court's Order Concerning its Motion to Dismiss Based on Extraterritoriality ("Motion for Leave to Appeal"). *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 3-5).

247.    On April 24, 2017, the Trustee filed the Memorandum of Law in Opposition to Defendant ABN/RBS's Motion for Leave to Appeal. *Id.*, (ECF No. 8).

248.    On May 2, 2017, Defendant ABN/RBS filed a Reply Memorandum of Law in Further Support of its Motion for Leave to Appeal. *Id.*, (ECF No. 12).

249.    On July 11, 2017, the Trustee filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 130).

250.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on the Trustee's Motion for Leave to Replead and for Limited Discovery. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) (ECF No. 16428).

251.    On October 6, 2017, Defendant ABN/RBS filed the Consolidated and Supplemental Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF Nos. 134-137). The Trustee filed the Reply Memorandum of Law in Further

Support of Motion for Court Order Authorizing Limited Discovery on November 20, 2017. *Id.*, (ECF Nos. 143-144).

252.    On February 8, 2018, the Bankruptcy Court heard oral argument on the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 146).

253.    On March 1, 2018, Defendant ABN/RBS filed a Motion to Revise the Memorandum Decision and March 3, 2017 Order to Dismiss Clawback Claims for Subsequent Transfers from Rye Select Broad Market XL Portfolio (the "ABN/RBS Motion to Revise"). *Id.*, (ECF Nos. 155-157).

254.    On March 21, 2018, the Trustee filed the Memorandum of Law in Opposition to the ABN/RBS Motion to Revise, and Defendant ABN/RBS filed the Reply to the ABN/RBS Motion to Revise on March 26, 2018. *Id.*, (ECF Nos. 161, 163).

255.    On March 28, 2018, the Bankruptcy Court heard oral argument on the ABN/RBS Motion to Revise. *Id.*, (ECF No. 166).

256.    On April 10, 2018, the Bankruptcy Court entered the Stipulated Order on ABN/RBS's Motion to Revise denying ABN/RBS's Motion to Revise without prejudice to ABN/RBS's right to make a motion for partial summary judgment at a later stage. *Id.*, (ECF. No. 165).

257.    On June 5, 2018, the Bankruptcy Court issued a memorandum decision denying the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 167). On June 19, 2018, the Bankruptcy Court entered the Order Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. *Id.*, (ECF No. 168).

258.    On August 20, 2018, the Bankruptcy Court entered the So Ordered Stipulation Voluntarily Dismissing Without Prejudice Certain Claims Against ABN/RBS, whereby the

Trustee voluntarily dismissed the claims set out in Count Five of the Amended Complaint without prejudice and subject to reinstatement. *Id.*, (ECF No. 168).

### ii.    **Picard v. ABN AMRO (Ireland) Ltd. (Fortis)**

259.    On December 8, 2010, the Trustee commenced an action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Solutions Bank (Ireland) Limited), ABN Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Solutions Custodial Services (Ireland) Ltd.) (collectively the "ABN (Ireland) Defendants"), Rye Select Broad Market XL Fund, LP, Rye Select Broad Market XL Portfolio Limited. *Picard v. ABN AMRO (Ireland) Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. filed Dec. 8, 2010) (SMB) (the "ABN (Ireland) Action").

260.    On September 30, 2011, the ABN AMRO Defendants moved for withdrawal of the reference. *Picard v. ABN AMRO (Ireland) Ltd.*, No. 11 Civ. 6877 (JSR) (Bankr. S.D.N.Y.), ECF No. 1-3. On January 11, 2012, the Trustee opposed the motion to withdraw the reference. (ECF Nos. 13-14). On January 27, 2012, the ABN AMRO Defendants filed reply papers. (ECF Nos. 15-16). The District Court granted the motion on May 15, 2012, allowing the ABN (Ireland) Defendants to move to dismiss as to the issue of Bankruptcy Code section 546(g). (ECF No. 22). The ABN (Ireland) Defendants participated in Common Briefing on the Stern Issue, the Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the Antecedent Debt Issue. *Picard v. ABN AMRO (Ireland) Ltd.*, No. 11 Civ. 6877 (JSR) (Bankr. S.D.N.Y.), (ECF No. 22). The District Court has rendered decisions on all of these Common Briefing issues, which are discussed *supra* Section IX(A)(i)(b).

261.    On June 13, 2012, the ABN (Ireland) Defendants filed a motion to dismiss the Trustee's complaint, claiming the safe harbor of Bankruptcy Code section 546(g) bars the Trustee's subsequent transferee claims. (ECF Nos. 27–29).

262.     On November 29, 2012, the District Court heard oral argument on the ABN (Ireland) Defendants' motion to dismiss, as well as two other motions raising Bankruptcy Code section 546(g) (the "546(g) Motions"). On February 15, 2013, the District Court issued a bottom line order partially denying and partially granting the 546(g) Motions (ECF No. 41). On December 26, 2013, the District Court issued its opinion concerning the 546(g) Motions, confirming and explaining the February 15, 2013 bottom line order. (ECF No. 43).

263.     Prior to that, on April 15, 2013, the District Court issued the Bad Faith § 546(e) Opinion and Order. (ECF No. 42). See discussion *supra* Section IX(A)(i)(b).

264.     On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 50).

265.     On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which certain of the ABN (Ireland) Defendants and other defendants had moved to withdraw the reference. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2014 WL 1651952 (Bankr. S.D.N.Y. Apr. 27, 2014). See discussion *supra* Section IX(A)(i)(b).

266.     In July 2014, the District Court issued the Extraterritoriality Opinion and Order. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (Bankr. S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and Order, the ABN (Ireland) Action was remanded back to the Bankruptcy Court. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF No. 63).

267.     Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion. *Id.*, (ECF No. 65). See discussion *supra* Section IX(b)(iii). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to

discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Court directed the parties to confer and devise an efficient procedure and briefing schedule.

268.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions were working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule. *Id.*, (ECF No. 69).

269.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Id*., (ECF No. 74). Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

270.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. *Id*., (ECF No. 85).

271.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss. *Id*., (ECF No. 86). *See* discussion *supra* Section IX(B)(iii).

272.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission. *Id*., (ECF No. 89). The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

273.    On April 1, 2015, the Court entered the Third Stipulation. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB), (ECF No. 9720). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

274.     On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd. and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to ABN AMRO (Ireland) Ltd. and ABN AMRO Custodial Services (Ireland) Ltd. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF Nos. 95–97).

275.     On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and the Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Based on Extraterritoriality and in Reply to the Trustee's Motion for Leave to Amend Complaints, *Id.*, (ECF Nos. 101–102).

276.     On December 16, 2015, Judge Bernstein heard the Motions to Dismiss Based on Extraterritoriality.  *Id.*, (ECF No. 104).

277.     On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision") that granted the Extraterritoriality Motion to Dismiss as to Defendants.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495). *See* discussion *supra* Section IX(B)(iii).

278.     On January 20, 2017, the Trustee filed a Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) and an accompanying Joint Memorandum of Law in Support of Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil

Procedure 54(b). *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB), (ECF Nos. 116–17).

279.    On March 9, 2017, the Bankruptcy Court entered a Stipulated Final Order Granting Motion to Dismiss Count Four of the Amended Complaint, thereby settling the Memorandum Decision as to Defendants. *Id.*, *(ECF No. 119).

280.    On March 16, 2017, the Trustee filed a Notice of Appeal from, *inter alia*, the Stipulated Final Order Granting Motion to Dismiss Count Four of the Amended Complaint. *Id.*, (ECF No. 120).

281.    On March 28, 2017, the Trustee filed the Trustee's Statement of Issues To Be Presented and Designation of Items To Be Included in the Record on Appeal. *Id.*, (ECF No. 124).

282.    On April 4, 2017, the Trustee filed the Certification of Direct Appeal to the Court of Appeals. *Id.*, (ECF No. 126).

283.    On July 11, 2017, the Trustee filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion. *Id.*, (ECF No. 129).

284.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 16428).

285.    On October 6, 2017, Defendants filed the Consolidated Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue and Defendants' Supplemental Memorandum of Law in Support of Defendants' Opposition to the Trustee's

Motion for Limited Discovery on the Good Faith Issue. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB)(ECF Nos. 133 and 134).

286.     On November 20, 2017, the Trustee filed a reply memorandum in further support of the Trustee's Motion for leave to Replead and for Limited Discovery. *Picard v. ABN AMRO (Ireland) Ltd.*, Adv. Pro. No. 10-05355 (SMB) (ECF No. 141).

287.     On February 8, 2018, the Bankruptcy Court heard oral arguments on the Trustee's Motion for Leave to Replead and for Limited Discovery. *Id.*

288.     On February 13, 2018, Defendants filed a Letter in Response to Judge Bernstein's February 8, 2018 Request. *Id.* (ECF No. 150).

289.     On February 23, 2018, the Trustee filed a Letter in Response to Charts Filed by Certain Defendants. *Id.* (ECF No. 151).

290.     On June 5, 2018, the Bankruptcy Court issued the Memorandum Decision Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. *Id.* (ECF No. 155).

> **iii.     Picard v. BNP Paribas**

291.     The Trustee has brought several adversary proceedings seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas (Suisse) S.A., BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BGL BNP Paribas Luxembourg S.A., BNP Paribas Securities Services—Succursale de Luxembourg, BNP Paribas Securities Services S.A., and BNP Paribas Securities Corp. (collectively, "BNP Paribas")—who redeemed money from feeder funds that invested with BLMIS. *Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (BRL) (Bankr. S.D.N.Y. 2011); *Picard v. Legacy Capital Ltd.*, Adv.

No. 10-05286 (BRL) (Bankr. S.D.N.Y. 2010); *Picard v. Oreades SICAV*, Adv. No. 10-05120

(BRL) (Bank. S.D.N.Y. 2010); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457

(BRL) (Bank. S.D.N.Y. 2010) (collectively, the "BNP Paribas Proceedings").

292.    BNP Paribas filed motions to withdraw the reference, which were granted by

Judge Rakoff and resulted in consolidated subject matter briefing pending in the District Court.

Among the Common Briefing issues affecting the BNP Paribas Proceedings are the

Extraterritoriality Issue, the Bad Faith § 546(e) Issue, the Good Faith Standard Issue, and the

avoidance of initial transfers through settlements with feeder funds that invested with BLMIS.

*See* discussion *supra* Section IX(A)(i)(b). The District Court has issued opinions on each of the

withdrawn issues and remanded the BNP Paribas Proceedings back to the Bankruptcy Court for

proceedings consistent with the District Court's opinions.

293.    On December 31, 2014, BNP Paribas filed a Motion to Dismiss (the "Motion to

Dismiss") relating to the question of extraterritoriality.  *Sec. Inv. Prot. Corp v. Bernard L.

Madoff Inv. Secs. LLC,* Adv. Pro. No. 12-01576 (SMB), (ECF No. 52).

294.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision

(the "Memorandum Decision") that granted in part and denied in part the Motion to Dismiss.

*See Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-01789 (SMB),

(ECF No. 14495). *See* discussion *supra* Section IX(B)(iii).

295.    On March 9, 2017, the Bankruptcy Court entered a Dismissal Order (the

"Dismissal Order") consistent with the Memorandum Decision.  *Sec. Inv. Prot. Corp v. Bernard

L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 12-01576 (SMB), (ECF No. 88).

296.    On August 30, 2017, the Trustee filed an Amended Complaint against BNP

Paribas Arbitrage SNC, BNP Paribas Bank & Trust Cayman Limited, BNP Paribas S.A., BNP

Paribas Securities Services S.A. *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 12-01576 (SMB), (ECF No. 100).

297.    On October 25, 2017, BNP Paribas filed its motion to dismiss the Amended Complaint.  On December 20, 2017, the Trustee filed a memorandum of law in response to BNP Paribas's motion to dismiss.  On January 19, 2018, BNP Paribas filed a reply memorandum of law in further support of its motion to dismiss.  Oral argument was held on March 9, 2018.

298.    On February 9, 2018, the Trustee filed a motion to compel BNP Paribas to produce and/or permit inspection and copying of documents responsive to his First Set of Requests for the Production of Documents. On March 19, 2018, BNP Paribas filed a cross-motion to stay discovery until BNP Paribas's motion was decided.  On March 28, 2018, Judge Bernstein granted BNP Paribas's cross-motion to stay discovery and denied the Trustee's motion to compel discovery.

299.    On September 13, 2018, the parties stipulated, and the Bankruptcy Court so ordered, to dismiss claims to recover subsequent transfers from Ascot Partners, L.P. ("Ascot") to Defendant BNP Paribas Bank & Trust Cayman Limited pursuant to a separate settlement dated July 3, 2018 that the Trustee entered into with Ascot and Gabriel Capital Corp.

### iv.      Picard v. Citibank

300.    On December 8, 2010, the Trustee commenced an action against Citibank, N.A., Citibank North America, Inc., and Citigroup Global Markets Limited (collectively, "Citibank") seeking the return of approximately $425 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank.  *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (Bankr. S.D.N.Y.) (the "Citibank Action").

301.    On November 2, 2011, Citibank moved for withdrawal of the reference.  *Picard v. Citibank*, No. 11 Civ. 7825 (JSR) (S.D.N.Y.), (ECF Nos. 1–3).  On March 2, 2012, the Trustee opposed the motion to withdraw the reference, and oral argument was held on May 1, 2012.  *Id.*, (ECF Nos. 13–15).  On July 2, 2012, the District Court granted Citibank's motion, allowing Citibank to move to dismiss as to the issues of Bankruptcy Code sections 550(a) and 546(g), and directing Citibank to participate in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR) (S.D.N.Y. July 3, 2012), (ECF No. 214).  The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b).

302.    On August 15, 2012, Citibank filed a motion to dismiss, claiming that the safe harbor of Bankruptcy Code section 546(g) bars Trustee's subsequent transferee claims.  *Picard v. Citibank*, No. 11 Civ. 782, (S.D.N.Y.) (ECF Nos. 25–28).  On November 29, 2012 the District Court held oral argument on Citibank's motion to dismiss jointly with two other motions raising the 546(g) issue.  On February 15, 2013, the District Court issued a bottom line order partially granting and partially denying the 546(g) motions, noting that a full opinion would follow.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR), (Bankr. S.D.N.Y.) (ECF No. 451).  The court issued its full decision in an opinion and order on December 26, 2013. *Picard v. Citibank*, No. 11 Civ. 7825 (S.D.N.Y.) (ECF No. 37).

303.    On October 5, 2012, Citibank filed a motion to dismiss based on § 550 of the Bankruptcy Code, asserting that the Trustee must first obtain a judgment of avoidance as to the initial transferees before pursuing recovery of subsequent transfers from Citibank.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR), (S.D.N.Y.) (ECF No. 384). On December 12, 2012, Judge Rakoff issued a bottom line ruling denying defendants' motion to

dismiss in its entirety. *Id.*, (ECF No. 422). The court issued its full decision in an opinion and order on October 30, 2013. *Picard v. Citibank*, No. 11 Civ. 7825, (S.D.N.Y.) (ECF No. 36).

304.    On April 27, 2014, Judge Rakoff issued the Good Faith Standard Opinion and Order, upon which Citibank and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (Bankr. S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b). Through this decision, the Citibank Action was remanded back to the Bankruptcy Court.

305.    In July 2014, Judge Rakoff issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b).

306.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed the Omnibus Motion for Leave to Replead Pursuant to Federal Rule of Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion"). *Picard v. Citibank*, Adv. Pro. No. 10-05345, (Bankr. S.D.N.Y.) (ECF Nos. 71-73). *See* discussion *supra* Section IX(B)(iii). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

307.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed upon order that will set forth a proposed process and briefing schedule.

308.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule.  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

309.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order. On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss.  *See* discussion *supra* Section IX(B)(iii).

310.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. Pro. No. 08-1789 (SMB) (ECF Nos. 8990, 9350).

311.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

312.    On April 1, 2015, the Court entered the Third Stipulation.  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (SMB), (ECF No. 9720). The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were due to be filed under the Third Stipulation with the Court on June 30, 2015.

313.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints.

314.    On September 30, 2015, Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

315.    On December 16, 2015, the Bankruptcy Court heard oral argument on Transferee Defendants' Motion to Dismiss Based on Extraterritoriality.

316.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision"). *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495).  *See* discussion *supra* Section IX(B)(iii).

317.    On January 18, 2017, the Bankruptcy Court entered the So Ordered Stipulation Applying Omnibus Extraterritoriality Briefing and Memorandum Decision to Certain Joinder Defendants (the "Joinder Stipulation"), applying the Memorandum Decision, subject to the reservations of rights and limitations set forth therein, to Defendant Citigroup Global Markets Limited.  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14890).

318.    On March 9, 2017, the Bankruptcy Court entered a Stipulated Final Order Granting In Part and Denying In Part Motion to Dismiss (the "Stipulated Final Order"), thereby settling the Memorandum Decision and dismissing all of the Trustee's claims as to Defendant Citigroup Global Markets Limited.  *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB).

319.    On March 21, 2017, the Trustee filed a Notice of Appeal from, *inter alia*, the Stipulated Final Order.  *Id.*, (ECF No. 109).

320.    On March 28, 2017, the Trustee filed the Trustee's Statement of Issues To Be Presented and Designation of Items To Be Included in the Record on Appeal.  *Id.*, (ECF No. 111).

321.    On July 11, 2017, the Trustee filed a proposed order setting forth a proposed process and briefing schedule concerning further proceedings on the Omnibus Motion. *Id.*, (ECF No. 118).

322.    On July 24, 2017, the Bankruptcy Court entered the Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 16428).

323.    On September 27, 2017, the Trustee's appeal from the Stipulated Final Order was docketed in the Second Circuit as No. 17-3139. *Picard v. Citigroup Global Markets Limited*, No. 17-3139 (2d. Cir. 2017) (ECF No. 1).

324.    On October 6, 2017, Defendants filed the Consolidated Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue. *Picard v. Citibank*, Adv. Pro. No. 10-05345 (SMB) (ECF Nos. 122-123). The Trustee filed the Reply Memorandum of Law in Further Support of Motion for Court Order Authorizing Limited Discovery on November 20, 2017. *Id.*, (ECF Nos. 124-125).

325.    On February 8, 2018, the Bankruptcy Court heard oral argument on the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 127).

326.    On June 5, 2018, the Bankruptcy Court issued a memorandum decision denying the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 140). On June 19, 2018, the Bankruptcy Court entered the Order Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. *Id.*, (ECF No. 143).

**v.    Picard v. Natixis**

327.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank) ("Natixis"), Natixis

Financial Products, Inc. ("Natixis FP"), Bloom Asset Holdings Fund ("Bloom"), and Tensyr Ltd. ("Tensyr," and together with Natixis, Natixis FP, and Bloom, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.).

328. On December 20, 2011 and January 10, 2012, the Natixis Defendants moved for withdrawal of the reference. *Picard v. Natixis*, No. 11 Civ. 9501 (JSR) (S.D.N.Y.), ECF Nos. 1– 3, 5–7. In May and June 2012, the District Court directed the Natixis Defendants to participate in Common Briefing as to the Bad Faith § 546(e) Issue, the Stern Issue, the Good Faith Standard Issue, the Extraterritoriality Issue, and deferring briefing on remaining issues in pending motions to withdraw the reference. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec., LLC)*, 12 MC 0115 (JSR) (S.D.N.Y.), ECF Nos. 109, 131, 166, 197. The District Court's disposition of these Common Briefing issues is discussed *supra* in Section IX(A)(i)(b)**.**

329. On April 27, 2014, the District Court issued the Good Faith Standard Opinion and Order, upon which the Natixis Defendants and other defendants had moved to withdraw the reference. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014). *See* discussion *supra* Section IX(A)(i)(b).

330. On July 7, 2014, the District Court issued the Extraterritoriality Opinion and Order. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513 B.R. 222 (S.D.N.Y. 2014). *See* discussion *supra* Section IX(A)(i)(b). Through the Extraterritoriality Opinion and

Order, the Natixis Action was remanded back to the Bankruptcy Court. *Picard v. Natixis*, Adv.

Pro. No. 10-05353 (SMB) (Bankr. S.D.N.Y.), ECF No. 65.

331.    Following the entry of the Extraterritoriality Opinion and Order, the Trustee filed

the Omnibus Motion. *Id.*, ECF No. 67. *See* discussion *supra* Section IX(B)(iii). Following a

request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to

discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order

and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an

efficient procedure and briefing schedule. *See* discussion *supra* Section IX(B)(iii).

332.    On October 2, 2014, the Trustee filed a letter advising that the Trustee and

counsel representing the defendants in this and other actions are working together to prepare a

mutually acceptable agreed order that will set forth a proposed process and briefing schedule.

*Id.*, ECF No. 71.

333.    On October 23, 2014, the Trustee filed a proposed order setting forth a proposed

process and briefing schedule. *Id.*, ECF No. 75. Following limited objections by certain

defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the

proposed process and briefing schedule.

334.    On December 10, 2014, the Bankruptcy Court entered the ET Scheduling Order.

*Id.*, ECF No. 88. *See* discussion *supra* Section IX(B)(iii).

335.    On December 31, 2014, Defendants filed the Consolidated Motion to Dismiss.

*Id.*, ECF No. 89. *See* discussion *supra* Section IX(B)(iii).

336.    On January 13, 2015 and February 24, 2015, the Court so ordered two stipulations

modifying the ET Scheduling Order and certain deadlines for the parties to file their respective

submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion.

337.    On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting The Trustee's Extraterritoriality Submission. *Id.*, ECF No. 92. The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

338.    On April 1, 2015, the Court entered the Third Stipulation modifying the ET Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y.) (SMB), ECF No. 9720. *See* discussion *supra* Section IX(B)(iii).

339.    On June 27, 2015, the Trustee filed the Memorandum of Law in Opposition to the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and in Further Support of Trustee's Motion for Leave to Amend Complaints, the Addendum to the Trustee's Oppositions on the Extraterritoriality Issue for Natixis, *et al.*, and the Proffered Allegations Pertaining to the Extraterritoriality Issue as to Natixis, *et al.*, *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.), ECF Nos. 100-102.

340.    On September 30, 2015, the Natixis Defendants filed the Reply Consolidated Memorandum of Law in Support of Transferee Defendants' Motion to Dismiss Based on Extraterritoriality and Supplemental Memorandums of Law in Support of their Motions to Dismiss Based on Extraterritoriality and Declarations in support of the same, *Id.*, ECF Nos. 105-109.

341.    On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers (the "Memorandum Decision") that

denied the Extraterritoriality Motion to Dismiss as to Defendant Natixis FP, but granted the Extraterritoriality Motion to Dismiss as to Defendants Natixis, Bloom, and Tensyr and certain counts pertaining to transfers Natixis FP received. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 14495). *See* discussion *supra* Section IX(B)(iii).

342.    On January 20, 2017, the Trustee filed the Memorandum of Law in Support of Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) and the related Motion. Natixis, *et al.*, *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 125-26).

343.    On March 9, 2017, the Bankruptcy Court entered a Stipulated Order Granting Motion to Dismiss the Complaint, thereby settling the Memorandum Decision. *Id.* (ECF No. 129).

344.    On March 16, 2017, the Trustee filed the Notice of Appeal. *Id.* (ECF No. 130). On April 4, 2017, the Trustee filed the Certification for Direct Appeal to Court of Appeals. *Id.*, (ECF No. 137).

345.    On July 11, 2017, the Trustee filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion. *Id.* (ECF No. 142). On October 6, 2017, Defendant Natixis FP filed the Consolidated Memorandum of Law in Opposition to the Trustee's Motion for Discovery on the Good Faith Issue and Supplemental Motion and Declaration. *Id.* (ECF Nos. 145-147). The Trustee filed the Reply Memorandum of Law in Further Support of Motion for Court Order Authorizing Limited Discovery on November 20, 2017. *Id.*, (ECF Nos. 150-52).

346.    On February 8, 2018, the Bankruptcy Court heard oral argument on the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 156).

347.    On June 5, 2018, the Bankruptcy Court issued a memorandum decision denying the Trustee's Motion for Court Order Authorizing Limited Discovery. *Id.*, (ECF No. 163). On June 19, 2018, the Bankruptcy Court entered the Order Denying the Trustee's Motion for Discovery Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. *Id.*, (ECF No. 164).

### D.    Bad Faith Actions

348.    The Trustee has approximately 20 bad faith and feeder fund actions still pending as of the end of the Report Period. A few will be highlighted below.

#### i.    Picard v. Avellino

349.    On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y.) (the "A&B Action").

350.    On June 6, 2011, certain A&B Defendants moved to dismiss the complaint in the Bankruptcy Court. *A&B Action* (ECF Nos. 23-27). In addition, on June 7, 2011, certain A&B Defendants moved to withdraw the reference to the Bankruptcy Court. *Id.* (ECF Nos. 28–30); *see also Picard v. Avellino*, No. 11-cv-03882 (JSR) (S.D.N.Y.) (the "A&B Withdrawal Action").

351.    The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011. On February 29, 2012, the District Court issued a

Memorandum Order withdrawing the reference on certain issues of law raised by the A&B Defendants and other defendants named in separate adversary proceedings commenced by the Trustee. *A&B Withdrawal Action* (ECF No. 20). As a result of the District Court's order, during the period of May 2012 through October 2012, the Trustee and the A&B Defendants joined in consolidated briefing and oral arguments on the withdrawn issues of law. *See A&B Withdrawal Action* (ECF Nos. 21–23).

352. Following the disposition of the Common Briefing issues, the Trustee and the A&B Defendants filed a coordinated briefing schedule on August 7, 2014. *A&B Action* (ECF No. 81). Per the schedule, on September 24, 2014, certain A&B Defendants filed a Renewed Motion to Dismiss, incorporating their previous June 6, 2011 pleading. *A&B Action* (ECF Nos. 82-84). On November 24, 2014, the Trustee filed an amendment to the original complaint (the "A&B Amended Complaint") in response to the Renewed Motion to Dismiss. *A&B Action* (ECF No. 86). The Trustee and the A&B Defendants conferred and filed an amended coordinated briefing schedule on January 14, 2015. *A&B Action* (ECF No. 87). Under the schedule, certain A&B Defendants filed a Motion to Dismiss the A&B Amended Complaint on January 28, 2015. *A&B Action* (ECF Nos. 88-89).

353. The Trustee and A&B Defendants again conferred and filed an amended coordinated briefing schedule on April 7, 2015. *A&B Action* (ECF No. 91). Under the schedule, the Trustee's time to respond to the Motion to Dismiss the A&B Amended Complaint was up to and including May 21, 2015 and oral argument was scheduled for and held on July 29, 2015. At oral argument, Judge Bernstein requested supplemental briefs by the Trustee and the A&B Defendants on issues raised in the Motion to Dismiss briefing, which were filed on August 12, 2015. *A&B Action* (ECF Nos. 102, 104).

354.    On July 21, 2016, Judge Bernstein issued his memorandum decision and order
(collectively, "July 21 Decision and Order"), granting in part and denying in part the Motion to
Dismiss. *A&B Action* (ECF Nos. 116, 117). In the July 21 Decision and Order, Judge Bernstein
held that, due to changes in the corporate form at BLMIS, the Trustee was legally incapable of
recovering fraudulent transfers made prior to January 1, 2001. *A&B Action* (ECF Nos. 116,
117).

355.    Consequently, on August 19, 2016, the Trustee filed a Motion to Reargue
("Motion to Reargue") this specific aspect of the July 21 Decision and Order. *A&B Action* (ECF
No. 125). SIPC filed a Memorandum in Support on August 19, 2016. *A&B Action* (ECF No.
123). The A&B Defendants opposed the Trustee's Motion to Reargue and filed their opposition
papers on September 19, 2016. *A&B Action* (ECF No. 129). The Trustee replied to their
opposition on October 3, 2016. *A&B Action* (ECF No. 134). The Bankruptcy Court denied the
Motion to Reargue. *A&B Action* (ECF No. 136). On November 2, 2016, the A&B Defendants
filed answers to the A&B Amended Complaint. *A&B Action* (ECF Nos. 137-144). Additionally,
certain A&B Defendants filed counterclaims against the Trustee. *A&B Action* (ECF Nos. 140-
141, 143). On January 27, 2017, the Trustee filed answers to these counterclaims. *A&B Action*
(ECF Nos. 151-153). On March 20, 2017, the Trustee and the A&B Defendants filed their case
management plan with the Bankruptcy Court. *A&B Action* (ECF No. 158).

356.    On April 5, 2017, defendant Michael Bienes died and a suggestion of death was
filed. *A&B Action* (ECF No. 161). On June 15, 2017, the Trustee and the A&B Defendants
agreed to a stipulation, which was so ordered by the Bankruptcy Court, extending the Trustee's
time to move to substitute the Estate of Michael Bienes and the personal representative in place
of deceased defendant Michael Bienes. *A&B Action* (ECF No. 162). On October 18, 2017,

Dianne K. Bienes was issued Letters of Administration as the duly appointed Personal Representative of the Estate of Michael S. Bienes.

357.    On November 16, 2017, the Court so ordered a stipulation between the Trustee and the Estate of Michael S. Bienes and Dianne K. Bienes, in her capacity as Personal Representative for the Estate of Michael S. Bienes, to substitute the Estate of Michael S. Bienes and Dianne K. Bienes, in her capacity as Personal Representative for the Estate of Michael S. Bienes, as defendants in place of Michael S. Bienes in this adversary proceeding.  *A&B Action* (ECF No. 170).

358.    During the Report Period, the Trustee and A&B Defendants entered into a Second Amended Case Management Plan which, among other things, extended fact discovery until November 5, 2019.  *A&B Action* (ECF No. 178).

359.    Additionally, during the Report Period, the Trustee engaged in various aspects of discovery, including evaluating the A&B Defendants' amended responses and objections to the Trustee's requests for production, reviewing documents produced by the A&B Defendants, preparing and serving subpoenas on third parties, preparing to produce additional documents to the A&B Defendants, preparing for depositions, and performing overall case management.

## ii.    Picard v. Andrew H. Madoff and Picard v. Mark D. Madoff

360.    On June 23, 2017, the Trustee, the U.S. Attorney's Office for the Southern District of New York (the "Government"), and the Estates of Andrew H. Madoff and Mark D. Madoff (the "Estates") entered into a Stipulation and Order of Settlement (the "Stipulation"), which resolved all of the Trustee's claims against the Estates in *Picard v. Andrew H. Madoff*,

Adv. Pro. No. 09-01503 (SMB), and against various Madoff-related business entities in related adversary proceedings.[15]

361.    In pertinent part, the Stipulation required the Estates to transfer all of their assets, which consisted of cash, marketable securities, and private investment fund and business interests, to the Trustee and the Government, with the exception of certain retention and reserve amounts the Estates were permitted to retain.  The Trustee and the Government share all assets received under the Stipulation equally.

362.    On June 26, 2017, the District Court approved the Stipulation and, on July 24, 2017, this Court approved the Trustee's motion pursuant to Bankruptcy Rule 9019 seeking approval of the Stipulation (ECF No. 311).  As of March 31, 2018, the last day of the prior Report Period, the Trustee had received $10,575,438.31 under the Stipulation.

363.    During the Report Period, the Trustee continued to manage and attempt to liquidate certain marketable securities and fund and business interests transferred pursuant to the Stipulation.  As of September 30, 2018, the Trustee received an additional $143,378.67 from certain of these assets.

iii.    **Picard v. Cohmad Sec. Corp.**

364.    On June 22, 2009, the Trustee commenced an adversary proceeding against Madoff insiders Cohmad Securities Corporation ("Cohmad"), Maurice ("Sonny") J. Cohn ("Sonny Cohn"), Marcia B. Cohn, and several other defendants (collectively, the "Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

---

[15] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad Defendants. *Picard v. Cohmad Sec. Corp.*, Adv. No. 09-01305 (SMB).

365.    The complaint seeks to avoid and recover the fictitious profits withdrawn by the Cohmad Defendants and the return of commissions and fees transferred directly from BLMIS to Sonny Cohn and Cohmad.  On October 8, 2009, the Trustee filed an amended complaint.  (ECF No. 82).   The Cohmad Defendants filed numerous motions to dismiss, which the Trustee opposed.  (ECF No. 135).

366.    On August 1, 2011, this Court issued its Memorandum Decision and Order Denying Defendants' Motions to Dismiss Trustee's Complaint.  (ECF No. 209).   This Court found that the Trustee had adequately pleaded that the transfers received by the Cohmad Defendants in excess of their principal were not transferred for reasonably equivalent value, and Cohmad and Sonny Cohn lacked good faith in receiving commissions from Madoff. *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 332–34 (Bankr. S.D.N.Y. 2011).

367.    Certain of the Cohmad Defendants filed a motion for leave to appeal. *See Picard v. Cohmad Sec. Corp.*, No. 11 MC 00337 (TPG) (S.D.N.Y.), (ECF Nos. 212–13).  Judge Griesa denied the Cohmad Defendants' appeal on November 14, 2012.

368.    In March and April 2012, the Cohmad Defendants moved to withdraw the reference from this Court. *Picard v. Cohmad*, No. 12-cv-02676 (JSR) (S.D.N.Y.), (ECF No. 1). The Cohmad Defendants have also participated in Common Briefing as to the Bad Faith § 546(e) Issue and the Good Faith Standard Issue. *See* discussion *supra* Section (IX)(A)(i)(b).  The District Court rendered a decision on the Bad Faith § 546(e) Issue, which indicated that the Trustee adequately pleaded a case against the Cohmad Defendants so that the Cohmad

Defendants are not entitled to dismiss the Trustee's complaint at the pleading stage on the basis of Bankruptcy Code Section 546(e).

369.    In November 2016, a motion was filed under Federal Rule of Bankruptcy Procedure 9019 for court approval of a settlement with certain defendants, including Cohmad Securities Corporation, and Marcia Cohn and Marilyn Cohn, in their individual capacities and as co-executors of the Estate of Maurice Cohn.  The Court approved that settlement on November 29, 2016.  Those defendants were dismissed from this adversary proceeding on January 3, 2017.[16]

370.    The Trustee also entered into settlement agreements throughout 2016 and 2017 with several defendants. These defendants were ultimately dismissed from this adversary proceeding. In addition, several other defendants were voluntarily dismissed from this adversary proceeding in 2016 and 2017, in connection with, among other things, negotiations. As of September 2018, eleven defendants remain in this adversary proceeding.

371.    The Trustee and the remaining defendants continue to engage in discovery, including with third parties.

372.    In addition, on May 29, 2018, a Sixth Amended Case Management Plan was so ordered by the Court extending the date that discovery closes to March 7, 2019.

iv.    **Picard v. Magnify Inc.**

373.    On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and

---

[16] This adversary proceeding is currently captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC* v. *Alvin J. Delaire, Jr. et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances,

and damages in connection with certain transfers of property by BLMIS to or for the benefit of

the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (SMB). On September 21,

2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29,

2017, the Trustee filed a Second Amended complaint. (ECF No. 143).

374. On April 2, 2012, defendants Robert H. Book and R.H. Book LLC moved to

withdraw the reference to the District Court on several grounds. *See Picard v. Magnify, Inc.*, No.

12-cv-02482 (JSR) (S.D.N.Y.). These defendants have since resolved the Trustee's claims and

have been dismissed from the action.

375. Defendant Kurt Brunner moved to dismiss the Trustee's complaint for lack of

personal jurisdiction on September 1, 2011, and supplemented this motion with regard to

allegations in the amended complaint on November 3, 2011. *Picard v. Magnify*, Adv. No. 10-

05279 (SMB) (ECF Nos. 32, 48). On June 14, 2012, this Court held a hearing on Mr. Brunner's

motion to dismiss for lack of personal jurisdiction. This Court denied the motion and ordered

jurisdictional discovery over Mr. Brunner related to "the degree to which Brunner controlled and

profited from [defendants] Magnify, Premero and Strand" and entered an order to this effect on

June 15, 2012. (ECF No. 97). Determination of personal jurisdiction over Mr. Brunner was

stayed pending resolution of a motion to dismiss for lack of personal jurisdiction and *forum non*

*conveniens* filed in *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB), a

now-settled avoidance action against defendants who have ties to the late founder of several of

the Magnify Defendants.

376.    Mr. Brunner subsequently resolved the Trustee's claims and was dismissed from the *Magnify* action without prejudice on February 5, 2015.  The *Igoin* defendants' motion was denied on February 13, 2015.

377.    On September 21, 2015, the Trustee voluntarily dismissed Defendant Special Situations Cayman Fund, L.P., from the action with prejudice.

378.    On April 5, 2018, the Court so ordered the parties' Ninth Amended Case Management Plan.  (ECF No. 165).  On April 13, 2018, the Court issued a Memorandum Decision Denying Defendants' Motion to Dismiss, (ECF No. 143), and entered a corresponding order on April 25, 2018.  (ECF No. 167).  On July 25, 2018, after the Magnify Defendants substituted new counsel, the parties entered into a Tenth Amended Case Management Plan. (ECF No. 174).  During this time period, the Trustee has continued to analyze strategic issues relating to the case, including working with experts and assessing deficiencies in the Magnify Defendants' discovery responses.

379.    The Trustee also continued to prosecute two actions brought in Israel in December 2015 to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts.  In connection with these actions, the Trustee worked with Israeli counsel to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, drafting responses to certain defendant's discovery requests, and filing a motion for entry of a protective order governing the disclosure of personally identifying information with certain defendants.  The Trustee also worked with Israeli counsel to analyze the implications of an April 8, 2018 decision by the Israeli Supreme Court remanding both cases to the lower court to render

more detailed decisions with respect to various previously-filed motions, as well as certain defendants' arguments made in connection therewith.

### v.  **Picard v. Stanley Shapiro**

380.    On December 9, 2010, the Trustee commenced an action against Stanley Shapiro, Renee Shapiro, David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants.  *See Picard v. Shapiro*, Adv. No. 10-05383 (SMB).

381.    In early 2014, the Trustee filed a second amended complaint against the Shapiro Defendants.  The Shapiro Defendants moved to dismiss the second amended complaint on several grounds including, but not limited to, that they could avail themselves of the safe harbor protection under Section 546(e) of the Bankruptcy Code.  In late 2015, the Bankruptcy Court issued a written decision in which it granted in part and denied in part the Shapiro Defendants' motion (ECF No. 59).

382.    During the Report Period, the Trustee continued to engage in discovery in the action, including producing certain further categories of relevant documents to the Shapiro Defendants.  During the Report Period, the Trustee moved to compel the Shapiro Defendants to produce documents responsive to certain of the Trustee's document requests, and the Court heard and granted the Trustee's motion to compel.  Also during the Report Period, the Trustee continued to develop his case against the Shapiro Defendants.

E.    **Feeder Fund Actions**

i.    **The HSBC Action**

383.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action").   After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS.  (ECF No. 35).

384.    The thirteen HSBC-related defendants and, separately, UniCredit S.p.A. and Pioneer Alternative Investment Management Limited, moved to withdraw the reference.   On April 14, 2011, United States District Judge Jed S. Rakoff ("Judge Rakoff") withdrew the reference to consider the Trustee's standing to assert common law claims.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (JSR) (S.D.N.Y.), (ECF Nos. 20, 23).

385.    On May 3, 2011, the same defendants filed motions to dismiss.  *Picard v. HSBC Bank plc*, No. 11 Civ. 00836 (ECF Nos. 24–27).   The Trustee and SIPC opposed the motions. (ECF Nos. 32–36).   On July 28, 2011, the District Court dismissed the Trustee's common law claims, holding that the Trustee lacked standing, under any theory, to assert them.  *Picard v. HSBC Bank plc*, 454 B.R. 25, 37–38 (S.D.N.Y. 2011).   The District Court returned the remainder of the HSBC Action to this Court for further proceedings.  *Id.* at 38.

386.    On December 15, 2011, the Trustee appealed the District Court's decision to the Second Circuit.  *See Picard v. HSBC Bank PLC*, No. 11-5175 (2d Cir. 2011); *Picard v. HSBC*

*Bank PLC*, No. 11-5207 (2d Cir. 2011).  Oral argument was held on November 21, 2012.  On

June 20, 2013, the Second Circuit affirmed the decision of the District Court.  (ECF No. 163).

387.    On October 9, 2013, the Trustee filed a petition for a writ of certiorari with the

Supreme Court.  *See Picard v. J.P. Morgan Chase & Co.*, *pet. for cert. filed*, (U.S. Oct. 9, 2013)

No. 13-448.  The Supreme Court denied the petition.

388.    The District Court returned several of the Trustee's bankruptcy claims to this

Court; however, various defendants in the HSBC Action moved to withdraw the reference from

this Court and those motions have been granted, at least in part, by the District Court.  These

defendants participated in a variety of motions before the District Court on Common Briefing,

including the Bad Faith § 546(e) Issue, the § 502(d) Issue, the Extraterritoriality Issue, and the

Good Faith Standard Issue.  The District Court's disposition of these Common Briefing issues is

discussed *supra* in Section IX(A)(i)(b).  The HSBC Action has been returned to the Bankruptcy

Court.

389.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims

against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted

in over $600 million in consideration to the Estate.  (ECF Nos. 338, 339, 349, 350, 352, 363).

390.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims

against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130

million in consideration to the Estate.  (ECF No. 16431).

391.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims

against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in

over $240 million in consideration to the Estate.  (ECF No. 16430).

392.    On October 20, 2017 this Court approved a settlement between the Trustee and Thema International Fund plc. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

393.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. *Picard v. HSBC Bank PLC, et al.*, Adv. Pro. No. 09-01364 (ECF No. 497).

**ii.    The Luxalpha Action**

394.    On December 10, 2014, the Court entered the ET Scheduling Order. The ET Scheduling Order provided certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Issue and the Omnibus Motion. *See* discussion *supra* Section IX(B)(iii).

395.    On December 31, 2014, the transferee defendants listed in Exhibits A and B to the ET Scheduling Order (the "Defendants Group")—including the moving Access Defendants[17] in the Luxalpha Proceeding (defined below), M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding (defined below), and the UBS Defendants[18] in the Luxalpha and LIF Proceedings—filed their Consolidated Motion to Dismiss in connection with their Omnibus Motion regarding the Extraterritoriality Issue. *Picard v. UBS AG*, Adv. Pro. No. 10-4285 (SMB) (Bankr. S.D.N.Y.) (the "Luxalpha Proceeding"); *Picard v. UBS AG*, Adv. Pro. No. 10-05311 (SMB) (Bankr. S.D.N.Y.) (the "LIF Proceeding"). *See* discussion *supra* Section IX(B)(iii).

---

[17] The moving Access Defendants consist of Access International Advisors Ltd., Access Management Luxembourg SA (f/k/a Access International Advisors (Luxembourg) SA), Access Partners SA, Patrick Littaye, and Pierre Delandmeter.

[18] The UBS Defendants consist of UBS AG, UBS (Luxembourg) SA, UBS Fund Services Luxembourg SA, and UBS Third Party Management SA.

396.     On June 26, 2015, the Trustee filed submissions opposing moving defendants'
Consolidated Motion to Dismiss regarding the Extraterritoriality Issue in the Luxalpha and LIF
Proceedings.    These submissions included a proffered Second Amended Complaint in the
Luxalpha Proceeding and a proffered Amended Complaint in the LIF Proceeding.

397.     On September 30, 2015, the moving Access Defendants in the Luxalpha
Proceeding, M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, and the
UBS Defendants in the Luxalpha and LIF Proceedings filed reply papers in further support of
their Consolidated Motion to Dismiss regarding the Extraterritoriality Issue.

398.     On April 4, 2016, the Trustee and the defendants in the LIF Proceeding and the
Luxalpha Proceeding, which the parties had agreed should be coordinated for scheduling
purposes, participated in a conference under Rule 26(f) of the Federal Rules of Civil Procedure
("Rule 26(f)" Conference) to discuss, among other things, a schedule for discovery.    At the joint
Rule 26(f) Conference, the Trustee provided the defendants with a presentation on the
procedures for the Trustee's discovery process and protocols, with an explanation of how the
Trustee produces relevant documents through an electronic data room.

399.     However, at the Rule 26(f) conference and in additional meet and confers, the
parties disputed the appropriate timing of the commencement of discovery under the Federal
Rules or otherwise.    The Trustee asserted that the Federal Rules permit the immediate
commencement of discovery in the proceedings and that further delay of discovery would result
in the loss of evidence relevant to the events underlying the Trustee's claims in the proceedings
and would unduly prejudice his ability to prosecute those claims.    In connection with the Rule
26(f) conference, the Trustee served requests for the production of documents under Rule 34 of
the Federal Rules of Civil Procedure.

400.    The defendants objected to the commencement of discovery under the Federal Rules or otherwise, asserting that certain pending motions, including the Extraterritoriality Motion, the Trustee's motion for leave to amend his complaints, and the defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*, and anticipated motions to dismiss on other grounds (the "Anticipated Motions") will affect the identity of the parties and the scope of discovery in the proceedings, making the commencement of discovery premature at this time and proposed that, in an effort to make progress while the parties awaited the Court's decision on the Extraterritoriality Motion, (a) the parties move forward with briefing on the Anticipated Motions, or (b) in the alternative, the parties be permitted to pursue document discovery overseas by letters of request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").

401.    Unable to resolve their dispute concerning the appropriate time for the commencement of discovery, counsel for the Trustee and certain parties appeared before the Honorable Stuart M. Bernstein on April 27, 2016 for a status conference.  Having considered the parties' positions at the April 27 status conference, Judge Bernstein permitted the Parties to commence document discovery through the Hague Convention under an Order entered on May 18, 2016 in both proceedings ("International Discovery Orders").

402.    On November 22, 2016, Judge Bernstein issued a decision on the Defendant Group's Extraterritoriality Motion, dismissing the subsequent transfer claims against the defendants in the Luxalpha and LIF actions who joined the Extraterritoriality Motion: the moving Access Defendants in the Luxalpha Proceeding, M&B Capital Advisors Sociedad de Valores, S.A. in the LIF Proceeding, Reliance Management (Gibraltar) Ltd. in the LIF Proceeding, and the UBS Defendants in the Luxalpha and LIF Proceedings.  On January 19,

2017, the Trustee voluntarily dismissed Reliance Management (Gibraltar) Ltd. from the LIF proceeding.

403.    On March 9, 2017, the Bankruptcy Court entered so-ordered stipulations in both proceedings dismissing the subsequent transferee claims against the defendants who joined the Extraterritoriality Motion.  On March 16, 2017, the Trustee filed notices of appeal, appealing the Bankruptcy Court's November 22, 2016 decision to the Second Circuit.  (ECF No. 233).

404.    Between March 3, 2017 and March 30, 2017 the Trustee timely filed Statements of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the Dismissed ET Actions.  *See e.g.*, Statements filed in Luxalpha Proceeding (ECF No. 235); LIF Proceeding (ECF No. 248).

405.    On March 6, 2018, the Bankruptcy Court issued an Order authorizing the issuance of Letters of Request under the Hague Evidence Convention seeking assistance from the Luxembourg Ministry of Justice in obtaining relevant documents from dismissed defendants located in Luxembourg—UBS (Luxembourg) SA, UBS Third Party Management Company SA, UBS Fund Services Luxembourg SA, Access Partners SA, Access Management Luxembourg SA, and Pierre Delandmeter.

406.    During the Report Period, the Trustee has also undergone international discovery efforts, including in the Bahamas and the United Kingdom, to obtain other documents relevant to the Trustee's claims and has undergone analysis and review of documents in connection with the Trustee's international discovery efforts.  The Trustee continued to develop his case against Defendants and relevant parties, analyzed evidence, and conducted legal research as to the Trustee's claims.

### iii.    **Picard v. Kingate**

407.    The Trustee is seeking to avoid and recover over $926,000,000 in initial transfers to the Kingate Funds, and to equitably subordinate their customer claims, on the grounds set forth in the Fourth Amended Complaint filed in *Picard v. Federico Ceretti*, Adv. No. 09-01161 (SMB) (Bankr. S.D.N.Y.) (ECF No. 100).    During the Report Period, the parties devoted substantial time to discovery and resolving discovery-related disputes.

408.    During the Report Period, the Trustee and the Joint Liquidators agreed to extend by three months all deadlines in the Case Management Report.    On June 8, 2018, the Bankruptcy Court entered a Third Amendment to Case Management Report (ECF No. 349) whereby fact discovery was extended to November 30, 2018, subject to further extensions as agreed by the parties or ordered by the Court.

409.    Throughout the Report Period, the Trustee spent the majority of his time on fact discovery, focusing on depositions within the United States as well as abroad.    Depositions of foreign-based witnesses require that the Trustee prepare, file, and serve motions seeking this Court's issuance of Letters of Request to the foreign courts to enable the Trustee to obtain testimony and in certain instances documents from numerous third parties located outside of the United States.

410.    The Trustee conducted numerous depositions of third parties in London pursuant to Letters of Request issued by this Court to the High Court of Justice, Queen's Bench Division, United Kingdom.    The Trustee then applied to that court for an order permitting the examinations to occur. Pursuant to orders obtained from the English court, the Trustee conducted examinations of the following individuals on the following dates: (a) May 23, 2018, Mr. Christopher Peel, (b) May 24, 2018, Mr. Brendan Robertson, (c) May 25, 2018, Mr. Abdallah Rahall, (d) June 12, 2018, Mr. Thomas Healy, (e) June 14, 2018, Mr. William Jenkins, (f) June 20, 2018, Mr.

William Gilmore, (g) June 21, 2018, Mr. Stuart Wall, and (h) September 26, 2018, Mr. Paul Boulton.

411.    On June 5, 2018, the Trustee filed with the Bankruptcy Court his motion for issuance of a Letter Rogatory to the Republic of Ireland seeking discovery in aid of the U.S. avoidance and recovery proceeding, particularly to obtain discovery from Ms. Shazieh Salahuddin.  The Court granted the Trustee's motion by Order dated June 19, 2018 (ECF No. 353).  Ms. Salahuddin's deposition took place on July 25, 2018.

412.    On July 24, 2018, the Trustee filed with the Bankruptcy Court his motion for issuance of a Letter of Request to the Bermuda Supreme Court seeking testimony in aid of the U.S. avoidance and recovery proceeding from Mr. Scott Watson-Brown.  (ECF No. 361).  The Court granted the Trustee's motion by Order dated August 7, 2018 (ECF No. 363), and the Bermuda Supreme Court issued an order giving effect to the Bankruptcy Court's letter of request on August 24, 2018.  The Trustee served the Bermuda Supreme Court's order on Mr. Watson-Brown and is coordinating with his Bermuda counsel to schedule the examination.

413.    On August 9, 2018, the Trustee filed with the Bankruptcy Court his motion for issuance of a Letter of Request to the Bermuda Supreme Court seeking discovery in aid of the U.S. avoidance and recovery proceeding, particularly to obtain discovery from Mr. Andrew Brook.  (ECF No. 364).  The Court granted the Trustee's motion by Order dated September 5, 2018 (ECF No. 368).

414.    On September 14, 2018, the Trustee filed with the Bankruptcy Court his motion for issuance of a Letter of Request to the Republic of France seeking discovery in aid of the U.S. avoidance and recovery proceeding, particularly to obtain discovery from Mr. Julian Henry

Chapman. (ECF No. 369). The Court granted the Trustee's motion by Order dated October 1, 2018 (ECF No. 371).

415. The Trustee also deposed various third parties formerly associated with Tremont Group Holdings, Inc. located within the United States on the following dates: (a) July 18, 2018, Mr. Darren Johnston, (b) August 7, 2018, Ms. Suzanne Hammond, (d) August 15, 2018, Ms. Sandra Manzke, and (e) September 13, 2018, Mr. Robert Schulman.

416. In connection with all of the discovery efforts described above, the Trustee's counsel has coordinated and mutually agreed upon the dates and times of these depositions and the time allocation for direct and cross examination with counsel for the defendants.

417. Throughout the Report Period, in addition to foreign counsel, the Trustee's counsel continued to work with the Trustee's consultants in analyzing documents obtained through discovery that further support the Trustee's claims in the Fourth Amended Complaint against the Kingate Funds.

### iv.    **Picard v. J. Ezra Merkin**

418. The Trustee commenced an adversary proceeding against sophisticated money manager and Madoff associate J. Ezra Merkin ("Merkin"); the investment management company he solely owned, Gabriel Capital Corporation ("GCC"); and his funds, Gabriel Capital, L.P. ("Gabriel Capital"), Ariel Fund Ltd. ("Ariel Fund"), and Ascot Partners, L.P. ("Ascot Partners") (collectively, the "Merkin Defendants"[19]). (ECF No. 212). In his Third Amended Complaint, the Trustee alleged that Merkin knew or should have known that Madoff's investment advisory business ("IA Business") was predicated on fraud. Among other things, the Trustee sought the return of nearly $560 million under SIPA, the Bankruptcy Code, the New York Fraudulent

---

[19] Ascot Fund Ltd. was added as a defendant on August 30, 2014 and will be included in the definition of "Merkin Defendants" for all events after this date.

Conveyance Act, and other applicable law, for preferential and fraudulent transfers that were made by BLMIS to or for the benefit of the Merkin Defendants. *Picard v. J. Ezra Merkin*, Adv. No. 09-01182 (BRL) (Bankr. S.D.N.Y.) (ECF No. 212). The Third Amended Complaint also asserted subsequent transfer claims against Ascot Fund Ltd. ("Ascot Fund"), a Cayman fund controlled by Merkin.

419.    On May 29, 2015, following motions to dismiss, approximately 2 years of discovery and multiple settlement discussions, the Trustee filed a Motion For Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving A Settlement Agreement Between the Trustee, Gabriel Capital, L.P. Ariel Fund LTD., and Bart M. Schwartz as the Appointed Receiver of Gabriel Capital, L.P. and Ariel Fund Ltd (the "Settlement Motion"). (ECF Nos. 266-267). No objections were filed (ECF No. 268), and on June 23, 2015, this Court entered an Order granting the Settlement Motion and approving the settlement agreement between the Trustee, Gabriel Capital, Ariel Fund, and the Ariel/Gabriel Receiver. (ECF No. 270). On September 8, 2015, the Trustee, Gabriel Capital, and Ariel Fund entered into a stipulation dismissing Gabriel Capital and Ariel Fund from the action with prejudice. (ECF No. 282).

420.    Following continued litigation with the remaining defendants Merkin, GCC and Ascot Partners, on January 30, 2017, this Court entered its Decision Granting in Part and Denying in Part Defendants' Motions For Summary Judgment. (ECF No. 327). The Court denied the defendants' motions, with the exception of granting summary judgment dismissing the Trustee's subsequent transfer claims against Ascot Partners, as a result of the Trustee informing the Court that he will no longer be pursuing these claims.

421.    On April 7, 2017, the parties filed their initial motions *in limine* in anticipation of trial, and the parties filed their corresponding oppositions to these motions on May 10, 2017 and reply briefs on June 13, 2017 and July 10, 2017.  (ECF Nos. 332-338, 340-360, 362-376, 384-387, 390-393, 396-398, 400-404, 406).  The defendants also filed a motion *in limine* related to the issue of subsequent transfers on May 17, 2017.  (ECF Nos. 378-380).  The Trustee filed an opposition to this motion on June 13, 2017, and the remaining defendants filed their corresponding reply brief on June 23, 2017.  (ECF Nos. 394-95, 403).

422.    On July 18, 2017 and August 9, 2017, this Court heard oral argument on the motions *in limine*.  (ECF Nos. 408, 413).  At the August 9, 2017 oral argument, the Court made certain rulings based on papers submitted by the parties, the arguments of counsel at the hearing, and the record in this case.

423.    In addition, during oral argument on August 9, 2017, this Court raised issues related to equitable subordination, and the burdens of proof and persuasion at trial for additional briefing by the parties.  The remaining defendants filed a motion *in limine* regarding equitable subordination on August 23, 2017, the Trustee filed his opposition on September 15, 2017, and the remaining defendants filed their reply brief on September 29, 2017.  (ECF Nos. 411, 415, 423).  Thereafter, on September 29, 2017, the parties filed letter briefs regarding the burden of proof and the burden of persuasion at trial.  (ECF Nos. 419, 421).

424.    On December 22, 2017, the Court issued its Memorandum Decision Regarding Motions *In Limine*, addressing the Trustee's motion to exclude the reports and testimony of Jeffrey M. Weingarten (*Trustee's Motion in Limine Number 3 and Memorandum of Law to Exclude the Opinions and Testimony of Jeffrey M. Weingarten,* dated Apr. 7, 2017 (ECF No. 334), and the remaining defendants' motion to exclude the reports and testimony of Dr. Steve

Pomerantz (*Defendants' Memorandum of Law in Support of their Motion in Limine to Exclude the Testimony, Reports, and Declaration of Steve Pomerantz*, dated Apr. 7, 2017 (ECF No. 356), and motion to exclude the reports and testimony of Lisa M. Collura (*Memorandum of Law in Support of Defendants' Motion in Limine to Exclude the Expert Testimony of Lisa M. Collura*, dated May 17, 2017 (ECF No. 379).  (ECF No. 425).

425.    On January 22, 2018, the Court entered an Order Granting Trustee's Motion *In Limine* Number 3 to Exclude the Opinions and Testimony of Jeffrey M. Weingarten (ECF No. 427); an Order Granting In Part and Denying in Part Defendants' Motion *In Limine* to Exclude the Expert Testimony of Lisa M. Collura (ECF No. 428); and an Order Granting In Part and Denying in Part Defendants' Motion *In Limine* to Exclude the Testimony, Reports, and Declaration of Steve Pomerantz (ECF No. 429).

426.    On February 5, 2018, the remaining defendants filed a Joint Motion to Reargue the Court's January 22, 2018 Order Excluding the Opinions and Testimony of Jeffrey M. Weingarten.  (ECF No. 430-32).  On March 1, 2018, the Trustee filed his Memorandum of Law In Opposition to Defendants' Motion to Reargue the Court's January 22, 2018 Order Excluding the Opinions and Testimony of Jeffrey M. Weingarten.  (ECF No. 434-35).  On March 15, 2018, the remaining defendants filed a Reply Memorandum of Law in Support of their Motion to Reargue the Court's January 22, 2018 Order Excluding the Opinions and Testimony of Jeffrey M. Weingarten.  (ECF No. 437-38).  On March 28, 2018, the parties participated in oral argument before this Court in connection with the remaining defendants' motion, which this Court denied.  (ECF No. 443).  During the oral argument, this Court set a trial date of June 18, 2018.

427.    During the Report Period, the Trustee continued to prepare for trial before this Court scheduled for June 18, 2018, including analysis and consideration of the 42 depositions taken in the matter, as well as a final review of relevant documents from the 1.375 million documents produced in the matter.  Simultaneous with trial preparation, the Trustee conducted extensive settlement discussions with the Receiver for Ascot Partners, which ultimately resulted in the negotiation and preparation of a settlement agreement with all of the remaining defendants.

428.    As a result of these efforts, during the Report Period, on June 13, 2018, the Trustee filed a Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between the Trustee and Ascot Partners, L.P., through its Receiver, Ralph C. Dawson, Ascot Fund Limited, J. Ezra Merkin, and Gabriel Capital Corporation.  (ECF No. 450).

429.    On July 3, 2018, the Trustee filed a Certificate of No Objection to Trustee's Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement Agreement Between the Trustee and Ascot Partners, L.P., Through Its Receiver, Ralph C. Dawson, Ascot Fund Limited, J. Ezra Merkin, and Gabriel Capital Corporation.  (ECF No. 452).

430.    On July 3, 2018, after receiving the Certificate of No Objection, the Court entered the Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between the Trustee and Ascot Partners, L.P., through its Receiver, Ralph C. Dawson, Ascot Fund Limited, J. Ezra Merkin, and Gabriel Capital Corporation.  (ECF No. 454).

431.    As part of that settlement, Ascot Partners warranted that the total distributions under the settlement with the Trustee and separately from its settlement of claims brought against it by the New York Attorney General, and any other monies available to the Receiver, do not exceed 100% of Ascot Partners losses in connection with BLMIS.  Upon distributions from the Receiver, Ascot Partners agreed to notify its investors that they may be required to disclose to the Madoff Victim Fund the receipt of such distributions from the Receiver.

432.    As part of that settlement, Ascot Partners agreed to make no distributions resulting from the settlement with the Trustee, either directly or indirectly, to Merkin, Gabriel Capital Corp., or any other person, entity or trust controlled by or for the benefit of Merkin or his immediate family.

433.    The settlement funds were placed into an escrow account with U.S. Bank. On October 19, 2018, US Bank distributed, including interest, $281,372,730.19 to the Trustee and $40,827,469.62 to Ascot Partners' Receiver.

### v.    Picard v. Fairfield Greenwich

434.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma"), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).

435.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95).  On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators.  On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

436.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.  Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.  The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.  Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

437.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.  (ECF No. 107).  In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.  Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

438.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.   The Trustee briefed and presented argument at the hearings on these issues before the District Court.   The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions.

439.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.).   The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.   None of the defendants in the three actions have responded yet to the Trustee's complaints.

440.    On November 6, 2012, in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.   *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (S.D.N.Y.), (ECF No. 997).   On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement.   *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), (ECF No. 2).   On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.   (ECF No. 11).   On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, No. 12 Civ. 9408 (VM)

(S.D.N.Y.), (ECF No. 30). On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the *Anwar* settlement. (ECF No. 59). On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the Trustee's application for an injunction against the implementation of the *Anwar* settlement. (ECF No. 61).

441.    On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the *Anwar* action. (ECF No. 1054). On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request. (ECF No. 1071). On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the *Anwar* action. (ECF. No. 1106).

442.    Briefing on both appeals of the *Anwar* decisions was completed on June 7, 2013. Oral argument on the appeals occurred on October 10, 2013. On August 8, 2014, the Second Circuit denied the Trustee's request for an injunction. (ECF No. 181).

443.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section IX(B)(iii). Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision. Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit. On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the

extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.,* No. 17-1294 (2d Cir.),
(ECF No. 388). *See* discussion *supra* Section IX(B)(iii).

444.    On April 7, 2017, following his death, the Trustee dismissed his claims against
defendant Charles Murphy. (ECF No. 238). On April 19, 2017, the Trustee dismissed his claims
against defendant FG Investors, Inc., an entity owned by Charles Murphy, in the *Barrenche*
action. (ECF No. 106).

445.    As of March 31, 2018, the parties are determining the process to comply with the
Omnibus Order to schedule the response dates to the Trustee's complaints as to those claims not
dismissed by the extraterritoriality motion to dismiss decision.

446.    On June 20, 2016, the Joint Liquidators filed a motion with this Court in the
Fairfield Funds Chapter 15 proceedings to approve the assignment of the Fairfield Funds' claims
against certain management individuals and entities as included in the settlement between the
Trustee and the Joint Liquidators that was previously approved by this Court. *In re Fairfield
sentry Limited, et al.,* Adv. No. 10-13164 (SMB). (ECF No. 805). On July 5, 2016, the Trustee
filed a memorandum in support of the motion. (ECF No. 810). On July 5, 2016, two Fairfield
Fund investors filed an objection to the motion. (ECF No. 809). On July 12, 2016, this Court
held a hearing on the Joint Liquidators' motion. On March 22, 2017, this Court issued its
decision denying the motion without prejudice and further noting it was unclear whether a
motion was required to make the assignment.

**vi.    Picard v. Rye/Tremont**

447.    On December 7, 2010, the Trustee commenced an action against Tremont Group
Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund,
and numerous other entities and individuals (collectively, the "Tremont Funds") in which the
Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Tremont Funds (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.).

448.    After the court filing, the parties entered into substantive settlement negotiations. On September 22, 2011, this Court approved a settlement between the Trustee and more than a dozen domestic and foreign investment funds, their affiliates, and a former chief executive associated with Tremont Group Holdings, Inc. (collectively, "Tremont") in the amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. No. 10-05310 (SMB) (Bankr. S.D.N.Y.), (ECF No. 38). (There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio")).

449.    Pursuant to the settlement, Tremont delivered $1.025 billion into an escrow account which, as noted below, subsequently was placed into the Customer Fund, and the Trustee allowed certain customer claims related to Tremont in the approximate amount of $2.9 billion. Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. This Court entered an Order Granting Trustee's Motion for Entry of Order Approving Agreement. (ECF No. 38).

450.    As stated above, Tremont delivered $1.025 billion into an escrow account on November 6, 2012. The settlement payment was released from the escrow account to the Trustee on February 8, 2013. Accordingly, the Trustee allowed certain customer claims related to Tremont.

451.    On February 10, 2012, XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010 by the

Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.,* Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al,* Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

452.    On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled and had approved the latter action. Upon the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

453.    Subsequent to the dismissal of the Maxam and Tremont cases, strategy and investigation for proposed actions and amended pleadings against subsequent transferees has continued. This includes the depositions of several former officers and employees of Tremont Group Holdings in connection with the Trustee's subsequent transferee action, *Picard v. Federico Ceretti, et al*, Adv. Proc. No. 09-01161. In addition, work continues related to establishing elements of actual knowledge or willful blindness of some of the proposed defendants, analysis consistent with recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself.

## X.    INTERNATIONAL INVESTIGATION AND LITIGATION

454.    The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining

international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Bermuda, Cayman Islands, France, Israel, and the United Kingdom, among others.

455.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

## A.    <u>Austria</u>

456.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction.

## B.    <u>Bermuda</u>

457.    The Trustee is actively investigating various BLMIS-related entities, their officers and directors, and transfers of funds to and through Bermuda. The Trustee also continues to actively monitor third party legal proceedings taking place in Bermuda that involve several BLMIS-related entities.

## C.    <u>BVI</u>

458.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme. In particular, the Trustee has investigated and filed active complaints in the Bankruptcy Court against several BVI-based defendants, including Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd.

## D.    <u>Cayman Islands</u>

459.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

### E.    England

460.    The Trustee currently has protective claims pending in England against Kingate-related individuals and entities and against HSBC and related entities.

### F.    France

461.    The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France.

### G.    Ireland

462.    The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland.

### H.    Israel

463.    The Trustee is pursuing an avoidance and recovery claim against certain Israeli defendants who received fictitious profits from BLMIS.  In addition, in 2015, the Trustee filed two separate actions in Israel under Israeli law.  See discussion *supra* in Section IX(D).

### I.    Liechtenstein

464.    The trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

### J.    Switzerland and Luxembourg

465.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals.  The Trustee also continues to monitor certain BLMIS-related third party actions currently pending in these jurisdictions.

## XI.    FEE APPLICATIONS AND RELATED APPEALS

### A.    Objections to Prior Fee Applications

466.    Objections were filed to six of the twenty-four fee applications submitted by the Trustee and B&H.  Discussions of the objections to the first through sixth fee applications, and related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee applications and overruling those objections, are discussed more fully in the Trustee's Amended Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66 (ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529).  No decision has been entered on the motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.).  The motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG) (S.D.N.Y.), (ECF No. 9).

### B.    Twenty-Sixth Fee Application

467.    On March 15, 2018, the Trustee and his counsel filed the Twenty-Sixth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from August 1, 2017 through and including November 30, 2017 with the Bankruptcy Court.  (ECF No. 17337).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 17337, 17345, 17349, 17354, 17355 and 17356).  A hearing was held on April 25, 2018, and an Order was entered granting the Applications on April 26, 2018 (ECF No. 17524).

### C.    Twenty-Seventh Fee Application

468.    On July 13, 2018, the Trustee and his counsel filed the Twenty-Seventh Application for Interim Compensation for Services Rendered and Reimbursement of Actual and

Necessary Expenses incurred from December 1, 2017 through and including March 31, 2018 with the Bankruptcy Court.  (ECF No. 17763).  Special counsel and international special counsel also filed applications for Interim Professional Compensation.  (ECF Nos. 17764 – 17784).  A hearing was held on August 29, 2018, and an Order was entered granting the Applications on August 30, 2018 (ECF No. 17941).

## XII.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the

material events that have occurred through September 30, 2018, unless otherwise indicated.  This

Report will be supplemented and updated with further interim reports.


Dated:  New York, New York
        October 31, 2018

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and the Estate of Bernard L. Madoff*

*Trustee f or the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Estate of*
*Bernard L. Madoff*

126