# Exhibit C

Page 386

1              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF NEW YORK
2

3
         In re:                      )
4                                    )
         SECURITIES INVESTOR         )
5        PROTECTION CORPORATION,     )
                                     )
6            Plaintiff-Applicant,    )
                                     )
7        vs.                         )  08-01789 (SMB)
                                     )
8        BERNARD L. MADOFF           )
         INVESTMENT SECURITIES, LLC, )
9                                    )
             Defendant.              )
10                                   )
                                     )
11       In re:                      )
                                     )
12       BERNARD L. MADOFF,          )
                                     )
13           Debtor.                 )
                                     )
14

15                   CONFIDENTIAL

16            Videotaped Deposition of BERNARD L.

17       MADOFF, VOLUME III, taken on behalf of the

18       Customers, before K. Denise Neal, Registered

19       Professional Reporter and Notary Public, at the

20       Federal Correctional Institution, 3000 Old Highway

21       75, Butner, North Carolina, on the 8th day of

22       November, 2017, commencing at 9:00 a.m.

23

24

25                        * * * * *

CONFIDENTIAL

Page 387

1    APPEARANCES OF COUNSEL:

2

3       On Behalf of the Customers:

4             HELEN DAVIS CHAITMAN, Esq.

5             Chaitman, LLP

6             465 Park Avenue

7             New York, New York   10022

8             (908) 303-4568

9             hchaitman@chaitmanllp.com

10

11       On Behalf of Sage Associates, Sage Realty,

12       Malcolm Sage, Martin Sage and Ann Passer Sage

13             ANDREW B. KRATENSTEIN, Esq.

14             McDermott Will & Emery, LLP

15             340 Madison Avenue

16             New York, New York   10173-1922

17             (212) 547-5695

18             akratenstein@mwe.com

19

20

21

22

23

24

25

CONFIDENTIAL

**Page 388**

1    APPEARANCES OF COUNSEL:

2

3        On Behalf of the Trustee:

4            AMANDA E. FEIN, Esq.

5            STACY DASARO, Esq.

6            Baker Hostetler

7            45 Rockefeller Plaza

8            New York, New York  10111-0100

9            (212) 589-4621

10           afein@bakerlaw.com

11

12       On Behalf of the Deponent:

13           PETER A. GOLDMAN, Esq.

14           12 Fairlawn Parkway

15           Rye Brook, New York  10573

16           (914) 935-6857

17           pagoldman@gmail.com

18

19       Videographer:

20           Bob Collier, CLVS

21

22                        *  *  *  *  *

23

24

25

CONFIDENTIAL

Page 389

1                        CONTENTS

2    THE WITNESS:  BERNARD L. MADOFF        EXAMINATION

3           BY MR. KRATENSTEIN              395

4

5                      * * * * *

6

7                    INDEX OF EXHIBITS

8    FOR THE CUSTOMERS:                     PAGE

9    Exhibit Number 32, Client activity      403

10      document

11   Exhibit Number 33, House 17 cash and    405

12      securities for settlement - 12-13-79

13   Exhibit Number 34, Maurice Sage Trust   412

14      account statement - 3-31-80

15   Exhibit Number 35, House 5 cash and     408

16      securities for settlement - 5-16-96

17   Exhibit Number 36, Maurice Sage Trust   414

18      account statement - 6-30-81

19   Exhibit Number 37, Maurice Sage Trust   416

20      account statement - 12-31-81

21   Exhibit Number 38, Month-end statement  417

22      - 1-31-83

23   Exhibit Number 39, Ledger - 1-31-83     419

24   Exhibit Number 40, Maurice Sage Trust   420

25      statement - 6-30-86

CONFIDENTIAL

Page 390

1                    INDEX OF EXHIBITS (Continued)

2    FOR THE CUSTOMERS:                              PAGE

3    Exhibit Number 41, Sage Realty statement      422

4       - 5-31-94

5    Exhibit Number 42, Sage Realty statement      423

6       - 12-31-96

7    Exhibit Number 43, Sage Realty statement      424

8       - 1-31-97

9    Exhibit Number 44, Sage Realty statement      428

10      - 7-31-94

11   Exhibit Number 45, House 17 stock            429

12      record summary

13   Exhibit Number 46, National Westminster      433

14      Bank activity report - 5-31-85

15   Exhibit Number 47, Letter from Maurice       436

16      Sage

17   Exhibit Number 48, Sage Associates           440

18      statement - 11-30-01

19   Exhibit Number 49, Sage Associates           441

20      statement - 11-30-01

21   Exhibit Number 50, Sage Associates           442

22      statement

23   Exhibit Number 51, Confirmation of           442

24      transaction

25

CONFIDENTIAL

1               INDEX OF EXHIBITS (Continued)

2     FOR THE CUSTOMERS:                           PAGE

3     Exhibit Number 52, Confirmation of          442

4        transaction

5     Exhibit Number 53, Memorandum of            442

6        transaction and confirmation

7     Exhibit Number 53A, Credit memorandum       487

8     Exhibit Number 54, Memorandum of            444

9        transaction and confirmation

10    Exhibit Number 55, Memorandum of            447

11       transaction and confirmation

12    Exhibit Number 56, Memorandum of            448

13       transaction and confirmation

14    Exhibit Number 57, Sage Associates II       449

15       statement

16    Exhibit Number 58, Sage Associates II       450

17       statement

18    Exhibit Number 59, Sage Associates II       451

19       memorandum of transaction and confirms

20    Exhibit Number 60, Sage Associates II       451

21       memorandum of transaction and confirms

22    Exhibit Number 61, Letter                   452

23    Exhibit Number 62, Sage Associates          456

24       statement

25

CONFIDENTIAL

Page 392

1                 INDEX OF EXHIBITS (Continued)

2     FOR THE CUSTOMERS:                          PAGE

3     Exhibit Number 63, Sage Associates          458

4        statement

5     Exhibit Number 64, Exhibit inadvertently    ---

6        skipped

7     Exhibit Number 65, Maurice S. Sage          458

8        Foundation statement

9     Exhibit Number 66, Memorandum of            459

10       transaction and confirmation

11    Exhibit Number 67, Memorandum of            459

12       transaction and confirmation

13    Exhibit Number 68, Memorandum of            459

14       transaction and confirmation

15    Exhibit Number 69, Letter from Malcolm      459

16       Sage

17    Exhibit Number 70, Sage Associates          462

18       statement - 1-31-03

19    Exhibit Number 71, Confirmations            463

20    Exhibit Number 72, Confirmations            463

21    Exhibit Number 73, Letter from Malcolm      464

22       Sage

23    Exhibit Number 74, Sage Associates          467

24       statement - 12-31-03

25

CONFIDENTIAL

Page 393

1              INDEX OF EXHIBITS (Continued)

2    FOR THE CUSTOMERS:                          PAGE

3    Exhibit Number 75, Sage Associates          468

4       statement - 12-31-03

5    Exhibit Number 76, Confirmations            469

6    Exhibit Number 77, Confirmations            469

7    Exhibit Number 78, Confirmations            469

8    Exhibit Number 79, Confirmations            469

9    Exhibit Number 80, Sage Associates II       469

10      Statement - 12-31-03

11   Exhibit Number 81, Sage Associates II       469

12      Statement - 12-31-03

13   Exhibit Number 82, Confirmation             470

14   Exhibit Number 83, Memorandum of check      471

15   Exhibit Number 84, Handwritten note         471

16   Exhibit Number 85, Letter from Malcolm      474

17      Sage

18   Exhibit Number 86, Sage Associates          475

19      Statement - 4-30-06

20   Exhibit Number 87, Confirmations            475

21   Exhibit Number 88, Letter from Malcolm      476

22      Sage

23

24

25

CONFIDENTIAL

Page 394

1              THE VIDEOGRAPHER:  We are now on the

2      record.  Please note that the microphones are

3      sensitive and may pick up whispering and private

4      conversations.  Please turn off all cell phones or

5      place them away from the microphones as they can

6      interfere with the deposition audio.  Recording will

7      continue until all parties agree to go off the

8      record.  My name is Bob Collier representing

9      Veritext Legal Solutions.

10              Today's date is November 8th, 2017 and the

11      time is approximately 9:00 a.m.  This video

12      deposition is being held at Butner Federal

13      Correction Facility located at 3000 Old 75 Highway,

14      Butner, North Carolina and is being taken by counsel

15      for the Plaintiff-Applicant.  The caption of this

16      case is Securities Investor Protection Corporation,

17      Plaintiff-Applicant v. Bernard L. Madoff Investment

18      Securities, LLC, Defendant.

19              This case is being held in the United

20      States Bankruptcy Court, Southern District of New

21      York, Case Number 08-01789 (SMB).  The name of the

22      witness is Bernard L. Madoff.  At this time the

23      attorneys present in the room and everyone attending

24      remotely will identify themselves and the parties

25      they represent.  Our court reporter is Denise Neal

CONFIDENTIAL

Page 395

1    representing Veritext Legal Solutions.

2              MR. KRATENSTEIN:  Good morning.  Andrew

3    Kratenstein from McDermott Will & Emery, LLP

4    representing Malcolm Sage individually as well as

5    the representative of his mother Lillian's estate,

6    Martin Sage, Ann Passer Sage, Sage Associates and

7    Sage Realty.

8              MS. CHAITMAN:  Helen Davis Chaitman on

9    behalf of a number of different Defendants.

10             MR. GOLDMAN:  Peter Goldman on behalf of

11   Bernard L. Madoff.

12             MS. DASARO:  Stacy Dasaro on behalf of the

13   Trustee.

14             MS. FEIN:  Amanda Fein, Baker Hostetler,

15   on behalf of the Trustee.

16             THE VIDEOGRAPHER:  Will the court

17   reporter, Denise Neal, please swear in the witness

18   and we can proceed.

19                      BERNARD L. MADOFF,

20   having been first duly sworn, was examined and

21   testified as follows:

22                      EXAMINATION

23   BY MR. KRATENSTEIN:

24        Q.  Good morning, Mr. Madoff.

25        A.  Morning.

CONFIDENTIAL

Page 396

1        Q.  Are you on any medication or is there any

2    other reason that you cannot give truthful testimony

3    today?

4        A.  I'm on medication, but it won't interfere

5    with my testimony.

6        Q.  You believe you can give full and complete

7    truthful testimony?

8        A.  I do.

9        Q.  Thank you.  As I mentioned at the outset, I

10   represent the Sages, Martin Sage, Malcolm Sage, Ann

11   Passer Sage, as well as two entities with which

12   they're affiliated, Sage Associates and Sage Realty.

13   Do you recall the Sage family?

14       A.  Yes.

15       Q.  The Sage family were customers of yours?

16       A.  Yes.

17       Q.  How did they come to be your customers?

18       A.  You know, through my father-in-law.

19       Q.  Do you recall somebody named Maurice Sage?

20       A.  Excuse me?

21       Q.  Maurice Sage, do you remember him?

22       A.  Yes, uh-huh.

23       Q.  Who was he?

24       A.  He was the father of the three children.

25       Q.  Martin, Malcolm and Ann?

CONFIDENTIAL

Page 397

1        A.   Right.

2        Q.   And was Mr. Maurice Sage a customer of

3   yours?

4        A.   Yes.

5        Q.   How did he come to be your customer?

6        A.   The same way, through my father-in-law.

7        Q.   Could you describe how that happened?

8        A.   I had a lot of my father-in-law's clients.

9   He was their accountant.

10       Q.   And just for the record, your

11   father-in-law's name was?

12       A.   Paul Alpern.

13       Q.   When did as best you can recall Maurice

14   Sage become a customer of yours?

15       A.   Probably in the '60s.

16       Q.   And do you recall Maurice Sage passing

17   away?

18       A.   Yes.

19       Q.   What do you recall of that?

20       A.   I think he had a heart attack while giving

21   a speech at a charitable dinner.

22       Q.   Do you recall when that was approximately?

23       A.   No.

24       Q.   And would 1976 sound about right?

25       A.   Yes.

CONFIDENTIAL

Page 398

1          Q.   And is it correct that after he died his

2     wife, Lillian, and his children, Malcolm, Martin and

3     Ann, were customers of yours through various

4     accounts that they held with your firm?

5          A.   Yes.

6          Q.   Do you recall that one of those accounts

7     was called Sage Associates?

8          A.   Correct.

9          Q.   Another account was called Sage Realty?

10         A.   Correct.

11         Q.   Do you recall that they had various other

12    accounts such as Maurice Sage Trust, Sage Associates

13    II, MMRN and the Maurice Sage Foundation?

14         A.   Yes.

15         Q.   You've previously testified that your fraud

16    started in 1992; correct?

17         A.   Correct.

18         Q.   The Sages became your customers well before

19    your fraud started; correct?

20         A.   Correct.

21         Q.   Any trading you would have done in their

22    accounts before at least 1992 would have been real

23    trades that were actually executed?

24         A.   Correct.

25              MS. FEIN:   Objection to form.

CONFIDENTIAL

Page 399

1          Q.   (By Mr. Kratenstein)   You've also testified

2     previously that all of your convertible bond

3     arbitrage trading was real; is that correct?

4          A.   Correct.

5          Q.   So any convertible bond arbitrage trading

6     you did in any of the Sages' accounts at any time

7     including the Sage Realty account would have been

8     real trades that were actually executed by your

9     firm?

10         A.   Correct.

11              MS. FEIN:   Objection to form.

12         Q.   (By Mr. Kratenstein)   Is it correct that

13    your fraud was limited to what is known as the split

14    strike trading?

15         A.   Correct.

16         Q.   Do you recall having meetings with the

17    Sages at your offices?

18         A.   Yes.

19         Q.   What do you recall of your meetings with

20    the Sages?

21         A.   I don't recall the dates, but it was in the

22    latter years, probably in 2000, something like that.

23         Q.   Was this when you were in the Lipstick

24    Building?

25         A.   Yes.

CONFIDENTIAL

Page 400

1       Q.  Do you recall any of the substance of those

2   meetings?

3       A.  They wanted to change their style of

4   trading where they were going to direct the trades.

5       Q.  What do you mean by direct the trades?

6       A.  In other words, they would give

7   instructions to me what they wanted to buy and what

8   they wanted -- and when they wanted to sell it and

9   so on.

10      Q.  Was that atypical?

11      A.  Yes.

12      Q.  How so?

13      A.  That was the general rule was we handled

14  all of the decision making for the clients, limited,

15  limited decision making.  Basically, there's a

16  definition of discretionary accounts in the

17  securities industry where discretion is limited --

18  discretion is limited to time and price of a

19  security.

20          That's not considered discretion.  It's

21  only when you give them -- when you make the

22  decision to what security to buy and sell that it

23  becomes a full discretionary account.  That's an SEC

24  regulation.

25      Q.  And so could you just expand on that and

CONFIDENTIAL

Page 401

1    explain how the Sages were different than your

2    discretionary customers?

3            A.   Well, they basically didn't have a

4    particular strategy that was one of our specialties,

5    which would have been convertible securities trading

6    or split strike conversion, which happened in the

7    later years.

8            Q.   And so they directed you on to whether to

9    buy or sell specific securities?

10           A.   Yes.

11           Q.   That was unusual?

12           A.   Yes.

13           Q.   Most of your customers were by that time in

14   split strike?

15           A.   Yes.

16           Q.   Did the -- do you recall anything else of

17   your meetings with them?

18           A.   What was the question?

19           Q.   Do you recall anything else of your

20   meetings with the Sages?

21           A.   Not particularly, no.

22           Q.   Would you meet with all three Sages, in

23   other words, Malcolm, Martin and Ann?

24           A.   Yes.

25           Q.   And would one of them do talking more than

CONFIDENTIAL

Page 402

1    the other two?

2         A.   Basically, Malcolm Sage.

3         Q.   Okay.  Did the Sages deal with anybody else

4    at your firm such as Annette Bongiorno?

5         A.   Probably, yes.

6         Q.   Why do you say probably yes?

7         A.   Because she was on a different floor, so

8    I'm not aware of when the conversation took place;

9    but she was the head bookkeeper, so normally she

10   would follow the instructions of what the client

11   gave her on certain -- in certain instances.

12        Q.   Would you recognize Ms. Bongiorno's

13   handwriting?

14        A.   Not really.

15        Q.   Well, we may see it later and we'll see if

16   you can recognize her handwriting.  I take it you'd

17   have occasion to see her handwriting at work

18   sometimes; is that correct?

19        A.   Yes.

20        Q.   What was Ms. Bongiorno's exact role with

21   respect to the Sage accounts?

22        A.   She primarily handled all of the retail

23   clients' accounts.

24        Q.   And that would include the Sages?

25        A.   Yes.

CONFIDENTIAL

Page 403

1       Q.   And how do you define the retail clients?

2       A.   Not an institution.

3       Q.   Not an institution?

4       A.   Right.

5       Q.   Okay.  To your knowledge did she maintain a

6   file for each customer's account?

7       A.   Yes.

8       Q.   To your knowledge would she maintain client

9   correspondence in those files?

10      A.   Yes.

11           (Exhibit Number 32 was marked for

12   identification.)

13      Q.   (By Mr. Kratenstein)  We talked about one

14   of the accounts earlier, one that's called the

15   Maurice Sage Trust.  I'm going to show you a

16   document that we've marked as Exhibit 32.  Put that

17   in front of you.  Mr. Madoff, do you recognize this

18   document?

19      A.   Yes.

20      Q.   What is it?

21      A.   It's clients account document listing the

22   activity in the account.

23      Q.   Do you see at the top it's dated

24   December 31, 1979?

25      A.   Uh-huh, yes.

Page 404

1        Q.   You see it's for the Maurice Sage Trust

2   account?

3        A.   Yes.

4        Q.   Were documents like these be generated on

5   or around the date indicated in the top left corner?

6        A.   Yes.

7        Q.   And was it ordinary practice of your

8   business to generate accounts like -- I'm sorry --

9   statements like this?

10       A.   Correct.

11       Q.   Do you know where statements like this

12  would be stored after they were generated?

13       A.   Usually, you know, in the bookkeeping

14  department.

15       Q.   And so documents of this type would be

16  maintained under your firm's custody and control?

17       A.   Yes.

18       Q.   Looking now at the specific activity in the

19  account, do you see in the middle of the page that

20  there are several securities that are marked as

21  having been received, Dr. Pepper, Asarco, Alcan,

22  American Telephone & Telegraph, Skyline, Kaiser?

23       A.   Yes.

24       Q.   RCA, Central Penn, Reynolds and more

25  Skyline?  Do you see that?

CONFIDENTIAL

Page 405

1          A.   Uh-huh.

2          Q.   So when it says RECD, what does that mean?

3          A.   Means the security was received into the

4     account.

5          Q.   Does that mean that the client would have

6     physically delivered a security to you?

7          A.   Usually, unless it was received from a bank

8     or another brokerage firm.

9          Q.   And then do you see above those entries

10    there are various credits also for those various

11    securities?

12         A.   Those are sales transactions.

13         Q.   And then the proceeds of the sales are

14    shown on the account?

15         A.   Correct.

16         Q.   Would these have been real receipts of the

17    securities, receipts of real securities?

18         A.   Yes.

19         Q.   Would the sales have been real sales of

20    those securities?

21         A.   Yes.

22              MS. FEIN:  Objection.

23              (Exhibit Number 33 was marked for

24    identification.)

25         Q.   (By Mr. Kratenstein)  Let's go to -- you

CONFIDENTIAL

Page 406

1   can put that document aside.  I'm going to show you

2   another document which we've marked as Exhibit

3   Number 33.

4           MS. FEIN:  Thanks.  We can take just one.

5       Q.  (By Mr. Kratenstein)  Okay.  Mr. Madoff, do

6   you recognize what we've marked as Exhibit 33?

7       A.  Yes.

8       Q.  What is it?

9       A.  It shows movement of monies into an

10  account.

11      Q.  You see on the top it's called house number

12  17 cash and securities for settlement?

13      A.  Uh-huh.

14      Q.  Dated December 13th, 1979?

15      A.  Yes.

16      Q.  Do you see that?

17      A.  Uh-huh.

18      Q.  What is a cash and securities for

19  settlement statement?

20      A.  It just shows the movement of securities.

21      Q.  From where to where?

22      A.  From other brokerage firms, from the client

23  themself, come from a number of sources.

24      Q.  And would reports like this have been

25  generated in the ordinary course of your firm's

CONFIDENTIAL

1   business?

2        A.   Correct.

3        Q.   And would a report like this have been

4   printed out on or around the date indicated at the

5   top, in this case, December 13th, 1979?

6        A.   Correct.

7        Q.   And was it a regular part of your firm's

8   business to keep and maintain records of this type?

9        A.   Yes.

10        Q.   Do you know where records like this would

11   have been maintained?

12        A.   Where they would have been?

13        Q.   Yeah, yes.

14        A.   The same place.  They were on the firm's

15   premises.

16        Q.   Thank you.  Do you know how often reports

17   such as this, these cash and securities for

18   settlement reports, would be run by your firm?

19        A.   Probably either the end of the week, the

20   end of the month or end of the quarter.  I'm not

21   sure.

22        Q.   Okay.  This one is a house 17 cash and

23   securities for settlement report.  Do you see that?

24        A.   Yes.

25        Q.   Were similar reports run for house five, in

CONFIDENTIAL

Page 408

1    other words, are there house five cash and

2    securities for settlement reports?

3        A.   That would represent typically market

4    making or proprietary trading, not for clients,

5    which are the firm's principal account.

6        Q.   So is the answer to my question yes, that

7    there would be cash and securities for settlement

8    statements for house five?

9        A.   Yes.

10       Q.   I'm going to mark --

11       A.   I'm assuming.

12       Q.   Well, I'll show you one.  Here's Exhibit --

13   that's 33.  Wait a minute.  34.  You know what?

14   This will be 35.  I'm going to come back to 34.

15           MS. FEIN:  Okay.

16           MR. KRATENSTEIN:  Sorry.

17           (Exhibit Number 35 was marked for

18   identification.)

19           MS. FEIN:  Thank you.

20           MS. CHAITMAN:  Thank you.

21       Q.   (By Mr. Kratenstein)  Do you see that what

22   we've marked as Exhibit 35 is a house five cash and

23   securities for settlement statement dated in this

24   case May 16th, 1996?  Do you see that?

25       A.   Yes.

CONFIDENTIAL

Page 409

1          Q.   And so is this the equivalent, I appreciate

2     it's for a different date, but it's the equivalent

3     of the type of report we see in Exhibit 33 for house

4     17, cash and securities for settlement?

5          A.   I'm assuming so.

6          Q.   Okay.  And do you know how often these

7     house five cash and securities for settlement

8     statements would be run?

9          A.   No.  I'm not.

10          Q.   They would be run periodically, though?

11          A.   Yes.

12          Q.   This is a house five statement.  So would

13     the transactions on the house five statement be real

14     transactions?

15          A.   Yes.

16          Q.   And for house 17 at a time like Exhibit 33,

17     which is December 13th, 1979, would those all be

18     real transactions?

19               MS. FEIN:  Objection to form.

20               THE WITNESS:  Yes.

21          Q.   (By Mr. Kratenstein)  Sorry.  Your answer

22     was?

23          A.   Yes.

24          Q.   Thank you.  To your knowledge did your firm

25     ever stop running cash and securities for settlement

CONFIDENTIAL

Page 410

1    reports for either house 5 or house 17 during the

2    course of your business?

3         A.   I assume not.

4         Q.   Turning back to Exhibit Number 33, if you

5    turn -- there are Bates numbers in that corner.  If

6    you turn to the one that ends in 9381, look at that

7    corner.  Would you like me to do it for you?  Here,

8    turn it for you.

9              MS. CHAITMAN:  What page was that?

10             MR. KRATENSTEIN:  9381.

11             MS. CHAITMAN:  Okay.

12        Q.   (By Mr. Kratenstein)  If you look at the

13   bottom of page 9381, do you see the transactions

14   that we saw in Exhibit Number -- in the prior

15   exhibit, Exhibit Number 32 and 33, which were the

16   delivery of the various securities into the Maurice

17   Sage Trust account and then the sales of those

18   securities?

19        A.   Yes.

20        Q.   And those were at the bottom of the page

21   there?

22        A.   Uh-huh.

23        Q.   Sorry.  That's a yes?

24        A.   Yes.

25        Q.   And they show up on the cash and securities

CONFIDENTIAL

Page 411

1    for settlement statements dated December 13th, 1979;

2    correct?

3            A.   Yes.

4            Q.   And these are all real positions?

5            A.   Yes.

6            Q.   And the sales were real?

7            A.   Yes.

8            Q.   If you turn in a few more pages and I'll

9    just take it and turn to the page, to page 00709388,

10   looking at that page, Mr. Madoff, do you see there's

11   an entry there for National Bank of America, 160

12   Broadway at the bottom of the page?

13           MS. FEIN:  Objection to form.

14           Q.   (By Mr. Kratenstein)   Under National Bank

15   of America?

16           A.   Yes.

17           Q.   And do you see under National Bank of

18   America it indicates sales of the securities we were

19   just talking about starting with Asarco?  Do you see

20   that?

21           A.   Yes.

22           MS. FEIN:  Objection to form.

23           Q.   (By Mr. Kratenstein)   Do you understand

24   what these entries mean?

25           A.   It means these are just sale transactions.

CONFIDENTIAL

Page 412

1   Whose account is this for?  Oh, this is a cash to

2   securities account.  It would be transactions that

3   were made through National Bank of North America.

4        Q.  Does that mean that these securities were

5   sold to National Bank of North America?

6        A.  Probably correct, either sold through them

7   as an agent for other brokerage.  I'm not sure.

8        Q.  Okay.  Would these have been real sales?

9        A.  Yes.

10          MS. FEIN:  Objection to form.

11          MR. KRATENSTEIN:  I'm going to take these

12   documents and put them aside.

13          MS. FEIN:  Andrew, just the name here, I

14   think you were using National Bank of America.

15          THE WITNESS:  It's National Bank of North

16   America.

17          MR. KRATENSTEIN:  I thought I said

18   National Bank of North America, but if I didn't, I

19   stand corrected.  Thank you.

20          (Exhibit Number 34 was marked for

21   identification.)

22          MS. CHAITMAN:  Is this 34?

23          MR. KRATENSTEIN:  Yeah.  This is 34.  I

24   apologize.  We're going out of order.  This is

25   Exhibit Number 34.

CONFIDENTIAL

Page 413

1          Q.   (By Mr. Kratenstein)   Mr. Madoff, do you

2     recognize this document?

3          A.   Yes.

4          Q.   What is it?

5          A.   It's the Maurice Sage Trust account.

6          Q.   And this is dated March 31, 1980; correct?

7          A.   Uh-huh.

8          Q.   Sorry.   That's a yes?

9          A.   Yes.

10         Q.   And, again, like the other Maurice Sage

11    Trust document that we saw, account document, this

12    would have been generated in the ordinary course of

13    your firm's business?

14         A.   Correct.

15         Q.   And do you see that it shows in the middle

16    of the page the receipt of an RCA Corp convertible

17    bond and then two American Telephone & Telegraph?

18         A.   Right.

19         Q.   Two American Telephone & Telegraph

20    securities?

21         A.   Correct.

22         Q.   And would those have been receipts -- is

23    that what received means, received the securities?

24         A.   Right, yes.

25         Q.   Would these have been real transactions?

CONFIDENTIAL

Page 414

1          A.  Yes.

2               MR. KRATENSTEIN:  You can put that

3     document aside.

4               (Exhibit Number 36 was marked for

5     identification.)

6          Q.  (By Mr. Kratenstein)  I'm showing you

7     what's been marked as Exhibit Number 36.  Let me see

8     this for a second.  That's the first page.  Just a

9     second.  Do you have two pages?

10              MS. FEIN:  We have one.

11              MR. KRATENSTEIN:  There's the next one.

12              MS. FEIN:  Thank you.

13         Q.  (By Mr. Kratenstein)  I'm showing you

14    what's been marked as Exhibit Number 36.

15              MS. CHAITMAN:  Thank you.

16         Q.  (By Mr. Kratenstein)  And do you see that,

17    Mr. Madoff, this is another Maurice Sage Trust

18    statement, this one from June 30th, 1981?

19         A.  Correct.

20         Q.  And like the other Maurice Sage Trust

21    account documents, this would have been generated in

22    the ordinary course of your firm's business?

23         A.  Yes.

24         Q.  You see it shows the sale of in the middle

25    of the page American Telephone & Telegraph?

CONFIDENTIAL

Page 415

1      A.   Yes.

2      Q.   Would that have been a real transaction?

3      A.   Yes.

4           MS. FEIN:  Objection to form.

5      Q.   (By Mr. Kratenstein)  Sorry.  I'll ask it

6   again.  Would that have been a real transaction?

7           MS. FEIN:  Objection to form.

8           THE WITNESS:  Yes.

9           MS. FEIN:  I'm just objecting to your use

10  of the term real.

11          MR. KRATENSTEIN:  Real.

12          MS. FEIN:  We didn't define real, but

13  you've been using it frequently.

14     Q.   (By Mr. Kratenstein)  When I say -- when I

15  say a real transaction, what do you understand me to

16  be meaning?

17     A.   Let's assume a legitimate transaction where

18  we actually buy or sell the securities.

19          MR. GOLDMAN:  That actually took place?

20          THE WITNESS:  Hmm?

21          MR. GOLDMAN:  That actually took place?

22          THE WITNESS:  Yes.

23     Q.   (By Mr. Kratenstein)  So when we say real,

24  and you understand for all the prior questions I

25  asked you about real transactions --

CONFIDENTIAL

Page 416

1          A.   Correct.

2          Q.   -- we were talking about an actual purchase

3    or sale of a security or delivery of a security that

4    actually took place?

5          A.   Can't you just make the assumption if I

6    state that all the transactions prior to 1992 were

7    real transactions or are we going to go through this

8    whole charade of back and forth?

9               (Exhibit Number 37 was marked for

10   identification.)

11         Q.   (By Mr. Kratenstein)  Well, I do want to

12   get into -- and I don't mean to go through a

13   charade.  I just want to get through the documents

14   quickly, which I will quickly.  I'm almost done with

15   these --

16         A.   Okay.

17         Q.   -- and then we'll be done.  There are just

18   some specific ones I need to make sure of.  I'm

19   marking Exhibit 37.  Actually, there's a two-page

20   document.  This is part of this exhibit.  Didn't get

21   stapled for some reason.  Here's this one.  Just a

22   couple more of these and then we'll be done.  You

23   see this is a December 31, 1981 Maurice Sage Trust

24   statement?

25         A.   Yes.

CONFIDENTIAL

Page 417

1          Q.   And this would have been generated in the

2     ordinary course of your firm's business?

3          A.   Yes.

4          Q.   And do you see that in the middle of the

5     page there's another sale of an American Telephone &

6     Telegraph security?

7          A.   Yes.

8          Q.   And that would have been a real transaction

9     that actually occurred?

10          A.   Yes.

11               (Exhibit Number 38 was marked for

12     identification.)

13               MR. KRATENSTEIN:   Thank you.  You can put

14     that document aside.  There's Exhibit 38.

15               MS. FEIN:   Thanks.

16          Q.   (By Mr. Kratenstein)  Mr. Madoff, this

17     document is a little bit different than the ones I

18     was just showing you.  Do you see at the top it's

19     dated January 31, 1983, National Bank of North

20     America?

21          A.   Correct.

22          Q.   What is this document, if you know?

23          A.   It's a month-end statement for activity

24     that happened during the month and at the end of the

25     month shows what the account was, long or short.

CONFIDENTIAL

Page 418

1        Q.  Would these -- it says at the top National

2   Bank of North America.  Does that mean that these

3   were securities held at the National Bank of North

4   America by your firm?

5        A.  Probably, yes.  Could have been held in a

6   depository.

7        Q.  Why does it say National Bank of North

8   America?

9        A.  That's who had the -- that's whose account

10  it was.

11       Q.  And you would hold securities at National

12  Bank of North America; is that correct?

13       A.  Sometimes, yes.

14       Q.  I'm going to turn you to a specific page,

15  0964437.  Do you see towards the bottom of that page

16  -- 964437 everybody.  Tell me when you're there.

17            MS. DASARO:  Got it.  Thank you.

18       Q.  (By Mr. Kratenstein)  If you look at the

19  bottom of the page four entries up there's that RCA

20  convertible bond we talked about earlier.  Do you

21  see that?

22       A.  Yes.

23       Q.  And it's listed as being at the National

24  Bank of North America.  Do you see that?

25       A.  Yes.

CONFIDENTIAL

Page 419

1      Q.   So does that mean that that bond was held

2   at the National Bank of North America?

3            MS. FEIN:  Objection to form.

4            THE WITNESS:  It depends upon -- yes, but

5   depending upon what role they were acting as.  They

6   could have -- they could have cleared their

7   transactions through somewhere else, through another

8   depository.  I have no way of knowing that.

9      Q.   (By Mr. Kratenstein)  Okay.  But you are I

10  take it based on your prior testimony confident that

11  this is a real bond that was held somewhere?

12     A.   Correct.

13           MR. KRATENSTEIN:  Thank you.  You can put

14  that document aside.

15           (Exhibit Number 39 was marked for

16  identification.)

17     Q.   (By Mr. Kratenstein)  This is Exhibit 39.

18  You see, Mr. Madoff, this is another National Bank

19  of North America ledger?

20     A.   Correct.

21     Q.   This one dated January 31, 1983?

22     A.   Correct.

23     Q.   Okay.  And this one shows -- this is a

24  document that also would have been generated in the

25  ordinary course of your firm's business?

CONFIDENTIAL

Page 420

1          A.   Correct.

2          Q.   It shows various instruments on this

3     document.   Do you see that?

4          A.   Yes.

5          Q.   Including various bonds, et cetera.   Do you

6     see that?

7          A.   Correct.

8          Q.   And would these have all, again, been

9     actual real positions?

10         A.   Correct.

11         Q.   You held securities at other banks as well;

12    is that right?

13         A.   Correct.

14         Q.   They included Chase Manhattan, Continental,

15    Commercial Bank of North America, Meadowbrook,

16    Marine Midland, Barclays, Bear Stearns, National

17    Westminster Bank and Bankers Trust; is that correct?

18              MS. FEIN:   Objection to form.

19              THE WITNESS:   Correct, plus other

20    brokerage firms.

21              MR. KRATENSTEIN:   Thank you.   You can put

22    that document aside.

23              (Exhibit Number 40 was marked for

24    identification.)

25         Q.   (By Mr. Kratenstein)   There's Exhibit 40.

Page 421

1    Mr. Madoff, do you see that this is a June 30, 1986

2    account statement for the Maurice Sage Trust?

3         A.   Yes.

4         Q.   Another statement that would have been

5    generated in the ordinary course of your firm's

6    business?

7         A.   Yes.

8         Q.   Do you see that it shows that RCA bond we

9    talked about earlier being sold on or around

10   June 19th, 1986, top entry?

11        A.   Yes.

12        Q.   And, again, that was a real sale?

13        A.   Yes.

14        Q.   Actual transaction; correct?

15        A.   Yes.

16        Q.   Thank you.  You can put that document

17   aside.  I'm going to switch topics.  In addition to

18   convertible bond arbitrage trading, did your firm do

19   trading or other types of arbitrage trading?

20        A.   Yes.

21        Q.   Did that include -- have you heard of the

22   term corporate events arbitrage?

23        A.   Yes.

24        Q.   What is that?

25        A.   It's when -- it could be a stock split, it

CONFIDENTIAL

Page 422

1   could be a special dividend payment, could be any

2   number of events that happened in a particular

3   company.

4        Q.   You described when you talked about the

5   convertible bond arbitrage trading you did something

6   called legging in?

7        A.   Correct.

8        Q.   Which I believe you described as

9   accumulating a position over time and then averaging

10  a price; is that right?

11           MS. FEIN:  Objection to form.

12           THE WITNESS:  That's correct.

13       Q.   (By Mr. Kratenstein)  That's correct;

14  right?

15       A.   Yes.

16       Q.   When you did these other corporate events

17  arbitrage, would you also leg in?

18       A.   Yes.

19           (Exhibit Number 41 was marked for

20  identification.)

21       Q.   (By Mr. Kratenstein)  I'm showing you

22  Exhibit 41.  Mr. Madoff, do you see that this is a

23  statement from Sage Realty dated May 31, 1994?

24       A.   Yes.

25       Q.   And do you see in the middle of the

Page 423

1   statement there are transactions involving General

2   Electric Company including a stock split?

3        A.   Correct, yes.

4        Q.   Could you describe what that transaction

5   is?

6        A.   It's the company splits their stock two for

7   one or any number of variables.

8        Q.   And in this case it appears that you are

9   buying General Electric stock, 2,099 shares, on or

10  around May 6th, 1994; is that correct?

11       A.   Correct.

12       Q.   And that's before a two-to-one stock split?

13       A.   Correct.

14       Q.   And then there's a sale of 4,198 shares in

15  two pieces on or around May 23rd; is that correct?

16       A.   Correct.

17       Q.   And is this an example of the stock split

18  arbitrage that you were discussing earlier?

19       A.   Correct.

20       Q.   Would this have been an actual transaction?

21       A.   Yes.

22            MR. KRATENSTEIN:   You can put that

23  document aside.

24            (Exhibit Number 42 was marked for

25  identification.)

CONFIDENTIAL

Page 424

1       Q.   (By Mr. Kratenstein)  I'm showing you

2   Exhibit 42.  If you turn to the second page of the

3   document there, let me see that.  Do you see on the

4   first page of this document, which is a Sage Realty

5   statement from December 31, 1996, do you see that?

6       A.   Yes.

7       Q.   And do you see that there's a purchase on

8   or around December 24th, 1996 of 47,814 shares of

9   AT&T?

10      A.   Correct.

11           (Exhibit Number 43 was marked for

12   identification.)

13      Q.   (By Mr. Kratenstein)  Do you see that?

14   Now, let me show you another document.  Just keep

15   that in mind.  This is Exhibit 43.  And do you see

16   that this is a Sage -- yep?  Okay.  I apologize.

17           MS. CHAITMAN:  Thank you.

18      Q.   (By Mr. Kratenstein)  Do you see that this

19   is a Sage Realty statement dated January 31, 1997?

20           MS. FEIN:  Objection.

21           THE WITNESS:  Correct, '94.

22           MR. KRATENSTEIN:  Sorry.  We're right.  We

23   may have the wrong -- hang on a second.  Let me just

24   check this.

25           MS. FEIN:  Yeah.  Mine has '96.

Page 425

1          MR. KRATENSTEIN:  Let me see.

2          MS. FEIN:  Sorry.  This one?  Yeah, sorry.

3     '94, yeah.

4          MR. KRATENSTEIN:  This is right, so you

5     have the right one.  I apologize.  That's the right

6     one.

7          MS. FEIN:  Okay.

8          MS. CHAITMAN:  Which is the right one?

9          MR. KRATENSTEIN:  Which is the right one?

10    Hang on a second.  You know what?  Let me -- is that

11    not the NCR?  Let me get the right one.

12         THE WITNESS:  Do I have the right to ask a

13    question about these records?

14         MR. GOLDMAN:  Why don't we -- you want to

15    do it now because we'll just take a short recess and

16    I'll talk to you for two minutes.

17         MR. KRATENSTEIN:  Well, let me actually

18    remark this document.  I just made a -- I have the

19    document there, so I'm going to give you the right

20    exhibit.  I'm remarking 43.  You can give me that

21    one back.

22         (Exhibit Number 43 was remarked for

23    identification.)

24         MS. FEIN:  Why don't we do the Bates for

25    this one?

Page 426

1           MR. KRATENSTEIN:  This one is -- yeah,

2    sure.  This one is Sage 0009352 through 53.

3           MS. FEIN:  Okay.  Thank you.

4        Q.  (By Mr. Kratenstein)  And do you see --

5           MS. CHAITMAN:  Now I need one, too.

6    Sorry.

7           MR. KRATENSTEIN:  That's fine.

8           MS. CHAITMAN:  Thank you.

9        Q.  (By Mr. Kratenstein)  Sorry about that.

10   And do you see here this is now a January 31, 1997

11   Sage Realty statement?  Do you see that?

12       A.  Yes.

13       Q.  And you see now this is the year -- so in

14   the first document we saw, Exhibit 42, that was at

15   the end of the year 1996 and this is in the new

16   year, 1997.  Do you see that?

17       A.  Yes.

18       Q.  And at the top there's a transaction.  It

19   says NCR Corp spin-off from AT&T Corp.  And then

20   there are various AT&T and NCR transactions.  Do you

21   see that?

22       A.  Yes.

23       Q.  Can you describe what this transaction is?

24       A.  It looks like a distribution of -- AT&T

25   went through a whole series of divestitures of their

CONFIDENTIAL

Page 427

1   other companies, which was referred to as baby

2   bells.  I'm not sure what period that they took

3   place, but we were a major market maker in AT&T

4   forever over the 50 years that I was in business.

5   So there were lots of events regarding AT&T and I'm

6   assuming this is one of them.

7        Q.   Okay.  And this trade if we look at

8   Exhibits 42 and 43, this trade involves if I'm not

9   mistaken buying AT&T before the spin-off and then

10  after the spin-off selling AT&T as well as newly

11  received NCR shares?

12       A.   Correct.

13       Q.   Because AT&T had spun off NCR?

14       A.   Correct.

15       Q.   And what's the idea behind that?  That the

16  spin-off creates greater value?

17       A.   Yes.

18       Q.   Was this an actual transaction, a real

19  transaction?

20       A.   Yes.

21       Q.   You can put that document aside.  By this,

22  I mean, the transactions we see on 42 and 43, real

23  transactions?

24       A.   Yes.

25            MR. KRATENSTEIN:  Thank you.  One more,

CONFIDENTIAL

Page 428

1  please.  And this is the one I just showed you a

2  minute ago.  That's going to be 44 now.

3            MS. CHAITMAN:  I have that one.

4            MR. KRATENSTEIN:  You have that one?

5            MS. CHAITMAN:  Yeah.  You gave it to me

6  before.

7            MR. KRATENSTEIN:  Thanks, yes.

8            (Exhibit Number 44 was marked for

9  identification.)

10        Q.  (By Mr. Kratenstein)  Mr. Madoff, do you

11  see that this is a Sage Realty statement dated

12  July 31, 1994?

13        A.  Yes.

14        Q.  And do you see that there are various

15  transactions on this statement involving UAL?

16        A.  Yes.

17        Q.  Can you tell from looking at this what this

18  transaction entails?

19        A.  Similar to the other transaction, looks

20  like a spin-off of some sort.

21        Q.  Is it fair to say that this is a trade to

22  buy UAL before the -- a recapitalization and then

23  selling the stock after receiving a cash

24  distribution?

25            MS. FEIN:  Objection.

CONFIDENTIAL

Page 429

1            THE WITNESS:  Possibly.

2        Q.  (By Mr. Kratenstein)  Your answer was?

3        A.  Possibly.

4        Q.  Thank you.  Would this transaction have

5    been an actual real transaction as reflected on this

6    statement?

7        A.  Correct.

8        Q.  In terms of your corporate event arbitrage

9    trading, would you sometimes take market risk over a

10   period of time of weeks?

11       A.  Correct.

12       Q.  You can put that aside.  Do you want to

13   take a break now?  We're changing topics.

14            MR. GOLDMAN:  Yeah.  You wanted to ask me

15   a question, so let's go in the other room.  You can

16   ask me what you want to ask me and then we'll see.

17            THE VIDEOGRAPHER:  Going off the record.

18   The time is 9:40.

19            (A recess was taken.)

20            THE VIDEOGRAPHER:  Back on the record.

21   The time is 9:51.

22            (Exhibit Number 45 was marked for

23   identification.)

24       Q.  (By Mr. Kratenstein)  Mr. Madoff, we talked

25   about the fact that the Sages had an account called

CONFIDENTIAL

Page 430

1   Sage Associates, so I'm going to ask a few questions

2   about that account now.  I'm going to start with

3   another document we're going to mark as Exhibit

4   Number 45.  I'm going to focus my questions on the

5   first page and then the page that is Bates labeled

6   MF 0091185.  So I'm just going to -- I'll hand out

7   copies to everyone else.

8        A.  Your records.

9            MR. KRATENSTEIN:  Yeah.  There you go.

10            MS. CHAITMAN:  I'm sorry.  Take note of

11   that Bates number.  Was that 185?

12        Q.  (By Mr. Kratenstein)  941185.  I'm going to

13   start on the first page and then I'll flip it for

14   you.  So if you don't mind, I'll just keep my finger

15   there so we can get to the page, which will help us

16   move through this relatively quickly.  Mr. Madoff,

17   you see that this is a document called house 17

18   stock record summary through 5-31-85?

19        A.  Yes.

20        Q.  Do you recognize this type of document?

21        A.  Yes.

22        Q.  What is it?

23        A.   It's usually a month-end report that lists

24   the securities in each account.

25        Q.  And these reports would be generated in the

CONFIDENTIAL

Page 431

1    ordinary course of your firm business?

2         A.   Correct.

3         Q.   And would they be generated on or around

4    the date indicated at the top, May 31, 1985 in this

5    case?

6         A.   Correct.

7         Q.   And were these reports like this kept on

8    your firm's premises?

9         A.   Yes.

10        Q.   And created in the ordinary course of

11   business?

12        A.   Yes.

13        Q.   Okay.  Now I'm going to turn to the page I

14   indicated, which is again MF 00941185.  And are you

15   there, counsel?

16             MS. CHAITMAN:  Yeah.

17        Q.  (By Mr. Kratenstein)  Okay.  I'm going to

18   draw your attention to -- it's actually this page

19   right here.  See the bottom of the page, towards the

20   bottom there's a Walt Disney Productions entry.  Do

21   you see that?

22             MS. FEIN:  Is this the page ending in 184,

23   Andrew?

24             MR. KRATENSTEIN:  85.

25             MS. FEIN:  It's 85?

CONFIDENTIAL

Page 432

1            MR. KRATENSTEIN:  Yes.

2            MS. FEIN:  Okay.

3        Q.  (By Mr. Kratenstein)  Do you see Walt

4    Disney Productions right here?

5        A.  Yes.

6        Q.  Okay.  So and do you see under Walt Disney

7    Productions there are various customer accounts

8    listed including Sage Associates and Maurice Sage

9    Trust?

10       A.  Yes, yes.

11       Q.  And do you see according to this report

12   there are 9,000 shares of Walt Disney in Sage

13   Associates and 5,000 in Maurice Sage Trust?

14       A.  Correct.

15       Q.  And according to this report, when you add

16   up all of the customer's holdings, so in addition to

17   Sage Associates and Maurice Sage Trust, there are

18   entries for Appleby and then other customers.  Do

19   you see that?

20       A.  Yes.

21       Q.  And they add up to 34,780 shares.  Do you

22   see that?

23       A.  Correct.

24       Q.  That's of Disney stock; correct?

25       A.  Yes.

CONFIDENTIAL

Page 433

1      Q.  And then there's an entry at the bottom

2   next to that 34,780 shares for the National

3   Westminster Bank USA.  Do you see that?

4      A.  Correct.

5      Q.  What does that mean, that all the stock is

6   listed next to that bank?

7      A.  That the securities are held at that bank

8   or one of their clearing agents.

9      Q.  And this is a 1985 report.  So I take it

10   from your prior testimony that these are actual

11   securities that were actually held at the National

12   Westminster Bank?

13      A.  Correct.

14         MR. KRATENSTEIN:  I'm going to move this

15   document and mark as Exhibit 46 another document.

16         (Exhibit Number 46 was marked for

17   identification.)

18      Q.  (By Mr. Kratenstein)  Mr. Madoff, do you

19   see that what we've marked as Exhibit Number 46 is a

20   report that at the top says 5-31-85, so May 31,

21   1985, National Westminster Bank USA?  Do you see

22   that?

23      A.  Yes.

24      Q.  And do you recognize this type of document?

25      A.  Yes.

CONFIDENTIAL

Page 434

1        Q.   What is it?

2        A.   It's activity in the account of National

3   Westminster Bank.

4        Q.   And, again, is this a document that would

5   have been created in the ordinary course of your

6   firm's business?

7        A.   Yes.

8        Q.   And would have been kept at your firm's

9   premises?

10       A.   Yes.

11       Q.   That would have been generated on or around

12   May 31, 1985?

13       A.   Correct.

14       Q.   And would have been maintained in the

15   ordinary course of your firm's business; is that

16   correct?

17       A.   Correct.

18       Q.   And if you turn -- and I'll do this -- to

19   page 965279, if you look in the middle of the page

20   -- is everybody with me?

21            MS. DASARO:   Yeah.

22       Q.   (By Mr. Kratenstein)   At 965279 do you see

23   that there are 34,780 shares of Walt Disney stock

24   listed as being held at the National Westminster

25   Bank?

Page 435

```
 1           A.   Correct.

 2           Q.   And that matches up with the previous

 3    record that we just saw?

 4           A.   Correct.

 5           Q.   And these are actual securities held at the

 6    National Westminster Bank?

 7           A.   Correct.

 8                MR. KRATENSTEIN:   Thank you.

 9                MS. CHAITMAN:   Oh, I see.   Right here?

10                MR. KRATENSTEIN:   Yes.   Top entry in the

11    middle.

12                MS. CHAITMAN:   Thank you.

13                MR. KRATENSTEIN:   Okay.   I want to make a

14    suggestion.   I want to take a short break and just

15    sticker a whole bunch of exhibits instead of doing

16    it on the record and then that way it will be a lot

17    faster when we're on the record.

18                MS. CHAITMAN:   Why don't you let me do it

19    for you?

20                MR. KRATENSTEIN:   I think because I know

21    where I want to go.

22                MS. CHAITMAN:   Oh, okay.

23                MR. KRATENSTEIN:   It will take five

24    minutes.   Let's just do that.

25                MS. DASARO:   Okay.
```

CONFIDENTIAL

Page 436

1            MR. KRATENSTEIN:  Let's take a quick
2    break.  I don't want to waste your time on the
3    record.  You can get up and stretch.
4            THE VIDEOGRAPHER:  Going off the record.
5    The time is 9:57.
6            (A recess was taken and Exhibit Number 47
7    was marked for identification.)
8            THE VIDEOGRAPHER:  Back on the record.
9    The time is 10:13.
10        Q.  (By Mr. Kratenstein)  Welcome back, Mr.
11    Madoff.  You had talked earlier about the Sages
12    directing you to do trades in their accounts.  I
13    want to show you a few documents on that topic.  I'm
14    showing you Exhibit Number 47.  Mr. Madoff, do you
15    see that this is a letter from Malcolm Sage to you?
16        A.  Yes.
17        Q.  It's on the letterhead of Sage Associates
18    and Sage Associates II?
19        A.  Yes.
20        Q.  Those were each Sage accounts?
21        A.  Yes.
22        Q.  And do you have any reason to believe that
23    you did not receive this letter?
24        A.  No.
25        Q.  This letter would have been kept by your

CONFIDENTIAL

Page 437

1    firm?

2         A.   Correct.

3         Q.   Probably by Annette Bongiorno?

4         A.   Correct.

5         Q.   By the way, was Ms. Bongiorno, do you

6    recall if she was left handed?

7         A.   I believe so.

8         Q.   So when she made a check mark, it would be

9    a left-handed check mark?

10        A.   Yes.

11        Q.   Do you see that the letter begins Dear

12   Bernie, after discussions with Paul we have come up

13   with the following plan with regards to the Sage

14   Associates IS-004 and Sage Associates II IS-005

15   accounts.  Do you see that?

16        A.   Yes.

17        Q.   First of all, do you know who Mr. Sage is

18   referring to when he says Paul?

19        A.   I would assume it's his accountant.

20        Q.   And who is he?

21        A.   I believe it's Paul Koenigsberg.

22        Q.   And he says we have come up with the

23   following plan.  Do you know what -- have an

24   understanding of what he means when he says the

25   following plan?

Page 438

1          A.    I assume his tax plan.

2          Q.    And do you see the backwards lefty checks

3    on this letter?

4          A.    Correct.

5          Q.    Do you believe those to be Ms. Bongiorno's?

6          A.    Correct.

7          Q.    And do you see in the letter Mr. Sage is

8    directing you to take various actions with respect

9    to securities in the Sage Associates and Sage

10   Associates II accounts?

11         A.    Correct.

12         Q.    For example, in the first entry with

13   respect to Abercrombie & Fitch he says please

14   deliver the short position in the seven account to

15   the three account to close out this position.  Do

16   you see that?

17         A.    Correct.

18         Q.    And do you recall that Mr. Sage or the

19   Sages rather had subaccounts within Sage Associates

20   for long positions, short against the box positions

21   and naked short positions?

22         A.    Correct.

23         Q.    Does it make sense to you that three would

24   have been the long position account?

25         A.    Correct.

CONFIDENTIAL

Page 439

1          Q.   And seven the short against the box

2     position account?

3          A.   Correct.

4          Q.   Eight, the naked short position account?

5          A.   Yes.

6          Q.   What is a short against the box?

7          A.   Short against the box is when you're

8     selling -- you're selling stock that you are also

9     long in another account.  You're long and short the

10    same security.

11         Q.   Does it mean you're actually holding the

12    security when you go short or no?

13         A.   Yes.

14         Q.   And what's --

15         A.   Well, I have to correct that.  If it's the

16    short against the box account, you would be long

17    security as well.  You could -- if it was what's

18    called a naked short, you're not long in the

19    corresponding security.

20         Q.   And do you see that there are obviously

21    various transactions here for -- instructions for

22    Abercrombie, Dow, International Paper, Oracle and

23    Qualcomm?  Do you see that?

24         A.   Correct.

25         Q.   And then he asks you at the end in .1(f) to

CONFIDENTIAL

Page 440

1    please realize the approximately $600,000 of gain in

2    the eight account; correct?

3         A.   Correct.

4         Q.   Which would be the naked short account?

5         A.   Yes.

6         Q.   And then there are instructions for Gateway

7    and Coca-Cola in Sage Associates II.  Do you see

8    that?

9         A.   Yes.

10        Q.   And at the end he says after these steps

11   have been taken, we would like to withdraw the sum

12   of $6 million from Sage Associates.  Do you see

13   that?

14        A.   Correct.

15        Q.   And then he asks you if you have any

16   questions, to call him or Paul; right?

17        A.   Correct.

18        Q.   Would you have followed these instructions?

19        A.   Yes.

20        Q.   How do you know that?

21        A.   Just clients telling us to.  We have no

22   choice.

23             (Exhibit Number 48 was marked for

24   identification.)

25        Q.   (By Mr. Kratenstein)  I'm going to show you

CONFIDENTIAL

Page 441

1    what we've marked as Exhibit Number 48, and you can

2    compare that with this.  If you look at this

3    document, you see that this is the Sage Associates

4    statement from November 30th, 2001?

5         A.  Yes.

6         Q.  And can you see on this statement the

7    transactions that Mr. Sage directed you to do in his

8    letter that we marked as Exhibit 47?

9         A.  Correct.

10        Q.  And you would have performed those

11   transactions?

12        A.  Yes.

13        Q.  Would they have been real transactions?

14        A.  Yes.

15        Q.  You can put that document aside.  And by

16   the way, just note before actually putting it aside

17   that this is the Sage Associates subaccount numbered

18   seven.  Do you see that?

19        A.  Correct.

20             (Exhibit Number 49 was marked for

21   identification.)

22        Q.  (By Mr. Kratenstein)  Okay.  And then now

23   I'm going to give you Exhibit Number 49, which is

24   Sage Associates subaccount three from the same date.

25   Do you see that?

CONFIDENTIAL

Page 442

1        A.  Yes.

2        Q.  And, again, because there were -- he was

3   asking you to transfer between the seven and three

4   accounts.  Do you see the flip side on this?

5        A.  Yes.

6        Q.  Thank you.  And then you recall at the end

7   of the letter he asked you to realize -- he asked

8   you to recognize a $600,000 gain.  Do you recall

9   that?

10        A.  Correct.

11            (Exhibit Number 50 was marked for

12   identification.)

13            MR. KRATENSTEIN:  Here's Exhibit 50.

14   There's an extra copy.

15            MS. FEIN:  Okay.

16        Q.  (By Mr. Kratenstein)  And do you see the

17   $600,000 being recognized --

18        A.  Yes.

19        Q.  -- in Exhibit 50?

20        A.  Yes.

21            (Exhibit Numbers 51, 52 and 53 were marked

22   for identification.)

23        Q.  (By Mr. Kratenstein)  Thank you.  I'm going

24   to hand you a group of documents, which I'll

25   represent to you are the confirms reflecting all

Page 443

1    these transactions.  And I'm just going to ask you

2    when you have these in front of you are these

3    documents the confirms that reflect the transactions

4    that we just saw in the statements.

5             Okay.  So I'm just going to put them in

6    front of you and I'm going to ask you to confirm

7    that that's what they at least appear to you to be.

8    So here's Exhibit -- and just wait until I give you

9    them all.  Here's Exhibit 51.  This is Exhibit 52.

10            MR. GOLDMAN:  Are those exhibits multiple

11   pages, just so the record is clear?

12            MS. CHAITMAN:  We didn't get 50.

13            MR. KRATENSTEIN:  50 was a one page.

14            MS. CHAITMAN:  Yeah, but I don't have 51.

15   Did you get two copies of 51?

16            MS. FEIN:  No.

17            THE WITNESS:  Helen, move your soda

18   because he's about to knock it over.

19            MS. CHAITMAN:  Oh, thank you.

20            THE WITNESS:  I don't want to have to go

21   through this again.

22        Q.  (By Mr. Kratenstein)  Here's 53.  Just take

23   a look at it while I'm handing them out and see if

24   you can flip through and just make sure you agree

25   whether these are the confirms showing the trades

CONFIDENTIAL

Page 444

1    that we saw in the last document?

2             MS. CHAITMAN:  Can you --

3             Q.  (By Mr. Kratenstein)  Do you

4    understand what -- what is Exhibit -- what is that,

5    Mr. Madoff?  Exhibit 53, what is that?

6             A.  This is just a memo of transferring monies.

7             Q.  Is it a -- what is known as a trade

8    confirm?

9             A.  No.

10            Q.  Okay.  It's a memo.  So what does that

11   mean?

12            A.  It's a memo.  It's a making note of a

13   particular money transaction or receiving the

14   movement of securities.  Confirmation is what

15   appears behind it.

16            Q.  You see what's behind -- I see.  So --

17            A.  Confirmation is an actual purchase and sale

18   of a transaction.

19            Q.  Okay.  I see.  And so when you see -- these

20   are memos you're saying, Exhibit 53, for example?

21            A.  Yes.

22               (Exhibit Number 54 was marked for

23   identification.)

24            Q.  (By Mr. Kratenstein)  Okay.  And here's

25   Exhibit 54.

CONFIDENTIAL

Page 445

1           MR. GOLDMAN:  Are you looking at

2    Exhibit 53?

3           THE WITNESS:  Fifty-three and four.

4           MR. GOLDMAN:  Okay.  Under 53, the top

5    page is the memorandum, I think, you suggested for

6    the transfer of money.  Is there anything else

7    attached to that?  Fifty-three, look at 53.

8           THE WITNESS:  Yeah.  I have 53.

9           MR. GOLDMAN:  Okay.  What's underneath it?

10          THE WITNESS:  Yeah, the confirmation.

11       Q.  (By Mr. Kratenstein)  Is that the confirm?

12       A.  Confirmation.

13       Q.  So that's the confirm, the second page of

14    53?

15       A.  Right.

16          MR. KRATENSTEIN:  Thank you.

17          MS. FEIN:  Sorry.  Just to clarify, that

18    second page isn't the same as the first page.  The

19    transaction isn't the same.  My understanding that

20    the memo -- or the difference between the memo and

21    the confirm I understand, but the transaction is a

22    different dollar amount.

23          MR. KRATENSTEIN:  Well, there are actually

24    several.  If you look, there are multiple

25    transactions.

CONFIDENTIAL

Page 446

1          MS. FEIN:  Okay.  So --

2          MR. KRATENSTEIN:  So they add up, I

3    believe, but you can see.  You can look.  There are

4    multiple.  It's multiple transactions.  You want a

5    minute?

6          MS. FEIN:  I can't see the math.  It looks

7    like the last page, the last page ending in 4294

8    corresponds to the memo page that's the page ending

9    in 290, but the two pages in between appear to be

10   different.

11         MR. KRATENSTEIN:  Let's see.  Which number

12   is that?  What's the first page number?

13         THE WITNESS:  4290.

14         MR. KRATENSTEIN:  Okay.  And then there's

15   another, 4291, and then there are 4292, 93, 94.

16         MS. FEIN:  Yeah.  And, actually, my copy

17   doesn't have 4291.  It just goes from 4290 to 4292,

18   but 4292 and 4293 appear to be different

19   transactions.

20         MR. KRATENSTEIN:  Let me take a look at

21   it.  Fifty-three this is?  Here.  Well, here's 4-2.

22   This is Exhibit 16.  We'll get it worked out at a

23   break.  Let me do it at a break.  I don't want to

24   take up the time now, but thank you.

25         MS. FEIN:  I understand.

CONFIDENTIAL

Page 447

1              MR. GOLDMAN:  I only did that so the

2      record was clear.  As I said, there are multiple

3      pages in each exhibit.

4              MR. KRATENSTEIN:  Right.

5              MR. GOLDMAN:  Once you go through it --

6              MS. CHAITMAN:  What is the exhibit number

7      that you're talking about?

8              MR. KRATENSTEIN:  Fifty-three.

9              MS. FEIN:  Fifty-three.  My concern was

10     the same.  It was just about getting the record

11     clear.  So if we clear it up on a break, we can do

12     it that way.

13         Q.  (By Mr. Kratenstein)  Yeah, sure.  And then

14     Exhibit 54 you have in front of you?

15         A.  Yes.

16         Q.  Does that show in addition to a memo

17     confirms behind?

18         A.  Yes.

19              (Exhibit Number 55 was marked for

20     identification.)

21         Q.  (By Mr. Kratenstein)  Okay.  That's this

22     one.  And now I'm going to give you 55, which again

23     is a memo followed by the confirms?

24         A.  Yes.

25              MS. FEIN:  Thank you.

CONFIDENTIAL

Page 448

1          THE WITNESS:  No.  Wait a minute.  I don't

2     see a confirmation.  I see just memos.

3          Q.  (By Mr. Kratenstein)  Just memos for 55?

4          A.  Right.

5          MR. KRATENSTEIN:  Okay.

6          MS. CHAITMAN:  How about the last page?

7     Is that a confirm?

8          MR. GOLDMAN:  Yeah.

9          THE WITNESS:  No.  These are just --

10         MR. GOLDMAN:  Go to the last page.

11         MR. KRATENSTEIN:  The last page, 224.

12         THE WITNESS:  Yes.

13         Q.  (By Mr. Kratenstein)  That's a confirm?

14         A.  Yes.

15         (Exhibit Number 56 was marked for

16    identification.)

17         Q.  (By Mr. Kratenstein)  224 is a confirm.

18    Thank you.  Okay.  And then the last one for this

19    set is number 56, which is the $600,000 we saw

20    earlier.

21         MR. GOLDMAN:  You okay?  You look like you

22    had a --

23         MS. FEIN:  Well, Exhibit 55 on my copy is

24    missing a page but it may be the one that's missing

25    a page, so --

CONFIDENTIAL

Page 449

1            MR. KRATENSTEIN:  Let me look.  Which page

2     is missing?

3            MS. FEIN:  For me it's missing what would

4     be 4223.  It goes from 4222 to 4224.

5            MR. KRATENSTEIN:  This has -- it does.  So

6     mine is marked the same way.  It's marked the same

7     way.

8            MS. FEIN:  Understood.

9        Q.  (By Mr. Kratenstein)  Okay.  All right.  So

10    is it fair to say that the documents that we have

11    now marked as Exhibits 51 to 55 reflect the

12    transactions that we saw in the letter that we

13    marked as Exhibit 47?

14           MS. FEIN:  Objection to form.

15           THE WITNESS:  Correct.

16           (Exhibit Number 57 was marked for

17    identification.)

18        Q.  (By Mr. Kratenstein)  Thank you.  Now I'm

19    going to mark Sage Associates two statements

20    quickly.  That was for Sage Associates.  Those were

21    the Sage Associates trades.  Now, two Sage

22    Associates II transactions that were shown in the

23    letter which is Exhibit 47, I'm just going to show

24    you the statements now.  That's Exhibit 57.  Put

25    these here.  Keep this letter here.  Exhibit 57.

CONFIDENTIAL

Page 450

1              MS. FEIN:  Thank you.

2         Q.  (By Mr. Kratenstein)  And if you see at the

3    end of the letter, he talks about the Gateway

4    delivery of short positions and closing out

5    Coca-Cola.  And if you look at Exhibit Number 20, do

6    you see the Gateway and Coca-Cola transactions

7    reflected on this statement?

8         A.  Yes.

9              (Exhibit Number 58 was marked for

10   identification.)

11        Q.  (By Mr. Kratenstein)  And then looking at

12   Exhibit Number 58 --

13             MS. CHAITMAN:  Did you mean to say

14   Exhibit 20?

15             MS. FEIN:  Did you mean Exhibit 57?

16             MR. KRATENSTEIN:  I said 57.  What did I

17   say?

18             MS. CHAITMAN:  20.

19             MS. FEIN:  20.

20        Q.  (By Mr. Kratenstein)  So do you see on

21   Exhibit 57, sorry, the Sage Associates II, the Sage

22   Associates II transactions for Gateway and Coca-Cola

23   reflected on Exhibit 47?

24        A.  Yes.

25        Q.  And now Exhibit 58.

CONFIDENTIAL

Page 451

1           MS. CHAITMAN:  What you're saying is

2   Exhibit 57 shows the transactions that Malcolm

3   instructed?

4           MR. KRATENSTEIN:  Correct.

5           MS. CHAITMAN:  Okay.

6       Q.  (By Mr. Kratenstein)  Do you agree with

7   that, Mr. Madoff?

8       A.  Yes.

9       Q.  Thank you.  And Exhibit 58, which is the

10  other side of the Sage Associates II transaction, do

11  you see again the Gateway transfer to that account

12  as directed by Mr. Sage --

13      A.  Yes.

14      Q.  -- in his letter?

15      A.  Uh-huh.

16      Q.  Correct?

17      A.  Yes.

18          MS. FEIN:  Objection to form.

19          (Exhibit Numbers 59 and 60 were marked for

20  identification.)

21      Q.  (By Mr. Kratenstein)  Thank you.  And here

22  are memos and confirms, Exhibit 59.  This is going

23  to be the same set of questions, whether the

24  confirms also reflect this time Sage Associates II

25  activity we see in the letter that was marked as

CONFIDENTIAL

Page 452

1    Exhibit 47?

2              MS. FEIN:  Objection to form.

3              THE WITNESS:  Yes.

4              MR. KRATENSTEIN:  Thank you.  Do you have

5    this one, Amanda?

6              MS. FEIN:  I do.  Thank you.

7              MS. CHAITMAN:  What number is this?

8              MS. FEIN:  60.  Andrew, was your question

9    with respect to Exhibits 59 and 60?

10             Q.  (By Mr. Kratenstein)  Yeah.  I'm asking

11   whether on 59 and 60 they reflect the -- so it will

12   be 59 you see, Mr. Madoff, reflects the Gateway

13   transaction that is shown in Exhibit 47 at the

14   bottom under Sage Associates II; correct?

15             A.  Yes, correct.

16             Q.  And Exhibit 60 shows the Coca-Cola

17   transaction --

18             A.  Correct.

19             Q.  -- and to be in Exhibit 47; correct?

20             A.  Correct.

21             (Exhibit Number 61 was marked for

22   identification.)

23             Q.  (By Mr. Kratenstein)  Thank you.  I'm going

24   to show you another letter.  This is Exhibit

25   Number 61.  Mr. Madoff, do you see that this is a

CONFIDENTIAL

Page 453

1    letter from Mr. Sage to you on the letterhead of

2    Sage Associates and the Maurice S. Sage Foundation?

3         A.  Yes.

4         Q.  Do you have any reason to believe that you

5    did not receive this letter?

6         A.  No.

7         Q.  Do you believe the handwriting on this

8    letter to be Annette Bongiorno's?

9         A.  Yes.

10        Q.  Do you see that in this letter Mr. Sage

11   writes, although it's addressed to you, he writes

12   Dear Annette.  Do you see that?

13        A.  Correct.

14        Q.  And that's Ms. Bongiorno?

15        A.  Yes.

16        Q.  He writes after discussions with Paul we

17   have come up with the following plan with regard to

18   the Sage Associates IS-0004 and Maurice S. Sage

19   Foundation, Inc. IS-0197 accounts.  Do you see that?

20        A.  Yes.

21        Q.  And, again, do you have any understanding

22   of what plan Mr. Sage was talking about?

23        A.  It's a tax plan.

24        Q.  And do you have any understanding of what

25   he was trying to accomplish tax-wise?

CONFIDENTIAL

Page 454

1        A.   Yes.

2        Q.   What was that?

3        A.   To realize certain gains, gains and losses

4   based upon making a sale of security.

5        Q.   Okay.  And do you see that he for Sage

6   Associates directs you with respect to Emulex stock

7   to please deliver the short position --

8        A.   Right.

9        Q.   -- in the seven account to the three

10  account to close out this position; correct?

11            MS. FEIN:  Objection to form.

12            THE WITNESS:  Correct.

13            MR. KRATENSTEIN:  Sorry.  What's the basis

14  for the objection?

15            MS. FEIN:  You said he directs you, but

16  the letter is not only addressed to him.  It also

17  has attention Annette Bongiorno right under the

18  addressee line.

19       Q.   (By Mr. Kratenstein)  Okay.  Do you see Mr.

20  Sage directing Ms. Bongiorno, who worked for you;

21  correct?

22       A.   Correct.

23       Q.   To please deliver the short position in the

24  seven account to the three account to close out this

25  position in Emulex.  Do you see that?

CONFIDENTIAL

Page 455

1        A.  Yes.

2        Q.  The amount to be delivered is the entire

3   amount held, 220,000 shares; correct?

4        A.  Correct.

5        Q.  With respect to Broadcom, Mr. Sage writes

6   please deliver 15,000 shares in the seven account to

7   the three account.  This will leave the remaining

8   40,000 shares in the three and seven accounts.  Do

9   you see that?

10        A.  Correct.

11        Q.  And then with respect to the Maurice S.

12   Sage Foundation, Inc. account he says we would like

13   to withdraw the sum of $25,000.  This will not

14   require the sale of any stock because this sum is

15   available in money market funds.  Do you see that?

16        A.  Yes.

17        Q.  And do you see that in the handwriting for

18   Ms. Bongiorno the date is 12-24-02?  Do you see

19   that?

20        A.  Yes.

21        Q.  And then he asks at the end, Mr. Sage asks

22   if you have any questions, please call him.  Do you

23   see that?

24        A.  Yes.

25        Q.  Would you have followed these instructions?

CONFIDENTIAL

Page 456

1      A.   Yes.

2      Q.   And that's the same reason as before,

3  because you have to follow the instructions of your

4  customers; correct?

5      A.   Correct.

6           MS. FEIN:  Objection to form.

7           (Exhibit Number 62 was marked for

8  identification.)

9      Q.   (By Mr. Kratenstein)  All right.  Just

10  going to show you a few documents concerning whether

11  you did follow those instructions.  We'll start with

12  Exhibit 62.

13          MS. FEIN:  Andrew, can you just clarify

14  when you're saying you followed the instructions in

15  your questioning?

16     Q.   (By Mr. Kratenstein)  What did you

17  understand what I meant you follow the instructions?

18     A.   What does it mean?

19     Q.   Yeah.

20     A.   It means I did what the client asked me to

21  do.

22     Q.   And would you sometimes if a client asked

23  you to do something, would you -- who would you have

24  do it?

25     A.   Usually, you know, Annette.

CONFIDENTIAL

Page 457

1          Q.   In this case it would be Annette because

2     she was working with you?

3          A.   Right.

4          Q.   Do you know if she would have come to you

5     -- do you know if you would have seen this letter

6     that we marked as Exhibit 61?

7          A.   I either would have seen it or been told

8     about it.

9          Q.   By Annette?

10         A.   By Annette.

11         Q.   Would that be true of all written

12    instructions from clients?

13         A.   I assume so.

14             MS. FEIN:  Objection to form.

15         Q.   (By Mr. Kratenstein)  And why do you assume

16    so?

17         A.   Depends upon the -- could have been one of

18    her assistants, you know, calling me if she was not

19    available.

20         Q.   But is your point that if a client gave you

21    instructions, you'd want to know about it?

22             MS. FEIN:  Objection to form.

23             THE WITNESS:  Correct.

24         Q.   (By Mr. Kratenstein)  So we've marked

25    Exhibit 62.  And if you look at Exhibit 62, we

Page 458

1    talked about Emulex and Broadcom in the letter.  And

2    do you see movements of Emulex and Broadcom as

3    directed in the letter reflected in this statement

4    that we marked as Exhibit 62?

5         A.  Yes.

6              (Exhibit Number 63 was marked for

7    identification.)

8         Q.  (By Mr. Kratenstein)  Same for Exhibit 63?

9         A.  Yes.

10        Q.  Same question.  Do you see the movements in

11   the Sage Associates account being directed by Mr.

12   Sage in his letter that we've marked as Exhibit 61

13   actually on the statements being executed?

14        A.  Yes.

15             (Exhibit Number 65 was marked for

16   identification.)

17        Q.  (By Mr. Kratenstein)  And then with respect

18   there was a direction on the Maurice Sage

19   Foundation, so I'm going to show you Exhibit 65.

20             MS. CHAITMAN:  Did we have Exhibit 64?

21             MS. DASARO:  I think, yeah.

22             MS. FEIN:  I think this should be 64.

23             MR. KRATENSTEIN:  It should be.  We might

24   have a miss.  So if we have a miss, I apologize.

25   I'm not sure what happened there.  Let's just call

CONFIDENTIAL

Page 459

1   this Exhibit 65 and we'll come back and if we missed

2   64, we'll just have this gap.

3          Q.   (By Mr. Kratenstein)   Do you see that there

4   in the Sage -- in Exhibit 61 he's asking to withdraw

5   $25,000 and do you see that in Exhibit Number 65,

6   the $25,000 withdrawal?

7          A.   Yes.

8               (Exhibit Numbers 66, 67 and 68 were marked

9   for identification.)

10         Q.   (By Mr. Kratenstein)   Finally, the memos

11  and/or confirms.   I'm showing you Exhibit 66,

12  Exhibit 67 and Exhibit 68.   And, again, Mr. Madoff,

13  do Exhibits 66 through 68 reflect the execution of

14  the instructions that were contained in the letter

15  that we marked as Exhibit 61?

16         A.   Yes.

17              (Exhibit Number 69 was marked for

18  identification.)

19         Q.   (By Mr. Kratenstein)   Thank you.   I'm

20  showing you Exhibit Number 69.   Mr. Madoff, do you

21  see that this is a letter from Maurice Sage to

22  Annette Bongiorno and you on the letterhead of Sage

23  Associates and Sage Associates II?

24              MS. FEIN:   Objection to form.

25              THE WITNESS:   Yeah.   From Malcolm Sage.

CONFIDENTIAL

Page 460

1          Q.   (By Mr. Kratenstein)   From Malcolm Sage,

2     yes.

3          A.   Right, yes.

4          Q.   Do you have any reason to believe that you

5     did not receive this letter?

6          A.   No.

7          Q.   Would it have been maintained by your firm

8     after it was received?

9          A.   Yes.

10          Q.   Mr. Sage writes Dear Annette, just wanted

11     to touch base with you regarding certain stocks in

12     Sage Associates IS-004 and Sage Associates II

13     IS-005.   To the best of my understanding the only

14     stocks which were held short against the box and not

15     grandfathered, and the word grandfathered is in

16     quotes, with respect to the constructive sales rules

17     are Broadcom, and then he puts in parentheses Sage

18     Associates, and RJR, and then he puts in parentheses

19     Sage Associates and Sage Associates II.

20               Let me just stop there for a second.   We

21     talked about what a short against the box is.   Do

22     you have an understanding of what Mr. Sage meant

23     when he referred to grandfathered?

24          A.   Not really.

25          Q.   Okay.   Therefore -- then he goes on in his

CONFIDENTIAL

Page 461

1    sentence and says, therefore, I assume that these

2    positions will be bought into prior to January 30 so

3    as to avoid a constructive sale.  Do you see that?

4         A.  Yes.

5         Q.  Do you understand him to be instructing you

6    to buy into Broadcom and RJR?

7              MS. FEIN:  Objection to form.

8              THE WITNESS:  Yes.

9              MR. KRATENSTEIN:  What's the basis for the

10   objection?

11             MS. FEIN:  This letter is addressed to

12   Annette, the letterhead is Annette and it's also

13   Dear Annette and you're saying instructing you,

14   directing you.  I just -- I have an objection to

15   that in the past and in the future.

16             MR. KRATENSTEIN:  I will fix.  Thank you.

17        Q.  (By Mr. Kratenstein)  Do you see that the

18   letter is addressed both to you and Ms. Bongiorno,

19   Mr. Madoff?

20             MS. FEIN:  Objection.  I don't -- the firm

21   name is listed here underneath Annette's name.  I

22   don't see that this letter is addressed to both Mr.

23   Madoff and Annette.

24        Q.  (By Mr. Kratenstein)  I see.  Okay.  So Mr.

25   Madoff, going back to prior testimony, is this the

CONFIDENTIAL

Page 462

1    type of letter that you would have expected Ms.

2    Bongiorno to show you?

3         A.   Yes.

4         Q.   And do you have any reason to believe that

5    she did not show it to you?

6         A.   Either showed me or told me on the phone.

7         Q.   Okay.  And when this letter says I assume,

8    Mr. Sage writes I assume that these positions will

9    be bought into prior to January 30 so as to avoid a

10   constructive sale, do you understand Mr. Sage to be

11   directing your firm to follow those instructions?

12        A.   Correct.

13             (Discussion off the record.)

14        Q.   (By Mr. Kratenstein)  And do you have any

15   recollection of the tax law being changed with

16   respect to short against the box transactions and

17   certain of those transactions being grandfathered?

18        A.   Yes, yes.

19        Q.   What do you recall of that?

20        A.   I recall that it happened.  I can't tell

21   you the details.

22             (Exhibit Number 70 was marked for

23   identification.)

24        Q.   (By Mr. Kratenstein)  Okay.  And now we're

25   just going to go through the same drill and I'm

CONFIDENTIAL

Page 463

1  going to ask you through statements whether any of

2  these transactions being directed in Exhibit 70 show

3  -- 69 rather show up on the Sage Associates

4  statements as Exhibit 70?

5        MS. FEIN:  Objection to form.  Thank you.

6     Q.  (By Mr. Kratenstein)  And do you see that

7  this is a January 31, 2003 Sage Associates

8  statement?

9     A.  Yes.

10     Q.  And do you see in the middle it shows

11  buying into RJR and Broadcom?

12     A.  Yes.

13     Q.  And is that as instructed in Exhibit 69?

14     A.  Yes.

15        MR. KRATENSTEIN:  You can put that

16  document aside and now we'll just do the memos or

17  confirms quickly, Exhibit 71.  Make sure this is

18  right.  Thanks.

19          (Exhibit Numbers 71 and 72 were marked for

20  identification.)

21     Q.  (By Mr. Kratenstein)  Exhibit 71, and here

22  is Exhibit 72.  And if you look at Exhibit 71 and

23  72, what are they?

24     A.  Confirmations.

25     Q.  Of what?

Page 464

1      A.  Sage Associates, R. J. Reynolds and

2  Broadcom.

3      Q.  And those are the transactions reflected in

4  Exhibit 69 --

5      A.  Correct.

6      Q.  -- being executed by your firm?

7      A.  Yes.

8          (Exhibit Number 73 was marked for

9  identification.)

10     Q.  (By Mr. Kratenstein)  One more to go.

11  Here's Exhibit 73.  Are you okay, Mr. Madoff?  You

12  need a break?

13     A.  No.  I'm fine.

14     Q.  Okay.  We're almost there.  I'm showing you

15  Exhibit 73, Mr. Madoff, which do you see that it's a

16  letter to Bernard L. Madoff Investment Securities,

17  attention, Annette Bongiorno, from Malcolm Sage?

18     A.  Yes.

19     Q.  It's on the letterhead of Sage

20  Associates --

21     A.  Uh-huh.

22     Q.  -- and Sage Associates II and the Maurice

23  S. Sage Foundation?

24     A.  Yes.

25     Q.  Do you have any reason to believe you would

CONFIDENTIAL

Page 465

1    not have been made aware of this letter by Ms.

2    Bongiorno?

3         A.  No.

4         Q.  In other words, she would have made you

5    aware of it; correct?

6         A.  Yes.

7         Q.  And do you have any reason to believe that

8    Ms. Bongiorno did not receive this letter?

9         A.  No.

10        Q.  Do you see the handwriting on the letter?

11        A.  Yes.

12        Q.  Is that Ms. Bongiorno's?

13        A.  Definitely.

14        Q.  How do you recognize it?

15        A.  I recognize the handwriting now that I'm

16   looking at it.

17        Q.  Okay.  The letter says -- and I'm sorry.

18   You recognize it from having worked with her;

19   correct?

20        A.  Yes.

21        Q.  And Mr. Sage writes after discussions with

22   Paul, we have come up with the following plan with

23   regards to Sage -- the Sage Associates IS-004, Sage

24   Associates II IS-005 and Maurice S. Sage Foundation,

25   Inc. IS-197 accounts.  Do you see that?

CONFIDENTIAL

Page 466

1      A.   Yes.

2      Q.   And, again, do you have any understanding

3  of what this plan was?

4      A.   It's just a tax plan realizing gains when

5  you have a short against the box transaction.

6      Q.   Do you understand what Ms. Bongiorno's

7  notes mean on this left-hand margin?

8      A.   By looking at -- by her saying $3 million

9  gain, it's realizing only part of the transaction.

10     Q.   What do you mean by that?

11     A.   In other words, she must have more shares

12  than she wants to sell.

13     Q.   Okay.  And then it says in a box no

14  long-term.  Do you see that?

15     A.   Yes.

16     Q.   Do you have an understanding --

17     A.   She doesn't want --

18     Q.   Let me finish.  Do you have an

19  understanding of what that means?

20     A.   Not to receive -- doesn't -- do not take a

21  long-term gain.

22     Q.   That would be for a tax reason?

23     A.   Yes.

24     Q.   Under Sage Associates there are four

25  transactions being directed.  Do you see that?

CONFIDENTIAL

Page 467

1          A.   Yes.

2          Q.   And under Sage Associates II there's one

3     transaction?

4          A.   Yes.

5          Q.   Under Maurice S. Sage Foundation there's

6     one transaction; correct?

7          A.   Yes.

8          Q.   Would these transactions have been

9     executed?

10         A.   Yes.

11         Q.   And that's because your firm would follow

12    your client's instructions; correct?

13         A.   Correct.

14              (Exhibit Number 74 was marked for

15    identification.)

16         Q.   (By Mr. Kratenstein)   Let's just again go

17    through the quick drill of confirming whether these

18    show up on the statements and in the memos and

19    confirms, so I'm going to put this letter here.   I'm

20    going to show you Exhibit 74, which is the

21    December 31, 2013 Sage Associates statement --

22    sorry -- 2003 Sage Associates statement.   Do you see

23    that?

24         A.   Yes.

25         Q.   And do you see the transfer of the Amgen

CONFIDENTIAL

Page 468

1    and Symantec as directed --

2         A.   Yes.

3         Q.   -- in Exhibit 73?

4         A.   Yes.

5              (Exhibit Number 75 was marked for

6    identification.)

7         Q.   (By Mr. Kratenstein)  And I'm going to show

8    you Exhibit 75.  And in Exhibit 75, do you see that

9    that is a December 31, 2003 Sage Associates

10   statement?

11        A.   Yes.

12        Q.   And do you see there the transactions that

13   had been directed by Mr. Sage with respect to

14   National Semiconductor, RJR, Amgen and Symantec?

15        A.   Yes.

16             MS. FEIN:  We didn't receive that.

17             MR. KRATENSTEIN:  Oh, you didn't get that

18   one?  I'll just make sure I have the right one.

19   Yes.

20             MS. FEIN:  Thank you.  Yes.

21             MS. CHAITMAN:  That's Exhibit 74?

22             MS. FEIN:  This is Exhibit 75; right?

23             MR. KRATENSTEIN:  It's Exhibit 75.

24             MS. CHAITMAN:  I'll ask do you have

25   another one?

CONFIDENTIAL

Page 469

1              MR. KRATENSTEIN:  Yes.

2              MS. CHAITMAN:  Thanks.

3              (Exhibit Numbers 76, 77, 78 and 79 were

4    marked for identification.)

5         Q.  (By Mr. Kratenstein)  And now let's just do

6    the memos and confirms quickly and we're almost

7    done.  Here's Exhibit 76, Exhibit 77 --

8              MS. FEIN:  Thank you.

9         Q.  (By Mr. Kratenstein)  -- and 78 and 79.

10   Mr. Madoff, have you had an opportunity to look at

11   what we've marked as Exhibits 70 -- what is it?  76,

12   77, 78 and 79?

13        A.  Yes.

14        Q.  And can you tell me what those documents

15   are?

16        A.  Confirmations.

17        Q.  Do they reflect the instructions with

18   respect to the -- the execution of the instructions

19   with respect to the Sage Associates account that are

20   contained in the letter that we marked as Exhibit

21   Number 73?

22        A.  Yes.

23              (Exhibit Numbers 80 and 81 were marked for

24   identification.)

25        Q.  (By Mr. Kratenstein)  Thank you.  And there

CONFIDENTIAL

Page 470

1    were in that letter instructions for Sage Associates

2    II, so let's just look at those statements quickly.

3    This is Exhibit Number 80 and Exhibit 81.

4             And just to refresh your recollection, with

5    respect to Sage Associates II in the letter

6    Exhibit 73, there's an instruction with respect to

7    Symantec for Sage Associates II.  And I'm going to

8    ask if you see on Exhibits 80 and 81 the execution

9    of that instruction?

10        A.  Yes.

11        Q.  And Exhibit -- just so the record is clear,

12   Exhibit 80 is a Sage Associates II statement from

13   December 31, 2003.  That's for the sub three

14   account.  And the next exhibit, 81, is a Sage

15   Associates II statement, also December 31, 2003, for

16   the seven subaccount of Sage Associates II; correct?

17        A.  Yes.

18             (Exhibit Number 82 was marked for

19   identification.)

20        Q.  (By Mr. Kratenstein)  Thank you.  Finally,

21   the confirm.  This is Exhibit 82.  Is that a -- what

22   is Exhibit 82?

23        A.  It's a memo.

24        Q.  It's a memo?  Does it --

25        A.  Showing movement of monies.

CONFIDENTIAL

Page 471

1      Q.   Does the second page show the Symantec

2   move?

3      A.   Yes.

4      Q.   Thank you.  And, finally, at the end of the

5   letter, Exhibit 73, you'll see that there's a

6   request to withdraw the sum of $16,000.  Do you see

7   that?

8      A.   Yes.

9           (Exhibit Number 83 was marked for

10   identification.)

11      Q.   (By Mr. Kratenstein)  I'm just showing you

12   Exhibit Number 83.  Do you recognize Exhibit 83?

13      A.   Yes.

14      Q.   What is it?

15      A.   A check, memo for a check.

16      Q.   For how much?

17      A.   Sixteen thousand dollars.

18      Q.   To the Maurice S. Sage Foundation?

19      A.   Yes.

20      Q.   That shows the execution of the instruction

21   at the end of Exhibit 73, the letter?

22      A.   Correct.

23           (Exhibit Number 84 was marked for

24   identification.)

25      Q.   Thank you.  We'll put that aside.  I'm

CONFIDENTIAL

Page 472

1    showing you Exhibit 84.  Do you recognize

2    Exhibit 84, Mr. Madoff?

3          A.   Yes.

4          Q.   What is it?

5          A.   It's a note from Annette.

6          Q.   And you recognize her handwriting?

7          A.   Yes.

8          Q.   Would this document have been prepared --

9    well, strike that.  Are you familiar with year-end

10   note documents prepared by Ms. Bongiorno?

11         A.   Yes.

12         Q.   How are you familiar with them?

13         A.   I've seen it before.

14         Q.   She prepared them in the ordinary course of

15   her business?

16         A.   Yes.

17         Q.   And it was a regular part of her

18   responsibilities to create notes like this?

19         A.   Yes.

20         Q.   And these documents would have been kept, a

21   document like this one would have been kept under

22   your firm's custody or control?

23         A.   Yes.

24         Q.   Do you see that there are notes here for

25   the Sage group?

CONFIDENTIAL

Page 473

1          A.   Yes.

2          Q.   And do you understand that to be referring

3     to the Sage family accounts we've been talking

4     about?

5          A.   Yes.

6          Q.   And do you have an understanding of what

7     the notes on the first page if you look at them

8     mean?

9          A.   I can't even read it.

10         Q.   Okay.  Well, do you see the second sentence

11    says -- tell me if you disagree with this -- could

12    have gone SAB in eBay but cust did not want it?

13         A.   Correct.

14              MS. FEIN:  Objection to form.

15         Q.   (By Mr. Kratenstein)  Correct?

16         A.   Could have brought short against the box on

17    eBay, but customer did not want it.

18         Q.   Do you understand that a member of the Sage

19    family was instructing your firm not to go short

20    against the box on eBay?

21         A.   Yes.

22         Q.   Would your firm have followed that

23    instruction?

24         A.   Yes.

25              (Exhibit Number 85 was marked for

CONFIDENTIAL

Page 474

1    identification.)

2         Q.  (By Mr. Kratenstein)  You can put that

3    document aside.  Exhibit 85.  Mr. Madoff, do you see

4    that this is a letter from Malcolm Sage to you?

5         A.  Yes.

6         Q.  Any reason to believe that you did not

7    receive this letter?

8         A.  No.

9         Q.  He writes Dear Bernie, it was nice to see

10   you at Ruth -- it was nice to see you and Ruth at

11   Paul's party.  Do you see that?

12        A.  Yes.

13        Q.  And I'll skip some of the rest and I'll go

14   to the second paragraph.  In the second sentence he

15   says, quote, when we spoke last year we decided that

16   it would be best to transition away from the managed

17   portfolio accounts.

18           And then he goes on to say a sentence later

19   or two sentences later since then our main holding,

20   eBay, has dropped significantly.  As that holding is

21   a long-term one, I was hoping that you had shorted

22   it against the box a while back.  If you have a

23   chance, can you confirm that?  Do you see that?

24        A.  Yes.

25        Q.  And do you have any recollection as to

CONFIDENTIAL

Page 475

1    whether you had, in fact, shorted against the box as

2    Mr. Sage had hoped?

3         A.   When was this letter written?  I don't

4    know.

5              (Exhibit Number 86 was marked for

6    identification.)

7         Q.   (By Mr. Kratenstein)  Well, let me see if I

8    can refresh your recollection.  He didn't date his

9    letters for whatever reason, so we have to match

10   them up against statements and/or confirms and

11   memos.  So I'm going to show you Exhibit 86.  And do

12   you see that this is a Sage Associates account

13   statement for April 30, 2006?

14        A.   Yes.

15        Q.   And do you see that there are various short

16   against the box positions for eBay?

17        A.   I see sales transactions on eBay, right.

18             (Exhibit Number 87 was marked for

19   identification.)

20        Q.   (By Mr. Kratenstein)  Sorry.  Sales

21   transactions, correct.  And then if we look at

22   Exhibit 48 -- I'm sorry -- Exhibit 87.  I apologize.

23   These are memos from this time period.  If you look,

24   April 2006, memos and/or confirms.  If you'll just

25   take a look at those and tell me what you see in

CONFIDENTIAL

Page 476

1    Exhibit 87?  What are those?

2         A.  I'm looking now.  These are all

3    confirmations.

4         Q.  And do you see that they say short against

5    the box?

6         A.  Yes.

7         Q.  So those would have been short against the

8    box transactions?

9         A.  Correct.

10        Q.  Presumably as requested in the letter that

11   we marked as Exhibit 85?

12        A.  Yes.

13             (Exhibit Number 88 was marked for

14   identification.)

15        Q.  (By Mr. Kratenstein)  Thank you.  Last

16   letter, last one.  This is Exhibit 88.  Mr. Madoff,

17   do you see that Exhibit 88 is a letter from Malcolm

18   Sage to you?

19        A.  Yes.

20        Q.  And it's got handwriting on it?

21        A.  Yes.

22        Q.  Whose handwriting?

23        A.  Annette's.

24        Q.  And, again, you recognize that from your

25   time working with her?

CONFIDENTIAL

Page 477

1          A.   Yes.

2          Q.   Do you have any reason to believe that you

3     did not receive this letter?

4          A.   No.

5          Q.   Do you see that Mr. Sage is writing to you,

6     Mr. Madoff, about sale of certain Sage Associates'

7     positions?

8          A.   Yes.

9          Q.   And he says Martin and I recently met with

10    Paul.  Let me stop there.  Do you understand Martin

11    to be Malcolm's brother, Martin Sage?

12         A.   Yes.

13         Q.   Martin and I recently met with Paul in

14    regard to selling our positions in the Sage

15    Associates accounts and to transfer the proceeds

16    into index option accounts.  Do you see that?

17         A.   Right, yes.

18         Q.   And do you have an understanding of what he

19    meant by index option accounts?

20         A.   That's a split strike transaction.

21         Q.   So prior to this date in Sage Associates it

22    was directed trading and he's now talking about

23    moving to split strike?

24              MS. FEIN:  Objection.

25              THE WITNESS:  Right.

CONFIDENTIAL

Page 478

1          Q.   (By Mr. Kratenstein)   Your answer was?

2          A.   Correct.

3          Q.   Thank you.  And if you look on the second

4    page, you can see at the bottom that Ms. Bongiorno's

5    notes have dates in them, one being 8-23-06.  Do you

6    see that at the bottom?

7          A.   Yes.

8          Q.   So do you believe that these notes were

9    created on or around August 23rd, 2006?

10          A.   Yes.

11          Q.   And Mr. Sage talks about -- he says, quote,

12    he referring presumably to Paul; correct?

13          A.   Right.

14          Q.   Had some ideas from a tax standpoint and

15    suggested that he with us meet with you at your

16    availability to finalize the transfer and the timing

17    thereof.  Do you see that?

18          A.   Yes.

19          Q.   Do you recall whether you, in fact, met?

20          A.   No.

21          Q.   You may have, you just don't recall?

22          A.   Correct.

23          Q.   Then Mr. Sage writes the only concern he

24    had of any immediacy was that we not buy back into

25    the eBay short position because that would trigger a

CONFIDENTIAL

Page 479

1   short-term recognition as opposed to, quote,

2   delivering, unquote, the stock.  Do you see that?

3        A.  Yes.

4        Q.  Do you have an understanding of what Mr.

5   Sage was talking about there?

6        A.  Yes.  He wanted us to deliver the

7   securities as opposed to -- I'm not sure whether he

8   was talking about delivering the securities from one

9   account to the other account, you know, to trigger a

10  particular gain or whether he was talking about

11  delivering the securities out, period, out of the

12  firm.

13       Q.  Okay.  But he is telling you that he

14  doesn't want you to buy back into the eBay short;

15  correct?

16       A.  Right.

17       Q.  And that's an instruction from him?

18       A.  Yes.

19       Q.  You would have followed that instruction?

20       A.  Yes.

21           MS. FEIN:  Objection.

22       Q.  (By Mr. Kratenstein)  Would you have

23  followed that instruction?

24       A.  Yes.

25       Q.  In the notes at the bottom Ms. Bongiorno --

Page 480

1   well, first, notes at the top Ms. Bongiorno writes

2   ask Bernie about this.  Do you see that?

3        A.  Yes.

4        Q.  Do you recall being asked about this?

5        A.  Do I recall?  No.  I can't --

6        Q.  Right.

7        A.  I can't say that I do.

8        Q.  Right.  It's too long ago?

9        A.  Yes.

10       Q.  Okay.  You may have been asked about it,

11  but you just can't remember?

12       A.  That's correct.

13       Q.  At the bottom she writes don't do anything.

14  We cannot -- the next word may be trim or tran.  Do

15  you have any idea?

16       A.  Must be transfer.

17       Q.  Transfer everything and leave open short

18  eBay.  Do you see that?

19       A.  Yes.

20       Q.  Do you have an understanding of what she's

21  saying there?

22       A.  She's telling us to leave the positions as

23  they appear, as they are.

24       Q.  Okay.  And then on the next page she writes

25  about several calls she had with Malcolm Sage.  Do

CONFIDENTIAL

Page 481

1   you see that?

2           A.   Yes.

3           Q.   So she writes first I called Malcolm Sage

4   end of June to say the accounts were as close to

5   even and should we do the transfers, exclamation

6   point.  Do you see that?

7           A.   Yes.

8           Q.   He said he would talk to Paul, call back.

9   Do you see that?

10          A.   Yes.

11          Q.   So is it fair to say that Ms. Bongiorno was

12  seeking instruction from Mr. Sage?

13          A.   Yes.

14          Q.   Next note, called again end of July.  He

15  said he didn't get a chance to get to talk to Paul

16  and he will call me back.  Do you see that?

17          A.   Yes.

18          Q.   And, again, do you understand Ms. Bongiorno

19  to be seeking instructions from Mr. Sage?

20          A.   Yes.

21          Q.   Last note, called again 8-23-06.  He said

22  the or he, it's hard to tell, promises to call me

23  back by Tuesday, August 29, 8-29, exclamation point.

24  Do you see that?

25          A.   Yes.

CONFIDENTIAL

Page 482

1      Q.   And, again, fair to say that Ms. Bongiorno

2   was looking for direction from Mr. Sage?

3      A.   Correct.

4      Q.   Okay.  We have talked about the Sage

5   Associates account and the fact that it was not a

6   split strike account; correct?

7      A.   Correct.

8      Q.   And we can pull out the year-end account

9   statements if you like, but we've marked a couple of

10   them.  We marked the December 31, '02 and we marked

11   other year-end statements for Sage Associates during

12   the course of this deposition, but at the end of the

13   year in a split strike account what would -- what

14   types of securities would be in the account?

15      A.   Typically, a basket of S&P 100 securities

16   and index options hedging that account.

17      Q.   But at the end of the year didn't you go to

18   treasuries and cash in most accounts?

19      A.   At the end of the year?

20      Q.   Yes.

21      A.   What period are you talking about?

22      Q.   Well, was there ever a period when in split

23   strike accounts you would at the end of the year at

24   least on the statements show that you had liquidated

25   the portfolio of securities in that account and

CONFIDENTIAL

Page 483

1   moved it into treasuries and cash?

2        A.   What period are you talking about because

3   we weren't -- I didn't actually do the split strike

4   trade --

5        Q.   Correct.

6        A.   -- at a certain period of time post-1992.

7        Q.   I'm talking about post-1992.

8        A.   Well, then we wouldn't have gone into the

9   -- we never would have done the transaction.

10       Q.   Right.

11       A.   So the monies could have been in

12  treasuries, you know, but it wouldn't be fair to say

13  that we were actually executing the split strike

14  trade post-1992.

15       Q.   Right.  But on a customer statement

16  post-1992 at the end of the year what would you

17  show?

18       A.   It would appear.  It would appear in

19  treasuries.

20       Q.   And in the Sage Associates year-end

21  statements would you show treasuries or would you

22  show actual positions?

23            MS. FEIN:  Objection.

24            THE WITNESS:  If it was in a split strike

25  strategy, we would not show the positions typically.

CONFIDENTIAL

Page 484

1    We would just show treasuries, which is a position.

2         Q.   (By Mr. Kratenstein)   Right.   And if it was

3    not in split strike, what would you show?   The

4    actual securities that were there?

5         A.   Yes.

6         Q.   And so, for example -- let me pull out the

7    document.   Hang on.

8              MS. CHAITMAN:   Is that Exhibit 80?

9         Q.   (By Mr. Kratenstein)   Here's Exhibit 63,

10   which we've already marked.   So here's Exhibit 63.

11   See, it's a Sage Associates account statement for

12   12-31-02?

13        A.   Correct.

14        Q.   And this is for the sub three account?

15        A.   Yes.

16        Q.   And you're showing actual securities in the

17   account at the end of the year, not treasuries and

18   cash?

19        A.   Correct.

20        Q.   And that shows it's not split strike;

21   right?

22        A.   Correct.

23        Q.   Your split strike accounts, they would

24   generate on paper steady returns; correct?

25        A.   Depends upon what period you're talking

CONFIDENTIAL

Page 485

1    about.

2         Q.   Post-1992?

3         A.   Yes.

4         Q.   Of 10 to 20 percent; correct?

5         A.   No.

6         Q.   What was the general --

7         A.   Talking about an annualized return?

8         Q.   Annualized?

9         A.   Yes.

10        Q.   So 10 to 20 percent annually?

11        A.   Correct.

12        Q.   For an account like the Sage Associates

13   account which was not split strike and which was

14   showing actual securities, what kind of returns

15   would that type of account show?

16        A.   I have no idea.  It depends.

17        Q.   It would depend on the type of securities

18   in the account; right?

19        A.   That's right.

20        Q.   It wouldn't be a steady return?

21        A.   No.  Could be, but depends upon there were

22   never really steady returns.  That's been mentioned

23   before.  There was some -- there was some -- you

24   know, depends upon the strategy and depends upon the

25   period of time.  It could have been -- if you're

CONFIDENTIAL

Page 486

1    talking about at the end of the month or the end of

2    the quarter, the returns could be all over the

3    place.

4         Q.  So in Sage Associates in 2002, for

5    example --

6         A.  Yes.

7         Q.  -- if Malcolm Sage was directing you to buy

8    and sell securities in Sage Associates; correct?

9         A.  Yes.

10        Q.  And you were holding those securities;

11   correct?

12        A.  Yes.

13        Q.  The Sage Associates accounts certainly in

14   2002 and any other year in which that type of

15   trading was being done would reflect the return of

16   the transactions that were executed in the account;

17   correct?

18        A.  Correct.

19        Q.  And that may not be a steady return?  It

20   would follow the market for those securities;

21   correct?

22             MS. FEIN:  Objection.

23             THE WITNESS:  Correct.

24        Q.  (By Mr. Kratenstein)  Correct?

25        A.  Yes.

CONFIDENTIAL

Page 487

1                MR. KRATENSTEIN:  Thank you very much, Mr.

2      Madoff.  I have no further questions at this time.

3      Why don't we take a break?

4                MR. GOLDMAN:  Your food from the wherever

5      they make it is here.

6                THE VIDEOGRAPHER:  Going off the record.

7      The time is 11:09.

8                (A recess was taken and Exhibit 53A was

9      marked for identification.)

10               THE VIDEOGRAPHER:  Back on the record.

11     The time is 11:58.

12         Q.  (By Mr. Kratenstein)  Mr. Madoff, it was

13     pointed out during your examination that we had an

14     error in one of our exhibits, so I just want to

15     correct the error.

16               I put in front of you, back in front of you

17     Exhibit 47, which was the -- a letter from Malcolm

18     Sage to Bernard L. Madoff Investment Securities.

19     And it says Dear Bernie -- we marked it as

20     Exhibit 47.  One of the transactions in that letter

21     under 1(c) involved movement of International Paper

22     moving the short position from the Sage Associates

23     seven account to the three account.  Do you see

24     that?

25         A.  Yes.

CONFIDENTIAL

Page 488

1          Q.   And I had showed you as Exhibit 53 memos

2     and/or confirms relating to that and it was pointed

3     out that we had some mispagination.  So I'm showing

4     you Exhibit 53A, which bears production numbers Sage

5     0004290 to 91.  Do you see that?

6          A.   Uh-huh.

7          Q.   And can you tell me what that is?

8          A.   It's a credit memo.

9          Q.   And that shows the transfer of the

10    international paper short position from the seven

11    account to the three account --

12         A.   Right.

13         Q.   -- as reflected --

14         A.   Right.

15         Q.   -- as instructed rather in Exhibit 47?

16         A.   Correct.

17         Q.   And you would have these memos instead of

18    confirms because it's an internal transfer?

19         A.   That's correct.

20         Q.   If you were doing a -- you'd have a confirm

21    when you were actually buying or selling?

22         A.   Right.

23              MR. KRATENSTEIN:  Thank you very much.

24    That concludes my direct examination.  Thank you.

25              MS. FEIN:  I understand from you, Helen,

CONFIDENTIAL

Page 489

1    that you're not planning to do an examination today.

2    We are waiting until the direct examination of Mr.

3    Madoff is finished to start our cross-examination.

4    That's what was contemplated by the order that was

5    entered by this Court September 11th, 2017 regarding

6    Mr. Madoff's second day deposition.

7              To the extent for whatever reason that we

8    don't have time to finish our cross-examination

9    tomorrow, we will object to the use of the testimony

10   and move to strike the direct testimony.  Thanks.

11             MR. KRATENSTEIN:  Before you go off, I

12   want to make sure I understand that.  If you don't

13   have time to finish your cross tomorrow, you reserve

14   the right to strike everything we did today?

15             MS. FEIN:  What I should say is to the

16   extent we're not permitted equal time to finish

17   tomorrow, so if for some reason Mr. Madoff is

18   unavailable tomorrow or there's some reason where we

19   don't have sufficient time in one day; not that we

20   would need -- be seeking future days after that, but

21   as long as we are provided what the order

22   contemplated, which is one day of direct testimony

23   and we shouldn't need more than that and that's what

24   we've agreed to, then that's all that we would need.

25             MR. KRATENSTEIN:  Okay.  Well, I think I

CONFIDENTIAL

Page 490

1  understand your position, but we reserve all

2  rights --

3            MS. FEIN:  Certainly.

4            MR. KRATENSTEIN:  -- and cross these

5  bridges if and when we get to them.

6            MS. FEIN:  Certainly.  Thank you.

7            MR. KRATENSTEIN:  Thanks.

8            THE VIDEOGRAPHER:  We're off the record in

9  the November 8th, 2017 deposition of Bernard L.

10 Madoff, Volume III.  The number of discs used was

11 one.  The time is 12:02.

12            (Reading and signing of the deposition by

13 the witness was reserved and the deposition was

14 adjourned at 12:02 p.m.)

15

16                    *  *  *  *  *

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

Page 491

1                    C E R T I F I C A T E

2    NORTH CAROLINA:

3    GUILFORD COUNTY:

4            I hereby certify that the foregoing

5    deposition was reported, as stated in the caption,

6    and the questions and answers thereto were reduced

7    to the written page under my direction; that the

8    foregoing pages 386 through 493 represent a true and

9    correct transcript of the evidence given.  I further

10   certify that I am not in any way financially

11   interested in the result of said case.

12           I have no written contract to provide

13   reporting services with any party to the case, any

14   counsel in the case, or any reporter or reporting

15   agency from whom a referral might have been made to

16   cover this deposition.  I will charge my usual and

17   customary rates to all parties in the case.

18           This, the 21st day of November, 2017.

19

20

                         *K. Denise Neal*

21

22                       K. Denise Neal, RPR

                         Registered Professional Reporter

23                       Notary Public No. 200517500101

24

25

CONFIDENTIAL

Page 492

1                          E R R A T A   S H E E T

2

3          Pursuant to Rule 30(7)(e) of the Federal Rules

4    of Civil Procedure, any changes in form or substance

5    which you desire to make to your deposition

6    testimony shall be entered upon the deposition with

7    a statement of the reasons given for making them.

8

9          To assist you in making any such corrections,

10   please use the form below.  If supplemental or

11   additional pages are necessary, please furnish same

12   and attach them to this errata sheet.

13                          * * * * *

14          I, the undersigned, BERNARD L. MADOFF, do hereby

15   certify that I have read the foregoing deposition

16   and that to the best of my knowledge said deposition

17   is true and accurate (with the exception of the

18   following corrections listed below).

19

20

21

22

23

24

25

CONFIDENTIAL

**Page 493**

1   Page        Line       should read:

2   Reason for change:

3

4   Page        Line       should read:

5   Reason for change:

6

7   Page        Line       should read:

8   Reason for change:

9

10  Page        Line       should read:

11  Reason for change:

12

13  Page        Line       should read:

14  Reason for change:

15

16  Page        Line       should read:

17  Reason for change:

18

19  Page        Line       should read:

20  Reason for change:

21  Signature:

22  Sworn to and Subscribed before me

23                              , Notary Public.

24  This        day of              , 2017.

25  My Commission Expires:

**[& - 40]**                                                                    Page 1

**&**

**&**   387:14 395:3
404:22 413:17,19
414:25 417:5
438:13

**0**

**0004**   453:18
**0004290**   488:5
**0009352**   426:2
**004**   437:14 460:12
465:23
**005**   437:14 460:13
465:24
**00709388**   411:9
**0091185**   430:6
**00941185**   431:14
**0197**   453:19
**02**   482:10
**08-01789**   386:7
394:21
**0964437**   418:15

**1**

**1**   439:25 487:21
**1-31-03**   392:18
**1-31-83**   389:22,23
**1-31-97**   390:8
**10**   485:4,10
**100**   482:15
**10022**   387:7
**10111-0100**   388:8
**10173-1922**
387:16
**10573**   388:15
**10:13**   436:9
**11-30-01**   390:18
390:20
**11:09**   487:7
**11:58**   487:11
**11th**   489:5

**12**   388:14
**12-13-79**   389:12
**12-24-02**   455:18
**12-31-02**   484:12
**12-31-03**   392:24
393:4,10,12
**12-31-81**   389:20
**12-31-96**   390:6
**12:02**   490:11,14
**13th**   406:14 407:5
409:17 411:1
**15,000**   455:6
**16**   446:22
**16,000**   471:6
**160**   411:11
**16th**   408:24
**17**   389:11 390:11
406:12 407:22
409:4,16 410:1
430:17
**184**   431:22
**185**   430:11
**197**   465:25
**1976**   397:24
**1979**   403:24
406:14 407:5
409:17 411:1
**1980**   413:6
**1981**   414:18
416:23
**1983**   417:19
419:21
**1985**   431:4 433:9
433:21 434:12
**1986**   421:1,10
**1992**   398:16,22
416:6 483:6,7,14
483:16 485:2
**1994**   422:23
423:10 428:12

**1996**   408:24 424:5
424:8 426:15
**1997**   424:19
426:10,16
**19th**   421:10

**2**

**2,099**   423:9
**20**   450:5,14,18,19
485:4,10
**2000**   399:22
**2001**   441:4
**2002**   486:4,14
**2003**   463:7 467:22
468:9 470:13,15
**200517500101**
491:23
**2006**   475:13,24
478:9
**2013**   467:21
**2017**   386:22
394:10 489:5
490:9 491:18
493:24
**212**   387:17 388:9
**21st**   491:18
**220,000**   455:3
**224**   448:11,17
**23rd**   423:15 478:9
**24th**   424:8
**25,000**   455:13
459:5,6
**29**   481:23
**290**   446:9

**3**

**3**   466:8
**3-31-80**   389:14
**30**   421:1 461:2
462:9 475:13
492:3

**3000**   386:20
394:13
**303-4568**   387:8
**30th**   414:18 441:4
**31**   403:24 413:6
416:23 417:19
419:21 422:23
424:5,19 426:10
428:12 431:4
433:20 434:12
463:7 467:21
468:9 470:13,15
482:10
**32**   389:9 403:11,16
410:15
**33**   389:11 405:23
406:3,6 408:13
409:3,16 410:4,15
**34**   389:13 408:13
408:14 412:20,22
412:23,25
**34,780**   432:21
433:2 434:23
**340**   387:15
**35**   389:15 408:14
408:17,22
**36**   389:17 414:4,7
414:14
**37**   389:19 416:9,19
**38**   389:21 417:11
417:14
**386**   491:8
**39**   389:23 419:15
419:17
**395**   389:3

**4**

**4,198**   423:14
**4-2**   446:21
**4-30-06**   393:19
**40**   389:24 420:23
420:25

**[40,000 - 75]**                                           Page 2

**40,000**   455:8
**403**   389:9
**405**   389:11
**408**   389:15
**41**   390:3 422:19,22
**412**   389:13
**414**   389:17
**416**   389:19
**417**   389:21
**419**   389:23
**42**   390:5 423:24
   424:2 426:14
   427:8,22
**420**   389:24
**422**   390:3
**4222**   449:4
**4223**   449:4
**4224**   449:4
**423**   390:5
**424**   390:7
**428**   390:9
**429**   390:11
**4290**   446:13,17
**4291**   446:15,17
**4292**   446:15,17,18
**4293**   446:18
**4294**   446:7
**43**   390:7 424:11,15
   425:20,22 427:8
   427:22
**433**   390:13
**436**   390:15
**44**   390:9 428:2,8
**440**   390:17
**441**   390:19
**442**   390:21,23
   391:3,5
**444**   391:8
**447**   391:10
**448**   391:12

**449**   391:14
**45**   388:7 390:11
   429:22 430:4
**450**   391:16
**451**   391:18,20
**452**   391:22
**456**   391:23
**458**   392:3,7
**459**   392:9,11,13,15
**46**   390:13 433:15
   433:16,19
**462**   392:17
**463**   392:19,20
**464**   392:21
**465**   387:6
**467**   392:23
**468**   393:3
**469**   393:5,6,7,8,9
   393:11
**47**   390:15 436:6,14
   441:8 449:13,23
   450:23 452:1,13
   452:19 487:17,20
   488:15
**47,814**   424:8
**470**   393:13
**471**   393:14,15
**474**   393:16
**475**   393:18,20
**476**   393:21
**48**   390:17 440:23
   441:1 475:22
**487**   391:7
**49**   390:19 441:20
   441:23
**493**   491:8

**5**

**5**   389:15 410:1
**5,000**   432:13
**5-16-96**   389:16

**5-31-85**   390:14
   430:18 433:20
**5-31-94**   390:4
**50**   390:21 427:4
   442:11,13,19
   443:12,13
**51**   390:23 442:21
   443:9,14,15
   449:11
**52**   391:3 442:21
   443:9
**53**   391:5 426:2
   442:21 443:22
   444:5,20 445:2,4,7
   445:8,14 488:1
**53a**   391:7 487:8
   488:4
**54**   391:8 444:22,25
   447:14
**547-5695**   387:17
**55**   391:10 447:19
   447:22 448:3,23
   449:11
**56**   391:12 448:15
   448:19
**57**   391:14 449:16
   449:24,25 450:15
   450:16,21 451:2
**58**   391:16 450:9,12
   450:25 451:9
**589-4621**   388:9
**59**   391:18 451:19
   451:22 452:9,11
   452:12

**6**

**6**   440:12
**6-30-81**   389:18
**6-30-86**   389:25
**60**   391:20 451:19
   452:8,9,11,16

**600,000**   440:1
   442:8,17 448:19
**60s**   397:15
**61**   391:22 452:21
   452:25 457:6
   458:12 459:4,15
**62**   391:23 456:7,12
   457:25,25 458:4
**63**   392:3 458:6,8
   484:9,10
**64**   392:5 458:20,22
   459:2
**65**   392:7 458:15,19
   459:1,5
**66**   392:9 459:8,11
   459:13
**67**   392:11 459:8,12
**68**   392:13 459:8,12
   459:13
**69**   392:15 459:17
   459:20 463:3,13
   464:4
**6th**   423:10

**7**

**7**   492:3
**7-31-94**   390:10
**70**   392:17 462:22
   463:2,4 469:11
**71**   392:19 463:17
   463:19,21,22
**72**   392:20 463:19
   463:22,23
**73**   392:21 464:8,11
   464:15 468:3
   469:21 470:6
   471:5,21
**74**   392:23 467:14
   467:20 468:21
**75**   386:21 393:3
   394:13 468:5,8,8
   468:22,23

**76** 393:5 469:3,7 469:11
**77** 393:6 469:3,7 469:12
**78** 393:7 469:3,9 469:12
**79** 393:8 469:3,9 469:12

**8**

**8-23-06** 478:5 481:21
**8-29** 481:23
**80** 393:9 469:23 470:3,8,12 484:8
**81** 393:11 469:23 470:3,8,14
**82** 393:13 470:18 470:21,22
**83** 393:14 471:9,12 471:12
**84** 393:15 471:23 472:1,2
**85** 393:16 431:24 431:25 473:25 474:3 476:11
**86** 393:18 475:5,11
**87** 393:20 475:18 475:22 476:1
**88** 393:21 476:13 476:16,17
**8th** 386:21 394:10 490:9

**9**

**9,000** 432:12
**908** 387:8
**91** 488:5
**914** 388:16
**93** 446:15
**935-6857** 388:16

**9381** 410:6,10,13
**94** 424:21 425:3 446:15
**941185** 430:12
**96** 424:25
**964437** 418:16
**965279** 434:19,22
**9:00** 386:22 394:11
**9:40** 429:18
**9:51** 429:21
**9:57** 436:5

**a**

**a.m.** 386:22 394:11
**abercrombie** 438:13 439:22
**accomplish** 453:25
**account** 389:14,18 389:20 398:9 399:7 400:23 403:6,21,22 404:2 404:19 405:4,14 406:10 408:5 410:17 412:1,2 413:5,11 414:21 417:25 418:9 421:2 429:25 430:2,24 434:2 438:14,15,24 439:2,4,9,16 440:2 440:4 451:11 454:9,10,24,24 455:6,7,12 458:11 469:19 470:14 475:12 479:9,9 482:5,6,8,13,14,16 482:25 484:11,14 484:17 485:12,13 485:15,18 486:16 487:23,23 488:11

488:11
**accountant** 397:9 437:19
**accounts** 398:4,6 398:12,22 399:6 400:16 402:21,23 403:14 404:8 432:7 436:12,20 437:15 438:10 442:4 453:19 455:8 465:25 473:3 474:17 477:15,16,19 481:4 482:18,23 484:23 486:13
**accumulating** 422:9
**accurate** 492:17
**acting** 419:5
**actions** 438:8
**activity** 389:9 390:14 403:22 404:18 417:23 434:2 451:25
**actual** 416:2 420:9 421:14 423:20 427:18 429:5 433:10 435:5 444:17 483:22 484:4,16 485:14
**add** 432:15,21 446:2
**addition** 421:17 432:16 447:16
**additional** 492:11
**addressed** 453:11 454:16 461:11,18 461:22
**addressee** 454:18
**adjourned** 490:14

**afein** 388:10
**affiliated** 396:12
**agency** 491:15
**agent** 412:7
**agents** 433:8
**ago** 428:2 480:8
**agree** 394:7 443:24 451:6
**agreed** 489:24
**akratenstein** 387:18
**alcan** 404:21
**alpern** 397:12
**amanda** 388:4 395:14 452:5
**america** 411:11,15 411:18 412:3,5,14 412:16,18 417:20 418:2,4,8,12,24 419:2,19 420:15
**american** 404:22 413:17,19 414:25 417:5
**amgen** 467:25 468:14
**amount** 445:22 455:2,3
**andrew** 387:13 395:2 412:13 431:23 452:8 456:13
**ann** 387:12 395:6 396:10,25 398:3 401:23
**annette** 402:4 437:3 453:8,12 454:17 456:25 457:1,9,10 459:22 460:10 461:12,12 461:13,23 464:17 472:5

**annette's** 461:21 476:23
**annualized** 485:7 485:8
**annually** 485:10
**answer** 408:6 409:21 429:2 478:1
**answers** 491:6
**anybody** 402:3
**apologize** 412:24 424:16 425:5 458:24 475:22
**appear** 443:7 446:9,18 480:23 483:18,18
**appearances** 387:1 388:1
**appears** 423:8 444:15
**appleby** 432:18
**applicant** 386:6 394:15,17
**appreciate** 409:1
**approximately** 394:11 397:22 440:1
**april** 475:13,24
**arbitrage** 399:3,5 421:18,19,22 422:5,17 423:18 429:8
**asarco** 404:21 411:19
**aside** 406:1 412:12 414:3 417:14 419:14 420:22 421:17 423:23 427:21 429:12 441:15,16 463:16 471:25 474:3

**asked** 415:25 442:7,7 456:20,22 480:4,10
**asking** 442:3 452:10 459:4
**asks** 439:25 440:15 455:21,21
**assist** 492:9
**assistants** 457:18
**associates** 387:11 390:17,19,21 391:14,16,18,20 391:23 392:3,17 392:23 393:3,9,11 393:18 395:6 396:12 398:7,12 430:1 432:8,13,17 436:17,18 437:14 437:14 438:9,10 438:19 440:7,12 441:3,17,24 449:19,20,21,22 450:21,22 451:10 451:24 452:14 453:2,18 454:6 458:11 459:23,23 460:12,12,18,19 460:19 463:3,7 464:1,20,22 465:23,24 466:24 467:2,21,22 468:9 469:19 470:1,5,7 470:12,15,16 475:12 477:6,15 477:21 482:5,11 483:20 484:11 485:12 486:4,8,13 487:22
**assume** 410:3 415:17 437:19 438:1 457:13,15

461:1 462:7,8
**assuming** 408:11 409:5 427:6
**assumption** 416:5
**at&t** 424:9 426:19 426:20,24 427:3,5 427:9,10,13
**attach** 492:12
**attached** 445:7
**attack** 397:20
**attending** 394:23
**attention** 431:18 454:17 464:17
**attorneys** 394:23
**atypical** 400:10
**audio** 394:6
**august** 478:9 481:23
**availability** 478:16
**available** 455:15 457:19
**avenue** 387:6,15
**averaging** 422:9
**avoid** 461:3 462:9
**aware** 402:8 465:1 465:5

**b**

**b** 387:13
**baby** 427:1
**back** 408:14 410:4 416:8 425:21 429:20 436:8,10 459:1 461:25 474:22 478:24 479:14 481:8,16 481:23 487:10,16
**backwards** 438:2
**baker** 388:6 395:14

**bakerlaw.com** 388:10
**bank** 390:14 405:7 411:11,14,17 412:3,5,14,15,18 417:19 418:2,3,7 418:12,24 419:2 419:18 420:15,17 433:3,6,7,12,21 434:3,25 435:6
**bankers** 420:17
**bankruptcy** 386:1 394:20
**banks** 420:11
**barclays** 420:16
**base** 460:11
**based** 419:10 454:4
**basically** 400:15 401:3 402:2
**basis** 454:13 461:9
**basket** 482:15
**bates** 410:5 425:24 430:5,11
**bear** 420:16
**bears** 488:4
**begins** 437:11
**behalf** 386:17 387:3,11 388:3,12 395:9,10,12,15
**believe** 396:6 422:8 436:22 437:7,21 438:5 446:3 453:4,7 460:4 462:4 464:25 465:7 474:6 477:2 478:8
**bells** 427:2
**bernard** 386:8,12 386:16 389:2 394:17,22 395:11

395:19 464:16 487:18 490:9 492:14

**bernie** 437:12 474:9 480:2 487:19

**best** 397:13 460:13 474:16 492:16

**bit** 417:17

**bob** 388:20 394:8

**bond** 399:2,5 413:17 418:20 419:1,11 421:8,18 422:5

**bonds** 420:5

**bongiorno** 402:4 437:3,5 453:14 454:17,20 455:18 459:22 461:18 462:2 464:17 465:2,8 472:10 479:25 480:1 481:11,18 482:1

**bongiorno's** 402:12,20 438:5 453:8 465:12 466:6 478:4

**bookkeeper** 402:9

**bookkeeping** 404:13

**bottom** 410:13,20 411:12 418:15,19 431:19,20 433:1 452:14 478:4,6 479:25 480:13

**bought** 461:2 462:9

**box** 438:20 439:1 439:6,7,16 460:14 460:21 462:16 466:5,13 473:16

473:20 474:22 475:1,16 476:5,8

**break** 429:13 435:14 436:2 446:23,23 447:11 464:12 487:3

**bridges** 490:5

**broadcom** 455:5 458:1,2 460:17 461:6 463:11 464:2

**broadway** 411:12

**brokerage** 405:8 406:22 412:7 420:20

**brook** 388:15

**brother** 477:11

**brought** 473:16

**building** 399:24

**bunch** 435:15

**business** 404:8 407:1,8 410:2 413:13 414:22 417:2 419:25 421:6 427:4 431:1 431:11 434:6,15 472:15

**butner** 386:21 394:12,14

**buy** 400:7,22 401:9 415:18 428:22 461:6 478:24 479:14 486:7

**buying** 423:9 427:9 463:11 488:21

---

**c**

**c** 487:21 491:1,1

**call** 440:16 455:22 458:25 481:8,16

481:22

**called** 398:7,9 403:14 406:11 422:6 429:25 430:17 439:18 481:3,14,21

**calling** 457:18

**calls** 480:25

**caption** 394:15 491:5

**carolina** 386:21 394:14 491:2

**case** 394:16,19,21 407:5 408:24 423:8 431:5 457:1 491:11,13,14,17

**cash** 389:11,15 406:12,18 407:17 407:22 408:1,7,22 409:4,7,25 410:25 412:1 428:23 482:18 483:1 484:18

**cell** 394:4

**central** 404:24

**certain** 402:11,11 454:3 460:11 462:17 477:6 483:6

**certainly** 486:13 490:3,6

**certify** 491:4,10 492:15

**cetera** 420:5

**chaitman** 387:4,5 395:8,8 408:20 410:9,11 412:22 414:15 424:17 425:8 426:5,8 428:3,5 430:10 431:16 435:9,12

435:18,22 443:12 443:14,19 444:2 447:6 448:6 450:13,18 451:1,5 452:7 458:20 468:21,24 469:2 484:8

**chaitmanllp.com** 387:9

**chance** 474:23 481:15

**change** 400:3 493:2,5,8,11,14,17 493:20

**changed** 462:15

**changes** 492:4

**changing** 429:13

**charade** 416:8,13

**charge** 491:16

**charitable** 397:21

**chase** 420:14

**check** 393:14 424:24 437:8,9 471:15,15

**checks** 438:2

**children** 396:24 398:2

**choice** 440:22

**civil** 492:4

**clarify** 445:17 456:13

**clear** 443:11 447:2 447:11,11 470:11

**cleared** 419:6

**clearing** 433:8

**client** 389:9 402:10 403:8 405:5 406:22 456:20,22 457:20

**client's** 467:12

**clients** 397:8
400:14 402:23
403:1,21 408:4
440:21 457:12
**close** 438:15
454:10,24 481:4
**closing** 450:4
**clvs** 388:20
**coca** 440:7 450:5,6
450:22 452:16
**cola** 440:7 450:5,6
450:22 452:16
**collier** 388:20
394:8
**come** 396:17 397:5
406:23 408:14
437:12,22 453:17
457:4 459:1
465:22
**commencing**
386:22
**commercial**
420:15
**commission**
493:25
**companies** 427:1
**company** 422:3
423:2,6
**compare** 441:2
**complete** 396:6
**concern** 447:9
478:23
**concerning** 456:10
**concludes** 488:24
**confident** 419:10
**confidential**
386:15
**confirm** 443:6
444:8 445:11,13
445:21 448:7,13
448:17 470:21

**confirmation**
390:23 391:3,6,9
391:11,13 392:10
392:12,14 393:13
444:14,17 445:10
445:12 448:2
**confirmations**
392:19,20 393:5,6
393:7,8,20 463:24
469:16 476:3
**confirming** 467:17
**confirms** 391:19
391:21 442:25
443:3,25 447:17
447:23 451:22,24
459:11 463:17
467:19 469:6
475:10,24 488:2
488:18
**considered** 400:20
**constructive**
460:16 461:3
462:10
**contained** 459:14
469:20
**contemplated**
489:4,22
**contents** 389:1
**continental** 420:14
**continue** 394:7
**continued** 390:1
391:1 392:1 393:1
**contract** 491:12
**control** 404:16
472:22
**conversation**
402:8
**conversations**
394:4
474:23 488:20

**conversion** 401:6
**convertible** 399:2
399:5 401:5
413:16 418:20
421:18 422:5
**copies** 430:7
443:15
**copy** 442:14
446:16 448:23
**corner** 404:5
410:5,7
**corp** 413:16
426:19,19
**corporate** 421:22
422:16 429:8
**corporation** 386:5
394:16
**correct** 398:1,8,10
398:16,17,19,20
398:24 399:3,4,10
399:12,15 402:18
404:10 405:15
407:2,6 411:2
412:6 413:6,14,21
414:19 416:1
417:21 418:12
419:12,20,22
420:1,7,10,13,17
420:19 421:14
422:7,12,13 423:3
423:10,11,13,15
423:16,19 424:10
424:21 427:12,14
429:7,11 431:2,6
432:14,23,24
433:4,13 434:13
434:16,17 435:1,4
435:7 437:2,4
438:4,6,11,17,22
438:25 439:3,15
439:24 440:2,3,14

440:17 441:9,19
442:10 449:15
451:4,16 452:14
452:15,18,19,20
453:13 454:10,12
454:21,22 455:3,4
455:10 456:4,5
457:23 462:12
464:5 465:5,19
467:6,12,13
470:16 471:22
473:13,15 475:21
476:9 478:2,12,22
479:15 480:12
482:3,6,7 483:5
484:13,19,22,24
485:4,11 486:8,11
486:17,18,21,23
486:24 487:15
488:16,19 491:9
**corrected** 412:19
**correction** 394:13
**correctional**
386:20
**corrections** 492:9
492:18
**correspondence**
403:9
**corresponding**
439:19
**corresponds** 446:8
**counsel** 387:1
388:1 394:14
431:15 491:14
**county** 491:3
**couple** 416:22
482:9
**course** 406:25
410:2 413:12
414:22 417:2
419:25 421:5

431:1,10 434:5,15
472:14 482:12
**court** 386:1
  394:20,25 395:16
  489:5
**cover** 491:16
**create** 472:18
**created** 431:10
  434:5 478:9
**creates** 427:16
**credit** 391:7 488:8
**credits** 405:10
**cross** 489:3,8,13
  490:4
**cust** 473:12
**custody** 404:16
  472:22
**customary** 491:17
**customer** 397:2,5
  397:14 432:7
  473:17 483:15
**customer's** 403:6
  432:16
**customers** 386:18
  387:3 389:8 390:2
  391:2 392:2 393:2
  396:15,17 398:3
  398:18 401:2,13
  432:18 456:4

**d**

**dasaro** 388:5
  395:12,12 418:17
  434:21 435:25
  458:21
**date** 394:10 404:5
  407:4 409:2 431:4
  441:24 455:18
  475:8 477:21
**dated** 403:23
  406:14 408:23
  411:1 413:6

417:19 419:21
422:23 424:19
428:11
**dates** 399:21 478:5
**davis** 387:4 395:8
**day** 386:21 489:6
  489:19,22 491:18
  493:24
**days** 489:20
**deal** 402:3
**dear** 437:11
  453:12 460:10
  461:13 474:9
  487:19
**debtor** 386:13
**december** 403:24
  406:14 407:5
  409:17 411:1
  416:23 424:5,8
  467:21 468:9
  470:13,15 482:10
**decided** 474:15
**decision** 400:14,15
  400:22
**defendant** 386:9
  394:18
**defendants** 395:9
**define** 403:1
  415:12
**definitely** 465:13
**definition** 400:16
**deliver** 438:14
  454:7,23 455:6
  479:6
**delivered** 405:6
  455:2
**delivering** 479:2,8
  479:11
**delivery** 410:16
  416:3 450:4

**denise** 386:18
  394:25 395:17
  491:22
**department**
  404:14
**depend** 485:17
**depending** 419:5
**depends** 419:4
  457:17 484:25
  485:16,21,24,24
**deponent** 388:12
**deposition** 386:16
  394:6,12 482:12
  489:6 490:9,12,13
  491:5,16 492:5,6
  492:15,16
**depository** 418:6
  419:8
**describe** 397:7
  423:4 426:23
**described** 422:4,8
**desire** 492:5
**details** 462:21
**died** 398:1
**difference** 445:20
**different** 395:9
  401:1 402:7 409:2
  417:17 445:22
  446:10,18
**dinner** 397:21
**direct** 400:4,5
  488:24 489:2,10
  489:22
**directed** 401:8
  441:7 451:12
  458:3,11 463:2
  466:25 468:1,13
  477:22
**directing** 436:12
  438:8 454:20
  461:14 462:11

486:7
**direction** 458:18
  482:2 491:7
**directs** 454:6,15
**disagree** 473:11
**discretion** 400:17
  400:18,20
**discretionary**
  400:16,23 401:2
**discs** 490:10
**discussing** 423:18
**discussion** 462:13
**discussions** 437:12
  453:16 465:21
**disney** 431:20
  432:4,6,12,24
  434:23
**distribution**
  426:24 428:24
**district** 386:1
  394:20
**divestitures**
  426:25
**dividend** 422:1
**document** 389:10
  403:16,18,21
  406:1,2 413:2,11
  413:11 414:3
  416:20 417:14,17
  417:22 419:14,24
  420:3,22 421:16
  423:23 424:3,4,14
  425:18,19 426:14
  427:21 430:3,17
  430:20 433:15,15
  433:24 434:4
  441:3,15 444:1
  463:16 472:8,21
  474:3 484:7
**documents** 404:4
  404:15 412:12

[documents - extra]                                          Page 8

414:21 416:13
436:13 442:24
443:3 449:10
456:10 469:14
472:10,20
**doing** 435:15
488:20
**dollar** 445:22
**dollars** 471:17
**dow** 439:22
**dr** 404:21
**draw** 431:18
**drill** 462:25
467:17
**dropped** 474:20
**duly** 395:20

**e**

**e** 388:4 491:1,1
492:1,1,1,3
**earlier** 403:14
418:20 421:9
423:18 436:11
448:20
**ebay** 473:12,17,20
474:20 475:16,17
478:25 479:14
480:18
**eight** 439:4 440:2
**either** 407:19
410:1 412:6 457:7
462:6
**electric** 423:2,9
**emery** 387:14
395:3
**emulex** 454:6,25
458:1,2
**ends** 410:6
**entails** 428:18
**entered** 489:5
492:6

**entire** 455:2
**entities** 396:11
**entries** 405:9
411:24 418:19
432:18
**entry** 411:11
421:10 431:20
433:1 435:10
438:12
**equal** 489:16
**equivalent** 409:1,2
**errata** 492:12
**error** 487:14,15
**esq** 387:4,13 388:4
388:5,13
**estate** 395:5
**et** 420:5
**event** 429:8
**events** 421:22
422:2,16 427:5
**everybody** 418:16
434:20
**evidence** 491:9
**exact** 402:20
**examination** 389:2
395:22 487:13
488:24 489:1,2,3,8
**examined** 395:20
**example** 423:17
438:12 444:20
484:6 486:5
**exception** 492:17
**exclamation** 481:5
481:23
**excuse** 396:20
**executed** 398:23
399:8 458:13
464:6 467:9
486:16
**executing** 483:13

**execution** 459:13
469:18 470:8
471:20
**exhibit** 389:9,11
389:13,15,17,19
389:21,23,24
390:3,5,7,9,11,13
390:15,17,19,21
390:23 391:3,5,7,8
391:10,12,14,16
391:18,20,22,23
392:3,5,5,7,9,11
392:13,15,17,19
392:20,21,23
393:3,5,6,7,8,9,11
393:13,14,15,16
393:18,20,21
403:11,16 405:23
406:2,6 408:12,17
408:22 409:3,16
410:4,14,15,15
412:20,25 414:4,7
414:14 416:9,19
416:20 417:11,14
419:15,17 420:23
420:25 422:19,22
423:24 424:2,11
424:15 425:20,22
426:14 428:8
429:22 430:3
433:15,16,19
436:6,14 440:23
441:1,8,20,23
442:11,13,19,21
443:8,9,9 444:4,5
444:20,22,25
445:2 446:22
447:3,6,14,19
448:15,23 449:13
449:16,23,24,25
450:5,9,12,14,15

450:21,23,25
451:2,9,19,22
452:1,13,16,19,21
452:24 456:7,12
457:6,25,25 458:4
458:6,8,12,15,19
458:20 459:1,4,5,8
459:11,12,12,15
459:17,20 462:22
463:2,4,13,17,19
463:21,22,22
464:4,8,11,15
467:14,20 468:3,5
468:8,8,21,22,23
469:3,7,7,20,23
470:3,3,6,11,12,14
470:18,21,22
471:5,9,12,12,21
471:23 472:1,2
473:25 474:3
475:5,11,18,22,22
476:1,11,13,16,17
484:8,9,10 487:8
487:17,20 488:1,4
488:15
**exhibits** 389:7
390:1 391:1 392:1
393:1 427:8
435:15 443:10
449:11 452:9
459:13 469:11
470:8 487:14
**expand** 400:25
**expected** 462:1
**expires** 493:25
**explain** 401:1
**extent** 489:7,16
**extra** 442:14

| f |
|---|

**f** 439:25 491:1
**facility** 394:13
**fact** 429:25 475:1
481:19 482:5
**fair** 428:21 449:10
481:11 482:1
483:12
**fairlawn** 388:14
**familiar** 472:9,12
**family** 396:13,15
473:3,19
**faster** 435:17
**father** 396:18,24
397:6,8,11
**federal** 386:20
394:12 492:3
**fein** 388:4 395:14
395:14 398:25
399:11 405:22
406:4 408:15,19
409:19 411:13,22
412:10,13 414:10
414:12 415:4,7,9
415:12 417:15
419:3 420:18
422:11 424:20,25
425:2,7,24 426:3
428:25 431:22,25
432:2 442:15
443:16 445:17
446:1,6,16,25
447:9,25 448:23
449:3,8,14 450:1
450:15,19 451:18
452:2,6,8 454:11
454:15 456:6,13
457:14,22 458:22
459:24 461:7,11
461:20 463:5
468:16,20,22

469:8 473:14
477:24 479:21
483:23 486:22
488:25 489:15
490:3,6
**fifty** 445:3,7
446:21 447:8,9
**file** 403:6
**files** 403:9
**finalize** 478:16
**finally** 459:10
470:20 471:4
**financially** 491:10
**fine** 426:7 464:13
**finger** 430:14
**finish** 466:18
489:8,13,16
**finished** 489:3
**firm** 398:4 399:9
402:4 405:8
407:18 409:24
418:4 421:18
431:1 437:1 460:7
461:20 462:11
464:6 467:11
473:19,22 479:12
**firm's** 404:16
406:25 407:7,14
408:5 413:13
414:22 417:2
419:25 421:5
431:8 434:6,8,15
472:22
**firms** 406:22
420:20
**first** 395:20 414:8
424:4 426:14
430:5,13 437:17
438:12 445:18
446:12 473:7
480:1 481:3

**fitch** 438:13
**five** 407:25 408:1
408:8,22 409:7,12
409:13 435:23
**fix** 461:16
**flip** 430:13 442:4
443:24
**floor** 402:7
**focus** 430:4
**follow** 402:10
456:3,11,17
462:11 467:11
486:20
**followed** 440:18
447:23 455:25
456:14 473:22
479:19,23
**following** 437:13
437:23,25 453:17
465:22 492:18
**follows** 395:21
**food** 487:4
**foregoing** 491:4,8
492:15
**forever** 427:4
**form** 398:25
399:11 409:19
411:13,22 412:10
415:4,7 419:3
420:18 422:11
449:14 451:18
452:2 454:11
456:6 457:14,22
459:24 461:7
463:5 473:14
492:4,10
**forth** 416:8
**foundation** 392:8
398:13 453:2,19
455:12 458:19
464:23 465:24

467:5 471:18
**four** 418:19 445:3
466:24
**fraud** 398:15,19
399:13
**frequently** 415:13
**front** 403:17 443:2
443:6 447:14
487:16,16
**full** 396:6 400:23
**funds** 455:15
**furnish** 492:11
**further** 487:2
491:9
**future** 461:15
489:20

| g |
|---|

**gain** 440:1 442:8
466:9,21 479:10
**gains** 454:3,3
466:4
**gap** 459:2
**gateway** 440:6
450:3,6,22 451:11
452:12
**general** 400:13
423:1,9 485:6
**generate** 404:8
484:24
**generated** 404:4
404:12 406:25
413:12 414:21
417:1 419:24
421:5 430:25
431:3 434:11
**getting** 447:10
**give** 396:2,6 400:6
400:21 425:19,20
441:23 443:8
447:22

**given**  491:9 492:7
**giving**  397:20
**gmail.com**  388:17
**go**  394:7 405:25
    416:7,12 429:15
    430:9 435:21
    439:12 443:20
    447:5 448:10
    462:25 464:10
    467:16 473:19
    474:13 482:17
    489:11
**goes**  446:17 449:4
    460:25 474:18
**going**  400:4
    403:15 406:1
    408:10,14 412:11
    412:24 416:7
    418:14 421:17
    425:19 428:2
    429:17 430:1,2,3,4
    430:6,12 431:13
    431:17 433:14
    436:4 440:25
    441:23 442:23
    443:1,5,6 447:22
    449:19,23 451:22
    452:23 456:10
    458:19 461:25
    462:25 463:1
    467:19,20 468:7
    470:7 475:11
    487:6
**goldman**  388:13
    395:10,10 415:19
    415:21 425:14
    429:14 443:10
    445:1,4,9 447:1,5
    448:8,10,21 487:4
**good**  395:2,24

**grandfathered**
    460:15,15,23
    462:17
**greater**  427:16
**group**  442:24
    472:25
**guilford**  491:3

**h**

**h**  492:1
**hand**  430:6 442:24
    466:7
**handed**  437:6,9
**handing**  443:23
**handled**  400:13
    402:22
**handwriting**
    402:13,16,17
    453:7 455:17
    465:10,15 472:6
    476:20,22
**handwritten**
    393:15
**hang**  424:23
    425:10 484:7
**happened**  397:7
    401:6 417:24
    422:2 458:25
    462:20
**hard**  481:22
**hchaitman**  387:9
**head**  402:9
**heard**  421:21
**heart**  397:20
**hedging**  482:16
**held**  394:12,19
    398:4 418:3,5
    419:1,11 420:11
    433:7,11 434:24
    435:5 455:3
    460:14

**helen**  387:4 395:8
    443:17 488:25
**help**  430:15
**highway**  386:20
    394:13
**hmm**  415:20
**hold**  418:11
**holding**  439:11
    474:19,20 486:10
**holdings**  432:16
**hoped**  475:2
**hoping**  474:21
**hostetler**  388:6
    395:14
**house**  389:11,15
    390:11 406:11
    407:22,25 408:1,8
    408:22 409:3,7,12
    409:13,16 410:1,1
    430:17
**huh**  396:22 403:25
    405:1 406:13,17
    410:22 413:7
    451:15 464:21
    488:6

**i**

**idea**  427:15
    480:15 485:16
**ideas**  478:14
**identification**
    403:12 405:24
    408:18 412:21
    414:5 416:10
    417:12 419:16
    420:24 422:20
    423:25 424:12
    425:23 428:9
    429:23 433:17
    436:7 440:24
    441:21 442:12,22
    444:23 447:20

**448**:16 449:17
    450:10 451:20
    452:22 456:8
    458:7,16 459:9,18
    462:23 463:20
    464:9 467:15
    468:6 469:4,24
    470:19 471:10,24
    474:1 475:6,19
    476:14 487:9
**identify**  394:24
**ii**  391:14,16,18,20
    393:9,11 398:13
    436:18 437:14
    438:10 440:7
    449:22 450:21,22
    451:10,24 452:14
    459:23 460:12,19
    464:22 465:24
    467:2 470:2,5,7,12
    470:15,16
**iii**  386:17 490:10
**immediacy**  478:24
**inadvertently**
    392:5
**include**  402:24
    421:21
**included**  420:14
**including**  399:7
    420:5 423:2 432:8
**index**  389:7 390:1
    391:1 392:1 393:1
    477:16,19 482:16
**indicated**  404:5
    407:4 431:4,14
**indicates**  411:18
**individually**  395:4
**industry**  400:17
**instances**  402:11
**institution**  386:20
    403:2,3

**instructed** 451:3
463:13 488:15
**instructing** 461:5
461:13 473:19
**instruction** 470:6
470:9 471:20
473:23 479:17,19
479:23 481:12
**instructions** 400:7
402:10 439:21
440:6,18 455:25
456:3,11,14,17
457:12,21 459:14
462:11 467:12
469:17,18 470:1
481:19
**instruments** 420:2
**interested** 491:11
**interfere** 394:6
396:4
**internal** 488:18
**international**
439:22 487:21
488:10
**investment** 386:8
394:17 464:16
487:18
**investor** 386:4
394:16
**involved** 487:21
**involves** 427:8
**involving** 423:1
428:15

**j**

**j** 464:1
**january** 417:19
419:21 424:19
426:10 461:2
462:9 463:7
**july** 428:12 481:14

**june** 414:18 421:1
421:10 481:4

**k**

**k** 386:18 491:22
**kaiser** 404:22
**keep** 407:8 424:14
430:14 449:25
**kept** 431:7 434:8
436:25 472:20,21
**kind** 485:14
**knock** 443:18
**know** 396:18
404:11,13 407:10
407:16 408:13
409:6 417:22
425:10 435:20
437:17,23 440:20
456:25 457:4,5,18
457:21 475:4
479:9 483:12
485:24
**knowing** 419:8
**knowledge** 403:5
403:8 409:24
492:16
**known** 399:13
444:7
**koenigsberg**
437:21
**kratenstein**
387:13 389:3
395:2,3,23 399:1
399:12 403:13
405:25 406:5
408:16,21 409:21
410:10,12 411:14
411:23 412:11,17
412:23 413:1
414:2,6,11,13,16
415:5,11,14,23
416:11 417:13,16

418:18 419:9,13
419:17 420:21,25
422:13,21 423:22
424:1,13,18,22
425:1,4,9,17 426:1
426:4,7,9 427:25
428:4,7,10 429:2
429:24 430:9,12
431:17,24 432:1,3
433:14,18 434:22
435:8,10,13,20,23
436:1,10 440:25
441:22 442:13,16
442:23 443:13,22
444:3,24 445:11
445:16,23 446:2
446:11,14,20
447:4,8,13,21
448:3,5,11,13,17
449:1,5,9,18 450:2
450:11,16,20
451:4,6,21 452:4
452:10,23 454:13
454:19 456:9,16
457:15,24 458:8
458:17,23 459:3
459:10,19 460:1
461:9,16,17,24
462:14,24 463:6
463:15,21 464:10
467:16 468:7,17
468:23 469:1,5,9
469:25 470:20
471:11 473:15
474:2 475:7,20
476:15 478:1
479:22 484:2,9
486:24 487:1,12
488:23 489:11,25
490:4,7

**l**

**l** 386:8,12,16
389:2 394:17,22
395:11,19 464:16
487:18 490:9
492:14
**labeled** 430:5
**law** 396:18 397:6
462:15
**law's** 397:8,11
**leave** 455:7 480:17
480:22
**ledger** 389:23
419:19
**left** 404:5 437:6,9
466:7
**lefty** 438:2
**leg** 422:17
**legal** 394:9 395:1
**legging** 422:6
**legitimate** 415:17
**letter** 390:15
391:22 392:15,21
393:16,21 436:15
436:23,25 437:11
438:3,7 441:8
442:7 449:12,23
449:25 450:3
451:14,25 452:24
453:1,5,8,10
454:16 457:5
458:1,3,12 459:14
459:21 460:5
461:11,18,22
462:1,7 464:16
465:1,8,10,17
467:19 469:20
470:1,5 471:5,21
474:4,7 475:3
476:10,16,17
477:3 487:17,20

**letterhead** 436:17
453:1 459:22
461:12 464:19
**letters** 475:9
**lillian** 398:2
**lillian's** 395:5
**limited** 399:12
400:14,15,17,18
**line** 454:18 493:1
493:4,7,10,13,16
493:19
**lipstick** 399:23
**liquidated** 482:24
**listed** 418:23
432:8 433:6
434:24 461:21
492:18
**listing** 403:21
**lists** 430:23
**little** 417:17
**llc** 386:8 394:18
**llp** 387:5,14 395:3
**located** 394:13
**long** 417:25
438:20,24 439:9,9
439:16,18 466:14
466:21 474:21
480:8 489:21
**look** 410:6,12
418:18 427:7
434:19 441:2
443:23 445:7,24
446:3,20 448:21
449:1 450:5
457:25 463:22
469:10 470:2
473:7 475:21,23
475:25 478:3
**looking** 404:18
411:10 428:17
445:1 450:11

465:16 466:8
476:2 482:2
**looks** 426:24
428:19 446:6
**losses** 454:3
**lot** 397:8 435:16
**lots** 427:5

**m**

**madison** 387:15
**madoff** 386:8,12
386:17 389:2
394:17,22 395:11
395:19,24 403:17
406:5 411:10
413:1 414:17
417:16 419:18
421:1 422:22
428:10 429:24
430:16 433:18
436:11,14 444:5
451:7 452:12,25
459:12,20 461:19
461:23,25 464:11
464:15,16 469:10
472:2 474:3
476:16 477:6
487:2,12,18 489:3
489:17 490:10
492:14
**madoff's** 489:6
**main** 474:19
**maintain** 403:5,8
407:8
**maintained**
404:16 407:11
434:14 460:7
**major** 427:3
**maker** 427:3
**making** 400:14,15
408:4 444:12
454:4 492:7,9

**malcolm** 387:12
392:15,21 393:16
393:21 395:4
396:10,25 398:2
401:23 402:2
436:15 451:2
459:25 460:1
464:17 474:4
476:17 480:25
481:3 486:7
487:17
**malcolm's** 477:11
**managed** 474:16
**manhattan** 420:14
**march** 413:6
**margin** 466:7
**marine** 420:16
**mark** 408:10
430:3 433:15
437:8,9 449:19
**marked** 403:11,16
404:20 405:23
406:2,6 408:17,22
412:20 414:4,7,14
416:9 417:11
419:15 420:23
422:19 423:24
424:11 428:8
429:22 433:16,19
436:7 440:23
441:1,8,20 442:11
442:21 444:22
447:19 448:15
449:6,6,11,13,16
450:9 451:19,25
452:21 456:7
457:6,24 458:4,6
458:12,15 459:8
459:15,17 462:22
463:19 464:8
467:14 468:5

469:4,11,20,23
470:18 471:9,23
473:25 475:5,18
476:11,13 482:9
482:10,10 484:10
487:9,19
**market** 408:3
427:3 429:9
455:15 486:20
**marking** 416:19
**martin** 387:12
395:6 396:10,25
398:2 401:23
477:9,10,11,13
**match** 475:9
**matches** 435:2
**math** 446:6
**maurice** 389:13,17
389:19,24 390:15
392:7 396:19,21
397:2,13,16
398:12,13 403:15
404:1 410:16
413:5,10 414:17
414:20 416:23
421:2 432:8,13,17
453:2,18 455:11
458:18 459:21
464:22 465:24
467:5 471:18
**mcdermott** 387:14
395:3
**meadowbrook**
420:15
**mean** 400:5 405:2
405:5 411:24
412:4 416:12
418:2 419:1
427:22 433:5
439:11 444:11
450:13,15 456:18

466:7,10 473:8
**meaning** 415:16
**means** 405:3
411:25 413:23
437:24 456:20
466:19
**meant** 456:17
460:22 477:19
**medication** 396:1
396:4
**meet** 401:22
478:15
**meetings** 399:16
399:19 400:2
401:17,20
**member** 473:18
**memo** 444:6,10,12
445:20,20 446:8
447:16,23 470:23
470:24 471:15
488:8
**memorandum**
391:5,7,8,10,12,19
391:21 392:9,11
392:13 393:14
445:5
**memos** 444:20
448:2,3 451:22
459:10 463:16
467:18 469:6
475:11,23,24
488:1,17
**mentioned** 396:9
485:22
**met** 477:9,13
478:19
**mf** 430:6 431:14
**microphones**
394:2,5
**middle** 404:19
413:15 414:24

417:4 422:25
434:19 435:11
463:10
**midland** 420:16
**million** 440:12
466:8
**mind** 424:15
430:14
**mine** 424:25 449:6
**minute** 408:13
428:2 446:5 448:1
**minutes** 425:16
435:24
**mispagination**
488:3
**missed** 459:1
**missing** 448:24,24
449:2,3
**mistaken** 427:9
**mmrn** 398:13
**money** 444:13
445:6 455:15
**monies** 406:9
444:6 470:25
483:11
**month** 389:21
407:20 417:23,24
417:25 430:23
486:1
**morning** 395:2,24
395:25
**mother** 395:5
**move** 430:16
433:14 443:17
471:2 489:10
**moved** 483:1
**movement** 406:9
406:20 444:14
470:25 487:21
**movements** 458:2
458:10

**moving** 477:23
487:22
**multiple** 443:10
445:24 446:4,4
447:2
**mwe.com** 387:18

**n**

**naked** 438:21
439:4,18 440:4
**name** 394:8,21
397:11 412:13
461:21,21
**named** 396:19
**national** 390:13
411:11,14,17
412:3,5,14,15,18
417:19 418:1,3,7
418:11,23 419:2
419:18 420:16
433:2,11,21 434:2
434:24 435:6
468:14
**ncr** 425:11 426:19
426:20 427:11,13
**neal** 386:18
394:25 395:17
491:22
**necessary** 492:11
**need** 416:18 426:5
464:12 489:20,23
489:24
**never** 483:9
485:22
**new** 386:1 387:7,7
387:16,16 388:8,8
388:15 394:20
426:15
**newly** 427:10
**nice** 474:9,10
**normally** 402:9

**north** 386:21
394:14 412:3,5,15
412:18 417:19
418:2,3,7,12,24
419:2,19 420:15
491:2
**notary** 386:19
491:23 493:23
**note** 393:15 394:2
430:10 441:16
444:12 472:5,10
481:14,21
**notes** 466:7 472:18
472:24 473:7
478:5,8 479:25
480:1
**november** 386:22
394:10 441:4
490:9 491:18
**number** 389:9,11
389:13,15,17,19
389:21,23,24
390:3,5,7,9,11,13
390:15,17,19,21
390:23 391:3,5,7,8
391:10,12,14,16
391:18,20,22,23
392:3,5,7,9,11,13
392:15,17,19,20
392:21,23 393:3,5
393:6,7,8,9,11,13
393:14,15,16,18
393:20,21 394:21
395:9 403:11
405:23 406:3,11
406:23 408:17
410:4,14,15
412:20,25 414:4,7
414:14 416:9
417:11 419:15
420:23 422:2,19

423:7,24 424:11
425:22 428:8
429:22 430:4,11
433:16,19 436:6
436:14 440:23
441:1,20,23
442:11 444:22
446:11,12 447:6
447:19 448:15,19
449:16 450:5,9,12
452:7,21,25 456:7
458:6,15 459:5,17
459:20 462:22
464:8 467:14
468:5 469:21
470:3,18 471:9,12
471:23 473:25
475:5,18 476:13
490:10
**numbered** 441:17
**numbers** 410:5
442:21 451:19
459:8 463:19
469:3,23 488:4

**o**

**object** 489:9
**objecting** 415:9
**objection** 398:25
399:11 405:22
409:19 411:13,22
412:10 415:4,7
419:3 420:18
422:11 424:20
428:25 449:14
451:18 452:2
454:11,14 456:6
457:14,22 459:24
461:7,10,14,20
463:5 473:14
477:24 479:21
483:23 486:22

**obviously** 439:20
**occasion** 402:17
**occurred** 417:9
**offices** 399:17
**oh** 412:1 435:9,22
443:19 468:17
**okay** 402:3 403:5
406:5 407:22
408:15 409:6
410:11 412:8
416:16 419:9,23
424:16 425:7
426:3 427:7
431:13,17 432:2,6
435:13,22,25
441:22 442:15
443:5 444:10,19
444:24 445:4,9
446:1,14 447:21
448:5,18,21 449:9
451:5 454:5,19
460:25 461:24
462:7,24 464:11
464:14 465:17
466:13 473:10
479:13 480:10,24
482:4 489:25
**old** 386:20 394:13
**once** 447:5
**ones** 416:18
417:17
**open** 480:17
**opportunity**
469:10
**opposed** 479:1,7
**option** 477:16,19
**options** 482:16
**oracle** 439:22
**order** 412:24
489:4,21

**ordinary** 404:7
406:25 413:12
414:22 417:2
419:25 421:5
431:1,10 434:5,15
472:14
**outset** 396:9

**p**

**p.m.** 490:14
**page** 389:8 390:2
391:2 392:2 393:2
404:19 410:9,13
410:20 411:9,9,10
411:12 413:16
414:8,25 416:19
417:5 418:14,15
418:19 424:2,4
430:5,5,13,15
431:13,18,19,22
434:19,19 443:13
445:5,13,18,18
446:7,7,8,12
448:6,10,11,24,25
449:1 471:1 473:7
478:4 480:24
491:7 493:1,4,7,10
493:13,16,19
**pages** 411:8 414:9
443:11 446:9
447:3 491:8
492:11
**pagoldman** 388:17
**paper** 439:22
484:24 487:21
488:10
**paragraph** 474:14
**parentheses**
460:17,18
**park** 387:6
**parkway** 388:14

**part** 407:7 416:20
466:9 472:17
**particular** 401:4
422:2 444:13
479:10
**particularly**
401:21
**parties** 394:7,24
491:17
**party** 474:11
491:13
**passer** 387:12
395:6 396:11
**passing** 397:16
**paul** 397:12
437:12,18,21
440:16 453:16
465:22 477:10,13
478:12 481:8,15
**paul's** 474:11
**payment** 422:1
**penn** 404:24
**pepper** 404:21
**percent** 485:4,10
**performed** 441:10
**period** 427:2
429:10 475:23
479:11 482:21,22
483:2,6 484:25
485:25
**periodically**
409:10
**permitted** 489:16
**peter** 388:13
395:10
**phone** 462:6
**phones** 394:4
**physically** 405:6
**pick** 394:3
**pieces** 423:15

**[place - reason]**

**place** 394:5 402:8
407:14 415:19,21
416:4 427:3 486:3
**plaintiff** 386:6
394:15,17
**plan** 437:13,23,25
438:1 453:17,22
453:23 465:22
466:3,4
**planning** 489:1
**plaza** 388:7
**please** 394:2,4
395:17 428:1
438:13 440:1
454:7,23 455:6,22
492:10,11
**plus** 420:19
**point** 457:20 481:6
481:23
**pointed** 487:13
488:2
**portfolio** 474:17
482:25
**position** 422:9
438:14,15,24
439:2,4 454:7,10
454:23,25 478:25
484:1 487:22
488:10 490:1
**positions** 411:4
420:9 438:20,20
438:21 450:4
461:2 462:8
475:16 477:7,14
480:22 483:22,25
**possibly** 429:1,3
**post** 483:6,7,14,16
485:2
**practice** 404:7
**premises** 407:15
431:8 434:9

**prepared** 472:8,10
472:14
**present** 394:23
**presumably**
476:10 478:12
**previous** 435:2
**previously** 398:15
399:2
**price** 400:18
422:10
**primarily** 402:22
**principal** 408:5
**printed** 407:4
**prior** 410:14
415:24 416:6
419:10 433:10
461:2,25 462:9
477:21
**private** 394:3
**probably** 397:15
399:22 402:5,6
407:19 412:6
418:5 437:3
**procedure** 492:4
**proceed** 395:18
**proceeds** 405:13
477:15
**production** 488:4
**productions**
431:20 432:4,7
**professional**
386:19 491:22
**promises** 481:22
**proprietary** 408:4
**protection** 386:5
394:16
**provide** 491:12
**provided** 489:21
**public** 386:19
491:23 493:23

**pull** 482:8 484:6
**purchase** 416:2
424:7 444:17
**pursuant** 492:3
**put** 403:16 406:1
412:12 414:2
417:13 419:13
420:21 421:16
423:22 427:21
429:12 441:15
443:5 449:24
463:15 467:19
471:25 474:2
487:16
**puts** 460:17,18
**putting** 441:16

**q**

**qualcomm** 439:23
**quarter** 407:20
486:2
**question** 401:18
408:6 425:13
429:15 452:8
458:10
**questioning**
456:15
**questions** 415:24
430:1,4 440:16
451:23 455:22
487:2 491:6
**quick** 436:1
467:17
**quickly** 416:14,14
430:16 449:20
463:17 469:6
470:2
**quote** 474:15
478:11 479:1
**quotes** 460:16

**r**

**r** 464:1 491:1
492:1,1
**rates** 491:17
**rca** 404:24 413:16
418:19 421:8
**read** 473:9 492:15
493:1,4,7,10,13,16
493:19
**reading** 490:12
**real** 398:22 399:3
399:8 405:16,17
405:19 409:13,18
411:4,6 412:8
413:25 415:2,6,10
415:11,12,15,23
415:25 416:7
417:8 419:11
420:9 421:12
427:18,22 429:5
441:13
**realize** 440:1
442:7 454:3
**realizing** 466:4,9
**really** 402:14
460:24 485:22
**realty** 387:11
390:3,5,7,9 395:7
396:12 398:9
399:7 422:23
424:4,19 426:11
428:11
**reason** 396:2
416:21 436:22
453:4 456:2 460:4
462:4 464:25
465:7 466:22
474:6 475:9 477:2
489:7,17,18 493:2
493:5,8,11,14,17
493:20

reasons 492:7
recall 396:13,19
  397:13,16,19,22
  398:6,11 399:16
  399:19,21 400:1
  401:16,19 437:6
  438:18 442:6,8
  462:19,20 478:19
  478:21 480:4,5
recapitalization
  428:22
recd 405:2
receipt 413:16
receipts 405:16,17
  413:22
receive 436:23
  453:5 460:5 465:8
  466:20 468:16
  474:7 477:3
received 404:21
  405:3,7 413:23,23
  427:11 460:8
receiving 428:23
  444:13
recess 425:15
  429:19 436:6
  487:8
recognition 479:1
recognize 402:12
  402:16 403:17
  406:6 413:2
  430:20 433:24
  442:8 465:14,15
  465:18 471:12
  472:1,6 476:24
recognized 442:17
recollection
  462:15 470:4
  474:25 475:8
record 390:12
  394:2,8 397:10

429:17,20 430:18
  435:3,16,17 436:3
  436:4,8 443:11
  447:2,10 462:13
  470:11 487:6,10
  490:8
recording 394:6
records 407:8,10
  425:13 430:8
reduced 491:6
referral 491:15
referred 427:1
  460:23
referring 437:18
  473:2 478:12
reflect 443:3
  449:11 451:24
  452:11 459:13
  469:17 486:15
reflected 429:5
  450:7,23 458:3
  464:3 488:13
reflecting 442:25
reflects 452:12
refresh 470:4
  475:8
regard 453:17
  477:14
regarding 427:5
  460:11 489:5
regards 437:13
  465:23
registered 386:18
  491:22
regular 407:7
  472:17
regulation 400:24
relating 488:2
relatively 430:16
remaining 455:7

remark 425:18
remarked 425:22
remarking 425:20
remember 396:21
  480:11
remotely 394:24
report 390:14
  407:3,23 409:3
  430:23 432:11,15
  433:9,20
reported 491:5
reporter 386:19
  394:25 395:17
  491:14,22
reporting 491:13
  491:14
reports 406:24
  407:16,18,25
  408:2 410:1
  430:25 431:7
represent 394:25
  396:10 408:3
  442:25 491:8
representative
  395:5
representing
  394:8 395:1,4
request 471:6
requested 476:10
require 455:14
reserve 489:13
  490:1
reserved 490:13
respect 402:21
  438:8,13 452:9
  454:6 455:5,11
  458:17 460:16
  462:16 468:13
  469:18,19 470:5,6
responsibilities
  472:18

rest 474:13
result 491:11
retail 402:22
  403:1
return 485:7,20
  486:15,19
returns 484:24
  485:14,22 486:2
reynolds 404:24
  464:1
right 397:1,24
  403:4 413:18,24
  420:12 422:10,14
  424:22 425:4,5,8
  425:9,11,12,19
  431:19 432:4
  435:9 440:16
  445:15 447:4
  448:4 449:9 454:8
  454:17 456:9
  457:3 460:3
  463:18 468:18,22
  475:17 477:17,25
  478:13 479:16
  480:6,8 483:10,15
  484:2,21 485:18
  485:19 488:12,14
  488:22 489:14
rights 490:2
risk 429:9
rjr 460:18 461:6
  463:11 468:14
rockefeller 388:7
role 402:20 419:5
room 394:23
  429:15
rpr 491:22
rule 400:13 492:3
rules 460:16 492:3
run 407:18,25
  409:8,10

**running** 409:25
**ruth** 474:10,10
**rye** 388:15

**s**

**s** 392:7 453:2,18
455:11 464:23
465:24 467:5
471:18 492:1
**s&p** 482:15
**sab** 473:12
**sage** 387:11,11,12
387:12,12 389:13
389:17,19,24
390:3,5,7,9,16,17
390:19,21 391:14
391:16,18,20,23
392:3,7,16,17,22
392:23 393:3,9,11
393:17,18,22
395:4,6,6,6,7
396:10,10,11,12
396:12,13,15,19
396:21 397:2,14
397:16 398:7,9,12
398:12,13 399:7
402:2,21 403:15
404:1 410:17
413:5,10 414:17
414:20 416:23
421:2 422:23
424:4,16,19 426:2
426:11 428:11
430:1 432:8,8,12
432:13,17,17
436:15,17,18,20
437:13,14,17
438:7,9,9,18,19
440:7,12 441:3,7
441:17,24 449:19
449:20,21,21
450:21,21 451:10

451:12,24 452:14
453:1,2,2,10,18,18
453:22 454:5,20
455:5,12,21
458:11,12,18
459:4,21,22,23,25
460:1,10,12,12,17
460:19,19,22
462:8,10 463:3,7
464:1,17,19,22,23
465:21,23,23,23
465:24 466:24
467:2,5,21,22
468:9,13 469:19
470:1,5,7,12,14,16
471:18 472:25
473:3,18 474:4
475:2,12 476:18
477:5,6,11,14,21
478:11,23 479:5
480:25 481:3,12
481:19 482:2,4,11
483:20 484:11
485:12 486:4,7,8
486:13 487:18,22
488:4
**sages** 396:10
398:18 399:6,17
399:20 401:1,20
401:22 402:3,24
429:25 436:11
438:19
**sale** 411:25 414:24
416:3 417:5
421:12 423:14
444:17 454:4
455:14 461:3
462:10 477:6
**sales** 405:12,13,19
405:19 410:17
411:6,18 412:8

460:16 475:17,20
**saw** 410:14 413:11
426:14 435:3
443:4 444:1
448:19 449:12
**saying** 444:20
451:1 456:14
461:13 466:8
480:21
**says** 405:2 418:1
426:19 433:20
437:18,22,24
438:13 440:10
455:12 461:1
462:7 465:17
466:13 473:11
474:15 477:9
478:11 487:19
**sec** 400:23
**second** 414:8,9
424:2,23 425:10
445:13,18 460:20
471:1 473:10
474:14,14 478:3
489:6
**securities** 386:4,8
389:12,16 394:16
394:18 400:17
401:5,9 404:20
405:11,17,17,20
406:12,18,20
407:17,23 408:2,7
408:23 409:4,7,25
410:16,18,25
411:18 412:2,4
413:20,23 415:18
418:3,11 420:11
430:24 433:7,11
435:5 438:9
444:14 464:16
479:7,8,11 482:14

482:15,25 484:4
484:16 485:14,17
486:8,10,20
487:18
**security** 400:19,22
405:3,6 416:3,3
417:6 439:10,12
439:17,19 454:4
**see** 402:15,15,17
403:23 404:1,19
404:25 405:9
406:11,16 407:23
408:21,24 409:3
410:13 411:10,17
411:19 413:15
414:7,16,24
416:23 417:4,18
418:15,21,24
419:18 420:3,6
421:1,8 422:22,25
424:3,3,5,7,13,15
424:18 425:1
426:4,10,11,13,16
426:21 427:22
428:11,14 429:16
430:17 431:19,21
432:3,6,11,19,22
433:3,19,21
434:22 435:9
436:15 437:11,15
438:2,7,16 439:20
439:23 440:7,12
441:3,6,18,25
442:4,16 443:23
444:16,16,19,19
446:3,6,11 448:2,2
450:2,6,20 451:11
451:25 452:12,25
453:10,12,19
454:5,19,25 455:9
455:15,17,18,23

458:2,10 459:3,5
459:21 461:3,17
461:22,24 463:6
463:10 464:15
465:10,25 466:14
466:25 467:22,25
468:8,12 470:8
471:5,6 472:24
473:10 474:3,9,10
474:11,23 475:7
475:12,15,17,25
476:4,17 477:5,16
478:4,6,17 479:2
480:2,18 481:1,6,9
481:16,24 484:11
487:23 488:5
**seeking**  481:12,19
489:20
**seen**  457:5,7
472:13
**sell**  400:8,22 401:9
415:18 466:12
486:8
**selling**  427:10
428:23 439:8,8
477:14 488:21
**semiconductor**
468:14
**sense**  438:23
**sensitive**  394:3
**sentence**  461:1
473:10 474:14,18
**sentences**  474:19
**september**  489:5
**series**  426:25
**services**  491:13
**set**  448:19 451:23
**settlement**  389:12
389:16 406:12,19
407:18,23 408:2,7
408:23 409:4,7,25

411:1
**seven**  438:14
439:1 441:18
442:3 454:9,24
455:6,8 470:16
487:23 488:10
**shares**  423:9,14
424:8 427:11
432:12,21 433:2
434:23 455:3,6,8
466:11
**sheet**  492:12
**short**  417:25
425:15 435:14
438:14,20,21
439:1,4,6,7,9,12
439:16,18 440:4
450:4 454:7,23
460:14,21 462:16
466:5 473:16,19
475:15 476:4,7
478:25 479:1,14
480:17 487:22
488:10
**shorted**  474:21
475:1
**show**  403:15 406:1
408:12 410:25
424:14 436:13
440:25 447:16
449:23 452:24
456:10 458:19
462:2,5 463:2,3
467:18,20 468:7
471:1 475:11
482:24 483:17,21
483:22,25 484:1,3
485:15
**showed**  428:1
462:6 488:1

**showing**  414:6,13
417:18 422:21
424:1 436:14
443:25 459:11,20
464:14 470:25
471:11 472:1
484:16 485:14
488:3
**shown**  405:14
449:22 452:13
**shows**  406:9,20
413:15 414:24
417:25 419:23
420:2 421:8 451:2
452:16 463:10
471:20 484:20
488:9
**side**  442:4 451:10
**signature**  491:20
493:21
**significantly**
474:20
**signing**  490:12
**similar**  407:25
428:19
**sixteen**  471:17
**skip**  474:13
**skipped**  392:6
**skyline**  404:22,25
**smb**  386:7 394:21
**soda**  443:17
**sold**  412:5,6 421:9
**solutions**  394:9
395:1
**somebody**  396:19
**sorry**  404:8
408:16 409:21
410:23 413:8
415:5 424:22
425:2,2 426:6,9
430:10 445:17

450:21 454:13
465:17 467:22
475:20,22
**sort**  428:20
**sound**  397:24
**sources**  406:23
**southern**  386:1
394:20
**special**  422:1
**specialties**  401:4
**specific**  401:9
404:18 416:18
418:14
**speech**  397:21
**spin**  426:19 427:9
427:10,16 428:20
**split**  399:13 401:6
401:14 421:25
423:2,12,17
477:20,23 482:6
482:13,22 483:3
483:13,24 484:3
484:20,23 485:13
**splits**  423:6
**spoke**  474:15
**spun**  427:13
**stacy**  388:5 395:12
**stand**  412:19
**standpoint**  478:14
**stapled**  416:21
**start**  430:2,13
456:11 489:3
**started**  398:16,19
**starting**  411:19
**state**  416:6
**stated**  491:5
**statement**  389:14
389:18,20,21,25
390:3,5,7,9,18,20
390:22 391:15,17
391:24 392:4,8,18

392:24 393:4,10
393:12,19 406:19
408:23 409:12,13
414:18 416:24
417:23 421:2,4
422:23 423:1
424:5,19 426:11
428:11,15 429:6
441:4,6 450:7
458:3 463:8
467:21,22 468:10
470:12,15 475:13
483:15 484:11
492:7
**statements** 404:9
404:11 408:8
409:8 411:1 443:4
449:19,24 458:13
463:1,4 467:18
470:2 475:10
482:9,11,24
483:21
**states** 386:1
394:20
**steady** 484:24
485:20,22 486:19
**stearns** 420:16
**steps** 440:10
**sticker** 435:15
**stock** 390:11
421:25 423:2,6,9
423:12,17 428:23
430:18 432:24
433:5 434:23
439:8 454:6
455:14 479:2
**stocks** 460:11,14
**stop** 409:25
460:20 477:10
**stored** 404:12

**strategy** 401:4
483:25 485:24
**stretch** 436:3
**strike** 399:14
401:6,14 472:9
477:20,23 482:6
482:13,23 483:3
483:13,24 484:3
484:20,23 485:13
489:10,14
**style** 400:3
**sub** 470:13 484:14
**subaccount**
441:17,24 470:16
**subaccounts**
438:19
**subscribed** 493:22
**substance** 400:1
492:4
**sufficient** 489:19
**suggested** 445:5
478:15
**suggestion** 435:14
**sum** 440:11
455:13,14 471:6
**summary** 390:12
430:18
**supplemental**
492:10
**sure** 407:21 412:7
416:18 426:2
427:2 443:24
447:13 458:25
463:17 468:18
479:7 489:12
**swear** 395:17
**switch** 421:17
**sworn** 395:20
493:22
**symantec** 468:1,14
470:7 471:1

**t**

**t** 491:1,1 492:1,1
**take** 402:16 406:4
411:9 412:11
419:10 425:15
429:9,13 430:10
433:9 435:14,23
436:1 438:8
443:22 446:20,24
466:20 475:25
487:3
**taken** 386:17
394:14 429:19
436:6 440:11
487:8
**talk** 425:16 481:8
481:15
**talked** 403:13
418:20 421:9
422:4 429:24
436:11 458:1
460:21 482:4
**talking** 401:25
411:19 416:2
447:7 453:22
473:3 477:22
479:5,8,10 482:21
483:2,7 484:25
485:7 486:1
**talks** 450:3 478:11
**tax** 438:1 453:23
453:25 462:15
466:4,22 478:14
**telegraph** 404:22
413:17,19 414:25
417:6
**telephone** 404:22
413:17,19 414:25
417:5
**tell** 418:16 428:17
462:20 469:14

473:11 475:25
481:22 488:7
**telling** 440:21
479:13 480:22
**term** 415:10
421:22 466:14,21
474:21 479:1
**terms** 429:8
**testified** 395:21
398:15 399:1
**testimony** 396:2,5
396:7 419:10
433:10 461:25
489:9,10,22 492:6
**thank** 396:9
407:16 408:19,20
409:24 412:19
414:12,15 417:13
418:17 419:13
420:21 421:16
424:17 426:3,8
427:25 429:4
435:8,12 442:6,23
443:19 445:16
446:24 447:25
448:18 449:18
450:1 451:9,21
452:4,6,23 459:19
461:16 463:5
468:20 469:8,25
470:20 471:4,25
476:15 478:3
487:1 488:23,24
490:6
**thanks** 406:4
417:15 428:7
463:18 469:2
489:10 490:7
**themself** 406:23
**thereof** 478:17

**thereto** 491:6
**think** 397:20
    412:14 435:20
    445:5 458:21,22
    489:25
**thought** 412:17
**thousand** 471:17
**three** 396:24
    401:22 438:15,23
    441:24 442:3
    445:3,7 446:21
    447:8,9 454:9,24
    455:7,8 470:13
    484:14 487:23
    488:11
**time** 394:11,22
    399:6 400:18
    401:13 409:16
    422:9 429:10,18
    429:21 436:2,5,9
    446:24 451:24
    475:23 476:25
    483:6 485:25
    487:2,7,11 489:8
    489:13,16,19
    490:11
**timing** 478:16
**today** 396:3 489:1
    489:14
**today's** 394:10
**told** 457:7 462:6
**tomorrow** 489:9
    489:13,17,18
**top** 403:23 404:5
    406:11 407:5
    417:18 418:1
    421:10 426:18
    431:4 433:20
    435:10 445:4
    480:1

**topic** 436:13
**topics** 421:17
    429:13
**touch** 460:11
**trade** 427:7,8
    428:21 444:7
    483:4,14
**trades** 398:23
    399:8 400:4,5
    436:12 443:25
    449:21
**trading** 398:21
    399:3,5,14 400:4
    401:5 408:4
    421:18,19,19
    422:5 429:9
    477:22 486:15
**tran** 480:14
**transaction**
    390:24 391:4,6,9
    391:11,13,19,21
    392:10,12,14
    415:2,6,15,17
    417:8 421:14
    423:4,20 426:18
    426:23 427:18,19
    428:18,19 429:4,5
    444:13,18 445:19
    445:21 451:10
    452:13,17 466:5,9
    467:3,6 477:20
    483:9
**transactions**
    405:12 409:13,14
    409:18 410:13
    411:25 412:2
    413:25 415:25
    416:6,7 419:7
    423:1 426:20
    427:22,23 428:15
    439:21 441:7,11

441:13 443:1,3
    445:25 446:4,19
    449:12,22 450:6
    450:22 451:2
    462:16,17 463:2
    464:3 466:25
    467:8 468:12
    475:17,21 476:8
    486:16 487:20
**transcript** 491:9
**transfer** 442:3
    445:6 451:11
    467:25 477:15
    478:16 480:16,17
    488:9,18
**transferring** 444:6
**transfers** 481:5
**transition** 474:16
**treasuries** 482:18
    483:1,12,19,21
    484:1,17
**trigger** 478:25
    479:9
**trim** 480:14
**true** 457:11 491:8
    492:17
**trust** 389:13,17,19
    389:24 398:12
    403:15 404:1
    410:17 413:5,11
    414:17,20 416:23
    420:17 421:2
    432:9,13,17
**trustee** 388:3
    395:13,15
**truthful** 396:2,7
**trying** 453:25
**tuesday** 481:23
**turn** 394:4 410:5,6
    410:8 411:8,9
    418:14 424:2

431:13 434:18
**turning** 410:4
**two** 396:11 402:1
    413:17,19 414:9
    416:19 423:6,12
    423:15 425:16
    443:15 446:9
    449:19,21 474:19
**type** 404:15 407:8
    409:3 430:20
    433:24 462:1
    485:15,17 486:14
**types** 421:19
    482:14
**typically** 408:3
    482:15 483:25

**u**

**ual** 428:15,22
**uh** 396:22 403:25
    405:1 406:13,17
    410:22 413:7
    451:15 464:21
    488:6
**unavailable**
    489:18
**underneath** 445:9
    461:21
**undersigned**
    492:14
**understand**
    411:23 415:15,24
    444:4 445:21
    446:25 456:17
    461:5 462:10
    466:6 473:2,18
    477:10 481:18
    488:25 489:12
    490:1
**understanding**
    437:24 445:19
    453:21,24 460:13

460:22 466:2,16
466:19 473:6
477:18 479:4
480:20
**understood** 449:8
**united** 386:1
394:19
**unquote** 479:2
**unusual** 401:11
**usa** 433:3,21
**use** 415:9 489:9
492:10
**usual** 491:16
**usually** 404:13
405:7 430:23
456:25

**v**

**v** 394:17
**value** 427:16
**variables** 423:7
**various** 398:3,11
405:10,10 410:16
420:2,5 426:20
428:14 432:7
438:8 439:21
475:15
**veritext** 394:9
395:1
**video** 394:11
**videographer**
388:19 394:1
395:16 429:17,20
436:4,8 487:6,10
490:8
**videotaped** 386:16
**volume** 386:17
490:10
**vs** 386:7

**w**

**wait** 408:13 443:8
448:1
**waiting** 489:2
**walt** 431:20 432:3
432:6,12 434:23
**want** 416:11,13
425:14 429:12,16
435:13,14,21
436:2,13 443:20
446:4,23 457:21
466:17 473:12,17
479:14 487:14
489:12
**wanted** 400:3,7,8
400:8 429:14
460:10 479:6
**wants** 466:12
**waste** 436:2
**way** 397:6 419:8
435:16 437:5
441:16 447:12
449:6,7 491:10
**we've** 403:16
406:2,6 408:22
433:19 441:1
457:24 458:12
469:11 473:3
482:9 484:10
489:24
**week** 407:19
**weeks** 429:10
**welcome** 436:10
**went** 426:25
**westminster**
390:13 420:17
433:3,12,21 434:3
434:24 435:6
**whispering** 394:3
**wife** 398:2

**wise** 453:25
**withdraw** 440:11
455:13 459:4
471:6
**withdrawal** 459:6
**witness** 389:2
394:22 395:17
409:20 412:15
415:8,20,22 419:4
420:19 422:12
424:21 425:12
429:1 443:17,20
445:3,8,10 446:13
448:1,9,12 449:15
452:3 454:12
457:23 459:25
461:8 477:25
483:24 486:23
490:13
**word** 460:15
480:14
**words** 400:6
401:23 408:1
465:4 466:11
**work** 402:17
**worked** 446:22
454:20 465:18
**working** 457:2
476:25
**writes** 453:11,11
453:16 455:5
460:10 462:8
465:21 474:9
478:23 480:1,13
480:24 481:3
**writing** 477:5
**written** 457:11
475:3 491:7,12
**wrong** 424:23

**y**

**yeah** 407:13
412:23 424:25
425:2,3 426:1
428:5 429:14
430:9 431:16
434:21 443:14
445:8,10 446:16
447:13 448:8
452:10 456:19
458:21 459:25
**year** 426:13,15,16
472:9 474:15
482:8,11,13,17,19
482:23 483:16,20
484:17 486:14
**years** 399:22
401:7 427:4
**yep** 424:16
**york** 386:1 387:7
387:7,16,16 388:8
388:8,15 394:21

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.