**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04390 (SMB) |
| Plaintiff, | |
| v. | |
| BAM L.P., MICHAEL MANN, and MERYL MANN, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION *IN LIMINE* TO ADMIT THE PLEA ALLOCUTIONS OF**
**BERNARD L. MADOFF AND BLMIS EMPLOYEES**

1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

    *Allocution of Bernard L. Madoff*.......................................................................................2

    *Allocution of Frank DiPascali, Jr.*......................................................................................3

    *Allocution of David Kugel* ................................................................................................5

    *Allocution of Irwin Lipkin*.................................................................................................6

ARGUMENT .............................................................................................................................7

CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Agric. Research & Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) ...............................................................................7

*In re Bayou Grp.*,
   396 B.R. 810 (Bankr. S.D.N.Y. 2008), *rev'd in part on other grounds*, 439
   B.R. 284 (S.D.N.Y. 2010)......................................................................................9

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011).................................................................................1

*Carney v. Lopez*,
   933 F. Supp. 2d 365 (D. Conn. 2013)...................................................................9

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re
   Bayou Grp. LLC)*,
   439 B.R. 284 (S.D.N.Y. 2010)...............................................................................9

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
   2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)...................................................9

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995).................................................................................8

*Janvey v. Democratic Senatorial Campaign Comm., Inc., et al.*,
   793 F. Supp. 2d 825 (N.D. Tex. 2011) .................................................................9

*McHale v. Boulder Cap. (In re 1031 Tax Grp., LLC)*,
   439 B.R. 47 (S.D.N.Y. 2010).................................................................................9

*Moran v. Goldfarb*,
   2012 WL 2930210 (S.D.N.Y. Jul. 16, 2012) .........................................................9

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2011)...................................................................7

*Picard v. Cohen*,
   2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016)............................................7

*Picard v. Cohmad Sec. Corp.*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011)...................................................................7

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012) ........................................................................................ 1, 7

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ............................................................................................ 7

*Picard v. Merkin*,
    563 B.R. 737 (Bankr. S.D.N.Y. 2017) ............................................................................... 1

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ............................................................................................. 8, 9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard Madoff)*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................................... 7

*In re Slatkin*,
    525 F.3d 805 (9th Cir. 2008) ............................................................................................. 9

*Stenger v. World Harvest Church, Inc.*,
    2006 WL 870310 (N.D. Ga. March 31, 2006) .................................................................. 9

*United States v. Winley*,
    638 F.2d 560 (2d Cir. 1981) ............................................................................................. 10

**Statutes**

11 U.S.C. § 548(a)(1)(A) ........................................................................................................ 7

15 U.S.C. § 15(b) .................................................................................................................... 2

15 U.S.C. § 78aaa *et seq* ....................................................................................................... 1

15 U.S.C. § 78o(b) ................................................................................................................. 2

**Rules**

Fed. R. Bankr. P. 9017 ............................................................................................................ 1

Fed. R. Crim. P. 11 ............................................................................................................. 9, 10

Fed. R. Evid. 201 ....................................................................................................... 8, 9, 10, 11

Fed. R. Evid. 803(22) ........................................................................................................... 8, 9

Fed. R. Evid. 807 .................................................................................................................. 8, 9

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and the Declaration of Dean D. Hunt in Support of the Trustee's motion *in limine* #1 ("Hunt Decl.") for entry of an order under the Federal Rules of Evidence, made applicable here by Federal Rule of Bankruptcy Procedure 9017, to admit into evidence at trial the plea allocutions of Madoff and BLMIS employees, Frank DiPascali, Jr., David Kugel, and Irwin Lipkin.

## PRELIMINARY STATEMENT

The Trustee's claims against Defendants BAM, L.P. ("BAM"), Michael Mann, and Meryl Mann (collectively, "Defendants") seek to avoid and recover transfers of fictitious profits made by BLMIS to Defendants in the total amount of $2,813,000 from account nos. 1CM363 (the "Mann Account") and 1CM579 ("BAM Account") during the two-year period prior to December 11, 2008 (the "Transfers").

Defendants contest that BLMIS was a Ponzi scheme. As part of his proofs to be presented at trial, the Trustee intends to introduce and seek admission of the plea allocutions of Madoff, DiPascali, Kugel, and Lipkin, all of which confirm the extent, scope, and nature of the Ponzi scheme at BLMIS.

## STATEMENT OF FACTS

The essential facts regarding the BLMIS Ponzi scheme have been recounted in numerous decisions by the Second Circuit, the District Court, and this Court. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011); *Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012); *Picard v. Merkin*, 563 B.R. 737, 739 (Bankr. S.D.N.Y. 2017). As of January 19, 1960,

Madoff founded BLMIS as a sole proprietorship and registered as a broker-dealer with the

Securities and Exchange Commission (the "SEC").  On December 30, 1970, when the Securities

Investor Protection Act ("SIPA") was enacted, BLMIS became a member of the Securities

Investor Protection Corporation ("SIPC").  On January 1, 2001, Madoff continued BLMIS as a

sole member limited liability company under the laws of the State of New York.  BLMIS's

ownership and control did not change since its formation in 1960.

Madoff operated BLMIS as its founder, sole owner, chairman, and chief executive

officer.  Madoff and BLMIS were, at all times relevant to this adversary proceeding, registered

with the SEC as a broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15

U.S.C. § 78o(b), and members of the Financial Industry Regulatory Authority (formerly known

as the National Association of Securities Dealers).  At all times relevant to this adversary

proceeding, BLMIS served as an investment adviser.

### *Allocution of Bernard L. Madoff*

On December 11, 2008, Madoff was arrested for violating numerous federal criminal

securities statutes.  On March 12, 2009, Madoff pleaded guilty to eleven criminal counts: (i)

securities fraud; (ii) investment adviser fraud; (iii) mail fraud; (iv) wire fraud; (v) international

money laundering to promote fraud in the sale of securities; (vi) international money laundering

to conceal the proceeds of fraud in the sale of securities; (vii) money laundering; (viii) making

false statements; (ix) perjury; (x) making a false filing with the SEC; and (xi) theft from an

employee benefit plan.[1]

---

[1] Hunt Decl., Ex. 1, Plea Allocution of Bernard L. Madoff at 7–8, *United States v. Madoff*, No. 09-cr-213
(DC) (S.D.N.Y. March 12, 2009) ("Madoff Allocution"), *available at* ECF Nos. 50, 63.

At his plea allocution, Madoff admitted to operating a Ponzi scheme through the firm's

investment advisory business beginning in the early 1990s.[2]  While representing to his investors

that he would invest their funds in shares of common stock, options, and other securities of large,

well-known corporations as part of a purported "split-strike conversion" strategy, Madoff

admitted, "I never made those investments I promised clients," and instead deposited them in a

bank account held at Chase Manhattan Bank.[3]  He further explained: "Up until I was arrested . . .

I never invested [customer] funds in the securities, as I had promised.  Instead, those funds were

deposited in [the 703 Account].  When clients wished to receive the profits they believed they

had earned with me or to redeem their principal, I used the money in the [703 Account] that

belonged to them or other clients to pay the requested funds."[4]  The purported profits were

reflected on false account statements that Madoff sent to his investors.[5]

At the time he made the foregoing admissions in his allocution, Madoff faced a total

maximum incarceration of 150 years in prison.[6]  He was subsequently sentenced to the

maximum term and is currently incarcerated at the Federal Correctional Complex in Butner,

North Carolina.[7]

### Allocution of Frank DiPascali, Jr.

Frank DiPascali, Jr. joined BLMIS after graduating high school in 1975.  After holding

various positions throughout the 1980s, DiPascali became a supervisor of the investment

---

[2] Although the Trustee submits that the Ponzi scheme commenced at much earlier time, Madoff's admission that the Ponzi scheme started in the early 1990s is relevant here because Defendants opened their first of the two accounts at issue here in December 1995.

[3] Madoff Allocution at 24.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 18.

[7] See Judgment, *United States v. Madoff*, No. 09-cr-213 (DC) (S.D.N.Y. June 29, 2009), ECF No. 100.

advisory business and admitted to knowingly participating in the Ponzi scheme beginning in the late 1980s or early 1990s.[8]

On August 11, 2009, DiPascali pleaded guilty to ten criminal counts: (i) conspiracy to commit securities fraud, investment advisory fraud, mail fraud, wire fraud, money laundering, falsify books and records of a broker-dealer, and falsify books and records of an investment fund; (ii) securities fraud; (iii) investment adviser fraud; (iv) falsifying books and records of a broker-dealer; (v) falsifying books and records of an investment adviser; (vi) mail fraud; (vii) wire fraud; (viii) money laundering; (ix) perjury; and (x) income tax evasion.[9]

At his plea allocution, DiPascali explained: "From at least the early 1990's through December of 2008, there was one simple fact that Bernie Madoff knew, that I knew, and that other people knew but that we never told the clients nor did we tell the regulators like the SEC. No purchases of [sic] sales of securities were actually taking place in their accounts.  It was all fake. It was fictitious . . . ."[10]  DiPascali also admitted to using historical stock prices to falsify the trading activity reflected on the customer statements and using phony trades for certain customers in order to obtain the targeted rate of return that Madoff had directed for them.[11]  As DiPascali explained, "[o]n a regular basis, I used hindsight to file historical prices on stocks then I used those prices to post purchase of sales [sic] to customer accounts as if they had been executed in real-time.  On a regular basis I added fictitious trade data to account statements of

---

[8] Hunt Decl., Ex. 2, Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y. Aug. 11, 2009) ("DiPascali Allocution"), *available at* ECF Nos. 11, 12.

[9] *See id.* at 19–20.

[10] *Id.* at 46.

[11] *Id.* at 47.

certain clients to reflect the specific rate of return that Bernie Madoff had directed for that client."[12]

DiPascali faced a total maximum incarceration of 125 years in prison.[13]  He died in 2015 while awaiting sentencing.[14]

### Allocution of David Kugel

David Kugel was a trader for BLMIS's proprietary trading business unit.  Kugel pleaded guilty to five criminal counts: (i) conspiracy to commit securities fraud, conspiracy to falsify books and records of a broker dealer, conspiracy to falsify books and records of an investment advisor, and conspiracy to commit bank fraud; (ii) securities fraud; (iii) falsifying books and records of a broker dealer; (iv) falsifying books and records of an investment advisor; and (v) bank fraud.[15]

At his allocution, Kugel admitted to creating fake, backdated trades by providing historical trade information to other BLMIS employees: "I provided historical trade information to other BLMIS·employees, which was used to create false, profitable trades in the Investment Advisory clients' accounts at BLMIS.  Specifically, beginning the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades."[16]  He acknowledged that he obtained historical trading data from information available to him through the proprietary trading

---

[12] *Id.*

[13] *Id.* at 32.

[14] *See* Letter dated May 10, 2015, *United States v. DiPascali*, No. 09-cr-764 (RJS) (S.D.N.Y. May 10, 2015), ECF No. 108.

[15] Hunt Decl., Ex. 3, Plea Allocution of David Kugel at 14–16, *United States v. Kugel*, No. 10-cr-228 (LTS) (S.D.N.Y. Nov. 21, 2011) ("Kugel Allocution"), *available at* ECF No. 188.

[16] *Id.* at 32.

business at BLMIS and used fictitious trades to create the appearance of profitable trading in the
investment advisory customer accounts.[17]

At the time of his allocution, Kugel faced a faced a total maximum incarceration of 85
years in prison.  Kugel Allocution at 21.  Kugel was sentenced to 10 months of home detention
and 200 hours of community service.[18]

### Allocution of Irwin Lipkin

Irwin Lipkin was controller of BLMIS and was the first individual hired by Madoff in
1964.  On November 8, 2012, Lipkin pleaded guilty to two criminal counts: (i) conspiracy to
commit securities fraud, make false filings with the SEC, falsify books and records of a broker
dealer, falsify books and records of an investment advisor, and falsify statements in relation to
documents required by the Employee Retirement Income Security Act of 1974 ("ERISA"); and
(ii) making false statements in relation to documents required by ERISA.[19]

Lipkin admitted that he knowingly made inaccurate accounting entries in financial
records and that his actions "helped Mr. Madoff run the Ponzi scheme that harmed thousands of
people."[20]  Specifically, Lipkin prepared and maintained BLMIS's general ledger, stock records,
FOCUS reports, and annual financial statements.[21]  The false numbers contained in these records
were subsequently shared with regulators and BLMIS investors.[22]

---

[17] *Id.* at 32–33.

[18] *See* Judgment in a Criminal Case, *United States v. Kugel*, No. 10-cr-228 (LTS) (S.D.N.Y. June 4, 2015), ECF No. 1357.

[19] Hunt Decl., Ex. 4, Plea Allocation of Irwin Lipkin at 29–37, *United States v. Lipkin*, No. 10-cr-228 (LTS) (S.D.N.Y. Nov. 8, 2012), *available at* ECF No. 288.

[20] *Id.* at 31.

[21] *Id.*

[22] *Id.*

At the time of his allocution, Lipkin faced a total maximum incarceration of 10 years in prison.  Lipkin Allocution at 19.  Lipkin subsequently was sentenced to six months in prison.[23]

## ARGUMENT

Section 548(a)(1)(A) of the Bankruptcy Code authorizes the Trustee to avoid the entire amount of "any payment" of an interest in property of the debtor made within two years of the filing date with actual intent to hinder, delay, or defraud creditors.  11 U.S.C. § 548(a)(1)(A); *Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012).  Fraudulent intent on the part of the transferor is presumed as a matter of law in cases where the debtor operated a Ponzi scheme. *See, e.g.*, *Picard v. Cohen*, 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*), 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*")) (finding "the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.,* 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"); *In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 535 (9th Cir. 1990) (explaining that "the debtor's actual intent to hinder, delay or defraud its creditors may be inferred by the mere existence of a Ponzi scheme").

This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption, particularly in light of Madoff's criminal admission."  *Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 221 (Bankr. S.D.N.Y. 2011); *see also Picard v. Katz*, 462 B.R. 447, 453, n.5

---

[23] *See* Judgment, *United States v. Lipkin*, No. 10-cr-228 (LTS) (S.D.N.Y. Aug. 7, 2015), ECF No. 1416.

7

(S.D.N.Y. 2011) ("it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors").  The relevant facts concerning the BLMIS Ponzi scheme are substantiated by the allocutions of Madoff, DiPascali, Kugel, and Lipkin: (1) Madoff and these BLMIS employees orchestrated a decades-long Ponzi scheme in which they pretended to trade in securities but failed to make the purchases and sales reflected on customer account statements; (2) BLMIS falsified securities transactions reflected on customer statements by creating phony transactions after the fact based on historical market data; and (3) BLMIS funded customer withdrawals with cash deposited by other customers.[24] The Trustee's Amended Complaint cites to the plea allocutions of Madoff and DiPascali, and Defendants in their filed Answer expressly "refer the Court to the plea allocution[s] for the complete contents therein."[25]

Federal Rule of Evidence 201 permits judicial notice of facts not subject to reasonable dispute because they can be accurately and readily determined from sources not subject to dispute.  Fed. R. Evid. 201.  A plea allocution is properly subject to judicial notice.  *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (district court properly took notice of plea agreement of Ponzi scheme operator in subsequent civil action against other parties); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (taking judicial notice of fraudsters' guilty pleas in subsequent civil action by bankruptcy trustee).

Plea allocutions of Ponzi scheme perpetrators are further admissible, notwithstanding hearsay objections, under Rule 803(22) (judgment of a previous conviction) and Rule 807

---

[24] *See generally* Madoff, DiPascali, Kugel, and Lipkin Allocutions.

[25] *See* Amended Complaint at ¶¶ 17–18, *Picard v. BAM, L.P.*, No. 11-cv-07667 (JSR) (S.D.N.Y. Jan. 25, 2012), ECF No. 9; Answer to Amended Complaint and Affirmative Defenses at ¶¶ 17–18, *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. April 16, 2014), ECF No. 40.

(residual exception) to establish the existence of a Ponzi scheme. *See, e.g.*, *Scholes*, 56 F.3d at

762; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB),

1005447 (SMB), 2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014) (finding the plea

allocution of Ponzi scheme perpetrator admissible as evidence of fraudulent intent); *In re Bayou

Grp.*, 396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008), *rev'd in part on other grounds*, 439 B.R. 284,

304 (S.D.N.Y. 2010) ("Courts have consistently found that criminal proceeding admissions of a

fraudulent scheme to defraud investors made in guilty pleas and plea allocutions are admissible

as evidence of 'actual intent' to defraud creditors."); *In re Slatkin*, 525 F.3d 805, 811–12 (9th

Cir. 2008) (plea agreement admissible under Fed. R. Evid. 807 as evidence of operation of Ponzi

scheme); *see also Moran v. Goldfarb*, 2012 WL 2930210, at *4 (S.D.N.Y. Jul. 16, 2012) (finding

guilty plea provides "ample evidence" of intent to defraud); *Carney v. Lopez*, 933 F. Supp. 2d

365, 380 (D. Conn. 2013) (same); *Christian Bros. High Sch. Endowment v. Bayou No Leverage

Fund, LLC (In re Bayou Grp. LLC)*, 439 B.R. 284, 305-07 (S.D.N.Y. 2010) (relying on guilty

pleas to affirm Bankruptcy Court's finding of intent to defraud); *McHale v. Boulder Cap. (In re

1031 Tax Grp., LLC)*, 439 B.R. 47, 72 (S.D.N.Y. 2010) (same); *Stenger v. World Harvest

Church, Inc.*, 2006 WL 870310, *14 (N.D. Ga. March 31, 2006) (guilty plea sufficient to support

finding of Ponzi scheme); *Janvey v. Democratic Senatorial Campaign Comm., Inc., et al.*, 793 F.

Supp. 2d 825, 835 n.9 (N.D. Tex. 2011) (holding that "guilty plea constitutes admissible

evidence").

Moreover, consistent with the mandates of Rules 201, 803(22) and 807, the statements in

the plea allocutions demonstrate a high guarantee of trustworthiness as a result of the safeguards

that a sentencing judge must take in order to accept a guilty plea under Rule 11 of the Federal

Rules of Criminal Procedure. Under Rule 11, a sentencing judge is required to ensure that each

guilty plea is voluntary and has a factual basis which is developed on the record at the plea allocution. Fed. R. Crim. P. 11. The trustworthiness of a plea allocution is bolstered by the fact that the criminal defendant gives his statements during the allocation sworn under oath. As the Second Circuit commented, "[i]t is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court." *United States v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981). Here, the trustworthiness of each allocution is undisputed; the court accepting each of the defendants' pleas made clear the circumstances and conditions of the plea and importantly the significant incarceration and/or monetary penalties faced by the respective defendant.

As the requirements of Federal Rules of Evidence 201, 803(22), and 807 are met, the plea allocutions of Madoff, DiPascali, Kugel, and Lipkin would facilitate the interests of justice in this case as they bear directly on material facts in dispute—the Ponzi scheme at BLMIS—and should be admitted into evidence accordingly.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court admit into evidence the plea allocutions of Madoff and BLMIS employees, Frank DiPascali, David Kugel, and Irwin Lipkin pursuant to Federal Rules of Evidence 201, 803(22), and 807 at trial.

Dated: November 19, 2018
New York, New York

**BAKER & HOSTETLER LLP**

/s/ *Dean D. Hunt*
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*