**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Nicholas J. Cremona
Jorian L. Rose
Amy E. Vanderwal
Jason I. Blanchard

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the chapter 7 estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |

**TRUSTEE'S REPLY TO THE PARTIAL OBJECTION OF**
**FGLS EQUITY LLC TO THE TWENTY-THIRD OMNIBUS MOTION TO OVERRULE**
**OBJECTIONS OF CLAIMANTS**
**<u>WHO INVESTED MORE THAN THEY WITHDREW</u>**

**TABLE OF CONTENTS**

**Page(s)**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  FACTUAL BACKGROUND ......................................................................................3

     A.   The Claims Allowance Process ........................................................................3

     B.   FGLS's Customer Claim and the Trustee's Action Against FGLS ..................5

III. ARGUMENT ................................................................................................................8

     A.   Bankruptcy Rule 3007 is Inapplicable to the Trustee's
          Determination of FGLS's Claim........................................................................8

     B.   Under the Net Investment and Inter-Account Methods, the
          Trustee's Determination of the FGLS Claim Should be Affirmed..................12

IV.  CONCLUSION...........................................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bernard L. Madoff Inv. Sec. LLC*,
   424 B.R. 122 (Bankr. S.D.N.Y. 2010) *aff'd* 654 F.3d 229 (2d Cir. 2011) *cert denied Velvel v. Picard*, 133 S. Ct. 25 (2012)..................................................................13

*In re Bernard L. Madoff Inv. Sec. LLC*,
   570 B.R. 477 (Bankr. S.D.N.Y. 2017)....................................................................................12

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011)..............................................................................................9, 10

*In re Chicago P'ship Bd., Inc.*,
   236 B.R. 249 (Bankr. N.D. Ill. 1999) ....................................................................................10

*In re Gov't Sec. Corp.*,
   107 B.R. 1012 (S.D. Fla. 1989) .............................................................................................10

*Liona Corp. v. PCH Assoc. (In re PCH Assoc.)*,
   949 F.2d 585 (2d Cir. 1991)...................................................................................................11

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*,
   277 B.R. 520 (Bankr. S.D.N.Y. 2002)....................................................................................12

*In re Patriot Coal Corp.*,
   482 B.R. 718 (Bankr. S.D.N.Y. 2012)....................................................................................11

*Pepper v. Litton*,
   308 U.S. 295 (1939)...............................................................................................................11

*Peskin v. Picard*,
   413 B.R. 137 (Bankr. S.D.N.Y. 2009).................................................................................3, 9

*Ryan v. Picard*,
   133 S. Ct. 24 (2012)...............................................................................................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   513 B.R. 437 (S.D.N.Y. 2014).................................................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Nos. 08-01789 (SMB), 09-11893, -- B.R.--, 2018 WL 3617813 (Bankr. S.D.N.Y. July 27, 2018)....................................................................................9, 11, 12

*Sec. Inv'r Prot. Corp. v. Charisma Sec. Corp.*,
  506 F.2d 1191 (2d Cir. 1974) ......................................................................................... 10

*Sec. Inv'r Prot. Corp. v. Lehman Bros. Inc.*,
  433 B.R. 127 (Bankr. S.D.N.Y. 2010) ............................................................................ 10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
  522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC,* 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 697 F. App'x 708 (2d Cir. 2017) ................... 4, 13, 14, 15

**Statutes**

15 U.S.C. § 78fff-2(b) ........................................................................................................ 3, 10, 12

15 U.S.C. § 78fff(a) .................................................................................................................... 10

15 U.S.C. § 78fff(a)(1) ................................................................................................................. 9

15 U.S.C. § 78fff(b) .................................................................................................................... 10

15 U.S.C. § 78*lll*(2) ..................................................................................................................... 12

15 U.S.C. § 78*lll*(4) ..................................................................................................................... 12

15 U.S.C. § 78*lll*(11) ................................................................................................................... 12

Bankruptcy Code Section 502(d) ............................................................................................ 5, 6

**Rules**

Federal Rule of Bankruptcy Procedure 7041 ............................................................................. 6

Federal Rule of Bankruptcy Procedure 3007 ..................................................................... *passim*

Federal Rule of Civil Procedure 41 ............................................................................................ 6

Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this reply to the partial objection filed by FGLS Equity LLC ("FGLS") on November 3, 2018 (the "Objection") (ECF No. 18155) to the Trustee's Twenty-Third Omnibus Motion to Overrule Objections of Claimants Who Invested More Than They Withdrew (the "Motion") (ECF No. 18040), to the extent the Motion relates to FGLS.

## I.    PRELIMINARY STATEMENT

In the Objection, FGLS argues that the Motion should be denied because the Trustee's determination letter regarding FGLS's claim failed to comply with Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). However, Bankruptcy Rule 3007 directs the procedure for filing claims objections, not determination letters issued in a SIPA[1] liquidation. To apply this Rule here would be inconsistent with SIPA and delay the claims determination process approved by this Court. Accordingly, the Rule is inapplicable at the customer claims determination stage.

FGLS further argues that the Trustee did not sufficiently explain in his determination letter why he did not provide credit for a transfer of $3,149,075 of fictitious profits into FGLS's account from another BLMIS account (the "Initial Transfer"). FGLS's position is contradicted not only by the record of these proceedings, but by FGLS's own pleadings. The Trustee provided adequate notice of the basis for his determination of FGLS's claim, using the very form approved by this Court in the Claims Procedure Order. In the determination letter, the Trustee explained to FGLS that the calculation of its claim was based on the amount of money deposited into FGLS's

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

BLMIS account less subsequent withdrawals. The Trustee enclosed a detailed schedule identifying each transaction related to the account and the Trustee's treatment of that transaction, including the Initial Transfer and the Trustee's treatment of the transfer as $0.

Moreover, after FGLS filed its claim, but before the Trustee had issued his claim determination, the Trustee sued FGLS and the transferor of the Initial Transfer, C&P Associates, Ltd. ("C&P").[2] In those lawsuits, C&P and FGLS, who were represented by the same counsel and had the same account representative, were provided with sufficient notice of the basis for the Trustee's treatment of the Initial Transfer. For example, in the complaint against FGLS, the Trustee identified all transactions related to FGLS's BLMIS account and whether those transactions affected the balance of principal therein. With respect to the Initial Transfer, the Trustee adjusted the amount to $0 and explained, "[a]lthough BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged."[3]

Additionally, in FGLS's objection to the Trustee's claims determination, FGLS argued that the Inter-Account Method shouldn't apply to the Initial Transfer and cited to this Court's Inter-Account Transfer decision, thus acknowledging its understanding of why credit was not given. In any event, this Court's Inter-Account Transfer decision, of which FGLS concedes it is aware, clearly explains how the Inter Account Method operates with respect to customers similarly situated to FGLS, *i.e.,* the Trustee provided credit to the recipients of inter-account

---

[2] Although the Trustee provided FGLS with ample notice outside of the determination letter, the Trustee does not concede that the determination letter itself does not comply with the requirements of Bankruptcy Rule 3007.

[3] *See Picard v. FGLS Equity LLC*, Adv. Pro No. 10-05191, ECF No. 1, Ex. B, n.1. A true and correct copy of the Trustee's complaint against FGLS is annexed to the Declaration of Jason I. Blanchard in Support of the Trustee's Reply to the Partial Objection of FGLS Equity LLC to the Twenty-Third Omnibus Motion to Overrule Objections of Claimants Who Invested More Than They Withdrew ("the "Blanchard Decl.") as Exhibit 1.

2

transfers up to the amount of available principal in the transferor's account.

FGLS shoulders the ultimate burden of demonstrating its entitlement to an allowable customer claim. FGLS has not shown that the Trustee's determination was incorrect. In fact, FGLS does not argue that the Trustee's calculation of its claim was not in accordance with this Court's prior applicable decisions. Therefore, the Trustee submits that the Objection and the objection to the Trustee's determination of FGLS's claim should be denied and the Trustee's determination affirmed.

## II. FACTUAL BACKGROUND

### A. The Claims Allowance Process

On December 23, 2008, this Court entered the Claims Procedures Order,[4] which sets forth "a systematic framework for the filing, determination and adjudication of claims in the BLMIS liquidation proceeding." *Peskin v. Picard*, 413 B.R. 137, 143 (Bankr. S.D.N.Y. 2009). This framework has "been consistently approved and utilized in SIPA proceedings since its enactment in 1970." *Id.*, n.9 (collecting cases).

The Claims Procedures Order directed customers to file their claims against BLMIS with the Trustee and established a bar date for all claims of six months from the date of publication of notice of the commencement of the proceeding, which occurred on January 2, 2009.[5] The Claims Procedure Order also approved the form of various documents for the Trustee to carry out its provisions, including the Notice of Trustee's Determination of Claim Form, annexed to the Trustee's application for approval of the Claims Procedure Order as Exhibit G.[6]

If BLMIS's books and records failed to support a claim or the claim was not otherwise

---

[4] *In re Bernard L. Madoff Inv. Sec. LLC.*, No. 08-01789 (SMB), ECF No. 12. A true and correct copy of the Claims Procedure Order is annexed to the Blanchard Decl. as Exhibit 3.
[5] *Id*. at 3, 7.
[6] A true and correct copy of Exhibit G to the Trustee's application for approval of the Claims Procedure Order (ECF No. 8), is annexed to the Blanchard Decl. as Exhibit 4.

3

established to the Trustee's satisfaction, the Trustee was permitted to deny the claim and required to notify the claimant of the determination in writing.[7] The Claims Procedure Order specifically directed the Trustee to notify claimants whose claims had been disallowed in whole or in part in a form conforming to the Notice of Trustee's Determination of Claim Form. Determination letters were not filed with the Bankruptcy Court. If the claimant did not object to the Trustee's determination, the determination was deemed approved by the Court and binding on the claimant. Claimants who disagreed with the Trustee's determination were required to file objections with the Bankruptcy Court within thirty days of receiving the determination.[8] Following receipt of an objection, the Trustee was to obtain a hearing date before the Bankruptcy Court and notify the objecting claimant thereof.[9]

As stated in the Motion, since the commencement of the liquidation, the Trustee and numerous BLMIS claimants have extensively litigated before the courts of the Second Circuit over the appropriate methodology for calculating customer claims under SIPA, including the Trustee's calculation of net equity for accounts with inter-account transfers according to the Inter-Account Method. *See, e.g.*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC,* 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 697 F. App'x 708 (2d Cir. 2017). As FGLS notes in the Objection, FGLS previously argued that the Inter-Account Method should not be applied in calculating its claim, but FGLS did not participate in the briefing before this Court, the District Court, or the

---

[7] Claims Procedure Order at 5 (citing SIPA § 78fff-2(b)).
[8] *Id*. at 6–7.
[9] *Id*. at 7.

Second Circuit on that issue.[10]

## B. FGLS's Customer Claim and the Trustee's Action Against FGLS

FGLS filed a customer claim with the Trustee on June 25, 2009, which the Trustee designated as claim no. 011505 (the "Claim").[11] The Claim relates to the customer account held at BLMIS on FGLS's behalf, which BLMIS had assigned account number 1F0178 (the "Account").[12]

On November 23, 2010, the Trustee commenced an action against C&P, Steven Mendelow ("Mendelow"), and others by filing a complaint with this Court to avoid and recover fraudulent and preferential transfers (the "C&P Action"). In the complaint, the Trustee alleged that C&P had transferred fictitious profits to FGLS, that C&P's account had been depleted of all principal before the date of the Initial Transfer, and that Mendelow operated both C&P and FGLS.[13] In its answer, C&P admitted Mendelow's operation of both entities.[14]

On December 3, 2010, the Trustee commenced an action against FGLS by filing a complaint with this Court to avoid and recover certain preferential transfers received by FGLS and to disallow the Claim under Section 502(d) of the Bankruptcy Code (the "FGLS Action").[15] With the complaint, the Trustee provided a schedule identifying all of the transactions related to the Account.[16] Among other things, the schedule specified whether a particular transaction affected the balance of principal in the Account, if at all, based on the Trustee's application of the Inter-Account Method. As reflected in the schedule, the Trustee treated the Initial Transfer, a

---

[10] Objection at 5.
[11] Blanchard Decl. at ¶ 3.
[12] *Id*. at ¶ 4.
[13] *See Picard v. Mendelow, et al.*, Adv. Pro No. 10-04283, ECF No. 1, at ¶¶ 6, 9, 22, 112, Ex. B. A true and correct copy of the Trustee's complaint against Mendelow and C&P is annexed to the Blanchard Decl. as Exhibit 5.
[14] *See id.*, ECF No. 65, at ¶¶ 9, 22. A true and correct copy of C&P's answer in the C&P Action is annexed to the Blanchard Decl. as Exhibit 6.
[15] *See* Blanchard Decl., Ex. 1.
[16] *See id.*, Ex. B.

5

purported transfer of $3,149,075 from C&P's BLMIS account into the Account on November 1, 2002, as entirely fictitious, and therefore valued it at $0. The Trustee explained, "[a]lthough BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged."[17] In its answer, FGLS admitted that it had generally received inter-account transfers from other BLMIS accounts, which necessarily included the Initial Transfer from C&P.[18] FGLS and C&P were represented by the same counsel and had the same account representative at this time.[19]

On September 21, 2015, the Court entered a Stipulation and Order pursuant to Rule 41 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7041, dismissing the FGLS Action.[20]

Subsequently, on October 7, 2015, the Trustee issued to FGLS a determination letter (the "Determination Letter"), in accordance with the Notice of Trustee's Determination of Claim Form approved by the Claims Procedures Order, allowing the Claim in the amount of $3,450,000.[21] In the Determination Letter, the Trustee explained that the allowed amount "was the balance on the Filing Date based on the amount of money you deposited with BLMIS for the purchase of securities, less subsequent withdrawals, as outlined in Table 1 attached hereto."[22] The Trustee further explained that "[y]ou did not previously receive a determination letter

---

[17] See id. at 3, n.1.
[18] See Picard v. FGLS Equity LLC, Adv. Pro No. 10-05191, ECF No. 7, at ¶ 2. A true and correct copy of FGLS's answer in the FGLS Action is annexed to the Blanchard Decl. as Exhibit 2.
[19] See id; Blanchard Decl., Ex. 6.
[20] See Picard v. FGLS Equity LLC, Adv. Pro No. 10-05191, ECF No. 47.
[21] A copy of the Determination Letter is attached to the Affirmation of Richard C. Yeskoo ("Yeskoo Aff.") in support of FGLS's Objection. ECF No. 18156, Ex. 1.
[22] See id.

because your claim was temporarily disallowed pursuant to Bankruptcy Code Section 502(d) in connection with an adversary proceeding against you. As a result of the dismissal of the adversary proceeding against you, your claim is now being determined pursuant to this Notice of Trustee's Determination of Claim."[23]

On November 5, 2015, FGLS, through different counsel, filed an objection to the Determination Letter (the "Objection to Determination", and together with the Objection, the "Objections") contending, among other things, that the Trustee failed to provide credit for the Initial Transfer, and failed to explain his rationale for doing so.[24] FGLS also adopted all arguments raised by claimants in their objections underlying this Court's decision approving the Inter-Account Method.[25]

The Trustee has allowed FGLS's Claim in the amount of $3,450,000, consistent with the Net Investment Method and Inter Account Transfer Method. To date, the Trustee has made a SIPC advance ($500,000) and nine pro rata interim distributions (representing almost 64% of each allowed claim amount) to BLMIS account holders with allowed claims, such as FGLS.[26]

After substantial legal proceedings relating to the methodology for calculating customer claims, including with respect to the Inter-Account Method, on September 27, 2018, the Trustee filed the Motion seeking to have the Court overrule objections filed by or on behalf of customers that invested more money with BLMIS than they withdrew, and are thus in the parlance of this proceeding, net losers, including FGLS.

Subsequently, FGLS requested that the Trustee adjourn the hearing on the Motion solely

---

[23] *Id.*
[24] Yeskoo Aff., Ex. 2.
[25] *Id.* at ¶¶ 13-15.
[26] *See* Trustee's Twentieth Interim Report for the Period April 1, 2018 Through September 30, 2018, *In re Bernard L. Madoff Inv. Sec. LLC.*, No. 08-01789 (SMB), ECF No. 18146, at 2-3, 47-48.

7

with respect to its time to object to the Motion. After conferring with the Trustee's counsel, FGLS and the Trustee agreed to adjourn the Motion solely with respect to FGLS to November 28, 2018 and extend the time for FGLS to file an objection to November 5, 2018. The parties memorialized their agreement by stipulation, which this Court so ordered on October 16, 2018 (ECF No. 18072).

On October 26, 2018, the Trustee filed a certificate of no objection representing to the Court that other than FGLS, no other party had filed a responsive pleading or request for hearing on the Motion (ECF No. 18124).

On October 29, 2018, the Court entered an order granting the Motion as to all parties other than FGLS (ECF No. 18132).

The Trustee and FGLS conferred in good faith, but the parties were ultimately unsuccessful in resolving FGLS's issues with the Motion.

On November 3, 2018, FGLS filed the Objection (ECF No. 18155) together with the Affirmation of Richard C. Yeskoo (ECF No. 18156).

### III.  ARGUMENT

#### A.  Bankruptcy Rule 3007 is Inapplicable to the Trustee's Determination of FGLS's Claim

FGLS argues that the Trustee has not complied with the requirements of Bankruptcy Rule 3007. However, the rule has no application to the Trustee's determination of FGLS's Claim. Bankruptcy Rule 3007 governs the procedure for claims objections. Specifically, it establishes the time and manner of service for such objections, whether such relief must be sought by adversary proceeding, and provides limitations on omnibus objections. *See* Fed. R. Bankr. P. 3007. The text of the rule does not, however, address the procedure for a SIPA trustee's determination of customer claims. In fact, determination letters are not filed with the Bankruptcy

8

Court, or otherwise made publicly available by the Trustee.

Although a SIPA liquidation and bankruptcy case are similar in many respects, the process for the allowance of claims differs. A claim for customer protection under SIPA is the "functional equivalent of a proof of claim in a bankruptcy case," in the sense that "a trustee has the right to contest a claim, and claims are ultimately resolved by a court." *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437, 443 (S.D.N.Y. 2014). However, "unlike a typical bankruptcy in which the trustee must formally object to a claim," in this SIPA liquidation, "the Trustee issued a determination letter to the claimant regarding the allowed amount of his net equity claim. If the claimant disagreed with the Trustee's determination, he had to object within thirty days. If the claimant failed to submit a timely objection, the Trustee's determination became final and binding." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Nos. 08-01789 (SMB), 09-11893, -- B.R.--, 2018 WL 3617813, at *2, n.3 (Bankr. S.D.N.Y. July 27, 2018).

This process "provides a practical and efficient way to resolve a large number of claims without burdening the court or draining its resources," and allows the Trustee to "resolve most of the claims, leaving only those incapable of resolution for this Court." *Peskin*, 413 B.R. at 143. It also furthers SIPA's stated purpose of distributing customer property "as promptly as possible" after the Trustee's appointment. SIPA § 78fff(a)(1); *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 240 (2d Cir. 2011) ("SIPA is intended to expedite the return of customer property"). A determination letter is designed to describe the amount of a customer's net equity, as determined in part by what is in a customer's brokerage account. If a SIPA trustee were required to treat a determination letter as a formal pleading under Bankruptcy Rule 3007, it would slow down the determination process. Determination letters are also not filed with the

9

Bankruptcy Court for good reason. Such a requirement would make the contents of every customer's brokerage account public.

Simply stated, the Trustee's determination of a customer claim is not the same as an objection to a claim and therefore Bankruptcy Rule 3007 does not apply. To address the procedure for determining customer claims, the Court adopted those set forth in the Claims Procedure Order, which established a framework that has "been consistently approved and utilized in SIPA proceedings since its enactment in 1970." *Peskin*, 413 B.R. at 143, n.9 (collecting cases).

To the extent Bankruptcy Rule 3007 has any relevance to the Trustee's issuance of a customer claim determination letter, the Trustee submits that SIPA and Bankruptcy Rule 3007 are inconsistent with one another and therefore the rule should not be applied here. SIPA expressly provides that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, 5 and subchapters I and II of chapter 7 of title 11." SIPA § 78fff(b). Thus, where there are explicit differences between provisions of the Bankruptcy Code or Rules and SIPA, SIPA governs. *See In re Gov't Sec. Corp.*, 107 B.R. 1012, 1022-23 (S.D. Fla. 1989); *In re Chicago P'ship Bd., Inc.*, 236 B.R. 249, 260-61 (Bankr. N.D. Ill. 1999).

A provision is "inconsistent" with SIPA if it is in direct conflict with SIPA or if "its application would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits." *Sec. Inv'r Prot. Corp. v. Charisma Sec. Corp.*, 506 F.2d 1191, 1195 (2d Cir. 1974); *see also Sec. Inv'r Prot. Corp. v. Lehman Bros. Inc.*, 433 B.R. 127, 135 (Bankr. S.D.N.Y. 2010). Here, Bankruptcy Rule 3007 is inconsistent with SIPA because its application would impede the Trustee's duty to determine and satisfy customer

10

claims promptly after his appointment, SIPA §§ 78fff-2(b), and contravene the statute's very purpose for the prompt distribution of customer property. *See* SIPA § 78fff(a); *see also Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 240.

Applying Bankruptcy Rule 3007 here would also be inconsistent with the provisions of the Claims Procedure Order that govern the Trustee's determination of customer claims. As noted above, the Claims Procedure Order directed the specific procedure for determining customer claims that were not supported by BLMIS's books and records or were otherwise not established to the Trustee's satisfaction: the Trustee was permitted to deny the claim and required to notify the claimant of the determination in writing in a form substantially conforming to the Notice of Trustee's Determination of Claim Form. The Trustee did just that with respect to FGLS.

Finally, to apply Rule 3007 to the Determination Later would elevate form over substance, resulting in a windfall to FGLS. FGLS contends that the Trustee did not address its Bankruptcy Rule 3007 argument in the Motion and he should, therefore, be prohibited from contesting the argument on reply.[27] FGLS's procedural argument, however, cannot be separated from the substantive Inter-Account Transfer issue. Importantly, FGLS does not contest the Trustee's use of the Inter-Account Method or its application to calculate the Claim, nor does it argue that it failed to receive notice of the Inter-Account Transfer litigation or this Court's decision. FGLS's procedural argument effectively places the burden of proof on the Trustee, rather than FGLS, contrary to this Court's prior rulings. *See Bernard L. Madoff Inv. Sec. LLC*, 2018 WL 3617813, at *14. As a court of equity, this court should reject FGLS's request, especially because there is no resulting prejudice to FGLS. *See, e.g., Pepper v. Litton*, 308 U.S.

---

[27] Objection at 6, 9.

11

295, 305 (1939) (in affirming the bankruptcy court's authority to look behind a judgment creditor's claim, the Supreme Court stated "that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done."); *Liona Corp. v. PCH Assoc. (In re PCH Assoc.)*, 949 F.2d 585, 597 (2d Cir. 1991) ("It is well established that a bankruptcy court, as a court of equity, may look through form to substance when determining the true nature of a transaction as it relates to the rights of parties against a bankrupt's estate."); *In re Patriot Coal Corp.*, 482 B.R. 718, 744 (Bankr. S.D.N.Y. 2012) (holding that it would improperly "elevate form over substance" to allow the debtors' venue choice to stand, notwithstanding literal compliance with the venue statute).

### B. Under the Net Investment and Inter-Account Methods, the Trustee's Determination of the FGLS Claim Should be Affirmed

As set forth in the Motion, under SIPA, the Trustee is responsible for assessing and satisfying customer claims. In satisfying customer claims, the Trustee must determine whether a claimant qualifies as a "customer," as defined in SIPA § 78*lll*(2), because customers are entitled to share pro rata in "customer property," defined in SIPA § 78*lll*(4), to the extent of their "net equity," defined in SIPA § 78*lll*(11). The customer, here FGLS, bears the burden of demonstrating its entitlement to an allowable customer claim. *Bernard L. Madoff Inv. Sec. LLC*, 2018 WL 3617813, at *14 (collecting cases); *In re Bernard L. Madoff Inv. Sec. LLC*, 570 B.R. 477, 481 (Bankr. S.D.N.Y. 2017) (citing *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) ("[I]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA.")).

Under SIPA, the term "net equity" is defined as the "dollar amount of the account or accounts of a customer," which must be determined by "calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the

12

filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus (B) any indebtedness of such customer to the debtor on the filing date." SIPA § 78*lll*(11). SIPA directs the Trustee to make payments to customers based on "net equity" insofar as the amount owed to the customer is "ascertainable from the books and records of the debtor or [is] otherwise established to the satisfaction of the trustee." SIPA § 78fff-2(b).

Under the Net Investment Method, the Trustee calculates a customer's net equity by adding the total amount of money a customer deposited into his or her BLMIS account less any subsequent withdrawals. *In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010), *aff'd* 654 F.3d 229 (2d Cir. 2011), *cert denied Velvel v. Picard*, 133 S. Ct. 25 (2012); *Ryan v. Picard*, 133 S. Ct. 24 (2012). Similarly, under the Inter-Account Method, the Trustee calculated the net equity for accounts with inter-account transfers by determining the amount of actual principal available in the transferor account at the time of the transfer, and credited the transferee account up to that same amount.

Consistent with the Net Investment Method, the Trustee did not include any fictitious gains in the net equity calculation. If the transferor account did not have any principal available at the time of the inter-account transfer, the transferee account was credited with $0 for that transfer. A final order approving the Trustee's use of the Inter-Account Method has also been entered. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41, 47 (Bankr. S.D.N.Y. 2014) *aff'd In re Bernard L. Madoff Inv. Secs., LLC*, 2016 WL 183492, at *2 (S.D.N.Y. Jan. 14, 2016) *aff'd Sagor v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 697 F. App'x 708 (2d Cir. 2017).

FGLS alleges that it does not challenge the propriety of the Inter-Account Method, which

13

has been fully and finally adjudicated in the Trustee's favor.[28] Instead, with respect to the Initial Transfer, FGLS argues that the Determination Letter "did not contain any facts concerning the account balance in the transferor account, nor did it state that it consisted only of fictitious profits or that there was no actual net equity in the transferor account sufficient to cover the transfer."[29] However, the Trustee's 2015 Determination Letter contains a schedule showing that the Trustee credited $0 of the Initial Transfer. This same schedule was attached to the Trustee's 2010 complaint in the FGLS Action along with an explanation for why the Account was not given principal credit for that transfer. The Determination Letter specifically references the Trustee's action against FGLS as the reason why the Claim had not been determined sooner.[30] In addition, in 2010, the Trustee commenced the C&P Action alleging that C&P had made transfers to FGLS and that all principal had been depleted from C&P's account before the date of the Initial Transfer.[31] C&P filed an answer admitting that Mendelow operated both C&P and FGLS.[32] Around the same time, FGLS, through the same counsel as C&P, filed an answer in the FGLS Action admitting that it had received inter-account transfers over the life of the Account, which necessarily included the Initial Transfer from C&P.[33]

Moreover, FGLS previously contested the Trustee's application of the Inter-Account Method to its Claim.[34] FGLS alleged that it "adopts and incorporates" the same arguments raised by claimants who had filed the objections underlying this Court's decision approving the Inter-Account Method.[35] Importantly, this Court explained that in applying the Inter-Account Method

---

[28] Objection at 5.
[29] *Id.* at 8.
[30] Yeskoo Aff., Ex. 1.
[31] *See* Blanchard Decl., Ex. 5.
[32] *Id.*, Ex. 6.
[33] *Id.*, Ex. 2.
[34] Objection at 5.
[35] Yeskoo Aff., Ex. 2 at ¶ 13.

14

to calculate the net equity in a claimant's account "the Trustee first recomputed the amount in the transferor account at the time of the transfer under the Net Investment Method. He then credited the transferee account in an amount up to the recomputed balance in the transferor account." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. at 48. To illustrate, the Court offered several examples of how the methodology applied, including the following: "assume that customer A's account statement indicated a balance of $5 million, but consisted entirely of fictitious profits. Customer B would not receive any benefit from an attempted transfer because customer A had $0 balance in his account under the Net Investment Method at the time of the transfer." *Id*. This example plainly illustrates how the Trustee calculated the principal in the Account. FGLS's position is paradoxical. Based on FGLS's citation to the Court's decision and its explicit adoption of the claimants' arguments underlying that decision, it is unclear how FGLS could be unaware of the Trustee's basis for calculating the Claim at the time FGLS filed the Objection to Determination.

Based on BLMIS's books and records, the Trustee has determined that FGLS withdrew $3,450,000 less than was deposited in the Account.[36] FGLS does not dispute the Trustee's calculations under the Net Investment or Inter-Account Methods, or offer any evidence of its own to establish the amount of the Claim. Accordingly, FGLS has failed to sustain its burden of proving that the Claim should be determined in a different amount. Therefore, the Trustee's determination of the Claim should be affirmed.

---

[36] *See* Yeskoo Aff., Ex. 1.

## IV.  CONCLUSION

For the reasons stated above, the Trustee respectfully requests that the Court enter an order, overruling the Objections, affirming the Trustee's determination of the Claim, and granting such other and further relief as is just.

Dated: New York, New York
       November 20, 2018

Respectfully submitted,

*/s/ David J. Sheehan*
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Jorian L. Rose
Email: jrose@bakerlaw.com
Amy E. Vanderwal
Email: avanderwal@bakerlaw.com
Jason I. Blanchard
Email: jblanchard@bakerlaw.com
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the chapter 7 estate of Bernard L. Madoff*

16