**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (SMB) |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No.  10-04390 (SMB) |
| Plaintiff, | |
| v. | |
| BAM L.P., MICHAEL MANN, and MERYL MANN, | |
| Defendants. | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR A STAY OF TRIAL PURSUANT TO RULE 5011(C) PENDING RULING BY DISTRICT COURT ON DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ...................................................................... 3

    A.    The Claims Procedures Order ............................................................ 3

    B.    The Mann Defendants' BLMIS Customer Claims, Trustee's Notices Of
          Determination, And Pending Objections ................................................ 5

    C.    The Net Equity Order ....................................................................... 7

    D.    The Trustee's Avoidance Action Against The Mann Defendants ........................ 8

    E.    Motion To Strike The Withdrawal Of Customer Claims And Objections ............ 9

    F.    Order Setting Trial and Motion To Withdraw The Reference ............................ 10

ARGUMENT ..................................................................................... 11

I.    THE MANN DEFENDANTS CANNOT MEET THE STANDARDS FOR A
    STAY ......................................................................................... 11

    A.    The Mann Defendants Are Not Likely To Prevail On The Merits Because
          The District Court Already Held That Defendants' Right To A Jury Trial
          Is Extinguished Based On Filing Of Customer Claims ................................ 12

          1.    The Mann Defendants Have Submitted To The Equitable
                  Jurisdiction Of The Bankruptcy Court To Decide All Matters
                  Related To Their Customer Claims ...................................... 12

          2.    The Mann Defendants' Claims Were Not Finally Disallowed By
                  The Net Equity Decision .................................................. 16

          3.    There Is No Reason To Deviate From Prior Rulings Of The
                  District Court ............................................................. 18

          4.    Other Factors Weigh Against Withdrawal Of The Reference ............. 19

    B.    The Mann Defendants Will Not Suffer Irreparable Harm If The Stay Is
          Denied ................................................................................... 20

    C.    The Trustee Will Be Harmed If The Motion Is Granted .............................. 20

    D.    The Public Interest Will Not Be Served By Granting The Stay ....................... 22

CONCLUSION ................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bally Total Fitness of Greater N.Y.*,
411 B.R. 142 (S.D.N.Y. 2009)................................................................15

*Bankr. Servs. Inc. v. Ernst & Young (In re CBI Holding Co., Inc.)*,
529 F.3d 432 (2d Cir. 2008)................................................................15

*In re Bernard L. Madoff Inv. Sec. LLC.*,
No. 08-01789 (SMB) (Bankr. S.D.N.Y. Sept. 26, 2018)................................. *passim*

*In re Chrysler LLC*,
No. 09-50002(AJG), 2009 WL 7386569 (Bankr. S.D.N.Y. May 20, 2009) ..........................11

*In re Coated Sales, Inc.*,
119 B.R. 452 (Bankr. S.D.N.Y. 1990) ..................................................14

*In re Dana Corp.*,
No. 06–10354 (BRL), 2007 WL 2908221 (Bankr. S.D.N.Y. Oct. 3, 2007)..........................11

*In re EXDS, Inc.*,
301 B.R. 436 (Bankr. D. Del. 2003) ..................................................15

*First Fid. Bank N.A., v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*,
937 F.2d 833 (2d Cir. 1991)................................................................14

*Germain v. Connecticut Nat'l Bank*,
988 F.2d 1323 (2d Cir. 1993)................................................................ *passim*

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)................................................................13, 14

*In re Issa Corp.*,
142 B.R. 75 (Bankr.S.D.N.Y.1992) ..................................................12

*Katchen v. Landy*,
382 U.S. 323 (1966)................................................................13

*Langenkamp v. Culp*,
498 U.S. 42 (1990)................................................................12, 13, 19

*Messer v. Magee (In re FKF 3, LLC)*,
No. 13 Civ. 3601 (KMK), 2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) ......................18, 19

# TABLE OF AUTHORITIES
## (Continued)

Page

*Official Emp't–Related Issues Comm. of Enron Corp. v. John J. Lavorato (In re Enron Corp.)*,
319 B.R. 122 (Bankr. S.D. Tex. 2004) .................................................................15

*Peskin v. Picard*,
413 B.R. 137 (Bankr. S.D.N.Y. 2009)................................................................3, 4

*Picard v. Cohen,* Adv.
Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ................................................................................................................13

*Picard v. Katz*,
825 F. Supp. 2d 484 (Bankr. S.D.N.Y. 2011).......................................................18

*Picard v. Saren-Lawrence*,
No. 17 Civ. 5157 (GBD), 2018 WL 2383141 (S.D.N.Y. May 15, 2018),
*recons. denied sub nom.*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018)...................... *passim*

*In re Residential Capital, LLC*,
519 B.R. 890 (Bankr. S.D.N.Y. 2014)..............................................................12, 20

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
496 B.R. 744 (Bankr. S.D.N.Y. 2013) *aff'd.* 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015) .................................................4, 17

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
490 B.R. 46 (S.D.N.Y. 2013)..........................................................................13, 19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
513 B.R. 437 (S.D.N.Y. 2014).............................................................................16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
499 B.R. 416 (S.D.N.Y. 2013)..........................................................................13, 19

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*,
654 F.3d 229 (2d Cir. 2011), *cert. denied,* 133 S. Ct. 24 (2012)..............................4

*Shapiro v. JPMorgan Chase & Co.*,
Nos. 11 Civ. 8331 (CM), 11 Civ. 7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)....................................................................................................20

*Smith v. Dowden*,
47 F.3d 940 (8th Cir. 1995) .................................................................................18

*Stern v. Marshall*,
564 U.S. 462 (2011)............................................................................................14

**TABLE OF AUTHORITIES**
(Continued)

Page

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
No. 3:10-CV-1842-G, 2012 WL 987539 (N.D. Tex. Mar. 21, 2012), *aff'd,* 761
F.3d 409 (5th Cir. 2014) ...................................................................................14, 18, 19

**Statutes**

11 U.S.C. § 101 *et seq*...........................................................................................................8

11 U.S.C. § 105(a) .................................................................................................................8

11 U.S.C. § 544 ......................................................................................................................8

11 U.S.C. § 548(a) .................................................................................................................8

11 U.S.C. § 548(c) ............................................................................................................13, 19

11 U.S.C. § 550(a) .................................................................................................................8

11 U.S.C. § 551 ......................................................................................................................8

15 U.S.C. § 78aaa ..................................................................................................................1

15 U.S.C. § 78eee(b)(4) .........................................................................................................3

15 U.S.C. § 78fff-1(a) ............................................................................................................8

15 U.S.C. § 78fff-2(a)(2) ........................................................................................................3

15 U.S.C. § 78fff-2(b) ............................................................................................................3

15 U.S.C. § 78fff-2(c)(3) ........................................................................................................8

15 U.S.C. § 78fff(b) ...............................................................................................................8

28 U.S.C. § 157(b) .................................................................................................................14

28 U.S.C. § 157(d) .............................................................................................................1, 9

28 U.S.C. § 548 ......................................................................................................................9

**Rules**

Fed. R. Bankr. P. 3006...........................................................................................................10

Fed. R. Bankr. P. 5011.......................................................................................................1, 9

Fed. R. Bankr. P. 5011(c) ..................................................................................................1, 11

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the chapter 7 estate of Bernard L. Madoff ("Madoff,"), by and through his undersigned counsel, hereby submits this memorandum of law in opposition to the Motion For A Stay Of Trial Pursuant To Rule 5011(c) Pending Ruling By District Court On Defendants' Motion To Withdraw The Reference (the "Motion") filed by defendants BAM L.P., Michael Mann, and Meryl Mann (the "Mann Defendants") in the above-captioned action (the "Mann Action").[2]

## PRELIMINARY STATEMENT

The Mann Defendants have no viable legal defenses and have no factual record to rebut the Trustee's claims for the recovery of $2.8 million of fictitious profits. Although the Mann Defendants responded to the Trustee's document demands, they otherwise failed to identify any experts and failed to depose the Trustee's experts. Discovery has been closed for nearly three years and mediation was concluded almost two years ago. The Mann Defendants have extensively litigated all of their defenses to the Trustee's actions, and those defenses have been rejected by this Court and the District Court no less than seven times. Quite simply, "this case is trial ready,"[3] and the Mann Defendants' motion to withdraw the reference, and the instant motion for a stay, are nothing more than delay tactics that should not be condoned by this Court.

---

[1] SIPA is found at 15 U.S.C. §§ 78aaa *et seq*. For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] *See* Defendants' Memorandum of Law in Support of Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011, *Picard v. BAM L.P., et al.,* No. 18 Civ. 09916 (VSB) (S.D.N.Y. Oct. 26, 2018), ECF No. 1.

[3] *Hearing Re Case No. 10-04390 Pre-Trial Conference,* at 60:24—61:1, *In re Bernard L. Madoff Inv. Sec. LLC.,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. Sept. 26, 2018) (hereinafter the "Mann Hearing Tr."). A true and correct copy of the transcript of the pre-trial conference held before the Bankruptcy Court is attached hereto as Exhibit 1 to the Declaration of Nicholas J. Cremona ("Cremona Declaration").

In order to obtain a stay, the Mann Defendants must show that they have a likelihood of success on the merits on their underlying motion to withdraw the reference from this Court so that they can have a jury hear the claims against them. But as the District Court recently ruled, jury demands in virtually identical avoidance actions were "without merit" because those defendants relinquished their jury trial right when they filed customer claims and objections to the Trustee's determinations of such claims. This Court has final adjudicative authority to resolve avoidance actions—like the Mann Action—where the Court must finally resolve the pending customer claim and objections to the Trustee's determination of that claim as part of the Court's determination of the given defendant's avoidance liability.

The Mann Defendants, like the defendants before the District Court, made a choice to invoke this Court's exclusive equity jurisdiction. Consequently, the Mann Defendants were already subject to this Court's jurisdiction with no right to a jury trial when the Mann Action was commenced and thus had no right to purportedly preserve in their answer to the complaint. That request was a legal nullity then, and it remains so now. The Mann Action neither divested this Court of its equity jurisdiction over the Mann Defendants nor does it resurrect a right to a jury trial.

Counsel for the Mann Defendants admitted to this Court that their customer claims remain pending,[4] and this Court acknowledged that they will be finally resolved as part of the Mann Action.[5] As a result, there is no basis for withdrawal of the reference, let alone a demonstrated likelihood of success required to prevail on a motion for a stay.

---

[4] *Id.* at 20:2-16.

[5] *Id.* at 45:15-45:16 ("THE COURT: Yeah. Okay. So the -- sounds to me like the adversary proceedings do implicate the claims."); *Id.* at 46:10-46:12 ("So they are intertwined. They're very similar issues in computing the net equity and the fictitious profits."); *Id.* at 55:1-55:7 ("THE COURT: But I am going to -- I have a better way to tee this up because we're talking about -- I'm going to schedule a trial in Bam. You can make a motion to withdraw the reference and if the District Court withdraws the reference I won't conduct a trial. But right now, it appears to me from everything I've seen that I still have a live claim.").

Nor do any of the other factors militate in favor of a stay. The Mann Defendants claim that they will be harmed if they are deprived of a jury trial, but harm, much less irreparable harm, cannot arise from a nonexistent right. The Trustee and BLMIS customers for whose benefit he acts will be harmed if avoidance defendants like the Manns are allowed to needlessly delay trial ready cases. Trial ready cases must be tried, or this liquidation will never be brought to a conclusion. All of the Trustee's cases have proceeded on individual tracks, and some cases are further along than others. The fact that not all the Trustee's cases are trial ready is hardly a reason to delay those that are. The Motion should be denied.

## STATEMENT OF FACTS

### A.    The Claims Procedures Order

This liquidation proceeding was commenced on December 15, 2008 by order of District Judge Louis L. Stanton, who referred the case to the Bankruptcy Court pursuant to SIPA § 78eee(b)(4).[6] On December 23, 2008, the Bankruptcy Court entered the Claims Procedures Order,[7] which sets forth "a systematic framework for the filing, determination and adjudication of claims in the BLMIS liquidation proceeding." *Peskin v. Picard*, 413 B.R. 137, 143 (Bankr. S.D.N.Y. 2009). Under this order, customers were required to file claims with the Trustee by the statutory bar date. Claims Procedures Order at *3; SIPA § 78fff-2(a)(2). If BLMIS's books and records failed to support the claim or the claim was not otherwise established to the Trustee's satisfaction, the Trustee denied it and notified the claimant of his determination in writing (the "Trustee Determination"). *Id.* at *5-7 (citing SIPA § 78fff-2(b)).

---

[6] *See* Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 15, 2008), ECF No. 1.
[7] *See* Order on Application For An Entry Of An Order Approving Form And Manner Of Publication And Mailing Of Notices, Specifying Procedures For Filing, Determination, And Adjudication Of Claims; And Providing Other Relief (the "Claims Procedures Order"), *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 12. A true and correct copy of the Claims Procedures Order is attached hereto as Exhibit 2 to the Cremona Declaration.

If the claimant did not object to the Trustee Determination, the claim was deemed approved by the Bankruptcy Court and binding on the claimant. Claimants who disagreed with the Trustee Determination were required to file objections within thirty days of the Trustee Determination. *Id.*at *6-7. Following receipt of an objection, the Trustee was required to obtain a hearing date before the Bankruptcy Court, and notify the objecting claimant thereof. *Id.* This process "provide[d] a practical and efficient way to resolve a large number of claims without burdening the court or draining its resources," allowing the Trustee to "resolve most of the claims, leaving only those incapable of resolution for this Court." *Peskin,* 413 B.R. at 143. This process is also consistent with the claims procedures in SIPA cases since its enactment in 1970. *Id.*

Since the commencement of the liquidation, the Trustee and numerous BLMIS claimants—including the Mann Defendants—have extensively litigated before the courts of the Second Circuit over the appropriate methodology for calculating customer claims under SIPA. *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv.Sec. LLC)*, 654 F.3d 229 (2d Cir. 2011), *cert. denied,* 133 S. Ct. 24 (2012) (*"Second Circuit Net Equity Decision"*); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) *aff'd.* 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015) (*"Time-Based Damages Decision")* (approving the Trustee's denial of a time-based damages adjustment).

In administering the liquidation proceeding arising out of the massive, decades-long fraud that Madoff perpetrated, the Trustee identified claims-related issues that were most efficiently addressed on an omnibus basis. To date, the Bankruptcy Court has entered 23 orders resolving

4

claims disputes on an omnibus basis,[8] and the Trustee has also obtained numerous objection withdrawals on consent. Overall, during this SIPA proceeding, 1,876 objections have been filed with the Bankruptcy Court.[9] These objections relate to 3,429 claims and 824 accounts. As of September 30, 2018, 408 objections (related to 478 unique claims and 369 accounts) remained. The Mann Defendants' Objections (defined below) are among those docketed objections that have not been resolved by the Bankruptcy Court because of a related, pending adversary proceeding. *See* No. 08-01789 (SMB), ECF Nos. 461 and 815.

**B.    The Mann Defendants' BLMIS Customer Claims, Trustee's Notices Of Determination, And Pending Objections**

In accordance with the Claims Procedures Order, the Mann Defendants filed customer claims in the BLMIS SIPA proceeding in June 2009, seeking to recover the purported balance in their BLMIS accounts as stated on their last account statements as of November 30, 2008.

Specifically, on June 17, 2009, Michael Mann and Meryl Mann filed a customer claim for BLMIS Account No. 1CM363, which the Trustee designated as Claim #009823 (the "Mann Customer Claim"), and Michael Mann filed claim #009822 on behalf of BAM L.P. for Account No. 1CM579 (the "BAM Customer Claim," and together with the Mann Customer Claim, the "Customer Claims"). On August 28, 2009, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the Mann Customer Claim (the "Mann Determination"). On October 19, 2009, the Trustee issued a Notice of Trustee's Determination of Claim with respect to the BAM Customer Claim (the "BAM Determination," and together with the Mann Determination, the "Determinations").

---

[8] *See* ¶ 7 of the Cremona Declaration listing the 23 orders filed to date.
[9] *See* Trustee's Twentieth Interim Report for the Period April 1, 2018 Through September 30, 2018, *In re Bernard L. Madoff Inv. Sec. LLC.,* No. 08-01789 (SMB), ECF No. 18146.

As set forth in the Determinations, the Trustee applied a cash in/cash out methodology (the "Net Investment Method") to determine the amount of the Customer Claims. The Trustee denied the Customer Claims based on the negative "net equity"[10] in the Mann Defendants' BLMIS accounts because (i) BLMIS never purchased any securities on behalf of the Mann Defendants' accounts—any and all profits reported to the Mann Defendants by BLMIS on their account statements were fictitious; (ii) the Mann Defendants withdrew more funds than they deposited with BLMIS; and (iii) the funds received in excess of the deposits in the Mann Defendants' accounts were taken from other BLMIS customers and given to the Mann Defendants.

On September 25, 2009, Michael Mann and Meryl Mann filed an objection to the Mann Determination (the "Mann Objection"), and Michael Mann filed an objection to the BAM Determination on behalf of BAM L.P. (the "BAM Objection," and together with the Mann Objection, the "Objections").[11]  In the Objections, the Mann Defendants argued, among other things, that (i) the Trustee's use of the Net Investment Method was improper, (ii) his calculation of the money deposited less subsequent withdrawals is "completely unsubstantiated and incorrect," and goes "beyond any limitations period for avoidance of a claim under either state or federal law," and (iii) even if his methodology is adopted, the Trustee should have adjusted his calculation to account for interest and damages caused by Madoff.[12]

The Objections remain pending before the Bankruptcy Court.

---

[10] A BLMIS customer has negative "net equity" where his/her life-to-date withdrawals from BLMIS exceeds his/her life-to-date deposits.

[11] *See* Objection To Trustee's Determination of Claim, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (SMB), ECF Nos. 461 and 815. A true and correct copy of the Objections are attached hereto as Exhibit 3 to the Cremona Declaration.

[12] *Id.*

### C.    **The Net Equity Order**

After affirming the Trustee's Net Investment Method, the Bankruptcy Court entered an

order that (1) upheld the Trustee's determinations denying customer claims for the amounts as

stated on their last BLMIS account statements as of November 30, 2008, (2) affirmed the

Trustee's Net Investment Method, and (3) overruled any objections, solely with respect to the

Trustee's application of the Net Investment Method.[13] The Net Equity Order implicated 78

claimants identified on Exhibit A to the Trustee's Net Equity Motion,[14] and provided that "the

objections to the determinations of customer claims, as listed on Exhibit A . . . are expunged

insofar as those objections are based upon using the Final Customer Statements rather than the

Net Investment Methods to determine Net Equity. . ." *Id.* at *3. Importantly, the Net Equity

Order explicitly provided that to the extent the 78 claimants raised other issues beyond the Net

Investment Method, their objections were not fully resolved, as the Bankruptcy Court "shall

retain jurisdiction with respect to the remainder of the claimants' objections" and their claims are

to be finally resolved pursuant to the procedures as set forth in the Claims Procedures Order. *Id.*

The Mann Defendants are among the 78 claimants identified in the Net Equity Order.  However,

as noted above, the Mann Defendants raised issues in their Objections beyond the Net

Investment Method, including statutes of limitations, damages, and interest.

---

[13] *See* Order (1) Upholding Trustee's Determination Denying Customer Claims For Amounts Listed On Last Customer Statement; (2) Affirming Trustee's Determination Of Net Equity; and (3) Expunging Those Objections With Respect To The Determinations Relating to Net Equity (hereinafter the "Net Equity Order"), *In re: Bernard L. Madoff*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. March 8, 2010), ECF No. 2020. A true and correct copy of the Net Equity Order is attached hereto as Exhibit 4 to the Cremona Declaration.

[14] *See* Trustee's Motion for an Order Upholding Trustee's Determination Denying Customer Claims' For Amounts Listed on Last Statement, Affirming Trustee's Determination of Net Equity and Expunging Those Objections With Respect to The Determinations Relating to Net Equity (hereinafter the "Trustee's Net Equity Motion"), *In re: Bernard L. Madoff*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. Oct. 16, 2009), ECF No. 524. Exhibit A to the Trustee's Net Equity Motion was filed separately. *See* Exhibit A: Description of Net Equity Claimants, *In re: Bernard L. Madoff*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. Oct. 19, 2009), ECF No. 530.

### D.    The Trustee's Avoidance Action Against The Mann Defendants

The Trustee commenced the Mann Action by filing the complaint on November 30, 2010, as amended on January 25, 2012 (the "Complaint").[15] The Complaint asserted, *inter alia*, claims pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a), and 551 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*., and other applicable law, seeking the avoidance and recovery of fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of the Mann Defendants. *Id.* The Mann Defendants filed an answer (the "Answer") denying the Complaint's material allegations, and asserting numerous affirmative defenses, including that the Trustee has improperly calculated the amount of fictitious profits he seeks to avoid and has failed to account for interest earned on the amounts deposited in the Mann Defendants' accounts and damages attributable to Madoff.[16]

The Mann Action is predicated on the Mann Defendants' negative "net equity" in their BLMIS accounts as of December 11, 2008 (the "Filing Date"). The Trustee seeks to recover the fictitious profits the Mann Defendants received from BLMIS during the two-year period preceding the liquidation. At the same time, the Customer Claims and pending Objections are predicated on the purported securities transactions reflected on the Mann Defendants' final monthly account statements received from BLMIS in November 2008, and seek to not only retain the fictitious profits received by the Mann Defendants, but also to recover the full balance of their customer accounts as reflected on their final account statements. As recently stated by

---

[15] Amended Complaint (the "Complaint"), *Picard v. BAM, L.P.,* No. 11-cv-07667 (JSR) (S.D.N.Y. Jan. 25, 2012), ECF No. 9.

[16] *See* Answer and Affirmative Defenses to the Amended Complaint, at 22-24, *Picard v. BAM L.P.,* Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. April 16, 2014), ECF No. 40. A true and correct copy of the Answer is attached hereto as Exhibit 5 to the Cremona Declaration.

the Bankruptcy Court, the Trustee's computation of a customer's net equity and the amount of

fictitious profits he seeks to recover in the avoidance actions are "exactly the same."[17]

### E.    Motion To Strike The Withdrawal Of Customer Claims And Objections

On July 7, 2018, counsel for defendants in three of the Trustee's avoidance actions[18]

moved to withdraw the reference to the Bankruptcy Court on their asserted right to a jury trial.[19]

On May 15, 2018, District Judge George B. Daniels denied the motions to withdraw largely

because the defendants filed claims against the BLMIS estate and objections to the Trustee's

determinations of those claims, noting that:

> [T]he Bankruptcy Court will have to determine whether the
> transfers to the [Chaitman] Defendants are voidable on the grounds
> that they are actually or constructively fraudulent under 28 U.S.C.
> § 548. The resolution of that issue will also determine the result of
> the Adversary Proceedings, which seek the return of a portion of
> the funds transferred to the [Chaitman] Defendants on the same
> grounds.

*Picard v. Saren-Lawrence*, No. 17 Civ. 5157 (GBD), 2018 WL 2383141, at *5 (S.D.N.Y. May

15, 2018), *recons. denied sub nom.*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018). After the

District Court denied their motions, the Chaitman Defendants filed notices in the Bankruptcy

Court to withdraw their customer claims and objections. The Mann Defendants did the same,

filing their notices to withdraw their Objections on June 1, 2018.[20]

Following their purported withdrawals, the Chaitman Defendants moved the District

Court for reconsideration of the *Saren-Lawrence Decision,* arguing that since their SIPC claims

---

[17] Mann Hearing Tr. at 46:18-19; *see also id.* at 46:10-12 ("So they are intertwined. They're very similar issues in computing the net equity and the fictitious profits.").

[18] These include defendants in *Picard v. Saren-Lawrence,* Adv. Pro. No. 10-04898, *Picard v. Carol Nelson, et al.,* Adv. Pro. No. 10-04377, and *Picard v. Carol Nelson,* Adv. Pro. No. 10-04658 (collectively the "Chaitman Defendants").

[19] *See e.g.,* Defendant's Memorandum of Law in Support of Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011 (the "*Saren-Lawrence* Motion"), *Picard v. Saren-Lawrence,* No. 17-cv-05157 (GBD) (S.D.N.Y. July 7, 2017), ECF No. 1.

[20] *See* Notice of Withdrawal Of Objection To Determination Of Claim, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 1, 2018), ECF Nos. 17623, 17630.

had now been "formally withdrawn," the claims allowance process was not implicated. *Saren-Lawrence,* 2018 WL 4659476, at *2. However, Judge Daniels denied their motion, noting that the Chaitman Defendants' "attempts to withdraw their claims are not effective absent a court order permitting them to do so." *Id.* at *2 n.3 (citing Fed. R. Bankr. P. 3006).

On July 27, 2018, the Trustee moved to strike the notices of withdrawal in the Bankruptcy Court, asserting that a claimant may not unilaterally withdraw its claim or objection under Rule 3006 of the Federal Rules of Bankruptcy Procedure and Rule 41 of the Federal Rules of Civil Procedure.[21] During oral argument on September 26, 2018, this Court granted the Trustee's Motion to Strike.[22] In striking the withdrawals as a legal nullity, this Court stated that the very reason for Rule 3006 "was to prevent someone from doing precisely what you're doing which is withdrawing a claim . . . for the purpose of defeating [the] Bankruptcy Court's jurisdiction . . . and ultimately delay the resolution of this case."[23]

### F.    Order Setting Trial and Motion To Withdraw The Reference

In addition to oral argument on the Motion to Strike, this Court held a pre-trial conference previously scheduled in the Mann Action on the same day.[24] This Court ordered the trial in the Mann Action to begin December 3, 2018, and ordered the parties to exchange witness lists and pre-marked exhibits seven days in advance of trial, on or before November 26, 2018.[25]

---

[21] *See* Trustee's Motion To Strike The Notices Of Withdrawal Of Claim And Notices Of Withdrawal Of Objection To Determination Of Claim Filed By Chaitman LLP And Dentons US LLP (the "Motion To Strike")*, In re: Bernard L. Madoff,* No. 08-01789 (SMB) (Bankr. S.D.N.Y. July 27, 2018), ECF No. 17864.

[22] *See* Order Granting Trustee's Motion to Strike The Notices of Withdrawal of Claim and Notices of Withdrawal of Objection to Determination of Claim filed by Chaitman LLP and Dentons US LLP (the "Order Granting Motion To Strike"), *In re Bernard L. Madoff Inv. Sec., LLC*, No. 08-01789 (SMB) (Bankr. S.D.N.Y. Oct. 4, 2018), ECF No. 18051; *see also* Mann Hearing Tr. at 65:3-14.

[23] Mann Hearing Tr. at 33:13-24.

[24] Notice of Pretrial Conference, *Picard v. BAM L.P.,* Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.NY. Sept. 5, 2018), ECF No. 103.

[25] Order Setting Trial, *Picard v. BAM L.P.,* Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.NY. Sept. 28, 2018), ECF No. 108.

The order further provided that the Mann Defendants may file a motion to withdraw the reference within thirty days of the order's entry.[26]

On the thirtieth day, the Mann Defendants filed their motion to withdraw the reference of the Mann Action to the District Court for a jury trial (the "Motion to Withdraw"). The Motion to Withdraw was assigned to District Judge Vernon S. Broderick, who ordered the Trustee to file his opposition brief by November 30, 2018, and the Mann Defendants to file their reply brief by December 17, 2018.[27]

## ARGUMENT

## I.    THE MANN DEFENDANTS CANNOT MEET THE STANDARDS FOR A STAY

Federal Rule of Bankruptcy Procedure 5011(c) provides that the filing of a motion to withdraw the reference does not operate to stay proceedings unless the Bankruptcy Court so orders that a stay is warranted. *See* Fed. R. Bankr. P. 5011(c) ("The filing of a motion for withdrawal of a case or proceeding . . . shall not stay the administration of the case or any proceeding therein . . . except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion."). The Mann Defendants "bear[] the burden of proof in demonstrating that a stay of proceedings pending a determination of a motion to withdraw the reference would be proper." *In re Chrysler LLC,* No. 09-50002(AJG), 2009 WL 7386569, at *1 (Bankr. S.D.N.Y. May 20, 2009) (citing *In re Dana Corp.,* No. 06–10354 (BRL), 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007)).

To obtain a stay, the Mann Defendants must demonstrate (a) the likelihood of prevailing on the merits; (b) that the Mann Defendants will suffer irreparable harm if the stay is denied; (c) that the Trustee will not be substantially harmed by the stay; and (d) that the public interest will

---

[26] *Id.*
[27] Endorsed Letter, *Picard v. BAM, L.P.,* Adv. Pro. No. 18-cv-09916 (VSB) (S.D.N.Y. Nov. 13, 2018), ECF No. 9.

be served by granting the stay. *Id.* (citing *In re Issa Corp.,* 142 B.R. 75, 77 (Bankr. S.D.N.Y.1992)); *see also In re Residential Capital, LLC,* 519 B.R. 890, 904 (Bankr. S.D.N.Y. 2014). The Mann Defendants cannot meet this standard.

**A.    The Mann Defendants Are Not Likely To Prevail On The Merits Because The District Court Already Held That Defendants' Right To A Jury Trial Is Extinguished Based On Filing Of Customer Claims**

The Mann Defendants' chances of success on their motion to withdraw the reference are slim. They filed their motion in the face of clear and controlling precedent from the District Court denying similar motions to withdraw filed in three of the Trustee's avoidance actions, all of which share the same factual predicates and legal issues as the Mann Action. *See Saren-Lawrence*, 2018 WL 2383141, at *4-5. Moreover, the grounds on which the District Court denied the other motion are well-established, and the Mann Defendants have little chance of obtaining a different result.

**1.    The Mann Defendants Have Submitted To The Equitable Jurisdiction Of The Bankruptcy Court To Decide All Matters Related To Their Customer Claims**

The basis of the Mann Defendants' Motion to Withdraw is their asserted Seventh Amendment right to a jury trial. (*See* Motion at ¶¶ 7-13). But the Mann Defendants filed a proof of claim invoking the equitable jurisdiction of the Bankruptcy Court and, by doing so, extinguished any right to a jury trial of a related fraudulent transfer claim. *See e.g.*, *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). Indeed, the District Court has held that the Bankruptcy Court may finally decide avoidance actions in the SIPA proceeding to the extent they raise the same issues as the related customer claims, which would necessarily be resolved by those avoidance

12

actions, because the two are inextricably intertwined.[28] *See e.g., Saren-Lawrence,* 2018 WL 2383141; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46 (S.D.N.Y. 2013) (the "*Stern Consolidated Decision*").

As the District Court further explained, "a customer's net equity and the amounts sought in avoidance and recovery proceedings (assuming the customer's good faith) are two sides of the same coin." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re Madoff Sec.*), 499 B.R. 416, 420 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"). Thus, "[a] customer who withdrew less than she deposited over the course of her investment with Madoff Securities has a net-equity claim and may be entitled to disbursements from the customer property estate for the amount of that net equity," and customers "who withdraw more money from their accounts than they deposited" are subject to "avoidance actions for the amount in excess of their deposits." *Id.* at 420-21. Therefore, "the computation of net equity under SIPA and value under Bankruptcy Code § 548(c) are 'inherently intertwined'." *Picard v. Cohen,* Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *14 (Bankr. S.D.N.Y. Apr. 25, 2016), ECF No. 90 (the "*Cohen Decision*") (citing *Antecedent Debt Decision*, 499 B.R. at 424). The Seventh Amendment's jury right extends to suits at common law, such as fraudulent conveyance and preference actions, but not to those triable in equity. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989); *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993). The Supreme Court made it clear that where a creditor files a proof of claim against a bankruptcy estate and is met with a trustee's fraudulent conveyance or preferential transfer action, "that action becomes part of the claims-allowance process which is triable only in equity." *Langenkamp,* 498 U.S. at 44 (citing *Katchen v. Landy*, 382 U.S. 323, 336 (1966)). "In other words, the creditor's claim and the ensuing

---

[28] The Mann Defendants participated in the *Stern Consolidated Decision* and are bound by it. *See* Joinder in Motion of Harold Hein For Withdrawal of the Reference, *Picard v. BAM L.P.,* Adv. Pro. No. 10-04390 (SMB) (Bankr. S.D.N.Y. March 30, 2012), ECF No. 24.

preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id.* (holding that those creditors who submitted claims against debtors' bankruptcy estates had no right to jury trial when sued by trustee to recover preferential transfers); *see also First Fid. Bank N.A., v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 838 (2d Cir. 1991); *In re Coated Sales, Inc.*, 119 B.R. 452, 455 (Bankr. S.D.N.Y. 1990) (citing *Granfinanciera, S.A.*, 492 U.S. at 57-58).

The Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), does not alter this well-settled precedent. In *Stern*, the Supreme Court held that a bankruptcy court lacks the constitutional authority to enter a final judgment on a debtor's state law counterclaim simply because the creditor filed an unrelated proof of claim, notwithstanding the counterclaim's status as a "core" proceeding under 28 U.S.C. § 157(b). 564 U.S. at 502. In addition, the debtor's counterclaim in *Stern* was a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in the bankruptcy." *Id.* at 487. Accordingly, *Stern* did not disturb the Supreme Court's broader precedent that by filing a proof of claim, a creditor submits to the Bankruptcy Court's equitable jurisdiction to decide those matters that trigger the claims allowance process or the restructuring of the debtor-creditor relationship. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Verizon Communs., Inc.*, 761 F.3d 409, 423-25 (5th Cir. 2014) (affirming district court's striking of jury demand on fraudulent transfer claims where creditor's proof of claim would resolve the litigation and noting that "[i]t is clear from *Stern* that *Langenkamp* is still good law. *Stern* did not displace *Langenkamp*."); *Messer v. Magee (In re FKF 3, LLC)*, No. 13 Civ. 3601 (KMK), 2016 WL 4540842, at *12 (S.D.N.Y. Aug. 30, 2016) ("[T]he Supreme Court's decision in *Stern* does not alter the *Katchen* line of cases but

14

does clarify exactly when a creditor's filing of a proof of claim transforms legal claims into equitable ones.").

The Mann Defendants assert "the claims in the adversary proceeding [do] not bear directly on the allowance of the claims and the litigation claims would not necessarily be resolved in the claims allowance process." (Motion at ¶ 13). But as the District Court previously made clear, by filing the Customer Claims and Objections in the BLMIS liquidation proceeding in the Bankruptcy Court, the Mann Defendants "trigger[ed] the process of allowance and disallowance of claims." *Saren-Lawrence,* 2018 WL 2383141, at *4 (citing *Germain,* 988 F.3d at 1329); *see also In re Bally Total Fitness of Greater N.Y.*, 411 B.R. 142, 145 (S.D.N.Y. 2009) (quoting *Bankr. Servs. Inc. v. Ernst & Young (In re CBI Holding Co., Inc.)*, 529 F.3d 432, 466-67 (2d Cir. 2008)). In so doing, the Mann Defendants have "invoked th[e] Bankruptcy Court's jurisdiction with regard to any matters affecting the disposition of [their] claims," including the Mann Action, and "have no right to a jury trial." *Saren-Lawrence,* 2018 WL 2383141, at *4. Thus, the filing of the Customer Claims extinguished the Mann Defendants' asserted right to a jury trial. As this Court recently told the Mann Defendants' counsel, "[Y]ou don't have a Seventh Amendment right to a jury trial with a pending claim." Mann Hearing Tr. at 63:9-10; *see also Germain*, 988 F.2d 1323 ("[T]he right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue."); *Official Emp't–Related Issues Comm. of Enron Corp. v. John J. Lavorato (In re Enron Corp.),* 319 B.R. 122, 125 (Bankr. S.D. Tex. 2004) ("when a creditor elects to participate in that equitable [bankruptcy] process by filing a proof of claim, . . .[the filing] denies both the creditor and the trustee any right to a jury trial either would have had concerning the claims."); *In re EXDS, Inc.,* 301 B.R. 436, 443 (Bankr. D. Del. 2003) (finding that by "filing its proof of claim [Defendant] has caused its

15

disputes (i.e., its claim and the preference action) to be subject to the exclusive jurisdiction of this bankruptcy court."). The Mann Action is precisely the type that the District Court held the Bankruptcy Court could finally decide because the Bankruptcy Court's determination of the Mann Defendants' fraudulent transfer liability is inseparable from its determination of the Customer Claims under section 502(d).  *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 513 B.R. 437, 444 (S.D.N.Y. 2014) ("*Section 502(d) Consolidated Decision*") (noting the relevance of section 502(d) where the "adjudication and payment of avoidance actions" may affect the "final calculation of a given customer's net equity."); *cf. Germain*, 988 F.2d at 1327 (before a claim may be allowed, a court must resolve any avoidable transfer issues that the trustee has raised). Given that the Trustee's claims for avoidance and recovery of fraudulent transfers would necessarily resolve the Mann Defendants' Customer Claims, which are "live" and pending,[29] the Bankruptcy Court has final adjudicative authority to resolve the Mann Action. As such, there is no basis for withdrawal of the reference rendering the Motion woefully unable to establish a substantial likelihood of success on the merits.

### 2.    The Mann Defendants' Claims Were Not Finally Disallowed By The Net Equity Decision

To try to avoid the consequences of filing their Customer Claims, the Mann Defendants argue that their Customer Claims have been fully resolved because the "Customer Claims have been finally disallowed in a separate claims resolution procedure," (Motion at ¶ 14), and were expunged when the Bankruptcy Court upheld the Trustee's method for calculating "net equity," under the *Second Circuit Net Equity Decision* and subsequent Net Equity Order. (Motion at ¶¶ 15, 17). But because the Customer Claims and corresponding Objections raise issues other than

---

[29] Mann Hearing Tr. at 59:8-16.

the calculation of net equity, the Customer Claims were not expunged and remain pending before the Bankruptcy Court.

Specifically, the Net Equity Order provides that "the objections to the determinations of customer claims, as listed on Exhibit A to the Trustee's [Net Equity] Motion [Dkt. No. 530], are expunged insofar as those objections are based upon using the Final Customer Statements rather than the Net Investment Method to determine Net Equity. . ." *See* Net Equity Order at *3. Exhibit A to the Trustee's Net Equity Motion lists 78 claimants—including the Mann Defendants—whose objections were specifically determined solely as to the determination of the calculation of net equity based on the Net Investment Method. However, other issues identified in the 78 claimants' objections remained unresolved, including those raised by the Mann Defendants in their Objections. As a result, the Bankruptcy Court "retain[s] jurisdiction" over the balance of the Objections (Net Equity Order at *3), which involve the same factual predicates and legal issues that must be resolved in the Mann Action.

The Mann Defendants' position that their Customer Claims were resolved by the Net Equity Order is also contradicted by their participation in subsequent litigation related to their Customer Claims. The Net Equity Order was issued in 2010 and yet from 2012 to 2015, the Mann Defendants litigated the question of whether they were entitled to a time-based damages adjustment to their Customer Claims before the Bankruptcy Court and the Second Circuit. *See generally Time-Based Damages Decision,* 496 B.R. 744 (Bankr. S.D.N.Y. 2013) *aff'd.* 779 F.3d 74 (2d Cir. 2015) *cert. denied Peshkin v. Picard*, 136 S. Ct. 218 (2015).[30]

---

[30] *See also* Mann Hearing Tr. at 26:13-20 ("THE COURT: . . .[i]n 2012, with the issuance of the . . . net equity decision. And yet thereafter there was litigation related to the claims like the time-based damages issue. . . So . . . the question is, well, if the claim was resolved in 2012, why are you litigating all these things . . . if your claim is resolved?")

If there was any question about whether the Mann Defendants truly believed that their Customer Claims were previously resolved, their counsel's admissions to this Court conclusively answers it. The Mann Defendants' counsel admitted to this Court that "[t]here are still pending claims" in the Mann Action[31] and conceded that she would not withdraw the Customer Claims because to do so would forfeit their "rights to SIPC Insurance and to a distribution."[32]

### 3. There Is No Reason To Deviate From Prior Rulings Of The District Court

The Mann Defendants assert that "the appropriate procedure for the determination of the fraudulent conveyance issue is withdrawal of the reference for jury trial in the district court." (Motion at ¶ 11). However, the Mann Defendants rely on cases that are factually inapplicable here, largely given that the Customer Claims and Objections remain at issue. For example, in *In re FKF3, LLC*, the District Court granted the motion to withdraw the reference mainly because there were non-bankruptcy causes of action at issue. 2016 WL 4540842, at *9-10, 16-19. That is not the case here, where the Trustee asserts only fraudulent conveyance claims under the Bankruptcy Code and SIPA. The Mann Defendants also cite to *Smith v. Dowden,* 47 F.3d 940 (8th Cir. 1995), but as they acknowledge in the Motion, that case involved a claim that was withdrawn "prior to the initiation of the adversary proceeding." (Motion at ¶ 16).

In addition, the Mann Defendants' reliance on *Picard v. Katz,* 825 F. Supp. 2d 484 (Bankr. S.D.N.Y. 2011), is completely misplaced. Courts have subsequently declined to follow *Katz,* finding that the District Court failed to recognize that, as the Second Circuit in *Germain* explained, a fraudulent transfer action becomes "integral to the restructuring of the debtor-creditor's relationship through the bankruptcy court's equity jurisdiction." *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 987539, at *3 (N.D. Tex. Mar. 21,

---

[31] *Id.* at 20:6-16.
[32] *Id.* at 23:8-24:1.

2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014) (citing *Germain,* 988 F.2d at 1326, 1330 (stating that the filing of a proof of claim "transform[s]" the legal dispute into "an equitable issue"); *Langenkamp,* 498 U.S. at 44.

Here, when the Mann Defendants previously moved to withdraw the reference to the Bankruptcy Court on discrete issues[33] and after the District Court issued its rulings on those discrete issues, the District Court did not retain jurisdiction over the avoidance actions, but instead explicitly directed the action "be returned to the Bankruptcy Court for further proceedings consistent with th[e] Opinion and Order." *See e.g., Stern Consolidated Decision,* 490 B.R. at 59; *Antecedent Debt Decision,* 499 B.R. at 416. Accordingly, no harm can be derived from adjudicating this action before the court with the proper authority and jurisdiction—the Bankruptcy Court.

### 4.    Other Factors Weigh Against Withdrawal Of The Reference

The District Court twice before determined that none of the other relevant factors, including "the efficient use of judicial resources, delay[,] and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors," warranted withdrawal of the Trustee's avoidance actions. *Saren-Lawrence,* 2018 WL 2383141, at *5 (citing *In re FKF 3, LLC,* 2016 WL 4540842, at *5)).

Specifically, the District Court held that Judge Bernstein is "familiar with the specific facts at issue here, as he has presided over these Adversary Proceedings thus far. He has also handled numerous adversary proceedings to avoid and recover transfers BLMIS made to certain

---

[33] In April 2012, the District Court instituted a briefing protocol to facilitate consolidated briefing on common issues raised in motions to withdraw the reference, including those previously filed by the Mann Defendants, who participated on the following issues: (1) whether the Supreme Court's decision in *Stern v. Marshall* precluded the Bankruptcy Court from entering final judgment on the Trustee's claims (Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), ECF No. 4); and (2) whether the Trustee's claims against certain defendants should be dismissed in light of the defendants' affirmative defense that defendants provided "value" on account of antecedent debt within the meaning of 11 U.S.C. § 548(c) (Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), ECF No. 107). The consolidated briefing resulted in the *Stern Consolidated Decision* and *Antecedent Debt Decision*, respectively.

[other] customers, and is therefore familiar with the proceedings at issue and application of the relevant provisions of the Bankruptcy Code." *Saren-Lawrence,* 2018 WL 2383141, at *6; *see also Shapiro v. JPMorgan Chase & Co.,* Nos. 11 Civ. 8331 (CM) (MHD), 11 Civ. 7961 (CM), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) ("Judge Bernstein's intimate familiarity with the Madoff matter causes this court to view his conclusions with particular deference."). The Bankruptcy Court is in the best position to conduct the trial of the Mann Action promptly and efficiently. *See e.g., In re Residential Capital, LLC,* 519 B.R. at 905 (in denying motion for stay, noted that "[t]his Court is most efficient judicial forum to resolve claims against the Debtors, and moving this proceeding to another forum would further delay the claims allowance process, increase attendant administrative costs, and encourage forum shopping.").

### B. The Mann Defendants Will Not Suffer Irreparable Harm If The Stay Is Denied

The Mann Defendants will not be irreparably harmed by denial of the Motion. The Mann Defendants elected to submit their claims to this Court's exclusive jurisdiction, where there is no right to a jury trial. As confirmed by the District Court, their jury trial right was extinguished by the filing of their Customer Claims. Harm, much less irreparable, cannot arise from a nonexistent right. Their knowing and voluntary submission to this Court's equity jurisdiction in 2009 and resultant forfeiture of the jury trial right cannot now be used to claim prejudice.

### C. The Trustee Will Be Harmed If The Motion Is Granted

The Trustee and the net loser victims will be prejudiced by a stay of the Mann Action, which is currently set for trial on December 3, 2018. The Mann Defendants have no viable legal defenses and have no factual record to rebut the Trustee's claim. Discovery has now been closed for nearly three years and mediation was concluded almost two years ago.[34] They have

---

[34] Mann Hearing Tr. at 60:9—61:1.

needlessly delayed the resolution of this case by maintaining defenses that have been rejected by this Court and the District Court no less than seven times. The Motion to Withdraw, and the current Motion, are just more of the same.

The Mann Defendants' suggestion that a stay would not harm the Trustee reflects a fundamental misunderstanding of the parties-in-interest in this action. The Trustee acts on behalf of BLMIS customers, particularly those who have not yet recovered their full principal investment.  It is time for this case to move toward final resolution without further delay so that the Trustee may recover those fictitious profits that the Mann Defendants have wrongfully held onto for the last ten years, and ratably distribute that amount to the net loser victims that have not yet recovered their full principal investment. Although the Mann Defendants claim that the amounts at issue in this case would not affect the Trustee's distributions (*see* Motion at ¶ 5), the only way for the Trustee to reach a full recovery and make progress in a liquidation as massive as this one is to be diligent in moving the cases forward as expeditiously as possible and recover every dollar fraudulently transferred for the benefit of the net loser victims. And where this Court made has clear that "this case is trial ready," there is no basis for delay.[35]

The Mann Defendants seek to shift the Court's attention from their actions by falsely asserting that the Trustee has been "deliberately delaying the proceedings." (Motion at ¶ 5). The Trustee has resolved over 860 of the approximately 1,000 good faith avoidance actions commenced in 2010, resulting in over $1 billion in recoveries for the customer property fund. Delay in the good faith cases is solely attributable to defendants—like the Mann Defendants— who have continually filed frivolous motions on legal defenses that have been rejected as many as seven different times by this Court and the District Court. The Motion to Withdraw is just another example of the type of frivolous motion designed to delay the ultimate resolution of the

---

[35] *Id.* at 60:25.

remaining cases to the detriment of the net loser victims.

**D.      The Public Interest Will Not Be Served By Granting The Stay**

The Court should not allow the Mann Defendants to further their own interests at the expense of the administration of the estate as a whole, especially here where the District Court has already considered and rejected their arguments at length in similarly situated avoidance actions. Indeed, the Mann Defendants have engaged in actions over the last ten years that have only resulted in significant delay and harm to the net loser customers, for whom the Trustee is seeking a full recovery. Even the Mann Defendants concede that the public interest is not furthered by granting a stay. (*See* Motion at ¶ 6).

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests this Court deny the Motion.

Date:   New York, New York
        November 27, 2018

*/s/  Nicholas J. Cremona*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Dean D. Hunt
Email: dhunt@bakerlaw.com
Lan Hoang
Email: lhoang@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*