**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com
*Attorneys for Defendants Carol Nelson,*
*Stanley Nelson, and Helen Saren-Lawrence*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (SMB) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04377 (SMB) |
| Plaintiff, | |
| v. | |
| CAROL NELSON, individually and as joint tenant; and STANLEY NELSON, individually and as joint tenant, | |
| Defendants. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 10-04658 (SMB) |
| Plaintiff, | |
| v. | |

{00038559 1 }

| | |
|---|---|
| CAROL NELSON, <br><br> Defendant. <br> IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br> v. <br><br> HELENE SAREN-LAWRENCE, <br> Defendant. | Adv. Pro. No. 10-04898 (SMB) |

# **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ADJOURN TRIAL DATES, *SINE DIE*, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(b)(4)**

{00038559 1 }

# TABLE OF CONTENTS

                                     **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

   I.  The Trustee's Disclosures in the Clawback Actions ......................................... 4

   II.  The Trustee's Initial Disclosures ....................................................................... 4

   III. The Trustee's Responses to Defendants' Discovery Demands ......................... 5

RELIEF REQUESTED ............................................................................................................ 9

ARGUMENT ........................................................................................................................... 9

   A.  There is Good Cause to Stay the Trials in These Three Cases .......................... 9

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albermarle Corp. v. Chemtura Corp.*
  251 F.R.D. 204 (M.D. La. June 23, 2008) *aff'd,* CIV. A. 05-1239-JJB, 2008
  WL 4332524 (M.D. La. Sept. 17, 2008) ................................................................................11

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir.2006) ....................................................................................................10

*Levi Strauss & Co. v. Golden Trade, S.R.L.*,
  No. 92 Civ. 1667 (JMC) 1992 WL 188338 (S.D.N.Y. July 27, 1992) ...................................10

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
  08-CV-5023 CBA RLM, 2010 WL 3173785 (E.D.N.Y. Aug. 11, 2010) ..............................11

*In re Omeprazole Patent Litig.*,
  00CV4467, 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) .......................................................10

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
  773 F.3d 411 (2d Cir. 2014) *cert. denied*, 135 S. Ct. 2859 (2015) ..........................................2

*RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*,
  No. 06 Civ. 6404 (HB)(KNF) (S.D.N.Y. Jun. 4, 2007) .........................................................11

*In re VecTour, Inc.*,
  01-10903 (JPL), 2005 WL 240948 (B. D. Del. Jan. 20, 2005) ..............................................10

**Statutes**

11 U.S.C. §546(e) ...........................................................................................................................2

**Other Authorities**

Fed. R. Bankr. P. 7016(a) ...............................................................................................................9

Fed. R. Civ. P. 16(b)(4) ..............................................................................................................1, 9

Fed. R. Civ. P. 26(a)(1)(A) ...........................................................................................................10

Fed. R. Civ. P. 26(a)(1)(c) ............................................................................................................10

Fed. R. Civ. P. 37 ............................................................................................................................9

Defendants Helene Saren-Lawrence, Carol Nelson, and Stanley Nelson submit this memorandum of law in support of their motion for entry of an order adjourning the trial dates in their cases *sine die*, pursuant to Fed. R. Civ. P. 16(b)(4), to allow them to take discovery of the material witnesses and documents disclosed by the Trustee for the first time on November 21, 2018. This relief is particularly appropriate in view of the fact that, as this Court has acknowledged on November 28, 2018, "**there's no point in my trying a case where I don't have jurisdiction and they have a right to a jury trial.**" *See* November 28, 2018 Hearing Transcript, attached as Exhibit F to the December 5, 2018 Declaration of Helen Davis Chaitman ("Chaitman") at 24:17-18.

## PRELIMINARY STATEMENT

These cases are three of approximately 1,000 clawback actions that SIPA Trustee Irving H. Picard filed in December 2012 against innocent customers of Bernard L. Madoff Investment Securities ("BLMIS") who, over the life of their accounts, had withdrawn more money than they had deposited. Chaitman LLP is representing the defendants in 73 actions (the "Clawback Actions"). At the suggestion of Chaitman LLP, the discovery in the Clawback Actions has been consolidated although the dates set forth in the case management orders vary among the 73 cases. According to the case management orders in all 73 cases, discovery is closed except for discovery demands served by Chaitman LLP prior to the end of discovery, *i.e.,* the depositions of the former BLMIS traders that Chaitman LLP subpoenaed in a timely manner and except for the Chaitman LLP motions to compel the Trustee to produce documents that have still not been resolved.

Six years after filing the complaints in the Clawback Actions, and at least 40 months after the Trustee served his initial disclosures in these three cases, the Trustee *sua sponte* served

{00038559 1}                                              1

"Amended Initial Disclosures" in scores of the Clawback Actions.[1] *See* Chaitman Exh. A. The Amended Initial Disclosures identify, for the very first time, 19 individuals and entities that the Trustee may use to support his claims including Maurice Cohn of Cohmad, 16 former BLMIS employees and two FBI agents. The amendments also identify for the first time 3,250 additional media sources and a "cash database" known as the "Cohmad Cash Database," which purportedly reflects deposits and withdrawals for certain BLMIS accounts.

In his initial disclosures filed in these three cases, the Trustee did not disclose any of this information. While clearly the Trustee would not be entitled to rely at trial on any of this newly-disclosed evidence, since the newly-disclosed evidence bears on the affirmative defenses asserted by these Defendants, it would be a denial of due process of law to prevent these Defendants from taking discovery with respect to this new evidence because it may be materially helpful to their defenses.

## FACTUAL BACKGROUND

The Trustee filed suit against Saren-Lawrence on December 2, 2010, seeking the recovery of $551,000 in allegedly fraudulent transfers during the period from 1992 - 2008. Defendants successfully moved for dismissal of many of the claims pursuant to 11 U.S.C. §546(e). *See Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) *cert. denied*, 135 S. Ct. 2859 (2015) ("*Section 546(e) Decision*"). As a result, the Trustee's claim against Saren-Lawrence is for only $261,000. However, during the two-year period, Saren-Lawrence deposited $68,291. Thus, the Trustee's maximum possible recovery against Saren-Lawrence should be only $192,709 — subject to Saren-Lawrence's very substantial affirmative defenses including the fact-

---

[1] Additionally, on November 28, 2018 the Trustee issued several untimely subpoenas including a Subpoena to Produce Documents to The United States Attorney's Office for the Southern District of New York and five Subpoenas for Depositions to Theodore Cacioppi, Keith Kelly, David Kugel, Enrica Cotellessa-Pitz, and Joann Sala.

{00038559 1}                                        2

intensive defenses that Madoff and then BLMIS used investment advisory customers' money to purchase securities; that Madoff and then BLMIS owned many of the securities that appeared on Saren-Lawrence's statements; that Madoff and BLMIS were never a Ponzi scheme; that Saren-Lawrence never received a transfer from BLMIS (because she only received checks from an account at JPMorgan Chase in the name of Bernard L. Madoff) (together, the "Fact-Intensive Defenses").

The Trustee filed suit against Carol Nelson and NTC & Co., Ms. Nelson's IRA Trustee, on December 1, 2010, seeking the recovery of $895,000 in allegedly fraudulent transfers from her individual account and $401,748 from her IRA account during the period from 1992 - 2008. As a result of the *546(e) Decision,* the Trustee's claims against Ms. Nelson were reduced to $255,000 against her individually and $200,077 against her IRA account. As to her IRA account, NTC (or its predecessor in interest) was the initial transferee and Ms. Nelson was the subsequent transferee who has no liability because she took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer" from Madoff/BLMIS to NTC. The factual issues with respect to Ms. Nelson's IRA account include the length of time that NTC held her funds before sending her a check with respect to each withdrawal; the amount of money that NTC withheld from Ms. Nelson for its own purposes; and what NTC did with the money it withheld from Ms. Nelson. In addition, Ms. Nelson has *inter alia,* all of the Fact-Intensive Defenses.

The Trustee filed suit against Carol and Stanley Nelson on November 30, 2010 seeking the recovery of allegedly fraudulent transfers in the amount of $6,405,000 during the period from 1992 - 2008. As a result of the *546(e) Decision,* the Trustee's claim against the Nelsons was reduced to $2,610,000. The Nelsons have, *inter alia,* all of the same Fact-Intensive Defenses.

## I. The Trustee's Disclosures in the Clawback Actions

As the Trustee acknowledged, his initial disclosures provide "a description of the various sources of information to Defendants." *See Motion and Supporting Memorandum of Law for an Order Establishing Omnibus Proceeding for the Purpose of Determining the Existence, Duration, and Scope of the Ponzi Scheme at BLMIS* ("Omnibus Motion"), at ¶ 24, filed in multiple Adversary Proceedings on February 23, 2018. (*E.g.,* ECF # 17284). The Trustee asserted in his discovery responses that he intends to rely upon the expert report of Bruce Dubinsky (*see* Chaitman Exh. B, *Trustee's Amended Responses and Objections to Defendants' First Set of Requests for Production of Documents and Interrogatories to the Trustee*, dated January 13, 2017) and that the documents on which Mr. Dubinsky relied are in the E-Data Room 1, an electronic repository of documents allegedly "relevant to the Trustee's proof of fraud and insolvency at BLMIS." Omnibus Motion at ¶ 27. The Trustee claims that E-Data Room 1 contains over four million documents, and purportedly includes materials considered by Mr. Dubinsky, as well as the "majority of the documents" considered by his other expert witnesses. *Id.* Yet, the Amended Initial Disclosures prove that the Trustee concealed from Saren-Lawrence and the Nelsons massive sources of information. Indeed, the Defendants served several discovery demands upon the Trustee and he failed to reveal the information that he has now, for the first time, disclosed to other Defendants.

## II. The Trustee's Initial Disclosures

On July 15, 2014, the Trustee served his Initial Disclosures in the two Nelson cases. Chaitman Exh. C. On July 6, 2015, the Trustee served his Initial Disclosures in the Saren-Lawrence case. Chaitman Exh. D. In these Disclosures, the Trustee identified only Frank DiPascali (now deceased), Erin Reardon, JoAnn "Jodi" Crupi (in prison), and Annette Bongiorno (in prison) as persons formerly employed by BLMIS and individuals likely to have discoverable information. The Trustee stated that he "does not expect to rely on former BLMIS executives or

{00038559 1}                                                                 4

employees at trial." Chaitman Exs. C and D at p. 3. The Trustee also noted that he had assumed possession of many thousands of boxes of paper documents and 19,000 media sources containing electronic information, and further noted that some of the information had been "loaded for potential production in the Trustee's cases in one or more electronic databases, totaling 4.0 terabytes or 28 million documents." *Id.* at 3-4. He noted that other material not contained in the databases was stored in Long Island City and Rosendale, New York. The Trustee noted that he intended to make available a set of "approximately 4 million documents in a virtual data room ("E-Data Room 1") to prove that BLMIS was a fraudulent enterprise and that BLMIS was insolvent." Chaitman Exh. C and D at p. 5.

The Trustee's Amended Initial Disclosures include the following information withheld from the Initial Disclosures: the individuals and entities that the Trustee may use to support his claims now include Maurice Cohn of Cohmad, 16 former BLMIS employees and two FBI agents. The Amended Disclosures also identify 3,250 additional media sources and a "cash database" known as the "Cohmad Cash Database," which purportedly reflects deposits and withdrawals for certain BLMIS accounts. *See* Chaitman Exh. A.

**III. The Trustee's Responses to Defendants' Discovery Demands**

The following responses were received from the Trustee to the Clawback Defendants' discovery demands:

**March 8, 2016 and June 21, 2016: First Set of Interrogatories and Requests for Production**[2] (*see* Chaitman Exh. B): In this discovery demand Defendants asked the Trustee to:

1. List the name and address of every former BLMIS employee with whom you spoke about the meaning of entries on the customer statements and state the

---

[2] The Trustee did not respond to Defendant's March 8, 2016 Discovery Demands. The Trustee Objected to Defendant's Demands by filing a Letter with the Court dated May 4, 2016, in Adversary Proceeding Number, 10-04995 (ECF# 65). Thereafter, Defendants served a Second Set of Requests for Production on March 22, 2017.

substance of what that person told you. Produce all documents you reviewed with each such employee and all documents indicating what each person said.

The Trustee objected to this Request because the materials were prepared after December 11, 2008 and because the request called for documents that relate to customers other than the Defendants. Chaitman Exh. B at pp. 6-7.

The June 21, 2016 demand included the following request:

11. For each year of Madoff's operation, state all facts on which you base your position that Madoff did not purchase securities for his investment advisory customers and produce the documents on which you base your position.

In response to this Request, the Trustee referred the Defendants to E-Data Room 1 and objected to the request as "not proportional to the needs of these Adversary Proceedings to respond to this Request and require the Trustee to undertake any additional burden given that there are more than 5 million responsive documents in E-Data Room 1. . ." Chaitman Exh. B at pp. 16-17.

12. With respect to your answer to Interrogatory No. 11, list all individuals with whom you spoke concerning this issue, explaining the specific facts each such person provided and produce all documents obtained from each such person.

In response to this Request, the Trustee objected because the materials were prepared after December 11, 2008 and he further objected stating that the request "prematurely seeks to have the Trustee disclose expert materials. . ." Chaitman Exh. B at p. 18.

15. Explain how you intend to establish that Madoff was insolvent in each year from 1960 – 2000 and produce all documents on which you will rely to establish insolvency for each of those years.

The Trustee objected to this Request, stating that the request "prematurely seeks to have the Trustee disclose expert materials . . . ." The Trustee noted "to the extent fact witnesses relied on by the Trustee may also qualify as expert witnesses . . . the Trustee will identify such witnesses in expert discovery." The Trustee stated that he will rely on the report of Bruce Dubinksy, dated August 20, 2013, and that "[a] list of all documents considered by Mr. Dubinsky has been or will

{00038559 1} 6

be disclosed with that report and the documents are located in E-Data Room 1. The Trustee referred Defendants to the Trustee's supplemental document production made on December 16, 2016. The Trustee stated that there were no securities purchased by the investment advisory business unit, of which Defendants were customers" and referred Defendants to E-Data Room 1. Chaitman Exh. B at pp.21-22.

**November 21, 2017: Third Set of Interrogatories and Requests for Production**

(*see* Chaitman Exh. E, *Trustee's Responses and Objections to Defendants' Third Set of Requests for Production of Documents,* dated December 21, 2017)**:**

In Defendants Third Set of Interrogatories and Requests for Production dated November 21, 2017, Defendants requested:

1. All records evidencing securities trades placed by or on behalf of Bernard L. Madoff or Bernard L. Madoff Investment Securities, LLC ("BLMIS"), or on behalf of customers of Bernard L. Madoff or BLMIS, with or by third parties, regardless of whether the records evidence "House 5" or "House 17" trading. These records would include, for example, transaction confirmation slips or monthly or quarterly statements from JPMorgan Chase, Bear Sterns, Fidelity, and any other third-party financial institutions.

The Trustee objected to this Request on the "grounds that it calls for Documents Not Proportional to the Needs of the Case" and that "Defendants' request for "all records evidencing securities trades placed by or on behalf of Bernard L. Madoff or Bernard L. Madoff Investment Securities, LLC" potentially implicates millions of documents in the Trustee's possession, custody, or control . . ." The Trustee further objected that " 'All records evidencing securities trades' placed by or on behalf of BLMIS or Madoff includes documents that are not relevant to the claims and defenses in these adversary proceedings[]" and referred Defendants to the E-Data Room 1 "FINANCIALS' folder. Chaitman Exh. E at pp.6-7.

{00038559 1}   7

After a November 14, 2017 meet and confer, the Trustee agreed to search for and produce all third-party trading records that are in his possession or control but that are not in E-Data Room 1. Thereafter, the Trustee produced some third-party trading records but he admittedly did not search beyond the BLMIS Data Base that contains documents the Trustee selected for his own purposes from the vast warehouse of documents in his possession.

> 2. All account opening documents and modifications thereof relating to the account in the name of Bernard L. Madoff or BLMIS with account number ending in "509" at JPMorgan Chase.

The Trustee objected to this Request on the grounds that the request is vague and outside the scope of relevance. Ultimately, the Trustee produced no responsive documents and acknowledged that he had no responsive documents. Chaitman Exh. E at pp.7-8.

> 3. All monthly statements from third-party financial institutions relating to securities held in custody on behalf of Bernard L. Madoff, BLMIS, or customers of Bernard L. Madoff or BLMIS.

The Trustee objected to this Request on the ground that the request calls for third-party documents designated as confidential. Chaitman Exh. E at pp.8-9. To date, the Trustee has limited his search for these third-party documents to his BLMIS Data Base and he has refused to produce responsive documents in the warehouses of Madoff/BLMIS records in his control.

In none of the Trustee's responses did he disclose any of the information he has now put in his Amended Initial Disclosures.

Discovery in the Saren-Lawrence Case closed on March 7, 2016, and in the Nelson cases, on March 14, 2016, except, of course, to the extent the Trustee had an obligation, at that time, to produce documents that had been requested. Pursuant to the applicable case management orders, discovery has closed in every single one of the cases in which the Trustee has served his Amended Initial Disclosures. However, the evidence the Trustee disclosed is undoubtedly relevant to the

Fact-Intensive Defenses. Trial has been scheduled to begin on February 20, 2019 in the Saren-Lawrence Case, and on May 8, 2019 in the Carol Nelson Case, with the trial date in the Carol and Stanley Nelson Case not yet set. This Court has ordered the Nelsons to file, simultaneously with this motion, opposition to the Trustee's request that the two Nelson cases be consolidated for trial.

## RELIEF REQUESTED

By this Motion, Defendants request entry of an Order, substantially in the form attached hereto, staying *sine die* the trial date in these cases so that Saren-Lawrence and the Nelsons have a reasonable period of time to take discovery of the newly-disclosed evidence.

## ARGUMENT

### A. There is Good Cause to Stay the Trials in These Three Cases

In view of the Trustee's failure to have timely disclosed the information in the Amended Initial Disclosures, it is appropriate for the Court to adjourn the Saren-Lawrence and Nelson trials for a reasonable period of time to allow these Defendants to take discovery of the numerous witnesses just now identified for the first time by the Trustee in these 2010 actions. This Court has authority to stay the trials pursuant, *inter alia,* to FRCP 16(b)(4), made applicable to adversary proceedings in this Court by FRBP 7016(a). In addition, FRCP 37 provides remedies which a court may employ when a party fails to comply with his discovery obligations, including adjourning the trial date to allow parties to "address what [they] should have been able to address many months ago." *In re VecTour, Inc.,* 01-10903 (JPL), 2005 WL 240948, at *2, *4 (B. D. Del. Jan. 20, 2005).

Indeed, courts faced with dilatory actions in response to discovery obligations routinely impose sanctions on the wrongdoer and give the injured party time to take additional discovery. *See, e.g., Design Strategy, Inc. v. Davis,* 469 F.3d 284, 297 (2d Cir.2006) (severe sanctions warranted for party's failure to abide by Rule 26(a)(1)(c) discovery); *In re Omeprazole Patent*

*Litig.,* 00CV4467, 2002 WL 287785, at *3 (S.D.N.Y. Feb. 27, 2002) (trial adjourned to allow plaintiffs to "to meet Defendants' new and previously undisclosed theories."); *Levi Strauss & Co. v. Golden Trade, S.R.L.,* No. 92 Civ. 1667 (JMC) 1992 WL 188338 (S.D.N.Y. July 27, 1992)(discovery reopened in case scheduled for trial where there were "new leads").

In his attempt, this year, to consolidate all of the clawback actions for discovery on the "Ponzi scheme issues," the Trustee, himself, sought to include in that discovery the Saren-Lawrence and Nelson cases – even though discovery had ended in these cases. ECF # 17284-1. Thus, he implicitly conceded that such discovery is applicable to the Saren-Lawrence and Nelson cases.

Here, of course, the Defendants had no means of identifying Cohmad or the 19 additional witnesses. Nor did they have any ability to know what documents were in the Trustee's possession they he had previously failed to disclose. The Defendants had to rely upon the Trustee to disclose this information and he failed to do so.

Fed. R. Civ. P. 26(a)(1)(A) provides that a party must provide, *inter alia*, the names "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses. . ." The party must also provide either a copy or a description of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses. . ."

The Amended Initial Disclosures are deficient under this standard because they do not disclose the subjects of the information that Cohmad and the 19 newly-named witnesses may provide. Similarly, they do not disclose the information that the two FBI agents will provide. But, in any event, these are witnesses that Saren-Lawrence and the Nelsons are entitled to depose —

{00038559 1}                                     10

even though the Trustee would be barred from using any of this evidence against them. Their inability to depose these witnesses is caused solely by the fact that the Trustee concealed this information from them in 2015 - 2017. Indeed, this may turn out to be a case where strong sanctions should be imposed against the Trustee for concealing material information. *See, e.g., Albermarle Corp. v. Chemtura Corp.* 251 F.R.D. 204 (M.D. La. June 23, 2008) *aff'd,* CIV. A. 05-1239-JJB, 2008 WL 4332524 (M.D. La. Sept. 17, 2008) (sanctions were warranted because late-produced documents were created or maintained by party's own employees so could not reasonably have been overlooked "[d]efendants put on blinders and now seek to excuse their conduct . . .."); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.,* 08-CV-5023 CBA RLM, 2010 WL 3173785 *5, *10 (E.D.N.Y. Aug. 11, 2010) (belated production of documents "does not retrospectively excuse this violation" and defendant "flouted its discovery obligations in a willful manner"); *RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*, No. 06 Civ. 6404 (HB)(KNF) (S.D.N.Y. Jun. 4, 2007) (sanctions warranted for untimeliness even though documents had ultimately been produced).

The Amended Initial Disclosures were not served until the last week of November 2018. If the Court adjourns the trials without date, the Defendants will move quickly to complete the discovery necessitated by the Amended Initial Disclosures.

## **CONCLUSION**

Ms. Saren-Lawrence and the Nelsons are entitled to an adjournment of their trials so that they are given the opportunity to take discovery with respect to the 19 newly-disclosed witnesses and with respect to the massive volume of newly-disclosed documents in the Trustee's possession. This is not a case where the Trustee should be permitted to play fast and loose with his discovery obligations and, thereby, wrongfully obtain judgments against the Defendants.

{00038559 1}                                         11

| | | |
|---|---|---|
| Dated: | New York, New York<br>December 5, 2018 | **CHAITMAN LLP** |
| | By: | */s/ Helen Davis Chaitman*<br>Helen Davis Chaitman<br>Gregory M. Dexter<br>hchaitman@chaitmanllp.com<br>gdexter@chaitmanllp.com<br>465 Park Avenue<br>New York, New York 10022<br>Phone & Fax: 888-759-1114<br><br>*Attorneys for Defendants Carol Nelson,*<br>*Stanley Nelson, and Helen Saren-Lawrence* |