# EXHIBIT 6



Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - -x

4  SECURITIES INVESTOR PROTECTION

5  CORPORATION

6  v.                              CASE NO. 08-01789-smb

7  BERNARD L. MADOFF INVESTMENT

8  SECURITIES, LLC, et al,

9          Debtors.

10  - - - - - - - - - - - - - - - - - -x

11  IRVING H. PICARD, TRUSTEE,

12          Plaintiff,

13  v.                              CASE NO. 09-01161-smb

14  KINGATE GLOBAL FUND,

15  LTD., et al.,

16          Defendants.

17  - - - - - - - - - - - - - - - - - -x

18  IRVING H. PICARD, TRUSTEE,

19          Plaintiff,

20  v.                              CASE NO. 10-04946-smb

21  GOLDENBERG,

22          Defendants.

23  - - - - - - - - - - - - - - - - - -x

24

25

Page 2

1                          U.S. Bankruptcy Court

2                          One Bowling Green

3                          New York, New York

4

5                          July 26, 2017

6                          10:09 AM

7

8

9    B E F O R E :

10   HON. STUART M. BERNSTEIN

11   U.S. BANKRUPTCY JUDGE

12

13   ECRO:   Unidentified

14

15

16

17

18

19

20

21

22

23

24

25

1    Conference re: Madoff Day 2 Deposition Topics

2

3    Discovery Conference Pursuant to Local Bankruptcy Rule

4    7007-1

5

6    Conference regarding status of factual stipulation in

7    advance of motions for summary judgment

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach, CERT*D-397

**Page 4**

```
 1   A P P E A R A N C E S :

 2   BAKER & HOSTETLER, LLP

 3        Attorneys for BLMIS, Trustee

 4        45 Rockefeller Plaza

 5        New York, NY  10111

 6

 7   BY:  GERALDINE E. PONTO, ESQ.

 8        MARSHALL J. MATTERA, ESQ.

 9        DAVID J. SHEEHAN, ESQ.

10        STACEY A. BELL, ESQ.

11        AMANDA E. FEIN, ESQ.

12

13   CHAITMAN, LLP

14        Attorneys for large group of defendants

15        465 Park Avenue

16        New York, New York 10022

17

18   BY:  HELEN DAVIS CHAITMAN, ESQ.

19

20   MCDERMOTT, WILL & EMERY, LLP

21        Attorneys for Sage defendants

22        340 Madison Avenue

23        New York, New York 10173

24

25   BY:  ANDREW B. KRATENSTEIN, ESQ.
```

Page 5

```
 1   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 2        Attorneys for Tremont

 3        Four Times Square

 4        New York, New York 10036

 5

 6   BY:  SETH M. SCHWARTZ, ESQ.

 7

 8   SCHULTE ROTH & ZABEL, LLP

 9        Attorneys for Picower Parties

10        919 Third Avenue

11        New York, New York 10022

12

13   BY:  MICHAEL KWON, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              THE COURT:  Let's do the Goldenberg matter first.

3              MR. SHEEHAN:  Your Honor, David Sheehan for the

4    trustee.  I've been advised by Mr. Murphy that late last

5    evening they were able to reach a stipulation which will be

6    shortly filed with the Court.  And so they would

7    respectfully request that the matter be adjourned today.

8              THE COURT:  What's the next date that you have?

9              MR. SHEEHAN:  I don't have one.

10             THE COURT:  You don't?  August 23rd.

11             MR. SHEEHAN:  Thank you, Your Honor.

12             THE COURT:  Let's do the Kingate matter next.

13        (Pause)

14             THE COURT:  Who wrote the first letter?

15             MR. MATTERA:  I did, Your Honor.  Marshall Mattera

16   for the trustee.  And I'm here with my colleague, Geraldine

17   Ponto.

18             THE COURT:  How do you do?  You have the floor.

19             MR. MATTERA:  Good morning, Your Honor.  We're

20   here today because we wrote a letter to the Court requesting

21   a conference regarding a discovery dispute in the adversary

22   proceeding, Picard versus Ceretti, which is adversary

23   proceeding 09-01161-smb.

24             The trustee served non-party, Tremont Group

25   Holdings, with a Rule 45 document subpoena on June 7th,

Page 7

1    2016.   The trustee has been trying in good faith to reach a

2    consensual resolution for over a year, but has now

3    determined that it cannot obtain compliance with certain

4    requests in that subpoena.   Those requests are numbers one

5    through four and seven through eight of the subpoena which

6    is attached as Exhibit B to the trustee's letter.

7            The requests seek Tremont's communications and

8    other documents concerning key players that are specific to

9    the operation and management of the Kingate Funds, which are

10   the defendants in this proceeding.

11           This information will bear on the Funds' state of

12   mind and business relationships, including the element of

13   actual knowledge that this Court has addressed in its order

14   substantially denying the Funds' motion to dismiss.

15           Tremont persists in challenging relevance, but

16   it's indisputable that Tremont has relevant and responsive

17   information.   Tremont was co-manager of the defendant,

18   Kingate Global, for over a decade.   Tremont's founder,

19   Sandra Manzke, introduced Ceretti and Grosso to Madoff and

20   then served on Defendant Kingate Global's board of directors

21   for ten years while she was also an officer at Tremont.

22           Tremont also has asserted that its productions

23   eight years ago contained documents responsive to the search

24   terms that the trustee has proposed in this proceeding.

25           However, those productions were in response to a

Page 8

1    Rule 2004 subpoena issued toward the outset of the trustee's

2    investigation.  The productions were in response to

3    different requests and were produced using search terms that

4    are different to the search terms the trustee has proposed

5    here which are specific to this proceeding.

6              Tremont also has objected that it lacks the

7    resources to comply with this subpoena, but it has provided

8    no information to substantiate this claim.

9              Nevertheless, over the past more than a year the

10   trustee has proposed numerous compromises which would have

11   eliminated the burdens Tremont has complained of.  As to

12   electronic documents the trustee proposed to further narrow

13   its already narrow search terms.  The trustee also proposed

14   to exchange discovery related technical information with

15   Tremont to control costs.  The trustee even offered that

16   Tremont could produce all documents responsive to these

17   narrow search terms and the trustee would review those

18   documents subject to a claw back arrangement.

19             In response, Tremont has rejected these

20   compromises and offered none of its own.  Tremont agreed to

21   run the further narrowed list of search terms resulting in

22   approximately 50,000 electronic documents, but Tremont

23   refuses to produce any documents unless the trustee pays its

24   vendor costs of production and $500,000 that it estimates

25   will be the cost of its own attorneys to review for

1    responsiveness and privilege prior to production.

2           Under the trustee's proposals these costs would

3    have been entirely unnecessary.  As to privilege, there are

4    adequate protections available to Tremont that would address

5    this concern.  There are the protective orders in this case

6    that have claw back provisions and other protections.

7    There's a claw back provision in Rule 45, and the trustee

8    even offered to negotiate a claw back arrangement that would

9    address any remaining concerns as to this issue.

10          As to responsiveness, that review that Tremont

11   insists that it conduct itself is also unnecessary.  The

12   terms that the trustee has proposed track the requests and

13   these search terms are agreed upon, and the trustee offered

14   to do the review itself.

15          As to Tremont's hard copy documents, it has stated

16   that it has approximately 1,200 boxes of documents that are

17   potentially relevant and responsive to the trustee's

18   requests.  The trustee also offered to review those

19   documents at their physical location at the trustee's

20   expense.  Tremont rejected that compromise, too, without

21   offering any compromise of its own.

22          The trustee also proposed that this be resolved by

23   the discovery arbitrator.  Tremont refused to consent.

24          Therefore, the trustee intends to move for an

25   order compelling Tremont to produce documents responsive to

Page 10

1    the requests.

2             THE COURT:  Thank you.

3             MR. SCHWARTZ:  Good morning, Your Honor.

4             THE COURT:  Good morning.

5             MR. SCHWARTZ:  Seth Schwartz for Tremont.

6             As we set forth in our letter Tremont does not

7    have resources to do these searches.

8             THE COURT:  Is that what the issue is, resources

9    as opposed to relevance or something else?

10            MR. SCHWARTZ:   Oh, it's relevance, too.  But, I

11   mean, it's -- when you're doing the burden analysis one of

12   the factors, of course, is resources.  Another factor is is

13   it worth the money to go after all this stuff when you're

14   going to turn up something that's totally irrelevant anyway.

15            Now we -- Tremont litigated these cases for many,

16   many years and the issue in all these cases is the same,

17   what did Tremont know about Madoff.  And the issue as I

18   understand it --

19            THE COURT:  Well, it's a little different here.

20   It's what did Kingate know about --

21            MR. SCHWARTZ:  Right.

22            THE COURT:  -- Madoff.

23            MR. SCHWARTZ:  Exactly.

24            THE COURT:  And how the communications -- I would

25   think that due diligence that was conducted on Madoff,

Page 11

1    communication -- which may have been produced already,

2    communications between Tremont and Kingate or some of these

3    other advisors relating to investments would certainly be

4    relevant.  I don't know if they were part of the prior

5    production.

6             MR. SCHWARTZ:  Well, when we were working things

7    out with Mr. Picard's lawyers way back when we turned over

8    everything that we had relating to Tremont's due diligence

9    on Madoff.  And --

10            THE COURT:  Okay.

11            MR. SCHWARTZ:  -- if there were anything that had

12   the name Kingate on it in connection with that due diligence

13   it was produced or would have been produced.

14            The -- in theory it seems to make sense that there

15   might be communications between Tremont and Kingate relating

16   to Madoff that bear on Kingate's knowledge of Madoff.  But

17   the reality is that even though not only Tremont was co-

18   manager and, in fact, it was not -- it didn't do -- it

19   wasn't investigated by a search of Kingate.  It was

20   effectively raising assets for the manager of Kingate and

21   had no role in the oversight of investments in Kingate.  It

22   was essentially a mechanism for Tremont to place assets with

23   a Madoff feeder fund in the event its own (indiscernible)

24   funds ran out of capacity to invest directly with Madoff.

25            And Tremont and Kingate were effectively

Page 12

1    competitors and they didn't talk shop about Madoff.  They

2    zealously guarded whatever they knew and were not interested

3    in sharing that kind of information.

4           And I can -- Your Honor, if there were such

5    information it was called for again when we were directly

6    negotiating with Mr. Picard's lawyers.  And if anything like

7    that existed it would have been produced.  It would have

8    been well within the search parameters that were done years

9    ago.  And we've literally over the course of the years

10   turned over everything that Tremont has that's directly

11   relevant to due diligence, the communications relating to

12   Madoff, and we have no reason to believe that there's

13   anything else out there that truly is relevant that hasn't

14   already been produced.

15          And during the course of these -- this year-long

16   meet and confer that we've had, we've essentially begged

17   counsel to explain to us specifically what kinds of

18   documents that they haven't already seen that you think we

19   have that would be relevant.  And, you know, we don't get a

20   response to that.  We just get search terms.

21          So we went along with that and we did these

22   searches and we came up with thousands and thousands of

23   hits, again, without any reason to believe that any of them

24   are relevant.

25          Now I happened to bring with me today just a

Page 13

1    couple of e-mails that are representative of what you get

2    when you get these searches.  And on the face of them you

3    can see they have -- they're basically innocuous

4    communications that have nothing to do with -- I'm sure have

5    nothing to do with the issues in the case against Kingate.

6              So when you look at the lack of relevance, the

7    lack of potential relevance, the extraordinary cost

8    involved, it seems to me that if plaintiff could come up

9    with a specific list of documents that they don't think they

10   can get from Kingate that Tremont would have, then we would

11   have something to talk about.  But otherwise it's just a

12   classic fishing expedition.

13             THE COURT:  Well, one of the -- I mean, I'm not

14   going to tell you you can't make a motion to compel

15   discovery.  Another way to do it is to identify a hundred

16   documents.  You produce them, I'll look at them and if it

17   looks like this is just a fishing expedition and you still

18   want them, you'll pay for it, I guess.

19             But if you're going to make the motion and you're

20   going to make an argument that you just made, I need a

21   factual record for that, particularly if there's going to be

22   cost shifting.  I need a factual record for that regarding

23   ability and things like that.

24             So you can go ahead and make your motion and I'll

25   deal with it in that manner.

1          Okay.

2               MR. SCHWARTZ:  Thank you, Your Honor.

3               MR. MATTERA:  Thank you,  Your Honor.

4               THE COURT:  The Madoff day two deposition topics.

5          (Pause)

6               THE COURT:  How are you?

7               MS. CHAITMAN:  Helen David Chaitman, Your Honor,

8     on behalf of the large group of defendants.

9               We are anxious to set a date for Mr. Madoff's

10    continued deposition.  It is not practical to hold off

11    taking that deposition until we review this massive set of

12    new documents which could -- it could take us a year to get

13    through that.  So I don't -- given Mr. Madoff's health and

14    his age, I think it's important that we take the deposition.

15    And if it turns out that we discover documents in these new

16    productions which will require questioning of Mr. Madoff and

17    he's still available, we'll have to come back to you and

18    seek permission.

19               THE COURT:  So you -- you're proposing to separate

20    the discovery issue from the continued deposition because

21    they were tied together last time?

22               MS. CHAITMAN:  Right.  But the -- now that the --

23    the trustee has now served a --

24               THE COURT:  Let me ask if the trustee has any

25    objection to that procedure?

Page 15

1              MR. SHEEHAN:  No, Your Honor.

2              THE COURT:  Okay.  So let's talk about the day two

3      topics right now.  Let's get that out of that way and then

4      we can deal with the discovery issue separately.

5              MR. SHEEHAN:  Sounds good.

6              THE COURT:  So what's the issue with the day two

7      topics?

8              MS. CHAITMAN:  Well, are you asking me?

9              THE COURT:  I'm --

10             MS. CHAITMAN:  From our perspective there were --

11     what Your Honor had previously indicated was that individual

12     attorneys would be able to pose questions that are specific

13     to their clients.

14             THE COURT:  Yeah.  But I remember and I think it

15     was Ms. Nevel who stood up and wanted to ask follow up

16     questions regarding day one topics.  And, you know, we

17     talked about that this was -- you were basically

18     representing the defendants who were still in there for the

19     purpose of deposition because everybody couldn't come into

20     the prison --

21             MS. CHAITMAN:  Correct.

22             THE COURT:  -- and do the deposition.  So I'm not

23     inclined to continue the day one deposition.

24             The day two deposition I thought I had intended

25     that if people had specific questions about that -- who were

1    still involved, if they had specific questions about their

2    accounts or, you know, I guess if he had knowledge of their

3    accounts they could ask about it.  It doesn't sound --

4              MS. CHAITMAN:  The only --

5              THE COURT:  -- like it's going to be a terribly

6    long deposition.

7              MS. CHAITMAN:  The only exception I would ask for,

8    Your Honor, is that as you may recall the trustee, pursuant

9    to Magistrate Judge Moss's January 7th, 2017 order has

10   produced about 500 reels of microfilm documents and some of

11   those are very, very important, and I would like the

12   opportunity because those were produced in April and I

13   didn't have the opportunity to question Mr. Madoff about

14   them.  I would like to be able to question him at least

15   about those.  I mean, I --

16             MR. SHEEHAN:  I have no objection, Your Honor.

17             THE COURT:  All right.  Fine.

18             MS. CHAITMAN:  Okay.

19             THE COURT:  And then the only other issue I think

20   that came up were these 302 reports?

21             MR. SHEEHAN:  Yes.  And we agree with the

22   examining on those.  So --

23             THE COURT:  All right.  So those are -- it sounds

24   like the three --

25             MR. SHEEHAN:  I think those are the three areas

1    that you're --

2           MS. CHAITMAN:  The only thing I would ask on the

3    302, it's a heavily redacted --

4           THE COURT:  I saw it.  You know what, it doesn't

5    mean anything to me.

6           MS. CHAITMAN:  Yeah, because it's so redacted.

7           THE COURT:  But if you want to ask him about it,

8    it sounds like it's going to be about five minutes of

9    questioning.

10          MS. CHAITMAN:  But is there a way, Your Honor, to

11   get the complete report?

12          THE COURT:  That's an issue involving the

13   Department of Justice.

14          MS. CHAITMAN:  Okay, because clearly it's not an

15   admissible document in its present form.

16          THE COURT:  I agree with you on that.  I don't

17   know what you're going to ask him about it, but people seem

18   to want to ask him about it.  So I suppose you can ask him

19   what he said to the FBI.

20          MS. CHAITMAN:  Mr. Sheehan did that already --

21          THE COURT:  Yeah.  I saw --

22          MS. CHAITMAN:  -- in the last deposition.  He went

23   into great length about it, but he didn't have the heavily

24   redacted 302.  But I --

25          THE COURT:  No.

1           MS. CHAITMAN:  -- I've -- I find it objectionable

2    to --

3           THE COURT:  Well --

4           MR. SHEEHAN:  Your Honor, if it was unredacted

5    would -- I apologize for interrupting.

6           THE COURT:  I'm sorry.

7           MR. SHEEHAN:  I'm sorry.

8           THE COURT:  You know, at best I guess an

9    unredacted document would set -- first of all, I'm assuming

10   it's admissible because it's an official report.  I don't

11   know.  Obviously, I'm not ruling on it.  But, you know, if

12   the document said Madoff said X, and Madoff says, I never

13   told these guys that, you know, I don't know where that

14   leaves us.

15          But, look, you can ask him about it.

16          MR. SHEEHAN:  I understand that, Your Honor.  The

17   reason I asked the question is that we asked obviously for

18   the complete document.  The U.S. Attorney, for its own

19   reasons undisclosed to us, decided that it didn't want to do

20   that and gave us those portions of it which they felt

21   directed, you know, to the issue of 1992 that --

22          THE COURT:  Is there a procedure by which you can

23   compel the production?

24          MR. SHEEHAN:  We did go through that procedure.

25   It's called filing a certain letter or whatever.  The reason

Page 19

1    I'm asking Your Honor the question, which realize

2    respectfully, is that if we can go back to the U.S. Attorney

3    and say, look, we're going to have trouble with admission

4    here unless we have a full document that both adversaries

5    and the Court can examine, maybe I can convince them at that

6    point because I'll be candid, Your Honor.  I see no real

7    purpose.  The U.S. Government's case as far as I'm concerned

8    is over.  We just settled the two, you know, estates.  And

9    there are no further criminal prosecutions.

10            So I see no reason why it can't be -- and there's

11   nothing in there that, you know, I could represent it

12   because I have read it.  Ms. Chaitman could also read it in

13   its entirety.  They will allow you to go down and read it,

14   but they won't let you, you know, copy it or do any of those

15   things.

16            THE COURT:  Well, I mean, that's up to her.  But

17   --

18            MR. SHEEHAN:  Right.

19            THE COURT:  -- the document itself in that form

20   would not be admissible.

21            MR. SHEEHAN:  Okay.

22            THE COURT:  I suppose you could call the agent's

23   also if they remembered.  But --

24            MR. SHEEHAN:  No.  That thought's occurred to us,

25   but, you know, we've early on, there's a long history to the

1    U.S. Attorney and the trustee, we've asked in the past for

2    the assistance of the FBI and that's been denied to us

3    because of, again, pending criminal prosecutions and they

4    don't want to in any way potentially corrupt their

5    investigation or their trial.

6              Again, I would be more than happy to call, you

7    know, the two agents, Mr. Kelley and his colleague.

8              THE COURT:  Anybody can testify to what Mr. Madoff

9    told them, I suppose, on an issue that's relevant.

10             MR. SHEEHAN:  It's an admission.

11             THE COURT:  Well, it's an admission by the estate.

12             MR. SHEEHAN:  Yeah.  Right.

13             THE COURT:  Okay.  All right.  So the three

14   topics, general areas are the 302s, follow up questions on

15   specific accounts of the people who are still in it, and

16   this -- these 400 reels or whatever the number is --

17             MS. CHAITMAN:  The documents --

18             THE COURT:  -- or something in there.  Right.

19             MS. CHAITMAN:  -- that have just been -- yeah.

20             THE COURT:  Anything else?

21             MR. KRATENSTEIN:  No, Your Honor.

22             THE COURT:  All right.  So why don't you just

23   provide the usual order, with Picower out, and listing the

24   topics.

25             MR. SHEEHAN:  All right.

1            MS. CHAITMAN:  Okay.

2            THE COURT:  Okay.

3            MR. SHEEHAN:  Thank you, Your Honor.

4            THE COURT:  Now let's deal with the discovery for

5    a minute.

6            You know, one of my concerns about discovery in

7    these cases is every time I had a hearing I get a little

8    more information, pre-existing information the next time I

9    have a hearing.

10           From what I've read, although it was in a

11   different adversary proceeding, Mr. Moss dealt with the

12   issue of the production of these 4,700 boxes I thought and

13   said to you, Ms. Chaitman, why don't you look at the list

14   and see if you can pull out what it is that you propose.

15           MS. CHAITMAN:  Here's the problem, Judge.  We just

16   got with the July 14th data this 183 --

17           THE COURT:  Yeah.

18           MS. CHAITMAN:  Yeah.  Okay.  So --

19           THE COURT:  So that's the universe of the 4,700

20   boxes we're talking -- oh, 5,300 boxes, whatever the number

21   is.

22           MR. SHEEHAN:  What that represents, that exhibit,

23   is the 5,300 tapes.

24           THE COURT:  Of tapes.  Okay.

25           MS. CHAITMAN:  Okay.  So the thing that's hard,

Page 22

1    Judge, is that we had a conference call yesterday with three

2    people from Baker & Hostetler, Mr. (indiscernible), and we

3    asked questions about this document which we had not seen

4    before this letter.

5           And this was done by we were told an outside

6    vendor.  So if a tape is labeled something by an outside

7    vendor who is not knowledgeable about the case, who is not a

8    lawyer, I don't feel comfortable simply relying upon that

9    and making a decision which could impact my clients' --

10          THE COURT:  Uh-huh.

11          MS. CHAITMAN:  -- lives so significantly.  I

12   really feel that we need to go through these documents and,

13   you know, some of them -- look, obviously, some of them have

14   now been produced pursuant to Magistrate Judge Moss's order.

15   But the vast majority have not.

16          THE COURT:  Right.

17          MS. CHAITMAN:  And I think clearly we're entitled

18   to these documents.  These are documents that should have

19   been posted in the e-data room from inception.  They should

20   have been provided to Mr. Davinski (ph) along with a check

21   for $30 million so that the trustee's contention throughout

22   this case that Madoff never purchased securities for any of

23   the investors or advisory customers could have been tested

24   against the facts.

25          You know, with -- Mr. Picard has based his claims

Page 23

1    upon this fundamental fact.  He has led us all to believe

2    that the e-data room contained the entire universe of

3    documents --

4             THE COURT:  I know the history.  As I understand

5    it, the dispute is who is going to pay for this.  The

6    trustee doesn't -- the trustee would produce this stuff, but

7    you would have to go and look at it at your own -- on your

8    own dime, on your own time.  That's what they're --

9             MS. CHAITMAN:  Yeah.  Okay.

10            THE COURT:  Is that a fair approximation, Mr.

11   Sheehan, of the trustee's position?

12            MR. SHEEHAN:  Your Honor, essentially that's part

13   of it, but I would like to be heard.  I --

14            THE COURT:  Yeah.

15            MR. SHEEHAN:  -- don't want to interrupt here.

16            THE COURT:  Okay.

17            MS. CHAITMAN:  Okay.  When I was here last time,

18   Judge, I had no idea -- we hadn't been provided with this

19   document which we learned last night --

20            THE COURT:  Okay.

21            MS. CHAITMAN:  -- has been in existence for --

22            THE COURT:  Okay.  So now you have it.  What --

23            MS. CHAITMAN:  -- since 2010.

24            THE COURT:  -- do you propose to do with it?

25            MS. CHAITMAN:  Well, look, if you say that I can

```
                                                    Page 24

 1    only have these documents if I pay for them, I can't get the

 2    documents.  I don't represent SiPC.  I don't have the

 3    capacity to --

 4            THE COURT:  I understand.

 5            MS. CHAITMAN:  -- to get --

 6            THE COURT:  I understand the financial difference

 7    --

 8            MS. CHAITMAN:  So --

 9            THE COURT:  -- which is one consideration.

10            MS. CHAITMAN:  So basically the trustee who from

11    day one has taken a factual position no security was ever

12    purchased for investment advisory customer and when I asked

13    for documents which proved that, he didn't tell me he had

14    these documents.  And now seven and a half years after he

15    filed suit we realize all these documents exist and he's

16    saying, I can have them if I come up with $2 million.

17            THE COURT:  Okay.

18            MS. CHAITMAN:  I can't.  So, you know, at some

19    point I'm going to ask for a dismissal of the adversary

20    proceeding.  But right now I'm entitled to the documents and

21    I think the trustee who has been funded to the tune of a

22    billion dollars in legal fees can certainly afford to have

23    SiPC pay $2 million or Baker & Hostetler can afford it if

24    that's what's necessary.

25            THE COURT:  All right.  Let me hear from Mr.
```

1    Sheehan.

2         MR. SHEEHAN:  Your Honor, I would like to harken

3    back to something you just said a moment ago and that is

4    that as we -- as we delve more deeply into this we seem to

5    be reversing history and looking at it (indiscernible) end

6    of the funnel.  And you start narrowing the spans.

7         If you give me a moment I think I would like to

8    comment on that because I think it leads to some of the

9    allegations that are made in the -- against the trustee

10   which are ill-founded as well as the fact that it ignores

11   what normally takes place in all of these cases.

12        And I can use the history of the tapes as an

13   example of how that happens.  As Your Honor well knows we

14   arrived.  We've talked about this before.  We start

15   exploring and we hire really talented people from Alex and

16   FTI to look at it.  And that addresses one of the concerns

17   just expressed by Ms. Chaitman.  Lawyers didn't look at it.

18   Well, to a certain extent that's correct.  That doesn't mean

19   lawyers never looked at any of it.  Of course they did.

20   They filed the complaints.  They looked at these documents.

21        But if you're going to search microfilm and

22   there's 5,300 reels of this and it's not exactly the easiest

23   thing in the world to do, it cost us, you know, a lot of

24   money to just restore those 200.

25        THE COURT:  When you say restore, that -- I'm not

Page 26

1    understanding the technology.

2            MR. SHEEHAN:  Okay.  What that means is, is that

3    --

4            THE COURT:  You have films and as I said the last

5    time --

6            MR. SHEEHAN:  Right.

7            THE COURT:  -- 50 years ago when I went to the

8    library you put the film in the machine and you roll the

9    crank and you looked at it.

10           MR. SHEEHAN:  And if you had 10,000 minions doing

11   that you might make your way through it.

12           THE COURT:  So what do you mean by restore?

13           MR. SHEEHAN:  Well, what we do is we actually

14   restore it to a digitized state.  In other words, it's now

15   digital.  It's searchable.  Right.  And --

16           THE COURT:  So why do you have to do that?

17           MR. SHEEHAN:  Why do we have to do that?  Because

18   then you don't have to sit there and go like this.  You can

19   put search terms into it.  And e-discovery, if we were to

20   produce the 19,000 bits of media, you know, we're probably

21   talking hundreds of terabytes of data here.  And I don't

22   know how you would ever in a lifetime sit down and read all

23   of those.

24           THE COURT:  But if she wants to look at it --

25           MR. SHEEHAN:  Why don't we -- can I --

1          THE COURT:  Yeah.

2          MR. SHEEHAN:  -- continue, Your Honor?  I think I

3     have an answer to that.  I understand Your Honor's concern.

4     I want to try to address it.  All right.

5          So what happens is, is that we get in there and

6     now it's we find these 5,300 tapes in three different

7     locations.  We give Alice the task of first of all creating

8     this document that Your Honor is now seeing.

9          Now to us that's work product.  That's what we've

10    been working with, et cetera.  We utilized that to decide

11    which tapes we would look at to determine the cash in, cash

12    out which was our main focus at that point predicated upon

13    the fact that for the ten years where we did have bank

14    records and all the other records it was clear that no

15    securities were being purchased and that this was indeed a

16    Ponzi scheme.

17         So we focused upon 400 of those tapes.  All right.

18    And those 400 tapes have been in the data room, 400 tapes,

19    in the data room since 2012.

20         Now Ms. Chaitman says, well, I didn't know about

21    this.  And I understand why she may not have.  But if you go

22    back to our, you know, our rules that we operate under, you

23    know, the rule is that we have to make initial disclosures.

24    And if Your Honor will bear with me I would like to read to

25    you the initial disclosure we made in August 1, 2011:  "To

 1    all" -- you've got realize I'm -- Ms. Chaitman is not the

 2    only defendant here.  We have hundreds and thousands of

 3    these people.

 4              So it says in the -- this is quoting: "The trustee

 5    has assumed possession of and/or has access in conjunction

 6    with the Federal Bureau of Investigation" -- you realize the

 7    FBI is there with us hand in hand -- "to approximately

 8    11,700 boxes" -- it's not 13.  I'll explain that in a minute

 9    --

10              "Of BLMIS paper records in 19,000 media sources

11              containing electronically stored information, ESI,

12              which include, but are not limited to, desktop

13              computers, laptop computers, AS400s, hard drives,

14              network storage, microfilm, microfiche, backup

15              tapes, PDAs, floppy discs, compact discs, and

16              memory cards."

17              So we have preserved all the data.  He assumed

18    possession of it on April 15, 2008.

19              "With respect to these materials some paper and

20              some ESI are stored in one or more electronic

21              databases totaling 3.5 terabytes or 27.9 million

22              documents."

23              Now that's how you start discovery.  You don't

24    start discovery at the back end which is what's happened

25    here.  Someone should have sat down with us from Ms.

1    Chaitman's office and said, well, you have all these things.

2    For us to then spread it out all over when the vast majority

3    of people would have no interest in it.  You're supposed to

4    go through and say, well, what do you have, what does it

5    show you, what -- you know, what -- none of that ever

6    happened.  You're -- the reason you're hearing this sort of

7    through the wrong end of the funnel is because of how we're

8    approaching it.

9           So if someone had sat down we would have done

10   that.  And what they could have done, all right, is searched

11   the 400 tapes that were on there since 2012.  But for the

12   longest period of time Ms. Chaitman refused.  She considered

13   the data base a document dump.  And that, therefore, she

14   shouldn't have to go look and that we should just cherry

15   pick stuff for her and produce it.

16          Well, there are orders entered.  There are

17   protective orders.  There's an orderly process to all of

18   this which she chose and still chooses to ignore.  So as a

19   result we find ourselves here today.  Now we can't -- and,

20   you know, re-going through all of this history.

21          Now let me just finish, if I may.

22          And so what happens is is that we're in front of

23   Judge Moss and she's been complaining for some time about

24   trading records.  Now trading records I think our letter and

25   I hope your letter and I want to last make it clear, that

Page 30

1      trading records is a term that requires careful usage and

2      cannot be just used and bandied about that trading records

3      show this kind of trading.

4              All right.  We have found, I make this statement

5      flat.  All right.  We have found no evidence, no evidence

6      from any third party sources that would substantiate the

7      fact that any trading took place for customer accounts in

8      the investment advisory accounts.

9              Now this is with thousands and thousands, the

10     millions and millions of dollars that our friend, Ms.

11     Chaitman, is talking about that we spent looking.  We had no

12     preset notion, notwithstanding the outlandish allegation

13     about the conspiracy with SiPC which I believe Your Honor

14     has already rejected.   But the point is we have no basis

15     for this.  When we find the facts as we find them, it's --

16     and it's indisputable given all the records that we have

17     that from back to '98 there is no trading.  And there isn't

18     a record that we've looked at since then that would prove

19     otherwise.

20             And nothing that Your Honor has been shown to date

21     by our adversaries proves otherwise, notwithstanding their

22     protestations to the contrary.  And I will address those,

23     too, if Your Honor will permit me.

24             All right.  So what we're looking at is, is so

25     Judge Moss hears this and he turns to us and says, well, you

Page 31

1    know, are there other trading records, and we say, well,

2    we'll look and see what's in the microfilm.  All right.  And

3    we look and we identify additional 201 that are 1992 or

4    earlier predicated upon the fact that Madoff's people, when

5    they created the tape, put on a date and said this is what

6    it represents.

7            So we did that and looked at it.  We gave those

8    things to her.  So since April she's had 600 tapes that she

9    can search and look at and tell you what's gone on.  All

10   right.

11           So I want to show Your Honor, if I might, and I

12   have these for my adversary, too.  What these are, are

13   demonstratives if I could just hand them -- a copy of them

14   up to Your Honor and give them to Mr. Kratenstein and Ms.

15   Chaitman.  Do you want this --

16           UNIDENTIFIED SPEAKER:  I can --

17           MR. SHEEHAN:  I can come up and --

18           UNIDENTIFIED SPEAKER:  I can --

19           MR. SHEEHAN:  I need one for the judge.

20           UNIDENTIFIED SPEAKER:  Sure.  Do you want all five

21   or do you want the first two?

22           MR. SHEEHAN:  No.  I want all of them.

23           UNIDENTIFIED SPEAKER:  All of them.  Okay.

24       (Pause)

25           MR. SHEEHAN:  Thank you, Your Honor.

Page 32

1          THE COURT:  Thank you.

2          MR. SHEEHAN:  So what we did is we tried to break

3     this down into processed and unprocessed.  If anything I

4     would say we started doing some of Ms. Chaitman's work here

5     for her, but we're happy to do it.  All right.

6          So what you can see in the processed and

7     unprocessed reports, okay, is that which -- these are the

8     report types on the left-hand side.  All right.

9          THE COURT:  What's C&S?

10         MR. SHEEHAN:  Cash and securities.  Customer

11    ledger, other, other was a designation by Alex when he

12    couldn't find, you know, something to call it and they just

13    called it other, profit and loss, PMR is portfolio

14    management reports, PMR and other.  And so they went through

15    and they did this analysis, et cetera.

16         Now Your Honor can see that there's the 40 -- the

17    next column is not processed and you see the identity of the

18    kind of stuff that's not been processed.  It's 4,700.  We

19    look at the processed and you see 602, and you can see the

20    kind of things that we were producing:  Positions, stock

21    record trading 214, customer ledger 263, cash and securities

22    45.

23         Now Your Honor can say, well, that's not enough of

24    a representative sample.  But what you'll continue to -- if

25    you go through this what you'll see is, if you go to the

Page 33

1   next page, is that processed and unprocessed reports by year

2   on the next page show you that what we did process was

3   everything from 1992 back which is the focus of our exercise

4   here because it's been conceded by Mr. Madoff that it didn't

5   start until 1992.

6          And you can see, therefore, that we thought that

7   we had produced, you know, between the six -- the 400 --

8          THE COURT:  Because you're still contending that

9   it did start before 1992.

10          MR. SHEEHAN:  Oh, absolutely.  So -- but this is

11   -- Ms. Chaitman is suggesting that she wanted records prior

12   to '92 to show that there was actual trading taking place.

13   All right.  So we gave her all of that.  And we didn't give

14   her any -- you know, so the 4,700 all represent post-1992

15   documents.  All right.

16          Now the next thing we see is, is that these are

17   the -- the ones for the position, stock record and trading

18   reports summary.  In other words, and this is more readily

19   seen if we get to the two charts past it, but let me explain

20   what we're about to look at and that's this, is that there's

21   a lot of data on these three microfilms, not all of which

22   would relate to, you know, the idea of whether or not there

23   was actual trading taking place which as I understand it is

24   the focus of Ms. Chaitman's inquiry.

25          So what we did is we broke it down into those

1    categories that would appear to us to be the ones that are

2    most interesting to her, and they add up to 1,281.  And you

3    say, well, what does that represent.  If you look on the

4    next page you'll see that we have a pie chart and it says,

5    position stock record trading unprocessed microfilm reels.

6    What this represents is if you took all of the pages that we

7    gave Ms. Chaitman, the 168 pages, and broke it down into

8    what Mr. Madoff said were on these tapes, this is how it

9    would break down.  They had open long positions, stock

10   records, et cetera.  And these are all the ones and how they

11   broke down into percentages.

12           And then the next page we took the ones that we

13   processed and broke that down.  And this shows you that we

14   gave her a very good representative sample of all the

15   documents that are in there including what we believe to be

16   the ones that she would be most interested in looking at.

17           So in other words this wasn't just a random

18   exercise by us.  An effort was made by the trustee taking

19   the records that were available to him to respond very

20   directly to her statement that she did not get trading

21   records.

22           Now when we had done all this, this goes back to

23   Judge Moss and your reference taken earlier, and that is, is

24   that Ms. Chaitman got the -- you know, we did some -- what's

25   in the data room at this point by April, okay, and what's

Page 35

1   available to Ms. Chaitman directly.  So in the data room is

2   the 400 tapes that we've put in there back in the early

3   2000s, or 2011 and '12.  It's been there since at least

4   2012.

5           We ran 147 search terms on that and produced the

6   documents.  And at the time there was no objection.  Later

7   Ms. Chaitman objected to our search terms, added 17 more.

8   We ran those and gave her those documents.  All right.  So

9   those have been from our perspective thoroughly searched by

10  our search terms and hers.

11          Then what we did is we found the -- those tapes I

12  was telling you about earlier from '92 back and we processed

13  those so she could digitally look at them and do her own

14  search terms, et cetera, and we gave those to her in its

15  entirety.  So now she has that 600 tapes that are shown on

16  that last pie chart showing a representative sample.

17          So what we're saying here today, this is a long-

18  winded answer to Your Honor's question.  We're not saying

19  that proportionality means the trustee ahs a lot of money,

20  she has none, and therefore, you know, we should pay for it

21  or they should.  What we're saying is, is that

22  proportionality takes place in the context of the discovery

23  at hand.  All right.  What are we going to gain by

24  continuing to look and research and spend money when I think

25  we've given Ms. Chaitman with the 600 that she has more than

Page 36

1    adequate data to come to Your Honor and then say, I've

2    looked at this, look at what I've found.  Your Honor, you

3    should allow me to look, if not at all 4,700, at least the

4    1,281 that the trustee admits has stock record and other

5    information on it, and I should be able to look at it.

6              I respectfully submit she has not done that.  All

7    right.

8              Now the two things that we've heard about from Ms.

9    Chaitman, and in her last submission she gave them to us,

10   was treasuries.  It was exclusive information according to

11   Ms. Chaitman.  The treasuries have been known about since

12   the very beginning.  Very early in the case there was a

13   letter written by Mr. Hardvac (ph), I think it's been

14   referred to in this room, in which we disclosed to

15   (indiscernible) that, in fact, over $16 billion worth of

16   treasuries were purchased.

17             It's a money business.  It's a Ponzi scheme.

18   Deals in cash.  The question is did he buy any of those

19   treasuries for customers (indiscernible).  If you take any

20   number of Ms. Chaitman's exhibits and compare those to the

21   703 account at the same time, no treasuries were purchased.

22   None.  Just what we (indiscernible).  She can't find those.

23   All right.

24             Same thing is true with regard to the banks

25   themselves because she doesn't actually know what's

Page 37

1    (indiscernible) bank and a few other banks where she's said

2    that's actually happened.  We have no correlation there

3    either.  She's not making that correlation.  All right.

4         The mere fact that we have treasuries being

5    purchased is unremarkable.  It doesn't mean anything, not

6    unless she can actually show that they're purchased for a

7    particular account.  And that's going to require a little

8    more legwork than what Your Honor has before you.

9         Mr. Kratenstein, I don't disagree and that's why

10   he should be entitled to question Mr. Madoff about it.  I

11   don't object to that at all.  But he shows Your Honor

12   certain stocks that he found in there that were delivered in

13   by his family using that term broadly.  We don't dispute

14   that either.  All right.  We found that happened.  Everyone

15   who opened an account with Madoff didn't give him cash.

16   They gave him stock.  And when he got it he liquidated it.

17   All right.  He turned it into cash and then started this --

18   his efforts.

19         There's no trading that.  He's cashing it in.  And

20   we can show that.  All right.  We can show that that's what

21   actually happened to those stocks.

22         Now it's going to show up, all right, in DTCC

23   records and so it looks like there's something actually --

24   because there was only one DTCC account.  That was the one

25   for the market making and proprietary.  He didn't have a

Page 38

1    separate one for investment and advisory.  That was a closed

2    system and no outside world had contact with it.  So for him

3    to then negotiate and sell those stocks that were delivered

4    in for -- by that customer, they are going to show up.  They

5    -- I don't disagree.  They'll show up in DTCC and they'll

6    show up in the market making records.   Why, because --

7                THE COURT:  Have the --

8                MR. SHEEHAN:  -- there's no other place to

9    negotiate them.

10               THE COURT:  Have the DTCC records been produced

11   either by DTCC or the trustee?

12               MR. SHEEHAN:  Yeah.  We produced a number of

13   those.  We -- certainly all the ones that we had going back

14   to 1998 included in the reference that we've given to Ms.

15   Chaitman.  And I want to be very careful with this date

16   here.  There's a predecessor at DTCC called National

17   Securities Career Incorporation, NCSS.  We have found

18   records of those.

19               We believe what those are, just to be very clear

20   here today in court, is that Madoff had access to -- had a

21   printer in his office and he could print that out.  So while

22   it is a -- I believe an NCSS record, it is actually printed

23   out in Madoff's office, not delivered by NCSS.  I think

24   that's an important distinction.

25               But in any event, we have produced those records

1    as well.  So we believe that there's enough -- more than

2    enough information in the 600 that Ms. Chaitman has, all

3    right, that she should be able to come to Your Honor with a

4    lot more information than she's giving to you now, to

5    justify the expense of taking whether it's 1,281 or 4,500

6    more tapes and putting those together.

7         Now we're going to accommodate her.  We -- Your

8    Honor suggested the last time we were here, well, just give

9    her the tapes.  And I guess what we could do to make it easy

10   so she doesn't have to have somebody from Iron Mountain

11   watch her or any of that stuff, we could just copy the tapes

12   and give it to her.

13        But I don't know -- and to be candid, and I think

14   Ms. Chaitman would be right if we gave her that we're giving

15   her a pig in the poke because at that point how the heck

16   could she go through 4,500 tapes without them being, you

17   know, digitized and put in a format to -- that can be looked

18   at.

19        So I believe what's before Your Honor today and I

20   think that, you know, especially in light of the Judge Moss

21   history, it's not a failure on our part to comply with two

22   prior orders or with Judge Moss's order.  We believe and I

23   believe Judge Moss believed that we have complied with what

24   he asked us to do.  And that what he then suggested to Ms.

25   Chaitman is, okay, fine, just where we are here today; that

1    what you can do is look at the 600 and if you come back to

2    me and you demonstrate to me that there's reason to be had

3    that the trustee should incur the further expense of putting

4    those other tapes together, that's fine.

5            What I would also suggest in adding to that is

6    that Ms. Chaitman has those 600.  She says she wants to go

7    back and talk to Mr. Madoff.  I agree.  We should go.  We

8    should go sooner rather than later.  And she can utilize

9    that opportunity to also ask him and then there would be

10   perhaps even a further record.  I submit, anticipate the

11   argument that Mr. Madoff will have no knowledge of this as

12   demonstrated by what he was telling us the last time we were

13   down there.  His knowledge of the back office, the trades,

14   the records and everything is very minimum.  And when asked

15   about it he disavows any real knowledge.

16           So I don't know what we're going to gain, but I'm

17   more than happy to go down.  I'm more than happy to have her

18   answer.  But to suggest today I think -- I think there's no

19   motion pending to be frank.  I think Ms. Madoff -- I

20   apologize again.  I've made that mistake before and I do

21   apologize.  Is that Ms. Chaitman should put together a

22   motion utilizing those 600 and Mr. Kratenstein can add to

23   that.  And they've heard what I've had to say today.  And I

24   recognize that we've given them a lot of additional data.

25           But I think we've given more than enough to put

Page 41

1    the onus on them to come to Your Honor with a motion that

2    says, wait a minute, whatever the trustee did here is not

3    enough.  I need the rest of those tapes.  And I think at

4    that point we can respond again, all right, and I'm not

5    holding anything back here.  It's not like I've got more

6    than I can tell Your Honor.  We're very comfortable that

7    there's nothing on those 600 nor would there be anything on

8    the 4,500 that will contradict what we're representing and

9    have represented throughout the course of the case, that

10   there was no trading going on on the investment advisory

11   side of the house.

12            Thank you, Your Honor.

13            THE COURT:  Okay.

14            MR. KRATENSTEIN:  Your Honor, may I be heard?

15            THE COURT:  Sure.

16            MR. KRATENSTEIN:  Thank you, Your Honor.

17            Good morning, Your Honor.  Andrew Kratenstein of

18   McDermott, Will & Emory for the Sage defendants.

19            I want to start by thanking Mr. Sheehan for

20   acknowledging that the Sages did, in fact, deliver stock.

21   That's actually the first time -- to Mr. Madoff.  That's

22   actually the first time we've heard that admission.  He also

23   just said several things just now that I've never heard

24   before and was very interested to hear.  He said that, yes,

25   they admit that the Sages delivered stock to Mr. Madoff, but

Page 42

1  they can show that Mr. Madoff liquidated the stock and then

2  started his scheme.

3         I would love to see that evidence.  I haven't seen

4  it yet.  Maybe it will help, if you show it to me, resolve

5  this case, maybe it won't.  I don't know.  But I would love

6  to see it sooner rather than later.  We certainly haven't

7  found it.

8         What we have seen, and I attached some of this to

9  my letter back from the last hearing, are documents that

10  appear to show from Mr. Madoff's records and we did try to

11  make the showing to show what we were finding in this

12  microfilm, that (a) stocks were delivered to Mr. Madoff back

13  in the late '70s by my clients.  That's now apparently

14  admitted.  And that stocks were held according to Mr.

15  Madoff's records at least for some period of time at

16  different banks including National Westminster Bank and

17  MBNA, stocks or other securities including an RCA bond.

18         And if the trustee has evidence showing that those

19  records of Mr. Madoff's are inaccurate and that, in fact,

20  those positions were liquidated before the Sages gave the

21  instructions to liquidate them later in time, I would love

22  to see it.  Show it to us as soon as possible and maybe that

23  could help streamline this whole matter.

24         I will note that we do have a defense that

25  regardless of whether the trades actually occurred, the mere

Page 43

1    fact that the Sages directed the trading is a defense, but

2    put that aside it would also obviously be interesting for us

3    to know if the trades actually occurred or not.

4            And so we've been trying to figure that out

5    through all of the records that have been produced and it is

6    difficult to do.  There are tons and tons of records that

7    have now been produced.

8            The other thing we can't -- and we just got these

9    pie charts and other charts which, again, I wish I had seen

10   before this morning so that we could study them.  But, for

11   example, talking about those cash and securities records

12   that were on that list, we have done our review of those.

13   We think that they're very interesting records.  We have

14   only found them at what has been produced for the house 17.

15   We have investment advisory accounts through 1985.

16           And we  -- maybe they exist beyond that and maybe

17   they don't.  We're curious as to why.  That's one of the

18   reasons we think that the production is incomplete.  It's

19   unclear to us why there are no post-1985 cash and securities

20   reports for the house 17 account.  And we have questions

21   about that.

22           Turning to proportionality, you know, I will just

23   quickly take to the factors here.  We have already addressed

24   resources.  The importance of the issues at stake in this

25   action, as Your Honor knows the importance is, is quite

Page 44

1   large.  There's also a public side of this, obviously, what

2   happened with Mr. Madoff, what was the scope of the fraud,

3   et cetera.

4        The amount of controversy from my clients at least

5   this case involves their life savings.  So that's certainly

6   to them a very high amount of controversy.

7        In terms of the access to the data, the trustee

8   has all the access.  We only have access to what we have

9   been given.

10        Resources, we've already discussed, and the

11   importance of the discovery to resolving the issues in this

12   case, we do think it's very important for the reasons that I

13   just said and also because as Ms. Chaitman eluded to, when

14   the trustee puts forward a $30 million expert and says,

15   there is no evidence and my case -- their case is based on

16   an absence of evidence of real trading, then it's really

17   incumbent on them to make available to the defendants all of

18   the evidence.

19        And for them to say, well, we have to define what

20   is a trading record and what isn't, as I believe my

21   colleague, Mr. Hutmaker (ph) said at the last hearing to

22   you, what is a trading record and what isn't, what counts

23   and what doesn't, that's for the fact finder.  It's not for

24   the trustee to say, well, there's no third party

25   verification so you should disregard it.  That will be for

Page 45

1    the fact finder to decide what credence to give to Madoff

2    records or other records.  And if Mr. Sheehan and his

3    colleagues want to prove that these are fake accounts or

4    dummy accounts or what have you and that they can show us

5    through DTCC or other records that these stock trades never

6    occurred or the stock was liquidated, they'll have every

7    opportunity to do that.  But we think we need to see the

8    documents so that we can test their assertions.

9              Thank you, Your Honor.

10             THE COURT:  All of the documents, all 4,700 boxes?

11             MR. KRATENSTEIN:  Well, now that we've seen this,

12   you know --

13             THE COURT:  What's this?

14             MR. KRATENSTEIN:  Well, I'm sorry.  The records

15   that have been produced it is possible that we may be able

16   to narrow that.  We hadn't seen this breakdown that we got

17   until this morning.  I was going to come in here this

18   morning and say, yes, because we just got this chart here

19   and for my clients at least, my clients bought and held

20   securities so they were not switched right to begin.  The --

21   and the Sages (indiscernible) account they bought and held

22   securities between 1982 approximately and 2007.  Okay.

23             So that's a long period of time and we need the

24   records of that entire period of time to see what happened

25   to those securities, if anything.  And, again, if they have

Page 46

1    the documents that they say prove beyond a shadow of a doubt

2    or whatever evidentiary standard you want to apply that they

3    -- that it didn't occur, or preponderance of the evidence,

4    whatever.  Here's the evidence showing that these trades

5    didn't occur, here's the evidence showing what Mr. Sheehan

6    just said that they were liquidated and assumes the stocks,

7    give it and then show it to us.

8             THE COURT:  Your clients were giving trading

9    instructions to Madoff.

10            MR. KRATENSTEIN:  Yes.  In fact, I'll -- my letter

11   which was dated July 20 -- June 26th rather, if you look at

12   Exhibit C, that's an evidence of one of the instructions.

13        (Pause)

14            THE COURT:  I'm sorry.  What tab is that?

15            MR. KRATENSTEIN:  I don't --

16            THE COURT:  Oh.

17            MR. KRATENSTEIN:  It's Exhibit C of my June 26th,

18   letter.

19        (Pause)

20            MR. KRATENSTEIN:  I'll --

21            THE COURT:  I'm looking for it.

22            MR. KRATENSTEIN:  Yeah.

23            THE COURT:  How frequently did your client give

24   trading instructions to Madoff?

25            MR. KRATENSTEIN:  My client gave trading

Page 47

1    instructions -- he met with Madoff at least once a year or

2    more.  There are more letters like this.  There are at least

3    a half dozen that we found.  He regularly gave trading

4    instructions.  It would depend on the time.  So they bought

5    securities, as I said, in the early '80s on their

6    instructions and there was a buy and hold strategy mostly,

7    but certain positions were changed over time at the

8    direction of the Sages.

9              THE COURT:  Did the trades that the Sages were

10   instructing show up on the customer statements?

11             MR. KRATENSTEIN:  They did.

12             THE COURT:  All right.  Now you're in a different

13   position than the usual investment advisory customer who

14   gave him trading discretion.  I understand.

15             MR. KRATENSTEIN:  Yes, Your Honor.

16             THE COURT:  All right.

17             MR. KRATENSTEIN:  Thank you.

18             THE COURT:  Yeah.

19             MS. CHAITMAN:  Judge, I won't take the time to

20   refute everything that Mr. Sheehan said, but I -- we have

21   made extensive use of the e-data room.  We had no knowledge

22   that the 400 reels of documents were -- that were put in the

23   data room came from the reels.  We just looked at the e-data

24   room.  It didn't say these are reels.  But of course we

25   looked at the e-data room.

1              But if you recall last May, May 2016, we had

2    argument on my motion to compel because I made the point

3    that a lot of my clients would not have claw back exposure

4    if they were given credit for their profits prior to this

5    foot strike.

6              And so I've always been asking for these records.

7    And as you, I'm sure you remember Ted Jacobs represented to

8    the Court that everything had been produced and was the --

9    in the e-data room.  And he was bragging about how proud he

10   was of how complete the e-data room was.

11             So now of course we realize the e-data room is not

12   complete and it -- it's not -- you know, to say at this

13   point when they've been hiding this evidence for eight

14   years, to say that they should just give me the microfilm

15   reels when we're talking about this enormous massive

16   documents and we don't really know everything that's on

17   them.  That little label done by the vendor is not

18   satisfactory to assure us of everything that's on each reel.

19             If I get the microfilm reels, first of all, it's

20   not manageable for me.  I mean, we're talking about probably

21   15 million pages of documents.

22             Number two, the trustee's going to have to put

23   them in a readable, searchable format for himself anyway

24   because he's going to have that expense anyway because how

25   do you -- they won't be Bate stamped.  If I go to trial and

Page 49

1   I have a document what am I going to do?  I'm going to say,

2   it's from microfilm reel screen number 178, you know, from

3   reel -- it's not manageable.

4           In addition to which without it being searchable

5   when you're talking about 50 million pages of documents it's

6   as good as saying, you're not entitled to the evidence.

7           THE COURT:  You know, I remember going on document

8   reviews when I was a young lawyer.  We didn't have digitized

9   documents.  We looked at the documents --

10          MS. CHAITMAN:  Judge --

11          THE COURT:  -- and made copies of what we wanted.

12          MS. CHAITMAN:  -- I doubt very much that you had

13  50 million pages of documents.

14          THE COURT:  Actually, I probably did in the --

15          MS. CHAITMAN:  Okay.

16          THE COURT:  -- first case I did.

17          MS. CHAITMAN:  And was your adversary someone who

18  had been paid a billion dollars in a case that involves 64

19  billion and where your adversary made representations for

20  eight years that everything had been produced --

21          THE COURT:  Okay.

22          MS. CHAITMAN:  -- and now our hands are going to

23  be tied because we don't have the financial wherewithal to

24  prove how dishonest the trustee has been.

25          THE COURT:  All right.  Look, I don't have a

Page 50

1    motion before me.  And I think that Sage is a slight -- is

2    in a different position than Ms. Chaitman's clients because

3    they can identify specific instructions and I think you

4    ought to deal with that issue about whether or not you can

5    produce the corresponding trading records for that day or

6    whatever it is, that it's supposedly shows up on his account

7    statements and then he can compare trading records with

8    account statements.

9              With respect to the 4,700 boxes, you're not going

10   to convince me to simply force the trustee to turn them

11   over.  You're going to have to make a showing through a

12   motion or through negotiation.

13             What I would suggest since you're also appear to

14   be suspicious about the labeling or not suspicious, dubious

15   of its accuracy, is pick a small representative example, 20

16   reels, digitize them and then you can show me why these are

17   relevant or how these are relevant.  If I look at the sample

18   and you don't show it to me, then you'll have to pay for

19   whatever it's going to cost.  It's essentially a cost

20   shifting issue and a relevance issue, I suppose.

21             That's how I would suggest you deal with it in the

22   short term. but otherwise you can make a motion to compel

23   discovery.  But he's going to come back and say, they're

24   irrelevant, but if you really want to look at them you pay

25   for it.  And it's going to be the same issue.

1          MS. CHAITMAN:  Then I would suggest, Your Honor,

2     that you require the trustee to give me all the microfilm

3     and I will go through that process and try to do it myself

4     because I don't want to be in a position --

5          THE COURT:  So you'll pay for it?

6          MS. CHAITMAN:  No.  He's just going to give me the

7     microfilm.  He's not going to digitize it.

8          THE COURT:  Well, he has to copy it --

9          MS. CHAITMAN:  He doesn't have that.

10         THE COURT:  He has to copy it.

11         MS. CHAITMAN:  Well, he can certainly afford to

12     copy --

13         THE COURT:  I think my suggestion is better.  Look

14     through the list, pick a small representative sample, 20

15     reels, look through the reels.  You can -- I assume you're

16     going to look at reels that correspond to dates in your

17     customers' statements if you're talking about treasury bills

18     or treasury trading to see if you can make a connection

19     because that's really what we're talking about.

20         MS. CHAITMAN:  No, it isn't.

21         THE COURT:  Well, that's what I understand it to

22     be --

23         MS. CHAITMAN:  No.

24         THE COURT:  -- because there's no --

25         MS. CHAITMAN:  Can I correct that?

1          THE COURT:  Well, my understanding from what I've

2     heard is that the BLMIS other aspects of the business were

3     always engaged in actual transactions.  They just weren't

4     allocated to customers.  They were for BLMIS.  And your

5     argument is that they were allocated because there are

6     corresponding entries in the customer statements where they

7     should have been allocated.  Isn't that what you're arguing?

8          MS. CHAITMAN:  There are different arguments.

9     With respect to the treasury, I can match up based on Mr.

10    Madoff's testimony as to where the treasuries were I can --

11    and he testified that all of those treasuries, I didn't

12    realize it was 16 billion as Mr. Sheehan said.  Those were

13    purchased with 703 account money.  Mr. Madoff testified --

14         THE COURT:  Wasn't that just because he was

15    putting the cash into treasury bills to get more interest?

16         MS. CHAITMAN:  No, because he had -- he had money

17    -- he held them to term.  He held them to maturity.  They

18    showed up on customer statements.  And they were at Bearn

19    Sterns.  They were at Fidelity.  They were at Lehman

20    Brothers.  They were at Morgan Stanley.

21         But that's an issue post-1992.  I'm focusing on

22    the 1980s, and what we've already found from the 450 odd

23    reels that were produced is we can show that the convertible

24    bond trading of our customers was supported by the ownership

25    of the securities that their statements showed they had.

1           THE COURT:  All right.  Well, you can --

2           MS. CHAITMAN:  But we've only gotten a small

3     portion of those.  I showed -- I included those in my

4     submission to Your Honor before the last -- I -- there were

5     NCSS statements which Mr. Sheehan has conceded are

6     legitimate and there were National Bank of North America and

7     National Westminster Bank statements.  And I assume they

8     were generated the same way.  Computers were linked up and

9     they could be printed out by Madoff of what was being held

10    in custody.

11          So, you know, we've already established that these

12    documents prove that there was real trading done for the

13    customers.  Now obviously that's going to be determined by

14    the fact finder, but we've only gotten a sliver of the

15    documents.  That's why --

16          THE COURT:  Well, you can show that in a motion to

17    compel discovery.  There are a lot of issues that are

18    involved with cross-shifting.  If you can convince me that

19    there's gold or that there may be gold in these unproduced

20    documents, then, you know, fine.

21          MR. SHEEHAN:  Your Honor, I know you don't want to

22    hear more from me, but I just wanted to add one thing.

23          THE COURT:  Yeah.  I'm just -- you know --

24          MR. SHEEHAN:  No.  I don't want to argue.  I just

25    want to -- a point of clarification.  It's our position that

Page 54

1       Ms. Chaitman has all of the 1992 tapes, '92 and prior.

2               THE COURT:  Pre-'92?

3               MR. SHEEHAN:  Yes.  At least according to the

4       markings on them and the --

5               THE COURT:  Well, you know --

6               MR. SHEEHAN:  -- stuff we've found.  So --

7               THE COURT:  -- if she makes a motion for it, you

8       just give me an affidavit saying they've all been produced.

9               MR. SHEEHAN:  All right.  Fine, Your Honor.

10              THE COURT:  You don't have --

11              MR. SHEEHAN:  Fine.  Okay.  I just want --

12              THE COURT:  Because there's no point --

13              MR. SHEEHAN:  -- to be clear.

14              THE COURT:  -- there's no point in arguing back

15      and forth about that.

16              MR. SHEEHAN:  No.  I understand.

17              THE COURT:  Now with respect to Sage, you may be

18      able to work out something to get the --

19              MR. SHEEHAN:  We'll actively try that, Your Honor.

20              THE COURT:  -- records that correspond to the

21      trading directions that were being sent over the years.

22              MR. SHEEHAN:  Yes, Your Honor.

23              THE COURT:  It certainly sounds relevant and --

24              MR. SHEEHAN:  No question, Your Honor.  And we

25      will do that.

Page 55

1           THE COURT:  All right.

2           MR. KRATENSTEIN:  Thank you, Your Honor.

3           THE COURT:  All right.  And give me the order for

4   the second day.  Let's complete that deposition and schedule

5   a trial.

6           MR. SHEEHAN:  Thank you, Your Honor.

7           THE COURT:  All right.  Thank you.

8        (Proceedings concluded at 11:09 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 56

1                    I N D E X

2

3                   R U L I N G S

4

5  IDENTIFICATION                              PAGE

6  N/A

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

1                        CERTIFICATE

2

3        I, Sherri L. Breach, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    _____

8    Sherri L. Breach

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   DATE:  July 27, 2017

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501

| **&** | **1998**  38:14 | 33:7 35:2 47:22 | **accommodate** |
| **&**  4:2,20 5:1,8 | **2** | **45**  4:4 6:25 9:7 | 39:7 |
| 22:2 24:23 41:18 | **2**  3:1 24:16,23 | 32:22 | **account**  36:21 |
| 57:9 | **20**  46:11 50:15 | **450**  52:22 | 37:7,15,24 43:20 |
| **0** | 51:14 | **465**  4:15 | 45:21 50:6,8 |
| **08-01789**  1:6 | **200**  25:24 | **5** | 52:13 |
| **09-01161**  1:13 | **2000s**  35:3 | **5,300**  21:20,23 | **accounts**  16:2,3 |
| 6:23 | **2004**  8:1 | 25:22 27:6 | 20:15 30:7,8 |
| **1** | **2007**  45:22 | **50**  26:7 49:5,13 | 43:15 45:3,4 |
| **1**  27:25 | **2008**  28:18 | **50,000**  8:22 | **accuracy**  50:15 |
| **1,200**  9:16 | **201**  31:3 | **500**  16:10 | **accurate**  57:4 |
| **1,281**  34:2 36:4 | **2010**  23:23 | **500,000**  8:24 | **acknowledging** |
| 39:5 | **2011**  27:25 35:3 | **6** | 41:20 |
| **10,000**  26:10 | **2012**  27:19 29:11 | **600**  31:8 35:15,25 | **action**  43:25 |
| **10-04946**  1:20 | 35:4 | 39:2 40:1,6,22 | **actively**  54:19 |
| **10022**  4:16 5:11 | **2016**  7:1 48:1 | 41:7 | **actual**  7:13 33:12 |
| **10036**  5:4 | **2017**  2:5 16:9 | **602**  32:19 | 33:23 52:3 |
| **10111**  4:5 | 57:12 | **64**  49:18 | **add**  34:2 40:22 |
| **10173**  4:23 | **214**  32:21 | **7** | 53:22 |
| **10:09**  2:6 | **23rd**  6:10 | **7007-1**  3:4 | **added**  35:7 |
| **11,700**  28:8 | **26**  2:5 | **703**  36:21 52:13 | **adding**  40:5 |
| **11501**  57:25 | **263**  32:21 | **70s**  42:13 | **addition**  49:4 |
| **11:09**  55:8 | **26th**  46:11,17 | **7th**  6:25 16:9 | **additional**  31:3 |
| **12**  35:3 | **27**  57:12 | **8** | 40:24 |
| **13**  28:8 | **27.9**  28:21 | **80s**  47:5 | **address**  9:4,9 27:4 |
| **147**  35:5 | **3** | **9** | 30:22 |
| **14th**  21:16 | **3.5**  28:21 | **919**  5:10 | **addressed**  7:13 |
| **15**  28:18 48:21 | **30**  22:21 44:14 | **92**  33:12 35:12 | 43:23 |
| **16**  36:15 52:12 | **300**  57:24 | 54:1,2 | **addresses**  25:16 |
| **168**  34:7 | **302**  16:20 17:3,24 | **98**  30:17 | **adequate**  9:4 36:1 |
| **17**  35:7 43:14,20 | **302s**  20:14 | **a** | **adjourned**  6:7 |
| **178**  49:2 | **330**  57:23 | **a.m.**  55:8 | **admissible**  17:15 |
| **183**  21:16 | **340**  4:22 | **aaert**  57:9 | 18:10 19:20 |
| **19,000**  26:20 | **397**  3:25 57:9 | **ability**  13:23 | **admission**  19:3 |
| 28:10 | **4** | **able**  6:5 15:12 | 20:10,11 41:22 |
| **1980s**  52:22 | **4,500**  39:5,16 41:8 | 16:14 36:5 39:3 | **admit**  41:25 |
| **1982**  45:22 | **4,700**  21:12,19 | 45:15 54:18 | **admits**  36:4 |
| **1985**  43:15,19 | 32:18 33:14 36:3 | **absence**  44:16 | **admitted**  42:14 |
| **1992**  18:21 31:3 | 45:10 50:9 | **absolutely**  33:10 | **advance**  3:7 |
| 33:3,5,9,14 52:21 | **40**  32:16 | **access**  28:5 38:20 | **adversaries**  19:4 |
| 54:1 | **400**  20:16 27:17 | 44:7,8,8 | 30:21 |
| | 27:18,18 29:11 | | **adversary**  6:21,22 |
| | | | 21:11 24:19 31:12 |

[adversary - burdens]                                                                                           Page 2

49:17,19
**advised** 6:4
**advisors** 11:3
**advisory** 22:23
  24:12 30:8 38:1
  41:10 43:15 47:13
**affidavit** 54:8
**afford** 24:22,23
  51:11
**age** 14:14
**agent's** 19:22
**agents** 20:7
**ago** 7:23 12:9 25:3
  26:7
**agree** 16:21 17:16
  40:7
**agreed** 8:20 9:13
**ahead** 13:24
**ahs** 35:19
**al** 1:8,15
**alex** 25:15 32:11
**alice** 27:7
**allegation** 30:12
**allegations** 25:9
**allocated** 52:4,5,7
**allow** 19:13 36:3
**amanda** 4:11
**america** 53:6
**amount** 44:4,6
**analysis** 10:11
  32:15
**andrew** 4:25
  41:17
**answer** 27:3 35:18
  40:18
**anticipate** 40:10
**anxious** 14:9
**anybody** 20:8
**anyway** 10:14
  48:23,24
**apologize** 18:5
  40:20,21

**apparently** 42:13
**appear** 34:1 42:10
  50:13
**apply** 46:2
**approaching** 29:8
**approximately**
  8:22 9:16 28:7
  45:22
**approximation**
  23:10
**april** 16:12 28:18
  31:8 34:25
**arbitrator** 9:23
**areas** 16:25 20:14
**argue** 53:24
**arguing** 52:7
  54:14
**argument** 13:20
  40:11 48:2 52:5
**arguments** 52:8
**arps** 5:1
**arrangement** 8:18
  9:8
**arrived** 25:14
**as400s** 28:13
**aside** 43:2
**asked** 18:17,17
  20:1 22:3 24:12
  39:24 40:14
**asking** 15:8 19:1
  48:6
**aspects** 52:2
**asserted** 7:22
**assertions** 45:8
**assets** 11:20,22
**assistance** 20:2
**assume** 51:15
  53:7
**assumed** 28:5,17
**assumes** 46:6
**assuming** 18:9
**assure** 48:18

**attached** 7:6 42:8
**attorney** 18:18
  19:2 20:1
**attorneys** 4:3,14
  4:21 5:2,9 8:25
  15:12
**august** 6:10 27:25
**available** 9:4
  14:17 34:19 35:1
  44:17
**avenue** 4:15,22
  5:10

**b**

**b** 2:9 4:25 7:6
**back** 8:18 9:6,7,8
  11:7 14:17 19:2
  25:3 27:22 28:24
  30:17 33:3 34:22
  35:2,12 38:13
  40:1,7,13 41:5
  42:9,12 48:3
  50:23 54:14
**backup** 28:14
**baker** 4:2 22:2
  24:23
**bandied** 30:2
**bank** 27:13 37:1
  42:16 53:6,7
**bankruptcy** 1:1
  2:1,11 3:3
**banks** 36:24 37:1
  42:16
**base** 29:13
**based** 22:25 44:15
  52:9
**basically** 13:3
  15:17 24:10
**basis** 30:14
**bate** 48:25
**bear** 7:11 11:16
  27:24
**bearn** 52:18

**begged** 12:16
**beginning** 36:12
**behalf** 14:8
**believe** 12:12,23
  23:1 30:13 34:15
  38:19,22 39:1,19
  39:22,23 44:20
**believed** 39:23
**bell** 4:10
**bernard** 1:7
**bernstein** 2:10
**best** 18:8
**better** 51:13
**beyond** 43:16
  46:1
**billion** 24:22
  36:15 49:18,19
  52:12
**bills** 51:17 52:15
**bits** 26:20
**blmis** 4:3 28:10
  52:2,4
**board** 7:20
**bond** 42:17 52:24
**bought** 45:19,21
  47:4
**bowling** 2:2
**boxes** 9:16 21:12
  21:20,20 28:8
  45:10 50:9
**bragging** 48:9
**breach** 3:25 57:3
  57:8
**break** 32:2 34:9
**breakdown** 45:16
**bring** 12:25
**broadly** 37:13
**broke** 33:25 34:7
  34:11,13
**brothers** 52:20
**broadly** 37:13
**burden** 10:11
**burdens** 8:11

bureau  28:6
business  7:12
  36:17 52:2
buy  36:18 47:6

**c**

c  4:1 6:1 46:12,17
c&s  32:9
call  19:22 20:6
  22:1 32:12
called  12:5 18:25
  32:13 38:16
candid  19:6 39:13
capacity  11:24
  24:3
cards  28:16
career  38:17
careful  30:1 38:15
case  1:6,13,20 9:5
  13:5 19:7 22:7,22
  36:12 41:9 42:5
  44:5,12,15,15
  49:16,18
cases  10:15,16
  21:7 25:11
cash  27:11,11
  32:10,21 36:18
  37:15,17 43:11,19
  52:15
cashing  37:19
categories  34:1
ceretti  6:22 7:19
cert  3:25 57:9
certain  7:3 18:25
  25:18 37:12 47:7
certainly  11:3
  24:22 38:13 42:6
  44:5 51:11 54:23
certificate  57:1
certified  57:9
certify  57:3
cetera  27:10
  32:15 34:10 35:14
  44:3

chaitman  4:13,18
  14:7,7,22 15:8,10
  15:21 16:4,7,18
  17:2,6,10,14,20
  17:22 18:1 19:12
  20:17,19 21:1,13
  21:15,18,25 22:11
  22:17 23:9,17,21
  23:23,25 24:5,8
  24:10,18 25:17
  27:20 28:1 29:12
  30:11 31:15 33:11
  34:7,24 35:1,7,25
  36:9,11 38:15
  39:2,14,25 40:6
  40:21 44:13 47:19
  49:10,12,15,17,22
  51:1,6,9,11,20,23
  51:25 52:8,16
  53:2 54:1
chaitman's  29:1
  32:4 33:24 36:20
  50:2
challenging  7:15
changed  47:7
chart  34:4 35:16
  45:18
charts  33:19 43:9
  43:9
check  22:20
cherry  29:14
chooses  29:18
chose  29:18
claim  8:8
claims  22:25
clarification
  53:25
classic  13:12
claw  8:18 9:6,7,8
  48:3
clear  27:14 29:25
  38:19 54:13

clearly  17:14
  22:17
client  46:23,25
clients  15:13 22:9
  42:13 44:4 45:19
  45:19 46:8 48:3
  50:2
closed  38:1
colleague  6:16
  20:7 44:21
colleagues  45:3
column  32:17
come  13:8 14:17
  15:19 24:16 31:17
  36:1 39:3 40:1
  41:1 45:17 50:23
comfortable  22:8
  41:6
comment  25:8
communication
  11:1
communications
  7:7 10:24 11:2,15
  12:11 13:4
compact  28:15
compare  36:20
  50:7
compel  13:14
  18:23 48:2 50:22
  53:17
compelling  9:25
competitors  12:1
complained  8:11
complaining
  29:23
complaints  25:20
complete  17:11
  18:18 48:10,12
  55:4
compliance  7:3
complied  39:23
comply  8:7 39:21

compromise  9:20
  9:21
compromises  8:10
  8:20
computers  28:13
  28:13 53:8
conceded  33:4
  53:5
concern  9:5 27:3
concerned  19:7
concerning  7:8
concerns  9:9 21:6
  25:16
concluded  55:8
conduct  9:11
conducted  10:25
confer  12:16
conference  3:1,3
  3:6 6:21 22:1
conjunction  28:5
connection  11:12
  51:18
consensual  7:2
consent  9:23
consideration
  24:9
considered  29:12
conspiracy  30:13
contact  38:2
contained  7:23
  23:2
containing  28:11
contending  33:8
contention  22:21
context  35:22
continue  15:23
  27:2 32:24
continued  14:10
  14:20
continuing  35:24
contradict  41:8
contrary  30:22

**control** 8:15
**controversy** 44:4
  44:6
**convertible** 52:23
**convince** 19:5
  50:10 53:18
**copies** 49:11
**copy** 9:15 19:14
  31:13 39:11 51:8
  51:10,12
**corporation** 1:5
**correct** 15:21
  25:18 51:25
**correlation** 37:2,3
**correspond** 51:16
  54:20
**corresponding**
  50:5 52:6
**corrupt** 20:4
**cost** 8:25 13:7,22
  25:23 50:19,19
**costs** 8:15,24 9:2
**counsel** 12:17
**country** 57:23
**counts** 44:22
**couple** 13:1
**course** 10:12 12:9
  12:15 25:19 41:9
  47:24 48:11
**court** 1:1 2:1 6:2,6
  6:8,10,12,14,18
  6:20 7:13 10:2,4,8
  10:19,22,24 11:10
  13:13 14:4,6,19
  14:24 15:2,6,9,14
  15:22 16:5,17,19
  16:23 17:4,7,12
  17:16,21,25 18:3
  18:6,8,22 19:5,16
  19:19,22 20:8,11
  20:13,18,20,22
  21:2,4,17,19,24
  22:10,16 23:4,10

23:14,16,20,22,24
  24:4,6,9,17,25
  25:25 26:4,7,12
  26:16,24 27:1
  32:1,9 33:8 38:7
  38:10,20 41:13,15
  45:10,13 46:8,14
  46:16,21,23 47:9
  47:12,16,18 48:8
  49:7,11,14,16,21
  49:25 51:5,8,10
  51:13,21,24 52:1
  52:14 53:1,16,23
  54:2,5,7,10,12,14
  54:17,20,23 55:1
  55:3,7
**crank** 26:9
**created** 31:5
**creating** 27:7
**credence** 45:1
**credit** 48:4
**criminal** 19:9
  20:3
**cross** 53:18
**curious** 43:17
**custody** 53:10
**customer** 24:12
  30:7 32:10,21
  38:4 47:10,13
  52:6,18
**customers** 22:23
  36:19 51:17 52:4
  52:24 53:13

**d**

**d** 3:25 6:1 56:1
  57:9
**data** 21:16 22:19
  23:2 26:21 27:18
  27:19 28:17 29:13
  33:21 34:25 35:1
  36:1 40:24 44:7
  47:21,23,23,25
  48:9,10,11

**databases** 28:21
**date** 6:8 14:9
  30:20 31:5 38:15
  57:12
**dated** 46:11
**dates** 51:16
**david** 4:9 6:3 14:7
**davinski** 22:20
**davis** 4:18
**day** 3:1 14:4 15:2
  15:6,16,23,24
  24:11 50:5 55:4
**deal** 13:25 15:4
  21:4 50:4,21
**deals** 36:18
**dealt** 21:11
**debtors** 1:9
**decade** 7:18
**decide** 27:10 45:1
**decided** 18:19
**decision** 22:9
**deeply** 25:4
**defendant** 7:17,20
  28:2
**defendants** 1:16
  1:22 4:14,21 7:10
  14:8 15:18 41:18
  44:17
**defense** 42:24
  43:1
**define** 44:19
**deliver** 41:20
**delivered** 37:12
  38:3,23 41:25
  42:12
**delve** 25:4
**demonstrate** 40:2
**demonstrated**
  40:12
**demonstratives**
  31:13
**denied** 20:2

**denying** 7:14
**department** 17:13
**depend** 47:4
**deposition** 3:1
  14:4,10,11,14,20
  15:19,22,23,24
  16:6 17:22 55:4
**designation** 32:11
**desktop** 28:12
**determine** 27:11
**determined** 7:3
  53:13
**difference** 24:6
**different** 8:3,4
  10:19 21:11 27:6
  42:16 47:12 50:2
  52:8
**difficult** 43:6
**digital** 26:15
**digitally** 35:13
**digitize** 50:16
  51:7
**digitized** 26:14
  39:17 49:8
**diligence** 10:25
  11:8,12 12:11
**dime** 23:8
**directed** 18:21
  43:1
**direction** 47:8
**directions** 54:21
**directly** 11:24
  12:5,10 34:20
  35:1
**directors** 7:20
**disagree** 37:9 38:5
**disavows** 40:15
**disclosed** 36:14
**disclosure** 27:25
**disclosures** 27:23
**discover** 14:15
**discovery** 3:3 6:21
  8:14 9:23 13:15

14:20 15:4 21:4,6
26:19 28:23,24
35:22 44:11 50:23
53:17
**discretion**  47:14
**discs**  28:15,15
**discussed**  44:10
**dishonest**  49:24
**dismiss**  7:14
**dismissal**  24:19
**dispute**  6:21 23:5
37:13
**disregard**  44:25
**distinction**  38:24
**district**  1:2
**document**  6:25
17:15 18:9,12,18
19:4,19 22:3
23:19 27:8 29:13
49:1,7
**documents**  7:8,23
8:12,16,18,22,23
9:15,16,19,25
12:18 13:9,16
14:12,15 16:10
20:17 22:12,18,18
23:3 24:1,2,13,14
24:15,20 25:20
28:22 33:15 34:15
35:6,8 42:9 45:8
45:10 46:1 47:22
48:16,21 49:5,9,9
49:13 53:12,15,20
**doing**  10:11 26:10
32:4
**dollars**  24:22
30:10 49:18
**don't**  37:11
**doubt**  46:1 49:12
**dozen**  47:3
**drives**  28:13
**dtcc**  37:22,24 38:5
38:10,11,16 45:5

**dubious**  50:14
**due**  10:25 11:8,12
12:11
**dummy**  45:4
**dump**  29:13

**e**

**e**  2:9,9 4:1,1,7,11
6:1,1 13:1 22:19
23:2 26:19 47:21
47:23,25 48:9,10
48:11 56:1
**earlier**  31:4 34:23
35:12
**early**  19:25 35:2
36:12 47:5
**easiest**  25:22
**easy**  39:9
**ecro**  2:13
**effectively**  11:20
11:25
**effort**  34:18
**efforts**  37:18
**eight**  7:5,23 48:13
49:20
**either**  37:3,14
38:11
**electronic**  8:12,22
28:20 57:9
**electronically**
28:11
**element**  7:12
**eliminated**  8:11
**eluded**  44:13
**emery**  4:20
**emory**  41:18
**engaged**  52:3
**enormous**  48:15
**entered**  29:16
**entire**  23:2 45:24
**entirely**  9:3
**entirety**  19:13
35:15

**entitled**  22:17
24:20 37:10 49:6
**entries**  52:6
**esi**  28:11,20
**especially**  39:20
**esq**  4:7,8,9,10,11
4:18,25 5:6,13
**essentially**  11:22
12:16 23:12 50:19
**established**  53:11
**estate**  20:11
**estates**  19:8
**estimates**  8:24
**et**  1:8,15 27:10
32:15 34:10 35:14
44:3
**evening**  6:5
**event**  11:23 38:25
**everybody**  15:19
**evidence**  30:5,5
42:3,18 44:15,16
44:18 46:3,4,5,12
48:13 49:6
**evidentiary**  46:2
**exactly**  10:23
25:22
**examine**  19:5
**examining**  16:22
**example**  25:13
43:11 50:15
**exception**  16:7
**exchange**  8:14
**exclusive**  36:10
**exercise**  33:3
34:18
**exhibit**  7:6 21:22
46:12,17
**exhibits**  36:20
**exist**  24:15 43:16
**existed**  12:7
**existence**  23:21
**existing**  21:8

**expedition**  13:12
13:17
**expense**  9:20 39:5
40:3 48:24
**expert**  44:14
**explain**  12:17
28:8 33:19
**exploring**  25:15
**exposure**  48:3
**expressed**  25:17
**extensive**  47:21
**extent**  25:18
**extraordinary**
13:7

**f**

**f**  2:9
**face**  13:2
**fact**  11:18 23:1
25:10 27:13 30:7
31:4 36:15 37:4
41:20 42:19 43:1
44:23 45:1 46:10
53:14
**factor**  10:12
**factors**  10:12
43:23
**facts**  22:24 30:15
**factual**  3:6 13:21
13:22 24:11
**failure**  39:21
**fair**  23:10
**faith**  7:1
**fake**  45:3
**family**  37:13
**far**  19:7
**fbi**  17:19 20:2
28:7
**federal**  28:6
**feeder**  11:23
**feel**  22:8,12
**fees**  24:22
**fein**  4:11

**[felt - honor]**

felt 18:20
fidelity 52:19
figure 43:4
filed 6:6 24:15
  25:20
filing 18:25
film 26:8
films 26:4
financial 24:6
  49:23
find 18:1 27:6
  29:19 30:15,15
  32:12 36:22
finder 44:23 45:1
  53:14
finding 42:11
fine 16:17 39:25
  40:4 53:20 54:9
  54:11
finish 29:21
first 6:2,14 18:9
  27:7 31:21 41:21
  41:22 48:19 49:16
fishing 13:12,17
five 17:8 31:20
flat 30:5
flom 5:1
floor 6:18
floppy 28:15
focus 27:12 33:3
  33:24
focused 27:17
focusing 52:21
follow 15:15
  20:14
foot 48:5
force 50:10
foregoing 57:3
form 17:15 19:19
format 39:17
  48:23
forth 10:6 54:15

forward 44:14
found 30:4,5
  35:11 36:2 37:12
  37:14 38:17 42:7
  43:14 47:3 52:22
  54:6
founded 25:10
founder 7:18
four 5:3 7:5
frank 40:19
fraud 44:2
frequently 46:23
friend 30:10
front 29:22
fti 25:16
full 19:4
fund 1:14 11:23
fundamental 23:1
funded 24:21
funds 7:9,11,14
  11:24
funnel 25:6 29:7
further 8:12,21
  19:9 40:3,10

**g**

g 6:1 56:3
gain 35:23 40:16
general 20:14
generated 53:8
geraldine 4:7 6:16
give 25:7 27:7
  31:14 33:13 37:15
  39:8,12 45:1 46:7
  46:23 48:14 51:2
  51:6 54:8 55:3
given 14:13 30:16
  35:25 38:14 40:24
  40:25 44:9 48:4
giving 39:4,14
  46:8
global 1:14 7:18
global's 7:20

go 10:13 13:24
  18:24 19:2,13
  22:12 23:7 26:18
  27:21 29:4,14
  32:25,25 39:16
  40:6,7,8,17 48:25
  51:3
goes 34:22
going 10:14 13:14
  13:19,20,21 16:5
  17:8,17 19:3 23:5
  24:19 25:21 29:20
  35:23 37:7,22
  38:4,13 39:7
  40:16 41:10 45:17
  48:22,24 49:1,1,7
  49:22 50:9,11,19
  50:23,25 51:6,7
  51:16 53:13
gold 53:19,19
goldenberg 1:21
  6:2
good 6:19 7:1
  10:3,4 15:5 34:14
  41:17 49:6
gotten 53:2,14
government's
  19:7
great 17:23
green 2:2
grosso 7:19
group 4:14 6:24
  14:8
guarded 12:2
guess 13:18 16:2
  18:8 39:9
guys 18:13

**h**

h 1:11,18
half 24:14 47:3
hand 28:7,7 31:13
  32:8 35:23

hands 49:22
happened 12:25
  28:24 29:6 37:2
  37:14,21 44:2
  45:24
happens 25:13
  27:5 29:22
happy 20:6 32:5
  40:17,17
hard 9:15 21:25
  28:13
hardvac 36:13
harken 25:2
health 14:13
hear 24:25 41:24
  53:22
heard 23:13 36:8
  40:23 41:14,22,23
  52:2
hearing 21:7,9
  29:6 42:9 44:21
hears 30:25
heavily 17:3,23
heck 39:15
held 42:14 45:19
  45:21 52:17,17
  53:9
helen 4:18 14:7
help 42:4,23
hiding 48:13
high 44:6
hire 25:15
history 19:25 23:4
  25:5,12 29:20
  39:21
hits 12:23
hold 14:10 47:6
holding 41:5
holdings 6:25
hon 2:10
honor 6:3,11,15
  6:19 10:3 12:4
  14:2,3,7 15:1,11

16:8,16 17:10
18:4,16 19:1,6
20:21 21:3 23:12
25:2,13 27:2,8,24
30:13,20,23 31:11
31:14,25 32:16,23
36:1,2 37:8,11
39:3,8,19 41:1,6
41:12,14,16,17
43:25 45:9 47:15
51:1 53:4,21 54:9
54:19,22,24 55:2
55:6
**honor's** 27:3
35:18
**hope** 29:25
**hostetler** 4:2 22:2
24:23
**house** 41:11 43:14
43:20
**huh** 22:10
**hundred** 13:15
**hundreds** 26:21
28:2
**hutmaker** 44:21

### i

**idea** 23:18 33:22
**identification**
56:5
**identify** 13:15
31:3 50:3
**identity** 32:17
**ignore** 29:18
**ignores** 25:10
**impact** 22:9
**importance** 43:24
43:25 44:11
**important** 14:14
16:11 38:24 44:12
**inaccurate** 42:19
**inception** 22:19
**inclined** 15:23

**include** 28:12
**included** 38:14
53:3
**including** 7:12
34:15 42:16,17
**incomplete** 43:18
**incorporation**
38:17
**incumbent** 44:17
**incur** 40:3
**indicated** 15:11
**indiscernible**
11:23 22:2 25:5
36:15,19,22 37:1
45:21
**indisputable** 7:16
30:16
**individual** 15:11
**information** 7:11
7:17 8:8,14 12:3,5
21:8,8 28:11 36:5
36:10 39:2,4
**initial** 27:23,25
**innocuous** 13:3
**inquiry** 33:24
**insists** 9:11
**instructing** 47:10
**instructions** 42:21
46:9,12,24 47:1,4
47:6 50:3
**intended** 15:24
**intends** 9:24
**interest** 29:3
52:15
**interested** 12:2
34:16 41:24
**interesting** 34:2
43:2,13
**interrupt** 23:15
**interrupting** 18:5
**introduced** 7:19
**invest** 11:24

**investigated**
11:19
**investigation** 8:2
20:5 28:6
**investment** 1:7
24:12 30:8 38:1
41:10 43:15 47:13
**investments** 11:3
11:21
**investor** 1:4
**investors** 22:23
**involved** 13:8
16:1 53:18
**involves** 44:5
49:18
**involving** 17:12
**iron** 39:10
**irrelevant** 10:14
50:24
**irving** 1:11,18
**issue** 9:9 10:8,16
10:17 14:20 15:4
15:6 16:19 17:12
18:21 20:9 21:12
50:4,20,20,25
52:21
**issued** 8:1
**issues** 13:5 43:24
44:11 53:17
**i'm** 28:1

### j

**j** 4:8,9
**jacobs** 48:7
**january** 16:9
**judge** 2:11 16:9
21:15 22:1,14
23:18 29:23 30:25
31:19 34:23 39:20
39:22,23 47:19
49:10
**judgment** 3:7
**july** 2:5 21:16
46:11 57:12

**june** 6:25 46:11
46:17
**justice** 17:13
**justify** 39:5

### k

**kelley** 20:7
**key** 7:8
**kind** 12:3 30:3
32:18,20
**kinds** 12:17
**kingate** 1:14 6:12
7:9,18,20 10:20
11:2,12,15,19,20
11:21,25 13:5,10
**kingate's** 11:16
**knew** 12:2
**know** 10:17,20
11:4 12:19 15:16
16:2 17:4,17 18:8
18:11,11,13,13,21
19:8,11,14,25
20:7 21:6 22:13
22:25 23:4 24:18
25:23 26:20,22
27:20,22,23 29:5
29:20 31:1 32:12
33:7,14,22 34:24
35:20 36:25 39:13
39:17,20 40:16
42:5 43:3,22
45:12 48:12,16
49:2,7 53:11,20
53:21,23 54:5
**knowledge** 7:13
11:16 16:2 40:11
40:13,15 47:21
**knowledgeable**
22:7
**known** 36:11
**knows** 25:13
43:25
**kratenstein** 4:25
20:21 31:14 37:7

40:22 41:14,16,17
45:11,14 46:10,15
46:17,20,22,25
47:11,15,17 55:2
**kwon**   5:13

**l**

**l**   1:7 3:25 56:3
57:3,8
**label**   48:17
**labeled**   22:6
**labeling**   50:14
**lack**   13:6,7
**lacks**   8:6
**laptop**   28:13
**large**   4:14 14:8
44:1
**late**   6:4 42:13
**lawyer**   22:8 49:8
**lawyers**   11:7 12:6
25:17,19
**leads**   25:8
**learned**   23:19
**leaves**   18:14
**led**   23:1
**ledger**   32:11,21
**left**   32:8
**legal**   24:22 57:22
**legitimate**   53:6
**legwork**   37:8
**lehman**   52:19
**length**   17:23
**letter**   6:14,20 7:6
10:6 18:25 22:4
29:24,25 36:13
42:9 46:10,18
**letters**   47:2
**library**   26:8
**life**   44:5
**lifetime**   26:22
**light**   39:20
**limited**   28:12
**linked**   53:8

**liquidate**   42:21
**liquidated**   37:16
42:1,20 45:6 46:6
**list**   8:21 13:9
21:13 43:12 51:14
**listing**   20:23
**literally**   12:9
**litigated**   10:15
**little**   10:19 21:7
37:7 48:17
**lives**   22:11
**llc**   1:8
**llp**   4:2,13,20 5:1,8
**local**   3:3
**location**   9:19
**locations**   27:7
**long**   12:15 16:6
19:25 34:9 35:17
45:23
**longest**   29:12
**look**   13:6,16
18:15 19:3 21:13
22:13 23:7,25
25:16,17 26:24
27:11 29:14 31:2
31:3,9 32:19
33:20 34:3 35:13
35:24 36:2,3,5
40:1 46:11 49:25
50:17,24 51:13,15
51:16
**looked**   25:19,20
26:9 30:18 31:7
36:2 39:17 47:23
47:25 49:9
**looking**   25:5
30:11,24 34:16
46:21
**looks**   13:17 37:23
**loss**   32:13
**lot**   25:23 33:21
35:19 39:4 40:24
48:3 53:17

**love**   42:3,5,21

**m**

**m**   2:10 5:6
**machine**   26:8
**madison**   4:22
**madoff**   1:7 3:1
7:19 10:17,22,25
11:9,16,16,23,24
12:1,12 14:4,16
16:13 18:12,12
20:8 22:22 33:4
34:8 37:10,15
38:20 40:7,11,19
41:21,25 42:1,12
44:2 45:1 46:9,24
47:1 52:13 53:9
**madoff's**   14:9,13
31:4 38:23 42:10
42:15,19 52:10
**magistrate**   16:9
22:14
**mails**   13:1
**main**   27:12
**majority**   22:15
29:2
**making**   22:9 37:3
37:25 38:6
**manageable**   48:20
49:3
**management**   7:9
32:14
**manager**   7:17
11:18,20
**manner**   13:25
**manzke**   7:19
**market**   37:25
38:6
**markings**   54:4
**marshall**   4:8 6:15
**massive**   14:11
48:15
**match**   52:9

**materials**   28:19
**matter**   6:2,7,12
42:23
**mattera**   4:8 6:15
6:15,19 14:3
**maturity**   52:17
**mbna**   42:17
**mcdermott**   4:20
41:18
**meagher**   5:1
**mean**   10:11 13:13
16:15 17:5 19:16
25:18 26:12 37:5
48:20
**means**   26:2 35:19
**mechanism**   11:22
**media**   26:20
28:10
**meet**   12:16
**memory**   28:16
**mere**   37:4 42:25
**met**   47:1
**michael**   5:13
**microfiche**   28:14
**microfilm**   16:10
25:21 28:14 31:2
34:5 42:12 48:14
48:19 49:2 51:2,7
**microfilms**   33:21
**million**   22:21
24:16,23 28:21
44:14 48:21 49:5
49:13
**millions**   30:10,10
**mind**   7:12
**mineola**   57:25
**minimum**   40:14
**minions**   26:10
**minute**   21:5 28:8
41:2
**minutes**   17:8
**mistake**   40:20

**moment** 25:3,7
**money** 10:13
  25:24 35:19,24
  36:17 52:13,16
**morgan** 52:20
**morning** 6:19
  10:3,4 41:17
  43:10 45:17,18
**moss** 21:11 29:23
  30:25 34:23 39:20
  39:23
**moss's** 16:9 22:14
  39:22
**motion** 7:14 13:14
  13:19,24 40:19,22
  41:1 48:2 50:1,12
  50:22 53:16 54:7
**motions** 3:7
**mountain** 39:10
**move** 9:24
**murphy** 6:4

**n**

**n** 4:1 6:1 56:1,3,6
**name** 11:12
**narrow** 8:12,13
  8:17 45:16
**narrowed** 8:21
**narrowing** 25:6
**national** 38:16
  42:16 53:6,7
**ncss** 38:17,22,23
  53:5
**necessary** 24:24
**need** 13:20,22
  22:12 31:19 41:3
  45:7,23
**negotiate** 9:8 38:3
  38:9
**negotiating** 12:6
**negotiation** 50:12
**network** 28:14
**nevel** 15:15

**never** 18:12 22:22
  25:19 41:23 45:5
**nevertheless** 8:9
**new** 1:2 2:3,3 4:5
  4:16,16,23,23 5:4
  5:4,11,11 14:12
  14:15
**night** 23:19
**non** 6:24
**normally** 25:11
**north** 53:6
**note** 42:24
**notion** 30:12
**notwithstanding**
  30:12,21
**number** 20:16
  21:20 36:20 38:12
  48:22 49:2
**numbers** 7:4
**numerous** 8:10
**ny** 4:5 57:25

**o**

**o** 2:9 6:1
**object** 37:11
**objected** 8:6 35:7
**objection** 14:25
  16:16 35:6
**objectionable**
  18:1
**obtain** 7:3
**obviously** 18:11
  18:17 22:13 43:2
  44:1 53:13
**occur** 46:3,5
**occurred** 19:24
  42:25 43:3 45:6
**odd** 52:22
**offered** 8:15,20
  9:8,13,18
**offering** 9:21
**office** 29:1 38:21
  38:23 40:13

**officer** 7:21
**official** 18:10
**oh** 10:10 21:20
  33:10 46:16
**okay** 11:10 14:1
  15:2 16:18 17:14
  19:21 20:13 21:1
  21:2,18,24,25
  23:9,16,17,20,22
  24:17 26:2 31:23
  32:7 34:25 39:25
  41:13 45:22 49:15
  49:21 54:11
**old** 57:23
**once** 47:1
**ones** 33:17 34:1
  34:10,12,16 38:13
**onus** 41:1
**open** 34:9
**opened** 37:15
**operate** 27:22
**operation** 7:9
**opportunity**
  16:12,13 40:9
  45:7
**opposed** 10:9
**order** 7:13 9:25
  16:9 20:23 22:14
  39:22 55:3
**orderly** 29:17
**orders** 9:5 29:16
  29:17 39:22
**ought** 50:4
**outlandish** 30:12
**outset** 8:1
**outside** 22:5,6
  38:2
**oversight** 11:21
**ownership** 52:24

**p**

**p** 4:1,1 6:1
**page** 33:1,2 34:4
  34:12 56:5

**pages** 34:6,7
  48:21 49:5,13
**paid** 49:18
**paper** 28:10,19
**parameters** 12:8
**park** 4:15
**part** 11:4 23:12
  39:21
**particular** 37:7
**particularly**
  13:21
**parties** 5:9
**party** 6:24 30:6
  44:24
**pause** 6:13 14:5
  31:24 46:13,19
**pay** 13:18 23:5
  24:1,23 35:20
  50:18,24 51:5
**pays** 8:23
**pdas** 28:15
**pending** 20:3
  40:19
**people** 15:25
  17:17 20:15 22:2
  25:15 28:3 29:3
  31:4
**percentages** 34:11
**period** 29:12
  42:15 45:23,24
**permission** 14:18
**permit** 30:23
**persists** 7:15
**perspective** 15:10
  35:9
**ph** 22:20 36:13
  44:21
**physical** 9:19
**picard** 1:11,18
  6:22 22:25
**picard's** 11:7 12:6
**pick** 29:15 50:15
  51:14

picower   5:9 20:23
pie   34:4 35:16
    43:9
pig   39:15
place   11:22 25:11
    30:7 33:12,23
    35:22 38:8
plaintiff   1:12,19
    13:8
players   7:8
plaza   4:4
pmr   32:13,14
point   19:6 24:19
    27:12 30:14 34:25
    39:15 41:4 48:2
    48:13 53:25 54:12
    54:14
poke   39:15
ponto   4:7 6:17
ponzi   27:16 36:17
portfolio   32:13
portion   53:3
portions   18:20
pose   15:12
position   23:11
    24:11 33:17 34:5
    47:13 50:2 51:4
    53:25
positions   32:20
    34:9 42:20 47:7
possession   28:5
    28:18
possible   42:22
    45:15
post   33:14 43:19
    52:21
posted   22:19
potential   13:7
potentially   9:17
    20:4
practical   14:10
pre   21:8 54:2

predecessor   38:16
predicated   27:12
    31:4
preponderance
    46:3
present   17:15
preserved   28:17
preset   30:12
previously   15:11
print   38:21
printed   38:22
    53:9
printer   38:21
prior   9:1 11:4
    33:11 39:22 48:4
    54:1
prison   15:20
privilege   9:1,3
probably   26:20
    48:20 49:14
problem   21:15
procedure   14:25
    18:22,24
proceeding   6:22
    6:23 7:10,24 8:5
    21:11 24:20
proceedings   55:8
    57:4
process   29:17
    33:2 51:3
processed   32:3,6
    32:17,18,19 33:1
    34:13 35:12
produce   8:16,23
    9:25 13:16 23:6
    26:20 29:15 50:5
produced   8:3 11:1
    11:13,13 12:7,14
    16:10,12 22:14
    33:7 35:5 38:10
    38:12,25 43:5,7
    43:14 45:15 48:8
    49:20 52:23 54:8

producing   32:20
product   27:9
production   8:24
    9:1 11:5 18:23
    21:12 43:18
productions   7:22
    7:25 8:2 14:16
profit   32:13
profits   48:4
proportionality
    35:19,22 43:22
proposals   9:2
propose   21:14
    23:24
proposed   7:24 8:4
    8:10,12,13 9:12
    9:22
proposing   14:19
proprietary   37:25
prosecutions   19:9
    20:3
protection   1:4
protections   9:4,6
protective   9:5
    29:17
protestations
    30:22
proud   48:9
prove   30:18 45:3
    46:1 49:24 53:12
proved   24:13
proves   30:21
provide   20:23
provided   8:7
    22:20 23:18
provision   9:7
provisions   9:6
public   44:1
pull   21:14
purchased   22:22
    24:12 27:15 36:16
    36:21 37:5,6
    52:13

purpose   15:19
    19:7
pursuant   3:3 16:8
    22:14
put   26:8,19 31:5
    35:2 39:17 40:21
    40:25 43:2 47:22
    48:22
puts   44:14
putting   39:6 40:3
    52:15

q

question   16:13,14
    18:17 19:1 35:18
    36:18 37:10 54:24
questioning   14:16
    17:9
questions   15:12
    15:16,25 16:1
    20:14 22:3 43:20
quickly   43:23
quite   43:25
quoting   28:4

r

r   2:9 4:1 6:1 56:3
raising   11:20
ran   11:24 35:5,8
random   34:17
rca   42:17
reach   6:5 7:1
read   19:12,12,13
    21:10 26:22 27:24
readable   48:23
readily   33:18
real   19:6 40:15
    44:16 53:12
reality   11:17
realize   19:1 24:15
    28:1,6 48:11
    52:12
really   22:12 25:15
    44:16 48:16 50:24
    51:19

**reason** 12:12,23 18:17,25 19:10 29:6 40:2
**reasons** 18:19 43:18 44:12
**recall** 16:8 48:1
**recognize** 40:24
**record** 13:21,22 30:18 32:21 33:17 34:5 36:4 38:22 40:10 44:20,22 57:4
**records** 27:14,14 28:10 29:24,24 30:1,2,16 31:1 33:11 34:10,19,21 37:23 38:6,10,18 38:25 40:14 42:10 42:15,19 43:5,6 43:11,13 45:2,2,5 45:14,24 48:6 50:5,7 54:20
**redacted** 17:3,6 17:24
**reel** 48:18 49:2,3
**reels** 16:10 20:16 25:22 34:5 47:22 47:23,24 48:15,19 50:16 51:15,15,16 52:23
**reference** 34:23 38:14
**referred** 36:14
**refused** 9:23 29:12
**refuses** 8:23
**refute** 47:20
**regard** 36:24
**regarding** 3:6 6:21 13:22 15:16
**regardless** 42:25
**regularly** 47:3

**rejected** 8:19 9:20 30:14
**relate** 33:22
**related** 8:14
**relating** 11:3,8,15 12:11
**relationships** 7:12
**relevance** 7:15 10:9,10 13:6,7 50:20
**relevant** 7:16 9:17 11:4 12:11,13,19 12:24 20:9 50:17 50:17 54:23
**relying** 22:8
**remaining** 9:9
**remember** 15:14 48:7 49:7
**remembered** 19:23
**report** 17:11 18:10 32:8
**reporter** 57:9
**reports** 16:20 32:7,14 33:1,18 43:20
**represent** 19:11 24:2 33:14 34:3
**representations** 49:19
**representative** 13:1 32:24 34:14 35:16 50:15 51:14
**represented** 41:9 48:7
**representing** 15:18 41:8
**represents** 21:22 31:6 34:6
**request** 6:7
**requesting** 6:20
**requests** 7:4,4,7 8:3 9:12,18 10:1

**require** 14:16 37:7 51:2
**requires** 30:1
**research** 35:24
**resolution** 7:2
**resolve** 42:4
**resolved** 9:22
**resolving** 44:11
**resources** 8:7 10:7 10:8,12 43:24 44:10
**respect** 28:19 50:9 52:9 54:17
**respectfully** 6:7 19:2 36:6
**respond** 34:19 41:4
**response** 7:25 8:2 8:19 12:20
**responsive** 7:16 7:23 8:16 9:17,25
**responsiveness** 9:1,10
**rest** 41:3
**restore** 25:24,25 26:12,14
**result** 29:19
**resulting** 8:21
**reversing** 25:5
**review** 8:17,25 9:10,14,18 14:11 43:12
**reviews** 49:8
**right** 10:21 14:22 15:3 16:17,23 19:18 20:12,13,18 20:22,25 22:16 24:20,25 26:6,15 27:4,17 29:10 30:4,5,24 31:2,10 32:5,8 33:13,15 35:8,23 36:7,23 37:3,14,17,20,22

39:3,14 41:4 45:20 47:12,16 49:25 53:1 54:9 55:1,3,7
**road** 57:23
**rockefeller** 4:4
**role** 11:21
**roll** 26:8
**room** 22:19 23:2 27:18,19 34:25 35:1 36:14 47:21 47:23,24,25 48:9 48:10,11
**roth** 5:8
**rule** 3:3 6:25 8:1 9:7 27:23
**rules** 27:22
**ruling** 18:11
**run** 8:21

**s**

**s** 4:1 6:1 56:3
**sage** 4:21 41:18 50:1 54:17
**sages** 41:20,25 42:20 43:1 45:21 47:8,9
**sample** 32:24 34:14 35:16 50:17 51:14
**sandra** 7:19
**sat** 28:25 29:9
**satisfactory** 48:18
**savings** 44:5
**saw** 17:4,21
**saying** 24:16 35:17,18,21 49:6 54:8
**says** 18:12 27:20 28:4 30:25 34:4 40:6 41:2 44:14
**schedule** 55:4
**scheme** 27:16 36:17 42:2

schulte   5:8
schwartz   5:6 10:3
    10:5,5,10,21,23
    11:6,11 14:2
scope   44:2
screen   49:2
search   7:23 8:3,4
    8:13,17,21 9:13
    11:19 12:8,20
    25:21 26:19 31:9
    35:5,7,10,14
searchable   26:15
    48:23 49:4
searched   29:10
    35:9
searches   10:7
    12:22 13:2
second   55:4
securities   1:4,8
    22:22 27:15 32:10
    32:21 38:17 42:17
    43:11,19 45:20,22
    45:25 47:5 52:25
security   24:11
see   13:3 19:6,10
    21:14 31:2 32:6
    32:16,17,19,19,25
    33:6,16 34:4 42:3
    42:6,22 45:7,24
    51:18
seeing   27:8
seek   7:7 14:18
seen   12:18 22:3
    33:19 42:3,8 43:9
    45:11,16
sell   38:3
sense   11:14
sent   54:21
separate   14:19
    38:1
separately   15:4
served   6:24 7:20
    14:23

set   10:6 14:9,11
    18:9
seth   5:6 10:5
settled   19:8
seven   7:5 24:14
shadow   46:1
sharing   12:3
sheehan   4:9 6:3,3
    6:9,11 15:1,5
    16:16,21,25 17:20
    18:4,7,16,24
    19:18,21,24 20:10
    20:12,25 21:3,22
    23:11,12,15 25:1
    25:2 26:2,6,10,13
    26:17,25 27:2
    31:17,19,22,25
    32:2,10 33:10
    38:8,12 41:19
    45:2 46:5 47:20
    52:12 53:5,21,24
    54:3,6,9,11,13,16
    54:19,22,24 55:6
sherri   3:25 57:3,8
shifting   13:22
    50:20 53:18
shop   12:1
short   50:22
shortly   6:6
show   29:5 30:3
    31:11 33:2,12
    37:6,20,20,22
    38:4,5,6 42:1,4,10
    42:11,22 45:4
    46:7 47:10 50:16
    50:18 52:23 53:16
showed   52:18,25
    53:3
showing   35:16
    42:11,18 46:4,5
    50:11
shown   30:20
    35:15

shows   34:13 37:11
    50:6
side   32:8 41:11
    44:1
significantly
    22:11
simply   22:8 50:10
sipc   24:2,23 30:13
sit   26:18,22
six   33:7
skadden   5:1
slate   5:1
slight   50:1
sliver   53:14
small   50:15 51:14
    53:2
smb   1:6,13,20
    6:23
solutions   57:22
somebody   39:10
soon   42:22
sooner   40:8 42:6
sorry   18:6,7 45:14
    46:14
sort   29:6
sound   16:3
sounds   15:5 16:23
    17:8 54:23
sources   28:10
    30:6
southern   1:2
spans   25:6
speaker   31:16,18
    31:20,23
specific   7:8 8:5
    13:9 15:12,25
    16:1 20:15 50:3
specifically   12:17
spend   35:24
spent   30:11
spread   29:2
square   5:3

stacey   4:10
stake   43:24
stamped   48:25
standard   46:2
stanley   52:20
start   25:6,14
    28:23,24 33:5,9
    41:19
started   32:4 37:17
    42:2
state   7:11 26:14
stated   9:15
statement   30:4
    34:20
statements   47:10
    50:7,8 51:17 52:6
    52:18,25 53:5,7
states   1:1
status   3:6
sterns   52:19
stipulation   3:6 6:5
stock   32:20 33:17
    34:5,9 36:4 37:16
    41:20,25 42:1
    45:5,6
stocks   37:12,21
    38:3 42:12,14,17
    46:6
stood   15:15
storage   28:14
stored   28:11,20
strategy   47:6
streamline   42:23
strike   48:5
stuart   2:10
study   43:10
stuff   10:13 23:6
    29:15 32:18 39:11
    54:6
subject   8:18
submission   36:9
    53:4

[submit - trustee]                                                                    Page 13

**submit** 36:6 40:10
**subpoena** 6:25 7:4
  7:5 8:1,7
**substantially** 7:14
**substantiate** 8:8
  30:6
**suggest** 40:5,18
  50:13,21 51:1
**suggested** 39:8,24
**suggesting** 33:11
**suggestion** 51:13
**suit** 24:15
**suite** 57:24
**summary** 3:7
  33:18
**supported** 52:24
**suppose** 17:18
  19:22 20:9 50:20
**supposed** 29:3
**supposedly** 50:6
**sure** 13:4 31:20
  41:15 48:7
**suspicious** 50:14
  50:14
**switched** 45:20
**system** 38:2

**t**

**tab** 46:14
**take** 14:12,14
  36:19 43:23 47:19
**taken** 24:11 34:23
**takes** 25:11 35:22
**talented** 25:15
**talk** 12:1 13:11
  15:2 40:7
**talked** 15:17
  25:14
**talking** 21:20
  26:21 30:11 43:11
  48:15,20 49:5
  51:17,19
**tape** 22:6 31:5

**tapes** 21:23,24
  25:12 27:6,11,17
  27:18,18 28:15
  29:11 31:8 34:8
  35:2,11,15 39:6,9
  39:11,16 40:4
  41:3 54:1
**task** 27:7
**technical** 8:14
**technology** 26:1
**ted** 48:7
**tell** 13:14 24:13
  31:9 41:6
**telling** 35:12
  40:12
**ten** 7:21 27:13
**terabytes** 26:21
  28:21
**term** 30:1 37:13
  50:22 52:17
**terms** 7:24 8:3,4
  8:13,17,21 9:12
  9:13 12:20 26:19
  35:5,7,10,14 44:7
**terribly** 16:5
**test** 45:8
**tested** 22:23
**testified** 52:11,13
**testify** 20:8
**testimony** 52:10
**thank** 6:11 10:2
  14:2,3 21:3 31:25
  32:1 41:12,16
  45:9 47:17 55:2,6
  55:7
**thanking** 41:19
**theory** 11:14
**thing** 17:2 21:25
  25:23 33:16 36:24
  43:8 53:22
**things** 11:6 13:23
  19:15 29:1 31:8
  32:20 36:8 41:23

**think** 10:25 12:18
  13:9 14:14 15:14
  16:19,25 22:17
  24:21 25:7,8 27:2
  29:24 35:24 36:13
  38:23 39:13,20
  40:18,18,19,25
  41:3 43:13,18
  44:12 45:7 50:1,3
  51:13
**third** 5:10 30:6
  44:24
**thoroughly** 35:9
**thought** 15:24
  21:12 33:6
**thought's** 19:24
**thousands** 12:22
  12:22 28:2 30:9,9
**three** 16:24,25
  20:13 22:1 27:6
  33:21
**tied** 14:21 49:23
**time** 14:21 21:7,8
  23:8,17 26:5
  29:12,23 35:6
  36:21 39:8 40:12
  41:21,22 42:15,21
  45:23,24 47:4,7
  47:19
**times** 5:3
**today** 6:7,20
  12:25 29:19 35:17
  38:20 39:19,25
  40:18,23
**told** 18:13 20:9
  22:5
**tons** 43:6,6
**topics** 3:1 14:4
  15:3,7,16 20:14
  20:24
**totaling** 28:21
**totally** 10:14

**track** 9:12
**trades** 40:13
  42:25 43:3 45:5
  46:4 47:9
**trading** 29:24,24
  30:1,2,3,7,17 31:1
  32:21 33:12,17,23
  34:5,20 37:19
  41:10 43:1 44:16
  44:20,22 46:8,24
  46:25 47:3,14
  50:5,7 51:18
  52:24 53:12 54:21
**transactions** 52:3
**transcribed** 3:25
**transcriber** 57:7
**transcript** 57:4
**treasuries** 36:10
  36:11,16,19,21
  37:4 52:10,11
**treasury** 51:17,18
  52:9,15
**tremont** 5:2 6:24
  7:15,16,17,21,22
  8:6,11,15,16,19
  8:20,22 9:4,10,20
  9:23,25 10:5,6,15
  10:17 11:2,15,17
  11:22,25 12:10
  13:10
**tremont's** 7:7,18
  9:15 11:8
**trial** 20:5 48:25
  55:5
**tried** 32:2
**trouble** 19:3
**true** 36:24 57:4
**truly** 12:13
**trustee** 1:11,18
  4:3 6:4,16,24 7:1
  7:24 8:4,10,12,13
  8:15,17,23 9:7,12
  9:13,18,22,24

14:23,24 16:8
20:1 23:6,6 24:10
24:21 25:9 28:4
34:18 35:19 36:4
38:11 40:3 41:2
42:18 44:7,14,24
49:24 50:10 51:2

**trustee's** 7:6 8:1
9:2,17,19 22:21
23:11 48:22

**try** 27:4 42:10
51:3 54:19

**trying** 7:1 43:4

**tune** 24:21

**turn** 10:14 50:10

**turned** 11:7 12:10
37:17

**turning** 43:22

**turns** 14:15 30:25

**two** 14:4 15:2,6,24
19:8 20:7 31:21
33:19 36:8 39:21
48:22

**types** 32:8

**u**

**u** 56:3

**u.s.** 2:1,11 18:18
19:2,7 20:1

**uh** 22:10

**unclear** 43:19

**understand** 10:18
18:16 23:4 24:4,6
27:3,21 33:23
47:14 51:21 54:16

**understanding**
26:1 52:1

**undisclosed** 18:19

**unidentified** 2:13
31:16,18,20,23

**united** 1:1

**universe** 21:19
23:2

**unnecessary** 9:3
9:11

**unprocessed** 32:3
32:7 33:1 34:5

**unproduced**
53:19

**unredacted** 18:4,9

**unremarkable**
37:5

**usage** 30:1

**use** 25:12 47:21

**usual** 20:23 47:13

**utilize** 40:8

**utilized** 27:10

**utilizing** 40:22

**v**

**v** 1:6,13,20

**vast** 22:15 29:2

**vendor** 8:24 22:6
22:7 48:17

**verification** 44:25

**veritext** 57:22

**versus** 6:22

**w**

**wait** 41:2

**want** 13:18 17:7
17:18 18:19 20:4
23:15 27:4 29:25
31:11,15,20,21,22
38:15 41:19 45:3
46:2 50:24 51:4
53:21,24,25 54:11

**wanted** 15:15
33:11 49:11 53:22

**wants** 26:24 40:6

**watch** 39:11

**way** 11:7 13:15
15:3 17:10 20:4
26:11 53:8

**we've** 12:9,16,16
19:25 20:1 25:14
27:9 30:18 35:2
35:25 36:8 38:14

40:24,25 41:22
43:4 44:10 45:11
52:22 53:2,11,14
54:6

**went** 12:21 17:22
26:7 32:14

**westminster**
42:16 53:7

**wherewithal**
49:23

**winded** 35:18

**wish** 43:9

**words** 26:14
33:18 34:17

**work** 27:9 32:4
54:18

**working** 11:6
27:10

**world** 25:23 38:2

**worth** 10:13 36:15

**written** 36:13

**wrong** 29:7

**wrote** 6:14,20

**x**

**x** 1:3,10,17,23
18:12 56:1

**y**

**yeah** 15:14 17:6
17:21 20:12,19
21:17,18 23:9,14
27:1 38:12 46:22
47:18 53:23

**year** 7:2 8:9 12:15
14:12 33:1 47:1

**years** 7:21,23
10:16 12:8,9
24:14 26:7 27:13
48:14 49:20 54:21

**yesterday** 22:1

**york** 1:2 2:3,3 4:5
4:16,16,23,23 5:4
5:4,11,11

**young** 49:8

**z**

**zabel** 5:8

**zealously** 12:2