**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                      Plaintiff,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                      Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                      Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                      Plaintiff,<br><br>        v.<br><br>LEGACY CAPITAL LTD.,<br><br>                      Defendant. | Adv. Pro. No. 10-05286 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

                                            **BAKER & HOSTETLER LLP**
                                            *45 Rockefeller Plaza*
                                            New York, New York 10111
                                            Telephone: (212) 589-4200
                                            Facsimile: (212) 589-4201

                                            *Attorneys for Irving H. Picard, Trustee for the*
                                            *Substantively Consolidated SIPA Liquidation*
                                            *of Bernard L. Madoff Investment Securities*
                                            *LLC and the Estate of Bernard L. Madoff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS ............................................... 2

SUMMARY JUDGMENT STANDARD ................................................................................ 4

ARGUMENT ........................................................................................................................... 5

I.  THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY BLMIS TO LEGACY ................. 5

   A.  BLMIS Made Every Transfer with Actual Fraudulent Intent and in Furtherance of the Fraud ........................................................................... 5

      1.  *BLMIS Was a Ponzi Scheme* ........................................................... 6

      2.  *Legacy Has Presented No Countervailing Evidence* ................... 8

      3.  *BLMIS's Transfers to Legacy Were in Furtherance of the Fraud* ............... 9

   B.  BLMIS Made Transfers to Legacy Within Two Years of December 11, 2008 ................................................................................................. 11

   C.  As a Matter of Law, Legacy Could Not Have Given Value for Fictitious Profits ................................................................................................... 11

II. THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION 550 OF THE BANKRUPTCY CODE AND SIPA section 78fff-2(c)(3) ....................................... 12

CONCLUSION ....................................................................................................................... 13

## **TABLE OF AUTHORITIES**

                                                                                                        **Page(s)**

**Cases**

*In re Agric. Research & Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) ............................................................................................... 6

*Armstrong v. Collins*,
   Nos. 01-cv-2437, 02-cv-2796, 02-cv-3620 (PAC), 2010 WL 1141158
   (S.D.N.Y. Mar. 24, 2010) ................................................................................................... 7

*Bayou Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou*
   *Grp. LLC)*,
   396 B.R. 810 (Bankr. S.D.N.Y. 2008), 439 B.R. 284 (S.D.N.Y. 2010) ........................ 9, 10

*Bayou Superfund, LLC v. WAM Long/Short II, L.P.*,
   362 B.R. 624 (Bankr. S.D.N.Y. 2007) .............................................................................. 12

*In re Bernard L. Madoff Inv. Sec.*,
   654 F.3d 229 (2d Cir. 2011) ................................................................................................ 6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ................................................................................ 11

*Carney v. Lopez*,
   933 F. Supp. 2d 365 (D. Conn. 2013) ................................................................................. 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................ 4

*Chapter 7 Tr. of Big Apple Volkswagen, LLC v. Salim (In re Big Apple*
   *Volkswagen)*,
   No. 11-2251 (JLG), 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ...................... 13

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re*
   *Bayou Grp. LLC)*,
   439 B.R. 284 (S.D.N.Y. 2010) ........................................................................... 7, 9, 12, 13

*Fed. Ins. Co. v. Am. Home Assurance Co.*,
   639 F.3d 557 (2d Cir. 2011) ................................................................................................ 4

*Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*,
   No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)
   (Bernstein, J.) ...................................................................................................................... 8

4842-7870-8317.4

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund)*,
    359 B.R. 510 (Bankr. S.D.N.Y.), 397 B.R. 1 (S.D.N.Y. 2007)..................................................10

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................................4

*McHale v. Boulder Cap. (In re 1031 Tax Grp., LLC)*,
    439 B.R. 47 (S.D.N.Y. 2010)...............................................................................7, 11, 12

*Moran v. Goldfarb*,
    No. 09-cv-7667 (RJS), 2012 WL 2930210 (S.D.N.Y. Jul. 16, 2012)........................................7

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*,
    445 B.R. 206 (Bankr. S.D.N.Y. 2011)..................................................................................6

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. April
    25, 2016) ..................................................................................................................6, 11, 12

*Picard v. Cohmad Sec. Corp.*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)..................................................................................6

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012)..........................................................................5, 6, 10, 12

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011)...............................................................................2, 6, 12

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    548 B.R. 13 (Bankr. S.D.N.Y. 2016), ECF No. 134..............................................................3

*Picard v. Marilyn Bernfeld Trust*,
    Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015)............................................5

*Picard v. Mendelow*,
    Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015)............................................5

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ..............................................................................................8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
    Madoff Inv. Sec. LLC)*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010)..................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard Madoff)*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)..................................................................................6

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   499 B.R. 416 (S.D.N.Y. 2013), 987 F. Supp. 2d 309 (S.D.N.Y. 2013)....................................3

*Ying Jing Gan v. City of New York,*
   996 F.2d 522 (2d Cir. 1993)........................................................................................................4

**Statutes**

11 U.S.C. § 548................................................................................................................................2, 11

11 U.S.C. § 548(a)(1).........................................................................................................................11

11 U.S.C. § 548(a)(1)(A).....................................................................................................5, 6, 10, 12

11 U.S.C. § 548(c) ..........................................................................................................................3, 12

11 U.S.C. § 548(d)(2) ...........................................................................................................................3

11 U.S.C. § 550...............................................................................................................................2, 12

11 U.S.C. § 550(a) ..............................................................................................................................12

11 U.S.C. § 550(a)(1)..........................................................................................................................13

11 U.S.C. § 551.....................................................................................................................................2

15 U.S.C. §§ 78aaa–*lll* .......................................................................................................................1

15 U.S.C. § 78fff-2(c)(3) .......................................................................................................11, 12, 13

**Rules**

Fed. R. Bankr. P. 7056.....................................................................................................................1, 4

Fed. R. Bankr. P. 7056-1........................................................................................................ *passim*

Fed. R. Civ. P. 16.................................................................................................................................9

Fed. R. Civ. P. 56.................................................................................................................................1

Fed. R. Civ. P. 56(a) ...........................................................................................................................4

Fed. R. Civ. P. 56(c)(1).......................................................................................................................4

4842-7870-8317.4

Irving H. Picard (the "Trustee"), trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–*lll*, and the estate of Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of the Trustee's motion under Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Southern District of New York Local Bankruptcy Rule 7056-1 (the "Motion"), for summary judgment as to Count One of the Trustee's Amended Complaint, to avoid and recover the amounts BLMIS fraudulently transferred to defendant Legacy Capital, Ltd. ("Legacy") and for which Legacy failed to provide value.[1] The facts underlying this motion are fully set forth in the Trustee's Statement of Undisputed Material Facts Pursuant to Local Rule 7056.1 ("Stmt.").

## **PRELIMINARY STATEMENT**

This avoidance and recovery action centers on one indisputable fact: transfers of fictitious profits from Legacy's BLMIS customer account, No. 1FR071 (the "Legacy Account"), were made to or for the benefit of Legacy within two years of December 11, 2008 (the "Two-Year Period"). Indeed, Legacy has admitted that, during the Two-Year Period, BLMIS transferred to Legacy $86,505,850 in excess of the principal Legacy deposited with BLMIS (the "Transfers").

These fictitious profits consisted solely of other BLMIS customers' deposits. Although Legacy has made several vague references to the possibility of actual trades in its account, to date, Legacy has pointed to no evidence of any such trades, nor proffered evidence challenging the

---

[1] On June 20, 2017, the Trustee filed a pre-motion conference letter in connection with his request for summary judgment as to Count One of the Amended Complaint as set forth in the Motion. (ECF No. 162.) On June 28, 2017, the parties appeared before this Court in connection with the Trustee's request for leave to file the Motion. During the June 28, 2017 hearing, this Court stated that it would permit the Trustee to file this motion for summary judgment. (Tr. at 13:23-25, ECF No. 166.)

existence of Madoff's Ponzi scheme. As the United States District Court for the Southern District of New York (the "District Court") has recognized, "[s]ince it is undisputed that Madoff's Ponzi scheme began more than two years before the filing of the bankruptcy petition and continued to almost the very day of filing, it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors, i.e., those left holding the bag when the scheme was uncovered." *Picard v. Katz*, 462 B.R. 447, 453 (S.D.N.Y. 2011).

The Trustee has thus satisfied his burden of proof on his *prima facie* case, and, as a matter of law, Legacy cannot establish that it took the Transfers "for value" because such false profits were not on account of a valid antecedent debt. Accordingly, there are no material factual issues in dispute and the Trustee is entitled to summary judgment on Count One of his Amended Complaint.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On December 6, 2010, the Trustee commenced this adversary proceeding against Legacy, Khronos LLC ("Khronos"), and other related defendants seeking to avoid and recover certain transfers from BLMIS to or for the benefit of Legacy under Bankruptcy Code sections 548, 550, and 551 and the New York Debtor & Creditor Law. (ECF No. 1.)

On July 2, 2015, the Trustee filed an amended complaint against only Legacy and Khronos (the "Amended Complaint"). (ECF No. 112.) The Amended Complaint sought to (i) avoid $213,180,068 in transfers to or for the benefit of Legacy, of which $86,505,850 (as previously defined, the "Transfers") comprised fictitious profits transferred in the two years prior to December 11, 2008 (the "Filing Date"), and (ii) recover approximately $6,601,079 in subsequent transfers from Khronos. (Am. Compl. ¶¶ 142, 144, 151.)

2

On July 30, 2015, Legacy and Khronos moved to dismiss the Amended Complaint. (ECF Nos. 115-20.) On March 14, 2016, this Court issued a decision granting Legacy's motion in part and Khronos's motion in its entirety. *See Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016), ECF No. 134. On April 12, 2016, this Court entered an order dismissing (i) the Amended Complaint against Khronos with prejudice; (ii) Counts Two through Seven of the Amended Complaint against Legacy without prejudice; and (iii) Count One of the Amended Complaint without prejudice, except to the extent it sought to avoid and recover fictitious profits transferred to or for the benefit of Legacy on or after December 11, 2006. (ECF No. 137.)

On May 16, 2016, Legacy, the sole remaining defendant, filed its answer to the Amended Complaint (the "Answer"). (ECF No. 139.) Legacy admitted that (i) BLMIS transferred $213,180,068 from the Legacy Account (Ans. ¶ 2; Stmt. ¶ 33); (ii) $126,674,218 of those transfers constituted the return of principal (Ans. ¶ 142; Stmt. ¶ 34); and (iii) during the two years prior to the Filing Date, BLMIS made transfers from the Legacy Account in the amount of $174,000,000 (Ans. ¶ 144; Stmt. ¶ 35). Legacy also purported to preserve its right to assert

> that it is entitled to pre-judgment interest on [it]s state and federal law claims, including tort claims for rescission, and that such pre-judgment interest would constitute an antecedent debt serving as value under 11 U.S.C. § 548(c) & (d)(2) in the event that the opinion of the United States District Court for the Southern District of New York in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416 (S.D.N.Y. 2013), *certification for interlocutory appeal denied*, 987 F. Supp. 2d 309 (S.D.N.Y. 2013), is modified, vacated, reversed or overruled.

(Ans. at 21.)

On January 13, 2017, the parties jointly filed the Stipulation and Order as to Undisputed Transfers (the "Joint Stipulation"), in which Legacy stipulated to each withdrawal from and

3

deposit into the Legacy Account and its predecessor accounts, as reflected in Exhibit A of the Joint Stipulation. (ECF No. 155; Stmt. ¶ 37.)

There is therefore no dispute that Legacy received the Transfers from BLMIS within the Two-Year Period and did not provide value for those transfers.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 7056) provides that summary judgment must be granted, in whole or in part, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Factual positions are proven by either citing the record evidence—including declarations, admissions and interrogatory answers—or showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant need not show the absence of a genuine dispute of material fact with respect to a point "on which the nonmoving party bears the burden of proof." *Celotex Corp.*, 477 U.S. at 325.

When the movant has discharged its burden, the non-movant must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "[T]he nonmoving party may . . . not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

4

Here, in light of Madoff's and his cohorts' allocutions concerning the operation of the Ponzi scheme, Legacy's admissions, and the Joint Stipulation, there is no genuine dispute as to any material fact with respect to the fictitious profits sought in Count One of the Complaint and summary judgment is appropriate.

## ARGUMENT

### I. THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT AVOIDING THE TRANSFERS OF FICTITIOUS PROFITS MADE BY BLMIS TO LEGACY

As this Court has recognized, fictitious profits cases "are strict liability cases unless the law changes." Tr. of Oral Argument at 114:10-11, *Picard v. Marilyn Bernfeld Trust*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015); *see also* Tr. of Oral Argument at 100:19, *Picard v. Mendelow*, Adv. Pro. No. 10-04283 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015) (fictitious profit count is "almost a strict liability count"). This is especially true here, where, by operation of the Answer and Joint Stipulation, there are admissions as to the receipt of the Transfers during the Two-Year Period.

Section 548(a)(1)(A) of the Bankruptcy Code authorizes the Trustee to avoid the entire amount of "any payment" of an interest in property of the debtor made within two years of the filing date with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 548(a)(1)(A); *Picard v. Greiff*, 476 B.R. 715, 725 (S.D.N.Y. 2012). Because there is no genuine dispute regarding BLMIS's (1) payment of fictitious profits within the Two-Year Period to or for the benefit of Legacy, (2) interest in the transferred funds, and (3) actual intent to hinder, delay, or defraud its creditors, summary judgment in the Trustee's favor is proper.

#### A. BLMIS Made Every Transfer with Actual Fraudulent Intent and in Furtherance of the Fraud

The Trustee may avoid as intentionally fraudulent any transfer that BLMIS made within two years before the Filing Date if BLMIS "made such transfer . . . with actual intent to hinder,

5

delay, or defraud" any entity to which the debtor was indebted. 11 U.S.C. § 548(a)(1)(A). Fraudulent intent on the part of the transferor is presumed as a matter of law in cases where the debtor operated a Ponzi scheme. *See, e.g.*, *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. April 25, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Bernard Madoff*), 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015)) ("the Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent"); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'"); *In re Agric. Research & Tech. Grp.*, 916 F.2d 528, 535 (9th Cir. 1990) ("the debtor's actual intent to hinder, delay or defraud its creditors may be inferred by the mere existence of a Ponzi scheme").

      **1.**    ***BLMIS Was a Ponzi Scheme***

There is no dispute that BLMIS was engaged in a Ponzi scheme. This Court has found that "[t]he breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption, particularly in light of Madoff's criminal admission." *Picard v. Chais (In re Bernard L. Madoff Inv. Sec., LLC)*, 445 B.R. 206, 221 (Bankr. S.D.N.Y. 2011); *see also Katz*, 462 B.R. at 453, n.5 ("it is patent that all of Madoff Securities' transfers during the two-year period were made with actual intent to defraud present and future creditors"). The existence of the scheme has also been recognized by the District Court and the Second Circuit. *See, e.g.*, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 125-33 (Bankr. S.D.N.Y. 2010); *Greiff*, 476 B.R. at 718; *In re Bernard L. Madoff Inv. Sec.*, 654 F.3d 229, 231-32 (2d Cir. 2011).

The relevant facts concerning the BLMIS Ponzi scheme are substantiated by the allocutions of Madoff, Frank DiPascali, David Kugel, and several other individuals associated with Madoff's

scheme. In his plea allocution, Madoff admitted to running a Ponzi scheme through BLMIS and that he did not execute trades on behalf of his investment advisory clients. (Stmt. ¶¶ 3-6.) Frank DiPascali, Madoff's chief financial officer and co-conspirator, admitted that '[f]rom at least the early 1990s through December of 2008 . . . [n]o purchases of [sic] sales of securities were actually taking place in [customers'] accounts." (Stmt. ¶ 11; *see also* ¶ 12). David Kugel, a manager and trader at BLMIS, admitted that Madoff ran a Ponzi scheme as far back as the 1970s and that Mr. Kugel falsified records in connection with that scheme. (Stmt. ¶ 14.) Several other former employees have pleaded guilty to, or have been convicted of, federal criminal charges and have admitted in their respective allocutions that Madoff ran a Ponzi scheme and their roles in that scheme. (Stmt. ¶¶ 13-19.) Such guilty pleas and admissions under oath are admissible to prove the existence of a Ponzi scheme. *See Moran v. Goldfarb*, No. 09-cv-7667 (RJS), 2012 WL 2930210, at *4 (S.D.N.Y. Jul. 16, 2012); *Carney v. Lopez*, 933 F. Supp. 2d 365 (D. Conn. 2013); *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp. LLC),* 439 B.R. 284, 305 (S.D.N.Y. 2010) ("*Bayou IV*"); *McHale v. Boulder Cap. (In re 1031 Tax Grp., LLC)*, 439 B.R. 47 (S.D.N.Y. 2010).

Accordingly, summary judgment on whether BLMIS ran a Ponzi scheme is appropriate based on these admissions. *See, e.g.*, *Moran,* 2012 WL 2930210, at *4 (motion for summary judgment granted and based on plea transcript from related Department of Justice action where perpetrator admitted to orchestrating the Ponzi scheme under oath*); Bayou IV*, 439 B.R. at 307-08 (affirming summary judgment on fictitious profits from Ponzi scheme based on testimony of debtor's forensic accountant and guilty pleas of fraudsters); *In re 1031 Tax Grp., LLC*, 439 B.R. at 72 (granting summary judgment in part and concluding that a Ponzi scheme existed with reliance on evidence including the perpetrator's superseding indictment and plea agreements); *Armstrong*

7

*v. Collins*, Nos. 01-cv-2437, 02-cv-2796, 02-cv-3620 (PAC), 2010 WL 1141158, at *24 (S.D.N.Y. Mar. 24, 2010) (motion for summary judgment granted and existence of Ponzi scheme found where evidence was submitted including transcripts from the perpetrator's allocution and sentencing); *Scholes v. Lehmann*, 56 F.3d 750, 762-63 (7th Cir. 1995) (affirming district court's reliance on guilty plea and affidavit of accountant who studied books of the debtor in finding actual intent to defraud). *Cf. Gowan v. Amaranth Advisors LLC (In re Dreier LLP)*, No. 08-15051 (SMB), 2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014) (Bernstein, J.) (denying the *Dreier* trustee summary judgment on the issue of whether Marc Dreier ran a Ponzi scheme because, unlike here, there was no admission, concession or undisputed evidence that he did.)

### 2. *Legacy Has Presented No Countervailing Evidence*

This Court previously noted that, in order to rebut the Trustee's *prima facie* case concerning the existence of the Ponzi scheme, Legacy is required to come forward with evidence that actual trading for BLMIS IA customers existed in the Legacy Account. (Hr'g Mot. J. on the Pleadings, Tr. at 11:17-12:11, ECF No. 154.) To date, Legacy has presented no such evidence.

On June 28, 2017, the parties appeared before this Court in connection with the Trustee's request for leave to file a motion for summary judgment. Legacy opposed this request and claimed that it had come into possession of new facts that brought into question whether BLMIS was engaged in actual trading thus making the Trustee's request for summary judgment inappropriate at the time. In an effort to refute the existence of the Ponzi scheme, Legacy intimated that it intended to rely on the Declaration of Steve Maslow ("Maslow Declaration"), a former Bear Sterns employee. Legacy did not produce the Maslow Declaration to the Trustee during discovery in this action. Rather, the Maslow Declaration was submitted in May 2017 in support of papers filed by Ms. Helen Chaitman in an unrelated case. (Stmt. ¶ 23.) The Maslow Declaration appears to have no connection to the Ponzi scheme Madoff ran through his IA business. The declaration states *only*

8

that BLMIS executed trades with Bear Stearns between 1985 and 1999. (*Id.*; Maslow Declaration ¶ 4.) It fails to distinguish between the IA Business and the market making business, critical here, as it is undisputed that Madoff made legitimate securities trades on behalf of his market making business. (Stmt. ¶ 23.) More important, however, from the time Madoff purported to adhere to a split-strike conversion strategy in the early 1990s through 2008 for the IA Business, BLMIS never engaged in securities trades reported in customer statements and on behalf of IA customers. (Stmt. ¶¶ 11, 12, 22.) Madoff testified in the proceedings involving Chaitman LLP's clients for which the Maslow Declaration was offered that he began to purport to use the split-strike conversion strategy in 1992. (Stmt. ¶ 10.) Legacy opened its account with BLMIS in 2000, after the time period that the Maslow Declaration covers. (Stmt. ¶ 29.)

In the eighteen months since Legacy raised the Maslow Declaration to the Court, Legacy has not once mentioned the Maslow Declaration again. Legacy has not sought to depose Mr. Maslow, it has not updated its disclosures to indicate that it intends to proffer Mr. Maslow (or anyone else) as a witness, nor has Legacy sought additional discovery under Fed. R. Civ. P. 16. Legacy's representations to this Court therefore must be taken for what they really are—an eleventh-hour contrivance intended to create an issue of fact.

Legacy has not met its burden to come forward with evidence that actual trading for BLMIS IA customers existed in the Legacy Account and is unable to rebut the Trustee's *prima facie* case concerning the existence of the Ponzi scheme.

### 3. **BLMIS's Transfers to Legacy Were in Furtherance of the Fraud**

In a Ponzi scheme, the Trustee need not prove that the debtor intended to hinder, delay, or defraud a particular creditor, but rather he must only establish that the transfers made to the transferee were "in furtherance" of a fraudulent scheme. *See Bayou IV*, 439 B.R. at 304; *Bayou*

9

*Accredited Fund, LLC v. Redwood Growth Partners L.P. (In re Bayou Grp. LLC)*, 396 B.R. 810, 826 (Bankr. S.D.N.Y. 2008) ("*Bayou III*"), *rev'd on other grounds*, 439 B.R. 284 (S.D.N.Y. 2010).

"Every payment made by the debtor to keep the scheme on-going was made with the actual intent to hinder, delay or defraud creditors, primarily the new investors." *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund)*, 359 B.R. 510, 518 (Bankr. S.D.N.Y.), *rev'd in part on other grounds*, 397 B.R. 1 (S.D.N.Y. 2007) (internal citation omitted). This is because, in a Ponzi scheme, the failure to honor an investor's withdrawal request "would promptly have resulted in demand, investigation, the filing of a claim and disclosure of the fraud." *Bayou III*, 396 B.R. at 843; *see also Greiff*, 476 B.R. at 723. Thus, every redemption payment "*in and of itself* constituted an intentional misrepresentation of fact" of the investor's rights to their falsely inflated account statement and "an integral and essential part" of the fraud. *Bayou III*, 396 B.R. at 843 (emphasis in original).

There is no dispute that BLMIS made all transfers to Legacy, much like to other customers and creditors, with the actual intent to defraud, as required under section 548(a)(1)(A) of the Bankruptcy Code. Legacy has even alleged that it was defrauded by Madoff. For example, in its motion to withdraw the reference, Legacy remarked that it was an "innocent investor[] that can only fairly be considered [a] victim of what is now acknowledged to be one of the biggest frauds in U.S. history." (Stmt. ¶ 26; Br. in support of Motion to Withdraw the Reference at 1, ECF No. 35.)

Because all the elements of section 548(a)(1)(A) are met, the transfers of fictitious profits made by BLMIS to or for the benefit of Legacy, are presumed to have been made with actual fraudulent intent and are recoverable by the Trustee.

10

### B. BLMIS Made Transfers to Legacy Within Two Years of December 11, 2008

For purposes of avoidance and recovery, BLMIS is deemed under SIPA to have an interest in the transferred property; thus, the transfers here are avoidable under section 548 of the Bankruptcy Code. *See* 15 U.S.C. § 78fff-2(c)(3) (transferred customer property is "deemed to have been the property of the debtor."); *Cohen*, 2016 WL 1695296, at *5 ("BLMIS transferred customer property to [defendant], and under SIPA § 78fff-2(c)(3) such property is 'deemed to have been property of the debtor"); *In re The 1031 Tax Grp., LLC*, 439 B.R. at 58, 68-70 (finding that, in a Ponzi scheme, money reflected in bank account statements "in the name of a debtor is presumed to be property of the bankruptcy estate" for purposes of 11 U.S.C. § 548(a)(1)).

The uncontroverted evidence shows that BLMIS transferred fictitious profits to or for the benefit of Legacy between December 11, 2006 and December 11, 2008. (Stmt. ¶¶ 35-37.) Moreover, Legacy has admitted that it received the Transfers. (Joint Stipulation ¶ 4; *see also* Stmt. ¶ 37.)[2]

### C. As a Matter of Law, Legacy Could Not Have Given Value for Fictitious Profits

Having established that BLMIS transferred at least $86,505,850 in fictitious profits within the Two-Year Period to Legacy with actual fraudulent intent, the Trustee is entitled to avoid and recover the Transfers. To defeat the avoidance of a transfer on summary judgment, Legacy must

---

[2] Any argument that Legacy purportedly received checks bearing the name "Bernard L. Madoff" instead of "Bernard L. Madoff Investment Securities LLC" is immaterial. Legacy has stipulated that BLMIS transferred fictitious profits between 2006 and 2008 to or for the benefit of Legacy and the receipt and amount of those transfers. Regardless of the name at the top of the check, the transfers by BLMIS were made from BLMIS's bank account at JPMorgan to customers, including Legacy. Stmt. ¶ 4 ("When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds"). Each of the transfers that the Trustee seeks to recover here were made after 2006, at which time BLMIS indisputably had an interest in its bank accounts. *See In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 110 (Bankr. S.D.N.Y. 2016) (contrasting transfers before January 1, 2001 when Madoff operated as a sole proprietorship with transfers after that date made by BLMIS, the SIPA debtor).

11

offer evidence sufficient to create a material issue of fact as to whether it took (1) "for value . . . to the extent that [it] gave value to the debtor in exchange for such transfer" *and* (2) "in good faith." *Bayou IV*, 439 B.R. at 308 (alteration in original) (placing burden of proving affirmative defense on transferee in trustee's motion for summary judgment); 11 U.S.C. § 548(c); *In re The 1031 Tax Grp.*, 439 B.R. at 73.

Fictitious profits "may be recovered regardless of the customers' good faith." *Katz*, 462 B.R. at 453; *see also Greiff*, 476 B.R. at 722-24. And as a matter of law, Legacy cannot establish that it took the transfers of fictitious profits "for value" because such false profits were not on account of a valid antecedent debt. *Cohen*, 2016 WL 1695296, at *11. In fact, "virtually every court to address the question has held unflinchingly that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers." *Bayou Superfund, LLC v. WAM Long/Short II, L.P.*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) (internal quotations omitted); *see also Cohen*, 2016 WL 1695296, at *10 (it is a bedrock principle of fraudulent transfer law that "[a] transferee does not give value beyond his deposits of principal"). Legacy offers no reason or evidence to allow this Court to alter this settled principle. Thus, the Trustee is entitled to summary judgment as a matter of law.

II.   **THE FICTITIOUS PROFITS ARE RECOVERABLE UNDER SECTION 550 OF THE BANKRUPTCY CODE AND SIPA SECTION 78fff-2(c)(3)**

Section 550 of the Bankruptcy Code allows a trustee to recover a transfer of property (or the value thereof) that has been avoided under section 548(a)(1)(A) of the Bankruptcy Code from either: "(1) the initial transferee of such transfer or the entity from whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transfer." 11 U.S.C. § 550(a). Similarly, SIPA section 78fff-2(c)(3) allows a trustee to "recover any property transferred by the

12

debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11." 15 U.S.C. § 78fff-2(c)(3).

The undisputed record establishes that Legacy is the initial transferee of the fictitious profits received from BLMIS during the Two-Year Period. As such, Legacy is "strictly liable" for the Transfers under section 550(a)(1) of the Bankruptcy Code. *Chapter 7 Tr. of Big Apple Volkswagen, LLC v. Salim (In re Big Apple Volkswagen)*, No. 11-2251 (JLG), 2016 WL 1069303, at *14 (Bankr. S.D.N.Y. Mar. 17, 2016). The undisputed record also establishes that Legacy did not give value in exchange for the fictitious profits. *Bayou IV*, 439 B.R. at 308 (a transferee bears the burden of proving that it took for value). The Trustee can, therefore, recover the avoidable transfers from Legacy under section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3) for the equitable, *pro rata* distribution of funds to the defrauded customers of the investment advisory business.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count One of the Trustee's Complaint and enter an order avoiding the transfers of fictitious profits made by BLMIS to Legacy within the Two-Year Period, and directing Legacy to return such transfers or the value thereof to the Trustee.

13

| | |
|---|---|
| Dated: New York, New York<br>December 21, 2018 | Respectfully submitted,<br><br>**BAKER & HOSTETLER LLP**<br><br>By: /s/ *Oren J. Warshavsky*<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>David J. Sheehan<br>Email: dsheehan@bakerlaw.com<br>Oren J. Warshavsky<br>Email: owarshavsky@bakerlaw.com<br>Jason S. Oliver<br>Email: joliver@bakerlaw.com<br><br>*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff* |