**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Oren J. Warshavsky

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Estate of Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> HSBC BANK PLC, *et al.*, <br><br> Defendants. | Adv. Pro. No. 09-01364 (SMB) |

**MOTION FOR THE ISSUANCE OF LETTERS OF REQUEST**

1. Irving H. Picard (the "Trustee"), trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act ("SIPA"), substantively consolidated with the bankruptcy estate of Bernard L. Madoff, through the Trustee's attorneys, Baker & Hostetler LLP, respectfully submits this application for the issuance of Letters of Request for International Judicial Assistance to the Bundesministerium für Verfassung, Reformen, Deregulierung und Justiz of the Republic of Austria for the examination of three Austrian citizens: Mr. Stefan Radel, Mr. Stephan Blahut, and Mr. Marius Steurer.

2. This application is made pursuant to 28 U.S.C. § 1781, this Court's inherent authority, and in light of the comity between the United States and Austria.

3. Messrs. Radel, Blahut, and Steurer are foreign citizens and non-parties. Thus, the Letters of Request provide the only means of compelling discovery from them.

## FACTUAL BACKGROUND

**Madoff's Ponzi Scheme**

4. Madoff, through the investment advisory business of BLMIS, conducted a decades-long Ponzi scheme of breathtaking scale. (*See* Trustee's Proposed Second Amended Complaint filed on June 26, 2015, ¶¶ 12-14, 20-28 (ECF No. 399).)

5. In the early 1990s, Madoff turned to European investors to augment the flow of funds into his scheme. (*Id.* ¶ 32.)

6. Among others, Sonja Kohn, an Austrian investment professional with personal and professional ties to Madoff, helped attract new European investors to BLMIS. In 1993, Kohn was hired as an advisor and consultant for Unicredit Bank Austria AG ("Bank Austria"). (*Id.* ¶ 36.)

7. Kohn introduced Stefan Zapotocky, the head of Bank Austria's securities department, and other Bank Austria executives to Madoff. (*Id.* ¶¶ 55-57.)

8. Together, Kohn and Zapotocky established the Primeo Fund ("Primeo"), which was ultimately invested exclusively with BLMIS. Zapotocky's Bank Austria colleagues, Peter Fischer and Ursula Radel-Leszczynski, were appointed to Primeo's board of directors along with Kohn and Zapotocky. (*Id.* ¶¶ 56, 58.)

9. Primeo's success led to the establishment of a network of feeder funds whose sole purpose was to direct investments into BLMIS. Alpha Prime Fund Ltd. ("Alpha Prime") was one such fund. (*Id.* ¶ 82.)

10. In June 2003, Alpha Prime opened BLMIS customer account 1FR097, and began soliciting investments. (*Id.* ¶ 83.)

11. Alpha Prime and Primeo shared not only a common broker and investment strategy, but were founded, serviced, and managed by the same individuals and entities. (*Id.* ¶¶ 58, 82, 84, 87-90.)

**Primeo Is Confronted with Evidence of Fraud at BLMIS**

12. Primeo and its service providers delegated many of their duties to BLMIS, concentrating in BLMIS the functions of investment adviser, custodian, and broker-dealer responsible for initiating and executing securities trades. (*Id.* ¶¶ 163-64.)

13. A 2002 sub-custody agreement effectively transferred control of Primeo's assets to Madoff. (*Id.* ¶ 120.) Primeo's directors and service providers were, nevertheless, still responsible for ensuring the integrity of the fund's investments, assessing the fund's performance, and ensuring that BLMIS's investment strategy aligned with the fund's objectives. (*Id.* ¶¶ 160-62, 167, 283-86, 288.)

3

14.     As early as 1995, Bank Austria executives presented Primeo's directors and officers with evidence that Madoff was engaged in fraud.  In 1995, a high-ranking Bank Austria executive ("BA Executive No. 1") visited Madoff in New York.  During that meeting, Madoff explained that he used data from his market-making clients to observe the direction of the market and achieve his returns.  After meeting with Madoff, BA Executive No. 1 urged Kohn and Zapotocky to refrain from investing with BLMIS because its returns were based on Madoff trading ahead of his clients' investments—an illegal strategy.  (*Id.* ¶ 261.)

15.     In 1996, another Bank Austria employee ("BA Executive No. 2") met with Madoff in New York.  During this visit, Madoff explained that he enticed large institutional investors to use his market making business by not charging those investors a fee.  With those institutional investors in the fold, Madoff could advantage his own trades over those of his clients by sequencing trade execution.  Upon his return, BA Executive No. 2 told Kohn and another Bank Austria supervisor that he was convinced Madoff was engaged in illegal front running.  (*Id.* ¶¶ 262-63.)

16.     By June 2001, evidence of Madoff's involvement in securities fraud was known by Primeo's board of directors.  An internal memorandum prepared by a Bank Austria affiliate, and disseminated to Primeo's directors, summarized discussions with Madoff and Frank DiPascali during meetings in New York on March 21, 2000 and June 14, 2001.  DiPascali's description of Madoff's investment strategy, specifically as it applied to Primeo included the following:

> maybe we can predict only the next 10 or 15 minutes but we watch the market continuously and if we get an order to buy a large stake of an equity which is quoted currently at 40$ with a limit up to 44$, there can't be anything wrong with buying [sic] same stock for our portfolio at 41$ or 42$.

(*Id.* ¶ 264.)

4

17. During this time, Primeo's customer statements were replete with data showing Madoff's trading strategy to be impossible. (*Id.* ¶¶ 313-61.) These impossible transactions were reported on Primeo's customer statements which were provided to the fund's directors and service providers, all of whom were sophisticated financial professionals, and were thus aware of these impossible trades. (*Id.* ¶¶ 283-86.)

18. Primeo's directors knew of additional evidence of Madoff's illegal activity. In 2002, a Bank Austria executive ("BA Executive No. 3") attempted to replicate Madoff's strategy to see whether he could replicate Madoff's results. The test results yielded returns of only one to two percent annually, whereas Madoff purported to yield returns as high as eighteen percent annually. The Trustee further alleges that when BA Executive No. 3 approached Kohn with the test results, Kohn assured the executive that even if Madoff's results were obtained through illegal activity, such conduct went undetected by authorities in the United States and was therefore not a cause for concern. (*Id.* ¶¶ 266-67.)

**Alpha Prime Is Managed and Serviced by Primeo's Directors and Agents**

19. Despite persistent warning signs and "red flags" concerning BLMIS, Radel-Leszcynski, Kohn, Zapotocky, and others created Alpha Prime for the purpose of collecting money for exclusive investments with BLMIS. Alpha Prime's account opening documents gave BLMIS complete authority to buy, sell, and trade in U.S. securities for Alpha Prime. (*Id.* ¶ 83.) Alpha Prime also shared five directors with Primeo, including Kohn, Zapotocky, Radel-Leszcynski, Fischer, and Nigel Fielding. (*Id.* ¶¶ 58, 82, 84.) Alpha Prime's directors, managers and service providers worked together as divisions of a single organization, just as they did with Primeo.

5

20. By the middle of 2005, Alpha Prime and its directors knew that, among other things:

    a. BLMIS's returns could not be replicated and appeared to be a product of illegal front running (*id.* ¶¶ 261-64);

    b. BLMIS's operational structure was vulnerable to fraud because it subverted checks and balances (*id.* ¶¶ 160-66);

    c. BLMIS customer statements showed impossible options trades (*id.* ¶¶ 313-22); and

    d. BLMIS customer statements showed trades outside published price ranges (*id.* ¶¶ 339-51).

21. Alpha Prime received approximately $83,170,000 in transfers that the Trustee pleads are avoidable. The Trustee seeks the return of those transfers, which he contends are customer property as defined by SIPA section 78*lll*(4), which, if recovered by the Trustee, will be equitably distributed to BLMIS customers with allowed claims.

**Messrs. Radel's, Blahut's, and Steurer's Connections to Alpha Prime**

22. This Application concerns the request for the examination under oath of Messrs. Radel, Blahut, and Steurer, who are located in Austria. During the course of the Trustee's action against Alpha Prime, evidence emerged that the server that hosted Alpha Prime's email system allegedly failed at some point in 2007, before the revelation of Madoff's fraud. Alpha Prime has disclosed that an Austrian company called Project Partners Consulting & Managementgesellschaft mbH ("Project Partners") hosted the Alpha Prime server and provided other information technology services to Alpha Prime. (*See* Letter from Todd E. Duffy to the Honorable Frank Maas (Dec. 14, 2018) (attached hereto as Exhibit 1).) Project Partners—in conjunction with another Austrian information technology services company, steurer "CC" GmbH ("Steurer")—purportedly attempted to repair the server and recover information from it. (*Id.*) Messrs. Radel and Blahut are involved with Project Partners, and Mr. Steurer is the

6

principal of Steurer.

23.     Alpha Prime's account of both the timing and the circumstances surrounding the alleged failure of the email server has changed several times.  The Trustee alleges that although Alpha Prime was aware of the possibility that it may be the subject of litigation by the Trustee—thus triggering its obligation to preserve evidence—Alpha Prime terminated its relationship with Project Partners in late 2008 or early 2009—after the revelation of Madoff's fraud—without directing Project Partners to preserve its documents.  (*See id.*)  This indicates that records might have been destroyed in bad faith on behalf of Alpha Prime or under the direction of persons acting for (or whose actions are attributable to) Alpha Prime.  Considering the information currently known to the Trustee, the Trustee contends that the server contained evidence of Alpha Prime's knowledge of Madoff's fraud.

24.     These Letters of Request are part of the Trustee's efforts to obtain testimony regarding (1) the alleged server malfunction; (2) the relationship and interaction between persons acting for (or whose actions are attributable to) Alpha Prime, on the one hand, and persons acting for Project Partners and Steurer on the other hand; and (3) any efforts to collect and preserve any electronically stored information impacted by the server malfunction.  The testimony sought is relevant to the Trustee's allegations in the ongoing proceedings and probative of whether Alpha Prime took the necessary steps to preserve evidence, as required by law.  The evidence sought is intended for use at trial to support the Trustee's claims to avoid fraudulent transfers to Alpha Prime and to subordinate Alpha Prime's customer claim.  This evidence is essential for the Trustee to fulfill his statutory mandate to maximize recovery of customer property for the ultimate benefit of all of Madoff's defrauded victims.

25. For the above reasons, the Trustee believes that the proposed Letters of Request, attached hereto as Exhibits 2 (Mr. Blahut), 3 (Mr. Radel), and 4 (Mr. Steurer), are just and appropriate and respectfully requests that the Court issue such Letters of Request to the indicated Judicial Authority.

| | |
|---|---|
| Dated: New York, New York<br>January 11, 2019 | /s/ *Oren J. Warshavsky*<br>Baker & Hostetler LLP<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: 212.589.4200<br>Facsimile: 212.589.4201<br>David J. Sheehan<br>Oren J. Warshavsky<br><br>*Attorneys for Irving H. Picard,*<br>*Trustee for the Substantively Consolidated SIPA*<br>*Liquidation of Bernard L. Madoff Investment*<br>*Securities LLC and the Estate of Bernard L.*<br>*Madoff* |