# EXHIBIT 1

08-01789-smb    Doc 18354    Filed 01/02/19    Entered 01/02/19 08:37:22    Main Document
Pg 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>  -against-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>  -against-<br>TRUST U/ART FOURTH O/W/O ISRAEL WILENITZ, et al.,<br><br>     Defendants. | Adv. Pro. No. 10-04995 (SMB) |

**DISCOVERY ARBITRATOR'S ORDER**

This is the latest chapter in a long-standing discovery dispute between the Trustee and certain defendants, including the Wilenitz Defendants, who are represented by Helen Davis Chaitman of Chaitman LLP (collectively, the "Defendants). In brief, the Defendants contend that the Trustee has intentionally and contumaciously failed to produce records which would establish that Bernard Madoff ("Madoff") actually engaged in securities trading on behalf of his investment advisory clients at Bernard L. Madoff Investment Securities LLC ("BLMIS") (or its predecessor) from as early as the 1970s. In an effort to prove this, the Defendants seek access to the entire BLMIS Database, which consists of some 30 million records, as well as the production of any third-party trading records in a warehouse containing 13,000 boxes of unscanned BLMIS documents. The Trustee denies that he has failed to comply with any court orders, argues that it is instead Ms. Chaitman who has flouted the Court's directives, and maintains that the Defendants' current blunderbuss requests are hopelessly disproportionate.

For the reasons set forth below, the Defendants' application to compel this discovery is denied.

I.    Background

In the Wilenitz proceeding, and many similar cases, the Trustee seeks to avoid as fraudulent transfers and recover any withdrawals that the Defendants made from their investment advisory accounts within two years of BLMIS's bankruptcy filing date to the extent those funds exceeded their actual deposits of cash or securities.

To prove his case against the Defendants, the Trustee is relying, in part, on the expert report of Bruce G. Dubinsky, a certified fraud examiner, who has concluded that the investment advisory side of BLMIS constituted a "Ponzi" scheme as far back as the early 1970s. "The hallmark of all Ponzi schemes is the use of 'the investments of new and existing customers to fund withdrawals of principal and supposed profit made by other customers.'" Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 531 B.R. 439, 472 (S.D.N.Y. 2015) (quoting In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 232 (2d Cir. 2011)). Significantly, "[once] it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent." Id. at 471.

Whether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue. The Defendants apparently contend in that regard that they are entitled to receive a credit as part of a net equity calculation if they can show that the legitimate side of BLMIS's business (often referred to as "House Five") held a security that is also reflected during the same period of time on their customer account statements. They also note that Madoff has testified at his deposition that he engaged in actual trading on behalf of his investment advisory customers until approximately 1992, when he

2

adopted a "split strike" trading strategy. If so, the Ponzi scheme presumption might not apply to BLMIS's earlier activities.

II.     History of the Defendants' Requests

The Defendants first raised the issue of trading records that might refute the Dubinsky report during a conference with Judge Bernstein on May 17, 2016. At that time, the discussion focused on any monthly records that might reflect BLMIS's trading volume and securities that were actually owned by the House Five side of BLMIS. The Defendants wanted the volume information in an effort to argue that BLMIS was predominantly a legitimate operation to which the Ponzi presumption should not apply. As noted above, the Defendants sought the records regarding securities actually purchased and sold as part of the legitimate operations of BLMIS in an attempt to show that they were entitled to certain credits against the Trustee's net equity calculations.

After the Defendants explained that they had already obtained records from the Depository Trust Company ("DTC") regarding BLMIS's House Five trading volume, the discussion turned to any additional BLMIS records that might reflect that information. The Trustee's counsel represented that to the extent the Trustee had such records they were housed in E-Data Room 1 and clearly labeled. E-Data Room 1 is an electronic database containing all of the materials that Mr. Dubinsky relied upon, as well as all of the discovery and disclosure documents produced by the Trustee. Ms. Chaitman has had access to that database for a considerable period of time.

When the discussion turned to BLMIS's own records of its House Five trading, Judge Bernstein asked the Trustee's counsel, if "BLMIS bought 100 shares of IBM and 50 shares show up on Wilenitz['s monthly statement]," "[w]ho's to say he didn't actually own that stock?" Counsel responded that he could not go through all of the detailed explanation given in the Dubinsky report, but that the Defendants could test the expert's conclusions "by examining the underlying records," all of which were available in E-Data Room 1. Judge Bernstein concluded that Ms. Chaitman seemingly wanted the Trustee to do the Defendants' work, but also noted that if the Trustee found additional responsive documents, he would have to add them to E-Data Room 1.

The issue of records reflecting BLMIS's actual trading next arose following my appointment as the Discovery Arbitrator. On December 13, 2016, I convened a hearing to address, in part, the Defendants' motion to compel the Trustee to produce many of the materials that Judge Bernstein had considered in May 2016. At that time, the Trustee's counsel represented that the Trustee had prepared a detailed index of the materials seized from BLMIS that were in the warehouse, but had not reviewed most of the boxes, and was unaware of any

entries that that appeared on their face to reflect pre-1992 trading by BLMIS. Counsel further indicated that the Trustee was endeavoring to find any records that might reflect actual trading during that period.

On December 15, 2016, the Trustee's counsel reported that, in response to the Defendants' request for trading records, the Trustee had located a relatively small quantity of Depository Trust and Clearing Corporation ("DTCC") and National Securities Clearing Corporation ("NSCC") records,[1] an additional 18,306 records from the BLMIS Database that hit on the search terms "Depository Trust" and "National Securities," and 167 reels of microfilm that might contain additional trading records from 2002 or earlier, which the Trustee's vendor was in the process of restoring. The Trustee also produced to Ms. Chaitman a searchable copy of the warehouse index and an index of the electronic media that the Trustee had obtained from BLMIS. The Trustee subsequently produced all of the documents on the 167 restored reels as well as those on an additional 34 reels with pre-1992 labeling. According to the Trustee, the cost of restoring all of the reels was in the neighborhood of $500,000. Finally, the Trustee produced all of the documents responsive to an additional 147 search terms that he had identified based on internal BLMIS reports reflecting trading activity.

On February 21, 2017, the Defendants renewed their application to compel the production of records reflecting pre-1992 BLMIS securities trading. On March 15, 2017, I denied that application without prejudice. In doing so, I noted that the indices of documents and electronic media that had been produced to the Defendants should have enabled Ms. Chaitman to formulate more focused requests for trading records.[2] I further directed that counsel confer in person regarding the trading records issue, and that three days before that meeting, Ms. Chaitman send the Trustee's counsel a letter "specifically identifying the additional documents she seeks to have produced and where she believes they may be found." Citing Bankruptcy Rule 7026 and Rule 26 of the Federal Rules of Civil Procedure, I cautioned both sides to bear in mind that discovery requests must be limited to relevant materials that are proportional to the needs of a case. I also directed counsel to send me a joint letter if they were unable to resolve their trading records disputes.

I heard nothing further regarding the Wilenitz proceeding until September 20, 2018. At that time, the parties submitted a joint letter regarding the Defendants' application to compel the Trustee to give the Defendants access to the entire electronic BLMIS Database. (Although the Trustee at one point had offered to do so as a compromise, during a meet and confer with multiple defense counsel, the Trustee represented that no final agreement to that effect ever was reached.) I held a hearing regarding the request for database access on

---

[1] The DTCC is a successor to DTC and NSCC engaged in the clearing and settlement of securities transactions.

[2] The Trustee also subsequently produced its index of BLMIS's microfilm files.

4

November 19, 2018.  The following day, Ms. Chaitman changed course, this time demanding that the Trustee produce not only the BLMIS Database, but also any third party trading records in the Queens warehouse.  Ms. Chaitman based this enlarged request on the entirely unsupported assertion that the Trustee had intentionally incorporated into the BLMIS Database only those items which would support his claim that BLMIS's investment advisory operation was a Ponzi scheme.

The record in fact shows that the Trustee has repeatedly tried to accommodate Ms. Chaitman's requests for BLMIS trading records.  For example, shortly after my initial hearing in this matter, the Trustee spent substantial sums to restore the microfilm records that he believed might contain the information that the Defendants sought.  That those records may not have proven responsive or may not have bolstered the Defendants' theory of defense certainly is not a sign that the Trustee has acted in bad faith.

Subsequently, in response to the Defendants' request for the production of five million documents responsive to 22 search terms incorporating such common financial institution names as Fidelity and Morgan Stanley, the Trustee agreed to run two of those terms, which apparently confirmed that the 22 proposed searches would return largely irrelevant documents, such as emails.  As an alternative, the Trustee agreed to run certain BLMIS account numbers against the third-party materials produced to the Trustee in response to Rule 2004 subpoenas, and turned over those documents.  When Ms. Chaitman then complained that the Trustee had not also run those terms against the BLMIS Database, the Trustee did so, and produced the responsive documents.  The Trustee indicates that the account number searches it has conducted in response to Ms. Chaitman's requests yielded nearly 200,000 pages of material, comprising 10,000 documents.

III.    Discussion

Noticeably absent from any of Ms. Chaitman's submissions is any suggestion of additional search terms that the Defendants themselves could productively run against the BLMIS Database if the Defendants were given unrestricted access to it.  Also largely unexplained is why the application to be given access to this massive database morphed only one day later into a request that the Trustee wade through the 13,000 boxes of documents in the warehouse.  The ostensible basis for this expansion – that Ms. Chaitman now realizes that the Trustee selectively excluded from the BLMIS Database trading records which would support the Defendants' theory – is based on a contorted view of the record.  To be sure, the Trustee's counsel did represent to Judge Bernstein during an early hearing in this matter that all of the records Ms. Chaitman needed to test Mr. Dubinsky's conclusions were available in E-Data Room 1.  In context, however, it is clear that counsel was referring to the materials underlying the Dubinsky report, not to all of the trading records that conceivably might have existed in

5

BLMIS's files.  Nor could Ms. Chaitman have been misled by this statement.  Indeed, she has known since for years that the BLMIS Database contains approximately 30 million documents, only a fraction of which have been copied to E-Data Room 1, and that the Trustee has thousands of boxes of hard copy documents and thousands of items of electronic media that have not been processed.[3]  In fact, she has been given indices confirming the existence of these additional materials.

In sum, I find that the Defendants' assertion that the Trustee has proceeded in bad faith is utterly unsupported by the record.  Additionally, Ms. Chaitman has yet to suggest a reasonable method of searching for any additional pre-1992 hard copy or electronic third-party trading records that might exist.  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery of nonprivileged matter that is relevant to a "claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Here, the Trustee obviously is exceptionally well-funded.  Nevertheless, the Defendants have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption.  Moreover, even if that were proven, there been no showing that the efforts that the Trustee already has undertaken in an effort to locate pre-1992 BLMIS trading records are inadequate.  Indeed, despite being given digitized copies of hundreds of reels of microfilm, the Defendants have yet to show that they contain anything which would support their thesis that Madoff conducted actual trades for their accounts prior to 1992.[4]  Nor have they demonstrated that the warehouse is likely to contain any documents that would be of use to them in this regard.

For these reasons, I find that there is no basis for requiring the Trustee to supplement the extensive efforts that he has already undertaken by affording Ms. Chaitman

---

[3]  The Trustee's initial disclosures in the Wilenitz proceeding, dated, December 21, 2015, carefully explained that:  (a) the Trustee possessed 13,500 boxes of BLMIS paper documents and 19,250 media sources containing ESI, including computers, hard drives, PDAs, floppy disks, compact discs, and memory cards; (b) some of these materials had been loaded into one or more electronic databases then totaling four terabytes (or 28.8 million documents); (c) the Trustee intended to make four million of those documents available in a virtual data room known as "E-Data Room 1; and (d) the Trustee also had obtained an additional five million documents from approximately 450 parties during the course of his investigation.

[4]  In her most recent letter, dated November 20, 2018, Ms. Chaitman complains that the descriptions on the microfilm index prepared for the Trustee are insufficient for her to identify other reels likely to contain pre-1992 third-party trading records.  Suffice it to say, I do not agree that the index is so generic as to have precluded Ms. Chaitman from making targeted requests.

unfettered access to the BLMIS Database or requiring him to rummage through all of the boxes in the warehouse in an attempt to find additional pre-1992 third-party trading records.

IV.     Conclusion

For the foregoing reason, the Defendants' September 20, 2018 application for access to the entire BLMIS Database and follow-up November 20, 2018 application to require the Trustee to review all of the boxes of hard copy documents in his possession for third-party records of pre-1992 BLMIS trading are both denied.

SO ORDERED.

Dated:    New York, New York
          December 24, 2018

_____
FRANK MAAS
Discovery Arbitrator

Copies to Counsel via ECF