# EXHIBIT 8

# CHAITMAN LLP

### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
*hchaitman@chaitmanllp.com*

November 20, 2018

**<u>VIA EMAIL and FIRST CLASS MAIL</u>**
The Honorable Frank Maas, U.S.M.J. (Ret.)
c/o JAMS, Inc.
620 Eighth Avenue, 34th Floor
New York, New York 10018
fmaas@jamsadr.com

> **Re:** *In re Bernard L. Madoff, Investment Securities, LLC,* **Adv. Pro. No. 08-01789;**
> *Irving H. Picard v. Wilenitz*, **Adv. Pro. No. 10-04995 (SMB)**

Dear Judge Maas:

I submit this Letter on behalf of Defendants represented by this firm ("Defendants") to clarify certain issues that were discussed during yesterday's conference with Your Honor.

## I.   **<u>The Trustee's deception</u>**

For over three years, Defendants have been requesting third-party trading records evidencing the trading activities of Madoff and BLMIS ("Trading Records"). Defendants have received a succession of convoluted misrepresentations about where records might be located, along with unfulfilled promises that the Trading Records had been or would be produced. The Trustee's counsel, for years, represented that the Trustee's "E-Data Room" contained all of the Trading Records. See, for example, the January 5, 2017 Transcript, attached as Ex. D to the Joint Letter of September 20, 2018 at 30:14-16 (**MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it."**) (emphasis added).

Similarly, at an argument before Judge Bernstein on May 17, 2016,[1] the Trustee's counsel represented as follows:

> MR. JACOBS: So, absolutely the Defendant has the ability to
> conduct whatever investigation they believe is relevant to the claims
> of their defenses, the same that our expert did, and they have access
> to all the same information that our expert did. And we did that to

---

[1]  The Trustee emailed this transcript to Your Honor on November 19, 2018.

# CHAITMAN LLP

be transparent and to provide any data that any litigant believes that they should have access to.[2]

\*\*\*\*

MR. JACOBS:  . . . . [W]e have already produced in this litigation, without even having received a document request, 100 percent of that data.[3]

\*\*\*\*

MR. JACOBS: To the extent we have them in addition to publicly available information that we obtain, it's all in the data room clearly labeled.[4]

\*\*\*\*

MR. JACOBS: She tests that conclusion the same way our expert does, by examining the underlying records.  All of those records again have been made available to Ms. Chaitman.  They're in the data room.[5]

Mr. Shifrin's statement to Your Honor yesterday that the Trustee never made the above representations is demonstrably false.  And we now realize, as a result of Mr. Shifrin's presentation yesterday, that even the BLMIS Database, to which the Trustee has refused to provide access, is limited to only those documents the Trustee wanted to use to bolster **his** position.  Obviously, the Trustee would not use the Trading Records because those records prove that, in fact, Madoff/BLMIS did conduct actual trades with Investment Advisory customers' money.  And, to date, he has successfully concealed the vast majority of these documents from the Defendants.  We have laid all of this out in the attached letter to Judge Bernstein on July 24, 2017.  *See* ECF No. 16427.[6]

In fact, it was only yesterday, listening to Mr. Shifrin, that the truth became clear: The Trustee has no use for the Trading Records because they disprove his thesis of the case.  Hence, he certainly did not put them in the E-Data Room and he would not have put them in the BLMIS Database either.  Instead, the Trustee left the majority of the Trading Records in the Queens warehouse (or possibly someplace else).  However, we demanded these records three years ago and the Trustee has an obligation to produce them.  The documents are essential for our defense; the documents are within the Trustee's possession and control; and given the multi-billion-dollar budget for professional fees that SIPC has set, there cannot possibly be any justification for the

---

[2]  At 11:11-12:14
[3]  At 15:21-23.
[4]  At 61:7-17.
[5]  At 68:4-69:5.
[6]  Attached as Ex. A.

# CHAITMAN LLP

Trustee not to produce all of the Trading Records that are under the Trustee's control, whether they are located in the Queens warehouse or someplace else.

If the situation were reversed, we can be sure that Judge Bernstein would have ordered the Defendants to produce whatever documents the Trustee asked for, regardless of the inconvenience to the Defendants. Why would there be a different result simply because the Trustee does not want the Defendants to have the trading records?

## II.    It is not acceptable for the Trustee to produce only 1 million of the 30 million documents in the BLMIS Database

In addition to the Trading Records that the Trustee has not incorporated into the BLMIS Database, the Trustee should be ordered to immediately produce all of the Trading Records contained in the BLMIS Database. If there are one million hard-copy documents among the 30 million documents in the BLMIS Database, why weren't these produced three years ago? On what theory is the Trustee entitled to satisfy his discovery obligations simply by producing a sliver of the documents we have requested? Again, we know what the result would have been if any of the Defendants had disregarded their discovery obligations; the severest sanctions would have been imposed upon them by Judge Bernstein.

## III.    The Indices are of minimal value to the Defendants and do not relieve the Trustee of his discovery obligations

In an attempt to shirk his discovery obligations, the Trustee relies upon two Indices he produced. The first is the Excel version of the Microfilm Reel Inventory, served on Chaitman LLP on July 14, 2017 (the "Microfilm Reel Index").[7] As we explained, we found the descriptions in the Microfilm Reel Index were not sufficient to enable us to identify which reels, if any, would contain Trading Records. Generally, the only descriptions of the microfilm supplied by the Trustee are "Positions/Stock Record/Trading," "Customer Ledger," "PMR," "PMT," or "Other." These descriptions do not indicate at all whether there are third-party Trading Records in any reel or whether these are simply Madoff-generated records. The few reels that we examined did not contain any Trading Records and, given the sanction that Judge Bernstein stated he would impose upon us in terms of allocating costs, we had no alternative but to abandon this line of pursuit.

The second Index is the Excel version of the Madoff Warehouse Inventory, served on Your Honor and Chaitman LLP on December 16, 2016 (the "Warehouse Index"). Contrary to what Mr. Shifrin said yesterday, as Your Honor can see, the Warehouse Index contains many useless descriptions which give no indication of the contents of the boxes purportedly described. While, in some instances, the descriptions suggest that the boxes might contain Trading Records, it is the Trustee's burden to produce these records to us. Surely, if the Defendants had responded to a discovery demand by stating the requested documents are in a warehouse, Judge Bernstein would have immediately ordered the Defendants to go to the warehouse and get the documents. Or, let

---

[7] A true and correct copy of which is being sent by email only as Exhibit B. An earlier version of this Index was served on your Honor by the Trustee on December 16, 2016 by email only.

# CHAITMAN LLP

the Trustee give the Defendants unfettered access to whatever warehouses hold these boxes of documents and we will go through them.

## IV.    **The Trustee has vast resources and the Trustee's arguments about work product are a farce**

The Trustee suggests that it would be burdensome and disproportionate under Rule 26 for him to produce those documents listed on the Warehouse Index and that it is possible that some of those documents (and some of the 29 million documents in the BLMIS Database that the Trustee refuses to produce) might contain work product. These arguments should be rejected.

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance . . . is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Defendants have a right to take discovery to develop the factual record necessary to support their defenses. *See, e.g.*, *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014) ("As long as the defense is in the case – and plaintiffs do not purport to seek relief under Fed. R. Civ. P. 12(f), which authorizes a motion to strike affirmative defenses – the defendant is entitled to seek relevant discovery in support of that defense.").

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that consideration be given to the parties' relative access to information. *See* Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26. As stated by the Advisory Committee:

> One party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

# CHAITMAN LLP

The Trustee and his professionals have been paid approximately $3 billion in this liquidation.  Obviously, the Trustee has vast resources which are certainly sufficient to allow him to comply with his discovery obligations.  Indeed, he probably has been paid $40 million solely for his efforts to prevent the Defendants from getting access to the Trading Records.

Moreover, the Trustee's arguments about work product are a farce.  Mr. Shifrin stated yesterday that the Trustee cannot give Defendants access to the BLMIS Database because it contains work product.  Are we really supposed to believe that the Trustee's lawyers and experts went to the Queens warehouse and intermixed their own work product with documents that were under the control of the U.S. Attorney's Office?  There has been no demonstration whatsoever that the Trustee's experts were even retained at the point when Madoff's records were gathered.  If this is truly the Trustee's position, let him submit affidavits of the experts whose work product was allegedly intermixed with Madoff's and BLMIS' records.  Assuming there is any shred of truth to Mr. Shifrin's representation, and the Trustee allowed his experts to mix their own work product with Madoff's records, it is the Trustee's burden to go through all of the documents and designate which documents are purportedly work product.

Finally, if the Trustee unintentionally produced work product, there is a protective order in these cases that allows the Trustee to request that it be clawed back.  *See* Litigation Protective Order, ECF No. 4137; *see also* Federal Rule of Evidence 502(b).  The Trustee is well aware of the procedures under the Litigation Protective Order, having previously relied on them to attempt to amend the Indices themselves, arguing, unsuccessfully, that many of the descriptions on the Indices contained work product.  *See* ECF No. 16968.[8]  Although the Trustee was not successful in maintaining his privilege assertions, Judge Bernstein held that the Trustee's inadvertent production of alleged work product did not constitute a waiver of any privilege.  *See id.*

## V.    <u>Conclusion</u>

In conclusion, Defendants request that Your Honor order the Trustee to (a) give Defendants unfettered access to the BLMIS Database, and (b) produce all of the Trading Records in the Queens warehouse or any other warehouse or document depository to which he has access.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC/sh
Enclosures (as stated)
cc:    Maximillian S. Shifrin, Esq. (*via email only*)
        Nicholas J. Cremona, Esq. (*via email only*)

---

[8]  Attached as Ex. C.

# EXHIBIT A

# CHAITMAN LLP
### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*HELEN DAVIS CHAITMAN*
hchaitman@chaitmanllp.com

July 24, 2017

**VIA ECF AND EMAIL:** bernstein.chambers@nysb.uscourts.gov

Honorable Stuart M. Bernstein
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

    Re:    *In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB)

Dear Judge Bernstein:

We write, on behalf of the good-faith Defendants represented by Chaitman LLP ("Defendants"), in response to Mr. Sheehan's letter of June 14, 2017 regarding the 4,700 unrestored reels of microfilm in the Trustee's possession, the existence of which the Trustee concealed despite two court orders requiring their production. (ECF No. 16348).

To date, the Securities Investor Protection Corporation ("SIPC") has paid Baker & Hostetler nearly one billion dollars in fees and the Trustee's consultants have been paid nearly $400 million. *See* http://www.madofftrustee.com/recovery-chart-fees-34.html (last accessed July 21, 2017).

Baker & Hostetler's most recent fee application seeks legal fees in excess of $35 million for three months' work. (ECF No. 16367). The waste which has resulted in such massive fees has been obvious. For instance, the Trustee's counsel never go anyplace alone. As this Court is well aware, they usually appear in court in numbers ranging from five to ten attorneys on a motion day. Another glaring example is the Trustee's payment of over $30 million to his key expert, Bruce Dubinsky, to whom the Trustee never disclosed that he was holding trading records from the 1980s. Dubinsky was given access only to the documents that the Trustee put into the E-Data Room, *i.e.,* the documents that supported the Trustee's and SIPC's version of the facts. Thus, Dubinsky was never given the 500 reels of microfilm documents that the Trustee produced to the Defendants in 2017 pursuant to Magistrate Judge Maas' order. And, of course, Dubinsky was never given the 4,700 reels of microfilm that the Trustee is now holding hostage.

Despite the entry of two court orders that the Trustee never challenged; and in the face of his unrestrained spending with respect to fees in which the Trustee participates, the Trustee has decided, for the first time in almost nine years, that he should economize, not by reducing his

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
July 24, 2017
Page 2

firm's fees to a justifiable level but rather by imposing upon innocent customers the expense of producing the previously undisclosed 4,700 reels of unrestored microfilm. The Trustee argues that he is not required to pay for the restoration and production of this microfilm under Federal Rule of Civil Procedure 26 because the costs of doing so are not proportional to the needs of these cases.

This argument is a disgrace: the Trustee and his counsel have flatly misrepresented the facts to every court before which they have appeared in order to save SIPC $2 billion in insurance payments. They ignored an order of this Court on May 17, 2016 that they should immediately produce any trading records that are not already in the E-Data Room. And now that the Trustee's fraud has been uncovered, he thinks the financially decimated victims of his own fraud should come up with the money to obtain the evidence documenting the Trustee's dishonesty. The Trustee's position is insupportable.

## I. The Trustee has a duty under the Securities Investor Protection Act to produce the 4,700 reels of unrestored microfilm

The Trustee asserts that the issue before the Court is governed by Rule 26. He does so because he has completely ignored his statutory obligations as a SIPA trustee to investigate the Debtor and disclose to the entire creditor body the facts relating to the Debtor's fraud. *See, e.g.*, 15 U.S.C. §§ 78*fff*-1(d)(3) (a SIPA trustee shall "report to the court any facts ascertained by the Trustee with respect to fraud, misconduct, mismanagement, and irregularities" of the debtor). The Trustee's claim that he was "transparent" about the microfilm in his possession is preposterous. He concealed the fact that he had 5,300 reels of microfilm records for over a year after this Court ordered him to put all such records in the E-Data room. And he concealed from Defendants, until June 25, 2017 (i) how much microfilm he had (5,300 reels) and (ii) how much of that microfilm had *never* been restored or produced (4,700 reels). (ECF No. 16237 Ex. AA.) Now that he has been caught defrauding this Court, the Second Circuit, and the entire customer body, he seeks to shift the costs of his misconduct onto his victims.

## II. The Trustee has concealed the existence of the 4,700 reels of unrestored microfilm even though he has already been ordered numerous times to produce all trading records

While obviously, the Trustee views this as another billing opportunity for himself, the issue here is much more significant – testing the integrity of this entire proceeding. The Trustee comes into this Court having violated SIPA's mandate that he investigate the debtor and disclose to the court all facts concerning the debtor's financial affairs. *See infra.* The Trustee also comes into court having violated two court orders to produce all of the trading records – the first of which was issued on May 17, 2016. Yet the Trustee concealed from the Defendants, until June 25, 2017, the fact that he was holding 4,700 reels of unrestored microfilm that he had never produced.

While the Trustee relies upon Judge Maas' March 15, 2017 order, he ignores Judge Maas' January 7, 2017 order requiring the Trustee to produce all trading records. *See In re: Bernard L. Madoff,* Adv. Pro. No. 08-01789 (SMB) ECF No. 14807 at 3 ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
July 24, 2017
Page 3

Room 1, they must promptly be produced."). Obviously, the Trustee ignored Judge Maas' order and simply produced what he found it to be convenient to produce. The Trustee certainly never disclosed that he was still holding 4,700 reels of microfilm. As this Court pointed out to Mr. Sheehan on June 29, 2017, there are "two orders directing you to turn over the documents." (*See* June 29, 2017 Transcript at 74:14-15, attached as Ex. A). Yet, the Trustee has still not turned them over.

Why, under these circumstances, would the Court reward the Trustee for his dishonesty by allowing him to force the innocent Defendants to pay the Trustee's outrageous fees in order to document the Trustee's fraud?

**III.    The Federal Rules require the Trustee to produce – at his expense – the 4,700 reels of unrestored microfilm in a searchable format and to pay Defendants' counsel fees incurred in seeking to compel the Trustee to comply with his discovery obligations**

The Trustee now offers to comply with his discovery obligations but only if Defendants bear the costs of such compliance. The Trustee never raised the costs of compliance before this Court on May 17, 2016. Nor did the Trustee ever raise the costs of compliance with Magistrate Judge Maas.

Under Rule 37(b)(2), the Trustee is obligated to pay the costs of production and, in addition, to pay the Defendants' reasonable attorneys' fees in seeking the Trustee's compliance with this Court's May 17, 2016 order. *See* Fed. R. Civ. P. 37(b)(2) (if a party "fails to obey an order to provide or permit discovery. . . . the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure")(emphasis added); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure  to comply with discovery orders justly allows the court to impose costs upon the failing party . . . . The Second Circuit has repeatedly emphasized the importance of complying with discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'") (citation omitted). *See also Moore's Federal Practice* § 37.50[1][a] ("[A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.").

The 4,700 reels of microfilm are clearly discoverable under Federal Rule of Civil Procedure 26(b)(1), which outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.

# CHAITMAN LLP

Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

All of these considerations require the Trustee to restore and produce in a searchable format, at the Trustee's expense, the 4,700 reels of unrestored microfilm. There is absolutely no reason why the expense of restoring and producing these records should be put on the financially decimated Defendants who have been required to produce all of their own records at their own expense, even though the Trustee has virtually all of these records anyway.

The issues at stake are of tantamount importance not only to the Defendants but to the entire creditor body and to the public. It is quite possible that the 1980s trading records will require the Trustee to recalculate the claims of customers so that they are entitled to receive SIPC insurance. And, after repeatedly and endlessly bragging to the courts and the public about the efforts the Trustee went to in order to establish his E-Data Room which he claimed contained every document any customer could possibly want to see in connection with his defense, the Trustee should be held to his word – and be required to put all of the previously undisclosed documents, and any further documents still not disclosed, in the E-Data Room in a legible and searchable format.

Having probably been paid more than any Trustee in the history of the world, and having deprived customers of their statutory right to SIPC insurance based on the false claim that Madoff never purchased securities for any of his investment advisory customers, it is preposterous that the Trustee now seeks to hide behind the proportionality concept of Rule 26. In many of these cases, the Trustee and his law firm have been paid legal fees grossly in excess of the amount in controversy. But the Trustee has never suggested that **his fees** should be subject to a proportionality analysis. It is shameful that the Trustee would seek to impose on the innocent Defendants a cost that he should have incurred to present honestly the facts concerning the timing and scope of Madoff's fraud. Moreover, to each of the Defendants, the amount at issue is life-changing because these are people whose lives were decimated first by Madoff's fraud, and then by the Trustee's fraud. Many of the victims stand to lose their entire life savings and their homes. To withhold relevant evidence from them (or require them to pay millions of dollars to obtain access to this evidence in a usable format) is a callous attempt to determine the outcome of their cases without their being able to defend themselves fully, appropriately, and fairly.

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require consideration of the parties' **relative** access to information. *See* Advisory Committee Notes to the 2015 Amendments to Fed. R. Civ. P. 26. Here, the Trustee – who owes a fiduciary duty to each Defendant – has had access to the 4,700 unrestored reels of microfilm for nine years and yet, for nine years has falsely represented that Madoff never purchased securities for any of his investment advisory customers.

# CHAITMAN LLP

The importance of the discovery in resolving the issues cannot be over-stated. The discovery sought is designed to ascertain the scope of the Madoff fraud, when the fraud began, and for what period customers are entitled to the appreciation shown on their statements.

The Trustee has repeatedly taken the position that he relies entirely upon Dubinsky to prove that Madoff never purchased any securities for his investment advisory customers. Dubinsky's report is based on the assertion that there is no evidence of any real trading by the investment advisory business. Yet Dubinsky reached this conclusion without being supplied with any of the 1980s trading records, including the microfilm records. Thus, aside from Dubinsky's appalling ignorance of convertible bond trading in the 1980s (as demonstrated by the expert report of William Feingold which supports 100% Madoff's testimony concerning the mistakes in the Dubinsky report), Dubinsky was further handicapped by the Trustee's concealment of the 1980s trading records.

Given that the Trustee's case is based on a purported **absence** of evidence of real trading, the Trustee has an obligation to produce to the Defendants all of Madoff's trading records, whether the Trustee thinks they are "real" trading records or "fake" trading records. It is not for the Trustee to determine which records are real and which records are not; it is for the fact finder.

It is also vital that all innocent victims, many of whom are threatened with the loss of their life's savings, be able to defend themselves fully without the Trustee pre-determining the facts by concealing material evidence. The Trustee's proportionality argument is nothing more than a last ditch attempt to conceal the Trustee's fraud because, obviously, the Defendants are incapable of funding the costs of compliance with the Trustee's discovery obligations. And, of course, the Trustee's greed surfaces even here. He now discloses, for the first time, that it will cost over $2 million to put the documents in computer-searchable form so that they can be easily analyzed and shared with others. And he proposes to shift this burden to the innocent Defendants, including a charge of almost $500 an hour (of which the Trustee receives a percentage) to have a clerk monitor the microfilm review. Yet, on May 17, 2016 when the Court ordered the Trustee to put into the E-Data Room any trading records not yet produced, the Trustee did not, at that time, condition compliance with that order on the Defendants paying the costs. Instead, the Trustee lied and said that all trading records had been put into the E-Data Room.

The Trustee and SIPC have worked, since December 2008, to conceal from the courts and the customers the true nature and extent of Madoff's fraud. They did so in order to save SIPC approximately $2 billion in SIPC insurance payments at a time when neither the Trustee nor SIPC knew whether SIPC would be reimbursed for its advances. The devastation that the Trustee and SIPC have caused is immeasurable in terms of the emotional impact on Madoff's customers. The economic devastation is measurable and huge. But the first step is to compel the Trustee to produce all of Madoff's trading records in a reasonably searchable form and at his own expense.

## IV.   Defendants have already made a showing of relevancy under Rule 26

The Trustee continues to argue that Defendants have not made any showing under Rule 26 that the production of the 4,700 reels of unrestored microfilm will result in relevant evidence. But

# CHAITMAN LLP

The Honorable Stuart M. Bernstein
July 24, 2017
Page 6

in Defendants' June 26, 2017 Memorandum to the Court (ECF Nos. 16236-37) and in an accompanying letter by the Sage Defendants (ECF No. 16243), Defendants gave several examples of documents in the microfilm that has been produced to date evidencing pre-1992 trading. These documents were only produced because the Trustee was finally forced to restore previously unrestored microfilm. Mr. Sheehan also admitted he had never reviewed the 4,700 reels of microfilm (June 29, 2017 Tr. at 68:4-16), and thus has no basis to claim what these records will or will not show. The 4,700 unrestored reels of microfilm should be produced in computer searchable format and, along with the prior microfilm productions, posted to the E-Data Room as promptly as possible by the Trustee, at the Trustee's expense.

Respectfully submitted,

*/s/ Helen Davis Chaitman*

Helen Davis Chaitman

HDC
Encl.

cc:     (*via ECF and Email w/encl.*)
        David Sheehan (dsheehan@bakerlaw.com)
        Andrew Kratenstein (akratenstein@mwe.com)
        Carole Neville (carole.neville@snrdenton.com)

08-01789-smb   Doc 16421-1   Filed 07/24/17   Entered 07/24/17 09:42:05   Exhibit A
Pg 1 of 3

# EXHIBIT A



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-01789-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    SECURITIES INVESTOR PROTECTION CORPORATION,

6                    Plaintiff,

7              v.

8    BERNARD L. MADOFF INVESTMENT SECURITIES, L.L.C.,

9                    Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 10-04292-smb

12   - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

14   MADOFF INVESTMENT SECURITIES LLC,

15                    Plaintiff,

16              v.

17   ROBERT ROMAN,

18                    Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21

22

23

24

25

1           U.S. Bankruptcy Court

2           One Bowling Green

3           New York, NY  10004

4

5           June 29, 2017

6           11:02 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON STUART M. BERNSTEIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  K. SU

Page 68

1    discovery they're getting because they use conclusory, we

2    didn't get this, we didn't get that.  They're --

3              THE COURT:  We're talking --

4              DAVID SHEEHAN:  Your Honor, do you know for a fact

5    what's in those?  I don't.  Right?

6              THE COURT:  Well, I think you should look at them.

7              DAVID SHEEHAN:  I know I've looked at 27 terabytes

8    of data and I know that there's no evidence of trading that

9    this woman keeps talking about that we've been hiding.  And

10   she hasn't presented one iota of evidence to suggest to you

11   that that's true, other than conclusions.

12             THE COURT:  So you're -- but then you can't tell

13   me whether or not these microfilms are relevant or not if

14   you haven't looked at them.

15             DAVID SHEEHAN:  No, we've looked at them enough to

16   do searches of them, but we have -- and can I say what I --

17             THE COURT:  Let me ask you a question.

18             DAVID SHEEHAN:  Yes.

19             THE COURT:  What's involved in just producing the

20   information?  Maybe I don't understand.

21             DAVID SHEEHAN:  Well, it's going to be a lot of

22   time and effort, a lot of money.

23             THE COURT:  What's involved?  I mean --

24             DAVID SHEEHAN:  Well, I would say it's a -- it

25   took half a million dollars to do 300 --

1              DAVID SHEEHAN:  It sounds easy.

2              THE COURT:  All right.

3              DAVID SHEEHAN:  But we've been doing that for a

4    year and a half with Ms. Chaitman.

5              MS. CHAITMAN:  That is untrue.

6              THE COURT:  No, no, stop.  I don't know what's in

7    there, you don't know what's in there, and on that basis,

8    you can't say I'm not going to turn it over.

9              DAVID SHEEHAN:  Yeah, but she hasn't shown to you

10   what she's saying is true.

11             THE COURT:  There are two orders directing you --

12             DAVID SHEEHAN:  But why does she get discovery

13   when she can't even prove what she's saying?

14             THE COURT:  There are two orders directing you to

15   turn over the documents.  You haven't told me that they're

16   not relevant.  You --

17             DAVID SHEEHAN:   I'm going to look at it, and if I

18   don't think they are, I'm going to tell Your Honor that.

19             THE COURT:  You haven't made a motion for a

20   protective order, and there are two orders to turn over the

21   documents.

22             DAVID SHEEHAN:  I'd like the protective order.

23   Well, I do.

24             MS. CHAITMAN:  Well, Judge, you know --

25             DAVID SHEEHAN:  It's about time she put up or shut

# EXHIBIT B
(Omitted due to size)

Excel spreadsheet:

Bernard L. Madoff Investment Securities, LLC
Microfilm Reel Inventory
As of June 28, 2017
Microfilm Inventory Color-Coded

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>                         Plaintiff,<br><br>          v.<br><br>DEFENDANTS REPRESENTED BY CHAITMAN LLP,<br><br>                    Defendants. | |

**ORDER IMPLEMENTING THE COURT'S**
**NOVEMBER 29, 2017 BENCH RULING**

THIS MATTER having come before the Court on the request of Chaitman LLP on behalf

of the Defendants in the above-referenced adversary proceedings and counsel for Irving H.

Picard, as trustee (the "Trustee") for the substantively consolidated liquidation of Bernard L.

Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C.

§ 78aaa et seq., and the estate of Bernard L. Madoff, with respect to Chaitman LLP's letter dated

September 8, 2017 [ECF No. 16607] requesting a discovery conference and the Trustee's

response dated September 19, 2017 [ECF No. 16657], and the Court having received *in camera*

submissions from both parties, and the Court having held hearings on November 9, 2017 at 2:00

p.m. and November 29, 2017 at 10:00 a.m., and the Court having heard argument from the

Trustee's counsel, and counsel for the Defendants having failed to appear; and the Court having

directed the Trustee to submit a proposed order consistent with the bench ruling issued during

the November 29, 2017 hearing (the "November 29 Hearing"), as set forth in the transcript from

the November 29 Hearing, it is hereby:

1.      ORDERED, notwithstanding the inadvertent disclosure of certain information on

the Microfilm Index and the Warehouse Index, as discussed in the parties' respective letters

[ECF Nos. 16607 and 16657], such disclosure does not constitute a waiver of any privilege or

protection, including the attorney-client privilege and the work product protection, that the

Trustee may otherwise have over the inadvertently disclosed information, and it is further

2.      ORDERED, that the Trustee withdraws his request to claw back the inadvertently

disclosed information in the Microfilm Index and the Warehouse Index, and it is further

3.      ORDERED, that this Court shall retain jurisdiction over all matters relating to the

enforcement, implementation, and interpretation of this Order.

Dated:  December 1, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge