UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | Adv. Pro. No. 08-01789 (SMB) |
| SECURITIES INVESTOR PROTECTION | : | |
| CORPORATION, | : | SIPA Liquidation |
| | : | (Substantively Consolidated) |
| Plaintiff-Applicant, | : | |
| | : | |
| – against – | : | |
| | : | |
| BERNARD L. MADOFF INVESTMENT | : | |
| SECURITIES LLC, | : | |
| | : | |
| Defendant. | : | |

---------------------------------------------------------X

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

---------------------------------------------------------X

| | | |
|---|---|---|
| IRVING PICARD, Trustee for the Liquidation | : | |
| of Bernard L. Madoff Investment Securities | : | |
| LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | Adv. Pro. No. 10-04390 (SMB) |
| | : | |
| BAM L.P., MICHAEL MANN and MERYL | : | |
| MANN, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## UPHOLDING COURT'S EQUITABLE JURISDICTION

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111

    David J. Sheehan, Esq.
    Dean D. Hunt, Esq.

Lan Hoang, Esq.
Nicholas J. Cremona, Esq.
Seanna R. Brown, Esq.
        Of Counsel

*Attorneys for Plaintiff*

SECURITIES INVESTOR PROTECTION
  CORPORATION
1667 K St., NW, Suite 1000
Washington, D.C. 20006

        Josephine Wang, Esq.
                General Counsel
        Kevin H. Bell, Esq.
                Senior Associate General Counsel
                For Dispute Resolution
        Nathanael S. Kelley, Esq.
                Associate General Counsel
                Of Counsel

*Attorneys for Securities Investor Protection
  Corporation*

DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10016

        Carole Neville, Esq.
                Of Counsel

*Attorneys for Defendants*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The Defendants filed proofs of claim and the Trustee responded with a fraudulent

transfer action.  The Defendants subsequently withdrew their claims with prejudice,

moved in the District Court to withdraw the reference and moved in this Court to stay a

previously scheduled trial of this adversary proceeding.  The latter motion raises the

question of whether a bankruptcy court loses its equitable jurisdiction over a fraudulent

transfer action because the defendant-creditor withdraws his proof of claim after the

adversary proceeding was filed but before the bankruptcy court has tried the matter.

2

The Court concludes that it acquired equitable jurisdiction over the Trustee's fraudulent transfer action when it was commenced under the time-of-filing rule, and the Defendants' withdrawal of their claims did not destroy it. Accordingly, the Defendants' motion to stay the trial on that basis is denied.[1]

## BACKGROUND[2]

This adversary proceeding arises out of the Ponzi scheme perpetrated by Bernard Madoff through Bernard L. Madoff Investment Securities LLC ("BLMIS"). The background to Madoff's scheme has been recounted in numerous reported opinions, *see, e.g.*, *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 415 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015); *Picard v. JPMorgan Chase & Co.* (*In re BLMIS*), 721 F.3d 54, 58-59 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2895 (2014); *SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011) ("*Net Equity Decision*"), *cert. denied*, 567 U.S. 934 (2012), and the Court limits the discussion to the facts necessary to explain this decision.

On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") commenced a liquidation against BLMIS under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA").[3] The District Court appointed Irving H. Picard, Esq.

---

[1]     Notwithstanding this conclusion, the trial is not imminent. The Trustee has moved for summary judgment, and even if that motion is denied, the Court will await the District Court's disposition of the motion to withdraw the reference.

[2]     The citation "ECF Doc. #" refers to the electronic docket in this adversary proceeding. Where the Court refers to the electronic docket in the main case (08-01789) or another proceeding, the citation so indicates.

[3]     The SEC had commenced an action against BLMIS on December 11, 2008, and thereafter consented to the combination of its own action with the SIPA proceeding. December 11, 2008 is deemed the "Filing Date" of the SIPA proceeding for purposes of computing the reach back of the fraudulent transfer claims at issue. *See* SIPA § 78*lll*(7).

as trustee ("Trustee"), *see* SIPA § 78eee(b)(3), and removed the liquidation to this Court,

SIPA § 78eee(b)(4), where it is to be conducted, to the extent consistent with SIPA, in

accordance with chapters 1, 3 and 5 and subchapters I and II of chapter 7 of title 11. *See*

SIPA § 78fff(b).

## A.    Claims Allowance Process

SIPA § 78fff-2 sets out the general parameters of the claims procedure in a SIPA

liquidation. Following his or her appointment, the SIPA trustee must publish notice of

the proceedings and mail notice to each customer. SIPA imposes two time limits for

filing a statement of claim keyed to the notice of publication – an initial time limit of

sixty days or less and an outer time limit of six-months. A customer who files the claim

during the initial period has greater rights regarding the satisfaction of his net equity

claim than the customer who files after the initial period but before the six-month

deadline, *see Camp v. Morey* (*In re Gov't Sec. Corp.*), 107 B.R. 1012, 1018-1019 (S.D.

Fla. 1989), but the distinction is irrelevant in this case. After receipt of the written

statement of claim, the SIPA trustee is required to promptly discharge the obligations or

net equity claims owed to the customer "insofar as such obligations are ascertainable

from the books and records of the debtor or are otherwise established to the satisfaction

of the trustee." SIPA § 78fff-2(b). SIPA does not set out a claims objection or claims

resolution procedure.

Accordingly, the Court established a thorough procedure for resolving claims, *see*

*Peskin v. Picard*, 440 B.R. 579, 585 (S.D.N.Y. 2010), in the *Order on Application for an*

*Entry of an Order Approving Form and Manner of Publication and Mailing of Notices,*

*Specifying Procedures for Filing, Determination, and Adjudication of Claims; and*

*Providing Other Relief*, Dec. 23, 2008 ("*Claims Procedure Order*") (ECF Main Case

Doc. # 12).  The *Claims Procedure Order* tracked the time limits under SIPA.  (*See*

*Claims Procedure Order* at 7.)  In the event the Trustee determined that the customer's

statement of claim was not supported by BLMIS' books and records, the following

procedures governed the resolution of the dispute: (i) the Trustee notified the customer

in writing of his determination to disallow the claim, in whole or in part, and his

reasons, (*id.* at 6); (ii) if the customer disagreed with the Trustee's determination, he

had thirty days to file a written statement of his opposition along with supporting

documentation, failing which "the Trustee's determination shall be deemed approved by

the Court and binding on the claimant," (*id.* at 7); and (iii) upon receipt of the

customer's opposition, the Trustee would obtain a hearing date from the Court and

notify the customer.  (*Id.*)

## B.    The Defendants' Claims and the Trustee's Determinations

Per the *Claims Procedure Order*, Michael Mann and Meryl Mann served the

Trustee with a statement of claim, dated June 16, 2009, for BLMIS Account No. 1CM363

(the "Mann Claim"), in the amount $7,192,467.45.[4]  The Mann Claim was based on the

handwritten, corrected balance shown on the Manns' last customer statement, dated

November 30, 2008.  BAM L.P. ("BAM") served the Trustee with the BAM Claim, dated

June 16, 2009, regarding Account No. 1CM579, in the amount of $714,333.85.  The

---

[4]      The Defendants' claims (the Mann Claim, the "BAM Claim," and together, the "Defendants'
Claims"), the Trustee's determinations relating to those claims (the "Mann Determination," the "BAM
Determination," and together, the "Determinations") and the Defendants' objections to the Trustee's
Determinations (the "Mann Objection," the "BAM Objection," and together, the "Objections"), all
discussed in the succeeding text, are annexed as Exhibit 3 to the *Declaration of Nicholas J. Cremona in
Support of Memorandum of Law in Opposition to Motion for a Stay of Trial Pursuant to Rule 5011(c)
Pending Ruling by District Court on Defendants' Motion to Withdraw the Reference*, dated Nov. 27, 2018
("*Cremona Declaration*") (ECF Doc. # 128).

BAM Claim was also based on the handwritten, corrected balance shown on BAM's last customer statement, dated November 30, 2008.

The Trustee denied the Defendants' Claims. (*See* Determinations.) He explained that no securities were ever purchased for their BLMIS accounts, and the Defendants withdrew more than they deposited into their accounts over the lives of the accounts.[5] The Manns withdrew $5.8 million more than they deposited, and BAM withdrew $1,135,993.39 more than it deposited. Each Determination included a chart showing all deposits into and withdrawals from the account.

The Defendants filed the same Objections to the Determinations.[6] For the most part, the Objections raised purely legal issues. They primarily argued that the Last Statement Method, under which net equity was determined by the balance shown in the November 30, 2008 monthly customer statement, rather than the Trustee's Net Investment Method, which offset withdrawals against deposits, should control. They further argued that the Trustee's net equity calculation was barred by the statute of limitations on avoidance actions and should include interest or a similar adjustment to reflect the passage of time. In paragraph 10 of the Objections, the Defendants also asserted that the Determinations violated the *Claims Procedure Order* because they failed to state the reason for the disallowance of the claims and the relevant facts and legal theories on which the Determination was based (citing relevant bankruptcy law), (Mann Objection ¶ 10(a), (c)), failed to rebut the *prima facie* validity of the claims

---

[5]    The Mann account was opened in 1996 and the BAM account was opened in 1999.

[6]    Accordingly, the Court cites only to the Mann Objection.

6

(citing Bankruptcy Code § 502(a) and FED. R. BANKR. P. 3001(f)) (Mann Objection ¶ 10(b)), and as a factual matter, "includes an exhibit which purportedly calculates the money deposited less subsequent withdrawals, but is completely unsubstantiated and incorrect." (Mann Objection ¶ 10(d)) (collectively, the "Paragraph 10 Objections"). Finally, the Defendants reserved "the right to revise, supplement, or amend" their Objections. (Mann Objection ¶ 24.)

## C.    This Adversary Proceeding

The Trustee filed his original complaint commencing this adversary proceeding on November 30, 2010 (the "*Complaint*") (ECF Doc. # 1) and filed an amended complaint (the "*Amended Complaint*") in the District Court while a motion to withdraw the reference was pending. (*See Amended Complaint*, dated Jan. 25, 2012 (ECF Dist. Ct. No. 11 Civ. 07667 Doc. # 9).) As noted in the Determinations, the Defendants were "net winners" because they withdrew more than they deposited. The Trustee sought, *inter alia*, to avoid and recover the excess transfers to the Defendants, *i.e.*, the negative net equity, made during the six years and two years (the "Two-Year Transfers") prior to the Filing Date under bankruptcy and state fraudulent transfer law.[7]

Both the *Complaint* and the *Amended Complaint* included, as Exhibit B, the Trustee's calculation of all deposits into and withdrawals from the Defendants' BLMIS accounts. The calculations in Exhibit B were identical to the calculations evidencing the

---

[7]    The Trustee had also asserted a claim against NTC & Co. LLP which was dismissed by stipulation and order. (*Stipulation and Order for Voluntary Dismissal Without Prejudice*, dated Apr. 20, 2011 (ECF Doc. # 12).) In addition, by stipulation and order dated August 19, 2015, the Trustee dismissed counts seeking to avoid obligations (with prejudice), subsequent transfer claims against two other defendants (without prejudice) and all fraudulent transfer claims (with prejudice) except for claims to avoid the Two-Year Transfers under Bankruptcy Code § 548(a)(1)(A). (*Stipulation and Order*, dated Aug. 19, 2015 (ECF Doc. # 46).)

Defendants' negative net equity included in the Determinations.  Exhibit B showed that

the Manns and BAM had received $2.25 million and $563,000, respectively, within two

years of the Filing Date.  Neither pleading included a count to disallow the Defendants'

Claims under 11 U.S.C. § 502(d) or for any other reason.  Instead, they stated that "[t]he

Trustee intends to resolve the Mann Customer Claim, BAM Customer Claim, and Claims

Objections to the Trustee's determination of such claims through a separate hearing as

contemplated by the Claims Procedures Order." (*Complaint* ¶ 52; *accord Amended

Complaint* ¶ 55.)

## D.    Disposition of the Defendants' Claims

Prior to the filing of the adversary proceeding, the Bankruptcy Court had rejected

the Last Statement Method, upheld the use of the Net Investment Method to calculate

net equity, and overruled certain objections, including the Defendants' Objections,

"insofar as those objections are based upon using the Final Customer Statements rather

than the Net Investment Method to determine Net Equity." (*Order (1) Upholding

Trustee's Determination Denying Customer Claims for Amounts Listed on Last

Customer Statement; (2) Affirming Trustee's Determination of Net Equity; and (3)

Expunging Those Objections with Respect to the Determinations Relating to Net

Equity*, dated Mar. 8, 2010 (ECF Main Case Doc. # 2020).)[8]  The Court's order was

appealed directly to the Second Circuit which affirmed in 2011, *see Net Equity Decision*,

and the Supreme Court denied petitions for a writ of *certiorari* in 2012.  *See Velvel v.*

---

[8]       The order is annexed as Exhibit 4 to the *Cremona Declaration*, and refers to the claims identified
in Exhibit A to the Trustee's earlier motion. (*See* ECF Main Case Doc. # 530.)  The latter included the
Mann Claim but not the BAM Claim because the Trustee's motion and Exhibit A were filed before BAM
filed the BAM Objection.  Nevertheless, the parties agree that the order also covers the BAM Claim.

*Picard,* 567 U.S. 934 (2012). The Supreme Court's action ended any further challenge to the use of the Net Investment Method. The *Net Equity Decision* also implicitly rejected the contention that the Net Investment Method violated any statute of limitations because the Net Investment Method required the Trustee to compute withdrawals and deposits over the entire life of the account.

After this adversary proceeding was commenced, the Bankruptcy Court overruled the objection based on the Trustee's failure to make any adjustments to account for time-based damages such as interest. *SIPC v. BLMIS* (*In re BLMIS*), 496 B.R. 744, 761 (Bankr. S.D.N.Y. 2013). The Court's order was appealed directly to the Second Circuit which affirmed. *SIPC v. 2427 Parent Corp.* (*In re BLMIS*), 779 F.3d 74 (2015). The Supreme Court denied a petition for a writ of *certiorari* later that year. *See Peshkin v. Picard*, 136 S. Ct. 218 (2015).

With the latter denial, only the Paragraph 10 Objections, including the Defendants' factual objections to the computation of the deposits and withdrawals listed in the Determinations, remained unresolved. These were the same computations listed in Exhibit B to the *Complaint* and the *Amended Complaint.* To compute net equity, the Trustee is required to subtract withdrawals from deposits over the life of each BLMIS account. *See Net Equity Decision*, 654 F.3d at 238-39 ("[T]he Net Investment Method allows the Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's books and records, and results in a distribution of customer property that is proper under SIPA.").

To compute the amount of fictitious profits, the Trustee must engage in the same exercise. *SIPC v. BLMIS* (*In re BLMIS*), 499 B.R. 416, 430 (S.D.N.Y. 2013) ("[T]he Court finds that a straight netting method—subtracting total withdrawals from total deposits of principal—is the appropriate way to calculate not only net equity but also a defendant's fraudulent-transfer liability."), *cert. for interlocutory appeal denied*, 987 F. Supp. 2d 309 (S.D.N.Y. 2013); *Picard v. Greiff* (*In re BLMIS*), 476 B.R. 715, 729 (S.D.N.Y. 2012) (Under the first step in computing potential clawback liability, "amounts transferred by Madoff Securities to a given defendant at any time are netted against the amounts invested by that defendant in Madoff Securities at any time."), *aff'd sub nom. on other grounds*, *Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2859 (2015); *see* Transcript of 9/26/18 Hr'g at 17:19-22 (concession by Defendants' counsel) (ECF Main Case Doc. # 18045); Transcript of 11/28/18 Hr'g ("Tr. 11/28/18") at 13:3-7 (same) (ECF Doc. # 130). However, because the Trustee can only recover fictitious profits transferred within two years of the Filing Date, *see* 11 U.S.C. § 548(a)(1), the aggregate amount of the Two-Year Transfers caps the Defendants' clawback liability. *Picard v. Greiff*, 476 B.R. at 729 (After netting deposits and withdrawals, "if the amount transferred to the defendant exceeds the amount invested, the Trustee may recover these net profits from that defendant to the extent that such monies were transferred to that defendant in the two years prior to Madoff Securities' filing for bankruptcy. Any net profits in excess of the amount transferred during the two-year period are protected from recovery by the Bankruptcy Code's statute of limitations. *See* 11 U.S.C. § 548(a)(1)."). In other words, a good faith defendant's clawback liability is the lesser of the fictitious profits received

over the life of his BLMIS account (*i.e.*, all of the negative net equity) and the aggregate

amount of transfers from the account received within two years of the Filing Date.[9]

### E.    The Withdrawal of the Defendants' Claims

The Court conducted a pre-trial conference on September 26, 2018 and

scheduled a trial for December 3, 2018. (*Order Setting Trial*, dated Sept. 28, 2018 (ECF

Doc. # 108).) In response, the Defendants moved one month later to withdraw the

reference, and on or about November 20, 2018, moved to stay the December 3 trial. The

Court scheduled a hearing for November 28, 2018. By then, the parties had submitted a

proposed joint pre-trial order in which they stipulated to the deposits and withdrawals

and the Two-Year Transfers in the amounts of $2.25 million from the Mann account and

$563,000 from the BAM account. Putting aside the objection relating to the legal

sufficiency of the Determinations (and the Defendants' reservation of their rights, if any,

to amend or supplement their Objections), it seemed that the Defendants' Objections

had been resolved through judicial determinations or by stipulation.

The effect of the pendency of the Defendants' Claims on this Court's ability to try

the adversary proceeding was much debated. Since their Objections now appeared to

have been resolved and there was no point to forcing the Defendants to litigate their

claims when they no longer asserted a right to payment, the Court offered the

Defendants the opportunity at the November 28 hearing to make an oral motion to

withdraw the Defendants' Claims with prejudice. The Defendants accepted the

---

[9]    A "good faith" defendant is one who did not know or willfully blinded himself to the fact that
BLMIS was engaged in a Ponzi scheme and the transactions listed on his monthly customer statements
were entirely fictitious. The Defendants are "good faith" defendants.

invitation, (Tr. 11/28/18 at 16:6-14), and the Court granted the motion. (*Order Withdrawing Claims and Objections with Prejudice and Finally Determining Net Equity*, dated Dec. 20, 2018 (ECF Doc. # 138).) However, the order made clear that it did not determine "this Court's jurisdiction over the adversary proceeding or any other issues in that case." In addition, the Trustee announced his intention to move for summary judgment (which he has done), and the Court stated that it would deal with the question of its equitable jurisdiction, which the parties had already briefed,[10] either before or in the context of the summary judgment motion. (Transcript of 12/19/18 Hr'g at 51:3-7 (ECF Doc. # 147).) This memorandum reflects the Court's disposition of that issue.

## DISCUSSION

### A.      The Basis of the Court's Equitable Jurisdiction

Bankruptcy Code § 502(d) mandates the disallowance of any claim filed by a creditor that received a fraudulent transfer unless and until the creditor restores the transferred property or its value to the estate.[11] Section 502(d) establishes the link

---

[10]      *See Trustee's Memorandum of Law on the Legal Effect of the Ruling Withdrawing Claims and Objections with Prejudice and in Support of Motion to Strike the Mann Defendants' Jury Demand*, dated Dec. 5. 2018 (ECF Doc. # 131); *Memorandum of Law of the Securities Investor Protection Corporation on the Legal Effect of the Order Withdrawing Claims and Objections with Prejudice and in Support of Motion to Strike the Mann Defendants' Jury Demand*, dated Dec. 5, 2018 (ECF Doc. # 132); *Defendants' Response to Trustee and the Securities Investor Protection Corporation's Memoranda on the Legal Effect of the Order Withdrawing Claims and Objections with Prejudice and in Support of the Motion to Strike the Defendants' Jury Demand*, dated Dec. 12, 2018 ("*Defendants Memo*") (ECF Doc. # 137).

[11]      Section 502(d) states:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

between this adversary proceeding to avoid and recover fraudulent transfers and the claims allowance process triggered by the Defendants' Claims.  An objection under section 502(d) "is, like other objections, part and parcel of the allowance process and is subject to adjudication by a bankruptcy court."  *Katchen v. Landy*, 382 U.S. 323, 330 (1966) (discussing section 502(d)'s predecessor, section 57g of the former Bankruptcy Act, 11 U.S.C. § 93(g) (repealed)).  Thus, even if a defendant would be entitled to a jury trial on the avoidance claim had he not filed a claim against the bankruptcy estate, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36 (1989), the filing of a claim brings the creditor within the bankruptcy court's equitable jurisdiction where the avoidance action will be determined by the bankruptcy court without a jury.  *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990); *Katchen v. Landy*, 382 U.S. at 336-37.

Not every claim filing triggers the bankruptcy court's equitable jurisdiction and defeats the defendant-creditor's right to a jury trial.  *Bankr. Servs., Inc. v. Ernst & Young* (*In re CBI Holding Co., Inc.*), 529 F.3d 432, 466 (2d Cir. 2008) ("[F]iling a proof of claim is a necessary but not sufficient condition to forfeiting a creditor's right to a jury trial."), *cert. denied*, 556 U.S. 1183 (2009); *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) ("We agree that the filing of a proof of claim is a *necessary* condition – the claims – allowance process can hardly begin before a claim is made – however, it is not a *sufficient* condition.") (emphasis in original).  "Rather, a creditor loses its jury trial right only with respect to claims whose resolution affects the

_____

For purposes of section 502(d), there is no distinction between preferences under Bankruptcy Code § 547 and fraudulent transfers under Bankruptcy Code §§ 544 and 548. In either case, the claims are disallowed if the transfer is avoided.

allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship." *CBI Holding*, 529 F.3d at 466; *accord Stern v. Marshall*, 564 U.S. 462, 496-99 (2011).

Principles of collateral estoppel and *res judicata* dictate whether a proceeding affects the claims allowance process or the restructuring of the debtor-creditor relationship. *Katchen v. Landy*, 382 U.S. at 334. If the bankruptcy court must determine the same issues or claims in connection with the adversary proceeding and the allowance of the proof of claim, a determination of the issue or claim in one proceeding will preclude the relitigation of the same issue or claim in the other proceeding. Avoidance claims always implicate the claims allowance process because the trustee must avoid the transfer to recover against the defendant-creditor and disallow the defendant-creditor's claim under Bankruptcy Code § 502(d).

The filing of a statement of claim under SIPA is the "functional equivalent" of filing a claim in a bankruptcy case. *SIPC v. BLMIS* (*In re BLMIS*), 513 B.R. 437, 443 (S.D.N.Y. 2014). In the absence of a conflict between SIPA and Bankruptcy Code § 502(d), "section 502(d) applies to customer claims brought under SIPA section 78fff-2," *id.*, and the filing of the statement of claim subjects the customer to the bankruptcy court's equitable jurisdiction to the same extent as in an ordinary bankruptcy case.[12] *Picard v. Saren-Lawrence* (*In re BLMIS*), No. 17 Civ. 5157 (GBD), 2018 WL 2383141, at *3-5 (S.D.N.Y. May 15, 2018), *reconsideration denied*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018); *Zaremba v. Pheasant* (*In re Cont'l Capital Sec.*), No. 3:06 CV 02394

---

[12]    The Defendants' argument that a customer claim under SIPA is not the "functional equivalent" of a proof of claim in a bankruptcy case, (*Defendants Memo* ¶¶ 35-36), ignores the contrary case law.

(JGC), 2007 WL 5964307, at *2 (N.D. Ohio Sept. 19, 2007); *Keller v. Blinder* (*In re Blinder Robinson & Co., Inc.*), 135 B.R. 892, 895-97 (D. Colo. 1991). Although the Defendants contest this conclusion for reasons discussed later, the determination in favor of the Trustee on his fraudulent transfer claims would mandate the disallowance of the Defendants' Claims.

## B.    The Effect of Disallowance or Withdrawal of the Claim

The principal question is whether the Defendants' withdrawal of their claims on the eve of trial strips the Court of its equitable jurisdiction. The majority of cases that have considered the issue have concluded that it does not. *E.g, Seven Ctys. Servs., Inc. v. NextGen Healthcare Info. Sys., Inc.*, Civil Action No. 3:14CV330-S (CRS), 2014 WL 3941789, at *2 (W.D. Ky. Aug. 12, 2014) (a creditor cannot "un-ring the bell" by withdrawing its claim "after 'recognizing the [unforeseen] alleged implications of the filing ...'") (internal citation omitted); *Wagner v. Appelman* (*In re Vaughan Co.*), No. 12-CV-0197 WJ/SMV, 2014 WL 12789686, at *6 (D.N.M. July 22, 2014) ("[E]ven if a proof of claim is withdrawn, the right to a jury trial is not thereby restored. Once a proof of claim is filed, the right to a jury trial is extinguished as to any issue that bears on the claims-allowance process.") (citing *Langenkamp*, 498 U.S. at 44–45); *Siegel v. Cal. Self-Insurers' Sec. Fund* (*In re Circuit City Stores, Inc.*), No. 08-35653-KRH, 2016 WL 1714515, at *7 (Bankr. E.D. Va. Apr. 26, 2016) ("The fact that the Fund later withdrew its proofs of claim is of no moment. The general rule is that 'by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.' It follows that a creditor cannot seemingly un-pull the trigger of this Court's equitable power by

withdrawing its proof of claim.") (quoting *Langenkamp,* 498 U.S. at 44); *Kriegman v.*

*Phillips* (*In re LLS AMERICA, LLC*), No. 09-06194-PCW11, 2013 WL 12122309, at *2

n.2 (Bankr. E.D. Wash. May 2, 2013) ("[W]ithdrawal [of a proof of claim] has no effect

upon jurisdiction."); *MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l* (*In re*

*WorldCom, Inc.*), 378 B.R. 745, 754 (Bankr. S.D.N.Y. 2007) ("[I]t is immaterial whether

the proof of claim has been disallowed prior to the Court's determination of the jury trial

demand. . . .  [T]he filing of the proof of claim invokes the claims-allowance process and

the creditor subjects itself to the equitable jurisdiction of the Court thereby waiving its

right to a jury trial as to any issue that bears directly on the claims-allowance process.");

*Enron Corp. v. Citigroup, Inc.* (*In re Enron Corp.*), 349 B.R. 108, 114 n.2 (Bankr.

S.D.N.Y. 2006) ("The disposition of a claim, alone, does not nullify the consequences of

a creditor's invocation of jurisdiction premised upon such claim."); *EXDS, Inc. v. RK*

*Elec., Inc.* (*In re EXDS, Inc.*), 301 B.R. 436, 440 (Bankr. D. Del. 2003) ("[Claimant] lost

its right to a jury trial because it elected to participate in the equity court proceeding.

Given the unequivocal language of *Langenkamp* and *Travellers* as to the effect of filing

a proof of claim, I do not believe that a creditor can, for strategic reasons, reverse the

result it triggered by filing a proof of claim by later withdrawing the claim."); *Acad., Inc.*

*v. James, Hoyer, Newcomer and Smiljanich, P.A.* (*In re Acad., Inc.*), 289 B.R. 230, 234

(Bankr. M.D. Fla. 2003) ("The defendants voluntarily came to this court to assert their

claims against the plaintiff.  In so doing, they consented to the jurisdiction of the court

for the purpose of their claims against the plaintiff and the plaintiff's claims against

them.  The fact that they no longer wish to assert claims against the plaintiff should not

impact in any way the court's jurisdiction over them for the purpose of the plaintiff's

claims against them."); *see also Moore v. Mobley* (*In re Sea Island Cotton Trading,*

16

*Inc.*), No. 00-06033A (JSD), 2000 WL 33952877, *3 (Bankr. S.D. Ga. July 25, 2000) ("A consequence of filing a proof of claim is waiving the right to a jury trial. Defendants' assignment of the claims does not reverse their submission to this court's jurisdiction.").

The Defendants cite several decisions for the contrary proposition, (*Defendants Memo* ¶ 27), but all save one are distinguishable or incorrectly decided. Both *Germain v. Conn. Nat'l Bank* and *Picard v. Katz*, 825 F. Supp. 2d 484 (S.D.N.Y. 2011) ("*Katz*") dealt with the defendant-creditor's opposition to the trustee's request for a jury trial. In *Germain*, the defendant had filed a proof of claim and the trustee thereafter sued the defendant alleging it had used its power as the debtor's primary lender to exercise control over the debtor to its detriment. 988 F.2d at 1325-26. The Second Circuit noted the limitation on the jury trial waiver; under *Katchen, Granfinanciera,* and *Langenkamp*, "for a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue." *Germain*, 988 F.2d at 1329-30. However, the Court would "not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only *incidentally related* to the bankruptcy process." *Id.* at 1330 (emphasis added). Unlike the claims asserted in the litigation against the creditor in *Germain*, the fraudulent transfer claims in this case are directly related to the claims allowance process through Bankruptcy Code § 502(d).

*Katz* involved a similar issue except that the Trustee had brought a fraudulent transfer action against the defendants. The District Court concluded that the fraudulent

transfer claims were legal in nature, and the Trustee had a right to a jury trial. *Katz*, 825 F. Supp. 2d at 485-86. Noting that a waiver occurs when the dispute is part of the claims allowance process or affects the reordering of creditor claims, the District Court ruled that it had withdrawn the reference "substantially severing adjudication of the Trustee's fraudulent transfer actions from both 'the claims-allowance process' and 'the hierarchical reordering of creditors' claims.'" *Id.* at 486-87. As a result, Congress' regulatory scheme for the adjudication of claims embodied in SIPA "simply cannot take priority over the Trustee's Seventh Amendment right to a jury trial." *Id.* at 487. Here, the District Court has not withdrawn the reference or "severed" the connection with the claims allowance process.[13]

In *Riederer v. Kutak Rock, LLP* (*In re Brooke Corp.*), Adv. No. 10–06246 (DLS), 2011 WL 4971503 (Bankr. D. Kan. Sept. 14, 2011) (report and recommendation), *adopted*, No. 11–2517–JAR, 2011 WL 4972076 (D. Kan. Oct. 19, 2011), the trustee sued

---

[13]    I do not suggest that the withdrawal of the reference or the other grounds for the *Katz* Court's conclusions should make a difference. In *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, No. 3:10–CV–1842–G (AJF), 2012 WL 987539 (N.D. Tex. Mar. 21, 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1430 (2015), the Court questioned the soundness of *Katz's* reasoning on three bases. First, *Katz* failed to recognize *Germain's* statement that a preference action would implicate the claims allowance process. Second, Katz failed "to recognize that Section 502(d) seems to make preference and fraudulent conveyance actions necessarily integral to this process." Third, *Katz* cited no authority to support the proposition that the withdrawal of the reference "substantially severed" the adjudication of the fraudulent transfer action from the claims allowance process, and motions to withdraw the reference have found that *Langenkamp* applies. *Id.* at *5; *accord In re Vaughn Co.*, 2014 WL 12789686, at *3 ("The [*Katz*] court cites no authority for the proposition that withdrawal of the reference under 28 U.S.C. § 157(b) severs proceedings from the claims-allowance process. Nor does the [*Katz*] court explain why *Langenkamp* does not apply. Therefore, this Court declines to follow [*Katz*].") (footnote omitted); *Kapila v. Bank of Am., N.A.* (*In re Pearlman*), 493 B.R. 878 (Bankr. M.D. Fla. 2013) (disagreeing with *Katz's* reasoning because "[t]he district courts serve as the original courts of equity for all bankruptcy related proceedings. Trying a fraudulent conveyance claim in the district court, which has all the equitable powers assigned to a bankruptcy court, no more disrupts the equitable distribution process or severs legal claims from equity than if the district court chose to resolve the bankruptcy matter in its entirety, which it is entitled to do.") (footnote omitted). In other words, even if the District Court withdraws the reference, the disposition of the fraudulent transfer action will still affect the claims allowance process through Bankruptcy Code § 502(d).

the defendants for allowing the debtor to pay unlawful redemptions and dividends and for breach of fiduciary duty. Addressing a motion to withdraw the reference, the Bankruptcy Court concluded that the filing of proofs of claim did not waive the defendants' jury trial rights because the issues in the adversary proceeding did not directly involve the claims allowance process, and importantly, "[t]he Trustee has made no argument that resolution of the Adversary Case will directly implicate the claims resolution process." *Id.* at *4. In contrast, the Trustee's fraudulent transfer claims implicated the claims allowance process because avoidance of the Two-Year Transfers would have mandated the disallowance of the Defendants' Claims under Bankruptcy Code § 502(d).

In *Mirant Corp. v. S. Co.*, 337 B.R. 107 (N.D. Tex. 2006), the debtor and the creditors committee sued the defendants asserting, *inter alia*, common law and fraudulent transfer claims. The defendants moved to withdraw the reference and transfer the case based on their jury demand. The District Court concluded that the defendants were entitled to a jury trial on the fraudulent transfer claims because the right to a jury trial is presumed, "[t]here is no suggestion in the record that Southern has knowingly, voluntarily, and intelligently waived its right to trial by jury," and the fraudulent transfer claims did not implicate the claims allowance process because only preference claims implicated the claims allowance process. *Id.* at 121 (citing *Langenkamp* and *Katchen*).

The decision was subsequently criticized in another decision by the same court (but a different judge) in *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, No. 3:10–CV–1842–G (AJF), 2012 WL 987539 (N.D. Tex. Mar. 21, 2012), *aff'd*, 761 F.3d 409 (5th

Cir. 2014), *cert. denied*, 135 S. Ct. 1430 (2015). There, the District Court concluded that *Mirant*'s waiver analysis was incorrect; the filing of the proof of claim transformed the legal dispute into an equitable dispute regardless of what the creditor intended. Moreover, there is no basis to distinguish between preference actions and fraudulent transfer actions. *Id.* at *4; *William M. Condrey, P.C. v. Endeavour Highrise, L.P.* (*In re Endeavour Highrise L.P.*), 425 B.R. 402, 408 n. 3 (Bankr. S.D. Tex. 2010) ("This Court can see no way to harmonize its own interpretation of *Katchen, Granfinanciera*, and *Langenkamp* with the District Court's interpretation, in *Mirant*, of these three cases.").

The one case cited by the Defendants that does support their position is *Messer v. Magee* (*In re FKF 3, LLC*), Case No. 13-CV-3601 (KMK), 2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016). There, the principals of the debtor operated a fraudulent scheme inducing investors to lend money to the debtor based on the misrepresentation that the debtor would make secured loans at higher interest rates. In fact, the principals converted the funds for their own benefit. *Id.* at *2. Following the commencement of an involuntary case and the entry of an order for relief, one of the principals (Magee) filed two claims: a claim for $609,448.46 based on a loan evidenced by a promissory note and a claim in the sum of $30 million based on breaches of fiduciary duty and mismanagement. *Id.* at *1. The $30 million claim was eventually expunged, but before that had happened, the trustee commenced an adversary proceeding against Magee and many others on a variety of common law and fraudulent transfer theories and sought disallowance of their claims under 11 U.S.C. § 502(d). *Id.* at *2-3.

Addressing a motion to withdraw the reference, the District Court concluded that the Bankruptcy Court lacked adjudicative authority over the breach of fiduciary duty

claims.  Even if Magee's filing of the breach of fiduciary duty claim might have authorized the Bankruptcy Court to decide the Trustee's common law breach of fiduciary duty claims as part of the claims allowance process, that claim had been expunged, the expungement did not resolve the trustee's counterclaims, and there was no longer any possibility that resolving Magee's claim would resolve the trustee's state law counterclaims.  *Id.* at *8.[14]  "In other words, timing matters."  *Id.*  The District Court also rejected reliance on contrary authority decided before *Stern v. Marshall*.  *Id.* at *8 n. 3 ("*Stern* suggests that the relevance of filing a proof of claim to the Article III analysis is limited by its practical implications for the claims resolution process.  In particular, the justification for the 'necessarily resolved' rule is practical: where a Trustee's counterclaims are resolved by the bankruptcy court in the process of adjudicating a creditor's proof of claim, the creditor has 'no basis' for demanding a second adjudication of those claims in an Article III court.") (*citing Stern*, 564 U.S. at 496).

In reaching its conclusion regarding "timing," the District Court cited a decision of this Court (also cited by the Defendants) which reached the same conclusion.  *See SIPC v. BLMIS*, 531 B.R. 439, 455 (Bankr. S.D.N.Y. 2015) ("The Court's authority to enter a final judgment depends, therefore, on whether a particular defendant filed a claim that is still subject to allowance or disallowance through the claims allowance process [but] no § 502(d) disallowance claim would lie against a defendant who filed a

---

[14]     The District Court reached the opposite conclusion with respect to the Trustee's fraudulent transfer and turnover claims because Magee's remaining claim based on the promissory note remained unresolved and section 502(d) mandated its disallowance if the trustee prevailed on those counterclaims. *FKF 3, LLC*, 2016 WL 4540842, at *11.

claim that has been finally disallowed."); *cf. Picard v. Estate of Igoin* (*In re BLMIS*),

525 B.R. 871, 887–88 (Bankr. S.D.N.Y. 2015) (Trustee could not base personal

jurisdiction on the filing of a SIPA claim that had been finally disallowed because the

adversary proceeding did not implicate the claims allowance process).  In light of the

fuller briefing on this issue submitted by the parties, the Court is persuaded to revisit its

reasoning regarding the timing issue and reach a different conclusion for the reasons

discussed immediately below.  *See SIPC v. BLMIS* (*In re BLMIS*), 513 B.R. at 442

(revisiting and reversing the earlier determination in *Picard v. Katz*, 462 B.R. 447, 456

(S.D.N.Y. 2011) that Bankruptcy Code § 502(d) does not apply in SIPA).

## C.    Jurisdiction and the Time-of-Filing Rule

While the Court agrees that timing matters, it is the time of filing rather than the

time of trial that determines the existence of the bankruptcy court's equitable

jurisdiction.  "It has long been the case that 'the jurisdiction of the court depends upon

the state of things at the time of the action brought,'" *Grupo Dataflux v. Atlas Glob.

Grp., L.P.,* 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539

(1824)), and "[e]vents occurring subsequent to the institution of suit . . .  do not oust

jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90

(1938); *accord Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166

F.3d 59, 62 (2d Cir. 1999); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co.*, 93

F.3d 1064, 1071 (2d Cir. 1996).  The time-of-filing rule is most frequently invoked in

connection with diversity jurisdiction.  *E.g., Grupo Dataflux*, 541 U.S. at 570-71 ("This

time-of-filing rule is hornbook law (quite literally) taught to first-year law students in

any basic course on federal civil procedure.  It measures all challenges to subject-matter

jurisdiction premised upon diversity of citizenship against the state of facts that existed

at the time of filing.") (footnote omitted); *Freeport–McMoRan, Inc. v. K N Energy, Inc.*,

498 U.S. 426, 428 (1991) (per curiam) (stating "the well-established rule that diversity

of citizenship is assessed at the time the action is filed [and] if jurisdiction exists at the

time an action is commenced, such jurisdiction may not be divested by subsequent

events"); *see generally* 13E CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE &

PROCEDURE § 3608 (3d. ed. Oct. 2018 Update) ("It has long been hornbook law, applied

by courts at all levels of the federal judiciary throughout the nation, that whether federal

diversity of citizenship jurisdiction exists is determined by examining the citizenship of

the parties at the time the action is commenced by filing the complaint with the court. . .

."). However, the time-of-filing rule is not limited to diversity jurisdiction and applies

generally in determining the existence of federal jurisdiction. *CIT, Inc. v. 170 Willow St.*

*Assocs.*, No. 93 Civ. 1201 CSH, 1997 WL 528163, at *7 (S.D.N.Y. Aug. 26, 1997) ("[W]hile

this rule may trace its origins to the diversity context, courts have applied it in resolving

other jurisdictional disputes.") (collecting cases); *see, e.g., Dole Food Co. v. Patrickson*,

538 U.S. 468, 478 (2003) (plain text of 28 U.S.C. § 1441(d), which authorizes removal of

state court action brought against a foreign state as defined in section 1603(a), "requires

that instrumentality status be determined at the time suit is filed."); *Keene Corp. v.*

*United States*, 508 U.S. 200, 208 (1993) (in determining whether Court of Federal

Claims jurisdiction is barred over a claim "for or in respect to which" the plaintiff "has [a

suit or process] pending" in any other court, 28 U.S.C. § 1500, the "general rule" that

"subject-matter jurisdiction turns on the facts upon filing" applies); *FDIC v. Four Star*

*Holding Co.*, 178 F.3d 97, 100 (2d Cir. 1999) (FDIC's transfer of subject property to a

private third party did not divest district court of subject matter jurisdiction under

statute granting federal courts jurisdiction over suits to which FDIC is a party) (quoting *Freeport–McMoRan,* 498 U.S. at 428)).

Importantly, the time-of-filing rule also governs the bankruptcy court's subject matter jurisdiction. In determining whether the outcome in a proceeding will have a "conceivable effect" on the estate for the purpose of "related to" jurisdiction under 28 U.S.C. § 1334(b), "[c]onceivability is determined at the time the lawsuit is filed." *Nuveen Mun. Tr. v. WithumSmith Brown, P.C.,* 692 F.3d 283, 294 (3d Cir. 2012) (citing *Grupo Dataflux* and *Dole Food*); *accord In re WorldCom, Inc. Sec. Litig.,* 294 B.R. 553, 556 (S.D.N.Y. 2003) (The "conceivable effect" test "does not require federal district courts constantly to revisit jurisdictional findings to determine whether the effect of the litigation on the bankruptcy estate remains 'conceivable.' Instead, federal jurisdiction arising under Section 1334 is determined, like federal jurisdiction generally, on the basis [of] the facts at the time of removal."), *aff'd,* 368 F.3d 86 (2d Cir. 2004), *cert. denied,* 543 U.S. 1080 (2005); *see also Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,* 496 B.R. 706, 710 (S.D.N.Y. 2013) (quoting *WorldCom*). Consequently, the dismissal of the bankruptcy case does not automatically strip the bankruptcy court of jurisdiction over pending litigation. *Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V.* (*In re Millenium Seacarriers, Inc.*)*,* 458 F.3d 92, 96 (2d Cir. 2006); *Porges v. Gruntal & Co., Inc.* (*In re Porges*)*,* 44 F.3d 159, 162 (2d Cir. 1995); *Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.,* 337 B.R. 22, 25 (S.D.N.Y. 2005).

This case concerns the Court's equitable rather than its subject matter jurisdiction,[15] but the same time-of-filing rule should apply. *In re EXDS* is directly on point. There, the creditor (RK) filed a proof of claim, and the debtor subsequently commenced an adversary proceeding against RK to avoid and recover a preference. RK answered the complaint and demanded a jury trial. RK then moved for leave to withdraw its proof of claim under Federal Bankruptcy Rule 3006[16] in order to reinstate its right to a jury trial, and the debtor moved to strike the jury demand. *EXDS*, 301 B.R. at 437.

The bankruptcy court concluded that while RK sought to withdraw the proof of claim to reinstate its right to a jury trial, the withdrawal would not divest the bankruptcy court of its equitable jurisdiction. *Id.* at 438. In reaching its conclusion, the bankruptcy court focused on *Langenkamp*'s reliance on the sequence of events.[17] If the creditor's

---

[15]    The Court has subject matter jurisdiction over this adversary proceeding under SIPA § 78eee(b)(4), 28 U.S.C. §§ 1334(b), 157(a) & (b) and Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing Order of Reference No. M 10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

[16]    Rule 3006 provides in pertinent part:

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, . . . the creditor may not withdraw the claim except on order of the court. . . . The order of the court shall contain such terms and conditions as the court deems proper. . . .

[17]    The Bankruptcy Court noted that in *Travellers Int'l v. Robinson*, 982 F.2d 96 (3d Cir. 1992), the Court upheld the bankruptcy court's equitable jurisdiction even though the adversary proceeding was commenced before the proof of claim was filed. *EXDS*, 301 B.R. at 439. Some courts have expressly concluded that the sequence is irrelevant, and the adversary proceeding is part of the claims allowance process and subject to the bankruptcy court's equitable jurisdiction whether it is filed before or after the creditor-defendant files the proof of claim triggering the claims allowance process. *SNA Nut Co.* v. *Häagen-Dazs Co.*, 302 F.3d 725, 730 (7th Cir. 2002) (quoting *In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 798 (7th Cir. 1998)); *WorldCom*, 378 B.R. at 754. Other cases have concluded, consistent with the time-of-filing rule, that "the successful withdrawal of a creditor's claim prior to the initiation of an adversarial proceeding by the trustee renders the withdrawn claim a legal nullity for purposes of submission to the equitable jurisdiction of the bankruptcy court." *Smith v. Dowden*, 47 F.3d 940, 944 (8th Cir. 1995); *accord In re 20/20 Sport, Inc.*, 200 B.R. 972, 979 (Bankr. S.D.N.Y. 1996); *cf. Lehman Bros. Special Fin. Inc v. Bank of Am. Nat'l Ass'n* (*In re Lehman Bros. Holdings Inc.*), 544 B.R. 16, 34-36

claim is "met" by a preference action, the claim and the "ensuing" avoidance action "become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction.*" *EXDS*, 301 B.R. at 439 (emphasis in original) (quoting *Langenkamp*, 498 U.S. at 44-45 (in turn citing *Granfinanciera*, 492 U.S. at 57–58)).

At the time of filing of the adversary proceeding, RK was subject to the Bankruptcy Court's jurisdiction, there was no right to a jury trial, and RK could not reverse the result it triggered by later withdrawing its claim. *Id.* at 440. The Bankruptcy Court found support for its conclusion in the time-of-filing rule:

> In the matter before me, as in the *Langenkamp* case, the proof of claim was filed before the avoidance action was commenced. That fact pattern suggests a result similar to that involving federal jurisdiction based on diversity. Federal diversity jurisdiction depends on the citizenship of the parties at the time suit is filed. . . . In the matter before me, when the avoidance action complaint was filed, RK had already subjected itself to the jurisdiction of this bankruptcy court.

*Id.* at 440-41 (citations omitted).

There are several reasons supporting the conclusion that the time-of-filing rule governs the determination of a bankruptcy court's equitable jurisdiction. First, a concern animating the time-of-filing rule — improper manipulation of federal

---

(Bankr. S.D.N.Y. 2015) (claim withdrawn before adversary proceeding commenced cannot serve as basis for personal jurisdiction); *Cruisephone, Inc. v. Cruise Ships Catering & Servs.* (*In re Cruisephone, Inc.*), 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002) (same).

The Court need not address this issue because the Defendants filed their claims before the Trustee commenced the adversary proceeding. That said, one could argue that a creditor that files a claim *after* he has already been sued in an adversary proceeding waives any objection and impliedly consents to the exercise by the bankruptcy court of equitable jurisdiction to decide any issues in the adversary proceeding that affect the allowance of his claim.

jurisdiction, *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996); *CIT v. 170 Willow Street Assocs.*, 1997 WL 528163, at *7 — is equally applicable to a situation like the present one involving the Court's equitable jurisdiction.  If equitable jurisdiction depended on the status of the defendant-creditor's claim, the defendant-creditor could manipulate the bankruptcy jurisdiction at any time simply by withdrawing the claim.  Taking this argument to its logical conclusion, the defendant could seek to withdraw the claim at any time prior to final judgment if the defendant did not like the way the proceedings were unfolding.  Here, the Defendants' Claims were pending for nearly ten years, but they sought to withdraw them with prejudice at the Court's invitation only a few days before the trial was scheduled to begin.  Until then, the Paragraph 10 Objections continued to raise a live dispute and the Defendants' reservation of rights, if any, to amend or supplement their Objections remained a possibility.

It is no answer that Fed. R. Bankr. P. 3006 permits the bankruptcy court to condition the withdrawal of the claim, and consequently, could theoretically condition withdrawal on the retention of equitable jurisdiction over the companion adversary proceeding.  *See, e.g.*, *In re Kaiser Grp. Int'l, Inc.*, 272 B.R. 852, 856 (Bankr. D. Del. 2002) (conditioning withdrawal of claim on retention of jurisdiction).   First, if the bankruptcy court's equitable jurisdiction under the Supreme Court precedent discussed above depends on the *continuing* effect that the adversary proceeding will have on the claims allowance process, and the adversary proceeding will no longer have a practical effect on the claims allowance process because the defendant-creditor essentially consents to disallowance of his claim by seeking to withdraw it, there is no basis to

exercise equitable jurisdiction.  Second, in deciding whether to grant a motion to withdraw the claim, a trial court must consider whether the non-moving party will suffer legal prejudice.  *Moses v. CashCall, Inc.*, 781 F.3d 63, 89 (4th Cir. 2015) ("In general, withdrawal should be granted unless the party opposing the motion can demonstrate that it would be legally prejudiced by the withdrawal.") (quoting *Sempra Energy Trading Corp. v. Covanta Union, Inc.* (*In re Ogden N.Y. Servs., Inc.*), 312 B.R. 729, 732 (S.D.N.Y. 2004)).  The non-moving party does not suffer legal prejudice by being required to try the case before a jury rather than in the bankruptcy court.  *Ogden N.Y. Servs.*, 312 B.R. at 733; *In re 20/20 Sport*, 200 B.R. at 980 ("[L]egal prejudice is not visited upon [defendants] because they might have to try their case to a jury rather than to the court.") (quoting *Hoffmann v. Alside, Inc.,* 596 F.2d 822, 823 (8th Cir. 1979)).  In the absence of any other claim of legal prejudice, the bankruptcy court would arguably abuse its discretion by refusing to grant the withdrawal motion, especially where, as here, the withdrawal is with prejudice.

Second, the application of the time-of-filing rule is consistent with the pre-merger rule that a court's equitable jurisdiction was determined at the time of filing. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("[T]he settled rule is that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter.").

Third, the application of the time-of-filing rule is consistent with the Supreme Court's analysis in *Stern v. Marshall.*  There, the respondent ("Pierce") filed a proof of claim based on defamation in the petitioner's ("Vickie") bankruptcy case, and Vickie filed a counterclaim alleging tortious interference with a gift she expected from her late

28

husband, Pierce's father. 564 U.S. at 470. The bankruptcy court entered a $425 million judgment against Pierce on Vickie's counterclaim. *Id.* at 470-71.

The question before the Supreme Court was whether the bankruptcy court had the authority to enter the judgment. Vickie argued, among other things, that the bankruptcy court had the authority to enter a final judgment on her state law counterclaim under *Katchen* and *Langenkamp* because Pierce had filed a proof of claim. *Id.* at 495. Notably, the bankruptcy court had expunged Pierce's proof of claim almost a year before it entered the judgment. *Id.* at 497.

The Supreme Court did not, however, reject Vickie's argument on the basis that the disallowance of Pierce's claim severed her counterclaim from the claims allowance process. Instead, it examined the relationship between Pierce's expunged claim and Vickie's counterclaim. The Court concluded that "there was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim," *id.* at 497; *accord id.* at 498, and "[f]rom the outset, it was clear that" even if the bankruptcy court ruled in Vickie's favor on her tortious interference claim, it could not enter judgment in her favor without first resolving certain issues of Texas law. *Id.* at 498. In the end, Vickie failed to show that her tortious interference counterclaim stemmed from the bankruptcy itself or that its relationship to Pierce's defamation claim was such that the determination of her counterclaim would have affected the claims allowance process or the restructuring of the debtor-creditor relationship. Accordingly, the bankruptcy court lacked the Constitutional authority to enter the judgment. *Id.* at 499.

In contrast to *Stern v. Marshall*, "from the outset it was clear" that a ruling in the Trustee's favor avoiding as fraudulent the transfers to the Defendants would result in the disallowance of the Defendants' Claims under 11 U.S.C. § 502(d).  The Court invited the Defendants to withdraw their claims with prejudice because there was no reason to "somehow force[] them to continue with litigation to establish their rights to payment . . . when they no longer assert any rights to payment."  *In re Acad., Inc.*, 289 B.R. at 234.  However, the withdrawal of their claims did not negate the submission to the Court's jurisdiction by virtue of their filing the statements of claim which were met with the Trustee's adversary proceeding.

Finally, I find meritless the Defendants' contention that this adversary proceeding did not implicate the claims allowance process because the *Complaint* and the *Amended Complaint* did not request disallowance and alleged that the Objections would be resolved in a separate proceeding in accordance with the *Claims Procedure Order*.  (*See Defendants Memo* ¶¶ 17-19.)  "In *Langenkamp*, the Supreme Court held that if a creditor who has filed such a claim *is met* with an adversary proceeding, *the resolution of which affects* the equitable restructuring of debtor-creditor or creditor-creditor relations, then the creditor loses its right to a jury trial even with regard to traditional legal claims."  *CBI Holding*, 529 F.3d at 466 (emphasis added).  Here, the Defendants' Claims were "met" with the Trustee's fraudulent transfer claims.  Although the *Complaint* did not include a disallowance claim, the avoidance of the Two-Year Transfers would mandate the disallowance of the Defendants' Claims under Bankruptcy Code § 502(d).  While a fraudulent transfer claim and section 502(d) disallowance objection are often joined in the same adversary proceeding, there is no requirement

that they must be joined in one adversary proceeding.  Instead, the equitable

jurisdiction inquiry asks whether the resolution of the Trustee's claims would "affect"

the claims allowance process, and here, it did at the time the Trustee filed his adversary

proceeding.  Moreover, the separation of the adversary proceeding from the claim

objection was purely procedural and was based on the *Claims Procedure Order* which

contemplated a separate proceeding to resolve the Trustee's objections to customer

claims.  The Trustee adhered to that procedure in this instance, but the adversary

proceeding still affected the claims allowance process for the reasons stated.

      Accordingly, the Court concludes that it acquired equitable jurisdiction over the

Trustee's fraudulent transfer claims because the Trustee commenced this adversary

proceeding after the Defendants filed their claims (and after they objected to the

Trustee's Determinations), the avoidance of the transfers to the Defendants would result

in the disallowance of their claims, and the withdrawal of the Defendants' Claims did

not strip the Court of its equitable jurisdiction that attached at the time-of-filing.  The

Court has considered the Defendants' remaining arguments and concludes that they

lack merit.

      So ordered.

Dated:  New York, New York
       January 18, 2019

                         /s/ *Stuart M. Bernstein*
                         STUART M. BERNSTEIN
                     United States Bankruptcy Court