# EXHIBIT 1



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Lead Case No. 08-99000-smb

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    Adv. Case No. 08-01789

6    - - - - - - - - - - - - - - - - - - - - - - - - - - x

7    In the Matter of:

8

9    SECURITIES INVESTOR PROTECTION CORPORATION,

10                   Plaintiff,

11            v.

12   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

13                   Defendants.

14   - - - - - - - - - - - - - - - - - - - - - - - - - - x

15   Adv. Case No. 10-04390

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   In the Matter of:

18

19   IRVING H. PICARD, Trustee For The Liquidation of Bernard L.

20   Madoff Investment Securities LLC,

21                   Plaintiff,

22            v.

23   BAM L.P., ET AL,

24                   Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x



Page 2

1   Adv. Case No. 10-05383

2   - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   In the Matter of:

4

5   IRVING H. PICARD, Trustee for the Substantively

6   Consolidated SIPA Liquidation of Bernard L.

7   Madoff Investment Securities LLC and the Estate

8   of Bernard L. Madoff,

9              Plaintiff,

10         v.

11   SHAPIRO ET AL,

12              Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - x

14

15              United States Bankruptcy Court

16              One Bowling Green

17              New York, NY  10004

18

19              September 26, 2018

20              10:05 AM

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  MATTHEW

Page 3

1    HEARING re Case No. 08-01789 Hearing on Order to Show Cause

2    Why October 4, 2016 Order Appointing Discovery Arbitrator

3    Should not be Amended

4

5    HEARING re Case No. 08-01789 Motion to Strike the Notices of

6    Withdrawal of claim and Notices of withdrawal of Objection

7    to Determination of Claim

8

9    HEARING re Case No. 10-04390 Pre-Trial Conference

10

11   HEARING re Case No. 10-05383 Discovery Conference

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

**Page 4**

1   A P P E A R A N C E S :

2

3   BAKER HOSTETLER

4        Attorneys for BLMIS Trustee

5        45 Rockefeller Plaza

6        New York, NY 10111

7

8   BY:  NICHOLAS J. CREMONA

9        ANAT MAYTAL

10       TORELLO H. CALVANI

11       JAMES ROLLINSON

12

13  DENTONS US LLP

14       1221 Avenue of the Americas

15       New York, NY 10020

16

17  BY:  CAROLE NEVILLE

18

19  SECURITIES INVESTOR PROTECTION CORPORATION

20       1667 K. Street, N.W., Suite 1000

21       Washington, D.C. 20006

22

23  BY:  NATHANAEL S. KELLEY

24

25

1   CHAIRMAN LLP

2        455 Park Avenue

3        New York, NY 10022

4

5   BY:  GREGORY M. DEXTER

6

7   LAX & NEVILLE LLP

8        1450 Broadway, 35th Floor

9        New York, NY 10018

10

11  BY:  BARRY R. LAX

12       ROBERT MILLER

13

14  APPEARING TELEPHONICALLY:

15  KEVIN H. BELL

16  PATRICK MOHAN

17  DAVID J. SHEEHAN

18  ANDREW SERRAO

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2              THE COURT:  Please be seated.  Good morning.

3    Madoff.

4              MR. CREMONA:  Good morning, Your Honor.  Nicholas

5    Cremona of Baker & Hostetler, appearing on behalf of the

6    Trustee.  I have here with me my colleague, Anat Maytal and

7    Nathanael Kelley on behalf of Pacific.

8              Your Honor, there are two matters on the agenda

9    this morning.  I would propose proceeding with the pretrial

10   conference in the Mann case, which is 10-04390.  Just to put

11   it into context by way of background, Your Honor, this is a

12   case against Michael and Cheryl Mann and Bam, LP.  This is a

13   case that has completed discovery as of February --

14   completed fact discovery as of February 2015 and completed

15   expert discovery as well.

16             There are also, I think, which is relevant to the

17   motion that we're going to discuss next -- but for Your

18   Honor's edification, there are claims filed on behalf of

19   both Defendants here and there are pending objections to the

20   Trustee's denial of those claims. And those objections were

21   filed in 2009.

22             THE COURT:  Is this part of the motion to

23   withdraw?  Why don't we deal with the motion to withdraw?

24   Because this is really the tail wagging the dog.

25             MR. CREMONA:  Well, we can, Your Honor, but I

Page 7

1    think --

2                 THE COURT:  In other words, you're telling me you

3    don't agree -- that you can't agree to summary judgment so

4    the case is trial ready, right?

5                 MR. CREMONA:  That's correct.

6                 THE COURT:  But then we get into the question of

7    where the case is going to be tried.

8                 MR. CREMONA:  Well, I think, Your Honor, that

9    question has been answered by Judge Daniels and he --

10                THE COURT:  Why don't we deal with that motion

11   first?  Because that's a gating issue really.

12                MR. CREMONA:  Well, I think -- I don't think it is

13   because there's no motion to withdraw the reference.  And

14   Judge Daniels has said that Your Honor has final

15   adjudicative authority to dispose of this matter as a final

16   matter based on the fact that there's a pending claim and a

17   pending objection, which is extant, and that was ruled upon

18   twice by Judge Daniels.  So, I'm happy to proceed however

19   Your Honor sees fit.

20                THE COURT:  Yeah, I'd like to hear that motion

21   first.  Because there's no point scheduling a trial if I

22   don't have -- if they have a right to a jury trial and I

23   can't try it.  Right?

24                MR. CREMONA:  I understand that, Your Honor.

25                THE COURT:  So, why don't you tell me about that

Page 8

1   motion?

2           MR. CREMONA:  Sure.  The second matter, Your

3   Honor, is the Trustee's motion to strike certain claim

4   withdrawals and objections that were filed by the Chapman

5   firm and the Dentons firm on behalf of 52 total

6   defendant/claimants.  The Trustee asserts or submits that

7   the motion should be granted for three principal reasons:

8   First, the attempted withdrawals are procedurally improper.

9   They violate Bankruptcy Rule 3006.  They were done

10  unilaterally and without order or leave of this Court.

11          Second -- and this is just briefly -- I'll get

12  into each of these in more detail.

13          THE COURT:  Well, but they're going to argue that

14  -- they'll just withdraw their objections, which under Rule

15  3006, they don't need any --

16          MR. CREMONA:  That's my next point, Your Honor.  I

17  think if you --

18          THE COURT:  -- any permission.

19          MR. CREMONA:  Sorry, sorry.

20          THE COURT:  Go ahead.

21          MR. CREMONA:  If you -- putting aside the

22  procedural definition.  So, if you then look to Rule 41,

23  which is what courts have looked to to determine whether you

24  can make that -- such a withdrawal under Rule 3006.  Rule

25  41, the standard there cannot be met here because of the,

Page 9

1    among other things, the prejudice that would result in the

2    net loser victims, and there are a number of other factors

3    that the Second Circuit enumerated, and we can go through

4    them each in the Zagano case.

5            THE COURT:  What's the prejudice to the net

6    losers?

7            MR. CREMONA:  I think one very illustrative

8    example is demonstrated by three of the cases that are

9    subject to the motion.  That's the Saran Lawrence and

10   Nelsons cases.  If Your Honor will recall, we were here last

11   May -- May 31 for a pretrial conference.  Then you gave --

12   you scheduled -- Your Honor scheduled trial in October,

13   provide --

14           THE COURT:  May 31 of 2017?

15           MR. CREMONA:  Yes.  And -- I'm sorry if I

16   misspoke.  And Your Honor provided sufficient time for -- a

17   motion to withdraw was filed in June.  That wasn't

18   determined by Judge Daniels until May of this year, and then

19   a reconsideration motion was filed, determined now on

20   September 11th of this year.

21           So now we are here 15 months after that, and I

22   think that's a significant delay.  It precludes us from our

23   ultimate goal and our ultimate duty, which is to bring

24   forward these cases to resolution --

25           THE COURT:  But I can't do anything about that

1    delay.  That's -- that's done.  You know, going forward,

2    what's the prejudice?  In other words, if I allow them to

3    withdraw the claim, and that leads to the conclusion that I

4    lack equitable jurisdiction, which is a separate issue --

5              MR. CREMONA:  Mm hmm, understood.

6              THE COURT:  -- and they get to try their case in

7    District Court, what's the -- what's the prejudice?

8              MR. CREMONA:  I do think delay is a significant

9    factor, Your Honor, because the only way that that occurs --

10             THE COURT:  What's the evidence of delay, though?

11             MR. CREMONA:  The procedural posture of the case

12   is.  We have now four cases that are trial-ready.  What

13   would have to happen for those not to go forward before Your

14   Honor is a motion to withdraw the reference, which would add

15   15 months onto each of those cases.  And that's going to

16   happen seriatim and then we can never accomplish the goal,

17   as I said, which is to resolve these cases and get the net

18   loser victims their -- their principal that they haven't yet

19   received.

20             But I think, you know, I'm happy to go through the

21   other Zagano factors as well, which I think militate in

22   favor of granting the Trustee's motion.  And that is -- you

23   know -- well, again, so if you look at the Zagano factors,

24   Your Honor, the question becomes the diligence in bringing

25   the motion or the filing; the extent to which the suit has

Page 11

1    progressed, or here, the claims process; the effort and

2    expense that has been incurred; and duplicative expense in

3    re-litigation and the adequacy of the Plaintiff's

4    explanation.  Or here I would say the claim.

5           So, diligence, if we start there, Your Honor,

6    we're ten years into this liquidation.  This withdrawal was

7    unilaterally filed on the heels of Judge Daniels' decision.

8    That can't not -- that cannot be ignored.  That decision was

9    issued on, as I said, May 15 of this year.  These filings

10   occurred on June 1, again on June 29, and then again in

11   July.

12          It was clearly an effort, I would submit, to avoid

13   this Court's equitable jurisdiction, and it was directly in

14   response to Judge Daniels' decision, which said the claims

15   are pending, the objections are pending, they are live.  And

16   I'm happy to go through the claims process.  I know Your

17   Honor is intimately familiar with that.  But those facts

18   rendered Your Honor with final adjudicative authority to

19   dispose of these adversary proceedings.  And, again, we're

20   back to delay.

21          Because if Your Honor is able to do that, we can

22   expeditiously go to trial and get these pieces resolved.  If

23   Your Honor does -- does something which I would respectfully

24   submit would be inconsistent with the directives of Judge

25   Daniels, then there's an enormous delay.  And, again, those

Page 12

1    are just two of the factors.  I think, you know, the

2    adequacy of the explanation for the withdrawal -- I mean, to

3    me, it is quite clear, as I just articulated, that I would

4    go so far as to say it's gamesmanship.  The timing and the

5    withdrawal are clearly an effort to circumvent this Court's

6    jurisdiction.

7              There's been a clear and significant effort in

8    prosecuting the claims process, and we should discuss that a

9    moment, Your Honor.  I know Your Honor is intimately

10   familiar with the claims and objections and the way that we

11   -- the Trustee has disposed of those.  Just this week you

12   entered the 21st omnibus order.

13             All along in this process the Trustee has disposed

14   of or -- or sought affirmation of his prior determinations

15   by Your Honor because there were no legal issues remaining,

16   and all of those issues were finally resolved.  These cases

17   are quite different, Your Honor.  And you'll note that in

18   none of those 21 prior motions was there ever a defendant

19   included that had a claim because the proper place for the

20   resolution of that -- those claims issues, which are

21   inextricably intertwined with the avoidance liability, as

22   Your Honor has recognized in the Cohen decision, which was

23   articulated by Judge Rakoff -- we are bound by that.

24             As such, the Trustee has specifically delayed --

25   well, not delayed.  We are waiting until we can resolve

Page 13

1    these all in one forum, which is the directive from the

2    District Court.  Now, we have it once from Judge Rakoff.

3    Your Honor has implemented that.  Now we have it twice more

4    from Judge Daniels, and I would submit that to do something

5    inconsistent with that is -- is ignoring the precedent and

6    the law in this case.

7              THE COURT:  Let me just stop -- their argument is

8    "Look, we're going to withdraw our claims. So there's no

9    claims resolution process remaining for our claims." That's

10   their argument.

11             MR. CREMONA:  I understand.  I think that -- that

12   -- there are a number of problems with that, Your Honor, a

13   lot of which I just described.  That would be embracing

14   procedural gamesmanship, it would be disregarding the law

15   that says when you submit a claim, you've now submitted to

16   the Court's equitable jurisdiction.

17             THE COURT:  For the claims -- for the claims

18   resolution process.

19             MR. CREMONA:  Right.  But when the claim that

20   requires resolution is inextricably intertwined with the

21   avoidance liability, which we know from Judge Rakoff is the

22   case here.  One -- and I think Your Honor acknowledged, you

23   cannot divorce the claims liability --

24             THE COURT:  I understand all that, Mr. Cremona.

25             MR. CREMONA:  Okay.

Page 14

1        THE COURT:  But what they're saying is there's no

2    longer a claims resolution process because they're

3    withdrawing their objection or they're withdrawing their

4    claim.

5        MR. CREMONA:  Okay, but, Your Honor --

6        THE COURT:  So, why don't you address that issue?

7        MR. CREMONA:  Sure.  I think, again, there are a

8    number of ways to address that.  We have here a contested

9    matter based on the objection that was filed to each of the

10   claims. If you look to the claim that was filed and appended

11   to the Dentons' objection, in Paragraph 24, they

12   specifically say that they want the rights accorded to a

13   contested matter under 9014, including discovery.

14       So it's not just a ministerial act of withdrawing

15   a claim; there is a conjoined contested matter --

16       THE COURT:  Well, there can be conditions to the

17   withdrawal.

18       MR. CREMONA:  I suppose there could, Your Honor,

19   but I think --

20       THE COURT:  I'll ask them about that but...

21       MR. CREMONA:  Okay.  I would submit that the time

22   to do that has now since passed.  And to allow it to occur

23   would be directly contravening Judge Daniels' decision.

24   These very same issues were put before him and he ruled that

25   Rule 30056 renders these withdrawals ineffective.  And, as

1   such, they remain pending.  And they do remain -- and as we

2   articulated in the declaration of Segal, all of those

3   objections that are the subject of this motion have not been

4   disposed of for the very reasons I just articulated in the

5   claims process.

6          And to answer your question further, I think to

7   allow them to just simply withdraw it now is to contravene

8   the claims procedures order, it is to disregard the entire

9   claims process that we've utilized over the last nine-plus

10  years.  And, again, I do think that we have to stand on

11  principle and the law that you can't on one hand invoke this

12  Court's jurisdiction and then disavow it when it's suitable

13  to your client.  I mean, that is just -- that's exactly

14  what's happening here.  And I would submit that that is

15  totally inappropriate.  And as a result, the claims should

16  be stricken.

17         And the other point, I think, Your Honor, which I

18  haven't yet made -- and we make it in our papers, is that,

19  again, I've said that the claims are inextricably

20  intertwined with the avoidance liability.  But I think it's

21  important to point out too that when you look at the

22  objections that are attached and filed, and the affirmative

23  defenses in the answer, they are at the core the same

24  issues.  And, again, it would be inefficient to resolve them

25  separately.  The opportunity to do so has passed.

1           THE COURT:  But, you know, you keep saying that,

2     but they're saying, "Look, you've resolved the claims. It's

3     zero."

4           MR. CREMONA:  But that -- well, again, if we look

5     at 502D and the decision from Judge Rakoff, it applies here.

6     There is a pending claim and you can't resolve the claim

7     until your avoidance liability has been established with

8     finality.

9           THE COURT:  But you're saying we're not -- okay, I

10    got it.  Go ahead.

11          MR. CREMONA:  I mean, Your Honor, do you have any

12    further questions that you'd like --

13          THE COURT:  No, no.  Let me hear from the other

14    side.  Yes, sir?

15          MR. KELLEY:  Yes.  If I may, I'm Nathanael Kelley

16    for the Securities Investor Protection Corporation.  I'll

17    just state briefly that we invoked to address the

18    applicability of the federal rules of bankruptcy procedure

19    to this SIPA liquidation.  And we were, frankly, a little

20    surprised that that was an issue but --

21          THE COURT:  Well, Judge Daniels really decided

22    that in that Footnote 3, so I'm not even going to consider

23    that.

24          MR. KELLEY:  Sure.  And regarding the

25    applicability of the -- regarding their attempt to withdraw

1    their objections, just I'd like to point out that it --

2    filing the objections initiated a contested matter, which

3    under Rule 9014, the federal (indiscernible) Procedure 41 is

4    (indiscernible) and addresses that issue.

5              THE COURT:  All right.

6              MS. NEVILLE:  Good morning, Your Honor.  Carol

7    Neville from Dentons on behalf of the Dentons customers.  I

8    feel like I'm living in a parallel universe.  The claims

9    procedure and the adversary proceeding are not inextricably

10   linked.

11             THE COURT:  Well, but the fictitious profits issue

12   is the same thing as the net equity issue.  It's --

13             MS. NEVILLE:  Mm hmm.  But that's not -- that's

14   not the resolution of the adversary proceeding.

15             THE COURT:  No, I understand that.

16             MS. NEVILLE:  This phrase, there's two sides to

17   the same coin, is their phrase, which Judge Rakoff was just

18   reciting.  It's not --

19             THE COURT:  Well, how does the computation of

20   fictitious profits differ from the computation of net

21   equity?

22             MS. NEVILLE:  It doesn't.

23             THE COURT:  Okay.

24             MS. NEVILLE:  But that's not the end of the story

25   in the adversary proceeding.  That was the case in the old

1    equity receiverships and through the Ponzi scheme cases.

2    We've argued ad nauseam that that's not what the standard

3    for 548C is.  But let me just -- let me just point out that

4    in the complaint --

5              THE COURT:  But as a factual -- as a factual

6    matter, the computation of net equity and the computation of

7    fictitious profits are the same under the case law.

8              MS. NEVILLE:  Under the case law, but that doesn't

9    mean that the claims procedure in this case and the

10   adversary are inextricably linked.  If you look at the

11   complaint, it doesn't say, "You filed a claim and we're

12   going to resolve it in connection -- on the same standard"

13   or anything else.  On the contrary, it says, "We know you

14   filed a claim.  We're going to resolve it in another

15   proceeding."

16             THE COURT:  Right.  So, if they win -- in other

17   words, if they can convince whoever decides this case that a

18   fraudulent transfer occurred, that claim is automatically

19   disallowed under 502D.  All they have to do is, you know,

20   make a one-paragraph motion.

21             MS. NEVILLE:  Well, normally --

22             THE COURT:  So, and it will be resolved --

23             MS. NEVILLE:  -- the 502D claim would be put in

24   here --

25             THE COURT:  Well, it doesn't have to be.  But --

1              MS. NEVILLE:  Well, let me just say --

2              THE COURT:  In other words, you seem to be arguing

3     that they're splitting their cause of action somehow.

4              MS. NEVILLE:  Well, they did.  Because they went

5     up three times to the Second Circuit on the claims

6     resolution procedure.

7              THE COURT:  Why are you withdrawing -- this is

8     really a question for both sides -- both parties.  Why are

9     you withdrawing your claims now?

10             MS. NEVILLE:  I didn't withdraw a claim.  I

11    withdrew the objection to --

12             THE COURT:  But how does that -- but how...  As I

13    under -- as I recall the procedures order, if you don't file

14    an objection to the Trustee's determination within 30 days,

15    the claim is deemed disallowed, right?

16             MS. NEVILLE:  Right.

17             THE COURT:  Okay.  You filed an objection, so the

18    withdrawal of your objection under the procedures order

19    doesn't lead to a deemed disallowance of your claim.

20             MS. NEVILLE:  Well, let me just point out that for

21    nine years --

22             THE COURT:  So you have to withdraw the claim.

23             MS. NEVILLE:  -- we have gone up to the Second

24    Circuit three times and had rulings on each of the issues in

25    the objection.  So what my argument is, is that there is

Page 20

1   finality in the claims allowance procedure.

2           THE COURT:  Could I -- could I allow you to

3   withdraw the claim...  First of all, let me ask you a

4   question:  You're withdrawing your claim with prejudice?

5   That would be the scenario.

6           MS. NEVILLE:  I didn't withdraw the claims; I

7   withdrew the objections.  That's a different --

8           THE COURT:  So you're not withdrawing your claims?

9           MS. NEVILLE:  The claim is sitting there.  That's

10  why the motion is completely idiotic with respect to my

11  claim.

12          THE COURT:  All right, so there's still a pending

13  claim?

14          MS. NEVILLE:  There are still pending claims.

15          THE COURT:  So, there's a pending claim that I

16  have equitable jurisdiction to try the answer --

17          MS. NEVILLE:  But those claims have been finally

18  determined and disallowed.

19          THE COURT:  When?

20          MS. NEVILLE:  In three rulings of the Court.  All

21  they're doing in the omnibus objection is filing an

22  administrative order that goes through each of the three

23  rulings.  That's all there is.

24          THE COURT:  Let me ask you a different question.

25  Could I condition -- you're not asking me to condition

1    anything?  You're saying that your claim was disallowed but

2    yet there's a pending -- there's a pending claim, right?  I

3    don't know if it's disallowed.

4           MS. NEVILLE:  Pardon me?

5           THE COURT:  I don't know if it's disallowed.

6           MS. NEVILLE:  Well, I would say it's disallowed.

7    But the point of this motion -- and you don't have to decide

8    anything on my claim today -- all you have to decide -- and

9    you don't have to decide whether or not filing a claim in --

10   under the circumstances of this case confirm equitable

11   jurisdiction on this Court.  That's not Second Circuit law.

12   But you don't have to decide that today.

13          THE COURT:  I thought your main said that the

14   filing of the claim submits the creditor to the equitable

15   jurisdiction of the Court for the purpose of the claims

16   resolution process.

17          MS. NEVILLE:  But the claims resolution process

18   has gone on a completely separate track and is only related

19   tangentially to the adversary.

20          THE COURT:  So, can I ask you a question?  Can I

21   ask you a question?  If your claim is resolved, why don't

22   you simply withdraw it?

23          MS. NEVILLE:  I could.  I could.

24          THE COURT:  So, if you withdraw the claim, could I

25   impose conditions on that?

1              MS. NEVILLE:  Like what?

2              THE COURT:  For example, that that is race

3    judicata as to the issues relating to the claim objection?

4    Which would mean to me that all of those withdrawals and

5    deposits listed in the Trustee's determination later are

6    established for the purposes of the litigation -- for the

7    case?

8              MS. NEVILLE:  They would be --

9              THE COURT:  And the reason I raise that is, you

10   know --

11             MS. NEVILLE:  I get it --

12             THE COURT:  And let me tell you why.  Maybe you

13   didn't raise it, but I know.  Ms. Chatman raised it a lot,

14   notwithstanding the resolution of the legal issue, the net

15   investment method, and things like that.  There were a

16   series of discovery disputes relating to the inability to

17   stipulate to the actual deposits and withdrawals.  So that's

18   a live issue, even though the law has been resolved.  I

19   don't know if you had stipulated, you know, to the

20   withdrawals and deposits but that's still a live issue.  But

21   let me ask --

22             MS. NEVILLE:  I didn't stipulate to withdrawals

23   and deposits in each case --

24             THE COURT:  Okay, well, then --

25             MS. NEVILLE:  -- because there were documents

1    missing and we couldn't --

2            THE COURT:  All right.  So the Trustee's got --

3    so, suppose at the end of the day, the Trustee cannot prove

4    his case.  He cannot prove the actual withdrawals or

5    deposits, which means he can't prove you got fictitious

6    profits presumably, and he can't even justify his net equity

7    determination.

8            If you withdraw the claims with prejudice, does

9    that mean you will give up the rights to SIPC Insurance and

10   to a distribution -- I'm asking you this because I don't

11   know if you've discussed this with your clients.  That's

12   where we're going with this.

13           MS. NEVILLE:  I did discuss it with my clients.

14           THE COURT:  All right, you don't have to --

15           MS. NEVILLE:  Because I felt like under any

16   circumstance the claims pool was never going to be increased

17   by the allowance of their claims. So I asked them early on

18   in the case if they were willing --

19           THE COURT:  You don't have to tell me what you

20   discussed with them.

21           MS. NEVILLE:  Right.

22           THE COURT:  I just -- that is something that could

23   occur under, you know, based upon what you're -- the relief

24   you're seeking?  Is that --

25           MS. NEVILLE:  Yes, that's true.  That's a

1    consequence.

2              THE COURT:  Okay.

3              MS. NEVILLE:  But I really do believe that they --

4    they are using this motion to establish a link between the

5    adversary proceeding and the claims process, which has been

6    so separated.  You know, we have gone up, honestly, three

7    times to the Second Circuit --

8              THE COURT:  But how can they be separated if the

9    claim is the basis for exercising equitable jurisdiction?

10             MS. NEVILLE:  Only if it involves the claims

11   process.  And if the claims process is in Alaska, it doesn't

12   affect Hawaii, you know?  That's what's going on here.

13             THE COURT:  I'm not sure I follow that one but --

14             MS. NEVILLE:  Well, I was geographically

15   challenged there.

16             THE COURT:  Well --

17             MS. NEVILLE:  But I think that -- I think that

18   there is --

19             THE COURT:  I'm not sure I understand the

20   geographic metaphor but go on.

21             MS. NEVILLE:  Right.  It wasn't a great one.  I

22   withdraw it.  With prejudice.  I do think that -- the first

23   point is that there is a real separation.  And they missed

24   an opportunity in the adversary proceeding to make that

25   link.

1           If you look at every one of the withdrawal cases

2    on the claims it's because the case was filed, or the claim

3    was filed, and then the counterclaim or an adversary was

4    attached to it.  That isn't what happened here.  It's going

5    off on this direction; the adversary is going on another.

6    Just because there's an overlap of one fact.

7           THE COURT:  You and I are reading different cases.

8           MS. NEVILLE:  What?

9           THE COURT:  You and I are reading different cases.

10          MS. NEVILLE:  Okay.  Well, I doubt it because I've

11   got a whole slew of them back here about disallowance of

12   claims under 3006.  And I'm not even sure that rule applies

13   in the SIPC.

14          THE COURT:  Well, Judge Daniels has said it does

15   and I think it --

16          MS. NEVILLE:  Well, but Judge Daniels doesn't have

17   any of my cases.  So, you know --

18          THE COURT:  Well, it's per choice of ability.

19          MS. NEVILLE:  Well -- it really is undisputed that

20   they do say in the complaint "We are not resolving your

21   claims here.  We're resolving them over there."

22          And the second thing is that I do believe that the

23   Second Circuit law is pretty clear that you don't

24   irrevocably confer equitable jurisdiction by filing a claim

25   if it doesn't involve the claims process, which this does

1   not.  It may involve how you calculate some aspect -- how

2   they calculate an aspect of fictitious process but it

3   doesn't affect the claims process.

4              So I think that this motion just avoids the

5   history of the case.  For them to complain that we have

6   participated actively in the case and therefore we shouldn't

7   be allowed to withdraw anything is ridiculous.

8              THE COURT:  Well, that was partially in response,

9   I think, to someone and it may have been the Chapman

10  clients, who made the argument that our claims were

11  essentially disallowed in --

12             MS. NEVILLE:  I said that.

13             THE COURT:  Let me finish.  In 2012 with the

14  issuance of the net -- the net investment decision, net

15  equity decision.  And yet thereafter there was litigation

16  related to the claims like the time-based damages issue and

17  things like that.  So, you know, the question is, well, if

18  the claim was resolved in 2012, why are you litigating all

19  these things -- or the interaccount transfer issue -- why

20  are you litigating those if your claim is resolved?

21             MS. NEVILLE:  Well, I think those three rulings

22  for the Second Circuit cover basically all the objections in

23  the various --

24             THE COURT:  They cover the legal issues.  I agree

25  with you.  Probably.

1          MS. NEVILLE:   -- holdings that we have.  So,

2     really all that was left is for them to do something to

3     remove the -- to finally determine the claim.  I -- they did

4     not -- I didn't withdraw the claims. And their motion has

5     nothing to do -- doesn't -- it barely even mentions the

6     withdrawal of the objections.

7          THE COURT:  So, okay, so, if I forget about their

8     motion, I have filed claims and then I have equitable

9     jurisdiction, don't I?

10         MS. NEVILLE:  I don't think you do because --

11         THE COURT:  Why not?  If there's an ending claim -

12     -

13         MS. NEVILLE:  For the reason I just said.  Because

14     you only had equitable jurisdiction to the extent that it

15     involved a claims resolution.

16         THE COURT:  But you're not withdrawing your

17     claims.

18         MS. NEVILLE:  The claim is finally determined.

19         THE COURT:  I disagree.  I disagree.

20         MS. NEVILLE:  What's left to do?

21         THE COURT:  To determine whether the Trustee has

22     correctly calculated the withdrawals and deposits, which you

23     don't seem to agree.  And you want to put him to his proof.

24     Right?  Are you willing to concede --

25         MS. NEVILLE:  That he has correctly --

1         THE COURT:  -- that as part -- that you are bound

2    by the Trustee's determination letter, and specifically his

3    analysis of the withdrawals and the deposits, which are the

4    same things in the complaint, by the way, which he always

5    attaches to those dispositions?

6         MS. NEVILLE:  Not always the same thing but close.

7         THE COURT:  Yeah.  Well, I haven't noticed a

8    difference.  I've looked at a lot of them but okay.

9         MS. NEVILLE:  I haven't -- I'd have to go back and

10   look because in some of the cases there are no proofs of

11   payments made, there are no checks that --

12        THE COURT:  I understand that! All I'm saying is

13   you are contest -- you're saying you're not withdrawing your

14   proof of claim, then you're saying, "You know what?  Maybe

15   he didn't calculate it right.  Maybe at the end of the day

16   I'm a net loser." Let me hear from --

17        MS. NEVILLE:  Let me just say one thing.

18        THE COURT:  Go ahead.

19        MS. NEVILLE:  A couple more things because I think

20   it's important.  3006 does not apply to the withdrawal of

21   the objections.

22        THE COURT:  Right, okay.

23        MS. NEVILLE:  So that's pretty clear.  And I'm not

24   even sure they apply in this case at all.  7041 or 41 gives

25   me the right to withdraw when they haven't answered or moved

Page 29

1    for summary judgment.

2              THE COURT:  Why would the Federal Rules of Civil

3    Procedure 41 apply?

4              MS. NEVILLE:  Well, what they're arguing is if you

5    can't go to 3006, you use Rule 41 --

6              THE COURT:  Well, 3006 directs you to Rule 41

7    anyway.

8              MS. NEVILLE:  Well, but that would be -- yes, but

9    in a different level because what they're saying is that my

10   filing of the objection --

11             THE COURT:  Well, let me ask you a question.

12   You're fighting over this issue.  What's the difference if

13   3006 governs the withdrawal of the claim or the objection or

14   Rule 41 governs it?

15             MS. NEVILLE:  Because Rule 41 says that if they

16   haven't answered my contested matter or moved for summary

17   judgment, then I get to withdraw as a right.  Where have

18   they?

19             THE COURT:  The Trustee's determination is the

20   answer to what is effectively a complaint -- filing of a

21   claim.

22             MS. NEVILLE:  Oh, please.  That's such a far-

23   fetched -- a far-fetched characterization of the complaint

24   because the complaint doesn't deal with the claims.

25             THE COURT:  Okay, I got it.  Let me hear from Mr.

Page 30

1   Dexter.

2           MR. DEXTER:  Good morning, Your Honor.

3           THE COURT:  Good morning.

4           MR. DEXTER:  Greg Dexter here with the law firm of

5   Chapman, LLP, on behalf of the Defendants represented by

6   Chapman, LLP.  Your Honor, it's highly unusual for any

7   litigant to contest another litigant's withdrawal of a

8   claim, a complaint, a lawsuit with prejudice.  All of the

9   cases involved without prejudiced dismissals.  They

10  contemplate --

11          THE COURT:  At least not the cases I've seen.

12          MR. DEXTER:  Which cases is Your Honor referring

13  to?

14          THE COURT:  Why don't you continue?

15          MR. DEXTER:  It's highly unusual for a court to

16  even scrutinize whether a litigant can withdrawal a

17  complaint or a claim with prejudice.  We're saying that

18  they've won.  They've determined the claim, and that's it.

19  And to resolve any doubts --

20          THE COURT:  So, if that's true, why do we have

21  Rule 3006?

22          MR. DEXTER:  Because I don't think Rule 3006 was

23  written in contemplation of someone filing a SIPC claim.

24          THE COURT:  No, no, no, no.  As a general matter,

25  Rule -- in an ordinary bankruptcy, let's put this aside --

1   in this situation you couldn't simply withdraw the claim.

2   You would have to get a court order.  If you have the --

3   what you're arguing essentially is if you want to withdraw

4   your claim with prejudice, you have an absolute right to do

5   so.  But that's not what Rule 3006 says.  So, why not?

6           MR. DEXTER: I think Rule 3006 is written with the

7   view that it's a claim you're making in Bankruptcy Court;

8   not for SIPC Insurance, not against --

9           THE COURT:  Forget about SIPC.  I'm just asking

10  about Rule 3006.

11          MR. DEXTER:  Right.

12          THE COURT:  If you have an absolute right -- if a

13  creditor has an absolute right to withdraw a claim, why --

14  why does -- why isn't that included in Rule 3006?  Why do

15  you need a court order?

16          MR. DEXTER:  I don't know.  I wasn't there when

17  they drafted it.  But if you look at the rule, it

18  contemplates you filing that complaint in another court, in

19  a non-bankruptcy court.  It's impossible --

20          THE COURT:  That's not what it says.

21          MR. DEXTER:  -- for us to file that claim.

22          THE COURT:  You can't file that claim in another--

23          MR. DEXTER:  But that's the whole point.  If you

24  look at the cases that say the prejudice to a litigant of

25  having a case dismissed, the prejudice is that potentially

Page 32

1    they're going to be sued in another forum.

2           THE COURT:  Just -- Mr. Dexter.  Just explain to

3    me the rationale for why Rule 3006 does not say, in

4    substance, that a creditor can always withdraw his claim

5    with prejudice without Court permission.

6           MR. DEXTER:  Because usually it contemplates the

7    fact that the claim might be filed in another Court.

8           THE COURT:  No, it doesn't.  That's the silliest

9    thing I've ever heard.  The only place you can file a claim

10   is in the bankruptcy.

11          MR. DEXTER:  Well, you can -- okay, Your Honor

12   might be right about that.  Then I don't -- I'm not sure the

13   answer to that offhand.

14          THE COURT:  All right, well that suggests that you

15   don't have an absolute right to withdraw a claim with

16   prejudice; doesn't it?

17          MR. DEXTER:  And then the question becomes how is

18   the Trustee harmed at all if we withdraw the claim, and he's

19   not.

20          THE COURT:  You think that's the only question?

21          MR. DEXTER:  Yeah.  So we come to Your Honor and

22   Your Honor has the authority to determine whether we're

23   going to be permitted to withdraw the claims and objections

24   and you look at the Zagano factors and there's not a single

25   case that's even close to the circumstances here that would

1    support Your Honor making a ruling saying that we can't --

2            THE COURT:  I think you have to do a little more

3    research.  Let me stop everybody.  There are a couple of

4    issue here.  One issue that nobody has addressed is the

5    general proposition that a Court's jurisdiction is

6    determined when the proceeding is filed.  And subsequent

7    changes that may affect that jurisdiction don't affect the

8    Court's underlying jurisdiction.  So you're going to have to

9    brief that issue.

10           And I think you should start with Judge Walsh's

11   decision which is on all fours with this case, by the way in

12   EXDS, which is 301 Bankruptcy Reporter 436.  There are other

13   cases, too.  Another point -- I'm not deciding this today,

14   but another point is, this Rule 3006 goes back to the old

15   Bankruptcy Act, Rule 3005.  And the reason for the rule was

16   to prevent somebody from doing precisely what you're doing

17   which is withdrawing a claim and stripping the Court of then

18   summary jurisdiction for the purposes of defeating

19   Bankruptcy Court's jurisdiction.  So those are issues that

20   are in the case.  I know you're talking about the Zagano

21   factors and all that.  You know, you have to lay -- it looks

22   to me like the only reason you're withdrawing claim at this

23   point is to defeat jurisdiction and ultimately delay the

24   resolution of the case.  But I think you have to discuss

25   that threshold issue of whether the withdrawal of the claim

**Page 34**

```
1    or the attempted withdrawal of the claim affects the

2    Bankruptcy Court's equitable jurisdiction if the claim

3    itself provided the basis for the equitable jurisdiction.  I

4    mentioned Judge Walsh's decision.  There are others that

5    I've seen that deal with this issue.  And you have to deal

6    with this issue.  It may have nothing to do with Rule 41 or

7    anything else, but...

8              MS. NEVILLE:  Your Honor, I think you began to

9    address that in two decisions in this case and there's one

10   in the Lehman case.

11             THE COURT:  In Applebaum and in Lehman, the claims

12   resolution process came to an end because there was an

13   actual disallowance or in Applebaum a deemed disallowance.

14   That hasn't occurred here.

15             MS. NEVILLE:  Well, there's pretty close to it.

16             THE COURT:  Well, but it's different.  It's still

17   a live claim.  You're still disputing from what I hear of

18   the Trustee's computation of the net equity --

19             MS. NEVILLE:  Not in every case, but in some

20   cases.

21             THE COURT:  Well, that's another problem with the

22   procedure.

23             MS. NEVILLE:  Yes.

24             THE COURT:  And the Trustee's right.  You really

25   have to make a motion in each case to withdraw the claim and
```

Page 35

1    establish the factors and they may differ in different

2    cases.  But in any event --

3                 MS. NEVILLE:  I'd like to point out that in the

4    Mann case it was disallowed because it was prior to Judge

5    Lippman's initial order on the --

6                 THE COURT:  So why didn't you withdraw the claim

7    for 10 years or whatever?

8                 MS. NEVILLE:  So we disallowed that claim in the

9    Mann case.

10                THE COURT:  All right. I don't have that.

11                MR. CREMONA:  Your Honor --

12                MS. NEVILLE:  Yes, you do.  It was part -- it was

13   --

14                MR. CREMONA:  Your Honor, if I may rebut that.  I

15   mean, now we're getting -- we responded to that very issue.

16   Ms. Neville is referring to --

17                THE COURT:  Which issue?

18                MR. CREMONA:  I believe you're referring to the

19   net equity order that dismissed 78 actions.  Or excuse me.

20   Let me back up.

21                MS. NEVILLE:  Claims.

22                MR. CREMONA:  Let me be clear.

23                MS. NEVILLE:  Disallowed claims.

24                MR. CREMONA:  Disallowed the portions of 78 claims

25   and specifically, Judge Lippman order retained jurisdiction

1    for all issue outside of the pure net equity calculation.

2    The Mann objection raises issue beyond that and I'd like to

3    tie that into something I wanted to rebut that they said,

4    which is something Your Honor pointed out.

5              They're saying they're going to withdraw the claim

6    and they're going to withdraw the objection or they're not

7    withdrawing the claim but the point is, even if they

8    stipulated to the ins and outs and the amounts, that only

9    gets us half the way there, Your Honor.  Unless they were

10   going to withdraw with prejudice as to all the legal issues

11   raised in that objection, such that they couldn't raise them

12   in the adversary proceeding, then that would get us there.

13             THE COURT:  Well --

14             MR. CREMONA:  But that's the point, though.

15             THE COURT:  What issues?

16             MR. CREMONA:  Your Honor, in the objection they

17   raised the statute of limitations, the netting over the life

18   of the account, prejudgment interest, profit withdrawal.

19   All of those issues --

20             THE COURT:  That might be a reasonable condition

21   to allow them to withdraw their claim, but they're not

22   moving to withdraw their claim and --

23             MR. CREMONA:  But, Your Honor --

24             THE COURT:  You know, we can do one of two things.

25   I can deny your motion only because it's academic.  They're

1      telling me they're not seeking to withdraw their claims.

2      They say they've withdrawn their objections and I can just

3      schedule a trial and, you know, then they can make that

4      argument.

5                  MR. CREMONA:  Schedule a trial as to --

6                  THE COURT:  Well, I -- then I guess --

7                  MR. CREMONA:  That's fine, Your Honor.  I think we

8      can resolve the issue in the Mann trial and I think that's

9      the most efficient way to do it.  They are inextricably

10     intertwined as we start -- that's where we started.

11                 And I think, Your Honor, we -- I'm sorry, if we're

12     not going to -- we did confer with our experts.  We're

13     prepared to move forward pursuant to the directive of Your

14     Honor with that case.  We have trial dates.  We're not going

15     to resolve it through stipulation.  To allow it to continue

16     in the absence of any motions contravenes the procedure of

17     the case.  Mediation in this case --

18                 THE COURT:  You never moved to withdraw a

19     reference of that case, did you?

20                 MS. NEVILLE:  I may have (indiscernible).

21                 THE COURT:  Pardon?

22                 MS. NEVILLE:  I may have (indiscernible).

23                 MR. CREMONA:  But, Your Honor --

24                 THE COURT:  But you haven't done it yet.  That's -

25     -

Page 38

1          MR. CREMONA:  Your Honor --

2          MS. NEVILLE:  This hearing -- I saw that this

3    hearing was -- currently raised some issues on the withdraw

4    and I was waiting to see how it turned out.  But they can't

5    keep saying --

6          MR. CREMONA:  Your Honor --

7          MS. NEVILLE:  -- that there are all these

8    peripheral issues that are raised once the plan was

9    disallowed by Judge Lippman --

10          THE COURT:  Right.

11          MS. NEVILLE:  -- without telling you what they

12    are.

13          THE COURT:  But I thought Mr. Cremona was saying

14    it was disallowed only to the extent of this net investment

15    versus last statement --

16          MR. CREMONA:  That's precisely correct.

17          THE COURT:  -- issue and then if it was disallowed

18    -- well, if it's not -- you're saying it was completely

19    disallowed by Judge Lippman's order?

20          MS. NEVILLE:  It was disallowed exactly the way --

21          MR. CREMONA:  Your Honor, I have the order.

22          THE COURT:  It had other issues and I assume you

23    participated in subsequent litigation solely related to the

24    claims, like the inter-account transfer issue.

25          MS. NEVILLE:   There's no inter-account transfers.

1          THE COURT:  All right, and the time based damages

2     issue which would -- you know, if your claim is disallowed

3     there's no reason for that participation so obviously you

4     didn't think your claim was disallowed in total.

5          MS. NEVILLE:  So it's disallowed by an order of

6     Judge Lippman, but not disallowed because there's one other

7     issue.

8          MR. CREMONA:  Your Honor, the order is clear.  I'm

9     happy to hand up a copy.

10          THE COURT:  I think I have a copy.

11          MR. CREMONA:  It makes clear that it resolves only

12     the issue as you pointed out, last statement versus net

13     investment.  All other issues were retained -- the

14     Bankruptcy Court retained jurisdiction as to all other

15     issues and those include all the other issues raised in the

16     objection, particularly with Mann.

17          THE COURT:  So I'm clear, nobody's trying to

18     withdraw their claims?

19          MR. DEXTER:  No, we are.

20          THE COURT:  Okay, so --

21          MR. DEXTER:  Yeah, we are.

22          THE COURT:  The Chaitman clients are seeking to

23     withdraw.  Then I need briefing on that jurisdictional issue

24     I mentioned specifically, whether -- if the claim provides

25     the basis for the Court's equitable jurisdiction at the time

1    the action is commenced, does the withdrawal of that claim

2    affect the Court's equitable jurisdiction under that line of

3    cases which say you determine jurisdiction.

4              They deal with subject matter jurisdiction,

5    admittedly.  But under that line of cases that say that the

6    Court's jurisdiction is determined when the action is filed

7    and the -- I know I've had cases where the bankruptcy is

8    dismissed but jurisdiction still exists and we have this

9    situation.  You'll find cases which say that you can't

10   withdraw the claim to defeat the equitable jurisdiction

11   Bankruptcy Court.  As a matter of fact for the first time in

12   40 years I looked at Collier's 14 and it deals with this.

13   So you can supply briefs not exceeding 10 pages in two weeks

14   of today?

15             MS. NEVILLE:  I'd like to --

16             MR. DEXTER:  That's fine, Your Honor.

17             MS. NEVILLE:  -- participate in that.

18             THE COURT:  But you said you're not withdrawing

19   your claim.

20             MS. NEVILLE:  So what are you doing with their

21   motion to strike my withdrawl of the objection?

22             THE COURT:  What's the basis for striking the

23   withdrawal of the objections?

24             MR. CREMONA:  Your Honor, I think the bases are

25   similar to what I articulated earlier.  What I was going to

Page 41

1   ask Your Honor was a question as to this additional

2   briefing.  I mean, it seems to me -- again, Rule 41 is a

3   gating issue.  If they cannot meet the standard as to that

4   withdrawal based -- even if you treated this as a motion to

5   withdraw.   So I think we have to back up.  We never really

6   got into -- 3006 precludes the withdrawal here.  I think

7   it's a semantical distinction to make claim versus

8   objection.

9          THE COURT:  Ms. Neville is saying whatever Rule

10   3006 says -- and maybe I can't withdraw my claim without

11   Court order -- Rule 3006 doesn't deal with the withdrawal of

12   objections because this is an unusual claims process.

13          MR. CREMONA:  Understood, Your Honor, but Rule 41

14   clearly applies to a contested matter which --

15          THE COURT:  Okay.

16          MR. CREMONA:  -- Ms. Neville's objection clearly

17   implicated and invoked Rule 9014.

18          THE COURT:  That's true.

19          MR. CREMONA:  Your Honor, we also have in their

20   papers the In RE:  20/20 case which specifically said that

21   the matter is joined.  The claim is filed and it's met with

22   an adversary complaint.  It is joined.  And that's precisely

23   what we have here, Your Honor.

24          THE COURT:  Yeah, I think he's right.  In essence,

25   your objection is analogous to a reply.  Your claim being

Page 42

1    the complaint and there are many cases that say the

2    complaint -- the claim is the functional equivalent of a

3    complaint.  An issue is joined when an objection is made and

4    that initiates a contested matter.

5              MS. NEVILLE:  But, Your Honor, it was joined for

6    the claims allowance process and not the adversary --

7              THE COURT:  Why don't we deal with this threshold

8    issue?  I'd rather -- let's assume that what you're really

9    doing is withdrawing your claim.  Let's deal with the

10   threshold issue of whether it makes any difference to the

11   jurisdiction of the Court, because if it doesn't they can

12   withdraw whatever they want; right?  Two weeks.

13             MS. NEVILLE:  Two weeks.

14             THE COURT:  Ten pages each; okay?

15             MR. CREMONA:  Your Honor, I still think -- we were

16   happy to do that and we certainly will get that done.  I

17   still do think that it is appropriate to move forward on the

18   Mann pretrial conference because although Ms. Neville says

19   she wants to move to withdraw the reference, we have seen

20   what happened last time we were in this situation --

21             THE COURT:  Well, I could do that also, but --

22             MR. CREMONA:  In order for Your Honor to control

23   your docket as you did in the Lawrence and Nelsons cases,

24   you scheduled trial and afforded the opportunity --

25             THE COURT: In those cases it was -- first of all,

1    I have to tell you had it been brought to my attention that

2    there were pending claims, I never even would have stayed

3    the trial.  I would have gone forward with it.  I didn't

4    realize it at the time.

5              But now it's brought to my attention that there is

6    a suggestion that either by withdrawing the objection or the

7    functional equivalent, withdrawing the claim, I no longer

8    have that good of a jurisdiction.  If I conclude that I do

9    and it doesn't matter whether they withdraw the claim, then

10   I can go forward with all the cases and I don't have to go

11   through a Zagano analysis or anything like that.

12             MR. CREMONA:  Understood, Your Honor.

13             THE COURT: I mean jurisdiction is a threshold

14   issue, not Zagano; right?  Okay.

15             MR. CREMONA:  So would you propose then, Your

16   Honor, to defer the --

17             THE COURT:  I'll hold -- yeah, I want to see the

18   briefing on this issue and as I said, there are a couple of

19   cases --

20             MS. NEVILLE:  There are some other Delaware cases

21   that deal with this --

22             THE COURT:  I don't know.  I just -- you know,

23   there's another one by a magistrate judge which was raised

24   in the context of, I think, civil litigation or something

25   like that, but --

Page 44

1           MS. NEVILLE:  I don't believe that the context of

2       the cases is important because this is a unique --

3           THE COURT:  Ms. Neville, you've been practicing

4       probably as long as I have.  This issue has been around

5       since the Act, whether you can withdraw your claim to escape

6       the equitable jurisdiction of the bankruptcy.  It's been

7       around --

8           MS. NEVILLE:  Yeah.  Okay.

9           THE COURT:  -- for years and years and years.

10      There is case law on this.  As I said, Collier's 14 talks

11      about this in terms of Rule 305.  There are various theories

12      about the right to withdraw your claim and because of my

13      colloquy with Mr. Dexter, it's clear to me that you don't

14      have the absolute right to withdraw your claim because if

15      you did, Rule 3006 would say that.

16          MS. NEVILLE:  Rule says -- 3006 also talks about

17      acceptance or rejection of a plan and I think that to some

18      extent the reason that the rule was constructed so that you

19      didn't have the absolute right was related to that --

20          THE COURT:  The participation in the case and

21      getting the benefit of the case.  I understand that.  But

22      that's not the only thing that rule has been interpreted to

23      mean.  So what I will do is I'll adjourn the Bam pretrial

24      conference.  What couldn't you agree on?  What was the issue

25      of fact that you couldn't agree on?

1          MR. CREMONA:  Your Honor, Ms. Neville has taken a

2     position that it's not a Ponzi scheme.

3          MS. NEVILLE:  Whether or not it was a Ponzi scheme

4     and whether it was trading.

5          THE COURT:  Okay, but that is implicated in your

6     claim also because if it wasn't a Ponzi scheme, then all of

7     your transactions would be legitimate distributions; right?

8     Because it's only because it was a transfer in connection

9     with --

10          MS. NEVILLE:  Not necessarily because it also

11     could have been just ordinary fraud and not a Ponzi scheme.

12          THE COURT:  But if Madoff --

13          MS. NEVILLE:  Yeah, I think you're right that he

14     would have had a right to a claim.

15          THE COURT:  Yeah.  Okay.  So the -- sounds to me

16     like the adversary proceedings do implicate the claims.  I

17     mean, I guess you could withdraw with prejudice, but you're

18     not doing that so --

19          MS. NEVILLE:  Well, I might.  We'll have to see on

20     that one.

21          THE COURT:  Well, you have to make --

22          MS. NEVILLE:  This is not a dispute about the ins

23     and the outs on that one.

24          THE COURT:  Okay.  All right, but if there's not a

25     dispute then they can make a motion for summary judgment in

1    here or --

2              MS. NEVILLE:  But they're saying --

3              THE COURT:  Let me just finish.

4              MS. NEVILLE:  Sorry.

5              THE COURT:  In here or District Court, say they

6    don't dispute.  First of all, he allocated to a Ponzi scheme

7    so they've established that because that's evidence.  You

8    would have to come forward with other evidence which is what

9    you would have to do here anyway, but -- and which you would

10   have to do in the claims allowance process, I guess.  So

11   they are intertwined.  They're very similar issues in

12   computing the net equity and the fictitious property.

13             MS. NEVILLE: But, you know, similarly --

14             MR. CREMONA:  Absolutely, Your Honor.  That's --

15             MS. NEVILLE:  -- same, Your Honor.

16             THE COURT:  Well --

17             MS. NEVILLE:  That's the whole point.

18             THE COURT:  Let me rephrase that.  They are

19   exactly the same.

20             MR. CREMONA:  Precisely, Your Honor, which is why

21   if they're going to withdraw the claim with prejudice, then

22   they have to also acknowledge that they foreclosed those

23   same legal arguments that are the same --

24             THE COURT:  Would that be an unfair result?

25             MR. CREMONA:  -- on both sides.

```
 1              MS. NEVILLE:  You know, I have to say --

 2              MR. CREMONA:  And then there are no issues

 3    remaining to be adjudicated.

 4              THE COURT:  What conditions could I impose on you

 5    for withdrawal of --

 6              MS. NEVILLE:  I have to look at the --

 7              THE COURT:  You can brief that also, what the

 8    appropriate conditions are.

 9              MR. DEXTER:  I think Judge Rakoff in the

10    Consolidated Stern decision held that the issues in the

11    claims allowance process are not and could not be res

12    judicata in the avoidance actions.  So --

13              THE COURT:  As to all -- as to any issue?  So if I

14    had a trial on a claims process which I made a determination

15    as to what the net deposits and net withdrawals -- or what

16    the deposits and withdrawals were, you're saying that

17    wouldn't be preclusive and on the same issue between the

18    same parties in an adversary proceeding?

19              MR. DEXTER:   I don't know if --

20              THE COURT:  I can't believe you said that.

21              MR. DEXTER:  I don't know if the opinion goes so

22    far as to say what would happen if Your Honor adjudicated

23    it, but he quite clearly --

24              MR. CREMONA:  Your Honor, I'm happy --

25              MR. DEXTER:  He quite clearly says that the claims
```

Page 48

1    allowance process resolves nothing more than the Trustee's

2    determination of net equity, and that's it.

3              THE COURT:  But when you withdraw something -- you

4    know this.  When you withdraw something with prejudice, that

5    can also be an adjudication on the merits which does have

6    res judicata and collateral estoppel effect.

7              MR. CREMONA:  And we cited cases to that effect in

8    our papers, Your Honor.

9              THE COURT:  And maybe if you want to withdraw it,

10   that's the appropriate disposition.  Then you're basically

11   giving up those defenses and you can go and try your case

12   wherever you want to try it.

13             MS. NEVILLE:  It's not the only defense, Your

14   Honor.  The ins and outs are not the defense.  Okay.

15             THE COURT:  Okay.  All right.  I look forward to

16   your briefings.

17             MR. CREMONA:  Thank you, Your Honor.

18             MR. DEXTER:  Thank you, Your Honor.

19             MS. NEVILLE:  Your Honor is that -- are you saying

20   a letter brief or a real brief?  What is it you --

21             THE COURT:  Well, 10 pages single spaced is just

22   too much on this issue.  I would like to see -- is 10 pages

23   enough?  It sounds like it should be enough.

24             MS. NEVILLE:  I understand there's a new font for

25   --

1          THE COURT:  Twelve point type.

2          MS. NEVILLE:  -- whatever this generation is

3    called.  It's called Times New Roman.

4          THE COURT:  I like Georgia.  Georgia font in 12

5    point --

6          MS. NEVILLE:  And it's bigger than Times Roman so

7    that they don't have to write as much.

8          THE COURT:  You know, I will tell you that, as you

9    probably know, the new appellate rules no longer have page

10   counts; they have word counts.

11         MS. NEVILLE:  Oh, God.

12         THE COURT:  And most of the comments that were

13   received to the proposed rule had to do with the word

14   counts.

15         MR. DEXTER:  Your Honor, might it make sense to

16   extend the briefing to 15 pages?

17         THE COURT:  Okay.

18         MR. DEXTER:  It seems like there -- the more we

19   talk about this, the more issues --

20         THE COURT:  There are a lot of issues.  It's not

21   an easy issue and I don't think it's just a Rule 41 issue.

22         MS. NEVILLE:  But, Your Honor --

23         MR. CREMONA:  Your Honor, I would submit that then

24   we should probably --

25         MS. NEVILLE:  The other thing is --

Page 50

1               MR. CREMONA:  -- clarify precisely what the issues

2     are so as to avoid --

3               THE COURT:  Well, the principal issue is whether

4     the withdrawal of the claim or the functional equivalent of

5     the withdrawal of the claim affects the Court's jurisdiction

6     and equitable jurisdiction.

7               MS. NEVILLE:  I have another little rug to throw

8     on this.

9               THE COURT:  Go ahead.

10              MS. NEVILLE:  I have 15 clients.  I don't know how

11    many Chaitman has, but there are a whole slew of other

12    people out there and claimants out there.  We're going to be

13    going off on a tangent that's important to however --

14              THE COURT:  I don't think I need -- I have a

15    motion before me.

16              MS. NEVILLE:  Right.  I was totally going to

17    resolve this.

18              THE COURT:  Ms. Neville, if I conclude as a matter

19    of law -- and I'm not saying I will -- but if I conclude as

20    a matter of law that the withdrawal of a claim doesn't

21    affect the Court's equitable jurisdiction, where the claim

22    is filed before the adversary proceeding and the equitable

23    jurisdiction to entertain the adversary proceeding is

24    dependent on the filing of the claim, and I conclude that

25    that doesn't defeat the jurisdiction, do you think I'm going

Page 51

1      to reach a different result in another case?

2              MS. NEVILLE:  Did you say would you reach a

3      different decision in case?

4              THE COURT:  Yes.  I don't think I need another

5      omnibus proceeding.  Nobody else is seeking to withdraw

6      their claims.

7              MS. NEVILLE:  Well you may be getting one anyway.

8              THE COURT:  I don't know if there are any other

9      defendants out there other than the ones represented by

10     these two firms.

11             MS. NEVILLE:  Oh, yes.

12             THE COURT:  Well, they apparently -- maybe they

13     want to continue to participate on the off chance --

14             MS. NEVILLE:  They wanted to see what was going to

15     happen to me.

16             THE COURT:  Or maybe they're saying hey, you know

17     what?  If these theories that Madoff was actually trading

18     treasury securities or there wasn't a Ponzi scheme prevail,

19     we'll wind up being net losers and we'll have a big claim in

20     the case.  Maybe that's why they're not participating.

21     Sounds to me like you don't think much of that theory.

22     Okay.  Two weeks, 15 pages, Mr. Dexter.

23             MR. DEXTER:  Thank you, Your Honor.

24             THE COURT:  Because you asked for it.  The

25     principal issue is jurisdiction and the second issue, I mean

Page 52

1    I guess it's kind of -- well --

2                MS. NEVILLE:  Conditions.

3                THE COURT:  Should I -- does anybody object --

4    well you may object, but do you object, Mr. Dexter, to my

5    treating your opposition as a motion to withdraw the claims

6    -- your claims?

7                MR. DEXTER:  Well, not if Your Honor is going to--

8    I guess I do if Your Honor's going to deny it.

9                THE COURT:  Well, because I -- no, no, no.  No,

10   no, no.

11               MR. DEXTER:  By the way --

12               THE COURT:  I come back to the issue of if

13   nobody's withdrawing their claims, I don't have to decide

14   anything.

15               MR. DEXTER:  Yeah --

16               THE COURT:  There's a pending claim and then I'll

17   just schedule a trial.

18               MR. CREMONA:  Your Honor, I just want to be clear

19   and Mr. Dexter, I'm sure, will correct me if I'm wrong.  I

20   believe the only three claims that were actually withdrawn

21   were with respect to the defendants Sarah and Lawrence and

22   the Nelsons.  I don't believe --

23               THE COURT:  there's always that supplemental list

24   that --

25               MR. CREMONA:  That was, I believe, only claim

Page 53

1     objection withdrawals.  So we're only dealing with three.  I

2     believe we need to be clear here and I don't think Mr.

3     Dexter has been clear about that.

4              MR. DEXTER:  No, that's correct.

5              MS. NEVILLE:  Does that change your view of what

6     we should be briefing?  Because it seems premature to do it

7     --

8              THE COURT:  Well, I have three -- I have those

9     three requests for withdrawals of claims and I can deal with

10    the issue as to the other three and just say the rest of the

11    motion is academic because nobody's withdrawing their claims

12    and then I can schedule a trial in Bam.

13             MS. NEVILLE:  Well, we still have to deal with

14    what that disallowance meant and --

15             THE COURT:  There's no disallowance, though, under

16    the order.  Oh, the disallowance in Bam?

17             MS. NEVILLE:  Yeah.

18             THE COURT:  And how to you propose to deal with

19    that?

20             MS. NEVILLE:  I hadn't actually thought it

21    through.  I am going to -- motion to withdraw the records

22    which is going to raise the same issues as you're asking us

23    --

24             MR. CREMONA:  Your Honor, for clarity of the

25    record, I'd just like to say that we made clear that the

1    Trustee is seeking prejudgment interest in these cases and

2    if in the motion to withdraw the references made in the Bam

3    case, which is on all four with the Carol Nelson and Sarah

4    Lawrence decisions from Judge Daniels which were just

5    issued, I do think that needs to be considered as a factor

6    that militates in favor of avoiding prejudgment interest.

7              THE COURT:  When the cases first went to Judge

8    Daniels, there were pending -- there's no question there

9    were pending live disputes relating to their claims.  This

10   is a little different.  Maybe it's a little different.

11             MR. CREMONA:  He clarified in his denial of the

12   motion for reconsideration on the very issues Your Honor

13   talked about, that Rule 3006 precluded it so it was moot.

14   So I mean, we'll --

15             THE COURT:  He was ruling on the withdrawal of the

16   claims; right?

17             MR. CREMONA:  Correct.  He found that that was not

18   proper and he conferred Your Honor with final adjudicative

19   authority as a result.

20             MS. NEVILLE:  It's only because the Trustee made

21   an argument that there was a 502(d) claim.

22             MR. CREMONA:  No, that's not --

23             THE COURT:  I know what I'm going to do.

24             MR. CREMONA:  That's not accurate, Your Honor.

25   I'm happy to get into that argument as well.

Page 55

1          THE COURT:  But I am going to -- I have a better

2     way to tee this up because we're talking about -- I'm going

3     to schedule a trial in Bam.  You can make a motion to

4     withdraw the reference and if the District Court withdraws

5     the reference I won't conduct a trial.  But right now, it

6     appears to me from everything I've seen that I still have a

7     live claim.

8          MS. NEVILLE:  Okay.  Let me just add one other

9     thing about Bam and Mann.  First of all, Your Honor may not

10    be aware because this is coming down the pike, but the

11    Trustee just filed a motion to have a lot of other discovery

12    and we have --

13         THE COURT:  In Bam?

14         MS. NEVILLE:  In all of the cases.

15         MR. CREMONA:  No, that's not correct, Your Honor,

16    and I'm happy to go through --

17         THE COURT:  Let her speak and then I'll...

18         MS. NEVILLE:  But I do have a request in front of

19    Judge Moss and to Mr. Pomona about the documents that were

20    missing from the production for Mann with respect to trading

21    and trade confirmations.  So there is still an issue.  We

22    did not know that the confirmations existed until we had a

23    meeting on that last Ponzi scheme thing --

24         THE COURT:  I'm sorry, what confirmation?

25         MS. NEVILLE:  -- last month.  The trade

1    confirmations.

2            THE COURT:  Right.

3            MS. NEVILLE:  We did not know that the Trustee had

4    and not produced as part of the customer file the trade

5    confirmations.  So I've asked for the trade confirmations.

6            THE COURT:  For the in-house -- their own

7    proprietary trading?

8            MS. NEVILLE:  Right.

9            THE COURT:  Okay.

10           MR. CREMONA:  Your Honor, can --

11           MS. NEVILLE:  So I've asked for those and Mr.

12   Cremona and I were exchanging letter arguments about that

13   and there are, apparently, foxes of trade confirmation which

14   I'm willing to go and look at because that's something that

15   I need for part of this -- for everyone in the trials.

16           MR. CREMONA:  Your Honor, I would just address

17   that briefly.  We receive a letter from Ms. Neville

18   yesterday on the eve of this pretrial conference seeking to

19   join the Judge Moss trading records to see if Your Honor --

20           THE COURT:  She hasn't been part of this?

21           MR. CREMONA:  No.

22           THE COURT:  Okay.

23           MR. CREMONA:  And that was pending since 2016 --

24           MS. NEVILLE:  Yes, I have.

25           MR. CREMONA:  That is not accurate, Your Honor.

1    Also if I may just complete the facts here.  There is an

2    order that Your Honor is aware of that requires a

3    stipulation to be signed by Your Honor for a matter to be

4    referred to Judge Moss that wasn't adhered to.  This is

5    belated attempt to join in a proceeding that's been going on

6    for two years.

7             It is procedurally improper and let me just

8    clarify, Your Honor, what Ms. Neville is asking for are

9    supplemental Rule 26 disclosures which we made in 2014, to

10   be clear, and Your Honor is aware of all of the disclosures

11   that we've made have been clear that we have not disclosed

12   all of our documents.  We have made it abundantly clear what

13   is scanned and not scanned; what's in the data room, what's

14   not.  It is disingenuous to say that she is not aware that

15   trade confirmation existed.  But putting all that aside --

16             THE COURT:  You haven't stipulated to go before

17   Judge Moss?

18             MS. NEVILLE:  No, Your Honor, but -- just one

19   second, Your Honor.

20             MR. CREMONA:  So that shouldn't hold up the

21   matter, Your Honor.  And, but putting all that aside, the

22   Trustee has said fine.  If you would like to go look at

23   those documents, go ahead.  That should not delay this trial

24   and by the way, Ms. Neville has already indicated she's

25   going to move to withdraw the reference and by the way

1   there's no live discovery dispute that could even be

2   referred to Judge Moss.

3           Discovery closed in 2015.  She's asking for -- Ms.

4   Neville didn't say I comply with open and existing

5   discovery.  She never did request the trade confirmations.

6   She didn't serve discovery in seven of the 15 cases that she

7   is trying to submit to Judge Moss.  It's important for Your

8   Honor to know the facts.  I apologize for belaboring them,

9   but we can't just -- I think it's important to know exactly

10  what the facts are.

11          THE COURT:  It sounds to me that it's a threshold

12  matter.  You're not part of the Judge Moss proceeding.

13          MS. NEVILLE:  Your Honor, I'd like to dispute that

14  because one of the things that is include in that is all of

15  the document requests that Ms. Chaitman made in connection

16  with the Madoff deposition, that is what she is focusing on

17  and I was specifically a participant in that.

18          THE COURT:  When did you make document requests,

19  though?  She was making them on behalf of her own clients;

20  wasn't she?

21          MS. NEVILLE:  Well, we made them jointly.

22          THE COURT:  And she stipulated to go before Judge

23  Moss which you haven't done.  Here's what I'm going to do.

24  I'm going to schedule a trial.  Discovery closed years and

25  years ago.  You're not a participant in any of these

1   disputes before Judge Moss.  You didn't stipulate to submit

2   any disputes to Judge Moss.  I'm not aware of any disputes

3   before me that should hold up this trial.

4          I'm going to schedule the trial, give you a chance

5   to go and make a motion to withdraw the reference and deal

6   with that.  With respect to this issue of deeming a motion

7   to be made, make your motion to withdraw your claim if

8   that's what you want to do.  As far as I'm concerned in the

9   absence of withdrawal, there's a live claim.  And the issues

10  that are -- and maybe you don't want to withdraw your claim

11  because you think you'll hit a home run at the trial and

12  it'll turn out you'll be a net loser and be able to

13  participate in the estate.  I don't know why you're not

14  doing it, but if you haven't withdrawn your claim there's no

15  issue.

16         So I'll schedule the trial in Bam.

17         MR. CREMONA:  Your Honor, we've conferred with our

18  testifying expert and can propose certain dates if that

19  convenient for the Court.

20         THE COURT:  What dates?

21         MR. CREMONA:  The testifying experts and the trial

22  team are available during the first week of December.

23         THE COURT:  How long do you think this trial is

24  going to take?

25         MR. CREMONA:  Two to three days, I would say, Your

Page 60

1   Honor.

2            THE COURT:  How long you think the defense will

3   take?

4            MS. NEVILLE:  I have no idea, Your Honor.  I am

5   going to move to withdraw the reference --

6            THE COURT:  Okay.

7            MS. NEVILLE:  -- and I do think that that is too

8   soon for --

9            THE COURT:  Why?  The case has been -- discovery's

10  been closed for three years, four years.

11           MS. NEVILLE:  Discovery's been closed and now

12  we're learning all these things that have not been ever told

13  to us in 10 years.  You know, I'm tired of them telling us

14  that we've been in this case for 10 years when we suddenly

15  learn that there are all these documents that we haven't

16  been given access to.

17           THE COURT:  Look.  There have been live discovery

18  disputes before Judge Moss regarding this very issue.

19  You're not part of that and now you're suddenly saying hey,

20  wait a minute, there's all this other information --

21           MS. NEVILLE:  I --

22           THE COURT:  Let me finish.  That I may or may not

23  have asked for.  It goes back years and years and years.

24  I'm going to schedule the trial and you can make a motion to

25  withdraw the reference.  But this case is trial ready.  The

Page 61

1    mediation was concluded almost two years ago.  What are

2    those dates?

3              MR. CREMONA:  The first week, we're fully

4    available.

5              THE COURT:  All right.  I'll schedule it for

6    Monday, December 3rd.  That gives you plenty of time to move

7    to withdraw the reference.

8              MS. NEVILLE:  Fine.

9              MR. CREMONA:  Thank you, Your Honor.  Would you

10   like us to submit an order that?

11             THE COURT:  Yeah.  And you can exchange witness

12   lists and documents a week before the trial.

13             MS. NEVILLE:  There's not going to be a trial in

14   this (indiscernible).

15             THE COURT:  All right.  Well, maybe there will but

16   if there is, plaintiffs can use numbers.  You know, you can

17   give them to me in a loose leaf separated by exhibits.  You

18   can use letters, separated by exhibit tabs.

19             MR. CREMONA:  Understood, Your Honor.

20             THE COURT:  I guess I don't have any other pending

21   matters before me because they're not seeking to withdraw

22   their claims.  If you seek to withdraw your claims, you'll

23   have to make a motion, Mr. Dexter, and then we'll deal with

24   each claim.

25             MR. DEXTER:  We'll make the motion.

Page 62

1           THE COURT:  All right.  Let me just...

2           MR. CREMONA:  Just to be clear, Your Honor, so we

3    all have clarity of the calendar, the three cases where the

4    attempted claim withdrawal were made, we have a pretrial

5    conference scheduled on October 10th.

6           THE COURT:  Here?

7           MR. CREMONA:  Yes.

8           THE COURT:  All right, I'll fix trial dates and

9    then unless there's a motion to withdraw and then I'll deal

10   with the issues.  I don't really have to deal with these

11   jurisdictional issues yet, but if you make the motion to

12   withdraw the reference -- I'm sorry, if you make the motion

13   to withdraw the claim that underlying issue is there whether

14   it makes a difference and I think in some of these, couple

15   of these cases I mentioned, the motion was denied as moot

16   because it really had no effect on anything.  All right?

17          MR. DEXTER:  Okay.

18          MR. CREMONA:  Thank you, Your Honor.

19          MR. DEXTER:  Just so Your Honor is aware, we'll be

20   filing today our petition for mandamus in the Second Circuit

21   on the jury trial issue.

22          THE COURT:  A mandamus in the Second Circuit?

23          MR. DEXTER:  That's right.

24          THE COURT:  On the issue that Judge Daniels

25   decided?

1            MR. DEXTER:  That's right.

2            THE COURT:  Okay.

3            MR. CREMONA:  I don't see that having any

4    procedural effect on the trial, Your Honor.

5            THE COURT:  What you be compelling him to do or

6    not do?

7            MR. DEXTER:  Give the defendants their Seventh

8    Amendment right to a jury trial.

9            THE COURT:  But you don't have a Seventh Amendment

10   right to a jury trial with a pending claim.  The Second

11   Circuit and the Supreme Court have ruled that.

12           MR. DEXTER:  Well, I mean, are we going to argue

13   that right now again?

14           THE COURT:  No, no.  You can argue that before the

15   Second Circuit.  All right, so I guess I'll deny your motion

16   without prejudice since there really are no withdrawal --

17   motions to withdraw.

18           The notice -- except to the extent that notices of

19   withdrawal in these three cases are a nullity because they

20   didn't follow the appropriate procedure and that's without

21   prejudice, obviously.  You've met -- you can make a motion

22   to withdraw your claim.

23           MR. CREMONA:  Again, understood Your Honor, but I

24   would say the same logic applies to the remain purported

25   withdrawals of the objections.  As Ms. Neville acknowledged,

Page 64

1    I don't see why the motion should be denied.  I think we've

2    reset the matter and now we have additional briefing, but on

3    the papers before you, Your Honor, I think the motion should

4    be granted.

5              THE COURT:  I'll grant the motion to the extent

6    it's saying that Rule 3006 applies because Judge Daniels

7    said it applied and also because this proceeding is supposed

8    to be administered or adjudicated to the extent possible in

9    accordance -- as an ordinary bankruptcy.

10             MR. CREMONA:  Absolutely.

11             THE COURT:  But to tee this up procedurally, I'll

12   conclude that you require a -- I hate to interrupt myself

13   but I'm being told that she's not even trying to withdraw

14   her claims.

15             MR. CREMONA:  She's trying to withdraw her

16   objections.  Again, Your Honor, I --

17             THE COURT:  But Rule 3006 doesn't deal with that.

18             MR. CREMONA:  But Rule 41 does and they've invoked

19   this as a contested matter.  I think it is worth going

20   through that, but putting that aside, what I'm trying to

21   accomplish here, Your Honor, is to invoke the status quo.

22   They have no legal --

23             THE COURT:  But she's still -- it's the same

24   thing.  She would have to make a motion to withdraw her

25   claim under Rule 41 or withdraw whatever it is she --

Page 65

1          MR. CREMONA:  I agree, Your Honor.  That's what --

2     I'm suggesting that --

3          THE COURT:  All I'm saying -- let's do it this way

4     because we're going around in circles here.  To the extent

5     they purported to withdraw their objection or their claim

6     without a motion, those acts are a nullity.  With respect to

7     the claim, Rule 3006 applies for the reasons I've stated and

8     you have to make a motion.

9          With respect to the objection, it's part of a

10    contested matter.  It's a pleading in a contested matter and

11    the effect of which would be, in their view, the termination

12    of a contested matter.  That's why they're doing it.  So

13    they have to make a motion on the Rule 41 to do that.

14          And let's just leave it at that.  And then we can

15    go through them on a case-by-case basis.  There may be some

16    cases where there's no dispute.  I don't know.  I doubt it,

17    but they all seem to be the same in terms of the legal

18    issues.  And then we can get into the issue of well, gee, if

19    you can withdraw it -- a motion, what are the appropriate

20    terms or are there appropriate terms to permit you to

21    withdraw.

22          So doing it this way is...  You know, beyond that,

23    and everything is without prejudice to your rights to make a

24    motion to withdraw or make a motion to withdraw their rights

25    to oppose and I don't have to resolve the jurisdictional

1    issue now because as long as I have a live claim before me

2    or what appears to be live claim -- and an objection by the

3    way -- what you're really trying to do, if that's the route

4    you want to go, why don't you just make a motion to withdraw

5    both the objection and the claim and basically consent to

6    the determination that you have no net equity which is what

7    you're really talking about.  Right?

8          Then we can talk about what that means in terms of

9    the adversary proceeding.

10         MS. NEVILLE:  I think you and I differ in what

11   that means.

12         THE COURT:  I understand.  I understand we differ

13   but you two sides differ also, so --

14         MS. NEVILLE:  That's true.

15         THE COURT:  That's why we're here.

16         MS. NEVILLE:  I'm still not sure what the outcome

17   of this was --

18         THE COURT:  Okay.

19         MS. NEVILLE:  -- because I actually thought that

20   at one point I said well, why don't I just allow them to --

21   why don't I just agree to this motion.  So I won't withdraw

22   my objections.  What's the difference?  There is no

23   prejudice to the adversary proceeding or to the claims

24   process by withdrawing it, just ministerial.  So now, they

25   have to go forward and file this omnibus motion --

1           THE COURT:  Well, no, no, no.

2           MS. NEVILLE:  -- listing the three cases.

3           THE COURT:  You're saying it's ministerial but

4    it's procedurally improper.

5           MS. NEVILLE:  Well, it's not procedurally improper

6    if they haven't answered in that particular adversary

7    proceeding.

8           THE COURT:  In the adversary proceeding and the

9    claims objection.

10          MS. NEVILLE:  And the claims --

11          THE COURT:  Well, but they have --

12          MS. NEVILLE:  -- contested matter.

13          THE COURT:  You know, essentially --

14          MS. NEVILLE:  It can't be both.  It can't be that

15   those cases that went up to the Second Circuit are directly

16   a part of my claims resolution process and that they have

17   not finally disallowed the claim.  It can't be that that

18   procedure where they have actually disallowed all of the

19   things that are raised in the objection have been ruled on

20   by the Second Circuit and that there's absolutely not

21   finality to the claim.  That can't be.  You can't keep

22   attaching --

23          THE COURT:  But you're still --

24          MS. NEVILLE:  -- an adversary proceeding that says

25   I'm not dealing with the --

Page 68

1             THE COURT:  You're still disputing the computation

2     of net equity.  In other words, there are legal issues and

3     factual issues and even if all the legal issues are decided

4     against you, you're saying not only there are no fictitious

5     profits and as a consequence there is net equity because the

6     trustee hasn't correctly computed the ins and outs.  This

7     wasn't a Ponzi scheme; there was actual trade.  That's what

8     you're saying.

9             MS. NEVILLE:  Let me --

10             THE COURT:  I don't want to hear -- Ms. Neville, I

11     don't want to hear any more about this.

12             MS. NEVILLE:  But I haven't really -- it really

13     clears it up for me.

14             THE COURT:  I really --

15             MS. NEVILLE:  It's different to say I do not have

16     a claim and the calculation for that equity is okay and I

17     have a defense under 548(c).

18             THE COURT:  In terms of your motion, any attempts

19     to withdraw a claim or an objection in a pending contested

20     matter is a nullity without prejudice to their right to make

21     a motion to withdraw the claim under 3006 or to withdraw --

22             MS. NEVILLE:  The objection.

23             THE COURT:  -- their objection under Rule 41;

24     okay?

25             MR. DEXTER:  Understood.  Thank you, Your Honor.

1          THE COURT:  All right.  We don't have to deal with

2     the jurisdictional issue now but in response to a motion to

3     withdraw the claim or something like that, you can argue it

4     doesn't make a difference because there's still equitable

5     jurisdiction.

6          MS. NEVILLE:  Let me ask you something.

7          MR. CREMONA:  Your Honor, can I --

8          THE COURT:  We're done.

9          MR. CREMONA:  Can we submit an order the

10    memorialized Your Honor's ruling?

11         THE COURT:  Yes.  Now, next, I have one more

12    matter here.

13         MS. NEVILLE:  That's not mine.

14         THE COURT:  And this --

15         MR. DEXTER:  I hope this will be a simple one,

16    Your Honor.

17         THE COURT:  Well, the problem is Judge Moss has a

18    lot of paper in her little office.  And the impression I got

19    -- and maybe there's an issue about what's still alive

20    before Judge Moss and what isn't and those papers can be

21    returned, destroyed, whatever it is just -- or you can

22    supply the documents on a disc or something like that.  It's

23    a storage issue, basically.

24         MR. DEXTER:  Okay, so how do you propose --

25         THE COURT:  Why don't you tell me -- you don't

1    have to do it this second -- but tell me what you think are

2    still live issues before Judge Moss.  I understand this

3    trading records issue appears to still be a live issue, but

4    there must have been other issues that were referred to him

5    that are no longer live and it seems to me that those

6    records can be disposed of.

7             And maybe the answer is that to the extent there

8    are papers there that don't bear -- part of live dispute but

9    don't bear on any of the issues right now, you just retrieve

10   them and then you can resubmit them or something like but at

11   a minimum, let's find out what it is or what papers you

12   think are part of this live dispute; okay?

13            MR. DEXTER:  Okay.  So should we submit a letter

14   to Your Honor?

15            THE COURT:  Yeah, you can submit a letter.  You

16   know, you can respond also, but --

17            MR. DEXTER:  Okay.

18            THE COURT:  -- to the extent you can resolve the

19   storage issue --

20            MR. DEXTER:  Okay.

21            THE COURT:  -- it would be helpful.

22            MR. CREMONA:  We're happy to help resolve --

23            THE COURT:  Okay.

24            MR. CREMONA:  -- verify what's still pending.

25            MR. DEXTER:  Thank you, Your Honor.

Page 71

1             THE COURT:  Maybe you'll surprise him.  Actually,

2       copy him on the letter.

3             MR. DEXTER:  Okay.

4             THE COURT:  Because he may think he resolved

5       something and -- okay.  You'll be back this afternoon, 2

6       p.m.

7             MR. DEXTER:  Thank you, Your Honor.

8             THE COURT:  All right.

9             MS. NEVILLE:  Thank you, Your Honor.

10            THE COURT:  Thank you.

11      (Recess)

12            THE COURT:  All right.  Apologize for the delay

13      but I had a conference on the phone.  Picard versus Shapiro.

14            MR. ROLLINSON:  Good afternoon, Your Honor.  James

15      Rollinson here on behalf of the Trustee.  With me is Torello

16      Calvani.

17            MR. MILLER:  Good afternoon, Your Honor.  Robert

18      Miller here for defendants.

19            MR. LAX:  And Barry Lax.  Thank you, Your Honor.

20            MR. ROLLINSON:  Good afternoon, Your Honor.  We're

21      here probably on something that's not your favorite subject,

22      a discovery dispute.  We were -- we thought long and hard

23      before bringing it to your attention, but now that we're

24      moving into the next phase of that discovery we just want to

25      clarify a couple issues so that we're not faced with a

1   situation a couple months down the road with some questions

2   unanswered.

3        The first area that we want to pin down is having

4   an assurance that the defendants have diligently searched

5   for and produced all document responsive to the Trustee's

6   request to which they were compelled to respond.  And we

7   have some questions on that based on their productions.

8        THE COURT:  What form would that -- all right, why

9   don't you tell me --

10        MR. ROLLINSON:  Sure.  And secondly, just an

11   explanation of why.  I think we had expressed during the

12   last conference before Your Honor when we were arguing the

13   motion to compel.  We hoped we weren't in a situation where

14   for approximately two years we're fighting over requests --

15   requests which were narrowed 15 months ago and we fight --

16   we waste a lot of resources including your own, Your Honor,

17   and there are no responsive documents.

18        So as it relates to David Shapiro, Mr. Shapiro's

19   younger son, he didn't produce one document in response to

20   any of our requests.  The Citrons produced a total of 18

21   document, only five of which related to one of these core

22   accounts, as we call them.  So we got virtually no

23   production from any of the two children after months and

24   months and months which had delayed this case moving forward

25   as far as depositions goes.

1              So we do have some open questions.  Are there

2      still documents?

3              THE COURT:  Well, let's get to the first question.

4      What is it that you think you need from them to confirm that

5      you've gotten all the documents that are responsive to your

6      request?

7              MR. ROLLINSON:  Well, one, that they diligently

8      searched for them.  Secondly, and explanation of to the

9      extent -- and we are a bit at a loss why these documents

10     don't -- wouldn't have existed and they would have been in

11     their possession.  We asked for all account statements

12     relating to all accounts.

13             THE COURT:  Are you going to take their

14     depositions?

15             MR. ROLLINSON:  We are.

16             THE COURT:  Why don't you just ask them at their

17     depositions?

18             MR. ROLLINSON:  The problem is, and we were

19     talking before you came in, Your Honor, about scheduling

20     those.  If we're two months down the road, we're taking

21     their deposition.  There are open questions about documents.

22             THE COURT:  What is it that you want from them?

23             MR. ROLLINSON:  Well --

24             THE COURT:  You want some sort of a statement from

25     each of the defendants individually?  Is that what you're

1    looking for?

2            MR. ROLLINSON:  Correct, to make sure that we do

3    have all responsive documents and an explanation of why

4    there aren't any documents.  Why --

5            THE COURT:  But that's -- ask them that at a

6    deposition and you can develop your arguments about

7    spoliation or whatever else you have.  But they're going to

8    get up and they're going to tell me they produced all the

9    documents and it becomes a he said, she said issue and it

10   just makes more sense if you're going to take their

11   depositions anyway to establish these facts that you're

12   seeking to establish.

13           MR. ROLLINSON:  And I agree that's, I think, a

14   sensible approach.

15           THE COURT:  Because at the end of the day, they

16   may not have any more documents to turn over.  Whether they

17   should or shouldn't have the documents is a different

18   question, but...

19           MR. ROLLINSON:  Correct.  I just don't want to be

20   in a position where two months down the road with two months

21   left in the discovery period which now we have a firm cutoff

22   and there's still questions about documents.

23           THE COURT:  If it comes up in a deposition that

24   they have documents that are responsive and they didn't turn

25   them over, that would be a basis to extend the discovery,

Page 75

1   presumably.  But we've been going at this for how many years

2   now.

3               MR. ROLLINSON:  Agreed.  Agreed, and we were

4   surprised that we didn't get any responsive documents.  The

5   other point of confusion is that when the wrote to Your

6   Honor they indicated that they produced previously a number

7   of documents to us in connection with their Rule 2004

8   production.

9               THE COURT:  I thought that was Stanley who

10  produced the documents.

11              MR. ROLLINSON:  You're correct.  There were no

12  documents from either of the children and I reviewed it and

13  confirmed that there were no accounts --

14              THE COURT:  You know, this case has taken on a

15  satellite litigation over documents.  You're going to take

16  their depositions anyway.  You have what you have.  Ask

17  them.  Go through each of the requests if you think it's

18  appropriate.  Say, you know, what'd you do to look for those

19  documents.  What happened to the account statements?  I

20  don't know if they were receiving them or Stanley was

21  receiving them but what happened to them?

22              MR. ROLLINSON: Well, it certainly gives us some

23  comfort if we're faced with a situation where they're

24  additional documents or there are issues that we're not

25  going to be backed up against the discovery cutoff and if

1   there is an issue, we'll bring it to --

2           THE COURT:  Do you have any doubt that if it turns

3   out one of them has a stack of account statements that

4   weren't turned over and there's a reason -- and you didn't

5   have them before and there's a reason to take -- to get more

6   discovery ruling, then I'll extend the discovery deadline.

7   But just take their deposition.

8           MR. ROLLINSON:  Okay.  Fair enough.

9           THE COURT:  Now with respect to this issue of

10  spoliation, I assume you want to take the deposition first

11  anyway but you'd have to do that by a separate motion.

12          MR. ROLLINSON:  Okay.

13          THE COURT:  All right?  Anything else?

14          MR. MILLER:  Nothing for defendants, Your Honor.

15          THE COURT:  Very good.  So tell me what the

16  schedule is in this case now?  I want to move it along.  I'd

17  like to try this case.

18          MR. ROLLINSON:  Currently we have a discovery --

19  fact discovery cutoff of the end of January.  We were

20  conferring again, Your Honor, about scheduling depositions.

21  We don't have a ton of depositions, I think.  Just as a

22  preview, I guess, we did file a motion, Your Honor, for a

23  Rule 30 order to depose Ms. Bongiorno who's incarcerated.

24  And I guess they'll formally --

25          THE COURT:  A Rule 30 on behalf of BLMIS?

1            MR. ROLLINSON:  On behalf of the Trustee seeking

2      an order authorizing her deposition.

3            THE COURT:  Do give testimony on behalf of BLMIS?

4            MR. ROLLINSON:  On behalf to the Trustee, correct,

5      in this case.

6            THE COURT:  No, wait.  She's not a 30(b)(6)

7      witness or --

8            MR. ROLLINSON: No, no, no.  As an individual.  As

9      an individual.

10           THE COURT:  Okay, but she's incarcerated.  You

11     have to go through a separate procedure to take her

12     deposition.

13           MR. ROLLINSON:  Yes, Your Honor.  We filed that

14     motion.  We're just bringing it to your attention.  It might

15     not be on your radar but we filed that last --

16           THE COURT:  When is that returnable?

17           MR. ROLLINSON:  On next omnibus date in October.

18           THE COURT:  Is there an objection?

19           MR. LAX:  No, we're going to join in the motion,

20     Your Honor.

21           THE COURT:  All right, so why don't you just

22     submit a --

23           MR. LAX:  Stipulation?

24           THE COURT:  -- a consent order.

25           MR. LAX:  Okay.  That's fine.

1            MR. ROLLINSON:  Fair enough.

2            THE COURT:  I mean, your firm has done several of

3     these already, so --

4            MR. ROLLINSON:  Correct.

5            THE COURT:  Okay, good.

6            MR. ROLLINSON:  So we'll do that, Your Honor,.

7            THE COURT:  All right.  And besides Ms. Bongiorno

8     and the defendant, what other fact witnesses are there in

9     this case?

10           MR. ROLLINSON:  If they're additional witnesses,

11    it's just a couple.  We were talking about that.  We weren't

12    quite sure.  There's Mr. Konigsberg who is the accountant.

13    We were talking about there are a couple other former BLMIS

14    employees that are not incarcerated that we're talking about

15    but it's --

16           MR. LAX:  Maybe Mr. Kugel.

17           MR. ROLLINSON:  -- a very limited number.  David

18    Kugel being one of them.

19           THE COURT:  He's not incarcerated?

20           MR. ROLLINSON:  He's not; no.  And he's local.  He

21    lives on Long Island, so...

22           THE COURT:  All right.  In terms of expert

23    discovery, I don't know if they're technically experts but I

24    assume you have your forensic accountants that have

25    reconstructed the accounts and they'll testify as to that;

1    right?

2            MR. ROLLINSON:  Correct.

3            THE COURT:  Do you want to take their depositions?

4            MR. LAX:  I'm going to take their depositions,

5    Your Honor, and then I believe we may have some experts as

6    well.  Because remember, Your Honor, these are not the split

7    strike strategy account.  These are different accounts.

8            THE COURT:  Are these the convertible overcharge

9    accounts?

10           MR. LAX:  Yes.

11           MR. ROLLINSON:  And then, Your Honor, there were -

12   - they're called the portfolio accounts.  It can come under

13   different names, but they were the accounts managed or

14   administered by Ms. Bongiorno which were the long-term buy

15   and hold.  That was -- when we talk about the core accounts,

16   those are those accounts.

17           THE COURT:  She should have a pretty good

18   knowledge of the business judging from the PW proceeding.

19           MR. ROLLINSON:  She does.

20           THE COURT:  Okay.  And how long do you think that

21   -- do you already have expert reports as to this particular

22   case prepared?

23           MR. ROLLINSON:  I think that as far as the

24   forensic experts go, those will -- they're probably not

25   prepared yet because there's sort of a pipeline for those,

1    but those will be prepared and served, I believe in the time

2    that is provided in the amended case management order.  And

3    we have Mr. Dubinsky as well.

4              THE COURT:  Okay.

5              MR. LAX:  And then, Your Honor, there is an

6    outstanding subpoena right now by the Trustee to --

7              THE COURT:  For who?

8              MR. LAX:  -- JP Morgan Chase.  I believe they

9    filed their responses and objections last night and it's for

10   Stanley Shapiro's loan documentation for his mortgage from

11   1995.  So we do plan to move to quash that subpoena.

12             THE COURT:  On what basis?

13             MR. LAX:  I don't know what the relevance is for a

14   1995 mortgage on his apartment in Manhattan -- the loan

15   documentation.

16             THE COURT:  Do you have standing to move to quash

17   a third-party subpoena other than on privacy grounds?

18             MR. LAX:  On privacy grounds?

19             THE COURT:  Other than privacy grounds.

20             MR. LAX:  I believe relevance grounds, Your Honor.

21             THE COURT:  No, I know I have a decision about

22   this, I think, in this case also.

23             MR. ROLLINSON:  I think I heard argument on it,

24   actually.

25             THE COURT:  Okay.

1          MR. ROLLINSON: The one thing --

2          MR. LAX:  I will make sure to --

3          THE COURT:  Yeah, I know.  I've had that issue a

4    couple of times about the standing of a party to object to a

5    non-party subpoena.  For example, sometimes I get an

6    objection on burdensome grounds, and my response is, "Well,

7    if the subpoenaed party isn't saying it's burdensome, why

8    are you saying its burdensome?"  And I had somebody say,

9    "well, then I have to look at the stuff."  After they told

10   me that it was irrelevant.  My response is, "Well, if it's

11   irrelevant, why are you looking at it?"

12         MR. LAX:  but, Your Honor, it'd be the same thing

13   if they tried to subpoena for his financial records.

14         THE COURT:  Well, financial records and personal -

15   - you always have a right to object on privacy grounds.

16         MR. LAX:  Right.

17         THE COURT:  But he is a party and the financial

18   disclosures he made may be relevant to his BLMIS accounts.

19         MR. LAX:  Maybe.

20         THE COURT:  Okay.  It's not a very high threshold

21   to meet; you know.

22         MR. LAX:  Okay.

23         MR. ROLLINSON:  And the one thing we're trying to

24   see --

25         THE COURT:  I'm not saying don't make the motion,

Page 82

1    I'm just --

2             MR. LAX:  Okay.

3             THE COURT:  I've dealt with this issue, I know, a

4    couple time.

5             MR. LAX:  Okay.

6             MR. ROLLINSON:  And we're just -- one thing we're

7    trying to -- which we did at the outset is with JP Morgan

8    Chase's counsel, first we want confirmation from him whether

9    any documents even exist responsive to the subpoena and

10   obviously if they no longer have any documents responsive,

11   then it moots the --

12            THE COURT:  When was --

13            MR. ROLLINSON:  -- and we're happy to withdraw the

14   subpoena.

15            THE COURT:  When was the loan no longer

16   outstanding?

17            MR. ROLLINSON:  I believe it was in 1998.

18            THE COURT:  That's about the cutoff date for the

19   documents from --

20            MR. ROLLINSON: It could be close.  We just don't

21   know.  We got their objections last night which was a little

22   unclear of whether --

23            MR. LAX:  I would say it was very unclear.

24            MR. ROLLINSON:  It said to the extent we have

25   documents, we'll produce them so we just have to --

Page 83

1             THE COURT:  So ask them when they're going to

2    produce them, then.

3             MR. LAX:  Right, and then we'll move before that.

4             THE COURT:  All right.

5             MR. ROLLINSON:  That's all.

6             THE COURT:  Okay, so let me schedule, I guess,

7    another status conference.  You say your fact discovery is

8    ending at the end of January.

9             MR. LAX:  End of January.  Yep.

10            THE COURT:  Say February 7th --

11            MR. ROLLINSON: Okay.

12            THE COURT:  For conference.

13            MR. ROLLINSON:  That's fine, Your Honor.

14            MR. LAX:  Thank you, Your Honor.

15            THE COURT:  Okay, thank you.

16            (Whereupon these proceedings were concluded at

17    2:25 PM)

18

19

20

21

22

23

24

25

Page 84

1                          I N D E X

2

3                          RULINGS

4                                              Page        Line

5

6    Motion to Strike Denied Without Prejudice    63          14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 85

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 27, 2018

**&**

**&**   5:7 6:5

**0**

**08-01789**   1:5 3:1
  3:5
**08-99000**   1:3

**1**

**1**   11:10
**10**   35:7 40:13
  48:21,22 60:13,14
**10-04390**   1:15 3:9
  6:10
**10-05383**   2:1 3:11
**1000**   4:20
**10004**   2:17
**10018**   5:9
**10020**   4:15
**10022**   5:3
**10111**   4:6
**10:05**   2:20
**10th**   62:5
**11501**   85:23
**11th**   9:20
**12**   49:4
**1221**   4:14
**14**   40:12 44:10
  84:6
**1450**   5:8
**15**   9:21 10:15 11:9
  49:16 50:10 51:22
  58:6 72:15
**1667**   4:20
**18**   72:20
**1995**   80:11,14
**1998**   82:17

**2**

**2**   71:5
**20/20**   41:20
**20006**   4:21
**2004**   75:7
**2009**   6:21

**2012**   26:13,18
**2014**   57:9
**2015**   6:14 58:3
**2016**   3:2 56:23
**2017**   9:14
**2018**   2:19 85:25
**21**   12:18
**21st**   12:12
**24**   14:11
**26**   2:19 57:9
**27**   85:25
**29**   11:10
**2:25**   83:17

**3**

**3**   16:22
**30**   19:14 76:23,25
  77:6
**300**   85:22
**3005**   33:15
**30056**   14:25
**3006**   8:9,15,24
  25:12 28:20 29:5
  29:6,13 30:21,22
  31:5,6,10,14 32:3
  33:14 41:6,10,11
  44:15,16 54:13
  64:6,17 65:7
  68:21
**301**   33:12
**305**   44:11
**31**   9:11,14
**330**   85:21
**35th**   5:8
**3rd**   61:6

**4**

**4**   3:2
**40**   40:12
**41**   8:22,25 17:3
  28:24 29:3,5,6,14
  29:15 34:6 41:2
  41:13 49:21 64:18
  64:25 65:13 68:23

**436**   33:12
**45**   4:5
**455**   5:2

**5**

**502**   54:21
**502d**   16:5 18:19
  18:23
**52**   8:5
**548**   68:17
**548c**   18:3

**6**

**6**   77:6
**63**   84:6

**7**

**7041**   28:24
**78**   35:19,24
**7th**   83:10

**9**

**9014**   14:13 17:3
  41:17

**a**

**ability**   25:18
**able**   11:21 59:12
**absence**   37:16
  59:9
**absolute**   31:4,12
  31:13 32:15 44:14
  44:19
**absolutely**   46:14
  64:10 67:20
**abundantly**   57:12
**academic**   36:25
  53:11
**acceptance**   44:17
**access**   60:16
**accomplish**   10:16
  64:21
**accorded**   14:12
**account**   36:18
  38:24,25 73:11
  75:19 76:3 79:7

**accountant**   78:12
**accountants**
  78:24
**accounts**   72:22
  73:12 75:13 78:25
  79:7,9,12,13,15
  79:16 81:18
**accurate**   54:24
  56:25 85:4
**acknowledge**
  46:22
**acknowledged**
  13:22 63:25
**act**   14:14 33:15
  44:5
**action**   19:3 40:1,6
**actions**   35:19
  47:12
**actively**   26:6
**acts**   65:6
**actual**   22:17 23:4
  34:13 68:7
**ad**   18:2
**add**   10:14 55:8
**additional**   41:1
  64:2 75:24 78:10
**address**   14:6,8
  16:17 34:9 56:16
**addressed**   33:4
**addresses**   17:4
**adequacy**   11:3
  12:2
**adhered**   57:4
**adjourn**   44:23
**adjudicated**   47:3
  47:22 64:8
**adjudication**   48:5
**adjudicative**   7:15
  11:18 54:18
**administered**   64:8
  79:14
**administrative**
  20:22

**admittedly** 40:5
**adv** 1:5,15 2:1
**adversary** 11:19
  17:9,14,25 18:10
  21:19 24:5,24
  25:3,5 36:12
  41:22 42:6 45:16
  47:18 50:22,23
  66:9,23 67:6,8,24
**affect** 24:12 26:3
  33:7,7 40:2 50:21
**affirmation** 12:14
**affirmative** 15:22
**afforded** 42:24
**afternoon** 71:5,14
  71:17,20
**agenda** 6:8
**ago** 58:25 61:1
  72:15
**agree** 7:3,3 26:24
  27:23 44:24,25
  65:1 66:21 74:13
**agreed** 75:3,3
**ahead** 8:20 16:10
  28:18 50:9 57:23
**al** 1:12,23 2:11
**alaska** 24:11
**alive** 69:19
**allocated** 46:6
**allow** 10:2 14:22
  15:7 20:2 36:21
  37:15 66:20
**allowance** 20:1
  23:17 42:6 46:10
  47:11 48:1
**allowed** 26:7
**amended** 3:3 80:2
**amendment** 63:8
  63:9
**americas** 4:14
**amounts** 36:8
**analogous** 41:25

**analysis** 28:3
  43:11
**anat** 4:9 6:6
**andrew** 5:18
**answer** 15:6,23
  20:16 29:20 32:13
  70:7
**answered** 7:9
  28:25 29:16 67:6
**anybody** 52:3
**anyway** 29:7 46:9
  51:7 74:11 75:16
  76:11
**apartment** 80:14
**apologize** 58:8
  71:12
**apparently** 51:12
  56:13
**appearing** 5:14
  6:5
**appears** 55:6 66:2
  70:3
**appellate** 49:9
**appended** 14:10
**applebaum** 34:11
  34:13
**applicability**
  16:18,25
**applied** 64:7
**applies** 16:5 25:12
  41:14 63:24 64:6
  65:7
**apply** 28:20,24
  29:3
**appointing** 3:2
**approach** 74:14
**appropriate**
  42:17 47:8 48:10
  63:20 65:19,20
  75:18
**approximately**
  72:14

**arbitrator** 3:2
**area** 72:3
**aren't** 74:4
**argue** 8:13 63:12
  63:14 69:3
**argued** 18:2
**arguing** 19:2 29:4
  31:3 72:12
**argument** 13:7,10
  19:25 26:10 37:4
  54:21,25 80:23
**arguments** 46:23
  56:12 74:6
**articulated** 12:3
  12:23 15:2,4
  40:25
**aside** 8:21 30:25
  57:15,21 64:20
**asked** 23:17 51:24
  56:5,11 60:23
  73:11
**asking** 20:25
  23:10 31:9 53:22
  57:8 58:3
**aspect** 26:1,2
**asserts** 8:6
**assume** 38:22
  42:8 76:10 78:24
**assurance** 72:4
**attached** 15:22
  25:4
**attaches** 28:5
**attaching** 67:22
**attempt** 16:25
  57:5
**attempted** 8:8
  34:1 62:4
**attempts** 68:18
**attention** 43:1,5
  71:23 77:14
**attorneys** 4:4
**authority** 7:15
  11:18 32:22 54:19

**authorizing** 77:2
**automatically**
  18:18
**available** 59:22
  61:4
**avenue** 4:14 5:2
**avoid** 11:12 50:2
**avoidance** 12:21
  13:21 15:20 16:7
  47:12
**avoiding** 54:6
**avoids** 26:4
**aware** 55:10 57:2
  57:10,14 59:2
  62:19

**b**

**b** 2:21 77:6
**back** 11:20 25:11
  28:9 33:14 35:20
  41:5 52:12 60:23
  71:5
**backed** 75:25
**background** 6:11
**baker** 4:3 6:5
**bam** 1:23 6:12
  44:23 53:12,16
  54:2 55:3,9,13
  59:16
**bankruptcy** 1:1
  2:15,23 8:9 16:18
  30:25 31:7,19
  32:10 33:12,15,19
  34:2 39:14 40:7
  40:11 44:6 64:9
**barely** 27:5
**barry** 5:11 71:19
**based** 7:16 14:9
  23:23 26:16 39:1
  41:4 72:7
**bases** 40:24
**basically** 26:22
  48:10 66:5 69:23

**basis** 24:9 34:3
  39:25 40:22 65:15
  74:25 80:12
**bear** 70:8,9
**began** 34:8
**behalf** 6:5,7,18
  8:5 17:7 30:5
  58:19 71:15 76:25
  77:1,3,4
**belaboring** 58:8
**belated** 57:5
**believe** 24:3 25:22
  35:18 44:1 47:20
  52:20,22,25 53:2
  79:5 80:1,8,20
  82:17
**bell** 5:15
**benefit** 44:21
**bernard** 1:12,19
  2:6,8
**bernstein** 2:22
**better** 55:1
**beyond** 36:2
  65:22
**big** 51:19
**bigger** 49:6
**bit** 73:9
**blmis** 4:4 76:25
  77:3 78:13 81:18
**bongiorno** 76:23
  78:7 79:14
**bound** 12:23 28:1
**bowling** 2:16
**brief** 33:9 47:7
  48:20,20
**briefing** 39:23
  41:2 43:18 49:16
  53:6 64:2
**briefings** 48:16
**briefly** 8:11 16:17
  56:17
**briefs** 40:13

**bring** 9:23 76:1
**bringing** 10:24
  71:23 77:14
**broadway** 5:8
**brought** 43:1,5
**burdensome** 81:6
  81:7,8
**business** 79:18
**buy** 79:14

**c**

**c** 4:1 6:1 68:17
  85:1,1
**calculate** 26:1,2
  28:15
**calculated** 27:22
**calculation** 36:1
  68:16
**calendar** 62:3
**call** 72:22
**called** 49:3,3
  79:12
**calvani** 4:10 71:16
**can't** 7:3,23 9:25
  11:8 15:11 16:6
  23:5,6 29:5 31:22
  33:1 38:4 40:9
  41:10 47:20 58:9
  67:14,14,17,21,21
**carol** 17:6 54:3
**carole** 4:17
**case** 1:3,5,15 2:1
  3:1,5,9,11 6:10,12
  6:13 7:4,7 9:4
  10:6,11 13:6,22
  17:25 18:7,8,9,17
  21:10 22:7,23
  23:4,18 25:2 26:5
  26:6 28:24 31:25
  32:25 33:11,20,24
  34:9,10,19,25
  35:4,9 37:14,17
  37:17,19 41:20
  44:10,20,21 48:11

51:1,3,20 54:3
  60:9,14,25 65:15
  65:15 72:24 75:14
  76:16,17 77:5
  78:9 79:22 80:2
  80:22
**cases** 9:8,10,24
  10:12,15,17 12:16
  18:1 25:1,7,9,17
  28:10 30:9,11,12
  31:24 33:13 34:20
  35:2 40:3,5,7,9
  42:1,23,25 43:10
  43:19,20 44:2
  48:7 54:1,7 55:14
  58:6 62:3,15
  63:19 65:16 67:2
  67:15
**cause** 3:1 19:3
**certain** 8:3 59:18
**certainly** 42:16
  75:22
**certified** 85:3
**chairman** 5:1
**chaitman** 39:22
  50:11 58:15
**challenged** 24:15
**chance** 51:13 59:4
**change** 53:5
**changes** 33:7
**chapman** 8:4 26:9
  30:5,6
**characterization**
  29:23
**chase** 80:8
**chase's** 82:8
**chatman** 22:13
**checks** 28:11
**cheryl** 6:12
**children** 72:23
  75:12
**choice** 25:18

**circles** 65:4
**circuit** 9:3 19:5,24
  21:11 24:7 25:23
  26:22 62:20,22
  63:11,15 67:15,20
**circumstance**
  23:16
**circumstances**
  21:10 32:25
**circumvent** 12:5
**cited** 48:7
**citrons** 72:20
**civil** 29:2 43:24
**claim** 3:6,7 7:16
  8:3 10:3 11:4
  12:19 13:15,19
  14:4,10,15 16:6,6
  18:11,14,18,23
  19:10,15,19,22
  20:3,4,9,11,13,15
  21:1,2,8,9,14,21
  21:24 22:3 24:9
  25:2,24 26:18,20
  27:3,11,18 28:14
  29:13,21 30:8,17
  30:18,23 31:1,4,7
  31:13,21,22 32:4
  32:7,9,15,18
  33:17,22,25 34:1
  34:2,17,25 35:6,8
  36:5,7,21,22 39:2
  39:4,24 40:1,10
  40:19 41:7,10,21
  41:25 42:2,9 43:7
  43:9 44:5,12,14
  45:6,14 46:21
  50:4,5,20,21,24
  51:19 52:16,25
  54:21 55:7 59:7,9
  59:10,14 61:24
  62:4,13 63:10,22
  64:25 65:5,7 66:1
  66:2,5 67:17,21

68:16,19,21 69:3
**claimants** 8:6
  50:12
**claims** 6:18,20
  11:1,14,16 12:8
  12:10,20 13:8,9,9
  13:17,17,23 14:2
  14:10 15:5,8,9,15
  15:19 16:2 17:8
  18:9 19:5,9 20:1,6
  20:8,14,17 21:15
  21:17 23:8,16,17
  24:5,10,11 25:2
  25:12,21,25 26:3
  26:10,16 27:4,8
  27:15,17 29:24
  32:23 34:11 35:21
  35:23,24 37:1
  38:24 39:18 41:12
  42:6 43:2 45:16
  46:10 47:11,14,25
  51:6 52:5,6,13,20
  53:9,11 54:9,16
  61:22,22 64:14
  66:23 67:9,10,16
**clarified** 54:11
**clarify** 50:1 57:8
  71:25
**clarity** 53:24 62:3
**clear** 12:3,7 25:23
  28:23 35:22 39:8
  39:11,17 44:13
  52:18 53:2,3,25
  57:10,11,12 62:2
**clearly** 11:12 12:5
  41:14,16 47:23,25
**clears** 68:13
**client** 15:13
**clients** 23:11,13
  26:10 39:22 50:10
  58:19
**close** 28:6 32:25
  34:15 82:20

**closed** 58:3,24
  60:10,11
**cohen** 12:22
**coin** 17:17
**collateral** 48:6
**colleague** 6:6
**collier's** 40:12
  44:10
**colloquy** 44:13
**come** 32:21 46:8
  52:12 79:12
**comes** 74:23
**comfort** 75:23
**coming** 55:10
**commenced** 40:1
**comments** 49:12
**compel** 72:13
**compelled** 72:6
**compelling** 63:5
**complain** 26:5
**complaint** 18:4,11
  25:20 28:4 29:20
  29:23,24 30:8,17
  31:18 41:22 42:1
  42:2,3
**complete** 57:1
**completed** 6:13
  6:14,14
**completely** 20:10
  21:18 38:18
**comply** 58:4
**computation**
  17:19,20 18:6,6
  34:18 68:1
**computed** 68:6
**computing** 46:12
**concede** 27:24
**concerned** 59:8
**conclude** 43:8
  50:18,19,24 64:12
**concluded** 61:1
  83:16

**conclusion** 10:3
**condition** 20:25
  20:25 36:20
**conditions** 14:16
  21:25 47:4,8 52:2
**conduct** 55:5
**confer** 25:24
  37:12
**conference** 3:9,11
  6:10 9:11 42:18
  44:24 56:18 62:5
  71:13 72:12 83:7
  83:12
**conferred** 54:18
  59:17
**conferring** 76:20
**confirm** 21:10
  73:4
**confirmation**
  55:24 56:13 57:15
  82:8
**confirmations**
  55:21,22 56:1,5,5
  58:5
**confirmed** 75:13
**confusion** 75:5
**conjoined** 14:15
**connection** 18:12
  45:8 58:15 75:7
**consent** 66:5
  77:24
**consequence** 24:1
  68:5
**consider** 16:22
**considered** 54:5
**consolidated** 2:6
  47:10
**constructed** 44:18
**contemplate**
  30:10
**contemplates**
  31:18 32:6

**contemplation**
  30:23
**contest** 28:13 30:7
**contested** 14:8,13
  14:15 17:2 29:16
  41:14 42:4 64:19
  65:10,10,12 67:12
  68:19
**context** 6:11
  43:24 44:1
**continue** 30:14
  37:15 51:13
**contrary** 18:13
**contravene** 15:7
**contravenes**
  37:16
**contravening**
  14:23
**control** 42:22
**convenient** 59:19
**convertible** 79:8
**convince** 18:17
**copy** 39:9,10 71:2
**core** 15:23 72:21
  79:15
**corporation** 1:9
  4:19 16:16
**correct** 7:5 38:16
  52:19 53:4 54:17
  55:15 74:2,19
  75:11 77:4 78:4
  79:2
**correctly** 27:22,25
  68:6
**couldn't** 23:1 31:1
  36:11 44:24,25
**counsel** 82:8
**counterclaim** 25:3
**country** 85:21
**counts** 49:10,10
  49:14
**couple** 28:19 33:3
  43:18 62:14 71:25

**court**  1:1 2:15 6:2
6:22 7:2,6,10,20
7:25 8:10,13,18
8:20 9:5,14,25
10:6,7,10 13:2,7
13:17,24 14:1,6
14:16,20 16:1,9
16:13,21 17:5,11
17:15,19,23 18:5
18:16,22,25 19:2
19:7,12,17,22
20:2,8,12,15,19
20:20,24 21:5,11
21:13,15,20,24
22:2,9,12,24 23:2
23:14,19,22 24:2
24:8,13,16,19
25:7,9,14,18 26:8
26:13,24 27:7,11
27:16,19,21 28:1
28:7,12,18,22
29:2,6,11,19,25
30:3,11,14,15,20
30:24 31:2,7,9,12
31:15,18,19,20,22
32:2,5,7,8,14,20
33:2,17 34:11,16
34:21,24 35:6,10
35:17 36:13,15,20
36:24 37:6,18,21
37:24 38:10,13,17
38:22 39:1,10,14
39:17,20,22 40:11
40:18,22 41:9,11
41:15,18,24 42:7
42:11,14,21,25
43:13,17,22 44:3
44:9,20 45:5,12
45:15,21,24 46:3
46:5,5,16,18,24
47:4,7,13,20 48:3

72:1 78:11,13
81:4 82:4

48:9,15,21 49:1,4
49:8,12,17,20
50:3,9,14,18 51:4
51:8,12,16,24
52:3,9,12,16,23
53:8,15,18 54:7
54:15,23 55:1,4
55:13,17,24 56:2
56:6,9,20,22
57:16 58:11,18,22
59:19,20,23 60:2
60:6,9,17,22 61:5
61:11,15,20 62:1
62:6,8,22,24 63:2
63:5,9,11,14 64:5
64:11,17,23 65:3
66:12,15,18 67:1
67:3,8,11,13,23
68:1,10,14,18,23
69:1,8,11,14,17
69:25 70:15,18,21
70:23 71:1,4,8,10
71:12 72:8 73:3
73:13,16,22,24
74:5,15,23 75:9
75:14 76:2,9,13
76:15,25 77:3,6
77:10,16,18,21,24
78:2,5,7,19,22
79:3,8,17,20 80:4
80:7,12,16,19,21
80:25 81:3,14,17
81:20,25 82:3,12
82:15,18 83:1,4,6
83:10,12,15

**courts**  8:23
**court's**  11:13 12:5
13:16 15:12 33:5
33:8,19 34:2
39:25 40:2,6 50:5
50:21
**cover**  26:22,24

**creditor**  21:14
31:13 32:4
**cremona**  4:8 6:4,5
6:25 7:5,8,12,24
8:2,16,19,21 9:7
9:15 10:5,8,11
13:11,19,24,25
14:5,7,18,21 16:4
16:11 35:11,14,18
35:22,24 36:14,16
36:23 37:5,7,23
38:1,6,13,16,21
39:8,11 40:24
41:13,16,19 42:15
42:22 43:12,15
45:1 46:14,20,25
47:2,24 48:7,17
49:23 50:1 52:18
52:25 53:24 54:11
54:17,22,24 55:15
56:10,12,16,21,23
56:25 57:20 59:17
59:21,25 61:3,9
61:19 62:2,7,18
63:3,23 64:10,15
64:18 65:1 69:7,9
70:22,24
**currently**  38:3
76:18
**customer**  56:4
**customers**  17:7
**cutoff**  74:21 75:25
76:19 82:18

**d**

**d**  6:1 54:21 84:1
**d.c.**  4:21
**damages**  26:16
39:1
**daniels**  7:9,14,18
9:18 11:25 13:4
16:21 25:14,16
54:4,8 62:24 64:6

**daniels'**  11:7,14
14:23
**data**  57:13
**date**  77:17 82:18
85:25
**dates**  37:14 59:18
59:20 61:2 62:8
**david**  5:17 72:18
78:17
**day**  23:3 28:15
74:15
**days**  19:14 59:25
**deadline**  76:6
**deal**  6:23 7:10
29:24 34:5,5 40:4
41:11 42:7,9
43:21 53:9,13,18
59:5 61:23 62:9
62:10 64:17 69:1
**dealing**  53:1
67:25
**deals**  40:12
**dealt**  82:3
**december**  59:22
61:6
**decide**  21:7,8,9,12
52:13
**decided**  16:21
62:25 68:3
**decides**  18:17
**deciding**  33:13
**decision**  11:7,8,14
12:22 14:23 16:5
26:14,15 33:11
34:4 47:10 51:3
80:21
**decisions**  34:9
54:4
**declaration**  15:2
**deemed**  19:15,19
34:13
**deeming**  59:6

**defeat** 33:23
40:10 50:25
**defeating** 33:18
**defendant** 8:6
12:18 78:8
**defendants** 1:13
1:24 2:12 6:19
30:5 51:9 52:21
63:7 71:18 72:4
73:25 76:14
**defense** 48:13,14
60:2 68:17
**defenses** 15:23
48:11
**defer** 43:16
**definition** 8:22
**delaware** 43:20
**delay** 9:22 10:1,8
10:10 11:20,25
33:23 57:23 71:12
**delayed** 12:24,25
72:24
**demonstrated** 9:8
**denial** 6:20 54:11
**denied** 62:15 64:1
84:6
**dentons** 4:13 8:5
17:7,7
**dentons'** 14:11
**deny** 36:25 52:8
63:15
**dependent** 50:24
**depose** 76:23
**deposition** 58:16
73:21 74:6,23
76:7,10 77:2,12
**depositions** 72:25
73:14,17 74:11
75:16 76:20,21
79:3,4
**deposits** 22:5,17
22:20,23 23:5
27:22 28:3 47:15

47:16
**described** 13:13
**destroyed** 69:21
**detail** 8:12
**determination** 3:7
19:14 22:5 23:7
28:2 29:19 47:14
48:2 66:6
**determinations**
12:14
**determine** 8:23
27:3,21 32:22
40:3
**determined** 9:18
9:19 20:18 27:18
30:18 33:6 40:6
**develop** 74:6
**dexter** 5:5 30:1,2
30:4,4,12,15,22
31:6,11,16,21,23
32:2,6,11,17,21
39:19,21 40:16
44:13 47:9,19,21
47:25 48:18 49:15
49:18 51:22,23
52:4,7,11,15,19
53:3,4 61:23,25
62:17,19,23 63:1
63:7,12 68:25
69:15,24 70:13,17
70:20,25 71:3,7
**didn't** 19:10 20:6
22:13,22 27:4
28:15 35:6 39:4
43:3 44:19 58:4,6
59:1 63:20 72:19
74:24 75:4 76:4
**differ** 17:20 35:1
66:10,12,13
**difference** 28:8
29:12 42:10 62:14
66:22 69:4

**different** 12:17
20:7,24 25:7,9
29:9 34:16 35:1
51:1,3 54:10,10
68:15 74:17 79:7
79:13
**diligence** 10:24
11:5
**diligently** 72:4
73:7
**direction** 25:5
**directive** 13:1
37:13
**directives** 11:24
**directly** 11:13
14:23 67:15
**directs** 29:6
**disagree** 27:19,19
**disallowance**
19:19 25:11 34:13
34:13 53:14,15,16
**disallowed** 18:19
19:15 20:18 21:1
21:3,5,6 26:11
35:4,8,23,24 38:9
38:14,17,19,20
39:2,4,5,6 67:17
67:18
**disavow** 15:12
**disc** 69:22
**disclosed** 57:11
**disclosures** 57:9
57:10 81:18
**discovery** 3:2,11
6:13,14,15 14:13
22:16 55:11 58:1
58:3,5,6,24 60:17
71:22,24 74:21,25
75:25 76:6,6,18
76:19 78:23 83:7
**discovery's** 60:9
60:11

**discuss** 6:17 12:8
23:13 33:24
**discussed** 23:11
23:20
**disingenuous**
57:14
**dismissals** 30:9
**dismissed** 31:25
35:19 40:8
**dispose** 7:15
11:19
**disposed** 12:11,13
15:4 70:6
**disposition** 48:10
**dispositions** 28:5
**dispute** 45:22,25
46:6 58:1,13
65:16 70:8,12
71:22
**disputes** 22:16
54:9 59:1,2,2
60:18
**disputing** 34:17
68:1
**disregard** 15:8
**disregarding**
13:14
**distinction** 41:7
**distribution** 23:10
**distributions** 45:7
**district** 1:2 10:7
13:2 46:5 55:4
**divorce** 13:23
**docket** 42:23
**document** 58:15
58:18 72:5,19,21
**documentation**
80:10,15
**documents** 22:25
55:19 57:12,23
60:15 61:12 69:22
72:17 73:2,5,9,21
74:3,4,9,16,17,22

74:24 75:4,7,10
75:12,15,19,24
82:9,10,19,25
**doesn't** 17:22
18:8,11,25 19:19
24:11 25:16,25
26:3 27:5 29:24
32:8,16 41:11
42:11 43:9 50:20
50:25 64:17 69:4
**dog** 6:24
**doing** 20:21 33:16
33:16 40:20 42:9
45:18 59:14 65:12
65:22
**don't** 6:23 7:3,10
7:12,22,25 8:15
14:6 19:13 21:3,5
21:7,9,12,21
22:19 23:10,14,19
25:23 27:9,10,23
30:14,22 31:16
32:12,15 33:7
35:10 42:7 43:10
43:22 44:1,13
46:6 47:19,21
49:7,21 50:10,14
51:4,8,21 52:13
52:22 53:2 59:10
59:13 61:20 62:10
63:3,9 64:1 65:16
65:25 66:4,20,21
68:10,11 69:1,25
69:25 70:8,9 72:9
73:10,16 74:19
75:20 76:21 77:21
78:23 80:13 81:25
82:20
**doubt** 25:10 65:16
76:2
**doubts** 30:19
**drafted** 31:17

**dubinsky** 80:3
**duplicative** 11:2
**duty** 9:23

**e**

**e** 2:21,21 4:1,1 6:1
6:1 84:1 85:1
**earlier** 40:25
**early** 23:17
**easy** 49:21
**ecro** 2:25
**edification** 6:18
**effect** 48:6,7
62:16 63:4 65:11
**effectively** 29:20
**efficient** 37:9
**effort** 11:1,12
12:5,7
**either** 43:6 75:12
**embracing** 13:13
**employees** 78:14
**enormous** 11:25
**entered** 12:12
**entertain** 50:23
**entire** 15:8
**enumerated** 9:3
**equitable** 10:4
11:13 13:16 20:16
21:10,14 24:9
25:24 27:8,14
34:2,3 39:25 40:2
40:10 44:6 50:6
50:21,22 69:4
**equity** 17:12,21
18:1,6 23:6 26:15
34:18 35:19 36:1
46:12 48:2 66:6
68:2,5,16
**equivalent** 42:2
43:7 50:4
**escape** 44:5
**essence** 41:24
**essentially** 26:11
31:3 67:13

**establish** 24:4
35:1 74:11,12
**established** 16:7
22:6 46:7
**estate** 2:7 59:13
**estoppel** 48:6
**et** 1:12,23 2:11
**eve** 56:18
**event** 35:2
**everybody** 33:3
**evidence** 10:10
46:7,8
**exactly** 15:13
38:20 46:19 58:9
**example** 9:8 22:2
81:5
**exceeding** 40:13
**exchange** 61:11
**exchanging** 56:12
**excuse** 35:19
**exds** 33:12
**exercising** 24:9
**exhibit** 61:18
**exhibits** 61:17
**exist** 82:9
**existed** 55:22
57:15 73:10
**existing** 58:4
**exists** 40:8
**expeditiously**
11:22
**expense** 11:2,2
**expert** 6:15 59:18
78:22 79:21
**experts** 37:12
59:21 78:23 79:5
79:24
**explain** 32:2
**explanation** 11:4
12:2 72:11 73:8
74:3
**expressed** 72:11

**extant** 7:17
**extend** 49:16
74:25 76:6
**extent** 10:25
27:14 38:14 44:18
63:18 64:5,8 65:4
70:7,18 73:9
82:24

**f**

**f** 2:21 85:1
**faced** 71:25 75:23
**fact** 6:14 7:16
25:6 32:7 40:11
44:25 76:19 78:8
83:7
**factor** 10:9 54:5
**factors** 9:2 10:21
10:23 12:1 32:24
33:21 35:1
**facts** 11:17 57:1
58:8,10 74:11
**factual** 18:5,5
68:3
**fair** 76:8 78:1
**familiar** 11:17
12:10
**far** 12:4 29:22,23
47:22 59:8 72:25
79:23
**favor** 10:22 54:6
**favorite** 71:21
**february** 6:13,14
83:10
**federal** 16:18 17:3
29:2
**feel** 17:8
**felt** 23:15
**fetched** 29:23,23
**fictitious** 17:11,20
18:7 23:5 26:2
46:12 68:4
**fight** 72:15

[fighting - hate]                                                          Page 8

**fighting** 29:12
72:14
**file** 19:13 31:21
31:22 32:9 56:4
66:25 76:22
**filed** 6:18,21 8:4
9:17,19 11:7 14:9
14:10 15:22 18:11
18:14 19:17 25:2
25:3 27:8 32:7
33:6 40:6 41:21
50:22 55:11 77:13
77:15 80:9
**filing** 10:25 17:2
20:21 21:9,14
25:24 29:10,20
30:23 31:18 50:24
62:20
**filings** 11:9
**final** 7:14,15
11:18 54:18
**finality** 16:8 20:1
67:21
**finally** 12:16
20:17 27:3,18
67:17
**financial** 81:13,14
81:17
**find** 40:9 70:11
**fine** 37:7 40:16
57:22 61:8 77:25
83:13
**finish** 26:13 46:3
60:22
**firm** 8:5,5 30:4
74:21 78:2
**firms** 51:10
**first** 7:11,21 8:8
20:3 24:22 40:11
42:25 46:6 54:7
55:9 59:22 61:3
72:3 73:3 76:10
82:8

**fit** 7:19
**five** 72:21
**fix** 62:8
**floor** 5:8
**focusing** 58:16
**follow** 24:13
63:20
**font** 48:24 49:4
**footnote** 16:22
**foreclosed** 46:22
**foregoing** 85:3
**forensic** 78:24
79:24
**forget** 27:7 31:9
**form** 72:8
**formally** 76:24
**former** 78:13
**forum** 13:1 32:1
**forward** 9:24 10:1
10:13 37:13 42:17
43:3,10 46:8
48:15 66:25 72:24
**found** 54:17
**four** 10:12 54:3
60:10
**fours** 33:11
**foxes** 56:13
**frankly** 16:19
**fraud** 45:11
**fraudulent** 18:18
**front** 55:18
**fully** 61:3
**functional** 42:2
43:7 50:4
**further** 15:6
16:12

**g**

**g** 6:1
**gamesmanship**
12:4 13:14
**gating** 7:11 41:3
**gee** 65:18

**general** 30:24
33:5
**generation** 49:2
**geographic** 24:20
**geographically**
24:14
**georgia** 49:4,4
**getting** 35:15
44:21 51:7
**give** 23:9 59:4
61:17 63:7 77:3
**given** 60:16
**gives** 28:24 61:6
75:22
**giving** 48:11
**go** 8:20 9:3 10:13
10:20 11:16,22
12:4 16:10 24:20
28:9,18 29:5
43:10,10 48:11
50:9 55:16 56:14
57:16,22,23 58:22
59:5 65:15 66:4
66:25 75:17 77:11
79:24
**goal** 9:23 10:16
**god** 49:11
**goes** 20:22 33:14
47:21 60:23 72:25
**going** 6:17 7:7
8:13 10:1,15 13:8
16:22 18:12,14
23:12,16 24:12
25:4,5 32:1,23
33:8 36:5,6,10
37:12,14 40:25
46:21 50:12,13,16
50:25 51:14 52:7
52:8 53:21,22
54:23 55:1,2 57:5
57:25 58:23,24
59:4,24 60:5,24
61:13 63:12 64:19

65:4 73:13 74:7,8
74:10 75:1,15,25
77:19 79:4 83:1
**good** 6:2,4 17:6
30:2,3 43:8 71:14
71:17,20 76:15
78:5 79:17
**gotten** 73:5
**governs** 29:13,14
**grant** 64:5
**granted** 8:7 64:4
**granting** 10:22
**great** 24:21
**green** 2:16
**greg** 30:4
**gregory** 5:5
**grounds** 80:17,18
80:19,20 81:6,15
**guess** 37:6 45:17
46:10 52:1,8
61:20 63:15 76:22
76:24 83:6

**h**

**h** 1:19 2:5 4:10
5:15
**hadn't** 53:20
**half** 36:9
**hand** 15:11 39:9
**happen** 10:13,16
47:22 51:15
**happened** 25:4
42:20 75:19,21
**happening** 15:14
**happy** 7:18 10:20
11:16 39:9 42:16
47:24 54:25 55:16
70:22 82:13
**hard** 71:22
**harmed** 32:18
**hasn't** 34:14
56:20 68:6
**hate** 64:12

haven't   10:18
15:18 28:7,9,25
29:16 37:24 57:16
58:23 59:14 60:15
67:6 68:12
hawaii   24:12
hear   7:20 16:13
28:19 29:25 34:17
68:10,11
heard   32:9 80:23
hearing   3:1,1,5,9
3:11 38:2,3
heels   11:7
held   47:10
help   70:22
helpful   70:21
here's   58:23
hey   51:16 60:19
he's   32:18 41:24
78:19,20,20
high   81:20
highly   30:6,15
history   26:5
hit   59:11
hmm   10:5 17:13
hold   43:17 57:20
59:3 79:15
holdings   27:1
home   59:11
hon   2:22
honestly   24:6
honor   6:4,8,11,25
7:8,14,19,24 8:3
8:16 9:10,12,16
10:9,14,24 11:5
11:17,18,21,23
12:9,9,15,17,22
13:3,12,22 14:5
14:18 15:17 16:11
17:6 30:2,6,12
32:11,21,22 33:1
34:8 35:11,14
36:4,9,16,23 37:7

37:11,14,23 38:1
38:6,21 39:8
40:16,24 41:1,13
41:19,23 42:5,15
42:22 43:12,16
45:1 46:14,15,20
47:22,24 48:8,14
48:17,18,19 49:15
49:22,23 51:23
52:7,18 53:24
54:12,18,24 55:9
55:15 56:10,16,19
56:25 57:2,3,8,10
57:18,19,21 58:8
58:13 59:17 60:1
60:4 61:9,19 62:2
62:18,19 63:4,23
64:3,16,21 65:1
68:25 69:7,16
70:14,25 71:7,9
71:14,17,19,20
72:12,16 73:19
75:6 76:14,20,22
77:13,20 78:6
79:5,6,11 80:5,20
81:12 83:13,14
honor's   6:18 52:8
69:10
hope   69:15
hoped   72:13
hostetler   4:3 6:5
house   56:6
hyde   3:25 85:3,8

**i**

idea   60:4
idiotic   20:10
ignored   11:8
ignoring   13:5
illustrative   9:7
implemented   13:3
implicate   45:16
implicated   41:17
45:5

important   15:21
28:20 44:2 50:13
58:7,9
impose   21:25 47:4
impossible   31:19
impression   69:18
improper   8:8 57:7
67:4,5
inability   22:16
inappropriate
15:15
incarcerated
76:23 77:10 78:14
78:19
include   39:15
58:14
included   12:19
31:14
including   14:13
72:16
inconsistent   11:24
13:5
increased   23:16
incurred   11:2
indicated   57:24
75:6
indiscernible   17:3
17:4 37:20,22
61:14
individual   77:8,9
individually
73:25
ineffective   14:25
inefficient   15:24
inextricably
12:21 13:20 15:19
17:9 18:10 37:9
information   60:20
initial   35:5
initiated   17:2
initiates   42:4
ins   36:8 45:22
48:14 68:6

insurance   23:9
31:8
inter   38:24,25
interaccount
26:19
interest   36:18
54:1,6
interpreted   44:22
interrupt   64:12
intertwined   12:21
13:20 15:20 37:10
46:11
intimately   11:17
12:9
investment   1:12
1:20 2:7 22:15
26:14 38:14 39:13
investor   1:9 4:19
16:16
invoke   15:11
64:21
invoked   16:17
41:17 64:18
involve   25:25 26:1
involved   27:15
30:9
involves   24:10
irrelevant   81:10
81:11
irrevocably   25:24
irving   1:19 2:5
island   78:21
isn't   25:4 31:14
69:20 81:7
issuance   26:14
issue   7:11 10:4
14:6 16:20 17:4
17:11,12 22:14,18
22:20 26:16,19
29:12 33:4,4,9,25
34:5,6 35:15,17
36:1,2 37:8 38:17
38:24 39:2,7,12

39:23 41:3 42:3,8
42:10 43:14,18
44:4,24 47:13,17
48:22 49:21,21
50:3 51:25,25
52:12 53:10 55:21
59:6,15 60:18
62:13,21,24 65:18
66:1 69:2,19,23
70:3,3,19 74:9
76:1,9 81:3 82:3
**issued** 11:9 54:5
**issues** 12:15,16,20
14:24 15:24 19:24
22:3 26:24 33:19
36:10,15,19 38:3
38:8,22 39:13,15
39:15 46:11 47:2
47:10 49:19,20
50:1 53:22 54:12
59:9 62:10,11
65:18 68:2,3,3
70:2,4,9 71:25
75:24
**it'd** 81:12
**it'll** 59:12
**it's** 12:4 14:14
15:12,20 16:2
17:12,18 21:3,5,6
25:2,4,18 28:20
30:6,15 31:7,19
34:16,16 36:25
38:18 39:5 41:7
41:21 43:5 44:6
44:13 45:2,8
48:13 49:3,6,20
49:21 52:1 54:10
54:20 58:7,9,11
64:6,23 65:9,10
67:3,4,5 68:15
69:22 75:17 78:11
78:15 80:9 81:7
81:10,20

**i'd** 7:20 17:1 28:9
35:3 36:2 40:15
42:8 53:25 58:13
76:16
**i'll** 8:11 14:20
16:16 43:17 44:23
52:16 55:17 59:16
61:5 62:8,9 63:15
64:5,11 76:6
**i'm** 7:18 9:15
10:20 11:16 16:15
16:22 17:8 23:10
24:13,19 25:12
28:12,16,23 31:9
32:12,16,23 31:9
39:8,17 47:24
50:19,25 52:19,19
54:23,25 55:2,16
55:24 56:14 58:23
58:24 59:2,4,8
60:13,24 62:12
64:13,20 65:2,3
66:16 67:25 79:4
81:25 82:1
**i've** 15:19 25:10
28:8 30:11 32:9
34:5 40:7 55:6
56:5,11 65:7 81:3
82:3

**j**

**j** 4:8 5:17
**james** 4:11 71:14
**january** 76:19
83:8,9
**join** 56:19 57:5
77:19
**joined** 41:21,22
42:3,5
**jointly** 58:21
**jp** 80:8 82:7
**judge** 2:23 7:9,14
7:18 9:18 11:7,14
11:24 12:23 13:2

13:4,21 14:23
16:5,21 17:17
25:14,16 33:10
34:4 35:4,25 38:9
38:19 39:6 43:23
47:9 54:4,7 55:19
56:19 57:4,17
58:2,7,12,22 59:1
59:2 60:18 62:24
64:6 69:17,20
70:2
**judging** 79:18
**judgment** 7:3
29:1,17 45:25
**judicata** 22:3
47:12 48:6
**july** 11:11
**june** 9:17 11:10
11:10
**jurisdiction** 10:4
11:13 12:6 13:16
15:12 20:16 21:11
21:15 24:9 25:24
27:9,14 33:5,7,8
33:18,19,23 34:2
34:3 35:25 39:14
39:25 40:2,3,4,6,8
40:10 42:11 43:8
43:13 44:6 50:5,6
50:21,23,25 51:25
69:5
**jurisdictional**
39:23 62:11 65:25
69:2
**jury** 7:22 62:21
63:8,10
**justify** 23:6

**k**

**k** 4:20
**keep** 16:1 38:5
67:21
**kelley** 4:23 6:7
16:15,15,24

**kevin** 5:15
**kind** 52:1
**know** 10:1,20,23
11:16 12:1,9
13:21 16:1 18:13
18:19 21:3,5
22:10,13,19,19
23:11,23 24:6,12
25:17 26:17 28:14
31:16 33:20,21
36:24 37:3 39:2
40:7 43:22,22
46:13 47:1,19,21
48:4 49:8,9 50:10
51:8,16 54:23
55:22 56:3 58:8,9
59:13 60:13 61:16
65:16,22 67:13
70:16 75:14,18,20
78:23 80:13,21
81:3,21 82:3,21
**knowledge** 79:18
**konigsberg** 78:12
**kugel** 78:16,18

**l**

**l** 1:12,19 2:6,8
**l.p.** 1:23
**lack** 10:4
**law** 13:6,14 15:11
18:7,8 21:11
22:18 25:23 30:4
44:10 50:19,20
**lawrence** 9:9
42:23 52:21 54:4
**lawsuit** 30:8
**lax** 5:7,11 71:19
71:19 77:19,23,25
78:16 79:4,10
80:5,8,13,18,20
81:2,12,16,19,22
82:2,5,23 83:3,9
83:14

**lay** 33:21
**lead** 1:3 19:19
**leads** 10:3
**leaf** 61:17
**learn** 60:15
**learning** 60:12
**leave** 8:10 65:14
**ledanski** 3:25 85:3
   85:8
**left** 27:2,20 74:21
**legal** 12:15 22:14
   26:24 36:10 46:23
   64:22 65:17 68:2
   68:3 85:20
**legitimate** 45:7
**lehman** 34:10,11
**letter** 28:2 48:20
   56:12,17 70:13,15
   71:2
**letters** 61:18
**let's** 30:25 42:8,9
   65:3,14 70:11
   73:3
**level** 29:9
**liability** 12:21
   13:21,23 15:20
   16:7
**life** 36:17
**limitations** 36:17
**limited** 78:17
**line** 40:2,5 84:4
**link** 24:4,25
**linked** 17:10
   18:10
**lippman** 35:25
   38:9 39:6
**lippman's** 35:5
   38:19
**liquidation** 1:19
   2:6 11:6 16:19
**list** 52:23
**listed** 22:5

**listing** 67:2
**lists** 61:12
**litigant** 30:7,16
   31:24
**litigant's** 30:7
**litigating** 26:18,20
**litigation** 11:3
   22:6 26:15 38:23
   43:24 75:15
**little** 16:19 33:2
   50:7 54:10,10
   69:18 82:21
**live** 11:15 22:18
   22:20 34:17 54:9
   55:7 58:1 59:9
   60:17 66:1,2 70:2
   70:3,5,8,12
**lives** 78:21
**living** 17:8
**llc** 1:12,20 2:7
**llp** 4:13 5:1,7 30:5
   30:6
**loan** 80:10,14
   82:15
**local** 78:20
**logic** 63:24
**long** 44:4 59:23
   60:2 66:1 71:22
   78:21 79:14,20
**longer** 14:2 43:7
   49:9 70:5 82:10
   82:15
**look** 8:22 10:23
   13:8 14:10 15:21
   16:2,4 18:10 25:1
   28:10 31:17,24
   32:24 47:6 48:15
   56:14 57:22 60:17
   75:18 81:9
**looked** 8:23 28:8
   40:12
**looking** 74:1
   81:11

**looks** 33:21
**loose** 61:17
**loser** 9:2 10:18
   28:16 59:12
**losers** 9:6 51:19
**loss** 73:9
**lot** 13:13 22:13
   28:8 49:20 55:11
   69:18 72:16
**lp** 6:12

**m**

**m** 2:22 5:5
**madoff** 1:12,20
   2:7,8 6:3 45:12
   51:17 58:16
**magistrate** 43:23
**main** 21:13
**making** 31:7 33:1
   58:19
**managed** 79:13
**management** 80:2
**mandamus** 62:20
   62:22
**manhattan** 80:14
**mann** 6:10,12
   35:4,9 36:2 37:8
   39:16 42:18 55:9
   55:20
**matter** 1:7,17 2:3
   7:15,16 8:2 14:9
   14:13,15 17:2
   18:6 29:16 30:24
   40:4,11 41:14,21
   42:4 43:9 50:18
   50:20 57:3,21
   58:12 64:2,19
   65:10,10,12 67:12
   68:20 69:12
**matters** 6:8 61:21
**matthew** 2:25
**maytal** 4:9 6:6
**mean** 12:2 15:13
   16:11 18:9 22:4

   23:9 35:15 41:2
   43:13 44:23 45:17
   51:25 54:14 63:12
   78:2
**means** 23:5 66:8
   66:11
**meant** 53:14
**mediation** 37:17
   61:1
**meet** 41:3 81:21
**meeting** 55:23
**memorialized**
   69:10
**mentioned** 34:4
   39:24 62:15
**mentions** 27:5
**merits** 48:5
**met** 8:25 41:21
   63:21
**metaphor** 24:20
**method** 22:15
**michael** 6:12
**militate** 10:21
**militates** 54:6
**miller** 5:12 71:17
   71:18 76:14
**mine** 69:13
**mineola** 85:23
**minimum** 70:11
**ministerial** 14:14
   66:24 67:3
**minute** 60:20
**missed** 24:23
**missing** 23:1
   55:20
**misspoke** 9:16
**mm** 10:5 17:13
**mohan** 5:16
**moment** 12:9
**monday** 61:6
**month** 55:25
**months** 9:21
   10:15 72:1,15,23

72:24,24 73:20
74:20,20
moot 54:13 62:15
moots 82:11
morgan 80:8 82:7
morning 6:2,4,9
17:6 30:2,3
mortgage 80:10
80:14
moss 55:19 56:19
57:4,17 58:2,7,12
58:23 59:1,2
60:18 69:17,20
70:2
motion 3:5 6:17
6:22,23 7:10,13
7:20 8:1,3,7 9:9
9:17,19 10:14,22
10:25 15:3 18:20
20:10 21:7 24:4
26:4 27:4,8 34:25
36:25 40:21 41:4
45:25 50:15 52:5
53:11,21 54:2,12
55:3,11 59:5,6,7
60:24 61:23,25
62:9,11,12,15
63:15,21 64:1,3,5
64:24 65:6,8,13
65:19,24,24 66:4
66:21,25 68:18,21
69:2 72:13 76:11
76:22 77:14,19
81:25 84:6
motions 12:18
37:16 63:17
move 37:13 42:17
42:19 57:25 60:5
61:6 76:16 80:11
80:16 83:3
moved 28:25
29:16 37:18

moving 36:22
71:24 72:24

**n**

n 4:1 6:1 84:1
85:1
n.w. 4:20
names 79:13
narrowed 72:15
nathanael 4:23
6:7 16:15
nauseam 18:2
necessarily 45:10
need 8:15 31:15
39:23 50:14 51:4
53:2 56:15 73:4
needs 54:5
nelson 54:3
nelsons 9:10
42:23 52:22
net 9:2,5 10:17
17:12,20 18:6
22:14 23:6 26:14
26:14,14 28:16
34:18 35:19 36:1
38:14 39:12 46:12
47:15,15 48:2
51:19 59:12 66:6
68:2,5
netting 36:17
never 10:16 23:16
37:18 41:5 43:2
58:5
neville 4:17 5:7
17:6,7,13,16,22
17:24 18:8,21,23
19:1,4,10,16,20
19:23 20:6,9,14
20:17,20 21:4,6
21:17,23 22:1,8
22:11,22,25 23:13
23:15,21,25 24:3
24:10,14,17,21
25:8,10,16,19

26:12,21 27:1,10
27:13,18,20,25
28:6,9,17,19,23
29:4,8,15,22 34:8
34:15,19,23 35:3
35:8,12,16,21,23
37:20,22 38:2,7
38:11,20,25 39:5
40:15,17,20 41:9
42:5,13,18 43:20
44:1,3,8,16 45:1,3
45:10,13,19,22
46:2,4,13,15,17
47:1,6 48:13,19
48:24 49:2,6,11
49:22,25 50:7,10
50:16,18 51:2,7
51:11,14 52:2
53:5,13,17,20
54:20 55:8,14,18
55:25 56:3,8,11
56:17,24 57:8,18
57:24 58:4,13,21
60:4,7,11,21 61:8
61:13 63:25 66:10
66:14,16,19 67:2
67:5,10,12,14,24
68:9,10,12,15,22
69:6,13 71:9
neville's 41:16
new 1:2 2:17 4:6
4:15 5:3,9 48:24
49:3,9
nicholas 4:8 6:4
night 80:9 82:21
nine 15:9 19:21
nobody's 39:17
52:13 53:11
non 31:19 81:5
normally 18:21
note 12:17
notice 63:18

noticed 28:7
notices 3:5,6
63:18
notwithstanding
22:14
nullity 63:19 65:6
68:20
number 9:2 13:12
14:8 75:6 78:17
numbers 61:16
ny 2:17 4:6,15 5:3
5:9 85:23

**o**

o 2:21 6:1 85:1
object 52:3,4,4
81:4,15
objection 3:6 7:17
14:3,9,11 19:11
19:14,17,18,25
20:21 22:3 29:10
29:13 36:2,6,11
36:16 39:16 40:21
41:8,16,25 42:3
43:6 53:1 65:5,9
66:2,5 67:9,19
68:19,22,23 77:18
81:6
objections 6:19,20
8:4,14 11:15
12:10 15:3,22
17:1,2 20:7 26:22
27:6 28:21 32:23
37:2 40:23 41:12
63:25 64:16 66:22
80:9 82:21
obviously 39:3
63:21 82:10
occur 14:22 23:23
occurred 11:10
18:18 34:14
occurs 10:9
october 3:2 9:12
62:5 77:17

**offhand** 32:13
**office** 69:18
**oh** 29:22 49:11
  51:11 53:16
**okay** 13:25 14:5
  14:21 16:9 17:23
  19:17 22:24 24:2
  25:10 27:7 28:8
  28:22 29:25 32:11
  39:20 41:15 42:14
  43:14 44:8 45:5
  45:15,24 48:14,15
  49:17 51:22 55:8
  56:9,22 60:6
  62:17 63:2 66:18
  68:16,24 69:24
  70:12,13,17,20,23
  71:3,5 76:8,12
  77:10,25 78:5
  79:20 80:4,25
  81:20,22 82:2,5
  83:6,11,15
**old** 17:25 33:14
  85:21
**omnibus** 12:12
  20:21 51:5 66:25
  77:17
**once** 13:2 38:8
**ones** 51:9
**open** 58:4 73:1,21
**opinion** 47:21
**opportunity**
  15:25 24:24 42:24
**oppose** 65:25
**opposition** 52:5
**order** 3:1,2 8:10
  12:12 15:8 19:13
  19:18 20:22 31:2
  31:15 35:5,19,25
  38:19,21 39:5,8
  41:11 42:22 53:16
  57:2 61:10 69:9
  76:23 77:2,24

**80**:2
**ordinary** 30:25
  45:11 64:9
**outcome** 66:16
**outs** 36:8 45:23
  48:14 68:6
**outset** 82:7
**outside** 36:1
**outstanding** 80:6
  82:16
**overcharge** 79:8
**overlap** 25:6

**p**

**p** 4:1,1 6:1
**p.m.** 71:6
**pacific** 6:7
**page** 49:9 84:4
**pages** 40:13 42:14
  48:21,22 49:16
  51:22
**paper** 69:18
**papers** 15:18
  41:20 48:8 64:3
  69:20 70:8,11
**paragraph** 14:11
  18:20
**parallel** 17:8
**pardon** 21:4
  37:21
**park** 5:2
**part** 6:22 28:1
  35:12 56:4,15,20
  58:12 60:19 65:9
  67:16 70:8,12
**partially** 26:8
**participant** 58:17
  58:25
**participate** 40:17
  51:13 59:13
**participated** 26:6
  38:23
**participating**
  51:20

**participation** 39:3
  44:20
**particular** 67:6
  79:21
**particularly**
  39:16
**parties** 19:8 47:18
**party** 80:17 81:4
  81:5,7,17
**passed** 14:22
  15:25
**patrick** 5:16
**payments** 28:11
**pending** 6:19 7:16
  7:17 11:15,15
  15:1 16:6 20:12
  20:14,15 21:2,2
  43:2 52:16 54:8,9
  56:23 61:20 63:10
  68:19 70:24
**people** 50:12
**period** 74:21
**peripheral** 38:8
**permission** 8:18
  32:5
**permit** 65:20
**permitted** 32:23
**personal** 81:14
**petition** 62:20
**phase** 71:24
**phone** 71:13
**phrase** 17:16,17
**picard** 1:19 2:5
  71:13
**pieces** 11:22
**pike** 55:10
**pin** 72:3
**pipeline** 79:25
**place** 12:19 32:9
**plaintiff** 1:10,21
  2:9
**plaintiffs** 61:16

**plaintiff's** 11:3
**plan** 38:8 44:17
  80:11
**plaza** 4:5
**pleading** 65:10
**please** 6:2 29:22
**plenty** 61:6
**plus** 15:9
**pm** 83:17
**point** 7:21 8:16
  15:17,21 17:1
  18:3 19:20 21:7
  24:23 31:23 33:13
  33:14,23 35:3
  36:7,14 46:17
  49:1,5 66:20 75:5
**pointed** 36:4
  39:12
**pomona** 55:19
**ponzi** 18:1 45:2,3
  45:6,11 46:6
  51:18 55:23 68:7
**pool** 23:16
**portfolio** 79:12
**portions** 35:24
**position** 45:2
  74:20
**possession** 73:11
**possible** 64:8
**posture** 10:11
**potentially** 31:25
**practicing** 44:3
**pre** 3:9
**precedent** 13:5
**precisely** 33:16
  38:16 41:22 46:20
  50:1
**precluded** 54:13
**precludes** 9:22
  41:6
**preclusive** 47:17
**prejudgment**
  36:18 54:1,6

**prejudice** 9:1,5
10:2,7 20:4 23:8
24:22 30:8,17
31:4,24,25 32:5
32:16 36:10 45:17
46:21 48:4 63:16
63:21 65:23 66:23
68:20 84:6
**prejudiced** 30:9
**premature** 53:6
**prepared** 37:13
79:22,25 80:1
**presumably** 23:6
75:1
**pretrial** 6:9 9:11
42:18 44:23 56:18
62:4
**pretty** 25:23
28:23 34:15 79:17
**prevail** 51:18
**prevent** 33:16
**preview** 76:22
**previously** 75:6
**principal** 8:7
10:18 50:3 51:25
**principle** 15:11
**prior** 12:14,18
35:4
**privacy** 80:17,18
80:19 81:15
**probably** 26:25
44:4 49:9,24
71:21 79:24
**problem** 34:21
69:17 73:18
**problems** 13:12
**procedural** 8:22
10:11 13:14 63:4
**procedurally** 8:8
57:7 64:11 67:4,5
**procedure** 16:18
17:3,9 18:9 19:6
20:1 29:3 34:22

37:16 63:20 67:18
77:11
**procedures** 15:8
19:13,18
**proceed** 7:18
**proceeding** 6:9
17:9,14,25 18:15
24:5,24 33:6
36:12 47:18 50:22
50:23 51:5 57:5
58:12 64:7 66:9
66:23 67:7,8,24
79:18
**proceedings**
11:19 45:16 83:16
85:4
**process** 11:1,16
12:8,13 13:9,18
14:2 15:5,9 21:16
21:17 24:5,11,11
25:25 26:2,3
34:12 41:12 42:6
46:10 47:11,14
48:1 66:24 67:16
**produce** 72:19
82:25 83:2
**produced** 56:4
72:5,20 74:8 75:6
75:10
**production** 55:20
72:23 75:8
**productions** 72:7
**profit** 36:18
**profits** 17:11,20
18:7 23:6 68:5
**progressed** 11:1
**proof** 27:23 28:14
**proofs** 28:10
**proper** 12:19
54:18
**property** 46:12
**propose** 6:9 43:15
53:18 59:18 69:24

**proposed** 49:13
**proposition** 33:5
**proprietary** 56:7
**prosecuting** 12:8
**protection** 1:9
4:19 16:16
**prove** 23:3,4,5
**provide** 9:13
**provided** 9:16
34:3 80:2
**provides** 39:24
**pure** 36:1
**purported** 63:24
65:5
**purpose** 21:15
**purposes** 22:6
33:18
**pursuant** 37:13
**put** 6:10 14:24
18:23 27:23 30:25
**putting** 8:21
57:15,21 64:20
**pw** 79:18

**q**

**quash** 80:11,16
**question** 7:6,9
10:24 15:6 19:8
20:4,24 21:20,21
26:17 29:11 32:17
32:20 41:1 54:8
73:3 74:18
**questions** 16:12
72:1,7 73:1,21
74:22
**quite** 12:3,17
47:23,25 78:12
**quo** 64:21

**r**

**r** 2:21 4:1 5:11 6:1
85:1
**race** 22:2
**radar** 77:15

**raise** 22:9,13
36:11 53:22
**raised** 22:13
36:11,17 38:3,8
39:15 43:23 67:19
**raises** 36:2
**rakoff** 12:23 13:2
13:21 16:5 17:17
47:9
**rationale** 32:3
**reach** 51:1,2
**reading** 25:7,9
**ready** 7:4 10:12
60:25
**real** 24:23 48:20
**realize** 43:4
**really** 6:24 7:11
16:21 19:8 24:3
25:19 27:2 34:24
41:5 42:8 62:10
62:16 63:16 66:3
66:7 68:12,12,14
**reason** 22:9 27:13
33:15,22 39:3
44:18 76:4,5
**reasonable** 36:20
**reasons** 8:7 15:4
65:7
**rebut** 35:14 36:3
**recall** 9:10 19:13
**receive** 56:17
**received** 10:19
49:13
**receiverships**
18:1
**receiving** 75:20
75:21
**recess** 71:11
**reciting** 17:18
**recognized** 12:22
**reconsideration**
9:19 54:12

**reconstructed** 78:25

**record** 53:25 85:4

**records** 53:21 56:19 70:3,6 81:13,14

**reference** 7:13 10:14 37:19 42:19 55:4,5 57:25 59:5 60:5,25 61:7 62:12

**references** 54:2

**referred** 57:4 58:2 70:4

**referring** 30:12 35:16,18

**regarding** 16:24 16:25 60:18

**rejection** 44:17

**related** 21:18 26:16 38:23 44:19 72:21

**relates** 72:18

**relating** 22:3,16 54:9 73:12

**relevance** 80:13 80:20

**relevant** 6:16 81:18

**relief** 23:23

**remain** 15:1,1 63:24

**remaining** 12:15 13:9 47:3

**remember** 79:6

**remove** 27:3

**rendered** 11:18

**renders** 14:25

**rephrase** 46:18

**reply** 41:25

**reporter** 33:12

**reports** 79:21

**represented** 30:5 51:9

**request** 55:18 58:5 72:6 73:6

**requests** 53:9 58:15,18 72:14,15 72:20 75:17

**require** 64:12

**requires** 13:20 57:2

**res** 47:11 48:6

**research** 33:3

**reset** 64:2

**resolution** 9:24 12:20 13:9,18,20 14:2 17:14 19:6 21:16,17 22:14 27:15 33:24 34:12 67:16

**resolve** 10:17 12:25 15:24 16:6 18:12,14 30:19 37:8,15 50:17 65:25 70:18,22

**resolved** 11:22 12:16 16:2 18:22 21:21 22:18 26:18 26:20 71:4

**resolves** 39:11 48:1

**resolving** 25:20 25:21

**resources** 72:16

**respect** 20:10 52:21 55:20 59:6 65:6,9 76:9

**respectfully** 11:23

**respond** 70:16 72:6

**responded** 35:15

**response** 11:14 26:8 69:2 72:19 81:6,10

**responses** 80:9

**responsive** 72:5 72:17 73:5 74:3 74:24 75:4 82:9 82:10

**rest** 53:10

**resubmit** 70:10

**result** 9:1 15:15 46:24 51:1 54:19

**retained** 35:25 39:13,14

**retrieve** 70:9

**returnable** 77:16

**returned** 69:21

**reviewed** 75:12

**ridiculous** 26:7

**right** 7:4,22,23 13:19 17:5 18:16 19:15,16 20:12 21:2 23:2,14,21 24:21 27:24 28:15 28:22,25 29:17 31:4,11,12,13 32:12,14,15 34:24 35:10 38:10 39:1 41:24 42:12 43:14 44:12,14,19 45:7 45:13,14,24 48:15 50:16 54:16 55:5 56:2,8 61:5,15 62:1,8,16,23 63:1 63:8,10,13,15 66:7 68:20 69:1 70:9 71:8,12 72:8 76:13 77:21 78:7 78:22 79:1 80:6 81:15,16 83:3,4

**rights** 14:12 23:9 65:23,24

**road** 72:1 73:20 74:20 85:21

**robert** 5:12 71:17

**rockefeller** 4:5

**rollinson** 4:11 71:14,15,20 72:10 73:7,15,18,23 74:2,13,19 75:3 75:11,22 76:8,12 76:18 77:1,4,8,13 77:17 78:1,4,6,10 78:17,20 79:2,11 79:19,23 80:23 81:1,23 82:6,13 82:17,20,24 83:5 83:11,13

**roman** 49:3,6

**room** 57:13

**route** 66:3

**rug** 50:7

**rule** 8:9,14,22,24 8:24 14:25 17:3 25:12 29:5,6,14 29:15 30:21,22,25 31:5,6,10,14,17 32:3 33:14,15,15 34:6 41:2,9,11,13 41:17 44:11,15,16 44:18,22 49:13,21 54:13 57:9 64:6 64:17,18,25 65:7 65:13 68:23 75:7 76:23,25

**ruled** 7:17 14:24 63:11 67:19

**rules** 16:18 29:2 49:9

**ruling** 33:1 54:15 69:10 76:6

**rulings** 19:24 20:20,23 26:21 84:3

**run** 59:11

## s

**s** 4:1,23 6:1
**sarah** 52:21 54:3
**saran** 9:9
**satellite** 75:15
**saw** 38:2
**saying** 14:1 16:1,2
  16:9 21:1 28:12
  28:13,14 29:9
  30:17 33:1 36:5
  38:5,13,18 41:9
  46:2 47:16 48:19
  50:19 51:16 60:19
  64:6 65:3 67:3
  68:4,8 81:7,8,25
**says** 13:15 18:13
  29:15 31:5,20
  41:10 42:18 44:16
  47:25 67:24
**scanned** 57:13,13
**scenario** 20:5
**schedule** 37:3,5
  52:17 53:12 55:3
  58:24 59:4,16
  60:24 61:5 76:16
  83:6
**scheduled** 9:12,12
  42:24 62:5
**scheduling** 7:21
  73:19 76:20
**scheme** 18:1 45:2
  45:3,6,11 46:6
  51:18 55:23 68:7
**scrutinize** 30:16
**searched** 72:4
  73:8
**seated** 6:2
**second** 8:2,11 9:3
  19:5,23 21:11
  24:7 25:22,23
  26:22 51:25 57:19
  62:20,22 63:10,15
  67:15,20 70:1

**secondly** 72:10
  73:8
**securities** 1:9,12
  1:20 2:7 4:19
  16:16 51:18
**see** 38:4 43:17
  45:19 48:22 51:14
  56:19 63:3 64:1
  81:24
**seek** 61:22
**seeking** 23:24
  37:1 39:22 51:5
  54:1 56:18 61:21
  74:12 77:1
**seen** 30:11 34:5
  42:19 55:6
**sees** 7:19
**segal** 15:2
**semantical** 41:7
**sense** 49:15 74:10
**sensible** 74:14
**separate** 10:4
  21:18 76:11 77:11
**separated** 24:6,8
  61:17,18
**separately** 15:25
**separation** 24:23
**september** 2:19
  9:20 85:25
**seriatim** 10:16
**series** 22:16
**serrao** 5:18
**serve** 58:6
**served** 80:1
**seven** 58:6
**seventh** 63:7,9
**shapiro** 2:11
  71:13 72:18
**shapiro's** 72:18
  80:10
**sheehan** 5:17
**she's** 57:24 58:3
  64:13,15,23 77:6

**77:10
shouldn't** 26:6
  57:20 74:17
**show** 3:1
**side** 16:14
**sides** 17:16 19:8
  46:25 66:13
**signed** 57:3
**significant** 9:22
  10:8 12:7
**silliest** 32:8
**similar** 40:25
  46:11
**similarly** 46:13
**simple** 69:15
**simply** 15:7 21:22
  31:1
**single** 32:24 48:21
**sipa** 2:6 16:19
**sipc** 23:9 25:13
  30:23 31:8,9
**sir** 16:14
**sitting** 20:9
**situation** 31:1
  40:9 42:20 72:1
  72:13 75:23
**slew** 25:11 50:11
**smb** 1:3
**solely** 38:23
**solutions** 85:20
**somebody** 33:16
  81:8
**son** 72:19
**sonya** 3:25 85:3,8
**soon** 60:8
**sorry** 8:19,19 9:15
  37:11 46:4 55:24
  62:12
**sort** 73:24 79:25
**sought** 12:14
**sounds** 45:15
  48:23 51:21 58:11

**southern** 1:2
**spaced** 48:21
**speak** 55:17
**specifically** 12:24
  14:12 28:2 35:25
  39:24 41:20 58:17
**split** 79:6
**splitting** 19:3
**spoliation** 74:7
  76:10
**stack** 76:3
**stand** 15:10
**standard** 8:25
  18:2,12 41:3
**standing** 80:16
  81:4
**stanley** 75:9,20
  80:10
**start** 11:5 33:10
  37:10
**started** 37:10
**state** 16:17
**stated** 65:7
**statement** 38:15
  39:12 73:24
**statements** 73:11
  75:19 76:3
**states** 1:1 2:15
**status** 64:21 83:7
**statute** 36:17
**stayed** 43:2
**stern** 47:10
**stipulate** 22:17,22
  59:1
**stipulated** 22:19
  36:8 57:16 58:22
**stipulation** 37:15
  57:3 77:23
**stop** 13:7 33:3
**storage** 69:23
  70:19
**story** 17:24

**strategy** 79:7
**street** 4:20
**stricken** 15:16
**strike** 3:5 8:3
  40:21 79:7 84:6
**striking** 40:22
**stripping** 33:17
**stuart** 2:22
**stuff** 81:9
**subject** 9:9 15:3
  40:4 71:21
**submit** 11:12,24
  13:4,15 14:21
  15:14 49:23 58:7
  59:1 61:10 69:9
  70:13,15 77:22
**submits** 8:6 21:14
**submitted** 13:15
**subpoena** 80:6,11
  80:17 81:5,13
  82:9,14
**subpoenaed** 81:7
**subsequent** 33:6
  38:23
**substance** 32:4
**substantively** 2:5
**suddenly** 60:14,19
**sued** 32:1
**sufficient** 9:16
**suggesting** 65:2
**suggestion** 43:6
**suggests** 32:14
**suit** 10:25
**suitable** 15:12
**suite** 4:20 85:22
**summary** 7:3 29:1
  29:16 33:18 45:25
**supplemental**
  52:23 57:9
**supply** 40:13
  69:22
**support** 33:1

**suppose** 14:18
  23:3
**supposed** 64:7
**supreme** 63:11
**sure** 8:2 14:7
  16:24 24:13,19
  25:12 28:24 32:12
  52:19 66:16 72:10
  74:2 78:12 81:2
**surprise** 71:1
**surprised** 16:20
  75:4

**t**

**t** 85:1,1
**tabs** 61:18
**tail** 6:24
**take** 59:24 60:3
  73:13 74:10 75:15
  76:5,7,10 77:11
  79:3,4
**taken** 45:1 75:14
**talk** 49:19 66:8
  79:15
**talked** 54:13
**talking** 33:20 55:2
  66:7 73:19 78:11
  78:13,14
**talks** 44:10,16
**tangent** 50:13
**tangentially** 21:19
**team** 59:22
**technically** 78:23
**tee** 55:2 64:11
**telephonically**
  5:14
**tell** 7:25 22:12
  23:19 43:1 49:8
  69:25 70:1 72:9
  74:8 76:15
**telling** 7:2 37:1
  38:11 60:13
**ten** 11:6 42:14

**term** 79:14
**termination** 65:11
**terms** 44:11 65:17
  65:20,20 66:8
  68:18 78:22
**testify** 78:25
**testifying** 59:18
  59:21
**testimony** 77:3
**thank** 48:17,18
  51:23 61:9 62:18
  68:25 70:25 71:7
  71:9,10,19 83:14
  83:15
**that's** 7:5,11 8:16
  9:9,22 10:1,1,15
  13:9 15:13 17:13
  17:13,24 18:2
  20:7,9,23 21:11
  22:17,20 23:11,25
  23:25 24:12 28:23
  29:22 30:18,20
  31:5,20,23 32:8
  32:20,25 34:21
  36:14 37:7,8,10
  37:24 38:16 40:16
  41:18,22 44:22
  46:7,14,17 48:2
  48:10 50:13 51:20
  53:4 54:22,24
  55:15 56:14 57:5
  59:8 62:23 63:1
  63:20 65:1,12
  66:3,14,15 68:7
  69:13 71:21 74:5
  74:13 77:25 82:18
  83:5,13
**theories** 44:11
  51:17
**theory** 51:21
**there's** 7:13,16,21
  11:25 12:7 13:8
  14:1 17:16 20:12

20:15 21:2,2 25:6
27:11 32:24 34:9
34:15 38:25 39:3
39:6 43:23 45:24
48:24 52:16,23
53:15 54:8 58:1
59:9,14 60:20
61:13 62:9 65:16
67:20 69:4,19
74:22 76:4,5
78:12 79:25
**they'll** 8:14 76:24
  78:25
**they're** 8:13 14:1
  14:2,3 16:2 19:3
  20:21 29:4,9 32:1
  36:5,5,6,6,21,25
  37:1 46:2,11,21
  51:16,20 61:21
  65:12 74:7,8
  75:23 78:10,23
  79:12,24 83:1
**they've** 30:18,18
  37:2 46:7 64:18
**thing** 17:12 25:22
  28:6,17 32:9
  44:22 49:25 55:9
  55:23 64:24 81:1
  81:12,23 82:6
**things** 9:1 22:15
  26:17,19 28:4,19
  36:24 58:14 60:12
  67:19
**think** 6:16 7:1,8
  7:12,12 8:17 9:7
  9:22 10:8,20,21
  12:1 13:11,22
  14:7,19 15:6,10
  15:17,20 24:17,17
  24:22 25:15 26:4
  26:9,21 27:10
  28:19 30:22 31:6
  32:20 33:2,10,24

34:8 37:7,8,11
39:4,10 40:24
41:5,6,24 42:15
42:17 43:24 44:17
45:13 47:9 49:21
50:14,25 51:4,21
53:2 54:5 58:9
59:11,23 60:2,7
62:14 64:1,3,19
66:10 70:1,12
71:4 72:11 73:4
74:13 75:17 76:21
79:20,23 80:22,23
**third** 80:17
**thought** 21:13
38:13 53:20 66:19
71:22 75:9
**three** 8:7 9:8 19:5
19:24 20:20,22
24:6 26:21 52:20
53:1,8,9,10 59:25
60:10 62:3 63:19
67:2
**threshold** 33:25
42:7,10 43:13
58:11 81:20
**throw** 50:7
**tie** 36:3
**time** 9:16 14:21
26:16 39:1,25
40:11 42:20 43:4
61:6 80:1 82:4
**times** 19:5,24 24:7
49:3,6 81:4
**timing** 12:4
**tired** 60:13
**today** 21:8,12
33:13 40:14 62:20
**told** 60:12 64:13
81:9
**ton** 76:21
**torello** 4:10 71:15

**total** 8:5 39:4
72:20
**totally** 15:15
50:16
**track** 21:18
**trade** 55:21,25
56:4,5,13 57:15
58:5 68:7
**trading** 45:4
51:17 55:20 56:7
56:19 70:3
**transactions** 45:7
**transcribed** 3:25
**transcript** 85:4
**transfer** 18:18
26:19 38:24 45:8
**transfers** 38:25
**treasury** 51:18
**treated** 41:4
**treating** 52:5
**trial** 3:9 7:4,21,22
9:12 10:12 11:22
37:3,5,8,14 42:24
43:3 47:14 52:17
53:12 55:3,5
57:23 58:24 59:3
59:4,11,16,21,23
60:24,25 61:12,13
62:8,21 63:4,8,10
**trials** 56:15
**tried** 7:7 81:13
**true** 23:25 30:20
41:18 66:14 85:4
**trustee** 1:19 2:5
4:4 6:6 8:6 12:11
12:13,24 23:3
27:21 32:18 54:1
54:20 55:11 56:3
57:22 68:6 71:15
77:1,4 80:6
**trustee's** 6:20 8:3
10:22 19:14 22:5
23:2 28:2 29:19

34:18,24 48:1
72:5
**try** 7:23 10:6
20:16 48:11,12
76:17
**trying** 39:17 58:7
64:13,15,20 66:3
81:23 82:7
**turn** 59:12 74:16
74:24
**turned** 38:4 76:4
**turns** 76:2
**twelve** 49:1
**twice** 7:18 13:3
**two** 6:8 12:1
17:16 34:9 36:24
40:13 42:12,13
51:10,22 57:6
59:25 61:1 66:13
72:14,23 73:20
74:20,20
**type** 49:1

## u

**u.s.** 2:23
**ultimate** 9:23,23
**ultimately** 33:23
**unanswered** 72:2
**unclear** 82:22,23
**underlying** 33:8
62:13
**understand** 7:24
13:11,24 17:15
24:19 28:12 44:21
48:24 66:12,12
70:2
**understood** 10:5
41:13 43:12 61:19
63:23 68:25
**undisputed** 25:19
**unfair** 46:24
**unilaterally** 8:10
11:7

**unique** 44:2
**united** 1:1 2:15
**universe** 17:8
**unusual** 30:6,15
41:12
**use** 29:5 61:16,18
**usually** 32:6
**utilized** 15:9

## v

**v** 1:11,22 2:10
**various** 26:23
44:11
**verify** 70:24
**veritext** 85:20
**versus** 38:15
39:12 41:7 71:13
**victims** 9:2 10:18
**view** 31:7 53:5
65:11
**violate** 8:9
**virtually** 72:22

## w

**wagging** 6:24
**wait** 60:20 77:6
**waiting** 12:25
38:4
**walsh's** 33:10
34:4
**want** 14:12 27:23
31:3 42:12 43:17
48:9,12 51:13
52:18 59:8,10
66:4 68:10,11
71:24 72:3 73:22
73:24 74:19 76:10
76:16 79:3 82:8
**wanted** 36:3
51:14
**wants** 42:19
**washington** 4:21
**wasn't** 9:17 24:21
31:16 45:6 51:18
57:4 58:20 68:7

**waste**  72:16
**way**  6:11 10:9
  12:10 28:4 33:11
  36:9 37:9 38:20
  52:11 55:2 57:24
  57:25 65:3,22
  66:3
**ways**  14:8
**week**  12:11 59:22
  61:3,12
**weeks**  40:13 42:12
  42:13 51:22
**went**  19:4 54:7
  67:15
**weren't**  72:13
  76:4 78:11
**we'll**  45:19 51:19
  51:19 54:14 61:23
  61:25 62:19 76:1
  78:6 82:25 83:3
**we're**  6:17 11:6
  11:19 13:8 16:9
  18:11,14 23:12
  25:21 30:17 32:22
  35:15 37:11,12,14
  50:12 53:1 55:2
  60:12 61:3 65:4
  66:15 69:8 70:22
  71:20,23,25 72:14
  73:20,20 75:23,24
  77:14,19 78:14
  81:23 82:6,6,13
**we've**  15:9 18:2
  57:11 59:17 60:14
  64:1 75:1
**what'd**  75:18
**what's**  9:5 10:2,7
  10:7,10 15:14
  24:12 27:20 29:12
  40:22 57:13,13
  66:22 69:19 70:24
**who's**  76:23

**willing**  23:18
  27:24 56:14
**win**  18:16
**wind**  51:19
**withdraw**  6:23,23
  7:13 8:14 9:17
  10:3,14 13:8 15:7
  16:25 19:10,22
  20:3,6 21:22,24
  23:8 24:22 26:7
  27:4 28:25 29:17
  31:1,3,13 32:4,15
  32:18,23 34:25
  35:6 36:5,6,10,21
  36:22 37:1,18
  38:3 39:18,23
  40:10 41:5,10
  42:12,19 43:9
  44:5,12,14 45:17
  46:21 48:3,4,9
  51:5 52:5 53:21
  54:2 55:4 57:25
  59:5,7,10 60:5,25
  61:7,21,22 62:9
  62:12,13 63:17,22
  64:13,15,24,25
  65:5,19,21,24,24
  66:4,21 68:19,21
  68:21 69:3 82:13
**withdrawal**  3:6,6
  8:24 11:6 12:2,5
  14:17 19:18 25:1
  27:6 28:20 29:13
  30:7,16 33:25
  34:1 36:18 40:1
  40:23 41:4,6,11
  47:5 50:4,5,20
  54:15 59:9 62:4
  63:16,19
**withdrawals**  8:4,8
  14:25 22:4,17,20
  22:22 23:4 27:22
  28:3 47:15,16

53:1,9 63:25
**withdrawing**  14:3
  14:3,14 19:7,9
  20:4,8 27:16
  28:13 33:17,22
  36:7 40:18 42:9
  43:6,7 52:13
  53:11 66:24
**withdrawl**  40:21
**withdrawn**  37:2
  52:20 59:14
**withdraws**  55:4
**withdrew**  19:11
  20:7
**witness**  61:11
  77:7
**witnesses**  78:8,10
**won**  30:18
**won't**  55:5 66:21
**word**  49:10,13
**words**  7:2 10:2
  18:17 19:2 68:2
**worth**  64:19
**wouldn't**  47:17
  73:10
**write**  49:7
**written**  30:23
  31:6
**wrong**  52:19
**wrote**  75:5

**x**

**x**  1:4,6,14,16,25
  2:2,13 84:1

**y**

**yeah**  7:20 28:7
  32:21 39:21 41:24
  43:17 44:8 45:13
  45:15 52:15 53:17
  61:11 70:15 81:3
**year**  9:18,20 11:9
**years**  11:6 15:10
  19:21 35:7 40:12
  44:9,9,9 57:6

58:24,25 60:10,10
  60:13,14,23,23,23
  61:1 72:14 75:1
**yep**  83:9
**yesterday**  56:18
**york**  1:2 2:17 4:6
  4:15 5:3,9
**younger**  72:19
**you'd**  16:12 76:11
**you'll**  12:17 40:9
  59:11,12 61:22
  71:1,5
**you're**  7:2 16:9
  20:4,8,25 21:1
  23:23,24 27:16
  28:13,13,14 29:12
  31:3,7 33:8,16,20
  33:22 34:17 35:18
  38:18 40:18 42:8
  45:13,17 47:16
  48:10 53:22 58:12
  58:25 59:13 60:19
  60:19 66:3,7 67:3
  67:23 68:1,4,8
  73:25 74:10,11
  75:11,15
**you've**  13:15 16:2
  23:11 44:3 63:21
  73:5

**z**

**zagano**  9:4 10:21
  10:23 32:24 33:20
  43:11,14
**zero**  16:3