# EXHIBIT 2

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Lead Case No. 08-99000-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   Adv. Case No. 10-04390-smb

6   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

7   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

8   MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF,

9               Plaintiffs,

10          v.

11   BAM L.P., et al.,

12              Defendants.

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14   Adv. Case No. 10-04377-smb

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

17   MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF,

18              Plaintiffs,

19          v.

20   NELSON, et al.,

21              Defendants.

22   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

23

24

25

Page 2

1    Adv. Case No. 08-01789-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    SECURITIES INVESTOR PROTECTION CORPORATION,

4                    Plaintiff,

5            v.

6    BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, et al.,

7                    Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                   United States Bankruptcy Court

11                   One Bowling Green

12                   New York, NY  10004

13

14                   November 28, 2018

15                   10:03 AM

16

17

18

19

20

21   B E F O R E :

22   HON STUART M. BERNSTEIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  K. SU

Page 3

1   HEARING re 10-04390-smb Motion for (A) Expedited

2   Determination Of Motion For A Stay Of Trial Pursuant To Rule

3   5011(C) Pending Ruling By The District Court On Defendants

4   Motion To Withdraw The Reference And (B) Granting A Stay.

5

6   HEARING re 10-04390-smb Request For Trial Logistical Matters

7

8   HEARING re 10-04377-smb Conference re Trial (also applies to

9   Adv. Proc. No. 10-04658)

10

11   HEARING re 08-01789-smb Trustees Twenty-Third Omnibus Motion

12   to Overrule Objections of Claimants, solely with respect to

13   claim of FGLS Equity LLC

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   YESKOO HOGAN & TAMLYN, LLP

 4        Attorneys for FGLS

 5        909 Third Avenue, 28th Floor

 6        New York, NY 10023

 7

 8   BY:  RICHARD C. YESKOO

 9

10   BAKER HOSTETLER

11        Attorneys for the Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111

14

15   BY:  NICHOLAS J. CREMONA

16        SEANNA R. BROWN

17        JASON BLANCHARD

18

19   BAKER HOSTETLER

20        Attorneys for the Trustee

21        811 Main Street, Suite 1100

22        Houston, TX 77002

23

24   BY:  DEAN D. HUNT

25
```

Page 5

1   DENTONS US LLP

2       Attorneys for Michael & Merrill Mann and BAM LP

3       1221 Avenue of the Americas

4       New York, NY 10020

5

6   BY:  CAROLE NEVILLE

7

8   SECURITIES INVESTOR PROTECTION CORPORATION

9       1667 K Street, N.W., Suite 1000

10      Washington, D.C 20006

11

12  BY:  KEVIN H. BELL

13

14  CHAITMAN LLP

15      Attorneys for Michael & Merrill Mann and BAM LP

16      465 Park Avenue

17      New York, NY 10022

18

19  BY:  GREGORY M. DEXTER

20

21  ALSO PRESENT TELEPHONICALLY:

22  NATHANIEL S. KELLEY

23  PATRICK MOHAN

24  DAVID J. SHEEHAN

25

Page 6

1              P R O C E E D I N G S

2              P R O C E E D I N G S

3              CLERK:  All rise.  Please be seated.

4              THE COURT:  Madoff.

5              MR. CREMONA:  Good morning, Your Honor.  Nicholas

6    Cremona, Baker Hostetler, appearing on behalf of the

7    Trustee.  I would propose Your Honor to go forward in the

8    order of the agenda that we filed yesterday, unless Your

9    Honor has a preference.

10             THE COURT:  Well, I didn't see the agenda, but I'm

11   about to see it.

12             MR. CREMONA:  The first matter scheduled is the

13   motion for stay, pursuant to the order to show cause that

14   Your Honor entered.

15             THE COURT:  Okay.  I'll hear that first, Ms.

16   Neville.

17             MS. NEVILLE:  Good morning, Your Honor.  Carole

18   Neville from Dentons on behalf of Michael and Meryl Mann and

19   Bam L.P.

20             Your Honor, the last time we were before you, and

21   I think we went down a rabbit hole or a bad path or a

22   frolic, whatever you want to call it, and I think it's the

23   same one Judge Daniels went down.  That somehow, the

24   adversary proceeding would result in an allowed claim.

25             The bottom line is, and I'd like to go into a

Page 7

1    little more deeply, is there's no way that the adversary

2    gives rise to a claim.  There's no claim; it's dead.  In

3    this case, both the net equity and the time-based damage

4    claim rulings, which really dispose of all of the assertions

5    in the claim.

6            THE COURT:  But you were also contesting, at that

7    time, the Trustee's computation of the deposits and

8    withdrawals, even under the net investment method.

9            MS. NEVILLE:  But, you know, that was actually

10   before we got initial disclosures, and I was able to

11   actually see what the Trustee had and what had been filed.

12   Because let's remember that these cases go back a very long

13   time.  The net equity decision was before the adversary was

14   filed, so there were no initial disclosures.  We didn't have

15   the documents from the account.  All I had from my client

16   were his portfolio managing reports and statements.

17           When we got the documents that the Trustee had,

18   where the client requested money and he got a check or a

19   wire transfer, we now see that there's no way to contest it.

20   And vis-a-vis a claim?  We're not contesting it.  We don't

21   contest that.  That's not an issue at the trial.  So what I

22   have to say about that --

23           THE COURT:  Because I asked you this question the

24   last time.  I said, are you withdrawing your claim, and you

25   said no.

1           MS. NEVILLE:  Well, you know something, Your

2    Honor?  Truthfully, the pretrial -- the order, pretrial

3    process actually was helpful in crystallizing where we

4    actually are in this case.  So I went back and I looked at

5    things like -- the letter of determination says, you know,

6    if the Trustee, if the Trustee gets a final order,

7    unappealable order vis-a-vis this net equity, it is prepared

8    to adjust the claim; otherwise, the claim is disallowed.

9    I'm really badly paraphrasing it.

10          THE COURT:  But you're talking about the claims

11   procedure order?

12          MS. NEVILLE:  That's in the letter of

13   determination that came as a part of that.

14          THE COURT:  Okay.  I understand what the net

15   equity decision meant.  You still had some other objections.

16          MS. NEVILLE:  Those went away with time-based

17   damages.  And that, as I recall now --

18          THE COURT:  Well, you also -- wait -- you also had

19   an objection that you can't go back more than two years.

20          MS. NEVILLE:  But that's part of the net equity.

21   The net equity decision was not only money in versus money

22   out; it was when it began and when it ended.

23          THE COURT:  Are you essentially arguing that the

24   determination of net equity in all of the defenses to that

25   determination is a separate question from whether or not you

Page 9

1    received fictitious profits or could assert essentially the

2    same defenses, that you can't go back more than two years

3    for fictitious profits or you can't -- or, you know, you can

4    assert a value defense?

5              MS. NEVILLE:  Well, that's where we have to put

6    that aside for one second.  I just want to go back to the

7    issue of whether there's anything remaining in the claims

8    allowance.

9              And the second decision, which was the time-based

10   damages claim, was spurred by something the SEC said in the

11   net equity argument.  And they said, you know, really, that

12   money in versus money out should be adjusted for the time

13   value of money.  So we went up on that issue, and that issue

14   nailed finally time-based damages, interest, and all the

15   other things.

16             So there isn't any way that the adversary can

17   change the fact that there are final unappealable orders

18   disposing of all of the issues with respect to allowance of

19   a claim.

20             Now your question is, is that coterminous with the

21   defense under 548(c), and our answer to that is no.  And I

22   think --

23             THE COURT:  But isn't that a legal question?  In

24   other words, I read the pretrial order this morning.  And

25   aside from the dispute as to whether or not there was a

Page 10

1    Ponzi scheme, and you also raise the issue, well, maybe this

2    was property of Madoff personally rather than BLMIS, which

3    was being transferred, seems to me these are all legal

4    issues that could be resolved, you know.  If you're saying

5    there is no factual dispute, they can just be resolved on a

6    motion for summary judgment.

7              MS. NEVILLE:  Well, Your Honor, I struggle with

8    that myself, frankly.  Because the reason that I have -- I'm

9    on a trail path, as opposed to following Mr. Kirby and

10   Lowry, which I completely agree with on a legal basis, is

11   because I would not concede that this was a Ponzi scheme.

12   Now --

13             THE COURT:  So what's the affect on your claim if

14   it's not a Ponzi scheme?

15             MS. NEVILLE:  Well, whatever the effect has

16   nothing on the claim.  But what it has is under 548(c)

17   defense and those are not coterminous.  Because if you

18   consider this, as I do, a securities fraud case and subject

19   to securities fraud defenses, those defenses come in as

20   defenses.  They have no impact on whether or not I have a

21   claim against the BLMIS estate.

22             THE COURT:  What you're really saying, and this

23   comes back to the argument whether you can set off your

24   damage claim against their claim to recovery.

25             MS. NEVILLE:  That's called antecedent debt, Your

1   Honor.  It's another way of saying antecedent debt.

2           THE COURT:  I understand that, but you're ignoring

3   the distinction between the SIPA estate and the general

4   estate.  And what you're proposing to do -- let me just

5   finish -- what you're proposing to do is essentially reduce

6   your liability under SIPA by asserting a general claim

7   against the estate.  And I'll say, fine, go file a claim

8   against the general estate.

9           MS. NEVILLE:  Not under SIPA.

10          THE COURT:  Don't interrupt me, please.  I'll say

11  fine, go file your claim against the general estate, but you

12  can't set it off and reduce the amounts available to satisfy

13  net equity claims.  You know, that's been the subject of

14  litigation; it's a legal issue.

15          MS. NEVILLE:  Your Honor, that was an argument

16  that Judge Rakoff first introduced in the antecedent debt

17  decision that there is a priority scheme in their SIPA, but

18  that's not true under 548(c).

19          So whether I have a securities law claim, it's not

20  subject to the allowance of a claim against the BLMIS

21  estate.  I have a defense.  If I was in -- not in a

22  bankruptcy case, this would be adjudicated as a securities

23  case, like Ponzi, a case which you guys hate.  But, frankly

24  --

25          THE COURT:  In which case?  Oh, the Sixth Circuit

Page 12

1   case?

2           MS. NEVILLE:  Yeah.  I mean --

3           THE COURT:  Why would I hate it?

4           MS. NEVILLE:  I mean, everybody trashes it without

5   really looking at the reasoning, which is just this is a

6   securities law case, and this is how you decide securities

7   law cases.

8           I understand that we have focused on this for a

9   very long time under the Ponzi scheme umbrella, and that net

10  equity and the adversary are two sides of the coin, as the

11  Trustee argued to Judge Rakoff.  But Judge Rakoff himself

12  said that net equity is not the deciding factor of the

13  adversary proceeding, in this case, 490 --

14          THE COURT:  Well, you're saying they're different

15  defenses.  But basically, they're computed in the same way:

16  net equity and fictitious profits.

17          MS. NEVILLE:  No, they're not.

18          THE COURT:  How's -- how are they computed in a

19  different manner?

20          MS. NEVILLE:  Well, a securities fraud case, first

21  of all, allows you two different remedies: one is the

22  damages that are not allowed.

23          THE COURT:  No, no.  I understand you're saying

24  you have different defenses.  But how -- what's the

25  difference in computing net equity and fictitious profits?

1    Just, let's stick with that question.

2              MS. NEVILLE:  You --

3              THE COURT:  In other words, before you get to your

4    defenses, they would have to establish a prima facie case.

5    What's the difference in their prima facie case to show net

6    equity or to show fictitious profits?

7              MS. NEVILLE:  Nothing.

8              THE COURT:  Okay.

9              MS. NEVILLE:  My defense is completely different.

10             THE COURT:  I understand that.

11             MS. NEVILLE:  And I have a defense.  So the fact

12   that they can show that I've put in X -- Mr. Mann put in X

13   and took out Y, has nothing to do with -- it has -- it only

14   begins the question of what I can do with my defense.

15             THE COURT:  Okay, that's a legal argument.  If

16   you're telling me that there's nothing left in the claims

17   allowance process -- is that what you're saying?  Because

18   you now have stipulated to the withdrawals and deposits, so

19   that for purposes of net equity, you have a zero claim.

20             MS. NEVILLE:  Correct.

21             THE COURT:  All right.  Okay.

22             MS. NEVILLE:  And there's no way it can be revived

23   by the adversary proceeding.  But that doesn't determine

24   what my defenses were any more than it would have raised --

25   well, a perfect example is the 546(e) decision, which said

1   that you -- the Trustee can't go back a six-year period and

2   doesn't have a constructed fraud case or a case under state

3   law.  That was a way that the defense was not coterminous

4   with net equity.

5            THE COURT:  But that --

6            MS. NEVILLE:  548(c) is another one.

7            THE COURT:  The Second Circuit was construing

8   Section 546(e).  You've prevailed on 546(e).  The Trustee is

9   limited to two years.

10           MS. NEVILLE:  But we have not -- we have not

11  really addressed fully the 548(c), because that Ponzi scheme

12  thing comes whacking you back.  And then all of the estate -

13  - the other defenses --

14           THE COURT:  You're -- are you saying that the

15  548(c) is not a defense to the computation of the net equity

16  claim?

17           MS. NEVILLE:  548(c), let me -- let me --

18           THE COURT:  I'm trying to figure out if you still

19  have defenses, regardless of what you say, to the claim

20  you've asserted.  Are you saying that you can assert your

21  state law rights?

22           MS. NEVILLE:  Correct.

23           THE COURT:  In response to the adversary

24  proceeding, but not in response to the computation of net

25  equity?

Page 15

1              MS. NEVILLE:  Yes, because it's gone, it's gone.

2      I have -- I stipulated to it.

3              THE COURT:  The Second Circuit --

4              MS. NEVILLE:  It was disallowed.  It was

5      disallowed by Lifland, it was disallowed by the Second

6      Circuit.  It's gone.  The net equity is their claim; it's

7      not my defense.

8              THE COURT:  I know, but net equity is just --

9              MS. NEVILLE:  Don't say it's two sides in the same

10     coin.

11             THE COURT:  Well, I think the comp- -- you've

12     admitted that the computation itself is the same, but you're

13     saying you have additional defenses in an adversary

14     proceeding that you don't have to a net equity claim.

15             MS. NEVILLE:  Yes, absolutely, absolutely.

16             THE COURT:  So are you --

17             MS. NEVILLE:  And those --

18             THE COURT:  Are you prepared to withdraw all of

19     your defenses, all of your objections with prejudice?  In

20     other words, everything that was raised as an objection to

21     the Trustee's determination, are you withdrawing that with

22     prejudice?  Because that's where we got caught up the last

23     time.  And then the Trustee can argue, well, that's gone on

24     principles res judicata effect on something.

25             MS. NEVILLE:  It's gone.

1           THE COURT:  You'll withdraw -- you'll withdraw

2      your object- --

3           MS. NEVILLE:  I don't have to, it's gone.  It's

4      been fully disposed of.  I can, I will, I've admitted that -

5      - I've admitted that --

6           THE COURT:  Why don't you make an oral motion to

7      withdraw your claim with prejudice?

8           MS. NEVILLE:  Okay.  I'm making --

9           THE COURT:  No.  I'm not putting it --

10          MS. NEVILLE:  No, no.

11          THE COURT:  Just say the words.

12          MS. NEVILLE:  Your Honor, I make an oral motion to

13     withdraw Mann -- Michael Mann and Meryl Mann's claim and

14     Bam's claim with prejudice.

15          THE COURT:  Okay.  So what's left now?

16          MS. NEVILLE:  What's left now --

17          THE COURT:  No, no, let me hear from them.

18          MS. NEVILLE:  Well, can I just finish really?

19     Because one of the things that -- you've raised a number of

20     issues at our last discussion about this issue, which I went

21     back and tried to really figure out.

22          And one of the questions you raised was, once you

23     filed a claim, is it kind of inevitable that I have -- that

24     you have final adjudicative authority over the --

25          THE COURT:  In connection with the claims

Page 17

1    allowance process.

2             MS. NEVILLE:  That's right.  And the cases are so

3    different than ours, which really, as you know, has been a

4    really unique process with everything going off in different

5    directions.

6             THE COURT:  Wait a minute.  Are you going to tell

7    me that if you have a live claim and their adversary

8    proceeding not only seeks to recover money on a fraudulent

9    transfer basis, but seeks to object to your claim under

10   502(b), that I don't have final adjudicatory authority over

11   that?

12            MS. NEVILLE:  No, I wouldn't, Your Honor.  And you

13   know something?  We actually had a case.  You actually had a

14   case, Mr. Marco's case, where he had two accounts, and one

15   was positive and one was negative, and the Trustee had a

16   502(d) claim.  It was settled on other issues about whether

17   or not the transfers actually occurred.  But that is the

18   case where they actually had a 502(d) count in the

19   complaint.

20            THE COURT:  Did they really need it then?  In

21   other words, under 502(d), if the Trustee recovers or gets a

22   judgment devoiding and recovering a transfer, your claim is

23   automatically disallowed.  It's a ministerial act; they

24   don't even have to make a motion.

25            MS. NEVILLE:  Well, there's different accounts, so

Page 18

1    they did have to.

2              THE COURT:  Well, but let's assume it's one

3    account.

4              MS. NEVILLE:  Right, right.

5              THE COURT:  That --

6              MS. NEVILLE:  But you know --

7              THE COURT:  I have no -- in other words, I have no

8    discretion in that situation.  The code says your claim

9    shall be disallowed unless and until you repaid it.

10             MS. NEVILLE:  Yeah, no, but I do think that that

11   502(d), which Judge (indiscernible) also focuses on, is the

12   linkage between the adversary and the claims.

13             THE COURT:  Now let me hear from them.  I

14   understand what you're saying; that there's no longer a

15   claim to be adjudicated.  I understand that.  Let me hear

16   from them.

17             MR. CREMONA:  Thank you, Your Honor.  Again,

18   Nicholas Cremona on behalf of the Trustee.  A lot was said

19   just now.  I think --

20             THE COURT:  Okay.  She has made a motion to

21   withdraw the three claims with prejudice, or withdraw the

22   objections and the claims with prejudice.  What more is left

23   of the claims allowance process, vis-a-vis the three

24   defendants?  I understand you still have disputes, but

25   what's left of the claims allowance process?

1            MR. CREMONA:  Your Honor, I think we're in a sense

2     putting the cart before the horse.  We really need to

3     evaluate the jurisdictional threshold issue, which you and I

4     and Ms. Neville discussed on 9/26 and I'm happy to go

5     through that.

6            But I would say, what's left?  I mean, an oral

7     motion is not sufficient to withdraw a claim that's been

8     pending and joined and is pending before Your Honor.  I

9     know, you know, we talked about it last time, that Rule 41

10    applies -- Rule 41 applies, those factors applies.  If I

11    may, Your Honor --

12            THE COURT:  But she's withdrawing it with

13    prejudice.  You know, as long as she withdraws it with

14    prejudice, what's the objection?  Rule 41 is really

15    concerned with a situation where a plaintiff tries to

16    withdraw the claim without prejudice, but she's withdrawing

17    it.  And then the question is, well, under principles of res

18    judicata.

19            MR. CREMONA:  Sure.

20            THE COURT:  What does that mean to the adversary

21    proceeding?

22            MR. CREMONA:  Well, there are a number of issues

23    that still remain that overlap that we talked about.  If you

24    --

25            THE COURT:  What factual issues?  Just about the

Page 20

1    claims allowance process.  Or let me ask you this way; if

2    she actually -- and if you want to respond to the motion,

3    fine, I'll let you respond to the motion.  But, you know,

4    what factual issues are left vis-a-vis the claims allowance

5    process if she's withdrawing her claim with prejudice and

6    her objections with prejudice?  Which is part of what I

7    assume you're doing, Ms. Neville.

8              MS. NEVILLE:  Yes, Your Honor.

9              THE COURT:  Okay.

10             MR. CREMONA:  Well, Your Honor, we submitted, as

11   you pointed out in pretrial order last night, that that

12   revives and includes many of those very same issues.  Such

13   as, you know, I could tell you Paragraphs 20, 21, 23, 29 --

14             THE COURT:  I've read the pretrial order.

15             MR. CREMONA:  All reference --

16             THE COURT:  I understand that.

17             MR. CREMONA:  They all reference the balance of

18   the claim and they assert -- for example, prejudgment

19   interest is an issue in this case.

20             THE COURT:  But it's not a part of the net equity

21   claim.

22             MR. CREMONA:  But it is -- Ms. Neville is

23   asserting that the last statement balance and that they're

24   entitled to some interest that should be calculated on that,

25   and that is in this present- -- that is presently in this

Page 21

1    pretrial order.

2              THE COURT:  Well, she's actually asserting more.

3    She's saying that she has a securities entitlement under the

4    UCC to the balance in that last statement.

5              MR. CREMONA:  Exactly.  So those are all the

6    paragraphs I'm referring to.

7              THE COURT:  I understand.  But it just doesn't

8    sound like -- if you accept the proposition that my final

9    adjudicatory authority over this adversary proceeding would

10   end if there were no claim -- no claims allowance process,

11   which is what she's really saying, how can I try the

12   adversary proceeding?

13             MR. CREMONA:  I think we have to look at it,

14   first, Your Honor, as we discussed last time.  Whether Your

15   Honor's jurisdiction can be invoked by the filing of the

16   claim, and then subsequently, disavowed by an act, an oral

17   motion, or a purported withdrawal of the claim.  The answer

18   to that --

19             THE COURT:  Do you want to respond to her motion?

20   I mean, I understand what you're saying; that there may be

21   issues regarding whether or not she can escape the

22   jurisdiction of the Court by withdrawing the claim.  And

23   I'll give you a chance to respond to that; you don't have to

24   respond to it here.  But the fact remains, is she's

25   withdrawn her claim.

1             And then you're going to say, well, she can't

2     circumvent the equitable jurisdiction of the Court by

3     withdrawing her claim with prejudice; that's what you're

4     really saying.

5             MR. CREMONA:  I am.

6             THE COURT:  And I'll give you a chance to respond

7     to that.

8             MR. CREMONA:  I guess I would respond orally by

9     saying, as we asserted last time and we discussed at length,

10    Rule 3006 precludes such a motion.

11            THE COURT:  She just made a motion.

12            MR. CREMONA:  Well, it preclude- -- procedurally,

13    I think it's improper at this point.  I think we do need to

14    look at the Rule 41 factors that we articulated last time.

15            THE COURT:  To withdraw with prejudice?

16            MR. CREMONA:  Well, we -- the Trustee is arguably

17    prejudiced by that purported withdrawal or attempted

18    withdrawal.

19            THE COURT:  All right.  I'll give you a chance to

20    brief that.  I don't see why she has to file a separate

21    motion with one paragraph that says, I withdraw my claims

22    and my objections with prejudice, so she's done it.  How

23    much time do you need to respond?

24            MR. CREMONA:  Your Honor, we're happy to respond

25    on Monday, and we think the trial should go forward.  I'd

1    like to discuss -- I mean, none of what Ms. Neville just

2    articulated was any basis for a stay of that trial.  I mean,

3    none of those factors have been discussed.  I think the

4    Court still has jurisdiction over the adversary proceeding.

5            THE COURT:  But that's answering -- that's

6    assuming the answer to the question that you want to brief.

7    I don't know if I still have it.  I understand that Rule

8    3006 and Rule 306 under the old act, in part, were designed

9    to avoid strategic withdrawals.

10           But it seems to me -- I'm not so sure I still have

11   jurisdiction to try this adversary proceeding if it's not

12   part of the claims allowance process; that's the bottom

13   line.  And that's what I'm having trouble with, and I don't

14   think it's such a simple answer.

15           MR. CREMONA:  Well, if I may just discuss it

16   briefly.  The question is whether Your Honor has

17   jurisdiction, and I would submit that you do.

18           THE COURT:  Well, I certainly have related to

19   jurisdiction.

20           MR. CREMONA:  And I would submit that you have

21   jurisdiction based on the cases in our papers, such as In Re

22   EXBS, which provides that once a party submits their claims

23   to the court's jurisdiction themselves and all related

24   disputes, that they cannot later disavow that jurisdiction

25   based on a withdrawal of the claim; that is the law.  I

Page 24

1    mean, we discussed last time the Germaine case, which it

2    says --

3                THE COURT:  Germaine said because it was part of

4    the claims allowance process.

5                MR. CREMONA:  Fair enough, Your Honor.  But

6    clearly, In Re EXBS, as we discussed at length, I think

7    which is applicable here, found that the purported

8    withdrawal of a claim was null and void and struck a right

9    to a jury trial as a result.  The facts of this case, Your

10   Honor, all four as we --

11               THE COURT:  So you don't want to submit any

12   further pleadings on this motion.

13               MR. CREMONA:  We're happy to submit them as soon

14   as Your Honor would like, but we don't want to delay the

15   trial that is scheduled to go forward.

16               THE COURT:  Well, that may be inevitable.  Because

17   there's no point in my trying a case where I don't have

18   jurisdiction and they have a right to a jury trial, and this

19   is not a simple issue.

20               MR. CREMONA:  Well, I think there are additional

21   factual issues.  I know I mentioned --

22               THE COURT:  There are certainly factual issues.

23   There are a lot of factual issues.  The question is whether

24   there are factual issues relating to the claims allowance

25   process where she has withdrawn the claims.

1          MR. CREMONA:  Right, which -- she, on the one

2     hand, is maintaining that this is not a Ponzi scheme, which

3     directly would implicate the calculation of avoidance

4     liability and net equity.  So, I mean, I think that is an

5     issue.

6          THE COURT:  But can't you argue -- I mean, what

7     you're saying (indiscernible) is that her withdrawal --

8     under principles of res judicata, her withdrawal with

9     prejudice of her claim and her objections forecloses the

10    argument that the profits were fictitious under the net

11    equity decision -- or were not fictitious, I guess, under

12    the net equity decision.  Isn't that really what this is

13    about?

14         MR. CREMONA:  Well, I think we discussed this last

15    time, right?  This oral motion is -- gets us halfway there.

16    I hear that there is a motion to withdraw with prejudice.

17    However, as Your Honor recognized many times, Judge Rakoff

18    recognized, the claims allowance and the calculation of

19    avoidance liability, as well as value under 548(c), as well

20    as net equity, are all inextricably intertwined.

21         THE COURT:  Well, she's not arguing with the

22    calculations anymore, as I understand it.

23         MR. CREMONA:  Well, but she's contesting that it's

24    a Ponzi scheme would necessarily implicate those

25    calculations.  So my point is that --

Page 26

1            THE COURT:  Then don't you argue that the

2    withdrawal of prejudice precludes her from arguing that

3    they're not fictitious profits?

4            MR. CREMONA:  That's my point.

5            THE COURT:  So why don't you make a motion for

6    summary judgment?

7            MR. CREMONA:  That's fine, Your Honor.  My point

8    is, if she's going to make that -- if she -- if that motion

9    is granted, that has to have the res judicata effect of

10   foreclosing all of the defenses that are still being

11   maintained.

12           THE COURT:  But you can make -- I'm not going to

13   decide that today.

14           MR. CREMONA:  I understand.

15           THE COURT:  And then, you know, when I read --

16           MR. CREMONA:  I'm just trying to make, you know --

17           THE COURT:  I read the pretrial order.  And with

18   the stipulations, putting aside the issue of whether or not

19   there was a Ponzi scheme, they were just all legal issues

20   really, and the issue of whether or not the transfer was by

21   Madoff individually or, you know, by BLMIS, which was raised

22   in the pretrial order.

23           MR. CREMONA:  Your Honor, we're happy to make a

24   motion for summary judgment in response to this oral motion.

25           THE COURT:  You can make a motion for summary

1    judgment, like how you're going to deal with the Ponzi

2    scheme issue.  I mean, I guess you can put in Devinsky's

3    report, and he'll opine that, you know, there was no trading

4    and old money -- or new money was used to satisfy the

5    withdrawals of old money.

6             MR. CREMONA:  I think the problem, though, is we

7    again are forgetting one important fact here, Your Honor.

8    We worked with Miss Neville for over a year on our Rule 56

9    statement.  We were never able to reach agreement on

10   stipulated facts.

11            THE COURT:  Because she's not willing to concede

12   that it's a Ponzi scheme.

13            MR. CREMONA:  Exactly.

14            THE COURT:  But she's conceding everything else

15   basically, and you direct --

16            MR. CREMONA:  I understand that, but it still

17   leaves the issue of a trial that is necessary on the Ponzi

18   issues, which is what we were prepared to do and go forward

19   with.

20            THE COURT:  Unless her withdrawal with prejudice

21   of her claim and objections precludes her from making that

22   argument.  If it doesn't, well, that's an issue for trial,

23   for a jury, isn't it?  It's not part of the -- it's just not

24   part of the claims allowance process anymore.

25            Look, are you opposing -- let me take a step back.

1    Forget about the date of the trial.  Are you opposing her

2    application to withdraw her claims and her objections with

3    prejudice?

4                 MR. CREMONA:  Yeah, I guess I'd like to confer,

5    Your Honor, this is --

6                 THE COURT:  Or are you not opposing it, but saying

7    it doesn't matter for jurisdictional purposes.

8                 MR. CREMONA:  I agree with that, it does not

9    matter.

10                THE COURT:  Well, I'm not saying that's the

11   ruling.

12                MR. CREMONA:  Well, that is our -- well --

13                THE COURT:  So just tell me what you -- what's the

14   result you're looking for, then I'll know what you're

15   arguing.

16                MR. CREMONA:  The result we're looking for is to

17   move forward with the trial.

18                THE COURT:  Yeah, but that's not a legal result.

19                MR. CREMONA:  Well, Your Honor, we've not

20   addressed any of the jurisdictional issues that I'm prepared

21   to address that were the subject of these motions.  I don't

22   think that, as I've said, the withdrawal of the claim,

23   whether granted or not, I guess Your Honor would have

24   jurisdiction.  Because a claimant and subsequent defendant

25   that submits itself to this Court's jurisdiction or any

Page 29

1    bankruptcy court's jurisdiction for the equitable resolution

2    of their claims does so with respect to all disputes that

3    are -- result from that claim, and that is squarely this

4    case.

5              And the defendants cannot, on the one hand, invoke

6    Your Honor's jurisdiction when it suits them and

7    subsequently, disavow it when may suit them as well.

8              THE COURT:  She's taking a chance on the res

9    judicata argument, but -- so you don't want to put in any

10   further papers.

11             MR. CREMONA:  We do, Your Honor.  We will do that.

12   We certainly --

13             THE COURT:  When will you put them in?

14             MR. CREMONA:  We will do that, yeah, a week from

15   today.

16             THE COURT:  Do you have an argument date before

17   Judge Broderick?

18             MS. NEVILLE:  We don't have an argument date; we

19   just have a briefing schedule, Your Honor.

20             THE COURT:  All right.  So a week from today is

21   what day?

22             MR. CREMONA:  December 5th.

23             THE COURT:  I'll give you a week to respond, okay.

24   But in the meantime, you can submit an order with her

25   consent, vanilla order withdrawing her claims and her

Page 30

1    objections with prejudice.

2           MS. NEVILLE:  Your Honor, why don't I prepare it

3    so that I don't have to fight over it.

4           THE COURT:  I don't think you'll have to fight

5    over it.  I mean, I could enter it today.  Why don't you do

6    this?  Email her a copy of the order.  If you have an

7    objection, tell him, and then we'll have a phone conference

8    and I'll go over the order.

9           MS. NEVILLE:  Okay.

10          MR. CREMONA:  Okay.

11          MS. NEVILLE:  Okay.

12          THE COURT:  I'll give you until 12/12, Ms.

13   Neville, to file a reply.  I'll obviously adjourn the trial,

14   same idea.  Let me give you an adjourn date for your motion

15   for a stay.  Is there any way -- well, never mind.

16          MS. NEVILLE:  What were you going to say, Your

17   Honor?

18          THE COURT:  I was going to say if there's a way to

19   find out an argument date from Judge Broderick because I

20   don't want to step on his toes.

21          MS. NEVILLE:  What I was going to suggest is that

22   I communicate with --

23          THE COURT:  Judge Broderick.

24          MS. NEVILLE:  -- Judge Broderick.

25          THE COURT:  Well, he's probably going to say, wait

1    until I decide this issue.  But just -- I can't -- you know,

2    you can certainly go ahead and ask him for an argument date.

3    I can't tell you not to.  Why don't we adjourn this to

4    December 19th.

5            MS. NEVILLE:  The stay motion.

6            THE COURT:  Yeah.  Well, it's kind of academic at

7    this point because the trial is effectively stayed by virtue

8    of the pleading.  At 10:00, okay?

9            MS. NEVILLE:  Yes, Your Honor.  And the schedule

10   for the briefing on the withdrawal of the claim is their

11   response is due next Friday?

12           THE COURT:  Next -- the 5th, a week from today,

13   and your reply, if any, is due the 12th.

14           MS. NEVILLE:  And the 12th, thank you.

15           THE COURT:  Oh, we have a conference regarding the

16   trial in Nelson?

17           MR. CREMONA:  I'm sorry, Your Honor?

18           THE COURT:  We have a conference regarding the

19   trial of Nelson?  What was the problem?  I know he had a hip

20   replacement, or he had some medical issue.

21           MR. HUNT:  There are two cases here: one with

22   Carol Nelson for 455,000, and one for Carol and Stanley

23   Nelson for 2.6 million.  Last time we were here I thought

24   was going to be the last time we'd be here on this issue,

25   but nevertheless, here we are.

1          Ms. Chaitman said in the hearing last time that

2     the whole month of May was free for her, and you said even

3     that seemed like a long time to wait.

4          The Court did accommodate Mrs. Nelson's knee

5     surgery, which was in January.  And apparently, she must be

6     feeling better because Ms. Chaitman has scheduled her case

7     first.

8          THE COURT:  When is her case scheduled for?

9          MR. HUNT:  It's scheduled -- well, our target

10    dates are May 8th through 10.

11          THE COURT:  Okay.

12          MR. HUNT:  I think we may have checked with the

13    Court to confirm that those dates are available.

14    Interestingly, that's the low value claim, $455,000 claim.

15          THE COURT:  Can we -- putting aside medical

16    issues, can we try these two cases together?

17          MR. HUNT:  That was exactly what we have proposed,

18    Your Honor, on multiple occasions.  And in our letter, we

19    included the email correspondence back and forth with Ms.

20    Chaitman where she refused to do that.

21          THE COURT:  Any reason?

22          MR. HUNT:  I think that we can try both of them in

23    three days.  The witnesses are the same, the experts are the

24    same.

25          THE COURT:  The issues are the same except for the

Page 33

1    deposits and withdrawals, right?

2            MR. HUNT:  The only thing that we have to do is

3    confirm the deposits and withdrawals.  And actually, that

4    should be relatively straightforward.  So whether they're

5    consolidated or just tried back to back, I think we can

6    accommodate things pretty quickly.

7            THE COURT:  All right.  Let me hear from you on

8    the consolidation issue, the consolidation of the trials,

9    Mr. Dexter.

10           MR. DEXTER:  Yes, Your Honor.  Our position --

11   Greg Dexter here on behalf of the Nelson defendants.  Our

12   position is that we don't think it's fair to subject a woman

13   in her late 80s to back-to-back trials when she's going to

14   be here and she's already taking on the strenuous task of

15   having one trial.  We don't think it's fair to have another

16   trial.

17           THE COURT:  So let's try them together, then

18   she'll only be here once.

19           MR. DEXTER:  We think she needs a break.  We don't

20   want to consolidate them.  When Your Honor had the

21   conference in October with Ms. Chaitman, there was no

22   discussion about consolidating them.  Ms. Chaitman said

23   she'd give dates in May; she gave dates in May.  We have a

24   trial schedule.

25           THE COURT:  Let me give you this choice.  We can

Page 34

1   try them back to back in May, or we can consolidate them and

2   just try them together; they're the same issues.

3          MR. DEXTER:  What we're asking for simply is a

4   trial in June for the main case, which has the two Nelson

5   defendants; that's all we're asking for.  We're asking for -

6   -

7          THE COURT:  Is there an objection to that?

8          MR. HUNT:  Yes, Your Honor.  We, you know, have

9   been waiting a long time.  We think that they're just trying

10  to schedule the low value case first and delay.

11         THE COURT:  Why don't we do this?  Why don't you -

12  - I'm going to issue an order, oral order to show cause, Mr.

13  Dexter, why the cases should not be consolidated for trial

14  for the reasons I've said.  It's basically the same issues;

15  the only difference is the deposits and withdrawals from the

16  respective accounts.

17         And, you know, you may disagree with them, but I

18  assume they're going to prove them through Miss Collura and

19  Mr. Greenblatt.  And having gone through the PW trial, it's

20  not going to take a lot of time.  Then, you know, it's the

21  same issues whether there was a Ponzi scheme; maybe some of

22  these legal issues that I've been discussing with Miss

23  Neville will come up.  But how long do you need to respond

24  to that motion?

25         MR. DEXTER:  We can respond in seven days.

Page 35

1          THE COURT:  Okay.  So you file your response --

2     let me just finish this.

3          MR. DEXTER:  Okay.

4          THE COURT:  So you file your response to my -- so

5     your response will be due the 5th.

6          MR. HUNT:  That's right.

7          THE COURT:  Any reply will be due the 12th.  I'll

8     adjourn it to the 19th.  And then we'll just fix the second

9     trial date either as part of the first trial or I'll fix it

10    for afterwards.

11         MR. HUNT:  That sounds great to us.

12         THE COURT:  Okay.

13         MR. HUNT:  Thank you.

14         MR. DEXTER:  Your Honor, along with that briefing,

15    I would like to request permission to file a motion for an

16    adjournment of these trials, given that the Trustee just

17    yesterday, or it may have been the day before that, amended

18    his initial disclosures in all of the cases except these two

19    cases and the (indiscernible) case to disclose at least a

20    dozen witnesses who the Trustee asserts has knowledge and

21    who, if the Trustee's amended disclosures are accurate,

22    should have been disclosed earlier and should have been

23    disclosed in this case.  So we'd like to brief that issue.

24         THE COURT:  What is this?

25         MR. HUNT:  Some of the cases still have discovery

Page 36

1    ongoing, and we've amended our initial disclosures.

2           THE COURT:  Well, what he's saying is that they

3    should have been disclosed initially.  And, okay, you're

4    supplementing the record.  You know, these people may have

5    evidence that's relevant to his adversary proceeding.  In

6    other words, if you're going to call traders, identify

7    traders and say, we never traded a single security or

8    something like that.

9           MR. HUNT:  We're not planning on calling any of

10   those witnesses in this case.

11          THE COURT:  No, but they still may have knowledge.

12   Do you just have to list your witnesses, your proposed

13   witnesses?

14          MR. HUNT:  You have to list the people who you

15   think you will rely on at trial.

16          MR. DEXTER:  Or who have discoverable information.

17          THE COURT:  I don't know.  Remember the last time

18   I looked at Rule -- well, I mean, I guess the answer is, you

19   can always seek to reopen discovery if you think there's a

20   basis to it.  You don't have to delay the trial yet because

21   the trial isn't until May.  I mean, I guess you could --

22          MR. HUNT:  I agree.  If he wants to file a motion

23   on that issue, he can.  I think it's going to be denied.

24          THE COURT:  Where's the provision for what you

25   have to disclose editorially?  What is it, 26(b)?  Where's

1    that provision for the contents of the mandatory

2    disclosures?

3              MR. HUNT:  I think it's 26(b), but I don't know.

4              MS. NEVILLE:  I think it's 26, Your Honor.

5              THE COURT:  I know it's in 26, but it's a long

6    rule.  All right.  Well, I guess the answer is that, you

7    know, if you -- let me cut to the chase here, Mr. Dexter.

8    If you think that there is a basis for delaying the trial,

9    reopening discovery, whatever it is, obviously, you can file

10   a motion, and then I'll consider it.

11             MR. HUNT:  Yeah, it's the rule.

12             THE COURT:  I'm not going to tell you you can't

13   file the motion.

14             MR. HUNT:  The rule is what I said it was.  It's

15   people who we may use to support our claims or defenses.

16             THE COURT:  Okay.  Well --

17             MR. HUNT:  We're not going to use it.

18             THE COURT:  It may be -- that may be the answer to

19   the question, but I don't know.

20             MR. DEXTER:  Okay.  So we'd like to brief that

21   together in this case.

22             THE COURT:  Did you take discovery in these cases

23   in Nelson?

24             MR. DEXTER:  Quite honestly, I'm not familiar with

25   what discovery was taken in this case.

1              THE COURT:  Okay.  Well, if he didn't have to

2      disclose it and you didn't ask it, you may be out of luck.

3              MR. HUNT:  Your Honor, the record is that we took

4      discovery.

5              THE COURT:  They didn't take any discovery in

6      these cases?  All right.  So I guess you can make your

7      motion.  But in the meantime, I'll adjourn the consolidation

8      issue to 12/19.  File your response, you can file your

9      response.  I have to tell you I'm inclined to grant it.

10     There are just so many common issues of law in fact.

11             And you're telling me it's a strain for Mrs.

12     Nelson, who I understand is elderly, to be here for an

13     extended period of time.  But it seems to me that it's in

14     her best interest to just try the cases together, because

15     the actual deposits and withdrawals will only take a few

16     minutes.

17             MR. DEXTER:  If it was in her best interest, she

18     would certainly consent, but she feels that it isn't.  All

19     the exhibits are different; there are different legal

20     issues.

21             THE COURT:  What are the different legal issues?

22             MR. DEXTER:  There's different accounts.

23             THE COURT:  What are the different legal issues?

24             MR. DEXTER:  Well, one of the accounts is an IRA,

25     which implicates a host of legal issues.

1           THE COURT:  Like what?  Well, but those are legal

2     issues.  I mean, the witnesses are here to testify about the

3     facts.  What are the different factual issues?

4           MR. DEXTER:  Well, we're going to have motions in

5     limine, right?  And those are due seven or 14 days before

6     trial.

7           THE COURT:  But how are they different?  That's

8     what I'm asking you.  In other words, all -- except for the

9     deposits and withdrawals, all of the factual issues are the

10    same, aren't they?

11          MR. DEXTER:  Well, all of the facts are different;

12    they're different facts, there's different evidence, they're

13    different accounts.

14          THE COURT:  Aside from the withdrawals and the

15    deposits, what different evidence is there?

16          MR. DEXTER:  Well, that's pretty much the primary

17    evidence.

18          THE COURT:  That's not going to take -- that's not

19    going to take very long though.

20          MS. NEVILLE:  Your Honor, may I answer that?

21    Because I have a lot of those cases.

22          THE COURT:  No, I'm not asking you.

23          MS. NEVILLE:  Okay.

24          THE COURT:  You sit down.

25          MR. DEXTER:  Well, there was also trading of

Page 40

1    different securities in their accounts.  We do have evidence

2    that Madoff was actively trading securities in these

3    accounts.  We're going to put on that evidence.

4              THE COURT:  You can provide that information.  I

5    can still consolidate the trial for certain issues.  For

6    example, if you're going to argue that there was never a

7    Ponzi scheme, that's something I could certainly

8    consolidate, right?  I don't have to -- where insolvency is

9    an issue, I can certainly consolidate that.

10             MR. DEXTER:  I don't think so, because if I'm not

11   mistaken, Your Honor just denied the Trustee's motion to

12   consolidate for that very issue.

13             THE COURT:  But that was because some of the

14   cases, the parties didn't have claims and were entitled to

15   jury trials and, you know, reasons like that.  The Nelsons

16   are similarly situated in the sense that they filed claims,

17   you know, they've gone up to Judge Daniels, they've come

18   back, and Judge Daniels has ruled that I can try these

19   cases.  So I don't have those concerns.

20             But why don't -- rather than answering me now

21   since I'll give you a chance to put it on paper, and you can

22   explain to me with specificity why the -- you know, why the

23   issues or fact of law are sufficiently different that it

24   doesn't make sense to try these cases together.  It sounds

25   for medical reasons, it does make sense to try them

Page 41

1    together, so you might want to think about that also.

2              MR. DEXTER:  Okay, Your Honor.  We look forward to

3    the opportunity.

4              THE COURT:  I mean, legal issue, nobody has to be

5    here except you and the Trustee's counsel for legal issues.

6    I'm not concerned about that.

7              MR. DEXTER:  Well, we're going to have to file

8    motions in limine.  And if we're filing them in two cases in

9    the same week, that does impose a bit of a burden on

10   counsel.

11             THE COURT:  Unless they're the same motions.

12             MR. DEXTER:  Maybe, but I think each defendant

13   (indiscernible) made to assume (indiscernible).

14             THE COURT:  I'll see you on the 19th.  Thank you.

15             MR. DEXTER:  Thank you, Your Honor.

16             THE COURT:  I look forward to reading your

17   response.  All right.  The Trustee's omnibus objection.

18             MR. BLANCHARD:  Thank you, Your Honor.  Jason

19   Blanchard for the Trustee.

20             THE COURT:  A new face.

21             MR. BLANCHARD:  Excuse me, Your Honor?

22             THE COURT:  A new face.

23             MR. YESKOO:  Two new faces, Your Honor.

24             THE COURT:  All right, go ahead.

25             MR. BLANCHARD:  Before Your Honor is FGLS' partial

Page 42

1    objection to the Trustee's 23rd omnibus claims motion.

2    FGLS' objection is primarily based on its argument that it

3    should receive full credit for an inter-account transfer of

4    approximately $3 million of entirely fictitious profits on

5    the basis that the Trustee failed to explain the basis for

6    treating that transfer as a zero-dollar transfer in his SIPA

7    determination letter.

8              THE COURT:  Well, I think he's saying you failed

9    to provide the evidence underlying what it is you said or

10   what the Trustee said.

11             MR. BLANCHARD:  Well, 3007 addresses --

12             THE COURT:  And the basis is the deposits were

13   less than the withdrawals.

14             MR. BLANCHARD:  Well, he hasn't -- he hasn't

15   contested the Trustee's application or the calculations.

16             THE COURT:  Well, he has because he's saying on

17   one particular deposit, you gave him zero and he's entitled

18   to 3.1 million or something like that.

19             MR. BLANCHARD:  But he doesn't dispute the

20   Trustee's calculation; he only addresses the failure to

21   explain --

22             THE COURT:  Right, okay.

23             MR. BLANCHARD:  -- the basis in the determination

24   letter itself.

25             THE COURT:  Right.

Page 43

1                MR. BLANCHARD:  And we would submit that we've

2       explained that the basis for treating it as zero.  And, for

3       example, the 2010 complaint that we filed against FGLS was

4       simply referenced through the letter, where we explained

5       that the transfer only received principal credit to the

6       extent there was principal in the transferor account at the

7       time of the transfer, i.e., the inter-account transfer

8       method.

9                We've also had offline discussions before he filed

10      the omnibus objection with FGLS' current counsel explaining

11      the basis for the determination.  So in our view, it's

12      almost disingenuous to say that they didn't have notice of

13      the particular reason for the treatment of that zero dollar.

14                THE COURT:  Let me hear from your adversary.

15                MR. YESKOO:  Your Honor, Richard Yeskoo, Yeskoo

16      Hogan & Tamlyn, for FGLS.

17                THE COURT:  Welcome.

18                MR. YESKOO:  Thank you, Your Honor.  Hopefully,

19      this is my last time (indiscernible).

20                THE COURT:  I don't take that as an insult.

21                MR. YESKOO:  No, no, no.  It's, you know, this is

22      my last remaining case with the Trustee, and all the other

23      ones have been resolved.

24                THE COURT:  Well, hopefully, you'll have more.

25                MR. YESKOO:  Well --

Page 44

```
 1              THE COURT:  Not necessarily with this Trustee.

 2              MR. YESKOO:  Okay.  So I think the key issue in

 3   this case is when the Trustee makes a determination, what

 4   kind of information does he have to give to the claimant?

 5              THE COURT:  Doesn't the claims procedure order

 6   deal with that?

 7              MR. YESKOO:  Yes, it does.

 8              THE COURT:  What does it say?

 9              MR. YESKOO:  What the procedure -- the claims

10   procedure order says is, you have to give us the

11   determination and the reason for the determination.

12              THE COURT:  And he gave the reason, the

13   withdrawals exceeded the deposits.  What more do you have to

14   know?

15              MR. YESKOO:  If you look at the determination

16   letter, which is next to my affidavit, is Exhibit 1.  What

17   they said is, we're giving you credits for $3.4 million, and

18   the reason is your deposits exceeded your withdrawals.  It

19   did not say anything about why they were not giving any

20   credit for the transfer from another BLMIS account.  It was

21   totally silent on that issue.

22              THE COURT:  Well, why do they have to do that in a

23   determination letter, or why does he have to do that in a

24   determination letter?

25              MR. YESKOO:  Because the claimants procedure order
```

1     says you have to give us the reason you're not giving us any

2     credit for that initial 3.1 million transfer.

3               THE COURT:  Well, maybe it's how we define reason.

4               MR. YESKOO:  Pardon?

5               THE COURT:  Maybe it's how you define reason

6     you're contesting his computations.

7               MR. YESKOO:  We're not contesting his computations

8     at this time, Your Honor, I mean, the objection.

9               THE COURT:  So you agree that this is your net

10    equity claim.  But -- so what are you seeking?

11              MR. YESKOO:  What we're saying is this was an

12    objection timely made.

13              THE COURT:  Right.

14              MR. YESKOO:  At the time within -- by, you know,

15    prior counsel, which said this determination letter is

16    defective.

17              THE COURT:  Okay.

18              MR. YESKOO:  Because you didn't give us the reason

19    you're ignoring this initial $3.1 million.  And so, it's

20    essentially what we're doing is essentially pressing our

21    motion to dismiss that determination letter.  And we're

22    suggesting that the same standards that you apply to a

23    complaint or --

24              THE COURT:  Let me ask you a question, same

25    standards.  Who has the burden of proof on the question of

1    the amount of your claim?

2            MR. YESKOO:  We have the burden of proof as to our

3    objection.  I concede that.

4            THE COURT:  Okay.

5            MR. YESKOO:  But what our objection is, not to the

6    Trustee's calculation.  We had to withdraw that subsequent

7    to the Second Circuit opinion.  Our objection is, you didn't

8    follow the rules and you lose, and we've sustained that

9    burden of proof, Your Honor.

10           THE COURT:  How have you sustained the burden of

11   proof?

12           MR. YESKOO:  Because all I have to do is point to

13   their determination letter, and there's no reason given for

14   ignoring that initial transfer.

15           THE COURT:  But that assumes you made out a prima

16   facie case.  How have you done that?

17           MR. YESKOO:  A prima facie case.  I'm not the

18   plaintiff.

19           THE COURT:  Well, the filing --

20           MR. YESKOO:  I'm essentially putting an

21   affirmative --

22           THE COURT:  Okay.  So you admit though that you

23   haven't made out your prima facie case.  So if you haven't

24   done that, he doesn't have to do anything.

25           MR. YESKOO:  No, I think that's putting the cart

1  before the horse.  Because essentially, you have two things

2  here: there's a motion to dismiss, coupled with a factual

3  defense that you would have to go trial in terms of all the

4  withdrawals.

5          THE COURT:  What's the factual defense?

6          MR. YESKOO:  The factual defense asserted with the

7  objection was, listen, we don't know what it was.  But if

8  you're relying on the net equity, we don't know how much C&P

9  actually had in its account, whether they were a net winner

10  or a net loser.

11          THE COURT:  You analogize to an answer.  And

12  normally, if you have -- you allege a fact in support of

13  your affirmative case, all the defendant does is deny it.

14  He doesn't have to give a reason why he's denying it, right?

15          This isn't -- in other words, what the Trustee is

16  asserting, I'm saying it's not a defense.  He's saying he

17  just disagrees with your calcula- -- with your claim.

18          MR. YESKOO:  But he had to give a reason.

19          THE COURT:  He gave a reason.

20          MR. YESKOO:  No, he didn't.  I mean, that's our

21  fundamental disagreement, Your Honor.  If you say he gave a

22  sufficient reason, I lose this motion.

23          THE COURT:  How were you -- let me ask you a

24  question.  How were you -- or how was your client prejudiced

25  by the failure of the Trustee to say the reason we gave you

1   zero credit for the initial inter-account transfer was that

2   there was nothing in the transferor account at the time.

3            MR. YESKOO:  My problem is, since I'm --

4            THE COURT:  I'm just asking you how you're

5   prejudiced.

6            MR. YESKOO:  Yeah, no, I know, but I want to

7   explain.

8            THE COURT:  You didn't know --

9            MR. YESKOO:  I want to deal with it directly, Your

10  Honor.

11           THE COURT:  You didn't know what he was talking

12  about?

13           MR. YESKOO:  No, no, no, no.  I wasn't the counsel

14  at that time.

15           THE COURT:  Well, I understand that.

16           MR. YESKOO:  Stanley Arkin was the counsel.

17           THE COURT:  But you're just an agent for a

18  principal.

19           MR. YESKOO:  Right.

20           THE COURT:  So how was the principal prejudiced?

21           MR. YESKOO:  So I don't know what happened.  We

22  have an adverse position with all these counsel now, so I

23  don't know what happened with Mr. Arkin, who's retired, or

24  with his subsequent counsel.

25           THE COURT:  I'm asking a completely different --

1           MR. YESKOO:  I don't know if FGLS was prejudiced

2      or not.  I mean, that's the plain blunt answer.

3           THE COURT:  So -- well, you think FGLS didn't know

4      the reason for the zero value?

5           MR. YESKOO:  I mean, that goes to Mr. Arkin's --

6      assuming Mr. Arkin is as good as he is.  And I've met him

7      and worked with him on a case and, believe me, he's very

8      good.  He probably figured it out.

9           THE COURT:  Well, isn't it set forth though in the

10     2010 complaint?

11          MR. YESKOO:  Yes, it is, Your Honor.

12          THE COURT:  So the question --

13          MR. YESKOO:  And you can't rely on that, Your

14     Honor.  I mean, that's --

15          THE COURT:  No, no, no.  I'm asking a different

16     question.  You're saying it's not part of the determination,

17     and I'm asking about prejudice.  So even if you're right,

18     it's not part of the determination.  Obviously, FGLS knew

19     what the Trustee was talking about when he attached a chart

20     which duplicated, in all material respects, the chart that's

21     attached to the complaint as Exhibit B.

22          MR. YESKOO:  I assume Mr. Arkin figured it out.  I

23     can't say of my own personal knowledge, Your Honor.

24          THE COURT:  Well, whether or not he read it, you

25     know, I have to impute that to him.  So it's pretty clear

Page 50

1     that your client was not prejudiced by that, right?

2              MR. YESKOO:  Might be.  I'm not going to concede

3     that, Your Honor, because I don't have the personal

4     knowledge.

5              THE COURT:  All right.  Just tell me how they're

6     prejudiced.

7              MR. YESKOO:  I'm drawing a blank, Your Honor.

8              THE COURT:  Okay.  Anything else?

9              MR. YESKOO:  No.

10             THE COURT:  Okay.  Any response?

11             MR. BLANCHARD:  Not unless Your Honor has any

12    questions.

13             THE COURT:  All right.  I'm going to overrule the

14    objection of FGLS to what is essentially a motion to strike

15    the determination, the claims procedure order on several

16    grounds.

17             First of all, the claims procedure order just says

18    that the Trustee has to give the basis for his objection,

19    and he gave the basis in the determination letter.  He said

20    the withdrawals exceeded the deposits; he included a chart

21    that duplicated the chart that was attached to the 2010

22    complain and gave zero credit for the initial inter-account

23    transfer that opened the account.

24             He doesn't really have to do anything more.  First

25    of all, as counsel concedes, he has the burden of proof, and

Page 51

1    all the Trustee really has to do is deny the claim.  But he

2    didn't just deny it; he said, okay, you have a -- because

3    you put in a claim, I think for about $12 million, which was

4    based on the last statement which was rejected by the net

5    equity decision.

6            So instead of just denying it, he said, you know

7    what, I think you have a claim of $3.4 million, and he gave

8    the basis for that.  Which was, I said, was that the

9    deposit, there was no trading in the account and the

10   withdrawals exceeded the deposits.

11           In addition, there's a history to this.  The

12   Trustee sued FGLS in 2010 on a preference theory, attached a

13   printout of the account, which, again, gave zero credit to

14   the initial transfer.  And in a footnote to that particular

15   chart said, in substance, the reason you're getting zero for

16   that is there was no money in the transferor account; it's

17   all fictitious profits.

18           And then even the objection refers to the inter-

19   account transfer decision and given the only objection that

20   was really raised to the determination.  Everybody knew that

21   the objection focused on giving zero credit under the inter-

22   account transfer decision to the initial deposit, and the

23   reason for that is there that there were only fictitious

24   profits in the transferor account.

25           And finally and relatedly, FGLS wasn't prejudiced

1    because FGLS always knew the reason for the denial because

2    it was set forth in the 2010 complaint.  Which, again, the

3    chart duplicates in all -- the chart to the determination

4    letter duplicates in all material respects what was there.

5            And, yes, maybe it didn't incorporate the

6    footnote, but it's pretty apparent from the history of the

7    case.  And considering this all occurred in 2015 after the

8    inter-account transfer issue, that that was the reason for

9    it.

10           So is there otherwise any other objections,

11   further objections to the Trustee's determination?

12           MR. YESKOO:  No, those were withdrawn, Your Honor.

13           THE COURT:  Okay.  So the Trustee can submit an

14   order, I guess, fixing the net equity claim to $3.45

15   million, which is the result and you'll get paid, I guess.

16           MR. YESKOO:  We've been paid already, Your Honor,

17   on that.  Thank you.

18           THE COURT:  Okay.

19           MR. BLANCHARD:  Thank you, Your Honor.

20           THE COURT:  All right, thank you.

21           (Whereupon these proceedings were concluded at

22   10:58 AM)

23

24

25

Page 53

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 29, 2018

[& - amended]                                                                          Page 1

**&**

**&**   4:3 5:2,15
43:16

**0**

**08-01789**   2:1 3:11
**08-99000**   1:3

**1**

**1**   44:16
**10**   32:10
**10-04377**   1:14 3:8
**10-04390**   1:5 3:1
3:6
**10-04658**   3:9
**1000**   5:9
**10004**   2:12
**10020**   5:4
**10022**   5:17
**10023**   4:6
**10111**   4:13
**10:00**   31:8
**10:03**   2:15
**10:58**   52:22
**1100**   4:21
**11501**   53:23
**12**   51:3
**12/12**   30:12
**12/19**   38:8
**1221**   5:3
**12th**   31:13,14
35:7
**14**   39:5
**1667**   5:9
**19th**   31:4 35:8
41:14

**2**

**2.6**   31:23
**20**   20:13
**20006**   5:10
**2010**   43:3 49:10
50:21 51:12 52:2
**2015**   52:7

**2018**   2:14 53:25
**21**   20:13
**23**   20:13
**23rd**   42:1
**26**   36:25 37:3,4,5
**28**   2:14
**28th**   4:5
**29**   20:13 53:25

**3**

**3**   42:4
**3.1**   42:18 45:2,19
**3.4**   44:17 51:7
**3.45**   52:14
**300**   53:22
**3006**   22:10 23:8
**3007**   42:11
**306**   23:8
**330**   53:21

**4**

**41**   19:9,10,14
22:14
**45**   4:12
**455,000**   31:22
32:14
**465**   5:16
**490**   12:13

**5**

**5011**   3:3
**502**   17:10,16,18
17:21 18:11
**546**   13:25 14:8,8
**548**   9:21 10:16
11:18 14:6,11,15
14:17 25:19
**56**   27:8
**5th**   29:22 31:12
35:5

**7**

**77002**   4:22

**8**

**80s**   33:13
**811**   4:21
**8th**   32:10

**9**

**9/26**   19:4
**909**   4:5

**a**

**able**   7:10 27:9
**absolutely**   15:15
15:15
**academic**   31:6
**accept**   21:8
**accommodate**
32:4 33:6
**account**   7:15 18:3
42:3 43:6,7 44:20
47:9 48:1,2 50:22
50:23 51:9,13,16
51:19,22,24 52:8
**accounts**   17:14,25
34:16 38:22,24
39:13 40:1,3
**accurate**   35:21
53:4
**act**   17:23 21:16
23:8
**actively**   40:2
**actual**   38:15
**addition**   51:11
**additional**   15:13
24:20
**address**   28:21
**addressed**   14:11
28:20
**addresses**   42:11
42:20
**adjourn**   30:13,14
31:3 35:8 38:7
**adjournment**
35:16

**adjudicated**   11:22
18:15
**adjudicative**
16:24
**adjudicatory**
17:10 21:9
**adjust**   8:8
**adjusted**   9:12
**admit**   46:22
**admitted**   15:12
16:4,5
**adv**   1:5,14 2:1 3:9
**adversary**   6:24
7:1,13 9:16 12:10
12:13 13:23 14:23
15:13 17:7 18:12
19:20 21:9,12
23:4,11 36:5
43:14
**adverse**   48:22
**affect**   10:13
**affidavit**   44:16
**affirmative**   46:21
47:13
**agenda**   6:8,10
**agent**   48:17
**agree**   10:10 28:8
36:22 45:9
**agreement**   27:9
**ahead**   31:2 41:24
**al**   1:11,20 2:6
**allege**   47:12
**allowance**   9:8,18
11:20 13:17 17:1
18:23,25 20:1,4
21:10 23:12 24:4
24:24 25:18 27:24
**allowed**   6:24
12:22
**allows**   12:21
**amended**   35:17
35:21 36:1

**americas** 5:3
**amount** 46:1
**amounts** 11:12
**analogize** 47:11
**answer** 9:21 21:17
  23:6,14 36:18
  37:6,18 39:20
  47:11 49:2
**answering** 23:5
  40:20
**antecedent** 10:25
  11:1,16
**anymore** 25:22
  27:24
**apparent** 52:6
**apparently** 32:5
**appearing** 6:6
**applicable** 24:7
**application** 28:2
  42:15
**applies** 3:8 19:10
  19:10,10
**apply** 45:22
**approximately**
  42:4
**arguably** 22:16
**argue** 15:23 25:6
  26:1 40:6
**argued** 12:11
**arguing** 8:23
  25:21 26:2 28:15
**argument** 9:11
  10:23 11:15 13:15
  25:10 27:22 29:9
  29:16,18 30:19
  31:2 42:2
**arkin** 48:16,23
  49:6,22
**arkin's** 49:5
**articulated** 22:14
  23:2
**aside** 9:6,25 26:18
  32:15 39:14

**asked** 7:23
**asking** 34:3,5,5
  39:8,22 48:4,25
  49:15,17
**assert** 9:1,4 14:20
  20:18
**asserted** 14:20
  22:9 47:6
**asserting** 11:6
  20:23 21:2 47:16
**assertions** 7:4
**asserts** 35:20
**assume** 18:2 20:7
  34:18 41:13 49:22
**assumes** 46:15
**assuming** 23:6
  49:6
**attached** 49:19,21
  50:21 51:12
**attempted** 22:17
**attorneys** 4:4,11
  4:20 5:2,15
**authority** 16:24
  17:10 21:9
**automatically**
  17:23
**available** 11:12
  32:13
**avenue** 4:5 5:3,16
**avoid** 23:9
**avoidance** 25:3,19

**b**

**b** 2:21 3:4 17:10
  36:25 37:3 49:21
**back** 7:12 8:4,19
  9:2,6 10:23 14:1
  14:12 16:21 27:25
  32:19 33:5,5,13
  33:13 34:1,1
  40:18
**bad** 6:21
**badly** 8:9

**baker** 4:10,19 6:6
**balance** 20:17,23
  21:4
**bam** 1:11 5:2,15
  6:19
**bam's** 16:14
**bankruptcy** 1:1
  2:10,23 11:22
  29:1
**based** 7:3 8:16 9:9
  9:14 23:21,25
  42:2 51:4
**basically** 12:15
  27:15 34:14
**basis** 10:10 17:9
  23:2 36:20 37:8
  42:5,5,12,23 43:2
  43:11 50:18,19
  51:8
**began** 8:22
**begins** 13:14
**behalf** 6:6,18
  18:18 33:11
**believe** 49:7
**bell** 5:12
**bernard** 1:7,8,16
  1:17 2:6
**bernstein** 2:22
**best** 38:14,17
**better** 32:6
**bit** 41:9
**blanchard** 4:17
  41:18,19,21,25
  42:11,14,19,23
  43:1 50:11 52:19
**blank** 50:7
**blmis** 10:2,21
  11:20 26:21 44:20
**blunt** 49:2
**bottom** 6:25 23:12
**bowling** 2:11
**break** 33:19

**brief** 22:20 23:6
  35:23 37:20
**briefing** 29:19
  31:10 35:14
**briefly** 23:16
**broderick** 29:17
  30:19,23,24
**brown** 4:16
**burden** 41:9
  45:25 46:2,9,10
  50:25

**c**

**c** 3:3 4:1,8 6:1,2
  9:21 10:16 11:18
  14:6,11,15,17
  25:19 53:1,1
**c&p** 47:8
**calcula** 47:17
**calculated** 20:24
**calculation** 25:3
  25:18 42:20 46:6
**calculations** 25:22
  25:25 42:15
**call** 6:22 36:6
**called** 10:25
**calling** 36:9
**carol** 31:22,22
**carole** 5:6 6:17
**cart** 19:2 46:25
**case** 1:3,5,14 2:1
  7:3 8:4 10:18
  11:22,23,23,25
  12:1,6,13,20 13:4
  13:5 14:2,2 17:13
  17:14,14,18 20:19
  24:1,9,17 29:4
  32:6,8 34:4,10
  35:19,23 36:10
  37:21,25 43:22
  44:3 46:16,17,23
  47:13 49:7 52:7
**cases** 7:12 12:7
  17:2 23:21 31:21

32:16 34:13 35:18
35:19,25 37:22
38:6,14 39:21
40:14,19,24 41:8
**caught**  15:22
**cause**  6:13 34:12
**certain**  40:5
**certainly**  23:18
24:22 29:12 31:2
38:18 40:7,9
**certified**  53:3
**chaitman**  5:14
32:1,6,20 33:21
33:22
**chance**  21:23 22:6
22:19 29:8 40:21
**change**  9:17
**chart**  49:19,20
50:20,21 51:15
52:3,3
**chase**  37:7
**check**  7:18
**checked**  32:12
**choice**  33:25
**circuit**  11:25 14:7
15:3,6 46:7
**circumvent**  22:2
**claim**  3:13 6:24
7:2,2,4,5,20,24
8:8,8 9:10,19
10:13,16,21,24,24
11:6,7,11,19,20
13:19 14:16,19
15:6,14 16:7,13
16:14,23 17:7,9
17:16,22 18:8,15
19:7,16 20:5,18
20:21 21:10,16,17
21:22,25 22:3
23:25 24:8 25:9
27:21 28:22 29:3
31:10 32:14,14
45:10 46:1 47:17

51:1,3,7 52:14
**claimant**  28:24
44:4
**claimants**  3:12
44:25
**claims**  8:10 9:7
11:13 13:16 16:25
18:12,21,22,23,25
20:1,4 21:10
22:21 23:12,22
24:4,24,25 25:18
27:24 28:2 29:2
29:25 37:15 40:14
40:16 42:1 44:5,9
50:15,17
**clear**  49:25
**clearly**  24:6
**clerk**  6:3
**client**  7:15,18
47:24 50:1
**code**  18:8
**coin**  12:10 15:10
**collura**  34:18
**come**  10:19 34:23
40:17
**comes**  10:23
14:12
**common**  38:10
**communicate**
30:22
**comp**  15:11
**complain**  50:22
**complaint**  17:19
43:3 45:23 49:10
49:21 52:2
**completely**  10:10
13:9 48:25
**computation**  7:7
14:15,24 15:12
**computations**
45:6,7
**computed**  12:15
12:18

**computing**  12:25
**concede**  10:11
27:11 46:3 50:2
**concedes**  50:25
**conceding**  27:14
**concerned**  19:15
41:6
**concerns**  40:19
**concluded**  52:21
**confer**  28:4
**conference**  3:8
30:7 31:15,18
33:21
**confirm**  32:13
33:3
**connection**  16:25
**consent**  29:25
38:18
**consider**  10:18
37:10
**considering**  52:7
**consolidate**  33:20
34:1 40:5,8,9,12
**consolidated**  33:5
34:13
**consolidating**
33:22
**consolidation**
33:8,8 38:7
**constructed**  14:2
**construing**  14:7
**contents**  37:1
**contest**  7:19,21
**contested**  42:15
**contesting**  7:6,20
25:23 45:6,7
**copy**  30:6
**corporation**  2:3
5:8
**correct**  13:20
14:22
**correspondence**
32:19

**coterminous**  9:20
10:17 14:3
**counsel**  41:5,10
43:10 45:15 48:13
48:16,22,24 50:25
**count**  17:18
**country**  53:21
**coupled**  47:2
**court**  1:1 2:10 3:3
6:4,10,15 7:6,23
8:10,14,18,23
9:23 10:13,22
11:2,10,25 12:3
12:14,18,23 13:3
13:8,10,15,21
14:5,7,14,18,23
15:3,8,11,16,18
16:1,6,9,11,15,17
16:25 17:6,20
18:2,5,7,13,20
19:12,20,25 20:9
20:14,16,20 21:2
21:7,19,22 22:2,6
22:11,15,19 23:4
23:5,18 24:3,11
24:16,22 25:6,21
26:1,5,12,15,17
26:25 27:11,14,20
28:6,10,13,18
29:8,13,16,20,23
30:4,12,18,23,25
31:6,12,15,18
32:4,8,11,13,15
32:21,25 33:7,17
33:25 34:7,11
35:1,4,7,12,24
36:2,11,17,24
37:5,12,16,18,22
38:1,5,21,23 39:1
39:7,14,18,22,24
40:4,13 41:4,11
41:14,16,20,22,24
42:8,12,16,22,25

[court - dispute]

43:14,17,20,24
44:1,5,8,12,22
45:3,5,9,13,17,24
46:4,10,15,19,22
47:5,11,19,23
48:4,8,11,15,17
48:20,25 49:3,9
49:12,15,24 50:5
50:8,10,13 52:13
52:18,20
**court's** 23:23
28:25 29:1
**credit** 42:3 43:5
44:20 45:2 48:1
50:22 51:13,21
**credits** 44:17
**cremona** 4:15 6:5
6:6,12 18:17,18
19:1,19,22 20:10
20:15,17,22 21:5
21:13 22:5,8,12
22:16,24 23:15,20
24:5,13,20 25:1
25:14,23 26:4,7
26:14,16,23 27:6
27:13,16 28:4,8
28:12,16,19 29:11
29:14,22 30:10
31:17
**crystallizing** 8:3
**current** 43:10
**cut** 37:7

**d**

**d** 4:24 6:1,2 17:16
17:18,21 18:11
**d.c** 5:10
**damage** 7:3 10:24
**damages** 8:17
9:10,14 12:22
**daniels** 6:23 40:17
40:18
**date** 28:1 29:16
29:18 30:14,19

31:2 35:9 53:25
**dates** 32:10,13
33:23,23
**david** 5:24
**day** 29:21 35:17
**days** 32:23 34:25
39:5
**dead** 7:2
**deal** 27:1 44:6
48:9
**dean** 4:24
**debt** 10:25 11:1
11:16
**december** 29:22
31:4
**decide** 12:6 26:13
31:1
**deciding** 12:12
**decision** 7:13 8:15
8:21 9:9 11:17
13:25 25:11,12
51:5,19,22
**deeply** 7:1
**defective** 45:16
**defendant** 28:24
41:12 47:13
**defendants** 1:12
1:21 2:7 3:3 18:24
29:5 33:11 34:5
**defense** 9:4,21
10:17 11:21 13:9
13:11,14 14:3,15
15:7 47:3,5,6,16
**defenses** 8:24 9:2
10:19,19,20 12:15
12:24 13:4,24
14:13,19 15:13,19
26:10 37:15
**define** 45:3,5
**delay** 24:14 34:10
36:20
**delaying** 37:8

**denial** 52:1
**denied** 36:23
40:11
**dentons** 5:1 6:18
**deny** 47:13 51:1,2
**denying** 47:14
51:6
**deposit** 42:17 51:9
51:22
**deposits** 7:7 13:18
33:1,3 34:15
38:15 39:9,15
42:12 44:13,18
50:20 51:10
**designed** 23:8
**determination** 3:2
8:5,13,24,25
15:21 42:7,23
43:11 44:3,11,11
44:15,23,24 45:15
45:21 46:13 49:16
49:18 50:15,19
51:20 52:3,11
**determine** 13:23
**devinsky's** 27:2
**devoiding** 17:22
**dexter** 5:19 33:9
33:10,11,19 34:3
34:13,25 35:3,14
36:16 37:7,20,24
38:17,22,24 39:4
39:11,16,25 40:10
41:2,7,12,15
**difference** 12:25
13:5 34:15
**different** 12:14,19
12:21,24 13:9
17:3,4,25 38:19
38:19,21,22,23
39:3,7,11,12,12
39:13,15 40:1,23
48:25 49:15

**direct** 27:15
**directions** 17:5
**directly** 25:3 48:9
**disagree** 34:17
**disagreement**
47:21
**disagrees** 47:17
**disallowed** 8:8
15:4,5,5 17:23
18:9
**disavow** 23:24
29:7
**disavowed** 21:16
**disclose** 35:19
36:25 38:2
**disclosed** 35:22,23
36:3
**disclosures** 7:10
7:14 35:18,21
36:1 37:2
**discoverable**
36:16
**discovery** 35:25
36:19 37:9,22,25
38:4,5
**discretion** 18:8
**discuss** 23:1,15
**discussed** 19:4
21:14 22:9 23:3
24:1,6 25:14
**discussing** 34:22
**discussion** 16:20
33:22
**discussions** 43:9
**disingenuous**
43:12
**dismiss** 45:21
47:2
**dispose** 7:4
**disposed** 16:4
**disposing** 9:18
**dispute** 9:25 10:5
42:19

**disputes** 18:24 23:24 29:2
**distinction** 11:3
**district** 1:2 3:3
**documents** 7:15 7:17
**doing** 20:7 45:20
**dollar** 42:6 43:13
**dozen** 35:20
**drawing** 50:7
**due** 31:11,13 35:5 35:7 39:5
**duplicated** 49:20 50:21
**duplicates** 52:3,4

**e**

**e** 2:21,21 4:1,1 6:1 6:1,2,2 13:25 14:8 14:8 53:1
**earlier** 35:22
**ecro** 2:25
**editorially** 36:25
**effect** 10:15 15:24 26:9
**effectively** 31:7
**either** 35:9
**elderly** 38:12
**email** 30:6 32:19
**ended** 8:22
**enter** 30:5
**entered** 6:14
**entirely** 42:4
**entitled** 20:24 40:14 42:17
**entitlement** 21:3
**equitable** 22:2 29:1
**equity** 3:13 7:3,13 8:7,15,20,21,24 9:11 11:13 12:10 12:12,16,25 13:6 13:19 14:4,15,25 15:6,8,14 20:20

25:4,11,12,20 45:10 47:8 51:5 52:14
**escape** 21:21
**essentially** 8:23 9:1 11:5 45:20,20 46:20 47:1 50:14
**establish** 13:4
**estate** 10:21 11:3 11:4,7,8,11,21 14:12
**et** 1:11,20 2:6
**evaluate** 19:3
**everybody** 12:4 51:20
**evidence** 36:5 39:12,15,17 40:1 40:3 42:9
**exactly** 21:5 27:13 32:17
**example** 13:25 20:18 40:6 43:3
**exbs** 23:22 24:6
**exceeded** 44:13,18 50:20 51:10
**excuse** 41:21
**exhibit** 44:16 49:21
**exhibits** 38:19
**expedited** 3:1
**experts** 32:23
**explain** 40:22 42:5,21 48:7
**explained** 43:2,4
**explaining** 43:10
**extended** 38:13
**extent** 43:6

**f**

**f** 2:21 53:1
**face** 41:20,22
**faces** 41:23
**facie** 13:4,5 46:16 46:17,23

**fact** 9:17 13:11 21:24 27:7 38:10 40:23 47:12
**factor** 12:12
**factors** 19:10 22:14 23:3
**facts** 24:9 27:10 39:3,11,12
**factual** 10:5 19:25 20:4 24:21,22,23 24:24 39:3,9 47:2 47:5,6
**failed** 42:5,8
**failure** 42:20 47:25
**fair** 24:5 33:12,15
**familiar** 37:24
**feeling** 32:6
**feels** 38:18
**fgls** 3:13 4:4 41:25 42:2 43:3,10,16 49:1,3,18 50:14 51:12,25 52:1
**fictitious** 9:1,3 12:16,25 13:6 25:10,11 26:3 42:4 51:17,23
**fight** 30:3,4
**figure** 14:18 16:21
**figured** 49:8,22
**file** 11:7,11 22:20 30:13 35:1,4,15 36:22 37:9,13 38:8,8 41:7
**filed** 6:8 7:11,14 16:23 40:16 43:3 43:9
**filing** 21:15 41:8 46:19
**final** 8:6 9:17 16:24 17:10 21:8
**finally** 9:14 51:25

**find** 30:19
**fine** 11:7,11 20:3 26:7
**finish** 11:5 16:18 35:2
**first** 6:12,15 11:16 12:20 21:14 32:7 34:10 35:9 50:17 50:24
**fix** 35:8,9
**fixing** 52:14
**floor** 4:5
**focused** 12:8 51:21
**focuses** 18:11
**follow** 46:8
**following** 10:9
**footnote** 51:14 52:6
**forecloses** 25:9
**foreclosing** 26:10
**foregoing** 53:3
**forget** 28:1
**forgetting** 27:7
**forth** 32:19 49:9 52:2
**forward** 6:7 22:25 24:15 27:18 28:17 41:2,16
**found** 24:7
**four** 24:10
**frankly** 10:8 11:23
**fraud** 10:18,19 12:20 14:2
**fraudulent** 17:8
**free** 32:2
**friday** 31:11
**frolic** 6:22
**full** 42:3
**fully** 14:11 16:4
**fundamental** 47:21

**further**  24:12
29:10 52:11

**g**

**g**  6:1,2
**general**  11:3,6,8
11:11
**germaine**  24:1,3
**getting**  51:15
**give**  21:23 22:6,19
29:23 30:12,14
33:23,25 40:21
44:4,10 45:1,18
47:14,18 50:18
**given**  35:16 46:13
51:19
**gives**  7:2
**giving**  44:17,19
45:1 51:21
**go**  6:7,25 7:12
8:19 9:2,6 11:7,11
14:1 19:4 22:25
24:15 27:18 30:8
31:2 41:24 47:3
**goes**  49:5
**going**  17:4,6 22:1
26:8,12 27:1
30:16,18,21,25
31:24 33:13 34:12
34:18,20 36:6,23
37:12,17 39:4,18
39:19 40:3,6 41:7
50:2,13
**good**  6:5,17 49:6,8
**grant**  38:9
**granted**  26:9
28:23
**granting**  3:4
**great**  35:11
**green**  2:11
**greenblatt**  34:19
**greg**  33:11
**gregory**  5:19

**grounds**  50:16
**guess**  22:8 25:11
27:2 28:4,23
36:18,21 37:6
38:6 52:14,15
**guys**  11:23

**h**

**h**  1:7,16 5:12
**halfway**  25:15
**hand**  25:2 29:5
**happened**  48:21
48:23
**happy**  19:4 22:24
24:13 26:23
**hate**  11:23 12:3
**he'll**  27:3
**hear**  6:15 16:17
18:13,15 25:16
33:7 43:14
**hearing**  3:1,6,8,11
32:1
**helpful**  8:3
**hip**  31:19
**history**  51:11 52:6
**hogan**  4:3 43:16
**hole**  6:21
**hon**  2:22
**honestly**  37:24
**honor**  6:5,7,9,14
6:17,20 8:2 10:7
11:1,15 16:12
17:12 18:17 19:1
19:8,11 20:8,10
21:14 22:24 23:16
24:5,10,14 25:17
26:7,23 27:7 28:5
28:19,23 29:11,19
30:2,17 31:9,17
32:18 33:10,20
34:8 35:14 37:4
38:3 39:20 40:11
41:2,15,18,21,23
41:25 43:15,18

45:8 46:9 47:21
48:10 49:11,14,23
50:3,7,11 52:12
52:16,19
**honor's**  21:15
29:6
**hopefully**  43:18
43:24
**horse**  19:2 47:1
**host**  38:25
**hostetler**  4:10,19
6:6
**houston**  4:22
**how's**  12:18
**hunt**  4:24 31:21
32:9,12,17,22
33:2 34:8 35:6,11
35:13,25 36:9,14
36:22 37:3,11,14
37:17 38:3
**hyde**  3:25 53:3,8

**i**

**i.e.**  43:7
**idea**  30:14
**identify**  36:6
**ignoring**  11:2
45:19 46:14
**impact**  10:20
**implicate**  25:3,24
**implicates**  38:25
**important**  27:7
**impose**  41:9
**improper**  22:13
**impute**  49:25
**inclined**  38:9
**included**  32:19
50:20
**includes**  20:12
**incorporate**  52:5
**indiscernible**
18:11 25:7 35:19
41:13,13 43:19

**individually**
26:21
**inevitable**  16:23
24:16
**inextricably**
25:20
**information**  36:16
40:4 44:4
**initial**  7:10,14
35:18 36:1 45:2
45:19 46:14 48:1
50:22 51:14,22
**initially**  36:3
**insolvency**  40:8
**insult**  43:20
**inter**  42:3 43:7
48:1 50:22 51:18
51:21 52:8
**interest**  9:14
20:19,24 38:14,17
**interestingly**
32:14
**interrupt**  11:10
**intertwined**  25:20
**introduced**  11:16
**investment**  1:8,17
2:6 7:8
**investor**  2:3 5:8
**invoke**  29:5
**invoked**  21:15
**ira**  38:24
**irving**  1:7,16
**issue**  7:21 9:7,13
9:13 10:1 11:14
16:20 19:3 20:19
24:19 25:5 26:18
26:20 27:2,17,22
31:1,20,24 33:8
34:12 35:23 36:23
38:8 40:9,12 41:4
44:2,21 52:8
**issues**  9:18 10:4
16:20 17:16 19:22

19:25 20:4,12
21:21 24:21,22,23
24:24 26:19 27:18
28:20 32:16,25
34:2,14,21,22
38:10,20,21,23,25
39:2,3,9 40:5,23
41:5

### j

**j** 4:15 5:24
**january** 32:5
**jason** 4:17 41:18
**joined** 19:8
**judge** 2:23 6:23
11:16 12:11,11
18:11 25:17 29:17
30:19,23,24 40:17
40:18
**judgment** 10:6
17:22 26:6,24
27:1
**judicata** 15:24
19:18 25:8 26:9
29:9
**june** 34:4
**jurisdiction** 21:15
21:22 22:2 23:4
23:11,17,19,21,23
23:24 24:18 28:24
28:25 29:1,6
**jurisdictional**
19:3 28:7,20
**jury** 24:9,18
27:23 40:15

### k

**k** 2:25 5:9
**kelley** 5:22
**kevin** 5:12
**key** 44:2
**kind** 16:23 31:6
44:4
**kirby** 10:9

**knee** 32:4
**knew** 49:18 51:20
52:1
**know** 7:9 8:1,5
9:3,11 10:4 11:13
15:8 17:3,13 18:6
19:9,9,13 20:3,13
23:7 24:21 26:15
26:16,21 27:3
28:14 31:1,19
34:8,17,20 36:4
36:17 37:3,5,7,19
40:15,17,22 43:21
44:14 45:14 47:7
47:8 48:6,8,11,21
48:23 49:1,3,25
51:6
**knowledge** 35:20
36:11 49:23 50:4

### l

**l** 1:7,8,16,17 2:6
**l.p.** 1:11 6:19
**late** 33:13
**law** 11:19 12:6,7
14:3,21 23:25
38:10 40:23
**lead** 1:3
**leaves** 27:17
**ledanski** 3:25 53:3
53:8
**left** 13:16 16:15
16:16 18:22,25
19:6 20:4
**legal** 9:23 10:3,10
11:14 13:15 26:19
28:18 34:22 38:19
38:21,23,25 39:1
41:4,5 53:20
**length** 22:9 24:6
**letter** 8:5,12 32:18
42:7,24 43:4
44:16,23,24 45:15
45:21 46:13 50:19

52:4
**liability** 11:6 25:4
25:19
**lifland** 15:5
**limine** 39:5 41:8
**limited** 14:9
**line** 6:25 23:13
**linkage** 18:12
**liquidation** 1:7,16
**list** 36:12,14
**listen** 47:7
**litigation** 11:14
**little** 7:1
**live** 17:7
**llc** 1:8,17 2:6 3:13
**llp** 4:3 5:1,14
**logistical** 3:6
**long** 7:12 12:9
19:13 32:3 34:9
34:23 37:5 39:19
**longer** 18:14
**look** 21:13 22:14
27:25 41:2,16
44:15
**looked** 8:4 36:18
**looking** 12:5
28:14,16
**lose** 46:8 47:22
**loser** 47:10
**lot** 18:18 24:23
34:20 39:21
**low** 32:14 34:10
**lowry** 10:10
**lp** 5:2,15
**luck** 38:2

### m

**m** 2:22 5:19
**madoff** 1:8,8,17
1:17 2:6 6:4 10:2
26:21 40:2
**main** 4:21 34:4
**maintained** 26:11

**maintaining** 25:2
**making** 16:8
27:21
**managing** 7:16
**mandatory** 37:1
**mann** 5:2,15 6:18
13:12 16:13,13
**mann's** 16:13
**manner** 12:19
**marco's** 17:14
**material** 49:20
52:4
**matter** 6:12 28:7
28:9
**matters** 3:6
**mean** 12:2,4 19:6
19:20 21:20 23:1
23:2 24:1 25:4,6
27:2 30:5 36:18
36:21 39:2 41:4
45:8 47:20 49:2,5
49:14
**meant** 8:15
**medical** 31:20
32:15 40:25
**mentioned** 24:21
**merrill** 5:2,15
**meryl** 6:18 16:13
**met** 49:6
**method** 7:8 43:8
**michael** 5:2,15
6:18 16:13
**million** 31:23 42:4
42:18 44:17 45:2
45:19 51:3,7
52:15
**mind** 30:15
**mineola** 53:23
**ministerial** 17:23
**minute** 17:6
**minutes** 38:16
**mistaken** 40:11

mohan   5:23
monday   22:25
money   7:18 8:21
   8:21 9:12,12,13
   17:8 27:4,4,5
   51:16
month   32:2
morning   6:5,17
   9:24
motion   3:1,2,4,11
   6:13 10:6 16:6,12
   17:24 18:20 19:7
   20:2,3 21:17,19
   22:10,11,21 24:12
   25:15,16 26:5,8
   26:24,24,25 30:14
   31:5 34:24 35:15
   36:22 37:10,13
   38:7 40:11 42:1
   45:21 47:2,22
   50:14
motions   28:21
   39:4 41:8,11
move   28:17
multiple   32:18

**n**

n   4:1 6:1,2 53:1
n.w.   5:9
nailed   9:14
nathaniel   5:22
necessarily   25:24
   44:1
necessary   27:17
need   17:20 19:2
   22:13,23 34:23
needs   33:19
negative   17:15
nelson   1:20 31:16
   31:19,22,23 33:11
   34:4 37:23 38:12
nelson's   32:4
nelsons   40:15

net   7:3,8,13 8:7
   8:14,20,21,24
   9:11 11:13 12:9
   12:12,16,25 13:5
   13:19 14:4,15,24
   15:6,8,14 20:20
   25:4,10,12,20
   45:9 47:8,9,10
   51:4 52:14
never   27:9 30:15
   36:7 40:6
nevertheless
   31:25
neville   5:6 6:16,17
   6:18 7:9 8:1,12,16
   8:20 9:5 10:7,15
   10:25 11:9,15
   12:2,4,17,20 13:2
   13:7,9,11,20,22
   14:6,10,17,22
   15:1,4,9,15,17,25
   16:3,8,10,12,16
   16:18 17:2,12,25
   18:4,6,10 19:4
   20:7,8,22 23:1
   27:8 29:18 30:2,9
   30:11,13,16,21,24
   31:5,9,14 34:23
   37:4 39:20,23
new   1:2 2:12 4:6
   4:13 5:4,17 27:4
   41:20,22,23
nicholas   4:15 6:5
   18:18
night   20:11
normally   47:12
notice   43:12
november   2:14
   53:25
null   24:8
number   16:19
   19:22

ny   2:12 4:6,13 5:4
   5:17 53:23

**o**

o   2:21 6:1,2 53:1
object   16:2 17:9
objection   8:19
   15:20 19:14 30:7
   34:7 41:17 42:1,2
   43:10 45:8,12
   46:3,5,7 47:7
   50:14,18 51:18,19
   51:21
objections   3:12
   8:15 15:19 18:22
   20:6 22:22 25:9
   27:21 28:2 30:1
   52:10,11
obviously   30:13
   37:9 49:18
occasions   32:18
occurred   17:17
   52:7
october   33:21
offline   43:9
oh   11:25 31:15
okay   6:15 8:14
   13:8,15,21 16:8
   16:15 18:20 20:9
   29:23 30:9,10,11
   31:8 32:11 35:1,3
   35:12 36:3 37:16
   37:20 38:1 39:23
   41:2 42:22 44:2
   45:17 46:4,22
   50:8,10 51:2
   52:13,18
old   23:8 27:4,5
   53:21
omnibus   3:11
   41:17 42:1 43:10
once   16:22 23:22
   33:18

ones   43:23
ongoing   36:1
opened   50:23
opine   27:3
opinion   46:7
opportunity   41:3
opposed   10:9
opposing   27:25
   28:1,6
oral   16:6,12 19:6
   21:16 25:15 26:24
   34:12
orally   22:8
order   6:8,13 8:2,6
   8:7,11 9:24 20:11
   20:14 21:1 26:17
   26:22 29:24,25
   30:6,8 34:12,12
   44:5,10,25 50:15
   50:17 52:14
orders   9:17
overlap   19:23
overrule   3:12
   50:13

**p**

p   4:1,1 6:1,2
paid   52:15,16
paper   40:21
papers   23:21
   29:10
paragraph   22:21
paragraphs   20:13
   21:6
paraphrasing   8:9
pardon   45:4
park   5:16
part   8:13,20 20:6
   20:20 23:8,12
   24:3 27:23,24
   35:9 49:16,18
partial   41:25
particular   42:17
   43:13 51:14

**parties** 40:14
**party** 23:22
**path** 6:21 10:9
**patrick** 5:23
**pending** 3:3 19:8
  19:8
**people** 36:4,14
  37:15
**perfect** 13:25
**period** 14:1 38:13
**permission** 35:15
**personal** 49:23
  50:3
**personally** 10:2
**phone** 30:7
**picard** 1:7,16
**plain** 49:2
**plaintiff** 2:4 19:15
  46:18
**plaintiffs** 1:9,18
**planning** 36:9
**plaza** 4:12
**pleading** 31:8
**pleadings** 24:12
**please** 6:3 11:10
**point** 22:13 24:17
  25:25 26:4,7 31:7
  46:12
**pointed** 20:11
**ponzi** 10:1,11,14
  11:23 12:9 14:11
  25:2,24 26:19
  27:1,12,17 34:21
  40:7
**portfolio** 7:16
**position** 33:10,12
  48:22
**positive** 17:15
**preclude** 22:12
**precludes** 22:10
  26:2 27:21
**preference** 6:9
  51:12

**prejudgment**
  20:18
**prejudice** 15:19
  15:22 16:7,14
  18:21,22 19:13,14
  19:16 20:5,6 22:3
  22:15,22 25:9,16
  26:2 27:20 28:3
  30:1 49:17
**prejudiced** 22:17
  47:24 48:5,20
  49:1 50:1,6 51:25
**prepare** 30:2
**prepared** 8:7
  15:18 27:18 28:20
**present** 5:21
  20:25
**presently** 20:25
**pressing** 45:20
**pretrial** 8:2,2 9:24
  20:11,14 21:1
  26:17,22
**pretty** 33:6 39:16
  49:25 52:6
**prevailed** 14:8
**prima** 13:4,5
  46:15,17,23
**primarily** 42:2
**primary** 39:16
**principal** 43:5,6
  48:18,20
**principles** 15:24
  19:17 25:8
**printout** 51:13
**prior** 45:15
**priority** 11:17
**probably** 30:25
  49:8
**problem** 27:6
  31:19 48:3
**proc** 3:9
**procedurally**
  22:12

**procedure** 8:11
  44:5,9,10,25
  50:15,17
**proceeding** 6:24
  12:13 13:23 14:24
  15:14 17:8 19:21
  21:9,12 23:4,11
  36:5
**proceedings**
  52:21 53:4
**process** 8:3 13:17
  17:1,4 18:23,25
  20:1,5 21:10
  23:12 24:4,25
  27:24
**profits** 9:1,3
  12:16,25 13:6
  25:10 26:3 42:4
  51:17,24
**proof** 45:25 46:2
  46:9,11 50:25
**property** 10:2
**propose** 6:7
**proposed** 32:17
  36:12
**proposing** 11:4,5
**proposition** 21:8
**protection** 2:3 5:8
**prove** 34:18
**provide** 40:4 42:9
**provides** 23:22
**provision** 36:24
  37:1
**purported** 21:17
  22:17 24:7
**purposes** 13:19
  28:7
**pursuant** 3:2 6:13
**put** 9:5 13:12,12
  27:2 29:9,13 40:3
  40:21 51:3
**putting** 16:9 19:2
  26:18 32:15 46:20

46:25
**pw** 34:19

**q**

**question** 7:23
  8:25 9:20,23 13:1
  13:14 19:17 23:6
  23:16 24:23 37:19
  45:24,25 47:24
  49:12,16
**questions** 16:22
  50:12
**quickly** 33:6
**quite** 37:24

**r**

**r** 2:21 4:1,16 6:1,2
  53:1
**rabbit** 6:21
**raise** 10:1
**raised** 13:24
  15:20 16:19,22
  26:21 51:20
**rakoff** 11:16
  12:11,11 25:17
**reach** 27:9
**read** 9:24 20:14
  26:15,17 49:24
**reading** 41:16
**really** 7:4 8:9 9:11
  10:22 12:5 14:11
  16:18,21 17:3,4
  17:20 19:2,14
  21:11 22:4 25:12
  26:20 50:24 51:1
  51:20
**reason** 10:8 32:21
  43:13 44:11,12,18
  45:1,3,5,18 46:13
  47:14,18,19,22,25
  49:4 51:15,23
  52:1,8
**reasoning** 12:5
**reasons** 34:14
  40:15,25

recall 8:17
receive 42:3
received 9:1 43:5
recognized 25:17 25:18
record 36:4 38:3 53:4
recover 17:8
recovering 17:22
recovers 17:21
recovery 10:24
reduce 11:5,12
reference 3:4 20:15,17
referenced 43:4
referring 21:6
refers 51:18
refused 32:20
regarding 21:21 31:15,18
regardless 14:19
rejected 51:4
related 23:18,23
relatedly 51:25
relating 24:24
relatively 33:4
relevant 36:5
rely 36:15 49:13
relying 47:8
remain 19:23
remaining 9:7 43:22
remains 21:24
remedies 12:21
remember 7:12 36:17
reopen 36:19
reopening 37:9
repaid 18:9
replacement 31:20
reply 30:13 31:13 35:7

report 27:3
reports 7:16
request 3:6 35:15
requested 7:18
res 15:24 19:17 25:8 26:9 29:8
resolution 29:1
resolved 10:4,5 43:23
respect 3:12 9:18 29:2
respective 34:16
respects 49:20 52:4
respond 20:2,3 21:19,23,24 22:6 22:8,23,24 29:23 34:23,25
response 14:23,24 26:24 31:11 35:1 35:4,5 38:8,9 41:17 50:10
result 6:24 24:9 28:14,16,18 29:3 52:15
retired 48:23
revived 13:22
revives 20:12
richard 4:8 43:15
right 13:21 17:2 18:4,4 22:19 24:8 24:18 25:1,15 29:20 33:1,7 35:6 37:6 38:6 39:5 40:8 41:17,24 42:22,25 45:13 47:14 48:19 49:17 50:1,5,13 52:20
rights 14:21
rise 6:3 7:2
road 53:21
rockefeller 4:12

rule 3:2 19:9,10 19:14 22:10,14 23:7,8 27:8 36:18 37:6,11,14
ruled 40:18
rules 46:8
ruling 3:3 28:11
rulings 7:4

s

s 4:1 5:22 6:1,2
satisfy 11:12 27:4
saying 10:4,22 11:1 12:14,23 13:17 14:14,20 15:13 18:14 21:3 21:11,20 22:4,9 25:7 28:6,10 36:2 42:8,16 45:11 47:16,16 49:16
says 8:5 18:8 22:21 24:2 44:10 45:1 50:17
schedule 29:19 31:9 33:24 34:10
scheduled 6:12 24:15 32:6,8,9
scheme 10:1,11,14 11:17 12:9 14:11 25:2,24 26:19 27:2,12 34:21 40:7
seanna 4:16
seated 6:3
sec 9:10
second 9:6,9 14:7 15:3,5 35:8 46:7
section 14:8
securities 1:8,17 2:3,6 5:8 10:18,19 11:19,22 12:6,6 12:20 21:3 40:1,2
security 36:7

see 6:10,11 7:11 7:19 22:20 41:14
seek 36:19
seeking 45:10
seeks 17:8,9
sense 19:1 40:16 40:24,25
separate 8:25 22:20
set 10:23 11:12 49:9 52:2
settled 17:16
seven 34:25 39:5
she'd 33:23
she'll 33:18
sheehan 5:24
show 6:13 13:5,6 13:12 34:12
sides 12:10 15:9
silent 44:21
similarly 40:16
simple 23:14 24:19
simply 34:3 43:4
single 36:7
sipa 11:3,6,9,17 42:6
sit 39:24
situated 40:16
situation 18:8 19:15
six 14:1
sixth 11:25
smb 1:3,5,14 2:1 3:1,6,8,11
solely 3:12
solutions 53:20
sonya 3:25 53:3,8
soon 24:13
sorry 31:17
sound 21:8
sounds 35:11 40:24

**southern**  1:2
**specificity**  40:22
**spurred**  9:10
**squarely**  29:3
**standards**  45:22
  45:25
**stanley**  31:22
  48:16
**state**  14:2,21
**statement**  20:23
  21:4 27:9 51:4
**statements**  7:16
**states**  1:1 2:10
**stay**  3:2,4 6:13
  23:2 30:15 31:5
**stayed**  31:7
**step**  27:25 30:20
**stick**  13:1
**stipulated**  13:18
  15:2 27:10
**stipulations**  26:18
**straightforward**
  33:4
**strain**  38:11
**strategic**  23:9
**street**  4:21 5:9
**strenuous**  33:14
**strike**  50:14
**struck**  24:8
**struggle**  10:7
**stuart**  2:22
**su**  2:25
**subject**  10:18
  11:13,20 28:21
  33:12
**submit**  23:17,20
  24:11,13 29:24
  43:1 52:13
**submits**  23:22
  28:25
**submitted**  20:10
**subsequent**  28:24
  46:6 48:24

**subsequently**
  21:16 29:7
**substance**  51:15
**sued**  51:12
**sufficient**  19:7
  47:22
**sufficiently**  40:23
**suggest**  30:21
**suggesting**  45:22
**suit**  29:7
**suite**  4:21 5:9
  53:22
**suits**  29:6
**summary**  10:6
  26:6,24,25
**supplementing**
  36:4
**support**  37:15
  47:12
**sure**  19:19 23:10
**surgery**  32:5
**sustained**  46:8,10

---
**t**
---

**t**  53:1,1
**take**  27:25 34:20
  37:22 38:5,15
  39:18,19 43:20
**taken**  37:25
**talked**  19:9,23
**talking**  8:10 48:11
  49:19
**tamlyn**  4:3 43:16
**target**  32:9
**task**  33:14
**telephonically**
  5:21
**tell**  17:6 20:13
  28:13 30:7 31:3
  37:12 38:9 50:5
**telling**  13:16
  38:11
**terms**  47:3

**testify**  39:2
**thank**  18:17 31:14
  35:13 41:14,15,18
  43:18 52:17,19,20
**theory**  51:12
**thing**  14:12 33:2
**things**  8:5 9:15
  16:19 33:6 47:1
**think**  6:21,22 9:22
  15:11 18:10,19
  19:1 21:13 22:13
  22:13,25 23:3,14
  24:6,20 25:4,14
  27:6 28:22 30:4
  32:12,22 33:5,12
  33:15,19 34:9
  36:15,19,23 37:3
  37:4,8 40:10 41:1
  41:12 42:8 44:2
  46:25 49:3 51:3,7
**third**  3:11 4:5
**thought**  31:23
**three**  18:21,23
  32:23
**threshold**  19:3
**time**  6:20 7:3,7,13
  7:24 8:16 9:9,12
  9:14 12:9 15:23
  19:9 21:14 22:9
  22:14,23 24:1
  25:15 31:23,24
  32:1,3 34:9,20
  36:17 38:13 43:7
  43:19 45:8,14
  48:2,14
**timely**  45:12
**times**  25:17
**today**  26:13 29:15
  29:20 30:5 31:12
**toes**  30:20
**totally**  44:21
**traded**  36:7

**traders**  36:6,7
**trading**  27:3
  39:25 40:2 51:9
**trail**  10:9
**transcribed**  3:25
**transcript**  53:4
**transfer**  7:19 17:9
  17:22 26:20 42:3
  42:6,6 43:5,7,7
  44:20 45:2 46:14
  48:1 50:23 51:14
  51:19,22 52:8
**transferor**  43:6
  48:2 51:16,24
**transferred**  10:3
**transfers**  17:17
**trashes**  12:4
**treating**  42:6 43:2
**treatment**  43:13
**trial**  3:2,6,8 7:21
  22:25 23:2 24:9
  24:15,18 27:17,22
  28:1,17 30:13
  31:7,16,19 33:15
  33:16,24 34:4,13
  34:19 35:9,9
  36:15,20,21 37:8
  39:6 40:5 47:3
**trials**  33:8,13
  35:16 40:15
**tried**  16:21 33:5
**tries**  19:15
**trouble**  23:13
**true**  11:18 53:4
**trustee**  1:7,16
  4:11,20 6:7 7:11
  7:17 8:6,6 12:11
  14:1,8 15:23
  17:15,21 18:18
  22:16 35:16,20
  41:19 42:5,10
  43:22 44:1,3
  47:15,25 49:19

[trustee - zero]                                                                                    Page 12

50:18 51:1,12
52:13
**trustee's**  7:7
   15:21 35:21 40:11
   41:5,17 42:1,15
   42:20 46:6 52:11
**trustees**  3:11
**truthfully**  8:2
**try**  21:11 23:11
   32:16,22 33:17
   34:1,2 38:14
   40:18,24,25
**trying**  14:18
   24:17 26:16 34:9
**twenty**  3:11
**two**  8:19 9:2
   12:10,21 14:9
   15:9 17:14 31:21
   32:16 34:4 35:18
   41:8,23 47:1
**tx**  4:22

**u**

**u.s.**  2:23
**ucc**  21:4
**umbrella**  12:9
**unappealable**  8:7
   9:17
**underlying**  42:9
**understand**  8:14
   11:2 12:8,23
   13:10 18:14,15,24
   20:16 21:7,20
   23:7 25:22 26:14
   27:16 38:12 48:15
**unique**  17:4
**united**  1:1 2:10
**use**  37:15,17

**v**

**v**  1:10,19 2:5
**value**  9:4,13 25:19
   32:14 34:10 49:4
**vanilla**  29:25

**veritext**  53:20
**versus**  8:21 9:12
**view**  43:11
**virtue**  31:7
**vis**  7:20,20 8:7,7
   18:23,23 20:4,4
**void**  24:8

**w**

**wait**  8:18 17:6
   30:25 32:3
**waiting**  34:9
**want**  6:22 9:6
   20:2 21:19 23:6
   24:11,14 29:9
   30:20 33:20 41:1
   48:6,9
**wants**  36:22
**washington**  5:10
**way**  7:1,19 9:16
   11:1 12:15 13:22
   14:3 20:1 30:15
   30:18
**we've**  28:19 36:1
   43:1,9 46:8 52:16
**week**  29:14,20,23
   31:12 41:9
**welcome**  43:17
**went**  6:21,23 8:4
   8:16 9:13 16:20
**whacking**  14:12
**willing**  27:11
**winner**  47:9
**wire**  7:19
**withdraw**  3:4
   15:18 16:1,1,7,13
   18:21,21 19:7,16
   22:15,21 25:16
   28:2 46:6
**withdrawal**  21:17
   22:17,18 23:25
   24:8 25:7,8 26:2
   27:20 28:22 31:10

**withdrawals**  7:8
   13:18 23:9 27:5
   33:1,3 34:15
   38:15 39:9,14
   42:13 44:13,18
   47:4 50:20 51:10
**withdrawing**  7:24
   15:21 19:12,16
   20:5 21:22 22:3
   29:25
**withdrawn**  21:25
   24:25 52:12
**withdraws**  19:13
**witnesses**  32:23
   35:20 36:10,12,13
   39:2
**woman**  33:12
**words**  9:24 13:3
   15:20 16:11 17:21
   18:7 36:6 39:8
   47:15
**worked**  27:8 49:7

**x**

**x**  1:4,6,13,15,22
   2:2,8 13:12,12

**y**

**y**  13:13
**yeah**  12:2 18:10
   28:4,18 29:14
   31:6 37:11 48:6
**year**  14:1 27:8
**years**  8:19 9:2
   14:9
**yeskoo**  4:3,8
   41:23 43:15,15,15
   43:18,21,25 44:2
   44:7,9,15,25 45:4
   45:7,11,14,18
   46:2,5,12,17,20
   46:25 47:6,18,20
   48:3,6,9,13,16,19
   48:21 49:1,5,11
   49:13,22 50:2,7,9

52:12,16
**yesterday**  6:8
   35:17
**york**  1:2 2:12 4:6
   4:13 5:4,17

**z**

**zero**  13:19 42:6
   42:17 43:2,13
   48:1 49:4 50:22
   51:13,15,21