# EXHIBIT 3

Page 1

```
1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 95-88888-cgm

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    THE BANKRUPTCY LINK,

7             Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 08-01789-smb

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   SECURITIES INVESTOR PROTECTION CORPORATION,

12                Plaintiff,

13           v.

14   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC. ET AL.,

15                Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 10-04390-smb

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

20   MADOFF INVESTMENT SECURITIES LLC,

21                Plaintiff,

22           v.

23   BARN L.P., et al

24                Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```



Page 2

1   Adv. Case No. 10-04377-smb

2   - - - - - - - - - - - - - - - - - - - - - - - - - x

3   IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L.

4   MADOFF INVESTMENT SECURITIES LLC,

5                    Plaintiff,

6             v.

7   NELSON et al.,

8                    Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 10-05383-smb

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   IRVING H. PICARD, ESQ., TRUSTEE FOR THE SUBSTANTIVELY

13   CONSOLIDATED SIPA LIQUIDATION OF BERNARD L. MADOFF

14   INVESTMENT SECURITIES LLC AND THE ESTATE OF BERNARD L.

15   MADOFF,

16                    Plaintiff,

17             v.

18   SHAPIRO, et al.,

19                    Defendants.

20   - - - - - - - - - - - - - - - - - - - - - - - - - x

21

22

23

24

25



Page 3

1    Adv. Case No. 10-03800-smb

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    FAIRFIELD SENTRY LIMITED (IN LIQUIDATION),

4                     Plaintiff,

5              v.

6    FAIRFIELD GREENWICH GROUP, et al.,

7                     Defendants.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                   United States Bankruptcy Court

11                   One Bowling Green

12                   New York, NY   10004

13

14                   December 19, 2018

15                   10:04 AM

16

17

18

19

20

21    B E F O R E :

22    HON STUART M. BERNSTEIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  SHEA

Page 4

1    HEARING re 08-01789-smb Application of Trustee and Baker &

2    Hostetler LLP for Allowance of Interim Compensation for

3    Services Rendered and Reimbursement of Actual and Necessary

4    Expenses Incurred from April 1, 2018 through July 31, 2018

5

6    HEARING re 08-01789-smb Application of Schiltz & Schiltz as

7    Special Counsel to the Trustee for Allowance  of Interim

8    Compensation for Services Rendered and Reimbursement of

9    Expenses Incurred from April 1, 2018 through July 31, 2018

10

11    HEARING re 08-01789-smb Application of Higgs & Johnson

12    (Formerly Higgs Johnson Truman Bodden &  Co.) as Special

13    Counsel to the Trustee for Allowance of Interim Compensation

14    for Services Rendered and Reimbursement of Expenses Incurred

15    from April 1, 2018 through July 31, 2018

16

17    HEARING re 08-01789-smb Twenty-Seventh Application of

18    Windels Marx Lane & Mittendorf, LLP for  Allowance of

19    Interim Compensation for Services Rendered and Reimbursement

20    of Actual and Necessary Expenses Incurred From April 1, 2018

21    through July 31,  2018

22

23

24

25

Page 5

1   HEARING re 08-01789-smb Application of Soroker Agmon Nordman

2   as Special Counsel to the Trustee for  Allowance of Interim

3   Compensation for Services Rendered and Reimbursement of

4   Expenses Incurred from April 1, 2018 through July 31, 2018

5

6   HEARING re 08-01789-smb Application of Graf & Pitkowitz

7   Rechtsanwalte GMBH as Special Counsel to the Trustee for

8   Allowance of Interim Compensation for Services Rendered and

9   Reimbursement of Expenses Incurred from April 1, 2018

10  through July 31, 2018

11

12  HEARING re 08-01789-smb Application of SCA Creque as Special

13  Counsel to the Trustee for Allowance of  Interim

14  Compensation for Services Rendered and Reimbursement of

15  Expenses  Incurred from April 1, 2018 through July 31, 2018

16

17  HEARING re 08-01789-smb Application of Young Conaway

18  Stargatt & Taylor, LLP as Special Counsel to the Trustee for

19  Allowance of Interim Compensation for Services Rendered and

20  Reimbursement of Actual and Necessary Expenses Incurred from

21  April 1, 2018  through July 31, 2018

22

23

24

25

Page 6

1    HEARING re 08-01789-smb Application of Williams, Barristers

2    & Attorneys as Special Counsel to the Trustee for Allowance

3    of Interim Compensation for Services Rendered from April 1,

4    2018 through July 31, 2018

5

6    HEARING re 08-01789-smb Application of UGGC & Associes as

7    Special Counsel to the Trustee for Allowance of Interim

8    Compensation for Services Rendered from April 1, 2018

9    through July 31, 2018

10

11    HEARING re 08-01789-smb Application of Browne Jacobson, LLP

12    as Special Counsel to the Trustee for Allowance of Interim

13    Compensation for Services Rendered and Reimbursement of

14    Actual and Necessary Expenses Incurred from April 1, 2018

15    through July 31, 2018

16

17    HEARING re 08-01789-smb Application of Eugene F. Collins as

18    Special Counsel to the Trustee for Allowance of Interim

19    Compensation for Services Rendered from April 1, 2018

20    through July 31,2018

21

22    HEARING re 08-01789-smb Application of Robbins, Russell,

23    Englert, Orseck, Untereiner & Sauber LLP as Special Counsel

24    to the Trustee for Allowance of Interim Compensation for

25    Services Rendered from April 1, 2018 through July 31, 2018

1    HEARING re 08-01789-smb Application of The Scaletta Law

2    Firm, PLLC as Special Counsel to the Trustee for Allowance

3    of Interim Compensation for Services Rendered from April 1,

4    2018 through July 31, 2018

5

6    HEARING re 08-01789-smb Application of Werder Vigano as

7    Special Counsel to the Trustee for Allowance of Interim

8    Compensation for Services Rendered from April 1, 2018

9    through July 31, 2018

10

11   HEARING re 08-01789-smb Trustees Motion for Authorization to

12   Depose Annette Bongiorno, Daniel Bonventre, and Joann Crupi

13

14   HEARING re 10-04390-smb Motion For (A) Expedited

15   Determination Of Motion For A Stay Of Trial Pursuant To Rule

16   501 l(C) Pending Ruling By The District Court On Defendants

17   Motion To Withdraw The Reference And (B) Granting A Stay

18

19   HEARING re 10-04390-smb Motion For (A) Expedited

20   Determination Of Motion For A Stay Of Trial Pursuant To Rule

21   501 l(C) Pending Ruling By The District Court On Defendants

22   Motion To Withdraw The Reference And (B) Granting A Stay

23

24

25

1    HEARING re 08-01789-smb Hearing on Order to Show Cause Why

2    Trial in Adv. Proc. Nos. 10-04377 and 10-04658 Should Not Be

3    Consolidated

4

5    HEARING re 10-05383-smb Motion to Quash

6

7    HEARING re 10-03800-smb Status Conference

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 9

```
 1   A P P E A R A N C E S :

 2

 3   DENTONS

 4        Attorneys for BAM LP et al

 5        1221 Avenue of the Americas

 6        New York, NY 10020

 7

 8   BY:  CAROLE NEVILLE

 9

10   BAKER HOSTETLER LLP

11        Attorneys for the Trustee

12        45 Rockefeller Plaza

13        New York, NY 10111

14

15   BY:  NICHOLAS S. CREMONA

16        DEAN D. HUNT

17        DAVID J. SHEEHAN

18        NICK ROSE

19        TORELLO H. CALVANI

20

21   SECURITIES INVESTOR PROTECTION CORPORATION

22        1667 K Street, N.W., Suite 1000

23        Washington, D.C. 20006

24

25   BY:  KEVIN H. BELL
```

Page 10

```
 1   CHAITMAN LLP

 2         Attorneys for

 3         465 Park Avenue

 4         New York, NY 10022

 5

 6   BY:  HELEN DAVIS CHAITMAN

 7

 8   SCHULTE ROTH & ZABEL LLP

 9         Attorneys for

10         919 Third Avenue

11         New York, NY 10022

12

13   BY:  ABIGAIL COSTER

14

15   LAX & NEVILLE

16         Attorneys for Shapiro

17         350 Fifth Avenue, Suite 4640

18         New York, NY 10118

19

20   BY:  MARY GRACE WHITE

21

22   ALSO PRESENT TELEPHONICALLY:

23   NATHANIEL S. KELLEY

24   PATRICK MOHAN

25   DAVID J. SHEEHAN
```

Page 11

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.

3              CLERK:  Madoff.

4              MR. CREMONA:  Good morning, Your Honor.  Nicholas

5     Cremona, BakerHostetler, appearing on behalf of the Trustee.

6     Your Honor, unless you're -- unless you have a preference, I

7     would suggest that we go in the order of the agenda and deal

8     with the uncontested matters first starting with the fee

9     applications.

10             THE COURT:  Oh, I certainly want to hear the fee

11    applications because I want Mr. Bell to tell me how long

12    this case is pending.  Okay.

13             MR. CREMONA:  Fair enough.  I'll cede the podium

14    to Mr. Sheehan and Mr. Bell.

15             THE COURT:  All right.  Thank you.

16             Mr. Bell, I don't think I have to use days

17    anymore.  You can start to use years and percentages of

18    years.

19             MR. BELL:  I'm ready for you.

20             THE COURT:  Okay.  I know you've been planning for

21    this one.

22             MR. BELL:  I'll forewarn you that he's down to

23    seconds on this one.

24             THE COURT:  All right.  Well --

25             MR. SHEEHAN:  Okay.  Your Honor, this is the

Page 12

1    return date of 28th fee application by the Trustee.  My name

2    is David Sheehan.  I'm here representing BakerHostetler, of

3    course, and the Trustee Irving Pacard as well as a number of

4    foreign fee applicants and a conflict counselor that have

5    assisted us throughout this case as well as appellant

6    counsel who have assisted us in connection with the Second

7    Circuit appeal on extraterritoriality.

8          As with the past, what I think I will do this

9    morning is Your Honor is intimately familiar with what's

10   happening in the United States since it's here every week

11   with you.  So I won't go through that now, Your Honor has

12   it, except to note that we are -- we do have an allocation

13   pending before Your Honor to again distribute over half a

14   billion dollars, which I think is significant when you think

15   about the fact that it's the tenth year into this case and

16   they're still retrieving those sums of money and

17   distributing them to customers.

18         The two things that I'd mention are these.

19   There's been a tremendous amount of activity in the Kingate

20   case, and you will see reflected in the time of Browne

21   Jacobson and the attorneys also in Bermuda.  A lot of

22   discovery has taken place as Your Honor knows from signing

23   those orders that allow us to have discovery overseas.  We

24   ran into quite a bit of activity in the UK, which our

25   counsel was heavily involved in.  It's all been resolved,

Page 13

1    and we're moving towards the end of discovery.  As Your

2    Honor knows, next month hopefully it'll be concluded.

3            We also have an interesting case occurring between

4    defender and HSBC in Ireland where they're taking the

5    position --

6            THE COURT:  In where?

7            MR. SHEEHAN:  In Ireland.  Ireland.

8            THE COURT:  Oh, Ireland.  I thought you said --

9            MR. SHEEHAN:  Ireland.

10           THE COURT:  I thought you said Orica.

11           MR. SHEEHAN:  No, no.  My nose is a little stuffy.

12   But in any event, it's Ireland.  And what the suit there is

13   HSBC is trying to find some favor in the fact that defender

14   settled with us and that that should benefit them.  Very

15   interesting proceeding.  We're monitoring that.  It has not

16   been decided as yet.

17           And then the other counsel, of course, have

18   continued their work supporting us in France and other

19   jurisdictions where there are criminal proceedings taking

20   place, and we participate with them in those proceedings,

21   give access to information and statements and evidence that

22   assists us in the litigation in the United States.

23           Then, lastly, there is the lawsuit in Magnify,

24   which Your Honor is very familiar with since you wrote the

25   opinion on the motion for summary judgment.  There's a lot

Page 14

1    of activity in Israel as well.  Motion practice mostly, but

2    what's happening now is we're making an effort to try to

3    follow in Your Honor's opinion to convene settlement

4    discussion with the other side in Israel to resolve both

5    litigations if we can.  Your Honor will probably hear that

6    Magnify counsel in the next couple of days as well.

7            So, overall, I would like to say that there's no

8    objection to the fee application.  We, of course, admire and

9    hope the -- support where we see for our conflicts counsel,

10   in particular (indiscernible).  And I would respectfully

11   submit that the order should be entered approving the

12   applications.

13           THE COURT:  Thank you.

14           MR. SHEEHAN:  Thank you, Your Honor.

15           MR. BELL:  Good morning, Your Honor.

16           THE COURT:  Good morning.

17           MR. BELL:  Kevin Bell on behalf of the Securities

18   Investor Protection Corporation.  As we begin the eleventh

19   year of this liquidation proceeding, and that began last

20   week, we are in the 121st month of this proceeding.  And as

21   you saw by the motion filed by the Trustee for the tenth

22   allocation and distribution, the success in getting money

23   back to the victims in this case continues apace.

24           THE COURT:  So what's the percentage distribution

25   other than those who have been paid in full because of SIPC

1    insurance or --

2              MR. BELL:  Well, as you will see in the

3    application, we're approaching anybody who had a claim of a

4    million and a half dollars has been fully paid.  And

5    pursuant to the statute when they get fully paid, the money

6    that SIPC advances return to SIPC and it subrogation rights.

7    So we move apace with regard to that as the Trustee is

8    successful as you approve settlement agreements of large

9    numbers and as pursuant to the -- what Judge Lifland entered

10   in the proceedings on the settlements.  We are able to

11   effect settlements of -- in lower amounts.  The Trustee has

12   successfully and we move in exorable pace of reducing the

13   number of these good faith cases.  You entered orders this

14   morning, Your Honor, the voluntary dismissal of further

15   actions that were commenced a long time ago.

16             Today is day 3,660.  As you have requested, Your

17   Honor, we're at 87 -- approximately, I don't know the -- I

18   don't go to the exact second -- 87,840 hours.  Last time you

19   asked for --

20             THE COURT:  That's more detail than I really --

21             MR. BELL:  Last time you asked for minutes and

22   seconds, and I'm prepared to give --

23             THE COURT:  I'm sure I didn't, but okay.

24             MR. BELL:  I'll defer on that.

25             THE COURT:  All right.

Page 16

1            MR. BELL:  I just have them said -- you had said

2    minutes and seconds last time.

3            THE COURT:  It must have been relevant to some

4    dispute.

5            MR. BELL:  SIPC when it reviews the applications,

6    reviews each and every time entry of every application.  We

7    do that hard copy, not electronically.  And we make comments

8    regarding the applications to the various counsel.  And

9    there are accommodations made and discussions held.  And

10   I'll focus in on Baker Hoffstetler.  If you look at the

11   fifth paragraph of SIPC's recommendation, you will see

12   beyond the 10 percent reduction in their rates, the total

13   reduction of what they would bill of the clients is 14.9

14   percent.  If you go over the recommendation on Windell's at

15   paragraph 3, the total adjustment in their usually billing

16   rates is 17.18 percent.  And as we go through each and every

17   one of the applications, there have been adjustments or

18   counsel anticipates the potential adjustments by addressing

19   concerns that SIPC has raised in the past.

20            Because of the long agenda, Your Honor, I would

21   submit that under the statute, the standard in a no-asset

22   case where there is no reasonable expectation by the Trustee

23   at this particular moment in time, that we will get to fully

24   satisfy customers and have a general estate, that SIPC would

25   submit that its recommendation that you enter the order

Page 17

1    submitted, that will be submitted by the Trustee on all

2    these applications.

3                THE COURT:  Thank you.

4                MR. BELL:  Do you have any further questions, Your

5    Honor?

6                THE COURT:  No.

7                MR. BELL:  Thank you.

8                THE COURT:  Is there anyone else who wants to be

9    heard in connection with the fee applications?

10               MR. SHEEHAN:  I don't think so, Your Honor.  But I

11   do want to answer the question Mr. Bell artfully avoided and

12   that is --

13               THE COURT:  I noticed the avoidance.

14               MR. SHEEHAN:  Yeah, I know.  We were at 75 to

15   begin with, and we distributed about 65 percent to those 75.

16   However, as you know, many of the feeder funds are indeed

17   the losers.  So when we settle with them, we pay their

18   claims.  So the amount of claims have risen slightly above

19   $19 billion.  So it's more like in the 64 percent range.

20   There, 75 percent range if you use the 75.  But I don't

21   think 75 really is accurate anymore, although it's widely

22   reported and talked about all the time.  We're more in the

23   65 percent range with the denominator going up to 19

24   billion.

25               THE COURT:  Okay.

Page 18

1          MR. SHEEHAN:  Thank you.

2          THE COURT:  Thank you very much.

3          MR. SHEEHAN:  Thank you.

4          THE COURT:  Based upon SIPC's recommendation in

5    the absence of a reasonable expectation that this is going

6    to be a 100 percent plus case, I will approve the fee

7    application and you can submit an order.  Thank you.

8          MR. SHEEHAN:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10         What's next, Mr. Cremona?

11         MR. CREMONA:  Your Honor, the next matter on the

12   agenda is the Trustee's motion pursuant to Rule 30 to depose

13   certain incarcerated former employees of (indiscernible),

14   namely Buongiorno Von Ventry and --

15         THE COURT:  I know it's unopposed, but I have that

16   question before me about and objections to continuing

17   discovery in the other cases.  Does it make sense to resolve

18   that first?

19         MR. CREMONA:  Well, Your Honor, I would submit

20   that these cases are different for a couple of reasons.

21   We've noticed this motion in 17 cases that have open

22   discovery.

23         THE COURT:  I understsnd discovery.  I meant

24   arguing with you about the fact that discovery is still

25   open.  I'm just wondering whether it makes sense to first

Page 19

1   determine whether or not the other 90 cases or whatever the

2   number is will participate in any of these exams.

3           MR. CREMONA:  Well, Your Honor, we would -- we

4   proposed that initially.  We would have been happy to do

5   that.  We're happy to do that if Your Honor thinks that's

6   best.  What -- just to give you our rationale on why we

7   filed it now, we have discovery open.  That closes in

8   February.  We don't believe that these depositions will push

9   those dates out.  We also don't know because discovery's

10  open whether or not these defendants will take discovery

11  with warrants.

12          There's testimony, and we don't know whether or

13  not they're going to contest the Ponzi scheme, but we don't

14  have any reason to believe that they're not.

15          THE COURT:  Okay.

16          MR. CREMONA:  So for those reasons, Your Honor, we

17  do believe it's important to move forward with these

18  depositions.

19          THE COURT:  All right.  Well, does anyone want to

20  be heard in connection with this motion?  Since the

21  defendants in those actions don't object, I'll grant the

22  motion.  I note that there was no opposition.  And I'll sign

23  the order in chambers.

24          MS. COSTER:  Your Honor?

25          MR. CREMONA:  Thank you, Your Honor.

Page 20

1              THE COURT:  Yes.  Oh, I'm sorry.

2              MS. COSTER:  Good morning.  I'm Abigail Coster.

3    I'm here from Schulte Roth & Zabel on behalf of the

4    (indiscernible) parties.

5              THE COURT:  Yes.

6              MS. COSTER:  And we do not have any objection to

7    the relief requested by the Trustee but just to go on the

8    record.  We filed a letter on December 10th, and we just

9    respectfully request that the Court for any depositions that

10   are authorized to -- the order to contain language that has

11   been similar to language that's been in the past --

12             MR. CREMONA:  Your Honor?  Your Honor, if I may?

13             THE COURT:  Is it in --

14             MR. CREMONA:  If I may?

15             THE COURT:  -- the draft order?

16             MR. CREMONA:  Yes.

17             THE COURT:  Because I'm not going to enter another

18   order.

19             MR. CREMONA:  Your Honor, let me just clarify.  We

20   had reached, and I -- sorry, I should have said this.  We

21   had reached agreement with Schulte Roth to put all the

22   (indiscernible) provisions that were in Madoff deposition

23   order.  They mirror that.  We had reached agreement with

24   Schulte, and we modified the orders and we submitted those

25   modified orders that reflect all of those provisions by way

Page 21

1    of CNL.  And those are the orders that Your Honor has.

2             THE COURT:  Have you seen those orders?

3             MS. COSTER:  We have.  And --

4             THE COURT:  All right.  Do you have any objection

5    to those orders?

6             MS. COSTER:  We do not.

7             THE COURT:  Okay.  Thank you.

8             MR. CREMONA:  Moving forward, Your Honor --

9             THE COURT: Okay.

10            MR. CREMONA:  -- the next matter on the agenda

11   deals with the (indiscernible) proceeding.

12            THE COURT:  All right.

13            MR. CREMONA:  And just by way of background there,

14   Your Honor, we are here again on this matter based on an

15   emergency motion to stay the trial given the pendency of the

16   Defendant's motion to withdraw the reference.

17            THE COURT:  What's the schedule now in the

18   district court?  Because I saw letters extending the

19   schedule --

20            MR. CREMONA:  Sure.

21            THE COURT:  -- or it looked like the schedule was

22   extended.

23            MR. CREMONA:  The schedule is that we, the

24   Trustee, has to file his opposition brief by December 30.

25   And I'm not exactly sure when the Defendants are required,

Page 22

1    but I want to say mid-January.

2              MS. NEVILLE:  It is mid-January, but I don't have

3    the date with me, Your Honor.

4              THE COURT:  All right.  And is -- there's no

5    specific argument date, I assume?

6              MS. NEVILLE:  No.

7              MR. CREMONA:  There is not.

8              THE COURT:  Okay.

9              MR. CREMONA:  So, Your Honor, we're here because

10   on 11/28, the Manns made an oral motion to withdraw their

11   claims and objections with prejudice which Your Honor

12   granted.  And then that led Your Honor to direct the parties

13   to brief the issue, the legal effect of the claims

14   withdrawal and the objection withdrawal with prejudice,

15   which is what we're here to discuss today.

16             THE COURT:  Right.

17             MR. CREMONA:  And if Your Honor will allow me, I'd

18   like to amplify our briefs by talking about four points.

19   First, just a brief historical context of the claims and the

20   law in this case because I think that's important when we

21   evaluate the jurisdiction, the cases, and their applications

22   here.  Second is the Defendant's submission to this Court's

23   equitable jurisdiction and the effect of that.  And then,

24   thirdly, the effect or lack of effect of the withdrawal of

25   the claims and objections with prejudice.  And then, lastly,

Page 23

1   the factual effect of the withdrawal of those claims with

2   prejudice and the red judicata implications which may or may

3   not implicate what's even left for this Court to determine

4   based on those admissions in our view.

5            But I understand Ms. Neville and the Manns will

6   disagree.  But just by way of background, we first early on

7   in this case, which I think it's important to point out,

8   this Court entered an order that made it quite clear that

9   the filing of a proof of claim submitted that claimant to

10  this Court's equitable jurisdiction and put everyone on

11  notice that that was a volitional act, that it was a

12  tactical choice that all defendants had to make in the face

13  of -- or all claimants had to make in the face of avoiding

14  --

15           THE COURT:  But the argument is that it was

16  certainly a submission to the Court's equitable jurisdiction

17  with respect to determining the claim and any issues that

18  went into determining the claim.  The argument now is, well,

19  we've withdraw our claim or we're not going to litigate it

20  or whatever you want to call it.  So this lawsuit can't be

21  part of the claims resolution process because there is no

22  claim to resolve anymore.  That's the essence of your

23  argument.

24           MR. CREMONA:  I understand.  But I think there are

25  number of steps that you have to go through to get there,

Page 24

1   Your Honor.  I mean we mentioned in our papers you have

2   (indiscernible), you have (indiscernible).

3            THE COURT:  But they didn't present this

4   situation.  I don't know -- and I'll ask Ms. Neville whether

5   the disputes that when this adversary proceeding was filed,

6   the Court had equitable jurisdiction to decide it.

7            MR. CREMONA:  Can I establish certain fundamental

8   principles?

9            THE COURT:  Sure.

10           MR. CREMONA:  In June of 2009, these claimants

11  filed customer claims.  In November 2010, the Trustee filed

12  this avoidance action.  There is no dispute that those

13  claims at that point in time were pending.  And what

14  (indiscernible) requires and it teaches is that if that

15  proof of claim, that claimant is met with an avoidance

16  action, whether it's a preference or a fraudulent transfer

17  -- they are deemed to be the same -- that claim at that

18  point becomes part of the claims allowance process, that

19  claim being the --

20           THE COURT:  Yes adversary proceeding.

21           MR. CREMONA:  -- avoidance action.

22           THE COURT:  Correct.

23           MR. CREMONA:  And that invokes the debtor/creditor

24  relationship.  That is the law based on Langenkamp.  That is

25  unchanged by Stern.  So --

Page 25

1           THE COURT:  I agree with you on that.

2           MR. CREMONA:  Okay.  So --

3           THE COURT:  Since you raised Stern, let me ask you

4     a question about Stern.

5           MR. CREMONA:  Sure.

6           THE COURT:  Why didn't Mr. Marshall submit to the

7     equitable jurisdiction of the bankruptcy court on the

8     counterclaim by the debtor when he filed the proof of claim?

9           MR. CREMONA:  Because there the Court went to

10    great lengths to distinguish that situation from Langenkamp.

11    Those claims were completely unrelated.  It was a state law

12    tort claim, not a bankruptcy claim.  If Your Honor will

13    allow me, why I want to talk about the history of the law of

14    this case, there is no more apt situation to say that two

15    claims and -- the adversary and the claims are inextricably

16    intertwined.

17          What we have here, and I think it's important to

18    point out the background, while that claim was pending, the

19    Hine -- excuse me, the Manns participated in the

20    (indiscernible) decision by Judge Rakoff through the Hine

21    case which is one of the lead cases.

22          Judge Rakoff found in (indiscernible) that the

23    calculation of avoidance liability and the calculation of

24    net equity are the same.  And Your Honor in your Cohen

25    decision said exactly that.  And, you know, I could read to

Page 26

1    you the quote where you said exactly that.  So the point is,

2    and we've also -- and I think on --

3             THE COURT:  I think we had this discussion.

4             MR. CREMONA:  We did on September 26th --

5             THE COURT:  Right.

6             MR. CREMONA:  -- Your Honor actually said the

7    calculations are exactly the same.  So --

8             THE COURT:  I asked Ms. Neville how they were

9    different and --

10             MR. CREMONA:  Well --

11             THE COURT:  -- they aren't.

12             MR. CREMONA:  Well, she can assert that, but

13    that's further amplified by this, Your Honor.  The Trustee's

14    determination of net equity has an Exhibit A.  That Exhibit

15    A lists all the transactions.  The complaint has an Exhibit

16    B, lists the same transactions.  If you put them side by

17    side, they're the same.  The math is the same.  It's based

18    on the net, the netting of the account over the life -- the

19    netting of the deposits and withdrawal over the life of the

20    account.

21             One is an adjudication of avoidance liability, and

22    the other is an adjudication of net equity.  So my point is

23    here, this Court, the district court, any court, there's no

24    court that can adjudicate a defendant's final avoidance

25    liability while at the same time not simultaneously

Page 27

1    adjudicating their negative net equity.

2            So I raise that all because that is precisely a

3    scenario under Stern where those two claims, the adversary

4    and the claim, are inextricably intertwined.  There's no way

5    to separate the two.  And under that scenario, Your Honor

6    has final adjudicative authority.  And I think it cuts

7    through all of that.  And that's what Judge Daniels said in

8    his recent decision.  And, frankly, that's the reason why

9    we're here talking about a withdrawal of the claim.  This

10   withdrawal is blatantly in the face of Judge Daniels

11   decision.  It's absolutely gamesmanship.  It's precisely the

12   scenario that we discussed in EXDS that we discussed over

13   the last three hearings that the Court said was improper.

14           I mean this -- I guess to boil it down, Your

15   Honor, this Court's jurisdiction cannot fluctuate based on

16   the whim of the claimant.  And that's what would happen

17   here.  So I mean we can go through all the arguments, which

18   I'd like to do, but I mean we also assert that there's a

19   setoff claim here which is a live claim.  And that setoff

20   claim is tantamount to a proof of claim.  And if -- and Your

21   Honor recognized this in Cohen as well -- if you give

22   dollar-for-dollar credit to these affirmative defenses,

23   these setoffs, that is tantamount to giving net equity

24   claims.

25           So, again, that's another basis under Stern to say

1   that Your Honor has final adjudicative authority because

2   that absolutely implicates the claims allowance process.

3   There's no way to separate those two.  And we didn't get a

4   fair -- I mean the Defendant's papers don't really

5   adequately address that.  The (indiscernible) case in this

6   district says exactly that if you assert a counterclaim,

7   it's tantamount to a proof of claim which subjects that

8   defendant to this Court's equitable jurisdiction.

9            And now no matter -- okay, so that other claim's

10  been withdrawn with prejudice.  Now next week, they're going

11  to withdraw the affirmative defense and Your Honor's --

12            THE COURT:  Maybe they'll do it today.

13            MR. CREMONA:  Right.  And then you no longer have

14  jurisdiction.  That cannot be.  That cannot be the law.  So,

15  Your Honor, I may not have a lot more I'd like to get

16  through, but I do think that the Court ought to look at the

17  legal effect of the withdrawal of a claim.

18            We've gone through that.  You asked us to look at

19  that.  We've cited to this Court numerous cases, EXDS,

20  Enron, Worldcom.  Judge Gonzalez looked at that scenario in

21  both of those cases and found that essentially you can't

22  unring the bell.  You've submitted to jurisdiction, you

23  filed the proof of claim.  You can't subsequently withdraw

24  that when it suits you.  You can't, as these Defendants have

25  here, invoke this Court's equitable jurisdiction to

1    participate in the custom of property fund to the extent of

2    their net equity which it turns out they have none, but --

3    and then later or simultaneously preserve your right to a

4    jury trial.  The law prohibits that.  And that's what

5    Langenkamp said.  That's what EXDS says.

6              And there's nothing in Stern that changes that.

7    In fact, I think Stern reinforces that based on the reasons

8    we just talked about because there is no other scenario I

9    can think of where two claims are more inextricably

10   intertwined than new equity and avoidance liability and

11   value under 548(c) in this case.  So I mean there are -- we

12   don't want to use two sides of the same coin, but Your Honor

13   used that term in Cohen.  They're mirrored images of one

14   another.  Whatever you want to call it, the math is exactly

15   the same.

16             And we have to -- we have to look at these other

17   cases through that lens.  I mean you can't ignore -- we're

18   not writing on a clean slate here.  We're ten years in.

19   There's a law of this case which governs how this Court

20   exercises jurisdiction.

21             THE COURT:  Okay.

22             MR. CREMONA:  Thank you.  Well, can I make one

23   last point on --

24             THE COURT:  Make one last point.  I guess -- you

25   know, I got your argument.

1            MR. CREMONA:  Well, the only other point is on the

2      withdrawal of the claim with prejudice, I think that has

3      factual implications which go to whether or not there's a

4      jury trial, right, which I don't believe there is based on

5      all the case law we've cited.  But the point is they've

6      withdrawn the claim and objection with prejudice.  The

7      result of that is under the claims procedures order, they

8      are now bound by the Trustee's determination.  And that has

9      certain legal consequences which I think Your Honor alluded

10     to last time we were here, not the least of which is --

11            THE COURT:  It would be more than the Trustee's

12     determination.  If they had not responded to the Trustee's

13     determination, their claim would be stricken.  Arguably, the

14     withdrawal with prejudice would also use a adverse

15     determination on the various defenses.

16            MR. CREMONA:  Exactly.  That's where I was going,

17     Your Honor.  The determination says -- I guess let me put it

18     this way.

19            THE COURT:  It's not really the order so much as

20     the withdrawal of claim with prejudice.  Does that also mean

21     that, you know, collateral estoppel precluded from asserting

22     those items -- those defenses raised in the response.

23            MR. CREMONA:  That is what I would like to point

24     out.  I believe that they are.  The fact is the

25     determination provides that they've agreed now to the

Page 31

1    Trustee's net equity.  That is predicated on the fact that

2    this is in fact the Ponzi scheme.  That is what allows the

3    Trustee to calculate net equity in the manner in which he

4    does.  The Second Circuit approved of that calculation.

5           So I would submit that they have conceded it's a

6    Ponzi scheme.  The Trustee's determination also says that no

7    trades were made on behalf of any of these accounts.

8    They've conceded to that.  The determination letter also

9    says, and I know Your Honor had read a lot of these.  It

10   also says you were paid with fictitious profits from other

11   people's money.  All of those matters in our view are now

12   res judicata and collaterally estopped.

13          I raise all of that to say that now there is no

14   factual issue for any jury to determine.  All that's left

15   are legal issues.

16          THE COURT:  Are you proposing that assuming I

17   decide that I still have equitable jurisdiction that you're

18   going to make a motion for summary judgment?

19          MR. CREMONA:  I am.  But I think, Your Honor, it's

20   important for you to determine that you still have equitable

21   jurisdiction and --

22          THE COURT:  I understand that.

23          MR. CREMONA:  -- no, no, I'm sorry.  Let me --

24          THE COURT:  Well, actually you could still move

25   for summary judgment even if I didn't.

1             MR. CREMONA:  But my point is I agree --

2             THE COURT:  Because I still want subject matter

3      jurisdiction.

4             MR. CREMONA:  You always have.

5             THE COURT:  Yeah.

6             MR. CREMONA:  But my point is you have final

7      adjudicative authority, so that is a distinction which still

8      warrants decision on this point because then the summary

9      judgment is a final order as opposed to a ruling and

10     recommendation.

11            THE COURT:  All right.  Thank you.

12            MR. CREMONA:  But just to close, Your Honor, we

13     are prepared expeditiously to move for summary judgment.

14            THE COURT:  Okay.

15            MR. CREMONA:  If that's how the Court wants to

16     proceed.

17            THE COURT:  All right.

18            MR. BELL:  Briefly, Your Honor.  SIPC's strongly

19     supports the Trustee's position and stands on its

20     memorandum.

21            THE COURT:  Thank you very much.

22            MS. NEVILLE:  Carole Neville and again --

23            THE COURT:  Well, let me ask you a question

24     because I know where I'm going to begin.

25            MS. NEVILLE:  Can I just introduce myself for the

Page 33

1    record?

2              THE COURT:  Sure.  Go ahead.

3              MS. NEVILLE:  Carole Neville from Dentons on

4    behalf of the Defendants.

5              THE COURT:  Do you dispute that when the adversary

6    proceeding was filed, this Court had equitable jurisdiction

7    to make a final determination forgetting about when Stern

8    was decided, but had equitable jurisdiction to decide this

9    adversary proceeding because it was part of the claims

10   allowance process?

11             MS. NEVILLE:  Well, I never thought it was part of

12   the claims allowance process, and that's why --

13             THE COURT:  Okay.  Tell me more about that.

14             MS. NEVILLE:  -- Your Honor and I have kind of

15   played this game --

16             THE COURT:  Because they didn't assert a 502(d)

17   claim.

18             MS. NEVILLE:  No.  They didn't even assign -- they

19   didn't even assert an objection to claim.  They did nothing.

20   In fact, they advocated --

21             THE COURT:  Well, but the determination was their

22   objection.

23             MS. NEVILLE:  No.  Here's the difference.  If you

24   have -- I assert a claim based on my contract.

25             THE COURT:  Right.

Page 34

1          MS. NEVILLE:  The Trustee said breach of contract,

2     fraudulent conveyance, whatever.  Those two things are

3     intimately related.  I asserted a claim for net equity.

4     They came back and said I'll take care of your claim in the

5     claims allowance process.  You owe me money.  And my answer

6     is not I have a net equity claim, but I have a legitimate

7     contract right under federal securities law.

8          They're not met.  There was no joinder.  There was

9     no joinder formally, and there was no joinder --

10          THE COURT:  But you know?

11          MS. NEVILLE:  -- substantively.

12          THE COURT:  Can I interrupt you?  A lot of the

13     cases that I've read talk about a submission to equitable

14     jurisdiction without regard to whether there's an objection

15     or not.  That is once you file a claim, you're in for

16     everything.

17          MS. NEVILLE:  I know.  But I think that when

18     looking at these cases, first of all, Second Circuit law

19     says the filing of a claim is not a submission to equitable

20     jurisdiction for all purposes.

21          THE COURT:  Right.

22          MS. NEVILLE:  It says that --

23          THE COURT:  So in the Stern situation, it's not a

24     submission.  That's why I asked (indiscernible) the

25     question.

Page 35

```
1              MS. NEVILLE:  Well, it says it has to involve the

2      claims allowance process.

3              THE COURT:  Okay.  And you're --

4              MS. NEVILLE:  And they didn't.

5              THE COURT:  -- and you're saying that when this

6      adversary proceeding was filed, it did not implicate the

7      claims allowance process?

8              MS. NEVILLE:  That's correct.

9              THE COURT:  Okay.

10             MS. NEVILLE:  Okay.  Now let me just add one point

11     to that.  Judge Lifland had already entered an order in the

12     Mann -- with respect to the Mann claim striking the net

13     equity, striking the objection, and denying the net equity.

14     So we already by the time they filed the adversary had a

15     denial of the net equity claim.

16             THE COURT:  Yeah.  But you were also contesting

17     the deposits and withdrawals; weren't you?

18             MS. NEVILLE:  Yes, at that point it was.

19             THE COURT:  So there was a live claim, correct?

20             MS. NEVILLE:  But there was a substantive

21     determination.

22             THE COURT:  It's like a motion for partial summary

23     judgment.

24             MS. NEVILLE:  Right.

25             THE COURT:  It's still a live dispute.
```

Page 36

1              MS. NEVILLE:  Okay.

2              THE COURT:  Just one of the issues was resolved.

3              MS. NEVILLE:  But they did have the option in

4     every single one of those cases that they cite, every single

5     one of them has either a claims allowance dispute in the

6     adversary or 502(d).  So --

7              THE COURT:  But, you know, 502(d) doesn't -- if

8     they prevail in their fraudulent transfer suit, 502(d)

9     doesn't give me any discretion.  It says the claim is

10    disallowed.

11             MS. NEVILLE:  I know, but you know, they couldn't

12    have had a 502(d) claim if we had a negative net equity.  So

13    they couldn't have a claims allowance --

14             THE COURT:  You are always contesting and until I

15    saw the proposed pretrial order, I thought you were always

16    contesting the deposits and withdrawals.

17             MS. NEVILLE:  You know, Your Honor, in this case,

18    we didn't have -- and, in fact, in all of the cases, we

19    didn't have all of the documents.  The Trustee is the only

20    one who had them.  Once --

21             THE COURT:  You didn't have the documents relating

22    to your deposits and withdrawals?

23             MS. NEVILLE:  A lot of my clients don't.

24             THE COURT:  Did you ever -- I mean, you know, I've

25    seen in other contexts, Mr. (indiscernible) expert reports

1    and Ms. (indiscernible) expert reports.  And they document

2    with Bates numbers every single deposit and withdrawal it

3    looks at.

4              MS. NEVILLE:  Yes.  But, you know, some of these

5    deposits went back a decade.  So you didn't know for sure.

6    The people are in their 80s and 90s.  This --

7              THE COURT:  Okay.  So you're still contesting the

8    deposits and withdrawals?

9              MS. NEVILLE:  But no, no.  No, when we -- and --

10             THE COURT:  So what are you --

11             MS. NEVILLE:  -- for the Manns, no.

12             THE COURT:  What do you think that's the --

13             MS. NEVILLE:  We're not contesting it.  And, first

14   of all, you made an invitation for me to withdraw the claim.

15             THE COURT:  Right.

16             MS. NEVILLE:  I didn't think we even needed to.

17   If I had thought we needed to --

18             THE COURT:  You want to --

19             MS. NEVILLE:  -- I would have made the motion.

20             THE COURT:  -- withdraw your withdrawal?

21             MS. NEVILLE:  No, because it doesn't matter.

22             THE COURT:  Okay.

23             MS. NEVILLE:  The claim was finally disallowed,

24   and these cases --

25             THE COURT:  I don't understand how you can keep

1    saying that when you were continually contesting the factual

2    --

3              MS. NEVILLE:  We're not contesting anything

4    anymore.  We're not contesting anything.  There were two

5    Second Circuit decisions that decided the two main issues

6    which was net equity and adjustment to net equity.  And

7    we're not contesting the ins and outs.  So what's left?

8    What's left?

9              THE COURT:  So what's the factual dispute that has

10   to be tried?

11             MS. NEVILLE:  Because that's not the claim --

12   that's not the defense.  And that's what --

13             THE COURT:  What's the factual dispute that has to

14   be tried in this adversary proceeding?

15             MS. NEVILLE:  Well, there are two things.  One,

16   whether there's a Ponzi scheme, which I absolutely dispute

17   and we have conceded it.

18             THE COURT:  Well, they contend that by withdrawing

19   your claim with prejudice, you --

20             MS. NEVILLE:  I'm conceding everything?

21             THE COURT:  Go ahead.  Finish up.

22             MS. NEVILLE:  No, I --

23             THE COURT:  If you keep interrupting me --

24             MS. NEVILLE:  Sorry.  I'm sorry.

25             THE COURT:  Go ahead.

1              MS. NEVILLE:  It's frustrating, though, because

2       we're hearing the other side of the coin thing ad nauseum,

3       and it isn't the other side of the coin.  The defense under

4       548(c) is a radically different thing than net equity.  And

5       that's just such a fundamental thing.

6              THE COURT:  But that's not what we're talking

7       about.  The other side of the coin argument is the

8       computation of net equity and fictitious profits.  And I

9       remember specifically asking you the last time what's the

10      difference, and you couldn't say one, come up with one.  I

11      understand that you think your defenses apply differently in

12      the adversary proceeding than they may apply in the net

13      equity context, but the computation of new equity and

14      fictitious profits for fraudulent transfer purposes is

15      precisely the same.

16             MS. NEVILLE:  That only relates to their claim

17      against me for fraudulent conveyance.  It does not relate to

18      my defense, which is not -- which is based, as you know, on

19      unavoided obligations which are the --

20             THE COURT:  But I can decide that as a matter of

21      law.  I don't need a trial for that.

22             MS. NEVILLE:  Well --

23             THE COURT:  Do I?  Hasn't all this been decided?

24             MS. NEVILLE:  I see why I'm frustrated.

25             THE COURT:  I understand you dispute it and at

Page 40

1    some point, probably Judge Rakoff's determinations of those

2    issues will go to the Second Circuit as the

3    extraterritoriality determination went up there.  But I can

4    decide these issues as a matter of law.  I have decided

5    these issues already.

6             MS. NEVILLE:  You decided them in the context

7    where people acknowledged the Ponzi scheme presumption.  And

8    the difference for me is that the reason you don't enforce a

9    contract in a Ponzi scheme is a public policy.  But we're

10   arguing federal securities law which trumps this policy.

11            THE COURT:  But that's the argument that Mr. Kirby

12   made on Section, what was it, 28 and 29 --

13            MS. NEVILLE:  But he conceded it was a Ponzi

14   scheme.  He conceded that, and I'm not conceding.

15            THE COURT:  Well, they're arguing you did.  Okay.

16            MS. NEVILLE:  But let me just -- I would like to

17   finish because the gamesmanship argument is driving me nuts.

18   You made the invitation to me.  I didn't really care.

19   Second of all, that jury trial demand --

20            THE COURT:  Well, but that's in light of Judge

21   Daniels' decision in the Nelson and Sarah Lawrence cases

22   that as long as you have a pending claim that hasn't been

23   withdrawn, you're within the equitable jurisdiction of the

24   bankruptcy court --

25            MS. NEVILLE:  Yes.  And --

1          THE COURT:  -- or not entitled to a jury trial.

2          MS. NEVILLE:  I think I laid out what I think

3     about that decision.  It was based on absolute fraud on the

4     part of the Trustee.

5          THE COURT:  What was the fraud on the part of the

6     --

7          MS. NEVILLE:  The fraud was that he misquoted

8     Judge Rakoff, attributed to Judge Rakoff the two sides of

9     the coin issue, argued that he had a viable 502(d) claim,

10    which he does not, and also argued the dicta in that Stern

11    decision as the holding from Judge Rakoff, not the part

12    where Judge Rakoff said there's more to decide in the

13    adversary proceeding than just net equity.  And that's what

14    the Stern decision says.  And the trustee with five partners

15    signing off lied to Judge Daniels about what was going on.

16         MR. CREMONA:  Your Honor, I'd like to address

17    that.  I can't let that --

18         THE COURT:  Well, why don't you raise that --

19         MR. CREMONA:  I will refute that --

20         THE COURT:  Hold up.  Hold up.  Why don't you

21    raise that before Judge Daniels before a disciplinary

22    committee.

23         MS. NEVILLE:  Yeah.

24         MR. CREMONA:  Your Honor?

25         MS. NEVILLE:  Well, I raised it in my papers --

Page 42

1              MR. CREMONA:  Your Honor?

2              MS. NEVILLE:  -- but I refuse to rely on that

3    Sarah Lawrence decision because when I read that, I was

4    appalled.

5              MR. CREMONA:  Can I just --

6              THE COURT:  You may refuse to rely on it.

7              MR. CREMONA:  Can I correct a couple of quick

8    things, Your Honor?

9              THE COURT:  Let her finish.  Then I'll give you a

10   chance.

11             MR. CREMONA:  Okay.

12             MS. NEVILLE:  And let's talk about the

13   gamesmanship.  The jury trial was in there from the get-go.

14   As I understand it, the law in this jurisdiction still is

15   that you go through all of the preliminary issues up to

16   trial before you move to the district court.  That's the law

17   in this district.  This is not gamesmanship.

18             THE COURT:  Well, the practice.  The --

19             MS. NEVILLE:  The practice.

20             THE COURT:  Right.

21             MS. NEVILLE:  Whatever.  The practice.

22             THE COURT:  All right.  Maybe -- you're suggesting

23   I put you -- I kind of blindsided you with that question

24   about whether you want to withdraw the claims.  Do you want

25   to retract your withdrawal of the claim?

Page 43

1                MS. NEVILLE:  It doesn't matter to me because what

2      I said was the claim was --

3                THE COURT:  Just tell me.  Just answer my

4      question.

5                MS. NEVILLE:  I want to know that what I'm

6      withdrawing is what I say I'm withdrawing, which is exactly

7      only the claim, not the 500 presumptions that he wants to

8      lay onto the claim.

9                THE COURT:  Well, that will be decided possibly in

10     the context of a motion for summary judgment.  That's not

11     being decided today the effect of your withdrawal on the

12     factual -- on any factual issues that may exist.  Look, I

13     didn't mean to blindside you.  I thought I was moving this

14     process along, but if you --

15               MS. NEVILLE:  Oh, I'm not --

16               THE COURT:  -- if you want to retract it, just

17     tell me yes or no.  Don't tell me conditions.  Just tell me.

18               MS. NEVILLE:  And I'm not General Flynn.  I knew

19     what you were asking, and I went ahead and did it.  But I do

20     think that --

21               THE COURT:  Do you want to withdraw --

22               MS. NEVILLE:  No.

23               THE COURT:  Okay.

24               MS. NEVILLE:  No.

25               THE COURT:  Good.

Page 44

1                    MS. NEVILLE:  I don't.

2                    THE COURT:  All right.

3                    MS. NEVILLE:  But I want to be able to say let's

4       not just read cases that have really sweet-sounding

5       decisions and have nothing to do with the facts of this

6       case.  This proceeded for ten years at a billion dollars for

7       these guys on two completely separate tracks.  And that's

8       absolutely true.  There was no joinder of the adversary

9       proceeding to the claims allowance process.  And Mr.

10      Cremona's analysis only goes to the fact that he will only

11      see things within the Ponzi scheme context, which is that

12      everything over your investment is fictitious profits and

13      we're entitled to it.

14                    And that is not our defense.  So I -- the

15      differences between this case and the cases that are cited,

16      first of all, Exodus or EXDS is not a Second Circuit case.

17                    THE COURT:  Exodus was a book and movie.

18                    MS. NEVILLE:  Pardon me.

19                    THE COURT:  Go ahead.

20                    MS. NEVILLE:  Isn't it that EXDS Communications is

21      the real name in that case?

22                    THE COURT:  You left out some bells I think.

23                    MS. NEVILLE:  It is not a Second Circuit case.

24      And the Second Circuit is really clear that the filing of a

25      claim does not -- is not the whole story.

Page 45

1          THE COURT:  I heard you.

2          MS. NEVILLE:  So does this implicate the claims

3    allowance process?  The adversary says no.  We're not going

4    to do it.  I think that's a screw-up on their part, but they

5    did it.  They did not join the adversary to the claims

6    allowance process.  So we went up to the Second Circuit.  We

7    went up to the Supreme Court twice.  Didn't get anywhere on

8    the Supreme Court, but we went there twice on a claims

9    allowance.  And that said no net equity, no final statement,

10   and no adjustment to net equity.  That ended my claim.

11          THE COURT:  I disagree.

12          MS. NEVILLE:  Once we knew that --

13          THE COURT:  I disagree.

14          MS. NEVILLE:  -- the calculation was right.

15          THE COURT:  And we've been through this before,

16   but you are still pursuing the argument that they

17   miscalculated the deposits and withdrawals.  So even under

18   the net equity decision, you still have a claim that you

19   (indiscernible).

20          MS. NEVILLE:  You know, at that point --

21          THE COURT:  You may not have prosecuted it or the

22   Trustee may not have made a motion of some sort, but you

23   still would have had a live claim.

24          MS. NEVILLE:  The net equity said money inverse is

25   money out.  Once he filed that chart, I had no way to

Page 46

1    dispute it.

2              THE COURT:  Yet you disputed it.

3              MS. NEVILLE:  Now other ones I do dispute.

4              THE COURT:  Because after he filed the

5    determination letter which had the same chart, you disputed

6    it.  That's what discovery is for.  You could have taken

7    discovery.

8              MS. NEVILLE:  Right.  If you want to say we still

9    have a live claim, that's fine.  But the live claim is often

10   in another proceeding.  It is not joined to this adversary

11   proceeding.

12             THE COURT:  Okay.

13             MS. NEVILLE:  And the fact that he wants to go

14   forward with the calculation of what he claims is the

15   fraudulent transfer is very different than the 548(c)

16   defense that I have.

17             THE COURT:  Thank you.

18             MR. CREMONA:  Can I, Your Honor, very quickly just

19   address some of those inaccuracies?  Number one, the EXDS

20   case is entirely consistent with law of this circuit.  We

21   talked about germane (phonetic)_ but the more apt case is In

22   re CBI EMY and that talks about the reasons why germane

23   didn't -- came out differently is because it didn't involve

24   a preference.  It didn't involve --

25             THE COURT:  It was the trustee who wanted the jury

Page 47

1    trial in that?  Yes.

2         MR. CREMONA:  And it didn't have a fraudulent

3    transfer claim that invoked the claims allowance process in

4    the way that this does.

5         Secondly, Ms. Neville keeps bringing up the net

6    equity order.  That order is quite clear that the balance of

7    her claims were not expunged or retained by this Court.  Any

8    argument otherwise is belied by the fact that she litigated

9    here from 2010 until 2015.  If the claim was resolved, as

10   Your Honor pointed out, she wouldn't have done any of that.

11        Next, she talks about Stern v. Marshall and our

12   misrepresentation to the district court.  That is flat out

13   false.  What we quoted to the district court was that

14   standing alone -- what she quotes is standing alone, a net

15   equity claim doesn't resolve the issues in an adversary.

16   What is here is not that.  What is here is a net equity

17   claim, an objection, and ongoing litigation.  So it's

18   entirely different.

19        THE COURT:  So she -- her argument though is -- or

20   one of her arguments is that the adversary proceeding didn't

21   object to the claim.  And I think you said at some point

22   that you were going to follow a different route with respect

23   to the claim.

24        MR. CREMONA:  But, Your Honor, that's just merely

25   based on a simple fact.  The bar date here for claims is

1    statutory at six months.  To bring an avoidance action, you

2    have under 546(a) two years.  That didn't coincide at the

3    outset of the case.  And once it did, we've clearly filed a

4    process all throughout, as Your Honor knows.  You entered 23

5    orders resolving pending claims, and none of those, none

6    include adversary proceedings because they are now being

7    resolved collectively as a result of where we are.  We

8    didn't know we were suing certain people when the bar date

9    occurred.  That's the reason for that separation.

10            There is -- it's entirely consistent.

11            THE COURT:  But you filed this adversary

12    proceeding after the bar date, right?

13            MR. CREMONA:  That's true.

14            THE COURT:  So why didn't you object to the claim

15    under 502(d) or in any other manner in the adversary

16    proceeding?

17            MR. CREMONA:  But as we've talked about, Your

18    Honor, 502(d) operates as a matter of law.  There was no

19    need to.

20            THE COURT:  But you'd still have to make a claim

21    objection then.

22            MR. CREMONA:  And we did.

23            THE COURT:  When did you make an objection to her

24    claim?

25            MR. CREMONA:  We -- the Trustee denied it.  Then

Page 49

1   there was an objection filed, and we were waiting to

2   schedule it to resolve it as part of this adversary

3   proceeding --

4               THE COURT:  All right.

5               MR. CREMONA:  -- which is why I'm saying it's

6   entirely consistent.

7               THE COURT:  All right.

8               MR. CREMONA:  Two more quick points, Your Honor.

9               THE COURT:  Yeah.

10              MR. CREMONA:  Ms. Neville is talking about being

11  blindsided by your invitation to withdraw --

12              THE COURT:  Well, I asked her if she wanted to

13  retract it.

14              MR. CREMONA:  But --

15              THE COURT:  She said no.  So she's ratified it.

16              MR. CREMONA:  But the point is she made a motion

17  -- she sought to withdraw all her claims.  Prior to that, we

18  moved to strike it, and you granted it.

19              THE COURT:  Yeah.  She sought to withdraw her

20  objection.

21              MS. NEVILLE:  No, I didn't.

22              MR. CREMONA:  I mean, Your Honor, I think --

23              THE COURT:  It's an unusual procedure, but, you

24  know, that's what it was.

25              MR. CREMONA:  And just to put to rest -- I am

Page 50

1    sorry I have to do it -- on this two sides of the same coin

2    and the fact that she seems to say we misquoted Judge

3    Rakoff.  I'd like to read to you Your Honor's Cohen decision

4    which is 2016 Westlaw 1695296.  This is Your Honor's

5    language: "Net equity and fictitious profits are two sides

6    of the same coin, Antecedent Decision. 499 B.R. 420.  In

7    both cases, the trustee net deposits against withdrawals.

8    Net losers have net equity claims against the customer

9    property estate, and net winners are subject to liability in

10   connection with the fraudulent transfer, again citing

11   Antecedent Debt."

12            Antecedent Debt by Judge Rakoff, he says in his

13   conclusion -- just bear with me on second because we keep

14   doing this and it's I think inappropriate.  Judge Rakoff

15   says: "Furthermore, the Court finds that a straight netting

16   method subtracting total withdrawals from total deposits of

17   principal is the appropriate way to calculate not only net

18   equity but also the defendant's fraudulent transfer

19   liability."

20            Thank you, Your Honor.

21            MR. BELL:  Your Honor, if I might?  The Trustee

22   and Ms. Neville submitted orders to enact the withdrawal of

23   the claim and the objections.

24            THE COURT:  Yeah.  I want to hear this --

25            MR. BELL:  I would request that you enter an order

Page 51

1    so that we could move forward along the path you've directed

2    today.

3              THE COURT:  Here's what I'd like you to do.  Make

4    a motion summary judgment.  I'll deal with the equitable

5    jurisdiction question either before or in the context of

6    that motion.  My inclination is to conclude I have -- I

7    continue to have equitable jurisdiction.  Nobody's mentioned

8    it, but the general --

9              MS. NEVILLE:  Your Honor?

10             THE COURT:  Let me just finish, will you?  The

11   general rule in federal jurisdiction is it's determined at

12   the time that the -- the proceeding is commenced and nothing

13   that occurs afterwards subtracts from it.  I'm not

14   technically talking about subject matter jurisdiction

15   because I always have subject matter jurisdiction over this.

16   We're talking about an aspect, I guess, of subject matter

17   jurisdiction.  But make your motion.  You can make your

18   arguments about res judicata or collateral estoppel.  And

19   you can respond.

20             I guess there's a stipulation of facts in this

21   case in the draft -- in the pretrial order that's been

22   signed by the parties.

23             MR. CREMONA:  That's correct, Your Honor.

24             THE COURT:  So I will -- you know, and I

25   understand what the factual question is and -- but for the

1    collateral estoppel, res judicate argument, I'm not sure

2    that that factual question can be resolved on a motion for

3    summary judgment unless the allocution is sufficient to do

4    that.  I don't know when your transfers occurred.

5         MR. CREMONA:  All were after 1996.

6         THE COURT:  Oh, all right.

7         MR. CREMONA:  So it takes that out of the

8    equation.

9         THE COURT:  Were there any inter-account

10   transfers?

11        MR. CREMONA:  No.

12        THE COURT:  All right.

13        MR. CREMONA:  So, Your Honor, if I may, just as a

14   --

15        THE COURT:  Well, it may be a very simple case

16   where, you know, I have the allocution, then you have to

17   come forward with evidence showing that there was no, you

18   know, Ponzi scheme.

19        MR. CREMONA:  Just as a housekeeping

20   matter, as Mr. Bell pointed out, the withdrawal order

21   implicated both this motion and the motion that's pending

22   before the District Court.  The District Court extended our

23   time to see whether an order was going to be entered, so I

24   would just submit, we submitted competing order but both

25   orders agree --

1           THE COURT:  Well, all the order is going to say is

2    that the matter -- the claim is withdrawn with prejudice but

3    without regard to the rights of the parties targets cross

4    jurisdiction or anything else.

5           MR. CREMONA:  That --

6           THE COURT:  With a determination of the effective

7    -- without determining the effect of that withdrawal on --

8           MR. CREMONA:  I think that much we agreed upon and

9    --

10          THE COURT:  Yeah.

11          MR. CREMONA:  -- if Your Honor would enter an

12   order to that effect --

13          THE COURT:  I will.

14          MR. CREMONA:  -- give us the necessary clarity on

15   the --

16          THE COURT:  Okay.

17          MR. CREMONA:  -- papers.

18          THE COURT:  Fair enough.

19          MS. NEVILLE:  Your Honor, I just -- I'd like to

20   ask you to refer again to the pleading that I filed, because

21   I went to a great deal of --

22          THE COURT:  I certainly will.  But I'm not --

23   look, I told you what I'm going to do today.  It's not

24   necessary to continue to argue.

25          MS. NEVILLE:  Well, I want to just add one thing.

Page 54

1    First of all, when I went back to look at the pretrial

2    order, it is a mess.  It's full of typos and errors, and we

3    really need to fix it.  It was done to try to meet the

4    deadline that we had imposed --

5              THE COURT:  Okay.

6              MS. NEVILLE:  -- on ourselves, and it's a mess.

7    That's number one.  Second, I'd like to point out that the

8    quote that Mr. Cremona just read is you citing Judge

9    Rakoff's decision in which the Trustee is arguing two sides

10   of the coin.  That argument has been perpetuated through the

11   Trustee's argument, not through --

12             THE COURT:  You know, I've already --

13             MS. NEVILLE:  -- any decision.

14             THE COURT:  I've already said -- first of all,

15   there's nothing that you can say that will convince me that

16   the computation -- just talking about the computation -- of

17   net equity is any different from fictitious profits.  So

18   let's just stop.  I've told you what I'm going to do.  I

19   will enter the order today.  It'll be a vanilla order that

20   would grant your motion to withdraw with prejudice without

21   determining the effect of that withdrawal on any of the

22   issues in the case.

23             MR. CREMONA:  Can we --

24             THE COURT:  That's all.

25             MR. CREMONA:  Can we establish, Your Honor, a

1    briefing schedule since we're all here?  I'd like to --

2              THE COURT:  Well, let's -- you can file it.  If

3    you can arrange a briefing schedule, that's fine, but you

4    can file your motion.  If you think that there are typos,

5    particularly in the stipulation of facts, that's -- the rest

6    of it doesn't really matter -- submit a list to Mr. Cremona.

7    If he agrees -- he can submit his own list, but if you can

8    agree on what the typos are, I can correct them or you can

9    submit a corrected stipulation of facts.

10             I don't want to get into a situation where you say

11   that stipulation doesn't count and let's start over.  I have

12   a stipulation of facts and unless something comes to my

13   attention that indicates there's an error in there, that's

14   what I'm going to use.  Okay?

15             MR. CREMONA:  Thank you, Your Honor.

16             THE COURT:  Thanks.  I want to advise the District

17   Court what's going on here.  I don't know if that will

18   affect what occurs.

19             MR. CREMONA:  While we intended, Your Honor, to

20   file our response which is due on the 30th and now I think

21   with the order being entered, that clarifies where things

22   stand.

23             THE COURT:  Why don't you submit -- because I have

24   a lot of these dueling orders, just submit a plain vanilla

25   order that says the motion -- the oral motion to withdraw

Page 56

1    the claim with prejudice is granted but nothing herein

2    constitutes a determination of any -- of the effect of that

3    withdrawal on any of the issues in the case.

4             MR. CREMONA:  Absolutely, Your Honor.

5             THE COURT:  Okay, so it's clear.

6             MR. CREMONA:  We will do that in short order.  And

7    the next matter, if Your Honor is so inclined, are the two

8    motions filed by Ms. Chaitman --

9             THE COURT:  Okay.

10            MR. CREMONA:  -- in the Saren-Lawrence cases.

11            THE COURT:  Go ahead.

12            MS. CHAITMAN:  Helen Davis Chaitman on behalf of

13   the Nelsons and Ms. Saren-Lawrence.  Your Honor, I don't

14   know if what just occurred impacts your view of the trial

15   schedule for these cases, but we asked for an adjournment of

16   the trial dates based upon the amended initial disclosures

17   that the Trustee has served.

18            THE COURT:  Okay.  But his argument is that he

19   wasn't required to serve them in your case or your cases,

20   because he didn't intend to rely on those people or those

21   witnesses in your cases.

22            MS. CHAITMAN:  It's -- that's not sufficient, Your

23   Honor, to satisfy just the most fundamental requirements of

24   due process of law because in responding to the -- in the

25   initial disclosures, the Trustee stated that these people

Page 57

1   did not have knowledge relevant to the issues that he now

2   claims they --

3            THE COURT:  He said they did not have knowledge?

4            MS. CHAITMAN:  He stated --

5            THE COURT:  Do you have a copy of his initial

6   disclosures?

7            MS. CHAITMAN:  Yes.

8            MR. HUNT:  Would you like me to bring you a copy,

9   Your Honor?  It's actually Exhibit A to our --

10           THE COURT:  What exhibit is it?  Which motion is

11  this, by letter?  B?

12           MR. HUNT:  This is the motion to stay our response

13  --

14           THE COURT:  So where are your responses -- I mean,

15  your mandatory disclosures?

16           MR. HUNT:  They're on Pages 2 and 3.

17           THE COURT:  Of which exhibit?

18           MR. HUNT:  Of Exhibit A, and then we also filed an

19  amended (indiscernible).  It's essentially the same.

20           THE COURT:  These are the amended initial

21  disclosures in another case.  Where are the initial

22  disclosures in this case -- or these cases?

23           MR. HUNT:  This is in the Saren-Lawrence case

24  which I think --

25           THE COURT:  Looks like Romanette A.  Is this --

1              MR. HUNT:  Maybe she's referring to something

2      different.

3              MS. CHAITMAN:  You know what, Judge, I can't find

4      it right this second.

5              THE COURT:  Well, somebody's got to show me the

6      initial disclosures.  It's one thing to say that they never

7      disclosed it.  It's another thing to say that they made an

8      affirmative representation that these people did not have

9      knowledge of relevant facts, which may still be true.

10             MR. HUNT:  Your Honor, if I can approach --

11             THE COURT:  Yeah.

12             MR. HUNT:  -- I'll just give you a copy.

13             THE COURT:  Thanks.

14             MR. HUNT:  (Indiscernible).

15             THE COURT:  Where in these disclosures does it say

16     that the people that they've now disclosed have no

17     knowledge?

18             MS. CHAITMAN:  You know what, Judge, I'm just

19     having trouble finding it.

20             THE COURT:  I don't think it says that.  It just -

21     - the identity -- Mr. Hunt gave me the initial disclosures.

22     Or these are the amended initial disclosures, in the Saren-

23     Lawrence matter.

24             MS. CHAITMAN:  Isn't there a sentence there that -

25     - it named certain people and then it said that the Trustee

1    was not going to rely upon them?

2              THE COURT:  I don't see that.

3              MR. HUNT:  It's --

4              THE COURT:  Is that in the original?  These are

5    the amended.

6              MR. HUNT:  Paragraph 5, I believe, Your Honor.

7              THE COURT:  Where are the originals?

8              MS. CHAITMAN:  -- looking.

9              THE COURT:  These are undated, anyway.

10             MS. CHAITMAN:  Yeah, this is what it is.  It's

11   Paragraph 5.  Do you see that on Page 3?

12             THE COURT:  No, I'm having trouble finding the --

13             MS. CHAITMAN:  It says --

14             THE COURT:  Oh, DiPascali -- where it says --

15             MS. CHAITMAN:  Yeah, it says, "Frank DiPascali,

16   deceased, and Erin Reardon were employed by BLMIS and upon

17   information and belief performed managerial, administrative,

18   and/or supervisory work for BLMIS.  Be advised that the

19   Trustee does not expect to rely on former BLMIS executives

20   or employees at trial."

21             THE COURT:  Okay.

22             MS. CHAITMAN:  Okay.  So --

23             THE COURT:  And he's not.  He's going to try and

24   prove his case, I guess, through his forensic accountants.

25             MS. CHAITMAN:  Here's the problem, Your Honor.

Page 60

1    Even though the case management order said that the

2    discovery ended on specific dates for the Saren-Lawrence and

3    Nelson cases, the orders of Magistrate Judge Moss and then,

4    as incorporated in your order you entered, said that all

5    decisions on discovery related to all of my clients and we

6    demanded information in our initial document demands and in

7    our later documents demands, which included the Saren-

8    Lawrence and Nelson cases, and the discovery that --

9              THE COURT:  But what if you asked -- in other

10   words, are you saying -- putting aside the mandatory

11   disclosures, that you asked for the identity of witnesses

12   with some knowledge, or something like that, and they didn't

13   disclose what they're now disclosing in mandatory disclose -

14   - I just don't understand what the argument is.

15             MS. CHAITMAN:  Sure.  It's --

16             THE COURT:  Because their argument is pretty

17   straightforward, Ms. Chaitman.  They only have to disclose

18   who they're going to rely on and they've done that.

19             MS. CHAITMAN:  They -- one of the things that

20   we've been fighting over for two-and-a-half years or maybe

21   even close to three years, is the trading records, the

22   third-party trading records.  And that's now been submitted

23   to Magistrate Judge Moss.

24             THE COURT:  But let me come back to the motion.  I

25   thought your motion was you wanted to adjourn the trial and

Page 61

1   take discovery based upon supplemental disclosure --

2   supplemental mandatory disclosures which had been filed in

3   other cases.

4           MS. CHAITMAN:  Their amended initial disclosures.

5           THE COURT:  Okay, but they never filed amended --

6   did they file amended initial disclosures in your cases that

7   identified different people?

8           MS. CHAITMAN:  They didn't disclose -- they've now

9   disclosed millions of new documents that they had not

10  previously disclosed in their disclosures.  Now --

11          THE COURT:  In your case?

12          MS. CHAITMAN:  Yes.

13          THE COURT:  In these cases?

14          MS. CHAITMAN:  They -- Judge, just let me step

15  back and say one thing.  If you recall, they recently in the

16  spring filed a motion for a new omnibus proceeding where

17  they would take all of the depositions and discovery that

18  they now are indicating through the amended initial

19  disclosures.  In that motion, even though all discovery was

20  ended in these cases, they sought to included these cases in

21  the new discovery.

22          THE COURT:  Let me stop.  Are you saying that in

23  your three -- in the three cases we're talking about or in

24  any on of the three cases --

25          MS. CHAITMAN:  Yes.

Page 62

1              THE COURT:  -- we're talking about, they disclosed

2     certain witnesses and documents and then after discovery was

3     closed in these three cases filed supplemental disclosures

4     where they identified new witness -- or new people they were

5     going to rely on or new documents they were going to rely

6     on?

7              MS. CHAITMAN:  In all the other cases where --

8              THE COURT:  Okay.

9              MS. CHAITMAN:  -- the factual issues are

10    identical.

11             THE COURT:  But they can't use -- if they need

12    those documents --

13             MS. CHAITMAN:  But we need it.  We need it.  They

14    have never produced the trading records.  They're now

15    talking about --

16             THE COURT:  They're not going to use them, though.

17    That's what they're saying.

18             MS. CHAITMAN:  But we need them, Your Honor.

19             THE COURT:  But did you ever ask for them in this

20    --

21             MS. CHAITMAN:  Of course I did.

22             THE COURT:  Did you file discovery requests in

23    these adversary proceedings?

24             MS. CHAITMAN:  I filed discovery requests in all

25    of my cases, Your Honor, and I requested that all of my

Page 63

1    clients be treated the same for all these discovery motions.

2    Instead of filing 75 or 80 discovery motions, I filed them

3    all in Wilenitz.  The Wilenitz motions were before you, they

4    were before Magistrate Judge Moss.

5              THE COURT:  Was discovery still open in these

6    three cases when you did that?

7              MS. CHAITMAN:  The case management orders were --

8    show that discovery was over, but discovery was still

9    requested.  We hadn't resolved the discovery that was asked

10   for.

11             THE COURT:  But that was in other cases where

12   discovery was still open.

13             MS. CHAITMAN:  No.  It was in all of them, Judge.

14   That's why there are orders entered by Magistrate Judge Moss

15   and by you which say that any discovery rulings apply to all

16   of my clients.  There was -- I didn't go through the process

17   and Magistrate Judge Moss agreed and you agreed --

18             THE COURT:  I --

19             MS. CHAITMAN:  -- that we wouldn't have to file

20   these in every single case.

21             THE COURT:  I'm just having trouble following the

22   chronology and who's --

23             MS. CHAITMAN:  It's laid out in my papers, Your

24   Honor.

25             THE COURT:  -- whose benefits -- and who is the

Page 64

1   beneficiary of those rulings and whether or not it affects

2   these three cases.

3            MS. CHAITMAN:  Okay.  It's all laid out in my

4   papers, and I apologize I wasn't able to focus it, but it's

5   laid out concisely in my papers, Your Honor.  So the bottom

6   line --

7            THE COURT:  So you're saying the effect of Judge

8   Moss' orders and my orders were to reopen or maintain open

9   the discovery in these three cases?

10           MS. CHAITMAN:  Exactly.  For anything, it's

11  responsive to demands that we were making from inception of

12  these cases, and --

13           THE COURT:  When did the discovery close in these

14  cases under the case management orders?  It may be three

15  different days, I recognize.

16           MS. CHAITMAN:  The -- it's laid out in my papers,

17  Your Honor.  I don't have it committed to memory, but it's

18  all in here.

19           MR. HUNT:  I know the answer to that.

20           MS. CHAITMAN:  Again, these are --

21           THE COURT:  Let her finish.

22           MS. CHAITMAN:  You know, the factual issues, Your

23  Honor, are whether there was trading, whether this actually

24  was ever a Ponzi scheme, and whether the securities that

25  appeared on the customer statements, in fact, were owned by

Page 65

1    Madoff at the time they appeared --

2            THE COURT:  But you know --

3            MS. CHAITMAN:  -- on the customer statements.

4            THE COURT:  Look, I understand what the factual

5    issues are.  I'm assuming, I don't know, but I'm assuming

6    that they're going to prove a Ponzi scheme through the

7    allocution and through Dubinsky's expert testimony.  I know

8    you disagree with it for a lot of reasons, but that's what

9    they're going to do.  They're not going to rely on trading

10   records or anything like that.  That's my assumption.

11           So whether or not they disclose trading records as

12   part of mandatory disclosure, they probably don't have to do

13   that.

14           MS. CHAITMAN:  But, Judge, I have a right to the

15   discovery.  If I serve a document demand for the trading

16   records --

17           THE COURT:  But that's what I'm asking you.  Your

18   argument seems to be based on the notion, which may be

19   correct, I don't know, that somehow notwithstanding that

20   discovery was closed in these three cases, you still had to

21   produce -- had the right to these documents within the

22   context of these.

23           MS. CHAITMAN:  Yes.

24           THE COURT:  I understand that.

25           MS. CHAITMAN:  And it begins on Page 5 of my brief

Page 66

1    and it goes on for several pages.  We lay out every demand

2    and the status of every response, and Judge Moss' order --

3              THE COURT:  I'm not interested in demands in other

4    cases, unless there's a determination that whatever you did

5    in the other cases applies to these cases.  That's --

6              MS. CHAITMAN:  There was an order entered by you

7    after a similar order was entered by Judge Moss.  And there

8    was no client of mine that was excluded from that order.

9              THE COURT:  All right.  Let me hear from the

10   Trustee.

11             MR. HUNT:  Good morning, Your Honor, Dean Hunt for

12   the Trustee.  It's clear that the defendant's don't want to

13   go to trial in these cases.

14             THE COURT:  Okay, but let's cut to the chase.

15   She's saying that notwithstanding the fact that discovery

16   was closed in these three cases, as a result of proceedings

17   in other Chaitman cases where discovery was not closed,

18   somehow these three proceedings got drawn into that open-

19   ended discover that's been going on with the trading

20   records.  That's basically what she's saying.

21             MR. HUNT:  I know.  Yeah, discovery closed in

22   these cases in March of 2016.

23             THE COURT:  Okay.

24             MR. HUNT:  That was months ago.  We took

25   discovery.  The defendants did not take any discovery, no

1     interrogatories, no request for production, no depositions.

2     They just sat on their hands.  They made a tactical decision

3     not to participate in discovery.  So now what they're ask

4     you to do is basically pretend that they served

5     interrogatories --

6               THE COURT:  But Ms. Chaitman --

7               MR. HUNT:  -- and they didn't.

8               THE COURT:  --said that is the effect of the

9     proceedings before Judge Moss and me.

10              MR. HUNT:  She's wrong.

11              THE COURT:  Okay, tell me why she's wrong.

12              MR. HUNT:  Because these cases were excluded from

13    those proceedings.

14              THE COURT:  Okay.  Is that documented?

15              MR. HUNT:  Yes.

16              THE COURT:  Where is that documented?

17              MR. HUNT:  In the orders from Judge Moss.

18              THE COURT:  Are they part of this packet that

19    you've given me?

20              MR. HUNT:  Well, certainly the transcript from the

21    last hearing with Judge Moss --

22              THE COURT:  Well --

23              MR. HUNT:  -- last it is, where she clearly

24    conceded that these cases are trial-ready cases.  So, yeah,

25    that's in there.

Page 68

1          THE COURT:  Is there anything else which would

2   bear on this issue?

3          MR. HUNT:  There's nothing that says that they

4   aren't excluded and discovery's been closed.  We've been

5   ready for trial.  She's gone up asking for a jury trial.

6   Now she's making another argument in order to cause further

7   delay.

8          THE COURT:  Okay.

9          MR. HUNT:  That's clearly what's happening here.

10          THE COURT:  All right.  All right, look, I'm going

11   to have to -- yes.  I'm going to have to review.

12          MS. CHAITMAN:  I can say it.  We served document

13   demands.  We --

14          THE COURT:  In this -- in these three cases?

15          MS. CHAITMAN:  Yes.  We served interrogatories --

16   it's all laid out in my brief, Your Honor --

17          THE COURT:  You're telling me they never took

18   discovery --

19          MS. CHAITMAN:  -- starting on Page 5.

20          THE COURT:  -- in these cases?

21          MR. HUNT:  They didn't.  After discovery was

22   closed and they tried to --

23          THE COURT:  Oh.

24          MR. HUNT:  -- and we objected.

25          THE COURT:  Prior to the discovery deadline, did

Page 69

1    you take any discovery in these three cases, Ms. Chaitman?

2              MS. CHAITMAN:  It was done in the Wilenitz case

3    and that --

4              THE COURT:  When was that?

5              MS. CHAITMAN:  It's all laid out in here, Your

6    Honor, and --

7              THE COURT:  Can't you just tell me a date?

8              MS. CHAITMAN:  Okay.  We served interrogatories on

9    March 8th, 2016 and June 21st --

10             THE COURT:  But that was a couple of days before

11   the end of the termination of discovery in these cases.

12             MS. CHAITMAN:  And June -- right.  And then --

13             THE COURT:  You can't -- I mean, if discovery is

14   going to be cut off 10 days later, you can't serve

15   interrogatories which they don't have to answer for 30 days.

16             MS. CHAITMAN:  They answered them.  They answered

17   them, and Your Honor --

18             THE COURT:  In these cases?

19             MS. CHAITMAN:  Yes.  And then -- it's all laid out

20   here on the --

21             THE COURT:  Your Honor, why don't you give me all

22   the discovery requests because I know they don't necessarily

23   get filed.  Give me your discovery requests in these three

24   cases and the responses.

25             MS. CHAITMAN:  Okay.

1          THE COURT:  Because I just don't have these

2     documents.

3          MS. CHAITMAN:  You know what, Judge, they're all

4     next to my declaration.

5          THE COURT:  All right.

6          MS. CHAITMAN:  They're all --

7          THE COURT:  So everything I need to know on your

8     motion is next to your declaration?

9          MS. CHAITMAN:  You know what, I will review it and

10    if there's anything that's missing, I will send it in.

11         MR. HUNT:  Your Honor, I think you've got it

12    exactly right, though.  I mean, Rule 26(a) requires us to do

13    what we did.

14         THE COURT:  Yeah, I mean, if that's all that the

15    motion is based on and all this other stuff is extraneous,

16    it's not going to affect the disposition of the motion.

17         MR. HUNT:  Yeah, I agree with that completely.

18         THE COURT:  All right.  Let's assume the trials

19    are going forward.  Let's go to the next issue which is, I

20    guess, Ms. Nelson and Mr. Nelson.

21         MS. CHAITMAN:  Okay, so the what I'm suggesting if

22    Your Honor is going to try these cases at all -- and I don't

23    think --

24         THE COURT:  Well, let's assume that I am.

25         MS. CHAITMAN:  Okay.

Page 71

1          THE COURT:  Let's talk about scheduling.

2          MS. CHAITMAN:  Okay.  What I would suggest is,

3    there are two facets to these cases.  One is the deposits

4    and withdrawals and that may or may not be contested.  And

5    the other which is a much more complicated part of the trial

6    is common to all three cases, and that is the factual issues

7    as to whether this was ever a Ponzi scheme, whether 703

8    account money was used to purchase customer securities,

9    whether those securities appeared on customer statements, et

10   cetera.

11         All of those issues which are very complex and

12   involve a great many witnesses, those issues are common in

13   all these cases.  And what I was suggesting to you is that

14   we put off the trial until June and we have -- if you want

15   to go forward that we have a consolidated trial of all of

16   those issues and we simply deal with the deposits and

17   withdrawals separately.

18         THE COURT:  Why don't we move everything up to

19   February on the common issues?

20         MS. CHAITMAN:  We can't do that because the reason

21   we scheduled the Nelsons for May is that Ms. Nelson is going

22   in for knee surgery in late January and she will not be --

23         THE COURT:  Okay.

24         MS. CHAITMAN:  She's going to be incapacitated.

25   And I've got a health issue with Ms. Saren-Lawrence because

Page 72

1    she has a brain aneurysm and I'm in communication with her

2    doctor as to whether she could withstand the stress of a

3    trial.  I have to figure that out.

4              THE COURT:  Okay.

5              MS. CHAITMAN:  So that's why I'm suggesting if we

6    put this off, Ms. Saren-Lawrence had one brain aneurysm

7    which was operated on; that was okay.  If we have the second

8    one operated on, she would be able to --

9              THE COURT:  Okay.  Putting aside the question of

10   specific deposits and withdrawals, it sounds like you agree

11   that basically the other issues, the other factual issues

12   are the same, which is whether there was a Ponzi scheme.

13             MS. CHAITMAN:  Yes.  No, there are differences --

14   if I take Helene Saren-Lawrence and I go through every

15   statement that she received and I prove that, in fact,

16   Madoff or BLMIS was holding the securities that appeared on

17   her statement, that evidence is going to be different from -

18   -

19             THE COURT:  I understand.

20             MS. CHAITMAN:  -- the evidence with respect to

21   each of the Nelsons' accounts.  But it's going to be the

22   same concept that we'll be able to show that the securities

23   on the statements were actually in Madoff's or BLMIS'

24   possession at the time.

25             THE COURT:  Okay, but that -- all right.  But

Page 73

1    whether or not Madoff was conducting a Ponzi scheme, which

2    may be an overarching issue such that -- and I think Judge

3    Dearie recently entered a decision in the Eastern District

4    that even if you have a few legitimate trades within the

5    context of a Ponzi scheme it doesn't change the fact that it

6    was a Ponzi scheme.

7             All right, so you're proposing that we try the

8    common issue of Ponzi scheme later in 2019 with all three

9    together.  That's what you're --

10            MS. CHAITMAN:  Well, it's not just Ponzi scheme.

11   There are other issues.

12            THE COURT:  But what are the other common issues,

13   though?  I mean, we know their witnesses are going to be the

14   same three experts.

15            MS. CHAITMAN:  Whether -- well, okay.  On the IRA

16   account, there are factual issues for Ms. Nelson as to

17   whether -- because we think she's a subsequent transferee

18   who took her value without knowledge --

19            THE COURT:  But -- whether or not she's a

20   subsequent transferee or an initial transferee is a question

21   of law, really.

22            MS. CHAITMAN:  Well, there -- I think it's a

23   combined question of law and fact because it will depend

24   upon how long the IRA custodian held the funds, whether the

25   IRA custodian took certain monies out, whether the IRA

1    custodian paid the taxes.  There were a bunch of issues as

2    to the IRA account which are factual.  I'm not saying it's a

3    three-week trial, but there are separate factual issues on

4    that.

5            But then with respect to what I call the common

6    defenses, it's not simply whether it's a Ponzi scheme.  It's

7    whether the securities -- and I'm not familiar with the

8    decision to which you're referring, but I think we'll be

9    able to show you that a great many of the securities that

10   appeared on customer statements were actually owned by

11   Madoff or BLMIS.

12           THE COURT:  Okay, but that's part of the deposits

13   and withdrawals issue which is particular to each -- all

14   right, let me -- the proposal, as I understand it, correct

15   me if I'm wrong, is the issue of whether or not there was a

16   Ponzi scheme, is a common issue which should be tried

17   together but it should be tried later on in the year.

18           MS. CHAITMAN:  And the other issue is the 509

19   account because all of the checks -- all of the transfers to

20   both Saren-Lawrence and the Nelsons were made by check from

21   an account in the name of Bernard L. Madoff and the Trustee

22   has conceded that he has no document with JP Morgan Chase

23   changing the name of the 509 account from Bernard L. Madoff

24   to BLMIS, LLC.

25           THE COURT:  Okay, but that's the same issue.

Page 75

```
 1    Whether it's factual or legal, that's the same issue in all

 2    three, right?

 3                MS. CHAITMAN:  Correct.

 4                THE COURT:  Okay.

 5                MS. CHAITMAN:  I was supplementing.

 6                THE COURT:  All right.

 7                MR. HUNT:  I'm not sure what we're arguing about

 8    here.

 9                THE COURT:  Well, we -- it sounds like Ms.

10    Chaitman agrees that there are at least certain issues which

11    should be tried as one.  In other words, common issues.  You

12    have the same witnesses, presumably, in your direct case:

13    whether or not there's a Ponzi scheme, whether or not the

14    right plaintiff has brought this action, maybe it should be

15    the Trustee of Mr. Madoff's individual estate who should've

16    brought it.

17                But that's a common -- that's kind of a common

18    question that pervades all three.  But what she's saying is

19    Ms. Saren-Lawrence may not able to go forward anyway in

20    February, but we don't have any medical evidence of that and

21    I guess she's proposing that all of the three cases on those

22    issues be tried together at some point, I guess, in May or

23    June.  That's what she's proposing.

24                MR. HUNT:  Yeah, I think that the Saren-Lawrence

25    case is different.
```

Page 76

```
 1              THE COURT:  Tell me --

 2              MR. HUNT:  The account was opened at a different

 3    time.  It was opened earlier in December of '92.  These

 4    other cases, other accounts were opened later.

 5              THE COURT:  But how does that make the case

 6    different?

 7              MR. HUNT:  Well, it doesn't--

 8              THE COURT:  (Indiscernible).

 9              MR. HUNT:  -- will in her mind, I believe, in

10    terms of whether it was a Ponzi scheme.  I don't want to get

11    caught into this situation, I'm going to argue --

12              THE COURT:  But it's the same issue, isn't?

13              MS. CHAITMAN:  It won't in my mind because all the

14    accounts were opened in 1992.

15              THE COURT:  It's the same issue, though, isn't it?

16              MR. HUNT:  Yeah, I mean --

17              THE COURT:  Unless you're saying there wasn't a

18    Ponzi scheme in 1992, but starting January 1st, 1993 it was

19    a Ponzi scheme, which I don't understand the Trustee's

20    theory to be, frankly.

21              MR. HUNT:  I do think, though, that there are

22    common parties in the Nelson case.

23              THE COURT:  Oh, yeah.  There are certainly common

24    parties, but there are common issues in all three and there

25    are common witnesses in all three, so I'm just --
```

1            MR. HUNT:  We're right back to sort of a mini --

2            THE COURT:  So that --

3            MR. HUNT:  -- omnibus proceeding.

4            THE COURT:  Well, you know, but we got into that

5     because some people insisted they were entitled to jury

6     trials and never filed claims, I guess, and that's where

7     that one went off stray, but if we can try three cases

8     together, that's still better than trying them separately.

9            But it's really a question of timing.  I scheduled

10    the Saren-Lawrence trial, I think, in February.  Right now,

11    that's what the schedule is.  I have no medical evidence

12    that she can't go forward.  I'll hear it if it comes to be.

13    Question is whether you just want to try all three together

14    later in the year.

15            MR. HUNT:  I think if we try all three together, I

16    guess it makes sense to do that but I don't think it makes

17    sense to do it later in the year because --

18            THE COURT:  Well, I can't really --

19            MR. HUNT:  -- now they get another seven months'

20    delay and we know that's --

21            THE COURT:  But what do you propose?  Ms. Nelson

22    is having knee surgery, I'm told.  It's going to take a

23    while for her to recover.  She's an elderly person.

24            MR. HUNT:  Right, which means that we can try

25    everything in Nelson cases in May, which is already

Page 78

1    scheduled.

2           THE COURT:  Do you want to move the Saren-Lawrence

3    matter to May, also?

4           MR. HUNT:  No, I'd rather do that in February?

5           THE COURT:  All right, well, that's what I'm

6    asking.

7           MR. HUNT:  (Indiscernible).

8           THE COURT:  Okay.  Look, I had scheduled the

9    Saren-Lawrence matter for February --

10          MS. CHAITMAN:  yes.

11          THE COURT:  For the time being, it's going forward

12   in February.  If she's medically unable to go forward, it's

13   going to require more than your say-so, obviously.

14          MS. CHAITMAN:  No, no, no.  I'm going -- I've

15   communicated with the doctor.  I wanted to get the letter in

16   a more timely manner because --

17          THE COURT:  All right, we'll see.  Because that's

18   off -- we're talking about a trial that's two months off at

19   this point.

20          MS. CHAITMAN:  Yeah, but she has a brain aneurysm

21   and unless something --

22          THE COURT:  Well, I would certainly listen to

23   whatever the doctor has to say --

24          MS. CHAITMAN:  Yeah --

25          THE COURT:  -- but right now, I'll stick with the

Page 79

1    schedule.  In terms of trying the Nelson cases together,

2    I'll do that.  Certainly on the common issues; although, I

3    can probably do it on all of the issues.  There's nothing

4    I've heard about those two cases, notwithstanding an IRA's

5    involved in one case, I can just hear it all together.  You

6    know, the deposits and withdrawals don't sound like they're

7    going to take a long time to try.

8            The issue of whether there's a Ponzi scheme is a

9    more difficult issue, or may be a more difficult issue.  So

10   I'd be inclined to try the Nelsons together in May if that's

11   the date that we used.  Did we pick a specific date for one

12   of them?

13           MR. HUNT:  We picked May 8.

14           THE COURT:  All right.  Well, why don't we

15   schedule both of those trials for May 8, and we go forward

16   subject to contrary medical evidence, with Saren-Lawrence.

17   What was it, February 19th?

18           MR. HUNT:  I think that's right, Your Honor.

19           THE COURT:  All right.

20           MS. CHAITMAN:  Okay.

21           THE COURT:  All right, why don't you submit an

22   order to that effect so we remember what occurred.

23           MR. HUNT:  Okay.

24           THE COURT:  And I'll review the documents on the

25   issue of discovery.  I'm hearing two -- I'm hearing

Page 80

1    different stuff.

2              MS. CHAITMAN:  Yeah.

3              THE COURT:  All right.  Thank you.

4              MS. CHAITMAN:  Okay.

5              MR. HUNT:  Thank you, Your Honor.

6              THE COURT:  Okay, next.

7              MR. CALVANI:  Good morning, Your Honor.  Next on

8    the agenda is a motion to quash a subpoena issued by the

9    Shapiro defendants.

10             THE COURT:  All right.

11             MS. WHITE:  Good morning, Your Honor.  Mary Grace

12   White of LaxNeville for defendants.  In September, the

13   Trustee issued a subpoena to JP Morgan Chase Bank seeking

14   the entire loan file dating back to 1995 and all

15   communications relating to that loan file.

16             THE COURT:  Was this a home equity line of credit

17   that we're talking about?

18             MS. WHITE:  I believe it was.

19             THE COURT:  Because I can't imagine a co-op would

20   agree to a pledge of the shares in the proprietary lease of

21   some other type of loan.  Do you know the answer to that?

22   Have you seen the loan documents?

23             MS. WHITE:  I believe it is.

24             MR. CALVANI:  (Indiscernible) residential.

25             THE COURT:  All right.  It was a home equity line

Page 81

1    of credit?

2          MR. CALVANI:  Yes, Your Honor.

3          THE COURT:  Okay.  Go ahead.  Thank you.

4          MS. WHITE:  And the -- and JP Morgan Bank,

5    obviously, objected citing (indiscernible).

6          THE COURT:  Okay, but they're okay with it.  They

7    found the loan file, so now it's your -- you represent the

8    Shapiros, right?

9          MS. WHITE:  Correct.

10          THE COURT:  All right.

11          MS. WHITE:  The Shapiros, obviously first, have

12    standing for this motion to quash the subpoenas

13    (indiscernible) personal financial information.  It's well

14    established that third parties, particularly individuals

15    whose personal, private financial information is sought have

16    standing to move to quash subpoenas.

17          THE COURT:  But you'd use that basis if you're

18    standing to object not just to disclosure of private

19    information but to argue that the request is irrelevant, and

20    one of my questions is whether you have the standing to

21    argue that the request is irrelevant, assuming that there

22    are no personal privacy issues involved.

23          MS. WHITE:  Well, so, the issue of relevance is

24    essential to the evaluation of the privacy interest itself

25          THE COURT:  Right.

1          MS. WHITE:  Once privacy interest, unless standing

2     is established, the Courts then turn to see if there is any

3     relevance involved.  It's obviously the Trustee's burden to

4     establish that relevance and they simply have not.  They

5     sought to link the documents contained in this loan file to

6     an alleged back-dated trade by ascribing motivations and

7     communications to both Mr. Shapiro and Ms. Bongiorno that

8     simply aren't in the record.

9          There's nothing -- excuse me, I have a cold.

10    There's nothing in evidence to indicate, first, that any of

11    the documents contained in this loan file would indicate

12    that backdated trades were --

13          THE COURT:  Well, we don't know until we look at

14    the documents, though.  That's -- isn't that a chicken and

15    egg problem?

16          MS. WHITE:  It's -- I believe it's the Trustee's

17    chicken and egg problem, though, because they have to say --

18    they have to establish that the documents they seek are

19    relevant.  They have to establish that they're linked to

20    allegations in the underlying case.  They have to provide

21    some basis rather than a narrative they put together for

22    seeking these documents, and there's nothing in the

23    narrative they put together that suggest that this file has

24    any documents related to backdating of trades, any documents

25    that would show Mr. Shapiro knew that there were backdated

Page 83

1    trades, or any evidence that Mr. Shapiro knew that these

2    backdated trades meant that this was a Ponzi scheme.

3            And those are the allegations at issue here.  Even

4    if there were, though, some relevance of these documents,

5    Mr. Shapiro's privacy interest clearly outweighs that

6    relevance.

7            THE COURT:  So what's the privacy interest that's

8    being implicated here?  We know he owned the apartment.

9            MS. WHITE:  Right.

10           THE COURT:  And we know, you know, the proprietary

11   lease and the share certificates are not confidential or

12   private.  What's the private information that you're worried

13   about?

14           MS. WHITE:  Your Honor, I have not seen the file,

15   but our understanding is that the documents that would go

16   into any mortgage loan would involve the way that the loan

17   was paid back, evidence of --

18           THE COURT:  Why is that confidential?

19           MS. WHITE:  It's not confidential --

20           THE COURT:  Well, what's the privacy issue?

21   That's what I'm trying to get at.  Yes, it's about the

22   Shapiros and it's about them receiving and paying loans,

23   presumably, but what privacy interest does that implicate?

24           MS. WHITE:  Inasmuch as -- excuse me.  Inasmuch as

25   these documents are bank documents that contain their

Page 84

1   financial information, they have a privacy interest in their

2   --

3           THE COURT:  Okay.

4           MS. WHITE:  -- personal financial information.

5           THE COURT:  What about documents that relate to --

6   by the bank, within the bank -- say emails if they had

7   emails then, I don't know -- regarding a discussion of the

8   collateral or the assets that are depicted on a financial

9   statement that you normally submit, like an email that says,

10  we see this account with BLMIS, it's valued at $8 million,

11  we don't see how that could be the case, or something like

12  that.

13          MS. WHITE:  Well --

14          THE COURT:  Or everybody knows Madoff is a Ponzi

15  scheme operator.

16          MS. WHITE:  And I think JP Morgan Bank -- who I

17  think was Chemical Bank at the time -- might have a bigger

18  problem on their hands.

19          THE COURT:  Well, maybe.

20          MS. WHITE:  But the fact is, that's not what the

21  Trustee asked for.  The Trustee asked for the entirety of

22  the loan file, asked for the entirety of the communication.

23          THE COURT:  So what do you think he's entitled to

24  in that loan file?

25          MS. WHITE:  Well, I think that the only thing that

Page 85

1  he is entitled to, he already has.  He has the letter from

2  Annette Bongiorno that states that the as of the end of June

3  1995, there was in excess of $8 million in the account, and

4  frankly, if you look at the statements he submitted, the

5  balance listed is in excess of --

6            THE COURT:  Right.

7            MS. WHITE:  -- $8 million.  So it's, I think, a

8  little hard for us to imagine how that could indicate to

9  Chemical Bank or to Mr. Shapiro anything that could be

10 remotely approaching knowledge of backdating or a Ponzi

11 scheme because on the face of it --

12           THE COURT:  Well, that goes to the merits of the

13 case.  The question is, what's in that bank file that might

14 bear on -- that might be relevant to one of the claims or

15 defenses.

16           MS. WHITE:  The only thing that we could possibly

17 think of is this letter itself.  There's nothing to indicate

18 that there were any communications between Chemical Bank and

19 BLMIS.  There's nothing to indicate that Annette Bongiorno

20 ever followed up or had further conversations.  The accounts

21 at BLMIS were not collateral for this loan.

22           THE COURT:  So why wouldn't the Trustee be

23 entitled to any communications between the bank and BLMIS

24 relating to the Shapiro account?

25           MS. WHITE:  They are not entitled to receive any

Page 86

1    of that pursuant to this subpoena.  The only thing --

2            THE COURT:  Why not, if it's part of the loan

3    file?

4            MS. WHITE:  I'm sorry?

5            THE COURT:  What if it's part of the loan file?

6            MS. WHITE:  Well, we maintain that they're not

7    entitled to the loan file.

8            THE COURT:  No matter what's in there?  So if

9    Shapiro writes a letter that says, look, I know this BLMIS

10   account is all fictitious but I have other assets that will

11   secure the loan.  That wouldn't be relevant?

12           MS. WHITE:  Your Honor, that would be relevant,

13   but it's their burden to establish that such a document

14   exists and it's in that file prior -- they can't embark on a

15   fishing --

16           THE COURT:  That's different.  That I understand,

17   but to say that they have to tell you everything that's in

18   the file before they get to look at it doesn't seem to make

19   a lot of sense.

20           MS. WHITE:  No, let me be clear.  They don't need

21   to tell us everything that's in the file to be able to look

22   at it.  They need to have some basis for thinking that there

23   are relative documents, maybe not even as extreme as that

24   example, in this file rather than getting to go and look

25   back into the early '90s at Mr. and Mrs. Shapiro's finances

Page 87

1    when there's nothing to suggest that these particular

2    financial documents or what would be in this loan file bear

3    any relevance, any material impact on what they're alleging.

4              THE COURT:  All right.  Let me hear from the

5    Trustee.  Thank you.

6              MS. WHITE:  Thank you.

7              MR. CALVANI:  Good morning, Your Honor.

8              THE COURT:  Good morning.

9              MR. CALVANI:  Torello Calvani from BakerHostetler

10   on behalf of the Trustee.  With me is my colleague, Nick

11   Rose.  I'll start with the issue of relevance.  I would like

12   to set forth the foundation for why we sought this -- why we

13   issued this subpoena to JP Morgan.

14             In the summer of 1995, Mr. Shapiro sought a loan.

15   To help this loan, Annette Bongiorno asked -- Mr. Shapiro

16   asked Annette Bongiorno to make certain representations to

17   JP Morgan about the value of his accounts.

18             THE COURT:  I assume the bank wanted confirmation.

19             MR. CALVANI:  Exactly.

20             THE COURT:  Right.

21             MR. CALVANI:  And we believe Mr. Shapiro also made

22   similar representations to JP Morgan about the value of his

23   account in order to establish his creditworthiness.

24             THE COURT:  Right.

25             MR. CALVANI:  The letter from Ms. Bongiorno says

Page 88

1    she is seeking to confirm the amount, implying that there's

2    a prior communication from --

3              THE COURT:  Well, he probably filled out a

4    financial statement.

5              MR. CALVANI:  Exactly, because it's a loan for

6    him.  So we further believe that the statements Mr. Shapiro

7    made to JP Morgan were not only false, but are relevant to

8    his knowledge of fraud at BLMIS and specifically the

9    backdating of trades in his account.

10             THE COURT:  I just didn't get that from your

11   papers, you know?

12             MR. CALVANI:  The documents are confusing and if I

13   could --

14             THE COURT:  It's not confusing because outside of

15   the loan with the bank, he's got that little note that says

16   that as of December 31st, 1995, my account should be worth

17   $9 million, and coincidentally, it's worth $9 million at the

18   end of the year.  I understand that.  What does the bank

19   file have to do with that?

20             MR. CALVANI:  So Ms. Bongiorno sent the letter to

21   JP Morgan in July of 1995.

22             THE COURT:  Right, confirming the value of the

23   account.

24             MR. CALVANI:  Confirming the account.

25             THE COURT:  Because he's applying for a loan and

1    he fills out a financial statement and one of the things

2    that was probably on the financial statement was his BLMIS

3    account.

4              MR. CALVANI:  Right, but we would like to know

5    what Mr. Shapiro represented to the bank on that account,

6    because he knew at the time that his accounts were not

7    valued at $8 million.

8              THE COURT:  So you want to see documents relating

9    to what Mr. Shapiro valued his BLMIS account at?

10              MR. CALVANI:  We want to see what he represented

11    to the bank as to his value, as to his net worth, as to his

12    account, because the account statements for his single

13    account as of June 1995, these account statements he

14    produced to us were valued at $6 million.  So --

15              THE COURT:  I saw the account statements, so it

16    says $8.2 million, I think.

17              MR. CALVANI:  It's really confusing.  If you would

18    turn to Exhibit 4 of my declaration, this is the note --

19              THE COURT:  Right.

20              MR. CALVANI:  -- 8/31.  It's on Madoff letterhead.

21    You see at the top it says S&R.  That stands for S&R

22    Investment Company.  And then you see two columns, one long,

23    one short.  The statements for the long represent SH14-7.

24    The value in that account that you just referenced is $11

25    million -- $11.831 -- but you have to subtract the margin on

Page 90

1    the account which is debited there.  That's 8.4.

2              THE COURT:  But this was written by Shapiro?

3              MR. CALVANI:  This was written by Mr. Shapiro on

4    August 31st.  then you look at the -7 account next to that,

5    there you see the value at $4.2 million, but because that's

6    a short account you have to look at the cost of covering the

7    short.  That's $1.8 million.

8              THE COURT:  All right --

9              MR. CALVANI:  Now you're --

10             THE COURT:  I got it.  You want to see what

11   representations he made to the bank regarding the value of

12   his BLMIS account.  What else?

13             MR. CALVANI:  Right, so we have what --

14             THE COURT:  I didn't understand your argument that

15   he was originally going to pledge his BLMIS account.

16             MR. CALVANI:  Yeah, I don't know why he didn't

17   pledge his BLMIS account.

18             THE COURT:  This is a home equity line of credit.

19             MR. CALVANI: Yeah, I don't --

20             THE COURT:  You don't get any tax advantage out of

21   getting a loan and pledging a BLMIS account.

22             MR. CALVANI:  You're right, Your Honor.  But then

23   we know that thereafter, he created -- or Annette Bongiorno

24   in September 1995 created a new account that Mr. Shapiro

25   didn't know he had.

Page 91

1          THE COURT:  But what does that have to do with the

2   bank documents?

3          MR. CALVANI:  I would like to know if he provided

4   those account statements or any account statements to JP

5   Morgan.  We know that his son --

6          THE COURT:  But that's not what you're asking for.

7   You're asking for the entire loan file.

8          MR. CALVANI:  Right, and --

9          THE COURT:  And there's a lot of -- she's right,

10  there's a lot of financial stuff in there that seems totally

11  irrelevant to the case and he doesn't want people to see it.

12         MR. CALVANI:  Well, it's hard to know, again,

13  without seeing --

14         THE COURT:  Not if you ask --

15         MR. CALVANI:  -- the loan file.

16         THE COURT:  Not if you ask by category.  You know

17  what categories of information you want.

18         MR. CALVANI:  Well --

19         THE COURT:  You've told me you want to see any

20  representations regarding the value of his BLMIS accounts,

21  right?

22         MR. CALVANI:  Right.

23         THE COURT:  What else?

24         MR. CALVANI:  And we would like to see if he

25  provided any account statements to JP Morgan.

Page 92

1          THE COURT:  But that's part of the representation.

2          MR. CALVANI:  Right.  Because -- and what those

3   account statements are.  And so we think that the simplest

4   way to go about that is to request the loan file.  JP Morgan

5   has located the loan file and they're willing to produce it.

6   So --

7          THE COURT:  But what about the personal -- the

8   private stuff that's in there that's irrelevant to the case?

9          MR. CALVANI:  Okay.

10          THE COURT:  How do you propose to deal with that?

11          MR. CALVANI:  With a protective order, Your Honor.

12   This Court entered a protective order on June 6th, 2011.

13   Protective order safeguards their confidential information.

14          THE COURT:  But don't you first have to establish

15   relevancy before you are even talking about a protective

16   order?

17          MR. CALVANI:  Yes, Your Honor.  Relevancy is our

18   burden to show.

19          THE COURT:  Right.

20          MR. CALVANI:  And we believe that we've met that

21   burden by showing how Mr. Shapiro participated in a

22   fraudulent scheme to defraud his bank through the backdating

23   of trades and we would like to know --

24          THE COURT:  Well --

25          MR. CALVANI:  -- if those trades or if those

Page 93

1    statements are in his loan file.

2            THE COURT:  Okay --

3            MR. CALVANI:  Now, the privacy interest that

4    they've raised, is their burden to show.  It's our burden to

5    show relevancy; it's their burden on the motion to quash,

6    since they're seeking to stop discovery, to meet that

7    burden.  All they've said is the magic words, privacy

8    interests.  But they haven't really showed how that privacy

9    interest is affected here, how the disclosure --

10           THE COURT:  Well, the disclosure to you of this

11   financial information, his assets and liabilities.  I know

12   it's 25 years ago, but -- whatever it is.  It's 24 years

13   ago.  But, you know, that's private information, generally.

14   Private financial information.

15           MR. CALVANI:  But, so they say they have a privacy

16   interest in that --

17           THE COURT:  Right.

18           MR. CALVANI:  -- and that outweighs relevancy, but

19   I don't think they've established harm of how they would be

20   harmed from the disclosure of that loan file.

21           THE COURT:  Do they have to establish harm?

22           MR. CALVANI:  I believe they do.  United States

23   Region Economic Development Authority v. Matthews is a case

24   cited in our brief on Page 9.

25           THE COURT:  How about the disclosure of private

Page 94

1    financial information.  Is that harm?

2            MR. CALVANI:  It's -- in that case, the Court

3    found that the defendants have not articulated a legitimate

4    privacy interest in preventing the release of those

5    documents other than a conclusory allegation that such an

6    interest exists.

7            THE COURT:  What was the nature of the information

8    in that case?

9            MR. CALVANI:  I believe it was tax returns.  And

10   in this case, the cat's already out of the bag.  We have Mr.

11   Shapiro's personal financial information.  We have 10 years

12   of his tax returns.  He consented to the production by

13   (indiscernible) of his tax returns.  We reference these tax

14   returns in our complaint.

15           It's hard to say what information is out there

16   about his personal financial information we don't have, but

17   we don't want that, either.  We're not seeking to collect on

18   a judgment here.  We're seeking to find evidence of Mr.

19   Shapiro's knowledge of backdated trades.

20           THE COURT:  Yeah, it just seems like this bank

21   file is very attenuated to that particular matter.

22           MR. CALVANI:  Well, it's hard to say without

23   seeking the loan file, but this is a pattern that we've

24   noticed at BLMIS where his officemate, David Krugel, for

25   example, pleaded guilty to bank fraud under a similar

1    scheme.  They backdate trades in an account to establish

2    their creditworthiness on a loan they're not entitled to.

3              THE COURT:  That's what -- Mr. Krugel said that

4    Mr. Shapiro did that?

5              MR. CALVANI:  No, Mr. Krugel said he did it.

6              THE COURT:  So because he did it, Mr. Shapiro did

7    it?

8              MR. CALVANI:  Well, it's --

9              THE COURT:  Is that the way you're going to prove

10   your case?

11             MR. CALVANI:  Well, there -- his colleague, Jodi

12   Crupi, also did it.  And so --

13             THE COURT:  Oh, now we have two people who did it.

14             MR. CALVANI:  It seems like --

15             THE COURT: Sounds like a pattern in practice.

16             MR. CALVANI:  Well, it seems like a perk that one

17   might get as an employee of BLMIS, that they're willing to

18   backdate trades either to generate gains or losses, and that

19   was just a matter of practice.

20             THE COURT:  I understand your theory of the case

21   (indiscernible) decision on it.  I'm just questioning what

22   this bank file has to do with it.

23             MR. CALVANI:  Well, to answer your -- I'll fall

24   back on my prior answer which is that --

25             THE COURT:  (Indiscernible).

Page 96

```
 1              MR. CALVANI:  -- we believe that Mr. Shapiro made

 2    representations to the bank --

 3              THE COURT:  All right.

 4              MR. CALVANI:  -- which will shed light on the fact

 5    that he knew --

 6              THE COURT:  Got it.

 7              MR. CALVANI:  -- his representations were false.

 8              THE COURT:  Got it.  Okay.  Let me hear from --

 9              MS. WHITE:  Just a couple of points very quickly.

10    If the Trustee was really only seeking those limited

11    documents, they could've very easily -- they're very capable

12    of requesting those specific documents (indiscernible)

13    seeking the entirety of the file.  And furthermore, simply

14    because Mr. Shapiro produced 10 years' worth of tax returns,

15    does not automatically allow the Trustee to search back 25

16    years --

17              THE COURT:  Well --

18              MS. WHITE:  -- for a variety of other financial

19    information.

20              THE COURT:  But the point was made, if he's

21    already produced 10 years of tax returns, what's he fighting

22    about a privacy interest now?  He's disclosed whatever

23    private interests or private information he could ever hope

24    to conceal by disclosing his tax returns.

25              MS. WHITE:  The time periods at issue here, I
```

1     think, are the first point on this, the fact that the 10

2     years' worth of tax returns is much more limited than what

3     they're seeking here, which --

4              THE COURT:  They're seeking a loan file for two

5     loans.

6              MS. WHITE:  A home equity loan that was paid back

7     over time and that has a variety of communications about the

8     payments that weren't included in any prior productions.

9     Simply because the Shapiros produced some financial

10    information doesn't mean that they've waived their right to

11    all financial information.

12             THE COURT:  All right, look.  I think your

13    subpoena is too broad.  You haven't convinced me that this

14    entire loan file is relevant to anything in this particular

15    case.  You're certainly entitled to see representations he

16    made regarding the value of his -- communications relating

17    to the value of his BLMIS account, whether they originated

18    with Bongiorno, the bank, or Mr. Shapiro, and that would

19    include any documentation he submitted relating to that.

20             If it's financial statement, you can redact the

21    other information, but where there's the item that refers to

22    the representation or the value of the BLMIS account,

23    they're entitled to see that and -- I mean, that's what

24    you're entitled to, but in light of the way you posed your

25    request and the financial privacy issues involved, I'm not

1    inclined to force them to disclose the entire loan file.  So

2    you can submit an order to that effect.

3              MR. CALVANI:  We'll submit an order.  Thank you.

4              THE COURT:  All right.

5              MS. WHITE:  Thank you very much, Your Honor.

6              THE COURT:  All right.  Look, I scheduled a status

7    conference.  I want to move this case along and try it.

8    This one's been bouncing around forever.  I fixed the time

9    for the Defendants to move her answer.  It's basically it's

10   time to move this along.

11             My understanding is there are other cases which

12   may be intertwined with this particular matter.  Is that the

13   case?  That's why I wanted -- what's what I wanted to hear.

14             MR. KRYZOWSKI:  Sure.  Your Honor, Marek Kryzowski

15   of BakerHostetler.  And the Trustee is not a party to this

16   case yet.

17             THE COURT:  You're the first one to speak.

18             MR. KRYZOWSKI:  I am because I thought I would

19   explain how the cases were intertwined and what --

20             THE COURT:  Well, I know you've settlement.

21             MR. KRYZOWSKI:  Right.

22             THE COURT:  I'm more concerned about the issues

23   that have to be tried in this case and, you know, that might

24   have to be tried in other cases.

25             MR. KRYZOWSKI:  I think I might be best to speak

Page 99

1    about that first, Your Honor --

2             THE COURT:  Okay.

3             MR. KRYZOWSKI:  -- if that's okay.  Your Honor,

4    I've created kind of a (indiscernible).  If I can just give

5    it to you --

6             THE COURT:  Sure.

7             MR. KRYZOWSKI:  -- because maybe that will also

8    explain what we're trying to accomplish.

9             This isn't a surprised.  I had spoke -- Counsels

10   been working together, but what you see here is the Chapter

11   15 proceeding and the SIPR proceeding ultimately what we'd

12   like to substitute into the Chapter 15 proceeding for most

13   of the claims.  And I'll let my adversary or I guess the

14   liquidator and my adversary explain the one issue that

15   remains afterwards.

16            Before those -- four of the claims that we'd like

17   to substitute in for which is all but the declaratory

18   judgment claims, we see the pleadings, the burdens of proof

19   to be very similar to the Trustee's claims against the

20   remaining Defendants.  Over the past year I've worked with

21   Counsel for the Defendants pretty extensively on both cases

22   trying to settle out a lot of Defendants.  Once we can

23   substitute in, we intend to settle with a variety of

24   Defendants in both cases, then move to amend a much more

25   streamlined complaint where there'd be a complaint in both

1    actions, which would -- the factual section would be largely

2    the same because they arise under different statutes.

3    There'd be two complaints.

4              THE COURT:  Do you have -- what I'm not getting is

5    do you have separate claims against the same Defendants in

6    an action brought by Mr. Picard?

7              MR. KRYZOWSKI:  We do.  Almost identical group of

8    defendants, and they would be identical I think after we

9    substituted in and could --

10             THE COURT:  But are those subsequent transfer

11   claims?

12             MR. KRYZOWSKI:  They are.

13             THE COURT:  These claims, I assume, are breach of

14   fiduciary duty claims and contractual claims?

15             MR. KRYZOWSKI:  They are.

16             THE COURT:  A little different.

17             MR. KRYZOWSKI:  They are.  But given our pleading

18   burdens, you know, for subsequent transfer when we start

19   talking about some of these common law claims for breach of

20   fiduciary -- for most of these Defendants, they are common

21   law claims.  There's only one Defendant where there -- or

22   maybe there's two Defendants where there's contractual

23   claims.  All the other Defendants, it would be common law

24   claims.

25             THE COURT:  You've had --

1            MR. KRYZOWSKI: In the Chapter 15 action.

2            THE COURT:  Yeah, that I understand.  But I

3    remember I dealt with this issue once in another context

4    with crossclaims.  I think it was in the Senator and the

5    Alpha Prime (indiscernible) where --

6            MR. KRYZOWSKI:  Oh, I think you did in Alpha Prime

7    and HSBC.

8            THE COURT:  -- where your -- what you have to

9    prove for fraudulent transfer is a lot different and a lot

10   less complex and issues about whether or not the service

11   providers breached their fiduciary duty and, you know, what

12   the contractual requirements were or any (indiscernible)

13   issues which come up.  But I guess the question I have is,

14   okay, you want to intervene in the action or take over the

15   action.  Why haven't you done it in the last nine years?

16           MR. KRYZOWSKI:  Well, I'll let you speak to --

17   well, why hasn't it been done in the last nine -- I don't

18   know when we had the right to.  I can't speak to most of it.

19   I --

20           THE COURT:  I mean you had your settlement way

21   back when.

22           MR. KRYZOWSKI:  That's right.

23           THE COURT:  So you could have stepped in at that

24   point and jointly prosecuted it.

25           MR. KRYZOWSKI:  I agree, Your Honor.  But we are

Page 102

1      where we are.  There's one issue preventing us from I think

2      having a stipulation where we can take over the majority of

3      that action.  That's what Mr. Kazanoff wrote to you about.

4      I think that's what the issue that's holding up a

5      substitution.  Until we substitute in, we can't reach a --

6      what we're trying to do with the settlement is do

7      settlements with these individuals for both actions, global

8      settlements and to avoid (indiscernible).

9                THE COURT:  So why can't you do that?

10               MR. KRYZOWSKI:  Well, because we don't have -- we

11     can't settle the assigned Chapter 15 claim until we're in

12     the case.  That's subject to a 9019 (indiscernible).

13               THE COURT:  But Mr. Molton can and you have --

14               MR. KRYZOWSKI:  Well --

15               THE COURT:  -- whatever agreement you had with

16     them.  I don't understand.

17               MR. KRYZOWSKI:  Mr. Molton couldn't because he's

18     not a party to that.  He's assigned those claims.  And

19     Plaintiff is Mr. Molton's client.

20               THE COURT:  Okay.  But he has signed those claims,

21     and when did he -- he assigned those claims, what, five

22     years ago, six years ago?

23               MR. KRYZOWSKI:  Something like that.

24               THE COURT:  So why didn't you step in at that

25     point if the basis of your stepping in is the assignment six

Page 103

1    years ago?

2            MR. KRYZOWSKI:  I don't disagree, Your Honor, and

3    I apologize.  I didn't come prepared to speak to that.  I've

4    been in this case for about a year.  We've been working

5    towards that since I stepped into this case.  I can't

6    respond to what's happened before then.  Some of these

7    issues are complex.  We've been trying to negotiate to

8    streamline the case and then settle them to the extent we

9    can.  Since then, I think we've made a lot of progress.  We

10   have to take this final step.

11           We're prepared I think once the substitution goes

12   through.  You know, we've exchanged and agreed on a lot of

13   Defendants.  We're prepared -- you know, settlement

14   agreement can't be signed until obviously this gets taken

15   care of, but I think in short order we would --

16           THE COURT:  Well, why can't you both sign the

17   settlement agreement?  I just don't understand what's

18   holding that up.  That seems to be a solvable problem.  If

19   you want to settle, both of you sign the agreement and you

20   waive -- both of you waive your rights and then you have

21   whatever deal you have to split up the money.

22           MR. KRYZOWSKI:  Well, look, I suppose we could do

23   that if we can't accomplish the substitution then.  Again, I

24   wanted to go forward with what our -- what we plan to do

25   going forward to try and streamline this in terms of getting

Page 104

1    over the obstacle that exists between my colleagues here, I

2    can't -- as I said, I'm not even really a --

3              THE COURT:  Right.

4              MR. KRYZOWSKI:  -- party here yet.

5              THE COURT:  So why are you speaking to it?

6              MR. KRYZOWSKI:  Because it looked to me and I

7    thought if we started out with the commonality, I thought

8    that would be the easier way to streamline it.

9              THE COURT:  What you have told me --

10             MR. KRYZOWSKI:  Yes.

11             THE COURT:  -- is that you want to be substituted

12   or you will be substituted or the liquidator shall assign

13   their claims to you, that you're all but named the Plaintiff

14   in this case.  But I don't understand what that has to do

15   with why this case is still bouncing around all this time.

16             Let me hear from the Defendants in terms of -- I

17   mean you haven't answered yet and this -- you've got to

18   answer or move.

19             MR. KAZANOFF:  Your Honor, Peter Kazanoff from

20   Simpson Thacher.  We have also been frustrated with the pace

21   of this case.

22             THE COURT:  So why don't you just answer or move?

23             MR. KAZANOFF:  Because we understood that the

24   complaint would be -- we've been told for years that the

25   Trustee would be moving in to the action and would file an

Page 105

1    amended complaint.  And so we did want to extend the

2    resources responding to a complaint that we understood they

3    were going to seek to amend.

4              THE COURT:  Well, that excuse is getting a little

5    moldy here.

6              MR. KAZANOFF:  Understood, Your Honor.  We have

7    wanted to move this case forward for quite some time.

8              THE COURT:  All right.  Well --

9              MR. KAZANOFF:  The other issue, which perhaps I'm

10   best to speak to is an issue related to some deferred fees.

11   And if you'll --

12             THE COURT:  Deferred fees?

13             MR. KAZANOFF:  Yeah, deferred fees.  If you'll

14   humor me, let me give you a timeline here.  So in 200- --

15   May of 2009, the liquidator had removed an action that had

16   been filed against Fairfield Greenwich Defendants in state

17   court into the Chapter 15 proceeding.  There is a

18   declaratory judgment claim within that complaint that seeks

19   a declaratory judgment that the liquidator or Sentry does

20   not owe certain fees that were deferred by Fairfield

21   Greenwich.

22             So Fairfield Greenwich has a claim --

23             THE COURT:  Right.

24             MR. KAZANOFF:  -- pursuant to a separate contract,

25   a deferred fee agreement for sums of money.  They sought a

1    declaratory judgment that those monies were not owed.

2    Fairfield Greenwich put a claim in in the liquidation

3    proceeding in the BVI for those claims.  Ultimately, the

4    liquidator rejected those claims and --

5              THE COURT:  These are fees that --

6              MR. KAZANOFF:  These are for the claims for the

7    deferred fees.

8              THE COURT:  Okay.

9              MR. KAZANOFF:  Fairfield sought to, for lack of a

10   better phrase, appeal that decision to the BVI court.  At

11   that time, the liquidator's claim here was still -- the

12   complaint had a declaratory judgment saying those deferred

13   fees were not owed.

14             THE COURT:  What governs that determination?  I

15   assume this is contractual.

16             MR. KAZANOFF:  Correct.  That's a New --

17             THE COURT:  And what law governs that contract?

18             MR. KAZANOFF:  It's a New York law contract.

19             THE COURT:  Oh, okay.

20             MR. KAZANOFF:  It's a New York law contract.  And

21   we looked back at the assignment which is the only

22   information we've ever had about the arrangements between my

23   colleagues on the other side of the V here.  And when you

24   look back at the assignment, it says they're assigning all

25   the claims against my clients asserted in this action and

Page 107

1    then it has sort of a curious description.  It says

2    "including but not limited to the Fairfield Funds claims

3    for."  And it goes through all the causes of action except

4    the cause of action seeking a declaratory judgment with

5    respect to the deferred fees.

6             THE COURT:  Well, why would they assign a claim

7    like that?

8             MR. KAZANOFF:  We didn't --

9             THE COURT:  They're not assuming liability for

10   those deferred fees.

11            MR. KAZANOFF:  And we had understood that we would

12   be -- that that issue had been joined by the liquidator in

13   this court and we were not seeking to litigate our

14   entitlement to the deferred fees twice.

15            THE COURT:  Right.

16            MR. KAZANOFF:  We didn't want to litigate it in

17   front of Your Honor and also in front of a BVI court.

18            THE COURT:  What did the BVI -- was this raised

19   with the BVI court?

20            MR. KAZANOFF:  We've never raised the issue with

21   the BVI court in the sense that we agreed with the

22   liquidator to stay that proceeding in the BVI pending Your

23   Honor's determination with respect to the deferred fees.

24            THE COURT:  How am I going to make that

25   determination?

Page 108

1          MR. KAZANOFF:  We now understand that you are not

2     going to make that determination with respect to the

3     deferred fees.  We --

4          THE COURT:  Why not?

5          MR. KAZANOFF:  That you are not, Your Honor.  We

6     do not expect you are because --

7          THE COURT:  Well, I assume that you'll respond --

8     if you respond to the complaint, you'll either say that

9     we're entitled to -- they're not entitled to the declaratory

10    judgment they're seeking or that you don't need a

11    declaratory judgment because maybe it's caught up in one of

12    the contract claims or something else.

13         MR. KAZANOFF:  Understood, Your Honor.  So what we

14    did is we -- once we understood, which was this year in

15    2018, that definitively the Trustee did not intend to

16    prosecute the declaratory judgement action --

17         THE COURT:  Yeah, but he has no reason to.

18         MR. KAZANOFF:  We have since approached the

19    liquidator and said now that that claim will not be

20    prosecuted within this Chapter 15 proceeding, we ask you to

21    lift the stay so we can proceed on the BVI and that claim.

22    Alternatively, we would -- and I mean alternatively -- I

23    don't want to do it in two places, we would proceed on that

24    claim against Century in this -- within the Chapter 15

25    proceeding.  But it's our affirmative claim.  We get to

1    pursue it somewhere.

2            THE COURT:  Yeah.  Well, normally, you would think

3    you'd pursue it in the insolvency court.  Why don't you just

4    make a motion for relief from the stay under the recognition

5    order and if that's what it takes.  I don't know if the BVI

6    court is saying they'll defer to this court because it's a

7    New York claim or it's wrapped in an adversary proceeding.

8            MR. KAZANOFF:  I don't --

9            THE COURT:  But you guys have to figure that out.

10           MR. KAZANOFF:  But that's -- our only issue, Your

11   Honor, with respect to substitution because we are not

12   seeking to delay this case.  I agree with Mr.

13   (indiscernible) that the proper -- not proper, that's the

14   wrong word.

15           THE COURT:  Expeditious.

16           MR. KAZANOFF:  The most expeditious approach here

17   would be to effect these settlements, get the individuals

18   out that are getting out, get a new amended complaint that

19   we would either oppose the amendment or more likely move to

20   dismiss, and we can get on with this, which is what we have

21   wanted as well.

22           Our issue, Your Honor, though, is we can't stand

23   by and let the substitution happen without expressing our

24   very strong belief that that substitution plus this consent

25   decree in the BVI cannot eliminate our right to seek these

Page 110

1    deferred fees.  Because what I understand the liquidator,

2    the position he's going to take, I believe, is that we get

3    to assert it as a setoff to Mr. Picard's claim.  Once Picard

4    substitutes in for Century in this action.

5              That's not a solution.  It's our affirmative

6    claim.

7              THE COURT:  I understand.  No, I understand that,

8    but let me come back to the settlement or the substitution.

9    That seems to be an issue that doesn't affect the ability to

10   settle these cases.  They can both -- if they agree they can

11   both settle the claim and then just waive any rights or

12   release any claims jointly.  But, you know, I know you're

13   Defendants and while you're telling me, gee, you'd really

14   like to have this resolved, I suspect that you'd rather that

15   it's never resolved.

16             MR. KAZANOFF:  Listen, it's not lost on us that

17   it's ten years, Your Honor.

18             THE COURT:  Right.

19             MR. KAZANOFF:  And just to be clear, what our

20   concern on substitution is we do not want the effect of the

21   substitution to be that Century has now exited our adversary

22   proceeding that we have and that our ability to pursue the

23   claim in the BVI has -- is in limbo because we're still

24   litigating with the Trustee Century's claims.  We can't be

25   -- lose our ability to pursue those --

1          THE COURT:  I hear you.  This talk of substitution

2     is entirely hypothetical to me at this point.  I have a case

3     that's been pending for nine years.  It's time to answer and

4     move.  If they're going to substitute, that's their business

5     but it just can't hold up this case anymore.  So fire

6     answers or make you motions to the extent I don't know how

7     many defendants are left in these actions.

8          MR. KAZANOFF:  There will be a number of

9     defendants left.  What we would ask, Your Honor, is that --

10    and we understood clearly what you put on our stipulation.

11    We get it.  What I would respectfully say is that we

12    shouldn't have to respond to a complaint that the Trustee

13    has clearly said they are going to amend.

14         THE COURT:  Well, I disagree.  And not -- and I

15    hear you about efficiency and all that, but he hasn't

16    amended it.  And who knows if he'll ever amend it.  Who

17    knows if he'll ever be substituted.  I don't know.  You

18    know, if he seeks to amend, you can argue delay as a reason

19    not to permit him to amend if that's what you want to do --

20         MR. KAZANOFF:  Your Honor

21         THE COURT:  -- aside from futility and whatever

22    else and prejudice.

23         MR. KAZANOFF:  I understand.  I'm asking you for

24    -- I'm not asking.  Let me suggest my point is is that --

25         THE COURT:  You want him to go first but he hasn't

Page 112

1      done anything.  So just --

2              MR. KAZANOFF:  If he substitutes in and there is

3      an amended motion for amended complaint, we would ask that

4      we be given time to look at that complaint and decide how

5      we're going to respond with respect to the parties that are

6      still in the case at that time.

7              THE COURT:  Tell you what.  If that comes to pass

8      before your time to answer or move occurs, you can certainly

9      write me a letter and we'll have a conference on that.  But

10     nothing has changed in all these years, so fire an answer or

11     make your motion.  If you're going to file a motion, you

12     know, if there are a lot of defendants here and they're

13     going to file a motion on the same issue, then I ask that

14     you file an omnibus brief which is -- on those common issues

15     which is the way we've usually proceeded in these cases

16     anyway.

17             MR. KAZANOFF:  We would always seek to try to make

18     things (indiscernible).  The one thing, Your Honor, though,

19     and I think we can move forward on this very quickly and

20     there won't be any of these complications is we need some

21     level of comfort that consenting to the substitution has not

22     put us into this situation where we have lost -- somehow

23     lost our right.

24             THE COURT:  There's no substitution.

25             MR. KAZANOFF:  But it's going to happen.  I think

Page 113

1    Mr. Kryzowki's going to tell you he's going to either

2    substitute on consent or he's going to have to move to

3    substitute.

4            THE COURT:  All right.  Well, then you can object

5    to it.  In other words, if the terms of the substitution,

6    express or implied, prejudice you for the reasons you've

7    stated, you can object to the substitution unless it's, you

8    know, it's clarified that you can proceed with your claim in

9    the BVI or you can assert it as a setoff against the Trustee

10   or whatever, you know, whatever it is.  But I don't have

11   that motion here and I'm not going to wait any longer.

12           MR. KAZANOFF:  Understood, Your Honor.

13           THE COURT:  All right.  I'm glad we're in

14   agreement on that.

15           MR. KAZANOFF:  Do we get to -- I would like to

16   hear the liquidator's position with respect to our ability

17   to pursue the deferred fee claims.  I would like that to be

18   on the record.

19           THE COURT:  In the BVI or here?

20           MR. KAZANOFF:  Here or in the BVI, whatever it is,

21   because that's the central issue from our perspective.

22           THE COURT:  That's a fair request.  How much is

23   involved in these deferred fees?

24           MR. MOLTON:  Judge, I think it's $26 million.

25           THE COURT:  Okay.  So where's he going to pursue

1    his deferred fees claim?

2            MR. MOLTON:  Judge, they agreed that they would

3    basically pursue that issue here.  And just to -- I want to

4    just take --

5            THE COURT:  But how did --his question was if

6    there's -- that's fine as long as nothing changed, but his

7    concern is that if there's some sort of substitution and it

8    doesn't include this declaratory judgment claim because it's

9    not really a claim he has against the -- you know, SIPC

10   estate or against BLMIS.  That's a claim he has against you,

11   and he's concerned that somehow he will lose the ability to

12   prosecute this.  I realize this is all --

13           MR. MOLTON:  Hypothetical.

14           THE COURT:  -- dependent on what the terms of the

15   substitution are.  But so where's he going to litigate his

16   claim?  Where do you contemplate he's going to litigate his

17   claim?

18           MR. MOLTON:  This is how we see it, and first of

19   all, we've been working very hard by the way in good faith

20   to try to untie this (indiscernible), and it may that we'll

21   be able to do that in the next few weeks and avoid motion

22   practice.  But in any event, Your Honor, Mr. Kazanoff is

23   right is that the FG and I'll give you a little procedural

24   history and then I'll tell you the answer.

25           THE COURT:  All right.

Page 115

1          MR. MOLTON:  Two FG entities brought proof of

2     claims, proof of debts they call them, in the BVI asserting

3     two separate claims, indemnification under their management

4     agreements and associated agreements, and deferred fee and a

5     deferred fee claim which relates to approximately what we

6     understand to be what they claim to be $26 million of

7     performance fees and management fees that they say they're

8     entitled to off of the fictitious profits that were

9     accounted for as a result of the Madoff fraud.

10          Twenty percent performance fees, and I think less

11     than a one percent --

12          THE COURT:  Wasn't there a similar issue in

13     Kingate?

14          MR. MOLTON:  There were similar issues, Your

15     Honor.

16          THE COURT:  I remember that with (indiscernible).

17          MR. MOLTON:  There were similar issues and Your

18     Honor just wrote about some of those issues in a different

19     context.

20          THE COURT:  Right.

21          MR. MOLTON:  But in any event, the indemnification

22     matter went forward.  The liquidator objected and as Your

23     Honor knows, there's a procedure in BVI called Section 273

24     that if you don't like what the liquidator does, you use

25     that procedure to object.  That went forward.  That went to

1    trial.  I think --

2              THE COURT:  I thought there was an injunction

3    procedure --

4              MR. MOLTON:  They --

5              THE COURT:  You couldn't prevent them from coming

6    here --

7              MR. MOLTON:  That was the redeemer defendants, but

8    273's the vehicle --

9              THE COURT:  Okay.

10             MR. MOLTON:  -- for which you can oppose the

11   liquidator suing in the United States opposing his

12   disallowance of claim under BVI.

13             THE COURT:  I've got it.

14             MR. MOLTON:  Whatever.  So that's a procedural

15   vehicle.  That went forward and they threw a lot of

16   indemnification into that bucket, including costs from the

17   (indiscernible) litigation, the class action, included all

18   sort of other millions and millions and millions and

19   millions of dollars of cost.  That was adjudicated by the

20   BVI court.  I think one indemnification survived, claim

21   survived, and that was in connection with the Morning Mist

22   derivative action going back to a decade.  And that

23   survived, and that went up.  They appealed that to the

24   Eastern Caribbean Court of Appeal which affirmed the BVI

25   court.  And I believe they just settled out with the

Page 117

1    liquidator on the Morning Mist indemnification claim.

2              THE COURT:  So the indemnification issue is done?

3              MR. MOLTON:  Well, I don't know.  I think they

4    still -- I asked that question because I thought Your Honor

5    might ask that question.  I think --

6              THE COURT:  Regarding the privy counsel?

7              MR. MOLTON:  -- they still might have some time to

8    go to privy counsel.  I don't know if they will or they

9    won't.

10             THE COURT:  But you said they settled the --

11             MR. MOLTON:  They settled --

12             THE COURT:  Okay.

13             MR. MOLTON:  -- one aspect of it but I don't think

14   the other aspects of that.  The deferred fee action, Your

15   Honor, and I know my friend Mr. Kazowitz said it's a

16   separate contract.

17             THE COURT:  Kazanoff.

18             MR. MOLTON:  Kazanoff.  Why did I say Kazowitz?

19             MR. KAZANOFF:  (Indiscernible) Kazowitz's lawyer.

20             MR. MOLTON:  Kazanoff.  Mr. Kazanoff said it's a

21   separate contract, and it is a separate contract.  I think

22   there's a 2003 contract --

23             THE COURT:  Just where he's going to -- all I want

24   to know is where -- he wants to know where he's going to

25   litigate it.

Page 118

1          MR. MOLTON:  Yeah.  But I'm going to get to that

2     point right now if Your Honor suffers with --

3          THE COURT:  Okay, please.  It's the afternoon

4     already.

5          MR. MOLTON:  We waited a long time.

6          THE COURT:  Well --

7          MR. MOLTON:  In any event, Your Honor, they

8     approached us and said let's not litigate this in the BVI.

9     The issue will be litigated in front of Your Honor, and it

10    will, because the issue that although the deferred fee issue

11    results in a separate contract and that contract talks about

12    election of deferred fees, how people are entitled to them,

13    the ultimate entitlement to the fee itself is the very issue

14    of the contract claims and the unjust enrichment claims and

15    the constructive trust claims and the breach of fiduciary

16    duty claims that are being assigned to Mr. -- that have been

17    assigned to Mr. Picard, meaning if Your Honor looks at that

18    complaint that's in the case in front of us, there's -- the

19    complaint seeks the return of $919 million of fees that were

20    paid to the Defendants pursuant to the same agreements that

21    they're saying entitle them to the deferred fees.

22          So the adjudication of that litigation in front of

23    Your Honor is going to resolve that issue.

24          THE COURT:  If the Trustee is wrong and they're

25    right, where do they collect from?

Page 119

1          MR. MOLTON:  If they're right and the Trustee's

2     wrong, Mr. (indiscernible) has -- the liquidator has

3     accepted and agreed in the stay order that Your Honor's

4     determination as to that issue will be binding on the

5     liquidator.

6          THE COURT:  So he can go back or the client can go

7     back to BVI and collect whatever the percentage

8     distribution.

9          MR. MOLTON:  Correct.  And I'm sure the client

10     wouldn't even have -- I'm sure Mr. Kazanoff wouldn't even

11     have to go back and call me up.  He'd send me the judgment

12     and --

13          THE COURT:  And you'd write him a check?

14          MR. MOLTON:  And Mr. (indiscernible) would take

15     care of it.

16          THE COURT:  All right.  Does that answer your

17     question, Mr. Kazanoff?

18          MR. KAZANOFF:  It does not.

19          THE COURT:  In what way doesn't it answer your

20     question?

21          MR. KAZANOFF:  Well, basically --

22          THE COURT:  He's saying the entitlement to the fee

23     is going to be determined if the Trustee takes over the case

24     because it's wrapped up with this question of whether you're

25     entitled to fees at all.

Page 120

```
1                MR. KAZANOFF:  And I'm not --

2                THE COURT:  Which would be a defense to I guess

3    the fraudulent -- you know, the subsequent transfer actions

4    or breach of fiduciary duty actions.

5                MR. KAZANOFF:  Is there potential overlap here --

6    actually, of course, I'm not going to say that these --

7    there's different law that applies to these agreements,

8    okay, the investment management agreements that Picard is

9    going to be suing under.  There's, I believe, four of them

10   here.  There's different law that applies.  It's also that

11   the timing is going to matter right here because the

12   deferred fees were owed over different time periods.  Those

13   claims will be pursued over different time periods.  It

14   isn't that the determination of the claims that are -- the

15   affirmative claims asserted against my clients will

16   necessarily govern the deferred fees.

17               THE COURT:  Well, he's going to -- just on

18   fraudulent transfer claims which are more familiar.  I

19   assume your clients are being used as subsequent transferees

20   for the Trustee?

21               MR. KAZANOFF:  Correct.  In the Picard action.

22               THE COURT:  In the Picard action and either he or

23   you.  I'm not clear on the burden of proof.  I think I know

24   what the burden of pleading is.  But the issue of your --

25   you're taking or receiving that money in good faith, putting
```

Page 121

1    aside value for the minute, is going to be an issue.  If he

2    proves that you lacked good faith and that you had knowledge

3    of the avoidability of the initial transfers, are you saying

4    you're still entitled to fees?

5                MR. KAZANOFF:  Well --

6                THE COURT:  Because that was the issue that came

7    up in Kingate.

8                MR. KAZANOFF:  And I understood, and I read that

9    opinion before I came here today, Your Honor.  My point is

10   is what I understand they're proposing is that the

11   determination of a hypothetical complaint that hasn't been

12   filed yet, I don't know what claims are going to be --

13               THE COURT:  Well, that's why I said this is all

14   hypothetical.  File your answer and make your motion.

15               MR. KAZANOFF:  But they're saying that a complaint

16   will contain claims, and here we're not talking necessarily

17   about Mr. Picard's subsequent transfer claims in the SIPC

18   proceeding.  We're talking about the liquidator's claims

19   that he -- Mr. Picard is taking on assignment.  He's telling

20   -- I've been told that they're not going to assert the

21   declaratory judgment claim with respect to deferred fees.  I

22   don't know which of the other claims they're going to

23   assert.  I don't know over what time periods.

24               It is entirely premature to deny us the right to

25   pursue an affirmative claim based on what may be argued in

Page 122

1    opposition to the complaint.

2           THE COURT:  I've heard -- this is what we'll do.

3    You file your answer or your motion.  If you make a

4    substitution motion, as part of that motion, you should

5    submit a proposed amended complaint so then we'll have some

6    more specific context about how the proposed substitution

7    and amended complaint may affect the specific right that

8    they're raising.  And it may be that, you know, although you

9    don't technically have your deferred compensation claim in

10   whatever is being assigned to the Trustee, the determination

11   of that suit is going to determine your claim because your

12   issue of good faith, knowledge are all going to be issues in

13   the Trustee's case.

14          MR. KAZANOFF:  I understand what you're saying,

15   Your Honor.  Can I ask one follow-up question just because

16   we've been wrestling with this issue for six months?  If

17   there is a substitution by the Trustee and for the

18   liquidator, can we be confident that we can still assert an

19   affirmative claim for our deferred fees against the

20   liquidator or have we somehow given up that right?

21          THE COURT:  Well, the -- as I understand it, the

22   stipulation was entered into under the understanding that

23   the liquidator would be filing these claims, right, would be

24   prosecuting this particular adversary proceeding.

25          MR. KAZANOFF:  It reads as it reads.  Our

Page 123

1    understanding was that the deferred fee claim would be

2    decided.

3              THE COURT:  But that is in the context of a

4    declaratory judgment issue, right?

5              MR. KAZANOFF:  Correct.

6              THE COURT:  So if that comes out of the

7    litigation, maybe it's time to take another --

8              MR. KAZANOFF:  Right.

9              THE COURT:  -- look at the stipulation.

10             MR. KAZANOFF:  But I --

11             THE COURT:  Okay.  As a change in circumstances.

12             MR. KAZANOFF:  That is certainly how we view it.

13             THE COURT:  All right.

14             MR. KAZANOFF:  And but the one point is it has

15   been in our view of the --

16             THE COURT:  Somebody's got to get the last word

17   and then nobody else can.  I see you jumping up, Mr. Molton.

18             MR. KAZANOFF:  Well, maybe I should let him speak.

19             MR. MOLTON:  He knows me too well.  His Honor

20   knows me too well.

21             MR. KAZANOFF:  We just in looking at the

22   procedural rules here, it is somewhat unclear whether we can

23   assert what would happen.  Let's say we answer and let's say

24   we assert a counterclaim for our deferred fees.

25             THE COURT:  Another hypothetical.

Page 124

1             MR. KAZANOFF:  Another hypothetical against the

2     liquidator.  And now Picard seeks to substitute in to the

3     action to prosecute the claims that he believes he took on

4     assignment.  It's a little unclear to us --

5             THE COURT:  You make a motion to abstain on that

6     issue and have the BVI court decide it.  Somebody's got to

7     decide it first, okay.  All right.

8             MR. KAZANOFF:  Thank you, Your Honor.

9             THE COURT:  Thank you very, very much.  I look

10    forward to reading your motions and/or answer.

11            MR. KRYZOWSKI:  Thank you, Your Honor.

12            THE COURT:  Thank you.

13            MR. MOLTON:  Thank you, Your Honor.

14            THE COURT:  Thank you.

15            (Whereupon these proceedings were concluded at

16    12:11 PM)

17

18

19

20

21

22

23

24

25

1                           I N D E X

2

3                           RULINGS

4                                           Page        Line

5

6    Oral motion to withdraw the claim with      56          1

7    prejudice is granted

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 126

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya
6    Ledanski Hyde
7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2018.12.23 21:45:22 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 20, 2018

| & | | | 6 |
|---|---|---|---|

**&**

**&** 4:1,6,11,12,18
5:6,18 6:2,6,23
10:8,15 20:3

**0**

**08-01789** 1:9 4:1
4:6,11,17 5:1,6,12
5:17 6:1,6,11,17
6:22 7:1,6,11 8:1

**1**

**1** 4:4,9,15,20 5:4,9
5:15,21 6:3,8,19
6:25 7:3,8 125:6
**1.8** 90:7
**10** 16:12 69:14
94:11 96:14,21
97:1
**10-03800** 3:1 8:7
**10-04377** 2:1 8:2
**10-04390** 1:17
7:14,19
**10-04658** 8:2
**10-05383** 8:5
**100** 18:6
**1000** 9:22
**10004** 3:12
**10020** 9:6
**10022** 10:4,11
**10111** 9:13
**10118** 10:18
**10:04** 3:15
**10th** 20:8
**11** 89:24
**11.831** 89:25
**11/28** 22:10
**11501** 126:23
**121st** 14:20
**1221** 9:5
**12:11** 124:16
**14.9** 16:13
**15** 99:11,12 101:1
102:11 105:17

108:20,24
**1667** 9:22
**1695296** 50:4
**17** 18:21
**17.18** 16:16
**19** 3:14 17:19,23
**1992** 76:14,18
**1993** 76:18
**1995** 80:14 85:3
87:14 88:16,21
89:13 90:24
**1996** 52:5
**19th** 79:17
**1st** 76:18

**2**

**2** 57:16
**20** 126:25
**200** 105:14
**20006** 9:23
**2003** 117:22
**2009** 24:10 105:15
**2010** 24:11 47:9
**2011** 92:12
**2015** 47:9
**2016** 50:4 66:22
69:9
**2018** 3:14 4:4,4,9
4:9,15,15,20,21
5:4,4,9,10,15,15
5:21,21 6:4,4,8,9
6:14,15,19,25,25
7:4,4,8,9 108:15
126:25
**2019** 73:8
**21st** 69:9
**23** 48:4
**24** 93:12
**25** 93:12 96:15
**26** 70:12 113:24
115:6
**26th** 26:4
**273** 115:23

**273's** 116:8
**28** 40:12
**28th** 12:1
**29** 40:12

**3**

**3** 16:15 57:16
59:11
**3,660** 15:16
**30** 18:12 21:24
69:15
**300** 126:22
**30th** 55:20
**31** 4:4,9,15,21 5:4
5:10,15,21 6:4,9
6:15,25 7:4,9
**31,2018** 6:20
**31st** 88:16 90:4
**330** 126:21
**350** 10:17

**4**

**4** 89:18
**4.2** 90:5
**420** 50:6
**45** 9:12
**4640** 10:17
**465** 10:3
**499** 50:6

**5**

**5** 59:6,11 65:25
68:19
**500** 43:7
**501** 7:16,21
**502** 33:16 36:6,7,8
36:12 41:9 48:15
48:18
**509** 74:18,23
**546** 48:2
**548** 29:11 39:4
46:15
**56** 125:6

**6** 89:14
**64** 17:19
**65** 17:15,23
**6th** 92:12

**7**

**7** 90:4
**703** 71:7
**75** 17:14,15,20,20
17:21 63:2

**8**

**8** 79:13,15 84:10
85:3,7 89:7
**8.2** 89:16
**8.4.** 90:1
**8/31** 89:20
**80** 63:2
**80s** 37:6
**87** 15:17
**87,840** 15:18
**8th** 69:9

**9**

**9** 88:17,17 93:24
**90** 19:1
**9019** 102:12
**90s** 37:6 86:25
**919** 10:10 118:19
**95-88888** 1:3

**a**

**abigail** 10:13 20:2
**ability** 110:9,22
110:25 113:16
114:11
**able** 15:10 44:3
64:4 72:8,22 74:9
75:19 86:21
114:21
**absence** 18:5
**absolute** 41:3
**absolutely** 27:11
28:2 38:16 44:8

56:4
**abstain** 124:5
**accepted** 119:3
**access** 13:21
**accommodations**
16:9
**accomplish** 99:8
103:23
**account** 26:18,20
52:9 71:8 73:16
74:2,19,21,23
76:2 84:10 85:3
85:24 86:10 87:23
88:9,16,23,24
89:3,5,9,12,12,13
89:13,15,24 90:1
90:4,6,12,15,17
90:21,24 91:4,4
91:25 92:3 95:1
97:17,22
**accountants**
59:24
**accounted** 115:9
**accounts** 31:7
72:21 76:4,14
85:20 87:17 89:6
91:20
**accurate** 17:21
126:4
**acknowledged**
40:7
**act** 23:11
**action** 24:12,16
24:21 48:1 75:14
100:6 101:1,14,15
102:3 104:25
105:15 106:25
107:3,4 108:16
110:4 116:17,22
117:14 120:21,22
124:3
**actions** 15:15
19:21 100:1 102:7

**activity** 12:19,24
14:1
**actual** 4:3,20 5:20
6:14
**ad** 39:2
**add** 35:10 53:25
**address** 28:5
41:16 46:19
**addressing** 16:18
**adequately** 28:5
**adjourn** 60:25
**adjournment**
56:15
**adjudicate** 26:24
**adjudicated**
116:19
**adjudicating** 27:1
**adjudication**
26:21,22 118:22
**adjudicative** 27:6
28:1 32:7
**adjustment** 16:15
38:6 45:10
**adjustments**
16:17,18
**administrative**
59:17
**admire** 14:8
**admissions** 23:4
**adv** 1:9,17 2:1,10
3:1 8:2
**advances** 15:6
**advantage** 90:20
**adversary** 24:5,20
25:15 27:3 33:5,9
35:6,14 36:6
38:14 39:12 41:13
44:8 45:3,5 46:10
47:15,20 48:6,11
48:15 49:2 62:23
99:13,14 109:7
110:21 122:24

**adverse** 30:14
**advise** 55:16
**advised** 59:18
**advocated** 33:20
**affect** 55:18 70:16
110:9 122:7
**affirmative** 27:22
28:11 58:8 108:25
110:5 120:15
121:25 122:19
**affirmed** 116:24
**afternoon** 118:3
**agenda** 11:7 16:20
18:12 21:10 80:8
**agmon** 5:1
**ago** 15:15 66:24
93:12,13 102:22
102:22 103:1
**agree** 25:1 32:1
52:25 55:8 70:17
72:10 80:20
101:25 109:12
110:10
**agreed** 30:25 53:8
63:17,17 103:12
107:21 114:2
119:3
**agreement** 20:21
20:23 102:15
103:14,17,19
105:25 113:14
**agreements** 15:8
115:4,4 118:20
120:7,8
**agrees** 55:7 75:10
**ahead** 33:2 38:21
38:25 43:19 44:19
56:11 81:3
**al** 1:14,23 2:7,18
3:6 9:4
**allegation** 94:5
**allegations** 82:20
83:3

**alleged** 82:6
**alleging** 87:3
**allocation** 12:12
14:22
**allocution** 52:3,16
65:7
**allow** 12:23 22:17
25:13 96:15
**allowance** 4:2,7,
4:13,18 5:2,8,13
5:19 6:2,7,12,18
6:24 7:2,7 24:18
28:2 33:10,12
34:5 35:2,7 36:5
36:13 44:9 45:3,6
45:9 47:3
**allows** 31:2
**alluded** 30:9
**alpha** 101:5,6
**alternatively**
108:22,22
**amend** 99:24
105:3 111:13,16
111:18,19
**amended** 56:16
57:19,20 58:22
59:5 61:4,5,6,18
105:1 109:18
111:16 112:3,3
122:5,7
**amendment**
109:19
**americas** 9:5
**amount** 12:19
17:18 88:1
**amounts** 15:11
**amplified** 26:13
**amplify** 22:18
**analysis** 44:10
**aneurysm** 72:1,6
78:20
**annette** 7:12 85:2
85:19 87:15,16

90:23
answer   17:11 34:5
43:3 64:19 69:15
80:21 95:23,24
98:9 104:18,22
111:3 112:8,10
114:24 119:16,19
121:14 122:3
123:23 124:10
answered   69:16
69:16 104:17
answers   111:6
antecedent   50:6
50:11,12
anticipates   16:18
anybody   15:3
anymore   11:17
17:21 23:22 38:4
111:5
anyway   59:9
75:19 112:16
apace   14:23 15:7
apartment   83:8
apologize   64:4
103:3
appalled   42:4
appeal   12:7
106:10 116:24
appealed   116:23
appeared   64:25
65:1 71:9 72:16
74:10
appearing   11:5
appellant   12:5
applicants   12:4
application   4:1,6
4:11,17 5:1,6,12
5:17 6:1,6,11,17
6:22 7:1,6 12:1
14:8 15:3 16:6
18:7
applications   11:9
11:11 14:12 16:5

16:8,17 17:2,9
22:21
applies   66:5 120:7
120:10
apply   39:11,12
63:15
applying   88:25
approach   58:10
109:16
approached
108:18 118:8
approaching   15:3
85:10
appropriate
50:17
approve   15:8 18:6
approved   31:4
approving   14:11
approximately
15:17 115:5
april   4:4,9,15,20
5:4,9,15,21 6:3,8
6:14,19,25 7:3,8
apt   25:14 46:21
aren't   68:4 82:8
arguably   30:13
argue   53:24 76:11
81:19,21 111:18
argued   41:9,10
121:25
arguing   18:24
40:10,15 54:9
75:7
argument   22:5
23:15,18,23 29:25
39:7 40:11,17
45:16 47:8,19
52:1 54:10,11
56:18 60:14,16
65:18 68:6 90:14
arguments   27:17
47:20 51:18

arrange   55:3
arrangements
106:22
artfully   17:11
articulated   94:3
ascribing   82:6
aside   60:10 72:9
111:21 121:1
asked   15:19,21
26:8 28:18 34:24
49:12 56:15 60:9
60:11 63:9 84:21
84:21,22 87:15,16
117:4
asking   39:9 43:19
65:17 68:5 78:6
91:6,7 111:23,24
aspect   51:16
117:13
aspects   117:14
assert   26:12 27:18
28:6 33:16,19,24
110:3 113:9
121:20,23 122:18
123:23,24
asserted   34:3
106:25 120:15
asserting   30:21
115:2
asset   16:21
assets   84:8 86:10
93:11
assign   33:18
104:12 107:6
assigned   102:11
102:18,21 118:16
118:17 122:10
assigning   106:24
assignment
102:25 106:21,24
121:19 124:4
assisted   12:5,6

assists   13:22
associated   115:4
associes   6:6
assume   22:5
70:18,24 87:18
100:13 106:15
108:7 120:19
assuming   31:16
65:5,5 81:21
107:9
assumption   65:10
attention   55:13
attenuated   94:21
attorneys   6:2 9:4
9:11 10:2,9,16
12:21
attributed   41:8
august   90:4
authority   27:6
28:1 32:7 93:23
authorization
7:11
authorized   20:10
automatically
96:15
avenue   9:5 10:3
10:10,17
avoid   102:8
114:21
avoidability   121:3
avoidance   17:13
24:12,15,21 25:23
26:21,24 29:10
48:1
avoided   17:11
avoiding   23:13

**b**

b   3:21 7:17,22
26:16 57:11
b.r.   50:6
back   14:23 34:4
37:5 54:1 60:24
61:15 77:1 80:14

[back - calvani]                                                                    Page 4

82:6 83:17 86:25
95:24 96:15 97:6
101:21 106:21,24
110:8 116:22
119:6,7,11
**backdate** 95:1,18
**backdated** 82:12
82:25 83:2 94:19
**backdating** 82:24
85:10 88:9 92:22
**background**
21:13 23:6 25:18
**bag** 94:10
**baker** 4:1 9:10
16:10
**bakerhostetler**
11:5 12:2 87:9
98:15
**balance** 47:6 85:5
**bam** 9:4
**bank** 80:13 81:4
83:25 84:6,6,16
84:17 85:9,13,18
85:23 87:18 88:15
88:18 89:5,11
90:11 91:2 92:22
94:20,25 95:22
96:2 97:18
**bankruptcy** 1:1,6
3:10,23 25:7,12
40:24
**bar** 47:25 48:8,12
**barn** 1:23
**barristers** 6:1
**based** 18:4 21:14
23:4 24:24 26:17
27:15 29:7 30:4
33:24 39:18 41:3
47:25 56:16 61:1
65:18 70:15
121:25
**basically** 66:20
67:4 72:11 98:9

114:3 119:21
**basis** 27:25 81:17
82:21 86:22
102:25
**bates** 37:2
**bear** 50:13 68:2
85:14 87:2
**began** 14:19
**begins** 65:25
**behalf** 11:5 14:17
20:3 31:7 33:4
56:12 87:10
**belied** 47:8
**belief** 59:17
109:24
**believe** 19:8,14,17
30:4,24 59:6 76:9
80:18,23 82:16
87:21 88:6 92:20
93:22 94:9 96:1
110:2 116:25
120:9
**believes** 124:3
**bell** 9:25 11:11,14
11:16,19,22 14:15
14:17,17 15:2,21
15:24 16:1,5 17:4
17:7,11 28:22
32:18 50:21,25
52:20
**bells** 44:22
**beneficiary** 64:1
**benefit** 13:14
**benefits** 63:25
**bermuda** 12:21
**bernard** 1:14,19
2:3,13,14 74:21
74:23
**bernstein** 3:22
**best** 19:6 98:25
105:10
**better** 77:8 106:10

**beyond** 16:12
**bigger** 84:17
**bill** 16:13
**billing** 16:15
**billion** 12:14
17:19,24 44:6
**binding** 19:4
**bit** 12:24
**blatantly** 27:10
**blindside** 43:13
**blindsided** 42:23
49:11
**blmis** 59:16,18,19
72:16 74:11,24
84:10 85:19,21,23
86:9 88:8 89:2,9
90:12,15,17,21
91:20 94:24 95:17
97:17,22 114:10
**blmis'** 72:23
**bodden** 4:12
**boil** 27:14
**bongiorno** 7:12
82:7 85:2,19
87:15,16,25 88:20
90:23 97:18
**bonventre** 7:12
**book** 44:17
**bottom** 64:5
**bouncing** 98:8
104:15
**bound** 30:8
**bowling** 3:11
**brain** 72:1,6
78:20
**breach** 34:1
100:13,19 118:15
120:4
**breached** 101:11
**brief** 21:24 22:13
22:19 65:25 68:16
93:24 112:14

**briefing** 55:1,3
**briefly** 32:18
**briefs** 22:18
**bring** 48:1 57:8
**bringing** 47:5
**broad** 97:13
**brought** 75:14,16
100:6 115:1
**browne** 6:11
12:20
**bucket** 116:16
**bunch** 74:1
**buongiorno** 18:14
**burden** 82:3
86:13 92:18,21
93:4,4,5,7 120:23
120:24
**burdens** 99:18
100:18
**business** 111:4
**bvi** 106:3,10
107:17,18,19,21
107:22 108:21
109:5,25 110:23
113:9,19,20 115:2
115:23 116:12,20
116:24 118:8
119:7 124:6

**c**

**c** 7:16,21 9:1 11:1
29:11 39:4 46:15
126:1,1
**calculate** 31:3
50:17
**calculation** 25:23
25:23 31:4 45:14
46:14
**calculations** 26:7
**call** 23:20 29:14
74:5 115:2 119:11
**called** 115:23
**calvani** 9:19 80:7
80:24 81:2 87:7,9

87:9,19,21,25
88:5,12,20,24
89:4,10,17,20
90:3,9,13,16,19
90:22 91:3,8,12
91:15,18,22,24
92:2,9,11,17,20
92:25 93:3,15,18
93:22 94:2,9,22
95:5,8,11,14,16
95:23 96:1,4,7
98:3
**can't** 58:3 62:11
69:7,13,14 71:20
77:12,18 80:19
86:14
**capable** 96:11
**care** 34:4 40:18
103:15 119:15
**caribbean** 116:24
**carole** 9:8 32:22
33:3
**case** 1:3,9,17 2:1
2:10 3:1 11:12
12:5,15,20 13:3
14:23 16:22 18:6
22:20 23:7 25:14
25:21 28:5 29:11
29:19 30:5 36:17
44:6,15,16,21,23
46:20,21 48:3
51:21 52:15 54:22
56:3,19 57:21,22
57:23 59:24 60:1
61:11 63:7,20
64:14 69:2 75:12
75:25 76:5,22
79:5 82:20 84:11
85:13 91:11 92:8
93:23 94:2,8,10
95:10,20 97:15
98:7,13,16,23
102:12 103:4,5,8

104:14,15,21
105:7 109:12
111:2,5 112:6
118:18 119:23
122:13
**cases** 15:13 18:17
18:20,21 19:1
22:21 25:21 28:19
28:21 29:17 34:13
34:18 36:4,18
37:24 40:21 44:4
44:15 50:7 56:10
56:15,19,21 57:22
60:3,8 61:3,6,13
61:20,20,23,24
62:3,7,25 63:6,11
64:2,9,12,14
65:20 66:4,5,5,13
66:16,17,22 67:12
67:24,24 68:14,20
69:1,11,18,24
70:22 71:3,6,13
75:21 76:4 77:7
77:25 79:1,4
98:11,19,24 99:21
99:24 110:10
112:15
**categories** 91:17
**category** 91:16
**cat's** 94:10
**caught** 76:11
108:11
**cause** 8:1 68:6
107:4
**causes** 107:3
**cbi** 46:22
**cede** 11:13
**central** 113:21
**century** 108:24
110:4,21
**century's** 110:24
**certain** 18:13 24:7
30:9 48:8 58:25

62:2 73:25 75:10
87:16 105:20
**certainly** 11:10
23:16 53:22 67:20
76:23 78:22 79:2
97:15 112:8
123:12
**certificates** 83:11
**certified** 126:3
**cetera** 71:10
**cgm** 1:3
**chaitman** 10:1,6
56:8,12,12,22
57:4,7 58:3,18,24
59:8,10,13,15,22
59:25 60:15,17,19
61:4,8,12,14,25
62:7,9,13,18,21
62:24 63:7,13,19
63:23 64:3,10,16
64:20,22 65:3,14
65:23,25 66:6,17
67:6 68:12,15,19
69:1,2,5,8,12,16
69:19,25 70:3,6,9
70:21,25 71:2,20
71:24 72:5,13,20
73:10,15,22 74:18
75:3,5,10 76:13
78:10,14,20,24
79:20 80:2,4
**chambers** 19:23
**chance** 42:10
**change** 73:5
123:11
**changed** 112:10
114:6
**changes** 29:6
**changing** 74:23
**chapter** 99:10,12
101:1 102:11
105:17 108:20,24

**chart** 45:25 46:5
**chase** 66:14 74:22
80:13
**check** 74:20
119:13
**checks** 74:19
**chemical** 84:17
85:9,18
**chicken** 82:14,17
**choice** 23:12
**chronology** 63:22
**circuit** 12:7 31:4
34:18 38:5 40:2
44:16,23,24 45:6
46:20
**circumstances**
123:11
**cite** 36:4
**cited** 28:19 30:5
44:15 93:24
**citing** 50:10 54:8
81:5
**claim** 15:3 23:9,17
23:18,19,22 24:15
24:17,19 25:8,12
25:12,18 27:4,9
27:19,19,20,20
28:7,17,23 30:2,6
30:13,20 33:17,19
33:24 34:3,4,6,15
34:19 35:12,15,19
36:9,12 37:14,23
38:11,19 39:16
40:22 41:9 42:25
43:2,7,8 44:25
45:10,18,23 46:9
46:9 47:3,9,15,17
47:21,23 48:14,20
48:24 50:23 53:2
56:1 102:11
105:18,22 106:2
106:11 107:6
108:19,21,24,25

109:7 110:3,6,11
110:23 113:8
114:1,8,9,10,16
114:17 115:5,6
116:12,20 117:1
121:21,25 122:9
122:11,19 123:1
125:6
**claim's** 28:9
**claimant** 23:9
24:15 27:16
**claimants** 23:13
24:10
**claims** 17:18,18
22:11,13,19,25
23:1,21 24:11,13
24:18 25:11,15,15
27:3,24 28:2 29:9
30:7 33:9,12 34:5
35:2,7 36:5,13
42:24 44:9 45:2,5
45:8 46:14 47:3,7
47:25 48:5 49:17
50:8 57:2 77:6
85:14 99:13,16,18
99:19 100:5,11,13
100:14,14,19,21
100:23,24 102:18
102:20,21 104:13
106:3,4,6,25
107:2 108:12
110:12,24 113:17
115:2,3 118:14,14
118:15,16 120:13
120:14,15,18
121:12,16,17,18
121:22 122:23
124:3
**clarified** 113:8
**clarifies** 55:21
**clarify** 20:19
**clarity** 53:14

**class** 116:17
**clean** 29:18
**clear** 23:8 44:24
47:6 56:5 66:12
86:20 110:19
120:23
**clearly** 48:3 67:23
68:9 83:5 111:10
111:13
**clerk** 11:3
**client** 66:8 102:19
119:6,9
**clients** 16:13
36:23 60:5 63:1
63:16 106:25
120:15,19
**close** 32:12 60:21
64:13
**closed** 62:3 65:20
66:16,17,21 68:4
68:22
**closes** 19:7
**cnl** 21:1
**cohen** 25:24 27:21
29:13 50:3
**coin** 29:12 39:2,3
39:7 41:9 50:1,6
54:10
**coincide** 48:2
**coincidentally**
88:17
**cold** 82:9
**collateral** 30:21
51:18 52:1 84:8
85:21
**collaterally** 31:12
**colleague** 87:10
95:11
**colleagues** 104:1
106:23
**collect** 94:17
118:25 119:7

**collectively** 48:7
**collins** 6:17
**columns** 89:22
**combined** 73:23
**come** 39:10 52:17
60:24 101:13
103:3 110:8
**comes** 55:12
77:12 112:7 123:6
**comfort** 112:21
**coming** 116:5
**commenced** 15:15
51:12
**comments** 16:7
**committed** 64:17
**committee** 41:22
**common** 71:6,12
71:19 73:8,12
74:5,16 75:11,17
75:17 76:22,23,24
76:25 79:2 100:19
100:20,23 112:14
**commonality**
104:7
**communicated**
78:15
**communication**
72:1 84:22 88:2
**communications**
44:20 80:15 82:7
85:18,23 97:7,16
**company** 89:22
**compensation** 4:2
4:8,13,19 5:3,8,14
5:19 6:3,8,13,19
6:24 7:3,8 122:9
**competing** 52:24
**complaint** 26:15
94:14 99:25,25
104:24 105:1,2,18
106:12 108:8
109:18 111:12
112:3,4 118:18,19

121:11,15 122:1,5
122:7
**complaints** 100:3
**completely** 25:11
44:7 70:17
**complex** 71:11
101:10 103:7
**complicated** 71:5
**complications**
112:20
**computation** 39:8
39:13 54:16,16
**conaway** 5:17
**conceal** 96:24
**conceded** 31:5,8
38:17 40:13,14
67:24 74:22
**conceding** 38:20
40:14
**concept** 72:22
**concern** 110:20
114:7
**concerned** 98:22
114:11
**concerns** 16:19
**concisely** 64:5
**conclude** 51:6
**concluded** 13:2
124:15
**conclusion** 50:13
**conclusory** 94:5
**conditions** 43:17
**conducting** 73:1
**conference** 8:7
98:7 112:9
**confident** 122:18
**confidential** 83:11
83:18,19 92:13
**confirm** 88:1
**confirmation**
87:18
**confirming** 88:22
88:24

**conflict** 12:4
**conflicts** 14:9
**confusing** 88:12
  88:14 89:17
**connection** 12:6
  17:9 19:20 50:10
  116:21
**consent** 109:24
  113:2
**consented** 94:12
**consenting** 112:21
**consequences**
  30:9
**consistent** 46:20
  48:10 49:6
**consolidated** 2:13
  8:3 71:15
**constitutes** 56:2
**constructive**
  118:15
**contain** 20:10
  83:25 121:16
**contained** 82:5,11
**contemplate**
  114:16
**contend** 38:18
**contest** 19:13
**contested** 71:4
**contesting** 35:16
  36:14,16 37:7,13
  38:1,3,4,7
**context** 22:19
  39:13 40:6 43:10
  44:11 51:5 65:22
  73:5 101:3 115:19
  122:6 123:3
**contexts** 36:25
**continually** 38:1
**continue** 51:7
  53:24
**continued** 13:18
**continues** 14:23

**continuing** 18:16
**contract** 33:24
  34:1,7 40:9
  105:24 106:17,18
  106:20 108:12
  117:16,21,21,22
  118:11,11,14
**contractual**
  100:14,22 101:12
  106:15
**contrary** 79:16
**convene** 14:3
**conversations**
  85:20
**conveyance** 34:2
  39:17
**convince** 54:15
**convinced** 97:13
**copy** 16:7 57:5,8
  58:12
**corporation** 1:11
  9:21 14:18
**correct** 24:22 35:8
  35:19 42:7 51:23
  55:8 65:19 74:14
  75:3 81:9 106:16
  119:9 120:21
  123:5
**corrected** 55:9
**cost** 90:6 116:19
**coster** 10:13 19:24
  20:2,2,6 21:3,6
**costs** 116:16
**could've** 96:11
**counsel** 4:7,13 5:2
  5:7,13,18 6:2,7,12
  6:18,23 7:2,7 12:6
  12:25 13:17 14:6
  14:9 16:8,18
  99:21 117:6,8
**counselor** 12:4
**counsels** 99:9

**count** 55:11
**counterclaim** 25:8
  28:6 123:24
**country** 126:21
**couple** 14:6 18:20
  42:7 69:10 96:9
**course** 12:3 13:17
  14:8 62:21 120:6
**court** 1:1 3:10
  7:16,21 11:2,10
  11:15,20,24 13:6
  13:8,10 14:13,16
  14:24 15:20,23,25
  16:3 17:3,6,8,13
  17:25 18:2,4,9,15
  18:23 19:15,19
  20:1,5,9,13,15,17
  21:2,4,7,9,12,17
  21:18,21 22:4,8
  22:16 23:3,8,15
  24:3,6,9,20,22
  25:1,3,6,7,9 26:3
  26:5,8,11,23,23
  26:23,24 27:13
  28:12,16,19 29:19
  29:21,24 30:11,19
  31:16,22,24 32:2
  32:5,11,14,15,17
  32:21,23 33:2,5,6
  33:13,16,21,25
  34:10,12,21,23
  35:3,5,9,16,19,22
  35:25 36:2,7,14
  36:21,24 37:7,10
  37:12,15,18,20,22
  37:25 38:9,13,18
  38:21,23,25 39:6
  39:20,23,25 40:11
  40:15,20,24 41:1
  41:5,18,20 42:6,9
  42:16,18,20,22
  43:3,9,16,21,23
  43:25 44:2,17,19

  44:22 45:1,7,8,11
  45:13,15,21 46:2
  46:4,12,17,25
  47:7,12,13,19
  48:11,14,20,23
  49:4,7,9,12,15,19
  49:23 50:15,24
  51:3,10,24 52:6,9
  52:12,15,22,22
  53:1,6,10,13,16
  53:18,22 54:5,12
  54:14,24 55:2,16
  55:17,23 56:5,9
  56:11,18 57:3,5
  57:10,14,17,20,25
  58:5,11,13,15,20
  59:2,4,7,9,12,14
  59:21,23 60:9,16
  60:24 61:5,11,13
  61:22 62:1,8,11
  62:16,19,22 63:5
  63:11,18,21,25
  64:7,13,21 65:2,4
  65:17,24 66:3,9
  66:14,23 67:6,8
  67:11,14,16,18,22
  68:1,8,10,14,17
  68:20,23,25 69:4
  69:7,10,13,18,21
  70:1,5,7,14,18,24
  71:1,18,23 72:4,9
  72:19,25 73:12,19
  74:12,25 75:4,6,9
  76:1,5,8,12,15,17
  76:23 77:2,4,18
  77:21 78:2,5,8,11
  78:17,22,25 79:14
  79:19,21,24 80:3
  80:6,10,16,19,25
  81:3,6,10,17,25
  82:13 83:7,10,18
  83:20 84:3,5,14
  84:19,23 85:6,12

85:22 86:2,5,8,16
87:4,8,18,20,24
88:3,10,14,22,25
89:8,15,19 90:2,8
90:10,14,18,20
91:1,6,9,14,16,19
91:23 92:1,7,10
92:12,14,19,24
93:2,10,17,21,25
94:2,7,20 95:3,6,9
95:13,15,20,25
96:3,6,8,17,20
97:4,12 98:4,6,17
98:20,22 99:2,6
100:4,10,13,16,25
101:2,8,20,23
102:9,13,15,20,24
103:16 104:3,5,9
104:11,22 105:4,8
105:12,17,23
106:5,8,10,14,17
106:19 107:6,9,13
107:15,17,18,19
107:21,24 108:4,7
108:17 109:2,3,6
109:6,9,15 110:7
110:18 111:1,14
111:21,25 112:7
112:24 113:4,13
113:19,22,25
114:5,14,25
115:12,16,20
116:2,5,9,13,20
116:24,25 117:2,6
117:10,12,17,23
118:3,6,24 119:6
119:13,16,19,22
120:2,17,22 121:6
121:13 122:2,21
123:3,6,9,11,13
123:16,25 124:5,6
124:9,12,14

court's   22:22
  23:10,16 27:15
  28:8,25
courts   82:2
covering   90:6
created   90:23,24
  99:4
credit   27:22 80:16
  81:1 90:18
creditor   24:23
creditworthiness
  87:23 95:2
cremona   9:15
  11:4,5,13 18:10
  18:11,19 19:3,16
  19:25 20:12,14,16
  20:19 21:8,10,13
  21:20,23 22:7,9
  22:17 23:24 24:7
  24:10,21,23 25:2
  25:5,9 26:4,6,10
  26:12 28:13 29:22
  30:1,16,23 31:19
  31:23 32:1,4,6,12
  32:15 41:16,19,24
  42:1,5,7,11 46:18
  47:2,24 48:13,17
  48:22,25 49:5,8
  49:10,14,16,22,25
  51:23 52:5,7,11
  52:13,19 53:5,8
  53:11,14,17 54:8
  54:23,25 55:6,15
  55:19 56:4,6,10
cremona's   44:10
creque   5:12
criminal   13:19
cross   53:3
crossclaims   101:4
crupi   7:12 95:12
curious   107:1
custodian   73:24
  73:25 74:1

custom   29:1
customer   24:11
  50:8 64:25 65:3
  71:8,9 74:10
customers   12:17
  16:24
cut   66:14 69:14
cuts   27:6

**d**

d   9:16 11:1 33:16
  36:6,7,8,12 41:9
  48:15,18 125:1
d.c.   9:23
daniel   7:12
daniels   27:7,10
  40:21 41:15,21
date   12:1 22:3,5
  47:25 48:8,12
  69:7 79:11,11
  126:25
dated   82:6
dates   19:9 56:16
  60:2
dating   80:14
david   9:17 10:25
  12:2 94:24
davis   10:6 56:12
day   15:16
days   11:16 14:6
  64:15 69:10,14,15
deadline   54:4
  68:25
deal   11:7 51:4
  53:21 71:16 92:10
  103:21
deals   21:11
dealt   101:3
dean   9:16 66:11
dearie   73:3
debited   90:1
debt   50:11,12
debtor   1:7 24:23
  25:8

debts   115:2
decade   37:5
  116:22
deceased   59:16
december   3:14
  20:8 21:24 76:3
  88:16 126:25
decide   24:6 31:17
  33:8 39:20 40:4
  41:12 112:4 124:6
  124:7
decided   13:16
  33:8 38:5 39:23
  40:4,6 43:9,11
  123:2
decision   25:20,25
  27:8,11 32:8
  40:21 41:3,11,14
  42:3 45:18 50:3,6
  54:9,13 67:2 73:3
  74:8 95:21 106:10
decisions   38:5
  44:5 60:5
declaration   70:4,8
  89:18
declaratory   99:17
  105:18,19 106:1
  106:12 107:4
  108:9,11,16 114:8
  121:21 123:4
decree   109:25
deemed   24:17
defendant   28:8
  100:21
defendant's   21:16
  22:22 26:24 28:4
  50:18
defendants   1:15
  1:24 2:8,19 3:7
  7:16,21 19:10,21
  21:25 23:12 28:24
  33:4 66:25 80:9
  80:12 94:3 98:9

99:20,21,22,24
100:5,8,20,22,23
103:13 104:16
105:16 110:13
111:7,9 112:12
116:7 118:20
**defendant's** 66:12
**defender** 13:4,13
**defense** 28:11
38:12 39:3,18
44:14 46:16 120:2
**defenses** 27:22
30:15,22 39:11
74:6 85:15
**defer** 15:24 109:6
**deferred** 105:10
105:12,13,20,25
106:7,12 107:5,10
107:14,23 108:3
110:1 113:17,23
114:1 115:4,5
117:14 118:10,12
118:21 120:12,16
121:21 122:9,19
123:1,24
**definitively**
108:15
**defraud** 92:22
**delay** 68:7 77:20
109:12 111:18
**demand** 40:19
65:15 66:1
**demanded** 60:6
**demands** 60:6,7
64:11 66:3 68:13
**denial** 35:15
**denied** 48:25
**denominator**
17:23
**dentons** 9:3 33:3
**deny** 121:24
**denying** 35:13

**depend** 73:23
**dependent** 114:14
**depicted** 84:8
**depose** 7:12 18:12
**deposit** 37:2
**deposition** 20:22
**depositions** 19:8
19:18 20:9 61:17
67:1
**deposits** 26:19
35:17 36:16,22
37:5,8 45:17 50:7
50:16 71:3,16
72:10 74:12 79:6
**derivative** 116:22
**description** 107:1
**detail** 15:20
**determination**
7:15,20 26:14
30:8,12,13,15,17
30:25 31:6,8 33:7
33:21 35:21 40:3
46:5 53:6 56:2
66:4 106:14
107:23,25 108:2
119:4 120:14
121:11 122:10
**determinations**
40:1
**determine** 19:1
23:3 31:14,20
122:11
**determined** 51:11
119:23
**determining**
23:17,18 53:7
54:21
**development**
93:23
**dicta** 41:10
**didn't** 56:20
60:12 61:8 63:16
67:7 68:21 88:10

90:14,16,25
**difference** 33:23
39:10 40:8
**differences** 44:15
72:13
**different** 18:20
26:9 39:4 46:15
47:18,22 54:17
58:2 61:7 64:15
72:17 75:25 76:2
76:6 80:1 86:16
100:2,16 101:9
115:18 120:7,10
120:12,13
**differently** 39:11
46:23
**difficult** 79:9,9
**dipascali** 59:14,15
**direct** 22:12 75:12
**directed** 51:1
**disagree** 23:6
45:11,13 65:8
103:2 111:14
**disallowance**
116:12
**disallowed** 36:10
37:23
**disciplinary** 41:21
**disclose** 60:13,13
60:17 61:8 65:11
98:1
**disclosed** 58:7,16
61:9,10 62:1
96:22
**disclosing** 60:13
96:24
**disclosure** 61:1
65:12 81:18 93:9
93:10,20,25
**disclosures** 56:16
56:25 57:6,15,21
57:22 58:6,15,21
58:22 60:11 61:2

61:4,6,10,19 62:3
**discover** 66:19
**discovery** 12:22
12:23 13:1 18:17
18:22,23,24 19:7
19:10 46:6,7 60:2
60:5,8 61:1,17,19
61:21 62:2,22,24
63:1,2,5,8,8,9,12
63:15 64:9,13
65:15,20 66:15,17
66:21,25,25 67:3
68:18,21,25 69:1
69:11,13,22,23
79:25 93:6
**discovery's** 19:9
**discovery's** 68:4
**discretion** 36:9
**discuss** 22:15
**discussed** 27:12
27:12
**discussion** 14:4
26:3 84:7
**discussions** 16:9
**dismiss** 109:20
**dismissal** 15:14
**disposition** 70:16
**dispute** 16:4
24:12 33:5 35:25
36:5 38:9,13,16
39:25 46:1,3
**disputed** 46:2,5
**disputes** 24:5
**distinction** 32:7
**distinguish** 25:10
**distribute** 12:13
**distributed** 17:15
**distributing** 12:17
**distribution** 14:22
14:24 119:8
**district** 1:2 7:16
7:21 21:18 26:23
28:6 42:16,17

47:12,13 52:22,22
55:16 73:3
**doctor** 72:2 78:15
78:23
**document** 37:1
60:6 65:15 68:12
74:22 86:13
**documentation**
97:19
**documented**
67:14,16
**documents** 36:19
36:21 60:7 61:9
62:2,5,12 65:21
70:2 79:24 80:22
82:5,11,14,18,22
82:24,24 83:4,15
83:25,25 84:5
86:23 87:2 88:12
89:8 91:2 94:5
96:11,12
**doesn't** 55:6,11
73:5 76:7 86:18
91:11 97:10
**doing** 50:14
**dollar** 27:22,22
**dollars** 12:14 15:4
44:6 116:19
**don't** 55:10,23
59:2 60:14 64:17
65:12 66:12 69:15
69:21,22 70:1,22
71:18 75:20 76:10
76:19 77:16 79:6
79:14,21 82:13
84:7,11 86:20
90:19,20 92:14
93:19 94:16,17
**draft** 20:15 51:21
**drawn** 66:18
**driving** 40:17
**dubinsky's** 65:7

**due** 55:20 56:24
**dueling** 55:24
**duty** 100:14
101:11 118:16
120:4

### e

**e** 3:21,21 9:1,1
11:1,1 125:1
126:1
**earlier** 76:3
**early** 23:6 86:25
**easier** 104:8
**easily** 96:11
**eastern** 73:3
116:24
**economic** 93:23
**ecro** 3:25
**effect** 15:11 22:13
22:23,24,24 23:1
28:17 43:11 53:7
53:12 54:21 56:2
64:7 67:8 79:22
98:2 109:17
110:20
**effective** 53:6
**efficiency** 111:15
**effort** 14:2
**egg** 82:15,17
**either** 36:5 51:5
94:17 95:18 108:8
109:19 113:1
120:22
**elderly** 77:23
**election** 118:12
**electronically**
16:7
**eleventh** 14:18
**eliminate** 109:25
**email** 84:9
**emails** 84:6,7
**embark** 86:14
**emergency** 21:15

**employed** 59:16
**employee** 95:17
**employees** 18:13
59:20
**emy** 46:22
**enact** 50:22
**ended** 45:10 60:2
61:20 66:19
**enforce** 40:8
**englert** 6:23
**enrichment**
118:14
**enron** 28:20
**enter** 16:25 20:17
50:25 53:11 54:19
**entered** 14:11
15:9,13 23:8
35:11 48:4 52:23
55:21 60:4 63:14
66:6,7 73:3 92:12
122:22
**entire** 80:14 91:7
97:14 98:1
**entirely** 46:20
47:18 48:10 49:6
111:2 121:24
**entirety** 84:21,22
96:13
**entities** 115:1
**entitle** 118:21
**entitled** 41:1
44:13 77:5 84:23
85:1,23,25 86:7
95:2 97:15,23,24
108:9,9 115:8
118:12 119:25
121:4
**entitlement**
107:14 118:13
119:22
**entry** 16:6
**equation** 52:8

**employed** 59:16

**equitable** 22:23
23:10,16 24:6
25:7 28:8,25
31:17,20 33:6,8
34:13,19 40:23
51:4,7
**equity** 25:24
26:14,22 27:1,23
29:2,10 31:1,3
34:3,6 35:13,13
35:15 36:12 38:6
38:6 39:4,8,13,13
41:13 45:9,10,18
45:24 47:6,15,16
50:5,8,18 54:17
80:16,25 90:18
97:6
**erin** 59:16
**error** 55:13
**errors** 54:2
**esq** 2:12
**essence** 23:22
**essential** 81:24
**essentially** 28:21
57:19
**establish** 24:7
54:25 82:4,18,19
86:13 87:23 92:14
93:21 95:1
**established** 81:14
82:2 93:19
**estate** 2:14 16:24
50:9 75:15 114:10
**estopped** 31:12
**estoppel** 30:21
51:18 52:1
**et** 1:14,23 2:7,18
3:6 9:4 71:9
**eugene** 6:17
**evaluate** 22:21
**evaluation** 81:24
**event** 13:12
114:22 115:21

118:7
**everybody** 84:14
**evidence** 13:21
52:17 72:17,20
75:20 77:11 79:16
82:10 83:1,17
94:18
**exact** 15:18
**exactly** 21:25
25:25 26:1,7 28:6
29:14 30:16 43:6
64:10 70:12 87:19
88:5
**example** 86:24
94:25
**exams** 19:2
**excess** 85:3,5
**exchanged** 103:12
**excluded** 66:8
67:12 68:4
**excuse** 25:19 82:9
83:24 105:4
**exds** 27:12 28:19
29:5 44:16,20
46:19
**executives** 59:19
**exercises** 29:20
**exhibit** 26:14,14
26:15 57:9,10,17
57:18 89:18
**exist** 43:12
**exists** 86:14 94:6
104:1
**exited** 110:21
**exodus** 44:16,17
**exorable** 15:12
**expect** 59:19
108:6
**expectation** 16:22
18:5
**expedited** 7:14,19
**expeditious**
109:15,16

**expeditiously**
32:13
**expenses** 4:4,9,14
4:20 5:4,9,15,20
6:14
**expert** 36:25 37:1
65:7
**experts** 73:14
**explain** 98:19
99:8,14
**express** 113:6
**expressing** 109:23
**expunged** 47:7
**extend** 105:1
**extended** 21:22
52:22
**extending** 21:18
**extensively** 99:21
**extent** 29:1 103:8
111:6
**extraneous** 70:15
**extraterritoriality**
12:7 40:3
**extreme** 86:23

**f**

**f** 3:21 6:17 126:1
**face** 23:12,13
27:10 85:11
**facets** 71:3
**fact** 12:15 13:13
18:24 29:7 30:24
31:1,2 33:20
36:18 44:10 46:13
47:8,25 50:2
64:25 66:15 72:15
73:5,23 84:20
96:4 97:1
**facts** 44:5 51:20
55:5,9,12 58:9
**factual** 23:1 30:3
31:14 38:1,9,13
43:12,12 51:25
52:2 62:9 64:22

65:4 71:6 72:11
73:16 74:2,3 75:1
100:1
**fair** 11:13 28:4
53:18 113:22
**fairfield** 3:3,6
105:16,20,22
106:2,9 107:2
**faith** 15:13 114:19
120:25 121:2
122:12
**fall** 95:23
**false** 47:13 88:7
96:7
**familiar** 12:9
13:24 74:7 120:18
**favor** 13:13
**february** 19:8
71:19 75:20 77:10
78:4,9,12 79:17
**federal** 34:7 40:10
51:11
**fee** 11:8,10 12:1,4
14:8 17:9 18:6
105:25 113:17
115:4,5 117:14
118:10,13 119:22
123:1
**feeder** 17:16
**fees** 105:10,12,13
105:20 106:5,7,13
107:5,10,14,23
108:3 110:1
113:23 114:1
115:7,7,10 118:12
118:19,21 119:25
120:12,16 121:4
121:21 122:19
123:24
**fg** 114:23 115:1
**fictitious** 31:10
39:8,14 44:12
50:5 54:17 86:10

115:8
**fiduciary** 100:14
100:20 101:11
118:15 120:4
**fifth** 10:17 16:11
**fighting** 60:20
96:21
**figure** 72:3 109:9
**file** 21:24 34:15
55:2,4,20 61:6
62:22 63:19 80:14
80:15 81:7 82:5
82:11,23 83:14
84:22,24 85:13
86:3,5,7,14,18,21
86:24 87:2 88:19
91:7,15 92:4,5
93:1,20 94:21,23
95:22 96:13 97:4
97:14 98:1 104:25
112:11,13,14
121:14 122:3
**filed** 14:21 19:7
20:8 24:5,11,11
25:8 28:23 33:6
35:6,14 45:25
46:4 48:3,11 49:1
53:20 56:8 57:18
61:2,5,16 62:3,24
63:2 69:23 77:6
105:16 121:12
**filing** 23:9 34:19
44:24 63:2 122:23
**filled** 88:3
**fills** 89:1
**final** 26:24 27:6
28:1 32:6,9 33:7
45:9 103:10
**finally** 37:23
**finances** 86:25
**financial** 81:13,15
84:1,4,8 87:2 88:4
89:1,2 91:10

93:11,14 94:1,11
94:16 96:18 97:9
97:11,20,25
**find** 13:13 58:3
94:18
**finding** 58:19
59:12
**finds** 50:15
**fine** 46:9 55:3
114:6
**finish** 38:21 40:17
42:9 51:10 64:21
**fire** 111:5 112:10
**firm** 7:2
**first** 11:8 18:18,25
22:19 23:6 34:18
37:13 44:16 54:1
54:14 81:11 82:10
92:14 97:1 98:17
99:1 111:25
114:18 124:7
**fishing** 86:15
**five** 41:14 102:21
**fix** 54:3
**fixed** 98:8
**flat** 47:12
**fluctuate** 27:15
**flynn** 43:18
**focus** 16:10 64:4
**follow** 14:3 47:22
122:15
**followed** 85:20
**following** 63:21
**force** 98:1
**foregoing** 126:3
**foreign** 12:4
**forensic** 59:24
**forever** 98:8
**forewarn** 11:22
**forgetting** 33:7
**formally** 34:9
**former** 18:13
59:19

**formerly** 4:12
**forth** 87:12
**forward** 19:17
21:8 46:14 51:1
52:17 70:19 71:15
75:19 77:12 78:11
78:12 79:15
103:24,25 105:7
112:19 115:22,25
116:15 124:10
**found** 25:22 28:21
81:7 94:3
**foundation** 87:12
**four** 22:18 99:16
120:9
**france** 13:18
**frank** 59:15
**frankly** 27:8
76:20 85:4
**fraud** 41:3,5,7
88:8 94:25 115:9
**fraudulent** 24:16
34:2 36:8 39:14
39:17 46:15 47:2
50:10,18 92:22
101:9 120:3,18
**friend** 117:15
**front** 107:17,17
118:9,18,22
**frustrated** 39:24
104:20
**frustrating** 39:1
**full** 14:25 54:2
**fully** 15:4,5 16:23
**fund** 29:1
**fundamental** 24:7
39:5 56:23
**funds** 17:16 73:24
107:2
**further** 15:14
17:4 26:13 68:6
85:20 88:6

**furthermore**
50:15 96:13
**futility** 111:21

**g**

**g** 11:1
**gains** 95:18
**game** 33:15
**gamesmanship**
27:11 40:17 42:13
42:17
**gee** 110:13
**general** 16:24
43:18 51:8,11
**generally** 93:13
**generate** 95:18
**germane** 46:21,22
**getting** 14:22
86:24 90:21 100:4
103:25 105:4
109:18
**give** 13:21 15:22
19:6 27:21 36:9
42:9 53:14 58:12
69:21,23 99:4
105:14 114:23
**given** 21:15 67:19
100:17 112:4
122:20
**giving** 27:23
**glad** 113:13
**global** 102:7
**gmbh** 5:7
**go** 11:7 12:11
15:18 16:14,16
20:7 23:25 27:17
30:3 33:2 38:21
38:25 40:2 42:13
42:15 44:19 46:13
56:11 63:16 66:13
70:19 71:15 72:14
75:19 77:12 78:12
79:15 81:3 83:15
86:24 92:4 103:24

111:25 117:8
119:6,6,11
**goes** 44:10 66:1
85:12 103:11
107:3
**going** 17:23 18:5
19:13 20:17 23:19
28:10 30:16 31:18
32:24 41:15 45:3
47:22 52:23 53:1
53:23 54:18 55:14
55:17 59:1,23
60:18 62:5,5,16
65:6,9,9 66:19
68:10,11 69:14
70:16,19,22 71:21
71:24 72:17,21
73:13 76:11 77:22
78:11,13,14 79:7
90:15 95:9 103:25
105:3 107:24
108:2 110:2 111:4
111:13 112:5,11
112:13,25 113:1,1
113:2,11,25
114:15,16 116:22
117:23,24 118:1
118:23 119:23
120:6,9,11,17
121:1,12,20,22
122:11,12
**gonzalez** 28:20
**good** 11:4 14:15
14:16 15:13 20:2
43:25 66:11 80:7
80:11 87:7,8
114:19 120:25
121:2 122:12
**govern** 120:16
**governs** 29:19
106:14,17
**grace** 10:20 80:11

**graf** 5:6
**grant** 19:21 54:20
**granted** 22:12
  49:18 56:1 125:7
**granting** 7:17,22
**great** 25:10 53:21
  71:12 74:9
**green** 3:11
**greenwich** 3:6
  105:16,21,22
  106:2
**group** 3:6 100:7
**guess** 27:14 29:24
  30:17 51:16,20
  59:24 70:20 75:21
  75:22 77:6,16
  99:13 101:13
  120:2
**guilty** 94:25
**guys** 44:7 109:9

**h**

**h** 1:19 2:3,12 9:19
  9:25
**hadn't** 63:9
**half** 12:13 15:4
  60:20
**hands** 67:2 84:18
**happen** 27:16
  109:23 112:25
  123:23
**happened** 103:6
**happening** 12:10
  14:2 68:9
**happy** 19:4,5
**hard** 16:7 85:8
  91:12 94:15,22
  114:19
**harm** 93:19,21
  94:1
**harmed** 93:20
**haven't** 93:8
  97:13

**he'll** 111:16,17
**health** 71:25
**hear** 11:10 14:5
  50:24 66:9 77:12
  79:5 87:4 96:8
  98:13 104:16
  111:1,15 113:16
**heard** 17:9 19:20
  45:1 79:4 122:2
**hearing** 4:1,6,11
  4:17 5:1,6,12,17
  6:1,6,11,17,22 7:1
  7:6,11,14,19 8:1,1
  8:5,7 39:2 67:21
  79:25,25
**hearings** 27:13
**heavily** 12:25
**held** 16:9 73:24
**helen** 10:6 56:12
**helene** 72:14
**help** 87:15
**here's** 59:25
**he's** 59:23,23
  84:23 88:15,25
  96:20,22
**higgs** 4:11,12
**hine** 25:19,20
**historical** 22:19
**history** 25:13
  114:24
**hoffstetler** 16:10
**hold** 41:20,20
  111:5
**holding** 41:11
  72:16 102:4
  103:18
**home** 80:16,25
  90:18 97:6
**hon** 3:22
**honor** 11:4,6,25
  12:9,11,13,22
  13:2,24 14:5,14
  14:15 15:14,17

16:20 17:5,10
18:8,11,19 19:3,5
19:16,24,25 20:12
20:12,19 21:1,8
21:14 22:3,9,11
22:12,17 24:1
25:12,24 26:6,13
27:5,15,21 28:1
28:15 29:12 30:9
30:17 31:9,19
32:12,18 33:14
36:17 41:16,24
42:1,8 46:18
47:10,24 48:4,18
49:8,22 50:20,21
51:9,23 52:13
53:11,19 54:25
55:15,19 56:4,7
56:13,23 57:9
58:10 59:6,25
62:18,25 63:24
64:5,17,23 66:11
68:16 69:6,17,21
70:11,22 79:18
80:5,7,11 81:2
83:14 86:12 87:7
90:22 92:11,17
98:5,14 99:1,3
101:25 103:2
104:19 105:6
107:17 108:5,13
109:11,22 110:17
111:9,20 112:18
113:12 114:22
115:15,18,23
117:4,15 118:2,7
118:9,17,23 121:9
122:15 123:19
124:8,11,13
**honor's** 14:3
28:11 50:3,4
107:23 119:3

**hope** 14:9 96:23
**hopefully** 13:2
**hostetler** 4:2 9:10
**hours** 15:18
**housekeeping**
  52:19
**hsbc** 13:4,13
  101:7
**humor** 105:14
**hunt** 9:16 57:8,12
  57:16,18,23 58:1
  58:10,12,14,21
  59:3,6 64:19
  66:11,11,21,24
  67:7,10,12,15,17
  67:20,23 68:3,9
  68:21,24 70:11,17
  75:7,24 76:2,7,9
  76:16,21 77:1,3
  77:15,19,24 78:4
  78:7 79:13,18,23
  80:5
**hyde** 8:25 126:3,8
**hypothetical**
  111:2 114:13
  121:11,14 123:25
  124:1

**i**

**identical** 62:10
  100:7,8
**identified** 61:7
  62:4
**identity** 58:21
  60:11
**ignore** 29:17
**images** 29:13
**imagine** 80:19
  85:8
**impact** 87:3
**impacts** 56:14
**implicate** 23:3
  35:6 45:2 83:23

implicated 52:21
83:8
implicates 28:2
implications 23:2
30:3
implied 113:6
implying 88:1
important 19:17
22:20 23:7 25:17
31:20
imposed 54:4
improper 27:13
inaccuracies
46:19
inappropriate
50:14
inasmuch 83:24
83:24
incapacitated
71:24
incarcerated
18:13
inception 64:11
inclination 51:6
inclined 56:7
79:10 98:1
include 48:6
97:19 114:8
included 60:7
61:20 97:8 116:17
including 107:2
116:16
incorporated 60:4
incurred 4:4,9,14
4:20 5:4,9,15,20
6:14
indemnification
115:3,21 116:16
116:20 117:1,2
indicate 82:10,11
85:8,17,19
indicates 55:13

indicating 61:18
indiscernible
14:10 18:13 20:4
20:22 21:11 24:2
24:2,14 25:20,22
28:5 34:24 36:25
37:1 45:19 57:19
58:14 76:8 78:7
80:24 81:5,13
94:13 95:21,25
96:12 99:4 101:5
101:12 102:8,12
109:13 112:18
114:20 115:16
116:17 117:19
119:2,14
individual 75:15
individuals 81:14
102:7 109:17
inextricably
25:15 27:4 29:9
information 13:21
59:17 60:6 81:13
81:15,19 83:12
84:1,4 91:17
92:13 93:11,13,14
94:1,7,11,15,16
96:19,23 97:10,11
97:21 106:22
initial 56:16,25
57:5,20,21 58:6
58:21,22 60:6
61:4,6,18 73:20
121:3
initially 19:4
injunction 116:2
ins 38:7
insisted 77:5
insolvency 109:3
insurance 15:1
intend 56:20
99:23 108:15

intended 55:19
inter 52:9
interest 81:24
82:1 83:5,7,23
84:1 93:3,9,16
94:4,6 96:22
interested 66:3
interesting 13:3
13:15
interests 93:8
96:23
interim 4:2,7,13
4:19 5:2,8,13,19
6:3,7,12,18,24 7:3
7:7
interrogatories
67:1,5 68:15 69:8
69:15
interrupt 34:12
interrupting
38:23
intertwined 25:16
27:4 29:10 98:12
98:19
intervene 101:14
intimately 12:9
34:3
introduce 32:25
inverse 45:24
investment 1:14
1:20 2:4,14 44:12
89:22 120:8
investor 1:11 9:21
14:18
invitation 37:14
40:18 49:11
invoke 28:25
invoked 47:3
invokes 24:23
involve 35:1 46:23
46:24 71:12 83:16
involved 12:25
79:5 81:22 82:3

97:25 113:23
ira 73:15,24,25,25
74:2
ira's 79:4
ireland 13:4,7,7,8
13:9,12
irrelevant 81:19
81:21 91:11 92:8
irving 1:19 2:3,12
12:3
isn't 58:24 76:12
76:15 82:14
israel 14:1,4
issue 22:13 31:14
41:9 68:2 70:19
71:25 73:2,8
74:13,15,16,18,25
75:1 76:12,15
79:8,9,9,25 81:23
83:3,20 87:11
96:25 99:14 101:3
102:1,4 105:9,10
107:12,20 109:10
109:22 110:9
112:13 113:21
114:3 115:12
117:2 118:9,10,10
118:13,23 119:4
120:24 121:1,6
122:12,16 123:4
124:6
issued 80:8,13
87:13
issues 23:17 31:15
36:2 38:5 40:2,4,5
42:15 43:12 47:15
54:22 56:3 57:1
62:9 64:22 65:2
71:6,11,12,16,19
72:11,11 73:11,12
73:16 74:1,3
75:10,11,22 76:24
79:2,3 81:22

97:25 98:22
101:10,13 103:7
112:14 115:14,17
115:18 122:12
**it'll** 13:2
**item** 97:21
**items** 30:22
**it'll** 54:19
**it's** 53:23 54:2,6
56:5,22 57:9,19
58:6,7 59:3,10
60:15 63:23 64:3
64:4,10,16,17
66:12 68:16 69:5
69:19 70:16 72:21
73:10,22 74:2,6,6
74:6 75:1 76:12
76:15 77:9,22
78:11,12 81:7,13
82:3,16,16 83:19
83:21,22 84:10
85:7 86:2,5,13,14
88:5,14,17 89:17
89:20 91:12 93:4
93:5,12,12 94:2
94:15,22 95:8
97:20
**i'd** 53:19 54:7
55:1 78:4 79:10
**i'll** 58:12 77:12
78:25 79:2,24
87:11 95:23
**i'm** 53:22,23
54:18 55:14 58:18
59:12 63:21 65:5
65:5,17 66:3
68:10,11 70:21
72:1,5 74:2,7,15
75:7 76:11,25
77:22 78:5,14
79:25,25 83:21
86:4 95:21 97:25

**i've** 54:12,14,18
71:25 78:14 79:4

**j**

**j** 9:17 10:25
**jacobson** 6:11
12:21
**january** 22:1,2
71:22 76:18
**joann** 7:12
**jodi** 95:11
**johnson** 4:11,12
**join** 45:5
**joinder** 34:8,9,9
44:8
**joined** 46:10
107:12
**jointly** 101:24
110:12
**jp** 74:22 80:13
81:4 84:16 87:13
87:17,22 88:7,21
91:4,25 92:4
**judge** 3:23 15:9
25:20,22 27:7,10
28:20 35:11 40:1
40:20 41:8,8,11
41:12,15,21 50:2
50:12,14 54:8
58:3,18 60:3,23
61:14 63:4,13,14
63:17 64:7 65:14
66:2,7 67:9,17,21
70:3 73:2 113:24
114:2
**judgement** 108:16
**judgment** 13:25
31:18,25 32:9,13
35:23 43:10 51:4
52:3 94:18 99:18
105:18,19 106:1
106:12 107:4
108:10,11 114:8
119:11 121:21

123:4
**judicata** 23:2
31:12 51:18
**judicate** 52:1
**july** 4:4,9,15,21
5:4,10,15,21 6:4,9
6:15,20,25 7:4,9
88:21
**jumping** 123:17
**june** 24:10 69:9
69:12 71:14 75:23
85:2 89:13 92:12
**jurisdiction** 22:21
22:23 23:10,16
24:6 25:7 27:15
28:8,14,22,25
29:20 31:17,21
32:3 33:6,8 34:14
34:20 40:23 42:14
51:5,7,11,14,15
51:17 53:4
**jurisdictions**
13:19
**jury** 29:4 30:4
31:14 40:19 41:1
42:13 46:25 68:5
77:5

**k**

**k** 9:22
**kazanoff** 102:3
104:19,19,23
105:6,9,13,24
106:6,9,16,18,20
107:8,11,16,20
108:1,5,13,18
109:8,10,16
110:16,19 111:8
111:20,23 112:2
112:17,25 113:12
113:15,20 114:22
117:17,18,19,20
117:20 119:10,17
119:18,21 120:1,5

120:21 121:5,8,15
122:14,25 123:5,8
123:10,12,14,18
123:21 124:1,8
**kazowitz** 117:15
117:18
**kazowitz's** 117:19
**keep** 37:25 38:23
50:13
**keeps** 47:5
**kelley** 10:23
**kevin** 9:25 14:17
**kind** 33:14 42:23
75:17 99:4
**kingate** 12:19
115:13 121:7
**kirby** 40:11
**knee** 71:22 77:22
**knew** 43:18 45:12
82:25 83:1 89:6
96:5
**know** 11:20 15:17
17:14,16 18:15
19:9,12 24:4
25:25 29:25 30:21
31:9 32:24 34:10
34:17 36:7,11,11
36:17,24 37:4,5
39:18 43:5 45:20
48:8 49:24 51:24
52:4,16,18 54:12
55:17 56:14 58:3
58:18 64:19,22
65:2,5,7,19 66:21
69:22 70:3,7,9
73:13 77:4,20
79:6 80:21 82:13
83:8,10,10 84:7
86:9 88:11 89:4
90:16,23,25 91:3
91:5,12,16 92:23
93:11,13 98:20,23
100:18 101:11,18

103:12,13 109:5
110:12,12 111:6
111:17,18 112:12
113:8,10 114:9
117:3,8,15,24,24
120:3,23 121:12
121:22,23 122:8
**knowledge** 57:1,3
58:9,17 60:12
73:18 85:10 88:8
94:19 121:2
122:12
**knows** 12:22 13:2
48:4 84:14 111:16
111:17 115:23
123:19,20
**krugel** 94:24 95:3
95:5
**kryzowki's** 113:1
**kryzowski** 98:14
98:14,18,21,25
99:3,7 100:7,12
100:15,17 101:1,6
101:16,22,25
102:10,14,17,23
103:2,22 104:4,6
104:10 124:11

**l**

**l** 1:14,19 2:3,13,14
6:14 7:16,21
74:21,23
**l.p.** 1:23
**l0-05383** 2:10
**lack** 22:24 106:9
**lacked** 121:2
**laid** 41:2 63:23
64:3,5,16 68:16
69:5,19
**lane** 4:18
**langenkamp**
24:24 25:10 29:5
**language** 20:10,11
50:5

**large** 15:8
**largely** 100:1
**lastly** 13:23 22:25
**late** 71:22
**law** 7:1 22:20
24:24 25:11,13
28:14 29:4,19
30:5 34:7,18
39:21 40:4,10
42:14,16 46:20
48:18 56:24 73:21
73:23 100:19,21
100:23 106:17,18
106:20 120:7,10
**lawrence** 40:21
42:3 56:10,13
57:23 58:23 60:2
60:8 71:25 72:6
72:14 74:20 75:19
75:24 77:10 78:2
78:9 79:16
**lawsuit** 13:23
23:20
**lawyer** 117:19
**lax** 10:15
**laxneville** 80:12
**lay** 43:8 66:1
**lead** 25:21
**lease** 80:20 83:11
**led** 22:12
**ledanski** 8:25
126:3,8
**left** 23:3 31:14
38:7,8 44:22
111:7,9
**legal** 22:13 28:17
30:9 31:15 75:1
126:20
**legitimate** 34:6
73:4 94:3
**lengths** 25:10
**lens** 29:17

**letter** 20:8 31:8
46:5 57:11 78:15
85:1,17 86:9
87:25 88:20 112:9
**letterhead** 89:20
**letters** 21:18
**let's** 54:18 55:2,11
66:14 70:18,19,24
71:1
**level** 112:21
**liabilities** 93:11
**liability** 25:23
26:21,25 29:10
50:9,19 107:9
**lied** 41:15
**life** 26:18,19
**lifland** 15:9 35:11
**lift** 108:21
**light** 40:20 96:4
97:24
**limbo** 110:23
**limited** 3:3 96:10
97:2 107:2
**line** 64:6 80:16,25
90:18 125:4
**link** 1:6 82:5
**linked** 82:19
**liquidation** 1:19
2:3,13 3:3 14:19
106:2
**liquidator** 99:14
104:12 105:15,19
106:4 107:12,22
108:19 110:1
115:22,24 116:11
117:1 119:2,5
122:18,20,23
124:2
**liquidator's**
106:11 113:16
121:18
**list** 55:6,7

**listed** 85:5
**listen** 78:22
110:16
**lists** 26:15,16
**litigate** 23:19
107:13,16 114:15
114:16 117:25
118:8
**litigated** 47:8
118:9
**litigating** 110:24
**litigation** 13:22
47:17 116:17
118:22 123:7
**litigations** 14:5
**little** 13:11 85:8
88:15 100:16
105:4 114:23
124:4
**live** 27:19 35:19
35:25 45:23 46:9
46:9
**llc** 1:14,20 2:4,14
74:24
**llp** 4:2,18 5:18
6:11,23 9:10 10:1
10:8
**loan** 80:14,15,21
80:22 81:7 82:5
82:11 83:16,16
84:22,24 85:21
86:2,5,7,11 87:2
87:14,15 88:5,15
88:25 90:21 91:7
91:15 92:4,5 93:1
93:20 94:23 95:2
97:4,6,14 98:1
**loans** 83:22 97:5
**located** 92:5
**long** 11:11 15:15
16:20 40:22 73:24
79:7 89:22,23
114:6 118:5

[longer - morgan]                                                                 Page 17

**longer**  28:13
  113:11
**look**  16:10 28:16
  28:18 29:16 43:12
  53:23 54:1 65:4
  68:10 78:8 82:13
  85:4 86:9,18,21
  86:24 90:4,6
  97:12 98:6 103:22
  106:24 112:4
  123:9 124:9
**looked**  21:21
  28:20 104:6
  106:21
**looking**  34:18
  59:8 123:21
**looks**  37:3 57:25
  118:17
**lose**  110:25
  114:11
**losers**  17:17 50:8
**losses**  95:18
**lost**  110:16 112:22
  112:23
**lot**  12:21 13:25
  28:15 31:9 34:12
  36:23 55:24 65:8
  86:19 91:9,10
  99:22 101:9,9
  103:9,12 112:12
  116:15
**lower**  15:11
**lp**  9:4

**m**

**m**  3:22
**madoff**  1:14,20
  2:4,13,15 11:3
  20:22 65:1 72:16
  73:1 74:11,21,23
  84:14 89:20 115:9
**madoff's**  72:23
  75:15

**magic**  93:7
**magistrate**  60:3
  60:23 63:4,14,17
**magnify**  13:23
  14:6
**main**  38:5
**maintain**  64:8
  86:6
**majority**  102:2
**making**  14:2
  64:11 68:6
**management**  60:1
  63:7 64:14 115:3
  115:7 120:8
**managerial**  59:17
**mandatory**  57:15
  60:10,13 61:2
  65:12
**mann**  35:12,12
**manner**  31:3
  48:15 78:16
**manns**  22:10 23:5
  25:19 37:11
**march**  66:22 69:9
**marek**  98:14
**margin**  89:25
**marshall**  25:6
  47:11
**marx**  4:18
**mary**  10:20 80:11
**material**  87:3
**math**  26:17 29:14
**matter**  1:5 18:11
  21:10,14 28:9
  32:2 37:21 39:20
  40:4 43:1 48:18
  51:14,15,16 52:20
  53:2 55:6 56:7
  58:23 78:3,9 86:8
  94:21 95:19 98:12
  115:22 120:11
**matters**  11:8
  31:11

**matthews**  93:23
**mean**  24:1 27:14
  27:17,18 28:4
  29:11,17 30:20
  36:24 43:13 49:22
  57:14 69:13 70:12
  70:14 73:13 76:16
  97:10,23 101:20
  104:17 108:22
**meaning**  118:17
**means**  77:24
**meant**  18:23 83:2
**medical**  75:20
  77:11 79:16
**medically**  78:12
**meet**  54:3 93:6
**memorandum**
  32:20
**memory**  64:17
**mention**  12:18
**mentioned**  24:1
  51:7
**merely**  47:24
**merits**  85:12
**mess**  54:2,6
**met**  24:15 34:8
  92:20
**method**  50:16
**mid**  22:1,2
**million**  15:4 84:10
  85:3,7 88:17,17
  89:7,14,16,25
  90:5,7 113:24
  115:6 118:19
**millions**  61:9
  116:18,18,18,19
**mind**  76:9,13
**mine**  66:8
**mineola**  126:23
**mini**  77:1
**minute**  121:1
**minutes**  15:21
  16:2

**mirror**  20:23
**mirrored**  29:13
**miscalculated**
  45:17
**misquoted**  41:7
  50:2
**misrepresentation**
  47:12
**missing**  70:10
**mist**  116:21 117:1
**mittendorf**  4:18
**modified**  20:24,25
**mohan**  10:24
**moldy**  105:5
**molton**  102:13,17
  113:24 114:2,13
  114:18 115:1,14
  115:17,21 116:4,7
  116:10,14 117:3,7
  117:11,13,18,20
  118:1,5,7 119:1,9
  119:14 123:17,19
  124:13
**molton's**  102:19
**moment**  16:23
**money**  12:16
  14:22 15:5 31:11
  34:5 45:24,25
  71:8 103:21
  105:25 120:25
**monies**  73:25
  106:1
**monitoring**  13:15
**month**  13:2 14:20
**months**  48:1
  66:24 78:18
  122:16
**months'**  77:19
**morgan**  74:22
  80:13 81:4 84:16
  87:13,17,22 88:7
  88:21 91:5,25
  92:4

**morning** 11:4
12:9 14:15,16
15:14 20:2 66:11
80:7,11 87:7,8
116:21 117:1
**mortgage** 83:16
**moss** 60:3,23 63:4
63:14,17 66:7
67:9,17,21
**moss'** 64:8 66:2
**motion** 7:11,14,15
7:17,19,20,22 8:5
13:25 14:1,21
18:12,21 19:20,22
21:15,16 22:10
31:18 35:22 37:19
43:10 45:22 49:16
51:4,6,17 52:2,21
52:21 54:20 55:4
55:25,25 57:10,12
60:24,25 61:16,19
70:8,15,16 80:8
81:12 93:5 109:4
112:3,11,11,13
113:11 114:21
121:14 122:3,4,4
124:5 125:6
**motions** 56:8 63:1
63:2,3 111:6
124:10
**motivations** 82:6
**move** 15:7,12
19:17 31:24 32:13
42:16 51:1 71:18
78:2 81:16 98:7,9
98:10 99:24
104:18,22 105:7
109:19 111:4
112:8,19 113:2
**moved** 49:18
**movie** 44:17
**moving** 13:1 21:8
43:13 104:25

**n**

**n** 9:1 11:1 125:1
126:1
**n.w.** 9:22
**name** 12:1 44:21
74:21,23
**named** 58:25
104:13
**narrative** 82:21
82:23
**nathaniel** 10:23
**nature** 94:7
**nauseum** 39:2
**necessarily** 69:22
120:16 121:16
**necessary** 4:3,20
5:20 6:14 53:14
53:24
**need** 39:21 48:19
54:3 62:11,13,13
62:18 70:7 86:20
86:22 108:10
112:20
**needed** 37:16,17
**negative** 27:1
36:12
**negotiate** 103:7
**nelson** 2:7 40:21
60:3,8 70:20,20
71:21 73:16 76:22
77:21,25 79:1
**nelsons** 56:13
71:21 74:20 79:10
**nelsons'** 72:21
**net** 25:24 26:14
26:18,22 27:1,23
29:2 31:1,3 34:3,6
35:12,13,15 36:12
38:6,6 39:4,8,12
41:13 45:9,10,18
45:24 47:5,14,16
50:5,7,8,8,9,17
54:17 89:11

**netting** 26:18,19
50:15
**never** 33:11 58:6
61:5 62:14 68:17
77:6 107:20
110:15
**neville** 9:8 10:15
22:2,6 23:5 24:4
26:8 32:22,22,25
33:3,3,11,14,18
33:23 34:1,11,17
34:22 35:1,4,8,10
35:18,20,24 36:1
36:3,11,17,23
37:4,9,11,13,16
37:19,21,23 38:3
38:11,15,20,22,24
39:1,16,22,24
40:6,13,16,25
41:2,7,23,25 42:2
42:12,19,21 43:1
43:5,15,18,22,24
44:1,3,18,20,23
45:2,12,14,20,24
46:3,8,13 47:5
49:10,21 50:22
51:9 53:19,25
54:6,13
**new** 1:2 3:12 9:6
9:13 10:4,11,18
29:10 39:13 61:9
61:16,21 62:4,4,5
90:24 106:16,18
106:20 109:7,18
**nicholas** 9:15 11:4
**nick** 9:18 87:10
**nine** 101:15,17
111:3
**nobody's** 51:7
**nordman** 5:1
**normally** 84:9
109:2

**nos** 8:2
**nose** 13:11
**note** 12:12 19:22
88:15 89:18
**notice** 23:11
**noticed** 17:13
18:21 94:24
**notion** 65:18
**notwithstanding**
65:19 66:15 79:4
**november** 24:11
**number** 12:3
15:13 19:2 23:25
46:19 54:7 111:8
**numbers** 15:9
37:2
**numerous** 28:19
**nuts** 40:17
**ny** 3:12 9:6,13
10:4,11,18 126:23

**o**

**o** 3:21 11:1 126:1
**object** 19:21
47:21 48:14 81:18
113:4,7 115:25
**objected** 68:24
81:5 115:22
**objection** 14:8
20:6 21:4 22:14
30:6 33:19,22
34:14 35:13 47:17
48:21,23 49:1,20
**objections** 18:16
22:11,25 50:23
**obligations** 39:19
**obstacle** 104:1
**obviously** 78:13
81:5,11 82:3
103:14
**occurred** 48:9
52:4 56:14 79:22
**occurring** 13:3

occurs 51:13
55:18 112:8
officemate 94:24
oh 11:10 13:8
20:1 43:15 52:6
59:14 68:23 76:23
95:13 101:6
106:19
okay 11:12,20,25
15:23 17:25 19:15
21:7,9 22:8 25:2
28:9 29:21 32:14
33:13 35:3,9,10
36:1 37:7,22
40:15 42:11 43:23
46:12 53:16 54:5
55:14 56:5,9,18
59:21,22 61:5
62:8 64:3 66:14
66:23 67:11,14
68:8 69:8,25
70:21,25 71:2,23
72:4,7,9,25 73:15
74:12,25 75:4
78:8 79:20,23
80:4,6 81:3,6,6
84:3 92:9 93:2
96:8 99:2,3
101:14 102:20
106:8,19 113:25
116:9 117:12
118:3 120:8
123:11 124:7
old 126:21
omnibus 61:16
77:3 112:14
once 34:15 36:20
45:12,25 48:3
82:1 99:22 101:3
103:11 108:14
110:3
one's 98:8

ones 46:3
ongoing 47:17
op 80:19
open 18:21,25
19:7,10 63:5,12
64:8 66:18
opened 76:2,3,4
76:14
operated 72:7,8
operates 48:18
operator 84:15
opinion 13:25
14:3 121:9
oppose 109:19
116:10
opposed 32:9
opposing 116:11
opposition 19:22
21:24 122:1
option 36:3
oral 22:10 55:25
125:6
order 8:1 11:7
14:11 16:25 18:7
19:23 20:10,15,18
20:23 23:8 30:7
30:19 32:9 35:11
36:15 47:6,6
50:25 51:21 52:20
52:23,24 53:1,12
54:2,19,19 55:21
55:25 56:6 60:1,4
66:2,6,7,8 68:6
79:22 87:23 92:11
92:12,13,16 98:2
98:3 103:15 109:5
119:3
orders 12:23
15:13 20:24,25
21:1,2,5 48:5
50:22 52:25 55:24
60:3 63:7,14 64:8
64:8,14 67:17

orica 13:10
original 59:4
originally 90:15
originals 59:7
originated 97:17
orseck 6:23
ought 28:16
outs 38:7
outset 48:3
outside 88:14
outweighs 83:5
93:18
overall 14:7
overarching 73:2
overlap 120:5
overseas 12:23
owe 34:5 105:20
owed 106:1,13
120:12
owned 64:25
74:10 83:8

**p**

p 9:1,1 11:1
pacard 12:3
pace 15:12 104:20
packet 67:18
page 59:11 65:25
68:19 93:24 125:4
pages 57:16 66:1
paid 14:25 15:4,5
31:10 74:1 83:17
97:6 118:20
papers 24:1 28:4
41:25 53:17 63:23
64:4,5,16 88:11
paragraph 16:11
16:15 59:6,11
pardon 44:18
park 10:3
part 23:21 24:18
33:9,11 41:4,5,11
45:4 49:2 65:12
67:18 71:5 74:12

86:2,5 92:1 122:4
partial 35:22
participate 13:20
19:2 29:1 67:3
participated
25:19 92:21
particular 14:10
16:23 74:13 87:1
94:21 97:14 98:12
122:24
particularly 55:5
81:14
parties 20:4 22:12
51:22 53:3 76:22
76:24 81:14 112:5
partners 41:14
party 60:22 98:15
102:18 104:4
pass 112:7
path 51:1
patrick 10:24
pattern 94:23
95:15
pay 17:17
paying 83:22
payments 97:8
pendency 21:15
pending 7:16,21
11:12 12:13 24:13
25:18 40:22 48:5
52:21 107:22
111:3
people 37:6 40:7
48:8 56:20,25
58:8,16,25 61:7
62:4 77:5 91:11
95:13 118:12
people's 31:11
percent 16:12,14
16:16 17:15,19,20
17:23 18:6 115:10
115:11

percentage 14:24
119:7
percentages 11:17
performance
115:7,10
performed 59:17
periods 96:25
120:12,13 121:23
perk 95:16
permit 111:19
perpetuated
54:10
person 77:23
personal 81:13,15
81:22 84:4 92:7
94:11,16
perspective
113:21
pervades 75:18
peter 104:19
phonetic 46:21
phrase 106:10
picard 1:19 2:3,12
100:6 110:3
118:17 120:8,21
120:22 121:19
124:2
picard's 110:3
121:17
pick 79:11
picked 79:13
pitkowitz 5:6
place 12:22 13:20
places 108:23
plain 55:24
plaintiff 1:12,21
2:5,16 3:4 75:14
102:19 104:13
plan 103:24
planning 11:20
played 33:15
plaza 9:12

pleaded 94:25
pleading 53:20
100:17 120:24
pleadings 99:18
please 11:2 118:3
pledge 80:20
90:15,17
pledging 90:21
pllc 7:2
plus 18:6 109:24
pm 124:16
podium 11:13
point 23:7 24:13
24:18 25:18 26:1
26:22 29:23,24
30:1,5,23 32:1,6,8
35:10,18 40:1
45:20 47:21 49:16
54:7 75:22 78:19
96:20 97:1 101:24
102:25 111:2,24
118:2 121:9
123:14
pointed 47:10
52:20
points 22:18 49:8
96:9
policy 40:9,10
ponzi 19:13 31:2
31:6 38:16 40:7,9
40:13 44:11 52:18
64:24 65:6 71:7
72:12 73:1,5,6,8
73:10 74:6,16
75:13 76:10,18,19
79:8 83:2 84:14
85:10
posed 97:24
position 13:5
32:19 110:2
113:16
possession 72:24

possibly 43:9
85:16
potential 16:18
120:5
practice 14:1
42:18,19,21 95:15
95:19 114:22
precisely 27:2,11
39:15
precluded 30:21
predicated 31:1
preference 11:6
24:16 46:24
prejudice 22:11
22:14,25 23:2
28:10 30:2,6,14
30:20 38:19 53:2
54:20 56:1 111:22
113:6 125:7
preliminary
42:15
premature 121:24
prepared 15:22
32:13 103:3,11,13
present 10:22
24:3
preserve 29:3
presumably 75:12
83:23
presumption 40:7
presumptions
43:7
pretend 67:4
pretrial 36:15
51:21 54:1
pretty 60:16
99:21
prevail 36:8
prevent 116:5
preventing 94:4
102:1
previously 61:10

prime 101:5,6
principal 50:17
principles 24:8
prior 49:17 68:25
86:14 88:2 95:24
97:8
privacy 81:22,24
82:1 83:5,7,20,23
84:1 93:3,7,8,15
94:4 96:22 97:25
private 81:15,18
83:12,12 92:8
93:13,14,25 96:23
96:23
privy 117:6,8
probably 14:5
40:1 65:12 79:3
88:3 89:2
problem 59:25
82:15,17 84:18
103:18
proc 8:2
procedural
114:23 116:14
123:22
procedure 49:23
115:23,25 116:3
procedures 30:7
proceed 32:16
108:21,23 113:8
proceeded 44:6
112:15
proceeding 13:15
14:19,20 21:11
24:5,20 33:6,9
35:6 38:14 39:12
41:13 44:9 46:10
46:11 47:20 48:12
48:16 49:3 51:12
61:16 77:3 99:11
99:11,12 105:17
106:3 107:22
108:20,25 109:7

110:22 121:18
122:24
**proceedings**
13:19,20 15:10
48:6 62:23 66:16
66:18 67:9,13
124:15 126:4
**process** 23:21
24:18 28:2 33:10
33:12 34:5 35:2,7
43:14 44:9 45:3,6
47:3 48:4 56:24
63:16
**produce** 65:21
92:5
**produced** 62:14
89:14 96:14,21
97:9
**production** 67:1
94:12
**productions** 97:8
**profits** 31:10 39:8
39:14 44:12 50:5
54:17 115:8
**progress** 103:9
**prohibits** 29:4
**proof** 23:9 24:15
25:8 27:20 28:7
28:23 99:18 115:1
115:2 120:23
**proper** 109:13,13
**property** 29:1
50:9
**proposal** 74:14
**propose** 77:21
92:10
**proposed** 19:4
36:15 122:5,6
**proposing** 31:16
73:7 75:21,23
121:10
**proprietary** 80:20
83:10

**prosecute** 108:16
114:12 124:3
**prosecuted** 45:21
101:24 108:20
**prosecuting**
122:24
**protection** 1:11
9:21 14:18
**protective** 92:11
92:12,13,15
**prove** 59:24 65:6
72:15 95:9 101:9
**proves** 121:2
**provide** 82:20
**provided** 91:3,25
**providers** 101:11
**provides** 30:25
**provisions** 20:22
20:25
**public** 40:9
**purchase** 71:8
**purposes** 34:20
39:14
**pursuant** 7:15,20
15:5,9 18:12 86:1
105:24 118:20
**pursue** 109:1,3
110:22,25 113:17
113:25 114:3
121:25
**pursued** 120:13
**pursuing** 45:16
**push** 19:8
**put** 20:21 23:10
26:16 30:17 42:23
49:25 71:14 72:6
82:21,23 106:2
111:10 112:22
**putting** 60:10
72:9 120:25

**q**

**quash** 8:5 80:8
81:12,16 93:5
**question** 17:11
18:16 25:4 32:23
34:25 42:23 43:4
51:5,25 52:2 72:9
73:20,23 75:18
77:9,13 85:13
101:13 114:5
117:4,5 119:17,20
119:24 122:15
**questioning** 95:21
**questions** 17:4
81:20
**quick** 42:7 49:8
**quickly** 46:18
96:9 112:19
**quite** 12:24 23:8
47:6 105:7
**quote** 26:1 54:8
**quoted** 47:13
**quotes** 47:14

**r**

**r** 3:21 9:1 11:1
126:1
**radically** 39:4
**raise** 27:2 31:13
41:18,21
**raised** 16:19 25:3
30:22 41:25 93:4
107:18,20
**raising** 122:8
**rakoff** 25:20,22
41:8,8,11,12 50:3
50:12,14
**rakoff's** 40:1
**rakoff's** 54:9
**ran** 12:24
**range** 17:19,20,23
**rates** 16:12,16
**ratified** 49:15

**rationale** 19:6
**reach** 102:5
**reached** 20:20,21
20:23
**read** 25:25 31:9
34:13 42:3 44:4
50:3 54:8 121:8
**reading** 124:10
**reads** 122:25,25
**ready** 11:19 67:24
68:5
**real** 44:21
**realize** 114:12
**really** 15:20 17:21
28:4 30:19 40:18
44:4,24 54:3 55:6
73:21 77:9,18
89:17 93:8 96:10
104:2 110:13
114:9
**reardon** 59:16
**reason** 19:14 27:8
40:8 48:9 71:20
108:17 111:18
**reasonable** 16:22
18:5
**reasons** 18:20
19:16 29:7 46:22
65:8 113:6
**recall** 61:15
**receive** 85:25
**received** 72:15
**receiving** 83:22
120:25
**rechtsanwalte** 5:7
**recognition** 109:4
**recognize** 64:15
**recognized** 27:21
**recommendation**
16:11,14,25 18:4
32:10
**record** 20:8 33:1
82:8 113:18 126:4

**records**  60:21,22
  62:14 65:10,11,16
  66:20
**recover**  77:23
**red**  23:2
**redact**  97:20
**redeemer**  116:7
**reducing**  15:12
**reduction**  16:12
  16:13
**refer**  53:20
**reference**  7:17,22
  21:16 94:13
**referenced**  89:24
**referring**  58:1
  74:8
**refers**  97:21
**reflect**  20:25
**reflected**  12:20
**refuse**  42:2,6
**refute**  41:19
**regard**  15:7 34:14
  53:3
**regarding**  16:8
  84:7 90:11 91:20
  97:16 117:6
**region**  93:23
**reimbursement**
  4:3,8,14,19 5:3,9
  5:14,20 6:13
**reinforces**  29:7
**rejected**  106:4
**relate**  39:17 84:5
**related**  34:3 60:5
  82:24 105:10
**relates**  39:16
  115:5
**relating**  36:21
  80:15 85:24 89:8
  97:16,19
**relationship**
  24:24

**relative**  86:23
**release**  94:4
  110:12
**relevance**  81:23
  82:3,4 83:4,6 87:3
  87:11
**relevancy**  92:15
  92:17 93:5,18
**relevant**  16:3 57:1
  58:9 82:19 85:14
  86:11,12 88:7
  97:14
**relief**  20:7 109:4
**rely**  42:2,6 56:20
  59:1,19 60:18
  62:5,5 65:9
**remaining**  99:20
**remains**  99:15
**remember**  39:9
  79:22 101:3
  115:16
**remotely**  85:10
**removed**  105:15
**rendered**  4:3,8,14
  4:19 5:3,8,14,19
  6:3,8,13,19,25 7:3
  7:8
**reopen**  64:8
**reported**  17:22
**reports**  36:25
  37:1
**represent**  81:7
  89:23
**representation**
  58:8 92:1 97:22
**representations**
  87:16,22 90:11
  91:20 96:2,7
  97:15
**represented**  89:5
  89:10
**representing**  12:2

**request**  20:9
  50:25 67:1 81:19
  81:21 92:4 97:25
  113:22
**requested**  15:16
  20:7 62:25 63:9
**requesting**  96:12
**requests**  62:22,24
  69:22,23
**require**  78:13
**required**  21:25
  56:19
**requirements**
  56:23 101:12
**requires**  24:14
  70:12
**res**  31:12 51:18
  52:1
**residential**  80:24
**resolution**  23:21
**resolve**  14:4 18:17
  23:22 47:15 49:2
  118:23
**resolved**  12:25
  36:2 47:9 48:7
  52:2 63:9 110:14
  110:15
**resolving**  48:5
**resources**  105:2
**respect**  23:17
  35:12 47:22 72:20
  74:5 107:5,23
  108:2 109:11
  112:5 113:16
  121:21
**respectfully**  14:10
  20:9 111:11
**respond**  51:19
  103:6 108:7,8
  111:12 112:5
**responded**  30:12
**responding**  56:24
  105:2

**response**  30:22
  55:20 57:12 66:2
**responses**  57:14
  69:24
**responsive**  64:11
**rest**  49:25 55:5
**result**  30:7 48:7
  66:16 115:9
**results**  118:11
**retained**  47:7
**retract**  42:25
  43:16 49:13
**retrieving**  12:16
**return**  12:1 15:6
  118:19
**returns**  94:9,12
  94:13,14 96:14,21
  96:24 97:2
**review**  68:11 70:9
  79:24
**reviews**  16:5,6
**right**  11:15,24
  15:25 19:19 21:4
  21:12 22:4,16
  26:5 28:13 29:3
  30:4 32:11,17
  33:25 34:7,21
  35:24 37:15 42:20
  42:22 44:2 45:14
  46:8 48:12 49:4,7
  52:6,12 58:4
  65:14,21 66:9
  68:10,10 69:12
  70:5,12,18 72:25
  73:7 74:14 75:2,6
  75:14 77:1,10,24
  78:5,17,25 79:14
  79:18,19,21 80:3
  80:10,25 81:8,10
  81:25 83:9 85:6
  87:4,20,24 88:22
  89:4,19 90:8,13
  90:22 91:8,9,21

91:22 92:2,19
93:17 96:3 97:10
97:12 98:4,6,21
101:18,22 104:3
105:8,23 107:15
109:25 110:18
112:23 113:4,13
114:23,25 115:20
118:2,25 119:1,16
120:11 121:24
122:7,20,23 123:4
123:8,13 124:7
**rights**  15:6 53:3
103:20 110:11
**risen**  17:18
**road**  126:21
**robbins**  6:22
**rockefeller**  9:12
**romanette**  57:25
**rose**  9:18 87:11
**roth**  10:8 20:3,21
**route**  47:22
**rule**  7:15,20 18:12
51:11 70:12
**rules**  123:22
**ruling**  7:16,21
32:9
**rulings**  63:15 64:1
125:3
**russell**  6:22

**s**

**s**  9:1,15 10:23
11:1
**s&r**  89:21,21
**safeguards**  92:13
**sarah**  40:21 42:3
**saren**  56:10,13
57:23 58:22 60:2
60:7 71:25 72:6
72:14 74:20 75:19
75:24 77:10 78:2
78:9 79:16

**sat**  67:2
**satisfy**  16:24
56:23
**sauber**  6:23
**saw**  14:21 21:18
36:15 89:15
**saying**  35:5 38:1
49:5 60:10 61:22
62:17 64:7 66:15
66:20 74:2 75:18
76:17 106:12
109:6 118:21
119:22 121:3,15
122:14
**says**  28:6 29:5
30:17 31:6,9,10
34:19,22 35:1
36:9 41:14 45:3
50:12,15 55:25
58:20 59:13,14,15
68:3 84:9 86:9
87:25 88:15 89:16
89:21 106:24
107:1
**sca**  5:12
**scaletta**  7:1
**scenario**  27:3,5,12
28:20 29:8
**schedule**  21:17,19
21:21,23 49:2
55:1,3 56:15
77:11 79:1,15
**scheduled**  71:21
77:9 78:1,8 98:6
**scheduling**  71:1
**scheme**  19:13
31:2,6 38:16 40:7
40:9,14 44:11
52:18 64:24 65:6
71:7 72:12 73:1,5
73:6,8,10 74:6,16
75:13 76:10,18,19
79:8 83:2 84:15

85:11 92:22 95:1
**schiltz**  4:6,6
**schulte**  10:8 20:3
20:21,24
**screw**  45:4
**search**  96:15
**seated**  11:2
**second**  12:6 15:18
22:22 31:4 34:18
38:5 40:2,19
44:16,23,24 45:6
50:13 54:7 58:4
72:7
**secondly**  47:5
**seconds**  11:23
15:22 16:2
**section**  40:12
100:1 115:23
**secure**  86:11
**securities**  1:11,14
1:20 2:4,14 9:21
14:17 34:7 40:10
64:24 71:8,9
72:16,22 74:7,9
**see**  12:20 14:9
15:2 16:11 39:24
44:11 52:23 59:2
59:11 78:17 82:2
84:10,11 89:8,10
89:21,22 90:5,10
91:11,19,24 97:15
97:23 99:10,18
114:18 123:17
**seeing**  91:13
**seek**  82:18 105:3
109:25 112:17
**seeking**  80:13
82:22 88:1 93:6
94:17,18,23 96:10
96:13 97:3,4
107:4,13 108:10
109:12

**seeks**  105:18
111:18 118:19
124:2
**seen**  21:2 36:25
80:22 83:14
**senator**  101:4
**send**  70:10 119:11
**sense**  18:17,25
77:16,17 86:19
107:21
**sent**  88:20
**sentence**  58:24
**sentry**  3:3 105:19
**separate**  27:5
28:3 44:7 74:3
100:5 105:24
115:3 117:16,21
117:21 118:11
**separately**  71:17
77:8
**separation**  48:9
**september**  26:4
80:12 90:24
**serve**  56:19 65:15
69:14
**served**  56:17 67:4
68:12,15 69:8
**service**  101:10
**services**  4:3,8,14
4:19 5:3,8,14,19
6:3,8,13,19,25 7:3
7:8
**set**  87:12
**setoff**  27:19,19
110:3 113:9
**setoffs**  27:23
**settle**  17:17 99:22
99:23 102:11
103:8,19 110:10
110:11
**settled**  13:14
116:25 117:10,11

settlement 14:3
  15:8 98:20 101:20
  102:6 103:13,17
  110:8
settlements 15:10
  15:11 102:7,8
  109:17
seven 77:19
seventh 4:17
sh14-7 89:23
shapiro 2:18
  10:16 80:9 82:7
  82:25 83:1 85:9
  85:24 86:9 87:14
  87:15,21 88:6
  89:5,9 90:2,3,24
  92:21 95:4,6 96:1
  96:14 97:18
shapiros 81:8,11
  83:22 97:9
shapiro's 83:5
  86:25 94:11,19
share 83:11
shares 80:20
shea 3:25
shed 96:4
sheehan 9:17
  10:25 11:14,25
  12:2 13:7,9,11
  14:14 17:10,14
  18:1,3,8
she's 58:1 66:15
  66:20 67:10,11
  68:5,6 71:24
  73:17,19 75:18,21
  75:23 77:23 78:12
  91:9
short 56:6 89:23
  90:6,7 103:15
should've 75:15
show 8:1 58:5
  63:8 72:22 74:9
  82:25 92:18 93:4

93:5
showed 93:8
showing 52:17
  92:21
side 14:4 26:16,17
  39:2,3,7 106:23
sides 29:12 41:8
  50:1,5 54:9
sign 19:22 103:16
  103:19
signed 51:22
  102:20 103:14
significant 12:14
signing 12:22
  41:15
similar 20:11 66:7
  87:22 94:25 99:19
  115:12,14,17
simple 47:25
  52:15
simplest 92:3
simply 71:16 74:6
  82:4,8 96:13 97:9
simpson 104:20
simultaneously
  26:25 29:3
single 36:4,4 37:2
  63:20 89:12
sipa 2:13
sipc 14:25 15:6,6
  16:5,19,24 114:9
  121:17
sipc's 16:11 18:4
  32:18
sipr 99:11
situation 24:4
  25:10,14 34:23
  55:10 76:11
  112:22
six 48:1 102:22,25
  122:16
slate 29:18

slightly 17:18
smb 1:9,17 2:1,10
  3:1 4:1,6,11,17
  5:1,6,12,17 6:1,6
  6:11,17,22 7:1,6
  7:11,14,19 8:1,5,7
solution 110:5
solutions 126:20
solvable 103:18
somebody's
  123:16 124:6
somebody's 58:5
somewhat 123:22
son 91:5
sonya 8:25 126:3
  126:8
soroker 5:1
sorry 20:1,20
  31:23 38:24,24
  50:1 86:4
sort 45:22 77:1
  107:1 114:7
  116:18
sought 49:17,19
  61:20 81:15 82:5
  87:12,14 105:25
  106:9
sound 79:6
sounding 44:4
sounds 72:10 75:9
  95:15
southern 1:2
speak 98:17,25
  101:16,18 103:3
  105:10 123:18
speaking 104:5
special 4:7,12 5:2
  5:7,12,18 6:2,7,12
  6:18,23 7:2,7
specific 22:5 60:2
  72:10 79:11 96:12
  122:6,7

specifically 39:9
  88:8
split 103:21
spoke 99:9
spring 61:16
stand 55:22
  109:22
standard 16:21
standing 47:14,14
  81:12,16,18,20
  82:1
stands 32:19
  89:21
stargatt 5:18
start 11:17 55:11
  87:11 100:18
started 104:7
starting 11:8
  68:19 76:18
state 25:11 105:16
stated 56:25 57:4
  113:7
statement 45:9
  72:15,17 84:9
  88:4 89:1,2 97:20
statements 13:21
  64:25 65:3 71:9
  72:23 74:10 85:4
  88:6 89:12,13,15
  89:23 91:4,4,25
  92:3 93:1
states 1:1 3:10
  12:10 13:22 85:2
  93:22 116:11
status 8:7 66:2
  98:6
statute 15:5 16:21
statutes 100:2
statutory 48:1
stay 7:15,17,20,22
  21:15 57:12
  107:22 108:21
  109:4 119:3

**step** 61:14 102:24
  103:10
**stepped** 101:23
  103:5
**stepping** 102:25
**steps** 23:25
**stern** 24:25 25:3,4
  27:3,25 29:6,7
  33:7 34:23 41:10
  41:14 47:11
**stick** 78:25
**stipulation** 51:20
  55:5,9,11,12
  102:2 111:10
  122:22 123:9
**stop** 54:18 61:22
  93:6
**story** 44:25
**straight** 50:15
**straightforward**
  60:17
**stray** 77:7
**streamline** 103:8
  103:25 104:8
**streamlined** 99:25
**street** 9:22
**stress** 72:2
**stricken** 30:13
**strike** 49:18
**striking** 35:12,13
**strong** 109:24
**strongly** 32:18
**stuart** 3:22
**stuff** 70:15 80:1
  91:10 92:8
**stuffy** 13:11
**subject** 32:2 50:9
  51:14,15,16 79:16
  102:12
**subjects** 28:7
**submission** 22:22
  23:16 34:13,19,24

**submit** 14:11
  16:21,25 18:7,19
  25:6 31:5 52:24
  55:6,7,9,23,24
  79:21 84:9 98:2,3
  122:5
**submitted** 17:1,1
  20:24 23:9 28:22
  50:22 52:24 60:22
  85:4 97:19
**subpoena** 80:8,13
  86:1 87:13 97:13
**subpoenas** 81:12
  81:16
**subrogation** 15:6
**subsequent** 73:17
  73:20 100:10,18
  120:3,19 121:17
**subsequently**
  28:23
**substantive** 35:20
**substantively**
  2:12 34:11
**substitute** 99:12
  99:17,23 102:5
  111:4 113:2,3
  124:2
**substituted** 100:9
  104:11,12 111:17
**substitutes** 110:4
  112:2
**substitution** 102:5
  103:11,23 109:11
  109:23,24 110:8
  110:20,21 111:1
  112:21,24 113:5,7
  114:7,15 122:4,6
  122:17
**subtract** 89:25
**subtracting** 50:16
**subtracts** 51:13
**success** 14:22

**successful** 15:8
**successfully** 15:12
**suffers** 118:2
**sufficient** 52:3
  56:22
**suggest** 11:7 71:2
  82:23 87:1 111:24
**suggesting** 42:22
  70:21 71:13 72:5
**suing** 48:8 116:11
  120:9
**suit** 13:12 36:8
  122:11
**suite** 9:22 10:17
  126:22
**suits** 28:24
**summary** 13:25
  31:18,25 32:8,13
  35:22 43:10 51:4
  52:3
**summer** 87:14
**sums** 12:16
  105:25
**supervisory** 59:18
**supplemental**
  61:1,2 62:3
**supplementing**
  75:5
**support** 14:9
**supporting** 13:18
**supports** 32:19
**suppose** 103:22
**supreme** 45:7,8
**sure** 15:23 21:20
  21:25 24:9 25:5
  33:2 37:5 52:1
  60:15 75:7 98:14
  99:6 119:9,10
**surgery** 71:22
  77:22
**surprised** 99:9
**survived** 116:20
  116:21,23

**suspect** 110:14
**sweet** 44:4

**t**

**t** 126:1,1
**tactical** 23:12
  67:2
**take** 19:10 34:4
  61:1,17 66:25
  69:1 72:14 77:22
  79:7 101:14 102:2
  103:10 110:2
  114:4 119:14
  123:7
**taken** 12:22 46:6
  103:14
**takes** 52:7 109:5
  119:23
**talk** 25:13 34:13
  42:12 71:1 111:1
**talked** 17:22 29:8
  46:21 48:17
**talking** 22:18 27:9
  39:6 49:10 51:14
  51:16 54:16 61:23
  62:1,15 78:18
  80:17 92:15
  100:19 121:16,18
**talks** 46:22 47:11
  118:11
**tantamount** 27:20
  27:23 28:7
**targets** 53:3
**tax** 90:20 94:9,12
  94:13,13 96:14,21
  96:24 97:2
**taxes** 74:1
**taylor** 5:18
**teaches** 24:14
**technically** 51:14
  122:9
**telephonically**
  10:22

**tell** 11:11 33:13
43:3,17,17,17
67:11 69:7 76:1
86:17,21 112:7
113:1 114:24
**telling** 68:17
110:13 121:19
**ten** 29:18 44:6
110:17
**tenth** 12:15 14:21
**term** 29:13
**termination** 69:11
**terms** 76:10 79:1
103:25 104:16
113:5 114:14
**testimony** 19:12
65:7
**thacher** 104:20
**thank** 11:15 14:13
14:14 17:3,7 18:1
18:2,3,7,8,9 19:25
21:7 29:22 32:11
32:21 46:17 50:20
55:15 80:3,5 81:3
87:5,6 98:3,5
124:8,9,11,12,13
124:14
**thanks** 55:16
58:13
**that's** 52:21 54:7
54:24 55:3,5,13
56:22 60:22 62:17
63:14 65:8,10,17
66:5,19,20 67:25
68:9 70:10,14
72:5 73:9 74:12
74:25 75:1,17,17
75:23 77:6,8,11
77:20 78:5,17,18
79:10,18 82:14
83:7,21 84:20
86:16,17,21 90:1
90:5,7 91:6 92:1,8

92:8 93:13 95:3
97:23
**theory** 76:20
95:20
**there's** 54:15
55:13 66:4 68:3
70:10 75:13 79:3
79:8 82:9,10,22
85:17,19 87:1
88:1 91:9,10
97:21
**they're** 57:16
60:13,18 62:14,16
62:17 65:6,9,9
67:3 70:3,6 79:6
81:6 82:19 86:6
87:3 92:5 93:6
95:2,17 96:11
97:3,4,23
**they've** 58:16
60:18 61:8 93:4,7
93:19 97:10
**thing** 39:2,4,5
53:25 58:6,7
61:15 84:25 85:16
86:1 112:18
**things** 12:18 34:2
38:15 42:8 44:11
55:21 60:19 89:1
112:18
**think** 11:16 12:8
12:14,14 17:10,21
22:20 23:7,24
25:17 26:2,3 27:6
28:16 29:7,9 30:2
30:9 31:19 34:17
37:12,16 39:11
41:2,2 43:20
44:22 45:4 47:21
49:22 50:14 53:8
55:4,20 57:24
58:20 70:11,23
73:2,17,22 74:8

75:24 76:21 77:10
77:15,16 79:18
84:16,17,23,25
85:7,17 89:16
92:3 93:19 97:1
97:12 98:25 100:8
101:4,6 102:1,4
103:9,11,15 109:2
112:19,25 113:24
115:10 116:1,20
117:3,5,13,21
120:23
**thinking** 86:22
**thinks** 19:5
**third** 10:10 60:22
81:14
**thirdly** 22:24
**thought** 13:8,10
33:11 36:15 37:17
43:13 60:25 98:18
104:7,7 116:2
117:4
**three** 27:13 60:21
61:23,23,24 62:3
63:6 64:2,9,14
65:20 66:16,18
68:14 69:1,23
71:6 73:8,14 74:3
75:2,18,21 76:24
76:25 77:7,13,15
**threw** 116:15
**time** 12:20 15:15
15:18,21 16:2,6
16:23 17:22 24:13
26:25 30:10 35:14
39:9 51:12 52:23
65:1 72:24 76:3
78:11 79:7 84:17
89:6 96:25 97:7
98:8,10 104:15
105:7 106:11
111:3 112:4,6,8
117:7 118:5

120:12,13 121:23
123:7
**timeline** 105:14
**timely** 78:16
**timing** 77:9
120:11
**today** 15:16 22:15
28:12 43:11 51:2
53:23 54:19 121:9
**told** 53:23 54:18
77:22 91:19 104:9
104:24 121:20
**top** 89:21
**torello** 9:19 87:9
**tort** 25:12
**total** 16:12,15
50:16,16
**totally** 91:10
**tracks** 44:7
**trade** 82:6
**trades** 31:7 73:4
82:12,24 83:1,2
88:9 92:23,25
94:19 95:1,18
**trading** 60:21,22
62:14 64:23 65:9
65:11,15 66:19
**transactions**
26:15,16
**transcribed** 8:25
**transcript** 67:20
126:4
**transfer** 24:16
36:8 39:14 46:15
47:3 50:10,18
100:10,18 101:9
120:3,18 121:17
**transferee** 73:17
73:20,20
**transferees**
120:19
**transfers** 52:4,10
74:19 121:3

**treated** 63:1
**tremendous** 12:19
**trial** 7:15,20 8:2
  21:15 29:4 30:4
  39:21 40:19 41:1
  42:13,16 47:1
  56:14,16 59:20
  60:25 66:13 67:24
  68:5,5 71:5,14,15
  72:3 74:3 77:10
  78:18 116:1
**trials** 70:18 77:6
  79:15
**tried** 38:10,14
  68:22 74:16,17
  75:11,22 98:23,24
**trouble** 58:19
  59:12 63:21
**true** 44:8 48:13
  58:9 126:4
**truman** 4:12
**trumps** 40:10
**trust** 118:15
**trustee** 1:19 2:3
  2:12 4:1,7,13 5:2
  5:7,13,18 6:2,7,12
  6:18,24 7:2,7 9:11
  11:5 12:1,3 14:21
  15:7,11 16:22
  17:1 20:7 21:24
  24:11 31:3 34:1
  36:19 41:4,14
  45:22 46:25 48:25
  50:7,21 54:9
  56:17,25 58:25
  59:19 66:10,12
  74:21 75:15 80:13
  84:21,21 85:22
  87:5,10 96:10,15
  98:15 104:25
  108:15 110:24
  111:12 113:9
  118:24 119:23

120:20 122:10,17
**trustee's** 18:12
  26:13 30:8,11,12
  31:1,6 32:19
  99:19 119:1
  122:13
**trustees** 7:11
**trustee's** 54:11
  76:19 82:3,16
**try** 14:2 54:3
  59:23 70:22 73:7
  77:7,13,15,24
  79:7,10 98:7
  103:25 112:17
  114:20
**trying** 13:13 77:8
  79:1 83:21 99:8
  99:22 102:6 103:7
**turn** 82:2 89:18
**turns** 29:2
**twenty** 4:17
  115:10
**twice** 45:7,8
  107:14
**two** 12:18 25:14
  27:3,5 28:3 29:9
  29:12 34:2 38:4,5
  38:15 41:8 44:7
  48:2 49:8 50:1,5
  54:9 56:7 60:20
  71:3 78:18 79:4
  79:25 89:22 95:13
  97:4 100:3,22
  108:23 115:1,3
**type** 80:21
**typos** 54:2 55:4,8

**u**

**u.s.** 3:23
**uggc** 6:6
**uk** 12:24
**ultimate** 118:13
**ultimately** 99:11
  106:3

**unable** 78:12
**unavoided** 39:19
**unchanged** 24:25
**unclear** 123:22
  124:4
**uncontested** 11:8
**undated** 59:9
**underlying** 82:20
**understand** 23:5
  23:24 31:22 37:25
  39:11,25 42:14
  51:25 60:14 65:4
  65:24 72:19 74:14
  76:19 86:16 88:18
  90:14 95:20 101:2
  102:16 103:17
  104:14 108:1
  110:1,7,7 111:23
  115:6 121:10
  122:14,21
**understanding**
  83:15 98:11
  122:22 123:1
**understood**
  104:23 105:2,6
  107:11 108:13,14
  111:10 113:12
  121:8
**understsnd** 18:23
**united** 1:1 3:10
  12:10 13:22 93:22
  116:11
**unjust** 118:14
**unopposed** 18:15
**unrelated** 25:11
**unring** 28:22
**untereiner** 6:23
**untie** 114:20
**unusual** 49:23
**use** 11:16,17
  17:20 29:12 30:14
  55:14 62:11,16
  81:17 115:24

**usually** 16:15
  112:15

**v**

**v** 1:13,22 2:6,17
  3:5 47:11 93:23
  106:23
**value** 29:11 73:18
  87:17,22 88:22
  89:11,24 90:5,11
  91:20 97:16,17,22
  121:1
**valued** 84:10 89:7
  89:9,14
**vanilla** 54:19
  55:24
**variety** 96:18 97:7
  99:23
**various** 16:8
  30:15
**vehicle** 116:8,15
**ventry** 18:14
**veritext** 126:20
**viable** 41:9
**victims** 14:23
**view** 23:4 31:11
  56:14 123:12,15
**vigano** 7:6
**volitional** 23:11
**voluntary** 15:14
**von** 18:14

**w**

**wait** 113:11
**waited** 118:5
**waiting** 49:1
**waive** 103:20,20
  110:11
**waived** 97:10
**want** 11:10,11
  17:11 19:19 22:1
  23:20 25:13 29:12
  29:14 32:2 37:18
  42:24,24 43:5,16
  43:21 44:3 46:8

50:24 53:25 55:10
55:16 66:12 71:14
76:10 77:13 78:2
89:8,10 90:10
91:11,17,19 94:17
98:7 101:14
103:19 104:11
105:1 107:16
108:23 110:20
111:19,25 114:3
117:23
**wanted**  46:25
49:12 60:25 78:15
87:18 98:13,13
103:24 105:7
109:21
**wants**  17:8 32:15
43:7 46:13 117:24
**warrants**  19:11
32:8
**washington**  9:23
**wasn't**  56:19 64:4
76:17
**way**  20:25 21:13
23:6 27:4 28:3
30:18 45:25 47:4
50:17 83:16 92:4
95:9 97:24 101:20
104:8 112:15
114:19 119:19
**we've**  18:21 23:19
26:2 28:18,19
30:5 45:15 48:3
48:17 103:4,7,9
103:12 104:24
106:22 107:20
112:15 114:19
122:16
**week**  12:10 14:20
28:10 74:3
**weeks**  114:21
**went**  23:18 25:9
37:5 40:3 43:19

45:6,7,8 53:21
54:1 77:7 115:22
115:25,25 116:15
116:23
**werder**  7:6
**weren't**  97:8
**westlaw**  50:4
**we'll**  72:22 74:8
78:17 98:3
**we're**  55:1 61:23
62:1 75:7 77:1
78:18 80:17 94:17
94:18
**we've**  60:20 68:4
92:20 94:23
**what's**  55:17 68:9
83:7,12,20 85:13
86:8 96:21
**whim**  27:16
**white**  10:20 80:11
80:12,18,23 81:4
81:9,11,23 82:1
82:16 83:9,14,19
83:24 84:4,13,16
84:20,25 85:7,16
85:25 86:4,6,12
86:20 87:6 96:9
96:18,25 97:6
98:5
**who's**  63:22
**widely**  17:21
**wilenitz**  63:3,3
69:2
**williams**  6:1
**willing**  92:5 95:17
**windell's**  16:14
**windels**  4:18
**winners**  50:9
**withdraw**  7:17,22
21:16 22:10 23:19
28:11,23 37:14,20
42:24 43:21 49:11
49:17,19 54:20

55:25 125:6
**withdrawal**  22:14
22:14,24 23:1
26:19 27:9,10
28:17 30:2,14,20
37:2,20 42:25
43:11 50:22 52:20
53:7 54:21 56:3
**withdrawals**
35:17 36:16,22
37:8 45:17 50:7
50:16 71:4,17
72:10 74:13 79:6
**withdrawing**
38:18 43:6,6
**withdrawn**  28:10
30:6 40:23 53:2
**withstand**  72:2
**witness**  62:4
**witnesses**  56:21
60:11 62:2 71:12
73:13 75:12 76:25
**wondering**  18:25
**won't**  76:13
**word**  109:14
123:16
**words**  60:10
75:11 93:7 113:5
**work**  13:18 59:18
**worked**  99:20
**working**  99:10
103:4 114:19
**worldcom**  28:20
**worried**  83:12
**worth**  88:16,17
89:11 96:14 97:2
**wouldn't**  63:19
85:22 86:11
**wrapped**  109:7
119:24
**wrestling**  122:16
**write**  112:9
119:13

**writes**  86:9
**writing**  29:18
**written**  90:2,3
**wrong**  67:10,11
74:15 109:14
118:24 119:2
**wrote**  13:24 102:3
115:18

**x**

**x**  1:4,8,10,16,18
1:25 2:2,9,11,20
3:2,8 125:1

**y**

**yeah**  17:14 32:5
35:16 41:23 49:9
49:19 50:24 53:10
58:11 59:10,15
66:21 67:24 70:14
70:17 75:24 76:16
76:23 78:20,24
80:2 90:16,19
94:20 101:2
105:13 108:17
109:2 118:1
**year**  12:15 14:19
74:17 77:14,17
88:18 99:20 103:4
108:14
**years**  11:17,18
29:18 44:6 48:2
60:20,21 93:12,12
94:11 96:16,21
101:15 102:22,22
103:1 104:24
110:17 111:3
112:10
**years'**  96:14 97:2
**york**  1:2 3:12 9:6
9:13 10:4,11,18
106:18,20 109:7
**young**  5:17
**you'd**  81:17

**[you're - '92]**

| | |
|---|---|
| **you're** | 64:7 68:17 73:7,9 74:8 76:17 81:17 83:12 90:9 90:22 91:6,7 95:9 97:15,24 |
| **you've** | 67:19 70:11 91:19 |

**z**

| | |
|---|---|
| **zabel** | 10:8 20:3 |

**'**

| | |
|---|---|
| **'92** | 76:3 |