**EXHIBIT A**

**AGREEMENTS BETWEEN
THE TRUSTEE AND LOURDES BARRENECHE; BARRENECHE INC.;
ROBERT BLUM; CORNELIS BOELE; FORTUNA ASSET MANAGEMENT;
GREGORY BOWES; HAROLD GREISMAN; JACQUELINE HARARY,
RICHARD LANDSBERGER; DANIEL LIPTON; MARK MCKEEFRY; GORDON
MCKENZIE; SANTIAGO REYES; SELECTA FINANCIAL CORPORATION
INC.; AND ANDREW SMITH**

**Execution Copy**

**SETTLEMENT AGREEMENT AND RELEASE**

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Lourdes Barreneche (the "Transferee") and Barreneche, Inc. (with "Transferee," the

"Transferee Defendants"). The Trustee and the Transferee Defendants collectively shall be

referred to herein as the "Parties" and each as a "Party."

## RECITALS

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, on June 6, 2012, the Trustee commenced an adversary proceeding in the

Bankruptcy Court against Barreneche, Inc. in an action captioned *Picard v. Barreneche, Inc., et*

*al.*, Adv. Pro. No. 12-01702 (SMB) (with the "SIPA Adversary Proceeding," the "SIPA

Adversary Proceedings"), to recover subsequent transfers from BLMIS under the Bankruptcy

Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee Defendants received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee Defendants deny the Trustee's allegations in the SIPA Adversary Proceedings and contest the amount of Subsequent Transfers the Transferee Defendants received;

**WHEREAS**, the Transferee Defendants have provided to the Trustee information concerning their net worth and have shown that they cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceedings;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee Defendants received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

2

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee Defendants (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee Defendants (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee Defendants from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)     Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceedings

and the Fairfield Management Action dismissing the Transferee Defendants with prejudice and

without costs to any party.

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee Defendants have made representations to

the Trustee about their assets and liabilities.  After the signing of this Agreement and before the

Trustee files the 9019 Motion with the Bankruptcy Court, the Transferee Defendants shall

provide to the Trustee verified financial statements, which shall set forth the Transferee

Defendants' net worth, and detail Transferee Defendants' assets and liabilities.  The Trustee shall

maintain the confidentiality of all personal financial information provided by the Transferee

Defendants.  If such verified financial statements are materially different from the prior

4

representations made by the Transferee Defendants, this Agreement shall be deemed void *ab initio.*

(e)     Transferee has a claim for deferred compensation from Fairfield Greenwich (Bermuda) Limited, which was valued at approximately $8,204,253 as of September 1, 2008, the last date of such valuation. As part of this settlement, Transferee assigns to Trustee the proceeds of her deferred compensation claim and agrees to provide the Trustee reasonable assistance in obtaining the proceeds of such deferred compensation claim.

(f)     Transferee has an account at Bank Julius Baer valued at approximately $671,840.00. As part of this settlement, Transferee assigns to Trustee all right, title, and interest in Transferee's account at Bank Julius Baer, and agrees to provide the Trustee reasonable assistance in the transfer of this account.

2.    <u>Cooperation of the Transferee Defendants.</u>

(a)     The Transferee Defendants agree to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)     The Transferee Defendants' participation in any discovery as though the Transferee Defendants were still a party in the SIPA Adversary Proceedings and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee Defendants.

(ii)    Within 21 days of the Effective Date, the Transferee Defendants shall

provide, subject to confidentiality obligations, to the Trustee, copies of any official statement,

deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee

Defendants, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings,

the Fairfield Management Action, or the Fairfield Greenwich Funds, including without

limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities

Division investigation, or any other SEC investigation or inquiry.  The obligation in the

preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the

Transferee Defendants more than six years before the commencement of the SIPA Proceedings.

To the extent that confidentiality obligations restrict the Transferee Defendants from using or

providing Testimony under this paragraph, the Transferee Defendants shall use their reasonable

best efforts to have those restrictions removed.  If the Transferee Defendants fail to provide to

the Trustee any Testimony, the Transferee Defendants agree they will provide the Trustee's

counsel with an in-person interview after the Effective Date and within 60 days of a request by

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee Defendants and counsel for the Trustee, or at such other time agreed to among

counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee Defendants under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

6

the Trustee hereby releases and forever discharges: (i) the Transferee Defendants and their

executors, administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate

family members; and (iii) all of the Transferee Defendants' attorneys, professionals, agents, and

consultants, from any and all past, present, or future claims or causes of action (including any

suit, petition, demand, or other claim in law, equity or arbitration) and from any and all

allegations of liability or damages (including any allegation of duties, debts, reckonings,

contracts, controversies, agreements, promises, damages, responsibilities, covenants, or

accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration,

absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability,

negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys'

fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in

Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the

Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee

has been assigned, including, without limitation, the Assigned Claims, against the Transferee

Defendants based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated

BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary

Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set

forth in Section 3(c) herein.

     (b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee Defendants, on behalf of themselves and their executors, administrators, heirs and

assigns hereby releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys,

professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and

all claims or causes of action (including any suit, petition, demand, or other claim in law, equity,

or arbitration) and from any and all allegations of liability or damages (including any allegation

of duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceedings, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

8

4.      Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement

(the "Released Claims") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.      No Admissions.

In connection with this Agreement, the Transferee Defendants do not admit or concede,

and expressly deny, any liability or wrongdoing and further expressly deny the factual basis and

legal validity of the claims in the SIPA Adversary Proceedings and the Fairfield Management

Action.

6.      General Representations and Warranties.

(a)      The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee Defendants represent and warrant that, as of the date hereof, and

subject to the approval of the Bankruptcy Court as set forth herein: (i) they have the full power,

authority, legal right and capacity to execute and deliver this Agreement and to perform their

obligations hereunder; (ii) this Agreement has been duly executed and delivered by the

Transferee Defendants and constitutes the valid and binding agreement of the Transferee

Defendants, enforceable against the Transferee Defendants in accordance with its terms; (iii) the

Transferee Defendants have executed this Agreement with the full knowledge of any and all

rights that the Transferee Defendants may have with respect to the controversies herein

compromised, and the Transferee Defendants have received or have had the opportunity to

obtain independent legal advice from their counsel with regard to the facts relating to said

controversies and with respect to the rights arising out of said facts; and (iv) no other person or

entity, other than those specifically identified herein, has any interest in the matters that the

Transferee Defendants release herein, and the Transferee Defendants have not assigned or

transferred or purported to assign or transfer to any such third person or party all or any portion

of the matters that the Transferee Defendants release herein.

7.    Additional Representations and Warranties by the Transferee Defendants.

The Transferee Defendants represent and warrant that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

Defendants have not received any money, funds, loans, transfers, assets, financial assistance, or

financial accommodation from Madoff, BLMIS, or any other company or entity owned or

controlled by Madoff or BLMIS; and (ii) the Transferee Defendants are not immediate, mediate,

or subsequent transferees of any funds or property originating from Madoff or BLMIS to an

initial transferee, other than the Subsequent Transfers and certain redemptions from the Fairfield

Greenwich Funds; and (iii) the Transferee Defendants are not aware of any claims against the

Transferee Defendants by Madoff, BLMIS or any other company or entity owned or controlled

by Madoff or BLMIS other than the claims referenced in this Agreement.

8.      Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.      Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.     Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.     Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against

the Parties and their respective estates, heirs, personal representatives, executors, successors, and

permitted assigns.

12.     Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of

which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceedings, the Fairfield Management Action, and this Agreement, including,

without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

**TRANSFEREE DEFENDANTS**

Address:
Lourdes Barreneche
151 East 58th Street
New York, NY 10022

By: _____

Lourdes Barreneche, Transferee


Address:
Barreneche, Inc.
151 East 58th Street
New York, NY 10022

By: _____

Barreneche, Inc., Transferee

With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000


[TRANSFEREE DEFENDANTS SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

15

**<u>Execution Copy</u>**

**<u>SETTLEMENT AGREEMENT AND RELEASE</u>**

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "<u>Agreement</u>") is entered

into as of February  $\underline{21}$ , 2019 between Irving H. Picard, in his capacity as the trustee (the

"<u>Trustee</u>") for the liquidation proceedings (the "<u>SIPA Proceedings</u>") under the Securities

Investor Protection Act ("<u>SIPA</u>") of Bernard L. Madoff Investment Securities LLC ("<u>BLMIS</u>")

and the substantively consolidated estate of Bernard L. Madoff ("<u>Madoff</u>") pending before the

United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>")

and Robert Blum (the "<u>Transferee</u>").  The Trustee and the Transferee collectively shall be

referred to herein as the "<u>Parties</u>" and each as a "<u>Party</u>."

**<u>R E C I T A L S</u>**

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "<u>SIPA Adversary Proceeding</u>"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee

received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from

BLMIS Account No(s).  1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the

"<u>Subsequent Transfers</u>");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary

Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

2

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. <u>Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.</u>

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield Management Action dismissing the Transferee without prejudice and without costs to any Party. The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and the Fairfield Management Action dismissing the Transferee with prejudice and without costs to any party.

(c)    If the Settlement Order is not entered by the Bankruptcy Court in the SIPA Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield Management Action asserting the causes of action set forth in the Fairfield Management Action, with the claims against the Transferee in the Fairfield Management Action deemed to have been filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)    On a confidential basis, the Transferee has made representations to the Trustee about his assets and liabilities. After the signing of this Agreement and before the Trustee files the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified financial statements, which shall set forth the Transferee's net worth, and detail Transferee's assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial information provided by the Transferee. If such verified financial statements are materially different from the prior representations made by the Transferee, this Agreement shall be deemed void *ab initio*.

(e)    Transferee has a claim for deferred compensation from Fairfield Greenwich (Bermuda) Limited, which was valued at approximately $1,755,000 as of September 1, 2008, the last date of such valuation. As part of this settlement, Transferee assigns to Trustee the proceeds of his deferred compensation claim and agrees to provide the Trustee reasonable assistance in obtaining the proceeds of such deferred compensation claim.

(f)    Transferee shall also pay to the Trustee $250,000 within three days after the Effective Date.

4

2.    Cooperation of the Transferee.

(a)    The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)    The Transferee's participation in any discovery as though the Transferee

were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action.

Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any

disruption or inconvenience to the Transferee.

(ii)    Within 21 days of the Effective Date, the Transferee shall provide, subject

to confidentiality obligations, to the Trustee, copies of any official statement, deposition

testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits

to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management

Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony

related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any

other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to

any transmittal affidavits or any Testimony given by the Transferee more than six years before

the commencement of the SIPA Proceedings. To the extent that confidentiality obligations

restrict the Transferee from using or providing Testimony under this paragraph, the Transferee

shall use his reasonable best efforts to have those restrictions removed. If the Transferee fails to

provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's

counsel with an in-person interview after the Effective Date and within 60 days of a request by

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)     The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee under this Agreement.

3.     Releases.

(a)     In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield

Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement

7

(the "Released Claims") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to

8

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from his counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.   Additional Representations and Warranties by the Transferee.

        The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the

Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or

BLMIS other than the claims referenced in this Agreement.

9

8.    <u>Further Assurances</u>.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    <u>Entire Agreement</u>.

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10.    <u>Amendment; Waiver</u>.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11.    <u>Successors</u>.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    <u>Counterparts; Electronic Copy of Signatures</u>.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be

governed by and construed in accordance with the laws of the State of New York (without regard

to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without

limitation, fees for attorneys, experts, consultants, accountants and other advisors.

11

16.    <u>Notices</u>.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    <u>Captions and Rules of Construction</u>.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

> **IRVING H. PICARD, AS TRUSTEE FOR THE
> LIQUIDATION PROCEEDINGS OF BERNARD L.
> MADOFF INVESTMENT SECURITIES LLC AND
> THE SUBSTANTIVELY CONSOLIDATED
> BANKRUPTCY CASE OF BERNARD L. MADOFF**
>
> By: _____
> Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

By: _____
Robert Blum, Transferee

Address:
Robert Blum
5 Sherman Ave.
White Plains, NY 10605

With copies to:
Edward M. Spiro
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, New York 10017
(212) 880-9460

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

**SETTLEMENT AGREEMENT AND RELEASE**

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Cornelis Boele (the "Transferee") and Fortuna Asset Management Inc. (with "Transferee,"

the "Transferee Defendants"). The Trustee and the Transferee Defendants collectively shall be

referred to herein as the "Parties" and each as a "Party."

**RECITALS**

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, on June 6, 2012, the Trustee commenced an adversary proceeding in the

Bankruptcy Court against Fortuna Asset Management Inc. in an action captioned *Picard v.*

*Barreneche, Inc., et al.*, Adv. Pro. No. 12-01702 (SMB) (with the "SIPA Adversary Proceeding,"

the "SIPA Adversary Proceedings"), to recover subsequent transfers from BLMIS under the

Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee Defendants received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee Defendants deny the Trustee's allegations in the SIPA Adversary Proceedings and contest the amount of Subsequent Transfers the Transferee Defendants received;

**WHEREAS**, the Transferee Defendants have provided to the Trustee information concerning their net worth and have shown that they cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceedings;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee Defendants received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee Defendants (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee Defendants (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee Defendants from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

3

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)     Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceedings

and the Fairfield Management Action dismissing the Transferee Defendants with prejudice and

without costs to any party.

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee Defendants have made representations to

the Trustee about their assets and liabilities. After the signing of this Agreement and before the

Trustee files the 9019 Motion with the Bankruptcy Court, the Transferee Defendants shall

provide to the Trustee verified financial statements, which shall set forth the Transferee

Defendants' net worth, and detail Transferee Defendants' assets and liabilities. The Trustee shall

maintain the confidentiality of all personal financial information provided by the Transferee

Defendants. If such verified financial statements are materially different from the prior

4

representations made by the Transferee Defendants, this Agreement shall be deemed void *ab initio*.

2.    Cooperation of the Transferee Defendants.

(a)    The Transferee Defendants agree to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)    The Transferee Defendants' participation in any discovery as though the Transferee Defendants were still a party in the SIPA Adversary Proceedings and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee Defendants.

(ii)    Within 21 days of the Effective Date, the Transferee Defendants shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee Defendants, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee Defendants more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee Defendants from using or

5

providing Testimony under this paragraph, the Transferee Defendants shall use their reasonable

best efforts to have those restrictions removed. If the Transferee Defendants fail to provide to

the Trustee any Testimony, the Transferee Defendants agree they will provide the Trustee's

counsel with an in-person interview after the Effective Date and within 60 days of a request by

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee Defendants and counsel for the Trustee, or at such other time agreed to among

counsel.

(b)     The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee Defendants under this Agreement.

3.     <u>Releases.</u>

(a)     In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee Defendants and their

executors, administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate

family members; and (iii) all of the Transferee Defendants' attorneys, professionals, agents, and

consultants, from any and all past, present, or future claims or causes of action (including any

suit, petition, demand, or other claim in law, equity or arbitration) and from any and all

allegations of liability or damages (including any allegation of duties, debts, reckonings,

contracts, controversies, agreements, promises, damages, responsibilities, covenants, or

accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration,

absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability,

negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys'

fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in

Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the

Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee

has been assigned, including, without limitation, the Assigned Claims, against the Transferee

Defendants based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated

BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary

Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set

forth in Section 3(c) herein.

(b)     In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee Defendants, on behalf of themselves and their executors, administrators, heirs and

assigns hereby releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys,

professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and

all claims or causes of action (including any suit, petition, demand, or other claim in law, equity,

or arbitration) and from any and all allegations of liability or damages (including any allegation

of duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceedings, the

7

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms and conditions of this Agreement.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee Defendants do not admit or concede, and expressly deny, any liability or wrongdoing and further expressly deny the factual basis and legal validity of the claims in the SIPA Adversary Proceedings and the Fairfield Management

Action.

6.    Geṅeral Represeṅtatioṅs aṅd Warraṅties.

    (a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

    (b)    The Transferee Defendants represent and warrant that, as of the date hereof, and

subject to the approval of the Bankruptcy Court as set forth herein: (i) they have the full power,

authority, legal right and capacity to execute and deliver this Agreement and to perform their

obligations hereunder; (ii) this Agreement has been duly executed and delivered by the

Transferee Defendants and constitutes the valid and binding agreement of the Transferee

Defendants, enforceable against the Transferee Defendants in accordance with its terms; (iii) the

Transferee Defendants have executed this Agreement with the full knowledge of any and all

rights that the Transferee Defendants may have with respect to the controversies herein

compromised, and the Transferee Defendants have received or have had the opportunity to

obtain independent legal advice from their counsel with regard to the facts relating to said

controversies and with respect to the rights arising out of said facts; and (iv) no other person or

entity, other than those specifically identified herein, has any interest in the matters that the

Transferee Defendants release herein, and the Transferee Defendants have not assigned or

transferred or purported to assign or transfer to any such third person or party all or any portion

of the matters that the Transferee Defendants release herein.

7.    Additioṅal Represeṅtatioṅs aṅd Warraṅties by the Traṅsferee Defeṅdaṅts.

9

The Transferee Defendants represent and warrant that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

Defendants have not received any money, funds, loans, transfers, assets, financial assistance, or

financial accommodation from Madoff, BLMIS, or any other company or entity owned or

controlled by Madoff or BLMIS; and (ii) the Transferee Defendants are not immediate, mediate,

or subsequent transferees of any funds or property originating from Madoff or BLMIS to an

initial transferee, other than the Subsequent Transfers; and (iii) the Transferee Defendants are not

aware of any claims against the Transferee Defendants by Madoff, BLMIS or any other company

or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this

Agreement.

8.      Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.      Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.     Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.     Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against

the Parties and their respective estates, heirs, personal representatives, executors, successors, and

permitted assigns.

12.     Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of

which so executed and delivered shall be deemed to be an original and all of which, taken

together, shall constitute one and the same document.  Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

13.     Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be

governed by and construed in accordance with the laws of the State of New York (without regard

to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.     JURISDICTION; WAIVER OF JURY TRIAL.

(a)     THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceedings, the Fairfield Management Action, and this Agreement, including,

without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

                                        **IRVING H. PICARD, AS TRUSTEE FOR THE
                                        LIQUIDATION PROCEEDINGS OF BERNARD L.
                                        MADOFF INVESTMENT SECURITIES LLC AND
                                        THE SUBSTANTIVELY CONSOLIDATED
                                        BANKRUPTCY CASE OF BERNARD L. MADOFF**

                                        By: _____
                                             Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

**TRANSFEREE DEFENDANTS**

Address:
Cornelis Boele
27 Hill Road
Greenwich, CT 06830

By: _____
Cornelis Boele, Transferee


Address:
Fortuna Asset Management Inc.
27 Hill Road
Greenwich, CT 06830

By: _____
Fortuna Asset Management Inc., Transferee


With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000.


[TRANSFEREE DEFENDANTS SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 18, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Gregory Bowes (the "Transferee"). The Trustee and the Transferee collectively shall be

referred to herein as the "Parties" and each as a "Party."

## RECITALS

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee

received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from

BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent

Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary

Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Greenwich Sentry Assigned Claims, the "Assigned Claims").

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"). The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

2

(b)     Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding dismissing the Transferee with prejudice and without costs to any party.

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab initio* and (ii) the Parties may not use or rely on any portion hereof or any statement herein for any purpose.

2.     Cooperation of the Transferee.

(a)     The Transferee agrees to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)     The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)     Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The

obligation in the preceding sentence shall not apply to any transmittal affidavits or any

Testimony given by the Transferee more than six years before the commencement of the SIPA

Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or

providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to

have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony,

the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the

Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and

place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or

at such other time agreed to among counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

4

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, or the Fairfield

Greenwich Funds, except as set forth in Section 3(c) herein.

      (b)     In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, or the

Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(c)     Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.     <u>Unknown Claims</u>.

"<u>Unknown Claims</u>" shall mean any claim released herein at Section 3 of this Agreement

(the "<u>Released Claims</u>") that a Party does not know of or suspect to exist as of the date of this

Agreement.  With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.     <u>No Admissions</u>.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding.

6.     <u>General Representations and Warranties</u>.

(a)     The Trustee represents and warrants that, as of the date hereof, and subject to the

6

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)     The Transferee represents and warrants that, as of the date hereof, and subject to

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from his counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.     Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

7

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the

Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or

BLMIS other than the claims referenced in this Agreement.

8.    Further Assurances.

    Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

    This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.    Amendment; Waiver.

    This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties. No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.    Successors.

    This Agreement shall be binding upon, inure to the benefit of and be enforceable against

the Parties and their respective estates, heirs, personal representatives, executors, successors, and

permitted assigns.

8

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of

which so executed and delivered shall be deemed to be an original and all of which, taken

together, shall constitute one and the same document. Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be

governed by and construed in accordance with the laws of the State of New York (without regard

to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceeding and this Agreement, including, without limitation, fees for attorneys,

experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

10

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE LIQUIDATION PROCEEDINGS OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC AND THE SUBSTANTIVELY CONSOLIDATED BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
    Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

11

**TRANSFEREE**

Address:                                                    By: _____
Gregory Bowes                                                    Gregory Bowes, Transferee
4352 Forest Lane NW
Washington DC 20007


With copies to:
Bruce A. Baird
Covington & Burling LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5122


[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

**SETTLEMENT AGREEMENT AND RELEASE**

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Harold Greisman (the "Transferee"). The Trustee and the Transferee collectively shall be

referred to herein as the "Parties" and each as a "Party."

**R E C I T A L S**

**WHEREAS,** on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS,** the Trustee alleges in the SIPA Adversary Proceeding that the Transferee

received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from

BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the

"Subsequent Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary

Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net

worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the

Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum

Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the

Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from

Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively,

the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in

their capacities as foreign representatives of the Fairfield Funds commenced an action against the

Transferee in New York state court, which was removed to federal court, and is currently

pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the

Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group,*

*et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against

the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the

Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the

Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with

Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the

"Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with

Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and

Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among

other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the

Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry

Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting

the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the

adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.      Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)     As soon as practicable after the execution of this Agreement: (i) the Trustee shall

file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)     Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and

the Fairfield Management Action dismissing the Transferee with prejudice and without costs to

any party.

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee has made representations to the Trustee

about his assets and liabilities. After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.      Cooperation of the Transferee.

(a)     The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

4

(i)     The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)    Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)     The Trustee's obligations hereunder, including the release and dismissal by the Trustee provided for herein, are in no way contingent on the substance of any information or other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield

Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

6

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

    (c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.    <u>Unknown Claims</u>.

    "<u>Unknown Claims</u>" shall mean any claim released herein at Section 3 of this Agreement

(the "<u>Released Claims</u>") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
        THAT THE CREDITOR OR RELEASING PARTY DOES NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

8

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from his counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.    Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the

Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or

BLMIS other than the claims referenced in this Agreement.

8.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against

the Parties and their respective estates, heirs, personal representatives, executors, successors, and

permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of

which so executed and delivered shall be deemed to be an original and all of which, taken

together, shall constitute one and the same document.  Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be

governed by and construed in accordance with the laws of the State of New York (without regard

to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.


15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without

limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

11

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

12

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

By: _____

Harold Greisman, Transferee

Address:
Harold Greisman
307 East 44th Street
Apt. 1601
New York, NY 10017

With copies to:
Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the "Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Jacqueline Harary (the "Transferee"). The Trustee and the Transferee collectively shall be referred to herein as the "Parties" and each as a "Party."

### RECITALS

**WHEREAS,** on July 20, 2010, the Transferee was named as a defendant in an adversary proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv. Fund Ltd., et al.,* Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS,** the Trustee alleges in the SIPA Adversary Proceeding that the Transferee received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning her net worth and has shown that she cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the

"Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with

Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and

Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among

other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the

Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry

Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting

the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the

adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall

file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and

the Fairfield Management Action dismissing the Transferee with prejudice and without costs to

any party.

3

(c)    If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)    On a confidential basis, the Transferee has made representations to the Trustee

about her assets and liabilities. After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.    Cooperation of the Transferee.

(a)    The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

4

(i)    The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)    Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or providing Testimony under this paragraph, the Transferee shall use her reasonable best efforts to have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony, the Transferee agrees her will provide the Trustee's counsel with an in-person interview after the Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the Trustee provided for herein, are in no way contingent on the substance of any information or other cooperation provided to the Trustee by the Transferee under this Agreement.

5

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and her executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield

Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of herself and her executors, administrators, heirs and assigns hereby

6

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

   (c)  Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.  Unknown Claims.

   "Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement

(the "Released Claims") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

     A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
     THAT THE CREDITOR OR RELEASING PARTY DOES NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to

the approval of the Bankruptcy Court as set forth herein: (i) she has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

8

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from she counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.     Additional Representations and Warranties by the Transferee.

       The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers and certain redemptions from the Fairfield Greenwich Funds; and (iii)

the Transferee is not aware of any claims against the Transferee by Madoff, BLMIS or any other

company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in

this Agreement.

8.     Further Assurances.

       Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.     Entire Agreement.

9

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby

10

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    <u>JURISDICTION; WAIVER OF JURY TRIAL</u>.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    <u>Expenses</u>.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without

limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    <u>Notices</u>.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

11

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

Address:
Jacqueline Harary
1075 Park Avenue
Apartment 1d
New York, New York 10128

By: _____
Jacqueline Harary, Transferee

With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "<u>Agreement</u>") is entered into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the "<u>Trustee</u>") for the liquidation proceedings (the "<u>SIPA Proceedings</u>") under the Securities Investor Protection Act ("<u>SIPA</u>") of Bernard L. Madoff Investment Securities LLC ("<u>BLMIS</u>") and the substantively consolidated estate of Bernard L. Madoff ("<u>Madoff</u>") pending before the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") and Richard Landsberger (the "<u>Transferee</u>").  The Trustee and the Transferee collectively shall be referred to herein as the "<u>Parties</u>" and each as a "<u>Party</u>."

**RECITALS**

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "<u>SIPA Adversary Proceeding</u>"), to recover subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee received subsequent transfers of customer property (as defined in SIPA section 78$lll$(4)) from BLMIS Account No(s).  1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "<u>Subsequent Transfers</u>");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the

"Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with

Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and

Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among

other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the

Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry

Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting

the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the

adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall

file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and

the Fairfield Management Action dismissing the Transferee with prejudice and without costs to

any party.

(c)    If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)    On a confidential basis, the Transferee has made representations to the Trustee

about his assets and liabilities. After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

(e)    Transferee has a claim for deferred compensation from Fairfield Greenwich

(Bermuda) Limited, which was valued at approximately $7,665,740 as of September 1, 2008, the

last date of such valuation. As part of this settlement, Transferee assigns to Trustee the proceeds

of his deferred compensation claim and agrees to provide the Trustee reasonable assistance in

obtaining the proceeds of such deferred compensation claim.

4

2.     Cooperation of the Transferee.

(a)     The Transferee agrees to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)     The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)     Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the Effective Date and within 60 days of a request by

5

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

6

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield

Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement

7

(the "Released Claims") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to

8

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee in accordance with its terms; (iii) the Transferee has executed this Agreement with the full knowledge of any and all rights that the Transferee may have with respect to the controversies herein compromised, and the Transferee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Transferee releases herein, and the Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Transferee releases herein.

7.      Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee has not received any money, funds, loans, transfers, assets, financial assistance, or financial accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee, other than the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this Agreement.

9

8.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

10

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT. IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

11

16.    <u>Notices</u>.

All notices or communications hereunder shall be in writing and delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto.  A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    <u>Captions and Rules of Construction</u>.

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

Address:                                          By: _____
Richard Landsberger                                   Richard Landsberger, Transferee
Flat 1, 15 Welbeck Street
London, W1G 9XF
United Kingdom


With copies to:
Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000


[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]


14

**Execution Copy**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Daniel Lipton (the "Transferee"). The Trustee and the Transferee collectively shall be

referred to herein as the "Parties" and each as a "Party."

### R E C I T A L S

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee

received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from

BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the

"Subsequent Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary

Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net

worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the

Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum

Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the

Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from

Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively,

the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in

their capacities as foreign representatives of the Fairfield Funds commenced an action against the

Transferee in New York state court, which was removed to federal court, and is currently

pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the

Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group,

et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against

the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the

Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the

Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with

Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield Management Action dismissing the Transferee without prejudice and without costs to any Party. The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and the Fairfield Management Action dismissing the Transferee with prejudice and without costs to any party.

3

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee has made representations to the Trustee

about his assets and liabilities.  After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities.  The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee.  If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.    Cooperation of the Transferee.

(a)     The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees.  The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings.  Such reasonable cooperation shall include, without limitation:

4

(i)     The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)     Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)     The Trustee's obligations hereunder, including the release and dismissal by the Trustee provided for herein, are in no way contingent on the substance of any information or other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee hereby releases and forever discharges: (i) the Transferee and his executors, administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned, including, without limitation, the Assigned Claims, against the Transferee based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

6

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section

3(c) herein.

     (c)     Notwithstanding the foregoing, each Party retains the right to enforce the terms

and conditions of this Agreement.

4.     <u>Unknown Claims.</u>

     "<u>Unknown Claims</u>" shall mean any claim released herein at Section 3 of this Agreement

(the "<u>Released Claims</u>") that a Party does not know of or suspect to exist as of the date of this

Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the

provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies

herein), which provides:

     A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
     THAT THE CREDITOR OR RELEASING PARTY DOES NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 3 of this Agreement.

5.      No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and expressly denies, any liability or wrongdoing and further expressly denies the factual basis and legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management Action.

6.      General Representations and Warranties.

(a)      The Trustee represents and warrants that, as of the date hereof, and subject to the approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of his obligations under this Agreement.

(b)      The Transferee represents and warrants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

8

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from his counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.    Additional Representations and Warranties by the Transferee.

    The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the

Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or

BLMIS other than the claims referenced in this Agreement.

8.    Further Assurances.

    Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

    This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties.  No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against

the Parties and their respective estates, heirs, personal representatives, executors, successors, and

permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of

which so executed and delivered shall be deemed to be an original and all of which, taken

together, shall constitute one and the same document.  Each Party may evidence its execution of

this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the

same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be

governed by and construed in accordance with the laws of the State of New York (without regard

to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby

waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation, by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

                                            **IRVING H. PICARD, AS TRUSTEE FOR THE
                                            LIQUIDATION PROCEEDINGS OF BERNARD L.
                                            MADOFF INVESTMENT SECURITIES LLC AND
                                            THE SUBSTANTIVELY CONSOLIDATED
                                            BANKRUPTCY CASE OF BERNARD L. MADOFF**

                                            By: _____
                                                  Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention:  Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

Address:                                         By: _____
Daniel Lipton                                         Daniel Lipton, Transferee
215 East 80th Street
Apt 2H
New York, NY 10075


With copies to:
Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000


[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

**Execution Copy**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the "Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Mark McKeefry (the "Transferee"). The Trustee and the Transferee collectively shall be referred to herein as the "Parties" and each as a "Party."

## RECITALS

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

WHEREAS, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

WHEREAS, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

NOW THEREFORE, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield Management Action dismissing the Transferee without prejudice and without costs to any Party. The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and the Fairfield Management Action dismissing the Transferee with prejudice and without costs to any party.

3

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee has made representations to the Trustee

about his assets and liabilities. After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.      Cooperation of the Transferee.

(a)     The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

    (i)     The Transferee's participation in any discovery as though the Transferee were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

    (ii)    Within 21 days of the Effective Date, the Transferee shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry.  The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee more than six years before the commencement of the SIPA Proceedings.  To the extent that confidentiality obligations restrict the Transferee from using or providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to have those restrictions removed.  If the Transferee fails to provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

    (b)    The Trustee's obligations hereunder, including the release and dismissal by the Trustee provided for herein, are in no way contingent on the substance of any information or other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    <u>Releases.</u>

(a)    In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee hereby releases and forever discharges: (i) the Transferee and his executors, administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from any and all past, present, or future claims or causes of action (including any suit, petition, demand, or other claim in law, equity or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned, including, without limitation, the Assigned Claims, against the Transferee based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

6

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), now existing or arising in the future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

    (c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms and conditions of this Agreement.

4.    <u>Unknown Claims</u>.

    "<u>Unknown Claims</u>" shall mean any claim released herein at Section 3 of this Agreement (the "<u>Released Claims</u>") that a Party does not know of or suspect to exist as of the date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
        THAT THE CREDITOR OR RELEASING PARTY DOES NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

8

knowledge of any and all rights that the Transferee may have with respect to the controversies herein compromised, and the Transferee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Transferee releases herein, and the Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Transferee releases herein.

7.    Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee has not received any money, funds, loans, transfers, assets, financial assistance, or financial accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee, other than the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this Agreement.

8.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

9

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10. Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11. Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12. Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13. Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice

10

of New York law provision is or has become unreasonable in any legal proceeding.

14.     JURISDICTION; WAIVER OF JURY TRIAL.

(a)     THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION

OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN

LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE

EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT

REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)     EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.     Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without

limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.     Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

12

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

<u>**TRUSTEE**</u>

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
        Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

Address:
Mark McKeefry

202 Round Hill Rd
Greenwich, CT 06831

By: _____
Mark McKeefry, Transferee

With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

<u>**Execution Copy**</u>

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "<u>Agreement</u>") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"<u>Trustee</u>") for the liquidation proceedings (the "<u>SIPA Proceedings</u>") under the Securities

Investor Protection Act ("<u>SIPA</u>") of Bernard L. Madoff Investment Securities LLC ("<u>BLMIS</u>")

and the substantively consolidated estate of Bernard L. Madoff ("<u>Madoff</u>") pending before the

United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>")

and Gordon McKenzie (the "<u>Transferee</u>").  The Trustee and the Transferee collectively shall be

referred to herein as the "<u>Parties</u>" and each as a "<u>Party</u>."

**R E C I T A L S**

**WHEREAS,** on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "<u>SIPA Adversary Proceeding</u>"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS,** the Trustee alleges in the SIPA Adversary Proceeding that the Transferee

received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from

BLMIS Account No(s).  1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the

"<u>Subsequent Transfers</u>");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Greenwich Sentry Assigned Claims, the "Assigned Claims").

2

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.      Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)      As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"). The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)      Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file a notice in the SIPA Adversary Proceeding dismissing the Transferee with prejudice and without costs to any party.

(c)      If the Settlement Order is not entered by the Bankruptcy Court in the SIPA Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab initio*; and (ii) the Parties may not use or rely on any portion hereof or any statement herein for any purpose.

(d)      On a confidential basis, the Transferee has made representations to the Trustee about his assets and liabilities. After the signing of this Agreement and before the Trustee files the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

3

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.    Cooperation of the Transferee.

(a)    The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)    The Transferee's participation in any discovery as though the Transferee

were still a party in the SIPA Adversary Proceeding. Notwithstanding the foregoing, the Trustee

shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee.

(ii)    Within 21 days of the Effective Date, the Transferee shall provide, subject

to confidentiality obligations, to the Trustee, copies of any official statement, deposition

testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits

to the same, relating to BLMIS, Madoff, the SIPA Proceedings, or the Fairfield Greenwich

Funds, including without limitation, any such Testimony related to the *Anwar* class action, the

Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The

obligation in the preceding sentence shall not apply to any transmittal affidavits or any

Testimony given by the Transferee more than six years before the commencement of the SIPA

Proceedings. To the extent that confidentiality obligations restrict the Transferee from using or

4

providing Testimony under this paragraph, the Transferee shall use his reasonable best efforts to

have those restrictions removed. If the Transferee fails to provide to the Trustee any Testimony,

the Transferee agrees he will provide the Trustee's counsel with an in-person interview after the

Effective Date and within 60 days of a request by the Trustee for such an interview, at a time and

place to be negotiated in good faith by counsel for the Transferee and counsel for the Trustee, or

at such other time agreed to among counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    <u>Releases.</u>

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, or the Fairfield

Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals,

agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or

causes of action (including any suit, petition, demand, or other claim in law, equity, or

arbitration) and from any and all allegations of liability or damages (including any allegation of

duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, or the

Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

6

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms and conditions of this Agreement.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the date of this Agreement.  With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding.

6.    <u>General Representations and Warranties</u>.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of his obligations under this Agreement.

(b)    The Transferee represents and warrants that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee in accordance with its terms; (iii) the Transferee has executed this Agreement with the full knowledge of any and all rights that the Transferee may have with respect to the controversies herein compromised, and the Transferee has received or has had the opportunity to obtain independent legal advice from his counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Transferee releases herein, and the Transferee has not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Transferee releases herein.

8

7.     Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee has not received any money, funds, loans, transfers, assets, financial assistance, or financial accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee of any funds or property originating from Madoff or BLMIS to an initial transferee, other than the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this Agreement.

8.     Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.     Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA Adversary Proceeding, and this Agreement, including, without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

11

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case addressed and copied as set forth on the applicable signature page hereto. A Party may change its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein. The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

12

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
        Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

By: _____

Gordon McKenzie, Transferee

Address:
Gordon McKenzie
668469 20th Sideroad
Mulmur, Ontario, Canada, L9V 0W2

With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

**SETTLEMENT AGREEMENT AND RELEASE**

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered

into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the

"Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities

Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS")

and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

and Santiago Reyes (the "Transferee") and Selecta Financial Corporation Inc. (with

"Transferee," the "Transferee Defendants"). The Trustee and the Transferee Defendants

collectively shall be referred to herein as the "Parties" and each as a "Party."

**RECITALS**

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary

proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv.*

*Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover

subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and

Creditor Law, and other applicable laws;

**WHEREAS**, on June 6, 2012, the Trustee commenced an adversary proceeding in the

Bankruptcy Court against Selecta Financial Corporation Inc. in an action captioned *Picard v.*

*Barreneche, Inc., et al.*, Adv. Pro. No. 12-01702 (SMB) (with the "SIPA Adversary Proceeding,"

the "SIPA Adversary Proceedings"), to recover subsequent transfers from BLMIS under the

Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee Defendants received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee Defendants deny the Trustee's allegations in the SIPA Adversary Proceedings and contest the amount of Subsequent Transfers the Transferee Defendants received;

**WHEREAS**, the Transferee Defendants have provided to the Trustee information concerning their net worth and have shown that they cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceedings;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee Defendants received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

2

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee Defendants (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee Defendants (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.    Dismissal of the Transferee Defendants from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this

Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield

Management Action dismissing the Transferee without prejudice and without costs to any Party.

The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA

Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)     Within 5 business days of the Settlement Order becoming a final, non-appealable

order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceedings

and the Fairfield Management Action dismissing the Transferee Defendants with prejudice and

without costs to any party.

(c)     If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)     On a confidential basis, the Transferee Defendants have made representations to

the Trustee about their assets and liabilities. After the signing of this Agreement and before the

Trustee files the 9019 Motion with the Bankruptcy Court, the Transferee Defendants shall

provide to the Trustee verified financial statements, which shall set forth the Transferee

Defendants' net worth, and detail Transferee Defendants' assets and liabilities. The Trustee shall

maintain the confidentiality of all personal financial information provided by the Transferee

Defendants. If such verified financial statements are materially different from the prior

4

representations made by the Transferee Defendants, this Agreement shall be deemed void *ab initio.*

2.    Cooperation of the Transferee Defendants.

(a)    The Transferee Defendants agree to provide reasonable good faith cooperation with the Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent transferees. The reasonable cooperation required hereunder shall last until the final termination of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

(i)    The Transferee Defendants' participation in any discovery as though the Transferee Defendants were still a party in the SIPA Adversary Proceedings and/or the Fairfield Management Action. Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any disruption or inconvenience to the Transferee Defendants.

(ii)    Within 21 days of the Effective Date, the Transferee Defendants shall provide, subject to confidentiality obligations, to the Trustee, copies of any official statement, deposition testimony, and/or interview transcript ("Testimony"), given by the Transferee Defendants, including exhibits to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any other SEC investigation or inquiry. The obligation in the preceding sentence shall not apply to any transmittal affidavits or any Testimony given by the Transferee Defendants more than six years before the commencement of the SIPA Proceedings. To the extent that confidentiality obligations restrict the Transferee Defendants from using or

5

providing Testimony under this paragraph, the Transferee Defendants shall use their reasonable

best efforts to have those restrictions removed.  If the Transferee Defendants fail to provide to

the Trustee any Testimony, the Transferee Defendants agree they will provide the Trustee's

counsel with an in-person interview after the Effective Date and within 60 days of a request by

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee Defendants and counsel for the Trustee, or at such other time agreed to among

counsel.

(b)    The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee Defendants under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee Defendants and their

executors, administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate

family members; and (iii) all of the Transferee Defendants' attorneys, professionals, agents, and

consultants, from any and all past, present, or future claims or causes of action (including any

suit, petition, demand, or other claim in law, equity or arbitration) and from any and all

allegations of liability or damages (including any allegation of duties, debts, reckonings,

contracts, controversies, agreements, promises, damages, responsibilities, covenants, or

accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration,

absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability,

negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys'

fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in

Section 4 herein), that are, have been, could have been, or might in the future be, asserted by the

Trustee on behalf of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee

has been assigned, including, without limitation, the Assigned Claims, against the Transferee

Defendants based on, arising out of, or relating in any way to BLMIS, Madoff, the consolidated

BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary

Proceedings, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set

forth in Section 3(c) herein.

(b)      In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee Defendants, on behalf of themselves and their executors, administrators, heirs and

assigns hereby releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys,

professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and

all claims or causes of action (including any suit, petition, demand, or other claim in law, equity,

or arbitration) and from any and all allegations of liability or damages (including any allegation

of duties, debts, reckonings, contracts, controversies, agreements, promises, damages,

responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or

indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability,

or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary

duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown

(including Unknown Claims, as defined in Section 4 herein), now existing or arising in the

future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff

Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceedings, the

7

Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(c)    Notwithstanding the foregoing, each Party retains the right to enforce the terms and conditions of this Agreement.

4.    Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of any domestic or foreign jurisdiction that would have the effect of limiting the application of the terms of the releases set forth herein at Section 3 of this Agreement.

5.    No Admissions.

In connection with this Agreement, the Transferee Defendants do not admit or concede, and expressly deny, any liability or wrongdoing and further expressly deny the factual basis and legal validity of the claims in the SIPA Adversary Proceedings and the Fairfield Management

Action.

6.    General Representations and Warranties.

(a)    The Trustee represents and warrants that, as of the date hereof, and subject to the approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder and has taken all necessary action to authorize the execution, delivery and performance of his obligations under this Agreement.

(b)    The Transferee Defendants represent and warrant that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth herein: (i) they have the full power, authority, legal right and capacity to execute and deliver this Agreement and to perform their obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee Defendants and constitutes the valid and binding agreement of the Transferee Defendants, enforceable against the Transferee Defendants in accordance with its terms; (iii) the Transferee Defendants have executed this Agreement with the full knowledge of any and all rights that the Transferee Defendants may have with respect to the controversies herein compromised, and the Transferee Defendants have received or have had the opportunity to obtain independent legal advice from their counsel with regard to the facts relating to said controversies and with respect to the rights arising out of said facts; and (iv) no other person or entity, other than those specifically identified herein, has any interest in the matters that the Transferee Defendants release herein, and the Transferee Defendants have not assigned or transferred or purported to assign or transfer to any such third person or party all or any portion of the matters that the Transferee Defendants release herein.

7.    Additional Representations and Warranties by the Transferee Defendants.

9

The Transferee Defendants represent and warrant that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

Defendants have not received any money, funds, loans, transfers, assets, financial assistance, or

financial accommodation from Madoff, BLMIS, or any other company or entity owned or

controlled by Madoff or BLMIS; and (ii) the Transferee Defendants are not immediate, mediate,

or subsequent transferees of any funds or property originating from Madoff or BLMIS to an

initial transferee, other than the Subsequent Transfers; and (iii) the Transferee Defendants are not

aware of any claims against the Transferee Defendants by Madoff, BLMIS or any other company

or entity owned or controlled by Madoff or BLMIS other than the claims referenced in this

Agreement.

8.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous

agreements, representations and understandings of the Parties concerning the subject matter

hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by

written instrument signed by all Parties. No waiver of any provision of this Agreement shall be

deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute

a continuing waiver.

11.    <u>Successors</u>.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    <u>Counterparts; Electronic Copy of Signatures</u>.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document.  Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    <u>Governing Law</u>.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA.  Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of New York law provision is or has become unreasonable in any legal proceeding.

14.    <u>JURISDICTION; WAIVER OF JURY TRIAL</u>.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS

AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE

OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST

EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY

JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS

AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA

Adversary Proceedings, the Fairfield Management Action, and this Agreement, including,

without limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or

sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,

by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case

addressed and copied as set forth on the applicable signature page hereto.  A Party may change

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.    Captions and Rules of Construction.

The captions in this Agreement are inserted for convenience and reference and neither

define nor limit the scope or content of any of the provisions herein.  The Parties acknowledge

that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities

herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14

**TRANSFEREE DEFENDANTS**

Address:
Santiago Reyes
480 N. Mashta Dr.
Key Biscayne, FL 33149

By: _____
    Santiago Reyes, Transferee


Address:
Selecta Financial Corporation Inc.
480 N. Mashta Dr.
Key Biscayne, FL 33149

By: _____
    Selecta Financial Corporation Inc., Transferee


With copies to:

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000


[TRANSFEREE DEFENDANTS SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

**Execution Copy**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is entered into as of February 20, 2019 between Irving H. Picard, in his capacity as the trustee (the "Trustee") for the liquidation proceedings (the "SIPA Proceedings") under the Securities Investor Protection Act ("SIPA") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff") pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Andrew Smith (the "Transferee"). The Trustee and the Transferee collectively shall be referred to herein as the "Parties" and each as a "Party."

## R E C I T A L S

**WHEREAS**, on July 20, 2010, the Transferee was named as a defendant in an adversary proceeding in the SIPA Proceedings in the Bankruptcy Court captioned *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-01239 (SMB) (the "SIPA Adversary Proceeding"), to recover subsequent transfers from BLMIS under the Bankruptcy Code, the New York Debtor and Creditor Law, and other applicable laws;

**WHEREAS**, the Trustee alleges in the SIPA Adversary Proceeding that the Transferee received subsequent transfers of customer property (as defined in SIPA section 78*lll*(4)) from BLMIS Account No(s). 1FN012, 1FN045, 1FN069, 1FN070, 1G0092, 1G0371 (the "Subsequent Transfers");

**WHEREAS**, the Transferee denies the Trustee's allegations in the SIPA Adversary Proceeding and contests the amount of Subsequent Transfers the Transferee received;

**WHEREAS**, the Transferee has provided to the Trustee information concerning his net worth and has shown that he cannot reasonably pay the Subsequent Transfers sought by the Trustee in the SIPA Adversary Proceeding;

**WHEREAS**, on November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted in part the Extraterritoriality Motion to Dismiss as to subsequent transfers the Transferee received from Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited (collectively, the "Fairfield Funds") in the SIPA Proceedings (ECF No. 14495);

**WHEREAS**, Kenneth M. Krys and Charlotte Caulfield (together, the "Liquidators"), in their capacities as foreign representatives of the Fairfield Funds commenced an action against the Transferee in New York state court, which was removed to federal court, and is currently pending as an adversary proceeding in the chapter 15 proceedings of the Fairfield Funds in the Bankruptcy Court in an action captioned *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (SMB) (the "Fairfield Management Action");

**WHEREAS**, in the Fairfield Management Action, the Liquidators allege claims against the Transferee;

**WHEREAS**, on May 9, 2011, the Trustee entered into a settlement agreement with the Liquidators in the SIPA Proceedings which, among other things, assigned to the Trustee the Liquidators' claims against the Transferee (the "Fairfield Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry, L.P. ("Greenwich Sentry"), as amended on July 7, 2011 which, among other

2

things, assigned to the Trustee the claims of Greenwich Sentry against the Transferee (the "Greenwich Sentry Assigned Claims");

**WHEREAS**, on May 17, 2011, the Trustee entered into a settlement agreement with Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners" and, with the Fairfield Funds and Greenwich Sentry, the "Fairfield Greenwich Funds"), as amended on July 7, 2011 which, among other things, assigned to the Trustee the claims of Greenwich Sentry Partners against the Transferee (the "Greenwich Sentry Partners Assigned Claims" and, with the Fairfield Sentry Assigned Claims and the Greenwich Sentry Assigned Claims, the "Assigned Claims");

**WHEREAS**, on January 24, 2019, the Court entered a so ordered stipulation substituting the Trustee as the plaintiff in the Fairfield Management Action (ECF No. 87).

**NOW THEREFORE**, for the good and valuable consideration set forth herein, the adequacy and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.  Dismissal of the Transferee from Pending Actions; Effective Date; and Financials.

(a)    As soon as practicable after the execution of this Agreement: (i) the Trustee shall file a motion under Fed. R. Bankr. P. 9019 in the SIPA Proceedings seeking approval of this Agreement (the "9019 Motion"), and (ii) the Trustee shall file a notice in the Fairfield Management Action dismissing the Transferee without prejudice and without costs to any Party. The Parties shall use their reasonable best efforts to obtain entry of an order in the SIPA Proceedings approving this Agreement (the "Settlement Order") as promptly as practicable.

(b)    Within 5 business days of the Settlement Order becoming a final, non-appealable order (the "Effective Date"), the Trustee shall file notices in the SIPA Adversary Proceeding and the Fairfield Management Action dismissing the Transferee with prejudice and without costs to any party.

3

(c)    If the Settlement Order is not entered by the Bankruptcy Court in the SIPA

Proceedings within 90 days after the Trustee files the Rule 9019 Motion, or within such

additional time as mutually agreed upon by the Parties: (i) this Agreement shall become void *ab*

*initio*; (ii) the Parties may not use or rely on any portion hereof or any statement herein for any

purpose; and (iii) the Trustee may file a motion to add Transferee as a defendant in the Fairfield

Management Action asserting the causes of action set forth in the Fairfield Management Action,

with the claims against the Transferee in the Fairfield Management Action deemed to have been

filed as of May 29, 2009 for purposes of determining any statute of limitations defense.

(d)    On a confidential basis, the Transferee has made representations to the Trustee

about his assets and liabilities. After the signing of this Agreement and before the Trustee files

the 9019 Motion with the Bankruptcy Court, the Transferee shall provide to the Trustee verified

financial statements, which shall set forth the Transferee's net worth, and detail Transferee's

assets and liabilities. The Trustee shall maintain the confidentiality of all personal financial

information provided by the Transferee. If such verified financial statements are materially

different from the prior representations made by the Transferee, this Agreement shall be deemed

void *ab initio*.

2.    <u>Cooperation of the Transferee</u>.

(a)    The Transferee agrees to provide reasonable good faith cooperation with the

Trustee's ongoing investigation of the BLMIS fraud and with efforts to recover customer

property, as that term is defined under SIPA section 78*lll*(4), from initial and subsequent

transferees. The reasonable cooperation required hereunder shall last until the final termination

of the SIPA Proceedings. Such reasonable cooperation shall include, without limitation:

4

(i)     The Transferee's participation in any discovery as though the Transferee

were still a party in the SIPA Adversary Proceeding and/or the Fairfield Management Action.

Notwithstanding the foregoing, the Trustee shall make all reasonable efforts to limit any

disruption or inconvenience to the Transferee.   .

(ii)     Within 21 days of the Effective Date, the Transferee shall provide, subject

to confidentiality obligations, to the Trustee, copies of any official statement, deposition

testimony, and/or interview transcript ("Testimony"), given by the Transferee, including exhibits

to the same, relating to BLMIS, Madoff, the SIPA Proceedings, the Fairfield Management

Action, or the Fairfield Greenwich Funds, including without limitation, any such Testimony

related to the *Anwar* class action, the Massachusetts Securities Division investigation, or any

other SEC investigation or inquiry.  The obligation in the preceding sentence shall not apply to

any transmittal affidavits or any Testimony given by the Transferee more than six years before

the commencement of the SIPA Proceedings.  To the extent that confidentiality obligations

restrict the Transferee from using or providing Testimony under this paragraph, the Transferee

shall use his reasonable best efforts to have those restrictions removed.  If the Transferee fails to

provide to the Trustee any Testimony, the Transferee agrees he will provide the Trustee's

counsel with an in-person interview after the Effective Date and within 60 days of a request by

the Trustee for such an interview, at a time and place to be negotiated in good faith by counsel

for the Transferee and counsel for the Trustee, or at such other time agreed to among counsel.

(b)     The Trustee's obligations hereunder, including the release and dismissal by the

Trustee provided for herein, are in no way contingent on the substance of any information or

other cooperation provided to the Trustee by the Transferee under this Agreement.

3.    Releases.

(a)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Trustee hereby releases and forever discharges: (i) the Transferee and his executors,

administrators, heirs and assigns (as applicable); (ii) the Transferee's immediate family

members; and (iii) all of the Transferee's attorneys, professionals, agents, and consultants, from

any and all past, present, or future claims or causes of action (including any suit, petition,

demand, or other claim in law, equity or arbitration) and from any and all allegations of liability

or damages (including any allegation of duties, debts, reckonings, contracts, controversies,

agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind,

nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in

tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross

negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or

disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein),

that are, have been, could have been, or might in the future be, asserted by the Trustee on behalf

of BLMIS, and/or the consolidated BLMIS/Madoff Estate, or that the Trustee has been assigned,

including, without limitation, the Assigned Claims, against the Transferee based on, arising out

of, or relating in any way to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the

BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield

Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(b)    In consideration for the covenants and agreements in this Agreement and for other

good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,

the Transferee, on behalf of himself and his executors, administrators, heirs and assigns hereby

6

releases and forever discharges: (i) the Trustee; (ii) all of the Trustee's attorneys, professionals, agents and consultants; and (iii) BLMIS and its consolidated estate from any and all claims or causes of action (including any suit, petition, demand, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability, or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty, or otherwise (including attorneys' fees, costs, or disbursements) known or unknown (including Unknown Claims, as defined in Section 4 herein), now existing or arising in the future, arising out of or in any way related to BLMIS, Madoff, the consolidated BLMIS/Madoff Estate, the BLMIS Accounts, the Subsequent Transfers, the SIPA Adversary Proceeding, the Fairfield Management Action, or the Fairfield Greenwich Funds, except as set forth in Section 3(c) herein.

(c)     Notwithstanding the foregoing, each Party retains the right to enforce the terms and conditions of this Agreement.

4.     Unknown Claims.

"Unknown Claims" shall mean any claim released herein at Section 3 of this Agreement (the "Released Claims") that a Party does not know of or suspect to exist as of the date of this Agreement. With respect to any and all Released Claims, the Parties hereby expressly waive the provisions, rights, and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
THAT THE CREDITOR OR RELEASING PARTY DOES NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

The Parties also hereby waive any and all provisions, rights, and benefits conferred by any law of

any domestic or foreign jurisdiction that would have the effect of limiting the application of the

terms of the releases set forth herein at Section 3 of this Agreement.

5.      No Admissions.

In connection with this Agreement, the Transferee does not admit or concede, and

expressly denies, any liability or wrongdoing and further expressly denies the factual basis and

legal validity of the claims in the SIPA Adversary Proceeding and the Fairfield Management

Action.

6.      General Representations and Warranties.

(a)      The Trustee represents and warrants that, as of the date hereof, and subject to the

approvals of the Bankruptcy Court as set forth herein, he has the full power, authority and legal

right to execute and deliver this Agreement and to perform his obligations hereunder and has

taken all necessary action to authorize the execution, delivery and performance of his obligations

under this Agreement.

(b)      The Transferee represents and warrants that, as of the date hereof, and subject to

the approval of the Bankruptcy Court as set forth herein: (i) he has the full power, authority,

legal right and capacity to execute and deliver this Agreement and to perform his obligations

hereunder; (ii) this Agreement has been duly executed and delivered by the Transferee and

constitutes the valid and binding agreement of the Transferee, enforceable against the Transferee

in accordance with its terms; (iii) the Transferee has executed this Agreement with the full

8

knowledge of any and all rights that the Transferee may have with respect to the controversies

herein compromised, and the Transferee has received or has had the opportunity to obtain

independent legal advice from his counsel with regard to the facts relating to said controversies

and with respect to the rights arising out of said facts; and (iv) no other person or entity, other

than those specifically identified herein, has any interest in the matters that the Transferee

releases herein, and the Transferee has not assigned or transferred or purported to assign or

transfer to any such third person or party all or any portion of the matters that the Transferee

releases herein.

7.    Additional Representations and Warranties by the Transferee.

The Transferee represents and warrants that for the six-year period prior to the

commencement of the SIPA Proceedings: (i) other than the Subsequent Transfers, the Transferee

has not received any money, funds, loans, transfers, assets, financial assistance, or financial

accommodation from Madoff, BLMIS, or any other company or entity owned or controlled by

Madoff or BLMIS; and (ii) the Transferee is not an immediate, mediate, or subsequent transferee

of any funds or property originating from Madoff or BLMIS to an initial transferee, other than

the Subsequent Transfers; and (iii) the Transferee is not aware of any claims against the

Transferee by Madoff, BLMIS or any other company or entity owned or controlled by Madoff or

BLMIS other than the claims referenced in this Agreement.

8.    Further Assurances.

Each Party shall execute and deliver any document or instrument reasonably requested by

the other Party after the date of this Agreement to effectuate the intent of this Agreement.

9.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding between the Parties

pertaining to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings of the Parties concerning the subject matter hereof.

10.    Amendment; Waiver.

This Agreement may not be terminated, amended or modified in any way except by written instrument signed by all Parties. No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof; nor shall any such waiver constitute a continuing waiver.

11.    Successors.

This Agreement shall be binding upon, inure to the benefit of and be enforceable against the Parties and their respective estates, heirs, personal representatives, executors, successors, and permitted assigns.

12.    Counterparts; Electronic Copy of Signatures.

This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same document. Each Party may evidence its execution of this Agreement by delivery to the other Party of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

13.    Governing Law.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principles of conflicts of law thereof), the Bankruptcy Code and SIPA. Each Party hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice

of New York law provision is or has become unreasonable in any legal proceeding.

14.    JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION
OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER IN
LAW OR EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT.  IN THE
EVENT THE SIPA PROCEEDINGS ARE CLOSED BY A FINAL DECREE AND NOT
REOPENED, THE PARTIES AGREE THAT ANY DISPUTE ARISING OUT OF THIS
AGREEMENT MAY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE
OF NEW YORK IN NEW YORK COUNTY.

(b)    EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST
EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY
JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS
AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.    Expenses.

Each Party shall bear its respective expenses relating to or arising out of the SIPA
Adversary Proceeding, the Fairfield Management Action, and this Agreement, including, without
limitation, fees for attorneys, experts, consultants, accountants and other advisors.

16.    Notices.

All notices or communications hereunder shall be in writing and delivered by hand or
sent by registered or certified mail, return receipt requested, by overnight mail with confirmation,
by facsimile (receipt confirmed) or by electronic means (receipt confirmed), in each case
addressed and copied as set forth on the applicable signature page hereto.  A Party may change

11

its address for receiving notice by giving notice of a new address in the manner provided herein.

17.      <u>Captions and Rules of Construction.</u>

The captions in this Agreement are inserted for convenience and reference and neither define nor limit the scope or content of any of the provisions herein. The Parties acknowledge that no Party shall be deemed to be the principal drafter of this agreement, and no ambiguities herein may be construed against any Party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGES TO FOLLOW]**

12

**IN WITNESS WHEREOF,** each Party has caused this Agreement to be duly executed

and delivered as of the date set forth above.

**TRUSTEE**

**IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION PROCEEDINGS OF BERNARD L.
MADOFF INVESTMENT SECURITIES LLC AND
THE SUBSTANTIVELY CONSOLIDATED
BANKRUPTCY CASE OF BERNARD L. MADOFF**

By: _____
Irving H. Picard, Trustee

Address:
Irving H. Picard
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Facsimile: (212) 589-4201

With copies to:
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attention: Oren Warshavsky
Facsimile: (212) 589-4201

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

13

**TRANSFEREE**

Address:
Andrew Smith
580 North Greencraig Road
Los Angeles, California 90049

By: _____
Andrew Smith, Transferee

With copies to:
Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

[TRANSFEREE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

14