# EXHIBIT A



# BERNARD L. MADOFF
## Investment Securities
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

**TAX ID NO.** [redacted] [redacted] [redacted]

**ACCT# ASSIGNED** CM360-3-4/0

**Mr./Mrs./Ms. NAME:** MICHAEL AND MERYL MANN, Jt WROS
**STREET:** 526 EAST SHORE ROAD
**CITY:** GREAT NECK  **STATE:** NY  **ZIP:** 11024
**TEL. NUMBER:** 212-840-2171 BUSINESS   RESIDENCE [redacted]
**REG. REP:** R. Spring

WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE "KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.

**RESIDENCE:** SAME (AS ABOVE)

**NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER):**
**EMPLOYER'S ADDRESS:** BETTY'S THINGS Sportswear - 1400 Broadway NYC 10018
**OCCUPATION:** DRESS MANUFACTURER

**BANK REFERENCE AND ADDRESS:** NATIONAL WESTMINSTER BANK

**OTHER BROKERAGE ACCOUNTS WITH:** Bankers Trust 280 Park Ave NYC

**CLIENT INTRODUCED BY:** RICHARD SPRING

### FOR OFFICE USE ONLY

R. R.'S ESTIMATE OF CLIENTS NET WORTH _____

IS CLIENT OVER 21 YEARS OF AGE    YES_____    NO_____

HOW LONG HAVE YOU KNOWN CLIENT _____

CLIENT IS CITIZEN OF _____

APPROVED BY _____

|  | DATE SENT TO CLIENT |  | DATE SENT TO CLIENT |
|---|---|---|---|
| MARGIN AGREEMENT | _____ | MAIL WAIVER FORM | _____ |
| JOINT AGREEMENT | _____ | MULTIPLE A/C FORM | _____ |
| CORPORATE ACCOUNT FORM | _____ | CORPORATE RESOLUTION | _____ |
| CO-PARTNERSHIP FORM | _____ | | |

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00256535



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

## JOINT ACCOUNT AGREEMENT

**To Bernard L. Madoff** Investment Securities

In consideration of your accepting and carrying for the undesigned a joint account introduced to you by undersigned's broker, the undersigned jointly and severally agree that each of them shall have authority on behalf of the joint account to buy, sell (including short sales) and otherwise deal in, through you as brokers, stocks, bonds and other securities and commodities, on margin or otherwise; to receive on behalf of the joint account demands, notices, confirmations, reports, statements of account and communications of every kind; to receive on behalf of the joint account money, securities and property of every kind and to dispose of same; to make on behalf of the joint account agreements relating to any of the foregoing matters and to terminate or modify the same or waive any of the provisions thereof; and generally to deal with you on behalf of the joint account as fully and completely as if he alone were interested in said account, all without notice to the other or others interested in the said account. You are authorized to follow the instructions of any of the undersigned in every respect concerning the said joint account with you and to make deliveries to any of the undersigned, or upon his instructions, of any or all securities in said joint account, and to make payments to any of the undersigned, or upon his order, of any or all monies at any time or from time to time in the said joint account as he may order and direct, even if such deliveries and/or payments shall be made to him personally, and not for the joint account of the undersigned. In the event of any such deliveries of securities or payments of monies to any of the undersigned as aforesaid, you shall be under no duty or obligation to inquire into the purpose or propriety of any such demand for delivery of securities or payment of monies, and you shall not be bound to see to the application or disposition of the said securities and/or monies so delivered or paid to any of the undersigned or upon his order. The authority hereby conferred shall remain in force until written notice of the revocation addressed to you is delivered at your main office.

The liability of the undersigned with respect to said account shall be joint and several. The undersigned further agree jointly and severally that all property you may at any time be holding or carrying for any one or more of the undersigned shall be subject to a lien in your favor for the discharge of the obligations of the joint account to you, such lien to be in addition to and not in substitution of the rights and remedies you otherwise would have.

It is further agreed that in the event of the death of either or any of the undersigned, the survivor or survivors shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such proceeding, require such papers and inheritance or estate tax waivers, retain such portion of and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of any of the undersigned who shall have died shall be liable and each survivor shall continue liable jointly and severally, to you for any net debt balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by you of the written notice of the death of the decedent or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 01-374 0891

*(a) It is the express intention of the undersigned to create an estate or account as joint tenants with rights of survivorship and not as tenants in common. In the event of the death of either of the undersigned, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions and therefore held, without in any manner releasing the decedent's estate from the liability provided for in the next preceding paragraph.

*(b) In the event of the death of either or any of the undersigned the interest in the account as of the close of business on the date of the death of the decedent (or on the next following business day if the date of death is not on a business day), shall be as follows:

_____ or his or her estate _____ %
Name of Participant

_____ or his or her estate _____ %
Name of Participant

_____ or his or her estate _____ %
Name of Participant

but taxes, costs, expenses or other charges becoming a lien against or being payable out of the account as the result of the death of the decedent, or through the exercise by his or her estate or representatives of any rights in the account shall, so far as possible, be deducted from the interest of the estate of such decedent. This provision shall not release the decedent's estate from the liability provided for in the paragraph next preceding "(a)" above.

The undersigned request you to open the joint account under the following designation:
_Michael Mann and Meryl Mann, JT WROS_

Subject to the provisions hereof, all notices or communications for the undersigned in respect of the joint account are to be directed to

Name _MICHAEL + MERYL MANN_
Address _506 EAST SHORE RD._
City _GREAT NECK_ State _NY_ ZIP _11024_

Each of the undersigned has signed the Customer Agreement and Loan Consent which are intended to cover, in addition to the provisions hereof, the terms upon which the joint account is to be carried.

Dated, _12/16/95_    Very truly yours,

_[signature]_
_Meryl Mann_

*Strike out paragraph (a) or (b) whichever is inapplicable, and if paragraph (b) is retained, fill in the names and percentage amounts of the interests of the respective parties.

AMF00256537

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payors including banks, corporations and funds must withhold 10% of all dividends or interest paid UNLESS you complete and return the form at the bottom of this page.

### Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as with-holding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payor) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payor is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".
Please sign the form and return it to us.

Even if you have already provided this information it is required by the IRS that all information requested below be provided again.

Thank you for your cooperation.

(Corporations are exempt from this requirement and should not return this form.)

---

### SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): _____

Taxpayer Identification Number: [redacted]

Name: MICHAEL + MERYL MANN

Address: 526 EAST SHORE RD. GREAT NECK, NY 11024

(Signature) _[signed]_

"Under penalties of perjury, I certify that the number shown on this form is my correct Taxpayer Identification Number".

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00256538

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 19 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the
order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00256539

### 7. BROKER AS AGENT

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

### 8. CONFIRMATIONS AND STATEMENTS

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

### 9. SUCCESSORS

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

### 10. CHOICE OF LAWS

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF ___NY___ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF ___NY___

### 11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

### 12. ARBITRATION DISCLOSURES

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00256540



### 13. ARBITRATION

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 18, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

### 14. DISCLOSURES TO ISSUERS

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

___ Yes, I do object to the disclosure of information.

_✓_ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _[signature]_ 12/16/95        (X) _[signature]_ 12/16/95
(Customer Signature/date)              (Customer Signature/date)

526 East Shore Rd.
(Customer Address)                     (Account Number)

Great Neck, NY
11024

AMF00256541

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES AND SALES OF SECURITIES

Gentlemen:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, 12/16/95

GREAT NECK   N.Y.
(City)   (State)

Very truly yours, _____ (Client Signature)

Signature Of Authorized Agent: _____

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB. 071-374 0891

AMF00256542

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

# OPTION AGREEMENT

TO: BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1. I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me. I agree to hold BERNARD L. MADOFF, its other Divisions, and its officers, Directors and Agents harmless for such loss.

2. I understand that any option transaction made for any account of mine is subject to the rules, regulations, customs and usages of The Options Clearing Corporation and of the registered national securities exchange, national securities association, clearing organization or market where such transaction was executed. I agree to abide by such rules, regulations, custom and usages and I agree that, acting individually or in concert with others, I will not exceed any applicable position or exercise limits imposed by such exchange, association, clearing organization or other market with respect to option trading.

3. If I do not satisfy, on a timely basis, your money or security calls, you are authorized in your sole discretion and without notification, to take any and all steps you deem necessary to protect yourself (for any reason) in connection with option transactions for my account including the right to buy and/or sell (including short or short exempt) for my account and risk any part or all of the shares represented by options handled, purchased, sold and/or endorsed by you for my account or to buy for my account and risk any option as you may deem necessary or appropriate. Any and all expenses or losses incurred in this connection will be reimbursed by me.

4. In addition to the terms and conditions hereof, my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the purchase and sale of securities and commodities except to the extent that such other agreements are contrary to or inconsistent herewith.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00256543

5. This agreement shall apply to all puts or call which you may have executed, purchased, sold or handled for any account of mine and also shall apply to all puts, or calls which you may hereafter purchase, sell, handle or execute for any account of mine.

6. I have received from BERNARD L. MADOFF the most recent risk disclosure documents entitled "Understanding the Risks and Uses of Listed Options", "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments". I have read and understand the information contained in these documents.

7. I understand that you assign exercise notices on a random basis except that with respect to options on the following debt instruments: Treasury Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially assign exercises of block-size (i.e. covering $1,000,000 or more of underlying securities) to block-size writing positions and you may preferentially assign smaller exercises to smaller writing positions. I understand that upon my request you will provide me with further information regarding the procedure used to assign exercise notices.

DATED 12/16/95          ACCOUNT NO. _____

**SIGNATURES**

(If a Corporation)                                  (If Individuals)

_____                      _[signature]_
(Name of Corporation)                               _[signature]_

By_____                    (Second Party If Joint Account)

Title_____                   (If a Partnership)

                                                    _____
                                                    (Name of Partnership)

          SEAL                                      By_____
                                                                    (A Partner)

AMF00256544