# **<u>EXHIBIT 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON EXHIBIT A ATTACHED HERETO,<br><br>Defendants. | Adv. Pro. Nos. listed on Exhibit A Attached Hereto |

## [PROPOSED] ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION FOR LIMITED ADDITIONAL DISCOVERY

On September 21, 2018, Irving H. Picard, trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § § 78aaa *et seq.* ("SIPA"), and the estate of Bernard L. Madoff ("Madoff") (collectively, "Debtor"), by and through his counsel, filed the Motion and Memorandum of Law For Limited Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff (the "Motion").  ECF No. 18015.

On February 15, 2019, the Court issued the Memorandum Decision Regarding Trustee's

Motion for Additional Discovery Based on the Deposition Testimony of Bernard L. Madoff (the

"Decision"), attached hereto as Exhibit B.  ECF No. 18480.

It is hereby **ORDERED** that:

1.   The deposition of FBI Special Agent Theodore Cacioppi shall be completed by May 30,

2019; the details of the deposition, including precise date, location, and procedure are subject to

coordination with the United States Attorney's Office for the Southern District of New York;

2.   Except as set forth in paragraph 1 of this Order, the remainder of the Motion is denied in

the adversary proceedings listed on Exhibit A;

3.   The Court, in its discretion, may impose sanctions on any person or entity that violates

any provision of this Order;

4.   The terms of this Order may be modified only upon a showing of good cause; and

5.   This Court shall retain exclusive jurisdiction over the enforcement, implementation, and

interpretation of this Order.

Dated: New York, New York
        _____, 2019

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

# <u>EXHIBIT A</u>

Exhibit A: List of Adversary Proceedings

| | Adv. Pro. No. | Case Name | Counsel |
|---|---|---|---|
| 1 | 10-04332 | Barry Weisfeld | Dentons US LLP |
| 2 | 10-04357 | James Greiff | Dentons US LLP |
| 3 | 10-04362 | Sage Associates, et al. | McDermott Will & Emery LLP |
| 4 | 10-04400 | Sage Realty, et al. | McDermott Will & Emery LLP |
| 5 | 10-04401 | Rose Gindel Trust, et al. | Dentons US LLP |
| 6 | 10-04415 | The Estate of Barbara Berdon, et al. | Dentons US LLP |
| 7 | 10-04486 | The Norma Shapiro Revocable Declaration of Trust Under Agreement Date | Dentons US LLP |
| 8 | 10-04672 | Sidney Cole | Dentons US LLP |
| 9 | 10-04702 | S&L Partnership, a New York partnership, et al. | Dentons US LLP |
| 10 | 10-04861 | Harold J. Hein | Dentons US LLP |
| 11 | 10-04882 | Laura E. Guggenheimer Cole | Dentons US LLP |
| 12 | 10-04921 | Stanley T. Miller | Dentons US LLP |
| 13 | 10-04925 | Alvin Gindel Revocable Trust, a Florida trust, et al. | Dentons US LLP |
| 14 | 10-05209 | Lapin Children LLC | Dentons US LLP |
| 15 | 10-05236 | Toby T. Hobish, et al. | Dentons US LLP |
| 16 | 10-05257 | Edward A. Zraick, Jr., individually and as joint tenant, et al. | Hunton Andrews Kurth LLP |

# **<u>EXHIBIT B</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | Adv. Proc. No. 08-01789 (SMB) |
| | : | |
| Plaintiff, | : | SIPA LIQUIDATION |
| | : | |
| v. | : | (Substantively Consolidated) |
| | : | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------X

| | |
|---|---|
| In re: | : |
| | : |
| BERNARD L. MADOFF, | : |
| | : |
| Debtor. | : |

-------------------------------------------------------X

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : | Applies to Adversary Proceedings listed on Schedule A |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEFENDANTS IN ADVERSARY PROCEEDINGS LISTED ON SCHEDULE A | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------X

## MEMORANDUM DECISION REGARDING TRUSTEE'S MOTION FOR ADDITIONAL DISCOVERY BASED ON THE DEPOSITION TESTIMONY OF BERNARD L. MADOFF

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza

New York, NY 10111

> David J. Sheehan, Esq.
> Stacey A. Bell, Esq.
> Nicholas J. Cremona, Esq.
> > Of Counsel

*Attorneys for Irving H. Picard, Trustee*

MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173

> Andrew B. Kratenstein, Esq.
> Michael R. Huttenlocher, Esq.
> Darren Azman, Esq.
> > Of Counsel

*Attorneys for Sage Associates, Sage Realty,*
*   Malcolm H. Sage, Martin A. Sage,*
*   and Ann M. Sage Passer*

HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166

> Peter S. Partee, Sr., Esq.
> Robert A. Rich, Esq.
> > Of Counsel

*Attorneys for Edward A. Zraick, Jr.,*
*   Nancy Zraick, Patricia DeLuca,*
*   and Karen Rich*

CHAITMAN LLP
465 Park Avenue
New York, NY 10022

> Helen Davis Chaitman, Esq.
> Gregory M. Dexter, Esq.
> > Of Counsel

*Attorneys for various Defendants*

DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10016

> Carole Neville, Esq.
> > Of Counsel

*Attorneys for various Defendants*

- 2 -

08-01789-smb    Doc 18521-2   Filed 02/27/19   Entered 02/27/19 16:38:50   Exhibit 1
Proposed Order   Pg 9 of 39

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

By late 2010, Irving H. Picard (the "Trustee"), the trustee for the liquidation of

BLMIS under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"),

had commenced approximately 1,000 adversary proceedings to clawback fictitious

profits paid to the defendants by Bernard L. Madoff Investment Securities LLC

("BLMIS"), the vehicle through which Bernard Madoff ran his notorious Ponzi scheme.

Although issues had been raised regarding the existence, scope and extent of the Ponzi

scheme, no one sought to take Madoff's deposition until July 2016, nearly six years into

these cases.  At that point, a group of defendants in adversary proceedings where

discovery was still open decided it was a good idea to depose Madoff.  Over the course of

five days between December 2016 and November 2017, the parties to the eighty-eight[1]

adversary proceedings set forth in Schedule A (the "Good Faith Actions") took Madoff's

deposition (the "Madoff Deposition").

The Trustee now moves, to the extent necessary, to (i) reopen fact discovery to

depose six former BLMIS employees and one FBI agent under Rules 16(b)(4) and

30(a)(2)(B) of the Federal Rules of Civil Procedure, (ii) submit two additional expert

reports and (iii) supplement two existing expert reports under Rule 26(e)(1) of the

Federal Rules of Civil Procedure (the "Motion").  (*See Memorandum of Law in Support*

*of Trustee's Motion for Limited Discovery Based on Prior Orders Authorizing*

*Deposition of Bernard L. Madoff*, dated Sept. 21, 2018 ("*Trustee Brief*") (ECF Doc. #

---

[1]    The Trustee's chart appended to his moving papers listed ninety-two Good Faith Actions, (*see*
ECF Doc. # 18015-2), but four of the actions were subsequently dismissed.

18015).[2])  The catalyst, according to the Trustee, is Madoff's testimony which the

Trustee seeks to rebut.  (*See id.* at 10.)

The Trustee's application is opposed by (i) defendants in *Picard v. Sage

Associates*, Adv. Proc. No. 10-04362 (SMB) and *Picard v. Sage Realty*, Adv. Proc. No.

10-04400 (SMB) (the "Sage Defendants") (*see The Sage Defendants' Objection to the

Trustee's Motion for Limited Additional Discovery Based on Prior Orders Authorizing

Deposition of Bernard L. Madoff*, dated Oct. 17, 2018 ("*Sages Brief*") (ECF Doc. #

18081)), (ii) defendants in *Picard v. Zraick*, Adv. Proc. No. 10-05257 (SMB) (the "Zraick

Defendants") (*see Zraick Defendants' Objection to Trustee's Motion for Limited

Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L.

Madoff*, dated Oct. 17, 2018 ("*Zraick Brief*") (ECF Doc. # 18082)), (iii) defendants in

numerous adversary proceedings represented by Chaitman LLP (the "Chaitman

Defendants") (*see Defendants' Memorandum of Law in Opposition to the Trustee's

Motion for Limited Additional Discovery Based on Prior Orders Authorizing

Deposition of Bernard L. Madoff*, dated Oct. 17, 2018 ("*Chaitman Brief*") (ECF Doc. #

18084)), and (iv) defendants in numerous adversary proceedings represented by

Dentons US LLP (the "Dentons Defendants").  (*See Dentons Customers' Objection to the

Trustee's Motion for Limited Additional Discovery Based on Prior Orders Authorizing

Deposition of Bernard L. Madoff*, dated Oct. 17, 2018 ("*Dentons Brief*") (ECF Doc. #

18087).)

---

[2]      Unless otherwise indicated, "ECF Doc. # _" refers to documents filed on the docket of *In re BLMIS*, SIPA Case No. 08-01789 (SMB).

With one exception, Madoff's testimony addressed issues that have been part of
these cases for years, and in some instances, the Trustee has already submitted an
expert report covering the topic.  Accordingly, for the reasons set forth herein, the
Motion is granted in part and denied in part.

## BACKGROUND

### A.    The Good Faith Actions

The Court assumes familiarity with the circumstances leading to the demise of
BLMIS, the arrest of Bernard L. Madoff on December 11, 2008 (the "Filing Date"), the
commencement of the SIPA liquidation, and the appointment of the Trustee.  *See SIPC
v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 124-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d
229 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012).  Beginning in late 2010, the
Trustee commenced approximately 1,000 adversary proceedings against former BLMIS
customers who withdrew more from their BLMIS accounts than they deposited.  The
Trustee does not contend that these defendants knew that Madoff was operating a Ponzi
scheme, and hence, the adversary proceedings have been referred to as the Good Faith
Actions.  In each adversary proceeding, the Trustee seeks to avoid and recover the
difference between the deposits and withdrawals — the fictitious profits — as intentional
fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A), capped by the aggregate
amount of withdrawals or transfers within two years of the Filing Date.

### B.    The Madoff Deposition

When Madoff pleaded guilty, he stated during his allocution that he had
conducted a Ponzi scheme through BLMIS' investment advisory business, using a split-
strike conversion strategy, since the early 1990s.  Many defendants disputed that BLMIS

was a Ponzi scheme, but even if it was, they disputed the Trustee's contention that the

Ponzi scheme dated back to the 1970s or even earlier.

On July 7, 2016, the Chaitman Defendants moved for an order authorizing

Madoff's deposition primarily to inquire into the existence and scope of the Ponzi

scheme.  (*See Defendants' Memorandum of Law in Support of Motion for an Order*

*Authorizing the Deposition of Bernard L. Madoff*, dated July 7, 2016 (ECF Doc. #

13605).)  Following a July 20, 2016 conference, and in anticipation of similarly situated

defendants wanting to depose Madoff in their adversary proceedings, the Trustee filed

and served a *Notice to Defendants Establishing Deadline to File Requests to Depose*

*Bernard L. Madoff*, dated July 22, 2016 (ECF Doc. # 13786).  The latter instructed

defendants wishing to participate in the Madoff Deposition to file a notice listing

proposed areas of inquiry and their relevance.  After various defendants filed such

notices, (*see* ECF Doc. ## 13838, 13839, 13840, 13841, 13844), and following an August

24, 2016 hearing, the Court signed an *Order Authorizing the Deposition of Bernard L.*

*Madoff* on September 29, 2016 ("*Madoff Day 1 Deposition Order*") (ECF Doc. # 14213).

The *Madoff Day 1 Deposition Order* limited the topics for which the participating

defendants could depose Madoff to:

1. The trading activities of Madoff's market making and proprietary
   trading units during the period prior to January 1, 1992 and thereafter.

2. The trading activities for Madoff's investment advisory customers prior
   to January 1, 1992 and thereafter.

3. The number of employees, profitability, and revenue-generating
   activities of each Madoff unit in the period prior to January 1, 1992 and
   thereafter.

4. The nature, extent and scope of Madoff's legitimate and illegitimate
   activities at various time periods, including, *inter alia*, when Madoff
   began operating a "Ponzi" scheme and how it came about that he began
   operating a "Ponzi" scheme.

5. The extent to which different trading strategies were involved with legitimate or illegitimate activities.

6. The record-keeping procedures for each unit of Madoff's operations, including but not limited to records indicating the purported purchase and sale of securities and the purported allocation of securities to investment advisory customers.

7. The interpretation of Madoff's or BLMIS' account records, including but not limited to monthly account statements.

(*Madoff Day 1 Deposition Order* at pp. 2-3.) The order limited participation in the Madoff Deposition to defendants in actions where fact discovery had not closed as of July 7, 2016. In such actions, discovery was extended for the sole purpose of taking Madoff's deposition, but "[n]otwithstanding the dates set forth in the case management orders, counsel for the Trustee, the Participating Customers, the Picower Parties and SIPC have the right to move the Court for further discovery based upon Madoff's testimony." (*Madoff Day 1 Deposition Order* at p. 7, ¶ L.) "Day 1" of the Madoff Deposition took place over the course of three days: December 20, 2016, April 26, 2017, and April 27, 2017.

After the conclusion of Madoff's "Day 1" deposition, the Court entered an *Order Authorizing the Continued Deposition of Bernard L. Madoff* on September 11, 2017 ("*Madoff Day 2 Deposition Order*" (ECF Doc. # 16625), and together with the *Madoff Day 1 Deposition Order*, the "*Madoff Deposition Orders*") on the following topics:

1. The statements contained in the Federal Bureau of Investigation form FD-302 memorializing a proffer meeting with Bernard Madoff held on December 16, 2008;

2. The Day 2 Participants'[3] accounts held with [BLMIS], or Bernard L. Madoff, including the history of Day 2 Participants' accounts and the

---

[3] The "Day 2 Participants" included certain defendants represented by Chaitman LLP and Dentons US LLP listed in Exhibit B to the *Madoff Day 2 Deposition Order* that did not participate in Day 1 of the Madoff Deposition. The additional defendants were included on consent of the Trustee. (*See Madoff Day 2 Deposition Order* at p. 3.)

extent, if any, to which BLMIS or Madoff was directed to and did buy, sell and hold actual securities on behalf of the Day 2 Participants; and

3.  Madoff's understanding of the reports and other information contained on the reels of microfilm and any other documents produced by the Trustee to the Participating Customers in 2017 and 2018 prior to the completion of the Day 2 Deposition, concerning whether Madoff or BLMIS used customer funds to purchase securities shown on the customer statements of the Day 2 Participants or held such securities for his, or BLMIS', own account.

(*Madoff Day 2 Deposition Order* at pp. 3-4.)  Like the prior order, the *Madoff Day 2 Deposition Order* stated that the fact discovery deadlines in the relevant case management orders were extended "for the limited and sole purpose of taking Madoff's deposition" subject to the right of interested parties to "move the Court for further discovery based on Madoff's testimony." (*Id.* at p. 8, ¶ L.)  "Day 2" of the Madoff Deposition took place on November 8 and November 9, 2017.[4]  The Madoff Deposition is now completed.

## C.    The Motion

The Trustee now seeks to take additional depositions and/or submit supplemental expert materials on six topics: (i) when the BLMIS Ponzi scheme began ("Start Date Issue"), (ii) whether BLMIS performed actual securities trades for customers purportedly engaged in the so-called "convertible arbitrage strategy" ("Convertible Arbitrage Issue"), (iii) whether BLMIS performed actual securities trades for certain customers that gave specific trading instructions to BLMIS ("Directed Trading Issue"), (iv) when BLMIS became insolvent ("Insolvency Issue"), (v) the

---

[4]    The transcripts of Madoff's deposition are available at ECF Doc. ## 16237-9 (December 20, 2016 transcript), 18151-1 (April 26, 2017 transcript), 18151-2 (April 27, 2017 transcript), 18151-3 (November 8, 2017 transcript), and 18141-4 (November 9, 2017 transcript).  References to the transcripts will be denoted as follows: "(Madoff Dep. [date] at _:_.)"

08-01789-smb Doc 18450 Filed 02/15/19 Entered 02/15/19 16:38:50 Main Document
Pg 9 of 39

purpose of BLMIS' purchase of United States Treasury bills ("Treasuries Issue"), and

(vi) whether the IBM AS/400 computer used by the investment advisory arm of BLMIS

was capable of generating trading activity ("Computer System Issue"). (*Trustee Brief* at

11-16.) On each of the issues, the Trustee wants to take the deposition of some or all of

the following former BLMIS employees: Annette Bongiorno, Daniel Bonventre, Enrica

Cotellessa-Pitz, Joann Crupi, David Kugel, and Joann Sala. (*Id.* at 10-16.)

With respect to the Start Date Issue, the Trustee also seeks to depose one of the

FBI agents who prepared Federal Bureau of Investigation form FD-302 memorializing a

December 16, 2008 proffer session given by Madoff to the FBI and the United States

Attorney's Office for the Southern District of New York (the "FD-302 Statement").[5] (*See

id.* at 11.) The Trustee received redacted copies of the FD-302 Statement in May 2017.

(*See* ECF Doc. ## 16046-3 and 16046-4.)

In addition, the Trustee seeks to submit two additional reports from undisclosed

experts – one to opine on the Convertible Arbitrage Issue and the other on the

Computer System Issue. (*Trustee Brief* at 28.) Finally, the Trustee seeks to supplement

the existing expert reports of Bruce Dubinsky and Lisa Collura in the Good Faith Actions

where expert disclosures have already been made. (*Id.*)

---

[5]  Form FD-302 is used to report on and summarize an FBI agent's interview with a witness. *United States v. Gonzalez-Melendez*, 570 F.3d 1, 3 (1st Cir. 2009). A redacted copy of the FD-302 Statement is available at ECF Doc. # 16046-2.

### D.    Procedural Posture of the Good Faith Actions

### 1.    Fact Discovery

The eighty-eight Good Faith Actions are in different procedural stages.  Fact

discovery remains open in thirty-two of the actions.[6]  Except as set forth in Federal Civil

Rule 30(a)(2) with respect to the three prisoner depositions (Bongiorno, Crupi and

Bonventre), the Trustee does not require leave of Court to take the additional

depositions in these adversary proceedings.[7]

In the remaining fifty-six Good Faith Actions, fact discovery is closed, and the

Trustee seeks leave to reopen discovery.  He asserts that reopening fact discovery is

expressly permitted by the plain language of the *Madoff Deposition Orders*.

Alternatively, he argues that "good cause" exists to reopen fact discovery pursuant to

Rule 16(b)(4) of the Federal Rules of Civil Procedure made applicable hereto under Rule

7016(a) of the Federal Rules of Bankruptcy Procedure.  The Trustee states that he has

been diligent in seeking to take the additional depositions given that the defendants did

not seek to take Madoff's deposition until July 2016, the *Madoff Deposition Orders*

---

[6]    In most of the thirty-two actions, fact discovery remains open pursuant to the *Stipulation and Order* entered into among the majority of defendants represented by Chaitman LLP and the Trustee, so-ordered on August 9, 2017 ("*Stipulation Staying Discovery*") (ECF Doc. # 16494), which held in abeyance all discovery deadlines in the applicable adversary proceedings pending conclusion of the Madoff Deposition.  The Chaitman Defendants suggest that the *Stipulation Staying Discovery* was not intended to allow the Trustee to take additional discovery.  (*See Chaitman Brief* at 7.)  However, the plain language of the stipulation stated that the deadline to serve expert reports in the Chaitman Defendants' cases would be set after the Madoff Deposition, (*Stipulation Staying Discovery* at ¶ 1), and "all other deadlines in the operative case management notices" would be held in abeyance until further addressed by the Court.  (*Id.* at ¶ 2.)

[7]    Similarly, the Chaitman Defendants had previously issued subpoenas to numerous BLMIS traders which were held in abeyance pending the conclusion of the Madoff Deposition.  (*See Order Implementing the Court's May 31, 2017 and June 29, 2017 Bench Rulings on Multiple Discovery Disputes*, dated July 26, 2017, at ¶¶ 2-3 (ECF Doc. # 16459).)  The Chaitman Defendants may now proceed with those subpoenas to the extent they were timely served.

08-01789-smb   Doc 18521-1   Filed 02/27/19   Entered 02/27/19 16:38:50   Exhibit 1
Proposed Order   Pg 11 of 33

anticipated possible rebuttal discovery, and the limited discovery sought will surely lead to relevant evidence.  (*Trustee Brief* at 25-26.)

### 2. Expert Discovery

The Good Faith Actions are also at varying stages of expert discovery.  In sixty-one of the Good Faith Actions, expert disclosures have not been made because the deadlines under the respective case management orders have not passed or because the deadlines have been stayed pursuant to the *Stipulation Staying Discovery*.  In these cases, the Trustee would not be "supplementing" Dubinsky's or Collura's reports since they have not yet been submitted.  Moreover, the Trustee need not obtain leave to submit the reports of the two additional experts.  Another eleven Good Faith Actions are similarly situated because, although the Trustee has submitted Dubinsky's and Collura's reports in the actions, the *Stipulation Staying Discovery* held in abeyance the deadline to serve expert reports pending the completion of the Madoff Deposition.

In the remaining sixteen Good Faith Actions, the deadline to make expert disclosures has expired, and the Trustee suggests that supplementation under Federal Civil Rule 26(e)(1) of the existing expert reports and submission of the new expert reports are appropriate as a response to additional fact discovery—namely, the Madoff Deposition.  (*Trustee Brief* at 28-29.)

### DISCUSSION

### A. Standards Governing the Motion

Initially, the Trustee's assertion that the *Madoff Deposition Orders* authorize him to take additional discovery lacks merit.  The orders extended fact discovery "for the

limited and sole purpose of taking Madoff's deposition. Other than for that purpose, the

deadlines in the applicable case management orders remain unchanged." (*Madoff Day*

*1 Deposition Order* at p. 7, ¶ L; *see also Madoff Day 2 Deposition Order* at p. 8, ¶ L.)

The orders gave the parties "the right to move the Court for further discovery based

upon Madoff's testimony," (*id.*), but the Court stated on multiple occasions that the

scope of additional discovery would be narrow and limited to discovery which could not

have been pursued absent the Madoff Deposition. (*See Transcript of July 20, 2016 Hr'g*

at 26:10-13 ("THE COURT: . . . it may be reasonable to extend the deadline to take Mr.

Madoff's deposition. It may not be reasonable to extend the deadline to then take

subsequent depositions based on what Mr. Madoff said.") (ECF Adv. Proc. No. 10-05257

Doc. # 58); *Transcript of August 24, 2016 Hr'g* at 30:24-31:4 ("THE COURT: I haven't

extended any deadlines other than to take Mr. Madoff's deposition. Whether someone

can come in and make a compelling case . . . to do follow-up depositions [will be dealt

with at a later date].") (ECF Doc. # 13967); *Transcript of March 29, 2017 Hr'g* at 43:7-

14 ("THE COURT: "But you're talking about the order authorizing the Madoff

deposition. I made it clear that at that point I was not authorizing any further other

discovery, where discovery was closed or would otherwise . . . expire. . . . If it was that

important, it should've been done before.") (ECF Doc. # 15908); *Transcript of May 31,*

*2017 Hr'g* at 25:10-12 ("THE COURT: . . . I also said that I would allow you to take the

Madoff deposition, I didn't say whether or not you could take any further discovery.")

(ECF Doc. # 16192); *Transcript of July 25, 2018 Hr'g* at 34:19-21 ("THE COURT: . . . the

order said if you learn something from Madoff's deposition that triggered the need for

more discovery, that you could ask for it basically. Or maybe you'll get it.") (ECF Doc. #

17877); *id.* at 70:17-20 ("THE COURT: . . . you have to show specifically what it is

Madoff said that's new, that you couldn't have anticipated with due diligence of taking that discovery").)[8]

Rather, the appropriate standard to determine whether the Trustee may modify the existing case management orders to reopen discovery is set forth in Federal Civil Rule 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).[9] A finding of "good cause" depends on the diligence of the moving party. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *accord Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)), *certified question answered by* 286 Ga. 636 (2010), *aff'd*, 383 F. App'x 18 (2d Cir.), *cert. denied*, 562 U.S. 1102 (2010); *see also* FED. R. CIV. P. 16 advisory committee's note (1983) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quoting *Sokol Holdings*,

---

[8]     The Trustee previously agreed with this interpretation. In objecting to the Zraick Defendants' request to modify certain case deadlines, he advocated for a narrow interpretation of supplemental discovery pursuant to the *Madoff Deposition Orders*:

> The [*Madoff Deposition Orders*'] provision permitting potential follow-up discovery "based upon Madoff's testimony" should be construed as only permitting discovery that could *not* have been pursued without his testimony.

(*Trustee's Memorandum of Law in Opposition to Defendants' Motion to Extend the Rebuttal Expert Disclosure Deadline and Compel Discovery*, dated Mar. 22, 2017, at 9 (emphasis in original) (ECF Adv. Proc. No. 10-05257 Doc. # 68).)

[9]     The Trustee also references Rule 26(b)(2), (*see Trustee Brief* at 23-24), which sets out certain limitations on the frequency and extent of permissible discovery. However, Rule 26(b)(2) does not serve as a basis to reopen fact discovery.

*Inc. v. BMB Munai, Inc.,* No. 05 Civ. 3749(KMW)(DF), 2009 WL 2524611, at *7

(S.D.N.Y. Aug. 14, 2009)), *reconsideration denied*, No. 08-CV-2627 (ADS)(ETB), 2011

WL 2601500 (S.D.N.Y. June 29, 2011); *accord Ritchie Risk-Linked Strategies Trading*

*(Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79-80 (S.D.N.Y. 2012).

Where a party seeks to modify the scheduling order to rebut evidence, he must

show that he had no reason to expect the information that forms the basis of the motion.

In *Ritchie Risk-Linked Strategies*, the plaintiff sued for breach of contract relating to

secondary-market life insurance policies it had purchased from the defendant.  In

accordance with the scheduling order, the plaintiff timely served expert reports that did

not address the contract price at which the plaintiff had purchased the policies or its

damages.  The defendant thereafter timely served an expert report (the "Behan &

Chaplin Report") which opined that the market value of the policies was far lower than

the amount the plaintiff paid because the contract price was based on improper and

unrealistic mortality and actuarial assumptions.  *Ritchie Risk-Linked Strategies*, 282

F.R.D. at 77.  Following receipt of the Behan & Chaplin Report, the plaintiff sought to

modify the scheduling order to allow it the opportunity to rebut it.  After the Magistrate

Judge denied the request, the plaintiff asked District Judge Marrero to vacate the

Magistrate Judge's Order.  *Id.* at 78.  Denying the plaintiff's request, Judge Marrero

explained:

> Plaintiffs can justify a modification of that scheduling order only if they
> substantiate their claims of having had no reason to expect that
> Defendants would advance the position set forth in the Behan & Chaplin
> Report.  Alternately put, Plaintiffs cannot succeed in demonstrating their
> diligence—and thus good cause for amending the scheduling order—if they
> knew or should have known that Defendants might present expert
> testimony to argue that the contract price of the subject insurance policies
> did not represent market value for purposes of a damages calculation. *See*

08-01789-smb    Doc 18450    Filed 02/15/19    Entered 02/15/19 16:38:50    Main Document
Pg 21 of 39

> *Fidelity Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.,* No. 09 Civ. 7589,
> 2011 WL 3665138, at *2 (S.D.N.Y. Aug. 11, 2011) ("[T]he good cause
> standard is not satisfied when the proposed amendment rests on
> information 'that the party knew, or should have known, in advance of the
> deadline.'" (alteration in original) (*quoting Enzymotec Ltd. v. NBTY, Inc.,*
> 754 F.Supp.2d 527, 536 (E.D.N.Y.2010))).

*Id.* at 79-80.  Thus, to show good cause to modify the scheduling order to permit more depositions or new expert reports, the Trustee must point to testimony by Madoff that he had no reason to expect.[10]

Separately, the Trustee seeks to supplement the existing expert reports submitted by Dubinsky and Collura.  (*Trustee Brief* at 30-31.)  A party must supplement expert disclosures, *see* FED. R. CIV. P. 26(a)(2)(E), if it "learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e)(1)(A); *accord Sherman v. Bear Stearns Cos. Inc. (In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*), 263 F. Supp. 3d 446, 451 (S.D.N.Y. 2017); *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 09546, 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *5 (S.D.N.Y. Nov. 16, 2007).  The duty to supplement is "mandatory and self-executing," *Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 645 (10th Cir. 2014) (quoting *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001)); *accord Sinclair Wyo. Ref. Co. v. A&B Builders, Ltd.*, Civil No. 15-CV-

---

[10]    The Trustee argues that his diligence should be measured from the conclusion of the Madoff Deposition because he did not know before then what areas of Madoff's deposition testimony he needed to rebut or clarify.  (*Trustee Brief* at 26; s*ee Reply Memorandum in Further Support of Trustee's Motion for Limited Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff,* dated Oct. 24, 2018, ("*Trustee Reply*") at 1-2 (ECF Doc. # 18106).)  However, discovery did not begin only when the Madoff Deposition ended.  The Good Faith Actions were commenced over eight years ago, and the matters on which Madoff testified have been issues in these cases for almost that entire period.  In fact, Dubinsky's 2013 expert report opined on some of these issues.  The Trustee could have sought to take Madoff's deposition in the Good Faith Actions but never did.

91-ABJ, 2018 WL 4698788, at *2 (D. Wyo. Aug. 31, 2018), "extends both to information included in the report and to information given during the expert's deposition," and must be completed "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2).  Under Rule 26(a)(3)(B), pretrial disclosures must be made "at least 30 days before trial" unless the Court orders otherwise.

Because deadlines to submit pretrial disclosures and the trial dates have not been set in the Good Faith Actions, the deadlines to submit supplemental expert disclosures have not run.  Therefore, the Trustee does not require a Court order authorizing supplementation under Rule 26(e)(1).

With this background, I turn to the specific areas of additional discovery identified by the Trustee.

## B.     Areas of Inquiry

### 1.     Start Date Issue

When the Ponzi scheme began has been an issue in these cases since Day One.  During his March 2009 plea in *United States of America v. Madoff*, No. 09 CR 213 (DC) ("Madoff Allocution"),[11] Madoff allocuted that, "[t]o the best of my recollection, my fraud began in the early 1990s."  (Madoff Allocution at 25:12-13.)  Madoff's deposition testimony was consistent with his allocution.  He stated on multiple occasions that his Ponzi scheme did not begin until 1992.  (*See* Madoff Dep. 12/20/16 at 26:15-27:1, 98:16-19; Madoff Dep. 4/26/17 at 11:5-9, 123:1-2; Madoff Dep. 4/27/17 at 365:18-19; Madoff

---

[11]     A copy of the Madoff Allocution is available at ECF Doc. # 16237-5.

Dep. 11/8/17 at 398:15-17.)[12]  In short, the Trustee knew what Madoff would say about the Start Date Issue, and his deposition testimony was no surprise.

Notwithstanding Madoff's allocution, the Trustee has contended that the investment advisory business always operated as a Ponzi scheme.  (*See Picard v. Ginsburg* (*In re BLMIS*), ECF Adv. Pro. No. 10-04753 Doc. # 1 (*Complaint*, dated Nov. 12, 2010 ("*Ginsburg Complaint*") ¶¶ 22-25.)  In fact, Dubinsky opined in his August 2013 *Expert Report of Bruce G. Dubinsky MST, CPA, CFE, CVA, CFF, MAFF* ("Dubinsky Report")[13] that "[t]here is no evidence that the purported investment transactions for [investment advisory] customers ever occurred at least as far back as the 1970s." (Dubinsky Report ¶ 18; *accord id.* at ¶ 270 ("As detailed above, the investigation and analysis of the IA Business showed that beginning at least in the 1970s, the IA Business's purported trades could not have been executed.").)  In short, the Trustee did not learn anything from Madoff at his deposition that he did not already know and already rebut.

The one exception concerns the Trustee's request to depose one of the FBI Special Agents that prepared the FD-302 Statement memorializing Madoff's December 16, 2008 proffer session.  According to the statement, Madoff proffered that he "began engaging in fraud in earnest in the 1970s."  (FD-302 Statement at BHUSAO0000022.)

---

[12]     Madoff did testify that BLMIS backdated trades for certain customers prior to 1992 to manufacture gains or losses (for tax purposes), (Madoff Dep. 12/20/16 at 31:6-32:13; Madoff Dep. 4/26/17 at 10:6-20), but back-dating actual trades undercuts the Trustee's theory that BLMIS was not engaged in actual trading.

[13]     A copy of the Dubinsky Report is available at ECF Adv. Proc. No. 10-05257 Doc. # 67-2.

When confronted with the FD-302 Statement at his deposition, Madoff denied that he

said that during the 2008 proffer.  (Madoff Dep. 11/9/17 at 635:16-23.)

The Trustee did not receive a copy of the FD-302 Statement from the

Government until May 2017 – between "Day 1" and "Day 2" of the Madoff Deposition.

Therefore, the Trustee could not have anticipated Madoff's denial of a statement

allegedly recorded by the FBI Special Agent.  As a result, the Trustee may depose the FBI

Special Agent to inquire about Madoff's proffer pertaining to the start date of the Ponzi

scheme.

### 2.    Convertible Arbitrage Issue

When Madoff allocuted, he stated that the Ponzi scheme was limited to his split-

strike conversion strategy.  To carry out the fraud, "I . . . claimed that I employed an

investment strategy I had developed, called the split strike conversion strategy, to falsely

give the appearance to clients that I had achieved the results I believed they expected."

(Madoff Allocution at 25:21-24; *see also id.* at 25:25-26:18 (describing the split-strike

conversion strategy).)  At one point during his allocution, he did indicate that he caused

BLMIS to send false trading confirmations and customer statements listing bogus

transactions "to clients purportedly involved in the split strike conversion strategy, *as

well as other individual clients* I defrauded who believed they had invested in securities

through me," (*id.* at 27:13-16 (emphasis added)), but his reference to these "other

individual clients" was apparently never pursued.

At the relevant times, the split-strike conversion strategy was not BLMIS' only

purported trading strategy; it also supposedly engaged in a convertible arbitrage

strategy on behalf of certain customers.[14]   Nevertheless, and consistent with his

allocution, Madoff testified at his deposition that his Ponzi scheme did not extend to

BLMIS customers whose accounts were engaged in the convertible arbitrage strategy.

(Madoff Dep. 12/20/16 at 35:9-17; Madoff Dep. 11/8/17 at 399:1-4.)

The Trustee had never accepted Madoff's distinction between trading strategies;

he always contended that the entire investment advisory business was a Ponzi scheme.

(*See, e.g.*, **Ginsburg Complaint** ¶ 22 ("[B]ased on the Trustee's investigation to date and

with the exception of isolated individual trades for certain clients other than Defendant,

there is no record of BLMIS having cleared any purchase or sale of securities on behalf

of the IA Business at the Depository Trust & Clearing Corporation, the clearing house

for such transactions.").)   Furthermore, the Trustee procured the opinion of Dubinsky in

2013 that "[t]here was no trading using the so-called 'convertible arbitrage trading

strategy' purportedly implemented by BLMIS in the 1970s," (Dubinsky Report ¶ 19), and

spent close to twenty pages justifying this conclusion.  (*Id.* at ¶¶ 84-118.)  He also opined

that none of Madoff's investment strategies involved actual trading, (*id.* at ¶¶ 154-55),

and the entire investment advisory business was conducted as a fraud based on fictitious

trading at least as far back as the 1970s.  (*Id.* at ¶¶ 18-25.)

---

[14]    According to Dubinsky:

A convertible arbitrage trading strategy aims to generate profits by taking advantage of
the pricing mismatches that can occur between the equity and convertible instruments.
This strategy is implemented when the convertible instrument is incorrectly valuing the
option component of the security relative to the underlying common stock price.  The
investor is looking then to benefit from a change in the expectations for the stock or
convertible security over a period of time.

(Dubinsky Report ¶ 84.)

Whether the Ponzi scheme was limited to the split-strike conversion strategy or
also encompassed the convertible arbitrage strategy has been a longstanding issue in the
case. As in the case of the Start Date Issue, the Trustee did not learn anything from
Madoff at his deposition that he did not already know and already rebut.

### 3.  Directed Trading Issue

The Directed Trading Issue concerns the Sage Defendants. In September 2015,
the Sage Defendants asserted an affirmative defense to the effect that they directed
BLMIS to make certain trades, BLMIS made those trades and they were entitled to
retain the profits earned on those trades:

> Many of the trades in the [Sage Defendants' accounts] were entirely
> independent of the "split strike conversion" strategy. Madoff did not
> control these sales. On the contrary, the activity in the [accounts] included
> the retention and sale of actual securities, controlled by [the Sage
> Defendants], which generated both short term and long term capital gains
> for which [the Sage Defendants are] absolutely entitled to credit.

(*Answer and Affirmative Defenses*, dated Sept. 18, 2015, p. 28, ¶ 54 (ECF Adv. Proc. No.
10-04400 Doc. # 43); *Answer and Affirmative Defenses*, dated Sept. 18, 2015, p. 28, ¶
54 (ECF Adv. Proc. No. 10-04362 Doc. # 43).)

Discovery ensued. In December 2015, the Trustee served his Initial Disclosures
in which he identified Annette Bongiorno and Joann "Jodi" Crupi, two former BLMIS
employees, as persons who "may have knowledge of the transactions at issue."[15]
Notably, he disclosed that he did not expect to rely on their testimony, but these are two

---

[15]     The Trustee's Initial Disclosures are annexed as Exhibit 7 to the *Declaration of Andrew B.
Kratenstein in Support of the Sage Defendants' Objection to the Trustee's Motion for Limited Additional
Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff*, signed Oct. 17, 2018
("*Kratenstein Declaration*") (ECF Doc. # 18081-1).

of the witnesses he now seeks to depose.  The Sage Defendants thereafter sent discovery

requests to the Trustee on the Directed Trading Issue, (*see Defendants' First Set of*

*Requests for Production of Documents and Interrogatories to the Trustee*, dated July 1,

2016, at p. 10, ¶ 2 ("State whether there is any evidence that BLMIS executed 'directed

trades' . . . ."), pp. 11-12, ¶ 11 (state whether and when "BLMIS engaged in any 'directed

trades' for the customer").)[16]  They also responded to an interrogatory from the Trustee

inquiring about meetings with BLMIS employees, stating that they had periodic

telephonic and in-person meetings to, *inter alia*, direct "Bernard L. Madoff to use

certain investment strategies and to buy, sell, or hold certain stocks."  (*See Responses to*

*Trustee's First Set of Interrogatories to Defendant Sage Associates*, dated Aug. 11, 2016,

p. 10.)[17]

During his deposition, Madoff stated that the Sage Defendants were atypical

BLMIS customers because, around 2000, they began giving specific trading instructions

to BLMIS rather than giving BLMIS authority to exercise discretion to trade on their

behalf.  (*See* Madoff Dep. 11/8/17 at 399:16-401:15.)  When asked if BLMIS carried out

the Sage Defendants' trading instructions, Madoff replied that it did.  (*See, e.g.*, *id.* at

440:18-441:14; 454:23-456:1; 462:7-463:14; 464:14-467:13.)  The Trustee now seeks to

depose former BLMIS employees to inquire whether the directed trades were actually

executed.  (*Trustee Brief* at 12-13.)

---

[16]     The pertinent portions of the Sage Defendants' discovery request are attached as Exhibit 8 to the
*Kratenstein Declaration*.

[17]     The pertinent portion of the Sage Defendants' response is attached as Exhibit 9 to the *Kratenstein
Declaration*.

Madoff's deposition testimony added nothing to the Directed Trading Issue raised by the Sage Defendants in 2015, and the parties engaged in discovery regarding the Directed Trading Issue. The Trustee pursued or could have pursued this issue in greater depth (fact discovery did not close until July 5, 2018, (*Sixth Amended Case Management Notice*, dated Sept. 6, 2018 (ECF Adv. Proc. No. 10-04362 Doc. # 85; ECF Adv. Proc. No. 10-04400 Doc. #85))), but Madoff's deposition testimony did not identify the Directed Trading Issue or any fact that the Sage Defendants had not already raised.

The Trustee nevertheless argues that during the period leading up to the Motion, the Sage Defendants indicated their willingness to engage in additional fact discovery despite the July 5, 2018 deadline. (*See Trustee Reply* at 11-12.) Following discussions among the Court and parties, the Trustee had proposed an omnibus trial, preceded by additional discovery, to determine the existence and scope of the Ponzi scheme (the "*Ponzi Proposal*"). *See Picard v. Nelson* (*In re BLMIS*), Adv. Pro. No. 08-01789 (SMB), 2019 WL 80451, at *5 (Bankr. S.D.N.Y. Jan. 2, 2019). The Sage Defendants had "no objection to coordinating the Remaining Good Faith Actions for discovery purposes." (*The Sage Defendants' Opposition to Motion for an Order Establishing Omnibus Proceeding for the Purpose of Determining the Existence, Duration, and Scope of the Alleged Ponzi Scheme at BLMIS*, dated Apr. 11, 2018, at ¶ 6 (ECF Doc. # 17470).) However, in a July 5, 2018 email, counsel for the Sage Defendants declined to agree to further extend discovery deadlines stating, *inter alia*, that "we remain in discussions with your colleagues over an omnibus proceeding that may include certain additional

discovery concerning the scope and timing of the Madoff fraud." (*See Email from Andrew Kratenstein, Esq.*, dated July 5, 2018.[18])

The *Ponzi Proposal* was never approved by the Court.  Further, even if the Sage Defendants lulled the Trustee in early 2018, this does not explain why the Trustee did not diligently pursue discovery regarding the Directed Trading Issue between September 2015 and early 2018.

### 4.    Insolvency Issue

During his deposition, Madoff stated that BLMIS was solvent until some point between 1998 and 2002.  (*See* Madoff Dep. 4/26/17 at 20:8-21:4.)  However, when confronted with the fact that BLMIS owed, at the time of Madoff's arrest, roughly $64.6 billion to customers against $300 million in assets, Madoff conceded that the shortfall accrued between 1992 and 2008.  (*Id.* at 132:22-134:4.)

The Trustee raised the issue of BLMIS' insolvency from the outset,[19] (*see, e.g.*, *Ginsburg Complaint* ¶ 33), many defendants denied that BLMIS was insolvent or denied sufficient knowledge regarding the allegation, and the Trustee procured Dubinsky's expert opinion back in 2013 that BLMIS was insolvent from at least December 11, 2002.  (*See* Dubinsky Report ¶¶ 336-67.)  It again appears that the Trustee

---

[18]    A copy of the email is attached as Exhibit 5 to the *Declaration of David J. Sheehan in Support of the Reply Memorandum in Further Support of Trustee's Motion for Limited Additional Discovery Based on Prior Orders Authorizing Deposition of Bernard L. Madoff*, signed Oct. 24, 2018 (ECF Doc. # 18107).

[19]    Insolvency is not an element of intentional fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(A), which are the only remaining avoidance claims in the Good Faith Actions.  However, the Trustee maintains that BLMIS' insolvency remains relevant as evidence supporting the existence of a Ponzi scheme.  (*See Trustee Brief* at 13 n. 35 (citing *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Grp., LLC*), 439 B.R. 284, 305-07 (S.D.N.Y. 2014)).)

did not pursue any discovery on this issue prior to the fact discovery deadlines and has

failed to establish "good cause" to take those depositions now.  In any event, he has

already rebutted Madoff's testimony on insolvency.

### 5.     Treasuries Issue

During his 2009 allocution, Madoff stated that he would tell split strike

conversion customers that he would opportunistically time stock purchases and be "out

of the market intermittently, investing client funds during these periods in United States

Government-issued securities, such as United States Treasury bills." (Madoff Allocution

at 26:7-11.)  Dubinsky addressed the purchase of U.S. Treasuries in his expert report.

He concluded that although there was evidence that BLMIS' proprietary trading

business (a branch of BLMIS not alleged to have been involved in the Ponzi scheme)

held Treasury bills, there was no evidence that BLMIS held Treasury bills on behalf of its

investment advisory customers.  (*See* Dubinsky Report ¶¶ 171-74.)

Madoff testified at his deposition that when customers deposited funds in their

BLMIS accounts for investment, those funds would either fund the withdrawal of

fictitious profits by other customers or be used by BLMIS to purchase U.S. Treasury

bills.  (Madoff Dep. 12/20/16 at 161:11-162:12.)  According to the Trustee, he should be

permitted to take the discovery because certain defendants have used Madoff's

deposition testimony regarding U.S. Treasuries to argue that BLMIS was not a Ponzi

scheme.  (*Trustee Brief* at 14.)

That Madoff was purchasing U.S. Treasuries was hardly a revelation; Dubinsky

covered this issue in his expert report.  If defendants intend to argue that BLMIS was a

legitimate business because it purchased U.S. Treasuries, that argument is not based on anything Madoff said; Dubinsky confirmed the purchases.  Some defendants have further argued that BLMIS allocated some of those U.S. Treasury transactions to customers.  But Madoff never said this.  Accordingly, Madoff's deposition testimony does not supply a reason for further discovery on this issue.

### 6.      Computer System Issue

Madoff stated at his deposition that BLMIS purchased an IBM AS/400 computer system for its investment advisory business around 1992.  (Madoff Dep. 4/26/17 at 13:2-11.)  This computer system generated the records associated with the investment advisory business including records showing fictitious securities transactions.  (*Id.* at 49:20-50:12; Madoff Dep. 11/9/17 at 559:3-560:8.)  Unlike the computers utilized by the non-fraudulent businesses of BLMIS, the IBM AS/400 was not linked to outside sources such as Bloomberg.  (Madoff Dep. 4/26/17 at 13:12-24.)[20]  The Trustee wants to depose additional BLMIS employees and submit a new expert report to show that the IBM AS/400 was incapable of generating actual trading activity.  (*Trustee Brief* at 15-16.)

Dubinsky addressed the inadequacies of the IBM AS/400 in his 2013 expert report.  (*See* Dubinsky Report ¶¶ 78-81, 214-32.)  He compared the computer systems used by BLMIS' proprietary trading business with the IBM AS/400 used by the investment advisory business and concluded, among other things, that "none of these trading systems necessary for the execution of securities [transactions] was found in the IA Business computer environment," (*id.* at ¶ 216), "the IA Business would have needed

---

[20]      Madoff also stated that the computers used by the investment advisory business prior to the IBM AS/400 were similarly not linked to outside sources.  (Madoff Dep. 4/26/17 at 14:12-22.)

to place the purported trades through either the Proprietary Trading Business or an outside broker-dealer; evidence of that occurring was not found," (*id.* at ¶ 218), "[a] detailed analysis of the code that was utilized shows that the IA Business did not have a legitimate trading system using algorithms to execute trades," (*id.* at ¶ 224), and "[a]s confirmed by internal BLMIS emails, this process [the random order generator program] was used to generate support for the fictitious backdated trades." (*Id.* at ¶ 231.) In other words, the IBM AS/400 computer could not be used to make actual trades and instead, was used to perpetuate the fraud by generating fictitious trades.

The Trustee has already procured an expert opinion regarding the inadequacies of the IBM AS/400 system. Accordingly, the Trustee has failed to show good cause to reopen discovery or submit a new expert report on the Computer System Issue.

## C.   **Leave to Depose Prisoners**

In the Good Faith Actions where fact discovery remains open, the Trustee seeks leave under Federal Civil Rule 30(a)(2)(B) to depose prisoners Bongiorno, Crupi and Bonventre. Leave to depose a prisoner should be granted unless the objecting party shows that the deposition would be unreasonably cumulative or duplicative, the party seeking the deposition has had ample opportunity to obtain the information sought, or the burden or expense of the deposition outweighs its likely benefit. *Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002); *accord* 7 James W. Moore, Moore's Federal Practice § 30.05[1][a] (3d ed. 2018).

The Chaitman Defendants assert that leave should be denied because allowing the depositions of the three prisoners, in addition to the three non-prisoner BLMIS

- 26 -

employees, would be duplicative and cumulative.  (*Chaitman Brief* at 16.)  The Court

disagrees.  Although each proposed deponent worked at BLMIS, they did not perform

identical functions.  According to the Trustee, (i) Bongiorno mainly worked on the non-

split-strike accounts and served as a point of contact for many customers, (ii) Bonventre

was BLMIS' director of operations, (iii) Cotellessa-Pitz was BLMIS' controller, (iv) Crupi

oversaw activity in customer accounts and monitored the bank accounts housing

customer funds, (v) Kugel was a trader specializing in convertible arbitrage transactions,

and (vi) Sala worked under Bongiorno.  (*See Trustee Brief* at 10-11.)  Moreover, Madoff

identified each of the three prisoners as individuals with relevant, first-hand knowledge.

(*E.g.*, Madoff Dep. 4/26/17 at 49:20-25 (stating that Bonventre was responsible for the

trading records generated by BLMIS); *id.* at 82:21-84:15 (stating that Bongiorno and

Crupi were involved in moving convertible bond trades into customer accounts); Madoff

Dep. 11/9/17 at 560:5-12 (assuming that Bongiorno was responsible for reviewing the

trade confirmations and customer statements generated by the IBM AS/400).)  Hence,

taking the depositions of the three prisoners would not be unreasonably cumulative or

duplicative.

### D.    Sanctions

Pursuant to Federal Civil Rule 16(f)(1)(C), the court may sanction a party or its

attorney for failure "to obey a scheduling or other pretrial order."  In addition, under

Federal Civil Rule 16(f)(2), the court must order the party and/or its attorney "to pay the

reasonable expenses – including attorney's fees – incurred because of any

noncompliance with this rule, unless the noncompliance was substantially justified or

other circumstances make an award of expenses unjust."  The Chaitman Defendants

suggest that, to the extent the Trustee's Motion is granted, the Court should sanction the

Trustee to bear the expenses of the additional discovery.  (*Chaitman Brief* at 17-18.)

The Chaitman Defendants' assertion makes no sense.  A party does not violate a

scheduling order by filing a motion to modify the same scheduling order under Federal

Civil Rule 16(b)(4).  Furthermore, the *Madoff Deposition Orders* made it entirely

foreseeable that a party, including the Trustee, would make a motion to reopen

discovery after the conclusion of the Madoff Deposition.  Therefore, no sanctions are

warranted against the Trustee.[21]

## CONCLUSION

For the reasons stated, the Trustee's Motion is granted in the Good Faith Actions

in which fact discovery is closed to allow the Trustee to depose one of the identified FBI

agents in connection with his recollection of Madoff's December 2008 proffer leading to

the FD-302 Statement.  In the Good Faith Actions in which fact discovery remains open,

the Trustee's request for leave under Federal Civil Rule 30(a)(2) to depose Bongiorno,

Crupi and Bonventre is granted.  The Motion is otherwise denied.  Settle order in each

---

[21]      In addition, the Chaitman Defendants assert that the Trustee had failed to comply with orders
requiring him to produce certain BLMIS trading records.  (*Chaitman Brief* at 2-3, 4-5, 12-13.)  The parties
arbitrated this dispute, and the Arbitrator rejected the Chaitman Defendants' arguments in a recent order.
(*See Discovery Arbitrator's Order*, dated Dec. 24, 2018, at 6-7 ("I find that there is no basis for requiring
the Trustee to supplement the extensive efforts that he has already undertaken by affording Ms. Chaitman
unfettered access to the BLMIS Database or requiring him to rummage through all of the boxes in the
warehouse in an attempt to find additional pre-1992 third-party trading records.") (ECF Doc. # 18354).)

affected Good Faith Action attaching a copy of this memorandum decision.


Dated: New York, New York
       February 15, 2019


                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge

## Schedule A

|      | Adv. Proc. No. | Defendant(s) |
|------|----------------|--------------|
| 1.   | 10-04292 | Robert Roman |
| 2.   | 10-04302 | Joan Roman |
| 3.   | 10-04327 | Gertrude E. Alpern Revocable Trust, et al. |
| 4.   | 10-04332 | Barry Weisfeld |
| 5.   | 10-04352 | RAR Entrepreneurial Fund LTD, et al. |
| 6.   | 10-04357 | James Greiff |
| 7.   | 10-04362 | Sage Associates, et al. |
| 8.   | 10-04367 | Benjamin T. Heller |
| 9.   | 10-04397 | Fern C. Palmer Revocable Trust Dtd 12/31/9, et al. |
| 10.  | 10-04400 | Sage Realty, et al. |
| 11.  | 10-04401 | Rose Gindel Trust, et al. |
| 12.  | 10-04415 | The Estate of Barbara Berdon, et al. |
| 13.  | 10-04428 | Estate of Allen Meisels, et al. |
| 14.  | 10-04438 | Estate of Seymour Epstein, et al. |
| 15.  | 10-04446 | Trust Dated 12/6/99 Walter and Eugenie Kissinger, et al. |
| 16.  | 10-04469 | Carol L. Kamenstein, individually and in her capacity as joint tenant |
| 17.  | 10-04486 | The Norma Shapiro Revocable Declaration of Trust Under Agreement Date |
| 18.  | 10-04489 | Marlene Krauss |
| 19.  | 10-04491 | Elaine Dine Living Trust dated 5/12/06, et al. |
| 20.  | 10-04503 | Judd Robbins |
| 21.  | 10-04539 | The Gerald and Barbara Keller Family Trust, et al. |
| 22.  | 10-04541 | Kenneth W Perlman, et al. |
| 23.  | 10-04545 | Jerome Goodman, et al. |
| 24.  | 10-04562 | Robert F. Ferber |
| 25.  | 10-04570 | Jacob M. Dick Rev Living Trust DTD 4/6/01, et al. |
| 26.  | 10-04610 | The Whitman Partnership, et al. |

| 27. | 10-04614 | Robert S. Whitman |
| 28. | 10-04621 | Donald A. Benjamin |
| 29. | 10-04644 | Russell L. Dusek |
| 30. | 10-04648 | Peter D. Kamenstein |
| 31. | 10-04655 | Jaffe Family Investment Partnership, et al. |
| 32. | 10-04672 | Sidney Cole |
| 33. | 10-04702 | S&L Partnership, a New York partnership, et al. |
| 34. | 10-04709 | Andrew M. Goodman |
| 35. | 10-04718 | The Jordan H. Kart Revocable Trust, et al. |
| 36. | 10-04728 | Estate of Bruno L. Di Giulian, et al. |
| 37. | 10-04740 | Robert Hirsch, as an individual, and as joint tenant, et al. |
| 38. | 10-04748 | Mark Horowitz |
| 39. | 10-04749 | Philip F. Palmedo |
| 40. | 10-04752 | Kuntzman Family LLC, et al. |
| 41. | 10-04753 | Carla Ginsburg |
| 42. | 10-04762 | James M. Goodman |
| 43. | 10-04768 | Placon2, William R. Cohen, et al. |
| 44. | 10-04806 | Kenneth M. Kohl, as an individual and as a joint tenant, et al. |
| 45. | 10-04809 | Edyne Gordon NTC |
| 46. | 10-04818 | Toby Harwood |
| 47. | 10-04823 | Frank DiFazio, et al. |
| 48. | 10-04826 | Boyer Palmer |
| 49. | 10-04837 | Leslie Ehrlich f/k/a Leslie Harwood , et al. |
| 50. | 10-04861 | Harold J. Hein |
| 51. | 10-04867 | Estate of Steven I. Harnick, et al. |
| 52. | 10-04878 | Lisa Beth Nissenbaum Trust, et al. |
| 53. | 10-04882 | Laura E. Guggenheimer Cole |
| 54. | 10-04889 | Estate of Robert Shervyn Savin, et al. |
| 55. | 10-04905 | Train Klan, a Partnership, et al. |
| 56. | 10-04912 | Harry Smith Revocable Living Trust, et al. |

| 57. | 10-04914 | Edyne Gordon |
|-----|----------|--------------|
| 58. | 10-04920 | Glenhaven Limited, et al. |
| 59. | 10-04921 | Stanley T. Miller |
| 60. | 10-04925 | Alvin Gindel Revocable Trust, a Florida trust, et al. |
| 61. | 10-04931 | Cantor, et al. |
| 62. | 10-04956 | D. M. Castelli |
| 63. | 10-04961 | Sylvan Associates LLC f/k/a Sylvan Associates Ltd Partnership, et al. |
| 64. | 10-04979 | James M. New Trust dtd 3/19/01, et al. |
| 65. | 10-04991 | Guiducci Family Limited Partnership, et al. |
| 66. | 10-04995 | Trust U/Art Fourth O/W/O Israel Wilenitz, et al. |
| 67. | 10-05026 | Walter Freshman Trust A, a Florida trust, et al. |
| 68. | 10-05037 | Barbara L. Savin |
| 69. | 10-05079 | Estate of James M. Goodman, et al. |
| 70. | 10-05104 | The Gloria Albert Sandler and Maurice Sandler Revocable Living Trust |
| 71. | 10-05124 | The Lawrence J. Ryan and Theresa R. Ryan Revocable Living Trust, et al. |
| 72. | 10-05127 | Atwood Management Profit Sharing Plan & Trust, etc., et al. |
| 73. | 10-05128 | JABA Associates LP, et al. |
| 74. | 10-05130 | Barbara Kotlikoff Harman |
| 75. | 10-05133 | Boyer H. Palmer, individually, et al. |
| 76. | 10-05150 | Plafsky Family LLC Retirement Plan, Robert Plafsky, et al. |
| 77. | 10-05151 | Palmer Family Trust, et al. |
| 78. | 10-05157 | The Harnick Brothers Partnership, et al. |
| 79. | 10-05184 | Laura Ann Smith Revocable Living Trust, et al. |
| 80. | 10-05196 | Whitman 1990 Trust U/A DTD 4/13/90, et al. |
| 81. | 10-05209 | Lapin Children LLC |
| 82. | 10-05236 | Toby T. Hobish, et al. |
| 83. | 10-05257 | Edward A. Zraick, Jr., individually and as joint tenant, et al. |
| 84. | 10-05312 | Doron Tavlin Trust U/A 2/4/91, et al. |
| 85. | 10-05377 | Richard G. Eaton |

| 86. | 10-05384 | Neil Reger Profit Sharing Keogh, et al. |
| 87. | 10-05420 | Gunther K. Unflat, et al. |
| 88. | 10-05435 | Keith Schaffer, et al. |