Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
David J. Sheehan
Seanna R. Brown
Heather R. Wlodek

Hearing Date: April 24, 2019
Hearing Time: 10:00 a.m. (EST)
Objection Deadline:  April 17, 2019
Time: 4:00 p.m. (EST)

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. No. 08-01789 (SMB) |
| Plaintiff, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |

**TWENTY-NINTH APPLICATION OF TRUSTEE AND BAKER & HOSTETLER LLP
FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED
FROM AUGUST 1, 2018 THROUGH NOVEMBER 30, 2018**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.    BACKGROUND ........................................................................................................4

    A.    THE SIPA LIQUIDATION ..........................................................................4

    B.    THE TRUSTEE, COUNSEL AND CONSULTANTS ...........................................5

    C.    PRIOR COMPENSATION ORDERS.................................................................5

III.    SUMMARY OF SERVICES ......................................................................................7

    A.    HARDSHIP PROGRAM.................................................................................7

    B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY .....................8

        a.    Recoveries Accomplished During the Compensation Period.....................8

IV.    DETAILED DESCRIPTION OF SERVICES ..............................................................9

    A.    MATTER 01 ...............................................................................................9

        a.    Task Code 01: Trustee Investigation .................................................9

        b.    Task Code 02: Bankruptcy Court Litigation................................10

        c.    Task Code 03: Feeder Funds.........................................................18

        d.    Task Code 04: Asset Search and Sale.............................................18

        e.    Task Code 05: Internal Meetings with Staff...................................19

        f.    Task Code 07: Billing and Trustee Reports.....................................19

        g.    Task Code 08: Case Administration ...............................................19

        h.    Task Code 09: Banks .....................................................................20

        i.    Task Code 10: Court Appearances .................................................21

        j.    Task Code 11: Press Inquiries and Responses.............................21

        k.    Task Code 12: Document Review ...................................................21

        l.    Task Code 13: Depositions and Document Productions by the Trustee...................................................................................21

        m.    Task Code 15: Charities..................................................................22

        n.    Task Code 19: Non-Bankruptcy Litigation.................................22

        o.    Task Code 20: Governmental Agencies ..........................................22

        p.    Task Code 21: Allocation ...............................................................22

    B.    MATTER 05 – CUSTOMER CLAIMS ........................................................24

**TABLE OF CONTENTS**
**(continued)**

**Page**

    a.    Customer Claims ........................................................24

    b.    General Creditor Claims ...........................................24

    c.    The Trustee Has Kept Customers Informed Of The Status
           Of The Claims Process ..............................................25

C.    MATTER 07 – MADOFF FAMILY ......................................26

D.    MATTER 09 – FAIRFIELD GREENWICH ..........................28

E.    MATTER 11 – COHMAD SECURITIES CORPORATION ..............34

F.    MATTER 13 – KINGATE .....................................................35

G.    MATTER 21 – AVOIDANCE ACTION LITIGATION and MATTER 75 –
       GOOD FAITH 5A COHMAD REFERRED ACCOUNTS ................38

    a.    Resolution of Good Faith Avoidance Actions ............39

    b.    Summary Judgment Motions ......................................39

    c.    Motions To Withdraw The Reference ........................42

    d.    Trial-Related Motion Practice ....................................43

    e.    District Court Proceedings ..........................................46

H.    MATTER 29 – RYE/TREMONT ..........................................47

I.    MATTER 30 – HSBC ............................................................49

J.    MATTER 32 – LUXALPHA UBS/LIF ................................50

K.    MATTER 34 – CITIBANK ....................................................53

L.    MATTER 35 – NATIXIS ........................................................56

M.    MATTER 37 – ABN AMRO ..................................................58

N.    MATTER 39 – FORTIS ........................................................62

O.    MATTER 42 – EQUITY TRADING ....................................65

P.    MATTER 53 – MAGNIFY ....................................................66

Q.    MATTER 59 – STANLEY SHAPIRO ..................................68

R.    MATTER 60 – AVELLINO ..................................................69

S.    MATTER 62 – SUBSEQUENT TRANSFERS ....................71

T.    MATTER 65 – LEGACY ......................................................72

U.    MATTER 71 – SQUARE ONE ..............................................73

**TABLE OF CONTENTS**
**(continued)**

|  |  | **Page** |
|---|---|---|
| V. | MATTER 73 – BNP PARIBAS | 74 |
| W. | MATTER 77 – EXTRATERRITORIALITY | 75 |
| V. | COMPENSATION REQUESTED | 76 |
| VI. | REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED | 80 |
| VII. | CONCLUSION | 82 |

**TO THE HONORABLE STUART M. BERNSTEIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Baker & Hostetler LLP ("B&H"), as counsel to Irving H. Picard, Esq., trustee (the "Trustee") for the substantively consolidated liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] and the chapter 7 case of Bernard L. Madoff ("Madoff"), individually (collectively, the "Debtor"), respectfully submits this twenty-ninth application (the "Application") on behalf of the Trustee and itself for an order pursuant to § 78eee(b)(5) of SIPA, §§ 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Order Pursuant to § 78eee(b)(5) of SIPA, sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Baker & Hostetler LLP, dated February 25, 2009 (ECF No. 126), as amended on December 17, 2009 and June 1, 2011 (ECF Nos. 1078, 4125) (collectively, the "Second Amended Compensation Order"), allowing and awarding (i) interim compensation for services performed by the Trustee and B&H for the period commencing August 1, 2018 through and including November 30, 2018 (the "Compensation Period"), and (ii) reimbursement of the Trustee's and B&H's actual and necessary expenses incurred during the Compensation Period, and in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The work completed as counsel to the Trustee during the Compensation Period yielded significant results for BLMIS customers and the liquidation. Through pre-litigation and

---

[1] References hereinafter to provisions of SIPA shall omit "15 U.S.C."

other settlements, which were approved by the Bankruptcy Court and/or the District Court, the Trustee has successfully recovered, or reached agreements to recover, over $13.355 billion as of January 31, 2019[2] for the benefit of all customers of BLMIS with an allowed claim.

2.      The Trustee has made ten interim distributions of customer property to date. *See* discussion *infra* Section IV(A)(p). The Trustee has distributed approximately $12.38 billion to BLMIS customers through February 22, 2019, inclusive of SIPC advances in the amount of $845.16 million.[3] *See* discussion *infra* Section IV(A)(p).

3.      No administration costs, including the compensation of the Trustee and his counsel, will be paid out of any recoveries obtained by the Trustee for the benefit of BLMIS customers. Because the percentage commission schedule for trustees found in § 326(a) of the Bankruptcy Code is not applicable in a SIPA liquidation, *see* § 78eee(b)(5)(C) of SIPA, no applications filed by the Trustee have or will ever include a fee request based on recoveries made by the Trustee for the benefit of BLMIS customers. Rather, all fees, expenses, and administrative costs incurred by the Trustee and his counsel including, but not limited to, B&H; various international special counsel retained by the Trustee (collectively referred to herein as "International Counsel"), including Browne Jacobson LLP ("Brown Jacobson"), Soroker-Agmon  ("Soroker"), Williams Barristers & Attorneys ("Williams Barristers"); various special counsel to the Trustee (collectively referred to herein as "Counsel"), including Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), and consultants, are paid out of administrative advances made by SIPC, as SIPA plainly directs. As Judge Lifland affirmed:

---

[2] In general, figures will be reported as of November 30, 2018, unless otherwise noted.

[3] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,490,000 SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date. 1,423 BLMIS accounts have been fully satisfied.

"Again, the emphasis is that these fees . . . are not coming from any of the victims, and they're not coming from the estate." Fifth Appl. Hr'g Tr. 32:15-17, Dec. 14, 2010.

4.      As the Trustee's and his counsels' fees and expenses are chargeable to the general estate and not to the fund of customer property (the "Customer Fund"), the payment of the same has absolutely no impact on the Trustee's current and future recoveries that have been and will be allocated to the Customer Fund for pro rata distribution to BLMIS customers whose claims have been allowed by the Trustee.

5.      In a SIPA liquidation proceeding such as this, where the general estate is insufficient to pay trustee and counsel compensation, SIPC plays a specific role with compensation and is required to advance funds to pay the costs of administration. *See* SIPA §§ 78eee(b)(5)(c) and 78fff-3(b)(2).   SIPC staff has carefully reviewed this Application, as it has all other compensation applications, and has closely analyzed the time records and services rendered.  Each month, SIPC staff, the Trustee, and B&H engage in extensive discussions regarding billings, and the Trustee and B&H make reductions where appropriate and finalize the amounts that appear herein.  Thus, the requested fees and expenses in this Application include (i) fees at the Trustee's and B&H's hourly billable rates to which a public interest discount of 10% has been applied, and (ii) actual, necessary, and reasonable expenses incurred within the Compensation Period.

6.      During the hearing on the Eighth Interim Fee Application, Judge Lifland acknowledged the worldwide efforts of the Trustee and his counsel and approved the application:

> Well, having heard the description and being well aware of the worldwide activities started off by Bernie Madoff and the sequelae is left for everybody else to follow all the trails and the trails do lead almost everywhere in the world.  It is clear under the circumstances that a Herculean effort to follow those trails has been involved both with counsel here in the United States and counsel overseas.

Eighth Appl. Hr'g Tr. 16, Mar. 15, 2012, ECF No. 4736.

7.      No single document can capture all of the tasks engaged in by the Trustee and B&H

since their appointment on December 15, 2008.   Hundreds of thousands of hours have been

expended in support of the Trustee's efforts to liquidate the estate, determine customer claims, and

advance the interests of all claimants by litigating and settling cases for the return of customer

property ("Customer Property").   Moreover, the Trustee has vigorously defended the estate with

respect to a number of litigations filed against it and against his protection of Customer Property.

The following discussion and materials attached to this Application cover the major categories of

services for which allowance of compensation is sought.

8.      As Judge Lifland recognized, "[w]ith respect to the kinds of services that have been

rendered here, the amounts requested, this is by any stretch of the imagination one of the largest,

most complex sets of litigation that have come down the pike.   It's measured both in quality and

quantity in the thousands with deadlines that have come . . . and it is a big stretch for any law firm

or any organization to deal with."   Sixth Fee Appl. Hr'g Tr. 45:23-46:6, June 1, 2011.

## II.     BACKGROUND

### A.      THE SIPA LIQUIDATION

9.      The Trustee and B&H's prior interim fee applications, each of which is fully

incorporated herein,[4] have detailed the circumstances surrounding the filing of this case and the

events that have taken place during prior phases of this proceeding.

---

[4] Prior fee applications cover the periods from December 11, 2008 to May 31, 2009 (the "First Interim Fee Application") (ECF No. 320, 321); June 1, 2009 to September 30, 2009 (the "Second Interim Fee Application") (ECF No. 998, 1010); October 1, 2009 to January 31, 2010 (the "Third Interim Fee Application") (ECF No. 2188, 2189); February 1, 2010 to May 31, 2010 (the "Fourth Interim Fee Application") (ECF No. 2883); June 1, 2010 to September 30, 2010 (the "Fifth Interim Fee Application") (ECF No. 3207); October 1, 2010 to January 31, 2011 (the "Sixth Interim Fee Application") (ECF No. 4022); February 1, 2011 to May 31, 2011 (the "Seventh Interim Fee Application") (ECF No. 4376); June 1, 2011 to September 30, 2011 (the "Eighth Interim Fee Application") (ECF No. 4676); October 1, 2011 to January 31, 2012 (the "Ninth Interim Fee Application") ("ECF No. 4936); February 1, 2012 to June 30, 2012 (the "Tenth Interim Fee Application") (ECF No. 5097); July 1, 2012 to November 30, 2012 (the "Eleventh Interim Fee Application") (ECF No. 5333); December 1, 2012 to April 30, 2013 (the "Twelfth Interim Fee Application") (ECF No. 5490); and May 1, 2013 through July 31, 2013 (the "Thirteenth Interim Fee Application") (ECF No. 5566); August 1, 2013 through November 30, 2013 (the "Fourteenth Interim Fee Application") (ECF No.

4

## B.    THE TRUSTEE, COUNSEL AND CONSULTANTS

10.    The Trustee and B&H's prior interim fee applications have detailed the description of the Trustee's background and experience.

11.    In rendering professional services to the Trustee, B&H has utilized a legal team comprised of professionals with extensive experience in areas such as bankruptcy, securities, tax, corporate, and litigation, permitting the Trustee to conduct this liquidation efficiently.

12.    The Ponzi scheme perpetrated by Madoff through BLMIS was vast in scope, long in duration, and broad in its geographical reach.  The Trustee, with the assistance of his counsel, has undertaken a comprehensive investigation of BLMIS, Madoff, and hundreds of related individuals and entities.  To this end, the Trustee has engaged not only the services of counsel, but also those of forensic accountants and legal experts, including, but not limited to, AlixPartners LLP ("AlixPartners"), the Trustee's consultant and claims agent; FTI Consulting ("FTI"); and several investigative and industry consultants (collectively referred to herein as the "Consultants").

## C.    PRIOR COMPENSATION ORDERS

13.    The Trustee and B&H filed applications for allowance of interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in prior periods, and this Court approved those applications:

---

5980); December 1, 2013 through March 31, 2014 (the "Fifteenth Interim Fee Application") (ECF No. 7470); April 1, 2014 through July 31, 2014 (the "Sixteenth Interim Fee Application") (ECF No. 8549); August 1, 2014 through November 30, 2014 (the "Seventeenth Interim Fee Application") (ECF No. 9583); December 1, 2014 through March 31, 2015 (the "Eighteenth Interim Fee Application") (ECF No. 10814); April 1, 2015 through July 31, 2015 (the "Nineteenth Interim Fee Application") (ECF No. 12089); August 1, 2015 through November 30, 2015 (the "Twentieth Interim Fee Application") (ECF No. 12958); December 1, 2015 through March 31, 2016 (the "Twenty-First Interim Fee Application") (ECF No. 13751); April 1, 2016 through July 31, 2016 (the "Twenty-Second Interim Fee Application") (ECF No. 14456); August 1, 2016 through November  30, 2016 (the "Twenty-Third Interim Fee Application") (ECF No. 15355); December 1, 2016 through March 31, 2017 (the "Twenty-Fourth Interim Fee Application") (ECF No. 16367); April 1, 2017 through July 31, 2017 (the "Twenty-Fifth Interim Fee Application") (ECF No. 16886); August 1, 2017 to November 30, 2017 (the "Twenty-Sixth Interim Fee Application") (ECF No. 17337); December 1, 2017 to March 31, 2018 (the "Twenty-Seventh Interim Fee Application") (ECF No. 17763); and April 1, 2018 to July 31, 2018 (the "Twenty-Eighth Interim Fee Application") (ECF No. 18180).

| **Applications** | **Orders Entered**[5] |
|---|---|
| First Application (ECF Nos. 320, 321) | August 6, 2009 (ECF No. 363); March 7, 2013 (ECF No. 5258) |
| Second Application (ECF Nos. 998, 1010) | December 17, 2009 (ECF No. 1078) |
| Third Application (ECF Nos. 2188, 2189) | May 6, 2010 (ECF No. 2251) |
| Fourth Application (ECF No. 2883) | September 14, 2010 (ECF No. 2981) |
| Fifth Application (ECF No. 3207) | December 14, 2010 (ECF No. 3474); March 7, 2013 (ECF No. 5258) |
| Sixth Application (ECF No. 4022) | June 1, 2011 (ECF No. 4125); March 7, 2013 (ECF No. 5258) |
| Seventh Application (ECF No. 4376) | October 19, 2011 (ECF No. 4471); March 7, 2013 (ECF No. 5258) |
| Eighth Application (ECF No. 4676) | January 2, 2013 (ECF No. 5181);[6] March 7, 2013 (ECF No. 5258) |
| Ninth Application (ECF No. 4936) | August 30, 2012 (ECF No. 5012); March 7, 2013 (ECF No. 5258) |
| Tenth Application (ECF No. 5097) | December 19, 2012 (ECF No. 5161); March 7, 2013 (ECF No. 5258) |
| Eleventh Application (ECF No. 5333) | June 5, 2013 (ECF No. 5383) |
| Twelfth Application (ECF No. 5490) | October 17, 2013 (ECF No. 5547) |
| Thirteenth Application (ECF No. 5566) | December 17, 2013 (ECF No. 5605) |
| Fourteenth Application (ECF No. 5980) | April 18, 2014 (ECF No. 6343) |
| Fifteenth Application (ECF No. 7470) | August 28, 2014 (ECF No. 7825) |
| Sixteenth Application (ECF No. 8549) | December 22, 2014 (ECF No. 8867) |
| Seventeenth Application (ECF No. 9583) | April 16, 2015 (ECF No. 9823) |
| Eighteenth Application (ECF No. 10814) | August 27, 2015 (ECF No. 11148) |

---

[5] On March 7, 2013, this Court entered an Errata Order (ECF No. 5258) to correct errors in the First, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth orders approving prior applications for allowance of interim compensation that were filed by the Trustee, B&H, and certain of the Counsel and International Counsel retained by the Trustee. The Errata Order did not affect the amount of compensation payable to the Trustee, B&H, or any of the Trustee's Counsel and International Counsel other than, with respect to SCACreque, an additional $0.60 became due and owing to that firm.

[6] This order amends and supersedes this Court's March 19, 2012 order (ECF No. 4735), approving the Eighth Interim Fee Application.

| **Applications** | **Orders Entered**[5] |
|---|---|
| Nineteenth Application (ECF No. 12089) | December 18, 2015 (ECF No. 12292) |
| Twentieth Application (ECF No. 12958) | April 28, 2016 (ECF No. 13180) |
| Twenty-First Application (ECF No. 13751) | September 8, 2016 (ECF No. 13990) |
| Twenty-Second Application (ECF No. 14456) | December 23, 2016 (ECF No. 14778) |
| Twenty-Third Application (ECF No. 15355) | May 10, 2017 (ECF No. 15984) |
| Twenty-Fourth Application (ECF No. 16367) | August 24, 2017 (ECF No. 16562) |
| Twenty-Fifth Application (ECF No. 16886) | December 21, 2017 (ECF No. 17072) |
| Twenty-Sixth Application (ECF No. 17337) | April 25, 2018 (ECF No. 17524) |
| Twenty-Seventh Application (ECF No. 17763) | August 30, 2018 (ECF No. 17941) |
| Twenty-Eighth Application (ECF No. 18180) | December 20, 2018 (ECF No. 18324) |

## III.    SUMMARY OF SERVICES

14.    A SIPA proceeding contemplates, *inter alia*, the processing of customer claims, the orderly liquidation of the business of a broker-dealer, and the return of Customer Property to the failed brokerage's customers.    Accordingly, the Trustee's and B&H's services, which are summarized in greater detail below, are comprised of specific tasks that are critical to accomplishing those objectives.

### A.    HARDSHIP PROGRAM

15.    As of November 30, 2018, the Trustee had received 457 applications from avoidance action defendants relating to 302 adversary proceedings and 635 defendants.    After reviewing the facts and circumstances presented in each application and, in many cases, requesting additional verifying information, the Trustee dismissed 277 Hardship Program applicants-defendants from avoidance actions.    As of November 30, 2018, there were 10 Hardship Program applicants-defendants still under review and 348 applicants-defendants were resolved because they

7

were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. The Trustee has also extended the time for applicants to answer or otherwise respond to avoidance action complaints while their Hardship Program applications are pending. Hardship applications continue to be submitted.

**B.    THE RECOVERY AND RETURN OF CUSTOMER PROPERTY**

**a.    Recoveries Accomplished During the Compensation Period**

16.    Without the need for protracted litigation, during the Compensation Period, the Trustee settled 13 cases for $23,361,855.05. As of November 30, 2018, the Trustee had successfully recovered approximately $13.313 billion.[7]

17.    The Trustee entered into settlements subsequent to the Compensation Period that will bring additional funds into the Customer Fund.

18.    The Trustee is also engaged in ongoing settlement negotiations with a number of parties that when completed, will result in additional recoveries for the benefit of customers without the delay and expense of protracted litigation.

19.    Through the end of the Compensation Period, the Trustee recovered $536,092,384.27 as a result of preferences and other settlements that were made pursuant to agreements subject to the net equity dispute. The United States Supreme Court (the "Supreme Court") declined to review the net equity dispute.

---

[7] As of January 31, 2019, the Trustee has successfully recovered, or reached agreements to recover, more than $13.355 billion.

## IV.    DETAILED DESCRIPTION OF SERVICES

20.    Given the unprecedented fraud perpetrated by Madoff, the issues presented by this liquidation are complex, discovery is wide-ranging, and the litigation that has ensued is hotly contested.  All of this requires an enormous effort by the Trustee and his counsel for the benefit of the victims.  The following is a more detailed synopsis of the significant services rendered by the Trustee and B&H during the Compensation Period, organized according to internal B&H matter numbers and task codes.

21.    Matter Number 01 is the general matter number used for tasks by the Trustee and B&H.  Task numbers for Matter Number 01 have been assigned for specific categories of work to permit a more detailed analysis of the fees incurred.

22.    Matter Numbers 03-73 (with the exception of Matter Number 05, which relates to customer claims) relate to litigation brought by the Trustee and B&H against various individuals, feeder funds, and entities.  In each of these matters, the Trustee and B&H attorneys perform several functions, including the following tasks: conduct legal research, draft internal memoranda, engage in internal meetings regarding investigation and litigation strategy, and engage in discussions with counsel for defendant(s).  Rather than repeat these tasks, the description of each matter will be limited to matter-specific tasks and case activity that occurred during the Compensation Period.

### A.    MATTER 01

23.    This matter categorizes time spent by the Trustee and B&H and encompasses the below enumerated tasks.

#### a.    Task Code 01: Trustee Investigation

24.    This category relates to time spent with respect to the investigation into BLMIS, Madoff, and various assets.

25.     The Trustee is seeking the return of billions of dollars to the estate of BLMIS for distribution to customers in accordance with SIPA. In carrying out his investigation into the many layers of complex financial transactions engaged in by Madoff and those who worked for him, the Trustee has issued hundreds of subpoenas, analyzed the myriad of documentation received, and conducted numerous follow-up activities to enforce the Trustee's rights to the return of Customer Property.

26.     During the Compensation Period, the Trustee and B&H attorneys initiated, participated in, and monitored international proceedings involving BLMIS. B&H attorneys continued the investigation of banks, feeder funds, auditors, insiders, Madoff's friends and family members, former BLMIS employees, and other Madoff-related parties.

27.     B&H attorneys discussed and conferenced with SIPC, Windels Marx, Young Conaway, and International Counsel regarding investigation and litigation strategy, prepared requests for discovery, negotiated other discovery-related issues with adversaries, and organized and reviewed documents received in response to third-party inquiries and subpoenas.

### b.      Task Code 02: Bankruptcy Court Litigation

28.     This category relates to time spent conducting legal research, drafting, and filing various pleadings and motions in the main bankruptcy proceeding that affect the hundreds of adversary proceedings filed by the Trustee.

29.     During the Compensation Period, B&H attorneys focused on various administrative tasks relating to the pending litigations. They continued to develop overall case strategies applicable to the pending litigations and researched various legal issues related to those litigations including developments in Ponzi law, fraudulent transfer law, bankruptcy matters, privilege, evidence, and rules regarding experts and expert testimony.

30.    On December 5, 2014, this Court issued an opinion and order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims. *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). In February 2015, five separate appeals were filed in the District Court, challenging the Bankruptcy Court's order affirming the Trustee's treatment of inter-account transfers as that method relates to application of the net investment method to calculation of a customer's net equity claims. (Case Nos. 15-cv-01151; 15-cv-01195; 15-cv-01223; 15-cv-01236; 15-cv-01263 (S.D.N.Y.)). Oral argument was held before the Honorable Paul A. Engelmayer on September 17, 2015. The District Court affirmed the Bankruptcy Court's decision on January 14, 2016 and entered its final order and judgment on January 28, 2016. *Diana Melton Trust, Dated 12/05/05 v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 115 Civ. 1151(PAE), 2016 WL 183492*1 (S.D.N.Y. Jan. 14, 2016), appeal docketed, No. 16-413 (2d Cir. Feb. 16, 2016).

31.    On February 11 and 12, 2016, three appeals were taken from Judge Engelmayer's order to the Second Circuit. *Blecker v. Picard*, No. 15-cv-01236 (S.D.N.Y. Feb. 12, 2016), (ECF No. 45); *Zraick v. Picard*, No. 15-cv-01195 (S.D.N.Y. Feb. 12, 2016), (ECF No. 34); *Sagor v. Picard*, No. 15-cv-1263 (S.D.N.Y. Feb. 12, 2016), (ECF No. 41). The Trustee subsequently moved to consolidate the three appeals and set a common briefing schedule on March 18, 2016; that motion was granted on March 23, 2016. *See Sagor v. Picard*, No. 16-413 (2d Cir.), (ECF No. 34); *Zraick et al. v. Picard*, Case No. 16-420 (2d Cir.), (ECF No. 34); *Blecker et al. v. Picard*, Case No. 16-423 (2d Cir.), (ECF No. 39).

32.    The appellants filed three opening briefs on May 23, 2016. (ECF Nos. 134, 140 and 141). B&H attorneys filed the Trustee's opposition on August 22, 2016. (ECF No. 166). SIPC's opposition brief was filed on August 23, 2016 (ECF No. 170), and an amicus brief was filed on

May 31, 2016 (ECF No. 155). Replies were filed on September 29 and 30, 2016 (ECF Nos. 184, 186 and 187). The Second Circuit heard arguments on the inter-account transfer appeals on May 11, 2017. On June 1, 2017, the Second Circuit issued its decision affirming the District Court's ruling, finding that the inter-account transfer method appropriately applies the net investment method to transfers between BLMIS accounts. *Sagor, et al. v. Picard et al. (In re Bernard L. Madoff Inv. Sec., LLC)*, 697 F. App'x 708 (2d Cir. 2017). The Second Circuit rejected appellants' arguments because to apply a method other than the inter-account transfer method would require granting credit for "fictitious and arbitrarily assigned paper profits" to the recipient account. *Id.* at 712, 713. Such a result, the Second Circuit held, would give "legal effect to Madoff's machinations" and be tantamount to the "lend[ing] its power to assist or protect a fraud." *Id* at 712.

33. On June 19, 2017, Elliot Sagor petitioned for a rehearing *en banc* by the Second Circuit. (ECF No. 261). The Court of Appeals denied Sagor's petition without opinion on July 6, 2017. (ECF No. 265). The deadline for the appellants to file a petition for writ of certiorari to the Supreme Court expired on October 4, 2017. No petitions were filed.

34. While the inter-account transfer matter was being litigated in the Bankruptcy Court, one customer raised an issue with respect to certain withdrawals that were reflected on his BLMIS customer account statements. *See* Declaration of Aaron Blecker in Opposition to the Trustee's Motion to Affirm the Application of the Net Investment Method to the Determination of Customer Transfers Between BLMIS Accounts (ECF No. 6761). Upon further review and analysis, the Trustee discovered that several hundred accounts contained the notation "PW." In light of the large number of impacted accounts, the Trustee sought to institute an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. *See* Amended Motion for Order

Establishing Schedule For Limited Discovery & Briefing On Profit Withdrawal Issue (ECF No.

10017).  On June 25, 2015, the Bankruptcy Court entered a scheduling order, which set forth

various deadlines for briefing and discovery related to the Profit Withdrawal issue.  *See* Order

Establishing Schedule for Limited Discovery and Briefing on Profit Withdrawal Issue (ECF No.

10266).  Pursuant to that scheduling order, B&H attorneys produced documents and addressed

discovery-related matters with those claimants who elected to participate in the Profit Withdrawal

litigation.

35.    On December 28, 2015, Aaron Blecker—an active litigant in both the Profit

Withdrawal litigation and the inter-account transfer appeal, *see supra*—filed a Motion to Compel

the Trustee to Allow His SIPC Claim with an accompanying Declaration of Bernard L. Madoff

(ECF No. 12319).  The Trustee opposed the Blecker Motion to Compel on the grounds that it was

an attempt to contravene both the Profit Withdrawal litigation schedule and the Claims Procedure

Order (ECF No. 12), which sets forth the procedures for determination and adjudication of claims

in this SIPA liquidation.  (ECF No. 12432).  The Bankruptcy Court heard arguments on the Blecker

Motion to Compel on February 24, 2016 and denied the motion as outside the procedures for

resolving the Profit Withdrawal transactions and premature in light of the questions of fact still

surrounding Mr. Blecker's accounts and claims.

36.    Following the February 24, 2016 hearing, counsel for Aaron Blecker and several

participating claimants moved for an Order Authorizing the Deposition of Bernard L. Madoff

(ECF Nos. 12799, 12800).  The Trustee opposed this motion on March 16, 2016, on the grounds

that the deposition would be of limited probative value as evidenced by Mr. Madoff's Declaration

filed in support of the Blecker Motion to Compel.  Alternatively, were the deposition to be allowed,

the Trustee requested that Mr. Madoff's testimony be limited only to issues related to Profit

13

Withdrawal transactions. (ECF No. 12892) After hearing arguments on March 23, 2016, this Court granted the Customers' motion to depose Mr. Madoff but with specific instructions limiting his testimony to the Profit Withdrawal litigation. (ECF No. 13060). Mr. Madoff's deposition was taken by counsel for Aaron Blecker on June 15, 2016 with counsel for the Trustee in attendance for purposes of cross-examination.

37.     In response to questions raised by this Court during the February 24, 2016 hearing, the Trustee moved for an Order Amending the Schedule of the Litigation of the Profit Withdrawal Issue to allow time for the depositions of former BLMIS employees who may have knowledge of the Profit Withdrawal transactions. (ECF No. 12865). On March 29, 2016, participating claimants Norman and Joel Blum filed an Opposition to the Trustee's Motion to Amend the Schedule of Litigation of the Profit Withdrawal Issue (ECF No. 12997). The Blums argued that the Trustee failed to set forth good cause showing how the depositions of former employees were likely to provide clarification of the Profit Withdrawal transactions. On April 5, 2016, the Bankruptcy Court granted the Trustee's Motion to Amend the Scheduling Order for the Profit Withdrawal litigation. *See* Hearing Transcript Regarding Trustee's Motion to Extend Discovery Deadline in Profit Withdrawal Proceeding, (ECF No. 13077 at 14:25-15:1). As a result, counsel for the Trustee deposed several former BLMIS employees in May and June of 2016 regarding their work with profit withdrawal transactions at BLMIS. In addition, counsel for the Trustee deposed Participating Claimants Drs. Norman and Joel Blum, on May 11 and 13, 2016, respectively.

38.     On July 12, 2016, this Court entered the Stipulation and Order on Schedule for Litigation of and Evidentiary Hearing on Profit Withdrawal Issue (ECF No. 13619), as agreed to by the parties, and modifying the April 5, 2016 amended scheduling order. Pursuant to the updated scheduling order, the Trustee filed his Supplemental Memorandum of Law in Support of Trustee's

14

Motion Affirming Treatment of Profit Withdrawal Transactions (ECF No. 13876), and SIPC filed its Supplemental Memorandum in Support of the Trustee's Motion (ECF No. 13872) on August 12, 2016. Participating Claimants subsequently filed two opposition briefs on September 23, 2016 (ECF Nos. 14161 and 14168).

39.     Pursuant to the July 12, 2016 Stipulation and Order, the Trustee and the Participating Claimants exchanged proposed evidentiary hearing exhibits, witness lists, and deposition designations on September 30, 2016. Shortly thereafter, the Trustee and counsel for the Participating Claimants filed motions *in limine* on October 28, 2016, filed oppositions on November 18, 2016, and filed replies on December 9, 2016. This Court heard oral argument on the motions *in limine* on April 18, 2017.

40.     On June 15, 2017, this Court entered its Memorandum Decision Regarding Motions *In Limine* (ECF No. 16180), granting the Trustee's motion to exclude himself as a witness in the Profit Withdrawal litigation and deferring a ruling until trial as to whether to exclude certain testimony of Drs. Joel and Norman Blum. The Court's Order granting the Trustee's Motion *in Limine* to Exclude the Trustee as a Witness and deferring its ruling on the Trustee's Motion *in Limine* to Exclude Certain Hearsay Testimony of Drs. Joel and Norman Blum was subsequently entered on June 29, 2017 (ECF No. 16288).

41.     Following oral argument on the motions *in limine*, the Trustee and the Blums agreed to: 1) settle the adversary proceeding, 2) the withdrawal of the Blums as participating claimants in the Profit Withdrawal litigation, and 3) the final resolution of their customer claims and their objections to the determination of those claims.

42.     The Court approved the settlement and on October 13, 2017, entered the Stipulation and Order as to Withdrawal of Norman, Joel, and Kerry Blum from the Profit Withdrawal litigation

15

(ECF No. 16767) and the Stipulation and Order for Voluntary Dismissal of the Trustee's Adversary Proceeding pending against Norman J. Blum (ECF No. 16766). In addition, and as part of the settlement, Norman, Joel and Kerry Blum withdrew their objections to the Trustee's determination of their customer claims (ECF Nos. 16760, 16761).

43.      During the pre-trial conference held before this Court on November 9, 2017, this Court scheduled the hearing to resolve the Profit Withdrawal issue for January 18 and 19, 2018 and confirmed that the hearing would serve to both resolve the omnibus issue regarding the Trustee's treatment of profit withdrawal transactions and resolve Mr. Aaron Blecker's individual claims objections. Shortly thereafter, the date of the hearing was rescheduled to begin on January 19, 2018 with additional dates to be scheduled if necessary.

44.      The Profit Withdrawal issue evidentiary hearing went forward on January 19, 2018. During the one-day evidentiary hearing, this Court heard testimony from Aaron Blecker's son, Robert Blecker, regarding his father's review of his BLMIS account statements and general investment strategy. The Court also heard testimony from the Trustee's expert witnesses, Matthew Greenblatt and Lisa Collura, regarding the reconstruction of the BLMIS books and records and the support therein for the Trustee's determination that profit withdrawal transactions should be treated as debits to the customer accounts. Judgment was reserved pending resolution of objections to exhibits on evidentiary grounds and post-hearing submissions.

45.      Since the evidentiary hearing, the Parties simultaneously submitted exhibits for the Court's consideration. Counsel for the Trustee submitted his Proposed Findings of Fact and Conclusions of Law to the Court on March 7, 2018, and the Participating Claimants submitted their Proposed Findings of Fact and Conclusions of Law on March 22, 2018. On July 27, 2018, this Court issued its Memorandum Decision and Order Regarding Treatment of Profit Withdrawal

Transactions upholding the Trustee's treatment of profit withdrawal transactions as debits to the customer's account and affirming the Trustee's determination of Mr. Blecker's customer claims. (ECF No. 17869).

46.    After consideration and review of the employee deposition testimony as well as BLMIS's books and records, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the profit withdrawal transaction.  As such, because Mr. Blecker failed to provide any credible, contrary evidence that the transactions with an "PW" notation appearing on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims.

47.    In accordance with the Decision, the Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018.  (ECF No. 17878).

48.    On August 10, 2018, Mr. Blecker, on behalf of himself and certain other participating claimants ("PW Appellants") appealed the Decision and Order Affirming the Trustee's Determination of Mr. Blecker's customer claims.  (ECF No. 17884).  The PW Appellants filed their designation of the issues on appeal as well as their designation of the record on appeal on August 24, 2018.  (ECF Nos. 17921 and 17922).  The Trustee filed his counter-designation of additional items to be included in the record on appeal on September 7, 2018.  (ECF No. 17956).

49.    While preparing the Trustee's designation of additional items to be included in the record on appeal, counsel for the Trustee identified certain errors and omissions in the PW Appellants' designation of the record on appeal.  As a result, the parties filed the Joint Notice

Correcting Record on Appeal in Profit Withdrawal Matter correcting the record on appeal in the Profit Withdrawal matter.  (ECF No. 18022).

50.    The PW Appellants filed their opening brief on November 2, 2018.  (ECF No. 18).  On December 14, 2018, the Trustee and SIPC filed their opposition briefs in support of the Bankruptcy Court's decision.  (ECF Nos. 19, 20).  The Appellants' reply was filed on January 18, 2019, ECF Nos. 23, 24, and the parties are currently awaiting a date for oral argument.

### c.    Task Code 03: Feeder Funds

51.    This categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery actions against entities which maintained accounts at BLMIS and had their own investors. The Trustee and his counsel continue to identify, investigate, and monitor feeder funds in the United States and abroad and prosecute actions against such feeder funds for the recovery of Customer Property.  Separate matter numbers have been assigned to individual feeder funds sued by the Trustee.

### d.    Task Code 04: Asset Search and Sale

52.    This category relates to time spent with respect to the discovery, recovery, and liquidation of various assets for the benefit of the estate.

53.    During the Compensation Period, the Trustee and B&H attorneys conducted additional due diligence in furtherance of the liquidation of assets previously held by the Estates of Messrs. Andrew and Mark Madoff, Madoff Family, LLC, Madoff Energy LLC, Madoff Energy III LLC, 4th & Forty, Stemline, Neuberger Berman, Madoff Brokerage and Trading Technology LLC, AHM Ventures, LLC, and Madoff Technologies LLC and their affiliates. Further, they strategized as to their sale, prepared written consents, conducted meetings and conversations with the Trustee and the U.S. Government regarding corporate governance issues, completed the assignment relating to interests in the private equity funds of Neuberger Berman, arranged for the

18

Trustee and the U.S. Government to appoint a manager of the Primex entities in furtherance of monetizing the Primex patent portfolio, continued to prosecute Primex patent applications in the U.S. and Canada, managed publicly-traded equity assets of Madoff Family LLC and strategized as to their sale, reviewed documents and conducted meetings with the Trustee, drafted documents in furtherance of the liquidation of such assets, continued to value and explore the sale of the oil and gas property interests held by Madoff Energy LLC, and continued to have discussions with the U.S. Government and a major shareholder of 4th & Forty in furtherance of the sale of the interests therein and obtaining a valuation thereof.

54.    During the Compensation Period, the Trustee continued to recover funds from securities that BLMIS purchased and sold prior to December 11, 2008 in connection with its proprietary trading operations.

### e.    Task Code 05: Internal Meetings with Staff

55.    This category relates to time spent by the Trustee and B&H attorneys in internal meetings regarding the liquidation proceeding, investigation and litigation strategy, as well as training sessions for attorneys and paraprofessionals. Internal meetings and discussions have ensured the effective use of time spent on this matter and avoided duplicative efforts.

### f.    Task Code 07: Billing and Trustee Reports

56.    This category relates to time spent by the Trustee, B&H attorneys, and paraprofessionals reviewing the monthly B&H billing statements prior to submitting the statements to SIPC to ensure that time was properly billed, correcting any errors in time entries, writing off certain time and expenses as agreed to by B&H, preparing fee applications, responding to motions for leave to appeal fee orders, preparing Trustee reports, and other related tasks.

### g.    Task Code 08: Case Administration

57.    This category relates to time spent assisting the efficient administration of the case.

58.     The Trustee filed several motions before this Court that govern the treatment of and procedures related to the efficient litigation of these actions.  These procedures ensure compliance with the Bankruptcy Code and SIPA, as well as consistency and transparency.

59.     On October 20, 2011, the Trustee and B&H moved for an Order Establishing Noticing Procedures in order to streamline the procedural aspects of service in the main proceeding and all related adversary proceedings.  (ECF No. 4469).  This Court entered the Order on December 5, 2011.  (ECF No. 4560).

60.     On October 28, 2011, this Court entered an Order Granting Supplemental Authority to Stipulate to Extensions of Time to Respond and Adjourn Pre-Trial Conferences to March 16, 2012.  (ECF No. 4483).  Supplemental Orders were entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through September 14, 2012 (ECF No. 4483), July 18, 2014 (ECF No. 5358), January 16, 2015 (ECF No. 7037), July 17, 2015 (ECF No. 8762), July 15, 2016 (ECF No. 12312), December 23, 2016 (ECF No. 13601), July 31, 2017 (ECF No. 14447), December 31, 2017 (ECF No. 16169), June 27, 2018 (ECF No. 16718); December 19, 2018 (ECF No. 17560).  On October 18, 2018, a supplemental Order was entered granting authority to extend time to respond to the complaint and adjourn the pre-trial conferences through December 19, 2019 (ECF No. 18093).

**h.     Task Code 09: Banks**

61.     Primarily as a result of international and domestic feeder fund investigations, the Trustee commenced investigations of numerous banks and other financial institutions involved with BLMIS.  Time categorized under this task code relates to the investigation of target banks and the roles played by the banks in the Ponzi scheme, the preparation of letters of inquiry and subpoenas, the review of responses to letters and subpoenas received from such banks and other

20

third parties, and the preparation of pleadings relating to claims that will be brought against such

banks.  Separate matter numbers have been assigned to banks sued by the Trustee.

### i.    Task Code 10: Court Appearances[8]

62.    This category relates to time spent by the Trustee and B&H attorneys making court

appearances in this Court, other federal courts within the Second Circuit, and various courts abroad

### j.    Task Code 11: Press Inquiries and Responses

63.    This category relates to time spent by the Trustee, B&H attorneys, and

paraprofessionals in responding to press inquiries, preparing and issuing press releases, and

preparing for and holding press conferences relating to BLMIS, Madoff, customer claims, and the

recovery of funds.

### k.    Task Code 12: Document Review

64.    This category relates to time spent by the Trustee and B&H attorneys reviewing

and analyzing BLMIS documents and documents received from parties and third parties in

response to the hundreds of letters and subpoenas issued by the Trustee, in order to assess relevance

to case-wide strategies and to identify and develop evidence in support of the Trustee's claims and

defenses, as well as other discovery-related tasks that cross multiple cases.

### l.    Task Code 13: Depositions and Document Productions by the Trustee

65.    This category generally relates to time spent by the Trustee and B&H attorneys

conducting discovery that touches upon more than one matter, including team meetings,

discussions and strategizing among Discovery Management Team case liaisons, research and

analysis of issues with potential case-wide implications, creation and management of document

---

[8] Many attorneys making court appearances bill their time for appearances to either Task Code 02–Bankruptcy Court Litigation or to the matter number that relates to that specific litigation, rather than to Task Code 10.

databases, filing systems and related reference materials, and coordination of responses to discovery served on the Trustee by various third parties and defendants in avoidance actions. This category generally relates to time spent by the Trustee and B&H attorneys conducting discovery that touches upon more than one matter and responding to discovery propounded to the Trustee by various third parties and defendants in avoidance actions.

### m.     Task Code 15: Charities

66.     This category relates to reviewing financial documents and conducting due diligence of charitable accounts held at BLMIS, corresponding and meeting with the representatives of these charities to obtain further information concerning transfers from their BLMIS accounts and discussing settlement and resolution of issues.

### n.     Task Code 19: Non-Bankruptcy Litigation

67.     This matter categorizes time spent by the Trustee and B&H attorneys on non-bankruptcy litigation.

### o.     Task Code 20: Governmental Agencies

68.     This matter categorizes time spent by the Trustee and B&H attorneys responding to requests for information by the United States Attorney's Office for the Southern District of New York, the Internal Revenue Service, various congressional representatives, and other government agencies.

### p.     Task Code 21: Allocation

69.     This matter categorizes time spent by the Trustee and B&H attorneys coordinating the distribution of Customer Property.

70.     The ultimate purpose of marshaling the Customer Fund is to distribute those monies, as SIPA directs, to BLMIS customers with allowed claims.

71.    The Trustee filed ten motions seeking entry of an order approving allocations of

property to the Customer Fund and authorizing pro rata interim distributions of Customer Property,

and this Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed through the Compensation Period | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $803.121 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $5.838 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $817.156 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $549.640 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million[9] | $473.637 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/2015 | $345.472 million[10] | $1.420 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/2016 | $247.013 million | $223.618 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/2017 | $342.322 million | $295.782 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/2018 | $1.303 billion | $649.033 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/2019 | $515.974 million | N/A | 2.729% | 18295 | 18398 |
| TOTAL | N/A | $13.305 billion | $11.070 billion | 66.633% | N/A | N/A |

72.    On February 22, 2019, the Trustee distributed approximately $464 million, or

2.729% of each BLMIS allowed claim through the completion of the Tenth Interim Distribution,

unless the claim had been fully satisfied. This represents a significant milestone in this litigation,

with 1,423 BLMIS accounts fully satisfied.[11]   The 1,423 fully satisfied accounts represent more

than 62% of accounts with allowed claims.  When combined with the $11.07 billion distributed as

---

[9]The total amount allocated in the Fifth Allocation and Fifth Interim Distribution Motion was $704,395,951.58. Between the filing of that motion and the Fifth Interim Distribution date, an additional $52,142,279.87 was recovered and included in the numerator.

[10]This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015.  The original Sixth Allocation and Sixth Interim Distribution Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

[11]Any customer with an allowed claim of $1,490,000.00 has been fully satisfied.

part of the First through Ninth Interim Distributions through the end of the Compensation Period and SIPC advances in the amount of $845.16 million,[12] the Trustee has distributed approximately $12.38 billion to BLMIS customers through February 22, 2019, or 66.633% of each BLMIS allowed customer claim.

### B.    MATTER 05 – CUSTOMER CLAIMS

#### a.    Customer Claims

73.    The total amount of allowed claims as of November 30, 2018 is $17,643,896,491.62. As of November 30, 2018, the Trustee has paid or committed to pay $844,917,873.98 in cash advances from SIPC. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

74.    As of November 30, 2018, 32 claims relating to 24 accounts remained "deemed determined," meaning that the Trustee has instituted litigation against those account holders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

#### b.    General Creditor Claims

75.    As of November 30, 2018, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and

---

[12] SIPC makes advances to satisfy customer claims before the Trustee recovers funds. Since the Trustee has recovered funds to satisfy customers up to $1,490,000.00 SIPC is reimbursed for the advances to customers whose claims have been fully satisfied to date.

customers filing claims on non-customer proof of claim forms. Of these 450 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265 million. At this time, the BLMIS general estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers. If the Trustee is able to fully satisfy the net equity claims of the BLMIS customers, any funds remaining will be allocated to the general estate and distributed in the order of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e). All BLMIS customers who filed claims—whether their net equity customer claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

### c.    The Trustee Has Kept Customers Informed Of The Status Of The Claims Process

76.    Throughout the liquidation proceeding, the Trustee has kept customers, interested parties, and the public informed of his efforts by maintaining the Trustee Website (www.madofftrustee.com), a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding to the multitude of phone calls, e-mails, and letters received on a daily basis, both from claimants and their representatives.

77.    The Trustee Website includes features that allow the Trustee to share information with claimants, their representatives, and the general public with regard to the ongoing recovery efforts and the overall liquidation. In addition to containing the Trustee's court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Chief Counsel to the SIPA Trustee

on litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

78.    In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of November 30, 2018, the Trustee and his professionals had received and responded to more than 7,100 e-mails from BLMIS customers and their representatives via the Trustee Website.

79.    The toll-free customer hotline provides status updates on claims and responses to claimants' questions and concerns. As of November 30, 2018, the Trustee, B&H, and the Trustee's professionals had fielded more than 8,200 hotline calls from claimants and their representatives.

80.    The Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that the customers are as informed as possible about various aspects of the BLMIS proceeding.

81.    The Trustee and B&H attorneys continued the Trustee's Hardship Program, reviewed hardship applications, and communicated regularly with SIPC and AlixPartners regarding the review and determination of hardship applicants, the customer claims review process, the customer claims database, reconciliation of investment advisory accounts and other matters of interest in determining claims.

82.    The Trustee and B&H attorneys reviewed customer accounts and communicated with customers or their representatives regarding possible settlements related to those accounts.

## C.    MATTER 07 – MADOFF FAMILY

83.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing numerous avoidance actions against members of the Madoff family.

26

84.     The Trustee's adversary proceeding against the Estates of Andrew H. Madoff and
Mark D. Madoff (the "Estates"), entitled *Picard v. Andrew H. Madoff*, Adv. Pro. No. 09-01503
(SMB), has been settled and discontinued.

85.     On June 23, 2017, the Trustee, the U.S. Attorney's Office for the Southern District
of New York (the "Government") and the Estates entered into a Stipulation and Order of
Settlement (the "Stipulation"), which resolved all of the Trustee's claims against the Estates and
various Madoff-related business entities.[13]   Stephanie Mack ("Mack") was also a party to the
Stipulation.   Under the terms of the agreement, the Trustee and the Government were to receive
more than $23 million in cash and other assets from the Estates and Mack. The total recovery
would be shared equally between the Trustee and the Government.

86.     On June 26, 2017, the District Court approved the Stipulation. Also on June 26,
2017, the Trustee filed a Motion For Entry of Order Pursuant to Section 105(a) of the Bankruptcy
Code and Rules 2002 and 9019 of The Federal Rules of Bankruptcy Procedure seeking approval
of a settlement by and among the Trustee, the Government, David Blumenfeld in his capacity as
Successor Executor of the Estate of Mark D. Madoff, Martin Flumenbaum, in his capacity as
Executor of the Estate of Andrew H. Madoff, and Mark Madoff's widow, Stephanie Mack a/k/a
Stephanie Madoff. (ECF No. 16239).

87.     On July 24, 2017, the Bankruptcy Court entered an Order granting the Trustee's
Motion and approving the settlement (ECF No. 311).

88.     On September 7, 2017, the Trustee submitted a Stipulation and Order for Voluntary
Dismissal of Adversary Proceeding with Prejudice to the Bankruptcy Court.

---

[13] The Trustee's adversary proceedings against the Madoff-related business entities were entitled *Picard v. Madoff
Technologies LLC et al.*, Adv. Pro. No. 10-03483 (SMB), *Picard v. Madoff Energy Holdings LLC*, Adv. Pro. No. 10-
03484 (SMB), and *Picard v. Madoff Family LLC et al.*, Adv. Pro. No. 10-03485 (SMB).

89.     The Bankruptcy Court so ordered the Stipulation on September 8, 2017 (ECF No.

313).

90.     On September 11, 2017, the Bankruptcy Court "closed" the Adversary Proceeding.

91.     During the Compensation Period, the Trustee continued to manage and attempt to

liquidate certain assets, funds and business interests transferred pursuant to the Stipulation.  *See*

Section (IV)(A)(d) *supra*.

### D.     MATTER 09 – FAIRFIELD GREENWICH

92.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance and recovery actions against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd.

("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich

Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry

Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants

seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York

Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances,

and damages in connection with certain transfers of property by BLMIS to or for the benefit of the

Fairfield Funds and the Greenwich Funds.  *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv.

No. 09-01239 (SMB) (Bankr. S.D.N.Y. May 18, 2009).  This matter also categorizes time spent

by the Trustee and B&H attorneys pursuing avoidance and recovery actions, as well as damages

claims against other Fairfield Greenwich Group related entities and individuals, including the

founding partners and other management officials.

93.     On June 7, 2011, this Court conditionally approved a settlement agreement between

the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"), (ECF No.

95).  On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the

Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators.

On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

94.     As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million.   Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund.   The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants.   Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

95.     On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million.   *Picard v. Fairfield Sentry*, Adv. No. 09-01239 (SMB) (Bankr. S.D.N.Y.), (ECF No. 107).   In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction of over $105.9 million.   Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

96.     On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court.   *See* discussion *infra* Section (IV)(G)(e).   The Trustee briefed and presented argument at the hearings on these issues before the

29

District Court.  As of July 31, 2014, the District Court had issued decisions on all issues subject to Common Briefing and remanded the cases to this Court for further findings based on the legal standards set forth in the District Court's decisions.  *See* discussion *infra* Section (IV)(G)(e).

97.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (SMB) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc*., Adv. No. 12-01702 (SMB) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (SMB) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court.  None of the defendants in the three actions have yet responded to the Trustee's complaints.

98.    On November 6, 2012 in the District Court, in a putative class action filed by former Fairfield Funds investors against several Fairfield Greenwich Group partners and management officials, the plaintiffs and the Fairfield Greenwich Group related defendants filed a motion seeking preliminary approval of a settlement.  *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM) (S.D.N.Y.) ("Anwar"), (ECF No. 997).  On November 29, 2012, the Trustee filed an application seeking an injunction against the implementation of the settlement.  *See Picard v. Fairfield Greenwich Ltd.*, Adv. No. 12-02047 (SMB) (Bankr. S.D.N.Y.), (ECF No. 2).  On December 21, 2012, the defendants filed a motion to withdraw the reference to the Bankruptcy Court.  (ECF No. 11).  On February 6, 2013, the District Court granted the defendants' motion to withdraw the reference to the Bankruptcy Court, *Picard v. Fairfield Greenwich Ltd.*, No. 12 Civ. 9408 (VM) (S.D.N.Y.), (ECF No. 30).  On March 20, 2013, the District Court denied the Trustee's application seeking an injunction against the implementation of the Anwar settlement.  (ECF No. 59).  On April 8, 2013, the Trustee filed a notice of appeal from the District Court's denial of the

Trustee's application for an injunction against the implementation of the Anwar settlement.  (ECF No. 61).

99.     On February 26, 2013, the Trustee filed a letter requesting a pre-motion conference on a motion to intervene in the Anwar action.  (ECF No. 1054).  On March 8, 2013, the District Court deemed the pre-motion conference letter to be a motion to intervene and denied the Trustee's request.  (ECF No. 1071).  On April 8, 2013, the Trustee filed a notice of appeal from the order denying his request to intervene in the Anwar action.  (ECF. No. 1106).

100.    Briefing on both appeals of the Anwar decisions was completed on June 7, 2013.  Oral argument on the appeals occurred on October 10, 2013.  On August 8, 2014, the Second Circuit issued its decision affirming the District Court's decisions.

101.    On January 8, 2014, in the case entitled *In re: Fairfield Sentry Limited*, No. 11 Civ. 5905 (AT) (Bankr. S.D.N.Y.) ("Fairfield Sentry"), the Court granted a motion to withdraw the reference in an appeal in the Fairfield Sentry Chapter 15 proceedings regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.  On January 28, 2014, the Trustee requested a pre-motion conference for a motion to intervene in the matter.  On January 30, 2014, the District Court denied the Trustee's request for a pre-motion conference and instead set a briefing schedule for the filing of the motion to intervene.  The Trustee submitted his motion to intervene on February 28, 2014.  Morning Mist Holdings and Migual Lomeli filed opposition papers on March 14, 2014.  The Trustee filed a reply in support of the motion to intervene on March 21, 2014.  On July 31, 2014, the District Court granted the Trustee's motion to intervene and set a briefing schedule on the issue regarding the Fairfield Sentry Liquidator's ability to assign claims to the Trustee.  Following the filing of the Trustee's brief, on September 30, 2014, the District Court dismissed

the Complaint.  The time for filing an appeal of the District Court's decision has expired without any appeal being filed.

102.    A number of defendants in other proceedings, along with some of the Fairfield management defendants, filed motions to dismiss which were subject to Common Briefing in the District Court following motions to withdraw the reference to this Court.  All of the Common Briefing decisions have been issued by the District Court.  *See* discussion *infra* Section (IV)(G)(e). The District Court remanded to this Court several of the proceedings which had been subject to Common Briefing, including the Fairfield action.

103.    Some of the Fairfield action defendants joined other defendants in the motion to dismiss on extraterritoriality grounds, which had been subject to Common Briefing. *See* discussion *infra* Section (IV)(G)(e). The defendants filed a supplemental memorandum in support of the extraterritoriality motion to dismiss on December 31, 2014.  The Trustee filed his response to the supplemental memorandum on June 26, 2015, which included an addendum specific to the Fairfield defendants and a proffered Second Amended Complaint.  The defendants' reply memorandum was filed on September 30, 2015.  This Court held a hearing on the extraterritoriality motion to dismiss on December 16, 2015.  On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. That decision is currently on appeal. *See* discussion *infra* Section (IV)(W).

104.    Following the issuance of this Court's decision on the extraterritoriality motion to dismiss, the Trustee and the Fairfield defendants could not agree as to the terms of the required settle order. On January 20, 2017, the Fairfield defendants submitted a letter to this Court as to their position as to the extraterritoriality decision settle order. *See* discussion *infra* Section

(IV)(W). On March 10, 2017, this Court entered its order granting in part, and denying in part, the Fairfield defendants' motion to dismiss. (ECF No. 228).

105.    As part of the briefing on the extraterritoriality motion to dismiss, the Trustee sought the de-designation as confidential of certain documents produced by the Fairfield defendants.  Pursuant to a stipulation entered by the Trustee and the Fairfield defendants the Trustee submitted the documents to an arbitrator, who ruled the documents were not confidential. On June 22, 2015, the Trustee submitted a letter to this Court seeking the confirmation of the arbitrator's decision.  On July 15, 2015, this Court entered an order deeming the Trustee's letter to be a motion and granted the Trustee's request to confirm the arbitrator's decision holding the documents not to be confidential.

106.    On September 23, 2016, the Trustee requested the Fairfield defendants to de-designate as confidential the remaining documents they had previously produced to the Trustee. On October 10, 2016, the Fairfield defendants agreed to de-designate some of the requested documents but asked for clarification as to compliance with the arbitrator's prior decision as to the confidentiality of the bulk of the documents. The Trustee's counsel reviewed the questioned documents to verify de-designation would comply with the arbitrator's decision.

107.    On April 17, 2017, the Trustee filed a Notice of Dismissal as to defendant Charles Murphy after being informed of his untimely death. (ECF No. 238).

108.    On June 22, 2016, as part of the previously approved settlement between the Trustee and the Fairfield Funds, the Fairfield Funds Joint Liquidators filed a motion in this Court in *In re Fairfield Sentry Limited et al.*, Case No. 10-13164 (SMB) (Bankr. S.D.N.Y.), seeking the approval of the assignment of claims against Fairfield Greenwich Group entities and related persons to the Trustee pursuant to Bankruptcy Code section 363. (ECF No. 805).  On July 5, 2016,

the Trustee filed a response to the motion. (ECF No. 810).   On July 5, 2016, Morning Mist

Holdings and Miguel Lomeli filed an objection to the motion. (ECF No. 809).   On July 12, 2016,

the Court held a hearing on the motion. On November 22, 2016, this Court issued its decision

denying the Liquidators' motion for approval of the assignment of claims without prejudice. This

Court noted it could not isolate the assignment without assessing the entire settlement.

Furthermore, it was uncertain that any motion was required under Bankruptcy Code section 363.

109.    Following this Court's decision on the extraterritoriality motion to dismiss, the

Trustee's claims against the Fairfield defendants based on initial transfers from Greenwich Sentry

and Greenwich Sentry Partners remain pending.   The parties have extended the response date to

the Trustee's Amended Complaint and in the Fairfield Liquidators' actions so that they may

determine the most efficient means of proceeding forward with the claims.

## E.    **MATTER 11 – COHMAD SECURITIES CORPORATION**

110.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the

avoidance action against Cohmad Securities Corporation ("Cohmad"), its principals, certain

employees of Cohmad, and their family members who held BLMIS IA Accounts (collectively, the

"Cohmad Defendants") seeking the return of over $245 million under SIPA, the Bankruptcy Code,

the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances,

disallowance of any claims filed against the estate by the Cohmad Defendants, and damages in

connection with certain transfers of property by BLMIS to or for the benefit of the Cohmad

Defendants.  *Picard v. Alvin J. Delaire, Jr. et al.*, Adv. No. 09-01305 (SMB) (Bankr. S.D.N.Y.).[14]

---

[14] The Adversary Proceeding is currently captioned *Picard v. Alvin J. Delaire, Jr. et al.*, Adv. Pro. No. 09-01305 (SMB), as a result of the Trustee's settlement with and dismissal from this adversary proceeding of, among others, Cohmad.

111.    During the Compensation Period, B&H attorneys continued to move forward with developing the case and amended the case management plan for the sole purpose of extending the discovery cut-off date to September 9, 2019 (ECF No. 400).

F.    **MATTER 13 – KINGATE**

112.    This matter categorizes time spent by the Trustee and his counsel pursuing avoidance and recovery under SIPA, the Bankruptcy Code, New York Debtor and Creditor Law, and other applicable law of approximately $926 million in initial fraudulent transfers that BLMIS made to Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Kingate Funds"). The proceeding before the Court is captioned as *Picard v. Federico Ceretti*,[15] Adv. No. 09-01161 (BRL) (Bankr. S.D.N.Y.). The Kingate Funds are in liquidation proceedings in the BVI and Bermuda under the auspices of court-appointed joint liquidators. Kingate Global and Kingate Euro each filed a customer claim in the SIPA proceeding in the combined total amount of approximately $800 million. The Trustee seeks to avoid and recover the fraudulent transfers and equitably subordinate the Kingate Funds' customer claims. Until this proceeding is resolved, the customer claims are temporarily disallowed under section 502(d) of the Bankruptcy Code.

113.    Throughout the Compensation Period, the Trustee's counsel has continued non-party discovery, both within the United States and abroad, as discussed below.

114.    The Trustee's counsel obtained orders relating to the following witnesses located abroad:

---

[15] Defendant Ceretti and 15 other defendants were dismissed by this Court's November 22, 2016 Memorandum decision on the ground of comity. That order is on appeal to the U. S. Court of Appeals for the Second Circuit.

a. Order entered August 7, 2018 (ECF No. 363[16]) issuing a letter of request to the Bermuda Supreme Court for the examination under oath of Mr. Scott Watson Brown.

b. Order entered September 5, 2018 (ECF No. 368) issuing a letter of request to the English court for the examination under oath of Mr. Andrew Brook, upon the Trustee's motion filed on August 9, 2018 (ECF No. 364).

c. Order entered October 1, 2018 (ECF No. 371) issuing a letter of request to the French court for the examination under oath of Mr. Julian Henry Chapman, upon the Trustee's motion filed on September 14, 2018 (ECF No. 369).

115.    The Trustee's counsel also filed motions with this Court seeking the issuance of letters of request to foreign courts concerning the following witnesses:

a. Motion filed on October 3, 2018 (ECF No. 373) for the issuance of a letter of request to the Bermuda Supreme Court for the examination under oath of Mr. Craig Perry. The motion was opposed by HSBC Bank Bermuda Limited ("HSBC") and Mr. Perry on October 9, 2018 (ECF No. 374). On October 22, 2018, the Court set a briefing schedule and fixed a hearing date of October 31, 2018, by so ordering the parties' stipulation. A Notice of Hearing on the motion also was issued on October 22, 2018 (ECF No. 378). On October 23, 2018, the Trustee filed a response (ECF No. 380). On October 29, 2018, HSBC and Mr. Perry filed a Supplemental Memorandum (ECF No. 384), in opposition to the motion, supported by a declaration of counsel (ECF No. 383). The Court reserved decision to allow the parties time to resolve the dispute. By letter dated November 13, 2018 (ECF No. 393), the Trustee notified the Court that the parties were unable to resolve the dispute and requested a ruling from the Court on the motion.

b. Motion filed on November 1, 2018 (ECF No. 386) for the issuance of a letter of request to the English court for the examination under oath of Mr. Antony Clark. The presentment date for the proposed order was amended twice thereafter on November 6, 2018, and November 15, 2018 (ECF Nos. 390 and 395).

c. Motion filed on November 1, 2018 (ECF No. 387) for the issuance of a letter of request to the English court for the examination under oath of Mr. Alexander Guy Ingram, which was amended on November 6, 2018 (ECF 391), and withdrawn on November 19, 2018 (ECF No. 398).

116.    The Trustee's legal team completed the following depositions during the Compensation Period: (a) August 7, 2018, Ms. Suzanne Hammond in New York, (b) August 15,

---

[16] ECF references are to docket entries in Adversary Proceeding No. 09-1161 (SMB).

2018, Ms. Sandra Manzke in Stamford, Connecticut, (c) September 13, 2018, Mr. Robert Schulman in New York, (d) September 21, 2018, Mr. Eric Lazear, in New York, (e) September 26, 2018, Mr. Paul Boulton, in London, (f) October 20, 2018, Mr. Scott Dragoo, in New York, (g) October 26, 2018, Mr. Dan Both, in North Carolina, and (h) November 8, 2018, Mr. Santiago Ulloa, in Florida.

117.    In addition to the above depositions, the Trustee conducted a cross examination of Mr. Federico Ceretti on November 1, 2018, following the Kingate Funds' Joint Liquidators' direct examination on that date, and also conducted a direct examination of Mr. Ceretti on November 2, 2018, with the Joint Liquidators conducting a cross examination of Mr. Ceretti on that date. Similarly, the Trustee conducted a cross examination of Mr. Grosso on November 5, 2018, following the Kingate Funds' Joint Liquidators' direct examination on that date, and also conducted a direct examination of Mr. Grosso on November 6, 2018, with the Joint Liquidators conducting a cross examination of Mr. Grosso on that date. Messrs. Ceretti and Grosso objected to the English court orders allowing the Trustee to depose them, and sought to have them set aside. On October 16, 2018, the English Court rendered its judgment at a hearing at which the Trustee was represented by his English barrister and solicitors, with one of the Trustee's U.S. counsel in attendance. The English Court required the Trustee to submit his deposition questions to these witnesses in advance and in writing, together with a bundle of any documents that the Trustee's counsel intended to use during the depositions. No objection was made to the Joint Liquidators' orders for the depositions of Messrs. Ceretti and Grosso, and they were not obliged to submit questions and documents in advance.

118.    Preparation for each deposition conducted during the Compensation Period required a close review of relevant documents, the preparation of deposition outlines, and

consultation with counsel for the witness (if represented by counsel) and the Joint Liquidators to fix a mutually convenient date and settle on logistics and expenses.

119.    Following each deposition, the Trustee's legal team reviews and takes steps to finalize each transcript.  For those depositions occurring abroad, the process can be protracted and time consuming.  The Trustee's counsel also deals periodically with issues of privilege raised during a deposition, as well as confidentiality of testimony and documents, and de-designation of confidential material in compliance with the Litigation Protective Orders entered by this Court.

120.    Because fact discovery had not been completed by November 30, 2018, with the consent of the Joint Liquidators, on November 28, 2018, the Bankruptcy Court entered a Fourth Amendment to Case Management Report (ECF No. 401), which extended the close of fact discovery to February 28, 2019.

121.    During the Compensation Period, the Trustee's counsel exchanged communications with mediation counsel for the Kingate Funds' Joint Liquidators on August 8, August 14, August 16, and September 5, 2018, in connection with mediation to occur at the close of fact discovery.

122.    The Trustee's legal team includes the advice and counsel of the Trustee's foreign solicitors and barristers in the United Kingdom, Bermuda, BVI, France, and other foreign locations in which depositions are conducted under letters rogatory or the Hague Convention.  The Trustee's counsel also has sought the advice of the Trustee's consultants in the securities industry when necessary.

### G.    MATTER 21 – AVOIDANCE ACTION LITIGATION AND MATTER 75 – GOOD FAITH 5A COHMAD REFERRED ACCOUNTS

123.    This matter categorizes time spent litigating the hundreds of avoidance actions filed by the Trustee, coordinating service of process, discovery requests, and reviewing produced

documents, communicating formally and informally with counsel for various defendants, reviewing Hardship Program applications, drafting extensions of time to respond to various complaints and adjournments of pre-trial conferences, conducting settlement negotiations and settling with various defendants, engaging in mediation with certain defendants, developing legal strategies and witnesses that will be relevant to all actions, implementing internal processes to track and manage the avoidance actions, and researching various issues relating to and raised in such avoidance actions.

### a.    Resolution of Good Faith Avoidance Actions

124.    At the beginning of the Compensation Period, there were 170 active good faith avoidance actions.  Twenty (20) were closed during the Compensation Period, leaving a total of 150 active good faith avoidance actions by the end of the Compensation Period.  In certain avoidance actions, the Trustee entered into mediations and where appropriate, agreed to dismiss certain defendants from the actions.  During the Compensation Period, the Trustee dismissed one (1) case based on defendant's death, three (3) cases in his discretion based on extenuating circumstances, and two (2) cases where Trustee obtained a judgment.  In addition, the Trustee's counsel engaged in settlement negotiations, which led to fourteen (14) cases entering into documented settlements during the Compensation Period.

### b.    Summary Judgment Motions

#### 1.    South Ferry/Lowrey Motions

125.    Prior to the Compensation Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions").

*See* APN 10-04488, ECF No. 77; APN 10-04350, ECF No. 86; APN 10-05110, ECF No. 53; APN 10-04387, ECF No. 71.

126.    Prior to the Compensation Period, from July 2017 through September 2017, the parties in the South Ferry/Lowrey Actions filed and briefed on motions for summary judgment. *See* APN 10-04488, ECF Nos. 86-93, 96-97, 100, 103; APN 10-04350, ECF Nos. 95-102, 105-106, 109, 112; APN 10-05110, ECF Nos. 60-69, 70-71, 74, 77; APN 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92. On December 6, 2017, oral argument was held on the parties' motions for summary judgment.

127.    On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (SMB), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

128.    On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* APN 10-04387, ECF No. 116. On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033 Objections. APN 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned to District Court Judge Paul Engelmayer for his review and approval.

129.    On June 18, 2018, counsel for the South Ferry/Lowrey Actions filed a Joint Motion for Leave to File a Reply to the Trustee's Response to Rule 9033 Objections. *See* No. 18-cv-05381, ECF No. 5. On June 29, 2018, the Trustee filed his opposition brief to the Joint Motion for Leave to File a Reply to the Trustee's Response to Rule 9033 Objections. *See* No. 18-cv-05381, ECF No. 6. On July 6, 2018, Defendants filed their Joint Reply Brief in further support of their Joint Motion

for Leave to File Reply Brief. *See* No. 18-cv-05381, ECF No. 10. Defendants then filed a letter

seeking oral argument on their Rule 9033 Objections on July 9, 2018, which the District Court

granted on July 10, 2018. *See* No. 18-cv-05381, ECF No. 11. Oral argument was held on August

28, 2018.

130.     On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy

Court's Report and Recommendation, granting summary judgment to the Trustee, and denying

summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789 (SMB), 2019 WL 479185 (S.D.N.Y. Feb.

7, 2019). Defendants filed their Notice of Appeal to the Second Circuit on February 19, 2019. *See*

No. 18-cv-05381, ECF No. 32.

## 2.     Goldenberg Motion

131.     Prior to the Compensation Period, the Trustee entered into a stipulation with

Defendant Stephen R. Goldenberg setting a schedule for summary judgment motion practice. *See*

APN 10-04946, ECF No. 57.

132.     On October 16, 2017, the Trustee filed his Motion For Summary Judgment. *See*

APN 10-04946, ECF Nos. 60-63. On November 16, 2017, Defendant Stephen R. Goldenberg filed

his opposition brief to the Trustee's Motion For Summary Judgment. *See* APN 10-04946, ECF

No. 65. On December 18, 2017, the Trustee filed his reply brief in further support of his Motion

For Summary Judgment. *See* APN 10-04946, ECF Nos. 69-71.

133.     On February 16, 2018, the oral argument on the Trustee's Motion For Summary

Judgment in the Goldenberg adversary proceeding was adjourned *sine die* pending the issuance of

the Bankruptcy Court's Report and Recommendations in the South Ferry/Lowrey proceedings.

*See* APN 10-04946, ECF No. 74.

134.    On June 20, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court to Grant the Plaintiff's Motion for Summary Judgment and Enter Money Judgment in Favor of the Plaintiff. *See* APN 10-04946, ECF No. 76. On August 10, 2018, a Stipulation and Order for Voluntary Dismissal was filed. *See* APN 10-04946, ECF No. 84.

### 3.    Michael Mann Motion

135.    On December 21, 2018, the Trustee filed his Motion For Summary Judgment. *See* APN 10-04390, ECF Nos. 140-143. On February 22, 2019, the defendants filed their opposition brief to the Motion For Summary Judgment. *See* APN 10-04390, ECF Nos. 158-160. The Trustee's reply brief is currently due on March 27, 2019.

### c.    Motions To Withdraw The Reference

### 1.    Saren-Lawrence/Nelson Motions

136.    On July 7, 2018, counsel for defendants in three actions, *Picard v. Saren Lawrence,* APN. 10-04898, *Picard v. Carol Nelson, et al.,* APN 10-04377, and *Picard v. Carol Nelson,* APN 10-04658, moved to withdraw the reference to the Bankruptcy Court (the "Saren-Lawrence Motions to Withdraw") on their asserted right to a jury trial before the District Court. *See* No. 17-cv-05157, ECF No. 1. On November 1, 2017, the Trustee filed his opposition brief to Saren-Lawrence Motions to Withdraw. *See* No. 17-cv-05157, ECF No. 16. On Dec 6, 2017, the defendants filed their reply brief in further support of the Saren-Lawrence Motions to Withdraw. *See* No. 17-cv-05157, ECF No.17. On May 15, 2018, District Court Judge George B. Daniels issued his Memorandum Decision and Order denying the Saren-Lawrence Motions to Withdraw.

137.    On May 29, 2018, the defendants filed their Motion For Reconsideration And Alternatively, to Certify An Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), of Judge Daniels' Memorandum Decision and Order denying the Saren-Lawrence Motions to Withdraw. *See* No. 17-cv-05157, ECF Nos. 20-21 (the "Motion for Reconsideration"). On June 4, 2018, the

Trustee filed his opposition brief to the Motion For Reconsideration. *See* No. 17-cv-05157, ECF

Nos. 24-25. On July 19, 2018, the defendants filed their reply brief in further support of their

Motion for Reconsideration. *See* No. 17-cv-05157, ECF No. 26. On September 11, 2018, Judge

Daniels issued his Memorandum Decision and Order denying the Motion for Reconsideration. *See*

No. 17-cv-05157, ECF No. 30.

138.    On September 26, 2018, the defendants filed a petition for a writ of mandamus in

the Second Circuit, pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, to appeal Judge Daniels'

rulings denying the Saren-Lawrence Motions. On February 20, 2019, the defendants' petition was

denied. *See* No. 18-2840, ECF No. 34.

## 2.    Michael Mann Motion

139.    On October 26, 2018, counsel for defendants in *Picard v. BAM L.P.,* APN 10-

04390, moved to withdraw the reference to the Bankruptcy Court (the "Mann Motion to

Withdraw") on their asserted right to a jury trial before the District Court. *See* No. 18-cv-09916,

ECF No. 1. On December 27, 2018, the Trustee filed his opposition brief to the Mann Motion to

Withdraw. *See* No. 18-cv-09916, ECF No. 17. On January 16, 2019, the defendants filed their

reply brief in further support of the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF No.

22.

## d.    Trial-Related Motion Practice

### 1.    Saren-Lawrence/Nelson Actions

140.    On October 16, 2018, the Bankruptcy Court issued an Order setting the trial in

*Picard v. Saren Lawrence,* APN. 10-04898, to begin on February 20, 2019. *See* APN 10-04898,

ECF No. 150 (the "Saren-Lawrence Action").

141.    On November 15, 2018, the Trustee submitted a letter to the Bankruptcy Court

indicating that the parties agreed to set trial in the matter of *Picard v. Carol Nelson*, APN 10-04658

43

to begin on May 8, 2019, but the parties could not agree on a trial date for *Picard v. Carol Nelson, et al*., APN 10-04377 involving both Carol Nelson and her husband Stanley Nelson (together the "Nelson Actions"). Counsel for the Nelsons also declined to agree to a consolidated trial of the Nelson Actions. *See* APN 10-04658, ECF No. 114; APN No. 10-04377, ECF No. 108.

142. On November 28, 2018, the Bankruptcy Court issued an oral order to show cause why the Nelson Actions should not be consolidated for trial pursuant to Federal Rule of Civil Procedure Rule 42 (the "Order to Show Cause"). On December 5, 2018, counsel for the Nelsons filed their response, opposing consolidation, and on December 12, 2018, the Trustee filed his response, in favor of consolidation. *See* APN 10-04658, ECF Nos. 118, 121; APN 10-04377, ECF Nos. 113, 116.

143. On December 5, 2018, counsel for defendants Helene Saren-Lawrence, Carol Nelson, and Stanley Nelson, moved to adjourn the trial dates *sine die*, to which the Trustee opposed on December 12, 2018. *See* APN 10-04898, ECF Nos. 156-58, 160-61; APN 10-04658, ECF Nos. 117-18, 120; APN 10-04377, ECF Nos. 112-13, 115 (the "Motion to Adjourn"). Counsel for the defendants filed a reply brief on December 14, 2018. *See* APN 10-04898, ECF No. 163; APN 10-04658, ECF No. 123; APN 10-04377, ECF No. 118.

144. On December 19, 2018, the Bankruptcy Court heard arguments regarding the Order to Show Cause, and the Motion to Adjourn, and issued a bench ruling for the Nelson Actions to be consolidated and scheduled for trial beginning May 8, 2019. *See* APN 10-04658, ECF No. 130; APN 10-04377, ECF No. 123. The Bankruptcy Court subsequently filed on January 2, 2019 its Memorandum Decision and Order Denying Motion to Adjourn Trials *Sine Die* for the Saren-Lawrence Actions and Nelson Actions. *See* APN 10-04898, ECF No. 167; APN 10-04658, ECF No. 127; APN 10-04377, ECF No. 126.

145.    On January 11, 2019, counsel for Saren-Lawrence filed a letter motion seeking to adjourn the trial due to Saren-Lawrence's current medical condition, and the Trustee responded on January 18, 2019, consenting to adjournment of the trial to allow Saren-Lawrence to submit an updated hardship application with supporting documentation.  *See* APN 10-04898, ECF No. 169.

## 2.    Michael Mann Action

146.    On September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the Mann Action to start on December 3, 2018.  *See* APN 10-04390, ECF No. 108. In response, the Defendants filed the Mann Motion to Withdraw one month later, on October 26, 2018, and on November 20, 2018, moved to stay the December 3 trial, pending a ruling from the District Court on the Mann Motion to Withdraw.  *See* APN No. 10-04390, ECF Nos. 114, 121-122.  The Trustee filed his opposition to the defendants' motion to stay the trial on November 27, 2018, and oral argument was held on November 28, 2018.  *See* APN 10-04390, ECF Nos. 127-28, 130.

147.    At the November 28, 2018 hearing, the Bankruptcy Court offered the defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018.  *See* APN 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018. *See* APN 10-04390, ECF Nos. 132, 137.  On January 18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order finding it did have equitable jurisdiction over the Mann Action despite the defendants' withdrawal of their customer claims and objections.  *See* APN 10-04390, ECF No. 148.

e.    **District Court Proceedings**

148.    In April 2012, the District Court instituted a new briefing protocol for pending

motions to withdraw the reference, facilitating consolidated briefing on common issues raised in

the motions to withdraw ("Common Briefing").  The District Court has issued rulings on all of the

Common Briefing issues as follows:

- *Stern v. Marshall Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. April 13, 2012), (ECF No. 4); Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.), 490 B.R. 46 (S.D.N.Y. 2013);

- *Antecedent Debt Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 15, 2012), (ECF No. 107); *In re Madoff Sec.*, 499 B.R. 416 (S.D.N.Y. 2013); *In re Madoff Sec.*, No. 499 B.R. 416 (S.D.N.Y. 2013);

- *Section 546(e) Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 119); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12, 2013), (ECF No. 439); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013);

- *Section 550(a) Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. Aug. 22, 2012), (ECF No. 314); Order, No. 12 MC 115 (JSR) (S.D.N.Y. Dec. 12, 2012); *In re Madoff Sec.*, No. 12 MC 115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013); *In re Madoff Sec.*, No. 12-MC-0115 (JSR), 2014 WL 465360 (S.D.N.Y. Jan. 14, 2014);

- *Standing and SLUSA Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. May 16, 2012), (ECF No. 114); *In re Madoff Sec.*, 987 F.Supp.2d 311 (S.D.N.Y. 2013);

- *Good Faith Standard Under Either 11 U.S.C. § 548(c) or 11 U.S.C. § 550(b) Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 25, 2012), (ECF No. 197); *In re Madoff Sec.*, No. 12-MC-0115 (JSR), 2014 WL 1651952 (S.D.N.Y. April 27, 2014);

- *Section 502(d) Issue.*  *See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 1, 2012), ECF No. 155; Order, No. 12 MC 115 (JSR) (S.D.N.Y. Feb. 12,

2013), (ECF No. 435); *In re Madoff Sec.*, 513 B.R. 437 (S.D.N.Y. 2013); and

- *Extraterritoriality Issue. See* Order, No. 12 MC 115 (JSR) (S.D.N.Y. June 6, 2012), (ECF No. 167); *In re Madoff Sec.*, 513 B.R. 222 (S.D.N.Y. 2014).

149.    On April 27, 2014, the District Court issued the "Good Faith Standard Opinion and Order," ruling that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), "good faith" means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." With respect to the issue of which party bears the burden of pleading a defendant's good faith or lack thereof, Judge Rakoff further ruled that "a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith." Good Faith Standard Opinion and Order (ECF No. 524).

150.    On July 6, 2014, Judge Rakoff issued the "Extraterritoriality Opinion and Order," indicating that certain of the Trustee's claims were barred under Morrison. It stated that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directed further proceedings related thereto be returned to the Bankruptcy Court. Extraterritoriality Opinion and Order (ECF No. 551), 513 B.R. 222 (S.D.N.Y. 2014).

## H.    <u>MATTER 29 – RYE/TREMONT</u>

151.    This matter categorizes time spent by the Trustee and B&H attorneys following the settled avoidance action filed on December 7, 2010, against Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Ltd., Rye Select Broad Market Fund, and numerous related investment funds, entities and individuals (collectively, the "Tremont Funds") in which the Trustee sought the return of approximately $2.1 billion under SIPA, the Bankruptcy Code, the

New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS (the "Tremont Litigation"). *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010).

152.    After the court filing, the parties entered into substantive settlement negotiations, which resulted in a significant settlement approved by the Court on September 22, 2011. The settlement between the Trustee, the Tremont Funds and the former chief executive of Tremont Group Holdings, Inc. resulted in the cash payment amount of $1.025 billion. *Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 10-05310 (SMB) (Bankr. S.D.N.Y. Dec. 7, 2010), (ECF No. 38). This is the largest cash settlement to date in any case brought by the Trustee against any feeder or investment fund.

153.    Two objections to the settlement agreement were filed by non-BLMIS customers, both of which were overruled by this Court. There were two non-settling defendants at the time, Sandra Manzke ("Manzke") and Rye Select Broad Market XL Portfolio Limited ("XL Portfolio").

154.    Certain objectors filed an appeal of the Tremont settlement on October 18, 2011. *See Picard v. Tremont Group Holdings, Inc.*, Adv. Proc. No. 11-7330 (GBD) (Bankr. S.D.N.Y. Oct. 18, 2011). On June 27, 2012, United States District Judge George B. Daniels granted the Trustee's motion to dismiss the appeal, and judgment was entered on June 28, 2012. (ECF Nos. 35, 36).

155.    On July 27, 2012, an appeal of the judgment was filed with the Second Circuit. (ECF No. 37). Prior to submitting any briefing, however, the parties submitted a joint stipulation of dismissal, and the appeal was dismissed on October 25, 2012. (ECF No. 39). Accordingly, Tremont delivered $1.025 billion into an escrow account on November 6, 2012, and the settlement

payment was released from escrow to the Trustee on February 8, 2013. Thereupon, the Trustee allowed certain customer claims related to Tremont.

156. On February 10, 2012, defendant XL Portfolio settled with the Trustee in connection with the Tremont Litigation, as well as two other actions commenced on December 8, 2010, by the Trustee against XL Portfolio and other defendants. These other actions are captioned *Picard v. ABN AMRO Bank, N.V. et al.*, Adv. Proc. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010) and *Picard v. ABN AMRO (Ireland) Ltd., et al.*, Adv. Proc. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

157. On September 17, 2013, the remaining defendant in the Tremont Litigation, Manzke, who was also a defendant in the captioned action, *Picard v. Maxam Absolute Return Fund Ltd., et al.,* Adv. Proc. No. 10-05342 (Bankr. S.D.N.Y. Dec. 8, 2010), settled both actions against her. After the Maxam settlement, Manzke was dismissed from the Tremont Litigation, and that case closed.

158. During the Compensation Period, B&H attorneys deposed several additional former officers and employees of Tremont Group Holdings in connection with the Trustee's subsequent transferee action, *Picard v. Federico Ceretti*, *et al,* Adv. Proc. No. 09-01161. In addition, strategy and investigation for proposed actions and amended pleadings against subsequent transferees has continued. This includes work related to establishing elements of actual knowledge or willful blindness of some of the defendants, analysis consistent with recent court rulings, and preparation for proving at trial the underlying allegations against Tremont itself.

## I.    **MATTER 30 – HSBC**

159. This matter categorizes time spent by the Trustee and B&H attorneys pursuing claims against HSBC Bank plc, HSBC Securities Services (Luxembourg) S.A., eleven other HSBC entities (collectively, the "HSBC Defendants"), as well as affiliated feeder funds including Thema

International Ltd., Thema Wise Investments Ltd., Lagoon Investment, Geo Currencies Ltd., and Alpha Prime Fund, as well as management companies affiliated with those funds, seeking the return of approximately $1.6 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances.  *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2012).

160.    On March 27, 2018, this Court approved a settlement between the Trustee and Alpha Prime Fund Ltd. *Picard v. HSBC Bank PLC, et al*., Adv. Pro. No. 09-01364 (ECF No. 482). Under the settlement, Alpha Prime paid approximately $76 million to the BLMIS Customer Fund.

## J.    MATTER 32 – LUXALPHA UBS/LIF

161.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing bankruptcy claims against UBS AG, UBS (Luxembourg) SA, UBS Fund Services (Luxembourg) SA, and numerous other entities and individuals (collectively, the "Luxalpha Defendants") seeking the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants (the "Luxalpha Action").  *Picard v. UBS AG*, Adv. No. 10-04285 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

162.    This matter also incorporates time spent by the Trustee and B&H attorneys pursuing the avoidance action against Luxembourg Investment Fund, UBS entities, and other defendants (the "LIF Defendants") seeking the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS (the "LIF Action").  *Picard v. UBS AG*, Adv. No. 10-05311 (SMB) (Bankr. S.D.N.Y. Oct. 22, 2012).

163.    On July 6, 2014, the District Court issued the Extraterritoriality Opinion and Order regarding the effect of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) on subsequent transfers received by certain defendants ("Transferee Defendants"). *See* discussion *supra* Section (IV)(G)(e). The Trustee and his counsel analyzed the decision and its implications in anticipation of additional motions to dismiss to be filed by certain defendants in the Luxalpha Action and the LIF Action.

164.    On August 28, 2014, the Trustee filed a motion seeking leave to replead and an order authorizing limited discovery (the "Trustee's Motion") (ECF Nos. 7826, 7827 and 7828). *See* discussion *infra* Section (IV)(S). The Trustee's Motion seeks leave to replead in certain adversary proceedings, including Luxalpha and LIF.

165.    On December 10, 2014, the Bankruptcy Court entered the Extraterritoriality Scheduling Order, ECF No. 8800. Pursuant to the Extraterritoriality Scheduling Order, on December 31, 2014, the Transferee Defendants filed a Consolidated Supplemental Memorandum of Law in Support of the Transferee Defendants' Motion to Dismiss Based on Extraterritoriality in the main SIPA proceeding, Adv. No. 08-01789 (SMB). The Extraterritoriality Scheduling Order, as modified by the Stipulations and Orders entered on January 14, 2015, (ECF No. 8990); February 24, 2015, (ECF No. 9350); and March 31, 2015, (ECF No. 9720), set June 30, 2015 as the Trustee's deadline to submit his opposition to the Transferee Defendants' motion to dismiss based on extraterritoriality.

166.    On June 26, 2015, B&H attorneys submitted briefs in opposition to the moving defendants' motions to dismiss based on extraterritoriality. B&H attorneys also submitted a proffered second amended complaint in the Luxalpha Action and a proffered amended complaint

in the LIF Action.  On September 30, 2015, the moving defendants filed their reply brief in further support of their motion to dismiss based on extraterritoriality.

167.    At an April 27, 2016 status conference Judge Bernstein permitted the parties to commence international document discovery, including through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  At Judge Bernstein's direction, the parties negotiated stipulated orders that all parties signed.  The Bankruptcy Court signed and entered the orders on May 18, 2016 in both actions ("International Discovery Orders").

168.    On November 22, 2016, Judge Bernstein issued a decision on the Transferee Defendants' motion to dismiss based on extraterritoriality, dismissing the foreign Transferee Defendants in the Luxalpha and LIF actions. *See* discussion *infra* Section (IV)(W).

169.    On March 9, 2017, the Bankruptcy Court entered so-ordered stipulations in both proceedings dismissing the subsequent transferee claims against the defendants who joined the Extraterritoriality Motion. On March 16, 2017, the Trustee filed notices of appeal, appealing the Bankruptcy Court's November 22, 2016 decision to the Second Circuit. (ECF No. 233).

170.    Between March 3, 2017 and March 30, 2017, the Trustee timely filed Statements of Issues to be Presented and Designation of Items to be Included in the Record on Appeal in the Dismissed ET Actions. *See e.g.*, Statements filed in Luxalpha Proceeding (ECF No. 235); LIF Proceeding (ECF No. 248).

171.    The Trustee continued his international discovery efforts, including in the Bahamas and the United Kingdom, to obtain other documents relevant to the Trustee's claims.  On March 6, 2018, the Bankruptcy Court issued an Order authorizing the issuance of Letters of Request under the Hague Evidence Convention seeking assistance from the Luxembourg Ministry of Justice in obtaining relevant documents from dismissed Transferee Defendants located in Luxembourg—

UBS (Luxembourg) SA, UBS Third Party Management Company SA, UBS Fund Services Luxembourg SA, Access Partners SA, Access Management Luxembourg SA, and Pierre Delandmeter.

172.    During the Compensation Period, the Trustee engaged in mediation with the liquidators of defendant Luxalpha SICAV, which involved legal research regarding the Trustee's claims in this action and those of the Luxalpha liquidators' claims against certain dismissed defendants in a pending action in Luxembourg. The Trustee also continued his analysis and review of documents obtained in the course of his investigation, and continued to develop his case against the defendants and relevant parties.

### K.    MATTER 34 – CITIBANK

173.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Ltd. (collectively, "Citibank") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Citibank (the "Citibank Action"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

174.    Prior to the Compensation Period, the District Court issued an opinion granting Citibank's motion to dismiss in part, holding that the section 546(g) safe harbor protects certain redemption payments but not collateral payments from recovery to the extent they cannot be avoided under section 548(a)(1)(A). *Picard v. Citibank*, Adv. No. 11-cv-07825 (JSR) (S.D.N.Y. Dec. 26, 2013), (ECF No. 37).

175.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Citibank

Action, among others, to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section (IV)(G)(e).

176.    Prior to the Compensation Period, the Trustee filed his Memorandum of Law in Support of Omnibus Motion for Leave to Replead Pursuant to Fed. R. Civ. P. 15(a) and Court Order Authorizing Limited Discovery Pursuant to Fed. R. Civ. P. 26(d)(1) ("Omnibus Motion"). *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF No. 72). *See* discussion *infra* Section (IV)(S). Following a request by certain defendants, on September 17, 2014, the Bankruptcy Court held a conference to discuss further proceedings to be conducted pursuant to the Extraterritoriality Opinion and Order and the Omnibus Motion. The Bankruptcy Court directed the parties to confer and devise an efficient procedure and briefing schedule.

177.    Prior to the Compensation Period, on October 2, 2014, the Trustee filed a letter advising that the Trustee and counsel representing the defendants in this and other actions are working together to prepare a mutually acceptable agreed order that will set forth a proposed process and briefing schedule.  On October 23, 2014, the Trustee filed a proposed order setting forth a proposed process and briefing schedule. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 75 and 80).  Following limited objections by certain defendants, on November 19, 2014, the Bankruptcy Court held a conference to discuss the proposed process and briefing schedule.

178.    Prior to the Compensation Period, on January 13, 2015 and February 24, 2015, the Court so ordered two stipulations modifying the Extraterritoriality Scheduling Order and certain deadlines for the parties to file their respective submissions in connection with the Extraterritoriality Opinion and Order and the Omnibus Motion. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF Nos. 8990 and

9350).  On March 4, 2015, the Trustee filed a Letter Regarding Confidentiality Designations Affecting the Trustee's Extraterritoriality Submission.  The Bankruptcy Court held an informal conference on the confidentiality issues on March 18, 2015.

179.    Prior to the Compensation Period, on April 1, 2015, the Court entered a Third Stipulation and Order Modifying the Order Concerning Further Proceedings on Extraterritoriality Motion and Trustee's Omnibus Motion for Leave to Replead and for Limited Discovery (the "Third Stipulation").  *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 9720).  The Trustee's papers in opposition to the Extraterritoriality Opinion and Order and the Consolidated Motion to Dismiss, and in further support of the Omnibus Motion, were filed under the Third Stipulation with the Court on June 30, 2015.  On September 30, 2015, defendants filed replies to the Trustee's papers.

180.    Prior to the Compensation Period, pursuant to the Extraterritoriality Scheduling Order, the hearing date on the extraterritoriality briefing was set by the Court, and took place on December 16, 2015.

181.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue.  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB) (Bankr. S.D.N.Y.), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision").  *See* discussion *infra* Section (IV)(W). B&H attorneys, on behalf of the Trustee, reviewed and analyzed the Extraterritoriality Memorandum Decision to determine its potential impact on the Citibank Action.

182.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's Omnibus Motion

seeking the Court's leave to replead and authorization for limited discovery. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF No. 118).

183.    Prior to the Compensation Period, on October 6, 2017, defendants filed a Consolidated Memorandum of Law in Opposition to the Trustee's Omnibus Motion. *Id*., (ECF Nos. 122, 123). *See* discussion *infra* Section (IV)(S). On November 20, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a Reply Memorandum of Law in Further Support of Trustee's Omnibus Motion seeking the Court's leave to replead and authorization for limited discovery. *Id*., (ECF Nos. 124, 125).

184.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, argued the Trustee's Omnibus Motion at a hearing before the Court on February 8, 2018.

185.    During the Compensation Period, on November 21, 2018, B&H attorneys, on behalf of the Trustee, prepared and submitted to the Bankruptcy Court a proposed stipulation and order concerning Defendants' motion to dismiss the complaint and the Trustee's motion for leave to amend the complaint, which the Bankruptcy Court entered on November 26, 2018. *Picard v. Citibank*, Adv. No. 10-05345 (SMB) (Bankr. S.D.N.Y.), (ECF No. 148).

186.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared and drafted the Trustee's motion for leave to amend the complaint and a proposed amended complaint.  Also during the Compensation Period, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF No. 146).

## L.    <u>MATTER 35 – NATIXIS</u>

187.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd.

(collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

188.   By orders issued by the District Court, during the Spring and Summer of 2012, the District Court included the Natixis Defendants' motion to withdraw the reference in Common Briefing and oral argument.

189.   Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order and remanded the Natixis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. (ECF No. 65). *See* discussion *supra* Section (IV)(G)(e). B&H attorneys, on behalf of the Trustee, also presented to the Court, and the Court so ordered, that the transferee defendants, including the Natixis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Natixis Defendants.

190.   Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints (ECF No. 100), the addendum opposing the motion to dismiss specific to the Natixis Defendants (ECF No. 101), and proffered allegations pertaining to the extraterritoriality issue as to the Natixis Defendants. (ECF No. 102). The Natixis Defendants filed

replies to the Trustee's extraterritoriality papers on September 30, 2015. (ECF Nos. 105-06, and 109).

191.    Prior to the Compensation Period, on November 22, 2016, the Court issued its opinion regarding the extraterritoriality issue. *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (ECF No. 14495) (the "Extraterritoriality Memorandum Decision"). *See* discussion *infra* Section (IV)(W).

192.    Prior to the Compensation Period, the Trustee filed a Notice of Presentment of Order Concerning Further Proceedings on Trustee's Motion for Leave to Replead and for Limited Discovery in order to seek further discovery from Natixis (ECF No. 142).   Also prior to the Compensation Period, the Trustee filed a memorandum of law on this issue, counsel for the remaining Natixis Defendant, Natixis FP, filed an opposition (ECF Nos. 146-47), and the Trustee replied (ECF Nos. 150-52). During the Compensation Period, oral argument was held on this issue before the Bankruptcy Court and argued by B&H attorneys on the Trustee's behalf (ECF No. 156).

193.    During the Compensation Period, to give the Trustee sufficient time to amend his complaint against Natixis FP, B&H attorneys, on the Trustee's behalf, entered two stipulations with counsel for Natixis FP (ECF Nos. 165 and 166), and continued to prepare for litigation.

## M.    MATTER 37 – ABN AMRO

194.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.) ("ABN/RBS") seeking the return of approximately $237 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of ABN/RBS (the "ABN/RBS Action"). *Picard v. ABN AMRO Bank N.V.*

*(presently known as The Royal Bank of Scotland, N.V.)*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

195.    Prior to the Compensation Period, ABN/RBS filed a motion to withdraw the reference, which was granted by Judge Rakoff and resulted in Common Briefing before the District Court.

196.    In addition, prior to the Compensation Period, on February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice.  *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB) (Bankr. S.D.N.Y.), (ECF No. 56).

197.    Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the ABN/RBS Action back to the Bankruptcy Court for further proceedings consistent with these decisions.  *See* discussion *supra* Section (IV)(G)(e).

198.    Prior to the Compensation Period, the Trustee and B&H attorneys entered into stipulations with counsel for ABN/RBS extending ABN/RBS's time to respond to the Trustee's amended complaint.

199.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, researched and drafted an omnibus motion seeking the Court's leave to replead and authorization for limited discovery pursuant to the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order.  (ECF Nos. 69, 70, 71, 72). *See* discussion *infra* Section (IV)(S). B&H attorneys also reviewed and analyzed documents to support the Trustee's filings concerning extraterritoriality and drafted and filed proffered allegations and a memorandum related thereto. (ECF Nos. 99, 100, 101).

200.    Prior to the Compensation Period, B&H attorneys reviewed and analyzed the transferee defendants' supplemental memorandum of law and ABN/RBS's supplemental memorandum of law concerning extraterritoriality. *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354 (SMB), (ECF. Nos. 105, 106).

201.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue. *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision"). *See* discussion *infra* Section (IV)(W).

202.    Prior to the Compensation Period, on March 3, 2017, the Bankruptcy Court so ordered a stipulated order denying ABN/RBS's motion to dismiss the complaint and granting the Trustee's motion to amend (the "Order"). *Picard v. ABN AMRO Bank N.V.*, Adv. No. 10-05354, (ECF No. 117). On March 14, 2017, ABN/RBS filed a motion for an extension of time to file a notice of appeal and motion for leave to appeal with respect to the Order. *Id.*, (ECF No. 118).

203.    Prior to the Compensation Period, ABN/RBS filed a Notice of Appeal from the Order and a Motion for Leave to Appeal from the Order. *Picard v. ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.)*, No. 17 Civ. 2959 (VEC) (S.D.N.Y.), (ECF No. 1, 3-5). B&H attorneys, on behalf of the Trustee, researched and drafted an opposition to ABN/RBS's Motion for Leave to Appeal. *Id.*, (ECF No. 8). On October 3, 2017, Judge Caproni denied ABN/RBS' motion for leave to appeal. *Id.*, (ECF No. 14).

204.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's omnibus motion

seeking the Court's leave to replead and authorization for limited discovery. *Picard v. ABN AMRO Bank N.V.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y.) (ECF No. 130).

205.    Prior to the Compensation Period, on October 6, 2017, defendants filed a Consolidated Memorandum of Law in Opposition to the Trustee's Omnibus Motion. *Id.*, (ECF Nos. 134-137). *See* discussion *infra* Section (IV)(S). On November 20, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a Reply Memorandum of Law in Further Support of Trustee's Omnibus Motion seeking the Court's leave to replead and authorization for limited discovery. *Id.*, (ECF Nos. 143, 144).

206.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, argued the Trustee's Omnibus Motion at a hearing before the Court on February 8, 2018.

207.    Prior to the Compensation Period, on March 1, 2018, ABN/RBS filed a Motion to Revise the Memorandum Decision and March 3, 2017 Order to Dismiss Clawback Claims for Subsequent Transfers from Rye Select Broad Market XL Portfolio Limited, as well as a memorandum and declaration in support. *Id.*, (ECF Nos. 155-157).

208.    Prior to the Compensation Period, on March 21, 2018, B&H attorneys, on behalf of the Trustee, prepared and filed an opposition to the Motion to Revise. *Id.*, (ECF No. 161). Counsel for ABN/RBS filed a reply on March 26, 2018. *Id.*, (ECF No. 163).

209.    Prior to the Compensation Period, on March 28, 2018, B&H attorneys, on behalf of the Trustee, argued ABN/RBS's Motion to Revise at a hearing before the Court. At the end of the hearing, the Court denied the Motion to Revise.

210.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared a Stipulated Order on ABN/RBS's Motion to Revise denying ABN/RBS's Motion to

Revise without prejudice to ABN/RBS's right to make a motion for partial summary judgment at a later stage, which the Bankruptcy Court entered on April 10, 2018. *Id.*, (ECF. No. 165).

211.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared a stipulated order voluntarily dismissing without prejudice certain claims, subject to reinstatement, against ABN/RBS, which the Bankruptcy Court entered on August 20, 2018. *Id.*, (ECF. No. 168).

212.     Also during the Compensation Period, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF No. 172).

### N.     **MATTER 39 – FORTIS**

213.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.), ABN AMRO Custodial Services (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Custodial Services (Ireland) Ltd.) (collectively, the "Fortis Defendants"), Rye Select Broad Market XL Fund, LP, and Rye Select Broad Market XL Portfolio Ltd. seeking the return of approximately $747 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Fortis Defendants (the "Fortis Action"). *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

214.     On February 27, 2013, the Trustee voluntarily dismissed Rye Select Broad Market XL Fund, L.P. with prejudice. *Picard v. ABN AMRO Bank (Ireland) Ltd*., Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010), (ECF No. 50).

215. By orders issued by the District Court during the Spring and Summer of 2012, the District Court included the Fortis Defendants' motion to withdraw the reference in Common Briefing and oral argument. Prior to and during the Compensation Period, B&H attorneys, on behalf of the Trustee, reached agreements with the Fortis Defendants to extend the Trustee's time to respond to motions to dismiss the complaint while awaiting determinations from the District Court with respect to Common Briefing. *Picard v. ABN AMRO Bank (Ireland) Ltd.*, Adv. No. 10-05355 (SMB) (Bankr. S.D.N.Y.), (ECF No. 62, 64. 71, 82).

216. Prior to the Compensation Period, the District Court issued the Extraterritoriality Opinion and Order and the Good Faith Standard Opinion and Order, and remanded the Fortis Action back to the Bankruptcy Court for further proceedings consistent with its opinions. *See* discussion *supra* Section (IV)(G)(e).

217. Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, presented to the Court, and the Court so ordered, that the transferee defendants, including the Fortis Defendants, submit a consolidated memorandum of law in support of dismissal based on the extraterritoriality issue. The Court so ordered that the Trustee and SIPC file a consolidated memorandum of law opposing the motion to dismiss and seeking leave to amend the complaints, as well as an additional addendum opposing the motion to dismiss specific to the transferee defendants, including the Fortis Defendants. (ECF Nos. 83, 85).

218. Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, drafted and filed the Trustee's memorandum of law in opposition to the transferee defendants' motion to dismiss based on extraterritoriality and in further support of his motion for leave to amend complaints, the Trustee's supplemental memorandum of law in opposition to Fortis's motion to dismiss based on extraterritoriality and in further support of the trustee's motion for leave to amend

complaints, and the Trustee's proffered allegations pertaining to the extraterritoriality issue as to the Fortis Defendants.

219.    Prior to the Compensation Period, B&H attorneys reviewed the transferee defendants' supplemental memorandum of law and the Fortis Defendants' supplemental memorandum of law. (ECF No. 101, 102).

220.    Prior to the Compensation Period, on November 22, 2016, the Bankruptcy Court issued its opinion on the extraterritoriality issue.  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (SMB), (ECF No. 14495) (the "Extraterritoriality Memorandum Decision").  *See* discussion *infra* Section (IV)(W).

221.    Prior to the Compensation Period, on March 9, 2017, the Bankruptcy Court so ordered a stipulated order (the "Final Judgment"), which: (i) granted the extraterritoriality motion to dismiss as to count four of the Trustee's Amended Complaint; and (ii) granted the request for entry of a final judgment with respect to the dismissed claim.  *Id.*, (ECF No. 119).

222.    Prior to the Compensation Period, on July 11, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a proposed order in the Bankruptcy Court setting forth a proposed process and briefing schedule concerning further proceedings on the Trustee's omnibus motion seeking the Court's leave to replead and authorization for limited discovery.  *Id.*, (ECF No. 129).

223.    Prior to the Compensation Period, on October 6, 2017, defendants filed a Consolidated Memorandum of Law in Opposition to the Trustee's Omnibus Motion.  *Id.*, (ECF Nos. 134-137).  *See* discussion *infra* Section (IV)(S).  On November 20, 2017, B&H attorneys, on behalf of the Trustee, prepared and filed a Reply Memorandum of Law in Further Support of Trustee's Omnibus Motion seeking the Court's leave to replead and authorization for limited discovery.  *Id.*, (ECF Nos. 143, 144).

224.     Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, argued the Trustee's Omnibus Motion for Limited Discovery at a hearing before the Court on February 8, 2018.

225.     Prior to the Compensation Period, on February 13, 2018, the defendants filed a Letter in Response to Judge Bernstein's February 8, 2018 Request. *Id.*, (ECF No 150).

226.     Prior to the Compensation Period, on February 23, B&H attorneys, on behalf of the Trustee, prepared and filed a Letter in Response to Charts Filed by Certain Defendants. *Id.* (ECF No. 151).

227.     Prior to the Compensation Period, on March 27, 2018, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF No. 153).

228.     Prior to the Compensation Period, on June 5, 2018, the Court denied the Trustee's Omnibus Motion for Limited Discovery. *Id.*, (ECF No. 155).

229.     Prior to the Compensation Period, on June 14, 2018, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference. *Id.*, (ECF No. 156).

230.     During the Compensation Period, on September 24, 2018, B&H attorneys, on behalf of the Trustee, filed and served a notice of adjournment of the pre-trial conference and continued to prepare for litigation. *Id.*, (ECF No. 160).

231.     During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to prepare for litigation.

### O.     **MATTER 42 – EQUITY TRADING**

232.     This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Equity Trading Portfolio Limited, Equity Trading Fund Ltd., and BNP

Paribas Arbitrage, SNC (collectively, the "Equity Trading Defendants") seeking the return of approximately $16 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Equity Trading Defendants. *Picard v. Equity Trading Portfolio Limited*, Adv. No. 10-04457 (SMB) (Bankr. S.D.N.Y. Dec. 1, 2010), (ECF No. 2).

233.    The Equity Trading Defendants filed motions, or joinders to the motions, in the District Court to withdraw the reference from this Court.  (ECF Nos. 16, 21).  The District Court included the motions in its orders for Common Briefing and oral argument.  Following the District Court's extraterritoriality decision, the Bankruptcy Court denied the motion to dismiss the Equity Trading Defendants on grounds of extraterritoriality and granted the Trustee leave to amend.

234.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.

### P.    MATTER 53 – MAGNIFY

235.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Magnify Inc., Premero Investments Ltd., Strand International Investments Ltd., The Yeshaya Horowitz Association, Yair Green and Express Enterprises Inc. (collectively, the "Magnify Defendants"), seeking the return of over $150 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the defendants. *Picard v. Magnify Inc., et.al.*, Adv. No. 10-05279 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

236.    During the Compensation Period, B&H attorneys collaborated with the Trustee's special counsel in Israel, Soroker Agmon Nordman, to pursue two actions in Israel seeking over

$108 million against certain persons and entities who received funds transferred from the Magnify Defendants that originated from BLMIS.  These proceedings were filed in the District Court of Jerusalem, Israel in December 2015.  During the Compensation Period, B&H attorneys worked with Soroker Agmon Nordman to navigate various issues related to document discovery, including dealing with logistical and strategic issues relating to the production of documents in a foreign country, drafting responses to certain defendant's discovery requests, and reviewing, analyzing and responding to various pleadings and motions.  B&H attorneys also worked with Israeli counsel to respond to certain defendants' requests to appeal a lower court's decision permitting the Trustee to file an Amended Statement in Reply.

237.    During the Compensation Period, in the U.S. action, B&H attorneys moved forward with discovery following the Court's April 13, 2018 Memorandum Decision Denying Defendants' Motion to Dismiss.  (ECF No. 143).   Following the entry of a Tenth Amended Case Management Plan on July 25, 2018, (ECF No. 174), B&H attorneys continued to analyze issues relating to ongoing discovery disputes and to develop a plan for additional document discovery and depositions. B&H attorneys also continued working with experts to analyze documents produced by the Magnify Defendants as well as documents from BLMIS's files relating to the Ponzi scheme in order to develop strategy relating to proof of the Trustee's claims.

238.    In addition to the *Picard v. Magnify* action, this matter also encompasses time spent by the Trustee and B&H attorneys in connection with the settlement of the avoidance action against the Estate (Succession) of Doris Igoin, Laurence Apfelbaum, and Emilie Apfelbaum (collectively, the "Apfelbaum Defendants"), who have ties to the late founder of several of the Magnify Defendants.  *Picard v. Estate (Succession) of Doris Igoin*, Adv. No. 10-04336 (SMB) (Bankr. S.D.N.Y. Nov. 30, 2010). During the Compensation Period, B&H attorneys continued to confer

67

with the Apfelbaum Defendants' counsel regarding compliance with the terms of the settlement agreement.

## Q.    MATTER 59 – STANLEY SHAPIRO

239.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Stanley Shapiro, the Estate of Renee Shapiro, S&R Investment Co., David Shapiro, Rachel Shapiro, Leslie Shapiro Citron, Kenneth Citron, and numerous trusts (collectively, the "Shapiro Defendants") seeking the return of over $54 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Shapiro Defendants. *Picard v. Shapiro*, Adv. No. 10-05383 (SMB) (Bankr. S.D.N.Y. Dec. 9, 2010).

240.    Prior to the Compensation Period, B&H attorneys prepared and filed the second amended complaint against the Shapiro Defendants, the Shapiro Defendants moved the Bankruptcy Court to dismiss the second amended complaint on numerous grounds, the Trustee opposed the motion, and the Bankruptcy Court held oral argument on the motion. On November 25, 2015, the Bankruptcy Court issued a written decision granting in part and denying in part the Shapiro Defendants' motion to dismiss. Since that time, the Trustee and the Shapiro Defendants have been engaged in fact discovery.

241.    During the Compensation Period, B&H attorneys substantially completed their document production to the Shapiro Defendants and engaged in several discovery related disputes with counsel for the Shapiro Defendants concerning the deficiencies in their clients' document productions and a subpoena issued on behalf of the Trustee to JPMorgan Chase. B&H attorneys also sought and obtained an order from the Bankruptcy Court to depose a former BLMIS employee

who is currently in a federal correctional facility.  Additionally, B&H attorneys continued to further develop the Trustee's case against the Shapiro Defendants.

### R.    MATTER 60 – AVELLINO

242.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers, fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants.  *Picard v. Avellino*, Adv. No. 10-05421 (SMB) (Bankr. S.D.N.Y. Dec. 10, 2010).

243.    On June 6, 2011, certain of the A&B Defendants moved to dismiss the complaint in this Court.  (ECF No. 23).  That same day, certain A&B Defendants moved to withdraw the reference.  *Picard v. Avellino*, Case No. 11-03882 (JSR) (S.D.N.Y. June 7, 2011), (ECF Nos. 1–3).  The motion to withdraw the reference was fully briefed in the District Court, and oral argument was held on October 18, 2011.  The reference to this Court was withdrawn on several issues on February 29, 2012. (ECF No. 20).  The Trustee and the A&B Defendants participated in Common Briefing before the District Court on the issues withdrawn.

244.    In July 2014, after all withdrawn issues had been decided, the parties negotiated a schedule for the briefing of pending or renewed motions to dismiss.  On September 24, 2014, the A&B Defendants filed a supplemental motion to dismiss, renewing their arguments from their 2011 motion. (ECF Nos. 82-85). The Trustee responded by filing an amended complaint on November 24, 2014. (ECF No. 86).

245.   On January 28, 2015, the A&B Defendants filed a renewed motion to dismiss the amended complaint.  (ECF No. 88-90).  On May 21, 2015, the Trustee filed an opposition to the motion to dismiss.  (ECF No. 99).  On June 22, 2015, the A&B Defendants filed a reply in support of the motion to dismiss.  (ECF No. 101).  Oral argument was held on July 29, 2015.  At oral argument, the Court requested supplemental briefing from the parties on certain additional issues.  The supplemental briefs were filed on August 12, 2015.  (ECF No. 102-104).  On July 21, 2016, the Court issued a memorandum decision and order, granting in part and denying in part the motion to dismiss.  (ECF Nos. 116, 117).  On August 19, 2016, the Trustee filed a motion to reargue a specific portion of the decision regarding the Trustee's ability to recover fraudulent transfers made prior to January 1, 2001.  (ECF No. 125).  The A&B Defendants opposed the Trustee's motion to reargue and filed their opposition papers on September 19, 2016.  (ECF No. 129).  The Trustee replied to their opposition on October 3, 2016.  (ECF No. 134).  The Bankruptcy Court denied the motion to reargue on October 18, 2016.  (ECF No. 136).

246.   The A&B Defendants filed answers and counterclaims to the Amended Complaint on November 2, 2016.  (ECF Nos. 137-144).  The Trustee filed answers to the counterclaims to the Amended Complaint on January 27, 2017.  (ECF Nos. 150-152).  After participating in a meet and confer, the Trustee and the A&B Defendants submitted a Case Management Plan, so ordered by the Court on March 20, 2017.  (ECF No. 158).

247.   Following the death of defendant Michael S. Bienes on April 5, 2017, B&H attorneys drafted, and the Court so ordered, a stipulation to extend the Trustee's time to move to substitute the Estate of Michael Bienes and the personal representative in place of deceased defendant Michael S. Bienes (ECF No. 162), and filed a Petition for Administration in the Circuit Court for Broward County, Florida.  On October 18, 2017, Dianne K. Bienes was issued Letters

70

of Administration as the duly appointed Personal Representative of the Estate of Michael S.

Bienes. On November 16, 2017, the Court so ordered a stipulation between the Trustee and the

Estate of Michael S. Bienes and Dianne K. Bienes, in her capacity as Personal Representative for

the Estate of Michael S. Bienes, to substitute the Estate of Michael S. Bienes and Dianne K. Bienes,

in her capacity as Personal Representative for the Estate of Michael S. Bienes, as defendants in

place of Michael S. Bienes in this adversary proceeding. (ECF No. 170).

248.    On July 18, 2018, the Court so ordered a Second Amended Case Management Plan,

which, among other things, extended fact discovery until November 5, 2019. (ECF No. 178).

249.    During the Compensation Period, B&H attorneys performed overall case

management and engaged in discovery, which included reviewing documents produced by the

A&B Defendants and third parties, preparing to produce additional documents to the A&B

Defendants, preparing for depositions, pursuing discovery from third parties, and engaging in

various meet and confers with counsel for the A&B Defendants regarding various discovery issues.

**S.**    **MATTER 62 – SUBSEQUENT TRANSFERS**

250.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing

recovery actions against entities that received subsequent transfers of Customer Property from

BLMIS.

251.    Prior to the Compensation Period, the Trustee briefed and presented argument at

hearings before the District Court on issues raised by subsequent transfer defendants, as well as

other defendants, that were subject to Common Briefing and hearings. As of July 31, 2014, the

District Court issued all of its decisions on the issues subject to Common Briefing and remanded

the cases to this Court for further findings based on the legal standards set forth in the District

Court's decisions. *See* discussion *supra* Section (IV)(G)(e).

252.    As part of its Common Briefing decisions, the District Court remanded the cases in which subsequent transfer defendants filed an extraterritoriality motion to dismiss.

253.    On December 31, 2014, the defendants filed their supplemental memorandum in support of their extraterritoriality motion to dismiss.  On June 26-30, 2015, the Trustee filed a principal brief in response to the supplemental memorandum in support of the extraterritoriality motion to dismiss, as well as addenda and proffered amended complaints or allegations specific to the moving defendants.  The defendants filed reply memoranda on September 30, 2015. This Court held a hearing on the motion on December 16, 2015.  On November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. This matter was appealed to the Second Circuit, which recently ruled in favor of the Trustee. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). *See* discussion *infra* Section (IV)(W).

254.    As part of the extraterritoriality briefing, the Trustee sought the de-designation as confidential of numerous documents produced by the defendants. Some of the defendants voluntarily de-designated the documents while others required arbitration and at least one hearing with this Court.

255.    As part of the original December 10, 2014 scheduling order this Court held in abeyance the Trustee's Motion for Limited Discovery until after ruling on the Defendants' Extraterritoriality Motion to Dismiss. On June 5, 2018, the Court denied the Trustee's Motion for Limited Discovery. (ECF 16927).

## T.    <u>MATTER 65 – LEGACY</u>

256.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other

applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Legacy Capital Defendants. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2010).

257.    During the Compensation Period, B&H attorneys prepared for continued litigation in this action.  In support of this effort, B&H attorneys continued to identify relevant witnesses in the United States and abroad and procured information regarding Legacy, relevant third party witnesses, and potential subsequent transferees identified in Legacy's initial disclosures.

258.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, continued to obtain agreements on the production and confidentiality de-designation of documents relevant to this proceeding as received from certain third parties.

259.    During the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared a motion for Summary Judgment against Defendant Legacy in connection with Count One of the Amended Complaint.  Additionally, during the Compensation Period, B&H attorneys prepared a statement of undisputed facts in connection with the Motion for Summary Judgment.

260.    During the Compensation Period, B&H attorneys, on behalf of the Trustee and Legacy, met and conferred regarding the possibility of mediation; however, given their respective positions, the parties agreed that mediation would not be productive.

## U.    **MATTER 71 – SQUARE ONE**

261.    This matter categorizes time spent by the Trustee and B&H attorneys pursuing the avoidance and recovery action against Square One Fund Ltd. ("Square One") seeking the return of approximately $26 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law, in connection with certain transfers of property by BLMIS to or for the benefit of Square One.  *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2010).

73

262.    On November 1, 2018, the Trustee entered a stipulation substituting counsel for Square One.  (*Id.*, ECF No. 161).

263.    On November 21, 2018, the Trustee entered a stipulation with counsel for Square One allowing the Trustee to file an amended complaint.  (*Id.*, ECF No. 166).

264.    During the Compensation Period, the Trustee entered four stipulations with counsel for Square One to extend Square One's time to answer, move, or otherwise respond to the Trustee's complaint.  (*Id.*, ECF Nos. 155, 158, 162, and 165).

265.    Also during the Compensation Period, the Trustee filed and served four notices of adjournment of the pre-trial conference in this action.  (*Id.*, ECF Nos. 153–54, 156–57, 159–60, and 163–64).

## V.    MATTER 73 – BNP PARIBAS

266.    This matter categorizes time spent by the Trustee and B&H attorneys in separate adversary proceedings that collectively seek the return of approximately $1 billion under SIPA, the Bankruptcy Code, and the New York Fraudulent Conveyance Act from BNP Paribas S.A. and its subsidiaries—BNP Paribas Arbitrage SNC, BNP Paribas Bank & Trust (Cayman) Limited, BNP Paribas Securities Services, BNP Paribas (Suisse) S.A., and BGL BNP Paribas Luxembourg S.A., (collectively, the "BNP Paribas Defendants")—who redeemed money from feeder funds that invested with BLMIS.  *See Picard v. BNP Paribas Arbitrage, SNC*, Adv. No. 11-02796 (SMB) (Bankr. S.D.N.Y. Nov. 3, 2011); *Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (Bankr. S.D.N.Y. May 4, 2012); and *Picard v. Equity Trading Portfolio Ltd.*, Adv. No. 10-04457 (SMB) (Bank. S.D.N.Y. Dec. 1, 2010) (collectively, the "BNP Paribas Proceedings").

267.    Prior to the Compensation Period, B&H attorneys, on behalf of the Trustee, prepared and filed an Amended Complaint to recover subsequent transfers from the BNP Paribas Defendants.  *See Picard v. BNP Paribas S.A.*, Adv. No. 12-01576 (SMB) (ECF No. 100).  The

BNP Paribas Defendants filed a motion to dismiss the Amended Complaint on October 5, 2017, which the Trustee opposed.  (ECF Nos. 106-107, 110-111).

268.    On September 13, 2018, the parties stipulated, and the Bankruptcy Court so ordered, the dismissal of claims to recover subsequent transfers from Ascot Partners, L.P. to Defendant BNP Paribas Bank & Trust Cayman Limited pursuant to a settlement agreement, dated July 3, 2018, that the Trustee entered into with Ascot Partners, L.P.  (ECF No. 145).

269.    On October 3, 2018, the Bankruptcy Court issued its decision granting in part and denying in part the BNP Paribas Defendants' motion to dismiss.  (ECF No. 148).  Finally, on October 18, 2018, the Bankruptcy Court entered an order granting the Trustee leave to file the Amended Complaint and denying the BNP Paribas Defendants' motion to dismiss.  (ECF No. 150.)

## W.    **MATTER 77 – EXTRATERRITORIALITY**

270.    Prior to the Compensation Period, on November 22, 2016, this Court issued its decision granting in part and denying in part the defendants' extraterritoriality motion to dismiss. *Sec. Inv. Prot. Corp v. Bernard L. Madoff Inv. Secs. LLC*, Adv. No. 08-01789 (SMB) (ECF No. 14495).

271.    On September 27, 2017, the Second Circuit entered an order granting Permission To Appeal Pursuant to 28 U.S.C. § 158(d)(2)(A) in the petitions filed by the Trustee. *See In re Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC*, No. 17-2992(L) (ECF No. 1, *as amended*, ECF No. 65) (the "Lead Case").

272.    On January 10, 2018, the Trustee and SIPC submitted their appellate briefs for Consolidated Appeal. *See* Briefs in Lead Case (ECF Nos. 496 and 497). The parties and their amici completed briefing by May 21, 2018.  (ECF Nos. 588, 591, 592, 593, 935, 981, 1024, 1028, 1029, 1090, 1092, 1213, 1216).

273.    On November 16, 2018, the Second Circuit heard oral argument and reserved decision. *See* Lead Case (ECF No. 1294).

274.    On February 25, 2019, the Second Circuit reversed the Bankruptcy Court's November 22, 2016 ruling. The Second Circuit held that the presumption against exterritoriality and international comity do not limit the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to use it to recover property from a foreign subsequent transferee that received the property from a foreign initial transferee. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court and remanded for further proceedings. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Defendants filed a Petition for Panel Rehearing and Rehearing *En Banc* on March 11, 2019. *Id.*

## V.    <u>COMPENSATION REQUESTED</u>

275.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995, as amended on August 1, 2013 (the "Local Guidelines") and the Second Amended Compensation Order.  Pursuant to the Local Guidelines, the declaration of David J. Sheehan, Esq., regarding compliance with the same is attached hereto as Exhibit A.

276.    The Trustee, and B&H, as counsel to the Trustee, expended 77,089.40 hours in the rendition of professional and paraprofessional services during the Compensation Period, resulting in an average hourly discounted rate of $431.95 for fees incurred.[17]  The blended attorney rate is $505.15.

---

[17] In order to streamline the invoices and related fee applications, as of June 1, 2011, the invoice amounts reflect combined amounts for the Trustee and B&H.

277.    Prior to filing this Application, in accordance with the Second Amended Compensation Order, the Trustee, and B&H, as counsel to the Trustee, provided to SIPC: (i) monthly fee statements setting forth the Trustee's and B&H's fees for services rendered and expenses incurred during the Compensation Period, and (ii) a draft of this Application. In connection with the four monthly statements, the Trustee and B&H voluntarily adjusted their fees by writing off $2,056,015.30 (not including the 10% public interest discount, as discussed below), and wrote off expenses customarily charged to other clients in the amount of $318,349.55.

278.    At SIPC's request, the Trustee's and B&H's fees in this case reflect a 10% public interest discount from their standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $3,699,903.08. The requested fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

279.    Pursuant to the Second Amended Compensation Order, on September 19, 2018, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from August 1, 2018 through August 31, 2018 (the "August Fee Statement"). The August Fee Statement reflected fees of $9,288,204.10 and expenses of $207,238.88. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the August Fee Statement reflected fees of $8,359,383.69 and expenses of $132,124.88. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,523,445.32 for services rendered and $132,124.88 for expenses incurred by the Trustee and B&H.

280.    Pursuant to the Second Amended Compensation Order, on October 17, 2018, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and

expenses incurred in connection with this case regarding the period from September 1, 2018 through September 30, 2018 (the "September Fee Statement"). The September Fee Statement reflected fees of $9,056,981.90 and expenses of $126,451.05. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the September Fee Statement reflected fees of $8,151,283.71 and expenses of $76,430.22. After subtracting the Court-ordered 10% holdback, SIPC advanced $7,336,155.34 for services rendered and $76,430.22 for expenses incurred by the Trustee and B&H.

281. Pursuant to the Second Amended Compensation Order, on November 19, 2018, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from October 1, 2018 through October 31, 2018 (the "October Fee Statement"). The October Fee Statement reflected fees of $9,881,129.60 and expenses of $281,078.18. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the October Fee Statement reflected fees of $8,893,016.64 and expenses of $176,543.56. After subtracting the Court-ordered 10% holdback, SIPC advanced $8,003,714.98 for services rendered and $176,543.56 for expenses incurred by the Trustee and B&H.

282. Pursuant to the Second Amended Compensation Order, on December 20, 2018, the Trustee, and B&H, as counsel to the Trustee, provided SIPC with their statements of fees and expenses incurred in connection with this case regarding the period from November 1, 2018 through November 30, 2018 (the "November Fee Statement"). The November Fee Statement reflected fees of $8,772,715.20 and expenses of $157,218.41. SIPC's staff requested certain adjustments and made suggestions, which were adopted by the Trustee and B&H. After such adjustments, the November Fee Statement reflected fees of $7,895,443.68 and expenses of

$68,538.31.  After subtracting the Court-ordered 10% holdback, SIPC advanced $7,105,899.31 for services rendered and $68,538.31 for expenses incurred by the Trustee and B&H.

283.    Exhibit B annexed hereto is a schedule of the B&H professionals, including the Trustee, and B&H paraprofessionals who have provided services for the Trustee during the Compensation Period, the capacity in which each individual is employed by B&H, the year in which each attorney was licensed to practice law, the hourly billing rate charged by B&H for services provided by each individual, the aggregate number of hours billed by each individual, and the total compensation requested for each individual, prior to the 10% discount.

284.    Exhibit C annexed hereto is a summary of compensation by work task code and matter number for total number of hours expended and total fees for services rendered by B&H professionals and paraprofessionals.  The 10% discount is taken off the total cumulative amount billed, as reflected on Exhibit C.

285.    Exhibit D annexed hereto provides a schedule of the expenses for which reimbursement is requested by B&H.

286.    There is no agreement or understanding among the Trustee, B&H, and any other person, other than members of B&H, for sharing of compensation to be received for services rendered in this case.  No agreement or understanding prohibited by 18 U.S.C. § 155 has been made or will be made by the Trustee or B&H.

287.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, the Trustee and B&H reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VI.    REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

288.    Section 78eee(b)(5)(A) of SIPA provides in pertinent part that, upon appropriate

application and after a hearing, "[t]he court shall grant reasonable compensation for services

rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the

attorney for such a trustee . . . ."  Section 78eee(b)(5)(C) of SIPA specifically establishes SIPC's

role in connection with applications for compensation and the consideration the Court should give

to SIPC's recommendation concerning fees.  That section provides as follows:

> In any case in which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there is no
> difference between the amounts requested and the amounts recommended by SIPC,
> the court shall award the amounts recommended by SIPC.  In determining the
> amount of allowances in all other cases, the court shall give due consideration to
> the nature, extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC.

SIPA § 78eee(b)(5)(C).

289.    To the extent the general estate is insufficient to pay such allowances as an expense

of administration, § 78eee(b)(5)(E) of SIPA requires SIPC to advance the funds necessary to pay

the compensation of the Trustee and B&H.  *See* SIPA § 78fff-3(b)(2).

290.    While the Trustee has recovered, or entered into agreements to recover, more than

$13.355 billion as of January 31, 2019, a significant portion of these funds must be held in reserve

pending final resolution of several appeals and disputes.

291.    Accordingly, the Trustee has determined that, at this time, he has no reasonable

expectation that the general estate will be sufficient to make a distribution to general creditors or

pay administrative expenses.  The Trustee has been advised by SIPC that it concurs in this belief.

Any fees and expenses allowed by this Court will be paid from advances by SIPC without any

reasonable expectation by SIPC of recoupment thereof.

292.    Therefore, with respect to this Application, the Trustee, and B&H, as counsel to the Trustee, request that consistent with § 78eee(b)(5)(C) of SIPA, the Court "shall award the amounts recommended by SIPC." *See In re Bell & Beckwith*, 112 B.R. 876 (Bankr. N.D. Ohio 1990).  SIPC will file its recommendation to the Court with respect to this Application prior to the hearing scheduled to be held on April 24, 2019.

293.    The Trustee, and B&H, as counsel to the Trustee, submit that the request for interim allowance of compensation and expenses made by this Application is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to § 78eee(b)(5) of SIPA.

## VII.    CONCLUSION

The Trustee, and B&H, as counsel to the Trustee, respectfully submit that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $33,299,127.72 (of which $29,969,214.95 is to be paid currently and $3,329,912.77 is to be held back through the conclusion of the liquidation period or until further order of the Court) as an interim payment for professional services rendered by the Trustee and B&H during the Compensation Period, and $453,636.97 as reimbursement of the actual and necessary costs and expenses incurred by the Trustee and B&H in connection with the rendition of such services; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      March 15, 2019

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  *s/ David J. Sheehan*
     Baker & Hostetler LLP
     45 Rockefeller Plaza
     New York, New York 10111
     Telephone: (212) 589-4200
     Facsimile: (212) 589-4201
     Irving H. Picard
     Email: ipicard@bakerlaw.com
     David J. Sheehan
     Email: dsheehan@bakerlaw.com
     Seanna R. Brown
     Email: sbrown@bakerlaw.com
     Heather R. Wlodek
     Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*