**CHAITMAN LLP**
465 Park Avenue
New York, New York 10022
Phone & Fax: (888) 759-1114
Helen Davis Chaitman
Gregory M. Dexter
hchaitman@chaitmanllp.com
gdexter@chaitmanllp.com
*Attorneys for Defendants-Appellants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br>Adv. Pro. No. 08-1789 (SMB) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DEFENDANTS LISTED ON ECF No. 14283,<br><br>    Defendants-Appellants. | Adv. Pro. Nos. listed on ECF No. 14283. |

**DEFENDANTS-APPELLANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPEAL OF JUDGE MAAS' JANUARY 2, 2019 ORDER DENYING DEFENDANTS' MOTION TO COMPEL THE TRUSTEE TO PRODUCE THE TRADING RECORDS**

# **TABLE OF CONTENTS**

                                                                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ..................................................... 3

    I.      The Trustee has deceived this Court and Defendants concerning his production of the Trading Records .......................................................... 3

    II.     The Trading Records are significant ................................................................. 5

    III.    The Trustee's experts have recently admitted that Madoff engaged in real trading for his investment advisory customers ....................................... 5

    IV.    The Trustee promised to share access to the BLMIS Database ...................... 6

    V.     Recent procedural history ................................................................................ 7

STANDARD OF REVIEW ........................................................................................................ 9

FEDERAL RULE OF CIVIL PROCEDURE 26 ....................................................................... 9

ARGUMENT ........................................................................................................................... 10

    I.      This Court already ordered the Trustee to produce the Trading Records .................... 10

    II.     It would impose no burden on the Trustee to give Defendants access to the BLMIS Database and Rule 26 requires it ............................................... 11

    III.    Defendants made a showing that real trading occurred – as even Judge Maas acknowledged .......................................................................................... 13

    IV.    Judge Maas failed to consider that Defendants' counsel requested, in the alternative, for access to the BLMIS Warehouses so that Defendants' counsel could go through the documents ......................................................... 14

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnes v. D.C.*,
  289 F.R.D. 1 (D.D.C. 2012)................................................................................................13

*Chen-Oster v. Goldman, Sachs & Co.*,
  285 F.R.D. 294 (S.D.N.Y. 2012) ........................................................................................11

*Mary Imogene Bassett Hosp. v. Sullivan*,
  136 F.R.D. 42 (N.D.N.Y. 1991).........................................................................................11

*Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*,
  2014 WL 5525237 (S.D.N.Y. Oct. 27, 2014)......................................................................9

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
  325 F.R.D. 36 (E.D.N.Y. 2018) .........................................................................................12

*Novelty, Inc. v. Mountain View Marketing, Inc.*,
  265 F.R.D. 370 (S.D.Ind.2009)..........................................................................................13

*Oklahoma, ex rel. Edmondson*, 2007 WL 1498973 (N.D. Okla. May 17, 2007) .........................15

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978).............................................................................................................9

*S.E.C. v. Collins & Aikman Corp.*,
  256 F.R.D. 403 (S.D.N.Y. 2009) .......................................................................................14

*Wyeth v. Impax Labs., Inc.*,
  248 F.R.D. 169 (D. Del. 2006) ..........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................ *passim*

Fed. R. Civ. P. 26(b)(1)..............................................................................................................9, 13

Fed. R. Civ. P. 26(b)(2)(C)(i) ......................................................................................................12

Fed. R. Civ. P. 26(b)(2)(C)(iii) ....................................................................................................11

Defendants-Appellants represented by Chaitman LLP listed on ECF No. 14283 ("Defendants") respectfully submit this memorandum of law in support of their appeal of Judge Maas' January 2, 2019 Order (the "January 2, 2019 Order"), ECF No. 18354.[1]  The January 2, 2019 Order denied Defendants' most recent motion to compel the production of third-party trading records evidencing the trading activities of Madoff and BLMIS (the "Trading Records").

## PRELIMINARY STATEMENT

Defendants have been requesting the Trading Records **for three years**.  This Court ordered the production of the Trading Records on numerous occasions, and the Trustee has repeatedly represented that the Trading Records had been or would be produced.  However, the Trustee has never produced the Trading Records.  Accordingly, the Trustee must now be compelled, yet again, to produce the Trading Records and the Court should enter an Order with sufficient sanctions for continued noncompliance.

The Trading Records go to significant issues in this case and there is no way for Defendants to obtain the Trading Records (or any equivalent discovery) except through the Trustee.  Although the Trustee has unlimited man power and has been compensated more richly than any bankruptcy trustee has ever been compensated, he has refused to produce the Trading Records and, instead, is forcing Defendants' counsel to physically go through a warehouse in Queens (the "Queens Warehouse") to pore through documents looking for Trading Records.  The Trustee also maintains an electronic Database which stores discovery in this case (the "BLMIS Database"), but, without any justification, the Trustee refuses to share access to the BLMIS Database with Defendants' counsel.  The Trustee, at one point, had offered access to the BLMIS Database to various defense counsel, but then rescinded that offer.

---

[1]  Attached to the January 16, 2019 Declaration of Helen Davis Chaitman ("Chaitman Decl.") as Ex. 1 [AA13-19].

After this Court ordered the Trustee to put all the Trading Records in the E-Data Room and after the Trustee ignored this Court's order, Defendants brought this dispute before Judge Maas. Over the course of the last few years, the Trustee has raised a series of convoluted and ever-changing explanations about why the Trading Records have not been produced. On January 2, 2019, Judge Maas denied Defendants' most recent motion to compel the production of the Trading Records. On February, 15, 2019, this Court granted leave to appeal Judge Maas' ruling.

Through this appeal, Defendants are asking for two things: (1) for the Trustee to share access to the BLMIS Database (where many of the Trading Records may be located); and (2) for the Trustee to produce the Trading Records in the Queens Warehouse. The Trustee has recently agreed to give Defendants' counsel access to the Queens Warehouse but this imposes what may be an insurmountable burden on Defendants. Considering the Trustee's unlimited resources and inexcusable failures to comply with this Court's orders, the Trustee should be ordered to produce all Trading Records in the Queens Warehouse and to give Defendants' counsel access to the BLMIS Database.

Similarly, the Trustee cannot disregard his obligations to review documents under his custody for responsiveness. Given the Trustee's unlimited litigation budget, it is particularly egregious to permit the Trustee to conceal relevant documents simply because they are in a warehouse in Queens because the Trustee may have determined that they do not support his theory of the case. If Defendants' counsel did not review documents within their possession for responsiveness, the Court would surely have sanctioned Defendants. It is grossly unfair that the Trustee has been permitted to get away with this.

**STATEMENT OF FACTS AND PROCEDURAL POSTURE**

I. **The Trustee has deceived this Court and Defendants concerning his production of the Trading Records**

For three years, Defendants have been demanding the Trading Records and the Trustee has lied to this Court about having put all Trading Records in the E-Data Room. *See* January 5, 2017 Transcript, attached as Ex. D to the September 20, 2018 Joint Letter to Judge Maas,[2] at 30:14-16 [AA59] (**MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it."**) (emphasis added).

At an argument before the Court on May 17, 2016,[3] the Trustee's counsel represented as follows:

> MR. JACOBS: So, absolutely the Defendant has the ability to conduct whatever investigation they believe is relevant to the claims of their defenses, the same that our expert did, and they have access to all the same information that our expert did. And we did that to be transparent and to provide any data that any litigant believes that they should have access to. [AA89-90][4]
>
> ****
>
> MR. JACOBS: . . . . [W]e have already produced in this litigation, without even having received a document request, 100 percent of that data.[5]
>
> ****
>
> MR. JACOBS: To the extent we have them in addition to publicly available information that we obtain, it's all in the data room clearly labeled.[6]
>
> ****

---

[2] The September 20, 2018 Joint Letter to Judge Maas is Chaitman Decl., Ex. 2 [AA21-74].
[3] The Trustee emailed this transcript to Judge Maas on Nov. 19, 2018. The transmittal letter is attached to the Chaitman Decl. as Ex. 3 [AA76-77]. The transcript is Chaitman Decl., Ex. 4 [AA79-157].
[4] Chaitman Decl., Ex. 4 at 11:11-12:14 [AA89-90].
[5] *Id*. at 15:21-23 [AA93].
[6] *Id*. at 61:7-17 [AA139].

{00039497 2}   3

> MR. JACOBS: She tests that conclusion the same way our expert does, by examining the underlying records. **All of those records again have been made available to Ms. Chaitman. They're in the data room**.[7]

Since 2016, this Court has ordered the Trustee to produce *all* of the Trading Records. *See, e.g.*, May 17, 2016 Transcript at 69:19-22 [AA147] (THE COURT: "Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."); *see also id.* at 67:23-68:12 [AA145]. Judge Maas has likewise ordered the Trustee to produce all Trading Records. *See* January 4, 2017 Order, ECF No. 14807[8] at 3 [AA161] ("To the extent there are any additional relevant records of securities trading that have not been made available . . . through Data Room 1, they must promptly be produced.").

During multiple hearings in front of Judge Maas, the Trustee represented that he would produce all Trading Records. *See* December 13, 2016 Transcript[9] at 145:23-146:5 [AA53-54] (MR. JACOBS: "We will look for and have been looking for stuff – any additional stock trading records as to earlier period of time . . . to the extent we find them or restore them or can obtain them from DTCC or any other method, we will produce them to you and will put them in the data room. Absolutely."); January 5, 2017 Transcript at 30:14-16 [AA59] (MR JACOBS: "If it's a trading record, if it's a BLMIS trading record of securities having been traded, we will produce it.").[10]

This Court previously reminded the Trustee on June 29, 2017 when Defendants' counsel pointed out that the Trustee had still not produced all the Trading Records, **there are "two orders**

---

[7] *Id.* at 68:4-69:5 (emphasis added) [AA146].
[8] A copy of this Order is attached to the Chaitman Decl. as Ex. 5 [AA159-62] for the Court's convenience.
[9] Ex. C [AA47-55] to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2 [AA21-74].
[10] Ex. D [AA57-60] to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2 [AA21-74].

{00039497 2}  4

**directing you to turn over the documents."** *See* June 29, 2017 Transcript[11] at 74:14-15 [AA35] (emphasis added).

## II.    The Trading Records are significant

On at least two occasions, Judge Maas recognized in his January 2, 2019 Order that the Trading Records are highly relevant because they go to "significant" legal issues in these cases. *See* March 15, 2017 Order, ECF No. 15236[12] at 2 [AA165]; *see also* January 2, 2019 Order, ECF No. 18354[13] at 2 [AA14] ("Whether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue."). Judge Maas also recognized that the "Trustee is obviously well-funded." *Id*. at 6 [AA18].

## III.    The Trustee's experts have recently admitted that Madoff engaged in real trading for his investment advisory customers

As this Court is aware, contrary to the Trustee's continuous representations that Madoff never purchased securities with investment advisory customers' money, Madoff testified in his deposition that he maintained a portfolio of $6 billion of Treasury Bills that he purchased with investment advisory customers' money and that, in addition, he invested such customers' money in various other securities such as commercial paper. When Defendants' counsel brought this to the Court's attention in 2018, Mr. Sheehan acknowledged the truth of this, for the first time in nine years – although he only confessed to the T-bills Madoff had purchased in 2007 – 2008. The evidence shows that Madoff purchased T-bills with investment advisory customers' money from the 1990s on. Madoff also testified concerning Mr. Dubinsky's expert report and destroyed Mr.

---

[11] Ex. A [AA29-37] to the September 20, 2018 Joint Letter to Judge Maas, which Chaitman Decl. as Ex. 2 [AA21-74].
[12] A copy of this Order is attached to the Chaitman Decl. as Ex. 6 [AA164-70] for the Court's convenience.
[13] Chaitman Decl., Ex. 1 [AA13-19].

{00039497 2 }    5

Dubinsky's credibility because his report was patently false in numerous respects (despite the fact that the Trustee paid Mr. Dubinsky over $30 million to prepare his report).

In the face of Madoff's truthful testimony, the Trustee was compelled to have new expert reports prepared. In January 2019, the Trustee produced an entirely new expert report of Mr. Dubinsky and an entirely new expert report of Lisa Collura, who now admits what Defendants have been alleging for years: that Madoff used investment advisory customers' money to purchase various kinds of securities; and that he purchased these securities through brokerage accounts at Bear Stearns, Fidelity, Lehman Brothers, Morgan Stanley, Bank of New York, JPMorgan Chase and M&T Securities. Collura also admits that the investment advisory customers' money appreciated. The Expert Report of Lisa Collura, dated January 16, 2019, is annexed to Defendants' January 25, 2019 Letter [AA284-88] as Ex. A [AA290-322] with selected exhibits; *see id.*, Ex. 3 [AA324-26]. Collura admits that Madoff invested funds in the 703 Account at JPMorgan Chase. She admits that Madoff comingled funds between the investment advisory business and the proprietary trading business. *See id.*, ¶ 47, n.28, [AA312] ¶ 57 [AA316]. And she documents the more than $16 billion in Treasury Bills that Madoff purchased through JPMorgan Chase just in 2007 – 2008. *See id.*, Ex. 12 [AA328-332]. Thus, the Trustee's previous representation that Madoff never purchased securities with investment advisory customers' money has now been proven false, and the Trustee should not be permitted to further conceal the Trading Records. Defendants are entitled to compliance with this Court's orders. And they are entitled to see all the Trading Records, not simply the ones that the Trustee has finally decided to disclose.

**IV.      The Trustee promised to share access to the BLMIS Database**

On November 14, 2017, Defendants' counsel met with two of the Trustee's counsel, Mr. Sheehan and Mr. Shifrin at their office to discuss the specific documents Defendants were seeking. Defendants' counsel explained that, as we have always maintained, the Trustee should produce all

third-party documents evidencing the purchase, sale, or custody of securities by Madoff and/or by BLMIS for the entire period from 1980 on. Mr. Sheehan and Mr. Shifrin promised to produce these documents. However, what the Trustee did, instead, was only produce third-party account records that the Trustee had obtained through subpoenae. These only went back approximately six years from the dates of the subpoenae. Obviously, Defendants are entitled to Trading Records covering the entire period of their accounts with Madoff/BLMIS.

At a meeting with the Trustee's counsel and counsel for numerous defendants in good-faith claw back cases on June 5, 2018, Mr. Sheehan finally agreed to give Defendants' counsel with access to the BLMIS database. *See* July 25, 2018 Transcript,[14] at 26:13-15 [AA66] (MR. BELL: "In the context of that discussion, the BLMIS database came up and Mr. Sheehan did represent that the Trustee is certainly open to producing that database."). At the time, Defendants' counsel believed that access to the BLMIS Database would finally allow Defendants to access all of the Trading Records, which the Trustee had deliberately concealed. Yet, after finally making this offer, the Trustee rescinded his offer without any meaningful explanation.

Thereafter, Defendants' counsel were shocked to learn that there were Trading Records in the Queens Warehouse that were not in the BLMIS Database. *See infra.* Hence, Defendants' counsel is insisting on production of the Trading Records in the Queens Warehouse.

## V.   Recent procedural history

On September 20, 2018, Defendants filed a joint letter with the Trustee in which Defendants made an application to compel the Trustee to share access to the BLMIS Database and to sanction the Trustee's counsel for failing to produce documents essential to the defense of these actions. A hearing was held with Judge Maas on November 19, 2018.

---

[14]  Ex. E [AA62-67] to the September 20, 2018 Joint Letter to Judge Maas, which is Chaitman Decl., Ex. 2 [AA21-74].

{00039497 2 }                                              7

On November 20, 2018, after oral argument, Defendants supplemented their application based on a shocking disclosure Mr. Shifrin made the day before that the Trustee had never searched through the Queens Warehouse – despite it being under his exclusive control – for the Trading Records. *See* November 19, 2018 Transcript,[15] at 46:15-24 [AA175]. The Trustee's counsel also admitted to Judge Maas during oral argument that he *still* maintains that Madoff never purchased securities for investment advisory customers (and thus the Trading Records are contrary to his theory of the case). *Id.* at 42:19-20 [AA174]. Thus, Defendants also sought to compel the Trustee to produce or permit Defendants access to the Trading Records in the Queens Warehouse. *See* November 20, 2018 Letter.[16]

On January 2, 2019, Judge Maas denied Defendants' application. Judge Maas recognized that "[w]hether the Defendants' investment accounts ever contained actual securities purchased with their own funds is consequently an important issue." January 2, 2019 Order, ECF No. 18354,[17] at 2 [AA14]. Judge Maas also recognized that the "Trustee is obviously well-funded." *Id.* at 6 [AA18].

However, Judge Maas denied the application, citing the following: (a) "Defendants have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption;" (b) Defendants have not "demonstrated that the warehouse is likely to contain any documents that would be of use to them in this regard;" and (c) Defendants have "yet to suggest a reasonable method of searching for any additional pre-1992 hard copy or electronic third-party trading records that might exist." *Id.*

---

[15] Relevant excerpts of which are attached as Ex. 7 [AA172-175] to the Chaitman Decl.
[16] Chaitman Decl., Ex. 8 [AA177-197].
[17] Chaitman Decl., Ex. 1 [AA13-19].

{00039497 2}                                          8

On January 16, 2019, Defendants wrote the Court and requested permission to appeal the January 2, 2019 Order. *See Picard v. Wilenitz*, Adv. Pro. No. 10-04995, ECF No. 126 [AA1-8]. On February 15, 2019, this Court granted Defendants leave to appeal. *See Picard v. Wilenitz*, Adv. Pro. No. 10-04995, ECF No. 130 [A333-5].

## STANDARD OF REVIEW

Pursuant to the Order Appointing Arbitrator, the Discovery Arbitrator's findings of fact and legal conclusions are reviewed *de novo*. ECF No. 14227, ¶ 10. Rulings on procedural matters are reviewed for an abuse of discretion. *See id.*

## FEDERAL RULE OF CIVIL PROCEDURE 26

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance . . . is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Defendants have a right to take discovery to develop the factual record necessary to support their defenses. *See, e.g.*, *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014) ("As long as the defense is in the case . . . .the defendant is entitled to seek relevant discovery in support of that defense.").

{00039497 2 }    9

In 2015, Federal Rule of Civil Procedure 26 was amended to explicitly require that consideration be given to the parties' relative access to information. *See* Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26. As stated by the Advisory Committee:

> One party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 26.

## ARGUMENT

### I. This Court already ordered the Trustee to produce the Trading Records

Judge Maas was wrong to hold that "Defendants have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption." January 2, 2019 Order, ECF No. ECF No. 18354, at 6 [AA18]. In 2016, this Court ordered the Trustee to produce the Trading Records. *See* May 17, 2016 Transcript at 69:19-22 [AA147] (THE COURT: "Well, if the Trustee has additional documents, he's got to supplement the disclosure or the production, which he does by adding them to the data room . . . ."); June 29, 2017 Transcript[18] at 74:14-15 (there are "two orders directing you to turn over the documents"). Therefore, very simply, the Trustee is required to produce the Trading Records. Moreover, the Trustee has been forced to produce new expert reports dealing with the fact (which he had concealed for a decade) that Madoff/BLMIS purchased actual securities with investment

---

[18] Ex. A [AA29-36] to the September 20, 2018 Joint Letter to Judge Maas, which Chaitman Decl. as Ex. 2 [AA21-74].

advisory customers' money. Judge Maas' attempt to provide an explanation for the Trustee's deliberate concealment of the facts cannot deprive the Defendants of their right to put the evidence of actual trades (and the Trustee's concealment of those trades) before a trier of fact.

Moreover, a discovery arbitrator appointed by this Court cannot enter orders that overrule the previous Orders of this Court. On numerous occasions, this Court required the Trustee to turn over the Trading Records. Judge Maas was required to enter an Order consistent with this Court's directives. The January 2, 2019 Order must be reversed on this basis alone.

## II. It would impose no burden on the Trustee to give Defendants access to the BLMIS Database and Rule 26 requires it

As already held by Judge Maas and this Court, there is no doubt that the Trading Records are relevant. The Trustee, therefore, has the burden to establish that there is some basis why he should not be required to share access. He cannot do so. Since the Trustee has already created the BLMIS Database, and it would impose virtually no burden on the Trustee to simply share access, Rule 26 requires that he do so. *See Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42, 48 (N.D.N.Y. 1991) (compelling hospital to share access to a database containing over 84 million documents despite federal privacy regulations); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 172 (D. Del. 2006) (requiring party to share access to voluminous document production, without regard to cost of sharing access, when that party had already made that document production for its own benefit in a separate litigation); *see also Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305 (S.D.N.Y. 2012) ("data dump" compared to a "targeted production" is not burdensome).

Presumably, the costs of supplying Defendants' counsel with the credentials to access the BLMIS Database will be insignificant. However, if Defendants are incorrect about this, it is the Trustee's burden to come forward to establish why it would be burdensome to supply access. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); Committee Note to the 2015 amendments to Fed. R. Civ. P. 26

{00039497 2}                                11

(party who makes a proportionality objection based on undue burden will normally be the party with the best information about what that burden is, and therefore will be required to explain and support the claim); *see also N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48, n.11 (E.D.N.Y. 2018) (Rule 26 does not impose on party seeking discovery the burden of addressing all proportionality considerations).

In a case where the Trustee's law firm has been paid over $1 billion, it is absurd to suggest that the Trustee's compliance with this Court's orders to produce evidence that is obviously germane to the Defendants' defenses would place an unreasonable burden on the Trustee. Indeed, this Court has previously permitted the Trustee to broadly enforce subpoenas in order to obtain discovery of highly personal and confidential financial information of parties and non-parties alike, some of which was duplicative and cumulative, and a large volume of which consisted of irrelevant information. *See Picard v. Saren Lawrence*, Adv. Pro. No. 10-04898, ECF No. 118.

Therefore, Judge Maas was incorrect to suggest that Defendants' counsel was required to suggest search terms or that it would violate Rule 26 for an "obviously well-funded" SIPA Trustee to share, at no cost or virtually no cost, documents that go to a "significant" issue in the case. *See* Fed. R. Civ. P. 26. Moreover, there is no other way to obtain the documents in the Trustee's possession because if Defendants were to serve a subpoena, no third party would still have records for the relevant time periods. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

The Trustee's production of the Trading Records is incomplete, as demonstrated by, *inter alia*, his failure to even review the documents in the Queens Warehouse for responsiveness. Even the Trustee's new Collura expert report discloses only the actual securities purchased with investment advisory customers' money in 2007-2008. Yet the Trustee is calculating Defendants' liability by going back to the 1980s. The Trading Records obviously do not support the Trustee's

theory of the case, but the Trustee is not entitled to "produce some, but not all, of the data and claim that . . . . [Defendants] have everything they need." *Barnes v. D.C.*, 289 F.R.D. 1, 25 (D.D.C. 2012); *Novelty, Inc. v. Mountain View Marketing, Inc.,* 265 F.R.D. 370, 378 (S.D.Ind.2009) ("Producing only those documents that are deemed helpful to the producing party's litigation position – parsing out the bad from the good – is, of course, impermissible."). Where a party makes an incomplete production, it is proper to compel the production of an entire database. *See id*. ("If there is any 'missing' information, the plaintiffs are entitled to it. The complete database and all the information the District used to prepare its Discrepancy Reports are clearly relevant under Rule 26(b)(1) and responsive to plaintiffs' prior document requests.").

As demonstrated by Defendants' submissions to Judge Maas, Defendants' counsel supplied the Trustee with a list of all known firms with which Madoff/BLMIS traded or custodied securities. The problem is the Trustee has never made a search of the records in his exclusive control to produce these documents. This Court would never tolerate such conduct by the Defendants.

### III.    Defendants made a showing that real trading occurred – as even Judge Maas acknowledged

Judge Maas denied Defendants' motion to compel the Trading Records because, according to Judge Maas, "Defendants' have yet to establish that there is a basis to believe that any of the securities transactions undertaken by BLMIS's legitimate House 5 operations were intended to benefit its investment advisory customers or that the Court should indulge in that assumption." January 2, 2019 Order, ECF No. ECF No. 18354, at 6 [AA18]. However, as Defendants previously set forth – and which Judge Maas was aware of – Madoff previously testified to this. *See id*. at 2 ("Madoff has testified at his deposition that he engaged in actual trading on behalf of his

{00039497 2 }                                                    13

investment advisory customers until approximately 1992 . . . ."). Judge Maas' legal analysis relied on a demonstrably false factual assumption – which even he knew was false.

Moreover, Madoff testified that he used investment advisory customers' money to purchase and maintain a portfolio of $6 billion of T-bills. Mr. Sheehan ultimately admitted to this Court that this was true when this firm put this evidence before the Court. July 26, 2017 Tr. at 36:11-16 [AA201].[19] The documents submitted to Judge Maas clearly refer to the showing that Defendants' have made.[20]

## IV. Judge Maas failed to consider that Defendants' counsel requested, in the alternative, for access to the BLMIS Warehouses so that Defendants' counsel could go through the documents

Judge Maas repeatedly described Defendants as requesting the Trustee to "rummage through all of the boxes in the warehouse," as if this is unreasonable. January 2, 2019 Order, ECF No. 18354, at 7 [AA19]. Surely, it cannot be considered unreasonable for a law firm that has been paid over $1 billion in fees to have to comply with its discovery obligations under the Federal Rules of Civil Procedure. In numerous cases, elderly Defendants had to "rummage" through boxes in storage facilities to produce the documents demanded by the Trustee. There is nothing unreasonable about demanding that the Trustee's minions do the same thing – particularly where the Trustee has concealed material evidence and, for a decade, misrepresented to this Court and to the Second Circuit the truth concerning Madoff's and BLMIS' trading activity on behalf of investment advisory customers. While the Trustee has now agreed to give Defendants' counsel access to the Queens Warehouse, this is imposing an unfair burden on Defendants. *Cf. S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009) (producing party does not satisfy

---

[19] Excerpts of which are Chaitman Decl., Ex. 9 [AA199-201].
[20] *See, e.g.*, Exhibit A to the November 20, 2018 Letter, Chaitman Decl., Ex. 8, at 6 [AA188] (referring to publicly filed documents showing real trading activity).

{00039497 2 }                                    14

discovery obligations simply by producing documents as they are kept in the regular course of business if they are not organized and labeled to respond to the categories of the request); *Oklahoma, ex rel. Edmondson*, 2007 WL 1498973, at *4 (N.D. Okla. May 17, 2007) (same).

## CONCLUSION

The Trustee should be compelled to produce to Defendants all of the Trading Records in the Queens warehouse. Rule 26 requires it.

Dated: March 18, 2019  
New York, New York

**CHAITMAN LLP**

By: */s/ Helen Davis Chaitman*  
Helen Davis Chaitman  
Gregory M. Dexter  
465 Park Avenue  
New York, New York 10022  
Phone & Fax: 888-759-1114  
hchaitman@chaitmanllp.com  
gdexter@chaitmanllp.com

*Attorneys for Defendants-Appellants*

## **CERTIFICATE OF SERVICE**

I, Helen Davis Chaitman, hereby certify that I caused a true and correct copy of the foregoing documents(s) to be served upon the parties in this action who receive electronic service through CM/ECF. I certify under penalty of perjury that the foregoing is true and correct.

Dated: March 18, 2019                                              */s/ Helen Davis Chaitman*